**CHAITMAN LLP**
465 Park Avenue
New York, New York 10022
Phone & Fax: (888) 759-1114
Helen Davis Chaitman
Gregory M. Dexter
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com
*Attorneys for Defendants-Appellants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | SIPA LIQUIDATION<br><br>(Substantively Consolidated)<br><br>Adv. Pro. No. 08-1789 (SMB) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>               Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>               Plaintiff,<br><br>v.<br><br>DEFENDANTS LISTED ON ECF No. 14283,<br><br>               Defendants-Appellants. | Adv. Pro. Nos. listed on ECF No. 14283. |

## APPENDIX ON BEHALF OF DEFENDANTS-APPELLANTS

## VOLUME I OF II

## (PAGES AA1 – AA201)

## TABLE OF CONTENTS

*Irving H. Picard v. Wilenitz, et al.* Adv. Pro. No. 10-04995                **Page**

Letter to Hon. Stuart M. Bernstein from Helen Davis Chaitman requesting
      permission to appeal dated January 16, 2019, ECF No. 126 .......................... AA1

Declaration of Helen Davis Chaitman dated January 16, 2019, ECF No. 126-1 ...... AA9

    Exhibit 1:  Hon. Frank Maas' January 2, 2019 Order, ECF No. 126-2........... AA13

    Exhibit 2:  Joint Letter to Hon. Frank Maas from Helen Davis Chaitman
    and Maximillian S. Shifrin dated September 20, 2019, ECF No. 126-3......... AA21

        Exhibit A:  Excerpts from transcript of proceedings before Hon.
        Stuart M. Bernstein on June 29, 2017..................................... AA29

        Exhibit B:  Excerpts from transcript of proceedings before Hon.
        Stuart M. Bernstein on May 17, 2016..................................... AA38

        Exhibit C:  Excerpts from transcript of proceedings before Hon. Frank
        Maas on December 13, 2016 .................................................... AA47

        Exhibit D:  Excerpts from transcript of telephone conference before
        Hon. Frank Maas on January 5, 2017 .................................... AA57

        Exhibit E:  Excerpts from transcript of proceedings before Hon. Stuart
        M. Bernstein on July 25, 2018................................................. AA62

        Exhibit F:  Letter to Maximillian S. Shifrin from Helen Davis
        Chaitman dated September 14, 2018 ...................................... AA69

           Attachment:  Expert Report of Lisa Collura dated May 14, 2015
           Exhibit 3:  List of Known BLMIS/Bernard L. Madoff Bank and
           Brokerage Accounts ................................................................. AA72

    Exhibit 3:  Email to Hon. Frank Maas from Maximillian S. Shifrin dated
    November 19, 2018, ECF No. 126-4............................................... AA76

    Exhibit 4:  Transcript of proceedings before the Hon. Stuart M. Bernstein
    on May 17, 2016, ECF No. 126-5 ..................................................... AA79

    Exhibit 5:  Hon. Frank Maas' January 4, 2017 Order, ECF No. 126-6........... AA159

    Exhibit 6:  Hon. Frank Maas' March 15, 2017 Order, ECF No. 126-7........... AA164

    Exhibit 7:  Excerpts from transcript of proceedings before the Hon. Frank
    Maas on November 19, 2018, ECF No. 126-8 ................................. AA172

# TABLE OF CONTENTS

*Irving H. Picard v. Wilenitz, et al.* **Adv. Pro. No. 10-04995**                **Page**

Exhibit 8:  November 20, 2018 letter from Helen Davis Chaitman to the Hon. Frank Maas, ECF No. 126-9 .................................................................. AA177

Exhibit A:  Letter to Hon. Stuart M. Bernstein from Helen Davis Chaitman dated July 24, 2017 .................................................................. AA183

Exhibit A:  Excerpts from transcript of proceedings before Hon. Stuart M. Bernstein on June 29, 2017 ........................ AA190

Exhibit B:  Omitted due to size, Excel spreadsheet:  Bernard L. Madoff Investment Securities, LLC, Microfilm Reel Inventory as of June 28, 2017, Microfilm Inventory Color-Coded ................................ AA194

Exhibit C:  Hon. Stuart M. Bernstein's December 1, 2017 Order Implementing the Court's November 29, 2017 Bench Ruling .............. AA196

Exhibit 9:  Excerpts from transcript of proceedings before the Hon. Stuart M. Bernstein on July 26, 2017, ECF No. 126-10 ........................................... AA199

Letter to the Hon. Stuart M. Bernstein from Maximillian S. Shifrin, entered January 22, 2019, ECF No. 127 ........................................................................ AA202

Exhibit A:  Transcript of Proceedings before Hon. Frank Maas, on November 19, 2018, ECF 127-1 .......................................................... AA207

Letter to Hon. Stuart M. Bernstein from Helen Davis Chaitman, entered January 25, 2019 ECF No. 129 ...................................................................................... AA284

Exhibit A:  Expert Report of Lisa Collura, dated January 16, 2019, ECF No. 129-1 .......................................................................................................... AA290

Exhibit 3:  List of Known BLMIS/Bernard L. Madoff Bank and Brokerage Accounts ............................................................................. AA324

Exhibit 12:  Treasury Bill Activity in JPMC G 13414 Account ............ AA328

Hon. Stuart M. Bernstein's February 15, 2019 Order Granting Leave to Appeal Discovery Arbitrator's January 2, 2019 Order, ECF No. 130 ........................ AA333

# CHAITMAN LLP

### 465 PARK AVENUE
### NEW YORK, NY 10022
### (888) 759-1114
TELEPHONE & FAX

*HELEN DAVIS CHAITMAN*
hchaitman@chaitmanllp.com

January 16, 2019

**VIA ECF AND FEDERAL EXPRESS**

Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

     Re:    *In re Bernard L. Madoff, Investment Securities, LLC,* **Adv. Pro. No. 08-01789;**
           *Irving H. Picard v. Wilenitz*, **Adv. Pro. No. 10-04995 (SMB)**

Dear Judge Bernstein:

     I write on behalf of Defendants listed on ECF No. 14283 ("Defendants") pursuant to the October 4, 2016 Order Appointing a Discovery Arbitrator Pursuant to Bankruptcy Rule 9019(c) and General Order M-390, (the "Order Appointing Arbitrator"), ECF No. 14227, to request permission to appeal Judge Maas' January 2, 2019 Order (the "January 2, 2019 Order"), ECF No. 18354.[1] The January 2, 2019 Order denied Defendants' most recent motion to compel with respect to third-party trading records evidencing the trading activities of Madoff and BLMIS (the "Trading Records").

## I.    Background

### A.    The Trustee has been deceptive to this Court and to Defendants concerning his production of the Trading Records

     For approximately three years, Defendants have been demanding that the Trustee produce the Trading Records. The Trustee has supplied a succession of misrepresentations about his production of the Trading Records. The Trustee's counsel, for years, represented that the Trustee's "E-Data Room" contained all of the Trading Records. *See* January 5, 2017 Transcript, attached as Ex. D to the September 20, 2018 Joint Letter to Judge Maas,[2] at 30:14-16 (**MR JACOBS: "If it's a trading record, if it's a BLMIS trading record of securities having been traded, we will produce it."**) (emphasis added).

---

[1] Attached to the January 16, 2019 Declaration of Helen Davis Chaitman ("Chaitman Decl.") as Ex. 1.

[2] The September 20, 2018 Joint Letter to Judge Maas is Chaitman Decl., Ex. 2.

# CHAITMAN LLP

The Honorable Stuart M. Bernstein
January 16, 2019
Page 2

At an argument before the Court on May 17, 2016,[3] the Trustee's counsel represented as follows:

> MR. JACOBS: So, absolutely the Defendant has the ability to conduct whatever investigation they believe is relevant to the claims of their defenses, the same that our expert did, and they have access to all the same information that our expert did. And we did that to be transparent and to provide any data that any litigant believes that they should have access to.[4]

> ****

> MR. JACOBS: . . . . [W]e have already produced in this litigation, without even having received a document request, 100 percent of that data.[5]

> ****

> MR. JACOBS: To the extent we have them in addition to publicly available information that we obtain, it's all in the data room clearly labeled.[6]

> ****

> MR. JACOBS: She tests that conclusion the same way our expert does, by examining the underlying records. **All of those records again have been made available to Ms. Chaitman. They're in the data room**.[7]

Your Honor has always made it clear that the Trustee has an obligation to produce *all* of the Trading Records. *See, e.g.*, May 17, 2016 Transcript at 69:19-22 (THE COURT: "Well, if the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room . . . ."); *see also id.* at 67:23-68:12. Judge Maas has likewise ordered the Trustee to produce all Trading Records. *See* January 7, 2017 Order, ECF No. 14807[8] at 3 ("To the extent there are any additional relevant records of securities trading that have not been made available . . . through Data Room 1, they must promptly be produced.").

---

[3]  The Trustee emailed this transcript to Judge Maas on Nov. 19, 2018. The transmittal letter is attached to the Chaitman Decl. as Ex. 3. The transcript is Chaitman Decl., Ex. 4.

[4]  Chaitman Decl., Ex. 4 at 11:11-12:14.

[5]  *Id*. at 15:21-23.

[6]  *Id*. at 61:7-17.

[7]  *Id*. at 68:4-69:5 (emphasis added).

[8]  A copy of this Order is attached to the Chaitman Decl. as Ex. 5 for the Court's convenience.

**AA2**

# CHAITMAN LLP

During the December 13, 2016 hearing in front of Judge Maas, the Trustee represented that he would produce all Trading Records.  *See* December 13, 2016 Transcript[9] at 145:23-146:5 (MR. JACOBS: "We will look for and have been looking for stuff – any additional stock trading records as to earlier period of time . . . to the extent we find them or restore them or can obtain them from DTCC or any other method, we will produce them to you and will put them in the data room. Absolutely.").  The Trustee made similar representations during the January 5, 2017 conference with Judge Maas.  *See* January 5, 2017 Transcript at 30:14-16 (MR JACOBS: "If it's a trading record, if it's a BLMIS trading record of securities having been traded, we will produce it.").[10]

Your Honor previously told the Trustee on June 29, 2017 when Defendants' counsel pointed out that the Trustee had still not produced all the Trading Records, **there are "two orders directing you to turn over the documents."**  *See* June 29, 2017 Transcript[11] at 74:14-15 (emphasis added).

### B.   The Trading Records are significant and the Trustee is well-funded

On at least two occasions, Judge Maas has recognized that the Trading Records are highly relevant and they go to "significant" legal issues in these cases.  *See* March 15, 2017 Order, ECF No. 15236[12] at 2; *see also* January 2, 2019 Order, ECF No. 18354[13] at 2 ("Whether the Defendants' investment accounts ever contained actual securities purchased with their own funds is consequently an important issue.").  Judge Maas also recognized that the "Trustee is obviously well-funded."  *Id.* at 6.

### C.   The Trustee promised to share access to the BLMIS Database

On November 14, 2017, I met with Mr. Sheehan and Mr. Shifrin at their office to discuss the specific documents we were seeking. I explained that, as I have always said, we want production of all third-party documents evidencing the purchase, sale or custody of securities by Madoff and/or by BLMIS for the entire period from 1980 on.  Mr. Sheehan and Mr. Shifrin promised to produce these documents.  However, what the Trustee did, instead, was only produce third-party account records that the Trustee had obtained through subpoenae.  These only went back approximately six years from the dates of the subpoenae.  We never limited our request to documents the Trustee obtained by subpoenae.  Nor did Mr. Sheehan or Mr. Shifrin state that they were limiting their production to such records.

At a meeting with the Trustee's counsel and all defense counsel on June 5, 2018, Mr. Sheehan finally agreed to give defense counsel access to the BLMIS database.  *See* July 25, 2018 Transcript,[14] at 26:13-15 (MR. BELL: "In the context of that discussion, the BLMIS database came

---

[9]  Ex.  C to the September 20, 2018 Joint Letter to Judge Maas, which is Chaitman Decl., Ex. 2.

[10]  Ex.  D to the September 20, 2018 Joint Letter to Judge Maas, which is Chaitman Decl., Ex. 2.

[11]  Ex.  A to the September 20, 2018 Joint Letter to Judge Maas, which Chaitman Decl. as Ex. 2.

[12]  A copy of this Order is attached to the Chaitman Decl. as Ex. 6 for the Court's convenience.

[13]  Chaitman Decl., Ex. 1.

[14]  Ex.  E to the September 20, 2018 Joint Letter to Judge Maas, which is Chaitman Decl., Ex. 2.

**AA3**

# CHAITMAN LLP

The Honorable Stuart M. Bernstein
January 16, 2019
Page 4

up and Mr. Sheehan did represent that the Trustee is certainly open to producing that database."). At the time, we believed that access to the BLMIS Database would finally allow Defendants to access all of the Trading Records, which the Trustee had deliberately concealed. Yet, after finally making this offer, the Trustee rescinded his offer and indicated that he would not give all defense counsel access to the BLMIS database.

## II.    Recent procedural history

On September 20, 2018, Defendants filed a joint letter with the Trustee in which Defendants made an application to compel the Trustee to share access to the BLMIS Database and to sanction the Trustee's counsel for failing to produce documents essential to the defense of these actions. A hearing was held with Judge Maas on November 19, 2018.

On November 20, 2018, after oral argument, Defendants supplemented their application based on a shocking disclosure Mr. Shifrin made the day before that the Trustee had never searched through the warehouses under his exclusive control for the Trading Records. *See* November 19, 2018 Transcript,[15] at 46:15-24. Thus, Defendants also sought to compel the Trustee to produce or permit Defendants access to the Trading Records in the warehouses of Madoff/BLMIS documents under the Trustee's exclusive control. *See* November 20, 2018 Letter.[16]

On January 2, 2019, Judge Maas denied Defendants' application. Judge Maas recognized that "[w]hether the Defendants' investment accounts ever contained actual securities purchased with their own funds is consequently an important issue." January 2, 2019 Order, ECF No. 18354,[17] at 2. Judge Maas also recognized that the "Trustee is obviously well-funded." *Id.* at 6.

However, Judge Maas denied the application, citing the following: (a) "Defendants have yet to establish that there is a basis to believe that any of the securities transactions undertaken by BLMIS's legitimate House 5 operations were intended to benefit its investment advisory customers or that the Court should indulge in that assumption;" (b) Defendants have not "demonstrated that the warehouse is likely to contain any documents that would be of use to them in this regard"; and (c) Defendants have "yet to suggest a reasonable method of searching for any additional pre-1992 hard copy or electronic third-party trading records that might exist." *Id.*

## III.    Standard of review

Pursuant to the Order Appointing Arbitrator, the Discovery Arbitrator's findings of fact and legal conclusions are reviewed *de novo*. ECF No. 14227, ¶ 10. Rulings on procedural matters are reviewed for an abuse of discretion. *See id.*

---

[15] Relevant excerpts of which are attached as Ex. 7 to the Chaitman Decl.
[16] Chaitman Decl., Ex. 8.
[17] Chaitman Decl., Ex. 1.

# CHAITMAN LLP

The Honorable Stuart M. Bernstein
January 16, 2019
Page 5

## IV.     Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 26(b)(1) outlines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the importance
> of discovery in resolving the issues, and whether the burden or
> expenses of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be admissible
> in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevance . . . is construed broadly to encompass any matter that bears
on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in
the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). Defendants have a right
to take discovery to develop the factual record necessary to support their defenses. *See, e.g.*, *Mon
Chong Loong Trading Co. v. Travelers Excess & Surplus Lines Co.*, 2014 WL 5525237, at *3
(S.D.N.Y. Oct. 27, 2014) ("As long as the defense is in the case . . . .the defendant is entitled to
seek relevant discovery in support of that defense.").

In 2015, Federal Rule of Civil Procedure 26 was amended to explicitly require that
consideration be given to the parties' relative access to information. *See* Advisory Committee
Notes to 2015 Amendments to Fed. R. Civ. P. 26. As stated by the Advisory Committee:

> One party – often an individual plaintiff – may have very little
> discoverable information. The other party may have vast amounts
> of information, including information that can be readily retrieved
> and information that is more difficult to retrieve. In practice these
> circumstances often mean that the burden of responding to
> discovery lies heavier on the party who has more information, and
> properly so.

Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26.

## V.     Issues to be appealed

Pursuant to the Order Appointing Arbitrator, Defendants request permission to appeal the
following issues:

### A.   This Court already ordered the Trustee to produce the Trading Records

This Court already ordered the Trustee to produce the Trading Records. *See* May 17, 2016
Transcript at 69:19-22 (THE COURT: "Well, if the Trustee has additional documents, he's got to
supplement the disclosure or the production, which he does by adding them to the data room . . .

# CHAITMAN LLP

The Honorable Stuart M. Bernstein
January 16, 2019
Page 6

."); June 29, 2017 Transcript[18] at 74:14-15 (there are "two orders directing you to turn over the documents"). A discovery arbitrator appointed by this Court cannot enter orders that overrule the previous Orders of this Court. On numerous occasions, this Court required the Trustee to turn over the Trading Records. Judge Maas was required to enter an Order consistent with this Court's directives.

B. <u>Judge Maas failed to consider that it would impose no burden on the Trustee to give Defendants access to the BLMIS Database</u>

Giving Defendants' counsel access to the BLMIS Database does not impose any burden on the Trustee's counsel. Denying access simply allows the Trustee to continue to conceal material evidence. There is no burden on the Trustee simply because he might produce some documents which are not relevant. *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 305 (S.D.N.Y. 2012) ("data dump" compared to a "targeted production" is not burdensome).

Moreover, in a case where the Trustee's law firm has been paid over $1 billion, it is absurd to suggest that the Trustee's compliance with this Court's orders to produce evidence that is obviously germane to the Defendants' defenses would place an unreasonable burden on the Trustee. Therefore, Judge Maas was incorrect to suggest that Defendants' counsel was required to suggest search terms or that it would violate Rule 26 for an "obviously well-funded" SIPA Trustee to share, at no cost or virtually no cost, documents that go to a "significant" issue in the case. *See* Fed. R. Civ. P. 26. Moreover, there is no other way to obtain the documents in the Trustee's possession because if Defendants were to serve a subpoena, no third party would still have records for the relevant time periods.

As demonstrated by our submissions to Judge Maas, we provided the Trustee with a list of all known firms with which Madoff/BLMIS traded or custodied securities. The problem is the Trustee has never made a search of the records in his exclusive control to produce these documents.

This Court would never tolerate such conduct by the Defendants.

C. <u>Defendants made a showing that real trading occurred – as even Judge Maas acknowledged</u>

Judge Maas also denied Defendants' application because, according to Judge Maas, "Defendants' have yet to establish that there is a basis to believe that any of the securities transactions undertaken by BLMIS's legitimate House 5 operations were intended to benefit its investment advisory customers or that the Court should indulge in that assumption." January 2, 2019 Order, ECF No. ECF No. 18354, at 6. However, as Defendants previously set forth – and which Judge Maas was aware of – Madoff previously testified to this. *See id.* at 2 ("Madoff has testified at his deposition that he engaged in actual trading on behalf of his investment advisory customers until approximately 1992 . . . ."). Judge Maas' legal analysis relied on a demonstrably false factual assumption – which even he knew was false. *See also N. Shore-Long Island Jewish*

---

[18] Ex. A to the September 20, 2018 Joint Letter to Judge Maas, which Chaitman Decl. as Ex. 2.

10-04958-smb    Doc 128-7    Filed 01/16/19    Entered 01/16/19 15:58:03    Main Document
Pg 10 of 8

# CHAITMAN LLP

The Honorable Stuart M. Bernstein
January 16, 2019
Page 7

*Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48, n.11 (E.D.N.Y. 2018) (Rule 26 does not impose on party seeking discovery the burden of addressing all proportionality considerations); Committee Note to the 2015 amendments to Rule 26 (party who makes a proportionality objection based on undue burden will normally be the party with the best information about what that burden is, and therefore will be required to explain and support the claim).

Moreover, Madoff testified that he used investment advisory customers' money to purchase and maintain a portfolio of $6 billion of T-bills.  Mr. Sheehan ultimately admitted to this Court that this was true when this firm put this evidence before the Court.  July 26, 2017 Tr. at 36:11-16.[19]  The documents submitted to Judge Maas clearly refer to the showing that Defendants' have made.[20]

> D.  <u>Judge Maas failed to consider that Defendants' counsel requested, in the alternative, for access to the BLMIS Warehouses so that Defendants' counsel could go through the documents</u>

In numerous instances, Judge Maas described Defendants as requesting the Trustee to "rummage through all of the boxes in the warehouse . . . ." January 2, 2019 Order, ECF No. 18354, at 7.  Aside from the fact that any party is required to "rummage through" boxes in response to a document demand – and certainly Defendants have done so – Judge Maas failed to consider that Defendants' counsel, as an alternative, simply requested that the Trustee give Defendants' counsel access to the warehouses so that they could review the documents.  This imposes the burden primarily on Defendants' counsel, not the Trustee's counsel. *Cf. S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 413 (S.D.N.Y. 2009) (producing party does not even satisfy discovery obligations simply by producing documents as they are kept in the regular course of business if they are not organized and labeled to respond to the categories of the request); *Oklahoma, ex rel. Edmondson*, 2007 WL 1498973, at *4 (N.D. Okla. May 17, 2007) (same).

## VI.  <u>Conclusion</u>

The Trustee's deliberate concealment of the Trading Records over the last three years compels one of two actions by this Court:  Either the Trustee's complaints should be dismissed with prejudice; or the Court should compel the Trustee to immediately produce to the  Defendants  all of the Trading Records, wherever they are located.  Under the facts, Judge Maas' decision must be reversed.

Respectfully submitted,

*/s/Helen Davis Chaitman*

Helen Davis Chaitman

---

[19]  Excerpts of which are Chaitman Decl., Ex. 9.
[20]  *See, e.g.*, Exhibit A to the November 20, 2018 Letter, Chaitman Decl., Ex. 8, at 6 (referring to publicly filed documents showing real trading activity).

# CHAITMAN LLP

The Honorable Stuart M. Bernstein
January 16, 2019
Page 8

HDC/sh
Enclosures (as stated)
cc:     Maximillian S. Shifrin, Esq. (*via email only*)
        Nicholas J. Cremona, Esq. (*via email only*)

**AA8**

**CHAITMAN LLP**
465 Park Avenue
New York, New York 10022
Phone & Fax: (888) 759-1114
Helen Davis Chaitman
hchaitman@chaitmanllp.com
*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | SIPA LIQUIDATION |
| Plaintiff-Applicant, | (Substantively Consolidated) |
| v. | Adv. Pro. No. 08-1789 (SMB) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff | Adv. Pro. No. 10-04995 (SMB) |
| Plaintiff, | |
| v. | |
| TRUST U/ART FOURTH O/W/O ISRAEL WILENITZ, EVELYN BEREZIN WILENITZ, individually, and as Trustee of the Trust U/ART Fourth O/W/O Israel Wilenitz, and SARA SEIMS, as Trustee of the Trust U/ART Fourth O/W/O Israel Wilenitz, | |
| Defendants. | |

**DECLARATION OF HELEN DAVIS CHAITMAN**

AA9

I, Helen Davis Chaitman, hereby declare, under penalty of perjury pursuant to 28 U.S.C. §1746, as follows:

1.      I am a member of the bars of New York and New Jersey, and of this Court.  I am counsel for the Defendants represented by Chaitman LLP listed on ECF No. 14283 (the "Defendants").[1]

2.      I submit this Declaration in support of Defendants' request for permission to appeal the Hon. Frank Maas' January 2, 2019 Order, ECF No. 18354.

3.      Annexed hereto as **Exhibit 1** is a true and accurate copy of the Hon. Frank Maas' January 2, 2019 Order, ECF No. 18354.

4.      Annexed hereto as **Exhibit 2** is a true and correct copy of September 20, 2018 Joint Letter to the Hon. Frank Maas with Exhibits A-F.

5.      Annexed hereto as **Exhibit 3** is a true and accurate copy of the Trustee's November 19, 2018 letter to the Hon. Frank Maas.

6.      Annexed hereto as **Exhibit 4** is a true and accurate copy of the May 17, 2016 transcript of proceedings before the Hon. Stuart M. Bernstein.

7.      Annexed hereto as **Exhibit 5** is a true and accurate copy of the Hon. Frank Maas' January 4, 2017 Order, ECF No. 14807.

8.      Annexed hereto as **Exhibit 6** is a true and accurate copy of the Hon. Frank Maas' March 15, 2017 Order, ECF No. 15236.

9.      Annexed hereto as **Exhibit 7** are true and accurate excerpts from the November 19, 2018 hearing before the Hon. Frank Maas.

---

[1] This Declaration is filed on behalf of clients who are currently represented by Chaitman LLP in the following cases:  10-04995, 10-04818, 10-04914, 10-04826, 10-04644, 10-04541, 10-04728, 10-04905, and 10-04621.

10.    Annexed hereto as **Exhibit 8** is a true and accurate copy of November 20, 2018

letter from Helen Davis Chaitman to the Hon. Frank Maas with Exhibits A and C.  Exhibit B is

omitted due to size, Excel spreadsheet: Bernard L. Madoff Investment Securities, LLC, Microfilm

Reel Inventory as of June 28, 2017, Microfilm Inventory Color-Coded.

11.    Annexed hereto as **Exhibit 9** are true and accurate excerpts from the July 26, 2017

hearing before the Hon. Stuart M. Bernstein.

January 16, 2019

*/s/ Helen Davis Chaitman*
Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114
hchaitman@chaitmanllp.com

*Attorneys for Defendants*

EXHIBIT 1

08-01789-smb    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
10-04995-smb    Doc 1263-2    Filed 01/16/19    Entered 01/16/19 13:01:56    Exhibit 1
Vol I   Pg 16 of 204

08-01789-smb    Doc 18354    Filed 01/02/19    Entered 01/02/19 08:37:22    Main Document
Pg 1 of 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>              Plaintiff-Applicant,<br><br>     -against-<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>         Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>         Plaintiff,<br><br>     -against-<br>TRUST U/ART FOURTH O/W/O ISRAEL WILENITZ, et al.,<br><br>         Defendants. | Adv. Pro. No. 10-04995 (SMB) |

## DISCOVERY ARBITRATOR'S ORDER

**AA13**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 1
Vol I   Pg 17 of 204   Pg 3 of 9

08-01789-smb   Doc 18354   Filed 01/02/19   Entered 01/02/19 08:37:22   Main Document
Pg 2 of 7

This is the latest chapter in a long-standing discovery dispute between the Trustee and certain defendants, including the Wilenitz Defendants, who are represented by Helen Davis Chaitman of Chaitman LLP (collectively, the "Defendants). In brief, the Defendants contend that the Trustee has intentionally and contumaciously failed to produce records which would establish that Bernard Madoff ("Madoff") actually engaged in securities trading on behalf of his investment advisory clients at Bernard L. Madoff Investment Securities LLC ("BLMIS") (or its predecessor) from as early as the 1970s. In an effort to prove this, the Defendants seek access to the entire BLMIS Database, which consists of some 30 million records, as well as the production of any third-party trading records in a warehouse containing 13,000 boxes of unscanned BLMIS documents. The Trustee denies that he has failed to comply with any court orders, argues that it is instead Ms. Chaitman who has flouted the Court's directives, and maintains that the Defendants' current blunderbuss requests are hopelessly disproportionate.

For the reasons set forth below, the Defendants' application to compel this discovery is denied.

I.      Background

In the Wilenitz proceeding, and many similar cases, the Trustee seeks to avoid as fraudulent transfers and recover any withdrawals that the Defendants made from their investment advisory accounts within two years of BLMIS's bankruptcy filing date to the extent those funds exceeded their actual deposits of cash or securities.

To prove his case against the Defendants, the Trustee is relying, in part, on the expert report of Bruce G. Dubinsky, a certified fraud examiner, who has concluded that the investment advisory side of BLMIS constituted a "Ponzi" scheme as far back as the early 1970s. "The hallmark of all Ponzi schemes is the use of 'the investments of new and existing customers to fund withdrawals of principal and supposed profit made by other customers.'" Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 531 B.R. 439, 472 (S.D.N.Y. 2015) (quoting In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d 229, 232 (2d Cir. 2011)). Significantly, "[once] it is determined that a Ponzi scheme exists, all transfers made in furtherance of that Ponzi scheme are presumed to have been made with fraudulent intent." Id. at 471.

Whether the Defendants' investment accounts ever contained actual securities purchased with their own funds is consequently an important issue. The Defendants apparently contend in that regard that they are entitled to receive a credit as part of a net equity calculation if they can show that the legitimate side of BLMIS's business (often referred to as "House Five") held a security that is also reflected during the same period of time on their customer account statements. They also note that Madoff has testified at his deposition that he engaged in actual trading on behalf of his investment advisory customers until approximately 1992, when he

2

adopted a "split strike" trading strategy. If so, the Ponzi scheme presumption might not apply to BLMIS's earlier activities.

II.        History of the Defendants' Requests

        The Defendants first raised the issue of trading records that might refute the Dubinsky report during a conference with Judge Bernstein on May 17, 2016. At that time, the discussion focused on any monthly records that might reflect BLMIS's trading volume and securities that were actually owned by the House Five side of BLMIS. The Defendants wanted the volume information in an effort to argue that BLMIS was predominantly a legitimate operation to which the Ponzi presumption should not apply. As noted above, the Defendants sought the records regarding securities actually purchased and sold as part of the legitimate operations of BLMIS in an attempt to show that they were entitled to certain credits against the Trustee's net equity calculations.

        After the Defendants explained that they had already obtained records from the Depository Trust Company ("DTC") regarding BLMIS's House Five trading volume, the discussion turned to any additional BLMIS records that might reflect that information. The Trustee's counsel represented that to the extent the Trustee had such records they were housed in E-Data Room 1 and clearly labeled. E-Data Room 1 is an electronic database containing all of the materials that Mr. Dubinsky relied upon, as well as all of the discovery and disclosure documents produced by the Trustee. Ms. Chaitman has had access to that database for a considerable period of time.

        When the discussion turned to BLMIS's own records of its House Five trading, Judge Bernstein asked the Trustee's counsel, if "BLMIS bought 100 shares of IBM and 50 shares show up on Wilenitz['s monthly statement]," "[w]ho's to say he didn't actually own that stock?" Counsel responded that he could not go through all of the detailed explanation given in the Dubinsky report, but that the Defendants could test the expert's conclusions "by examining the underlying records," all of which were available in E-Data Room 1. Judge Bernstein concluded that Ms. Chaitman seemingly wanted the Trustee to do the Defendants' work, but also noted that if the Trustee found additional responsive documents, he would have to add them to E-Data Room 1.

        The issue of records reflecting BLMIS's actual trading next arose following my appointment as the Discovery Arbitrator. On December 13, 2016, I convened a hearing to address, in part, the Defendants' motion to compel the Trustee to produce many of the materials that Judge Bernstein had considered in May 2016. At that time, the Trustee's counsel represented that the Trustee had prepared a detailed index of the materials seized from BLMIS that were in the warehouse, but had not reviewed most of the boxes, and was unaware of any

AA15

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
Vol I    Pg 19 of 204

08-01789-smb    Doc 12632    Filed 01/16/19    Entered 01/16/19 13:01:56    Main Document
Pg 6 of 9

08-01789-smb    Doc 18354    Filed 01/02/19    Entered 01/02/19 08:37:22    Main Document
Pg 4 of 7

entries that that appeared on their face to reflect pre-1992 trading by BLMIS. Counsel further indicated that the Trustee was endeavoring to find any records that might reflect actual trading during that period.

On December 15, 2016, the Trustee's counsel reported that, in response to the Defendants' request for trading records, the Trustee had located a relatively small quantity of Depository Trust and Clearing Corporation ("DTCC") and National Securities Clearing Corporation ("NSCC") records,[1] an additional 18,306 records from the BLMIS Database that hit on the search terms "Depository Trust" and "National Securities," and 167 reels of microfilm that might contain additional trading records from 2002 or earlier, which the Trustee's vendor was in the process of restoring. The Trustee also produced to Ms. Chaitman a searchable copy of the warehouse index and an index of the electronic media that the Trustee had obtained from BLMIS. The Trustee subsequently produced all of the documents on the 167 restored reels as well as those on an additional 34 reels with pre-1992 labeling. According to the Trustee, the cost of restoring all of the reels was in the neighborhood of $500,000. Finally, the Trustee produced all of the documents responsive to an additional 147 search terms that he had identified based on internal BLMIS reports reflecting trading activity.

On February 21, 2017, the Defendants renewed their application to compel the production of records reflecting pre-1992 BLMIS securities trading. On March 15, 2017, I denied that application without prejudice. In doing so, I noted that the indices of documents and electronic media that had been produced to the Defendants should have enabled Ms. Chaitman to formulate more focused requests for trading records.[2] I further directed that counsel confer in person regarding the trading records issue, and that three days before that meeting, Ms. Chaitman send the Trustee's counsel a letter "specifically identifying the additional documents she seeks to have produced and where she believes they may be found." Citing Bankruptcy Rule 7026 and Rule 26 of the Federal Rules of Civil Procedure, I cautioned both sides to bear in mind that discovery requests must be limited to relevant materials that are proportional to the needs of a case. I also directed counsel to send me a joint letter if they were unable to resolve their trading records disputes.

I heard nothing further regarding the Wilenitz proceeding until September 20, 2018. At that time, the parties submitted a joint letter regarding the Defendants' application to compel the Trustee to give the Defendants access to the entire electronic BLMIS Database. (Although the Trustee at one point had offered to do so as a compromise, during a meet and confer with multiple defense counsel, the Trustee represented that no final agreement to that effect ever was reached.) I held a hearing regarding the request for database access on

---

[1]    The DTCC is a successor to DTC and NSCC engaged in the clearing and settlement of securities transactions.

[2]    The Trustee also subsequently produced its index of BLMIS's microfilm files.

AA16

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 126-2 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit
Vol I Pg 20 of 204 Pg 4 of 7

08-01789-smb Doc 18354 Filed 01/02/19 Entered 01/02/19 08:37:22 Main Document
Pg 5 of 7

November 19, 2018.  The following day, Ms. Chaitman changed course, this time demanding that the Trustee produce not only the BLMIS Database, but also any third party trading records in the Queens warehouse.  Ms. Chaitman based this enlarged request on the entirely unsupported assertion that the Trustee had intentionally incorporated into the BLMIS Database only those items which would support his claim that BLMIS's investment advisory operation was a Ponzi scheme.

The record in fact shows that the Trustee has repeatedly tried to accommodate Ms. Chaitman's requests for BLMIS trading records.  For example, shortly after my initial hearing in this matter, the Trustee spent substantial sums to restore the microfilm records that he believed might contain the information that the Defendants sought.  That those records may not have proven responsive or may not have bolstered the Defendants' theory of defense certainly is not a sign that the Trustee has acted in bad faith.

Subsequently, in response to the Defendants' request for the production of five million documents responsive to 22 search terms incorporating such common financial institution names as Fidelity and Morgan Stanley, the Trustee agreed to run two of those terms, which apparently confirmed that the 22 proposed searches would return largely irrelevant documents, such as emails.  As an alternative, the Trustee agreed to run certain BLMIS account numbers against the third-party materials produced to the Trustee in response to Rule 2004 subpoenas, and turned over those documents.  When Ms. Chaitman then complained that the Trustee had not also run those terms against the BLMIS Database, the Trustee did so, and produced the responsive documents.  The Trustee indicates that the account number searches it has conducted in response to Ms. Chaitman's requests yielded nearly 200,000 pages of material, comprising 10,000 documents.

III.   Discussion

Noticeably absent from any of Ms. Chaitman's submissions is any suggestion of additional search terms that the Defendants themselves could productively run against the BLMIS Database if the Defendants were given unrestricted access to it.  Also largely unexplained is why the application to be given access to this massive database morphed only one day later into a request that the Trustee wade through the 13,000 boxes of documents in the warehouse.  The ostensible basis for this expansion – that Ms. Chaitman now realizes that the Trustee selectively excluded from the BLMIS Database trading records which would support the Defendants' theory – is based on a contorted view of the record.  To be sure, the Trustee's counsel did represent to Judge Bernstein during an early hearing in this matter that all of the records Ms. Chaitman needed to test Mr. Dubinsky's conclusions were available in E-Data Room 1.  In context, however, it is clear that counsel was referring to the materials underlying the Dubinsky report, not to all of the trading records that conceivably might have existed in

5

**AA17**

08-01789-cgm Doc 18573-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:01:50 Exhibit 1
Vol I Pg 21 of 204

08-01789-smb    Doc 18354    Filed 01/02/19    Entered 01/02/19 08:37:22    Main Document
Pg 6 of 7

BLMIS's files.  Nor could Ms. Chaitman have been misled by this statement.  Indeed, she has known since for years that the BLMIS Database contains approximately 30 million documents, only a fraction of which have been copied to E-Data Room 1, and that the Trustee has thousands of boxes of hard copy documents and thousands of items of electronic media that have not been processed.[3]  In fact, she has been given indices confirming the existence of these additional materials.

