**Baker & Hostetler LLP**                              Hearing Date: March 27, 2019 at 10:00 a.m.
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC and*
*the estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 10-04667 (SMB) |
| v. | |
| DAVID GROSS and IRMA GROSS Individually and as Joint Tenants, | |
| Defendants. | |

## RESPONSE AND MEMORANDUM OF LAW
## ADDRESSING ISSUES PRESENTED IN ORDER TO SHOW CAUSE

## Table of Contents

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ........................................................................................ 3

    A.    The Net Equity Decision............................................................ 3

    B.    Gross's Customer Claims and the Trustee's Action Against Gross ...................... 4

    C.    The Trustee's Action against the Cohmad Defendants............................ 6

    D.    Gross's FINRA Arbitration against the Cohmad Defendants................................ 8

    E.    Trustee's Injunction Action and the Injunction Order ........................... 9

    F.    Post-2013 Injunction Case Law ....................................................... 11

    G.    The *Fairfield* Decision .................................................................. 13

    H.    Gross's Submissions to This Court and the Order to Show Cause...................... 16

ARGUMENT ............................................................................................. 17

I.    NO NEW FACTS WARRANT RECONSIDERATION OF THE
INJUNCTION .................................................................................... 17

II.    INTERVENING CHANGES IN CONTROLLING LAW DO NOT
WARRANT RECONSIDERATION OF THE INJUNCTION ................. 18

    A.    The FINRA Claim Violates the Automatic Stay ................................. 18

    B.    The FINRA Claim Should Continue to be Enjoined Under Section
105(a). .......................................................................................... 21

        1.    Lifting the Injunction Now Would Have an Immediate Adverse
Economic Consequence for the Estate and Would Cause
Irreparable Harm. ................................................................. 21

        2.    Interference with the Liquidation and this Court's Jurisdiction to
Enforce the Net Investment Method is Also Grounds to Maintain
the Injunction. ...................................................................... 23

CONCLUSION.......................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A & G Goldman P'ship v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*,
  No. 12 Civ. 6109 (RJS), 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013).......................3, 11, 12

*In re Ampal-American Israel Corp.*,
  502 B.R. 361 (Bankr. S.D.N.Y. 2013)....................................................................................18

*In re Apostolou*,
  155 F.3d 876 (7th Cir. 1998) ................................................................................................24

*In re Bernard L. Madoff Inv. Secs. LLC*,
  424 B.R. 122 (Bankr. S.D.N.Y. 2010).............................................................................3, 4, 23

*In re Bernard L. Madoff Inv. Secs. LLC*,
  654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24, 133 S. Ct. 25 (2012) ......................4

*In re Bernard L. Madoff Inv. Secs. LLC*,
  No. 11-CV-2392, 2011 WL 7975167 (S.D.N.Y. Dec. 15, 2011) ...........................................20

*Caplin v. Marine Midland Grace Trust Co. of N.Y.*,
  406 U.S. 416 (1972)..............................................................................................................15

*Cumberland Oil Corp. v. Thropp*,
  791 F.2d 1037 (2d Cir. 1986)............................................................................................ 20-21

*Fox v. Picard (In re Bernard L. Madoff)*,
  848 F. Supp. 2d 469 (S.D.N.Y. 2012)................................................................................3, 23

*Fox v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*,
  531 B.R. 345 (S.D.N.Y. 2015).................................................................................................3

*Freedom, N.Y., Inc. v. United States*,
  438 F. Supp. 2d 457 (S.D.N.Y. 2006)....................................................................................17

*Goldman v. Capital Growth*,
  565 B.R. 510 (S.D.N.Y. 2017) .......................................................................................3, 11, 12

*Goldman v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*,
  739 F. App'x 679 (2d Cir. 2018) ....................................................................................11, 12, 19

*Gross v. Russo (In re Russo)*,
  18 B.R. 257 (Bankr. E.D.N.Y. 1982)......................................................................................24

*Highland Capital Mgmt. v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.),*
   522 F.3d 575 (5th Cir. 2008) ...........................................................................21

*Hirsch v. Arthur Andersen & Co.,*
   72 F.3d 1085 (2d Cir. 1995)............................................................................15

*In re Johns-Manville Corp.,*
   91 B.R. 225 (Bankr. S.D.N.Y. 1988) ..............................................................24

*In re Keene Corp.,*
   164 B.R. 844 (Bankr. S.D.N.Y. 1994) .............................................................18

*Marshall v. Capital Growth Co. et al.,*
   Case No. 17-CV-02230, 2019 WL 1254658 (S.D.N.Y. Mar. 19, 2019) ........................ *passim*

*Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC),*
   740 F.3d 81 (2d Cir. 2014).........................................................................3, 11

*Medsker v. Feingold,*
   307 F. App'x 262 (11th Cir. 2008) .................................................................21

*Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.), Inc.,*
   676 F.3d 45 (2d Cir. 1992)........................................................................13, 15

*Picard v. Cohen,*
   Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ........................................................................................22

*Picard v. Cohmad,*
   454 B.R. 317 (Bankr. S.D.N.Y. 2011) ..............................................................7

*Picard v. Fairfield Greenwich Ltd.,*
   762 F.3d 199 (2d Cir. 2014)......................................................................... *passim*

*Picard v. Fox,*
   429 B.R. 423 (Bankr. S.D.N.Y. 2010)..............................................................22

*Picard v. The Lustig Family 1990 Trust et al.,*
   Adv. Pro. No. 10-04417, 2017 WL 6205381 (Bankr. S.D.N.Y. Dec. 6, 2017)......................17

*Picard v. Marshall (In re Bernard L. Madoff),*
   511 B.R. 375 (Bankr. S.D.N.Y. 2014) ...........................................................3, 21

*Picard v. Schneiderman,*
   491 B.R. 27 (S.D.N.Y. 2013)..........................................................................14

*Queenie Ltd. v. Nygard Int'l*,
    321 F.3d 282 (2d Cir. 2003)............................................................................13

*In re Rubin*,
    160 B.R. 269 (Bankr. S.D.N.Y. 1993) ..........................................................24

*Secs. Inv'r Prot. Corp. v. Blinder, Robinson & Co.*,
    962 F.2d 960 (10th Cir. 1992) .......................................................................24

*Secs. Inv'r Prot. Corp. v. BLMIS (In re Madoff Secs.)*,
    No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ...............7

*Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Bernard L. Madoff)*,
    477 B.R. 351 (Bankr. S.D.N.Y. 2012)............................................................3

*Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    490 B.R. 59 (S.D.N.Y. 2013)........................................................................14

*Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    546 B.R. 284 (Bankr. S.D.N.Y. 2016)............................................... *passim*

*In re Shea & Gould*,
    214 B.R. 739 (Bankr. S.D.N.Y. 1993) ..........................................................24

*Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corp. Sys., Inc.)*,
    108 F.3d 881 (8th Cir. 1997) .......................................................................19

*In re The 1031 Tax Group, LLC*,
    397 B.R. 670 (Bankr. S.D.N.Y. 2008)..........................................................24

*The Lautenberg Found. v. Picard*,
    512 F. App'x 18 (2d Cir. 2013) ...................................................................23

*In re Tronox Inc.*,
    855 F.3d 84 (2d Cir. 2017).................................................................11, 12, 24

**Statutes**

11 U.S.C. § 105................................................................................3, 13, 15, 21

11 U.S.C. § 362............................................................................... *passim*

15 U.S.C. §§ 78aaa .........................................................................................1

**Rules**

Fed. R. Civ. P. 12(b)(1).................................................................................12

Fed. R. Civ. P. 12(b)(6)...........................................................................................................12

Fed. R. Civ. P. 60(b) ............................................................................................................17

Fed. R. Civ. P. 65.............................................................................................................13, 15

Irving H. Picard, Esq., as Trustee (the "Trustee") for the substantively consolidated

liquidation under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), of

Bernard L. Madoff Investment Securities LLC ("BLMIS") and the chapter 7 estate of Bernard L.

