**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05286 (SMB) |
| Plaintiff, | |
| v. | |
| LEGACY CAPITAL LTD., | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**IN SUPPORT OF THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

SECURITIES INVESTOR PROTECTION CORPORATION
1667 K Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 371-8300
JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
NATHANAEL S. KELLEY
Associate General Counsel

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ..................................................................................... ii

I.    The Trustee's Actions Under SIPA and the Bankruptcy Code to Avoid
      and Recover Fraudulent Transfers of Customer Property ..................................... 2

      A.    The Trustee may avoid fraudulent transfers of fictitious profits
            made in further of the BLMIS Ponzi scheme ................................................. 2

      B.    The Trustee's Net Investment Method determines BLMIS's
            net equity obligations to its customers and the extent to which
            transfers satisfy those obligations .................................................................. 3

      C.    The determination of the amount owed to Legacy in a Ponzi scheme
            necessarily nets transfers over the life of the account................................. 4

      D.    Section 548(c)'s value defense must be consistent with SIPA's
            protection of customers .................................................................................. 8

II.   The New York Uniform Commercial Code Defers to SIPA and
      Supports the Recovery of Fictitious Profits for Pro Rata Distribution ................. 10

      A.  SIPA and the Bankruptcy Code control the avoidance and
          recovery of fraudulent transfers of fictitious profits, consistent
          with SIPA and its goals ................................................................................. 11

      B.  The Second Circuit's *546(e)* Decision does not affect avoidance
          under § 548(a)(1)(A) or change the determination of value
          under § 548(c) ................................................................................................ 13

      C.  The New York Uniform Commercial Code does not support
          Legacy's antecedent debt argument .......................................................... 14

CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES:**                                                                                                                    **PAGE**

*In re Adler Coleman Clearing Corp.*, 198 B.R. 70 (Bankr. S.D.N.Y. 1996) ....................... 9

*Amer. Sur. Co. of N.Y. v. Sampsell*, 327 U.S. 269 (1946) ................................................... 12

*Arford v. Miller*, 239 B.R. 698 (S.D.N.Y. 1999),
    *aff'd*, 210 F.3d 420 (2d Cir. 2000) ........................................................................... 9

*In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010),
    *aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012),
    and *cert. den.*, 133 S.Ct. 24 and 133 S.Ct. 25 (2012) ................................................. 4

*In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011),
    *cert. dismissed*, 132 S. Ct. 2712 (2012),  and
    *cert. den.*, 133 S.Ct. 24 and 133 S.Ct. 25 (2012) ........................................... 4, 10, 15

*In re Bevill, Bresler & Schulman, Inc.*, 59 B.R. 353 (D.N.J.),
    *appeal dismissed*, 802 F.2d 445 (3d Cir. 1986) ...................................................... 12

*Donell v. Kowell*, 533 F.3d 762 (9th Cir.2008) ................................................................. 4

*In re Klein, Maus & Shire, Inc.*, 301 B.R. 408 (Bankr. S.D.N.Y. 2003) ............................. 9

*In re Lehman Bros. Holdings Inc.*, No. 17CV3762, 2018 WL 1441407,
    (S.D.N.Y. Mar. 22, 2018) ................................................................................. 12, 13

*In re Lehman Bros. Inc.*, 474 B.R. 139 (Bankr. S.D.N.Y. 2012) ........................................ 9

*Miller v. DeQuine (In re Stratton Oakmont, Inc.)*, 2003 WL 22698876,
    (S.D.N.Y. Nov. 14, 2003) ......................................................................................... 9

*In re MV Sec., Inc.*, 48 B.R. 156 (Bankr. S.D.N.Y. 1985) ................................................... 9

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
    445 B.R. 206 (Bankr. S.D.N.Y. 2011) ...................................................................... 2

*Picard v. Cohen (Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC)*,
    2016 WL 1695296 (Bankr. S.D.N.Y. April 25, 2016) ...................................... 2, 7, 13

*Picard v. Cohmad Securities Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
    454 B.R. 317 (Bankr. S.D.N.Y. 2011), *leave to appeal den.*,
    2012 WL 5511952 (S.D.N.Y. Nov. 14, 2012) ............................................................ 2

# TABLE OF AUTHORITIES
### (cont.)

**CASES:**                                                                                      **PAGE**

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
    773 F.3d 411 (2d Cir. 2014), *cert. den.*, ___ U.S. ___, 135 S. Ct. 2858 and
    135 S. Ct. 2859 (2015) ..........................................................................................13

*Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011), *abrogated on other grounds by*
    *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    513 B.R. 437 (S.D.N.Y. 2014) .................................................................................. 3

*Picard v. Lowrey (In re Bernard L. Madoff Inv. Sec. LLC)*,
    18 Civ. 5381, 2019 WL 479185, (S.D.N.Y. Feb. 7, 2019),
    *appeal docketed*, No. 19-510 (2d Cir. Feb. 20, 2019) ................................... 6, 11, 14

