**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-04390 (SMB) |
| Plaintiff, | |
| v. | |
| BAM L.P., MICHAEL MANN, and MERYL MANN, | |
| Defendants. | |

## TRUSTEE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF <u>MOTION FOR SUMMARY JUDGMENT</u>

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Chapter 7 Estate of Bernard L.*
*Madoff*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...............................................................................................................3

I.      Defendants Admitted Receiving the Transfers From BLMIS ............................................3

II.     The Plea Allocutions Establish That BLMIS Was a Ponzi Scheme...................................5

III.    Defendants Cannot Defeat the Application of *Res Judicata* ..............................................10

IV.     The Value Defense Has Been Rejected Multiple Times ...................................................12

CONCLUSION............................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstrong v. Collins*,
No. 01 Civ. 2437 (PAC), 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010) ........................6, 8, 9

*Bayou Superfund, LLC v. WAM Long/Short Fund II (In re Bayou Grp., LLC)*,
362 B.R. 624 (Bankr. S.D.N.Y. 2007) ......................................................................................4

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
397 B.R. 1 (S.D.N.Y. 2007)......................................................................................................6

*In re Bernard L. Madoff Inv. Sec. LLC*,
779 F.3d 74 (2d Cir. 2015), *cert. denied, Peshkin v. Picard,* 136 S. Ct. 218
(2015)......................................................................................................................................11

*In re Bernard L. Madoff*,
No. 18 Civ. 5381 (PAE), 2019 WL 479185 (S.D.N.Y. Feb. 7, 2019) ........................12, 13, 15

*Brenes v. City of New York*,
No. 07-5549-CV, 2009 WL 742163 (2d Cir. Mar. 23, 2009)....................................................3

*Cal. Pub. Empls. Retirement Sys. v. ANZ Secs., Inc*.,
137 S. Ct. 2042 (2017)............................................................................................................14

*In re Canton*,
No. 05-47803 (PBS), 2007 WL 2848513 (Bankr. W.D. Wash. Mar. 21, 2007) ....................11

*DeFlora Lake Dev. Assocs. v. Hyde Park (In re DeFlora Lake Dev. Assocs.)*,
571 B.R. 587 (Bankr. S.D.N.Y. 2017)....................................................................................10

*Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*,
440 F.3d 571 (2d Cir. 2006)......................................................................................................3

*F.D.I.C. v. Giammettei*,
34 F.3d 51 (2d Cir. 1994)........................................................................................................12

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
No. 08-15051 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3. 2014) ............................6, 9

*Guadagno v. Wallack Ader Levithan Assocs.*,
950 F. Supp. 1258 (S.D.N.Y. 1997)..........................................................................................3

*Kirshner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*,
No. 11-MD-2296 (DLC), 2019 WL 294807 (S.D.N.Y. Jan. 23, 2019)...................................15

i

*Kirshner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*,
No. 11-MD-2296 (RJS), 2018 WL 6329139 (S.D.N.Y. Nov. 30, 2018) ................................ 15

*In re Madoff Sec.*,
490 B.R. 46 (S.D.N.Y. 2013) ............................................................................................. 10

*In re Madoff Sec.*,
499 B.R. 416 (S.D.N.Y. 2013) ....................................................................................... 12, 14

*Mchale, Jr. v. Boulder Capital LLC (In re 1031 Tax Grp.)*,
439 B.R. 47 (Bankr. S.D.N.Y. 2010) ................................................................................. 4

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*,
557 B.R. 89 (Bankr. S.D.N.Y. 2016) .................................................................................. 4

*Picard v. BAM, L.P.*,
Adv. Pro. No. 10-04390 (SMB), 2019 WL 262278 (Bankr. S.D.N.Y. Jan. 18,
2019) ................................................................................................................................ 3

*Picard v. Cohen*,
Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr.
25, 2016) ..................................................................................................................... 10, 14

*Picard v. Greiff*,
476 B.R. 715 (S.D.N.Y. 2012) ....................................................................................... 12, 14

*Picard v. Lowrey*,
Adv. Pro. No. 10-04387 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. Mar.
22, 2018) ..................................................................................................................... 13, 14

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
Madoff)*,
531 B.R. 439 (Bankr. S.D.N.Y. 2015) ............................................................................. 5, 12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
Madoff)*,
Adv. Pro. No. 08-01789 (SMB), 2019 WL 654293 (Bankr. S.D.N.Y. Feb. 15,
2019) ................................................................................................................................ 7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
Madoff Inv. Sec. LLC)*,
424 B.R. 122 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011),
*cert. denied*, 567 U.S. 934 (2012) .................................................................................... 11

