**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (SMB) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04390 (SMB) |
| Plaintiff, | |
| v. | |
| Michael Mann, Meryl Mann and BAM L.P., | |
| Defendants. | |

**REPLY TO DEFENDANTS' OBJECTIONS, RESPONSES AND
COUNTERSTATEMENT OF MATERIAL FACTS PURSUANT TO FED. R. CIV. P. 56,
FED. R. BANKR. P. 7056 AND LOCAL RULE  7056-1 TO
TRUSTEE'S STATEMENT OF MATERIAL FACTS**

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
the Chapter 7 Estate of Bernard L. Madoff*

The Trustee submits this reply to Defendants' Objections, Responses, and Counterstatement ("Counterstatement"), ECF No. 158, filed in response to the Trustee's Local Rule 7056-1 Statement ("Trustee Statement"), ECF No. 142, in support of the Trustee's Motion for Summary Judgment, ECF No. 141.

## **REPLY**

None of the purported factual disputes that Defendants identify in their Counterstatement is a genuine issue of material fact that precludes this Court from granting summary judgment to the Trustee. Defendants' asserted factual disputes consist largely of: (i) contradicting identical or substantially similar statements they previously admitted to in their Answer, the Proposed Joint Pretrial Order, or discovery responses; (ii) improper legal argument; (iii) assertions that contradict the record or mischaracterize documents and testimony in an effort to demonstrate a factual dispute that does not exist; (iv) denying the Trustee's asserted facts but then restating them in a manner that does not actually controvert the fact; (v) failing to either admit or deny a fact but instead responds with an equivocal "subject to clarification;" and (vi) insignificant quibbles that are not material to the Court's resolution of the motion. For these reasons, summary judgment should be granted to the Trustee.

## I.    **DEFENDANTS CONCEDE THAT MANY FACTS ARE UNCONTROVERTED**[1]

Defendants admit outright to nine of the sixty-four undisputed facts set forth in the Trustee Statement, which are reproduced below, with each numbered paragraph of the Trustee's Statement in bold, followed by the Defendants' "No Dispute" response. *See* Counterstatement ¶¶ 2, 11, 22–24, 27, 50, 56, 61. Accordingly, these facts should be deemed admitted under Local Rule 7056-1(d).

---

[1] A chart summarizing Defendants' responses, objections, counterstatements as well, as the Trustee's replies, is annexed hereto as Exhibit A for the convenience of the Court.

2.      The Securities Investor Protection Corporation ("SIPC") petitioned for a protective decree, placing BLMIS into liquidation, appointing the Trustee, and removing the SIPA liquidation to the bankruptcy court. *See SEC v. Madoff*, No. 08-cv-10791 (S.D.N.Y. Dec. 15, 2008), ECF Nos. 5, 6.

NO DISPUTE

11.     Accordingly, the Trustee seeks to avoid and recover from Defendants $2,250,000 transferred to the Mann Account and $563,000 transferred to the BAM Account within the two- year period preceding the liquidation.

NO DISPUTE

22.     On December 23, 2008, the Bankruptcy Court entered the Claims Procedures Order. Order, Main Case, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Dec. 23, 2008), ECF No. 12.

NO DISPUTE

23.     In June 2009, Defendants filed customer claims with the Trustee seeking to recover the purported balance in their BLMIS accounts as stated on their last account statements as of November 30, 2008.  Specifically, Michael Mann and Meryl Mann filed a customer claim for BLMIS Account No. 1CM363 in the amount of $7,192,467, designated as Claim #009823 (the "Mann Customer Claim"), and Michael Mann filed claim #009822 on behalf of BAM L.P. for Account No. 1CM579 in the amount of $724,533.85 (the "BAM Customer Claim," and together with the Mann Customer Claim, the "Customer Claims"). See Sheehan Decl. Exs. 1, 2; Answer ¶¶ 51–52.

NO DISPUTE

24.    In August 2009, the Trustee issued a Notice of Trustee's Determination of Claim with respect to the Mann Customer Claim, and in October 2009, the Trustee issued a Notice of Trustee's Determination of Claim with respect to the BAM Customer Claim (the "Determinations"). Sheehan Decl. Exs. 3, 4.

NO DISPUTE

27.    In September 2009, Michael Mann and Meryl Mann filed objections to the Determinations (the "Objections"). Sheehan Decl. Exs. 5, 6.

NO DISPUTE.

50.    Madoff stated that he "never promised a specific rate of return to [his] client [sic]." Madoff Allocution at 25:18–19.

NO DISPUTE.  Madoff did not promise his customers exorbitant rates of return.

56.    At a plea hearing on November 8, 2012, in the case captioned *United States v. Lipkin,* No. 10-CR-228 (LTS), Irwin Lipkin, a former BLMIS accountant, pleaded guilty to a two- count criminal action charging him with securities fraud, falsifying the records of BLMIS, and making false statements in relation to documents required by ERISA. *See* **Plea Allocution of Irwin Lipkin,** *United States v. Irwin Lipkin*, No. 10-CR-228 (LTS) (S.D.N.Y. Nov. 8, 2012) (the "Irwin Lipkin Allocution"), ECF No. 288, Sheehan Dec. Ex. 17.

NO DISPUTE

61.    Investment advisory customer money was funneled to BLMIS's proprietary trading and market making businesses to falsely inflate their revenue and hide their losses. Cotellessa-Pitz Allocution, Tr. 31:12–32:12.

NO DISPUTE

## II.     DEFENDANTS DO NOT SPECIFICALLY CONTROVERT FACTS WHERE THEY ASSERTED THE FACTS WERE SUBJECT TO CLARIFICATION

Defendants further concede that four additional facts are undisputed but claim that they are "subject to clarification," which are reproduced below, with each numbered paragraph of the Trustee's Statement in bold, followed by Defendants' Objection and Counterstatement, and the Trustee's reply. *See* Counterstatement ¶¶ 3, 7–8, 10. The Court should adopt these facts as written by the Trustee as undisputed for purposes of the motion because Defendants conceded that the fact was uncontroverted. *See, e.g., Baity v. Kralik,* 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (rejecting the opposing party's denials where they "quibble with [the moving party's] phraseology, but do not address the factual substance asserted by [the moving party]"); *Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011) ("56.1 statements not explicitly denied by [the opposing party] are deemed admitted"); *Geoghan v. Long Island R.R.*, No. 06 Civ. 1435 (CLP), 2009 WL 982451, at *5–6 (E.D.N.Y. Apr. 9, 2009) ("Since [the opposing party's] response does not dispute the accuracy of the assertion, the assertion is deemed to be admitted by [the opposing party] for purposes of this motion.").

**3.     On June 10, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the SIPA liquidation. Consent Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. No. 0801789 (Bankr. S.D.N.Y. June 10, 2009) ("Main Case"), ECF No. 252.**

**DEFENDANTS' OBJECTION**

The statement is undisputed but subject to clarification.

**DEFENDANTS' COUNTERSTATEMENT**

On June 10, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the SIPA liquidation. Consent Order, *Sec. Inv'r Prot. Corp. v.*

4

*Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. No.

0801789 (Bankr. S.D.N.Y. June 10, 2009), ECF No. 252.   The order substantively

consolidating the Chapter 7 estate of Madoff into the SIPA liquidation was subject to the

following important limitation:

> Notwithstanding the substantive consolidation of the Madoff estate into the BLMIS SIPA
> Proceeding, the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate and
> shall continue to have all powers, rights, claims and interests of a Chapter 7 trustee to bring
> claims under Chapters 5 and 7 of the Bankruptcy Code in consultation with the SIPA
> Trustee and SIPC. Further, all powers, rights, claims and interests of the Madoff estate are
> expressly preserved, including without limitation all Chapter 5 and Chapter 7 powers,
> rights, claims and/or interests.
> ECF No. 252. at ¶4

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 3, and it is

therefore not controverted.   Consequently, Trustee Statement ¶ 3 is deemed admitted under Local

Rule 7056-1(d).   *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of

the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42

(noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").   The Trustee

does not dispute the additional statements in Defendants' response and further avers that,

regardless of whether true or disputed, the statements are immaterial and do not preclude summary

judgment for the Trustee

7.    **On November 30, 2010, the Trustee filed a complaint commencing this
adversary proceeding to avoid and recover $9,678,157 in fraudulent transfers to Defendants
during the six years prior to the liquidation.** *See* **Complaint, ECF No. 1.**

**DEFENDANTS' OBJECTION**

Although the statement is true insofar as describing the original complaint, it is subject to

clarification.   The description of the actual scope of the original complaint is material only

5

to demonstrate the extent to which the Trustee's alleged avoidance powers have been curtailed by the sections of the Bankruptcy Code that afford defenses to avoidance claims. Defendants also object to the Trustee's citation to his Amended Complaint, which is not admissible evidence within the meaning of Fed. R. Civ. P. 56(c)(1)(A).

**DEFENDANTS' COUNTERSTATEMENT**

On November 30, 2010, the Trustee filed a complaint commencing this adversary proceeding to avoid and recover at least $9,678,157 in transfers during the six years prior to the liquidation made to the holders of the Mann Account, the BAM Account and a third account, an Individual Retirement Account ("IRA") in the name of NTC & Co., LLP as custodian of the Individual Retirement Account f/b/o Michael Mann. The original complaint sought to avoid transfers on seven counts including two counts to avoid transfers made within two years of the filing of the petition under Sections 548(a)(1)(A) and (B) of the Bankruptcy Code, four counts to avoid transfers made within six years of the filing of the petition under New York Debtor and Creditor Law and Section 544 of the Bankruptcy Code and one count to avoid subsequent transfers from the IRA by NTC & Co. *See* [Original] Complaint, *Picard v. BAM, L.P.*, Adv. Pro. No. 10-04390 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2010), ECF No. 1.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 7, and it is therefore not controverted. Consequently, Trustee Statement ¶ 7 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee does not dispute the additional statements in Defendants' response and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee.

**8.      On January 25, 2012, the Trustee amended the Complaint to assert claims to avoid obligations.  Amended Complaint, Sheehan Decl. Ex. 7.  The parties subsequently entered into a Stipulation and Order dismissing the Obligations Counts against all Defendants with prejudice and dismissing the Trustee's claims against defendants Betsy Mann Polatsch and Adam Mann without prejudice.  Stipulation and Order, ECF No. 46.**

**DEFENDANTS' OBJECTION**

Although the statement is true insofar as describes the Stipulation and Order, it is subject to substantial clarification.

**DEFENDANTS' COUNTERSTATEMENT**

On January 25, 2012, the Trustee amended the complaint primarily to assert claims to avoid obligations.

On August 19, 2015, the Trustee and the Defendants entered into a Stipulation and Order dismissing the Obligations Counts against all Defendants with prejudice (¶ 6); dismissing the Trustee's claims against defendants Betsy Mann Polatsch and Adam Mann without prejudice (¶.6); and dismissing all claims against the Defendants pursuant to Sections 548(a)(1)(B) of the Bankruptcy Code, four counts to avoid transfers made within six years of the filing of the petition under New York Debtor and Creditor Law and Section 544 of the Bankruptcy Code, and one count to avoid subsequent transfers from the IRA by NTC & Co. with prejudice (¶ 8). *See* Stipulation and Order. *Picard v. Mann*, Adv. Pro. No. 10-04390 (SMB), [ECF No. 46].

7

By virtue of the Second Circuit decision, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 773 F.3d 411 (2d Cir. 2014), cert. denied, 135 S. Ct. 2859 (2015) (the "*Section 546(e) Decision*") and the Stipulation and Order, the Trustee's avoidance powers were sharply curtailed by application of the safe harbor defense provision of the Bankruptcy Code.

By virtue of the Stipulation and Order, the obligations of the broker to its customers are unavoidable.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 8, and it is therefore not controverted. Consequently, Trustee Statement ¶ 8 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendants' Objection also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. The Trustee does not dispute the additional statements in Defendants' response and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee.

**10.     By virtue of a Second Circuit decision,** *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* **the Trustee's avoidance and recovery claims are limited to the two-year period preceding the liquidation. 773 F.3d 411 (2d Cir. 2014), cert. denied, 135 S. Ct. 2859 (2015).**

**DEFENDANTS' OBJECTION**

The statement is true but requires clarification. The cited Second Circuit decision (often referred to as the "*Section 546(e) Decision"*) sharply curtailed the Trustee's avoidance

powers with respect to both scope and time pursuant to the safe-harbor defense for securities transactions under Section 546(e) of the Bankruptcy Code. *See* Stipulation and Order. [ECF No. 46].

**DEFENDANTS' COUNTERSTATEMENT**

By virtue of a Second Circuit decision, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* the Trustee's avoidance and recovery claims under Sections 548(a)(1)(A) and 550 of the Bankruptcy Code are limited to the avoidance and recovery of transfers made within the two-year period preceding the commencement of the SIPA liquidation proceeding. 773 F.3d 411 (2d Cir. 2014), cert. denied, 135 S. Ct. 2859 (2015).

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 10, and it is therefore not controverted. Trustee Statement ¶ 10 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). The Trustee does not dispute the additional statements in Defendants' response and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee.

## III. DEFENDANTS DO NOT IDENTIFY A MATERIAL DISPUTE WITH FACTS IN THE TRUSTEE'S COUNTERSTATEMENT

Defendants fail to specifically and genuinely controvert the remaining undisputed facts set forth in the Trustee Statement because they fail to identify a material dispute as to those facts. These facts are reproduced below, with each numbered paragraph of the Trustee's Statement in bold, followed by Defendants' Objection and Counterstatement, and the Trustee's reply. The

Court should adopt these facts as undisputed for purposes of the motion.

Local Rule 7056-1 requires the responding party to ***specifically*** controvert the material facts set forth in an opposing party's statement with "citation[s] to evidence which would be admissible." Local Rule 7056-1(e). Responses should not contain argument or narrative to "spin" the admissions a party is required to make. *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding opposing party's responses to moving party's Rule 56.1 Statement where opposing party responded with conclusory assertions and legal arguments); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, No. 00 Civ. 4763 (RMB) (JCF), 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006) ("'Rule 56.1 statements are not argument. They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)); *Goldstick v. The Hartford, Inc.*, No. 00 Civ. 8577 (LAK), 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (finding statement failed to comply with rule because plaintiffs "add[ed] argumentative and often lengthy narrative in almost every case[,] the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").

