**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. CERTAIN DEFENDANTS REPRESENTED BY CHAITMAN LLP |
| Plaintiff, | |
| v. | |
| CERTAIN DEFENDANTS REPRESENTED BY CHAITMAN LLP, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**APPEAL OF JUDGE MAAS' JANUARY 2, 2019 ORDER DENYING DEFENDANTS'**
**MOTION TO COMPEL**

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Chapter 7 Estate of Bernard L.*
*Madoff*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

HISTORY OF THE "TRADING RECORDS" DISPUTE ........................................................3

    A.  The Trustee's Initial Disclosures in *Wilenitz* ...............................................3

    B.  E-Data Room 1 ..............................................................................................4

    C.  The *Wilenitz* Discovery Requests and the Trustee's Responses .................5

    D.  The May 17, 2016 7007 Conference ..............................................................6

    E.  Motion to Compel, December 13, 2016 Arbitration, and Supplemental Productions ...8

    F.  Ms. Chaitman's Second Motion to Compel and the March 15, 2017 Order ..............10

    G.  Additional Requests in Connection with Madoff Deposition Briefing .......11

    H.  Search Terms Based on Financial Institutions.............................................14

    I.  The Meet and Confer and Subsequent Productions ....................................17

    J.  Letter to Court Requesting Permission to File Motion for Sanctions and Motion to Compel ..............................................................................................18

    K.  Supplemental Productions and Ms. Chaitman's Rejection of Additional Meet and Confer ....................................................................................................20

    L.  The September 20, 2018 Joint Letter and the January 2, 2019 Order .........21

LEGAL STANDARD.............................................................................................................23

ARGUMENT ..........................................................................................................................23

I.   This Court Never Ordered the Trustee to Produce "Trading Records" ....................23

II.  A Wholesale Request for 30 Million Documents Contravenes Fed. R. Civ. P. 26 .................26

III. The Issue of Real Trading at BLMIS Is Irrelevant to a Request for 30 million Documents .................................................................................................................30

IV. Judge Maas Considered and Rejected Ms. Chaitman's Request for Documents in the Warehouse.................................................................................................................31

CONCLUSION.......................................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of America Corporation*,
Case No. 14-CV-7126, 2016 WL 6779901 (S.D.N.Y. Nov. 16, 2016)............................26, 27

*Chen-Oster v. Goldman, Sachs & Co.*,
285 F.R.D. 294 (S.D.N.Y. 2012) ..........................................................................................30

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*,
284 F.R.D. 132 (S.D.N.Y. 2012) ..........................................................................................27

*Mary Imogene Bassett Hosp. v. Sullivan*,
136 F.R.D. 42 (N.D.N.Y. 1991)............................................................................................30

*Mayo-Coleman v. Am. Sugar Holding, Inc.*,
No. 14-CV-0079, 2016 WL 4533654 (S.D.N.Y. Aug. 9, 2016)............................................28

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
Adv. Pro. No. 08-01789 (SMB), 2019 WL 654293 (Bankr. S.D.N.Y. Feb. 15, 2019) .......................................................................................................................................31

*Vaigasi v. Solow Mgmt. Corp.*,
No. 11-CV-5088 (RMB) (HBP), 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016).....................26

*Wyeth v. Impax Labs., Inc.*,
248 F.R.D. 169 (D. Del. 2006) ..............................................................................................30

**Statutes**

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa ...............................................................1

**Rules**

Fed. R. Civ. P. 26................................................................................................................ *passim*

Fed. R. Civ. P. 26(b)(1).........................................................................................................26, 28

Fed. R. Civ. P. 37(b)(A).............................................................................................................18

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), and the chapter 7 estate of Bernard L.

Madoff, respectfully submits this memorandum of law in opposition to Defendants' Appeal of

Judge Maas' January 2, 2019 Order (the "January 2019 Order") Denying Defendants' Motion to

Compel (the "Appeal").[1]  Accompanying this memorandum of law is the Trustee's Designation

of Additional Items to be Included in the Record and the Trustee's Supplemental Appendix

("TA").

## PRELIMINARY STATEMENT

Chaitman LLP appeals from Judge Maas's January 2019 Order—the second consecutive

motion to compel by Ms. Chaitman that Judge Maas has denied.  While styled as a longstanding

request for what she calls "trading records," that is not what Ms. Chaitman seeks here.  Instead,

Ms. Chaitman seeks unfettered access to virtually all the hard-copy and electronic documents

recovered from BLMIS headquarters at the Lipstick Building, as well as an unspecified universe

of documents maintained at BLMIS's storage facility in Queens, New York.  A straightforward

application of Rule 26 and its threshold requirements of relevance and proportionality is

sufficient to defeat this expansive and unconstrained request.  But Ms. Chaitman's repeated

refusal to comply with Judge Maas's governing orders, as well as her assertion of various

falsehoods in her quest for a continually expanding universe of documents, provide an

independent basis to affirm Judge Maas's order.

---

[1] Ms. Chaitman appears to cabin this appeal to only certain cases subject to a stipulation referring discovery disputes to Judge Maas on October 17, 2016.  However, as this Court is aware and as Ms. Chaitman has long argued, the "trading records" dispute applies to all cases involving Chaitman LLP except *Picard v. Carol Nelson*, Adv. Pro. No. 10-04377; *Picard v. Carol Nelson*, Adv. Pro. No. 10-04658; and *Picard v. Saren-Lawrence*, Adv. Pro. No. 10-04898.  *See* Memorandum Decision And Order Denying Motion To Adjourn Trials Sine Die, *Picard v. Carol Nelson*, Adv. Pro. No. 10-04377, ECF No. 123 at 13–14.

Since this dispute first arose, the Trustee has produced over 300,000 documents totaling 4.8 million pages, including the restoration of over 200 microfilm reels and the application of approximately 250 search terms across the same BLMIS Database to which Ms. Chaitman now seeks wholesale access. These productions supplemented the four million documents provided in E-Data Room 1, including approximately 260,000 third-party bank records that have been available to Ms. Chaitman since before she served her first request for production of documents in these cases. In addition, since December of 2016, Ms. Chaitman has had comprehensive indices detailing all the BLMIS data in the Trustee's possession—whether it be in the BLMIS Database or the Queens warehouse—and she was instructed by Judge Maas in April of 2017 to use those indices if she wanted any additional documents from the Trustee. The purpose of this directive was to narrow and focus the dispute consistent with the relevance and proportionality requirements of Rule 26.

But Ms. Chaitman never did so. Rather than comply with Judge Maas's orders, Ms. Chaitman's requests have continued to expand: from pre-1992 trading records, to 5,300 reels of microfilm, to three million documents responsive to search terms like "Fidelity," to the entire BLMIS Database, to an indeterminate universe of materials in the Queens warehouse—without ever acknowledging the indices Judge Maas directed her to utilize or the other specific steps Judge Maas required her to take. In pursuit of these expanding requests, Ms. Chaitman has repeatedly circumvented Judge Maas's orders by raising the dispute in this Court and asserting a series of falsehoods that have distorted the record and prejudiced the Trustee.

Indeed, over the course of the past three years and in every submission on the subject, Ms. Chaitman has misled the Court with her false narrative. Ms. Chaitman has distorted virtually every component of this discovery dispute: the Trustee's disclosures, including the

nature of his data, the details of E-Data Room 1, and the microfilm in his possession; the

Trustee's many (and largely voluntary) productions; the relevant orders by this Court and Judge

Maas; representations by the Court and the Trustee's counsel; and the nature of agreements

reached by the parties. The result has been a steady stream of multiplied proceedings, wasted

resources, and an endless discovery dispute that, despite his best efforts, the Trustee has been

unable to resolve.

