**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br><br> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>      Plaintiff,<br><br> v.<br><br>CERTAIN DEFENDANTS REPRESENTED BY CHAITMAN LLP ,<br><br>      Defendants-Appellants. | Adv. Pro. CERTAIN DEFENDANTS REPRESENTED BY CHAITMAN LLP |

## TRUSTEE'S SUPPLEMENTAL APPENDIX

### (Pages TA001 to TA591)

# TABLE OF CONTENTS

**Page**

Trustee's Initial Disclosures ............................................................................ TA001

The Madoff Trustee, Proof of Fraud and Insolvency, E-Data Room 1, User Guide
for Outside Litigation Counsel.................................................................. TA009

Trustee's Responses and Objections to Defendants' Document Demands and
Interrogatories........................................................................................ TA036

Trustee's Sept. 26, 2016 Letter to Chaitman LLP regarding *Picard v. Trust U/ART
Fourth o/w/o Israel Wilenitz*, Adv. Pro. No. 10-04995 (SMB) ................ TA064

Transcript of Dec. 13, 2016 Arbitration on Chaitman LLP's Motion to Compel
Discovery and Trustee's Cross-Motion for a Protective Order in *Picard v.
Wilenitz*, Adv. Pro. No. 10-04995 .......................................................... TA070

Trustee's Dec. 15, 2016 Letter to Arbitrator Honorable Frank Maas regarding *In
re BLMIS* (08-01789) – Motion to Compel filed by Chaitman LLP in
*Picard v. Wilenitz*, Adv. Pro. No. 10-04995 ........................................... TA362

Transcript of Jan. 5, 2017 Telephone Conference with Chaitman LLP before
Arbitrator Honorable Frank Maas............................................................ TA366

Trustee's June 25, 2017 Email Correspondence with Chaitman LLP regarding
"1980s trading records" .......................................................................... TA440

Transcript of July 26, 2017 Discovery Conference with Chaitman LLP Pursuant
to Local Bankruptcy Rule 7007-1 before Judge Bernstein ....................... TA444

Trustee's Aug. 25, 2017 Letter to Chaitman LLP and McDermott Will & Emery
LLP regarding *Securities Investor Protection Corporation v. Bernard L.
Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789 (SMB) –
*Requests for Documents*.......................................................................... TA515

Chaitman LLP's Sept. 5, 2017 Letter to Trustee regarding *Securities Investor
Protection Corporation v. Bernard L. Madoff Investment Securities LLC*,
Adv. Pro. No. 08-01789 (SMB) – Requests for Trustee to comply with
Defendants' document demands.............................................................. TA524

Chaitman LLP's Oct. 11, 2017 Email Correspondence to Trustee regarding
"Documents from the BLMIS data base" ................................................ TA533

Trustee's Oct. 18, 2017 Letter to Chaitman LLP regarding *Securities Investor
Protection Corporation v. Bernard L. Madoff Investment Securities LLC*,
Adv. Pro. No. 08-01789 (SMB) – Requests for Documents ..................... TA534

i

Trustee's Oct. 25, 2017 Response Email Correspondence to Chaitman LLP and
McDermott Will & Emery LLP regarding "Documents from the BLMIS
data base" ................................................................................................................ TA537

Chaitman LLP's Nov. 2, 2017 Response Email Correspondence to Trustee
regarding "Documents from the BLMIS data base" .................................................. TA539

Trustee's Responses and Objections to Defendants' Third Set of Requests for
Production of Documents to the Trustee .................................................... TA541

Transcript of May 1, 2018 Discovery Conference with Chaitman LLP before
Judge Bernstein ........................................................................................................ TA551

Chaitman LLP's May 1, 2018 Response Email Correspondence to Trustee
regarding "Wilenitz Conference Follow-Up" ............................................................ TA576

Trustee's May 10, 2018 Response Email Correspondence to Chaitman LLP
regarding "Status" referring to the BLMIS data base ................................................ TA578

Chaitman LLP's Sept. 5, 2018 Response Email Correspondence to Trustee
regarding "Draft Joint Letter to Judge Maas" ............................................................ TA583

Trustee's Sept. 17, 2018 Letter to Chaitman LLP regarding *Trust U/Art Fourth
O/W/O Israel Wilenitz, et. al.*, Adv. Pro. No. 10-04995 (SMB) ................................ TA586

Trustee's Nov. 27, 2018 Letter to Arbitrator Honorable Frank Maas regarding
*Picard v. Wilenitz*, et al., Adv. Pro. No. 10-04995 .................................................... TA588

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Keith R. Murphy
George Klidonas
Anat Maytal

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04995 (SMB) |
| Plaintiff, | |
| v. | |
| TRUST U/ART FOURTH O/W/O ISRAEL WILENITZ, EVELYN BEREZIN WILENITZ, individually, and as Trustee and Beneficiary of the Trust U/ART Fourth O/W/O Israel Wilenitz, and | |

| SARA SEIMS, as Trustee of the Trust U/ART Fourth O/W/O Israel Wilenitz, |
|---|
| Defendants. |

## PLAINTIFF'S INITIAL DISCLOSURES

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure as made applicable to this adversary proceeding by Rule 7026 of the Federal Rules of Bankruptcy Procedure, Irving H. Picard, (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), and the Estate of Bernard L. Madoff, by and through his counsel Baker & Hostetler LLP, hereby provides the following initial disclosures.

A.      Rule 26(a)(1)(A)(i).  The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Upon information and belief, the Trustee discloses the following individuals, or where deceased, the estates of the individuals, that he may use to support his claims.  Current or last known addresses, where in the possession of the Trustee, are provided below.  The Trustee reserves his right to supplement this list as other individuals and/or entities become known, and/or as different subjects become relevant.

At the present time, the Trustee identifies the following individuals and entities that he may use to support his claims:

1.      Trust U/ART Fourth O/W/O Israel Wilenitz ("Trust"), Evelyn Berezin Wilenitz, individually and as Trustee of the Trust, and Sara Seims, as Trustee of the Trust. Defendants may be contacted through counsel Helen Davis Chaitman, CHAITMAN LLP, 465 Park Avenue, New York, NY 10022, Tel.: (888) 759-1114, Email: hchaitman@chaitmanllp.com.

2

2.  The following individuals have knowledge concerning (i) the preservation of BLMIS's books and records:  Paul Takla, Federal Bureau of Investigation, 26 Federal Plaza, 23rd Floor, New York, NY 10278, and (ii) the identification, preservation, and collection of BLMIS's books and records:  Matthew Cohen and Meaghan Schmidt, AlixPartners LLP, 9 West 57th Street, Suite 3420, New York, NY 10019.

3.  The following individuals may be relied on by the Trustee as examples of creditors and customers with matured or unmatured unsecured claims against BLMIS that are allowable under § 502 of the Bankruptcy Code or that are not allowable only under § 502(e) of the Bankruptcy Code:

- Paul A. Goldberg & Caren Goldberg;

- Marsha Moskowitz;

- S. Joel Pelzner & Carol A. Pelzner.

4.  BLMIS executives or employees:

- Belle Jones – The Trustee does not expect to rely on former BLMIS executives or employees at trial.

- Jodi Crupi – The Trustee does not expect to rely on former BLMIS executives or employees at trial.

- Robert Cardile – The Trustee does not expect to rely on former BLMIS executives or employees at trial.

- Erin Reardon – The Trustee does not expect to rely on former BLMIS executives or employees at trial.

- Frank DiPascali – Deceased.

B.  Rule 26(a)(1)(A)(ii).  A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

As a result of Judge Stanton's order dated December 15, 2008, the Trustee has assumed possession of approximately 13,500 boxes of BLMIS paper documents and 19,250 media sources containing electronically stored information ("ESI"), which include, but are not limited to, desktop computers, laptop computers, AS/400 computers, hard drives, network storage, microfilm, microfiche, backup tapes, PDAs, floppy disks, compact discs and memory cards.  The

3

Trustee has preserved all of the data of which he assumed possession. With respect to these materials, some paper and some ESI have been loaded for potential production in the Trustee's cases in one or more electronic databases, totaling 4.0 terabytes or 28.8 million documents. Materials not contained on the databases are stored in Long Island City, New York or Rosendale, New York.

The Trustee is also in possession of over 5 million documents received from approximately 450 parties during the course of this action, including during the investigation and litigation of adversary proceedings. Additional documents are produced to the Trustee on a continual basis. The Trustee's use of these documents is subject to a variety of restrictions including the Protective Order entered on June 6, 2011 in the matter of *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, et al., Adv. Pro. No. 08-01789 (SMB) (the "Litigation Protective Order") or confidentiality agreements. Some of these documents were produced to the Trustee for settlement purposes only. Additionally, the Trustee has obtained, and may obtain in the future, the ability to access documents, information, and testimony related to legal proceedings outside of the United States, to which the Trustee is a party or has an interest in the outcome of the litigation, that are subject to confidentiality restrictions imposed by courts or rules of procedure in the relevant jurisdictions.

Because the investigation of BLMIS's books and records continues, the Trustee may learn that additional documents, ESI, and/or tangible things support the Trustee's claims. Any omissions are inadvertent. Consequently, the Trustee reserves his right to supplement this list and the production of materials as other documents become known and/or as different subjects become relevant.

4

At the present time, the Trustee identifies the following documents, ESI, or tangible things in the possession of Plaintiff's counsel that contain information relevant to the matter in controversy.

1.    Customer account documents:  The Trustee will provide a set of account documents related to Defendant's investments with BLMIS, including account opening documents, correspondence, account statements, and documents related to deposits to and withdrawals from Defendant's BLMIS account, particularly as reflected on Exhibit B to the Complaint.  These account documents have been provided with these Initial Disclosures.

2.    Documents sufficient to prove that BLMIS was operating a fraudulent scheme going back to at least the 1970s.

3.    Documents sufficient to prove that BLMIS was insolvent from the period of September 12, 2008 through December 11, 2008, the 90-day preference period, and also from the period of December 11, 2006 through December 11, 2008, the 2-year fraudulent transfer period.

4.    Due to the voluminous nature of the documents relating to the individuals identified in Section A, Paragraph 3 of these Initial Disclosures, counsel for the Trustee will produce these documents upon request.

Consistent with applicable court orders, the Trustee intends to make available a set of approximately 4 million documents in a virtual data room ("E-Data Room 1") to prove that BLMIS was a fraudulent enterprise and that BLMIS was insolvent.  The documents supporting the conclusion that BLMIS was a fraudulent enterprise will include BLMIS customer account ledgers, records and statements; portfolio management reports and portfolio transaction reports; correspondence from customer files; bank statements and financial records for the investment advisory business; documents supporting the calculation of purported convertible arbitrage trades; daily stock records; documents describing BLMIS computer systems used to create customer statements; documents related to BLMIS trades purportedly settled by the Depository Trust & Clearing Corporation; materials related to BLMIS's purported options trading activity; and FOCUS reports and filings with the U.S. Securities and Exchange Commission.  The

5

documents supporting the conclusion that BLMIS was insolvent will include investment

advisory business cash balances and customer account liabilities; market making and proprietary

trading businesses cash balances and securities data; and documents related to the appraisal and

valuation data of the market making and proprietary trading businesses.  Counsel for Defendant

may request a non-disclosure agreement from the Trustee by sending a written request to

MadoffDataRooms@bakerlaw.com.  Once counsel has executed this non-disclosure agreement

and returned it to the Trustee, counsel will be provided with access to E-Data Room 1 and a user

guide containing a detailed index of the materials in E-Data Room 1, including a listing of public

and/or commercially available market information relied upon by the Trustee.

By way of further disclosure, the Trustee also identifies the following documents upon

which he may rely:

a)  Exhibits to the Complaint.

b)  Documents referred to in the Complaint.

C.  Rule 26(a)(1)(A)(iii).  A computation of each category of damages claimed by the
disclosing party—who must also make available for inspection and copying as under
Rule 34 the documents or other evidentiary material, unless privileged or protected from
disclosure, on which each computation is based, including materials bearing on the nature
and extent of injuries suffered.

The Trustee's computation of damages is included on Exhibit B to the Complaint.  The

documents on which those computations are based are those related to deposits to and

withdrawals from Defendants' BLMIS accounts and are being produced as set forth in section

B.1 above.    In addition, the Trustee seeks prejudgment interest of 9% per annum and all

applicable interest, costs, and disbursements of this action.

D.     Rule 26(a)(1)(A)(iv).   For inspection and copying as under Rule 34, any insurance
       agreement under which an insurance business may be liable to satisfy all or part of a
       possible judgment in the action or to indemnify or reimburse for payments made to
       satisfy the judgment.

        To the Trustee's knowledge, there are no insurance agreements under which an insurance

business may be liable to satisfy all or part of a possible judgment in the instant action, or to

indemnify or reimburse for payments made to satisfy the judgment.


Dated: December 21, 2015                         By:  /s/  *Keith R. Murphy*
                                                 **BAKER & HOSTETLER LLP**
                                                 45 Rockefeller Plaza
                                                 New York, New York 10111
                                                 Telephone:  212.589.4200
                                                 Facsimile:  212.589.4201
                                                 David J. Sheehan
                                                 Email:  dsheehan@bakerlaw.com
                                                 Keith R. Murphy
                                                 Email: kmurphy@bakerlaw.com
                                                 George Klidonas
                                                 Email: gklidonas@bakerlaw.com
                                                 Anat Maytal
                                                 Email: amaytal@bakerlaw.com

                                                 *Attorneys for Irving H. Picard, Trustee for the*
                                                 *Substantively Consolidated SIPA Liquidation*
                                                 *of Bernard L. Madoff Investment Securities*
                                                 *LLC and the Estate of Bernard L. Madoff*

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 21st day of

December, 2015 by electronic mail and Fed-ex upon the following:

Helen Davis Chaitman
CHAITMAN LLP
465 Park Avenue
New York, NY 10022
Tel.: (888) 759-1114
Email: hchaitman@chaitmanllp.com


  _/s/ Keith R. Murphy_____
*An Attorney for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Estate of Bernard L.
Madoff*

TA008

# BakerHostetler



## THE MADOFF TRUSTEE
## PROOF OF FRAUD AND INSOLVENCY
## E-DATA ROOM 1

---

## USER GUIDE FOR OUTSIDE LITIGATION COUNSEL

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | **INTRODUCTION AND OVERVIEW** | 1 |
| | | |
| II. | **ACCESS TO E-DATA ROOM 1** | 3 |
| | A.   Who May Gain Access | 3 |
| | B.   How to Gain Access | 3 |
| | | |
| III. | **ACCESSING THE INFORMATION PORTAL** | 5 |
| | A.   Non-Disclosure Agreement | 5 |
| | B.   Navigation Area | 5 |
| | C.   Requesting E-Data Room 1 Credentials | 6 |
| | D.   Requesting Documents for Production | 8 |
| | E.   Technical Support | 9 |
| | | |
| IV. | **E-DATA ROOM 1 CONTENTS** | |
| | A.   Overview | 10 |
| |     i.   E-Data Room Contents | 10 |
| |     ii.   Searchability | 10 |
| |     iii.   Miscellaneous | 10 |
| | B.   Data In E-Data Room 1 | 11 |
| | C.   Documents In E-Data Room 1 | 13 |
| | D.   E-Data Room 1 FINANCIALS Section | 13 |
| | E.   Document Released into E-Data Room 1 | 14 |
| | F.   E-Data Room 1 Fielded Information | 14 |
| | G.   Items Excluded from E-Data Room 1 | 15 |

**APPENDICES**

- **APPENDIX A**.  BLMIS PROCESSED DATA AND ELECTRONICALLY STORED INFORMATION ("ESI")   17
- **APPENDIX B.** BLMIS HARD COPY DOCUMENTS   19
- **APPENDIX C**. INFORMATION PORTAL FIELDED INFORMATION   20
- **APPENDIX D.**  FIELDED INFORMATION INCLUDED IN E-DATA ROOM 1   21



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

## BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
(rev. 9/2018)

### I.    INTRODUCTION AND OVERVIEW

The Madoff Trustee Proof of Fraud and Insolvency Data Room ("E-Data Room 1") is an electronic repository made available to attorneys representing parties involved in litigation initiated by Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA") and the substantively consolidated estate of Bernard L. Madoff ("Madoff").

Pursuant to the Order dated November 10, 2010, (1) Establishing litigation case management procedures for avoidance actions and (2) Amending the February 16, 2010 Protective Order issued by the U.S. Bankruptcy Court (the "Case Management Order"), as modified by subsequent Orders, E-Data Room 1 contains certain core information[1] that relates to

- The financial condition of BLMIS
- The operations of BLMIS, including the Ponzi scheme
- Customer account documents and correspondence with BLMIS
- Other internal records of BLMIS
- Transfers of money to, from and within BLMIS
- Regulatory disclosures made by BLMIS

Documents and data provided in E-Data Room 1 are organized generally by source, then by type of document/data.  This organizational structure does not and is not intended to reflect the document/information management system used by BLMIS during its operation.  The Trustee's information regarding BLMIS operations is based on information and belief, not personal knowledge.

As more fully set forth below, access to E-Data Room 1 is limited to counsel of record for defendants in certain actions brought by the Trustee ("Outside Litigation Counsel") to search for, review, and request production of documents that are identified in the Trustee's Initial Disclosures or are responsive to document requests served on the Trustee.

Pursuant to the Order Establishing Expanded Access to E-Data Room 1, entered on January 12, 2012 in SIPC v. BLMIS, et al., Adv. Pro. No. 08-071989(BRL), access to E-Data Room 1 may be granted to the attorneys of record for defendants in this and related adversary proceedings.  In a good faith effort to prevent disclosure of Personally Identifiable Information ("PII"), the Trustee redacted dates of birth, personal addresses, and other identifying information such as Social Security Numbers, bank account numbers, taxpayer identification numbers, and other similar numbers and information that appear on

---

[1] As a result of Judge Stanton's order dated December 15, 2008, the Trustee has assumed possession of and/or has access in conjunction with the FBI to approximately 11,700 boxes of BLMIS paper documents and 19,000 media sources containing electronically stored information ("ESI"), which include, but are not limited to, desktop computers, laptop computers, AS/400 computers, hard drives, network storage, microfilm, microfiche, backup tapes, PDAs, floppy disks, compact discs, and memory cards. The Trustee has preserved all of the data of which he assumed possession on or subsequent to December 15, 2008.

With respect to these materials, some paper and some ESI are stored in one or more databases, exceeding 5 terabytes or approximately 34 million documents. Materials not contained in the databases are stored either in Long Island City, NY or Rosendale, NY.

From this large collection of evidence and for the convenience of the defendants, the Trustee is making available in E-Data Room 1 certain core documents related to the topics listed above, including documents and data identified in the Documents Considered lists associated with reports prepared by the Trustee's experts, including Bruce Dubinsky (Duff & Phelps), Matthew Greenblatt (FTI Consulting), and Lisa Collura (FTI Consulting).  The Trustee cannot and does not represent that all documents related to these topics have been captured in E-Data Room 1.  Nothing in E-Data Room 1 is intended to limit the scope of discovery permitted by the Court.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in SIPC v. BLMIS,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

1

TA011

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

many of the documents in E-Data Room 1.  Where such information has been removed from a page, a notation indicating "Redacted" is displayed.

The use of any "Confidential Material," as defined in the Litigation Protected Order entered on June 6, 2011 in SIPC v. BLMIS, et al., Adv. Pro. No. 08-071989(BRL) (the "LPO"), contained within E-Data Room 1 is governed by the parameters set forth in the Non-Disclosure Agreement ("NDA") that each user must execute to access E-Data Room 1, the LPO, and any subsequently entered court order(s).  To the extent disclosure may be allowed under the aforementioned parameters, anyone who wishes to use data containing material confidential in nature will be required to use redaction, data deletion, masking, and/or any other appropriate measures as may be required.  Disclosure to any party or counsel, whether inadvertent or otherwise, is not intended to waive privilege, work product protection or confidentiality.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

2

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

## II.    ACCESS TO E-DATA ROOM 1

The Trustee is providing counsel with two platforms in order to search for, review, and produce documents from E-Data Room 1. The first platform is a web-based site called the **Madoff Trustee E-Data Room 1 Proof of Fraud and Insolvency Information Portal** (the "Information Portal"), to enable Outside Litigation Counsel to request database user credentials and to request documents identified for production from the Relativity E-Data Room 1 database. The Information Portal is a site separate and apart from the **Madoff Trustee E-Data Room 1 Proof of Fraud and Insolvency Relativity Data Room** ("E-Data Room 1"), which is a review database hosted in Relativity. This manual contains information concerning the data room work flow processes and access and use of the Information Portal. Detailed instructions regarding navigating E-Data Room 1 are provided separately in the Relativity Database Users Guide. All documents and instructions referenced in the materials provided here are also available on the Information Portal.

A.    Who May Gain Access

Access to E-Data Room 1 will be provided to counsel of record for defendants ("Outside Litigation Counsel") in the actions seeking solely fictitious profits in which a Notice of Applicability was filed pursuant to the Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order, dated November 10, 2010 [ECF No. 3141](the "Avoidance Actions").

B.    How to Gain Access and Using the Information Portal

To access the Information Portal, users should use the following link and log in with the credentials provided via email from the Madoff Data Rooms. Users should add **\*.bhdrrequestinfo.com** as a Trusted Site within their browser settings (e.g., for Internet Explorer, select Internet Options\Security) https://www.bhdrrequestinfo.com/

_Please note:_ _In order to provide the maximum level of security; the Hypertext Transfer Protocol (HTTP) has been disabled for the Information Portal. Users should always use the Hypertext Transfer Protocol Secure (HTTPS) to assure secure communication between Baker Hostetler servers and the user's computer._

_Users should add \*@bakerlaw.com to their email system's white list to ensure communications are not filtered as spam._





CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in _SIPC v. BLMIS_,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

3

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**



*QUICK TIP*
*When entering user credentials, **TYPE** the username and password in lieu of copy/pasting*

*INVALID LOGIN ATTEMPTS*
*Three (3) attempts at logging in with the incorrect credentials will lock the account. If a user's account is locked, the user will need to contact Madoff Data Rooms at madoffdatarooms@bakerlaw.com to reset his/her Information Portal credentials.*



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

4

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

## III.    ACCESSING THE INFORMATION PORTAL

A.    Non-Disclosure Agreement

After logging onto the **Information Portal**, the user will need to review and approve the Non-Disclosure Agreement ("NDA"), set forth and approved by the Court. By selecting the check box below and pressing "Submit," the user agrees to the terms referenced in the NDA. A copy of the NDA will be provided by email for reference. A copy of the NDA can also be found in the "Documents" section on the Information Portal. For any NDA-related inquiries, please contact MadoffDataRooms@bakerlaw.com.



B.    Navigation Area

The navigation across the top of the Information Portal provides  links to various sections of the site:

1.   **Home:** Provides access to the Information Portal home page detailing general information and contact details.
2.   **Relativity Credentials:** Management of Outside Litigation Counsel Relativity credentials.
3.   **Productions:** Management of Outside Litigation Counsel Relativity productions.
4.   **Technical Questions:** Provides contact information for obtaining technical information regarding E-Data Room 1 functionality, assistance with technical issues, etc.
5.   **Documents:** Provides access to supporting documents and guides related to E-Data Room 1 and Information Portal.





CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

TA015

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

C.    Requesting E-Data Room 1 Credentials

Click on **Relativity Credentials** on the Navigation area at the top to begin the steps to request credentials for access to the Relativity E-Data Room 1 Database.



Follow these steps to request credentials to E-Data Room1. Once the user's credentials have been setup, he/she will receive a confirmation email from the Madoff Data Rooms



STEP 1.
• Select **+[ADD]**

STEP 2.
• Fill in the user(s) First Name, Last Name, Email and whether they want to receive Portal Alerts

STEP 3.
• Select "**Add User Request".**  You may remove any users before clicking Submit.

STEP 4.
• When all users have been added, select the "**Submit**" Button.

STEP 5.
• Select the "**Confirm Submission**" on the confirmation window to continue.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

6

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**



*Information Portal Email Alerts:*
*By selecting "Yes" for Portal Alerts, the selected user will receive notifications from the Information Portal when alerts are generated. This function can be updated at any time by selecting **[EDIT]** on the table to update the Portal Alert options and then by selecting Yes/No in the pop-up window.*



*INFORMATION PORTAL FIELDED INFORMATION*
Please see *APPENDIX D.  INFORMATION PORTAL FIELDED INFORMATION* for a description of the fields currently on the Information Portal.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

7

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

D.   Requesting Documents for Production

E-Data Room 1 users do not have the ability to print or download items from E-Data Room 1.  To obtain copies of documents or data posted in E-Data Room 1, users must submit requests for production of such documents/data using the Information Requests protocols as follows:

<u>Review and Production of E-Data Room 1 materials</u>
- One Relativity Saved Search Folder will be created for each law firm for a specific Adversary Proceeding Number, using the following format:  APN_Firm Name (EX: 10-12345_BakerlawLLP).
- The Relativity Saved Search folder will be shared among users from the same law firm for a particular Adversary Proceeding Number.
- One Relativity "Coding Layout" will be created for each law firm involved with a specific Adversary Proceeding Number. The Coding Layout name will use the following format: APN_Firm Name.
- Each user from a specific law firm for a specific Adversary Proceeding Number will use the same assigned Coding Layout to identify and "tag" documents of interest.  No user other than a user from that law firm for the specific Adversary Proceeding Number will be able to access or view documents tagged in that assigned Saved Search Folder or Coding Layout.
- To obtain copies of E-Data Room 1 items of interest, a user must
  - Tag the items in the database using the appropriate "To Produce" selection provided on the Coding Layout.
  - Log on to the Information Portal.  https://www.bhdrrequestinfo.com
  - Complete and submit the E-Data Room 1 Production Request form
    - The E-Data Room 1 Production Request form will enable users to request production of all documents tagged "To Produce" on the Relativity Coding Layout.
    - The production set will not include duplicate documents.
- Prior to production, the Trustee's attorneys will review all items to be produced for confidentiality and appropriate redaction.  Where production of the same documents is requested by multiple users from the same law firm, the Trustee will de-duplicate during preparation of the production set.

Within the Information Portal, selecting the "Relativity Production" link will take Outside Litigation Counsel to the section where users can easily manage Relativity document production requests. More specifically, Outside Litigation Counsel will be able to track the date of the request, the requested production format, the total number of documents and pages requested, and the date on which the production was completed.  Please note, only one request for production may be entered in a business day.

<u>Document Production Response Time</u> - Document Production Requests are expected to take between 6-8 business days to process, from the date of the request. This time frame includes setup, processing and completion time. Weekends and holiday are not included in the 6-8 business days. Please see the holiday schedule posted in the "Documents" section to view the holiday schedule.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

8

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
(rev. 9/2018)

Document Production Format – Users are provided two production format choices:  "**PDFs, fielded data provided in Excel format and OCR text files**" or "**Single Page Tiffs, Doc Level Text, DAT file for fielded data, OPT and LFP image load files**."

Once documents have been tagged in Relativity, follow the steps below to request documents for production.



| | |
|---|---|
| STEP 1. | • Log into the Information Portal<br>  https://www.bhdrrequestinfo.com |
| STEP 2. | • Click "**Productions**" on the Navigation Bar |
| STEP 3. | • Select **+[ADD]** |
| STEP 4. | • Select production format |
| STEP 5. | • Select "**Submit Production Request**" |
| STEP 6. | • Select the "**Confirm Submission**" on the confirmation window to continue. |

All documents tagged earlier than 6:00 pm ET for that business day will be processed as part of the production request. *Please note, only one request for production may be entered in a business day.

The Production Request Status table will track all production requests submitted, as shown in the screenshot below.



E.   Technical Support

For technical support or assistance using the Information Portal or E-Data Room 1, please email the Madoff Data Room Team at MadoffDataRooms@bakerlaw.com.

To ensure that users receive all email communications from the Trustee's Madoff Data Rooms team, add *@bakerlaw.com to your email system's "white list" to ensure communications are not filtered as spam This information is also available in the Technical Questions section on the Information Portal.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

9

**BakerHostetler**

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
(rev. 9/2018)

### IV.    E-DATA ROOM 1 CONTENTS

A.   Overview

   i.    E-Data Room 1 Contents

   E-Data Room 1 contains
- Selected scanned hard copy documents collected from BLMIS facilities
- Selected processed data from BLMIS microfilm, electronically stored information, and other BLMIS datasources
- Selected scanned and processed data and documents obtained from third party sources

   The terms and provisions of all applicable protective orders apply to the contents and use of E-Data Room 1.

   ii.    Searchability
- Objective information and coding about documents and data is provided as fielded information. Users may perform searches in any field. Fielded information is available about all documents and data posted in E-Data Room 1. For details and descriptions of fielded information and coding provided in E-Data Room 1, please see the discussion below and Appendix D.
- Users may also use Relativity's Content Search function to perform text searches across all documents/data in E-Data Room 1 or within a collection. Instructions for performing searches can be found in the Relativity Quick Start Guide and the Relativity Database User Guide available on the Information Portal.
  - All documents in E-Data Room 1 have been processed using optical character recognition (OCR) technology or are otherwise rendered content-searchable to the extent possible.
  - The Trustee used OCR technology in a good faith attempt to provide searchable versions of scanned documents. OCR technology is not perfect, and the OCR process may result in errors in the visible text. The Trustee makes no warranties regarding the quality of the OCR process.
  - The original scanned versions of all OCR'd documents are posted in E-Data Room 1 along with available searchable text. If there are differences between the original and the searchable versions, the original version takes precedence.

   iii.    Miscellaneous

   Counsel for the Trustee will not be liable for any technical issues concerning E-Data Room 1 caused by technical constraints, errors, or malfunctions beyond the Trustee's control. Any inadvertent disclosure resulting from technical constraints, errors, or malfunctions will not be construed as a waiver of privilege, work product protection or confidentiality.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

10

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

B.   Data In E-Data Room 1

BLMIS information is available from data extracted from BLMIS data sources, primarily the BLMIS AS400 and related applications[2].  Other information was archived and stored by BLMIS on microfilm.  The DATA section in E-Data Room 1 contains copies of reports and some "near-native" data obtained from these BLMIS datasources.

Summaries regarding BLMIS datasources are provided below.  For more information, see **Appendix A**.

The E-Data Room 1 DATA section is organized within the Relativity "Issue Trees" to reflect the original datasource as follows.

- **AS400 Datasource**
  - Other (programming, screenshots, etc.)
  - SETCSH17
  - STMTPro
  - StorQM
    - 1099 Forms
    - Account Statements
    - Portfolio Management Reports (PMRs)
- **Microfilm**
  - Account Ledgers
  - Other Reports

The original sources for items in the E-Data Room 1 DATA Issue Trees are as follows.

- **Microfilm** - Customer data (customer ledgers, Year-to-Date ("YTD") and other summary reports) from BLMIS microfilm for the period 1978 – November 1995.

- **SETCSH17 Table** - The SETCSH17 ("Settled Cash") reports are generated from BLMIS monthly backup tapes containing the SETCSH17 table.  SETCSH17 data is available for years 1998-2008.  The SETCSH17 table is a prepared datasource created from extracted and restored BLMIS data that was aggregated by BLMIS account number to facilitate review.  SETCSH17 reports in E-Data Room 1 are presented in PDF format and contain all transactions for the applicable account number, organized by month.  The MS Excel files that were prepared from the extracted SETCSH17 data are also available in E-Data Room 1.

- **STMTPro** - STMTPro ("StatementPro") is a proprietary AS400 add-on application developed by BLMIS programmers.  Restored customer account statements using the custom STMTPro program are available to the extent the STMTPro tapes have been restored and processed.  Many of the STMTPro tapes were stored with paper indices ("tape wrappers") that provide selected information such as dates and account numbers.  To the extent available, copies of the scanned tape wrappers are also in E-Data Room 1.

- **StorQM** - StorQM is a report-writing application used to generate reports from the AS400 data source.  BLMIS customer data (customer account statements, YTD and other summary reports)

---

[2] The original native files are not provided in E-Data Room 1.

CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

11

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

for the period from December 1995 through November 2008 is available from the BLMIS AS400 data source via StorQM-generated reports.

- o  When BLMIS prepared account statements for forwarding to customers, a custom StorQM "overlay" was used to generate statements that included the BLMIS logo, special coloring of data rows, and other custom printing features, as portrayed below.
- o  The processed StorQM reports in E-Data Room 1 were generated in "native-like" format and do not contain the overlay that appeared on the statements received by BLMIS customers.

**BLMIS StorQM Overlay:**



- **StorQM 1099 Forms** - Using the StorQM report-writing application, BLMIS generated IRS Form 1099s from the AS400 datasource.  The processed Form 1099 documents available in E-Data Room 1 relate only to a few selected customers.

Additional customer-specific data has been produced separately by the Trustee and may not be available in E-Data Room 1.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

12

**BakerHostetler**

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
(rev. 9/2018)

C.    Documents in E-Data Room 1

The DOCUMENTS section in E-Data Room 1 contains electronic copies of hard copy documents collected from BLMIS facilities or obtained from other sources, plus associated objective fielded information.  An E-Data Room 1 "Document" may also be the electronic print version of electronically stored information obtained from a BLMIS datasource.

Organization of E-Data Room 1 Documents

For user convenience and guidance, E-Data Room 1 Documents are organized generally by source, then by type of document/data.  This organizational structure does not and is not intended to reflect the document/information management system used by BLMIS during its operation.  The E-Data Room 1 DOCUMENTS section does not constitute a representation of the full scope or location of BLMIS documents.

The E-Data Room 1 DOCUMENTS section is organized in Relativity "Issue Trees" as follows.

- **BLMIS Documents and Work Papers** – BLMIS work papers, charts, notes, reports, etc. collected from the Lipstick Building, Bulova, and the Queens warehouse; including documents from selected BLMIS customer files and documents and correspondence from BLMIS customers. Also includes selected processed and Bates-numbered items from BLMIS electronically stored information.
  - ○ **Purported Trading Activity** – processed microfilm and  scanned documents that are responsive to search queries regarding purported BLMIS trading activities that were performed pursuant to instructions from and in response to document requests received from opposing counsel
- **BLMIS Operational Documents** – computer manuals, procedure logs, diagrams, etc. regarding BLMIS operations, including technology (not a comprehensive collection).
- **FINRA** – includes documents prepared or filed by BLMIS with FINRA or NASD (predecessor to FINRA).
- **MSIL Documents and Work Papers** – Madoff Securities International Ltd ("MSIL") is an entity associated with BLMIS that is subject to a UK liquidation proceeding overseen by a court-appointed liquidator (the "JPL Liquidator").  The majority of MSIL documents were collected from MSIL headquarters located in London, England and an offsite storage facility.  Additional MSIL work papers, charts, notes, reports, etc. were collected from BLMIS locations.   To the extent permitted by UK law as determined by the JPL Liquidator, selected MSIL documents are available in E-Data Room 1.
- **Other Public Documents** – publicly available documents provided for convenience, includes without limitation the report prepared by the SEC Office of Inspector General and related exhibits, transcripts of relevant plea allocutions or other testimony, transcripts and exhibits from the 2013/2014 federal (USDC, SDNY) criminal trial of key BLMIS employees, pleadings from civil or criminal proceedings, and pricing or other information provided by governmental agencies.
- **Other Third Party Documents** – includes selected documents provided by selected third parties in response to subpoenas or document requests and third-party documents obtained from public or commercial sources (provided for convenience); see the discussion below regarding FINANCIALS for information regarding documents from banking/financial and institutions and related.
- **SEC** – includes public regulatory filings (provided for convenience) and documents produced to the Trustee by the SEC.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

13

**BakerHostetler**

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

- **Trustee Documents** – includes exemplar claims-related documents provided by the Trustee and documents filed or obtained by the Trustee (provided for convenience).

For more information regarding items posted in the E-Data Room 1 DOCUMENTS section, see **Appendix B.**

D.    E-Data Room 1 FINANCIALS Section

The FINANCIALS section in E-Data Room 1 contains electronic copies of hard copy financial and accounting documents and electronic data collected from BLMIS facilities or obtained from other sources[3], plus associated objective fielded information.

The items posted in the E-Data Room 1 FINANCIALS section are organized in Relativity "Issue Trees" in alphabetical order according to entity name.  Where applicable, separate subfolders for each account held at the banking/financial institution have been created to enable access to account-specific information.  Separate folders have also been created for the following BLMIS or MSIL documents:

- **BLMIS Financial Statements** – includes copies of audited BLMIS financial statements (1997-2008) and related documents.
- **BLMIS General Ledgers** – includes copies of BLMIS general ledgers available between 1996 and 2008.
- **Invoices & Related** – includes copies of selected hard copy invoices and related documents regarding BLMIS House 17 or House 5 transactions.
- **MSIL Financials** – includes copies of selected documents regarding the financial condition and operations of MSIL and predecessor entities, including annual returns, financial statements and directors' reports, and other documents or data filed with the UK Companies House or obtained from processed data/documents from BLMIS or MSIL data sources.  All processed data/documents obtained from MSIL data sources are available in the US with the express permission of the JPL liquidator.

E.    Documents Released Into E-Data Room 1

Easy access to documents and files recently released into E-Data Room 1 is available by selecting Relativity "Issue Tree" values in the DOCUMENTS RELEASED "Issue Trees" as follows:

- **Released within the last 30 Days** – Provides access to documents released within the last 30 days.
- **Released within the last 60 Days** – Provides access to documents released within the last 60 days.
- **Released within the last 90 Days** – Provides access to documents released within the last 90 days.
- **Released post 90 Days** – Provides access to documents released more than  90 days ago.

F.    E-Data Room 1 Fielded Information

---

[3] The Trustee collected documents regarding financial accounts or transactions relating to the assets of BLMIS, BLMIS-related entities including MSIL, and Bernie and Ruth Madoff.  Documents that relate to asset amounts that do not affect the insolvency analysis of BLMIS have not been posted in E-Data Room 1.  Copies may be provided upon request.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

14

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

Objective information about items posted in E-Data Room 1 is provided as fielded information.  Users may perform searches in any field.  Fielded information is available about all items in E-Data Room 1, whether or not the data or document is amenable to content searching.

The fielded information is from a variety of sources, including original metadata from processed native files, coded fields based on information collected during evidence collection, and system-generated information.

The fielded information is provided by the Trustee as a good faith attempt to provide source information regarding data and documents that are made available in E-Data Room 1.

In some instances, the fielded information was prepared by the Trustee's consultants or agents. Presentation of the fielded information does not and is not intended to waive privilege or confidentiality.

For details and descriptions of the field names and fielded information provided in E-Data Room 1, see Appendix D.  The field names and descriptions are also available in the **E-Data Room 1 Relativity Quick Start Guide**.

G.    Items Excluded from E-Data Room 1

The following items are not included in E-Data Room 1:

1.    Account-Specific Core Account Documents
- Core Account Documents ("CADs") regarding BLMIS accounts have been defined to include: (a) the BLMIS customer account file to the extent it has been located; (b) customer account statements (including all iterations) and ledgers generated from the StorQM data source or restored from microfilm; and (c) Portfolio Management Reports ("PMRs") and Portfolio Transactions Reports ("PMTs") generated from the StorQM datasource or restored from microfilm.
- Core Account Documents (i.e., the customer file plus all available account statements and PMRs and PMTs) for each account number have been or will be produced separately to the account-holder or counsel and will not be provided in E-Data Room 1, except as follows:
  - The account-specific customer account statements, ledgers, PMRs, and PMTs are also available in the DATA section of E-Data Room 1 in the Issue Trees that reflect the source from which they were obtained (i.e.,  AS400 datasource or microfilm).

2.    BLMIS Datasources
- Native or "near-native" AS400 data tables used to generate Customer Statements, YTD summary reports, or other reports.

3.    Documents received from third parties that have been designated "confidential"
- Unless the producing party has consented to disclosure/production of such documents.

4.    Transcripts of depositions, Rule 2004 examinations, and interviews conducted of certain MSIL personnel under the supervision of the JPL liquidator
- Transcripts of testimony not designated "confidential" will be made available upon request
- Transcripts of testimony designated "confidential" will not be made available without prior written consent of the witness or counsel.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

15

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

5.   Documents and data that are publicly available, except as otherwise indicated

6.   Commercially available resources used by the Trustee, except as otherwise indicated, including without limitation:
- Database of historic trading information prepared and maintained by the University of Chicago, Center for Research in Security Prices ("CRSP")
- Database of historic trading information prepared and maintained by Chicago Board Options Exchange ("CBOE")
- DTCC documents, including Participant Position Statements for periods from 2002-2008, DTCC Clearing Fund Deposit Report for period ended December 11, 2008
   - i.   Selected Consolidated Participant Position Statements have been posted in E-Data Room 1.
   - ii.  Numerous DTCC reports and data were contained in boxes prepared and stored by BLMIS, and available via a DTCC terminal on-site at the Lipstick Building (not provided in E-Data Room 1).
- Information obtained from commercial services including subscription services or print publications regarding market trading activity or publicly traded companies, including company characteristics, historical financial performance, investment data, pricing, etc.
   - i.   Numerous boxes prepared and stored by BLMIS contain documents obtained from Bloomberg and the Wall Street Journal, including documents providing pricing and performance information regarding securities (not provided in E-Data Room 1).



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

16

TA026

**BakerHostetler**

THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM
(rev. 9/2018)


# APPENDIX A

## BLMIS PROCESSED DATA AND ELECTRONICALLY STORED INFORMATION ("ESI")


E-Data Room 1 contains Customer Account Statements, YTD summary reports, and other reports prepared from the processed BLMIS data.[4]

Fielded information provided in E-Data Room 1 is included to provide information regarding the physical media from which data was extracted and the BLMIS location (including custodian) of the media. This information is provided by the Trustee on information and belief and not from personal knowledge.


**Description of BLMIS Processed Data and ESI in E-Data Room 1**

- **AS400.** The IBM AS/400 ("the AS400") is a midrange server designed for small businesses and departments in large enterprises. The AS400 operating system is called the OS/400. One AS400 system was used by BLMIS for the Investment Advisory business ("House 17" or the "IA business") and a separate AS400 system was used for the Market Making & Proprietary Trading businesses (generally, "House 5"). Selected items regarding the AS400 are provided in E-Data Room 1.

- **ESI.** BLMIS had information and data in numerous forms and formats and available on different media. Selected processed and Bates-numbered items are provided in E-Data Room 1.

- **Microfilm.** BLMIS archived and stored historic data on microfilm reels. Generally, each reel contains labeling that gives an indication of the types of reports contained on the reel. Using the label information, a subset of the microfilm reels, and the reports contained therein, were identified for processing and Bates numbering. Customer account ledgers plus other periodic reports including reports related to customer accounts identified on the microfilm reels are provided in E-Data Room 1.

- **SETCSH17.** SETCSH17 (also referred to as "Settled Cash") is a data table maintained in the House 17 AS400 that contains transactional customer activity used to generate customer account statements. BLMIS archived this table on a monthly basis, purging the transactional data from the AS400 system after archive in order to preserve storage space. The SETCSH17 tables for years 1998-2008 maintained on backup tapes were identified and restored.

  Although organized by month in the original BLMIS archives, the SETCSH17 reports provided in E-Data Room 1 are organized by account number to facilitate review. The SETCSH17 reports include the file name[5] of the original native file on the backup tape.

---

[4] The original native files are not provided in E-Data Room 1.

[5] There are two formats in which the native files are named:

    1.   EX: **506160000002_001_01033_SETCSH17** 
       - The 18th and 19th characters in the file name represent the year of the backup (01, representing 2001)



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

17

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
(rev. 9/2018)

SETCSH17 reports are presented in E-Data Room 1 in PDF format and contain all transactions maintained on the backup tape for the applicable account number.  The MS Excel (.xlsx) file containing the data presented on the PDF report is also available in E-Data Room 1.  Production of the SETCSH17 reports  is comprised of the PDF report plus the MS Excel (.xlsx) file.

- **STMTPro.**  STMTPro (also referred to as "Statement Pro") is a program developed by BLMIS and used with the House 17 AS400. The program was designed to create BLMIS customer statements outside the normal monthly processing of customer statements.

  The AS400 data files required to reconstruct the customer statements generated by the STMTPro program were maintained on backup tapes.  The STMTPro files provided in E-Data Room 1 were reconstructed using the STMTPro program and the required contemporaneous data tables stored on the STMTPro backup tapes.

- **StorQM**.  Stor/QM ("StorQM") is a MS Windows-based end-user query management and data access tool that uses computer output to laser disk (COLD) technology for information storage, retrieval and report generation.  As originally developed, StorQM downloaded report data from a mainframe to a departmental file server for end-user access.  It performed reconcilement, indexing, compression and archiving functions.  A pattern analyzer reverse-engineered formatted reports into transaction data by matching line items in the reports with the proper column headings.

  BLMIS archived customer account statements, YTD summary reports, and other AS400-generated reports to a secure digital optical storage system named "StorQM."  Data used for each of the statements/reports was downloaded from a file server that was populated by the AS400.  The statements/reports provided in E-Data Room 1 were extracted using the StorQM application from the optical storage system.  The BLMIS StorQM optical storage system used WORM (write once, read many) technology, allowing for access to historical statements/reports using the StorQM application.

---

- Character nos. 20-22 represent the Julian date on which the backup was created (033, representing the 33rd day of the year or February 2).

2.  EX: **506240020010_001_004_03-04-1998_SETCSH17**
- The date on which the backup was performed is captured in MM-DD-YYYY format in the native file name (03-04-1998, representing March 4, 1998)



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

18

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
(rev. 9/2018)

## APPENDIX B

## BLMIS HARD COPY DOCUMENTS

Copies of selected scanned BLMIS documents from the BLMIS facilities are provided in E-Data Room 1.

Fielded information provided in E-Data Room 1 is included to provide information regarding the location (including custodian) from which documents were purportedly collected during the evidence collection process.  Such location and custodian information is provided by the Trustee on information and belief and not from personal knowledge.

Documents were collected from three (3) floors at the Lipstick Building on which BLMIS had office and work areas:  Floors 17, 18, and 19.  In addition, BLMIS leased two (2) rooms in the Lipstick Building basement for storage purposes.  BLMIS also leased an off-site "hot" disaster recovery site ("Bulova") and long-term storage space at an off-site warehouse (the "Queens warehouse").

Unique alpha designations were assigned to Lipstick Building locations (excluding the Lipstick Building basement) from which documents were collected, using BLMIS floor plans that identified office and workstation occupants.  It is the Trustee's understanding that the BLMIS floor plans were created and maintained by BLMIS employees.
- Copies of the floor plans for the three (3) floors (17, 18, and 19) occupied by BLMIS and associated companies are available in E-Data Room 1.
- BLMIS leased two storage rooms in the Lipstick Building basement – a smaller room (denoted Room A), and a large room (denoted Room B).  All BLMIS documents collected from a Lipstick Building basement room are assigned designations to indicate the room from which they were collected (BA denotes Lipstick Basement Room A, BB denotes Lipstick Basement Room B)
- All documents collected from Bulova are assigned designation MBU (Madoff Bulova).
- Except as noted, all documents collected from the Queens warehouse are assigned designation MQW (Madoff Queens warehouse).

In early 2009, a separate report with associated exhibits was prepared by Lazard Frères (the "Lazard Report") regarding the Madoff Market Making and Proprietary Trading business operations ("House 5") to assist the Trustee in the sale of those businesses ("Project M"). Processed and Bates-numbered versions of the Lazard Report and associated exhibits (the "Lazard CD") are also provided in E-Data Room 1.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

19

TA029

**BakerHostetler**

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

## APPENDIX C

## E-DATA ROOM 1 INFORMATION PORTAL FIELDED INFORMATION

**RELATIVITY CREDENTIALS FIELDS**

| INFORMATION PORTAL FIELD NAME | DESCRIPTION |
|---|---|
| FIRST NAME | • First Name of the user requesting access |
| LAST NAME | • Last Name of the user requesting access |
| EMAIL ADDRESS | • Email address of the user requesting access |
| PORTAL ALERTS | • Contains values from the following fields:  Date-Begin Date Range, Date-Check Clear Date, Date-Date Created, Date-Date Received, Date-Date Sent, Date-End Date Range, Date-Microfilm Ledger Date, Date-Statement Date |
| REQUESTED | • Date Relativity credentials were requested |
| RELATIVITY USERID | • Relativity username provided by CDS for access to E-Data Room 1 |
| RELATIVITY PASSWORD | • Relativity password provided by CDS for access to E-Data Room 1 |
| CONFIRMATION SENT | • Date on which Relativity credentials were sent to counsel |

**PRODUCTION REQUEST STATUS FIELDS**

| INFORMATION PORTAL FIELD NAME | DESCRIPTION |
|---|---|
| DATE OF REQUEST | • Date on which Relativity production was requested |
| REQUESTED FORMAT | • Production format for documents requested for production<br>    ○ PDFs, fielded data provided in Excel format and OCR text files *OR*<br>    ○ Single Page Tiffs, Doc Level Text, DAT file for fielded data, OPT and LFP image load files |
| PRODUCTION FIELD/TAG | • Name of Relativity Document Review Tag (i.e., 10-01234_Test Firm) |
| TOTAL DOCUMENTS | • Total number of documents prepared for production |
| TOTAL PAGES | • Total number of pages prepared for production |
| READY FOR RELEASE | • Date on which Relativity production was completed and provided to the responsible Baker Hostetler  attorney |



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

## APPENDIX D

## FIELDED INFORMATION INCLUDED IN E-DATA ROOM 1

**MASTER SEARCH FIELDS**[6]

| E-DATA ROOM 1 FIELD NAME | DESCRIPTION |
|---|---|
| BATES_NUMBERING_COMBINED | • Field created to enable better search functionality and easier retrieval of specific page(s) within selected larger digital document(s) |
| MASTER ACCOUNT NAME | • Contains values from the following fields:  Account Name, Account Nickname |
| MASTER ACCOUNT NUMBER | • Contains values from the following fields:  Account Number, Account Number-Account Referenced, Account Number-Customer File, Account Number-Master Account, Account Number-Microfilm Account Number, Account Number-Microfilm SubAccount as Coded, Account Number-Microfilm SubAccount, Account Number-Old |
| MASTER CUSTODIAN_LOCATION | • Contains values from the following fields:  Custodian-ESI, Scanned Custodian-Source/Location |
| MASTER DOCUMENT DATE | • Contains values from the following fields:  Date-Begin Date Range, Date-Check Clear Date, Date-Date Created, Date-Date Received, Date-Date Sent, Date-End Date Range, Date-Microfilm Ledger Date, Date-Statement Date |
| MASTER FILE NAME | • Contains values from the following fields:  File Name, File Name-Original |
| MASTER TITLE_DESCRIPTION | • Contains values from the following fields:  Bank Document Description, Microfilm Document Name, Title |

**DOCUMENT/IMAGE NUMBER FIELDS**

| E-DATA ROOM 1 FIELD NAME | DESCRIPTION |
|---|---|
| DocID | • Unique number assigned to each individual file/document in the database, the beginning Bates number of the file/document<br>• The Trustee's Bates numbers consist of an alpha prefix followed by 8-number sequential number<br>    ◦ Documents obtained via subpoena are assigned 3- or 4-character prefixes assigned by the Trustee.  Trustee-assigned Bates numbers are assigned to all documents obtained via subpoena, including documents previously numbered by the subpoenaed third-party.[7]<br>• Where the subpoenaed third-party has provided previously numbered documents/pages, the "original Bates number" information is also provided |

---

[6] The Master Search Fields were added during creation of E-Data Room 1 to enable better search functionality.  They contain all values from the identified fields.

[7] With one exception, once assigned, the Trustee's Bates numbers assigned to documents obtained from third parties have not been changed.  One set of documents obtained from third-party JPMorgan Chase that were assigned Trustee's Bates numbers beginning with alpha prefix JPMSBT were later re-assigned Trustee's Bates numbers beginning with alpha prefix JPMVAB.

CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

21

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

| E-DATA ROOM 1 FIELD NAME | DESCRIPTION |
|---|---|
| EndDoc | • Ending Bates number of scanned page or range of pages<br>• The Trustee's Bates number consists of an alpha prefix followed by 8-number sequential number<br>   o Documents obtained via subpoena are assigned 3- or 4-character prefixes assigned by the Trustee. Trustee-assigned Bates numbers are assigned to all documents obtained via subpoena, including documents previously numbered by the subpoenaed third-party.<br>   o Where the subpoenaed third-party has provided previously numbered documents/pages, the "original Bates number" information is also provided |
| Bates_Numbering_Combined | • Field created to enable better search functionality and easier retrieval of specific page(s) within selected larger digital document(s) |
| Bates Begin Attach | • Beginning Bates number of attachment |
| Bates End Attach | • Ending Bates number of attachment |
| Folder Begin<br>Folder End | • Beginning and ending Bates numbers of unitized folder as captured during scanning. Because of scanning and unitization anomalies, may not be the same as the beginning Bates number of the physical folder in which the relevant pages appear. |
| Original Bates Begin<br>Original Bates End | • For items produced to Trustee, the original beginning and ending Bates numbers assigned by the producing party<br>   o As noted, all items produced to the Trustee have been assigned new ("master") Bates numbers by the Trustee |
| Relativity Image Count | • Provides page count information for a document, as indicated by the number of images associated with the database record |

### ALL E-DATA ROOM FIELDS

| E-DATA ROOM 1 FIELD NAME | DESCRIPTION |
|---|---|
| (Saved Search) | • A saved set of criteria that returns documents that meet the specified criteria; four saved searches will initially be provided for Outside Litigation Counsel users |
| _Issues | • System-generated field, provides information regarding Relativity Issue tag / folder / subfolder associated with documents |
| Account Name | • Account name associated with BLMIS account number, as indicated on ANames table retrieved from BLMIS AS400 datasource |
| Account Nickname | • Abbreviated account name associated with selected BLMIS accounts, as indicated on ANames table retrieved from BLMIS AS400 datasource |
| Account Number | • BLMIS account number, as coded from microfilm and other coded datasources or as indicated in Madoff Inventory; not necessarily the same as the standardized BLMIS account number |
| Account Number - Account Referenced | • For selected AS400 items, provides account number of account referenced in the item |
| Account Number - Customer File | • BLMIS account number as indicated in relevant BLMIS customer file; not necessarily the same as the standardized BLMIS account number |
| Account Number - Master Account | • Standardized BLMIS account number, as indicated on ANames table retrieved from BLMIS AS400 datasource |
| Account Number - Microfilm Account Number | • For microfilm only, BLMIS account number, as standardized to reflect the latest versions of account numbers |
| Account Number - Microfilm Subaccount Number | • For microfilm only, BLMIS sub-account number, as standardized to reflect varying account types as indicated by related BLMIS account numbers |



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

22

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

| E-DATA ROOM 1 FIELD NAME | DESCRIPTION |
|---|---|
| Account Number - Microfilm Subaccount Number as Coded | • For microfilm only, unabridged subaccount number as it appears on the customer ledger |
| Account Number - Old Account Number | • BLMIS account number as indicated in selected BLMIS datasources |
| Adversary Proceeding Number_Firm | • Document review coding field to be used by Outside Litigation Counsel users for tagging documents requested for production |
| Artifact ID | • System-generated field, provides unique identifier for all database objects; available search option and in search results list display |
| AS400 Library | • Programmatic information regarding processed AS400 data |
| AS400 Member | • Programmatic information regarding processed AS400 data |
| AS400 Procedure | • Programmatic information regarding processed AS400 data |
| Author | • Author field from processed electronically stored information |
| Bank Account Number | • Account number used by bank or other financial institution to identify an account; provided only for BLMIS and affiliated entities |
| Bank Accountholder Name | • Name of accountholder associated with a specific account held at a bank or other financial institution, as identified by the financial institution; provided only for BLMIS and affiliated entities |
| Bank Document Description | • Description of bank document, e.g., customer check, reconciliation report, deposit slip, etc. |
| Bank Name | • Name of bank or financial institution associated with bank documents, including bank statements, checks, bank reports, reconciliation reports, etc. |
| Bates Begin Attach | • Beginning Bates number of attachment |
| Bates End Attach | • Ending Bates number of attachment |
| Bates_Numbering_Combined | • Field created to enable better search functionality and easier retrieval of specific page(s) within selected larger digital document(s) |
| BCC | • BCC field from processed electronically stored information |
| BOX – Alphalit Barcode Digit | • All processed BLMIS documents are assigned at least 1 barcode no.  Depending on the size of the box, a single physical box number may have multiple barcode labels. |
| CC | • CC field from processed electronically stored information |
| Check Amount | • Dollar amount as indicated on face of check |
| Check Number | • Check number as indicated on face of check |
| Check Payee | • Payee as indicated on face of check |
| Custodian | • Custodian field from processed electronically stored information |
| Date - Begin Date Range | • Beginning date for SETCSH17 report, StorQM account statements and reports<br>• Check date for checks<br>• Statement date for selected bank statements<br>• Beginning date range for selected scanned documents |
| Date - Check Clear Date | • Date on which check cleared according to applicable bank/financial institution records |
| Date - Check Date | • Check date as indicated on face of check |
| Date - Date Created | • Date created field from selected items obtained via subpoena or production to the Trustee, date created field from processed electronically stored information |
| Date - Date Received | • Received field from processed electronically stored information |
| Date - Date Sent | • Sent field from processed electronically stored information |
| Date - End Date Range | • Ending date for SETCSH17 report, StorQM account statements and reports<br>• Check date for checks<br>• Statement date for selected bank statements<br>• Ending date range for selected scanned documents |
| Date - Microfilm Ledger Date | • For microfilm only, indicates date of microfilmed ledger as coded |
| Date - Statement Date | • Statement date for selected bank statements |
| Deposit Slip | • Bates number of deposit slip associated with checks deposited into an account |



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

23

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

| E-DATA ROOM 1 FIELD NAME | DESCRIPTION |
|---|---|
| DocID | • Unique number assigned to each individual file/document in the database, the beginning Bates number of the file/document<br>• The Trustee's Bates numbers consist of an alpha prefix followed by 8-number sequential number<br>   ○ Documents obtained via subpoena are assigned 3- or 4-character prefixes assigned by the Trustee.  Trustee-assigned Bates numbers are assigned to all documents obtained via subpoena, including documents previously numbered by the subpoenaed third-party.[8]<br>• Where the subpoenaed third-party has provided previously numbered documents/pages, the "original Bates number" information is also provided |
| Document Category | • Search field, enables identification of all boxes/barcodes known to be associated with an individual, regardless of the location where the box/barcode was originally located, or where possible all boxes/barcodes containing a specific type of document (not comprehensive, generally based on the BLMIS box label or box contents description) |
| Documents Released | • Used to identify documents newly released to E Data Room 1 |
| Edit | • Field to be used by Outside Litigation Counsel users to tag documents requested to be produced; available in search results list display |
| EndDoc | • Ending Bates number of scanned page or range of pages<br>• The Trustee's Bates number consists of an alpha prefix followed by 8-number sequential number<br>   ○ Documents obtained via subpoena are assigned 3- or 4-character prefixes assigned by the Trustee.  Trustee-assigned Bates numbers are assigned to all documents obtained via subpoena, including documents previously numbered by the subpoenaed third-party.<br>   ○ Where the subpoenaed third-party has provided previously numbered documents/pages, the "original Bates number" information is also provided |
| Expert Reports | • Search field, enables identification of global and case-specific documents associated with the expert report(s) prepared regarding a specific case |
| Extracted Text OR Full Text | • System-generated field, enables users to search across the extracted text or full text fields |
| File Extension | • File extension |
| File Name | • Provides file names of individual files, may be a rendered name for processed BLMIS data |
| File Name - Original | • Original file name |
| File Size | • System-generated field that provides file size information |
| FileIcon | • Icon representing the document's Relativity native file type; available in search results list display |
| Folder Begin<br>Folder End | • Beginning and ending Bates numbers of unitized folder as captured during scanning.  Because of scanning and unitization anomalies, may not be the same as the beginning Bates number of the physical folder in which the relevant pages appear. |
| From | • From field from processed electronically stored information |
| **MASTER ACCOUNT NAME** | • Contains values from the following fields:  Account Name, Account Nickname |

---

[8] With one exception, once assigned, the Trustee's Bates numbers assigned to documents obtained from third parties have not been changed.  One set of documents obtained from third-party JPMorgan Chase that were assigned Trustee's Bates numbers beginning with alpha prefix JPMSBT were later re-assigned Trustee's Bates numbers beginning with alpha prefix JPMVAB.



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*,
Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

24

# BakerHostetler

**THE MADOFF TRUSTEE PROOF OF FRAUD AND INSOLVENCY DATA ROOM**
**(rev. 9/2018)**

| E-DATA ROOM 1 FIELD NAME | DESCRIPTION |
|---|---|
| **MASTER ACCOUNT NUMBER** | • Search field created to enable enhanced search functionality<br>• Contains values from the following fields: Account Number, Account Number-Account Referenced, Account Number-Customer File, Account Number-Master Account, Account Number-Microfilm Account Number, Account Number-Microfilm SubAccount as Coded, Account Number-Microfilm SubAccount, Account Number-Old |
| **MASTER CUSTODIAN_LOCATION** | • Search field created to enable enhanced search functionality<br>• Contains values from the following fields: Custodian-ESI, Scanned Custodian-Source/Location |
| **MASTER DOCUMENT DATE** | • Search field created to enable enhanced search functionality<br>• Contains values from the following fields: Date-Begin Date Range, Date-Check Clear Date, Date-Date Created, Date-Date Received, Date-Date Sent, Date-End Date Range, Date-Microfilm Ledger Date, Date-Statement Date |
| **MASTER FILE NAME** | • Search field created to enable enhanced search functionality<br>• Contains values from the following fields: File Name, File Name-Original |
| **MASTER TITLE_DESCRIPTION** | • Search field created to enable enhanced search functionality<br>• Contains values from the following fields: Bank Document Description, Microfilm Document Name, Title |
| Microfilm Document Name | • For microfilm only, the document name/title assigned as processing/coding time |
| Original Bates Begin | • For items produced to Trustee, the original beginning Bates number assigned by the producing party<br>   o As noted, all items produced to the Trustee have been assigned new ("master") Bates numbers by the Trustee |
| Original Bates End | • For items produced to Trustee, the original ending Bates number assigned by the producing party<br>   o As noted above, all items produced to the Trustee have been assigned new ("master") Bates numbers by the Trustee |
| Producing Party | • For items produced by third parties, identifies the party that produced the item |
| Relativity Image Count | • Provides page count information for a document, as indicated by the number of images associated with the database record |
| Relativity Issue Path | • The Relativity Issue folder assigned to each document, provided to enable easier search functionality |
| Relativity Native Time Zone | • System-generated numeric field, offsets the appearance of email headers dates and times as they appear in the image viewer; available as a search option and in search results list display |
| Relativity Native Type | • System-generated field, displays the native file type as it was loaded into the database |
| Scanned Custodian/Source Location | • Location from which the box and documents were collected<br>• Format for BLMIS scanned documents is LN, FN [of person associated with the documents] (BLMIS facility location from which the documents were collected)<br>   o EX: Madoff, Shana (Basement Area BA)<br>   o EX: Madoff, Shana (18 Area SM)<br>   o EX: Madoff, Shana (Queens Warehouse) |
| Source | • Provides abbreviated source information regarding publicly available documents posted in E-Data Room 1 |
| Source Description | • Provides source information regarding publicly available documents posted in E-Data Room 1 items |
| Subject | • Subject field from processed electronically stored information |
| Title | • Provides title or description information regarding selected items, generally based on file name |
| To | • To field from processed electronically stored information |



CONFIDENTIAL – Pursuant to the Litigation Protective Order, entered November 10, 2010, in *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) [ECF No. 4137]

25

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendants. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04995 (SMB) |
| Plaintiff, | |
| v. | |
| TRUST U/ART FOURTH O/W/O ISRAEL WILENITZ, EVELYN BEREZIN WILENITZ, individually, and as Trustee and Beneficiary of the Trust U/ART Fourth O/W/O Israel Wilenitz, and SARA SEIMS, as Trustee of the Trust U/ART Fourth O/W/O Israel Wilenitz, | |
| Defendants. | |

## TRUSTEE IRVING H. PICARD'S RESPONSES AND OBJECTIONS TO DEFENDANTS' DOCUMENT DEMANDS AND INTERROGATORIES

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C.

§§ 78aaa-*lll* ("SIPA"), and the estate of Bernard L. Madoff  by and through the Trustee's

counsel, Baker & Hostetler LLP, hereby provides the following Responses and Objections to the

First Set of Interrogatories ("Interrogatory" or "Interrogatories") served by Defendants Trust

U/ART Fourth O/W/O Israel Wilenitz, Evelyn Berezin Wilenitz, individually, and as Trustee and

Beneficiary of the Trust U/ART Fourth O/W/O Israel Wilenitz, and Sara Seims, as Trustee of the

Trust U/ART Fourth O/W/O Israel Wilenitz (collectively, the "Defendants") on March 8, 2016.

### OBJECTION TO DEFINITIONS

1.      The Trustee objects to the term "Identify" (with respect to persons) in

Definition 1(c) as inconsistent with Local Rule 26.3(c)(3) of the United States District Court for

the Southern District of New York and this Court, insofar as it purports to require the Trustee to

identify "the relationship between such person and (i) the Responding Party, (ii) Madoff, and/or

(iii) BLMIS." The Trustee will respond to Interrogatories containing "Identify" (with respect to

persons) as it is defined by Local Rule 26.3(c)(3).

2.      The Trustee objects to the term "Identify" (with respect to documents) in

Definition 1(d) as inconsistent with Local Rule 26.3(c)(4) of the United States District Court for

the Southern District of New York and this Court, insofar as it purports to require the Trustee to

identify the "Bates-Stamp Number if said document has previously been produced or filed in E-

Data Room." The Trustee will respond to Interrogatories containing "Identify" (with respect to

documents) as it is defined by Local Rule 26.3(c)(4).

2

300386910.3

TA037

3.      The Trustee objects to the term "Identify" in Definitions 7 and 8 as inconsistent with Local Rules 26.3(c)(3)-(4) of the United States District Court for the Southern District of New York and this Court.  The Trustee will respond to Interrogatories containing "Identify" as it is defined by Local Rules 26.3(c)(3)-(4).

## OBJECTION TO INSTRUCTIONS

1.      The Trustee will respond to these Document Demands and Interrogatories consistent with Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Rules 7026, 7033, and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), applicable Local Civil Rules of the United States District Court for the Southern District of New York and this Court (the "Local Rules"), and any applicable orders of the Court, including the Court's June 6, 2011 Litigation Protective Order [ECF No. 4137] and October 17, 2013 Order on the Third-Party Data Rooms [ECF No. 5475] (the "Third-Party Data Room Order").

## SOURCES OF INFORMATION RELEVANT TO THE CLAIMS OR DEFENSES IN THE TRUSTEE'S POSSESSION, CUSTODY OR CONTROL

1.      Hard-copy documents from the offices of BLMIS, offsite storage used by BLMIS, and other locations ("Hard-Copy BLMIS Documents").

2.      Electronic documents obtained from among approximately 20,000 pieces of media from the offices of BLMIS, offsite storage used by BLMIS, and other locations ("BLMIS Electronic Documents" or "BLMIS ESI").

3.      Documents produced by third parties to the Trustee during his investigation or adversary proceedings ("Third-Party Documents").

3

300386910.3

## I.   BLMIS DOCUMENTS

From the Hard-Copy BLMIS Documents and BLMIS ESI (collectively, "BLMIS

Documents"), the Trustee created a searchable electronic database containing approximately 4.7

million Hard-Copy BLMIS Documents and 25 million BLMIS Electronic Documents ("the

**BLMIS Searchable Database**").  Defendants do not have direct access to the BLMIS

Searchable Database because it contains documents relating to thousands of customers, many of

which are not relevant to this proceeding.  Instead, the Trustee provides all Defendants in these

proceedings with documents as described below:

**A.**      **Proof of BLMIS's Fraud and Insolvency:** The Trustee created E-Data Room 1

from documents in the BLMIS Searchable Database as well as some Third-Party Documents.  E-

Data Room 1 contains documents relevant to the issues of the fraud conducted at BLMIS and its

insolvency, and includes documents relating to BLMIS operations, regulatory disclosures, and

financial records.  *See* **Appendix A** for a description of documents available to Defendants in E-

Data Room 1.

**B.**      **BLMIS Core Account Documents**: The Trustee identified and segregated

BLMIS core account documents for all customers ("Core Account Documents").  These Core

Account Documents include account opening agreements, correspondence to and from BLMIS,

transfer and/or redemption requests, customer statements, Portfolio Management and/or Portfolio

Management Transaction Reports, which contain transaction history, and other documents that

were specific to each account, and/or the Trustee's calculation of net equity of a particular

BLMIS account.  Collectively, the Core Account Documents and the Bank Transfer Documents

represent the documents produced to the Defendants by the Trustee with his initial disclosures

4

(the "Initial Disclosure Documents"), on April 1, 2016. *See* **Appendix B** for a summary of the Core Account Documents produced. The Core Account Documents produced are for Defendants' accounts, 1CM806 and 1CM837, and the accounts affecting the principal balance calculation of Defendants' accounts, 1CM000, 1CM007, 1CM188, and 1CM807.

C.     **Proof of Transfers:**In addition to the Core Account Documents relevant to transfers described above, the Trustee identified and segregated BLMIS bank account records that reflect transfers to customers. Collectively, the Core Account Documents and the Bank Transfer Documents represent the documents produced to the Defendants by the Trustee with his initial disclosures (the "Initial Disclosure Documents"), on April 1, 2016. *See* **Appendix C** for a summary of the Bank Transfer Documents produced.

D.     **Other Documents:** The Trustee preserved the nearly 20,000 pieces of BLMIS ESI and millions of pages of BLMIS Hard-Copy Documents in his possession, but did not include all such documents in the BLMIS Searchable Database. The Trustee did not process or scan, for example, backup tapes believed to contain redundant data, some floppy disks or CDs, and broken media. In responding to discovery requests, the Trustee does not search for BLMIS documents outside of the BLMIS Searchable Database. The Trustee will produce additional BLMIS Documents (meaning other than those described in Paragraphs A and B) from the BLMIS Searchable Database provided that the parties agree to narrowly tailored case-specific search terms and parameters that target documents relevant to the claims or defenses and

5

300386910.3

TA040

proportional to the needs of the case in accordance with Federal Rule 26(b)(1). *See* **Appendix D**

for a description of sources of documents in the BLMIS Searchable Database.[1]

## II.    THE SQL DATABASES

Information contained in certain BLMIS Hard-Copy Documents, BLMIS ESI, and certain

Third-Party Documents was processed and input into multiple Microsoft Structured Query

Language ("SQL") Server tables and databases (the "SQL Databases").  To the extent feasible,

the underlying documents used to build the SQL Databases are contained in E-Data Room 1.

Some or all of the data in the SQL Databases is responsive to most of the Interrogatories.  SQL

Databases are used by the Trustee's experts and are available for production to any Defendants

upon request.  Use of the SQL Databases requires some technical expertise. *See* **Appendix E** for

the sources of data loaded into the SQL Databases.

### THE TRUSTEE'S OBJECTIONS

1.    **Materials Prepared Post-December 11, 2008:** The Trustee will not

produce or log Documents prepared by and/or received by him, his counsel, his professionals

and/or other agents from on or after December 11, 2008 that are not relevant and/or are protected

by the attorney work product doctrine, the attorney-client privilege, and/or any other applicable

privileges or protections ("Materials Prepared Post-December 11, 2008").

2.    **Redundant, Cumulative, and Marginally Relevant Documents:** The

BLMIS Searchable Database may contain documents that are responsive to the Interrogatories

---

[1] Certain defendants with proper credentials have direct access to millions of Third-Party Documents in the Trustee's possession.  These documents are governed by the Third-Party Data Room Order. Per that Order, the Third-Party Data Rooms are not available to Defendants in this proceeding.

300386910.3

but which are redundant, cumulative, or marginally relevant (for example, the Defendants'

names or account numbers appear on a list of customer names or account numbers and there is

no other unique information).  The Trustee objects to the production of these Documents to the

extent that such production is not proportionate to the needs of the case under Federal Rule

26(b)(1) ("Redundant, Cumulative, and Marginally Relevant Documents").

        3.      **Information Outside the Scope of Relevance:** The Trustee objects to the

disclosure of any information or identification of any Documents outside the scope of relevance

articulated in Federal Rule 26 and Section 4(G) of the Litigation Procedures Order ("Information

Outside the Scope of Relevance").

## RESPONSES TO DOCUMENT DEMANDS AND INTERROGATORIES

### REQUEST NO. 1:

        List the name and address of every former BLMIS employee with whom you spoke about

the meaning of entries on the customer statements and state the substance of what you

questioned each person about and what that person told you. Produce all documents you

reviewed with each such employee and all documents indicating what each person said.

### RESPONSE:

        The Trustee objects to this Interrogatory and Document Request because it calls for

Materials Prepared Post-December 11, 2008.  The Trustee further objects that it seeks

Information Outside the Scope of Relevance because it calls for documents that relate to

customers other than the *Wilenitz* Defendants, and such documents are not relevant to the claims

or defenses or proportional to the needs of the *Wilenitz* case.  For these reasons, the Trustee will

<center>7</center>

300386910.3

<center>TA042</center>

not respond to this Interrogatory and Document Request.

## REQUEST NO. 2:

With respect to Madoff's and BLMIS' books and records, list every single factual error you found in those books and records including, without limitation, inconsistencies between the deposits and withdrawals shown on the customer statements and the cancelled checks and copies of cancelled checks in the Trustee's possession.

## RESPONSE:

The Trustee objects to this Interrogatory on the grounds that BLMIS' "books and records" and "errors" is vague because the Interrogatory does not specify which books and records and what kind of "errors." The Trustee further objects that it seeks Information Outside the Scope of Relevance because it calls for documents that relate to customers other than the *Wilenitz* Defendants, and such documents are not relevant to the claims or defenses or proportional to the needs of the *Wilenitz* case. Notwithstanding that information about other BLMIS customers is not relevant to the *Wilenitz* case, the Trustee responds that customer statements and canceled checks are in E-Data Room 1. The Trustee states pursuant to Federal Rule 33(d)(1) that Defendants may determine the response to this request by comparing the customer statements with the checks and that the burden of ascertaining the information is substantially the same for either party.

With respect to the cash activity and principal transactions that affect the principal balance calculation (or net equity) in the *Wilenitz* accounts, the Trustee has not identified any errors. The documents that the Trustee produces that reflect these transactions are in the Initial Disclosure Documents. Further, nothing in the Initial Disclosure Documents indicates that the

8

*Wilenitz* Defendants ever brought any errors to the attention of BLMIS; nor have they pointed

out any errors to the Trustee or set forth a specific, good-faith statement that they dispute any

particular transaction. To the contrary, the *Wilenitz* Defendants have admitted in their claims

submission to the Trustee that the BLMIS records match their personal bank records. *See*

Appendix F, Defendants' June 26, 2009 claims submission.

## REQUEST NO. 3:

List every single factual error asserted by any Madoff or BLMIS customer in their

statements and produce all documents relating to such error.

## RESPONSE:

Trustee's Response to this is the same as Trustee's Response to No. 2.

## REQUEST NO. 4:

List every single "PW" entry on a customer statement where there is no documentary

evidence that the customer requested to receive profit withdrawals and produce all documents

relating thereto.

## RESPONSE:

The Trustee objects to this Interrogatory on the grounds it seeks Information Outside the

Scope of Relevance because it calls for information that relates to customers other than the

*Wilenitz* Defendants, and such information is not relevant to the claims or defenses or

proportional to the needs of the *Wilenitz* case. There are no PW entries on the customer

statements for the *Wilenitz* accounts. There is one or more PW transactions in accounts affecting

the net equity of the *Wilenitz* accounts and such customer statements were included in the Initial

9

300386910.3

Disclosure Production.  The Trustee states pursuant to Federal Rule 33(d)(1) that Defendants

may determine the response to this request by reviewing the Initial Disclosure Production and

that the burden of ascertaining the information is substantially the same for either

party.  Notwithstanding that information about other BLMIS customers is not relevant to the

*Wilenitz* case, the Trustee will produce a list of PW transactions that indicates whether the

transaction reconciles to BLMIS bank records, customer files, or documents produced to the

Trustee.  This list was made available in connection with the Trustee's Motion Affirming

Treatment of Profit Withdrawal Transactions, ECF Nos. 10660-10664, attached as Exhibit 7 to

the Declaration of Lisa M. Collura, ECF No. 10664.

**REQUEST NO. 5:**

If you contend that Madoff's and BLMIS' customer statements were not "riddled with

fraud" with respect to the deposits and withdrawals, produce all reports and documents on which

you base that conclusion.

**RESPONSE**:

The Trustee objects to this Interrogatory because it violates Local Rule 33.3(c), which

prohibits interrogatories that "seek the claims and contentions of the opposing party" until after

the conclusion of other discovery unless the Court has ordered otherwise.  This Interrogatory

seeks information about the Trustee's contentions.  Discovery is ongoing in *Wilenitz.*

Defendants have not sought permission from the Court to ask contention interrogatories.

While the foregoing protects the Trustee from having to respond at all to this

Interrogatory, the Trustee nonetheless states that he further objects to this Interrogatory and

10

Document Request to the extent that it calls for "reports and documents" that are Materials
Prepared Post-December 11, 2008. The Trustee will not produce such materials.

The Trustee also objects to the unexplained use of "riddled with fraud" with respect to
the customer statements, and has no way of knowing the source of that quote. As the Trustee
explained during the meet and confer about this Interrogatory, it is the Trustee's position that the
cash activity reflected in the BLMIS customer statements is accurate and not fraudulent.

The Trustee also objects to the Interrogatory and Document Request because it seeks
Information Outside the Scope of Relevance. Specifically, this Interrogatory and Document
Request seeks information that is not relevant to the claims or defenses or proportional to the
needs of the *Wilenitz* case given that it calls for information and documents relating to thousands
of other BLMIS customers. The Trustee further responds that, with respect to the cash activity
and principal transactions that affect the principal balance calculation (or net equity) in the
*Wilenitz* accounts, the Trustee has not identified any fraud. Further, the *Wilenitz* Defendants
have not pointed out any fraud in the *Wilenitz* customer statements to the Trustee; nor they have
pointed out any fraud to the Trustee or set forth a specific, good-faith statement that they dispute
any particular transaction. To the contrary, the *Wilenitz* Defendants have admitted in their claims
submission to the Trustee that the BLMIS records match their personal bank records. *See*
Appendix G, Defendants' claims submission.

Finally, the Trustee objects to the extent this Interrogatory prematurely seeks to have the
Trustee disclose expert materials well in advance of the deadline for disclosure of this
information as provided in the Court-approved case management order entered in this adversary
proceeding. The Trustee will supplement his productions with additional documents considered

11

by his experts, if any, following submission of their expert reports during expert discovery. The

Trustee further notes that to the extent fact witness relied on by the Trustee may also qualify as

expert witnesses pursuant to Federal Rule 26(a)(2)(C), the Trustee will identify such witnesses in

expert discovery.

**REQUEST NO. 6:**

As of the date you respond to these interrogatories, list every customer whose allowed

claim has not been paid in full and state the amount of that customer's allowed claim and the

amount that customer has received to date. Produce all documents from which you derived your

answer. If you take the position that you cannot reveal the names of the account holders, list the

accounts by account number and indicate whether the account is (a) an individual; (b) a hedge

fund; (c) a family investment fund; (d) an IRA account; or some other category.

**RESPONSE**:

The Trustee objects to this Interrogatory and Document Request because it seeks

information that is not relevant to the claims or defenses or proportional to the needs of the

*Wilenitz* case given that it calls for information relating to claimants other than *Wilenitz.* The

Trustee responds specifically as to the *Wilenitz* Defendants, and states their claims have not been

allowed.

**REQUEST NO. 7:**

With respect to your most recent distribution to allowed claimants, how much did you

distribute in total and how much did you distribute to each allowed claimant. Produce all

documents evidencing the distribution schedule including a list of the amount paid to each

claimant, showing the name of each claimant. If you take the position that you cannot reveal the

12

300386910.3

TA047

names of the account holders, list the accounts by account number and indicate whether the

account is (a) an individual; (b) a hedge fund; (c) a family investment fund; (d) an IRA account;

or some other category.

**RESPONSE**:

      The Trustee objects to this Interrogatory and Document Request seeks information that is

not relevant to the claims or defenses or proportional to the needs of the *Wilenitz* case given that

it calls for information that (i) is not relevant to the issue of whether the Trustee may avoid and

recover the avoidable transfers from the *Wilenitz* Defendants and (ii) relates to hundreds of

claimants other than the *Wilenitz* Defendants. The Trustee responds specifically as to the

*Wilenitz* Defendants, and states their claims have not been allowed and, accordingly, no interim

distribution was made to them. The Trustee further refers the Defendants to information

regarding the claims process and interim distributions, located on the Trustee's website at

www.madofftrustee.com.

**REQUEST (UNNUMBERED)**

      List the name of every customer who sold an allowed claim to a claims purchaser, the

amount paid to the customer by the claims purchaser, the allowed amount of the claim, and the

date of the purchase. Produce all documents from which you derived your answer.

**RESPONSE**:

      The Trustee's Response to this is the same as Trustee's Response to No. 7.

**REQUEST NO. 8:**

      List every claims purchaser to whom you have made payment and state the amount, to

date, that you have paid each claims purchaser.

13

300386910.3

**RESPONSE:**

The Trustee objects to this Interrogatory and Document Request because it seeks information that is not relevant to the claims or defenses or proportional to the needs of the *Wilenitz case*. The information called for by this Interrogatory has no bearing on whether the Trustee may avoid and recover the avoidable transfers in the *Wilenitz* case. For this reason, the Trustee will not respond to this Interrogatory and Document Request.

**REQUEST NO. 9:**

Provide a list of every allowed claim with the amount of the allowed claim. If you take the position that you cannot reveal the names of the account holders, list the accounts by account number and indicate whether the account is (a) an individual; (b) a hedge fund; (c) a family investment fund; (d) an IRA account; or some other category.

**RESPONSE:**

The Trustee's Response to this is the same as Trustee's Response to No. 7.

**REQUEST NO. 10:**

State the precise fee arrangement you have had with Baker & Hostetler LLP from inception of your appointment as Trustee. Produce the document which sets forth that compensation arrangement.

**RESPONSE:**

The Trustee states that, in light of the March 18, 2016 Order Implementing Court's March 17, 2016 Bench Ruling Granting Protective Order, the Trustee is not required to respond to Interrogatory No. 10. *See* Adv. Pro. No. 08-01789, Docket No. 12912.

14

**REQUEST NO. 11:**

State the precise amount you have received in compensation since joining Baker &
Hostetler LLP in December 2008 through the date you respond to these interrogatories. Produce
all documents from which you derived your answers.

**RESPONSE:**

The Trustee states that, in light of the March 18, 2016 Order Implementing Court's
March 17, 2016 Bench Ruling Granting Protective Order, the Trustee is not required to respond
to Interrogatory No. 11. *See* Adv. Pro. No. 08-01789, Docket No. 12912.

**REQUEST NO. 12:**

In the event that any other attorney at Baker & Hostetler LLP receives a percentage of the
gross fee revenues relating to this proceeding other than you, state the name or names of such
persons and the precise fee arrangement each of them has with Baker & Hostetler LLP Produce
all documents from which you derived your answers.

**RESPONSE:**

The Trustee states that, in light of the March 18, 2016 Order Implementing Court's
March 17, 2016 Bench Ruling Granting Protective Order, the Trustee is not required to respond
to Interrogatory No. 12. *See* Adv. Pro. No. 08-01789, Docket No. 12912.

**REQUEST NO. 13:**

List the name, address and phone number of every BLMIS employee who worked in the
market-making business and in the proprietary trading business as of January 1, 2008 and
explain his/her function and compensation.

15

300386910.3

**RESPONSE:**

The Trustee objects to Interrogatory No. 13 to the extent it seeks Information Outside the

Scope of Relevance. The Trustee nonetheless states that, approximately 4 million documents that

relate to the operations of BLMIS are in E-Data Room. The purpose of E-Data Room 1, among

others, was so that the Trustee could produce documents relating to the operations of BLMIS on

a global basis. It is not proportional to the needs of the case in *Wilenitz* to respond to this

Interrogatory and require the Trustee to undertake any additional burden when the Defendants

have not requested access to the source of more than 4 million documents which includes lists of

BLMIS employees. The Trustee directs the Defendants to MADTNN00081805 located in E-

Data Room 1, which lists the persons employed by BLMIS, to the best of the Trustee's

knowledge, for a time period including January 1, 2008. The Trustee also directs the Defendants

to Bates No. FIDTAA0000166-FIDTAA0000325, located in E-Data Room 1, that contains

additional information responsive to this request. In addition, attached as Exhibit A is a list of

readily available employee addresses and phone numbers we were able to identify after a

reasonable search. We make no representations as to the accuracy of any the contents of Exhibit

A.

**REQUEST NO. 14:**

Explain the basis on which you determined that the Defendants have no net equity and

produce the front and back of each deposit into and withdrawal from the Account and from any

account which transferred funds into the Defendants' account.

**RESPONSE:**

In a meet and confer regarding these Interrogatories and Requests, defense counsel

clarified that this Interrogatory should state, "produce the front and back of each check deposited

16

into and withdrawn from the Account and from any account which transferred funds into the
Defendants' account."

The Trustee responds that the Trustee's expert calculated the principal balance by
reviewing the Initial Disclosure Documents, which were produced to Defendants on April 1,
2016.

It is not proportional to the Wilenitz case for the Trustee to be required to produce the
backs and fronts of every check deposited into and withdrawn from the Defendants' accounts
and from any account which transferred funds into the Defendants' account when the Defendants
have not set forth a specific, good-faith reason that the calculation is incorrect.

Finally, the Trustee objects to the extent this Interrogatory prematurely seeks to have the
Trustee disclose expert materials well in advance of the deadline for disclosure of this
information as provided in the Court-approved case management order entered in this adversary
proceeding.  The Trustee will supplement his productions with additional documents considered
by his experts, if any, following submission of their expert reports during expert discovery.  The
Trustee further notes that to the extent fact witness relied on by the Trustee may also qualify as
expert witnesses pursuant to Federal Rule 26(a)(2)(C), the Trustee will identify such witnesses in
expert discovery.

## REQUEST NO. 15:

Explain how you intend to establish that Madoff was insolvent in each year from 1960 –
2000 and produce all documents on which you will rely to establish insolvency for each of those
years.

17

TA052

**RESPONSE:**

The Trustee responds that he intends to put forth an expert on the insolvency of BLMIS. The documents upon which the expert relies to establish insolvency are in E-Data Room 1.

The Trustee objects to the extent this Interrogatory prematurely seeks to have the Trustee disclose expert materials well in advance of the deadline for disclosure of this information as provided in the Court-approved case management order entered in this adversary proceeding. The Trustee will supplement his productions with additional documents considered by his experts, if any, following submission of their expert reports during expert discovery. The Trustee further notes that to the extent fact witness relied on by the Trustee may also qualify as expert witnesses pursuant to Federal Rule 26(a)(2)(C), the Trustee will identify such witnesses in expert discovery.

**REQUEST NO. 16:**

Provide the gross trading volume by both number of shares traded and total dollar volume for each year of Madoff's operation, broken down by (a) investment advisory business (b) proprietary trading business; and (c) market making business. Produce the documents on which you base your responses.

**RESPONSE:**

The Trustee objects to this Interrogatory because it violates Local Rule 33.3(c), which prohibits interrogatories that "seek the claims and contentions of the opposing party" until after the conclusion of other discovery unless the Court has ordered otherwise. This Interrogatory seeks information about the Trustee's contentions. Discovery is ongoing in Wilenitz. Defendants have not sought permission from the Court to ask contention interrogatories.

18

300386910.3

TA053

While the foregoing protects the Trustee from having to respond at all to this

Interrogatory, the Trustee nonetheless states that there were no securities purchased by the

investment advisory business unit, of which the *Wilenitz* Defendants were customers. With

respect to the proprietary trading business and the market making business units, records from

BLMIS and third parties, including the Depository and Trust Clearing Corporation ("DTCC"),

which reflect trading activity by those business units of BLMIS, are in E-Data Room 1. The

purpose of E-Data Room 1, among others, was to provide Defendants, including the *Wilenitz*

Defendants, the documents upon which the Trustee relies to establish that no trades were being

made by the investment advisory business unit and that no trades were being made by the market

making and proprietary trading business unit on behalf of customers of the investment advisory

business unit. It is not proportional to the needs of the case in *Wilenitz* to respond to this

Interrogatory and Document Request and require the Trustee to undertake any additional burden

when the Defendants have not requested access to the source of more than approximately 4

million responsive documents or articulated a specific reason as to whether and why the

Defendants contend that BLMIS was not a fraudulent enterprise scheme or insolvent during the

relevant time period.

Finally, the Trustee objects to the extent this Interrogatory prematurely seeks to have the

Trustee disclose expert materials well in advance of the deadline for disclosure of this

information as provided in the Court-approved case management order entered in this adversary

proceeding. The Trustee intends to establish the insolvency of BLMIS through his experts. The

Trustee will supplement his productions with additional documents considered by his experts, if

any, following submission of their expert reports during expert discovery. The Trustee further

notes that to the extent fact witness relied on by the Trustee may also qualify as expert witnesses

19

300386910.3

TA054

pursuant to Federal Rule 26(a)(2)(C), the Trustee will identify such witnesses in expert discovery.

**REQUEST NO. 17:**

Provide the number of employees who worked in each of the trading areas set forth in interrogatory # 17 for each year of Madoff's operations and produce the documents on which you base your responses.

**RESPONSE:**

The Trustee's Response to this is the same as Trustee's Response to No. 13.

**REQUEST NO. 18:**

For each security listed on the Defendants' account statements for each year from1982 on, set forth the number of shares of the listed companies' stock that BLMIS held at that time; and, if the stock was specified as belonging to a particular customer, specify the customer and the number of shares shown on BLMIS' records as being owned by that customer. Produce the documents on which you base your responses.

**RESPONSE:**

The Trustee states pursuant to Federal Rule 33(d)(1) that Defendants may determine the response to this request for Defendants by comparing the DTCC records in E-Data Room 1 with the Initial Disclosure Documents and that the burden of ascertaining the information is substantially the same for either party.

20

300386910.3

**AS TO OBJECTIONS:**

Dated: April 8, 2016
      New York, New York

**BAKER & HOSTETLER LLP**

By:   */s/ David J. Sheehan*

     David J. Sheehan
     Email: dsheehan@bakerlaw.com
     Keith R. Murphy
     Email: kmurphy@bakerlaw.com
     Edward J. Jacobs
     Email: ejacobs@bakerlaw.com
     **BAKER & HOSTETLER LLP**
     45 Rockefeller Plaza
     New York, New York 10111
     Telephone: 212.589.4200
     Fax: 212.589.4201

     *Attorneys for Irving H. Picard, Trustee for*
     *the Substantively Consolidated SIPA*
     *Liquidation of Bernard L. Madoff*
     *Investment Securities LLC and the Estate*
     *of Bernard L. Madoff*

21

300386910.3

# VERIFICATION

STATE OF NEW YORK    )
                     )
COUNTY OF NEW YORK   )

I, Irving H. Picard, as the Court-appointed Trustee of the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, hereby state that the foregoing Interrogatory Responses and Objections ("Responses") have been assembled and prepared by my counsel. I sign for purposes of being bound by the foregoing Responses, but further state that as the Trustee, I have no personal knowledge of the facts and information herein. The Responses set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, and/or thus far discovered in the course of the preparation of these Responses. Consequently, I reserve the right to make changes to the Responses if at any time it appears that an error or omission has been made therein or if additional or more accurate information becomes available.

Dated: **April 8** , 2016

_____
Irving H. Picard

22

300386910.3

TA057

# EXHIBIT A

Adv. Pro. No. 10-04504, *Picard v. Dusek* - Supplemental Information in Response to Interrogatory No. 4

| Last Name | First Name | Street Address | City | State | Zip Code | Phone Number 1 | Phone Number 2 |
|---|---|---|---|---|---|---|---|
| Abend | Reed | 330 East 70th St - Apt 1G | New York | NY | 10021 | 212-517-3162 | (W) 203-838-4600 (H) 203-454-2411 |
| Anderson | Semone | 3115 Edson Ave | Bronx | NY | 10469 | 718 320 1450 | (c) 347 203-9987   (h) 718 320-145C |
| Arroyo | Richard | 113 Adams Ave | Staten Island | NY | 10306 | 718 987-0964 | |
| Astuto | Toniann | 65 Stuyvesant Ave | Staten Island | NY | 10312 | 718-984-6978 | 212 221 5858  x 3146 |
| Barutcuoglu | Zafer | 328 West 11th Street Apt 3H | New York | NY | 10014 | | |
| Batalion | Sally | 787 East 5th St | Brooklyn | NY | 11218 | 718-871-2263 | 212 980-7500 |
| Bergstrom | Ase | 335 112 Plymouth Road | West Palm Beac | FL | 33405 | | |
| Berkowitz | Peter | 18 Tall Timber Road | Mount Kisco | NY | 10549 | | |
| Birch | Larry | 6 Narrowbrook Court | Plainsboro | NJ | 08536 | | |
| Bongiorno | Annette | 78 Stone Hill Dr East | North Hills | NY | 11030 | 516-365-0357 | 718 845-9163 |
| Bonventre | Daniel | 505 East 79th St - Apt 17G | New York | NY | 10021 | 212-734-2343 | 212 734-3098 |
| Bonventre | Daniel M. | 505 East 79th St - Apt 17G | New York | NY | 10021 | 212-734-2343 | 212 734-3098 |
| Bonventre | John | 5 24 East 79th Street Apt 2H | New York | NY | 10075 | | |
| Brown | Clive | 6 Gould Ave | Dobbs Ferry | NY | 10522 | 914-693-8447 | |
| Bruttomesso | Garrett | 229 Chrystie Street Apt 516 | New York | NY | 10002 | | |
| Buchmueller | Elizabeth | 525 East 13th Street Apt 4F | New York | NY | 10009 | | |
| Burger-Joel | Amy | 50 Sutton Pl South - Apt 11J | New York | NY | 10022 | 212-308-2050 | |
| Cacas Jr. | Eduardo | 20 Linda Lane | Pearl River | NY | 10965 | | |
| Camvycis | Thomas | 85 East End Ave - Apt 3M | New York | NY | 10028 | 212-794-4692 | |
| Cardile | Robert | 1041 Rector Road | Bridgewater | NJ | 08807 | 908-725-9442 | 718-738-1260 |
| Carlson | David | 37 London Terr | New Rochelle | NY | 10804 | 914-632-1888 | (w) 914 721-2726 |
| Carrero | David | 360 West 43rd Street Apt S10F | New York | NY | 10036 | | |
| Carroll | Richard | 3682 Southwest Bimini Cl North | Palm City | FL | 34990 | 561-288-0407 | |
| Chen | Terrence | 1793 Riverside Dr 2H | New York | NY | 10034 | | |
| Clarke | Prunella | 1372 New York Ave - Apt 2G | Brooklyn | NY | 11203 | 718-826-3689 | |
| Cohn | Leon | 1616 59th St | Brooklyn | NY | 11204 | 718-234-2919 | 718-234-2919 |
| Colin | Stephani | 208 Harris Rd DA-1 | Bedford Hills | NY | 10507 | 914-241-3639 | 914 232-5458,914 841-9462 |
| Collado | Ralph | 46-07 204th St | Bayside | NY | 11361 | 718-423-1684 | 718-423-1684 |
| Collins | Richard | 100 Elgar Pl - Apt 21L | Bronx | NY | 10475 | 718-320-4201 | 718-588-8303 |
| Concepcion | Darlene | 53 All Angels Hill Rd | Wappingers Fall | NY | 12590 | 845-298-1570 | |
| Connelly | Andrew | 43 West Summit Ave | Midland Park | NJ | 07432 | 201-444-9326 | |
| Copersino | Albert | 22 Manitou Road | Westport | CT | 06880 | | |
| Cotellessa-Pitz | Enrica | 91-11 107th Ave | Ozone Park | NY | 11417 | 718-738-8636 | |
| Coughlin | Edward | 8 Rogers Ct | Midland Park | NJ | 07432 | 201-445-9530 | 201 445-9530 |
| Crupi | JoAnn | 436 Grove St | Westfield | NJ | 07090 | 908-317-9080 | 908 236-9001 |
| De Lisi | Frederick | 120 Carteret St | Staten Island | NY | 10307 | 718-967-4129 | WK:1-800-774-4333, Ext.8317 HM:718-967-4129 |
| Delgado | Iris | 84-38 90th Street | Woodhaven | NY | 11421 | | |
| Di Maggio | Juliette | 310 Maddock Street | West Palm Beac | FL | 33405 | | |
| DiPascali | Frank | 1400 Mountaintop Road | Bridgewater | NJ | 08807 | | |
| Dirilo | Praxides | 322 East 57th St | New York | NY | 10022 | 212 755-2671 | |
| Distenfeld | Eric | 638 Sunderland Road | Teaneck | NY | 07666 | | |
| Dolinsky | Craig | 2 Azalea Ct | East Brunswick | NJ | 08816 | 732-390-1383 | 732-251-4300 |
| Duffy | Daniel | 213 Embree Ct | Westfield | NJ | 10552 | 908-654-0334 | 908-654-0334 |
| Eckhaus | Daniel | 248 West 21st Street Apt 1c | New York | NY | 10011 | | |
| Eisen | Barry | 108 East 96th St Apt - 12G | New York | NY | 10028 | 212-987-2195 | |
| Esbenshade | Zi-Yah | 107 East 88th St - Apt 5D | New York | NY | 10028 | 212-534 3455 | 717 392 8734 - 646 279-6231 |
| Falcone | Robert | 52 Egbert Ave | Staten Island | NY | 10310 | 718-720-5731 | 718 720-5125 |

Adv. Pro. No. 10-04504 Picard v Dusek, Supplemental Response to Interrogatory 4 Final          Page 1 of 4                                                                                     CONFIDENTIAL

Adv. Pro. No. 10-04504, *Picard v. Dusek* - Supplemental Information in Response to Interrogatory No. 4

| | | | | | | |
|---|---|---|---|---|---|---|
| Ferraro | Jeffrey | 50-31 211 St | Bayside | NY | 11364 718-224-1016 | 718 224-1016 |
| Ferraro | Marc | 175 Rockaway Ave | Garden City | NY | 11530 516-294-0844 | |
| Fleischmann | Barry | 268 Kell Ave | Staten Island | NY | 10314 718-494-0449 | |
| Fleming | Junior | 4155 Baychester Avenue | Bronx | NY | 10466 | |
| Flores | Enrique | 152 Graham Ave | New York | NY | 11206 718-387-4925 | |
| Fong | Kevin | 562 Blueberry Pl | Franklin Lakes | NJ | 07417 201-848-7670 | |
| Friedman | Steven | 34 Old Mill Road | West Harrison | NY | 10604 | |
| Fuller | Tracey | 567 Nostrand Avenue | Brooklyn | NY | 11216 | |
| Garcia | Vincent | 1 Warwick Ct | River Edge | NJ | 07661 201-488-9104 | 201 488-9104 |
| Garcia | Patricio | 15 East 35th Street | Bayonne | NJ | 07002 | |
| Gavlik | Margaret | 100 Bradford Ave | Rye | NY | 10580 914 698 6592 | (C) 914 420-8545/(h) 914 835-4948 |
| Glassman | Brett | 245 East 63rd St - Apt 827 | New York | NY | 10021 212 223 0786 | 212 223 0786 |
| Goldman | Mark | 223 East 85th St - Apt 30 | New York | NY | 10028 212-472-5375 | |
| Gross | Jason | 1641 West 2nd St - 2nd Fl | Brooklyn | NY | 10022 516-694-1866 | |
| Gutzwiller | Mark | 14 Franklin Avenue | Westport | CT | 06880 | |
| Hernrajani | Haresh | 15 Tiffany Court | Old Bridge | NJ | 08857 | |
| Hooey | Rolland | 80 Calvin A venue | Syosset | NY | 11791 | |
| Horwitz | Daniel | 27 Stoner Ave | Great Neck | NY | 11021 516-466-5971 | 516 466 5971 |
| Hutchinson | Kenneth | 355 Fifth St - 2nd Fl | Brooklyn | NY | 11215 718-832-7379 | |
| Imbruce | Gregory | 93 Rockledge Drive | Stamford | CT | 06903 | |
| Jackson | Winifier | 1220 Croes Ave - Apt 5D | Bronx | NY | 10472 718-589-3027 | 718 516-6414 |
| Jacobson | Jeffrey | 30 West 61st St - Apt 18B | New York | NY | 10023 212-582-0064 | |
| Jimenez | Anthony | 82-15 35th Ave - Apt 3F | Jackson Heights | NY | 11372 718 457-0158 | |
| Jones | Belle | 80-35 Springfield Blvd - Apt 3G | Queens Village | NY | 11427 718-468-3439 | |
| Jones | Richard | 801 Allwyn St | Baldwin Harbor | NY | 11510 516-867-2926 | 516 532 7353 |
| Jorgensen | George | 9 Pippin Ln | Wappingers Fall | NY | 12590 845-208-1105 | 845 298-1105 |
| Kanning | Robert | 37 Sutton Road | Ho Ho Kus | NJ | 07423 | |
| Kelly | John | 31 Washington Mews | Portchester | NY | 10573 914 934-1388 | |
| Khan | Dorothy | 166-10 Foch Blvd | Jamacia | NY | 11434 718-527-8207 | 718 978-0442 |
| King | Seon | 537 East 85th St | Brooklyn | NY | 11236 718-251-1096 | |
| Konigsberg | Stephen | 55 West 14th Street Apt 7N | New York | NY | 10011 | |
| Koster | Deborah | 860 U.N. Plaza - Apt 15B | New York | NY | 10017 212-750-5768 | 212 355-7159 |
| Kugel | David | 69 Charney Court | Manhasset | NY | 11030 516-627-0411 | 516 627-0411 |
| Kugel | Craig | 21 Soundview Lane | Sands Point | NY | 11050 | |
| Lamb | Cheryl | 4063C Palm Bay Cl | West Palm Beac | FL | 33406 561-478-4806 | |
| Lanier | Adam | 522 West Webster Avenue | Roselle Park | NJ | 07204 | |
| Larsen | Jean | 349 East 49th Street Apt  2P | New York | NY | 10017 | |
| Lenaghan | Jonathan | 4705 Center Boulevard Apt 2513 | Long Island City | NY | 11109 | |
| Lipkin | Eric | 315 East Ridgewood Ave - Apt 1F | Ridgewood | NJ | 07450 201-689-2260 | 561-495-8424 |
| Lipkin | Irwin | 15408 Strathearn Drive | Delray Beach | FL | 33446 | |
| Lorenzo | Andrew | 1303 East 52nd St | Brooklyn | NY | 11234 718 444-2190 | |
| Madoff | Shana | 420 East 54th St - Apt 33 A | New York | NY | 10022 212-317-1448 | 212 230 2424,212 246 3898 (Maria 646 752 4191) |
| Madoff | Andrew | 400 East 84th Street Apt 36 B | New York | NY | 10028 | |
| Madoff | Peter | 34 Pheasant Run | Old Westbury | NY | 11568 | |
| Madoff | Marion | 34 Pheasant Run | Old Westbury | NY | 11568 | |
| Madoff | Mark | 158 Mercer Street | New York | NY | 10012 | |
| Magnus | Dumarsais | 217-16 Hempstead Ave | Queens Village | NY | 11429 718-776-2735 | |
| Marasa | Gaetano | 67 Marianne St | Staten Island | NY | 10302 718-948-4178 | 718 984-7782 |

Adv. Pro. No. 10-04504 Picard v Dusek, Supplemental Response to Interrogatory 4 Final          Page 2 of 4                                     **CONFIDENTIAL**

Adv. Pro. No. 10-04504, *Picard v. Dusek* - Supplemental Information in Response to Interrogatory No. 4

| Last | First | Address | City | State | Zip | Phone | Other |
|---|---|---|---|---|---|---|---|
| Mastrangelo | Ralph | 277 Leverett Ave | Staten Island | NY | 10308 | 718-356-2356 | (H) 718 356-2356/(J) 212 306-4738 |
| Mayer | Leonard | 45 Sutton Pl South - Apt 3F | New York | NY | 10022 | 212-688-8429 | 212-688-8429 |
| McDonald | Christopher | 8 Second Avenue | Ossining | NY | 10562 | | |
| McGuire | Kevin | 29 Wyckoff Street | Brooklyn | NY | 11201 | | |
| McMahon | Robert | 34 Prall Road | Hillsborough | NJ | 08844 | | |
| Mehta | Neilay | 225 Columbus Avenue Apt 4E | New York | NY | 10023 | | |
| Moy | Peter | 163 Hurlbert St | Staten Island | NY | 10305 | 718-980-4293 | 718-980-4293 |
| Mui | Alethea | 175-19 68th Ave | Fresh Meadows | NY | 11365 | 718-460-2189 | 212 403-1516/(b) 917 878-879C |
| Murray | Damien | 1226 Intervale Ave at 169th St | Bronx | NY | 10459 | 718-617-1375 | |
| Nabile | Walid | 121 Russell St | Brooklyn | NY | 10308 | 718 227-0914 | 718 227-0914 |
| Nano | Glenn | 17 S East 2nd Street Apt 4D | New York | NY | 10009 | | |
| Nasi | William | 153-34 59 Ave | Flushing | NY | 11355 | 718-461-2146 | |
| Noer | Martin | 39-52 44th Street | Sunnyside | NY | 11104 | | |
| Nunez | Rafael | 35-63 88th St - Apt 2L | Jackson Heights | NY | 11372 | 718-898-8533 | 718 205-2476 |
| O'Hara | Jerome | 94 Scarcliffe Dr | Malverne | NY | 11565 | 516-887-0705 | 516 227-0700 |
| Oritz | Magdalena | 37 Irving St | Jersey City | NJ | 07307 | 201-963-6267 | 201 536-0577 |
| O'Toole | Elizabeth | 347 Court Street | Brooklyn | NY | 11231 | | |
| Padala | Matthew | 207 East 74th Street Apt 5A | New York | NY | 10021 | | |
| Pagan | Rafael | 2323 Cambreleng Avenue | New York | NY | 10458 | | |
| Pechatnikov | Yefim | 46 Oceanside A venue | Staten Island | NY | 10305 | | |
| Pennachio | Daniel | 19 Eleventh St | Carle Place | NY | 11514 | 516-333-7972 | Parents Phone (516-775-8627) |
| Perez | George | 5 Horizon Rd - Apt 2804 | Fort Lee | NJ | 07024 | 201-224-9329 | 718 665-7209 |
| Perez | Raul | 155 W 68th St - Apt 1617 | New York | NY | 10023 | 212 769-2517 | 212-769-2517 |
| Persaud | Sharda | 93-31 205th Street | Hollis | NY | 11423 | | |
| Reardon | Erin | 21 Wirt Ave | Staten Island | NY | 10309 | 718-948-5156 | 718 948-3719 |
| Rosenberger | Jamie | 40 Harrison Street  32B | New York | NY | 10013 | | |
| Sanchez | Frankie | 111-32 66th Avenue Apt 1B | Forest Hills | NY | 11375 | | |
| Scharlop | Benjamin | 152-28 Melbourne Ave - Apt 232 | Flushing | NY | 11367 | 718-263-7795 | 516-482-2726 |
| Schwartz | Robert | 3278 Amelia Dr | Mohegan Lake | NY | 10547 | 914-245-5420 | 914 245-5420 |
| Semboo | Sharda | 185-01 Liberty Ave | St Albans | NY | 11412 | 718-454-4435 | |
| Shapiro | Stanley | 983 Park Avenue | New York | NY | 10028 | | |
| Shaps | Ryan | 242 Coverly Avenue | Staten Island | NY | 10301 | | |
| Sharr | Henry | 2424 East 11th St - Apt 2B | Brooklyn | NY | 11235 | 718-646-5181 | |
| Shaw | Christopher | 421 Hudson Street Apt 718 | New York | NY | 10014 | | |
| Shen | Hong | 820 Cricket Ln | Woodbridge | NJ | 07095 | 732-855-1743 | 908 755-8137 |
| Sheredos | Robert | 906 West Meadow Drive | Bound Brook | NJ | 08805 | | |
| Sibbley | Lebert | 601 East 19th St - Apt 4D | Brooklyn | NY | 11226 | 718-434-4740 | |
| Sibbley | Errol | 227 West 2nd Street | Mount Vernon | NY | 10550 | | |
| Sobel | Richard | 19 Clover Lane | Westport | CT | 06880 | | |
| Solomon | Elaine | 500 East 77th St - Apt 416 | New York | NY | 10162 | 212-772-7035 | 212 772-7035 |
| Sondike | Brett | 418 Oceanfront | Long Beach | NY | 11561 | 516-431-3666 | (W) 212 213-7916 |
| Squillari | Eleanor | 594 Davis Ave | Staten Island | NY | 10310 | 9718-420-4725 | 212-902-2212 Lawrence work |
| Sroka | Heath | 30 I East 66th Street Apt 3M | New York | NY | 10021 | | |
| Stahl | Richard | 16 Cliff Ave | Darien | CT | 06820 | 203-662-1112 | 203 662-1112 |
| Stampfli | Joshua | 72 Hillcrest Ave | Manhasset | NY | 11030 | 516-869-5822 | |
| Suazo | Joseph | 415 Ridgefield Rd | Hauppauge | NY | 11788 | 631-265-2514 | 631-265 2514 or 516 742-4992 |
| Sullivan | Stefanie | 175 West 87th St - Apt 19F | New York | NY | 10024 | 212-873-8460 | 203- 966-4395 |
| Sutton | Kurt | 315 East 86th Street Apt 17JE | New York | NY | 10028 | | |

CONFIDENTIAL

TA061

Adv. Pro. No. 10-04504, *Picard v. Dusek* - Supplemental Information in Response to Interrogatory No. 4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Taratunio | Debi | 180 Ardmore Ave | Staten Island | NY | 10314 | 718-698-4946 | |
| Tiletnick | Peter | 77-15 113th Street Apt 3O | Forest Hills | NY | 11375 | | |
| Tiletnick | Walter | 440 East 13th St | New York | NY | 11009 | 212-677-6737 | |
| Torres | Elvis | 79-17 153rd Avenue | Howard Beach | New York | 11414 | 718-848-7023 | |
| Tringali | Barbara | 1807 West 7th St | Brooklyn | NY | 11223 | 718-376-4054 | |
| Vicinelli | Paolo | 15 Dante Street | Larchmont | NY | 10538 | | |
| Voigt | Hendrick | I Independence Court Apt 611N | Hoboken | NJ | 07030 | | |
| Ward | Laurence | 310 East 46th St - Apt 12L | New York | NY | 10017 | 212-972-9847 | 212 972 9847 |
| Warrin | Christopher | 96 East River Road | Rumson | NJ | 07760 | | |
| Watkins | Michella | 1589 Unionport Rd - Apt 7H | Bronx | NY | 10462 | 718-863-8334 | 803-289-1259 |
| Weber | Robert | 406 Tarrytown Ave | Staten Island | NY | 10306 | 718-987-2585 | 718 980-9793 |
| Westhuis | Kathryn | 531 East 20th Street Apt 3D | New York | NY | 10010 | | |
| Wharton | Sean-Louis | 66 Fox Road Unit 4B | Edison | NJ | 08817 | | |
| White | Charlene | 39 Morton St | Garnerville | NY | 10923 | 845-429-1186 | 201 538-3243 |
| Wiener | Charles | 28 Chatham Pl | Dix Hills | NY | 11746 | 631-499-8965 (h) | 516-228-8766 |
| Wong | William | 725 Jefferson Street Unit 2 | Hoboken | NJ | 07030 | | |
| Yeh | Richard | 200 East 5 8th Street Apt 14J | New York | NY | 10022 | | |
| Yelsey | Neil | 1 Cliff Pl | Pelham Manor | NY | 10803 | 914-738-2520 | |
| Zachar | Ned | 372 Guard Hill Road | Bedford | NY | 10506 | | |
| Zheng | Xing | 18 Cornell Drive | Great Neck | NY | 11020 | | |

CONFIDENTIAL

TA062

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 8th day of

April, 2016 by electronic and certified mail upon the following:

CHAITMAN LLP
Helen Davis Chaitman
465 Park Avenue
New York, NY 10022

Email: hchaitman@chaitmanllp.com

*/s/ George Klidonas*
*An Attorney for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L.*
*Madoff*

23

300386910.3

# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

September 26, 2016

Edward J. Jacobs
direct dial: 212.589.4674
ejacobs@bakerlaw.com

**VIA FED-EX AND E-MAIL (hchaitman@chaitmanllp.com)**

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, NY 10022

*Re:    Picard v. Trust U/ART Fourth o/w/o Israel Wilenitz, Adv. Pro. No. 10-04995
(SMB)*

Dear Helen:

As you know, we represent the Trustee in connection with the above-referenced
adversary proceeding. In light of the ongoing dispute with respect to the Trustee's
Responses and Objections (the "Responses") to the Defendant's Document Demands and
Interrogatories (the "Requests"), attached please find an early production of the *Expert
Report of Bruce G. Dubinsky MST, CPA, CFE, CVA, CFF, MAFF* (the "Dubinsky
Report"). While the Trustee makes this production in a good faith effort to settle the
ongoing dispute related to the Trustee's Responses, the Trustee does not waive his
objection that production of the report is premature under the operative Case
Management Order. Nor does the Trustee consent to making Mr. Dubinsky or any of the
Trustee's other testifying experts available for deposition prior to the opening of expert
discovery.

As you know from previous productions of the Dubinsky Report in other
adversary proceedings in which you serve as defense counsel, the Trustee offers the
Dubinsky Report to establish, *inter alia,* that BLMIS operated a fraud through its
Investment Advisory business in which Defendant held the accounts that are the subject
of this avoidance action, and that BLMIS was insolvent at all relevant times. Documents
that Mr. Dubinsky considered in connection with forming his opinions in the Dubinsky

*Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC*

TA064

Helen Davis Chaitman
September 26, 2016
Page 2

Report are identified in appendices to his report, and the vast majority of these documents
are available to you in E-Data Room 1 (the "Data Room"). The Data Room was
disclosed to you in the Trustee's Initial Disclosures on December 21, 2015.

Notwithstanding the fact that we have already provided you with (i) a manual that
describes the Data Room in significant detail and (ii) Appendix A to the Trustee's
Responses, which contains an additional high-level description of the Data Room's
contents, what follows is another detailed description of the Data Room's structure,
organization, and contents, which we are providing to you in an effort to make your
navigation of the Data Room as easy and straightforward as possible. Though this is not
a comprehensive description of all of the approximately four million documents
contained in the Data Room, it should nevertheless act as an additional road map for you
to independently navigate the non-objectionable materials you seek through the Requests.

The structure of the description below mirrors the structure and presentation of
the various folders and sub-folders within the Data Room itself. Specifically, the
description below is organized by the three primary "issue trees" a Data Room user can
navigate—**DATA**, **DOCUMENTS**, and **FINANCIALS**—as well the various sub-folders
contained therein.

I.    <u>**DATA**</u>

The documents contained in the DATA issue tree contains data extracted from
the data sources that BLMIS maintained over the decades. The DATA issue tree is
further divided into two sub-folders—**Account Statements and Ledgers** and **StorQM
1099 Forms—**and contains copies of reports and some "near-native" data obtained from
the data sources.

The **Account Statements and Ledgers** sub-folder contains customer statements,
ledgers, and reports for BLMIS accounts, which are further organized into sub-folders
based on the data source from which the documents were uploaded to the Data Room—
Microfilm, SETCHS17, STMTPro, or StorQM. <u>To the extent your Requests seek
information contained in the customer statements of accountholders other than the
defendant in this adversary proceeding, that information is contained in this sub-folder.</u>

The **Microfilm** sub-folder contains customer statements and ledgers from 1978
through November 1995. Before implementing the AS400 system in the 1990s, BLMIS
used predecessor systems (*e.g.*, IBM System 36) to generate account statements, and
microfilm was used as a storage medium that were generated by these systems. Thus, the
statements in this sub-folder were retrieved from the processed microfilm reels.
Generally, each reel contained labeling that gave an indication of what types of reports
were contained on the reel. Using the label information, and also through an actual
review of thousands of reels by the Trustee's experts, a subset of the microfilm reels and
the reports contained therein were identified for processing and Bates numbering.
Customer account statements and other reports related to customer accounts identified on

Helen Davis Chaitman
September 26, 2016
Page 3

the microfilm reels are available in this folder.

The **SETCSH17** sub-folder contains SETCSH17 reports generated from BLMIS monthly backup tapes containing the SETCSH17 table.  SETCSH17 (also referred to as "Settled Cash") is a data table maintained in the House 17 AS400 that contains transactional customer activity used for generation of customer account statements.  BLMIS archived this table on a monthly basis, purging the transactional data from the AS400 system after archive in order to preserve storage space.  The SETCSH17 tables maintained on backup tapes were identified and restored.  The SETCSH17 reports in this sub-folder are presented in PDF format and contain all transactions for the applicable account number, organized by month.  The MS Excel files that were prepared from the extracted SETCSH17 tables are also available in this folder.

The **STMTPro** sub-folder contains customer statements created using the StatementPro ("STMTPro") system from 1996 onward.  STMTPro is a proprietary AS400 add-on application developed by BLMIS programmers and was designed to create BLMIS customer statements outside the normal monthly processing of customer statements.  Restored customer statements using the custom STMTPro program are available in this sub-folder.  Many of the STMTPro tapes were stored with paper indices ("tape wrappers") that provide selected information such as dates and account numbers.  To the extent available, copies of the scanned tape wrappers are located in this folder.

The **StorQM** sub-folder contains customer statements created using the StorQM application on the AS400, which is a report-writing application used to generate various reports.  The customer statements available in this folder are from December 1995 through November 2008.  Please note that the processed StorQM reports in the Data Room were generated in "native-like" format and do not contain the custom StorQM "overlay" that appeared on the statements received by BLMIS customers.

The separate **StorQM 1099 Forms** sub-folder contains the IRS 1099 forms that were generated using the StorQM application.  As with the customer statements, the documents available in this folder are from December 1995 through November 2008.

## II.   DOCUMENTS

The DOCUMENTS issue tree contains electronic copies of hard copy documents collected from BLMIS facilities or obtained from third parties.  These documents are organized by source, then by type of document/data.  The bulk of the information responsive to your specific Requests seeking information related to BLMIS's purported trading activities and its insolvency is contained in this section.  The sub-folders and specific documents contained therein include:

- **BLMIS Documents and Work Papers**: This sub-folder includes various documents, notes, and papers created and maintained by BLMIS throughout its

Helen Davis Chaitman
September 26, 2016
Page 4

existence, including all pages from 21 of the spiral-bound notebooks used by
BLMIS exployees to track cash-in and cash-out transactions. This sub-folder
further includes documents related to BLMIS's liquidity timeline, including
letters from Dan Bonventre and Enrica Cotellessa-Pitz regarding loans to BLMIS
using a JPMorgan Chase account as collateral.

- **BLMIS Operational Documents**: This sub-folder includes selected documents
  related to BLMIS's corporate structure and related organizational activities.

- **FINRA**: This sub-folder includes various documents related to FINRA, including
  BLMIS quarterly FOCUS Reports from 1983 through 2007, as well as
  accompanying data for the reports and audit materials provided by FINRA from
  the late 1990s onward, which further include FINRA questionnaires and
  document requests completed by BLMIS.

- **MSIL Documents and Work Papers**: This sub-folder includes various records
  regarding Madoff Securities International Limited, including corporate structure
  and organizational documents, shareholder resolutions, financial statements, and
  tax returns.

- **Other Public Documents**: This sub-folder folder contains certain publicly
  available documents provided for convenience of counsel.  Documents include
  selected court filings from the criminal proceedings and/or trials of BLMIS
  employees and others.

- **Other Third Party Documents**: This sub-folder folder contains additional
  documents obtained from third parties that relate to BLMIS's purported trading
  activities, including information about specific transactions.  The sub-folders are
  organized by the following sources:

  o **BATS Exchange**: contains documents produced by BATs Exchange Inc.,
    including documents related to trading transactions and activity.

  o **Chicago Board of Options Exchange**: contains documents produced by
    the Chicago Board of Options Exchange, including documents related to
    trading transactions and activity.

  o **Chicago Mercantile Exchange**: contains documents produced by the
    Chicago Mercantile Exchange, including documents related to trading
    transactions and activity.

  o **Clearstream Banking SA**: contains documents produced by Clearstream
    Banking SA, including documents related to trading transactions and
    activity.

Helen Davis Chaitman
September 26, 2016
Page 5

- o **Daily Stock Records (DSR)**: contains various historical stock records, including pages from the New York Stock Exchange Daily Stock Price Record.

- o **DTCC**: contains various records related to the Depository Trust and Clearing Corporation, including BLMIS's records from an account maintained with the DTCC, reports, statements, notices, confirmations, and other documents related to BLMIS trading activity through the Proprietary Trading and Market Making business units; also includes documents obtained from the leased DTCC terminal at BLMIS.

- o **FAZ**: contains pages from FAZ newspaper reflecting trading activity.

- o **Friehling & Horowitz**: contains various records related to purported accounting services provided by Friehling & Horowitz for BLMIS.

- o **Interactive Brokers**: contains documents produced by Interactive Brokers LLC's in response to a subpoena, including various documents related to trading transactions and activity.

- o **Knight Capital Group**: contains documents produced by Knight Capital Group Inc. in response to a subpoena, including various documents related to trading transactions and activity.

- o **London Times**: contains pages from London Times related to local trading activity.

- o **OCC**: contains documents produced by Options Clearing Corporation in response to subpoena, including various documents related to trading transactions and activity; Madoff Position Summary Reports.

- o **Other**: contains documents produced by other third parties, primarily law firms that provided services to BLMIS.

- **SEC**: This sub-folder contains SEC-related materials, including publicly available documents and certain documents received from the SEC. The documents received from the SEC include certain filings made by BLMIS, including ADV forms and year-end filings.

- **Trustee Documents:** This sub-folder contains certain documents and items prepared or filed by the Madoff Trustee or his designees, including selected complaints, Trustee interim reports, and so forth.

Helen Davis Chaitman
September 26, 2016
Page 6

### III.    **FINANCIALS**

The FINANCIALS issue tree contains documents obtained from various third-party institutions related to the financial condition of BLMIS and MSIL.  As with the DATA and DOCUMENTS issue trees described above, there are numerous sub-folders labeled according to document source.  Generally, the documents contained in these sub-folders are account statements, reports, cancelled checks, and related documents for accounts held by BLMIS or MSIL.  The name of the specific entity is reflected in the sub-folder label, and the documents are organized into account-specific sub-folders.

The Data Room's search functionality can be a particularly useful method of navigating the FINANCIALS issue tree.  In order to search, simply press the magnifying glass at the bottom of the window, next to the Field Tree.  From there, you will be able to create a "New Search" and select certain search fields from the Conditions list.  There are numerous fields that a user can search, such as Master Account Number, Master Document Date, Master File Name and Master Title Description. These fields consolidate 'like' fields for ease of searching, and when used, the search features will help you conduct more targeted and narrowed reviews of the Data Room's materials. Other usable fields and related descriptions can be found at the end of the User Manual.

We trust that the foregoing description will aid in your navigation of the materials contained in the Data Room, and once you review the materials contained therein, perhaps obviate or at least narrow the need for motion practice on the Requests.  As you can see, the Data Room contains all of the non-objectionable materials you seek in the Requests, particularly those materials relating to BLMIS's purported legitimate trading activity, as well as its fraud and insolvency.

Sincerely,

/s/ Edward. J. Jacobs

Edward J. Jacobs

Enclosures

```
                                                        Page 1


        UNITED STATES BANKRUPTCY COURT
        SOUTHERN DISTRICT OF NEW YORK
        ------------------------------)
        In re:                        ) SIPA LIQUIDATION
                                      )
        BERNARD MADOFF INVESTMENT     ) No. 08-01789 (SMB)
        SECURITIES LLC,               )
                                      )
                     Debtor.          )(Substantively
                                      ) Consolidated)
        ------------------------------)
        In re:                        )
                                      )
        BERNARD L. MADOFF,            )
                                      )
                     Debtor.          )
        ------------------------------)
        IRVING H. PICARD, Trustee for )
        the Liquidation of Bernard L. )
        Madoff Investment Securities  )
        LLC,                          )
                                      ) Adv. Pro. No.
                     Plaintiff,       ) 10-04995 (SMB)
                                      )
                        v.            )
                                      )
        TRUST U/ART FOURTH O/W/O      )
        ISRAEL WILENITZ,              )
                                      )
        EVELYN BEREZIN WILENITZ,      )
        individually, and as Trustee  )
        and Beneficiary of the Trust  )
        U/ART Fourth O/W/O Israel     )
        Wilenitz,                     )
                                      )
        SARA SEIMS, as Trustee of the )
        Trust U/ART Fourth O/W/O      )
        Israel Wilenitz,              )
                                      )
                     Defendants.      )
        ------------------------------)

            (CAPTION CONTINUED ON THE NEXT PAGE)
```

Page 2

```
 1   ------------------------------)
     IRVING H. PICARD, Trustee for )
 2   the Liquidation of Bernard L. )
     Madoff Investment Securities  )
 3   LLC,                          )
                                   ) Adv. Pro. No.
 4            Plaintiff,           ) 10-04818 (SMB)
                                   )
 5   v.                            )
                                   )
 6   TOBY HARWOOD,                 )
                                   )
 7            Defendant.           )
     ------------------------------)
 8   IRVING H. PICARD, Trustee for )
     the Liquidation of Bernard L. )
 9   Madoff Investment Securities  )
     LLC,                          )
10                                 ) Adv. Pro. No.
              Plaintiff,           ) 10-04914 (SMB)
11                                 )
     v.                            )
12                                 )
     EDYNE GORDON, in her capacity )
13   as the executrix and primary  )
     beneficiary of the estate of  )
14   Allen Gordon,                 )
                                   )
15            Defendant.           )
     ------------------------------)
16   IRVING H. PICARD, Trustee for )
     the Liquidation of Bernard L. )
17   Madoff Investment Securities  )
     LLC,                          )
18                                 ) Adv. Pro. No.
              Plaintiff,           ) 10-04826 (SMB)
19                                 )
     v.                            )
20                                 )
     ESTATE OF BOYER PALMER, DIANE )
21   HOLMERS, in her capacity as   )
     Personal Representative of the)
22   Estate of Palmer, and BRUCE   )
     PALMER, in his capacity as    )
23   Personal Representative of the)
     Estate of Boyer Palmer,       )
24                                 )
              Defendant.           )
25   ------------------------------)
```

```
                                                        Page 3

 1    ------------------------------)
      IRVING H. PICARD, Trustee for  )
 2    the Liquidation of Bernard L.  )
      Madoff Investment Securities   )
 3    LLC,                           )
                                     ) Adv. Pro. No.
 4              Plaintiff,           ) 10-04644 (SMB)
                                     )
 5    v.                             )
                                     )
 6    RUSSELL L. DUSEK,              )
                                     )
 7              Defendant.          )
      ------------------------------)
 8    IRVING H. PICARD, Trustee for  )
      the Liquidation of Bernard L.  )
 9    Madoff Investment Securities   )
      LLC,                           )
10                                   ) Adv. Pro. No.
                Plaintiff,           ) 10-04541 (SMB)
11                                   )
      v.                             )
12                                   )
      KENNETH W. PERLMAN; FELICE J.  )
13    PERLMAN; and SANFORD S.        )
      PERLMAN,                       )
14                                   )
                Defendant.          )
15    ------------------------------)
      IRVING H. PICARD, Trustee for  )
16    the Liquidation of Bernard L.  )
      Madoff Investment Securities   )
17    LLC,                           )
                                     ) Adv. Pro. No.
18              Plaintiff,           ) 10-04728 (SMB)
                                     )
19    v.                             )
                                     )
20    BRUNO DIGIULIAN,               )
                                     )
21              Defendant.          )
      ------------------------------)
22
23
24
25
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

```
                                                          Page 4

 1    ------------------------------)
      IRVING H. PICARD, Trustee for  )
 2    the Substantively Consolidated )
      SIPA Liquidation of Bernard L. )
 3    Madoff Investment Securities    )
      LLC and Bernard L. Madoff,      )
 4                                    ) Adv. Pro. No.
                   Plaintiff,         ) 10-04905 (SMB)
 5                                    )
      v.                              )
 6                                    )
      TRAIN KLAN, a Partnership;      )
 7    FELICE T. LONDA, in her          )
      capacity as a Partner in Train )
 8    Klan; CLAUDIA HELMIG, in her    )
      capacity as a Partner in Train )
 9    Klan; TIMOTHY LANDRES, in his   )
      capacity as a Partner in Train )
10    Klan; PETER LONDA, in his       )
      capacity as a Partner in Train )
11    Klan; TIMOTHY HELMIG, in his    )
      capacity as a Partner in Train )
12    Klan; and WENDY LANDRES, in her )
      capacity as a Partner in Train )
13    Klan,                           )
                                      )
14                 Defendants.        )
      ------------------------------)
15    IRVING H. PICARD, Trustee for   )
      the Substantively Consolidated )
16    SIPA Liquidation of Bernard L.  )
      Madoff Investment Securities    )
17    LLC and Bernard L. Madoff,      )
                                      ) Adv. Pro. No.
18                 Plaintiff,         ) 10-004621 (SMB)
                                      )
19    v.                              )
                                      )
20    DONALD A. BENJAMIN,             )
                                      )
21                 Defendant.         )
      ------------------------------)
22
23
24
25
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                              Page 5

 1      TRUSTEE'S MOTION TO COMPEL DISCOVERY IN THE

 2              THREE ADVERSARY PROCEEDINGS:

 3
        i)  Picard v. Benjamin, Adv. Pro. No. 10-04621
 4     ii)  Picard v. DiGiulian, Adv. Pro. No. 10-04728
      iii)  Picard v. Train Klan, Adv. Pro. No. 10-04905

 5

 6                      -and-

 7   CHAITMAN LLP'S MOTION TO COMPEL DISCOVERY AND THE
     TRUSTEE'S CROSS-MOTION FOR A PROTECTIVE ORDER IN ONE
 8   ADVERSARY PROCEEDING, PICARD V. WILENITZ, ADV. PRO.
     NO. 10-04995
 9

10                      -and-

     CHAITMAN LLP'S MOTION FOR PROTECTIVE ORDER AND QUASH
11   TRUSTEE'S DEPOSITIONS IN THE FOLLOWING ADVERSARY SIX
     PROCEEDINGS:
12
         i)  Picard v. Perlman, Adv. Pro. No. 10-0454
13      ii)  Picard v. Gordon, Adv. Pro. No. 10-04914
       iii)  Picard v. Harwood, Adv. Pro. No. 10-04818
14      iv)  Picard v. Estate of Palmer, Adv. Pro. No.
     10-04826
15       v)  Picard v. DiGiulian, Adv. Pro. No. 10-04728
        vi)  Picard v. Dusek, Adv. Pro. No. 10-04644
16

17              TRANSCRIPT OF PROCEEDINGS

18   in the above-titled action, held on Tuesday,

19   December 13, 2016, at JAMS, 680 Eighth Avenue, New

20   York, New York, commencing at approximately 10:00

21   a.m., before Eileen Mulvenna, CSR/RMR/CRR, Certified

22   Shorthand Reporter, Registered Merit Reporter,

23   Certified Realtime Reporter, and Notary Public of

24   the State of New York.

25

```
                                                         Page 6

 1    B E F O R E:

 2

               HON.  FRANK MAAS (RET.), Arbitrator
 3                  620 Eighth Avenue
                    34th Floor
 4                  New York, New York 10018
                    fmaas@jamsadr.com
 5

 6

      A P P E A R A N C E S:
 7

 8

          BAKER HOSTETLER LLP
 9        Attorneys for the Trustee
              811 Main Street
10            Suite 1100
              Houston, Texas 77002-6111
11        BY:  DEAN HUNT, ESQ.
              dhunt@bakerlaw.com
12            MARIE L. CARLISLE, ESQ.
              marie.carlisle@bakerlaw.com
13
                     -and-
14
          BAKER HOSTETLER LLP
15            45 Rockefeller Plaza
              14th Floor
16            New York, New York  10111
          BY:  EDWARD J. JACOBS, ESQ.
17            edward.jacobs@bakerlaw.com

18

19

          CHAITMAN LLP
20        Attorneys for Defendants
              465 Park Avenue
21            New York, New York  10022
          BY:  HELEN DAVID CHAITMAN, ESQ.
22            hchaitman@chaitmanllp.com
              GREGORY M. DEXTER, ESQ.
23            gdexter@chaitmanllp.com

24

25
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 7

 1              THE ARBITRATOR:  I thought we'd start

 2       with a couple of housekeeping matters.

 3              When we spoke in the telephone

 4       conference call and implicit in Judge

 5       Bernstein's rulings, or I guess really

 6       explicit, is that the rulings I make will

 7       apply to the other adversary proceedings to

 8       which it's applicable.

 9              But I assume that's something the two

10       sides will try to work out amongst

11       themselves?

12              MR. HUNT:  Yes.  I mean, I don't think

13       we're willing to beat our head against a wall

14       on things, but I think each of these cases

15       have some nuances that are different.  So

16       there may be something that's easily

17       translatable, but sort of depends on the

18       issue, I think.

19              MS. CHAITMAN:  But I actually -- this

20       is something that I've tried to work out

21       previously.  I'm defending 92 of these

22       actions.

23              THE ARBITRATOR:  You just answered

24       another question I had on the list.  Go on.

25              MS. CHAITMAN:  The thing is, it just

TA076

Page 8

1          seems to me it's logical that if you rule

2          that the trustee has to produce X document, I

3          shouldn't have to make 92 applications for

4          that.

5               My sense is that if the judge makes a

6          ruling -- all of these cases are virtually

7          identical in the -- the complaints are

8          virtually identical.  So why would one client

9          be entitled to a certain kind of discovery

10         and another wouldn't?  I just think we could

11         simplify this so much if we could apply your

12         rulings to all of the outstanding cases that

13         I have.

14              THE ARBITRATOR:  Why don't we leave it

15         as that would be a good thing to do.  As we

16         get deeper into this, assuming there is a

17         deeper into this, we can try and work that

18         out.

19              It struck me that there were areas

20         like that.  And I'm sure the trustee has a

21         reason, but by way of example, there was a

22         discussion before Judge Bernstein about the

23         Dubinsky report having been served in

24         Action A, but not Action B, although

25         Ms. Chaitman is counsel in both A and B.  And

Page 9

1          I assume that is a function of scheduling

2          issues.  Is that --

3                    MR. JACOBS:  That's correct.

4                    THE ARBITRATOR:  Spell that out for

5          me, if you could.

6                    MR. JACOBS:  Sure.  Most of

7          Ms. Chaitman's cases are either -- all of

8          them have their own independent case

9          management order.  While there might be

10         groups of them that are roughly proceeding

11         together, they're all different.

12                   So the expert disclosure dates differ

13         for each of those matters.  In the Wilenitz

14         case, which is before you today, your Honor,

15         we served the Dubinsky report early to try to

16         avert some of the discovery disputes that

17         we're having here.

18                   And also Ms. Chaitman has received

19         that report in the normal course of the offer

20         and case management order in a number of

21         other cases that aren't before you today.

22                   The Dubinsky report at the moment

23         hasn't changed and that -- there has been a

24         revision, but not in any of Ms. Chaitman's

25         cases.  And for a number of years now, it's

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 10

1          been the same report.

2                    And there are additional reports that

3          are defendant-specific, as Ms. Chaitman

4          knows, that we served in each of the

5          adversary proceedings.  And those haven't

6          been served yet because the offer and case

7          management orders don't call for the

8          disclosure of those experts yet.

9                    THE ARBITRATOR:  Those are Collura --

10                   MR. JACOBS:  And Greenblatt, correct.

11         Both of those reports have aspects of sort of

12         case law analysis, but they also apply that

13         to the specific transfers at issue with

14         respect to the specific defendants in each

15         case.

16                   So Ms. Chaitman has seen those reports

17         in a number of her cases, just not the

18         Wilenitz case or the others that are still in

19         fact discovery today.

20                   THE ARBITRATOR:  And I gather that

21         some, but not all of the issues that relate

22         to the individual Collura and Greenblatt

23         reports will also be the subject of the

24         omnibus profit withdrawal hearing that Judge

25         Bernstein contemplates?

Page 11

```
 1              MR. JACOBS:  Potentially if the issue
 2          with the proper withdrawal transactions is
 3          that there are certain transactions reflected
 4          on customers' statements that are being --
 5          the nature of which are being litigated right
 6          now in the claims proceeding you just
 7          referenced, some of the defendants in some of
 8          the cases have those type of transactions in
 9          their account.  So that would be relevant in
10          each of those adversary proceedings as well,
11          but not all.  So --
12              THE ARBITRATOR:  Are you talking about
13          inter-account transfers?
14              MR. JACOBS:  No, I'm talking about --
15          so the profit withdrawal -- the profit
16          withdrawal in the trustee's contention was a
17          purported dividend on a stock reflected in
18          the customer statement, which was fraudulent,
19          that resulted in an actual check going to the
20          customer in cash.
21              So -- and Ms. Chaitman represents
22          Mr. Blecker, who I believe is the customer
23          whose claim was denied in our claims side of
24          the case.  And she --
25              You can correct me if I'm
```

Page 12

1          misconstruing your argument.

2                But some of the customers represented

3          by Ms. Chaitman are arguing that, in fact,

4          those profit withdrawal transactions did not

5          result in checks or cash that went to the

6          customer.  So to that extent, that would be a

7          challenge to our net equity calculation.

8                So that's what's being litigated

9          before Judge Bernstein in the profit

10         withdrawal proceeding.

11               MS. CHAITMAN:  But not with respect to

12         the claw-back defendants.

13               MR. JACOBS:  Well, it's an issue that

14         may be relevant in discovery with the

15         claw-back defendants to the extent you're

16         challenging our calculation of net equity,

17         and the PW transactions specifically are part

18         of your challenge.

19               THE ARBITRATOR:  I had thought there

20         was overlap, but you're telling me that

21         there's less overlap than I thought there

22         was, which is helpful to understand.

23               MS. CHAITMAN:  My understanding was

24         that Judge Bernstein explicitly said we're

25         not litigating the profit withdrawal

Page 13

1           contentions of the claw-back defendants in

2           the profit withdrawal litigation.

3                   MR. JACOBS:   That's correct.   So right

4           now, I agree, to avoid any confusion, the

5           profit withdrawal issue is only being

6           litigated in the claims proceeding.   It's not

7           part -- the adversary proceedings are -- the

8           defendants in the adversary proceedings where

9           that's an issue are not part of that

10          proceeding.

11                  So presumably those issues may --

12          well, it will be -- we'll have to see how

13          Judge Bernstein wants to deal with any ruling

14          he'll issue on the claim side and its

15          applicability to the adversary proceedings.

16                  In my mind, obviously, any ruling that

17          Judge Bernstein issues in any one of our

18          cases, including a discovery issue or any

19          ruling you may issue, if it's applicable to

20          the same set of facts or circumstances in any

21          other case, the trustee is going to follow

22          it.

23                  Where it's not applicable, because

24          there are different circumstances or facts

25          that would render it -- would render the

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 14

```
 1        outcome of the application of that decision

 2        for that case inconsistent with the judge's

 3        analysis or theory and ruling in the prior

 4        proceeding, then we would argue it shouldn't

 5        apply.

 6              So just backing up to your question,

 7        your Honor, about whether your rulings today

 8        should apply universally in all cases, we

 9        agree with Ms. Chaitman that where the facts

10        and circumstances of other cases are

11        identical, it absolutely should.  Where they

12        aren't, it shouldn't.

13              If either side can make a good-faith

14        argument as to why it shouldn't apply -- and

15        as I stated to Ms. Chaitman in many prior

16        hearings before Judge Bernstein, after we

17        have the benefit of your ruling, we're happy

18        to meet and confer and enter into a

19        stipulation as appropriate where we can agree

20        as to the applicability of those rulings in

21        her other cases to avoid unnecessary

22        litigation of those same issues.

23              I think that should solve all of our

24        concerns.

25              THE ARBITRATOR:  Hopefully.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 15

1              MR. JACOBS:  Hopefully.

2              THE ARBITRATOR:  I note, with regard

3       to the profit withdrawal proceeding, that at

4       least tangentially it relates to some of the

5       good-faith claw-back cases because there's a

6       letter Ms. Chaitman sent on December 8th that

7       said that one of your arguments supports her

8       discovery argument.

9              MR. JACOBS:  Right.  Well, we can

10      discuss that later if that's ours.

11             MR. HUNT:  Sure.

12             THE ARBITRATOR:  We'll get to that.

13      I'm not trying to put the cart before the

14      horse.

15             MS. CHAITMAN:  Judge, I just want to

16      say one other thing.

17             THE ARBITRATOR:  Sure.

18             MS. CHAITMAN:  I sympathize with you

19      coming into this case because it's so

20      incredibly complicated.  And we've been

21      living with it since 2009.

22             When you asked whether the profit

23      withdrawal was part of the inter-account

24      transfer issue, I just wanted to explain

25      something to you.

Page 16

1              THE ARBITRATOR:  Right.

2              MS. CHAITMAN:  If you look at

3      Exhibit B to the complaint which sets out the

4      deposits and withdrawals, in some cases,

5      there's an indication that there's a deposit

6      into the account from another Madoff account.

7              THE ARBITRATOR:  Right.

8              MS. CHAITMAN:  Now, when we are

9      litigating the net equity of a defendant, we

10     want to look at the transferor account and

11     see whether there were profit withdrawals

12     that the client claims were never received.

13     So --

14             THE ARBITRATOR:  And I gather that the

15     CAD -- I forget what the acronym stands

16     for -- that you get includes the paperwork,

17     to the extent the trustee has it, that

18     underlies those transferor accounts.

19             MR. JACOBS:  That's correct, your

20     Honor.

21             MS. CHAITMAN:  Some of them date back

22     beyond -- they don't have the records.

23             THE ARBITRATOR:  Sure.  And I gather

24     the Madoff deposition, which I read, really

25     went to the issue of whether some of those

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 17

1          purported dividends were real or not.  Is

2          that part of what you were exploring?

3                    MS. CHAITMAN:  Yes, because the

4          trustee has taken the position from inception

5          that Madoff never purchased any securities

6          for his investment advisory customers.  And

7          Frank DiPascali, who was Madoff's right-hand

8          man, who was the government's chief witness

9          in the criminal trial --

10                   THE ARBITRATOR:  He's now dead?

11                   MS. CHAITMAN:  He died, yes.

12                   But he pled in federal court.  And in

13         his plea, he started out by saying, early in

14         the 1990s, we started a fraud with respect to

15         the investment advisory --

16                   MR. JACOBS:  That's not actually what

17         Mr. DePascali said in the proceedings.  I

18         would like the record to reflect his actual

19         testimony, not Ms. Chaitman's

20         characterization --

21                   THE ARBITRATOR:  I'm confident that

22         one of you is right.  Why doesn't somebody --

23         and since the trustee seems to have more

24         funding than Ms. Chaitman, why don't you just

25         send me a copy of the guilty plea allocution.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 18

```
 1                    MR. JACOBS:  I will be happy to.
 2                    MS. CHAITMAN:  And then Mr. Madoff has
 3           testified that the fraud began in 1992.  So
 4           if that's true, if Judge Bernstein finds
 5           that, in fact, the fraud began in 1992, then
 6           all of the net equity calculations for
 7           accounts which predate 1992 would have to be
 8           recalculated.
 9                    THE ARBITRATOR:  And the trustee's
10           position, I gather, is that, from inception,
11           Madoff was a Ponzi scheme.
12                    MR. JACOBS:  To the best of our
13           knowledge, yes, and that the early periods of
14           the fraud are the subject of litigation right
15           now by Ms. Chaitman.  The court has
16           authorized a second deposition of Bernard
17           Madoff on that issue.
18                    But as it stands now, our position is
19           that the only evidence that that is true is
20           Mr. Madoff's own self-serving statements to
21           that effect, which are not consistent with
22           any of the debtors' books and records.
23                    THE ARBITRATOR:  Okay.  Obviously
24           that's not an issue we're going to resolve.
25                    I saw on ECF that one of the Collura
```

TA087

Page 19

1          reports, and maybe there is only one, is 705

2          pages.  I was wondering in relation to all of

3          this whether it makes sense for me to look at

4          the Dubinsky report, some specimen of Collura

5          reports and the Greenblatt report or whether

6          that would be a waste of my time and your

7          money.

8                MR. JACOBS:  In terms of your

9          knowledge as context and background --

10               THE ARBITRATOR:  Exactly.

11               MR. JACOBS:  -- for these and other

12         discovery disputes?

13               THE ARBITRATOR:  Yes.

14               MR. JACOBS:  We'd be happy to provide

15         a copy of that -- of those reports for you.

16         And perhaps we can choose a representative --

17               MR. HUNT:  I think none of the cases

18         that we're talking about today have the

19         Greenblatt and Collura reports yet.  So you'd

20         be looking at a report out of context of

21         these cases.  It would just be an exemplar of

22         what they do for us.

23               MR. JACOBS:  Right.

24               Which in and of itself you may find

25         helpful.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

```
                                                      Page 20
 1                    THE ARBITRATOR:  I assume it basically

 2         walks somebody through the Exhibit B; is

 3         that --

 4                    MR. JACOBS:  Exhibit B?

 5                    THE ARBITRATOR:  To the complaint.

 6                    MS. CHAITMAN:  Not exactly.

 7                    THE ARBITRATOR:  A typical Collura

 8         report?

 9                    MR. JACOBS:  Yes, it does.

10                    MS. CHAITMAN:  The case-specific ones.

11                    MR. JACOBS:  The case-specific reports

12         do, yes.

13                    THE ARBITRATOR:  Is there also an

14         overarching Collura report?

15                    MR. JACOBS:  There's a component --

16         and this is going to be my crude, potentially

17         not entirely accurate, sort of shorthand of

18         what her report does.  But essentially

19         Ms. Collura's report, together with

20         Mr. Greenblatt's report, provide a

21         reconciliation of all of the cash

22         account trans- -- transaction activity at

23         BLMIS from the period for which we have bank

24         statements forward.

25                    So essentially what the trustee is
```

Page 21

1           doing, your Honor, is -- we have a complete

2           set of third-party bank records from BLMIS's

3           accounts, I believe it's from 1981 or 1982.

4           And we credit all of the customers' account

5           statements for the full amount of their

6           account balance as of that date, and then we

7           start our net equity calculation by comparing

8           what the customer account statements say with

9           independent third-party, usually JPMorgan,

10          financial records.

11               THE ARBITRATOR:  So if the account

12          says there's a hundred thousand dollars in it

13          in 1980, you're not challenging that?

14               MR. JACOBS:  We give credit to the

15          customer for the full amount of that

16          account -- that statement balance, whether

17          it's fictitious profits or not.

18               What we're saying is that if we can't

19          independently verify it through what our

20          experts do in these reports, then we're not

21          going to challenge it for those early, early,

22          early periods.

23               MS. CHAITMAN:  Ted, I think you may

24          have misspoken.  Because it's my

25          understanding that you have JPMorgan Chase

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 22

1          bank records from December 1988 on and you

2          have Madoff records from 1981.

3                   MR. JACOBS:  That is correct.  Thank

4          you.  That is correct.  Sorry.  I flipped the

5          account statements with the bank statements

6          and that early date.

7                   So back to your question, where I

8          was -- where I was going was, together

9          Ms. Collura and Mr. Greenblatt -- what their

10         analysis does is show that the account

11         activity in the customer statements is

12         reliable across the universe of account

13         statements that we have going back, thank

14         you, to the early 1980s because the periods

15         for which we have bank records, when compared

16         to those customer statements, match to a near

17         certainty of close to 100 percent of the

18         time.

19                  So their expert analysis is that the

20         cash activity 100 percent or near 100 percent

21         of the time is reliable on the face of

22         Madoff's statements.  That's sort of the

23         case-wide function in a nutshell of those

24         reports.  And, again, I would like to just

25         reserve the right to let the reports speak

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 23

1          for themselves.  And I'm not an expert.  I'm

2          not as smart as they are.  So if I misspoke

3          or made any misstatement or

4          mischaracterization, I apologize in advance.

5              THE ARBITRATOR:  Why don't you send me

6          the reports understanding that the Collura

7          reports have not been served in any of the

8          cases that we're talking about currently.

9          And if I begin to look at them and realize

10         I'm going off into an area that I shouldn't

11         worry about, at least now, I'll be glad to

12         abandon reading it.

13             MS. CHAITMAN:  Judge, I just want to

14         warn you, the complete set of Collura

15         reports, not case-specific, but the ones that

16         have been produced in the profit withdrawal

17         litigation, are probably six times this

18         binder.

19             THE ARBITRATOR:  Just to be clear, I

20         don't want a complete set.  I would like a

21         specimen report, understanding that each one

22         may be unique and that --

23             MR. JACOBS:  The profit withdrawal

24         reports were geared towards the issues that

25         were in contention.  I think the adversary

Page 24

1        proceeding reports are much smaller,

2        certainly without the exhibits.

3              MS. CHAITMAN:  Okay.

4              MR. JACOBS:  So I'll take a look.  And

5        if it makes sense to exclude exhibits, I can

6        give you a list of what they are.

7              THE ARBITRATOR:  Sure.

8              MR. JACOBS:  And if you want to have

9        them, we're happy to make whatever you would

10        like.

11              THE ARBITRATOR:  Then just in terms of

12        procedure, to the extent I rule today, a

13        number of things could happen.

14              One, I could reduce that to an order.

15        Two, I could say look at the transcript,

16        that's my order.  I suppose in some areas, I

17        could issue a more detailed decision.  I'm

18        here to try and be user-friendly, so tell me

19        what you think makes sense and maybe for

20        different areas, different results should

21        obtain.

22              MS. CHAITMAN:  If I can step in first,

23        your Honor.

24              THE ARBITRATOR:  Sure.

25              MS. CHAITMAN:  I think, as I

Page 25

1          understand it, the procedure would be that

2          your decisions, if someone wants to appeal

3          them, would be appealed to Judge Bernstein

4          and then to the District Court.

5                    THE ARBITRATOR:  Sure.  Yep.

6                    MS. CHAITMAN:  So I think, in that

7          respect, it would be helpful to have an

8          order.

9                    Do you disagree with that?

10                   MR. JACOBS:  We agree that an order

11         would be helpful.  And as Ms. Chaitman notes,

12         she has many cases.  We'll be, I'm sure,

13         talking about the applicability of those

14         orders in those cases and hopefully working

15         that out.

16                   And also we have many hundreds of

17         cases in addition to that with other

18         defendants.  So an order gives us an ability

19         to start a good-faith discussion with those

20         defendants to the extent similar issues arise

21         and hopefully resolve them so that they are

22         coming before your Honor.

23                   THE ARBITRATOR:  And, similarly, I'm

24         in the odd circumstance now where I'm a

25         retired attorney, although I intend to remedy

Page 26

1        that.  But I issued the decision in Crupi and

2        I think my case manager asked that the

3        trustee file it.

4             MR. JACOBS:  Yes.

5             THE ARBITRATOR:  I looked yesterday

6        and didn't see that it was filed, so I --

7             MR. JACOBS:  We are working on that.

8        We will get that filed.  We just needed to

9        put together a motion.  And I know that's

10        been done, and I'll check with my team and

11        get it filed.

12             THE ARBITRATOR:  Okay.  So I guess for

13        the time being, to the extent I issue orders,

14        I'll ask the parties to file them.  At some

15        point, I'll probably ask Judge Bernstein to

16        have me declared an interested party, which I

17        guess would then permit me to file directly

18        on the NCF.

19             MR. JACOBS:  That answers our question

20        as to why you didn't go ahead and file that.

21        We're happy to do it.

22             MS. CHAITMAN:  Is that something we

23        can arrange for the judge?

24             MR. JACOBS:  I thought we'd just have

25        a simple motion saying, at the request of the

Page 27

```
 1          arbitrator, we'd like to file this decision

 2          in this case, but it's not a case in which

 3          you're involved.

 4               MS. CHAITMAN:  No, but wouldn't the

 5          judge -- if he files a notice of appearance,

 6          wouldn't he have the right to file a

 7          decision?

 8               THE ARBITRATOR:  But I can't file a

 9          notice of appearance for two reasons.  One,

10          at the moment, I'm not an attorney.  I'm a

11          retired attorney.  And I looked at the form,

12          and I have to represent that I'm an attorney

13          in good standing.  And I'm not sure whether

14          that representation would be accurate.

15               If neither side objects, maybe what

16          I'll just do is call Judge Bernstein's

17          chambers and see how they suggest I handle

18          that.

19               MR. HUNT:  That sounds fine.

20               THE ARBITRATOR:  Okay.  Then it really

21          falls into the category of minutia, but I see

22          references often to House 5 and House 17.  I

23          know it doesn't relate to anything I'm doing

24          currently, but I couldn't resist asking.

25               MR. JACOBS:  Okay.  House -- it's an
```

Page 28

```
 1           easy explanation.  These are informal
 2           nicknames that BLMIS had for its different
 3           operations.  House 17 is the investment
 4           advisory business that, as you know, the
 5           trustee understands was operating a Ponzi
 6           scheme.  Ms. Chaitman's clients were House 17
 7           customers, and that's the investment advisory
 8           business.
 9                House 5 was the part of BLMIS's
10           business, for lack of a better word, where
11           there was proprietary trading happening and
12           there was a market-making business function.
13           And that the trustee contends is the only
14           portion of the business through which any
15           actual securities trades were conducted at
16           any given point in time.
17                THE ARBITRATOR:  And are those the two
18           houses?  Is there anything else?
19                MR. JACOBS:  That's it.  That's
20           essentially it.  So if and when you review
21           Mr. Dubinsky's report, you'll see a lengthy
22           discussion about how BLMIS operated as a
23           whole and how those different portions were
24           interrelated, both from a financial
25           perspective and from a fraud and Ponzi scheme
```

TA097

Page 29

1          perspective.

2                    THE ARBITRATOR:  Why don't we then

3          turn to the trustee's motion to compel.

4                    MR. JACOBS:  Sure.

5                    THE ARBITRATOR:  Unless there were any

6          other housekeeping matters that any of you

7          wanted to bring up.

8                    MR. JACOBS:  I don't think so, your

9          Honor.

10                   THE ARBITRATOR:  Ms. Chaitman?

11                   MS. CHAITMAN:  No.

12                   THE ARBITRATOR:  Okay.  Why don't we

13         deal with the third-party subpoenas to the

14         banks first.

15                   MR. JACOBS:  I'm not sure that we

16         have --

17                   MR. HUNT:  None of those are before

18         you right now.

19                   THE ARBITRATOR:  Oh.  I thought that

20         issue was before me, but --

21                   MS. CHAITMAN:  It is in connection

22         with the responses to some of our

23         interrogatories where we --

24                   MR. HUNT:  There's no subpoena that's

25         being contested here today.

Page 30

```
 1                    THE ARBITRATOR:  Okay.  But it does --
 2                    MS. CHAITMAN:  It comes up.  It does
 3          come up.
 4                    THE ARBITRATOR:  -- deal with the
 5          completeness of the responses regarding the
 6          accuracy of Exhibit --
 7                    MR. HUNT:  I think it comes up
 8          tangentially in that regard.
 9                    THE ARBITRATOR:  Well, rather than me
10          then guiding the discussion, why don't you
11          tell me in relation to that motion what the
12          trustee wants to talk about first.
13                    MR. HUNT:  So there are actually three
14          cases where we filed a motion to compel --
15                    THE ARBITRATOR:  Right.
16                    MR. HUNT:  -- the Train Klan case, the
17          DiGiulian case and the Benjamin case.
18                    As I'm sure you're aware, having
19          reviewed our pleadings, there are a lot of
20          very similar issues here.  Specifically the
21          defendants assert a number of affirmative
22          defenses, which they bear -- bear the burden
23          of proving, of course, in which they have
24          chosen to just deny us discovery about in its
25          entirety.
```

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 31

1              Second of all, while the defendants on

2         the one hand say they don't dispute

3         Exhibit B, they spend a large amount of time

4         in their answers explaining why Exhibit B is

5         not accurate and why the records that we have

6         are not admissible and why we can't prove our

7         case.  So we clearly have the right to take

8         discovery on those issues.

9              So what I thought might make some

10        sense is to just talk through the discovery

11        responses themselves, starting with Train

12        Klan, which is the most complicated one.  And

13        I think by the time we get to Benjamin, we

14        will be starting to repeat ourselves a bit.

15             THE ARBITRATOR:  Well, I'm sure it's

16        right that there's overlap and that we'll all

17        be repeating ourselves.  One of the things I

18        guess I began to have a feel for what you've

19        all been struggling with is, obviously there

20        were boilerplate responses to your requests.

21        And that worked both ways.  And clearly some

22        word processing errors also --

23             MR. HUNT:  I agree with that.

24             THE ARBITRATOR:  -- on both sides.

25             But, sure.  Train Klan, you've asked

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 32

1          for a lot of partnership material.  Judge

2          Bernstein dismissed the claims against

3          subsequent transferors in a number of these

4          claw-back cases --

5                   MS. CHAITMAN:  Transferees.

6                   THE ARBITRATOR:  Transferees.  Excuse

7          me.

8                   -- saying that there was insufficient

9          information pled.  General partners of a

10         limited partnership are treated as alter egos

11         of the partner, but limited partners, as I

12         understand the law, are not.  You seem to be

13         asking for information as to both.

14                  MR. HUNT:  We're asking for

15         information about the partners.  With respect

16         to Train Klan, all they say is there are

17         partners.  Of course, the partnership

18         documents and percent ownership interest and

19         type of partner is all relevant exactly for

20         the reason you said.

21                  Moreover --

22                  THE ARBITRATOR:  Why is anything --

23         and it may be that you end up with the same

24         documents, but if my order in that area were

25         to be that Ms. Chaitman's client, Train

Page 33

1          Klan -- I guess it's really two defendants

2          with the Train Klan partnership -- must

3          produce documents to show -- sufficient to

4          show you over time who the general partners

5          were.

6               Why doesn't that satisfy your need,

7          yet respond to Ms. Chaitman's concern?

8               MR. HUNT:  We don't know even what

9          type of entity Train Klan is.  It says it's a

10         partnership.  We don't know if it's a general

11         partnership, a limited partnership or what

12         kind of entity it is.

13              So what we're seeking is the legal

14         name of the partnership, the type of entity

15         it is, the basic information about that

16         entity, when it was established, whether it

17         was formed out of a predecessor entity, which

18         state or country it's incorporated in or

19         where it's --

20              THE ARBITRATOR:  By definition,

21         probably it's not incorporated.

22              MR. HUNT:  Well, yes.

23              Which state or country was it formed.

24         What law applies they think.  And the names

25         and addresses of the current and former

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 34

```
 1              partners, members, whatever that may be, and
 2              their ownership interest in that partnership.
 3                   That establishes the liability of the
 4              partners, I think.  We don't have any of that
 5              information.  And I'm not sure that a --
 6                   THE ARBITRATOR:  Let's say, for
 7              argument's sake, you're a 10 percent limited
 8              partner and I'm a 5 percent limited partner
 9              and the court reporter is the general
10              partner.  Once you establish that the court
11              reporter, Ms. Mulvenna, is the general
12              partner, putting aside the other materials
13              around that that you're interested in, why
14              does it matter whether I have 5 percent and
15              you have 10 percent or vice versa or who the
16              other limited partners may be?
17                   MR. HUNT:  We don't know, first of
18              all, if there are any limited partners.  But
19              second of all, depending upon how this entity
20              is set up, each of those individuals may be
21              liable for their percentage share as a direct
22              transferee depending on how the proceeds are
23              distributed.  We don't know because they
24              won't tell us.
25                   THE ARBITRATOR:  Ms. Chaitman.
```

Page 35

1                    MS. CHAITMAN:  Well, you know, we have

2            a tension here because, as you've recognized,

3            Judge Bernstein held that the complaints

4            against the subsequent transferees failed to

5            state a claim.  And we have cases from United

6            States Supreme Court on down saying you can't

7            take discovery in order to obtain the facts

8            you need to file a complaint.

9                    And, indeed, the trustee has used

10           those cases against me when I've sought to

11           take discovery in order to get the facts

12           which would allow me to state a claim.

13                   So I don't think that the trustee can

14           argue that that line of cases does not apply

15           here.  And what I've tried to do is protect

16           my clients, as I believe I'm entitled to, by

17           not disclosing anything which would give the

18           trustee the precise information he's seeking

19           because he wants to be able to name the

20           individuals.

21                   And if I have to disclose how much

22           each person has, he's going to then sue them

23           for that percentage of the withdrawals.  And

24           I think that I'm entitled to -- he's entitled

25           to get a judgment against the account holder.

Page 36

1           And if the account -- if the judgment isn't

2           paid, then he can sue the individual

3           partners.  But that's the order that the

4           United States Supreme Court has established.

5           And I don't think that he should be entitled

6           to circumvent that.

7                THE ARBITRATOR:  One of my problems is

8           I think I agree with both of you.  And I also

9           think, as a general operating principle, that

10          if either side is entitled to discovery for

11          Reason A, the fact that it may also be

12          helpful as to undisclosed Reason B is not a

13          basis to turn down a request for discovery.

14               But specifically with respect to Train

15          Klan, I think what I'm going to require be

16          produced are any partnership agreements.  And

17          in doing that, I note that -- I think it was

18          Cravath Swain & Moore operated for many years

19          with no written partnership agreement.  So

20          I'm mindful that perhaps there are no

21          partnership agreements or not ones of the

22          formality that we're used to.

23               But any partnership agreements for the

24          relevant time period.  And I guess that will

25          then lead to a discussion of what the

Page 37

1          relevant time period is.  It may be from

2          formation.  And as I said, documents

3          sufficient to show who the general partner,

4          or partners, over time of the partnership

5          are.

6                    MR. HUNT:  The relevant time period is

7          1993 forward.

8                    THE ARBITRATOR:  Okay.  Just so I

9          understand, explain to me why --

10                    MR. HUNT:  That's when the account was

11          opened, in May of 1993.

12                    THE ARBITRATOR:  Okay.  So whatever

13          partnership agreement existed then.  If the

14          partnership was formed in 1970, which is

15          unlikely, you wouldn't have to produce that

16          partnership agreement unless it was the

17          operative agreement in 1993.

18                    MS. CHAITMAN:  But the trustee's only

19          permitted to sue to recover withdrawals taken

20          within the last two years prior to Madoff's

21          confession.  So why would partnership

22          agreements that predate December 11, 2006,

23          have any relevance?

24                    THE ARBITRATOR:  Well, I think that

25          the trustee is entitled to know how the

Page 38

1          partnership was organized.  And as I

2          understand Judge Bernstein's rulings,

3          although maybe here I'm going beyond my role,

4          and the case law, it doesn't appear that the

5          trustee has a basis at the moment pursuing a

6          limited partner.  But the trustee may have a

7          different view of that.

8                  MR. HUNT:  So just to be clear, in

9          this particular case, we've sued the partners

10         who we know of.

11                 THE ARBITRATOR:  You've sued the whole

12         group of people; correct?

13                 MR. HUNT:  Which we assume are general

14         partners based on what information we have.

15                 THE ARBITRATOR:  But assuming there's

16         a formal partnership agreement and that one

17         of those defendants is the general partner

18         and others are limited partners, I'm not sure

19         that under the case law and Judge Bernstein's

20         rulings, that there's a basis for suing the

21         limited partners.

22                 MR. HUNT:  Right.  But she has to give

23         us the information showing they're limited

24         partners before we can talk about that.

25                 THE ARBITRATOR:  She has to give you

TA107

Page 39

```
 1            the information showing you, under my ruling,

 2            who the -- or the documents showing you who

 3            the general partner is.  That document may

 4            also show you who the limited partners are.

 5            But documents can't be redacted, as far as

 6            I'm concerned, on the basis of relevance.

 7                 So it may, through the back door, give

 8            you information about percentages of who the

 9            limited partners are.  But my understanding

10            of the case law is that the general partner

11            is not considered a subsequent transferee

12            because the general partner is, in effect,

13            the alter ego of the partnership.

14                 MR. HUNT:  I agree with that.  In this

15            particular case, we have sued each of the

16            partners in their capacity as a partner.

17                 THE ARBITRATOR:  Right.

18                 MR. HUNT:  So if Ms. Chaitman wants to

19            get them dismissed from the case, she has to

20            prove to us that they're limited partners.

21            We can't take it at -- her at her word.  If

22            she wants them out, she has to tell us why

23            she wants them out, I would say.

24                 THE ARBITRATOR:  I'm going to adhere

25            to my ruling.  Why don't you wait and see
```

Page 40

1     what documents you get in response to that

2     ruling.  Maybe it will become a non-issue.

3     If it still is a concern, we can deal with it

4     on a more granular level.

5          MR. HUNT:  Okay.  The other thing too,

6     just to be clear, your ruling has to do with

7     documents, but I would like them also to

8     answer the interrogatories relating to those

9     points.  So we don't have to go through the

10    documents and figure out what the answer

11    might be.

12         THE ARBITRATOR:  Let's deal with

13    specific interrogatories so that we have a

14    somewhat definitive answer.

15         MR. HUNT:  That sounds great.  Thank

16    you.

17         So we received two responses to

18    interrogatories in Train Klan.

19         THE ARBITRATOR:  One on behalf of the

20    partnership, one on behalf of the

21    individuals.

22         MR. HUNT:  Right.  And with respect to

23    the individuals, I have an issue with that.

24    Because Ms. Londa signed with power of

25    attorney as a partner for each of the

Page 41

1          individuals.  We never did get a response

2          from the individuals.

3               So I would like -- if the court -- if

4          your Honor would help us with that.  I'd like

5          to get actual answers from each of the

6          defendants rather than someone signing with

7          power of attorney for all of them.

8               THE ARBITRATOR:  Well, what I'm

9          inclined to do -- and if schedule were not an

10         issue, let me tell you what I'd be inclined

11         to do.  And although I understand all of

12         these cases have their own schedules, there

13         must be some sort of overarching view of how

14         these cases will ultimately get resolved.

15         And that big picture view I express complete

16         ignorance as to.

17              But if scheduling were not an issue,

18         what I would be inclined to do is say the

19         partnership should respond.  And then,

20         depending upon that, it may be unnecessary

21         for the individuals to respond depending on

22         the documents and interrogatory responses you

23         receive.

24              Maybe there's some belt and suspenders

25         approach you'd want down the road.  I could

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 42

1          see certifications from each of the

2          individuals that they've never -- who are not

3          general partners, that they've never been a

4          general partner.

5               But I'm not unsympathetic to what

6          Ms. Chaitman says about the extent of their

7          limited partnership interest being none of

8          the trustee's business assuming that they

9          were only limited partners --

10               MR. HUNT:  Assuming that it's even a

11          partnership.

12               THE ARBITRATOR:  -- and that it's a

13          partnership that observed formalities rather

14          than the equivalent of an investment club of

15          people who get together once a week and

16          say --

17               MR. HUNT:  Right.  I mean, that's what

18          we're finding some of these things are.  And

19          so it may not even be a partnership as far as

20          we know.

21               THE ARBITRATOR:  So let me get back to

22          what I was asking, which is, to the extent I

23          make rulings like the one I just described,

24          what impact does it have on that broad

25          schedule of how these cases march their way

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 43

```
 1        toward resolution?

 2              MR. HUNT:  For Train Klan

 3        specifically?  Because that is --

 4              THE ARBITRATOR:  Why don't we stick

 5        with that, yes.

 6              MR. HUNT:  So I think what that does

 7        is it sort of makes it a two-step process.

 8        Because based upon what we learned from this

 9        sort of intermediate response, we still may

10        have questions that we need to address and

11        we'll have to come back to you.

12              THE ARBITRATOR:  But I guess what I'm

13        inarticulately trying to ask is, am I

14        screwing up Judge Bernstein's schedule by

15        doing that?

16              MR. HUNT:  No.  One of the things --

17        I'll tell you this, we can't agree on much,

18        but we can agree on scheduling issues.  And

19        the parties have the flexibility to move the

20        schedule around to meet their needs.  So to

21        the extent there's a scheduling issue, I'm

22        certain that Ms. Chaitman will accommodate

23        additional scheduling time to resolve it.

24        She has in the past.

25              MS. CHAITMAN:  And I'm sure you've
```

Page 44

1          seen there are so many issues, we haven't

2          gotten discovery on two.  And obviously we're

3          going to need to extend the discovery.

4                  THE ARBITRATOR:  Okay.  And Judge

5          Bernstein is, to use the vernacular, cool

6          with that?

7                  MR. HUNT:  Yes, sir.

8                  MR. JACOBS:  If by agreement of the

9          parties, it's never been an issue.

10                 THE ARBITRATOR:  Okay.  Great.

11                 So as to the partnership, I ruled with

12         respect to --

13                 MR. HUNT:  I'm sorry I interrupted

14         you.

15                 THE ARBITRATOR:  I was going to say

16         what you just volunteered.  Let me find --

17                 MR. HUNT:  You're smart enough to copy

18         yours double-sided.

19                 THE ARBITRATOR:  No, you sent this to

20         me so --

21                 MR. HUNT:  We're smart enough to do it

22         for you.

23                 THE ARBITRATOR:  Except I'm looking at

24         the wrong --

25                 MR. HUNT:  It's Interrogatory No. 1 to

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 45

```
 1          the -- the answers to the interrogatories
 2          sent by Train Klan are identical to the ones
 3          that we received from the individuals signed
 4          by Ms. Londa on behalf of the individuals.
 5               THE ARBITRATOR:  So it's
 6          Interrogatory 1 --
 7               MR. HUNT:  The response we got was
 8          that this information is not relevant.  And I
 9          think you've already ruled that, to the
10          extent that these -- first of all, we need to
11          know if it's a partnership, what kind of
12          partnership it is, and who the partners are.
13          Looks like the only thing you were
14          withholding or that we could think you'd
15          potentially withhold is the percent
16          beneficial interest to the account.
17               THE ARBITRATOR:  Well, I would modify
18          it -- after the words "the names and
19          addresses of its current and former," I would
20          insert the word "general partners" and cross
21          out everything up to "its current and former
22          business addresses and current and former
23          principal places of business."
24               And since I was ruling with respect to
25           documents, conceivably Ms. Chaitman could
```

Page 46

1              answer that by saying, see documents Bates

2              Nos. 1 through whatever.

3                      MR. HUNT:  I would agree with that.

4                      THE ARBITRATOR:  Okay.

5                      MR. HUNT:  And then Interrogatory

6              No. 2 also relates to that.  We asked them

7              for the dates and amounts of any transfers

8              received by the partnership, whether the

9              person was a partner, and state whether that

10             person received any portion of the transfers.

11             They respond by telling us who the partners

12             are.

13                     MS. CHAITMAN:  Again, I think that

14             that's precisely -- that runs afoul of the

15             mandate from the Supreme Court on down that

16             they're seeking discovery to frame a

17             complaint against a subsequent transferee.

18                     MR. HUNT:  I can tell you one thing is

19             certain -- and we've been accused about this

20             repeatedly, and it's not true, and that is

21             that we're using this discovery to form a

22             complaint against someone else.  That is not

23             true.

24                     What we're trying to do is find out

25             where the money went so we can trace it, and

Page 47

1        that's all we're trying to do.

2              THE ARBITRATOR:  But as I understand

3        case law regarding pleading and the case law

4        that relates to who in a partnership is

5        liable for the debts, and I'm using that in

6        the generic way of the partnership, it's the

7        general partner only.  So I'm inclined to

8        reserve decision on Interrogatory No. 2.

9        Let's wait and see what happens with respect

10       to Interrogatory No. 1.

11             It may be that, at a later date, I

12       grant that request or other requests relating

13       to transfers, but I think we need to see is

14       there a real partnership.

15             MR. HUNT:  I agree with you.

16             THE ARBITRATOR:  If it's got a binder

17       of documents reflecting meetings of the

18       partnership and the like, it's a very

19       different animal than if it's an investment

20       club.

21             MR. HUNT:  I agree with you.  I think

22       that's a great resolution of that

23       Interrogatory No. 2.

24             THE ARBITRATOR:  Okay.

25             MR. HUNT:  Interrogatory No. 3 we

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 48

1          asked for reasons for each transfer.  And

2          they simply say they're not able to do so.

3          Someone, the general partner or someone,

4          requested this transfer and we want to know

5          why and what was the intent of the use of the

6          money.

7               THE ARBITRATOR:  Well, again, let's

8          see who the general partner is because I

9          probably -- assuming there is a general

10         partner, that it has some formality, I

11         probably would require the general partner to

12         answer that question, but not the other

13         partners.  So --

14              MS. CHAITMAN:  Why would that be

15         anything other than discovery to frame a

16         complaint?

17              THE ARBITRATOR:  Well --

18              MS. CHAITMAN:  Because, again, if the

19         account -- we're not disputing that the

20         account holder took the money.  So now you're

21         going to the next generation of transfers.

22              THE ARBITRATOR:  Well, I don't know

23         which defenses you asserted with respect to

24         partnership, but potentially it could impact

25         some of your affirmative defenses.  But to be

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 49

1           clear, I'm not ruling that that is the way I

2           would rule.

3                   MR. HUNT:  I'm comfortable with you

4           deferring a ruling on that pending obtaining

5           some additional documents and information

6           about this entity, whatever it is.

7                   THE ARBITRATOR:  Train Klan also

8           raises the question -- and I'm jumping ahead

9           and perhaps out of the order -- the trustee

10          wanted to raise issues, but there's -- in

11          response to "Identify each deposit into the

12          account" is the answer "Responding parties do

13          not dispute the deposits and withdrawals

14          shown on Exhibit B," but then there's the

15          caveat about "The records are permeated with

16          fraud, no records exists before 1998, so

17          trustee has no competent evidence of any

18          activity in the account prior to

19          December 1998," although this speaks to what

20          I was talking about about boilerplate used by

21          both sides.

22                  As I understand what I was told, this

23          account didn't exist before 2003, so it

24          doesn't much matter what happened in 1998.

25          But let me not jump ahead and --

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                              Page 50

 1                    MR. HUNT:  I think that's exactly the
 2          next place I was going as well, was
 3          Interrogatory No. 5.
 4                    THE ARBITRATOR:  Okay.
 5                    MR. HUNT:  You know -- and this is
 6          sort of something we see across all of these
 7          responses, which is, they say they don't
 8          dispute, whatever that means, the deposits
 9          and withdrawals shown on Exhibit B.  It seems
10          like what they're not disputing is that the
11          numbers appear on the page.
12                    Because then they go on to say there
13          are all these problems with the numbers and
14          they have affirmative defenses that say we
15          can't prove the deposits and withdrawals.  So
16          anytime you see an answer that's supposed to
17          be some kind of an admission followed by the
18          word "however" and then followed by the word
19          "moreover," it's not.
20                    And so we have the right to ask them
21          to identify each deposit into the account so
22          that we can figure out if they do actually
23          dispute any of them.
24                    THE ARBITRATOR:  Well, what I find
25          particularly confusing, Ms. Chaitman, is, as

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 51

1            to bank records -- third-party bank records,

2            in some of these answers, although that may

3            be moot now, you've said, you're not entitled

4            to it because we don't dispute the deposits

5            and withdrawals on Exhibit B, but then the

6            20th affirmative defense says, "The trustee

7            has fraudulently calculated defendants'

8            liability."  It's hard to square those two

9            responses.

10                MS. CHAITMAN:  Well, I have offered

11            to -- when we concede the accuracy of the

12            deposits and withdrawals, we're agreeing that

13            Exhibit B is accurate.  And that obviously --

14            I'm volunteering that, and obviously that can

15            be enforced against my clients, there's no

16            question about that.

17                However, when we go to trial, the

18            trustee may try to rely upon records of

19            Madoff beyond Exhibit B.  All I'm conceding

20            is that Exhibit B is accurate.  I'm not

21            conceding that Madoff's records are accurate.

22            In fact, Picard's own expert has said that

23            Madoff's records are permeated with fraud.

24                So I'm simply reserving the right to

25            object to other records.  I'm not contesting

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 52

1          the accuracy of Exhibit B.

2                    MR. HUNT:  That's not accurate.

3                    THE ARBITRATOR:  Pull up Exhibit B.  I

4          don't have the Train Klan --

5                    MR. HUNT:  I've got it right here.

6                    THE ARBITRATOR:  But I've -- really

7          for these purposes, it's only the columns.

8          There were a number of ways in which one

9          could interpret your response, one of which

10         is, for the two-year period at issue, we

11         don't dispute the deposits and withdrawals.

12                   Another is that we don't dispute

13         Columns 1 through 10, which takes you through

14         the two-year fraudulent transfer calculation.

15         As I understand it, the six-year fraudulent

16         conveyance calculation is basically

17         irrelevant --

18                   MR. HUNT:  That's correct.

19                   THE ARBITRATOR:  -- as to everybody

20         we're going to be talking about today.

21                   MR. HUNT:  That's correct.

22                   THE ARBITRATOR:  So is it that you're

23         agreeing with Columns 1 through 10?

24                   MS. CHAITMAN:  We're agreeing with the

25         deposits and withdrawals, which are Column 4

TA121

Page 53

1      and 5.

2              THE ARBITRATOR:  Right.  Another way

3      of saying that is you're agreeing with the

4      net equity calculation; is that --

5              MS. CHAITMAN:  Well, we're agreeing --

6      we contest the --

7              THE ARBITRATOR:  Column 5 gives you at

8      the bottom a net equity number.

9              MS. CHAITMAN:  Right.  We're agreeing

10     with -- we're agreeing that the cash deposits

11     are accurately reflected in Column 4 and the

12     cash withdrawals are accurately reflected in

13     Column 5.

14             We're not agreeing -- we're not

15     agreeing as to the trustee's calculation of

16     principal because we don't agree that in

17     the -- in these cases, the trustee is allowed

18     to recover.

19             THE ARBITRATOR:  Okay.

20             MS. CHAITMAN:  So -- you know, that's

21     why I tried to be very specific.  We're

22     agreeing to the deposits and withdrawals.

23             THE ARBITRATOR:  Just to be clear,

24     using Train Klan, it shows a negative number

25     of $1,442,181 because more money was taken

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 54

```
 1          out than was put in.
 2                    MS. CHAITMAN:  Correct.
 3                    THE ARBITRATOR:  And you're not
 4          disputing that.
 5                    MS. CHAITMAN:  The math, correct.  Or
 6          the deposits and withdrawals.
 7                    But, again, I have the reservation
 8          because there are a lot of other books and
 9          records that may become relevant.  And I
10          don't want to come to trial and find out that
11          I've conceded the accuracy of all of Madoff's
12          records, because I haven't.
13                    THE ARBITRATOR:  Well -- and by
14          agreeing with 4 and 5, you're also agreeing
15          with 1 through 3, the dates and --
16                    MS. CHAITMAN:  Well, yes.  But in this
17          particular instance, we are, but in some,
18          there are inter-account transfers.  And it
19          becomes much more complicated at that point.
20                    THE ARBITRATOR:  Sure.  Let's deal
21          with the purist case first, like Train Klan,
22          where there are no inter-account transfers.
23                    My thought was that rather than
24          getting mired in the interrogatory responses,
25          that this is better handled under the other
```

Page 55

1        alternative that Judge Bernstein suggested at
2        one of his conferences, which is a
3        stipulation.
4              MS. CHAITMAN:  I recall that.  I think
5        that's a good idea.  We had no problem with
6        that.
7              THE ARBITRATOR:  So -- so the
8        stipulation would be that the defendant in
9        question does not dispute the accuracy or
10       completeness of the information in Columns 1
11       through 5 of Exhibit B of the relevant
12       complaint.
13             MS. CHAITMAN:  Well, the easier way to
14       do it I think is 4 and 5.  Because I have
15       to -- in this case, we can do that, but where
16       there are inter-account transfers, we can't.
17             THE ARBITRATOR:  And I'm just trying
18       to deal with the pure case.
19             MS. CHAITMAN:  In this case, we can do
20       that.
21             THE ARBITRATOR:  The reason I said 1
22       through 5 is because it's also relevant what
23       the two-year look-back period is.  So the
24       dates are important; correct?
25             MS. CHAITMAN:  Right.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 56

1          THE ARBITRATOR:  So you don't have a
2      problem with what I just said --
3          MS. CHAITMAN:  That's what --
4          THE ARBITRATOR:  -- in actions where
5      there are no complicating factors, whether
6      it's inter-account transfers or -- I know one
7      of the defendants said, I was not being
8      credited or I was being charged with two
9      $25,000 -- I can't remember if it was deposit
10      or withdrawal, it was probably withdrawal --
11      that was double counted.  Obviously there may
12      be glitches like that.  But for somebody who
13      doesn't have inter-account transfers, that
14      stipulation works?
15          MS. CHAITMAN:  Yes.
16          THE ARBITRATOR:  Okay.  It seems to me
17      that that eliminates a lot of the concerns
18      about the interrogatory responses.
19          MR. HUNT:  Yes.  So I think what that
20      means then is that, you know --
21          THE ARBITRATOR:  And let me modify
22      what I just said on the fly and say it should
23      have the words in there "at trial."  So at
24      trial, the defendant will not challenge what
25      I had said earlier.

Page 57

1                    MR. HUNT:  I would agree with that.

2                    And what that effectively means then

3         is that she would be withdrawing, for

4         example, the 20th affirmative defense.

5                    MS. CHAITMAN:  What's the 20th

6         affirmative defense?

7                    MR. HUNT:  "Trustee has fraudulently

8         calculated defendants' liability by charging

9         defendants with withdrawals that the trustee

10        has no proof were taken."

11                   MS. CHAITMAN:  In this case, I would,

12        yes.

13                   THE ARBITRATOR:  Well, in any case

14        where --

15                   MS. CHAITMAN:  Where I stipulate.

16                   THE ARBITRATOR:  -- you enter into

17        that stipulation, the 20th defense takes a

18        nose dive.

19                   MS. CHAITMAN:  Right.

20                   MR. HUNT:  Okay.

21                   THE ARBITRATOR:  And I think that

22        obviates problems.  It also -- even if there

23        were inconsistent interrogatory responses or

24        affirmative defenses, they go out the window

25        because the stipulation controls.

Page 58

1           MR. HUNT:  Right.

2           So just to be clear then, that

3    stipulation is now on the record here.  So

4    we're not going to spend time drafting

5    something with her.  Because we've tried this

6    for a long time in the past.

7           THE ARBITRATOR:  Well, once we get the

8    transcript of this, and I'd ask that the

9    trustee have it expedited, my order will say

10   what I just said, with the modification that

11   I just described.  If either side thinks it

12   needs more or fewer words, you can let me

13   know that in a few days.

14          And I may or may not modify my order,

15   but ultimately there will be an order saying,

16   if Ms. Chaitman's clients stipulate to X,

17   they need not modify particular interrogatory

18   responses.

19          MR. HUNT:  Okay.

20          THE ARBITRATOR:  And -- and while

21   we're talking about that, to the extent that

22   her interrogatory responses or the

23   stipulation withdraw particular affirmative

24   defenses, I'm not sure much is accomplished

25   by requiring Ms. Chaitman to file an amended

Page 59

1      answer.

2              MR. HUNT:  I agree.  I think what I'd

3      like to do is get it on the record that

4      they're withdrawn.  Because you can withdraw

5      them and you can always reinstate them, but

6      if there's an order and agreement they're not

7      going to --

8              THE ARBITRATOR:  If there's a

9      stipulation --

10             MR. HUNT:  I agree.

11             MS. CHAITMAN:  If it's a stipulation

12     as to certain facts.  I think we have to be

13     careful because we do -- again, this is -- if

14     we're specifically talking about Train Klan,

15     it's fine, but there are issues about

16     fraudulent calculations that are earlier in

17     time.

18             So we're not going to -- I may

19     stipulate in a case, but I'm not going to

20     withdraw some of the affirmative defenses.

21     In other words, obviously if we stipulate

22     that the deposits and withdrawals were made,

23     that's binding.  But that doesn't mean

24     that --

25             THE ARBITRATOR:  Let's take two cases,

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 60

1          one in which there are pre -- what was it,

2          1998?

3                    MS. CHAITMAN:   December 1998 is when

4          we have third-party bank records.

5                    THE ARBITRATOR:   So one in which there

6          are records going back to the early '80s or

7          Exhibit B reflects information going back to

8          the early '80s.  The second scenario, an

9          account with inter-account transfers.  Let's

10         deal with the second of those first.

11                   I suppose -- well -- and they may be

12         the same issue because it may be that the

13         transferor account predates the time period

14         where you have -- where there are records and

15         that gives rise to the concerns.  But I think

16         we're all in agreement that in cases where

17         the stipulation is entered into, that solves

18         the problem.

19                   So let me turn to you, Ms. Chaitman,

20         and say, where have you said, if anywhere,

21         you don't dispute Exhibit B, but you still

22         want to rely on the "however" and "moreover"

23         language?

24                   MS. CHAITMAN:   Well, as you can

25         appreciate, Judge, some of these accounts

Page 61

1          date back to 1980.

2                    THE ARBITRATOR:  Right.

3                    MS. CHAITMAN:  And nobody has the

4          records, nobody has a recollection, the

5          people who owned the accounts may not be

6          alive.  So -- and the trustee's position is

7          that the fraud existed from inception and

8          that the records are permeated with fraud.

9                    And in fact, we've made a motion now

10         before Judge Bernstein in the profit

11         withdrawal litigation barring the admission

12         of Madoff's books and records because they

13         don't come with any of the business record

14         exceptions.

15                    THE ARBITRATOR:  I guess the trustee's

16         position is that the records accurately

17         reflect a fraud.  So to the extent that

18         there's language about permeated with or -- I

19         know there was parallel language, perhaps,

20         but they're arguing that all the trading from

21         the beginning of time was fictitious.

22                    You're contending that, based on

23         Madoff and his colleague, some of the trading

24         may have been real and that, therefore, the

25         Ponzi presumption doesn't apply to the later

Page 62

1       date.

2               Are there cases in which, because of

3       the age of the relationship with Madoff's

4       business or because of inter-account

5       transfers, you have the language that you

6       don't dispute the deposits and withdrawals on

7       Exhibit B, but are still contesting the

8       admissibility of the records?

9               MS. CHAITMAN:  Yes.  We -- we contest

10      the admissibility of Madoff's records for any

11      period when there aren't third-party bank

12      records.  And --

13              THE ARBITRATOR:  So that's 1998

14      backward?

15              MS. CHAITMAN:  December 1998, yes.

16              And there may be instances where we

17      would concede the accuracy of Exhibit B from

18      a certain point on, but not before.  So I

19      think it would be -- it would be difficult

20      for me to agree that, in every instance in

21      which I can stipulate as to certain deposits

22      and withdrawals, I can also stipulate that

23      the affirmative defense that the records are

24      fraudulent is taken out.  I can't do that

25      because I -- I think that Madoff's records

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 63

1          will not be admitted.  I think they are not

2          admissible.

3                    THE ARBITRATOR:  Once you stipulate to

4          it --

5                    MS. CHAITMAN:  But only for a certain

6          period.  I'm not stipulating for the whole

7          period.  In other words, we can take it case

8          by case, but --

9                    THE ARBITRATOR:  If we look at the two

10         other defendants that are part of the

11         trustee's motion, does that shed light on

12         this?

13                   MS. CHAITMAN:  No, because in these

14         three cases, we have conceded the accuracy of

15         Exhibit B from inception.

16                   THE ARBITRATOR:  Okay.  I'm open to

17         suggestions as to how to proceed.

18                   MR. HUNT:  Yeah, I hear exactly what

19         you're saying.

20                   So just to be clear then, on Train

21         Klan, taking it one at a time, the defendants

22         are going to stipulate that all of the

23         transactions that are listed in Exhibit B,

24         Columns 1 through 5, accurately reflect the

25         transactions that took place in this account.

Page 64

 1            THE ARBITRATOR:  And will not be

 2       contested at trial.

 3            MR. HUNT:  And so with respect to

 4       Interrogatory No. 5 then, we asked them to

 5       identify each deposit.  And by that we also

 6       need to know who received the deposit.  So

 7       Exhibit B by itself does not answer that

 8       question.

 9            So I'd like at least an answer as to

10       whether or not the deposit was given to Train

11       Klan or not; right?

12            THE ARBITRATOR:  Well, deposits --

13            MR. HUNT:  Or the withdrawals.  Sorry.

14       The deposit's been made by Train Klan.  So

15       for each deposit, did Train Klan make the

16       deposit?  And then, similarly, with respect

17       to each withdrawal, who got the withdrawal,

18       if Train Klan got the withdrawal.

19            MS. CHAITMAN:  Well, you see, that's

20       exactly the subsequent transferee discovery

21       that the trustee is not permitted to take.

22            MR. HUNT:  We need to know --

23            MS. CHAITMAN:  You can't --

24            MR. HUNT:  We have a right to know

25       who -- if the -- who the initial transferee

Page 65

1          is.  We have a right to know that.

2                    MS. CHAITMAN:  The initial transferee

3          is the account holder.

4                    THE ARBITRATOR:  I was about to say

5          maybe the stipulation needs some

6          supplementation to say, and does not dispute

7          that the account holder received the

8          withdrawal reflected in Column 5.  That may,

9          in a particular circumstance, be inaccurate.

10          It may be that, rather than somebody getting

11          a check payable to themselves, it was to

12          their Bar Mitzvah caterer, but it solves your

13          problem and eliminates the need to respond to

14          that interrogatory.

15                    MR. HUNT:  I agree with that.

16                    THE ARBITRATOR:  Does that work for

17          you?

18                    MS. CHAITMAN:  You're asking us to

19          stipulate that the money was deposited into

20          the account holder's account?

21                    THE ARBITRATOR:  Or that you're not

22          disputing -- at trial, you will not dispute

23          that that's the fact.

24                    MS. CHAITMAN:  So the money was

25          deposited into the account holder's account.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 66

1          Yes, I have no problem with that.

2               I don't think that that's what Dean

3     was driving at.  I think he's asking --

4               Dean, correct me if I'm

5     misunderstanding you.  I thought you wanted

6     to know, once it went into the account

7     holder's account, where did it go from there?

8               MR. HUNT:  I need to know who got the

9     initial transfer.  That's all we need to

10    know.  So if it is true that each withdrawal

11    was deposited into Train Klan's bank account,

12    then that's what the stipulation should say.

13    If the -- if it was deposited into some other

14    account, we need to know that.

15              MS. CHAITMAN:  And why would that --

16    why would you be -- see, again, let's

17    assume -- and I don't know the fact.  Let's

18    assume that it was deposited into one of the

19    partners' accounts.  That partner then would

20    be a subsequent transferee.  Why would --

21              THE ARBITRATOR:  No, not if it's a

22    general partner.

23              MS. CHAITMAN:  Okay.

24              THE ARBITRATOR:  But it really doesn't

25    matter to my mind, dealing with Train Klan

Page 67

```
 1          specifically, whether the check was cut to

 2          the partnership, to the general partner or

 3          even to a limited partner, who the trustee

 4          might view as a subsequent transferor.

 5               In any of those circumstances, the

 6          partnership and the general partner are on

 7          the hook for whatever the legal consequences

 8          of the transaction are.

 9               MR. HUNT:  Assuming it's a

10          partnership.

11               THE ARBITRATOR:  Assuming it's a

12          partnership, yes.

13               So maybe -- maybe we have to see how

14          many of the cases this resolution solves the

15          problem for.

16               Do you have any sense, Ms. Chaitman,

17          as to how many of your cases involve

18          transferor accounts where money's transferred

19          from Account A to Account B as part of the

20          Exhibit B calculation?

21               MS. CHAITMAN:  Well, I'm not following

22          you.  Because each account holder had a bank

23          account and --

24               THE ARBITRATOR:  I'm not talking about

25          bank accounts.  I'm talking about the
```

Page 68

```
 1          Madoff -- well, let me phrase it a different
 2     way.
 3          Do you know how many of the Exhibit Bs
 4     in terms of deposits implicate earlier
 5     accounts which are transferor accounts and,
 6     therefore, to your mind, complicate the
 7     accounting and what you can stipulate to?
 8          MR. JACOBS:  I think, your Honor,
 9     you're referring to inter-account transfers.
10          THE ARBITRATOR:  Yes.
11          MR. JACOBS:  So how many cases
12     implicated inter-account transfers?
13          THE ARBITRATOR:  Yes.
14          MS. CHAITMAN:  I haven't counted them,
15     but a lot.
16          MR. JACOBS:  I haven't counted either,
17     but there's a good portion.  I would say at
18     least roughly half.
19          THE ARBITRATOR:  Okay.
20          MS. CHAITMAN:  But not -- I don't
21     believe any of the three that we're talking
22     about; Benjamin, DiGiulian or Train Klan.
23          THE ARBITRATOR:  Right.  Well, I guess
24     then the question is, even though it's not
25     before me today, should we deal with what, if
```

Page 69

```
 1        anything, can be stipulated to with regard to
 2        those other accounts?  I'm content to leave
 3        that for another day.  You tell me.
 4             MS. CHAITMAN:  You know, Judge, we
 5        have so many things before us.  And I just
 6        think we'd be doing it in the abstract.
 7             THE ARBITRATOR:  Okay.
 8             MR. JACOBS:  Our position, your Honor,
 9        is we provided voluminous documentation as to
10        all of our claims, whether there are bank
11        records or not.  And many of the factual
12        issues are in, uniquely, the possession of
13        the defendants.
14             And no matter what period of time
15        they're from, the defendants have an
16        obligation to have preserved those records
17        when they were on notice of the litigation.
18        And they have an obligation to do their own
19        investigation as to the factual circumstances
20        of our Exhibit B, regardless of the period of
21        time.
22             And they should be required to answer
23        our discovery as to their position as to each
24        deposit and withdrawal and our net equity
25        calculation whether there was an
```

Page 70

1          inter-account transfer or not.

2                  THE ARBITRATOR:  But it's not before

3          me today, so let's move on to whatever it is

4          Mr. Hunt next wants to talk about.

5                  MR. JACOBS:  Okay.

6                  MR. HUNT:  I think we have

7          Interrogatory No. 5 pretty well nailed down.

8                  THE ARBITRATOR:  Thank you.

9                  MR. HUNT:  For Interrogatory No. 6, we

10         asked them to identify people with knowledge.

11         Other than the BLMIS people, we didn't get a

12         single person.  And we didn't get that in the

13         initial disclosures either.  So there must be

14         someone we can talk to about this account.

15                 THE ARBITRATOR:  Yes, I agree.  That

16         has to be -- you don't even say the account

17         holder, assuming that person is alive and not

18         an entity, has knowledge.  And those answers

19         clearly are deficient to my mind.

20                 MS. CHAITMAN:  Okay.

21                 MR. HUNT:  Interrogatory No. 7, I

22         think I would like to withhold that one

23         because it falls into this whole category

24         of --

25                 THE ARBITRATOR:  Indirect.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 71

1              MR. HUNT:  Yes.  But I would just

2        point out that, with respect to Interrogatory

3        No. 7, when we asked them what entity

4        received the funds withdrawn from the

5        account, they say they're unable to do so.

6        That, of course, can't be true.  Someone --

7              THE ARBITRATOR:  It's going to get

8        solved by the stipulation.

9              MR. HUNT:  I think that's right, for

10       the most part.

11             Just going back down my list based on

12       the stipulation to see.

13             Interrogatory No. 10 --

14             MS. CHAITMAN:  If I can just

15       interject, you know, for the period from

16       December 1998 on, the trustee has the front

17       and back of every check.  So the trustee has

18       that information.  The clients in general

19       don't have records going back that far.  The

20       trustee has those records.  So he doesn't

21       need me to --

22             THE ARBITRATOR:  Well, again, it's

23       solved by the stipulation, which may be in

24       some instances wrong, using my Bar Mitzvah

25       example.  But if you stipulated that the

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 72

1         account holder got the initial check, that

2         solves the problem.

3              MS. CHAITMAN:  Right, but the trustee

4         has those records.

5              THE ARBITRATOR:  I understand that.

6              You were talking, Mr. Hunt, about

7         number 10.

8              MR. HUNT:  I think I'll go ahead and

9         pass on 10 at this point in time.

10             THE ARBITRATOR:  I was about to say

11        10 -- just so you understand what we're

12        talking about, Ms. Chaitman -- deals with

13        where have you banked.

14             But it seems to me your entitlement to

15        that information goes out the window with the

16        stipulation.

17             MR. HUNT:  It's a narrow window, but I

18        would agree with you on that.

19             With respect to Interrogatory No. 13,

20        they say they're withdrawing that defense.

21        I'd just like the order to reflect that is,

22        in fact, the case so it doesn't come up again

23        at trial.  This has to do with the setoff --

24             THE ARBITRATOR:  Why don't I simply

25        say that any affirmative defenses that are

Page 73

1          withdrawn may not be reasserted at trial.

2                    MR. HUNT:  Okay.  That's fine.

3                    MS. CHAITMAN:  Yes.

4                    MR. HUNT:  That are withdrawn in this

5          set of interrogatories.

6                    THE ARBITRATOR:  I can make it more

7          generic.  Any affirmative defenses that are

8          withdrawn, whether it's in these three cases

9          or --

10                   MR. HUNT:  Or in a letter that they

11         sent us or whatever?

12                   THE ARBITRATOR:  Sure.

13                   MR. HUNT:  Okay.  So in this

14         particular one then, Interrogatory No. 14, I

15         think they have withdrawn that affirmative

16         defense.

17                   THE ARBITRATOR:  Right.

18                   MR. HUNT:  Correct?

19                   MS. CHAITMAN:  Yes.

20                   MR. HUNT:  Interrogatory No. 15, I

21         think they've withdrawn that affirmative

22         defense; correct?

23                   MS. CHAITMAN:  Which one is that?

24                   MR. HUNT:  "Trustee's claims are

25         barred, in whole or in part, for failure to

Page 74

1          properly credit inter-account transfers,

2          profit withdrawals and other adjustments."

3               MS. CHAITMAN:  This was --

4               THE ARBITRATOR:  I don't think they

5          have, if I'm looking at the right paperwork.

6          It says, "The trustee has admitted that

7          Madoff's records are permeated with fraud,

8          therefore, they cannot possibly be reliable

9          and/or admissible."

10              You're saying, based on the stip --

11              MR. HUNT:  Yes, I think based on the

12         stipulation, they've withdrawn that

13         affirmative defense.

14              MS. CHAITMAN:  No, because it's only

15         as to the specific deposits and withdrawals.

16         You know, I'm not waiving the right to object

17         to the admission of other records that the

18         trustee may seek to put into evidence at

19         trial.

20              THE ARBITRATOR:  And this is an

21         example of the boilerplate because it talks

22         about inter-account transfers, but there are

23         no inter-account transfers in Train Klan.

24              MR. HUNT:  There are no profit

25         withdrawals and no adjustments.  So it seems

Trustees Motion to Compel Discovery                 Arbitration 12/13/2016

Page 75

1           either they need to withdraw the defense or

2           answer the interrogatory.

3                   THE ARBITRATOR:  Unless you can tell

4           me why that's wrong, Ms. Chaitman, I'm

5           inclined to agree with that.

6                   MS. CHAITMAN:  Well, I'd like to think

7           about that.  Because I don't want to waive

8           the right to object to the admission of

9           evidence at trial that is unreliable and -- I

10          don't want to have a blanket waiver.  I can

11          reword that affirmative defense, but I don't

12          want to waive that.

13                  THE ARBITRATOR:  Well, unless you

14          convince me otherwise, I do think that the

15          stipulation, as a practical matter, means

16          that Judge Bernstein won't hear argument as

17          to anything that relates to Columns 1 through

18          5 of Exhibit B.

19                  And, conceivably, since there would be

20          a lot of these trials, he may not hear

21          evidence from the trustee about it either.  I

22          suppose there are experts whom the trustee

23          contemplates offering as to the accuracy of

24          the records, but I can envision a scenario

25          where Judge Bernstein says, I don't need to

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 76

1           hear that because I have the stipulation, and

2           you move on from there.

3                   MR. HUNT:  As long as the affirmative

4           defense is in place, the stipulation's not

5           fully effectuated.  Because she claims that

6           there are some -- something to do with the

7           account that she disagrees with because

8           they're not properly credited to the account.

9                   So -- I mean, I know you don't have it

10          in front of you, Ms. Chaitman, but it's clear

11          that this particular affirmative defense

12          is -- directly relates to the stipulation

13          that we just made.

14                  THE ARBITRATOR:  It's the 27th;

15          correct?

16                  MR. HUNT:  Yes, sir.

17                  THE ARBITRATOR:  Here.  Let me show it

18          to you.

19                  MS. CHAITMAN:  Thanks.  I didn't bring

20          my binder.

21                  THE ARBITRATOR:  It continues on the

22          other side.

23                  (Pause from the record.)

24                  MS. CHAITMAN:  Okay.  I would agree

25          that that is out.

Trustees Motion to Compel Discovery                   Arbitration 12/13/2016

Page 77

1               MR. HUNT:  Okay.  So Interrogatory

2         No. 16, they've withdrawn that affirmative

3         defense, so that's good.

4               Interrogatory No. 17, again, I think

5         based on the stipulation that we've just

6         received, that that is an example of one of

7         the defenses that would be withdrawn.

8         Because she says that we failed to properly

9         credit defendants with all of defendants'

10        deposits.

11              MS. CHAITMAN:  I agree about that.

12              MR. HUNT:  Okay.  Just to be clear,

13        the 46th affirmative defense is withdrawn;

14        correct?

15              MS. CHAITMAN:  Yes.

16              MR. HUNT:  Okay.  Interrogatory

17        No. 18, we ask for parties who have knowledge

18        of the deposits and possess documents.

19              THE ARBITRATOR:  Wouldn't that become

20        irrelevant by virtue of the stipulation?

21              MR. HUNT:  Maybe.  How about we

22        withhold on that, see what we get back from

23        them with respect to the answer to the

24        interrogatory, whether they identify a person

25        with knowledge.

TA146

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 78

1              MS. CHAITMAN:  The point is, if we're

2       conceding it, why would you need to take

3       discovery?  What's the benefit of conceding

4       if we're going to then have discovery on it?

5              MR. HUNT:  There's still affirmative

6       defenses pled.

7              MS. CHAITMAN:  We just waived the

8       specific affirmative defense.

9              THE ARBITRATOR:  That's a different

10      issue.  It may be that there are narrower

11      areas where a deposition or other discovery

12      could be taken, but let's not deal with that

13      in the abstract.

14             MR. HUNT:  So I mean, I think

15      identifying persons with knowledge is -- and

16      who have documents is perfectly acceptable

17      discovery.  We have the right to know who we

18      might be faced with at trial.

19             THE ARBITRATOR:  Except you asked for

20      information concerning any transfers,

21      deposits or subsequent transfers.

22             MR. HUNT:  And I agree that's not part

23      of the deal.  I withdraw that.

24             THE ARBITRATOR:  But I think that's

25      answered adequately by Interrogatory No. 6,

Page 79

1        which is "Identify any person with knowledge

2        of any transfer" --

3                MR. HUNT:  You and I are on the same

4        page with that.  That's exactly what I was

5        saying.  I would withhold asking for any more

6        information about this depending on the

7        quality of the information we get with

8        respect to Interrogatory No. 6.

9                THE ARBITRATOR:  Okay.

10               MR. HUNT:  That concludes the reading

11       for today with respect to these

12       interrogatories.

13               THE ARBITRATOR:  Okay.  With respect

14       to Train Klan.  Don't make it sound better

15       than it is.

16               MR. HUNT:  That's why I put the caveat

17       in there at the end.  So we also have

18       document requests for Train Klan.  Maybe we

19       could take a short break and let me look at

20       this based on the stipulation --

21               THE ARBITRATOR:  Sure.

22               MR. HUNT:  -- see if there's some --

23       we can streamline this a little bit.

24               THE ARBITRATOR:  Absolutely.  I'm sure

25       we'd all be in favor of that.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 80

1              (Recess from the record.)

2              THE ARBITRATOR:  What's next,

3    Mr. Hunt?

4              MR. HUNT:  The document request in the

5    Train Klan matter, we took a short break and

6    I think we've eliminated the need for a

7    number of these, but I do want to go through

8    a few of them.

9              THE ARBITRATOR:  Sure.

10             MR. HUNT:  Some of them I think you

11   sort of already ruled on, but just to be

12   clear.

13             Document Request No. 1 asks for

14   organizational documents relating to the

15   partnership agreements or document with

16   equivalent function of partnership agreement

17   and any amendments to those agreements.

18             I think you've already ruled that

19   we'll get those; correct?

20             THE ARBITRATOR:  Well, let me phrase

21   it this way:  I made a ruling with respect to

22   it, and my order will correspond to my

23   ruling.

24             MR. HUNT:  Okay.

25             THE ARBITRATOR:  So I think I dealt

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 81

1        with it.

2                MS. CHAITMAN:  Yeah, let's not repeat

3        the --

4                THE ARBITRATOR:  Right.

5                MS. CHAITMAN:  Because we're going to

6        rely on the transcript.

7                MR. HUNT:  I just want to make it

8        clear.

9                Document Request No. 3 talks about

10       minutes of partnership meetings, resolutions,

11       agreements and policies concerning the

12       account, which I think falls into that

13       similar category.  I would withdraw that.

14               THE ARBITRATOR:  In effect, I'm

15       disallowing that one for the time being

16       except to the extent that it falls within

17       what I described earlier.

18               MR. HUNT:  Falls within what?  Just to

19       make clear.

20               THE ARBITRATOR:  My ruling with

21       respect to the documents you get with respect

22       to the partnership, assuming there are such

23       documents.  But if they were, for example,

24       investment policies, I'm denying that request

25       and the other elements of this without

Page 82

1          prejudice to a later application.

2               MR. HUNT:  I agree with that.  That's

3          fine.

4               And then Document Request No. 4,

5          taking out the word "and limited," we are

6          looking for all general partners, current and

7          former.

8               THE ARBITRATOR:  I think 4 is

9          virtually what my ruling was because it says,

10         Ms. Chaitman -- well, it says, "all

11         documents."  I would take out "all" and say

12         "documents sufficient to show all general

13         partners of the partnership."

14              MR. HUNT:  It actually says that, "all

15         documents sufficient to show."

16              THE ARBITRATOR:  I'm taking out the

17         word "all."

18              MS. CHAITMAN:  So if there's one

19         document --

20              THE ARBITRATOR:  Let's assume this

21         was -- and it's not, but let's assume this

22         was Baker & Hostetler, assuming it's a

23         partnership.  I would not be allowing all

24         documents sufficient to show who the partners

25         are, but just some documents sufficient to

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 83

1        show --
2               MR. HUNT:  I absolutely agree with
3        that and acknowledge it.
4               The next one is Document Request
5        No. 9, documents sufficient to identify any
6        money, property or anything else of value
7        provided by you to BLMIS in exchange for any
8        initial transfer.
9               They say we have no legitimate
10       interest in any such documents.  First of
11       all, we're asking about initial transfers.
12              And, second, with respect to the
13       affirmative defenses, they have Affirmative
14       Defense No. 3, which says that the defendants
15       gave reasonably equivalent value in exchange
16       for the transfers, and Affirmative Defense
17       No. 4, which relates to the antecedent debt
18       defense.
19              So as long as those defenses are still
20       pled and the issue of value given with
21       respect to the initial transfers is still an
22       issue, then we have a right to receive those
23       documents.
24              MS. CHAITMAN:  Well, if I'm
25       stipulating to the deposits, I don't

Page 84

```
 1          understand why we have to produce them.

 2          What's the point of stipulating to them?

 3                  THE ARBITRATOR:  Is there a difference

 4          between initial transfer and initial

 5          deposits?

 6                  MR. HUNT:  The initial transfer is the

 7          withdrawal.  It can be the withdrawal.  So

 8          they're saying that they gave value for the

 9          withdrawals.  That's how I read their

10          affirmative defense, unless it says something

11          different.  I mean, either they withdraw

12          those affirmative defenses or produce the

13          documents related to them.

14                  MS. CHAITMAN:  The document related to

15          the withdrawal is the check from Madoff,

16          which the trustee has.  We're stipulating

17          that we got those withdrawals.

18                  MR. HUNT:  I know that you don't have

19          the document in front of you, but the defense

20          that you assert is that the defendants gave

21          value to BLMIS in exchange for the

22          withdrawal.  So --

23                  MS. CHAITMAN:  Yeah, and I'm not

24          waiving that.  That's 548(c).

25                  MR. HUNT:  We want to know what value
```

Page 85

1           they gave.

2                   MS. CHAITMAN:  That's -- the value is

3           they gave the money.  I'm not waiving an

4           affirmative defense which exists under the

5           statute.

6                   THE ARBITRATOR:  And I think I agree

7           with Ms. Chaitman.  I just want to see where

8           the definition of initial transfer is.

9                   MR. JACOBS:  That defense has also

10          been dismissed by Judge Bernstein.  So it's

11          not applicable any longer to the case.

12                  MS. CHAITMAN:  It is on appeal and I'm

13          not waiving it.

14                  MR. JACOBS:  But it's not currently

15          applicable in the case.

16                  THE ARBITRATOR:  Well, then let me

17          interrupt you for a second and say, why are

18          we talking about it?

19                  MR. JACOBS:  We're talking about it

20          because I think we have a right to know if

21          there's another basis of value that's being

22          asserted other than just having made deposits

23          into the account.  So was there -- were there

24          other monies provided that aren't reflected

25          in Exhibit B?  Was a car given as a gift to

Page 86

1        Mr. Madoff's grandchildren?  Anything of that

2        sort I think is the point.

3              MR. HUNT:  So if the answer said that

4        the only value that the parties allege is the

5        deposit, then I'm fine with not asking for

6        documents about that.

7              THE ARBITRATOR:  I didn't have the

8        presence of mind to write down what the

9        stipulation as modified was, but it certainly

10       talked about will not challenge the

11       correctness.  If we add the word

12       "completeness" in there, so that Ms. Chaitman

13       will not, on behalf of her clients, where

14       applicable, challenge the completeness of

15       Columns 1 through 5 of Exhibit B, seems to me

16       that would obviate your concern and I think

17       is already implicit in what --

18             MS. CHAITMAN:  I agree.

19             THE ARBITRATOR:  -- you said.

20             MS. CHAITMAN:  I agree.

21             MR. HUNT:  I agree.

22             THE ARBITRATOR:  Okay.  So --

23             MR. HUNT:  Thank you.

24             THE ARBITRATOR:  Okay.

25             MR. HUNT:  So the next one that comes

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 87

1        up is Request No. 13 as it relates to

2        affirmative defenses asserted in defendants'

3        answer to the complaint.  They say that such

4        documents will be produced.  Modifying this

5        request to say any of the affirmative

6        defenses that have not been withdrawn, we

7        would like them to go ahead and produce the

8        documents.

9                THE ARBITRATOR:  I'm lost.  You were

10       talking about 13.

11               MR. HUNT:  Yes.

12               THE ARBITRATOR:  I'm looking at the

13       partnership responses.  And it's -- 13 says,

14       "The articles of incorporation, memoranda of

15       association" --

16               MR. HUNT:  Okay.  I'm looking at the

17       individual.  So they're slightly different,

18       maybe.

19               THE ARBITRATOR:  Okay.

20               MR. HUNT:  Yeah, there's only two

21       different ones.  One is 12, so that's why the

22       numbering is off a little bit.  So on the

23       partnership, I want --

24               THE ARBITRATOR:  Forgetting the

25       numbering for the moment, is the text the

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 88

```
 1        same?

 2                MR. HUNT:  Yes, sir.

 3                THE ARBITRATOR:  So tell me what it

 4        says and I'll find it in the one I'm looking

 5        at.

 6                MR. HUNT:  "Documents you contend

 7        support any denials of fact or affirmative

 8        defenses asserted in defendants' answer to

 9        the complaint."

10                And their response was, "Any such

11        documents shall be produced."

12                So no documents have been produced.

13        Then modifying this request to say, "any

14        remaining denials of fact or any remaining

15        affirmative defenses," we'd like them to

16        produce the documents.

17                MS. CHAITMAN:  I'm not following you.

18        You're changing the -- the document demand?

19                MR. HUNT:  Yes, I'm clarifying it

20        based upon the stipulation.

21                THE ARBITRATOR:  He's narrowing the

22        demand to say except -- let me rephrase it --

23        except to the extent that you've withdrawn

24        affirmative defenses, produce the documents

25        that support those affirmative defenses.
```

BENDISH REPORTING
877.404.2193

TA157

Trustees Motion to Compel Discovery                  Arbitration 12/13/2016

Page 89

1              MS. CHAITMAN:  But we've --

2              THE ARBITRATOR:  And you've said you

3         will --

4              MS. CHAITMAN:  To the extent that we

5         have them.  And if we haven't produced them,

6         we don't have them, so --

7              THE ARBITRATOR:  Okay.  Then

8         anticipating what Mr. Hunt's going to say, I

9         think that he wants some representation that

10        there are none.

11             MR. HUNT:  Agreed.

12             THE ARBITRATOR:  So maybe I can deal

13        with that with respect to Train Klan.  And

14        recognizing that there are 91 other cases

15        that you have hanging out there, but in Train

16        Klan, and maybe in the two other cases, if I

17        say, shall produce any documents relating to

18        the remaining affirmative defenses in the

19        case within ten days or be barred from using

20        such documents for any purpose --

21             MS. CHAITMAN:  But aren't these

22        documents in our possession?  If we're going

23        to be relying on documents that the trustee

24        has in his possession or that we're obtaining

25        from some third party --

Page 90

1                    THE ARBITRATOR:  Sure.  He's not

2          interested in what he already has.

3                    MS. CHAITMAN:  Right.

4                    THE ARBITRATOR:  It's whatever you

5          have.  So it's essentially a drop-dead date.

6                    MS. CHAITMAN:  I have no problem with

7          that.

8                    THE ARBITRATOR:  Okay.

9                    MS. CARLISLE:  With the caveat on

10         that, within ten days or clearly indicate

11         there are no such documents.

12                   MR. HUNT:  What he's saying is she

13         produces them by whatever or she's barred

14         from ever using them.

15                   THE ARBITRATOR:  Correct.

16                   MS. CHAITMAN:  Unless they're

17         documents that I obtain from a third party or

18         the trustee.

19                   MR. HUNT:  Any third-party documents

20         that you obtain you're supposed to produce to

21         us.

22                   MS. CHAITMAN:  If I haven't received

23         them yet, when I produce them -- I can't

24         produce them in 10 days if I serve a subpoena

25         in 20 days.

Page 91

```
 1                  THE ARBITRATOR:  I --
 2                  MR. HUNT:  I agree with that.
 3                  THE ARBITRATOR:  Again, I'll try and
 4         incorporate those two caveats into my
 5         directive, and I'll make it applicable to all
 6         three of the cases that are the subject of
 7         the motion.
 8                  MR. HUNT:  Okay.  Thank you.
 9                  So the next one is -- I'm looking at
10         the individuals.  I may be off by one.  May
11         be 18 in the one you're looking at.  But it's
12         documents you contend support the 29th
13         affirmative defense in which you contend the
14         complaint fails to state a claim on which
15         relief can be granted because it fails to
16         sufficiently trace the funds at issue from
17         BLMIS to defendants.
18                  I think that --
19                  THE ARBITRATOR:  We don't need to, it
20         seems to me, go affirmative defense by
21         affirmative defense because the ruling
22         applies to whatever affirmative defenses
23         haven't been withdrawn.
24                  MR. HUNT:  That's true.  And I just
25         was going to say, with respect to this one, I
```

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 92

 1           think it's probably one that should be

 2           withdrawn based upon the stipulation.

 3           Because it deals with tracing to the

 4           defendants.  I guess if they haven't

 5           withdrawn it, then we'll get the documents.

 6                   THE ARBITRATOR:  Right.  Okay.  And

 7           implicit in what Ms. Chaitman is saying, at

 8           least as to this one, it sounds like you're

 9           not going to be getting documents because

10           there are none.

11                   MS. CHAITMAN:  We don't have them, but

12           we'll be relying on trustee's documents.

13                   MR. HUNT:  Okay.

14                   THE ARBITRATOR:  Okay.

15                   MR. HUNT:  Document Request No. --

16                   THE ARBITRATOR:  Let me interrupt.

17           When you say you don't have them, I

18           assume you've made a good-faith effort to get

19           from your clients whatever documents they

20           have.

21                   MS. CHAITMAN:  Yes, the clients don't

22           have these records, Judge.

23                   THE ARBITRATOR:  Sure.

24                   MR. HUNT:  I think they do have some

25           of them, but they just haven't produced them.

Trustees Motion to Compel Discovery                      Arbitration 12/13/2016

Page 93

1           Because you say in this that you would

2           produce them, and you haven't produced a

3           single document.  But what I've done --

4                THE ARBITRATOR:  Well, no, it says,

5           "any such documents will be produced," which

6           doesn't say that there aren't documents.  It

7           says if there are documents, they'll be

8           produced.

9                MR. HUNT:  It's sort of slickly

10          drafted, but either you have them and you

11          produce them or you don't.

12               So Document Request No. 23, any

13          documents you've received from any third

14          party --

15               THE ARBITRATOR:  We discussed that.

16               MR. HUNT:  -- she says she will

17          produce them if she has them.

18               I assume you don't have them at this

19          point in time; is that correct?

20               MS. CHAITMAN:  Right.

21               THE ARBITRATOR:  Maybe here I can make

22          a generic ruling again and say, unless

23          otherwise directed, any documents received

24          from third parties will be produced within

25          ten days.

Page 94

1           MS. CHAITMAN:  Yeah.  And if you could
2      make that apply to the trustee as well,
3      Judge, because we've had a real problem with
4      the trustee subpoenaing third-party bank
5      records and waiting six to eight weeks before
6      they're delivered to me.
7           MR. HUNT:  With respect to this case,
8      I don't have any problem with that.  I don't
9      know about the other cases.  But I do know we
10     routinely produce documents back to the
11     parties as soon as we get them.
12          THE ARBITRATOR:  My initial reaction
13     was to make it apply to both sides.  I think
14     the wording needs some tweaking unless I make
15     it specific to these three cases, because, to
16     use one of the other cases I have, if they
17     got documents relevant to Ms. Crupi, which is
18     not your case, they wouldn't have to produce
19     them to you probably unless they relate to
20     your case.  But certainly with regard to
21     these three cases, yes, I will make it apply
22     to both sides.
23          MR. HUNT:  Okay.  And then the last
24     one was the catch-all documents consulted in
25     preparing responses to discovery.  They say

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 95

 1         any such documents will be produced, but we

 2         have not received any documents.

 3              THE ARBITRATOR:  But that falls within

 4         my generic ruling, which is put up or shut up

 5         within ten days.

 6              MR. HUNT:  Okay.  The only issue

 7         there, though, is that gives them the option

 8         of deciding whether or not to give us a

 9         document that might be useful in our case.

10         So I can see how that applies to affirmative

11         defenses where they are going to be precluded

12         from using the documents, but I still think

13         that we have a right to see what evidence or

14         what information they identified in

15         responding to discovery, as a general matter.

16              THE ARBITRATOR:  Except we've carved

17         out certain areas.  If, for example,

18         Ms. Chaitman has file cabinets full of

19         subsequent transfers to third- and

20         fourth-generation transferees, that's not --

21         that may be something she studied at length,

22         which would be responsive to 28, but would

23         not be something you're entitled to based on

24         our discussion thus far this morning.

25              MR. HUNT:  Right.  So her answer said

Page 96

1          that they're going to produce the documents.

2          I'll modify this to say we don't want any

3          subsequent transferee documents or any

4          documents directly related to the

5          transferees.

6                    THE ARBITRATOR:  She just said that

7          she will produce them.  And my ruling has

8          been that any documents she's agreed to be

9          produced must be produced within ten days.

10         So if she has documents to produce, she will

11         produce them within ten days.

12                   MR. HUNT:  Okay.  I'm fine with that.

13                   Great.  That's all I had on that, on

14         Train Klan.

15                   THE ARBITRATOR:  Okay.  Who's next?

16                   MR. HUNT:  Next is DiGiulian.

17                   THE ARBITRATOR:  Okay.

18                   MR. HUNT:  So turning to the

19         interrogatories in DiGiulian, Interrogatory

20         No. 1 says, "Identify the reasons for the

21         transfers."

22                   She says that "Withdrawals were taken

23         to pay applicable taxes, unreported

24         short-term capital gains in the account and

25         for the living expenses of Bruno DiGiulian."

Page 97

```
 1                  They provide no detail about the
 2          applicable taxes that were paid, nor for the
 3          living expenses.
 4                  THE ARBITRATOR:  I guess the answer --
 5          putting aside the interrogatory, but the
 6          answer relates to the defense, which I think
 7          Judge Bernstein has stricken, which is, we're
 8          entitled to a credit for taxes paid.
 9                  Do I have that right, Ms. Chaitman?
10                  MS. CHAITMAN:  I don't believe that he
11          struck it.  I think that, in one case, he's
12          ruled that defendant is not entitled to a
13          credit, but, of course, we've asserted that
14          as an affirmative defense and we're going to
15          take it up.
16                  THE ARBITRATOR:  Right.  But at the
17          moment -- I wasn't sure whether it was him or
18          a district judge, but at the moment, his view
19          is, in part, because each defendant has his
20          own unique tax situation or other expenses,
21          that they could claim that that's not a
22          credit that one of your clients can take.
23                  Are we on the same page with regard to
24          that?
25                  MS. CHAITMAN:  Yes.  He's ruled that
```

Page 98

1          way in one case, yes.

2                    THE ARBITRATOR:  So given that, I'm

3          not sure why -- unless Ms. Chaitman prevails

4          on appeal, why the reason for each transfer

5          is relevant.

6                    MR. HUNT:  But is she withdrawing the

7          offset defense in this case?

8                    MS. CHAITMAN:  No, because -- here's

9          the thing:  I am going to go up on appeal on

10         any issue on which I lose.  I can't withdraw

11         it; right?  I'm not withdrawing it.  I'm

12         just -- I want to preserve it for appeal.

13                    MR. HUNT:  So if the defense is still

14         in the case --

15                    THE ARBITRATOR:  But it's not in the

16         case.  It's -- if it comes back into the case

17         before trial because a district judge says

18         that Judge Bernstein erred, then we'll deal

19         with that.  But at the moment, you're asking

20         for -- let me give you an analogy.

21                    If this were a commercial case and

22         there were three claims in the complaint and,

23         at the motion to dismiss stage, a district

24         judge dismissed Claims 2 and 3, your argument

25         by analogy would be I still get discovery on

Page 99

1          Claims 2 and 3 because Ms. Chaitman has said

2          she intends to appeal that at the end of

3          case.  So that doesn't make any sense.

4                   MR. HUNT:  Your analogy may be a

5          little off, though, because she's saying that

6          happened in another case, but it doesn't

7          apply to this case, I think is what she's

8          saying.  That's what I heard her say.

9                   THE ARBITRATOR:  Is that what you're

10         saying?

11                  MS. CHAITMAN:  There's no -- well,

12         Judge Bernstein did not rule for all the

13         cases.  He ruled in one case.

14                  THE ARBITRATOR:  Right.

15                  MS. CHAITMAN:  And I'm confident he'll

16         rule exactly the same way in every other

17         case.

18                  THE ARBITRATOR:  Right.

19                  MS. CHAITMAN:  But I should add one

20         other thing --

21                  THE ARBITRATOR:  You're not trying to

22         be the Artful Dodger by saying, well, it only

23         applies to that case --

24                  MS. CHAITMAN:  No, I mean, I can't

25         imagine Judge Bernstein -- maybe he would

Page 100

1           change his mind, but I don't think he would.

2                 But the thing is that -- I want to

3           point out that in each of my cases, what I am

4           doing is submitting an accountant's affidavit

5           as to exactly what the taxes paid were.  So

6           they're getting that information, but they're

7           getting it through an accountant's affidavit.

8           We've been supplying those in a timely

9           manner.

10                THE ARBITRATOR:  But -- and that deals

11          with a document request rather than an

12          interrogatory.  But I think one of the things

13          that the trustee said in his papers is that

14          they're entitled to those underlying

15          documents in the earlier stage.

16                I'm not sure how it really helps you,

17          getting it at the earlier stage, but I don't

18          disagree with you that you're entitled to it.

19          It's, in effect, that which the accountant

20          would rely on.

21                MS. CHAITMAN:  Well, we're viewing it

22          pretty much as an expert's report.  We're

23          redacting -- the trustee's only entitled to

24          the information on the tax return which

25          relates to the Madoff income.  So it's a

Page 101

1        laborious process of redacting the tax

2        returns.

3               And that's what we're doing.  And

4        we're doing it in the form -- producing these

5        declarations.  So we're producing it.  We're

6        just not producing it in the first stage.

7               MR. HUNT:  Are you going to produce

8        one in this case?

9               MS. CHAITMAN:  We're producing

10       declarations in each of the cases.  You've

11       gotten a lot of them already.

12              MR. HUNT:  As long as the order says

13       that when a declaration comes, the underlying

14       documents supporting it are produced --

15              MS. CHAITMAN:  In a redacted form,

16       which is -- it just shows the --

17              MR. HUNT:  I don't --

18              MR. JACOBS:  There's no redaction for

19       relevance permitted under the case law rules,

20       to my knowledge.

21              THE ARBITRATOR:  Well, typically there

22       would not be.  There are confidentiality

23       orders obviously in all of these cases.  By

24       the same token, if Mr. DiGiulian has

25       $10 million in earned income, I'm not sure

Page 102

1          that's relevant to anything that the trustee

2          is concerned with.

3               MR. JACOBS:  It may or may not be,

4          your Honor, but we went through this exercise

5          with Ms. Chaitman concerning the Rule 35 bank

6          records where she attempted to unilaterally

7          redact out transactions that weren't related

8          to the BLMIS account.

9               And the judge explicitly overruled

10         that because, until we see the information,

11         we can't make a fair determination as to

12         whether it's relevant or not, given the

13         nature of the defenses that have been

14         asserted.  And there is a confidentiality

15         protective order in place that will protect

16         from the disclosure any of that confidential

17         information outside of use in the litigation.

18         So it -- it's not a valid concern.

19               THE ARBITRATOR:  Did I hear

20         Ms. Chaitman say you've already gotten --

21               MR. HUNT:  We haven't gotten any of

22         the underlying documents.

23               MS. CHAITMAN:  They haven't gotten the

24         documents yet, but the thing is --

25               THE ARBITRATOR:  Give me sort of a

Page 103

1        timeline.  When did you get the first of the

2        accountants' reports?

3               MS. CARLISLE:  I believe I've received

4        three of them, only one of the cases.  And

5        I'm not a hundred percent sure it's the

6        Gordon case.  There are two cases against

7        Ms. Gordon.  The first ones I received were

8        probably in August --

9               MS. CHAITMAN:  I don't remember.

10              MS. CARLISLE:  -- or September.  The

11       other two cases, fact and expert discovery is

12       currently closed.  These cases are much --

13       are further along.  And they were

14       one-to-two-page declarations from the

15       accountants just setting forth the amount of

16       taxes purportedly paid by these individuals.

17              MR. JACOBS:  That's the problem with

18       the reports, your Honor; they're hearsay.

19       Because none of the other underlying

20       documents or source information is provided.

21       One of the affidavits, it's not in any of the

22       cases before your Honor today, actually says

23       that the information provided in the

24       affidavit was based on discussions with

25       defendant from recollection.  It's really --

Page 104

1          it's rather egregious.

2                    And the first one we ever received was

3          served on us after expert discovery had

4          closed.  So whether it's even fairly

5          considered in the case is a full separate

6          argument that we don't need to delve into

7          today.

8                    But the fact of the matter is that all

9          of these underlying documentation, including

10         the taxes, must be produced in fact discovery

11         in each of these cases, regardless of whether

12         an affidavit is supplied by a fact witness or

13         a purported expert witness of any sort.  And

14         that's a pretty standard discovery --

15                    THE ARBITRATOR:  As a general rule, I

16         agree with you, but I'm not unsympathetic to

17         what Ms. Chaitman is saying, which is -- she

18         hasn't said this, but I think what she's

19         trying to say is that, until my expert issues

20         his -- assuming it's a he -- his report, I

21         don't know what documents I'm supposed to be

22         producing; and, conversely, I'm not sure that

23         you're really prejudiced by getting the

24         documents with the report, although you

25         haven't been getting it with the report thus

Page 105

1          far.

2                    MR. JACOBS:  Right.

3                    MS. CHAITMAN:  And the other thing --

4                    THE ARBITRATOR:  And I suppose the way

5          in which you might be prejudiced is if that

6          occasions a need to depose that particular --

7                    MR. JACOBS:  Right.

8                    THE ARBITRATOR:  -- defendant.  But if

9          there are documents produced in expert

10         discovery that conceptually should have been

11         produced in fact discovery, obviously, I

12         would look favorably on a request to depose

13         that defendant out of time.

14                   MR. JACOBS:  Right.  Just a point of

15         confusion.  These aren't expert reports.

16         They're entirely factual in nature.  There's

17         no expert analysis.  There's no purported

18         expert qualification.  There's no disclosures

19         made under Rule 45 as that would be required

20         in connection with the designation of any

21         expert.  They're not being submitted in a

22         timely fashion on -- prior to the expert

23         disclosure dates, as required under the case

24         management orders.

25                   So it's essentially the defendant has

Page 106

1           said, I'm just going to force upon the

2           trustee a hearsay affidavit on factual issues

3           without any underlying documentation whenever

4           I want without regard to the rules or the

5           judge's orders.  And --

6                   THE ARBITRATOR:  It also relates to an

7           affirmative defense, which at the moment is

8           not in the case.

9                   MR. JACOBS:  Well, your Honor, it's in

10          the case until -- in my view, it's in the

11          case until we have either Ms. Chaitman

12          withdraws it affirmatively or we have a court

13          order dismissing it from the case.

14                  THE ARBITRATOR:  Ms. Chaitman concedes

15          that -- unless she comes up with another

16          argument that sways Judge Bernstein, that

17          he's going to make the same ruling throwing

18          out the tax credit affirmative defense --

19                  MR. JACOBS:  Right.

20                  THE ARBITRATOR:  -- in all of her

21          cases.

22                  MR. JACOBS:  If it's not in the case,

23          your Honor, why should the defendant be

24          allowed to enter into evidence supporting it

25          into the factual record if it's not in the

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                              Page 107

 1        case?  It's the same argument that

 2        Ms. Chaitman makes that we're not allowed to

 3        take discovery to frame a complaint.  Right?

 4        I mean --

 5             THE ARBITRATOR:  Let me --

 6             MR. JACOBS:  It's in the case or it's

 7        not I guess is the contention we're grappling

 8        with here.

 9             THE ARBITRATOR:  Let me tell you the

10        way in which I contemplate ruling on this,

11        and then both sides can take pot shots at it,

12        which is that any report by an accountant or

13        expert relating to the tax credit affirmative

14        defense must be accompanied by the unredacted

15        underlying documents upon which the report

16        relies.

17             MS. CHAITMAN:  Well, I would quarrel

18        with the unredacted portion of that because

19        the only credit we're seeking is for the

20        Madoff income.

21             THE ARBITRATOR:  But --

22             MS. CHAITMAN:  And the trustee's not

23        entitled to information about the defendants'

24        income other than that.

25             THE ARBITRATOR:  Well, one of the

Trustees Motion to Compel Discovery                 Arbitration 12/13/2016

Page 108

1          problems is the trustee may get a lot more

2          stuff than he wants.  Some of these people

3          may have Trump-like returns.

4               MR. HUNT:  Then they'll get nothing.

5               THE ARBITRATOR:  Hmm?

6               MR. HUNT:  Then they'll get nothing.

7               THE ARBITRATOR:  Good point.

8               Hang on a second.

9               Off the record.

10              (Discussion off the record.)

11              THE ARBITRATOR:  Back on the record.

12              I agree with what's been said about

13         redactions for relevance typically not being

14         allowed, but there are numerous potential

15         schedules to tax returns which are wholly

16         irrelevant and, both from a burdensomeness

17         perspective and from a privacy perspective,

18         I'm sympathetic to the defendants' desire to

19         shield that from disclosure.

20              What I will require be produced in

21         unredacted form, at the same time as an

22         accountant's or expert's report relating to

23         this affirmative defense, will be the first

24         two pages of the tax return and any schedules

25         or other attachments that relate specifically

Page 109

1      to the Madoff capital gains in unredacted

2      form.

3           Now, that doesn't deal with the

4      reports you've gotten thus far, but my ruling

5      with respect to that will be that, for

6      reports you've gotten thus far, that that

7      material be produced within ten days.

8           MR. HUNT:  So I agree with all that.

9      I just wanted to add some clarification.

10          In addition, any documents that the

11     expert relied on, if he's being offered as an

12     expert, right, just like you would in the

13     normal rules.

14          MR. JACOBS:  I think even more

15     generally I would add, any documents that

16     were -- that the -- any source material for

17     any information that's included in the report

18     should be disclosed in its entirety

19     regardless of whether it's construed as an

20     expert or an accountant's report; otherwise

21     it's hearsay.

22          THE ARBITRATOR:  Well, to take the

23     example you gave, you said there's one report

24     that seemed to rely on a conversation with

25     the defendant, but --

Page 110

1          MR. JACOBS:  Right.

2          THE ARBITRATOR:  -- if that

3     conversation were a letter instead, you would

4     want the letter.

5          MR. JACOBS:  Right.  Because a

6     defendant can offer sworn testimony, and we

7     can challenge the veracity or discredit on

8     cross-examination just like we would at

9     trial.

10          MR. HUNT:  I would just say, you know,

11     produce the documents that he's relying on

12     and we can question --

13          THE ARBITRATOR:  But he's relying

14     potentially on tax returns, and I made a

15     limited ruling with respect to the tax

16     returns.

17          MR. HUNT:  And I think the point then

18     is --

19          THE ARBITRATOR:  So I'm tacking on to

20     the ruling as well as any additional

21     documents upon which the expert has relied.

22          MR. HUNT:  Okay.  That's good.

23          THE ARBITRATOR:  Any objection to

24     that, Ms. Chaitman?

25          MS. CHAITMAN:  No.

Page 111

1            MR. JACOBS:  Agreed, except for with

2       the fact that it's construed as an expert,

3       which I believe we will challenge.

4            THE ARBITRATOR:  I will clean that up.

5       It will say accountant or expert.

6            MR. JACOBS:  And, your Honor, on the

7       tax returns, can we clarify.  I believe in

8       addition to the taxes paid, any schedules

9       specifically regarding the Madoff investment

10       and any taxes paid on those capital gains, we

11       would also be entitled to information

12       concerning the defendants' both -- full scope

13       of refunds in that same given year regardless

14       of whether or not --

15            THE ARBITRATOR:  You're getting the

16       first two pages of the return.

17            MR. JACOBS:  So I'm just --

18       respectfully, without those in front of me, I

19       can't verify all the information that that

20       includes.  I don't think I'm as familiar with

21       them as you are.  I'm just looking to confirm

22       that that information would be reflected in

23       the scope of the materials you've ordered are

24       allowed.

25            I just want to confirm.  Because the

Page 112

1          refund is relevant.  Whether the defendant

2          got a refund on the taxes paid or used the

3          tax liability to offset -- or a refund to

4          offset liabilities in subsequent years is

5          equally, from our perspective, relevant.

6                   THE ARBITRATOR:  I think you're

7          getting what you want.  Why don't you consult

8          with somebody at your firm.  And if there

9          are -- if there's something additional that

10         relates to that, send me a letter.  And after

11         Ms. Chaitman has had an opportunity to

12         respond, I'll modify it.

13                  MR. JACOBS:  Perfect.

14                  MR. HUNT:  Once we get the first set

15         of documents that will help; right?

16                  THE ARBITRATOR:  Right.

17                  Off the record.

18                  (Discussion off the record.)

19                  THE ARBITRATOR:  Back on the record.

20                  MR. HUNT:  I'd like to move to

21         Interrogatory No. 3, "Identify each deposit

22         into the account."  They say, "Responding

23         party is unable to do so.  To the extent we

24         have reliable third-party records, they will

25         acknowledge the deposit."

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 113

1           We've provided them with a large

2      number of third-party records.  So I would

3      just ask that they amend this answer to

4      reflect that and then withdraw all the stuff

5      about riddled with fraud and all that other

6      stuff, if it's appropriate.

7           THE ARBITRATOR:  I'm looking at the

8      Answer to Interrogatory 8, which doesn't have

9      the "however" and "moreover" paragraphs, but

10     says, "Responding party does not dispute the

11     deposits and withdrawals reflected on

12     Exhibit B to the complaint," and then it has

13     the word "on," which is stuck in there for

14     some reason, but I assume it's just a typo.

15          So I think what Ms. Chaitman was

16     trying to do was say, we're not disputing

17     Columns 1 through 5 of Exhibit B relating to

18     this defendant, but, independent of that, we

19     can't identify each deposit.

20          You were saying there's an

21     inconsistency there.

22          MR. HUNT:  Exactly.

23          THE ARBITRATOR:  I think I understand

24     what she's trying to do, but I think the

25     stipulation which will apply to this case

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 114

1        obviates the need for an answer to that

2        interrogatory.

3               MR. HUNT:  Do we have that same

4        stipulation with respect to this case?

5               THE ARBITRATOR:  I thought we have it

6        an all three of these.

7               MS. CHAITMAN:  We agreed that we have

8        it on all three of them.  In each of these

9        cases, we have agreed to the accuracy of

10       Exhibit B.

11              THE ARBITRATOR:  Right.

12              MR. HUNT:  At Columns 1 through 5;

13       right?

14              THE ARBITRATOR:  Yes, but one of those

15       is each deposit into the account.

16              MR. HUNT:  Yes.  Okay.

17              Interrogatory No. 4 asks for names of

18       persons with knowledge.  They did not give us

19       any other than Madoff employees.

20              THE ARBITRATOR:  We're going back over

21       the same ground.

22              MR. HUNT:  Right.

23              THE ARBITRATOR:  Ms. Chaitman is going

24       to provide you with the names of the people

25       on her side of the beam.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 115

1              MS. CHAITMAN:  But in this case, Bruno

2       DiGiulian is deceased.  His wife had nothing

3       to do with the account, so she has no

4       knowledge.  You know, I don't have any

5       information to provide.

6              THE ARBITRATOR:  That's fair.

7              MR. HUNT:  Well, she does have

8       knowledge.  She signed the interrogatory

9       responses and --

10             MS. CHAITMAN:  She signed them because

11      they had to be verified, and she was the only

12      person who could verify it, but she couldn't

13      verify any more information than we put in

14      here.  That's why we didn't put anything else

15      in because this is all she could verify.

16             THE ARBITRATOR:  And, also, it becomes

17      irrelevant because transfer means withdrawals

18      or does it also mean deposits?

19             MR. HUNT:  It means both.

20             THE ARBITRATOR:  But they've been

21      stipulated to.  So even if the entire Mormon

22      Tabernacle Choir is familiar with them, it's

23      irrelevant.

24             MR. HUNT:  Well, I do think we have

25      the right to know who the -- who their

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 116

```
 1        accountants were and tax preparers and so

 2        forth.  They have not given us a single name

 3        of people with knowledge, whether --

 4             THE ARBITRATOR:  I -- I disagree.

 5        Insofar as deposits and withdrawals have been

 6        stipulated to and cannot be challenged at

 7        trial, it really doesn't matter, as I've

 8        said, how many people or who has knowledge of

 9        those.

10             MR. HUNT:  One of the things that they

11        say in these interrogatory responses is that

12        Bruno DiGiulian was the subsequent

13        transferee, in Interrogatory No. 5.  He was

14        not.  That's a legal argument.  So I want to

15        make it clear that they're not withholding

16        information relating to Mr. DiGiulian on the

17        basis that he's thought to be a subsequent

18        transferee in the defendants' mind.

19             THE ARBITRATOR:  Well, they're telling

20        you Bruno got the money except --

21             MS. CHAITMAN:  He got it as a

22        subsequent -- because this was an IRA

23        account.  So there was a custodian and this

24        is a legal argument.

25             THE ARBITRATOR:  Right.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 117

 1              MS. CHAITMAN:  It's --

 2              MR. HUNT:  So they need to, I think,

 3       identify who, in their mind, received the

 4       initial transfer.

 5              MS. CHAITMAN:  It says from Fiserv.

 6              MR. HUNT:  Where does it say that?

 7              MS. CHAITMAN:  "The account holder,

 8       Bruno L. DiGiulian, was the subsequent

 9       transferee from Fiserv of each transfer,

10       except for withdrawals needed to pay

11       applicable taxes."

12              MR. HUNT:  So I think any information

13       about communications between Fiserv and

14       DiGiulian are irrelevant because DiGiulian is

15       sued as the initial transferee here.

16              THE ARBITRATOR:  Well, except this is

17       only asking -- this is an interrogatory, not

18       a document request.  And I suppose she hasn't

19       complied with the local rule.  I'm not even

20       sure if it's applicable in bankruptcy court,

21       which makes "identify" a term of art, but

22       unless you don't know who Fiserv is, it seems

23       to me she's adequately answered this.

24              MR. HUNT:  Okay.

25              THE ARBITRATOR:  She may be wrong as a

Page 118

1      matter of law or she may be right as a matter

2      of law, but I think she's made it clear what

3      the flow of the money was.

4              MR. HUNT:  So just go to Interrogatory

5      No. 9 where we ask them to identify

6      communications about disagreements.  And this

7      is 9 and 10.  She says she has no personal

8      knowledge, but she believes such instances

9      occurred.

10             THE ARBITRATOR:  Again, it's not a

11     document request.

12             MR. HUNT:  It's just -- if she

13     believes such instances occurred, then what's

14     the basis of that belief?

15             THE ARBITRATOR:  Well, if you want to

16     pursue this, I suppose you could -- maybe

17     she's one of the people -- I think she is --

18             MS. CHAITMAN:  Yes.

19             THE ARBITRATOR:  -- for the motion for

20     a protective order, but absent that, you

21     could depose her about whether she has any --

22             MR. HUNT:  As long as we have the

23     right to depose her, that's fine.  We can

24     leave it that way.

25             MS. CHAITMAN:  Well, we've asked

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 119

1        for --

2                THE ARBITRATOR:  We'll deal with that

3        down the road.  For the moment, I'm not going

4        to worry about that.

5                MR. HUNT:  Not going to worry about

6        what?

7                THE ARBITRATOR:  The however she

8        believes such instances occurred.  She hasn't

9        identified any such instances, so the fact

10       that her Ouija board told her that there were

11       such instances does not mean that there's

12       more detail for her to give you.

13               MR. HUNT:  I think the Interrogatory

14       No. 11 -- I think you've ruled that we get

15       those forms and everything, so I think we're

16       fine.

17               THE ARBITRATOR:  Yes.

18               MR. HUNT:  Interrogatory No. 12 I

19       think is obviated by the fact that they've

20       stipulated to everything in --

21               THE ARBITRATOR:  In any case --

22               MR. HUNT:  -- Exhibit B.

23               THE ARBITRATOR:  We've gone through

24       this already.

25               In any case where Ms. Chaitman enters

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 120

1          into the stipulation we've been discussing,

2          the defense that defendants' liability was

3          fraudulently calculated, which is the 20th

4          affirmative defense, goes out the window.

5                    MR. HUNT:  And also the 27th

6          affirmative defense; right?  The next one

7          down.

8                    THE ARBITRATOR:  Yes.

9                    MR. HUNT:  Okay.  They have an

10         affirmative defense in Interrogatory No. 14

11         about the withdrawals were legally compelled

12         by state and federal securities laws.  And

13         they say, see Interrogatory No. 11.  Which

14         will be based upon the responding party's

15         testimony.  So I guess as long as we get to

16         depose her, we can wait and see what her

17         testimony was.

18                    THE ARBITRATOR:  Whether you do or

19         don't, and I'm not sure where I read it, but

20         in IRA accounts, for people who are beyond 70

21         1/2, whatever that magic time period is,

22         Ms. Chaitman is saying they had to take the

23         money out.

24                    That's all you're saying.

25                    MS. CHAITMAN:  That's all I'm saying.

Page 121

 1              MR. HUNT:  Then she can answer the

 2       interrogatory to explain to us what the

 3       reason is rather than just saying --

 4              MS. CHAITMAN:  Well, I'm saying it's

 5       legally compelled under the --

 6              THE ARBITRATOR:  Yeah, but maybe -- I

 7       think it's a fair point.

 8              MR. HUNT:  We're guessing at what

 9       she's saying at this point.

10              THE ARBITRATOR:  Hang on a minute.

11              You're not saying what I just said.

12       And to the extent that what I just said is

13       the accurate answer, I think you should

14       modify each of these answers, where

15       applicable, to say, whatever the right

16       verbiage is, that sometime beyond 70 1/2,

17       because it was an IRA account, the money has

18       to be taken out in installments.

19              That's the factual basis; right?

20              MS. CHAITMAN:  Right.

21              Can I do this in one document instead

22       of in 92 documents?

23              THE ARBITRATOR:  I'm inclined to say

24       yes.

25              MS. CHAITMAN:  Okay.

Page 122

1              MR. HUNT:  Okay.  So that's all I had

2         on the interrogatories.

3              THE ARBITRATOR:  Okay.

4              MR. HUNT:  You told us we'd start

5         getting repetitive.  You were right.

6              THE ARBITRATOR:  Benjamin, is there

7         anything --

8              MR. HUNT:  We have document requests

9         on DiGiulian, and I was going to suggest that

10        maybe we take another break and let us go

11        through that and see if we can streamline

12        that.  And also take a look at Benjamin to

13        see if we can streamline it as well.

14             THE ARBITRATOR:  Sure.

15             (Recess from the record.)

16             THE ARBITRATOR:  What's next?

17             MR. HUNT:  We left off with I think --

18        correct me if I'm wrong, I think we left off

19        with the DiGiulian request for production; is

20        that right?  The document request, yes,

21        that's where we left off.

22             So just two points on that, and then I

23        think we can move on.

24             I want to make sure that no documents

25        are being withheld based on the presumption

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                    Page 123

1           that Bruno would be a subsequent transferee.

2           Because he sued as an initial transferee.  So

3           can the defendants make that representation?

4                   MS. CHAITMAN:  That no -- no

5           documents -- what --

6                   MR. HUNT:  Are being withheld based on

7           the presumption that Bruno DiGiulian was a

8           subsequent transferee.

9                   MS. CHAITMAN:  Yes.  We haven't

10          withheld documents based on that.

11                  MR. HUNT:  So as long as your Honor's

12          order applies to this case, I didn't see

13          anything different in there that led me to

14          believe we needed to go over the document

15          requests with any specificity.

16                  Looking at the next case, which was

17          the Benjamin case --

18                  THE ARBITRATOR:  Right.

19                  MR. HUNT:  -- just to confirm, the

20          defendants have stipulated to the accuracy of

21          Columns 1 through 5 on Exhibit B in Benjamin;

22          correct?

23                  THE ARBITRATOR:  Correct?

24                  MS. CHAITMAN:  Yeah, we've said that

25          several times.

Page 124

```
 1                  MR. HUNT:  So based on that, I didn't
 2          see -- and the rest of the order would apply
 3          to this one, I didn't see anything different
 4          here that we needed to talk about.
 5                  THE ARBITRATOR:  Great.  So we're done
 6          with the trustee's motion; correct?
 7                  MR. HUNT:  Yes, sir.
 8                  THE ARBITRATOR:  Good.
 9                  MS. CHAITMAN:  So would you like me to
10          start on our motion to compel?
11                  THE ARBITRATOR:  Sure.
12                  MR. HUNT:  Is that on the Wilenitz
13          case?
14                  MS. CHAITMAN:  I think it's easier to
15          deal with the document demand that we served
16          on all the other cases.
17                  MS. CARLISLE:  I request we give Ted a
18          minute because he's handling Wilenitz so that
19          he can be here -- physically here to hear
20          what you have to say.
21                  THE ARBITRATOR:  We can do the motion
22          for a protective order.
23                  MS. CHAITMAN:  Okay.  Let's do that.
24                  MR. HUNT:  That's fine.
25                  MS. CHAITMAN:  Long as you don't need
```

Page 125

1          Ted for that.

2                  MR. HUNT:  What's the other one you're

3          thinking about?

4                  MS. CHAITMAN:  We served

5          interrogatories -- excuse me -- yes --

6                  MR. HUNT:  That must be in the

7          Wilenitz case.

8                  MS. CHAITMAN:  No, this is not.  We

9          served in Wilenitz.  Then we --

10                 MS. CARLISLE:  Well, you served in --

11         no, you said --

12                 MR. HUNT:  Just -- that's Ted's deal;

13         right?

14                 MS. CARLISLE:  Sorry.  Wilenitz is

15         Ted's deal, yes.

16                 MR. HUNT:  I don't know what this is

17         that she's got in front of us.

18                 MS. CHAITMAN:  We served document

19         demands and interrogatories in one document,

20         and we served it in about 60 cases.  And then

21         we moved to compel -- you responded and we

22         moved to compel.  And then that was assigned

23         to Judge Maas.

24                 MS. CARLISLE:  The dispute was

25         assigned to Judge Maas.  As I understood it,

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

```
                                              Page 126

 1        it was only the Wilenitz -- it was only

 2        assigned to Judge Maas in the Wilenitz case,

 3        not in the other -- I apologize.  I don't

 4        know how many cases those were brought in.

 5             MS. CHAITMAN:  No, we agreed to have

 6        everything that was before Judge Bernstein

 7        assigned to Judge Maas.

 8             MR. HUNT:  Do you know what she's

 9        talking about?

10             THE ARBITRATOR:  No.

11             MS. CARLISLE:  Wilenitz.

12             MR. HUNT:  Let's do the motion to

13        quash and then figure out what's next.

14             THE ARBITRATOR:  Off the record.

15             (Discussion off the record.)

16             MS. CHAITMAN:  So if I could start --

17        we made a motion to compel responses to our

18        interrogatories and to compel the trustee to

19        produce documents.

20             THE ARBITRATOR:  In --

21             MS. CHAITMAN:  It's defendants listed

22        on Exhibit A to first set of requests.  It's

23        this one (indicating).

24             MR. JACOBS:  Your Honor, we had a

25        hearing with Judge Bernstein on this issue
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 127

```
 1          where Judge Bernstein explicitly said that

 2          Ms. Chaitman's motion could go forward on

 3          Wilenitz only, even though she attempted to

 4          bring it across all --

 5                THE ARBITRATOR:  That's true, but he

 6          also said that the rulings would be of

 7          general application.  Then he made tentative

 8          rulings.

 9                MR. JACOBS:  Right.  And that's

10          consistent with, I believe, the position we

11          articulated earlier, which is that, in cases

12          with identical factual or legal

13          circumstances, we will apply those rulings.

14          And we are cross-moving for a protective

15          order prohibiting this discovery in this

16          case.  So if we obtain one, we would like

17          that to apply in other cases as well.

18                But I think as you'll see when we get

19          into the argument, there are some

20          case-specific issues that might dictate

21          results that might not happen the same way in

22          other cases on certain requests.

23                THE ARBITRATOR:  Does it make sense to

24          just ignore those for the moment, deal with

25          Wilenitz and then discuss how it applies
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 128

1      potentially --

2              MR. JACOBS:  That's exactly how we

3      would like to move forward, is to deal with

4      Wilenitz.  Because that's the motion in the

5      case currently before us today, and we can

6      talk afterwards about how those rulings may

7      apply in other contexts.

8              THE ARBITRATOR:  Does that work with

9      you, Ms. Chaitman?

10             MS. CHAITMAN:  Do we have the Wilenitz

11     responses to discovery?  Do you have those?

12             MR. JACOBS:  Let me look.

13             MS. CHAITMAN:  Because I have the ones

14     you responded to with the defendants --

15             MR. JACOBS:  Right.

16             MS. CHAITMAN:  -- and this is what I

17     had submitted to Judge Maas.

18             MR. JACOBS:  Right.  So that's what's

19     complicated, is that there was an original

20     set in Wilenitz.  Right.  And we had a

21     hearing before the court.  The judge

22     authorized the motion and then you served a

23     nearly identical, but slightly revised set

24     across all of your cases --

25             MS. CHAITMAN:  Right, because I took

Page 129

1        out the Picard compensation.  That's the only

2        change which I recall.

3                MR. JACOBS:  There are two requests

4        that are new --

5                THE ARBITRATOR:  Yes, you substituted

6        two requests for the --

7                MS. CHAITMAN:  Do you have a problem

8        in raising those?

9                MR. JACOBS:  No, we'll -- we're

10       prepared to proceed on your second set of 18

11       requests, which is the revised version, if

12       that's amenable to you.

13               MS. CHAITMAN:  So do you have --

14               THE ARBITRATOR:  Yes, I think we're

15       all on the same page.

16               MS. CHAITMAN:  All right.  Great.

17               So this is what the caption looks

18       like.  Are you --

19               THE ARBITRATOR:  You're just trying to

20       get me to the request.  I have -- let's see.

21       I actually have it in slightly different

22       form.  And I know that there's a substitution

23       for two of the requests, but I think it --

24       I'll be able to follow.

25               MS. CHAITMAN:  Okay.  So I'm turning

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 130

1          to page 6, which is our first document

2          request.  Wilenitz discovery demand.

3                    THE ARBITRATOR:  List every employee?

4                    MS. CHAITMAN:  Yes.

5                    "List the name and address of every

6          former BLMIS employee with whom you spoke

7          about the meaning of entries on the customer

8          statements and state the substance of what

9          you questioned each person about and what

10         that person told you."

11                   Then "Produce all documents you

12         reviewed with such employee and all documents

13         indicating what each person said."

14                   So the --

15                   THE ARBITRATOR:  And they gave you --

16         I'm not sure they gave it to you specifically

17         in Wilenitz, but -- I think they did, but

18         they gave you an exhibit which relates

19         apparently to 2008 only and had been filed in

20         the Dusek case that basically gave the

21         identifying information for -- it looks like

22         everybody that was on the payroll --

23                   MR. JACOBS:  Right.

24                   THE ARBITRATOR:  -- in 2008, but

25         didn't respond to anything else --

Page 131

1              MS. CHAITMAN:  Right.

2              THE ARBITRATOR:  -- as to your

3    request.

4              MS. CHAITMAN:  Right.

5              MR. JACOBS:  The Dusek response in the

6    list you're referring to I believe we

7    produced in connection with a later request,

8    not number 1.

9              THE ARBITRATOR:  Oh, okay.

10             MR. JACOBS:  That was a different

11   request asking for the identification of

12   employees by function at BLMIS.

13             THE ARBITRATOR:  But wouldn't it, at

14   least for 2008, respond to the first part of

15   Request No. 1, list -- oh, no.

16             MS. CHAITMAN:  With whom you spoke.

17             THE ARBITRATOR:  Okay.

18             MR. JACOBS:  The objection -- your

19   Honor, if I may, our objection to Request

20   No. 1 is that it is on its face asking for

21   the trustee's work product.  It's asking for

22   us to identify the list of employees that we

23   may have spoken to in connection with our

24   investigation as to any facet of the

25   trustee's responses and, I'll just add,

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 132

```
 1          duties and responsibilities with respect to
 2          his role in liquidating the estate and in
 3          recovering funds for the customer fund.
 4               That information -- that list, in and
 5          of itself, not to mention what is requested
 6          after the identification, which is the actual
 7          notes of those interviews, is protected work
 8          product under Taylor v. Hickman.  It falls
 9          squarely within the work-product doctrine.
10          It's the trustee's mental impression in
11          preparation for litigation as to his strategy
12          in discerning information and his mental
13          impressions about how he may use that.
14               So we object to this request in its
15          entirety.  It's prima facia, outside the
16          scope of what's discoverable in this
17          instance.
18               MS. CHAITMAN:  My answer to that,
19          Judge, is that, under the Securities Investor
20          Protection Act, the trustee has an
21          affirmative obligation to investigate the
22          debtor and report to the creditor body and to
23          the bankruptcy court what his findings are.
24               And we do not have access to this
25          information.  And it's essential for us in
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 133

1          terms of formulating some of our defenses.

2          And that's why I think we're entitled to this

3          information.

4               THE ARBITRATOR:  Let me ask a

5          question, which is, are there any documents

6          that have been shown to former Madoff

7          employees that have not been produced in the

8          litigation?

9               MR. JACOBS:  I don't know that,

10         sitting here today, I can answer that

11         question, your Honor, but I think that --

12              THE ARBITRATOR:  I suppose you could

13         have shown a particular employee --

14              MR. JACOBS:  How to --

15              THE ARBITRATOR:  -- Mr. Benjamin's

16         account records, but not to have produced

17         them in Mr. Wilenitz's case.

18              MR. JACOBS:  Right.

19              THE ARBITRATOR:  So excluding that.

20              MR. JACOBS:  Right.  So I think the

21         starting point of this discussion has to be

22         Rule 26 and the fact that what is

23         discoverable in this case, in Wilenitz, must

24         be both relevant to the claims in this case

25         and proportionate, most importantly, to the

Page 134

1           needs of the parties in discovery.  And there

2           are several factors enumerated in the rule as

3           to how to determine proportionality.

4                So it is possible we showed a document

5           to an employee that has nothing to do with

6           any of the claims or defenses in this case,

7           in which case we have no obligation to

8           produce it or make it available in any form.

9           I don't think that's the case.

10               But that being said, as I'm sure you

11          read in our papers and we'll be discussing in

12          connection with other requests, we have made

13          an unprecedented amount of the trustee's

14          books and records available to all

15          defendants, including the defendants here,

16          specifically all of the over 4 million

17          records that we've made available through

18          Electronic Data Room 1 in a very carefully

19          curated, organized fashion.  And those

20          documents touch upon all aspects of the

21          operations and financials of the BLMIS.

22               So I don't think it's likely that we

23          can't -- to answer your question explicitly,

24          I can't, sitting here today, represent that

25          there was no document that we've shown any

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 135

1          employee on any topic that hasn't been put in

2          that data room or otherwise produced, but

3          it's highly, highly unlikely.

4                The trustee has not engaged in any

5          hide-the-ball efforts here.  We have spent

6          years working to find solutions to very

7          complex discovery issues given the volume of

8          data we have that we're responsible for.  And

9          our goal is to make it as available and to be

10         as transparent to all litigants to the

11         fullest extent possible.  So that's what

12         we've done with e-Data Room 1.

13               And we also have undertaken

14         painstaking efforts to provide the defendants

15         with the full universe of all documents we

16         believe that are relevant to the claims and

17         defenses in this case from that data set.

18               So all of that said, I still don't

19         think that there's any proportionate

20         articulated defensible reason why the

21         defendant should be entitled to our

22         investigatory mental impressions and work

23         product in connection with any interviews of

24         BMLIS employees we did.

25               Now, certainly we would give them

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 136

```
 1          transfers if we had taken a deposition.  They
 2          are taking their own depositions of
 3          Mr. Madoff and potentially others.  And that
 4          is all fair game for the record, but this
 5          request is specifically calling for work
 6          product.  This is not calling for -- even our
 7          selection -- I would posit that potentially
 8          even our selection of documents that we chose
 9          to show a particular employee is a
10          compilation that's protected work product.
11          That doesn't mean we wouldn't produce them if
12          they were responsive and nonobjectionable to
13          other valid requests within the scope of
14          relevance, but the defendants shouldn't be
15          entitled to the disclosure of that work
16          product in connection with this request.
17               MS. CHAITMAN:  Let me just say, Ted
18          has raised the issue of -- two issues that I
19          think are important for you to rule on.
20               One is that the trustee has
21          consistently taken the position that the
22          discovery should be limited to what is
23          appropriate for a particular case.  And, in
24          fact, the argument has been made that in
25          so-and-so's case, the trustee's only suing
```

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 137

```
1          for $200,000, therefore, the trustee should

2          not have to produce a lot of documents, it's

3          only a $200,000 case.

4               We view these cases as one in the

5          sense that I represent 92 defendants in 92

6          cases, several hundred people all together,

7          and that all of this discovery is relevant

8          for all of the cases.

9               THE ARBITRATOR:  I'm not sure I read

10         the trustee's proportionality argument that

11         way, but I think the fundamental problem here

12         is that the request calls for classic work

13         product.  Work product is not absolute except

14         as to so-called core work product.

15              But just on the face of it, and in

16         response to many of these requests, I think I

17         agree with what I read Judge Bernstein's

18         off-the-cuff rulings were or opinions were,

19         but I'm not sure how you get around the rule

20         protecting work product here.

21              MS. CHAITMAN:  Well, I think that

22         there is.

23              THE ARBITRATOR:  Other than your SIPA

24         argument.

25              MS. CHAITMAN:  Right.  So, number 1,
```

Page 138

1          the trustee has an affirmative duty to do

2          this, and we contend that he has failed in

3          his duty.

4               The second thing is that there's a

5          substantial need here because we don't have

6          the ability to get this information from any

7          other source.

8               And going to the e-data room, since

9          Ted mentioned that, honestly, Judge, the

10         e-data room is a farce.  I made the point in

11         my papers that it's at least six weeks ago

12         that I asked Ted and Marie to tell me

13         whether, in the e-data room, there are any

14         trading records dating back from the 1980s.

15         I've repeated that request in writing.  I've

16         never gotten a response.

17              Now, you know, the trustee wants to

18         take a position he's just an average

19         litigant.  He's not an average litigant.

20         He's got an infinite funding source.  He's up

21         against people who have been financially

22         devastated and emotionally devastated.

23              And we have a right to at least a

24         level playing field.  We've searched the

25         e-data room.  I'm going to ask Greg, who

Page 139

```
 1        spent a lot of time on the e-data room, to

 2        tell you how it's organized, because it's a

 3        joke.

 4             But the fact of the matter is that we

 5        have not been able to find a single trading

 6        record from the 1980s.  And this goes to the

 7        issue of the trustee's contention that there

 8        were no trades.

 9             Now, if there are trading records or

10        any documents reflecting trading records --

11        they could be FINRA reports.  They could be

12        audits that were done by FINRA.  They could

13        be the Depository Trust Company

14        communications.  There are all different

15        categories of documents.

16             We've had people spend time in the

17        e-data room.  They can't find any of these

18        documents, and I can't even get a response

19        from the trustee's counsel on it.

20             THE ARBITRATOR:  I guess one potential

21        issue is -- I read all the materials that

22        relate to e-Data Room 1.  And one thing I

23        carried away from that is that not all of the

24        materials that were at Madoff either are in

25        e-Data Room 1 or fall within the category of
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 140

1          core account documents that were turned over

2          to whoever the account related to.

3                    So that there might be trading records

4          that relate to, for example, the

5          market-making side of the business that are

6          not in e-Data Room 1.

7                    Do I understand that correctly?

8                    MR. JACOBS:  Not with that particular

9          example.  But the first part of your

10         question, are all BLMIS's books and records

11         in e-Data Room 1, and the answer is

12         absolutely not.  The e-Data Room 1 could

13         potentially have as many as -- I don't even

14         want to guess, your Honor.

15                   It's not practical, reasonable,

16         feasible or desirable from any perspective of

17         any litigant or any of the Federal Rules of

18         Civil Procedure that govern discovery in

19         these actions to undertake an effort to

20         achieve that.

21                   What we have done under the -- under

22         the relevant rules that we are subject to,

23         which is the Federal Rules of Civil

24         Procedure -- and I respectfully disagree with

25         Ms. Chaitman.  There's nothing in the SIPA

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 141

1          statute that enlarges or expands the

2          trustee's discovery obligations under the

3          rules, nor is there anything in the statute

4          that overrides our claim to work product

5          protection.

6               So that argument is completely a red

7          herring, non sequitur.  The over 4 million

8          records in e-Data Room 1, as I mentioned,

9          have been very carefully curated to contain,

10         at a minimum, everything that's feasible.

11              And there are some things that aren't

12         amenable to be put in the data room.  And

13         those have been disclosed and are made

14         available by other means, but it contains the

15         bulk of what was considered by our experts

16         who, under relevant court orders, are

17         providing summary reports of the fraud.

18              And the data room was originally

19         conceived as a mechanism to permit rapid

20         disclosure or make available for potential

21         production and transparency all of the

22         evidence that our experts relied upon in

23         determining their conclusions.

24              So that particular order is the

25         November -- I might be getting the date

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 142

1          slightly off.  I think it's the November 10,

2          2011, litigation procedures order.

3               It says -- Judge Lifland entered an

4          order stating that, given the enormous volume

5          of data at issue potentially in this

6          liquidation, the trustee could provide, in

7          the form of a summary expert report, his

8          conclusions as to the salient relevant

9          issues, one of those being the fraud, and

10         make -- otherwise make available the

11         underlying evidence to all litigants in the

12         data room.

13              That's exactly what we've done.

14              THE ARBITRATOR:  Let me cut you short.

15              As to Request No. 1, I understand

16         Ms. Chaitman's SIPA argument, but Judge

17         Bernstein concluded that, in this

18         circumstance, the trustee is no different

19         than the ordinary bankruptcy trustee who does

20         not have enhanced obligations.  And even if

21         he does, it seems to me, as I said at the

22         outset, this is classic work product.

23              There's a distinction between making

24         available all of the documents in reasonably

25         accessible form and saying who you

Trustees Motion to Compel Discovery                     Arbitration 12/13/2016

Page 143

1          interviewed and essentially what you

2          considered important.

3                    So to the extent there's a motion to

4          compel with respect to Request No. 1, I'm

5          going to deny it.

6                    Let me also -- because it's going to

7          come up in a number of these areas.  There's

8          the overarching claim of privilege waiver,

9          Ms. Chaitman.

10                   And it seems to me that, generally

11         speaking, judges do not require, and

12         typically parties agree not to require that

13         each side, from the date that a litigation

14         commences or people understand that the suit

15         is about to be filed, that everything be

16         logged on a privilege log.

17                   I would imagine that you have not

18         logged and would not want to log all of your

19         communications, to the extent they were

20         written, with your clients from December 2008

21         forward.

22                   So I'm not going to find that there

23         was a privilege waiver by not logging post

24         December 11, 2008, documents.

25                   Why don't we go on from Request No. 1,

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 144

1          then.

2                    MS. CHAITMAN:  Can we -- since Ted

3          mentioned the trading records, can we resolve

4          the trading records?  Because, again, what

5          Ted is saying is that the trustee selected

6          what would be put in the e-data room, and

7          we've never gotten an answer.

8                    THE ARBITRATOR:  I saw you sent at

9          least two e-mails.

10                   MR. JACOBS:  Yes.

11                   THE ARBITRATOR:  And I think there

12         should be -- notwithstanding the fact that,

13         from the trustee's perspective, there's this

14         extensive guide to what is in the data room,

15         I think it has to be responsiveness to

16         reasonable requests.  And this is sort of

17         binary.  It's yes or no.

18                   MR. JACOBS:  I can answer this

19         question I think rather easily.

20                   So first and foremost, all of the

21         trading records we have currently identified

22         are in the data room.  They're in the data

23         section under DTC.

24                   Now, Ms. Chaitman served her own

25         subpoena on DTC for those exact records.  We

Page 145

1          obtained them in part from a Rule 2004

2          subpoena and part from what we restored on

3          the BLMIS DTC terminal, in part from

4          documents we got from the government.

5                    We compiled all of that.  It is all

6          available in a specifically labeled folder

7          called DTC.  There are also folders in that

8          exact same section that are labeled "FINRA."

9          All of the categories of documents you're

10         looking for, as we've written you in letters

11         and attempted to explain to you many times in

12         the past, are actually in their own folders

13         in the data room so they can be -- they are

14         accessible that way.

15                   Now, with respect to earlier periods

16         of the fraud, that is an allegation and an

17         issue that you recently raised in the PW

18         context pursuant to Mr. Madoff's testimony.

19         Even though it was outside the scope of the

20         order allowing that testimony, the judge has

21         now allowed a second deposition on that

22         subject.

23                   We will look for and have been looking

24         for stuff -- any additional stock trading

25         records as to earlier periods of time in

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 146

1          addition to what is currently in the data

2          room.  To the extent we find them or restore

3          them or can obtain them from DTC or any other

4          source, we will produce them to you and we

5          will put them in the data room.  Absolutely.

6                    MS. CHAITMAN:  But see --

7                    THE ARBITRATOR:  Let me rephrase that

8          for a second and see whether it's correct.

9               That to date, except to the extent

10         that they may be in DTC records or FINRA

11         records in that data room, you haven't found

12         any other records?

13                   MR. JACOBS:  We're currently looking.

14         Because it's an active issue that

15         Ms. Chaitman has raised in the PW context in

16         discovery.  There's a deposition scheduled

17         for December 20th where Mr. Madoff will give

18         additional testimony as to those issues.

19              And clearly we are going to want to

20         respond, if we can to meet with the debtor's

21         books and records that are available.  So we

22         are actively looking for that material.

23                   THE ARBITRATOR:  December 20th is --

24                   MS. CHAITMAN:  Next Tuesday.

25                   THE ARBITRATOR:  When are you going to

Page 147

1          get back to --

2                    Off the record.

3                    (Discussion off the record.)

4                    THE ARBITRATOR:  Back on the record.

5                    So when are you going to respond to

6          Ms. Chaitman's request in that regard since

7          the deposition's next Tuesday?

8                    MR. JACOBS:  Well, anything that we

9          would use in the deposition we will produce

10         prior to the deposition, if there are items.

11                   THE ARBITRATOR:  But it's --

12                   MS. CHAITMAN:  You see what they're

13         doing, Judge.  First of all, I've asked for

14         this for two months.

15                   And the second is, they're going to

16         give me what they want to use and not what

17         they have, and this is just not discovery.

18                   MR. JACOBS:  We've given Ms. Chaitman

19         everything we have, and that's in the data

20         room.  So there's no dispute about -- there's

21         nothing to compel.

22                   THE ARBITRATOR:  I thought I heard you

23         say earlier that you're continuing to look

24         for other documents.

25                   MR. JACOBS:  That's right.  And my

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 148

1          ability to answer as to a date certain for

2          production will depend upon our success in

3          identifying that, if any.  And I don't know

4          the answer to that.

5               There's -- as we disclosed in

6          discovery responses, BLMIS maintained a

7          warehouse.  There are multiple pieces of

8          media in that warehouse.  There are hard copy

9          documents.  Much of it has been scanned,

10         restored and made available in the data room,

11         but there might be -- there might be material

12         that's on a tape or a piece of media

13         somewhere that we haven't looked at yet, and

14         that process takes a long time.

15              But before -- we shouldn't be required

16         to have to look at every piece.  There has to

17         be an articulated -- there should at a

18         minimum be an articulated basis to the need

19         for it under Rule 26's proportionality

20         standards.

21              THE ARBITRATOR:  Well, Mr. Madoff says

22         that he was running, even on the investment

23         advisory side, a legitimate business with

24         these convertible securities up until

25         sometime in the '90s; correct?

Page 149

```
 1              MR. JACOBS:  When you have an
 2         opportunity to read Mr. Dubinski's report,
 3         you'll see that our expert disagrees --
 4              THE ARBITRATOR:  Okay.
 5              MR. JACOBS:  -- with that self-serving
 6         testimony.  And, furthermore, that it's not
 7         supported by any of the voluminous effort
 8         over long periods of time that he did
 9         consider and that has been made available.
10              THE ARBITRATOR:  Okay.  But you're
11         saying that you are attempting to find --
12         haven't phrase it this way, but you're saying
13         you're attempting to find records which, if
14         reviewed, potentially could support
15         Mr. Madoff's view of the world; is that
16         correct?
17              MR. JACOBS:  Yes.  We are -- well,
18         not -- it's not specifically how I would
19         phrase it, but we are looking for --
20         Ms. Chaitman has requested actual stock
21         trading activity and records demonstrating
22         actual trading stock activity, whether it be
23         in House 5 or elsewhere, for those earlier
24         periods of time, which Mr. Madoff's testimony
25         has now opened the door to.  So whether it
```

TA218

Page 150

1           refutes or supports that testimony, we will

2           produce it if we can identify it.

3                   THE ARBITRATOR:  And I think as a

4           practical matter, unless there's some reason

5           why this can't occur, should that be made

6           available, and it doesn't sound like under

7           any conceivable scenario it could occur

8           before next Tuesday, the possibility exists

9           that Mr. Madoff may be deposed a third time.

10                   MR. JACOBS:  That --

11                   MS. CHAITMAN:  Judge, can I point

12          something out?

13                   THE ARBITRATOR:  Yeah.

14                   MS. CHAITMAN:  DiPascali pled in 2010,

15          I believe.  Madoff pled in 2009.  They

16          both -- and you'll see the plea because they

17          both said the same thing.  The first words

18          out of DiPascali's mouth were "In the early

19          1990s, we started a fraud."  So this is not a

20          new issue.

21                   And what Ted has really said to you,

22          in substance, is that they put in the e-data

23          room what supports their expert's report,

24          which is --

25                   MR. JACOBS:  That's not true.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 151

1            MS. CHAITMAN:  I didn't interrupt you

2      and I'd appreciate it if you don't interrupt

3      me.  I'd like to be able to finish.

4            MR. JACOBS:  Please finish.

5            MS. CHAITMAN:  So they have a world

6      view of the case, which they're entitled to,

7      possibly.  And they won't produce documents

8      that are inconsistent with that world view.

9            And this document request is dated

10     August 5, 2016.  So they've had more than

11     enough time to look for the documents; they

12     just don't want to produce them.

13           And what's going on here is that

14     they've sold a certain view of what happened

15     here.  And I don't believe it's accurate.

16     And they're doing everything they possibly

17     can to prevent the truth from coming out.

18           MR. JACOBS:  May I respond to that,

19     your Honor?

20           THE ARBITRATOR:  Before you --

21           MR. JACOBS:  It's so outrageous, I

22     can't leave it unresponded to.

23           THE ARBITRATOR:  Okay.  But in

24     addition to the documents that are in e-Data

25     Room 1, and I'm focusing on trading records,

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 152

1            there's an inventory, I assume, that the

2            trustee prepared of the rest of the universe.

3                    MR. JACOBS:  In a sense.  We have --

4            we've endeavored to painstakingly track all

5            of the items that are in the warehouse that

6            we inherited from BLMIS.  But documents, your

7            Honor, may exist on microfiche, they may

8            exist on a piece of hard media, they may

9            exist on a floppy disk --

10                   MR. HUNT:  They may be in a box in a

11           warehouse --

12                   MR. JACOBS:  We don't have -- we don't

13           have documents that are readily accessible

14           and restored, that anyone to date that has

15           looked at, that haven't been made available

16           to our experts or to Ms. Chaitman.

17                   It is simply an outrageous statement

18           to assert that the trustee is cherry-picking

19           the evidence available to him and keeping

20           from the defendants items that may hurt, a

21           narrative that he constructed out of thin air

22           to suit some purpose.

23                   Our goal here is to recover funds for

24           the customer fund under the laws afforded to

25           the trustee for which he's tasked to do so.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 153

1          Our objective is first and foremost to get it

2          correct.  We don't want to sue anyone who

3          doesn't owe us money.  We don't want to

4          recover a single dollar that isn't

5          appropriately recovered under the relevant

6          statutory framework.

7               Ms. Chaitman has all of the documents

8          that are readily available, have been

9          restored and have been considered, good or

10         bad, to the trustee's case currently.

11              Now, we may undertake additional

12         restorations.  I don't know.  I can't speak

13         definitively about that.  Ms. Chaitman is

14         actively litigating and challenging our

15         expert conclusion as to the earlier periods

16         of time.

17              We never intended to credit or rely

18         upon the testimony of Bernard Madoff,

19         frankly.  He committed the world's greatest

20         Ponzi scheme.  I don't think his testimony is

21         reliable or should be credited in any sense

22         or fashion.  However, the judge has allowed

23         it.

24              Now that we're going down that road,

25         we will endeavor to see if, on some floppy

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 154

```
 1          disk somewhere in a box in a warehouse, there
 2          might be early stock trading records from
 3          periods predating what we currently have.
 4               So you know, all of the stock trading
 5          records that we do have and we have made
 6          available were obtained because we went out
 7          in the world and subpoenaed them and
 8          diligently and aggressively tried to find
 9          them wherever they may exist.
10               Ms. Chaitman did too.  The DTC is
11          under a regulatory framework where it was, by
12          law, required to keep records for a certain
13          number of years.  That's why they had
14          documents back through 2002 which they
15          produced to us and we in turn produced to
16          Ms. Chaitman.
17               We also scoured, like I said, all of
18          the DTC terminal that was active and live by
19          BLMIS as of the time we took custody of it.
20          We restored all of that data.  We put it in
21          the data room.
22               We also subpoenaed the SEC.  We
23          cooperated -- they cooperated with us.  They
24          shared which us the fruits of their similar
25          investigation.
```

Page 155

```
 1              All of that material, wherever we

 2        could find it, good or bad, we've made

 3        available and we provided to our experts for

 4        consideration.

 5              THE ARBITRATOR:  Well --

 6              MR. JACOBS:  So that's the lay of the

 7        land today.

 8              As discovery unfolds in the PW matter

 9        and now that it is switched over to the

10        adversary proceeding and we gear up for

11        potential trial on the fraud, as Judge

12        Bernstein has invited the parties to

13        consider, if we can find and identify

14        additional materials that are responsive to

15        this issue, we will make it available

16        regardless of whether it hurts or helps us

17        and, as necessary, our experts -- we'll

18        provide it to our experts as well for them to

19        appropriately supplement any relevant report

20        that's impacted.

21              THE ARBITRATOR:  Having dealt with DTC

22        records in the past and because of their

23        continuous net settlement rules, my take on

24        this is that the DTC records, in terms of

25        what Ms. Chaitman's trying to prove and
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 156

```
1        you're trying to disprove, will probably end
2        up being gibberish, but --
3               MS. CHAITMAN:  They only go back to
4        2002.
5               THE ARBITRATOR:  Okay.  But even if
6        you had them back further, there are a lot of
7        complicating factors.  I had that in another
8        case.  But --
9               MR. JACOBS:  That issue was precedent
10       of later requests where Ms. Chaitman has
11       asked us to match individual trades for
12       customers with House 5 trading activity.  And
13       the information doesn't work that way.
14              THE ARBITRATOR:  But let me -- I
15       recognize that we're dealing with volume
16       that's far beyond anything certainly I've
17       dealt with and probably anybody in the room
18       has dealt with previously.
19              Is there an inventory of files that
20       can be produced?  I suppose that's work
21       product, but there's nothing particularly
22       secret about that.  It may be annotated in
23       which event I would suggest the unannotated
24       version of it be produced.
25              But I do not want -- since it is going
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                            Page 157

    1            to take you some time, as you said, to look

    2            for what may not even be there, but --

    3                MR. JACOBS:  Well, my objection to

    4            producing anything that may exist is exactly

    5            what you've identified, is that it's work

    6            product, but even before that, there has to

    7            be an articulated need for it that no other

    8            discovery from a different source can fill.

    9                I mean, it has to -- the cost and

   10            burden of us having to make -- prepare that

   11            in a way that it could be produced without

   12            waiving work product in a producible form --

   13            what purpose will it serve, I guess is the

   14            question?  I mean, I just -- what is the

   15            need?  What's the proportionality

   16            consideration that would demand its

   17            disclosure in the context of this or any

   18            given request?

   19                I can't in my head conceptualize --

   20            after considering the effort that our team

   21            and that I personally have been involved in

   22            over the course of years and spending

   23            millions of dollars to make all of this

   24            information transparent and available in

   25            every single case, on all of the case-wide

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 158

 1          issues, whether it be fraud or insolvency,

 2          which, arguably, isn't even -- the latter

 3          isn't even an element in these claims, but

 4          fraud certainly is.

 5                  This is my answer to all of these

 6          requests, is, how can any incremental step

 7          further in light of everything that we've

 8          already done -- how can that possibly be

 9          proportionate to the needs of this case or

10          even all of Ms. Chaitman's cases taken as a

11          whole or even all the good-faith adversary

12          proceedings taken as a whole?  I mean,

13          there's nothing more for us that we can

14          disclose.

15                  THE ARBITRATOR:  Is it correct that

16          except for third-party records that may have

17          been subpoenaed, you and your team have not

18          encountered any pre 1990 records of actual

19          trading that relate to the investment

20          advisory customers?

21                  MR. JACOBS:  We have never -- I have

22          never personally and I don't know of any

23          record ever seen by anyone on our team that

24          shows actual stock trading for a House 17 or

25          an IA, investment advisory, customer, no.

TA227

Page 159

1              MS. CHAITMAN:  But, Judge, that

2        ignores the issue.  Because Madoff testified

3        that there was no House 17 before 1992.  This

4        is a fiction of Mr. Picard and his expert.

5        It was all one unit.

6              It was one company and he said all the

7        trading in the investment advisory customer

8        accounts was trading with Madoff.  In other

9        words, he had -- he was doing trades equal to

10       10 percent of the daily volume on the New

11       York Stock Exchange.  So he had a huge

12       inventory of trades -- of securities.

13             He would transact trades with the IA

14       customers.  So it's not -- it's not that

15       you're looking for House 17 trades.  We

16       want -- we want the records in the 1980s,

17       before 1992, of all of the Madoff trades.

18       And the trustee inherited those records, to

19       the extent they exist.  And there's no other

20       place we can get them.

21             And they disprove -- just to

22       understand the significance of this, if, in

23       fact, both DiPascali and Madoff are telling

24       the truth, then the trustee has to

25       recalculate every single claim.  Because he

Page 160

1        discredited claims, he disallowed claims on

2        the basis that there was no net equity

3        because he didn't recognize any trades going

4        back to the 1980s.  So --

5               THE ARBITRATOR:  Also, you would argue

6        then that the Ponzi presumption --

7               MS. CHAITMAN:  Of course.  You have

8        to --

9               THE ARBITRATOR:  -- applies.

10              MS. CHAITMAN:  -- yes.  So --

11              THE ARBITRATOR:  Let me modify my

12       question to Mr. Jacobs.

13              And if we take out House 5, House 17,

14       apart from the DTC and FINRA and other

15       third-party records that I gather are in the

16       e-data room, have you or, to your knowledge,

17       has your team found pre 1982 trading records?

18              MS. CHAITMAN:  1992.

19              THE ARBITRATOR:  1992.

20              MR. JACOBS:  Not that I can confirm or

21       know of.  We are looking.  And I'm not

22       directly involved with that effort, so it's

23       certainly information I can find out.  And

24       we're trying very hard to get it.

25              THE ARBITRATOR:  And understanding

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 161

1           that it's perhaps looking for a needle in a

2           haystack, it seems to me there's a need to

3           come up with an end date by which you'll

4           respond saying either you found something or

5           you haven't and, adding into that, the

6           understanding that even given the size of the

7           Madoff fraud as a whole, it would not be

8           sensible to restore every microfiche and look

9           through it, but there has to be a good-faith

10          effort to look.

11                    MR. JACOBS:  Right.  And we are

12          conducting that investigation right now.

13          We're absolutely conducting that

14          investigation in direct response to

15          Ms. Chaitman's request.

16                    THE ARBITRATOR:  But there has to be

17          some end date.

18                    MR. JACOBS:  My only -- my only

19          hesitation in providing one is that -- I'm

20          pretty confident that if there is anything

21          that we can find that contains these type of

22          records from an earlier period, it's going to

23          be on media that we're going to have a

24          challenge restoring.

25                    So it might be microfiche, microfilm,

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 162

1           some type of backup tape that is for a

2           computer program or software or hardware that

3           doesn't exist any longer.

4                So we have to -- when we were dealing

5           with items like that, we have to send it out

6           to a vendor to see if they can restore it or

7           give us a quick peek to kind of try to give

8           us a sense if it would be fruitful for a

9           fuller restoration.  All of this costs a lot

10          of money, so we weigh the balance of -- all

11          of those factors have to be considered and I

12          think are fairly considered under

13          proportionality analysis.

14               But the bottom line, for the purposes

15          of your question, is it takes time.

16               THE ARBITRATOR:  Okay.  But let me

17          rephrase it and perhaps in terms of this

18          question:  How long will it take you to make

19          a good-faith effort to determine whether

20          there are such pre 1992 trading records not

21          previously produced?

22               Putting aside how long it will take to

23          produce them, but to determine whether there

24          are such records.

25               MR. JACOBS:  My answer is the same,

Page 163

1        your Honor, because I can't -- I mean, if I

2        send out a microfilm tomorrow, I don't know

3        how long that's going to take or what

4        information I might even -- it's really --

5        we're dealing with unchartered territory here

6        in terms of both discovery and e-discovery.

7        It's not as simple as me doing a search in a

8        database and being able to say, oh, I found

9        three things I can produce tomorrow, but --

10            THE ARBITRATOR:  There has to be, at

11       least for that second inquiry, some deadline,

12       even if it's adjusted, even if -- even if it

13       then requires a substantial effort down the

14       road having determined, by looking at one

15       microfiche, that there are potentially

16       records and then dealing with the fact that

17       there are a hundred thousand microfiches to

18       deal with.

19            There's got to be some end date so

20       Ms. Chaitman knows that the effort will not

21       end 12 years after the last Madoff case.

22            MR. JACOBS:  Right.  Well, I will have

23       to talk to almost literally an army of people

24       to get that information for you, including

25       with the core professionals, outside vendors

Page 164

1          and the team that's --

2                    THE ARBITRATOR:  So suppose I say that

3          you give me a response to that second

4          question within a week?

5                    MR. JACOBS:  I can endeavor to do

6          that, your Honor.  And at least within a

7          week's time, I can give you an update as to

8          why I can't -- to where the status is and why

9          I can't be more specific.

10                   THE ARBITRATOR:  But understand that

11         I'm going to set some date, recognizing it

12         may have to be adjusted, but -- so that

13         there's some date, and also recognizing that

14         potentially there may be a third deposition

15         of Mr. Madoff that Ms. Chaitman takes if

16         there is such information.

17                   MR. JACOBS:  Okay.  I understand.

18                   THE ARBITRATOR:  I think that's the

19         best I can do for you, Ms. Chaitman.

20                   MS. CHAITMAN:  I appreciate that.  And

21         I also think that we're entitled to a

22         description of all of the documents that the

23         trustee chose not to put in the e-data room.

24         Because I'm concerned that he put into the

25         e-data room the documents that support his

Page 165

1        view of this case and did not put into the

2        e-data room documents that he did review

3        which are inconsistent with the positions

4        he's taken.

5               So I think that we're entitled to a

6        list.  There's a warehouse on Long Island in

7        such-and-such a town and it contains X and we

8        didn't put -- they must have all this.

9               THE ARBITRATOR:  Except I gather they

10       have it annotated in such a way that it's

11       work product --

12              MS. CHAITMAN:  Let them show it to

13       you.

14              THE ARBITRATOR:  And your assumption

15       is one that I'm not willing to buy into.  The

16       trustee and both sides and every litigant has

17       an ethical obligation.  And I assume that

18       even if you don't like the way in which the

19       trustee is going about -- is functioning,

20       including claw-back actions against people

21       who you view as victims, I have no basis to

22       assume that they're proceeding dishonestly.

23              In terms of me looking at the

24       inventory, it probably is almost as useless

25       as you looking at the inventory.  And I'm not

Page 166

```
 1          saying that disparagingly.  Because it's

 2          going to be extraordinarily lengthy and

 3          probably not terribly informative.  Because

 4          if it were informative, Mr. Jacobs and his

 5          colleagues could have said, oh, we found, you

 6          know, this treasure trove of documents and

 7          now the issue is how long it's going to take

 8          to restore it.

 9              MR. JACOBS:  And, your Honor --

10              THE ARBITRATOR:  I take it that you

11          can represent to me that there's nothing on

12          the face of the inventory that reflects

13          pre 1992 trading records that are not yet in

14          the e-data room.

15              MR. JACOBS:  Absolutely not.

16              THE ARBITRATOR:  You're agreeing with

17          me.

18              MR. JACOBS:  Yes, there's nothing

19          there -- no, there's nothing of that nature.

20              And, your Honor, the request that

21          Ms. Chaitman is making is absolutely -- for

22          you to order that would be absolutely

23          unprecedented.  And without a particularized

24          articulation of the need or what is missing

25          from the over 4 million, 4 million,
```

Page 167

```
 1      records --

 2              THE ARBITRATOR:  The short answer is

 3      I'm not going to require that.  And I think

 4      we've exhausted Request No. -- the discussion

 5      of Request No. 1.

 6              Is Request No. 2 next?

 7              MS. CHAITMAN:  Yes.  Thank you.

 8              We've asked for -- obviously one of

 9      the major issues in the case is the

10      reliability of the records.  And we've asked

11      for the trustee to disclose every single

12      factual error he's found in the books and

13      records.  Because, again, that goes to the

14      reliability of the records.

15              We've been able to nail down some of

16      this information in the profit withdrawal

17      litigation where, in fact, the trustee's own

18      experts have conceded that there are all

19      kinds of inconsistencies in the records, but

20      outside the profit withdrawal litigation,

21      which we think we're entitled to the same

22      disclosures.

23              MR. JACOBS:  May I respond, your

24      Honor?

25              THE ARBITRATOR:  Please.
```

Page 168

```
 1              MR. JACOBS:  In the Wilenitz case
 2         that's before us today, the defendants have
 3         conceded that the cash activity for the
 4         accounts that they opened in 2003 are
 5         correct.  So from both a relevance and a
 6         proportionality perspective, this request and
 7         the one that follows, which is -- which is
 8         similar, are completely outside the universe
 9         of what could even remotely be, under
10         conjecture or speculation, possibly
11         considered relevant proportionate to the
12         needs of this case.
13              Judge Bernstein has characterized the
14         adversary proceedings as strict liability
15         actions; you got the money or you didn't.
16         You got the money, you have to pay it back
17         because it belongs to somebody else, if the
18         trustee can prove that with the books and
19         records related to the specific account.
20              The books and records of other
21         customers, beyond the accounts that we sued
22         upon in any given case, are not relevant on
23         that issue to these claims.
24              THE ARBITRATOR:  Well, Wilenitz, which
25         we are pronouncing several different ways, is
```

Page 169

1          a unique case because I guess it's --

2          Mrs. Wilenitz has that statement saying, I've

3          compared it to my records and they agree.

4                    MR. JACOBS:  Right.

5                    THE ARBITRATOR:  So I agree with you

6          as to Wilenitz, it's irrelevant, as Judge

7          Bernstein said.  But there are lots of

8          clients that Ms. Chaitman has.  And even

9          though formally the motion only deals with

10         Wilenitz, conceptually if the books and

11         records regarding deposits and withdrawals

12         are woefully inaccurate, that it seems to me

13         is relevant.

14                   MR. JACOBS:  And this --

15                   THE ARBITRATOR:  In part --

16                   MR. JACOBS:  In this particular case?

17                   THE ARBITRATOR:  Not in Wilenitz.  In

18         some other case.

19                   MR. JACOBS:  Right.

20                   THE ARBITRATOR:  In Case No. 3.

21                   But the profit withdrawal report and

22         hearing will, in part, deal with that; is

23         that correct?

24                   MS. CHAITMAN:  Only with respect to

25         the profit withdrawal issue, not with respect

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 170

1          to other issues.

2                    MR. JACOBS:  Right.

3                    MS. CHAITMAN:  So the thing is that

4          the issue of -- I'm sure you've had

5          experience with this on business records

6          exception, can you admit records of a

7          fraudster?  Only if they have indicia of

8          reliability.

9                    So this is what this interrogatory is

10         going to.  If there is evidence that the

11         records -- the whole set of records do not

12         carry those indicia of reliability, then

13         that's a reason that they shouldn't be

14         admitted.

15                   MR. JACOBS:  Your Honor, you've just

16         seen in three cases just today Ms. Chaitman

17         has conceded the reliability as to the cash

18         activity of the account.  She's made no

19         showing that the books and records of the

20         debtor are not 100 percent reliable with

21         respect to cash activity in this case or any

22         other case.

23                   On that basis, an order compelling the

24         trustee to conduct an investigation that is

25         essentially a wild goose chase looking for a

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 171

1          needle in a haystack across every single

2          customer account that existed at any point in

3          time --

4                    THE ARBITRATOR:  Well, but --

5                    MR. JACOBS:  -- has no rational

6          bearing to the relevance of the claims and

7          defenses in this case.  The request is asking

8          for us to investigate every single customer

9          statement for all periods of time in every

10         single case.

11                   THE ARBITRATOR:  I read it slightly

12         differently.  It's not in the present or

13         future tense; it's in the past tense.

14                   It's "every error you found."  And

15         there's one person who said the records were

16         inaccurate as to reflecting two $25,000

17         withdrawals where the customer said it was

18         only one, and maybe that's right, maybe

19         that's wrong, and maybe you have or have not

20         investigated that to date.

21                   MR. JACOBS:  Right.

22                   THE ARBITRATOR:  And I recognize that

23         we're dealing with tens of thousands of

24         records.  But it's not requiring that you go

25         out and do that now; it's asking that you

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 172

1          identify those instances you found in the

2          past.

3               I'm not saying that that's not a

4          considerable task and potentially an unduly

5          burdensome task, but it's narrower than the

6          way you're reading it, to my mind.

7               MS. CHAITMAN:  And --

8               THE ARBITRATOR:  Let me --

9               MR. JACOBS:  What's the

10         articulation --

11              THE ARBITRATOR:  Let me put it in a

12         criminal context.  And if I'm using case law

13         that you're not familiar with, tell me and I

14         won't go down that road.

15              But if this were the Madoff criminal

16         case and you were the prosecutor saying,

17         everything Madoff did was a fraud and I can

18         prove it by introducing these records of his

19         business under the business records

20         exception, and the witness we're getting on

21         the stand, your expert or somebody else to

22         say these records are pristine, they

23         accurately reflect everything, under Brady,

24         you'd have an obligation as a prosecutor to

25         disclose, well, no, there were these ten

                                                            Page 173

1           instances where the records were inaccurate.

2                   MR. JACOBS:  Right.

3                   THE ARBITRATOR:  So Ms. Chaitman, in

4           effect, is looking for Brady material.

5                   MR. JACOBS:  Right, but that's not the

6           standard that governs discovery in this civil

7           action.  The standard is Rule 26, which

8           cabins relevance by -- with proportionality.

9           The discovery sought must be relevant and --

10          it's not "or" -- and proportionate.  And

11          proportionate is adjudged by the needs of the

12          case.

13                  In this case, we have represented --

14          in this case with these defendants and these

15          accounts, we have not found any inaccuracy in

16          the records.  In our -- in Greenblatt and

17          Lisa Collura's global reports, which we will

18          issue in this case and which we issue in

19          every case, they do a global reconciliation

20          of the customers' statements and find with a

21          near 100 percent certainly that, with respect

22          to wherever independent verification is

23          available, those records are reliable and

24          accurate with nearly 100 percent of the time,

25          which is I guess sort of the flip of what

Page 174

1        you're asking us to do -- or the request is

2        asking us to do.

3              My question would be, how can I

4        possibly, with a team of a hundred attorneys

5        and numerous -- dozens of consultants, over

6        an eight-year period go back and reconstruct

7        every instance of every time we found a typo

8        on a page that may, quote, qualify as an

9        error, which is undefined and vague here?

10       That would take us weeks, months, years to do

11       for what utility or benefit?

12             THE ARBITRATOR:  I agree with you that

13       somebody told me, probably off the record,

14       that there were 64,000 customers.

15             MS. CHAITMAN:  I just told you that.

16             THE ARBITRATOR:  That there's no need

17       to either prospectively or retrospectively

18       identify every error in the records that

19       relate to 64,000 customers.

20             But at trial, to the extent there is a

21       trial, Ms. Chaitman, the trustee is only

22       going to offer the business records that

23       relate to these 92 customers of yours.  Judge

24       Bernstein firmly took the view that even if

25       there are gross inaccuracies as to other

Page 175

1          customers, that that's irrelevant.

2                  I understand you say that that would

3          call into question the accuracy of the

4          records as a whole.  This is not the

5          traditional case where somebody's going to

6          get up and say, I'm the treasurer of Bernard

7          Madoff Securities and the records are

8          accurate.  Although I suppose maybe there's

9          somebody who was prosecuted criminally, but

10         could so testify, saying that the records of

11         the fraud are accurate.

12                 But why should I require that Request

13         No. 2 be answered except as to your 92

14         clients?  And then the same way you're having

15         trouble getting information out from your

16         expert or accountant or whoever it is who's

17         doing the summary information about taxes, I

18         think it was taxes, here there's going to be

19         an expert report which will, to the extent

20         there are errors or inconsistencies, disclose

21         items; is that accurate?

22                 MR. JACOBS:  I'm sorry.  I'm not sure

23         I understand the proposition.  There will be

24         an expert report --

25                 THE ARBITRATOR:  There's going to be

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 176

1          one or more experts who, for Mr. DiGiulian,

2          to pick somebody who doesn't concede that the

3          records correspond to his records -- for the

4          DiGiulian client of Ms. Chaitman, there's

5          going to be one or more experts who are going

6          to say, we looked at the books and records

7          that relate to this defendant.

8                    MR. JACOBS:  Right.

9                    THE ARBITRATOR:  They show the

10         following.

11                   MR. JACOBS:  Right.

12                   THE ARBITRATOR:  And we have not found

13         any inconsistent records.

14                   MR. JACOBS:  That's correct.  And I

15         think the way I would put that is that we

16         will put forth proof on our affirmative

17         obligation and -- which is our burden

18         supporting all of our claims.  And I can tell

19         you that -- I can represent for the record

20         right now that with respect to all of

21         Ms. Chaitman's clients, we have found no

22         errors or we wouldn't have sued them.  Or we

23         wouldn't have -- we would have disclosed that

24         Bernard Exhibit B would reflect a correction

25         of that error.

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 177

1               There are no errors in any of

2        Ms. Chaitman's cases that we are aware of.

3        Now, discovery might yield a different

4        outcome, which is why we affirmatively asked

5        for all the discovery we've been discussing

6        earlier in the day.

7               If there are transactions or deposits

8        or withdrawals or other factual issues that

9        are disputed and Ms. Chaitman has proof of

10       that, on behalf of her clients, she has an

11       obligation to produce it.  And we will

12       consider it and either amend the claim

13       appropriately or we will litigate it in

14       court, and the judge will decide whose proof

15       carries the day.

16              But we shouldn't have to -- but

17       Ms. Chaitman must, under Rule 26 and under

18       the relevant law, articulate a basis to

19       challenge our proof that's specific and

20       not -- and not a fishing expedition across

21       unrelated, irrelevant other customers whose

22       deposits and withdrawals aren't at issue in

23       this case.

24              THE ARBITRATOR:  What I'm going to do

25       is limit Request No. 2 to Ms. Chaitman's 92

Page 178

1          clients.  I gather that, thus limited, your

2          response is likely to be, we haven't found

3          such errors.

4                    MR. JACOBS:  Right.

5                    THE ARBITRATOR:  It also follows that

6          at the expert discovery stage in each of her

7          cases, you may find some errors.  You may

8          not, but it's conceivable that you may find

9          some.  And granted that will occur at the

10         expert discovery stage rather than the fact

11         discovery stage, but I will reserve decision

12         as to whether that permits her to then seek

13         further discovery.

14                    MR. JACOBS:  Okay.

15                    MS. CHAITMAN:  I would like just to

16         point out --

17                    MR. HUNT:  Can I make one -- sorry to

18         interrupt.

19                    Are you done, moving on to the next

20         one?

21                    MS. CHAITMAN:  No, I was going to say

22         something about this.

23                    MR. HUNT:  I was going to make -- for

24         the record, DiGiulian actually has stipulated

25         to the accuracy and --

Trustees Motion to Compel Discovery                     Arbitration 12/13/2016

Page 179

1              THE ARBITRATOR:  I was just using a

2        name.

3              MR. HUNT:  Good.

4              THE ARBITRATOR:  The Maas account.  I

5        wasn't trying to be specific.

6              MR. HUNT:  I didn't think so, but I

7        didn't want an inconsistent record.

8              MS. CHAITMAN:  The -- in fact, one of

9        my clients extraordinarily had records going

10       back and had an original check that Madoff

11       had sent her that she hadn't cashed.  So her

12       account was charged with that amount, but she

13       hadn't actually withdrawn it.  So that was an

14       error.  And --

15             MR. JACOBS:  That's not an error in

16       our books and records.  That's back --

17             MS. CHAITMAN:  It showed up as a

18       withdrawal on her statement.

19             THE ARBITRATOR:  Depends on the

20       accounting system you use, I suppose, and

21       that's --

22             MS. CHAITMAN:  But that's the kind of

23       thing.  If they don't count that as an error

24       when a check is not cashed --

25             MR. JACOBS:  How would we know if the

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 180

1          check was cashed or not unless Ms. Chaitman

2          produces the discovery which we asked for,

3          which are those bank statements and

4          confirmation --

5               THE ARBITRATOR:  Really the request is

6          list every single factual error of which you

7          are aware.  Your point is you were unaware of

8          that --

9               MR. JACOBS:  Right.

10               THE ARBITRATOR:  -- despite a

11          good-faith effort.

12               MR. JACOBS:  It's also --

13               THE ARBITRATOR:  And I think -- you've

14          been harping on proportionality.  I think

15          I've dealt with that by limiting the universe

16          to the 92 accounts.

17               MR. JACOBS:  Okay.

18               THE ARBITRATOR:  And if at the expert

19          discovery stage, it turns out that there are

20          a number of errors, then, as I said, I'll

21          deal with that at that stage.

22               MR. JACOBS:  Okay.

23               THE ARBITRATOR:  Okay.  What's next?

24               MR. JACOBS:  I think that same ruling

25          would apply to --

Page 181

```
1                    THE ARBITRATOR:  2, 3 and 5?

2                    MR. JACOBS:  Let me --

3                    THE ARBITRATOR:  Ms. Chaitman had 2, 3

4          and 5 as a page, basically.

5                    MR. JACOBS:  Right.  I'm not sure that

6          I even can understand Request 3 as drafted.

7          I don't know what this means, to list every

8          single factual error asserted by any Madoff

9          or BLMIS customer in their statements.  How

10         does a customer assert an error in their -- I

11         just think -- I don't understand what this

12         request is seeking.

13                   MS. CHAITMAN:  Let me explain.

14             What I meant to request is that if

15         Mrs. Jones asserts that on her December 31,

16         2001, statement there's an error and she

17         brings that to your attention and she's

18         correct, I'm asking you to produce the

19         documents that indicate that.

20                   THE ARBITRATOR:  Well, I -- there's

21         two ways in which this could be read.  One

22         is -- well, building on what Ms. Chaitman

23         said, the bringing it to the attention of

24         somebody could be in realtime such that

25         somebody in 2007 wrote a letter to Madoff and
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 182

1          said, I never cashed that check so your

2          accounting is wrong.

3                    Or it could be in connection with the

4          bankruptcy proceeding.  In connection with

5          the bankruptcy proceeding, obviously you know

6          if somebody has asserted such a contention,

7          Ms. Chaitman.  So really it's the sort of

8          realtime complaints.

9                    And, again, I'm going to limit that to

10         the 92 accounts at issue.

11                   MR. JACOBS:  Thank you, your Honor,

12         but at this juncture, I really do feel

13         compelled to assert for the record that we

14         object to the fact that we appear to be

15         having a mini hearing here as to the

16         admissibility of the trustee's records.

17                   All of these records are proof of

18         claims that are going to be litigated, and a

19         court of law is going to determine if they

20         have errors or not.  This isn't something --

21         an error is -- what does that mean?  Does

22         that mean do I have to disclose an error if I

23         lose in court?  Do I have to disclose -- is

24         it an error if a defendant denies it in her

25         answer?  Is it an error if competing, but

Page 183

1          unresolved factual evidence is produced?

2                  These requests are simply nonsensical.

3          And I have to say, notwithstanding your

4          order, respectfully, on number 2, with

5          respect to number 2 and 3, it's not my burden

6          to prove that these records are correct

7          before I have to prove them.

8                  And it's not my burden to make

9          determinations as to whether a court of law

10         is going to determine that my proofs are

11         legally sufficient or not before those

12         determinations have been made.

13                 THE ARBITRATOR:  Nor am I requiring

14         that.  And it's not a prospective

15         undertaking; it's your knowledge -- when I

16         say "you," I mean the trustee -- as of today.

17         So if, for example, in the 92 accounts,

18         you're aware today that there was some

19         accounting miscalculation, you would have to

20         produce that information to Ms. Chaitman.

21                 As I said, as a practical matter,

22         you're likely only to get to that stage when

23         I guess it's -- Collura opines about a

24         particular account.

25                 MR. JACOBS:  Right.

Page 184

1          THE ARBITRATOR:  And what the sequelae

2     of that would be is something I reserve

3     decision on.  So I think you're worrying

4     about something that hasn't happened and may

5     not happen.

6          MR. JACOBS:  I guess I'm still stuck

7     on this concept of error.  I mean, our -- we

8     construct our Exhibit Bs based on what we

9     believe to be true and correct based on our

10    investigation.

11         THE ARBITRATOR:  So your --

12         MR. JACOBS:  It's a combination of

13    account statements, bank transfer records,

14    third-party records and other materials.  So

15    we are not going --

16         THE ARBITRATOR:  And if --

17         MR. JACOBS:  -- pursue, for example,

18    on a withdrawal that we don't have a

19    good-faith basis to believe occurred, whether

20    the check was cashed or not, whether we're

21    right or not, whether -- it didn't happen.

22         Because we painstakingly constructed

23    each of our complaints with respect to each

24    account and our net equity analysis, with the

25    help of our experts and consultants, in

Page 185

 1          making determinations on which claims to

 2          pursue and which ones not to pursue.

 3                  THE ARBITRATOR:  Which is my point,

 4          that your answer may well be, now that I've

 5          narrowed it to the 92 accounts, we are aware

 6          of no such errors at this time.

 7                  MR. JACOBS:  Okay.

 8                  THE ARBITRATOR:  Maybe there are some

 9          that you're aware of, but it's equally

10          plausible that you're not aware of any such

11          errors.

12                  So that was 3.  And 5 is the one --

13                  MR. JACOBS:  The number 5 we discussed

14          at length with Judge Bernstein, and he agreed

15          that we find this nonsensical.  I don't know

16          what "riddled with fraud" means, if this is a

17          challenge to the admissibility of our records

18          that's not currently before your Honor and

19          not properly ruled upon at this juncture.

20                  What we have maintained is that -- and

21          what our experts will maintain, as we've

22          discussed at length today, is that the cash

23          activity reflected in the customer statements

24          is accurate and reliable, but the stock

25          trading activity included in those documents

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 186

1          and others that were provided to customers

2          reflect fraudulent trading -- purported

3          trading activity that never occurred.

4              So that may be where this "riddled

5          with fraud" expression is coming from, but

6          put together in the context of this request,

7          it's nonsensical, and we shouldn't be

8          required under any theory to respond.

9              THE ARBITRATOR:  Well, as to Request

10         No. 5, there's two different versions of it.

11             MR. DEXTER:  I think it was changed to

12         "permeated."

13             THE ARBITRATOR:  Yes, that's the point

14         I was about to make.

15             And I assume that that's a quote from

16         the complaint.

17             MS. CHAITMAN:  It's a quote from the

18         trustee's expert, who said that.

19             MR. JACOBS:  If it's a quote from --

20             THE ARBITRATOR:  But obviously it's,

21         from the trustee's perspective, lifting the

22         words out of context.

23             MR. JACOBS:  At a minimum, it's

24         lifting the words out of context.  It's

25         completely divorcing the words of any context

Page 187

1          and putting it in a request that, when read,

2          is not coherent.

3                    THE ARBITRATOR:  Well, let's not

4          characterize it pejoratively.  The reports

5          presumably are going to be the reports of

6          Collura and -- I'm not quite sure what

7          Greenblatt talks about, but maybe Greenblatt.

8                    And as to certain of her customers, to

9          the extent she stipulates to the accuracy of

10         the deposits and withdrawals, there's no

11         reason why you should have to answer Request

12         No. 5.

13                   But to the extent she does not so

14         stipulate, it seems to me those reports will

15         be the expert reports.  And the expert

16         reports will reference, I would imagine, the

17         documents upon which the expert bases his or

18         her conclusion.

19                   So you may be getting that later than

20         you wished, Ms. Chaitman, but you will be

21         getting it.

22                   MR. JACOBS:  And I can also add that

23         the case -- the case-wide documentation

24         underlying those reports is already in Data

25         Room 1, which has been made available.  That

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 188

```
 1            would include all of the bank transfer

 2            records that we have, which are labeled by

 3            producing bank and the appropriate subfolder

 4            so it's easy to find.

 5                 There's also -- as we told

 6            Ms. Chaitman, there's a full universe of

 7            every customer's statement.  There's a full

 8            set of all the customer statements that we

 9            have in the data room.  And while we've made

10            that available in connection with our expert

11            report -- while we may disagree it's relevant

12            to the issue of whether this defendant

13            received transfers, as we've said, it was

14            considered by our expert in connection with

15            his conclusions.  And it's in the data room,

16            so you can do with it what you see fit.  It's

17            made available to you.

18                 THE ARBITRATOR:  Let's move on.

19                 MS. CHAITMAN:  Okay.

20                 THE ARBITRATOR:  What's next?

21                 MS. CHAITMAN:  We need to go to 4,

22            your Honor, "List every profit withdrawal

23            entry on a customer statement where there's

24            no documentary evidence that the customer

25            requested to receive profit" --
```

Page 189

1            THE ARBITRATOR:  I'm sorry.  Which

2       number?

3            MS. CHAITMAN:  Number 4.  We skipped

4       4.  We went from 3 to 5.

5            THE ARBITRATOR:  Right.

6            MR. JACOBS:  Your Honor, this is again

7       the problem with doing these requests

8       theoretically across cases with -- divorced

9       from a factual context.  There are no PW

10      transactions in this case.  But even if there

11      were, Ms. Chaitman has all of this discovery

12      already in connection with the PW proceeding.

13           I'll stipulate that it can be

14      deemed -- it's deemed produced in this or in

15      any other case where PW is an issue.  That

16      discovery was exhaustive.  There were expert

17      reports exchanged.  There were documents

18      underlying those reports exchanged.  She has

19      all of it already.

20           So it's not relevant to this case, but

21      even if it were, I would agree to deem it

22      produced in this case so we don't have to go

23      through the charade of producing it again.

24           THE ARBITRATOR:  Let me just say that

25      my marginal note to myself was "Going to be

Page 190

1           addressed in PW litigation," and I didn't

2           have a question mark after it so --

3                 MS. CHAITMAN:  No, but the answer

4           is -- the answer is no because Judge

5           Bernstein's order specifically provided that

6           the profit withdrawal litigation was only for

7           people who asserted SIPA claims, but were not

8           defendants in claw-back actions.  So he

9           segregated it.  So no one who was a defendant

10          in a claw-back action had the right to

11          participate in the profit withdrawal

12          litigation.

13                THE ARBITRATOR:  Let me ask a

14          different question, which is, suppose

15          Customer Jones never requested a profit --

16          let me go back a step.

17                Are we using "profit withdrawal" as a

18          term of art to mean something that's a subset

19          of withdrawals generally?

20                MS. CHAITMAN:  Yes.  These were

21          withdrawals that occurred before 1992 in

22          general.  There were some afterwards up to

23          1997, but the -- they were reflected on

24          statements from 1980 or '81 and some up to

25          1997.  Most ended in 1992.  It was a specific

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 191

1        entry.

2              THE ARBITRATOR:  And were these

3        customers who were getting all of the monthly

4        profits shown or quarterly were getting

5        profit withdrawals or what?

6              MS. CHAITMAN:  Under this trading

7        strategy, they would get the profit on a

8        specific arbitrage transaction when the money

9        hit the account.  And the evidence in the

10       profit withdrawal litigation has been that

11       people were not sent profit withdrawals

12       unless they asked for them in writing.

13             So what Collura did with respect to

14       the profit withdrawal participants, which was

15       a subset that excluded all the claw-back

16       defendants, is, she produced a report which

17       said, as to the following 3,000 people,

18       whatever it was, there is no documentary

19       evidence within Madoff's records that these

20       people requested or received a profit

21       withdrawal.

22             So what I'm asking for -- I don't

23       believe I have to wait for expert reports on

24       this.  I'm asking whether there is any

25       documentary evidence to support the profit

Page 192

1        withdrawals on the claw-back defendants'

2        statements.

3              Now, obviously it doesn't reflect --

4        it didn't affect the three that we're

5        specifically talking about, but these

6        interrogatories were intended to be served on

7        everyone.

8              THE ARBITRATOR:  I'm still not getting

9        why, as to the claw-back defendants, this is

10       relevant or why they're carved out.

11             MS. CHAITMAN:  Because Judge Bernstein

12       did that.  Honestly I think he shouldn't

13       have, but he did.  And so the factual --

14             MR. JACOBS:  That is actually defense

15       counsel's request, to carve out, so the PW

16       proceeding is separate from the adversary

17       proceeding.

18             THE ARBITRATOR:  I understand -- maybe

19       I misunderstand, but my understanding was

20       that Judge Bernstein is looking for issues

21       that can be dealt with universally and that

22       one of those is the profit withdrawal issue

23       and that, therefore, he's having an omnibus

24       hearing or litigation, whatever you want to

25       call it, with respect to that.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 193

1              Is that correct?

2              MR. JACOBS:  That is correct, but it's

3         only -- I agree with Ms. Chaitman.  By court

4         order, it's only applicable to the claimants.

5              MS. CHAITMAN:  Not the claw-back

6         defendants.

7              MR. JACOBS:  And those are customers

8         who we didn't necessarily sue, but who filed

9         claims with the trustee.  We denied the

10        claim, for whatever reason, and they

11        objected.  And we're now litigating the

12        objections.  And part of that objection is

13        that the trustee didn't properly credit these

14        PW transactions.  So it gets unfolded --

15             THE ARBITRATOR:  Let me just be --

16        before you say whatever it is you were about

17        to say, Ms. Chaitman, if the trustee

18        stipulates that all of the discovery in the

19        PW litigation will be made available to you

20        here, doesn't that go a long way to resolving

21        this?

22             MS. CHAITMAN:  No, because there was

23        no discovery in the PW proceeding relating to

24        the claw-back defendants.  That was the

25        whole -- I don't -- I don't recall why it was

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 194

1          done that way, but my impression was that

2          Judge Bernstein ordered that, that if you

3          were a claw-back defendant and you challenged

4          a profit withdrawal, you had to do it in the

5          claw-back discovery.  So that's why we're

6          asking this specific information.

7               MR. JACOBS:  I think I can address

8          this.  There's two separate types of

9          discovery that, in my mind, related to PW

10         that would be relevant in an adversary

11         proceeding that has PW in a relevant account.

12              One is, in the fact discovery stage,

13         all of the materials we already produced,

14         which are the account statements, the bank

15         transfer records and the account opening and

16         closing documents and all of the

17         correspondence, which would contain all of

18         the evidence we have with respect to those

19         sued-upon accounts of how those PW

20         transactions should or would be or were

21         characterized.  Right.

22              Secondarily, there will be -- PW will

23         likely be addressed by our experts later on

24         down the road as part of their analysis that

25         might fill any factual gaps for which there's

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 195

1          no record one way or another.

2                So discovery -- we are already

3          affirmatively producing any PW-related

4          materials that would be relevant in any given

5          adversary proceeding specific to those

6          defendants in the case.  Then I anticipate

7          we'll also be --

8                THE ARBITRATOR:  If somebody

9          affirmatively requested, by way of a letter,

10         for example, profit withdrawal, that also --

11               MR. JACOBS:  That's a produced --

12               THE ARBITRATOR:  -- to the extent you

13         had it, that would be part of this CAD?

14               MR. JACOBS:  Correct.  So our initial

15         disclosure production, we do this without

16         even a request.  It just goes out the door.

17         We repackage it.  It's the core account

18         documents, which are customer statements and

19         other similar types of reports that BLMIS

20         generated over time, reflecting all of the

21         customer account activity for all of the

22         relevant accounts.

23               So that would be the sued-upon

24         accounts and any accounts from which the

25         sued-upon accounts got inter-account

Page 196

1          transfers.

2                 We also produced the bank transfer

3          records, which would be JPMorgan, in most

4          instances, records of cash activity coming to

5          and leaving BLMIS's account to or from the

6          defendants.

7                 We also produced a customer file for

8          those accounts that BLMIS maintained, which

9          includes all the correspondence.  So if

10         Defendant X wrote a letter to Bernard Madoff

11         instructing that dividends on certain stocks

12         held in my account should be -- result in a

13         check paid to me, that would be produced.

14         All of that's produced in fact discovery

15         right out of the gate.

16                THE ARBITRATOR:  And the only

17         carve-out is the adversary proceedings.

18                MR. JACOBS:  The carve-out from the PW

19         claims proceeding?

20                THE ARBITRATOR:  Yes.

21                MR. JACOBS:  Yes, the adversary

22         proceedings are carved out from that.

23                THE ARBITRATOR:  Ms. Chaitman has 92

24         of those -- just give me a sense of scale,

25         how many adversary proceedings are still

Page 197

1          kicking around?

2                  MR. JACOBS:  We have around 350 or so

3          still active, I believe.

4                  MS. CHAITMAN:  You told me 300 a

5          couple of months ago.

6                  MR. JACOBS:  It's around 300.  I might

7          be off.

8                  THE ARBITRATOR:  Well, so as to

9          Ms. Chaitman's clients, she's going to get

10         that at the expert discovery stage, and the

11         underlying documents from which you could

12         infer the answer have been produced.

13                 What she's not getting by way of that

14         is, for the other 208 or so accounts, that

15         information, but I think the relevance of it

16         as to the other 208 is dubious, at best.

17                 So I'm not going to require an answer

18         to Request No. 4 at this time.

19                 MR. JACOBS:  Thank you, your Honor.

20                 MS. CHAITMAN:  Okay.  Request No. 6

21         where I have some requests that go to the

22         nature of the outstanding claims, so I think

23         you can rule on them as a body.  And I just

24         want to explain to you why we think it's

25         important.

Page 198

```
 1              THE ARBITRATOR:  6 through 9 deal with
 2         the net equity issue, as I understand it;
 3         right?  Where you say the court didn't have a
 4         full --
 5              MS. CHAITMAN:  It didn't have a full
 6         picture --
 7              THE ARBITRATOR:  Factual record.
 8              MS. CHAITMAN:  It didn't have a full
 9         factual record when it made the
10         determination.  And I would like -- obviously
11         these cases are going to go back to the
12         Second Circuit and possibly even to the
13         Supreme Court.  And I would like to have a
14         full factual record.
15              So, for example, if the only claims
16         that are left are claims of the huge feeder
17         funds or something like that, then I think
18         that that's part of the factual record that
19         the courts that look at this should be aware
20         of.  And it's readily available to the
21         trustee because he has a distribution list.
22         So all he has to do is give us the
23         distribution list.
24              And at some point in time, the
25         subcommittee of the Commercial Financial
```

Page 199

 1          Services committee and the house had

 2          requested this information of SIPA.  And it

 3          had been delivered to Congressman Scott

 4          Garrett as of a certain point in time.  I'm

 5          simply asking that that be updated.

 6                  THE ARBITRATOR:  The only part of this

 7          that I'm inclined to grant, but you may have

 8          the information already, is in Request No. 9

 9          or maybe Request No. 6 or both; but

10          basically, I think you're entitled to

11          aggregate claim information, but I assume the

12          trustee reports that periodically.

13                  MR. JACOBS:  That's reported in every

14          single interim report that we file.  It's

15          also regularly updated on the trustee's

16          website at www.madofftrustee.com.  So with

17          the click of a mouse, all of that information

18          is in realtime, updated and available to

19          Ms. Chaitman.

20                  And beyond that, we rigorously object

21          to having to produce any additional

22          materials.  Judge Bernstein has explicitly

23          rejected this legal defense.  It's really an

24          attack on the trustee's standing under SIPA

25          78fff-2(c)(3).  The defendants are planning

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 200

1              to argue that he has enough money to fulfill
2              all the outstanding claims in the customer
3              fund.
4                   And that's simply not true at the time
5              this defense was raised.  It was not true at
6              the time Judge Bernstein rejected explicitly
7              this legal argument and his omnibus decision
8              on the motion to dismiss.  And it's not true
9              today.
10                  So there's no legal basis that would
11             allow for an order determining that any of
12             this discovery is relevant.
13                  THE ARBITRATOR:  Well, as I said, I'm
14             not going to allow it except to the extent
15             that it's aggregate information.  And that is
16             publicly available.  So the short answer is
17             I'm not going to allow it.  When the Second
18             Circuit reverses based on that ruling by
19             Judge Bernstein and me, then I guess we'll be
20             back at it again.
21                  What's next?
22                  MR. HUNT:  One of the drabs that comes
23             in for...
24                  MR. JACOBS:  I believe that was 6
25             through 9.

Page 201

1               THE ARBITRATOR:  Right.

2               Ms. Chaitman?

3               MS. CHAITMAN:  So 10 --

4               THE ARBITRATOR:  10 is where I have to

5        go to the other set because you substituted.

6        It's not asking about the fee arrangement

7        anymore.  It's --

8               MS. CHAITMAN:  No, it's here.  Here it

9        is.

10              THE ARBITRATOR:  I've got it here.

11       List of every allowed claim, is that it?

12              MS. CHAITMAN:  Yes.

13              THE ARBITRATOR:  I think -- how is

14       that different than 6 through 9?

15              MS. CHAITMAN:  It's not.  I agree.

16              THE ARBITRATOR:  So the ruling is the

17       same.

18              MR. JACOBS:  I'm sorry.  Which number

19       were we just looking at?

20              THE ARBITRATOR:  Number 10.

21              MS. CHAITMAN:  So number 11, we're

22       asking for, "For each year of Madoff's

23       operation, state all facts on which you base

24       your position that Madoff did not purchase

25       securities for his investment advisory

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                      Page 202

1          customers and produce the documents on which

2          you base your position."

3                 This goes to one of the most important

4          issues in the case for anyone who was a

5          long-standing Madoff customer.

6                 THE ARBITRATOR:  This is the dispute

7          between the trustee's position and

8          Mr. Madoff's testimony and Mr. DiPascali's

9          plea.

10                MS. CHAITMAN:  Right, but the point

11         is, we have a right to the production of

12         these documents.  This goes to a core issue

13         in the case.

14                THE ARBITRATOR:  Let's take the first

15         part of it first.  I think that it's not

16         unduly burdensome and is relevant to have you

17         set forth the trustee's position, which I

18         assume can be done in a paragraph.

19                MR. JACOBS:  Your Honor, this is

20         exactly the subject of Bruce Dubinsky's

21         report.  We intend to meet our burden of

22         proof through an expert that we proffered in

23         this case.  We provided Ms. Chaitman with an

24         early production of that report, which is our

25         answer to this request.  It's not -- it is

Page 203

1          absolutely, given the complexity of the fraud

2          that occurred, not something we can reduce to

3          a paragraph.

4               THE ARBITRATOR:  So the answer may be,

5          see Dubinsky report at pages whatever through

6          whatever.

7               MR. JACOBS:  Right.  I believe that's

8          what we did answer.  We said the request was

9          premature because it was the subject of

10         expert analysis and it will be disclosed

11         pursuant to the case management order.

12              THE ARBITRATOR:  I looked at the

13         request, but not the --

14              MR. JACOBS:  I'm not looking at it

15         right now either, but I can't imagine we said

16         anything different.

17              MS. CHAITMAN:  I have the response.

18              Do you need the response, Judge?

19              THE ARBITRATOR:  No, I've got it here.

20              MR. JACOBS:  "The trustee objects to

21         this request on the grounds that it

22         prematurely seeks to have the trustee

23         disclose expert material well in advance of

24         the deadline in the case," but that's the

25         objection I'm making.

Page 204

 1                THE ARBITRATOR:  Let me interject.

 2        Off the record before you do that.

 3                (Discussion off the record.)

 4                MR. JACOBS:  I'm happy to repeat that.

 5        It was 78fff-2(c)(3).

 6                THE ARBITRATOR:  Start over.

 7                MR. JACOBS:  Please feel free to

 8        interrupt me any time.

 9                THE ARBITRATOR:  Let's -- back on the

10        record.

11                There were a number of bases on which

12        the trustee initially objected to Request

13        No. 11, one of which is work product, the

14        second of which is that Ms. Chaitman was

15        asking for expert discovery materials

16        prematurely, although that's now been waived

17        by production of the Dubinsky report;

18        correct?

19                MR. JACOBS:  That's correct.  So our

20        initial objection referenced the upcoming

21        report, which -- the disclosure of which was

22        not yet due.  Subsequently, in an effort to

23        try to avert as many disputes as possible

24        from coming to your attention or to the

25        court's attention, we made -- we went ahead

Page 205

```
1         and made an early production of that report

2         in this case.

3                 THE ARBITRATOR:  But as to Request

4         No. 11, as a matter of form, I think

5         Ms. Chaitman is entitled to an answer

6         certainly to the first part of this, which is

7         "state all facts."  And if it's done by

8         referencing the Dubinsky report, so be it.

9                 And in terms of producing the

10        documents on which you base your position,

11        are there any documents related to

12        Ms. Chaitman's clients upon which Dubinsky

13        bases his position that have not been

14        produced?

15                MR. JACOBS:  No.  Absolutely not.

16                THE ARBITRATOR:  In any of her 92

17        cases?

18                MR. JACOBS:  Correct.

19                THE ARBITRATOR:  So I think that deals

20        with Request No. 11.

21                MS. CHAITMAN:  Well, I don't think it

22        does because this is precisely the issue we

23        were talking about before.  The Madoff

24        trading records -- to the extent that some of

25        my clients' accounts go back to the 1980s,
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 206

```
 1        the Madoff trading records have not been

 2        produced.  And if the trading records were in

 3        stocks that appeared on my clients'

 4        statements, then my argument would be that

 5        this is evidence that Madoff was trading with

 6        respect to those accounts.

 7             THE ARBITRATOR:  But you're not asking

 8        for, in effect, civil Brady material.  You're

 9        asking for the documents which support the

10        trustee's position, not those which refute

11        the trustee's --

12             MS. CHAITMAN:  Right --

13             THE ARBITRATOR:  -- position.

14             MS. CHAITMAN:  -- I am, but the point

15        is it's the converse.

16             THE ARBITRATOR:  But the request is

17        produce the documents that support your

18        position.

19             MS. CHAITMAN:  Right.  But the point

20        is, I don't think he has any documents.  And

21        that's why I think I'm entitled to a written

22        answer to that effect.  If there are no

23        documents, let him say that.

24             THE ARBITRATOR:  Well, so as to the --

25        I'm going to limit this second part of this
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 207

1              to the 92 clients of Ms. Chaitman.  And you

2              can answer it by referencing the documents

3              that you believe support your position, the

4              underlying documents.  It may be simply a

5              reference to the CADs, but --

6                   MR. JACOBS:  Right.  Well, I guess my

7              problem with this, your Honor, is that

8              Mr. Dubinsky provides about a hundred-page

9              report that goes in-depth, in detail

10             responding to this exact issue and talks

11             about the analysis he conducted with respect

12             to securities trading for the IA business and

13             his conclusion there was no evidence of any

14             securities trading on behalf of any IA

15             customer at any given point in time.

16                  He also talks at length about the

17             relationship between the different functions

18             of BLMIS, like -- enormous detail on the

19             actual stock trading activities that did

20             occur, all of those things, so --

21                  THE ARBITRATOR:  Is there an executive

22             summary?

23                  MR. JACOBS:  What you're asking me to

24             do is provide an executive summary of expert

25             analysis, which I don't think is appropriate.

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 208

1           THE ARBITRATOR:  I'm saying in his

2      report, is there -- I understand it goes on

3      for a hundred pages, but is there a

4      two-paragraph version of it?

5           MR. JACOBS:  I believe that there is

6      at the beginning, yes.  And there are

7      certainly conclusions that are condensed as

8      to the big picture, but I don't think it's

9      appropriate for me, as an attorney, in

10      responding to an interrogatory that goes

11      to -- directly to our expert's analysis -- I

12      don't think it's appropriate for me to have

13      to find a way to paraphrase and package that

14      analysis in a way -- you know, all of the

15      facts he considered, all of the documents he

16      considered, all of the work that he did to

17      reach that executive summary conclusion is

18      detailed at great length in the report.  And

19      I believe I should be entitled to defer to

20      that report in lieu of an additional response

21      to this question, which is what I would like

22      to do.

23           THE ARBITRATOR:  I'm not disagreeing

24      with that.

25           MR. JACOBS:  Okay.  I was

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 209

1           understanding you were asking for a paragraph
2           where I would just disclose specific
3           documents --
4                   THE ARBITRATOR:  I was, but --
5                   MR. JACOBS:  -- and the like when I've
6           hired an expert who does exactly that.  I
7           would like that expert to stand or fall on
8           his analysis on his own, independent of my --
9           you know, my characterization of that expert.
10                  THE ARBITRATOR:  I assume his report
11          reveals the documents on which he relies.
12                  MR. JACOBS:  That's absolutely
13          correct.  And consistent with the litigation
14          procedures order that I referenced earlier in
15          the day, the e-Data Room 1, which we
16          discussed at length today, was formed for the
17          specific purpose of making available --
18                  THE ARBITRATOR:  Well --
19                  MR. JACOBS:  -- all of that material.
20                  THE ARBITRATOR:  -- so you may be able
21          to answer this.  I am going to require an
22          answer.  You may be able to answer it by
23          reference to the report.
24                  MR. JACOBS:  Okay.
25                  THE ARBITRATOR:  And obviously I

Page 210

1          haven't read the report.  If there's some

2          fine-tuning that's warranted, we'll deal with

3          that down the road.

4               MR. JACOBS:  Okay.  Thank you, your

5          Honor.

6               THE ARBITRATOR:  Next.

7               MS. CHAITMAN:  Okay.

8               MR. JACOBS:  Number 12 is asking --

9          again it's the same issue as Request No. 1.

10         It's asking for -- it can be construed as

11         asking for our work product of employees or

12         other individual -- interviews of individuals

13         in connection with those conclusions.

14              Now, I will say Mr. Dubinsky, in his

15         report, does reference all of the materials,

16         the depositions and examinations, he did in

17         his investigation in arriving at his

18         executive summary conclusions.  That's all

19         disclosed to the extent it's available.

20              Beyond that, I'm objecting to any

21         additional disclosure on the basis that it's

22         work product.

23              MS. CHAITMAN:  So let me ask you

24         something, Judge.  Do you think it's

25         appropriate -- let's just assume that, in

Page 211

 1           fact, the trustee's personnel have spoken

 2           with some of the Madoff traders, who insist

 3           that they actually did legitimate trades and

 4           that they did trades for the investment

 5           advisory customers.

 6                   Is it your position then that they

 7           don't have an obligation to disclose that to

 8           me?

 9                   THE ARBITRATOR:  You're

10           hypothesizing -- let me make sure I

11           understand this -- that, by way of example,

12           counsel or some other investigator that

13           counsel retained spoke to employee X, who

14           said, Madoff is right, it was trading.  And

15           then, without disclosing that, they hired

16           Mr. Dubinsky and said, go off and do your own

17           investigation.

18                   MS. CHAITMAN:  Right.

19                   THE ARBITRATOR:  And Dubinsky issued

20           his report, and the trustee did not disclose

21           to Mr. Dubinsky that there's evidence to the

22           contrary.

23                   MS. CHAITMAN:  Right.

24                   THE ARBITRATOR:  Well, I think that if

25           that were the case, Baker Hostetler and its

Page 212

1          lawyers would have much more fundamental

2          problems dealing with their ability to

3          practice law in the future.

4                  MS. CHAITMAN:  But then why wouldn't I

5          be entitled to this information?

6                  THE ARBITRATOR:  Because it's classic

7          work product.  They --

8                  MS. CHAITMAN:  But we have a need for

9          it and we have no access to it.  The trustee

10         is in a unique position to be able to

11         question the former Madoff employees.

12                 MR. JACOBS:  This request is coming as

13         pure speculation as if things she presumes --

14         things exist that are purely conjecture.

15         There has to be an articulable need for

16         specific information.

17                 THE ARBITRATOR:  Well, within these

18         adversary --

19                 MR. JACOBS:  I can't make up things

20         that didn't happen or that don't exist.

21                 THE ARBITRATOR:  Within these

22         adversary proceedings, when does deposition

23         discovery occur?

24                 MR. JACOBS:  In fact discovery for

25         fact witnesses --

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 213

1              THE ARBITRATOR:  Right.

2              MR. JACOBS:  -- and then expert

3       discovery for expert witness.  Expert

4       discovery has come and gone.  In a number of

5       Ms. Chaitman's cases, she hasn't deposed

6       Mr. Dubinsky.  She hasn't deposed

7       Ms. Collura.  She hasn't deposed

8       Mr. Greenblatt.

9              Ms. Chaitman, other than Mr. Madoff,

10      hasn't served any Rule 45 subpoenas for

11      deposition testimony of any BLMIS employees

12      or anybody else.

13             It's incumbent upon Ms. Chaitman to

14      conduct her own investigation, further her

15      speculative theories of the case.  We don't

16      have any obligation to do that for her.  And

17      to the extent we've done it, it's our work

18      product, which is shielded from discovery.

19             THE ARBITRATOR:  Well, I'm not

20      unsympathetic -- and this is probably a

21      speech I should have given at the beginning.

22      I'm not unsympathetic to the fact that even

23      with 92 clients, Ms. Chaitman's resources are

24      considerably less than the trustee's.

25             And in appropriate circumstances, that

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 214

1          might warrant some shortcuts, but you have

2          been given a list of all of the employees.

3          And, again, Request No. 12, like at least one

4          of the other requests, asks for attorney work

5          product to the extent that it's going beyond

6          what Mr. Dubinsky did.  So I'm going to deny

7          Request No. 12.

8                    MS. CHAITMAN:  Okay.  Request No. 13,

9          they actually ultimately produced the

10         document.

11                   THE ARBITRATOR:  Right.

12                   MS. CHAITMAN:  "Explain the basis on

13         which you determined that the defendants have

14         no net equity and produce the front and back

15         of each check."

16                   Well, they've actually -- they

17         produced those now.

18                   Number 15, "Explain how you intend to

19         establish that Madoff was insolvent in each

20         year from 1960 to 2000 and produce all

21         documents on which you will rely to establish

22         insolvency."

23                   What they've done is simply relied

24         upon their expert.

25                   THE ARBITRATOR:  Right.

Page 215

1              Who's the expert on this?

2              MR. JACOBS:  It's Mr. Dubinsky.  So

3         his report is broad in insolvency

4         collectively.  And so all that discovery and

5         that analysis has been made available in this

6         case.

7              However, Judge Bernstein has raised a

8         good question as to whether insolvency is any

9         longer actually an element in our case -- in

10        this case.  I believe the answer is, no, it's

11        not a burden of proof that we have with

12        respect to the avoidance actions.

13             However, I expect at some point that

14        will be addressed on motion or briefing after

15        further briefing with Judge Bernstein.

16             But even if it is relevant, it's our

17        same response as to the prior request,

18        number 11, asking for the basis of the facts

19        on which we state our conclusion that BLMIS

20        was a fraud.  It's the same answer as -- this

21        is exactly the subject matter of

22        Mr. Dubinsky's expert's analysis.  We rely on

23        his report in answering this interrogatory

24        and all of the specific documentation he

25        references, which we've made available in

Page 216

1          e-Data Room 1.

2                    MS. CHAITMAN:  If they're relying on

3          the Dubinsky report, then they're limited to

4          the Dubinsky report, I assume, and they're

5          not going to be able to introduce evidence

6          beyond that.  And if I get such an order,

7          then I'm satisfied with it.

8                    But I don't want a situation where

9          they all of a sudden decide that, for

10         whatever reason, Dubinsky's report is not

11         reliable and now they're going to put in a

12         whole bunch of evidence that I haven't had

13         the opportunity to obtain in discovery.

14                   MR. JACOBS:  On insolvency?

15                   MS. CHAITMAN:  Yes.

16                   MR. JACOBS:  We have endeavored to

17         make available everything we could possibly

18         find that might be relevant to that subject

19         matter.  You have all --

20                   THE ARBITRATOR:  Is there anything

21         beyond Dubinsky and the documents he relies

22         on that you would proffer at trial?

23                   MR. JACOBS:  Absolutely not.  And

24         certainly if -- just as Ms. Chaitman stated

25         earlier, if we obtain something from a third

Page 217

```
 1        party, we'll provide it and we'll add to the
 2        data room and we'll supplement a report, if
 3        needed.  We'll make it available.  But
 4        sitting here today, there's nothing to my
 5        knowledge that has not been made available on
 6        that subject.
 7             THE ARBITRATOR:  I think you can
 8        answer it by saying, "See Dubinsky report."
 9             MR. JACOBS:  Okay.
10             THE ARBITRATOR:  What I know about
11        bankruptcy could be written on the head of a
12        pin, but I did look at 11 U.S.C. Section 548
13        (a)(1)(A) versus (B).  And it does appear
14        that Judge Bernstein was right when he said
15        that insolvency is not an issue when you have
16        an intent to defraud.
17             MR. JACOBS:  Right.  And to explain
18        why we address it affirmatively is, as I'm
19        sure you know from the background materials
20        we provided, the legal landscape of this case
21        has changed for many defendants over time,
22        including what we call the feeder fund in the
23        bank cases, where we have a claim above and
24        beyond just the avoidance actions we have
25        here.
```

Page 218

1              But also -- you know, insolvency also

2         could be construed as being indirectly

3         relevant to the fraud.  Insolvency is an

4         indicia of fraud.  So that interrelates with

5         these earlier periods of time.  Whether it

6         be -- so I'm making this point because the

7         issue of whether stocks were traded or not is

8         in and of itself not conclusive of whether

9         there was a Ponzi scheme or a fraud.

10             So that is an important fact that I

11        don't think gets conflated in the discovery

12        disputes we're having.  I just wanted to make

13        it clear.

14             THE ARBITRATOR:  Okay.  Anything else

15        on Wilenitz?

16             MS. CHAITMAN:  Yes, number 16.

17             THE ARBITRATOR:  Oh, I'm sorry.

18             MS. CHAITMAN:  "Provide the gross

19        trading volume by both number of shares

20        traded and total dollar value for each of

21        Madoff's operations broken down by the

22        investment advisory business, the proprietary

23        trading business, and the market-making

24        business and produce the documents on which

25        you base your responses."

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 219

 1            MR. JACOBS:  Now, our objection here,
 2       your Honor, is something you alluded to this
 3       morning with respect to the nature of the DTC
 4       records.  Our answer -- our objection to this
 5       particular request is -- we have a number of
 6       objections, but first and foremost, this is
 7       an investigation that Ms. Chaitman is asking
 8       us to do to further her speculative theory
 9       that she wishes to advance to challenge the
10       fraud.
11            We've made the underlying
12       documentation that is available, all of it,
13       to her.  She can do that investigation
14       herself.  And under Rule 33(d) that is
15       entirely appropriate and called for here.
16            And to be clear, we're not just saying
17       go look in the data room.  We have told her
18       specifically where all of the documents she
19       would need to attempt this manipulation of
20       the data for her purposes can be found.  And
21       it's all in a single, segregated folder
22       called DTC under the main subfolder data in
23       the data room.
24            MS. CHAITMAN:  But it doesn't because
25       that's not -- that's 2002 on.  And, again,

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 220

1          we're --

2                    MR. JACOBS:  Again, I'll reiterate,

3          your Honor, Ms. Chaitman has everything we

4          have and we've -- at the moment, that we know

5          of.  So we don't have any other documentation

6          that we know of that would allow us to do

7          this.

8                    And the DTC records specifically --

9          they don't track -- they show day-over-day

10         difference, like in volume.  So they'll show

11         that X amount of a certain type of stock

12         was -- existed and BLMIS held this day and

13         then the next day it changed by this amount.

14                   It's not exact -- the DTC records

15         don't break out the data into these easily

16         discernible buckets that Ms. Chaitman would

17         like it to.  And unfortunately we can't help

18         that.  So we can't do the impossible.

19                   I don't know of any records that would

20         allow us to assign this volume data that

21         she's looking for by the proprietary trading

22         versus investment advisory business.  All I

23         can say is that we have the DTC data that

24         reflects trading done through BLMIS's only,

25         and they only have one, DTC terminal for the

Page 221

```
 1          relevant period that we have.

 2                  And it's all been made available, and

 3          she can do whatever investigation she wishes,

 4          including, she can hire her own consultants

 5          to analyze that, she can hire her own expert

 6          to opine as to what that means.  We shouldn't

 7          have to do that for her.

 8                  THE ARBITRATOR:  I gather this goes to

 9          the notion that if two of the three

10          activities of BLMIS were legitimate, the

11          Ponzi scheme presumption should not apply.

12                  MS. CHAITMAN:  In part.

13                  THE ARBITRATOR:  Okay.

14                  MS. CHAITMAN:  And, in part, that the

15          fraud did not start until 1992.  So, you

16          know, the DTC records, which unfortunately

17          only exist from 2002 on, are not relevant.

18          Once Mr. Madoff says the fraud started in

19          1992, I'm not going to argue that it started

20          later.  Right.  So I'm only focusing on the

21          period prior to 1992.

22                  But, again, that's very significant

23          because a lot of my clients would be entitled

24          to dismissal of the complaint if the court

25          found that the fraud did not start until
```

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 222

1          1992.

2                    THE ARBITRATOR:  Is it correct,

3          Mr. Jacobs, that you don't have the records

4          for the period from 1980 to 1992, to your

5          knowledge, that --

6                    MR. JACOBS:  It's the same records we

7          were discussing earlier in the day that we

8          will look for.  I will update you in a week's

9          time as to those efforts.  I don't know of

10         any that I confirm that exist beyond what is

11         in the data room currently.  And if we find

12         them, we will produce them.

13                   THE ARBITRATOR:  But even if there are

14         records, it seems to me that this is really

15         an exercise -- I recognize that we're dealing

16         with far more limited resources, but one that

17         you, or an expert that you retain, would have

18         to engage in; that it's not appropriate to

19         have the trustee endeavor to do this,

20         assuming that he could, in terms of breaking

21         it down by business.

22                   And I thought I heard Mr. Jacobs say

23         that they couldn't do it even if they had the

24         records.  So I'm going to deny that request.

25                   17?  Is that --

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 223

1              MS. CHAITMAN:  17 I think we covered

2         because that was the employees.

3              THE ARBITRATOR:  Right.  Well --

4              MS. CHAITMAN:  I've got the list that

5         specifies the area so --

6              THE ARBITRATOR:  What else?

7              MS. CHAITMAN:  -- I'm okay with that.

8              18.  And this is "For each security

9         listed on the defendants' account statements

10        for each year from 1982 on, set forth the

11        number of shares that BLMIS held."

12             And that again goes to the trading

13        records.  And just to be absolutely clear

14        about this, the evidence of the trading could

15        have existed in a number of different forms.

16        It could have been actual computer-generated

17        records where they kept track of the

18        securities.

19             And considering the volume that Madoff

20        was doing and the fact that it was

21        market-making, it wasn't done on an exchange.

22        So it was done privately, from firm to firm.

23        And there were internal records -- there

24        would be like a -- at the end of a day, there

25        would be a netting out sheet, which would

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 224

1         have -- could go on for thousands of

2         transactions.  And then at the bottom, it

3         would say Madoff owes the clearinghouse

4         3 cents or the clearinghouse owes Madoff

5         3 cents.  So it could be that.

6              There are all different kinds of

7         records that would have reflected the

8         trading.  And I just want it to be clear that

9         I'm asking for that very broad scope, and

10        we're talking about the period prior to 1992.

11             MR. JACOBS:  Again, your Honor, the

12        issue is the same as the issue I had with

13        Request 16.  All of the documents that

14        evidence actual trading at BLMIS have been

15        made available to Ms. Chaitman, in addition

16        to the DTC records, as I mentioned.

17             We also subpoenaed the Chicago Board

18        of Options Exchange.  We also subpoenaed the

19        Chicago Mercantile Exchange.  We also scoured

20        all the books and records of the debtor to

21        see if there were any indicia of these

22        out-of-the-market or weekend or black pools

23        of liquidity -- trading that Mr. Madoff says

24        he was doing.  There's no evidence of that.

25        And what there is we've made available.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                        Page 225

     1              So what Ms. Chaitman would like to do

     2         is -- if I understand her theory correctly,

     3         is she would like to now argue that the --

     4         there were stocks traded through the

     5         proprietary trading arm of BLMIS on behalf of

     6         specific IA customers.

     7              And I can tell you with all of the

     8         documents that I currently know exist, which,

     9         again, I reiterate she has, there is

    10         absolutely no evidence that that ever

    11         happened.

    12              And, furthermore, even if I wanted

    13         to --

    14              THE ARBITRATOR:  But she also has an

    15         interim step, which is, if IBM was shown on

    16         Customer Jones' statement and --

    17              MR. JACOBS:  Right.

    18              THE ARBITRATOR:  -- and BLMIS was long

    19         IBM on that same date --

    20              MR. JACOBS:  Right.

    21              THE ARBITRATOR:  Tell me that.

    22              MR. JACOBS:  Right.  Well, it's my

    23         understanding -- and, again, I don't want to

    24         speak for our expert, but this is an issue

    25         that, again, Mr. Dubinsky squarely addresses

Page 226

```
 1            in his report.  It's not possible to match an
 2            inventory with a customer statement and say
 3            there's a match.
 4                 Because in, I believe, every instance
 5            that Mr. Dubinsky -- wherever he attempted to
 6            do that, where he tried, he failed.  The
 7            records simply don't match.  Because the
 8            customer statements were generated -- BLMIS
 9            had a shadow DTC terminal that wasn't
10            connected to DTC, where we have offered
11            proofs that they actually faked templates of
12            what that trading activity would look like.
13                 They populated it after the fact.
14            They put that into their computer system and
15            used that information to spit out the
16            customer statements that reflects that
17            purported, but fraudulent, trading activity.
18                 And Mr. Dubinsky does painstaking
19            analysis.  Again, he's much smarter than me,
20            so I'm not going to be able to articulate all
21            the ways in which he does it, but he attempts
22            to reconcile those customer statements with
23            the DTC materials that we know do reflect
24            actual trading that occurred, and he can't.
25                 And the grand finality of his
```

Page 227

1          conclusion is that there's no evidence of any

2          instance where BLMIS was actually trading on

3          behalf of a specific IA customer.

4                 So, again, to answer that question, I

5          would refer -- I would answer with

6          Mr. Dubinsky's report and rely on that for

7          the information contained therein.

8                 THE ARBITRATOR:  Well, and it's

9          further complicated potentially by CUSIP

10         numbers.

11                I'm going to deny Request 18 for the

12         same reasons as Request 16.

13                Are we done with that motion?  Is

14         there a cross-motion on that?

15                MR. JACOBS:  The cross-motion was for

16         a protective order that we would like entered

17         in any case where there's universal

18         applicability to these requests.  And I think

19         that since your Honor considered these

20         requests holistically across all types of

21         cases, that an order entering that protective

22         order across all of Ms. Chaitman's cases

23         would be appropriate.

24                Because we didn't look at this through

25         the lens of specifically the Wilenitz

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 228

1          defendants.  We looked at it as if -- from

2          the perspective of a defendant that hadn't

3          conceded things on behalf of the account or

4          any of those other issues.

5                So I think that in any instance where

6          you have denied the discovery, your Honor, a

7          protective order is appropriate across all of

8          Ms. Chaitman's cases so we don't have to

9          relitigate all of this again.

10               THE ARBITRATOR:  Well, I think what I

11         will instead do is have the general principle

12         I outlined earlier, which is that it should

13         apply to all cases that are the same, but it

14         may be that -- without sitting and going

15         through all 92 cases, it would be hard to say

16         it applies to all of these requests and

17         interrogatories as to all of her cases.  So

18         I'm not going to do that.  It will be more of

19         an --

20               MR. HUNT:  Aspirational.

21               THE ARBITRATOR:  That was the word I

22         was trying to find.

23               -- aspirational statement than a

24         ruling.

25               MR. JACOBS:  Okay.  Fair enough.

Page 229

1     Thank you.

2              (Recess from the record.)

3              MS. CHAITMAN:  Are we done except for

4     depositions?

5              MR. HUNT:  I think so.

6              MS. CHAITMAN:  Okay.  So, Judge, if I

7     can just explain about the depositions.  The

8     trustee has noticed depositions in all of the

9     cases.  And in most of them, I haven't sought

10    a protective order.  In these I have, and I'd

11    like to go through them and explain why.

12              THE ARBITRATOR:  Sure.

13              MS. CHAITMAN:  Some of them you may --

14    Edyne Gordon, if I can take her, is the widow

15    of the account holder.  She had nothing to do

16    with the account.  She knew nothing about it.

17    She lives in New Mexico.  She produced

18    whatever documents she had.

19              And with some of my elderly clients, I

20    feel very protective of them.  Because

21    they've never been involved in litigation.

22    It causes them unbelievable anxiety.  And I

23    just worry about them physically.  And that's

24    the category of people we're talking about.

25              And if there were a compelling factual

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 230

1          issue, I would feel differently about it, but

2          the records are what they are.  You've

3          immersed yourself enough in the case that you

4          see what the issues are.  And there's no

5          issue here of intent or -- I mean, there's

6          nothing really that these people can add.

7          That's why I moved for a protective order in

8          these cases.  I can go through them --

9               THE ARBITRATOR:  Well --

10              MS. CHAITMAN:  -- individually.  His

11         wife, she's had a stroke, she's in her 80s,

12         she talks in a very broken way.

13              THE ARBITRATOR:  I've read the papers.

14         Customarily if people were deposed, since

15         they're defendants, not plaintiffs, they

16         typically would be deposed where they live,

17         although that might be inconvenient for you.

18              But it struck me that some of these,

19         there probably would be very few questions to

20         ask.  Palmer, who's the son, doesn't admit

21         the accuracy of Exhibit B, but also

22         apparently has no firsthand knowledge.  I'm

23         not gainsaying that there may be issues he

24         could be asked about if only to preclude him

25         from showing up at trial and saying, suddenly

Page 231

1          I've remembered something.  But maybe with

2          one or two exceptions, if that, these stuck

3          me as depositions that would be

4          extraordinarily short.

5                MR. HUNT:  Our experience has been

6          depositions that we've taken of

7          Ms. Chaitman's clients -- that they've been

8          efficient.  We've gone to where they live.

9          We've allowed her to appear remotely via

10         video link to try to make it more efficient

11         for them.  So, yes, I think you're right.

12               MS. CHAITMAN:  But, you know, the bulk

13         of the depositions -- they follow a certain

14         format.  And I'm not being critical, but the

15         bulk of the time is, do you recognize this

16         check, you know, look at the back of the

17         check, do you recognize the signature.

18         Because they're proving the deposits and

19         withdrawals.

20               If they give me that package, I can

21         sit down with these people and I can review

22         it.  In most instances, we haven't disputed

23         Exhibit B with these clients.  So we can

24         avoid that.  And it's just the trauma to the

25         clients that I'm trying to avoid.

Page 232

```
 1              And if there's a way to do it through
 2         written questions or just giving me the
 3         documents and I'll get back to them, that
 4         would just be so much better than subjecting
 5         these people to the trauma of this.
 6              THE ARBITRATOR:  Well, I agree with
 7         the trustee that you haven't made the
 8         hardship showing in the formal way that --
 9         when I was on the bench, I would require it.
10         Mainly a doctor's note saying they're at
11         death's door or non compos mentis.
12              But it does strike me that this is an
13         area where something should be worked out
14         just because there's probably not much there
15         or there for the trustee, although it may
16         vary from defendant to defendant.
17              Gordon and Harwood I guess have no
18         personal knowledge of what went on.
19              MS. CHAITMAN:  Palmer, DiGiulian,
20         Gordon, Harwood and Pearlman.  Because they
21         were not involved in the accounts.  I mean,
22         in Pearlman what happened was there were
23         three siblings.  And together they've agreed
24         to Exhibit B.  It's just that they didn't all
25         have control in the same period.
```

Page 233

1           MR. HUNT:  Harwood was directly

2      involved.

3           THE ARBITRATOR:  I'm sorry?

4           MR. HUNT:  Harwood was directly

5      involved, for example.

6           THE ARBITRATOR:  Did you give a copy

7      of this to Ms. Chaitman?

8           MR. HUNT:  These are documents that

9      have already been produced to her.

10          THE ARBITRATOR:  I assumed that.

11          MS. CHAITMAN:  You will -- if you

12     depose her, you'll find out that this was

13     typed up by her husband's secretary, and he

14     brought it home and she signed it, if she

15     signed it or if they signed it for her.  She

16     does not have personal knowledge about the

17     account.

18          THE ARBITRATOR:  But --

19          MS. CHAITMAN:  We don't dispute these.

20          MR. HUNT:  That's what we'll find out

21     in the deposition; right?

22          MS. CHAITMAN:  Yes, but we don't

23     dispute the deposits --

24          THE ARBITRATOR:  Is this something

25     that can be done through a deposition on

Page 234

```
1              written questions or a set of interrogatories

2              without prejudice to your right to depose the

3              individual if --

4                   MR. HUNT:  No, because we've worked

5              for years with Ms. Chaitman on stipulations,

6              on requests for admissions and have

7              repeatedly been stonewalled.  And we found

8              that taking depositions of these people is

9              the most efficient way to get the information

10             we need.

11                  THE ARBITRATOR:  Is there any of these

12             depositions -- assuming that the people are

13             compos mentis and not really slow in their

14             functions, is there any of these depositions

15             that would take more than two hours?

16                  MR. HUNT:  Depends on their answers,

17             of course.  I know that the last deposition

18             that Marie took took longer because

19             Ms. Chaitman appeared remotely.  And so every

20             time we introduced a document, we had to

21             identify it to her and read out the Bates

22             number.  And so that took longer.  But none

23             of these depositions have been full

24             seven-hour depositions.

25                  THE ARBITRATOR:  Is there any -- any
```

Page 235

1          reason why you can't give her the exhibits in

2          advance?

3                    MR. HUNT:  We've done that too.

4                    MS. CHAITMAN:  No, you haven't,

5          actually.  And the thing is, if you'd give me

6          the exhibits in advance on the deposits and

7          withdrawals, that takes the bulk of the time

8          and we could at least save these people that

9          time.

10                   THE ARBITRATOR:  Well, I gather you

11         have it -- not with exhibit numbers, but you

12         have it.

13                   MR. HUNT:  We produced -- the last

14         time we did this where she appeared remotely,

15         we sent her copies of everything we were

16         going to use in the deposition.

17                   THE ARBITRATOR:  With exhibit numbers?

18                   MS. CHAITMAN:  Dean, it's not correct.

19                   THE ARBITRATOR:  Let's not go back to

20         whether it's correct or not.  On a

21         going-forward basis --

22                   MR. HUNT:  We'd be happy -- in the

23         deposition I took last week, we provided a

24         binder with everything numbered with exhibit

25         numbers ahead of time.  Sure.

Page 236

```
 1              THE ARBITRATOR:  That should help, A,
 2         truncate the mechanics of it.  Also give you
 3         an opportunity to prep your witnesses.
 4              MR. HUNT:  The one thing I will say is
 5         we will go to where they are and we'll
 6         accommodate them in any way we can to make it
 7         as --
 8              THE ARBITRATOR:  Where have you
 9         typically done these?  In people's houses or
10         nearby law offices --
11              MR. HUNT:  No, we've done it in nearby
12         law offices.  One guy we did at his house;
13         another we did at a hotel room.
14              MS. CARLISLE:  I did an accountant at
15         his house, but that -- he was an accountant,
16         not a defendant.  I've had them in hotel
17         rooms.  There was like a local -- I
18         discovered like a court reporting service had
19         a suite similar to these where there were
20         different conference rooms.  We did one
21         there.
22              Have we done more than one?
23              MR. HUNT:  I guess this is where they
24         picked, I guess --
25              MS. CARLISLE:  We did do one in
```

Page 237

```
 1           Mr. Cohen's office for Placon II.  I'm
 2      certainly willing to do it in somebody's home
 3      if that's been offered, but to date we've
 4      only done the one accountant in his
 5      residence, I think.  And then one in our
 6      offices in New York.  And we have one this
 7      Friday in our offices in Houston for a
 8      gentleman who lives in a separate --
 9               THE ARBITRATOR:  Who's one of
10      Ms. Chaitman's clients?
11               MS. CARLISLE:  Yes.
12               MR. HUNT:  Yes.
13               THE ARBITRATOR:  We've had the
14      discussion today about Exhibit B.  For
15      example, as I read Palmer, it's -- well, no,
16      Palmer is a bad example.  Palmer does not
17      admit the accuracy of Exhibit B.
18               MS. CHAITMAN:  Right.
19               THE ARBITRATOR:  But DiGiulian, as we
20      discussed this morning --
21               MS. CHAITMAN:  And Dusek.
22               THE ARBITRATOR:  -- does.
23               MS. CHAITMAN:  And Dusek does and
24      Pearlman does.
25               THE ARBITRATOR:  Right.  And there
```

Page 238

1        were lots of affirmative defenses, but some

2        of those will fall by the wayside by virtue

3        of the stipulation now.

4            MS. CHAITMAN:  Right.  And Gordon

5        concedes Exhibit B.

6            THE ARBITRATOR:  So hopefully it will

7        go more smoothly.  So one thing I will direct

8        is that the exhibit binders be produced with

9        exhibit numbers, or letters, at least three

10       days before the deposition -- three business

11       days before the deposition.

12           MR. HUNT:  That's fine.

13           MS. CARLISLE:  With respect to this

14       Friday's deposition --

15           THE ARBITRATOR:  Absolutely.

16           MS. CARLISLE:  -- with all due

17       respect.  I don't know if I can do that.

18           THE ARBITRATOR:  Of course.

19           Is that one of these?

20           MS. CARLISLE:  No, sir, it is not,

21       but --

22           THE ARBITRATOR:  Okay.  And there will

23       be no questioning about issues which have

24       been conceded, which is the Exhibit B

25       discussion and the affirmative defenses.

Page 239

1                    MS. CHAITMAN:  So then --

2                    MR. HUNT:  None of these have been

3          conceded in that way except DiGiulian at this

4          point.

5                    MS. CHAITMAN:  No, they all have --

6          look, if you just -- I mean, Gordon conceded

7          Exhibit B.  Harwood conceded Exhibit B.

8                    THE ARBITRATOR:  Well --

9                    MS. CHAITMAN:  Dusek conceded

10         Exhibit B.  So then there shouldn't be any

11         questioning.

12                   THE ARBITRATOR:  Dusek is -- I took

13         random notes, but Dusek -- my note to myself

14         was "truly unqualified, but lots of

15         affirmative defenses."  So he didn't have the

16         waffle language on Exhibit B.  And some of

17         those affirmative defenses I presume, by

18         virtue of the discussion we had today, will

19         go by the boards.

20                   When are these folks currently

21         scheduled for?

22                   MR. HUNT:  They are not scheduled.

23         The date has passed.

24                   MS. CHAITMAN:  They're not scheduled.

25                   THE ARBITRATOR:  So why don't you work

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 240

```
 1            out amongst yourselves the extent to which

 2            Ms. Chaitman can stipulate, as we indicated

 3            today, with respect to these defendants and

 4            dropping affirmative defenses.  Then see

 5            whether there are other issues as to which

 6            you need to depose the individual.

 7                 Harwood is one of the ones --

 8                 MS. CHAITMAN:  Harwood is in her 80s

 9            and she's conceded Exhibit B.

10                 THE ARBITRATOR:  So if the purpose is

11            to -- or a principal purpose is to establish

12            all of this, it seems to me it becomes

13            irrelevant if there's that stipulation.

14                 MR. HUNT:  If Ms. Chaitman is willing

15            to enter into the exact same stipulation with

16            respect to everything in Exhibit B for every

17            one of her clients, I agree.  They haven't

18            done that.  They still have all --

19                 THE ARBITRATOR:  She needs to review

20            one by one.

21                 MS. CHAITMAN:  I can't concede all of

22            my affirmative defenses.  I've conceded the

23            accuracy of Exhibit B with respect to these

24            clients.

25                 THE ARBITRATOR:  And that certain
```

Page 241

1          affirmative defenses, therefore, are --

2                    MS. CHAITMAN:  Which go to this issue.

3                    THE ARBITRATOR:  Right.

4                    So then you have to make a

5          determination on the trustee's side whether,

6          as to remaining affirmative defenses or any

7          other issue, there's a reason to depose the

8          person.

9                    MR. HUNT:  So just to be clear then,

10         defendants are entering into the stipulation

11         that everything in Columns 1 through 5 of

12         Exhibit B is accurate for Pearlman, Harwood,

13         Gordon, Palmer and Dusek?  They will never

14         contest anything with respect to a transfer

15         in this case.

16                   THE ARBITRATOR:  Well --

17                   MS. CHAITMAN:  I did -- I don't -- I

18         don't know what you mean by "never contest"

19         something with respect to a transfer.  I'd

20         have to look at the language.  I'm not going

21         to concede anything more than of the accuracy

22         of Exhibit B.  And that's the issue.  I've

23         agreed to waive affirmative defenses that go

24         to the accuracy of Exhibit B.

25                   THE ARBITRATOR:  Such as Affirmative

Page 242

 1        Defense 20.

 2              Well, why don't I say that within one

 3        week, you indicate to counsel, with a copy to

 4        me, which of these defendants you're willing

 5        to make -- enter into that stipulation and

 6        make those concessions regarding the

 7        affirmative defenses.

 8              MS. CHAITMAN:  Okay.

 9              THE ARBITRATOR:  And then you can try

10        and work out the extent to which you wish to

11        depose the others.  We can have a phone

12        conference call, if need be --

13              MR. HUNT:  Okay.

14              THE ARBITRATOR:  -- and work it out.

15              MR. HUNT:  Can she also provide us,

16        within that one week, dates for the

17        depositions if we need them?

18              THE ARBITRATOR:  Well, logically it

19        seems to me first you ought to find out

20        whether you need the depositions.  There's no

21        point in her getting dates if there's not

22        going to be a deposition.

23              MR. HUNT:  I'd just like to get some

24        provisional dates because we have got a lot

25        of moving parts with all these cases to try

Trustees Motion to Compel Discovery                 Arbitration 12/13/2016

Page 243

1           to fit it in.  So if you can provide us dates

2           within a week, I'd like to get it --

3                   MS. CHAITMAN:  The problem is that I'm

4           booked virtually solid with deposition dates

5           in January and through the first half of

6           February.  So if you want me to block out

7           dates for witnesses that we may not depose,

8           it's going to make me unavailable for

9           witnesses that we are producing.  So I

10          don't --

11                  MR. HUNT:  I'm not asking you to

12          provide dates for depositions that have

13          already been scheduled.  I'm asking for

14          dates --

15                  THE ARBITRATOR:  She's saying because

16          of those depositions, the dates you get might

17          be in March --

18                  MS. CHAITMAN:  Yes.

19                  THE ARBITRATOR:  -- for example.

20                  MS. CHAITMAN:  That's --

21                  MR. HUNT:  That's why -- so if I wait,

22          then it's going to be April.  So that's --

23                  MS. CHAITMAN:  I know, but you're only

24          competing with your own firm.  It's not --

25                  MR. HUNT:  If you can give us dates --

Page 244

1          MS. CHAITMAN:  You're talking about 92

2      days of deposition.

3          THE ARBITRATOR:  You're going to

4      respond within one week.  Why don't we, while

5      we're here today, set up a phone conference

6      and then we can discuss this.

7          MR. HUNT:  She's going to respond by

8      the 20th; is that right?

9          THE ARBITRATOR:  Right.

10          I can do the 21st or the 22nd.  That's

11      Thursday and Friday.

12          MS. CHAITMAN:  The 22nd would be good

13      for me.

14          MR. HUNT:  22nd is a Thursday.  Could

15      we do like a 3 o'clock call?

16          THE ARBITRATOR:  (Nods head in the

17      affirmative.)

18          MR. HUNT:  That will give us a day to

19      look at what was sent before we have to talk.

20          THE ARBITRATOR:  So it's Thursday, the

21      22nd, at 3 p.m.?

22          MR. HUNT:  Yes, sir.

23          THE ARBITRATOR:  Works for me.

24          MS. CHAITMAN:  That's fine.  Thank you

25      very much.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                              Page 245

 1                THE ARBITRATOR:  Sure.  Bear with me

 2         one second.  I saw that there was an order, I

 3         don't know whether it's one of your cases, in

 4         Greif, Greif.

 5                MR. JACOBS:  Greif.

 6                THE ARBITRATOR:  Is that --

 7                MR. JACOBS:  An order from --

 8                THE ARBITRATOR:  Yes, there was one

 9         where you sent it and said, I sent it

10         prematurely, the order hadn't been entered --

11                MR. HUNT:  Oh, yeah, yeah.  The order

12         has been entered now.

13                THE ARBITRATOR:  -- and now --

14                MR. HUNT:  Yes.

15                THE ARBITRATOR:  But I have no

16         paperwork, so I have no idea what that's

17         about.

18                MR. HUNT:  Okay.  Yeah, we need to get

19         that to you.

20                THE ARBITRATOR:  Okay.

21                MR. HUNT:  We're off the record now.

22                THE ARBITRATOR:  Yes.

23                (The time is 4:50 p.m.  The

24          hearing concluded.)

25

                              TA314

Page 246

```
 1                 C E R T I F I C A T E

 2

 3    STATE OF NEW YORK      )

 4                           ) ss:

 5    COUNTY OF WESTCHESTER  )

 6

 7            I, Eileen Mulvenna, CSR/RMR/CRR and a

 8    notary public within and for the State of New York,

 9    do hereby certify:

10            That I reported the proceedings in the

11    within-entitled matter, and that the within

12    transcript is a true record of such proceedings.

13            I further certify that I am not related by

14    blood or marriage to any of the parties in this

15    matter and that I am in no way interested in the

16    outcome of the matter.

17            IN WITNESS WHEREOF, I have hereunto set my

18    hand this 15th day of December, 2016.

19

20            ------------------------------
                Eileen Mulvenna, CSR/RMR/CRR
21

22

23

24

25
```

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 319 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 247

| A | | | |
|---|---|---|---|

**a.m**
5:21
**abandon**
23:12
**ability**
25:18 138:6 148:1
212:2
**able**
35:19 48:2 129:24
139:5 151:3 163:8
167:15 209:20,22
212:10 216:5 226:20
**above-titled**
5:18
**absent**
118:20
**absolute**
137:13
**absolutely**
14:11 79:24 83:2
140:12 146:5 161:13
166:15,21,22 203:1
205:15 209:12 216:23
223:13 225:10 238:15
**abstract**
69:6 78:13
**acceptable**
78:16
**access**
132:24 212:9
**accessible**
142:25 145:14 152:13
**accommodate**
43:22 236:6
**accompanied**
107:14
**accomplished**
58:24
**account**
11:9 16:6,6,10 20:22
21:4,6,8,11,16 22:5
22:10,12 35:25 36:1
37:10 45:16 48:19,20
49:12,18,23 50:21
60:9,13 63:25 65:3,7

65:20,20,25,25 66:6,7
66:11,14 67:19,19,22
67:23 70:14,16 71:5
72:1 76:7,8 81:12
85:23 96:24 102:8
112:22 114:15 115:3
116:23 117:7 121:17
133:16 140:1,2
168:19 170:18 171:2
179:4,12 183:24
184:13,24 191:9
194:11,14,15 195:17
195:21 196:5,12
223:9 228:3 229:15
229:16 233:17
**accountant**
100:19 107:12 111:5
175:16 236:14,15
237:4
**accountant's**
100:4,7 108:22 109:20
**accountants**
103:15 116:1
**accountants'**
103:2
**accounting**
68:7 179:20 182:2
183:19
**accounts**
16:18 18:7 21:3 60:25
61:5 66:19 67:18,25
68:5,5 69:2 120:20
159:8 168:4,21
173:15 180:16 182:10
183:17 185:5 194:19
195:22,24,24,25
196:8 197:14 205:25
206:6 232:21
**accuracy**
30:6 51:11 52:1 54:11
55:9 62:17 63:14
75:23 114:9 123:20
175:3 178:25 187:9
230:21 237:17 240:23
241:21,24
**accurate**

20:17 27:14 31:5 51:13
51:20,21 52:2 121:13
151:15 173:24 175:8
175:11,21 185:24
241:12
**accurately**
53:11,12 61:16 63:24
172:23
**accused**
46:19
**achieve**
140:20
**acknowledge**
83:3 112:25
**acronym**
16:15
**Act**
132:20
**action**
5:18 8:24,24 173:7
190:10
**actions**
7:22 56:4 140:19
165:20 168:15 190:8
215:12 217:24
**active**
146:14 154:18 197:3
**actively**
146:22 153:14
**activities**
207:19 221:10
**activity**
20:22 22:11,20 49:18
149:21,22 156:12
168:3 170:18,21
185:23,25 186:3
195:21 196:4 226:12
226:17
**actual**
11:19 17:18 28:15 41:5
132:6 149:20,22
158:18,24 207:19
223:16 224:14 226:24
**add**
86:11 99:19 109:9,15
131:25 187:22 217:1

230:6
**adding**
161:5
**addition**
25:17 109:10 111:8
146:1 151:24 224:15
**additional**
10:2 43:23 49:5 110:20
112:9 145:24 146:18
153:11 155:14 199:21
208:20 210:21
**address**
43:10 130:5 194:7
217:18
**addressed**
190:1 194:23 215:14
**addresses**
33:25 45:19,22 225:25
**adequately**
78:25 117:23
**adhere**
39:24
**adjudged**
173:11
**adjusted**
163:12 164:12
**adjustments**
74:2,25
**admissibility**
62:8,10 182:16 185:17
**admissible**
31:6 63:2 74:9
**admission**
50:17 61:11 74:17 75:8
**admissions**
234:6
**admit**
170:6 230:20 237:17
**admitted**
63:1 74:6 170:14
**Adv**
1:11 2:3,10,18 3:3,10
3:17 4:4,17 5:3,4,4,8
5:12,13,13,14,15,15
**advance**
23:4 203:23 219:9

235:2,6
**adversary**
5:2,8,11 7:7 10:5 11:10
13:7,8,15 23:25
155:10 158:11 168:14
192:16 194:10 195:5
196:17,21,25 212:18
212:22
**advisory**
17:6,15 28:4,7 148:23
158:20,25 159:7
201:25 211:5 218:22
220:22
**affect**
192:4
**affidavit**
100:4,7 103:24 104:12
106:2
**affidavits**
103:21
**affirmative**
30:21 48:25 50:14 51:6
57:4,6,24 58:23 59:20
62:23 72:25 73:7,15
73:21 74:13 75:11
76:3,11 77:2,13 78:5
78:8 83:13,13,16
84:10,12 85:4 87:2,5
88:7,15,24,25 89:18
91:13,20,21,22 95:10
97:14 106:7,18
107:13 108:23 120:4
120:6,10 132:21
138:1 176:16 238:1
238:25 239:15,17
240:4,22 241:1,6,23
241:25 242:7 244:17
**affirmatively**
106:12 177:4 195:3,9
217:18
**afforded**
152:24
**afoul**
46:14
**age**
62:3

**aggregate**
199:11 200:15
**aggressively**
154:8
**ago**
138:11 197:5
**agree**
13:4 14:9,19 25:10
31:23 36:8 39:14
43:17,18 46:3 47:15
47:21 53:16 57:1 59:2
59:10 62:20 65:15
70:15 72:18 75:5
76:24 77:11 78:22
82:2 83:2 85:6 86:18
86:20,21 91:2 104:16
108:12 109:8 137:17
143:12 169:3,5
174:12 189:21 193:3
201:15 232:6 240:17
**agreed**
89:11 96:8 111:1 114:7
114:9 126:5 185:14
232:23 241:23
**agreeing**
51:12 52:23,24 53:3,5
53:9,10,14,15,22
54:14,14 166:16
**agreement**
36:19 37:13,16,17
38:16 44:8 59:6 60:16
80:16
**agreements**
36:16,21,23 37:22
80:15,17 81:11
**ahead**
26:20 49:8,25 72:8
87:7 204:25 235:25
**air**
152:21
**alive**
61:6 70:17
**allegation**
145:16
**allege**
86:4

**Allen**
2:14
**allocution**
17:25
**allow**
35:12 200:11,14,17
220:6,20
**allowed**
53:17 106:24 107:2
108:14 111:24 145:21
153:22 201:11 231:9
**allowing**
82:23 145:20
**alluded**
219:2
**alter**
32:10 39:13
**alternative**
55:1
**amenable**
129:12 141:12
**amend**
113:3 177:12
**amended**
58:25
**amendments**
80:17
**amount**
21:5,15 31:3 103:15
134:13 179:12 220:11
220:13
**amounts**
46:7
**analogy**
98:20,25 99:4
**analysis**
10:12 14:3 22:10,19
105:17 162:13 184:24
194:24 203:10 207:11
207:25 208:11,14
209:8 215:5,22
226:19
**analyze**
221:5
**and-**
5:6,9 6:13

**and/or**
74:9
**animal**
47:19
**annotated**
156:22 165:10
**answer**
40:8,10,14 46:1 48:12
49:12 50:16 59:1 64:7
64:9 69:22 75:2 77:23
86:3 87:3 88:8 95:25
97:4,6 113:3,8 114:1
121:1,13 132:18
133:10 134:23 140:11
144:7,18 148:1,4
158:5 162:25 167:2
182:25 185:4 187:11
190:3,4 197:12,17
200:16 202:25 203:4
203:8 205:5 206:22
207:2 209:21,22,22
215:10,20 217:8
219:4 227:4,5
**answered**
7:23 78:25 117:23
175:13
**answering**
215:23
**answers**
26:19 31:4 41:5 45:1
51:2 70:18 121:14
234:16
**antecedent**
83:17
**anticipate**
195:6
**anticipating**
89:8
**anxiety**
229:22
**anybody**
156:17 213:12
**anymore**
201:7
**anytime**
50:16

apart
160:14
apologize
23:4 126:3
apparently
130:19 230:22
appeal
25:2 85:12 98:4,9,12
  99:2
appealed
25:3
appear
38:4 50:11 182:14
  217:13 231:9
appearance
27:5,9
appeared
206:3 234:19 235:14
applicability
13:15 14:20 25:13
  227:18
applicable
7:8 13:19,23 85:11,15
  86:14 91:5 96:23 97:2
  117:11,20 121:15
  193:4
application
14:1 82:1 127:7
applications
8:3
applies
33:24 91:22 95:10
  99:23 123:12 127:25
  160:9 228:16
apply
7:7 8:11 10:12 14:5,8
  14:14 35:14 61:25
  94:2,13,21 99:7
  113:25 124:2 127:13
  127:17 128:7 180:25
  221:11 228:13
appreciate
60:25 151:2 164:20
approach
41:25
appropriate

14:19 113:6 136:23
  188:3 207:25 208:9
  208:12 210:25 213:25
  219:15 222:18 227:23
  228:7
appropriately
153:5 155:19 177:13
approximately
5:20
April
243:22
arbitrage
191:8
arbitrator
6:2 7:1,23 8:14 9:4
  10:9,20 11:12 12:19
  14:25 15:2,12,17 16:1
  16:7,14,23 17:10,21
  18:9,23 19:10,13 20:1
  20:5,7,13 21:11 23:5
  23:19 24:7,11,24 25:5
  25:23 26:5,12 27:1,8
  27:20 28:17 29:2,5,10
  29:12,19 30:1,4,9,15
  31:15,24 32:6,22
  33:20 34:6,25 36:7
  37:8,12,24 38:11,15
  38:25 39:17,24 40:12
  40:19 41:8 42:12,21
  43:4,12 44:4,10,15,19
  44:23 45:5,17 46:4
  47:2,16,24 48:7,17,22
  49:7 50:4,24 52:3,6
  52:19,22 53:2,7,19,23
  54:3,13,20 55:7,17,21
  56:1,4,16,21 57:13,16
  57:21 58:7,20 59:8,25
  60:5 61:2,15 62:13
  63:3,9,16 64:1,12
  65:4,16,21 66:21,24
  67:11,24 68:10,13,19
  68:23 69:7 70:2,8,15
  70:25 71:7,22 72:5,10
  72:24 73:6,12,17 74:4
  74:20 75:3,13 76:14
  76:17,21 77:19 78:9

78:19,24 79:9,13,21
  79:24 80:2,9,20,25
  81:4,14,20 82:8,16,20
  84:3 85:6,16 86:7,19
  86:22,24 87:9,12,19
  87:24 88:3,21 89:2,7
  89:12 90:1,4,8,15
  91:1,3,19 92:6,14,16
  92:23 93:4,15,21
  94:12 95:3,16 96:6,15
  96:17 97:4,16 98:2,15
  99:9,14,18,21 100:10
  101:21 102:19,25
  104:15 105:4,8 106:6
  106:14,20 107:5,9,21
  107:25 108:5,7,11
  109:22 110:2,13,19
  110:23 111:4,15
  112:6,16,19 113:7,23
  114:5,11,14,20,23
  115:6,16,20 116:4,19
  116:25 117:16,25
  118:10,15,19 119:2,7
  119:17,21,23 120:8
  120:18 121:6,10,23
  122:3,6,14,16 123:18
  123:23 124:5,8,11,21
  126:10,14,20 127:5
  127:23 128:8 129:5
  129:14,19 130:3,15
  130:24 131:2,9,13,17
  133:4,12,15,19 137:9
  137:23 139:20 142:14
  144:8,11 146:7,23,25
  147:4,11,22 148:21
  149:4,10 150:3,13
  151:20,23 155:5,21
  156:5,14 158:15
  160:5,9,11,19,25
  161:16 162:16 163:10
  164:2,10,18 165:9,14
  166:10,16 167:2,25
  168:24 169:5,15,17
  169:20 171:4,11,22
  172:8,11 173:3
  174:12,16 175:25

176:9,12 177:24
  178:5 179:1,4,19
  180:5,10,13,18,23
  181:1,3,20 183:13
  184:1,11,16 185:3,8
  186:9,13,20 187:3
  188:18,20 189:1,5,24
  190:13 191:2 192:8
  192:18 193:15 195:8
  195:12 196:16,20,23
  197:8 198:1,7 199:6
  200:13 201:1,4,10,13
  201:16,20 202:6,14
  203:4,12,19 204:1,6,9
  205:3,16,19 206:7,13
  206:16,24 207:21
  208:1,23 209:4,10,18
  209:20,25 210:6
  211:9,19,24 212:6,17
  212:21 213:1,19
  214:11,25 216:20
  217:7,10 218:14,17
  221:8,13 222:2,13
  223:3,6 225:14,18,21
  227:8 228:10,21
  229:12 230:9,13
  232:6 233:3,6,10,18
  233:24 234:11,25
  235:10,17,19 236:1,8
  237:9,13,19,22,25
  238:6,15,18,22 239:8
  239:12,25 240:10,19
  240:25 241:3,16,25
  242:9,14,18 243:15
  243:19 244:3,9,16,20
  244:23 245:1,6,8,13
  245:15,20,22
area
23:10 32:24 223:5
  232:13
areas
8:19 24:16,20 78:11
  95:17 143:7
arguably
158:2
argue

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 322 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 250

14:4 35:14 160:5
200:1 221:19 225:3
**arguing**
12:3 61:20
**argument**
12:1 14:14 15:8 75:16
98:24 104:6 106:16
107:1 116:14,24
127:19 136:24 137:10
137:24 141:6 142:16
200:7 206:4
**argument's**
34:7
**arguments**
15:7
**arm**
225:5
**army**
163:23
**arrange**
26:23
**arrangement**
201:6
**arriving**
210:17
**art**
117:21 190:18
**Artful**
99:22
**articles**
87:14
**articulable**
212:15
**articulate**
177:18 226:20
**articulated**
127:11 135:20 148:17
148:18 157:7
**articulation**
166:24 172:10
**aside**
34:12 97:5 162:22
**asked**
15:22 26:2 31:25 46:6
48:1 64:4 70:10 71:3
78:19 118:25 138:12

147:13 156:11 167:8
167:10 177:4 180:2
191:12 230:24
**asking**
27:24 32:13,14 42:22
65:18 66:3 79:5 83:11
86:5 98:19 117:17
131:11,20,21 171:7
171:25 174:1,2
181:18 191:22,24
194:6 199:5 201:6,22
204:15 206:7,9
207:23 209:1 210:8
210:10,11 215:18
219:7 224:9 243:11
243:13
**asks**
80:13 114:17 214:4
**aspects**
10:11 134:20
**aspirational**
228:20,23
**assert**
30:21 84:20 152:18
181:10 182:13
**asserted**
48:23 85:22 87:2 88:8
97:13 102:14 181:8
182:6 190:7
**asserts**
181:15
**assign**
220:20
**assigned**
125:22,25 126:2,7
**association**
87:15
**assume**
7:9 9:1 20:1 38:13
66:17,18 82:20,21
92:18 93:18 113:14
152:1 165:17,22
186:15 199:11 202:18
209:10 210:25 216:4
**assumed**
233:10

**assuming**
8:16 38:15 42:8,10
48:9 67:9,11 70:17
81:22 82:22 104:20
222:20 234:12
**assumption**
165:14
**attachments**
108:25
**attack**
199:24
**attempt**
219:19
**attempted**
102:6 127:3 145:11
226:5
**attempting**
149:11,13
**attempts**
226:21
**attention**
181:17,23 204:24,25
**attorney**
25:25 27:10,11,12
40:25 41:7 208:9
214:4
**attorneys**
6:9,20 174:4
**audits**
139:12
**August**
103:8 151:10
**authorized**
18:16 128:22
**available**
134:8,14,17 135:9
141:14,20 142:10,24
145:6 146:21 148:10
149:9 150:6 152:15
152:19 153:8 154:6
155:3,15 157:24
173:23 187:25 188:10
188:17 193:19 198:20
199:18 200:16 209:17
210:19 215:5,25
216:17 217:3,5

219:12 221:2 224:15
224:25
**Avenue**
5:19 6:3,20
**average**
138:18,19
**avert**
9:16 204:23
**avoid**
13:4 14:21 231:24,25
**avoidance**
215:12 217:24
**aware**
30:18 177:2 180:7
183:18 185:5,9,10
198:19

---
**B**
---
**B**
6:1 8:24,25 16:3 20:2,4
31:3,4 36:12 49:14
50:9 51:5,13,19,20
52:1,3 55:11 60:7,21
62:7,17 63:15,23 64:7
67:19,20 69:20 75:18
85:25 86:15 113:12
113:17 114:10 119:22
123:21 176:24 217:13
230:21 231:23 232:24
237:14,17 238:5,24
239:7,7,10,16 240:9
240:16,23 241:12,22
241:24
**back**
16:21 22:7,13 39:7
42:21 43:11 60:6,7
61:1 71:11,17,19
77:22 94:10 98:16
108:11 112:19 114:20
138:14 147:1,4
154:14 156:3,6 160:4
168:16 174:6 179:10
179:16 190:16 198:11
200:20 204:9 205:25
214:14 231:16 232:3
235:19

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 323 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 251

background
19:9 217:19
backing
14:6
backup
162:1
backward
62:14
bad
153:10 155:2 237:16
Baker
6:8,14 82:22 211:25
balance
21:6,16 162:10
bank
20:23 21:2 22:1,5,15
51:1,1 60:4 62:11
66:11 67:22,25 69:10
94:4 102:5 180:3
184:13 188:1,3
194:14 196:2 217:23
banked
72:13
bankruptcy
1:1 117:20 132:23
142:19 182:4,5
217:11
banks
29:14
Bar
65:12 71:24
barred
73:25 89:19 90:13
barring
61:11
base
201:23 202:2 205:10
218:25
based
38:14 43:8 61:22 71:11
74:10,11 77:5 79:20
88:20 92:2 95:23
103:24 120:14 122:25
123:6,10 124:1 184:8
184:9 200:18
bases

187:17 204:11 205:13
basic
33:15
basically
20:1 52:16 130:20
181:4 199:10
basis
36:13 38:5,20 39:6
85:21 116:17 118:14
121:19 148:18 160:2
165:21 170:23 177:18
184:19 200:10 210:21
214:12 215:18 235:21
Bates
46:1 234:21
beam
114:25
bear
30:22,22 245:1
bearing
171:6
beat
7:13
began
18:3,5 31:18
beginning
61:21 208:6 213:21
behalf
40:19,20 45:4 86:13
177:10 207:14 225:5
227:3 228:3
belief
118:14
believe
11:22 21:3 35:16 68:21
97:10 103:3 111:3,7
123:14 127:10 131:6
135:16 150:15 151:15
184:9,19 191:23
197:3 200:24 203:7
207:3 208:5,19
215:10 226:4
believes
118:8,13 119:8
belongs
168:17

belt
41:24
bench
232:9
beneficial
45:16
beneficiary
1:16 2:13
benefit
14:17 78:3 174:11
Benjamin
4:20 5:3 30:17 31:13
68:22 122:6,12
123:17,21
Benjamin's
133:15
BEREZIN
1:15
Bernard
1:3,7,10 2:2,8,16 3:2,8
3:16 4:2,3,16,17
18:16 153:18 175:6
176:24 196:10
Bernstein
8:22 10:25 12:9,24
13:13,17 14:16 18:4
25:3 26:15 32:2 35:3
44:5 55:1 61:10 75:16
75:25 85:10 97:7
98:18 99:12,25
106:16 126:6,25
127:1 142:17 155:12
168:13 169:7 174:24
185:14 192:11,20
194:2 199:22 200:6
200:19 215:7,15
217:14
Bernstein's
7:5 27:16 38:2,19
43:14 137:17 190:5
best
18:12 164:19 197:16
better
28:10 54:25 79:14
232:4
beyond

16:22 38:3 51:19
120:20 121:16 156:16
168:21 199:20 210:20
214:5 216:6,21
217:24 222:10
big
41:15 208:8
binary
144:17
binder
23:18 47:16 76:20
235:24
binders
238:8
binding
59:23
bit
31:14 79:23 87:22
black
224:22
blanket
75:10
Blecker
11:22
BLMIS
20:23 28:2,22 70:11
83:7 84:21 91:17
102:8 130:6 131:12
134:21 145:3 148:6
152:6 154:19 181:9
195:19 196:8 207:18
213:11 215:19 220:12
221:10 223:11 224:14
225:5,18 226:8 227:2
BLMIS's
21:2 28:9 140:10 196:5
220:24
block
243:6
blood
246:14
BMLIS
135:24
board
119:10 224:17
boards

239:19
**body**
132:22 197:23
**boilerplate**
31:20 49:20 74:21
**booked**
243:4
**books**
18:22 54:8 61:12
134:14 140:10 146:21
167:12 168:18,20
169:10 170:19 176:6
179:16 224:20
**bottom**
53:8 162:14 224:2
**box**
152:10 154:1
**Boyer**
2:20,23
**Brady**
172:23 173:4 206:8
**break**
79:19 80:5 122:10
220:15
**breaking**
222:20
**briefing**
215:14,15
**bring**
29:7 76:19 127:4
**bringing**
181:23
**brings**
181:17
**broad**
42:24 215:3 224:9
**broken**
218:21 230:12
**brought**
126:4 233:14
**Bruce**
2:22 202:20
**Bruno**
3:20 96:25 115:1
116:12,20 117:8
123:1,7

**Bs**
68:3 184:8
**buckets**
220:16
**building**
181:22
**bulk**
141:15 231:12,15
235:7
**bunch**
216:12
**burden**
30:22 157:10 176:17
183:5,8 202:21
215:11
**burdensome**
172:5 202:16
**burdensomeness**
108:16
**business**
28:4,8,10,12,14 42:8
45:22,23 61:13 62:4
140:5 148:23 170:5
172:19,19 174:22
207:12 218:22,23,24
220:22 222:21 238:10
**buy**
165:15

---
**C**

**C**
6:6 246:1,1
**cabinets**
95:18
**cabins**
173:8
**CAD**
16:15 195:13
**CADs**
207:5
**calculated**
51:7 57:8 120:3
**calculation**
12:7,16 21:7 52:14,16
53:4,15 67:20 69:25
**calculations**

18:6 59:16
**call**
7:4 10:7 27:16 175:3
192:25 217:22 242:12
244:15
**called**
145:7 219:15,22
**calling**
136:5,6
**calls**
137:12
**capacity**
2:12,21,22 4:7,8,9,10
4:11,12 39:16
**capital**
96:24 109:1 111:10
**caption**
1:23 129:17
**car**
85:25
**careful**
59:13
**carefully**
134:18 141:9
**CARLISLE**
6:12 90:9 103:3,10
124:17 125:10,14,24
126:11 236:14,25
237:11 238:13,16,20
**carried**
139:23
**carries**
177:15
**carry**
170:12
**cart**
15:13
**carve**
192:15
**carve-out**
196:17,18
**carved**
95:16 192:10 196:22
**case**
9:8,14,20 10:6,12,15
10:18 11:24 13:21

14:2 15:19 26:2 27:2
27:2 30:16,17,17 31:7
38:4,9,19 39:10,15,19
47:3,3 54:21 55:15,18
55:19 57:11,13 59:19
63:7,8 72:22 85:11,15
89:19 94:7,18,20 95:9
97:11 98:1,7,14,16,16
98:21 99:3,6,7,13,17
99:23 101:8,19 103:6
104:5 105:23 106:8
106:10,11,13,22
107:1,6 113:25 114:4
115:1 119:21,25
123:12,16,17 124:13
125:7 126:2 127:16
128:5 130:20 133:17
133:23,24 134:6,7,9
135:17 136:23,25
137:3 151:6 153:10
156:8 157:25 158:9
163:21 165:1 167:9
168:1,12,22 169:1,16
169:18,20 170:21,22
171:7,10 172:12,16
173:12,13,14,18,19
175:5 177:23 187:23
189:10,15,20,22
195:6 202:4,13,23
203:11,24 205:2
211:25 213:15 215:6
215:9,10 217:20
227:17 230:3 241:15
**case-specific**
20:10,11 23:15 127:20
**case-wide**
22:23 157:25 187:23
**cases**
7:14 8:6,12 9:7,21,25
10:17 11:8 13:18 14:8
14:10,21 15:5 16:4
19:17,21 23:8 25:12
25:14,17 30:14 32:4
35:5,10,14 41:12,14
42:25 53:17 59:25
60:16 62:2 63:14

67:14,17 68:11 73:8
89:14,16 91:6 94:9,15
94:16,21 99:13 100:3
101:10,23 103:4,6,11
103:12,22 104:11
106:21 114:9 124:16
125:20 126:4 127:11
127:17,22 128:24
137:4,6,8 158:10
170:16 177:2 178:7
189:8 198:11 205:17
213:5 217:23 227:21
227:22 228:8,13,15
228:17 229:9 230:8
242:25 245:3

**cash**
11:20 12:5 20:21 22:20
53:10,12 168:3
170:17,21 185:22
196:4

**cashed**
179:11,24 180:1 182:1
184:20

**catch-all**
94:24

**categories**
139:15 145:9

**category**
27:21 70:23 81:13
139:25 229:24

**caterer**
65:12

**causes**
229:22

**caveat**
49:15 79:16 90:9

**caveats**
91:4

**cents**
224:4,5

**certain**
8:9 11:3 43:22 46:19
59:12 62:18,21 63:5
95:17 127:22 148:1
151:14 154:12 187:8
196:11 199:4 220:11

231:13 240:25

**certainly**
24:2 86:9 94:20 135:25
156:16 158:4 160:23
173:21 205:6 208:7
216:24 237:2

**certainty**
22:17

**certifications**
42:1

**Certified**
5:21,23

**certify**
246:9,13

**Chaitman**
5:7,10 6:19,21 7:19,25
8:25 9:18 10:3,16
11:21 12:3,11,23 14:9
14:15 15:6,15,18 16:2
16:8,21 17:3,11,24
18:2,15 20:6,10 21:23
23:13 24:3,22,25 25:6
25:11 26:22 27:4
29:10,11,21 30:2 32:5
34:25 35:1 37:18
39:18 42:6 43:22,25
45:25 46:13 48:14,18
50:25 51:10 52:24
53:5,9,20 54:2,5,16
55:4,13,19,25 56:3,15
57:5,11,15,19 58:25
59:11 60:3,19,24 61:3
62:9,15 63:5,13 64:19
64:23 65:2,18,24
66:15,23 67:16,21
68:14,20 69:4 70:20
71:14 72:3,12 73:3,19
73:23 74:3,14 75:4,6
76:10,19,24 77:11,15
78:1,7 81:2,5 82:10
82:18 83:24 84:14,23
85:2,7,12 86:12,18,20
88:17 89:1,4,21 90:3
90:6,16,22 92:7,11,21
93:20 94:1 95:18 97:9
97:10,25 98:3,8 99:1

99:11,15,19,24
100:21 101:9,15
102:5,20,23 103:9
104:17 105:3 106:11
106:14 107:2,17,22
110:24,25 112:11
113:15 114:7,23
115:1,10 116:21
117:1,5,7 118:18,25
119:25 120:22,25
121:4,20,25 123:4,9
123:24 124:9,14,23
124:25 125:4,8,18
126:5,16,21 128:9,10
128:13,16,25 129:7
129:13,16,25 130:4
131:1,4,16 132:18
136:17 137:21,25
140:25 143:9 144:2
144:24 146:6,15,24
147:12,18 149:20
150:11,14 151:1,5
152:16 153:7,13
154:10,16 156:3,10
159:1 160:7,10,18
163:20 164:15,19,20
165:12 166:21 167:7
169:8,24 170:3,16
172:7 173:3 174:15
174:21 176:4 177:9
177:17 178:15,21
179:8,17,22 180:1
181:3,13,22 182:7
183:20 186:17 187:20
188:6,19,21 189:3,11
190:3,20 191:6
192:11 193:3,5,17,22
196:23 197:4,20
198:5,8 199:19 201:2
201:3,8,12,15,21
202:10,23 203:17
204:14 205:5,21
206:12,14,19 207:1
210:7,23 211:18,23
212:4,8 213:9,13
214:8,12 216:2,15,24

218:16,18 219:7,24
220:3,16 221:12,14
223:1,4,7 224:15
225:1 229:3,6,13
230:10 231:12 232:19
233:7,11,19,22 234:5
234:19 235:4,18
237:18,21,23 238:4
239:1,5,9,24 240:2,8
240:14,21 241:2,17
242:8 243:3,18,20,23
244:1,12,24

**Chaitman's**
9:7,24 17:19 28:6
32:25 33:7 58:16
127:2 142:16 147:6
155:25 158:10 161:15
176:21 177:2,25
197:9 205:12 213:5
213:23 227:22 228:8
231:7 237:10

**challenge**
12:7,18 21:21 56:24
86:10,14 110:7 111:3
161:24 177:19 185:17
219:9

**challenged**
116:6 194:3

**challenging**
12:16 21:13 153:14

**chambers**
27:17

**change**
100:1 129:2

**changed**
9:23 186:11 217:21
220:13

**changing**
88:18

**characterization**
17:20 209:9

**characterize**
187:4

**characterized**
168:13 194:21

**charade**

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 326 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 254

```
    189:23                  claimants              28:6 35:16 51:15 58:16    72:22 143:7 161:3
charged                 193:4                  71:18 86:13 92:19,21       213:4
 56:8 179:12            claims                  97:22 143:20 169:8     comes
charging                 11:6,23 13:6 16:12     175:14 176:21 177:10    30:2,7 86:25 98:16
 57:8                    32:2 69:10 73:24 76:5  178:1 179:9 197:9        101:13 106:15 200:22
chase                    98:22,24 99:1 133:24   205:12 207:1 213:23    comfortable
 21:25 170:25            134:6 135:16 158:3     221:23 229:19 231:7     49:3
check                    160:1,1 168:23 171:6   231:23,25 237:10       coming
 11:19 26:10 65:11 67:1  176:18 182:18 185:1    240:17,24               15:19 25:22 151:17
 71:17 72:1 84:15        190:7 193:9 196:19    clients'                 186:5 196:4 204:24
 179:10,24 180:1         197:22 198:15,16       205:25 206:3            212:12
 182:1 184:20 196:13     200:2                 close                  commences
 214:15 231:16,17       clarification           22:17                  143:14
checks                   109:9                 closed                 commencing
 12:5                   clarify                 103:12 104:4            5:20
cherry-picking           111:7                 closing                commercial
 152:18                 clarifying              194:16                 98:21 198:25
Chicago                  88:19                 club                   committed
 224:17,19              classic                 42:14 47:20            153:19
chief                    137:12 142:22 212:6   Cohen's                committee
 17:8                   CLAUDIA                 237:1                  199:1
Choir                    4:8                   coherent               communications
 115:22                 claw-back               187:2                  117:13 118:6 139:14
choose                   12:12,15 13:1 15:5    colleague               143:19
 19:16                   32:4 165:20 190:8,10   61:23                 company
chose                    191:15 192:1,9 193:5  colleagues              139:13 159:6
 136:8 164:23            193:24 194:3,5         166:5                 compared
chosen                  clean                  collectively            22:15 169:3
 30:24                   111:4                  215:4                 comparing
Circuit                 clear                  Collura                 21:7
 198:12 200:18           23:19 38:8 40:6 49:1   10:9,22 18:25 19:4,19 compel
circumstance             53:23 58:2 63:20       20:7,14 22:9 23:6,14   5:1,7 29:3 30:14
 25:24 65:9 142:18       76:10 77:12 80:12      183:23 187:6 191:13    124:10 125:21,22
circumstances            81:8,19 116:15 118:2   213:7                  126:17,18 143:4
 13:20,24 14:10 67:5     218:13 219:16 223:13  Collura's               147:21
 69:19 127:13 213:25     224:8 241:9            20:19 173:17          compelled
circumvent              clearinghouse          Column                  120:11 121:5 182:13
 36:6                    224:3,4                52:25 53:7,11,13 65:8 compelling
civil                   clearly                columns                 170:23 229:25
 140:18,23 173:6 206:8   31:7,21 70:19 90:10    52:7,13,23 55:10 63:24 compensation
claim                    146:19                 75:17 86:15 113:17    129:1
 11:23 13:14 35:5,12    click                   114:12 123:21 241:11  competent
 91:14 97:21 141:4       199:17                combination             49:17
 143:8 159:25 177:12    client                  184:12                competing
 193:10 199:11 201:11    8:8 16:12 32:25 176:4 come                    182:25 243:24
 217:23                 clients                  30:3 43:11 54:10 61:13 compilation
```

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 327 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 255

compiled
145:5
complaint
16:3 20:5 35:8 46:17
    46:22 48:16 55:12
    87:3 88:9 91:14 98:22
    107:3 113:12 186:16
    221:24
complaints
8:7 35:3 182:8 184:23
complete
21:1 23:14,20 41:15
completely
141:6 168:8 186:25
completeness
30:5 55:10 86:12,14
complex
135:7
complexity
203:1
complicate
68:6
complicated
15:20 31:12 54:19
    128:19 227:9
complicating
56:5 156:7
complied
117:19
component
20:15
compos
232:11 234:13
computer
162:2 226:14
computer-generated
223:16
concede
51:11 62:17 176:2
    240:21 241:21
conceded
54:11 63:14 167:18
    168:3 170:17 228:3
    238:24 239:3,6,7,9
    240:9,22

concedes
106:14 238:5
conceding
51:19,21 78:2,3
conceivable
150:7 178:8
conceivably
45:25 75:19
conceived
141:19
concept
184:7
conceptualize
157:19
conceptually
105:10 169:10
concern
33:7 40:3 86:16 102:18
concerned
39:6 102:2 164:24
concerning
78:20 81:11 102:5
    111:12
concerns
14:24 56:17 60:15
concessions
242:6
concluded
142:17 245:24
concludes
79:10
conclusion
153:15 187:18 207:13
    208:17 215:19 227:1
conclusions
141:23 142:8 188:15
    208:7 210:13,18
conclusive
218:8
condensed
208:7
conduct
170:24 213:14
conducted
28:15 207:11
conducting

161:12,13
confer
14:18
conference
7:4 236:20 242:12
    244:5
conferences
55:2
confession
37:21
confident
17:21 99:15 161:20
confidential
102:16
confidentiality
101:22 102:14
confirm
111:21,25 123:19
    160:20 222:10
confirmation
180:4
conflated
218:11
confusing
50:25
confusion
13:4 105:15
Congressman
199:3
conjecture
168:10 212:14
connected
226:10
connection
29:21 105:20 131:7,23
    134:12 135:23 136:16
    182:3,4 188:10,14
    189:12 210:13
consequences
67:7
consider
149:9 155:13 177:12
considerable
172:4
considerably
213:24

consideration
155:4 157:16
considered
39:11 104:5 141:15
    143:2 153:9 162:11
    162:12 168:11 188:14
    208:15,16 227:19
considering
157:20 223:19
consistent
18:21 127:10 209:13
consistently
136:21
Consolidated
1:5 4:2,15
construct
184:8
constructed
152:21 184:22
construed
109:19 111:2 210:10
    218:2
consult
112:7
consultants
174:5 184:25 221:4
consulted
94:24
contain
141:9 194:17
contained
227:7
contains
141:14 161:21 165:7
contemplate
107:10
contemplates
10:25 75:23
contend
88:6 91:12,13 138:2
contending
61:22
contends
28:13
content
69:2

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 256

**contention**
11:16 23:25 107:7
  139:7 182:6
**contentions**
13:1
**contest**
53:6 62:9 241:14,18
**contested**
29:25 64:2
**contesting**
51:25 62:7
**context**
19:9,20 145:18 146:15
  157:17 172:12 186:6
  186:22,24,25 189:9
**contexts**
128:7
**CONTINUED**
1:23
**continues**
76:21
**continuing**
147:23
**continuous**
155:23
**contrary**
211:22
**control**
232:25
**controls**
57:25
**conversation**
109:24 110:3
**converse**
206:15
**conversely**
104:22
**convertible**
148:24
**conveyance**
52:16
**convince**
75:14
**cool**
44:5
**cooperated**

154:23,23
**copies**
235:15
**copy**
17:25 19:15 44:17
  148:8 233:6 242:3
**core**
137:14 140:1 163:25
  195:17 202:12
**correct**
9:3 10:10 11:25 13:3
  16:19 22:3,4 38:12
  52:18,21 54:2,5 55:24
  66:4 73:18,22 76:15
  77:14 80:19 90:15
  93:19 122:18 123:22
  123:23 124:6 146:8
  148:25 149:16 153:2
  158:15 168:5 169:23
  176:14 181:18 183:6
  184:9 193:1,2 195:14
  204:18,19 205:18
  209:13 222:2 235:18
  235:20
**correction**
176:24
**correctly**
140:7 225:2
**correctness**
86:11
**correspond**
80:22 176:3
**correspondence**
194:17 196:9
**cost**
157:9
**costs**
162:9
**counsel**
8:25 139:19 211:12,13
  242:3
**counsel's**
192:15
**count**
179:23
**counted**

56:11 68:14,16
**country**
33:18,23
**COUNTY**
246:5
**couple**
7:2 197:5
**course**
9:19 30:23 32:17 71:6
  97:13 157:22 160:7
  234:17 238:18
**court**
1:1 17:12 18:15 25:4
  34:9,10 35:6 36:4
  41:3 46:15 106:12
  117:20 128:21 132:23
  141:16 177:14 182:19
  182:23 183:9 193:3
  198:3,13 221:24
  236:18
**court's**
204:25
**courts**
198:19
**covered**
223:1
**Cravath**
36:18
**credit**
21:4,14 74:1 77:9 97:8
  97:13,22 106:18
  107:13,19 153:17
  193:13
**credited**
56:8 76:8 153:21
**creditor**
132:22
**criminal**
17:9 172:12,15
**criminally**
175:9
**critical**
231:14
**cross**
45:20
**cross-examination**

110:8
**cross-motion**
5:7 227:14,15
**cross-moving**
127:14
**crude**
20:16
**Crupi**
26:1 94:17
**CSR/RMR/CRR**
5:21 246:7,20
**curated**
134:19 141:9
**current**
33:25 45:19,21,22 82:6
**currently**
23:8 27:24 85:14
  103:12 128:5 144:21
  146:1,13 153:10
  154:3 185:18 222:11
  225:8 239:20
**CUSIP**
227:9
**custodian**
116:23
**custody**
154:19
**Customarily**
230:14
**customer**
11:18,20,22 12:6 21:8
  21:15 22:11,16 130:7
  132:3 152:24 158:25
  159:7 171:2,8,17
  181:9,10 185:23
  188:8,23,24 190:15
  195:18,21 196:7
  200:2 202:5 207:15
  225:16 226:2,8,16,22
  227:3
**customer's**
188:7
**customers**
12:2 17:6 28:7 156:12
  158:20 159:14 168:21
  174:14,19,23 175:1

Trustees Motion to Compel Discovery                           Arbitration 12/13/2016

Page 257

177:21 186:1 187:8
191:3 193:7 202:1
211:5 225:6
**customers'**
11:4 21:4 173:20
**cut**
67:1 142:14

**D**

**daily**
159:10
**data**
134:18 135:2,8,17
141:12,18 142:5,12
144:14,22,22 145:13
146:1,5,11 147:19
148:10 154:20,21
187:24 188:9,15
217:2 219:17,20,22
219:23 220:15,20,23
222:11
**database**
163:8
**date**
16:21 21:6 22:6 47:11
61:1 62:1 90:5 141:25
143:13 146:9 148:1
152:14 161:3,17
163:19 164:11,13
171:20 225:19 237:3
239:23
**dated**
151:9
**dates**
9:12 46:7 54:15 55:24
105:23 242:16,21,24
243:1,4,7,12,14,16,25
**dating**
138:14
**DAVID**
6:21
**day**
69:3 177:6,15 209:15
220:12,13 222:7
223:24 244:18 246:18
**day-over-day**

220:9
**days**
58:13 89:19 90:10,24
90:25 93:25 95:5 96:9
96:11 109:7 238:10
238:11 244:2
**dead**
17:10
**deadline**
163:11 203:24
**deal**
13:13 29:13 30:4 40:3
40:12 54:20 55:18
60:10 68:25 78:12,23
89:12 98:18 109:3
119:2 124:15 125:12
125:15 127:24 128:3
163:18 169:22 180:21
198:1 210:2
**dealing**
66:25 156:15 162:4
163:5,16 171:23
212:2 222:15
**deals**
72:12 92:3 100:10
169:9 205:19
**dealt**
80:25 155:21 156:17
156:18 180:15 192:21
**Dean**
6:11 66:2,4 235:18
**death's**
232:11
**debt**
83:17
**debtor**
1:5,8 132:22 170:20
224:20
**debtor's**
146:20
**debtors'**
18:22
**debts**
47:5
**deceased**
115:2

**December**
5:19 15:6 22:1 37:22
49:19 60:3 62:15
71:16 143:20,24
146:17,23 181:15
246:18
**decide**
177:14 216:9
**deciding**
95:8
**decision**
14:1 24:17 26:1 27:1,7
47:8 178:11 184:3
200:7
**decisions**
25:2
**declaration**
101:13
**declarations**
101:5,10 103:14
**declared**
26:16
**deem**
189:21
**deemed**
189:14,14
**deeper**
8:16,17
**defendant**
2:7,15,24 3:7,14,21
4:21 16:9 55:8 56:24
97:12,19 103:25
105:8,13,25 106:23
109:25 110:6 112:1
113:18 135:21 176:7
182:24 188:12 190:9
194:3 196:10 228:2
232:16,16 236:16
**defendant-specific**
10:3
**defendants**
1:20 4:14 6:20 10:14
11:7 12:12,15 13:1,8
25:18,20 30:21 31:1
33:1 38:17 41:6 56:7
57:9 63:10,21 69:13

69:15 77:9 83:14
84:20 91:17 92:4
123:3,20 126:21
128:14 134:15,15
135:14 136:14 137:5
152:20 168:2 173:14
190:8 191:16 192:9
193:6,24 195:6 196:6
199:25 214:13 217:21
228:1 230:15 240:3
241:10 242:4
**defendants'**
51:7 57:8 77:9 87:2
88:8 107:23 108:18
111:12 116:18 120:2
192:1 223:9
**defending**
7:21
**defense**
51:6 57:4,6,17 62:23
72:20 73:16,22 74:13
75:1,11 76:4,11 77:3
77:13 78:8 83:14,16
83:18 84:10,19 85:4,9
91:13,20,21 97:6,14
98:7,13 106:7,18
107:14 108:23 120:2
120:4,6,10 192:14
199:23 200:5 242:1
**defenses**
30:22 48:23,25 50:14
57:24 58:24 59:20
72:25 73:7 77:7 78:6
83:13,19 84:12 87:2,6
88:8,15,24,25 89:18
91:22 95:11 102:13
133:1 134:6 135:17
171:7 238:1,25
239:15,17 240:4,22
241:1,6,23 242:7
**defensible**
135:20
**defer**
208:19
**deferring**
49:4

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 330 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 258

deficient
70:19
definition
33:20 85:8
definitive
40:14
definitively
153:13
defraud
217:16
delivered
94:6 199:3
delve
104:6
demand
88:18,22 124:15 130:2
157:16
demands
125:19
demonstrating
149:21
denials
88:7,14
denied
11:23 193:9 228:6
denies
182:24
deny
30:24 143:5 214:6
222:24 227:11
denying
81:24
DePascali
17:17
depend
148:2
depending
34:19,22 41:20,21 79:6
depends
7:17 179:19 234:16
depose
105:6,12 118:21,23
120:16 233:12 234:2
240:6 241:7 242:11
243:7
deposed

150:9 213:5,6,7 230:14
230:16
deposit
16:5 49:11 50:21 56:9
64:5,6,10,15,16 69:24
86:5 112:21,25
113:19 114:15
deposit's
64:14
deposited
65:19,25 66:11,13,18
deposition
16:24 18:16 78:11
136:1 145:21 146:16
147:9,10 164:14
212:22 213:11 233:21
233:25 234:17 235:16
235:23 238:10,11,14
242:22 243:4 244:2
deposition's
147:7
depositions
5:11 136:2 210:16
229:4,7,8 231:3,6,13
234:8,12,14,23,24
242:17,20 243:12,16
Depository
139:13
deposits
16:4 49:13 50:8,15
51:4,12 52:11,25
53:10,22 54:6 59:22
62:6,21 64:12 68:4
74:15 77:10,18 78:21
83:25 84:5 85:22
113:11 115:18 116:5
169:11 177:7,22
187:10 231:18 233:23
235:6
described
42:23 58:11 81:17
description
164:22
designation
105:20
desirable

140:16
desire
108:18
despite
180:10
detail
97:1 119:12 207:9,18
detailed
24:17 208:18
determination
102:11 198:10 241:5
determinations
183:9,12 185:1
determine
134:3 162:19,23
182:19 183:10
determined
163:14 214:13
determining
141:23 200:11
devastated
138:22,22
DEXTER
6:22 186:11
dhunt@bakerlaw.com
6:11
DIANE
2:20
dictate
127:20
died
17:11
differ
9:12
difference
84:3 220:10
different
7:15 9:11 13:24 24:20
24:20 28:2,23 38:7
47:19 68:1 78:9 84:11
87:17,21 123:13
124:3 129:21 131:10
139:14 142:18 157:8
168:25 177:3 186:10
190:14 201:14 203:16
207:17 223:15 224:6

236:20
differently
171:12 230:1
difficult
62:19
DiGiulian
3:20 5:4,15 30:17
68:22 96:16,19,25
101:24 115:2 116:12
116:16 117:8,14,14
122:9,19 123:7 176:1
176:4 178:24 232:19
237:19 239:3
diligently
154:8
DiPascali
17:7 150:14 159:23
DiPascali's
150:18 202:8
direct
34:21 161:14 238:7
directed
93:23
directive
91:5
directly
26:17 76:12 96:4
160:22 208:11 233:1
233:4
disagree
25:9 100:18 116:4
140:24 188:11
disagreeing
208:23
disagreements
118:6
disagrees
76:7 149:3
disallowed
160:1
disallowing
81:15
discernible
220:16
discerning
132:12

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 331 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 259

disclose
35:21 158:14 167:11
  172:25 175:20 182:22
  182:23 203:23 209:2
  211:7,20
disclosed
109:18 141:13 148:5
  176:23 203:10 210:19
disclosing
35:17 211:15
disclosure
9:12 10:8 102:16
  105:23 108:19 136:15
  141:20 157:17 195:15
  204:21 210:21
disclosures
70:13 105:18 167:22
discoverable
132:16 133:23
discovered
236:18
discovery
5:1,7 8:9 9:16 10:19
  12:14 13:18 15:8
  19:12 30:24 31:8,10
  35:7,11 36:10,13 44:2
  44:3 46:16,21 48:15
  64:20 69:23 78:3,4,11
  78:17 94:25 95:15
  98:25 103:11 104:3
  104:10,14 105:10,11
  107:3 127:15 128:11
  130:2 134:1 135:7
  136:22 137:7 140:18
  141:2 146:16 147:17
  148:6 155:8 157:8
  163:6 173:6,9 177:3,5
  178:6,10,11,13 180:2
  180:19 189:11,16
  193:18,23 194:5,9,12
  195:2 196:14 197:10
  200:12 204:15 212:23
  212:24 213:3,4,18
  215:4 216:13 218:11
  228:6
discredit

110:7
discredited
160:1
discuss
15:10 127:25 244:6
discussed
93:15 185:13,22
  209:16 237:20
discussing
120:1 134:11 177:5
  222:7
discussion
8:22 25:19 28:22 30:10
  36:25 95:24 108:10
  112:18 126:15 133:21
  147:3 167:4 204:3
  237:14 238:25 239:18
discussions
103:24
dishonestly
165:22
disk
152:9 154:1
dismiss
98:23 200:8
dismissal
221:24
dismissed
32:2 39:19 85:10 98:24
dismissing
106:13
disparagingly
166:1
disprove
156:1 159:21
dispute
31:2 49:13 50:8,23
  51:4 52:11,12 55:9
  60:21 62:6 65:6,22
  113:10 125:24 147:20
  202:6 233:19,23
disputed
177:9 231:22
disputes
9:16 19:12 204:23
  218:12

disputing
48:19 50:10 54:4 65:22
  113:16
distinction
142:23
distributed
34:23
distribution
198:21,23
district
1:1 25:4 97:18 98:17
  98:23
dive
57:18
dividend
11:17
dividends
17:1 196:11
divorced
189:8
divorcing
186:25
doctor's
232:10
doctrine
132:9
document
8:2 39:3 79:18 80:4,13
  80:15 81:9 82:4,19
  83:4 84:14,19 88:18
  92:15 93:3,12 95:9
  100:11 117:18 118:11
  121:21 122:8,20
  123:14 124:15 125:18
  125:19 130:1 134:4
  134:25 151:9 214:10
  234:20
documentary
188:24 191:18,25
documentation
69:9 104:9 106:3
  187:23 215:24 219:12
  220:5
documents
32:18,24 33:3 37:2
  39:2,5 40:1,7,10

41:22 45:25 46:1
47:17 49:5 77:18
78:16 80:14 81:21,23
82:11,12,15,24,25
83:5,10,23 84:13 86:6
87:4,8 88:6,11,12,16
88:24 89:17,20,22,23
90:11,17,19 91:12
92:5,9,12,19 93:5,6,7
93:13,23 94:10,17,24
95:1,2,12 96:1,3,4,8
96:10 100:15 101:14
102:22,24 103:20
104:21,24 105:9
107:15 109:10,15
110:11,21 112:15
121:22 122:24 123:5
123:10 126:19 130:11
130:12 133:5 134:20
135:15 136:8 137:2
139:10,15,18 140:1
142:24 143:24 145:4
145:9 147:24 148:9
151:7,11,24 152:6,13
153:7 154:14 164:22
164:25 165:2 166:6
181:19 185:25 187:17
189:17 194:16 195:18
197:11 202:1,12
205:10,11 206:9,17
206:20,23 207:2,4
208:15 209:3,11
214:21 216:21 218:24
219:18 224:13 225:8
229:18 232:3 233:8
Dodger
99:22
doing
21:1 27:23 36:17 43:15
  69:6 100:4 101:3,4
  147:13 151:16 159:9
  163:7 175:17 189:7
  223:20 224:24
dollar
153:4 218:20
dollars

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 332 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 260

21:12 157:23
**DONALD**
4:20
**door**
39:7 149:25 195:16
    232:11
**double**
56:11
**double-sided**
44:18
**dozens**
174:5
**drabs**
200:22
**drafted**
93:10 181:6
**drafting**
58:4
**driving**
66:3
**drop-dead**
90:5
**dropping**
240:4
**DTC**
144:23,25 145:3,7
    146:3,10 154:10,18
    155:21,24 160:14
    219:3,22 220:8,14,23
    220:25 221:16 224:16
    226:9,10,23
**Dubinski's**
149:2
**Dubinsky**
8:23 9:15,22 19:4
    203:5 204:17 205:8
    205:12 207:8 210:14
    211:16,19,21 213:6
    214:6 215:2 216:3,4
    216:21 217:8 225:25
    226:5,18
**Dubinsky's**
28:21 202:20 215:22
    216:10 227:6
**dubious**
197:16

**due**
204:22 238:16
**Dusek**
3:6 5:15 130:20 131:5
    237:21,23 239:9,12
    239:13 241:13
**duties**
132:1
**duty**
138:1,3

_____
E
_____

**E**
6:1,1,6,6 246:1,1
**e-data**
135:12 138:8,10,13,25
    139:1,17,22,25 140:6
    140:11,12 141:8
    144:6 150:22 151:24
    160:16 164:23,25
    165:2 166:14 209:15
    216:1
**e-discovery**
163:6
**e-mails**
144:9
**earlier**
56:25 59:16 68:4 81:17
    100:15,17 127:11
    145:15,25 147:23
    149:23 153:15 161:22
    177:6 209:14 216:25
    218:5 222:7 228:12
**early**
9:15 17:13 18:13 21:21
    21:21,22 22:6,14 60:6
    60:8 150:18 154:2
    202:24 205:1
**earned**
101:25
**easier**
55:13 124:14
**easily**
7:16 144:19 220:15
**easy**
28:1 188:4

**ECF**
18:25
**EDWARD**
6:16
**edward.jacobs@bak...**
6:17
**Edyne**
2:12 229:14
**effect**
18:21 39:12 81:14
    100:19 173:4 206:8
    206:22
**effectively**
57:2
**effectuated**
76:5
**efficient**
231:8,10 234:9
**effort**
92:18 140:19 149:7
    157:20 160:22 161:10
    162:19 163:13,20
    180:11 204:22
**efforts**
135:5,14 222:9
**ego**
39:13
**egos**
32:10
**egregious**
104:1
**eight**
94:5
**eight-year**
174:6
**Eighth**
5:19 6:3
**Eileen**
5:21 246:7,20
**either**
9:7 14:13 36:10 58:11
    68:16 70:13 75:1,21
    84:11 93:10 106:11
    139:24 161:4 174:17
    177:12 203:15
**elderly**

**ECF** *(continued)*
229:19
**Electronic**
134:18
**element**
158:3 215:9
**elements**
81:25
**eliminated**
80:6
**eliminates**
56:17 65:13
**emotionally**
138:22
**employee**
130:3,6,12 133:13
    134:5 135:1 136:9
    211:13
**employees**
114:19 131:12,22
    133:7 135:24 210:11
    212:11 213:11 214:2
    223:2
**encountered**
158:18
**endeavor**
153:25 164:5 222:19
**endeavored**
152:4 216:16
**ended**
190:25
**enforced**
51:15
**engage**
222:18
**engaged**
135:4
**enhanced**
142:20
**enlarges**
141:1
**enormous**
142:4 207:18
**enter**
14:18 57:16 106:24
    240:15 242:5
**entered**

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 333 of 594
Trustees Motion to Compel Discovery                                    Arbitration 12/13/2016

Page 261

60:17 142:3 227:16
245:10,12
**entering**
227:21 241:10
**enters**
119:25
**entire**
115:21
**entirely**
20:17 105:16 219:15
**entirety**
30:25 109:18 132:15
**entitled**
8:9 35:16,24,24 36:5
36:10 37:25 51:3
95:23 97:8,12 100:14
100:18,23 107:23
111:11 133:2 135:21
136:15 151:6 164:21
165:5 167:21 199:10
205:5 206:21 208:19
212:5 221:23
**entitlement**
72:14
**entity**
33:9,12,14,16,17 34:19
49:6 70:18 71:3
**entries**
130:7
**entry**
188:23 191:1
**enumerated**
134:2
**envision**
75:24
**equal**
159:9
**equally**
112:5 185:9
**equity**
12:7,16 16:9 18:6 21:7
53:4,8 69:24 160:2
184:24 198:2 214:14
**equivalent**
42:14 80:16 83:15
**erred**

98:18
**error**
167:12 171:14 174:9
174:18 176:25 179:14
179:15,23 180:6
181:8,10,16 182:21
182:22,24,25 184:7
**errors**
31:22 175:20 176:22
177:1 178:3,7 180:20
182:20 185:6,11
**ESQ**
6:11,12,16,21,22
**essential**
132:25
**essentially**
20:18,25 28:20 90:5
105:25 143:1 170:25
**establish**
34:10 214:19,21
240:11
**established**
33:16 36:4
**establishes**
34:3
**estate**
2:13,20,22,23 5:14
132:2
**ethical**
165:17
**EVELYN**
1:15
**event**
156:23
**everybody**
52:19 130:22
**evidence**
18:19 49:17 74:18 75:9
75:21 95:13 106:24
141:22 142:11 152:19
170:10 183:1 188:24
191:9,19,25 194:18
206:5 207:13 211:21
216:5,12 223:14
224:14,24 225:10
227:1

**exact**
144:25 145:8 207:10
220:14 240:15
**exactly**
19:10 20:6 32:19 50:1
63:18 64:20 79:4
99:16 100:5 113:22
128:2 142:13 157:4
202:20 209:6 215:21
**examinations**
210:16
**example**
8:21 57:4 71:25 74:21
77:6 81:23 95:17
109:23 140:4,9
183:17 184:17 195:10
198:15 211:11 233:5
237:15,16 243:19
**exception**
170:6 172:20
**exceptions**
61:14 231:2
**exchange**
83:7,15 84:21 159:11
223:21 224:18,19
**exchanged**
189:17,18
**exclude**
24:5
**excluded**
191:15
**excluding**
133:19
**excuse**
32:6 125:5
**executive**
207:21,24 208:17
210:18
**executrix**
2:13
**exemplar**
19:21
**exercise**
102:4 222:15
**exhausted**
167:4

**exhaustive**
189:16
**exhibit**
16:3 20:2,4 30:6 31:3,4
49:14 50:9 51:5,13,19
51:20 52:1,3 55:11
60:7,21 62:7,17 63:15
63:23 64:7 67:20 68:3
69:20 75:18 85:25
86:15 113:12,17
114:10 119:22 123:21
126:22 130:18 176:24
184:8 230:21 231:23
232:24 235:11,17,24
237:14,17 238:5,8,9
238:24 239:7,7,10,16
240:9,16,23 241:12
241:22,24
**exhibits**
24:2,5 235:1,6
**exist**
49:23 152:7,8,9 154:9
157:4 159:19 162:3
212:14,20 221:17
222:10 225:8
**existed**
37:13 61:7 171:2
220:12 223:15
**exists**
49:16 85:4 150:8
**expands**
141:1
**expect**
215:13
**expedited**
58:9
**expedition**
177:20
**expenses**
96:25 97:3,20
**experience**
170:5 231:5
**expert**
9:12 22:19 23:1 51:22
103:11 104:3,13,19
105:9,15,17,18,21,22

107:13 109:11,12,20 110:21 111:2,5 142:7 149:3 153:15 159:4 172:21 175:16,19,24 178:6,10 180:18 186:18 187:15,15,17 188:10,14 189:16 191:23 197:10 202:22 203:10,23 204:15 207:24 209:6,7,9 213:2,3,3 214:24 215:1 221:5 222:17 225:24
**expert's**
100:22 108:22 150:23 208:11 215:22
**experts**
10:8 21:20 75:22 141:15,22 152:16 155:3,17,18 167:18 176:1,5 184:25 185:21 194:23
**explain**
15:24 37:9 121:2 145:11 181:13 197:24 214:12,18 217:17 229:7,11
**explaining**
31:4
**explanation**
28:1
**explicit**
7:6
**explicitly**
12:24 102:9 127:1 134:23 199:22 200:6
**exploring**
17:2
**express**
41:15
**expression**
186:5
**extend**
44:3
**extensive**
144:14
**extent**
12:6,15 16:17 24:12 25:20 26:13 42:6,22 43:21 45:10 58:21 61:17 81:16 88:23 89:4 112:23 121:12 135:11 143:3,19 146:2,9 159:19 174:20 175:19 187:9 187:13 195:12 200:14 205:24 210:19 213:17 214:5 240:1 242:10
**extraordinarily**
166:2 179:9 231:4

**F**

**F**
6:1 246:1
**face**
22:21 131:20 137:15 166:12
**faced**
78:18
**facet**
131:24
**facia**
132:15
**fact**
10:19 12:3 18:5 36:11 51:22 61:9 65:23 66:17 72:22 88:7,14 103:11 104:8,10,12 105:11 111:2 119:9 119:19 133:22 136:24 139:4 144:12 159:23 163:16 167:17 178:10 179:8 182:14 194:12 196:14 211:1 212:24 212:25 213:22 218:10 223:20 226:13
**factors**
56:5 134:2 156:7 162:11
**facts**
13:20,24 14:9 35:7,11 59:12 201:23 205:7 208:15 215:18
**factual**
69:11,19 105:16 106:2 106:25 121:19 127:12 167:12 177:8 180:6 181:8 183:1 189:9 192:13 194:25 198:7 198:9,14,18 229:25
**failed**
35:4 77:8 138:2 226:6
**fails**
91:14,15
**failure**
73:25
**fair**
102:11 115:6 121:7 136:4 228:25
**fairly**
104:4 162:12
**faked**
226:11
**fall**
139:25 209:7 238:2
**falls**
27:21 70:23 81:12,16 81:18 95:3 132:8
**familiar**
111:20 115:22 172:13
**far**
39:5 42:19 71:19 95:24 105:1 109:4,6 156:16 222:16
**farce**
138:10
**fashion**
105:22 134:19 153:22
**favor**
79:25
**favorably**
105:12
**feasible**
140:16 141:10
**February**
243:6
**federal**
17:12 120:12 140:17 140:23
**fee**
201:6
**feeder**
198:16 217:22
**feel**
31:18 182:12 204:7 229:20 230:1
**FELICE**
3:12 4:7
**fewer**
58:12
**fiction**
159:4
**fictitious**
21:17 61:21
**field**
138:24
**figure**
40:10 50:22 126:13
**file**
26:3,14,17,20 27:1,6,8 35:8 58:25 95:18 196:7 199:14
**filed**
26:6,8,11 30:14 130:19 143:15 193:8
**files**
27:5 156:19
**fill**
157:8 194:25
**finality**
226:25
**financial**
21:10 28:24 198:25
**financially**
138:21
**financials**
134:21
**find**
19:24 44:16 46:24 50:24 54:10 88:4 135:6 139:5,17 143:22 146:2 149:11 149:13 154:8 155:2 155:13 160:23 161:21

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 263

173:20 178:7,8
185:15 188:4 208:13
216:18 222:11 228:22
233:12,20 242:19
**finding**
42:18
**findings**
132:23
**finds**
18:4
**fine**
27:19 59:15 73:2 82:3
86:5 96:12 118:23
119:16 124:24 238:12
244:24
**fine-tuning**
210:2
**finish**
151:3,4
**FINRA**
139:11,12 145:8
146:10 160:14
**firm**
112:8 223:22,22
243:24
**firmly**
174:24
**first**
24:22 29:14 30:12
34:17 45:10 54:21
60:10 83:10 101:6
103:1,7 104:2 108:23
111:16 112:14 126:22
130:1 131:14 140:9
144:20 147:13 150:17
153:1 202:14,15
205:6 219:6 242:19
243:5
**firsthand**
230:22
**Fiserv**
117:5,9,13,22
**fishing**
177:20
**fit**
188:16 243:1

**flexibility**
43:19
**flip**
173:25
**flipped**
22:4
**Floor**
6:3,15
**floppy**
152:9 153:25
**flow**
118:3
**fly**
56:22
**fmaas@jamsadr.com**
6:4
**focusing**
151:25 221:20
**folder**
145:6 219:21
**folders**
145:7,12
**folks**
239:20
**follow**
13:21 129:24 231:13
**followed**
50:17,18
**following**
5:11 67:21 88:17
176:10 191:17
**follows**
168:7 178:5
**force**
106:1
**foremost**
144:20 153:1 219:6
**forget**
16:15
**Forgetting**
87:24
**form**
27:11 46:21 101:4,15
108:21 109:2 129:22
134:8 142:7,25
157:12 205:4

**formal**
38:16 232:8
**formalities**
42:13
**formality**
36:22 48:10
**formally**
169:9
**format**
231:14
**formation**
37:2
**formed**
33:17,23 37:14 209:16
**former**
33:25 45:19,21,22 82:7
130:6 133:6 212:11
**forms**
119:15 223:15
**formulating**
133:1
**forth**
103:15 116:2 176:16
202:17 223:10
**forward**
20:24 37:7 127:2 128:3
143:21
**found**
146:11 160:17 161:4
163:8 166:5 167:12
171:14 172:1 173:15
174:7 176:12,21
178:2 219:20 221:25
234:7
**Fourth**
1:14,17,19
**fourth-generation**
95:20
**frame**
46:16 48:15 107:3
**framework**
153:6 154:11
**Frank**
6:2 17:7
**frankly**
153:19

**fraud**
17:14 18:3,5,14 28:25
49:16 51:23 61:7,8,17
74:7 113:5 141:17
142:9 145:16 150:19
155:11 158:1,4 161:7
172:17 175:11 185:16
186:5 203:1 215:20
218:3,4,9 219:10
221:15,18,25
**fraudster**
170:7
**fraudulent**
11:18 52:14,15 59:16
62:24 186:2 226:17
**fraudulently**
51:7 57:7 120:3
**free**
204:7
**Friday**
237:7 244:11
**Friday's**
238:14
**front**
71:16 76:10 84:19
111:18 125:17 214:14
**fruitful**
162:8
**fruits**
154:24
**fulfill**
200:1
**full**
21:5,15 95:18 104:5
111:12 135:15 188:6
188:7 198:4,5,8,14
234:23
**fuller**
162:9
**fullest**
135:11
**fully**
76:5
**function**
9:1 22:23 28:12 80:16
131:12

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 336 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 264

**functioning**
165:19
**functions**
207:17 234:14
**fund**
132:3 152:24 200:3
217:22
**fundamental**
137:11 212:1
**funding**
17:24 138:20
**funds**
71:4 91:16 132:3
152:23 198:17
**further**
103:13 156:6 158:7
178:13 213:14 215:15
219:8 227:9 246:13
**furthermore**
149:6 225:12
**future**
171:13 212:3

**G**

**gains**
96:24 109:1 111:10
**gainsaying**
230:23
**game**
136:4
**gaps**
194:25
**Garrett**
199:4
**gate**
196:15
**gather**
10:20 16:14,23 18:10
160:15 165:9 178:1
221:8 235:10
**gdexter@chaitmanll...**
6:23
**gear**
155:10
**geared**
23:24

**general**
32:9 33:4,10 34:9,11
36:9 37:3 38:13,17
39:3,10,12 42:3,4
45:20 47:7 48:3,8,9
48:11 66:22 67:2,6
71:18 82:6,12 95:15
104:15 127:7 190:22
228:11
**generally**
109:15 143:10 190:19
**generated**
195:20 226:8
**generation**
48:21
**generic**
47:6 73:7 93:22 95:4
**gentleman**
237:8
**getting**
54:24 65:10 92:9 100:6
100:7,17 104:23,25
111:15 112:7 122:5
141:25 172:20 175:15
187:19,21 191:3,4
192:8 197:13 242:21
**gibberish**
156:2
**gift**
85:25
**give**
21:14 24:6 35:17 38:22
38:25 39:7 95:8 98:20
102:25 114:18 119:12
124:17 135:25 146:17
147:16 162:7,7 164:3
164:7 196:24 198:22
231:20 233:6 235:1,5
236:2 243:25 244:18
**given**
28:16 64:10 83:20
85:25 98:2 102:12
111:13 116:2 135:7
142:4 147:18 157:18
161:6 168:22 195:4
203:1 207:15 213:21

214:2
**gives**
25:18 53:7 60:15 95:7
**giving**
232:2
**glad**
23:11
**glitches**
56:12
**global**
173:17,19
**go**
7:24 26:20 40:9 50:12
51:17 57:24 66:7 72:8
80:7 87:7 91:20 98:9
118:4 122:10 123:14
127:2 143:25 156:3
171:24 172:14 174:6
188:21 189:22 190:16
193:20 197:21 198:11
201:5 205:25 211:16
219:17 224:1 229:11
230:8 235:19 236:5
238:7 239:19 241:2
241:23
**goal**
135:9 152:23
**goes**
72:15 120:4 139:6
167:13 195:16 202:3
202:12 207:9 208:2
208:10 221:8 223:12
**going**
11:19 13:21 18:24
20:16 21:21 22:8,13
23:10 35:22 36:15
38:3 39:24 44:3,15
48:21 50:2 52:20 58:4
59:7,18,19 60:6,7
63:22 71:7,11,19 78:4
81:5 89:8,22 91:25
92:9 95:11 96:1 97:14
98:9 101:7 106:1,17
114:20,23 119:3,5
122:9 138:8,25 143:5
143:6,22 146:19,25

147:5,15 151:13
153:24 156:25 160:3
161:22,23 163:3
164:11 165:19 166:2
166:7 167:3 170:10
174:22 175:5,18,25
176:5,5 177:24
178:21,23 179:9
182:9,18,19 183:10
184:15 187:5 189:25
197:9,17 198:11
200:14,17 206:25
209:21 214:5,6 216:5
216:11 221:19 222:24
226:20 227:11 228:14
228:18 235:16 241:20
242:22 243:8,22
244:3,7
**going-forward**
235:21
**good**
8:15 27:13 55:5 68:17
77:3 108:7 110:22
124:8 153:9 155:2
179:3 215:8 244:12
**good-faith**
14:13 15:5 25:19 92:18
158:11 161:9 162:19
180:11 184:19
**goose**
170:25
**Gordon**
2:12,14 5:13 103:6,7
229:14 232:17,20
238:4 239:6 241:13
**gotten**
44:2 101:11 102:20,21
102:23 109:4,6
138:16 144:7
**govern**
140:18
**government**
145:4
**government's**
17:8
**governs**

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 337 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 265

173:6
**grand**
226:25
**grandchildren**
86:1
**grant**
47:12 199:7
**granted**
91:15 178:9
**granular**
40:4
**grappling**
107:7
**great**
40:15 44:10 47:22
96:13 124:5 129:16
208:18
**greatest**
153:19
**Greenblatt**
10:10,22 19:5,19 22:9
173:16 187:7,7 213:8
**Greenblatt's**
20:20
**Greg**
138:25
**GREGORY**
6:22
**Greif**
245:4,4,5
**gross**
174:25 218:18
**ground**
114:21
**grounds**
203:21
**group**
38:12
**groups**
9:10
**guess**
7:5 26:12,17 31:18
33:1 36:24 43:12
61:15 68:23 92:4 97:4
107:7 120:15 139:20
140:14 157:13 169:1

173:25 183:23 184:6
200:19 207:6 232:17
236:23,24
**guessing**
121:8
**guide**
144:14
**guiding**
30:10
**guilty**
17:25
**guy**
236:12

---

### H

**H**
1:9 2:1,8,16 3:1,8,15
4:1,15
**half**
68:18 243:5
**hand**
31:2 246:18
**handle**
27:17
**handled**
54:25
**handling**
124:18
**Hang**
108:8 121:10
**hanging**
89:15
**happen**
24:13 127:21 184:5,21
212:20
**happened**
49:24 99:6 151:14
184:4 225:11 232:22
**happening**
28:11
**happens**
47:9
**happy**
14:17 18:1 19:14 24:9
26:21 204:4 235:22
**hard**

51:8 148:8 152:8
160:24 228:15
**hardship**
232:8
**hardware**
162:2
**harping**
180:14
**Harwood**
2:6 5:13 232:17,20
233:1,4 239:7 240:7,8
241:12
**haystack**
161:2 171:1
**hchaitman@chaitm...**
6:22
**he'll**
13:14 99:15
**head**
7:13 157:19 217:11
244:16
**hear**
63:18 75:16,20 76:1
102:19 124:19
**heard**
99:8 147:22 222:22
**hearing**
10:24 126:25 128:21
169:22 182:15 192:24
245:24
**hearings**
14:16
**hearsay**
103:18 106:2 109:21
**held**
5:18 35:3 196:12
220:12 223:11
**HELEN**
6:21
**HELMIG**
4:8,11
**help**
41:4 112:15 184:25
220:17 236:1
**helpful**
12:22 19:25 25:7,11

36:12
**helps**
100:16 155:16
**hereunto**
246:17
**herring**
141:7
**hesitation**
161:19
**Hickman**
132:8
**hide-the-ball**
135:5
**highly**
135:3,3
**hire**
221:4,5
**hired**
209:6 211:15
**hit**
191:9
**Hmm**
108:5
**holder**
35:25 48:20 65:3,7
67:22 70:17 72:1
117:7 229:15
**holder's**
65:20,25 66:7
**holistically**
227:20
**HOLMERS**
2:21
**home**
233:14 237:2
**HON**
6:2
**honestly**
138:9 192:12
**Honor**
9:14 14:7 16:20 21:1
24:23 25:22 29:9 41:4
68:8 69:8 102:4
103:18,22 106:9,23
111:6 126:24 131:19
133:11 140:14 151:19

08-01789-cgm   Doc 18635   Filed 04/01/19   Entered 04/01/19 17:51:52   Main Document
Pg 338 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 266

152:7 163:1 164:6
166:9,20 167:24
170:15 182:11 185:18
188:22 189:6 197:19
202:19 207:7 210:5
219:2 220:3 224:11
227:19 228:6
**Honor's**
123:11
**hook**
67:7
**hopefully**
14:25 15:1 25:14,21
238:6
**horse**
15:14
**Hostetler**
6:8,14 82:22 211:25
**hotel**
236:13,16
**hours**
234:15
**house**
27:22,22,25 28:3,6,9
149:23 156:12 158:24
159:3,15 160:13,13
199:1 236:12,15
**housekeeping**
7:2 29:6
**houses**
28:18 236:9
**Houston**
6:10 237:7
**huge**
159:11 198:16
**hundred**
21:12 103:5 137:6
163:17 174:4 208:3
**hundred-page**
207:8
**hundreds**
25:16
**Hunt**
6:11 7:12 15:11 19:17
27:19 29:17,24 30:7
30:13,16 31:23 32:14

33:8,22 34:17 37:6,10
38:8,13,22 39:14,18
40:5,15,22 42:10,17
43:2,6,16 44:7,13,17
44:21,25 45:7 46:3,5
46:18 47:15,21,25
49:3 50:1,5 52:2,5,18
52:21 56:19 57:1,7,20
58:1,19 59:2,10 63:18
64:3,13,22,24 65:15
66:8 67:9 70:4,6,9,21
71:1,9 72:6,8,17 73:2
73:4,10,13,18,20,24
74:11,24 76:3,16 77:1
77:12,16,21 78:5,14
78:22 79:3,10,16,22
80:3,4,10,24 81:7,18
82:2,14 83:2 84:6,18
84:25 86:3,21,23,25
87:11,16,20 88:2,6,19
89:11 90:12,19 91:2,8
91:24 92:13,15,24
93:9,16 94:7,23 95:6
95:25 96:12,16,18
98:6,13 99:4 101:7,12
101:17 102:21 108:4
108:6 109:8 110:10
110:17,22 112:14,20
113:22 114:3,12,16
114:22 115:7,19,24
116:10 117:2,6,12,24
118:4,12,22 119:5,13
119:18,22 120:5,9
121:1,8 122:1,4,8,17
123:6,11,19 124:1,7
124:12,24 125:2,6,12
125:16 126:8,12
152:10 178:17,23
179:3,6 200:22
228:20 229:5 231:5
233:1,4,8,20 234:4,16
235:3,13,22 236:4,11
236:23 237:12 238:12
239:2,22 240:14
241:9 242:13,15,23
243:11,21,25 244:7

244:14,18,22 245:11
245:14,18,21
**Hunt's**
89:8
**hurt**
152:20
**hurts**
155:16
**husband's**
233:13
**hypothesizing**
211:10

**I**

**IA**
158:25 159:13 207:12
207:14 225:6 227:3
**IBM**
225:15,19
**idea**
55:5 245:16
**identical**
8:7,8 14:11 45:2
127:12 128:23
**identification**
131:11 132:6
**identified**
95:14 119:9 144:21
157:5
**identify**
49:11 50:21 64:5 70:10
77:24 79:1 83:5 96:20
112:21 113:19 117:3
117:21 118:5 131:22
150:2 155:13 172:1
174:18 234:21
**identifying**
78:15 130:21 148:3
**ignorance**
41:16
**ignore**
127:24
**ignores**
159:2
**ii**
5:4,13 237:1

**iii**
5:4,13
**imagine**
99:25 143:17 187:16
203:15
**immersed**
230:3
**impact**
42:24 48:24
**impacted**
155:20
**implicate**
68:4
**implicated**
68:12
**implicit**
7:4 86:17 92:7
**important**
55:24 136:19 143:2
197:25 202:3 218:10
**importantly**
133:25
**impossible**
220:18
**impression**
132:10 194:1
**impressions**
132:13 135:22
**in-depth**
207:9
**inaccuracies**
174:25
**inaccuracy**
173:15
**inaccurate**
65:9 169:12 171:16
173:1
**inarticulately**
43:13
**inception**
17:4 18:10 61:7 63:15
**inclined**
41:9,10,18 47:7 75:5
121:23 199:7
**include**
188:1

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 339 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 267

included
109:17 185:25
includes
16:16 111:20 196:9
including
13:18 104:9 134:15
    163:24 165:20 217:22
    221:4
income
100:25 101:25 107:20
    107:24
inconsistencies
167:19 175:20
inconsistency
113:21
inconsistent
14:2 57:23 151:8 165:3
    176:13 179:7
inconvenient
230:17
incorporate
91:4
incorporated
33:18,21
incorporation
87:14
incredibly
15:20
incremental
158:6
incumbent
213:13
independent
9:8 21:9 113:18 173:22
    209:8
independently
21:19
indicate
90:10 181:19 242:3
indicated
240:2
indicating
126:23 130:13
indication
16:5
indicia

170:7,12 218:4 224:21
Indirect
70:25
indirectly
218:2
individual
10:22 36:2 87:17
    156:11 210:12 234:3
    240:6
individually
1:16 230:10
individuals
34:20 35:20 40:21,23
    41:1,2,21 42:2 45:3,4
    91:10 103:16 210:12
infer
197:12
infinite
138:20
informal
28:1
information
32:9,13,15 33:15 34:5
    35:18 38:14,23 39:1,8
    45:8 49:5 55:10 60:7
    71:18 72:15 78:20
    79:6,7 95:14 100:6,24
    102:10,17 103:20,23
    107:23 109:17 111:11
    111:19,22 115:5,13
    116:16 117:12 130:21
    132:4,12,25 133:3
    138:6 156:13 157:24
    160:23 163:4,24
    164:16 167:16 175:15
    175:17 183:20 194:6
    197:15 199:2,8,11,17
    200:15 212:5,16
    226:15 227:7 234:9
informative
166:3,4
inherited
152:6 159:18
initial
64:25 65:2 66:9 70:13
    72:1 83:8,11,21 84:4

84:4,6 85:8 94:12
    117:4,15 123:2
    195:14 204:20
initially
204:12
inquiry
163:11
insert
45:20
insist
211:2
Insofar
116:5
insolvency
158:1 214:22 215:3,8
    216:14 217:15 218:1
    218:3
insolvent
214:19
installments
121:18
instance
54:17 62:20 132:17
    174:7 226:4 227:2
    228:5
instances
62:16 71:24 118:8,13
    119:8,9,11 172:1
    173:1 196:4 231:22
instructing
196:11
insufficient
32:8
intend
25:25 202:21 214:18
intended
153:17 192:6
intends
99:2
intent
48:5 217:16 230:5
inter-account
11:13 15:23 54:18,22
    55:16 56:6,13 60:9
    62:4 68:9,12 70:1
    74:1,22,23 195:25

interest
32:18 34:2 42:7 45:16
    83:10
interested
26:16 34:13 90:2
    246:15
interim
199:14 225:15
interject
71:15 204:1
intermediate
43:9
internal
223:23
interpret
52:9
interrelated
28:24
interrelates
218:4
interrogatories
29:23 40:8,13,18 45:1
    73:5 79:12 96:19
    122:2 125:5,19
    126:18 192:6 228:17
    234:1
interrogatory
41:22 44:25 45:6 46:5
    47:8,10,23,25 50:3
    54:24 56:18 57:23
    58:17,22 64:4 65:14
    70:7,9,21 71:2,13
    72:19 73:14,20 75:2
    77:1,4,16,24 78:25
    79:8 96:19 97:5
    100:12 112:21 113:8
    114:2,17 115:8
    116:11,13 117:17
    118:4 119:13,18
    120:10,13 121:2
    170:9 208:10 215:23
interrupt
85:17 92:16 151:1,2
    178:18 204:8
interrupted
44:13

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 340 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 268

interviewed
143:1
interviews
132:7 135:23 210:12
introduce
216:5
introduced
234:20
introducing
172:18
inventory
152:1 156:19 159:12
  165:24,25 166:12
  226:2
investigate
132:21 171:8
investigated
171:20
investigation
  69:19 131:24 154:25
  161:12,14 170:24
  184:10 210:17 211:17
  213:14 219:7,13
  221:3
investigator
211:12
investigatory
135:22
investment
  1:3,10 2:2,9,17 3:2,9
  3:16 4:3,16 17:6,15
  28:3,7 42:14 47:19
  81:24 111:9 148:22
  158:19,25 159:7
  201:25 211:4 218:22
  220:22
Investor
132:19
invited
155:12
involve
67:17
involved
  27:3 157:21 160:22
  229:21 232:21 233:2
  233:5

IRA
116:22 120:20 121:17
irrelevant
52:17 77:20 108:16
  115:17,23 117:14
  169:6 175:1 177:21
  240:13
IRVING
1:9 2:1,8,16 3:1,8,15
  4:1,15
Island
165:6
Israel
1:14,17,19
issue
7:18 10:13 11:1 12:13
  13:5,9,14,18,19 15:24
  16:25 18:17,24 24:17
  26:13 29:20 40:23
  41:10,17 43:21 44:9
  52:10 60:12 78:10
  83:20,22 91:16 95:6
  98:10 126:25 136:18
  139:7,21 142:5
  145:17 146:14 150:20
  155:15 156:9 159:2
  166:7 168:23 169:25
  170:4 173:18,18
  177:22 182:10 188:12
  189:15 192:22 198:2
  202:12 205:22 207:10
  210:9 217:15 218:7
  224:12,12 225:24
  230:1,5 241:2,7,22
issued
26:1 211:19
issues
9:2 10:21 13:11,17
  14:22 23:24 25:20
  30:20 31:8 43:18 44:1
  49:10 59:15 69:12
  104:19 106:2 127:20
  135:7 136:18 142:9
  146:18 158:1 167:9
  170:1 177:8 192:20
  202:4 228:4 230:4,23

238:23 240:5
items
147:10 152:5,20 162:5
  175:21
iv
5:14

_____
**J**
_____

J
3:12 6:16
Jacobs
6:16 9:3,6 10:10 11:1
  11:14 12:13 13:3 15:1
  15:9 16:19 17:16 18:1
  18:12 19:8,11,14,23
  20:4,9,11,15 21:14
  22:3 23:23 24:4,8
  25:10 26:4,7,19,24
  27:25 28:19 29:4,8,15
  44:8 68:8,11,16 69:8
  70:5 85:9,14,19
  101:18 102:3 103:17
  105:2,7,14 106:9,19
  106:22 107:6 109:14
  110:1,5 111:1,6,17
  112:13 126:24 127:9
  128:2,12,15,18 129:3
  129:9 130:23 131:5
  131:10,18 133:9,14
  133:18,20 140:8
  144:10,18 146:13
  147:8,18,25 149:1,5
  149:17 150:10,25
  151:4,18,21 152:3,12
  155:6 156:9 157:3
  158:21 160:12,20
  161:11,18 162:25
  163:22 164:5,17
  166:4,9,15,18 167:23
  168:1 169:4,14,16,19
  170:2,15 171:5,21
  172:9 173:2,5 175:22
  176:8,11,14 178:4,14
  179:15,25 180:9,12
  180:17,22,24 181:2,5
  182:11 183:25 184:6

184:12,17 185:7,13
186:19,23 187:22
189:6 192:14 193:2,7
194:7 195:11,14
196:18,21 197:2,6,19
199:13 200:24 201:18
202:19 203:7,14,20
204:4,7,19 205:15,18
207:6,23 208:5,25
209:5,12,19,24 210:4
210:8 212:12,19,24
213:2 215:2 216:14
216:16,23 217:9,17
219:1 220:2 222:3,6
222:22 224:11 225:17
225:20,22 227:15
228:25 245:5,7
JAMS
5:19
January
243:5
joke
139:3
Jones
181:15 190:15
Jones'
225:16
JPMorgan
21:9,25 196:3
judge
7:4 8:5,22 10:24 12:9
  12:24 13:13,17 14:16
  15:15 18:4 23:13 25:3
  26:15,23 27:5,16 32:1
  35:3 38:2,19 43:14
  44:4 55:1 60:25 61:10
  69:4 75:16,25 85:10
  92:22 94:3 97:7,18
  98:17,18,24 99:12,25
  102:9 106:16 125:23
  125:25 126:2,6,7,25
  127:1 128:17,21
  132:19 137:17 138:9
  142:3,16 145:20
  147:13 150:11 153:22
  155:11 159:1 168:13

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 341 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 269

169:6 174:23 177:14
185:14 190:4 192:11
192:20 194:2 199:22
200:6,19 203:18
210:24 215:7,15
217:14 229:6
**judge's**
14:2 106:5
**judges**
143:11
**judgment**
35:25 36:1
**jump**
49:25
**jumping**
49:8
**juncture**
182:12 185:19

**K**

**keep**
154:12
**keeping**
152:19
**KENNETH**
3:12
**kept**
223:17
**kicking**
197:1
**kind**
8:9 33:12 45:11 50:17
162:7 179:22
**kinds**
167:19 224:6
**Klan**
4:6,8,9,10,11,12,13 5:4
30:16 31:12,25 32:16
33:1,2,9 36:15 40:18
43:2 45:2 49:7 52:4
53:24 54:21 59:14
63:21 64:11,14,15,18
66:25 68:22 74:23
79:14,18 80:5 89:13
89:16 96:14
**Klan's**

66:11
**knew**
229:16
**know**
26:9 27:23 28:4 33:8
33:10 34:17,23 35:1
37:25 38:10 42:20
45:11 48:4,22 50:5
53:20 56:6,20 58:13
61:19 64:6,22,24 65:1
66:6,8,10,14,17 68:3
69:4 71:15 74:16 76:9
78:17 84:18,25 85:20
94:9,9 104:21 110:10
115:4,25 117:22
125:16 126:4,8
129:22 133:9 138:17
148:3 153:12 154:4
158:22 160:21 163:2
166:6 179:25 181:7
182:5 185:15 208:14
209:9 217:10,19
218:1 220:4,6,19
221:16 222:9 225:8
226:23 231:12,16
234:17 238:17 241:18
243:23 245:3
**knowledge**
18:13 19:9 70:10,18
77:17,25 78:15 79:1
101:20 114:18 115:4
115:8 116:3,8 118:8
160:16 183:15 217:5
222:5 230:22 232:18
233:16
**knows**
10:4 163:20

**L**

**L**
1:7,10 2:2,8,16 3:2,6,8
3:16 4:2,3,16,17 6:12
117:8
**labeled**
145:6,8 188:2
**laborious**

101:1
**lack**
28:10
**land**
155:7
**LANDRES**
4:9,12
**landscape**
217:20
**language**
60:23 61:18,19 62:5
239:16 241:20
**large**
31:3 113:1
**law**
10:12 32:12 33:24 38:4
38:19 39:10 47:3,3
101:19 118:1,2
154:12 172:12 177:18
182:19 183:9 212:3
236:10,12
**laws**
120:12 152:24
**lawyers**
212:1
**lay**
155:6
**lead**
36:25
**learned**
43:8
**leave**
8:14 69:2 118:24
151:22
**leaving**
196:5
**led**
123:13
**left**
122:17,18,21 198:16
**legal**
33:13 67:7 116:14,24
127:12 199:23 200:7
200:10 217:20
**legally**
120:11 121:5 183:11

**legitimate**
83:9 148:23 211:3
221:10
**length**
95:21 185:14,22
207:16 208:18 209:16
**lengthy**
28:21 166:2
**lens**
227:25
**let's**
34:6 40:12 47:9 48:7
54:20 59:25 60:9
66:16,17 70:3 78:12
81:2 82:20,21 124:23
126:12 129:20 187:3
188:18 202:14 204:9
210:25 235:19
**letter**
15:6 73:10 110:3,4
112:10 181:25 195:9
196:10
**letters**
145:10 238:9
**level**
40:4 138:24
**liabilities**
112:4
**liability**
34:3 51:8 57:8 112:3
120:2 168:14
**liable**
34:21 47:5
**lieu**
208:20
**Lifland**
142:3
**lifting**
186:21,24
**light**
63:11 158:7
**limit**
177:25 182:9 206:25
**limited**
32:10,11 33:11 34:7,8
34:16,18 38:6,18,21

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

38:23 39:4,9,20 42:7
42:9 67:3 82:5 110:15
136:22 178:1 216:3
222:16
**limiting**
180:15
**line**
35:14 162:14
**link**
231:10
**liquidating**
132:2
**liquidation**
1:2,10 2:2,8,16 3:2,8
3:16 4:2,16 142:6
**liquidity**
224:23
**Lisa**
173:17
**list**
7:24 24:6 71:11 130:3
130:5 131:6,15,22
132:4 165:6 180:6
181:7 188:22 198:21
198:23 201:11 214:2
223:4
**listed**
63:23 126:21 223:9
**literally**
163:23
**litigant**
138:19,19 140:17
165:16
**litigants**
135:10 142:11
**litigate**
177:13
**litigated**
11:5 12:8 13:6 182:18
**litigating**
12:25 16:9 153:14
193:11
**litigation**
13:2 14:22 18:14 23:17
61:11 69:17 102:17
132:11 133:8 142:2

143:13 167:17,20
190:1,6,12 191:10
192:24 193:19 209:13
229:21
**little**
79:23 87:22 99:5
**live**
154:18 230:16 231:8
**lives**
229:17 237:8
**living**
15:21 96:25 97:3
**LLC**
1:4,11 2:3,9,17 3:3,9
3:17 4:3,17
**LLP**
6:8,14,19
**LLP'S**
5:7,10
**local**
117:19 236:17
**log**
143:16,18
**logged**
143:16,18
**logging**
143:23
**logical**
8:1
**logically**
242:18
**Londa**
4:7,10 40:24 45:4
**long**
58:6 76:3 83:19 101:12
118:22 120:15 123:11
124:25 148:14 149:8
162:18,22 163:3
165:6 166:7 193:20
225:18
**long-standing**
202:5
**longer**
85:11 162:3 215:9
234:18,22
**look**

16:2,10 19:3 23:9 24:4
24:15 63:9 79:19
105:12 122:12 128:12
145:23 147:23 148:16
151:11 157:1 161:8
161:10 198:19 217:12
219:17 222:8 226:12
227:24 231:16 239:6
241:20 244:19
**look-back**
55:23
**looked**
26:5 27:11 148:13
152:15 176:6 203:12
228:1
**looking**
19:20 44:23 74:5 82:6
87:12,16 88:4 91:9,11
111:21 113:7 123:16
145:10,23 146:13,22
149:19 159:15 160:21
161:1 163:14 165:23
165:25 170:25 173:4
192:20 201:19 203:14
220:21
**looks**
45:13 129:17 130:21
**lose**
98:10 182:23
**lost**
87:9
**lot**
30:19 32:1 54:8 56:17
68:15 75:20 101:11
108:1 137:2 139:1
156:6 162:9 221:23
242:24
**lots**
169:7 238:1 239:14

**M**

**M**
6:22
**Maas**
6:2 125:23,25 126:2,7
128:17 179:4

**Madoff**
1:3,7,10 2:2,9,17 3:2,9
3:16 4:3,3,16,17 16:6
16:24 17:5 18:2,11,17
22:2 51:19 61:23 68:1
84:15 100:25 107:20
109:1 111:9 114:19
133:6 136:3 139:24
146:17 148:21 150:9
150:15 153:18 159:2
159:8,17,23 161:7
163:21 164:15 172:15
172:17 175:7 179:10
181:8,25 196:10
201:24 202:5 205:23
206:1,5 211:2,14
212:11 213:9 214:19
221:18 223:19 224:3
224:4,23
**Madoff's**
17:7 18:20 22:22 37:20
51:21,23 54:11 61:12
62:3,10,25 74:7 86:1
145:18 149:15,24
191:19 201:22 202:8
218:21
**magic**
120:21
**main**
6:9 219:22
**maintain**
185:21
**maintained**
148:6 185:20 196:8
**major**
167:9
**making**
142:23 166:21 185:1
203:25 209:17 218:6
**man**
17:8
**management**
9:9,20 10:7 105:24
203:11
**manager**
26:2

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 343 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 271

mandate
46:15
manipulation
219:19
manner
100:9
march
42:25 243:17
marginal
189:25
Marie
6:12 138:12 234:18
marie.carlisle@bake...
6:12
mark
190:2
market-making
28:12 140:5 218:23
223:21
marriage
246:14
match
22:16 156:11 226:1,3,7
material
32:1 109:7,16 146:22
148:11 155:1 173:4
203:23 206:8 209:19
materials
34:12 111:23 139:21
139:24 155:14 184:14
194:13 195:4 199:22
204:15 210:15 217:19
226:23
math
54:5
matter
34:14 49:24 66:25
69:14 75:15 80:5
95:15 104:8 116:7
118:1,1 139:4 150:4
155:8 183:21 205:4
215:21 216:19 246:11
246:15,16
matters
7:2 9:13 29:6
mean

7:12 42:17 59:23 76:9
78:14 84:11 99:24
107:4 115:18 119:11
136:11 157:9,14
158:12 163:1 182:21
182:22 183:16 184:7
190:18 230:5 232:21
239:6 241:18
meaning
130:7
means
50:8 56:20 57:2 75:15
115:17,19 141:14
181:7 185:16 221:6
meant
181:14
mechanics
236:2
mechanism
141:19
media
148:8,12 152:8 161:23
meet
14:18 43:20 146:20
202:21
meetings
47:17 81:10
members
34:1
memoranda
87:14
mental
132:10,12 135:22
mention
132:5
mentioned
138:9 141:8 144:3
224:16
mentis
232:11 234:13
Mercantile
224:19
Merit
5:22
Mexico
229:17

microfiche
152:7 161:8,25 163:15
microfiches
163:17
microfilm
161:25 163:2
million
101:25 134:16 141:7
166:25,25
millions
157:23
mind
13:16 66:25 68:6 70:19
86:8 100:1 116:18
117:3 172:6 194:9
mindful
36:20
mini
182:15
minimum
141:10 148:18 186:23
minute
121:10 124:18
minutes
81:10
minutia
27:21
mired
54:24
miscalculation
183:19
mischaracterization
23:4
misconstruing
12:1
missing
166:24
misspoke
23:2
misspoken
21:24
misstatement
23:3
misunderstand
192:19
misunderstanding

66:5
Mitzvah
65:12 71:24
modification
58:10
modified
86:9
modify
45:17 56:21 58:14,17
96:2 112:12 121:14
160:11
modifying
87:4 88:13
moment
9:22 27:10 38:5 87:25
97:17,18 98:19 106:7
119:3 127:24 220:4
money
19:7 46:25 48:6,20
53:25 65:19,24 83:6
85:3 116:20 118:3
120:23 121:17 153:3
162:10 168:15,16
191:8 200:1
money's
67:18
monies
85:24
monthly
191:3
months
147:14 174:10 197:5
Moore
36:18
moot
51:3
Mormon
115:21
morning
95:24 219:3 237:20
motion
5:1,7,10 26:9,25 29:3
30:11,14 61:9 63:11
91:7 98:23 118:19
124:6,10,21 126:12
126:17 127:2 128:4

Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

128:22 143:3 169:9
200:8 215:14 227:13
**mouse**
199:17
**mouth**
150:18
**move**
43:19 70:3 76:2 112:20
122:23 128:3 188:18
**moved**
125:21,22 230:7
**moving**
178:19 242:25
**multiple**
148:7
**Mulvenna**
5:21 34:11 246:7,20

**N**

**N**
6:6
**nail**
167:15
**nailed**
70:7
**name**
33:14 35:19 116:2
130:5 179:2
**names**
33:24 45:18 114:17,24
**narrative**
152:21
**narrow**
72:17
**narrowed**
185:5
**narrower**
78:10 172:5
**narrowing**
88:21
**nature**
11:5 102:13 105:16
166:19 197:22 219:3
**NCF**
26:18
**near**

22:16,20 173:21
**nearby**
236:10,11
**nearly**
128:23 173:24
**necessarily**
193:8
**necessary**
155:17
**need**
33:6 35:8 43:10 44:3
45:10 47:13 58:17
64:6,22 65:13 66:8,9
66:14 71:21 75:1,25
78:2 80:6 91:19 104:6
105:6 114:1 117:2
124:25 138:5 148:18
157:7,15 161:2
166:24 174:16 188:21
203:18 212:8,15
219:19 234:10 240:6
242:12,17,20 245:18
**needed**
26:8 117:10 123:14
124:4 217:3
**needle**
161:1 171:1
**needs**
43:20 58:12 65:5 94:14
134:1 158:9 168:12
173:11 240:19
**negative**
53:24
**neither**
27:15
**net**
12:7,16 16:9 18:6 21:7
53:4,8 69:24 155:23
160:2 184:24 198:2
214:14
**netting**
223:25
**never**
16:12 17:5 41:1 42:2,3
44:9 138:16 144:7
153:17 158:21,22

182:1 186:3 190:15
229:21 241:13,18
**new**
1:1 5:19,20,24 6:4,4,16
6:16,21,21 129:4
150:20 159:10 229:17
237:6 246:3,8
**nicknames**
28:2
**Nods**
244:16
**non**
141:7 232:11
**non-issue**
40:2
**nonobjectionable**
136:12
**nonsensical**
183:2 185:15 186:7
**normal**
9:19 109:13
**Nos**
46:2
**nose**
57:18
**notary**
5:23 246:8
**note**
15:2 36:17 189:25
232:10 239:13
**notes**
25:11 132:7 239:13
**notice**
27:5,9 69:17
**noticed**
229:8
**notion**
221:9
**notwithstanding**
144:12 183:3
**November**
141:25 142:1
**nuances**
7:15
**number**
9:20,25 10:17 24:13

30:21 32:3 52:8 53:8
53:24 72:7 80:7 113:2
131:8 137:25 143:7
154:13 180:20 183:4
183:5 185:13 189:2,3
201:18,20,21 204:11
210:8 213:4 214:18
215:18 218:16,19
219:5 223:11,15
234:22
**numbered**
235:24
**numbering**
87:22,25
**numbers**
50:11,13 227:10
235:11,17,25 238:9
**numerous**
108:14 174:5
**nutshell**
22:23

**O**

**O**
6:1
**o'clock**
244:15
**O/W/O**
1:14,17,19
**object**
51:25 74:16 75:8
132:14 182:14 199:20
**objected**
193:11 204:12
**objecting**
210:20
**objection**
110:23 131:18,19
157:3 193:12 203:25
204:20 219:1,4
**objections**
193:12 219:6
**objective**
153:1
**objects**
27:15 203:20

Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

**obligation**
69:16,18 132:21 134:7
    165:17 172:24 176:17
    177:11 211:7 213:16
**obligations**
141:2 142:20
**observed**
42:13
**obtain**
24:21 35:7 90:17,20
    127:16 146:3 216:13
    216:25
**obtained**
145:1 154:6
**obtaining**
49:4 89:24
**obviate**
86:16
**obviated**
119:19
**obviates**
57:22 114:1
**obviously**
13:16 18:23 31:19 44:2
    51:13,14 56:11 59:21
    101:23 105:11 167:8
    182:5 186:20 192:3
    198:10 209:25
**occasions**
105:6
**occur**
150:5,7 178:9 207:20
    212:23
**occurred**
118:9,13 119:8 184:19
    186:3 190:21 203:2
    226:24
**odd**
25:24
**off-the-cuff**
137:18
**offer**
9:19 10:6 110:6 174:22
**offered**
51:10 109:11 226:10
    237:3

**offering**
75:23
**office**
237:1
**offices**
236:10,12 237:6,7
**offset**
98:7 112:3,4
**oh**
29:19 131:9,15 163:8
    166:5 218:17 245:11
**okay**
18:23 24:3 26:12 27:20
    27:25 29:12 30:1 37:8
    37:12 40:5 44:4,10
    46:4 47:24 50:4 53:19
    56:16 57:20 58:19
    63:16 66:23 68:19
    69:7 70:5,20 73:2,13
    76:24 77:1,12,16 79:9
    79:13 80:24 86:22,24
    87:16,19 89:7 90:8
    91:8 92:6,13,14 94:23
    95:6 96:12,15,17
    110:22 114:16 117:24
    120:9 121:25 122:1,3
    124:23 129:25 131:9
    131:17 149:4,10
    151:23 156:5 162:16
    164:17 178:14 180:17
    180:22,23 185:7
    188:19 197:20 208:25
    209:24 210:4,7 214:8
    217:9 218:14 221:13
    223:7 228:25 229:6
    238:22 242:8,13
    245:18,20
**omnibus**
10:24 192:23 200:7
**once**
34:10 42:15 58:7 63:3
    66:6 112:14 221:18
**one-to-two-page**
103:14
**ones**
20:10 23:15 36:21 45:2

    87:21 103:7 128:13
    185:2 240:7
**open**
63:16
**opened**
37:11 149:25 168:4
**opening**
194:15
**operated**
28:22 36:18
**operating**
28:5 36:9
**operation**
201:23
**operations**
28:3 134:21 218:21
**operative**
37:17
**opine**
221:6
**opines**
183:23
**opinions**
137:18
**opportunity**
112:11 149:2 216:13
    236:3
**option**
95:7
**Options**
224:18
**order**
5:7,10 9:9,20 24:14,16
    25:8,10,18 32:24 35:7
    35:11 36:3 49:9 58:9
    58:14,15 59:6 72:21
    80:22 101:12 102:15
    106:13 118:20 123:12
    124:2,22 127:15
    141:24 142:2,4
    145:20 166:22 170:23
    183:4 190:5 193:4
    200:11 203:11 209:14
    216:6 227:16,21,22
    228:7 229:10 230:7
    245:2,7,10,11

**ordered**
111:23 194:2
**orders**
10:7 25:14 26:13
    101:23 105:24 106:5
    141:16
**ordinary**
142:19
**organizational**
80:14
**organized**
38:1 134:19 139:2
**original**
128:19 179:10
**originally**
141:18
**ought**
242:19
**Ouija**
119:10
**out-of-the-market**
224:22
**outcome**
14:1 177:4 246:16
**outlined**
228:12
**outrageous**
151:21 152:17
**outset**
142:22
**outside**
102:17 132:15 145:19
    163:25 167:20 168:8
**outstanding**
8:12 197:22 200:2
**overarching**
20:14 41:13 143:8
**overlap**
12:20,21 31:16
**overrides**
141:4
**overruled**
102:9
**owe**
153:3
**owes**

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 346 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 274

224:3,4
**owned**
61:5
**ownership**
32:18 34:2

**P**

**P**
6:6,6
**p.m**
244:21 245:23
**package**
208:13 231:20
**page**
1:23 50:11 79:4 97:23
129:15 130:1 174:8
181:4
**pages**
19:2 108:24 111:16
203:5 208:3
**paid**
36:2 97:2,8 100:5
103:16 111:8,10
112:2 196:13
**painstaking**
135:14 226:18
**painstakingly**
152:4 184:22
**Palmer**
2:20,22,22,23 5:14
230:20 232:19 237:15
237:16,16 241:13
**papers**
100:13 134:11 138:11
230:13
**paperwork**
16:16 74:5 245:16
**paragraph**
202:18 203:3 209:1
**paragraphs**
113:9
**parallel**
61:19
**paraphrase**
208:13
**Park**

6:20
**part**
12:17 13:7,9 15:23
17:2 28:9 63:10 67:19
71:10 73:25 78:22
97:19 131:14 140:9
145:1,2,3 169:15,22
193:12 194:24 195:13
198:18 199:6 202:15
205:6 206:25 221:12
221:14
**participants**
191:14
**participate**
190:11
**particular**
38:9 39:15 54:17 58:17
58:23 65:9 73:14
76:11 105:6 133:13
136:9,23 140:8
141:24 169:16 183:24
219:5
**particularized**
166:23
**particularly**
50:25 156:21
**parties**
26:14 43:19 44:9 49:12
77:17 86:4 93:24
94:11 134:1 143:12
155:12 246:14
**partner**
4:7,8,9,10,11,12 32:11
32:19 34:8,8,10,12
37:3 38:6,17 39:3,10
39:12,16 40:25 42:4
46:9 47:7 48:3,8,10
48:11 66:19,22 67:2,3
67:6
**partners**
32:9,11,15,17 33:4
34:1,4,16,18 36:3
37:4 38:9,14,18,21,24
39:4,9,16,20 42:3,9
45:12,20 46:11 48:13
82:6,13,24

**partners'**
66:19
**partnership**
4:6 32:1,10,17 33:2,10
33:11,11,14 34:2
36:16,19,21,23 37:4
37:13,14,16,21 38:1
38:16 39:13 40:20
41:19 42:7,11,13,19
44:11 45:11,12 46:8
47:4,6,14,18 48:24
67:2,6,10,12 80:15,16
81:10,22 82:13,23
87:13,23
**parts**
242:25
**party**
26:16 89:25 90:17
93:14 112:23 113:10
217:1
**party's**
120:14
**pass**
72:9
**passed**
239:23
**Pause**
76:23
**pay**
96:23 117:10 168:16
**payable**
65:11
**payroll**
130:22
**Pearlman**
232:20,22 237:24
241:12
**peek**
162:7
**pejoratively**
187:4
**pending**
49:4
**people**
38:12 42:15 61:5 70:10
70:11 108:2 114:24

116:3,8 118:17
120:20 137:6 138:21
139:16 143:14 163:23
165:20 190:7 191:11
191:17,20 229:24
230:6,14 231:21
232:5 234:8,12 235:8
**people's**
236:9
**percent**
22:17,20,20 32:18 34:7
34:8,14,15 45:15
103:5 159:10 170:20
173:21,24
**percentage**
34:21 35:23
**percentages**
39:8
**Perfect**
112:13
**perfectly**
78:16
**period**
20:23 36:24 37:1,6
52:10 55:23 60:13
62:11 63:6,7 69:14,20
71:15 120:21 161:22
174:6 221:1,21 222:4
224:10 232:25
**periodically**
199:12
**periods**
18:13 21:22 22:14
145:15,25 149:8,24
153:15 154:3 171:9
218:5
**Perlman**
3:12,13,13 5:12
**Perlman**
49:15 51:23 61:8,18
74:7 186:12
**permit**
26:17 141:19
**permits**
178:12
**permitted**

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

37:19 64:21 101:19
**person**
35:22 46:9,10 70:12,17
 77:24 79:1 115:12
 130:9,10,13 171:15
 241:8
**personal**
2:21,23 118:7 232:18
 233:16
**personally**
157:21 158:22
**personnel**
211:1
**persons**
78:15 114:18
**perspective**
28:25 29:1 108:17,17
 112:5 140:16 144:13
 168:6 186:21 228:2
**PETER**
4:10
**phone**
242:11 244:5
**phrase**
68:1 80:20 149:12,19
**physically**
124:19 229:23
**Picard**
1:9 2:1,8,16 3:1,8,15
 4:1,15 5:3,4,4,8,12,13
 5:13,14,15,15 129:1
 159:4
**Picard's**
51:22
**pick**
176:2
**picked**
236:24
**picture**
41:15 198:6 208:8
**piece**
148:12,16 152:8
**pieces**
148:7
**pin**
217:12

**place**
50:2 63:25 76:4 102:15
 159:20
**places**
45:23
**Placon**
237:1
**Plaintiff**
1:12 2:4,10,18 3:4,10
 3:18 4:4,18
**plaintiffs**
230:15
**planning**
199:25
**plausible**
185:10
**playing**
138:24
**Plaza**
6:15
**plea**
17:13,25 150:16 202:9
**pleading**
47:3
**pleadings**
30:19
**Please**
151:4 167:25 204:7
**pled**
17:12 32:9 78:6 83:20
 150:14,15
**point**
26:15 28:16 54:19
 62:18 71:2 72:9 78:1
 84:2 86:2 93:19 100:3
 105:14 108:7 110:17
 121:7,9 133:21
 138:10 150:11 171:2
 178:16 180:7 185:3
 186:13 198:24 199:4
 202:10 206:14,19
 207:15 215:13 218:6
 239:4 242:21
**points**
40:9 122:22
**policies**

81:11,24
**Ponzi**
18:11 28:5,25 61:25
 153:20 160:6 218:9
 221:11
**pools**
224:22
**populated**
226:13
**portion**
28:14 46:10 68:17
 107:18
**portions**
28:23
**posit**
136:7
**position**
17:4 18:10,18 61:6,16
 69:8,23 127:10
 136:21 138:18 201:24
 202:2,7,17 205:10,13
 206:10,13,18 207:3
 211:6 212:10
**positions**
165:3
**possess**
77:18
**possession**
69:12 89:22,24
**possibility**
150:8
**possible**
134:4 135:11 204:23
 226:1
**possibly**
74:8 151:7,16 158:8
 168:10 174:4 198:12
 216:17
**post**
143:23
**pot**
107:11
**potential**
108:14 139:20 141:20
 155:11
**potentially**

11:1 20:16 45:15 48:24
 110:14 128:1 136:3,7
 140:13 142:5 149:14
 163:15 164:14 172:4
 227:9
**power**
40:24 41:7
**practical**
75:15 140:15 150:4
 183:21
**practice**
212:3
**pre**
60:1 158:18 160:17
 162:20 166:13
**precedent**
156:9
**precise**
35:18
**precisely**
46:14 205:22
**preclude**
230:24
**precluded**
95:11
**predate**
18:7 37:22
**predates**
60:13
**predating**
154:3
**predecessor**
33:17
**prejudice**
82:1 234:2
**prejudiced**
104:23 105:5
**premature**
203:9
**prematurely**
203:22 204:16 245:10
**prep**
236:3
**preparation**
132:11
**prepare**

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 348 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 276

157:10
**prepared**
129:10 152:2
**preparers**
116:1
**preparing**
94:25
**presence**
86:8
**present**
171:12
**preserve**
98:12
**preserved**
69:16
**presumably**
13:11 187:5
**presume**
239:17
**presumes**
212:13
**presumption**
61:25 122:25 123:7
160:6 221:11
**pretty**
70:7 100:22 104:14
161:20
**prevails**
98:3
**prevent**
151:17
**previously**
7:21 156:18 162:21
**prima**
132:15
**primary**
2:13
**principal**
45:23 53:16 240:11
**principle**
36:9 228:11
**prior**
14:3,15 37:20 49:18
105:22 147:10 215:17
221:21 224:10
**pristine**

172:22
**privacy**
108:17
**privately**
223:22
**privilege**
143:8,16,23
**Pro**
1:11 2:3,10,18 3:3,10
3:17 4:4,17 5:3,4,4,8
5:12,13,13,14,15,15
**probably**
23:17 26:15 33:21 48:9
48:11 56:10 92:1
94:19 103:8 156:1,17
165:24 166:3 174:13
213:20 230:19 232:14
**problem**
55:5 56:2 60:18 65:13
66:1 67:15 72:2 90:6
94:3,8 103:17 129:7
137:11 189:7 207:7
243:3
**problems**
36:7 50:13 57:22 108:1
212:2
**procedure**
24:12 25:1 140:18,24
**procedures**
142:2 209:14
**proceed**
63:17 129:10
**proceeding**
5:8 9:10 11:6 12:10
13:6,10 14:4 15:3
24:1 155:10 165:22
182:4,5 189:12
192:16,17 193:23
194:11 195:5 196:19
**proceedings**
5:2,11,17 7:7 10:5
11:10 13:7,8,15 17:17
158:12 168:14 196:17
196:22,25 212:22
246:10,12
**proceeds**

34:22
**process**
43:7 101:1 148:14
**processing**
31:22
**produce**
8:2 33:3 37:15 84:1,12
87:7 88:16,24 89:17
90:20,23,24 93:2,11
93:17 94:10,18 96:1,7
96:10,11 101:7
110:11 126:19 130:11
134:8 136:11 137:2
146:4 147:9 150:2
151:7,12 162:23
163:9 177:11 181:18
183:20 199:21 202:1
206:17 214:14,20
218:24 222:12
**produced**
23:16 36:16 87:4 88:11
88:12 89:5 92:25 93:2
93:5,8,24 95:1 96:9,9
101:14 104:10 105:9
105:11 108:20 109:7
131:7 133:7,16 135:2
154:15,15 156:20,24
157:11 162:21 183:1
189:14,22 191:16
194:13 195:11 196:2
196:7,13,14 197:12
205:14 206:2 214:9
214:17 229:17 233:9
235:13 238:8
**produces**
90:13 180:2
**producible**
157:12
**producing**
101:4,5,6,9 104:22
157:4 188:3 189:23
195:3 205:9 243:9
**product**
131:21 132:8 135:23
136:6,10,16 137:13
137:13,14,20 141:4

142:22 156:21 157:6
157:12 165:11 204:13
210:11,22 212:7
213:18 214:5
**production**
122:19 141:21 148:2
195:15 202:11,24
204:17 205:1
**professionals**
163:25
**proffer**
216:22
**proffered**
202:22
**profit**
10:24 11:15,15 12:4,9
12:25 13:2,5 15:3,22
16:11 23:16,23 61:10
74:2,24 167:16,20
169:21,25 188:22,25
190:6,11,15,17 191:5
191:7,10,11,14,20,25
192:22 194:4 195:10
**profits**
21:17 191:4
**program**
162:2
**prohibiting**
127:15
**pronouncing**
168:25
**proof**
57:10 176:16 177:9,14
177:19 182:17 202:22
215:11
**proofs**
183:10 226:11
**proper**
11:2
**properly**
74:1 76:8 77:8 185:19
193:13
**property**
83:6
**proportionality**
134:3 137:10 148:19

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 349 of 594
Trustees Motion to Compel Discovery                           Arbitration 12/13/2016

Page 277

157:15 162:13 168:6
173:8 180:14
**proportionate**
133:25 135:19 158:9
168:11 173:10,11
**proposition**
175:23
**proprietary**
28:11 218:22 220:21
225:5
**prosecuted**
175:9
**prosecutor**
172:16,24
**prospective**
183:14
**prospectively**
174:17
**protect**
35:15 102:15
**protected**
132:7 136:10
**protecting**
137:20
**protection**
132:20 141:5
**protective**
5:7,10 102:15 118:20
124:22 127:14 227:16
227:21 228:7 229:10
229:20 230:7
**prove**
31:6 39:20 50:15
155:25 168:18 172:18
183:6,7
**provide**
19:14 20:20 97:1
114:24 115:5 135:14
142:6 155:18 207:24
217:1 218:18 242:15
243:1,12
**provided**
69:9 83:7 85:24 103:20
103:23 113:1 155:3
186:1 190:5 202:23
217:20 235:23

**provides**
207:8
**providing**
141:17 161:19
**proving**
30:23 231:18
**provisional**
242:24
**public**
5:23 246:8
**publicly**
200:16
**Pull**
52:3
**purchase**
201:24
**purchased**
17:5
**pure**
55:18 212:13
**purely**
212:14
**purist**
54:21
**purported**
11:17 17:1 104:13
105:17 186:2 226:17
**purportedly**
103:16
**purpose**
89:20 152:22 157:13
209:17 240:10,11
**purposes**
52:7 162:14 219:20
**pursuant**
145:18 203:11
**pursue**
118:16 184:17 185:2,2
**pursuing**
38:5
**put**
15:13 26:9 54:1 74:18
79:16 95:4 115:13,14
135:1 141:12 144:6
146:5 150:22 154:20
164:23,24 165:1,8

172:11 176:15,16
186:6 216:11 226:14
**putting**
34:12 97:5 162:22
187:1
**PW**
12:17 145:17 146:15
155:8 189:9,12,15
190:1 192:15 193:14
193:19,23 194:9,11
194:19,22 196:18
**PW-related**
195:3

_____

## Q

**qualification**
105:18
**qualify**
174:8
**quality**
79:7
**quarrel**
107:17
**quarterly**
191:4
**quash**
5:10 126:13
**question**
7:24 14:6 22:7 26:19
48:12 49:8 51:16 55:9
64:8 68:24 110:12
133:5,11 134:23
140:10 144:19 157:14
160:12 162:15,18
164:4 174:3 175:3
190:2,14 208:21
212:11 215:8 227:4
**questioned**
130:9
**questioning**
238:23 239:11
**questions**
43:10 230:19 232:2
234:1
**quick**
162:7

**quite**
187:6
**quote**
174:8 186:15,17,19

_____

## R

**R**
6:1,6 246:1
**raise**
49:10
**raised**
136:18 145:17 146:15
200:5 215:7
**raises**
49:8
**raising**
129:8
**random**
239:13
**rapid**
141:19
**rational**
171:5
**reach**
208:17
**reaction**
94:12
**read**
16:24 84:9 120:19
134:11 137:9,17
139:21 149:2 171:11
181:21 187:1 210:1
230:13 234:21 237:15
**readily**
152:13 153:8 198:20
**reading**
23:12 79:10 172:6
**real**
17:1 47:14 61:24 94:3
**realize**
23:9
**really**
7:5 16:24 27:20 33:1
52:6 66:24 100:16
103:25 104:23 116:7
150:21 163:4 180:5

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 350 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 278

182:7,12 199:23
222:14 230:6 234:13
**realtime**
5:23 181:24 182:8
199:18
**reason**
8:21 32:20 36:11,12
55:21 98:4 113:14
121:3 135:20 150:4
170:13 187:11 193:10
216:10 235:1 241:7
**reasonable**
140:15 144:16
**reasonably**
83:15 142:24
**reasons**
27:9 48:1 96:20 227:12
**reasserted**
73:1
**recalculate**
159:25
**recalculated**
18:8
**recall**
55:4 129:2 193:25
**receive**
41:23 83:22 188:25
**received**
9:18 16:12 40:17 45:3
46:8,10 64:6 65:7
71:4 77:6 90:22 93:13
93:23 95:2 103:3,7
104:2 117:3 188:13
191:20
**Recess**
80:1 122:15 229:2
**recognize**
156:15 160:3 171:22
222:15 231:15,17
**recognized**
35:2
**recognizing**
89:14 164:11,13
**recollection**
61:4 103:25
**reconcile**

226:22
**reconciliation**
20:21 173:19
**reconstruct**
174:6
**record**
17:18 58:3 59:3 61:13
76:23 80:1 106:25
108:9,10,11 112:17
112:18,19 122:15
126:14,15 136:4
139:6 147:2,3,4
158:23 174:13 176:19
178:24 179:7 182:13
195:1 198:7,9,14,18
204:2,3,10 229:2
245:21 246:12
**records**
16:22 18:22 21:2,10
22:1,2,15 31:5 49:15
49:16 51:1,1,18,21,23
51:25 54:9,12 60:4,6
60:14 61:4,8,12,16
62:8,10,12,23,25
69:11,16 71:19,20
72:4 74:7,17 75:24
92:22 94:5 102:6
112:24 113:2 133:16
134:14,17 138:14
139:9,10 140:3,10
141:8 144:3,4,21,25
145:25 146:10,11,12
146:21 149:13,21
151:25 154:2,5,12
155:22,24 158:16,18
159:16,18 160:15,17
161:22 162:20,24
163:16 166:13 167:1
167:10,13,14,19
168:19,20 169:3,11
170:5,6,11,11,19
171:15,24 172:18,19
172:22 173:1,16,23
174:18,22 175:4,7,10
176:3,3,6,13 179:9,16
182:16,17 183:6

184:13,14 185:17
188:2 191:19 194:15
196:3,4 205:24 206:1
206:2 219:4 220:8,14
220:19 221:16 222:3
222:6,14,24 223:13
223:17,23 224:7,16
224:20 226:7 230:2
**recover**
37:19 53:18 152:23
153:4
**recovered**
153:5
**recovering**
132:3
**red**
141:6
**redact**
102:7
**redacted**
39:5 101:15
**redacting**
100:23 101:1
**redaction**
101:18
**redactions**
108:13
**reduce**
24:14 203:2
**refer**
227:5
**reference**
187:16 207:5 209:23
210:15
**referenced**
11:7 204:20 209:14
**references**
27:22 215:25
**referencing**
205:8 207:2
**referring**
68:9 131:6
**reflect**
17:18 61:17 63:24
72:21 113:4 172:23
176:24 186:2 192:3

226:23
**reflected**
11:3,17 53:11,12 65:8
85:24 111:22 113:11
185:23 190:23 224:7
**reflecting**
47:17 139:10 171:16
195:20
**reflects**
60:7 166:12 220:24
226:16
**refund**
112:1,2,3
**refunds**
111:13
**refute**
206:10
**refutes**
150:1
**regard**
15:2 30:8 69:1 94:20
97:23 106:4 147:6
**regarding**
30:5 47:3 111:9 169:11
242:6
**regardless**
69:20 104:11 109:19
111:13 155:16
**Registered**
5:22
**regularly**
199:15
**regulatory**
154:11
**reinstate**
59:5
**reiterate**
220:2 225:9
**rejected**
199:23 200:6
**relate**
10:21 27:23 94:19
108:25 139:22 140:4
158:19 174:19,23
176:7
**related**

84:13,14 96:4 102:7
140:2 168:19 194:9
205:11 246:13
**relates**
15:4 46:6 47:4 75:17
76:12 83:17 87:1 97:6
100:25 106:6 112:10
130:18
**relating**
40:8 47:12 80:14 89:17
107:13 108:22 113:17
116:16 193:23
**relation**
19:2 30:11
**relationship**
62:3 207:17
**relevance**
37:23 39:6 101:19
108:13 136:14 168:5
171:6 173:8 197:15
**relevant**
11:9 12:14 32:19 36:24
37:1,6 45:8 54:9
55:11,22 94:17 98:5
102:1,12 112:1,5
133:24 135:16 137:7
140:22 141:16 142:8
153:5 155:19 168:11
168:22 169:13 173:9
177:18 188:11 189:20
192:10 194:10,11
195:4,22 200:12
202:16 215:16 216:18
218:3 221:1,17
**reliability**
167:10,14 170:8,12,17
**reliable**
22:12,21 74:8 112:24
153:21 170:20 173:23
185:24 216:11
**relied**
109:11 110:21 141:22
214:23
**relief**
91:15
**relies**

107:16 209:11 216:21
**relitigate**
228:9
**rely**
51:18 60:22 81:6
100:20 109:24 153:17
214:21 215:22 227:6
**relying**
89:23 92:12 110:11,13
216:2
**remaining**
88:14,14 89:18 241:6
**remedy**
25:25
**remember**
56:9 103:9
**remembered**
231:1
**remotely**
168:9 231:9 234:19
235:14
**render**
13:25,25
**repackage**
195:17
**repeat**
31:14 81:2 204:4
**repeated**
138:15
**repeatedly**
46:20 234:7
**repeating**
31:17
**repetitive**
122:5
**rephrase**
88:22 146:7 162:17
**report**
8:23 9:15,19,22 10:1
19:4,5,20 20:8,14,18
20:19,20 23:21 28:21
100:22 104:20,24,25
107:12,15 108:22
109:17,20,23 132:22
142:7 149:2 150:23
155:19 169:21 175:19

175:24 188:11 191:16
199:14 202:21,24
203:5 204:17,21
205:1,8 207:9 208:2
208:18,20 209:10,23
210:1,15 211:20
215:3,23 216:3,4,10
217:2,8 226:1 227:6
**reported**
199:13 246:10
**reporter**
5:22,22,23 34:9,11
**reporting**
236:18
**reports**
10:2,11,16,23 19:1,5
19:15,19 20:11 21:20
22:24,25 23:6,7,15,24
24:1 103:2,18 105:15
109:4,6 139:11
141:17 173:17 187:4
187:5,14,15,16,24
189:17,18 191:23
195:19 199:12
**represent**
27:12 134:24 137:5
166:11 176:19
**representation**
27:14 89:9 123:3
**representative**
2:21,23 19:16
**represented**
12:2 173:13
**represents**
11:21
**request**
26:25 36:13 47:12 80:4
80:13 81:9,24 82:4
83:4 87:1,5 88:13
92:15 93:12 100:11
105:12 117:18 118:11
122:19,20 124:17
129:20 130:2 131:3,7
131:11,15,19 132:14
136:5,16 137:12
138:15 142:15 143:4

143:25 147:6 151:9
157:18 161:15 166:20
167:4,5,6 168:6 171:7
174:1 175:12 177:25
180:5 181:6,12,14
186:6,9 187:1,11
192:15 195:16 197:18
197:20 199:8,9
202:25 203:8,13,21
204:12 205:3,20
206:16 210:9 212:12
214:3,7,8 215:17
219:5 222:24 224:13
227:11,12
**requested**
48:4 132:5 149:20
188:25 190:15 191:20
195:9 199:2
**requests**
31:20 47:12 79:18
122:8 123:15 126:22
127:22 129:3,6,11,23
134:12 136:13 137:16
144:16 156:10 158:6
183:2 189:7 197:21
214:4 227:18,20
228:16 234:6
**require**
36:15 48:11 108:20
143:11,12 167:3
175:12 197:17 209:21
232:9
**required**
69:22 105:19,23
148:15 154:12 186:8
**requires**
163:13
**requiring**
58:25 171:24 183:13
**reservation**
54:7
**reserve**
22:25 47:8 178:11
184:2
**reserving**
51:24

**residence**
237:5
**resist**
27:24
**resolution**
43:1 47:22 67:14
**resolutions**
81:10
**resolve**
18:24 25:21 43:23
144:3
**resolved**
41:14
**resolving**
193:20
**resources**
213:23 222:16
**respect**
10:14 12:11 17:14 25:7
32:15 36:14 40:22
44:12 45:24 47:9
48:23 64:3,16 71:2
72:19 77:23 79:8,11
79:13 80:21 81:21,21
83:12,21 89:13 91:25
94:7 109:5 110:15
114:4 132:1 143:4
145:15 169:24,25
170:21 173:21 176:20
183:5 184:23 191:13
192:25 194:18 206:6
207:11 215:12 219:3
238:13,17 240:3,16
240:23 241:14,19
**respectfully**
111:18 140:24 183:4
**respond**
33:7 41:19,21 46:11
65:13 112:12 130:25
131:14 146:20 147:5
151:18 161:4 167:23
186:8 244:4,7
**responded**
125:21 128:14
**responding**
49:12 95:15 112:22

113:10 120:14 207:10
208:10
**response**
40:1 41:1 43:9 45:7
49:11 52:9 88:10
131:5 137:16 138:16
139:18 161:14 164:3
178:2 203:17,18
208:20 215:17
**responses**
29:22 30:5 31:11,20
40:17 41:22 50:7 51:9
54:24 56:18 57:23
58:18,22 87:13 94:25
115:9 116:11 126:17
128:11 131:25 148:6
218:25
**responsibilities**
132:1
**responsible**
135:8
**responsive**
95:22 136:12 155:14
**responsiveness**
144:15
**rest**
124:2 152:2
**restoration**
162:9
**restorations**
153:12
**restore**
146:2 161:8 162:6
166:8
**restored**
145:2 148:10 152:14
153:9 154:20
**restoring**
161:24
**result**
12:5 196:12
**resulted**
11:19
**results**
24:20 127:21
**RET**

6:2
**retain**
222:17
**retained**
211:13
**retired**
25:25 27:11
**retrospectively**
174:17
**return**
100:24 108:24 111:16
**returns**
101:2 108:3,15 110:4
110:16 111:7
**reveals**
209:11
**reverses**
200:18
**review**
28:20 165:2 231:21
240:19
**reviewed**
30:19 130:12 149:14
**revised**
128:23 129:11
**revision**
9:24
**reword**
75:11
**riddled**
113:5 185:16 186:4
**right**
11:5 13:3 15:9 16:1,7
17:22 18:14 19:23
22:25 27:6 29:18
30:15 31:7,16 38:22
39:17 40:22 42:17
50:20 51:24 52:5 53:2
53:9 55:25 57:19 58:1
61:2 64:11,24 65:1
68:23 71:9 72:3 73:17
74:5,16 75:8 78:17
81:4 83:22 85:20 90:3
92:6 93:20 95:13,25
97:9,16 98:11 99:14
99:18 105:2,7,14

106:19 107:3 109:12
110:1,5 112:15,16
114:11,13,22 115:25
116:25 118:1,23
120:6 121:15,19,20
122:5,20 123:18
125:13 127:9 128:15
128:18,20,25 129:16
130:23 131:1,4
133:18,20 137:25
138:23 147:25 161:11
161:12 163:22 169:4
169:19 170:2 171:18
171:21 173:2,5 176:8
176:11,20 178:4
180:9 181:5 183:25
184:21 189:5 190:10
194:21 196:15 198:3
201:1 202:10,11
203:7,15 206:12,19
207:6 211:14,18,23
213:1 214:11,25
217:14,17 221:20
223:3 225:17,20,22
231:11 233:21 234:2
237:18,25 238:4
241:3 244:8,9
**right-hand**
17:7
**rigorously**
199:20
**rise**
60:15
**road**
41:25 119:3 153:24
163:14 172:14 194:24
210:3
**Rockefeller**
6:15
**role**
38:3 132:2
**room**
134:18 135:2,12 138:8
138:10,13,25 139:1
139:17,22,25 140:6
140:11,12 141:8,12

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 353 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 281

141:18 142:12 144:6
144:14,22 145:13
146:2,5,11 147:20
148:10 150:23 151:25
154:21 156:17 160:16
164:23,25 165:2
166:14 187:25 188:9
188:15 209:15 216:1
217:2 219:17,23
222:11 236:13
**rooms**
236:17,20
**roughly**
9:10 68:18
**routinely**
94:10
**rule**
8:1 24:12 49:2 99:12
99:16 102:5 104:15
105:19 117:19 133:22
134:2 136:19 137:19
145:1 148:19 173:7
177:17 197:23 213:10
219:14
**ruled**
44:11 45:9 80:11,18
97:12,25 99:13
119:14 185:19
**rules**
101:19 106:4 109:13
140:17,22,23 141:3
155:23
**ruling**
8:6 13:13,16,19 14:3
14:17 39:1,25 40:2,6
45:24 49:1,4 80:21,23
81:20 82:9 91:21
93:22 95:4 96:7
106:17 107:10 109:4
110:15,20 180:24
200:18 201:16 228:24
**rulings**
7:5,6 8:12 14:7,20 38:2
38:20 42:23 127:6,8
127:13 128:6 137:18
**running**

148:22
**runs**
46:14
**RUSSELL**
3:6

---

**S**

**S**
3:13 6:6
**sake**
34:7
**salient**
142:8
**SANFORD**
3:13
**SARA**
1:18
**satisfied**
216:7
**satisfy**
33:6
**save**
235:8
**saw**
18:25 144:8 245:2
**saying**
17:13 21:18 26:25 32:8
35:6 46:1 53:3 58:15
63:19 74:10 79:5 84:8
90:12 92:7 99:5,8,10
99:22 104:17 113:20
120:22,24,25 121:3,4
121:9,11 142:25
144:5 149:11,12
161:4 166:1 169:2
172:3,16 175:10
208:1 217:8 219:16
230:25 232:10 243:15
**says**
21:12 33:9 42:6 51:6
74:6 75:25 77:8 82:9
82:10,14 83:14 84:10
87:13 88:4 93:4,7,16
96:20,22 98:17
101:12 103:22 113:10
117:5 118:7 142:3

148:21 221:18 224:23
**scale**
196:24
**scanned**
148:9
**scenario**
60:8 75:24 150:7
**schedule**
41:9 42:25 43:14,20
**scheduled**
146:16 239:21,22,24
243:13
**schedules**
41:12 108:15,24 111:8
**scheduling**
9:1 41:17 43:18,21,23
**scheme**
18:11 28:6,25 153:20
218:9 221:11
**scope**
111:12,23 132:16
136:13 145:19 224:9
**Scott**
199:3
**scoured**
154:17 224:19
**screwing**
43:14
**search**
163:7
**searched**
138:24
**SEC**
154:22
**second**
18:16 31:1 34:19 60:8
60:10 83:12 85:17
108:8 129:10 138:4
145:21 146:8 147:15
163:11 164:3 198:12
200:17 204:14 206:25
245:2
**Secondarily**
194:22
**secret**
156:22

**secretary**
233:13
**section**
144:23 145:8 217:12
**securities**
1:4,10 2:2,9,17 3:2,9
3:16 4:3,16 17:5
28:15 120:12 132:19
148:24 159:12 175:7
201:25 207:12,14
223:18
**security**
223:8
**see**
13:12 16:11 26:6 27:17
27:21 28:21 39:25
42:1 46:1 47:9,13
48:8 50:6,16 64:19
66:16 67:13 71:12
77:22 79:22 85:7
95:10,13 102:10
120:13,16 122:11,13
123:12 124:2,3
127:18 129:20 146:6
146:8 147:12 149:3
150:16 153:25 162:6
188:16 203:5 217:8
224:21 230:4 240:4
**seek**
74:18 178:12
**seeking**
33:13 35:18 46:16
107:19 181:12
**seeks**
203:22
**seen**
10:16 44:1 158:23
170:16
**segregated**
190:9 219:21
**SEIMS**
1:18
**selected**
144:5
**selection**
136:7,8

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 354 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 282

self-serving
18:20 149:5
send
17:25 23:5 112:10
162:5 163:2
sense
8:5 19:3 24:5,19 31:10
67:16 99:3 127:23
137:5 152:3 153:21
162:8 196:24
sensible
161:8
sent
15:6 44:19 45:2 73:11
144:8 179:11 191:11
235:15 244:19 245:9
245:9
separate
104:5 192:16 194:8
237:8
September
103:10
sequelae
184:1
sequitur
141:7
serve
90:24 157:13
served
8:23 9:15 10:4,6 23:7
104:3 124:15 125:4,9
125:10,18,20 128:22
144:24 192:6 213:10
service
236:18
Services
199:1
set
13:20 21:2 23:14,20
34:20 73:5 112:14
126:22 128:20,23
129:10 135:17 164:11
170:11 188:8 201:5
202:17 223:10 234:1
244:5 246:17
setoff

72:23
sets
16:3
setting
103:15
settlement
155:23
seven-hour
234:24
shadow
226:9
share
34:21
shared
154:24
shares
218:19 223:11
shed
63:11
sheet
223:25
shield
108:19
shielded
213:18
short
79:19 80:5 142:14
167:2 200:16 231:4
short-term
96:24
shortcuts
214:1
shorthand
5:22 20:17
shots
107:11
show
22:10 33:3,4 37:3 39:4
76:17 82:12,15,24
83:1 136:9 165:12
176:9 220:9,10
showed
134:4 179:17
showing
38:23 39:1,2 170:19
230:25 232:8

shown
49:14 50:9 133:6,13
134:25 191:4 225:15
shows
53:24 101:16 158:24
shut
95:4
siblings
232:23
side
11:23 13:14 14:13
27:15 36:10 58:11
76:22 114:25 140:5
143:13 148:23 241:5
sides
7:10 31:24 49:21 94:13
94:22 107:11 165:16
signature
231:17
signed
40:24 45:3 115:8,10
233:14,15,15
significance
159:22
significant
221:22
signing
41:6
similar
25:20 30:20 81:13
154:24 168:8 195:19
236:19
similarly
25:23 64:16
simple
26:25 163:7
simplify
8:11
simply
48:2 51:24 72:24
152:17 183:2 199:5
200:4 207:4 214:23
226:7
single
70:12 93:3 116:2 139:5
153:4 157:25 159:25

167:11 171:1,8,10
180:6 181:8 199:14
219:21
SIPA
1:2 4:2,16 137:23
140:25 142:16 190:7
199:2,24
sir
44:7 76:16 88:2 124:7
238:20 244:22
sit
231:21
sitting
133:10 134:24 217:4
228:14
situation
97:20 216:8
six
5:11 23:17 94:5 138:11
six-year
52:15
size
161:6
skipped
189:3
slickly
93:9
slightly
87:17 128:23 129:21
142:1 171:11
slow
234:13
smaller
24:1
smart
23:2 44:17,21
smarter
226:19
SMB
1:3,12 2:4,10,18 3:4,10
3:18 4:4,18
smoothly
238:7
so-and-so's
136:25
so-called

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 355 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 283

137:14
**software**
162:2
**sold**
151:14
**solid**
243:4
**solutions**
135:6
**solve**
14:23
**solved**
71:8,23
**solves**
60:17 65:12 67:14 72:2
**somebody**
17:22 20:2 56:12 65:10
112:8 168:17 172:21
174:13 175:9 176:2
181:24,25 182:6
195:8
**somebody's**
175:5 237:2
**somewhat**
40:14
**son**
230:20
**soon**
94:11
**sorry**
22:4 44:13 64:13
125:14 175:22 178:17
189:1 201:18 218:17
233:3
**sort**
7:17 10:11 20:17 22:22
41:13 43:7,9 50:6
80:11 86:2 93:9
102:25 104:13 144:16
173:25 182:7
**sought**
35:10 173:9 229:9
**sound**
79:14 150:6
**sounds**
27:19 40:15 92:8

**source**
103:20 109:16 138:7
138:20 146:4 157:8
**SOUTHERN**
1:1
**speak**
22:25 153:12 225:24
**speaking**
143:11
**speaks**
49:19
**specific**
10:13,14 40:13 53:21
74:15 78:8 94:15
164:9 168:19 177:19
179:5 190:25 191:8
194:6 195:5 209:2,17
212:16 215:24 225:6
227:3
**specifically**
12:17 30:20 36:14 43:3
59:14 67:1 108:25
111:9 130:16 134:16
136:5 145:6 149:18
190:5 192:5 219:18
220:8 227:25
**specificity**
123:15
**specifies**
223:5
**specimen**
19:4 23:21
**speculation**
168:10 212:13
**speculative**
213:15 219:8
**speech**
213:21
**Spell**
9:4
**spend**
31:3 58:4 139:16
**spending**
157:22
**spent**
135:5 139:1

**spit**
226:15
**spoke**
7:3 130:6 131:16
211:13
**spoken**
131:23 211:1
**square**
51:8
**squarely**
132:9 225:25
**ss**
246:4
**stage**
98:23 100:15,17 101:6
178:6,10,11 180:19
180:21 183:22 194:12
197:10
**stand**
172:21 209:7
**standard**
104:14 173:6,7
**standards**
148:20
**standing**
27:13 199:24
**stands**
16:15 18:18
**start**
7:1 21:7 25:19 122:4
124:10 126:16 204:6
221:15,25
**started**
17:13,14 150:19
221:18,19
**starting**
31:11,14 133:21
**state**
5:24 33:18,23 35:5,12
46:9 91:14 120:12
130:8 201:23 205:7
215:19 246:3,8
**stated**
14:15 216:24
**statement**
11:18 21:16 152:17

169:2 171:9 179:18
181:16 188:7,23
225:16 226:2 228:23
**statements**
11:4 18:20 20:24 21:5
21:8 22:5,5,11,13,16
22:22 130:8 173:20
180:3 181:9 184:13
185:23 188:8 190:24
192:2 194:14 195:18
206:4 223:9 226:8,16
226:22
**States**
1:1 35:6 36:4
**stating**
142:4
**status**
164:8
**statute**
85:5 141:1,3
**statutory**
153:6
**step**
24:22 158:6 190:16
225:15
**stick**
43:4
**stip**
74:10
**stipulate**
57:15 58:16 59:19,21
62:21,22 63:3,22
65:19 68:7 187:14
189:13 240:2
**stipulated**
69:1 71:25 115:21
116:6 119:20 123:20
178:24
**stipulates**
187:9 193:18
**stipulating**
63:6 83:25 84:2,16
**stipulation**
14:19 55:3,8 56:14
57:17,25 58:3,23 59:9
59:11 60:17 65:5

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 356 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 284

66:12 71:8,12,23
72:16 74:12 75:15
76:1,12 77:5,20 79:20
86:9 88:20 92:2
113:25 114:4 120:1
238:3 240:13,15
241:10 242:5
**stipulation's**
76:4
**stipulations**
234:5
**stock**
11:17 145:24 149:20
149:22 154:2,4
158:24 159:11 185:24
207:19 220:11
**stocks**
196:11 206:3 218:7
225:4
**stonewalled**
234:7
**strategy**
132:11 191:7
**streamline**
79:23 122:11,13
**Street**
6:9
**stricken**
97:7
**strict**
168:14
**strike**
232:12
**stroke**
230:11
**struck**
8:19 97:11 230:18
**struggling**
31:19
**stuck**
113:13 184:6 231:2
**studied**
95:21
**stuff**
108:2 113:4,6 145:24
**subcommittee**

198:25
**subfolder**
188:3 219:22
**subject**
10:23 18:14 91:6
140:22 145:22 202:20
203:9 215:21 216:18
217:6
**subjecting**
232:4
**submitted**
105:21 128:17
**submitting**
100:4
**subpoena**
29:24 90:24 144:25
145:2
**subpoenaed**
154:7,22 158:17
224:17,18
**subpoenaing**
94:4
**subpoenas**
29:13 213:10
**subsequent**
32:3 35:4 39:11 46:17
64:20 66:20 67:4
78:21 95:19 96:3
112:4 116:12,17,22
117:8 123:1,8
**Subsequently**
204:22
**subset**
190:18 191:15
**substance**
130:8 150:22
**substantial**
138:5 163:13
**Substantively**
1:5 4:2,15
**substituted**
129:5 201:5
**substitution**
129:22
**success**
148:2

**such-and-such**
165:7
**sudden**
216:9
**suddenly**
230:25
**sue**
35:22 36:2 37:19 153:2
193:8
**sued**
38:9,11 39:15 117:15
123:2 168:21 176:22
**sued-upon**
194:19 195:23,25
**sufficient**
33:3 37:3 82:12,15,24
82:25 83:5 183:11
**sufficiently**
91:16
**suggest**
27:17 122:9 156:23
**suggested**
55:1
**suggestions**
63:17
**suing**
38:20 136:25
**suit**
143:14 152:22
**suite**
6:10 236:19
**summary**
141:17 142:7 175:17
207:22,24 208:17
210:18
**supplement**
155:19 217:2
**supplementation**
65:6
**supplied**
104:12
**supplying**
100:8
**support**
88:7,25 91:12 149:14
164:25 191:25 206:9

206:17 207:3
**supported**
149:7
**supporting**
101:14 106:24 176:18
**supports**
15:7 150:1,23
**suppose**
24:16 60:11 75:22
105:4 117:18 118:16
133:12 156:20 164:2
175:8 179:20 190:14
**supposed**
50:16 90:20 104:21
**Supreme**
35:6 36:4 46:15 198:13
**sure**
8:20 9:6 15:11,17
16:23 24:7,24 25:5,12
27:13 29:4,15 30:18
31:15,25 34:5 38:18
43:25 54:20 58:24
73:12 79:21,24 80:9
90:1 92:23 97:17 98:3
100:16 101:25 103:5
104:22 117:20 120:19
122:14,24 124:11
130:16 134:10 137:9
137:19 170:4 175:22
181:5 187:6 211:10
217:19 229:12 235:25
245:1
**suspenders**
41:24
**Swain**
36:18
**sways**
106:16
**switched**
155:9
**sworn**
110:6
**sympathetic**
108:18
**sympathize**
15:18

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 285

**system**
179:20 226:14

**T**

**T**
4:7 246:1,1
**Tabernacle**
115:22
**tacking**
110:19
**take**
24:4 31:7 35:7,11
39:21 59:25 63:7
64:21 78:2 79:19
82:11 97:15,22 107:3
107:11 109:22 120:22
122:10,12 138:18
155:23 157:1 160:13
162:18,22 163:3
166:7,10 174:10
202:14 229:14 234:15
**taken**
17:4 37:19 53:25 57:10
62:24 78:12 96:22
121:18 136:1,21
158:10,12 165:4
231:6
**takes**
52:13 57:17 148:14
162:15 164:15 235:7
**talk**
30:12 31:10 38:24 70:4
70:14 124:4 128:6
163:23 244:19
**talked**
86:10
**talking**
11:12,14 19:18 23:8
25:13 49:20 52:20
58:21 59:14 67:24,25
68:21 72:6,12 85:18
85:19 87:10 126:9
192:5 205:23 224:10
229:24 244:1
**talks**
74:21 81:9 187:7

207:10,16 230:12
**tangentially**
15:4 30:8
**tape**
148:12 162:1
**task**
172:4,5
**tasked**
152:25
**tax**
97:20 100:24 101:1
106:18 107:13 108:15
108:24 110:14,15
111:7 112:3 116:1
**taxes**
96:23 97:2,8 100:5
103:16 104:10 111:8
111:10 112:2 117:11
175:17,18
**Taylor**
132:8
**team**
26:10 157:20 158:17
158:23 160:17 164:1
174:4
**Ted**
21:23 124:17 125:1
136:17 138:9,12
144:2,5 150:21
**Ted's**
125:12,15
**telephone**
7:3
**tell**
24:18 30:11 34:24
39:22 41:10 43:17
46:18 69:3 75:3 88:3
107:9 138:12 139:2
172:13 176:18 225:7
225:21
**telling**
12:20 46:11 116:19
159:23
**templates**
226:11
**ten**

89:19 90:10 93:25 95:5
96:9,11 109:7 172:25
**tens**
171:23
**tense**
171:13,13
**tension**
35:2
**tentative**
127:7
**term**
117:21 190:18
**terminal**
145:3 154:18 220:25
226:9
**terms**
19:8 24:11 68:4 133:1
155:24 162:17 163:6
165:23 205:9 222:20
**terribly**
166:3
**territory**
163:5
**testified**
18:3 159:2
**testify**
175:10
**testimony**
17:19 110:6 120:15,17
145:18,20 146:18
149:6,24 150:1
153:18,20 202:8
213:11
**Texas**
6:10
**text**
87:25
**thank**
22:3,13 40:15 70:8
86:23 91:8 167:7
182:11 197:19 210:4
229:1 244:24
**Thanks**
76:19
**theoretically**
189:8

**theories**
213:15
**theory**
14:3 186:8 219:8 225:2
**thin**
152:21
**thing**
7:25 8:15 15:16 40:5
45:13 46:18 98:9
99:20 100:2 102:24
105:3 138:4 139:22
150:17 170:3 179:23
235:5 236:4 238:7
**things**
7:14 24:13 31:17 42:18
43:16 69:5 100:12
116:10 141:11 163:9
207:20 212:13,14,19
228:3
**think**
7:12,14,18 8:10 14:23
19:17 21:23 23:25
24:19,25 25:6 26:2
29:8 30:7 31:13 33:24
34:4 35:13,24 36:5,8
36:9,15,17 37:24 43:6
45:9,14 46:13 47:13
47:21 50:1 55:4,14
56:19 57:21 59:2,12
60:15 62:19,25 63:1
66:2,3 68:8 69:6 70:6
70:22 71:9 72:8 73:15
73:21 74:4,11 75:6,14
77:4 78:14,24 80:6,10
80:18,25 81:12 82:8
85:6,20 86:2,16 89:9
91:18 92:1,24 94:13
95:12 97:6,11 99:7
100:1,12 104:18
109:14 110:17 111:20
112:6 113:15,23,24
115:24 117:2,12
118:2,17 119:13,14
119:15,19 121:7,13
122:17,18,23 124:14
127:18 129:14,23

08-01789-cgm   Doc 18635   Filed 04/01/19   Entered 04/01/19 17:51:52   Main Document
Pg 358 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 286

130:17 133:2,11,20
134:9,22 135:19
136:19 137:11,16,21
142:1 144:11,15,19
150:3 153:20 162:12
164:18,21 165:5
167:3,21 175:18
176:15 179:6 180:13
180:14,24 181:11
184:3 186:11 192:12
194:7 197:15,22,24
198:17 199:10 201:13
202:15 205:4,19,21
206:20,21 207:25
208:8,12 210:24
211:24 217:7 218:11
223:1 227:18 228:5
228:10 229:5 231:11
237:5
**thinking**
125:3
**thinks**
58:11
**third**
89:25 90:17 93:13,24
150:9 164:14 216:25
**third-**
95:19
**third-party**
21:2,9 29:13 51:1 60:4
62:11 90:19 94:4
112:24 113:2 158:16
160:15 184:14
**thought**
7:1 12:19,21 26:24
29:19 31:9 54:23 66:5
114:5 116:17 147:22
222:22
**thousand**
21:12 163:17
**thousands**
171:23 224:1
**three**
5:2 30:13 63:14 68:21
73:8 91:6 94:15,21
98:22 103:4 114:6,8

163:9 170:16 192:4
221:9 232:23 238:9
238:10
**throwing**
106:17
**Thursday**
244:11,14,20
**time**
19:6 22:18,21 26:13
28:16 31:3,13 33:4
36:24 37:1,4,6 43:23
58:4,6 59:17 60:13
61:21 63:21 69:14,21
72:9 81:15 93:19
105:13 108:21 120:21
139:1,16 145:25
148:14 149:8,24
150:9 151:11 153:16
154:19 157:1 162:15
164:7 171:3,9 173:24
174:7 185:6 195:20
197:18 198:24 199:4
200:4,6 204:8 207:15
217:21 218:5 222:9
231:15 234:20 235:7
235:9,14,25 245:23
**timeline**
103:1
**timely**
100:8 105:22
**times**
23:17 123:25 145:11
**TIMOTHY**
4:9,11
**TOBY**
2:6
**today**
9:14,21 10:19 14:7
19:18 24:12 29:25
52:20 68:25 70:3
79:11 103:22 104:7
128:5 133:10 134:24
155:7 168:2 170:16
183:16,18 185:22
200:9 209:16 217:4
237:14 239:18 240:3

244:5
**token**
101:24
**told**
49:22 119:10 122:4
130:10 174:13,15
188:5 197:4 219:17
**tomorrow**
163:2,9
**topic**
135:1
**total**
218:20
**touch**
134:20
**town**
165:7
**trace**
46:25 91:16
**tracing**
92:3
**track**
152:4 220:9 223:17
**traded**
218:7,20 225:4
**traders**
211:2
**trades**
28:15 139:8 156:11
159:9,12,13,15,17
160:3 211:3,4
**trading**
28:11 61:20,23 138:14
139:5,9,10 140:3
144:3,4,21 145:24
149:21,22 151:25
154:2,4 156:12
158:19,24 159:7,8
160:17 162:20 166:13
185:25 186:2,3 191:6
205:24 206:1,2,5
207:12,14,19 211:14
218:19,23 220:21,24
223:12,14 224:8,14
224:23 225:5 226:12
226:17,24 227:2

**traditional**
175:5
**Train**
4:6,7,8,9,10,11,12 5:4
30:16 31:11,25 32:16
32:25 33:2,9 36:14
40:18 43:2 45:2 49:7
52:4 53:24 54:21
59:14 63:20 64:10,14
64:15,18 66:11,25
68:22 74:23 79:14,18
80:5 89:13,15 96:14
**trans-**
20:22
**transact**
159:13
**transaction**
20:22 67:8 191:8
**transactions**
11:2,3,8 12:4,17 63:23
63:25 102:7 177:7
189:10 193:14 194:20
224:2
**transcript**
5:17 24:15 58:8 81:6
246:12
**transfer**
15:24 48:1,4 52:14
66:9 70:1 79:2 83:8
84:4,6 85:8 98:4
115:17 117:4,9
184:13 188:1 194:15
196:2 241:14,19
**transferee**
34:22 39:11 46:17
64:20,25 65:2 66:20
96:3 116:13,18 117:9
117:15 123:1,2,8
**transferees**
32:5,6 35:4 95:20 96:5
**transferor**
16:10,18 60:13 67:4,18
68:5
**transferors**
32:3
**transferred**

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 359 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 287

67:18
**transfers**
10:13 11:13 46:7,10
47:13 48:21 54:18,22
55:16 56:6,13 60:9
62:5 68:9,12 74:1,22
74:23 78:20,21 83:11
83:16,21 95:19 96:21
136:1 188:13 196:1
**translatable**
7:17
**transparency**
141:21
**transparent**
135:10 157:24
**trauma**
231:24 232:5
**treasure**
166:6
**treasurer**
175:6
**treated**
32:10
**trial**
17:9 51:17 54:10 56:23
56:24 64:2 65:22
72:23 73:1 74:19 75:9
78:18 98:17 110:9
116:7 155:11 174:20
174:21 216:22 230:25
**trials**
75:20
**tried**
7:20 35:15 53:21 58:5
154:8 226:6
**trouble**
175:15
**trove**
166:6
**true**
18:4,19 46:20,23 66:10
71:6 91:24 127:5
150:25 184:9 200:4,5
200:8 246:12
**truly**
239:14

**Trump-like**
108:3
**truncate**
236:2
**Trust**
1:14,16,19 139:13
**trustee**
1:9,16,18 2:1,8,16 3:1
3:8,15 4:1,15 6:9 8:2
8:20 13:21 16:17 17:4
17:23 20:25 26:3 28:5
28:13 30:12 35:9,13
35:18 37:25 38:5,6
49:9,17 51:6,18 53:17
57:7,9 58:9 64:21
67:3 71:16,17,20 72:3
74:6,18 75:21,22
84:16 89:23 90:18
94:2,4 100:13 102:1
106:2 108:1 126:18
132:20 135:4 136:20
137:1 138:1,17 142:6
142:18,19 144:5
152:2,18,25 159:18
159:24 164:23 165:16
165:19 167:11 168:18
170:24 174:21 183:16
193:9,13,17 198:21
199:12 203:20,22
204:12 211:20 212:9
222:19 229:8 232:7
232:15
**trustee's**
5:1,7,11 11:16 18:9
29:3 37:18 42:8 53:15
61:6,15 63:11 73:24
92:12 100:23 107:22
124:6 131:21,25
132:10 134:13 136:25
137:10 139:7,19
141:2 144:13 153:10
167:17 182:16 186:18
186:21 199:15,24
202:7,17 206:10,11
211:1 213:24 241:5
**truth**

151:17 159:24
**try**
7:10 8:17 9:15 24:18
51:18 91:3 162:7
204:23 231:10 242:9
242:25
**trying**
15:13 43:13 46:24 47:1
55:17 99:21 104:19
113:16,24 129:19
155:25 156:1 160:24
179:5 228:22 231:25
**Tuesday**
5:18 146:24 147:7
150:8
**turn**
29:3 36:13 60:19
154:15
**turned**
140:1
**turning**
96:18 129:25
**turns**
180:19
**tweaking**
94:14
**two**
7:9 24:15 27:9 28:17
33:1 37:20 40:17 44:2
51:8 56:8 59:25 63:9
87:20 89:16 91:4
103:6,11 108:24
111:16 122:22 129:3
129:6,23 136:18
144:9 147:14 171:16
181:21 186:10 194:8
221:9 231:2 234:15
**two-paragraph**
208:4
**two-step**
43:7
**two-year**
52:10,14 55:23
**type**
11:8 32:19 33:9,14
161:21 162:1 220:11

**typed**
233:13
**types**
194:8 195:19 227:20
**typical**
20:7
**typically**
101:21 108:13 143:12
230:16 236:9
**typo**
113:14 174:7

___

**U**

**U.S.C**
217:12
**U/ART**
1:14,17,19
**ultimately**
41:14 58:15 214:9
**unable**
71:5 112:23
**unannotated**
156:23
**unavailable**
243:8
**unaware**
180:7
**unbelievable**
229:22
**unchartered**
163:5
**undefined**
174:9
**underlies**
16:18
**underlying**
100:14 101:13 102:22
103:19 104:9 106:3
107:15 142:11 187:24
189:18 197:11 207:4
219:11
**understand**
12:22 25:1 32:12 37:9
38:2 41:11 47:2 49:22
52:15 72:5,11 84:1
113:23 140:7 142:15

143:14 159:22 164:10
164:17 175:2,23
181:6,11 192:18
198:2 208:2 211:11
225:2
**understanding**
12:23 21:25 23:6,21
39:9 160:25 161:6
192:19 209:1 225:23
**understands**
28:5
**understood**
125:25
**undertake**
140:19 153:11
**undertaken**
135:13
**undertaking**
183:15
**undisclosed**
36:12
**unduly**
172:4 202:16
**unfolded**
193:14
**unfolds**
155:8
**unfortunately**
220:17 221:16
**unilaterally**
102:6
**unique**
23:22 97:20 169:1
212:10
**uniquely**
69:12
**unit**
159:5
**United**
1:1 35:5 36:4
**universal**
227:17
**universally**
14:8 192:21
**universe**
22:12 135:15 152:2

168:8 180:15 188:6
**unnecessary**
14:21 41:20
**unprecedented**
134:13 166:23
**unqualified**
239:14
**unredacted**
107:14,18 108:21
109:1
**unrelated**
177:21
**unreliable**
75:9
**unreported**
96:23
**unresolved**
183:1
**unresponded**
151:22
**unsympathetic**
42:5 104:16 213:20,22
**upcoming**
204:20
**update**
164:7 222:8
**updated**
199:5,15,18
**use**
44:5 48:5 94:16 102:17
132:13 147:9,16
179:20 235:16
**useful**
95:9
**useless**
165:24
**user-friendly**
24:18
**usually**
21:9
**utility**
174:11

---
**V**
---
**v**
1:13 2:5,11,19 3:5,11

3:19 4:5,19 5:3,4,4,8
5:12,13,13,14,15,15
5:15 132:8
**vague**
174:9
**valid**
102:18 136:13
**value**
83:6,15,20 84:8,21,25
85:2,21 86:4 218:20
**vary**
232:16
**vendor**
162:6
**vendors**
163:25
**veracity**
110:7
**verbiage**
121:16
**verification**
173:22
**verified**
115:11
**verify**
21:19 111:19 115:12
115:13,15
**vernacular**
44:5
**versa**
34:15
**version**
129:11 156:24 208:4
**versions**
186:10
**versus**
217:13 220:22
**vi**
5:15
**vice**
34:15
**victims**
165:21
**video**
231:10
**view**

38:7 41:13,15 67:4
97:18 106:10 137:4
149:15 151:6,8,14
165:1,21 174:24
**viewing**
100:21
**virtually**
8:6,8 82:9 243:4
**virtue**
77:20 238:2 239:18
**volume**
135:7 142:4 156:15
159:10 218:19 220:10
220:20 223:19
**voluminous**
69:9 149:7
**volunteered**
44:16
**volunteering**
51:14

---
**W**
---
**W**
3:12
**waffle**
239:16
**wait**
39:25 47:9 120:16
191:23 243:21
**waiting**
94:5
**waive**
75:7,12 241:23
**waived**
78:7 204:16
**waiver**
75:10 143:8,23
**waiving**
74:16 84:24 85:3,13
157:12
**walks**
20:2
**wall**
7:13
**want**
15:15 16:10 23:13,20

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 289

ways
31:21 52:8 168:25
181:21 226:21
wayside
238:2
we'll
13:12 15:12 25:12
31:16 43:11 80:19
92:5,12 98:18 119:2
129:9 134:11 155:17
195:7 200:19 210:2
217:1,1,2,3 233:20
236:5
we're
7:13 9:17 12:24 14:17
18:24 19:18 21:18,20
23:8 24:9 26:21 32:14
33:13 36:22 42:18
44:2,21 46:21,24 47:1
48:19 51:12 52:20,24
53:5,9,10,14,14,21
58:4,21 59:14,18
60:16 68:21 72:11
78:1,4 81:5 83:11
84:16 85:19 89:22,24
97:7,14 100:21,22
101:3,4,5,5,9 107:2,7
107:19 113:16 114:20
119:15 121:8 124:5
129:9,14 133:2 135:8
146:13 153:24 156:15
160:24 161:13,23
163:5 164:21 165:5
167:21 171:23 172:20
184:20 192:4 193:11
194:5 201:21 218:12
219:16 220:1 222:15
224:10 229:24 244:5
245:21
we've
15:20 38:9 46:19 58:5
61:9 77:5 80:6 89:1
94:3 95:16 97:13
100:8 113:1 118:25
119:23 120:1 123:24
134:17,25 135:12

24:8 41:25 48:4 54:10
60:22 75:7,10,12 80:7
81:7 84:25 85:7 87:23
96:2 98:12 100:2
106:4 110:4 111:25
112:7 116:14 118:15
122:24 140:14 143:18
146:19 147:16 151:12
153:2,3 156:25
159:16,16 179:7
192:24 197:24 216:8
224:8 225:23 243:6
wanted
15:24 29:7 49:10 66:5
109:9 218:12 225:12
wants
13:13 25:2 30:12 35:19
39:18,22,23 70:4 89:9
108:2 138:17
warehouse
148:7,8 152:5,11 154:1
165:6
warn
23:14
warrant
214:1
warranted
210:2
wasn't
97:17 179:5 223:21
226:9
waste
19:6
way
8:21 42:25 47:6 49:1
53:2 55:13 68:2 80:21
98:1 99:16 105:4
107:10 118:24 127:21
137:11 145:14 149:12
156:13 157:11 165:10
165:18 172:6 175:14
176:15 193:20 194:1
195:1,9 197:13
208:13,14 211:11
230:12 232:1,8 234:9
236:6 239:3 246:15

138:24 139:16 142:13
144:7 145:10 147:18
152:4 155:2 158:7
167:4,8,10,15 177:5
185:21 188:9,13
213:17 215:25 219:11
220:4 224:25 231:6,8
231:9 234:4 235:3
236:11 237:3,13
website
199:16
week
42:15 164:4 235:23
242:3,16 243:2 244:4
week's
164:7 222:8
weekend
224:22
weeks
94:5 138:11 174:10
weigh
162:10
WENDY
4:12
went
12:5 16:25 46:25 66:6
102:4 154:6 189:4
204:25 232:18
weren't
102:7
WESTCHESTER
246:5
WHEREOF
246:17
wholly
108:15
widow
229:14
wife
115:2 230:11
wild
170:25
Wilenitz
1:14,15,17,19 5:8 9:13
10:18 124:12,18
125:7,9,14 126:1,2,11

127:3,25 128:4,10,20
130:2,17 133:23
168:1,24 169:2,6,10
169:17 218:15 227:25
Wilenitz's
133:17
willing
7:13 165:15 237:2
240:14 242:4
window
57:24 72:15,17 120:4
wish
242:10
wished
187:20
wishes
219:9 221:3
withdraw
58:23 59:4,20 75:1
78:23 81:13 84:11
98:10 113:4
withdrawal
10:24 11:2,15,16 12:4
12:10,25 13:2,5 15:3
15:23 23:16,23 56:10
56:10 61:11 64:17,17
64:18 65:8 66:10
69:24 84:7,7,15,22
167:16,20 169:21,25
179:18 184:18 188:22
190:6,11,17 191:10
191:14,21 192:22
194:4 195:10
withdrawals
16:4,11 35:23 37:19
49:13 50:9,15 51:5,12
52:11,25 53:12,22
54:6 57:9 59:22 62:6
62:22 64:13 74:2,15
74:25 84:9,17 96:22
113:11 115:17 116:5
117:10 120:11 169:11
171:17 177:8,22
187:10 190:19,21
191:5,11 192:1
231:19 235:7

08-01789-cgm    Doc 18635    Filed 04/01/19    Entered 04/01/19 17:51:52    Main Document
Pg 362 of 594
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 290

**withdrawing**
57:3 72:20 98:6,11
**withdrawn**
59:4 71:4 73:1,4,8,15
73:21 74:12 77:2,7,13
87:6 88:23 91:23 92:2
92:5 179:13
**withdraws**
106:12
**withheld**
122:25 123:6,10
**withhold**
45:15 70:22 77:22 79:5
**withholding**
45:14 116:15
**within-entitled**
246:11
**witness**
17:8 104:12,13 172:20
213:3 246:17
**witnesses**
212:25 236:3 243:7,9
**woefully**
169:12
**wondering**
19:2
**word**
28:10 31:22 39:21
45:20 50:18,18 82:5
82:17 86:11 113:13
228:21
**wording**
94:14
**words**
45:18 56:23 58:12
59:21 63:7 150:17
159:9 186:22,24,25
**work**
7:10,20 8:17 65:16
128:8 131:21 132:7
135:22 136:5,10,15
137:12,13,14,20
141:4 142:22 156:13
156:20 157:5,12
165:11 204:13 208:16
210:11,22 212:7

213:17 214:4 239:25
242:10,14
**work-product**
132:9
**worked**
31:21 232:13 234:4
**working**
25:14 26:7 135:6
**works**
56:14 244:23
**world**
149:15 151:5,8 154:7
**world's**
153:19
**worry**
23:11 119:4,5 229:23
**worrying**
184:3
**wouldn't**
8:10 27:4,6 37:15
77:19 94:18 131:13
136:11 176:22,23
212:4
**write**
86:8
**writing**
138:15 191:12
**written**
36:19 143:20 145:10
206:21 217:11 232:2
234:1
**wrong**
44:24 71:24 75:4
117:25 122:18 171:19
182:2
**wrote**
181:25 196:10
**www.madofftrustee....**
199:16

---
**X**
---
**X**
8:2 58:16 165:7 196:10
211:13 220:11

---
**Y**
---

**yeah**
63:18 81:2 84:23 87:20
94:1 121:6 123:24
150:13 245:11,11,18
**year**
111:13 201:22 214:20
223:10
**years**
9:25 36:18 37:20 112:4
135:6 154:13 157:22
163:21 174:10 234:5
**Yep**
25:5
**yesterday**
26:5
**yield**
177:3
**York**
1:1 5:20,20,24 6:4,4,16
6:16,21,21 159:11
237:6 246:3,8

---
**Z**
---

---
**0**
---
**08-01789**
1:3

---
**1**
---
**1**
44:25 45:6 46:2 47:10
52:13,23 54:15 55:10
55:21 63:24 75:17
80:13 86:15 96:20
113:17 114:12 123:21
131:8,15,20 134:18
135:12 137:25 139:22
139:25 140:6,11,12
141:8 142:15 143:4
143:25 151:25 167:5
187:25 209:15 210:9
216:1 217:13 241:11
**1,442,181**
53:25
**1/2**
120:21 121:16

**10**
34:7,15 52:13,23 71:13
72:7,9,11 90:24
101:25 118:7 142:1
159:10 201:3,4,20
**10-004621**
4:18
**10-0454**
5:12
**10-04541**
3:10
**10-04621**
5:3
**10-04644**
3:4 5:15
**10-04728**
3:18 5:4,15
**10-04818**
2:4 5:13
**10-04826**
2:18 5:14
**10-04905**
4:4 5:4
**10-04914**
2:10 5:13
**10-04995**
1:12 5:8
**10:00**
5:20
**100**
22:17,20,20 170:20
173:21,24
**10018**
6:4
**10022**
6:21
**10111**
6:16
**11**
37:22 119:14 120:13
143:24 201:21 204:13
205:4,20 215:18
217:12
**1100**
6:10
**12**

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 291

87:21 119:18 163:21
210:8 214:3,7
**13**
5:19 72:19 87:1,10,13
214:8
**14**
73:14 120:10
**14th**
6:15
**15**
73:20 214:18
**15th**
246:18
**16**
77:2 218:16 224:13
227:12
**17**
27:22 28:3,6 77:4
158:24 159:3,15
160:13 222:25 223:1
**18**
77:17 91:11 129:10
223:8 227:11
**1960**
214:20
**1970**
37:14
**1980**
21:13 61:1 190:24
222:4
**1980s**
22:14 138:14 139:6
159:16 160:4 205:25
**1981**
21:3 22:2
**1982**
21:3 160:17 223:10
**1988**
22:1
**1990**
158:18
**1990s**
17:14 150:19
**1992**
18:3,5,7 159:3,17
160:18,19 162:20

166:13 190:21,25
221:15,19,21 222:1,4
224:10
**1993**
37:7,11,17
**1997**
190:23,25
**1998**
49:16,19,24 60:2,3
62:13,15 71:16

---
**2**

**2**
46:6 47:8,23 98:24
99:1 167:6 175:13
177:25 181:1,3 183:4
183:5
**20**
90:25 242:1
**200,000**
137:1,3
**2000**
214:20
**2001**
181:16
**2002**
154:14 156:4 219:25
221:17
**2003**
49:23 168:4
**2004**
145:1
**2006**
37:22
**2007**
181:25
**2008**
130:19,24 131:14
143:20,24
**2009**
15:21 150:15
**2010**
150:14
**2011**
142:2
**2016**

5:19 151:10 246:18
**208**
197:14,16
**20th**
51:6 57:4,5,17 120:3
146:17,23 244:8
**21st**
244:10
**22nd**
244:10,12,14,21
**23**
93:12
**25,000**
56:9 171:16
**26**
133:22 173:7 177:17
**26's**
148:19
**27th**
76:14 120:5
**28**
95:22
**29th**
91:12

---
**3**

**3**
47:25 54:15 81:9 83:14
98:24 99:1 112:21
169:20 181:1,3,6
183:5 185:12 189:4
224:4,5 244:15,21
**3,000**
191:17
**300**
197:4,6
**31**
181:15
**33(d)**
219:14
**34th**
6:3
**35**
102:5
**350**
197:2

---
**4**

**4**
52:25 53:11 54:14
55:14 82:4,8 83:17
114:17 134:16 141:7
166:25,25 188:21
189:3,4 197:18
**4:50**
245:23
**45**
6:15 105:19 213:10
**465**
6:20
**46th**
77:13

---
**5**

**5**
27:22 28:9 34:8,14
50:3 53:1,7,13 54:14
55:11,14,22 63:24
64:4 65:8 70:7 75:18
86:15 113:17 114:12
116:13 123:21 149:23
151:10 156:12 160:13
181:1,4 185:12,13
186:10 187:12 189:4
241:11
**548**
217:12
**548(c)**
84:24

---
**6**

**6**
70:9 78:25 79:8 130:1
197:20 198:1 199:9
200:24 201:14
**60**
125:20
**620**
6:3
**64,000**
174:14,19
**680**
5:19

**7**

**7**
 70:21 71:3
**70**
 120:20 121:16
**705**
 19:1
**77002-6111**
 6:10
**78fff-2(c)(3)**
 199:25 204:5

**8**

**8**
 113:8
**80s**
 60:6,8 230:11 240:8
**81**
 190:24
**811**
 6:9
**8th**
 15:6

**9**

**9**
 83:5 118:5,7 198:1
  199:8 200:25 201:14
**90s**
 148:25
**91**
 89:14
**92**
 7:21 8:3 121:22 137:5
  137:5 174:23 175:13
  177:25 180:16 182:10
  183:17 185:5 196:23
  205:16 207:1 213:23
  228:15 244:1

# BakerHostetler

Baker & Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Edward J. Jacobs
direct dial: 212.589.4674
ejacobs@bakerlaw.com

December 15, 2016

**VIA ELECTRONIC MAIL**

Honorable Frank Maas
c/o JAMS, Inc.
620 Eighth Avenue, 34th Floor
New York, New York 10018

*Re:*    *In re BLMIS (08-01789)* – Motion to Compel filed by Chaitman LLP in *Picard v. Wilenitz*, Adv. Pro. No. 10-04995

Dear Judge Maas:

    We are counsel to the Trustee in the above-referenced adversary proceeding and submit this letter (i) to provide an update on, and further context to, the identification of pre-2002 trading records per your Honor's direction at the December 13, 2016 arbitration; and (ii) in response to defense counsel's December 14, 2016 e-mail attaching the allocution of Frank DiPascali.

**<u>Pre-2002 Trading Records</u>**

    At the arbitration, your Honor requested that the Trustee provide an update on his ongoing efforts to identify any records reflecting real trading activities at BLMIS prior to 2002. As your Honor is aware, the Trustee has already made available in E-Data Room 1 records obtained from the Depository Trust and Clearing Corporation ("DTCC") reflecting BLMIS trading activities through its "House 5" operations between 2002 and 2008.[1]  In addition, we have also separately produced to Ms. Chaitman raw data files that were available from BLMIS's single DTCC account through its DTCC terminal in House 5 at the time of BLMIS's collapse. Records show that BLMIS maintained this single DTCC account from at least the 1970s.

    We write to inform your Honor that we have searched for and found additional documents that may be relevant.  We will be producing to Defendants an additional 95 records

---

[1] Inside BLMIS, the market making and proprietary trading businesses were collectively referred to as "House 5," while the investment advisory business was referred to as "House 17."

*Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC*

December 15, 2016
Page 2

related to the DTCC and/or the National Securities Clearing Corporation ("NSCC"), an affiliate of the DTCC, that we believe may reflect trading activity at BLMIS for dates prior to 2002. These documents will be produced to defense counsel by the end of this week. We will further include in that production an additional 18,306 documents that hit on the search terms "Depository Trust," or "National Securities," which we ran across the more than 30 million available BLMIS records. Two of the 95 NSCC trading records (Bates Nos. MF00715276 and MF0071586) and 2,264 of the 18,306 additional documents are already in E-Data Room 1 (the NSCC records are in the DTC sub-folder), and the Trustee will promptly upload the balance so that all authorized litigants can access and review them. The Trustee's efforts to identify additional records related to trading activities at BLMIS prior to 2002 are ongoing, and to the extent such documents are identified, they will be promptly produced to the defendants and uploaded to E-Data Room 1.

In addition, since the June 15, 2016 deposition of Mr. Madoff, where he made self-serving statements that the BLMIS fraud did not begin until 1992, the Trustee sought to identify additional media most likely to contain BLMIS trading records from these earlier time periods. Prior to the Court's authorization of a second deposition of Madoff focusing on the start date of the fraud, the Trustee objected to the burdens associated with further efforts to identify and restore such documents pursuant to the proportionality considerations of Federal Rule of Civil Procedure 26. Notwithstanding those objections, the Trustee has engaged a vendor to process an additional 167 reels of microfilm that may contain additional BLMIS trading records from 2002 and earlier. Our vendor is processing these reels on a rolling basis, and we will promptly produce to defense counsel and add to E-Data Room 1 any additional BLMIS trading records from 2002 and earlier and/or other documents otherwise responsive to the above search terms as we receive them. To date, 24 of these 167 reels have been processed, resulting in an additional 56,000 documents, but the Trustee has not identified any additional responsive documents utilizing the search terms described above. We anticipate that the processing of the remaining reels will be completed within three to six weeks.

As your Honor is aware, a second deposition of Bernard L. Madoff is scheduled to take place on December 20, 2016. In order to maximize efficiencies and avoid additional depositions, the Trustee is amenable to postponing the deposition until any additional BLMIS trading records from 2002 and earlier that are located on the unprocessed microfilm reels are processed, produced to defense counsel, and added to E-Data Room 1. We believe that this will serve the interests of all parties involved and will minimize the administrative burdens of scheduling multiple depositions with the Department of Corrections. However, if defense counsel prefers to proceed with the Madoff deposition as scheduled, the Trustee will not object.

Finally, in response to your Honor's inquiry into whether the Trustee possesses an inventory of BLMIS records, the Trustee will produce: (1) a searchable index of hard-copy BLMIS documents ("Hard-Copy Index"); and (2) an index of electronic media obtained from BLMIS ("Media Index"). The Hard-Copy Index is a summary of the hard-copy documents contained in the more than 13,000 boxes of documents that the Trustee inherited from the Lipstick Building and BLMIS' off-site storage locations.

December 15, 2016
Page 3

Each of the 13,000 boxes of documents reflected in the index were bar coded, and more than 4 million documents were scanned and loaded into the Trustee's review platform.  The Hard-Copy Index reflects which boxes were scanned, and if a box was not scanned, it was nevertheless preserved at a warehouse in Queens, New York where BLMIS rented space for several years before its collapse.  Given the extraordinary volume and associated expense, it is not possible to scan each and every piece of paper obtained from BLMIS.

These same documents have also been used by the various government agencies that investigated BLMIS.  Efforts were made to ensure that, if the government required originals of certain documents, scans of those documents were first made for the Trustee.  At several points over the past several years, including as recently as July 2015, the Federal Bureau of Investigation has returned original documents to the Trustee, and the Trustee has updated the Hard-Copy Index when necessary.  Though the FBI and the U.S. Attorneys' Office continue to retain certain hard-copy original documents, the Hard-Copy Index is believed to reflect those documents as well.

The Media Index reflects all electronic evidence collected from the Lipstick Building and BLMIS's off-site storage locations.  The Trustee identified and restored the active data contained on servers, desktops, laptops, phones, and other media and loaded that data into the Trustee's review database.  However, as with the hard-copy documents, it is neither possible nor necessary to restore *all* data from the electronic media, given the associated expenses and the redundancies in the data that has already been processed.

**Defense Counsel's E-Mail Regarding Mr. DiPascali's Plea Allocution**

At the arbitration, your Honor requested a copy of Mr. DiPascali's plea allocution.  On December 14, 2016, Ms. Chaitman sent your Honor an email attaching a transcript of Frank DiPascali's allocution in purported support for her argument that the Ponzi scheme did not begin until 1992.  However, Ms. Chaitman's characterization of Mr. DiPascali's testimony is inaccurate.  The testimony is clear that Mr. DiPascali was not offering the start date of the fraud as a factual matter, but instead was recalling when he personally became aware that it was occurring.  Needless to say, Mr. DiPascali's awareness of the fraud at a particular time does not mean that the fraud did not occur earlier.

Indeed, this is evident from the face of Ms. Chaitman's email and the portions of the allocution she emphasizes.  For example, on page 44, Mr. DiPascali testified that he "helped" to carry out the fraud from the early 1990s through December of 2008, which is hardly the equivalent of asserting that the fraud itself began in the 1990s.  Likewise, on page 46, Mr. DiPascali stated that he "knew" that the trading was fake beginning in the 1990s, but again, does not address when the fraud started.  Lastly, in specifically identifying "the late 80s or early 90s," Mr. DiPascali responded to a question from the Court concerning when Mr. DiPascali "realize[d]" that the purported trades were fraudulent, not when BLMIS first became fraudulent.  Even the fact that Mr. DiPascali states that he possibly became aware of the fraud in the late

3

TA364

December 15, 2016
Page 4

1980s is inconsistent with any assertion that the fraud did not begin until 1992. In sum, a proper reading of Mr. DiPascali's allocution reveals that he did not testify as to the start date of the fraud, but only as to when he became aware of the fraud.

Other plea allocutions by BLMIS employees provide much clearer evidence that the fraud began long before Mr. DiPascali became aware of it. For example, David Kugel, in his plea allocution, testified that he backdated trades at BLMIS beginning in the early 1970s. Specifically, Mr. Kugel testified:

> As to Counts One, Three, Four and Five, I provided historical trade information to other BLMIS employees, which was used to create false, profitable trades in the Investment Advisory clients' accounts at BLMIS. Specifically, beginning the early '70s, until the collapse of BLMIS in December 2008, I helped create fake, backdated trades.
>
> I provided historical trade information—sorry—first to Annette Bongiorno, and later to Joanne Crupi, and others which enabled them to create fake trades that, when included on the account statements and trade confirmations of Investment Advisory clients, gave the appearance of profitable trading when in fact no trading had actually occurred. I helped Bongiorno, Crupi and others create these fake, backdated trades based on historical stock prices and were executed only on paper.

(Kugel Plea Allocution, Nov. 21, 2011, 32:1-14.) (emphasis added) Mr. Kugel's plea allocution provides unambiguous evidence that the fraud began, at the latest, in the early 1970s.

We are available to discuss these issues with you further at your convenience.

Respectfully submitted,

/s/ Edward J. Jacobs

Edward J. Jacobs
Partner

cc:  Helen Davis Chaitman, Esq. (Chaitman LLP) (via Electronic Mail)

4

Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x
SECURITIES INVESTOR PROTECTION :
CORPORATION,                              Adv. Pro. No.
                              :  08-01789 (SMB)
          Plaintiff-Applicant,
                              :  SIPA LIQUIDATION
     -against-
                              :  (Substantively
                                 Consolidated)
BERNARD L. MADOFF INVESTMENT  :
SECURITIES, LLC,
                              :
          Defendant.
------------------------------x
In Re:                        :

BERNARD L. MADOFF,            :

          Debtor.            :
------------------------------x
IRVING H. PICARD, Trustee     :
for the Liquidation of                   Adv. Pro. No.
Bernard L. Madoff Investment  :  10-04995 (SMB)
Securities, LLC,
                              :

          Plaintiff,          :

     -against-                :

TRUST U/ART FOURTH O/W/O      :
ISRAEL WILENITZ, et al.,      :

          Defendants.         :
------------------------------x

          TRANSCRIPT of telephone conference as
taken by and before MONIQUE VOUTHOURIS, Certified
Court Reporter, RPR, CRR and Notary Public of the
States of New York and New Jersey, on Thursday,
January 5, 2017, commencing at 11:00 a.m.

Picard v Wilenitz                    Telephone Conference 1/5/2017

```
                                                     Page 2
  1    B E F O R E :

  2
           HON. FRANK MAAS (RET.), Arbitrator
  3        620 Eighth Avenue
           34th Floor
  4        New York, New York  10018
           fmaas@jamsadr.com
  5

  6
       A P P E A R A N C E S :
  7

  8        BAKER HOSTETLER LLP
           811 Main Street
  9        Suite 1100
           Houston, Texas  77002-6111
 10        BY:  DEAN D. HUNT, ESQ.
                dhunt@bakerlaw.com
 11
                MARIE L. CARLISLE, ESQ.
 12             mcarlisle@bakerlaw.com

 13                -and-

 14        BAKER HOSTETLER LLP
           45 Rockefeller Plaza
 15        14th Floor
           New York, New York  10111-0100
 16        BY:  EDWARD J. JACOBS, ESQ.
                ejacobs@bakerlaw.com
 17        For Irving Picard, Trustee

 18

 19        CHAITMAN LLP
           465 Park Avenue
 20        New York, New York  10022
           BY:  HELEN DAVIS CHAIRMAN, ESQ.
 21             hchaitman@chaitmanllp.com

 22             GREGORY M. DEXTER, ESQ.
                gdexter@chaitmanllp.com
 23        For a number of defendants

 24

 25
```

Picard v Wilenitz                    Telephone Conference 1/5/2017

```
                                                          Page 3
  1                    ARBITRATOR MAAS:  This is Judge

  2       Maas.

  3                    MS. CHAITMAN:  Hi, Judge, how are

  4       you?

  5                    ARBITRATOR MAAS:  Very well.

  6       Happy New Year.

  7                    MS. CHAITMAN:  You too.  You too.

  8                    MR. HUNT:  Good morning, Your

  9       Honor.  Dean Hunt, Marie Carlisle and Ted Jacobs

 10       are on for the Trustee, and our court reporter

 11       is also on the line.

 12                    ARBITRATOR MAAS:  Somebody else

 13       just joined us or is that the whole crew?

 14                    MR. HUNT:  That's a new person.

 15                    ARBITRATOR MAAS:  Is there

 16       somebody other than the court reporter,

 17       Ms. Chaitman, and Mr. Hunt, Mr. Jacobs and

 18       Ms. Carlisle on the phone?

 19                    MS. CHAITMAN:  Greg Dexter from my

 20       office is going to be joining us.  I don't hear

 21       him yet.

 22                    ARBITRATOR MAAS:  Okay.  Do you

 23       want us to wait or --

 24                    MS. CHAITMAN:  No, no, we don't

 25       need to wait.
```

Picard v Wilenitz                    Telephone Conference 1/5/2017

```
                                              Page 4

 1                Judge, I don't know how you want

 2    to do this, but I have a couple of points I

 3    would like to make about the orders that were --

 4    that were filed.

 5                (Mr. Dexter joins the telephone

 6    conference.)

 7                ARBITRATOR MAAS:  Hi, Mr. Dexter.

 8                MS. CHAITMAN:  Greg, are you on?

 9                MR. DEXTER:  I'm on, Helen.  Good

10    morning.

11                ARBITRATOR MAAS:  Good morning.

12    Is there anybody else who has joined?  Okay.

13                Before you do that, let me just

14    make a couple of points, and I would imagine

15    that the orders will be the focus of some

16    attention this morning.  I sent them out in

17    non-PDF form because I wanted to get them out to

18    you and I was having some trouble dealing with

19    the filing mechanism, but I think I've now

20    straightened that out such that I should be able

21    to get orders once they are drafted into PDF

22    form and onto the Bankruptcy Court ECF docket in

23    fairly short order.

24                Also, I know that the Trustee

25    drafted a proposed order with respect to some of
```

Picard v Wilenitz                          Telephone Conference 1/5/2017

Page 5

1   the things we discussed at the December 13th

2   conference, probably in an effort to goose me

3   along, possibly because judging from the length

4   of some of the orders Judge Bernstein signed, I

5   assume that the Trustee has routinely drafted

6   orders.

7            It was always my practice on the

8   bench to draft my own orders.  So while I'm

9   certainly open to having suggestions as to

10  language, and I'm sure we'll discuss that today,

11  I prefer to draft my own orders.

12           In drafting the order that relates

13  to the three defendants, Train Klan, of the

14  group DiGiulian and Benjamin, and particularly

15  with regard to the stipulation, and, frankly,

16  although Ms. Chaitman may disagree, erred on the

17  side of favoring the defendants such that if

18  something was not explicitly agreed to on the

19  record at the conference, I didn't make the

20  assumption that stipulations that had been

21  arrived at necessarily applied.

22           So that the net effect of that was

23  that only Train Klan was included in my order as

24  an entity or a group of people who had

25  stipulated to certain facts, although I know

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 6

1    Ms. Chaitman disagrees, but at least some of

2    those facts were stipulated.

3             So, with those preliminary

4    findings, let me turn to you, Ms. Chaitman.

5             MS. CHAITMAN:  Okay.  So I

6    didn't -- the good news is on the Perlman order,

7    which simply said that by January 3rd I would

8    advise the Trustee which of the defendants will

9    stipulate to the accuracy and completeness of

10   columns 1 through 5, I didn't have any comments

11   on that.

12            I did, in fact, you know, I

13   responded to that, you know, in the context of

14   writing to you, so I laid out exactly what each

15   defendant is able to stipulate to and what each

16   defendant is unable to stipulate to.

17            With respect to the order which

18   begins with the Train Klan caption, if we -- if

19   we look at paragraph 2 on the general ruling,

20   you say that, in this paragraph 2, the second

21   paragraph, in connection with any motion

22   throughout this trial the defendant, B, concedes

23   that the funds reflected in column 5 -- oh,

24   concedes that the funds reflected in column 5 of

25   Exhibit B were withdrawn from the defendants'

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 7

```
 1   BLMIS account and transferred to another account

 2   held by or for the defendants' benefit.  Nobody

 3   stipulated to that.

 4           That is -- what Exhibit B is is a

 5   schedule of the Trustee's view of deposits and

 6   withdrawals solely with respect to the account

 7   holder.  It was not -- it was not a stipulation

 8   as to any subsequent transfers and --

 9           ARBITRATOR MAAS:  I don't -- let

10   me interrupt you for a second because I don't

11   read the language that I used that way.  It did

12   come from the Trustee, and I understand there is

13   a fair amount of caution on both sides.  But I

14   looked at the transcript again this morning,

15   bear with me a second, and I'm looking at page

16   84 of the transcript, and it's not the language

17   that I used in the order.  Let me just see here.

18           I don't have the right -- yeah,

19   here it is.  It's we're talking I believe about

20   Train Klan, and Mr. Hunt said, "The initial

21   transfer is the withdrawal.  It can be the

22   withdrawals.  So they're saying that they gave

23   value for the withdrawals."

24           I'm skipping a little language.

25           Ms. Chaitman, "The document
```

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 8

1  related to the withdrawal is the check from

2  Madoff, which the Trustee has.  We're

3  stipulating that we got those withdrawals."

4              That's, in effect, all I was

5  trying to say, which is that the account holder

6  received the funds --

7              MS. CHAITMAN:  Well, but it was --

8              ARBITRATOR MAAS:  -- and perhaps

9  correctly, on the transfer to another account --

10             MS. CHAITMAN:  Right.  See, I

11  never said that, and I couldn't possibly

12  stipulate to that.  I mean, why don't we just

13  say and received by the --

14             ARBITRATOR MAAS:  By the

15  defendants?

16             MS. CHAITMAN:  -- by the BLMIS

17  account holder?

18             ARBITRATOR MAAS:  I don't have a

19  problem with that.

20             Mr. Hunt, or anyone else on the

21  other side?

22             MR. HUNT:  That's fine.

23             ARBITRATOR MAAS:  Okay.  I guess

24  what I will do is issue an amended or corrected

25  order.

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 9

1              MS. CHAITMAN:  Yeah, let's go

2    through the rest of the issues and maybe we can

3    clean them up.

4              ARBITRATOR MAAS:  Sure.

5              MS. CHAITMAN:  In paragraph 6 on

6    page 4, it says:  Within ten days after the

7    entry of this order, the defendants shall

8    produce any documents within their possession

9    that relate to any remaining affirmative

10   defenses that the defendants assert.  Any such

11   documents that the defendants have failed to

12   produce within that time frame may not be used

13   by the defendants for any purpose in connection

14   with any motion practice, trial or hearing --

15   hearing or trial, rather.

16             ARBITRATOR MAAS:  Right.

17             MS. CHAITMAN:  I'm concerned about

18   that language for this reason.  As you may

19   recall, Judge Maas, the -- Judge Bernstein has

20   allowed us to depose Mr. Madoff pursuant to a

21   fairly complicated procedure.  And after much

22   debate, what he held was that fact discovery

23   would remain open for purposes of the Madoff

24   deposition and possibly with respect to any

25   ensuing discovery.  In other words, if Madoff --

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 10

1    if Madoff's testimony leads for me to depose

2    someone else, then we would have that discovery.

3             So there is a whole body of third

4    party discovery, to say nothing of the discovery

5    that the Trustee has only now begun to produce

6    in response to your order.

7             ARBITRATOR MAAS:  I think that is

8    dealt with by paragraph 7.  All I was trying to

9    say in 6, and I thought we had discussed this

10   distinction at the hearing, is if you have it

11   sitting in a file cabinet today, and it relates

12   to an un-withdrawn affirmative defense, you have

13   to produce it.

14            If it's subsequently acquired,

15   whether it's from the Trustee or from DTC or

16   wherever, it falls within paragraph 7.

17            MS. CHAITMAN:  Within paragraph 6.

18   If we could just clarify that.  I'm just

19   concerned, Judge, because if you read this, I

20   just don't want to be in a position where three

21   years from now I'm trying to reconstruct what

22   happened.  You know --

23            ARBITRATOR MAAS:  Well, I'm still

24   missing what the problem is.  If Mr. Madoff is

25   deposed let's say a third time, and he says, oh,

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 11

1    yes, I forgot to tell you in addition to the

2    documents in the Lipstick Building, I had an

3    office in Switzerland where I kept documents,

4    and then somehow those documents are retrieved,

5    paragraph 6 doesn't preclude you from using

6    those documents.

7              Paragraph 7 says once you get

8    them, you have to make them available to the

9    other side within ten days.

10             So I just don't see the issue,

11   particularly as clarified by the discussion

12   we're having right now.

13             MS. CHAITMAN:  Here is my concern,

14   and maybe I'm being overly cautious, at the

15   present time we've produced the documents that

16   we believe relate to the affirmative defenses.

17             However, there is a whole body of

18   information that we're just now beginning to

19   explore, which is the documents relating to

20   transactions which occurred prior to 1992.

21             Now, it may be that there is a

22   document that we have which will relate to an

23   issue I have not yet identified.  So I wouldn't

24   have produced it because I didn't realize it was

25   relevant, but it may become relevant.

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 12

1              ARBITRATOR MAAS:  Am I going to

2     hear from Trustee's counsel on this?

3              MR. HUNT:  I disagree with

4     everything she said.  I think the order is clear

5     on its face and doesn't need to be changed.

6              MR. JACOBS:  And also I would add

7     to that, Your Honor -- this is Edward Jacobs --

8     in addition to that, any type of -- I can't

9     conceptualize any type of document that may fall

10    under that category that Ms. Chaitman just

11    enumerated that wouldn't already be requested

12    and relevant to the case pursuant to our

13    discovery requests.

14              So if any such documents relating

15    to the defendants' BLMIS activities or

16    investments are in their possession, they need

17    to be produced.

18              MR. HUNT:  I agree with that.  I

19    agree with that.

20              ARBITRATOR MAAS:  Well, I

21    recognize the theoretical possibility.

22              I would imagine for your 92

23    clients, Ms. Chaitman, that each of them has a

24    relatively small group of documents that they

25    have relating to Madoff.  At best, they have the

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 13

 1    monthly statements, maybe some deposit and

 2    withdrawal records, but we're not talking about

 3    millions of documents per individual or even

 4    probably thousands of documents per individual.

 5              So I'm going to adhere to

 6    paragraphs 6 or 7, notwithstanding which if you

 7    end up in the sort of circumstance that you just

 8    described, you can always make an application to

 9    Judge Bernstein, or if I'm still involved at

10    that stage, to me.  But I think we're dealing

11    with something totally theoretical.

12              MS. CHAITMAN:  Okay.  If you can

13    move now to page 5, paragraph 2 with respect to

14    DiGiulian --

15              MR. HUNT:  Can I just make one

16    comment before we get to page 5 on page 4, Your

17    Honor?

18              ARBITRATOR MAAS:  Sure.

19              MR. HUNT:  The only comment that

20    we have on the order is in paragraph B5, the

21    cross-reference to paragraph A1 I believe should

22    be A2.

23              ARBITRATOR MAAS:  Hang on.  I

24    think it's just a typo.  You're absolutely

25    correct.

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 14

1              MR. HUNT:  And with respect to

2       that paragraph, we agreed that Train Klan agreed

3       to the stipulation set forth in paragraph A2,

4       but in Ms. Chaitman's December 29th letter she

5       indicated that they could not agree to

6       paragraphs 1 through 3 because the Trustee had

7       manipulated facts concerning the date of the

8       deposits and withdrawals, and I just want to

9       confirm that, in fact, Train Klan stands by its

10      stipulation with respect to columns 1 through 5.

11             MS. CHAITMAN:  Well, again, this

12      only goes to the dates, because we have evidence

13      where the Trustee has interpreted dates in a way

14      which is, in my opinion, inconsistent with the

15      law, so that's a narrow exception to the general

16      stipulation.  And, you know, the facts are the

17      facts.  I'm not going to waive a defense --

18             MR. HUNT:  I guess the question

19      for the Court or for Your Honor is I just want

20      to confirm that with respect to Train Klan the

21      stipulation is accurately reflected in paragraph

22      A2.

23             ARBITRATOR MAAS:  Well, in effect,

24      as to Train Klan, as opposed to the other two

25      defendants we were talking about as part of that

Picard v Wilenitz                    Telephone Conference 1/5/2017

```
                                                    Page 15

 1    package motion, I've rejected what Ms. Chaitman

 2    was asserting, so I'm holding Train Klan to the

 3    stipulation in paragraph A2, which my reading of

 4    the transcript is that Ms. Chaitman agreed to

 5    that.  I'm not letting her back out of it.

 6              As to the other two defendants, I

 7    thought the transcript was more equivocal.  So,

 8    as you saw in the order, I haven't held them to

 9    that.

10              MR. HUNT:  Thank you, Your Honor,

11    for that clarification.

12              MS. CHAITMAN:  Okay, Judge --

13              ARBITRATOR MAAS:  We're on page 5,

14    Ms. Chaitman?

15              MS. CHAITMAN:  Yes, page 5,

16    paragraph C1, what you had said at the hearing

17    that we had was that the defendants would

18    produce the first two pages of the tax return

19    and then the schedule that related to the Madoff

20    income.

21              The order, however, is not so

22    limited.  In other words, the way I read the

23    order is if they invested, you know, through

24    Bear Stearns or Goldman Sachs, and they had

25    Schedules B and D relating, or D and E relating
```

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 16

1    to any of those, they would have to produce

2    those as well, and I don't know whether that was

3    your intent.

4                    If it was, I would certainly --

5                    ARBITRATOR MAAS:  I'm limiting the

6    amount of material that needs to be produced.

7    There is a confidentiality order, and I think

8    that the Trustee and the Trustee's experts are

9    entitled to enough documentation so they can

10   make heads and tails out of what it is that is

11   being alleged with respect to capital gains

12   taxes.

13                   MS. CHAITMAN:  So you're saying --

14   you're including in this capital gains from

15   other investments?

16                   ARBITRATOR MAAS:  Well, I'm not

17   allowing, as we discussed at the hearing,

18   redactions on relevance grounds, so --

19                   MS. CHAITMAN:  Or on privacy, or

20   on privacy.  I mean --

21                   ARBITRATOR MAAS:  Yeah.

22                   MS. CHAITMAN:  -- you're basically

23   giving -- you're basically giving them the

24   ability, then, to determine what assets they

25   could levy on, that's -- that's my objection.

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 17

```
 1                ARBITRATOR MAAS:  No, I don't
 2    think that's the case at all, because there is
 3    lots of assets that won't be reflected, A.  B,
 4    the capital gains that are going to be shown,
 5    first of all, relate to a period many years
 6    before the Trustee will ever get to the stage of
 7    trying to go after assets.
 8                A lot of these schedules will show
 9    purported sales.  They are not going to show
10    purchases.  So they are not going to give the
11    Trustee a picture, certainly not an accurate
12    picture, of what assets a particular individual
13    or account holder has.
14                Also, you know, given the fact
15    that the sixteenth affirmative defense is in
16    there, that that's what generates their
17    entitlement to have these records.  But for the
18    sixteenth affirmative defense, I would agree
19    with you it's none of the Trustee's business.
20    But having raised that defense, I don't think
21    you can then draw too fine a line as to what
22    they get.
23                MS. CHAITMAN:  Okay.  If we can
24    now move to the third order, which involves the
25    Wilenitz issues --
```

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 18

1              ARBITRATOR MAAS:  Sure.  Hang on
2    just a second.  Let me get to that one.  Yes.
3              MS. CHAITMAN:  I have a whole
4    bunch of questions on this one.
5              On paragraph 4 you wrote by
6    December 20th the Trustee shall indicate how
7    long it will take to make a good faith
8    determination as to whether there are any
9    trading records for the years prior to 1992.
10             Mr. Jacobs sent you a letter --
11             ARBITRATOR MAAS:  Right.
12             MS. CHAITMAN:  -- and he did
13   produce some records, but it's not -- there
14   hasn't been a representation that it's complete
15   by any means.  So --
16             ARBITRATOR MAAS:  And as I recall,
17   they were restoring numerous microphone records
18   in an effort to determine whether there is
19   anything else, and perhaps were doing other
20   things, and also were giving you an index as to
21   what files exist.
22             I can't very well require them to
23   go through every box that existed in the
24   storeroom.  So people have to make educated
25   guesses.

Picard v Wilenitz                    Telephone Conference 1/5/2017

                                                          Page 19

 1                  I don't disagree with you that
 2      there was some waffling about how long it will
 3      take.  But under the circumstances I think the
 4      Trustee has probably done as best as he could do
 5      at this point.
 6                  As we move forward and as time
 7      goes on, if you're not getting materials and you
 8      think there are materials, or you think their
 9      search has not been sufficiently robust, we can
10      discuss that.
11                  MS. CHAITMAN:  Well, the -- I
12      think what I would want is a representation that
13      what has been made available to us is everything
14      that was made available to Dubinsky, their
15      expert upon which they are relying.  And I
16      anticipate that Trustee's counsel will say that
17      that should be reserved for expert discovery,
18      but it can't be because these are core documents
19      that we need and we may need to take third party
20      discovery with respect to this.
21                  So, you know, Dubinsky had access
22      to a massive amount of trading records from the
23      1970s and 1980s, and what Mr. Jacobs has
24      produced to date is only a very, very small
25      percentage of that.

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 20

     1                 ARBITRATOR MAAS:  That's a fair
     2    question.
     3                 Mr. Jacobs?
     4                 MR. JACOBS:  Hi, Judge Maas.  I
     5    can most certainly address that.  There isn't
     6    anything that Mr. -- in terms of Ms. Chaitman's
     7    specific inquiry regarding trading records,
     8    there aren't any records that Mr. Dubinsky had
     9    access to at any point in time that Ms. Chaitman
    10    also doesn't have access to both historically
    11    and contemporaneously with anything new that
    12    we're finding.
    13                 So what we've done, as I explained
    14    in my letter from December, is those 93
    15    additional reports that we found and are 95
    16    total from the '80s, two already were in the
    17    data room, have been now put in the data room,
    18    and they also have been provided simultaneously
    19    to Mr. Dubinsky at the same time Ms. Chaitman
    20    got them.
    21                 With respect to any additional
    22    types of reports from those earlier time periods
    23    that we can find from our microfilm restoration
    24    project, those will also, as quickly as humanly
    25    possible, be put in the data room in the folder

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 21

1    that I specified in the letter.  Ms. Chaitman

2    has access to that.  She will have access to

3    those documents at the same time Mr. Dubinsky or

4    anyone else has access to them.  There is

5    nothing -- sorry --

6              ARBITRATOR MAAS:  Is there a

7    procedure by which Ms. Chaitman will know that

8    documents have been added?

9              MR. JACOBS:  Yes.  But as I

10   explained in my December letter, we intend to

11   both add those to the data room and produce them

12   on either a hard drive or disk simultaneously to

13   Ms. Chaitman.  So she'll get a production letter

14   notifying her with the media she can load into

15   her own review platform, and also an update that

16   those documents have also been added to the data

17   room, so she can access them that way as well.

18              We are working on the restoration

19   of that microfilm as fast as humanly possible.

20   I believe I said in my December letter we

21   anticipated about four to six additional weeks.

22   I think we're still looking at about that time

23   frame.

24              The reason why, unfortunately, I

25   cannot commit to a date certain is that, as you

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 22

1    can imagine, there are -- there is a whole host

2    of technological issues in connection with this

3    restoration over which I have absolutely no

4    control.

5              So I can let you know that we will

6    be sending an additional update letter to Your

7    Honor and to Ms. Chaitman hopefully within the

8    next seven business days or so with I think what

9    will be an additional production of several

10   additional reports we have since had restored

11   from microfilm since the date of my last letter.

12             The reason why I'm not able to

13   provide those today is because there are all

14   kinds of technological issues with the data

15   that's being restored from the microfilm.  We

16   get the raw data restored, but then it has to

17   be -- we have to review it and we have to

18   unitize it.  We have to make determinations as

19   to where documents start and where they end.  We

20   have to make sure that it's complete.  We have

21   to quality control check it.  We have to make

22   sure that dates or pages aren't skipped.  It's a

23   tedious, time-intensive project that's done by

24   our vendor for the most part, subject to our

25   quality control, and, unfortunately, it just

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 23

1    takes time.

2              So we will continue to work

3    through that restoration as quickly as humanly

4    possible.  And as soon as we are able to

5    conclusively identify anything that Ms. Chaitman

6    has indicated she's interested in, we will

7    produce it to her and add it to the data room.

8              And for the sake of all

9    transparency, so there is no doubt, we will

10   continue to provide Your Honor with -- we will

11   continue to copy Your Honor on those update

12   letters until we're done.

13             ARBITRATOR MAAS:  The only thing

14   that you said that I didn't understand is when

15   you said the material has to be unitized, I'm

16   not sure what you mean.

17             MR. JACOBS:  Yeah.  Sorry.

18   That's -- so, for ESI, electronically-stored

19   information, the metadata of documents that are

20   created, sent, received and modified over time,

21   the metadata associated with those documents

22   tells you specifically where the documents start

23   and where it ends, if it's multiple pages,

24   right.

25             For microfilm, that data the way

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 24

1    it's restored, it's coming back to us, we don't

2    have the benefit of that -- of that metadata

3    because it's microfilm that's being restored,

4    and by whatever technological process, it

5    doesn't -- we don't receive the benefit of that.

6    So we have to do that -- we have to review all

7    of the data manually and code it for the start

8    and end marker for each individual document and

9    usually that we can tell because they are all --

10   like a report had a date, for example.  So

11   that's the unitization issue that I was

12   referring to.

13              ARBITRATOR MAAS:  I assumed that's

14   what it was.  I just wanted to make certain.

15              MR. JACOBS:  Yeah.  So we have --

16   we did receive additional reels of microfilm

17   restored since I wrote my letter in December.

18   And I believe, through just preliminary

19   searches, that it does contain some additional

20   NSC reports of stock trading conducted by House

21   5 prior to 1992.  And the reason why it hasn't

22   been produced yet is because by searching it,

23   when I do a search to try to extract that

24   material that's relevant, I'm getting back --

25   I'm getting -- the search results aren't

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 25

1    yielding full reports because the documents

2    haven't been unitized and they haven't been

3    coded yet and put into a format that can be --

4    that where we can make sure that the data is all

5    complete and accurate for production.  So that's

6    what's happening now.  As soon as that is

7    complete, it will be produced.

8                    ARBITRATOR MAAS:  Ms. Chaitman.

9                    MS. CHAITMAN:  I would just like

10   something clarified, Ted --

11                   MR. JACOBS:  Sure.

12                   MS. CHAITMAN:  -- are you saying

13   that these are documents that Dubinsky has never

14   reviewed or these are the documents that he did

15   review?

16                   MR. JACOBS:  This is microfilm

17   that has never been restored.  The reels that

18   are out, that we sent out to our vendor that I

19   mentioned, I believe there are a little more

20   than a hundred, I just need to check my notes

21   and my letter, that's -- that's data that has

22   never been restored.  So nobody has seen this

23   material until we see it and produce it -- until

24   we get it and produce it.

25                   ARBITRATOR MAAS:  Including, in

Picard v Wilenitz                    Telephone Conference 1/5/2017

```
                                                      Page 26

   1   particular, Mr. Dubinsky.

   2            MR. JACOBS:  That's correct.

   3            Now, the original production of

   4   the 95 records, we didn't -- did come from -- I

   5   believe they did come from microfilm, but

   6   microfilm that had already been restored some

   7   time ago, and that was in a database.

   8   Mr. Dubinsky had seen two of those reports and,

   9   in fact, they are referenced -- they are on his

  10   documents considered list.  That's why they were

  11   in the data room and they have been in the data

  12   room for some number of years.

  13            The additional 93 that we produced

  14   were not on Mr. Dubinsky's considered list, but

  15   they were existing in our database and we found

  16   those by search terms, as I mentioned in my

  17   letter, and those I don't believe Mr. Dubinsky

  18   has ever seen, but they now have been added to

  19   the data room and he has them now --

  20            MS. CHAITMAN:  So is it -- excuse

  21   me, but is it correct to say that if Dubinsky

  22   had reviewed any trading records, they would

  23   have been included in the data room before we

  24   added these new things?

  25            MR. JACOBS:  Anything that
```

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 27

1    Mr. Dubinsky considered in connection with his

2    report is in the data room, and the only

3    exception to that are certain structured data

4    that we disclosed in the data room manual that

5    isn't amenable to inclusion in the data room,

6    and we can make that available by other means.

7              But any -- all of the documents

8    that Mr. Dubinsky considered with his report as

9    it exists today are in the data room.  So if

10   you -- if you're familiar with his report as

11   we've produced it, you'll know that he

12   references a lot of documents that he relies

13   upon by Bates number throughout his report, and

14   then there are voluminous appendices at the end

15   of his report that I believe are, in some

16   instances, hundreds of pages long that list by

17   Bates number tens of thousands of additional

18   documents he considered.  Every single one of

19   those, to the extent technologically feasible,

20   has been put in the data room.

21             ARBITRATOR MAAS:  Anything else on

22   that, Ms. Chaitman?

23             MS. CHAITMAN:  So, okay, but when

24   you say technologically feasible, so you mean

25   that excluded the documents that you're now

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 28

1   putting into the data room?  Is that -- I just

2   want to understand what we're dealing with.

3            MR. JACOBS:  Okay.  No, I'm happy

4   to explain it, and it's a little confusing.  I

5   apologize if I'm not being clear.

6            So the micro -- the 100 plus reels

7   of microfilm that I mentioned in my December

8   letter that we've sent out for processing, none

9   of that data, none of that microfilm has ever

10  been processed before.  So none of that material

11  that we'll be producing starting now going

12  forward, to the extent it's relevant, is in the

13  data room or has ever been viewed by us or

14  Mr. Dubinsky or any litigant or anyone else in

15  connection with our adversary proceedings.

16           Mr. Dubinsky will be getting that,

17  if we make it available to him, at the same time

18  we produce it to you.

19           With respect to the 95 reports

20  that were the subject of -- that we produced in

21  connection with that December letter, two of

22  those have been considered by Mr. Dubinsky and

23  provided to him.  They are identified in the

24  appendix of his documents considered.  They were

25  in the data room and have been for a number of

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 29

1   years.

2            The additional 93 that we produced

3   were in the database of microfilm we had

4   previously restored, but they, to my knowledge,

5   have not been considered by Mr. Dubinsky in

6   connection with his report.

7            ARBITRATOR MAAS:  And just so the

8   record is clear, Mr. Jacobs, your letter talks

9   about having engaged the vendor, the process and

10  the additional 167 reels, that data is the

11  number you're talking about?

12           MR. JACOBS:  Correct.  So those

13  167 reels have not been previously processed.

14  So Mr. Dubinsky doesn't have those documents.  I

15  don't have those documents until they are

16  processed.  And if there is any relevant

17  material reflecting securities trading at BLMIS

18  from any point in time, we will add it to the

19  data room and we will produce it and send the

20  specific production letter to Ms. Chaitman

21  identifying those records that will be produced.

22           MS. CHAITMAN:  When you say

23  relevant, what is -- what is the screen there?

24  What would you not be putting on in the data

25  room?

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 30

1              MR. JACOBS:  We are -- we are

2     right now using the search terms that I

3     disclosed in my letter in December to identify

4     any records or reports that reflect securities

5     trades having been conducted historically at

6     BLMIS for any point in time.

7              MS. CHAITMAN:  Okay.  So when you

8     say relevant, I mean, you're not saying we're

9     not putting -- we're not putting in any evidence

10    of these trades, you're not distinguishing among

11    trades, right?  I mean, you're putting all the

12    trading records in.

13             MR. JACOBS:  That's correct, yeah.

14    If it's a trading record, if it's a BLMIS

15    trading record of securities having been traded,

16    we will produce it.

17             MS. CHAITMAN:  Okay.  Okay.  So,

18    you know, on that I guess the only concern I

19    have, and I'm not sure that it's something that,

20    Judge, you ought to consider right now, but we

21    have scheduling orders in every case for fact

22    discovery.  And, obviously, this is -- this is a

23    major new area of discovery which we will need

24    time to analyze, and the present fact discovery

25    orders do not -- did not contemplate this whole

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 31

 1    new body of discovery.

 2                ARBITRATOR MAAS:  Well then we'll

 3    have something -- well, let me not interject

 4    before the Trustee responds.

 5                MR. JACOBS:  Well, Helen, as you

 6    know, we currently have been automatically

 7    extending all such deadlines in all cases

 8    pending, you know, specifically the Madoff

 9    deposition pursuant to Judge Bernstein's

10    direction.  And we, you know, we will continue

11    to work with you on a case-by-case basis to

12    contemplate an extension in any case that's

13    needed.

14                But I just want to be clear for

15    Judge Maas' benefit that this is not a whole new

16    body of discovery.  These are the exact same

17    type of House 5 trading reports that BLMIS --

18    for trades that BLMIS' market making business

19    were conducting, that, to our knowledge, have

20    nothing to do with House 17 or any of the

21    investment advisory customers at any point in

22    time.

23                And, Judge Maas, I also would just

24    like to make clear that Ms. Chaitman has had for

25    years now all of those records for 2002 to 2008

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 32

1    and has not been able to point to any -- any

2    example of an actual securities trade having

3    been conducted for an IA customer.  And I -- we

4    don't believe that, no matter what is contained

5    on this microfilm, any additional securities

6    trading reports from any additional point in

7    time is going to change that.

8              So this isn't a whole new area of

9    discovery that's being opened up here.  This is

10   an argument that Ms. Chaitman has been making

11   for quite some time that she has been quite

12   unsuccessful in demonstrating, so --

13             ARBITRATOR MAAS:  I understand, I

14   understand the debate.  We could continue to

15   debate it, but I think Ms. Chaitman needs to

16   look at what you produce and we'll worry about

17   discovery deadlines or reopening discovery

18   deadlines, when I say "we," either Judge

19   Bernstein or me depending on the case, as we

20   move forward --

21             MR. JACOBS:  Absolutely.

22             ARBITRATOR MAAS:  -- speculate.

23             MR. JACOBS:  Yeah, and we will

24   work with Ms. Chaitman to do that.

25             And also, you know, we've also had

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 33

```
 1   conversations with Judge Bernstein about this,

 2   and I think that the parties have been wanting

 3   the benefit of the conclusion of Mr. Madoff's

 4   testimony, and there is going to be a second

 5   date scheduled is my understanding, I believe,

 6   Helen, tell me if I'm wrong, but we're aiming

 7   for some point in February.  And I think the

 8   parties will be before Judge Bernstein after

 9   that to discuss whether there should be or will

10   be any additional third party discovery to

11   follow up on any testimony that Mr. Madoff

12   provides.  And, you know, certainly we will be

13   happy to extend case management orders until the

14   completion of that at a minimum.

15            So I don't think that we're at a

16   point right now where we have any disagreement

17   over that.

18            ARBITRATOR MAAS:  I just have a

19   question.  Is it a second day of Madoff or a

20   third day?

21            MS. CHAITMAN:  Let me explain,

22   Your Honor, the -- what Judge Bernstein did was

23   he set up what are called day one topics, there

24   is a whole list of topics that are permitted

25   subjects for questioning Mr. Madoff on the first
```

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 34

 1   day.

 2              After seven or eight hours,

 3   Mr. Sheehan, on behalf of the Trustee, and I

 4   agreed that I had not completed my examination

 5   of Mr. Madoff with respect to the day one

 6   topics, so -- of course, he didn't have any

 7   opportunity to cross.  So we're continuing -- I

 8   think Mr. Sheehan said he was going to write a

 9   letter to Judge Bernstein explaining -- I

10   haven't seen the letter yet -- but we are going

11   to continue Mr. Madoff's deposition in February

12   with respect to the day one topics.

13              The procedure that the judge set

14   in place is that after we complete the day one

15   topics, we would go back to him and talk about

16   what future questioning we would like to have of

17   Mr. Madoff.

18              But, realistically, the day one

19   topics are very, very broad and I don't -- I

20   don't even think we're going to finish them in

21   another day.  But I think that Mr. Sheehan will

22   have, I'm sure, a full day of cross, and I have

23   another full day of -- of questions.  So we just

24   have to play it by ear as we go.

25              ARBITRATOR MAAS:  And the only

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 35

1   reason I asked is I was under the impression

2   that that second day on the day one topics had

3   been scheduled and would have occurred by now.

4           MR. JACOBS:  No, Your Honor.  I'm

5   not sure we agree with the time periods that

6   Ms. Chaitman set forth.  But I think we do agree

7   that there will be, at a minimum, another day of

8   testimony, and we do have a right to cross and

9   we haven't yet had that opportunity.  But it has

10  not been -- it has not yet currently been

11  scheduled.

12          ARBITRATOR MAAS:  Okay.  What's

13  next, Ms. Chaitman?

14          MS. CHAITMAN:  Okay.  So in

15  paragraph 5 it says the Trustee shall respond to

16  request numbers 2 and 3 solely with respect to

17  errors in the account statements, the records of

18  clients of Chaitman of which the Trustee

19  presently is aware and which have not been

20  previously disclosed to that firm.

21          There is no deadline for that and

22  I just wanted to have a time frame.

23          MR. JACOBS:  I can, hopefully,

24  solve that problem.  We are preparing amended

25  responses to that request right now which I hope

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 36

 1   to have served within a week, probably sooner.

 2   But we will -- we will amend our answers to

 3   those requests consistent with the judge's

 4   order, and if a week's time is acceptable to

 5   you, Helen, we'll have it to you by then.

 6               MS. CHAITMAN:  Yeah, that's

 7   perfect.  That's perfect.  Okay.

 8               So now on paragraph number 6,

 9   which is request number 4, it says, "This

10   request concerns profit withdrawal transactions

11   for which there is no proof that the customer

12   initiated the request.  Insofar as clients of

13   Chaitman are concerned, the information either

14   has been produced or will be produced at the

15   expert discovery stage."

16               The problem with that, Judge, is

17   this.  If we don't get core discovery until the

18   expert discovery stage, it doesn't give us the

19   ability to take any other discovery we may need,

20   because in the expert discovery stage we're

21   limited in what we can do.

22               So it seems to me that this is

23   such a fundamental issue.  And just to put it in

24   context, Judge, I just want to explain this to

25   you, I'm sure you understand it, but, you know,

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 37

1    Mr. Jacobs just said that we haven't pointed to

2    one situation since 2002 where BLMIS indicated a

3    trade for the investment advisory customers and

4    it actually made that trade.

5              We don't contend that securities

6    were purchased for the IA customers from 2002

7    on.  In fact, Mr. Madoff has said that beginning

8    at some point in 1992, he stopped buying -- he

9    started a new trading strategy and in that

10   strategy he never bought the securities that

11   were shown on the statements --

12             MR. JACOBS:  Well, actually,

13   Helen, he's now revised that to 1987, but, you

14   know, we can fight about that later.

15             MS. CHAITMAN:  Well, I'm not --

16   I'm not aware of where he said that.  In his

17   deposition he said 1992, but --

18             MR. JACOBS:  And he said 1987 the

19   second time.

20             MS. CHAITMAN:  Okay.  I'm not

21   going to argue with you --

22             ARBITRATOR MAAS:  Wait, let me

23   interrupt for a second because, Mr. Jacobs, you

24   just talked about the second time, and that's

25   what I was trying to understand.  I read one day

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 38

 1   of the deposition.  He was deposed for a second

 2   day?

 3            MR. JACOBS:  Well, the first -- by

 4   the first time I meant Ms. Chaitman's deposition

 5   that she took in connection with the profit

 6   withdrawal proceeding, which was some months

 7   ago, and then I guess his second deposition was

 8   the first day that happened last month to which

 9   we're now -- to which there will be a

10   continuation to be scheduled.

11            ARBITRATOR MAAS:  Okay.  And the

12   Madoff deposition that I read was the first of

13   those.  Correct?

14            MR. JACOBS:  Correct, yes, yes.

15            ARBITRATOR MAAS:  All right.  Does

16   it make sense for me to read the other

17   transcript?  I didn't want to run the meter if

18   it's irrelevant to what I'm going to be doing --

19            MR. JACOBS:  Well, our view, Your

20   Honor, is that it's irrelevant to the discovery

21   disputes that are pending in these -- in these

22   current applications.  I mean, Ms. Chaitman has

23   made it an issue in connection with the stock

24   trading reports, but that was never properly

25   before Your Honor.  So I really don't see it has

Picard v Wilenitz                    Telephone Conference 1/5/2017

                                                      Page 39
 1    any relevance to the work that we're doing now.
 2              ARBITRATOR MAAS:  Okay.  That's
 3    fine.
 4              MS. CHAITMAN:  Well, Your Honor,
 5    if I can just finish where I started before, I
 6    think it's important for you to understand, and
 7    I would strongly disagree with Ted's position
 8    that it's not relevant, the vast majority of my
 9    clients were customers of Madoff in the 1980s
10    and 19 -- and into 1992.
11              In calculating their clawback
12    exposure, the Trustee has taken the position
13    that they are not entitled to any appreciation
14    on their investment from, say, 1980 on.
15              What Mr. Madoff's testimony very
16    emphatically was is that there was no fraud of
17    the investment advisory customers prior to the
18    split-strike conversion, which began in 1992.
19              What that means is that for a lot
20    of my clients the cases will have to be
21    dismissed, because if, in fact, the Court finds
22    that there was no fraud of the investment
23    advisory customers prior to 1992, then they have
24    to be credited with their account balances as
25    of, let's say, 12/31/91.  And if you do that, in

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 40

1   many cases the clawback exposure will be

2   eliminated completely.

3              So this is a very important

4   factual issue for a great many of my clients and

5   that's why we're focusing on it.

6              So, you know, I would say that you

7   should read Mr. Madoff's deposition.  I think

8   that Ted has misunderstood what he said, and I

9   think that you should read it yourself, because

10  the testimony very clearly was that he purchased

11  securities for every investment advisory

12  customer prior to the split-strike conversion

13  strategy, which started sometime in 1992.

14             MR. JACOBS:  Your Honor, if you

15  would like a copy of the transcript, I'm happy

16  to provide it.

17             I just -- you know, obviously the

18  parties agree that the start date of the fraud

19  is a disputed issue.  And I can tell you that

20  beyond Mr. Madoff's very self-serving testimony,

21  there is absolutely no evidence that he was ever

22  running a legitimate business for his IA

23  customers.  And even if we were to credit all of

24  the customers' accounts through 1992, the impact

25  on our claims would only be affected in a very

Page 41

```
 1   small number of Ms. Chaitman's cases.  So it's

 2   really not this make or break issue that she

 3   makes it out to be.  And even if she prevails,

 4   it's not going to significantly affect the

 5   majority of our claims, so --

 6              ARBITRATOR MAAS:  Why don't you

 7   send it to me and I'll skim it.

 8              MR. JACOBS:  Okay.

 9              MS. CHAITMAN:  Okay.  So --

10              ARBITRATOR MAAS:  But he

11   interrupted you, you were on discovery request 4.

12              MS. CHAITMAN:  Exactly.  So

13   basically what I'm asking, Judge, is that if

14   there are documents responsive to this request,

15   that we get them during the fact discovery

16   period, and, most importantly, while I have

17   access to Mr. Madoff.  Because if I don't get

18   this until the expert discovery stage, then I

19   can't go back to Mr. Madoff and ask him about it.

20              MR. JACOBS:  Your Honor, I think I

21   can address Ms. Chaitman's concern.

22              Helen, are you talking about --

23   are we back to the PW-related specific

24   documents --

25              MS. CHAITMAN:  Yes.
```

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 42

```
 1              MR. JACOBS:  -- that you're
 2   concerned about?
 3              So I'm not aware of any -- okay.
 4   So as part of our initial disclosure or
 5   production, which we make before you even served
 6   us with a request in fact discovery, we include
 7   all of the underlying documentations that our
 8   experts will likely review and rely upon in
 9   connection with their report, including on PW
10   specific issues.
11              So there is nothing that I believe
12   that's going to appear for the first time in
13   connection with the report that you won't
14   already have as part of that initial disclosure
15   production.  So you do have everything in every
16   single case regarding those PW transactions in
17   fact discovery.  We're not -- we're not
18   withholding any of that material until expert
19   discovery in connection with the disclosure of
20   our report.
21              MS. CHAITMAN:  So then you
22   wouldn't object to this paragraph being revised
23   to reflect what you just said?
24              MR. JACOBS:  I don't think --
25   well, let me look at the paragraph.
```

Picard v Wilenitz                    Telephone Conference 1/5/2017

                                                          Page 43

 1                   Well, it depends upon -- I agree

 2       with the paragraph as constructed, because our

 3       objection to your original request was that it

 4       wasn't limited to defendant-specific materials.

 5                   So your request as drafted was

 6       overly broad and burdensome, which was our

 7       objection to it, and for that reason I would

 8       object to a revision of this paragraph that

 9       would -- that would confer upon the Trustee any

10       production obligation beyond documents relevant

11       to the defendants in the case.

12                   Moreover, I also -- you know, it

13       might be that -- it might be that because we're

14       talking theoretically about documents and you're

15       not raising, you know, I want to see the

16       customer statements or I want to see the bank

17       transfer documents, we're not talking about a

18       specific category of document, I'm concerned

19       that there may be -- you might have in your mind

20       the type of document that doesn't get, you know,

21       disclosed until the expert identifies it in

22       their report that I'm not thinking of right now,

23       in which case -- just because I can't foresee it

24       or I'm not anticipating it.

25                   So if that happens, then it's

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 44

1    perfectly legitimate for us to disclose it in

2    expert discovery and you can serve a request for

3    it and we'll produce it and there is no

4    prejudice to you.  So I don't believe that any

5    revision of this paragraph is necessary.

6                But what I am telling you is that

7    we make every effort in fact discovery to

8    produce to you all of the underlying material

9    that we provide to our experts in connection

10   with their reports.  But can I sit here and

11   guarantee in every single case that will be 100

12   percent perfect?  I can't.  I think it will be,

13   but I'm uncomfortable with an order that

14   requires perfection when -- across a hundred

15   cases about theoretical documents that I don't

16   even know what you're referring to right now as

17   we talk.

18                ARBITRATOR MAAS:  And basically

19   what Mr. Jacobs just said, he also said at pages

20   194 through 196 of the -- maybe it goes on a

21   little further than that -- of the hearing

22   transcript, which is why I worded it the way

23   that I did, so I'm going to leave that as it is.

24                MS. CHAITMAN:  Okay.  In paragraph

25   9, which is discovery request number 11, there

Picard v Wilenitz                    Telephone Conference 1/5/2017

                                                        Page 45

 1    is no date by which the Trustee has to give us

 2    this information.

 3              ARBITRATOR MAAS:  Right.

 4              MR. JACOBS:  Similarly, yes, we

 5    will provide -- our plan was to provide, Helen,

 6    you with an omnibus amended interrogatory

 7    objections and responses that will be applicable

 8    to all the cases in your Exhibit A in which you

 9    originally served them that will comply with the

10    Judge's order here on all points.

11              So this amendment will be included

12    in the amended responses that I mentioned

13    earlier that we'll provide to you within

14    approximately a week's time.

15              MS. CHAITMAN:  And that would be

16    true also for request numbers 15, 16 and 18?

17              MR. HUNT:  But, Your Honor, this

18    is Dean Hunt, can I just interject here?  Your

19    order relating to our motions to compel said

20    promptly.  We have no problem with that.  I

21    think the parties can work through these things

22    promptly, and if there's an undue delay, we, of

23    course, will let you know.

24              But we certainly didn't put any

25    limits on Ms. Chaitman, understanding her

Picard v Wilenitz                         Telephone Conference 1/5/2017

Page 46

1    workload and so forth, and, you know, she's

2    trying to do that to us and it doesn't seem --

3                ARBITRATOR MAAS:  I contemplated

4    putting in some time period and then decided it

5    would be better to encourage people to move

6    promptly and --

7                MR. HUNT:  I agree with that.  I

8    think as officers of the court we have an

9    obligation to proceed promptly under your order

10   and we have every intention of doing so and we

11   expect that Ms. Chaitman will do so as well.

12               MS. CHAITMAN:  Well, is that a

13   mutual rule then, that there is no specific

14   date, but it's as promptly as we can do it?

15               ARBITRATOR MAAS:  Let me answer

16   that.  The answer is yes.

17               MS. CHAITMAN:  Okay.  Okay.  That

18   resolves all of the issues that I had with the

19   three orders that were entered.

20               ARBITRATOR MAAS:  Okay.  I guess

21   one concern I have is to the extent that there's

22   not a broad stipulation or a stipulation as

23   broad as set forth in what -- in paragraph A2 in

24   the Train Klan, et al. order, then it strikes me

25   that there is sort of a binary approach to this.

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 47

1    The need not to answer interrogatories as

2    discussed in paragraph A3 of that order is

3    premised on the stipulation or something

4    approaching it.

5                You sent a fairly detailed letter

6    that indicated that I think it was basically

7    Gordon and Train Klan that could agree to that,

8    but not others, and I suggested that the parties

9    need to confer, in paragraph A4 I suggested that

10   the parties need to confer and see the extent to

11   which there can be stipulations and those

12   stipulations obviate the need for the discovery

13   that otherwise would be essentially available

14   under paragraph 3.  So that's something that

15   needs to occur.

16                I don't want to throw a monkey

17   wrench in here, but I just want to highlight

18   that so that there is some discussion among the

19   parties about that, and in the first instance it

20   probably should deal with the nine or so

21   defendants we were dealing with.  But I suppose

22   eventually, since I did say all my rulings

23   should be applied insofar as possible in other

24   adversary proceedings, I guess it would have to

25   be expanded potentially to the others.  So I

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 48

1    just wanted to note that that needs to occur.

2             There was also the issue of the

3    Train Klan partnership records.  And you've been

4    asking about dates when the Trustee will produce

5    things.  Can you tell the Trustee when those

6    materials will be produced, if they exist?

7             MS. CHAITMAN:  They exist, and I

8    have them from the client.  I received them

9    yesterday and they're going out either today or

10   tomorrow.

11            ARBITRATOR MAAS:  Okay.  Anything

12   else we ought to take up today?

13            There is -- obviously it wasn't on

14   the agenda, but I've received the dueling

15   letters about the Leonard Miller estate.  I,

16   frankly, haven't yet read or re-reviewed the

17   complaint in that action --

18            MR. HUNT:  I think that --

19            ARBITRATOR MAAS:  -- the view that

20   this is a problem for Judge Bernstein and the

21   motion to dismiss.  I gather that the Trustee's

22   position is this is something I should be

23   dealing with as a discovery issue?

24            MR. HUNT:  I think Ms. Chaitman's

25   position on that was that she was going to go

Picard v Wilenitz                    Telephone Conference 1/5/2017

```
                                            Page 49
1    ahead and answer the discovery, and then I think

2    she even did answer some of it, so thank you for

3    that, and then deal with the motion to dismiss

4    or motion for summary judgment or whatever with

5    the trial court.

6              So I don't see anything in front

7    of you right now with respect to that.

8              ARBITRATOR MAAS:  Okay.

9              MR. HUNT:  We do have --

10             ARBITRATOR MAAS:  Ms. Chaitman?

11             MS. CHAITMAN:  Yeah, I think I

12   have to make a motion to dismiss.

13             ARBITRATOR MAAS:  Okay.  Then

14   that's fine.

15             Anything else we ought to take up

16   today?

17             MR. HUNT:  Yes, Your Honor.  I

18   agree with you that with the exception of

19   Gordon, which I'm not clear Ms. Chaitman has

20   stipulated for as she still says that they can't

21   agree to the dates of deposits and withdrawals

22   in paragraphs 1 through 3, I'm not sure that

23   we're going to get a stipulation on Gordon.

24   We'd like to clear that up.

25             And then for the depositions that
```

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 50

1    we had set and have been objected to, we'd like

2    to go ahead and just get clearance for working

3    with Ms. Chaitman to get those dates nailed

4    down.

5            MS. CHAITMAN:  Well, that's the

6    one thing that hasn't been ruled on, Your Honor.

7    We had moved for a protective order with respect

8    to, obviously, as I explained to you, we have

9    been going forward with a lot of the

10   depositions, but I would move for a protective

11   order with respect to the people where they

12   either have conceded the material facts or they

13   have no personal knowledge because the account

14   belonged to a deceased spouse or a trust or

15   whatever, and that's the one motion you haven't

16   ruled on yet.

17           ARBITRATOR MAAS:  Well, I guess

18   that's correct.  When you say they've conceded

19   Exhibit B, there is lots of caveats to that, and

20   they certainly haven't, as your letter explains,

21   they haven't agreed to the paragraph A2

22   stipulation, potentially with the exception of

23   Gordon, and even that's not wholly clear.  So I

24   will rule on that in the next few days.

25           But I have to tell you, in all

Page 51

1   likelihood, I will allow those depositions

2   subject, obviously, to restrictions in terms of

3   the amount of time that those depositions will

4   take.

5           Is there any reason why each of

6   those depositions cannot be accomplished in four

7   hours rather than seven?

8           MS. CHAITMAN:  Well, they've have

9   been taking -- they have been taking between two

10  and three hours as it is.  So, I mean, I can't

11  conceive of why they would take four to seven

12  hours, but --

13          MR. HUNT:  Your Honor, I think

14  what I would agree to on that is that we will

15  limit to four hours of on-the-record time

16  subject to, you know, if it goes long, longer,

17  and the only reason I can see that it would go

18  longer is if Ms. Chaitman makes long speaking

19  objections and things of that nature, which

20  we've encountered in the past, that we could

21  give you a --

22          ARBITRATOR MAAS:  -- words that

23  say unless -- unless Judge Bernstein or I

24  otherwise direct.

25          MR. HUNT:  That would be great and

Picard v Wilenitz                          Telephone Conference 1/5/2017

                                                              Page 52

 1    we're comfortable with that, and, you know what,

 2    with respect to you directing it, we might just

 3    give you a call that day.  I don't foresee that.

 4    But if it is -- and with travel and have the

 5    witness there and so forth, would you be okay

 6    with us trying to track you down for that?

 7              ARBITRATOR MAAS:  Sure.  And, in

 8    fact, let me give counsel my cell phone number

 9    since I'm a bit of a moving target.  It's

10    XXX-XXX-XXXX, but I'd ask that the court

11    reporter just put a space in the transcript.

12              MR. HUNT:  We agree with that.

13    Okay.  That's fine.  We can do that in four

14    hours on the record.  We've done it repeatedly

15    in less time than that.

16              ARBITRATOR MAAS:  Okay.  But let's

17    not leave Gordon hanging out there.  Is it

18    possible to resolve Gordon?  I take it we're

19    agreed based on the stipulation as revised that

20    Train Klan -- well, and assuming the partnership

21    documents, such as they are received, that Train

22    Klan will not be deposed?

23              MR. HUNT:  We don't have a

24    deposition notice out for Train Klan.

25              ARBITRATOR MAAS:  Okay.

Picard v Wilenitz                    Telephone Conference 1/5/2017

```
                                                    Page 53
 1                    MR. HUNT:  So the only one of the
 2     two that we're talking about here is Gordon.
 3                    ARBITRATOR MAAS:  And I'm trying
 4     to in my pile of papers search for that letter.
 5     Yes, let me come up with it.
 6                    Well, I think, Ms. Chaitman, if I
 7     understand your letter, you're agreeing to
 8     withdraw affirmative defenses 20, 27, 29 and 46
 9     for Gordon?
10                    MS. CHAITMAN:  No, that is not
11     correct.  I need to pull up that letter, Judge,
12     but that's not correct.  Hold on one second.
13                    ARBITRATOR MAAS:  Okay.
14                    MS. CHAITMAN:  Just to speed me
15     along, I have the letter now.  Which paragraph
16     were you --
17                    ARBITRATOR MAAS:  Well, I'm in
18     paragraph 4 on page 3 of your letter --
19                    MS. CHAITMAN:  Okay.
20                    ARBITRATOR MAAS:  -- after you
21     recite each of those four affirmative defenses,
22     you say it's not applicable to Gordon.
23                    MS. CHAITMAN:  Yes, I've put
24     Gordon and Train Klan in the same category.
25                    ARBITRATOR MAAS:  Okay.  So then
```

Picard v Wilenitz                          Telephone Conference 1/5/2017

Page 54

1    as to Gordon there should be no need for a

2    deposition.

3              MR. HUNT:  It does say on page 2

4    of her letter that none of her clients have

5    admitted to the precise dates of the deposits

6    and withdrawals; that the Trustee has

7    manipulated facts.  The stipulation requires

8    them to stipulate to columns 1 through 5, and

9    what she's saying is they'll stipulate to 4 and

10   5.  So I just want to clarify that Gordon

11   stipulates to columns 1 through 5.

12             MS. CHAITMAN:  No, because, again,

13   this is an area of proof that the Trustee has a

14   burden of, and, you know, it makes a difference

15   because the Trustee can only recover withdrawals

16   taken out in the last two years.

17             MR. HUNT:  We agree that that's

18   our burden and that discovery is necessary on it

19   if you won't stipulate to it.

20             MS. CHAITMAN:  Well, okay.  The

21   point is that Edyne Gordon, who is in her

22   eighties and a widow, had nothing to do with the

23   account.  So whether -- whether the check was

24   dated before the two-year period or cashed

25   before the two-year period is a legal argument

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 55

1   based on the evidence.  It's not something that

2   she's going to be able to elucidate.  She can't

3   possibly have any testimony relevant to that.

4   These are issues that the judge is going to have

5   to determine based on the evidence.

6                    You know, the issue is what was

7   the date that Madoff showed the withdrawal, what

8   was the date that the bank actually cleared the

9   withdrawal, and then there has to be a legal

10  interpretation of when that withdrawal occurred

11  as a matter of law.  Was it the date that Madoff

12  charged the account?  Was it the date that the

13  check was credited to Madoff's account at

14  JPMorgan Chase?

15                   I mean, these are legal issues.

16  It's not something that Edyne Gordon, an 87-year

17  old widow, is going to be able to give relevant

18  testimony on.

19                   MR. HUNT:  We disagree.

20                   ARBITRATOR MAAS:  I guess, though,

21  the net effect of that is that I'm going to

22  allow a deposition of four hours or less, and if

23  you're correct, it will probably be a lot less

24  of Ms. Gordon, because you can't have it both

25  ways.  If there's not a stipulation as to

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 56

1    columns 1 through 5 and, by way of example, if

2    there is the potential for a dispute as to the

3    date, the Trustee at a minimum is entitled to

4    take a deposition and say what information do

5    you have to suggest that these dates are

6    inaccurate and get the concession if it's

7    accurate that Ms. Gordon doesn't have any

8    information.

9            So for it -- just to be clear, for

10   anyone who hasn't agreed to columns 1 through 5,

11   I'm going to allow the deposition with the

12   restrictions I described.

13           Anything else from anyone?

14           MR. HUNT:  Nothing from us, Your

15   Honor.

16           ARBITRATOR MAAS:  Ms. Chaitman?

17           MS. CHAITMAN:  I have nothing

18   further.

19           ARBITRATOR MAAS:  Okay.  Thank

20   you, all.  Have a good day and a good weekend.

21   Take care.

22           MR. HUNT:  Thank you, Your Honor.

23   We appreciate it.

24           MS. CHAITMAN:  Thank you.

25           (Time noted: 12:11 p.m.)

TA421

Picard v Wilenitz                    Telephone Conference 1/5/2017

```
                                                        Page 57
  1                      CERTIFICATE

  2

  3              I, MONIQUE VOUTHOURIS, a Notary

  4    Public of the States of New York and New Jersey,

  5    and Certified Court Reporter of the State of New

  6    Jersey, License No. X100834, do hereby certify

  7    that the foregoing is a true and accurate

  8    transcript of the telephone conference as taken

  9    stenographically by and before me on the date

 10    hereinbefore set forth.

 11              I DO FURTHER CERTIFY that I am

 12    neither a relative nor employee nor attorney nor

 13    counsel of any of the parties to this action,

 14    and that I am neither a relative nor employee of

 15    such attorney or counsel, and that I am not

 16    financially interested in the action.

 17

 18              Monique Vouthouris

 19

 20        Notary Public of the State of New York

 21        My Commission expires December 1, 2019

 22

 23

 24    Dated:  January 6, 2017

 25
```

Picard v Wilenitz                              Telephone Conference 1/5/2017

| **A** | | | |
|---|---|---|---|
| **a.m** | 32:2 | 50:21 52:19 56:10 | **appear** |
| 1:25 | **add** | **agreeing** | 42:12 |
| **A1** | 12:6 21:11 23:7 29:18 | 53:7 | **appendices** |
| 13:21 | **added** | **ahead** | 27:14 |
| **A2** | 21:8,16 26:18,24 | 49:1 50:2 | **appendix** |
| 13:22 14:3,22 15:3 | **addition** | **aiming** | 28:24 |
| 46:23 50:21 | 11:1 12:8 | 33:6 | **applicable** |
| **A3** | **additional** | **al** | 45:7 53:22 |
| 47:2 | 20:15,21 21:21 22:6,9 | 1:17 46:24 | **application** |
| **A4** | 22:10 24:16,19 26:13 | **alleged** | 13:8 |
| 47:9 | 27:17 29:2,10 32:5,6 | 16:11 | **applications** |
| **ability** | 33:10 | **allow** | 38:22 |
| 16:24 36:19 | **address** | 51:1 55:22 56:11 | **applied** |
| **able** | 20:5 41:21 | **allowed** | 5:21 47:23 |
| 4:20 6:15 22:12 23:4 | **adhere** | 9:20 | **appreciate** |
| 32:1 55:2,17 | 13:5 | **allowing** | 56:23 |
| **absolutely** | **admitted** | 16:17 | **appreciation** |
| 13:24 22:3 32:21 40:21 | 54:5 | **amenable** | 39:13 |
| **acceptable** | **Adv** | 27:5 | **approach** |
| 36:4 | 1:3,13 | **amend** | 46:25 |
| **access** | **adversary** | 36:2 | **approaching** |
| 19:21 20:9,10 21:2,2,4 | 28:15 47:24 | **amended** | 47:4 |
| 21:17 41:17 | **advise** | 8:24 35:24 45:6,12 | **approximately** |
| **accomplished** | 6:8 | **amendment** | 45:14 |
| 51:6 | **advisory** | 45:11 | **Arbitrator** |
| **account** | 31:21 37:3 39:17,23 | **amount** | 2:2 3:1,5,12,15,22 4:7 |
| 7:1,1,6 8:5,9,17 17:13 | 40:11 | 7:13 16:6 19:22 51:3 | 4:11 7:9 8:8,14,18,23 |
| 35:17 39:24 50:13 | **affect** | **analyze** | 9:4,16 10:7,23 12:1 |
| 54:23 55:12,13 | 41:4 | 30:24 | 12:20 13:18,23 14:23 |
| **accounts** | **affirmative** | **and-** | 15:13 16:5,16,21 17:1 |
| 40:24 | 9:9 10:12 11:16 17:15 | 2:13 | 18:1,11,16 20:1 21:6 |
| **accuracy** | 17:18 53:8,21 | **answer** | 23:13 24:13 25:8,25 |
| 6:9 | **against-** | 46:15,16 47:1 49:1,2 | 27:21 29:7 31:2 32:13 |
| **accurate** | 1:5,16 | **answers** | 32:22 33:18 34:25 |
| 17:11 25:5 56:7 57:7 | **agenda** | 36:2 | 35:12 37:22 38:11,15 |
| **accurately** | 48:14 | **anticipate** | 39:2 41:6,10 44:18 |
| 14:21 | **ago** | 19:16 | 45:3 46:3,15,20 48:11 |
| **acquired** | 26:7 38:7 | **anticipated** | 48:19 49:8,10,13 |
| 10:14 | **agree** | 21:21 | 50:17 51:22 52:7,16 |
| **action** | 12:18,19 14:5 17:18 | **anticipating** | 52:25 53:3,13,17,20 |
| 48:17 57:13,16 | 35:5,6 40:18 43:1 | 43:24 | 53:25 55:20 56:16,19 |
| **activities** | 46:7 47:7 49:18,21 | **anybody** | **area** |
| 12:15 | 51:14 52:12 54:17 | 4:12 | 30:23 32:8 54:13 |
| **actual** | **agreed** | **apologize** | **argue** |
| | 5:18 14:2,2 15:4 34:4 | 28:5 | 37:21 |

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 59

| | | | |
|---|---|---|---|
| argument | 15:5 24:1,24 34:15 | 1:7,10,13 | **C** |
| 32:10 54:25 | 41:19,23 | **Bernstein** | **C** |
| arrived | **BAKER** | 5:4 9:19 13:9 32:19 | 2:6 |
| 5:21 | 2:8,14 | 33:1,8,22 34:9 48:20 | **C1** |
| asked | balances | 51:23 | 15:16 |
| 35:1 | 39:24 | **Bernstein's** | cabinet |
| asking | bank | 31:9 | 10:11 |
| 41:13 48:4 | 43:16 55:8 | best | calculating |
| assert | **Bankruptcy** | 12:25 19:4 | 39:11 |
| 9:10 | 1:1 4:22 | better | call |
| asserting | based | 46:5 | 52:3 |
| 15:2 | 52:19 55:1,5 | beyond | called |
| assets | basically | 40:20 43:10 | 33:23 |
| 16:24 17:3,7,12 | 16:22,23 41:13 44:18 | binary | capital |
| associated | 47:6 | 46:25 | 16:11,14 17:4 |
| 23:21 | basis | bit | caption |
| assume | 31:11 | 52:9 | 6:18 |
| 5:5 | **Bates** | **BLMIS** | care |
| assumed | 27:13,17 | 7:1 8:16 12:15 29:17 | 56:21 |
| 24:13 | bear | 30:6,14 31:17 37:2 | **Carlisle** |
| assuming | 7:15 15:24 | **BLMIS'** | 2:11 3:9,18 |
| 52:20 | began | 31:18 | case |
| assumption | 39:18 | body | 12:12 17:2 30:21 31:12 |
| 5:20 | beginning | 10:3 11:17 31:1,16 | 32:19 33:13 42:16 |
| attention | 11:18 37:7 | bought | 43:11,23 44:11 |
| 4:16 | begins | 37:10 | case-by-case |
| attorney | 6:18 | box | 31:11 |
| 57:12,15 | begun | 18:23 | cases |
| automatically | 10:5 | break | 31:7 39:20 40:1 41:1 |
| 31:6 | behalf | 41:2 | 44:15 45:8 |
| available | 34:3 | broad | cashed |
| 11:8 19:13,14 27:6 | believe | 34:19 43:6 46:22,23 | 54:24 |
| 28:17 47:13 | 7:19 11:16 13:21 21:20 | **Building** | category |
| Avenue | 24:18 25:19 26:5,17 | 11:2 | 12:10 43:18 53:24 |
| 2:3,19 | 27:15 32:4 33:5 42:11 | bunch | caution |
| aware | 44:4 | 18:4 | 7:13 |
| 35:19 37:16 42:3 | belonged | burden | cautious |
| | 50:14 | 54:14,18 | 11:14 |
| **B** | bench | burdensome | caveats |
| **B** | 5:8 | 43:6 | 50:19 |
| 2:1 6:22,25 7:4 15:25 | benefit | business | cell |
| 17:3 50:19 | 7:2 24:2,5 31:15 33:3 | 17:19 22:8 31:18 40:22 | 52:8 |
| **B5** | **Benjamin** | buying | certain |
| 13:20 | 5:14 | 37:8 | 5:25 21:25 24:14 27:3 |
| back | **Bernard** | | certainly |

Picard v Wilenitz                              Telephone Conference 1/5/2017

5:9 16:4 17:11 20:5
33:12 45:24 50:20
**CERTIFICATE**
57:1
**Certified**
1:22 57:5
**certify**
57:6,11
**CHAIRMAN**
2:20
**Chaitman**
2:19 3:3,7,17,19,24 4:8
5:16 6:1,4,5 7:25 8:7
8:10,16 9:1,5,17
10:17 11:13 12:10,23
13:12 14:11 15:1,4,12
15:14,15 16:13,19,22
17:23 18:3,12 19:11
20:9,19 21:1,7,13
22:7 23:5 25:8,9,12
26:20 27:22,23 29:20
29:22 30:7,17 31:24
32:10,15,24 33:21
35:6,13,14,18 36:6,13
37:15,20 38:22 39:4
41:9,12,25 42:21
44:24 45:15,25 46:11
46:12,17 48:7 49:10
49:11,19 50:3,5 51:8
51:18 53:6,10,14,19
53:23 54:12,20 56:16
56:17,24
**Chaitman's**
14:4 20:6 38:4 41:1,21
48:24
**change**
32:7
**changed**
12:5
**charged**
55:12
**Chase**
55:14
**check**
8:1 22:21 25:20 54:23

55:13
**circumstance**
13:7
**circumstances**
19:3
**claims**
40:25 41:5
**clarification**
15:11
**clarified**
11:11 25:10
**clarify**
10:18 54:10
**clawback**
39:11 40:1
**clean**
9:3
**clear**
12:4 28:5 29:8 31:14
31:24 49:19,24 50:23
56:9
**clearance**
50:2
**cleared**
55:8
**clearly**
40:10
**client**
48:8
**clients**
12:23 35:18 36:12 39:9
39:20 40:4 54:4
**code**
24:7
**coded**
25:3
**column**
6:23,24
**columns**
6:10 14:10 54:8,11
56:1,10
**come**
7:12 26:4,5 53:5
**comfortable**
52:1

**coming**
24:1
**commencing**
1:25
**comment**
13:16,19
**comments**
6:10
**Commission**
57:21
**commit**
21:25
**compel**
45:19
**complaint**
48:17
**complete**
18:14 22:20 25:5,7
34:14
**completed**
34:4
**completely**
40:2
**completeness**
6:9
**completion**
33:14
**complicated**
9:21
**comply**
45:9
**conceded**
50:12,18
**concedes**
6:22,24
**conceive**
51:11
**conceptualize**
12:9
**concern**
11:13 30:18 41:21
46:21
**concerned**
9:17 10:19 36:13 42:2
43:18

**concerning**
14:7
**concerns**
36:10
**concession**
56:6
**conclusion**
33:3
**conclusively**
23:5
**conducted**
24:20 30:5 32:3
**conducting**
31:19
**confer**
43:9 47:9,10
**conference**
1:21 4:6 5:2,19 57:8
**confidentiality**
16:7
**confirm**
14:9,20
**confusing**
28:4
**connection**
6:21 9:13 22:2 27:1
28:15,21 29:6 38:5,23
42:9,13,19 44:9
**consider**
30:20
**considered**
26:10,14 27:1,8,18
28:22,24 29:5
**consistent**
36:3
**Consolidated**
1:6
**constructed**
43:2
**contain**
24:19
**contained**
32:4
**contemplate**
30:25 31:12

Picard v Wilenitz                                   Telephone Conference 1/5/2017

Page 61

contemplated
46:3
contemporaneously
20:11
contend
37:5
context
6:13 36:24
continuation
38:10
continue
23:2,10,11 31:10 32:14
  34:11
continuing
34:7
control
22:4,21,25
conversations
33:1
conversion
39:18 40:12
copy
23:11 40:15
core
19:18 36:17
CORPORATION
1:3
correct
13:25 26:2,21 29:12
  30:13 38:13,14 50:18
  53:11,12 55:23
corrected
8:24
correctly
8:9
counsel
12:2 19:16 52:8 57:13
  57:15
couple
4:2,14
course
34:6 45:23
court
1:1,23 3:10,16 4:22
  14:19 39:21 46:8 49:5

52:10 57:5
created
23:20
credit
40:23
credited
39:24 55:13
crew
3:13
cross
34:7,22 35:8
cross-reference
13:21
CRR
1:23
current
38:22
currently
31:6 35:10
customer
32:3 36:11 40:12 43:16
customers
31:21 37:3,6 39:9,17
  39:23 40:23
customers'
40:24

— D —

D
2:10 15:25,25
data
20:17,17,25 21:11,16
  22:14,16 23:7,25 24:7
  25:4,21 26:11,11,19
  26:23 27:2,3,4,5,9,20
  28:1,9,13,25 29:10,19
  29:24
database
26:7,15 29:3
date
14:7 19:24 21:25 22:11
  24:10 33:5 40:18 45:1
  46:14 55:7,8,11,12
  56:3 57:9
dated

54:24 57:24
dates
14:12,13 22:22 48:4
  49:21 50:3 54:5 56:5
DAVIS
2:20
day
33:19,20,23 34:1,5,12
  34:14,18,21,22,23
  35:2,2,7 37:25 38:2,8
  52:3 56:20
days
9:6 11:9 22:8 50:24
deadline
35:21
deadlines
31:7 32:17,18
deal
47:20 49:3
dealing
4:18 13:10 28:2 47:21
  48:23
dealt
10:8
Dean
2:10 3:9 45:18
debate
9:22 32:14,15
Debtor
1:11
deceased
50:14
December
5:1 14:4 18:6 20:14
  21:10,20 24:17 28:7
  28:21 30:3 57:21
decided
46:4
defendant
1:8 6:15,16,22
defendant-specific
43:4
defendants
1:18 2:23 5:13,17 6:8
  8:15 9:7,10,11,13

14:25 15:6,17 43:11
  47:21
defendants'
6:25 7:2 12:15
defense
10:12 14:17 17:15,18
  17:20
defenses
9:10 11:16 53:8,21
delay
45:22
demonstrating
32:12
depending
32:19
depends
43:1
depose
9:20 10:1
deposed
10:25 38:1 52:22
deposit
13:1
deposition
9:24 31:9 34:11 37:17
  38:1,4,7,12 40:7
  52:24 54:2 55:22 56:4
  56:11
depositions
49:25 50:10 51:1,3,6
deposits
7:5 14:8 49:21 54:5
described
13:8 56:12
detailed
47:5
determination
18:8
determinations
22:18
determine
16:24 18:18 55:5
Dexter
2:22 3:19 4:5,7,9
dhunt@bakerlaw.com

Picard v Wilenitz                                  Telephone Conference 1/5/2017

2:10
**difference**
54:14
**DiGiulian**
5:14 13:14
**direct**
51:24
**directing**
52:2
**direction**
31:10
**disagree**
5:16 12:3 19:1 39:7
  55:19
**disagreement**
33:16
**disagrees**
6:1
**disclose**
44:1
**disclosed**
27:4 30:3 35:20 43:21
**disclosure**
42:4,14,19
**discovery**
9:22,25 10:2,4,4 12:13
  19:17,20 30:22,23,24
  31:1,16 32:9,17,17
  33:10 36:15,17,18,19
  36:20 38:20 41:11,15
  41:18 42:6,17,19 44:2
  44:7,25 47:12 48:23
  49:1 54:18
**discuss**
5:10 19:10 33:9
**discussed**
5:1 10:9 16:17 47:2
**discussion**
11:11 47:18
**disk**
21:12
**dismiss**
48:21 49:3,12
**dismissed**
39:21

**dispute**
56:2
**disputed**
40:19
**disputes**
38:21
**distinction**
10:10
**distinguishing**
30:10
**DISTRICT**
1:1
**docket**
4:22
**document**
7:25 11:22 12:9 24:8
  43:18,20
**documentation**
16:9
**documentations**
42:7
**documents**
9:8,11 11:2,3,4,6,15,19
  12:14,24 13:3,4 19:18
  21:3,8,16 22:19 23:19
  23:21,22 25:1,13,14
  26:10 27:7,12,18,25
  28:24 29:14,15 41:14
  41:24 43:10,14,17
  44:15 52:21
**doing**
18:19 38:18 39:1 46:10
**doubt**
23:9
**draft**
5:8,11
**drafted**
4:21,25 5:5 43:5
**drafting**
5:12
**draw**
17:21
**drive**
21:12
**DTC**

10:15
**Dubinsky**
19:14,21 20:8,19 21:3
  25:13 26:1,8,17,21
  27:1,8 28:14,16,22
  29:5,14
**Dubinsky's**
26:14
**dueling**
48:14

─────────────
        **E**
─────────────
**E**
2:1,1,6,6 15:25
**ear**
34:24
**earlier**
20:22 45:13
**ECF**
4:22
**educated**
18:24
**Edward**
2:16 12:7
**Edyne**
54:21 55:16
**effect**
5:22 8:4 14:23 55:21
**effort**
5:2 18:18 44:7
**eight**
34:2
**Eighth**
2:3
**eighties**
54:22
**either**
21:12 32:18 36:13 48:9
  50:12
**ejacobs@bakerlaw.c...**
2:16
**electronically-stored**
23:18
**eliminated**
40:2

**elucidate**
55:2
**emphatically**
39:16
**employee**
57:12,14
**encountered**
51:20
**encourage**
46:5
**ends**
23:23
**engaged**
29:9
**ensuing**
9:25
**entered**
46:19
**entitled**
16:9 39:13 56:3
**entitlement**
17:17
**entity**
5:24
**entry**
9:7
**enumerated**
12:11
**equivocal**
15:7
**erred**
5:16
**errors**
35:17
**ESI**
23:18
**ESQ**
2:10,11,16,20,22
**essentially**
47:13
**estate**
48:15
**et**
1:17 46:24
**eventually**

Picard v Wilenitz                                    Telephone Conference 1/5/2017

47:22
evidence
14:12 30:9 40:21 55:1
  55:5
exact
31:16
exactly
6:14 41:12
examination
34:4
example
24:10 32:2 56:1
exception
14:15 27:3 49:18 50:22
excluded
27:25
excuse
26:20
Exhibit
6:25 7:4 45:8 50:19
exist
18:21 48:6,7
existed
18:23
existing
26:15
exists
27:9
expanded
47:25
expect
46:11
expert
19:15,17 36:15,18,20
  41:18 42:18 43:21
  44:2
experts
16:8 42:8 44:9
expires
57:21
explain
28:4 33:21 36:24
explained
20:13 21:10 50:8
explaining

34:9
explains
50:20
explicitly
5:18
explore
11:19
exposure
39:12 40:1
extend
33:13
extending
31:7
extension
31:12
extent
27:19 28:12 46:21
  47:10
extract
24:23

---
### F
---
F
2:1
face
12:5
fact
6:12 9:22 14:9 17:14
  26:9 30:21,24 37:7
  39:21 41:15 42:6,17
  44:7 52:8
facts
5:25 6:2 14:7,16,17
  50:12 54:7
factual
40:4
failed
9:11
fair
7:13 20:1
fairly
4:23 9:21 47:5
faith
18:7
fall

12:9
falls
10:16
familiar
27:10
fast
21:19
favoring
5:17
feasible
27:19,24
February
33:7 34:11
fight
37:14
file
10:11
filed
4:4
files
18:21
filing
4:19
financially
57:16
find
20:23
finding
20:12
findings
6:4
finds
39:21
fine
8:22 17:21 39:3 49:14
  52:13
finish
34:20 39:5
firm
35:20
first
15:18 17:5 33:25 38:3
  38:4,8,12 42:12 47:19
Floor
2:3,15

fmaas@jamsadr.com
2:4
focus
4:15
focusing
40:5
folder
20:25
follow
33:11
foregoing
57:7
foresee
43:23 52:3
forgot
11:1
form
4:17,22
format
25:3
forth
14:3 35:6 46:1,23 52:5
  57:10
forward
19:6 28:12 32:20 50:9
found
20:15 26:15
four
21:21 51:6,11,15 52:13
  53:21 55:22
FOURTH
1:17
frame
9:12 21:23 35:22
FRANK
2:2
frankly
5:15 48:16
fraud
39:16,22 40:18
front
49:6
full
25:1 34:22,23
fundamental

Picard v Wilenitz                          Telephone Conference 1/5/2017

36:23
**funds**
6:23,24 8:6
**further**
44:21 56:18 57:11
**future**
34:16

**G**

**gains**
16:11,14 17:4
**gather**
48:21
**gdexter@chaitmanll...**
2:22
**general**
6:19 14:15
**generates**
17:16
**getting**
19:7 24:24,25 28:16
**give**
17:10 36:18 45:1 51:21
52:3,8 55:17
**given**
17:14
**giving**
16:23,23 18:20
**go**
9:1 17:7 18:23 34:15
34:24 41:19 48:25
50:2 51:17
**goes**
14:12 19:7 44:20 51:16
**going**
3:20 12:1 13:5 14:17
17:4,9,10 28:11 32:7
33:4 34:8,10,20 37:21
38:18 41:4 42:12
44:23 48:9,25 49:23
50:9 55:2,4,17,21
56:11
**Goldman**
15:24
**good**

3:8 4:9,11 6:6 18:7
56:20,20
**goose**
5:2
**Gordon**
47:7 49:19,23 50:23
52:17,18 53:2,9,22,24
54:1,10,21 55:16,24
56:7
**great**
40:4 51:25
**Greg**
3:19 4:8
**GREGORY**
2:22
**grounds**
16:18
**group**
5:14,24 12:24
**guarantee**
44:11
**guess**
8:23 14:18 30:18 38:7
46:20 47:24 50:17
55:20
**guesses**
18:25

**H**

**H**
1:12
**Hang**
13:23 18:1
**hanging**
52:17
**happened**
10:22 38:8
**happening**
25:6
**happens**
43:25
**happy**
3:6 28:3 33:13 40:15
**hard**
21:12

hchaitman@chaitm...
2:21
**heads**
16:10
**hear**
3:20 12:2
**hearing**
9:14,15 10:10 15:16
16:17 44:21
**held**
7:2 9:22 15:8
**Helen**
2:20 4:9 31:5 33:6 36:5
37:13 41:22 45:5
**hereinbefore**
57:10
**Hi**
3:3 4:7 20:4
**highlight**
47:17
**historically**
20:10 30:5
**Hold**
53:12
**holder**
7:7 8:5,17 17:13
**holding**
15:2
**HON**
2:2
**Honor**
3:9 12:7 13:17 14:19
15:10 22:7 23:10,11
33:22 35:4 38:20,25
39:4 40:14 41:20
45:17 49:17 50:6
51:13 56:15,22
**hope**
35:25
**hopefully**
22:7 35:23
**host**
22:1
**HOSTETLER**
2:8,14

**hours**
34:2 51:7,10,12,15
52:14 55:22
**House**
24:20 31:17,20
**Houston**
2:9
**humanly**
20:24 21:19 23:3
**hundred**
25:20 44:14
**hundreds**
27:16
**Hunt**
2:10 3:8,9,14,17 7:20
8:20,22 12:3,18 13:15
13:19 14:1,18 15:10
45:17,18 46:7 48:18
48:24 49:9,17 51:13
51:25 52:12,23 53:1
54:3,17 55:19 56:14
56:22

**I**

**IA**
32:3 37:6 40:22
**identified**
11:23 28:23
**identifies**
43:21
**identify**
23:5 30:3
**identifying**
29:21
**imagine**
4:14 12:22 22:1
**impact**
40:24
**important**
39:6 40:3
**importantly**
41:16
**impression**
35:1
**inaccurate**

56:6
**include**
42:6
**included**
5:23 26:23 45:11
**including**
16:14 25:25 42:9
**inclusion**
27:5
**income**
15:20
**inconsistent**
14:14
**index**
18:20
**indicate**
18:6
**indicated**
14:5 23:6 37:2 47:6
**individual**
13:3,4 17:12 24:8
**information**
11:18 23:19 36:13 45:2
   56:4,8
**initial**
7:20 42:4,14
**initiated**
36:12
**inquiry**
20:7
**insofar**
36:12 47:23
**instance**
47:19
**instances**
27:16
**intend**
21:10
**intent**
16:3
**intention**
46:10
**interested**
23:6 57:16
**interject**

31:3 45:18
**interpretation**
55:10
**interpreted**
14:13
**interrogatories**
47:1
**interrogatory**
45:6
**interrupt**
7:10 37:23
**interrupted**
41:11
**invested**
15:23
**investment**
1:7,13 31:21 37:3
   39:14,17,22 40:11
**investments**
12:16 16:15
**INVESTOR**
1:3
**involved**
13:9
**involves**
17:24
**irrelevant**
38:18,20
**Irving**
1:12 2:17
**ISRAEL**
1:17
**issue**
8:24 11:10,23 24:11
   36:23 38:23 40:4,19
   41:2 48:2,23 55:6
**issues**
9:2 17:25 22:2,14
   42:10 46:18 55:4,15

_____ J _____

**J**
2:16
**Jacobs**
2:16 3:9,17 12:6,7

18:10 19:23 20:3,4
   21:9 23:17 24:15
   25:11,16 26:2,25 28:3
   29:8,12 30:1,13 31:5
   32:21,23 35:4,23 37:1
   37:12,18,23 38:3,14
   38:19 40:14 41:8,20
   42:1,24 44:19 45:4
**January**
1:25 6:7 57:24
**Jersey**
1:24 57:4,6
**joined**
3:13 4:12
**joining**
3:20
**joins**
4:5
**JPMorgan**
55:14
**judge**
3:1,3 4:1 5:4 9:19,19
   10:19 13:9 15:12 20:4
   30:20 31:9,15,23
   32:18 33:1,8,22 34:9
   34:13 36:16,24 41:13
   48:20 51:23 53:11
   55:4
**judge's**
36:3 45:10
**judging**
5:3
**judgment**
49:4

_____ K _____

**kept**
11:3
**kinds**
22:14
**Klan**
5:13,23 6:18 7:20 14:2
   14:9,20,24 15:2 46:24
   47:7 48:3 52:20,22,24
   53:24

**know**
4:1,24 5:25 6:12,13
   10:22 14:16 15:23
   16:2 17:14 19:21 21:7
   22:5 27:11 30:18 31:6
   31:8,10 32:25 33:12
   36:25 37:14 40:6,17
   43:12,15,20 44:16
   45:23 46:1 51:16 52:1
   54:14 55:6
**knowledge**
29:4 31:19 50:13

_____ L _____

**L**
1:7,10,13 2:11
**laid**
6:14
**language**
5:10 7:11,16,24 9:18
**law**
14:15 55:11
**leads**
10:1
**leave**
44:23 52:17
**legal**
54:25 55:9,15
**legitimate**
40:22 44:1
**length**
5:3
**Leonard**
48:15
**let's**
9:1 10:25 39:25 52:16
**letter**
14:4 18:10 20:14 21:1
   21:10,13,20 22:6,11
   24:17 25:21 26:17
   28:8,21 29:8,20 30:3
   34:9,10 47:5 50:20
   53:4,7,11,15,18 54:4
**letters**
23:12 48:15

Picard v Wilenitz                    Telephone Conference 1/5/2017

Page 66

letting
15:5
levy
16:25
License
57:6
likelihood
51:1
limit
51:15
limited
15:22 36:21 43:4
limiting
16:5
limits
45:25
line
3:11 17:21
Lipstick
11:2
Liquidation
1:5,13
list
26:10,14 27:16 33:24
litigant
28:14
little
7:24 25:19 28:4 44:21
LLC
1:7,14
LLP
2:8,14,19
load
21:14
long
18:7 19:2 27:16 51:16
51:18
longer
51:16,18
look
6:19 32:16 42:25
looked
7:14
looking
7:15 21:22

lot
17:8 27:12 39:19 50:9
55:23
lots
17:3 50:19

**M**

M
2:22
Maas
2:2 3:1,2,5,12,15,22
4:7,11 7:9 8:8,14,18
8:23 9:4,16,19 10:7
10:23 12:1,20 13:18
13:23 14:23 15:13
16:5,16,21 17:1 18:1
18:11,16 20:1,4 21:6
23:13 24:13 25:8,25
27:21 29:7 31:2,23
32:13,22 33:18 34:25
35:12 37:22 38:11,15
39:2 41:6,10 44:18
45:3 46:3,15,20 48:11
48:19 49:8,10,13
50:17 51:22 52:7,16
52:25 53:3,13,17,20
53:25 55:20 56:16,19
Maas'
31:15
Madoff
1:7,10,13 8:2 9:20,23
9:25 10:24 12:25
15:19 31:8 33:11,19
33:25 34:5,17 37:7
38:12 39:9 41:17,19
55:7,11
Madoff's
10:1 33:3 34:11 39:15
40:7,20 55:13
Main
2:8
major
30:23
majority
39:8 41:5

making
31:18 32:10
management
33:13
manipulated
14:7 54:7
manual
27:4
manually
24:7
Marie
2:11 3:9
marker
24:8
market
31:18
massive
19:22
material
16:6 23:15 24:24 25:23
28:10 29:17 42:18
44:8 50:12
materials
19:7,8 43:4 48:6
matter
32:4 55:11
mcarlisle@bakerlaw...
2:12
mean
8:12 16:20 23:16 27:24
30:8,11 38:22 51:10
55:15
means
18:15 27:6 39:19
meant
38:4
mechanism
4:19
media
21:14
mentioned
25:19 26:16 28:7 45:12
metadata
23:19,21 24:2
meter

38:17
micro
28:6
microfilm
20:23 21:19 22:11,15
23:25 24:3,16 25:16
26:5,6 28:7,9 29:3
32:5
microphone
18:17
Miller
48:15
millions
13:3
mind
43:19
minimum
33:14 35:7 56:3
missing
10:24
misunderstood
40:8
modified
23:20
MONIQUE
1:22 57:3
monkey
47:16
month
38:8
monthly
13:1
months
38:6
morning
3:8 4:10,11,16 7:14
motion
6:21 9:14 15:1 48:21
49:3,4,12 50:15
motions
45:19
move
13:13 17:24 19:6 32:20
46:5 50:10
moved

50:7
**moving**
52:9
**multiple**
23:23
**mutual**
46:13

### N

**N**
2:6
**nailed**
50:3
**narrow**
14:15
**nature**
51:19
**necessarily**
5:21
**necessary**
44:5 54:18
**need**
3:25 12:5,16 19:19,19
   25:20 30:23 36:19
   47:1,9,10,12 53:11
   54:1
**needed**
31:13
**needs**
16:6 32:15 47:15 48:1
**neither**
57:12,14
**net**
5:22 55:21
**never**
8:11 25:13,17,22 37:10
   38:24
**new**
1:1,24,24 2:4,4,15,15
   2:20,20 3:6,14 20:11
   26:24 30:23 31:1,15
   32:8 37:9 57:4,4,5,20
**news**
6:6
**nine**

47:20
**non-PDF**
4:17
**Notary**
1:23 57:3,20
**note**
48:1
**noted**
56:25
**notes**
25:20
**notice**
52:24
**notifying**
21:14
**notwithstanding**
13:6
**NSC**
24:20
**number**
2:23 26:12 27:13,17
   28:25 29:11 36:8,9
   41:1 44:25 52:8
**numbers**
35:16 45:16
**numerous**
18:17

### O

**O**
2:1
**O/W/O**
1:17
**object**
42:22 43:8
**objected**
50:1
**objection**
16:25 43:3,7
**objections**
45:7 51:19
**obligation**
43:10 46:9
**obviate**
47:12

**obviously**
30:22 40:17 48:13 50:8
   51:2
**occur**
47:15 48:1
**occurred**
11:20 35:3 55:10
**office**
3:20 11:3
**officers**
46:8
**oh**
6:23 10:25
**okay**
3:22 4:12 6:5 8:23
   13:12 15:12 17:23
   27:23 28:3 30:7,17,17
   35:12,14 36:7 37:20
   38:11 39:2 41:8,9
   42:3 44:24 46:17,17
   46:20 48:11 49:8,13
   52:5,13,16,25 53:13
   53:19,25 54:20 56:19
**old**
55:17
**omnibus**
45:6
**on-the-record**
51:15
**once**
4:21 11:7
**open**
5:9 9:23
**opened**
32:9
**opinion**
14:14
**opportunity**
34:7 35:9
**opposed**
14:24
**order**
4:23,25 5:12,23 6:6,17
   7:17 8:25 9:7 10:6
   12:4 13:20 15:8,21,23

16:7 17:24 36:4 44:13
45:10,19 46:9,24 47:2
50:7,11
**orders**
4:3,15,21 5:4,6,8,11
   30:21,25 33:13 46:19
**original**
26:3 43:3
**originally**
45:9
**ought**
30:20 48:12 49:15
**overly**
11:14 43:6

### P

**P**
2:6,6
**p.m**
56:25
**package**
15:1
**page**
7:15 9:6 13:13,16,16
   15:13,15 53:18 54:3
**pages**
15:18 22:22 23:23
   27:16 44:19
**papers**
53:4
**paragraph**
6:19,20,21 9:5 10:8,16
   10:17 11:5,7 13:13,20
   13:21 14:2,3,21 15:3
   15:16 18:5 35:15 36:8
   42:22,25 43:2,8 44:5
   44:24 46:23 47:2,9,14
   50:21 53:15,18
**paragraphs**
13:6 14:6 49:22
**Park**
2:19
**part**
14:25 22:24 42:4,14
**particular**

Picard v Wilenitz                                Telephone Conference 1/5/2017

17:12 26:1
**particularly**
5:14 11:11
**parties**
33:2,8 40:18 45:21
  47:8,10,19 57:13
**partnership**
48:3 52:20
**party**
10:4 19:19 33:10
**PDF**
4:21
**pending**
31:8 38:21
**people**
5:24 18:24 46:5 50:11
**percent**
44:12
**percentage**
19:25
**perfect**
36:7,7 44:12
**perfection**
44:14
**perfectly**
44:1
**period**
17:5 41:16 46:4 54:24
  54:25
**periods**
20:22 35:5
**Perlman**
6:6
**permitted**
33:24
**person**
3:14
**personal**
50:13
**phone**
3:18 52:8
**Picard**
1:12 2:17
**picture**
17:11,12

**pile**
53:4
**place**
34:14
**Plaintiff**
1:15
**Plaintiff-Applicant**
1:4
**plan**
45:5
**platform**
21:15
**play**
34:24
**Plaza**
2:14
**plus**
28:6
**point**
19:5 20:9 29:18 30:6
  31:21 32:1,6 33:7,16
  37:8 54:21
**pointed**
37:1
**points**
4:2,14 45:10
**position**
10:20 39:7,12 48:22,25
**possession**
9:8 12:16
**possibility**
12:21
**possible**
20:25 21:19 23:4 47:23
  52:18
**possibly**
5:3 8:11 9:24 55:3
**potential**
56:2
**potentially**
47:25 50:22
**practice**
5:7 9:14
**precise**
54:5

**preclude**
11:5
**prefer**
5:11
**prejudice**
44:4
**preliminary**
6:3 24:18
**premised**
47:3
**preparing**
35:24
**present**
11:15 30:24
**presently**
35:19
**prevails**
41:3
**previously**
29:4,13 35:20
**prior**
11:20 18:9 24:21 39:17
  39:23 40:12
**privacy**
16:19,20
**Pro**
1:3,13
**probably**
5:2 13:4 19:4 36:1
  47:20 55:23
**problem**
8:19 10:24 35:24 36:16
  45:20 48:20
**procedure**
9:21 21:7 34:13
**proceed**
46:9
**proceeding**
38:6
**proceedings**
28:15 47:24
**process**
24:4 29:9
**processed**
28:10 29:13,16

**processing**
28:8
**produce**
9:8,12 10:5,13 15:18
  16:1 18:13 21:11 23:7
  25:23,24 28:18 29:19
  30:16 32:16 44:3,8
  48:4
**produced**
11:15,24 12:17 16:6
  19:24 24:22 25:7
  26:13 27:11 28:20
  29:2,21 36:14,14 48:6
**producing**
28:11
**production**
21:13 22:9 25:5 26:3
  29:20 42:5,15 43:10
**profit**
36:10 38:5
**project**
20:24 22:23
**promptly**
45:20,22 46:6,9,14
**proof**
36:11 54:13
**properly**
38:24
**proposed**
4:25
**PROTECTION**
1:3
**protective**
50:7,10
**provide**
22:13 23:10 40:16 44:9
  45:5,5,13
**provided**
20:18 28:23
**provides**
33:12
**Public**
1:23 57:4,20
**pull**
53:11

Picard v Wilenitz                                    Telephone Conference 1/5/2017

purchased
37:6 40:10
purchases
17:10
purported
17:9
purpose
9:13
purposes
9:23
pursuant
9:20 12:12 31:9
put
20:17,25 25:3 27:20
   36:23 45:24 52:11
   53:23
putting
28:1 29:24 30:9,9,11
   46:4
PW
42:9,16
PW-related
41:23

**Q**

quality
22:21,25
question
14:18 20:2 33:19
questioning
33:25 34:16
questions
18:4 34:23
quickly
20:24 23:3
quite
32:11,11

**R**

R
2:1,6
raised
17:20
raising
43:15

raw
22:16
re-reviewed
48:16
read
7:11 10:19 15:22 37:25
   38:12,16 40:7,9 48:16
reading
15:3
realistically
34:18
realize
11:24
really
38:25 41:2
reason
9:18 21:24 22:12 24:21
   35:1 43:7 51:5,17
recall
9:19 18:16
receive
24:5,16
received
8:6,13 23:20 48:8,14
   52:21
recite
53:21
recognize
12:21
reconstruct
10:21
record
5:19 29:8 30:14,15
   52:14
records
13:2 17:17 18:9,13,17
   19:22 20:7,8 26:4,22
   29:21 30:4,12 31:25
   35:17 48:3
recover
54:15
redactions
16:18
reels
24:16 25:17 28:6 29:10

29:13
referenced
26:9
references
27:12
referring
24:12 44:16
reflect
30:4 42:23
reflected
6:23,24 14:21 17:3
reflecting
29:17
regard
5:15
regarding
20:7 42:16
rejected
15:1
relate
9:9 11:16,22 17:5
related
8:1 15:19
relates
5:12 10:11
relating
11:19 12:14,25 15:25
   15:25 45:19
relative
57:12,14
relatively
12:24
relevance
16:18 39:1
relevant
11:25,25 12:12 24:24
   28:12 29:16,23 30:8
   39:8 43:10 55:3,17
relies
27:12
rely
42:8
relying
19:15
remain

9:23
remaining
9:9
reopening
32:17
repeatedly
52:14
report
24:10 27:2,8,10,13,15
   29:6 42:9,13,20 43:22
reporter
1:23 3:10,16 52:11
   57:5
reports
20:15,22 22:10 24:20
   25:1 26:8 28:19 30:4
   31:17 32:6 38:24
   44:10
representation
18:14 19:12
request
35:16,25 36:9,10,12
   41:11,14 42:6 43:3,5
   44:2,25 45:16
requested
12:11
requests
12:13 36:3
require
18:22
requires
44:14 54:7
reserved
19:17
resolve
52:18
resolves
46:18
respect
4:25 6:17 7:6 9:24
   13:13 14:1,10,20
   16:11 19:20 20:21
   28:19 34:5,12 35:16
   49:7 50:7,11 52:2
respond

Picard v Wilenitz                          Telephone Conference 1/5/2017

35:15
responded
6:13
responds
31:4
response
10:6
responses
35:25 45:7,12
responsive
41:14
rest
9:2
restoration
20:23 21:18 22:3 23:3
restored
22:10,15,16 24:1,3,17
  25:17,22 26:6 29:4
restoring
18:17
restrictions
51:2 56:12
results
24:25
RET
2:2
retrieved
11:4
return
15:18
review
21:15 22:17 24:6 25:15
  42:8
reviewed
25:14 26:22
revised
37:13 42:22 52:19
revision
43:8 44:5
right
7:18 8:10 9:16 11:12
  18:11 23:24 30:2,11
  30:20 33:16 35:8,25
  38:15 43:22 44:16
  45:3 49:7

robust
19:9
Rockefeller
2:14
room
20:17,17,25 21:11,17
  23:7 26:11,12,19,23
  27:2,4,5,9,20 28:1,13
  28:25 29:19,25
routinely
5:5
RPR
1:23
rule
46:13 50:24
ruled
50:6,16
ruling
6:19
rulings
47:22
run
38:17
running
40:22

_____
S
_____

S
2:6
Sachs
15:24
sake
23:8
sales
17:9
saw
15:8
saying
7:22 16:13 25:12 30:8
  54:9
says
9:6 10:25 11:7 35:15
  36:9 49:20
schedule
7:5 15:19

scheduled
33:5 35:3,11 38:10
schedules
15:25 17:8
scheduling
30:21
screen
29:23
search
19:9 24:23,25 26:16
  30:2 53:4
searches
24:19
searching
24:22
second
6:20 7:10,15 18:2 33:4
  33:19 35:2 37:19,23
  37:24 38:1,7 53:12
securities
1:3,7,14 29:17 30:4,15
  32:2,5 37:5,10 40:11
see
7:17 8:10 11:10 25:23
  38:25 43:15,16 47:10
  49:6 51:17
seen
25:22 26:8,18 34:10
self-serving
40:20
send
29:19 41:7
sending
22:6
sense
38:16
sent
4:16 18:10 23:20 25:18
  28:8 47:5
serve
44:2
served
36:1 42:5 45:9
set
14:3 33:23 34:13 35:6

46:23 50:1 57:10
seven
22:8 34:2 51:7,11
she'll
21:13
Sheehan
34:3,8,21
short
4:23
show
17:8,9
showed
55:7
shown
17:4 37:11
side
5:17 8:21 11:9
sides
7:13
signed
5:4
significantly
41:4
Similarly
45:4
simply
6:7
simultaneously
20:18 21:12
single
27:18 42:16 44:11
SIPA
1:5
sit
44:10
sitting
10:11
situation
37:2
six
21:21
sixteenth
17:15,18
skim
41:7

Picard v Wilenitz                                    Telephone Conference 1/5/2017

skipped
22:22
skipping
7:24
small
12:24 19:24 41:1
SMB
1:4,13
solely
7:6 35:16
solve
35:24
somebody
3:12,16
soon
23:4 25:6
sooner
36:1
sorry
21:5 23:17
sort
13:7 46:25
SOUTHERN
1:1
space
52:11
speaking
51:18
specific
20:7 29:20 41:23 42:10
  43:18 46:13
specifically
23:22 31:8
specified
21:1
speculate
32:22
speed
53:14
split-strike
39:18 40:12
spouse
50:14
stage
13:10 17:6 36:15,18,20

41:18
stands
14:9
start
22:19 23:22 24:7 40:18
started
37:9 39:5 40:13
starting
28:11
State
57:5,20
statements
13:1 35:17 37:11 43:16
States
1:1,24 57:4
Stearns
15:24
stenographically
57:9
stipulate
6:9,15,16 8:12 54:8,9
  54:19
stipulated
5:25 6:2 7:3 49:20
stipulates
54:11
stipulating
8:3
stipulation
5:15 7:7 14:3,10,16,21
  15:3 46:22,22 47:3
  49:23 50:22 52:19
  54:7 55:25
stipulations
5:20 47:11,12
stock
24:20 38:23
stopped
37:8
storeroom
18:24
straightened
4:20
strategy
37:9,10 40:13

Street
2:8
strikes
46:24
strongly
39:7
structured
27:3
subject
22:24 28:20 51:2,16
subjects
33:25
subsequent
7:8
subsequently
10:14
Substantively
1:6
sufficiently
19:9
suggest
56:5
suggested
47:8,9
suggestions
5:9
Suite
2:9
summary
49:4
suppose
47:21
sure
5:10 9:4 13:18 18:1
  22:20,22 23:16 25:4
  25:11 30:19 34:22
  35:5 36:25 49:22 52:7
Switzerland
11:3

_____
T
_____

tails
16:10
take
18:7 19:3,19 36:19

48:12 49:15 51:4,11
52:18 56:4,21
taken
1:22 39:12 54:16 57:8
takes
23:1
talk
34:15 44:17
talked
37:24
talking
7:19 13:2 14:25 29:11
  41:22 43:14,17 53:2
talks
29:8
target
52:9
tax
15:18
taxes
16:12
technological
22:2,14 24:4
technologically
27:19,24
Ted
3:9 25:10 40:8
Ted's
39:7
tedious
22:23
telephone
1:21 4:5 57:8
tell
11:1 24:9 33:6 40:19
  48:5 50:25
telling
44:6
tells
23:22
ten
9:6 11:9
tens
27:17
terms

Picard v Wilenitz                    Telephone Conference 1/5/2017

20:6 26:16 30:2 51:2
**testimony**
10:1 33:4,11 35:8
  39:15 40:10,20 55:3
  55:18
**Texas**
2:9
**thank**
15:10 49:2 56:19,22,24
**theoretical**
12:21 13:11 44:15
**theoretically**
43:14
**thing**
23:13 50:6
**things**
5:1 18:20 26:24 45:21
  48:5 51:19
**think**
4:19 10:7 12:4 13:10
  13:24 16:7 17:2,20
  19:3,8,8,12 21:22
  22:8 32:15 33:2,7,15
  34:8,20,21 35:6 39:6
  40:7,9 41:20 42:24
  44:12 45:21 46:8 47:6
  48:18,24 49:1,11
  51:13 53:6
**thinking**
43:22
**third**
10:3,25 17:24 19:19
  33:10,20
**thought**
10:9 15:7
**thousands**
13:4 27:17
**three**
5:13 10:20 46:19 51:10
**throw**
47:16
**Thursday**
1:24
**time**
9:12 10:25 11:15 19:6

20:9,19,22 21:3,22
  23:1,20 26:7 28:17
  29:18 30:6,24 31:22
  32:7,11 35:5,22 36:4
  37:19,24 38:4 42:12
  45:14 46:4 51:3,15
  52:15 56:25
**time-intensive**
22:23
**today**
5:10 10:11 22:13 27:9
  48:9,12 49:16
**tomorrow**
48:10
**topics**
33:23,24 34:6,12,15,19
  35:2
**total**
20:16
**totally**
13:11
**track**
52:6
**trade**
32:2 37:3,4
**traded**
30:15
**trades**
30:5,10,11 31:18
**trading**
18:9 19:22 20:7 24:20
  26:22 29:17 30:12,14
  30:15 31:17 32:6 37:9
  38:24
**Train**
5:13,23 6:18 7:20 14:2
  14:9,20,24 15:2 46:24
  47:7 48:3 52:20,21,24
  53:24
**transactions**
11:20 36:10 42:16
**transcript**
1:21 7:14,16 15:4,7
  38:17 40:15 44:22
  52:11 57:8

**transfer**
7:21 8:9 43:17
**transferred**
7:1
**transfers**
7:8
**transparency**
23:9
**travel**
52:4
**trial**
6:22 9:14,15 49:5
**trouble**
4:18
**true**
45:16 57:7
**trust**
1:17 50:14
**Trustee**
1:12 2:17 3:10 4:24 5:5
  6:8 7:12 8:2 10:5,15
  14:6,13 16:8 17:6,11
  18:6 19:4 31:4 34:3
  35:15,18 39:12 43:9
  45:1 48:4,5 54:6,13
  54:15 56:3
**Trustee's**
7:5 12:2 16:8 17:19
  19:16 48:21
**try**
24:23
**trying**
8:5 10:8,21 17:7 37:25
  46:2 52:6 53:3
**turn**
6:4
**two**
14:24 15:6,18 20:16
  26:8 28:21 51:9 53:2
  54:16
**two-year**
54:24,25
**type**
12:8,9 31:17 43:20
**types**

20:22
**typo**
13:24

---
**U**
---

**U/ART**
1:17
**un-withdrawn**
10:12
**unable**
6:16
**uncomfortable**
44:13
**underlying**
42:7 44:8
**understand**
7:12 23:14 28:2 32:13
  32:14 36:25 37:25
  39:6 53:7
**understanding**
33:5 45:25
**undue**
45:22
**unfortunately**
21:24 22:25
**UNITED**
1:1
**unitization**
24:11
**unitize**
22:18
**unitized**
23:15 25:2
**unsuccessful**
32:12
**update**
21:15 22:6 23:11
**usually**
24:9

---
**V**
---

**value**
7:23
**vast**
39:8

Picard v Wilenitz                                    Telephone Conference 1/5/2017

Page 73

| | | | |
|---|---|---|---|
| **vendor** | **we've** | 11:23 12:11 42:22 | 6:10 14:6,10 49:22 |
| 22:24 25:18 29:9 | 11:15 20:13 27:11 28:8 | **wrench** | 54:8,11 56:1,10 57:21 |
| **view** | 32:25 51:20 52:14 | 47:17 | **10-04995** |
| 7:5 38:19 48:19 | **week** | **write** | 1:13 |
| **viewed** | 36:1 | 34:8 | **100** |
| 28:13 | **week's** | **writing** | 28:6 44:11 |
| **voluminous** | 36:4 45:14 | 6:14 | **10018** |
| 27:14 | **weekend** | **wrong** | 2:4 |
| **VOUTHOURIS** | 56:20 | 33:6 | **10022** |
| 1:22 57:3 | **weeks** | **wrote** | 2:20 |
| | 21:21 | 18:5 24:17 | **10111-0100** |
| **W** | **wholly** | | 2:15 |
| **waffling** | 50:23 | **X** | **11** |
| 19:2 | **widow** | | 44:25 |
| **wait** | 54:22 55:17 | **x** | **11:00** |
| 3:23,25 37:22 | **Wilenitz** | 1:2,9,12,19 | 1:25 |
| **waive** | 1:17 17:25 | **X100834** | **1100** |
| 14:17 | **withdraw** | 57:6 | 2:9 |
| **want** | 53:8 | **XXX-XXX-XXXX** | **12/31/91** |
| 3:23 4:1 10:20 14:8,19 | **withdrawal** | 52:10 | 39:25 |
| 19:12 28:2 31:14 | 7:21 8:1 13:2 36:10 | | **12:11** |
| 36:24 38:17 43:15,16 | 38:6 55:7,9,10 | **Y** | 56:25 |
| 47:16,17 54:10 | **withdrawals** | **yeah** | **13th** |
| **wanted** | 7:6,22,23 8:3 14:8 | 7:18 9:1 16:21 23:17 | 5:1 |
| 4:17 24:14 35:22 48:1 | 49:21 54:6,15 | 24:15 30:13 32:23 | **14th** |
| **wanting** | **withdrawn** | 36:6 49:11 | 2:15 |
| 33:2 | 6:25 | **Year** | **15** |
| **wasn't** | **withholding** | 3:6 | 45:16 |
| 43:4 48:13 | 42:18 | **years** | **16** |
| **way** | **witness** | 10:21 17:5 18:9 26:12 | 45:16 |
| 7:11 14:13 15:22 21:17 | 52:5 | 29:1 31:25 54:16 | **167** |
| 23:25 44:22 56:1 | **worded** | **yesterday** | 29:10,13 |
| **ways** | 44:22 | 48:9 | **17** |
| 55:25 | **words** | **yielding** | 31:20 |
| **we'll** | 9:25 15:22 51:22 | 25:1 | **18** |
| 5:10 28:11 31:2 32:16 | **work** | **York** | 45:16 |
| 36:5 44:3 45:13 | 23:2 31:11 32:24 39:1 | 1:1,24 2:4,4,15,15,20 | **19** |
| **we're** | 45:21 | 2:20 57:4,20 | 39:10 |
| 7:19 8:2 11:12,18 13:2 | **working** | | **194** |
| 13:10 15:13 20:12 | 21:18 50:2 | **Z** | 44:20 |
| 21:22 23:12 28:2 30:8 | **workload** | | **196** |
| 30:9 33:6,15 34:7,20 | 46:1 | **0** | 44:20 |
| 36:20 38:9 39:1 40:5 | **worry** | **08-01789** | **1970s** |
| 42:17,17 43:13,17 | 32:16 | 1:4 | 19:23 |
| 49:23 52:1,18 53:2 | **wouldn't** | | **1980** |
| | | **1** | |
| | | **1** | |

39:14
**1980s**
19:23 39:9
**1987**
37:13,18
**1992**
11:20 18:9 24:21 37:8
37:17 39:10,18,23
40:13,24

---
**2**
---

**2**
6:19,20 13:13 35:16
54:3
**20**
53:8
**2002**
31:25 37:2,6
**2008**
31:25
**2017**
1:25 57:24
**2019**
57:21
**20th**
18:6
**27**
53:8
**29**
53:8
**29th**
14:4

---
**3**
---

**3**
14:6 35:16 47:14 49:22
53:18
**34th**
2:3
**3rd**
6:7

---
**4**
---

**4**
9:6 13:16 18:5 36:9
41:11 53:18 54:9

**45**
2:14
**46**
53:8
**465**
2:19

---
**5**
---

**5**
1:25 6:10,23,24 13:13
13:16 14:10 15:13,15
24:21 31:17 35:15
54:8,10,11 56:1,10

---
**6**
---

**6**
9:5 10:9,17 11:5 13:6
36:8 57:24
**620**
2:3

---
**7**
---

**7**
10:8,16 11:7 13:6
**77002-6111**
2:9

---
**8**
---

**80s**
20:16
**811**
2:8
**84**
7:16
**87-year**
55:16

---
**9**
---

**9**
44:25
**92**
12:22
**93**
20:14 26:13 29:2
**95**
20:15 26:4 28:19

**From:** Keranen, Kristin L.
**Sent:** Sunday, June 25, 2017 10:10 AM
**To:** 'hchaitman@chaitmanllp.com'; 'AKratenstein@mwe.com'
**Cc:** Sabella, Michael A.
**Subject:** RE: 1980s trading records

Helen,

As Michael explained to Mr. Kratenstein on April 6, 2017, in 2009 we served subpoenas specifically calling for trading records on Chase Bank, Barclays, and Bear Sterns.  These entities produced records, which can be found in E-Data Room 1 in the "Financials" folder.  We have searched our Relativity database consisting of over 30 million BLMIS records for the search terms you requested.  The hit report is below.  As you can see, it is quite voluminous.  Moreover, as you know, you are welcome and able to utilize E-Data Room 1's search capabilities to conduct your own investigation and search for such records across the more than four million records we have made available in EDR1.  Approximately 800,000 of the records containing unique "hits" are located there.

| Name | Documents with hits (Documents that hit on this search term) | Documents with hits, including families (Documents that hit on this search term, plus their parent or attachments) | Unique hits (Documents that hit on only this search term) |
|---|---|---|---|
| "Bank of Tokyo" | 5,848 | 9,744 | 1,805 |
| Barclays | 303,996 | 653,284 | 221,434 |
| "Bear Stearns" | 765,598 | 916,630 | 657,327 |
| Chase | 999,707 | 1,121,276 | 348,647 |
| Chemical | 227,599 | 380,135 | 64,771 |
| "Commercial Bank" | 15,510 | 33,597 | 3,600 |
| Continental | 96,782 | 218,548 | 51,120 |
| Fidelity | 1,548,685 | 1,649,488 | 818,842 |
| "Irving Trust" | 336 | 422 | 102 |
| Lehman | 971,112 | 1,111,786 | 812,811 |
| "Loeb Rhoades" | 23 | 32 | 5 |
| "Manufacturers Hanover" | 2,453 | 2,839 | 1,046 |
| "Marine Midland" | 930 | 1,096 | 55 |
| Meadowbrook | 4,489 | 6,796 | 1,538 |
| "Morgan Stanley" | 708,745 | 816,575 | 86,797 |
| "National Bank of North America" | 259 | 320 | 226 |
| NSCC | 60,305 | 66,840 | 38,454 |

As for your questions regarding "trading records," there is some confusion surrounding that term that requires some clarification and context.  We consider a "trading record" as it relates to BLMIS to be a third-party record reflecting verifiable trading activity.  For the market-

making and proprietary trading business, BLMIS did conduct actual securities trades, which is confirmed by third-party data, including data from the Depository Trust & Clearing Corporation ("DTCC").  Years ago, in connection with your request for such documents, we produced and made available in E-Data Room 1 all available documents reflecting verifiable trading conducted by the market-making and proprietary trading businesses.  However, we never located similar records for investment advisory ("IA") customers for any period of time.

Beginning in 2016, in connection with your evolving challenge to the "start date" of the Ponzi scheme and the discovery arbitration held in *Picard v. Wilenitz*, we once again endeavored to locate additional third-party records reflecting verifiable trading activity from the earlier periods of the Ponzi scheme.  Despite the fact that Judge Maas only ordered the Trustee to produce, to the extent he had not already done so, third-party records reflecting verifiable trading activity of the kind that has long been available to all parties in E-Data Room 1, we nevertheless made several comprehensive productions—including (i) <u>all</u> documents responsive to the search terms "depository trust" and "national securities"; (ii) <u>all</u> documents restored from 201 reels of microfilm from the pre-1992 period; and (iii) <u>all</u> documents responsive to 147 additional search terms applied across the BLMIS Database—that were intended to enable you to conduct your own investigation into any purported trading activity at BLMIS.  To our knowledge, these productions did not contain any third-party records reflecting verifiable trading activity at BLMIS, and instead consisted of internal BLMIS "reports" reflecting <u>un</u>verified trading activity.  In taking these steps, we have gone above and beyond what Judge Maas ordered and have been transparent with you about our restorations, searches, and productions every step of the way.  In fact, this is the first time you've objected to the search terms we've used, despite the fact that we provided them to you nearly four months ago.

If there are any other specific steps you feel that we should be taking to locate such records, please adhere to Judge Maas's order, review the indices previously provided to you, and send to us a letter specifically identifying the additional documents you seek to have produced, and where you believe they may be found.  As Judge Maas noted, pursuant to Bankruptcy Rule 7026, Rule 26 of the Federal Rules of Civil Procedure applies to adversary proceedings.  Rule 26, in turn, requires that discovery requests be limited to items that are relevant to a party's claims or defenses and proportional to the needs of the case.


Regards,

**Kristin Keranen**
Counsel

BakerHostetler

45 Rockefeller Plaza
New York, NY 10111-0100
T +1.212.589.4600

kkeranen@bakerlaw.com
bakerlaw.com



**From:** Helen Chaitman [mailto:hchaitman@chaitmanllp.com]
**Sent:** Thursday, June 22, 2017 10:51 AM
**To:** Sabella, Michael A.
**Cc:** Kratenstein, Andrew
**Subject:** RE: 1980s trading records

Michael:  I don't mean to pester you but we are anxious to get all of the trading records produced so that we can proceed with depositions regarding the newly-produced documents.  It is essential that we be given the entire universe of documents, rather than have you do searches on terms you unilaterally select on a body of documents that we don't have.  Please let me know when the production will be completed.

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell:  (908) 303-4568
Fax:  (888) 759-1114

**From:** Helen Chaitman
**Sent:** Tuesday, June 20, 2017 6:09 PM
**To:** Sabella, Michael A. < msabella@bakerlaw.com >
**Cc:** Kratenstein, Andrew < AKratenstein@mwe.com >
**Subject:** RE: 1980s trading records

Michael:  I look forward to your response to my email.  Also, please include production of all National Westminster Bank and NatWest documents.

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell:  (908) 303-4568
Fax:  (888) 759-1114

**From:** Helen Chaitman
**Sent:** Monday, June 19, 2017 11:35 AM
**To:** Sabella, Michael A. < msabella@bakerlaw.com >
**Cc:** Kratenstein, Andrew < AKratenstein@mwe.com >
**Subject:** 1980s trading records

Michael:  The search terms you used for the 1980s trading records have omitted some essential terms.  As a preliminary matter, would you be good enough to run the following search terms so that we pick up third party documents from the following firms:

Bank of Tokyo

Barclays
Bear Stearns
Chase
Chemical
Commercial Bank
Continental
Fidelity
Irving Trust
Lehman
Loeb Rhoades
Manufacturers Hanover
Marine Midland
Meadowbrook
Morgan Stanley
National Bank of North America
NSCC

Also, am I correct that you have not produced the entire body of 1980s trading records?
Have you only produced the documents responsive to your search terms?
These are not search terms on which we were consulted and I would never have chosen those search terms.
We request that you immediately supplement your production to include the entirety of the trading records that had not been put in the E-Data room.
This is what Judge Maas ordered the Trustee to produce.


Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell:  (908) 303-4568
Fax:  (888) 759-1114

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - x

4   SECURITIES INVESTOR PROTECTION

5   CORPORATION

6   v.                              CASE NO. 08-01789-smb

7   BERNARD L. MADOFF INVESTMENT

8   SECURITIES, LLC, et al,

9            Debtors.

10  - - - - - - - - - - - - - - - - - x

11  IRVING H. PICARD, TRUSTEE,

12           Plaintiff,

13  v.                              CASE NO. 09-01161-smb

14  KINGATE GLOBAL FUND,

15  LTD., et al.,

16           Defendants.

17  - - - - - - - - - - - - - - - - - x

18  IRVING H. PICARD, TRUSTEE,

19           Plaintiff,

20  v.                              CASE NO. 10-04946-smb

21  GOLDENBERG,

22           Defendants.

23  - - - - - - - - - - - - - - - - - x

24

25

Page 2

```
 1                        U.S. Bankruptcy Court

 2                        One Bowling Green

 3                        New York, New York

 4

 5                        July 26, 2017

 6                        10:09 AM

 7

 8

 9    B E F O R E :

10    HON. STUART M. BERNSTEIN

11    U.S. BANKRUPTCY JUDGE

12

13    ECRO:   Unidentified

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

1    Conference re: Madoff Day 2 Deposition Topics

2

3    Discovery Conference Pursuant to Local Bankruptcy Rule

4    7007-1

5

6    Conference regarding status of factual stipulation in

7    advance of motions for summary judgment

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sherri L. Breach, CERT*D-397

Page 4

```
 1   A P P E A R A N C E S :

 2   BAKER & HOSTETLER, LLP

 3        Attorneys for BLMIS, Trustee

 4        45 Rockefeller Plaza

 5        New York, NY  10111

 6

 7   BY:  GERALDINE E. PONTO, ESQ.

 8        MARSHALL J. MATTERA, ESQ.

 9        DAVID J. SHEEHAN, ESQ.

10        STACEY A. BELL, ESQ.

11        AMANDA E. FEIN, ESQ.

12

13   CHAITMAN, LLP

14        Attorneys for large group of defendants

15        465 Park Avenue

16        New York, New York 10022

17

18   BY:  HELEN DAVIS CHAITMAN, ESQ.

19

20   MCDERMOTT, WILL & EMERY, LLP

21        Attorneys for Sage defendants

22        340 Madison Avenue

23        New York, New York 10173

24

25   BY:  ANDREW B. KRATENSTEIN, ESQ.
```

Page 5

1    SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

2         Attorneys for Tremont

3         Four Times Square

4         New York, New York 10036

5

6    BY:  SETH M. SCHWARTZ, ESQ.

7

8    SCHULTE ROTH & ZABEL, LLP

9         Attorneys for Picower Parties

10        919 Third Avenue

11        New York, New York 10022

12

13   BY:  MICHAEL KWON, ESQ.

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

```
 1                       P R O C E E D I N G S

 2              THE COURT:  Let's do the Goldenberg matter first.

 3              MR. SHEEHAN:  Your Honor, David Sheehan for the

 4      trustee.  I've been advised by Mr. Murphy that late last

 5      evening they were able to reach a stipulation which will be

 6      shortly filed with the Court.  And so they would

 7      respectfully request that the matter be adjourned today.

 8              THE COURT:  What's the next date that you have?

 9              MR. SHEEHAN:  I don't have one.

10              THE COURT:  You don't?  August 23rd.

11              MR. SHEEHAN:  Thank you, Your Honor.

12              THE COURT:  Let's do the Kingate matter next.

13         (Pause)

14              THE COURT:  Who wrote the first letter?

15              MR. MATTERA:  I did, Your Honor.  Marshall Mattera

16      for the trustee.  And I'm here with my colleague, Geraldine

17      Ponto.

18              THE COURT:  How do you do?  You have the floor.

19              MR. MATTERA:  Good morning, Your Honor.  We're

20      here today because we wrote a letter to the Court requesting

21      a conference regarding a discovery dispute in the adversary

22      proceeding, Picard versus Suretti (ph), which is adversary

23      proceeding 09-01161-smb.

24              The trustee served non-party, Tremont Group

25      Holdings, with a Rule 45 document subpoena on June 7th,
```

Page 7

1    2016.   The trustee has been trying in good faith to reach a

2    consensual resolution for over a year, but has now

3    determined that it cannot obtain compliance with certain

4    requests in that subpoena.   Those requests are numbers one

5    through four and seven through eight of the subpoena which

6    is attached as Exhibit B to the trustee's letter.

7            The request seek Tremont's communications and

8    other documents concerning key players that are specific to

9    the operation and management of the Kingate Funds, which are

10   the defendants in this proceeding.

11           This information will bear on the fund's state of

12   mind and business relationships, including the element of

13   actual knowledge that this Court has addressed in its orders

14   substantially denying the fund's motion to dismiss.

15           Tremont persists in challenging relevance, but

16   it's indisputable that Tremont has relevant and responsive

17   information.   Tremont was co-manager of the defendant,

18   Kingate Global, for over a decade.   Tremont's founder,

19   Sandra Manskey (ph), introduced Seridian Grasso (ph) to

20   Madoff and then served on Defendant Kingate Global's board

21   of directors for ten years while she was also an officer at

22   Tremont.

23           Tremont also has asserted that its productions

24   eight years ago contained documents responsive to the search

25   terms that the trustee has proposed in this proceeding.

Page 8

1          However, those productions were in response to a

2     Rule 2004 subpoena issued toward the outset of the trustee's

3     investigation.   The productions were in response to

4     different requests and were produced using search terms that

5     are different to the search terms the trustee has proposed

6     here which are specific to this proceeding.

7          Tremont also has objected that it lacks the

8     resources to comply with this subpoena, but it has provided

9     no information to substantiate this claim.

10          Nevertheless, over the past more than a year the

11     trustee has proposed numerous compromises which would have

12     eliminated the burdens Tremont has complained of.   As to

13     electronic documents the trustee proposed to further narrow

14     its already narrow search terms.   The trustee also proposed

15     to exchange discovery related technical information with

16     Tremont to control costs.   The trustee even offered that

17     Tremont could produce all documents responsive to these

18     narrow search terms and the trustee would review those

19     documents subject to a claw back arrangement.

20          In response, Tremont has rejected these

21     compromises and offered none of its own.   Tremont agreed to

22     run the further narrowed list of search terms resulting in

23     approximately 50,000 electronic documents, but Tremont

24     refuses to produce any documents unless the trustee pays its

25     bender cost of production and $500,000 that it estimates

Page 9

1    will be the cost of its own attorneys to review for

2    responsiveness and privilege prior to production.

3              Under the trustee's proposals these costs would

4    have been entirely unnecessary.  As to privilege, there are

5    adequate protections available to Tremont that would address

6    this concern.  There are the protective orders in this case

7    that have claw back provisions and other protections.

8    There's a claw back provision in Rule 45, and the trustee

9    even offered to negotiate a claw back arrangement that would

10   address any remaining concerns as to this issue.

11             As to responsiveness, that review that Tremont

12   insists that it conduct itself is also unnecessary.  The

13   terms that the trustee has proposed track the request and

14   the -- these search terms are agreed upon, and the trustee

15   offered to do the review itself.

16             As to Tremont's hard copy documents, it has stated

17   that it has approximately 1,200 boxes of documents that are

18   potentially relevant and responsive to the trustee's

19   requests.  The trustee also offered to review those

20   documents at their physical location at the trustee's

21   expense.  Tremont rejected that compromise, too, without

22   offering any compromise of its own.

23             The trustee also proposed that this be resolved by

24   a discovery arbitrator.  Tremont refused to consent.

25             Therefore, the trustee intends to move for an

1    order compelling Tremont to produce documents responsive to

2    the requests.

3             THE COURT:  Thank you.

4             MR. SCHWARTZ:  Good morning, Your Honor.

5             THE COURT:  Good morning.

6             MR. SCHWARTZ:  Seth Schwartz for Tremont.

7             As we set forth in our letter Tremont does not

8    have resources to do these searches.

9             THE COURT:  Is that what the issue is, resources

10   as opposed to relevance or something else?

11            MR. SCHWARTZ:   Oh, it's relevance, too.  But, I

12   mean, it's -- when you're doing the burden analysis one of

13   the factors, of course, is resources.  Another factor is is

14   it worth the money to go after all this stuff when you're

15   going to turn up something that's totally irrelevant anyway.

16            Now we -- Tremont litigated these cases for many,

17   many years and the issue in all these cases is the same,

18   what did Tremont know about Madoff.  And the issue as I

19   understand it --

20            THE COURT:  Well, it's a little different here.

21   It's what did Kingate know about --

22            MR. SCHWARTZ:  Right.

23            THE COURT:  -- Madoff.

24            MR. SCHWARTZ:  Exactly.

25            THE COURT:  And how the communications -- I would

Page 11

1    think that due diligence that was conducted on Madoff,

2    communication -- which may have been produced already,

3    communications between Tremont and Kingate or some of these

4    other advisors relating to investments would certainly be

5    relevant.  I don't know if they were part of the prior

6    production.

7            MR. SCHWARTZ:  Well, when we were working things

8    out with Mr. Picard's lawyers way back when we turned over

9    everything that we had relating to Tremont's due diligence

10   on Madoff.  And --

11           THE COURT:  Okay.

12           MR. SCHWARTZ:  -- if there were anything that had

13   the name Kingate on it in connection with that due diligence

14   it was produced or would have been produced.

15           The -- in theory it seems to make sense that there

16   might be communications between Tremont and Kingate relating

17   to Madoff that bear on Kingate's knowledge of Madoff.  But

18   the reality is that even though not only Tremont was co-

19   manager and, in fact, it was not -- it didn't do -- it

20   wasn't investigated by a search of Kingate.  It was

21   effectively raising assets for the manager of Kingate and

22   had no role in the oversight of investments in Kingate.  It

23   was essentially a mechanism for Tremont to place assets with

24   a Madoff feeder fund in the event its own (indiscernible)

25   funds ran out of capacity to invest directly with Madoff.

1          And Tremont and Kingate were effectively

2    competitors and they didn't talk shop about Madoff.  They

3    zealously guarded whatever they knew and were not interested

4    in sharing that kind of information.

5          And I can -- Your Honor, if there were such

6    information it was called for again when we were directly

7    negotiating with Mr. Picard's lawyers.  And if anything like

8    that existed it would have been produced.  It would have

9    been well within the search parameters that were done years

10   ago.  And we've literally over the course of the years

11   turned over everything that Tremont has that's directly

12   relevant to due diligence, the communications relating to

13   Madoff, and we have no reason to believe that there's

14   anything else out there that truly is relevant that hasn't

15   already been produced.

16         And during the course of these -- this year-long

17   meet and confer that we've had, we've essentially begged

18   counsel to explain to us specifically what kinds of

19   documents that they haven't already seen that you think we

20   have that would be relevant.  And, you know, we don't get a

21   response to that.  We just get search terms.

22         So we went along with that and we did these

23   searches and we came up with thousands and thousands of

24   hits, again, without any reason to believe that any of them

25   are relevant.

Page 13

1           Now I happened to bring with me today just a

2    couple of e-mails that are representative of what you get

3    when you get these searches.  And on the face of them you

4    can see they have -- they're basically innocuous

5    communications that have nothing to do with -- I'm sure have

6    nothing to do with the issues in the case against Kingate.

7           So when you look at the lack of relevance, the

8    lack of potential relevance, the extraordinary cost

9    involved, it seems to me that if plaintiff could come up

10   with a specific list of documents that they don't think they

11   can get from Kingate that Tremont would have, then we would

12   have something to talk about.  But otherwise it's just a

13   classic fishing expedition.

14          THE COURT:  Well, one of the -- I mean, I'm not

15   going to tell you you can't make a motion to compel

16   discovery.  Another way to do it is to identify a hundred

17   documents.  You produce them, I'll look at them and if it

18   looks like this is just a fishing expedition and you still

19   want them, you'll pay for it, I guess.

20          But if you're going to make the motion and you're

21   going to make an argument that you just made, I need a

22   factual record for that, particularly if there's going to be

23   cost shifting.  I need a factual record for that regarding

24   ability and things like that.

25          So you can go ahead and make your motion and I'll

Page 14

1    deal with it in that manner.

2            Okay.

3            MR. SCHWARTZ:  Thank you, Your Honor.

4            MR. MATTERA:  Thank you,  Your Honor.

5            THE COURT:  The Madoff day two deposition topics.

6       (Pause)

7            THE COURT:  How are you?

8            MS. CHAITMAN:  Helen David Chaitman, Your Honor,

9    on behalf of the large group of defendants.

10           We are anxious to set a date for Mr. Madoff's

11   continued deposition.  It is not practical to hold off

12   taking that deposition until we review this massive set of

13   new documents which could -- it could take us a year to get

14   through that.  So I don't -- given Mr. Madoff's health and

15   his age, I think it's important that we take the deposition.

16   And if it turns out that we discover documents in these new

17   productions which will require questioning of Mr. Madoff and

18   he's still available, we'll have to come back to you and

19   seek permission.

20           THE COURT:  So you -- you're proposing to separate

21   the discovery issue from the continued deposition because

22   they were tied together last time?

23           MS. CHAITMAN:  Right.  But the -- now that the --

24   the trustee has now served a --

25           THE COURT:  Let me ask if the trustee has any

Page 15

1      objection to that procedure?

2              MR. SHEEHAN:  No, Your Honor.

3              THE COURT:  Okay.  So let's talk about the day two

4      topics right now.  Let's get that out of that way and then

5      we can deal with the discovery issue separately.

6              MR. SHEEHAN:  Sounds good.

7              THE COURT:  So what's the issue with the day two

8      topics?

9              MS. CHAITMAN:  Well, are you asking me?

10             THE COURT:  I'm --

11             MS. CHAITMAN:  From our perspective there were --

12     what Your Honor had previously indicated was that individual

13     attorneys would be able to pose questions that are specific

14     to their clients.

15             THE COURT:  Yeah.  But I remember and I think it

16     was Ms. Nevel who stood up and wanted to ask follow up

17     questions regarding day one topics.  And, you know, we

18     talked about that this was -- you were basically

19     representing the defendants who were still in there for the

20     purpose of deposition because everybody couldn't come into

21     the prison --

22             MS. CHAITMAN:  Correct.

23             THE COURT:  -- and do the deposition.  So I'm not

24     inclined to continue the day one deposition.

25             The day two deposition I thought I had intended

Page 16

1    that if people had specific questions about that -- who were

2    still involved, if they had specific questions about their

3    accounts or, you know, I guess if he had knowledge of their

4    accounts they could ask about it.  It doesn't sound --

5              MS. CHAITMAN:  The only --

6              THE COURT:  -- like it's going to be a terribly

7    long deposition.

8              MS. CHAITMAN:  The only exception I would ask for,

9    Your Honor, is that as you may recall the trustee, pursuant

10   to Magistrate Judge Moss's January 7th, 2017 order has

11   produced about 500 reels of microfilm documents and some of

12   those are very, very important, and I would like the

13   opportunity because those were produced in April and I

14   didn't have the opportunity to question Mr. Madoff about

15   them.  I would like to be able to question him at least

16   about those.  I mean, I --

17             MR. SHEEHAN:  I have no objection, Your Honor.

18             THE COURT:  All right.  Fine.

19             MS. CHAITMAN:  Okay.

20             THE COURT:  And then the only other issue I think

21   that came up were these 302 reports?

22             MR. SHEEHAN:  Yes.  And we agree with the

23   examining on those.  So --

24             THE COURT:  All right.  So those are -- it sounds

25   like the three --

1                    MR. SHEEHAN:  I think those are the three areas

2        that you're --

3                    MS. CHAITMAN:  The only thing I would ask on the

4        302, it's a heavily redacted --

5                    THE COURT:  I saw it.  You know what, it doesn't

6        mean anything to me.

7                    MS. CHAITMAN:  Yeah, because it's so redacted.

8                    THE COURT:  But if you want to ask him about it,

9        it sounds like it's going to be about five minutes of

10       questioning.

11                   MS. CHAITMAN:  But is there a way, Your Honor, to

12       get the complete report?

13                   THE COURT:  That's an issue involving the

14       Department of Justice.

15                   MS. CHAITMAN:  Okay, because clearly it's not an

16       admissible document in its present form.

17                   THE COURT:  I agree with you on that.  I don't

18       know what you're going to ask him about it, but people seem

19       to want to ask him about it.  So I suppose you can ask him

20       what he said to the FBI.

21                   MS. CHAITMAN:  Mr. Sheehan did that already --

22                   THE COURT:  Yeah.  I saw --

23                   MS. CHAITMAN:  -- in the last deposition.  He went

24       into great length about it, but he didn't have the heavily

25       redacted 302.  But I --

Page 18

```
 1                THE COURT:  No.

 2                MS. CHAITMAN:  -- I've -- I find it objectionable

 3     to --

 4                THE COURT:  Well --

 5                MR. SHEEHAN:  Your Honor, if it was unredacted

 6     would -- I apologize for interrupting.

 7                THE COURT:  I'm sorry.

 8                MR. SHEEHAN:  I'm sorry.

 9                THE COURT:  You know, at best I guess an

10     unredacted document would set -- first of all, I'm assuming

11     it's admissible because it's an official report.  I don't

12     know.  Obviously, I'm not ruling on it.  But, you know, if

13     the document said Madoff said X, and Madoff says, I never

14     told these guys that, you know, I don't know where that

15     leaves us.

16                But, look, you can ask him about it.

17                MR. SHEEHAN:  I understand that, Your Honor.  The

18     reason I asked the question is that we asked obviously for

19     the complete document.  The U.S. Attorney, for its own

20     reasons undisclosed to us, decided that it didn't want to do

21     that and gave us those portions of it which they felt

22     directed, you know, to the issue of 1992 that --

23                THE COURT:  Is there a procedure by which you can

24     compel the production?

25                MR. SHEEHAN:  We did go through that procedure.
```

Page 19

1    It's called filing a certain letter or whatever.  The reason

2    I'm asking Your Honor the question, which realize

3    respectfully, is that if we can go back to the U.S. Attorney

4    and say, look, we're going to have trouble with admission

5    here unless we have a full document that both adversaries

6    and the Court can examine, maybe I can convince them at that

7    point because I'll be candid, Your Honor.  I see no real

8    purpose.  The U.S. Government's case as far as I'm concerned

9    is over.  We just settled the two, you know, estates.  And

10   there are no further criminal prosecutions.

11          So I see no reason why it can't be -- and there's

12   nothing in there that, you know, I could represent it

13   because I have read it.  Ms. Chaitman could also read it in

14   its entirety.  They will allow you to go down and read it,

15   but they won't let you, you know, copy it or do any of those

16   things.

17          THE COURT:  Well, I mean, that's up to her.  But

18   --

19          MR. SHEEHAN:  Right.

20          THE COURT:  -- the document itself in that form

21   would not be admissible.

22          MR. SHEEHAN:  Okay.

23          THE COURT:  I suppose you could call the agent's

24   also if they remembered.  But --

25          MR. SHEEHAN:  No.  That thought's occurred to us,

Page 20

1   but, you know, we've early on, there's a long history to the

2   U.S. Attorney and the trustee, we've asked in the past for

3   the assistance of the FBI and that's been denied to us

4   because of, again, pending criminal prosecutions and they

5   don't want to in any way potentially corrupt their

6   investigation or their trial.

7               Again, I would be more than happy to call, you

8   know, the two agents, Mr. Kelley and his colleague.

9               THE COURT:  Anybody can testify to what Mr. Madoff

10  told them, I suppose, on an issue that's relevant.

11              MR. SHEEHAN:  It's an admission.

12              THE COURT:  Well, it's an admission by the estate.

13              MR. SHEEHAN:  Yeah.  Right.

14              THE COURT:  Okay.  All right.  So the three

15  topics, general areas are the 302s, follow up questions on

16  specific accounts of the people who are still in it, and

17  this -- these 400 reels or whatever the number is --

18              MS. CHAITMAN:  The documents --

19              THE COURT:  -- or something in there.  Right.

20              MS. CHAITMAN:  -- that have just been -- yeah.

21              THE COURT:  Anything else?

22              MR. KRATENSTEIN:  No, Your Honor.

23              THE COURT:  All right.  So why don't you just

24  provide the usual order, with Picower out, and listing the

25  topics.

Page 21

```
1                MR. SHEEHAN:  All right.

2                MS. CHAITMAN:  Okay.

3                THE COURT:  Okay.

4                MR. SHEEHAN:  Thank you, Your Honor.

5                THE COURT:  Now let's deal with the discovery for

6      a minute.

7                You know, one of my concerns about discovery in

8      these cases is every time I had a hearing I get a little

9      more information, pre-existing information the next time I

10     have a hearing.

11               From what I've read, although it was in a

12     different adversary proceeding, Mr. Moss dealt with the

13     issue of the production of these 4,700 boxes I thought and

14     said to you, Ms. Chaitman, why don't you look at the list

15     and see if you can pull out what it is that you propose.

16               MS. CHAITMAN:  Here's the problem, Judge.  We just

17     got with the July 14th data this 183 --

18               THE COURT:  Yeah.

19               MS. CHAITMAN:  Yeah.  Okay.  So --

20               THE COURT:  So that's the universe of the 4,700

21     boxes we're talking -- oh, 5,300 boxes, whatever the number

22     is.

23               MR. SHEEHAN:  What that represents, that exhibit,

24     is the 5,300 tapes.

25               THE COURT:  Of tapes.  Okay.
```

1              MS. CHAITMAN:  Okay.  So the thing that's hard,

2    Judge, is that we had a conference call yesterday with three

3    people from Baker & Hostetler, Mr. (indiscernible), and we

4    asked questions about this document which we had not seen

5    before this letter.

6              And this was done by we were told an outside

7    vendor.  So if a tape is labeled something by an outside

8    vendor who is not knowledgeable about the case, who is not a

9    lawyer, I don't feel comfortable simply relying upon that

10   and making a decision which could impact my clients' --

11             THE COURT:  Uh-huh.

12             MS. CHAITMAN:  -- lives so significantly.  I

13   really feel that we need to go through these documents and,

14   you know, some of them -- look, obviously, some of them have

15   now been produced pursuant to Magistrate Judge Moss's order.

16   But the vast majority have not.

17             THE COURT:  Right.

18             MS. CHAITMAN:  And I think clearly we're entitled

19   to these documents.  These are documents that should have

20   been posted in the e-data room from inception.  They should

21   have been provided to Mr. Davinski (ph) along with a check

22   for $30 million so that the trustee's contention throughout

23   this case that Madoff never purchased securities for any of

24   the investors or advisory customers could have been tested

25   against the facts.

1              You know, with -- Mr. Picard has based his claims

2      upon this fundamental fact.  He has led us all to believe

3      that the e-data room contained the entire universe of

4      documents --

5              THE COURT:  I know the history.  As I understand

6      it, the dispute is who is going to pay for this.  The

7      trustee doesn't -- the trustee would produce this stuff, but

8      you would have to go and look at it at your own -- on your

9      own dime, on your own time.  That's what they're --

10             MS. CHAITMAN:  Yeah.  Okay.

11             THE COURT:  Is that a fair approximation, Mr.

12     Sheehan, of the trustee's position?

13             MR. SHEEHAN:  Your Honor, essentially that's part

14     of it, but I would like to be heard.  I --

15             THE COURT:  Yeah.

16             MR. SHEEHAN:  -- don't want to interrupt here.

17             THE COURT:  Okay.

18             MS. CHAITMAN:  Okay.  When I was here last time,

19     Judge, I had no idea -- we hadn't been provided with this

20     document which we learned last night --

21             THE COURT:  Okay.

22             MS. CHAITMAN:  -- has been in existence for --

23             THE COURT:  Okay.  So now you have it.  What --

24             MS. CHAITMAN:  -- since 2010.

25             THE COURT:  -- do you propose to do with it?

Page 24

1          MS. CHAITMAN:  Well, look, if you say that I can

2    only have these documents if I pay for them, I can't get the

3    documents.  I don't represent SiPC.  I don't have the

4    capacity to --

5          THE COURT:  I understand.

6          MS. CHAITMAN:  -- to get --

7          THE COURT:  I understand the financial difference

8    --

9          MS. CHAITMAN:  So --

10          THE COURT:  -- which is one consideration.

11          MS. CHAITMAN:  So basically the trustee who from

12    day one has taken a factual position no security was ever

13    purchased for investment advisory customer and when I asked

14    for documents which proved that, he didn't tell me he had

15    these documents.  And now seven and a half years after he

16    filed suit we realize all these documents exist and he's

17    saying, I can have them if I come up with $2 million.

18          THE COURT:  Okay.

19          MS. CHAITMAN:  I can't.  So, you know, at some

20    point I'm going to ask for a dismissal of the adversary

21    proceeding.  But right now I'm entitled to the documents and

22    I think the trustee who has been funded to the tune of a

23    billion dollars in legal fees can certainly afford to have

24    SiPC pay $2 million or Baker & Hostetler can afford it if

25    that's what's necessary.

Page 25

1           THE COURT:  All right.  Let me hear from Mr.

2      Sheehan.

3           MR. SHEEHAN:  Your Honor, I would like to harken

4      back to something you just said a moment ago and that is

5      that as we -- as we delve more deeply into this we seem to

6      be reversing history and looking at it (indiscernible) end

7      of the funnel.  And you start narrowing the spans.

8           If you give me a moment I think I would like to

9      comment on that because I think it leads to some of the

10     allegations that are made in the -- against the trustee

11     which are ill-founded as well as the fact that it ignores

12     what normally takes place in all of these cases.

13          And I can use the history of the tapes as an

14     example of how that happens.  As Your Honor well knows we

15     arrived.  We've talked about this before.  We start

16     exploring and we hire really talented people from Alex and

17     FTI to look at it.  And that addresses one of the concerns

18     just expressed by Ms. Chaitman.  Lawyers didn't look at it.

19     Well, to a certain extent that's correct.  That doesn't mean

20     lawyers never looked at any of it.  Of course they did.

21     They filed the complaints.  They looked at these documents.

22          But if you're going to search microfilm and

23     there's 5,300 reels of this and it's not exactly the easiest

24     thing in the world to do, it cost us, you know, a lot of

25     money to just restore those 200.

Page 26

1           THE COURT:  When you say restore, that -- I'm not

2    understanding the technology.

3           MR. SHEEHAN:  Okay.  What that means is, is that

4    --

5           THE COURT:  You have films and as I said the last

6    time --

7           MR. SHEEHAN:  Right.

8           THE COURT:  -- 50 years ago when I went to the

9    library you put the film in the machine and you roll the

10   crank and you looked at it.

11          MR. SHEEHAN:  And if you had 10,000 minions doing

12   that you might make your way through it.

13          THE COURT:  So what do you mean by restore?

14          MR. SHEEHAN:  Well, what we do is we actually

15   restore it to a digitized state.  In other words, it's now

16   digital.  It's searchable.  Right.  And --

17          THE COURT:  So why do you have to do that?

18          MR. SHEEHAN:  Why do we have to do that?  Because

19   then you don't have to sit there and go like this.  You can

20   put search terms into it.  And e-discovery, if we were to

21   produce the 19,000 bits of media, you know, we're probably

22   talking hundreds of terabytes of data here.  And I don't

23   know how you would ever in a lifetime sit down and read all

24   of those.

25          THE COURT:  But if she wants to look at it --

Page 27

1          MR. SHEEHAN:  Why don't we -- can I --

2          THE COURT:  Yeah.

3          MR. SHEEHAN:  -- continue, Your Honor?  I think I

4    have an answer to that.  I understand Your Honor's concern.

5    I want to try to address it.  All right.

6          So what happens is, is that we get in there and

7    now it's we find these 5,300 tapes in three different

8    locations.  We give Alice the task of first of all creating

9    this document that Your Honor is now seeing.

10         Now to us that's work product.  That's what we've

11   been working with, et cetera.  We utilized that to decide

12   which tapes we would look at to determine the cash in, cash

13   out which was our main focus at that point predicated upon

14   the fact that for the ten years where we did have bank

15   records and all the other records it was clear that no

16   securities were being purchased and that this was indeed a

17   Ponzi scheme.

18         So we focused upon 400 of those tapes.  All right.

19   And those 400 tapes have been in the data room, 400 tapes,

20   in the data room since 2012.

21         Now Ms. Chaitman says, well, I didn't know about

22   this.  And I understand why she may not have.  But if you go

23   back to our, you know, our rules that we operate under, you

24   know, the rule is that we have to make initial disclosures.

25   And if Your Honor will bear with me I would like to read to

Page 28

1    you the initial disclosure we made in August 1, 2011:  "To

2    all" -- you've got realize I'm -- Ms. Chaitman is not the

3    only defendant here.  We have hundreds and thousands of

4    these people.

5         So it says in the -- this is quoting: "The trustee

6    has assumed possession of and/or has access in conjunction

7    with the Federal Bureau of Investigation" -- you realize the

8    FBI is there with us hand in hand -- "to approximately

9    11,700 boxes" -- it's not 13.  I'll explain that in a minute

10   --

11            "Of BLMIS paper records in 19,000 media sources

12            containing electronically stored information, ESI,

13            which include, but are not limited to, desktop

14            computers, laptop computers, AS400s, hard drives,

15            network storage, microfilm, microfiche, backup

16            tapes, PDAs, floppy discs, compact discs, and

17            memory cards."

18            So we have preserved all the data.  He assumed

19   possession of it on April 15, 2008.

20            "With respect to these materials some paper and

21            some ESI are stored in one or more electronic

22            databases totaling 3.5 terabytes or 27.9 million

23            documents."

24            Now that's how you start discovery.  You don't

25   start discovery at the back end which is what's happened

1    here.  Someone should have sat down with us from Ms.

2    Chaitman's office and said, well, you have all these things.

3    For us to then spread it out all over when the vast majority

4    of people would have no interest in it.  You're supposed to

5    go through and say, well, what do you have, what does it

6    show you, what -- you know, what -- none of that ever

7    happened.  You're -- the reason you're hearing this sort of

8    through the wrong end of the funnel is because of how we're

9    approaching it.

10          So if someone had sat down we would have done

11   that.  And what they could have done, all right, is searched

12   the 400 tapes that were on there since 2012.  But for the

13   longest period of time Ms. Chaitman refused.  She considered

14   the data base a document dump.  And that, therefore, she

15   shouldn't have to go look and that we should just cherry

16   pick stuff for her and produce it.

17          Well, there are orders entered.  There are

18   protective orders.  There's an orderly process to all of

19   this which she chose and still chooses to ignore.  So as a

20   result we find ourselves here today.  Now we can't -- and,

21   you know, re-going through all of this history.

22          Now let me just finish, if I may.

23          And so what happens is is that we're in front of

24   Judge Moss and she's been complaining for some time about

25   trading records.  Now trading records I think our letter and

Page 30

1    I hope your letter and I want to last make it clear, that

2    trading records is a term that requires careful usage and

3    cannot be just used and bandied about that trading records

4    show this kind of trading.

5              All right.  We have found, I make this statement

6    flat.  All right.  We have found no evidence, no evidence

7    from any third party sources that would substantiate the

8    fact that any trading took place for customer accounts in

9    the investment advisory accounts.

10             Now this is with thousands and thousands, the

11   millions and millions of dollars that our friend, Ms.

12   Chaitman, is talking about that we spent looking.  We had no

13   preset notion, notwithstanding the outlandish allegation

14   about the conspiracy with SiPC which I believe Your Honor

15   has already rejected.   But the point is we have no basis

16   for this.  When we find the facts as we find them, it's --

17   and it's indisputable given all the records that we have

18   that from back to '98 there is no trading.  And there isn't

19   a record that we've looked at since then that would prove

20   otherwise.

21             And nothing that Your Honor has been shown to date

22   by our adversaries proves otherwise, notwithstanding their

23   protestations to the contrary.  And I will address those,

24   too, if Your Honor will permit me.

25             All right.  So what we're looking at is, is so

Page 31

1    Judge Moss hears this and he turns to us and says, well, you

2    know, are there other trading records, and we say, well,

3    we'll look and see what's in the microfilm.  All right.  And

4    we look and we identify additional 201 that are 1992 or

5    earlier predicated upon the fact that Madoff's people, when

6    they created the tape, put on a date and said this is what

7    it represents.

8              So we did that and looked at it.  We gave those

9    things to her.  So since April she's had 600 tapes that she

10   can search and look at and tell you what's gone on.  All

11   right.

12             So I want to show Your Honor, if I might, and I

13   have these for my adversary, too.  What these are, are

14   demonstratives if I could just hand them -- a copy of them

15   up to Your Honor and give them to Mr. Kratenstein and Ms.

16   Chaitman.  Do you want this --

17             UNIDENTIFIED SPEAKER:  I can --

18             MR. SHEEHAN:  I can come up and --

19             UNIDENTIFIED SPEAKER:  I can --

20             MR. SHEEHAN:  I need one for the judge.

21             UNIDENTIFIED SPEAKER:  Sure.  Do you want all five

22   or do you want the first two?

23             MR. SHEEHAN:  No.  I want all of them.

24             UNIDENTIFIED SPEAKER:  All of them.  Okay.

25        (Pause)

Page 32

1           MR. SHEEHAN:  Thank you, Your Honor.

2           THE COURT:  Thank you.

3           MR. SHEEHAN:  So what we did is we tried to break

4    this down into processed and unprocessed.  If anything I

5    would say we started doing some of Ms. Chaitman's work here

6    for her, but we're happy to do it.  All right.

7           So what you can see in the processed and

8    unprocessed reports, okay, is that which -- these are the

9    report types on the left-hand side.  All right.

10          THE COURT:  What's C&S?

11          MR. SHEEHAN:  Cash and securities.  Customer

12   ledger, other, other was a designation by Alex when he

13   couldn't find, you know, something to call it and they just

14   called it other, profit and loss, PMR is portfolio

15   management reports, PMR and other.  And so they went through

16   and they did this analysis, et cetera.

17          Now Your Honor can see that there's the 40 -- the

18   next column is not processed and you see the identity of the

19   kind of stuff that's not been processed.  It's 4,700.  We

20   look at the processed and you see 602, and you can see the

21   kind of things that we were producing:  Positions, stock

22   record trading 214, customer ledger 263, cash and securities

23   45.

24          Now Your Honor can say, well, that's not enough of

25   a representative sample.  But what you'll continue to -- if

Page 33

```
 1    you go through this what you'll see is, if you go to the

 2    next page, is that processed and unprocessed reports by year

 3    on the next page show you that what we did process was

 4    everything from 1992 back which is the focus of our exercise

 5    here because it's been conceded by Mr. Madoff that it didn't

 6    start until 1992.

 7              And you can see, therefore, that we thought that

 8    we had produced, you know, between the six -- the 400 --

 9              THE COURT:  Because you're still contending that

10    it did start before 1992.

11              MR. SHEEHAN:  Oh, absolutely.  So -- but this is

12    -- Ms. Chaitman is suggesting that she wanted records prior

13    to '92 to show that there was actual trading taking place.

14    All right.  So we gave her all of that.  And we didn't give

15    her any -- you know, so the 4,700 all represent post-1992

16    documents.  All right.

17              Now the next thing we see is, is that these are

18    the -- the ones for the position, stock record and trading

19    reports summary.  In other words, and this is more readily

20    seen if we get to the two charts past it, but let me explain

21    what we're about to look at and that's this, is that there's

22    a lot of data on these three microfilms, not all of which

23    would relate to, you know, the idea of whether or not there

24    was actual trading taking place which as I understand it is

25    the focus of Ms. Chaitman's inquiry.
```

1          So what we did is we broke it down into those

2     categories that would appear to us to be the ones that are

3     most interesting to her, and they add up to 1,281.  And you

4     say, well, what does that represent.  If you look on the

5     next page you'll see that we have a pie chart and it says,

6     position stock record trading unprocessed microfilm reels.

7     What this represents is if you took all of the pages that we

8     gave Ms. Chaitman, the 168 pages, and broke it down into

9     what Mr. Madoff said were on these tapes, this is how it

10    would break down.  They had open long positions, stock

11    records, et cetera.  And these are all the ones and how they

12    broke down into percentages.

13         And then the next page we took the ones that we

14    processed and broke that down.  And this shows you that we

15    gave her a very good representative sample of all the

16    documents that are in there including what we believe to be

17    the ones that she would be most interested in looking at.

18         So in other words this wasn't just a random

19    exercise by us.  An effort was made by the trustee taking

20    the records that were available to him to respond very

21    directly to her statement that she did not get trading

22    records.

23         Now when we had done all this, this goes back to

24    Judge Moss and your reference taken earlier, and that is, is

25    that Ms. Chaitman got the -- you know, we did some -- what's

Page 35

1    in the data room at this point by April, okay, and what's

2    available to Ms. Chaitman directly.  So in the data room is

3    the 400 tapes that we've put in there back in the early

4    2000s, or 2011 and '12.  It's been there since at least

5    2012.

6            We ran 147 search terms on that and produced the

7    documents.  And at the time there was no objection.  Later

8    Ms. Chaitman objected to our search terms, added 17 more.

9    We ran those and gave her those documents.  All right.  So

10   those have been from our perspective thoroughly searched by

11   our search terms and hers.

12           Then what we did is we found the -- those tapes I

13   was telling you about earlier from '92 back and we processed

14   those so she could digitally look at them and do her own

15   search terms, et cetera, and we gave those to her in its

16   entirety.  So now she has that 600 tapes that are shown on

17   that last pie chart showing a representative sample.

18           So what we're saying here today, this is a long-

19   winded answer to Your Honor's question.  We're not saying

20   that proportionality means the trustee ahs a lot of money,

21   she has none, and therefore, you know, we should pay for it

22   or they should.  What we're saying is, is that

23   proportionality takes place in the context of the discovery

24   at hand.  All right.  What are we going to gain by

25   continuing to look and research and spend money when I think

Page 36

1   we've given Ms. Chaitman with the 600 that she has more than

2   adequate data to come to Your Honor and then say, I've

3   looked at this, look at what I've found.  Your Honor, you

4   should allow me to look, if not at all 4,700, at least the

5   1,281 that the trustee admits has stock record and other

6   information on it, and I should be able to look at it.

7           I respectfully submit she has not done that.  All

8   right.

9           Now the two things that we've heard about from Ms.

10  Chaitman, and in her last submission she gave them to us,

11  was treasuries.  It was exclusive information according to

12  Ms. Chaitman.  The treasuries have been known about since

13  the very beginning.  Very early in the case there was a

14  letter written by Mr. Hardvac (ph), I think it's been

15  referred to in this room, in which we disclosed to

16  (indiscernible) that, in fact, over $16 billion worth of

17  treasuries were purchased.

18          It's a money business.  It's a Ponzi scheme.

19  Deals in cash.  The question is did he buy any of those

20  treasuries for customers (indiscernible).  If you take any

21  number of Ms. Chaitman's exhibits and compare those to the

22  703 account at the same time, no treasuries were purchased.

23  None.  Just what we (indiscernible).  She can't find those.

24  All right.

25          Same thing is true with regard to the banks

Page 37

1    themselves because she doesn't actually know what's

2    (indiscernible) bank and a few other banks where she's said

3    that's actually happened.  We have no correlation there

4    either.  She's not making that correlation.  All right.

5            The mere fact that we have treasuries being

6    purchased is unremarkable.  It doesn't mean anything, not

7    unless she can actually show that they're purchased for a

8    particular account.  And that's going to require a little

9    more legwork than what Your Honor has before you.

10           Mr. Kratenstein, I don't disagree and that's why

11   he should be entitled to question Mr. Madoff about it.  I

12   don't object to that at all.  But he shows Your Honor

13   certain stocks that he found in there that were delivered in

14   by his family using that term broadly.  We don't dispute

15   that either.  All right.  We found that happened.  Everyone

16   who opened an account with Madoff didn't give him cash.

17   They gave him stock.  And when he got it he liquidated it.

18   All right.  He turned it into cash and then started this --

19   his efforts.

20           There's no trading that.  He's cashing it in.  And

21   we can show that.  All right.  We can show that that's what

22   actually happened to those stocks.

23           Now it's going to show up, all right, in DTCC

24   records and so it looks like there's something actually --

25   because there was only one DTCC account.  That was the one

Page 38

1    for the market making and proprietary.  He didn't have a

2    separate one for investment and advisory.  That was a closed

3    system and no outside world had contact with it.  So for him

4    to then negotiate and sell those stocks that were delivered

5    in for -- by that customer, they are going to show up.  They

6    -- I don't disagree.  They'll show up in DTCC and they'll

7    show up in the market making records.  Why, because --

8              THE COURT:  Have the --

9              MR. SHEEHAN:  -- there's no other place to

10   negotiate them.

11             THE COURT:  Have the DTCC records been produced

12   either by DTCC or the trustee?

13             MR. SHEEHAN:  Yeah.  We produced a number of

14   those.  We -- certainly all the ones that we had going back

15   to 1998 included in the reference that we've given to Ms.

16   Chaitman.  And I want to be very careful with this date

17   here.  There's a predecessor at DTCC called National

18   Securities Career Incorporation, NCSS.  We have found

19   records of those.

20             We believe what those are, just to be very clear

21   here today in court, is that Madoff had access to -- had a

22   printer in his office and he could print that out.  So while

23   it is a -- I believe an NCSS record, it is actually printed

24   out in Madoff's office, not delivered by NCSS.  I think

25   that's an important distinction.

Page 39

1           But in any event, we have produced those records

2     as well.  So we believe that there's enough -- more than

3     enough information in the 600 that Ms. Chaitman has, all

4     right, that she should be able to come to Your Honor with a

5     lot more information than she's giving to you now, to

6     justify the expense of taking whether it's 1,281 or 4,500

7     more tapes and putting those together.

8           Now we're going to accommodate her.  We -- Your

9     Honor suggested the last time we were here, well, just give

10    her the tapes.  And I guess what we could do to make it easy

11    so she doesn't have to have somebody from Iron Mountain

12    watch her or any of that stuff, we could just copy the tapes

13    and give it to her.

14          But I don't know -- and to be candid, and I think

15    Ms. Chaitman would be right if we gave her that we're giving

16    her a pig in the poke because at that point how the heck

17    could she go through 4,500 tapes without them being, you

18    know, digitized and put in a format to -- that can be looked

19    at.

20          So I believe what's before Your Honor today and I

21    think that, you know, especially in light of the Judge Moss

22    history, it's not a failure on our part to comply with two

23    prior orders or with Judge Moss's order.  We believe and I

24    believe Judge Moss believed that we have complied with what

25    he asked us to do.  And that what he then suggested to Ms.

Page 40

1    Chaitman is, okay, fine, just where we are here today; that

2    what you can do is look at the 600 and if you come back to

3    me and you demonstrate to me that there's reason to be had

4    that the trustee should incur the further expense of putting

5    those other tapes together, that's fine.

6         What I would also suggest in adding to that is

7    that Ms. Chaitman has those 600.  She says she wants to go

8    back and talk to Mr. Madoff.  I agree.  We should go.  We

9    should go sooner rather than later.  And she can utilize

10   that opportunity to also ask him and then there would be

11   perhaps even a further record.  I submit, anticipate the

12   argument that Mr. Madoff will have no knowledge of this as

13   demonstrated by what he was telling us the last time we were

14   down there.  His knowledge of the back office, the trades,

15   the records and everything is very minimum.  And when asked

16   about it he disavows any real knowledge.

17        So I don't know what we're going to gain, but I'm

18   more than happy to go down.  I'm more than happy to have her

19   answer.  But to suggest today I think -- I think there's no

20   motion pending to be frank.  I think Ms. Madoff -- I

21   apologize again.  I've made that mistake before and I do

22   apologize.  Is that Ms. Chaitman should put together a

23   motion utilizing those 600 and Mr. Kratenstein can add to

24   that.  And they've heard what I've had to say today.  And I

25   recognize that we've given them a lot of additional data.

Page 41

1          But I think we've given more than enough to put

2     the onus on them to come to Your Honor with a motion that

3     says, wait a minute, whatever the trustee did here is not

4     enough.  I need the rest of those tapes.  And I think at

5     that point we can respond again, all right, and I'm not

6     holding anything back here.  It's not like I've got more

7     than I can tell Your Honor.  We're very comfortable that

8     there's nothing on those 600 nor would there be anything on

9     the 4,500 that will contradict what we're representing and

10    have represented throughout the course of the case, that

11    there was no trading going on on the investment advisory

12    side of the house.

13          Thank you, Your Honor.

14          THE COURT:  Okay.

15          MR. KRATENSTEIN:  Your Honor, may I be heard?

16          THE COURT:  Sure.

17          MR. KRATENSTEIN:  Thank you, Your Honor.

18          Good morning, Your Honor.  Andrew Kratenstein of

19    McDermott, Will & Emory for the Sage defendants.

20          I want to start by thanking Mr. Sheehan for

21    acknowledging that the Sages did, in fact, deliver stock.

22    That's actually the first time -- to Mr. Madoff.  That's

23    actually the first time we've heard that admission.  He also

24    just said several things just now that I've never heard

25    before and was very interested to hear.  He said that, yes,

Page 42

1    they admit that the Sages delivered stock to Mr. Madoff, but

2    they can show that Mr. Madoff liquidated the stock and then

3    started his scheme.

4              I would love to see that evidence.  I haven't seen

5    it yet.  Maybe it will help, if you show it to me, resolve

6    this case, maybe it won't.  I don't know.  But I would love

7    to see it sooner rather than later.  We certainly haven't

8    found it.

9              What we have seen, and I attached some of this to

10   my letter back from the last hearing, are documents that

11   appear to show from Mr. Madoff's records and we did try to

12   make the showing to show what we were finding in this

13   microfilm, that (a) stocks were delivered to Mr. Madoff back

14   in the late '70s by my clients.  That's now apparently

15   admitted.  And that stocks were held according to Mr.

16   Madoff's records at least for some period of time at

17   different banks including National Westminster Bank and

18   MBNA, stocks or other securities including an RCA bond.

19             And if the trustee has evidence showing that those

20   records of Mr. Madoff's are inaccurate and that, in fact,

21   those positions were liquidated before the Sages gave the

22   instructions to liquidate them later in time, I would love

23   to see it.  Show it to us as soon as possible and maybe that

24   could help streamline this whole matter.

25             I will note that we do have a defense that

Page 43

1    regardless of whether the trades actually occurred, the mere

2    fact that the Sages directed the trading is a defense, but

3    put that aside it would also obviously be interesting for us

4    to know if the trades actually occurred or not.

5          And so we've been trying to figure that out

6    through all of the records that have been produced and it is

7    difficult to do.  There are tons and tons of records that

8    have now been produced.

9          The other thing we can't -- and we just got these

10   pie charts and other charts which, again, I wish I had seen

11   before this morning so that we could study them.  But, for

12   example, talking about those cash and securities records

13   that were on that list, we have done our review of those.

14   We think that they're very interesting records.  We have

15   only found them at what has been produced for the house 17.

16   We have investment advisory accounts through 1985.

17          And we  -- maybe they exist beyond that and maybe

18   they don't.  We're curious as to why.  That's one of the

19   reasons we think that the production is incomplete.  It's

20   unclear to us why there are no post-1985 cash and securities

21   reports for the house 17 account.  And we have questions

22   about that.

23          Turning to proportionality, you know, I will just

24   quickly take to the factors here.  We have already addressed

25   resources.  The importance of the issues at stake in this

1    action, as Your Honor knows the importance is, is quite

2    large.  There's also a public side of this, obviously, what

3    happened with Mr. Madoff, what was the scope of the fraud,

4    et cetera.

5            The amount of controversy from my clients at least

6    this case involves their life savings.  So that's certainly

7    to them a very high amount of controversy.

8            In terms of the access to the data, the trustee

9    has all the access.  We only have access to what we have

10   been given.

11           Resources, we've already discussed, and the

12   importance of the discovery to resolving the issues in this

13   case, we do think it's very important for the reasons that I

14   just said and also because as Ms. Chaitman eluded to, when

15   the trustee puts forward a $30 million expert and says,

16   there is no evidence and my case -- their case is based on

17   an absence of evidence of real trading, then it's really

18   incumbent on them to make available to the defendants all of

19   the evidence.

20           And for them to say, well, we have to define what

21   is a trading record and what isn't, as I believe my

22   colleague, Mr. Hutmaker (ph) said at the last hearing to

23   you, what is a trading record and what isn't, what counts

24   and what doesn't, that's for the fact finder.  It's not for

25   the trustee to say, well, there's no third party

Page 45

1    verification so you should disregard it.  That will be for

2    the fact finder to decide what credence to give to Madoff

3    records or other records.  And if Mr. Sheehan and his

4    colleagues want to prove that these are fake accounts or

5    dummy accounts or what have you and that they can show us

6    through DTCC or other records that these stock trades never

7    occurred or the stock was liquidated, they'll have every

8    opportunity to do that.  But we think we need to see the

9    documents so that we can test their assertions.

10             Thank you, Your Honor.

11             THE COURT:  All of the documents, all 4,700 boxes?

12             MR. KRATENSTEIN:  Well, now that we've seen this,

13   you know --

14             THE COURT:  What's this?

15             MR. KRATENSTEIN:  Well, I'm sorry.  The records

16   that have been produced it is possible that we may be able

17   to narrow that.  We hadn't seen this breakdown that we got

18   until this morning.  I was going to come in here this

19   morning and say, yes, because we just got this chart here

20   and for my clients at least, my clients bought and held

21   securities so they were not switched right to begin.  The --

22   and the Sages (indiscernible) account they bought and held

23   securities between 1982 approximately and 2007.  Okay.

24             So that's a long period of time and we need the

25   records of that entire period of time to see what happened

Page 46

1    to those securities, if anything.  And, again, if they have

2    the documents that they say prove beyond a shadow of a doubt

3    or whatever evidentiary standard you want to apply that they

4    -- that it didn't occur, or preponderance of the evidence,

5    whatever.  Here's the evidence showing that these trades

6    didn't occur, here's the evidence showing what Mr. Sheehan

7    just said that they were liquidated and assumes the stocks,

8    give it and then show it to us.

9              THE COURT:  Your clients were giving trading

10   instructions to Madoff.

11             MR. KRATENSTEIN:  Yes.  In fact, I'll -- my letter

12   which was dated July 20 -- June 26th rather, if you look at

13   Exhibit C, that's an evidence of one of the instructions.

14        (Pause)

15             THE COURT:  I'm sorry.  What tab is that?

16             MR. KRATENSTEIN:  I don't --

17             THE COURT:  Oh.

18             MR. KRATENSTEIN:  It's Exhibit C of my June 26th,

19   letter.

20        (Pause)

21             MR. KRATENSTEIN:  I'll --

22             THE COURT:  I'm looking for it.

23             MR. KRATENSTEIN:  Yeah.

24             THE COURT:  How frequently did your client give

25   trading instructions to Madoff?

Page 47

1              MR. KRATENSTEIN:  My client gave trading

2     instructions -- he met with Madoff at least once a year or

3     more.  There are more letters like this.  There are at least

4     a half dozen that we found.  He regularly gave trading

5     instructions.  It would depend on the time.  So they bought

6     securities, as I said, in the early '80s on their

7     instructions and there was a buy and hold strategy mostly,

8     but certain positions were changed over time at the

9     direction of the Sages.

10             THE COURT:  Did the trades that the Sages were

11    instructing show up on the customer statements?

12             MR. KRATENSTEIN:  They did.

13             THE COURT:  All right.  Now you're in a different

14    position than the usual investment advisory customer who

15    gave him trading discretion.  I understand.

16             MR. KRATENSTEIN:  Yes, Your Honor.

17             THE COURT:  All right.

18             MR. KRATENSTEIN:  Thank you.

19             THE COURT:  Yeah.

20             MS. CHAITMAN:  Judge, I won't take the time to

21    refute everything that Mr. Sheehan said, but I -- we have

22    made extensive use of the e-data room.  We had no knowledge

23    that the 400 reels of documents were -- that were put in the

24    data room came from the reels.  We just looked at the e-data

25    room.  It didn't say these are reels.  But of course we

1    looked at the e-data room.

2         But if you recall last May, May 2016, we had

3    argument on my motion to compel because I made the point

4    that a lot of my clients would not have claw back exposure

5    if they were given credit for their profits prior to this

6    foot strike.

7         And so I've always been asking for these records.

8    And as you, I'm sure you remember Ted Jacobs represented to

9    the Court that everything had been produced and was the --

10   in the e-data room.  And he was bragging about how proud he

11   was of how complete the e-data room was.

12        So now of course we realize the e-data room is not

13   complete and it -- it's not -- you know, to say at this

14   point when they've been hiding this evidence for eight

15   years, to say that they should just give me the microfilm

16   reels when we're talking about this enormous massive

17   documents and we don't really know everything that's on

18   them.  That little label done by the vendor is not

19   satisfactory to assure us of everything that's on each reel.

20        If I get the microfilm reels, first of all, it's

21   not manageable for me.  I mean, we're talking about probably

22   15 million pages of documents.

23        Number two, the trustee's going to have to put

24   them in a readable, searchable format for himself anyway

25   because he's going to have that expense anyway because how

Page 49

1    do you -- they won't be Bate stamped.  If I go to trial and

2    I have a document what am I going to do?  I'm going to say,

3    it's from microfilm reel screen number 178, you know, from

4    reel -- it's not manageable.

5             In addition to which without it being searchable

6    when you're talking about 50 million pages of documents it's

7    as good as saying, you're not entitled to the evidence.

8             THE COURT:  You know, I remember going on document

9    reviews when I was a young lawyer.  We didn't have digitized

10   documents.  We looked at the documents --

11            MS. CHAITMAN:  Judge --

12            THE COURT:  -- and made copies of what we wanted.

13            MS. CHAITMAN:  -- I doubt very much that you had

14   50 million pages of documents.

15            THE COURT:  Actually, I probably did in the --

16            MS. CHAITMAN:  Okay.

17            THE COURT:  -- first case I did.

18            MS. CHAITMAN:  And was your adversary someone who

19   had been paid a billion dollars in a case that involves 64

20   billion and where your adversary made representations for

21   eight years that everything had been produced --

22            THE COURT:  Okay.

23            MS. CHAITMAN:  -- and now our hands are going to

24   be tied because we don't have the financial wherewithal to

25   prove how dishonest the trustee has been.

Page 50

1           THE COURT:  All right.  Look, I don't have a

2     motion before me.  And I think that Sage is a slight -- is

3     in a different position than Ms. Chaitman's clients because

4     they can identify specific instructions and I think you

5     ought to deal with that issue about whether or not you can

6     produce the corresponding trading records for that day or

7     whatever it is, that it's supposedly shows up on his account

8     statements and then he can compare trading records with

9     account statements.

10           With respect to the 4,700 boxes, you're not going

11    to convince me to simply force the trustee to turn them

12    over.  You're going to have to make a showing through a

13    motion or through negotiation.

14           What I would suggest since you're also appear to

15    be suspicious about the labeling or not suspicious, dubious

16    of its accuracy, is pick a small representative example, 20

17    reels, digitize them and then you can show me why these are

18    relevant or how these are relevant.  If I look at the sample

19    and you don't show it to me, then you'll have to pay for

20    whatever it's going to cost.  It's essentially a cost

21    shifting issue and a relevance issue, I suppose.

22           That's how I would suggest you deal with it in the

23    short term. but otherwise you can make a motion to compel

24    discovery.  But he's going to come back and say, they're

25    irrelevant, but if you really want to look at them you pay

Page 51

1   for it.  And it's going to be the same issue.

2              MS. CHAITMAN:  Then I would suggest, Your Honor,

3   that you require the trustee to give me all the microfilm

4   and I will go through that process and try to do it myself

5   because I don't want to be in a position --

6              THE COURT:  So you'll pay for it?

7              MS. CHAITMAN:  No.  He's just going to give me the

8   microfilm.  He's not going to digitize it.

9              THE COURT:  Well, he has to copy it --

10             MS. CHAITMAN:  He doesn't have that.

11             THE COURT:  He has to copy it.

12             MS. CHAITMAN:  Well, he can certainly afford to

13  copy --

14             THE COURT:  I think my suggestion is better.  Look

15  through the list, pick a small representative sample, 20

16  reels, look through the reels.  You can -- I assume you're

17  going to look at reels that correspond to dates in your

18  customers' statements if you're talking about treasury bills

19  or treasury trading to see if you can make a connection

20  because that's really what we're talking about.

21             MS. CHAITMAN:  No, it isn't.

22             THE COURT:  Well, that's what I understand it to

23  be --

24             MS. CHAITMAN:  No.

25             THE COURT:  -- because there's no --

Page 52

1          MS. CHAITMAN:  Can I correct that?

2          THE COURT:  Well, my understanding from what I've

3   heard is that the BLMIS other aspects of the business were

4   always engaged in actual transactions.  They just weren't

5   allocated to customers.  They were for BLMIS.  And your

6   argument is that they were allocated because there are

7   corresponding entries in the customer statements where they

8   should have been allocated.  Isn't that what you're arguing?

9          MS. CHAITMAN:  There are different arguments.

10  With respect to the treasury, I can match up based on Mr.

11  Madoff's testimony as to where the treasuries were I can --

12  and he testified that all of those treasuries, I didn't

13  realize it was 16 billion as Mr. Sheehan said.  Those were

14  purchased with 703 account money.  Mr. Madoff testified --

15         THE COURT:  Wasn't that just because he was

16  putting the cash into treasury bills to get more interest?

17         MS. CHAITMAN:  No, because he had -- he had money

18  -- he held them to term.  He held them to maturity.  They

19  showed up on customer statements.  And they were at Bearn

20  Sterns.  They were at Fidelity.  They were at Lehman

21  Brothers.  They were at Morgan Stanley.

22         But that's an issue post-1992.  I'm focusing on

23  the 1980s, and what we've already found from the 450 odd

24  reels that were produced is we can show that the convertible

25  bond trading of our customers was supported by the ownership

Page 53

 1    of the securities that their statements showed they had.

 2              THE COURT:  All right.  Well, you can --

 3              MS. CHAITMAN:  But we've only gotten a small

 4    portion of those.  I showed -- I included those in my

 5    submission to Your Honor before the last -- I -- there were

 6    NCSS statements which Mr. Sheehan has conceded are

 7    legitimate and there were National Bank of North America and

 8    National Westminster Bank statements.  And I assume they

 9    were generated the same way.  Computers were linked up and

10    they could be printed out by Madoff of what was being held

11    in custody.

12              So, you know, we've already established that these

13    documents prove that there was real trading done for the

14    customers.  Now obviously that's going to be determined by

15    the fact finder, but we've only gotten a sliver of the

16    documents.  That's why --

17              THE COURT:  Well, you can show that in a motion to

18    compel discovery.  There are a lot of issues that are

19    involved with cross-shifting.  If you can convince me that

20    there's gold or that there may be gold in these unproduced

21    documents, then, you know, fine.

22              MR. SHEEHAN:  Your Honor, I know you don't want to

23    hear more from me, but I just wanted to add one thing.

24              THE COURT:  Yeah.  I'm just -- you know --

25              MR. SHEEHAN:  No.  I don't want to argue.  I just

Page 54

1    want to -- a point of clarification.  It's our position that

2    Ms. Chaitman has all of the 1992 tapes, '92 and prior.

3               THE COURT:  Pre-'92?

4               MR. SHEEHAN:  Yes.  At least according to the

5    markings on them and the --

6               THE COURT:  Well, you know --

7               MR. SHEEHAN:  -- stuff we've found.  So --

8               THE COURT:  -- if she makes a motion for it, you

9    just give me an affidavit saying they've all been produced.

10              MR. SHEEHAN:  All right.  Fine, Your Honor.

11              THE COURT:  You don't have --

12              MR. SHEEHAN:  Fine.  Okay.  I just want --

13              THE COURT:  Because there's no point --

14              MR. SHEEHAN:  -- to be clear.

15              THE COURT:  -- there's no point in arguing back

16   and forth about that.

17              MR. SHEEHAN:  No.  I understand.

18              THE COURT:  Now with respect to Sage, you may be

19   able to work out something to get the --

20              MR. SHEEHAN:  We'll actively try that, Your Honor.

21              THE COURT:  -- records that correspond to the

22   trading directions that were being sent over the years.

23              MR. SHEEHAN:  Yes, Your Honor.

24              THE COURT:  It certainly sounds relevant and --

25              MR. SHEEHAN:  No question, Your Honor.  And we

```
                                                        Page 55

1    will do that.

2              THE COURT:  All right.

3              MR. KRATENSTEIN:  Thank you, Your Honor.

4              THE COURT:  All right.  And give me the order for

5    the second day.  Let's complete that deposition and schedule

6    a trial.

7              MR. SHEEHAN:  Thank you, Your Honor.

8              THE COURT:  All right.  Thank you.

9         (Proceedings concluded at 11:09 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 56

1                        I N D E X

2

3                      R U L I N G S

4

5      IDENTIFICATION                                    PAGE

6      N/A

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           CERTIFICATE

2

3         I, Sherri L. Breach, certify that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sherri L        Digitally signed by Sherri L Breach
                     DN: cn=Sherri L Breach, o, ou,
                     email=digital1@veritext.com,
     Breach          c=US
7                    Date: 2017.07.27 16:17:08 -04'00'

8    Sherri L. Breach

9    AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11

12   DATE:   July 27, 2017

13

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501

[& - adversary]    Page 1

## &

**&**   4:2,20 5:1,8
22:3 24:24 41:19
57:9

## 0

**08-01789**   1:6
**09-01161**   1:13
6:23

## 1

**1**   28:1
**1,200**   9:17
**1,281**   34:3 36:5
39:6
**10,000**   26:11
**10-04946**   1:20
**10022**   4:16 5:11
**10036**   5:4
**10111**   4:5
**10173**   4:23
**10:09**   2:6
**11,700**   28:9
**11501**   57:25
**11:09**   55:9
**12**   35:4
**13**   28:9
**147**   35:6
**14th**   21:17
**15**   28:19 48:22
**16**   36:16 52:13
**168**   34:8
**17**   35:8 43:15,21
**178**   49:3
**183**   21:17
**19,000**   26:21
28:11
**1980s**   52:23
**1982**   45:23
**1985**   43:16,20
**1992**   18:22 31:4
33:4,6,10,15
52:22 54:2

**1998**   38:15

## 2

**2**   3:1 24:17,24
**20**   46:12 50:16
51:15
**200**   25:25
**2000s**   35:4
**2004**   8:2
**2007**   45:23
**2008**   28:19
**201**   31:4
**2010**   23:24
**2011**   28:1 35:4
**2012**   27:20 29:12
35:5
**2016**   7:1 48:2
**2017**   2:5 16:10
57:12
**214**   32:22
**23rd**   6:10
**26**   2:5
**263**   32:22
**26th**   46:12,18
**27**   57:12
**27.9**   28:22

## 3

**3.5**   28:22
**30**   22:22 44:15
**300**   57:24
**302**   16:21 17:4,25
**302s**   20:15
**330**   57:23
**340**   4:22
**397**   3:25 57:9

## 4

**4,500**   39:6,17 41:9
**4,700**   21:13,20
32:19 33:15 36:4
45:11 50:10
**40**   32:17
**400**   20:17 27:18
27:19,19 29:12

33:8 35:3 47:23
**45**   4:4 6:25 9:8
32:23
**450**   52:23
**465**   4:15

## 5

**5,300**   21:21,24
25:23 27:7
**50**   26:8 49:6,14
**50,000**   8:23
**500**   16:11
**500,000**   8:25

## 6

**600**   31:9 35:16
36:1 39:3 40:2,7
40:23 41:8
**602**   32:20
**64**   49:19

## 7

**7007-1**   3:4
**703**   36:22 52:14
**70s**   42:14
**7th**   6:25 16:10

## 8

**80s**   47:6

## 9

**919**   5:10
**92**   33:13 35:13
54:2,3
**98**   30:18

## a

**a.m.**   55:9
**aaert**   57:9
**ability**   13:24
**able**   6:5 15:13
16:15 36:6 39:4
45:16 54:19
**absence**   44:17
**absolutely**   33:11
**access**   28:6 38:21
44:8,9,9

**accommodate**
39:8
**account**   36:22
37:8,16,25 43:21
45:22 50:7,9
52:14
**accounts**   16:3,4
20:16 30:8,9
43:16 45:4,5
**accuracy**   50:16
**accurate**   57:4
**acknowledging**
41:21
**action**   44:1
**actively**   54:20
**actual**   7:13 33:13
33:24 52:4
**add**   34:3 40:23
53:23
**added**   35:8
**adding**   40:6
**addition**   49:5
**additional**   31:4
40:25
**address**   9:5,10
27:5 30:23
**addressed**   7:13
43:24
**addresses**   25:17
**adequate**   9:5 36:2
**adjourned**   6:7
**admissible**   17:16
18:11 19:21
**admission**   19:4
20:11,12 41:23
**admit**   42:1
**admits**   36:5
**admitted**   42:15
**advance**   3:7
**adversaries**   19:5
30:22
**adversary**   6:21,22
21:12 24:20 31:13

49:18,20
**advised** 6:4
**advisors** 11:4
**advisory** 22:24
24:13 30:9 38:2
41:11 43:16 47:14
**affidavit** 54:9
**afford** 24:23,24
51:12
**age** 14:15
**agent's** 19:23
**agents** 20:8
**ago** 7:24 12:10
25:4 26:8
**agree** 16:22 17:17
40:8
**agreed** 8:21 9:14
**ahead** 13:25
**ahs** 35:20
**al** 1:8,15
**alex** 25:16 32:12
**alice** 27:8
**allegation** 30:13
**allegations** 25:10
**allocated** 52:5,6,8
**allow** 19:14 36:4
**amanda** 4:11
**america** 53:7
**amount** 44:5,7
**analysis** 10:12
32:16
**andrew** 4:25
41:18
**answer** 27:4 35:19
40:19
**anticipate** 40:11
**anxious** 14:10
**anybody** 20:9
**anyway** 10:15
48:24,25
**apologize** 18:6
40:21,22

**apparently** 42:14
**appear** 34:2 42:11
50:14
**apply** 46:3
**approaching** 29:9
**approximately**
8:23 9:17 28:8
45:23
**approximation**
23:11
**april** 16:13 28:19
31:9 35:1
**arbitrator** 9:24
**areas** 17:1 20:15
**argue** 53:25
**arguing** 52:8
54:15
**argument** 13:21
40:12 48:3 52:6
**arguments** 52:9
**arps** 5:1
**arrangement** 8:19
9:9
**arrived** 25:15
**as400s** 28:14
**aside** 43:3
**asked** 18:18,18
20:2 22:4 24:13
39:25 40:15
**asking** 15:9 19:2
48:7
**aspects** 52:3
**asserted** 7:23
**assertions** 45:9
**assets** 11:21,23
**assistance** 20:3
**assume** 51:16
53:8
**assumed** 28:6,18
**assumes** 46:7
**assuming** 18:10
**assure** 48:19

**attached** 7:6 42:9
**attorney** 18:19
19:3 20:2
**attorneys** 4:3,14
4:21 5:2,9 9:1
15:13
**august** 6:10 28:1
**available** 9:5
14:18 34:20 35:2
44:18
**avenue** 4:15,22
5:10

**b**

**b** 2:9 4:25 7:6
**back** 8:19 9:7,8,9
11:8 14:18 19:3
25:4 27:23 28:25
30:18 33:4 34:23
35:3,13 38:14
40:2,8,14 41:6
42:10,13 48:4
50:24 54:15
**backup** 28:15
**baker** 4:2 22:3
24:24
**bandied** 30:3
**bank** 27:14 37:2
42:17 53:7,8
**bankruptcy** 1:1
2:1,11 3:3
**banks** 36:25 37:2
42:17
**base** 29:14
**based** 23:1 44:16
52:10
**basically** 13:4
15:18 24:11
**basis** 30:15
**bate** 49:1
**bear** 7:11 11:17
27:25
**bearn** 52:19

**begged** 12:17
**beginning** 36:13
**behalf** 14:9
**believe** 12:13,24
23:2 30:14 34:16
38:20,23 39:2,20
39:23,24 44:21
**believed** 39:24
**bell** 4:10
**bender** 8:25
**bernard** 1:7
**bernstein** 2:10
**best** 18:9
**better** 51:14
**beyond** 43:17
46:2
**billion** 24:23
36:16 49:19,20
52:13
**bills** 51:18 52:16
**bits** 26:21
**blmis** 4:3 28:11
52:3,5
**board** 7:20
**bond** 42:18 52:25
**bought** 45:20,22
47:5
**bowling** 2:2
**boxes** 9:17 21:13
21:21,21 28:9
45:11 50:10
**bragging** 48:10
**breach** 3:25 57:3
57:8
**break** 32:3 34:10
**breakdown** 45:17
**bring** 13:1
**broadly** 37:14
**broke** 34:1,8,12
34:14
**brothers** 52:21
**burden** 10:12

**burdens** 8:12
**bureau** 28:7
**business** 7:12
36:18 52:3
**buy** 36:19 47:7

**c**

**c** 4:1 6:1 46:13,18
**c&s** 32:10
**call** 19:23 20:7
22:2 32:13
**called** 12:6 19:1
32:14 38:17
**candid** 19:7 39:14
**capacity** 11:25
24:4
**cards** 28:17
**career** 38:18
**careful** 30:2 38:16
**case** 1:6,13,20 9:6
13:6 19:8 22:8,23
36:13 41:10 42:6
44:6,13,16,16
49:17,19
**cases** 10:16,17
21:8 25:12
**cash** 27:12,12
32:11,22 36:19
37:16,18 43:12,20
52:16
**cashing** 37:20
**categories** 34:2
**cert** 3:25 57:9
**certain** 7:3 19:1
25:19 37:13 47:8
**certainly** 11:4
24:23 38:14 42:7
44:6 51:12 54:24
**certificate** 57:1
**certified** 57:9
**certify** 57:3
**cetera** 27:11
32:16 34:11 35:15
44:4

**chaitman** 4:13,18
14:8,8,23 15:9,11
15:22 16:5,8,19
17:3,7,11,15,21
17:23 18:2 19:13
20:18,20 21:2,14
21:16,19 22:1,12
22:18 23:10,18,22
23:24 24:1,6,9,11
24:19 25:18 27:21
28:2 29:13 30:12
31:16 33:12 34:8
34:25 35:2,8 36:1
36:10,12 38:16
39:3,15 40:1,7,22
44:14 47:20 49:11
49:13,16,18,23
51:2,7,10,12,21
51:24 52:1,9,17
53:3 54:2
**chaitman's** 29:2
32:5 33:25 36:21
50:3
**challenging** 7:15
**changed** 47:8
**chart** 34:5 35:17
45:19
**charts** 33:20
43:10,10
**check** 22:21
**cherry** 29:15
**chooses** 29:19
**chose** 29:19
**claim** 8:9
**claims** 23:1
**clarification** 54:1
**classic** 13:13
**claw** 8:19 9:7,8,9
48:4
**clear** 27:15 30:1
38:20 54:14
**clearly** 17:15
22:18

**client** 46:24 47:1
**clients** 15:14
22:10 42:14 44:5
45:20,20 46:9
48:4 50:3
**closed** 38:2
**colleague** 6:16
20:8 44:22
**colleagues** 45:4
**column** 32:18
**come** 13:9 14:18
15:20 24:17 31:18
36:2 39:4 40:2
41:2 45:18 50:24
**comfortable** 22:9
41:7
**comment** 25:9
**communication**
11:2
**communications**
7:7 10:25 11:3,16
12:12 13:5
**compact** 28:16
**compare** 36:21
50:8
**compel** 13:15
18:24 48:3 50:23
53:18
**compelling** 10:1
**competitors** 12:2
**complained** 8:12
**complaining**
29:24
**complaints** 25:21
**complete** 17:12
18:19 48:11,13
55:5
**compliance** 7:3
**complied** 39:24
**comply** 8:8 39:22
**compromise** 9:21
9:22

**compromises** 8:11
8:21
**computers** 28:14
28:14 53:9
**conceded** 33:5
53:6
**concern** 9:6 27:4
**concerned** 19:8
**concerning** 7:8
**concerns** 9:10
21:7 25:17
**concluded** 55:9
**conduct** 9:12
**conducted** 11:1
**confer** 12:17
**conference** 3:1,3
3:6 6:21 22:2
**conjunction** 28:6
**connection** 11:13
51:19
**consensual** 7:2
**consent** 9:24
**consideration**
24:10
**considered** 29:13
**conspiracy** 30:14
**contact** 38:3
**contained** 7:24
23:3
**containing** 28:12
**contending** 33:9
**contention** 22:22
**context** 35:23
**continue** 15:24
27:3 32:25
**continued** 14:11
14:21
**continuing** 35:25
**contradict** 41:9
**contrary** 30:23
**control** 8:16
**controversy** 44:5
44:7

convertible 52:24
convince 19:6
  50:11 53:19
copies 49:12
copy 9:16 19:15
  31:14 39:12 51:9
  51:11,13
corporation 1:5
correct 15:22
  25:19 52:1
correlation 37:3,4
correspond 51:17
  54:21
corresponding
  50:6 52:7
corrupt 20:5
cost 8:25 9:1 13:8
  13:23 25:24 50:20
  50:20
costs 8:16 9:3
counsel 12:18
country 57:23
counts 44:23
couple 13:2
course 10:13
  12:10,16 25:20
  41:10 47:25 48:12
court 1:1 2:1 6:2,6
  6:8,10,12,14,18
  6:20 7:13 10:3,5,9
  10:20,23,25 11:11
  13:14 14:5,7,20
  14:25 15:3,7,10
  15:15,23 16:6,18
  16:20,24 17:5,8
  17:13,17,22 18:1
  18:4,7,9,23 19:6
  19:17,20,23 20:9
  20:12,14,19,21,23
  21:3,5,18,20,25
  22:11,17 23:5,11
  23:15,17,21,23,25
  24:5,7,10,18 25:1

26:1,5,8,13,17,25
27:2 32:2,10 33:9
38:8,11,21 41:14
41:16 45:11,14
46:9,15,17,22,24
47:10,13,17,19
48:9 49:8,12,15
49:17,22 50:1
51:6,9,11,14,22
51:25 52:2,15
53:2,17,24 54:3,6
54:8,11,13,15,18
54:21,24 55:2,4,8
crank 26:10
created 31:6
creating 27:8
credence 45:2
credit 48:5
criminal 19:10
  20:4
cross 53:19
curious 43:18
custody 53:11
customer 24:13
  30:8 32:11,22
  38:5 47:11,14
  52:7,19
customers 22:24
  36:20 51:18 52:5
  52:25 53:14

---
                  **d**
---

d 3:25 6:1 56:1
  57:9
data 21:17 22:20
  23:3 26:22 27:19
  27:20 28:18 29:14
  33:22 35:1,2 36:2
  40:25 44:8 47:22
  47:24,24 48:1,10
  48:11,12
databases 28:22
date 6:8 14:10
  30:21 31:6 38:16

57:12
dated 46:12
dates 51:17
david 4:9 6:3 14:8
davinski 22:21
davis 4:18
day 3:1 14:5 15:3
  15:7,17,24,25
  24:12 50:6 55:5
deal 14:1 15:5
  21:5 50:5,22
deals 36:19
dealt 21:12
debtors 1:9
decade 7:18
decide 27:11 45:2
decided 18:20
decision 22:10
deeply 25:5
defendant 7:17,20
  28:3
defendants 1:16
  1:22 4:14,21 7:10
  14:9 15:19 41:19
  44:18
defense 42:25
  43:2
define 44:20
deliver 41:21
delivered 37:13
  38:4,24 42:1,13
delve 25:5
demonstrate 40:3
demonstrated
  40:13
demonstratives
  31:14
denied 20:3
denying 7:14
department 17:14
depend 47:5
deposition 3:1
  14:5,11,12,15,21

15:20,23,24,25
16:7 17:23 55:5
designation 32:12
desktop 28:13
determine 27:12
determined 7:3
  53:14
difference 24:7
different 8:4,5
  10:20 21:12 27:7
  42:17 47:13 50:3
  52:9
difficult 43:7
digital 26:16
digitally 35:14
digitize 50:17
  51:8
digitized 26:15
  39:18 49:9
diligence 11:1,9
  11:13 12:12
dime 23:9
directed 18:22
  43:2
direction 47:9
directions 54:22
directly 11:25
  12:6,11 34:21
  35:2
directors 7:21
disagree 37:10
  38:6
disavows 40:16
disclosed 36:15
disclosure 28:1
disclosures 27:24
discover 14:16
discovery 3:3 6:21
  8:15 9:24 13:16
  14:21 15:5 21:5,7
  26:20 28:24,25
  35:23 44:12 50:24
  53:18

discretion 47:15
discs 28:16,16
discussed 44:11
dishonest 49:25
dismiss 7:14
dismissal 24:20
dispute 6:21 23:6
  37:14
disregard 45:1
distinction 38:25
district 1:2
document 6:25
  17:16 18:10,13,19
  19:5,20 22:4
  23:20 27:9 29:14
  49:2,8
documents 7:8,24
  8:13,17,19,23,24
  9:16,17,20 10:1
  12:19 13:10,17
  14:13,16 16:11
  20:18 22:13,19,19
  23:4 24:2,3,14,15
  24:16,21 25:21
  28:23 33:16 34:16
  35:7,9 42:10 45:9
  45:11 46:2 47:23
  48:17,22 49:6,10
  49:10,14 53:13,16
  53:21
doing 10:12 26:11
  32:5
dollars 24:23
  30:11 49:19
don't 37:12
doubt 46:2 49:13
dozen 47:4
drives 28:14
dtcc 37:23,25 38:6
  38:11,12,17 45:6
dubious 50:15
due 11:1,9,13
  12:12

dummy 45:5
dump 29:14

**e**

e 2:9,9 4:1,1,7,11
  6:1,1 13:2 22:20
  23:3 26:20 47:22
  47:24 48:1,10,11
  48:12 56:1
earlier 31:5 34:24
  35:13
early 20:1 35:3
  36:13 47:6
easiest 25:23
easy 39:10
ecro 2:13
effectively 11:21
  12:1
effort 34:19
efforts 37:19
eight 7:5,24 48:14
  49:21
either 37:4,15
  38:12
electronic 8:13,23
  28:21 57:9
electronically
  28:12
element 7:12
eliminated 8:12
eluded 44:14
emery 4:20
emory 41:19
engaged 52:4
enormous 48:16
entered 29:17
entire 23:3 45:25
entirely 9:4
entirety 19:14
  35:16
entitled 22:18
  24:21 37:11 49:7
entries 52:7

esi 28:12,21
especially 39:21
esq 4:7,8,9,10,11
  4:18,25 5:6,13
essentially 11:23
  12:17 23:13 50:20
established 53:12
estate 20:12
estates 19:9
estimates 8:25
et 1:8,15 27:11
  32:16 34:11 35:15
  44:4
evening 6:5
event 11:24 39:1
everybody 15:20
evidence 30:6,6
  42:4,19 44:16,17
  44:19 46:4,5,6,13
  48:14 49:7
evidentiary 46:3
exactly 10:24
  25:23
examine 19:6
examining 16:23
example 25:14
  43:12 50:16
exception 16:8
exchange 8:15
exclusive 36:11
exercise 33:4
  34:19
exhibit 7:6 21:23
  46:13,18
exhibits 36:21
exist 24:16 43:17
existed 12:8
existence 23:22
existing 21:9
expedition 13:13
  13:18
expense 9:21 39:6
  40:4 48:25

expert 44:15
explain 12:18
  28:9 33:20
exploring 25:16
exposure 48:4
expressed 25:18
extensive 47:22
extent 25:19
extraordinary
  13:8

**f**

f 2:9
face 13:3
fact 11:19 23:2
  25:11 27:14 30:8
  31:5 36:16 37:5
  41:21 42:20 43:2
  44:24 45:2 46:11
  53:15
factor 10:13
factors 10:13
  43:24
facts 22:25 30:16
factual 3:6 13:22
  13:23 24:12
failure 39:22
fair 23:11
faith 7:1
fake 45:4
family 37:14
far 19:8
fbi 17:20 20:3
  28:8
federal 28:7
feeder 11:24
feel 22:9,13
fees 24:23
fein 4:11
felt 18:21
fidelity 52:20
figure 43:5
filed 6:6 24:16
  25:21

filing  19:1
film  26:9
films  26:5
financial  24:7
  49:24
find  18:2 27:7
  29:20 30:16,16
  32:13 36:23
finder  44:24 45:2
  53:15
finding  42:12
fine  16:18 40:1,5
  53:21 54:10,12
finish  29:22
first  6:2,14 18:10
  27:8 31:22 41:22
  41:23 48:20 49:17
fishing  13:13,18
five  17:9 31:21
flat  30:6
flom  5:1
floor  6:18
floppy  28:16
focus  27:13 33:4
  33:25
focused  27:18
focusing  52:22
follow  15:16
  20:15
foot  48:6
force  50:11
foregoing  57:3
form  17:16 19:20
format  39:18
  48:24
forth  10:7 54:16
forward  44:15
found  30:5,6
  35:12 36:3 37:13
  37:15 38:18 42:8
  43:15 47:4 52:23
  54:7

founded  25:11
founder  7:18
four  5:3 7:5
frank  40:20
fraud  44:3
frequently  46:24
friend  30:11
front  29:23
fti  25:17
full  19:5
fund  1:14 11:24
fund's  7:11,14
fundamental  23:2
funded  24:22
funds  7:9 11:25
funnel  25:7 29:8
further  8:13,22
  19:10 40:4,11

                g
g  6:1 56:3
gain  35:24 40:17
general  20:15
generated  53:9
geraldine  4:7 6:16
give  25:8 27:8
  31:15 33:14 37:16
  39:9,13 45:2 46:8
  46:24 48:15 51:3
  51:7 54:9 55:4
given  14:14 30:17
  36:1 38:15 40:25
  41:1 44:10 48:5
giving  39:5,15
  46:9
global  1:14 7:18
global's  7:20
go  10:14 13:25
  18:25 19:3,14
  22:13 23:8 26:19
  27:22 29:5,15
  33:1,1 39:17 40:7
  40:8,9,18 49:1
  51:4

goes  34:23
going  10:15 13:15
  13:20,21,22 16:6
  17:9,18 19:4 23:6
  24:20 25:22 29:21
  35:24 37:8,23
  38:5,14 39:8
  40:17 41:11 45:18
  48:23,25 49:2,2,8
  49:23 50:10,12,20
  50:24 51:1,7,8,17
  53:14
gold  53:20,20
goldenberg  1:21
  6:2
good  6:19 7:1
  10:4,5 15:6 34:15
  41:18 49:7
gotten  53:3,15
government's
  19:8
grasso  7:19
great  17:24
green  2:2
group  4:14 6:24
  14:9
guarded  12:3
guess  13:19 16:3
  18:9 39:10
guys  18:14

                h
h  1:11,18
half  24:15 47:4
hand  28:8,8 31:14
  32:9 35:24
hands  49:23
happened  13:1
  28:25 29:7 37:3
  37:15,22 44:3
  45:25
happens  25:14
  27:6 29:23

happy  20:7 32:6
  40:18,18
hard  9:16 22:1
  28:14
hardvac  36:14
harken  25:3
health  14:14
hear  25:1 41:25
  53:23
heard  23:14 36:9
  40:24 41:15,23,24
  52:3
hearing  21:8,10
  29:7 42:10 44:22
hears  31:1
heavily  17:4,24
heck  39:16
held  42:15 45:20
  45:22 52:18,18
  53:10
helen  4:18 14:8
help  42:5,24
hiding  48:14
high  44:7
hire  25:16
history  20:1 23:5
  25:6,13 29:21
  39:22
hits  12:24
hold  14:11 47:7
holding  41:6
holdings  6:25
hon  2:10
honor  6:3,11,15
  6:19 10:4 12:5
  14:3,4,8 15:2,12
  16:9,17 17:11
  18:5,17 19:2,7
  20:22 21:4 23:13
  25:3,14 27:3,9,25
  30:14,21,24 31:12
  31:15 32:1,17,24
  36:2,3 37:9,12

39:4,9,20 41:2,7
41:13,15,17,18
44:1 45:10 47:16
51:2 53:5,22
54:10,20,23,25
55:3,7
**honor's** 27:4
35:19
**hope** 30:1
**hostetler** 4:2 22:3
24:24
**house** 41:12 43:15
43:21
**huh** 22:11
**hundred** 13:16
**hundreds** 26:22
28:3
**hutmaker** 44:22

**i**

**idea** 23:19 33:23
**identification**
56:5
**identify** 13:16
31:4 50:4
**identity** 32:18
**ignore** 29:19
**ignores** 25:11
**impact** 22:10
**importance** 43:25
44:1,12
**important** 14:15
16:12 38:25 44:13
**inaccurate** 42:20
**inception** 22:20
**inclined** 15:24
**include** 28:13
**included** 38:15
53:4
**including** 7:12
34:16 42:17,18
**incomplete** 43:19
**incorporation**
38:18

**incumbent** 44:18
**incur** 40:4
**indicated** 15:12
**indiscernible**
11:24 22:3 25:6
36:16,20,23 37:2
45:22
**indisputable** 7:16
30:17
**individual** 15:12
**information** 7:11
7:17 8:9,15 12:4,6
21:9,9 28:12 36:6
36:11 39:3,5
**initial** 27:24 28:1
**innocuous** 13:4
**inquiry** 33:25
**insists** 9:12
**instructing** 47:11
**instructions** 42:22
46:10,13,25 47:2
47:5,7 50:4
**intended** 15:25
**intends** 9:25
**interest** 29:4
52:16
**interested** 12:3
34:17 41:25
**interesting** 34:3
43:3,14
**interrupt** 23:16
**interrupting** 18:6
**introduced** 7:19
**invest** 11:25
**investigated**
11:20
**investigation** 8:3
20:6 28:7
**investment** 1:7
24:13 30:9 38:2
41:11 43:16 47:14
**investments** 11:4
11:22

**investor** 1:4
**investors** 22:24
**involved** 13:9
16:2 53:19
**involves** 44:6
49:19
**involving** 17:13
**iron** 39:11
**irrelevant** 10:15
50:25
**irving** 1:11,18
**issue** 9:10 10:9,17
10:18 14:21 15:5
15:7 16:20 17:13
18:22 20:10 21:13
50:5,21,21 51:1
52:22
**issued** 8:2
**issues** 13:6 43:25
44:12 53:18
**i'm** 28:2

**j**

**j** 4:8,9
**jacobs** 48:8
**january** 16:10
**judge** 2:11 16:10
21:16 22:2,15
23:19 29:24 31:1
31:20 34:24 39:21
39:23,24 47:20
49:11
**judgment** 3:7
**july** 2:5 21:17
46:12 57:12
**june** 6:25 46:12
46:18
**justice** 17:14
**justify** 39:6

**k**

**kelley** 20:8
**key** 7:8
**kind** 12:4 30:4
32:19,21

**kinds** 12:18
**kingate** 1:14 6:12
7:9,18,20 10:21
11:3,13,16,20,23
11:22 12:1 13:6
13:11
**kingate's** 11:17
**knew** 12:3
**know** 10:18,21
11:5 12:20 15:17
16:3 17:5,18 18:9
18:12,12,14,14,22
19:9,12,15 20:1,8
21:7 22:14 23:1,5
24:19 25:24 26:21
26:23 27:21,23,24
29:6,21 31:2
32:13 33:8,15,23
34:25 35:21 37:1
39:14,18,21 40:17
42:6 43:4,23
45:13 48:13,17
49:3,8 53:12,21
53:22,24 54:6
**knowledge** 7:13
11:17 16:3 40:12
40:14,16 47:22
**knowledgeable**
22:8
**known** 36:12
**knows** 25:14 44:1
**kratenstein** 4:25
20:22 31:15 37:10
40:23 41:15,17,18
45:12,15 46:11,16
46:18,21,23 47:1
47:12,16,18 55:3
**kwon** 5:13

**l**

**l** 1:7 3:25 56:3
57:3,8
**label** 48:18

labeled 22:7
labeling 50:15
lack 13:7,8
lacks 8:7
laptop 28:14
large 4:14 14:9
44:2
late 6:4 42:14
lawyer 22:9 49:9
lawyers 11:8 12:7
25:18,20
leads 25:9
learned 23:20
leaves 18:15
led 23:2
ledger 32:12,22
left 32:9
legal 24:23 57:22
legitimate 53:7
legwork 37:9
lehman 52:20
length 17:24
letter 6:14,20 7:6
10:7 19:1 22:5
29:25 30:1 36:14
42:10 46:11,19
letters 47:3
library 26:9
life 44:6
lifetime 26:23
light 39:21
limited 28:13
linked 53:9
liquidate 42:22
liquidated 37:17
42:2,21 45:7 46:7
list 8:22 13:10
21:14 43:13 51:15
listing 20:24
literally 12:10
litigated 10:16
little 10:20 21:8
37:8 48:18

lives 22:12
llc 1:8
llp 4:2,13,20 5:1,8
local 3:3
location 9:20
locations 27:8
long 12:16 16:7
20:1 34:10 35:18
45:24
longest 29:13
look 13:7,17
18:16 19:4 21:14
22:14 23:8 24:1
25:17,18 26:25
27:12 29:15 31:3
31:4,10 32:20
33:21 34:4 35:14
35:25 36:3,4,6
40:2 46:12 50:1
50:18,25 51:14,16
51:17
looked 25:20,21
26:10 30:19 31:8
36:3 39:18 47:24
48:1 49:10
looking 25:6
30:12,25 34:17
46:22
looks 13:18 37:24
loss 32:14
lot 25:24 33:22
35:20 39:5 40:25
48:4 53:18
love 42:4,6,22

**m**

m 2:10 5:6
machine 26:9
madison 4:22
madoff 1:7 3:1
7:20 10:18,23
11:1,10,17,17,24
11:25 12:2,13
14:5,17 16:14

18:13,13 20:9
22:23 33:5 34:9
37:11,16 38:21
40:8,12,20 41:22
42:1,2,13 44:3
45:2 46:10,25
47:2 52:14 53:10
madoff's 14:10,14
31:5 38:24 42:11
42:16,20 52:11
magistrate 16:10
22:15
mails 13:2
main 27:13
majority 22:16
29:3
making 22:10
37:4 38:1,7
manageable 48:21
49:4
management 7:9
32:15
manager 7:17
11:19,21
manner 14:1
manskey 7:19
market 38:1,7
markings 54:5
marshall 4:8 6:15
massive 14:12
48:16
match 52:10
materials 28:20
matter 6:2,7,12
42:24
mattera 4:8 6:15
6:15,19 14:4
maturity 52:18
mbna 42:18
mcdermott 4:20
41:19
meagher 5:1

mean 10:12 13:14
16:16 17:6 19:17
25:19 26:13 37:6
48:21
means 26:3 35:20
mechanism 11:23
media 26:21
28:11
meet 12:17
memory 28:17
mere 37:5 43:1
met 47:2
michael 5:13
microfiche 28:15
microfilm 16:11
25:22 28:15 31:3
34:6 42:13 48:15
48:20 49:3 51:3,8
microfilms 33:22
million 22:22
24:17,24 28:22
44:15 48:22 49:6
49:14
millions 30:11,11
mind 7:12
mineola 57:25
minimum 40:15
minions 26:11
minute 21:6 28:9
41:3
minutes 17:9
mistake 40:21
moment 25:4,8
money 10:14
25:25 35:20,25
36:18 52:14,17
morgan 52:21
morning 6:19
10:4,5 41:18
43:11 45:18,19
moss 21:12 29:24
31:1 34:24 39:21
39:24

moss's 16:10 22:15 39:23
motion 7:14 13:15 13:20,25 40:20,23 41:2 48:3 50:2,13 50:23 53:17 54:8
motions 3:7
mountain 39:11
move 9:25
murphy 6:4

**n**

n 4:1 6:1 56:1,3,6
name 11:13
narrow 8:13,14 8:18 45:17
narrowed 8:22
narrowing 25:7
national 38:17 42:17 53:7,8
ncss 38:18,23,24 53:6
necessary 24:25
need 13:21,23 22:13 31:20 41:4 45:8,24
negotiate 9:9 38:4 38:10
negotiating 12:7
negotiation 50:13
network 28:15
nevel 15:16
never 18:13 22:23 25:20 41:24 45:6
nevertheless 8:10
new 1:2 2:3,3 4:5 4:16,16,23,23 5:4 5:4,11,11 14:13 14:16
night 23:20
non 6:24
normally 25:12
north 53:7

note 42:25
notion 30:13
notwithstanding 30:13,22
number 20:17 21:21 36:21 38:13 48:23 49:3
numbers 7:4
numerous 8:11
ny 4:5 57:25

**o**

o 2:9 6:1
object 37:12
objected 8:7 35:8
objection 15:1 16:17 35:7
objectionable 18:2
obtain 7:3
obviously 18:12 18:18 22:14 43:3 44:2 53:14
occur 46:4,6
occurred 19:25 43:1,4 45:7
odd 52:23
offered 8:16,21 9:9,15,19
offering 9:22
office 29:2 38:22 38:24 40:14
officer 7:21
official 18:11
oh 10:11 21:21 33:11 46:17
okay 11:11 14:2 15:3 16:19 17:15 19:22 20:14 21:2 21:3,19,25 22:1 23:10,17,18,21,23 24:18 26:3 31:24 32:8 35:1 40:1 41:14 45:23 49:16

49:22 54:12
old 57:23
once 47:2
ones 33:18 34:2 34:11,13,17 38:14
onus 41:2
open 34:10
opened 37:16
operate 27:23
operation 7:9
opportunity 16:13,14 40:10 45:8
opposed 10:10
order 10:1 16:10 20:24 22:15 39:23 55:4
orderly 29:18
orders 7:13 9:6 29:17,18 39:23
ought 50:5
outlandish 30:13
outset 8:2
outside 22:6,7 38:3
oversight 11:22
ownership 52:25

**p**

p 4:1,1 6:1
page 33:2,3 34:5 34:13 56:5
pages 34:7,8 48:22 49:6,14
paid 49:19
paper 28:11,20
parameters 12:9
park 4:15
part 11:5 23:13 39:22
particular 37:8
particularly 13:22

parties 5:9
party 6:24 30:7 44:25
pause 6:13 14:6 31:25 46:14,20
pay 13:19 23:6 24:2,24 35:21 50:19,25 51:6
pays 8:24
pdas 28:16
pending 20:4 40:20
people 16:1 17:18 20:16 22:3 25:16 28:4 29:4 31:5
percentages 34:12
period 29:13 42:16 45:24,25
permission 14:19
permit 30:24
persists 7:15
perspective 15:11 35:10
ph 6:22 7:19,19 22:21 36:14 44:22
physical 9:20
picard 1:11,18 6:22 23:1
picard's 11:8 12:7
pick 29:16 50:16 51:15
picower 5:9 20:24
pie 34:5 35:17 43:10
pig 39:16
place 11:23 25:12 30:8 33:13,24 35:23 38:9
plaintiff 1:12,19 13:9
players 7:8
plaza 4:4

pmr 32:14,15
point 19:7 24:20
  27:13 30:15 35:1
  39:16 41:5 48:3
  48:14 54:1,13,15
  39:16
poke 39:14
ponto 4:7 6:17
ponzi 27:17 36:18
portfolio 32:14
portion 53:4
portions 18:21
pose 15:13
position 23:12
  24:12 33:18 34:6
  47:14 50:3 51:5
  54:1
positions 32:21
  34:10 42:21 47:8
possession 28:6
  28:19
possible 42:23
  45:16
post 33:15 43:20
  52:22
posted 22:20
potential 13:8
potentially 9:18
  20:5
practical 14:11
pre 21:9 54:3
predecessor 38:17
predicated 27:13
  31:5
preponderance
  46:4
present 17:16
preserved 28:18
preset 30:13
previously 15:12
print 38:22
printed 38:23
  53:10

printer 38:22
prior 9:2 11:5
  33:12 39:23 48:5
  54:2
prison 15:21
privilege 9:2,4
probably 26:21
  48:21 49:15
problem 21:16
procedure 15:1
  18:23,25
proceeding 6:22
  6:23 7:10,25 8:6
  21:12 24:21
proceedings 55:9
  57:4
process 29:18
  33:3 51:4
processed 32:4,7
  32:18,19,20 33:2
  34:14 35:13
produce 8:17,24
  10:1 13:17 23:7
  26:21 29:16 50:6
produced 8:4 11:2
  11:14,14 12:8,15
  16:11,13 22:15
  33:8 35:6 38:11
  38:13 39:1 43:6,8
  43:15 45:16 48:9
  49:21 52:24 54:9
producing 32:21
product 27:10
production 8:25
  9:2 11:6 18:24
  21:13 43:19
productions 7:23
  8:1,3 14:17
profit 32:14
profits 48:5
proportionality
  35:20,23 43:23

proposals 9:3
propose 21:15
  23:25
proposed 7:25 8:5
  8:11,13,14 9:13
  9:23
proposing 14:20
proprietary 38:1
prosecutions
  19:10 20:4
protection 1:4
protections 9:5,7
protective 9:6
  29:18
protestations
  30:23
proud 48:10
prove 30:19 45:4
  46:2 49:25 53:13
proved 24:14
proves 30:22
provide 20:24
provided 8:8
  22:21 23:19
provision 9:8
provisions 9:7
public 44:2
pull 21:15
purchased 22:23
  24:13 27:16 36:17
  36:22 37:6,7
  52:14
purpose 15:20
  19:8
pursuant 3:3 16:9
  22:15
put 26:9,20 31:6
  35:3 39:18 40:22
  41:1 43:3 47:23
  48:23
puts 44:15
putting 39:7 40:4
  52:16

proposals 9:3

q

question 16:14,15
  18:18 19:2 35:19
  36:19 37:11 54:25
questioning 14:17
  17:10
questions 15:13
  15:17 16:1,2
  20:15 22:4 43:21
quickly 43:24
quite 44:1
quoting 28:5

r

r 2:9 4:1 6:1 56:3
raising 11:21
ran 11:25 35:6,9
random 34:18
rca 42:18
reach 6:5 7:1
read 19:13,13,14
  21:11 26:23 27:25
readable 48:24
readily 33:19
real 19:7 40:16
  44:17 53:13
reality 11:18
realize 19:2 24:16
  28:2,7 48:12
  52:13
really 22:13 25:16
  44:17 48:17 50:25
  51:20
reason 12:13,24
  18:18 19:1,11
  29:7 40:3
reasons 18:20
  43:19 44:13
recall 16:9 48:2
recognize 40:25
record 13:22,23
  30:19 32:22 33:18
  34:6 36:5 38:23
  40:11 44:21,23

57:4
records   27:15,15
  28:11 29:25,25
  30:2,3,17 31:2
  33:12 34:11,20,22
  37:24 38:7,11,19
  39:1 40:15 42:11
  42:16,20 43:6,7
  43:12,14 45:3,3,6
  45:15,25 48:7
  50:6,8 54:21
redacted   17:4,7
  17:25
reel   48:19 49:3,4
reels   16:11 20:17
  25:23 34:6 47:23
  47:24,25 48:16,20
  50:17 51:16,16,17
  52:24
reference   34:24
  38:15
referred   36:15
refused   9:24
  29:13
refuses   8:24
refute   47:21
regard   36:25
regarding   3:6
  6:21 13:23 15:17
regardless   43:1
regularly   47:4
rejected   8:20 9:21
  30:15
relate   33:23
related   8:15
relating   11:4,9,16
  12:12
relationships   7:12
relevance   7:15
  10:10,11 13:7,8
  50:21
relevant   7:16 9:18
  11:5 12:12,14,20

12:25 20:10 50:18
  50:18 54:24
relying   22:9
remaining   9:10
remember   15:15
  48:8 49:8
remembered
  19:24
report   17:12
  18:11 32:9
reporter   57:9
reports   16:21
  32:8,15 33:2,19
  43:21
represent   19:12
  24:3 33:15 34:4
representations
  49:20
representative
  13:2 32:25 34:15
  35:17 50:16 51:15
represented   41:10
  48:8
representing
  15:19 41:9
represents   21:23
  31:7 34:7
request   6:7 7:7
  9:13
requesting   6:20
requests   7:4,4 8:4
  9:19 10:2
require   14:17
  37:8 51:3
requires   30:2
research   35:25
resolution   7:2
resolve   42:5
resolved   9:23
resolving   44:12
resources   8:8 10:8
  10:9,13 43:25
  44:11

respect   28:20
  50:10 52:10 54:18
respectfully   6:7
  19:3 36:7
respond   34:20
  41:5
response   8:1,3,20
  12:21
responsive   7:16
  7:24 8:17 9:18
  10:1
responsiveness
  9:2,11
rest   41:4
restore   25:25 26:1
  26:13,15
result   29:20
resulting   8:22
reversing   25:6
review   8:18 9:1
  9:11,15,19 14:12
  43:13
reviews   49:9
right   10:22 14:23
  15:4 16:18,24
  19:19 20:13,14,19
  20:23 21:1 22:17
  24:21 25:1 26:7
  26:16 27:5,18
  29:11 30:5,6,25
  31:3,11 32:6,9
  33:14,16 35:9,24
  36:8,24 37:4,15
  37:18,21,23 39:4
  39:15 41:5 45:21
  47:13,17 50:1
  53:2 54:10 55:2,4
  55:8
road   57:23
rockefeller   4:4
role   11:22
roll   26:9

room   22:20 23:3
  27:19,20 35:1,2
  36:15 47:22,24,25
  48:1,10,11,12
roth   5:8
rule   3:3 6:25 8:2
  9:8 27:24
rules   27:23
ruling   18:12
run   8:22

**s**

s   4:1 6:1 56:3
sage   4:21 41:19
  50:2 54:18
sages   41:21 42:1
  42:21 43:2 45:22
  47:9,10
sample   32:25
  34:15 35:17 50:18
  51:15
sandra   7:19
sat   29:1,10
satisfactory   48:19
savings   44:6
saw   17:5,22
saying   24:17
  35:18,19,22 49:7
  54:9
says   18:13 27:21
  28:5 31:1 34:5
  40:7 41:3 44:15
schedule   55:5
scheme   27:17
  36:18 42:3
schulte   5:8
schwartz   5:6 10:4
  10:6,6,11,22,24
  11:7,12 14:3
scope   44:3
screen   49:3
search   7:24 8:4,5
  8:14,18,22 9:14
  11:20 12:9,21

25:22 26:20 31:10
35:6,8,11,15
**searchable**  26:16
48:24 49:5
**searched**  29:11
35:10
**searches**  10:8
12:23 13:3
**second**  55:5
**securities**  1:4,8
22:23 27:16 32:11
32:22 38:18 42:18
43:12,20 45:21,23
46:1 47:6 53:1
**security**  24:12
**see**  13:4 19:7,11
21:15 31:3 32:7
32:17,18,20,20
33:1,7,17 34:5
42:4,7,23 45:8,25
51:19
**seeing**  27:9
**seek**  7:7 14:19
**seen**  12:19 22:4
33:20 42:4,9
43:10 45:12,17
**sell**  38:4
**sense**  11:15
**sent**  54:22
**separate**  14:20
38:2
**separately**  15:5
**seridian**  7:19
**served**  6:24 7:20
14:24
**set**  10:7 14:10,12
18:10
**seth**  5:6 10:6
**settled**  19:9
**seven**  7:5 24:15
**shadow**  46:2
**sharing**  12:4

**sheehan**  4:9 6:3,3
6:9,11 15:2,6
16:17,22 17:1,21
18:5,8,17,25
19:19,22,25 20:11
20:13 21:1,4,23
23:12,13,16 25:2
25:3 26:3,7,11,14
26:18 27:1,3
31:18,20,23 32:1
32:3,11 33:11
38:9,13 41:20
45:3 46:6 47:21
52:13 53:6,22,25
54:4,7,10,12,14
54:17,20,23,25
55:7
**sherri**  3:25 57:3,8
**shifting**  13:23
50:21 53:19
**shop**  12:2
**short**  50:23
**shortly**  6:6
**show**  29:6 30:4
31:12 33:3,13
37:7,21,21,23
38:5,6,7 42:2,5,11
42:12,23 45:5
46:8 47:11 50:17
50:19 52:24 53:17
**showed**  52:19
53:1,4
**showing**  35:17
42:12,19 46:5,6
50:12
**shown**  30:21
35:16
**shows**  34:14 37:12
50:7
**side**  32:9 41:12
44:2
**significantly**
22:12

**simply**  22:9 50:11
**sipc**  24:3,24 30:14
**sit**  26:19,23
**six**  33:8
**skadden**  5:1
**slate**  5:1
**slight**  50:2
**sliver**  53:15
**small**  50:16 51:15
53:3
**smb**  1:6,13,20
6:23
**solutions**  57:22
**somebody**  39:11
**soon**  42:23
**sooner**  40:9 42:7
**sorry**  18:7,8 45:15
46:15
**sort**  29:7
**sound**  16:4
**sounds**  15:6 16:24
17:9 54:24
**sources**  28:11
30:7
**southern**  1:2
**spans**  25:7
**speaker**  31:17,19
31:21,24
**specific**  7:8 8:6
13:10 15:13 16:1
16:2 20:16 50:4
**specifically**  12:18
**spend**  35:25
**spent**  30:12
**spread**  29:3
**square**  5:3
**stacey**  4:10
**stake**  43:25
**stamped**  49:1
**standard**  46:3
**stanley**  52:21
**start**  25:7,15
28:24,25 33:6,10

41:20
**started**  32:5 37:18
42:3
**state**  7:11 26:15
**stated**  9:16
**statement**  30:5
34:21
**statements**  47:11
50:8,9 51:18 52:7
52:19 53:1,6,8
**states**  1:1
**status**  3:6
**sterns**  52:20
**stipulation**  3:6 6:5
**stock**  32:21 33:18
34:6,10 36:5
37:17 41:21 42:1
42:2 45:6,7
**stocks**  37:13,22
38:4 42:13,15,18
46:7
**stood**  15:16
**storage**  28:15
**stored**  28:12,21
**strategy**  47:7
**streamline**  42:24
**strike**  48:6
**stuart**  2:10
**study**  43:11
**stuff**  10:14 23:7
29:16 32:19 39:12
54:7
**subject**  8:19
**submission**  36:10
53:5
**submit**  36:7 40:11
**subpoena**  6:25 7:4
7:5 8:2,8
**substantially**  7:14
**substantiate**  8:9
30:7
**suggest**  40:6,19
50:14,22 51:2

suggested 39:9,25
suggesting 33:12
suggestion 51:14
suit 24:16
suite 57:24
summary 3:7
  33:19
supported 52:25
suppose 17:19
  19:23 20:10 50:21
supposed 29:4
supposedly 50:7
sure 13:5 31:21
  41:16 48:8
suretti 6:22
suspicious 50:15
  50:15
switched 45:21
system 38:3

**t**

tab 46:15
take 14:13,15
  36:20 43:24 47:20
taken 24:12 34:24
takes 25:12 35:23
talented 25:16
talk 12:2 13:12
  15:3 40:8
talked 15:18
  25:15
talking 21:21
  26:22 30:12 43:12
  48:16,21 49:6
  51:18,20
tape 22:7 31:6
tapes 21:24,25
  25:13 27:7,12,18
  27:19,19 28:16
  29:12 31:9 34:9
  35:3,12,16 39:7
  39:10,12,17 40:5
  41:4 54:2

task 27:8
technical 8:15
technology 26:2
ted 48:8
tell 13:15 24:14
  31:10 41:7
telling 35:13
  40:13
ten 7:21 27:14
terabytes 26:22
  28:22
term 30:2 37:14
  50:23 52:18
terms 7:25 8:4,5
  8:14,18,22 9:13
  9:14 12:21 26:20
  35:6,8,11,15 44:8
terribly 16:6
test 45:9
tested 22:24
testified 52:12,14
testify 20:9
testimony 52:11
thank 6:11 10:3
  14:3,4 21:4 32:1,2
  41:13,17 45:10
  47:18 55:3,7,8
thanking 41:20
theory 11:15
thing 17:3 22:1
  25:24 33:17 36:25
  43:9 53:23
things 11:7 13:24
  19:16 29:2 31:9
  32:21 36:9 41:24
think 11:1 12:19
  13:10 14:15 15:15
  16:20 17:1 22:18
  24:22 25:8,9 27:3
  29:25 35:25 36:14
  38:24 39:14,21
  40:19,19,20 41:1
  41:4 43:14,19

44:13 45:8 50:2,4
  51:14
third 5:10 30:7
  44:25
thoroughly 35:10
thought 15:25
  21:13 33:7
thought's 19:25
thousands 12:23
  12:23 28:3 30:10
  30:10
three 16:25 17:1
  20:14 22:2 27:7
  33:22
tied 14:22 49:24
time 14:22 21:8,9
  23:9,18 26:6
  29:13,24 35:7
  36:22 39:9 40:13
  41:22,23 42:16,22
  45:24,25 47:5,8
  47:20
times 5:3
today 6:7,20 13:1
  29:20 35:18 38:21
  39:20 40:1,19,24
told 18:14 20:10
  22:6
tons 43:7,7
topics 3:1 14:5
  15:4,8,17 20:15
  20:25
totaling 28:22
totally 10:15
track 9:13
trades 40:14 43:1
  43:4 45:6 46:5
  47:10
trading 29:25,25
  30:2,3,4,8,18 31:2
  32:22 33:13,18,24
  34:6,21 37:20
  41:11 43:2 44:17

44:21,23 46:9,25
  47:1,4,15 50:6,8
  51:19 52:25 53:13
  54:22
transactions 52:4
transcribed 3:25
transcriber 57:9
transcript 57:4
treasuries 36:11
  36:12,17,20,22
  37:5 52:11,12
treasury 51:18,19
  52:10,16
tremont 5:2 6:24
  7:15,16,17,22,23
  8:7,12,16,17,20
  8:21,23 9:5,11,21
  9:24 10:1,6,7,16
  10:18 11:3,16,18
  11:23 12:1,11
  13:11
tremont's 7:7,18
  9:16 11:9
trial 20:6 49:1
  55:6
tried 32:3
trouble 19:4
true 36:25 57:4
truly 12:14
trustee 1:11,18
  4:3 6:4,16,24 7:1
  7:25 8:5,11,13,14
  8:16,18,24 9:8,13
  9:14,19,23,25
  14:24,25 16:9
  20:2 23:7,7 24:11
  24:22 25:10 28:5
  34:19 35:20 36:5
  38:12 40:4 41:3
  42:19 44:8,15,25
  49:25 50:11 51:3
trustee's 7:6 8:2
  9:3,18,20 22:22

23:12 48:23
**try** 27:5 42:11
  51:4 54:20
**trying** 7:1 43:5
**tune** 24:22
**turn** 10:15 50:11
**turned** 11:8 12:11
  37:18
**turning** 43:23
**turns** 14:16 31:1
**two** 14:5 15:3,7,25
  19:9 20:8 31:22
  33:20 36:9 39:22
  48:23
**types** 32:9

**u**

**u** 56:3
**u.s.** 2:1,11 18:19
  19:3,8 20:2
**uh** 22:11
**unclear** 43:20
**understand** 10:19
  18:17 23:5 24:5,7
  27:4,22 33:24
  47:15 51:22 54:17
**understanding**
  26:2 52:2
**undisclosed** 18:20
**unidentified** 2:13
  31:17,19,21,24
**united** 1:1
**universe** 21:20
  23:3
**unnecessary** 9:4
  9:12
**unprocessed** 32:4
  32:8 33:2 34:6
**unproduced**
  53:20
**unredacted** 18:5
  18:10
**unremarkable**
  37:6

**usage** 30:2
**use** 25:13 47:22
**usual** 20:24 47:14
**utilize** 40:9
**utilized** 27:11
**utilizing** 40:23

**v**

**v** 1:6,13,20
**vast** 22:16 29:3
**vendor** 22:7,8
  48:18
**verification** 45:1
**veritext** 57:22
**versus** 6:22

**w**

**wait** 41:3
**want** 13:19 17:8
  17:19 18:20 20:5
  23:16 27:5 30:1
  31:12,16,21,22,23
  38:16 41:20 45:4
  46:3 50:25 51:5
  53:22,25 54:1,12
**wanted** 15:16
  33:12 49:12 53:23
**wants** 26:25 40:7
**watch** 39:12
**way** 11:8 13:16
  15:4 17:11 20:5
  26:12 53:9
**we've** 12:10,17,17
  20:1,2 25:15
  27:10 30:19 35:3
  36:1,9 38:15
  40:25 41:1,23
  43:5 44:11 45:12
  52:23 53:3,12,15
  54:7
**went** 12:22 17:23
  26:8 32:15
**westminster**
  42:17 53:8

**wherewithal**
  49:24
**winded** 35:19
**wish** 43:10
**words** 26:15
  33:19 34:18
**work** 27:10 32:5
  54:19
**working** 11:7
  27:11
**world** 25:24 38:3
**worth** 10:14 36:16
**written** 36:14
**wrong** 29:8
**wrote** 6:14,20

**x**

**x** 1:3,10,17,23
  18:13 56:1

**y**

**yeah** 15:15 17:7
  17:22 20:13,20
  21:18,19 23:10,15
  27:2 38:13 46:23
  47:19 53:24
**year** 7:2 8:10
  12:16 14:13 33:2
  47:2
**years** 7:21,24
  10:17 12:9,10
  24:15 26:8 27:14
  48:15 49:21 54:22
**yesterday** 22:2
**york** 1:2 2:3,3 4:5
  4:16,16,23,23 5:4
  5:4,11,11
**young** 49:9

**z**

**zabel** 5:8
**zealously** 12:3

# BakerHostetler

Baker & Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

David J. Sheehan
direct dial: 212.589.4616
dsheehan@bakerlaw.com

August 25, 2017

**VIA EMAIL**

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, NY 10022
hchaitman@chaitmanllp.com

Andrew B. Kratenstein
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173-1922
akratenstein@mwe.com

Re:     *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789 (SMB) – *Requests for Documents*

Dear Ms. Chaitman and Mr. Kratenstein:

We write regarding the ongoing email correspondence concerning your requests for additional documents and productions, which has been the subject of a great deal of back and forth.  We understand from Ms. Chaitman's recent email that she now seeks "all documents showing BLMIS' or Madoff's ownership of securities, regardless of whether it is House 5 or House 17, and covering the entire period from 1975 – 2008."[1]  Given the continued confusion surrounding our recent productions and the Trustee's data set, we write in an effort to comprehensively address your questions so that our discussions going forward can be more focused.

---

[1] July 29, 2017 6:53 a.m. E-mail from H. Chaitman to K. Keranen ("July 29 Email").

*Atlanta     Chicago     Cincinnati     Cleveland     Columbus     Costa Mesa     Denver
Houston     Los Angeles     New York     Orlando     Philadelphia     Seattle     Washington, DC*

Helen Davis Chaitman
Andrew B. Kratenstein
August 25, 2017
Page 2

I.    Summary of the Trustee's Data Set and Disclosures

As a preliminary matter, given Ms. Chaitman's ongoing complaints regarding the Trustee's discovery practices, we would like to remind you of the contents of the Trustee's data set and reiterate when this data was disclosed to you.

As you have long been aware, shortly after his appointment, the Trustee's counsel and consultants took custody of thousands of boxes of hard copy documents and thousands of pieces of media, along with multiple BLMIS computer systems, found at the offices of BLMIS, its offsite storage facilities, and other locations.  We have produced to you three indices that catalog the data collected at BLMIS: the Microfilm Index, the Warehouse index (containing list of all hard copy documents), and the Media Index (containing list of all electronic media, etc.).  From this enormous collection of data, the Trustee created the BLMIS Database, which contains approximately 4.7 million scanned hard-copy documents and 25 million electronic documents, totaling just under 30 million documents.[2]

As the Trustee has disclosed in hundreds of initial disclosures and discovery responses over the years, not all hard copy and electronic records were scanned and/or restored, given the immense volume of data.  Rather, the Trustee's counsel and consultants scanned and/or restored those records that, in the course of their investigation, they determined were potentially relevant and proportional under Fed. R. Civ. P. 26, given the enormous restoration costs and the cumulative and duplicative nature of the underlying data.  The scanned and restored materials were added to the BLMIS Database to facilitate the Trustee's administration of the BLMIS estate—including the investigation of the Ponzi scheme, determination of individual claims, and prosecution of hundreds of adversary proceedings.  Accordingly, as specifically detailed on the BLMIS Warehouse Index and Media Index produced to you by the Trustee, there are thousands of boxes of hard-copy documents and thousands of pieces of media that have not been scanned or included in the BLMIS Database—including unrestored microfilm reels, which we will address in greater detail below.

From the approximately 30 million records in the BLMIS Database, as well as certain third-party records obtained in the course of his investigation, the Trustee created E-Data Room 1, a database that contains over four million records.  E-Data Room 1 was created pursuant to the Order Establishing Litigation Case Management Procedures for Avoidance Actions (ECF No. 3141) (the "LPO"), which permits the Trustee to produce an expert report "and provide access to the underlying documentation on which the summary report relies in an electronic data room for review by the defendants."  LPO at 4.  The Trustee first provided Ms. Chaitman with access to E-Data Room 1, and the corresponding E-Data Room 1 Manual, which the Trustee makes

---

[2] A large number of these electronic documents are e-mails, calendar entries, and other files created within the hard drives of various computers at BLMIS.

Helen Davis Chaitman
Andrew B. Kratenstein
August 25, 2017
Page 3

available to all defendants, on June 23, 2014.  We also sent Ms. Chaitman a letter, dated
September 26, 2016 (the "September 2016 Letter"), which provided a detailed and personalized
description of the contents and structure of E-Data Room 1.  This letter was sent in connection
with the Trustee's early production of the Bruce G. Dubinsky Expert Report (the "Dubinsky
Report"), which the Trustee produced in the *Wilenitz* matter, as a courtesy, in order to facilitate
your analysis of the Trustee's data.

As detailed in the September 2016 Letter, E-Data Room 1 contains documents separated
into three general categories/folders: (i) Data, which contains account statements and ledgers
organized by data source (including microfilm); (ii) Documents, which contains copies of
scanned hard-copy documents obtained from BLMIS facilities and third parties, organized by
document type and/or source; and (iii) Financials, which contain financial documents obtained
from numerous institutions, organized by source.  Collectively, these folders contain—and have
long contained—many of the documents you continue to seek, including documents responsive
to certain search terms you have asked the Trustee to run, which we will address in greater detail
below.

As evidenced by the disclosures made by the Trustee over the years, including those
described above, the Trustee has never represented that E-Data Room 1 contains all of the data in
the Trustee's custody, or that the Trustee had restored and/or processed every BLMIS document
and piece of media.  We find Ms. Chaitman's accusations to the contrary to be unfortunate,
particularly given that our disclosures in these cases have always endeavored to be, and in fact
have been, consistently clear on these points.

Finally, Ms. Chaitman's ongoing accusations regarding the Trustee's significant "trading
records" productions and representations to the Court are false and do not appear to be made in
good faith.  First, contrary to Ms. Chaitman's repeated assertions, Judge Bernstein never
"ordered" the Trustee to produce anything at the March 17, 2016 hearing in the *Wilenitz* matter.
Rather, the Court permitted Ms. Chaitman to file a motion to compel, which she eventually filed
and was subsequently referred to arbitration before Judge Maas, on the consent of both parties.
At the December 13, 2016 arbitration, Judge Maas instructed the Trustee to produce any
additional pre-1992 "trading records," similar to the Depository Trust & Clearing Corporation
("DTCC") records Ms. Chaitman had pursued in the past.  After this arbitration, and consistent
with Judge Maas's order, the Trustee took the following steps:

- Searched the BLMIS Database using the search terms "Depository Trust" and "National
  Securities" and produced <u>all</u> documents that hit on those search terms;

- Restored documents from 201 reels of microfilm with pre-1992 labels and produced <u>all</u>
  documents restored from those reels; and

Helen Davis Chaitman
Andrew B. Kratenstein
August 25, 2017
Page 4

- Searched the BLMIS Database with an additional 147 search terms and produced <u>all</u> documents that hit on those search terms (that were not already in E-Data Room 1).

Contemporaneously with these efforts, the Trustee disclosed to Ms. Chaitman the specific steps he was taking to identify additional "trading records," including all search terms applied across the BLMIS Database, and provided Ms. Chaitman with the BLMIS Warehouse and Media Indices, as noted above. At no point did Ms. Chaitman object to any of the search terms used or any of our restoration efforts. Instead, months later, in connection with the "Day Two" deposition briefing, Ms. Chaitman first objected to those search terms and proposed a set of alternate ones, which we have been discussing over the past few weeks and will address in detail below.

Moreover, as a reminder, Judge Maas denied Ms. Chaitman's second motion to compel in his March 15, 2017 order [ECF No. 15236] (the "March 15 Order"), which was based largely on the Trustee's efforts described above. In that order, Judge Maas directed Ms. Chaitman to confer with the Trustee in person concerning any additional document requests —after consulting the indices we provided—which "should enable Ms. Chaitman to formulate more focused requests for trading records." *Id.* at 6. Judge Maas further directed Ms. Chaitman to "send the Trustee's counsel a letter specifically identifying the additional documents that she seeks to have produced, and where she believes they may be found." To be clear, Ms. Chaitman has never complied with this order, and instead improperly raised this issue before the Court in connection with the Madoff deposition hearings.

We hope this summary of the Trustee's data and disclosures puts a stop to the unfortunate accusations Ms. Chaitman has lodged against the Trustee's efforts and leads to a more productive relationship going forward. We are certainly willing to work with you in good faith in order to ensure that you have access to discovery that is consistent with the requirements and limitations of Fed. R. Civ. P. 26. To that end, this letter is intended to provide you both with the information you need to specifically target the materials you seek.

II.    <u>Microfilm</u>

Turning to our recent correspondence, Ms. Chaitman's email of July 27, 2017 at 5:38 p.m. raised several questions with respect to the microfilm the Trustee already has made available in E-Data Room 1 and through various productions ("July 27 Email"). Ms. Chaitman

Helen Davis Chaitman
Andrew B. Kratenstein
August 25, 2017
Page 5

asked us to identify the reels of microfilm already made available, their location on the Microfilm Index, as well as identify unavailable reels.[3]  *See* July 27 Email.

As you know from the Microfilm Index we produced to you, the Trustee is in possession of 5,299 reels of microfilm.  The reels are color-coded on the Microfilm Index to identify their production and restoration status, as is further described below.

| Color on Index | # of Reels | Status |
|---|---|---|
| Pale Green | 201 | Fully restored |
| Yellow | 394 | 329 Fully Restored; 65 Samples Only Restored |
| Red | 4,704 | Not restored / unavailable |
| **TOTAL** | **5,299**[4] | |

In the July 27 Email, you asked the Trustee to identify any "written instructions" provided to the litigation consultants who worked with the Trustee on the microfilm-related review and production.  *Id.*  Regardless of whether such written instructions exist, such communications between Trustee's counsel and his litigation consultants are protected work product and/or subject to the attorney-client privilege and we will not waive these protections.

A.  Documents Restored from 394 Microfilm Reels in 2009-2010

During his original investigation in 2009 and 2010, the Trustee restored documents from 394 microfilm reels and added those 413,000 documents to E Data Room 1.  These 394 reels are highlighted in yellow on the Microfilm Index.  Based on the BLMIS box labeling,[5] the documents restored from these reels consist of data for the time period between 1978 and 2008.  Of the 413,000 documents restored from these 394 reels, all but approximately 7,400 of these have long been available to you in E-Data Room 1.  The 7,400 documents restored from these reels that are not in E-Data Room 1 were provided to you in various productions made by the Trustee since December 2016, including documents responsive to 147 search terms we ran to assist you in identifying BLMIS "trading records," discussed above.[6]  This includes the most

---

[3] An Excel version of the Microfilm Index was provided to Chaitman LLP on July 14, 2017, and a PDF version was filed with the Court, also on July 14, 2017.  The Trustee subsequently clawed back the Excel version and provided replacement Excel spreadsheets to both Chaitman LLP and McDermott Will & Emery on August 8, 2017.

[4] There are an additional 7 reels of microfilm that have been restored, but were identified as duplicates of other microfilm reels. The demonstratives discussed at the July 26 hearing reflect a total of 5,306 microfilm reels, which includes these 7 duplicate reels.

[5] A limited number of reels that were found without labeling were subsequently labeled by the Trustee's consultants.

Helen Davis Chaitman
Andrew B. Kratenstein
August 25, 2017
Page 6

recent production of August 10, 2017, in which the Trustee produced the remaining 4,400 documents restored from these reels that were not previously available to you.[7]  As such, you now have access to all documents restored from these 394 reels.

There are 65 microfilm reels identified on the Microfilm Index as a "sample," meaning that the Trustee restored a small number of pages from these reels, but did not restore the full reel.  These "sample" documents have been produced to you and/or made available to you in E-Data Room 1 and are highlighted in yellow on the Microfilm Index.  The number of pages restored for a particular "sample" reel is also contained on the Microfilm Index, in the column labeled "Page Count."

B.  Documents Restored from 201 Reels of Microfilm in 2017

In addition, in response to your requests for BLMIS "trading records," the Trustee restored and produced all documents contained on 201 reels of microfilm that, based on the BLMIS box labeling, were likely to contain information from 1978 through 1992.  As you know, these are the reels highlighted in pale green on the Microfilm Index.  The entirety of these 201 reels have been restored and produced to you over the course of three productions between February and March of 2017, as set forth below:

| Production Description | Date Produced to Chaitman LLP | Date Produced to McDermott |
|---|---|---|
| 321 Documents from Set of 167 Reels | 2/3/2017 | 2/17/2017 |
| Remainder of the Set of 167 Reels | 3/6/2017 | 3/23/2017 |
| 34 Additional Reels of Microfilm | 4/26/2017 | 5/3/2017 |

Given the Trustee's recent productions, including the August 10, 2017 production discussed above, you now have access to all documents that the Trustee restored from BLMIS microfilm reels, which are identified on the Microfilm Index as yellow or pale green.

---

[6] March 21, 2017 Letter to S. Howell from M. Shifrin re: Supplemental Production.

[7] During our efforts to identify all documents restored from these 394 reels that were neither formally produced nor made available in E-Data Room 1, we discovered that there were 26 documents that were produced to Ms. Chaitman but not to Mr. Kratenstein.  Accordingly, these additional 26 documents were included in the August 10, 2017 production to Mr. Kratenstein.  The Trustee also produced a duplicate hard drive on August 21, 2017 after Ms. Chaitman's firm had difficulty accessing the original hard drive.

Helen Davis Chaitman
Andrew B. Kratenstein
August 25, 2017
Page 7

## C. Unrestored Microfilm

There are 4,704 reels of microfilm that remain unrestored. These reels are highlighted in red on the Microfilm Index. Because the documents contained on these microfilm reels have not been restored, they have not been produced and/or made available to you in E-Data Room 1.

III.  Documents Responsive to Specific Search Terms

Between June and August 2017, you requested the production of documents responsive to a total of 22 search terms that you provided (the "22 Search Terms").[8] The Trustee ran your 22 Search Terms across the BLMIS Database, which generated the following hits:[9]

| Name | Documents With Hits | Documents With Hits, Including Families | Unique Hits |
|------|--------------------:|----------------------------------------:|------------:|
| "Bank of Tokyo" | 5,848 | 9,744 | 1,169 |
| Barclays | 303,996 | 653,284 | 219,144 |
| "Bear Stearns" | 765,598 | 916,630 | 656,835 |
| Chase | 999,707 | 1,121,276 | 347,152 |
| Chemical | 227,599 | 380,135 | 64,087 |
| "Commercial Bank" | 15,510 | 33,597 | 3,025 |
| Continental | 96,782 | 218,548 | 50,401 |
| Fidelity | 1,548,685 | 1,649,488 | 817,833 |
| "Irving Trust" | 336 | 422 | 99 |
| Lehman | 971,112 | 1,111,786 | 811,651 |
| "Loeb Rhoades" | 23 | 32 | 5 |
| "Manufacturers Hanover" | 2,453 | 2,839 | 996 |
| "Marine Midland" | 930 | 1,096 | 43 |

---

[8] The 22 Search Terms are: "Bank of Tokyo," Barclays, "Bear Stearns," Chase, Chemical, "Commercial Bank," Continental, Fidelity, "Irving Trust," Lehman, "Loeb Rhoades," "Manufacturers Hanover," "Marine Midland," Meadowbrook, "Morgan Stanley," "National Bank of North America," NSCC, NatWest, National Westminster Bank, "Westminster Bank," NBNA, and "Bank! Trust".

[9] The results reflected in the chart above reflect the hits for search terms run across the Trustee's BLMIS Database using optical character recognition ("OCR") technology. The Trustee makes no representations as to the existence or non-existence of hits, beyond those search results noted above. As you know, while OCR is an effective means of searching across large volumes of data, it is an imperfect technology, particularly with respect to handwritten paper, or aged historical documents where certain characters and words may not be recognizable and/or may be presented in a format that does not yield a positive hit. The Trustee is undertaking his own search across historical files maintained at BLMIS for documents relevant to the start date of the fraud, which the Trustee will produce as appropriate. The Trustee reserves all rights to supplement and amend the search results in the above-referenced chart.

Helen Davis Chaitman
Andrew B. Kratenstein
August 25, 2017
Page 8

| Meadowbrook | 4,489 | 6,796 | 1,515 |
|---|---|---|---|
| "Morgan Stanley" | 708,745 | 816,575 | 86,456 |
| "National Bank of North America" | 259 | 320 | 221 |
| NSCC | 60,305 | 66,840 | 38,232 |
| NatWest | 4,848 | 271,293 | 1,995 |
| National Westminster Bank | 2,584 | 3,113 | 0 |
| "Westminster Bank" | 2,726 | 3,265 | 76 |
| NBNA | 295 | 326 | 138 |
| Bank* Trust | 37,105 | 61,690 | 18,308 |

The 22 Search Terms yielded a total universe of 4,102,555 documents (4,865,811 with families). Critically, 1,427,671 of these documents (1,482,240 with families) are already available to you in E-Data Room 1. In addition, the Trustee has separately produced—in connection with the various productions detailed above—132,820 documents responsive to the 22 Search Terms in the *Wilenitz* matter and 148,548 documents in the *Sage* matters. Accordingly, you already have access to many of the documents you seek.

Moreover, as we have previously disclosed to you, the "Financials" folder of E-Data Room 1 contains subfolders organized by certain financial institutions, including: Bank of Tokyo, Barclays, Bear Stearns, Fidelity, JPMorgan Chase, Lehman Brothers[10], and Morgan Stanley. These folders are likely to contain additional documents that interest you. As a reminder, E-Data Room 1 is also fully searchable.

IV.    Next Steps

Given the huge volume of responsive documents currently available to you, we request that you use these materials to determine what specific documents may interest you so that we can agree to a more focused inquiry. This is consistent with our previous request that you propose more narrowly tailored search terms.

As Judge Maas reminded both parties in his March 15 Order, Fed. R. Civ. P. 26 "requires that discovery requests be limited to items that are relevant to a party's claims or defenses and proportional to the needs of the case," before instructing both parties to "keep these requirements in mind" at a meet and confer. *Id.* at 6. The wholesale production of millions of records—with its accompanying production costs—is not proportional to the needs of these cases, especially

---

[10] Documents relating to Lehman Brothers are found under the "Barclays" folder due to the merger of those entities.

Helen Davis Chaitman
Andrew B. Kratenstein
August 25, 2017
Page 9

given the volume of responsive records already in your possession, which you can use to
formulate a narrower inquiry.

With respect to Ms. Chaitman's cases, and in further keeping with the March 15 Order,
we request that you review the indices that we have provided, which "should enable Ms.
Chaitman to formulate more focused requests for trading records." *Id*. at 6. As discussed above,
Judge Maas further directed Ms. Chaitman to "send the Trustee's counsel a letter specifically
identifying the additional documents that she seeks to have produced, and where she believes
they may be found." *Id*. We request that Ms. Chaitman review the detailed indices we provided
over eight months ago, which we believe will assist in formulating more tailored requests for the
documents sought, consistent with Judge Maas's directive.

Going forward, we propose a good faith meet and confer to discuss a more narrowly
tailored approach for identifying any additional documents, keeping in mind the Court's
guidance during the July 26, 2017 hearing concerning the microfilm. At that hearing, the Court
placed the burden on Ms. Chaitman to identify a small sample of additional microfilm reels that
she seeks and explain why they are relevant before ordering further microfilm restoration. *See*
July 26, 2017 Hearing Tr. at 50:10-21. We suggest applying the same principles to the non-
microfilm documents discussed above in advance of a good faith meet and confer.

Finally, we cannot continue to accept e-mail requests to various individual members of
the Baker & Hostetler team for documents, search terms, or the like. Rather, ***all*** requests for
documents should copy Ted Jacobs, Max Shifrin, and Cara McGourty and take the form of a
letter or other formal written request for documents. It is important and in the best interests of
these cases that we standardize the process and create a clear record to ensure we are all on the
same page.

Please provide us with your availability for a meet and confer. We look forward to
meeting with you soon.


Sincerely,

*/s/ David J. Sheehan*

David J. Sheehan
Partner


TA523

# CHAITMAN LLP
### 465 PARK AVENUE
### NEW YORK, NY 10022
### (888) 759-1114
TELEPHONE & FAX

*HELEN DAVIS CHAITMAN*
*hchaitman@chaitmanllp.com*

September 5, 2017

**Via Email:**  dsheehan@bakerlaw.com

David J. Sheehan, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

> ***Securities Investor Protection Corporation v.***
> ***Bernard L. Madoff Investment Securities LLC,***
> **Adv. Pro. No. 08-01789 (SMB) –**
> **Requests for Trustee to comply with**
> **Defendants' document demands**

Dear Mr. Sheehan:

I write in response to your August 25, 2017 letter ("Your Letter") in the hopes that we can move forward with the production by the Trustee of the documents to which Defendants are entitled.  We will comment first on certain inaccuracies in Your Letter and then make some suggestions as to how we can constructively move forward so that, ultimately, the truth will become clear.  You are correct, in the first paragraph of Your Letter, that our goal is to gain access to "all documents showing BLMIS' or Madoff's ownership of securities, regardless of whether it is House 5 or House 17, and covering the entire period from 1975 – 2008."  The reason we need all of these documents is that Mr. Madoff's testimony has made clear that his sole proprietorship and, from January 22, 2001 on, BLMIS, operated as one unified entity.  The Trustee's insistence, from inception, on viewing Madoff's operation as three separate entities (proprietary trading, market making, and investment advisory) has created a totally artificial and inaccurate picture of Madoff's operations and has led, in our view, to very serious factual misrepresentations to the courts and the customers.

We understand that the Trustee has now provided to us three indices that catalog the data collected at BLMIS:

a.  The Microfilm Index;

b.  The Warehouse index (containing a list of hard-copy documents);

c.  The Media Index (containing a list of all electronic media); and

{00032671 1 }

# CHAITMAN LLP

David J. Sheehan, Esq.
September 1, 2017
Page 2

We further understand that, from "this enormous collection of data, the Trustee created the BLMIS Database, which contains approximately 4.7 million scanned hard-copy documents and 25 million electronic documents, totaling just under 30 million documents." Your Letter at 2.

And we now understand that "there are thousands of boxes of hard-copy documents and thousands of pieces of media that have not been scanned or included in the BLMIS Database – including unrestored microfilm reels." *Id.*

The Trustee created the E-Data Room which contains "over four million records." *Id.* We also now understand the fallacy that the E-Data Room provides the Defendants with the discovery they need. As you say in Your Letter, the E-Data Room is simply a small subset of documents that support the Dubinsky Report. As you know from participating in Mr. Madoff's deposition, the Dubinsky Report is not worth the paper it is printed on. The errors made by Mr. Dubinsky are so fundamental that it is impossible to take the Report seriously. Thus, in our view, the Trustee has compounded his misrepresentations of what happened here not only by the publication of the Dubinsky Report but also by creating the fiction that the E-Data Room provides Defendants with all of the documents they need in order to defend themselves. For example, Ted Jacobs made the following representations to Judge Bernstein on May 17, 2016:

> What the Trustee has done in discovery in this case is quite remarkable, and I believe unprecedented, and we're very proud of it. Without even receiving a discovery request, we provide every single defendant with what we refer to as their core account documents, which are their customer statements, the cash activity of their accounts, their correspondence files with all of their correspondence to and from BLMIS over the life of their account; the account opening and closing documents; and in addition to that all of the applicable financial statements from BLMIS's financial institutions showing the bank transfer records from those independent third parties with respect to the cash activity in each and every single account. Where we don't have a complete set of customer statements, we produce portfolio management reports, which contain exactly the same information of the cash activity over the life of the account. Where we don't have those, we produce spiral notebooks where various employees over time at BLMIS kept meticulous notes of that cash transaction activity. And we provide that to every defendant. Wilenitz is no exception. We produced, I believe, approximately, 19,000 records that we've indexed to make it easy for the defendant to navigate exactly what's in that --
>
> THE COURT: 19,000 records for Wilenitz?

{00032671 1 }

# CHAITMAN LLP

> MR. JACOBS:  For the Wilenitz accounts, correct, over the life of their accounts.  And that includes all of the items that I just discussed.

Chaitman Exh. M, 5/17/16 Tr. at 7:2 – 8:4.

With respect to the Dubinsky report, Mr. Edwards stated as follows:

> As Ms. Chaitman knows, we have an expert named Mr. Dubinsky, who offers a very comprehensive report on that subject, and all of the data that he considered and utilized in connection with his opinions have been made available to every defendant through an electronic data room that contains, approximately, 4 million records.

*Id.* at 10:19-24.

Mr. Jacobs represented to this Court that the Trustee had put into the E-Data room every possible document a defendant could want to see relating to his defenses:

> MR. JACOBS:  Absolutely.  Every single document -- what we've endeavored to do, Your Honor, is that what we refer to as Electronic Data Room 1 contains all of the underlying documents considered by Mr. Dubinsky and we're also building upon that in including documents that our other experts who we may offer to prove transactions and who do other functions, all of those documents as well.  So, that's approximately 4 million records.  Not pages, but records.
>
> And it's an enormous amount of data that I believe is unprecedented, at least in my career, and for that reason we've structured the data room in a very organized fashion with issue trees.  So if you're a participant who's accessing the data room, you'll see something that you might be familiar with already in terms of like, an Outlook email folder tree that has topics, broken down documents, financials, third party records; and then each of those trees can be broken down further to drill down to J.P. Morgan statements.  You know, Chicago Options Trading information, Depository Trust Clearing Corporation documents; all of those types of things.  It's also searchable.
>
> **So, absolutely the Defendant has the ability to conduct whatever investigation they believe is relevant to the claims of their defenses, the same that our expert did, and they have access to all the same information that our expert did.  And we** did **that to be transparent and**

# CHAITMAN LLP

David J. Sheehan, Esq.
September 1, 2017
Page 4

**to provide any data that any litigant believes that they should have access to.**

*Id.* 11:11 – 12:14 (emphasis added).

Aside from the fact that the E-Data Room provides Defendants principally with the documents on which the Trustee intends to rely to prove the Trustee's contentions, the E-Data Room has been set up in a way which is terribly inconvenient and unfair to Defendants. Someone using the E-Data Room is not able to copy or print out a document. Rather, in order to obtain a workable copy of the document, the attorney for the Defendant is required to write to Baker & Hostetler and specifically request the documents they seek. While that, conveniently, provides your firm with evidence of precisely what information each defense counsel may be relying on, it imposes an enormous and unnecessary burden on defense counsel.

You state that Judge Bernstein "never 'ordered' the Trustee to produce anything at the March 17, 2016 hearing in the Wilenitz matter." Your Letter at 3. In fact, as you know, Judge Bernstein ordered the Trustee to produce any trading records he had not previously produced. ("Well, if the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room.") 5/17/16 Tr. at 69:19-21.

As you know, not a single document was put into the E-Data Room in compliance with Judge Bernstein's May 17, 2016 order. Similarly, Magistrate Judge Maas ordered, on January 4, 2017: "To the extent there are any additional relevant records of securities trading that have not been made available . . . through Data Room 1, **they must promptly be produced.**"). *See In re: Bernard L. Madoff,* Adv. Pro. No. 08-01789 (SMB) ECF No. 14807 at 3.

Moreover, at the June 29, 2017 hearing, Judge Bernstein acknowledged that there were two court orders requiring the production of trading records:

> THE COURT: **There are two orders directing you** –
>
> DAVID SHEEHAN: But why does she get discovery when she can't even prove what she's saying?
>
> THE COURT: **There are two orders directing you to turn over the documents**. You haven't told me that they're not relevant. You –

Tr. 6/29/17 at 74:11-16 (emphasis added).

# CHAITMAN LLP

David J. Sheehan, Esq.
September 1, 2017
Page 5

**Search terms**

You say that, following the January 4, 2017 order, the Trustee "searched the BLMIS Database with an additional 147 search terms and produced all documents that hit on those search terms (that were not already in E-Data Room 1." Your Letter at 3-4. This is inconsistent with what you told Judge Bernstein on July 25, 2017:

> So in the data room is the 400 tapes that we've put in there back in the early 2000s, or 2011 and '12. It's been there since at least 2012. We ran 147 search terms on that and produced the documents. And at the time there was no objection. Later Ms. Chaitman objected to our search terms, added 17 more. We ran those and gave her those documents. All right. So those have been from our perspective thoroughly searched by our search terms and hers.

Tr. 7/26/17 at 34:23-35:17.

As you know, neither I nor Andrew Kratenstein was ever consulted on the 147 search terms you applied to the paper and electronic documents in the BLMIS Database. We gave you a separate list of 22 search terms we would want used to search the BLMIS Database and, although we have received repeated assurances from your firm that you would produce to us the documents responsive to our search terms, you have never produced those documents. We do not need you to apply our search terms to documents in the E-Data Room because we have access to those documents. What we need you to do is run our search terms on the BLMIS Database and produce to us all of those documents because we do not have access to them.

We raised this issue with Kristin Keranen the day after the hearing at which you stated that you had run our search terms and provided us with the responsive documents. She responded on the same day, July 27, 2017:

> Hi, Andrew,
> My apologies for the confusion. Mr. Sheehan misspoke yesterday. While we did provide the hit results to you and Ms. Chaitman (see attached), we have not produced the documents. I believe the search terms as currently drafted would return over 3 million documents, not including the 800,000 already in EDR1. If you would like these documents produced from the BLMIS database, we are open to discussing that with you.
>
> Regards,
> Kristin
>
> **Kristin Keranen**
> Counsel

{00032671 1 }

# CHAITMAN LLP

David J. Sheehan, Esq.
September 1, 2017
Page 6



**BakerHostetler**
45 Rockefeller Plaza
New York, NY 10111-0100
T +1.212.589.4600

kkeranen@bakerlaw.com
bakerlaw.com

-------- Original message --------
From: "Kratenstein, Andrew" <AKratenstein@mwe.com>
Date: 7/26/17 10:40 PM (GMT-05:00)
To: "Sabella, Michael A." <msabella@bakerlaw.com>
Cc: Helen Chaitman <hchaitman@chaitmanllp.com>
Subject: RE: 1980s trading records

Michael,

Mr. Sheehan made a representation in court today that Ms. Chaitman and I understood to mean that documents containing the search terms in the emails from Ms. Chaitman below were produced to her. I have not received those productions. I have spoken with Ms. Chaitman, who says she did not receive them either. Was such a production in fact made?

Thanks.

Andrew

**Andrew B. Kratenstein**
Partner

**McDermott Will & Emery LLP** | 340 Madison Avenue | New York, NY 10173-1922
Tel +1 212 547 5695 | Mobile +1 646 338 4881 | Fax +1 212 547 5444

**Biography** | **Website** | **vCard** | **Email** | **Twitter** | **LinkedIn** | **Blog**

In another July 27, 2017 email, Ms. Keranen represented that the 22 search terms were being applied to the entire BLMIS Database:

Helen,

The search terms are being run across the entire BLMIS database (approximately 30 million documents), not E-Data Room 1. As I explained, of the approximately 4 million hits in the database on those terms, 800,000 are already loaded in EDR1. In my other email regarding the summary of our call, I explained that the Trustee originally restored 400 reels of microfilm and uploaded it to the BLMIS

# CHAITMAN LLP

David J. Sheehan, Esq.
September 1, 2017
Page 7

database.  More than 413,000 documents from those reels are in EDR1.  Another 3000+ documents from those 400 reels were separately produced to you and Andrew as a result of search terms run.  There are only approximately 4400 documents from those 400 reels that are not in EDR1 and have not been produced to you or Andrew, because they did not hit on any search terms.  We are willing to produce those and have begun that process.  The 201 reels have been produced to you in their entirety.

I hope this clears up any confusion.

Regards,
Kristin

**Kristin Keranen**
Counsel

BakerHostetler

45 Rockefeller Plaza
New York, NY 10111-0100
T +1.212.589.4600

kkeranen@bakerlaw.com
bakerlaw.com



In Your Letter at 8, you state that the "22 Search Terms yielded a total universe of 4,102,555 documents (4,865,811 with families)."  Of that amount, you say that 1,427,671 of these documents (1,482,240 with families) are already in the E-Data Room and that the Trustee has separately produced 132,820 responsive documents in the Wilenitz matter and 148,548 responsive documents in the Sage matter.  According to my calculations, that leaves 3,102,203 responsive documents that have not been made available to us.

The production of the remaining 3,102,203 documents in the BLMIS Database that are responsive to our 22 search terms are essential to the defense of our clients.  We believe these documents will show the securities owned by Madoff and by BLMIS throughout the period of our clients' investments.  Indeed, the vastness of the responsive documents demonstrates their importance to our defense.  We are defending approximately 70 separate adversary proceedings in which you are calculating clawback liability based on transactions which date back to the early 1980s in some cases.  The first step in moving forward is for you to put these 3,102,203 documents (which are already in the BLMIS database and are thus already fully restored and searchable) in the E-Data Room and make them accessible to us so that we can download them or make copies without having to enlist your firm's assistance.

{00032671 1 }

# CHAITMAN LLP

David J. Sheehan, Esq.
September 1, 2017
Page 8

**Microfilm**

**The 394 microfilm reels**

As with the other documents we are seeking, we are seeking production of all microfilm records that evidence trading by Madoff and BLMIS from 1980 on. You say in your letter that "in 2009 and 2010, the Trustee restored documents from 394 microfilm reels and added those 413,000 documents to E Data Room 1." However, you then say that "of the 413,000 documents restored from these 394 reels, all but approximately 7,400 of these have long been available to you in E-Data Room 1." Thus, your first sentence is not correct because 7,400 documents were not put in E-Data Room 1. However you represent that these 7,400 documents have been produced to us in the 2017 productions. What is not clear, however, is whether we now have 100% of the documents contained in the 394 reels or whether we simply now have 100% of the documents the Trustee selected from the 394 reels. Please clarify this.

Your firm produced to us on August 10, 2017 a hard drive, which we were unable to access. We have just this week obtained a replacement hard drive but have not yet viewed the documents. You represent in Your Letter (at 6) that the August 10, 2017 production contains "the remaining 4,400 documents restored from these reels that were not previously available to you." Again, my question is: do the 394 reels contain documents that the Trustee did not restore and which have still not been produced to us?

**Unrestored microfilm reels**

You explain that there are 4,704 reels of microfilm that remain unrestored. As per Judge Bernstein's suggestion, we intend, as a preliminary matter and on a gradual basis, to designate 20 reels for our review. However, we note in Your Letter, at fn. 9, that the Trustee intends to review "historical files" which we assume includes unrestored reels. To the extent he restores reels for his own review, we request that all of these reels be promptly provided to us or put into the E-Data Room in a form which allows us to download them.

We have a great many questions about the microfilm reels. For example:

1.    There are enormous gaps in the box numbers of the reels of microfilm produced and there is no explanation provided for this.

2.    There are a great many documents that appear to be missing. For example, in 1985, there are microfilm records for internal Madoff reports known as Cash and Securities for Settlement. From 1986 until 1993, there are no such records.

3.    Mr. Shiffrin states in his recent letter "that there are thousands of boxes of hard-copy documents and thousands of pieces of media that have not been scanned or

# CHAITMAN LLP

David J. Sheehan, Esq.
September 1, 2017
Page 9

included in the BLMIS Database—including unrestored microfilm reels." This raises the possibility that the thousands of documents proving securities transactions for many years of Madoff's operation have not been produced.

> This, of course, is a very serious issue for us because we have thousands of securities positions that we believe Madoff's records will prove were legitimate. If the Trustee does not make all of Madoff's records available to us, our clients are being denied due process of law.

At this point, we would ask that the Trustee restore and provide to us 100% of the contents on the following four reels:  Boxes 2621, 3318, 3348, and 3487.

Yours sincerely,

*/s/ Helen Davis Chaitman*

Helen Davis Chaitman

HDC:leb

cc:    Michael A. Sabella (msabella@bakerlaw.com)
       Edward J. Jacobs (ejacobs@bakerlaw.com)
       Kristin L. Keranen (kkeranen@bakerlaw.com)
       Andrew B. Kratenstein (akratenstein@mwe.com)
       Carole Neville (carole.neville@snrdenton.com)

{00032671 1 }

From: Helen Chaitman <hchaitman@chaitmanllp.com>
Date: 10/11/17 7:06 PM (GMT-05:00)
To: "Sheehan, David J." <dsheehan@bakerlaw.com>, "Sabella, Michael A." <msabella@bakerlaw.com>
Cc: "Kratenstein, Andrew" <AKratenstein@mwe.com>
Subject: Documents from the BLMIS data base

Dave:  Can you please let me know within 48 hours whether you intend to produce to us all of the documents from the BLMIS data base that are responsive to the search terms that Andrew and I gave you?

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell:  (908) 303-4568
Fax:  (888) 759-1114

# BakerHostetler

Baker & Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

David J. Sheehan
direct dial: 212.589.4616
dsheehan@bakerlaw.com

October 18, 2017

**VIA EMAIL**

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, NY 10022
hchaitman@chaitmanllp.com

Re:  *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789 (SMB) – *Requests for Documents*

Dear Ms. Chaitman:

We write in response to your October 11, 2017 e-mail and your September 1, 2017 letter. As we explained in our letter, dated August 25, 2017, you currently have access to over 1.5 million of the approximately 4.9 million documents (with families) responsive to the 22 Search Terms you have proposed. Accordingly, we requested that you use your access to these documents to formulate a narrower inquiry, given that the production of such a large volume of documents—many of which are undoubtedly irrelevant—would be cost-prohibitive and inconsistent with the relevance and proportionality standards articulated in Fed. R. Civ. P. 26. We also proposed to meet and confer with you in good faith, consistent with Judge Maas's directives in his March 15 Order, so that we can cooperatively develop a method for identifying and producing any additional non-objectionable discovery.

Unfortunately, you have ignored these requests entirely. Instead, you have restated your insistence that we produce all documents responsive to the 22 Search Terms—which are based on nothing more than the names of common and well-known financial institutions—notwithstanding the specific objections we articulated and without referencing our proposed compromise or in-person meeting.

We remain happy to meet and work with you in good faith to narrow the search terms in order to identify specific documents that interest you and/or eliminate irrelevant materials that do not. However, absent any effort on your part to work with us and focus your search terms based

*Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC*

on an informed review of the documents you already have, we will not be producing any additional records.

Not only is our position consistent with the relevance and proportionality requirements of Fed. R. Civ. P. 26 and Judge Maas's March 15 Order, it is also consistent with Judge Bernstein's recent guidance with respect to the restoration of additional microfilm reels. As you will recall, rather than order the restoration of all of the BLMIS microfilm in the Trustee's possession, Judge Bernstein suggested that you review a small sample of additional reels and, based on that review, identify what additional records you believe would be relevant and proportional to your defense of these cases. *See* July 26th Hearing Transcript, at 50; *see also In re Sun Edison, Inc.*, 562 B.R. 243 (Bankr. S.D.N.Y. 2017) (Bernstein, J.) (denying motion to compel on proportionality grounds). In keeping with Judge Bernstein's guidance, we are simply asking that you make use of the more than 1.5 million responsive records already in your possession and work with us to target relevant, non-objectionable materials.

As a reminder, most of the approximately 1.5 million documents responsive to your search terms are available in E-Data Room 1. While the majority of these documents are customer statements and ledgers located in the "DATA" folder, the "FINANCIALS" folder contains tens of thousands of responsive documents in subfolders organized by financial institution, including Bank of Tokyo, Barclays, Bear Stearns, Fidelity, JPMorgan Chase, Lehman Brothers, and Morgan Stanley. In addition, the "DOCUMENTS" folder contains thousands of responsive scanned hard-copy records collected from both BLMIS and third parties, all of which are organized in various sub-folders by source. The search functionality and organizational structure of E-Data Room 1 should make identifying specific types of records that interest you easy and straightforward.

Additionally, tens of thousands of documents that we have produced to you since December 2016 are also responsive to your proposed 22 Search Terms. Stemming from our good faith efforts to identify additional "trading records," those productions included documents responsive to dozens of separate search terms we applied across the BLMIS Database targeting specific BLMIS reports that reflect purported trading activity, as well as the restoration and production of all documents from all known microfilm reels containing pre-1992 materials. Given the wealth of documents already available to you and our track record of cooperation, we do not understand your reluctance to use these documents in order to target additional materials of interest, or otherwise work with us to narrow your inquiry.

Finally, with respect to your request that we add all of these materials to E-Data Room 1, the purpose of that database is to make available the large volume of records the Trustee's experts consider in connection with their various reports. The Trustee never intended it to be a repository of enormous document productions based on unfocused search terms that inevitably include irrelevant material, or to relieve defendants of their responsibility to host document productions they obtain through discovery. Nor has the Trustee ever treated it as such.

Accordingly, we currently do not intend to add to E-Data Room 1 any documents we may produce in connection with your proposed search terms. Should the Trustee's experts rely on or

TA535

otherwise consider any additional material in connection with any future reports, the Trustee will make those documents available in E-Data Room 1, as he has done in the past.

We reiterate our desire to have a good faith meet and confer to resolve all outstanding discovery disputes.  Please let us know how you would like to proceed.

Sincerely,

*/s/ David J. Sheehan*

David J. Sheehan
Partner

3

**From:** Sheehan, David J.
**Sent:** Wednesday, October 25, 2017 10:58 AM
**To:** Helen Davis Chaitman (hchaitman@chaitmanllp.com) <hchaitman@chaitmanllp.com>; Andrew B. Kratenstein (akratenstein@mwe.com) <akratenstein@mwe.com>
**Cc:** Peter Goldman (PaGoldman45@gmail.com) <PaGoldman45@gmail.com>; Fein, Amanda E. <afein@bakerlaw.com>
**Subject:** FW: Documents from the BLMIS data base

Helen,

The Morgan Stanley and Meadowbrook search terms collectively generate over 820,000 documents, including family members.  Of those documents, approximately 515,000 have already been made available to you in E-Data Room 1 or through separate productions.  The vast majority of the remaining 305,000 documents that have not been made available to you hit on the Morgan Stanley search term.  The Meadowbrook search term generates less than 5,000 hits, including families.

Given the relatively limited population of the Meadowbrook hits, as a showing of our good faith, we will produce these documents to you.  These documents will need to be imaged (or "tiffed"), reviewed, and processed for production.  We will produce these documents to you next week.

However, we maintain our objections with respect to the approximately 300,000 documents that hit on the Morgan Stanley search term.  You already have in your possession 500,000 documents that hit on this search term.  The large universe of documents is precisely why we believe that a meet and confer would be productive, as it would help both parties understand and target the specific types of documents that interest you and eliminate those that do not.  For the reasons already stated in our recent letters, we cannot simply make a wholesale production of documents responsive to broad and unfocused search terms that do not make any meaningful effort to target relevant materials.

Please let us know when you are available for a meet and confer so that we can supplement our production with any additional relevant materials to you as quickly as possible.

Dave
**From:** Helen Chaitman [mailto:hchaitman@chaitmanllp.com]
**Sent:** Monday, October 23, 2017 3:02 PM
**To:** Sheehan, David J. <dsheehan@bakerlaw.com>; Fein, Amanda E. <afein@bakerlaw.com>
**Cc:** Kratenstein, Andrew <AKratenstein@mwe.com>; Peter Goldman (PaGoldman45@gmail.com) <PaGoldman45@gmail.com>
**Subject:** Documents from the BLMIS data base

Dave:  You have suggested a meet-and-confer concerning the documents we have requested from the BLMIS data base.  At this point, I think that would not be productive.  Would you please produce, within five business days, all of the documents responsive to the search terms for Meadowbrook and Morgan Stanley?  Since these are already in digitized format, this should not be burdensome for you.  Once I see what documents are produced, I will be in a better position to meet-and-confer with you about the balance of the documents in the BLMIS data base that are responsive to our search terms.

Please produce these documents so that I have them within five business days.  I will want to question Madoff about them and, given his health issues, any delay on your part may significantly impair our

ability to defend our clients.  What we plan to do, given Madoff's health, is to question Madoff on the first day and have you cross Madoff on the second day.  That way, there will be no basis to object to the admissibility of his testimony if he is unable, thereafter, to continue the deposition.

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell:  (908) 303-4568
Fax:  (888) 759-1114

**From**: Helen Chaitman [mailto:hchaitman@chaitmanllp.com]
**Sent**: Thursday, November 02, 2017 10:56 AM
**To**: Sheehan, David J.; Andrew B. Kratenstein (akratenstein@mwe.com) <akratenstein@mwe.com>
**Cc**: Fein, Amanda E.; Peter Goldman (PaGoldman45@gmail.com) <PaGoldman45@gmail.com>
**Subject**: RE: Documents from the BLMIS data base

Dave:  If this was not clear before, let me be very clear now:  I don't care about emails or similar documents at this point.  I want to see the transaction confirmations and monthly statements from the financial institutions where there have been hits with the names we gave you.  I assume you have some way of separating out the non-trade documents.  I have always been very clear that I want to see all the trading records.  Please let me know, before we meet, if the production of the documents with hits, containing only trading activity, is that burdensome for you to produce.

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell:  (908) 303-4568
Fax:  (888) 759-1114

**From:** Sheehan, David J. [mailto:dsheehan@bakerlaw.com]
**Sent:** Monday, October 30, 2017 4:04 PM
**To:** Helen Chaitman <hchaitman@chaitmanllp.com>; Andrew B. Kratenstein (akratenstein@mwe.com) <akratenstein@mwe.com>
**Cc:** Fein, Amanda E. <afein@bakerlaw.com>; Peter Goldman (PaGoldman45@gmail.com) <PaGoldman45@gmail.com>
**Subject:** FW: Documents from the BLMIS data base

Helen,

In our previous correspondence to you, we agreed to produce all documents that hit on the "Meadowbrook" search term given the relatively small universe of approximately 5,000 responsive documents that we have not already made available to you.  However, consistent with the position we articulated in our letters, we objected to producing the more than 300,000 documents that hit on the "Morgan Stanley" search term without any further efforts on your part to target and narrow your search terms due to the fact that you already have 500,000 Morgan Stanley documents from which you could develop a more targeted search.

In accordance with our good faith efforts to compromise, we will produce to you approximately 9,000 documents that hit on the "Morgan Stanley" search term later this week.  This production focuses on scanned hard-copy materials that were recovered from the Lipstick Building (including from the 17th floor, 18th floor, 19th floor, and basement) and offsite storage facilities, as well as data from BLMIS's primary data processing terminals, including the A/S 400.  Given your primary interest in what you call "trading records," we believe that these materials are most likely to include the types of records you seek.

The remaining 290,000 documents that hit on the "Morgan Stanley" search term constitute BLMIS electronically stored information ("ESI"), which comprises emails and other electronic documents

recovered from BLMIS's network.  For example, a broad search term like "Morgan Stanley" run across the BLMIS ESI results in approximately 153,000 emails alone, many of which are undoubtedly irrelevant.  The search term hits also include Outlook contacts and appointments, JPEG files, and thousands of Word and Excel files.  For these reasons, we maintain our objection to a wholesale production from BLMIS's ESI because any production is certain to include vast amounts of irrelevant documents.  However, we remain happy to meet and confer with you in an effort to narrowly target any additional relevant information from this document population.  Please let us know what dates work for you.

Dave

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content of this email is limited to the matters specifically addressed herein and may not contain a full description of all relevant facts or a complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. Nos. (various cases) |
| Plaintiff, | |
| v. | |
| DEFENDANTS REPRESENTED BY CHAITMAN LLP, | |
| Defendants. | |

### TRUSTEE IRVING H. PICARD'S RESPONSES AND OBJECTIONS TO DEFENDANTS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE TRUSTEE

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C.

§§ 78aaa-*lll* ("SIPA"), and the estate of Bernard L. Madoff,  by and through the Trustee's

counsel, Baker & Hostetler LLP, hereby provides the following Responses and Objections

("Responses") to the Third Set of Requests for Production of Documents to the Trustee

("Requests") served by certain Defendants represented by Chaitman LLP ("Defendants").[1]

## OBJECTION TO DEFINITIONS

1.      The Trustee objects to the term "Document" in Definition 3 as inconsistent with

Local Rule 26.3(c)(2) of the United States District Court for the Southern District of New York

and this Court.  The Trustee will respond to Requests containing "Document" as it is defined by

Local Rules 26.3(c)(2) and Fed. R. Civ. P. 34(a)(1).

2.      The Trustee objects to the terms "and" and "or" in Definition 9 as inconsistent

with Local Rule 26.3(d) of the United States District Court for the Southern District of New

York and this Court.  The Trustee will respond to Requests containing these terms as they are

defined by Local Rule 26.3(d).

## OBJECTION TO INSTRUCTIONS

1.      The Trustee will respond to these Requests consistent with Rules 26 and 34 of the

Federal Rules of Civil Procedure, Rules 7026 and 7034 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), applicable Local Civil Rules of the United States District

Court for the Southern District of New York and this Court (the "Local Rules"), and any

applicable orders of the Court, including the Court's June 6, 2011 Litigation Protective Order

[ECF No. 4137].

## SOURCES OF INFORMATION RELEVANT TO THE CLAIMS OR DOCUMENTS IN THE TRUSTEE'S POSSESSION, CUSTODY OR CONTROL

---

[1]      The Requests purport to be served on behalf of all defendants represented by Chaitman LLP.  However, fact discovery is closed in three cases in which defendants have filed a motion to withdraw the reference currently pending before the district court (Adv. Pro. Nos. 10-04377, 10-04658, and 10-04898).  The Trustee therefore objects to these Requests to the extent they purport to be served in connection with those cases, and these Responses should not be deemed to be served in connection with those cases.  In addition, Baker & Hostetler LLP is not counsel to the Trustee in all adversary proceedings in which Chaitman LLP is counsel of record.  As such, the Trustee serves these Responses only with respect to those cases in which Baker & Hostetler LLP is counsel to the Trustee.

1.      Hard-copy documents from the offices of BLMIS, offsite storage used by BLMIS, and other locations ("Hard-Copy BLMIS Documents").

2.      Electronic documents obtained from among approximately 20,000 pieces of media from the offices of BLMIS, offsite storage used by BLMIS, and other locations ("BLMIS Electronic Documents" or "BLMIS ESI").

3.      Documents produced by third parties to the Trustee during his investigation or adversary proceedings ("Third-Party Documents").

## I.    BLMIS DOCUMENTS

From the Hard-Copy BLMIS Documents and BLMIS ESI (collectively, "BLMIS Documents"), the Trustee created a searchable electronic database containing approximately 4.7 million Hard-Copy BLMIS Documents and 25 million BLMIS Electronic Documents ("the **BLMIS Searchable Database**").  Defendants do not have direct access to the BLMIS Searchable Database because it contains documents relating to thousands of customers, many of which are not relevant to this proceeding.  Instead, the Trustee provides all Defendants in these proceedings with documents as described below:

**A.      Proof of BLMIS's Fraud and Insolvency:** The Trustee created E-Data Room 1 from documents in the BLMIS Searchable Database as well as some Third-Party Documents.  E-Data Room 1 contains documents relevant to the issues of the fraud conducted at BLMIS and its insolvency, and includes documents relating to BLMIS operations, regulatory disclosures, and financial records.  *See* **Appendix A** for a description of documents available to Defendants in E-Data Room 1.

**B.      BLMIS Core Account Documents:** The Trustee identified and segregated BLMIS core account documents for all customers ("Core Account Documents").  These Core

Account Documents include account opening agreements, correspondence to and from BLMIS,

transfer and/or redemption requests, customer statements, Portfolio Management and/or Portfolio

Management Transaction Reports, which contain transaction history, and other documents that

were specific to each account, and/or the Trustee's calculation of net equity of a particular

BLMIS account.

C.    **Proof of Transfers:** In addition to the Core Account Documents relevant to

transfers described above, the Trustee identified and segregated BLMIS bank account records

that reflect transfers to customers ("Bank Transfer Documents").  Collectively, the Core Account

Documents and the Bank Transfer Documents represent the documents produced to the

Defendants by the Trustee with his initial disclosures (the "Initial Disclosure Documents").

D.    **Other Documents:** The Trustee preserved the nearly 20,000 pieces of BLMIS

ESI and millions of pages of BLMIS Hard-Copy Documents in his possession, but did not

include all such documents in the BLMIS Searchable Database.  The Trustee did not process or

scan, for example, backup tapes believed to contain redundant data, some floppy disks or CDs,

and broken media.  In responding to discovery requests, the Trustee typically does not search for

BLMIS documents outside of the BLMIS Searchable Database.  The Trustee will produce

additional BLMIS Documents (meaning other than those described in Paragraphs A and B) from

the BLMIS Searchable Database provided that the parties agree to narrowly tailored case-

specific search terms and parameters that target documents relevant to the claims or defenses and

proportional to the needs of the case in accordance with Federal Rule 26(b)(1).  *See* **Appendix B**

for a description of sources of documents in the BLMIS Searchable Database.

## II.    THE SQL DATABASES

Information contained in certain BLMIS Hard-Copy Documents, BLMIS ESI, and certain Third-Party Documents was processed and input into multiple Microsoft Structured Query Language ("SQL") Server tables and databases (the "SQL Databases").  To the extent feasible, the underlying documents used to build the SQL Databases are contained in E-Data Room 1. Some or all of the data in the SQL Databases is responsive to most of the Interrogatories.  SQL Databases are used by the Trustee's experts and are available for production to any Defendant upon request.  Use of the SQL Databases requires some technical expertise.  *See* **Appendix C** for the sources of data loaded into the SQL Databases.

## THE TRUSTEE'S OBJECTIONS

1.     **Documents Not Proportional to the Needs of the Case:** The BLMIS Searchable Database may contain documents that are responsive to the Requests but which are redundant, cumulative, or marginally relevant. The Trustee objects to the production of these Documents to the extent that such production is not proportional to the needs of the case under Federal Rule 26(b)(1) ("Documents Not Proportional to the Needs of the Case").

2.     **Documents Outside the Scope of Relevance:** The Trustee objects to the production of any documents outside the scope of relevance articulated in Federal Rule 26 and Section 4(G) of the Litigation Procedures Order ("Documents Outside the Scope of Relevance").

3.     **Third-Party Documents Designated Confidential**:  The Trustee objects to the production of any Third-Party Documents designated confidential pursuant to the June 6, 2011 Litigation Protective Order ("LPO").  *See* ECF No. 4137.  To the extent the Trustee identifies any responsive Third-Party Documents designated confidential, the Trustee will notice the producing party pursuant to paragraph 12 of the LPO.   The Trustee will not produce any responsive

documents over which the producing party maintains any confidentiality objections.

## RESPONSES TO DOCUMENT REQUESTS

### REQUEST NO. 1:

All records evidencing securities trades placed by or on behalf of Bernard L. Madoff or

Bernard L. Madoff Investment Securities, LLC ("BLMIS"), or on behalf of customers of Bernard

L. Madoff or BLMIS, with or by third parties, regardless of whether the records evidence "House

5" or "House 17" trading.  These records would include, for example, transaction confirmation

slips or monthly or quarterly statements from JPMorgan Chase, Bear Sterns, Fidelity, and any

other third-party financial institutions.

### RESPONSE:

The Trustee objects to this Request on the grounds that it calls for Documents Not

Proportional to the Needs of the Case (Objection No. 1).  Defendants' request for "all records

evidencing securities trades placed by or on behalf of Bernard L. Madoff or Bernard L. Madoff

Investment Securities, LLC" potentially implicates millions of documents in the Trustee's

possession, custody, or control—many of which are redundant, cumulative, or marginally

relevant.

The Trustee further objects to this Request on the grounds that it calls for Documents

Outside the Scope of Relevance (Objection No. 2).  "All records evidencing securities trades"

placed by or on behalf of BLMIS or Madoff includes documents that are not relevant to the claims and defenses in these adversary proceedings.

The Trustee further objects to this Request to the extent that it calls for Third-Party Documents Designated Confidential (Objection No. 3). The Trustee will treat all records designated confidential in accordance with the LPO.

Documents responsive to this Request are already available in the "FINANCIALS" folder of E-Data Room 1, which contains certain Third-Party Documents organized by financial institution. Consistent with the agreements reached with opposing counsel at the November 14, 2017 meet and confer, the Trustee will search for and review additional potentially responsive records from the universe of Third-Party Documents. To the extent the Trustee identifies any additional responsive records that are not already in E-Data Room 1 or otherwise already available to Defendants, the Trustee will produce such records on a rolling basis within four to six weeks, subject to any confidentiality objections maintained by any third party.

**REQUEST NO. 2:**

All account opening documents and modifications thereof relating to the account in the name of Bernard L. Madoff or BLMIS with account number ending in "509" at JPMorgan Chase.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it calls for Documents Outside the Scope of Relevance (Objection No. 2).

The Trustee further objects to this Request to the extent that it calls for Third-Party Documents Designated Confidential (Objection No. 3). The Trustee will treat all records designated confidential in accordance with the LPO.

The Trustee further objects to the phrase "modifications thereof" as vague and ambiguous. The Trustee will interpret this Request as seeking account-opening documents for the BLMIS account number ending in "509" held at JPMorgan Chase.

Consistent with the agreements reached with opposing counsel at the November 14, 2017 meet and confer, the Trustee will search for and review additional potentially responsive records among the Third-Party Documents. To the extent the Trustee identifies any responsive records, the Trustee will produce them on a rolling basis within four to six weeks, subject to any confidentiality objections maintained by any third party.

**REQUEST NO. 3:**

All monthly statements from third-party financial institutions relating to securities held in custody on behalf of Bernard L. Madoff, BLMIS, or customers of Bernard L. Madoff or BLMIS.

**RESPONSE:**

The Trustee objects to this Request to the extent that it calls for Third-Party Documents Designated Confidential (Objection No. 3). The Trustee will treat all records designated confidential in accordance with the LPO.

Documents responsive to this Request are available in the "FINANCIALS" folder of E-Data Room 1, which contains certain Third-Party Documents organized by financial institution. Consistent with the agreements reached with opposing counsel at the November 14, 2017 meet and confer, the Trustee will search for and review additional potentially responsive records from the universe of Third-Party Documents. To the extent the Trustee identifies any additional responsive records that are not already in E-Data Room 1 or otherwise already available to

Defendants, the Trustee will produce such records on a rolling basis within four to six weeks,

subject to any confidentiality objections maintained by any third party.

Dated: December 21, 2017
        New York, New York

**BAKER & HOSTETLER LLP**

By:   /s/ David J. Sheehan
      David J. Sheehan
      Email:  dsheehan@bakerlaw.com
      Nicholas J. Cremona
      Email:  ncremona@bakerlaw.com
      Maximillian S. Shifrin
      Email:  mshifrin@bakerlaw.com
      **BAKER & HOSTETLER LLP**
      45 Rockefeller Plaza
      New York, New York 10111
      Telephone: 212.589.4200
      Fax: 212.589.4201

      *Attorneys for Irving H. Picard,*
      *Trustee for the Substantively*
      *Consolidated SIPA Liquidation of*
      *Bernard L. Madoff Investment Securities*
      *LLC and the Estate of Bernard L. Madoff*

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 21st day of

December, 2017 by electronic and first class mail upon the following:

CHAITMAN LLP
Helen Davis Chaitman
465 Park Avenue
New York, NY 10022
Email: hchaitman@chaitmanllp.com


/s/   Maximillian S. Shifrin_____
*An Attorney for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L.*
*Madoff*



```
                                              Page 1

 1    UNITED STATES BANKRUPTCY COURT

 2    SOUTHERN DISTRICT OF NEW YORK

 3    Lead Case No. 08-99000-smb

 4    Case No. 08-01789 (SMB)

 5    Adv. Case No. 10-04995 (SMB)

 6    - - - - - - - - - - - - - - - - - - - - - - - - - x

 7    SECURITIES INVESTOR PROTECTION

 8    CORPORATION,

 9                   Plaintiff-Applicant,

10        v.

11    BERNARD L. MADOFF INVESTMENT

12    SECURITIES LLC,

13    Defendants.

14

15    - - - - - - - - - - - - - - - - - - - - - - - - - x

16    In re:

17    BERNARD L. MADOFF,

18                   Debtor.

19    - - - - - - - - - - - - - - - - - - - - - - - - - x

20    IRVING H. PICARD, Trustee

21    for the Liquidation of Bernard L. Madoff

22    Investment Securities LLC,

23

24                   Plaintiff,

25        v.
```

Page 2

1

2    TRUST U/ART FOURTH O/W/O

3    ISRAEL WILENITZ,

4    EVELYN BEREZIN WILENITZ,

5    individually, and as Trustee

6    and Beneficiary of the Trust

7    U/ART Fourth O/W/O Israel

8    Wilenitz, and

9

10   SARA SEIMS, as Trustee of

11   the Trust U/ART Fourth O/W/O

12   Israel Wilenitz,

13              Defendants.

14   - - - - - - - - - - - - - - - x

15

16                United States Bankruptcy Court

17                One Bowling Green

18                New York, NY  10004

19

20                May 1, 2018

21                10:02 AM

22

23

24

25

Page 3

1    B E F O R E :

2    HON STUART M. BERNSTEIN

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:  JONATHAN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    HEARING re Discovery Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

Page 5

```
 1   A P P E A R A N C E S :

 2

 3   CHAITMAN LLP

 4        Attorney for Defendants

 5        465 Park Avenue

 6        New York, NY 10022

 7

 8   BY:  HELEN DAVIS CHAITMAN

 9

10   BAKERHOSTETLER

11        Attorneys for Trustee

12        45 Rockefeller Plaza

13        New York, NY 10111-0100

14

15   BY:  NICHOLAS J. CREMONA

16        MAXIMILLIAN S. SHIFRIN

17

18

19

20

21

22

23

24

25
```

Page 6

```
 1                    P R O C E E D I N G S

 2              CLERK:  Please be seated.

 3              THE COURT:  Good morning.  Madoff?

 4              MS. CHAITMAN:  Good morning, Your Honor.

 5              THE COURT:  Good morning.

 6              MS. CHAITMAN:  This is my request for a conference

 7    with respect to discovery motion.

 8              THE COURT:  Okay, go ahead.

 9              MS. CHAITMAN:  Do you want to hear argument on it?

10              THE COURT:  Well, I've read the papers.  And I

11    guess I didn't realize it before, maybe I did, that Judge

12    Moss had set up a procedure to narrow the issues and narrow

13    the dispute.  And part of that required the parties to meet

14    and confer, which you apparently did, and then to write a

15    letter to Judge Moss identifying the sources of what's still

16    left, what's the disagreement.  And I didn't see that

17    letter.

18              MS. CHAITMAN:  Right, because then I -- we filed a

19    motion before this Court, which was heard last -- I filed it

20    in June.  It was argued on two different days in July.  And

21    at that point, I think it was at that point that Your Honor

22    said that I should file -- I could file a motion.

23              THE COURT:  Well, yeah, I can't tell you not -- I

24    can't tell you you can't file a motion for sanctions.  All

25    I'm saying, and I wasn't aware of the letter, but all I'm
```

Page 7

1    saying is, if you filed that motion and there was a

2    procedure in place and it wasn't followed, you're probably

3    going to lose that motion and that could open you up to

4    costs and attorneys' fees.  That's all I'm saying.

5         MS. CHAITMAN:  So you want me to go back to the

6    Magistrate Judge Moss at this point?  Because so much has

7    happened since then.

8         THE COURT:  Well, but that's the problem.  This

9    keeps expanding, rather than getting narrower.  I'm not --

10   all I'm saying is there was a procedure in place.

11        MS. CHAITMAN:  Right.

12        THE COURT:  Which was obviously intended to narrow

13   the issues, and it looks like that procedure wasn't

14   followed.

15        MS. CHAITMAN:  Well, it wasn't followed in the

16   sense that I didn't go back to Magistrate Judge Moss.  I did

17   come to this Court.  The papers did disclose the whole

18   history with Magistrate Judge Moss.  The Trustee laid that

19   all out for you.  You then said I could file a motion.

20        THE COURT:  Yes.

21        MS. CHAITMAN:  I then tried for six months to get

22   the Trustee to produce the documents.  So we're now at a

23   point where it's been two years since you ordered the

24   Trustee to produce the trading records.

25        THE COURT:  But part of, part of what Judge Moss

Page 8

1    required was for you to identify your basis of your belief

2    that certain information was in some of these documents.

3                    MS. CHAITMAN:   There's no dispute that this --

4    I've been asking for the trading records for two years.

5    There's no dispute that the Trustee has the trading records.

6    The Trustee has what he calls the BLMIS database, which he's

7    never given Defendants access to.

8                    THE COURT:   I thought you were -- isn't that in

9    the data room?   I thought you were always --

10                   MS. CHAITMAN:   No, no, no, no, there are two

11   different areas.   In the e-data room is the documents the

12   Trustee wanted the Defendants to see.   In the BLMIS

13   database, which is a much more massive database, are the

14   documents that the Trustee refuses to give the Defendants

15   access to.

16                   THE COURT:   But I thought the issue, though, was

17   that there were documents that the Trustee had made a

18   determination that it just wasn't worth it to digitize them

19   or whatever.

20                   MS. CHAITMAN:   Those were microfiche records.

21                   THE COURT:   Right.

22                   MS. CHAITMAN:   Those are reels.   It came out last

23   spring that there were I think 5000 microfiche reels that

24   the Trustee had not disclosed.   Your Honor then said that we

25   would have the burden; we could get 20 of those.

Page 9

```
 1            THE COURT:  I suggested designating and showing me

 2   what's missing.

 3            MS. CHAITMAN:  Right, right.

 4            THE COURT:  But what's relevant and wasn't

 5   produced.

 6            MS. CHAITMAN:  Right.  So as to that, there are

 7   three categories of documents: the e-data room, which the

 8   Trustee always represented to you contained every trading

 9   record that anyone could possibly ask for; there's the BLMIS

10   database, which is the largest volume of documents; and then

11   there are these reels.  What happened with the reels --

12            THE COURT:  Well, the database, though.  Is that

13   stuff that's been digitized, and you can go in?

14            MS. CHAITMAN:  It's digitized and searchable, but

15   the Trustee doesn't allow the Defendants counsel to look.

16            THE COURT:  Okay.

17            MS. CHAITMAN:  Okay.  So then the third category

18   is these reels.  What Your Honor suggested is that we could

19   look at 20 reels, and then after that, we'd have to pay for

20   the cost.  We don't have the ability to pay.

21            THE COURT:  Well, I thought -- I don't mean to

22   interrupt.  But I thought I said take a look at these 20,

23   select any 20 you want.

24            MS. CHAITMAN:  Right.

25            THE COURT:  Take a look at them.  And if there's
```

Page 10

1    something in there that you convince me is relevant and

2    hasn't been turned over, then we'll talk about the next

3    step.

4              MS. CHAITMAN:  Okay.  So what happened was, we

5    chose four reels; they didn't have anything relevant.  And I

6    thought that that was not a productive way to go and it was

7    much more productive for us to focus on the trading records

8    for the entire time that Madoff operated, which I understand

9    are in the BLMIS database.

10             THE COURT:  Okay, I got it.  All right.

11             MR. SHIFRIN:  Good morning, Your Honor.  Max

12   Shifrin on behalf of the Trustee.  Unfortunately, there's a

13   lot to clarify there.

14             I'd like to state at the outset that your focus on

15   -- that Your Honor's focus on Judge Moss' March 2017 Order

16   is exactly accurate.  And that is the Order that Ms.

17   Chaitman has, for the better of the last year, ignored

18   entirely.  And the motion that she is referencing from June

19   of last year itself was a violation of that Order.

20             THE COURT:  Okay.

21             MR. SHIFRIN:  That motion that she's referring to,

22   it's actually -- it was the briefing on the day two Madoff

23   deposition documents.

24             THE COURT:  Yeah.  You know what?  I think

25   generally that these issues from before Judge Moss, but I

Page 11

 1    don't think I focused on that Order back last July.

 2            MR. SHIFRIN:  Right, and I think part of that was

 3    probably our failure fully educating the Court.  But as we

 4    made that clear, Your Honor, I think, came around to that.

 5    And that Order is the Order that Ms. Chaitman has been

 6    ignoring for, like I said, for the past year.

 7            That Order required her to meet and confer with us

 8    in good faith; to use the indices that we provided to her,

 9    which are comprehensive indices providing itemization of the

10    BLMIS data in our possession; to use those indices to

11    specifically state what she wants and where it's located.

12            THE COURT:  Okay.  We're just talking about the

13    BLMIS data room, as I understand it now.

14            MR. SHIFRIN:  Well, this is the other thing I

15    think we need to clarify, Your Honor.

16            THE COURT:  Okay.

17            MR. SHIFRIN:  E-data room 1, let's start with

18    that.  This is something that Miss Chaitman has inaccurately

19    characterized for the last couple of years, stating that we

20    represented that it was the ultimate repository of all

21    relevant information.

22            We have never held it out as data.  E-data room 1

23    is the vehicle through which we produced the documents that

24    our experts considered in connection with their global

25    reports.  They're affectively our Rule 26 disclosures and

Page 12

1    productions.  We never said that it includes all relevant

2    information.

3              THE COURT:  Okay.

4              MR. SHIFRIN:  That was never -- and we were very

5    clear about that is in our initial disclosures going back to

6    2011, and we state this in our letter.  We were very clear

7    about this in our responses to Ms. Chaitman's discovery

8    requests.  We were very clear about this in our multiple

9    letters to her and to the Court and to -- and in connection

10    with various briefing.

11              We have been clear about this all the time.  What

12    Miss Chaitman has been doing is cherry-picking certain

13    statements, taking them out of context.

14              THE COURT:  Is there -- what's -- so she's

15    referred to this BLMIS database.

16              MR. SHIFRIN:  Right.

17              THE COURT:  That's not the data room you just

18    described.

19              MR. SHIFRIN:  No.

20              THE COURT:  Is there such a database?

21              MR. SHIFRIN:  It is.  The BLMIS database is a

22    repository of about 30 million processed documents.  So when

23    the Trustee took possession of all of the BLMIS data, it was

24    considerably larger than 30 million documents.  We have no

25    idea what those documents -- how many documents we actually

Page 13

1    have.

2             THE COURT:  And those are the 4700 hard copies and

3    microfilm?

4             MR. SHIFRIN:  Right.  That it was the microfilm:

5    that includes 20,000 pieces of media; that includes

6    approximately 10,000 boxes of hard copy documents.  And from

7    that ultimate and enormous collection of data, we process 30

8    million documents into a BLMIS database.

9             THE COURT:  Has that information -- have those

10   documents been available for inspection by Defendants?

11            MR. SHIFRIN:  Those documents -- or I should say,

12   the boxes of hard copy documents and the media.

13            THE COURT:  That's different.  She's had -- she's

14   been offered the opportunity to look at the hard, the hard

15   copies and the microfiche.  She looked at four reels and she

16   said it wasn't a productive use of time.

17            MR. SHIFRIN:  Right.

18            THE COURT:  She's also telling me that there is a

19   universe of what I'll call processed documents --

20            MR. SHIFRIN:  Right.

21            THE COURT:  -- in the sense they've been digitized

22   and they're searchable that has not been made available, a

23   key word search or whatever.  That's my understanding of

24   what you're saying.

25            MR. SHIFRIN:  That's false.  Whenever we run

Page 14

1    search terms --

2            THE COURT:  I don't mean to put words in your

3    mouth, but that was my understanding that this was not made

4    available.

5            MS. CHAITMAN:  No, no, no, that we've never been

6    given access to that database.

7            MR. SHIFRIN:  We, the productions that we detail

8    in our letter, Your Honor, the search terms that we said

9    we'd run have been across the BLMIS database, the 30 million

10   records in the BLMIS database.

11           THE COURT:  All right.

12           MR. SHIFRIN:  So she has access, but she has to

13   give us search terms, reasonable search terms.

14           THE COURT:  Of which she gave a couple.  You had

15   147 and she had some more.

16           MR. SHIFRIN:  Yeah, we ran those.  That's correct.

17   We ran 147 search terms across the BLMIS database, produced

18   all documents responsive to those.

19           THE COURT:  Okay.

20           MR. SHIFRIN:  Then she offered 22 much broader

21   search terms that were based on bank names like Fidelity and

22   Morgan Stanley.  Those documents yielded a universe of 3

23   million documents, which we objected to, I think quite

24   sensibly, on Rule 26 grounds and on the grounds that it

25   violated Judge Moss' Order.

1          We tried to meet and confer with her over several

2     months and narrow those requests and we were successful.

3     And we had what I thought was successful meet and confer

4     November of 2014 where we focused -- rather, instead of the

5     BLMIS database, we focused on third-party documents that

6     were produced in response to Rule 2004 subpoenas that the

7     Trustee has served; given that Miss Chaitman was very clear

8     for the first time that she was only looking for third-party

9     customer statements and the like, rather than a wholesale

10    production of 3 million documents responsive to broad search

11    terms.

12         We ran those search terms.  We followed the

13    protocols as we said we would.  We produced those documents.

14    And Miss Chaitman currently has all the documents that we

15    agreed we would produce pursuant to the search protocols

16    that we agreed to run.  So as far as we're concerned,

17    there's just no dispute here anymore.

18              THE COURT:  Well, there's obviously a dispute.

19              MR. SHIFRIN:  There is, that's correct.

20              THE COURT:  All right.

21              MR. SHIFRIN:  We've done everything we said we

22    would and we've done everything that Miss Chaitman asked us

23    to.

24              THE COURT:  In reference to the conference, Miss

25    Chaitman, as I said, if there was a procedure in place and

Page 16

1      it wasn't followed, there's a good chance you won't win your

2      motion, which may subject you to costs and attorneys' fees.

3      I think that maybe you ought to follow the procedures with

4      Judge Moss that were set up.

5              You know, some of this is, maybe it's just the

6      nature of the dispute.  It's being litigated in two

7      different places, and I feel like I'm getting whipsawed

8      here.

9              MS. CHAITMAN:  May I just say one thing, Your

10     Honor?

11             THE COURT:  Sure.  He's saying he produced it;

12     you're saying he didn't.

13             MS. CHAITMAN:  Yeah, but there's a little game

14     being played here, and I'd like to lay it out.  Our position

15     is that Madoff actually did purchase securities.

16             THE COURT:  I know what your position is.

17             MS. CHAITMAN:  Okay.

18             THE COURT:  I'm not arguing with you over your

19     position.

20             MS. CHAITMAN:  Okay.

21             THE COURT:  This is a discovery dispute though.

22             MS. CHAITMAN:  Okay.  What I'm interested in is

23     the third-party trading; in other words, accounts that

24     Madoff had at every financial institutions in the world.

25     Okay?  I want the monthly statements from those

Page 17

1    institutions, so they can't -- you can't challenge the

2    credibility of the documents, to show what securities

3    positions Madoff held.  And then I'm going to match those

4    positions to customer statements.

5              THE COURT:  Okay.

6              MS. CHAITMAN:  Now, what you just heard was that

7    the Trustee didn't search the BLMIS database, except for

8    documents that the Trustee had subpoenaed from these third-

9    party institutions.  The third-party institutions --

10             THE COURT:  That's not my understanding of what he

11   said.

12             MS. CHAITMAN:  But that's what he just said.

13   Isn't it a fact -- did you give me only the documents that

14   the Trustee subpoenaed from third-party institutions?

15             MR. SHIFRIN:  We, that's exactly what we agreed to

16   at our meet and confer.

17             THE COURT:  All right.

18             MR. SHIFRIN:  That we would search the Rule 2004

19   documents.  If Miss Chaitman wants us to search any --

20             THE COURT:  I thought you said you did the search

21   with the key searches on this BLMIS database.

22             MR. SHIFRIN:  With respect to the recent

23   production, we ran account numbers only in the -- among the

24   Rule 2004 documents because that's what specifically we

25   agreed to at the meet and confer.

1          MS. CHAITMAN:  Let me explain what's wrong with

2     that, Judge.

3          THE COURT:  Right.

4          MS. CHAITMAN:  Financial institutions don't keep

5     records going back that far.  Madoff kept the records.  He

6     kept Bear Sterns statements going back 20 years.  That's

7     what I'd asked for, and instead, I got a bunch of garbage.

8          MR. SHIFRIN:  Your Honor, this is the problem.

9     What Miss Chaitman does is she runs to the Court, instead of

10     gives us a call or sends us an email.

11          THE COURT:  Well --

12          MR. SHIFRIN:  If she wants us to run additional

13     searches that are reasonable, we're happy to do it.

14          THE COURT:  Yeah, I think you know that part of

15     this is not just relevance, Miss Chaitman; it's

16     proportionality.  But, as I said, I won't stop you from

17     making a motion.

18          But it sounds to me like Judge Moss has dealt with

19     this issue, he's established a procedure and that procedure

20     should be followed.

21          MS. CHAITMAN:  Okay, then I'll go back to Judge

22     Moss then.

23          THE COURT:  All right.  But you got to write him a

24     letter.  You know, you got to follow that procedure --

25          MS. CHAITMAN:  Right.

Page 19

1          THE COURT:  -- that was in that Order.

2          MS. CHAITMAN:  Right.

3          THE COURT:  All right.

4          MS. CHAITMAN:  Okay.

5          THE COURT:  Thank you very much.

6          MR. SHIFRIN:  Thank you, Your Honor.

7     (Whereupon these proceedings were concluded at 10:15 AM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 20

1                          C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6        Sonya                    Digitally signed by Sonya Ledanski
                                  Hyde
                                  DN: cn=Sonya Ledanski Hyde, o, ou,
         Ledanski Hyde            email=digital1@veritext.com, c=US
7                                 Date: 2018.05.02 15:09:30 -04'00'

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25      Date:  May 2, 2018

**[08-01789 - couple]**                                                                    Page 1

| 0 | a | based  14:21 | 19:2,4 |
|---|---|---|---|

**0**

**08-01789**  1:4
**08-99000**  1:3

**1**

**1**  2:20 11:17,22
**10,000**  13:6
**10-04995**  1:5
**10004**  2:18
**10022**  5:6
**10111-0100**  5:13
**10:02**  2:21
**10:15**  19:7
**11501**  20:23
**147**  14:15,17

**2**

**2**  20:25
**20**  8:25 9:19,22,23
  18:6
**20,000**  13:5
**2004**  15:6 17:18
  17:24
**2011**  12:6
**2014**  15:4
**2017**  10:15
**2018**  2:20 20:25
**22**  14:20
**26**  11:25 14:24

**3**

**3**  14:22 15:10
**30**  12:22,24 13:7
  14:9
**300**  20:22
**330**  20:21

**4**

**45**  5:12
**465**  5:5
**4700**  13:2

**5**

**5000**  8:23

**a**

**ability**  9:20
**access**  8:7,15 14:6
  14:12
**account**  17:23
**accounts**  16:23
**accurate**  10:16
  20:4
**additional**  18:12
**adv**  1:5
**affectively**  11:25
**agreed**  15:15,16
  17:15,25
**ahead**  6:8
**allow**  9:15
**anymore**  15:17
**apparently**  6:14
**applicant**  1:9
**approximately**
  13:6
**areas**  8:11
**argued**  6:20
**arguing**  16:18
**argument**  6:9
**art**  2:2,7,11
**asked**  15:22 18:7
**asking**  8:4
**attorney**  5:4
**attorneys**  5:11 7:4
  16:2
**available**  13:10,22
  14:4
**avenue**  5:5
**aware**  6:25

**b**

**b**  3:1
**back**  7:5,16 11:1
  12:5 18:5,6,21
**bakerhostetler**
  5:10
**bank**  14:21
**bankruptcy**  1:1
  2:16 3:3

**based**  14:21
**basis**  8:1
**bear**  18:6
**behalf**  10:12
**belief**  8:1
**beneficiary**  2:6
**berezin**  2:4
**bernard**  1:11,17
  1:21
**bernstein**  3:2
**better**  10:17
**blmis**  8:6,12 9:9
  10:9 11:10,13
  12:15,21,23 13:8
  14:9,10,17 15:5
  17:7,21
**bowling**  2:17
**boxes**  13:6,12
**briefing**  10:22
  12:10
**broad**  15:10
**broader**  14:20
**bunch**  18:7
**burden**  8:25

**c**

**c**  5:1 6:1 20:1,1
**call**  13:19 18:10
**calls**  8:6
**case**  1:3,4,5
**categories**  9:7
**category**  9:17
**certain**  8:2 12:12
**certified**  20:3
**chaitman**  5:3,8
  6:4,6,9,18 7:5,11
  7:15,21 8:3,10,20
  8:22 9:3,6,14,17
  9:24 10:4,17 11:5
  11:18 12:12 14:5
  15:7,14,22,25
  16:9,13,17,20,22
  17:6,12,19 18:1,4
  18:9,15,21,25

**chaitman's**  12:7
**challenge**  17:1
**chance**  16:1
**characterized**
  11:19
**cherry**  12:12
**chose**  10:5
**clarify**  10:13
  11:15
**clear**  11:4 12:5,6
  12:8,11 15:7
**clerk**  6:2
**collection**  13:7
**come**  7:17
**comprehensive**
  11:9
**concerned**  15:16
**concluded**  19:7
**confer**  6:14 11:7
  15:1,3 17:16,25
**conference**  4:1
  6:6 15:24
**connection**  11:24
  12:9
**considerably**
  12:24
**considered**  11:24
**contained**  9:8
**context**  12:13
**convince**  10:1
**copies**  13:2,15
**copy**  13:6,12
**corporation**  1:8
**correct**  14:16
  15:19
**cost**  9:20
**costs**  7:4 16:2
**counsel**  9:15
**country**  20:21
**couple**  11:19
  14:14

**court** 1:1 2:16 6:3
6:5,8,10,19,23 7:8
7:12,17,20,25 8:8
8:16,21 9:1,4,12
9:16,21,25 10:10
10:20,24 11:3,12
11:16 12:3,9,14
12:17,20 13:2,9
13:13,18,21 14:2
14:11,14,19 15:18
15:20,24 16:11,16
16:18,21 17:5,10
17:17,20 18:3,9
18:11,14,23 19:1
19:3,5
**credibility** 17:2
**cremona** 5:15
**currently** 15:14
**customer** 15:9
17:4

**d**

**d** 6:1
**data** 8:9,11 9:7
11:10,13,17,22,22
12:17,23 13:7
**database** 8:6,13
8:13 9:10,12 10:9
12:15,20,21 13:8
14:6,9,10,17 15:5
17:7,21
**date** 20:25
**davis** 5:8
**day** 10:22
**days** 6:20
**dealt** 18:18
**debtor** 1:18
**defendants** 1:13
2:13 5:4 8:7,12,14
9:15 13:10
**deposition** 10:23
**described** 12:18
**designating** 9:1

**detail** 14:7
**determination**
8:18
**different** 6:20
8:11 13:13 16:7
**digitize** 8:18
**digitized** 9:13,14
13:21
**disagreement**
6:16
**disclose** 7:17
**disclosed** 8:24
**disclosures** 11:25
12:5
**discovery** 4:1 6:7
12:7 16:21
**dispute** 6:13 8:3,5
15:17,18 16:6,21
**district** 1:2
**documents** 7:22
8:2,11,14,17 9:7
9:10 10:23 11:23
12:22,24,25,25
13:6,8,10,11,12
13:19 14:18,22,23
15:5,10,13,14
17:2,8,13,19,24
**doing** 12:12

**e**

**e** 3:1,1 5:1,1 6:1,1
8:11 9:7 11:17,22
20:1
**ecro** 3:5
**educating** 11:3
**email** 18:10
**enormous** 13:7
**entire** 10:8
**entirely** 10:18
**established** 18:19
**evelyn** 2:4
**exactly** 10:16
17:15

**expanding** 7:9
**experts** 11:24
**explain** 18:1

**f**

**f** 3:1 20:1
**fact** 17:13
**failure** 11:3
**faith** 11:8
**false** 13:25
**far** 15:16 18:5
**feel** 16:7
**fees** 7:4 16:2
**fidelity** 14:21
**file** 6:22,22,24
7:19
**filed** 6:18,19 7:1
**financial** 16:24
18:4
**first** 15:8
**focus** 10:7,14,15
**focused** 11:1 15:4
15:5
**follow** 16:3 18:24
**followed** 7:2,14
7:15 15:12 16:1
18:20
**foregoing** 20:3
**four** 10:5 13:15
**fourth** 2:2,7,11
**fully** 11:3

**g**

**g** 6:1
**game** 16:13
**garbage** 18:7
**generally** 10:25
**getting** 7:9 16:7
**give** 8:14 14:13
17:13
**given** 8:7 14:6
15:7
**gives** 18:10
**global** 11:24

**go** 6:8 7:5,16 9:13
10:6 18:21
**going** 7:3 12:5
17:3 18:5,6
**good** 6:3,4,5 10:11
11:8 16:1
**green** 2:17
**grounds** 14:24,24
**guess** 6:11

**h**

**h** 1:20
**happened** 7:7
9:11 10:4
**happy** 18:13
**hard** 13:2,6,12,14
13:14
**hear** 6:9
**heard** 6:19 17:6
**hearing** 4:1
**held** 11:22 17:3
**helen** 5:8
**history** 7:18
**hon** 3:2
**honor** 6:4,21 8:24
9:18 10:11 11:4
11:15 14:8 16:10
18:8 19:6
**honor's** 10:15
**hyde** 4:25 20:3,8

**i**

**idea** 12:25
**identify** 8:1
**identifying** 6:15
**ignored** 10:17
**ignoring** 11:6
**inaccurately**
11:18
**includes** 12:1 13:5
13:5
**indices** 11:8,9,10
**individually** 2:5
**information** 8:2
11:21 12:2 13:9

**initial** 12:5
**inspection** 13:10
**institutions** 16:24
  17:1,9,9,14 18:4
**intended** 7:12
**interested** 16:22
**interrupt** 9:22
**investment** 1:11
  1:22
**investor** 1:7
**irving** 1:20
**israel** 2:3,7,12
**issue** 8:16 18:19
**issues** 6:12 7:13
  10:25
**itemization** 11:9

**j**

**j** 5:15
**jonathan** 3:5
**judge** 3:3 6:11,15
  7:6,16,18,25
  10:15,25 14:25
  16:4 18:2,18,21
**july** 6:20 11:1
**june** 6:20 10:18

**k**

**keep** 18:4
**keeps** 7:9
**kept** 18:5,6
**key** 13:23 17:21
**know** 10:24 16:5
  16:16 18:14,24

**l**

**l** 1:11,17,21
**laid** 7:18
**larger** 12:24
**largest** 9:10
**lay** 16:14
**lead** 1:3
**ledanski** 4:25 20:3
  20:8

**left** 6:16
**legal** 20:20
**letter** 6:15,17,25
  12:6 14:8 18:24
**letters** 12:9
**liquidation** 1:21
**litigated** 16:6
**little** 16:13
**llc** 1:12,22
**llp** 5:3
**located** 11:11
**look** 9:15,19,22,25
  13:14
**looked** 13:15
**looking** 15:8
**looks** 7:13
**lose** 7:3
**lot** 10:13

**m**

**m** 3:2
**madoff** 1:11,17,21
  6:3 10:8,22 16:15
  16:24 17:3 18:5
**magistrate** 7:6,16
  7:18
**making** 18:17
**march** 10:15
**massive** 8:13
**match** 17:3
**max** 10:11
**maximillian** 5:16
**mean** 9:21 14:2
**media** 13:5,12
**meet** 6:13 11:7
  15:1,3 17:16,25
**microfiche** 8:20
  8:23 13:15
**microfilm** 13:3,4
**million** 12:22,24
  13:8 14:9,23
  15:10
**mineola** 20:23

**missing** 9:2
**monthly** 16:25
**months** 7:21 15:2
**morgan** 14:22
**morning** 6:3,4,5
  10:11
**moss** 6:12,15 7:6
  7:16,18,25 10:15
  10:25 14:25 16:4
  18:18,22
**motion** 6:7,19,22
  6:24 7:1,3,19
  10:18,21 16:2
  18:17
**mouth** 14:3
**multiple** 12:8

**n**

**n** 5:1 6:1 20:1
**names** 14:21
**narrow** 6:12,12
  7:12 15:2
**narrower** 7:9
**nature** 16:6
**need** 11:15
**never** 8:7 11:22
  12:1,4 14:5
**new** 1:2 2:18 5:6
  5:13
**nicholas** 5:15
**november** 15:4
**numbers** 17:23
**ny** 2:18 5:6,13
  20:23

**o**

**o** 2:2,2,7,7,11,11
  3:1 6:1 20:1
**objected** 14:23
**obviously** 7:12
  15:18
**offered** 13:14
  14:20
**okay** 6:8 9:16,17
  10:4,10,20 11:12

11:16 12:3 14:19
  16:17,20,22,25
  17:5 18:21 19:4
**old** 20:21
**open** 7:3
**operated** 10:8
**opportunity**
  13:14
**order** 10:15,16,19
  11:1,5,5,7 14:25
  19:1
**ordered** 7:23
**ought** 16:3
**outset** 10:14

**p**

**p** 5:1,1 6:1
**papers** 6:10 7:17
**park** 5:5
**part** 6:13 7:25,25
  11:2 18:14
**parties** 6:13
**party** 15:5,8
  16:23 17:9,9,14
**pay** 9:19,20
**picard** 1:20
**picking** 12:12
**pieces** 13:5
**place** 7:2,10 15:25
**places** 16:7
**plaintiff** 1:9,24
**played** 16:14
**plaza** 5:12
**please** 6:2
**point** 6:21,21 7:6
  7:23
**position** 16:14,16
  16:19
**positions** 17:3,4
**possession** 11:10
  12:23
**possibly** 9:9
**probably** 7:2 11:3

**problem** 7:8 18:8
**procedure** 6:12
  7:2,10,13 15:25
  18:19,19,24
**procedures** 16:3
**proceedings** 19:7
  20:4
**process** 13:7
**processed** 12:22
  13:19
**produce** 7:22,24
  15:15
**produced** 9:5
  11:23 14:17 15:6
  15:13 16:11
**production** 15:10
  17:23
**productions** 12:1
  14:7
**productive** 10:6,7
  13:16
**proportionality**
  18:16
**protection** 1:7
**protocols** 15:13
  15:15
**provided** 11:8
**providing** 11:9
**purchase** 16:15
**pursuant** 15:15
**put** 14:2

**q**

**quite** 14:23

**r**

**r** 3:1 5:1 6:1 20:1
**ran** 14:16,17
  15:12 17:23
**read** 6:10
**realize** 6:11
**reasonable** 14:13
  18:13
**record** 9:9 20:4

**records** 7:24 8:4,5
  8:20 10:7 14:10
  18:5,5
**reels** 8:22,23 9:11
  9:11,18,19 10:5
  13:15
**reference** 15:24
**referencing** 10:18
**referred** 12:15
**referring** 10:21
**refuses** 8:14
**relevance** 18:15
**relevant** 9:4 10:1
  10:5 11:21 12:1
**reports** 11:25
**repository** 11:20
  12:22
**represented** 9:8
  11:20
**request** 6:6
**requests** 12:8 15:2
**required** 6:13 8:1
  11:7
**respect** 6:7 17:22
**response** 15:6
**responses** 12:7
**responsive** 14:18
  15:10
**right** 6:18 7:11
  8:21 9:3,3,6,24
  10:10 11:2 12:16
  13:4,17,20 14:11
  15:20 17:17 18:3
  18:23,25 19:2,3
**road** 20:21
**rockefeller** 5:12
**room** 8:9,11 9:7
  11:13,17,22 12:17
**rule** 11:25 14:24
  15:6 17:18,24
**run** 13:25 14:9
  15:16 18:12

**runs** 18:9

**s**

**s** 5:1,16 6:1
**sanctions** 6:24
**sara** 2:10
**saying** 6:25 7:1,4
  7:10 13:24 16:11
  16:12
**search** 13:23 14:1
  14:8,13,13,17,21
  15:10,12,15 17:7
  17:18,19,20
**searchable** 9:14
  13:22
**searches** 17:21
  18:13
**seated** 6:2
**securities** 1:7,12
  1:22 16:15 17:2
**see** 6:16 8:12
**seims** 2:10
**select** 9:23
**sends** 18:10
**sense** 7:16 13:21
**sensibly** 14:24
**served** 15:7
**set** 6:12 16:4
**shifrin** 5:16 10:11
  10:12,21 11:2,14
  11:17 12:4,16,19
  12:21 13:4,11,17
  13:20,25 14:7,12
  14:16,20 15:19,21
  17:15,18,22 18:8
  18:12 19:6
**show** 17:2
**showing** 9:1
**six** 7:21
**smb** 1:3,4,5
**solutions** 20:20
**sonya** 4:25 20:3,8
**sounds** 18:18

**sources** 6:15
**southern** 1:2
**specifically** 11:11
  17:24
**spring** 8:23
**stanley** 14:22
**start** 11:17
**state** 10:14 11:11
  12:6
**statements** 12:13
  15:9 16:25 17:4
  18:6
**states** 1:1 2:16
**stating** 11:19
**step** 10:3
**sterns** 18:6
**stop** 18:16
**stuart** 3:2
**stuff** 9:13
**subject** 16:2
**subpoenaed** 17:8
  17:14
**subpoenas** 15:6
**successful** 15:2,3
**suggested** 9:1,18
**suite** 20:22
**sure** 16:11

**t**

**t** 20:1,1
**take** 9:22,25
**talk** 10:2
**talking** 11:12
**tell** 6:23,24
**telling** 13:18
**terms** 14:1,8,13
  14:13,17,21 15:11
  15:12
**thank** 19:5,6
**thing** 11:14 16:9
**think** 6:21 8:23
  10:24 11:1,2,4,15
  14:23 16:3 18:14

**[third - york]**                                                                                     Page 5

| | |
|---|---|
| **third** 9:17 15:5,8 16:23 17:8,9,14 | **vehicle** 11:23 |
| **thought** 8:8,9,16 9:21,22 10:6 15:3 17:20 | **veritext** 20:20 |
| | **violated** 14:25 |
| | **violation** 10:19 |
| **three** 9:7 | **volume** 9:10 |

| **w** |
|---|

| | |
|---|---|
| **time** 10:8 12:11 13:16 15:8 | **w** 2:2,7,11 |
| **trading** 7:24 8:4,5 9:8 10:7 16:23 | **want** 6:9 7:5 9:23 16:25 |
| **transcribed** 4:25 | **wanted** 8:12 |
| **transcript** 20:4 | **wants** 11:11 17:19 18:12 |
| **tried** 7:21 15:1 | **way** 10:6 |
| **true** 20:4 | **we've** 14:5 15:21 15:22 |
| **trust** 2:2,6,11 | **whipsawed** 16:7 |
| **trustee** 1:20 2:5 2:10 5:11 7:18,22 7:24 8:5,6,12,14 8:17,24 9:8,15 10:12 12:23 15:7 17:7,8,14 | **wholesale** 15:9 |
| | **wilenitz** 2:3,4,8,12 |
| | **win** 16:1 |
| | **word** 13:23 |
| | **words** 14:2 16:23 |
| | **world** 16:24 |
| **turned** 10:2 | **worth** 8:18 |
| **two** 6:20 7:23 8:4 8:10 10:22 16:6 | **write** 6:14 18:23 |
| | **wrong** 18:1 |

| **u** | **x** |
|---|---|

| | |
|---|---|
| **u** 2:2,7,11 | **x** 1:6,15,19 2:14 |

| | **y** |
|---|---|

| | |
|---|---|
| **u.s.** 3:3 | **yeah** 6:23 10:24 14:16 16:13 18:14 |
| **ultimate** 11:20 13:7 | **year** 10:17,19 11:6 |
| **understand** 10:8 11:13 | **years** 7:23 8:4 11:19 18:6 |
| **understanding** 13:23 14:3 17:10 | **yielded** 14:22 |
| **unfortunately** 10:12 | **york** 1:2 2:18 5:6 5:13 |
| **united** 1:1 2:16 | |
| **universe** 13:19 14:22 | |
| **use** 11:8,10 13:16 | |

| **v** |
|---|

| |
|---|
| **v** 1:10,25 |
| **various** 12:10 |

**From:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Sent:** Tuesday, May 01, 2018 5:54 PM
**To:** Shifrin, Maximillian S. <mshifrin@bakerlaw.com>
**Subject:** RE: Wilenitz Conference Follow-Up

**When we had our meet and confer and when we exchanged emails thereafter, you never indicated that you would (and I never said that I wanted you to) limit your production to documents you obtained through 2004 subpoenas. That limitation never was discussed and I would never have agreed to that.**

**There is no reason to repeat the search you have already done. We had agreed that you would produce from the BLMIS data base all documents from third parties indicating trades done by Madoff and BLMIS without time limitation. I am entitled to all of those records and you should simply give me access to the BLMIS data base so that I can do my own searches. Why are you continuing to conceal these documents?**

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell: (908) 303-4568
Fax: (888) 759-1114

**From:** Shifrin, Maximillian S. [mailto:mshifrin@bakerlaw.com]
**Sent:** Tuesday, May 01, 2018 1:35 PM
**To:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Subject:** Wilenitz Conference Follow-Up

Helen,

At the hearing this morning, you appeared to object to our recent production on the grounds that it did not include documents from the BLMIS Database. As we agreed at the November 14, 2017 meet and confer, and as we confirmed in our responses and objections to your discovery requests, the Trustee applied the agreed-upon search terms across the Rule 2004 materials in the Trustee's possession.

However, we have no objection to running the same search terms across the BLMIS Database and producing any documents responsive to the search terms to the extent they have not already been made available to you. In an effort to proactively resolve this dispute, we will begin this process and provide an update once our review is complete.

If you have any questions, please feel free to reach out to me directly.

Best,
Max

**Maximillian S. Shifrin**
Associate

BakerHostetler

45 Rockefeller Plaza
New York, NY 10111-0100
T +1.212.589.4252

mshifrin@bakerlaw.com
bakerlaw.com

 

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

TA577

**From:** Shifrin, Maximillian S.
**Sent:** Thursday, May 10, 2018 12:40 PM
**To:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Subject:** RE: Status

Helen,

Please see the attached revised list of search terms with corresponding financial institution.

Max

**From:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Sent:** Wednesday, May 09, 2018 7:46 PM
**To:** Shifrin, Maximillian S. <mshifrin@bakerlaw.com>
**Subject:** RE: Status

Max:  Can you give me the names of the institutions each account number relates to?

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell:  (908) 303-4568
Fax:  (888) 759-1114

**From:** Shifrin, Maximillian S. [mailto:mshifrin@bakerlaw.com]
**Sent:** Wednesday, May 09, 2018 2:13 PM
**To:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Subject:** RE: Status

Helen,

Attached are the search terms we are running.  They are the exact same search terms we ran in connection with our previous production.

Once we run the search, we will isolate the documents that we have not previously produced to you or made available in E-Data Room 1 and review them.  We will not limit the search in any other way, including by date.

After we review the materials, we will produce the documents to you on a hard drive, as we have previously done.  Unless you have any objection, the production will include all documents responsive to the search terms (excluding documents already available to you) in order to ensure that you have everything that may be of interest.

Best,
Max

**From:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Sent:** Tuesday, May 08, 2018 12:53 PM
**To:** Shifrin, Maximillian S. <mshifrin@bakerlaw.com>
**Subject:** RE: Status

Can you please email me the search terms you are going to use, just so that there is no misunderstanding.

Also, just to be clear, you are not limiting the search by date, correct?

And once you complete the search, will you make all of the responsive documents accessible in the E-Data room?

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell: (908) 303-4568
Fax: (888) 759-1114

**From:** Shifrin, Maximillian S. [mailto:mshifrin@bakerlaw.com]
**Sent:** Tuesday, May 08, 2018 11:52 AM
**To:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Subject:** RE: Status

Helen,

As we proposed last week, we will run the same search terms across the BLMIS Database and provide an update once our review is complete. If you have any additional search terms you would like us to run, please let me know. Also, to the extent we identify any additional responsive documents in the course of our ongoing investigation, we will produce those to you as well.

We trust these measures are acceptable to you. If not, we can continue the discussion before Judge Maas.

Best,
Max

**From:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Sent:** Monday, May 07, 2018 3:23 PM
**To:** Shifrin, Maximillian S. <mshifrin@bakerlaw.com>
**Subject:** RE: Status

Max: "Third party records" meant non-Madoff documents. I made this absolutely clear in our meeting. No where did you or anyone else say you would only search among records that Picard had subpoenaed. Obviously, financial institutions don't keep records going back more than six years so that body of documents is obviously very limited.

I am asking you now to provide me with access to all documents which were generated by third parties reflecting any trading activity of Madoff and/or BLMIS without date limitation.  This request is inclusive of all documents that had been in Madoff's and BLMIS' possession or control prior to 12/11/08.

If this is  unclear, please let me know.  Also, please give me a date by which this production will be made.

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell:  (908) 303-4568
Fax:  (888) 759-1114

**From:** Shifrin, Maximillian S. [mailto:mshifrin@bakerlaw.com]
**Sent:** Monday, May 07, 2018 2:35 PM
**To:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Subject:** RE: Status

Helen,

Attached are four items that support our understanding of the agreements reached during the meet and confer.  They include the following:

1.  An email I sent to you on November 15, 2017—the day after our meet and confer—confirming that we will run the "search terms across our third party records";

2.  The Trustee's December 21, 2017 responses and objections to your subsequent discovery requests, which states (three separate times): "Consistent with the agreements reached with opposing counsel at the November 14, 2017 meet and confer, the Trustee will search for and review additional potentially responsive records from the universe of Third-Party Documents.";

3.  A January 2, 2018 email again confirming that we were running "searches in our Third Party Documents," as we had stated in our discovery responses; and

4.  A March 16, 2018 email informing you that we had "identified documents from the third-party database responsive to the agreed-upon search terms based upon BLMIS bank account numbers."

As you can see, we have been entirely consistent and transparent about what we agreed to do.  In contrast, you did not raise any issue with our search protocols until the hearing last week.

In any event, we don't understand what the dispute is here.  We have agreed to run the search you are complaining we didn't run.  And we would have happily run that search originally if we were not under the impression that you wanted to focus on the Trustee's third-party records.  Our goal was to give you exactly what you wanted.

Hopefully we can sort this out and avoid needlessly involving Judge Maas.

Best,
Max

**From:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Sent:** Monday, May 07, 2018 11:42 AM
**To:** Shifrin, Maximillian S. <mshifrin@bakerlaw.com>
**Subject:** RE: Status

Max:  Please email to me any communication between us which supports your contention, made before Judge Bernstein, that I limited my request to third party records subpoenaed by Picard.

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell:  (908) 303-4568
Fax:  (888) 759-1114

**From:** Shifrin, Maximillian S. [mailto:mshifrin@bakerlaw.com]
**Sent:** Monday, May 07, 2018 11:25 AM
**To:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Subject:** RE: Status

Helen,

As the Court recognized at the May 1, 2018 conference, Judge Maas's March 15, 2017 order continues to govern your request for additional documents.  In addition to setting forth a specific procedure for raising additional disputes (which you have repeatedly disregarded), that order requires you to use the comprehensive indices we provided and to state with specificity the documents that you seek and where you believe they may be located.  To date, you have not given us any indication that you've ever consulted these indices, much less used them to make an informed request for documents.

Despite your refusal to comply with this order, we remain happy to run reasonable search terms in the BLMIS Database in an effort to identify relevant documents that are of interest to you.  Indeed, we've done this for you multiple times since the initial arbitration before Judge Maas, and have produced to you over 200,000 documents from the BLMIS Database using this approach.  Most recently, after you complained to Judge Bernstein that our March 23, 2018 production focused exclusively on the Trustee's Rule 2004 materials (which was precisely what we agreed to do during our meet and confer), we offered to run that exact same search across the BLMIS Database in order to ensure that we provided you with everything of interest.  Inexplicably, you declined this offer—despite complaining in court hours earlier that we did not take this precise step—and are now demanding an effective production of 30 million documents without regard to relevance, proportionality, or cost.

At this point, we are simply perplexed by your approach.  You seem to have more interest in perpetuating disputes than in working with us to obtain the documents that you seek.  Should your approach change, we will remain happy to work with you.  But under these circumstances, we do not agree to a wholesale production of 30 million documents.

Best,
Max

**From:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Sent:** Sunday, May 06, 2018 3:01 AM
**To:** Shifrin, Maximillian S. <mshifrin@bakerlaw.com>
**Subject:** Status

Max:  Please let me know by Monday at 5 p.m. if the Trustee is going to voluntarily give my clients access to the BLMIS data base.

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell:  (908) 303-4568
Fax:  (888) 759-1114

---

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content of this email is limited to the matters specifically addressed herein and may not contain a full description of all relevant facts or a complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

**From:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Sent:** Wednesday, September 05, 2018 3:04 PM
**To:** Cremona, Nicholas J. <ncremona@bakerlaw.com>
**Cc:** Greg Dexter <gdexter@chaitmanllp.com>
**Subject:** RE: Draft Joint Letter to Judge Maas

While normally I would always accept an invitation for a meet and confer, I cannot do so in this instance.  We have had two years of such opportunities and they have still not resulted in the Trustee's compliance with two court orders.  Moreover, Judge Bernstein has rejected your proposal to take the discovery you describe below and it is time-barred under all of the case management orders entered in the cases I am defending.

Please let me know whether you want to add to our proposed letter to Magistrate Judge Maas.  If not, we will send it to Judge Maas as is, with a copy of this email exchange.

Helen Davis Chaitman
Chaitman LLP
465 Park Avenue
New York, New York 10022
hchaitman@chaitmanllp.com
Cell:  (908) 303-4568
Fax:  (888) 759-1114

**From:** Cremona, Nicholas J. [mailto:ncremona@bakerlaw.com]
**Sent:** Wednesday, September 05, 2018 3:08 PM
**To:** Helen Chaitman <hchaitman@chaitmanllp.com>
**Subject:** FW: Draft Joint Letter to Judge Maas

Helen,

I am resending the below email since I received an error message that is was undeliverable. Hopefully it comes through this time.

**Nicholas J. Cremona**
Partner


BakerHostetler
45 Rockefeller Plaza
New York, NY 10111-0100
T +1.212.589.4682

ncremona@bakerlaw.com
bakerlaw.com

**From:** Cremona, Nicholas J.
**Sent:** Wednesday, September 05, 2018 2:52 PM
**To:** IMCEAEX-_O=BECKER+20AND+20POLIAKOFF_OU=First+20Administrative+20Group_cn=Recipients_cn=hchaitman@48hosting8.local; 'gdexter@chaitmanllp.com' <gdexter@chaitmanllp.com>
**Cc:** Shifrin, Maximillian S. <mshifrin@bakerlaw.com>; Sheehan, David J. <dsheehan@bakerlaw.com>
**Subject:** RE: Draft Joint Letter to Judge Maas

Helen and Greg,

We write in response to your below request for the Trustee's position in connection with your proposed submission to Judge Maas. For the reasons set forth in this email, we suggest a meet and confer to discuss these and other open issues in lieu of further proceedings before Judge Maas in the first instance. The Trustee is evaluating a motion to seek additional limited discovery from defendants as contemplated in the Madoff Deposition Orders governing the participating cases, which includes the majority of your cases. In particular, the proposed motion contemplates additional depositions of former BLMIS employees, additional related document production and supplementation of the Trustee's expert disclosures and/or providing additional expert reports. Given the potential overlap between your discovery requests and the discovery contemplated by the Trustee's prospective motion, we believe it would be productive to discuss the issues in your proposed submission as well as the Trustee's motion to see whether we can reach agreement on the scope and timing of the additional discovery and document production, which would include continuing our discussion of the BLMIS Database.

Based on the foregoing, please let us know whether you are amenable to having a meeting next week to discuss these issues and deferring your submission to Judge Maas in the meantime.

We are generally available next week.

Please let us know how your clients would like to proceed.

Thank you.

**Nicholas J. Cremona**
Partner

<span style="color:#cc3333">BakerHostetler</span>

45 Rockefeller Plaza
New York, NY 10111-0100
T +1.212.589.4682

ncremona@bakerlaw.com
bakerlaw.com



Begin forwarded message:

**From:** Greg Dexter <gdexter@chaitmanllp.com>
**Date:** September 4, 2018 at 5:52:10 PM EDT

**To:** "Shifrin, Maximillian S." <mshifrin@bakerlaw.com>
**Cc:** "Sheehan, David J." <dsheehan@bakerlaw.com>, Helen Chaitman <hchaitman@chaitmanllp.com>
**Subject: Draft Joint Letter to Judge Maas**

Max:

I am attaching our portion of a draft joint letter to Judge Maas regarding the discovery dispute over trading records.

Could you please provide the Trustee's position by Thursday or Friday morning so that we can submit this to Judge Maas on Friday?

Thank you,
Greg Dexter


Gregory M. Dexter
Chaitman LLP
465 Park Avenue
New York, New York 10022
gdexter@chaitmanllp.com
Office:  (888) 759-1114
Cell:     (201) 417-8167
Website: www.chaitmanllp.com

---

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content of this email is limited to the matters specifically addressed herein and may not contain a full description of all relevant facts or a complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Maximillian S. Shifrin
direct dial: 212.589.4252
mshifrin@bakerlaw.com

September 17, 2018

**VIA E-MAIL**

Helen Davis Chaitman
Chaitman, LLP
465 Park Avenue
New York, New York 10022

*Re:*    *Trust U/Art Fourth O/W/O Israel Wilenitz, et. al.,* Adv. Pro. No. 10-04995 (SMB)

Dear Helen:

On September 4, 2018, your colleague, Greg Dexter, sent me your portion of a draft joint letter to Judge Maas pursuant to his March 15, 2017 order governing your request for "trading records." We subsequently sent you the Trustee's position on September 10, 2018, and we were under the impression that you would be submitting the joint letter shortly thereafter.

You have yet to do so, however, and have instead sent us a separate letter, dated September 14, 2018, in which you continue to obfuscate and misrepresent the relevant history of this dispute. At this juncture, given the multitude of inaccuracies in this recent letter, it is clear to us that we will need Judge Mass's assistance if we are to come to any resolution, and we therefore encourage you to submit the joint letter at your earliest convenience. As a reminder, please send us a final version of the letter before submitting it to Judge Maas.

With respect to the saved search functionality of E-Data Room 1, in my recent email to Ms. Cole, I invited her to consult with our Litigation Support Manager and discuss any proposed technical solutions she may have. I also informed her that, as an alternative solution, we were willing to make a conventional production of all the documents in E-Data Room 1 so that you can load them onto your own review platform without any restrictions. The Trustee stands by this offer, so please let us know how you would like to proceed.

*Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC*

September 17, 2018
Page 2

Sincerely,

*/s/ Maximillian S. Shifrin*

Maximillian S. Shifrin
Associate

# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T  212.589.4200
F  212.589.4201
www.bakerlaw.com

Maximillian S. Shifrin
direct dial: 212.589.4252
mshifrin@bakerlaw.com

November 27, 2018

**VIA ELECTRONIC MAIL**

Honorable Frank Maas, U.S.M.J. (Ret.)
c/o JAMS, Inc.
620 Eighth Avenue, 34th Floor
New York, New York  10018
fmaas@jamsadr.com

*Re:*   *Picard v. Wilenitz, et al., Adv. Pro. No. 10-04995*

Dear Judge Maas:

We write in response to Ms. Chaitman's letter, dated November 20, 2018, which we note is an unauthorized supplemental submission.  To the extent Your Honor considers that submission, we offer the following rebuttal intended to provide Your Honor with the context necessary to resolve this dispute.

In many ways, Ms. Chaitman's letter speaks for itself.  It confirms the Trustee's representations at the arbitration, including how difficult it has been to maintain a productive and professional relationship with Ms. Chaitman.  Most vividly, it shows that Ms. Chaitman's interest in documents is ultimately subordinate to her desire to perpetuate a false narrative of impropriety by the Trustee and his counsel.  As we stated during the arbitration, the latter objective is, and always has been, her primary one.  And it has made it impossible for the Trustee to resolve this longstanding dispute amicably, as evidenced by the significant efforts we detailed in the joint-statement and during the arbitration.

All of this is obvious from the first section of Ms. Chaitman's letter.  Under the heading "The Trustee's Deception," Ms. Chaitman offers multiple quotes—over two-years old and devoid of any context—that, upon the slightest inspection, do not support Ms. Chaitman's version of events.  This lack of context is why we recently provided Your Honor with complete transcripts of the hearings Ms. Chaitman selectively quotes, as well as examples of our formal disclosures that contradict her narrative.

We encourage Your Honor to review the transcripts and disclosures in their entirety—although it is clear from Ms. Chaitman's own exhibits that her quotes are misleading.  For

*Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC*

1

TA588

example, the very first quotation Ms. Chaitman references as proof of the Trustee's purported representations that E-Data Room 1 contained "all the trading records" actually reflects the Trustee's intention to produce any records of BLMIS securities trading retrieved by the search terms he applied after the December 2016 Arbitration. The Trustee has fulfilled this promise by producing *every* document responsive to the search terms (and restored from over 200 microfilm reels) alluded to in that transcript—as well as approximately 250 additional search terms we have applied in the BLMIS Database since then.

Similarly, with respect to the quotes from the May 2016 conference, the Trustee's counsel represented that E-Data Room 1 contains the documents the Trustee's experts reviewed in connection with their reports, and that Ms. Chaitman is not only capable of reviewing those same documents and conducting her own investigation, but that she should have some understanding of everything already available to her before she insisted on additional, expansive discovery. *See* May 2016 Conference Transcript at 10-13; 18-19. That has been our consistent message to Ms. Chaitman for years, and this is precisely what Ms. Chaitman has resisted for years. To this day, Ms. Chaitman has never offered examples of the types of records she is looking for, and her repeated and vague requests for "all the trading records," without any more detail despite the Trustee's multiple voluminous productions, suggest that she has not familiarized herself with the approximately 300,000 documents the Trustee has produced in connection with this dispute—or the four million the Trustee affirmatively made available before this dispute even arose.

Most fundamentally, the Trustee has always been clear about the nature of E-Data Room 1, the BLMIS Database, and the unrestored collection of BLMIS Data in his Rule 26 initial disclosures and discovery responses—both of which were served on Ms. Chaitman *before* the May 2016 conference. *See* Responses and Objections served in *Picard v. Wilenitz*, dated April 8, 2016, attached as Exhibit A, at 3-6[1]; 19; Rule 26 Initial Disclosures served in *Picard v. Wilenitz*, dated December 15, 2015, attached as Exhibit B. These formal disclosures establish that: (i) the Trustee has thousands of boxes of hard-copy documents and thousands of pieces of media; (ii) only "some" (approximately 30 million) of these hard-copy and electronic documents have been processed; and (iii) only four million documents (including third-party documents) have been affirmatively made available in E-Data Room 1 for the purpose of proving that BLMIS was a fraudulent and insolvent enterprise. *See id.* Given the unquantifiable nature of the Trustee's enormous data set, the Trustee's counsel would never represent that every single "trading record" in existence, however defined, is in E-Data Room 1. Indeed, such a position would be inconsistent with the Trustee's efforts over the last two years to produce millions of pages of additional documents.

With respect to the issue of attorney work product, the Trustee's primary objections to a request for 30 million documents, without regard to relevance and proportionality, are that it is (i) inconsistent with Fed. R. Civ. P. 26 and (ii) inconsistent with the specific directives contained in Your Honor's March 2017 Order. Your Honor raised the issue of privileged materials in that data population, and thus we provided Your Honor with an accurate assessment of the

---

[1] The data-related numbers in the *Wilenitz* discovery responses are different than those represented during the arbitration primarily due to the recharacterization of some hard-copy documents as ESI.

2

circumstances.  Since the December 2016 Arbitration, we have run approximately 250 search terms across the BLMIS Database and have produced all documents retrieved by those searches, and we recently offered to produce all the scanned hard-copy documents in the BLMIS Database as part of an ultimate resolution to this longstanding dispute (which Ms. Chaitman rejects).  It is therefore apparent that we have been willing to make broad productions notwithstanding the potential work product those productions contain.  The fact remains, however, that Rule 26 and the March 2017 Order are sufficient objections to a request for 30 million documents, which is why the Trustee has insisted that this population be targeted with reasonable search terms.

Indeed, the Trustee has already targeted the records Ms. Chaitman seeks using the most reasonable search terms that exist: the account numbers for known BLMIS/Madoff bank accounts.  Attached as Exhibit C is the list of account numbers the Trustee ran for Ms. Chaitman, with the corresponding financial institution to which the account number belongs.  The Trustee provided this chart to Ms. Chaitman months ago.  The exhibit contains multiple account numbers from all the financial institutions Ms. Chaitman specifically referenced at the arbitration— including JPMorgan & Chase, Bear Stearns, Lehman Brothers, Morgan Stanley, Fidelity, and Bank of New York.  *See* November 19, 2018 Arbitration Transcript, at 41.  As we explained at the arbitration, the Trustee ran these search terms in both the Rule 2004 Database and the BLMIS Database, which resulted in two productions totaling over 10,000 documents and nearly 200,000 pages.

Critically, the November 2017 Meet and Confer was the culmination of a months-long back and forth on Ms. Chaitman's original list of 22 search terms based on well-known financial institutions.  Rather than run these search terms that returned millions of hits, the Trustee agreed to run the 94 targeted search terms using known BLMIS/Madoff account numbers—despite the fact that Ms. Chaitman was out of compliance with the March 2017 Order.  This reasonable compromise was designed to avoid using the 22 broad and unfocused search terms Ms. Chaitman originally offered and also to avoid any further involvement by Your Honor.  Now that the Trustee has produced documents responsive to these search terms (from both the Rule 2004[2] and BLMIS Databases), Ms. Chaitman should not be permitted to reverse course on the agreements reached at the November 2017 Meet and Confer and insist on the initial search terms that precipitated it.  In fact, before the meet and confer, Ms. Chaitman informed the Trustee that she was not interested in "emails or similar documents" and explored whether there was a way of "separating out the non-trade documents."  *See* Emails exchanged between Ms. Chaitman and David J. Sheehan, attached as Exhibit D.  Less than two weeks later, the parties accomplished this by agreeing to use account numbers as search terms in lieu of bank names.

---

[2]       The Trustee bifurcated the production from the Rule 2004 Database by first producing the documents responsive to Ms. Chaitman's substantive request for third-party "trading records" as well as other non-confidential material retrieved by the search terms.  While the Trustee was in the process of noticing the relevant parties regarding the production of confidential materials responsive to the search terms (pursuant to the operative Litigation Protective Order and consistent with his goal of producing all documents the search terms retrieved), Ms. Chaitman wrote a letter to the Court requesting permission to file a motion for sanctions and complained about the non-responsive materials contained in the production the Trustee had already made.  Accordingly, the Trustee represented to the Court and Ms. Chaitman that he would not produce the non-responsive confidential documents. The Trustee later produced all documents responsive to the same search terms applied across the BLMIS Database.

Lastly, with respect to the indices, Ms. Chaitman does not accurately describe what the Trustee has provided. On December 16, 2016, in connection with the December 2016 Arbitration, the Trustee produced two indices: a Warehouse Index detailing hard-copy BLMIS documents and a Media Index detailing electronic BLMIS media, which included the microfilm. Months later, after Your Honor denied Ms. Chaitman's second motion to compel and Ms. Chaitman improperly raised the Trustee's collection of microfilm with Judge Bernstein, the Trustee produced a third index—the Microfilm Index—which was intended to provide additional information about BLMIS microfilm specifically. Ms. Chaitman's conflation of these various indices, produced at different points in time and for different reasons, as well as her reintroduction of the microfilm issue already resolved by Judge Bernstein, is just another example of how difficult it has been for the Trustee to navigate this dispute toward ultimate resolution. And Ms. Chaitman's last-minute efforts to discredit the Warehouse Index she has never used—nearly two years after the Trustee produced it and one and a half years after Your Honor directed her to consult it—should be rejected outright.

Ms. Chaitman's intransigence in the face of multiple reasonable proposals by the Trustee is self-evident, and thus we respectfully request that Your Honor (i) deny Ms. Chaitman's request as inconsistent with Fed. R. Civ. P. 26 and the March 2017 Order; and (ii) recognize that the Trustee has complied with all relevant orders and that Ms. Chaitman's accusations are meritless. Granting Ms. Chaitman's instant request would require ignoring the rules governing discovery, the orders governing this dispute, and the millions of pages of documents the Trustee has produced in a good faith effort to resolve it. And as an unfortunate collateral consequence, it would effectively reward Ms. Chaitman's inappropriate conduct over the past two years.

Respectfully submitted,

*/s/ Maximillian S. Shifrin*

Maximillian S. Shifrin

cc:    Helen Davis Chaitman (via email)

4

TA591