# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>-against-<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Case No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>Plaintiff,<br><br>-against-<br><br>LEGACY CAPITAL LTD.,<br><br>Defendant. | Adv. Pro. No. 10-05286 (SMB) |

**SUR-REPLY OF LEGACY CAPITAL LTD. IN RESPONSE
TO REPLY MEMORANDUM OF LAW OF THE SECURITIES
INVESTOR PROTECTION CORPORATION IN SUPPORT
OF THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

STEVENS & LEE, P.C.
485 Madison Avenue, 20th Floor
New York, New York 10022
Nicholas F. Kajon, Esq.
Telephone: (212) 537-0403
Facsimile: (610) 371-1223
nfk@stevenslee.com

*Attorneys for Legacy Capital Ltd.*

SL1 1579422v4 106906.00001

## TABLE OF CONTENTS

|      |                                                                                      | Page |
|------|--------------------------------------------------------------------------------------|------|
| I.   | Preliminary Statement                                                                | 1    |
| II.  | Legacy Had A Security Entitlement Under NY UCC § 8-501                               | 2    |
| III. | SIPC's Position Contradicts the Section 546(e) Decision                              | 2    |
| IV.  | SIPC's Argument is Illogical and Blatantly Misconstrues NY UCC § 8-501               | 4    |
| V.   | Conclusion                                                                           | 8    |

# TABLE OF AUTHORITIES

**CASES**

*In re Bernard L. Madoff Inv. Sec. LLC.*,
   721 F.3d 57-58 (2d Cir. 2013) .................................................................................... 6

*Butner v. United States*,
   440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979) .................................................. 4, 7

*Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co.*,
   No. 09 CIV. 9802 RJS, 2010 WL 1838730 (S.D.N.Y. May 4, 2010) .......................... 5

*Freeman v. Marine Midland Bank-N.Y.*,
   419 F. Supp. 440 (E.D.N.Y. 1976) ............................................................................... 6

*Picard v. Fairfield Greenwich Ltd.*,
   762 F.3d 199 (2d Cir. 2014) ......................................................................................... 7

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec., LLC)*,
   773 F.3d 411 (2d Cir. 2014) ................................................................................. 1, 3, 7

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC.)*,
   721 F3d 54 (2d Cir. 2013) ............................................................................................ 7

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 78cc(b) ............................................................................................................ 5

Section 548(c) of the Bankruptcy Code ................................................................... 2, 4, 5, 7, 8

Section 8-501(b)(1) of the New York Uniform Commercial Code ................................... 1, 2

NY UCC ........................................................................................................................ 2, 7

Article 8 of the NY UCC ............................................................................................ 5, 6, 7

NY UCC § 8-102(14)(ii) .................................................................................................... 2

NY UCC § 8-501 ..................................................................................................... 2, 4, 5, 8

NY UCC § 8-501 cmt 5 ...................................................................................................... 7

NY UCC §§ 8-505 ............................................................................................................... 5

NY UCC § 8-507(a) ........................................................................................................ 1, 6

Securities Investor Protection Act, 15 U.S.C. §§ 78*aaa–lll* ............................................. 1

U.C.C. § 8-506 ................................................................................................................6

UCC ................................................................................................................................4

Uniform Commercial Code § 8-506:7 ..........................................................................6

**SUSPECTS**

Section II.C ................................................................................................................1, 4

*Section 546(e) Decision* ..............................................................................1, 2, 3, 5, 7

Section 29(b) .............................................................................................................5, 6

*Picard v. HSBC Bank*....................................................................................................6

454 B.R. 25, 37 (S.D.N.Y. 2011).....................................................................................6

*id.* ¶ 8-505:13 .................................................................................................................6

Section 2..........................................................................................................................7

Section 28(a)(2) and Section 29(b) ................................................................................7

Section 8(c)(3) ................................................................................................................7

Bankruptcy Code ...........................................................................................................7

Sections 28(a)(2) and 29(b) ...........................................................................................7

**NON-TOA REFERENCES**

(*see* SIPC Reply at 11)..................................................................................................7

## I. Preliminary Statement[1]

Legacy Capital Ltd. ("Legacy") respectfully submits this limited sur-reply as allowed by the Court in opposition to the Memorandum of Law of the Securities Investor Protection Corporation ("SIPC") [Dkt. No. 204] ("SIPC Reply") in Support of the motion of Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78*aaa–lll*, and the estate of Bernard L. Madoff ("Madoff"), for summary judgment, dated December 21, 2018 [Dkt. Nos. 190-93] (the "Motion"). This sur-reply is limited to the new argument raised in Section II.C. of the SIPC Reply.

