**CHAITMAN LLP**
465 Park Avenue
New York, New York 10022
Phone & Fax: (888) 759-1114
Helen Davis Chaitman
Gregory M. Dexter
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com
*Attorneys for Defendants-Appellants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>              Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>              Defendant. | SIPA LIQUIDATION<br><br>(Substantively Consolidated)<br><br>Adv. Pro. No. 08-1789 (SMB) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>              Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>              Plaintiff,<br><br>v.<br><br>DEFENDANTS LISTED ON ECF No. 14283,<br><br>              Defendants-Appellants. | Adv. Pro. Nos. listed on ECF No. 14283. |

<u>**DEFENDANTS-APPELLANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR APPEAL OF JUDGE MAAS' JANUARY 2, 2019 ORDER DENYING DEFENDANTS' MOTION TO COMPEL THE TRUSTEE TO PRODUCE THE TRADING RECORDS**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL POSTURE ..................................................... 3

STANDARD OF REVIEW .......................................................................................................... 6

FEDERAL RULE OF CIVIL PROCEDURE 26 .......................................................................... 6

ARGUMENT ................................................................................................................................. 7

    I.     This Court already ordered the Trustee to produce the Trading Records ....................... 7

    II.    The Trustee has not established  that it would constitute any burden for
         him to share access to the BLMIS Database ................................................................. 10

    III.   Real trading occurred .................................................................................................... 12

    IV.   The BLMIS warehouse .................................................................................................. 14

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chen-Oster v. Goldman, Sachs & Co.*,
   285 F.R.D. 294 (S.D.N.Y. 2012) ........................................................12

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*,
   284 F.R.D. 132 (S.D.N.Y. 2012) ........................................................11

*Levin v. Gallery 63 Antiques Corp.*,
   2007 WL 1288641 (S.D.N.Y. Apr. 30, 2007)..........................................4

*Mary Imogene Bassett Hosp. v. Sullivan*,
   136 F.R.D. 42 (N.D.N.Y. 1991).........................................................11

*Mon Chong Loong Trading Co. v. Travelers Excess & Surplus Lines Co.*,
   2014 WL 5525237 (S.D.N.Y. Oct. 27, 2014) ...........................................6

*N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*,
   325 F.R.D. 36 (E.D.N.Y. 2018) .........................................................10

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978).......................................................................6

*Republic Gear Co. v. Borg-Warner Corp.*,
   381 F.2d 551 (2d Cir. 1967)..............................................................4

*Robinson v. Sanctuary Record Groups, Ltd.*,
   589 F. Supp. 2d 273 (S.D.N.Y. 2008)...................................................4

*Singer Mfg. Co. v. Golden*,
   171 F.2d 266 (7th Cit. 1948)..............................................................4

*Wyeth v. Impax Labs., Inc.*,
   248 F.R.D. 169 (D. Del. 2006) .........................................................12

**Statutes**

New York Uniform Commercial Code, § 8-501(b)(1) ....................................13

**Other Authorities**

Fed. R. Civ. P. 26.................................................................1, 6, 7, 10

Fed. R. Civ. P. 26(b)(1)...................................................................6

Fed. R. Civ. P. 26(b)(2)(C)(i) .......................................................................................................10

Fed. R. Civ. P. 26(b)(2)(C)(iii) .....................................................................................................10

Fed. R. Civ. P. 33(d) ................................................................................................................2, 5

Fed. R. Civ. P. 33(d)(1).................................................................................................................5

Defendants-Appellants listed on ECF No. 14283 ("Defendants") respectfully submit this reply memorandum of law in further support of their appeal of Judge Maas' January 2, 2019 Order (the "January 2, 2019 Order"), ECF No. 18354.[1]  The January 2, 2019 Order denied Defendants' most recent motion to compel the production of third-party trading records evidencing the trading activities of Madoff and BLMIS (the "Trading Records").

## PRELIMINARY STATEMENT

The Trustee's Opposition concedes many of Defendants' primary arguments.  Notably, the Trustee makes no showing whatsoever that it would constitute an undue burden to share access to the BLMIS Database, which he concedes contains relevant documents.  The Trustee simply misinterprets Federal Rule of Civil Procedure 26 to argue that it does not require him to make any showing that it would be unduly burdensome for him to simply share access to an existing database until Defendants first make the impossible showing that *every single* document in the BLMIS Database is relevant.  Trustee's Brief ("Trustee's Br.") at 27 ("The Trustee does not dispute that third-party records reflecting purported securities trading by BLMIS are relevant; what the Trustee disputes is that this somehow entitled Ms. Chaitman to the production of 30 million largely *irrelevant* documents.").  Obviously, this is not a correct interpretation of Rule 26, as confirmed by common sense and common experience.  Defendants cannot possibly identify the Trading Records on the BLMIS Database when the Trustee has denied them access to it.  The Trustee's failure to establish *any* burden in sharing access to the BLMIS Database, let alone an undue burden, is dispositive.

