# EXHIBIT B

**Fortis Prime Fund Solutions Bank (Ireland) Limited**
Plaza 2, Custom House Plaza
International Financial Services Centre
Dublin 1, Ireland

## AMENDED AND RESTATED
## CONFIRMATION OF INTEREST SWAP TRANSACTION

Date:            January 30, 2008
To:              Rye Select Broad Market XL Fund, LP
Attention:       Darren Johnston

From:            Fortis Prime Fund Solutions Bank (Ireland) Limited

Dear Sirs:

The purpose of this letter agreement ("Confirmation") is to confirm the terms and conditions of the transaction entered into between Fortis Prime Fund Solutions Bank (Ireland) Limited ("Party A") and Rye Select Broad Market XL Fund, LP ("**Party B**") on the Trade Date specified below (the, "**Transaction**"). This Confirmation constitutes a "Confirmation" as referred to in the ISDA Master Agreement specified below. This Confirmation amends and restates in its entirety the confirmation dated as of May 2, 2007 between Party A and Party B with respect to the Transaction. This Confirmation is effective as of February 1, 2008.

The definitions and provisions contained in the 2000 ISDA Definitions (the "**Swap Definitions**") and the 2002 ISDA Equity Derivatives Definitions (the "**Equity Definitions**"), each as published by the International Swaps and Derivatives Association, Inc., are incorporated into this Confirmation except as expressly modified herein. For these purposes, all references in the Swap Definitions to a "Swap Transaction" shall be deemed to apply to the Transaction referred to herein. In the event of any inconsistency between the Equity Definitions and the Swap Definitions, the Equity Definitions will govern. In the event of any inconsistency between the Equity Definitions or the Swap Definitions and this Confirmation, this Confirmation will govern.

This Confirmation supplements, forms a part of, and is subject to, the 2002 ISDA Master Agreement, dated as of May 2, 2007, as amended and supplemented from time to time (the "**Agreement**"), between you and us. All provisions contained in the Agreement govern this Confirmation except as expressly modified below.

The terms of the Transaction to which this Confirmation relates are as follows:

84271721_4

1.  **General Terms:**

**Trade Date:**                     May 2, 2007

**Effective Date:**                 May 2, 2007

**Scheduled Termination Date:**     October 31, 2008 or such later date as may be agreed in writing, from time to time, by Party A and Party B.

**Termination Date:**              The earliest to occur of (i) the Scheduled Termination Date, (ii) the termination of this Transaction in full in connection with the designation of a Fund Event pursuant to Section 9 of this Confirmation, (iii) the termination of this Transaction in full in connection with the designation of a Ratio Event Termination Date pursuant to Section 5 of this Confirmation, (iv) the termination of this Transaction in full in connection with the designation of a Party B Optional Termination Date pursuant to Section 11 of this Confirmation and (v) the Early Termination Date designated in respect of this Transaction in accordance with Section 6 of the Agreement.

If an Early Termination Date is designated or otherwise occurs as to this Transaction under Section 6 of the Agreement or if any other Termination Date occurs, the amount payable in relation to such Early Termination Date or Termination Date with respect to this Transaction shall be determined as set forth in this Confirmation notwithstanding any provision of Section 6(e) of the Agreement to the contrary.

**Shares:**                         One or more limited partnership interests in the Fund with an Interest Market Value as of the Effective Date in the amount shown on Schedule 1 hereto, as such Schedule may be amended from time to time in accordance with the terms of this Confirmation ("**Interests**").

**Fund:**                           Rye Select Broad Market Fund, LP

**Business Days:**                  New York, U.S.A. and Dublin, Ireland.

**Business Day Convention:**        Modified Following.

**Calculation Agent:**              Fortis Prime Fund Solutions Bank (Ireland) Limited whose determinations and calculations shall be made in good faith in a commercially reasonable manner.

34271721_4

2

1.  **General Terms:**

   **Trade Date:**                    May 2, 2007

   **Effective Date:**                May 2, 2007

   **Scheduled Termination Date:**    October 31, 2008 or such later date as may be agreed in
                                      writing, from time to time, by Party A and Party B.

   **Termination Date:**              The earliest to occur of (i) the Scheduled Termination Date,
                                      (ii) the termination of this Transaction in full in connection
                                      with the designation of a Fund Event pursuant to Section 9
                                      of this Confirmation, (iii) the termination of this Transaction
                                      in full in connection with the designation of a Ratio Event
                                      Termination Date pursuant to Section 5 of this
                                      Confirmation, (iv) the termination of this Transaction in full
                                      in connection with the designation of a Party B Optional
                                      Termination Date pursuant to Section 11 of this
                                      Confirmation and (v) the Early Termination Date designated
                                      in respect of this Transaction in accordance with Section 6
                                      of the Agreement.

                                      If an Early Termination Date is designated or otherwise
                                      occurs as to this Transaction under Section 6 of the
                                      Agreement or if any other Termination Date occurs, the
                                      amount payable in relation to such Early Termination Date or
                                      Termination Date with respect to this Transaction shall be
                                      determined as set forth in this Confirmation notwithstanding
                                      any provision of Section 6(e) of the Agreement to the
                                      contrary.

   **Shares:**                        One or more limited partnership interests in the Fund with
                                      an Interest Market Value as of the Effective Date in the
                                      amount shown on Schedule 1 hereto, as such Schedule may
                                      be amended from time to time in accordance with the terms
                                      of this Confirmation ("Interests").

   **Fund:**                          Rye Select Broad Market Fund, LP

   **Business Days:**                 New York, U.S.A. and Dublin, Ireland.

   **Business Day Convention:**       Modified Following.

   **Calculation Agent:**             Fortis Prime Fund Solutions Bank (Ireland) Limited whose
                                      determinations and calculations shall be made in good faith
                                      in a commercially reasonable manner.

