**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (SMB) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA LIQUIDATION |
| Defendant. | (Substantively Consolidated) |
| In re: BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-04658 (SMB) |
| v. | |
| CAROL NELSON, | |
| Defendant. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-04377 (SMB) |
| v. | |
| CAROL NELSON, Individually and as Joint Tenant; and STANLEY NELSON, Individually and as Joint Tenant, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION *IN LIMINE* NUMBER 1 TO ADMIT THE PLEA ALLOCUTIONS OF**
**BERNARD L. MADOFF AND BLMIS EMPLOYEES**

**TABLE OF CONTENTS**

<u>**Page**</u>

STATEMENT OF FACTS ...................................................................................................1

    Allocution of Bernard L. Madoff ...............................................................................1

    Allocution of Frank DiPascali, Jr. .............................................................................3

    Allocution of David Kugel .........................................................................................4

    Allocution of Irwin Lipkin .........................................................................................5

ARGUMENT ....................................................................................................................6

CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agric. Research & Tech. Grp.*,
  916 F.2d 528 (9th Cir. 1990) ....................................................................6

*Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou
  Grp., LLC)*,
  396 B.R. 810 (Bankr. S.D.N.Y. 2008), *aff'd in part and rev'd in part on other
  grounds*, 439 B.R. 284 (S.D.N.Y. 2010) ....................................................8

*Carney v. Lopez*,
  933 F. Supp. 2d 365 (D. Conn. 2013) ........................................................8

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
  2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) .......................................8

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995) .......................................................................8

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*,
  793 F. Supp. 2d 825 (N.D. Tex. 2011) .......................................................9

*Johnson v. Neilson (In re Slatkin)*,
  525 F.3d 805 (9th Cir. 2008) ......................................................................8

*McHale v. Boulder Cap. LLC (In re The 1031 Tax Grp., LLC)*,
  439 B.R. 47 (S.D.N.Y. 2010) .....................................................................8

*Moran v. Goldfarb*,
  No. 09 Civ. 7667 (RJS), 2012 WL 2930210 (S.D.N.Y. Jul. 16, 2012) ......8

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec., LLC)*,
  445 B.R. 206 (Bankr. S.D.N.Y. 2011) .......................................................7

*Picard v. Cohen*,
  Adv Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25,
  2016) ...........................................................................................................6

*Picard v. Cohmad Sec. Corp.*,
  454 B.R. 317 (Bankr. S.D.N.Y. 2011) .......................................................6

*Picard v. Greiff*,
  476 B.R. 715 (S.D.N.Y. 2012) ...................................................................6

*Picard v. Katz*,
   462 B.R. 447 (S.D.N.Y. 2011) ................................................................................7

*Scholes v. Lehmann*,
   56 F.3d 750 (7th Cir. 1995) ...................................................................................8

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard Madoff)*,
   531 B.R. 439 (Bankr. S.D.N.Y. 2015) ...................................................................6

*Stenger v. World Harvest Church, Inc.*,
   No. Civ.A. 1:04CV00151-RW, 2006 WL 870310 (N.D. Ga. March 31, 2006) .......8

*United States v. Winley*,
   638 F.2d 560 (2d Cir. 1981) ...................................................................................9

**Statutes**

11 U.S.C. § 548(a)(1)(A) ...............................................................................................6

15 U.S.C. § 78aaa *et seq.* ...............................................................................................1

**Other Authorities**

Fed. R. Bankr. P. 9017 ...................................................................................................1

Fed. R. Crim. P. 11 .........................................................................................................9

Fed. R. Evid. 201 ....................................................................................................8, 9, 10

Fed. R. Evid. 803(22) ..............................................................................................8, 9, 10

Fed. R. Evid. 807 .....................................................................................................8, 9, 10

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of
Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection
Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, and the chapter 7 estate of Bernard L. Madoff ("Madoff"),
respectfully submits this memorandum of law and the Declaration of Dean D. Hunt ("Hunt Decl.")
in support of the Trustee's motion *in limine* number 1 for entry of an order under the Federal Rules
of Evidence, made applicable here by Federal Rule of Bankruptcy Procedure 9017, to admit into
evidence at trial the plea allocutions of Madoff and BLMIS employees Frank DiPascali, Jr.
("DiPascali"), David Kugel ("Kugel"), and Irwin Lipkin ("Lipkin").

