**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (SMB) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA LIQUIDATION |
| Defendant. | (Substantively Consolidated) |
| In re: BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-04658 (SMB) |
| v. | |
| CAROL NELSON, | |
| Defendant. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-04377 (SMB) |
| v. | |
| CAROL NELSON, Individually and as Joint Tenant; and STANLEY NELSON, Individually and as Joint Tenant, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION *IN LIMINE*
NUMBER 2 TO ADMIT THE TRIAL TESTIMONY OF FRANK DIPASCALI**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................ 2

    A.    The Instant Trial.................................................................................................2

    B.    Criminal Trial Proceedings...............................................................................3

    C.    DiPascali's Criminal Trial Testimony ..............................................................5

    D.    Cross Examination.............................................................................................7

ARGUMENT ................................................................................................................. 8

    I.    DiPascali's Prior Testimony Is Admissible Under Federal Rule of Evidence
        804(b)(1).............................................................................................................8

        A.    The Criminal Defendants Are Predecessors in Interest to the
             Defendants Here .........................................................................................8

        B.    With Their Liberty at Stake, the Criminal Defendants Had a Similar
             Motive and Opportunity to Cross-Examine DiPascali And Did So ......................10

CONCLUSION............................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Annunziata v. City of New York*,
No. 06 Civ. 7637 (SAS), 2008 WL 2229903 (S.D.N.Y. May 28, 2008)................................13

*Antonucci v. Morgan Stanley Dean Witter & Co*,
No. 02-cv-5246 (GBD) (CM), 2005 WL 627556 (S.D.N.Y. Jan. 11, 2005)...........................11

*Apotex, Inc. v. Cephalon, Inc.*,
No. 06-cv-2768 (MHG), 2017 WL 2362400 (E.D. Pa. May 31, 2018)....................................9

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011).......................................................................................................2

*Deere & Co. v. FIMCO Inc.*,
260 F. Supp. 3d 830 (W.D. Ky. 2017) ....................................................................................12

*Dykes v. Raymark Indus. Inc.*,
801 F.2d 810 (6th Cir. 1986) ...................................................................................................13

*Fed. Hous. Fin. Agency v. Merrill Lynch & Co.*,
No. 11 Civ. 6202 (DLC), 2014 WL 798385 (S.D.N.Y. Feb. 28, 2014) .....................10, 11, 12

*Lloyd v. Am. Export Lines, Inc.*,
580 F.2d 1179 (3d Cir. 1978).............................................................................................9, 11

*Pac. Emp'rs Ins.Co. v. Troy Belting & Supply Co.*,
No. 1:11-CV-912 (TJM), 2016 WL 5477758 (N.D.N.Y. Sept. 29, 2016)................................13

*Patterson v. Cty. of Oneida*,
375 F.3d 206 (2d Cir. 2004).......................................................................................................8

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
71 F.3d 119 (4th Cir. 1995) .....................................................................................................11

*United States v. DiNapoli*,
8 F.3d 909 (2d Cir. 1993)......................................................................................................9, 11

*United States v. Ozsusamlar*,
428 F. Supp. 2d 161 (S.D.N.Y. 2006)......................................................................................10

*United States v. Salerno*,
505 U.S. 317 (1992).....................................................................................................................9

*Walden v. City of Chicago*,
    846 F. Supp. 2d 963 (N.D. Ill. 2012) .................................................................12

*Wright v. Kelly*,
    No. 95-CV-0688H (CEH), 1998 WL 912026, (W.D.N.Y. Oct. 16, 1998)............................12

**Statutes**

11 U.S.C. § 548 ............................................................................................3

11 U.S.C. § 548(a)(1)(A) ...........................................................................2, 10

11 U.S.C. § 550 .........................................................................................2, 3

15 U.S.C. §§ 78aaa *et seq.* ..........................................................................1

**Rules**

Fed. R. Bankr. P. 9017 ..................................................................................1

Fed. R. Evid. 804(b)(1) ...........................................................................8, 9, 11

