# EXHIBIT A

Page 1

**CONFIDENTIAL**
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
In re:                            )
                                  )
SECURITIES INVESTOR               )
PROTECTION CORPORATION,           )
                                  )
    Plaintiff-Applicant,          )
                                  )
vs.                               )  08-01789 (SMB)
                                  )
BERNARD L. MADOFF                 )
INVESTMENT SECURITIES, LLC,       )
                                  )
    Defendant.                    )
                                  )
                                  )
In re:                            )
                                  )
BERNARD L. MADOFF,                )
                                  )
    Debtor.                       )
                                  )
```

Videotaped Deposition of BERNARD L. MADOFF, VOLUME I, taken on behalf of the Customers, before K. Denise Neal, Registered Professional Reporter and Notary Public, at the Federal Correctional Institution, 3000 Old Highway 75, Butner, North Carolina, on the 26th day of April, 2017, commencing at 9:07 a.m.

* * * * *

CONFIDENTIAL

Page 2

1  APPEARANCES OF COUNSEL:
2     On Behalf of the Customers:
3         HELEN DAVIS CHAITMAN, Esq.
4         Chaitman, LLP
5         465 Park Avenue
6         New York, New York  10022
7         (908) 303-4568
8         hchaitman@chaitmanllp.com
9
10    On Behalf of the Trustee:
11        DAVID J. SHEEHAN, Esq.
12        AMANDA E. FEIN, Esq.
13        Baker Hostetler
14        45 Rockefeller Plaza
15        New York, New York  10111-0100
16        (212) 589-4621
17        afein@bakerlaw.com
18
19    On Behalf of the Deponent:
20        PETER A. GOLDMAN, Esq.
21        12 Fairlawn Parkway
22        Rye Brook, New York  10573
23        (914) 935-6857
24        pagoldman@gmail.com
25

CONFIDENTIAL

Page 3

1   APPEARANCES OF COUNSEL:
2       Videographer:
3           Ken Morrison, CLVS
4
5                   * * * * *
6
7                   CONTENTS
8   THE WITNESS:  BERNARD L. MADOFF          EXAMINATION
9       BY MS. CHAITMAN                          6
10      BY MR. SHEEHAN                         132
11
12                  * * * * *
13
14              INDEX OF EXHIBITS
15  FOR THE CUSTOMERS:                          PAGE
16  Exhibit Number 15, Copies of Bloomberg       38
17     trade tickets
18  Exhibit Number 16, JPMorgan Chase            52
19     statement - 2-2001
20  Exhibit Number 17, 703 account statement     58
21     - 6-2001
22  Exhibit Number 18, JPMorgan Chase            60
23     statement - 10-2002
24  Exhibit Number 19, JPMorgan Chase            61
25     statement - 12-2003

08-01789-cgm   Doc 18712-2   Filed 05/01/19   Entered 05/01/19 18:18:15   Exhibit A
Pg 5 of 7

CONFIDENTIAL

Page 107

1  review of the earliest records available to him, the
2  Trustee has found no evidence indicating that the
3  BLMIS investment advisory business has been operated
4  as anything but a Ponzi scheme.
5       A.   Right.
6       Q.   Now, did anyone on behalf of the Trustee
7  ever talk to you about the trades that you did in
8  the 1980s?
9       A.   No.
10      Q.   Did the Trustee ever disclose to you that
11 he, in fact, had some trading records from the
12 1980s?
13      A.   No.
14      Q.   Now, when SIPC is using here the phrase
15 Ponzi scheme, if you accept for a moment that a
16 Ponzi scheme is a nonexistent business in which
17 people invest where the sole source of paying
18 returns on their investments is investments from new
19 investors --
20      A.   Uh-huh.
21      Q.   -- on that definition was the split strike
22 ever a Ponzi scheme?  In other words, did you ever
23 need new cash from new customers in order to redeem
24 other customers?
25      A.   No.

Veritext Legal Solutions
212-267-6868					www.veritext.com					516-608-2400

CONFIDENTIAL

Page 108

1  Q. Did you ever need new cash from new
2  customers to pay the earnings that were reported on
3  the statements?
4  A. No. Let me make a statement that I have
5  never to my recollection ever had a conversation
6  with a Trustee, ever. The Trustee never met with
7  me, never spoke to me, never asked me anything from
8  the date of my arrest until currently. I've had
9  meetings with the attorneys when the attorneys came
10 down here after, you know, I don't know whether that
11 was 2010 or some year in that, but there was
12 nothing; but the Trustee, the only time I ever saw
13 the Trustee was at my proffer meeting with the SEC.
14 Q. In December 2008?
15 A. December of 2008. And as far as I recall,
16 he never asked me anything and I never said anything
17 to him.
18 Q. Okay. But did anyone from the Trustee's
19 law firm --
20 A. No. The law firm, yes. They came down at
21 one period of time. David Sheehan could -- was
22 present.
23 Q. Okay. But did they ever ask you whether
24 you actually executed the trades that were done in
25 the convertible arbitrage strategy?

Page 109

1     A.   I don't think they ever asked me that.  The
2  only conversation I had with them about trade at all
3  was the David Kugel scrap of paper that I mentioned
4  before.
5     Q.   Okay, okay.  Did they ever ask you exactly
6  when the -- when you stopped buying the securities
7  for the split strike?
8     A.   No.
9     Q.   Did they ever ask you whether you needed
10  the money from new investors in order to pay old
11  investors?
12     A.   No.
13          (Customers Exhibit Number 31 was marked
14  for identification.)
15          MS. CHAITMAN:  I'm up to Exhibit 31, and
16  this is the expert report of Bill Feingold.  That's
17  okay.
18          MR. GOLDMAN:  I'll take it easy.
19     Q.   (By Ms. Chaitman)  Okay.  Have you seen
20  this document before?
21     A.   Yes.
22     Q.   Okay.  Do you know Bill Feingold?
23     A.   No.
24     Q.   Did you ever hear about him?
25     A.   No.