**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**TRUSTEE'S TWENTY-FIRST INTERIM REPORT**
**FOR THE PERIOD OCTOBER 1, 2018 THROUGH MARCH 31, 2019**

# TABLE OF CONTENTS

(continued)

                                                                                              **Page**

I.      EXECUTIVE SUMMARY ...................................................................................1

II.     BACKGROUND ................................................................................................3

III.    FINANCIAL CONDITION OF THE ESTATE ................................................3

IV.     CLAIMS ADMINISTRATION ..........................................................................4

        A.     Claims Processing ...................................................................................4

               i.      Customer Claims ...........................................................................4

               ii.     General Creditor Claims ................................................................5

               iii.    The Trustee Has Kept Claimants Informed Of The Status
                       Of The Claims Process....................................................................5

               iv.     The Hardship Program ...................................................................6

        B.     Objections To Claims Determinations.....................................................7

        C.     Settlements Of Customer Claims Disputes ..............................................8

V.      PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA ............8

        A.     Net Equity Dispute...................................................................................8

        B.     Time-Based Damages ............................................................................10

        C.     "Customer" Definition ...........................................................................11

        D.     Inter-Account Transfers ........................................................................13

        E.     Profit-Withdrawal Issue ........................................................................14

VI.     LITIGATION ...................................................................................................15

        A.     The District Court—Motions to Dismiss and Related Appeals............15

        B.     Good Faith Actions ...............................................................................15

               i.      Resolution of Good Faith Avoidance Actions ...........................15

               ii.     The 546(e) Appeal .......................................................................16

               iii.    Summary Judgment Motions ........................................................17

                       (a)     South Ferry/Lowrey Motions...........................................17

                       (b)     Michael Mann Motion .....................................................18

               iv.     Motions To Withdraw The Reference ..........................................18

                       (a)     Saren-Lawrence/Nelson Motions.....................................18

                       (b)     Michael Mann Motion .....................................................19

               v.      Trial-Related Motion Practice .....................................................19

                       (a)     Saren-Lawrence Action ...................................................19

                       (b)     Nelson Action .................................................................20

# TABLE OF CONTENTS
(continued)

**Page**

(c)    Michael Mann Action ..................................................21

vi.    Trustee's Motion For Limited Additional Discovery ..............................22

C.    Actions Relating to BLMIS Feeder Funds............................................23

i.    Extraterritoriality....................................................................23

ii.    Limited Discovery Motion........................................................24

iii.    Picard v. ABN AMRO ..........................................................25

iv.    Picard v. ABN AMRO (Ireland) Ltd. (Fortis) ............................27

v.    Picard v. BNP Paribas...........................................................27

vi.    Picard v. Citibank..................................................................28

vii.    Picard v. Natixis...................................................................29

viii.    The HSBC Action................................................................30

ix.    The Luxalpha Action............................................................31

x.    Picard v. Kingate...................................................................32

xi.    Picard v. Fairfield Greenwich.................................................35

xii.    Picard v. Square One............................................................38

D.    Other Bad Faith Actions.................................................................39

i.    Picard v. Avellino..................................................................39

ii.    Picard v. Andrew H. Madoff and Picard v. Mark D. Madoff..................40

iii.    Picard v. Cohmad Sec. Corp. ................................................41

iv.    Picard v. Magnify Inc. ..........................................................42

v.    Picard v. Stanley Shapiro ......................................................43

vi.    Legacy.................................................................................44

VII.    INTERNATIONAL INVESTIGATION AND LITIGATION...........................45

A.    Austria.........................................................................................46

B.    Bermuda.......................................................................................46

C.    BVI.............................................................................................46

D.    Cayman Islands.............................................................................46

E.    England........................................................................................46

F.    France..........................................................................................47

G.    Ireland.........................................................................................47

H.    Israel...........................................................................................47

I.    Liechtenstein................................................................................47

# TABLE OF CONTENTS

(continued)

**Page**

|  |  |  |  |
|---|---|---|---|
| | J. | Switzerland and Luxembourg | 47 |
| VIII. | | RECOVERIES AND CONTINGENCIES | 48 |
| | A. | Recoveries Accomplished During Prior Report Periods | 48 |
| | B. | Recoveries Accomplished During This Report Period | 48 |
| IX. | | THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS | 49 |
| | A. | The Customer Fund | 49 |
| | B. | The General Estate | 50 |
| X. | | FEE APPLICATIONS AND RELATED APPEALS | 51 |
| | A. | Objections to Prior Fee Applications | 51 |
| | B. | Twenty-Eighth Fee Application | 51 |
| | C. | Twenty-Ninth Fee Application | 52 |
| XI. | | CONCLUSION | 53 |

TO THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the Chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and collectively, the "Debtors"), respectfully submits his Twenty-First Interim Report (this "Report") pursuant to SIPA § 78fff-1(c) and this Court's Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief entered on December 23, 2008 (the "Claims Procedures Order") (ECF No. 12).[2] Pursuant to the Claims Procedures Order, the Trustee shall file additional interim reports every six (6) months. This Report covers the period between October 1, 2018 and March 31, 2019 (the "Report Period").

## I.    EXECUTIVE SUMMARY

1.    The Trustee has worked tirelessly for over ten years to recover customer property and distribute it to BLMIS customers who have not fully recovered the money they deposited with BLMIS. Through pre-litigation and other settlements, the Trustee has successfully recovered or reached agreements to recover, nearly $13.375 billion through March 31, 2019.

2.    On January 22, 2019, this Court approved the Trustee's tenth allocation and distribution to customers, in which the Trustee allocated more than $515 million to the Customer Fund. On February 22, 2019, the Trustee distributed approximately $464 million on allowed claims relating to 880 accounts, or 2.729% of each customer's allowed claim, unless the claim

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

was fully satisfied.  When combined with the prior nine distributions, and $845.163 million in

advances paid or committed to be paid by the Securities Investor Protection Corporation

("SIPC"),[3] the Trustee has distributed approximately $12.4 billion to BLMIS customers through

the Report Period, with 1,423 BLMIS accounts fully satisfied.  The 1,423 fully satisfied accounts

represent more than 62% of accounts with allowed claims, demonstrating that the Trustee has

made significant progress in returning customer property to BLMIS customers.   All allowed

customer claims up to $1.49 million have been fully satisfied.  See discussion *infra* in Section

IX.

3.    The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP

("B&H"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various special

counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel"), continued to

litigate hundreds of individual cases before this Court, the United States District Court for the

Southern District of New York (the "District Court"), the United States Court of Appeals for the

Second Circuit (the "Second Circuit"), the Supreme Court, and dozens of international courts.

4.    This Report is meant to provide an overview of the efforts of the Trustee and his

team of professionals in unwinding the largest Ponzi scheme in history.  This fraud involved

many billions of dollars and thousands of people and entities located across the world.   The

Trustee continues to work diligently to coordinate the administration, investigation, and litigation

to maximize recoveries and efficiencies and reduce costs.

---

[3] SIPC has advanced approximately $844.268 million through the Report Period to the Trustee to pay allowed claims.  The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

5.      All Interim Reports, along with a docket and substantial information about this liquidation proceeding, are located on the Trustee's website, www.madofftrustee.com (the "Trustee Website").

## II.      BACKGROUND

6.      The Trustee's prior interim reports, each of which is fully incorporated herein, have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.[4]

## III.      FINANCIAL CONDITION OF THE ESTATE

7.      No administration costs, including the compensation of the Trustee, his counsel, and his consultants, are being, or have been, paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers with allowed claims.  Rather, the fees and expenses of the Trustee, his counsel and consultants, and administrative costs incurred by the Trustee are paid through administrative advances from SIPC.  These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has obtained or will obtain.  Thus, recoveries from litigation, settlements, and other means are available in their entirety for the satisfaction of allowed customer claims.

---

[4] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report") (ECF No. 4529); October 1, 2011 to March 31, 2012 (the "Seventh Interim Report") (ECF No. 4793); April 1, 2012 to September 30, 2012 (the "Eighth Interim Report") (ECF No. 5066); October 1, 2012 to March 31, 2013 (the "Ninth Interim Report") (ECF No. 5351); April 1, 2013 to September 30, 2013 (the "Tenth Interim Report") (ECF No. 5554); October 1, 2013 to March 31, 2014 (the "Eleventh Interim Report") (ECF No. 6466); April 1, 2014 to September 30, 2014 (the "Twelfth Interim Report") (ECF No. 8276); October 1, 2014 through March 31, 2015 (the "Thirteenth Interim Report") (ECF No. 9895); April 1, 2015 through September 30, 2015 (the "Fourteenth Interim Report") (ECF No. 11912); October 1, 2015 through March 31, 2016 (the "Fifteenth Interim Report") (ECF No. 13184); April 1, 2016 through September 30, 2016 (the "Sixteenth Interim Report") (ECF No. 14347); October 1, 2016 through March 31, 2017 (the "Seventeenth Interim Report") (ECF No. 15922); April 1, 2017 through September 30, 2017 (the "Eighteenth Interim Report") (ECF No. 16862); October 1, 2017 through March 31, 2018 (the "Nineteenth Interim Report") (ECF No. 17555); and April 1, 2018 through September 30, 2018 (The "Twentieth Interim Report") (ECF No. 18146).

8.      A summary of the financial condition of the estate as of March 31, 2019 is provided in Exhibit A attached hereto.

