**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Keith R. Murphy
Melissa M. Carvalho

Hearing Date: May 29, 2019
Time: 10:00 a.m.

Objection Deadline: May 22, 2019

*Attorneys for Irving H. Picard, Trustee for the substantively*
*consolidated SIPA Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-01391 (SMB) |
| Plaintiff, | |
| v. | |
| RUTH MADOFF, | |
| Defendant. | |

4830-9355-5293.8

**MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION FOR ENTRY OF
AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND
RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
APPROVING A SETTLEMENT BY AND BETWEEN THE TRUSTEE AND
DEFENDANT RUTH MADOFF**

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation

of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Chapter 7

estate of Bernard L. Madoff ("Madoff") under the Securities Investor Protection Act, 15 U.S.C.

§§ 78aaa, *et seq.* ("SIPA"), by his undersigned counsel, respectfully submits this memorandum

of law in support of his motion (the "Motion") seeking entry of an order, pursuant to section

105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),

and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), approving a settlement, the terms and conditions of which are set forth in the Settlement

Agreement (the "Settlement") (annexed hereto as **Exhibit 1**) by and between the Trustee and

Defendant Ruth Madoff (the Trustee and Ruth Madoff are collectively referred to as the

"Parties").

## PRELIMINARY STATEMENT

Ruth Madoff is the wife of Bernard Madoff, who was the chief architect of the BLMIS

fraud.  The Trustee brought the above-captioned adversary proceeding against her asserting

claims for the return of fraudulent transfers and other benefits received from BLMIS in excess of

$44 million, as well as claims for unjust enrichment and conversion.  Following the Trustee's

investigation, and multiple settlement negotiations during which counsel for Ruth Madoff raised

various defenses to the Trustee's claims, the Parties have reached a settlement pursuant to which

Mrs. Madoff will turn over to the Trustee virtually all of her remaining assets, subject to

allowances for Mrs. Madoff to pay reasonable living and medical care expenses incurred during

her remaining lifetime.  Mrs. Madoff will make a significant upfront payment to the Trustee

2

from her existing assets, with the final proceeds of the Settlement to be collected upon Mrs.

Madoff's passing.  When combined with additional substantial funds and assets that Bernard

Madoff and Ruth Madoff forfeited to the Government, as described more fully herein, Mrs.

Madoff will have effectively turned over for the benefit of victims of the BLMIS fraud all of her

assets.  In connection with the Settlement, Mrs. Madoff also has agreed to cooperate with the

Trustee regarding the Trustee's pending litigations, and she expresses her appreciation for all of

the efforts taken by the Trustee to recover monies for the victims of Bernard Madoff's criminal

conduct.

This Settlement will close a significant chapter in the Trustee's investigation of the

BLMIS fraud and will benefit the customers of BLMIS with allowed claims.  The Trustee

respectfully requests that this Court approve the Settlement.

## **BACKGROUND**

On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for

criminal violations of federal securities laws, including securities fraud, investment adviser

fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission

("SEC") brought a case captioned *Securities Exchange Commission v. Bernard L. Madoff*

*Investment Securities LLC et al.*, No. 08 CV 10791 in the United States District Court for the

Southern District of New York (the "District Court"), which was subsequently closed on March

17, 2015.  The SEC's complaint alleges that Madoff and BLMIS engaged in fraud through the

investment adviser activities of BLMIS.

On December 12, 2008, the Honorable Louis L. Stanton of the District Court entered an

order that appointed Lee S. Richards as receiver for the assets of BLMIS.

On December 15, 2008, pursuant to SIPA § 78eee(a)(4)(A), the SEC consented to

combining its action with an application by the Securities Investor Protection Corporation

("SIPC").  Thereafter, pursuant to SIPA § 78eee(a)(4)(B), SIPC filed an application in the

District Court alleging, among other things, that BLMIS could not meet its obligations to

securities customers as they came due and its customers needed the protections afforded by

SIPA.

Also, on December 15, 2008, Judge Stanton granted SIPC's application and entered an

order that:

a.    removed the receiver and appointed the Trustee for the liquidation of the business
      of BLMIS under SIPA § 78eee(b)(3);

b.    appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA §
      78eee(b)(3); and

c.    removed the case to this Court pursuant to SIPA § 78eee(b)(4).

By orders dated December 23, 2008 and February 4, 2009, respectively, this Court

approved the Trustee's bond and found that the Trustee was a disinterested person.  On April 13,

2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this

Court substantively consolidated Madoff's chapter 7 estate into the SIPA Proceeding.

