**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC<br><br>Plaintiff,<br>v.<br><br>CAROL NELSON, individually and as joint tenant, and STANLEY NELSON, individually and as joint tenant,<br><br>Defendants. | Adv. Pro No. 10-04377 (SMB) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC<br><br>Plaintiff,<br>v.<br><br>CAROL NELSON,<br><br>Defendant. | Adv. Pro No. 10-04658 (SMB) |

{00040460 1 }

## DECLARATION OF HELEN DAVIS CHAITMAN IN OPPOSITION TO THE TRUSTEE'S MOTION TO QUASH THE SUBPOENA REQUIRING HIM TO TESTIFY AT TRIAL AND TO PREVENT DEFENDANTS FROM CALLING AGATHA COLE AND ENRICA COTELLESSA-PITZ TO TESTIFY

HELEN DAVIS CHAITMAN DECLARES AS FOLLOWS:

1.      I am a partner of Chaitman LLP, counsel for the defendants in these actions.  I submit this declaration in opposition to the motion made by the plaintiff, Irving H. Picard, to quash the trial subpoena that we caused to be served on him last week and to bar Defendants from calling Agatha Cole to testify at trial and from relying upon the criminal trial testimony of Enrica Cotellessa-Pitz.

2.      Throughout the period of his service as Trustee, Mr. Picard and those working for him, including his attorneys and his experts,  have made misrepresentations of material facts, upon which the courts have relied in reaching decisions which have had a devastating impact upon the Nelsons.  As specifically relevant here, Mr. Picard, his attorneys, and his experts have repeatedly represented that Madoff never purchased securities with investment advisory customers' money.  This was contradicted by Mr. Madoff in his deposition dated December 20, 2016 at 161:11-25; 162:5-12.

3.      Thereafter we were able to search through hundreds of thousands of pages of documents and find reliable third-party evidence that Madoff testified honestly and that the Trustee and his professionals have misrepresented material facts from inception of the Trustee's appointment.  Indeed, we can now prove that, as Madoff testified, he used investment advisory customers' money to purchase securities which were shown on investment advisory customers' statements, including the Nelsons' statements.  This documentary evidence was assembled by Agatha Cole, an attorney with Chaitman LLP, who will testify at trial as to her methodology in assembling this evidence and the third-party documents she identified which prove that the

{00040460 1 }

Nelsons' accounts contained, cumulatively, tens of millions of dollars of T-Bills which were part of a larger position that Madoff owned at the time the securities appeared on the Nelsons' statements.

4.       Despite this evidence, which has been in the Trustee's possession from inception of these cases, and despite the Trustee's limitless budget which allowed him to pay Bruce Dubinsky over $30 million to produce an expert report which was demonstrably false, as Mr. Madoff established in his deposition on December 20, 2016, Mr. Picard has allowed his attorneys and his experts to continue to make flagrantly false representations that Madoff never purchased securities for his investment advisory customers.  A sampling of just a few of the false representations made by the Trustee and his paid professionals is set forth on Exhibit A to this Declaration.

5.       The evidence at trial will prove the falsity of the representations that have been made which have formed the basis on which Mr. Picard has sued the Nelsons.  Defendants will prove at trial that the Nelsons' statements list securities that Madoff owned at the time they appeared on the Nelsons' statements.

6.       Since Mr. Picard is the plaintiff in these actions, the Nelsons have every right to call him as a witness at trial so that they can make a record, for the District Court, the Second Circuit, and possibly for the United States Supreme Court, as to the material facts relating to these cases.

7.       The criminal trial testimony of Enrica Cotellessa-Pitz will refute another myth that the Trustee and his professionals have promulgated throughout this case – that Madoff's fraud was a Ponzi scheme.  Ms. Cotellessa-Pitz was the controller of House 5 from 1998 through 2008.  She testified at the criminal trial that, from 1998 on, she witnessed tens of millions of dollars per year

being transferred from the 703 account at JPMorgan Chase to the Bank of New York account

which was the account through which securities were purchased by the traders carrying out the

legitimate market making and proprietary trading activities of Bernard L. Madoff Investment

Securities.  Thus, contrary to the Trustee's contention that the customers' money in the 703 account

was necessary to fund withdrawals of investment advisory customers, the investment advisory

business was supporting Madoff's legitimate trading activities.

8.      We attempted service of a trial subpoena on Ms. Cotellessa-Pitz but learned,

through our process servers, that she resides in South Carolina.  For that reason, we intend to rely

upon her criminal trial testimony.  The precise pages of her criminal trial testimony are set forth

in the Exhibit List we served on the Trustee and filed with the Court on May 1, 2019.

I declare under penalty of perjury 28 U.S.C. § 1746(2) that the foregoing is true and correct

based upon the evidence we will adduce at trial and through the testimony of Mr. Picard and

Agatha Cole.


