**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Oren J. Warshavsky

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK PLC, *et al.*,<br><br>Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**MOTION FOR THE ISSUANCE OF LETTER OF REQUEST**

1. Irving H. Picard (the "Trustee"), trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act ("SIPA"), substantively consolidated with the bankruptcy estate of Bernard L. Madoff, through the Trustee's attorneys, Baker & Hostetler LLP, respectfully submits this Motion for the Issuance of Letters of Request for International Judicial Assistance to the Royal Courts of Justice for the examination of United Kingdom resident, Mr. Brian Pettitt.

2. This application is made pursuant to 28 U.S.C. § 1781, this Court's inherent authority, and in light of the comity between the United States and United Kingdom. Service will be effected pursuant to the Hague Service Convention of 15 November 9165 on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Service Convention"), to which the United States and the United Kingdom are signatories.

3. Mr. Pettitt is a foreign citizen and a non-party. Thus, the Letter of Request provides the only means of compelling discovery from him.

## FACTUAL BACKGROUND

**Madoff's Ponzi Scheme and Alpha Prime's Connection to BLMIS**

4. Madoff, through the investment advisory business of BLMIS, conducted a decades-long Ponzi scheme of breathtaking scale. His fraud was sustained by infusions of money from around the globe. In particular, domestic and foreign investment vehicles, colloquially known as "feeder funds," injected several billions of dollars into his scheme. (*See* Trustee's Amended Complaint filed on December 5, 2010 ("Am. Compl.") ¶¶ 1-4 (ECF No. 170).)

5.  Included among those feeder funds were Primeo Fund ("Primeo") and Alpha Prime Fund Ltd. ("Alpha Prime"). (*Id.* ¶¶ 57, 60, 230-232).

6.  In this action, the Trustee seeks to avoid and recover the initial transfers BLMIS made to defendant Alpha Prime, a Bermuda fund whose day-to-day operational tasks were performed in Austria. The Trustee also seeks to recover transfers made by BLMIS to feeder funds invested with BLMIS that were subsequently transferred to other defendants, including defendants HSBC Bank plc, HSBC Bank U.S.A., N.A., and certain of their affiliates. These claims are based on both federal law and sections 273, 274, 275, 276, 276-a, 278, and 279 of New York State's Debtor and Creditor Law, which provide the Trustee with remedies similar to those provided by the Bankruptcy Code and are made applicable to bankruptcy cases under Section 544 of the Bankruptcy Code.

7.  In June 2003, Alpha Prime opened BLMIS customer account 1FR097, and began soliciting investments. (*Id.* ¶ 232.)

8.  Alpha Prime received more than $80,000,000 in transfers out of BLMIS that the Trustee pleads are avoidable. (*Id.* ¶ 334.) The Trustee seeks the return of those transfers, which he contends are customer property as defined by SIPA section 78*lll*(4), which, if recovered by the Trustee, will be equitably distributed to BLMIS customers with allowed claims.

9.  The Trustee also asserts claims to disallow, pursuant to U.S. statutory law, specifically 11 U.S.C. § 502(d), and to equitably subordinate, pursuant to 11 U.S.C. §§ 510(c) and 105(a), portions of Alpha Prime's customer claim.

**The Creation of Alpha Prime**

10. In the early 1990s, Madoff turned to European investors to augment the flow of funds into his scheme. (*Id.* ¶¶ 2-7.) Among others, Sonja Kohn, an Austrian investment professional with personal and professional ties to Madoff, helped attract new European investors to BLMIS. (*Id.* ¶¶ 5-7.)

11. In 1993, Kohn was hired as an advisor and consultant for Unicredit Bank Austria AG. (*Id.* ¶ 7.) In the early 1990s, Kohn and others created a variety of BLMIS feeder funds, including Primeo. (*Id.* ¶¶ 7, 57, 230.)

