# CHAITMAN LLP
**465 PARK AVENUE**
**NEW YORK, NY 10022**
**(888) 759-1114**
TELEPHONE & FAX

*HELEN DAVIS CHAITMAN*
hchaitman@chaitmanllp.com

June 17, 2019

**VIA ECF AND HAND DELIVERY**

The Honorable Stuart M. Bernstein, U.S.B.J.
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

      Re:   *In re Bernard L. Madoff, Investment Securities, LLC,* **Adv. Pro. No. 08-01789;**
               **Request to compel compliance with document demands served on Plaintiff**

Dear Judge Bernstein:

      I write on behalf of the Nelsons and on behalf of the Defendants (the "Defendants"), all of whom served the attached Second Set of Requests for Production on Irving H. Picard (the "Trustee") on May 13, 2019 (the "Requests").[1] Defendants request a pre-motion conference, pursuant to Local Rule 7007-1(b) and Chambers Rules, seeking permission to file a motion to compel compliance with the Requests pursuant to Fed. R. Civ. P. 37, made applicable to these adversary proceedings pursuant to Fed. R. Bankr. P 7037.

    **I.**    **Background**

      At trial in the Nelson cases,[2] the Nelsons proved that the Trustee does not have standing to claw back alleged transfers to the Nelsons because they never received any money from Bernard L. Madoff Investment Securities LLC (the "LLC"). Instead, all of the checks to the Nelsons were drawn on an account in the name of Bernard L. Madoff and all deposits from the Nelsons were made into an account in the name of Bernard L. Madoff Investment Securities – the trade name Madoff used for many years before the LLC was formed. *See In re Bernard L. Madoff Inv. Sec. LLC*, 557 B.R. 89 (Bankr. S.D.N.Y. 2016) (*"Avellino"*); *In re Bernard L. Madoff Inv. Sec. LLC*, 560 B.R. 208 (Bankr. S.D.N.Y. 2016) (*"Mendelow"*).

---

[1] The Requests are attached to this letter as Exhibit A, and the Trustee's Responses and Objections to the Requests is attached to this letter as Exhibit B.

[2] *Picard v. Carol Nelson & Stanley Nelson*, Adv. Pro. No. 10-04377; *Picard v. Carol Nelson*, Adv. Pro. No. 10-04658.

{00041196 1 }

**CHAITMAN LLP**
<span style="float:right">The Honorable Stuart M. Bernstein
June 17, 2019
Page 2</span>

In contending that the accounts in question were maintained by the LLC, rather than by Madoff individually, the Trustee relies only upon a series of declarations apparently signed by Linda Coribello, a JPMorgan Chase ("JPMC") custodian of records, on December 13, 2017 (the "2017 Coribello Declarations") which were executed approximately seven years after JPMC produced documents to the Trustee and approximately seven years after the JPMC documents were placed in the E-Data Room by the Trustee.[3]  The 2017 Coribello Declarations state, without any documentary support, that "Bernard L. Madoff Investment Securities LLC ('BLMIS') maintained account numbers 140081703 and 6301428151509 (the 'accounts') at JPMorgan."  The 2017 Coribello Declarations were procured by the Trustee after this Court held that Picard does not have standing to void transfers made by Madoff.  *Avellino*, 557 B.R. 89 (Bankr. S.D.N.Y. 2016); *Mendelow*, 560 B.R. 208 (Bankr. S.D.N.Y. 2016).  Notably, these statements did not appear in any of the many other Coribello Declarations predating December 13, 2017.

The Trustee never served the 2017 Coribello Declarations on the Defendants and never put them in the E-Data Room.  Thus, the Trustee concealed the 2017 Coribello Declarations from the Defendants, thereby preventing them from taking discovery concerning the circumstances under which they were procured.  In fact, all of the documentary evidence contradicts the statement in the 2017 Coribello Declarations that the LLC maintained the 509 and 703 accounts and the Trustee has conceded that he has no document evidencing a request by Madoff to change the name of the 509 account, from which all checks to the Nelsons were written.

While the Trustee, throughout his tenure, has sought to cloud the issue by defining "BLMIS" to include both Madoff and the LLC, in response to a June 11, 2018 email I sent to the Trustee's counsel, Max Shifrin, the Trustee admitted that he has no documentary evidence that the name on the 509 account was ever changed to the LLC after the formation of the LLC in January 2001.

> We have not identified any specific document requesting a change in the ownership of the "509 Account."  However, as you may have noticed in your investigation, the September 2002 statement for the "509 Account" is the first one that reflects BLMIS as the account holder.  All preceding statements list the account holder as Bernard L. Madoff (compare Bates Nos. JPMTAA0000026 and JPMTAA0000029).
>
> As a reminder, the "509 Account" number was one of the search terms we applied, and we have produced all documents responsive to that search term.