In sum, I find that the Defendants' assertion that the Trustee has proceeded in bad faith is utterly unsupported by the record.  Additionally, Ms. Chaitman has yet to suggest a reasonable method of searching for any additional pre-1992 hard copy or electronic third-party trading records that might exist.  Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may obtain discovery of nonprivileged matter that is relevant to a "claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Here, the Trustee obviously is exceptionally well-funded.  Nevertheless, the Defendants have yet to establish that there is a basis to believe that any of the securities transactions undertaken by BLMIS's legitimate House 5 operations were intended to benefit its investment advisory customers or that the Court should indulge in that assumption.  Moreover, even if that were proven, there been no showing that the efforts that the Trustee already has undertaken in an effort to locate pre-1992 BLMIS trading records are inadequate.  Indeed, despite being given digitized copies of hundreds of reels of microfilm, the Defendants have yet to show that they contain anything which would support their thesis that Madoff conducted actual trades for their accounts prior to 1992.[4]  Nor have they demonstrated that the warehouse is likely to contain any documents that would be of use to them in this regard.

For these reasons, I find that there is no basis for requiring the Trustee to supplement the extensive efforts that he has already undertaken by affording Ms. Chaitman

---

[3]      The Trustee's initial disclosures in the <u>Wilenitz</u> proceeding, dated, December 21, 2015, carefully explained that:  (a) the Trustee possessed 13,500 boxes of BLMIS paper documents and 19,250 media sources containing ESI, including computers, hard drives, PDAs, floppy disks, compact discs, and memory cards; (b) some of these materials had been loaded into one or more electronic databases then totaling four terabytes (or 28.8 million documents); (c) the Trustee intended to make four million of those documents available in a virtual data room known as "E-Data Room 1; and (d) the Trustee also had obtained an additional five million documents from approximately 450 parties during the course of his investigation.

[4]      In her most recent letter, dated November 20, 2018, Ms. Chaitman complains that the descriptions on the microfilm index prepared for the Trustee are insufficient for her to identify other reels likely to contain pre-1992 third-party trading records.  Suffice it to say, I do not agree that the index is so generic as to have precluded Ms. Chaitman from making targeted requests.

08-01789-cmb    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
10-04995-smb    Doc 1263-2    Filed 01/16/19    Entered 01/16/19 13:01:56    Exhibit 1
Vol I    Pg 22 of 204

08-01789-smb    Doc 18354    Filed 01/02/19    Entered 01/02/19 08:37:22    Main Document
Pg 7 of 7

unfettered access to the BLMIS Database or requiring him to rummage through all of the boxes in the warehouse in an attempt to find additional pre-1992 third-party trading records.

IV.    Conclusion

For the foregoing reason, the Defendants' September 20, 2018 application for access to the entire BLMIS Database and follow-up November 20, 2018 application to require the Trustee to review all of the boxes of hard copy documents in his possession for third-party records of pre-1992 BLMIS trading are both denied.

SO ORDERED.

Dated:        New York, New York
                December 24, 2018

_____
FRANK MAAS
Discovery Arbitrator

Copies to Counsel via ECF

**AA19**

EXHIBIT 2

September 20, 2018

**VIA EMAIL and FIRST CLASS MAIL**
The Honorable Frank Maas, U.S.M.J. (Ret.)
c/o JAMS, Inc.
620 Eighth Avenue, 34th Floor
New York, New York 10018
fmaas@jamsadr.com

> Re:    *In re Bernard L. Madoff, Investment Securities, LLC,* **Adv. Pro. No. 08-01789;**
> *Irving H. Picard v. Wilenitz,* **Adv. Pro. No. 10-04995 (SMB)**

Dear Judge Maas:

I submit this Joint Letter with the Trustee on behalf of Defendants represented by this firm ("Defendants") pursuant to the October 4, 2016 Order referring certain discovery matters in the above-captioned liquidation to Your Honor, (ECF No. 14227), and the March 15, 2017 Order entered by Your Honor (ECF No. 15236). Defendants make this application to compel the Trustee to share access to the BLMIS Database with Defendants and to sanction the Trustee's counsel for failing to comply with two court orders and failing to produce documents essential for the defense of these actions.

**I.    Defendants' Position**

**A.    The Trustee's house of cards**

When Madoff confessed, there were 5,312 account holders who presented the Securities Investor Protection Corporation ("SIPC") with the possibility of its having to pay out SIPC insurance of $2.65 billion pursuant to the express provisions of the Securities Investor Protection Act.[1] This amount greatly exceeded the total amount in the SIPC insurance fund because, from 1996 on, the members of SIPC had fixed the annual contribution to the SIPC fund (to insure every customer's account up to $500,000 based on the customer's last statement) at $150 per year **per firm**. Thus, from 1996 through March 2009, every SEC-regulated broker-dealer was able to assure its customers that their accounts were insured against the dishonesty of their broker up to $500,000 based on their last statement for a cost, per firm, of $150 per year.

Obviously, SIPC's members had not fulfilled their obligation to maintain an adequate insurance fund. Since SIPC could not cover the Madoff customer losses, it had two choices: (a) to assess its member firms to cover the statutory liability; or (b) to vastly diminish the customer pool entitled to SIPC insurance. The Trustee and SIPC embraced the second course of action and

---

[1] *See* http://www.madofftrustee.com/claims-03.html (last accessed June 25, 2017).

the Trustee obtained the approval of the Second Circuit for his unique definition of "net equity" as the net investment of the customer, over generations. As a result, many customer claims were disallowed entirely because the customers were cruelly deemed to be "net winners." And even as to the "net losers," their entitlement to SIPC insurance was reduced by the netting out process. The Trustee pulled off this remarkable coup by representing to every court before which he appeared – and to the customer body and the general public – that Madoff/BLMIS never purchased any securities for his investment advisory customers and that these customers' funds were never used to purchase securities. We now know that these representations were totally false. However, the Trustee has resisted for two years in producing the evidence of his dishonesty. We are writing to request an order compelling the Trustee to give Defendants' access to the entire BLMIS Database which, to date, the Trustee has refused to give us access to. With such access, we will be able to match up securities in Madoff's/BLMIS' inventory with securities on Defendants' statements.

## B.     The Trustee has been repeatedly ordered to produce all trading records

The Trustee goes to great lengths to deny access to Madoff's/BLMIS' trading records, despite multiple court orders requiring their production and despite his having a duty to investigate the Debtor and disclose to the entire creditor body the facts relating to the Debtor's fraud. *See* 15 U.S.C. §§ 78*fff*-1(d)(3) (a SIPA trustee shall "report to the court any facts ascertained by the Trustee with respect to fraud, misconduct, mismanagement, and irregularities" of the debtor). Your Honor has already recognized that Madoff's trading records are highly relevant and they go to "significant" legal issues in these cases, *i.e.*, the calculation of Defendants' Net Equities and thus their clawback liability. (*See* March 15, 2017 Order, ECF No. 15236 at 2). As Judge Bernstein indicated to the Trustee on June 29, 2017, **there are "two orders directing you to turn over the documents."** (*See* June 29, 2017 Transcript at 74:14-15, Ex. A) (emphasis added).

Judge Bernstein always made it clear that the Trustee has an obligation to produce *all* of Madoff's trading records. (*See, e.g.*, May 17, 2016 Transcript, Ex. B, at 69:19-22) (THE COURT: "Well, if the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room . . . ."); (*see also id.* at 68:12-12). Your Honor has likewise ordered the Trustee to produce all trading records. (*See* January 7, 2017 Order, ECF No. 14807 at 3) ("To the extent there are any additional relevant records of securities trading that have not been made available . . . through Data Room 1, they must promptly be produced.").

During the December 13, 2016 hearing in front of Your Honor, the Trustee represented that he would produce all trading records. (*See* December 13, 2016 Transcript, Ex. C, at 145:23-146:5) (MR. JACOBS: "We will look for and have been looking for stuff – any additional stock trading records as to earlier period of time . . . to the extent we find them or restore them or can obtain them from DTCC or any other method, we will produce them to you and will put them in the data room. Absolutely."). The Trustee made similar representations during the January 5, 2017 telephone conference with Your Honor. (*See* January 5, 2017 Transcript, attached as Ex. D, at 30:14-16) (MR JACOBS: "If it's a trading record, if it's a BLMIS trading record of securities having been traded, we will produce it.").

**C.    The Trustee promised to share access to the BLMIS Database**

Defendants have been requesting Madoff's trading records for well over two years now and the Trustee has been representing either that he has already produced all trading records or that he will do so.  (*See, e.g.*, Defendants' August 29, 2016 motion to compel the Trustee to produce trading records, ECF No. 13962).  Both representations were false.  On November 14, 2017, I met with Mr. Sheehan and Mr. Shifrin at their office to discuss the specific documents we were seeking.  I explained that, as I have always said, we want production of all third party documents evidencing the purchase, sale or custody of securities by Madoff and/or by BLMIS for the entire period from 1980 on.  Mr. Shifrin promised to produce these documents.  However, what the Trustee did, instead, was only produce third party "bank" account records that the Trustee had subpoenaed.  Obviously, we did not request "bank" account records.  We requested trading records.  Moreover, since banks generally keep records for only six years, this maneuver allowed the Trustee to continue to conceal all trading records, from 1980 – 2008, that are in the BLMIS data base and only produce six years of "bank" records.

At a meeting with the Trustee's counsel and all defense counsel on June 5, 2018, Mr. Sheehan finally agreed to give defense counsel access to the BLMIS database.  (*See* July 25, 2018 Transcript, attached as Ex.E, at 26:13-15) (MR. BELL: "In the context of that discussion, the BLMIS database came up and Mr. Sheehan did represent that the Trustee is certainly open to producing that database.").  Sharing access to the BLMIS Database would finally allow Defendants to access Madoff's trading records, which the Trustee has deliberately concealed.  It is the obvious solution to the Trustee's deliberate concealment of material evidence and yet, after finally making this offer, the Trustee rescinded his promise and indicated that he would not give all defense counsel access to the BLMIS data base.

Moreover, giving defense counsel access to the BLMIS Database does not impose any burden on the Trustee's counsel (unless he wants to remove documents and continue to conceal them).  On July 25, 2018, Defendants raised this with Judge Bernstein, who granted permission to either file a motion or make this application to Your Honor.  (*See id.*  at 24:20-21) ("So, with respect to these trading records, just make a motion or go back to Judge Moss [sic] . . . .").  Since July 25, 2018, we have made attempts to gain voluntary compliance by the Trustee.  Those attempts have proven fruitless.  See, for example, my September 14, 2018 letter to the Trustee's counsel annexed hereto as Ex. F.

We ask Your Honor to order the Trustee to give the Defendants complete access to the BLMIS Database.  The relevance of the trading records is obvious and multiple court orders require their production.  Moreover, there is simply no basis for the Trustee to suggest that Defendants should have to share the financial responsibility of granting them access, particularly in view of the Trustee's violation of several court orders and the fact that SIPC and the Trustee have expended over $2 billion in this proceeding – as much as it would have cost SIPC to comply with the SIPC insurance requirements of SIPA. Instead of the money going to the BLMIS customers, as a result of the Trustee's dishonesty, at least $1 billion of SIPC money has gone to the Trustee's law firm.  Yet, the Trustee continues to conceal material evidence.

### D.    The Trustee should be sanctioned

Under Rule 37(b)(2), the Trustee is obligated to pay the costs of production and, in addition, to pay the Defendants' reasonable attorneys' fees in seeking the Trustee's compliance with two court orders.  *See* Fed. R. Civ. P. 37(b)(2) (if a party "fails to obey an order to provide or permit discovery. . . . the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure") (emphasis added); *Intertec Contracting v. Turner Steiner Int'l, S.A.,* 2001 WL 812224 at *11 (S.D.N.Y. July 18, 2001) ("[F]ailure to comply with discovery orders justly allows the court to impose costs upon the failing party . . . .  The Second Circuit has repeatedly emphasized the importance of complying with discovery orders of the Court, warning that '[a] party who flouts such orders does so at his peril.'") (citation omitted).  *See also Moore's Federal Practice* § 37.50[1][a] ("[A] court should not permit the moving party to suffer net economic losses as a result of another party's violation of a discovery order.").  While the Trustee's law firm is paid handsomely by SIPC for concealing material evidence, the Defendants have been forced to expend whatever little money they have left to try to force the Trustee to comply with his obligations under the Federal Rules of Civil Procedure.  The Defendants are entitled to be compensated for their legal expenses.

## II.    The Trustee's position

Ms. Chaitman requests an order compelling the wholesale production of approximately 30 million documents—a collection comprising every hard-copy and electronic document recovered from the operative floors of BLMIS headquarters at the Lipstick Building.  Ms. Chaitman makes this application without any regard to relevance and proportionality considerations, and without using the detailed indices, long produced by the Trustee, providing a comprehensive itemization of all the BLMIS data in the Trustee's possession (*i.e.*, beyond what is in the BLMIS Database).  Because this request fails to comply with Your Honor's most recent March 15, 2017 order on the same subject of "trading records" (the "March 2017 Order"), Ms. Chaitman's request should be denied.

A brief history of this dispute is necessary to adequately contextualize Ms. Chaitman's instant application and, unfortunately, correct the multitude of falsehoods it contains.  On May 17, 2016, Judge Bernstein held a pre-motion discovery conference on Ms. Chaitman's proposed motion to compel.  At that conference, the Court went through each of Ms. Chaitman's discovery requests in an attempt to resolve the dispute, but the Court nevertheless permitted Ms. Chaitman to file a motion.  The motion was filed on August 29, 2016.  After fully briefing the motion, the parties referred the dispute to Your Honor for arbitration, which took place on December 13, 2016 (the "December 2016 Arbitration").  Notwithstanding Ms. Chaitman's efforts to mischaracterize this conference by taking certain quotes out of context, the Court did not "order" the Trustee to produce anything.  Indeed, if it had, Ms. Chaitman's motion and the subsequent arbitration would have been completely unnecessary.

Your Honor, however, has issued certain orders on this issue, and the Trustee has fully complied with them.  On December 15, 2016, in accordance with Your Honor's directives during the arbitration two days earlier, the Trustee sent Your Honor and Ms. Chaitman a letter detailing the steps the Trustee would take to identify the pre-1992 "trading records" Ms. Chaitman

requested. In that letter, the Trustee noted that he had identified 95 records from the pre-1992 period related to the National Securities Clearing Corporation ("NSCC"), an affiliate of the DTCC. In addition, the Trustee stated that he ran searches for "Depository Trust" and "National Securities" across the approximately 30 million records in the BLMIS Database and would immediately produce the 16,042 responsive documents. The Trustee also explained that he had identified 167 reels of microfilm that potentially contained records from these earlier periods, and that he would restore and search those documents for additional DTCC or NSCC records. Finally, the Trustee agreed to produce two comprehensive and searchable indices: an index of hard-copy materials stored at the BLMIS Warehouse (the "Warehouse Index") and a separate index of electronic media (the "Media Index"), which together reflect the entire universe of BLMIS data in the Trustee's possession. Ms. Chaitman never objected to these measures.

After the Trustee completed these productions, Ms. Chaitman filed a second motion to compel additional pre-1992 records without specifying the documents she was seeking or what she thought the Trustee was withholding. Nevertheless, in a good faith effort to provide Ms. Chaitman with everything she was interested in, the Trustee voluntarily produced, while the motion was still pending, the following additional materials: (i) the balance of the documents that were restored from the 167 microfilm reels described above; (ii) all documents restored from 34 additional reels with pre-1992 labeling that he has since identified; and (iii) all documents responsive to 147 search terms applied across the approximately 30 million records in the BLMIS Database. The Trustee explained that he based the 147 search terms on internal BLMIS reports reflecting purported trading activity that he identified in BLMIS's books and records.

Critically, based on these efforts by the Trustee, Your Honor denied Ms. Chaitman's second motion to compel on March 15, 2017, as memorialized in the March 2017 Order. The order directed Ms. Chaitman to: (i) use the indices the Trustee had produced, which he recognized "should enable Ms. Chaitman to formulate more focused requests for trading records;" (ii) "send the Trustee's Counsel a letter specifically identifying the additional documents Ms. Chaitman seeks to have produced, and where she believes they may be found;" and (iii) "confer in person regarding Defendants' request for BLMIS trading records." *Id.* at 6. If the dispute persisted, Your Honor directed the parties to send "a joint letter . . . detailing their remaining areas of disagreement." *Id.* Your Honor concluded by reminding the parties that Fed. R. Civ. P. 26 "requires that discovery requests be limited to items that are relevant to a party's claims or defenses <u>and</u> proportional to the needs of the case." *Id.* (emphasis in original).

For over a year, Ms. Chaitman has not only ignored this order, but has actively tried to circumvent it. First, Ms. Chaitman improperly raised this dispute with Judge Bernstein, demanding in June of 2017 (in connection with the Madoff "Day 2" Deposition briefing) that the Trustee restore all 5,300 available microfilm reels, which Ms. Chaitman falsely stated the Trustee had never disclosed (a request the Court denied after learning of the March 2017 Order). At the same time, and further ignoring the detailed procedure set forth in the March 2017 Order, Ms. Chaitman demanded that the Trustee produce millions of documents responsive to 22 broad search terms based on well-known financial institutions, such as "Barclays," "Morgan Stanley," and "Fidelity." The Trustee repeatedly reminded Ms. Chaitman of her obligations under the Order, explained that the production of millions of irrelevant documents was beyond the scope of

Fed. R. Civ. P. 26, and informed her that over one million of these documents were already
available to her in E-Data Room 1.  As such, the Trustee requested that Ms. Chaitman use the
already available documents to narrow her search terms and invited her to meet and confer
pursuant to the March 2017 Order.  For months, Ms. Chaitman refused these offers.

 The Trustee nevertheless continued to seek compromise with Ms. Chaitman, eventually
agreeing to produce documents responsive to two of her 22 search terms—a step the Trustee did
not need to take given Ms. Chaitman's failures to comply with the March 2017 Order or
otherwise meet and confer.  Recognizing that such broad search terms retrieved largely irrelevant
documents, Ms. Chaitman finally agreed to meet and confer with the Trustee on November 14,
2017 (the "November Meet and Confer"), but never sent the Trustee the letter Your Honor
directed her to send, or otherwise utilized the indices she had in her possession.  Instead, after
insisting for months that the Trustee produce millions of irrelevant documents, Ms. Chaitman
finally specified that she was only interested in third-party business records that appear to reflect
any BLMIS securities ownership or trading.  Contrary to Ms. Chaitman's mischaracterizations,
the parties agreed that the Trustee would run certain BLMIS bank account numbers across the
Rule 2004 materials in the Trustee's possession—which the Trustee obtained from various third
parties in response to Rule 2004 subpoenas—and produce responsive documents.  Ms. Chaitman
subsequently served a formal request for production, and the Trustee served responses and
objections on December 21, 2017.

 The Trustee produced all documents responsive to the search terms, applying the
parameters to which the parties had agreed, and thus fully complied with his obligations under
the March 2017 Order.  Inexplicably, Ms. Chaitman nevertheless submitted a letter to the Court
requesting permission to file a motion for sanctions.  At the subsequent hearing, the Court
informed Ms. Chaitman that Your Honor's March 2017 Order established a specific procedure
for dealing with this dispute, and if Ms. Chaitman proceeded with her motion, the Court would
likely assign costs to her for failing to follow that procedure.  During the hearing, Ms. Chaitman
also complained—for the first time and despite written records to the contrary—that the Trustee
improperly limited his search to third-party records without including the separate BLMIS
Database.  Despite the fact that Ms. Chaitman remained out of compliance with the March 2017
Order, and in a good faith effort to resolve this dispute, counsel for the Trustee affirmatively
contacted Ms. Chaitman (hours after the hearing) and informed her that the Trustee would run
the exact same search terms across the BLMIS Database and produce all responsive documents
to her, which the Trustee produced in June of 2018.  The Trustee also reminded Ms. Chaitman
that his investigation and review of the documents in the BLMIS Database is ongoing, and to the
extent he identifies any additional records that appear to reflect BLMIS securities ownership or
trading in the course of that investigation, he would supplement his productions.

 In total, since the December 2017 Arbitration, the Trustee has produced approximately
270,000 documents and 4,800,000 pages—including the restoration and production of all
documents stored on 206 microfilm reels.  Indeed, the Trustee has fully satisfied his obligations
pursuant to the parties' agreement at the November Meet and Confer and the March 2017 Order.
Conversely, Ms. Chaitman has never even referenced the Warehouse and Media Indices she has
had in her possession for nearly two years, let alone used them to make any targeted and

informed requests for additional documents consistent with Your Honor's directives.  Your Honor should therefore deny Ms. Chaitman's request for 30 million documents as inconsistent with both the March 2017 Order and Fed. R. Civ. P. 26, and also deny her motion for sanctions.[2]

*/s/ Helen Davis Chaitman*

Helen Davis Chaitman

*/s/ Maximillian S. Shifrin*

Maximillian S. Shifrin

---

[2] While the Trustee offered to make the BLMIS Database available, those representations were made during meet and confer discussions with multiple defense counsel in an attempt to reach a compromise and consensually resolve the multiple discovery-related issues raised by the Trustee's outstanding motion for an omnibus proceeding to address the nature of Madoff's Ponzi scheme.  Those meet and confer efforts were unfortunately unsuccessful, and the related offer to compromise was withdrawn based upon the failed negotiations.  Moreover, in advance of this submission, counsel for the Trustee again invited Ms. Chaitman to meet and confer to resolve all outstanding issues, but Ms. Chaitman refused.

10-04995-smb   Doc 126-3   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 2
Pg 9 of 55

# EXHIBIT A



Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-01789-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    SECURITIES INVESTOR PROTECTION CORPORATION,

6                    Plaintiff,

7            v.

8    BERNARD L. MADOFF INVESTMENT SECURITIES, L.L.C.,

9                    Defendants.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   Adv. Case No. 10-04292-smb

12   - - - - - - - - - - - - - - - - - - - - - - - - - - x

13   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

14   MADOFF INVESTMENT SECURITIES LLC,

15                   Plaintiff,

16           v.

17   ROBERT ROMAN,

18                   Defendants.

19   - - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25

```
 1                    U.S. Bankruptcy Court

 2                    One Bowling Green

 3                    New York, NY  10004

 4

 5                    June 29, 2017

 6                    11:02 AM

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  K. SU
```

Page 3

1    Hearing re:  08-01789-smb Conference re Form of Order

2    Applying Discovery Arbitrator's Orders to Other Cases

3

4    Hearing re:  08-01789-smb Conference re Madoff Day 2

5    Deposition Topics

6

7    Hearing re:  08-01789-smb Notice of Agenda for Matters

8    Scheduled for Hearing on June 29, 2017

9

10    Hearing re:  10-04292-smb Trustee's Motion to Compel

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   MCDERMOTT WILL & EMERY LLP

 4         Attorneys for

 5         340 Madison Avenue

 6         New York, NY 10173

 7

 8   BY:  MICHAEL R. HUTTENLOCHER

 9

10   CHAITMAN LLP

11         Attorneys for

12         465 Park Avenue

13         New York, NY 10022

14

15   BY:  HELEN DAVIS CHAITMAN, ESQ.

16

17   BAKER HOSTETLER

18         Attorneys for the Trustee

19         45 Rockefeller Plaza

20         New York, NY 10111

21

22   BY:  STACEY A. BELL

23         MAXIMILLIAN S. SHIFRIN

24         EDWARD J. JACOBS

25         DAVID J. SHEEHAN
```

Page 5

```
 1   DENTONS US LLP

 2         Attorneys for

 3         1221 Avenue of the Americas

 4         New York, NY 10020

 5

 6   BY:  CAROLE NEVILLE

 7

 8   SCHULTE ROTH & ZABEL LLP

 9         Attorneys for Picower Parties

10         919 Third Avenue

11         New York, NY 10022

12

13   BY:  MICHAEL KWON

14

15   HUNTON & WILLIAMS LLP

16         Attorneys for

17         200 Park Avenue

18         New York, NY 10166

19

20   BY:  ROBERT A. RICH

21

22

23

24

25
```

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1268-2   Filed 01/16/19   Entered 01/16/19 18:01:56   Exhibit 2
Vol I pg 37 of 95

Page 6

    1   ALSO PRESENT TELEPHONICALLY:

    2

    3   KEVIN H. BELL

    4   JAMES H. BURBAGE

    5   NICHOLAS J. CREMONA

    6   PATRICK MOHAN

    7   DAVID J. SHEEHAN

    8   CATHERINE E. WOLTERING

    9

   10

   11

   12

   13

   14

   15

   16

   17

   18

   19

   20

   21

   22

   23

   24

   25

1           DAVID SHEEHAN:  It sounds easy.

2           THE COURT:  All right.

3           DAVID SHEEHAN:  But we've been doing that for a

4    year and a half with Ms. Chaitman.

5           MS. CHAITMAN:  That is untrue.

6           THE COURT:  No, no, stop.  I don't know what's in

7    there, you don't know what's in there, and on that basis,

8    you can't say I'm not going to turn it over.

9           DAVID SHEEHAN:  Yeah, but she hasn't shown to you

10   what she's saying is true.

11          THE COURT:  There are two orders directing you --

12          DAVID SHEEHAN:  But why does she get discovery

13   when she can't even prove what she's saying?

14          THE COURT:  There are two orders directing you to

15   turn over the documents.  You haven't told me that they're

16   not relevant.  You --

17          DAVID SHEEHAN:   I'm going to look at it, and if I

18   don't think they are, I'm going to tell Your Honor that.

19          THE COURT:  You haven't made a motion for a

20   protective order, and there are two orders to turn over the

21   documents.

22          DAVID SHEEHAN:  I'd like the protective order.

23   Well, I do.

24          MS. CHAITMAN:  Well, Judge, you know --

25          DAVID SHEEHAN:  It's about time she put up or shut

08-01789-cmm   Doc-18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc-1263-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 2
Vol I Pg 39 of 95

Page 82

```
 1                   C E R T I F I C A T I O N

 2

 3        I, Sonya Ledanski Hyde, certified that the foregoing

 4    transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8    Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  July 3, 2017
```

10-04995-smb    Doc 126-3    Filed 01/16/19    Entered 01/16/19 13:01:56    Exhibit 2
Pg 18 of 95

# EXHIBIT B

Page 1

```
 1    UNITED STATES BANKRUPTCY COURT

 2    SOUTHERN DISTRICT OF NEW YORK

 3    Case No. 08-99000-smb

 4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

 5    In the Matter of:

 6

 7    ADMINISTRATIVE CASE RE: 08-01789 (SECURITIES INVEST-

 8    ADVERSARY PROCEEDING),

 9

10            Debtor.

11    - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13    Adv. Case No. 10-04995-smb

14    - - - - - - - - - - - - - - - - - - - - - - - - - - x

15    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

16    MADOFF INVESTMENT SECURITIES LLC,

17                  Plaintiff,

18          v.

19    TRUST u/art FOURTH o/w/o ISRAEL WILENITZ,

20                  Defendants.

21    - - - - - - - - - - - - - - - - - - - - - - - - - - x

22

23

24

25
```

08-01789-smb   Doc 18573-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 226   Filed 05/01/18   Entered 05/01/18 13:58:44   Main Document
Vol I Pg 42 of 95   Pg 41 of 204



Page 2

1    Adv. Case No. 10-05184-smb

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4    MADOFF INVESTMENT SECURITIES LLC,

5                    Plaintiff,

6            v.

7    LAURA ANN SMITH REVOCABLE LIVING TRUST et al,

8                    Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11   Adv. Case No. 10-04352-smb

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

14   MADOFF INVESTMENT SECURITIES LLC,

15                   Plaintiff,

16           v.

17   RAR ENTREPRENEURIAL FUND. LTD. et al.,

18                   Defendants.

19   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25

```
 1                    U.S. Bankruptcy Court

 2                    One Bowling Green

 3                    New York, NY  10004

 4

 5                    May 17, 2016

 6                    10:51 AM

 7

 8

 9    B E F O R E :

10    HON STUART M. BERNSTEIN

11    U.S. BANKRUPTCY JUDGE

12

13

14

15    Hearing re:  10-04995-smb, 10-05184-smb, 10-04352-smb The

16    Trustee's Request For Leave To File A Motion For a

17    Protective Order in Wilentiz.

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde
```

```
 1   A P P E A R A N C E S :

 2

 3   WINDELS MARX LANE & MITTENDORF, LLP

 4        Special Counsel to Irving H. Picard, as Trustee

 5        156 West 56th Street

 6        New York, NY 10019

 7

 8   BY:  KIM M. LONGO

 9        JOHN J. TEPEDINO

10

11   BAKER HOSTETLER

12        Attorney for the Trustee

13        45 Rockefeller Plaza

14        New York, NY 10111

15

16   BY:  EDWARD J. JACOBS

17        NICHOLAS J. CREMONA

18

19   CHAITMAN LLP

20        Attorney for Defendants

21        465 Park Avenue

22        New York, NY 10022

23

24   BY:  HELEN DAVIS CHAITMAN, ESQ.

25
```

08-01789-smb Doc-18573-2 Filed 08/18/19 Entered 08/18/19 13:30:42 Appendix
18-04895-smb Doc-1-26 Filed 08/08/18 Entered 08/08/18 03:03:19am Document
Vol I Pg 46 of 95
Pg 45 of 204

```
 1    ALSO PRESENT TELEPHONICALLY:

 2    KEVIN H. BELL

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 68

1    BLMIS bought 100 shares of IBM and 50 shares show up on

2    Wilenitz.

3          MR. JACOBS:  Right.

4          THE COURT:  Who's to say he didn't actually own

5    that stock?

6          MR. JACOBS:  I would love to be able to --

7          THE COURT:  Which I guess would be relevant to his

8    net equity claim or his claim in the SIRA case.

9          MR. JACOBS:  I wish I could give you a

10   satisfactory answer but in the time that we have today, I

11   can't replicate the report of our expert, which, in

12   painstaking detail goes through all of the reasons why we

13   believe there was never a security traded in connection with

14   the fraudulent Ponzi scheme being operated and the IA

15   business.

16         THE COURT:  So, how does she test that conclusion?

17         MR. JACOBS:  She tests that conclusion the same

18   way our expert does, by examining the underlying records.

19   All of those records again have been made available to Ms.

20   Chaitman.  They're in the data room.  Those other records

21   are expert reports.

22         THE COURT:  Maybe that's the answer.  If there are

23   records -- because they do have the DTC records, at least

24   from the period when Wilenitz was investing.  If the records

25   show that BLMIS actually owned something, and the same stock

10-04285-smb Doc 18573-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
Vol I Pg 47 of 96

1    shows up in Wilenitz's account statement, you can make the

2    argument that he actually owned that stock.  But you can do

3    that (indiscernible) and the information has been made

4    available to you.

5            And the sense I'm getting -- and I understand that

6    it's a lot of work -- is you want the Trustee to do this for

7    you, but you're going to have to do this yourself if this

8    stuff is available.

9            MS. CHAITMAN:  You know, Judge, with 4 million

10   pages of documents, the least the Trustee could do is

11   specify the specific Bates Numbers.  Because I don't want to

12   be in a position where we go to trial...  I mean, for all I

13   know, the data room is updated constantly and new documents

14   are added.  How am I going to prove at trial that certain

15   documents were not made available to me?  I mean, it's

16   impossible.  Why can't the Trustee be bound to tell me these

17   are the documents responsive to this request?

18           THE COURT:  But that doesn't solve your problem...

19   Well, if the Trustee has additional documents, he's got to

20   supplement the disclosure or the production, which he does

21   by adding them to the data room, and maybe you have a

22   continuing duty to check the data room.

23           But part of the problem is you've thrown such a

24   broad net over what you're looking for, instead of the

25   specific documents relevant -- that I think seem to be

```
1                   C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4      transcript is a true and accurate record of the proceedings.

5

6

7

8      Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  May 19, 2016
```

Sonya Ledanski Hyde

Digitally signed by Sonya Ledanski Hyde
DN: cn=Sonya Ledanski Hyde, o, ou, email=digital1@veritext.com, c=US
Date: 2016.05.19 16:30:11 -04'00'

10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:01:57 Exhibit 2
Pg 27 of 95

EXHIBIT C

Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------)
In re:                         ) SIPA LIQUIDATION
                               )
BERNARD MADOFF INVESTMENT      ) No. 08-01789 (SMB)
SECURITIES LLC,                )
                               )
              Debtor.          )(Substantively
                               ) Consolidated)
-------------------------------)
In re:                         )
                               )
BERNARD L. MADOFF,             )
                               )
              Debtor.          )
-------------------------------)
IRVING H. PICARD, Trustee for  )
the Liquidation of Bernard L.  )
Madoff Investment Securities   )
LLC,                           )
                               ) Adv. Pro. No.
              Plaintiff,       ) 10-04995 (SMB)
                               )
                 v.            )
                               )
TRUST U/ART FOURTH O/W/O       )
ISRAEL WILENITZ,               )
                               )
EVELYN BEREZIN WILENITZ,       )
individually, and as Trustee   )
and Beneficiary of the Trust   )
U/ART Fourth O/W/O Israel      )
Wilenitz,                      )
                               )
SARA SEIMS, as Trustee of the  )
Trust U/ART Fourth O/W/O       )
Israel Wilenitz,               )
                               )
              Defendants.      )
-------------------------------)
```

(CAPTION CONTINUED ON THE NEXT PAGE)

                                                              Page 2

```
 1   ------------------------------)
     IRVING H. PICARD, Trustee for )
 2   the Liquidation of Bernard L.  )
     Madoff Investment Securities   )
 3   LLC,                           )
                                    ) Adv. Pro. No.
 4              Plaintiff,          ) 10-04818 (SMB)
                                    )
 5   v.                             )
                                    )
 6   TOBY HARWOOD,                  )
                                    )
 7              Defendant.          )
     ------------------------------)
 8   IRVING H. PICARD, Trustee for )
     the Liquidation of Bernard L.  )
 9   Madoff Investment Securities   )
     LLC,                           )
10                                  ) Adv. Pro. No.
                Plaintiff,          ) 10-04914 (SMB)
11                                  )
     v.                             )
12                                  )
     EDYNE GORDON, in her capacity  )
13   as the executrix and primary   )
     beneficiary of the estate of   )
14   Allen Gordon,                  )
                                    )
15              Defendant.          )
     ------------------------------)
16   IRVING H. PICARD, Trustee for )
     the Liquidation of Bernard L.  )
17   Madoff Investment Securities   )
     LLC,                           )
18                                  ) Adv. Pro. No.
                Plaintiff,          ) 10-04826 (SMB)
19                                  )
     v.                             )
20                                  )
     ESTATE OF BOYER PALMER, DIANE  )
21   HOLMERS, in her capacity as    )
     Personal Representative of the )
22   Estate of Palmer, and BRUCE    )
     PALMER, in his capacity as     )
23   Personal Representative of the )
     Estate of Boyer Palmer,        )
24                                  )
                Defendant.          )
25   ------------------------------)
```

Page 3

```
 1   ------------------------------)
     IRVING H. PICARD, Trustee for  )
 2   the Liquidation of Bernard L.  )
     Madoff Investment Securities   )
 3   LLC,                           )
                                    ) Adv. Pro. No.
 4            Plaintiff,            ) 10-04644 (SMB)
                                    )
 5   v.                             )
                                    )
 6   RUSSELL L. DUSEK,              )
                                    )
 7            Defendant.           )
     ------------------------------)
 8   IRVING H. PICARD, Trustee for  )
     the Liquidation of Bernard L.  )
 9   Madoff Investment Securities   )
     LLC,                           )
10                                  ) Adv. Pro. No.
              Plaintiff,            ) 10-04541 (SMB)
11                                  )
     v.                             )
12                                  )
     KENNETH W. PERLMAN; FELICE J.  )
13   PERLMAN; and SANFORD S.        )
     PERLMAN,                       )
14                                  )
              Defendant.            )
15   ------------------------------)
     IRVING H. PICARD, Trustee for  )
16   the Liquidation of Bernard L.  )
     Madoff Investment Securities   )
17   LLC,                           )
                                    ) Adv. Pro. No.
18            Plaintiff,            ) 10-04728 (SMB)
                                    )
19   v.                             )
                                    )
20   BRUNO DIGIULIAN,               )
                                    )
21            Defendant.            )
     ------------------------------)
22
23
24
25
```

AA49

Page 4

```
 1   ------------------------------)
     IRVING H. PICARD, Trustee for )
 2   the Substantively Consolidated )
     SIPA Liquidation of Bernard L. )
 3   Madoff Investment Securities   )
     LLC and Bernard L. Madoff,     )
 4                                  ) Adv. Pro. No.
                    Plaintiff,      ) 10-04905 (SMB)
 5                                  )
     v.                             )
 6                                  )
     TRAIN KLAN, a Partnership;     )
 7   FELICE T. LONDA, in her        )
     capacity as a Partner in Train )
 8   Klan; CLAUDIA HELMIG, in her   )
     capacity as a Partner in Train )
 9   Klan; TIMOTHY LANDRES, in his  )
     capacity as a Partner in Train )
10   Klan; PETER LONDA, in his      )
     capacity as a Partner in Train )
11   Klan; TIMOTHY HELMIG, in his   )
     capacity as a Partner in Train )
12   Klan; and WENDY LANDRES, in her)
     capacity as a Partner in Train )
13   Klan,                          )
                                    )
14                 Defendants.      )
     ------------------------------)
15   IRVING H. PICARD, Trustee for  )
     the Substantively Consolidated )
16   SIPA Liquidation of Bernard L. )
     Madoff Investment Securities   )
17   LLC and Bernard L. Madoff,     )
                                    ) Adv. Pro. No.
18                 Plaintiff,       ) 10-004621 (SMB)
                                    )
19   v.                             )
                                    )
20   DONALD A. BENJAMIN,            )
                                    )
21                 Defendant.       )
     ------------------------------)
22
23
24
25
```

**AA50**

Page 5

```
 1        TRUSTEE'S MOTION TO COMPEL DISCOVERY IN THE

 2             THREE ADVERSARY PROCEEDINGS:

 3

         i)  Picard v. Benjamin, Adv. Pro. No. 10-04621
 4      ii)  Picard v. DiGiulian, Adv. Pro. No. 10-04728
        iii) Picard v. Train Klan, Adv. Pro. No. 10-04905
 5

 6                     -and-

 7   CHAITMAN LLP'S MOTION TO COMPEL DISCOVERY AND THE
     TRUSTEE'S CROSS-MOTION FOR A PROTECTIVE ORDER IN ONE
 8   ADVERSARY PROCEEDING, PICARD V. WILENITZ, ADV. PRO.
     NO. 10-04995
 9

10                     -and-

     CHAITMAN LLP'S MOTION FOR PROTECTIVE ORDER AND QUASH
11   TRUSTEE'S DEPOSITIONS IN THE FOLLOWING ADVERSARY SIX
     PROCEEDINGS:
12
         i)  Picard v. Perlman, Adv. Pro. No. 10-0454
13      ii)  Picard v. Gordon, Adv. Pro. No. 10-04914
        iii) Picard v. Harwood, Adv. Pro. No. 10-04818
14      iv)  Picard v. Estate of Palmer, Adv. Pro. No.
     10-04826
15       v)  Picard v. DiGiulian, Adv. Pro. No. 10-04728
        vi)  Picard v. Dusek, Adv. Pro. No. 10-04644
16

17             TRANSCRIPT OF PROCEEDINGS

18   in the above-titled action, held on Tuesday,

19   December 13, 2016, at JAMS, 680 Eighth Avenue, New

20   York, New York, commencing at approximately 10:00

21   a.m., before Eileen Mulvenna, CSR/RMR/CRR, Certified

22   Shorthand Reporter, Registered Merit Reporter,

23   Certified Realtime Reporter, and Notary Public of

24   the State of New York.