Madoff ("Madoff"), individually (collectively with BLMIS, the "Debtor"), through his

undersigned counsel, respectfully submits this memorandum of law (the "Response") as directed

pursuant to the Order to Show Cause entered by this Court on February 26, 2019 in the above-

referenced action.   The Response addresses why the Court's prior ruling and preliminary

injunction in this action (the "Injunction") should not be reconsidered on the grounds that (i) the

FINRA arbitration (the "FINRA Arbitration") brought by David Gross ("Gross") against

Cohmad Securities Corporation ("Cohmad"), Maurice Cohn ("Cohn"), and Richard Spring

("Spring") does not violate the Bankruptcy Code's automatic stay and (ii) the award of continued

injunctive relief staying the FINRA Arbitration is inappropriate.  (ECF No. 101).

## PRELIMINARY STATEMENT

Gross, a "net winner" BLMIS customer who filed customer claims with the Trustee for

his fictitious profits, was preliminarily enjoined by this Court in 2013 from seeking to recover

those same profits in the FINRA Arbitration from Cohmad, Cohn, and Spring (the "Cohmad

Defendants"), named defendants in an avoidance action by the Trustee (the "Cohmad Action").[1]

This Court found that the FINRA Arbitration violated the automatic stay and that the Trustee

would suffer irreparable harm were the FINRA Arbitration to proceed.[2]  The Court thus enjoined

---

[1] Order Enforcing Automatic Stay and Issuing Preliminary Injunction ("Injunction Order"),
*Picard v. Gross*, Adv. Pro. No. 10-04667 (SMB) (Bankr. S.D.N.Y.) issued Dec. 4, 2013), ECF
No. 38.

[2] Injunction Order, Finding Nos. 2, 3.

the FINRA Arbitration until the completion of the Trustee's Cohmad Action, including the

satisfaction by the Cohmad Defendants of any settlement or judgment obtained by the Trustee.[3]

Since the Injunction was issued, the Trustee has settled (the "Cohmad Settlements") his

case against Cohmad and the estate of Cohn (the "Cohn Estate").[4]  The case against Spring,

however, remains active.  Indeed, the Trustee and Spring have been in mediation for

approximately one year and have reached an advanced stage of settlement negotiations.[5]

In response to letters from Gross inquiring as to the status of the Injunction, the Court

directed the Trustee to address whether reconsideration of the Injunction Order is warranted in

light of the Cohmad Settlements and binding precedent issued after the Injunction, specifically

*Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014).  For the reasons discussed

below, reconsideration of the Injunction Order at this time is not warranted.  First, the FINRA

Arbitration that is the subject of the Injunction is against not only Cohmad and Cohn but also

against Spring, who, notwithstanding the advanced stage of settlement negotiations, has not yet

settled with the Trustee.  Second, this case is distinguishable from *Fairfield*, both in the nature of

the claims Gross seeks to assert against Spring and the likelihood and immediacy of harm to the

Debtors' estate (the "Estate") in the absence of preliminary injunctive relief.  The FINRA

---

[3] *Id.* Decretal Paragraph 2.

[4] Cohn passed away on May 4, 2015, and the Trustee settled with the Cohn Estate.  *See* Order
Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal
Rules of Bankruptcy Procedure Approving a Settlement Agreement by and Between the Trustee
and Cohmad Securities Corporation, Marcia B. Cohn, Individually and in Her Capacity as Co-
Executor of the Estate of Maurice Cohn, and Marilyn Cohn, Individually and in Her Capacity as
Co-Executor of the Estate of Maurice Cohn, *Picard v. Cohmad Secs. Corp., et al.*, No. 09-01305
(SMB) (Bankr. S.D.N.Y. issued November 29, 2016), ECF No. 380 (the "9019 Order").

[5] *See* Declaration of Richard Spring ("Spring OSC Declaration") ¶ 3, *Gross*, Adv. Pro. No. 10-
04667, being filed contemporaneously with this Response.

Arbitration violates the automatic stay because Gross does not state a colorable claim against Spring for independent harm, but rather seeks to recover the balance reflected on Gross's last BLMIS statements. Even in the absence of a violation of section 362(a), continued injunctive relief under section 105 remains appropriate because of the immediacy and likelihood of harm to the Estate if the FINRA Arbitration were allowed to proceed. The Trustee thus respectfully submits that the Court should not reconsider the Injunction Order and should preserve the Injunction solely with respect to Spring until completion of the Trustee's case against Spring. As to Cohmad and the Cohn Estate, the Trustee's case against these defendants is complete and they have satisfied their settlements reached with the Trustee; thus, the Trustee no longer has an interest in maintaining the Injunction against these defendants.

## BACKGROUND

The details of Madoff's Ponzi scheme and the background of the bankruptcy proceedings have been set forth numerous times and will not be repeated here.[6]

### A.    The Net Equity Decision

In liquidation proceedings under SIPA, customers with allowed claims may share *pro rata* in the Estate's customer property to the extent of their net equity.[7] Consistent with SIPA,

---

[6] *Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81, 84-86 (2d Cir. 2014); *Goldman v. Capital Growth*, 565 B.R. 510, 522 (S.D.N.Y. 2017) (Woods, J.); *Fox v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 531 B.R. 345 (S.D.N.Y. 2015) (Koeltl, J.); *A & G Goldman P'ship v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, No. 12 Civ. 6109, 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013) (Sullivan, J.); *Picard v. Marshall (In re Bernard L. Madoff)*, 511 B.R. 375 (Bankr. S.D.N.Y. 2014) (Bernstein, J.); *Fox v. Picard (In re Bernard L. Madoff)*, 848 F. Supp. 2d 469, 473–77 (S.D.N.Y. 2012); *Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Bernard L. Madoff)*, 477 B.R. 351 (Bankr. S.D.N.Y. 2012) (Lifland, J.).

[7] *In re Bernard L. Madoff Inv. Secs. LLC*, 424 B.R. 122, 124–25 (Bankr. S.D.N.Y. 2010).

the Trustee determined that each customer's net equity should be calculated by crediting the

amount of cash the customer deposited into its BLMIS account, less any amounts withdrawn

from the customer's BLMIS account, referred to as the "net investment method."[8]  Customers

who withdrew less money than they invested had allowable customer claims for their net losses.