*Picard v. Lowrey (In re Bernard L. Madoff Inv. Sec. LLC)*, No. AP 08-01789,
    2018 WL 1442312, (Bankr. S.D.N.Y. Mar. 22, 2018),
    *as corrected* (Mar. 26, 2018) ................................................................................ 14

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87
    (Bankr. S.D.N.Y.), *leave to appeal den. sub nom. Picard v. Estate of Madoff,*
    464 B.R. 578 (S.D.N.Y. 2011) ................................................................................... 2

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010), *leave to appeal den.*,
    2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011)............................................................ 2

*Rosenman Family, LLC v. Picard*, 395 F. App'x 766 (2d Cir. 2010) ................................ 8

*Rosenman Family, LLC v. Picard (Sec. Inv'r Prot. Corp. v.*
    *Bernard L. Madoff Inv. Sec. LLC)*, 401 B.R. 629 (Bankr. S.D.N.Y.),
    *aff'd,* 420 B.R. 108 (S.D.N.Y. 2009), *aff'd*, 395 F. App'x 766 (2d Cir. 2010) .......... 2

*Sagor v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*, 697 F. App'x 708
    (2d Cir. 2017)................................................................................................10, 12

*SEC v. Howard Lawrence & Co.*, 1 Bankr. Ct. Dec. 577 (S.D.N.Y. 1975) .......................... 9

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    476 B.R. 715 (S.D.N.Y. 2012), *supplemented* (May 15, 2012),
    *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*,
    773 F.3d 411 (2d Cir. 2014) ........................................................................... 3, 4, 6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    499 B.R. 416 (S.D.N.Y. 2013) ........................................................................ 6, 7, 8

# TABLE OF AUTHORITIES
### (cont.)

**CASES:**                                                                                            **PAGE**

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) ............................................................... 2, 6, 13

*Sec. Inv'r Prot. Corp. v. Pepperdine Univ. (In re Brentwood Sec., Inc.),*
    925 F.2d 325 (9th Cir. 1991) ......................................................................... 9

*Stafford v. Giddens (In re New Times Securities Services, Inc.),*
    463 F.3d 125 (2d Cir. 2006) .......................................................................... 9

*In re Tribune Co. Fraudulent Conveyance Litigation,* No. 11-MD-2296 (RJS),
    2018 WL 6329139 (S.D.N.Y. Nov. 30, 2018), *reconsideration denied,*
    2019 WL 549380 (S.D.N.Y. Feb. 12, 2019) ............................................... 7

*In re Tribune Co. Fraudulent Conveyance Litigation,* No. 11MD2296 (DLC),
    2019 WL 294807 (S.D.N.Y. Jan. 23, 2019) ............................................... 7


**STATUTES AND RULES:**

Securities and Exchange Act of 1934,

28(a) ................................................................................................................ 11, 13
28(a)(2) ............................................................................................................ 11

Securities Investor Protection Act, as amended, 15 U.S.C. §

78eee(d) ........................................................................................................... 1
78bbb ............................................................................................................... 11, 13
78fff(b) ............................................................................................................. 8
78fff(e) ............................................................................................................. 9
78fff-2(b) .......................................................................................................... 3
78fff-2(c)(1) ...................................................................................................... 8, 9
78fff-2(c)(1)(B) ................................................................................................. 8
78fff-2(c)(3) ...................................................................................................... 1
78fff-3(a) .......................................................................................................... 9
78lll(4) .............................................................................................................. 9
78lll(11) ............................................................................................................ 4, 8

# TABLE OF AUTHORITIES
### (cont.)

**STATUTES AND RULES:**                                                    **PAGE**

United States Bankruptcy Code, as amended, 11 U.S.C. §

544 ................................................................................................................ 14
545 ................................................................................................................ 14
546(e) ...................................................................................................... 13, 14
547 ................................................................................................................ 14
548(a)(1) ............................................................................................... *passim*
548(a)(1)(A) ................................................................................ 1, 2, 13, 14
548(a)(1)(B) ................................................................................................ 14
548(b) .......................................................................................................... 14
548(c) ...................................................................................................... *passim*
548(d)(2)(A) ................................................................................................ 11
550(a) .......................................................................................................... 1
726 ............................................................................................................... 9

New York Uniform Commercial Code Law §

8-102(a)(9) .................................................................................................. 15
8-501 ........................................................................................................... 11
8-501, cmt. 5 .............................................................................................. 15
8-501(b) ...................................................................................................... 15
8-501(b)(1) ................................................................................................. 10
8-502, cmt. 4 .............................................................................................. 16
8-503(b) ...................................................................................................... 16
8-503, cmt. 1 .............................................................................................. 12

The Securities Investor Protection Corporation ("SIPC")[1] submits this memorandum of law in support of the motion for summary judgment filed by Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–78*lll* ("SIPA"),[2] and Bernard L. Madoff ("Madoff"), against Legacy Capital Ltd. ("Legacy").