*TM Patents, L.P. v. IBM*,
121 F. Supp. 2d 349 (S.D.N.Y. 2000) ................................................................................ 11

*Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*,
    435 B.R. 866 (Bankr. S.D.N.Y. 2010) .................................................................4

*Trs. of the Upstate N. Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
    843 F.3d 561 (2d Cir. 2016) ...............................................................................14

**Statutes**

11 U.S.C. § 502(d) ....................................................................................................10

11 U.S.C. § 541(a)(1) ..................................................................................................4

11 U.S.C. § 548 ...........................................................................................................4

11 U.S.C. § 548(a)(1)(A) ......................................................................................13, 14

11 U.S.C. § 548(c) ................................................................................................12, 13

15 U.S.C § 78fff(b) .....................................................................................................4

N.Y.U.C.C. § 3–104(1) ...............................................................................................5

## PRELIMINARY STATEMENT[1]

The Trustee's Motion[2] relies on a series of binding admissions: admissions by Defendants that they received the relevant transfers from BLMIS: admissions by Madoff and his former colleagues that the investment advisory business of BLMIS was a Ponzi scheme in both name and substance; and the *de facto* admissions effectuated by Defendants' withdrawal of their customer claims and objections after this Court warned them of the potential preclusive consequences of that withdrawal.    Through these admissions, the Trustee has satisfied the elements of section 548(a)(1)(A) and has therefore carried his initial burden of showing that he is entitled to judgment as a matter of law.

Faced with the daunting task of demonstrating a genuine factual dispute where all relevant facts have been admitted, Defendants attempt to do what they ultimately cannot: rescind their multiple admissions, contradict their claim withdrawals, and persuade this Court that Madoff's detailed admission that he "operated a Ponzi scheme" is insufficient to support the Ponzi scheme presumption.    These efforts fail to rebut the Trustee's *prima facie* case and fall well short of establishing a genuine factual dispute necessitating a trial.

First, Defendants repeatedly admit receipt of the relevant transfers from BLMIS in their Answer, discovery responses, and the Joint Pre-Trial Order filed on the eve of a scheduled trial. These judicial admissions are binding and irrebuttable.    Ignoring this reality, Defendants claim that the checks they received and cashed were from Madoff individually and not from BLMIS. But even if they could somehow rescind their admissions, Defendants ignore the BLMIS bank

---

[1] Accompanying this reply brief is the Trustee's Reply to Defendants' Objections, Reponses and Counterstatements of Material Facts and the Declaration of David J. Sheehan ("Sheehan Decl.").

[2] Capitalized terms not otherwise defined here shall have the meanings ascribed in the Motion.

statements—long available to Defendants—that demonstrate BLMIS was the account holder and thus the transferor.

Second, Defendants offer no facts to refute the existence of a Ponzi scheme, which the admissions of Madoff and other BLMIS employees conclusively establish. Instead, Defendants assert that Madoff's scheme lacked certain "classic" Ponzi components. But this proposition is both false and irrelevant: there is no precise definition of a "Ponzi scheme," and Madoff's admitted failure to purchase securities using customer deposits, coupled with his pooling of those deposits into an ordinary bank account from which Defendants withdrew millions more than they invested, establishes that the investment advisory business was indeed a Ponzi scheme. The allocutions of Madoff and other BLMIS employees unequivocally buttress that conclusion.

Third, Defendants are precluded from even contesting the Ponzi scheme because their strategic withdrawal (with prejudice) of their claims and objections—on the eve of trial and in an effort to strip this Court of its jurisdiction over the avoidance action—operated as a final judgment on their substantively identical customer claims. In holding that it has equitable jurisdiction over this avoidance action, this Court recently applied *res judicata* principles and concluded that the claims allowance process and avoidance actions implicate one another. The same *res judicata* principles preclude Defendants' challenges to the core facts underlying the Trustee's claims determinations and, in turn, his motion for summary judgment.

Finally, Defendants devote the balance of their opposition to familiar value defenses that have been rejected multiple times by multiple courts—including most recently by Judge Engelmayer adopting this Court's recommendation and granting summary judgment to the Trustee in four similar adversary proceedings. [3]   Judge Engelmayer's decision, as well as an extensive

_____

[3] Defendants note that they have filed a Notice of Appeal and Motion for Leave to Appeal this Court's Memorandum and Order Upholding Court's Equitable Jurisdiction (No. 19 Civ. 00812 (VSB), ECF No. 1), which held that the later

body of additional case law, resolves this issue. Nothing in the record justifies revisiting those decisions, and summary judgment is therefore appropriate.