Here, Defendants frequently purported to "controvert" a fact, but then state allegations that are consistent with the asserted fact, relate to an entirely different subject matter, or constitute legal argument in an effort to "spin" the admissions. Courts are free to disregard such denials. *See Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 314 (2d Cir. 2008) (responses that use the word "disputed" but do not demonstrate that the dispute is genuine cannot defeat summary judgment); *Johnson v. City of New York*, No. 15 Civ. 6915 (ER), 2019 WL 294796, at *10, n.8 (S.D.N.Y. Jan. 23, 2019) (rejecting the opposing party's Rule 56.1 Response where he "improperly interjects arguments and/or immaterial facts in response to factual assertions made by

[the moving party] and supported by the record, without specifically controverting those assertions").

1.      **On December 11, 2008, Bernard L. Madoff was arrested and the Securities and Exchange Commission ("SEC") initiated an action against him after he confessed to committing fraud through BLMIS.  United States v. Madoff, 244–45 (S.D.N.Y. 2009).**

**DEFENDANTS' OBJECTION**

The Trustee is incorrect about the timing of the action and the confession and imprecise about the nature of the fraud. In addition, the case cited by the Trustee involves unrelated issues of the nature and conditions of detention of Madoff pending trial.

**DEFENDANTS' COUNTERSTATEMENT**

On December 11, 2008, Bernard L. Madoff was arrested on a criminal complaint alleging one count of securities fraud. *U.S. v Madoff*, 1:08-mj-02735 UA (S.D.N.Y. Dec. 11, 2008) [ECF Nos. 1, 2].

On December 11, 2008, an action was commenced against Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard Madoff by the Securities and Exchange Commission ("SEC") in the United States District Court for the Southern District of New York (the "District Court") alleging violations of Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934 (the "'34 Act") and Rule 10b-5 thereunder, and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940. *SEC v. Madoff*, Case 1:08-cv-10791-LLS (S.D.N.Y. Dec. 11, 2008 [ECF No. 1].

On March 10, 2009, a criminal Information was filed in the District Court charging Bernard L. Madoff ("Madoff") with eleven felonies including securities fraud, investment adviser fraud, mail fraud, wire fraud, three counts of money laundering, false statements, perjury,

false filings with the SEC, and theft from an employee benefit plan. *United States v. Bernard L. Madoff,* 09 Cr. 213 (DC)(S.D.N.Y Mar. 10, 2009)[ECF No. 38]. Madoff pleaded guilty to all counts. *See* Transcript of Plea Hearing, 09 cr. 213 (DC) [ECF No.38] (hereinafter "Madoff Plea Transcript") (Declaration of David J. Sheehan in Support of Trustee's Motion for Summary Judgment, sworn to December 21, 2018 [ECF No. 143] ("Sheehan Dec.") Ex. 14.)

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 1. Defendants cannot controvert the facts in Trustee Statement ¶ 1. Consequently, Trustee Statement ¶ 1 is deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"). Defendants' Counterstatement incorrectly cites to the Madoff Plea Transcript in that it does not appear at ECF No. 38 in the matter captioned at 09 cr 213. The Trustee does not dispute the additional statements in Defendants' response and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee.

4. **In December 1995, Defendant Michael Mann opened an account at BLMIS. The Mann Account was assigned account number 1CM363 in the name of "Michael Mann and Meryl Mann J/T Wros" (the "Mann Account"). Defendants Michael Mann and Meryl Mann are joint tenants of the "Michael Mann and Meryl Mann Joint Tenancy with Right of Survivorship" and beneficial owners of the Mann Account, with an account address in Great Neck, New York. See Answer ¶¶ 2, 8–9, Declaration of David J. Sheehan, Ex. 8.**

**DEFENDANTS' OBJECTION**

Disputed in part. The Defendants' April 16, 2014 Answer relied upon is incorrect in

several key parts and should be deemed amended to conform to the evidence, of among

other matters, that in December 1995, Michael and Meryl Mann opened an account with

Bernard L. Madoff (as previously defined "Madoff") operating as a sole proprietorship.

Account Documents. (Declaration of Arthur H. Ruegger in Opposition to Trustee's

Motion for Summary Judgment, sworn to February 22, 2019 ("Ruegger Dec."), Ex. A.

In addition, Defendants object in general to the Trustee's citation to the Defendants' April

16, 2014 Answer. Prior to the filing of the Trustee's motion for summary judgment, the

parties had agreed that their respective prior pleadings would be deemed amended to

embrace the parties' contentions in the Proposed Joint Pretrial Order, filed November 27,

2018 (Proposed Pretrial Order, Section IV., p. 20; Sheehan Dec. Ex. 12). Consequently,

there was no need for either side to amend their pleadings to conform to the facts

uncovered in discovery or otherwise.  The Proposed Joint Pretrial Order identified the

account documents and the payment records, which are part of the Trustee's records.  The

Trustee, however, has repeatedly cited in his Trustee SOMF to the Defendants' 2014

Answer as support for -- what both sides now know are -- outdated or incorrect factual

statements.  Having agreed that the parties' pleadings would be deemed amended to

embrace their respective contentions, the Trustee should be estopped from any reliance

on outdated and incorrect allegations in the Defendants' 2014 Answer that both sides

know are erroneous. Although the Trustee is well aware of the facts and the legal

arguments regarding the source of the payments and the consequences therefrom, the

Defendants will amend their answer to conform to the evidence if the Court so requires.

**DEFENDANTS' COUNTERSTATEMENT**

Bernard L. Madoff operated as a sole proprietorship until January 1, 2001. *See* Complaint. *Picard v. BAM, L.P.,* No. 11-cv-07667 (JSR) (S.D.N.Y. Jan. 25, 2012), ¶ [ECF No. 9]. On December 16, 1995, Michael and Meryl Mann as Joint Tenants With Right of Survivorship opened an account with Bernard L. Madoff Investment Securities, the trade name of the sole proprietorship. It was assigned Account No. 1CM363 (the "Mann Account"). *See* Mann Account Documents. Ruegger Dec. Ex. A.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 4, and it is therefore not controverted. Defendants' Answer is a binding admission. Defendants admitted the facts in Trustee Statement ¶ 4 in their Answer and in the Proposed Joint Pretrial Order at ¶ 5. Defendants cannot controvert the facts in Trustee Statement ¶ 4. Consequently, Trustee Statement ¶ 4 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"). The Trustee does not dispute the additional statements in Defendants' response and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee.

The Trustee does not dispute the remaining statements set forth in Defendants' Counterstatement. The Trustee alleged in his complaint that the business of Bernard L. Madoff Investment Securities was operated as a sole proprietorship until 2001 and that Defendants' accounts were open prior to that time. *See* Amended Complaint ¶ 23, Ex. B, *Picard v. BAM, L.P.*, No. 11-cv-07667 (JSR) (S.D.N.Y. Jan. 24, 2012), ECF No. 9. The documents cited to by Defendants in their Counterstatement clearly identify the business with whom Defendants opened

their account as "Bernard L. Madoff Investment Securities."

**5.      Michael Mann subsequently opened another account at BLMIS in March 1999, assigned account number 1CM579, in the name of "BAM, L.P." (the "BAM Account, and together with the Mann Account, again the "Accounts"). Defendant Michael Mann is the sole general partner of BAM L.P. See Answer ¶¶ 2, 8.**

**DEFENDANTS' OBJECTION**

Disputed in part.  The statement is partially incorrect and should be amended to conform to the evidence that the account was not opened with BLMIS, which had not been formed at the time. Defendants also object to the Trustee's citation to Defendants' 2014 Answer (*see* Objection to Trustee SOMF ¶ 4, above).

**DEFENDANTS' COUNTERSTATEMENT**

Bernard L. Madoff operated as a sole proprietorship until January 1, 2001. *See* Complaint. *Picard v. BAM, L.P.,* No. 11-cv-07667 (JSR) (S.D.N.Y. Jan. 25, 2012), ¶ [ ECF No. 9] (the "Complaint").

In March 1999, Michael Mann opened an account with Bernard L. Madoff acting as a sole proprietorship, in the name of BAM L.P., which account was assigned account number 1CM579.  *See* BAM Account Documents.  Ruegger Dec. Ex. B. Defendant Michael Mann is the sole general partner of BAM L.P.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 5. Defendants' Answer is a binding admission.  Defendants admitted the facts in Trustee Statement ¶ 5 in their Answer and in the Proposed Joint Pretrial Order at ¶ 5.  Consequently, Trustee Statement ¶ 5 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d)

(stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"). The Trustee does not dispute the additional statements in Defendants' response and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee.

The Trustee does not dispute the remaining statements set forth in Defendants' Counterstatement. The Trustee alleged in his complaint that the business of Bernard L. Madoff Investment Securities was operated as a sole proprietorship until 2001 and that Defendants' accounts were open prior to that time. *See* Amended Complaint ¶ 23, Ex. B. The documents cited to by Defendants in their Counterstatement clearly identify the business with whom Defendants opened their account as "Bernard L. Madoff Investment Securities."

**6.    Defendants received monthly account statements, trade confirmations, quarterly portfolio management reports, and other communications from BLMIS for their accounts. See Answer ¶¶ 26, 32. Prior to BLMIS's collapse, Defendants did not have any knowledge or notice of any wrongdoing or fraudulent intent on the part of BLMIS.**

**DEFENDANTS' OBJECTION**

The statement is partially incorrect and should be amended to conform to the evidence that the Defendants received communications from Bernard L. Madoff Investment Securities. Defendants also object to the Trustee's citation to Defendants' 2014 Answer (*see* Objection to Trustee SOMF ¶ 4, above).

**DEFENDANTS' COUNTERSTATEMENT**

The Defendants received monthly account statements, trade confirmations, quarterly portfolio management reports and other communications from Bernard L. Madoff acting as a sole proprietor. Thereafter, the Defendants received monthly account statements, trade

confirmations, quarterly portfolio management reports and other communications from Bernard L. Madoff Investment Securities and BLMIS. Prior to BLMIS's collapse, Defendants did not have any knowledge or notice of any wrongdoing or fraudulent intent on the part of BLMIS.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 6. Defendants' Answer is a binding admission. Defendants admitted the facts in Trustee Statement ¶ 6 in their Answer and in the Proposed Joint Pretrial Order at ¶ 7. Defendants cite to no evidence in support of their Objection. Defendants cannot controvert the facts in Trustee Statement ¶ 6. Consequently, Trustee Statement ¶ 6 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"). The Trustee does not dispute the additional statements in Defendants' response and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee.

The Trustee does not dispute the remaining statements set forth in Defendants' Counterstatement. The Trustee alleged in his complaint that the business of Bernard L. Madoff Investment Securities was operated as a sole proprietorship until 2001 and that Defendants' accounts were open prior to that time. *See* Amended Complaint ¶ 23, Ex. B.

9.      In a consolidated ruling on Antecedent Debt in which Defendants were participating parties, the District Court held that an avoidance defendant cannot give "value for the transfers of [alleged] fictitious profits received, as "satisfaction of . . . antecedent debt" under Section 548(c). *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re Madoff Sec.)*, 499 B.R. 416, 423 (S.D.N.Y. 2013) (the "*Antecedent Debt Decision*").  The District Court had previously affirmed this same principle in *Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012), and the Bankruptcy Court subsequently reaffirmed it in *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec.)*, 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015) (the "*Omnibus Good Faith Decision*").[2]

**DEFENDANTS' OBJECTION**

Disputed in its entirety, including the footnote, on several grounds. *First*, this statement is legal argument, not a material fact. *Second,* the cited bases are court decisions, not facts from the record. Under Federal Rule of Civil Procedure 56(c)(1)(A), the Trustee's motion for summary judgment may be based on "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Third,* the statements must be based on admissible evidence, Fed. R. Civ. P. 56(c)(2).  The holding or findings of a court does not qualify as material facts. "[J]udicial findings of fact are inadmissible hearsay," *Penree v. Watson*, 2017 U.S. Dist. LEXIS 126856, 2017 WL 3437680, at *3 (N.D.N.Y. Aug. 10, 2017)) to the extent they are offered for the truth of the findings. *See Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993);

---

[2] Further affirmed in *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5–10 (Bankr. S.D.N.Y. Apr. 25, 2016); *Picard v. Lowrey*, Adv. Pro. Nos. 10-04387, 10-0448, 10-04350, 10-05110, 2018 WL1442312, at *5–8 (Bankr. S.DN.Y. Mar. 22, 2018); *Picard v. Goldenberg*, Adv. Pro. No. 10-04946 (SMB), 2018 WL 3078149, at *4 (Bankr. S.D.N.Y. June 19, 2018)

*United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1287 (11th Cir. 2001); *United States v. Nelson*, 365 F. Supp. 2d 381, 388 (S.D.N.Y. 2005)("[J]udicial findings generally do not fall under the hearsay exception established by Rule 803(8)(C)"); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001). The hearsay exception for public records, Fed. R. Evid. 803(8), does not apply to factual findings in a judicial document. *U.S. Steel, LLC,* 261 F.3d at 1287; *Nipper,* 7 F.3d at 417; *Blue Cross & Blue Shield of N.J., Inc*., 141 F. Supp. 2d at 323.

The *Antecedent Debt Decision* and *Picard v. Greiff* have been superseded and overruled by the decision of the Second Circuit Court of Appeals in *Picard v. Ida Fishman Revocable Trust*, 773 F.3d 411 (2d Cir. 2014).