The Court need not take the Trustee's word on any of this: the docket is replete with Ms.

Chaitman's submissions arguing and rearguing the "trading records" issue while obfuscating her

lack of action or compliance with prior directives. And every single quotation Ms. Chaitman

attributes to the Court, Judge Maas, and the Trustee's counsel—without exception—is taken out

of context in an effort to give it a false meaning.

The reality is that Ms. Chaitman's ultimate purpose has never been to obtain documents.

If it were, the parties would have long ago resolved this dispute given the Trustee's cooperation,

extensive productions, and multiple offers to meet and confer in good faith. Rather, Ms.

Chaitman's goal has been to perpetuate the dispute by distorting the Trustee's good faith efforts

to settle it and to preserve this manufactured specter of impropriety that she has deemed integral

to her defense of the Trustee's claims. Through his opposition to this appeal, the Trustee seeks

not only to affirm Judge Maas's well-reasoned order that fully considered the relevant history,

but to provide the context necessary for the Court to correct the record and finally resolve this

dispute.

## HISTORY OF THE "TRADING RECORDS" DISPUTE

### A.    The Trustee's Initial Disclosures in *Wilenitz*

On December 21, 2015, the Trustee served his initial disclosures in multiple adversary

proceedings involving Chaitman LLP, including the *Wilenitz* case that has been the primary

vehicle for the "trading records" discovery dispute (the "Initial Disclosures").  (TA001).  The

Initial Disclosures explained that: (a) the Trustee possessed 13,500 boxes of BLMIS paper

documents and 19,250 media sources containing various ESI, including computers, hard drives,

microfilm, microfiche, backup tapes, floppy discs, and memory cards; (b) some of these

materials had been loaded into one or more electronic databases then totaling 28.8 million

documents (the "BLMIS Database"); (c) the Trustee intended to make four million of those

documents available in a virtual data room known as "E-Data Room 1"; and (d) the Trustee also

had obtained an additional five million documents from approximately 450 parties during the

course of his investigation.  (TA003–04; *see also* January 2019 Order at AA18).  Prior to the

*Wilenitz* disclosures, the Trustee served virtually identical disclosures in other Chaitman LLP

cases, including as early as August 1, 2011.

**B.    E-Data Room 1**

E-Data Room 1 has been an integral component of the Trustee's discovery efforts since

the inception of these cases.  The principal purpose of E-Data Room 1 is to make available the

millions of documents the Trustee's experts reviewed and/or considered in connection with the

global, case-wide components of their respective reports.  Ms. Chaitman has had access to the

documents in E-Data Room 1 for years.

The Trustee provides Defendants with a detailed E-Data Room 1 Manual (the "Manual")

that explains its structure, contents, and functionality.  (TA009).  As stated in the Manual, E-Data

Room 1 has three primary folders—DATA, DOCUMENTS, and FINANCIALS—which are

further divided into sub-folders that are labeled according to source.  The DATA folder contains

data extracted from various sources that BLMIS maintained over the decades, including

microfilm and the House 17 AS400 computer system (and its various applications).  Generally,

the DATA folder includes all available customer statements for BLMIS customers and the

4

extracted source data that BLMIS manually input into the relevant AS400 applications and used to populate the customer statements.

The DOCUMENTS folder contains electronic copies of hard-copy documents collected from BLMIS facilities or obtained from certain third parties, including the Depository Trust and Clearing Corporation, Options Clearing Corporation, and the Securities and Exchange Commission. The FINANCIALS folder contains BLMIS bank account statements, reports, cancelled checks, and related documents organized by financial institution. This includes available customer statements for all known BLMIS bank accounts, including those held at JPMorgan & Chase, Bear Stearns, Lehman Brothers, Morgan Stanley, Fidelity, and Bank of New York. Accordingly, since well-before Ms. Chaitman ever requested "trading records" (however defined), Ms. Chaitman has had access to a significant population of responsive documents in E-Data Room 1.

### C.    The *Wilenitz* Discovery Requests and the Trustee's Responses

On March 8, 2016, Ms. Chaitman served Defendants' First Set of Document Demands and Interrogatories to the Trustee in the *Wilenitz* case (the "First Requests"). The First Requests did not expressly demand the production of "trading records," but instead demanded that the Trustee "[p]rovide the gross trading volume by both number of shares traded and total dollar volume for each of Madoff's operations, broken down by (a) investment advisory business; (b) proprietary trading business; and (c) market making business" and to "[p]roduce the documents on which you base your responses." (TA053–54).

On April 8, 2016, the Trustee served responses and objections to the First Requests (the "First Responses"). (TA036). The First Responses included a preliminary section that described the Trustee's data set and various affirmative productions in additional detail, and also emphasized that:

> [t]he Trustee preserved the nearly 20,000 pieces of BLMIS ESI and millions of pages of BLMIS Hard-Copy Documents in his possession, but did not include all such documents in the BLMIS Searchable Database.  The Trustee did not process or scan, for example, backup tapes believed to contain redundant data, some floppy discs or CDs, and broken media.  In responding to discovery requests, the Trustee does not search for BLMIS documents outside of the BLMIS Searchable Database.

(TA039).

### D.    The May 17, 2016 7007 Conference

On May 17, 2016, the Court held a Local Bankruptcy Rule 7007 conference on Defendants' request for permission to file a motion to compel the above discovery and the Trustee's request for permission to file a motion for a protective order (the "May 2016 Conference").  (AA79).

During the May 2016 Conference, the Court discussed each of Ms. Chaitman's 18 discovery requests in an effort to resolve the dispute and limit potential motion practice, but nevertheless authorized Ms. Chaitman, on her own insistence, to file a motion to compel so that the Court could enter a formal order.  (AA100–101) (MS CHAITMAN: "I'm happy to go through these with you now, but I would like to make a formal motion . . . [b]ecause it's important for the record to contain an order . . . . And I think in order to protect the record, we ought to be able to go through the process of a motion, briefing, and then a formal order."  THE COURT: "Well, I'm not going to tell you can't make a motion to compel discovery, but that said, maybe we can go through these and we can talk about them."); (AA107) (THE COURT: "I think I disagree.  Let's go through the request. . . As I said, you can make a motion to compel.  I can't tell you that you can't." MS. CHAITMAN: "Yeah, I'd like to at the end of this, just so we have a clear record of what the rulings are."); (AA110–111) (MS. CHAITMAN: Well, what I'd like to do is put this in a motion and lay out the rules of evidence. THE COURT: "You know –

6

and maybe this motion that you're contemplating would be a good way to narrow the overall

scope of discovery . . ."); (AA121) (THE COURT: "But look, I hear you.  Make your motion.

I'm probably going to deny it because it's not relevant to whether or not Wilenitz is liable for a

fraudulent transfer.").

At multiple points in the May 2016 Conference, the Trustee's counsel represented that E-

Data Room 1 contains documents considered by the Trustee's expert witnesses in connection

with their respective reports:

> As Ms. Chaitman knows, we have an expert named Mr. Dubinsky,
> who offers a very comprehensive report on [the Ponzi scheme], and
> all of the data that he considered and utilized in connection with his
> opinions have been made available to every defendant through an
> electronic data room that contains, approximately, 4 million records.
> (AA88).

> [W]hat we've endeavored to do, Your Honor, is that what we refer
> to as Electronic Data Room 1 contains all of the underlying
> documents considered by Mr. Dubinsky and we're also building
> upon that in including documents that our other experts who we may
> offer to prove transactions and who do other functions, all of those
> documents as well.  So that's approximately 4 million records.
> (AA89).