SIPC's argument that Legacy did not have a security entitlement to the amounts it received from BLMIS is belied by the *Section 546(e) Decision* and misconstrues Legacy's rights under Section 8-501(b)(1) of the New York Uniform Commercial Code ("NY UCC"). As of the day immediately preceding the two-year reach-back period, BLMIS was obligated to Legacy, as its customer, for the full amount of the reported securities entitlements in its account at BLMIS – an unavoidable obligation. At the time of each transfer, Legacy held an actionable claim against BLMIS for the full amount of securities entitlements reported in its account at BLMIS. Moreover, each time Legacy directed the broker to sell securities and remit proceeds – an "entitlement order" under NY UCC § 8-507(a) – BLMIS was obligated to remit a "settlement payment" to the customer for the full amount of the securities to satisfy the customer's sale or withdrawal instruction. Each payment (whether made before or during the reach-back period) was a "settlement payment" for the liquidated securities position, made in satisfaction of the

---

[1] All Capitalized terms not otherwise defined herein are as defined in Legacy's brief in opposition to the Trustee's Motion for Summary Judgment.

1

customer's right to payment in connection with its securities contract with BLMIS. As a result, such transfers were made in satisfaction of Legacy's antecedent debt, which constitutes "value" under Section 548(c) of the Bankruptcy Code. Because "value" is measured as of the transfer date, and the value of Legacy's security entitlement and other claims exceeded $86.5 million, Legacy has a complete defense to the Trustee's avoidance claim against Legacy.

## II. Legacy Had A Security Entitlement Under NY UCC § 8-501

Under Section 8 501(b)(1), "a person acquires a security entitlement if a securities intermediary [for example, a broker such as BLMIS]: (1) indicates by book entry that a financial asset has been credited to the person's securities account; (2) receives a financial asset from the person or acquires a financial asset for the person and, in either case, accepts it for credit to the person's securities account; or (3) becomes obligated under other law, regulation, or rule to credit a financial asset to the person's securities account." NY UCC § 8 501(b)(1).

A "securities intermediary" means " a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity." NY UCC § 8-102(14)(ii). There can be no dispute that BLMIS was a securities intermediary that owed duties to its customers under the NY UCC § 8-501. Hence, Legacy clearly qualifies for a security entitlement under the express terms of the statute. As discussed below, SIPC's argument that Legacy did not have a security entitlement to the amounts it received from BLMIS is wrong under both federal and New York state law.

## III. SIPC's Position Contradicts the *Section 546(e) Decision*

First, the position taken by SIPC that Legacy did not have security entitlements to the amounts it received from BLMIS under the NY UCC is patently incorrect and flies in the face of

2

SL1 1579422v4 106906.00001

the *Section 546(e) Decision*, which interpreted the relevant statute and decided the argument now raised by SIPC.[2] The Second Circuit opined that:

> The Trustee again contends that these transfers did not constitute 'settlement payment[s]' because BLMIS never engaged in actual securities trading. But we have held that the statutory definition should be broadly construed to apply to 'the transfer of cash or securities made to complete [a] securities transaction.' *Enron*, 651 F.3d at 334 (citations omitted). That is what the BLMIS clients received. **Each time a customer requested a withdrawal from BLMIS, he or she intended that BLMIS dispose of securities and remit payment to the customer.** *See* N.Y.U.C.C. § 8-501(b)(1) & cmt. 2 (broker's written crediting of securities to a customer's account creates an enforceable securities entitlement). **The statutory definition and *Enron* compel the conclusion that, for example, if I instruct my broker to sell my shares of ABC Corporation and remit the cash, that payment is a 'settlement' even if the broker may have failed to execute the trade and sent me cash stolen from another client.** As the district court correctly concluded, because the customer granted BLMIS discretion to liquidate securities in their accounts to the extent necessary to implement their sell orders or withdrawal requests, each transfer in respect of a such an order or request constituted a settlement payment.

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec., LLC)*, 773 F.3d 411, 422-23 (2d Cir. 2014) *("Section 546(e) Decision")* (emphasis added). The Second Circuit's position is unequivocal; the Second Circuit even used the example of a broker who failed to execute the trade and sent the customer cash stolen from another customer, in which case the customer would still have a securities entitlement.

Thus, the *Section 546(e) Decision*, which is binding on this Court, the Trustee and SIPC, makes crystal clear that Legacy held a claim to enforce its right to the liquidated value of the reported securities positions each time it requested and received the subject transfers from BLMIS, notwithstanding any fraud of BLMIS (which was unknown to Legacy and other good faith customers). As a result, such transfers were made in satisfaction of Legacy's antecedent

---

[2] The Trustee and SIPC were parties to the *Section 546(e) Decision*, and thus are collaterally estopped from challenging its application herein.

3

debt, which constitutes "value" under Section 548(c) of the Bankruptcy Code. Because "value" is measured as of the transfer date under applicable non-bankruptcy and non-SIPA law, *Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979), and not at the time of a far later SIPA liquidation case, Legacy has a value defense for transfers made on account of its securities entitlement.