---

[1]  Attached to the January 16, 2019 Declaration of Helen Davis Chaitman ("Chaitman Decl.") as Ex. 1 [AA13-19].

The Trustee also concedes that Judge Maas is without authority to overrule this Court. Because the Trustee cannot challenge this, he instead argues that this Court did not mean what it said when, on multiple occasions, it ordered the Trustee to produce all of the Trading Records. While the Trustee behaved as if he had the right to ignore this Court's orders, he obviously acted in deliberate contempt of this Court's orders, without any conceivable justification.  Although this Court is in the best position to interpret its own unambiguous words, Defendants always understood the Court's position to be, and the Trustee's representations to mean, that although the Trustee would not answer Defendants' Interrogatories by performing various summaries and analyses of the Trading Records in his possession, as Defendants' Interrogatories' requested, the Trustee would *at least* produce the Trading Records so that Defendants could perform their own analyses.  *See* Fed. R. Civ. P. 33(d) (interrogatories can be answered by producing business records but only "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records").

When this Court stated "if the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room,"[2] it was in response to the Trustee's argument that he could answer interrogatories by simply producing business records.  Although the Trustee now argues that Defendants take this statement of the Court out of context, it is the Trustee who attempts to distort the context in which this ruling was made.  The Court made this statement during an argument about Defendants' Interrogatory Number 18, which Interrogatory requested the following: "For each security listed on the Defendants' account statements for each year from 1982 on, set forth the number of shares of the listed companies' stock that BLMIS held at that time, and, if the stock was specified as belonging

---

[2] *See* May 17, 2016 Transcript at 69:19-22 [AA147].

to a particular customer, specify the customer and the number of shares shown on BLMIS' records

are being owned by that customer." [TA055]. Defendants and, we believe, the Court, always

contemplated that the Trustee would at least produce the Trading Records in lieu of answering

interrogatories. This is why, on the same transcript page of the allegedly "out of context" ruling

of this Court, the Court stated: "I understand that it's a lot of work – i[f] you want the Trustee to

do this for you, but you're going to have to do this yourself if this stuff is available." *See* May 17,

2016 Tr. at 69:5-8 [AA147]. Since the Trustee refused to answer interrogatories by doing anything

more than producing documents, the Trustee was required to produce the documents. This is why,

nearly a year later, when the Trustee still had not produced the Trading Records, this Court

reminded the Trustee that there were **"two orders directing you to turn over the documents."**

*See* June 29, 2017 Transcript[3] at 74:14-15 [AA35] (emphasis added).

This Court would never tolerate a Defendant's contempt of the Court's orders and we

cannot perceive any reason why the Defendants' discovery rights should be suppressed because

the Trustee has chosen to ignore this Court's orders. It is incomprehensible how the Trustee can

represent that he would answer interrogatories by producing the Trading Records and then, three

years later, continue to stonewall that production. At this point, the Trustee has spent far more in

legal fees resisting discovery than it would cost for the Trustee to simply produce all the Trading

Records and grant the Defendants access to the BLMIS Database.

### STATEMENT OF FACTS AND PROCEDURAL POSTURE[4]

The Trustee's Opposition consists primarily of a recitation of factual materials that were

not part of the record before Judge Maas and, therefore, procedurally inappropriate to consider on

---

[3] Ex. A [AA29-37] to the September 20, 2018 Joint Letter to Judge Maas, which Chaitman Decl. as Ex. 2 [AA21-74].

[4] Defendants incorporate by reference the facts set forth in their opening brief. [*See* ECF No. 18578-1].

appeal.[5]  The Trustee offers a longwinded history of various discovery disputes concerning the

Trading Records to support his primary argument, which is that his own words, and the Court's

own words, do not mean what they say.    Sometimes, the best explanation is the simplest

explanation: the Court ordered the Trustee to produce the Trading Records – on multiple instances

– and the Trustee repeatedly represented he had produced all the Trading Records.    The Trustee

still has not made that production.    Defendants rely on their Opening Brief, but point out the

following misrepresentations made by the Trustee:

The Trustee argues that Defendants initially only requested pre-1992 trading records.