34271721_4

2

**Interest Market Value:**

Shall mean, as of any date of determination, the USD net asset value of the applicable Interests as of such date, determined by the Calculation Agent based on (but not necessarily exclusively), to the extent it is available to the Calculation Agent, the most recent net asset valuation information (reflecting the net asset valuation of the Interests as of the end of the immediately preceding month) published, announced, distributed, or otherwise provided by the Fund or its agent or representative.

The Fund, its agent or representative, expects (but is not required) to provide net asset valuation information as of the end of each month to the Calculation Agent within 15 calendar days after the last Business Day of such month. If such information is made available within such time period or at any time before the 28th day after the end of the month with respect to which the calculation relates, the Calculation Agent shall base its determination (but not necessarily exclusively) on such available information. If the Fund does not publish, announce, distribute, or otherwise provide a financial report, net asset valuation, or other similar information within 28 calendar days following the last Business Day of such month, then the Calculation Agent shall calculate the net asset value of the applicable Interests for such date on the basis of any other relevant information that the Calculation Agent determines is suitable to rely on and take into account.

The Calculation Agent shall promptly notify the parties, in writing, of the Interest Market Value as of the date of determination, setting forth in reasonable detail the basis of such calculation.

**Interest Redemption Value:**

The amount of cash proceeds of each applicable Interest that a Holder would actually receive at any time on or before the Final Valuation Date upon such Holder's full redemption of the applicable Interests (assuming timely and properly completed notice of redemption in accordance with the Fund's operating documents where the redemption is effective as of the last Business Day of the month immediately prior to the Final Valuation Date, a "**Redemption Effective Date**"), as determined by the Calculation Agent.

If the Calculation Agent determines that such Holder would not have received, or could not reasonably expect to receive, any proceeds of a redemption on or prior to the 30th calendar

84271721_4

day after the Termination Date hereunder, the Interest Redemption Value shall be zero with respect to the corresponding Final Valuation Date.

The Calculation Agent shall promptly notify the parties, in writing, of the Interest Redemption Value as of any date of determination.

| | |
|---|---|
| **Holder:** | A hypothetical entity which has subscribed for and is registered, in book-entry form, as the owner of the Interests and is entitled to receive distributions and proceeds thereon. |

**Equity Amounts payable:**

| | |
|---|---|
| **Equity Amount Payer:** | Party A. |
| **Equity Amount Receiver:** | Party B |
| **Equity Notional Amount:** | USD 30 Million (USD 30,000,000), subject to adjustment in accordance with the terms of this Confirmation; provided, however, that in no event shall the Equity Notional Amount exceed the Maximum Equity Notional Amount. |
| **Maximum Equity Notional Amount:** | The greatest dollar amount that, when added to the "Equity Notional Amount" under (and as defined in) the Confirmation to the ISDA Master Agreement, dated as of January 30, 2008, as amended and supplemented from time to time, between Party A and Rye Select Broad Market XL Portfolio Limited (the "Offshore Feeder Confirmation"), would not exceed USD 750 Million (USD 750,000,000). |
| **Minimum Equity Notional Amount:** | USD 30 Million (USD 30,000,000). |
| **Equity Notional Reset:** | Applicable. |
| **Type of Return:** | Total Return. |
| **Valuation Time:** | Close of business New York time on the applicable Valuation Date. |

4

84271721_4

| Valuation Date(s): | The date that is no later than two Business Days after the Fund, its agent or representative provides net asset valuation information to the Calculation Agent after the end of each month (commencing after the end of May 2007 but excluding the calendar month in which the Final Valuation Date occurs), but in no event shall such Valuation Date be after the end of the month following the month with respect to which the relevant calculation relates. The foregoing is subject to adjustment in accordance with the Modified Following Business Day Convention. |
|---|---|
| Final Valuation Date: | The date, as determined by the Calculation Agent, that is the earlier of (i) the earliest date following the Termination Date as of which the Interest Redemption Value for all of the Interests held by a Holder can be determined by the Calculation Agent and (ii) 30 calendar days after the Termination Date. |
| Initial Price: | Means (a) in respect of the first Valuation Date, USD 30 Million (USD 30,000,000), (b) in respect of each subsequent Valuation Date, the Interest Market Value determined on the Valuation Date immediately preceding such Valuation Date; and (c) in respect of the Final Valuation Date, the Interest Market Value determined on the last Valuation Date. |
| Final Price: | Means (a) in respect of a Valuation Date, the Interest Market Value; and (b) in respect of the Final Valuation Date, the Interest Redemption Value. |

3. **Floating Amounts payable by Party B:**

| Floating Rate Payer: | Party B. |
|---|---|
| Calculation Period: | A period of one calendar month, each such period beginning on the first calendar day of such month (except that the first Calculation Period shall commence on the Effective Date and end on May 31, 2007). |
| Party B Notional Amount: | The Equity Notional Amount. |
| Maximum Party B Notional Amount: | The greatest dollar amount that, when added to the "Maximum Party B Notional Amount" under (and as defined in) the Offshore Confirmation, would not exceed USD 750 Million (USD 750,000,000). |
| Period End Dates: | The last Business Day of each calendar month and the Final Cash Settlement Payment Date (provided that if the Calculation Agent determines that Party B would not owe |

84271721_4

5

Party A any amounts under this Confirmation as of the Final Valuation Date after the application of any netting or set-offs permitted under the terms of the Agreement, the final Period End Date shall be (and the Floating Amount shall accrue to but excluding) the Final Valuation Date and not the Final Cash Settlement Payment Date).

**Payment Dates:**  The Cash Settlement Payment Dates.

**Floating Rate Option:**  USD-LIBOR-BBA.

**Designated Maturity:**  One (1) month; provided further that if an Additional Collateral Amount or Collateral Return Amount (or any other change permitted hereunder) is effected during a Calculation Period that causes an upward or downward adjustment of the Equity Notional Amount, the Calculation Agent will compute the Floating Rate Option for such amount for the remainder of the Calculation Period based upon USD-LIBOR-BBA (or such other index as may be appropriate for shorter durations) plus the Spread for the remainder of such Calculation Period, using Linear Interpolation or such other factors as it reasonably deems necessary.