## STATEMENT OF FACTS

In the forthcoming trial, the Trustee seeks to avoid and recover transfers of fictitious profits
made by BLMIS to Defendants in the total amount of $3,065,077.

Defendants contest that BLMIS was a Ponzi scheme. As part of his proofs to be presented
at trial, the Trustee intends to introduce and seek admission of the plea allocutions of Madoff,
DiPascali, Kugel, and Lipkin, all of which confirm the extent, scope, and nature of the Ponzi
scheme at BLMIS.

### *Allocution of Bernard L. Madoff*

On December 11, 2008, Madoff was arrested for violating numerous federal criminal
securities statutes. On March 12, 2009, Madoff pleaded guilty to eleven criminal counts:
(i) securities fraud; (ii) investment adviser fraud; (iii) mail fraud; (iv) wire fraud; (v) international
money laundering to promote fraud in the sale of securities; (vi) international money laundering
to conceal the proceeds of fraud in the sale of securities; (vii) money laundering; (viii) making

false statements; (ix) perjury; (x) making a false filing with the SEC; and (xi) theft from an employee benefit plan.[1]

At his plea allocution, Madoff admitted to operating a Ponzi scheme through the firm's investment advisory business beginning in at least the early 1990s. While representing to his investors that he would invest their funds in shares of common stock and options, Madoff "promised [investors he] would opportunistically time those purchases [to] be out of the market intermittently, investing client funds during th[o]se periods in United States Government-issued securities, such as United States Treasury bills" as part of a purported "split-strike conversion" strategy.[2] Madoff admitted:

> Up until I was arrested on December 11, 2008, I never invested [customer] funds in the securities, as I had promised. Instead, those funds were deposited in [the 703 Account] at Chase Manhattan Bank. When clients wished to receive the profits they believed they had earned with me or to redeem their principal, I used the money in the [703 Account] that belonged to them or other clients to pay the requested funds. . . I never made those investments I promised clients, who believed they were invested with me in the split strike conversion strategy.[3]

The purported profits were reflected on false account statements that Madoff sent to his investors.[4]

At the time he made the foregoing admissions in his allocution, Madoff faced a total maximum incarceration of 150 years in prison.[5] He was subsequently sentenced to the maximum term and is currently incarcerated at the Federal Correctional Complex in Butner, North Carolina.[6]

---

[1] Hunt Decl., Ex. 1, Plea Allocution of Bernard L. Madoff at 7–8, *United States v. Madoff*, No. 09-cr-213 (DC) (S.D.N.Y. Mar. 12, 2009) ("Madoff Allocution"), ECF Nos. 50, 63.

[2] Madoff Allocution at 24.

[3] *Id*.

[4] *Id.*

[5] *Id.* at 18.

[6] See Judgment, *United States v. Madoff*, No. 09-cr-213 (DC) (S.D.N.Y. June 29, 2009), ECF No. 100.

### *Allocution of Frank DiPascali, Jr.*

Frank DiPascali, Jr. joined BLMIS after graduating high school in 1975. After holding various positions throughout the 1980s, DiPascali became a supervisor of the investment advisory business. On August 11, 2009, DiPascali admitted to knowingly participating in the Ponzi scheme, pleading guilty to ten criminal counts: (i) conspiracy to commit securities fraud, investment advisory fraud, mail fraud, wire fraud, money laundering, conspiracy to falsify books and records of a broker-dealer, and conspiracy to falsify books and records of an investment fund; (ii) securities fraud; (iii) investment adviser fraud; (iv) falsifying books and records of a broker-dealer; (v) falsifying books and records of an investment adviser; (vi) mail fraud; (vii) wire fraud; (viii) money laundering; (ix) perjury; and (x) income tax evasion.[7]

At his plea allocution, DiPascali explained that investors were told Madoff was purchasing a basket of stocks, "[h]edging those investments by buying and selling option contracts, getting in and out of the market at opportune items and investing in government securities at other times."[8] However, DiPascali admitted:

> From at least the early 1990's through December of 2008, there was one simple fact that Bernie Madoff knew, that I knew, and that other people knew but that we never told the clients nor did we tell the regulators like the SEC. No purchases of [sic] sales of securities were actually taking place in their accounts. It was all fake. It was fictitious.[9]

---

[7] Hunt Decl., Ex. 2, Plea Allocution of Frank DiPascali at 19–20, *United States v. DiPascali*, No. 09-cr-764 (RJS) (S.D.N.Y. Aug. 11, 2009) ("DiPascali Allocution"), ECF Nos. 11, 12.