Fed. R. Evid. 807(a) .....................................................................................12

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa *et seq.*, and the chapter 7 estate of Bernard L. Madoff, respectfully submits

this memorandum of law and the Declaration of Dean D. Hunt ("Hunt Decl.") in support of the

Trustee's motion *in limine* number 2 for entry of an order under the Federal Rules of Evidence,

made applicable here by Federal Rule of Bankruptcy Procedure 9017, to admit certain testimony

given by Frank DiPascali ("DiPascali") (deceased) in the trial captioned *United States v.*

*Bonventre*, No. 10-cr-228 (LTS) (S.D.N.Y.) (the "criminal trial").

## PRELIMINARY STATEMENT

In the instant action, the Trustee seeks recovery of $3,065,077 from Defendants Carol

Nelson and Stanley Nelson (collectively, "Defendants").  Defendants contest whether BLMIS was

operating a Ponzi scheme.  Accordingly, at the upcoming trial of this matter, the Trustee intends

to offer the testimony of his expert witnesses and the criminal allocutions of DiPascali, David

Kugel, Irwin Lipkin, and Bernard Madoff as evidence that BLMIS was operating a Ponzi scheme.

By this motion, the Trustee also seeks to admit DiPascali's testimony from the criminal trial into

evidence.

DiPascali was indicted on a series of charges related to the Ponzi scheme at BLMIS,

including securities fraud, investment advisory fraud; falsifying investment adviser books and

records; mail fraud; wire fraud; and money laundering.  After pleading guilty, DiPascali agreed to

testify for the federal government (the "Government") in the criminal case against five BLMIS

employees involved in the Ponzi scheme.  DiPascali testified for sixteen days at the criminal trial

about his thirty-year tenure at BLMIS.  His testimony began in the 1970s when DiPascali first

realized that the BLMIS investment advisory business (the "IA Business") was a fraud and ended

with its demise in 2008 when massive redemption requests far exceeded any available cash on

1

hand. Throughout his testimony, DiPascali explained how he and each of the five criminal defendants helped carry out the Ponzi scheme in their respective roles. With their liberty at stake, the criminal defendants through their counsel rigorously cross-examined DiPascali over ten days on many aspects of his testimony. DiPascali died in May 2015, before he could be sentenced on his guilty plea.

This Court should admit DiPascali's testimony because it is admissible under the Federal Rules of Evidence as trustworthy evidence that will aid this Court in understanding Madoff's comprehensive Ponzi scheme.

## **BACKGROUND**

### A.      **The Instant Trial**

BLMIS ran a Ponzi scheme through its IA Business, resulting in thousands of fraudulent transfers to its customers. Some customers knew, and others did not. For those that did not, the Trustee calculated the amounts that were withdrawn in excess of the principal invested and sued to recover those amounts transferred within the two-year period preceding the liquidation under sections 548(a)(1)(A) and 550 of the Bankruptcy Code. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 233–34 (2d Cir. 2011). In his avoidance actions, the Trustee alleged that BLMIS operated a Ponzi scheme, and that the funds transferred to customers were stolen monies that belonged to other BLMIS customers.[1]

Defendants are among the former BLMIS customers whom the Trustee sued. The Trustee seeks to avoid and recover $3,065,077, representing the amounts in excess of principal that BLMIS transferred to Defendants in the two-year period preceding the liquidation.

---

[1] *See* Complaint ¶¶ 1–2, 27, *Picard v. Nelson*, Adv. Pro. No. 10-04377 (Bankr. S.D.N.Y. Nov. 30, 2010), ECF No. 1; Complaint ¶¶ 1–2, 27, *Picard v. Nelson*, Adv. Pro. No. 10-04658 (Bankr. S.D.N.Y. Dec. 1, 2010), ECF No. 1.