9.      This summary reflects cash of $16,594,530.74, short term investments, money market deposit accounts and other investments, including alternative investments received in connection with the Chais settlement of $604,495,772.00, and short-term United States Treasuries in the amount of $990,159,713.00.  *See* Exhibit A, page 3, note (3) and page 5, notes (5) and (6).

10.      As detailed in Exhibit A, as of March 31, 2019, the Trustee requested and SIPC advanced $2,624,514,163.09, of which $844,267,577.35 was used to pay allowed customer claims up to the maximum SIPA statutory limit of $500,000 per account, and $1,780,246,585.74 was used for administrative expenses.  *See* Exhibit A, page 1.

## IV.      CLAIMS ADMINISTRATION

### A.      Claims Processing

#### i.      Customer Claims

11.      During the Report Period, the Trustee allowed $244,703.37 in customer claims. This brings the total amount of allowed claims as of March 31, 2019 to $17,644,141,194.99.  The Trustee has paid or committed to pay $845,162,577.35 in cash advances from SIPC.  This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

12.      As of March 31, 2019, there were 30 claims relating to 22 accounts that were "deemed determined," meaning the Trustee has instituted litigation against those accountholders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by

4

settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### ii.    General Creditor Claims

13.    As of March 31, 2019, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 428 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265.4 million.  At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii.    The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process

14.    Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, from both claimants and their representatives.

15.    The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public regarding the ongoing recovery efforts and the overall liquidation.  In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution

page, an FAQs page, and a timeline of important events.  The Trustee Website is monitored and updated on a daily basis.

16.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants.  As of March 31, 2019, the Trustee and his professionals had received and responded to more than 7,100 e-mails via the Trustee Website from BLMIS customers and their representatives and fielded thousands of calls from claimants and their representatives.

17.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that customers are as informed as possible about various aspects of the BLMIS proceeding.

### iv.     **The Hardship Program**

18.     This liquidation has offered two different Hardship Programs to former BLMIS customers, both of which are detailed in prior reports along with statistics regarding how many customers have availed themselves of the program. *See* Trustee's Twentieth Interim Report, ECF No. 18146. As of March 31, 2019, there were 7 Hardship Applications still under review and 65 that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement.

19.     The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee through the use of the Hotline, and the Trustee urges customers to continue using this resource and the Hardship Program if they believe they qualify.  Further information and applications are available on the Trustee Website.

B.    **Objections To Claims Determinations**

20.    As of March 31, 2019, 1,838 docketed objections (which exclude withdrawn objections and include duplicates, amendments, and supplements) had been filed with the Court. These objections relate to 3,391 unique claims and 796 accounts. As of March 31, 2019, 324 docketed objections (related to 381 unique claims and 299 accounts) remained.

21.    The following objections, among others, have been asserted: Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with BLMIS, the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method," claimants should receive interest on deposited amounts, the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments, claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits, each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account, and there is no legal basis for requiring the execution of a Assignment and Release prior to prompt payment of a SIPC advance.

22.    The Trustee departed from past practice in SIPA proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

23.    As part of his ongoing efforts to resolve pending objections, counsel for the Trustee has continued investigating and analyzing objections of claimants to the Trustee's determination of their claims. During this extensive review of the facts unique to each claimant, the Trustee has identified circumstances that require resolution by the Bankruptcy Court. Prior

disputes are described in the Trustee's previous reports. During this Report Period, the Trustee engaged in discussions and exchanged documents with counsel for net winners Ronald Joseph and (Marie) Elsie Joseph. The Trustee provided the Josephs with additional support for the claims determinations in response to their assertions that the calculation does not account for one or more deposits. The Josephs' counsel has provided additional documentation, but it does not provide sufficient support to change the determination. The Trustee is in further communications with the Josephs regarding possible withdrawal of the claims objections prior to presenting to the Bankruptcy Court for resolution.

## C.    Settlements Of Customer Claims Disputes

24.    As of March 31, 2019, the Trustee had reached agreements relating to 1,056 accounts and with the IRS (which did not have a BLMIS account).  These litigation, pre-litigation, and avoidance action settlements allowed the Trustee to avoid the litigation costs that would have otherwise been necessary.

## V.    PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA

## A.    Net Equity Dispute

25.    For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method.  Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

26.    On August 16, 2011, the Second Circuit affirmed this Court's decision and the Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee to discharge claims for securities under SIPA "upon the false premise that customers' securities

8

positions are what the account statements purport them to be." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011) (the "*Net Equity Decision*"). Any calculation other than the Net Investment Method would "aggravate the injuries caused by Madoff's fraud." *Id*. at 235. Instead, the Net Investment Method prevents the "whim of the defrauder" from controlling the process of unwinding the fraud. *Id*.

27.     Under the *Net Equity Decision*, the relative position of each BLMIS customer account must be calculated based on "unmanipulated withdrawals and deposits" from its opening date through December 2008. *Id*. at 238. If an account has a positive cash balance, that accountholder is owed money from the estate. As a corollary, if an account has a negative cash balance, the accountholder owes money to the estate. Both the recovery and distribution of customer property in this case are centered on the principle that the Trustee cannot credit "impossible transactions." *Id*. at 241. If he did, then "those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id*. at 238.

28.     The Second Circuit found, "in the context of this Ponzi scheme—the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims unfairly ahead of others.'" *Id*. at 242 n.10 (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.*), 263 B.R. 406, 463 (S.D.N.Y. 2001)). Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of

9

Madoff's fictitious trades at the expense of the other class of customers—the "net losers," or those who have yet to recover their initial investment.

29.    Finally, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money entrusted to Madoff for the purpose of making investments." *Id*. at 240.    Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would create 'potential absurdities.'" *Id*. at 241 (quoting *In re New Times Sec. Serv., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)).    Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id*. at 235.

30.    A petition for panel rehearing, or, in the alternative, for rehearing *en banc* was denied.    *Sterling Equities Assoc. v. Picard*, Adv. No. 10-2378 (2d Cir.) (ECF Nos. 505, 537, 551). Three petitions for certiorari were filed with the Supreme Court, which were denied.    *Ryan v. Picard*, 133 S. Ct. 24 (2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012).    Certiorari was also dismissed with respect to one appeal.    *Sterling Equities Assoc. v. Picard*, 132 S. Ct. 2712 (2012).

## B.    Time-Based Damages

31.    Following the litigation regarding the Net Investment Method, the Trustee filed a motion to affirm his net equity calculations and denying requests for "time-based damages." (ECF Nos. 5038, 5039).    The Trustee took the position that customers were not entitled to an inflation-based adjustment to their allowed customer claims.    This Court agreed.    *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff)*, 496 B.R. 744 (Bankr. S.D.N.Y. 2013) (the "Time-Based Damages Decision"); see also ECF No. 5463.

32.    On February 20, 2015, the Second Circuit affirmed the Bankruptcy Court's

decision, holding that "SIPA's scheme disallows an inflation adjustment as a matter of law." *See*

*In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 80, 82 (2d Cir. 2015).  The Court also held

that "an interest adjustment to customer net equity claims is impermissible under SIPA's

scheme."  *Id.* at 83.

33.    Under the Second Circuit's decision, a customer's net equity claim, calculated in

accordance with the *Time-Based Damages Decision*, will not be adjusted for inflation or interest.

The Second Circuit explained that "an inflation adjustment goes beyond the scope of SIPA's

intended protections and is inconsistent with SIPA's statutory framework."  *Id.* at 79.  Nor does

SIPA provide for compensation related to any opportunity cost of the use of such money during

the pendency of the liquidation proceedings.  *Id.* at 80.  While SIPA operates to "facilitate the

proportional distribution of customer property actually held by the broker," *id.* at 81, "the Act . . .

restores investors to what their position would have been in the absence of liquidation."  *Id.* at

79.  For similar reasons, the Second Circuit rejected the request of one claimant who sought an

adjustment for interest, in addition to inflation.  *Id.* at 83.

34.    The Supreme Court denied the petition for certiorari filed.

C.    **"Customer" Definition**

35.    In this liquidation, the Trustee discovered that many claimants did not invest

directly with BLMIS, but through an intermediary such as a "feeder fund."  The Trustee's

position consistently has been that only those claimants who maintained an account at BLMIS

constitute "customers" of BLMIS, as defined in § 78*lll*(2) of SIPA.  Where it appeared that

claimants did not have an account in their names at BLMIS, the Trustee denied their claims for

securities and/or a credit balance on the ground that they were not customers of BLMIS under

SIPA.

36.     On June 28, 2011, the Court issued a decision affirming the Trustee's denial of these claims.  (ECF Nos. 3018, 4193, 4209); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011).  The Court found that the objecting claimants invested in, not through, the feeder funds, and had no individual accounts at BLMIS.  It was the feeder funds who entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased ownership interests in the feeder funds.  The Court held that, absent a direct broker-dealer relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits.

37.     Judge Lifland put it succinctly: the objecting-claimants who invested in sixteen feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received no account statements or other communications from BLMIS and had no transactions reflected on the books and records of BLMIS . . . ." *Id.* at 290.

38.     On January 4, 2012, Judge Cote affirmed the Bankruptcy Court decision. *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012).  In that decision, Judge Cote determined in light of SIPA, the "most natural reading of the 'customer' definition excludes persons like the appellants who invest in separate third-party corporate entities like their feeder funds that in turn invest their assets with the debtor." *Id.* at 123.