At a plea hearing on March 12, 2009 (the "Plea Hearing"), in the case captioned *United

States v. Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal

information filed against him by the United States Attorney for the Southern District of New

York.  At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the

investment advisory side of [BLMIS]," (Plea Hr'g Tr. at 23: 14-17) and asserted "[a]s I engaged

in my fraud, I knew what I was doing [was] wrong, indeed criminal."  (Id. at 23: 20-21).  On

June 29, 2009, Madoff was sentenced to 150 years in prison.

4

## GOVERNMENT FORFEITURE

Pursuant to a Stipulation and Order dated June 26, 2009 (the "Forfeiture Stipulation"),

Bernard Madoff and Ruth Madoff forfeited their homes, financial holdings and other property in

connection with Bernard Madoff's criminal sentence.  The United States Government agreed not

to contest Mrs. Madoff's claim to $2.5 million and to make a payment to her in that amount

following forfeiture of the Madoffs' assets (the "Forfeiture Payment").  The Forfeiture

Stipulation expressly provides that the $2.5 million payment to Mrs. Madoff "does not in any

way preclude . . . Irving H. Picard, Esq. as trustee for the liquidation of the business of defendant

Bernard L. Madoff Investment Securities LLC . . . from seeking to recover the Funds from Ruth

Madoff."

## THE CLAIMS AGAINST RUTH MADOFF

In his complaint against Ruth Madoff ("Complaint"), the Trustee seeks the return of

alleged fraudulent transfers in the amount of $44,822,355 made during the six years prior to

BLMIS's collapse (the "Transfers").  Examples of the types of transfers include (i) transfers

from BLMIS to finance personal gifts to Mrs. Madoff, (ii) BLMIS financing investments on Mrs.

Madoff's behalf, (iii) transfers by Madoff Securities International Ltd., a BLMIS-related

company ("MSIL"), using BLMIS funds to Mrs. Madoff's personal accounts, and (iv) transfers

on her behalf to American Express.  The Complaint also alleges Mrs. Madoff is liable for unjust

enrichment and conversion.

Among other allegations, the Complaint asserts that Mrs. Madoff received the Transfers

from BLMIS in the form of direct payments to her, as well as payments to entities she owned

and/or controlled together with other family members or as investors.  (*Id.* ¶¶ 23-34.)  The

Complaint further alleges that Mrs. Madoff's investments in various investment funds were

financed entirely by BLMIS (*id.* ¶¶ 24, 27, 31, 38-39, 40); that MSIL made various wire transfers to Mrs. Madoff's personal bank accounts (*id.* ¶¶ 25-26, 29, 34-35); and that BLMIS funds were used to pay for Mrs. Madoff's personal expenses (*id.* ¶¶ 28, 30, 41).

The Trustee believes that all of the Transfers are avoidable and recoverable as set forth in the Complaint.  Mrs. Madoff disputes that she is liable for the return of the Transfers.  During the course of this adversary proceeding, she has raised various defenses, including that the Trustee is entitled only to a single satisfaction, and that the forfeiture of her assets to the Government overlaps the Trustee's claims.  She also has asserted that she did not receive the benefit of the payments to American Express, and that to the extent any benefit could be attributable to her, it is only part of what the Trustee alleges.

## RUTH MADOFF'S CREDITOR CLAIM AGAINST THE BLMIS ESTATE

On July 2, 2009, Ruth Madoff filed a general unsecured creditor claim with this Court, in which she asserted a contingent and unliquidated claim against the Debtors for contribution, indemnification, and/or reimbursement for any damages incurred in four specific civil actions where she was named as a defendant.  The withdrawal of this claim is included in the Settlement.

## THE TRUSTEE'S INVESTIGATION

The Trustee through his counsel and consultants conducted an investigation into Ruth Madoff, including but not limited to, her role in BLMIS, her investments with BLMIS, and her use of BLMIS monies to fund her personal lifestyle and personal business ventures.  The Trustee's investigation included, without limitation, the review and analysis of documents and communications relating to, among other things, Mrs. Madoff's involvement with BLMIS and BLMIS-related entities, the Transfers, the source of Mrs. Madoff's assets, and Mrs. Madoff's alleged use of corporate funds.  After a review of the relevant records, multiple settlement discussions with Mrs. Madoff's counsel, and consideration of Mrs. Madoff's remaining assets, as

6

well as the costs, uncertainty, and risks inherent in all litigation, the Trustee, in exercise of his

business judgment, has determined that it is appropriate to resolve this matter rather than litigate

the allegations in the Complaint and deplete funds that could be used to compensate the fraud

victims.

## OVERVIEW OF THE SETTLEMENT

The Parties have reached a settlement of the Trustee's claims as set forth in the

Settlement Agreement attached hereto as **Exhibit 1**.  The principal terms and conditions of the

Settlement include:[1]

- Mrs. Madoff shall make an upfront cash payment to the Trustee of Two Hundred and
  Fifty Thousand Dollars ($250,000.00) by bank check, wire transfer or other immediately
  available funds pursuant to the two-installment payment schedule set forth in the
  Settlement.