May 6, 2019


*/s/ Helen Davis Chaitman*
Chaitman LLP
465 Park Ave.
New York, NY 10022
Phone & Fax: (888) 759-1114
Helen Davis Chaitman
Email: hchaitman@chaitmanllpc.com

*Attorneys for Defendants Carol*
*Nelson and Stanley Nelson*

{00040460 1 }

**Exhibit A**

| Date | Quote | Source |
|---|---|---|
| 10/16/2009 | Because no securities were purchased and no profits obtained, the customers that benefited the most from the last customer statement approach were those that were in the Ponzi scheme for the maximum amount of time, which allowed their fictitious profits to accrue year after year. | 08-01789 ECF 525 Picard brief at 3. |
| 10/16/2009 | Because no actual purchases or sales were taking place, and were "transacted" only within the fraudulent "world" of Madoff, BLMIS could engineer the trades on the perfect dates at the best available prices to achieve the targeted rates of return. (Looby Dec. ¶ 66) | 08-01789 ECF 525 Picard brief at 12. |
| 10/16/2009 | The transactions depicted on the BLMIS customer statements and confirmations were fake, as the underlying trades had not been executed. | 08-01789 ECF 525 Picard brief at 18. |
| 10/16/2009 | …it is impossible to trace a customer's "real" money to any particular securities. (Looby Dec. ¶ 72) | 08-01789 ECF 525 Picard brief at 39. |
| 10/16/2009 | …the claimants have no real securities positions, as Madoff (with a few inconsequential exceptions) did not purchase and sell the securities reflected on BLMIS customer statements. | 08-01789 ECF 525 Picard brief at 44. |
| 10/16/2009 | However, no securities were actually purchased by BLMIS for its customers and the money received from a customer was not invested in securities for the benefit of that customer…. | 08-01789 ECF 524-1 Joseph Looby declaration at ¶ 51. |
| 10/16/2009 | At no point while customer funds were purportedly either "in the market" or "out of the market," however, were such funds invested as shown on the fictitious statement. | 08-01789 ECF 524-1 Looby declaration at ¶ 56. |
| 10/16/2009 | To the extent records are available, BLMIS did not act as a true investment adviser in the interest of its customers and virtually no securities were purchased on behalf of customers of IA Business. | 08-01789 ECF 524-1 Looby declaration at ¶ 80. |
| 10/16/2009 | In the BLMIS case, the books and records and other information show that the trades were backdated and fictitious, that the profits were fictitious, that certain claimants withdrew more than they put into their accounts, and that "securities" "purchased" with fake sales proceeds in fact were never paid for by the customer. | 08-01789 ECF 519 SIPC brief at 19. |

{00040460 1 }

| Date | Quote | Source |
|---|---|---|
| 01/15/2010 | While investors gave Madoff the authority to purchase and sell securities and options on their behalf, no such trades occurred. | 08-01789 ECF 1773 Picard reply brief at 14-15 |
| 01/15/2010 | If Madoff actually sold or purchased a security consistent with his authorization, the sale or purchase agreement for that security – which, like most sale and purchase agreements, oral or otherwise, would have a buyer, a seller, a price, and a specification of what is being sold – would be a securities contract.  The BLMIS documentation is not. | 08-01789 ECF 1773 Picard reply brief at 15. |
| 01/15/2010 | Here, since no securities were actually purchased or sold, none of the potential disruptions to the market occasioned by undoing settled purchases and sale would occur. | 08-01789 ECF 1773 Picard reply brief at 15-16. |
| 01/15/2010 | No securities actually were purchased by BLMIS for the split strike customers and virtually none were purchased for the non-split strike investors. | 08-01789 ECF 1765 SIPC reply brief at 4-5. |
| 02/02/2010 | MR. SHEEHAN:<br>So we look at the statements.  We look at the books and records.  We find that, as I said before, there are no securities positions.  No stock was paid for it. | 08-01789 2/2/2010 Net Equity Hearing Transcript at 26:13-16. |
| 02/02/2010 | MR. SHEEHAN:<br>Everyone put in their fair amount of money, $1,000, let's say and Mr. Madoff made a showing on the first go around that your $1,000 brought you X and shows you made a profit.  It didn't happen.  He never bought the stock.  It goes on for years.  There is no stock being purchased here. | 08-01789 2/2/2010 Net Equity Hearing Transcript at 26:17-22. |
| 02/02/2010 | MR. SHEEHAN:<br>If there had been real stock purchased and, in fact, profits made, we would have done that too, but that never happened here. | 08-01789 2/2/2010 Net Equity Hearing Transcript at 31:14-16. |
| 02/02/2010 | MS. WANG:<br>So what we have here, Your Honor, aren't Transactions that are in all respects real except for the fact that they have not actually been placed. | 08-01789 2/2/2010 Net Equity Hearing Transcript at 48:19-21 |
| 09/20/2010 | The customers of Madoff's Ponzi scheme had no securities positions that could have been liquidated. | 2d Cir 10-2376 ECF 283 Picard brief at 2. |
| 09/20/2010 | No securities actually were purchased by BLMIS for the split strike customers and virtually none were purchased for the non-split strike investors. | 2d Cir 10-2376 ECF 282 SIPC brief at 8. |

| Date | Quote | Source |
|---|---|---|
| 03/03/2011 | MR. SHEEHAN:<br>….This Trustee is mandated by this Statute to do a complete and thorough investigation.  That's what he's done.  And that complete and thorough investigation yielded the truth that what we have here is no trades, no profits. | 2d Cir 10-2376 3/3/2011 Net Equity Oral Argument Transcript at 57:23 – 58:2 |