12. Primeo's apparent success led to the establishment of a network of feeder funds whose sole purpose was to direct investments into BLMIS. (*Id.* ¶ 231-236.) Alpha Prime was one such fund, which is operated by sophisticated directors and service providers. (*Id.* ¶¶ 7, 60, 99, 101, 111.)

13. Alpha Prime and Primeo shared not only a common broker and investment strategy, but were founded, serviced, and managed by the same individuals and entities. (*Id.* ¶¶ 231-232, 281, 290.) Alpha Prime also shared five directors with Primeo, including Kohn, Stefan Zapotocky, Ursula Radel-Leszcynski, Peter Fischer, and Nigel Fielding.

14. These directors and service providers either knew that BLMIS was engaged in fraud or were aware of evidence strongly indicating fraud. (Am. Compl. ¶¶ 171, 193.)

15. Primeo and its service providers delegated many of their duties to BLMIS, concentrating in BLMIS the functions of investment adviser, custodian, and broker-dealer responsible for initiating and executing securities trades. (*Id.* ¶¶ 126, 231-232, 281-283, 290-291.) Primeo's directors and service providers were, nevertheless, still responsible for ensuring the integrity of the fund's investments, assessing the fund's performance, and ensuring that BLMIS's investment strategy aligned with the fund's objectives. (*Id.* ¶¶ 70-73, 75-76.) As with

Primeo, Alpha Prime's account opening documents allegedly gave BLMIS complete authority to buy, sell, and trade in U.S. securities for Alpha Prime. (*Id.* ¶ 126.)

16. Primeo's and Alpha Prime's customer statements were replete with data showing Madoff's trading strategy to be impossible. (*See, e.g., id.* ¶¶ 18, 151, 155-165, 172-176.) These impossible transactions were reported on Primeo's and Alpha Prime's customer statements which were provided to the fund's directors and service providers, all of whom were sophisticated financial professionals, and were thus aware of these impossible trades. (*Id.*)

17. The Trustee contends that by the middle of 2005, Alpha Prime, its directors, and agents accordingly knew that, among other things:

   a. BLMIS's returns could not be replicated and appeared to be a product of illegal front running (Am. Compl. ¶ 19);

   b. BLMIS's operational structure was vulnerable to fraud because it subverted checks and balances (*Id.* ¶ 18);

   c. BLMIS customer statements showed impossible options trades (*Id.* ¶¶ 155-160); and

   d. BLMIS customer statements showed trades outside published price ranges. (*Id.* ¶ 161-165.)

**Alpha Prime's Relationship with HSBC and BLMIS**

18. Alpha Prime's directors appointed HSBC Bank Bermuda Limited, formerly known as The Bank of Bermuda Limited ("HSBC Bank Bermuda") and HSBC Securities Services (Bermuda) Ltd., formerly known as Management International (Bermuda) Ltd. ("HSSB"), as Alpha Prime's administrator and HSBC Bank Bermuda as its custodian. HSBC Securities Services (Luxembourg) S.A., formerly known as Bank of Bermuda (Luxembourg) S.A. ("HSSL"), was appointed as Alpha Prime's sub-administrator and sub-custodian. (*Id.* ¶¶ 281, 290.) BLMIS, however, acted as Alpha Prime's sub-sub-custodian. (*Id.* ¶ 282.) In addition, HSBC Bank plc provided administrative support as well as overdraft, foreign exchange,

5

and credit facilities to various BLMIS feeder funds including Alpha Prime.

19. Nigel Fielding, a high-ranking official at HSBC, held a seat on Alpha Prime's board of directors. He was also the deputy head of Global Client Servers for Bank of Bermuda (Luxembourg)'s Global Fund Services Group. After HSBC acquired The Bank of Bermuda Limited ("BOB") in 2004, Mr. Fielding became the Chief Administration Officer of HSBC's Alternative Fund Services group, and, eventually, the CEO of HSBC Bank Luxembourg, a position he currently holds. While Alpha Prime was operating, Mr. Fielding worked closely with Mr. Pettitt in performing various due diligence analyses of BLMIS.