At the time the Trustee's counsel sent this email, the Trustee had already had the 2017 Coribello Declarations in his possession for six months, since they were executed on December 13, 2017.  And as the June 11, 2017 email above makes clear, by this time the Trustee was on notice that Defendants were seeking any evidence that the "509 Account" had been placed into the

---

[3]  The 2017 Coribello Declarations are attached to this letter as Exhibit C.  Prior Coribello Declarations are annexed hereto as Exhibit D.

{00041196 1 }

**CHAITMAN LLP**                                    The Honorable Stuart M. Bernstein
                                                                       June 17, 2019
                                                                       Page 3

name of the LLC rather than Madoff individually. And yet the Trustee did not provide the 2017 Coribello Declarations (which are the sole documents the Trustee is relying on for this point) to the Defendants, did not place them in the E-Data Room, and, indeed, the Trustee concealed the existence of these Declarations from the Defendants until one week before the Nelsons' trial when they were produced with two bankers boxes of proposed exhibits.

As this Court is aware, in view of these circumstances, we served a subpoena on JPMC on May 13, 2019, narrowly tailored to obtain documents concerning the quoted sentence in the 2017 Coribello Declarations which had not been included in any of the prior Coribello Declarations that accompanied the earlier productions of documents by JPMC to the Trustee. JPMC objected to the Subpoena primarily on the basis that the requested documents could be obtained directly from the Trustee. This, of course, is not true as to documents that were not shared with, or generated by, the Trustee. The Court has scheduled a pre-motion conference regarding Defendants' proposed motion to compel JPMC to comply with the subpoena for June 26, 2019 and we ask that the pre-motion conference on this proposed motion to compel be set for the same date.

On May 13, 2019, we served the Requests on the Trustee, seeking documents responsive to a single request:

> All documents evidencing or referencing communications between you and/or of your attorneys and/or assistants with any employee, officer of, or attorney form JPMorgan Chase Bank, N.A., from December 11, 2008 to the present relating in any way to a custodian's affidavit(s) and/or declarations.

## II.  **Defendants' Position**

The Trustee has refused to produce any documents, contending that the Requests are (1) not proportional to the needs of this case; (2) not relevant to the claims or defenses; (3) not timely; and (4) sought "solely to continue a long-standing practice of harassing the Trustee and his counsel." These objections are absurd considering that the requested documents will prove that the Trustee lacks standing to claw back from the Defendants, thereby depriving this Court of jurisdiction over these cases.

While the Court must consider proportionality under Fed. R. Civ. P. 26 in order to discourage the overuse of discovery, the amendments to Rule 26 do not change the responsibilities of the parties. *State Farm Mutual Automobile Ins. Co. v. Fayda*, No. 14 Civ. 9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015). The documents Defendants are seeking are clearly relevant and proportionate because, as set forth above, they are critical to Defendants' defenses and to this Court's jurisdiction. The undisputed documentary evidence proves that the 703 and 509 accounts remained in the name Bernard L. Madoff and were never changed to the LLC. Thus, in accordance with this Court's rulings in *Avellino* and *Mendelow*, the Trustee has no standing to claw back any transfers that may have been made from the Nelsons' accounts.

**CHAITMAN LLP**

The Honorable Stuart M. Bernstein
June 17, 2019
Page 4

      The Trustee argues that Defendants have lost the right to seek discovery regarding Ms. Coribello because he disclosed that an unspecified records custodian for JPMC existed in his initial disclosures made on or before December 21, 2015. This argument is absurd because, prior to December 2017, Ms. Coribello had never asserted that the 703 and 509 accounts were owned by the LLC. Any discovery Defendants may have sought from an unspecified records custodian could not have addressed the apparent preparation of fraudulent declarations for Ms. Coribello seven years after JPMC produced the documents that the Trustee put in the E-Data Room. It is, of course, customary for a custodian of records to authenticate documents and Federal Rules of Evidence 803(6) and 902(11) provide for the self-authentication of certain business records based on sworn declarations from the record custodians. However, such declarations are produced, when they are legitimate, at the time the documents are produced. Coribello's declarations signed contemporaneously with the earlier productions contain no statement that the 703 and 509 accounts were in the name of the LLC. Moreover, the documents listed by Bates numbers in the 2017 Coribello Declarations contain not a single document which even remotely supports the statement in her 2017 Declarations that the 703 and 509 accounts were owned by the LLC.

      While we understand that the Trustee would feel harassed because, after ten years of litigation, we have finally discovered that he lacks standing to sue the Defendants, the judicial system does not cater to parties who feel inconvenienced or harassed when a fraud they have sought to perpetrate is uncovered.

Respectfully submitted,

*/s/Helen Davis Chaitman*

Helen Davis Chaitman

HDC/sh
Enclosures (as stated)

cc:    Dean D. Hunt, Esq. (*via email and ECF*)

{000411196 1 }