25
```

AA51

```
                                                             Page 6

   1   B E F O R E :

   2

                   HON.  FRANK MAAS (RET.), Arbitrator
   3                     620 Eighth Avenue
                         34th Floor
   4                     New York, New York 10018
                         fmaas@jamsadr.com
   5

   6
       A P P E A R A N C E S :
   7

   8

           BAKER HOSTETLER LLP
   9       Attorneys for the Trustee
               811 Main Street
  10           Suite 1100
               Houston, Texas 77002-6111
  11       BY:  DEAN HUNT, ESQ.
                dhunt@bakerlaw.com
  12            MARIE L. CARLISLE, ESQ.
                marie.carlisle@bakerlaw.com
  13
                       -and-
  14
           BAKER HOSTETLER LLP
  15           45 Rockefeller Plaza
               14th Floor
  16           New York, New York  10111
           BY:  EDWARD J. JACOBS, ESQ.
  17            edward.jacobs@bakerlaw.com

  18

  19
           CHAITMAN LLP
  20       Attorneys for Defendants
               465 Park Avenue
  21           New York, New York  10022
           BY:  HELEN DAVID CHAITMAN, ESQ.
  22            hchaitman@chaitmanllp.com
                GREGORY M. DEXTER, ESQ.
  23            gdexter@chaitmanllp.com

  24

  25
```

Trustees Motion to Compel Discovery                 Arbitration 12/13/2016

                                                            Page 145

     1          obtained them in part from a Rule 2004

     2          subpoena and part from what we restored on

     3          the BLMIS DTC terminal, in part from

     4          documents we got from the government.

     5                We compiled all of that.  It is all

     6          available in a specifically labeled folder

     7          called DTC.  There are also folders in that

     8          exact same section that are labeled "FINRA."

     9          All of the categories of documents you're

    10          looking for, as we've written you in letters

    11          and attempted to explain to you many times in

    12          the past, are actually in their own folders

    13          in the data room so they can be -- they are

    14          accessible that way.

    15                Now, with respect to earlier periods

    16          of the fraud, that is an allegation and an

    17          issue that you recently raised in the PW

    18          context pursuant to Mr. Madoff's testimony.

    19          Even though it was outside the scope of the

    20          order allowing that testimony, the judge has

    21          now allowed a second deposition on that

    22          subject.

    23                We will look for and have been looking

    24          for stuff -- any additional stock trading

    25          records as to earlier periods of time in

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
10-04995-smb    Doc 126-2    Filed 01/16/19    Entered 01/16/19 13:31:56    Exhibit
Vol I Pg 57 of 204
Page 57 of 95

Trustees Motion to Compel Discovery                        Arbitration 12/13/2016

Page 146

1          addition to what is currently in the data

2          room.  To the extent we find them or restore

3          them or can obtain them from DTC or any other

4          source, we will produce them to you and we

5          will put them in the data room.  Absolutely.

6               MS. CHAITMAN:  But see --

7               THE ARBITRATOR:  Let me rephrase that

8          for a second and see whether it's correct.

9               That to date, except to the extent

10         that they may be in DTC records or FINRA

11         records in that data room, you haven't found

12         any other records?

13              MR. JACOBS:  We're currently looking.

14         Because it's an active issue that

15         Ms. Chaitman has raised in the PW context in

16         discovery.  There's a deposition scheduled

17         for December 20th where Mr. Madoff will give

18         additional testimony as to those issues.

19              And clearly we are going to want to

20         respond, if we can to meet with the debtor's

21         books and records that are available.  So we

22         are actively looking for that material.

23              THE ARBITRATOR:  December 20th is --

24              MS. CHAITMAN:  Next Tuesday.

25              THE ARBITRATOR:  When are you going to

**AA54**

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
18-04995-smb    Doc 1226-2    Filed 01/16/19    Entered 01/16/19 13:01:50    Exhibit 2
Vol I Pg 58 of 95
Pg 59 of 204

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 246

```
 1                   C E R T I F I C A T E

 2         .

 3    STATE OF NEW YORK       )

 4                            ) ss:

 5    COUNTY OF WESTCHESTER )

 6

 7             I, Eileen Mulvenna, CSR/RMR/CRR and a

 8    notary public within and for the State of New York,

 9    do hereby certify:

10             That I reported the proceedings in the

11    within-entitled matter, and that the within

12    transcript is a true record of such proceedings.

13             I further certify that I am not related by

14    blood or marriage to any of the parties in this

15    matter and that I am in no way interested in the

16    outcome of the matter.

17             IN WITNESS WHEREOF, I have hereunto set my

18    hand this 15th day of December, 2016.

19

20             ------------------------------
               Eileen Mulvenna, CSR/RMR/CRR
21

22

23

24

25
```

10-04995-smb Doc 126-3 Filed 01/18/19 Entered 01/18/19 13:01:56 Exhibit 2
Pg 37 of 95

# EXHIBIT D

Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------x
SECURITIES INVESTOR PROTECTION :
CORPORATION,                           Adv. Pro. No.
                               :       08-01789 (SMB)
          Plaintiff-Applicant,
                               :       SIPA LIQUIDATION
     -against-
                               :       (Substantively
                                        Consolidated)
BERNARD L. MADOFF INVESTMENT   :
SECURITIES, LLC,
                               :
          Defendant.
-------------------------------x
In Re:                         :

BERNARD L. MADOFF,             :

          Debtor.              :
-------------------------------x
IRVING H. PICARD, Trustee      :
for the Liquidation of                 Adv. Pro. No.
Bernard L. Madoff Investment   :       10-04995 (SMB)
Securities, LLC,
                               :
          Plaintiff,
                               :
     -against-
                               :
TRUST U/ART FOURTH O/W/O
ISRAEL WILENITZ, et al.,       :

          Defendants.          :
-------------------------------x

          TRANSCRIPT of telephone conference as
taken by and before MONIQUE VOUTHOURIS, Certified
Court Reporter, RPR, CRR and Notary Public of the
States of New York and New Jersey, on Thursday,
January 5, 2017, commencing at 11:00 a.m.

AA57

```
                                                                    Page 2

  1   B E F O R E:

  2

          HON. FRANK MAAS (RET.), Arbitrator
  3       620 Eighth Avenue
          34th Floor
  4       New York, New York  10018
          fmaas@jamsadr.com
  5

  6

      A P P E A R A N C E S:
  7

  8       BAKER HOSTETLER LLP
          811 Main Street
  9       Suite 1100
          Houston, Texas  77002-6111
 10       BY:  DEAN D. HUNT, ESQ.
               dhunt@bakerlaw.com
 11
               MARIE L. CARLISLE, ESQ.
 12            mcarlisle@bakerlaw.com

 13               -and-

 14       BAKER HOSTETLER LLP
          45 Rockefeller Plaza
 15       14th Floor
          New York, New York  10111-0100
 16       BY:  EDWARD J. JACOBS, ESQ.
               ejacobs@bakerlaw.com
 17       For Irving Picard, Trustee

 18

 19       CHAITMAN LLP
          465 Park Avenue
 20       New York, New York  10022
          BY:  HELEN DAVIS CHAIRMAN, ESQ.
 21            hchaitman@chaitmanllp.com

 22            GREGORY M. DEXTER, ESQ.
               gdexter@chaitmanllp.com
 23       For a number of defendants

 24

 25
```

Picard v Wilenitz                          Telephone Conference 1/5/2017

```
                                                        Page 30

 1                  MR. JACOBS:  We are -- we are

 2      right now using the search terms that I

 3      disclosed in my letter in December to identify

 4      any records or reports that reflect securities

 5      trades having been conducted historically at

 6      BLMIS for any point in time.

 7                  MS. CHAITMAN:  Okay.  So when you

 8      say relevant, I mean, you're not saying we're

 9      not putting -- we're not putting in any evidence

10      of these trades, you're not distinguishing among

11      trades, right?  I mean, you're putting all the

12      trading records in.

13                  MR. JACOBS:  That's correct, yeah.

14      If it's a trading record, if it's a BLMIS

15      trading record of securities having been traded,

16      we will produce it.

17                  MS. CHAITMAN:  Okay.  Okay.  So,

18      you know, on that I guess the only concern I

19      have, and I'm not sure that it's something that,

20      Judge, you ought to consider right now, but we

21      have scheduling orders in every case for fact

22      discovery.  And, obviously, this is -- this is a

23      major new area of discovery which we will need

24      time to analyze, and the present fact discovery

25      orders do not -- did not contemplate this whole
```

**AA59**

Page 57

1                           CERTIFICATE

2

3                    I, MONIQUE VOUTHOURIS, a Notary

4      Public of the States of New York and New Jersey,

5      and Certified Court Reporter of the State of New

6      Jersey, License No. X100834, do hereby certify

7      that the foregoing is a true and accurate

8      transcript of the telephone conference as taken

9      stenographically by and before me on the date

10     hereinbefore set forth.

11                   I DO FURTHER CERTIFY that I am

12     neither a relative nor employee nor attorney nor

13     counsel of any of the parties to this action,

14     and that I am neither a relative nor employee of

15     such attorney or counsel, and that I am not

16     financially interested in the action.

17

18                   *Monique Vouthouris*

19

20         Notary Public of the State of New York

21         My Commission expires December 1, 2019

22

23

24     Dated:  January 6, 2017

25

EXHIBIT E



Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Lead Case No. 08-99000-smb

4    Case No. 08-01789-smb

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7    SECURITIES INVESTOR PROTECTION CORPORATION,

8                    Plaintiff,

9            v.

10   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, et al.,

11                   Defendants.

12

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14                   United States Bankruptcy Court

15                   One Bowling Green

16                   New York, NY  10004

17

18                   July 25, 2018

19                   10:10 AM

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

| Page 2 | Page 4 |
|---|---|
| 1 HEARING re Conference re Motion for an Order Establishing | 1 PRYOR CASHMAN LLP |
| 2 Omnibus Proceeding for the Purpose of Determining the | 2   Attorneys for the Defendants |
| 3 Existence, Duration and Scope of the Ponzi Scheme at BLMIS | 3   7 Times Square |
| 4 | 4   New York, NY 10036 |
| 5 | 5 |
| 6 | 6 BY:  RICHARD LEVY, JR. |
| 7 | 7 |
| 8 | 8 MCDERMOTT WILL & EMERY LLP |
| 9 | 9   Attorneys for Sage Associates, Sage Realty, Malcolm |
| 10 | 10   Sage, Martin Sage, Ann Sage |
| 11 | 11   340 Madison Avenue |
| 12 | 12   New York, NY 10173 |
| 13 | 13 |
| 14 | 14 BY:  ANDREW B. KRATENSTEIN |
| 15 | 15 |
| 16 | 16 HUNTON ANDREWS KURTH LLP |
| 17 | 17   Attorneys for Defendants |
| 18 | 18   200 Park Avenue |
| 19 | 19   New York, NY 10166 |
| 20 | 20 |
| 21 | 21 BY:  RICHARD A. RICH |
| 22 | 22 |
| 23 | 23 |
| 24 | 24 |
| 25 Transcribed by:  Sonya Ledanski Hyde | 25 |

| Page 3 | Page 5 |
|---|---|
| 1 A P P E A R A N C E S : | 1 FISHERBROYLES LLP |
| 2 | 2   Attorneys for Defendants |
| 3 BAKER HOSTETLER | 3   445 Park Avenue |
| 4   Attorneys for Trustee BLMIS | 4   New York, NY 10022 |
| 5   45 Rockefeller Plaza | 5 |
| 6   New York, NY 10111 | 6 BY:  RICHARD A. KIRBY |
| 7 | 7 |
| 8 BY:  NICHOLAS J. CREMONA | 8 STEVENS & LEE |
| 9   AMANDA E. FEIN | 9   Attorneys for Legacy Capital |
| 10   STACEY A. BELL | 10   485 Madison Avenue, 20th Floor |
| 11   MELISSA L. KOSACK | 11   New York, NY 10022 |
| 12   MAXIMILLIAN S. SHIFRIN | 12 |
| 13 | 13 BY:  NICHOLAS F. KAJON |
| 14 DENTONS US LLP | 14 |
| 15   Attorneys for Defendants | 15 CHAITMAN LLP |
| 16   1221 Avenue of the Americas | 16   Attorneys for Defendants |
| 17   New York, NY 10020 | 17   465 Park Avenue |
| 18 | 18   New York, NY 10022 |
| 19 BY:  CAROLE NEVILLE | 19 |
| 20 | 20 BY:  HELEN DAVIS CHAITMAN |
| 21 | 21 |
| 22 | 22 |
| 23 | 23 |
| 24 | 24 |
| 25 | 25 |

2 (Pages 2 - 5)

Page 6

1  ALSO PRESENT TELEPHONICALLY:
2
3  KEVIN H. BELL
4  PATRICK MOHAN
5  JOSHUA TUCKER
6  DAVID J. SHEEHAN
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 8

1      Based on the progress that the parties had made
2  during the course of their negotiations, as of the last
3  hearing, the Trustee expressed optimism that we would be
4  able to enter into a revised consensual order.  And the
5  objecting parties agreed with the Trustees -- the Trustee
6  and acknowledge the progress that the parties had made to
7  date.
8      Subsequent to the hearing, Your Honor, the Trustee
9  sent a revised proposed order to the Defendants.  That is
10  the order that is now before the Court.  And the revised
11  order, as I stated before, we refiled a pretrial order
12  because we significantly limited -- and it indicated the
13  substantial overhaul and changes between the initial order
14  and the revised order.
15      The Trustee's counsel had a meeting with
16  Defendants with the objecting Defendants, where it was our
17  hope that we would continue in the same vain as the initial
18  rounds of discussions, making progress towards a consensual
19  order.
20      At the meeting, as reflected in our reply papers,
21  the objecting Defendants informed the Trustee that they
22  could not agree to the order because as a threshold matter,
23  discovery was closed in a majority of their cases and the
24  fact, of course -- discovery renders this proceeding
25  problematic.

Page 7

1          P R O C E E D I N G S
2      THE COURT: Go ahead.
3      MS. BELL: Good morning, Your Honor.  Stacey Bell,
4  counsel for the Trustees, BakerHostetler.  Your Honor, we're
5  here on a status conference on the Trustee's motion for an
6  order establishing an omnibus proceeding on the existence,
7  duration, and scope of the Ponzi scheme at BLMIS.  Since the
8  last time we were here, we've refiled that motion, and so
9  now we're here on an omnibus Ponzi pretrial proceeding.
10      If this Court will recall, the Trustee filed a
11  motion in February seeking to consolidate the remaining good
12  faith actions on the issue on the Ponzi issue.  And in
13  response to the Trustee's motion, the Trustee received a
14  number of objections.  106 cases filed objections.  There
15  were eight law firms.  We've since -- that number has since
16  dropped to seven law firms with 105 cases at issue.
17      So, a month ago, the parties appeared before Your
18  Honor to update the Court on the status of the negotiations.
19  And at that time, the Trustee reported that since receiving
20  the Defendant's objections, the parties had been engaged in
21  negotiations seeking to streamline the issues for the Court.
22  More specifically, the parties were engaged in discussions
23  about a consolidated proceeding that would address discovery
24  only, tabling issues of trial and dispositive motions for a
25  later date.

Page 9

1      In the Defendant's view, the only cases that could
2  proceed on this consolidated basis would be cases where fact
3  discovery is open under the CMO.  The Trustee obviously --
4      THE COURT: How many of those?
5      MS. BELL: There are about seven or so cases, Your
6  Honor, and I'll go through those categories in just a
7  moment.  But there are seven cases in the Trustee's view
8  that are open with -- under the existing CMOs.  The Trustee
9  disagrees with Defendant's position, and we decided to file
10  a motion or a reply just in accordance with the Court's
11  directive at the last hearing, that that reply be put in by
12  July 18th.
13      The day before the filing, the Trustees received -
14  - the Trustee received comments to our proposed order, and
15  those comments highlighted and confirmed how far apart the
16  parties were.  In the Trustee's view, we've accommodated and
17  we've sought to accommodate the Defendant's position vis-à-
18  vis our proposed revised order on what a restructured
19  omnibus Ponzi proceeding could look like.  And we think that
20  the revised order is judicially efficient and it streamlines
21  the discovery process going forward on the Ponzi issue.
22      And so, Your Honor, I want to talk just a bit
23  about how the Trustee's grouped the cases because, in our
24  view, there are three groups of cases.  The first group --
25  and that's the question Your Honor just had -- the cases

3 (Pages 6 - 9)

AA64

Page 22

1    These issues have been in the case from day one,
2  and the Trustee -- I mean, for the Trustee to say that they
3  didn't know we were going to take the position that actual
4  securities were purchased is absurd.  I believe it was in
5  2011 that I filed evidence of Madoff having purchased T-
6  bills.  And the Trustee filed papers saying I didn't know
7  what I was talking about; this was a phony document.  And
8  then Mr. Madoff said, yes, the 17th floor customers did, in
9  fact, have T-bills and he used their money to purchase a
10  portfolio of $6 billion of T-bills, and you've heard about
11  that in the past.  So these are not new issues and there's
12  no reason to take this discovery now.
13    THE COURT:  So, why do you want to take the
14  discovery of the traders with your subpoenas?
15    MS. CHAITMAN:  Because I served those subpoenas
16  about 18 months ago and Your Honor took the position that I
17  couldn't take these depositions.
18    THE COURT:  Well, we said we would wait -- there's
19  an order that says we'll wait until the end of the Madoff
20  deposition.
21    MS. CHAITMAN:  Right, okay.  So what's happened
22  with the Madoff deposition is that, as you are painfully
23  aware, I've been trying to get the Trustee to produce the
24  trading records.  We've been going round and round on this.
25  But on June 5th we all met with counsel for the Trustee and

Page 23

1  Mr. Sheehan told us that he would give us access to the
2  BLMIS database, which has, you know -- I forgot the number -
3  - 30 million pages of documents, whatever it is.  That would
4  include all the trading records.
5    In the meantime, I was before you on May 1st, when
6  I was asking for permission to file a motion for sanctions
7  against the Trustee for concealing material evidence, and
8  you said, go back to Magistrate Judge Moss.
9    THE COURT:  That's not what I said.  You said I
10  told you -- in the most recent submission you said I told
11  you you couldn't make the motion.
12    MS. CHAITMAN:  Right.
13    THE COURT:  And what I said was I won't stop you
14  from making the motion, but it sounds to me like Judge Moss
15  has dealt with these issues, he's established a procedure,
16  and that procedure should be followed.  And you said, okay,
17  I'll go back to Judge Moss.
18    MS. CHAITMAN:  Okay.
19    THE COURT:  Did you go back?
20    MS. CHAITMAN:  Here's what happened.  That very
21  afternoon, May 1st --
22    THE COURT:  I take it from your response, you
23  didn't.
24    MS. CHAITMAN:  Let me tell you why.  May 1st, the
25  day we were before you, Mr. Shifrin emailed me and said we

Page 24

1  will voluntarily producing the trading records.
2    THE COURT:  You were before me that day, May 1st.
3    MS. CHAITMAN:  I'm sorry?
4    THE COURT:  The transcript is May 2nd but you were
5  before me May 1st.
6    MS. CHAITMAN:  Okay.  On May 1st, the day that we
7  were here, I got an email from Mr. Shiffrin which I put into
8  evidence.  I sent it -- I filed it on Monday.  Where Mr.
9  Shiffrin emailed me and said, we will produce the trading
10  records.  We then had communications where he produced
11  trading records he'd previously produced --
12    THE COURT:  Can I save some time and cut you off
13  on this?  I've been hearing about this now for over two
14  years.  There is a procedure in place.  You can either go
15  back to Judge Moss, I suppose, where I said, go make a
16  Motion to Compel, if you want to make a motion.  But this
17  has been a he said-she said for two years and they're going
18  to tell me that they did produce whatever it was you had
19  asked for.
20    So, with respect to these trading records, just
21  make a motion or go back to Judge Moss with the procedural -
22  -
23    MS. CHAITMAN:  Then I'll make a motion.
24    THE COURT:  Fine.
25    MS. CHAITMAN:  I'll make a motion.  But let me go

Page 25

1  over a few of the issues.  You know, there --
2    THE COURT:  Let's get back to the procedure.
3    MS. CHAITMAN:  Okay.  There are two separate
4  issues here, though.  One is the discovery, which you have
5  always expressly on the record reserved, which was the open
6  discovery.  I was able -- you said I could take the
7  depositions and get the documents from the subpoenaed --
8    THE COURT:  Well, I said you could serve the
9  subpoenas and then we would talk about that and I think
10  expert discovery after the end of Madoff's deposition.
11    MS. CHAITMAN:  There was the issue of my document
12  demand, which has never been satisfied, and there was the
13  issue of the discovery of the traders, and there was the
14  completion of Madoff's deposition, which I've left open
15  solely because the Trustee has not produced the trading
16  records.
17    If Mr. Sheehan fulfills his promise to us on June
18  5th that he will give us all access to the BLMIS database,
19  that would solve the trading records issue.  He hasn't told
20  me he's reneging on that --
21    THE COURT:  These are the 4,000 microfilms?
22    MS. CHAITMAN:  No, no, no.  This has nothing --
23    MS. BELL:  No, Your Honor , these are 30 million
24  documents.
25    MS. CHAITMAN:  30 million --

7 (Pages 22 - 25)

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
1:09-cv-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:03:54   Exhibit 1
Vol I Pg 69 of 204    Pg 69 of 204

Page 26

1    MS. BELL: For the BLMIS database.

2    THE COURT: And what's involved in making them

3 available mechanically?

4    MS. BELL: Your Honor, I think we have to proceed

5 pursuant to Rule 26 of the Federal Rules of Civil Procedure,

6 and there are some technical issues.

7    THE COURT: What's involved in producing those?

8    MS. BELL: So, here's what I'd say, Your Honor.

9 We had -- in the first meet and confer that we had, where we

10 thought we were making progress, one of the things, because

11 we had I thought, tentatively at least -- I conceptually

12 agreed to a consolidated discovery proceeding.

13    In the context of that discussion, the BLMIS

14 database came up and Mr. Sheehan did represent that the

15 Trustee is certainly open to producing that database. There

16 are some logistical issues that we will need to talk about

17 with Defendants. There are cost concerns, there are

18 concerns. And so we had set aside another meeting --

19    THE COURT: Well, that's what I want to know. I

20 want to know who's going to bear the cost of this.

21    MS. BELL: And that's what -- we had a meet and

22 confer that was set up as of the date of the last hearing

23 that -- that meet and confer did not happen because we had

24 to come here. We set up another meet and confer and we did

25 not continue that discussion because at that time,

Page 27

1 Defendants told us that they were not agreeing to a

2 consolidated discovery proceeding.

3    THE COURT: Okay. Let's get back to the issues

4 and the order -- this consolidated discovery issue.

5    MS. CHAITMAN: The -- you mean --

6    THE COURT: I understand you have disputes about

7 whether documents have been promised or produced, but let's

8 get back to the order. The concept of consolidate --

9 additional.

10    MS. CHAITMAN: Okay.

11    THE COURT: Reopen -- whatever consolidated

12 discovery along the lines the Trustee is proposing.

13    MS. CHAITMAN: Okay. The vast -- as the Trustee

14 says, the Trustee has not given us the names of the seven

15 cases that discovery is still open in, but in the vast

16 majority of my cases, fact discovery has long since closed

17 except for the deficiencies in the Trustee's production, and

18 the deposition of Mr. Madoff, and the subpoenaed witnesses.

19 So, there is no ability to take back discovery.

20    Under the federal rules, the only way that the

21 case management order could be so retroactively changed is

22 if the Trustee could prove that he proceeded with all due

23 diligence, which he can't possibly do, in view of the fact,

24 as I've explained, that I asserted these issues from day one

25 in answering the complaints, and the Trustee -- there's

Page 28

1 nothing that Mr. Madoff said that couldn't have been

2 anticipated. These are all the --

3    THE COURT: So you're telling me that based upon

4 what Madoff said, there's no need for additional discovery?

5    MS. CHAITMAN: I'm entitled to --

6    THE COURT: Because the order says -- I'm not --

7 the order says, or both orders say that I'm not reopening

8 discovery but I'll consider the issue based upon what comes

9 out of Madoff's deposition. And you're telling me that

10 whatever came out of the Madoff deposition has been in the

11 case for eight or ten years or however --

12    MS. CHAITMAN: Exactly, exactly.

13    THE COURT: All right.

14    MS. CHAITMAN: And it will be proven by the

15 trading records, if I ever get them.

16    THE COURT: Okay.

17    MS. CHAITMAN: We would like to have the

18 opportunity, Your Honor, if the Court is going to enter an

19 order, of submitting a proposed counter-order. There are a

20 number of issues that are raised by the --

21    THE COURT: Let me raise an issue with you, and

22 it's really for everybody. At the end of the day, some sort

23 of consolidated proceeding is contemplated for those cases

24 that are eligible for that. And by that I mean, cases where

25 I can make findings of fact and conclusions of law or I can

Page 29

1 at least make proposed findings of fact and conclusions of

2 law. I understand the jury trial issue; let's put that

3 aside.

4    Here's my concern. Discovery is still open in

5 seven cases, right? The Trustee wants to take Ms.

6 Bongiorno's deposition in those seven cases, and she

7 testifies, "Oh, yeah, we never bought a single security. It

8 was all a fraud." I then have a consolidated proceeding.

9 Can the parties who were not entitled to further discovery

10 argue you can't use Ms. Bongiorno's deposition against me

11 because I didn't have the opportunity to cross-examine?

12 That's the practical problem I want to deal with.

13    And maybe the answer is, as the Trustee suggests,

14 well, you can opt in to additional discovery or not but your

15 order doesn't say it, but you're deemed to have the

16 opportunity to cross-examine all witnesses that you choose

17 not to attend.

18    MS. CHAITMAN: Your Honor, with respect to Ms.

19 Bongiorno's deposition, she's --

20    THE COURT: Let's get back to the practical

21 problem that I just raised. It could be Ms. Bongiorno's

22 deposition, it could be anybody. It could be one of your

23 traders.

24    MS. CHAITMAN: Okay.

25    THE COURT: Suppose one of your traders says, "We

8 (Pages 26 - 29)

Page 90

```
 1              I N D E X
 2
 3              RULINGS
 4                       Page    Line
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 91

```
 1         C E R T I F I C A T I O N
 2
 3      I, Sonya Ledanski Hyde, certified that the foregoing
 4  transcript is a true and accurate record of the proceedings.
 5
 6
 7
 8  Sonya Ledanski Hyde
 9
10
11
12
13
14
15
16
17
18
19
20  Veritext Legal Solutions
21  330 Old Country Road
22  Suite 300
23  Mineola, NY 11501
24
25  Date:
```

24 (Pages 90 - 91)

10-04995-smb Doc 126-8 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit 2
Pg 71 of 204

# EXHIBIT F

September 14, 2018

*__VIA EMAIL:  mshifrin@bakerlaw.com__*

Maximillian S. Shifrin
BakerHostetler
45 Rockefeller Plaza
New York, NY 10111-0100

Re:     *Securities Investor Protection Corporation v. Bernard L. Madoff
        Investment Securities, LLC,* Case No. 08-01789 (SMB)
        Third-Party Trading Records

Dear Max:

I am writing in response to issues that have arisen in your communications with Agatha Cole of my office.  Contrary to your email dated September 12, 2018 to Agatha, the Trustee has not produced all third-party trading records responsive to our requests.

As you know, when we met at your office on November 14, 2017, you and Mr. Sheehan agreed to produce all third party trading records evidencing trades/ownership of securities, whether House 5 or House 17, dating from 1960 on (the "Trading Records").  The Trading Records would include, but not be limited to, trading confirmations, brokerage account statements, custodial account statements, delivery receipts, and *any* other such documents that reflect *any* securities transaction or ownership to which Madoff/BLMIS was a party at any time since 1960.

At the November 14, 2017 meeting, you expressed concern as to how you could identify the Trading Records when you searched the 30 million pages of documents in the BLMIS Data Base.  I suggested to you that you simply search using the unique account number that Madoff/BLMIS had with each institution from which it purchased securities or had a custodial relationship.  You said you thought that was a great idea.  Indeed, the very next day, you emailed me:

After consulting internally, we have identified a list that we created of BLMIS account numbers with various banks. We can apply those search terms across our third party records to get a preliminary idea of what kind of universe of documents that would yield. That way, you don't have to go digging up those numbers yourself.

**AA69**

You have not produced to me the list to which you referred and I would ask that you do that immediately.

The third party records fall into two categories:  records the Trustee obtained by subpoena from a limited number of firms (the "Subpoenaed Records"); and records that Madoff/BLMIS maintained themselves.  We need both sets of records because the Subpoenaed Records in general do not go back more than six years from 2009 when the subpoenas were served.  In order to assist you in complying with this request, Mr. Kratenstein and I emailed you a chart (the "Chart") listing institutions that we know Madoff/BLMIS did business with.  This list is not inclusive; it is only what had been identified by us.  Indeed, the Trustee's expert, Lisa Collura, produced a much more extensive list of the firms with which Madoff/BLMIS did business.  That list is attached hereto for your convenience.  Obviously, we need all Trading Records for every firm identified by Ms. Collura.

But, even as to the much smaller list of trading partners that we gave you, you told us you did a search of the firms listed on the chart and you sent the chart back to us with a new column on the right hand side showing the number of "hits" in the BLMIS database:

| Name | Documents with hits | Documents with hits, including group | Unique hits |
|------|--------------------:|-------------------------------------:|------------:|
| "Bank of Tokyo" | 5,848 | 9,744 | 1,803 |
| Barclays | 303,996 | 653,284 | 220,156 |
| "Bear Stearns" | 765,598 | 916,630 | 657,291 |
| Chase | 999,707 | 1,121,276 | 348,525 |
| Chemical | 227,599 | 380,135 | 64,624 |
| "Commercial Bank" | 15,510 | 33,597 | 3,584 |
| Continental | 96,782 | 218,548 | 51,089 |
| Fidelity | 1,548,685 | 1,649,488 | 818,763 |
| "Irving Trust" | 336 | 422 | 101 |
| Lehman | 971,112 | 1,111,786 | 812,784 |
| "Loeb Rhoades" | 23 | 32 | 5 |
| "Manufacturers Hanover" | 2,453 | 2,839 | 1,041 |
| "Marine Midland" | 930 | 1,096 | 55 |
| Meadowbrook | 4,489 | 6,796 | 1,538 |
| "Morgan Stanley" | 708,745 | 816,575 | 86,766 |
| "National Bank of North America" | 259 | 320 | 224 |
| NSCC | 60,305 | 66,840 | 38,398 |
| NatWest | 4,848 | 271,293 | 2,004 |
| National Westminster Bank | 2,584 | 3,113 | 0 |

| Name | Documents with hits | Documents with hits, including group | Unique hits |
|------|---------------------|--------------------------------------|-------------|
| "Westminster Bank" | 2,726 | 3,265 | 78 |
| NBNA | 295 | 326 | 138 |

Despite our repeated requests, you have refused to produce to us the documents constituting the hits on this list. And, of course, you have never given us a list of the number of hits you would have if you searched for the Trading Records of every institution identified by Ms. Collura. This is one reason why we need complete access to the BLMIS Data Base.

In addition, even as to the Subpoenaed Records that you claim you have fully produced to us, the evidence indicates that you have withheld a substantial volume of documents. To take just one example, although "Morgan Stanley" was among the search terms, and although the Trustee claims to have produced all documents responsive to those search terms within the Subpoenaed Records, the index of Bates prefixes that you provided to us two weeks ago includes at least 3 separate document sets produced by Morgan Stanley that have never been turned over to us (*e.g.*, MSYSAA***, MSYSAC***, and MSYSAF***).

Thus, we are still seeking the same Trading Records that we demanded in 2016 and that you and Mr. Sheehan expressly promised to produce on November 14, 2017.

Finally, I know Agatha has explained to you that the E-Data Room structure does not permit us to search for documents. We need to have all of the Trading Records, including the Subpoenaed Records, in one data base that we can search. We are able to set up our own data base with respect to the documents you have produced to us but the structure of the E-Data Room, as I have explained to you, makes it impossible for us to save our searches. We can't even print out the documents. We have to write to someone in your firm and make a specific request that specific Bates numbered documents be sent to us. This makes it impossible for us to do the work necessary to prepare for trial. Thus, we ask again that you lift all user restrictions that prevent us from employing the saved search functionality in Relativity, which includes the option to create and save searches based on specific fields that are already visible to us.

Yours sincerely,

Helen Davis Chaitman

HDC:leb
Encl.