Conversely, customers who withdrew more money than they invested, such as Gross, would not

have an allowable customer claim.

This Court approved the Trustee's use of the net investment method to calculate net

equity, and the Second Circuit affirmed that order in its Net Equity Decision.[9]  Customers

dissatisfied with the net investment method argued that the Trustee should return their false

profits to them, as reported on their last customer statements.  But the Second Circuit reasoned

that permitting customers their false profits would "have the absurd effect of treating fictitious

and arbitrarily assigned paper profits as real and would give legal effect to Madoff's

machinations."[10]

### B.    Gross's Customer Claims and the Trustee's Action Against Gross

Gross was a BLMIS customer from at least the 1990s until Madoff's scheme collapsed.[11]

In 2009, Gross submitted five claims (the "Customer Claims") to the Trustee based on two

---

[8] *Id.* at 125.

[9] *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229, 242 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24, 133 S. Ct. 25 (2012).

[10] *Id.*

[11] *See* Declaration of Jessie A. Kuhn in Support of the Trustee's Motion for a Preliminary Injunction ("Kuhn Decl."), ECF No. 28 (filed October 30, 2013), Exs. 15-16, (1CM302 BLMIS Customer Agreements; 1CM404 BLMIS Customer Agreements).  Gross was initially invested in BLMIS through a commingled account held at Cohmad, and later used these funds to open individual accounts at BLMIS.

BLMIS accounts:  (1) account number 1CM302, opened on December 15, 1994, and (2) account

number 1CM404, opened on June 27, 1996 (collectively, the "BLMIS Accounts").[12]  The

Customer Claims sought the amounts listed on Gross's last customer statements from BLMIS.[13]

The Trustee denied the Customer Claims because Gross's BLMIS Accounts contained only

fictitious profits.[14]  On December 1, 2010, the Trustee filed the above-captioned adversary

proceeding against Gross and his wife (the "Gross Adversary Proceeding") seeking among other

claims the return of $488,818 in fictitious profits transferred in the two years before the

bankruptcy filing.[15]  On June 2, 2015, on review of an omnibus motion to dismiss in which Gross

participated, this Court denied the motion in part and granted it in part, permitting the Trustee to

proceed on the two-year claims.[16]  Gross answered the Trustee's Complaint on August 13, 2015

and discovery is open.  On January 30, 2017, this Court granted the motion of Helen Chaitman,

Esq., to withdraw as counsel.[17]  Since then, Gross has proceeded *pro se*.  Considerate of Gross's

---

[12] Kuhn Decl., Exs. 17-21, (Customer Claim Nos. 000057, 000058, 015790, 001950, and
100434).

[13] *Id*.

[14] Kuhn Decl., Exs. 22-25 (Notice of Trustee's Determination of Claim for BLMIS account
number 1CM302 and customer claim numbers 000057 and 001950; Notice of Trustee's Revised
Determination of Claim for BLMIS account number 1CM302 and customer claim numbers
000057 and 001950; Notice of Trustee's Determination of Claim for BLMIS account number
1CM404 and customer claim numbers 000058 and 015790; and Notice of Trustee's Revised
Determination of Claim for BLMIS account number 1CM404 and customer claim numbers
000058, 015790, and 100434).  Gross filed objections to the Trustee's determination of his
claims, and those objection remain pending.

[15] Kuhn Decl., Ex. 2 (Complaint, *Gross*, Adv. Pro. No. 10-04667 (filed Dec. 1, 2010), ECF No.
1).

[16] *See Gross*, Adv. Pro. No. 10-04667, ECF No. 53 (Written Opinion); ECF No. 56 (Order).

[17] *Gross*, Adv. Pro. No. 10-04667, ECF No. 79.

*pro se* status, the Trustee has made numerous attempts to meet and confer with Gross, but Gross

has refused to participate in discovery.[18]  The Trustee continues to seek the return of fictitious

profits from Gross.

### C.    The Trustee's Action against the Cohmad Defendants

Cohmad was founded by Madoff and his friend and former neighbor, Maurice "Sonny"

Cohn.  Cohmad's primary business was recruiting clients for BLMIS.  At the time of BLMIS's

collapse, approximately twenty percent of all active BLMIS accounts were referred by Cohmad

representatives, including Cohn and Spring.

On June 22, 2009, nearly four years prior to Gross's FINRA Arbitration, the Trustee

commenced an adversary proceeding to avoid and recover fraudulent transfers made by BLMIS

to the Cohmad Defendants, among others.  In his adversary proceeding against the Cohmad

Defendants, among others, the Trustee sought at least $245 million in fictitious profits and

commissions received via fraudulent transfers from BLMIS.[19]  The Trustee alleged that, at times,

approximately ninety percent of Cohmad's income came directly from BLMIS, the majority of

which was distributed to the Cohmad representatives, including Cohn and Spring.[20]  The

Cohmad Defendants, including Spring, and their family members also received substantial sums

of fictitious profits from BLMIS.[21]  In connection with the Injunction Motion (defined herein),

---

[18] *See Trustee's Letter to Chambers re David Gross's Submission*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. filed Feb. 14, 2019), ECF No. 18478 (describing Trustee's efforts to meet and confer with Gross).

[19] Kuhn Decl., Ex. 1 (First Amended Complaint, *Picard v. Cohmad Secs. Corp., et al.*, No. 09-01305 (SMB), ¶ 1 (Bankr. S.D.N.Y. filed Oct. 8, 2009), ECF No. 82).

[20] *See id.* ¶¶ 63-65.

[21] *See id.* ¶ 138.

which resulted in the Injunction at issue here, the Cohmad Defendants represented that if a judgment was awarded for the Trustee in the Cohmad Action, they would not be able to satisfy that judgment.[22]  In connection with this Response, Spring represents that the same remains true.[23]

This Court and the District Court denied motions to dismiss filed by the Cohmad Defendants.[24]  In denying the Cohmad Defendants' motions, this Court introduced its opinion by asking "[l]ike Icarus, were the Cohmad Defendants singed by flying too close to the sun?" and noted "[d]espite his father's warnings, Icarus giddily flew higher toward the bright [Madoff] sun until it ultimately melted his wings of 'innocence,' sending him to his fate in the sea below."[25]  Similarly, Judge Rakoff found that the Trustee's allegations against the Cohmad Defendants "sufficiently allege actual knowledge of, and indeed participation in, every aspect of Madoff's Ponzi scheme . . . ."[26]  Thus, it is likely the Trustee will prevail on his claims in the Cohmad Action, including against Spring.

---

[22] *See* Declaration of Richard Spring, *Gross*, Adv. Pro. No. 10-04667, ECF No. 29 (filed October 30, 2013); Declaration of Maurice J. Cohn, *Gross*, Adv. Pro. No. 10-04667, ECF No. 30 (filed October 30, 2013).

[23] *See* Spring OSC Declaration ¶ 4.

[24] *Picard v. Cohmad*, 454 B.R. 317, 322 (Bankr. S.D.N.Y. 2011); *Secs. Inv'r Prot. Corp. v. BLMIS* (*In re Madoff Secs.*), No. 12 MC 115 (JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013).