In this adversary proceeding, the Trustee seeks to avoid and recover, under the Bankruptcy Code, 11 U.S.C. §§ 548(a)(1)(A) and 550(a), and SIPA § 78fff-2(c)(3), the transfers of fictitious profits to Legacy made in furtherance of the BLMIS Ponzi scheme. In opposition, Legacy argues that under Bankruptcy Code § 548(c), it may retain those transfers it took in good faith and for value. SIPC writes to respond to Legacy's assertion that, beyond the value provided for the return of principal, state-law security entitlements create enforceable and unavoidable obligations which were satisfied, dollar for dollar, by the transfer of fictitious profits from BLMIS to Legacy.

Legacy misunderstands its state law rights under the New York Uniform Commercial Code, which explicitly yield to SIPA for the determination of claims and value in the liquidation of an insolvent brokerage firm. The Trustee's calculation of value as the return of principal follows well-established precedent and necessarily adjusts for transfers over the life of Legacy's account—not just the two years prior to the filing date in which the Trustee may avoid and recover transfers. Moreover, to the extent that it has

---

[1] SIPC is a party-in-interest and a statutory intervenor in all liquidations under the Securities Investor Protection Act. *See* 15 U.S.C. § 78eee(d).

[2] For convenience, further references to SIPA shall omit "15 U.S.C."

any impact, the New York Uniform Commercial Code supports the Trustee's calculation

of the value of Legacy's BLMIS account.

I.      **The Trustee's Actions Under SIPA and the Bankruptcy Code to Avoid and Recover Fraudulent Transfers of Customer Property**

      A.      **The Trustee may avoid fraudulent transfers of fictitious profits made in further of the BLMIS Ponzi scheme**

As this Court has repeatedly held, the Trustee, by proving the existence of a Ponzi

scheme, establishes the elements of § 548(a)(1)(A) for avoidance of fraudulent transfers

in furtherance of the Ponzi scheme made within two years of the filing date (the "Two-

Year Period"). *See, e.g., Picard v. Cohen (Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv.

Sec. LLC)*, 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. April 25, 2016) ("*Cohen*"); *Sec. Inv'r

Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015)

("*Omnibus Good Faith Decision*"); *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec.

LLC)*, 458 B.R. 87, 104–05 (Bankr. S.D.N.Y.) ("As a matter of law, the 'Ponzi scheme

presumption' establishes the debtors' fraudulent intent as required under . . . the

[Bankruptcy] Code...."), *leave to appeal den. sub nom. Picard v. Estate of Madoff,* 464

B.R. 578 (S.D.N.Y. 2011); *Picard v. Cohmad Securities Corp. (In re Bernard L. Madoff

Inv. Sec. LLC),* 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011), *leave to appeal den.*, 2012 WL

5511952 (S.D.N.Y. Nov. 14, 2012); *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,

445 B.R. 206, 220 (Bankr. S.D.N.Y. 2011); *Picard v. Merkin (In re Bernard L. Madoff Inv.

Sec. LLC)*, 440 B.R. 243, 255 (Bankr. S.D.N.Y. 2010), *leave to appeal den.*, 2011 WL

3897970 (S.D.N.Y. Aug. 31, 2011); *Rosenman Family, LLC v. Picard (Sec. Inv'r Prot.

Corp. v. Bernard L. Madoff Inv. Sec. LLC)*, 401 B.R. 629, 632 n.2 (Bankr. S.D.N.Y.), *aff'd,*

420 B.R. 108 (S.D.N.Y. 2009), *aff'd*, 395 F. App'x 766 (2d Cir. 2010).

**B.    The Trustee's Net Investment Method determines BLMIS's net equity obligations to its customers and the extent to which transfers satisfy those obligations**

Once voidability of a fraudulent transfer made within the Two-Year Period has been determined under § 548(a)(1), however, the transferee may, under § 548(c), retain a voidable fraudulent transfer to the extent that the transferee took the transfer for value and in good faith. 11 U.S.C. § 548(c). Because Legacy's receipt of the fraudulent transfers in good faith is no longer an issue, the sole question becomes whether Legacy provided value in exchange for the fraudulent transfers. *See Picard v. Katz*, 462 B.R. 447, 453 (S.D.N.Y. 2011) ("As for transfers made by Madoff Securities to its customers in excess of the customers' principal—that is, the customers' profits—these were in excess of the 'extent' to which the customers gave value, and hence, if adequately proven, may be recovered regardless of the customers' good faith."), *abrogated on other grounds by Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 437 (S.D.N.Y. 2014).