## ARGUMENT

### I.  Defendants Admitted Receiving the Transfers From BLMIS

Defendants have admitted receipt of the relevant transfers from BLMIS multiple times throughout the history of this case—including in their Answer, discovery responses, pre-trial briefing, representations to the Court at relevant hearings, and in the Joint Pre-Trial Order submitted by the parties on the eve of trial. *See* Stmt. ¶¶ 14–15. These admissions over the course of nearly five years are binding. *See, e.g.*, *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) (district court erred in disregarding fact admission and relying on contrary evidence: "[f]acts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation"); *Brenes v. City of New York*, No. 07-5549-CV, 2009 WL 742163, at *3 (2d Cir. Mar. 23, 2009) (rejecting defendants' assertion that admission in answer was in error because defendants never moved to amend their answer, "and are therefore bound by their judicial admission"); *Guadagno v. Wallack Ader Levithan Assocs.*, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997) (explaining that judicial admissions are formal concessions in pleadings that are "not evidence at all but rather have the effect of withdrawing a fact from contention"). And by relying on these binding judicial admissions in the Motion, the Trustee has established an <u>irrebuttable</u> *prima facie* case that Defendants received the relevant transfers from BLMIS.[4]

---

withdrawal of Defendants' customer claims "did not strip the Court of its equitable jurisdiction that attached at the time-of-filing" of the avoidance action. *Picard v. BAM, L.P.*, Adv. Pro. No. 10-04390 (SMB), 2019 WL 262278, at *13, *19 (Bankr. S.D.N.Y. Jan. 18, 2019). The Trustee filed his opposition to the Defendants' Motion for Leave to Appeal on February 8, 2019 (No. 19 Civ. 00812 (VSB), ECF No. 4). For the reasons stated therein, Defendants have no right to a jury trial and this Court retains final adjudicative authority over this adversary proceeding. Defendants filed their reply brief on February 19, 2019 (No. 19 Civ. 00812 (VSB), ECF No. 6). The matter has been assigned to District Court Judge Vernon S. Broderick.

[4] In their Objections, Reponses and Counterstatements of Material Facts, Defendants argue that "the parties had agreed that their respective prior pleadings would be deemed amended to embrace the parties' contentions in the Proposed

In any event, Defendants' argument that BLMIS did not make the relevant transfers is based on a selective interpretation of the evidence long available to them. Regardless of the name on the top corner of the checks, the bank statements establish that "Bernard L. Madoff Investment Securities" was the accountholder. Sheehan Decl., Exs. 3–7.[5] And because the bank accounts ending in -703 and -509 were held in the name of BLMIS, the funds in these accounts are indisputably debtor property. *See* 11 U.S.C. § 541(a)(1) (property of the estate includes all legal or equitable interests of the debtor in property); SIPA § 78fff(b) (a liquidation proceeding under SIPA is conducted as though it is a case under title 11); *Mchale, Jr. v. Boulder Capital LLC (In re 1031 Tax Grp.)*, 439 B.R. 47, 70 (Bankr. S.D.N.Y. 2010) ("money in a bank account in the name of the debtor is presumed to be property of the bankruptcy estate" (citation omitted)). The transfers to Defendants therefore depleted the BLMIS estate and are recoverable by the Trustee under section 548 of the Bankruptcy Code. *See Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 435 B.R. 866, 875–76 (Bankr. S.D.N.Y. 2010) ("[F]raudulent transfer law allows [the Trustee] to avoid transactions which unfairly or improperly deplete [the] debtor's assets or that unfairly or improperly dilute the claims against those assets." (citing 5 Collier's On Bankruptcy ¶ 548.01)); *Bayou Superfund, LLC v. WAM Long/Short Fund II (In re Bayou Grp., LLC)*, 362 B.R. 624, 629 (Bankr. S.D.N.Y. 2007).

Defendants' reliance on *Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*, 557 B.R. 89 (Bankr. S.D.N.Y. 2016) is misplaced given that the Trustee is not seeking to avoid or recover any transfers that occurred before January 1, 2001, when Madoff operated the business as

---

Pretrial Order." However, Fed. R. Civ. P. 15 only applies "[w]hen an issue *not raised by the pleadings* is *tried* by the parties' express or implied consent." (emphasis added). There is no trial by consent here. Summary judgment is not trial, and Defendants' receipt of the transfers from BLMIS was not merely raised in their Answer, but fully admitted. Regardless, in the Joint Pre-Trial Order, the parties stipulated that Defendants received the transfers from BLMIS. *See* Joint Pre-Trial Order ¶¶ 5–10. The Trustee and this Court are entitled to rely on that stipulation.