The decision is not binding under the doctrine of law of the case because it is not final. See *Geltzer v. Brizinova (In re Brizinova*), 592 B.R. 442 (Bankr. E.D. N.Y. 2018) citing *Colvin v. Keen,* 900 F.3d 63, 68 (2d Cir. 2018) ("the Supreme Court long ago noted that '"[w]e think that [the law of the case doctrine] requires a final judgment to sustain the application of the rule . . . just as it does for the kindred rule of res judicata."' *United States v. U.S. Smelting Co.*, 339 U.S. 186, 198-99, 70 S. Ct. 537, 94 L. Ed. 750 (1950)") (additional citations omitted).

*Finally,* this is an isolated and selected citation to one of many issues addressed by the court. Accordingly, the statement does not accurately reflect the entirety of the decision.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 9. Instead, Defendants' Objection contains improper legal argument in violation of Local Rule 7056-1, to

which no response is required.  The Trustee disputes the characterization that the *Antecedent Debt Decision* and *Greiff* were superseded and overruled by any subsequent decision as false and inappropriate legal argument.

Defendants cannot controvert the facts in Trustee Statement ¶ 9.  Consequently, Trustee Statement ¶ 5 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

**12.     On April 16, 2014, Defendants answered the Trustee's Amended Complaint. Defendants asserted 34 affirmative defenses, including those pertaining to (i) jurisdiction, standing, and ripeness (Third, Fifth, and Sixth Affirmative Defenses); (ii) value and antecedent debt (Eighth, Fifteenth, Sixteenth, Twenty-First, and Twenty-Second Affirmative Defenses); (iii) BLMIS's purported solvency (Fourteenth Affirmative Defense); (iv) section 546(e) of the Bankruptcy Code and other limitations (Twelfth, Nineteenth, Twentieth, and Twenty-Fifth Affirmative Defenses); (v) section 278 of the New York Debtor and Creditor Law (Seventeenth and Eighteenth Affirmative Defenses); (vi) various remedies, adjustments, and setoffs they claim they are entitled to under federal or state law (Twenty-First, Twenty-Second, Twenty-Third, and Twenty-Seventh Affirmative Defenses).  *Id.* at 19–25. In addition, Defendants did not admit the Trustee's specific allegations concerning the Ponzi scheme conducted by BLMIS.  *Id.* at ¶¶ 23–37.**

**DEFENDANTS' OBJECTION**

The Defendants object to this statement on several grounds. *First,* the Defendants object to characterization of the affirmative defenses as incomplete and misleading.

*Second,* the evidence provided in the discovery period reveals that accounts were

established with the Madoff sole proprietorship and payments were made to the Defendants from an account in the name of Bernard L. Madoff, not BLMIS. Accordingly, the Defendants have asserted additional defenses. (See Defendants' Objection to the Trustee SOMF ¶4, above).

## DEFENDANTS' COUNTERSTATEMENT

Defendants' 2014 Answer did not admit to the allegations in the complaint with respect to the operations of BLMIS or the content of the applications, pleas and other documents referred to in the Complaint that were intended to establish the Trustee's case. Defendants expressly denied that the adversary proceeding arose from a Ponzi scheme. ¶1 In addition, the Defendants' 2014 Answer specifically preserved the Defendants' defenses under Section 548(c) and 546(e) of the Bankruptcy Code, as settlement payments (20th affirmative defense) and satisfaction of antecedent debts (21st affirmative defense) and all limitations periods (12th affirmative defense). *See* Answer *Picard v. Mann*, Adv. Pro. No. 10-04390 (SMB), [ECF No.40]

In addition, the Defendants expressly objected to Bankruptcy Court's jurisdiction to enter a final order in the adversary proceeding stating:

This Court lacks jurisdiction of the final adjudication of claims asserted in the Complaint under *Stern v. Marshall*, 131 S.Ct. 2594 (2011) and its progeny. The asserted claims are not core proceedings and Defendants do not consent to entry of a final order and judgment by the Bankruptcy Court. Defendants further demand a jury trial (Defendants' 2014 Answer, Third Affirmative Defense).

## TRUSTEE REPLY

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 12 and it is therefore not controverted. Trustee Statement ¶ 12 should be deemed admitted under Local Rule

21

7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee disputes the statement in Defendants' Objection that payments were made from an account in the name of Bernard L. Madoff. The account ending in -509 from which the payments were made was held in the name of Bernard L. Madoff Investment Securities LLC at the time of the transfers the Trustee seeks to recover. Declaration of David J. Sheehan in Support of Trustee's Reply Memorandum of Law in Further Support of Motion for Summary Judgment ("Sheehan Decl."), Exs. 1–7.

**13.    The Trustee conducted discovery on all claims, including serving Requests for Production, Interrogatories, and Requests for Admission. Pretrial Order at 9.  The Trustee also served subpoenas on Defendants' financial institutions for documents supporting Defendants' receipt of the relevant transfers from BLMIS.**

**DEFENDANTS' OBJECTION**

This statement warrants clarification. The Trustee may have sought documents related to the Defendants' receipt of the transfers at issue in this adversary proceeding, but that discovery effort is not material (Fed. R. Evid. 401 and 403). Defendants also object to the inference that the financial institutions provided any proof related to the transfer or even responded to the subpoenas. That statement is not supported by admissible evidence within the meaning of Fed. R. Civ. P. 56(c). Furthermore, as detailed below, Defendants object to the statement on the grounds that the transfers were not transfers of BLMIS property.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 13 and it is therefore not controverted. Trustee Statement ¶ 13 should be deemed admitted under Local Rule

7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the

motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting

that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

**14.    Defendants admit they made and received the transfers from BLMIS in
connection with their accounts, as set forth in Exhibit B to the Amended Complaint.  See
Answer at ¶ 43 ("Defendants admit that it made certain transfers and received certain
transfers from BLMIS prior to December 8, 2008.  Defendants respectfully refers the Court
to Columns 10 and 11 [of the Amended Complaint] for the complete contents thereof.").**

**DEFENDANTS' OBJECTION**

Disputed.  To the extent that the Defendants previously identified the transfers as transfers

of BLMIS property or by BLMIS, Defendants' admission was in error and directly

contradicted by documentary evidence produced by the Trustee.  The Defendants received

check transfers payable to Michael and Meryl Mann from an account in the name of

Bernard L. Madoff.  (*See* Mann Account Checks. Ruegger Dec. Ex. C).  The Defendants

did not receive these transfers from BLMIS property.  See SOMF ¶15.

**DEFENDANTS' COUNTERSTATEMENT**

On April 16, 2003, December 16, 2004, March 20, 2005, March 7, 2007 and October 24,

2007, Defendants received checks payable to Michael and Meryl Mann J/T WROS written

on Chase Account 6301428151 509 (the "509 Account") in the name of Bernard L. Madoff.

(*See* Mann Account Checks. Ruegger Dec. Ex. C).

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 14.

Defendants have admitted to receiving the transfers from BLMIS in their Answer and stipulated

that they made withdrawals from their BLMIS accounts as listed in Exhibit B to the Amended

Complaint and in the Proposed Joint Pretrial Order. *See* Answer at ¶ 43; Proposed Joint Pretrial Order ¶ 7. Consequently, Trustee Statement ¶ 14 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendants' Objection also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.

As to the remaining statements set forth in Defendants' Counterstatement, it is undisputed that Defendants received checks on the dates listed from the 509 Account. It is disputed that the 509 Account was held in the name of Bernard L. Madoff. The bank statements for that account show that the 509 Account was held in the name of Bernard L. Madoff Investment Securities at the time of the transfers the Trustee seeks to recover. Sheehan Decl., Exs. 3–7.

**15.     Specifically, over the life of the Mann Account, Defendant Michael Mann deposited a total of $14,850,000 into the Mann Account and withdrew a total of $20,650,000 from the Mann Account. Of these withdrawals from the Mann Account, $2,250,000 was withdrawn within the two-year period before the liquidation. See Joint Pretrial Order ¶ 8, Sheehan Decl. Ex. 12; Amended Complaint Ex. B; Opp'n to the Trustee's Motion in limine, ECF Nos. 126, 126-3 ("Michael Mann and BAM L.P. have admitted that the transactions listed in the [Amended] Complaint are accurate.") Tr. of Nov. 28, 2018 Hr'g ("Nov. 28, 2018 Tr.") at 7, Sheehan Decl. Ex. 10 (conceding that Defendants "don't contest" the relevant account activity and that therefore it is "not an issue at trial").**

**DEFENDANTS' OBJECTION**

The Trustee entered a Stipulation and Order dismissing with prejudice all claims to avoid any obligations against all the Defendants (Trustee SOMF ¶ 8), rendering unavoidable all

of the BLMIS's obligations to the Defendants. Moreover, assuming *arguendo* BLMIS's obligations were avoidable had there been no Stipulation, under Section 548(a)(1) of the Bankruptcy Code a trustee is barred from avoiding obligations incurred and transfers made before the two-year reach-back period, *In re Tribune Fraudulent Conveyance Litig.,* 2018 WL 6329139 at *15-*16 (S.D.N.Y. Nov. 30, 2018) (Sullivan, C.J., sitting by designation)[3]. With all relevant obligations being unavoidable, the Trustee cannot avoid the transfers based thereon, and thus the sums Michael Mann deposited or withdrew over the life of the Mann Account are irrelevant (Fed. R. Evid. 401, 403).

Moreover, what the Defendants deposited or withdrew over the life of the accounts is relevant only to customer claims and for purposes customer claims allowance, the Defendants do not contest the transactions. What occurred over the life of the account is not relevant to avoidance of obligations or transfers, which is determined at the time of the transfer.

## DEFENDANTS' COUNTERSTATEMENT

On November 30, 2006, the approximate date of the applicable two-year statute of repose fixed by section 548(a)(1) of the Bankruptcy Code, the account statement for the Mann Account reported a positive balance of $6,305,190. Thereafter, Michael Mann made a deposit of $1,500,000 and two withdrawals totaling $2,250,000. (See Mann November 30, 2006 Account Statement. Ruegger Dec. Ex. D).

On the date of each withdrawal from the account during the two-year period before the BLMIS liquidation, the statements for the Mann Account reported a positive balance in excess of the withdrawal amounts, each balance representing an unavoidable obligation

---

[3] *See also In re Tribune Fraudulent Conveyance Litig.,* 2019 WL 294807 at *21 (S.D.N.Y. Jan. 23, 2019) (Cote, D.J.)

from the broker to its customers. Thus, on February 28, 2007, before the withdrawal on March 7, 2007 of $250,000, the Mann Account reported a balance of $7,665,327. On September 30, 2007, before the withdrawal of $2,000,000 on October 24, 2007 from the Mann Account, the statement reported a balance of $8,327,789. (See Mann Statements. Ruegger Dec. Ex. E).

The Mann's withdrawal requests were paid with checks dated March 7, 2007 and October 24, 200 written on the Chase 509 Account in the name of Bernard L. Madoff. (See Mann Checks. Ruegger Dec. Ex. C). In addition, the Defendants received checks payable to Michael and Meryl Mann JT WROS written on the 509 Account dated April 16, 2003, December 16, 2004 and March 20, 2005. (*See* Mann Checks. Ruegger Dec. Ex. C).

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 15. Defendants' Objection with regards to obligations is improper legal argument in violation of Local Rule 7056-1, to which no response is required. Moreover, Defendants' contention that certain facts in Trustee Statement ¶ 15 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted. *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark v. Lawrence Hosp. Ctr.,* 07 Civ. 2861 (CS), 2008 WL 5054731, at *8 n.7 (S.D.N.Y. Oct. 20, 2008) (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

As to Defendants' Counterstatement, there is no dispute as to the dates, withdrawal amounts, or account balances listed on the account statements. The Trustee refers the Court to Exhibit B to which the Defendants admitted for a complete listing of all transactions between Defendants and BLMIS. *See* Amended Complaint Ex. B; Answer ¶ 43; Proposed Joint Pretrial Order ¶¶ 8–9. The Trustee disputes that the 509 Account was held in the name of Bernard L. Madoff. The bank statements for the Mann Account show that the 509 Account was held in the name of Bernard L. Madoff Investment Securities at the time of the transfers the Trustee seeks to recover. Sheehan Decl., Exs. 3–7. The Trustee disputes that section 548(a)(1) of the Bankruptcy Code is a statute of repose.

**16.    Similarly, over the life of the BAM Account, Defendant Michael Mann, on behalf of BAM L.P., deposited a total of $1,920,007 into the BAM Account and withdrew a total of $3,551,000 from the BAM Account. Of these withdrawals from the BAM Account, $563,000 was withdrawn within the two-year period before the liquidation. See Joint Pretrial Order at ¶ 9; Amended Complaint Ex. B.**

**DEFENDANTS' OBJECTION**

*See* Objection above to Trustee SOMF ¶ 15.

With all relevant obligations being unavoidable, the Trustee cannot avoid the transfers based thereon and the sums Michael Mann deposited or withdrew over the life of the BAM Account are irrelevant to the avoidance of transfers based on unavoidable obligations.

Moreover, what the Defendants deposited or withdrew over the life of the accounts is relevant to allowance or disallowance of customer claims, but not to avoidance of obligations or transfers, which is determined at the time of the transfer.

**DEFENDANTS' COUNTERSTATEMENT**

On November 30, 2006, the approximate date of the applicable two-year statute of repose fixed by Section 548(a)(1) of the Bankruptcy Code, the statement for the BAM account reported a balance of $1,091,896.12, which represented an unavoidable obligation from the broker to its customer.  (See November 30, 2006 Account Statement.  Ruegger Dec. Ex. F).  Thereafter, BAM withdrew a total of $563,000.

On the date of each withdrawal from the account during the two-year period, the BAM statement reported a positive balance in excess of the withdrawal amounts, each balance reflecting unavoidable obligations from BLMIS to its customers, including BAM.  Thus, on March 31, 2007 before the April 17, 2007 withdrawal of $88,000, BAM's account statement reported a balance of $1,132,452.  On June 30, 2007 before BAM withdrew $300,000 on July 25, 2007, the BAM Account balance of $1,075,738.  On September 30, 2007 before BAM made a withdrawal of $50,000 on October 24, 2007, the BAM Account a reported a balance of $801,193.  On December 31, 2007, before BAM made a $15,000 withdrawal from its account, the reported BAM Account balance was $775,127.75. Finally, on March 31, 2008, before the last withdrawal on April 23, 2008 of $110,000, the BAM account reported a balance of $762,516.  (*See* BAM Statements. Ruegger Dec. Ex. G).