> So, absolutely the Defendant has the ability to conduct whatever
> investigation they believe is relevant to the claims of their defenses,
> **the same that our expert did, and they have access to all the
> information that our expert did**.  And we did that to be transparent
> and to provide any data that any litigant believes that they should
> have access to.  (AA89) (responding to question from Court: "Well,
> does Ms. Chaitman . . . have the ability to look at the same
> documents that your expert looked at and draw their own
> conclusions?") (emphasis added).

Ms. Chaitman's statements during the conference demonstrated that she understood the

nature of E-Data Room 1.  (AA112) (THE COURT: "Right. So, the expert's – and you'll get all

of the entries the expert looked at and you'll get the account statements, and you can do the same

analysis. MS. CHAITMAN: "But that's limiting… Then I'm only getting what the expert got.

And there may be a whole body of evidence which disproves the expert's conclusions. THE

COURT: That's speculative.  But I think that maybe in response to the motion I have to

understand what's in the data room, and what's being produced.").

The Court did not enter any order with respect to the discovery requests addressed at the

May 2016 Conference, including those related to purported "trading records."  Rather, after the

Court recognized that it was Ms. Chaitman's duty to test Mr. Dubinsky's conclusions by

reviewing the records he considered, which were available in E-Data Room 1, the following

colloquy took place:

> MS. CHAITMAN: You know, Judge, with 4 million pages of
> documents, the least the Trustee could do is specify the specific
> Bates Numbers.  Because I don't want to be in a position where we
> go to trial. . .  **I mean, for all I know, the data room is updated
> constantly and new documents are added.  How am I going to
> prove at trial that certain documents were not made available
> to me?**  I mean, it's impossible.  Why can't the Trustee be bound
> to tell me these are the documents responsive to this request?
>
> THE COURT:  But that doesn't solve your problem…  Well, if the
> Trustee has additional documents, he's got to supplement the
> disclosure or the production, which he does by adding them to the
> data room, **and maybe you have a continuing duty to check the
> data room.**

(AA147).  Accordingly, the Court was addressing Ms. Chaitman's concern about documents

being added to E-Data Room 1, not ordering the Trustee to produce any additional documents.

### E.    Motion to Compel, December 13, 2016 Arbitration, and Supplemental Productions

Ms. Chaitman filed the motion to compel on August 29, 2016.  In a good faith effort to

resolve the issues presented in the motion to compel, the Trustee made an early production of

Mr. Dubinsky's expert report and included a six-page letter describing the contents of E-Data

Room 1 in additional detail.  (TA064).  After the motion was fully briefed, the parties agreed to

refer the dispute to Judge Maas for arbitration.

The arbitration took place on December 13, 2016 (the "December 2016 Arbitration").
(TA070). By this point, in response to Madoff's deposition testimony in the profit withdrawal
litigation, Ms. Chaitman was primarily focused on pre-1992 records, and she conceded during
the arbitration that she was not challenging the Ponzi scheme post-1992. (TA290) (MS.
CHAITMAN: "Once Mr. Madoff says the fraud started in 1992, I'm not going to argue that it
started later. Right. So I'm only focusing on the period prior to 1992."). Recognizing that it
would be akin to "looking for a needle in a haystack" and that "it would not be sensible to restore
every microfiche and look through it," Judge Maas directed the Trustee to make a "good faith
effort" to identify additional pre-1992 records and provide an update on those efforts within one
week. (TA230).

On December 15, 2016, two days after the arbitration, the Trustee sent Judge Maas and
Ms. Chaitman a letter detailing the steps the Trustee would take to identify the pre-1992 "trading
records" Ms. Chaitman was requesting. (TA362). In that letter, the Trustee noted that he had
identified 95 records from the pre-1992 period related to the National Securities Clearing
Corporation ("NSCC"), an affiliate of the DTCC. (TA362). In addition, the Trustee stated that
he ran searches for "Depository Trust" and "National Securities" across the approximately 30
million records in the Trustee's internal BLMIS Database and would immediately produce the
16,042 responsive documents not already in E-Data Room 1. (TA363). The Trustee also
explained that he had identified 167 reels of microfilm that potentially contained records from
these earlier periods, and that he would restore and search those documents for additional DTCC
or NSCC records. (TA363). Finally, the Trustee agreed to produce two comprehensive and
searchable indices: an index of hard-copy materials stored at the BLMIS Warehouse (the
"Warehouse Index") and a separate index of electronic media (the "Media Index," and together,

the "Indices"), which together reflected the entire universe of BLMIS data in the Trustee's

possession at the time.  (TA363–64).  Ms. Chaitman never objected to the specific steps the

Trustee represented he would take, and with the exception of the microfilm records that would

take a few weeks to process, the Trustee produced all of these documents the next day, on

December 16, 2016.

On January 4, 2017, Judge Maas entered an order formalizing the rulings at the

December 2016 Arbitration (the "January 2017 Order").  The order required the Trustee to

provide an update as to "how long it will take to make a good faith determination as to whether

there are any BLMIS trading records for the years prior to 1992"—which the Trustee had already

done on December 15, 2016—and "to promptly produce additional relevant records of securities

trading that have not been made available through E-Data Room 1."  (AA160–61).

On January 5, 2017, Judge Maas held a telephonic conference with the parties to address

certain outstanding issues.  During that conference, counsel for the Trustee again represented that

he would use the search terms disclosed in the December 15, 2016 letter to identify any

additional records reflecting securities trading in the microfilm reels being restored.  (TA394–

95).

On February 3, 2017, consistent with the December 15, 2016 letter, the Trustee produced

321 additional records related to the NSCC, which were identified among the documents restored

from the 167 reels of microfilm using the search terms described above.

### F.    Ms. Chaitman's Second Motion to Compel and the March 15, 2017 Order

On February 21, 2017, Ms. Chaitman filed a second motion to compel additional pre-

1992 records without specifying the documents she was seeking or what she thought the Trustee

was withholding.  In a good faith effort to provide Ms. Chaitman with everything she was

interested in, the Trustee informed Ms. Chaitman, while the motion was still pending, that he

10

would voluntarily produce the following additional materials: (i) the balance of the documents

that were restored from the 167 microfilm reels described above; (ii) all documents restored from

34 additional reels with pre-1992 labeling that the Trustee had since identified; and (iii) all

documents responsive to 147 search terms applied across the approximately 30 million records in

the BLMIS Database.  (AA16).  The Trustee explained to Ms. Chaitman that he based the 147

search terms on internal BLMIS reports reflecting purported trading activity that he identified in

BLMIS's books and records.  (AA16).  As explained in an accompanying affidavit, the Trustee

expended more than $500,000 to process and restore the documents from the 201 microfilm

reels.  (AA16).

On March 15, 2017, on the basis of the Trustee's efforts above, Judge Maas denied Ms.

Chaitman's second motion to compel (the "March 2017 Order").  (AA164).  To the extent Ms.

Chaitman was interested in any additional records, the order directed Ms. Chaitman to: (i) use

the indices the Trustee had produced, which he recognized "should enable Ms. Chaitman to

formulate more focused requests for trading records;" (ii) "send the Trustee's Counsel a letter

specifically identifying the additional documents Ms. Chaitman seeks to have produced, and

where she believes they may be found;" and (iii) "confer in person regarding Defendants' request

for BLMIS trading records."  (AA169).  If the dispute persisted, Judge Maas directed the parties

to send "a joint letter . . . detailing their remaining areas of disagreement."  (AA169).  Judge

Maas concluded by reminding the parties that Fed. R. Civ. P. 26 "requires that discovery

requests be limited to items that are relevant to a party's claims or defenses and proportional to

the needs of the case."  (AA169 (emphasis in original)).