### IV. SIPC's Argument is Illogical and Blatantly Misconstrues NY UCC § 8-501

The substance of SIPC's argument in Section II.C. of the SIPC Reply is that at the very moment a customer orders a broker to sell a security position and reduce that position to cash – whether to be held in the customer's account or, as here, to be immediately remitted to the customer – that client no longer has a security entitlement. This position is nonsensical, as it says, in essence, that, notwithstanding the customer's pre-existing "securities entitlement" on the broker's books immediately before the sale of the positon, once the position has been transformed from the book entry entitlement into cash by the broker's sale of the position at the customer's instruction, the customer no longer has any protected right to payment and is at risk of not recovering its money in full if, for example, there are insufficient securities to satisfy all holders of entitlements in the particular security, or if the broker simply absconds with the funds.

While that may be true at least as it relates to <u>recovering</u> the security entitlement from a pool of insufficient securities (for which the entitlement holder may be limited by UCC remedies), SIPC argues that it necessarily means the customer has no further right to payment against the broker and could never expect a full monetary recovery, which is precisely where SIPC misinterprets the statute. SIPC's interpretation of section 8-501 means that a broker would have, in substance, a license to steal its customers' money with impunity once it sold securities in its customers' accounts and reduced them to cash. This cannot possibly be the case.

08-01789-cgm    Doc 18649-1    Filed 04/08/19    Entered 04/08/19 17:27:13    Exhibit 1
Pg 10 of 13
10-05286-smb    Doc 212    Filed 04/04/19    Entered 04/04/19 12:04:43    Main Document
Pg 9 of 12

However, Legacy has no need to recover its security entitlement. In the instant case, the evidence submitted by Legacy demonstrates that BLMIS sold securities and remitted the proceeds to Legacy in satisfaction of Legacy's security entitlement. Because Legacy fully redeemed its positions, it is not faced with the problem of trying to recover its security entitlement from a pool of insufficient securities. However, even if there were no actual securities transactions, Legacy still has a securities entitlement according to the *Section 546(e) Decision*. Moreover, even if Legacy's securities entitlement were extinguished upon the sale of the securities in Legacy's account, importantly, that would not extinguish Legacy's federal and state law claims against BLMIS, and any such claims would serve as value under Section 548(c).

The District Court for the Southern District of New York has ruled that a broker breaches the duties set forth under NY UCC §§ 8-505 (payments to entitlement holder) and 8-507 (compliance with entitlement orders) if the broker fails to deliver dividends or fails to follow entitlement orders. *Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co.*, No. 09 CIV. 9802 RJS, 2010 WL 1838730, at *4 (S.D.N.Y. May 4, 2010). Such a failure would give rise to a state law breach of contract claim against the broker. *Id.* By that same reasoning, when Legacy directed BLMIS to liquidate securities and issue payment to Legacy during the two-year reach-back period, it did so in respect of its rights as an entitlement holder under NY UCC § 8-501. As a result, such transfers were made in satisfaction of Legacy's antecedent debt, which constitutes "value" under Section 548(c) of the Bankruptcy Code.

Contrary to the illogical implication of SIPC's contention, Article 8 of the NY UCC does not terminate a customer's state law rights and remedies against the broker. First, the statute makes no reference to Section 29(b) of the 1934 Act, which protects a customer by ensuring the enforceability of its securities contract despite fraud by the broker. 15 U.S.C. § 78cc(b). In fact,

5

the presence of fraud gives an innocent customer additional protections, including the right to either void or enforce a securities contract. *See Freeman v. Marine Midland Bank-N.Y.*, 419 F. Supp. 440, 453 (E.D.N.Y. 1976) (under section 29(b), "the investor, at his option, [may choose] to void the contract as a defense to a lender's suit, to sue on the contract for damages, to enforce the contract, or to seek rescission."). Clearly, the statutory text has maintained the right to enforce a broker's obligations despite that same broker's fraud.[3]

Second, "[n]o remedy is specified by Revised Article 8 for the breach by a securities intermediary of its duties under [Rev] U.C.C. § 8-507(a). The entitlement holder must, therefore, seek a remedy under non-U.C.C. law." 8A Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 8-506:7, at 142 (3d ed. 2005). "If the refusal, or failure of, the securities intermediary to act in conformity with U.C.C. § 8-506 [Rev] or a court order causes the entitlement holder to sustain a loss, it appears **that the loss could be recovered in an action at law** even though an issue will arise over whether the damages involved in a particular case are direct or consequential, and if consequential, whether there is any factor limiting their recovery." *Id. Accord, id.* ¶ 8-505:13 [Rev], at 132 ("As the securities intermediary is 'obligated,' it would appear proper for a court to entertain an ordinary contract action by the securities entitlement holders to recover the payment or distributions.").