Trustee's Br. at 9.    However, the transcript citation provided in support of this assertion, [TA290],

makes clear that pre-1992 records would be relevant for the additional purpose of proving that

Madoff did not become a fraudulent operation until 1992.    However, post-1992 records were

always relevant for other purposes, such as showing the proportion of trading performed by

Madoff's market making division compared to the investment advisory business.    Indeed,

Defendants' Interrogatory Number 16 – which the Trustee argued could be answered by producing

---

[5]  *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 557 (2d Cir. 1967) (documents not before the judge whose order is being appealed are not part of the record on appeal); *Singer Mfg. Co. v. Golden*, 171 F.2d 266 (7th Cit. 1948) (certain papers which had been presented to the court in original trial of unfair competition suit but which were not before the court in contempt proceedings were not properly a part of the record on appeal from order made in contempt proceedings though counsel designated such documents for inclusion in the record on appeal); *Robinson v. Sanctuary Record Groups, Ltd.*, 589 F. Supp. 2d 273, 275 (S.D.N.Y. 2008) (documents that were submitted to chambers and opposing counsel, but never docketed, are thus considered never actually filed in the district court proceeding, and should not be considered on appeal); *Levin v. Gallery 63 Antiques Corp.*, 2007 WL 1288641 (S.D.N.Y. Apr. 30, 2007) (deposition testimony, portions of which supported plaintiffs' argument, could not be added to record on appeal when plaintiffs had failed to append any portion of the testimony to their motion papers).

business records – specifically asks for gross trading volume for each segment of Madoff's business and is not limited to pre-1992 records.  [TA053].

Additionally, the Trustee repeatedly represents that Defendants are taking the Court's statement out of context when the Court stated "if the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room . . . ."  *See* May 17, 2016 Transcript at 69:19-22 [AA147].  However, the context of this discussion was that the Trustee was going to produce all of the Trading Records in lieu of answering interrogatories pursuant to Federal Rule of Civil Procedure 33(d).  *See* May 17, 2016 Tr. at 69:5-8 [AA147] ("I understand that it's a lot of work – i[f] you want the Trustee to do this for you, but you're going to have to do this yourself if this stuff is available."); *see also* [TA055, No. 18] ("The Trustee states pursuant to Federal Rule 33(d)(1) that Defendants may determine the response to this request by comparing [various Trading Records] . . . . and that burden of ascertaining the information is substantially the same for either party.").

Indeed, at least two of Defendants' Interrogatories could only be answered by a production of all of the Trading Records.  These include Interrogatory Number 16, which requests "the gross trading volume by both number of shares traded and total dollar volume for each year of Madoff's operation, broken down by (a) investment advisory business, (b) proprietary trading business; and (c) market making business.  Produce the documents on which you base your responses." [TA053].  Interrogatory 18 similarly asks: "For each security listed on the Defendants' account statements for each year from 1982 on, set forth the number of shares of the listed companies' stock that BLMIS held at that time, and, if the stock was specified as belonging to a particular customer, specify the customer and the number of shares shown on BLMIS' records as being owned by that customer.  Produce the documents on which you base your responses."  TA055.

Although the Trustee repeatedly represented that he would produce the Trading Records in lieu of answering interrogatories, to date, the Trustee has not answered interrogatories or produced the Trading Records.  We are now in our third year of seeking these documents.

## STANDARD OF REVIEW

Pursuant to the Order Appointing Arbitrator, the Discovery Arbitrator's findings of fact and legal conclusions are reviewed *de novo*.  ECF No. 14227, ¶ 10.  Rulings on procedural matters are reviewed for an abuse of discretion.  *See id*.

## FEDERAL RULE OF CIVIL PROCEDURE 26

Federal Rule of Civil Procedure 26(b)(1) outlines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  "Relevance . . . is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).  Defendants have a right to take discovery to develop the factual record necessary to support their defenses. *See, e.g.*, *Mon Chong Loong Trading Co. v. Travelers Excess & Surplus Lines Co.*, 2014 WL 5525237, at *3 (S.D.N.Y. Oct. 27, 2014) ("As long as the defense is in the case . . . .the defendant is entitled to seek relevant discovery in support of that defense.").

In 2015, Federal Rule of Civil Procedure 26 was amended to explicitly require that consideration be given to the parties' relative access to information.  *See* Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26.  As stated by the Advisory Committee:

> One party – often an individual plaintiff – may have very little discoverable information.  The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve.  In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so.

Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26.

## **ARGUMENT**

### I.    **This Court already ordered the Trustee to produce the Trading Records**

The Trustee does not dispute that a discovery arbitrator appointed by this Court cannot enter orders that overrule or contradict the previous Orders of this Court.  *See* Trustee's Br. at 23-26.  Instead, the Trustee argues that this Court did not actually order the Trustee to produce the Trading Records because the Court did not mean what it said.  We most respectfully ask the Court to consider how it would respond if the Defendants had ever made this argument.

The Trustee first incorrectly argues, Trustee's Br. at at 24,  that the Court did not actually order the Trustee to produce the Trading Records in May 2016 when the Court stated "if the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room . . . ."  *See* May 17, 2016 Transcript at 69:19-22 [AA147] The Trustee argues that if the Court actually ordered the Trustee to produce the Trading Records in May 2016, then there would have been no point for Defendants to make a subsequent motion to compel.  This is simply illogical; courts routinely make oral rulings and then require subsequent motion practice guided by those earlier rulings.  And since a party can only answer an interrogatory

by producing documents if the party ***actually produces the documents***, it would make sense that this interim ruling would be in place during the pendency of motion practice, clarifying to the Trustee that he could avoid answering interrogatories only if the Trading Records were produced by the time more formal motion practice occurs.  Again, we ask the Court to consider how it would respond if the Defendants had ever advanced such an argument.

The Trustee also suggests that the Court's statement during the May 2016 hearing requiring him to produce the Trading Records was taken out of context.  *See* Trustee's Br. at 24 (referring to the Court's statement that "if the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room . . . .").  But the transcript is clear that the allegedly out-of-context statement was made in response to the Trustee's argument that he could answer interrogatories by producing the Trading Records.  *See* May 17, 2016 Tr. at 69:5-8 [AA147] ("I understand that it's a lot of work – i[f] you want the Trustee to do this for you, but you're going to have to do this yourself if this stuff is available.").  The Trustee even acknowledges that Defendants' Interrogatories requested information about trading volumes, Trustee's Br. at 5, which, of course, if not answered directly by the Trustee could only be answered by Defendants after the Trustee produced all of the Trading Records.

Based on this Court's Order, Defendants believed that the Trustee would be required to produce all Trading Records so, ***at the very least,*** Defendants could perform the summaries and analyses of the Trading Records that the Trustee refused to do.  *See* May 17, 2016 Tr. at 69:1-8 [AA147] ("[Y]ou can make the argument that he actually owned the stock. . . .  But you're going to have to do this yourself if the stuff is available.").  The Court's statement was not out of context. Defendants obviously cannot "do this yourself" since the Trading Records have not been made available.  Moreover, we have been seeking production of these records for three years and never

before, in three years, did the Trustee come up with this absurd justification for his contempt of this Court's Order.

Since the Trustee's production of all Trading Records would be necessary for the Trustee to satisfy his obligation to answer Defendants' Interrogatories by producing business records, Defendants also believed that the Trustee meant what he said when he repeatedly represented that he would produce all Trading Records. *See* January 5, 2017 Transcript, attached as Ex. D to the September 20, 2018 Joint Letter to Judge Maas,[6] at 30:14-16 [AA59] **(MR JACOBS: "If it's a trading record, if it's a BLMIS trading record of securities having been traded, we will produce it.")** (emphasis added); *See* December 13, 2016 Transcript[7] at 145:23-146:5 [AA53-54] (MR. JACOBS: "We will look for and have been looking for stuff – any additional stock trading records as to earlier period of time . . . to the extent we find them or restore them or can obtain them from DTCC or any other method, we will produce them to you and will put them in the data room.  Absolutely."); January 5, 2017 Transcript at 30:14-16 [AA59] (MR JACOBS: "If it's a trading record, if it's a BLMIS trading record of securities having been traded, we will produce it.").[8]  Defendants should not be punished for relying on the Trustee's representations.  It is now three years later and the Trading Records have not been produced.  Is it really the law of this case that a Trustee whose law firm has been paid over $1 billion in legal fees can lie with impunity to the Court?

---

[6]  The September 20, 2018 Joint Letter to Judge Maas is Chaitman Decl., Ex. 2 [AA21-74].
[7]  Ex. C [AA47-55] to the September 20, 2018 Joint Letter to Judge Maas, which is Chaitman Decl., Ex. 2 [AA21-74].
[8]  Ex. D [AA57-60] to the September 20, 2018 Joint Letter to Judge Maas, which is Chaitman Decl., Ex. 2 [AA21-74].