**Compounding:**  Applicable.

**Compounding Dates:**  The first calendar day of each month

**Spread:**  (A) With respect to the period before February 1, 2008, plus 90 basis points; and  (B) With respect to the period on or after February 1, 2008, (i) plus 90 basis points with respect to the portion of the Equity Notional Amount that is less than or equal to USD 375 Million (USD 375,000,000) and (ii) Plus 100 basis points with respect to the portion of the Equity Notional Amount that exceeds USD 375 Million (USD 375,000,000).

**Floating Rate Day Count Fraction:**  Actual/360.

**Reset Dates:**  The first day of each Calculation Period, subject to adjustment in accordance with the Modified Following Business Day Convention.

4. **Floating Amounts payable by Party A:**

**Floating Rate Payer:**  Party A.

84271721_4

6

| | |
|---|---|
| **Calculation Period:** | A period of one calendar month, each such period beginning on the first calendar day of such month (except that the first Calculation Period shall commence on the Effective Date and end on May 31, 2007). |
| **Party A Notional Amount:** | The Posted Collateral Amount. |
| **Period End Dates:** | The last Business Day of each calendar month and the Final Cash Settlement Payment Date (provided that if the Calculation Agent determines that Party B would not owe Party A any amounts under this Confirmation as of the Final Valuation Date after the application of any netting or set-offs permitted under the terms of the Agreement, the final Period End Date shall be (and the Floating Amount shall accrue to but excluding) the Final Valuation Date and not the Final Cash Settlement Payment Date). |
| **Payment Dates:** | The Cash Settlement Payment Dates. |
| **Floating Rate Option:** | USD-LIBOR-BBA. |
| **Designated Maturity:** | One (1) month; provided further that if an Additional Collateral Amount or Collateral Return Amount (or any other change permitted hereunder) is effected during a Calculation Period that causes an upward or downward adjustment of the Party A Notional Amount, the Calculation Agent will compute the Floating Rate Option for such amount for the remainder of the Calculation Period based upon USD-LIBOR-BBA (or such other index as may be appropriate for shorter durations) plus the Spread for the remainder of such Calculation Period, using Linear Interpolation or such other factors as it deems necessary. |
| **Compounding:** | Applicable. |
| **Compounding Dates:** | The first calendar day of each month. |
| **Spread:** | (A) With respect to the period before February 1, 2008, plus 90 basis points; and (B) With respect to the period on or after February 1, 2008, (i) plus 90 basis points with respect to the portion of the Posted Collateral Amount that is less than or equal to USD 125 Million (USD 125,000,000) and (ii) Plus 100 basis points with respect to the portion of the Posted Collateral Amount that exceeds USD 125 Million (USD 125,000,000). |
| **Floating Rate Day Count Fraction:** | Actual/360. |

| | |
|---|---|
| Reset Dates: | The first day of each Calculation Period, subject to adjustment in accordance with the Modified Following Business Day Convention. |

## 5. Collateral Provisions:

| | |
|---|---|
| Initial Collateral Amount: | USD 10 Million (USD 10,000,000), payable in cash. |
| Initial Collateral: | As a condition precedent to Party A's obligations under this Transaction, Party B shall, no later than the Effective Date, Transfer to Party A an amount in cash equal to the Initial Collateral Amount (the amount so paid, the "Initial Collateral"). |
| Transfer: | Payment and delivery by wire transfer into such bank account(s) as specified by the recipient of such payment. |
| Additional Collateral: | As set forth in the Ratio Event, Cash Settlement and Party B Adjustment provisions below. |
| Additional Collateral Amount: | As set forth in the Ratio Event, Cash Settlement and Party B Adjustment provisions below. |
| Posted Collateral: | The Initial Collateral and all Additional Collateral that has been received or deemed received by Party A under this Transaction and that (i) has not been returned to Party B as a Collateral Return Amount, (ii) has not been realized against by Party A in accordance with the terms of Certain Rights and Remedies below and (ii) has not been reduced as a Threshold Amount under Section 6 below. |
| Posted Collateral Amount: | The amount of the Posted Collateral. |
| Collateral Return Amounts: | As set forth in Party B Adjustment provision below. |
| Final Collateral Return Amount: | On the Final Cash Settlement Payment Date, Party A shall Transfer to Party B the Posted Collateral Amount. |
| Security Interest: | Party B hereby pledges to Party A, as security for all of Party B's present and future obligations under this Confirmation (the "Obligations"), and grants to Party A a first priority continuing security interest in, lien on and right of Set-off against all Posted Collateral transferred to or received by Party A hereunder. |
| Use of Posted Collateral: | Party A shall, to the maximum extent permissible by applicable law and without notice to Party B, have the right to |

84271721_4

8

sell, pledge, repledge, hypothecate, rehypothecate, hold, assign, invest, use, commingle, lend, or otherwise dispose of, or otherwise use in its business any Posted Collateral it holds, free from any claim or right of any nature whatsoever of Party B (although, for the avoidance of doubt, any such action shall not change the character of such Posted Collateral as Posted Collateral hereunder or change the Posted Collateral Amount hereunder except to the extent that any of such collateral has been realized against by Party A in accordance with the terms of Certain Rights and Remedies below).

**Certain Rights and Remedies:** If, at any time (i) an Event of Default occurs and is continuing in respect of Party B, (ii) a Termination Event occurs and is continuing with Party B as the Affected Party, or (ii) Party B fails to pay in full any of its Obligations that are then due, Party A may exercise one or more of the following rights and remedies:

(a) all rights and remedies available to a secured party under applicable law with respect to Posted Collateral held by Party A; and

(b) the right to Set-off any amounts payable by Party B with respect to any Obligations against any Posted Collateral held by Party A (or any other obligation of Party A to Transfer that Posted Collateral).