[8] *Id.* at 46.

[9] *Id.*

3

DiPascali also admitted to using historical stock prices to falsify the trading activity reflected on the customer statements and using phony trades for certain customers in order to obtain the targeted rate of return that Madoff had directed for them.[10]  As DiPascali explained:

> On a regular basis, I used hindsight to file historical prices on stocks then I used those prices to post purchase of sales [sic] to customer accounts as if they had been executed in real-time.  On a regular basis I added fictitious trade data to account statements of certain clients to reflect the specific rate of return that Bernie Madoff had directed for that client.[11]

DiPascali faced a total maximum incarceration of 125 years in prison.[12]  He died in 2015 while awaiting sentencing.[13]

### Allocution of David Kugel

David Kugel was a trader for BLMIS's proprietary trading business unit.  Kugel pleaded guilty to five criminal counts: (i) conspiracy to commit securities fraud, conspiracy to falsify books and records of a broker dealer, conspiracy to falsify books and records of an investment advisor, and conspiracy to commit bank fraud; (ii) securities fraud; (iii) falsifying books and records of a broker dealer; (iv) falsifying books and records of an investment advisor; and (v) bank fraud.[14]

At his allocution, Kugel admitted to creating fake, backdated trades by providing historical trade information to other BLMIS employees:

> I provided historical trade information to other BLMIS employees, which was used to create false, profitable trades in the Investment Advisory clients' accounts at BLMIS.  Specifically, beginning the

---

[10] *Id.* at 47.

[11] *Id.*

[12] *Id.* at 32.

[13] *See* Letter dated May 10, 2015, *United States v. DiPascali*, No. 09-cr-764 (RJS) (S.D.N.Y. May 10, 2015), ECF No. 108.

[14] Hunt Decl., Ex. 3, Plea Allocution of David Kugel at 14–16, *United States v. Kugel*, No. 10-cr-228 (LTS) (S.D.N.Y. Nov. 21, 2011) ("Kugel Allocution"), ECF No. 188.

early '70s, until the collapse of BLMIS in December 2008, I helped
create fake, backdated trades.[15]

He acknowledged that he obtained historical trading data from information available to him

through the proprietary trading business at BLMIS and used fictitious trades to create the

appearance of profitable trading in the investment advisory customer accounts.[16]

At the time of his allocution, Kugel faced a total maximum incarceration of 85 years in

prison.[17]  Kugel was sentenced to 10 months of home detention and 200 hours of community

service.[18]

### *Allocution of Irwin Lipkin*

Irwin Lipkin was controller of BLMIS and was the first individual hired by Madoff in

1964.  On November 8, 2012, Lipkin pleaded guilty to two criminal counts: (i) conspiracy to

commit securities fraud, make false filings with the SEC, falsify books and records of a broker

dealer, falsify books and records of an investment advisor, and falsify statements in relation to

documents required by the Employee Retirement Income Security Act of 1974 ("ERISA"); and

(ii) making false statements in relation to documents required by ERISA.[19]

Lipkin admitted that he knowingly made inaccurate accounting entries in financial records

and that his actions "helped Mr. Madoff run the Ponzi scheme that harmed thousands of people."[20]

Specifically, Lipkin prepared and maintained BLMIS's general ledger, stock records, FOCUS

---

[15] *Id.* at 32.

[16] *Id.* at 32–33.

[17] Kugel Allocution at 21.

[18] *See* Judgment, *United States v. Kugel*, No. 10-cr-228 (LTS) (S.D.N.Y. June 4, 2015), ECF No. 1357.

[19] Hunt Decl., Ex. 4, Plea Allocution of Irwin Lipkin at 29–37, *United States v. Lipkin*, No. 10-cr-228 (LTS) (S.D.N.Y. Nov. 8, 2012) ("Lipkin Allocution"), ECF No. 288.