In their Answer, Defendants denied the Trustee's allegations that BLMIS operated a Ponzi scheme.[2]  When the Trustee cited to DiPascali's plea allocutions in his Complaints,[3] Defendants referred the Court to "the filings, orders, and proceedings in the criminal action against Frank DiPascali."[4]  Defendants challenged the sufficiency of the Trustee's allegations regarding whether the transfers BLMIS made to Defendants were made with actual intent to hinder, delay or defraud creditors or customers of BLMIS.[5]  More broadly, Defendants contend that the Trustee cannot avoid and recover the transfers sought here for failure to plead all of the elements of sections 548 and 550 of the Bankruptcy Code.[6]

## B.    Criminal Trial Proceedings

Following Madoff's confession to running the largest Ponzi scheme in history, the Government commenced criminal cases against him and other individuals employed by BLMIS for securities fraud, falsifying records of a broker-dealer, tax fraud, mail fraud, and wire fraud and related conspiracy charges where applicable.  Prior to trial, eight BLMIS principals and employees, including DiPascali, pled guilty to their crimes.  BLMIS's accountant, David Friehling, also pled guilty.

---

[2] *See* Answer and Affirmative Defenses ¶¶ 1–2, 27, *Picard v. Nelson*, Adv. Pro. No. 10-04377 (Bankr. S.D.N.Y. Apr. 17, 2014), ECF No. 30; Answer and Affirmative Defenses ¶¶ 1–2, 27, *Picard v. Nelson*, Adv. Pro. No. 10-04658 (Bankr. S.D.N.Y. Apr. 17, 2014), ECF No. 31.

[3] *See* Complaint ¶ 16, *Picard v. Nelson*, Adv. Pro. No. 10-04377 (Bankr. S.D.N.Y. Nov. 30, 2010), ECF No. 1; Complaint ¶ 16, *Picard v. Nelson*, Adv. Pro. No. 10-04658 (Bankr. S.D.N.Y. Dec. 1, 2010), ECF No. 1.

[4] *See* Answer and Affirmative Defenses ¶ 16, *Picard v. Nelson*, Adv. Pro. No. 10-04377 (Bankr. S.D.N.Y. Apr. 17, 2014), ECF No. 30; Answer and Affirmative Defenses ¶ 16, *Picard v. Nelson*, Adv. Pro. No. 10-04658 (Bankr. S.D.N.Y. Apr. 17, 2014), ECF No. 31.

[5] *See* Answer and Affirmative Defenses, Ninth Affirmative Defense, *Picard v. Nelson*, Adv. Pro. No. 10-04377 (Bankr. S.D.N.Y. Apr. 17, 2014), ECF No. 30; Answer and Affirmative Defenses, Eighth Affirmative Defense, *Picard v. Nelson*, Adv. Pro. No. 10-04658 (Bankr. S.D.N.Y. Apr. 17, 2014), ECF No. 31.

[6] *See* Answer and Affirmative Defenses, Ninth Affirmative Defense, *Picard v. Nelson*, Adv. Pro. No. 10-04377 (Bankr. S.D.N.Y. Apr. 17, 2014), ECF No. 30; Answer and Affirmative Defenses, Eighth Affirmative Defense, *Picard v. Nelson*, Adv. Pro. No. 10-04658 (Bankr. S.D.N.Y. Apr. 17, 2014), ECF No. 31.

DiPascali pled guilty to conspiracy to commit securities fraud, investment advisory fraud,

falsifying books and records of a broker/dealer, falsifying books and records of an investment

fund, mail fraud, wire fraud and money laundering; as well as substantive counts of securities

fraud, investment adviser fraud, falsifying broker/dealer books and records; falsifying investment

adviser books and records; mail fraud; wire fraud; money laundering; perjury; and income tax

evasion.[7]   As part of his plea agreement, DiPascali cooperated with the Government in its

investigation into BLMIS and testified at the criminal trial.

Five former BLMIS employees proceeded to trial for five months beginning in October

2013: Daniel Bonventre, Annette Bongiorno, Joann (Jodi) Crupi, George Perez, and Jerome

O'Hara (collectively, the "criminal defendants").   Dozens of witnesses testified, including

DiPascali, and thousands of exhibits were admitted into evidence.