39.    On February 22, 2013, the Second Circuit affirmed the decisions of the District Court and the Bankruptcy Court. *See Kruse v. Sec. Investor Prot. Corp., Irving H. Picard,* 708 F.3d 422 (2d Cir. 2013). No petitions for certiorari were filed.

**D.    Inter-Account Transfers**

40.    The Trustee has maintained, and the Second Circuit affirmed, that the "cash-in, cash-out" methodology is appropriate for calculating a customer's net equity in this case. The *Net Equity Decision*, however, did not expressly address the treatment of transfers between BLMIS accounts, which the Trustee refers to as "Inter-Account Transfers." Many customers maintained more than one BLMIS account, and transferred funds between such accounts. Other customers transferred funds to the accounts of other BLMIS customers.

41.    On December 8, 2014, the Bankruptcy Court issued a decision upholding the Trustee's methodology for calculating inter-account transfers. ECF No. 8680; *see Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). Judge Bernstein explained that if he adopted the objecting parties' arguments, "computing the balance in the transferor's account bloated by fictitious profits increases the transferee's claim to the customer property pool allocable to all Madoff victims by artificially increasing the transferee's net equity. This result aggravates the injury to those net losers who did not receive transfers of fictitious profits by diminishing the amount available for distribution from the limited pool of customer property." *Id.* at 53. The order memorializing Judge Bernstein's written decision was entered on December 22, 2014. (ECF No. 8857).

42.    On January 14, 2016, the District Court affirmed. Judge Engelmayer held that the Inter-Account Transfer Method "properly applies the Second Circuit's *Net Equity Decision* and is not otherwise prohibited by law;" in fact, he found that "the method is superior as a matter of law, and not 'clearly inferior,'" to the alternatives proposed by the appellants. *In re BLMIS*, 15

Civ. 1151(PAE), 2016 WL 183492 *1, at *26 (S.D.N.Y. Jan. 14, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238 n.7 (Bankr. S.D.N.Y.).

43.     On June 1, 2017, the Second Circuit issued a summary order agreeing with the lower courts. Rejecting each of the appellants' arguments in turn, and citing its Net Equity Decision, the Order confirms that the Second Circuit "continue[s] to refuse . . . to 'treat[] fictitious and arbitrarily assigned paper profits as real' and to give 'legal effect to Madoff's machinations.'"  *In re Bernard L. Madoff Inv. Sec., LLC*, 16-413-bk(L), 2017 WL 2376567, *3 (2d Cir. Jun. 1, 2017).

44.     No petitions for certiorari were filed.

**E.     Profit-Withdrawal Issue**

45.     Several customers, including claimant Mr. Aaron Blecker, objected to the Trustee's denial of their net equity claims because they disputed whether they received funds that appear to be identified on BLMIS customer account statements as "PW," or "Profit Withdrawals."

46.     Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions. Accordingly, the Trustee instituted an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper.  (ECF No. 10266).

47.     Following extensive briefing, discovery, and motion practice, the Court held a trial on the matter on January 19, 2018.   After hearing testimony from the Trustee's professionals, Mr. Blecker's son, and BLMIS employees, and consideration of the BLMIS books and records offered into evidence, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS

14

customer statement indicated that the customer received a cash distribution in the amount of the

PW Transaction.  Because claimant Mr. Blecker failed to provide any credible, contrary evidence

that the "PW" Transactions on his customer statements were not received, he failed to sustain his

burden of proving the amount of his customer claims. *Sec. Inv'r Prot. Corp. v. Bernard L.*

*Madoff Inv. Sec. LLC*, 592 B.R. 513 (Bankr. SDNY 2018).

48.     An appeal was taken to the District Court, which is *sub judice*.

## VI.    LITIGATION

49.     The Trustee is actively involved in dozens of litigations and appeals.  This Report

does not discuss each of them in detail but instead summarizes those matters with the most

activity during the Report Period.

### A.      The District Court—Motions to Dismiss and Related Appeals

50.     Upon the motions of hundreds of defendants, the District Court withdrew the

reference in numerous cases and heard numerous motions to dismiss.  A total of 485 motions to

withdraw and 424 joinders were filed, altogether implicating a total of 807 adversary

proceedings.  The District Court consolidated briefing and argument on certain common issues

raised in the motions to withdraw (the "Common Briefing"), which are discussed in prior reports.

*See* Truste's Twentieth Interim Report, ECF No. 18146. The District Court has since decided the

Common Briefing issues and returned all proceedings to the Bankruptcy Court.

### B.      Good Faith Actions

#### i.       Resolution of Good Faith Avoidance Actions

51.     At the beginning of the Report Period, there were 160 active good faith avoidance

actions. 17 were closed during the Report Period, leaving a total of 143 open good faith

avoidance actions by the end of the Report Period.  In certain avoidance actions, the Trustee

entered into mediations, considered hardship applications and, where appropriate, agreed to

15

dismiss certain defendants from the actions. During the Report Period, two actions were dismissed in the Trustee's discretion and one action was dismissed due to judgment secured by the Trustee. In addition, the Trustee's professionals engaged in settlement negotiations, which led to 14 cases entering into documented settlements during the Report Period.

ii.    **The 546(e) Appeal**

52.    On April 27, 2012 the District Court entered an order dismissing certain claims in 78 adversary proceedings. *See Picard v. Greiff*, Adv. No. 11-03775 (BRL) (Bankr. S.D.N.Y.); *Picard v. Blumenthal*, Adv. No. 11-04293 (BRL) (Bankr. S.D.N.Y.); *Picard v. Goldman*, Adv. No. 11-04959 (BRL) (Bankr. S.D.N.Y.); and *Picard v. Hein*, Adv. No. 11-04936 (BRL) (Bankr. S.D.N.Y.). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. April 30, 2012), (ECF No. 57). These claims included preferences under § 547 of the Bankruptcy Code, constructive fraudulent transfers under § 548(a)(l)(B) of the Bankruptcy Code, and actual and constructive fraudulent transfers or fraudulent conveyances under provisions of the New York Debtor & Creditor Law incorporated by § 544(b) of the Bankruptcy Code (the "Dismissed Claims"). The Dismissed Claims did not include those claims proceeding under § 548(a)(l)(A) and § 550(a) of the Bankruptcy Code.

53.    On April 30, 2012, the District Court entered a decision explaining the reasons for its prior order. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715 (Bankr. S.D.N.Y. 2012). On May 15, 2012, the District Court entered a Supplemental Opinion and Order to make explicit that § 546(e) of the Bankruptcy Code applies to the Trustee's claims for avoidance and recovery of preferential transfers under § 547 of the Bankruptcy Code. *See* Supplemental Opinion and Order, No. 12 MC 0115 (JSR) (ECF No. 101).

54.    On December 8, 2014, the Second Circuit affirmed the District Court's decision finding that section 546(e) of the Bankruptcy Code bars the Dismissed Claims. (*Picard v. Ida*

*Fishman Revocable Trust, et al.,* Case Nos. 12-2497, 12-2500, 12-2557, 12-2616, 12-3422, 12-3440, 12-3582 and 12-3585 (2d. Cir., Dec. 8, 2014) (ECF Nos. 355, 346, 415, 357, 372, 315, and 320, respectively).

55.    On June 22, 2015, the U.S. Supreme Court denied the two petitions for certiorari filed by the Trustee and SIPC.  (*Picard v. Ida Fishman Revocable Trust, et al.,* Case No. 14-1129 (U.S. Jun. 22, 2015); (*Picard v. Ida Fishman Revocable Trust, et al.,* Case Nos. 12-2497, 12-2500, 12-2557, 12-2616, 12-3422, 12-3440, 12-3582 and 12-3585 (2d. Cir., Jun. 22, 2015) (ECF Nos. 370, 361, 430, 372, 387, 330 and 335, respectively).

    **iii.**    **Summary Judgment Motions**

        **(a)**    **South Ferry/Lowrey Motions**

56.    Prior to the Report Period, the Trustee entered into separate stipulations with (1) Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson, and Zev Wolfson, (2) Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and Abraham Wolfson, (3) Defendant United Congregations Mesora, and (4) James Lowrey, setting a schedule for summary judgment motion practice (collectively, the "South Ferry/Lowrey Actions").  *See* No. 10-04488, ECF No. 77; No. 10-04350, ECF No. 86; No. 10-05110, ECF No. 53; No. 10-04387, ECF No. 71.

57.    The Trustee and the defendants in the South Ferry/Lowrey Actions each moved for summary judgment.  On March 22, 2018, the Bankruptcy Court issued its Report and Recommendation to the District Court granting the Trustee's motion for summary judgment and denying the South Ferry/Lowrey Actions' motions for summary judgment. *See In re Bernard L. Madoff [Good Faith Summary Judgment]*, Adv. Pro. No. 08-01789 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. March 22, 2018).

17

58.    On February 7, 2019, District Court Judge Engelmayer issued his ruling adopting the Bankruptcy Court's Report and Recommendation, granting summary judgment to the Trustee, and denying summary judgment to the defendants in the South Ferry/Lowrey Actions. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB), 2019 WL 479185 (S.D.N.Y. Feb. 7, 2019).

59.    Defendants filed their notice of appeal to the Second Circuit on February 19, 2019.  *See* No. 18-cv-05381, ECF No. 32.  Defendants subsequently posted the requisite bond on April 9, 2019.  *Id.,* ECF No. 37.