- Mrs. Madoff shall cause to be transferred to the Trustee proceeds of two New York State
  529 accounts at Ascensus Trust owned by Mrs. Madoff for the benefit of Grandchild A
  and Grandchild B valued at approximately Three Hundred Forty-Four Thousand Dollars
  ($344,000.00), less any applicable taxes, penalties or fees relating to the accounts.

- The proceeds of all of Mrs. Madoff's remaining assets at the time of her death shall be
  transferred to the Trustee following her death through a revocable trust, over which the
  Trustee shall have the right to preclude any changes.  Mrs. Madoff will provide the
  Trustee with a copy of her Last Will and Testament, the Revocable Trust Agreement, and
  other documents evidencing the entire transfer of her estate to the Trustee upon her death.

- The Revocable Trust created pursuant to the Settlement will be funded by accounts held
  by Mrs. Madoff at Stifel, Nicolaus & Company and Bank of America.  Mrs. Madoff will
  be entitled to use the funds at such accounts to pay reasonable living and medical care
  expenses incurred during her lifetime.

- Mrs. Madoff shall provide an accounting to the Trustee on a semi-annual basis, which
  will set forth the amount of funds held in any and all accounts, the accrual of interest or
  other gains, if any, and a description and purpose of any deposits or withdrawals made
  therein exceeding $500.

---

[1] Capitalized terms used in this Section but not defined in this memorandum of law shall have the meaning ascribed
to them in the Settlement.

4830-9355-5293.8

- Mrs. Madoff shall cooperate with the Trustee and SIPC to the extent that her assistance is requested in connection with any of the Trustee's pending litigations.

- Mrs. Madoff shall provide the Trustee with an executed Notice of Withdrawal of Creditor Claim with Prejudice.

- Mrs. Madoff releases the Trustee, his respective agents, and BLMIS and its consolidated estate, on the specific terms set forth in the Settlement.

- The Trustee releases Mrs. Madoff and her respective agents on the specific terms set forth in the Settlement.

- As soon as practicable after the Effective Date, and contingent upon the Bankruptcy Court's approval of the Trustee's 9019 Motion, the Trustee will file a Notice of Dismissal dismissing the Adversary Proceeding without prejudice and without costs to either party, subject to the right to reopen the Adversary Proceeding for an uncured default under the Settlement.  Upon receipt of all of the Settlement Payments, and provided that there has been no default under the Settlement, the dismissal shall convert to a dismissal with prejudice.

- The Parties agree that the Settlement shall not be construed as or deemed to be evidence of an admission on the part of Mrs. Madoff to participating in or knowing of Bernard Madoff's fraud.

## **RELIEF REQUESTED**

By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the Proposed Order attached hereto as **Exhibit 2** approving the settlement of this Adversary Proceeding pursuant to the agreement and terms as detailed in the Settlement.

## **LEGAL BASIS**

Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate.  *Air Line Pilots Assoc., Int'l v. Am. Nat'l Bank & Trust Co. of*

4830-9355-5293.8

Chicago (*In re Ionosphere Clubs, Inc.*), 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600

(2d Cir. 1994).

The Second Circuit has stated that in determining whether to approve a compromise, the

court should not decide the numerous questions of law and fact raised by the compromise, but

rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point

in the range of reasonableness.'" *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608

(2d Cir. 1983), *cert. denied*, *Cosoff v. Rodman*, 464 U.S. 822 (1983) (quoting *Newman v. Stein*,

464 F.2d 689, 693 (2d Cir. 1972), cert. denied, 409 U.S. 1039 (1972)); *see also In re Chemtura*

*Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). "[T]he court need not conduct a 'mini-trial'

to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150

B.R. 519, 522 (S.D.N.Y. 1993).

The factors that courts in the Second Circuit consider when approving bankruptcy

settlements are well established. These interrelated factors are:

> (1) the balance between the litigation's possibility of success and
> the settlement's future benefits; (2) the likelihood of complex and
> protracted litigation, with its attendant expense, inconvenience, and
> delay, including the difficulty in collecting on the judgment; (3)
> the paramount interests of the creditors, including each affected
> class's relative benefits and the degree to which creditors either do
> not object to or affirmatively support the proposed settlement; (4)
> whether other parties in interest support the settlement; (5) the
> competency and experience of counsel supporting, and [t]he
> experience and knowledge of the bankruptcy court judge
> reviewing, the settlement; (6) the nature and breadth of releases to
> be obtained by officers and directors; and (7) the extent to which
> the settlement is the product of arm's length bargaining.

*Fox v. Picard* (*In re Madoff*), 848 F.Supp.2d. 469, 487-488 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 81

(2d. Cir. 2014) (quoting *Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium*

*Operating LLC*), 478 F.3d 452, 462 (2d Cir. 2007) (internal quotation marks and citations

omitted)).