**Mr. Pettitt's Connections to Alpha Prime:**

20. In 1992, upon HSBC's acquisition of Midland Bank, Mr. Pettitt became an employee of HSBC Bank plc. In 1994, Mr. Pettitt became the Head of Network Management at HSBC Securities Services. There he remained until he retired in 2009. Network Management was involved with the process of selecting, appointing, monitoring and de-selecting sub-custodians for global custodians.

21. Many of BOB's clients were involved in alternative funds. Following the acquisition of BOB, the roles of investment manager, broker, and custodian to various BLMIS feeder funds, including Alpha Prime and Primeo, were concentrated on by HSBC, a potential conflict of interest, which, the Trustee alleges, HSBC recognized.

22. In fulfilling its roles as custodian and administrator of Alpha Prime, and other BLMIS feeder funds, HSBC undertook several detailed reviews of BLMIS, including several visits to BLMIS by Mr. Fielding, Mr. Pettitt (in 2005, 2007, and 2008), and fraud and related risk reviews in 2006 and 2008 that HSBC commissioned KPMG to perform. (Am. Compl. ¶¶ 305-312). Mr. Pettitt was responsible for conducting due diligence reviews of BLMIS on behalf of HSBC. Mr. Pettitt was also a direct point of contact with KPMG. Employees of HSBC in

6

Luxembourg and Dublin, where some of the BLMIS feeder funds' HSBC-related administrators and custodians were located, shared information regarding BLMIS and raised their concerns directly with Mr. Pettitt. Mr. Pettitt extensively discussed with HSBC employees, HSBC's due diligence on BLMIS and its role as custodian, administrator, and credit provider for several BLMIS feeder funds including Alpha Prime. Mr. Pettitt also was involved in the review of, HSBC's other investments in BLMIS through HSBC's Private Banking and Global Structured Fund Products groups, and discussed those reviews with HSBC and KPMG employees.

23. The Trustee believes that Mr. Pettitt has detailed personal knowledge of reviews and due diligence HSBC performed on BLMIS on behalf of its customers, including Alpha Prime. That due diligence is relevant to these proceedings because, as Alpha Prime's agent, HSBC acquired knowledge that can be imputed to Alpha Prime. That knowledge includes knowledge that Mr. Pettitt exchanged through his communications with Mr. Fielding, who was not only a senior HSBC employee, but an Alpha Prime director.

24. Mr. Pettitt has also testified on behalf of HSBC in other BLMIS-related proceedings, including *Primeo Fund (In Official Liquidation) v. Bank of Bermuda (Cayman) Limited and HSBC Securities Services (Luxembourg) SA*, Cause No. FSD 30 of 2013 (AJJ), an action in the Cayman Islands, and *Thema International Fund Plc v. HSBC Institutional Trust Services (Ireland) Limited et al.*, Record No.: 2008/10983P, an action in Ireland. Mr. Pettitt was asked to provide testimony in those cases because of his involvement in relevant matters through the course of his employment at HSBC.

25. This Letter of Request is part of the Trustee's efforts to obtain testimony regarding Alpha Prime's knowledge of fraud at BLMIS. The testimony sought is directly relevant to the Trustee's allegations in the ongoing proceedings. The evidence sought is

intended for use at trial to support the Trustee's claims to avoid fraudulent transfers to Alpha Prime and to subordinate Alpha Prime's customer claim. This evidence is essential for the Trustee to fulfill his statutory mandate to maximize recovery of customer property for the ultimate benefit of all of Madoff's defrauded victims.

26.   For the above reasons, the Trustee believes that the proposed Letter of Request, attached hereto as Exhibit 1, is just and appropriate and respectfully requests that the Court issue such Letter of Request to the indicated Judicial Authority.

Dated: May 24, 2019
    New York, New York

/s/ *Oren J. Warshavsky*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Oren J. Warshavsky

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L.*
*Madoff*