**AA71**

EXHIBIT 3

### List of Known BLMIS/Bernard L. Madoff Bank and Brokerage Accounts

| Name on Account Statement - 1 | Name on Account Statement - 2 | Date of Name Change | Banking / Financial Institution[1] | Account Number | Earliest Available Statement | Latest Available Statement |
|---|---|---|---|---|---|---|
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bank of America | xxx-x8229 | Dec-06 | Feb-01 |
| Bernard L  Madoff | No Change | n/a | Bank of America | xxxx-x-x0329 | Dec-98 | Jun-01 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bank of New York | xx4239 | Mar-05 | May-07 |
| Master Trust - Master Custody Account / Bernard L Madoff | Custodian Account / Bernard L Madoff | Dec-00 | Bank of New York | xx6715 | Jul-99 | Jun-09 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bank of New York | xxx-xx0052 | May-08 | Dec-08 |
| Bernard L  Madoff | No Change | n/a | Bank of New York | xxx-xxx1050 | Jul-99 | May-09 |
| Bernard L Madoff / Ruth Madoff | No Change | n/a | Bank of New York | xxx-xxx2156 | Jan-02 | Dec-02 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bank of New York | xxx-xxx2-393 | Jul-99 | Jan-09 |
| Bernard L Madoff / Ruth Madoff | No Change | n/a | Bank of New York | xxxxxx2690 | Dec-97 | Jul-10 |
| Bernard L  Madoff | No Change | n/a | Bank of New York | xxx-xxx3-878 | Jan-98 | Apr-00 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bank of New York | xxx-xxx4-391 | May-03 | Jan-09 |
| Bernard L  Madoff | No Change | n/a | Bank of New York | xxx-xxx6-412 | Jun-99 | May-09 |
| Bernard L  Madoff | Bernard L Madoff Investment Securities LLC | May-01 | Bank of New York | xxx-xxx6-621 | Jan-98 | Jan-09 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bank of New York | xxx-xxx6-918 | Sep-03 | Feb-09 |
| Bernard L  Madoff | Bernard L Madoff Investment Securities LLC | May-01 | Bank of New York | xxx-xxx7-065 | Jun-00 | Aug-07 |
| Bernard L  Madoff | Bernard L Madoff Investment Securities LLC | May-01 | Bank of New York | xxx-xxx7-826 | Jan-98 | Jan-09 |
| Bernard L  Madoff | Bernard L Madoff Investment Securities LLC | May-01 | Bank of New York | xxx-xxx9-934 | Jan-98 | Jan-09 |
| Bernard L Madoff Securities LLC | No Change | n/a | Bank of New York / Pershing LLC (Imperial Capital) | xxx-xx7646 | Apr-08 | Dec-08 |
| Bernard L Madoff Securities | No Change | n/a | Bank of New York / Pershing LLC (Janco Partners Inc) | xxx-xx2296 | Mar-05 | Dec-08 |
| Bernard L  Madoff | No Change | n/a | Bank of New York / Pershing LLC (Link Brokers Derivatives Corporation) | xxx-xx1141 | Oct-08 | Dec-08 |
| Bernard L Madoff Inv Sec LLC c/o Bernard L Madoff Inv Sec LLC | No Change | n/a | Bank of New York / Pershing LLC (Merriman Curhan Ford) | xxx-xx0425 | Dec-07 | Dec-08 |
| Bernard L Madoff Inv Sec LLC c/o Bernard L Madoff Inv Sec L | No Change | n/a | Bank of New York / Pershing LLC (Merriman Curhan Ford) | xxx-xx3028 | Jun-06 | Sep-08 |
| Bernard L Madoff Inv Sec LLC c/o Bernard L Madoff Inv Sec LLC | No Change | n/a | Bank of New York / Pershing LLC (Merriman Curhan Ford) | xxx-xx5612 | Aug-08 | Sep-08 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bank of New York / Pershing LLC (Pali Capital Inc) | xxx-xx5078 | Mar-08 | Dec-08 |
| Bernard L Madoff | No Change | n/a | Bank of Tokyo | xxx-xx0025 | Nov-98 | Dec-98 |
| Bernard L  Madoff | No Change | n/a | Bankers Trust Company | xx-xx0-417 | Dec-98 | Jan-01 |
| Bernard L  Madoff | No Change | n/a | Bankers Trust Company | xx-xx0-599 | Dec-98 | Jul-00 |
| Madoff, Bernard L | No Change | n/a | Banque Nationale de Paris | xxx-xxxxxx-xxx-x00-47 | Nov-98 | Mar-00 |
| Bernard L  Madoff Inv Sec LLC | No Change | n/a | Barclays / Lehman | xxx1370 | May-07 | Aug-08 |
| Bernard L  Madoff | No Change | n/a | Barclays / Lehman | xxx8820 | Sep-04 | Dec-05 |
| Bernard L Madoff Inv Sec | No Change | n/a | Barclays / Lehman | xxx-x1151 | Dec-06 | Feb-07 |
| Bernard L Madoff Inv Sec | No Change | n/a | Barclays / Lehman | xxx-x1172 | Feb-05 | Jun-07 |
| Bernard L Madoff Inv Sec | No Change | n/a | Barclays / Lehman | xxx-x1574 | Dec-06 | Dec-06 |
| Bernard L Madoff Inv Sec | No Change | n/a | Barclays / Lehman | xxx-x3646 | Oct-06 | Nov-07 |
| Bernard L Madoff Inv Sec | No Change | n/a | Barclays / Lehman | xxx-x3680 | Jul-07 | Jul-08 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Barclays / Lehman | xxx-x4435 | May-07 | Nov-08 |
| Bernard L  Madoff | No Change | n/a | Barclays / Lehman | xxx-x6152 | Jun-03 | May-06 |
| Bernard L Madoff Inv Sec | No Change | n/a | Barclays / Lehman | xxx-x7981 | Feb-07 | May-07 |
| Bernard L Madoff Inv Sec | No Change | n/a | Barclays / Lehman | xxx-x8624 | Jan-07 | Nov-07 |
| Bernard L  Madoff | No Change | n/a | Barclays / Lehman | xxx-x4398 | Sep-00 | Nov-08 |
| Mr ou Mme Bernard Madoff | No Change | n/a | Barclays Bank PLC | xxxxxx x 01 01 | Dec-03 | Nov-08 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bear Stearns | xxx-xxxx1 418 | May-05 | Sep-08 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bear Stearns | xxx-xxxx1 JJ4 | May-05 | Mar-08 |
| Bernard L  Madoff | Bernard L Madoff Investment Securities LLC | May-04 | Bear Stearns | xxx-xxxx8 163 | Jun-98 | Apr-06 |
| Bernard Madoff Securities LLC | No Change | n/a | Bear Stearns Securities Corp (American Technology Research) | xxx-xxxx9 999 | May-07 | Sep-08 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bear Stearns Securities Corp (Cohmad Securities Corp) | xxx-xxxx1 018 | May-01 | Feb-06 |
| Madoff Investment Securities FAO Madoff Inv Securities | No Change | n/a | Bear Stearns Securities Corp (Friedman, Billings Ramsey & Co) | xxx-xxxx2 R55 | Apr-06 | Mar-08 |

**AA72**

**EXHIBIT 3**

## List of Known BLMIS/Bernard L. Madoff Bank and Brokerage Accounts

| Name on Account Statement - 1 | Name on Account Statement - 2 | Date of Name Change | Banking / Financial Institution[1] | Account Number | Earliest Available Statement | Latest Available Statement |
|---|---|---|---|---|---|---|
| Madoff Investment | No Change | n/a | Bear Stearns Securities Corp (Gabelli & Company Inc) | xxx-xxxx7 125 | Apr-08 | Sep-08 |
| Bernard L Madoff Sec LLC | No Change | n/a | Bear Stearns Securities Corp (Johnson Rice & Co LLC) | xxx-x3396 | May-05 | Dec-07 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bear Stearns Securities Corp (Miller Tabak + Co LLC) | xxx-xxxx8 976 | Jun-05 | Sep-08 |
| Bernard L Madoff | No Change | n/a | Bear Stearns Securities Corp (Miller Tabak Roberts Securities LLC) | xxx-xxxx7 S10 | Jan-07 | Dec-08 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bear Stearns Securities Corp (Needham & Company LLC) | xxx-xxxx3 605 | Jul-07 | Mar-08 |
| Bernard L Madoff Investments Securities LLC | No Change | n/a | Bear Stearns Securities Corp (Order Execution Services LLC) | xxx-xxxx6 001 | Jan-05 | Jan-07 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Bear Stearns Securities Corp (Pali Capital Inc) | xxx-xxxx6 400 | Jan-07 | Mar-08 |
| Bernard L Madoff Investment | No Change | n/a | CIBC | xxx-x0217 | Dec-08 | Apr-09 |
| BLMIS | | | CIBC | xxxxxx0626 | No statements available | No statements available |
| BLMIS | | | CIBC | xxxxxx7326 | No statements available | No statements available |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Citi Smith Barney | xxx-xxxx31-12 | Apr-06 | Aug-08 |
| Bernard L  Madoff | No Change | n/a | Citigroup | xxx-xxxx46-11 | Aug-99 | Sep-08 |
| Bernard L  Madoff | No Change | n/a | Commerce Bank NA / TD Bank NA | xxx-xx0814 | Dec-08 | Dec-08 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Credit Suisse | xG8DD | Feb-05 | Dec-08 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Credit Suisse | xxx-xx9386 | Apr-08 | May-09 |
| Bernard L  Madoff Investment Securities | No Change | n/a | Fidelity | xxx-xx0027 | May-05 | May-05 |
| B L Madoff Investment Sec | No Change | n/a | Fidelity | xxx-xx2622 | Nov-92 | Jan-09 |
| Bernard L Madoff Investment Securities | No Change | n/a | Fidelity | xxx-xx6507 | May-93 | Jul-94 |
| Bernard L  Madoff | No Change | n/a | Fidelity | xxx-xx9043 | Aug-98 | Jan-09 |
| Madoff Investment Securities FAO Bernard L Madoff | No Change | n/a | Fidelity / National Financial Services (Batenkill Capital) | xxx-xx0150 | Jan-05 | Sep-05 |
| Bernard L Madoff Invst Secs | Bernard L  Madoff Invst Sec / Broker Dealer A/C | Oct-05 | Fidelity / National Financial Services (Gordon Haskett Capital Corp) | xxx-xx7532 | Mar-05 | Mar-07 |
| Bernard L Madoff Invst Secs LLC / Madoff | No Change | n/a | Fidelity / National Financial Services (Kaufman Brothers LP) | xxx-xx0425 | Oct-08 | Nov-08 |
| Bernard Madoff Invst Secs LLC | No Change | n/a | Fidelity / National Financial Services (Ladenburg Thalmann & Co Inc) | xxx-xx1185 | Jan-08 | Jan-08 |
| Bernard L Madoff Securities | No Change | n/a | Fidelity / National Financial Services (Thomas Weisel Partners) | xxx-xx7520 | May-06 | Nov-08 |
| Madoff | Broker Dealer Crd Acct Madoff | Oct-05 | Fidelity / National Financial Services (Tradetek Securities) | xxx-xx2437 | Jun-05 | Apr-08 |
| Bernard L Madoff Inv Sec LLC | No Change | n/a | Jeffries & Co (Merriman Curhan Ford) | xxx-x8302 | Mar-06 | Jun-06 |
| Bernard L  Madoff Investment Securities | No Change | n/a | JPMorgan Chase | x x3414 | Apr-02 | Dec-08 |
| Bernard L  Madoff | Bernard L  Madoff Investment Securities | Sep-02 | JPMorgan Chase | x x4276 | Apr-98 | May-01 |
| Bernard L  Madoff Investment Securities | No Change | n/a | JPMorgan Chase | xxxx9466 | Sep-07 | Feb-09 |
| Bernard L  Madoff | No Change | n/a | JPMorgan Chase | xxx-xx0700 | Dec-98 | Apr-02 |
| Bernard L  Madoff | No Change | n/a | JPMorgan Chase | xxx-xx1535 | Dec-98 | Apr-02 |
| Bernard L  Madoff | No Change | n/a | JPMorgan Chase | xxx-xx1543 | Dec-98 | Apr-02 |
| Bernard L  Madoff | Bernard L  Madoff Investment Securities | Sep-02 | JPMorgan Chase | xxxxx1703 | Dec-98 | Mar-09 |
| Bernard Madoff / Ruth Madoff | No Change | n/a | JPMorgan Chase | xxxxxxxx8765 | Dec-01 | Nov-08 |
| Bernard L Madoff | Bernard L  Madoff Investment Securities | Sep-02 | JPMorgan Chase | xxxxxxxxx1509 | Dec-98 | Nov-08 |
| Bernard L  Madoff - Expense | No Change | n/a | JPMorgan Chase | xxxx-xxxxx7-509 | Dec-98 | Feb-01 |
| Bernard L  Madoff Investment Securities | No Change | n/a | JPMorgan Securities, Inc | xxx-xx4332 | Mar-07 | Nov-08 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | M & T Securities | xxx-xx4039 | May-07 | Mar-09 |
| Bernard L Madoff Inv Secs / Bernard L Madoff Invest Secur | No Change | n/a | Merrill Lynch | xxx-x5U55 | Oct-05 | Dec-07 |
| Bernard L Madoff Inv Secs / Bernard L Madoff Invest Secur | No Change | n/a | Merrill Lynch | xxx-x5U55 | Jul-08 | Nov-08 |
| Bernard L  Madoff | No Change | n/a | Morgan Stanley | xxx xx0719 | Dec-99 | Feb-09 |
| Bernard L  Madoff Investment Secs | No Change | n/a | Paribas | xxx-xxxxxx-xxx-xx21-01 | Nov-98 | Apr-00 |

**AA73**

**EXHIBIT 3**

**List of Known BLMIS/Bernard L. Madoff Bank and Brokerage Accounts**

| Name on Account Statement - 1 | Name on Account Statement - 2 | Date of Name Change | Banking / Financial Institution[1] | Account Number | Earliest Available Statement | Latest Available Statement |
|---|---|---|---|---|---|---|
| Bernard L Madoff Inv Sec LLC | No Change | n/a | Raymond James | xxxx3532 | Nov-08 | Dec-08 |
| Bernard L Madoff Investment Securities | No Change | n/a | UBS Financial Services | x xx x0733 | Dec-06 | Nov-08 |
| Bernard L Madoff Securities LLC | No Change | n/a | UBS Financial Services | xx xxx18 CG | Jan-05 | Nov-08 |
| Bernard L Madoff Investment Securities | No Change | n/a | Wachovia Capital Markets | xxxx4607 | Jan-08 | Nov-08 |
| Bernard L Madoff Investment Securities | No Change | n/a | Wall St Access | xxx-xx1975 | Apr-07 | Dec-08 |
| Bernard L Madoff Investment Securities LLC | No Change | n/a | Wall St Access | xxx-xx6906 | Jun-07 | Nov-07 |

[1] The names in parentheses represent the financial advisor or broker-dealer associated with the listed account.

**AA74**

EXHIBIT 3

From: Shifrin, Maximillian S. [mshifrin@bakerlaw.com]
Sent: Monday, November 19, 2018 5:33 PM
To: Lourdes Blanco; Hon. Frank Maas (fmaas@jamsadr.com); Kristen MacCubbin
(kmaccubbin@jasmsadr.com)
Cc: Helen Chaitman; Greg Dexter; Cremona, Nicholas J.
Subject: RE: In re Madof (08-01789) Picard v Wilenitz (10-04995) - Joint Letter dated 9/20/2018

Dear Judge Maas,

Pursuant to Your Honor's instructions at the arbitration this morning, attached please find the following
two transcripts:


  *  Transcript from the May 17, 2016 Local Rule 7007 Conference on Ms. Chaitman's original request to
file a motion to compel.  The Court authorized Ms. Chaitman to file a motion to compel and did not
order the Trustee to produce any documents.  Once Ms. Chaitman filed her motion months later, the
motion was referred to Your Honor for arbitration pursuant to a Court-ordered stipulation.


  *  Transcript from the July 26, 2017 follow-up hearing on the Madoff Deposition.  After the parties
submitted follow-up letters on the issues raised at the June 29, 2017 Hearing Ms. Chaitman has
referenced, the Court recognized the existence of the March 2017 Order, of which he was not previously
aware (see pg. 21), and adjusted its preliminary stance on the dispute.  In an effort to resolve it, the
Court suggested that the Trustee restore a sampling of additional microfilm reels, which Ms. Chaitman
could then use to demonstrate a need for any additional restorations.  As we explained today, the
Trustee subsequently restored five additional reels at his own expense, and Ms. Chaitman never raised
the issue again.


Additionally, in response to issues raised by Ms. Chaitman toward the end of our arbitration concerning
the Trustee's representations about his data, attached please find two sample Rule 26 initial disclosures
in cases involving Ms. Chaitman: the earliest from 2011 and a more recent one from 2015.  We submit
these disclosures to demonstrate that the Trustee has always been fully transparent about the BLMIS
data in his possession, including: (i) that he has thousands of boxes of hard-copy documents and
thousands of pieces of media; (ii) that only "some" (approximately 30 million) of these hard-copy and
electronic documents have been processed; and (iii) that only four million documents (including third-
party documents) have been affirmatively made available in E-Data Room 1 for the purpose of proving
that BLMIS was a fraudulent and insolvent enterprise (and not as an ultimate repository of all relevant
data, as Ms. Chaitman has suggested).

Finally, given the focus today on the bank search terms that Ms. Chaitman originally raised in 2017,
attached please find a comprehensive letter we sent to Ms. Chaitman on August 25, 2017 addressing
these same search terms.  We send this to provide Your Honor with a more complete context: namely,
that these search terms were extensively addressed in multiple letters exchanged between the parties,
and that those negotiations were what resulted in the November 2017 Meet and Confer—during which
the parties agreed to use search terms based on account numbers rather than bank names.  Now that
the Trustee has fully complied with the agreements reached at the Meet and Confer and has produced
all documents responsive to the account-number-based search terms, Ms. Chaitman has backtracked to

the bank name search terms that preceded them.  As Your Honor will notice, the points we made in this letter of over a year ago are virtually identical to what we discussed today during our arbitration, and reflect our longstanding efforts to settle this dispute—despite Ms. Chaitman's refusal to comply with the March 2017 Order.

There is a significant record to this dispute, including many letters and emails, so we want to ensure that Your Honor has what is necessary to resolve it.  If Your Honor believes any additional information or documents can be useful, please let me know.

Respectfully submitted,

Maximillian S. Shifrin
Associate

[cid:image004.jpg@01D48025.88F15690]

45 Rockefeller Plaza
New York, NY 10111-0100
T +1.212.589.4252

mshifrin@bakerlaw.com<mailto:mshifrin@bakerlaw.com>
bakerlaw.com<http://www.bakerlaw.com/>
[cid:image005.jpg@01D48025.88F15690]<http://www.bakerlaw.com/FindLawyers.aspx?Lookup_By_Email=mshifrin>[cid:image006.jpg@01D48025.88F15690]<http://www.bakerlaw.com/vcards/mshifrin.vcf>

10-04995-smb   Doc 1263-5   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 4
Pg 1 of 90

EXHIBIT 4

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 126-5 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit 4
Vol I Pg 82 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 1 of 79



```
                                                          Page 1

 1    UNITED STATES BANKRUPTCY COURT

 2    SOUTHERN DISTRICT OF NEW YORK

 3    Case No. 08-99000-smb

 4    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

 5    In the Matter of:

 6

 7    ADMINISTRATIVE CASE RE: 08-01789 (SECURITIES INVEST-

 8    ADVERSARY PROCEEDING),

 9

10            Debtor.

11    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

12

13    Adv. Case No. 10-04995-smb

14    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

15    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

16    MADOFF INVESTMENT SECURITIES LLC,

17                 Plaintiff,

18            v.

19    TRUST u/art FOURTH o/w/o ISRAEL WILENITZ,

20                 Defendants.

21    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

22

23

24

25
```

**AA79**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 126-5   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 4
Vol I Pg 88 of 204
Pg 3 of 80

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 2 of 79

Page 2

1    Adv. Case No. 10-05184-smb

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4    MADOFF INVESTMENT SECURITIES LLC,

5                    Plaintiff,

6            v.

7    LAURA ANN SMITH REVOCABLE LIVING TRUST et al,

8                    Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11   Adv. Case No. 10-04352-smb

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

14   MADOFF INVESTMENT SECURITIES LLC,

15                   Plaintiff,

16           v.

17   RAR ENTREPRENEURIAL FUND. LTD. et al.,

18                   Defendants.

19   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25

AA80

08-01789-cgm Doc 18573-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 126-2 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit A
Vol I Pg 84 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 3 of 79

Page 3

1              U.S. Bankruptcy Court

2              One Bowling Green

3              New York, NY  10004

4

5              May 17, 2016

6              10:51 AM

7

8

9   B E F O R E :

10   HON STUART M. BERNSTEIN

11   U.S. BANKRUPTCY JUDGE

12

13

14

15   Hearing re:  10-04995-smb, 10-05184-smb, 10-04352-smb The

16   Trustee's Request For Leave To File A Motion For a

17   Protective Order in Wilentz.

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:03:56 Exhibit A
Vol I Pg 85 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 4 of 79

Page 4

```
 1   A P P E A R A N C E S :

 2

 3   WINDELS MARX LANE & MITTENDORF, LLP

 4        Special Counsel to Irving H. Picard, as Trustee

 5        156 West 56th Street

 6        New York, NY 10019

 7

 8   BY:  KIM M. LONGO

 9        JOHN J. TEPEDINO

10

11   BAKER HOSTETLER

12        Attorney for the Trustee

13        45 Rockefeller Plaza

14        New York, NY 10111

15

16   BY:  EDWARD J. JACOBS

17        NICHOLAS J. CREMONA

18

19   CHAITMAN LLP

20        Attorney for Defendants

21        465 Park Avenue

22        New York, NY 10022

23

24   BY:  HELEN DAVIS CHAITMAN, ESQ.

25
```

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 126-2 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit 1
Vol I Pg 86 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 5 of 79

Page 5

1   ALSO PRESENT TELEPHONICALLY:

2   KEVIN H. BELL

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**AA83**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 18:01:56 Exhibit 2
Vol I Pg 87 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 6 of 79

Page 6

1      P R O C E E D I N G S

2      THE COURT: Madoff. Wait, I have one more...

3      MR. JACOBS: Good morning, Your Honor. Edward

4   Jacobs on behalf of the Trustee. I believe we're here this

5   morning to discuss our April 6th letter seeking a protective

6   order concerning certain discovery served by the defendant

7   in the Wilenitz matter. Just to avoid any confusion from

8   the start, there are 19 discovery requests at issue, but in

9   the version served by the Defendant they're numbered 1

10   through 18, and one of them is unnumbered. So, by my count

11   there are 19 requests in total. And they span a number of

12   various topics, and I'm prepared to go through them each

13   specifically today as briefly as I can.

14      But before I do, I would like to just provide a

15   little bit of context to the Court, which I think would be

16   helpful about what's been happening in discovery in this

17   case. The Wilenitz matter is a case with a demand amount

18   of, approximately, $280,000. To be fair, Ms. Chaitman has

19   told us that she intends to serve this identical discovery

20   in all of her over 100 cases, so that would obviously

21   implicate a number of other defendants with various demand

22   amounts.

23      So, we feel that it's critically important that we

24   have the issues resolved as quickly as possible so we don't

25   needlessly have to duplicate litigation by arguing about

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
10-04995-smb    Doc 1264-2    Filed 01/16/19    Entered 01/16/19 13:01:56    Exhibit 2
Vol I    Pg 88 of 204

10-04995-smb    Doc 67    Filed 05/19/16    Entered 05/24/16 12:03:01    Main Document
Pg 7 of 79

Page 7

1    these same things in all of those cases.

2          What the Trustee has done in discovery in this

3    case is quite remarkable, and I believe unprecedented, and

4    we're very proud of it.  Without even receiving a discovery

5    request, we provide every single defendant with what we

6    refer to as their core account documents, which are their

7    customer statements, the cash activity of their accounts,

8    their correspondence files with all of their correspondence

9    to and from BLMIS over the life of their account; the

10   account opening and closing documents; and in addition to

11   that all of the applicable financial statements from BLMIS's

12   financial institutions showing the bank transfer records

13   from those independent third parties with respect to the

14   cash activity in each and every single account.

15         Where we don't have a complete set of customer

16   statements, we produce portfolio management reports, which

17   contain exactly the same information of the cash activity

18   over the life of the account.  Where we don't have those, we

19   produce spiral notebooks where various employees over time

20   at BMOIS kept meticulous notes of that cash transaction

21   activity.

22         And we provide that to every defendant.  Wilenitz

23   is no exception.  We produced, I believe, approximately,

24   19,000 records that we've indexed to make it easy for the

25   defendant to navigate exactly what's in that --

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1226-2 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit 4
Vol I Pg 89 of 204
Pg 8 of 80

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 8 of 79

Page 8

1           THE COURT:  19,000 records for Wilenitz?

2           MR. JACOBS:  For the Wilenitz accounts, correct,

3     over the life of their accounts.  And that includes all of

4     the items that I just discussed.

5           In addition to that, obviously, it is the

6     Trustee's burden of proof to prove that BLMIS was operating

7     a fraudulent Ponzi scheme and was insolvent.  So, as the

8     Court I believe --

9           THE COURT:  Why do you have to prove insolvency?

10    You don't have to prove insolvency for an intentional

11    fraudulent transfer.  These are good faith cases.

12          MR. JACOBS:  Right.  Well, that is, I believe, our

13    burden in the bad faith actions as well.

14          THE COURT:  Why?  To prove insolvency in an actual

15    fraudulent transfer claim -- I've never heard of that.

16          MR. JACOBS:  Well, that may very well be correct,

17    Your Honor, but nonetheless, we have endeavored to make all

18    of BMOIS's financial records available.

19          THE COURT:  Let me ask, Ms. Chaitman, do you think

20    that insolvency is an issue in these cases?  Since their

21    limited to intentional fraudulent transfers?

22          MS. CHAITMAN:  I do, Your Honor.

23          THE COURT:  Why?

24          MS. CHAITMAN:  If, in fact, they could only

25    recover transfers made within the last two years, then the

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1226-2 Filed 01/16/19 Entered 01/16/19 13:01:50 Exhibit 2
Vol I Pg 90 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 9 of 79

Page 9

1   insolvency wouldn't be an issue.  However, they are going

2   back to the 1980s...

3          THE COURT:  But not in the good faith cases.

4          MS. CHAITMAN:  ...to calculate...

5          THE COURT:  Oh, but those aren't -- I see what

6   you're saying.  But, you know, we've been through that one

7   already.  And those aren't transfers in the sense that we've

8   been talking about.  And I think the District Court judge

9   agreed that those weren't transfers in the sense that the

10  Court's own conveyance laws mean transfers.

11         MS. CHAITMAN:  Here's my thinking, Judge, and

12  perhaps you'll disagree with me, but the Trustee makes a

13  determination of what each defendant's net equity is.

14         THE COURT:  Right.

15         MS. CHAITMAN:  He does that by going back to the

16  inception of the original account.  In my opinion, he has to

17  establish that Madoff was insolvent in 1980 because

18  otherwise, how can he invalidate a position that the

19  Defendant or the Defendant's grandfather had in 1980?  I

20  think he has to prove -- I think the Trustee has to prove

21  that Madoff was insolvent and operating a Ponzi scheme for

22  the entire period for which he's netting out --

23         THE COURT:  Well, I agree that he has to prove he

24  was operating a Ponzi scheme because the transfers have be

25  made in connection with the Ponzi scheme to get the Ponzi

Page 10

1   scheme assumption, but it doesn't sound to me like he's got

2   to prove that Madoff was insolvent to compute net equity by

3   going back and figuring out what was really in the

4   transferor's account in the amount that was actually

5   credited to the transferee account.  And, again, I use

6   transfer, and transferor, and transferee -- not in the sense

7   used in the Bankruptcy Code; just to describe what happened.

8   But, all right.

9           MR. JACOBS:  Well, Your Honor, back in 2009, as

10  I'm sure you're aware, we negotiated with a large group of

11  defendants a procedures order that governs all of the good

12  faith actions; and in connection with that there was an

13  order entered that I refer to as the procedures order that

14  allows the Trustee to make available large amounts of data

15  through an electronic data room and could submit a summary

16  report of that information concerning relevant topics

17  through a summary or an expert report.

18          That's exactly what we've done with respect to the

19  Ponzi.  As Ms. Chaitman knows, we have an expert named Mr.

20  Dubinsky, who offers a very comprehensive report on that

21  subject, and all of the data that he considered and utilized

22  in connection with his opinions have been made available to

23  every defendant through an electronic data room that

24  contains, approximately, 4 million records.

25          That report has not yet been served in the

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 126-2   Filed 01/16/19   Entered 01/16/19 13:03:50   Exhibit 4
Vol I Pg 92 of 204
Pg 12 of 90

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 11 of 79

Page 11

1    Wilenitz matter, but a copy of that report has been served

2    to Ms. Chaitman on behalf of some of her other clients in

3    different proceedings.  And in Section 4C of the procedures

4    order, that permits the Trustee to handle the voluminous

5    nature of discovery that's potentially relevant in this case

6    in that fashion.

7          THE COURT:  Well, does Ms. Chaitman or any other -

8    - clients or any other defendant have the ability to look at

9    the same documents that your expert looked at and draw their

10   own conclusions?

11         MR. JACOBS:  Absolutely.  Every single document --

12   what we've endeavored to do, Your Honor, is that what we

13   refer to as Electronic Data Room 1 contains all of the

14   underlying documents considered by Mr. Dubinsky and we're

15   also building upon that in including documents that our

16   other experts who we may offer to prove transactions and who

17   do other functions, all of those documents as well.  So,

18   that's approximately 4 million records.  Not pages, but

19   records.

20         And it's an enormous amount of data that I believe

21   is unprecedented, at least in my career, and for that reason

22   we've structured the data room in a very organized fashion

23   with issue trees.  So if you're a participant who's

24   accessing the data room, you'll see something that you might

25   be familiar with already in terms of like, an Outlook email

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
10-04995-smb    Doc 1264-2    Filed 01/16/19    Entered 01/16/19 13:01:56    Exhibit A
Vol I Pg 93 of 204

10-04995-smb    Doc 67    Filed 05/19/16    Entered 05/24/16 12:03:01    Main Document
Pg 12 of 79

Page 12

1    folder tree that has topics, broken down documents,

2    financials, third party records; and then each of those

3    trees can be broken down further to drill down to J.P.

4    Morgan statements.  You know, Chicago Options Trading

5    information, Depository Trust Clearing Corporation

6    documents; all of those types of things.  It's also

7    searchable.

8         So, absolutely the Defendant has the ability to

9    conduct whatever investigation they believe is relevant to

10   the claims of their defenses, the same that our expert did,

11   and they have access to all the same information that our

12   expert did.  And we did that to be transparent and to

13   provide any data that any litigant believes that they should

14   have access to.

15        So, that's the starting point of where we are in

16   discovery.  And then because Section 4C of the procedures

17   order allows us to provide a summary report, we do that.

18   And Mr. Dubinsky painstakingly analyzes the Ponzi scheme and

19   the IA business specifically, but also the other aspects of

20   BLMIS's businesses as well.  And issues of insolvency are

21   also part of his analysis to the extent they may bear on the

22   Ponzi scheme or on other proofs we may have, or have had at

23   some point in our cases.

24        But all of the financials are considered, the

25   Ponzi scheme is considered, the stock-trading activity or

08-01789-cgm   Doc 18573-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit A
Vol I Pg 94 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 13 of 79

Page 13

1    lack thereof in the IA business is considered, in addition

2    to the activities of House Five proprietary trading function

3    of BLMIS and the market-making function of BLMIS.

4              As the Court, I'm sure, is aware, Rule 26 of the

5    Federal Rules of Civil Procedure governs discovery and our

6    actions, and that rule was recently amended in December of

7    2015.  The standard that discovery must be reasonably

8    calculated to lead to admissible evidence no longer exists

9    in the rule.  It was specifically eliminated.  And it was

10   replaced with language that says that discovery served must

11   be relevant and proportionate to the needs of the case.  And

12   what does proportionate mean?

13             Section B1 actually lists factors that the Court

14   should consider in determining whether discovery is

15   proportionate, and those include, and I quote, "the

16   importance of the issues at stake in the litigation, the

17   amount in controversy, the parties' relative access to

18   information, the parties' resources, the importance of the

19   discovery in resolving the issues, and whether the burden or

20   expense of the proposed discovery outweigh its likely

21   benefit.

22             We submit, Your Honor, that upon an examination of

23   all 19 of these requests, the overwhelming majority of them

24   to begin with have no relevance to this litigation or these

25   claims.

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
10-04995-smb    Doc 1263-2    Filed 01/16/19    Entered 01/16/19 13:01:56    Exhibit 2
Vol I Pg 95 of 204

10-04995-smb    Doc 67    Filed 05/19/16    Entered 05/24/16 12:03:01    Main Document
Pg 14 of 79

Page 14

1          THE COURT:  Which ones do?

2          MR. JACOBS:  There is a group of requests that

3    arguably have relevance to...  And in discussions with Ms.

4    Chaitman yesterday I know that she believes they have

5    relevance to whether or not BLMIS was operating a Ponzi

6    scheme, and those are 13, 14, 15, 16, 17, and 18.

7          In addition to that there are three requests that

8    ask for the Trustee to identify any instance of a factual

9    error in any of BLMIS's books and records over any time

10   period, which are objectionable for a number of reasons I

11   would like to discuss with the Court Further -- but those

12   may arguably have relevance as well.  Those are 2, 3, and 5.

13         But with respect to those requests in particular,

14   I would state for the Court that the Defendant in this

15   action submitted an affidavit in connection with her claim

16   stating that she had done a reconciliation of her customer

17   statements with her own bank accounts and that those bank

18   accounts confirmed that the customer statements for the

19   relevant accounts were accurate.

20         So, the issue of whether BLMIS's books and records

21   are accurate or inaccurate with respect to cash activity is

22   not an issue in dispute in this case.

23         THE COURT:  Well, it is, though.  It is.  Because

24   at the end of the day, you have to prove the amount of the

25   fictitious profits, basically -- the extent of liability.

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 126-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 4
Vol I Pg 96 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 15 of 79

Page 15

1   And that involves transfers that occurred long before the

2   two-year period.  Were there transfers from other accounts

3   in this case?  Interaccount transfers?

4           MR. JACOBS:  There were interaccount transfers in

5   this case, Your Honor.

6           THE COURT:  All right.  You would have to prove

7   that the Trustee -- or those account transfers were

8   correctly computed.

9           MR. JACOBS:  From a net equity perspective, we

10  absolutely agree, yes.

11          THE COURT:  Yeah.  So, all I'm saying is although

12  the claim only reaches back two years, you still have to

13  compute whether you call it net equity or fictitious

14  profits, that still has to be demonstrated so that you know

15  the scope of the liability.

16          MR. JACOBS:  That's correct, Your Honor.  And as

17  you may recall from the (indiscernible) trial, we submit

18  experts whose specific function is to do that.

19          THE COURT:  Okay, but the Defendants are entitled

20  to see the data --

21          MR. JACOBS:  That's absolutely right.  And we have

22  already produced in this litigation, without even having

23  received a document request, 100 percent of that data.  So

24  the Defendants have all of those records that we intend to

25  rely upon in order to prove both the net equity and to trace

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1268-2 Filed 01/16/19 Entered 01/16/19 13:01:50 Exhibit A
Vol I Pg 97 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 16 of 79

Page 16

1    the transfers.

2           THE COURT:  So, you produce the records of other

3    accounts, for instance, the transferor accounts?

4           MR. JACOBS:  We do, Your Honor.  We call that our

5    initial disclosure production.  In every case where there's

6    an interaccount transfer, we replicate our production of the

7    CADs, which I described earlier, for any related accounts.

8    And by related accounts, to be clear, in our mind that means

9    any account that transferred money to the sued upon account.

10   We do provide all of that documentation.

11          And also, the only additional possible discovery

12   that I believe would be relevant to the issues of transfers

13   and net equity are the Defendants' own bank records.  And as

14   Your Honor I know is aware, this Defendant in addition to

15   others, have vigorously contested our right to those

16   documents.  The Court has rejected those objections.  That's

17   no longer an issue in this case, although I think we're

18   going to be talking about that in some others again later.

19          But in any event, our position is that the bank

20   records have limited utility.  Our experts will submit

21   reports that detail exactly why BLMIS's books and records

22   are accurate and reliable for the cash activity, transaction

23   activity for every relevant account over the life of the

24   account.  Those reports have not yet been submitted but I

25   can promise the Defendant and the Court that they will be

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit A
Vol I Pg 98 of 204
Pg 18 of 90

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 17 of 79

Page 17

```
 1    forthcoming in the expert phase of discovery in this case.

 2              If it pleases the Court, I just would like to turn

 3    to some of the other categories of request that are at issue

 4    today.  Well, first, let me finish my response to the

 5    request that the Court asked about -- the small handful of

 6    requests, maybe -- I'm bad at math on the spot but 6 to 8

 7    that actually would potentially go to issues of the Ponzi

 8    scheme.

 9              THE COURT:  You didn't list that as your arguably

10    relevant criteria.

11              MR. JACOBS:  I'm sorry?

12              THE COURT:  I asked you which of the requests were

13    arguably relevant.

14              MR. JACOBS:  Right.

15              THE COURT:  You told me 13 through 18 and maybe 2,

16    3, and 5 with a caveat.

17              MR. JACOBS:  Correct.  And to specifically further

18    address 13, 14, 15, 16, 17, and 18, there is one request

19    that asks for the Trustee in an interrogatory response to

20    set forth the basis of -- that BLMIS was insolvent over

21    every year going back to, I believe, 1982.  Obviously, we

22    don't believe that is an appropriate request.  The burden

23    clearly would not outweigh any likely benefit, given the

24    fact that --

25              THE COURT:  Well, the Trustee has to prove...
```

**AA95**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 126-2 Filed 01/16/19 Entered 01/16/19 13:31:56 Exhibit 2
Vol I Pg 99 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 18 of 79

Page 18

1  Apparently, you agree with Ms. Chaitman that the Trustee has

2  to prove --

3            MR. JACOBS:  To be clear on the record, I don't

4  agree with her characterization of our burdens of proof.

5  But Mr. (indiscernible) does address issues of insolvency in

6  BLMIS's financials in his report in painstaking detail.  So,

7  to the extent that information is relevant or would be

8  relevant at any point in time, it's something that we

9  provided through the summary report, which the procedures

10  order allows us to do.  And we've also made available all of

11  the underlying documentation that's referenced in that

12  report.

13            THE COURT:  Okay.  Have you produced the report,

14  the insolvency report?

15            MR. JACOBS:  Not in this case, Your Honor.  Not

16  yet.  We are not yet in expert discovery.  But Ms. Chaitman

17  does have a copy from other cases that are further advanced

18  and substantively the report --

19            THE COURT:  It sounds like the basis of the

20  Trustee's opinion is the expert report.

21            MS. CHAITMAN:  Do you want me to...?

22            THE COURT:  Well, why don't you finish and then

23  we'll hear from you.

24            MR. JACOBS:  Okay.  So, that request, in essence,

25  we're saying is burdensome to the extent that she's asking

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:36   Exhibit 2
Vol I   Pg 100 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 19 of 79

Page 19

1   us to prematurely provide our report, we will provide our

2   report.  Ms. Chaitman will have an opportunity to consider

3   all of the records our expert considers.  She'll have an

4   opportunity to depose Mr. Dubinsky, although she hasn't yet

5   deposed him in any other case.  And at a minimum, the

6   Defendants should have to start with the voluminous

7   discovery we've already provided before more is demanded.