[25] *Cohmad*, 454 B.R. at 322.

[26]  *Secs. Inv'r Prot. Corp.*, 2013 WL 1609154, at *5-7.

Since this Court issued its ruling on the motions to dismiss, several defendants, including

Cohmad and the estate of Maurice Cohn, have settled the Trustee's claims against them.[27]   Other

defendants, including Spring, are currently in the advanced stages of settlement or mediation

discussions with the Trustee.[28]

> ### D.     Gross's FINRA Arbitration against the Cohmad Defendants

Because he cannot legally obtain his fictitious profits directly from the fund of customer

property, Gross commenced the FINRA Arbitration on May 18, 2013, after the Trustee denied

his Customer Claims, seeking those same paper profits from Spring (the "FINRA Claim") and

others.   As to Spring, in the FINRA Claim Gross alleges that Spring approached him and

"suggested he could recommend a great investment opportunity."[29]   He further alleges that

Spring "made arrangements for me to go to a firm by the name of Cohmad at 885 Third Avenue

New York, New York 10022."[30] Gross alleges that he went to Cohmad's offices and met with

Cohn, who among other things "reinforced the indication that Mr. Spring had suggested to [me]

it was the proper thing to do."[31]   He further alleges that each following year, Mr. Spring "thanked

me for the confidence I had in his judgment by" providing him information for tax filings

concerning income from his Cohmad investment.[32]   He finally alleges that "about several years

---

[27] *See* 9019 Order.

[28] *See* Spring OSC Declaration, ¶ 3.

[29] Kuhn Decl., Ex. 3 (Statement of Claim) at 1.

[30] *Id.*

[31] *Id.* at 2.

[32] *Id.*

latter [*sic*,]" he "was advised" that he had sufficient assets in his account to open a separate

account with BLMIS, but "if I was told otherwise, I most probably drawn [*sic*] all my funds at

this time."[33]

Based on these allegations, Gross apparently seeks to recover the amounts shown on his

last BLMIS Account statements, which he attaches to his FINRA Statement of Claim.[34]  Spring,

together with Cohn and Cohmad, filed answers in the FINRA Arbitration on August 26, 2013,[35]

before the Injunction Order stayed the arbitration.

### E.    Trustee's Injunction Action and the Injunction Order

Upon learning about the FINRA Arbitration, the Trustee filed a motion (the "Injunction

Motion") on October 30, 2013 in the Gross Adversary Proceeding asking this Court to enforce

the automatic stay and enjoin the FINRA Arbitration.[36]  The Trustee argued that Gross, a "net

winner" whose Customer Claims were denied by the Trustee, was seeking to recover his

fictitious profits in the FINRA Arbitration in violation of the automatic stay.[37]  The Trustee

further argued that the Court should enjoin the FINRA Arbitration under section 105 of the

Bankruptcy Code because the FINRA Arbitration threatened the Court's jurisdiction and the

---

[33] *Id.* at 3-4.

[34] Kuhn Decl., Ex. 3 (Statement of Claim) at 3-4.  Gross indicates throughout his FINRA Claim that he is seeking the last BLMIS statement balance for his accounts, although for one account, he attaches the December 2007 statement and the amounts varies slightly from his last statement balance.  Gross also notes that he has received $800,000 in a tax refund that he appears to indicate should be set off against his award.

[35] Kuhn Decl. ¶ 6.

[36] *See* Memorandum of Law in Support of Trustee's Motion for Enforcement of the Automatic Stay and the Issuance of a Preliminary Injunction, *Gross*, Adv. Pro. No. 10-04667, ECF No. 27.

[37] *See id.* at 10-14.

administration of the Estate, and that Gross was improperly seeking to circumvent the Net Equity

Decision and claims administration process put in place by this Court (the "Claims

Administration Process").[38]

On December 4, 2013, this Court entered an Order enforcing the automatic stay and

issuing a preliminary injunction against Gross from proceeding with the FINRA Arbitration (as

defined earlier, the "Injunction").[39]  The Court found that the FINRA Arbitration violated the

automatic stay and certain stay orders entered by the district court (the "District Court Stay

Orders").[40]  The Court also found that the Trustee would suffer irreparable harm if the FINRA

Arbitration continued; that the Trustee had shown a strong probability of success on the merits;

that the FINRA Arbitration threatened the Court's jurisdiction and administration of the Estate;

and that an injunction was necessary to preserve and protect the Estate.[41]  Accordingly, the Court

granted the Injunction Motion and preliminarily enjoined the FINRA Arbitration until

completion of the Trustee's Cohmad Action, including the satisfaction by the Cohmad

Defendants of any settlement or judgment obtained by the Trustee.[42]  The Injunction Order was

not appealed.

---

[38] *Id.* at 15-21.

[39] *See* Injunction Order.

[40]  Injunction Order, Finding No. 2 ("The FINRA Action is violative of the automatic stay
provisions of Bankruptcy Code § 362(a), SIPA § 78eee(b)(2)(B)(i) and at least one of the related
orders entered by the United States District Court for the Southern District of New York dated
December 15, 2008, December 18, 2008, and February 9, 2009.")

[41] *Id.* Finding Nos. 3-5.

[42] *Id.* Decretal Paragraphs 1-3.

F.    **Post-2013 Injunction Case Law**

Since the Injunction was issued in 2013, several cases from this Court, the District Court

and the Second Circuit have clarified the standards surrounding the Trustee's ability to obtain

third-party injunctions.  It has become well established that a claim that is a disguised fraudulent

transfer claim against the Estate, or that is duplicative or derivative of the Trustee's avoidance

claims, violates the automatic stay established by 362(a).[43]  By contrast, a lawsuit by a third-

party plaintiff that articulates a colorable independent claim does not violate the automatic stay,

even if it seeks assets that the Trustee also seeks.[44]  In a decision issued yesterday affirming this

Court's injunction of third-party claims, *Marshall v. Capital Growth Co. et al.*, Case No. 17-CV-

02230, 2019 WL 1254658, at *6-*7 (S.D.N.Y. Mar. 19, 2019), the district court agreed that

third-party plaintiffs must state colorable independent claims.

In the bankruptcy context, "derivative claims" are claims "that arise from harm done to

the estate and that seek relief against third parties that pushed the debtor into bankruptcy."[45]  To

determine whether a claim is derivative, the courts "inquire into the factual origins of the injury

and, more importantly, into the nature of the legal claims asserted."[46]  That is, the way a claim is

labeled is "not conclusive, since plaintiffs often try, but are not permitted, to plead around a

---

[43] *Goldman v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 739 F. App'x 679, 684 (2d Cir. 2018); *Goldman*, 565 B.R. 510; *Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 546 B.R. 284 (Bankr. S.D.N.Y. 2016); *Goldman*, 2013 WL 5511027.

[44] *Goldman*, 739 F. App'x at 685; *Marshall v. Capital Growth Co. et al.*, Case No. 17-CV-02230, 2019 WL 1254658, at *6-*7 (S.D.N.Y. Mar. 19, 2019).