The calculation of a customer's "net equity" is, in essence, a determination of the obligations the debtor owes its customers. *See* SIPA § 78fff-2(b) ("[T]he trustee shall promptly discharge . . . all obligations of the debtor to a customer relating to, or net equity claims based upon, securities or cash . . . ."). Accordingly, an investor's net equity appropriately measures the extent to which a customer's withdrawals provided value to the estate by satisfying the debtor's actual obligations. Additionally, "every circuit court to address this issue has concluded that an investor's profits from a Ponzi scheme, whether paper profits or actual transfers, are not 'for value.'" *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 725 (S.D.N.Y. 2012) ("*Greiff*"), *supplemented* (May 15, 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014). Thus, to determine the value provided by a transferee, the

3

Trustee applied the Net Investment Method approved by this Court and the Second Circuit for the determination of a customer's net equity. *See In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 135, 140 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011) (the "*Net Equity Decision*"), *cert. dismissed*, 132 S. Ct. 2712 (2012), and *cert. den.*, 133 S.Ct. 24 and 133 S.Ct. 25 (2012); *see also* SIPA § 78*lll*(11). In rejecting the use of customer statements to value an account, the Second Circuit stated that doing so "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." 654 F.3d at 235.

The Trustee's approach to valuation under § 548(c) was approved by the District Court, which explicitly defined how the Net Investment Method applied to the calculation of the amounts recoverable by the Trustee in this liquidation:

> As for the calculation of how much the Trustee may recover under these claims, the Court adopts the two-step approach set forth in *Donell v. Kowell*, 533 F.3d 762, 771–72 (9th Cir.2008). First, amounts transferred by Madoff Securities to a given defendant at any time are netted against the amounts invested by that defendant in Madoff Securities at any time. Second, if the amount transferred to the defendant exceeds the amount invested, the Trustee may recover these net profits from that defendant to the extent that such monies were transferred to that defendant in the two years prior to Madoff Securities' filing for bankruptcy. Any net profits in excess of the amount transferred during the two-year period are protected from recovery by the Bankruptcy Code's statute of limitations. *See* 11 U.S.C. § 548(a)(1).

*Greiff*, 476 B.R. at 729.

## C.    The determination of the amount owed to Legacy in a Ponzi scheme necessarily nets transfers over the life of the account

Legacy argues that § 548(a)(1)'s Two-Year Period prevents the Trustee from netting Legacy's investment over the life of its account. Instead, Legacy argues, the Trustee must take the account value as provided on the December 2006 account statement—i.e., the purported value of the account, including fictitious profits, as of two

years prior to the filing date of the liquidation—and net any subsequent transfers against that value. The Trustee's calculation of liability, however, is not—and does not require— an avoidance under § 548(a)(1) of any and all transfers and purported obligations over the life of the account, and it is not limited to the Two-Year Period any more than the Trustee's calculation of BLMIS's net equity obligations is time-limited.

Under § 548(a)(1), the Trustee may avoid an actually fraudulent transfer "that was made or incurred on or within 2 years before" the filing date. 11 U.S.C. § 548(a)(1). Legacy objects to the Trustee's use of the net investment method over the life of the account to calculate value and its avoidance liability. Legacy insists that the Two-Year Period of § 548(a)(1) is a statute of repose which must be strictly enforced and cannot be equitably tolled, and it asserts that Trustee's calculation of value to the estate—which ignores the face value of the fictitious statements generated outside of the Two-Year Period and which nets deposits and withdrawals over the life of the account—necessarily violates § 548(a)(1)'s statute of repose. Legacy believes instead that such statements and withdrawals must be avoided in order to determine the value under § 548(c). Since the Trustee cannot do so beyond the Two-Year Period, Legacy asks the Court to value its account principal according to its statements at the beginning of the Two-Year Period, netting any deposits and withdrawals during the Two-Year Period against this amount.

Calling § 548(a)(1) a statute of repose, however, is largely an academic diversion in this case, because treating § 548(a)(1) as a statute of repose does not change the result. The Trustee's calculation does not depend upon tolling or expanding the Two-Year Period in § 548(a)(1). The Trustee has strictly limited his avoidance causes of action to the recovery of transfers made within the Two-Year Period. While the Trustee's calculations of deposits and withdrawals extend over the life of the account beyond the

Two-Year Period, the calculation of value for § 548(c)'s purposes is not an avoidance action, nor is it limited to the Two-Year Period. *See Picard v. Lowrey (In re Bernard L. Madoff Inv. Sec. LLC)*, 18 Civ. 5381 (PAE), 2019 WL 479185, at *15 (S.D.N.Y. Feb. 7, 2019) ("*Lowrey*"), *appeal docketed*, No. 19-510 (2d Cir. Feb. 20, 2019).