[5] A complete set of available BLMIS bank statements has long been available to Defendants in E-Data Room 1.

a sole proprietorship, as was the case in *Avellino*. Here, the Trustee only seeks to avoid transfers within the Two-Year Period based on the calculation of Defendants' negative net equity over the life of the accounts, which this Court has already ruled remains unaffected by the change in the Debtor's corporate form from a sole proprietorship to a limited liability Company in 2001. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 531 B.R. 439, 485 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*").

Defendants' argument is also unsupported by the law of negotiable instruments. To be considered a negotiable instrument under the Uniform Commercial Code ("U.C.C."), a written check must be: (a) signed by the maker; (b) an "unconditional promise" to pay a sum certain in money; (c) payable for a fixed amount; (d) payable on demand or at a definite time; and (e) payable to bearer. N.Y.U.C.C. § 3–104(1). The name on the top of a check is not dispositive under the U.C.C. and is likewise irrelevant to the issue of whether the Trustee can recover the transfers to Defendants.

Accordingly, Defendants' receipt of the transfers from BLMIS is not a contested fact, and even if it were, the bank statements establish that there is no genuine factual dispute as to the ownership of the relevant account.

## II.    The Plea Allocutions Establish That BLMIS Was a Ponzi Scheme

The specific admissions of Madoff and other BLMIS employees satisfy the Trustee's *prima facie* case that BLMIS was a Ponzi scheme, and Defendants offer no evidence to the contrary. Instead, they generally assert that Madoff's Ponzi was not a "classic" version of the scheme because "there is no evidence that good faith depositors were induced by unrealistic promises of high return," and because Defendants "were not early depositors who were paid out with later depositors' funds." D. Mem. at 28. They further misconstrue the crimes admitted by the

5

perpetrators, claiming that none of the employees "were charged with perpetrating a Ponzi scheme and none were required to admit or did admit to perpetrating a Ponzi scheme when the elements of each crime was described to them." *Id.* at 30.

As a preliminary matter, Defendants operate from two false premises. First, "there is no precise definition of a Ponzi scheme and courts look for a general pattern, rather than specific requirements." *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 12 (S.D.N.Y. 2007). Some courts apply a four factor test that considers whether: "(1) deposits were made by investors; (2) the Debtor conducted little or no legitimate business operations as represented to investors; (3) the purported business operation of the Debtor produced little or no profits or earnings; and (4) the source of payments to investors was from cash infused by new investors." *Armstrong v. Collins*, No. 01 Civ. 2437 (PAC), 2010 WL 1141158, at *23 (S.D.N.Y. Mar. 24, 2010). Other courts have focused on certain "badges" commonly associated with Ponzi schemes. *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, No. 08-15051 (SMB), 2014 WL 47774, at *9 (Bankr. S.D.N.Y. Jan. 3. 2014) (identifying badges but also recognizing that "a Ponzi scheme can exist without them"). But no courts have held that a Ponzi scheme must be "classic" in form for the presumption to apply.

Second, federal law does not criminalize a Ponzi scheme as a separate chargeable offense. Rather, the Ponzi scheme Madoff admitted is a criminal act under the securities, mail, investment advisor, and wire fraud statutes. *See generally* Madoff Allocution (pleading guilty to securities fraud, mail fraud, investment advisor fraud, and wire fraud). And regardless of the specific charges, the government has routinely characterized Madoff's crime as a Ponzi scheme—including during the allocution. *See id.* at 31–32 ("The defendant operated a massive Ponzi scheme through his company, Bernard L. Madoff Investment Securities, beginning at least as early as the 1980s.")

6

Here, Madoff's unequivocal and detailed admission that he "operated a Ponzi scheme

through the investment advisory side of [his] business," Madoff Allocution at 23, and the

corroboration of this admission by other BLMIS employees, is conclusive and remains unrebutted

by Defendants.  Madoff specifically admitted that he did not purchase any securities on behalf of

investment advisory customers since at least the early 1990s.[6]  Rather than honor his promises to

execute trades on behalf of his thousands of clients, Madoff deposited funds received from new

and existing customers into an ordinary bank account and satisfied withdrawal requests using that

stream of comingled customer cash—cash that, without appreciation from securities trading

Madoff claimed he was executing for his customers, was wholly inadequate to support the

increasing balances on the customer statements.  As Madoff admitted:

> The essence of my scheme was that I represented to clients and prospective clients
> who wished to open investment advisory and individual trading accounts with me
> that I would invest their money in shares of common stock, options, and other
> securities of large well-known corporations, and upon request, would return to them
> their profits and principal.  Those representations were false for many years.  **Up
> until I was arrested on December 11, 2008, I never invested these funds in the
> securities, as I had promised.  Instead, those funds were deposited in a bank
> account Chase Manhattan Bank.  When clients wished to receive the profits
> they believed they had earned with me or to redeem their principal, I used the
> money in the Chase Manhattan bank account that belonged to them or other
> clients to pay the requested funds.**

Madoff Allocution at 24 (emphasis added); *see also* DiPascali Allocution at 47 ("On a regular

basis I used hindsight to file historical prices on stocks then I used those prices to post purchase of

sales to customer accounts as if they had been executed in real time."); Kugel Allocution at 32 ("I

provided historical trade information . . . to create fake trades that, when included on the account

---

[6] Defendants' bald assertion that Madoff purchased U.S. Treasury securities with investment advisory funds and that
he used interest earned thereon to meet customer redemptions (*see* D. Mem. at 9) is unsubstantiated and incorrect.  In
denying a motion for additional discovery on BLMIS's purported treasuries trading, this Court recently reached the
very same conclusion.  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, Adv.
Pro. No. 08-01789 (SMB), 2019 WL 654293, at *11 (Bankr. S.D.N.Y. Feb. 15, 2019) ("Some defendants have further
argued that BLMIS allocated some of those U.S. Treasury transactions to customers.  But Madoff never said this.")

statements and trade confirmations of Investment Advisory clients, gave the appearance of profitable trading when in fact no trading had actually occurred.").

Defendants' contention that they "were not early depositors who were paid out with later depositors' funds" is meritless given that Madoff admitted that he satisfied redemptions using money that belonged to "other clients." Madoff Allocation at 24. This arrangement—one that enabled Defendants to withdraw millions more than they deposited—necessarily involved a steady reliance on new cash from other investors to pay the fictitious redemptions Madoff paid to his customers. In other words, without any actual securities trading to support these fictitious profits, Defendants' withdrawal of more than their principal investment was only possible using other customers' deposits—as those deposits were the only source of cash for the payment of purported profits. *See Armstrong*, 2010 WL 1141158, at *23 (applying Ponzi presumption where perpetrator "testified that he ran a 'Ponzi scheme' and that "he paid investors with the funds of other investors").

Nor does the absence of a promised rate of return negate the Ponzi scheme. "Even assuming [the fraudster] did not promise or represent high rates of return, this does not mean that he was not running a Ponzi scheme." *Armstrong*, 2010 WL 1141158, at *23. A specific rate of return is not the only way to cultivate an expectation of strong performance that encourages additional investment. By specifically promising his clients that he would apply his "split strike conversion strategy," Madoff and his customers generally understood that strong performance was expected—which is precisely why customers invested with him:

> To the best of my recollection, my fraud began in the early 1990s. At that time, the country was in a recession and this posed a problem for investments in the securities markets. Nevertheless, I had received investment commitments from certain institutional clients **and understood that those clients, like all professional investors, expected to see their investments out-perform the market**. While I never promised a specific rate of return to my client, **I felt compelled to satisfy my**

**clients' expectations**, at any cost.    I therefore claimed that I employed an investment strategy I had developed, called the split strike conversion strategy, **to falsely give the appearance to clients that I had achieved the results I believed they expected**.

Madoff Allocution at 25 (emphasis added); *see also* DiPascali Allocution at 45–46 (noting that Madoff "attracted a lot of these clients by telling them that the firm would apply a hedged investment strategy to their money" and that "it was all fake"); *Armstrong*, 2010 WL 1141158, at *23 ("Even if Yagalla did not explicitly state that investors would receive large returns, the fact that he represented large returns in his fictitious statements was a clear enticement to investors." (internal quotation marks omitted)).

Defendants mistakenly rely on this Court's decision in *In re Dreier LLP*.[7]   There, this Court denied the Trustee's motion for summary judgment because "the Trustee ha[d] not pointed to any admissible evidence in which [Dreier] did admit to operating a Ponzi scheme."   2014 WL 47774, at *11 (collecting and contrasting cases where perpetrator "admitted in words or substance that he ran a Ponzi scheme").   What was missing in *Dreier* is therefore present here—the admissible allocutions of Madoff and BLMIS employees that BLMIS was in fact a Ponzi scheme.

Accordingly, under any applicable standard, Madoff's crime was a Ponzi scheme, and this Court should therefore apply the Ponzi scheme presumption and conclude that BLMIS made all relevant transfers to Defendants with fraudulent intent.   *See* Trustee's Memorandum of Law in Support of Motion for Summary Judgment ("Trustee's MOL") at 9.