The BAM withdrawal requests were paid with checks dated April 17, 2007, July 25, 2007, October 24, 2007, January 23, 2008 and April 23, 2008 and written on the 509 Account in the name of Bernard L. Madoff.  (*See* BAM Checks Ruegger Dec. Ex. H).  In addition, BAM received checks payable to BAM written on the Chase 509 Account on April 25, 2000, October 12, 2000, April 23, 2002, June 25, 2002, April 16, 2003, January 6, 2004, March 2, 2005 April 8, 2005 and January 5, 2006.  (Ruegger Dec. Ex. H).

28

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 16. Defendants' Objection with regards to obligations is improper legal argument in violation of Local Rule 7056-1, to which no response is required. Moreover, Defendants' contention that certain facts in Trustee Statement ¶ 16 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted. *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson,* 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

As to Defendants' Counterstatement, there is no dispute as to the dates, withdrawal amounts, or account balances listed on the account statements with the exception of the March 31, 2007 statement, which reported a balance of $1,132,452.**50** (missing the 50 cents), and the June 30, 2007 statement, which reported a balance of $1,075,7**58** (58 not 38). The Trustee refers the Court to Exhibit B to which the Defendants admitted for a complete listing of all transactions between Defendants and BLMIS. *See* Amended Complaint Ex. B; Answer ¶ 43; Proposed Joint Pretrial Order ¶¶ 8–9. The Trustee notes that the Trustee Statement inadvertently stated that Defendant Michael Mann, on behalf of BAM L.P., deposited a total of $1,920,007 when it was actually $2,415,007 pursuant to Exhibit B. *See id.* The Trustee disputes that the 509 Account was held in the name of Bernard L. Madoff. The bank statements for the BAM Account show that the 509 Account was held in the name of Bernard L. Madoff Investment Securities at the time of the

29

transfers the Trustee seeks to recover.  Sheehan Decl., Exs. 3–7.  The Trustee disputes that section 548(a)(1) of the Bankruptcy Code is a statute of repose.

**17.    Discovery concluded in December 2015. Defendants did not disclose any witnesses or serve any expert reports on either the case-in-chief or the rebuttal expert deadlines.  Nor did they depose any of the Trustee's experts.**

### DEFENDANTS OBJECTION & COUNTERSTATEMENT

The Trustee's statement is incorrect. Defendants have listed Michael Mann as a witness. S*ee* Proposed Joint Pretrial Order, *Picard v. BAM L.P.*, Adv. No. 10-04390 (SMB).

### TRUSTEE REPLY

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 17, because they did not disclose any witnesses at the time discovery closed, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 17 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted").

The Trustee does not dispute the remaining statements set forth in Defendants' Counterstatement.

**18.    On October 26, 2018, Defendants filed a motion to withdraw the reference of the Mann Action to the District Court, claiming they have a right to have a jury hear their claims.**

### DEFENDANTS' OBJECTION

This statement is not supported by reference to any evidence and it is not material to the outcome of this motion (Fed. R. Evid. 401, 403).

### DEFENDANTS' COUNTERSTATEMENT

Defendants timely requested a trial by jury and did not consent to entry of a final order by

the Bankruptcy Court.  *See* Answer, Third Affirmative Defense.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 18 and is therefore not controverted.  Moreover, because Defendants assert that Trustee Statement ¶ 18 is not relevant, the factual statement is therefore deemed admitted.  *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson,* 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

The Trustee does not dispute the remaining statements set forth in Defendants' Counterstatement.

**19.    While that motion was pending, the Bankruptcy Court set a trial date for December 3, 2018.  ECF No. 108.**

**DEFENDANTS' OBJECTION**

This statement is not relevant to the outcome of this motion (Fed. R. Evid. 401, 403).

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 19 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 19 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted").  Moreover, Defendants' contention

that certain facts in the Trustee Statement ¶ 19 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See Zhao-Royo v. New York State Educ. Dep't*, 14 Civ. 0935 (GTS) (CFH), 2017 WL 149981, at *2, n.2 (N.D.N.Y. Jan. 13, 2017) ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark v. Lawrence Hosp. Ctr.*, No. 07 Civ. 2861(CS), 2008 WL 5054731, at *8 n.7 (S.D.N.Y. Oct. 20, 2008) (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material.").

20.    **Defendants filed an emergency motion for a stay of the trial, claiming that the Bankruptcy Court did not have jurisdiction to hear the matter.  See Defendants' Memorandum Of Law, ECF No. 121-1.  The Bankruptcy Court adjourned the trial date *sine die* while the parties briefed the issue of whether the Bankruptcy Court has jurisdiction to hear the case as a result of the Defendants' withdrawal of their customer claims with prejudice, discussed below.**

### DEFENDANTS' OBJECTION

This statement is not supported by reference to any evidence and it is not material Fed. R. Civ. P. 56(c); Fed. R. Evid. 401, 403)

### TRUSTEE REPLY

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 20 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 20 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted").  Moreover, Defendants' contention

that Trustee Statement ¶ 20 is not relevant is not a sufficient response or denial, and therefore, the

factual statement is deemed admitted.  *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The

materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be

made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a

fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see*

*also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-

movant merely objected to the materiality of the facts); *cf. Anderson,* 477 U.S. at 248 ("As to

materiality, the substantive law will identify which facts are material.").

> 21.    **The question of the Bankruptcy Court's jurisdiction in this matter has been
> fully briefed and the parties are awaiting a decision.**

### DEFENDANTS' OBJECTION

This statement is no longer accurate.  See Memorandum and Order dated January 18, 2019.

The Defendants have filed a notice of appeal from this order and a motion for leave to

appeal with the District Court.

### TRUSTEE REPLY

Undisputed.

> 25.    **The Determinations state the following:**

> **Your claim is DENIED. No securities were ever purchased for your
> account . . . [b]ased on the Trustee's analysis, the amount of money you
> withdrew from your BLMIS account at BLMIS . . . is greater than the
> amount that was deposited with BLMIS . . . . As noted, no securities were
> ever purchased for your account. Any and all profits reported to you by
> BLMIS on account statements were fictitious. Since there were no profits
> to use either to purchase securities or to pay you any money beyond the
> amount that was deposited into your BLMIS account, the amount of
> money you received in excess of deposits in your account [] was taken from
> other customers and given to you.  *Id.*

**DEFENDANTS' OBJECTION**

The statement is accurate insofar as it reflects a small portion of the Determination, but misleading. The Determinations also state that Determination could be subject to judicial review and reversal. Moreover, the Determinations are merely part of an administrative procedure. The Trustee's Determinations were tested in court and superseded by two Second Circuit decisions, which became final orders. *See In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 229 (2d Cir. 2011) and *In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74 (2d Cir. 2015) Letters of Determination. Ruegger Dec. Ex. I.

**DEFENDANTS' COUNTERSTATEMENT**

On August 28, 2009, the Trustee issued a Notice of Trustee's Determination of Claim with respect to the Mann Customer Claim (the "Mann Determination"). The Mann Determination states:

Should a final and unappealable court order determining that Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claim in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order. See Mann Determination Letter. Ruegger Dec. Ex I. ¶

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 25 and it is therefore not controverted. Defendants' Objection contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. Consequently, Trustee Statement ¶ 25 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also*

*Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). The Trustee disputes that his "Determinations were tested in court and superseded by two Second Circuit decisions, which became final orders." Rather, the Trustee's Net Investment Method was approved by the Second Circuit and rendered final by an unappealable order of the Supreme Court. *See In re BLMIS*, 424 B.R. 122, 125-32 (Bankr. S.D.N.Y. 2010), *aff'd,* 654 F.3d 229 (2d Cir. 2011), *certiorari denied,* 567 U.S. 934 (2012).

As to Defendants' Counterstatement, it is undisputed that the Determination Letter is accurately quoted.

**26.    The Determinations provide schedules listing the date, transaction description (i.e., check, check wire), and amount of each withdrawal and deposit transaction between BLMIS and Defendants. *Id*.**

### DEFENDANTS' OBJECTION

The Defendants do not object to the statement insofar as the schedules list dates, transaction type and amounts. However, the schedules do not reflect the identity of the parties. BLMIS did not make the distributions to the Defendants. Moreover, the schedules were provided solely to establish whether the Manns and/or BAM L.P. had a customer claim for distribution from the BLMIS estate.

### DEFENDANTS' COUNTERSTATEMENT

The Determinations provide schedules listing the date and transaction description and amount of each withdrawal and deposit transactions solely for purposes of determining the allowance or disallowance of customer claims in the SIPA administrative proceeding using the net investment method.

35

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 26 and it is therefore not controverted.  Trustee Statement ¶ 26 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

As to Defendants' Counterstatement, the Trustee disputes that the SIPA proceeding is an administrative proceeding and that the schedules are "solely" for the allowance or disallowance of claims.

**28.    In the Objections, the Manns argued that the Trustee's use of the net investment method was improper because the Trustee was bound by the amounts showing on their last statements, that the Trustee's calculation wrongly extended beyond the limitations period for avoidance of a claim under federal or state law, and that the Manns are entitled to interest and damages under federal securities law. Id.**

**DEFENDANTS' OBJECTION**

Defendants object to this statement as irrelevant given the Second Circuit's later decision on net equity (Fed. R. Evid. 401, 403). In addition, Defendants object to the Trustee's characterization of the Objections to the extent that statement is incomplete and misleading. In the Objections, the Defendants contended that: the calculation was unsubstantiated and incorrect; the Trustee's use of the Net Investment Method was inconsistent with the purpose and goals of SIPA; the use of the net investment method was inconsistent with definition of net equity under SIPA and the Rules promulgated under SIPA; the determination was contrary to SIPC's own policies and practices and goes "beyond any

limitations period for avoidance of a claim under either state or federal law;" and even if

his methodology is adopted, the Trustee should have adjusted his calculation to account for

interest and damages caused by Madoff. *In Bernard L. Madoff Investment Securities LLC,*

Adv. Pro No. 08-01879 (SMB).[ECF Nos.461 and 815].

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 28 and it

is therefore not controverted.  Trustee Statement ¶ 28 should be deemed admitted under Local Rule

7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the

motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting

that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Defendants'

statements in court filings remain relevant even though the Second Circuit subsequently ruled on

the net equity issue.

As to Defendants' Counterstatement, it is undisputed that Defendants also included

additional bases in their Objections, although they re-state certain of the objections that the Trustee

listed in his Statement.

**29.    In October 2009, the Trustee brought a motion before the Bankruptcy Court**

**seeking to affirm his calculation of net equity for customer claims in this case using a cash**

**in/cash out methodology.  The legal basis for the Trustee's motion was that Madoff was**

**conducting a Ponzi scheme. Main Case, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. June 10,**

**2009), ECF No. 524.**

**DEFENDANTS' OBJECTION**

Defendants object to the second sentence of this statement is legal argument, not a material

fact. Fed. R. Civ. P. 56(c).

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 29 and it

is therefore not controverted.  Trustee Statement ¶ 28 should be deemed admitted under Local Rule

7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the

motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting

that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  The second

sentence of Trustee Statement ¶ 29 is not legal argument, but a factual statement as to the basis for

the Trustee's motion.

30.    **On March 1, 2010, the Bankruptcy Court ruled that net equity customer**

**claims in this case must be calculated on a cash in/cash out basis.  The basis for the Court's**

**holding was that:**

> **Rather than engage in legitimate trading activity, Madoff used customer funds to**
> **support operations and fulfill other investors' requests for distributions of profits to**
> **perpetuate his Ponzi scheme.  Thus, any payment of "profit" to a BLMIS customer**
> **came from another BLMIS customer's initial investment.  Even if a BLMIS customer**
> **could afford the initial fake purchase of securities reported on his customer statement,**
> 15 **without additional customer deposits, any later "purchases" could be afforded**
> **only by virtue of recorded fictional profits. Given that in Madoff's fictional world no**
> **trades were actually executed, customer funds were never exposed to the**
> **uncertainties of price fluctuation, and account statements bore no relation to the**
> **United States securities market at any time.  As such, the only verifiable transactions**
> **were the customers' cash deposits into, and cash withdrawals out of, their particular**
> **accounts. Ultimately, customer requests for payments exceeded the inflow of new**
> **investments, resulting in the Ponzi scheme's inevitable collapse.**
> **Net Equity Decision, 424 B.R. at 128.**

**DEFENDANTS' OBJECTION**

Disputed in its entirety. Court holdings and findings of fact are inadmissible hearsay.  See

the response above to the Trustee SOMF ¶ 9.  In addition, this is an isolated and selected

citation to one of many issues addressed by the court.  Accordingly, it does not even

accurately reflect the entirety of the decision. Moreover, the decision was also overruled in

several aspects. The court concluded incorrectly that the payments would not be afforded the protections of Section 546(e) of the Bankruptcy Code. Finally, the citation to the case is not proper.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 30 and it is therefore not controverted. Instead, Defendants' Objection contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. The fact of the decision cited and its holding inform this Court's disposition of material issues in the case, regardless of Defendants' Objection. Consequently, Trustee Statement ¶ 30 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

**31.     In its subsequent order, the Court further held that "the objections to the determinations of customer claims, as listed on Exhibit A to the Trustee's Motion [Dkt. No. 530], are expunged insofar as those objections are based upon using the Final Customer Statements rather than the Net Investment Method to determine Net Equity." Main Case, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y. June 10, 2009), ECF No. 2020 (the "Net Equity Order"). The Net Equity Order further provided that the Bankruptcy Court "shall retain jurisdiction with respect to the remainder of the claimants' objections" and "the Trustee shall in due course schedule a hearing or hearings regarding the remainder of the claimants' objections in accordance with the Claims Procedures Order." *Id*.**