### G.    Additional Requests in Connection with Madoff Deposition Briefing

On June 19, 2017, three months after the March 2017 Order was entered and Trustee

produced documents responsive to the 147 search terms described above, Ms. Chaitman sent the

Trustee an email objecting to those search terms and instead providing the Trustee, for the first time, with a list of alternative search terms based on the names of well-known financial institutions (such as "Barclays", "Bear Stearns", and "Fidelity"). (TA442–43).

On June 25, 2017, the Trustee responded to Ms. Chaitman via email, providing a chart showing the millions of documents her broad search terms implicated, and informing her that hundreds of thousands of documents responsive to those search terms were already in the "Financials" folder in E-Data Room 1. (TA440–41). The Trustee further explained that, despite his understanding that "trading records" were third-party records, he nevertheless applied the 147 search terms using the names of internal BLMIS reports in order to capture internal records that may be of interest to Ms. Chaitman. (TA441). In addition, the Trustee reminded her that Judge Maas's March 2017 Order governed this issue, and that she should follow Judge Maas's directives and identify the specific records she was interested in using the indices and other information the Trustee had provided. (TA441).

On June 26, 2017, Ms. Chaitman filed a reply memorandum of law in support of her request to depose Madoff on "Day Two" deposition topics. ECF No. 16236. Circumventing Judge Maas's directives in the March 2017 Order, Ms. Chaitman accused the Trustee of ignoring the Court's "orders," stated that the Trustee disclosed the existence of 5,300 microfilm reels for the first time the day before, demanded that the Trustee produce all 5,300 microfilm reels in the Trustee's possession, and insisted that the Trustee add to E-Data Room 1 "all Madoff documents for any time period from 1978 through 2008." As described above, the microfilm was a prominent feature of the Trustee's productions after the December 2016 Arbitration, and was addressed extensively with Judge Maas in conferences, submissions, and the March 2017 Order.

In addition, the Trustee's initial disclosures stated that the Trustee was in possession of 19,250

pieces of media, and specifically stated that this universe of media included microfilm.

On June 29, 2017, the Court held a hearing on the Madoff deposition and addressed the

discovery issues Ms. Chaitman raised for the first time in her reply memorandum (the "June

2017 Hearing").  Because Ms. Chaitman improperly raised these discovery issues in connection

with a hearing on the Madoff deposition, the full history of the discovery dispute—including

Judge Maas's March 2017 Order—was not adequately before the Court.  With that limited

context, the Court stated, on the basis of the misinformation in Ms. Chaitman's submissions, that

"[t]here are two orders directing [the Trustee] to turn over the documents" and directed the

Trustee to provide additional information about the microfilm reels in his possession.  (AA35).

During this hearing, Ms. Chaitman stated that the Trustee had "concealed" the existence of

microfilm, despite the disclosures described above.  (TA035).

On July 14, 2017, the Trustee wrote a letter to the Court that: (i) explained the history of

the "trading records" dispute; (ii) described in detail the Trustee's "trading records" productions

to date; (iii) reminded the Court of Judge Maas's March 2017 Order governing the dispute; (iv)

established that the Trustee had, on multiple times, disclosed the microfilm reels in his

possession; and (v) attached a Microfilm Index describing the high-level contents of all available

microfilm reels.  ECF No. 16348.  The Trustee stated that he would restore certain microfilm

reels if Ms. Chaitman made a good faith effort to identify which reels she deemed relevant and

participated in a meet and confer pursuant to Judge Maas's March 2017 Order.  *Id.*  Otherwise,

the Trustee agreed to make the microfilm reels available at her expense.  *Id.*

On July 26, 2017, the Court held a hearing with respect to the ongoing microfilm issue.

(TA444).  After recognizing that the March 2017 Order governed the dispute (of which the Court

13

stated it was not previously aware), the Court refused to order the Trustee to turn over the

microfilm and instead suggested that Ms. Chaitman pick a small sampling of reels for initial

restoration, and then use those documents to justify any additional restorations. (TA493–94).

The Trustee further informed the Court that Ms. Chaitman already had all documents restored

from those microfilm reels with pre-1992 labeling. (TA497).

### H.    Search Terms Based on Financial Institutions

On July 29, 2017, Ms. Chaitman once again raised the search terms based on the names

of financial institutions, stating that she was now interested in "all documents showing BLMIS'

or Madoff's ownership of securities, regardless of whether it is House 5 or House 17, and

covering the entire period from 1975 – 2008." Ms. Chaitman made no reference to the indices or

the March 2017 Order.

On August 25, 2017, after numerous email exchanges proved unproductive, the Trustee

wrote a letter to Ms. Chaitman addressing all outstanding discovery issues. (TA515). The letter

provided: (i) another comprehensive description of the Trustee's data set and related disclosures,

including addressing the history of the "trading records" dispute; (ii) a thorough and detailed

description of the Trustee's microfilm restoration efforts, including the documents that had been

produced to Ms. Chaitman; and (iii) updated details on the bank search terms (which by this

point had grown to 22 banks) Ms. Chaitman had requested. (TA515–23). The Trustee explained

that Ms. Chaitman's search terms hit on nearly five million documents, nearly 1.5 million of

which were already in E-Data Room 1, and many of which were likely irrelevant. (TA522).

Given that such a large production of unfocused and irrelevant material was outside the scope of

Fed. R. Civ. P. 26, the Trustee requested that Ms. Chaitman review the responsive documents

already available to her in E-Data Room 1 in order to focus her search and specify the types of

records she was requesting. (TA522). The Trustee again reminded Ms. Chaitman of Judge

Maas's March 2017 Order and invited her to meet and confer so that the parties could resolve these issues. (TA523). The Trustee also invited Ms. Chaitman to select a small number of microfilm reels for restoration consistent with the Court's suggestion at the July 26 Hearing. (TA523).

On September 1, 2017, Ms. Chaitman sent the Trustee a letter demanding that the Trustee produce all 3,102,203 documents responsive to her 22 search terms that had not previously been produced or made available in E-Data Room 1. (TA524). Ms. Chaitman did not respond to the Trustee's request for a meet and confer, demonstrate an understanding of the documents available in E-Data Room 1, or acknowledge the applicability of Judge Maas's March 15 Order. (TA524–32). After repeating the same accusations she made in connection with her June 26, 2017 submission, Ms. Chaitman requested the restoration of five reels of microfilm pursuant to the Court's suggestion at the July 26, 2017 hearing. (TA532). The Trustee began restoring the reels Ms. Chaitman selected.

On October 11, 2017, Ms. Chaitman emailed counsel for the Trustee demanding that the Trustee inform her, within 48 hours, whether the Trustee will produce the approximately three million documents detailed above. (TA533). Separately, on October 13, the Trustee produced all documents restored from the five reels identified in Ms. Chaitman's September 1, 2017 letter.

On October 18, 2017, the Trustee responded to Ms. Chaitman's October 11, 2017 email. (TA534). In that letter, the Trustee reiterated his position that such an enormous production was inconsistent with Fed. R. Civ. P. 26 and reiterated his desire to have a good faith meet and confer to narrow the scope of Ms. Chaitman's request. (TA534–36). The Trustee also provided yet another description of E-Data Room 1 in order to facilitate Ms. Chaitman's efforts to identify specific types of documents. (TA535).

On October 23, 2017, Ms. Chaitman emailed the Trustee's counsel and rejected the invitation to meet and confer.  Instead, Ms. Chaitman requested that the Trustee produce documents responsive to two of the 22 search terms: "Morgan Stanley" and "Meadowbrook." (TA537–38).