Therefore, if BLMIS had failed to honor Legacy's request that securities be liquidated and the proceeds be transferred to Legacy, Legacy would have had the right to pursue state law causes of action and other appropriate remedies against BLMIS for the amount of its injury – the

---

[3] The *in pari delicto* doctrine bars the Trustee from invoking common law to avoid BLMIS's contractual obligations. *See In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 57-58 (2d Cir. 2013) (dismissing Trustee's common law claims); *Picard v. HSBC Bank plc*, 454 B.R. 25, 37 (S.D.N.Y. 2011) (applying "the common law doctrine of *in pari delicto*, which 'bars a trustee from suing to recover for a wrong that the debtor whose estate he represents essentially took part in.'") (citations omitted).

6

liquidated value of the reported securities positions – which serve as "value" under Section 548(c).

An entitlement is merely a mechanism for directing the funds back to the customer, not a mechanism for enforcement against the broker.

> The term entitlement order does not cover all directions that a customer might give a broker concerning securities held through the broker. Article 8 is not a codification of all of the law of customers and stockbrokers. Article 8 deals with the settlement of securities trades, not the trades. The term entitlement order does not refer to instructions to a broker to make trades, that is, enter into contracts for the purchase or sale of securities. Rather, the entitlement order is the mechanism of transfer for securities held through intermediaries, just as indorsements and instructions are the mechanism for securities held directly.

NY UCC § 8-501 cmt 5.

When analyzing the matter at bar, it is clear that, notwithstanding the NY UCC Article 8 provisions that limit the customer's rights "with respect to the asset only," customers still have established non-UCC rights of payment and recovery against a broker for breach of the duties and obligations giving rise to the customer's loss.[4] Thus, the broker has an obligation to the customer under the contract, the customer has a securities entitlement when the position is

---

[4] Contrary to SIPC's contention, these legal rights of a customer granted by non-SIPA federal and state law are not displaced by the proviso in Section 2 of SIPA that makes SIPA part of the 1934 Act. SIPC's contention to that effect, *i.e.*, that the proviso eviscerates the rights set forth in the 1934 Act Section 28(a)(2) and Section 29(b) (*see* SIPC Reply at 11) rests on a clear misreading of the statute. SIPA mandates the application of the Bankruptcy Code's avoidance provisions to recover pre-petition transfers. **See** Section 8(c)(3) of SIPA. The Second Circuit has emphasized *three times* in the Madoff case that the Trustee's powers to avoid and recover pre-petition transfers are cabined by the Bankruptcy Code, not SIPA. *See Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 212-213 (2d Cir. 2014); *Section 546(e) Decision*, 773 F.3d at 423; *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC.)*, 721 F.3d 54, 71 (2d Cir. 2013). Moreover, the substantive rights and defenses of defendants in fraudulent transfer litigation are fixed by non-bankruptcy law in place at the time of the transfer, not by the later event of the filing of a SIPA petition. *See Butner v. United States, supra.* Those substantive rights are not only the NY UCC law principles discussed above, but also those established in federal securities law and the state law rights that are expressly preserved by Sections 28(a)(2) and 29(b). To erase from the statutes those substantive federal protections that existed at the time of the transfers is not only inconsistent with SIPA, but is contrary to clear principles of statutory construction that mandate that one federal law cannot be read to displace another federal law in whole or in part unless the two are irreconcilable. The text of the statute itself bars such a reading because SIPA Section 8(c)(3) expressly looks only to the Bankruptcy Code's provisions to determine whether a broker's transfer to its customer is subject to avoidance and recovery.

recorded for the customer's account, and the broker has an obligation to pay the customer upon instruction. Therefore, Legacy received a protected settlement payment at the time of each cash payment, and in the absence of such payment Legacy would have the right to enforce that obligation against BLMIS.

## V. Conclusion

Based on the foregoing, notwithstanding any fraud of BLMIS, Legacy was entitled to enforce its right to liquidated securities when it received the subject transfers form BLMIS, either for Legacy's securities entitlement under NY UCC § 8-501, or in the alternative based on Legacy's other non-Section 8-501 claims. As a result, such transfers were made in satisfaction of Legacy's antecedent debt, which constitutes "value" under Section 548(c) of the Bankruptcy Code. Because "value" is measured as of the transfer date, Legacy has a value defense for transfers made on account of its securities entitlement. For the foregoing reasons, Legacy respectfully requests that the Court deny the Trustee's Motion for summary judgment, and grant Legacy such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 4, 2019

Respectfully submitted,

**STEVENS & LEE, P.C.**

By: /s/ Nicholas F. Kajon
Nicholas F. Kajon
485 Madison Avenue, 20th Floor
New York, New York  10022
Telephone:  (212) 537-0403
Facsimile:  (610) 371-1223

*Attorneys for Legacy Capital Ltd.*