## II.    The Trustee has not established  that it would constitute any burden for him to share access to the BLMIS Database

The costs of supplying Defendants' counsel with the credentials to access the BLMIS Database are presumably insignificant.  If this is not so, the Trustee must come forward to establish why it would be burdensome to supply access.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii);  Committee Note to the 2015 amendments to Fed. R. Civ. P. 26 (party who makes a proportionality objection based on undue burden will normally be the party with the best information about what that burden is, and therefore will be required to explain and support the claim); *see also N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48, n.11 (E.D.N.Y. 2018) (Rule 26 does not impose on party seeking discovery the burden of addressing all proportionality considerations). The Trustee does not dispute that this is his burden.[9]

The record is completely barren, as is the Trustee's Opposition, of ***any*** evidence that it would constitute ***any burden***, let alone an undue burden, for the Trustee to share access to the BLMIS Database.  Instead, the Trustee cursorily states in his Brief – without any supporting affidavits or other evidence whatsoever  – that sharing access would "involve ongoing hosting costs and labor to service Ms. Chaitman's access (as well as other counsel who would undoubtedly seek access on the same terms) . . . ."  Trustee's Br. at 29.  This cursory statement, made only in a brief, is insufficient to establish undue burden.  Moreover, this is based on pure speculation because other firms are not requesting access.

In the absence of any showing of undue burden, the Trustee argues, incorrectly, that Rule 26 first requires Defendants to make the showing that the ***entire*** BLMIS Database is relevant. Trustee's Br. at 26-30.  This is impossible and incorrect.  It is impossible because we have never

---

[9] Further, the Trustee does not challenge the fact that there is no other way to obtain the documents in the Trustee's possession because if Defendants were to serve a subpoena, no third party would still have records for the relevant time periods.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

had access to the BLMIS Database.  It is incorrect because the Trustee conflates relevancy and proportionality.  If this were actually the standard, then virtually every discovery request in any litigation – all but only the very narrowest – would be improper.  Of course, common experience and common sense counsel otherwise.  Indeed, even the cases cited by the Trustee are to the contrary.  *See, e.g.*, *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) (cited by Trustee's Br. at 27) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery.").

The Trustee fails in his attempts to distinguish the cases cited by Defendants in their opening Brief.  In *Mary Imogene Bassett Hosp. v. Sullivan*, 136 F.R.D. 42, 48 (N.D.N.Y. 1991), the court compelled a hospital to share access to an ***entire database containing over 84 million documents***, consisting of patient records, many of which were irrelevant, so that the party requesting access could use the data for the purpose of performing its own statistical analysis.  The Trustee attempts to distinguish this case on the basis that ***the analysis*** that would be produced from the 84 million documents would "'clearly be relevant.'"  Trustee's Br. at 30 (quoting *Mary Imogene Bassett Hosp. v. Sullivan*, 136 F.R.D at 49).  However, this is precisely the point: ***the analysis*** that would be performed by Defendants, *e.g*., analyses that prove that certain securities were traded on behalf of investment advisory customers, would "clearly be relevant" even though not all of the documents in the BLMIS Database would "clearly be relevant."  The Court in *Mary Imogene Bassett Hospital* did not mean that access to a database of 84 million patient records would only be compelled if each and every of the 84 million documents would "clearly be relevant."  Instead, the court was stating that the analysis would "clearly be relevant" to one issue, but not relevant to a separate issue.

In *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 172 (D. Del. 2006), a federal court sitting in Delaware required a litigant to share access to a voluminous document production, without regard to cost of sharing access, when that litigant had already made that document production for its own benefit in a separate litigation. The Trustee focuses on that aspect of the court's ruling that denied the moving party's request for pleadings, transcripts, expert reports, and orders from the separate litigation. *See* Trustee's Br. at 30 (citing *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. at 170). The Trustee does not, and cannot, deny the key holding of that case, which is that the party resisting discovery was compelled to share access, without regard to cost, to a voluminous document production that it had already made in the other litigation. *Id.* at 172. Here too, there is no reason not to require the Trustee to share access to an existing database.

The Trustee does not seriously challenge *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 305 (S.D.N.Y. 2012), in which the court recognized that a "data dump" compared to a "targeted production" is not burdensome. Here too, Defendants alleviate the burden on the Trustee by simply asking that he share access rather than run targeted searches. Indeed, this was the whole point of the May 2016 argument and subsequent discussions concerning the Trading Records: the Trustee refused to perform any of the analyses requested in Defendants' Interrogatories, but promised he would produce the Trading Records instead. Then he failed to do so.