**Risk Ratio:** At any time, an amount equal to the quotient (expressed as a percentage) of (a) the excess of (i) the Equity Notional Amount, over (ii) the Posted Collateral Amount, divided by (b) the Interest Market Value of all of the Interests.

**Maximum Risk Ratio:** 66-2/3.

**Maximum Total Ratio:** 70.15.

**Ratio Event:** If at any time, or from time to time, the Risk Ratio exceeds the Maximum Total Ratio (a "Ratio Event"), Party A may deliver a notice to Party B to reduce the Risk Ratio (a "Ratio Event Notice") such that the Risk Ratio does not exceed the Maximum Risk Ratio. If within three Business Days after its receipt of the Ratio Event Notice, Party B fails to (i) make a cash payment to Party A ("Additional Collateral) in an amount (the "Additional Collateral Amount") such that immediately following receipt of such Additional Collateral Amount the Risk Ratio does not exceed the Maximum Risk Ratio or (ii) give a Reduction Notice (pursuant to Section

9

10(C) below) to Party A (it being agreed that Party A's consent will not be required to be obtained with respect to such Party B Adjustment) such that the Risk Ratio is, in the sole determination of the Calculation Agent, reasonably likely not to exceed the Maximum Risk Ratio as of the next regularly scheduled redemption payment date of the Fund after receipt by Party A of such Reduction Notice, then Party A may immediately terminate this Transaction (the date of such termination, referred to as a designated "**Ratio Event Termination Date**"). Solely for purposes of clause (ii) of the immediately preceding sentence and notwithstanding anything to the contrary set forth in Section 10 below, Redemption Price shall mean the amount of cash proceeds that a Holder would actually receive from the Fund as of the next regularly scheduled redemption payment date of the Fund after receipt by Party A of the relevant Reduction Notice upon such Holder's full redemption of the Party B Reduction Interests (assuming timely and properly completed notice of redemption with the redemption effective as of the Reduction Effective Date), as determined by the Calculation Agent.

If at any time, or from time to time, the Risk Ratio exceeds the Maximum Risk Ratio (a "Risk Event"), Party A may deliver a notice to Party B to reduce the Risk Ratio (a "Risk Event Notice") such that the Risk Ratio does not exceed the Maximum Risk Ratio. If the Risk Ratio continues to exceed the Maximum Risk Ratio at all times during the 180 day period following the receipt of such Risk Event Notice and Party B fails to (i) make one or more cash payments to Party A of Additional Collateral in an aggregate Additional Collateral Amount or (ii) give a Reduction Notice (pursuant to Section 10(C) below) to Party A (it being agreed that Party A's consent will not be required to be obtained with respect to such to such Party B Adjustment) such that the Risk Ratio does not exceed the Maximum Risk Ratio within 180 days after receipt of the Risk Event Notice, then Party A may immediately terminate this Transaction (and the date of such termination shall also be designated a Ratio Event Termination Date).

'. **Settlement Terms:**
**Cash Settlement:**

Applicable; provided, however, that, notwithstanding anything to the contrary set forth herein, (i) if Party A is required to pay any Equity Amount (as defined in the Equity Definitions) to Party B on any Valuation Date, then unless

10

otherwise directed by Party B in a writing delivered to Party A not later than two (2) Business Days prior to the applicable Valuation Date (each, a **"Payment Direction"**), such Equity Amount, less the portion thereof equal to the excess of the Floating Amount payable on such Valuation Date by Party B over the Floating Amount payable on such Valuation Date by Party A (such Equity Amount as so reduced, the **Equity Balance Amount"**) shall not be paid to Party B on such Valuation Date but shall instead be deemed to be Additional Collateral with an Additional Collateral Amount equal to the Equity Balance Amount and (ii) in no event shall Party B be entitled to direct Party A to pay any Equity Balance Amount to Party B on any Valuation Date pursuant to a Payment Direction except to the extent that any such payment would not result in the Risk Ratio exceeding the Maximum Risk Ratio following the making of such payment. For the avoidance of doubt, in no event shall anything contained in the immediately preceding sentence require the consent of Party A.

| | |
|---|---|
| **Settlement Currency:** | USD. |
| **Cash Settlement Payment Date:** | Each Valuation Date and no later than three (3) Currency Business Days following the Final Valuation Date (such final Cash Settlement Payment Date, the **"Final Cash Settlement Payment Date"**). |
| **Threshold Amounts:** | Notwithstanding anything to the contrary set forth herein, if on any Valuation Date Party B would owe Party A any settlement payment hereunder after the application of any netting or set-offs permitted under the terms of the Agreement, then upon the written election of Party B given no later than such Valuation Date and to the extent that the Posted Collateral Amount is at least equal to the amount of such settlement payment, such amount shall not be due and payable by Party B to Party A hereunder on such Valuation Date but such amount shall instead be deemed to be a **"Threshold Amount"** from the date of such Valuation Date and as of such Valuation Date, the amount of the Posted Collateral shall be deemed to have been reduced by the Threshold Amount on a dollar-for-dollar basis. |
| **Deferred Proceeds:** | In the event that a Holder that has fully redeemed the applicable Interests effective as of the Redemption Effective Date would be deemed to actually receive, at any time and from time to time, during the period commencing on the day following the Final Valuation Date and ending on the 16- |

month anniversary thereof any additional redemption payment that has not been included in the Interest Redemption Value hereunder, then no later than the third Business Day following the date of such deemed payment by the Fund, Party A will pay to Party B an amount equal to such payment, less any amounts then owing by Party B to Party A hereunder.

**Survival:**    All payment and other obligations under this Confirmation that are specified hereunder to be payable following the Termination Date and which are outstanding after the Termination Date shall survive the Termination Date.

**7.  Adjustments:**

**Method of Adjustment:**    Calculation Agent Adjustment.

**8.  Extraordinary Events:**

**Consequences of Merger Events:**

(a) Share-for-Share:    Alternative Obligation.
(b) Share-for-Other:    Cancellation and Payment.
(c) Share-for-Combined:    Alternative Obligation.