[20] *Id.* at 31.

reports, and annual financial statements.[21]   The false numbers contained in these records were subsequently shared with regulators and BLMIS investors.[22]

At the time of his allocution, Lipkin faced a total maximum incarceration of 10 years in prison.[23]  Lipkin subsequently was sentenced to six months in prison.[24]

## ARGUMENT

In bankruptcies involving Ponzi schemes, courts commonly refer to the "Ponzi" scheme presumption as it relates to section 548(a)(1)(A) of the Bankruptcy Code.  Section 548(a)(1)(A) authorizes the Trustee to avoid the entire amount of "any payment" of an interest in property of the debtor made within two years of the filing date with actual intent to hinder, delay, or defraud creditors.  11 U.S.C. § 548(a)(1)(A); *see also Picard v. Greiff*, 476 B.R. 715, 725 (S.D.N.Y. 2012). Fraudulent intent on the part of the transferor is presumed as a matter of law in cases where the debtor operated a Ponzi scheme—the Ponzi scheme presumption.  *See, e.g.*, *Picard v. Cohen*, Adv Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard Madoff)*, 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015)) (finding "the Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with actual fraudulent intent"); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption'"); *In re Agric. Research & Tech. Grp.*, 916 F.2d 528, 535 (9th Cir. 1990)

---

[21] *Id.*

[22] *Id.*

[23] *Id.* at 19.

[24] *See* Judgment, *United States v. Lipkin*, No. 10-cr-228 (LTS) (S.D.N.Y. Aug. 7, 2015), ECF No. 1416.

(explaining that "the debtor's actual intent to hinder, delay or defraud its creditors may be inferred by the mere existence of a Ponzi scheme").

This Court has found that "[t]he breadth and notoriety of the Madoff Ponzi scheme leave no basis for disputing the application of the Ponzi scheme presumption, particularly in light of Madoff's criminal admission." *Picard v. Chais (In re Bernard L. Madoff Inv. Sec., LLC)*, 445 B.R. 206, 221 (Bankr. S.D.N.Y. 2011); *see also Picard v. Katz*, 462 B.R. 447, 453 n.5 (S.D.N.Y. 2011) (stating "it is patent that all of Madoff Securities' transfers during the two-year period were made with actual intent to defraud present and future creditors").

The relevant facts concerning the BLMIS Ponzi scheme are substantiated by the allocutions of Madoff, DiPascali, Kugel, and Lipkin: (1) Madoff and these BLMIS employees orchestrated a decades-long Ponzi scheme in which they pretended to trade in securities but failed to make the purchases and sales reflected on customer account statements; (2) BLMIS falsified securities transactions reflected on customer statements by creating phony transactions after-the-fact based on historical market data; and (3) BLMIS funded customer withdrawals with cash deposited by other customers.[25]  The Trustee's Complaints against Defendants cite to the plea allocutions of Madoff and DiPascali,[26] and Defendants in their filed Answers expressly "refer[] the Court to the filings, orders, and proceedings in the criminal action[s]" against Bernard L. Madoff and Frank DiPascali.[27]

---

[25] *See generally* Madoff, DiPascali, Kugel, and Lipkin Allocutions.

[26] *See* Complaint ¶¶ 15–16, *Picard v. Nelson*, Adv. Po. No. 10-04377 (Bankr. S.D.N.Y. Nov. 30, 2010), ECF No. 1; Complaint ¶¶ 15–16, *Picard v. Nelson*, Adv. Po. No. 10-04658 (Bankr. S.D.N.Y. Dec. 1, 2010), ECF No. 1.

[27] *See* Answer and Affirmative Defenses ¶¶ 15–16, *Picard v. Nelson*, Adv. Po. No. 10-04377 (Bankr. S.D.N.Y. Apr. 17, 2014), ECF No. 30; Answer and Affirmative Defenses ¶¶ 15–16, *Picard v. Nelson*, Adv. Po. No. 10-04658 (Bankr. S.D.N.Y. Apr. 17, 2014), ECF No. 31.

7

Federal Rule of Evidence 201 permits judicial notice of facts not subject to reasonable dispute because they can be accurately and readily determined from sources not subject to dispute. Fed. R. Evid. 201.    A plea allocution is properly subject to judicial notice.    *See, e.g.*, *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) (district court properly took notice of plea agreement of Ponzi scheme operator in subsequent civil action against other parties); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (taking judicial notice of fraudsters' guilty pleas in subsequent civil action by bankruptcy trustee).