The Government set out to prove that the criminal defendants "enabled and supported

[Madoff's] fraud in different but essential ways.  These defendants spent every day of the last 20

years or more . . . manufacturing fictitious information, creating millions of fake documents and

keeping track of the money that they helped Bernie Madoff to steal. . . . All of these defendants

were important and necessary players in Madoff's multi-billion dollar scheme, and each of them

got rich as a result."[8]  All five criminal defendants were convicted in April 2014.[9]

---

[7] Hunt Decl. Ex. 2, Plea Allocution of Frank DiPascali at 18–20, 44–54, *United States v. DiPascali*, No. 09-cr-764 (RJS) (S.D.N.Y. Aug. 11, 2009), ECF Nos. 11, 12.

[8] Trial Tr. of Oct. 16, 2013 at 57–58, *United States v. Bonventre, et al.*, No. 10-cr-228 (S.D.N.Y.).  Unless otherwise noted, all references to "Trial Tr." herein refer to the case captioned *United States v. Bonventre, et al.*, No. 10-cr-228 (S.D.N.Y.).

[9] Trial Tr. of Mar. 24, 2014 at 12166–84.

4

C.    **DiPascali's Criminal Trial Testimony**

DiPascali testified about the specifics of the Ponzi scheme at BLMIS over the course of 16 days, with his direct testimony spanning 9 days, including re-direct, while counsel for each of the five criminal defendants cross-examined him across 10 days.  Bonventre also called DiPascali as an affirmative witness, where he was cross-examined by the Government, comprising one full day of testimony.  DiPascali provided a detailed account of his work at BLMIS during the three decades he worked there, particularly the extent and specifics of the Ponzi scheme at BLMIS and his involvement, as well as the involvement of the five criminal defendants.  The Trustee seeks to admit certain trial testimony summarized below and designated by page and line in Exhibit 5 attached to the Hunt Decl. concerning the existence, scope, and duration of the BLMIS fraud, including: (1) BLMIS operations and background; (2) split-strike conversion strategy accounts; (3) BLMIS's purchase of Treasury bills; and (4) Madoff's promised rate of return for BLMIS customers.

DiPascali began working at BLMIS in the late 1970s and continued to work there until the fraud was uncovered in December 2008.[10]  For most of his time at BLMIS, he worked on the 17th floor in the IA Business managing the split-strike BLMIS customer accounts, and was familiar with other types of accounts including options and convertible arbitrage accounts.[11]  DiPascali interacted with the other IA Business employees on a daily basis and understood how each employee's job responsibilities fit into the larger fraudulent scheme at BLMIS.[12]

---

[10] *See, e.g.*, Hunt Decl. Ex. 6, Testimony of Frank DiPascali, Trial Tr. of Dec. 2, 2013 at 4509–11.  The Trustee also attaches a chart containing the specific page and line designations for the testimony of DiPascali that the Trustee seeks to admit.  *See* Hunt Decl. Ex. 5.

[11] *See, e.g.*, Trial Tr. of Dec. 2, 2013 at 4544–47, 4552, 4583–93.

[12] *See, e.g.*, *id.* at 4518–22.

Concerning when the fraud began, DiPascali dated his personal knowledge of the fraud to the late 1980s although he was aware that the fraud extended even earlier than that time frame.[13] When he began working on the split-strike accounts, DiPascali detailed how, with the help of Bonventre, O'Hara, and Crupi, he fabricated Depository Trust Company ("DTC") reports that contained billions of dollars in fake treasury notes,[14] and fabricated customer statements to reflect false trading under the split-strike conversion strategy, including purchases of treasury bills listed on the statements when Madoff was "out of the market."[15] DiPascali confirmed that these treasury purchases were not for customer accounts and that the split-strike conversion strategy reported on customer statements, with its quarter-end switch to treasury bills, was fake.[16]