### (b)    Michael Mann Motion

60.    On December 21, 2018, the Trustee filed a motion for summary judgment. *See* No. 10-04390, ECF Nos. 140-143.  On February 22, 2019, the defendants filed their opposition brief.  *See* No. 10-04390, ECF Nos. 158-160. On March 27, 2019, the Trustee filed his reply brief.  *See* No. 10-04390, ECF Nos. 164, 166-167.  Oral argument before the Bankruptcy Court was held on April 24, 2019.

### iv.    Motions To Withdraw The Reference

### (a)    Saren-Lawrence/Nelson Motions

61.    Prior to the Report Period, on July 7, 2017, counsel for defendants in three actions, *Picard v. Saren Lawrence,* No. 10-04898, *Picard v. Carol Nelson, et al.,* No. 10-04377, and *Picard v. Carol Nelson,* No. 10-04658, moved to withdraw the reference to the Bankruptcy Court on their asserted right to a jury trial before the District Court. *See* No. 17-cv-05157, ECF No. 1. On May 15, 2018, District Court Judge George B. Daniels denied the motions to withdraw.

62.     On May 29, 2018, defendants filed a motion for interlocutory review of Judge Daniels' decision. *See* No. 17-cv-05157, ECF Nos. 20-21. On September 11, 2018, Judge Daniels denied the motion for reconsideration. *See* No. 17-cv-05157, ECF No. 30.

63.     On September 26, 2018, defendants filed a petition for a writ of mandamus in the Second Circuit, pursuant to 28 U.S.C. § 1651 and Fed. R. App. P. 21, requesting that the Second Circuit compel Judge Daniels to withdraw the reference. On February 20, 2019, the Second Circuit denied the mandamus petition. *See* No. 18-2840, ECF No. 34.

**(b)     Michael Mann Motion**

64.     On October 26, 2018, counsel for defendants in *Picard v. BAM L.P.,* No. 10-04390, moved to withdraw the reference to the Bankruptcy Court on their asserted right to a jury trial before the District Court. *See* No. 18-cv-09916, ECF No. 1. On December 27, 2018, the Trustee filed his opposition brief. *See* No. 18-cv-09916, ECF No. 17. On January 16, 2019, the defendants filed their reply brief. *See* No. 18-cv-09916, ECF No. 22. The matter remains pending before District Court Judge Vernon S. Broderick.

**v.     Trial-Related Motion Practice**

**(a)     Saren-Lawrence Action**

65.     On October 16, 2018, the Bankruptcy Court issued an order setting the trial in *Picard v. Saren Lawrence,* No. 10-04898, to begin on February 20, 2019. *See* No. 10-04898, ECF No. 150 (the "Saren-Lawrence Action").

66.     On December 5, 2018, counsel for defendants Helene Saren-Lawrence moved to adjourn the trial dates *sine die*, to which the Trustee opposed on December 12, 2018. *See* No. 10-04898, ECF Nos. 156-58, 160-61 (the "Motion to Adjourn").  Counsel for the defendants filed a reply brief on December 14, 2018. *See* No. 10-04898, ECF No. 163.

67.    On December 19, 2018, the Bankruptcy Court heard arguments regarding the Order to Show Cause, and the Motion to Adjourn.  The Bankruptcy Court subsequently filed on January 2, 2019 its Memorandum Decision and Order Denying Motion to Adjourn Trials *Sine Die*.  *See* No. 10-04898, ECF No. 167.

68.    On January 11, 2019, counsel for Saren-Lawrence filed a letter motion seeking to adjourn the trial due to Saren-Lawrence's current medical condition, and the Trustee responded on January 18, 2019, consenting to adjournment of the trial to allow Saren-Lawrence to submit an updated hardship application with supporting documentation. On February 22, 2019, an order was entered adjourning the trial for the Saren-Lawrence Action, permitting Saren-Lawrence to submit hardship application with supporting documentation by March 1, 2019, and scheduling another pre-trial conference on March 27, 2019.  *See* No. 10-04898, ECF No. 174.

69.    Following the March 27, 2019 pre-trial conference, the Bankruptcy Court issued a bench ruling granting the Trustee permission to file a motion for summary judgment in the Saren-Lawrence Action.  The Trustee's initial brief is due on or by July 12, 2019, Saren-Lawrence is to file her opposition by August 30, 2019, and the Trustee is to file his reply brief by September 30, 2019.  *See* No. 10-04898, ECF No. 75.

        **(b)    Nelson Action**

70.    On November 15, 2018, the Trustee submitted a letter to the Bankruptcy Court indicating that the parties agreed to set trial in the matter of *Picard v. Carol Nelson*, APN 10-04658 to begin on May 8, 2019, but the parties could not agree on a trial date for *Picard v. Carol Nelson, et al.*, No. 10-04377 involving both Carol Nelson and her husband Stanley Nelson (together the "Nelson Actions"). Counsel for the Nelsons also declined to agree to a consolidated trial of the Nelson Actions.  *See Nelson*, No. 10-04658, ECF No. 114; No. 10-04377, ECF No. 108.

20

71.    On November 28, 2018, the Bankruptcy Court issued an oral order to show cause why the Nelson Actions should not be consolidated for trial pursuant to Federal Rule of Civil Procedure Rule 42. On December 5, 2018, counsel for the Nelsons filed their response, opposing consolidation, and on December 12, 2018, the Trustee filed his response, in favor of consolidation. *See* No. 10-04658, ECF Nos. 118, 121; No. 10-04377, ECF Nos. 113, 116.

72.    On December 5, 2018, counsel for defendants Carol Nelson and Stanley Nelson moved to adjourn the trial *sine die*, to which the Trustee opposed on December 12, 2018. *See* No. 10-04658, ECF Nos. 117-18, 120; No. 10-04377, ECF Nos. 112-13, 115 (the "Motion to Adjourn"). Counsel for the defendants filed a reply brief on December 14, 2018. *See* No. 10-04658, ECF No. 123; No. 10-04377, ECF No. 118.

73.    On December 19, 2018, the Bankruptcy Court heard arguments regarding the Order to Show Cause, and the Motion to Adjourn, and issued a bench ruling for the Nelson Actions to be consolidated and scheduled for trial beginning May 8, 2019. *See* No. 10-04658, ECF No. 130; No. 10-04377, ECF No. 123. The Bankruptcy Court subsequently filed on January 2, 2019 its Memorandum Decision and Order Denying Motion to Adjourn Trials *Sine Die*. *See* No. 10-04658, ECF No. 127; No. 10-04377, ECF No. 126.

### (c)    Michael Mann Action

74.    On September 28, 2018, the Bankruptcy Court issued an Order setting the trial in the Mann Action to start on December 3, 2018. *See* No. 10-04390, ECF No. 108. In response, the defendants filed their motion to withdraw, discussed above, on October 26, 2018, and on November 20, 2018, moved to stay the December 3 trial, pending a ruling from the District Court on the otion to withdraw. *See* No. 10-04390, ECF Nos. 114, 121-122. The Trustee filed his opposition to the defendants' motion to stay the trial on November 27, 2018, and oral arguments were held on November 28, 2018. *See* No. 10-04390, ECF Nos. 127-28, 130.

21

75.    At the November 28, 2018 hearing, the Bankruptcy Court offered the defendants the opportunity to make an oral motion to withdraw their customer claims and objections to the Trustee's determinations of those claims, and the Court granted the motion, which was memorialized in the subsequent order withdrawing their claims and objections filed with prejudice on December 20, 2018.  *See* No. 10-04390, ECF No. 138.  However, the order did not determine the Bankruptcy Court's jurisdiction over the Mann Action, for which the parties provided separate briefing on December 5, 2018 and December 12, 2018, respectively.  *See* No. 10-04390, ECF Nos. 132, 137.  On January 18, 2019, the Bankruptcy Court issued a decision holding that the Court has equitable jurisdiction over the Mann Action despite the defendants' withdrawal of their customer claims and objections (the "Jurisdictional Decision").  *See* No. 10-04390, ECF No. 148.

76.    On January 25, 2019, the defendants moved for leave to appeal the Jurisdictional Decision.  *See* No. 10-04390, ECF Nos. 149-150.  The Trustee opposed the motion on February 8, 2019.  *See* No. 10-04390, ECF Nos. 155-156.  On February 19, 2019, the defendants filed their reply brief in further support of their motion for leave to appeal the Jurisdictional Decision.  *See* No. 19-cv-00812, ECF Nos. 6-7.  The motion for leave remains pending before District Court Judge Vernon S. Broderick.

### vi.    **Trustee's Motion For Limited Additional Discovery**

77.    On September 21, 2018, the Trustee filed his Motion and Memorandum of Law For Limited Additional Discovery Based on Prior Orders Authorizing Deposition of Bernard L. Madoff (the "Motion For Limited Additional Discovery") in at least 92 of his avoidance actions, all of which had participated in the Madoff deposition.  *See* No. 08-01789, ECF No. 18015.

78.    On February 15, 2019, the Bankruptcy Court issued the Memorandum Decision Regarding Trustee's Motion for Additional Discovery, and on March 6, 2019, entered its Order

Granting in Part and Denying in Part Trustee's Motion For Limited Additional Discovery. Specifically, the Bankruptcy Court stated that (1) in those avoidance actions in which fact discovery was closed, the Trustee may depose one of the identified FBI agents on or by May 30, 2019; (2) in those avoidance actions in which fact discovery remains open, the Trustee may depose former BLMIS employees Annette Bongiorno, Daniel Bonventre, and Joann Crupi; and (3) "the Chaitman Defendants had previously issued subpoenas to numerous BLMIS traders which were held in abeyance pending the conclusion of the Madoff Deposition. (*See* Order Implementing the Court's May 31, 2017 and June 29, 2017 Bench Rulings on Multiple Discovery Disputes, dated July 26, 2017, at ¶¶ 2-3 (ECF Doc. # 16459)). The Chaitman Defendants may now proceed with those subpoenas to the extent they were timely served." *See* No. 08-01789, ECF Nos. 18480, 18537.