Even though the Court has discretion to approve settlements and must independently

evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr.

E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in

determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. at 594.

The competency and experience of counsel supporting the settlement may also be considered.

*Nellis v. Shugrue*, 165 B.R. 115, 122 (Bankr. S.D.N.Y. 1994). Finally, the Court should be

mindful of the principle that "the law favors compromise." *Vaughn v. Drexel Burnham Lambert

Group, Inc.* (*In re Drexel Burnham Lambert Group, Inc.*), 134 B.R 499, 505 (Bankr. S.D.N.Y.

1991) (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

The Trustee's Settlement with Ruth Madoff is fair and equitable and in the best interests

of the Estate and the customers of BLMIS. *See* Affidavit of the Trustee in Support of the Motion

(the "Picard Affidavit"). A true and accurate copy of the Picard Affidavit is attached hereto as

**Exhibit 3**.

The following considerations influenced the Trustee's decision to settle:

### 1.    Benefit to BLMIS Customers

The Settlement furthers the interests of the customers of BLMIS by adding more than

one-half million dollars immediately to the fund of customer property maintained by the Trustee,

as well as provides for the entire remainder of Mrs. Madoff's assets to be transferred to the

Trustee following her death. This represents virtually *all* of Mrs. Madoff's assets after the

Forfeiture, subject only to Mrs. Madoff's reasonable living and medical care payments during

her lifetime.

### 2. Avoidance of the Cost, Delay, and Risk of Further Litigation

The Settlement eliminates the expense and delay of litigation, which would likely require extensive and costly discovery, and a prolonged trial. The Trustee cannot be certain that he would prevail in such a litigation, or that, even if success were guaranteed, any litigation recovery would be substantially greater than the sums he is recovering through this Settlement. Moreover, even if successful in whole or in part, litigation with Mrs. Madoff would delay distributions for years and merely reduce the amount of funds available for the victims of the fraud.

### 3. Collection

In light of the substantial amount of the Trustee's claims against Mrs. Madoff, she would inevitably use her remaining assets to fund her defense against the Trustee. Settling this matter allows those funds to go directly to the BLMIS fund of customer property and not to pay legal fees.

### 4. Finality

The Settlement resolves all claims between and among the Trustee and Ruth Madoff.

### 5. Experienced Counsel and Arms-Length Negotiations

The Parties are represented by sophisticated and experienced counsel. The Settlement is the product of extensive arm's length and good faith negotiations between counsel for the Trustee and counsel for Mrs. Madoff.

For all of the reasons discussed herein, the Settlement is well within the "range of reasonableness," *In re W.T. Grant Co.*, 699 F.2d at 608 (quoting *Newman v. Stein*, 464 F.2d at 693), and confers a substantial benefit on the Estate and the customers of BLMIS. The Trustee respectfully requests that the Court approve the Settlement.

11

## NOTICE

In accordance with Bankruptcy Rules 2002 and 9019 and the Order Establishing Notice
Procedures and Limiting Notice entered on December 5, 2011 (BLMIS Main Proceeding, Adv.
Pro. No. 08-1789, Dkt. No. 4560) (the "Order Limiting Notice"), notice of this Motion is being
given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney
for the Southern District of New York; (v) counsel for Mrs. Madoff; and anyone else who has
filed notices of appearance in this Adversary Proceeding.  Also in accordance with the Order
Limiting Notice, the Trustee has provided notice by e-mail to interested parties in the SIPA
liquidation proceeding of the following: the Motion; the date and time scheduled for the hearing
at which this Court will consider the Motion; the date by which objections, if any, must be filed
with this Court; and the name and address of the persons to be served with a copy of any
objections.  The Trustee submits that no other or further notice is required.

## CONCLUSION

The Trustee hereby requests that this Court approve the Settlement because it represents a
fair and reasonable compromise which greatly benefits the BLMIS customer fund and avoids
lengthy, burdensome, and expensive litigation that would greatly reduce—if not entirely
deplete—the funds available to be paid to the victims of the fraud.  The Settlement is well within
the "range of reasonableness" and confers a substantial benefit on the BLMIS estate, and the
Trustee respectfully requests entry of an Order substantially in the form of **Exhibit 2** hereto
granting the relief requested in the Motion.

4830-9355-5293.8

Dated: May 3, 2019
New York, New York

**BAKER & HOSTETLER LLP**


BY: ___*/s/ David J. Sheehan*___
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Melissa M. Carvalho
Email: mcarvalho@bakerlaw.com
Ferve E. Khan
Email: fkhan@bakerlaw.com


*Attorneys for Irving H. Picard, Trustee for the*
*substantively consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*