8   And I think that is a principle that is expressly baked into

9   Rule 26, particularly in light of the recent amendment,

10  where the purpose of the amendment is to ensure that

11  litigants don't get to engage in endless and abuse of

12  discovery.  And I think that that request falls into that

13  category of needless abuse of discovery, particularly given

14  everything we've already provided.

15        The same is true within that group of requests --

16  there are several requests that ask for stock trading

17  records for the market-making side of the business, and the

18  proprietary trading side of the business, and the IA side of

19  the business.  However, our contention is there were no

20  stocks ever traded for any IA investment advisory customer.

21  And that request asks for that documentation going back to,

22  I believe, 1982.

23        Your Honor, the Wilenitz accounts were opened in

24  2003, so how can any stock trading activity for any part of

25  the business, however unconnected it may be to this

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/18/19 Entered 01/18/19 13:01:56 Exhibit 4
Vol I Pg 101 of 204
Pg 101 of 50

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 20 of 79

Page 20

```
 1    Defendant's IA account, have any relevance beyond 2003 as an

 2    initial matter?  But even with respect to the documents

 3    post-2003, again, our expert report does a very

 4    comprehensive analysis of how the AI business was conducting

 5    a Ponzi scheme when those docs were traded.

 6            THE COURT:  Are you arguing that the requests are

 7    irrelevant or that they're premature because they're really

 8    expert discovery type requests?

 9            MR. JACOBS:  Both, Your Honor.  I think that while

10    the relevance issue is murky -- I'm not contesting that that

11    request may be relevant; what I'm contesting is that the

12    request is not proportionate to the needs of the case.  The

13    Defendant should have to make an explicit showing as to how

14    or why that particular discovery is needed.  And, first and

15    foremost, they need to review and consider the voluminous

16    discovery precisely on that topic we've already provided.

17            So, for example, on my call with Ms. Chaitman

18    yesterday we tried to resolve some of these issues to

19    hopefully not burden the Court and we couldn't.  But we

20    discussed that in 2014, we produced to Ms. Chaitman all of

21    the DTCC records that we had showing daily stock positions

22    at BLMIS -- any part of the business going back to 2002.

23    She has that information.

24            Apparently that didn't satisfy her, so she's

25    served this request, which clearly under the proportionality
```

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit A
Vol I Pg 102 of 204
Pg 21 of 30

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 21 of 79

Page 21

1    standards of Rule 26, we should not have to answer.  Because

2    it is the burden of the requesting party to show the

3    relevance of the request after an objection has been made.

4    So we're objecting that it's disproportionate to the needs

5    of the case, it's burdensome, it's of questionable relevance

6    because there's been no showing as to how that would further

7    the Defendant's ability to defend against our claims.

8             THE COURT:  All right, let me hear from Ms.

9    Chaitman generally and then we'll go through each of the

10   requests.  It's just easier to do it that way.

11            MS. CHAITMAN:  Sure.  If I can just begin, Your

12   Honor, by explaining one thing:  I had proposed to Baker &

13   Hostetler a couple of months ago that we enter into a

14   consent order with respect to all of my cases -- it's a

15   little bit less than 100 -- that discovery served in one

16   case would be applicable in all cases.  In other words, I

17   said, don't force me to serve 100 discovery demands that are

18   identical in all of my cases.  Let's just agree that I can

19   serve them in any case but the demands and the responses and

20   any court rulings relating to those, unless there's a reason

21   to distinguish one defendant from another, would be

22   applicable in all cases.

23            They didn't get back to me on this.  This would

24   simplify all of this a great deal.  Otherwise, Your Honor,

25   we're all going to be burdened, you most of all.  It's just

**AA99**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 126-3 Filed 01/16/19 Entered 01/16/19 13:01:50 Exhibit 4
Vol I Pg 103 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 22 of 79

Page 22

1    silly.  And, you know, what I tried to do with this -- with

2    Wilenitz -- yes, every account is different, but the fact of

3    the matter is I represent defendants in 100 cases and we

4    ought to be able to do this in a reasonable way.

5            THE COURT:  I don't disagree with you.  I don't

6    want to do this 100 times.  And nobody does, so...

7            MS. CHAITMAN:  Exactly.  So, may I submit to --

8            THE COURT:  Well, have the same discovery requests

9    been served in every case?

10           MS. CHAITMAN:  I haven't done it yet because I had

11   asked for a conference with you to try to resolve this.

12           THE COURT:  Well, why don't we go through these

13   discovery requests and maybe we can pare down what you're

14   entitled to ask for in future cases, and this'll provide

15   some guidance in all the cases.  The results can be the same

16   unless some case has a nuance -- like Wilenitz only goes

17   back to 2003; maybe some other case goes back to 1986 or

18   whatever.

19           MS. CHAITMAN:  If I can say, Your Honor -- I'm

20   happy to go through these with you now, but I would like to

21   make a formal motion because --

22           THE COURT:  A formal motion for what?  To compel

23   discovery?

24           MS. CHAITMAN:  Yes.  Because it's important for

25   the record to contain an order.  I mean, these go to

**AA100**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 126-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 2
Vol I   Pg 104 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 23 of 79

Page 23

1    affirmative defenses that we have in the case.  If, in fact,

2    the Court is not going to permit discovery on some of the

3    affirmative defenses, then in a sense, the Court is striking

4    an affirmative defense.  And I think that in order to

5    protect the record, we ought to be able to go through the

6    process of a motion, briefing, and then a formal order.

7           THE COURT:  Well, I'm not going to tell you can't

8    make a motion to compel discovery, but that said, maybe we

9    can go through these and we can talk about them.

10          MS. CHAITMAN:  Okay.

11          THE COURT:  Some of the argument that I'm getting

12   from Jacobs seems to suggest that discovery may be relevant

13   but it's really expert discovery.  And that you should take

14   the deposition of the expert, ask he or she what she relied

15   on, and then ask for those documents, I guess.  Although it

16   sounds like they've been produced or made available anyway.

17          MS. CHAITMAN:  What I'm trying to flesh out, Your

18   Honor -- I think --

19          THE COURT:  But the Trustee's not going to do your

20   work.

21          MS. CHAITMAN:  I'm not asking the Trustee --

22          THE COURT:  Well, but you are.  For example, one

23   of these or maybe a couple of these said, "Identify every

24   instance in which there was an error in any account,"

25   putting aside the relevancy of that.  You could do the same

08-01789-cgm  Doc 18578-2  Filed 03/18/19  Entered 03/18/19 13:30:42  Appendix
10-04995-smb  Doc 1263-2  Filed 04/16/19  Entered 04/16/19 13:01:56  Exhibit 2
Vol I Pg 105 of 204

10-04995-smb  Doc 67  Filed 05/19/16  Entered 05/24/16 12:03:01  Main Document
Pg 24 of 79

Page 24

1    analysis that the Trustee did and come up with --

2         MS. CHAITMAN:  I couldn't possibly do it.  What

3    I'm asking the Trustee to do, as you know from the profit

4    withdrawal issues, there's a great deal of question as to

5    the accuracy of the records.  And the Trustee's own expert

6    has said that these records are riddled with fraud and that

7    they're not reliable.  That was the basis of the Second

8    Circuit's ruling.

9         THE COURT:  Now that the dollars are in and the

10   dollars are out, it would deem reliable by the Second

11   Circuit, because that was the basis of the net decision.

12        MS. CHAITMAN:  But there was no factual record

13   before the Court.  There was certainly no --

14        THE COURT:  Let me ask the question -- putting

15   aside the profit withdrawal issue, if the records were

16   riddled with fraud but your records are right, your clients'

17   records are right, what difference does it make?  Do you

18   think I'm going to draw an inference -- do you think I'm

19   going to try in every single case whether or not as a

20   general matter the records were accurate in every sense?

21        MS. CHAITMAN:  Judge, here's the problem:  Let's

22   just review the --

23        THE COURT:  And Wilenitz agreed that he received

24   the --

25        MS. CHAITMAN:  No, no, no, but Mr. Jacobs didn't

**AA102**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
Vol I Pg 106 of 204

10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:50   Exhibit A
Pg 26 of 30

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 25 of 79

Page 25

1   clarify what he was saying.  For the period from 2000 on,

2   she had the bank records.  And her SIPA claim said she

3   compared her bank records to the statements.  But the

4   account predated that.  This was --

5           MR. JACOBS:  The accounts were opened in 2003,

6   Your Honor.

7           MS. CHAITMAN:  But it was a successor account.  It

8   had transfers into it from other accounts.

9           THE COURT:  But they would've only occurred after

10   2003, right?

11           MS. CHAITMAN:  No, the prior accounts were in the

12   1990s.

13           THE COURT:  All right.

14           MS. CHAITMAN:  So, if I can just explain...

15           THE COURT:  I said, you are entitled to go back...

16   Any information relating to the computation of the amount of

17   fictitious profits.  And if that involved transfers in old

18   accounts that went back to the 1980s, you're entitled to see

19   that.  I don't dispute that.

20           MS. CHAITMAN:  Right.  But here's my point, Your

21   Honor:  The DTC of trading records exists from 2002 on.

22   There is no evidence either way of trading prior to that.

23   No documentary evidence.  With respect to third party bank

24   records, the J.P. Morgan Chase account records, the Trustee

25   has those from December 1998 on.

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 126-2   Filed 01/16/19   Entered 01/16/19 13:03:56   Exhibit 2
Vol I   Pg 107 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 26 of 79

Page 26

1          So, again, we have a vacuum of any third party

2    records which, in my opinion, are more reliable than

3    Madoff's records, for any transfers predating December 1998.

4    Now, the clients don't have these.  First of all, a lot of

5    these clients received this money from someone else, through

6    an interaccount transfer, so it's not even that they can say

7    with personal knowledge that they recall or don't recall

8    something.

9          THE COURT:  But I thought Mr. Jacob said --

10   basically, all of the data that you would need to answer

11   these interrogatories or I guess document requests,

12   whichever, have been provided.

13         MS. CHAITMAN:  Your Honor, here's the thing:

14   There are, whatever, 4 million pages of documents in the e-

15   data room, but I want the Trustee to commit in writing to a

16   position which I can then use to either move to dismiss the

17   complaint because there'll be an utter failure or proof, or

18   whatever.  I'm entitled to know whether...

19         First of all, he has no records other than

20   Madoff's own records.  If in the course of his work as a

21   Trustee there have been 150 instances where he has concluded

22   that there were factual errors in the reports, you don't

23   think that that's important for you to know?  Not

24   necessarily for Wilenitz but...

25         THE COURT:  But if we're trying the Wilenitz case

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:51:56 Exhibit 4
Vol I Pg 108 of 204
Pg 8 of 50

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 27 of 79

Page 27

1    and there are no factual errors vis-a-vis Wilenitz...

2              MS. CHAITMAN:  But there are, because how does the

3    Trustee --

4              THE COURT:  Well, fine.  No, he could find that

5    out.

6              MS. CHAITMAN:  No, no, no, but how does the

7    Trustee...  The Trustee's going to come in and say that for

8    the period prior to December 1998, I'm relying on Madoff's

9    internal records.

10             THE COURT:  Right.

11             MS. CHAITMAN:  And he's refusing to tell me

12   whether he's found that Madoff's internal records are

13   reliable.  We know, for example, one of his profit

14   withdrawal experts said that...  Forgive me, but I don't

15   remember the exact number.  I think the expert concluded

16   that there were 47 entries which were inconsistent with the

17   conclusion that he reached.  And he concludes that that was

18   simply a mistake.

19             Well, okay.  So, how many times in the records, in

20   Madoff's internal records were there mistakes?

21             THE COURT:  Ms. Chaitman, I hear what you're

22   saying but I'm saying that unless the mistakes are in the

23   account of the particular adversary proceeding at issue, the

24   fact that there are mistakes in other accounts or other

25   records doesn't matter.

**AA105**

Page 28

1    MS. CHAITMAN:  But if you have no one with

2  personal knowledge, putting aside the rules of evidence,

3  which I think the Trustee can't even deal with, I don't

4  think the Trustee can even prove anything based on the rules

5  of evidence.  But let's assume that you let it in, just for

6  the weight of it, okay?  Let's say that -- how is Evelyn

7  Berezin Wilenitz, who inherited this account from her

8  deceased husband, how is she supposed to know whether he

9  realized there was a mistake in 1983 or whatever the year

10  was?  It's impossible.

11    THE COURT:  But you get the records...

12    MS. CHAITMAN:  But what do we compare them

13  against?

14    THE COURT:  How would we know there's a mistake

15  unless he's got two sets of records for the same

16  transaction, which indicates a mistake?

17    MS. CHAITMAN:  What I'm saying is that the

18  profitable withdrawal expert for the Trustee concluded that

19  there were 47 or whatever it was mistakes in Madoff's

20  account records.

21    THE COURT:  Were there any in the Wilenitz

22  account?

23    MS. CHAITMAN:  No, because he was looking at a

24  different issue.  But what I'm saying to you is that if

25  these reports were generated by people who were careless,

08-01789-cgm Doc 18573-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 126-2 Filed 01/18/19 Entered 01/18/19 13:01:56 Exhibit 2
Vol I Pg 110 of 204
Pg 140 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 29 of 79

Page 29

1   incompetent to do the job, deliberately motivated to

2   misrepresent what was going on in the transactions, that's

3   relevant.

4           THE COURT:  So you can ask him at a deposition.

5   That sounds like expert discovery.

6           MS. CHAITMAN:  No, because I'm...  If the Trustee

7   -- if it's been brought to his attention that the internal

8   records are full of factual errors, I think he has an

9   obligation to disclose that.

10          THE COURT:  I think I disagree.  Let's go through

11  the request...  As I said, you can make a motion to compel.

12  I can't tell you that you can't --

13          MS. CHAITMAN:  Yeah, I'd like to at the end of

14  this, just so we have a clear record of what the rulings

15  are.

16          THE COURT:  All right.  With respect to one, list

17  the name and address...  Well, I don't have to read it.

18  It's in there.

19          MS. CHAITMAN:  Yeah.

20          THE COURT:  I'm looking at Document 63-1.

21          MR. JACOBS:  Right.

22          THE COURT:  Is there an objection to that?

23          MR. JACOBS:  Yes, Your Honor.  This request is

24  like the other...  As the Court pointed out with respect to

25  other requests, this request is essentially seeking our work

**AA107**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 12263-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 2
Vol I   Pg 111 of 204
Pg 111 of 50

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 30 of 79

Page 30

```
1    product.

2            THE COURT:  That was my reaction when I saw it.

3            MR. JACOBS:  And I explained to Ms. Chaitman on

4    the phone yesterday that, as she knows, there are

5    potentially upcoming depositions of BLMIS employees

6    happening in the PW context.  She has a right to transcripts

7    of those depositions or to participate.

8            THE COURT:  Does she have the right to ask you who

9    you spoke to?  Forgetting about what they said.

10           MR. JACOBS:  She absolutely doesn't.  That's our

11   investigatory work product.  And any mental impressions, or

12   memos, or notes that we took during our investigation are

13   work product that are shielded from discovery.

14           THE COURT:  Certainly, when you asked for witness

15   statements, that sounded like Hickman v. Taylor, which was

16   the issue in that case.

17           MS. CHAITMAN:  You know what, Judge?  The reason I

18   want to brief that issue is that a SIPA trustee has specific

19   obligations to investigate the debtor and report to the

20   creditor body on what he finds.  And I think that there's a

21   very strong issue there.  This is not a typical adversary.

22   This is an adversary who's appointed pursuant to a federal

23   statute, which was intended to protect the customers.

24           THE COURT:  Well, the same is true of a trustee,

25   as a representative of the estate.
```

**AA108**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/18/19   Entered 01/18/19 13:01:56   Exhibit 4
Vol I   Pg 142 of 204
Pg 31 of 30

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 31 of 79

Page 31

1          MS. CHAITMAN:  I know, but there are SIPA overlays

2     here.  Let's just hypothesize that the Trustee has come to

3     realize that Madoff's internal records are completely

4     unreliable.  Is he then allowed to conceal that information

5     from the Defendants and pursue discovery, asking the Court

6     to rely upon documents that the Trustee has already

7     determined are completely unreliable?

8          THE COURT:  Isn't it really for me to determine

9     whether or not the records...  I assume the Trustee is going

10    to try and prove the cases through the records, whether or

11    not the records are credible.

12         MS. CHAITMAN:  Yes, but wouldn't you be -- you

13    wouldn't be influenced by the fact that the Trustee comes in

14    and says, I've determined -- I found 1,000 errors in this

15    body of documents?

16         THE COURT:  Is it your position that the Trustee

17    can make no mistake in this case?

18         MS. CHAITMAN:  It's not the Trustee's mistake;

19    it's the Madoff records...

20         THE COURT:  No.  No.  Yes, the Trustee has

21    statutory duties under SIPA, but the Trustee is also a

22    litigant.  And I don't think that either as a claim

23    determining person, who's certainly following an objection,

24    or as a plaintiff in an adversary proceeding, that the

25    Trustee has additional duties beyond the ordinary litigation

**AA109**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/18/19   Entered 01/18/19 13:01:56   Exhibit 2
Vol I   Pg 113 of 204
Pg 31 of 50

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 32 of 79

Page 32

1   duties to bear his soul and to file a complaint and say, you

2   know, I really don't think that I have a claim here but I'm

3   going to file it.

4        But in any event, I agree that Number 1 sounds

5   like it's work product, assuming it's material prepared in

6   anticipation of litigation, and I realize the Trustee has

7   certain SIPA duties to do this without regard to litigation,

8   but also has litigation duties and it's...

9        MS. CHAITMAN:  All right, so I'd like to brief

10  that issue, Your Honor.  And Number 2 goes to the same

11  issue.

12        THE COURT:  Let me just read this.  I think Number

13  2 is irrelevant and goes beyond the proportionality

14  standards -- the new rules.  If the records in your case are

15  right, it doesn't matter if the other records are wrong.

16  And if the records in your case are wrong, it doesn't matter

17  that all the other records are right.  It's about your case

18  that we're trying.

19        MS. CHAITMAN:  But, Your Honor --

20        THE COURT:  And I don't think that under the

21  federal rules of evidence I can draw -- infer a pattern and

22  practice of negligence or improper record-keeping, which is

23  really what you're asking me to do.

24        MS. CHAITMAN:  Well, I think what I'd like to do

25  is put this in a motion and lay out the rules of evidence.

08-01789-cgm  Doc 18578-2  Filed 03/18/19  Entered 03/18/19 13:30:42  Appendix
10-04995-smb  Doc 1263-2  Filed 01/16/19  Entered 01/16/19 13:01:36  Exhibit A
Vol I  Pg 114 of 204
Pg 4 of 80

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 33 of 79

Page 33

1   Because when you compare what the rules of evidence permit

2   with -- it's unusual in my experience for a trustee to be

3   relying upon records that go back as far as these records,

4   that were prepared in connection with a Ponzi scheme by

5   people who were either obviously criminals or paid to

6   overlook what they were seeing.

7          THE COURT:  You know -- and maybe this motion that

8   you're contemplating would be a good way to narrow the

9   overall scope of discovery...  By the way, again, I come

10  back to the point that I don't think solvency is relevant.

11  And if you want to set up some sort of omnibus procedure and

12  maybe we can just cut those -- not out of all these cases.

13  I may be wrong but this is an intentional fraudulent

14  transferred case; solvency or insolvency is simply not

15  relevant.  It's not an element of the claim.

16          MR. JACOBS:  Right.  Your Honor, may I confer

17  internally with my colleagues, and can we get back to the

18  Court about that proposal, which makes perfect sense?

19          THE COURT:  Yeah, I'm just throwing that one out.

20  Three, again, it's the same thing -- it's errors in other

21  persons' accounts.  And it sounds to me that at the end of

22  the day, the Trustee has produced all this information

23  anyway.  So, you can do the same analysis, can't you?

24          MS. CHAITMAN:  How would we know, Your Honor, if

25  there was a mistake in a statement that was prepared in

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:03:50   Exhibit 2
Vol I   Pg 115 of 204   Pg 95 of 80

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 34 of 79

Page 34

1    1983?

2                 THE COURT:  Well, how would the Trustee know?

3                 MS. CHAITMAN:  Because he might have found

4    conflicting evidence.  In fact, as I said, as one example,

5    his expert on the profit withdrawal issue said that there

6    were, I think, 47 entries which were inconsistent, and he's

7    concluded that those were mistakes.

8                 THE COURT:  Right.  So, the expert's -- and you'll

9    get all of the entries the expert looked at and you'll get

10   the account statements, and you can do the same analysis.

11                MS. CHAITMAN:  But that's limiting...  Then I'm

12   only getting what the expert got.  And there may be a whole

13   body of evidence which disproves the expert's conclusions.

14                THE COURT:  That's speculative.  But I think that

15   maybe in response to the motion I have to understand what's

16   in the data room, and what's being produced.  I know that

17   you've told me it many times.

18                MR. JACOBS:  Yes.

19                THE COURT:  And it kind of rolls over my head

20   sometimes.  But I mean, the bottom line is if you can do the

21   same analysis with the same data, because --

22                MS. CHAITMAN:  I can't.

23                THE COURT:  Let me just finish.  Then why does the

24   Trustee have to do this?  Putting aside the relevance

25   questions.

**AA112**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
Vol I Pg 116 of 204

10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:01:50 Exhibit 2
Pg 36 of 80

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 35 of 79

Page 35

```
1          MS. CHAITMAN:  Because the Trustee is in a unique

2    position to have investigated the Debtor with, you know,

3    hundreds of millions of dollars of expert assistance, and he

4    has unique access to the employees, and he has the ability

5    to know information that there's no way I could ever

6    duplicate.

7          THE COURT:  Like what?  I mean, it might take time

8    and money, I understand that, but I just don't understand --

9          MS. CHAITMAN:  Like someone coming in and saying,

10   you know, we falsified these entries.  We just made them up.

11   Because some of these --

12         THE COURT:  Well, obviously, they're all false.

13         MS. CHAITMAN:  Well, you're saying the deposits

14   and withdrawals --

15         THE COURT:  Right, those are not.

16         MS. CHAITMAN:  Okay.  But what I'm saying to you

17   is it may very well be...  I happen to believe, based on

18   what people have told me, certainly with respect to the

19   profit withdrawals, that these were not received.  They may

20   have been received by somebody else but they weren't

21   received by the customers.

22         THE COURT:  Well, then the customer denies that

23   they received it.  I just...  You know, you're certainly

24   entitled to know whether the records regarding the

25   particular defendant are correct, but if there was a mistake
```

**AA113**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
Vol I   Pg 117 of 204

10-04995-smb   Doc 1263-2   Filed 01/18/19   Entered 01/18/19 13:01:56   Exhibit 2
Pg 117 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 36 of 79

Page 36

1   or a phony record on somebody else's account in 1986, I just

2   don't...  It's just not relevant.  And, as I said, you can

3   probably do the same analysis anyway.

4          Number 4 is the same thing.  A lot of this is in,

5   what is it, the Calura report or the Greenblatt report?

6          MR. JACOBS:  Well, both of those reports cross-

7   reference each other, so I tend to view it, personally at

8   least, as a comprehensive report.  But the issue with PW

9   here, Your Honor, is that obviously the request is seeking

10   that documentation across the entire body of customer

11   accounts, right, at all periods in time, and as a --

12          THE COURT:  Let me ask you a question, though, on

13   this one.  Does Wilenitz have any profit withdrawal...?

14          MR. JACOBS:  It does not.  Not in this --

15          THE COURT:  Well, how can you ask for that in this

16   case?

17          MS. CHAITMAN:  I think that, first of all, what I

18   intended to do, Your Honor, was have one set of

19   interrogatories that would cover all of my clients.

20          THE COURT:  But in this case -- you're telling me

21   you're going to make a motion to compel.

22          MR. JACOBS:  Right.

23          THE COURT:  Are you going to make a motion to

24   compel on Question Number 4, where there are no PW entries

25   in this particular defendant's...?

**AA114**

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
Vol I Pg 118 of 204

10-04995-smb    Doc 12633-2    Filed 01/16/19    Entered 01/16/19 13:01:50    Exhibit A
Pg 98 of 60

10-04995-smb    Doc 67    Filed 05/19/16    Entered 05/24/16 12:03:01    Main Document
Pg 37 of 79

Page 37

```
1           MS. CHAITMAN:  I need to go back.  I don't recall

2    at this moment whether the predecessor account had PW

3    entries.

4           THE COURT:  Okay, fair enough.

5           MR. JACOBS:  The predecessor accounts did not have

6    any PW actions.  I checked that in preparation for this

7    hearing.

8           THE COURT:  All right.  Well, she's entitled to

9    check that and --

10          MR. JACOBS:  But, Your Honor --

11          THE COURT:  (indiscernible) have been made

12   available.

13          MR. JACOBS:  But this illustrates nicely the exact

14   reason why a standing order allowing discovery served by Ms.

15   Chaitman to apply in every single case just can't possibly

16   be workable.

17          THE COURT:  Well, I don't want to go through this

18   100 times.

19          MR. JACOBS:  I agree, Your Honor.  And if I may,

20   you know, the protective order that Your Honor issued in the

21   Nelson cases regarding discovery served, which is at issue

22   here as well, concerning the Trustee's compensation, is a

23   perfect example.  And I had a call with Ms. Chaitman

24   yesterday where I said, I understand you want to preserve

25   that issue in all of your cases.  We'll stipulate to that so
```

**AA115**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 2
Vol I   Pg 119 of 204
Pg 38 of 80

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 38 of 79

Page 38

1    that it doesn't need to be re-litigated.  But we're

2    litigating in two District Courts.  We've litigated it here.

3    We've litigated it before Judge (indiscernible).  We've

4    litigated it before Judge Rakoff.  There has to be an end at

5    some point to litigation on the same issue.

6            So, we're happy to stipulate as orders are

7    entered, and I understand the Defendant's desire to want to

8    preserve their right to appeal.  We have no objection to

9    that.  But we can't have a standing order that everything in

10   one case applies to the other.

11           I also asked Ms. Chaitman, based on my

12   representation that we would stipulate to that effect, that

13   she withdraw this discovery and she refused.  So here we are

14   having yet another hearing.

15           THE COURT:  Why don't we get back to the requests?

16           MS. CHAITMAN:  Which one are you up to now?

17           THE COURT:  Five.

18           MS. CHAITMAN:  You're up to five?

19           THE COURT:  I mean, I don't even know what that

20   means.  But it's more of this kind of all of the records

21   type thing.  I'll decide whether or not the records

22   accurately prove that the Trustee has to prove in a

23   particular --

24           MR. JACOBS:  In this request, Your Honor, Ms.

25   Chaitman raises this "riddled with fraud" accusation in

**AA116**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/18/19   Entered 01/18/19 13:03:56   Exhibit A
Vol I   Pg 120 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 39 of 79

Page 39

```
 1   various contexts.

 2           THE COURT:  It's (indiscernible)...

 3           MR. JACOBS:  I have no idea.

 4           MS. CHAITMAN:  It's from the original Dubinsky

 5   report.

 6           MR. JACOBS:  I checked that report.  I was not

 7   able to find it there.  So, to me, this request --

 8           THE COURT:  You can't do a text search?  It's text

 9   searchable, isn't it?

10           MR. JACOBS:  It is.  It's a PDF text-searchable

11   report.  I checked both the earlier report and the current

12   report, which has been revised.  I couldn't find it.  But I

13   mean, this request to me is also in addition objectionable

14   for that reason.  It's just nonsensical.  I mean, how do I

15   even respond to this?

16           THE COURT:  I agree.  Number 6...why do you have

17   to know every customer whose claim has not been paid?  Ms.

18   Chaitman?

19           MS. CHAITMAN:  I have a series of questions which

20   go to this issue, Your Honor.

21           THE COURT:  Well, I understand the argument,

22   although I've dealt with it already, about the Trustee's

23   standing.  Is that what this is going to?

24           MS. CHAITMAN:  No.  The net equity decision was

25   rendered without any factual record.  And I want to have in
```

**AA117**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/18/19 Entered 01/18/19 13:01:50 Exhibit A
Vol I Pg 121 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 40 of 79

Page 40

1    the record the facts with respect to, as of this point in

2    time, what claims have been paid in full, what claims have

3    not been paid in full, and what claims have been sold.

4           THE COURT:  How is that relevant to the Wilenitz

5    case?

6           MS. CHAITMAN:  Well, it's relevant to all of the

7    cases because --

8           THE COURT:  Well, let's deal with Wilenitz.  This

9    is a discovery request.  And in every case, even if you use

10   the same discovery, it's going to have to be relevant for

11   that particular case.

12          MS. CHAITMAN:  Right.

13          THE COURT:  So, how is that relevant to Wilenitz?

14          MS. CHAITMAN:  It's relevant to all the cases

15   because I think that the net equity decision was based upon

16   certain misconceptions of what the factual record would

17   ultimately show.  We have never had an opportunity to go to

18   the Second Circuit with a developed factual record, and I'm

19   anticipating that we will have that opportunity at the end

20   of these adversary proceedings.

21          THE COURT:  Well, you're not going to use this

22   adversary proceeding to create a record to go back and

23   seek...  It's probably too late now, but some sort of

24   reconsideration --

25          MS. CHAITMAN:  No, but certainly with respect to

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 126-2 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit 2
Vol I Pg 2 of 30   Pg 122 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 41 of 79

Page 41

1  whether it's appropriate to allow a SIPA trustee to claw

2  back from innocent customers.  That is an issue the Second

3  Circuit has not yet determined, and I think that it's

4  relevant for the Second Circuit to know the facts about who

5  the claimants are, how many claims have been sold and are

6  owned by hedge funds or other speculative organizations...

7          THE COURT:  Why is that relevant to whether or not

8  Wilenitz is liable for fraudulent transfer?

9          MS. CHAITMAN:  Because, in my opinion, the Ponzi

10  scheme exception to the affirmative defense, which has

11  existed in fraudulent transfer law since Elizabeth I -- that

12  is that you cannot recover an intentional fraudulent

13  transfer from a creditor who takes in good faith on account

14  of an antecedent debt.

15          THE COURT:  And for value.

16          MS. CHAITMAN:  And for value.  And it's

17  indisputable that a customer of an SEC regulated broker is a

18  creditor of the broker -- just as if you have a bank account

19  at Chase Manhattan Bank, that you have a debtor creditor --

20          THE COURT:  No question your clients would

21  probably defraud it.

22          MS. CHAITMAN:  No, no, no, it's not a question

23  defraud it.  They were good faith creditors who took

24  withdrawals on account of an antecedent debt.

25          THE COURT:  Well, but that issue's been litigated,

**AA119**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1204-2   Filed 01/16/19   Entered 01/16/19 13:01:50   Exhibit 2
Vol I Pg 128 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 42 of 79

Page 42

```
 1    and in every --

 2           MS. CHAITMAN:  But --

 3           THE COURT:  Let me finish.  In every Ponzi scheme

 4    case that I've seen, SIPA and non-SIPA, fictitious profits

 5    are just not valued.  So, even if there was an obligation to

 6    restore the principal or whatever, you don't pay value for

 7    fictitious profits.

 8           MS. CHAITMAN:  Well, there are two comments on

 9    that, Your Honor.  I think that you may be grouping together

10    cases where someone was an equity investor in a Ponzi scheme

11    and cases where someone was a good faith creditor of a Ponzi

12    schemer.  And I think that the law should be different with

13    respect to those two categories.  And I think that the first

14    statute, Elizabeth in 1571, recognized that difference.

15    That difference is incorporated into the Bankruptcy Code,

16    it's incorporated into the state fraudulent transfer -- the

17    Uniform Fraudulent Transfer Law.  And, in fact, both the

18    Minnesota Supreme Court and the Texas Supreme Court have now

19    held that it doesn't matter whether it's a Ponzi scheme; if

20    the creditor has given value and takes the money in good

21    faith, it's not recoverable as a clawback.

22           THE COURT:  If you're talking about the

23    (indiscernible) case in the Supreme Court in Texas, I rode

24    that decision, and that's a creditor who provided dollar for

25    dollar value in terms of advertising for whatever it was
```

**AA120**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/18/19 Entered 01/18/19 13:01:56 Exhibit 1
Vol I Pg 124 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 43 of 79

Page 43

1    paid, and it happened to be paid in a Ponzi scheme.  But you

2    don't provide dollar for dollar value for fictitious

3    profits, and that's the difference.

4           But look, I hear you.  Make your motion.  I'm

5    probably going to deny it because it's not relevant to

6    whether or not Wilenitz is liable for a fraudulent transfer.

7    Okay?  Number 7.  This is a similar type of request.

8           MR. JACOBS:  Yes, Your Honor.  I think 6, 7, 8,

9    and 9 all relate to the claims activities.  Some of the

10   requests purport to demand us to produce documentation on

11   behalf of the Madoff Victims Fund, which is separately

12   administered by the Department of Justice.  The Trustee has

13   no legal responsibility for the administration of that fund,

14   which goes well beyond claims of SIPA customers.  So that

15   obviously is completely objectionable, and we couldn't

16   comply even if we were ordered.

17          And, generally, I do believe that these requests,

18   6, 7 -- the unnumbered request, and 8 and 9...

19          THE COURT:  Which is unnumbered?  What page is it?

20          MR. JACOBS:  It's between 7 and 8.

21          THE COURT:  Oh, I see, I see.  Yeah, between 7 and

22   8.

23          MR. JACOBS:  I do believe that these are seeking

24   discovery and furtherance of the standing issue that this

25   court rejected in omnibus decisions on the motions to

**AA121**

08-01789-cgm  Doc 18578-2  Filed 03/18/19  Entered 03/18/19 13:30:42  Appendix
10-04995-smb  Doc 1263-2  Filed 01/18/19  Entered 01/18/19 13:01:56  Exhibit 1
Vol I  Pg 125 of 204
Pg 95 of 30

10-04995-smb  Doc 67  Filed 05/19/16  Entered 05/24/16 12:03:01  Main Document
Pg 44 of 79

Page 44

1    dismiss --

2          THE COURT:  Well, that's what I thought.

3          MR. JACOBS:  And discovery should additionally be

4    prohibited on that basis as well, Your Honor.  You analyzed

5    the law very meticulously, and I believe you didn't reach

6    the issue of whether the sufficiency of the customer fund is

7    determined as of the filing date for purposes of the

8    statute.  However, you did note that there is controlling

9    law in this jurisdiction stating that it is.  And,

10   furthermore, you found it's a factual --

11         THE COURT:  Oh, I was adding (indiscernible)...

12         MR. JACOBS:  Correct.  Persuasive law.

13         THE COURT:  Judge Rakoff adopted it.

14         MR. JACOBS:  Right.  And in addition to that, as a

15   factual matter, you did find that the Trustee does have

16   insufficient funds.  And I can reiterate to you, as I

17   believe you recently heard in our last omnibus update, to

18   date we've recovered, approximately, 11.1 billion.

19         THE COURT:  Well, you can certainly tell her the

20   aggregate number because it's in the report.  I think

21   it's...  Let me just see.  You can give her the aggregate

22   number of assets you had, and claims you paid, and unpaid

23   claims because it's arguably relevant.  I didn't really

24   decide the issue; I just...  Based on everything I had seen,

25   it looked like -- and even the Second Circuit agreed that it

**AA122**

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
Vol I    Pg 126 of 204

10-04995-smb    Doc 1263-2    Filed 01/16/19    Entered 01/16/19 13:01:56    Exhibit 2
Pg 36 of 50

10-04995-smb    Doc 67    Filed 05/19/16    Entered 05/24/16 12:03:01    Main Document
Pg 45 of 79

Page 45

```
 1    looked like the estate was insolvent.

 2              MR. JACOBS:  Right.  I understand, Your Honor.

 3    And, in fact, I think there's public interest in that

 4    information as well.  And as we respond in each and every

 5    discovery request --

 6              THE COURT:  And it's in your report anyway.

 7              MR. JACOBS:  It's in our reports.  It's also on

 8    our website, which is regularly updated, madofftrustee.com.

 9              THE COURT:  And so you agree she could get that

10    information.  Let's move on to...  Let's get off of what we

11    agree with.

12              MR. JACOBS:  All right.

13              THE COURT:  The question regarding Picard's

14    compensation we dealt with already.

15              MS. CHAITMAN:  Yeah, okay, but see, here's another

16    thing, Your Honor.  Unless and until we have an order saying

17    --

18              THE COURT:  There is an order.  It was the omnibus

19    motion order in all these adversary proceedings.  We covered

20    that issue.  You preserve that issue.

21              MS. CHAITMAN:  Okay.  But, for example, with the

22    subpoenas we're having the same issue.  We don't have an

23    order which says, I've held in the Sarah Lawrence case that

24    -- there's no defense to the subpoenas, and that's

25    applicable in all these other cases.  I need to have that in
```

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit 4
Vol I Pg 127 of 204
Pg 47 of 80

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 46 of 79

Page 46

1     the record.

2               THE COURT:  It's applicable to all the cases.

3               MS. CHAITMAN:  Okay, can I submit an order on

4     that?

5               THE COURT:  It's already embodied in the order in

6     the omnibus motion, isn't it?