[45] *Marshall*, 740 F.3d at 89; *Goldman*, 739 F. App'x at 684.

[46] *Marshall*, 740 F.2d at 89; *Goldman*, 739 F. App'x at 684.

bankruptcy."[47]  By contrast, "when creditors have a claim for injury that is particularized as to

them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded

from doing so."[48] "Whereas a derivative injury is based upon a secondary effect from harm done

to the debtor, an injury is said to be particularized when it can be directly traced to the third

party's conduct."[49]

Determining whether a third-party complaint asserts derivative claims is similar to a

court's review of claims on a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), but is a distinct analysis.[50]  To state a non-derivative claim, a third-party plaintiff must

state a "bona fide" or "colorable" claim of individualized injury by the non-debtor defendant.[51]

Regardless of whether or not a third party claim violates section 362(a), the court may

award preliminary injunctive relief pursuant to section 105(a) if the third-party claim "poses the

---

[47] *Goldman*, 739 F. App'x at 684; *In re Tronox Inc.*, 855 F.3d 84, 100 (2d Cir. 2017).

[48] *Tronox*, 855 F.3d at 99 (internal quotation marks and alterations omitted).

[49] *Id.* at 100 (internal quotation marks and brackets omitted).

[50] See *Goldman*, 2013 WL 5511027, at *6 (reviewing third-party action to determine if they stated "bona fide" non-derivative claims); *see* Transcript of Oral Argument on September 24, 2013, *A & G Goldman P'ship v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, No. 12-CV-6109 (S.D.N.Y.) (Sullivan, J.) at 38:21-25 ("Trying to figure out what 'derivative' means and how it applies sort of feels like assessing the merits of the pleading for a securities claim under 12(b)(6). Feels like it. But they are distinct analyses."); *Marshall*, 2019 WL 1254658, at *8 (while the inquiry into whether a claim is barred by the permanent injunction does not involve a determination of whether the complaint would survive a 12(b)(6) motion to dismiss, "the substance of the allegations is relevant insofar as it helps us to determine whether, despite the label Appellants attach to it, the claim asserted is actually a disguised fraudulent transfer claim")(quoting *Goldman*, 739 F. App'x at 685).

[51] *Goldman*, 739 F. App'x at 685; *Goldman*, 2013 WL 5511027, at *6; *Goldman*, 565 B.R. at 522; *Secs. Inv'r Prot. Corp.*, 546 B.R. 284; *Marshall*, 2019 WL 1254658, at *6-*7.

specter of direct impact on the *res* of the bankruptcy estate."[52]  In determining whether a preliminary injunction is appropriate under section 105(a), the Second Circuit has expressly declined to rule which of two possible standards is controlling.  Either the Trustee may demonstrate that the action he seeks to enjoin would have an "immediate adverse economic consequence for the debtor's estate,"[53] or the Trustee may show a likelihood of irreparable harm pursuant to a traditional analysis under Fed. R. Civ. Pro. 65.[54]

G.    The *Fairfield* Decision

In *Fairfield*, plaintiffs (the "Anwar Plaintiffs") who were investors in the Fairfield Greenwich Group BLMIS feeder funds, brought a class action in federal district court (the "Anwar Action") against the funds and affiliated entities and individuals, alleging federal securities law violations, common law tort, breach of contract and quasi-contract causes of action.  Separately, the New York Attorney General (the "NYAG") brought an action in New York state court against Ezra Merkin and his investment company, Gabriel Capital Corporation, on behalf of New York investors who invested in BLMIS through Merkin (the "NYAG Action").[55]  The NYAG Action alleged that Merkin violated New York's Martin Act, its

---

[52] *Fairfield*, 762 F.3d at 211 (quoting *Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.)*, 676 F.3d 45, 57 (2d Cir. 1992)).

[53] *Queenie Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).

[54] *See Fairfield*, 762 F.3d at 212.

[55] The receiver (the "Receiver," and together with the NYAG and the Anwar Plaintiffs, the "Feeder Fund Plaintiffs") for two other funds managed by Merkin also filed suit (the "Receiver Action," and together with the NYAG Action and Anwar Action, the "Feeder Fund Actions") against Merkin and his investment company in New York state court on behalf of the funds' investors, alleging breach of fiduciary duties of candor and disclosure, and fraudulent misrepresentation of the nature of work performed by Merkin and other investment managers. The Trustee attempted to enjoin both the Receiver's action and NYAG Action and thus, the Receiver's action was also under review in *Fairfield*.

Executive Law and its Not for Profit Corporation Law by making material misrepresentations and omissions to, and breaching fiduciary duties owed to, the investors. The plaintiffs in the Feeder Fund Actions had reached proposed settlements with the defendants.

Shortly afterwards, the Trustee brought separate adversary proceedings to enjoin the settlements, arguing in both cases that (1) the Feeder Fund Actions and the settlements implicated property of BLMIS and thus were subject to the automatic stay, and (2) a preliminary injunction was appropriate because the settlements would have an immediate adverse economic effect on the Estate by affecting the Trustee's ability to collect on any judgment in the Trustee's avoidance actions against Merkin and affiliated entities. The District Court for the Southern District of New York in both instances denied the Trustee's motion, finding that the Feeder Fund Actions were independent from the Trustee's claims because they were based on duties owed directly by the defendants to the Feeder Fund Plaintiffs.[56]

On appeal, the Second Circuit affirmed. The Second Circuit reasoned that, in order to constitute derivative claims that belong to the Trustee, the Feeder Fund Actions had to be "contingent on Madoff or BLMIS's wrongful transfer of the funds sought in the Actions."[57] The court held that they were not because both complaints alleged breaches of duty owed by and fraudulent misrepresentations made by the defendants, not BLMIS.[58] These independent duties distinguished the Feeder Fund Actions from the Trustee's claims and placed them beyond the

---

[56] *See Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 490 B.R. 59, 68 (S.D.N.Y. 2013) (Marrero, J.); *Picard v. Schneiderman*, 491 B.R. 27, 36 (S.D.N.Y. 2013) (Rakoff, J.).

[57] *Fairfield,* 762 B.R. at 209.

[58] *Id.* at 209-10.

ambit of the automatic stay.[59]  The Second Circuit also rejected the Trustee's argument that the

Feeder Fund Plaintiffs were seeking to recover ahead of other creditors in violation of the

automatic stay, concluding that that policy concern was not implicated because the plaintiffs had

injuries particularized to themselves.[60]

Although the Second Circuit found that the Feeder Fund Actions did not violate the

automatic stay, it went on to consider whether the District Court had abused its discretion by

declining to award preliminary injunctive relief under section 105(a).  The court considered two

standards as to whether such relief might be warranted, and found neither was met.  First, the

Second Circuit found that it was not an abuse of discretion to conclude that the Trustee had not

identified "immediate harm" to the Estate as contemplated by *Quigley*.  Specifically, the impact

of the Feeder Fund Actions on the Trustee's actions against the same defendants would not be

"immediate" because the Trustee was in active litigation with those defendants and therefore his

interests were "contingent at best."[61]  Second, the Court found that the District Court had not

abused its discretion in finding that the Trustee had not satisfied the Rule 65 standards because

he had not demonstrated that it was "likely,"  as opposed to merely possible, that the Trustee

would succeed on the merits of his avoidance action or that any recovery in the third party action

would deplete the recovery available to the Estate.[62]

---

[59] *Id.* at 210.