Indeed, in defining the calculation of value over the life of the account, neither this Court nor the District Court has stated or even intimated that the time limitation of § 548(a)(1) must be tolled in order to account for all deposits and withdrawals. *See, e.g.*, *Greiff*, 476 B.R. at 729 ("First, amounts transferred by Madoff Securities to a given defendant *at any time* are netted against the amounts invested by that defendant in Madoff Securities *at any time*." (emphasis added)); *Omnibus Good Faith Decision*, 531 B.R. at 460 ("[The Trustee] offsets all deposits and withdrawals during the life of the account, but he cannot recover more than the amount transferred during the two years preceding the filing date."). To the contrary, in approving the Trustee's calculation of avoidance liability, rather than tolling the statute of limitations or equitably expanding or disregarding it, the District Court explicitly recognized and enforced the Two-Year Period. *Greiff*, 476 B.R. at 729 ("Any net profits in excess of the amount transferred during the two-year period are protected from recovery by the Bankruptcy Code's statute of limitations.").

Legacy's argument has been considered and rejected by this Court and the District Court, most recently in *Lowrey*, 2019 WL 479185, at *14–15, which adopted the *Antecedent Debt Decision. Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416 (S.D.N.Y. 2013) (the "*Antecedent Debt Decision*"). In the *Antecedent Debt Decision*, the defendants asserted that the Trustee's calculation of account value using deposits and withdrawals over the life of the account improperly "circumvent[ed] the

limitation of the statutory reach-back period to indirectly avoid and recover time-barred withdrawals . . . ." *Id.* at 427. The District Court called the defendants' arguments "a mischaracterization of what is occurring under the Net Investment Method." *Id.* While noting that the Two-Year Period "serves to allow finality to ancient transactions," the District Court nevertheless emphasized that the identification of voidable transactions during the Two-Year Period is separate from the calculation of value to the estate under § 548(c), which has no time limitation. *Id.*; *see also Cohen*, 2016 WL 1695296, at *8 ("Bankruptcy Code § 548(c) is not an element of the Trustee's avoiding powers; instead, it is an affirmative defense to an otherwise avoidable transfer."). "Thus, there is no reason why a line should be drawn at the beginning of the [Two-Year Period] in determining whether a transfer was for value." 499 B.R. at 427. As the District Court noted, the Trustee's Net Investment Method supports the equitable treatment of all customers, as mandated by SIPA. *See id.* at 428.

Legacy has not identified any case in which a time limitation was imposed on the calculation of "value" in a Ponzi scheme, and it has no basis for limiting the determination of "value" to the two years prior to the liquidation of BLMIS. Legacy's citations to the *In re Tribune Co. Fraudulent Conveyance Litigation* cases are unavailing. *See* No. 11-MD-2296 (RJS), 2018 WL 6329139 (S.D.N.Y. Nov. 30, 2018), *reconsideration denied*, 2019 WL 549380 (S.D.N.Y. Feb. 12, 2019); No. 11MD2296 (DLC), 2019 WL 294807 (S.D.N.Y. Jan. 23, 2019). Both of these decisions assume the existence of a valid obligation as antecedent debt. In the BLMIS Ponzi scheme, however, Legacy holds no antecedent debt for fictitious profits, and BLMIS has no enforceable obligation to steal money from other investors in order to pay Legacy for its invented trades.

**D.    Section 548(c)'s value defense must be consistent with SIPA's protection of customers**

Legacy's assertion that fictitious trades and profits can provide value for a transfer of customer property runs counter to the purposes of SIPA. In a SIPA proceeding, customers share, *pro rata*, in customer property based upon their "net equity," the net amount owed by the debtor to any customer. *See* SIPA §§ 78fff-2(c)(1) and 78*lll*(11). Specified provisions of the Bankruptcy Code, including § 548, apply to a SIPA liquidation proceeding only "[t]o the extent consistent with the provisions of [SIPA]." SIPA § 78fff(b). In its *Antecedent Debt Decision*, the District Court found that "value" under Bankruptcy Code § 548(c) must therefore be consistent with SIPA. Under SIPA, each investor is treated equitably by "providing for recovery of customer property and pro rata distributions based on each customer's net equity claim, rather than merely letting those who came out ahead to retain the amounts obtained." 499 B.R. at 425. Accordingly, where the Trustee is seeking to avoid transfers of customer property in a Ponzi scheme, § 548(c) is consistent with SIPA only to the extent of recognizing value for investments of principal. Federal and state law claims cannot be used to increase the amount to which the customer is entitled. 499 B.R. at 426.

The notion that the value defense applies only to the extent of net principal deposited by the investor comports with the treatment of claims under SIPA. The SIPA proceeding is intended to resolve all claims against a debtor, including not only customer, but general creditor, claims. *See Rosenman Family, LLC v. Picard*, 395 F. App'x. at 768 ("SIPA liquidations involve two kinds of claimants: customers and general unsecured creditors."). Customers receive priority treatment by sharing, *pro rata*, in any fund of customer property, to the exclusion of general creditors. *See* SIPA

§§ 78fff-2(c)(1)(B) and 78*lll*(4). To the extent customer property is insufficient, SIPC advances funds within certain limits to satisfy the balance of customer claims. SIPA § 78fff-3(a). If such claims still are not fully satisfied, the customers share in any general estate with general creditors, on a non-priority basis. SIPA § 78fff-2(c)(1). Estate property is distributed in accordance with § 726 of the Bankruptcy Code. SIPA § 78fff(e). *See Stafford v. Giddens (In re New Times Securities Services, Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006).