---

[7] Defendants conflate the Court's discussion of Dreier's judgment of conviction with its discussion of his allocution. While the Court concluded that "[Dreier's] judgment of conviction is admissible but only to a fact essential to the judgment," it separately recognized that his allocution was admissible without any such restriction.   *In re Dreier LLP*, 2014 WL 47774, at *11.

9

### III.    Defendants Cannot Defeat the Application of *Res Judicata*

*Res judicata* further precludes Defendants from arguing that BLMIS was anything but a Ponzi scheme.  *See* Trustee's MOL at 18.  After the Trustee filed his moving papers, this Court applied *res judicata* principles to the question of whether the Bankruptcy Court retained equitable jurisdiction over this adversary proceeding and concluded that the claims allowance process and avoidance action effectively dispose of one another.

> If the bankruptcy court must determine the same issues or claims in connection with the adversary proceeding and the allowance of the proof of claim, a determination of the issue or claim in one proceeding will preclude the relitigation of the same issue or claim in the other proceeding.  Avoidance claims always implicate the claims allowance process because the trustee must avoid the transfer to recover against the defendant-creditor and disallow the defendant-creditor's claim under Bankruptcy Code § 502(d).

Memorandum Decision and Order Upholding Court's Equitable Jurisdiction at 14, ECF No. 148; *see also Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, *14 (Bankr. S.D.N.Y. Apr. 25, 2016) ("*Cohen Decision*") ("Net equity and fictitious profits are two sides of the same coin.")  Applied here, those same principles preclude Defendants from relitigating the identical factual questions that were finally determined when the Court entered the Withdrawal Order.

Defendants dispute that the two proceedings are identical and that the Withdrawal Order effectuated a final decision on the merits.  But none of the cases cited by Defendants address, much less negate, the application of *res judicata* under these circumstances.  *See In re Madoff Sec.*, 490 B.R. 46 (S.D.N.Y. 2013) (addressing whether *Net Equity Decision* had preclusive effect in pending avoidance actions in context of jurisdictional analysis); *DeFlora Lake Dev. Assocs. v. Hyde Park (In re DeFlora Lake Dev. Assocs.)*, 571 B.R. 587, 597 (Bankr. S.D.N.Y. 2017) (state law breach of contract claim did not preclude subsequent turnover of property claim under the Bankruptcy Code where Second Circuit previously stated parties' interests in escrow funds at issue "remained

unresolved"); *TM Patents, L.P. v. IBM*, 121 F. Supp. 2d 349, 360–64 (S.D.N.Y. 2000) (bankruptcy court's order transferring debtor's patent interest did not preclude exploration of whether debtor had valid title in subsequent patent infringement claim because two proceedings involved different issues, party had no standing to challenge title, and party could not have known about title defect); *In re Canton*, No. 05-47803 (PBS), 2007 WL 2848513, at *3 (Bankr. W.D. Wash. Mar. 21, 2007) (addressing non-creditor's objection that successful bid for bankruptcy sale included provision allowing bidder to voluntarily withdraw proof of claim without *res judicata* effect).

Nor does the Trustee's recognition in his Determinations that he would be bound by any court order determining that his "net equity" interpretation is incorrect somehow annul the effect of *res judicata*. The purpose of the relevant passage in the Determinations was to assure Madoff's victims that the Trustee would apply any changes to the determination of the net equity formula as a matter of law to previously determined claims. That passage is not relevant to the question of whether the Withdrawal Order, which formalized Defendants' withdrawal of their claims with prejudice, constituted a final judgment. And in any event, as Defendants themselves recognize, the Trustee's "net equity" methodology has been affirmed in a final, non-appealable order. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122, 125–32 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 567 U.S. 934 (2012).[8]

Defendants have failed to set forth any issues of material fact regarding the effect of *res judicata* on their voluntary and knowing withdrawal of their Claims and Objections. As a matter

---

[8] The same is true for the Trustee's determination that customer claims for "net equity" did not include "time-based damages" such as interest, inflation, or any other adjustments based on the time value of money. *See In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74 (2d Cir. 2015), *cert. denied*, *Peshkin v. Picard,* 136 S. Ct. 218 (2015).

of law, the Trustee's Determinations are dispositive and thus provide this Court with an independent basis upon which to grant the Motion.