**DEFENDANTS' OBJECTION**

Disputed. Defendants do not dispute that the Mann Claim and Objection were disallowed

39

and expunged insofar as they were based in the last statement rather than the Net Investment Method. However, court holdings and findings of fact are inadmissible hearsay. See the response above to the Trustee SOMF ¶ 9.  The holding of a court does not qualify as a material fact.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 31 and it is therefore not controverted.  The fact of the decision cited and its holding inform this Court's disposition of material issues in the case, regardless of Defendants' Objection.  Consequently, Trustee Statement ¶ 31 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

**32.     The Manns' claims were listed on Exhibit A to the Trustee's motion. Under the Net Equity Order, the claims of Michael and Meryl Mann were disallowed to the extent they exceed net equity and the portions of the objections based on last statement were expressly expunged. Defendants' remaining objections remained pending and unresolved.**

**DEFENDANTS' OBJECTION**.

The Defendants object to the last sentence of the statement to the extent that it does not indicate what remaining objections actually remained unresolved and implies that such objections remain pending and unresolved.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 32. Defendants do not dispute that certain objections remain pending and unresolved.  Defendants

cannot controvert the facts in Trustee Statement ¶ 32. Consequently, Trustee Statement ¶ 32 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

**33.    On appeal, the Second Circuit affirmed the Net Investment Method. *See In re Bernard L. Madoff Inv. Sec.*, 654 F.3d 229 (2011), cert. dismissed sub nom. *Sterling Equities Assocs. v. Picard*, 566 U.S. 1032 (2012), cert. denied sub nom. *Ryan v. Picard*, 567 U.S. 934 (2012). In the subsequent *Antecedent Debt Decision*, the District Court validated the net equity formula to determine avoidance liability, explaining that "amounts transferred by Madoff Securities to a given defendant at any time are netted against the amounts invested by that defendant in Madoff Securities at any time." 499 B.R. at 423.**

### DEFENDANTS' OBJECTION

Disputed. Court holdings and findings of fact are inadmissible hearsay. See the response above to the Trustee SOMF ¶ 9. Furthermore, the *Antecedent Debt Decision* and *Picard v. Greiff* have been superseded and overruled by the decision of the Second Circuit Court of Appeals in *Picard v. Ida Fishman Revocable Trust*, 773 F.3d 411 (2d Cir. 2014).

### TRUSTEE REPLY

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 33 and it is therefore not controverted. Consequently, Trustee Statement ¶ 33 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee disputes that the *Antecedent Debt Decision* and *Picard v. Greiff* were superseded and overruled by *Picard v. Ida Fishman Revocable Trust*, 773 F.3d 411 (2d Cir. 2014). The Trustee further avers that the fact of the decision cited and its holding inform this Court's disposition of material issues in the case, regardless of Defendants' Objection.

34.    **Between 2009 and 2014, the Trustee litigated various issues relating to the cash in/cash out methodology, including whether claimants were entitled to interest on their net equity claims and whether to include fictitious profits in the calculation of transfers between BLMIS accounts. *See Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC*), 779 F.3d 74 (2d Cir. 2015) (rejecting argument that Trustee's claims do not account for time value of money); In re BLMIS, 697 F. App'x 708 (2d. Cir. 2017) (affirming Trustee's inter-account transfer methodology in summary order).**

**DEFENDANTS' OBJECTION**

Disputed. The Defendants do not deny that certain court rulings disposed of their objections to the Trustee's determination. However, court holdings and findings of fact are inadmissible hearsay. See the response above to the Trustee SOMF ¶ 9.

**DEFENDANTS' COUNTERSTATEMENT**

Between 2009 and 2014, the Trustee litigated various issues relating to the cash in/cash out methodology, including whether claimants were entitled to interest on their net equity claims and the ruling in *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC*), 779 F.3d 74 (2d Cir. 2015) together with the net equity decision and the acceptance of the dates and amount of the transactions in the accounts, disposed of Defendants' Objections to the trustee's determination.

42

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 34 and it is therefore not controverted. The fact of the decision cited and its holding inform this Court's disposition of material issues in the case, regardless of Defendants' Objection. Consequently, Trustee Statement ¶ 34 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

As to Defendants' Counterstatement, the Trustee disputes that the decisions cited disposed entirely of Defendants' Objections to the Trustee's Notice of Determination of Claim. However, this dispute does not preclude summary judgment for the Trustee because the Defendants have since withdrawn their objections.

**35.    On June 1, 2018, Defendants filed notices to withdraw their Objections. See Notice of Withdrawal, Main Case, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. June 1, 2018), ECF Nos. 17630, 17623.**

**DEFENDANTS' OBJECTION**

This is not a material fact that affects the outcome of the litigation (Fed. R. Evid. 401, 403).

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 35 and it is therefore not controverted. Trustee Statement ¶ 35 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"). Moreover, Defendants' contention that Trustee Statement ¶ 35 is not relevant is not a sufficient response or denial, and therefore the factual

statement is deemed admitted. *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of

an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the

Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the

Court has concluded that the fact is material, the fact will be deemed admitted."); *see also*

*Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant

merely objected to the materiality of the facts); *cf. Anderson,* 477 U.S. at 248 ("As to materiality,

the substantive law will identify which facts are material.").

 **36.**  **On July 27, 2018, the Trustee moved to strike the withdrawals, asserting that**

**a claimant may not unilaterally withdraw its claim or objection under Rule 3006 of the**

**Federal Rules of Bankruptcy Procedure and Rule 41 of the Federal Rules of Civil Procedure.**

**See Trustee's Motion To Strike, Main Case, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.**

**July 27, 2018), ECF No. 17864.**

 **DEFENDANTS' OBJECTION**

 This is not a material fact that affects the outcome of the litigation (Fed. R. Evid. 401, 403).

 **TRUSTEE REPLY**

 Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 36 and it

is therefore not controverted.  Trustee Statement ¶ 36 should be deemed admitted under Local Rule

7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the

motion unless "specifically controverted").  Moreover, Defendants's contention that Trustee

Statement ¶ 36 is not relevant is not a sufficient response or denial, and therefore the factual

statement is deemed admitted. *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of

an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the

Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the

Court has concluded that the fact is material, the fact will be deemed admitted."); *see also*

*Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant

merely objected to the materiality of the facts); *cf. Anderson,* 477 U.S. at 248 ("As to materiality,

the substantive law will identify which facts are material.").

       37.     **The Bankruptcy Court granted the Trustee's motion, holding the withdrawals**

**were "stricken and have no legal effect." Order, Main Case, Adv. Pro. No. 08-01789 (SMB)**

**(Bankr. S.D.N.Y. Oct. 4, 2018), ECF No. 18051.**

       **DEFENDANTS' OBJECTION**

Disputed. Court holdings and findings of fact are inadmissible hearsay. See the response

above to the Trustee SOMF ¶ 9. In addition, this is an isolated and selected citation to one

of many issues addressed by the court. Accordingly, it does not even accurately reflect the

entirety of the ruling.

       **TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 37 and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 34 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The fact of the decision cited and its holding inform this Court's disposition of material issues in

the case, regardless of Defendants' Objection.

38.     **On the eve of trial before the Bankruptcy Court, Defendants made an oral motion to withdraw their claims with prejudice. Nov. 28, 2018 Tr. at 16.**

### DEFENDANTS' OBJECTION

The transcript will clearly reveal that the motion was made at the invitation of the Court. Neither the timing of the motion nor the motion itself was planned by the Defendants.

Nov. 28, 2018 Transcript, Sheehan Dec. Ex. 10.

### TRUSTEE REPLY

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 38 and it is therefore not controverted.  Trustee Statement ¶ 38 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted") ; *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  The additional statements in Defendants' response do not preclude summary judgment for the Trustee.

39.     **During the hearing, this Court suggested the Trustee to move for summary judgment. See Nov. 28, 2018 Tr. at 25–26.  The Court again authorized the Trustee to move for summary judgment at a hearing on December 19, 2018.  Tr. of Dec. 19, 2018 Hr'g at 31–32, Sheehan Decl. Ex. 11.**

### DEFENDANTS' OBJECTION

The Defendants do not dispute the fact that the Court made certain statements on the record, but they dispute any inference by reference to courtroom colloquy that the statements reflect a pre-determination of the outcome of the motion.

### TRUSTEE REPLY

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 39 and it

is therefore not controverted.  Trustee Statement ¶ 39 should be deemed admitted under Local Rule

7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the

motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting

that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

**40.    On December 19, 2018, the Court entered an order granting Defendants'**
**motion to withdraw their claims with prejudice (the "Withdrawal Order").  Sheehan Decl.**
**Ex. 13.**

### DEFENDANTS' OBJECTION

The Defendants do not deny that the Court entered an order. However, the statement is

subject to clarification.  The Court directed the Trustee to prepare a plain vanilla order.

Consequently, the order itself simply dismisses the claims and objections with prejudice.

There are no conditions imposed on the dismissal and no statements regarding the

consequence of dismissal.  The Trustee did not object to the dismissal of claims and

objections.  The title of the order was supplied by the Trustee and is in violation of the

Court's directive. *Picard v. BAM*, Adv. No. 10-04390 (SMB).

### DEFENDANTS' COUNTERSTATEMENT

On December 19, 2018, the Court entered an order granting Defendants' motion to

withdraw their claims with prejudice (the "Withdrawal Order"). As directed by the Court,

the order simply approves dismissal of the customer claims and the Objections.  There are

no findings of fact or conditions with respect to the dismissal.  The Trustee did not object

to the withdrawal of the Claims or Objections. *Picard v. BAM*, Adv. No. 10-04390 (SMB).

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 40 and it is therefore not controverted. Trustee Statement ¶ 40 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee does not dispute Defendants' Counterstatement, and further clarifies that a condition for withdrawal was that the withdrawal be made with prejudice.

**41.    The Withdrawal Order was an adjudication on the merits that BLMIS conducted a Ponzi scheme that Defendants received fictitious profits instead of legitimate distributions, and that money Defendants received came from other BLMIS customers.**

**DEFENDANTS' OBJECTION**

Disputed. This is legal argument, not a fact that material or otherwise. It has no place in the statement of material undisputed fact and belongs in the Trustee's memorandum of law. The Defendants dispute the legal conclusion.

**TRUSTEE REPLY**

The Trustee avers that the statement regarding the Trustee's allegations inform this Court's disposition of material issues in the case, regardless of Defendants' Objection.

42.    While Defendants' accounts were open, BLMIS was headquartered at 885 Third Avenue, New York, New York and operated its investment advisory business in that location.  BLMIS was registered with the Securities and Exchange Commission as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b).  See Answer ¶ 23.  In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration, which represented, inter alia, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion.  See Answer ¶ 35 (referring the Court to the referenced Application "for the complete contents therein").

**DEFENDANTS' OBJECTION**

Disputed in part.  For several reasons, there is no admissible evidence in the record to support the majority of the statements.  *First,* Defendants object to any citation by the Trustee to Defendants' 2014 Answer (*see* Objection to Trustee SOMF ¶ 4, above). *Second*, Paragraph 23 of that 2014 Answer merely admitted BLMIS was a broker-dealer registered with the SEC and a member of SIPC and denied knowledge or information as to the remainder of the Complaint's paragraph 23.  *Third,* paragraph 35 of the 2014 Answer denied knowledge or information as to that paragraph of the Complaint but refers the Court to a document that is not in evidence.  *Finally,* the statement is inaccurate with respect to the description of BLMIS and the Defendants' accounts.  BLMIS did not exist until January 2001.  The Mann account was opened in 1995.  The BAM account was opened in 1999.  The accounts predate the formation of BLMIS; Ruegger Dec. Exs. A & B.

**DEFENDANTS' COUNTERSTATEMENT**

BLMIS was headquartered at 885 Third Avenue, New York, New York and operated its

investment advisory business in that location. BLMIS was registered with the Securities and Exchange Commission as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). Complaint. *Picard v. BAM L.P.* ¶ __.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 42. Defendants' Answer is a binding admission. Defendants admitted the facts in Trustee Statement ¶ 42 in their Answer and in the Proposed Joint Pretrial Order at ¶ 3 and 5. Consequently, Trustee Statement ¶ 42 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted").

As to Defendants' Counterstatement, the Trustee avers that Defendants' Objection that BLMIS did not exist until 2001 is contradicted by the record, the pleadings, and the admissions of the parties. *See* Amended Complaint ¶ 23; Proposed Joint Pretrial Order ¶¶ 5–7; Ruegger Dec. ¶¶ 4–5, Exs. A–B. Although BLMIS did not become an LLC until 2001, Madoff operated the sole proprietorship under the name "Bernard L. Madoff Investment Securities LLC" since it was opened. Amended Complaint ¶ 23. There is no dispute as to this fact and even if there were, it would not prevent the Court from granting summary judgment to the Trustee. As to the remainder of Defendants' Counterstatement, it merely restates what is in the Trustee's statement and is therefore undisputed.

43.     The plea allocutions of Madoff and BLMIS employees Frank DiPascali, David
Kugel, Eric Lipkin, Irwin Lipkin, and Enrica Cotellessa-Pitz establish that BLMIS
conducted a Ponzi scheme. *See* Sheehan Decl. Exs. 14 through 19.  The allocutions establish
that no securities were purchased for customer accounts and that customer redemptions
were paid from money on hand in BLMIS's bank account at JPMorgan until the scheme
collapsed.

**DEFENDANTS' OBJECTION**

Disputed.  This is legal argument, not a fact that is material or otherwise.  It belongs in the
Trustee's memorandum of law but has no place in the statement of material undisputed
facts.

In addition, it is not an accurate statement.  None of the named parties were charged with
or pleaded guilty to conducting a Ponzi scheme, and their allocutions do not suffice to
prove a Ponzi scheme was being conducted.  The guilty pleas establish that BLMIS did not
execute the split strike conversion strategy that BLMIS promised the customers and that
the customers were victims of securities fraud and investment advisor fraud.  The plea
allocutions do not establish the factors regularly associated with Ponzi schemes and the
evidence is contrary to establishing the primary feature of a Ponzi scheme -- that early
redeeming investors are paid with later investors' funds.  The plea allocutions of Madoff
and the employees establish that they either conspired to and/or did commit securities fraud
and investment advisor fraud.