On October 25, 2017, the Trustee's counsel replied to Ms. Chaitman's October 23, 2017 email and explained that the two search terms hit on 820,000 documents, 515,000 of which were already in E-Data Room 1, and that the vast majority of the remaining 305,000 documents hit on the "Morgan Stanley" search term.  (TA537).  Given that the "Meadowbrook" search term returned less than 5,000 hits, the Trustee agreed to produce those documents, but stood on his objections with respect to the "Morgan Stanley" documents.  (TA537).

On October 30, 2017, the Trustee's counsel emailed Ms. Chaitman stating that, in an effort to compromise, the Trustee would run the "Morgan Stanley" search term across the BLMIS Database but exclude approximately 25 million electronic documents that included emails, calendar appointments, JPEG files, and thousands of Word and Excel files.  (TA539–40). In addition, the Trustee's counsel once again reminded Ms. Chaitman that he was "happy to meet and confer . . . in a good faith effort to narrowly target any additional relevant information from this document population."  (TA540).  Ms. Chaitman responded on the same day and proposed a date and time for a meet and confer, and the Trustee agreed.

On November 2, 2017, after reviewing the documents she received, Ms. Chaitman emailed the Trustee's counsel stating: "If this was not clear before, let me be very clear now: I don't care about emails or similar documents at this point.  I want to see the transaction confirmations and the monthly statements from the financial institutions where there have been hits with the names we gave you."  (TA539).

16

## I.    The Meet and Confer and Subsequent Productions

On November 14, 2017, counsel for the Trustee and Ms. Chaitman participated in an in-person meet and confer (the "November 2017 Meet and Confer").  During this meeting, the Trustee's counsel provided an additional explanation of the Trustee's data set, which was consistent with all previous disclosures made by the Trustee.  The Trustee's counsel noted that, to the extent Ms. Chaitman was purely interested in third-party records, it would make more sense to exclusively focus on the third-party materials the Trustee obtained through his Rule 2004 investigation, rather than the 30 million BLMIS records in the BLMIS Database.

Ms. Chaitman confirmed that she was only interested in the third-party bank records from those institutions upon which her search terms were based.  With her target finally narrowed and clarified, Ms. Chaitman suggested running searches using account numbers for known BLMIS or Madoff bank accounts across these third-party records and producing any business records that reflected BLMIS trading activity.  The Trustee consented to Ms. Chaitman's suggestion and later informed her that he would use an existing list of relevant accounts to structure the search.  The Trustee also agreed to identify and produce any "account opening documents" for the "509 Account" BLMIS maintained with JPMorgan & Chase.

On November 21, 2017, Ms. Chaitman served a new Request for Production, requesting the materials discussed by the parties at the November 2017 Meet and Confer.  On December 21, 2017, the Trustee served responses and objections (the "December 2017 Responses"), in which he stated: "Consistent with the agreements reached with opposing counsel at the November 14, 2017 meet and confer, the Trustee will search for and review additional potentially responsive records from the universe of Third-Party Documents."  (TA547).  The December 2017 Responses defined "Third-Party Documents" as: "Documents produced by third parties to the Trustee during his investigation or adversary proceedings."  (TA543).

On March 23, 2017, consistent with the agreements reached at the November 2017 Meet and Confer, the Trustee produced approximately 2,100 documents responsive to the search terms based on BLMIS bank account numbers applied across the Trustee's universe of third-party documents (excluding approximately 12,000 documents already in E-Data Room 1). While this included approximately 978 documents that appeared to reflect BLMIS securities ownership or trading, all but 82 of these documents were already in appropriate E-Data Room 1 folders under different Bates labeling. *See Wilenitz* ECF No. 106 at 4.

**J.     Letter to Court Requesting Permission to File Motion for Sanctions and Motion to Compel**

On April 11, 2018, Ms. Chaitman filed a letter with the Court requesting permission "to make a motion . . . for an order imposing sanctions on the Trustee pursuant to Fed. R. Civ. P. Rule 37(b)(A) for his failure to comply with two discovery orders to produce all the Madoff and BLMIS trading records." *Wilenitz* ECF No. 100. In her accompanying declaration, Ms. Chaitman characterized the Trustee's production as "a joke," and that "[a] large number of the documents are completely unresponsive to our requests." *Id.* Ms. Chaitman further explained that the production included "checks to and from customers; customer account statements; internal emails; internal Madoff documents, etc. And there were no Trading Records produced for most of the companies with which Madoff and BLMIS maintained accounts and no Trading Records pre-dating 2007." *Id.* Ms. Chaitman also falsely described the details of the November 2017 Meet and Confer.

On April 20, 2018, the Trustee filed a letter responding to Ms. Chaitman's request. *Wilenitz* ECF No. 106. In the letter, the Trustee: (i) provided a summary of the above history and explained that Ms. Chaitman had been ignoring and circumventing Judge Maas's April 2017 Order; and (ii) explained that the Court did not order the Trustee to produce documents at the

May 2016 Conference, but that he had fully complied with all of Judge Maas's orders entered on

the "trading records" dispute and the agreements reached at the November 2017 Meet and

Confer. *Id.*

On May 1, 2018, the Court held a conference on Ms. Chaitman's request to file a motion

for sanctions and motion to compel. (TA551). During the conference, the Court stated the

following:

> THE COURT: Well, I've read the papers. And I guess I didn't
> realize it before, maybe I did, that Judge [Maas] had set up a
> procedure to narrow the issues and narrow the dispute. And part of
> that required the parties to meet and confer, which you apparently
> did, and then to write a letter to Judge [Mass] identifying the
> sources of what's still left, what's the disagreement. And I didn't
> see that letter. (TA556).

> THE COURT: All I'm saying . . . if, if you filed that motion and
> there was a procedure in place and it wasn't followed, you're
> probably going to lose that motion and that could open you up to
> costs and attorneys' fees. (TA556–57).

> THE COURT: [B]ut that's the problem. This keeps expanding,
> rather than getting narrower. . . . [A]ll I'm saying is there was a
> procedure in place . . . [w]hich was obviously intended to narrow
> the issues, and it looks like that procedure wasn't followed.
> (TA557).

> THE COURT: [P]art of what Judge [Maas] required was for you to
> identify your basis of your belief that certain information was in
> some of these documents. (TA557–58).

> THE COURT: You know what? I think generally that these issues
> [were] before Judge [Maas], but I don't think I focused on that
> Order back last July. (referring to microfilm dispute). (TA560–
> 61).

> THE COURT: You know, some of this is, maybe it's just the
> nature of the dispute. It's being litigated in two different places,
> and I feel like I'm getting whipsawed here. (TA566).

> THE COURT: [P]art of this is not just relevance, Miss Chaitman;
> it's proportionality. (TA568).

During the conference, Ms. Chaitman complained, for the first time, that the Trustee

limited the bank account search terms to third-party documents, despite the parties' agreement as

confirmed in writing multiple times by the Trustee, including in his discovery responses.

(TA567).

### K.    Supplemental Productions and Ms. Chaitman's Rejection of Additional Meet and Confer

On May 1, 2018, hours after the May 1st conference and in a good faith effort to resolve

the dispute and avoid any further motion practice, the Trustee's counsel contacted Ms. Chaitman

and informed her that he would run the same searches across the BLMIS Database and produce

responsive documents.  (TA576).

Ms. Chaitman responded that evening and rejected the Trustee's offer to perform the

exact search she complained to the Court that the Trustee failed to run.  (TA576).  Instead, she

demanded that the Trustee give her wholesale access to the BLMIS Database.  (TA576).