## III.    Real trading occurred

Judge Maas denied Defendants' motion to compel the Trading Records because, according to Judge Maas, "Defendants' have yet to establish that there is a basis to believe that any of the securities transactions undertaken by BLMIS's legitimate House 5 operations were intended to benefit its investment advisory customers or that the Court should indulge in that assumption." January 2, 2019 Order, ECF No. ECF No. 18354, at 6 [AA18]. However, as Defendants previously set forth – and which Judge Maas was aware of – Madoff previously testified to this. *See id.* at 2

("Madoff has testified at his deposition that he engaged in actual trading on behalf of his investment advisory customers until approximately 1992 . . . ."). Judge Maas' legal analysis relied on a demonstrably false factual assumption – which even he knew was false.

Moreover, Judge Maas introduced an element which does not exist under the law. A securities transaction is proven by a broker's confirmation or statement sent to the customer. *See* New York Uniform Commercial Code, § 8-501(b)(1). Judge Maas would apparently hold that, in order to prove a securities transaction, you don't look at the customer's confirmation or statement; instead you interview the broker's staff to determine – despite a written confirmation sent to the customer – whether there was a subjective intent to purchase a security for the customer, as reflected on the confirmation sent to the customer. Obviously, securities transactions are not proven this way.

The Trustee does not seriously dispute that Madoff engaged in real trading using the money deposited by the investment advisory customers – as the Trustee's experts have now admitted. *See* Trustee's Br. at 30-31. Moreover, the Trustee cannot dispute that the customers were sent confirmations and statements showing the ownership of these securities. Instead, the Trustee simply argues that Judge Maas' false factual premise was irrelevant because he held that, "even if [real trading] were proven, there been [sic] no showing that the efforts that the Trustee already has undertaken in an effort to locate pre-1992 BLMIS trading records are inadequate." AA18 (cited at Trustee's Br. at 31). The Trustee ignores the fact that we have asked for all Trading Records and this Court never limited its order to put all Trading Records in the E-Data Room to a limited time period. Moreover, as the Trustee himself argues, "[p]roportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." Trustee's Br. at 26. Defendants agree. Judge

Maas' analysis about the reasonableness of the Trustee's efforts to locate the Trading Records is tainted by the false antecedent factual premise that Madoff never engaged in real trading on behalf of the investment advisory customers. Judge Maas' legal conclusion about the Trustee's efforts, therefore, cannot be sustained. In any event, both Judge Maas' factual findings and legal conclusions are subject to *de novo* review in this Court. ECF No. 14227, ¶ 10.

## IV.    The BLMIS warehouse

The Trustee argues that Defendants have changed their demands because they have now requested that the Trustee produce the documents in the Queens Warehouse. It is a massive effort for Defendants to examine the Trading Records in the Queens Warehouse, and will probably take many trips to the Queens Warehouse to complete. Defendants have undertaken this massive effort because the Trustee – despite his unprecedented compensation – has ignored this Court's Orders to produce all Trading Records. While Defendants are trying to mitigate the damages the Trustee has caused by his contempt of this Court's orders, the Defendants are still entitled to an order placing the burden and expense on the Trustee to produce all the Trading Records in the Queens Warehouse. Again, we ask the Court to consider how it would have reacted if the Defendants had acted as the Trustee has acted, in response to this Court's orders.

## CONCLUSION

The Trustee should be compelled to share access to the BLMIS Database and to produce to Defendants all of the Trading Records in the Queens Warehouse. In addition, as a sanction, the Trustee should be compelled to reimburse Defendants' counsel for all the legal fees they have incurred in trying to enforce this Court's orders.

Dated:   April 8,  2019
         New York, New York

                                      **CHAITMAN LLP**


                              By:   */s/ Helen Davis Chaitman*
                                    Helen Davis Chaitman
                                    Gregory M. Dexter
                                    465 Park Avenue
                                    New York, New York 10022
                                    Phone & Fax: 888-759-1114
                                    hchaitman@chaitmanllp.com
                                    gdexter@chaitmanllp.com

                                    *Attorneys for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I, Helen Davis Chaitman, hereby certify that I caused a true and correct copy of the foregoing documents(s) to be served upon the parties in this action who receive electronic service through CM/ECF.  I certify under penalty of perjury that the foregoing is true and correct.

Dated:  April 8, 2019                                      */s/ Helen Davis Chaitman*