**Nationalization or Insolvency:**    Negotiated Close-out.

**Additional Disruption Events:**

(a) Change in Law:    Applicable.
(b) Insolvency Filing:    Applicable.
(c) Hedging Disruption:    Applicable.
(d) Increased Cost of Hedging:    Applicable.

With respect to items (c) and (d), Party A shall be the "Hedging Party".

**9.  Miscellaneous:**

**Determining Party:**    Party A shall be the Determining Party for all purposes hereunder, and in such capacity, shall make all determinations in good faith and in a commercially reasonable manner.

**Non-Reliance:**    Applicable.

**Agreements and Acknowledgements Regarding Hedging Activities:**    Applicable.

**Additional Acknowledgements:**    Applicable.

12

84271721_4

**General Partner**

Tremont Partners, Inc., the current general partner of the Fund, or any successor General Partner that is acceptable to Party A and Party B.

**NAV:**

Means net asset value of the Interests determined in accordance with the offering documents of the Fund.

**Market Disruption Event:**

In respect of the Interests the parties agree that the following will be additional Market Disruption Events:

(a) the failure by the Fund for any reason to calculate and notify investors in the Fund of the NAV of such Interests no later than twenty (20) Business Days after month-end for any month-end day that would, but for such failure, be a Valuation Date; and

(b) the postponement or suspension for any reason (other than a permitted ordinary course of business holdback of a percentage of the redemption proceeds as permitted by the Fund's operating documents) in the payment of redemption proceeds relating to the Interests or in the acceptance of subscriptions for the Interests.

Once it obtains actual knowledge that a Market Disruption Event has occurred, the Calculation Agent shall as soon as reasonably practicable under the circumstances notify the parties or the other party, as the case may be, of the existence of a Market Disruption Event on any day that but for the occurrence or existence of a Market Disruption Event would have been a Valuation Date.

**Consequences of Disrupted Days:**

Section 6.6 of the Equity Definitions is replaced with the following: If any Valuation Date is a Disrupted Day, then such Valuation Date shall be the next succeeding day that is not a Disrupted Day, unless no such succeeding day that is not a Disrupted Day shall have occurred prior to the earlier of (i) the Termination Date and (ii) the next Scheduled Valuation Date. In that case, (x) the earlier of the Termination Date and the next Scheduled Valuation Date shall be deemed to be the Valuation Date, notwithstanding the fact that such day is a Disrupted Day, and (y) the Calculation Agent shall determine a good faith estimate of the value for the Shares, which may be based (at the discretion of the Calculation Agent) upon information provided to the Calculation Agent by the Fund, as of the Valuation Time on that deemed Valuation Date.

13

84271721_4

**Fund Events:**    The following shall each constitute a "**Fund Event**":

(a) the currency denomination of the Interests is changed and the NAV is no longer calculated in the currency of calculation as of the Trade Date;

(b) the Fund fails to calculate the NAV for 2 (two) consecutive Valuation Dates;

(c) the activities of General Partner are placed under review by its regulators for reasons of wrongdoing or breach of any rule or regulation or other similar reason and such review is, in Party A's sole determination, likely to have a material adverse effect on Party A;

(d) the winding-up, dissolution, liquidation or other cessation of trading of the (i) the Fund or (ii) unless replaced with a successor reasonably acceptable to the Calculation Agent, the winding-up, dissolution or liquidation of the General Partner;

(e) a change of the investment objectives, investment policies, investment strategy, investment process or investment guidelines (however described) of the Fund from those prevailing on the Trade Date, in each case, which change is reasonably likely to have a material adverse effect on Party A, if such change was effected without the prior written consent of Party A, which consent shall not be unreasonably withheld or delayed;

(f) a change of the nature or any feature of the Fund from those prevailing on the Trade Date which change is reasonably likely to have a material adverse effect on Party A, if such change was effected without the prior written consent of Party A, which consent shall not be unreasonably withheld or delayed;

(g) there is any change in the regulatory, legal or tax treatment applicable with respect to the Interests which would reasonably be expected to have a materially adverse impact for the Holder;

(h) the General Partner resigns or is replaced as General Partner of the Fund and a replacement reasonably satisfactory to Party A is not appointed; the General Partner delegates the investment and trading activities of the Fund to another person or entity that is not acceptable

14

84271721_4

to Party A or the General Partner merges, amalgamates or consolidates with or is taken over by another entity;

(i) there is an amendment, variation or modification to the constitutional documents applicable to the Interests which in the reasonable determination of the Calculation Agent would have a material adverse effect on Party A;

(j) Party A is unable, after using commercially reasonable efforts, to (A) acquire, establish, re-establish, substitute, maintain, unwind or dispose of any Hedge Positions or asset(s) it deems necessary to hedge the price risk of entering into and performing its obligations with respect to this Transaction, or (B) realize, recover or remit the proceeds of any such transaction(s) or asset(s), including, without limitation, any restrictions or increase in charges or fees imposed by the Fund on (1) Party A's ability to redeem Interests or (2) Party A's ability to make new or additional investments in Interests and any mandatory redemption of the Interests imposed by the Fund (in each case other than any restriction in existence on the Trade Date);

(k) failure by Party B or the Fund to deliver (or cause to be delivered) to Party A any reports or other information within the time periods specified therefor in this Confirmation or in any agreement between Party A and the Fund and/or the General Partner which is not cured within one (1) Business Day after written notice thereof is given to Party B;

(l) the Fund (i) incurs any indebtedness for borrowed money (which for the avoidance of doubt shall not include amounts owed by the Fund to its service providers for services rendered in the ordinary course of business) or (ii) pledges or otherwise grants a lien to any third party on any of the Fund's assets, and in the case of either (i) or (ii), such action was taken without the prior written approval of Party A, which approval shall not be unreasonably withheld or delayed or (iii) grants to any third party any liquidity terms with respect to interests in the Fund that are more favorable than those granted to Party A with respect to any interests in the Fund that may be owned by Party A unless such terms are offered to Party A in respect of any investment it has in the Fund within ten (10) Business Days of such grant;

15

84271721_4

(m) the Fund fails to have at least 90% of its assets invested directly in a brokerage account managed by the account manager over such account in which at least 90% of the Fund's assets are invested as of the Trade Date (the "Account Manager") (or any successor entity of the Account Manager in which the chief executive officer of the Account Manager as of the Trade Date performs a similar function); or

(n) any other event occurs in respect of the Fund or the Interests which, in the reasonable opinion of the Calculation Agent, is reasonably likely to have a material adverse impact on the Interests or the General Partner.