Plea allocutions of Ponzi scheme perpetrators are further admissible, notwithstanding hearsay objections, under Rule 803(22) (judgment of a previous conviction) and Rule 807 (residual exception) to establish the existence of a Ponzi scheme.    *See, e.g.*, *Scholes*, 56 F.3d at 762; *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *11 (Bankr. S.D.N.Y. Jan. 3, 2014) (finding plea allocution of Ponzi scheme perpetrator admissible as evidence of fraudulent intent); *Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Grp., LLC)*, 396 B.R. 810, 835 (Bankr. S.D.N.Y. 2008), *aff'd in part and rev'd in part on other grounds*, 439 B.R. 284, 304 (S.D.N.Y. 2010) ("Courts have consistently found that criminal proceeding admissions of a fraudulent scheme to defraud investors made in guilty pleas and plea allocutions are admissible as evidence of 'actual intent' to defraud creditors."); *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 811–12 (9th Cir. 2008) (plea agreement admissible under Fed. R. Evid. 807 as evidence of operation of Ponzi scheme); *see also Moran v. Goldfarb*, No. 09 Civ. 7667 (RJS), 2012 WL 2930210, at *4 (S.D.N.Y. Jul. 16, 2012) (finding guilty plea provides "ample evidence" of intent to defraud); *Carney v. Lopez*, 933 F. Supp. 2d 365, 380 (D. Conn. 2013) (same); *McHale v. Boulder Cap. LLC (In re The 1031 Tax Grp., LLC)*, 439 B.R. 47, 72 (S.D.N.Y. 2010) (same); *Stenger v. World*

8

*Harvest Church, Inc.*, No. Civ.A. 1:04CV00151-RW, 2006 WL 870310, *14 (N.D. Ga. March 31, 2006) (guilty plea sufficient to support finding of Ponzi scheme); *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 793 F. Supp. 2d 825, 835 n.9 (N.D. Tex. 2011) (holding that "guilty plea constitutes admissible evidence").

Moreover, consistent with the mandates of Rules 201, 803(22), and 807, the statements in the plea allocutions demonstrate a high guarantee of trustworthiness as a result of the safeguards that a sentencing judge must take in order to accept a guilty plea under Rule 11 of the Federal Rules of Criminal Procedure.  Under Rule 11, a sentencing judge is required to ensure that each guilty plea is voluntary and has a factual basis which is developed on the record at the plea allocution.  *See* Fed. R. Crim. P. 11.  The trustworthiness of a plea allocution is bolstered by the fact that the criminal defendant gives his statements during the allocation sworn under oath.  As the Second Circuit commented, "[i]t is hard to conceive of any admission more incriminating to the maker or surrounded by more safeguards of trustworthiness than a plea of guilty in a federal court."  *United States v. Winley*, 638 F.2d 560, 562 (2d Cir. 1981).  Here, the trustworthiness of each allocution is undisputed; the court accepting each of the defendants' pleas made clear the circumstances and conditions of the plea and importantly the significant incarceration and/or monetary penalties faced by the respective defendant.[28]

As the requirements of Federal Rules of Evidence 201, 803(22), and 807 are met, the plea allocutions of Madoff, DiPascali, Kugel, and Lipkin would facilitate the interests of justice in this case as they bear directly on material facts in dispute—the Ponzi scheme at BLMIS—and should be admitted into evidence accordingly.

---

[28] *See* Madoff Allocution at 3–22; DiPascali Allocution at 4–6, 8–20, 28–35; Lipkin Allocution at 5, 8–29; Kugel Allocution at 5–31.

9

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests the Court admit into evidence

the plea allocutions of Madoff and BLMIS employees Frank DiPascali, David Kugel, and Irwin

Lipkin pursuant to Federal Rules of Evidence 201, 803(22), and 807 at trial.

Dated:  April 24, 2019
New York, New York

**BAKER & HOSTETLER LLP**

_/s/ Dean D. Hunt_
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Dean D. Hunt
Email:  dhunt@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Lan Hoang
Email:  lhoang@bakerlaw.com
Seanna R. Brown
Email:  sbrown@bakerlaw.com

_Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities
LLC and the Chapter 7 Estate of Bernard L.
Madoff_