DiPascali also testified regarding how the main BLMIS bank account was used to monitor the fraudulent business and, specifically, how treasuries actually purchased by BLMIS were used in the IA Business as a cash management tool.[17] DiPascali testified he met with Madoff and Bonventre to discuss the investment of funds in the "703 Account" to generate short-term interest, a role previously held by another BLMIS employee, Tony Tiletnick.[18] Going forward, DiPascali heeded Madoff's request to invest in treasury bills instead of short-term CDs to generate short term interest, though various brokerage accounts.[19] To do so, DiPascali would call the brokers

---

[13] *See, e.g., id.* at 4517–18, 4522, 4544–47, 4587–93, 4619–20.

[14] *See, e.g.,* Trial Tr. of Dec. 4, 2013 at 4769–70, 4772–84, 4796–97.

[15] *See, e.g., id.* at 4802–05.

[16] *See, e.g., id.* at 4803–05; *see also* Trial Tr. of Dec. 5, 2013 at 4930–32.

[17] *See, e.g., id.* at 4931–32, 4959; Trial Tr. of Dec. 9, 2013 at 5108; Trial Tr. of Dec. 19, 2013 at 6458–59.

[18] *See, e.g.,* Trial Tr. of Dec. 5, 2013 at 4959.

[19] *See, e.g., id.* at 4960–61.

6

managing those accounts.[20]  DiPascali also discussed Crupi's and Bonventre's responsibilities related to cash management at BLMIS: both were involved in managing the 703 account.[21]

Concerning rates of return, DiPascali testified about Madoff's promised rate of return for certain BLMIS customers with split-strike accounts.[22]  He detailed how Madoff assigned a preordained rate of return for BLMIS accounts, providing that information to other IA Business employees who helped generate fictitious trades on customer statements to reach Madoff's pre-determined rate of return.[23]

## D.    Cross Examination

DiPascali was examined on cross and/or re-cross by counsel for each criminal defendant.[24] Several defendants cross-examined DiPascali on his decision to cooperate with the Government and the attendant benefits of doing so.[25]  Bongiorno's counsel focused on elements of the Ponzi scheme, including whether Bongiorno was inputting historical data into customer statements at Madoff's direction,[26] and challenging DiPascali's testimony that the customer accounts were given pre-ordained rates of return.[27]  O'Hara's counsel cross-examined DiPascali about whether O'Hara had reservations about creating certain programming that was used to perpetrate the fraud.[28] Crupi's counsel engaged in a lengthy cross examination of DiPascali, including Crupi's

---

[20] *See, e.g., id.* at 4931–34.

[21] *See, e.g.,* Trial Tr. of Dec. 2, 2013 at 4519–20.

[22] *See, e.g.,* Trial Tr. of Dec. 5, 2013 at 4885–87; Trial Tr. of Dec. 12, 2013 at 5776–77.

[23] *See, e.g.,* Trial Tr. of Dec. 5, 2013 at 4885–87; Trial Tr. of Dec. 12, 2013 at 5776–77.

[24] *See generally* Trial Tr. of Dec. 11, 2013; Trial Tr. of Dec. 12, 2013; Trial Tr. of Dec. 16, 2013; Trial Tr. of Dec. 17, 2013; Trial Tr. of Dec. 18, 2013; Trial Tr. of Dec. 19, 2013; Trial Tr. of Jan. 8, 2014; Trial Tr. of Jan. 9, 2014; Trial Tr. of Jan. 13, 2014; Trial Tr. of Jan. 15, 2014.

[25] *See generally* Trial Tr. of Dec. 12, 2013 at 5695–5772; Trial Tr. of Dec. 17, 2013 at 6085–6100.

[26] *See, e.g.,* Trial Tr. of Dec. 12, 2013 at 5741–45.

[27] *See, e.g.,* Trial Tr. of Dec. 16, 2013 at 5944.