## C.    Actions Relating to BLMIS Feeder Funds

### i.    Extraterritoriality

79.    On July 6, 2014, the District Court held that certain of the Trustee's claims were barred by the presumption against extraterritoriality, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court (the "District Court ET Decision"). *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

80.    On November 22, 2016, this Court issued a decision granting in part and denying in part the defendants' motion to dismiss on extraterritoriality (the "Bankruptcy Court ET Decision"). *Sec. Inv'r Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495). The Trustee appealed the orders dismissing claims directly to the Second

23

Circuit. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L) (ECF No. 1).

81.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court and Bankruptcy Court. The Second Circuit held that the presumption against exterritoriality and international comity do not limit the reach of section 550(a)(2) of the Bankruptcy Code, enabling the Trustee to recover property from certain subsequent transferees. Accordingly, the Second Circuit vacated the judgments of the Bankruptcy Court and remanded for further proceedings. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019).

82.    On March 11, 2019, the defendants filed a petition for panel rehearing and rehearing *en banc. Id.,* (ECF 1320). The Second Circuit denied the petition on April 3, 2019. *Id.,* (ECF 1408).

83.    On April 8, 2019, the defendants filed a motion to stay the issuance of the mandate pending the filing of a petition for a writ of certiorari. *Id.,* (ECF 1413). The Trustee filed an opposition. *Id.,* (ECF 1497). The Second Circuit granted the defendants' motion on April 23, 2019. *Id.,* (ECF 1503).

### ii.    Limited Discovery Motion

84.    In view of the altered pleading standards articulated in the *Good Faith Decision*[5] and the *District Court ET Decision,*[6] the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion") in

---

[5] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 516 B.R. 18 (S.D.N.Y. 2014).

[6] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 513 B.R. 222 (S.D.N.Y. 2014).

August 2014.  Mem. of Law on Omnibus Mot., *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Aug. 28, 2014), ECF No. 7827.

85.     In September 2014, at a status conference on the Omnibus Motion, defense counsel argued that pending motions to dismiss based on extraterritoriality should be addressed prior to the Trustee's request for discovery.  The Court agreed and stayed proceedings on the Omnibus Motion until after the extraterritoriality proceedings concluded. *See* Order at ¶ 14, Main Docket, ECF No. 8800 ("December 10 Scheduling Order").

86.     In November 2016, this Court issued the Bankruptcy Court ET Decision. *See* discussion *supra* Section VI(C)(i).

87.     In July 2017, this Court ordered proceedings "solely on the Good Faith Limited Discovery Issue" of the Omnibus Motion.  Order at ¶¶ 1, 4, Main Docket, ECF No. 16428.  On June 9, 2018, this Court denied the Trustee's request for limited discovery concerning good faith. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2018 WL 2734825 (Bankr. S.D.N.Y. June 5, 2018); Order Denying the Trustee's Mot. for Disc., Main Docket (June 19, 2018), ECF No. 17696.

### iii.    Picard v. ABN AMRO

88.     On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.) ("ABN/RBS"), ABN AMRO Incorporated ("ABNI"), Rye Select Broad Market XL Fund, LP ("Rye XL"), and Rye Select Broad Market XL Portfolio Limited ("Rye XL Portfolio").  *Picard v. ABN AMRO Bank N.V.*, No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (the "ABN/RBS Action") (ECF No. 1).

89.     Following the entry of the Extraterritoriality Opinion and Order on July 6, 2014,[7]

the Trustee filed the Omnibus Motion discussed above in Section VI(C)(i). *Picard v. ABN*

*AMRO Bank N.V.*, No. 10-05354 (SMB) (Bankr. S.D.N.Y.) (ECF Nos. 69-71).  The Trustee's

Omnibus Motion sought, among other things, leave to file an amended complaint against the

defendants (the "Leave to Replead Issue").  *Id. See* discussion *supra* Section VI(C)(ii).

90.     On March 3, 2017, in connection with the Bankruptcy Court ET Decision, the

Bankruptcy Court so ordered a stipulated order denying ABN/RBS's motion to dismiss the

complaint and granting the Trustee's motion to amend (the "Extraterritoriality Order").  *Picard*

*v. ABN AMRO Bank N.V.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y.) (ECF No. 117).

91.     On August 14, 2018, the Parties entered into a Tolling Agreement providing for

the dismissal without prejudice of the Trustee's claim seeking to recover approximately $74.6

million in subsequent transfers of BLMIS customer property that ABN/RBS received from Rye

XL Portfolio (the "RBS-Rye XL Portfolio Claim"), subject to the right of the Trustee to reinstate

the RBS-Rye XL Portfolio Claim by filing an amended complaint in accordance with the terms

of the Tolling Agreement.

92.     During the Report Period, B&H attorneys, on behalf of the Trustee, have been

preparing a motion for leave to file a Second Amended Complaint and a proposed Second

Amended Complaint with regard to the Leave to Replead Issue.  The proposed Second Amended

Complaint also will incorporate amendments authorized by the Bankruptcy Court ET Decision[8],

the Extraterritoriality Order and the Tolling Agreement.

---

[7]On July 6, 2014, Judge Rakoff issued a decision indicating that certain of the Trustee's claims were barred under *Morrison*, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

[8] *See* discussion *supra* Section VI(C)(i).

iv.    **Picard v. ABN AMRO (Ireland) Ltd. (Fortis)**

93.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Solutions Bank (Ireland) Limited), ABN Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Solutions Custodial Services (Ireland) Ltd.) (collectively the "ABN (Ireland) Defendants"), Rye Select Broad Market XL Fund, LP, Rye Select Broad Market XL Portfolio Limited.  *Picard v. ABN AMRO (Ireland) Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y. filed Dec. 8, 2010) (SMB) (the "ABN (Ireland) Action").

94.    On January 11, 2019, the Bankruptcy Court so ordered the Stipulation and Order Concerning the Trustee's Motion for Leave to File an Amended Complaint. *Id.* (ECF No. 162).

95.    On February 22, 2019, the Trustee filed the Motion for Leave to File an Amended Complaint. *Id.* (ECF No. 165).

v.    **Picard v. BNP Paribas**

96.    The Trustee has brought several adversary proceedings seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas (Suisse) S.A., BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust Cayman Limited, BGL BNP Paribas Luxembourg S.A., BNP Paribas Securities Services—Succursale de Luxembourg, BNP Paribas Securities Services S.A., and BNP Paribas Securities Corp. (collectively, "BNP Paribas")—who redeemed money from feeder funds that invested with BLMIS. *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y. 2010); *Picard v. Oreades SICAV*, Adv. No. 10-05120

(BRL) (Bank. S.D.N.Y. 2010); and *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457 (BRL) (Bank. S.D.N.Y. 2010).

97.    On September 13, 2018, the parties stipulated, and the Bankruptcy Court so ordered, to dismiss claims to recover subsequent transfers from Ascot Partners, L.P. ("Ascot") to Defendant BNP Paribas Bank & Trust Cayman Limited pursuant to a separate settlement dated July 3, 2018 that the Trustee entered into with Ascot and Gabriel Capital Corp.

98.    On October 3, 2018, the Bankruptcy Court issued its decision granting in part and denying in part the BNP Paribas defendants' motion to dismiss the BNP Paribas action, and the Trustee's (converted) motion for leave to file an amended complaint against the BNP Paribas defendants, and entered its Order on Plaintiff's Motion for Leave to Serve Amended Complaint and the defendants' Motion to Dismiss Amended Complaint on October 17, 2018.

99.    On January 17, 2019, the BNP Paribas defendants filed their answer and defenses to the Trustee's Amended Complaint.

   **vi.    Picard v. Citibank**

100.    On December 8, 2010, the Trustee commenced an action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Limited (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank. *Picard v. Citibank*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y.) (the "Citibank Action").

101.    On December 14, 2018, the Trustee moved for leave to file an amended complaint under Rule 15 of the Federal Rules of Civil Procedure and Rule 7015 of the Federal Rules of

Bankruptcy Procedure. With this motion, the Trustee submitted a proposed amended complaint against Citibank N.A., Citicorp North America, Inc., and Citigroup Global Markets Limited.

102.    In March 2019, B&H attorneys analyzed the defendants' opposition to the Trustee's motion for leave to amend and began preparing the reply brief to be filed in May 2019. B&H attorneys also continued to review documents relevant to the action.

### vii.    Picard v. Natixis

103.    On December 8, 2010, the Trustee commenced an action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank) ("Natixis"), Natixis Financial Products, Inc. ("Natixis FP"), Bloom Asset Holdings Fund ("Bloom"), and Tensyr Ltd. ("Tensyr," and together with Natixis, Natixis FP, and Bloom, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.).

104.    During the Report Period, the Trustee entered stipulations with opposing counsel for the Trustee to file his motion for leave to amend the original Natixis complaint and the related proposed amended complaint. *Id.*, (ECF Nos. 166, 168). On December 28, 2018, the Trustee filed his motion for leave to amend as well as the proposed amended complaint. *Id.*, (ECF Nos. 169-70).