7               MS. CHAITMAN:  I don't believe so, Your Honor.

8               MR. JACOBS:  I think Ms. Chaitman is raising an

9     additional issue.  The Rule 45 bank subpoenas that we

10    litigated in Wilenitz and Sarah Lawrence --

11              THE COURT:  Well, I was talking about this issue

12    with Mr. Picard's company --

13              MR. JACOBS:  That is absolutely correct.  I agree

14    with Your Honor.  It is made applicable to every proceeding

15    by your decision in the omnibus proceeding.

16              THE COURT:  Well, the only thing I would say with

17    the bank --

18              MS. CHAITMAN:  But the Trustee objected --

19              THE COURT:  Stop.  The only thing I would say with

20    the bank subpoenas is if a defendant admits that they

21    received the particular transfers and the amounts are

22    accurate, then I might conclude that there's no entitlement

23    to the bank records based on the position the Trustee's

24    taken.  But every one of these responses to requests for

25    admission say, it's accurate but we didn't receive it, or

**AA124**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 126-2 Filed 01/18/19 Entered 01/18/19 13:01:56 Exhibit 2
Vol I Pg 128 of 204
Pg 48 of 50

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 47 of 79

Page 47

1   it's accurate to the extent it agrees with the records of

2   our accountants, and those are not answers.

3            That's the issue I have.  If you just say, yeah,

4   they're accurate, then they're accurate.

5            MS. CHAITMAN:  You allowed subpoenas to be served

6   in cases where there were blanket admissions as to --

7            THE COURT:  That is not correct.

8            MR. JACOBS:  That is factually incorrect, Your

9   Honor.

10           THE COURT:  You can show me and I will reconsider

11  it, but --

12           MS. CHAITMAN:  Well, the documents have been

13  produced but --

14           THE COURT:  I went through every one of those

15  requests and Sarah Lawrence was in a different position

16  because Sarah Lawrence said, they're right to the extent

17  they agree with the reference my account takes.

18           MS. CHAITMAN:  Right.

19           THE COURT:  Others said, yes, they accurately

20  reflect what I put in, or something like that, and what came

21  out, but I didn't receive them.  You know, it was that kind

22  of stuff.

23           MR. JACOBS:  That was the Wilenitz matter.

24           THE COURT:  That was in a lot of them; it wasn't

25  just Wilenitz.  And then, you know, it just makes it more

08-01789-cgm    Doc 18573-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
Vol I Pg 129 of 204

10-04995-smb    Doc 1263-2    Filed 01/18/19    Entered 01/18/19 13:03:56    Exhibit 4
Pg 48 of 80

10-04995-smb    Doc 67    Filed 05/19/16    Entered 05/24/16 12:03:01    Main Document
Pg 48 of 79

Page 48

1    difficult.

2              MS. CHAITMAN:  So you want to do those on a one by

3    one basis?

4              THE COURT:  Well, if you are...  I'll continue to

5    go through them one on one, but I will tell you that if I

6    see those kind of answers, that's going to be the end of it.

7    All right, next is --

8              MS. CHAITMAN:  Can we go to one other thing, if I

9    can just interject?

10             THE COURT:  Sure.

11             MS. CHAITMAN:  Because this came up with a lot of

12   the subpoenas.  You had entered an order in Sarah Lawrence

13   that if there was a subpoena to which I objected, I would

14   ask for a meet and confer, and the subpoena would not be

15   served until you -- if the meet and confer was unsuccessful,

16   which of course it would be, we would then ask for a

17   conference and until you resolved it, the Trustee would not

18   serve the subpoena.

19             THE COURT:  No, these were subpoenas that were

20   served already because you were seeking protection from the

21   subpoenas.  The Trustee said he was going to serve

22   subpoenas; he was concerned about (indiscernible).  And then

23   the original, I don't want to say agreement, but the

24   original proposal that either before or after these were

25   served, the Trustee would send either a request for

**AA126**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:01:50 Exhibit 4
Vol I Pg 130 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 49 of 79

Page 49

1    admission or proposed stipulations regarding the withdrawals

2    and the deposits into the account during, I guess, the two-

3    year period or the three-year period, whatever it was.  You

4    weren't being asked to stipulate to all of the withdrawals

5    and deposits.

6            And if you admitted that they were accurate, then

7    that was it; he didn't need the records.  But if you didn't

8    admit that they were accurate or there was some issue

9    relating to an affirmative defense, then he would need the

10   records.

11           In terms of the procedure that I thought was being

12   set up, you'd confer -- and that just seems to be futile at

13   this point because we're not getting anywhere with

14   conferring.  If it couldn't be resolved, you'd immediately

15   write me a letter and hold a conference like this, and I'd

16   resolve it.  But that just wasn't working.

17           MS. CHAITMAN:  But what's happened is that the

18   Trustee is now serving subpoenas before he even serves

19   discovery demands, or at the same time that he serves

20   discovery demands, so that my clients are not even given an

21   opportunity to admit or deny the transfer...

22           MR. JACOBS:  Your Honor, may I address that?

23           THE COURT:  Yes.

24           MR. JACOBS:  The Defendants have an opportunity to

25   admit to the transfers in their answer.  And any day of the

**AA127**

08-01789-cgm  Doc 18578-2  Filed 03/18/19  Entered 03/18/19 13:30:42  Appendix
10-04995-smb  Doc 1268-2  Filed 01/16/19  Entered 01/16/19 13:03:56  Exhibit 4
Vol I  Pg 131 of 204
Pg 50 of 50

10-04995-smb  Doc 67  Filed 05/19/16  Entered 05/24/16 12:03:01  Main Document
Pg 50 of 79

Page 50

1   week we will accept an amended answer that admits to those

2   factual issues.  There is no obligation in the federal rules

3   that discovery be served in any particular order.  Given the

4   history, as the Court very aptly notes, with Ms. Chaitman on

5   these cases and the needless litigation that has occurred on

6   this issue, yes, we are serving bank subpoenas at the

7   earliest possible date.  Because these are delay tactics,

8   it's causing unnecessary litigation, and the documents are

9   being destroyed.  And I know that the Defendants will use

10  the destruction of those documents against us, as Ms.

11  Chaitman has alluded to earlier today, and making

12  allegations we can't prove our cases.

13          THE COURT:  I'm not going to tell the Trustee that

14  he can't serve subpoenas.  If there's a subpoena served,

15  there's nothing that stops you from amending the answer or

16  just submitting an affidavit that says, yeah, I agree that

17  these are the deposits, and these are the withdrawals, and

18  either the schedule that's attached to the complaint or

19  whatever paragraph it's alleged in.

20          MR. JACOBS:  And I will reiterate, we are happy to

21  receive that on an unambiguous stipulation or omitted answer

22  any day of the week and we will scale a discovery.

23          THE COURT:  It just hasn't worked and I don't want

24  to go through that again.  It just hasn't worked.  Ten

25  relates to the Court's compensation arrangement, 11 relates

**AA128**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit 4
Vol I Pg 132 of 204
Pg 218 of

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 51 of 79

Page 51

1   to the Court's compensation...

2           MS. CHAITMAN:  Right, and 12 does.

3           THE COURT:  Well, 12 relates to other attorneys'

4   compensation.  And I go with that in the omnibus decision --

5           MS. CHAITMAN:  Right.  Okay.  So, 13...

6           THE COURT:  I think that the Trustee supplied the

7   list, didn't you?

8           MR. JACOBS:  We did supply --

9           MS. CHAITMAN:  He supplied the list but it was a

10  list of all the employees; it didn't break it down by

11  what...

12          MR. JACOBS:  That's not correct, Your Honor.  We

13  responded to this...  I don't believe we had to --

14          THE COURT:  Where is that attached?

15          MR. JACOBS:  It's attached to our responses to

16  these requests that we attached to our letter, which is

17  dated May 4th.  That's the list that has every employee that

18  we could identify making a reasonable search --

19          THE COURT:  Do you have a list that -- not

20  creating a list, but do you have a list that breaks down

21  which of the divisions the employee worked for?

22          MR. JACOBS:  We do and we've provided it

23  specifically.

24          THE COURT:  Where?

25          MR. JACOBS:  And here's the issue:  I don't

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1226-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 2
Vol I   Pg 138 of 204
Pg 53 of 80

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 52 of 79

Page 52

1   believe it's before the Court in any of the party's filings,

2   but all of that documentation is in the data room, which is

3   our objection to having to even respond to the request.

4           THE COURT:  Well, if it's in the data room -- I

5   mean, even if she makes a motion to compel, if you'd

6   convince me that it's been turned over or made available --

7           MR. JACOBS:  It has.  We endeavored to

8   specifically -- we identified for Ms. Chaitman the payroll

9   records for January 2008 that list all of the employees,

10  which was part of the request; we identified an internal

11  BLMIS list, which breaks out each employee by their

12  division; and then she objected that we hadn't given her

13  addresses and phone numbers, so we endeavored to compile the

14  list that you see attached to our responses and our May 4th

15  letter, which is before you now.  That's a list we were able

16  to create upon a reasonable search to the best of our

17  knowledge.

18          THE COURT:  And as I understand it, you provided a

19  list, which identifies which of the employees work for which

20  division?

21          MR. JACOBS:  We did.  It already was in the data

22  room and always available to Ms. Chaitman.  We reproduced it

23  and identified it by Bates Number.

24          THE COURT:  Ms. Chaitman, you've got to look at

25  this stuff before you --

**AA130**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit 1
Vol I Pg 134 of 204
Pg 54 of 60

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 53 of 79

Page 53

1          MS. CHAITMAN: Yeah, I did. I will go back and

2    look at it again. I do not believe that it broke it down

3    that way, but I will look at it.

4          THE COURT: All right. 14 I think is permissible.

5    That goes back to the computation of net equity, which is

6    basically the same as the computation of fictitious profits.

7          MR. JACOBS: Right.

8          THE COURT: And, you know, she's entitled to

9    inquire to how you computed the net equity in a particular

10   account. Now, it may make sense -- I don't know how you're

11   going to do this with one expert and however many cases you

12   have at this point, but she's certainly entitled to ask how

13   did you compute the next equity in the transferor account

14   back in whenever it was.

15         MR. JACOBS: I don't disagree, Your Honor. That's

16   a subject of expert reports that will be proffered in expert

17   discovery. There are three.

18         THE COURT: Yeah, I mean, some of this may be

19   relevant but premature. That's all I'm suggesting.

20         MS. CHAITMAN: But why do I have to wait for an

21   expert report? This is a factual issue. I don't even think

22   --

23         THE COURT: But you've gotten the information

24   already.

25         MR. JACOBS: We've produced 100 percent of the

**AA131**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 4
Vol I Pg 135 of 204
Pg 55 of 60

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 54 of 79

Page 54

1    underlying documentation.

2              THE COURT:  It's been produced.  If you want to go

3    and do it...  My response is if it's been produced and you

4    can make this determination, then go ahead and make it.

5              MS. CHAITMAN:  It hasn't been, Your Honor.  Again,

6    we're dealing with the period prior to December 1998, when

7    there are no checks.  So, how can an expert testify that

8    something was deposited --

9              THE COURT:  But that's his problem.  He can only

10   produce what he has.

11             MS. CHAITMAN:  But the point is -- he didn't say

12   here that he's not producing it because he doesn't have it.

13   If that were in the record, it would be different.  He's

14   objecting to producing it.

15             MR. JACOBS:  I'm objecting to this request in its

16   current form as being burdensome under the proportionality

17   standards of Rule 26 when, by court order, we are permitted

18   to provide all of the underlying documentation and an expert

19   summary report on this exact issue, which we have done and

20   we will do.

21             THE COURT:  As I had said, if you have provided

22   the information or provided access to the information,

23   that's --

24             MS. CHAITMAN:  Right, and if Ms. Chaitman believes

25   there are holes in the records or incomplete analyses, she

**AA132**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1268-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 4
Vol I   Pg 136 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 55 of 79

Page 55

1    is more than able to examine those experts and conduct

2    expert discovery on those exact issues at that time.  But

3    until she has raised a bona fide dispute, I don't believe

4    that Rule 26 entitles defendants to blanket discovery on

5    broad issues like this without a demonstration of the need

6    under the proportionality standards of the rule.

7             MS. CHAITMAN:  Judge?

8             THE COURT:  Yeah?

9             MS. CHAITMAN:  This is not proportionality.  The

10   Trustee's going to come in and say that even Berezin

11   Wilenitz has a negative net equity based on transactions

12   which occurred prior to December 1998...

13            THE COURT:  I agree with you.  But he's saying

14   he's produced that information.

15            MS. CHAITMAN:  But no, they don't have the

16   information.  What he's saying is his expert is going to

17   say, you know, I conclude --

18            THE COURT:  Does he have to tell you what he

19   doesn't have, or does he have to simply say, I will produce

20   everything that I have that's responsive to this request?

21   And then you ask the expert at a deposition, you know, what

22   records did you review?  Did you review -- did you compare

23   the account statements in 1998 with bank statements?  And

24   he'll say, well, I didn't have any bank statements.  And

25   then you can raise that at trial -- that his report, in

**AA133**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/18/19   Entered 01/18/19 13:01:56   Exhibit 2
Vol I   Pg 137 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 56 of 79

Page 56

1    terms of the computation of net equity in the transfer

2    account is not accurate and, therefore, you can't know what

3    the fictitious profits were, if any, that he's suing for in

4    this case.

5              MS. CHAITMAN:  Okay.  I mean, it just delays the

6    process.  Because I believe that I would be entitled to

7    dismiss all of the complaints where the Trustee has no third

8    party records to prove...  Just as a matter of the rules of

9    evidence, you can't prove a payment to someone through an

10   expert report.

11             THE COURT:  Well, I don't know how the expert...

12   If the expert had no records, I don't know how the expert

13   came up with the report.  So, obviously, the expert has some

14   records and is probably extrapolating --

15             MS. CHAITMAN:  The expert has Madoff statements.

16             THE COURT:  I agree with you...  Let me just

17   finish it off on this.  I agree with you that you were

18   entitled to inquire into the computation of fictitious

19   profits, which may go back to the beginning of time.  On the

20   other hand, the Trustee can only produce what he has.  I'm

21   told the Trustee has made that available.  And then the next

22   step is to ask the expert what he relied on and what he

23   didn't have to determine what the gaps are in the evidence

24   if you can't determine it from what the Trustee's produced.

25             If you are concerned that the Trustee is suddenly

AA134

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit A
Vol I Pg 138 of 204
Pg 98 of 80

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 57 of 79

Page 57

1   going to show up with records that he didn't produce, you

2   know, that's true in every case.  And then I guess we'll

3   have a fight over whether or not these documents were ever

4   made available to you.  Let's move on.

5          15 is this insolvency issue.  And maybe in

6   response to the motion to compel...well, I guess there are

7   other lawyers involved on this issue.

8          MR. JACOBS:  Yes.  And I would...

9          THE COURT:  Maybe it's a good omnibus issue.

10          MR. JACOBS:  Yes, I believe that you suggested

11   that earlier and I think we would love to confer about that.

12          THE COURT:  Except in certain streamlined cases,

13   if insolvency is irrelevant.  I remember when I saw this

14   issue, it just struck me that it's irrelevant in an

15   intentional fraudulent transfer case.

16          MS. CHAITMAN:  Okay, so, 16, Your Honor, goes to

17   the issue that I had raised with you once and you said you

18   were familiar with --

19          THE COURT:  I thought that information has been

20   provided already, though.  Didn't you provide the DTC

21   records?

22          MR. JACOBS:  We have, Your Honor, going back to

23   2002 -- maybe it was 2003; I'd need to check, but one of

24   those two years for sure.

25          THE COURT:  Is that the last year or the first

**AA135**

Page 58

1   year that you have records?

2           MR. JACOBS:  Yeah.  So, what we did -- because I

3   think it's helpful, I'd love to explain very briefly -- we

4   did rule 2004 subpoena DTC.  They produced records to us.

5   Ms. Chaitman has copies of those productions.  We also

6   restored all of the live data on the active DTC terminal

7   that BLMIS used.  Ms. Chaitman has all of that data.

8           DTC had also made a similar production to the SEC;

9   Ms. Chaitman also has a copy of that production.  And,

10  collectively, those records show daily trading positions

11  going back to 2002.

12          THE COURT:  So, what more do you need?

13          MS. CHAITMAN:  Your Honor, let's just hypothesize

14  we're talking about someone whose net equity is calculated

15  over a period beginning in 1982, okay?  The only way, in my

16  opinion, that the Trustee could conceivably be entitled to

17  this Ponzi scheme presumption, which would allow him to void

18  transfers going back to 1982, is if Madoff was operating a

19  Ponzi scheme in 1982.

20          THE COURT:  Right.

21          MS. CHAITMAN:  And I'm entitled -- let's assume,

22  for example, that he had 200 employees, six of them were

23  involved in the Ponzi scheme, 194 of them were involved in a

24  legitimate trading business, and the legitimate trading

25  business did $16 trillion, and the Ponzi scheme in 1982 did

**AA136**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 2
Vol I   Pg 140 of 204   Pg 60 of 80

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 59 of 79

Page 59

1    half a million.

2              THE COURT:  Mm hmm.

3              MS. CHAITMAN:  You could very reasonably determine

4    that the Ponzi scheme presumption cannot apply to that year.

5              THE COURT:  Okay.  I'm not arguing with you but I

6    thought that whatever records they had had been turned over.

7              MS. CHAITMAN:  No, they have internal records that

8    they have not turned over.  They have monthly reports as to

9    what the trading volume was in the market making unit, in

10   the investment advisory unit, and in the --

11             THE COURT:  Well, the investment advisory but

12   there's no trader.

13             MS. CHAITMAN:  Excuse me, I mean the market making

14   and the proprietary trading.

15             MR. JACOBS:  We have turned over everything that

16   we have.  We scoured the ends of the earth, we have been in

17   discussion with DTC to try to find out if there are more

18   documents.  Ms. Chaitman subpoenaed DTC.  She obviously has

19   subpoena power.  She can go out into the world and conduct

20   third-party discovery...

21             THE COURT:  Okay, but she's entitled also to ask

22   you what documents you have.

23             MR. JACOBS:  Your Honor, we didn't make 4 million

24   records available because we're trying to hide anything.  We

25   have made everything we have available within the parameters

**AA137**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1264-2   Filed 01/16/19   Entered 01/16/19 13:01:36   Exhibit A
Vol I   Pg 141 of 204
Pg 61 of 90

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 60 of 79

Page 60

1   of what is readily accessible and reasonable under the

2   federal rules of civil procedure.  Well beyond that.  But we

3   have made everything on this issue that we have available.

4            And, again, Mr. Dubinsky in his report, as Ms.

5   Chaitman knows, again, it hasn't been served here yet --

6   goes through a painstaking analysis of how the IA business

7   never conducted trades.  It also goes through a painstaking

8   analysis of how cash infusions from the Ponzi scheme propped

9   up House Five, which is the --

10           THE COURT:  Right, but she's still entitled to the

11   records.

12           MR. JACOBS:  She has all of the records.

13           THE COURT:  All right, then if she has them, she

14   has them.

15           MS. CHAITMAN:  Well, why can't he -- if he claims

16   that there are monthly reports for the legitimate trading

17   units, why can't he just give me the Bates Numbers?  Why do

18   I have to go on a fishing expedition through 4 million pages

19   of documents and then come back and say, they're not here?

20           THE COURT:  Wouldn't he have to do the same thing?

21           MR. JACOBS:  That's exactly what this is, Your

22   Honor, a fishing expedition.

23           MS. CHAITMAN:  They know where they are.

24           MR. JACOBS:  One of the exact criteria under Rule

25   26B2 is she has equal access to the records that we do.

**AA138**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
Vol I   Pg 142 of 204

10-04995-smb   Doc 1268-2   Filed 01/16/19   Entered 01/16/19 13:03:56   Exhibit 2
Pg 2 of 80

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 61 of 79

Page 61

1          THE COURT:  And, again, this comes back to my

2    understanding of the records.  If you have tables of content

3    or indices...

4          MR. JACOBS:  I do.

5          THE COURT:  I don't want to see them now.

6          MR. JACOBS:  Okay.

7          THE COURT:  If you have those things and somebody

8    can look at them and see the subject matter of what they

9    want to look at, figure out what to look at, fine.

10         MR. JACOBS:  There is a subfolder in Data Room 1

11   that is called DTC that has all of those records.

12         MS. CHAITMAN:  I'm not asking for -- I have the

13   DTC records.

14         THE COURT:  She wants other non-DTC records.

15         MR. JACOBS:  To the extent we have them in

16   addition to publicly available information that we obtain,

17   it's all in the data room clearly labeled.

18         THE COURT:  You'll have to show me when the time

19   comes.  17 -- these are the number of employees that work

20   for each unit.

21         MR. JACOBS:  Yes, Your Honor.  And as I had

22   mentioned before, we provided a specific chart that contains

23   this exact information, even though I believe we're not

24   obligated to because it had already been made available in

25   the data room and could've been found with the click of a

**AA139**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/14   Entered 01/16/14 15:03:56   Exhibit 2
Vol I   Pg 3 of 30
Pg 143 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 62 of 79

Page 62

1    mouse.

2            MS. CHAITMAN:  I've asked for each year of the

3    operation.  I have it only for the last year.

4            MR. JACOBS:  To the extent we have it, again, the

5    Defendant has equal access to those documents.  We shouldn't

6    have to do their work for them.

7            THE COURT:  And how would she know who's working

8    for which division each year?

9            MR. JACOBS:  Your Honor, how would we know?  The

10   Trustee doesn't have personal knowledge.  We would have to

11   do an investigation, which is what the Defenders would do.

12           THE COURT:  This is interrogatory.  How would you

13   do that investigation?

14           MR. JACOBS:  We would do exactly what Ms. Chaitman

15   would have to do and start searching through the document

16   repository to find supporting documentation that would

17   answer those questions based on our best ability, without

18   personal knowledge of having been present at the time.

19           THE COURT:  Well, you know, that's an aspect of

20   the case.  Nobody really has personal knowledge, who's

21   involved in the case at this point.

22           MR. JACOBS:  Right.

23           THE COURT:  Everything is through records.

24           MR. JACOBS:  But also, Your Honor, what's the

25   relevance?  What is the relevance?

08-01789-cgm  Doc 18578-2  Filed 03/18/19  Entered 03/18/19 13:30:42  Appendix
10-04995-smb  Doc 1263-2  Filed 01/18/19  Entered 01/18/19 13:01:50  Exhibit 2
Vol I  Pg 144 of 204
Pg 4 of 30

10-04995-smb  Doc 67  Filed 05/19/16  Entered 05/24/16 12:03:01  Main Document
Pg 63 of 79

Page 63

1          THE COURT:  Well, her argument, though, is that it

2     wasn't a Ponzi scheme if, of the 200 employees, 190 were

3     working for the so-called legitimate divisions of BLMIS, and

4     those divisions were generating a lot of money.  Now, that's

5     probably not the case...

6          MR. JACOBS:  Right.

7          THE COURT:  ...in terms of generating money; I

8     don't know about the number of employees, from everything

9     I've seen.  But, you know, I guess it's relevant to whether

10    or not there was a Ponzi scheme on the date of a transfer.

11         MR. JACOBS:  Well, all of the financial

12    information concerning the House Five's operations is in the

13    data room in a folder...in various folders.  That's

14    available to the Defendants -- as it's discussed in the

15    report of Mr. Dubinsky.

16         THE COURT:  I didn't understand 19.

17         MS. CHAITMAN:  You didn't understand the

18    interrogatory?

19         THE COURT:  Yeah.  I just had a note here, I

20    didn't understand.  Let me read it again.

21         MR. JACOBS:  Well, Your Honor --

22         THE COURT:  Let me just read it.

23         MR. JACOBS:  Okay.

24         THE COURT:  Oh, the reason I guess I didn't

25    understand it is I didn't think BLMIS held any stock.

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 4
Vol I   Pg 145 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 64 of 79

Page 64

1          MS. CHAITMAN:  Well, it was Madoff until 2001, and

2     then nit was BLMIS.  There were times when Madoff did trades

3     equal to 10 percent of the daily volume on the New York

4     Stock Exchange.  He had a huge portfolio of securities.

5          So, what I'm asking is -- I mean, let's assume

6     that every security which was listed on the split strike

7     conversion customer statements was actually held in huge

8     volumes by Madoff at the time.  It simply wasn't allocated

9     to the investment advisory --

10          THE COURT:  But I thought it wasn't held.  I

11     thought he never engaged in a securities transaction.

12          MS. CHAITMAN:  Only -- what the Trustee has said,

13     he never engaged in securities transactions in the

14     investment advisory business.

15          THE COURT:  Right.

16          MS. CHAITMAN:  He had huge stock positions with

17     the same securities...  I mean, I've been able to do this

18     with the DTC records.  I can show that every security that

19     was listed on an investment advisory customer statement was

20     held by Madoff at that time.

21          THE COURT:  Mm hmm.

22          MS. CHAITMAN:  But the point is, I can't go back

23     before 2002, and I'm asking the Trustee if he has the

24     records to give that to me.

25          THE COURT:  So, how is this interrogatory

**AA142**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:50   Exhibit A
Vol I   Pg 66 of 80
Pg 146 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 65 of 79

Page 65

```
 1    different from, I think it was 16 he was talking about?  16
 2    doesn't ask to identify the specific stock but...
 3              MS. CHAITMAN:  I'm just getting the volume.
 4    Because one of the arguments will be that the investment
 5    advisory volume was X percent of the total and, therefore,
 6    this was not a Ponzi scheme.
 7              THE COURT:  And what does 18 relate to?
 8              MS. CHAITMAN:  18 relates to the specific
 9    securities.  In other words, the Trustee's position is that
10    Madoff did not own the securities that were shown on the
11    statements.  And, in fact, I've already established that
12    Madoff did own the securities that were shown on the
13    statement; not in the volume that was on the statement.
14              THE COURT:  Owned them in its own name?
15              MS. CHAITMAN:  Madoff's or BLMIS.  Yeah, for that
16    period it's BLMIS, yes.  Yeah, they held securities.  They
17    were a huge securities dealer.  So then how do you decide
18    whose securities they were?
19              THE COURT:  Well, BLMIS held it in its own name,
20    right?
21              MS. CHAITMAN:  Yeah.  But the thing is if you buy
22    100 shares of IBM today from Merrill Lynch, they don't have
23    to actually get the securities and stick them in your
24    pigeonhole.  They have them on account; they owe it to you.
25              THE COURT:  And how is this relevant to the
```

**AA143**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
Vol I   Pg 147 of 204

10-04995-smb   Doc 1268-2   Filed 01/18/19   Entered 01/18/19 13:01:56   Exhibit A
Pg 67 of 80

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 66 of 79

Page 66

1    lawsuit?

2            MS. CHAITMAN:  Because there's no...  The basis of

3    the Trustee's argument is that there were no securities ever

4    purchased.  There was one entity, whether it was Madoff as

5    the sole proprietor or BLMIS, there was one entity operating

6    a company with 200 employees, of which a very small

7    percentage were involved in the investment advisory

8    business.  If that entity held securities positions, who's

9    to say that they couldn't have been allocated to Mrs.

10   Wilenitz?

11           MR. JACOBS:  I think that is a tenuous assertion

12   at best.  And Ms. Chaitman again needs to make a showing

13   that those securities were actually held on behalf of the IA

14   business customer and her defendant, I think, in order to

15   show an entitlement to discovery.

16           THE COURT:  How would she show the allocation, or

17   how would you show that they weren't --

18           MR. JACOBS:  Well, I mean, Ms. Chaitman says she's

19   done an inventory of the DTC records and it looks like there

20   might've been a stock held at some point in connection with

21   some function of BLMIS that matches the name of a stock

22   appearing on a customer statement.  That's not proof that

23   the stock was ever bought or sold on behalf of that customer

24   for their account.

25           THE COURT:  But what would you have to show to

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
Vol I   Pg 148 of 204

10-04995-smb   Doc 1263-2   Filed 01/16/14   Entered 01/16/14 13:01:56   Exhibit 4
Pg 68 of 80

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 67 of 79

Page 67

1    prove that?  I'm assuming in the best of circumstances you

2    have BLMIS owning 100 shares of IBM.

3           MR. JACOBS:  Right.

4           THE COURT:  And the Wilenitz account statement

5    showing 50 shares of IBM.

6           MR. JACOBS:  Right.  Well, as is discussed at

7    length in our expert report, one example is that many of the

8    customer statements reflect purported stock trades that

9    couldn't have been possible given the price and the amount

10   purported to have been sold as reflected on the customer

11   statements.

12          THE COURT:  But she's saying something different

13   on this one.  She's saying there was an actual trade and

14   BLMIS owned an actual stock from one of its other

15   businesses.

16          MR. JACOBS:  Right.

17          THE COURT:  One of the (indiscernible) divisions.

18          MR. JACOBS:  Right.

19          THE COURT:  And then she's saying, you know what?

20   I realize this is supposition at this point.  The Wilenitz

21   account statement shows the same stock.

22          MR. JACOBS:  Right.

23          THE COURT:  So, there was actually a purchase, and

24   who's to know whether or not that purchase or a portion of

25   that purchase was allocated to Wilenitz?  In my example,

**AA145**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/13/19 Entered 01/13/19 13:01:56 Exhibit 1
Vol I Pg 149 of 204
Pg 14 of 30

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 68 of 79

Page 68

1   BLMIS bought 100 shares of IBM and 50 shares show up on

2   Wilenitz.

3              MR. JACOBS:  Right.

4              THE COURT:  Who's to say he didn't actually own

5   that stock?

6              MR. JACOBS:  I would love to be able to --

7              THE COURT:  Which I guess would be relevant to his

8   net equity claim or his claim in the SIRA case.

9              MR. JACOBS:  I wish I could give you a

10  satisfactory answer but in the time that we have today, I

11  can't replicate the report of our expert, which, in

12  painstaking detail goes through all of the reasons why we

13  believe there was never a security traded in connection with

14  the fraudulent Ponzi scheme being operated and the IA

15  business.

16             THE COURT:  So, how does she test that conclusion?

17             MR. JACOBS:  She tests that conclusion the same

18  way our expert does, by examining the underlying records.

19  All of those records again have been made available to Ms.

20  Chaitman.  They're in the data room.  Those other records

21  are expert reports.

22             THE COURT:  Maybe that's the answer.  If there are

23  records -- because they do have the DTC records, at least

24  from the period when Wilenitz was investing.  If the records

25  show that BLMIS actually owned something, and the same stock

**AA146**

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:03:56 Exhibit A
Vol I Pg 150 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 69 of 79

Page 69

1   shows up in Wilenitz's account statement, you can make the

2   argument that he actually owned that stock.  But you can do

3   that (indiscernible) and the information has been made

4   available to you.

5          And the sense I'm getting -- and I understand that

6   it's a lot of work -- is you want the Trustee to do this for

7   you, but you're going to have to do this yourself if this

8   stuff is available.

9          MS. CHAITMAN:  You know, Judge, with 4 million

10  pages of documents, the least the Trustee could do is

11  specify the specific Bates Numbers.  Because I don't want to

12  be in a position where we go to trial...  I mean, for all I

13  know, the data room is updated constantly and new documents

14  are added.  How am I going to prove at trial that certain

15  documents were not made available to me?  I mean, it's

16  impossible.  Why can't the Trustee be bound to tell me these

17  are the documents responsive to this request?

18         THE COURT:  But that doesn't solve your problem...

19  Well, if the Trustee has additional documents, he's got to

20  supplement the disclosure or the production, which he does

21  by adding them to the data room, and maybe you have a

22  continuing duty to check the data room.

23         But part of the problem is you've thrown such a

24  broad net over what you're looking for, instead of the

25  specific documents relevant -- that I think seem to be

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 04/16/19 Entered 04/16/19 13:03:50 Exhibit A
Vol I Pg 151 of 204

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 70 of 79

Page 70

1    relevant to this particular case, that you run into a

2    situation where there may be documents added about something

3    but they have nothing to do with Wilenitz.

4            MR. JACOBS:  And, Your Honor, specifically to

5    respond to Ms. Chaitman's concern about the data room being

6    voluminous, and I understand that 4 million records is

7    overwhelming, but that's the reason why the procedures order

8    permits us to provide an expert summary report to support

9    our claims and to satisfy our burdens of proof, which

10   specifically discusses all of that data, identifies all of

11   the Bates Numbers of the documents that are used to support

12   various conclusions -- and at a minimum, Ms. Chaitman is

13   free to depose those experts and to test and challenge any

14   of those analyses based on any of the documents they've

15   relied upon or that she has access to in discovery.

16           And no one's challenging her right to do that.

17   What we're saying is that we shouldn't have to do more than

18   what we've already done because we have invested enormous

19   amounts of resources and time in finding a way to make all

20   of those information available to all litigants in order for

21   them to conduct their own investigations and have access to

22   the same information that we do.

23           THE COURT:  Well, you know, I started out by

24   saying, I can't tell you not to make a motion to compel, but

25   I think that if you go back, for example, and look at the

**AA148**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit A
Vol I   Pg 152 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 71 of 79

Page 71

1    omnibus decision last June, for instance, it talks about the

2    compensation issue -- it's certainly applicable to all the

3    cases which are involved.  I think you preserve that issue.

4           And I'm sure the Trustee, so the Trustee doesn't

5    have to respond to all these things, will agree, yeah, you

6    preserve the issue but you're not entitled to discovery on

7    these issues for that reason.  But there just seems to be

8    very little communication, and I don't know what the answer

9    to that is.

10          Okay, you had raised some other issues and Mr.

11   Dexter raised some issues in a letter...

12          MS. CHAITMAN:  I think that had to do with the

13   subpoenas, and I'm going to have to deal with that

14   separately.

15          THE COURT:  Well, what was that issue?  Have we

16   resolved all of the issues raised by the Trustee?

17          MR. JACOBS:  Yes, except for, Your Honor, I'd like

18   to clarify that we would also like to submit a motion for a

19   protective order on this discovery.

20          THE COURT:  Well, she's going to make a motion to

21   compel.  I'll just stay it until I resolve the motion to

22   compel.

23          MR. JACOBS:  Okay.

24          THE COURT:  I don't need a motion for a protective

25   order and a motion to compel on the same discovery.

**AA149**

08-01789-cgm  Doc 18578-2  Filed 03/18/19  Entered 03/18/19 13:30:42  Appendix
10-04995-smb  Doc 1263-2  Filed 01/16/19  Entered 01/16/19 13:01:56  Exhibit A
Vol I  Pg 153 of 204
Pg 3-5 of

10-04995-smb  Doc 67  Filed 05/19/16  Entered 05/24/16 12:03:01  Main Document
Pg 72 of 79

Page 72

1          MR. JACOBS:  Right.  Well, we did ask for the

2    relief first and I believe from a fairness -- we should be

3    entitled to make --

4          THE COURT:  Do you want to wait for them to make a

5    motion for --

6          MS. CHAITMAN:  It doesn't matter.  If he wants to

7    make the motion...

8          MR. JACOBS:  I'm trying to avoid unnecessary

9    duplicate briefing.

10         THE COURT:  All I'm saying is -- maybe this is

11   wishful thinking, but if she makes the motion to compel, on

12   reflection she might not ask about Picard's compensation,

13   for example.

14         MR. JACOBS:  Okay.

15         THE COURT:  And that will save everybody the job

16   of dealing with that issue.  But I don't know if that's

17   going to be the case.

18         MS. CHAITMAN:  Judge, on Picard's compensation, I

19   understand you ruled on that and it's applicable to every

20   case.  I'm not...

21         THE COURT:  Well, if you're concerned -- I'm not

22   going to rule on it again.  If you're concerned -- if the

23   record is preserved, it's preserved.  But that doesn't seem

24   to have any effect on these cases, if I rule on something.

25   That's my only point.  It goes both ways, by the way.  Don't

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1264-2   Filed 01/18/19   Entered 01/18/19 13:01:56   Exhibit A
Vol I   Pg 154 of 204
Pg 45 of 50

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 73 of 79

Page 73

1    smirk.

2          MR. JACOBS:  No smirk here.

3          THE COURT:  Yeah, it seems that everybody seems to

4    ignore prior rulings in this case when we litigate things.

5    All right, what else from the Trustee?

6          MR. JACOBS:  That is it from our perspective, Your

7    Honor.

8          THE COURT:  Are there any other issues?

9          MS. CHAITMAN:  That's it.

10         THE COURT:  What did Mr. Dexter raise?

11         MS. CHAITMAN:  He was raising the Rule 45 subpoena

12   issue, but I want to go back...

13         THE COURT:  And what is that issue?

14         MS. CHAITMAN:  The issue is whether the Sarah

15   Lawrence order as to the procedure is going to go forward.

16   You clarified that you don't feel it's appropriate and that

17   the Trustee can serve the subpoenas.  But you're telling me

18   that if, in fact, people can stipulate to the records...I

19   mean, I just want to clarify that because --

20         THE COURT:  You know, the devil is in the details.

21   And it sounded so easy to resolve it that way but it just

22   hasn't gotten resolved.

23         MS. CHAITMAN:  No, I appreciate that.  I agree

24   with you.

25         THE COURT:  What I will not do is stay discovery

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 126-2   Filed 01/16/19   Entered 01/16/19 13:03:50   Exhibit 4
Vol I   Pg 155 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 74 of 79

Page 74

1    pending, you know, a meet and confer, anything like that.

2    If you get discovery and you think -- or you get a notice of

3    a subpoena on a bank, and you can unconditionally say that

4    the records are the records...