[60] *Id.* at 211 (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995); *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416, 428 (1972).

[61] *Fairfield*, 762 F.3d at 212-13.

[62] *Id.*

## H.    Gross's Submissions to This Court and the Order to Show Cause

At the time the Injunction Order at issue here was entered, Gross did not file an appeal.

Gross was represented by counsel at the time and through the statutory time period to file an

appeal.  However, a few weeks following the issuance of the Order, Gross submitted a letter

referring to the Injunction Order and making a request "to be un enjoined."[63]  More recently,

Gross has submitted letters to this Court inquiring as to the status of the Injunction.[64]

On February 26, 2019, following Gross's recent letter submissions, the Court entered the

Order to Show Cause directing that:

> in light of the aforementioned settlements and binding precedent issued after the
> December 2013 Order, including *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d
> Cir. 2014), the Trustee show cause before the undersigned in Room 723 of the United
> States Bankruptcy Court for the Southern District of New York, One Bowling Green,
> New York, NY 10004 on March 27, 2019 at 10:00 a.m. (Eastern time), why the
> Bankruptcy Court's prior ruling and preliminary injunction should not be reconsidered on
> the grounds that (i) the FINRA Arbitration does not violate the Bankruptcy Code's
> automatic stay and (ii) the award of continued injunctive relief staying the FINRA
> Arbitration is inappropriate.[65]

The Trustee submits this response as directed by the Court in the Order to Show Cause.

---

[63] *Letter Submission*, Adv. Pro. No. 10-04667, ECF No. 45 (docketed January 27, 2014).

[64] *See Letter Submission*, Adv. Pro. No. 08-01789, ECF No. 18447 (docketed Jan. 29, 2019), at
pp. 29, 34, 36, 38 (page references are to the page numbers marked at the top of the page by the
Court's electronic filing system); *Letter Submission*, Adv. Pro. No. 08-01789, ECF No. 18475
(docketed Feb. 12, 2019), at pp. 1, 19; *Letter Submission*, Adv. Pro. No. 08-01789, ECF No. 18496
(docketed Feb. 15, 2019), at p. 4.

[65] Order to Show Cause, *Picard v. Gross*, Adv. Pro. No. 10-04667 (SMB) (Bankr. S.D.N.Y.
issued Feb. 26, 2019), ECF No. 101.

# ARGUMENT

## RECONSIDERATION OF THE INJUNCTION IS NOT WARRANTED[66]

### I.    NO NEW FACTS WARRANT RECONSIDERATION OF THE INJUNCTION

Although the Trustee has settled with Cohmad and the Cohn Estate, he has not yet settled

with Spring.  The Cohmad Settlements, which resolve only part of the action for which the

Trustee obtained an Injunction, therefore do not negate the continuing viability of the Injunction.

Spring, the remaining defendant, continues to aver that he does not have assets sufficient to pay

the Trustee's claims,[67] meaning that any funds recovered by Gross in the FINRA Arbitration

would correspondingly reduce the Trustee's ability to recover for the Estate.  On the other hand,

the facts in favor of the continuation of the Injunction now include that settlement negotiations

with Spring are finally, after approximately one year of mediation, at an advanced stage.[68]

---

[66] On a motion for reconsideration for relief from a judgment or order pursuant to Fed. R. Civ. P. 60(b), the "court may relieve a party . . . from a final judgment, order or proceeding for the following reasons . . . (2) newly discovered evidence . . .(5) the judgment has been satisfied, released, or discharged; . . .or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."  (Fed. R. Civ. P. 60(b).)  "Since 60(b) allows extraordinary judicial relief, it is invoked only if the moving party meets its burden of demonstrating 'exceptional circumstances.'"  *Picard v. The Lustig Family 1990 Trust et al.*, Adv. Pro. No. 10-04417, 2017 WL 6205381, at *2 (Bankr. S.D.N.Y. Dec. 6, 2017).  "In addition to demanding that the movant show 'exceptional circumstances,' the courts of this circuit also require that the evidence in support of the motion be highly convincing, that the movant show good cause for the failure to act sooner, and that no undue hardship be imposed on the other parties as a result." *Id.* (citing *Freedom, N.Y., Inc. v. United States*, 438 F. Supp. 2d 457, 462–63 (S.D.N.Y. 2006) (quotation and internal quotation marks omitted).)  This Response addresses whether new facts or intervening changes in controlling law warrant reconsideration given the high standard for reconsideration in this jurisdiction.

[67] Spring OSC Declaration ¶ 4.

[68] Spring OSC Declaration ¶ 3.

## II.    INTERVENING CHANGES IN CONTROLLING LAW DO NOT WARRANT RECONSIDERATION OF THE INJUNCTION

### A.    The FINRA Claim Violates the Automatic Stay

Section 362(a) of the Bankruptcy Code provides that an application to commence

liquidation proceedings under SIPA operates to stay "any act to obtain possession of property of

the estate or property from the estate or to exercise control over property of the estate."[69]  Section

362's scope is broad and prevents "any formal or informal action or legal proceeding that might

dissipate estate assets or interfere with the trustee's orderly administration of the estate."[70]

Section 362 prevents creditors able to act first from obtaining payment "in preference to and to

the detriment of other creditors."[71]

As the Injunction Order recognized, Gross is seeking such preferential treatment through

the FINRA Arbitration.  Gross was a BLMIS customer who filed Customer Claims to recover the

amounts shown on his last BLMIS account statements.  When the Trustee denied the Customer

Claims, Gross sought to recover the amount of those Claims from Spring and others in the

FINRA Arbitration.  Unlike the plaintiffs in *Fairfield*, Gross has not articulated a harm that is

separate and distinct from the loss of the balance reflected on his final BLMIS statements.  The

harm Gross alleges in the FINRA Arbitration is instead the same harm likewise suffered by

---

[69] 11 U.S.C. § 362(a)(3).

[70] *Fairfield*, 762 F.3d at 207.