The main purpose of SIPA is not to prevent fraud but to "reverse losses resulting from brokers' insolvency." *Miller v. DeQuine (In re Stratton Oakmont, Inc.)*, 2003 WL 22698876, at *5 (S.D.N.Y. Nov. 14, 2003). Thus, SIPA does not "shield investors from the whims of the marketplace" nor does it "'guarantee that customers will recover their investments which may have diminished as a result of, among other things, market fluctuations or broker-dealer fraud.'" *Id.* (citations omitted); *see Sec. Inv'r Prot. Corp. v. Pepperdine Univ. (In re Brentwood Sec., Inc.)*, 925 F.2d 325, 330 (9th Cir. 1991) (SIPA "does not comprehensively protect investors from the risk that some deals will go bad or that some securities issuers will behave dishonestly); *In re MV Sec., Inc.*, 48 B.R. 156, 160 (Bankr. S.D.N.Y. 1985) (no SIPA protection for innocent investor against broker's fraud). Because claims for damages based on misrepresentation, fraud, or breach of contract do not involve the return of customer property entrusted to the broker, they are general creditor claims, not "customer" claims. *In re Lehman Bros. Inc.*, 474 B.R. 139, 149 (Bankr. S.D.N.Y. 2012); *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 421 (Bankr. S.D.N.Y. 2003); *Arford v. Miller*, 239 B.R. 698, 701 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 420 (2d Cir. 2000); *In re Adler Coleman Clearing Corp.*, 198 B.R. 70, 75 (Bankr. S.D.N.Y. 1996); *SEC v. Howard Lawrence & Co.*, 1 Bankr. Ct. Dec. 577, 579 (S.D.N.Y. 1975). In

sum, to treat the avoidance defendant as entitled to more than the return of principal is inconsistent with the treatment of customers under SIPA.

## II.    The New York Uniform Commercial Code Defers to SIPA and Supports the Recovery of Fictitious Profits for Pro Rata Distribution

Legacy argues that in order to recover the fictitious profits, the Trustee must first avoid the purported obligations of BLMIS to Legacy created by the New York Uniform Commercial Code § 8-501(b)(1). It contends that the account statements showing trades made for Legacy created obligations, and absent avoidance of these obligations, Legacy is entitled to keep what the statements showed.

In arguing that the Trustee must avoid each fictitious securities position, Legacy treats each "trade" as real and as creating an obligation in the amount of the fake profit. Not only is there no basis for its position, but it contradicts the pronouncement by the Second Circuit in this liquidation proceeding on at least two occasions. In the *Net Equity Decision*, the Second Circuit observed that "the BLMIS customer statements reflect impossible transactions and the Trustee is not obligated to step into the shoes of the defrauder or treat the customer statements as reflections of reality." 654 F.3d at 242. The Court reiterated this view in *Sagor v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*, 697 F. App'x 708 (2d Cir. 2017), where it stated: "[w]e continue to refuse, however, to 'treat[] fictitious and arbitrarily assigned paper profits as real' and to give 'legal effect to Madoff's machinations.'" *Id.* at 713 (quoting the *Net Equity Decision*, 654 F.3d at 235).

The leap of faith that Legacy erroneously asks this Court to make is that its settlement payments and security entitlements necessarily equate with "value," superseding SIPA and the Bankruptcy Code's avoidance and recovery provisions.

"Value," as used in § 548(c), however, is not defined as a "settlement payment" or a "security entitlement" but, in relevant part, as a payment on account of a present or antecedent debt. *See* § 548(d)(2)(A). The fictitious account statements issued to Legacy created no obligation by BLMIS to pay Legacy profits that (a) were imaginary and, therefore, (b) were not owed to it. In other words, the security entitlements had no value beyond Legacy's invested principal. Because BLMIS did not owe Legacy fictitious profits, the transfer of fictitious profits did not satisfy any obligation and, therefore, provided no "value." *See Lowrey*, 2019 WL 479185, at *9 ("Because defendants have recovered their initial investment with BLMIS, their claims to recoup more would not qualify as antecedent debts in the first place."). The U.C.C. does not change this result.