## IV.    The Value Defense Has Been Rejected Multiple Times

Relying on the value defense provided by section 548(c), Defendants offer a series of arguments that this Court and others have unequivocally rejected. Time after time, courts have affirmed and reaffirmed the basic principle that, for section 548(a)(1)(A) claims in a SIPA proceeding, defendants cannot invoke the value defense to retain anything beyond their principal investment. *See, e.g.*, *Picard v. Greiff*, 476 B.R. 715, 718 (S.D.N.Y. 2012) ("those transfers from [BLMIS] to defendants that exceeded the return of defendants' principal . . . were not 'for value'"); *In re Madoff Sec.*, 499 B.R. 416, 422 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*") ("only a defendant's investment of principal may count as 'value' with respect to the customer property estate for purposes of section 548(c)"). Accordingly, as a matter of law, this defense fails.[9]

In an effort to circumvent this overwhelming body of case law, Defendants assert, as the "cornerstone" of their argument, that the *Section 546(e) Decision* "superseded and overruled" it all. D. Mem. at 11–14. But that argument too has been rejected. *See In re Bernard L. Madoff*, No. 18 Civ. 5381 (PAE), 2019 WL 479185, at * 21–23 (S.D.N.Y. Feb. 7, 2019) (the "*Lowrey Decision*"); *Omnibus Good Faith Decision*, 531 B.R. at 470.

---

[9] Defendants mischaracterize the summary judgment standard as it relates to affirmative defenses and thereby attempt to impose a greater burden on the Trustee. *See* D. Mem. at 8 (asserting that Trustee must "demonstrate[e] that all affirmative defenses are unsupported by the record or fail as a matter of law"). The cases cited by Defendants state that "a plaintiff *may* satisfy its rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *F.D.I.C. v. Giammettei*, 34 F.3d 51 (2d Cir. 1994) (emphasis added) (further noting that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim"). "After all, in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the defendant's affirmative defense necessarily renders all other facts immaterial." *Id.* (internal quotation marks omitted). Here, there is no factual dispute as to the value defense—only a legal one—and the Trustee does not have the burden to show that an affirmative defense fails as a matter of law. And even if he did, the Trustee has carried that burden here.

Most recently, in the *Lowrey Decision*, entered after the Trustee filed the Motion, Judge Engelmayer adopted this Court's recommendations (*see Picard v. Lowrey,* Adv. Pro. No. 10-04387 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. Mar. 22, 2018)) and granted the Trustee summary judgment in four adversary proceedings where the defendants raised the same value arguments Defendants raise here. *Lowrey Decision*, 2019 WL 479185, at *16. After cataloguing the numerous decisions rejecting these arguments, the District Court: (i) once again confirmed, as law of the case, that there is no value defense to the avoidance, under section 548(a)(1)(A), of transfers that exceed a customers' net equity—regardless of whether the purported "value" is the satisfaction of legal obligations to pay that customer or the discharge of any legal claims the customer may have; and (ii) concluded that the *Section 546(e) Decision* did not alter the state of the law with respect to the value defense. *Id.* at 17–23. (concluding that "the *Antecedent Debt Decision* systematically considered and squarely rejected the very statutory arguments that defendants now make in support of an affirmative 'for value' defense," and that the *Section 546(e) Decision*'s analysis and section 548(c) are "distinct matters of statutory construction, and very different"). This decision alone forecloses the "value" defense.

Notwithstanding this precedent, Defendants assert that they received fictitious profits "for value" against purported contractual and brokerage "obligations" pursuant to their account agreements, and claim that the Trustee's purported failure to avoid any obligations provided them with a value defense under section 548(c). D. Mem. at 4–5, 14–16. But as this Court previously stated:

> [T]he argument that payment in satisfaction of an unavoided obligation provides value misses the point. An obligation may be valid, but payments in excess of principal are avoidable and recoverable (in all Ponzi scheme cases) and violate the priority rules of SIPA (in SIPA Ponzi scheme cases).

*Cohen Decision*, 2016 WL 1695296, at \*12 n.17, *adopted mem.*, No. 16 Civ. 05513 (LTS) (S.D.N.Y. Feb. 24, 2017), ECF No. 24; *see also Antecedent Debt Decision*, 499 B.R. at 421 n.4 ("[T]he Court rejects defendants' contention that Madoff Securities' pre-reach-back-period account statements constitute binding obligations of Madoff Securities to its customers that the Trustee must avoid." (citing *Greiff*, 476 B.R. at 724–26)).   Indeed, "[e]ven if BLMIS owed obligations to the Defendants, the customers did not, and the use of their property to pay fictitious profits was not supported by value." *Lowrey,* 2018 WL 1442312, at \*12 (citing *Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 567 (2d Cir. 2016)).   The same rationale applies to Defendants' arguments under the N.Y.U.C.C. and the 1934 Act.  *See Lowrey*, 2018 WL 1442312, at \*17–19 (citing *Antecedent Debt Decision* and rejecting premise that state claims, even if preserved by 1934 Act, provide value against customer property estate).