Finally, the Trustee did not depose these employees in connection with their BLMIS
activities.

**DEFENDANTS' COUNTERSTATEMENT**

BLMIS, from time to time, engaged in fraudulent activities, but lacked the characteristics of a classic Ponzi scheme. The factors that are usually present in such cases are not present here.

The Manns were not promised and did not receive exorbitant returns. The portfolio managements reports sent to the Defendants reported the percentage return on a monthly basis and at the end of each year on an annual basis. The portfolio management reports provided to the Defendants indicated that the annual returns on the Mann Account over the period from January 2002 through 2008 ranged between 13.62% and 10.23 %. See Mann Portfolio Management Reports. Ruegger Dec. Ex. J. The portfolio management reports provided to BAM indicated that the percentage annual returns on the BAM Account over the period from January 2002 through 2008 ranged between 13.96% and 10.4%. See BAM Portfolio Management Reports. Ruegger Dec. Ex. K.

The Manns were not early redeeming investors. As the transaction statements and Account Documents demonstrate, withdrawals and deposits could be made and were made at the discretion of the customers at any time. The Mann and BAM Accounts remained active account though and including 2008.

Contrary to the statements of the Trustee, Madoff was engaged in active trading of U.S. Treasury Securities and other securities.[4] See Trading Records, Ruegger Dec. Ex. L.

A Chase bank: Account No. 140-081703 (the "703 Account") maintained in the name of Bernard L. Madoff or Bernard L. Madoff Investment Securities controlled by Madoff held customer deposits, proceeds of sales of securities, short term commercial

---

[4] The accompanying trading records (Ruegger Dec. Ex. L) represent a sampling of trading records that the Defendants could find in the Trustee's data base. [JPMC G Account statements from 2007 on Tbills]

paper and derivatives and interest earned on deposits. In November 2006 this account held and invested over $10 billion dollars. As late as September of 2008, this account accumulated, from all sources over $11 billion dollars. This account enabled Madoff to meet the redemption requests of customers for years until the market collapse at the end of 2008. In sum, it is inaccurate to say that early redeeming depositors were paid with later depositors funds. Chase Account Statements, Ruegger Dec. Ex. M.

Madoff and the BLMIS employees admitted to conspiring to and/or committing securities fraud and investment advisor fraud. Their criminal acts form the legal predicate for the Defendants' defenses under federal and state securities laws.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 43. Defendants object on the basis that no former BLMIS employee was charged with running a Ponzi scheme but there is no such crime in the United States Code. The allocutions and what they establish speak for themselves. Defendants concede that BLMIS did not conduct the split strike conversion strategy, *see* Counterstatement ¶¶ 59, 62, and it is undisputed that Defendants' accounts were at all times in the split strike conversion strategy. *See* Amended Complaint, Exs. B–C; Trustee Statement ¶¶ 4–5; Counterstatement ¶¶ 4–5. The remainder of Defendants' Objection contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. Defendants cannot controvert the facts in Trustee Statement ¶ 43. Consequently, Trustee Statement ¶ 43 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted").

As to Defendants' Counterstatement that BLMIS did not operate a Ponzi scheme as part of

its fraudulent activities and that BLMIS did not feature the characteristics of a Ponzi scheme, the Trustee disputes the characterization "not exorbitant" as it relates to the returns Defendants received. Defendants offered no admissible evidence (e.g., expert testimony, data regarding returns in the market during the same period) to support their assertion that the returns were not exorbitant, as is required by Local Rule 7056-1(e). It is not disputed that Defendants received the range of returns listed in their Counterstatement.

The statement that Defendants were not "early redeeming investors" is disputed. Defendants opened their accounts in 1995 and 1999 and began making redemptions in 2000. Answer ¶ 43; Proposed Joint Pretrial Order ¶¶ 5, 7–9. Whether withdrawals and deposits could be made at any time is immaterial to the facts set forth in Trustee Statement ¶ 43 and does not preclude summary judgment for the Trustee.

It is undisputed that, on occasion, BLMIS purchased treasuries and other short-term investments with the cash in the 703 Account. It is disputed that these purchases were for customer accounts. The documents cited to by Defendants do not establish that these purchases were made for customer accounts, including Defendants' accounts. See Ruegger Decl. Ex. L.

It is undisputed that BLMIS held the 703 Account at JPMorgan and that the account held customer deposits, short term commercial paper, and, and interest earned on deposits. It is disputed that the 703 Account held proceeds of sales of securities for or from customer accounts, or derivatives. It is undisputed that the 703 Account had over $10 billion in both credits and debits in November 2006, although the ending ledger balance was $609,845.65. Further, it is disputed that the 703 Account "held and invested" over $10 billion in November 2006. It is undisputed that as of September 2008, the 703 Account had over $11 billion in both credits and debits, although the ending ledger balance for the month was $418,000.37. It is undisputed that the 703 Account

was used to make customer redemptions up to and including 2008 but it disputed that the 703 Account had sufficient cash to pay BLMIS's customer liabilities at any time. The last sentence of paragraph 5 of Defendants' Counterstatement is disputed and not material to grant summary judgment to the Trustee.

It is undisputed that Madoff and his employees plead guilty to securities fraud and investment advisor fraud, among other crimes. Whether these crimes form the legal predicate to Defendants' defenses is a legal argument to which no response is required.

**44.    On March 12, 2010, Madoff admitted to a fraudulent scheme and pleaded guilty to eleven counts including securities fraud, investment adviser fraud, mail fraud, wire fraud, three counts of money laundering, false statements, perjury, false filings with the SEC, and theft from an employee benefit plan. Answer at ¶¶ 1, 12 (referring the Court to the relevant transcript dated March 12, 2009, and "other filings and pleadings in that case for the complete contents therein").**

### DEFENDANTS' OBJECTION

The statement is not supported by admissible evidence. The 2014 Answer denied knowledge or information as to that plea agreement and referred the Court to a document that is not in evidence.

### TRUSTEE REPLY

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 44. Madoff's allocution is admissible evidence of the crimes to which he plead guilty to and is referred to in the Trustee's complaint and admitted to in Defendants' Answer. *See* Amended Complaint ¶¶ 1, 12, 17; Answer ¶¶ 1, 12, 17. Consequently, Trustee Statement ¶ 44 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Court further may also take judicial notice of the judgments entered against Madoff.  *See* Fed.

R. Evid. 201; *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995).

**45.      At a plea hearing on March 12, 2009, in the case captioned *United States v.***

***Madoff*, No. 09-CR-213 (DC), Madoff pleaded guilty to an 11-count criminal action filed**

**against him by the United States Attorney for the Southern District of New York. Plea**

**Allocution of Bernard L. Madoff, United States v. Madoff, No. 09-CR-213 (DC) (S.D.N.Y.**

**Mar. 12, 2009) (the "Madoff Allocution"), ECF No. 143-1, Sheehan Decl. Ex. 14; see also**

**Answer ¶ 17 (referring the Court to the plea allocution).**

### DEFENDANTS OBJECTION

Disputed in part, for several reasons.

*First,* Defendants object to any citation by the Trustee to Defendants' 2014 Answer (*see*

Objection to Trustee SOMF ¶ 4, above).

*Second*, Paragraph 17 of that 2014 Answer denied knowledge or information as to the

allegations of the Complaint's paragraph 17 and referred the Court to the March 12, 2009

allocution of Bernard Madoff for the statements made that day.

*Finally,* the Trustee does not describe the counts to which Madoff pleaded guilty, which

are related primarily to securities and investment advisor fraud.

### DEFENDANTS' COUNTERSTATEMENT

On March 10, 2009, a criminal Information was filed in the District Court against Madoff.

United States v. Bernard L. Madoff, 09 Cr. 213 (DC)(S.D.N.Y Mar. 10, 2009)[ECF No.

38]. At his plea hearing, Madoff pleaded guilty to 11 criminal charges: (1) securities fraud,

(2) investment advisor fraud, (3) mail fraud, (4) wire fraud; (5) international money laundering (6) a second count of international money laundering, (7) money laundering; (8) making false statement to the SEC, (9) perjury, (10) false filing with the SEC and (11) theft from an employee benefit plan, (11) theft from an employee benefit plan. Madoff was not charged with and did not plead guilty to perpetrating a Ponzi scheme. Madoff Plea Transcript at 15 -18; Sheehan Dec. Ex. 14.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 45. Defendants' Answer is a binding admission. Defendants admitted the fact of the allocution referenced in Trustee Statement ¶ 45 in their Answer ¶ 17 and in the Proposed Joint Pretrial Order at ¶ 4. Consequently, Trustee Statement ¶ 45 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

As to Defendants' Counterstatement, it is undisputed that Madoff plead guilty to eleven criminal charges. It is also undisputed that Madoff was not charged with perpetrating a Ponzi scheme because no such crime exists. It is disputed that Madoff did not plead that he perpetrated a Ponzi scheme, as the first sentence of Madoff's statement to the Court at the plea hearing was that he operated a Ponzi scheme. Sheehan Decl. Ex. 14 at 24.

**46.     At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Madoff Allocution at 23:14–23, 31:25–32:1.**

**DEFENDANTS' OBJECTION**

Under Fed. R. Evid. 804 a plea statement is admissible as an exception to the hearsay rules

if, when made, it would expose the declarant to criminal liability or if supported by corroborating circumstances that clearly indicate its trust worthiness, it is offered in a criminal case as one that tends to expose the declarant to criminal liability. There are limits on the admissibility applicable here. Rule 804 does not allow admission of non-self-inculpatory statements even if they are made within a broader narrative that is generally self-inculpatory. When a statement implicates someone else along with the declarant it has less credibility that ordinary hearsay evidence. The court must consider whether each statement, not just the whole confession is truly self-exculpatory. *See United States v. Centracchio*, 265 F.3d 518 (7th Cir. 2001). Moreover, statements made to shift the blame or to curry favor are not sufficiently self-inculpatory to be admissible. *United States v. Tropeano,* 252 F.3d 653 (2d Cir. 2001). In this section of the hearing, Madoff read his own statement in which he was trying to deflect blame from his sons who operated other parts of the business.

Madoff was not charged with and did not plead guilty to perpetrating a Ponzi scheme. Without a record basis as to Bernard Madoff's understanding of the terms used in his allocution, including without limitation the term "Ponzi scheme," his use of and opinion as to such terms should not be relied upon to conclude BLMIS' operations fell within or without any legal or other profile for a Ponzi scheme, Fed. R. Evid. 403, 601, 701.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 46 because Madoff's statement speaks for itself. Defendants cannot "point to any evidence in the record" that controverts Trustee Statement ¶ 46. *Senno v. Elmsford Union Free Sch. Dist*., 812 F. Supp. 2d 454, 458 n.1 (S.D.N.Y. 2011) (noting that factual assertions that are not supported by the record

in Rule 56.1 Statement responses "do not function as denials and will be deemed admissions of the stated fact"). Defendants' Objection as to Madoff's allocution contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. Madoff's allocution is admissible under Federal Rules of Evidence 201, 803(22), and 807 to establish the existence of a Ponzi scheme. *See* Trustee's Motion for Summary Judgment at 11, ECF No. 141. There is no crime of "Ponzi" with which Madoff could have been charged under the United States Code.

Defendants cannot controvert the facts in Trustee Statement ¶ 46. Consequently, Trustee Statement ¶ 46 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted").

**47.     Madoff further testified at the plea hearing that he never invested his clients' funds in securities, that he used funds on hand in the JPMorgan account to pay customer redemptions, and that he created false trading confirmations and client account statements to cover up the fact that he had not executed trades on behalf of BLMIS investment advisory clients. Madoff stated:**

> **The essence of my scheme was that I represented to clients and prospective clients who wished to open investment advisory and individual trading accounts with me that I would invest their money in shares of common stock, options, and other securities of large well-known corporations, and upon request, would return to them their profits and principal. Those representations were false for many years up and until I was arrested on December 11, 2008, I never invested these funds in the securities, as I had promised. Instead, those funds were deposited in a bank account at Chase Manhattan Bank. When clients wished to receive the profits they believed they had earned with me or to redeem their principal, I used the money in the Chase Manhattan bank account that belonged to them or other clients to pay the requested funds. The victims of my scheme included individuals, charitable organizations, trusts, pension funds, and hedge funds. Madoff Allocation at 24:9–24.**

**DEFENDANTS' OBJECTION**

Disputed. Defendants object to the Trustee's interpretation of Madoff's statement.

Madoff's testimony and the testimony of his employees is that he did not execute the split strike conversion strategy that he promised customers. The evidence related to the trading records is that Madoff did, in fact, purchase and trade in securities and that he used the funds generated therefrom, including interest and the proceeds of the sale of the securities, to make redemption payments. *See* Trading Records, Ruegger Dec. Ex. L. Moreover, the 703 Account statements demonstrated that the account held funds from multiple sources including proceeds of securities trading.

**DEFENDANTS' COUNTERSTATEMENT**

Although Madoff testified that he did not execute the split strike conversion strategy that he promised customers, he did actively trade in U.S. Treasury securities as well as other securities, commercial paper, derivatives and other investments. The proceeds of securities, interest earned on investments and cash deposits enabled Madoff to meet the customer withdrawal requests. Trading records, Chase Account records Ruegger Dec. Ex. M.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 47 because Madoff's statement speaks for itself. Consequently, Trustee Statement ¶ 47 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"). The Trustee further avers that in addition to admitting that he did not execute the split strike conversion strategy, Madoff admitted (numerous times) that he ran a Ponzi scheme through the investment advisory business of BLMIS. As to the remainder of Defendants' response, the Trustee disputes that the documents attached at Ruegger Dec. Exs. L & M is "evidence" of Madoff trading in short term derivatives,

60

and that treasuries and commercial paper traded by Madoff were made for customer accounts. Defendants offer no evidence that he purchased any securities *for their account*.   The cited documents do not establish how Madoff made redemption payments and the sources of funds for those payments.  Defendants cannot controvert the facts in Trustee Statement ¶ 47.