On May 6, 2018, Ms. Chaitman sent the Trustee's counsel another email requesting

access to the BLMIS Database.  On May 7, 2018, the Trustee's counsel responded, explaining

that: (i) Ms. Chaitman continued to disregard the March 2017 Order; (ii) the Trustee was

nevertheless amenable to running searches in the BLMIS Database, including using the search

terms that she complained to the Court the Trustee should have previously applied; and (iii) the

Trustee was perplexed by her approach and her continued efforts to perpetuate disputes rather

than obtaining documents of interest.  (TA581).

Ms. Chaitman immediately responded by requesting evidence supporting the Trustee's

interpretation of the agreements reached during the November 2017 Meet and Confer.  (TA580).

Counsel for the Trustee subsequently sent Ms. Chaitman four items supporting the facts as the

Trustee recounted to Ms. Chaitman.   (TA580).  Eventually, Ms. Chaitman agreed to the Trustee

running the BLMIS bank account search terms across the BLMIS Database, and the Trustee

produced these documents on June 11, 2018.  (TA578–80).

On June 5, 2018, the Trustee met with multiple defense counsel in an attempt to reach a

compromise and consensually resolve the multiple discovery-related issues raised by the

Trustee's then-outstanding motion for an omnibus proceeding to address the nature of Madoff's

Ponzi scheme.  While the Trustee offered to make the BLMIS Database available as part of those

negotiations, those negotiations were unfortunately unsuccessful and the related offer to

compromise was withdrawn based upon the failed negotiations.

On July 26, 2018, in response to additional requests by Ms. Chaitman, the Trustee

produced all documents produced to the Trustee by the SEC in connection with the Trustee's

Rule 2004 investigation.

### L.    The September 20, 2018 Joint Letter and the January 2, 2019 Order

Despite the Trustee's additional productions fully discharging Ms. Chaitman's version of

the agreements reached during the November 2017 Meet and Confer, on September 4, 2018, Ms.

Chaitman sent the Trustee her portion of a draft joint-letter to Judge Maas in connection with her

request for access to the BLMIS Database and sanctions against the Trustee.  (TA585).

On September 5, 2018, the Trustee's counsel sent Ms. Chaitman an email suggesting that

the parties meet and confer.  Given that the Trustee was evaluating a motion for additional

limited discovery in Ms. Chaitman's cases, the Trustee sought to explore a potential compromise

that contemplated additional discovery for both parties.  (TA584).  Ms. Chaitman rejected this

offer outright.  (TA583).

The parties submitted their joint-letter on September 20, 2018 (the "Joint Letter")[2] and met for an in-person arbitration on November 19, 2018. (AA21). During the arbitration, the Trustee offered to make a voluntary production of the nearly one million scanned-hard copy documents recovered from the Lipstick Building in permanent resolution of the "trading records" dispute. (TA229–32).

On November 20, 2018, the day after the arbitration, Ms. Chaitman sent Judge Maas an unauthorized supplemental submission. (AA177). In that letter, Ms. Chaitman: (i) rejected the Trustee's offer; (ii) repeated the same accusations she had been making for over two years; and (iii) asserted that the BLMIS Database "is limited to only those documents the Trustee wanted to use to bolster **his** position." (AA178 (emphasis in original)). On that basis, and despite being in possession and failing to use the Indices detailing these materials, Ms. Chaitman expanded her request to include any "trading records" stored at the Queens warehouse. (AA178). On November 27, 2018, the Trustee responded to Ms. Chaitman's supplemental submission. (TA588).

On January 2, 2019, against the foregoing history, Judge Maas denied Ms. Chaitman's motion in its entirety. In doing so, Judge Maas concluded: (i) "the Trustee has repeatedly tried to accommodate Ms. Chaitman's requests for BLMIS trading records;" (ii) Ms. Chaitman's "assertion that the Trustee has proceeded in bad faith is utterly unsupported by the record"; and (iii) "there is no basis for requiring the Trustee to supplement the extensive efforts that he has already undertaken." (AA17–19).

---

[2] The Joint Letter submitted to Judge Maas by Ms. Chaitman omitted an exhibit containing a letter by the Trustee— after the Trustee gave Ms. Chaitman final authorization to submit the Joint Letter. While Ms. Chaitman's assistant claimed that it was a mistake, the body of the Joint Letter itself omitted any reference to that letter, which suggests that the omission was deliberate. (TA586). On appeal, Ms. Chaitman again excluded this letter from her designation of items to be included in the record.

On February 15, 2019, this Court granted Ms. Chaitman's request for leave to appeal the January 2019 Order. (AA333).

## LEGAL STANDARD

Under the Order Appointing Arbitrator, "the Discovery Arbitrator's rulings will be reviewed as follows: (i) findings of fact will be reviewed *de novo*; (ii) legal conclusions will be reviewed *de novo*; and (iii) rulings on procedural matters will be reviewed for abuse of discretion. ECF No. 14227.

On February 15, 2019, this Court granted leave to appeal the January 2019 Order, ordering that "legal conclusions will be reviewed *de novo* and all other matters will be reviewed in accordance with standards deemed appropriate in the Court's discretion." (AA333).

## ARGUMENT

In the January 2019 Order, Judge Maas denied Ms. Chaitman's request for 30 million documents on the basis of Fed. R. Civ. P. 26, the multiple orders governing this dispute, and the history of the Trustee's "extensive" productions. (AA17–19). In doing so, Judge Maas unequivocally rejected Ms. Chaitman's accusations of bad faith, recognized that Ms. Chaitman herself was proceeding on a "distorted view of the record," and noted that the Trustee in fact has "repeatedly tried to accommodate Ms. Chaitman's requests for BLMIS trading records." (AA17–19). None of the arguments Ms. Chaitman presents on appeal justify disturbing Judge Maas's well-reasoned decision.

## I.    This Court Never Ordered the Trustee to Produce "Trading Records"

According to Ms. Chaitman, because the Court already ordered the Trustee to produce "trading records" in May of 2016, Judge Maas was effectively powerless to issue any separate directive that contravened this Court's purported order. As a preliminary matter, Ms. Chaitman's position is inconsequential. The Trustee has produced to Ms. Chaitman over 300,000 documents

since the May 2016 Conference. In the January 2019 Order, Judge Maas validated the Trustee's

extensive productions and implicitly concluded that the Trustee has complied with all applicable

orders. As such, even if Ms. Chaitman's characterization of the May 16, 2016 conference is

correct (which it is not), it would not provide a basis to disturb Judge Maas's ruling.

But Ms. Chaitman's assertions that this Court ordered the Trustee to produce "trading

records," and that the Trustee has defied that purported order, is one of the fundamental

falsehoods Ms. Chaitman has repeated during this nearly three-year dispute. The claim is

demonstrably false for two independent reasons.

First, during the May 2016 Conference, Ms. Chaitman repeatedly requested permission to

file a motion to compel—precisely because she wanted the Court to enter a formal order—and

the Court agreed. *See supra* at 6–7. After obtaining authorization, Ms. Chaitman filed a motion

to compel on August 29, 2016, and the parties referred the motion to Judge Maas for arbitration

on October 17, 2016, and Judge Maas subsequently issued the only three orders that govern this

dispute. If the Court had already ordered production of "trading records" in May of 2016, then

Ms. Chaitman's August 2016 motion to compel and subsequent arbitrations would have been

completely unnecessary. Moreover, as the transcript makes the clear, the Court strongly

suggested that it would uphold the Trustee's objections to the bulk of Ms. Chaitman's discovery

requests—but Ms. Chaitman filed a formal motion to compel those same requests.