The parties agree that if a Fund Event occurs then the Calculation Agent may determine that the Transaction will be terminated with Party B as the sole Affected Party, in which case, the Calculation Agent shall designate the Final Valuation Date and all payments with respect to the Transaction shall be made in accordance with the terms of this Confirmation. For the avoidance of doubt and notwithstanding anything to the contrary herein, upon such designation of an early termination date due to the occurrence of a Fund Event, (i) Floating Amounts payable by Party A and Party B shall continue to accrue as described under Sections 3 and 4 above, respectively, and (ii) payments to be made by the parties following the designation of a Fund Event shall be made on the Final Cash Settlement Payment Date, as applicable, and/or as set forth under "Deferred Proceeds" above.

**10. Party B Adjustment:**

Party B may effectuate from time to time one or more of the Party B Adjustments set forth in subsections (A) through (C) below, provided that in the case of the Party B Adjustment set forth in subsection (B) and (C) below, (i) it has provided Party A with at least two (2) Business Days' prior written notice thereof, and (ii) Party A has consented in writing to such Party B Adjustment, which consent shall not be unreasonably withheld or delayed, except that no consent of Party A shall be required with respect to a Party B Adjustment set forth in subsection (C) required to be made to remedy a Ratio Event or Risk Event.

(A)   *Payment of Additional Collateral Amount:* Party B may upon written notice given to Party A pay cash to Party A as Additional Collateral in an Additional Collateral Amount

16

equal to the US dollar value of such cash. Upon receipt of such cash, the Posted Collateral Amount shall be increased by such Additional Collateral Amount and no change shall made to the Equity Notional Amount as a result thereof.

(B)    *Increase Number of Interests by Paying Additional Collateral Amount or by Increasing Equity Notional Amount*: In connection with the cash payment (or any deemed cash payment resulting from the application of an Equity Balance Amount) by Party B to Party A of an Additional Collateral Amount of Additional Collateral and/or an upward adjustment in the Equity Notional Amount, Party B may instruct Party A to increase the number of Interests (and capital account value thereof) as specified by Party B, and Party A shall increase the number of Interests (and capital account value thereof) as specified by Party B, in each case by the amount of Interests with a capital account value in the Fund that a hypothetical investor investing such Additional Collateral Amount on the date of such payment and/or specified Equity Notional Amount increase on the date of such Equity Notional Amount adjustment would receive (taking into consideration any fees, expenses, valuations by the Fund and other factors affecting such hypothetical investor), provided that any such adjustment shall not be permitted if (and to the extent that) it would result in (w) the Risk Ratio exceeding the Maximum Risk Ratio, (x) the Equity Notional Amount exceeding the Maximum Equity Notional Amount, (y) the Party B Notional Amount exceeding the Maximum B Notional Amount or (z) the violation of any other provision set forth in this Confirmation. Upon the effectiveness of such Party B Adjustment, the number of Interests and Equity Notional Amount shall be accordingly increased, the Posted Collateral Amount shall be increased by such Additional Collateral Amount and the Calculation Agent shall adjust Schedule 1 hereto and any other terms of this Transaction as it deems appropriate to account for such increase.

(C)    *Decrease Number and/or Value of Interests against Cash*: Party B may instruct Party A to reduce the Interests (and capital account value thereof shown on Schedule 1 hereto) by a portion thereof (the "**Party B Reduction Interests**") specified in such notice (the "**Reduction Notice**") and Party A shall so reduce the Interests (and capital account value thereof) and make such payment to Party B as specified in the next succeeding sentence, provided that any such adjustments shall not be permitted if (and to the extent that) it would result in (x) the Risk Ratio exceeding the Maximum

17

Risk Ratio (y) the Equity Notional Amount to be less than the
Minimum Equity Notional Amount or (z) the material
violation of any other provision set forth in this Confirmation.
Such Party B Adjustment shall be effective on the Reduction
Valuation Date (as defined below) as determined by the
Calculation Agent. Upon the effectiveness of such Party B
Adjustment, Party A shall pay to Party B an amount (the
**"Collateral Return Amount"**) equal to the Redemption Price
on the first Business Day following the date on which a
hypothetical investor (assuming timely and properly
completed notice of redemption in accordance with the Fund's
operating documents with the redemption effective as of the
last Business Day of the month immediately prior to the
Reduction Valuation Date, a **"Reduction Effective Date"**)
would receive the Redemption Price therefor provided that in
no event shall such date be later than 30 calendar days after
the date the Reduction Notice is received by Party A (the
**"Reduction Valuation Date"**).   In no event shall the
Collateral Return Amount exceed the Posted Collateral
Amount. Upon the effectiveness of such Party B Adjustment,
the Interests and Equity Notional Amount shall be accordingly
decreased and the Calculation Agent shall adjust Schedule 1
hereto and any other terms of this Transaction as it deems
appropriate to account for such decrease. In addition, upon
the effectiveness of such Party B Adjustment, Party A will
pay to Party B the Decrease Amount if it is a positive number
and Party B will pay the absolute value of the Decrease
Amount if it is a negative number.