[28] *See, e.g.,* Trial Tr. of Dec. 17, 2013 at 6116–19.

involvement in the fabrication of BLMIS reports submitted to regulators.[29]  The cross examination

sought to cast doubt on DiPascali's characterization of the mechanics of the fraud and how it was

carried out.

As stated above, attached as Exhibit 5 to the Hunt Decl. is a chart setting out the page and

line designations for the testimony of DiPascali that the Trustee seeks to admit.  The Trustee

notified Defendants of his intention to rely upon the criminal trial testimony on April 17, 2019,

providing full copies of the transcripts.

## ARGUMENT

### I.    DiPascali's Prior Testimony Is Admissible Under Federal Rule of Evidence 804(b)(1)

DiPascali's criminal trial testimony is admissible under Federal Rule of Evidence

804(b)(1).[30]  Testimony in a prior proceeding is hearsay when offered for the truth of the matter

asserted.  *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219–20 (2d Cir. 2004) ("Testimony of a

nonparty witness that was given at a prior hearing is, when offered for its truth, hearsay.").  Prior

trial testimony is admissible, however, under Federal Rule of Evidence 804(b)(1) when offered

against a party whose "predecessor in interest" had an opportunity and similar motive to develop

that testimony on direct, cross, or redirect examination and that witness is unavailable to testify a

civil case.  DiPascali is deceased, and the other elements of Federal Rule of Evidence 804(b)(1)

are satisfied here.

#### A.    The Criminal Defendants Are Predecessors in Interest to the Defendants Here

The criminal defendants are the predecessors in interest to Defendants in this case.  In civil

cases, the term "predecessor in interest" means a party that has a similar motive and opportunity

---

[29] *See, e.g.*, Trial Tr. of Jan. 8, 2014 at 6637–41.

[30] Defendants advised the Trustee that they object to DiPascali's criminal trial testimony as hearsay.  .

to cross-examine. *See Lloyd v. Am. Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir. 1978) ("the previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party.").

"Similar" does not mean identical. *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring). To be "similar," the motives to develop the testimony should be "of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue." *United States v. DiNapoli*, 8 F.3d 909, 914–15 (2d Cir. 1993); *see also Apotex, Inc. v. Cephalon, Inc.*, No. 06-cv-2768 (MHG), 2017 WL 2362400, at *8 (E.D. Pa. May 31, 2018) (admitting prior testimony from regulatory hearings in a civil case where both parties challenged the same allegedly unlawful conduct and "those challenged involved a substantial identity of issues."). Where the two proceedings in question under Rule 804(b)(1) "are trials and the same matter is seriously disputed at both trials, it will normally be the case that the side opposing the version of a witness at the first trial had a motive to develop that witness's testimony similar to the motive at the second trial." *DiNapoli*, 8 F.3d at 912–13 (2d Cir. 1993).

The criminal trial of the five BLMIS employees involved substantially the same facts and issues as the litigation against Defendants. At the criminal trial, the Government sought to prove that the five BLMIS employees committed the crimes charged, all of which stemmed from BLMIS's decades-long Ponzi scheme. DiPascali testified that fake trading had been going on at BLMIS for "as long as I can remember,"[31] and that trading in the accounts Bongiorno managed since the 1970s was all fictitious.[32] DiPascali also testified regarding his work with certain customer accounts in the 1980s, confirmed that no trading was happening in those accounts and

---

[31] Trial Tr. of Dec. 2, 2013 at 4517.

[32] *Id.* at 4544–52, 4592–93.

9

testifying that he looked up historical prices for the purported options trades.[33]  DiPascali testified that he had "no doubt" that the trading in the IA Business was "completely fake"[34] and that he "was committing a crime for 30-odd years."[35]  When asked, "What are people going to learn about that 30 years of fake trading that you were working on?," DiPascali averred, "That it was a Ponzi scheme."[36]

Similarly, at the upcoming trial, the Trustee will also provide evidence regarding the existence of the BLMIS Ponzi scheme as part of his proofs that BLMIS made the transfers within the two-year period preceding the liquidation with intent to hinder, delay or defraud creditors under section 548(a)(1)(A).  This proof that BLMIS was operating a Ponzi scheme will establish that the transfers were made with the requisite intent.