105.    During the Report Period, the Second Circuit issued its opinion regarding extraterritoriality and comity, reversing the Bankruptcy Court's 2016 decision. *In re Picard, Trustee for Liquidation of BLMIS*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *supra* Section VI(C)(i). This Second Circuit decision revived claims against all Natixis Defendants. To give the

Trustee time to analyze the Second Circuit decision, the parties entered a stipulation on February 27, 2019, staying the action for 30 days. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 180).  On March 28, 2019, the parties then entered a stipulation to stay the action until the mandate issues from the Second Circuit and the Bankruptcy Court's jurisdiction over the case is revived.  *Id.*, (ECF No. 181).

### viii.    **The HSBC Action**

106.    On July 15, 2009, the Trustee commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that transferred funds to and from BLMIS.  *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y.) (the "HSBC Action"). After further investigation, the Trustee filed an amended complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS. (ECF No. 35).

107.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate.  ECF Nos. 338, 339, 349, 350, 352, 363.

108.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate. ECF No. 16431.

109.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate. ECF No. 16430.

110.    On October 20, 2017, this Court approved a settlement between the Trustee and Thema International Fund plc. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 482. Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

111.    On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 497. The Trustee's litigation with Alpha Prime is ongoing.

### ix.    The Luxalpha Action

112.    On November 23, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, Access International Advisors LLC along with several of its affiliated entities and individuals, Groupement Financier Ltd., and Luxalpha SICAV (collectively, the "Luxalpha Defendants"). The proceeding seeks the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants, as well as other relief (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

113.    On December 7, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, M&B Capital Advisors Sociedad de Valores S.A. along with several of its affiliated entities and individuals (the "M&B Defendants"), Reliance International Research LLC along with several of its affiliated entities and individuals, Landmark Investment Fund Ireland, and Luxembourg Investment Fund along with its affiliated funds (collectively, the "LIF Defendants"). The proceeding seeks the return of approximately

31

$555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the LIF Defendants, as well as other relief (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

114.    During the Report Period, the Trustee underwent international discovery efforts —including in the Bahamas, the United Kingdom, and other jurisdictions—to obtain other documents related to the Trustee's claims and reviewed and analyzed documents in connection with the Trustee's international discovery efforts.  The Trustee continued to develop his case against the defendants and relevant parties, analyzed evidence, and conducted legal research as to the Trustee's claims.

115.    During the Report Period, the Trustee engaged in mediation and confidential settlement negotiations with a certain defendant.  The Luxalpha Action and LIF Action remain ongoing.

### x.    **Picard v. Kingate**

116.    The Trustee is seeking to avoid and recover over $926,000,000 in initial transfers to the Kingate Funds, and to equitably subordinate their customer claims, on the grounds set forth in the Fourth Amended Complaint filed in *Picard v. Federico Ceretti*, Adv. No. 09-01161 (SMB) (Bankr. S.D.N.Y.) (ECF No. 100).  During the Report Period, the parties devoted substantial time to discovery and resolving discovery-related disputes.

117.    During the Report Period, the Trustee devoted substantial time to deposition discovery of foreign-based witnesses. That process requires that the Trustee first seek the Bankruptcy Court's issuance of a letter of request for assistance from the foreign court.  Upon

the Trustee's separate motions,[9] the Bankruptcy Court entered the following orders issuing a

letter of request to the appropriate foreign judicial authorities for the Trustee to obtain testimony:

    a.  Order dated October 1, 2018 (ECF No. 371), relating to Mr. Julian Henry
        Chapman. The English Court granted the Trustee's application to depose Mr.
        Chapman giving effect to the Bankruptcy Court's letter of request. The Trustee
        deposed Mr. Chapman on January 16, 2019, in London.

    b.  Order dated December 4, 2018 (ECF No. 402), relating to Mr. Antony Clark. The
        English Court granted the Trustee's application to depose Mr. Clark giving effect
        to the Bankruptcy Court's letter of request. The Trustee deposed Mr. Clark on
        February 18, 2019, in London.

118.    The Trustee's motion for the Bankruptcy Court's issuance of a letter of request to

the judicial authority in Bermuda to obtain testimony and documents from Mr. Craig Perry (ECF

No. 373) resulted in a contested matter. The Bankruptcy Court conducted a hearing on the

contested motion on October 31, 2018, and on March 5, 2019, issued a written opinion granting

the motion (ECF No. 405), followed by entry of an Order on March 14, 2019, issuing the letter

of request to the judicial authority in Bermuda (ECF No. 409). The Trustee's and Mr. Perry's

respective counsel then agreed upon a counter-proposed letter of request to the Bermuda judicial

authority, which was approved by the Bankruptcy Court (ECF No. 408). Mr. Perry is scheduled

to be deposed in New York City on May 9, 2019.

119.    On October 18 and 22, 2018, respectively, Mr. Federico Ceretti and Mr. Carlo

Grosso produced documents responsive to the Trustee's document demands made in connection

with the Bankruptcy Court's letters of request issued to the English court. Messrs. Ceretti and

Grosso moved before the High Court of Justice, Queen's Bench Division, in London to set aside

the orders obtained by the Trustee for his depositions of those witnesses. The English Court

rendered its final judgment on October 16, 2018, declining to set aside its orders but granting

---

[9] On November 1, 2018, the Trustee also moved for issuance of a letter of request to obtain testimony from Mr.
Alexander Guy Ingram (ECF No. 387), which was subsequently withdrawn on December 4, 2018 (ECF No. 398).

other relief.  On November 1, 2018, the Trustee cross-examined Mr. Federico Ceretti following his direct examination by the Joint Liquidators for the Kingate Funds.  The Trustee conducted his direct examination of Mr. Ceretti the following day under the conditions set by the English Court.  The Trustee cross-examined Mr. Carlo Grosso on November 5, 2018 and conducted the direct examination of Mr. Grosso the following day subject to the limitations imposed by the English Court.

120.    On December 4, 2018, the Trustee deposed Mr. Scott Watson-Brown in Bermuda.

121.    Deposition discovery of U.S.-based witnesses also continued during the Report Period.  On October 26, 2018, the Trustee deposed Mr. Dan Voth in Raleigh, North Carolina. On February 25, 2019, the Trustee deposed Mr. Michael Tannenbaum in New York City.

122.    On February 20, 2019, the Bankruptcy Court so ordered the Amendment to the Fourth Amendment to Case Management Report (ECF No. 404) agreed to by the Trustee and the Joint Liquidators for the Kingate Funds, which extended the close of fact discovery as between the Trustee and the Kingate Funds to March 29, 2019, subject to further extensions as agreed by the parties or ordered by the Court.  The Fourth Amendment to Case Management Report was further amended on March 27, 2019, when the Bankruptcy Court so ordered the Second Amendment agreed to by the Trustee and the Joint Liquidators for the Kingate Funds further extending to and including June 30, 2019, the close of fact discovery, the deadline for responding to interrogatories, and requests for admissions.  All other dates in the Fourth Amendment to Case Management Report remain the same.

123.    On March 15, 2019, the Kingate Funds' Joint Liquidators produced additional bank statements missing from the initial production.

124.    Throughout the Report Period, in addition to foreign counsel, the Trustee's counsel continued to work with the Trustee's consultants in analyzing documents obtained through discovery that further support the Trustee's claims in the Fourth Amended Complaint against the Kingate Funds.

    **xi.**    **Picard v. Fairfield Greenwich**

125.    On May 18, 2009, the Trustee commenced an action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009).   On July 20, 2010, the Trustee filed an Amended Complaint in the action adding as defendants individuals and entities associated with Fairfield Greenwich Group, a de facto New York partnership, that formed, managed, and marketed Sentry, Sigma, Lambda, Greenwich Sentry, and Greenwich Sentry Partners.

126.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). (ECF No. 95).   On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators.   On July 13, 2011, this Court entered consent judgments between the Trustee

and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

127.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

128.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. (ECF No. 107). In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

129.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court. The District Court has issued its opinions providing guidance to this Court and remanded the cases for further

findings applying the standards set forth in the District Court's opinions. *See* discussion *supra* Section VI(A).

130.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.).  The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court.   None of the defendants in the three actions have responded yet to the Trustee's complaints.

131.    On November 22, 2016, this Court issued its decision on the extraterritoriality motion to dismiss. *See* discussion *supra* Section VI(C)(i). Under the decision, some of the claims against the moving defendants in the *Fairfield, Barrenche, and RD Trust* actions were dismissed. Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of certain non-moving defendants to the extraterritoriality motion to dismiss. The parties agreed to consent to the entry of final judgments on the Court's extraterritoriality decision. Finally, the parties consented to direct appeal of the extraterritoriality decision to the Second Circuit. On March 16, 2017, the Trustee filed his notice of appeal in the *Fairfield, Barrenche, and RD Trust* actions. (ECF Nos. 229, 97, 93). On September 27, 2017, the Second Circuit issued an order granting the parties' request for certification for direct appeal of the appeal of the extraterritoriality decision. *Picard v. Banque Lombard Ordier & Cie SA.*, No. 17-1294 (2d Cir.), (ECF No. 388).  On February 25, 2019, the Second Circuit reversed this Court's November 22, 2016 ruling. *See* discussion *supra* Section VI(C)(i).