5         MS. CHAITMAN:  Well, the records are the records

6    for the period covered by the bank documents.  People cannot

7    possibly stipulate to transfers ten years ago.

8         THE COURT:  Well, but then if you can't, I guess

9    he's entitled to the bank documents.  And if the answer

10   is...  We talked about this, whether there were periods that

11   could be carved out.  Even that wasn't answered clearly in

12   the...

13        MS. CHAITMAN:  But if a bank only has records

14   going back to 2006, why is the price of protecting those

15   records that you have to concede to all the transfers going

16   back to 1982?

17        THE COURT:  Yeah, but you can concede to all the

18   transfers going back to 2006 in your example.

19        MS. CHAITMAN:  We did that, and that was --

20        THE COURT:  That was not my recollection.

21        MS. CHAITMAN:  All right.

22        THE COURT:  Go back and look at your responses to

23   the nine or so cases that we dealt with, and every one of

24   them retracts or has a caveat to what is essentially an

25   admission.  And remember what we're trying to accomplish

**AA152**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/18/19   Entered 01/18/19 13:01:56   Exhibit 4
Vol I   Pg 156 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 75 of 79

Page 75

1    here.  You know, cut down on the issues that have to be

2    tried.  And if they don't do that, then they don't serve

3    their purpose and everybody goes about and takes discovery,

4    that's all.  All right.

5              MS. CHAITMAN:  Okay.

6              MR. JACOBS:  Your Honor, there were also

7    objections to subpoenas in three cases handled by my

8    colleague, Ms. Longo, as conflicts counsel for the Trustee.

9              MS. CHAITMAN:  It's the same issue, and at this

10   point I understand Your Honor's position so...

11             THE COURT:  Well, Wilenitz is one of them.

12             MS. CHAITMAN:  They have those documents already.

13             MR. JACOBS:  Right.  Wilenitz was part of the --

14             THE COURT:  And the RAR...

15             MR. JACOBS:  RAR is our case, and if Ms. Chaitman

16   is withdrawing the objection, we've served the subpoena...

17             THE COURT:  I haven't seen the responses to the

18   admissions or whatever.

19             MS. CHAITMAN:  With RAR we will stipulate to the

20   deposits and withdrawals for the period that --

21             THE COURT:  That's all well and good.  When you

22   send him the -- whatever it is -- the stipulation or the

23   affidavit that proves that or requires that, then ask him to

24   withdraw the subpoena.  And I guess we'll have to deal with

25   that again if he refuses to withdraw the subpoena.

**AA153**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:36   Exhibit 4
Vol I   Pg 157 of 204

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 76 of 79

Page 76

1           And the reason I say that is I've seen the

2     responses in the other cases and the non-responses.  That

3     would compel to withdraw --

4           MS. CHAITMAN:  I'm saying on the record that we

5     will stipulate to the deposits and withdrawals for the

6     period covered by the bankruptcy.

7           THE COURT:  And what I'm saying on the record is

8     when that is writing in a satisfactory form, then we'll deal

9     with it, okay?

10          MS. CHAITMAN:  Okay.

11          THE COURT:  Is there anything else?

12          MS. LONGO:  So, just to clarify, Your Honor, I'm

13    sorry, with respect to the two cases that are handled by

14    Wilenitz, is there a withdrawal of the objection in those?

15          THE COURT:  She's not withdrawing the objections.

16          MS. CHAITMAN:  I'm not withdrawing the objections.

17          MS. LONGO:  You'll go back and check...I

18    understand.

19          THE COURT:  She's going to go back and see if she

20    can stipulate to the withdrawals -- either all the

21    withdrawals and deposits or for whatever period it is.

22          MS. CHAITMAN:  Right.

23          THE COURT:  And then you may be entitled to

24    records before that, although you're only asking, I think,

25    for three years anyway.

**AA154**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/18/19   Entered 01/18/19 13:01:56   Exhibit A
Vol I   Pg 158 of 204
Pg 98 of 90

10-04995-smb   Doc 67   Filed 05/19/16   Entered 05/24/16 12:03:01   Main Document
Pg 77 of 79

Page 77

1           MR. JACOBS:  All of our subpoenas are different

2    depending on how long we --

3           THE COURT:  Every one I've seen is the two years

4    before the filing date and one year after.

5           MS. CHAITMAN:  Now they're going back to 2001.

6           MR. JACOBS:  Well, there are some cases --

7           THE COURT:  Well, I'm surprised they haven't.

8    I'll tell you.  Because, you know, this issue with

9    fictitious profits is the same.  And you can't just look at

10   the two years.  You've got to go all the way back to the

11   beginning of the account.  And I was surprised when they

12   limited it to two years for that reason.  I was also

13   surprised about the insolvency issue but...life is full of

14   surprises.  How was Barcelona?  Was it good?

15          MS. CHAITMAN:  Oh, my God, I loved it.

16          THE COURT:  All right, anything else?

17          MS. LONGO:  I was just going to say, to be clear,

18   our two do go back further than the two years.  So I think

19   the stipulation would have to cover all of those transfers.

20          THE COURT:  Whatever it is.  I mean, it sounds to

21   me that if you go far back enough, you're going to get a

22   response from the bank that says, we don't have the records,

23   you know, but so be it.

24          MS. CHAITMAN:  Thank you very much.

25          THE COURT:  All right.

**AA155**

08-01789-c, Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 126-3 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit 4
Vol I Pg 159 of 204
Pg 99 of 90

10-04995-smb Doc 67 Filed 05/19/16 Entered 05/24/16 12:03:01 Main Document
Pg 78 of 79

Page 78

1          MR. JACOBS:  Thank you, Your Honor.

2          (Whereupon these proceedings were concluded at

3    12:17 PM.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
10-04995-smb    Doc 126-3    Filed 01/16/19    Entered 01/16/19 13:01:56    Exhibit 4
Vol I    Pg 160 of 204
Pg 90 of 90

10-04995-smb    Doc 67    Filed 05/19/16    Entered 05/24/16 12:03:01    Main Document
Pg 79 of 79

Page 79

```
 1                    C E R T I F I C A T I O N

 2

 3    I, Sonya Ledanski Hyde, certified that the foregoing

 4    transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8    Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 19, 2016
```

Sonya Ledanski Hyde

Digitally signed by Sonya Ledanski Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital1@veritext.com, c=US
Date: 2016.05.19 16:30:11 -04'00'

AA157

10-04995-smb   Doc 126-6   Filed 01/18/19   Entered 01/18/19 13:01:56   Exhibit 5
Pg 1 of 5

# EXHIBIT 5

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 12678   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 5
Vol I   Pg 162 of 204
Pg 162 of 204

08-01789-smb   Doc 14807   Filed 01/05/17   Entered 01/05/17 07:27:20   Main Document
Pg 1 of 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff-Applicant<br><br>-against-<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                    Plaintiff,<br><br>-against-<br>TRUST U/ART FOURTH O/W/O ISRAEL WILENITZ, et al.,<br><br>                    Defendants. | Adv. Pro. No. 10-04995 (SMB) |

## DISCOVERY ARBITRATOR'S ORDER

The Trust under Article Fourth of the Will of Israel Wilenitz and other related defendants (collectively, the "Defendants") having moved to compel discovery, and the Trustee having cross-moved for a protective order, it is hereby ORDERED that:

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 120-2   Filed 01/19/18   Entered 01/19/18 13:01:56   Exhibit 5
Vol I   Pg 163 of 204

Pg 168 of 204

08-01789-smb   Doc 14807   Filed 01/05/17   Entered 01/05/17 07:27:20   Main Document
Pg 2 of 4

1. Baker Hostetler, counsel for the Trustee, and Chaitman LLP, counsel for the Defendants, shall endeavor, insofar as possible, to apply my rulings regarding discovery issues in this proceeding to other comparable adversary proceedings, including, but not limited to adversary proceedings in which Chaitman LLP represents the defendants.

2. The Defendants' application that the Trustee's claims of attorney-client privilege and work product protection be deemed waived by virtue of the Trustee's failure to provide a log of all documents created after December 11, 2008, that were withheld on those bases is denied.

3. <u>Discovery Request No. 1</u>. Discovery Request No. 1, which calls for the production of information concerning certain BLMIS employees whom the Trustee interviewed and the documents they were shown, seeks attorney work product without an adequate showing of substantial need and is therefore denied. <u>See generally</u> <u>Sporck v. Piel</u>, 759 F.2d 312, 316 (3d Cir. 1985) (noting that "the selection and compilation of documents by counsel" not only constitutes work product, but falls "within the highly-protected category of opinion work product").

4. By December 20, 2016, the Trustee shall indicate how long it will take to make a good faith determination as to whether there are any BLMIS trading records for the years prior to 1992.

5. <u>Discovery Request Nos. 2, 3</u>. The Trustee shall respond to these Requests solely with respect to errors in the account records of clients of Chaitman LLP of which the Trustee presently is aware and which have not previously been disclosed to that firm

6. <u>Discovery Request No. 4</u>. This Request concerns profit withdrawal transactions for which there is no proof that the customer initiated the request. Insofar as clients of Chaitman LLP are concerned, the information either has been produced or will be produced at the expert discovery stage. Insofar as other clawback defendants are concerned, the request is denied.

7. <u>Discovery Request No. 5</u>. This Request, which asks the Trustee to produce any reports and documents supporting the contention that the BLMIS records were not "permeated with fraud," need not be answered at this time. To the extent that Wilenitz (or any other defendant) has stipulated to the accuracy of the information set forth in Columns 4 and 5 of Exhibit B to the Complaint, the Request is irrelevant. Moreover, even in the absence of such a stipulation, Wilenitz either has received the information through Data Room 1 or will receive it when the Trustee serves his expert reports.

2

**AA160**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
Vol I   Pg 165 of 204
10-04995-smb   Doc 120-6   Filed 01/19/19   Entered 01/18/19 13:01:56   Exhibit 5
Pg 16 of 5

08-01789-smb   Doc 14807   Filed 01/05/17   Entered 01/05/17 07:27:20   Main Document
Pg 3 of 4

8. <u>Discovery Request Nos. 6-10</u>.  These Requests, relating to claims paid by the Trustee, are denied, except insofar as the Defendants seek aggregate information concerning claims paid by the Trustee, which information is available on the Trustee's website.

9. <u>Discovery Request No. 11</u>.  The Trustee is directed to state the facts and identify the documents upon which he bases his position that BLMIS did not purchase securities for customers who are represented by Chaitman LLP, which may be done by reference to the report of Bruce Dubinsky, dated August 20, 2013, and the documents upon which it relies.

10. <u>Discovery Request No. 12</u>.  This Request, which is related to Request No. 11, seeks information concerning persons interviewed by the Trustee with respect to the issue of fictitious trading.  The Request is denied on the basis that it seeks attorney work product without the requisite showing of substantial need.

11. <u>Discovery Request No. 13</u>.  This Request is denied as moot because the documents sought have been produced.

12. <u>Discovery Request No. 15</u>.  This Request seeks information concerning the basis upon which the Trustee concludes that BLMIS was insolvent for an extended period of time.  Here again, the Trustee is directed to state the facts and identify the documents upon which he relies, which may be done by reference to the Dubinsky report and the documents upon which it relies.

13. <u>Discovery Request Nos. 16, 18</u>.  These Requests seek information concerning the volume of business conducted by each sector of BLMIS and the number of shares of securities listed on Wilenitz's account statements that BLMIS held.  The Requests are denied because (a) the underlying records have been made available to the Defendants and the other clients of Chaitman LLP, and (b) the burden of undertaking the requested investigation would be extensive.  To the extent there are any additional relevant records of securities trading that have not been made available to Wilenitz through Data Room 1, they must promptly be produced.

14. <u>Discovery Request No. 17</u>.  Defense counsel concedes that this information has been produced.

3

**AA161**

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
10-04995-smb    Doc 126-2    Filed 01/16/19    Entered 01/16/19 13:01:56    Exhibit B
Vol I    Pg 165 of 204
Pg 5 of 5

08-01789-smb    Doc 14807    Filed 01/05/17    Entered 01/05/17 07:27:20    Main Document
Pg 4 of 4

15. <u>Cross-Motion for Protective Order</u>.  The Trustee's cross-motion for a
protective order is denied, except to the extent indicated in paragraph 1 of this
Discovery Order.

SO ORDERED.

Dated:   New York, New York
January 4, 2017

/s/

_____
FRANK MAAS
Discovery Arbitrator

Copies to Counsel via ECF

4

**AA162**

EXHIBIT 6

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
10-04995-smb    Doc 1268-2    Filed 03/16/19    Entered 03/16/19 13:01:56    Exhibit 0
Vol I    Pg 167 of 204    Pg 2 of 8

08-01789-smb    Doc 15236    Filed 03/15/17    Entered 03/16/17 07:42:14    Main Document
Pg 1 of 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant | SIPA LIQUIDATION |
| -against- | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 10-04995 (SMB) |
| -against- | |
| TRUST U/ART FOURTH O/W/O ISRAEL WILENITZ, et al., | |
| Defendants. | |

## DISCOVERY ARBITRATOR'S ORDER

One of the continuing areas of disagreement in this and other adversary

proceedings in which Helen Davis Chaitman of Chaitman LLP ("Ms. Chaitman") serves

**AA164**

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
10-04995-smb   Doc 1263-2   Filed 01/16/19   Entered 01/16/19 13:01:50   Exhibit
Vol I   Pg 168 of 204   Pg 3 of 8

08-01789-smb   Doc 15236   Filed 03/15/17   Entered 03/16/17 07:42:14   Main Document
Pg 2 of 7

as defense counsel relates to the date that Bernard L. Madoff ("Madoff") began his Ponzi

scheme.  The Trustee maintains that the trades recorded on behalf of investment advisory

customers of Bernard L. Madoff Investment Securities LLC ("BLMIS") were entirely

fictitious as far back as the early 1970s, when Madoff allegedly was pursuing a

convertible arbitrage trading strategy.  The Wilenitz Defendants and other defendants

represented by Ms. Chaitman (collectively, the "Defendants"), along with other

defendants, contend that the investment advisory fraud first began in or around 1992,

when Madoff allegedly began to pursue a split-strike trading strategy.  This dispute is

significant because its resolution might affect the calculation of at least some of the

Defendants' net equity positions and, hence, the two-year fictitious profits that the

Trustee potentially may recover.  See, e.g., In re Bernard L. Madoff Inv. Secs. LLC, 773

F.3d 411, 415, 423 (2d Cir. 2016) (limiting the Trustee's avoidance powers in

constructive fraud cases to transfers made within two years of the filing of the bankruptcy

petition); id., 654 F.3d 229, 241 (2d Cir. 2011) (rejecting reliance on BLMIS customers'

brokerage statements because that "would require the Trustee to establish each claimant's

'net equity' based on a fiction created by the perpetrator of the fraud").

    To date, the principal evidentiary support for the Defendants' position is the

deposition testimony of Madoff himself – a witness whose credibility the Trustee

questions.  In particular, the Trustee points to the report of one of his experts, Bruce G,

Dubinsky, who concludes, in substance, that Madoff's testimony regarding the fraud

onset date is false.  The Defendants, however, are not required to accept Mr. Dubinsky's

findings.  Indeed, even if Mr. Dubinsky is correct, BLMIS also engaged in extensive

10-04995-smb    Doc 1263-2    Filed 01/18/19    Entered 01/18/19 13:51:56    Exhibit

trading of securities as part of its "House 5" proprietary trading and market-making businesses.  In the Defendants' view, if BLMIS actually purchased and held certain securities in connection with those aspects of its business, and those same securities are reflected on their contemporaneous trade confirmations or periodic statements, they are entitled to a credit for those actual trades when the Trustee calculates their net equity positions.[1]

        For these reasons, the Defendants have moved to compel the production of any records in the Trustee's possession that reflect actual securities trading by BLMIS during the period prior to 1992, when Madoff contends that he was engaging in actual trading for his investment advisory customers.  (See letter to the Discovery Arbitrator from Ms. Chaitman, dated Feb. 21, 2017) ("February 21 Letter").  Certain such records were made available to the Defendants through E-Data Room 1, an electronic database that contains documents concerning "all aspects of the operations and financials of . . . BLMIS."  (See Tr. of Discovery Arbitration on Dec. 13, 2016, at 134).  In addition, on December 13, 2016, after this issue first came before me, I directed that, "[t]o the extent that there are any additional relevant records of securities trading that have not been made available to [the Wilenitz Defendants] through [E-]Data Room 1, they must promptly be produced."  (See Picard v. Trust U/Art. Fourth o/w/o Israel Wilenitz, Adv. Pro. No. 10-

---

[1]    The Trustee contends that a finding that the fraud first began in 1992 would affect the Trustee's demand amounts with respect to only two of the Defendants who were permitted to participate in the Madoff deposition.  (See letter to the Discovery Arbitrator from Edward J. Jacobs, Esq., dated Mar. 6, 2017) ("March 6 Letter"), at 4-5.  The Defendants disagree with this calculation.  (See letter to the Discovery Arbitrator from Ms. Chaitman, dated Mar. 7, 2017) ("March 7 Letter"), at 1).

08-01789-cgm Doc 18578-2 Filed 03/18/19 Entered 03/18/19 13:30:42 Appendix
10-04995-smb Doc 1263-2 Filed 01/16/19 Entered 01/16/19 13:51:57 Exhibit 0
Vol I Pg 170 of 204
Pg 5 of 8

08-01789-smb    Doc 15236    Filed 03/15/17    Entered 03/16/17 07:42:14    Main Document
Pg 4 of 7

4995, ECF No. 76, ¶ 13) (Discovery Arbitrator's Order dated Jan. 4, 2017) (memorializing Dec. 13th ruling).  I further directed that the Trustee indicate, by December 20, 2016, how long it would take to make "a good faith determination as to whether there are any BLMIS trading records for the years prior to 1992."  (Id. ¶ 4).

On December 15, 2016, the Trustee stated that he had located certain additional trading records, and had retained a vendor to process "167 reels of microfilm that may contain additional BLMIS trading records from 2002 and earlier."  (See letter to the Discovery Arbitrator from Mr. Jacobs, dated Dec. 15, 2017 ("December 15 Letter"), at 2).  The Trustee also agreed to produce several indices of BLMIS records, including (i) a searchable index of hard copy BLMIS documents contained in more than 13,000 boxes of documents, and (ii) an index of the electronic media obtained from BLMIS.  (Id.). The Trustee nevertheless cautioned that the extraordinary volume of hard copy documents meant that it had not been possible to scan all the papers obtained from BLMIS, nor was it possible to restore all the data from electronic media "given the associated expense and the redundancies in the data that had already been processed."  (Id. at 3).

More recently, rather than attempting to cull relevant trading records from the reels of microfilm that were the subject of the December 15 Letter, the Trustee agreed to produce every document that the vendor had restored.  (March 6 Letter at 3).  The data on the first 167 reels was produced to the Defendants on March 6, 2017.  (See letter to Sarah Holwell from Mr. Jacobs dated Mar. 6, 2016).  Additionally, the Trustee promised to produce, on a rolling basis over the coming weeks, all of the documents on an additional 34 reels of microfilm that the Trustee had identified as potentially containing

4

**AA167**

pre-1992 trading records.  The cost of restoring and processing the 167 reels was

$390,920, and the estimated cost of restoring and processing the remaining reels is

estimated to be $125,000.  (See Aff. of Nicole L. Tineo, sworn to on Mar. 6, 2017, ¶¶ 5-

6).  Thus, the Trustee will likely have spent more than $500,000 by the time that the

second set of microfilm documents is produced.

        In the March 7 Letter, the Defendants complain that, despite these efforts,

the Trustee has not complied with my directive to produce all relevant records of BLMIS

securities trading.  (See March 7 Letter).  Indeed, there is language in the Trustee's

March 6 Letter which suggests that the Trustee may have cabined his response to the

Defendants' request.  Specifically, the Trustee's counsel states that the Trustee is

continuing to search for "additional records, including records reflecting Treasury

purchases, and will supplement [his] production to the extent any such records are readily

accessible and can be identified."  (March 6 Letter at 4) (emphasis added).  Counsel

similarly notes in his letter that the Trustee is committed to producing or making

available "relevant, proportional, and non-objectionable records to the extent they are

readily accessible and identifiable."  (Id.) (emphasis added).  The Trustee complains that

"Ms. Chaitman nonetheless appears to be demanding  the production of all records of

purported trading activity, wherever they exist, without regard to their relevance to any

particular case," suggesting further that she "has failed to meet her burden to demonstrate

relevance and proportionality."  (Id.) (emphasis in original).

        It is unclear from counsel's March 6 Letter whether the Trustee's

observations concerning securities trading records constitute substantive objections based

**AA168**

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
Vol I    Pg 172 of 204

10-04995-smb    Doc 126-2    Filed 01/16/19    Entered 01/16/19 18:01:50    Exhibit 0
Pg 7 of 8

08-01789-smb    Doc 15236    Filed 03/15/17    Entered 03/16/17 07:42:14    Main Document
Pg 6 of 7

upon which documents have been withheld or are merely an indication that every box and

microfilm reel has not been exhaustively searched. The continuing existence of this

ambiguity is no doubt attributable (at least in part) to counsels' failure to have any face-

to-face discussions regarding the Defendants' claim that the Trustee's response to their

requests for trading records is inadequate. Ms. Chaitman, however, now has indices of

the documents and electronic files in the Trustee's possession. These indices should

enable Ms. Chaitman to formulate more focused requests for trading records.

In these circumstances, I will direct that Ms. Chaitman and counsel for the

Trustee confer in person regarding the Defendants' request for BLMIS trading records. I

further will direct that, at least three days before that meeting occurs, Ms. Chaitman shall

send the Trustee's counsel a letter specifically identifying the additional documents she

seeks to have produced, and where she believes they may be found. I note that, pursuant

to Bankruptcy Rule 7026, Rule 26 of the Federal Rules of Civil Procedure applies to

adversary proceedings. Rule 26, in turn, requires that discovery requests be limited to

items that are relevant to a party's claims or defenses and proportional to the needs of the

case. Fed. R. Civ. P. 26(b)(1). Accordingly, when they meet, counsel for both sides

should keep these requirements in mind.

After the parties have conferred in good faith, if there are continuing

disputes regarding the appropriate scope of discovery concerning trading records, or the

completeness of the Trustee's search for such documents, counsel should promptly send

me a joint letter, no more than five single-spaced pages in length, detailing their

**AA169**

08-01789-cgm    Doc 18578-2    Filed 03/18/19    Entered 03/18/19 13:30:42    Appendix
10-04995-smb    Doc 1263-2    Filed 01/16/19    Entered 01/16/19 13:01:50    Exhibit 0
Vol I    Pg 173 of 204
Pg 8 of 8

08-01789-smb    Doc 15236    Filed 03/15/17    Entered 03/16/17 07:42:14    Main Document
Pg 7 of 7

remaining areas of disagreement.  I will then either resolve those disputes based upon

their submission or schedule a further conference.

Conclusion

For the foregoing reasons, the Defendants' February 21 Letter application

seeking to compel the Trustee to produce further trading records is denied without

prejudice to its renewal after counsel have conferred in good faith in an effort to resolve –

or at least narrow – the issues concerning trading records.  .

SO ORDERED.

Dated:        New York, New York
              March 15, 2017

_____
          FRANK MAAS
       Discovery Arbitrator

Copies to Counsel via ECF

7

**AA170**

10-04995-smb Doc 1263-8 Filed 01/18/19 Entered 01/18/19 13:01:50 Exhibit 7
Pg 1 of 5

EXHIBIT 7

Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------x

SECURITIES INVESTOR PROTECTION :
CORPORATION,                         Adv. Pro. No.
                                 :   08-01789(SMB)
        Plaintiff-Applicant,

                                 :   SIPA LIQUIDATION
        v.

                                 :   (Substantively
BERNARD L. MADOFF INVESTMENT          Consolidated)
SECURITIES, LLC,                 :

        Defendant.               :
-------------------------------x
In Re:                           :
BERNARD L. MADOFF,               :
        Debtor.                  :
-------------------------------x

IRVING H. PICARD, Trustee        :
for the Liquidation of
Bernard L. Madoff Investment     :
Securities LLC,                      Adv. Pro. No.
                                 :   10-04995(SMB)
        Plaintiff,

                                 :

        v.

                                 :

TRUST U/ART FOURTH O/W/O ISRAEL  :
WILENITZ, EVELYN BEREZIN
WILENITZ, individually, and as   :
Trustee and Beneficiary of the   :
Trust U/ART FOURTH O/W/O ISRAEL
WILENITZ and SARA SEIMS, as      :
Trustee of the Trust U/Art
Fourth O/W/O Israel Wilenitz,    :

        Defendants.              :
-------------------------------x
                CONFERENCE
        Monday, November 19, 2018

**AA172**

Picard v Trust U-Art Fourth                    Conference 11/19/2018

## Page 2

1  TRANSCRIPT OF PROCEEDINGS as
2  reported by NANCY C. BENDISH, Certified Court
3  Reporter, RMR, CRR and Notary Public of the
4  States of New York and New Jersey, at JAMS
5  offices, 620 Eighth Avenue, 34th Floor, New
6  York, New York on Monday, November 19, 2018,
7  commencing at 10:23 a.m.
8
9  B E F O R E :
10   HON. FRANK MAAS (RET.), Arbitrator
        fmaas@jamsadr.com
11   JAMS
        620 Eighth Avenue
12   34th Floor
        New York, New York 10018
13
14  A P P E A R A N C E S :
15
     BAKER HOSTETLER LLP
16   45 Rockefeller Plaza
        14th Floor
17   New York, New York 10111-0100
        BY: MAXIMILLIAN S. SHIFRIN, ESQ.
18         mshifrin@bakerlaw.com
            NICHOLAS J. CREMONA, ESQ.
19         ncremona@bakerlaw.com
        For the Trustee Irving Picard
20
21   CHAITMAN LLP
        465 Park Avenue
22   New York, New York 10022
        BY: HELEN DAVIS CHAITMAN, ESQ.
23         hchaitman@chaitmanllp.com
            GREGORY M. DEXTER, ESQ.
24         gdexter@chaitmanllp.com
        For the Defendants
25

## Page 3

1       JUDGE MAAS:  Good morning,
2  everyone.  We're here for Ms. Chaitman's motion
3  seeking to compel the Trustee to share access to
4  the entire database that the Trustee has
5  assembled.  So the floor is yours, Ms. Chaitman.
6       MS. CHAITMAN:  Your Honor, as I
7  laid out in our submission, we have been trying
8  for over two years to get access to all the
9  trading records, and we have not been able to do
10 so.  These records are absolutely essential for
11 us to prove the defense that in fact Madoff was
12 purchasing securities.  And we have already
13 established that we can prove it with respect to
14 some, but without a complete set of the trading
15 records it's impossible to do it.
16      So, what we really need is all the
17 trading records going back as far as they have
18 them.  And just to be absolutely clear, we're
19 talking about third-party documents; we're not
20 talking about Madoff-generated documents.  These
21 are documents bearing the letterhead of Bank of
22 New York Mellon, JPMorgan Chase, Fidelity,
23 Lehman Brothers, Bear Stearns et cetera.  So
24 these are documents whose authenticity
25 presumably cannot be questioned.

## Page 4

1       JUDGE MAAS:  I thought one of the
2  problems you faced with third-party documents is
3  that they would only go back six years, and you
4  were looking for records that went back further.
5  My impression was that you were more interested
6  in the opposite, the Madoff Securities records.
7  But I understand that that's not what you're
8  seeking.
9       MS. CHAITMAN:  No.  And even if we
10 can only go back six years, Your Honor, and I
11 think that that's -- the Trustee served
12 subpoenas on all the institutions that did
13 business with Madoff, as I understand it.  And
14 obviously he did that presumably in 2009.  So if
15 it went back six years, it would be to 2002 or
16 '3.  It's possible that Madoff kept records
17 earlier than that.  In other words, he might
18 have had people who just microfilmed records
19 from an earlier period.
20      So, I'm not interested in any
21 records other than third-party trading records.
22 But we haven't been able to get them.  I mean,
23 to take just one example, BNY Mellon, there are
24 certain statements but only for the year 2008, I
25 believe 2007 and '8, in the e-data room and

## Page 5

1  there's no indication that the earliest
2  statement we have was the first statement.
3       So, at one point within the last
4  six months the Trustee had offered all defense
5  counsel access to the BLMIS database, which
6  seemed to me the easiest and least burdensome
7  way for the Trustee to comply with this request.
8  I don't know how anything in that database can
9  be privileged from the Trustee's perspective.
10 But if there's some way to segregate the trading
11 records, that would be fine.  It's just that the
12 Trustee hasn't done that.
13      What the Trustee has done is given
14 me specific limited productions, which don't
15 really resolve the problem.  I need to have
16 access to a database of all of the third-party
17 records.
18      MR. SHIFRIN:  Your Honor, so
19 there's a lot I can say in response to that.  I
20 think the first thing I think is worth
21 emphasizing is that there is a history to this
22 dispute.
23      JUDGE MAAS:  Some of which I'm
24 part of.
25      MR. SHIFRIN:  Yes, exactly.  And

08-01789-cgm   Doc 18538-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
                                Vol I   Pg 177 of 204
08-01789-smb   Doc 18248-2   Filed 01/16/19   Entered 01/16/19 13:01:36   Exhibit
                                Pg 175 of 204

Picard v Trust U-Art Fourth                              Conference 11/19/2018

                                                    12 (Pages 42 to 45)

| Page 42 | Page 44 |
|---|---|

**Page 42**

1  JUDGE MAAS: He testified, I
2 thought I read someplace, that he bought -- I'm
3 hesitating because I want to say six billion.
4  MS. CHAITMAN: He did. That's
5 what he testified, that he maintained a
6 portfolio of six billion. It was a billion and
7 a half at four institutions. But what I'm
8 saying is since his testimony I have actually
9 found records of T-bills that were purchased at
10 Bank of New York Mellon, which he hadn't
11 mentioned.
12  JUDGE MAAS: Presumably you have
13 those records.
14  MS. CHAITMAN: I just have them
15 for 2008.
16  MR. CREMONA: Your Honor, I think
17 it's important to correct the record.
18 Respectfully, that's speculation and unsupported
19 conjecture. It's our position that no trades
20 were made on behalf of IA customers.
21  JUDGE MAAS: I understand the
22 dispute and I understand that Ms. Chaitman's
23 position either at the omnibus hearing or
24 individual trials will be that any trading that
25 occurred had to be for the benefit of a

**Page 43**

1 particular Madoff customer or that it should be
2 attributed at a minimum to a Madoff customer,
3 and there is no way that the two sides are going
4 to agree about that.
5  But part of your objection is that
6 these requests are overbroad, and what I was
7 trying to explore is whether we can test the
8 waters and see whether they are overbroad. So,
9 for example, picking Bear Stearns and giving Ms.
10 Chaitman all of the documents that are hits,
11 which is 653,000 documents, and if she can find
12 trading records that haven't been produced, that
13 would inform the discussion. If she can't, that
14 also would inform the discussion.
15  MS. CHAITMAN: I believe that
16 that's a good idea.
17  JUDGE MAAS: Let me hear from
18 counsel first for the Trustee.
19  MR. SHIFRIN: One thing that's
20 worth emphasizing here is that the account
21 numbers that we ran were account numbers for all
22 known BLMIS/Madoff banks. There were about a
23 hundred of them, give or take. So more than
24 just the names of the banks.
25  If we're running account numbers

**Page 44**

1 across ESI and we're searching for trading
2 records, I think the documents that contain the
3 account numbers are the ones that are actually
4 going to be a third-party record because a
5 third-party record is going to contain the
6 account information, right?
7  JUDGE MAAS: Right.
8  MR. SHIFRIN: If we're searching
9 for the names of the institutions, you're going
10 to get calendar appointments, emails, and I know
11 Your Honor would like to explore what this
12 population looks like, but we've done this
13 already with two of the search terms and Ms.
14 Chaitman is on record for complaining about what
15 was in there.
16  Again, if there are going to be
17 additional -- I can't obviously state this
18 definitively, I could never say this
19 definitively, but if we're dealing with search
20 terms here, the documents that are amenable to
21 problems with search terms are the hard copy
22 documents. And we are prepared to give her all
23 of those, with the subset of that population of
24 documents that we have identified as potentially
25 of interest to Ms. Chaitman, without

**Page 45**

1 representing that they actually reflect real
2 trading activity, without representing anything
3 about them, simply in an effort to identify
4 documents that are arguably responsive to Ms.
5 Chaitman's request, and she can sort through it.
6  MS. CHAITMAN: May I just ask, are
7 you saying that you're going to give me all the
8 documents with hits including group in this
9 column?
10  MR. SHIFRIN: We will give you --
11 if we produce all of the scanned hard copy
12 documents --
13  MS. CHAITMAN: Is that this
14 column? I don't know the term, scanned hard
15 copy.
16  MR. SHIFRIN: That's the entire
17 BLMIS database. The scanned hard copy are a
18 subset of the entire BLMIS database.
19  MS. CHAITMAN: Right.
20  JUDGE MAAS: A fairly small subset
21 by comparison, right?
22  MR. SHIFRIN: Right, because ESI,
23 just by its nature, is enormous. I mean, we're
24 dealing with an enormous volume of data. One
25 million hard copy pieces of documents, and

08-01789-cgm   Doc 18578-2   Filed 03/18/19   Entered 03/18/19 13:30:42   Appendix
08-04995-smb   Doc 18268-2   Filed 01/18/19   Entered 01/18/19 18:01:56   Exhibit
Vol I   Pg 178 of 204

Pg 178 of 204

Picard v Trust U-Art Fourth                        Conference 11/19/2018

13 (Pages 46 to 49)

## Page 46

1   that's not pages, by the way, that's every
2   scanned piece of paper, every piece of paper
3   recovered from an entire company from three
4   floors, 17th, 18th 19th floor, every piece of
5   document, every hard copy document coming from
6   every office, work space, et cetera.
7         So, to the extent there are
8   documents within that population, that one
9   million document population that would hit on
10  those search terms, they would be included,
11  absolutely.
12        MS. CHAITMAN:  Let me just, if I
13  may, Your Honor, may I ask a question?
14        JUDGE MAAS:  Yes.
15        MS. CHAITMAN:  Let's assume that
16  there was someone in Madoff's offices who would
17  annually collect all third-party statements,
18  let's just assume that, and put them in a
19  warehouse in Queens.  That would not be
20  encompassed in this, right?
21        MR. SHIFRIN:  Anything that's
22  unprocessed and not in the BLMIS database, so an
23  unscanned box of documents, no, that wouldn't be
24  encompassed in this.
25        JUDGE MAAS:  But you also have

## Page 47

1   indices that the Trustee furnished, I think at
2   my direction, so that you could go through the
3   indices and say there may be something in box
4   63.
5         MR. SHIFRIN:  And they're
6   substantive, too.
7         JUDGE MAAS:  And I gather that
8   hasn't happened.
9         MR. SHIFRIN:  Not once.  And there
10  are descriptors in each line item that tell you
11  what's in the box.
12        JUDGE MAAS:  And the Trustee
13  further went through that exercise -- correct me
14  if I'm wrong -- and found some microfiche that
15  potentially was responsive and restored all of
16  those.
17        MR. SHIFRIN:  We restored all
18  pre-1992 microfilm reels because that's what she
19  was after at the time and we produced all
20  documents restored from those microfilm reels.
21  In fact, Ms. Chaitman now has all documents
22  contained and stored on every single microfilm
23  reel that the Trustee has restored.  So there's
24  no --
25        MS. CHAITMAN:  But that's just the

## Page 48

1   pre-1992.
2         MR. SHIFRIN:  Well, no, that
3   includes some post-'92 as well.  Every microfilm
4   reel that we restored and processed, you have
5   all those documents.  The only documents you
6   don't have are the reels that we did not restore
7   and did not process, but that dispute you raised
8   with Judge Bernstein and he gave you
9   instructions.
10        MS. CHAITMAN:  Right.  That's
11  about a thousand reels that haven't been
12  restored and processed.
13        MR. SHIFRIN:  I don't have the
14  numbers before me, but something along those
15  lines.  But there's no microfilm document that
16  Ms. Chaitman doesn't have.
17        JUDGE MAAS:  When you say it was
18  raised with Judge Bernstein and he ruled, what
19  specifically did he rule?
20        MR. SHIFRIN:  Again, this is a
21  part of how this dispute has been kind of
22  muddied.  Ms. Chaitman, in our view, improperly
23  raised the microfilm issue before Judge
24  Bernstein in connection with some briefing
25  relating to the Madoff deposition.  This was

## Page 49

1   approximately three months after Your Honor
2   entered the March 2017 order.
3         In that briefing she reiterated
4   her usual accusations that we're hiding trading
5   records.  In our view she was improperly
6   circumventing Your Honor's March 2017 order.
7   That's what she did.
8         Now, for a variety of reasons, at
9   that first hearing it took -- Judge Bernstein
10  wasn't aware of the March 2017 order.  We had a
11  subsequent hearing and one of the first things
12  that Judge Bernstein said at the subsequent
13  hearing was that part of the problem, and I'm
14  paraphrasing what he said, is that I learn
15  something new each time you guys come here.
16  What he was referring to was Your Honor's March
17  2017 order.
18        And on the basis of that order, he
19  didn't order anything but he suggested that Ms.
20  Chaitman identify a small number of reels.  The
21  Trustee restored those reels, produced
22  documents, and if Ms. Chaitman can identify
23  something in there that gives reason to suspect
24  there are additional documents of interest on
25  these other reels, she can make that showing.