[71] *In re Keene Corp.*, 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994); *In re Ampal-American Israel Corp.*, 502 B.R. 361, 369-70 (Bankr. S.D.N.Y. 2013) (the automatic stay "protects creditors against the acts of a creditor who attempts to jump the line and seize property of the estate to satisfy its claim").

every other BLMIS customer, rendering the FINRA Arbitration a disguised attempt to recover

claims against BLMIS from the Cohmad Defendants in violation of section 362(a)(1).[72]

In addition, it appears from the face of the FINRA Statement of Claim that as to Spring,

Gross is alleging nothing more than a derivative claim belonging to the Trustee, in violation of

Section 362(a)(3) of the Bankruptcy Code.  Gross does, unlike several third-party plaintiffs

whose claims have been enjoined by the Trustee, allege that he had direct contact with Spring.[73]

Nonetheless, as currently drafted, the allegations in the FINRA Statement of Claim do not state a

colorable claim that Spring caused a bona fide, legally cognizable and individualized injury to

Gross.  Gross alleges that Spring approached him with a "great investment opportunity"; that he

introduced Gross to Cohn; and that Spring contacted him once a year to "thank me for my

confidence in his judgment" and to provide tax forms from BLMIS.[74]  These allegations, without

more, do not state a bona fide claim against Spring.[75]

---

[72] For similar reasons, Gross is attempting to collect and recover on the Trustee's claim against
the debtor in violation of Section 362(a)(6), by seeking to recover out of the same pool of funds
from the same defendant, Spring.  *See Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corp.
Sys., Inc.)*, 108 F.3d 881, 884 (8th Cir. 1997) (collection by third parties on proceeds of sale of
allegedly fraudulently transferred trademark to satisfy prepetition judgment against debtor
violated section 362(a)(6) by seeking to collect on a claim against the debtor and "prejudiced the
trustee's ability to litigate a competing avoidance claim on behalf of all creditors").

[73] *Compare Goldman*, 739 F. App'x 679 (no contact between plaintiffs and non-debtor defendant
protected by injunction); *Marshall*, 2019 WL 1254658 (same).

[74] Kuhn Decl., Ex. 3 (Statement of Claim) at 1.

[75] In other submissions before this Court in this adversary proceeding and the main case, Gross
makes other statements about Spring.  (*See Letter Submission*, Adv. Pro. No. 10-04667, ECF No.
45 (docketed January 25, 2014), at pp. 1-2 ("Richard Spring invited me into the Bernard Madoff
investments."; "I gave mony [sic] to Richard Spring when he started as a representative of
Cohmad.  As of this writing Mr. Spring has not acknowledge [sic] knowing me.  We belonged to
the same golf club where he must have others, he had invested with Cohmad and BMIS . . ."; "I
David Gross trusted Richard Spring . . . ."); *Letter Submission*, Adv. Pro. No. 08-01789, ECF
No. 18447 (docketed January 29, 2019), at pp. 10, 24 ("My communication was with . . . Richard

This is particularly true given that the alleged statement – "great investment opportunity" – and the act of distributing tax forms, are indistinguishable from those directed toward all BLMIS customers, and echo the same general statement Madoff made publicly on the BLMIS website, in public statements, and elsewhere.[76]

The FINRA Arbitration stands in stark contrast to, for example, the Feeder Fund Actions at issue in *Fairfield*, which detailed the Feeder Fund Plaintiffs' fiduciary relationship with Merkin and the Fairfield funds and defendants, including their specific duties to the claimants,[77] and detailed allegations of specific misrepresentations[78] made by the feeder fund defendants to the Feeder Fund Plaintiffs.[79]

---

Spring . . . ."); *id.* at 26 ("I David Gross was one of Richard Spring [sic] first customer . . . ."); *Letter Submission*, Adv. Pro. No. 08-01789, ECF No. 187475 (docketed Feb. 12, 2019), at p. 11 (same). Even if those statements were in the Statement of Claim, and thus within the scope of this Court's review, these statements do not expand on any alleged conduct by Spring, and remain insufficient to state a colorable claim of particularized conduct.

[76] *See In re Bernard L. Madoff Inv. Secs. LLC*, No. 11-CV-2392, 2011 WL 7975167, at *16 (S.D.N.Y. Dec. 15, 2011) (affirming injunction of third-party actions because, among other reasons, "the lying that was done to one was the same lying that was done to all").

[77] *See Fairfield*, 762 F.3d at 209 (describing the Anwar Plaintiffs' allegations that the defendants fraudulently induced the Anwar Plaintiffs to invest in the defendant funds); *id.* at 209-10 (describing the NYAG's allegations that Merkin engaged in self-dealing by steering non-profit organizations to which he owed fiduciary duties towards BLMIS).

[78] *See Fairfield*, 762 F.3d at 209 (describing the Anwar Plaintiffs' allegations that the defendants fraudulent induced the Anwar Plaintiffs to invest in the defendant funds, and recklessly and negligently misrepresented the nature of their investment strategy and diligence of Madoff); *id.* at 209-10 (describing the NYAG's allegations that Merkin fraudulently held himself out as an "investing guru" when he was merely funneling money to BLMIS, and fraudulently collected management fees for work he let Madoff perform with virtually no supervision).

[79] The FINRA Arbitration is likewise distinguishable from other decisions where courts found that an injunction was not warranted because the third-party plaintiffs had articulated individualized harms. *See Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037 (2d Cir. 1986) (action for fraudulent inducement of contract found not to be property of the estate where complaint "alleged with particularity" that one of the debtor's principals made false assurances

### B.    The FINRA Claim Should Continue to be Enjoined Under Section 105(a)

#### 1.    Lifting the Injunction Now Would Have an Immediate Adverse Economic Consequence for the Estate and Would Cause Irreparable Harm

If Gross is permitted to proceed immediately with his claim against Spring in the FINRA Arbitration, there likely would be a swift and adverse impact on the mediation and potential settlement. Over the last year, the Trustee has been in a complex mediation with Spring, overseen by the Honorable (Ret.) Melanie Cyganowksi, to resolve his claims. Settlement discussions are now at an advanced stage, and given the prior settlements with Cohmad and Cohn, the Trustee is hopeful to achieve a consensual resolution. Following entry of the Court's Order to Show Cause, the issue of the Injunction was raised and discussed by the parties with the mediator, and counsel for the Trustee represented that he would seek to maintain the Injunction. Thus, the reconsideration and removal of the Injunction as to Spring at this stage would jeopardize the Trustee's extensive efforts on behalf of the Estate and customers.[80]

---

in order to induce movant to sign contract); *see also Highland Capital Mgmt. v. Chesapeake Energy Corp., (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575 (5th Cir. 2008) (bondholders' complaint did not violate automatic stay where particularized allegations of inducement were made in due diligence documents); *see Medsker v. Feingold*, 307 F. App'x 262 (11th Cir. 2008) (third-party control person complaint did not violate automatic stay where one defendant allegedly conceived of an aspect of the scheme, signed fictitious statements sent to the plaintiffs, and prepared fictitious subscription documents; and that another defendant was an officer and director, with the attendant duties and obligations). Courts upholding the Trustee's injunctions have repeatedly distinguished these cases, and they similarly have no application here. *See Marshall*, 511 B.R. at 393 (finding that *Medsker* asserted particularized harm); *see Marshall*, 2019 WL 1254658 at *10 (*Seven Seas*, *Thropp*, and *Medsker* distinguishable because complaints colorably alleged individualized harm).

[80] *See Picard v. Fox*, 429 B.R. 423, 430-31 (Bankr. S.D.N.Y. 2010) (threat posed to the estate by third-party actions against non-debtor defendants in Trustee's avoidance action was "particularly imminent" because the Trustee was "on the brink of a settlement" with the defendants, and the third-party actions would have undermined the "integrity of the SIPA proceedings and the Trustee's settlement negotiations for the benefit of the BLMIS estate and all of its customer claimants.")