### A.    SIPA and the Bankruptcy Code control the avoidance and recovery of fraudulent transfers of fictitious profits, consistent with SIPA and its goals

In support of its argument that state law creates unavoidable obligations represented by its fictitious account statements, Legacy contends that because Section 28(a) of the 1934 Act, 15 U.S.C. § 78bb(a), applies to a SIPA proceeding, any state law remedies, including N.Y. U.C.C. Law § 8-501, preserved under federal securities law must be available to it. The federal securities law provisions cited by Legacy do not apply as it suggests, nor does state law control.

As an initial matter, Legacy omits to mention that the provisions of the 1934 Act apply only unless SIPA provides otherwise. As stated in SIPA § 78bbb,

> *Except as otherwise provided in this chapter* [SIPA], the provisions of the Securities Exchange Act of 1934 . . . apply as if this chapter constituted an amendment to, and was included as a section of, such Act.

SIPA § 78bbb (emphasis added). Legacy relies upon Section 28(a)(2) of the 1934 Act which specifies that rights and remedies under the 1934 Act supplement rights and

remedies otherwise available at law or in equity. There are no remedies at law, however, including under New York state law or in equity, to change the District Court's holdings that the return of fictitious profits cannot provide value.

Additionally, the U.C.C. itself recognizes that it does not trump SIPA in an insolvency proceeding. Official Comment 1 to § 8-503 of the New York Uniform Commercial Code explains:

> Although this section describes the property interest of entitlement holders in the assets held by the intermediary, it does not necessarily determine how property held by a failed intermediary will be distributed in insolvency proceedings. If the intermediary fails and its affairs are being administered in an insolvency proceeding, the applicable insolvency law governs how the various parties having claims against the firm are treated. For example, the distributional rules for stockbroker liquidation proceedings under the Bankruptcy Code and Securities Investor Protection Act ("SIPA") provide that all customer property is distributed pro rata among all customers in proportion to the dollar value of their total positions, rather than dividing the property on an issue by issue basis. For intermediaries that are not subject to the Bankruptcy Code and SIPA, other insolvency law would determine what distributional rule is applied.

N.Y. U.C.C. Law § 8-503 cmt. 1 (McKinney); *see Sagor,* 697 F. App'x at 712–13; *see also Amer. Sur. Co. of N.Y. v. Sampsell,* 327 U.S. 269, 272 (1946) ("[F]ederal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors"); *In re Bevill, Bresler & Schulman, Inc.,* 59 B.R. 353, 378 (D.N.J.), *appeal dismissed,* 802 F.2d 445 (3d Cir. 1986) (state law that is inconsistent with SIPA is preempted). Thus, in the liquidation of Lehman Brothers Holdings Inc., the District Court affirmed this Court's holding that SIPA extinguished the debtor's pre-liquidation U.C.C. obligations to transfer financial assets because "allowing the claims at issue here would be inconsistent with SIPA's provisions." *In re Lehman Bros. Holdings Inc.,* No. 17CV3762, 2018 WL 1441407, at *9 (S.D.N.Y. Mar. 22, 2018). Furthermore, "while the Bankruptcy Code provides for the allowance of general claims, it does so in a SIPA proceeding only to the

extent that it does not undermine SIPA's remedial purposes and the Trustee's statutorily prescribed duties." *Id.*

As described above, SIPA defines the obligations that a debtor-broker owes to its customers through its net equity calculation. Whatever remedies Legacy believes it has outside of SIPA and the Bankruptcy Code (where consistent with SIPA), those remedies are not available to it here. *Cf. Omnibus Good Faith Decision*, 531 B.R. at 465 (under New York law, fictitious profits not recoverable as an element of damages under the U.C.C.). The Second Circuit already has twice concluded in this liquidation proceeding that payment of fictitious profits as shown on the customers' account statements is unavailable under SIPA, and it has approved of the Trustee's calculation of BLMIS's net equity obligations. A contrary result under state law or Section 28(a) of the 1934 Act would be inconsistent with SIPA and would make Section 28(a) inapplicable under SIPA § 78bbb.

### B.   The Second Circuit's *546(e) Decision* does not affect avoidance under § 548(a)(1)(A) or change the determination of value under § 548(c)

In response to the weight of authority against it, Legacy points to the Second Circuit's *546(e) Decision*, which held that transfers from BLMIS to its customer qualified for the safe harbor of Bankruptcy Code § 546(e). *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 422–23 (2d Cir. 2014) (the "*546(e) Decision*"), *cert. den.*, ___ U.S. ___, 135 S. Ct. 2858 and 135 S. Ct. 2859 (2015). As this Bankruptcy Court already has acknowledged, however, the Second Circuit did not decide in the *546(e) Decision* that the fictitious account statements were enforceable according to their terms. *Cohen*, 2016 WL 1695296, at *12 n.17. § 546(e)

limits avoidance actions, but not if, as here, avoidance is under § 548(a)(1)(A). In

relevant part, § 546(e) provides:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this
> title [Title 11], the trustee may not avoid a transfer that is a . . . settlement
> payment . . . made by or to . . . a . . . stockbroker . . . in connection with a
> securities contract . . ., *except under section 548(a)(1)(A) of this title.*