Defendants also argue that "[s]ection 548(a) is a statute of repose" that "limits the Trustee's power to avoid obligations to the Defendants incurred prior to the two-year reach back period." D. Mem. at 17.  Yet the District Court previously made clear that while section 548(a)(1) permits the avoidance of only those transfers occurring within the Two-Year Period, "there is no similar limitation in section 548(c) . . . [and] there is no reason why a line should be drawn at the beginning of the reach-back period in determining whether a transfer was for value."  *Antecedent Debt Decision*, 499 B.R. at 427 (citing 11 U.S.C. § 548(a)(1)(A)).  While Defendants argue that the Supreme Court's decision in *Cal. Pub. Emps. Retirement Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017) ("*CalPERS*") requires a different conclusion, both this Court and the District Court already determined that *CalPERS* "does not represent intervening law mandating a reexamination or modification of the reasoning or the result reached in the Antecedent Debt Decision." *Lowrey*,

2018 WL 1442312, at *14, *adopted mem.*, 2019 WL 479185, at *7, 15.  Defendants' reliance on

*CalPERS* is therefore misplaced.

Equally misplaced is Defendants' reliance on the two *Tribune* decisions, which Defendants

submit support their value argument.  Unlike Defendants' invalid claims to fictitious profits in this

SIPA liquidation, both Tribune cases involved *valid* obligations incurred by the debtor in a *non-*

SIPA liquidation.  *See Kirshner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*,

No. 11-MD-2296 (RJS), 2018 WL 6329139 (S.D.N.Y. Nov. 30, 2018) (contractual severance

payments to its executives); *Kirshner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance*

*Litig.)*, No. 11-MD-2296 (DLC), 2019 WL 294807 (S.D.N.Y. Jan. 23, 2019) (indemnification

obligations to outside directors).  Neither case alters the conclusive findings of this Court and the

District Court in this liquidation.  In fact, the defendants in the *Lowrey Decision* submitted the

same two cases to Judge Engelmayer as "supplemental authority," which the Trustee addressed in

two separate letters to the court.  Tellingly, neither decision played any role in Judge Engelmayer's

analysis—precisely because they are both inapposite.[10]

In short, Defendants have no legal claim to anything beyond their principal investment.

Summary judgment in favor of the Trustee is thus appropriate.

---

[10] Defendants also attempt to distinguish the *Lowrey Decision* based on the parties' stipulation to the existence of a
Ponzi scheme, as well Defendants' assertion that Judge Engelmayer erroneously considered *Greiff* and the *Antecedent
Debt Decision* to be controlling law of the case.  (D. Mem. at 24 n.24).  But the Trustee only relies on the *Lowrey
Decision* to refute Defendants' value arguments, not to prove the Ponzi scheme.  And as discussed above, Judge
Engelmayer correctly ruled that *Greiff* and the *Antecedent Debt Decision* settle Defendants' value arguments.  In any
event, the *Lowrey Decision* is binding precedent as to the legal questions it decided.

**CONCLUSION**

The Trustee respectfully requests that the Court grant summary judgment on Count One of

the Trustee's Amended Complaint and enter an order avoiding the transfers of fictitious profits

made by BLMIS to Defendants, in the total amount of $2,813,000, within the Two-Year Period,

and requiring Defendants to return such transfers or the value thereof to the Trustee.


Dated: New York, New York
       March 27, 2019

                                              By:  */s/ David J. Sheehan*
                                              **BAKER & HOSTETLER LLP**
                                              45 Rockefeller Plaza
                                              New York, New York 10111
                                              Telephone:  212.589.4200
                                              Facsimile:  212.589.4201
                                              David J. Sheehan
                                              Email:  dsheehan@bakerlaw.com
                                              Dean D. Hunt
                                              Email: dhunt@bakerlaw.com
                                              Lan Hoang
                                              Email: lhoang@bakerlaw.com
                                              Nicholas J. Cremona
                                              Email:  ncremona@bakerlaw.com
                                              Seanna R. Brown
                                              Email: sbrown@bakerlaw.com


                                              *Attorneys for Irving H. Picard, Trustee for
                                              the Substantively Consolidated SIPA
                                              Liquidation of Bernard L. Madoff Investment
                                              Securities LLC and the Chapter 7 Estate of
                                              Bernard L. Madoff*