Moreover, the Trustee disputes Defendants' citation to a selection of treasury bill purchases by Madoff in select years.  This does not establish that he "actively traded" in U.S. securities nor that Madoff was able to meet customer withdrawal requests.  The fact that Madoff was not able to meet customer withdrawal requests is demonstrated by BLMIS's collapse in 2008.

48.    **Madoff further detailed his strategy as follows:**

**Through the split strike conversion strategy, I promised to clients and prospective clients that client funds would be invested in a basket of common stocks within the Standard & Poors 100 index, a collection of the 100 largest publicly-traded companies in terms of their market capitalization. I promised I would select a basket of stocks that would closely mimic the price movements of the Standard & Poors 100 index. I promised I would opportunistically time those purchases and would be out of the market intermittently, investing client funds during these periods in United States Government-issued securities, such as United States Treasury bills. In addition, I promised that as part of the split strike conversion strategy, I would hedge the investments I made in the basket of common stocks by using client funds to buy and sell option contracts related to those stocks, thereby limiting the potential client losses caused by unpredictable changes in stock prices. In fact, I never made those investments I promised clients, who believed they were invested with me in the split strike conversion strategy.  Madoff Allocution at 25:25–26:18.**

**DEFENDANTS' OBJECTION**

Defendants object to the use of this part of the plea hearing, which was not essential to or part of the confession to the crimes charged. Defendants admit that Madoff made this statement, but submit it is subject to different interpretations. Madoff's testimony and the testimony of his employees is that he did not execute the split strike conversion strategy that he promised customers.   The evidence is that Madoff did purchase and trade in securities and that he used the funds generated therefrom, including interest and the

proceeds of the sale of the securities to make redemption payments. See Ruegger Dec. Exs.

L & M.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 48 because

Madoff's statement speaks for itself.  Consequently, Trustee Statement ¶ 48 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed

admitted for purposes of the motion unless "specifically controverted").  The Trustee further avers

in addition to admitting that he did not execute the split strike conversion strategy, Madoff admitted

(numerous times) that he ran a Ponzi scheme through the investment advisory business of BLMIS.

As to the remainder of Defendants' Objection, the Trustee disputes that the documents attached at

Ruegger Dec. Exs. L & M is "evidence" of Madoff trading in short term derivatives, and that

treasuries and commercial paper traded by Madoff were made for customer accounts.  Defendants

offer no evidence that he purchased any securities *for their account*.  The cited documents do not

establish how Madoff made redemption payments and the sources of funds for those payments.

49.   **BLMIS investment advisory customers received account statements from**
**BLMIS that purported to reflect securities transactions and investment returns that**
**appeared as though their investments with BLMIS were profitable. Madoff explained:**

> **To further cover up the fact that I had not executed trades on behalf of my investment**
> **advisory clients, I knowingly caused false trading confirmations and client account**
> **statements that reflected the bogus transactions and positions to be created and sent**
> **to clients purportedly involved in the split strike conversion strategy, as well as other**
> **individual clients I defrauded who believed they had invested in securities through**
> **me.  Madoff Allocution at 27:9–16.**

**DEFENDANTS' OBJECTION**

Disputed in part. Madoff made this statement as he pleaded guilty to securities fraud.  The

evidence is that Madoff did purchase and trade in securities and that he used the funds

generated therefrom, including interest and the proceeds of the sale of the securities, to make redemption payments.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 49. Consequently, Trustee Statement ¶ 49 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"). The Trustee further avers that in addition to admitting that he did not execute the split strike conversion strategy, Madoff admitted (numerous times) that he ran a Ponzi scheme through the investment advisory business of BLMIS. As to the remainder of Defendants' Objection, the Trustee disputes that the documents attached at Ruegger Dec. Exs. L & M is "evidence" of Madoff trading in short term derivatives, and that treasuries and commercial paper traded by Madoff were made for customer accounts. Defendants offer no evidence that he purchased any securities *for their account*. The cited documents do not establish how Madoff made redemption payments and the sources of funds for those payments.

**51.    Madoff stated that the proprietary trading and market making businesses were engaged in legitimate trading. Madoff Allocution at 25:6–11. Madoff also stated that funds from his investment advisory business were transferred to the proprietary trading and market making businesses, via his affiliated London entity. Madoff Allocution at 29:12–22.**

**DEFENDANTS' OBJECTION**

This statement is inadmissible hearsay as, in this section of the hearing, Madoff was reading his own statement where he was not pleading guilty to a crime but instead was trying to deflect blame from his sons who operated other parts of the business. The accompanying trading records (Ruegger Dec. Ex. L) represent a sampling of trading

records that the Defendants could find in the Trustee's database.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 51 and Madoff's statement speaks for itself. Consequently, Trustee Statement ¶ 51 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted").

The Trustee avers that Defendants' Objection contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. Defendants cannot "point to any evidence in the record" that controverts Trustee Statement ¶ 51. *Senno*, 812 F. Supp. 2d at 458 n.1 (noting that factual assertions that are not supported by the record in Rule 56.1 Statement responses "do not function as denials and will be deemed admissions of the stated fact"). Madoff's plea allocution is admissible under Federal Rules of Evidence 201, 803(22), and 807 to establish the existence of a Ponzi scheme. *See* Trustee's Motion for Summary Judgment at 11, ECF No. 141.

The Trustee further disputes the characterization of the documents attached to Ruegger Dec. Ex. L as "trading records." These documents are not responsive to the facts set forth in Trustee Statement ¶ 51. Defendants have made no showing that these documents have anything to do with BLMIS's proprietary trading business, the market making business, or the London entity.

52.     At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali,* Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal action charging him with participating in and conspiring to perpetuate the Ponzi scheme. Plea Allocution of Frank DiPascali, Jr., *United States v. DiPascali*, No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (the "DiPascali Allocution"), ECF No. 143-2, Sheehan Decl. Ex. 15. DiPascali stated:

> **The clients were told that the strategy involved purchasing what we call basket of blue chip stocks. Hedging those investments by buying and selling option contracts, getting in and out of the market at opportune times and investing in government securities at other times. . . .From at least the early 1990s through December of 2008, there was one simple fact that Bernie Madoff knew, that I knew, and that other people knew but that we never told the clients nor did we tell the regulators like the SEC. No purchases or [sic] sales of securities were actually taking place in their accounts. It was all fake. It was all fictitious.  It was wrong and I knew it was wrong at the time, sir.  DiPascali Allocution at 46:9–15.**

**DEFENDANTS' OBJECTION**

Disputed in part.  The statement that DiPascali was charged with "participating in and conspiring to perpetuate the Ponzi scheme" is inaccurate.  DiPascali was charged with conspiracy to commit securities fraud and investment advisory fraud, among other federal crimes. Neither DiPascali nor Madoff were charged with perpetrating a Ponzi scheme.  Mr. DiPascali entered into a cooperation agreement with the Government and throughout his statement to the court he tried to shift the blame to Madoff and curry favor by incriminating other employees.  *See* Fed. R. Evid. 804 and the other authorities cited above in the Objection to the Trustee's SOMF ¶ 46.

**DEFENDANTS' COUNTERSTATEMENT**

On August 11, 2009, a criminal Information was filed against Frank DiPascali. *United States v. Frank DiPascali*, 09 cr 764 (RJS) (S.D.N.Y Aug. 11, 2009). DiPascali pleaded

guilty to ten charges including: (1) conspiracy to commit securities fraud, investment advisory fraud, falsify the books and records of an investment fund, mail fraud, and money laundering; (2) securities fraud; (3) investment advisor fraud (4) falsifying broker/dealer books;(5) falsifying investment advisor books and records;(6) mail fraud;(7) wire fraud; (8) money laundering; (9) Perjury; and (10) income tax evasion. Mr. DiPascali entered into a cooperation agreement with the Government to assist with the investigation of BLMIS. *See* DiPascali Plea Transcript at 40-41; Sheehan Dec. Ex 15.

Mr. DiPascali was not charged with conspiracy to perpetuate a Ponzi scheme. None of the crimes for which Mr. DiPascali was charged required him to testify that BLMIS was a Ponzi scheme, or that early redeeming investors were paid with later investors' money or that redemptions were made with other peoples' money and he did not so testify. *See* DiPascali Plea Transcript at 18-20, 21-27; Sheehan Dec. Ex. 15.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 51 and DiPascali's statement speaks for itself. Consequently, Trustee Statement ¶ 52 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"). The Trustee does not dispute that neither Madoff nor DiPascali were charged with a perpetrating a Ponzi scheme because there is no such crime in the United States Code. The Trustee does not dispute that DiPascali testified for the Government but does dispute that he tried to "curry favor" or "shift the blame" or any other of the characterizations in Defendants' objection.

As to Defendants' Counterstatement, it is undisputed that DiPascali plead guilty to ten charges, which did not include conspiracy to perpetuate a Ponzi scheme. The citation to pages 40-

41 of the Transcript does not cite to his guilty plea; page 65 does.

**53.     At the plea hearing, DiPascali testified that he had been instructed to falsely represent to clients that security trading was occurring in their investment accounts when in fact, no trades were being made. DiPascali explained:**

> **From our office in Manhattan at Bernie Madoff's direction, and together with others, I represented to hundreds, if not thousands, of clients that security trades were being placed in their accounts when in fact no trades were taking place at all.  DiPascali Allocution at 46:21–25.**
>
> **. . . .**
>
> **Most of the time the clients' money just simply went into a bank account in New York that Bernie Madoff controlled. Between the early '90s and December '08 at Bernie Madoff's direction, and together with others, I did [the] follow[ing] things: On a regular basis I told clients over the phones and using wires that transactions on national securities exchanges were taking place in their account when I knew that no such transactions were indeed taking place. I also took steps to conceal from clients, from the SEC, and from auditors the fact that no actual security trades were taking place and to perpetuate the illusion that they actually were. On a regular basis, I used hindsight to file historical prices on stocks then I used those prices to post purchase or [sic] sales to customer accounts as if they had been executed in realtime. On a regular basis, I added fictitious trade data to account statements of certain clients to reflect the specific rate of earn return that Bernie Madoff had directed for that client. DiPascali Allocution at 47:5–22.**
>
> **. . . .**
>
> **I knew no trades were happening. I knew I was participating in a fraudulent scheme. I knew what was happening was criminal and I did it anyway.  DiPascali Allocution at 52:4–5.**

**DEFENDANTS' OBJECTION**

These statements are inadmissible.  The Trustee relies on that part of the plea where DiPascali, as the first cooperating witness, points the finger at others and makes the kind of exculpatory comments that are inadmissible hearsay. *See* Fed. R. Evid. 804 and the other authorities cited above in the Objection to the Trustee's SOMF ¶ 46.

**TRUSTEE'S REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 53 and DiPascali's statement speaks for itself.  Consequently, Trustee Statement ¶ 53 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Further, DiPascali's plea allocution is admissible under Federal Rules of Evidence 201, 803(22), and 807 to establish the existence of a Ponzi scheme.  *See* Trustee's Motion for Summary Judgment at 11, ECF No. 141.

**54.    At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel, N*o. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal action charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Plea Allocution of David L. Kugel, *United States v. Kugel*, No. 10- CR-228 (LTS) (S.D.N.Y. Nov. 21, 2011) (the "Kugel Allocution"), ECF No. 143-3, Sheehan Decl. Ex. 16.**

### DEFENDANTS' OBJECTION

Defendants object to the limited description of guilty plea.  The statement is accurate but incomplete. *See* Fed. R. Evid. 804 and the other authorities cited above in the Objection to the Trustee's SOMF ¶ 46.

### DEFENDANTS' COUNTERSTATEMENT

On or about November 11, a Superseding Information was filed against David Kugel. *United States v. David Kugel*, 10 CR 228 (LTS). At his plea hearing on that date, Mr. Kugel admitted to six charges: (1) conspiracy to commit securities fraud, falsify books and records of a broker dealer and falsify books and record of an investment advisor; (2) conspiracy to commit bank fraud; (3) securities fraud; (4) falsify broker/dealer books; (5) falsifying investment advisor books and records; and (6) bank fraud. Mr. Kugel entered into a cooperation agreement with the

Government. (Kugel Plea Transcript at 24). As a result of his assistance in providing evidence against other employees, Mr. Kugel served no jail time. (See Kugel Plea Transcript at 14-16, Sheehan Dec. Ex. 16).

None of the charges described at the hearing required Mr. Kugel to testify that he was engaged in a Ponzi scheme or that BLMIS used other peoples' money to satisfy redemptions, nor did he so testify. (Kugel Plea Transcript, Sheehan Dec. Ex. 16).

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 54, and it is therefore not controverted. Trustee Statement ¶ 54 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

As to Defendants' Counterstatement, it is undisputed that Kugel plead guilty to ten charges, which did not include conspiracy to perpetuate a Ponzi scheme because there is no such crime in the United States Code. The citation to page 24 of the Transcript does not cite to his cooperation agreement but rather sentencing guidelines and forfeiture. The Trustee disputes the characterization of what Kugel's testimony did or did not say; it speaks for itself.

55.    **As far as back as the 1970s, there is no evidence that the purported investment transactions reflected in the customer statements of BLMIS's investment advisory business customers ever occurred, and in fact, the evidence reveals that those transactions did not and could not have occurred. Kugel Allocution at 32:4–12 ("Specifically, beginning the early '70s, until the collapse of BLMIS in December 2008, I helped create fake, backdated trades. I provided historical trade information . . . to create fake trades that, when included on the account statements and trade confirmations of Investment Advisory clients, gave the appearance of profitable trading when in fact no trading had actually occurred.").**

**DEFENDANTS' OBJECTION**

Mr. Kugel's testimony is at odds with testimony of other witnesses with respect to the start date of the fraud. Both Madoff and DiPascali testified that the fraud began in the 1990's. His testimony and the testimony of his co-conspirators is that they did not execute the split strike conversion strategy.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 55 because DiPascali's statement speaks for itself. Consequently, Trustee Statement ¶ 55 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted").