Consequently, if the Court's representations at the May 2016 Conference were "orders," Ms.

Chaitman herself would be in violation of them.

Second, and more fundamentally, the statement by the Court that Ms. Chaitman

consistently presents as an "order" to produce "trading records" meant something else entirely.

In context, it is clear that the Court was addressing Ms. Chaitman's separate (and unfounded)

concerns that the Trustee could theoretically add additional documents to E-Data Room 1

without her knowledge.[3]  In doing so, the Court recognized that if the Trustee had additional

documents considered by Mr. Dubinsky, he would need to supplement that production and

"maybe" Ms. Chaitman had the duty to monitor those additional disclosures:

> MS. CHAITMAN: You know, Judge, with 4 million pages of documents, the least the Trustee could do is specific the specific Bates Numbers.  Because I don't want to be in a position where we go to trial. . .  **I mean, for all I know, the data room is updated constantly and new documents are added.  How am I going to prove at trial that certain documents were not made available to me?**  I mean, it's impossible.  Why can't the Trustee be bound to tell me these are the documents responsive to this request?

> THE COURT:  But that doesn't solve your problem…  Well, if the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room, **and maybe you have a continuing duty to check the data room**.

(AA147).

The May 2016 Conference Transcript has always been clear.  Yet Ms. Chaitman

deliberately pulled quotations from their necessary context to suit her false narrative—and she

continues to do so here.  Unfortunately, during the June 2017 Conference, this Court appeared to

temporarily credit that misrepresentation, which served to multiply these proceedings and lead

the Trustee to restore additional microfilm reels to which Ms. Chaitman was not entitled under

the order governing the dispute at the time—the April 2017 Order entered by Judge Maas

denying Ms. Chaitman's second motion to compel.[4]  While the Court subsequently recognized

the governing nature of the April 2017 Order during the July 2017 Conference and the May 2018

---

[3] Defendants are notified whenever new documents are added to E-Data Room 1.

[4] Despite the fact that the Trustee restored five additional microfilm reels in accordance with the Court's instructions at the July 2017 Conference, Ms. Chaitman abandoned the microfilm effort immediately thereafter.

Conference (*see supra* at 18–19), the Trustee has nevertheless had to correct the record on
numerous occasions given Ms. Chaitman's continuous misrepresentations.

Accordingly, in addition to affirming the January 2019 Order, the Trustee respectfully
requests that this Court expressly conclude that the Trustee has complied with all relevant orders
and acknowledge Ms. Chaitman's role in multiplying these proceedings and perpetuating
confusion through continual false statements.

## II.    A Wholesale Request for 30 Million Documents Contravenes Fed. R. Civ. P. 26

The threshold requirements of relevance and proportionality governing the scope of
discovery under Fed. R. Civ. P. 26 preclude Ms. Chaitman's wholesale request for more than 30
million documents.   Rule 26 permits discovery into "any nonprivileged matter that is relevant to
any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).
"The requesting party bears the initial burden of demonstrating any possibility of relevance
sufficient to warrant discovery, but once that showing is made, the party resisting discovery
bears the burden of demonstrating that the requests are irrelevant, or are overly broad,
burdensome, or oppressive." *Alaska Elec. Pension Fund v. Bank of America Corporation*, No.
14-CV-7126, 2016 WL 6779901, at *2 (S.D.N.Y. Nov. 16, 2016) (internal quotations omitted).
The 2015 amendments to Rule 26 restored proportionality considerations to Fed. R. Civ. P.
26(b)(1) and were intended to "encourage judges to be more aggressive in identifying and
discouraging discovery overuse." Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015
amendments.   "Proportionality and relevance are 'conjoined' concepts; the greater the relevance
of the information in issue, the less likely its discovery will be found to be disproportionate."
*Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088 (RMB) (HBP), 2016 WL 616386, at *14
(S.D.N.Y. Feb. 16, 2016).

Here, according to Ms. Chaitman, "there is no doubt that the Trading Records are relevant" and that "[t]he Trustee therefore has the burden to establish that there is some basis why he should not be required to share access [to the BLMIS Database]." D. Mem. at 11. But Ms. Chaitman conflates the "trading records" that she is purportedly interested in with the 30 million largely irrelevant documents that she seeks. The Trustee does not dispute that third-party records reflecting purported securities trading by BLMIS are relevant; what the Trustee disputes is that this somehow entitles Ms. Chaitman to the production of 30 million largely *irrelevant* documents, let alone personal access to an internal database that has not been structured to accommodate third-parties. Ms. Chaitman has therefore not carried her burden of demonstrating that the entire BLMIS Database is relevant. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("*Once relevance has been shown*, it is up to the responding party to justify curtailing discovery.") (emphasis added); *see Alaska Elec. Pension Fund*, 20016 WL 6779901, at *2 (rejecting argument that communications with regulators investigating manipulation of ISDAfix rates necessarily bear on a civil case about manipulation of ISDAfix rates: "At the highest level of generality, there is no doubt some truth to that notion. But the Rule 26 standards call for closer scrutiny, and Plaintiff's argument does not withstand that scrutiny.").

Nor can she. By requesting access to the BLMIS Database, Ms. Chaitman is effectively requesting *all* BLMIS documents, including every email sent or received by every BLMIS employee, every single item stored on BLMIS computer terminals (including personal items), and every piece of loose paper recovered from the Lipstick Building in 2008 and 2009. The only documents omitted from Ms. Chaitman's request are some of the archived materials stored at the Queens warehouse, which she targets only in part (at least for now). But Ms. Chaitman herself

27

has complained that the Trustee's productions from the BLMIS Database using search terms she

offered produced largely irrelevant documents.  (TA539).[5]  Now she demands access to the

entire database from which those largely irrelevant documents came.  Courts routinely deny

requests under Rule 26 that are far more limited and targeted.  *See, e.g.*, *Mayo-Coleman v. Am.

Sugar Holding, Inc.*, No. 14-CV-0079, 2016 WL 4533654, at *5 (S.D.N.Y. Aug. 9, 2016)

(denying employee's request for evidence of prior complaints of discrimination and retaliation

by employer over nine year period because record "[did] not establish that all this information is

relevant to the parties' claims or defenses and proportional to the needs of the case").

Ms. Chaitman's position that it would impose no burden on the Trustee to give

Defendants access to the BLMIS Database stems from a fundamental misinterpretation of Fed.

R. Civ. P. 26.  As described above, the threshold inquiry regarding the scope of discovery is not

whether the production would be burdensome; it is whether the discovery is relevant and

proportional.  *See* Fed. R. Civ. P. 26(b)(1); *see* March 2017 Order, TA169 (Fed. R. Civ. P. 26

"requires that discovery requests be limited to items that are relevant to a party's claims or

defenses <u>and</u> proportional to the needs of the case." (emphasis in original); May 2018

Conference at TA568 (THE COURT: "[P]art of this is not just relevance, Miss Chaitman; it's

proportionality.").   A mere assertion that a production would not be burdensome to a producing

party does not entitle litigants to otherwise irrelevant and disproportional discovery.  And as

described above, Ms. Chaitman cannot even discharge her threshold burden of demonstrating the

discovery she seeks is relevant.