**Redemption Price:**

The amount of cash proceeds that a Holder would actually
receive from the Fund within 30 days after receipt by Party A
of the relevant Reduction Notice upon such Holder's full
redemption of the Party B Reduction Interests (assuming
timely notice of redemption with the redemption effective as
of the Reduction Effective Date), as determined by the
Calculation Agent.

**Decrease Amount:**

The amount in USD, determined by the Calculation Agent,
equal to the difference of (i) the Redemption Price minus (ii)
the Initial Price of the Party B Reduction Interests as of the
most recent Valuation Date.

In the event that a Holder that has fully redeemed the
applicable Party B Reduction Interests effective as of the
Reduction Effective Date would be deemed to actually
receive, at any time and from time to time, during the period
commencing on the day following the Reduction Valuation

18

84271721_4

Date and ending on the 16- month anniversary thereof, any additional redemption payment that has not been included in the Redemption Price hereunder, then, no later than the third Business Day following the date of such deemed payment by the Fund, Party A will pay to Party B an amount equal to such payment, less any amounts then owing by Party B to Party A hereunder.

**11. Party B Optional Early Termination:** Party B may, at its option, terminate this Transaction in whole by providing at least 60 days' prior written notice of termination to Party A (the date designated in such notice as the effective date of termination of this Transaction, the **"Party B Optional Termination Date"**). On the date of any Party B Optional Early Termination, Party B shall pay a fee (an **"Early Termination Fee"**) to Party A equal to (A) the Termination Spread (as defined below) multiplied by (B) the greater of (i) the excess of the Equity Notional Amount over the Posted Collateral Amount or (ii) the excess of the Minimum Equity Notional Amount over the Posted Collateral Amount (such greater amount of (i) or (ii), the **"Termination Sum"**), and in either case of (i) or (ii), multiplied by (C) a fraction, the numerator of which is the number of calendar days remaining from the Party B Optional Early Termination Date until October 31, 2008 and the denominator of which is 365, provided that no such Early Termination Fee shall be payable if (i) the Party B Optional Early Termination Date is on or after October 31, 2008, (ii) the Party B Optional Early Termination Date occurs following a Rating Downgrade Event (as defined in the Agreement), (iii) the Party B Optional Early Termination Date occurs following the unreasonable withholding of consent by Party A to a Party B Adjustment set forth in Section 10(B) or (C) that was requested in writing by Party B or (iv) Party A discloses the existence of this Transaction to the Account Manager. As used herein, **"Termination Spread"** means (i) 90 basis points with respect to the portion of the Termination Sum that is less than or equal to USD 250 Million (USD 250,000,000) and (ii) 100 basis points with respect to the portion of the Termination Sum that exceeds USD 250 Million (USD 250,000,000).

**12. Hedging Activity:** Party B understands and acknowledges that Party A may hedge its obligations hereunder by entering into a Hedge Position. Neither Party makes any representations or warranties regarding such hedging activity. Further, Party B has no right, claim or entitlement, direct or indirect, in or to any Hedge Position or any security, asset or other property related thereto. Party B acknowledges that Party A (or an

affiliate of Party A) may (but is not required to) hedge the risk of Party A associated with this Transaction by investing in the Fund and Party A makes no representations or warranties regarding the level of such investment or the extent of hedging activities (if any) with respect to the Fund. Notwithstanding any other term or provisions hereof, where Party A (or an affiliate of Party A) hedges any part of the risks of Party A associated with this Transaction by investing in the Fund, the amount, form and timing of payments required to be made by Party A will be adjusted by the Calculation Agent in its reasonable discretion to reflect the amount, form and timing of payments received by Party A or its affiliate, as the case may be, from investing in the Fund. If and to the extent any such investment in the Fund is made by Party A, or any affiliate thereof, such investment will be on its own behalf only, Party B will have no interest or right, directly or indirectly, in respect of such investment (whether by way of third party beneficiary, security interest or otherwise) and Party B acknowledges that this Transaction will not create either a direct or indirect obligation of the Fund owing to Party B.

**13. Claw-back Obligations:**

In the event that a Holder of Interests would be required to return all or any portion of any payment received with respect to any investment in the Fund (whether pursuant to the terms of the investment in the Fund, any insolvency law, regulation, court order or otherwise) (any such repayment obligation, a **"Claw-back Obligation"**), then, notwithstanding anything herein to the contrary, Party B will, upon demand by Party A, pay to Party A an amount in cash equal to such Claw-back Obligation. This provision shall survive the termination of this Transaction.

**14. Dividends/Distributions:**

On each Cash Settlement Payment Date, Party A shall pay Party B in cash an amount equal to all cash dividends and/or cash distributions that a Holder of the Interests would have actually received from the Fund (other than as a result of any redemption or withdrawal of the Interests) at any time during the period from and including the immediately preceding Cash Settlement Payment Date to, but excluding, such Cash Settlement Payment Date.

**15. Amendment:**

On or promptly after each date that Schedule 1 hereto is adjusted in accordance with Section 10, the Calculation Agent shall provide to Party B with an amended Schedule which reflects such adjustments, which amended Schedule shall not be required to be executed by Party B for such amended Schedule to be effective.

20

84271721_4

**16. Account Details:**

(a) Account for payments to Party A:

Bank        Northern Trust NY (CNOR US 33)
A/c         11125220230
A/c Name    Fortis Prime Fund Solutions Bank (Ireland)
            Ltd.

(b) Account for payments to Party B:

The Bank of New York Mellon
One Wall Street
New York, NY 10286
ABA Number: 021-000-018
Account Name: Rye Select Broad Market XL Fund, L.P.
Account Number: 890-0630-523

**17. Office:**

(a) The Office of Party A for the Transaction is:
Fortis Prime Fund Solutions Bank (Ireland) Limited, Plaza 2,
Custom House Plaza, IFSC, Dublin 1, Ireland.