The Ponzi scheme issue was common, and central, to both trials.  Thus, the issues at the criminal trial and at the upcoming trial are sufficiently similar for DiPascali's testimony to be admitted.  *See, e.g.*, *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 180 (S.D.N.Y. 2006) (admitting prior sworn testimony where sufficient similarity of issues was established).

### B.    With Their Liberty at Stake, the Criminal Defendants Had a Similar Motive and Opportunity to Cross-Examine DiPascali And Did So

Each criminal defendant had the motive and opportunity to—and actually did—cross-examine DiPascali at length.  Courts have adopted a "realistically generous approach over one that is formalistically grudging, admitting testimony where it appears in the former suit a party having like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination."  *Fed. Hous. Fin. Agency v. Merrill Lynch & Co.*,

---

[33] *Id.* at 4589–90, 4619–20.

[34] Trial Tr. of Dec. 10, 2013 at 5423.

[35] *Id.*

[36] *Id.* at 5425.

No. 11 Civ. 6202 (DLC), 2014 WL 798385, at *1 (S.D.N.Y. Feb. 28, 2014) (quoting *Lloyd v. Am.*

*Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir.1978)); *see also Supermarket of Marlinton, Inc.*

*v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 127 (4th Cir. 1995) (prior testimony admissible

because motive to cross-examine was "similar" and need not be "identical").[37]  Determining

whether two parties share a "similar" motive depends on whether the motives to develop the

testimony are "of substantially similar intensity to prove (or disprove) the same side of a

substantially similar issue." *United States v. DiNapoli*, 8 F. 3d 909, 914–15 (2d Cir.1993); *see*

*Fed. Hous. Fin. Agency*, 2014 WL 798385, at *1.

DiPascali was thoroughly cross-examined by five different defense attorneys over ten days.

The criminal defendants relentlessly challenged DiPascali's credibility, including his agreement

to cooperate with the Government in exchange for leniency during sentencing.[38]  DiPascali was

cross-examined on the start date of the fraud and was subjected to numerous questions about the

veracity of his testimony on the mechanics of the fraud.[39]  The cross examination and re-cross

examination spanned many days:

| Date | Exam (defendant) |
|------|------------------|
| 12/11/2013 | Cross (Perez) |
| 12/12/2013 | Cross (Perez) |
| 12/12/2013 | Cross (Bongiorno) |
| 12/16/2013 | Cross (Bongiorno) |
| 12/17/2013 | Cross (Bongiorno) |
| 12/17/2013 | Cross (O'Hara) |
| 12/18/2013 | Cross (O'Hara) |
| 12/18/2013 | Cross (Crupi) |
| 12/19/2013 | Cross (Crupi) |
| 1/8/2014 | Cross (Crupi) |

[37] *Antonucci v. Morgan Stanley Dean Witter & Co*, No. 02-cv-5246 (GBD) (CM), 2005 WL 627556, at *4 (S.D.N.Y. Jan. 11, 2005) ("[Rule 804(b)(1)] does not require that the opposing party actually cross-examine the witness; it is instead enough that the opposing party be given a meaningful opportunity to cross-examine if it wishes to do so.")).

[38] *See, e.g.*, Trial Tr. of Dec. 12, 2013 at 5701–15; Trial Tr. of Dec. 17, 2013 at 6085–86.