132.     On January 24, 2019, in the action filed by the Joint Liquidators against the Fairfield management entities and individuals, *In re Fairfield Sentry Limited, et al.,* Adv. No. 10-13164 (SMB), the parties entered a stipulation substituting the Trustee as the plaintiff. (ECF No. 87). On February 22, 2019, the Trustee filed a motion to amend the complaint with an attached proffered Amended Complaint. (ECF No. 90).

133.     On March 25, 2019, this Court approved a settlement between the Trustee and certain Fairfield management defendants, Lourdes Barrenche, Robert Blum, Cornelius Boele, Gregory Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barrenche, Inc., Dove Hill Trust, Fortuna Asset Management, Selecta Financial Corporation. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, Order (S.D.N.Y., March 25, 2019). (ECF No. 270). The Trustee's claims against the remaining Fairfield management defendants remain pending.

###### xii.     **Picard v. Square One**

134.     On November 29, 2010, the Trustee commenced an action against Square One Fund Ltd., Luc D. Estenne, Square Asset Management Ltd., Partners Advisers S.A., Circle Partners, and Kathryn R. Siggins (collectively, the "Square One Defendants") seeking the return of approximately $26.2 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law in connection with certain transfers of property by BLMIS to or for the benefit of the Square One Defendants. *Picard v. Square One Fund, Ltd.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

135.     On November 1, 2018, counsel for Square One filed a Stipulation Substituting Counsel.  (*Id.*, ECF No. 161).

136. On November 21, 2018, the Trustee entered into a Stipulation Allowing the Trustee to File an Amended Complaint. (*Id.*, ECF No. 166).

137. On December 21, 2018, the Trustee filed and served the Amended Complaint. (*Id.*, ECF No. 167–69).

138. On February 14, 2019, Square One filed a motion to dismiss. (*Id.*, ECF No. 170).

139. T he Trustee filed an opposition to Square One's motion to dismiss on April 1, 2019. (*Id.*, ECF No. 171). Square One replied to the Trustee's opposition on April 30, 2019. (*Id.*, ECF No. 173). The Court will hear argument on Square One's motion to dismiss on May 29, 2019.

140. During the Report Period, the Trustee entered into two stipulations with counsel for Square One to extend Square One's time to answer, move, or otherwise respond to the Trustee's complaint. (*Id.*, ECF No. 162, 165).

141. Also during the Report Period, the Trustee filed and served two notices of adjournment of the pre-trial conference in this action. (*Id.*, ECF Nos. 159–60, 163–64).

**D.    Other Bad Faith Actions**

142. The Trustee has approximately 20 bad faith actions still pending as of the end of the Report Period. A few will be highlighted below.

**i.    Picard v. Avellino**

143. On December 10, 2010, the Trustee commenced an avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the A&B

Defendants. *Picard v. Frank J. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y.) (the "A&B Action").

144.    During the Report Period, the Trustee engaged in various aspects of discovery, including reviewing documents produced by the A&B Defendants and third-parties, analyzing evidence with the help of consultants, producing additional documents to the A&B Defendants, preparing for depositions, performing overall case management, and participating in meet and confers with counsel for defendants and third-parties.

### ii.    Picard v. Andrew H. Madoff and Picard v. Mark D. Madoff

145.    During the Report Period, the Trustee continued to manage and attempt to liquidate certain marketable securities and fund and business interests transferred pursuant to the June 23, 2017 Stipulation and Order of Settlement (the "Stipulation") entered into between and among the Trustee, the U.S. Attorney's Office for the Southern District of New York (the "Government"), and the Estates of Andrew H. Madoff and Mark D. Madoff (the "Estates"). The Stipulation, which resolved all of the Trustee's claims against the Estates in *Picard v. Andrew H. Madoff*, Adv. Pro. No. 09-01503 (SMB), and against various Madoff-related business entities in related adversary proceedings,[10] was approved by the Court on July 24, 2017. (ECF No. 311). The Trustee and the Government share all assets received under the Stipulation equally.

146.    As of September 30, 2018, the last day of the prior Report Period, the Trustee had received $10,718,816.98 under the Stipulation.  As of March 31, 2019, the Trustee received an additional $2,572,288.73 from distributions and sales of certain of the assets under management and liquidation.

---

[10] The Trustee's adversary proceedings against the Madoff-related business entities were entitled *Picard v. Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB), *Picard v. Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (SMB), and *Picard v. Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB).

### iii.    **Picard v. Cohmad Sec. Corp.**

147.    On June 22, 2009, the Trustee commenced an adversary proceeding against Madoff insiders Cohmad Securities Corporation ("Cohmad"), Maurice ("Sonny") J. Cohn ("Sonny Cohn"), Marcia B. Cohn, and several other defendants (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants.  *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (SMB).

148.    In November 2016, a motion was filed under Federal Rule of Bankruptcy Procedure 9019 for court approval of a settlement with certain defendants, including Cohmad Securities Corporation, and Marcia Cohn and Marilyn Cohn, in their individual capacities and as co-executors of the Estate of Maurice Cohn. The Court approved that settlement on November 29, 2016. Those defendants were dismissed from this adversary proceeding on January 3, 2017.[11]

149.    The Trustee also entered into settlement agreements throughout 2016 and 2017 with several defendants. These defendants were ultimately dismissed from this adversary proceeding. In addition, several other defendants were voluntarily dismissed from this adversary proceeding in 2016 and 2017, in connection with, among other things, negotiations. As of September 2018, eleven defendants remain in this adversary proceeding.

150.    Due to, among other things, continuing confidential settlement discussions between the Trustee and certain defendants, on November 28, 2018, a Seventh Amended Case

---

[11] This adversary proceeding is currently captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC* v. *Alvin J. Delaire, Jr. et al.*, Adv. Pro. No. 09-01305 (SMB), as a result of the Trustee's settlement with and dismissal from this adversary proceeding of, among others, Cohmad.

Management Plan was so ordered by the Court extending the date that discovery closes to September 9, 2019.

151.    The Trustee continues to develop the case and continues confidential settlement discussions with certain defendants.

152.    In addition, in response to the Court's Order to Show Cause, dated February 26, 2019 (ECF No. 18515) why the Court's Order Enforcing Automatic Stay and Issuing Preliminary Injunction, dated December 4, 2013 (the "Injunction Order") should not be reconsidered, the Trustee filed a response (ECF No. 103) and appeared for a hearing on March 27, 2019. On April 1, 2019, the Court issued an order (ECF No. 18631) vacating the Injunction Order.

### iv.    Picard v. Magnify Inc.

153.    On December 6, 2010, the Trustee commenced an action against Magnify, Inc. and several related companies holding BLMIS accounts, individuals acting on behalf of these accounts, and several other recipients of transfers from these accounts (collectively, the "Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (SMB). On September 21, 2011, the Trustee filed an amended complaint in the action.  (ECF No. 39). On September 29, 2017, the Trustee filed a second amended complaint.  (ECF No. 143).

154.    During the Report Priod, the Trustee continued to analyze strategic issues relating to the case, including working with experts and assessing deficiencies in the Magnify Defendants' discovery responses, following the Court's April 13, 2018 Memorandum Decision

42

Denying Defendants' Motion to Dismiss (ECF No. 143).  On December 21, 2018, the Court so

ordered the parties' Eleventh Amended Case Management Plan and scheduled a status

conference for February 12, 2019 (ECF No. 175), which was subsequently adjourned to June 18,

2019.  (ECF No. 177).

155.    The Trustee also continued to prosecute two actions brought in Israel in

December 2015 to recover funds transferred to individuals and entities through the Magnify

Defendants' BLMIS accounts.  In connection with these actions, the Trustee worked with Israeli

counsel to navigate various issues related to document discovery, including dealing with

logistical and strategic issues relating to the production of documents in a foreign country,

assessing deficiencies in the defendants' discovery responses, and performing various legal and

factual research in preparation for a hearing before the Israeli court.  The Trustee also worked

with Israeli counsel to draft and file various pleadings in the Israeli actions, including a response

to the defendants' motion to strike certain legal arguments made by the Trustee, an amended

statement in reply, and various procedural motions.

**v.       Picard v. Stanley Shapiro**

156.    On December 9, 2010, the Trustee commenced an action against Stanley Shapiro,

Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and

numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million

under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other

applicable law for fraudulent conveyances and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the Shapiro Defendants.  *See Picard v. Shapiro*, Adv.

No. 10-05383 (SMB).

157.    In early 2014, the Trustee filed a second amended complaint against the Shapiro

Defendants. The Shapiro Defendants moved to dismiss the second amended complaint on several

grounds including, but not limited to, that they could avail themselves of the safe harbor

protection under Section 546(e) of the Bankruptcy Code. In late 2015, the Bankruptcy Court

issued a written decision in which it granted in part and denied in part the Shapiro Defendants'

motion (ECF No. 59).

158.    During the Report Period, the Trustee continued to develop his case against the

Shapiro Defendants. The Trustee subpoenaed the Shapiro Defendants' third-party bank and

successfully opposed a motion to quash the subpoena. The Trustee also received and reviewed

documents produced by the Shapiro Defendants during the Report Period. Finally, the Trustee

deposed defendants Stanley Shapiro, David Shapiro, Leslie Shapiro Citron, and Kenneth Citron,

as well as third-party Annette Bongiorno.

### vi.    Legacy

159.    On December 6, 2010, the Trustee commenced an action against Legacy Capital

Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the

New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and

damages in connection with certain transfers of property by BLMIS to or for the benefit of

Legacy. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6,

2010).