10-04995-smb   Doc 126-9   Filed 01/16/19   Entered 01/16/19 13:01:56   Exhibit 8
Pg 1 of 22

# EXHIBIT 8

# CHAITMAN LLP

## 465 PARK AVENUE
### NEW YORK, NY 10022
### (888) 759-1114
TELEPHONE & FAX

*HELEN DAVIS CHAITMAN*
*hchaitman@chaitmanllp.com*

November 20, 2018

**VIA EMAIL and FIRST CLASS MAIL**
The Honorable Frank Maas, U.S.M.J. (Ret.)
c/o JAMS, Inc.
620 Eighth Avenue, 34th Floor
New York, New York 10018
fmaas@jamsadr.com

> **Re:** *In re Bernard L. Madoff, Investment Securities, LLC,* **Adv. Pro. No. 08-01789;**
> *Irving H. Picard v. Wilenitz,* **Adv. Pro. No. 10-04995 (SMB)**

Dear Judge Maas:

I submit this Letter on behalf of Defendants represented by this firm ("Defendants") to clarify certain issues that were discussed during yesterday's conference with Your Honor.

## I.   The Trustee's deception

For over three years, Defendants have been requesting third-party trading records evidencing the trading activities of Madoff and BLMIS ("Trading Records"). Defendants have received a succession of convoluted misrepresentations about where records might be located, along with unfulfilled promises that the Trading Records had been or would be produced. The Trustee's counsel, for years, represented that the Trustee's "E-Data Room" contained all of the Trading Records. See, for example, the January 5, 2017 Transcript, attached as Ex. D to the Joint Letter of September 20, 2018 at 30:14-16 **(MR JACOBS: "If it's a trading record, if it's a BLMIS trading record of securities having been traded, we will produce it.")** (emphasis added).

Similarly, at an argument before Judge Bernstein on May 17, 2016,[1] the Trustee's counsel represented as follows:

> MR. JACOBS: So, absolutely the Defendant has the ability to
> conduct whatever investigation they believe is relevant to the claims
> of their defenses, the same that our expert did, and they have access
> to all the same information that our expert did. And we did that to

---

[1] The Trustee emailed this transcript to Your Honor on November 19, 2018.

{00038340 2 }

**AA177**

# CHAITMAN LLP

be transparent and to provide any data that any litigant believes that
they should have access to.[2]

\*\*\*\*

MR. JACOBS:  . . . . [W]e have already produced in this litigation,
without even having received a document request, 100 percent of
that data.[3]

\*\*\*\*

MR. JACOBS: To the extent we have them in addition to publicly
available information that we obtain, it's all in the data room clearly
labeled.[4]

\*\*\*\*

MR. JACOBS: She tests that conclusion the same way our expert
does, by examining the underlying records.  All of those records
again have been made available to Ms. Chaitman.  They're in the
data room.[5]

Mr. Shifrin's statement to Your Honor yesterday that the Trustee never made the above
representations is demonstrably false.  And we now realize, as a result of Mr. Shifrin's presentation
yesterday, that even the BLMIS Database, to which the Trustee has refused to provide access, is
limited to only those documents the Trustee wanted to use to bolster **his** position.  Obviously, the
Trustee would not use the Trading Records because those records prove that, in fact,
Madoff/BLMIS did conduct actual trades with Investment Advisory customers' money.  And, to
date, he has successfully concealed the vast majority of these documents from the Defendants.  We
have laid all of this out in the attached letter to Judge Bernstein on July 24, 2017.  *See* ECF No.
16427.[6]

In fact, it was only yesterday, listening to Mr. Shifrin, that the truth became clear: The
Trustee has no use for the Trading Records because they disprove his thesis of the case.  Hence, he
certainly did not put them in the E-Data Room and he would not have put them in the BLMIS
Database either.  Instead, the Trustee left the majority of the Trading Records in the Queens
warehouse (or possibly someplace else).  However, we demanded these records three years ago
and the Trustee has an obligation to produce them.  The documents are essential for our defense;
the documents are within the Trustee's possession and control; and given the multi-billion-dollar
budget for professional fees that SIPC has set, there cannot possibly be any justification for the

---

[2]  At 11:11-12:14
[3]  At 15:21-23.
[4]  At 61:7-17.
[5]  At 68:4-69:5.
[6]  Attached as Ex. A.

# CHAITMAN LLP

Trustee not to produce all of the Trading Records that are under the Trustee's control, whether they are located in the Queens warehouse or someplace else.

If the situation were reversed, we can be sure that Judge Bernstein would have ordered the Defendants to produce whatever documents the Trustee asked for, regardless of the inconvenience to the Defendants. Why would there be a different result simply because the Trustee does not want the Defendants to have the trading records?

## II.  It is not acceptable for the Trustee to produce only 1 million of the 30 million documents in the BLMIS Database

In addition to the Trading Records that the Trustee has not incorporated into the BLMIS Database, the Trustee should be ordered to immediately produce all of the Trading Records contained in the BLMIS Database. If there are one million hard-copy documents among the 30 million documents in the BLMIS Database, why weren't these produced three years ago? On what theory is the Trustee entitled to satisfy his discovery obligations simply by producing a sliver of the documents we have requested? Again, we know what the result would have been if any of the Defendants had disregarded their discovery obligations; the severest sanctions would have been imposed upon them by Judge Bernstein.

## III.  The Indices are of minimal value to the Defendants and do not relieve the Trustee of his discovery obligations

In an attempt to shirk his discovery obligations, the Trustee relies upon two Indices he produced. The first is the Excel version of the Microfilm Reel Inventory, served on Chaitman LLP on July 14, 2017 (the "Microfilm Reel Index").[7] As we explained, we found the descriptions in the Microfilm Reel Index were not sufficient to enable us to identify which reels, if any, would contain Trading Records. Generally, the only descriptions of the microfilm supplied by the Trustee are "Positions/Stock Record/Trading," "Customer Ledger," "PMR," "PMT," or "Other." These descriptions do not indicate at all whether there are third-party Trading Records in any reel or whether these are simply Madoff-generated records. The few reels that we examined did not contain any Trading Records and, given the sanction that Judge Bernstein stated he would impose upon us in terms of allocating costs, we had no alternative but to abandon this line of pursuit.

The second Index is the Excel version of the Madoff Warehouse Inventory, served on Your Honor and Chaitman LLP on December 16, 2016 (the "Warehouse Index"). Contrary to what Mr. Shifrin said yesterday, as Your Honor can see, the Warehouse Index contains many useless descriptions which give no indication of the contents of the boxes purportedly described. While, in some instances, the descriptions suggest that the boxes might contain Trading Records, it is the Trustee's burden to produce these records to us. Surely, if the Defendants had responded to a discovery demand by stating the requested documents are in a warehouse, Judge Bernstein would have immediately ordered the Defendants to go to the warehouse and get the documents. Or, let

---

[7]  A true and correct copy of which is being sent by email only as Exhibit B. An earlier version of this Index was served on your Honor by the Trustee on December 16, 2016 by email only.

# CHAITMAN LLP

the Trustee give the Defendants unfettered access to whatever warehouses hold these boxes of documents and we will go through them.

## IV.   The Trustee has vast resources and the Trustee's arguments about work product are a farce

The Trustee suggests that it would be burdensome and disproportionate under Rule 26 for him to produce those documents listed on the Warehouse Index and that it is possible that some of those documents (and some of the 29 million documents in the BLMIS Database that the Trustee refuses to produce) might contain work product.  These arguments should be rejected.

Federal Rule of Civil Procedure 26(b)(1) outlines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  "Relevance . . . is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).  Defendants have a right to take discovery to develop the factual record necessary to support their defenses.  *See, e.g.*, *Mon Chong Loong Trading Co. v. Travelers Excess & Surplus Lines Co.*, 2014 WL 5525237, at *3 (S.D.N.Y. Oct. 27, 2014) ("As long as the defense is in the case – and plaintiffs do not purport to seek relief under Fed. R. Civ. P. 12(f), which authorizes a motion to strike affirmative defenses – the defendant is entitled to seek relevant discovery in support of that defense.").

In 2015, Federal Rule of Civil Procedure 26 was amended to explicitly require that consideration be given to the parties' relative access to information.  *See* Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26.  As stated by the Advisory Committee:

> One party – often an individual plaintiff – may have very little discoverable information.  The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so.

Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26.

# CHAITMAN LLP

The Trustee and his professionals have been paid approximately $3 billion in this liquidation. Obviously, the Trustee has vast resources which are certainly sufficient to allow him to comply with his discovery obligations. Indeed, he probably has been paid $40 million solely for his efforts to prevent the Defendants from getting access to the Trading Records.

Moreover, the Trustee's arguments about work product are a farce. Mr. Shifrin stated yesterday that the Trustee cannot give Defendants access to the BLMIS Database because it contains work product. Are we really supposed to believe that the Trustee's lawyers and experts went to the Queens warehouse and intermixed their own work product with documents that were under the control of the U.S. Attorney's Office? There has been no demonstration whatsoever that the Trustee's experts were even retained at the point when Madoff's records were gathered. If this is truly the Trustee's position, let him submit affidavits of the experts whose work product was allegedly intermixed with Madoff's and BLMIS' records. Assuming there is any shred of truth to Mr. Shifrin's representation, and the Trustee allowed his experts to mix their own work product with Madoff's records, it is the Trustee's burden to go through all of the documents and designate which documents are purportedly work product.

Finally, if the Trustee unintentionally produced work product, there is a protective order in these cases that allows the Trustee to request that it be clawed back. *See* Litigation Protective Order, ECF No. 4137; *see also* Federal Rule of Evidence 502(b). The Trustee is well aware of the procedures under the Litigation Protective Order, having previously relied on them to attempt to amend the Indices themselves, arguing, unsuccessfully, that many of the descriptions on the Indices contained work product. *See* ECF No. 16968.[8] Although the Trustee was not successful in maintaining his privilege assertions, Judge Bernstein held that the Trustee's inadvertent production of alleged work product did not constitute a waiver of any privilege. *See id.*

## V.   <u>Conclusion</u>

In conclusion, Defendants request that Your Honor order the Trustee to (a) give Defendants unfettered access to the BLMIS Database, and (b) produce all of the Trading Records in the Queens warehouse or any other warehouse or document depository to which he has access.

Respectfully submitted,

*/s/ Helen Davis Chaitman*

Helen Davis Chaitman

HDC/sh
Enclosures (as stated)
cc:   Maximillian S. Shifrin, Esq. (*via email only*)
      Nicholas J. Cremona, Esq. (*via email only*)

---

[8]  Attached as Ex. C.

10-04995-smb Doc 126-9 Filed 01/16/19 Entered 01/16/19 13:01:56 Exhibit 8
Pg 7 of 22

# EXHIBIT A

July 24, 2017

**VIA ECF AND EMAIL:**  bernstein.chambers@nysb.uscourts.gov

Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

Re:   *In re: Bernard L. Madoff,* Adv. Pro. No. 08-01789 (SMB)

Dear Judge Bernstein:

We write, on behalf of the good-faith Defendants represented by Chaitman LLP ("Defendants"), in response to Mr. Sheehan's letter of June 14, 2017 regarding the 4,700 unrestored reels of microfilm in the Trustee's possession, the existence of which the Trustee concealed despite two court orders requiring their production.  (ECF No. 16348).

To date, the Securities Investor Protection Corporation ("SIPC") has paid Baker & Hostetler nearly one billion dollars in fees and the Trustee's consultants have been paid nearly $400 million.  *See* http://www.madofftrustee.com/recovery-chart-fees-34.html (last accessed July 21, 2017).

Baker & Hostetler's most recent fee application seeks legal fees in excess of $35 million for three months' work.  (ECF No. 16367).  The waste which has resulted in such massive fees has been obvious.  For instance, the Trustee's counsel never go anyplace alone.  As this Court is well aware, they usually appear in court in numbers ranging from five to ten attorneys on a motion day.  Another glaring example is the Trustee's payment of over $30 million to his key expert, Bruce Dubinsky, to whom the Trustee never disclosed that he was holding trading records from the 1980s.  Dubinsky was given access only to the documents that the Trustee put into the E-Data Room, *i.e.,* the documents that supported the Trustee's and SIPC's version of the facts.  Thus, Dubinsky was never given the 500 reels of microfilm documents that the Trustee produced to the Defendants in 2017 pursuant to Magistrate Judge Maas' order.  And, of course, Dubinsky was never given the 4,700 reels of microfilm that the Trustee is now holding hostage.

Despite the entry of two court orders that the Trustee never challenged; and in the face of his unrestrained spending with respect to fees in which the Trustee participates, the Trustee has decided, for the first time in almost nine years, that he should economize, not by reducing his

**AA183**

firm's fees to a justifiable level but rather by imposing upon innocent customers the expense of producing the previously undisclosed 4,700 reels of unrestored microfilm. The Trustee argues that he is not required to pay for the restoration and production of this microfilm under Federal Rule of Civil Procedure 26 because the costs of doing so are not proportional to the needs of these cases.

This argument is a disgrace: the Trustee and his counsel have flatly misrepresented the facts to every court before which they have appeared in order to save SIPC $2 billion in insurance payments. They ignored an order of this Court on May 17, 2016 that they should immediately produce any trading records that are not already in the E-Data Room. And now that the Trustee's fraud has been uncovered, he thinks the financially decimated victims of his own fraud should come up with the money to obtain the evidence documenting the Trustee's dishonesty. The Trustee's position is insupportable.

## I.  The Trustee has a duty under the Securities Investor Protection Act to produce the 4,700 reels of unrestored microfilm

The Trustee asserts that the issue before the Court is governed by Rule 26. He does so because he has completely ignored his statutory obligations as a SIPA trustee to investigate the Debtor and disclose to the entire creditor body the facts relating to the Debtor's fraud. *See, e.g.*, 15 U.S.C. §§ 78*fff*-1(d)(3) (a SIPA trustee shall "report to the court any facts ascertained by the Trustee with respect to fraud, misconduct, mismanagement, and irregularities" of the debtor). The Trustee's claim that he was "transparent" about the microfilm in his possession is preposterous. He concealed the fact that he had 5,300 reels of microfilm records for over a year after this Court ordered him to put all such records in the E-Data room. And he concealed from Defendants, until June 25, 2017 (i) how much microfilm he had (5,300 reels) and (ii) how much of that microfilm had *never* been restored or produced (4,700 reels). (ECF No. 16237 Ex. AA.) Now that he has been caught defrauding this Court, the Second Circuit, and the entire customer body, he seeks to shift the costs of his misconduct onto his victims.

## II.  The Trustee has concealed the existence of the 4,700 reels of unrestored microfilm even though he has already been ordered numerous times to produce all trading records

While obviously, the Trustee views this as another billing opportunity for himself, the issue here is much more significant – testing the integrity of this entire proceeding. The Trustee comes into this Court having violated SIPA's mandate that he investigate the debtor and disclose to the court all facts concerning the debtor's financial affairs. *See infra.* The Trustee also comes into court having violated two court orders to produce all of the trading records – the first of which was issued on May 17, 2016. Yet the Trustee concealed from the Defendants, until June 25, 2017, the fact that he was holding 4,700 reels of unrestored microfilm that he had never produced.

While the Trustee relies upon Judge Maas' March 15, 2017 order, he ignores Judge Maas' January 7, 2017 order requiring the Trustee to produce all trading records. *See In re: Bernard L. Madoff,* Adv. Pro. No. 08-01789 (SMB) ECF No. 14807 at 3 ("To the extent there are any additional relevant records of securities trading that have not been made available . . . through Data

**AA184**

Room 1, they must promptly be produced."). Obviously, the Trustee ignored Judge Maas' order and simply produced what he found it to be convenient to produce. The Trustee certainly never disclosed that he was still holding 4,700 reels of microfilm. As this Court pointed out to Mr. Sheehan on June 29, 2017, there are "two orders directing you to turn over the documents." (*See* June 29, 2017 Transcript at 74:14-15, attached as Ex. A). Yet, the Trustee has still not turned them over.

Why, under these circumstances, would the Court reward the Trustee for his dishonesty by allowing him to force the innocent Defendants to pay the Trustee's outrageous fees in order to document the Trustee's fraud?

### III.   The Federal Rules require the Trustee to produce – at his expense – the 4,700 reels of unrestored microfilm in a searchable format and to pay Defendants' counsel fees incurred in seeking to compel the Trustee to comply with his discovery obligations

The Trustee now offers to comply with his discovery obligations but only if Defendants bear the costs of such compliance. The Trustee never raised the costs of compliance before this Court on May 17, 2016. Nor did the Trustee ever raise the costs of compliance with Magistrate Judge Maas.

Under Rule 37(b)(2), the Trustee is obligated to pay the costs of production and, in addition, to pay the Defendants' reasonable attorneys' fees in seeking the Trustee's compliance with this Court's May 17, 2016 order. *See* Fed. R. Civ. P. 37(b)(2) (if a party "fails to obey an order to provide or permit discovery. . . . the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure")(emphasis added); *Intertec Contracting v. Turner Steiner Int'l, S.A.,* 2001 WL 812224 at *11 (S.D.N.Y. July 18, 2001) ("[F]ailure  to comply with discovery orders justly allows the court to impose costs upon the failing party . . . . The Second Circuit has repeatedly emphasized the importance of complying with discovery orders of the Court, warning that '[a] party who flouts such orders does so at his peril.'") (citation omitted). *See also Moore's Federal Practice* § 37.50[1][a] ("[A] court should not permit the moving party to suffer net economic losses as a result of another party's violation of a discovery order.").

The 4,700 reels of microfilm are clearly discoverable under Federal Rule of Civil Procedure 26(b)(1), which outlines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit.

Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

All of these considerations require the Trustee to restore and produce in a searchable format, at the Trustee's expense, the 4,700 reels of unrestored microfilm. There is absolutely no reason why the expense of restoring and producing these records should be put on the financially decimated Defendants who have been required to produce all of their own records at their own expense, even though the Trustee has virtually all of these records anyway.

The issues at stake are of tantamount importance not only to the Defendants but to the entire creditor body and to the public. It is quite possible that the 1980s trading records will require the Trustee to recalculate the claims of customers so that they are entitled to receive SIPC insurance. And, after repeatedly and endlessly bragging to the courts and the public about the efforts the Trustee went to in order to establish his E-Data Room which he claimed contained every document any customer could possibly want to see in connection with his defense, the Trustee should be held to his word – and be required to put all of the previously undisclosed documents, and any further documents still not disclosed, in the E-Data Room in a legible and searchable format.

Having probably been paid more than any Trustee in the history of the world, and having deprived customers of their statutory right to SIPC insurance based on the false claim that Madoff never purchased securities for any of his investment advisory customers, it is preposterous that the Trustee now seeks to hide behind the proportionality concept of Rule 26. In many of these cases, the Trustee and his law firm have been paid legal fees grossly in excess of the amount in controversy. But the Trustee has never suggested that **his fees** should be subject to a proportionality analysis. It is shameful that the Trustee would seek to impose on the innocent Defendants a cost that he should have incurred to present honestly the facts concerning the timing and scope of Madoff's fraud. Moreover, to each of the Defendants, the amount at issue is life-changing because these are people whose lives were decimated first by Madoff's fraud, and then by the Trustee's fraud. Many of the victims stand to lose their entire life savings and their homes. To withhold relevant evidence from them (or require them to pay millions of dollars to obtain access to this evidence in a usable format) is a callous attempt to determine the outcome of their cases without their being able to defend themselves fully, appropriately, and fairly.

In 2015, Federal Rule of Civil Procedure 26 was amended to explicitly require consideration of the parties' **relative** access to information. *See* Advisory Committee Notes to the 2015 Amendments to Fed. R. Civ. P. 26. Here, the Trustee – who owes a fiduciary duty to each Defendant – has had access to the 4,700 unrestored reels of microfilm for nine years and yet, for nine years has falsely represented that Madoff never purchased securities for any of his investment advisory customers.

**AA186**

The importance of the discovery in resolving the issues cannot be over-stated. The discovery sought is designed to ascertain the scope of the Madoff fraud, when the fraud began, and for what period customers are entitled to the appreciation shown on their statements.

The Trustee has repeatedly taken the position that he relies entirely upon Dubinsky to prove that Madoff never purchased any securities for his investment advisory customers. Dubinsky's report is based on the assertion that there is no evidence of any real trading by the investment advisory business. Yet Dubinsky reached this conclusion without being supplied with any of the 1980s trading records, including the microfilm records. Thus, aside from Dubinsky's appalling ignorance of convertible bond trading in the 1980s (as demonstrated by the expert report of William Feingold which supports 100% Madoff's testimony concerning the mistakes in the Dubinsky report), Dubinsky was further handicapped by the Trustee's concealment of the 1980s trading records.

Given that the Trustee's case is based on a purported **absence** of evidence of real trading, the Trustee has an obligation to produce to the Defendants all of Madoff's trading records, whether the Trustee thinks they are "real" trading records or "fake" trading records. It is not for the Trustee to determine which records are real and which records are not; it is for the fact finder.

It is also vital that all innocent victims, many of whom are threatened with the loss of their life's savings, be able to defend themselves fully without the Trustee pre-determining the facts by concealing material evidence. The Trustee's proportionality argument is nothing more than a last ditch attempt to conceal the Trustee's fraud because, obviously, the Defendants are incapable of funding the costs of compliance with the Trustee's discovery obligations. And, of course, the Trustee's greed surfaces even here. He now discloses, for the first time, that it will cost over $2 million to put the documents in computer-searchable form so that they can be easily analyzed and shared with others. And he proposes to shift this burden to the innocent Defendants, including a charge of almost $500 an hour (of which the Trustee receives a percentage) to have a clerk monitor the microfilm review. Yet, on May 17, 2016 when the Court ordered the Trustee to put into the E-Data Room any trading records not yet produced, the Trustee did not, at that time, condition compliance with that order on the Defendants paying the costs. Instead, the Trustee lied and said that all trading records had been put into the E-Data Room.

The Trustee and SIPC have worked, since December 2008, to conceal from the courts and the customers the true nature and extent of Madoff's fraud. They did so in order to save SIPC approximately $2 billion in SIPC insurance payments at a time when neither the Trustee nor SIPC knew whether SIPC would be reimbursed for its advances. The devastation that the Trustee and SIPC have caused is immeasurable in terms of the emotional impact on Madoff's customers. The economic devastation is measurable and huge. But the first step is to compel the Trustee to produce all of Madoff's trading records in a reasonably searchable form and at his own expense.

**IV.    Defendants have already made a showing of relevancy under Rule 26**

The Trustee continues to argue that Defendants have not made any showing under Rule 26 that the production of the 4,700 reels of unrestored microfilm will result in relevant evidence. But

**AA187**

in Defendants' June 26, 2017 Memorandum to the Court (ECF Nos. 16236-37) and in an accompanying letter by the Sage Defendants (ECF No. 16243), Defendants gave several examples of documents in the microfilm that has been produced to date evidencing pre-1992 trading. These documents were only produced because the Trustee was finally forced to restore previously unrestored microfilm. Mr. Sheehan also admitted he had never reviewed the 4,700 reels of microfilm (June 29, 2017 Tr. at 68:4-16), and thus has no basis to claim what these records will or will not show. The 4,700 unrestored reels of microfilm should be produced in computer searchable format and, along with the prior microfilm productions, posted to the E-Data Room as promptly as possible by the Trustee, at the Trustee's expense.

Respectfully submitted,

*/s/ Helen Davis Chaitman*

Helen Davis Chaitman

HDC
Encl.

cc:      (*via ECF and Email w/encl.*)
         David Sheehan (dsheehan@bakerlaw.com)
         Andrew Kratenstein (akratenstein@mwe.com)
         Carole Neville (carole.neville@snrdenton.com)

# EXHIBIT A



Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-01789-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    SECURITIES INVESTOR PROTECTION CORPORATION,

6                    Plaintiff,

7            v.

8    BERNARD L. MADOFF INVESTMENT SECURITIES, L.L.C.,

9                    Defendants.

10    - - - - - - - - - - - - - - - - - - - - - - - - - - x

11    Adv. Case No. 10-04292-smb

12    - - - - - - - - - - - - - - - - - - - - - - - - - - x

13    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

14    MADOFF INVESTMENT SECURITIES LLC,

15                    Plaintiff,

16            v.

17    ROBERT ROMAN,

18                    Defendants.

19    - - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25

Page 2

1              U.S. Bankruptcy Court

2              One Bowling Green

3              New York, NY   10004

4

5              June 29, 2017

6              11:02 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   K. SU

Page 68

1    discovery they're getting because they use conclusory, we

2    didn't get this, we didn't get that.  They're --

3          THE COURT:  We're talking --

4          DAVID SHEEHAN:  Your Honor, do you know for a fact

5    what's in those?  I don't.  Right?

6          THE COURT:  Well, I think you should look at them.

7          DAVID SHEEHAN:  I know I've looked at 27 terabytes

8    of data and I know that there's no evidence of trading that

9    this woman keeps talking about that we've been hiding.  And

10   she hasn't presented one iota of evidence to suggest to you

11   that that's true, other than conclusions.

12         THE COURT:  So you're -- but then you can't tell

13   me whether or not these microfilms are relevant or not if

14   you haven't looked at them.

15         DAVID SHEEHAN:  No, we've looked at them enough to

16   do searches of them, but we have -- and can I say what I --

17         THE COURT:  Let me ask you a question.

18         DAVID SHEEHAN:  Yes.

19         THE COURT:  What's involved in just producing the

20   information?  Maybe I don't understand.

21         DAVID SHEEHAN:  Well, it's going to be a lot of

22   time and effort, a lot of money.

23         THE COURT:  What's involved?  I mean --

24         DAVID SHEEHAN:  Well, I would say it's a -- it

25   took half a million dollars to do 300 --

```
 1              DAVID SHEEHAN:  It sounds easy.

 2              THE COURT:  All right.

 3              DAVID SHEEHAN:  But we've been doing that for a

 4    year and a half with Ms. Chaitman.

 5              MS. CHAITMAN:  That is untrue.

 6              THE COURT:  No, no, stop.  I don't know what's in

 7    there, you don't know what's in there, and on that basis,

 8    you can't say I'm not going to turn it over.

 9              DAVID SHEEHAN:  Yeah, but she hasn't shown to you

10    what she's saying is true.

11              THE COURT:  There are two orders directing you --

12              DAVID SHEEHAN:  But why does she get discovery

13    when she can't even prove what she's saying?

14              THE COURT:  There are two orders directing you to

15    turn over the documents.  You haven't told me that they're

16    not relevant.  You --

17              DAVID SHEEHAN:   I'm going to look at it, and if I

18    don't think they are, I'm going to tell Your Honor that.

19              THE COURT:  You haven't made a motion for a

20    protective order, and there are two orders to turn over the

21    documents.

22              DAVID SHEEHAN:  I'd like the protective order.

23    Well, I do.

24              MS. CHAITMAN:  Well, Judge, you know --

25              DAVID SHEEHAN:  It's about time she put up or shut
```

# EXHIBIT B
(Omitted due to size)

Excel spreadsheet:

Bernard L. Madoff Investment Securities, LLC
Microfilm Reel Inventory
As of June 28, 2017
Microfilm Inventory Color-Coded

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

| |
|---|
| In re: |
| BERNARD L. MADOFF, |
| Debtor. |

| |
|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, |
| Plaintiff, |
| v. |
| DEFENDANTS REPRESENTED BY CHAITMAN LLP, |
| Defendants. |

## ORDER IMPLEMENTING THE COURT'S
## NOVEMBER 29, 2017 BENCH RULING

THIS MATTER having come before the Court on the request of Chaitman LLP on behalf

of the Defendants in the above-referenced adversary proceedings and counsel for Irving H.

Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L.

Madoff Investment Securities LLC under the Securities Investor Protection Act, 15 U.S.C.

§ 78aaa et seq., and the estate of Bernard L. Madoff, with respect to Chaitman LLP's letter dated

**AA196**

September 8, 2017 [ECF No. 16607] requesting a discovery conference and the Trustee's

response dated September 19, 2017 [ECF No. 16657], and the Court having received *in camera*

submissions from both parties, and the Court having held hearings on November 9, 2017 at 2:00

p.m. and November 29, 2017 at 10:00 a.m., and the Court having heard argument from the

Trustee's counsel, and counsel for the Defendants having failed to appear; and the Court having

directed the Trustee to submit a proposed order consistent with the bench ruling issued during

the November 29, 2017 hearing (the "November 29 Hearing"), as set forth in the transcript from

the November 29 Hearing, it is hereby:

      1.      ORDERED, notwithstanding the inadvertent disclosure of certain information on

the Microfilm Index and the Warehouse Index, as discussed in the parties' respective letters

[ECF Nos. 16607 and 16657], such disclosure does not constitute a waiver of any privilege or

protection, including the attorney-client privilege and the work product protection, that the

Trustee may otherwise have over the inadvertently disclosed information, and it is further

      2.      ORDERED, that the Trustee withdraws his request to claw back the inadvertently

disclosed information in the Microfilm Index and the Warehouse Index, and it is further

      3.      ORDERED, that this Court shall retain jurisdiction over all matters relating to the

enforcement, implementation, and interpretation of this Order.

Dated:  December 1, 2017

                          /s/ *Stuart M. Bernstein*
                          STUART M. BERNSTEIN
                 United States Bankruptcy Judge

**AA197**

# EXHIBIT 9

AA198



Page 1

```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   - - - - - - - - - - - - - - - - - x

 4   SECURITIES INVESTOR PROTECTION

 5   CORPORATION

 6   v.                      CASE NO. 08-01789-smb

 7   BERNARD L. MADOFF INVESTMENT

 8   SECURITIES, LLC, et al,

 9           Debtors.

10   - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE,

12           Plaintiff,

13   v.                      CASE NO. 09-01161-smb

14   KINGATE GLOBAL FUND,

15   LTD., et al.,

16           Defendants.

17   - - - - - - - - - - - - - - - - - x

18   IRVING H. PICARD, TRUSTEE,

19           Plaintiff,

20   v.                      CASE NO. 10-04946-smb

21   GOLDENBERG,

22           Defendants.

23   - - - - - - - - - - - - - - - - - x

24

25
```

Page 2

| | | |
|---|---|---|
| 1 | U.S. Bankruptcy Court | |
| 2 | One Bowling Green | |
| 3 | New York, New York | |
| 4 | | |
| 5 | July 26, 2017 | |
| 6 | 10:09 AM | |
| 7 | | |
| 8 | | |
| 9 | B E F O R E : | |
| 10 | HON. STUART M. BERNSTEIN | |
| 11 | U.S. BANKRUPTCY JUDGE | |
| 12 | | |
| 13 | ECRO:  Unidentified | |

Page 4

1 A P P E A R A N C E S :
2 BAKER & HOSTETLER, LLP
3     Attorneys for BLMIS, Trustee
4     45 Rockefeller Plaza
5     New York, NY  10111
6
7 BY:  GERALDINE E. PONTO, ESQ.
8     MARSHALL J. MATTERA, ESQ.
9     DAVID J. SHEEHAN, ESQ.
10     STACEY A. BELL, ESQ.
11     AMANDA E. FEIN, ESQ.
12
13 CHAITMAN, LLP
14     Attorneys for large group of defendants
15     465 Park Avenue
16     New York, New York 10022
17
18 BY:  HELEN DAVIS CHAITMAN, ESQ.
19
20 MCDERMOTT, WILL & EMERY, LLP
21     Attorneys for Sage defendants
22     340 Madison Avenue
23     New York, New York 10173
24
25 BY:  ANDREW B. KRATENSTEIN, ESQ.

Page 3

1 Conference re: Madoff Day 2 Deposition Topics
2
3 Discovery Conference Pursuant to Local Bankruptcy Rule
4 7007-1
5
6 Conference regarding status of factual stipulation in
7 advance of motions for summary judgment
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25 Transcribed by:  Sherri L. Breach, CERT*D-397

Page 5

1 SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
2     Attorneys for Tremont
3     Four Times Square
4     New York, New York 10036
5
6 BY:  SETH M. SCHWARTZ, ESQ.
7
8 SCHULTE ROTH & ZABEL, LLP
9     Attorneys for Picower Parties
10     919 Third Avenue
11     New York, New York 10022
12
13 BY:  MICHAEL KWON, ESQ.
14
15
16
17
18
19
20
21
22
23
24
25

2 (Pages 2 - 5)

Page 34

1    So what we did is we broke it down into those
2  categories that would appear to us to be the ones that are
3  most interesting to her, and they add up to 1,281.  And you
4  say, well, what does that represent.  If you look on the
5  next page you'll see that we have a pie chart and it says,
6  position stock record trading unprocessed microfilm reels.
7  What this represents is if you took all of the pages that we
8  gave Ms. Chaitman, the 168 pages, and broke it down into
9  what Mr. Madoff said were on these tapes, this is how it
10  would break down.  They had open long positions, stock
11  records, et cetera.  And these are all the ones and how they
12  broke down into percentages.
13    And then the next page we took the ones that we
14  processed and broke that down.  And this shows you that we
15  gave her a very good representative sample of all the
16  documents that are in there including what we believe to be
17  the ones that she would be most interested in looking at.
18    So in other words this wasn't just a random
19  exercise by us.  An effort was made by the trustee taking
20  the records that were available to him to respond very
21  directly to her statement that she did not get trading
22  records.
23    Now when we had done all this, this goes back to
24  Judge Moss and your reference taken earlier, and that is, is
25  that Ms. Chaitman got the -- you know, we did some -- what's

Page 35

1  in the data room at this point by April, okay, and what's
2  available to Ms. Chaitman directly.  So in the data room is
3  the 400 tapes that we've put in there back in the early
4  2000s, or 2011 and '12.  It's been there since at least
5  2012.
6    We ran 147 search terms on that and produced the
7  documents.  And at the time there was no objection.  Later
8  Ms. Chaitman objected to our search terms, added 17 more.
9  We ran those and gave her those documents.  All right.  So
10  those have been from our perspective thoroughly searched by
11  our search terms and hers.
12    Then what we did is we found the -- those tapes I
13  was telling you about earlier from '92 back and we processed
14  those so she could digitally look at them and do her own
15  search terms, et cetera, and we gave those to her in its
16  entirety.  So now she has that 600 tapes that are shown on
17  that last pie chart showing a representative sample.
18    So what we're saying here today, this is a long-
19  winded answer to Your Honor's question.  We're not saying
20  that proportionality means the trustee aks a lot of money,
21  she has none, and therefore, you know, we should pay for it
22  or they should.  What we're saying is, is that
23  proportionality takes place in the context of the discovery
24  at hand.  All right.  What are we going to gain by
25  continuing to look and research and spend money when I think

Page 36

1  we've given Ms. Chaitman with the 600 that she has more than
2  adequate data to come to Your Honor and then say, I've
3  looked at this, look at what I've found.  Your Honor, you
4  should allow me to look, if not at all 4,700, at least the
5  1,281 that the trustee admits has stock record and other
6  information on it, and I should be able to look at it.
7    I respectfully submit she has not done that.  All
8  right.
9    Now the two things that we've heard about from Ms.
10  Chaitman, and in her last submission she gave them to us,
11  was treasuries.  It was exclusive information according to
12  Ms. Chaitman.  The treasuries have been known about since
13  the very beginning.  Very early in the case there was a
14  letter written by Mr. Hardvac (ph), I think it's been
15  referred to in this room, in which we disclosed to
16  (indiscernible) that, in fact, over $16 billion worth of
17  treasuries were purchased.
18    It's a money business.  It's a Ponzi scheme.
19  Deals in cash.  The question is did he buy any of those
20  treasuries for customers (indiscernible).  If you take any
21  number of Ms. Chaitman's exhibits and compare those to the
22  703 account at the same time, no treasuries were purchased.
23  None.  Just what we (indiscernible).  She can't find those.
24  All right.
25    Same thing is true with regard to the banks

Page 37

1  themselves because she doesn't actually know what's
2  (indiscernible) bank and a few other banks where she's said
3  that's actually happened.  We have no correlation there
4  either.  She's not making that correlation.  All right.
5    The mere fact that we have treasuries being
6  purchased is unremarkable.  It doesn't mean anything, not
7  unless she can actually show that they're purchased for a
8  particular account.  And that's going to require a little
9  more legwork than what Your Honor has before you.
10    Mr. Kratenstein, I don't disagree and that's why
11  he should be entitled to question Mr. Madoff about it.  I
12  don't object to that at all.  But he shows Your Honor
13  certain stocks that he found in there that were delivered in
14  by his family using that term broadly.  We don't dispute
15  that either.  All right.  We found that happened.  Everyone
16  who opened an account with Madoff didn't give him cash.
17  They gave him stock.  And when he got it he liquidated it.
18  All right.  He turned it into cash and then started this --
19  his efforts.
20    There's no trading that.  He's cashing it in.  And
21  we can show that.  All right.  We can show that that's what
22  actually happened to those stocks.
23    Now it's going to show up, all right, in DTCC
24  records and so it looks like there's something actually --
25  because there was only one DTCC account.  That was the one

10 (Pages 34 - 37)