Spring has represented that it remains true that he has insufficient assets to satisfy the Trustee's claims against him, and that he likely will not have sufficient assets reachable by the Trustee to satisfy a judgment on the Trustee's two-year claims.[81]  The only thing that has changed in this regard since the issuance of the Injunction is that all of the Trustee's claims have survived a motion to dismiss, and as to certain of them—specifically the claims for fictitious profits in the two years before the bankruptcy filing—the defendant faces a standard akin to strict liability.[82]  Thus any recovery Gross may obtain against Spring in the FINRA Arbitration would reduce the recovery available to the Trustee.[83]  Unlike in *Fairfield*, it is not merely "possible," but likely, the Trustee will recover at least his two-year claim against Spring.[84]  Also unlike in *Fairfield*, given the extensive settlement discussions, the Trustee is hopeful to achieve a consensual resolution in the near future.  Reconsidering the Injunction under these circumstances is detrimental to the Estate.

---

[81] Spring OSC Declaration ¶ 4.

[82] *See* Tr. of Oral Argument at 114:10-11, *Picard v. Marilyn Bernfeld Trust*, Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015), ECF No. 20; Tr. of Oral Argument at 100:19, *Picard v. Mendelow*, Adv. Pro. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015), ECF No. 85; *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *10-11 (Bankr. S.D.N.Y. Apr. 25, 2016) (Report and Recommendation to the District Court).

[83] *See The Lautenberg Found. v. Picard*, 512 F. App'x 18, 20-21 (2d Cir. 2013) (affirming preliminary injunction where third-party actions, if successfully, would draw down assets that the Trustee expected to recover in his fraudulent transfer actions).

[84] *Cf. Fairfield*, 762 F.3d at 213-24 ("The district court reasonably found that it was not likely that the Trustee would both prevail in his fraudulent conveyance actions and find himself unable to collect the resulting judgment as a result of the challenged settlements.")

2.    Interference with the SIPA Liquidation Proceeding and this Court's
Jurisdiction to Enforce the Net Investment Method is Also Grounds to
Maintain the Injunction

In addition, maintaining the Injunction is necessary to protect this Court's jurisdiction

and the Trustee's administration of the BLMIS liquidation.  In contrast to the Plaintiffs in

*Fairfield*, who were not BLMIS customers and articulated distinct harms caused by the third

party defendants, the FINRA Claim is nothing more than Gross's attempt to satisfy his claim for

his BLMIS losses by sidestepping the Claims Procedures Order.  Gross, already a net winner

facing an avoidance action by the Trustee, seeks to claim for himself funds that otherwise would

be recoverable by the Trustee and equitably distributed to all customers with an allowed claim.

If allowed to pursue the FINRA Claim, Gross would "end run" around the automatic stay and

avoid the jurisdiction of this Court and the procedures it has established.[85]  This Court already

has determined how customer claims should be valued and administered.[86]  Having been a

participant, Gross knows of the claims allowance process and the Court's ruling on Net Equity—

and Gross knows that as a net winner, he must return his profits to the Trustee.  The Trustee has

sued Gross to recover the fictitious profits he received from BLMIS.  Gross cannot avoid the

Claims Administration Process and the Trustee's fraudulent transfer action by seeking to recover

his profits from the Cohmad Defendants.

If the FINRA Claim proceeds, Gross stands to recover amounts to which he

would not be entitled under the Net Investment Method instituted by this Court.  If Gross

is permitted to proceed, any BLMIS customer dissatisfied with the Net Equity Decision

---

[85] *See Secs. Inv'r Prot. Corp.*, 546 B.R. at 304-05 (third-party actions would circumvent the Net
Equity Decision); *Fox*, 848 F. Supp. 2d at 490.

[86] *See In re Bernard L. Madoff Inv. Secs. LLC*, 424 B.R. at 126.

could bring a third-party action to get more than their fair share under the Net Equity

Decision. This is just the sort of conduct that SIPA and the Bankruptcy Code were

designed to prevent,[87] and that bankruptcy courts in numerous cases in this and other

jurisdictions have prohibited.[88] To allow Gross to proceed on the FINRA Claim would

allow a customer whose claim for fictitious profits was denied by this Court to seek the

same fictitious profits in another jurisdiction. This attempt to recover from a "shadow

estate" impairs this Court's jurisdiction.[89]

## CONCLUSION

The FINRA Claim does not articulate a colorable bona fide claim against Spring

that is distinct from the harm suffered by all BLMIS customers. Moreover, the Trustee's

interests in the Injunction are concrete and unconditional. The Trustee's success on, at a

minimum, his two year claims is not merely possible but virtually guaranteed, and

Spring's own assertion is that he likely will not have sufficient assets reachable by the

Trustee to satisfy that judgment.[90] Unlike in *Fairfield*, where the Trustee was in active

litigation with the Feeder Fund defendants, the Trustee is in the advanced stages of

---

[87] *See Secs. Inv'r Prot. Corp. v. Blinder, Robinson & Co.*, 962 F.2d 960, 965 (10th Cir. 1992) (SIPA "establishes procedures for the prompt and orderly liquidation of SIPC members") (internal citations and quotations omitted); *see also In re Shea & Gould*, 214 B.R. 739, 750 (Bankr. S.D.N.Y. 1993) (Bankruptcy Code seeks to prevent "race to the courthouse"); *In re Rubin*, 160 B.R. 269, 281 (Bankr. S.D.N.Y. 1993) (same); *Gross v. Russo (In re Russo)*, 18 B.R. 257, 265 (Bankr. E.D.N.Y. 1982) (same).

[88] *See, e.g.*, *Tronox*, 855 F.3d at 99 (automatic stay operates to prevent creditors from pursuing their own remedies against the debtor's property); *In re The 1031 Tax Group, LLC*, 397 B.R. 670, 684-85 (Bankr. S.D.N.Y. 2008); *In re Johns-Manville Corp.*, 91 B.R. 225, 228 (Bankr. S.D.N.Y. 1988); *In re Apostolou*, 155 F.3d 876 (7th Cir. 1998).

[89] *See Secs. Inv'r Prot. Corp.*, 546 B.R. at 304-05.

[90] *See* Spring OSC Declaration ¶ 4.

settlement with Spring after a complex, year-long mediation. Reconsidering the

Injunction as to Spring would immediately jeopardize these discussions by the Trustee on

behalf of the Estate and all customers.

The Trustee respectfully requests that the Court maintain the Injunction as to Spring

pending the completion of the Trustee's claim against Spring.


Dated:  March 20, 2019
        New York, New York

         */s/ David J. Sheehan*
        Baker & Hostetler LLP
        45 Rockefeller Plaza
        New York, New York 10111
        Telephone: (212) 589-4200
        Facsimile: (212) 589-4201
        David J. Sheehan
        Email: dsheehan@bakerhostetler.com
        Keith R. Murphy
        Email: kmurphy@bakerhostetler.com
        Tracy R. Cole
        Email: tcole@bakerlaw.com

        *Attorneys for Irving H. Picard, Trustee for the*
        *Substantively Consolidated SIPA Liquidation of*
        *Bernard L. Madoff Investment Securities LLC and the*
        *estate of Bernard L. Madoff*