11 U.S.C. § 546(e) (emphasis added). Whether or not its transactions were made in

connection with securities contracts, and whether or not the payment was a settlement

payment, are beside the point. The actions at hand are under § 548(a)(1)(A), and

§ 546(e), by its express terms, presents no bar, nor does it inflate the calculation of a

value defense under § 548(c). *See Lowrey*, 2019 WL 479185, at *11 ("[T]he Second

Circuit did not, in *Ida Fishman* or elsewhere, upset 'the general rule in Ponzi scheme

cases limiting value to principal deposits.'" (quoting and adopting *Picard v. Lowrey (In*

*re Bernard L. Madoff Inv. Sec. LLC)*, No. AP 08-01789 (SMB), 2018 WL 1442312, at *13

(Bankr. S.D.N.Y. Mar. 22, 2018), *as corrected* (Mar. 26, 2018)). A transfer of a

settlement payment by a stockbroker in connection with a securities contract *can* be

avoided under § 548(a)(1)(A). Legacy's contention that the *546(e) Decision* recognizes

its right to the full amount of securities positions shown on its account statements is in

error.

> **C.     The New York Uniform Commercial Code does not support Legacy's antecedent debt argument**

Finally, whatever the validity of Legacy's state law rights to security entitlements,

they do not allow Legacy to retain fictitious profits even under the U.C.C.'s protections.

As a preliminary distinction, however, Legacy did not even have security entitlements to

the amounts it received from BLMIS. The transfers received by Legacy cannot satisfy

any security entitlements on Legacy's account statements, because any security

entitlement represented on its account statement must be "sold" before Legacy can receive a transfer. When Legacy requested a withdrawal, BLMIS necessarily "sold" a fictitious securities position in Legacy's account and transferred a corresponding amount of cash to Legacy. "When a customer sells a security that she had held through a securities account, her security entitlement is terminated . . . ." N.Y. U.C.C. Law § 8-501, cmt.5 (McKinney). The resulting transfer, whether a return of principal or a payment of fictitious profits, represented cash in Legacy's account, not a security entitlement. *Compare id.* § 8-501(b) (granting a person a security entitlement only with regard to certain "financial assets") *with* N.Y. U.C.C. Law § 8-102(a)(9) (McKinney) (defining "financial asset" to the exclusion of cash). In other words, Legacy does not have a state-law security entitlement to any withdrawals that it requested. Legacy's withdrawals thus provide value measured not as against the inflated securities in Legacy's account nor the fictitious profits taken from others but as against the principal cash Legacy deposited with BLMIS.

But even if, assuming *arguendo*, the New York Uniform Commercial Code's provisions on security entitlements applied in this liquidation, they support the Trustee's recovery of fictitious profits for ratable distribution to all customers. A security entitlement does not establish value. *Cf. Net Equity Decision*, 654 F.3d at 236 ("[SIPA's implementing regulation] does not, however, mandate that this 'written confirmation' [of a securities transaction] form the basis for calculating a customer's 'net equity.'"). If Legacy had valid security entitlements, the U.C.C. is clear that a holder of a security entitlement to a limited or nonexistent asset cannot take priority over similarly situated holders. Instead, the U.C.C. states that holders of security entitlements must share in any value on a pro rata basis:

15

> An entitlement holder's property interest with respect to a particular financial asset under subsection (a) is a pro rata property interest in all interests in that financial asset held by the securities intermediary, without regard to the time the entitlement holder acquired the security entitlement or the time the securities intermediary acquired the interest in that financial asset.

N.Y. U.C.C. Law § 8-503(b) (McKinney). As the Trustee has shown, BLMIS was operated as a Ponzi scheme, and Legacy's security entitlements in excess of its principal only give it its pro rata share of a fiction—nothing—and the entitlement has no value. *Cf.* N.Y. U.C.C. Law § 8-502, cmt. 4 (McKinney) (noting that while the U.C.C. protects security entitlements, if a securities intermediary does not have sufficient assets to satisfy the security entitlement holders positions, "the problem . . . is not that someone is trying to take away their entitlements, but that the entitlements are not worth what they thought").

## **Conclusion**

Accordingly, for the reasons stated above and in the Trustee's memoranda, the

Trustee's motion for summary judgment should be granted.

Respectfully submitted,

JOSEPHINE WANG
General Counsel

KEVIN H. BELL
Senior Associate General Counsel
 For Dispute Resolution

_____s/Nathanael S. Kelley_____
NATHANAEL S. KELLEY
Associate General Counsel

SECURITIES INVESTOR
  PROTECTION CORPORATION
1667 K Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 371-8300
Facsimile: (202) 223-1679
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org
E-mail: nkelley@sipc.org

Date:  March 22, 2019
Washington, D.C.