Defendants mischaracterize DiPascali's testimony, as he clearly stated that the fraud began at least as early as the 1980's, when he began working at BLMIS. *See* DiPascali Plea at 46:9–17 ("THE COURT: When did you realize [it was all fake]? THE DEFENDANT: In the late '80s or early '90s."). Even if there is a discrepancy between Madoff's and Kugel's testimony on the start date of the fraud, it is not sufficient to raise a genuine dispute of material fact as to this proceeding

because (i) Defendants admit that BLMIS did not execute the split strike conversion strategy, *see* Counterstatement ¶¶ 43, 47–48, 55, 59, 62, (ii) Defendants' accounts were in the split strike conversion strategy, and (iii) Defendants' accounts were opened after such time as all witnesses have stated the fraud was ongoing.  Proposed Joint Pretrial Order ¶ 5.

57.    **BLMIS's revenue was falsely inflated through fraudulent bookkeeping entries and annual audited reports.  Irwin Lipkin Allocution at 30:23–31:3, 31:10–18, 31:24–32:5.**

**DEFENDANTS' OBJECTION**

Defendants object to the characterization of the revenue as "BLMIS" revenue.  That characterization is not part of the testimony. Irwin Lipkin was not charged with and did not plead guilty of perpetrating or conducting a Ponzi scheme. He was charged with and pleaded guilty to conspiracy to commit securities fraud, falsify the books and records of a broker/dealer, falsify the books and records of an investment advisor, making false filings with the SEC and falsifying statements in relation to ERISA. Irwin Lipkin Plea Transcript at 16. Sheehan Dec. Ex. 17.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 57 and Irwin Lipkin's testimony about BLMIS's revenue speaks for itself.  Consequently, Trustee Statement ¶ 57 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted").  As to the remainder of the Defendants' Objection, the Trustee does not dispute the crimes with which Irwin Lipkin was charged and to which he pleaded guilty.

58.    At a plea hearing on June 6, 2011, in the case captioned *United States v. Eric S. Lipkin,* No. 10-CR-228 (LTS), Eric Lipkin, a former BLMIS payroll clerk, pleaded guilty to a six- count criminal action charging him with bank fraud, falsifying the records of BLMIS, conspiracy, and making false statements to facilitate a theft concerning ERISA. Plea Allocution of Eric S. Lipkin, *United States v. Eric S. Lipkin*, No. 10-CR-228 (LTS) (S.D.N.Y. June 6, 2011) (the "Eric Lipkin Allocution"), ECF No. 148, Sheehan Decl. Ex. 18.

**DEFENDANTS' OBJECTION**

Defendants object to the limited description of guilty plea.  The statement is accurate but incomplete.

**DEFENDANTS' COUNTERSTATEMENT**

On June 6, 2011, a Superseding Information was filed against Eric Lipkin. *United States v. Eric Lipkin,* S3 10 Cr 288 (S.D.N.Y). On that date, Mr. Lipkin pleaded guilty to six charges: 1) conspiracy to commit securities fraud, falsify books and records of a broker/dealer and falsify books and records of an investment advisor; (2) conspiracy to commit bank fraud; (3) falsifying broker/dealer books; (4) falsifying investment advisor books and records; (5) making false statements to facilitate a theft concerning ERISA; and (6) bank fraud. Eric Lipkin Plea Transcript at 15-18, 18-19. Mr. Lipkin also agreed to cooperate with the Government in its ongoing investigation of BLMIS. (Eric Lipkin Plea Transcript at 27, Sheehan Dec. Ex. 18).

Mr. Eric Lipkin was not charged with conspiracy to perpetuate a Ponzi scheme. None of the crimes for which Mr. Eric Lipkin was charged required him to testify that BLMIS was a Ponzi scheme, or that early redeeming investors were paid with later investors' money or that redemptions were made with other peoples' money and he did not so testify.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 58, and

therefore not controverted.  Trustee Statement ¶ 58 should be deemed admitted under Local Rule

7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the

motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting

that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

As to Defendants' Counterstatement, it is undisputed that Eric Lipkin plead guilty to six

charges, which did not include conspiracy to perpetuate a Ponzi scheme because there is no such

crime in the United States Code.  The Trustee admits that Eric Lipkin agreed to cooperate with the

Government as part of its investigation of BLMIS.  The Trustee disputes the characterization of

what Eric Lipkin's testimony did or did not say; it speaks for itself.

**59. BLMIS created fake reports that replicated those of the Depository Trust &
Clearing Corporation ("DTC"), which provides clearance for nearly all equity, bond,
government securities, mortgage-backed securities, money market instruments, and over-
the-counter derivative transactions in the U.S. Market.  The purpose of these fake DTC
reports was to purportedly confirm non-existent positions in the investment advisory
accounts, and the fake reports were given to auditors and the SEC to mislead them.  Eric
Lipkin Allocution at 32:4–10, 34:1–5.**

**DEFENDANTS' OBJECTION**

Defendants object to the inference that Eric Lipkin's testimony supports the Trustee's

contention that no trades were ever made by Madoff. Madoff unequivocally traded in U.S.

Treasury Securities and short-term derivatives in a BLMIS account among others, if not

through DTC. Not all trades need be reflected on DTC records.  The evidence is that BMIS

did trade in securities.  Trading Records. Ruegger Dec. Ex. L.

**DEFENDANTS' COUNTERSTATEMENT**

The consistent testimony of Madoff and his employees is that they did not execute the split strike conversion strategy. However, the evidence from the bank accounts (*see, e.g.,* the 703 Account) and the trading records is that Madoff traded in U.S. Treasury securities and short-term derivatives and other commercial paper.  Ruegger Dec. Ex. L.

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 59 and Eric Lipkin's statement speaks for itself.  Defendants cite to no evidence in support of their Objection.  Consequently, Trustee Statement ¶ 59 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted").

As to Defendants' Counterstatement, the Trustee does not dispute that Madoff and his employees did not execute the split strike conversion strategy.  As to the remainder of Defendants' Counterstatement, the Trustee disputes that the documents attached at Ruegger Dec. Ex. L is "evidence from bank accounts," that those "trading records" show Madoff trading in short term derivatives, and that treasuries and commercial paper traded by Madoff were made for customer accounts.

74

60.     At a plea hearing on  December 19, 2011, in the case captioned United States

v. *Cotellessa-Pitz,* No. 10-CR-228 (LTS), Enrica Cotellessa-Pitz, a former BLMIS accountant

and comptroller, pleaded guilty to a four-count criminal action charging her with conspiracy

to falsify the records of BLMIS, conspiracy to obstruct the IRS in the collection of income

taxes, and conspiracy to make false filings with the SEC.  Plea Allocution of Enrica

Cotellessa-Pitz, *United States v. Cotellessa-Pitz,* No. 10-CR-228 (LTS) (S.D.N.Y. Dec. 19, 2011)

(the "Cotellessa-Pitz Allocution"), ECF No. 89-8, Sheehan Decl. Ex. 19.

## DEFENDANTS' OBJECTION

The statement is not a complete description of the charges against Ms. Cotellessa-Pitz. Fed.

R. Evid. 403.

## DEFENDANTS' COUNTERSTATEMENT

On December 19, 2011, an Information was filed against Enrica Cotellessa-Pitz. *United

States v. Enrica Cotellessa-Pitz, S5 10 Cr. 288 (LTS)*. Ms. Cotellessa-Pitz pleaded guilty

to four charges, including (1) conspiracy to obstruct the IRS in the assessment and

collection of taxes, falsifying the books and records of a broker/dealer, falsifying the books

and record of an investment advisor, and making false filings with the SEC; (2) falsifying

broker/dealer books; (3) falsifying investment advisor books and records; (4) making false

filing with the SEC. (Enrica Cotellessa-Pitz Plea Transcript at 14-17). Ms. Cotellessa-Pitz

agreed to cooperate with the Government in its investigation of BLMIS (Enrica Cotellessa-

Pitz Plea Transcript at 23) and as a result of her cooperation and testimony about Madoff

and others, she was not given a jail time sentence. (Enrica Cotellessa-Pitz Plea Transcript,

Sheehan Dec. Ex. 19).

Ms. Cotellessa-Pitz was not charged with perpetrating a Ponzi scheme. None of the

charges against her required Ms. Cotellessa-Pitz to admit or testify that BLMIS was operated as a Ponzi scheme or that early redeeming investors were paid with later investors' money or that redemptions to customers were made with other peoples' money and she did not so admit or testify.  (Enrica Cotellessa-Pitz Plea Transcript, Sheehan Dec. Ex. 19).

**TRUSTEE REPLY**

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 60, and therefore not controverted.  Trustee Statement ¶ 60 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

As to Defendants' Counterstatement, it is undisputed that Cotellessa-Pitz plead guilty to four charges, which did not perpetrating a Ponzi scheme because no such crime exists.  The Trustee disputes the characterization of what Cotellessa-Pitz's testimony did or did not say; it speaks for itself.

**62.    BLMIS investment advisory customer funds were not used to engage in any securities transactions in furtherance of its purported investment strategies as set forth above, but instead were deposited by BLMIS into a bank account at JPMorgan Chase Bank ("JPMorgan"). Madoff Allocation at 24:17–22; DiPascali Allocation at 47:5–7.**

**DEFENDANTS' OBJECTION**

Disputed. Defendants object to the uses of the term "BLMIS" in this statement.  The term is not part of the testimony. In fact, the testimony is that the account was not a BLMIS account, but rather an account either in the name of the sole proprietorship or in the name of Bernard L. Madoff and in either case under his control. See Bank Statements. (Ruegger

Dec. Ex. M). The testimony is that BLMIS did not execute the split strike conversion strategy. The evidence is that US Treasury securities, among other securities, were purchased. (See Trading Records, Ruegger Dec. Ex. L).

## DEFENDANTS' COUNTERSTATEMENT

The consistent testimony of Madoff and his employees is that they did not execute the split strike conversion strategy. Madoff and the employees confessed to conspiring to and/or committing securities fraud and investment advisor fraud or bank fraud. The evidence from the bank accounts (*see, e.g.,* the 703 Account) and the trading records is that Madoff has sufficient assets in cash and securities to meet redemptions until the crash in the market in 2008. (Ruegger Dec. Exs. L & M).

## TRUSTEE REPLY

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 62. Defendants cite to no admissible evidence that BLMIS traded in short term derivatives in a BLMIS account or others, or that these alleged trades did or did not go through DTC. Consequently, Trustee Statement ¶ 62 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted").

As to Defendants' Counterstatement, the Trustee does not dispute that Madoff and his employees did not execute the split strike conversion strategy. As to the remainder of Defendants' Counterstatement, the Trustee disputes that the documents attached at Ruegger Dec. Exs. L & M is "evidence from bank accounts," that those "trading records" show Madoff trading in short term derivatives, and that treasuries and commercial paper traded by Madoff were made for customer accounts. Defendants offer no evidence that he purchased any securities *for their account*. The

77

cited "trading records" do not establish how Madoff made redemption payments and the sources of funds for those payments.

**63.     When BLMIS investment advisory customers submitted redemption requests seeking to withdraw funds they believed they held in their BLMIS accounts, BLMIS would use the commingled customer deposits held at BLMIS's bank accounts at JPMorgan to satisfy their requests. Madoff Allocution at 24:18–22 ("When clients wished to receive the profits they believed they had earned with me or to redeem their principal, I used the money in the Chase Manhattan bank account that belonged to them or other clients to pay the requested funds.").**

### DEFENDANTS' OBJECTION

Disputed in part. Defendants object to the uses of the term "BLMIS" in this statement. Madoff did not use the term BLMIS in his testimony and it would not have been accurate.

### DEFENDANTS' COUNTERSTATEMENT

In response to their requests for withdrawals, Defendants received checks written on a Chase account in the name of Bernard L. Madoff. (Mann checks, BAM checks. Ruegger Dec. Exs. C & H).   Madoff also maintained an account in the name of the sole proprietorship under his control into which was deposited proceeds from the sales of securities, interest on investments, interest on deposits and customer deposits that enabled him to meet redemption requests during the time the Defendants maintained their accounts. (See 703 Account, Ruegger Dec. Ex. M).

### TRUSTEE REPLY

Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 63 and Madoff's statement speaks for itself.  Consequently, Trustee Statement ¶ 63 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted").

As to the remainder of Defendants' Counterstatement, the Trustee does not dispute that Defendants received checks from the 509 Account but avers that the 509 Account was held in the name of Bernard L. Madoff.  The bank statements for that account show that the 509 Account was held in the name of Bernard L. Madoff Investment Securities at the time of the transfers the Trustee seeks to recover.  Sheehan Decl., Exs. 3–7.

**64.    BLMIS made all transfers to Defendants, much like to other customers and creditors, with the actual intent to defraud, as required under section 548(a)(1)(A) of the Bankruptcy Code. Defendants' Opposition to Motion in Limine at 7, ECF No. 126 ("Fraudulent intent is not disputed here, rather it is the nature of the fraud that is at issue").**

**DEFENDANTS' OBJECTION**

Defendants object to the first sentence of this statement as overbroad, not a statement of material fact, and an unsupported legal conclusion that has no place in the statement of facts.  Defendants also object to the characterization of the statements in the Defendants' Motion. Nothing therein is an admission that BLMIS made the transfers in question or that the transfers to the Defendants bear any similarities to the transfers to any other party.

**TRUSTEE REPLY**

The Trustee avers that the statement regarding the Trustee's allegations inform this Court's disposition of material issues in the case, regardless of Defendants' Objection.

79

Dated: New York, New York
      March 27, 2019

By: */s/ David J. Sheehan*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:  212.589.4200
Facsimile:  212.589.4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Dean Hunt
Email: dhunt@bakerlaw.com
Nicholas J. Cremona
Email:  ncremona@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Estate of Bernard L. Madoff*