---

[5] Indeed, Ms. Chaitman even complained that the more targeted searches across the Trustee's Rule 2004 materials
using BLMIS account numbers produced largely irrelevant documents and was "a joke."  *Wilenitz* ECF No. 100

In any event, even though the Trustee's burden to demonstrate that the request is overly broad, burdensome, or oppressive has not been triggered (given Ms. Chaitman's failure to demonstrate relevance), it is plain that these factors are present here—particularly given the history of the Trustee's productions and his demonstrated efforts to work with Ms. Chaitman to identify additional documents in a targeted fashion, all of which Judge Mass catalogued in the January 2019 Order.  The thrust of that order is Judge Maas's recognition that "the Trustee has repeatedly tried to accommodate Ms. Chaitman's request for BLMIS trading records," and that therefore "there is no basis for requiring the Trustee to supplement the extensive efforts that he has already undertaken." *See* January 2019 Order at AA17–19.  Given this context, compelling the Trustee to provide Ms. Chaitman access to the entire BLMIS Database—which would involve ongoing hosting costs and labor to service Ms. Chaitman's access (as well as other counsel who would undoubtedly seek access on the same terms)—would undoubtedly be an overly broad, burdensome, and oppressive result.

The Trustee's obligations under Judge Maas's orders have always been to make a good faith effort to identify and produce additional documents to Ms. Chaitman, not to locate and produce every "trading record" that might exist in the unquantifiable universe of BLMIS data in his possession.  *See* December 13 Arbitration Transcript at TA239–40 (recognizing search for pre-1992 trading records is akin to "looking for a needle in a haystack" and that "it would not be sensible to restore every microfiche and look through it," and directing the Trustee to make a "good faith effort" to identify additional records).  As a direct result of the good faith efforts that Judge Maas himself required the Trustee to undertake in December of 2016, Judge Maas has now denied two consecutive motions to compel filed by Ms. Chaitman.  Indeed, Ms. Chaitman's

failure to comply with Judge Maas's orders is sufficient to defeat her instant request—without
even necessitating an analysis under Rule 26.

In support of her request, Ms. Chaitman relies on cases that are either inapposite or
support the Trustee's position. *See Mary Imogene Bassett Hosp. v. Sullivan*, 136 F.R.D. 42
(N.D.N.Y. 1991) (compelling access to database containing patient records so that plaintiff-
hospital could perform a statistical analysis that would "clearly be relevant" to its claims against
Sec. of Dep't of Health and Human Services challenging validity of Medicare reimbursement
regulations); *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169 D. Del. 2006) (denying motion to
compel all documents produced in separate litigation where requesting party "has not
demonstrated why it is entitled to documents . . . involving matters not at issue in this litigation"
or how those documents "are critical to resolving the issues before the Court"); *Chen-Oster v.
Goldman, Sachs & Co.*, 285 F.R.D. 294 (S.D.N.Y. 2012) (addressing databases that contained
data related to compensation, promotion, and performance evaluation and was therefore relevant
to class action alleging gender discrimination).  None of these cases support the extraordinary
relief Ms. Chaitman requests here.

Accordingly, the Court should deny Ms. Chaitman's request for the wholesale production
of 30 million documents as beyond the scope of Fed. R. Civ. P. 26 and inconsistent with Judge
Maas's multiple orders.

## III.    The Issue of Real Trading at BLMIS Is Irrelevant to a Request for 30 million Documents

Judge Maas correctly concluded that Ms. Chaitman has failed to show that any of
BLMIS's legitimate trading activity was done for the benefit of investment advisory customers.
While that failure certainly justifies denying Ms. Chaitman's request, it was not integral to Judge
Maas's ultimate denial of Ms. Chaitman's motion.  (AA18).  In the very next sentence after the

one Ms. Chaitman selectively quotes, Judge Maas expressly stated that, "*even if [real trading]*

*were proven*, there [has] been no showing that the efforts that the Trustee already has undertaken

in an effort to locate pre-1992 BLMIS trading records are inadequate." *Id.* (emphasis added).

Accordingly, even if the Court made a contrary finding on appeal, it would not warrant a

different result on the merits of this dispute.[6]

## IV.    Judge Maas Considered and Rejected Ms. Chaitman's Request for Documents in the Warehouse

Judge Maas did not "fail to consider" that Ms. Chaitman requested access to the Queens

warehouse; he expressly concluded that Ms. Chaitman had not "demonstrated that the warehouse

is likely to contain any documents that would be of use to her . . . ." (AA18).  Given Ms.

Chaitman's failure to make this showing, Judge Maas correctly concluded that there was no basis

to compel the Trustee to search the materials in the warehouse or permit Ms. Chaitman to review

those same materials herself.  As further elaborated by Judge Maas:

> [Ms. Chaitman] has known for years that the BLMIS Database
> contains approximately 30 million documents, only a fraction of
> which have been copied to E-Data Room 1, and that the Trustee
> has thousands of boxes of hard copy documents and thousands of
> items of electronic media that have not been processed.  In fact,
> she has been given indices confirming the existence of these
> additional materials.

---

[6] Ms. Chaitman suggests that the Trustee's counsel was forced to admit that BLMIS purchased treasuries during the July 2017 Conference. D. Mem. at 14.  In reality, the Trustee's counsel made clear at the conference that BLMIS's purchase of treasuries was an acknowledged fact at the outset of the liquidation, and that none of those treasuries were purchased on behalf of investment advisory customers.  *See* July 2017 Conference at AA201.  Ms. Chaitman similarly mischaracterizes expert reports the Trustee recently served in non-Chaitman LLP cases, as none of the Trustee's experts conclude that BLMIS purchased securities on behalf of investment advisory customers.  Moreover, in denying a motion for additional discovery on BLMIS's purported treasuries trading, this Court recently disagreed with Ms. Chaitman's characterization of Madoff's testimony on the same subject. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, Adv. Pro. No. 08-01789 (SMB), 2019 WL 654293, at *11 (Bankr. S.D.N.Y. Feb. 15, 2019) ("Some defendants have further argued that BLMIS allocated some of those U.S. Treasury transactions to customers.  But Madoff never said this.").

(AA18).  Judge Maas therefore recognized that Ms. Chaitman has had meaningful access to the

materials in the warehouse for years and that her last-ditch effort to prolong this dispute by

offering to visit the warehouse herself rang hollow.

In fact, in his March 15, 2017 order denying Ms. Chaitman's second motion to compel,

Judge Maas concluded that the indices produced by the Trustee in December of 2016 "should

have enabled Ms. Chaitman to formulate more focused requests for trading records."  (AA16).

Despite Judge Maas's directives, Ms. Chaitman never consulted these indices and only made the

warehouse an issue *after* the November 19, 2018 arbitration.  Judge Maas himself took issue

with this enlarged request in his Order, which he said was "based on a contorted view of the

record."  (AA17–18) ("Also largely unexplained is why the application to be given access to this

massive database morphed only one day later into a request that the Trustee wade through the

13,000 boxes of documents in the warehouse.").

Even here, Ms. Chaitman contradicts herself and reveals her apparent strategy to

perpetuate this dispute.  In another effort to accommodate Ms. Chaitman, the Trustee recently

agreed to give Ms. Chaitman access to the Warehouse for those adversary proceedings that have

open fact discovery periods, in accordance with this Court's decision on the Trustee's Motion for

Additional Limited Discovery.  Now that the Trustee has granted Ms. Chaitman access—which

is exactly the relief she is asking for on appeal—Ms. Chaitman claims that this relief imposes an

unfair burden on Defendants.  This position is emblematic of Ms. Chaitman's conduct over the

course of this dispute and reflects the reality that there is simply no satisfying Ms. Chaitman.

## CONCLUSION

The Trustee respectfully requests that the Court affirm Judge Maas's January 2019 Order in its entirety and confirm that the Trustee has complied with all relevant orders governing this dispute.

Dated: New York, New York
April 1, 2019

By: */s/ David J. Sheehan*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Maximillian S. Shifrin
Email: mshifrin@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*