(b) The Office of Party B for the Transaction is:
Rye Select Broad Market XL Fund, LP
c/o Tremont Partners, Inc.
555 Theodore Fremd Avenue, Suite C-300
Corporate Center at Rye
Rye, New York 10580

**18. Additional Representations:**

(a)    Each Party hereby represents to the other Party (which representations shall be deemed repeated on each date on which the Transaction is amended or adjusted) that:

(i) It has reached its own conclusions about the Transaction, and any legal, regulatory, tax, accounting or economic consequences arising from the Transaction, and has concluded that the Transaction is suitable in light of its own investment objectives, financial capabilities and expertise.

(ii) It has not relied and is not relying on any communication (written or oral) of the other Party as investment advice or as a recommendation to enter into this Transaction; it being understood that information and

21

84271721_4

explanations related to the terms and provisions of a Transaction shall not be considered investment advice or a recommendation to enter into that Transaction. No communication (written or oral) received from the other Party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

(iii)It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of this Transaction.

(iv)It acknowledges that the other Party is acting in a principal capacity for its own account and is not acting as a fiduciary for or an adviser to it in respect of this Transaction.

(v) It is entering into this Agreement, including each Transaction, as principal and not as agent of any person or entity.

(vi)It is an "eligible contract participant" (as such term is defined in Section 1(a)(12) of the U.S. Commodity Exchange Act, as amended).

(b)    Party B hereby represents to Party A (which representations shall be deemed repeated on each date on which the Transaction is amended or adjusted that):

(i) It is entering into the Transaction solely for its own account as a principal for investment and not with a view to resale or distribution. It understands that the Transaction has not been registered under the Securities Act of 1933, as amended (the "Act"), or any other state securities law, and will not be so registered. It shall not permit any other person to have any beneficial interest in its interest in the Transaction, and shall not assign, transfer, convey or encumber all or any portion of its interest in the Transaction, without the consent of Party A. It agrees that its interest in the Transaction shall not be sold, transferred or otherwise disposed of except

22

pursuant to an exemption from registration under the Act.

(ii) It has received and reviewed the subscription, organizational, offering and all other relevant documents with respect to the Fund. It meets all eligibility and suitability standards imposed by the Fund and applicable law with respect to a direct investment in the Fund, can make (and hereby makes) all of the representations and warranties required to be made by investors of Interests, and is capable of making a direct investment in the Fund. It understands the nature of making an investment in the Fund and has concluded that such an investment would be suitable for it in light of its own investment objectives, financial capabilities and expertise. It was not organized for the specific purpose of entering into the Transaction and is not entering into the Transaction for the purpose or as a means of gaining economic exposure to a fund in which it would not be able to invest directly for any reason.

(c)   Party B hereby represents to Party A (which representations will be deemed to be repeated as of each date on which Party B Transfers Initial Collateral or Additional Collateral) that:

(i) it has the power to grant a security interest in and lien on the Initial Collateral and any Additional Collateral it Transfers to Party A and has taken all necessary actions to authorize the granting of that security interest and lien;

(ii) it is the sole owner of or otherwise has the right to Transfer the Initial Collateral and all Additional Collateral it Transfers to Party A hereunder, free and clear of any security interest, lien, encumbrance or other restrictions other than the security interest and lien granted to Party A under this Confirmation;

(iii)upon any Transfer of the Initial Collateral or any Additional Collateral to Party A under the terms hereof, Party A will have a valid and perfected first priority security interest therein; and

23

84271721_4

(iv) the performance by it of its obligations hereunder will not result in the creation of any security interest, lien or other encumbrance on any Posted Collateral other than the security interest and lien granted to Party A under this Confirmation.

**19. <u>Governing Law</u>:**

This Confirmation shall be governed by and construed in accordance with the laws of the State of New York, U.S.A. (without reference to choice of law doctrine).

**<u>Non-Recourse</u>:**

Notwithstanding anything contained in this Confirmation or any schedule, addendum, or other document issued or delivered in connection with this Transaction, any amounts owed or liabilities incurred by Party B, in respect of this Transaction, may be satisfied solely from the assets of Party B. Without limiting the generality of the forgoing, in no event shall Party A or any of its affiliates have recourse, whether by set-off or otherwise, with respect to any such amounts owed or liabilities incurred, to or against (a) any assets of any person or entity (including without limitation, any person or entity whose account is under the management of Tremont Partners, Inc.) other than Party B, (b) any assets of any affiliate of Party B, or (c) any assets of Tremont Partners, Inc. or any affiliates of Tremont Partners, Inc., except to the extent of damages caused by fraud, gross negligence or wilful misconduct of Party B or Tremont Partners, Inc., as determined by a final non-appealable court of competent jurisdiction. For the avoidance of doubt, nothing in this paragraph shall be construed to expand any obligation or liability that Party B, Tremont Partners, Inc. or their respective affiliates or any other person or entity would otherwise have to Party A.

[signature page follows].

84271721_4

24

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us.

FORTIS PRIME FUND SOLUTIONS BANK (IRELAND) LIMITED

By: _____
     Name:
     Title:

By: _____
     Name:
     Title:

ACCEPTED AND CONFIRMED AS
OF THE DATE FIRST ABOVE
WRITTEN:

Rye Select Broad Market XL Fund, LP
By: Tremont Partners, Inc. its General
Partner

By:_____
     Name:
     Title:

14271721_4

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us.

FORTIS PRIME FUND SOLUTIONS BANK (IRELAND) LIMITED

By:_____
      Name:
      Title:

By:_____
      Name:
      Title:

ACCEPTED AND CONFIRMED AS
OF THE DATE FIRST ABOVE
WRITTEN:

Rye Select Broad Market XL Fund, LP
By: Tremont Partners, Inc. its General
Partner

By:_____
      Name:  R. Darren Johnston
      Title:  Authorized Signatory

84271721_4

## SCHEDULE 1

### Interests

<u>Date</u>

<u>Interest Market Value</u>

May 2, 2007

USD 30 Million (USD 30,000,000)

84271721_4