[39] *See, e.g.*, Trial Tr. of Dec. 11, 2013 at 5527 ("Why did you choose to tell the judge that it was from at least the early 1990s when, in fact, it was from the late '70s, some ten to 15 years earlier than that?").

| Date | Exam (defendant) |
|---|---|
| 1/8/2014 | Cross (Bonventre) |
| 1/9/2014 | Cross (Bonventre) |
| 1/13/2014 | Re-cross (Perez) |
| 1/13/2014 | Re-cross (Bongiorno) |
| 1/13/2014 | Re-cross (O'Hara) |
| 1/15/2014 | Re-cross (O'Hara) |
| 1/15/2014 | Re-cross (Crupi) |
| 1/15/2014 | Re-cross (Bonventre) |

With their liberty at stake, each criminal defendant had substantial motive to thoroughly cross-examine DiPascali. *See Wright v. Kelly*, No. 95-CV-0688H (CEH), 1998 WL 912026, at *6 (W.D.N.Y. Oct. 16, 1998) ("Because it was a criminal trial, the stakes were as high if not higher than the civil case, and the prosecutor had a very strong motive to develop the testimony."); *see also Walden v. City of Chicago*, 846 F. Supp. 2d 963, 972 (N.D. Ill. 2012) (noting that plaintiff had significant motive to develop testimony at his criminal trial "because he faced a lengthy prison sentence if convicted"). In light of the robust cross examination that occurred, this Court can easily conclude that the criminal defendants had motive and opportunity to challenge DiPascali's testimony on the same material facts at issue in this litigation. Should Defendants disagree, they must explain precisely why the motive and opportunity for the criminal defendants should be considered inadequate—in essence, particularize what additional cross examination they could have performed.[40] *See Fed. Hous. Fin. Agency*, 2014 WL 798385, at *1 ("When objecting to the admissibility of such [testimony], the opposing party should explain as clearly as possible to the judge precisely why the motive and opportunity of the [party] in the first case was not adequate to

---

[40] DiPascali's testimony is also admissible under Federal Rule of Evidence 807(a). The relevance of the criminal indictments, pleas, and trial proceedings to the Trustee's claims has been evident since the complaint was filed in this action, and Defendants acknowledge same by their reliance on the criminal allocutions in their Answer. The Trustee identified DiPascali in his second amended initial disclosures provided in September 2016 as a witness with knowledge. The criminal trial transcripts have been available to Defendants in E-Data Room 1 since at least 2016. *See Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 844 (W.D. Ky. 2017) (notice requirement met more than 1 month before bench trial, where there was no issue with the opposing party obtaining the evidence).

develop the cross-examination which the instant party would have presented to the witness.")
(quoting *Dykes v. Raymark Indus. Inc.*, 801 F.2d 810, 815–17 (6th Cir. 1986)).

Because this Court will be the trier of fact, there are no concerns about juror confusion or
potential prejudice. The Court has considerable discretion to admit the proffered testimony at trial
and determine the appropriate weight at that time.[41]   *See Pac. Emp'rs Ins.Co. v. Troy Belting &
Supply Co.*, No. 1:11-CV-912 (TJM), 2016 WL 5477758, at *4 (N.D.N.Y. Sept. 29, 2016);
*Annunziata v. City of New York*, No. 06 Civ. 7637 (SAS), 2008 WL 2229903 (S.D.N.Y. May 28,
2008).

---

[41] The Trustee also notes that the criminal trial exhibits that are in the Trustee's possession have been in E-Data
Room 1 since 2016. The Trustee is not moving to admit the underlying documents referred to during DiPascali's
testimony into evidence at this trial but will include them on his forthcoming exhibit list for identification purposes.
The Trustee will submit copies of the exhibits for consideration herein upon the Court's request.

13

## CONCLUSION

The Trustee respectfully requests that the Court admit DiPascali's prior testimony

identified on Exhibit 5 into evidence at trial.

Dated: April 24, 2019  
      New York, New York

*/s/ David J. Sheehan*
_____

Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Dean D. Hunt  
Email: dhunt@bakerlaw.com  
Nicholas J. Cremona  
Email: ncremona@bakerlaw.com  
Lan Hoang  
Email: lhoang@bakerlaw.com  
Seanna R. Brown  
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for*  
*the Substantively Consolidated SIPA*  
*Liquidation of Bernard L. Madoff Investment*  
*Securities LLC and Bernard L. Madoff*

14