160.    During the Report Period, the Trustee continued to develop his case against

Legacy.  On December 21, 2018, B&H attorneys, on behalf of the Trustee, filed a motion for

summary judgment against Legacy in connection with count one of the amended complaint.

This motion related to transfers Legacy received during the two-year period from the December

11, 2008 filing date of the SIPA liquidation, of which $86,505,850 comprised fictitious profits.

Additionally, during the Report Period, B&H attorneys prepared a Statement of Material Facts

Pursuant to Local Bankruptcy Rule 7056-1 in support of the Trustee's motion for summary judgment.

161.    On March 1, 2019, Legacy filed its opposition to the Trustee's motion for summary judgment along with a Counter-Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056-1.  On March 22, 2019, B&H attorneys, on behalf of the Trustee, filed a reply brief in further support of the Trustee's motion for summary judgment.

162.    Judge Bernstein scheduled oral argument on the Trustee's motion for summary judgment for April 9, 2019.  During the Report Period, B&H attorneys on behalf of the Trustee, prepared for oral argument on the motion for summary judgment. Oral argument took place on April 9, 2019 and the Court took the matter under advisement.

### VII.    INTERNATIONAL INVESTIGATION AND LITIGATION

163.    The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad, (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining international counsel to assist the Trustee in these efforts, when necessary.  More than seventy of the actions filed in this Court have involved international defendants, and the Trustee is involved in actions and investigations in several jurisdictions, including Austria, Bermuda, Cayman Islands, France, Israel, and the United Kingdom, among others.

164.    The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

45

A.    **Austria**

165.    The Trustee continues to actively investigate certain banks, institutions, and individuals located in this jurisdiction.  In addition, the Trustee is actively engaged in discovery involving Austrian documents and witnesses.

B.    **Bermuda**

166.    The Trustee is actively investigating various BLMIS-related entities, their officers and directors, and transfers of funds to and through Bermuda.  The Trustee also continues to actively monitor third party legal proceedings taking place in Bermuda that involve several BLMIS-related entities.  In addition, the Trustee is actively engaged in discovery involving Bermudian documents and witnesses.

C.    **BVI**

167.    The Trustee is actively investigating the involvement of several BVI-based feeder funds that funneled money into the Ponzi scheme.  In particular, the Trustee has investigated and filed active complaints in the Bankruptcy Court against several BVI-based defendants, including Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd.

D.    **Cayman Islands**

168.    The Trustee is actively monitoring certain third party BLMIS and HSBC-related proceedings currently pending in the Cayman Islands.

E.    **England**

169.    The Trustee currently has protective claims pending in England against Kingate-related individuals and entities and against HSBC and related entities.  In addition, the Trustee is actively engaged in discovery involving English documents and witnesses.

F.    **France**

170.    The Trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in France.  In addition, the Trustee is actively engaged in discovery involving French documents and witnesses.

G.    **Ireland**

171.    The Trustee continues to investigate BLMIS-related third-party litigation currently pending in Ireland.  In addition, the Trustee is actively engaged in discovery involving Irish documents and witnesses.

H.    **Israel**

172.    The Trustee is pursuing an avoidance and recovery claim against certain Israeli defendants who received fictitious profits from BLMIS.  In addition, in 2015, the Trustee filed two separate actions in Israel under Israeli law.  *See* discussion *supra* in Section VI(D)(iv).

I.    **Liechtenstein**

173.    The trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in Liechtenstein.

J.    **Switzerland and Luxembourg**

174.    In 2010, the Trustee filed two lawsuits in this Court against Switzerland-based UBS AG and other UBS and HSBC related entities based in Luxembourg and various feeder funds, management companies, and individuals.  The Trustee also continues to monitor certain BLMIS-related third party actions currently pending in these jurisdictions.  In addition, the Trustee is actively engaged in discovery involving Luxembourg documents and witnesses.

## VIII.   RECOVERIES AND CONTINGENCIES

### A.      Recoveries Accomplished During Prior Report Periods

175.    In the Sixth through Twentieth Interim Reports, the Trustee reviewed the significant settlements entered into during those periods and prior report periods.  Prior to this Report Period, the Trustee had recovered or reached agreements to recover approximately $13.020 billion for the benefit of BLMIS customers.

### B.      Recoveries Accomplished During This Report Period

176.    During the Report Period, the Trustee settled 11 cases.  Additionally, the Trustee received recoveries in connection with settlements totaling $338,502,175.94.  As of the end of the Report Period, the Trustee has successfully recovered or reached agreements to recover nearly $13.375 billion.

177.    The Trustee has identified claims in at least eight shareholder class action suits that BLMIS filed before the Trustee's appointment arising out of its proprietary and market making desk's ownership of securities.  During the Report Period, the Trustee had received distributions from seven of these class action settlements totaling over $91,000.  The Trustee has not and will not receive any distributions from the eighth class action settlement.

178.    In addition, the Trustee has identified claims that BLMIS may have in 197 other class action suits also arising out of its proprietary and market making activities.  The Trustee has filed proofs of claim in 128 of these cases and, based on a review of relevant records, has declined to pursue claims in 69 additional cases.  As of March 31, 2019, the Trustee has recovered $2,553,558.76 from settlements relating to 62 of the 128 claims filed directly by the Trustee during the Report Period, of which $776,215.96 was recovered during this Report Period.

## IX.   THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

### A.   The Customer Fund

179.   In order to protect customers of an insolvent broker-dealer such as BLMIS, Congress established a statutory framework pursuant to which customers of a debtor in a SIPA liquidation are entitled to preferential treatment in the distribution of assets from the debtor's estate.   The mechanism by which customers receive preferred treatment is through the creation of a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general estate.   Customers holding allowable claims are entitled to share in the Customer Fund based on each customer's net equity as of the filing date, to the exclusion of general creditors.   SIPA § 78fff-2(c).

180.   In order to make interim distributions from the Customer Fund, the Trustee must determine or be able to sufficiently estimate: (a) the total value of customer property available for distribution (including reserves for disputed recoveries), and (b) the total net equity of all allowed claims (including reserves for disputed claims).   Each element of the equation—the customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

181.   There are unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves.   Nonetheless, the liquidation proceeding progressed to a stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation of property to the Customer Fund, or the "numerator" (taking reserves into account), (b) the amount of allowable net equity claims, or the "denominator" (also taking reserves into account), and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

182.    The Trustee previously filed ten motions seeking entry of orders approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property. This Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $803.121 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $5.838 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $817.156 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $549.640 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[12] | $473.637 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/15 | $345.472 million[13] | $1.420 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/16 | $247.013 million | $223.618 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/17 | $342.322 million | $295.782 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/18 | $1.303 billion | $649.033 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/19 | $515.974 million | $463.818 million | 2.729% | 18295 | 18398 |

## B.    The General Estate

183.    If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

---

[12] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[13] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

184.   All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate.  The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

## X.   FEE APPLICATIONS AND RELATED APPEALS

### A.   Objections to Prior Fee Applications

185.   Objections were filed to six of the twenty-nine fee applications submitted by the Trustee and B&H.  Discussions of the objections to the first through sixth fee applications, and related motions for leave to appeal the Court's orders granting the Trustee's and B&H's fee applications and overruling those objections, are discussed more fully in the Trustee's Amended Third Interim Report ¶¶ 186–90 (ECF No. 2207); the Trustee's Fourth Interim Report ¶¶ 163–66 (ECF No. 3083); the Trustee's Fifth Interim Report ¶¶ 134–43 (ECF No. 4072); and the Trustee's Sixth Interim Report ¶¶ 131–42 (ECF No. 4529).  No decision has been entered on the motion for leave to appeal the Second Interim Fee Order, No. M47-b (DAB) (S.D.N.Y.).  The motion for leave to appeal the Sixth Interim Fee Order was withdrawn on September 10, 2014.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Case No. 11 MC 00265 (PGG) (S.D.N.Y.), (ECF No. 9).

### B.   Twenty-Eighth Fee Application

186.   On November 15, 2018, the Trustee and his counsel filed the Twenty-Eighth Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from April 1, 2018 through and including July 31, 2018 with the Bankruptcy Court.  (ECF No. 18180).  Special counsel and international special counsel also filed applications for Interim Professional Compensation.  (ECF Nos. 18182 - 18195).  A hearing was held on December 19, 2018, and an Order was entered granting the Applications on December 20, 2018 (ECF No. 18324).

C.    **Twenty-Ninth Fee Application**

187.    On March 15, 2019, the Trustee and his counsel filed the Twenty-Ninth

Application for Interim Compensation for Services Rendered and Reimbursement of Actual and

Necessary Expenses incurred from August 1, 2018 through and including November 30, 2018

with the Bankruptcy Court.  (ECF No. 18562).  Special counsel and international special counsel

also filed applications for Interim Professional Compensation.  (ECF Nos. 18563 - 18575).  A

hearing was held on April 24, 2019, and an Order was entered granting the Applications on April

25, 2019 (ECF No. 18696).

## XI.    CONCLUSION

The foregoing report represents a summary of the status of this proceeding and the material events that have occurred through March 31, 2019, unless otherwise indicated.  This Report will be supplemented and updated with further interim reports.

Dated:  New York, New York
        May 3, 2019

Respectfully submitted,

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*/s/ Irving H. Picard*
Irving H. Picard
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: ipicard@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

*Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

53