

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Adv. Case No. 08-01789-smb

4   - - - - - - - - - - - - - - - - - - - - - - - - - x

5   SECURITIES INVESTOR PROTECTION CORPORATION,

6                   Plaintiff,

7           v.

8   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,

9                   Defendant.

10  - - - - - - - - - - - - - - - - - - - - - - - - - x

11  Adv. Case No. 10-04898-smb

12  - - - - - - - - - - - - - - - - - - - - - - - - - x

13  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

14  MADOFF INVESTMENT SECURITIES LLC,

15                  Plaintiff,

16          v.

17  SAREN-LAWRENCE,

18                  Defendant.

19  - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25



Page 2

1    Adv. Case No. 10-04667-smb

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4    MADOFF INVESTMENT SECURITIES LLC,

5                     Plaintiff,

6            v.

7    GROSS et al.,

8                     Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11                    United States Bankruptcy Court

12                    One Bowling Green

13                    New York, NY  10004

14

15                    March 27, 2019

16                    10:01 AM

17

18

19

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  TL

1   HEARING re 08-01789-smb Conference re Settlement of Order

2   Lifting Stay on Subpoenas Issued to BLMIS Employees by

3   Chaitman LLP

4

5   HEARING re 10-04898-smb Pre-Trial Conference

6

7   HEARING re 10-04667-smb Hearing on Order to Show Cause

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 4

1   A P P E A R A N C E S :

2

3   BAKER HOSTETLER LLP

4        Attorneys for the Trustee

5        811 Main Street, Suite 1100

6        Houston, TX 77002

7

8   BY:  DEAN D. HUNT

9        AMANDA E. FEIN

10       ESTERINA GIULIANI

11       KEITH R. MURPHY

12

13   CHAITMAN LLP

14        Attorneys for Saren-Lawrence

15        465 Park Avenue

16        New York, NY 10022

17

18   BY:  GREGORY M. DEXTER

19

20   ALSO PRESENT TELEPHONICALLY:

21   KEVIN H. BELL

22   DAVID J. SHEEHAN

23   JASON B. SANJANA

24   DAVID GROSS

25

1                      P R O C E E D I N G S

2          THE COURT:  Madoff.  We'll do the matter with Ms.

3    Chaitman's clients first.

4          MR. HUNT:  Your Honor, if we could hear the Saren-

5    Lawrence matter first.

6          THE COURT:  Oh, yeah.  Why don't you tell me

7    what's going on in that?

8          MR. HUNT:  So we were all -- this is Dean Hunt for

9    the trustee, by the way.  When we were all here last time

10   Ms. Chaitman asked for some time to file a (indiscernible)

11   application, we did that.  Without getting into the details

12   of that settlement vehicle, the information was inadequate

13   for us to make a decision to dismiss the case.  We have

14   sought some additional information, and the client, as

15   they're allowed to do, chose not to provide that.

16          So now we're back here, I guess, ready for

17   dispositive action.

18          THE COURT:  Okay.

19          MR. HUNT:  We would like permission to file a

20   motion for summary judgment on or before June 15th.  We

21   think that we have all the information we need for summary

22   judgment and given all the other things that are going on

23   with Ms. Chaitman's cases that seems like a reasonable

24   (indiscernible).

25          THE COURT:  Well, what about the allegation that

Page 6

1    there was legitimate trading in the account or that there

2    was a Ponzi scheme?

3               MR. HUNT:  All that can be handled by summary

4    judgment, we believe.

5               THE COURT:  All right.  All right.  So you're

6    going to file a motion for summary judgment.

7               MR. HUNT:  Yes, Your Honor.

8               THE COURT:  All right.  Why don't you discuss Mr.

9    Dexter or Ms. Chaitman's schedule, and if you can't agree on

10   a schedule, just make the motion.

11              MR. HUNT:  Okay.  Thank you.

12              THE COURT:  Okay.

13              MR. DEXTER:  Yes, Your honor.  We'd like a little

14   bit more time with that, but we could discuss that with Mr.

15   Hunt.

16              THE COURT:  I think that's the best way to deal

17   with it.

18              MR. DEXTER:  Thank you.

19              THE COURT:  All right.  Thanks.  As long as you're

20   here, let's deal with the matter of the order.  So what's

21   the issue?

22              MS. FEIN:  Excuse me.

23              THE COURT:  What's the issue?

24              MS. FEIN:  So we objected on a limited basis to

25   the order regarding the BLMIS employee subpoenas.  The

Page 7

1    objection was limited to those timely served, so there are

2    29 cases with open fact discovery, we have no issue with the

3    depositions going forward in those cases.  Other than

4    additional --

5             THE COURT:  Other than you've objected to the

6    number of depositions.

7             MS. FEIN:  And we also objected to the number of

8    depositions as well.

9             THE COURT:  Let me deal with how many cases are

10   open, which was very confusing.  Is there a dispute as to

11   whether discovery was or was not open in certain cases where

12   a subpoena was served?

13            MS. FEIN:  There's a dispute --

14            THE COURT:  What's the --

15            MS. FEIN:  -- and we can certainly give you our

16   position, and we also have a chart of the cases --

17            THE COURT:  Sure.

18            MS. FEIN:  -- to outline that as well.  And we

19   provided those Ms. Chaitman last night.

20            THE COURT:  Okay.  Do you have an extra copy for

21   my clerk?

22            MS. FEIN:  We do.

23            THE COURT:  Thanks.  Okay.

24            MS. FEIN:  So the first 29 entries on this chart

25   will show you the 29 cases that are open pursuant to the

Page 8

1    discovery stipulation from August 2017.

2            THE COURT:  Okay.

3            MS. FEIN:  The next set of cases were open as of

4    the time the March 2017 subpoenas were served.  And there

5    were six subpoenas served in March, as we understand it from

6    Chaitman.  So for depositions to take place in those cases,

7    they should be limited to the March 2017 subpoenas that were

8    served, those six depositions because discovery closed by

9    the time any additional subpoenas were served.

10           THE COURT:  Okay.  So Cases 30 through 59,

11   although discovery was open when at least some deposition

12   subpoenas were served, those discovery deadlines had run by

13   the time of the August 2017 order, right?

14           MS. FEIN:  That's correct.

15           THE COURT:  Okay.

16           MS. FEIN:  And then for the last nine cases

17   listed, those cases had discovery close at the time the

18   March 2017 subpoenas were served in the first instance.

19           THE COURT:  Okay.

20           MR. DEXTER:  Excuse me, Your Honor, Greg Dexter,

21   Chaitman LLP, here on behalf of the Defendants.  The problem

22   with the Trustees' methodology is that they want to punish

23   for holding the subpoenas in abeyance.  Your Honor may

24   recall -- and I know that Your Honor law clerk, Mr. Paek,

25   probably recalls.

1          THE COURT:  Well, he's not sitting here, I am, so

2     tell me.

3          MR. DEXTER:  Okay.  Well, he may recall calling me

4     on a weekend.  And I think on Sunday we submitted a letter

5     to the Court agreeing to hold compliance with the subpoenas

6     in abeyance agreeing not to serve subpoenas.

7          THE COURT:  That's not what happened.  Because

8     I'll you exactly what happened because I read the

9     transcript.  Ms. Chaitman raised the concern because this

10    was all predicated, I think, on completing Mr. Madoff's

11    deposition.  She raised the concern that she would be

12    sandbagged if she waited to serve the subpoenas.  And I

13    said, on the record, then serve the subpoenas, but we'll

14    just hold compliance with the subpoenas in abeyance.  I

15    think that was at the May 2017 hearing.  So don't tell me

16    about conversations with my clerk.

17         MR. DEXTER:  Okay.  The conversations with the

18    clerk are on ECF filings memorializing the conversations.

19         THE COURT:  Right.  So I said -- I told her to

20    serve the subpoenas, so she served them, right?  That's what

21    this is all about.  She served the subpoenas.

22         MR. DEXTER:  Right.  Well, we served --

23         THE COURT:  So what's the issue?

24         MR. DEXTER:  The issue is basically they want to

25    say that we shouldn't be able to take some of these

Page 10

1   depositions for these cases between 30 and 59.

2          THE COURT:  You can't -- you can take depositions

3   to the extent you served subpoenas before the deadline for

4   fact discovery.  But you can't take depositions based on

5   subpoenas you served after fact discovery.  That's all.  Why

6   is that hard to understand?

7          MR. DEXTER:  Because these ones -- 30 through 59 -

8   -

9          THE COURT:  Right.

10         MR. DEXTER:  -- those are subpoenas that were

11  served in September 2017

12         THE COURT:  But that's after fact discovery.

13         MR. DEXTER:  That's after -- for months we didn't

14  know if we could serve subpoenas, we couldn't serve

15  subpoenas.

16         THE COURT:  Stop.  Stop.  It was clear all along

17  that if fact discovery was still open, you could serve

18  subpoenas.  And in May I said to Ms. Chaitman, if you're

19  worried about time running out, serve the subpoenas, but

20  hold them in abeyance.

21         MR. DEXTER:  There wasn't an order entered until

22  June or July.

23         THE COURT:  If you didn't know about whether you

24  could serve subpoenas, why did you serve subpoenas in

25  September in these cases?

Page 11

1          MR. DEXTER:  Because Your Honor entered an order

2     in June or July of 2017, and shortly thereafter we resumed

3     serving subpoenas.  So basically what happened is there was

4     not clarity for a couple of months.  We didn't serve

5     subpoenas.  Then we had clarity, and we served another set

6     of subpoenas.  And now they're trying to punish us and say

7     that second set of subpoenas shouldn't apply to cases.

8          THE COURT:  Look, I've heard about.  I remember

9     well this issue; although, I don't remember a lot of things.

10    Ms. Chaitman wanted to take the depositions of traders,

11    subpoena and take depositions.

12          As I said just before and I'll say for the third

13    time, at the same time that this was going on, the parties

14    wanted to complete Mr. Madoff's deposition.  And there was

15    an understanding and ultimately a stipulation that you'll

16    hold off on the expert reports, and you would hold off on

17    compliance with the subpoenas pending the completion of

18    Madoff's deposition and an order, I think it was dated

19    August -- or a stipulation order, and I think it was dated

20    August 17, 2017.

21          It was agreed between the parties that the

22    discovery deadlines would be held in abeyance except in the

23    three cases, the two Nelson cases and the Saren-Lawrence

24    case as with the submission of the expert reports.  That

25    order didn't extend discovery in cases where the deadlines

Page 12

1       had already run.

2               So you can take the depositions of timely served

3       subpoenas -- timely meaning before the end of discovery, in

4       those cases, obviously, we had time to serve them.  You

5       can't take the depositions of people who you subpoenaed for

6       the first time after the close of discovery.

7               MR. DEXTER:  Well -- okay.  We're not relying on

8       that August order.  There's no dispute that we can proceed

9       with depositions in cases --

10              THE COURT:  That's with Cases 1 through 29, right?

11              MR. DEXTER:  That's right.

12              THE COURT:  Okay.  So what I said was -- and let

13      me just to finish this off, Cases 6 through 68, the

14      discovery deadlines ran long before any of this arose, and I

15      didn't extend any discovery deadlines

16              MR. DEXTER:  Except I'm not sure why 67 and 68 are

17      there, if the deadlines are March 2017, and that's when we

18      served the subpoenas.

19              THE COURT:  If you served the subpoenas in a

20      timely fashion, I don't know.  I've been given a chart.  All

21      I've said was if you served the subpoenas before the

22      discovery deadline when -- ran, then you can take those

23      depositions subject to this issue about the number of

24      depositions; although, I'm not sure if that's these earlier

25      cases in light of what I just said.

Page 13

1          MS. FEIN:  One item on the deeds -- the discovery

2     deadlines that are shown here.  We have representation from

3     Ms. Chaitman about when the certain March subpoenas were

4     served.  And all of the subpoenas were served after March

5     13, 2017, which is the last date for Number 68 on the chart.

6          THE COURT:  If that's a dispute, I'll resolve it.

7     I can't resolve it today because I don't have any evidence

8     on that.  But, generally speaking, you can take the

9     depositions of those people who you subpoenaed, you served

10    your subpoenas before the discovery deadline ran out, you

11    can't depositions pursuant to subpoenas that were served

12    after the fact discovery ran out.

13          We're dealing with numbers -- maybe we should mark

14    this as an exhibit.  I'll mark it as Court Exhibit 1, which

15    is the chart you gave me and receive it in evidence.  So for

16    Cases 1 through 29 on Court Exhibit 1, you can take the

17    deposition subject to the numbers, which we'll take about in

18    a minute.

19          On cases 30 through 59, you can take the

20    depositions of those people who you subpoenaed before the

21    end of discovery in each case, but not with respect to

22    subpoenas served after the discovery deadline.  And --

23          MR. DEXTER:  Your Honor, can I just --

24          THE COURT:  Let me just finish --

25          MR. DEXTER:  Okay.

1          THE COURT:  -- maybe there is or isn't a dispute,

2    but assuming all the subpoenas were served after the last

3    deadline in Numbers 60 through 68 is March 13, 2017, they're

4    untimely, and you can't take the depositions in those cases.

5    Now, what did you want to say?

6          MR. DEXTER:  Just two points with respect to

7    Numbers 30 through 59.  Number 1, the Madoff deposition

8    order should allow these subpoenas to count in all the cases

9    because these subpoenas actually were served as a result of

10   the testimony in Madoff's deposition.

11         THE COURT:  We just went through a whole

12   proceeding where the trustee was forced based upon the

13   Madoff deposition to make a motion to modify scheduling

14   orders, which for the most part, I denied.  Now, without a

15   motion, you're telling me that because of some reason of a

16   Madoff deposition without any motion, I should essentially

17   extend the discovery orders in all these cases to allow you

18   to serve subpoenas.  It doesn't make a lot of sense.

19         MR. DEXTER:  Well, we can make a motion --

20         THE COURT:  Look, you can do -- look, you can do

21   whatever you want.  I don't have a motion before me.  There

22   was -- by the way, there was no confusion, the April order -

23   - the August order was quite clear.  The discovery deadlines

24   were held in abeyance, which doesn't mean that they were

25   extended.  By the way, the Madoff deposition orders were

1   very clear, no other discovery was extended.  So you can

2   submit an order, and maybe the best thing to do is to attach

3   Court Exhibit 1 to the order so you can refer to the

4   matters.

5           Now, with respect to the number of depositions.  I

6   guess, I don't know if it still applies to the Cases 30

7   through 68 in light of the determination that you're limited

8   to the subpoenas you served before the discovery deadline.

9   You tell me.  Do you know offhand?

10          MS. FEIN:  So I do.  So for Cases 30 through 59

11  where the March 2017 subpoenas, those depositions can be

12  taken.  There were only six that were served in those cases.

13          THE COURT:  Okay.  So that's not an issue.  So

14  we're dealing with 1 through 29.  How many subpoenas have

15  been served?

16          MR. DEXTER:  Fourteen, your Honor.

17          THE COURT:  In all those cases?

18          MR. DEXTER:  Yes.

19          THE COURT:  Fourteen, plus the Madoff deposition

20  is 15.  Their argument is you can only take 10 without a

21  court order.

22          MR. DEXTER:  Okay.

23          THE COURT:  So pick your best nine, and that's who

24  you can take.

25          MR. DEXTER:  Okay.  Well, we have about seven --

```
 1            THE COURT:  Now, I guess you know, it's actually

 2    really academic because you can pick nine one case, and you

 3    can pick nine different ones for another case, so then we'll

 4    get into an evidentiary issue, I guess, but do you want --

 5            MR. DEXTER:  Right.

 6            THE COURT:  Why don't you identify those people

 7    that you want in every one of the cases so you can do that

 8    deposition once.  I'm assuming that there are certain people

 9    you want in every case.

10            MR. DEXTER:  Yes.

11            THE COURT:  All right.  So take their deposition

12    once and just do all the cases at one time because they're

13    not going to have knowledge of individual accounts.  You

14    want to ask them if they were trading securities or whether

15    securities were allocated, I assume, right?

16            MR. DEXTER:  The people who have common knowledge,

17    yes, we want to ask them about things that apply --

18            THE COURT:  So how many of your 14 people are

19    those or are those all of them?

20            MR. DEXTER:  I think it's most of them.  I don't

21    have an exact number because we've been -- we haven't been

22    able to take any discovery.

23            THE COURT:  No, you can't.

24            MR. DEXTER:  Right.  So --

25            THE COURT:  You served the subpoenas.  You must've
```

Page 17

1    thought they had something to say, right?

2            MR. DEXTER:  Right.  But usually, you serve

3    subpoenas, you take discovery.  That leads to more

4    discovery.  But we've been put --

5            THE COURT:  It's not going to lead to more

6    discovery.  How do you propose, since you can take different

7    depositions in different cases, how do you propose to deal

8    with this?

9            MS. FEIN:  I think it would be easiest to put in

10   the order those depositions that they wanted to take for the

11   nine that they are entitled to take and --

12           THE COURT:  Well, but they're entitled to take

13   nine more in every case and they don't have to be the same

14   people in every case, right?

15           MS. FEIN:  That's right.  I think that at this

16   point, though, to take nine, to choose nine of the 14, I

17   mean, just looking at the list, eight of the 14 are -- had

18   the exact same job title, six of the 14 had started in 2006

19   or later --

20           THE COURT:  We're saying different things.  In

21   theory, they could've sent down a hundred subpoenas and

22   taken 10 different people or nine different people in each

23   of these cases.  But doesn't it make more sense to just let

24   them take the 14 depositions?

25           MS. FEIN:  That's what we had in our proposed

1   order.  I think that's --

2            THE COURT:  You can take the 14 -- in cases 1

3   through 29, Mr. Dexter, you can take all 14 depositions,

4   okay?

5            MS. FEIN:  Are you saying --

6            MR. DEXTER:  Thank you, Your Honor.

7            MS. FEIN:  -- but they cannot use the testimony --

8            THE COURT:  Well --

9            MS. FEIN:  -- the same depositions in the same

10  cases?  Because the issue is --

11           THE COURT:  No. No, no, no, no, no.  That's going

12  to be very difficult to deal with.  I mean, it's going to be

13  difficult to deal with in the other cases also, but all I'm

14  saying is since they could take -- they could take the 14

15  depositions, basically.

16           MS. FEIN:  But they would only be able to use 10

17  of the depositions in each case.  I mean --

18           THE COURT:  Yeah, you know what, that's going to

19  be very difficult to do, so just let them take the 14.  I

20  can -- I'm going to expand the list from nine to 14.  They

21  can take those depositions because they can take them anyway

22  because we're dealing with 29 different cases and they can

23  take one deposition or a half a deposition in each case.  So

24  you can submit an order.  Settle an order or submit a

25  consensual order on that one.  Okay?

1              MR. DEXTER:  Okay.  Thank you, Your Honor.

2              MS. FEIN:  Thank you.

3              THE COURT:  All right, Mr. Gross, are you on the

4    line?

5              MR. GROSS:  (Indiscernible).

6              THE COURT:  Okay.  It's a little hard to

7    understand you.  I don't know how close you're sitting to

8    the phone or if you have it on a speaker phone.

9              MR. GROSS:  I have it on a speaker phone.

10             THE COURT:  It is on a speaker phone?

11             MR. GROSS:  Yes.

12             THE COURT:  Yeah.  Could you take it off the

13   speaker phone, because it's very hard for me to hear.

14   You're coming in muffled.

15             MR. GROSS:  (Indiscernible).

16             THE COURT:  Okay.  Okay, Mr. Gross, after I got

17   your last couple of letters --

18             MR. GROSS:  Hello?

19             THE COURT:  Yeah.  Can you hear me?

20             MR. GROSS:  I hear you.  I got it off speaker.  I

21   got the phone next to my ear.

22             THE COURT:  Okay, good.  You want to continue with

23   your arbitrations against Spring, Cohmad, and Mr. Cohen's

24   estate, is that right?

25             MR. GROSS:  I -- who am I speaking to now?

1          THE COURT:  This is Judge Bernstein.

2          MR. GROSS:  I'm sorry, Your Honor, I wasn't sure

3    who (indiscernible) on the phone.

4          THE COURT:  Okay.

5          MR. GROSS:  That is not -- what else you want to

6    know?

7          THE COURT:  My understanding is you want to go

8    forward with your arbitrations at FINRA against Cohmad, Mr.

9    Spring, and Mr. Cohen's estate.  Is that correct?

10         MR. GROSS:  Well, not really, because for me to be

11   heard, I went to arbitration -- can I fill you in on what --

12   why I have to go to FINRA?

13         THE COURT:  Sure, go ahead.

14         MR. GROSS:  Okay.  I was a Cohmad customer and I -

15   - which is Cohen and Madoff and I originally invested with

16   them.  So now, when I get an order from BLMS that I owe

17   $325,000, Judge, that's crazy.  It doesn't make sense.  So I

18   turn around and I say, I don't owe that money and in fact,

19   it cost me millions that I made a contribution.  Well, I

20   finally got in touch with someone at Baker and Hostetler's

21   and I got a letter, a document.  And it said -- the document

22   says I didn't become a client until June 24th, 1986, okay?

23   And I got this in correspondence.  It's crazy.  I've been a

24   client since 1986, not 1996.  Okay?

25         And I had this letter and I (indiscernible) I

1    said, well, what happened to all the money before this?  He

2    said, I don't know from anything.  I only know what we got.

3    So he says, well then, give me an accounting, who put the

4    money into BLMS and turned around, and I have that.  They

5    don't answer me.  They don't answer me and I ran around in

6    circles and I says -- the only answer I got, he says, if you

7    don't go along with this, the only thing, we'll audit and

8    we're going to increase the amounts.  And every time you

9    object, you're going to increase the amount.

10           But I feel that I am right, so I turn around and I

11   finally got somebody to listen to me.  I went to FINRA's

12   office and I got -- finally got an appointment with somebody

13   and I brought papers in showing them -- I got to get the

14   information to show them that I was a member, a BLMS

15   customer and had all that money there, but they won't listen

16   to anything that's not on their books.  So I turned around

17   and I went to FINRA and they -- and I showed the things,

18   that the dates, that I have papers that was before this time

19   and whole thing and I contributed money.

20           They're ignoring all of that.  So I -- so when I

21   did that, they agreed to give me the arbitration because

22   that's the only way I can prove that I was a member before,

23   because the papers I gave them, they don't listen.  They

24   only look at the papers they have.  So I got the

25   arbitration.

1          From the arbitration, I understand and I was told

2     by the attorneys -- their attorneys, because I have no

3     attorney, okay -- I was told that I should settle with them

4     as save myself a lot of aggravation and the whole thing and

5     I got about three or four letters from an attorney by

6     (indiscernible), and eventually, I don't think he's working

7     there anymore, but I was -- he says, Mr. Gross, if you don't

8     go with the arbitration, we can work something out.  We'll

9     (indiscernible) something.

10          I said, the only way I get an answer, thank God

11    FINRA answers.  I refused to waive the arbitration.  Now, I

12    understand that the arbitration is stayed until such time as

13    the Trustees -- it's all settled.  I said, I'm never going

14    to live that long.  I'm 92 years of age and you want me to

15    wait for Trustees to be settled.

16          So I sent correspondence and when I sent the

17    correspondence, I give a date showing that I was there

18    before and I had monies there, millions.  Not

19    (indiscernible) hundred.  I can account for at least an

20    additional million.  Because when they started in 1986, I

21    got a check.  I gave them $100,000 to start --

22          THE COURT:  Mr. Gross?  Mr. Gross --

23          MR. GROSS:  -- with people from Cohmad.

24          THE COURT:  Mr. Gross, let me --

25          MR. GROSS:  Everybody was (indiscernible) back in

1   those days.  I worked hard and whatever happened, I finally

2   got an okay of the FINRA arbitration.  Now, what I was

3   doing, because I had illness and all of that since, I turned

4   around and I says, I would like to know, I want to go

5   forward.  I want to bring the papers.  At least --

6           THE COURT:  Mr. Gross --

7           MR. GROSS:  -- the papers I have.  I'll give you

8   dates --

9           THE COURT:  Mr. Gross --

10          MR. GROSS:  I got stocks, retiree program, the

11   whole thing.  There's nobody to give them to.  So the fact

12   that they're asking money is an artificial amount of money

13   and they said, well, we can make a settlement.  I didn't --

14   I haven't got that means to make a settlement and since I'm

15   honest and I really believe honestly that I didn't come as a

16   winner and I have myself a positive attitude.

17          My positive attitude is if I'm wrong, I don't take

18   that attitude.  My attitude right now, Your Honor, is that

19   if the Trustee would make an appointment with their

20   accountants and I'll bring the papers and I have -- I raised

21   a lot of papers.  I have about four or five hundred sheets

22   of paper, documents showing that stocks that -- from the

23   stock market, I have stocks (indiscernible).  I don't know

24   how they handled the money.  They liquidated my stocks which

25   I found out it was illegal.  And they put it into -- some

1   money, but I also ask, after '96, where did they get the

2   money to open the account?

3          What did they start out with?  So they show me

4   checks that I gave after that.  I said, where's all the

5   money before?  And --

6          THE COURT:  Mr. Gross, what do you want?

7          MR. GROSS:  (Indiscernible).

8          THE COURT:  Mr. Gross --

9          MR. GROSS:  -- (indiscernible), Your Honor.

10         THE COURT:  What is it --

11         MR. GROSS:  It's not that I want to have a

12  (indiscernible) or anything or make a settlement with them.

13  I want to be able to sit down with anybody from Picard's

14  people who understand what I'm trying to interpret, and I

15  don't know if I'm expressing it right or a legal term, but I

16  will come to New York.  I will come anyplace.  I'll bring

17  all the papers.  If I'm wrong, I'll write them a check.  Not

18  that I could write the check, but I -- we borrow money.  I

19  got a house, I'll borrow it.  But if it's ridiculous.  They

20  say, why'd you make a hardship.

21         You know what?  I wanted to fill it out at one

22  point.  I had an attorney and the attorney -- I got a letter

23  from the attorney when he found out that I did the FINRA

24  thing because I was not getting an answer, all I was getting

25  from the attorney was bills and I worked out, I didn't get

Page 25

1    personal attention because I was going with the

2    (indiscernible) and they're going with what they have on

3    their books.

4           I can show you prior to the year that they say

5    they have my records, I'll give you thousands of dollars,

6    maybe -- by the (indiscernible), Your Honor, at one time, I

7    wrote a check probably in excess --

8           THE COURT:  Mr. Gross.

9           MR. GROSS:  -- million dollars in taxes.  I'm

10   healthy, I'm alive.  I'm very fortunate I'm speaking to you

11   because most of my friends are gone and that's -- the only

12   thing is, because I got this positive attitude, that they're

13   not entitled to that money and it's costing me.  I probably

14   -- I spent $100,000 with other attorneys in the whole thing,

15   but I probably could've given them $100,000 and not bother

16   with anything, but I'm getting aggravated.  I'm getting sick

17   over it.

18          THE COURT:  All right --

19          MR. GROSS:  And the only thing I can say, I heard

20   the gentleman say he wants a judgment on me.  Let me tell

21   you now, I get a judgment (indiscernible) have my house.

22   But that's not the point.  The point I'm trying

23   (indiscernible) is my documents don't show that I got so

24   much money prior to that.  Show me how they opened up an

25   account with BLMS and the money, and, Your Honor, I talked

1    to these people and they're only attorneys and they do what

2    they see and what they have, right.

3              They can't make up what they don't see.  Okay?

4    But I said, (indiscernible) see me.  I'll come to New York.

5    Give me -- they have (indiscernible) bookkeeping,

6    AlixPartners (indiscernible).  He says, can't help you.  We

7    only can look at BLMS records.  I said, but I was a Cohmad,

8    the whole thing.  He says, you don't count and everything --

9              THE COURT:  Mr. Gross --

10             MR. GROSS:  -- I got agreements with them, with

11   the Cohmad.  Cohmad said, they take their money, they pool

12   it together, from what I understood.  And what they did, I

13   don't know, Your Honor.  But -- and whatever money they got,

14   they had an account they put it in because you were limited

15   at the time, you had to be a millionaire to do that.  But

16   they got me in for $100,000 when they started in 1986, and

17   let me tell you why I know the year.

18             Because the fellow had just gotten a job and some

19   relatives (indiscernible), got to help him out.  He got this

20   job.  See what you can do.  And I signed up.  And they gave

21   me such good reports, I never even looked to check.  And on

22   top of that, what's even worse, they gave me an account to

23   check on them and it was their accountant which was Sosnik

24   and Bell.

25             THE COURT:  Mr. Gross --

```
 1              MR. GROSS:  (Indiscernible).

 2              THE COURT:  -- do you want to go forward with your

 3    arbitration?

 4              MR. GROSS:  -- Your Honor.  I would like the

 5    Trustee to sit down with me with these papers and they're

 6    going to find out that what I'm putting my heart out to you

 7    --

 8              THE COURT:  Do you want to go forward with the

 9    arbitration --

10              MR. GROSS:  -- is a matter of --

11              THE COURT:  -- Mr. Gross?

12              MR. GROSS:  Not conversation.  I don't want

13    conversation.  Papers.  I don't have all the paperwork that

14    they would've had, that if I got to arbitration, I don't

15    know if they would have it.  Maybe back in '13 when I got

16    the arbitration papers, with the papers incinerating.  In

17    fact, I got a wall of papers and (indiscernible) turn them

18    away.

19              THE COURT:  Mr. Gross --

20              MR. GROSS:  -- that far.

21              THE COURT:  Mr. Gross, you have to listen to me

22    now.

23              MR. GROSS:  Yes.

24              THE COURT:  Do you want --

25              MR. GROSS:  Okay.
```

1          THE COURT:  -- to go forward with your arbitration

2     in FINRA?

3          MR. GROSS:  What?

4          THE COURT:  Do you want to go forward with the

5     FINRA arbitration?

6          MR. GROSS:  For the purpose of getting --

7          THE COURT:  Do you want to go forward with the

8     FINRA arbitration?  I thought you did.  That's why I issued

9     the order to show cause.

10          MR. GROSS:  I would -- showing cause -- I have to

11     go through with it, because the only who can back up the

12     evidence --

13          THE COURT:  Okay.  Okay.  I'm going to hear from

14     the Trustee now.  Enough.  Go ahead.

15          MR. MURPHY:  Good morning, Your Honor.  Keith

16     Murphy, BakerHostetler, on behalf of the Trustee.  Your

17     Honor entered the order to show cause on February 26 in this

18     case, directed -- in light of the Trustee's settlements with

19     Cohmad and with the estate of Maurice Cohen combining

20     precedent including Fairfield credit decision why the

21     Court's prior ruling (indiscernible) injunction should not

22     be reconsidered.

23          However, the bases, Your Honor, for the injunction

24     are still relevant today.  Fairfield Greenwich decision or

25     any other binding precedent does not change that.  As brief

1    background, Your Honor, Mr. Gross had filed several claims

2    related to his two accounts with BLMIS but he was a net

3    winner but he had his fictious profits.  The Trustee denied

4    those claims and then brought an action against Mr. Gross in

5    2010.

6              THE COURT:  What's the status of that action?

7              MR. MURPHY:  It's an open action, Your Honor.

8    We've been attempting to confer with Mr. Gross several

9    times.  We have not had great success.  We have served him

10   with --

11             MR. GROSS:  That's not true.

12             THE COURT:  Mr. Gross, don't interrupt or I'm

13   going to mute your line and you won't be able to speak.

14             MR. MURPHY:  We have sent him documents

15   (indiscernible) documents so he can review because he would

16   not have access to the electronic database.  Ms. Markel in

17   my office has had numerous conversations with him in attempt

18   to meet and confer, essentially.

19             THE COURT:  Let's get -- okay.  I asked you the

20   question.  Let's get back to the arbitration.

21             MR. MURPHY:  Sure.  Back to the arbitration then,

22   Your Honor.  We -- Mr. Gross commenced the arbitration in

23   2013.  He sued three people who were already the subject of

24   a case by the Trustee which had been commenced in 2009.

25   That was Cohmad Securities, Maurice Cohen, and Richard

1    Spring, and he was essentially seeking the same paper

2    profits that was shown on his last BLMIS statements.  That's

3    what he had passed (indiscernible) statement of claim.

4             The Court at that time entered the injunction,

5    preliminary and joint, the FINRA arbitration, "until

6    completion of the Trustee's action in Picard (indiscernible)

7    Securities Corp, et al, including the satisfaction by the

8    Cohmad defendants of any settlement or judgment by the

9    Trustee."

10            Your Honor, at this point, the Trustee has settled

11   with Cohmad and the Cohen estate but we've not yet settled

12   with Mr. Spring.  But the settlements don't negate

13   continuing viability of the injunction or, frankly, our need

14   for -- with respect to Mr. Spring.  Mr. Spring has said that

15   -- he has indicated that he does not have sufficient assets

16   to meet a judgment if the Trustee were to prevail on his

17   whole case against him and --

18            THE COURT:  How much are you seeking from him?

19            MR. MURPHY:  I think --

20            THE COURT:  I looked at the complaint.  I couldn't

21   figure it out.

22            MR. MURPHY:  I think in excess of $40 million.

23   But with --even with respect to the (indiscernible), Your

24   Honor, which is about $1.9 million in fictitious profits,

25   Mr. Spring has indicated he might not have sufficient assets

1    reachable by the Trustee even to cover that.

2            THE COURT:  So why don't you settle with him?

3            MR. MURPHY:  We're in mediation.

4            THE COURT:  You've been doing -- you've been at

5    this for a year, though.

6            MR. MURPHY:  It's -- I haven't been directly

7    involved, Your Honor, but Judge Cyganowski has been

8    (indiscernible) apparently also and been with us in an

9    effort to do this.  It's been a complex mediation and my

10   understanding is that it's in a very advanced stage.  So at

11   this point, Your Honor, we would like the continuation of

12   the injunction to protect that.  We -- parties don't need

13   the interference of the lifting of the injunction at this

14   point.  Mr. Gross' FINRA statement of claim, essentially, is

15   not particularly specific.

16           THE COURT:  But that's for FINRA to figure out.  I

17   mean, obviously, he's alleging he was fraudulently induced

18   by the FINRA respondents to invest with BLMIS.  That's the

19   substance of his claim, right or wrong.  That's the way I

20   read it.

21           MR. MURPHY:  I think the issue that we have with

22   it from all the prior caselaw that we have before Your Honor

23   in terms of injunctions and stating a specific,

24   individualized harm, I think that the FINRA statement of

25   claim doesn't do that.  I'm not saying that it's not

Page 32

1   possible to state it but I'm saying that it doesn't meet

2   that standard.

3           THE COURT:  Does any -- do you think the estate

4   has a fraud claim against Mr. Spring for represent -- for

5   inducing Mr. Gross to invest with BLMIS?

6           MR. MURPHY:  We don't know the exact

7   representations that Mr. Spring --

8           THE COURT:  Well, putting aside the merits of the

9   case, doesn't it look like it's got a direct claim that

10  these three respondents fraudulently induced him to invest

11  with BLMIS?

12          MR. MURPHY:  He may, Your Honor.  What we're

13  saying is that he may have a claim.

14          THE COURT:  But you're saying that the automatic

15  stay precludes him from pursuing that claim because it's a

16  disguised derivative claim.

17          MR. MURPHY:  That's correct.  That's correct, Your

18  Honor.  He is actually seeking -- he got his claims denied

19  by the Trustee.

20          THE COURT:  I know what he's seeking, but he's not

21  entitled to, you know, what's set forth on the last

22  statement from these three.

23          MR. MURPHY:  Well, that's correct, Your Honor, and

24  that's exactly our point.

25          THE COURT:  But he might be entitled to lost

1    interest.  I realize he's a net winner, but if he has to pay

2    you back, then basically he's at zero after investing funds.

3    Why shouldn't he be entitled to lost interest or lost

4    opportunity cost from the people who defrauded him?

5            MR. MURPHY:  If Mr. Gross can state a claim that's

6    independent of the Trustee's cause of action, then that's

7    his --

8            THE COURT:  But he --

9            MR. MURPHY:  -- that's his prerogative.

10           THE COURT:  Okay.  All right.  I got it.  David

11   Gross held two BLMIS accounts.  He file customer claims, but

12   he was a net winner.  The trustee denied the claims on that

13   basis and sued Gross to claw back the fictitious products.

14           On or about May 18, 2013, David Gross acting pro

15   se commenced an arbitration before FINRA against Cohmad

16   Securities Corp., the late Maurice Cohen, and Richard

17   Spring, collectively collectively the Respondents.  The

18   FINRA complaint charged in substance that the Respondents

19   fraudulently induced Gross to invest with BLMIS.  Gross

20   sought the amount set forth in his BLIMS account's last

21   statement, less an $800,000 tax refund.

22           On August 26, 2013, Counsel for Cohmad and Cohn

23   filed answers in the FINRA arbitration, and a pre-hearing

24   conference was scheduled for November 18, 2013.  Prior to

25   the commencement of the FINRA arbitration, the Trustee had

1    sued the Respondents and others to claw back fraudulent

2    transfers in the case Picard versus Cohmad Securities Corp,

3    Adversary Proceeding number 09-01305.

4            Once notified the FINRA arbitration in 2013,

5    the Trustee moved to enjoin it, asserting that the FINRA

6    arbitration violated the automatic stay, and the Court

7    should enjoin the FINRA arbitration under Bankruptcy Code

8    Section 105(a).  Neither Gross nor his then-Counsel objected

9    to the motion, and on October 4, 2013, the Court granted the

10   motion under both theories and, hereinafter, the December

11   2013 order.

12           In the latter part of 2016, two of the three FINRA

13   Respondents, Cohmad and Cohn's Estate, settled with the

14   Trustee, leaving only Spring as both the Defendant in the

15   adversary proceeding and a Respondent in the FINRA

16   arbitration.

17           In January and February 2019, the Court received

18   submissions from Mr. Gross, in which he inquired as to the

19   status of the December 2013 order enjoining the FINRA

20   arbitration.  After reviewing his request in light of the

21   post-2013 case law, the Court issued an order to show cause

22   on February 26, 2019, hereinafter the order to show cause,

23   directing the Trustee to show cause why the December 2013

24   order should not be reconsidered in light of the

25   settlements, and the Second Circuit's decision in Picard v.

1   Fairfield Greenwich Limited, 762 F.3d 199 (2d Cir. 2014).

2          The Trustee filed a response.  He admitted that

3   there was no need for a continuing injunction against Cohmad

4   and Cohn's Estate following their settlement with the

5   Trustee.  As to Spring, however, he contended that Gross's

6   FINRA claim was a disguised derivative claim that violated

7   the automatic stay.

8          He also contended that permitting the FINRA

9   arbitration to proceed against Spring would have an

10  immediate adverse economic consequence to the Estate and

11  cause it irreparable harm.  He explained that the parties to

12  the adversary proceeding had been engaged in a mediation for

13  approximately one year.  The mediation is in an advanced

14  stage, and lifting the injunction would jeopardize its

15  chances for success.

16         In addition, Spring submitted a declaration

17  attesting that he does not have the resources to pay the

18  judgment if the Trustee recovers on his claim.  And the

19  Trustee asserts that any recovery by Gross would impair his

20  ability to recover from Spring.

21         The December 2013 order is law of the case.

22  nevertheless, law of the case remains a matter of

23  discretion, and the Court may revisit an earlier decision

24  based on a intervening change of control in law, the

25  availability of new evidence, or the need to correct a clear

Page 36

1    error or prevent manifest injustice, U.S. v. Tenzer, 213

2    F.3d 34 Page 39, (2d Cir. 2000).

3            Here, an intervening change of law merits another

4    look at the legal principles that underlie the December 2013

5    order.  The issues resolved by the December 2013 order were

6    addressed by the Second Circuit in the Picard v. Fairfield

7    Greenwich Limited, 762 F.3d 199, (2d Cir. 2014).

8            There, the Trustee sued to enjoin two pending

9    settlements between the New York Attorney General and class

10   representatives on the one hand, and Ezra Mirkin and certain

11   affiliates of his on the other.  Mirkin ran a BLMIS feeder

12   fund, and the settlements related to lawsuits that arose out

13   of the activities in connection with the feeder fund and its

14   investments with BLMIS.

15           At the same time, the Trustee was suing Mirkin and

16   certain affiliates to claw back fraudulent transfers.  The

17   two district courts dismissed the Trustee's declaratory and

18   injunction actions, and the Trustee appealed.  The Second

19   Circuit first concluded that the civil actions brought by

20   the Attorney General and the Class Plaintiffs did not

21   violate the automatic stay ID 208 to 210.

22           The civil litigations did not implicate property

23   of the Estate because they were only factually likely,

24   rather than legally certain, to impact Estate property.

25   Further, they were not disguised fraudulent transfer claims

Page 37

1   because they did not depend on BLMS's wrongful transfer of

2   its assets.

3           Instead, they alleged breaches of duties owed by

4   and fraudulent representations made by the Defendants, not

5   Madoff.  In other words, they were direct claims, not

6   derivative claims.

7           The Second Circuit's reasoning supports the

8   conclusion that the FINRA arbitration does not violate the

9   automatic stay.  Gross is asserting a direct claim based on

10  alleged fraudulent misrepresentations made to him by Spring,

11  not Madoff, and breach of Spring's independent duty.

12  Gross's claims did not depend on any wrongful transfers by

13  BLMIS or any harm to the estate, and the Trustee does not

14  contend that Spring's alleged misrepresentations to Gross

15  caused an injury to the Estate.

16          The fact that Gross is seeking the same monetary

17  relief in the FINRA arbitration that he unsuccessfully

18  sought from the BLMIS Estate does not transform his direct

19  claim into a derivative claim.

20          Finally, the FINRA claims were at most factually

21  likely, rather than legally certain to impact the Estate.

22  Accordingly, Gross's FINRA claim does not violate the

23  automatic stay.  In Fairfield Greenwich, the Second Circuit

24  also rejected the argument that the Trustee was entitled to

25  enjoin the settlements because they would have immediate

Page 38

1    adverse consequences to the Estate or cause the Estate

2    irreparable harm, see ID at 211 to 13.

3           The fraudulent transfer actions had been pending

4    for more than four years, were still in active litigation

5    with no end in sight, and the Trustee did not have a

6    judgment to enforce against Mirkin's assets.  The Trustee

7    had no statutory rights to Mirkin's assets because the

8    fraudulently conveyed property does not become property of

9    the Estate until it is recovered.

10          The Trustee's interest in Mirkin's assets was

11   contingent, and the Trustee had not shown that it was likely

12   as opposed to possible that he would win the fraudulent

13   transfer actions and be unable to collect the resulting

14   judgment because of the settlements.

15          Once again, the Second Circuit's reasoning compels

16   the conclusion that injunctive relief is unwarranted.  The

17   purported harm alleged by the Trustee is the effect that the

18   FINRA arbitration will have on the Trustee's ability to

19   settle with and recover from Spring.  The Trustee implies

20   that the settlement with Spring is imminent.

21          I will credit his statement, but note that the

22   mediation has been going on for approximately one year, and

23   the Trustee has not yet settled with Spring, and if he does

24   not, the recovery of any judgment is contingent on the

25   successful prosecution of its claim against Spring, which is

1    likely years in the future.

2           More important, unlike the imminent settlement

3    payments that the Trustee was trying to stop in Fairfield

4    Greenwich, Gross is nowhere near collecting anything from

5    Spring.  The FINRA arbitration has been stayed for over five

6    years, and Gross's ability to collect from Spring is

7    contingent on his successful prosecution of the arbitration

8    and the subsequent entry of a money judgment.

9           If, as the Trustee states, the mediation is in an

10   advanced stage, any settlement with Spring will certainly

11   precede the resolution of the FINRA arbitration, and

12   ultimately, the entry of judgment against Spring.  Thus, the

13   Trustee has failed to show that the continuation of the

14   FINRA arbitration will cause an immediate adverse economic

15   consequence within the meaning of Queenie v. Nygard to the

16   Estate, or irreparable harm to the estate under the

17   traditional formulation of a preliminary injunction.

18          Furthermore, the Trustee implies that the FINRA

19   complaint lacks merit.  He contends that the allegations in

20   the FINRA complaint, "do not state a colorable claim that

21   Spring caused a bona fide, legally cognizable and

22   individualized injury to Gross."  Trustee's memo at 19,

23   Accord note 75.

24          Obviously, the legal sufficiency or the FINRA

25   claim is for FINRA to decide, but if Gross cannot prove the

Page 40

1   Spring caused a direct injury based on a fraudulent

2   misrepresentation, Gross will never recover judgment against

3   Spring or threaten the Estate's ability to settle with and

4   collect in Spring.  In short, a gross judgement that would

5   compete with the Trustee for Spring's limited assets is not

6   imminent, and there is no indication that Spring is prepared

7   to use his limited assets to settle with Gross.

8           Finally, the Trustee acknowledges that the Estate

9   no longer needs to enjoin the claims against Cohmad and

10  Cohen's Estate.  Mr. Gross is 92 years old, and as a matter

11  of administrative efficiency and his own interests, Gross

12  should prosecute his arbitration against all of the

13  Respondents in one proceeding.

14          Accordingly, the Trustee is directed to submit a

15  proposed order vacating the December 2013 order on the

16  grounds that the FINRA arbitration, which seeks monetary

17  relief against Spring and the other respondents based on a

18  fraudulent misrepresentation made to Gross in connection

19  with his investment in BLMIS, or as an inducement to his

20  investment in BLMIS, does not violate the automatic stay or

21  cause the Estate an immediate adverse economic consequence

22  or irreparable harm.  Okay?

23          Thank you.  Mr. Gross, you'll be able to continue

24  with your arbitration.  Okay, thank you.

25

Page 41

1          (Whereupon these proceedings were concluded at

2    10:48 AM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 42

1                   C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5     Sonya Ledanski            Digitally signed by Sonya Ledanski
                                Hyde
6     Hyde                      DN: cn=Sonya Ledanski Hyde, o, ou,
                                email=digital@veritext.com, c=US
7                               Date: 2019.03.28 16:34:08 -04'00'

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  March 28, 2019

**[08-01789 - allowed]**                                                      Page 1

**0**

**08-01789**   1:3 3:1
**09-01305**   34:3

**1**

**1**   12:10 13:14,16
   13:16 14:7 15:3
   15:14 18:2
**1.9**   30:24
**10**   15:20 17:22
   18:16
**10-04667**   2:1 3:7
**10-04898**   1:11 3:5
**100,000**   22:21
   25:14,15 26:16
**10004**   2:13
**10022**   4:16
**105**   34:8
**10:01**   2:16
**10:48**   41:2
**1100**   4:5
**11501**   42:23
**13**   13:5 14:3 38:2
**14**   16:18 17:16,17
   17:18,24 18:2,3
   18:14,19,20
**15**   15:20
**15th**   5:20
**17**   11:20
**18**   33:14,24
**19**   39:22
**1986**   20:22,24
   22:20 26:16
**199**   35:1 36:7
**1996**   20:24

**2**

**2000**   36:2
**2006**   17:18
**2009**   29:24
**2010**   29:5
**2013**   29:23 33:14
   33:22,24 34:4,9
   34:11,19,21,23

35:21 36:4,5
   40:15
**2014**   35:1 36:7
**2016**   34:12
**2017**   8:1,4,7,13,18
   9:15 10:11 11:2
   11:20 12:17 13:5
   14:3 15:11
**2019**   2:15 34:17
   34:22 42:25
**208**   36:21
**210**   36:21
**211**   38:2
**213**   36:1
**24th**   20:22
**26**   28:17 33:22
   34:22
**27**   2:15
**28**   42:25
**29**   7:2,24,25 12:10
   13:16 15:14 18:3
   18:22
**2d**   35:1 36:2,7

**3**

**30**   8:10 10:1,7
   13:19 14:7 15:6
   15:10
**300**   42:22
**325,000**   20:17
**330**   42:21
**34**   36:2
**39**   36:2

**4**

**4**   34:9
**40**   30:22
**465**   4:15

**5**

**59**   8:10 10:1,7
   13:19 14:7 15:10

**6**

**6**   12:13
**60**   14:3
**67**   12:16
**68**   12:13,16 13:5
   14:3 15:7

**7**

**75**   39:23
**762**   35:1 36:7
**77002**   4:6

**8**

**800,000**   33:21
**811**   4:5

**9**

**92**   22:14 40:10

**a**

**abeyance**   8:23 9:6
   9:14 10:20 11:22
   14:24
**ability**   35:20
   38:18 39:6 40:3
**able**   9:25 16:22
   18:16 24:13 29:13
   40:23
**academic**   16:2
**access**   29:16
**accord**   39:23
**account**   6:1 22:19
   24:2 25:25 26:14
   26:22
**account's**   33:20
**accountant**   26:23
**accountants**
   23:20
**accounting**   21:3
**accounts**   16:13
   29:2 33:11
**accurate**   42:4
**acknowledges**
   40:8

**acting**   33:14
**action**   5:17 29:4,6
   29:7 30:6 33:6
**actions**   36:18,19
   38:3,13
**active**   38:4
**activities**   36:13
**addition**   35:16
**additional**   5:14
   7:4 8:9 22:20
**addressed**   36:6
**administrative**
   40:11
**admitted**   35:2
**adv**   1:3,11 2:1
**advanced**   31:10
   35:13 39:10
**adversary**   34:3,15
   35:12
**adverse**   35:10
   38:1 39:14 40:21
**affiliates**   36:11,16
**age**   22:14
**aggravated**   25:16
**aggravation**   22:4
**agree**   6:9
**agreed**   11:21
   21:21
**agreeing**   9:5,6
**agreements**   26:10
**ahead**   20:13 28:14
**al**   2:7 30:7
**alive**   25:10
**alixpartners**   26:6
**allegation**   5:25
**allegations**   39:19
**alleged**   37:3,10,14
   38:17
**alleging**   31:17
**allocated**   16:15
**allow**   14:8,17
**allowed**   5:15

amanda 4:9
amount 21:9
  23:12 33:20
amounts 21:8
answer 21:5,5,6
  22:10 24:24
answers 22:11
  33:23
anybody 24:13
anymore 22:7
anyplace 24:16
anyway 18:21
apparently 31:8
appealed 36:18
application 5:11
applies 15:6
apply 11:7 16:17
appointment
  21:12 23:19
approximately
  35:13 38:22
april 14:22
arbitration 20:11
  21:21,25 22:1,8
  22:11,12 23:2
  27:3,9,14,16 28:1
  28:5,8 29:20,21
  29:22 30:5 33:15
  33:23,25 34:4,6,7
  34:16,20 35:9
  37:8,17 38:18
  39:5,7,11,14
  40:12,16,24
arbitrations
  19:23 20:8
argument 15:20
  37:24
arose 12:14 36:12
artificial 23:12
aside 32:8
asked 5:10 29:19
asking 23:12

asserting 34:5
  37:9
asserts 35:19
assets 30:15,25
  37:2 38:6,7,10
  40:5,7
assume 16:15
assuming 14:2
  16:8
attach 15:2
attempt 29:17
attempting 29:8
attention 25:1
attesting 35:17
attitude 23:16,17
  23:18,18 25:12
attorney 22:3,5
  24:22,22,23,25
  36:9,20
attorneys 4:4,14
  22:2,2 25:14 26:1
audit 21:7
august 8:1,13
  11:19,20 12:8
  14:23 33:22
automatic 32:14
  34:6 35:7 36:21
  37:9,23 40:20
availability 35:25
avenue 4:15

b

b 2:21 4:23
back 5:16 22:25
  27:15 28:11 29:20
  29:21 33:2,13
  34:1 36:16
background 29:1
baker 4:3 20:20
bakerhostetler
  28:16
bankruptcy 1:1
  2:11,23 34:7

based 10:4 14:12
  35:24 37:9 40:1
  40:17
bases 28:23
basically 9:24
  11:3 18:15 33:2
basis 6:24 33:13
behalf 8:21 28:16
believe 6:4 23:15
bell 4:21 26:24
bernard 1:8,13
  2:3
bernstein 2:22
  20:1
best 6:16 15:2,23
bills 24:25
binding 28:25
bit 6:14
blims 33:20
blmis 3:2 6:25
  29:2 30:2 31:18
  32:5,11 33:11,19
  36:11,14 37:13,18
  40:19,20
blms 20:16 21:4
  21:14 25:25 26:7
blms's 37:1
bona 39:21
bookkeeping 26:5
books 21:16 25:3
borrow 24:18,19
bother 25:15
bowling 2:12
breach 37:11
breaches 37:3
brief 28:25
bring 23:5,20
  24:16
brought 21:13
  29:4 36:19

c

c 4:1 5:1 42:1,1
c 4:1 5:1 42:1,1
calling 9:3
can't 6:9 10:2,4
  12:5 13:7,11 14:4
  16:23 26:3,6
case 1:3,11 2:1
  5:13 11:24 13:21
  16:2,3,9 17:13,14
  18:17,23 28:18
  29:24 30:17 32:9
  34:2,21 35:21,22
caselaw 31:22
cases 5:23 7:2,3,9
  7:11,16,25 8:3,6
  8:10,16,17 10:1
  10:25 11:7,23,23
  11:25 12:4,9,10
  12:13,25 13:16,19
  14:4,8,17 15:6,10
  15:12,17 16:7,12
  17:7,23 18:2,10
  18:13,22
cause 3:7 28:9,10
  28:17 33:6 34:21
  34:22,23 35:11
  38:1 39:14 40:21
caused 37:15
  39:21 40:1
certain 7:11 13:3
  16:8 36:10,16,24
  37:21
certainly 7:15
  39:10
certified 42:3
chaitman 3:3 4:13
  5:10 7:19 8:6,21
  9:9 10:18 11:10
  13:3
chaitman's 5:3,23
  6:9
chances 35:15

[change - cover]                                                                                    Page 3

**change**  28:25
  35:24 36:3
**charged**  33:18
**chart**  7:16,24
  12:20 13:5,15
**check**  22:21 24:17
  24:18 25:7 26:21
  26:23
**checks**  24:4
**choose**  17:16
**chose**  5:15
**cir**  35:1 36:2,7
**circles**  21:6
**circuit**  36:6,19
  37:23
**circuit's**  34:25
  37:7 38:15
**civil**  36:19,22
**claim**  30:3 31:14
  31:19,25 32:4,9
  32:13,15,16 33:5
  35:6,6,18 37:9,19
  37:19,22 38:25
  39:20,25
**claims**  29:1,4
  32:18 33:11,12
  36:25 37:5,6,12
  37:20 40:9
**clarity**  11:4,5
**class**  36:9,20
**claw**  33:13 34:1
  36:16
**clear**  10:16 14:23
  15:1 35:25
**clerk**  7:21 8:24
  9:16,18
**client**  5:14 20:22
  20:24
**clients**  5:3
**close**  8:17 12:6
  19:7
**closed**  8:8

**code**  34:7
**cognizable**  39:21
**cohen**  20:15 28:19
  29:25 30:11 33:16
**cohen's**  40:10
**cohen's**  19:23
  20:9
**cohmad**  19:23
  20:8,14 22:23
  26:7,11,11 28:19
  29:25 30:8,11
  33:15,22 34:2,13
  35:3 40:9
**cohn**  33:22
**cohn's**  34:13 35:4
**collect**  38:13 39:6
  40:4
**collecting**  39:4
**collectively**  33:17
  33:17
**colorable**  39:20
**combining**  28:19
**come**  23:15 24:16
  24:16 26:4
**coming**  19:14
**commenced**  29:22
  29:24 33:15
**commencement**
  33:25
**common**  16:16
**compels**  38:15
**compete**  40:5
**complaint**  30:20
  33:18 39:19,20
**complete**  11:14
**completing**  9:10
**completion**  11:17
  30:6
**complex**  31:9
**compliance**  9:5,14
  11:17
**concern**  9:9,11

**concluded**  36:19
  41:1
**conclusion**  37:8
  38:16
**confer**  29:8,18
**conference**  3:1,5
  33:24
**confusing**  7:10
**confusion**  14:22
**connection**  36:13
  40:18
**consensual**  18:25
**consequence**
  35:10 39:15 40:21
**consequences**
  38:1
**contend**  37:14
**contended**  35:5,8
**contends**  39:19
**contingent**  38:11
  38:24 39:7
**continuation**
  31:11 39:13
**continue**  19:22
  40:23
**continuing**  30:13
  35:3
**contributed**  21:19
**contribution**
  20:19
**control**  35:24
**conversation**
  27:12,13
**conversations**
  9:16,17,18 29:17
**conveyed**  38:8
**copy**  7:20
**corp**  30:7 33:16
  34:2
**corporation**  1:5
**correct**  8:14 20:9
  32:17,17,23 35:25

**correspondence**
  20:23 22:16,17
**cost**  20:19 33:4
**costing**  25:13
**couldn't**  10:14
  30:20
**could've**  17:21
  25:15
**counsel**  33:22
  34:8
**count**  14:8 26:8
**country**  42:21
**couple**  11:4 19:17
**court**  1:1 2:11 5:2
  5:6,18,25 6:5,8,12
  6:16,19,23 7:5,9
  7:14,17,20,23 8:2
  8:10,15,19 9:1,5,7
  9:19,23 10:2,9,12
  10:16,23 11:8
  12:10,12,19 13:6
  13:14,16,24 14:1
  14:11,20 15:3,13
  15:17,19,21,23
  16:1,6,11,18,23
  16:25 17:5,12,20
  18:2,8,11,18 19:3
  19:6,10,12,16,19
  19:22 20:1,4,7,13
  22:22,24 23:6,9
  24:6,8,10 25:8,18
  26:9,25 27:2,8,11
  27:19,21,24 28:1
  28:4,7,13 29:6,12
  29:19 30:4,18,20
  31:2,4,16 32:3,8
  32:14,20,25 33:8
  33:10 34:6,9,17
  34:21 35:23
**courts**  36:17
**court's**  28:21
**cover**  31:1

**crazy** 20:17,23
**credit** 28:20 38:21
**customer** 20:14
  21:15 33:11
**cyganowski** 31:7

### d

**d** 4:8 5:1
**database** 29:16
**date** 13:5 22:17
  42:25
**dated** 11:18,19
**dates** 21:18 23:8
**david** 4:22,24
  33:10,14
**days** 23:1
**deadline** 10:3
  12:22 13:10,22
  14:3 15:8
**deadlines** 8:12
  11:22,25 12:14,15
  12:17 13:2 14:23
**deal** 6:16,20 7:9
  17:7 18:12,13
**dealing** 13:13
  15:14 18:22
**dean** 4:8 5:8
**december** 34:10
  34:19,23 35:21
  36:4,5 40:15
**decide** 39:25
**decision** 5:13
  28:20,24 34:25
  35:23
**declaration** 35:16
**declaratory** 36:17
**deeds** 13:1
**defendant** 1:9,18
  34:14
**defendants** 2:8
  8:21 30:8 37:4
**defrauded** 33:4
**denied** 14:14 29:3
  32:18 33:12

**depend** 37:1,12
**deposition** 8:11
  9:11 11:14,18
  13:17 14:7,10,13
  14:16,25 15:19
  16:8,11 18:23,23
**depositions** 7:3,6
  7:8 8:6,8 10:1,2,4
  11:10,11 12:2,5,9
  12:23,24 13:9,11
  13:20 14:4 15:5
  15:11 17:7,10,24
  18:3,9,15,17,21
**derivative** 32:16
  35:6 37:6,19
**details** 5:11
**determination**
  15:7
**dexter** 4:18 6:9,13
  6:18 8:20,20 9:3
  9:17,22,24 10:7
  10:10,13,21 11:1
  12:7,11,16 13:23
  13:25 14:6,19
  15:16,18,22,25
  16:5,10,16,20,24
  17:2 18:3,6 19:1
**didn't** 10:13,23
  11:4,25 12:15
  20:22 23:13,15
  24:25
**different** 16:3
  17:6,7,20,22,22
  18:22
**difficult** 18:12,13
  18:19
**direct** 32:9 37:5,9
  37:18 40:1
**directed** 28:18
  40:14
**directing** 34:23
**directly** 31:6

**discovery** 7:2,11
  8:1,8,11,12,17
  10:4,5,12,17
  11:22,25 12:3,6
  12:14,15,22 13:1
  13:10,12,21,22
  14:17,23 15:1,8
  16:22 17:3,4,6
**discretion** 35:23
**discuss** 6:8,14
**disguised** 32:16
  35:6 36:25
**dismiss** 5:13
**dismissed** 36:17
**dispositive** 5:17
**dispute** 7:10,13
  12:8 13:6 14:1
**district** 1:2 36:17
**document** 20:21
  20:21
**documents** 23:22
  25:23 29:14,15
**doesn't** 14:18,24
  17:23 20:17 31:25
  32:1,9
**doing** 23:3 31:4
**dollars** 25:5,9
**don't** 5:6 6:8 9:15
  11:9 12:20 13:7
  14:21 15:6 16:6
  16:20 17:13 19:7
  20:18 21:2,5,5,7
  21:23 22:6,7
  23:17,23 24:15
  25:23 26:3,8,13
  27:12,13,14 29:12
  30:12 31:2,12
  32:6
**duties** 37:3
**duty** 37:11

### e

**e** 2:21,21 4:1,1,9
  5:1,1 42:1
**ear** 19:21
**earlier** 12:24
  35:23
**easiest** 17:9
**ecf** 9:18
**economic** 35:10
  39:14 40:21
**ecro** 2:25
**effect** 38:17
**efficiency** 40:11
**effort** 31:9
**eight** 17:17
**electronic** 29:16
**employee** 6:25
**employees** 3:2
**enforce** 38:6
**engaged** 35:12
**enjoin** 34:5,7 36:8
  37:25 40:9
**enjoining** 34:19
**entered** 10:21
  11:1 28:17 30:4
**entitled** 17:11,12
  25:13 32:21,25
  33:3 37:24
**entries** 7:24
**entry** 39:8,12
**error** 36:1
**essentially** 14:16
  29:18 30:1 31:14
**estate** 19:24 20:9
  28:19 30:11 32:3
  34:13 35:4,10
  36:23,24 37:13,15
  37:18,21 38:1,1,9
  39:16,16 40:8,10
  40:21
**estate's** 40:3
**esterina** 4:10

**et** 2:7 30:7
**eventually** 22:6
**everybody** 22:25
**evidence** 13:7,15
  28:12 35:25
**evidentiary** 16:4
**exact** 16:21 17:18
  32:6
**exactly** 9:8 32:24
**excess** 25:7 30:22
**excuse** 6:22 8:20
**exhibit** 13:14,14
  13:16 15:3
**expand** 18:20
**expert** 11:16,24
**explained** 35:11
**expressing** 24:15
**extend** 11:25
  12:15 14:17
**extended** 14:25
  15:1
**extent** 10:3
**extra** 7:20
**ezra** 36:10

### f

**f** 2:21 42:1
**f.3d** 35:1 36:2,7
**fact** 7:2 10:4,5,12
  10:17 13:12 20:18
  23:11 27:17 37:16
**factually** 36:23
  37:20
**failed** 39:13
**fairfield** 28:20,24
  35:1 36:6 37:23
  39:3
**far** 27:20
**fashion** 12:20
**february** 28:17
  34:17,22
**feeder** 36:11,13
**feel** 21:10

**fein** 4:9 6:22,24
  7:7,13,15,18,22
  7:24 8:3,14,16
  13:1 15:10 17:9
  17:15,25 18:5,7,9
  18:16 19:2
**fellow** 26:18
**fictious** 29:3
**fictitious** 30:24
  33:13
**fide** 39:21
**figure** 30:21 31:16
**file** 5:10,19 6:6
  33:11
**filed** 29:1 33:23
  35:2
**filings** 9:18
**fill** 20:11 24:21
**finally** 20:20
  21:11,12 23:1
  37:20 40:8
**find** 27:6
**finish** 12:13 13:24
**finra** 20:8,12
  21:17 22:11 23:2
  24:23 28:2,5,8
  30:5 31:14,16,18
  31:24 33:15,18,23
  33:25 34:4,5,7,12
  34:15,19 35:6,8
  37:8,17,20,22
  38:18 39:5,11,14
  39:18,20,24,25
  40:16
**finra's** 21:11
**first** 5:3,5 7:24
  8:18 12:6 36:19
**five** 23:21 39:5
**following** 35:4
**forced** 14:12
**foregoing** 42:3
**formulation** 39:17

**forth** 32:21 33:20
**fortunate** 25:10
**forward** 7:3 20:8
  23:5 27:2,8 28:1,4
  28:7
**found** 23:25 24:23
**four** 22:5 23:21
  38:4
**fourteen** 15:16,19
**frankly** 30:13
**fraud** 32:4
**fraudulent** 34:1
  36:16,25 37:4,10
  38:3,12 40:1,18
**fraudulently**
  31:17 32:10 33:19
  38:8
**friends** 25:11
**fund** 36:12,13
**funds** 33:2
**further** 36:25
**furthermore**
  39:18
**future** 39:1

### g

**g** 5:1
**general** 36:9,20
**generally** 13:8
**gentleman** 25:20
**getting** 5:11 24:24
  24:24 25:16,16
  28:6
**giuliani** 4:10
**give** 7:15 21:3,21
  22:17 23:7,11
  25:5 26:5
**given** 5:22 12:20
  25:15
**go** 20:7,12,13 21:7
  22:8 23:4 27:2,8
  28:1,4,7,11,14
**god** 22:10

**going** 5:7,22 6:6
  7:3 11:13 16:13
  17:5 18:11,12,18
  18:20 21:8,9
  22:13 25:1,2 27:6
  28:13 29:13 38:22
**good** 19:22 26:21
  28:15
**gotten** 26:18
**granted** 34:9
**great** 29:9
**green** 2:12
**greenwich** 28:24
  35:1 36:7 37:23
  39:4
**greg** 8:20
**gregory** 4:18
**gross** 2:7 4:24
  19:3,5,9,11,15,16
  19:18,20,25 20:2
  20:5,10,14 22:7
  22:22,22,23,24,25
  23:6,7,9,10 24:6,7
  24:8,9,11 25:8,9
  25:19 26:9,10,25
  27:1,4,10,11,12
  27:19,20,21,23,25
  28:3,6,10 29:1,4,8
  29:11,12,22 32:5
  33:5,11,13,14,19
  33:19 34:8,18
  35:19 37:9,14,16
  39:4,22,25 40:2,4
  40:7,10,11,18,23
**gross's** 35:5 37:12
  37:22 39:6
**gross'** 31:14
**grounds** 40:16
**guess** 5:16 15:6
  16:1,4

## h

**h**  1:13 2:3 4:21
**half**  18:23
**hand**  36:10
**handled**  6:3 23:24
**happened**  9:7,8
  11:3 21:1 23:1
**hard**  10:6 19:6,13
  23:1
**hardship**  24:20
**harm**  31:24 35:11
  37:13 38:2,17
  39:16 40:22
**haven't**  16:21
  23:14 31:6
**healthy**  25:10
**hear**  5:4 19:13,19
  19:20 28:13
**heard**  11:8 20:11
  25:19
**hearing**  3:1,5,7,7
  9:15 33:23
**heart**  27:6
**held**  11:22 14:24
  33:11
**hello**  19:18
**help**  26:6,19
**hereinafter**  34:10
  34:22
**he's**  9:1 22:6
  31:17 32:20,20
  33:1,2
**hold**  9:5,14 10:20
  11:16,16
**holding**  8:23
**hon**  2:22
**honest**  23:15
**honestly**  23:15
**honor**  5:4 6:7,13
  8:20,23,24 11:1
  13:23 15:16 18:6
  19:1 20:2 23:18
  24:9 25:6,25

26:13 27:4 28:15
  28:17,23 29:1,7
  29:22 30:10,24
  31:7,11,22 32:12
  32:18,23
**hostetler**  4:3
**hostetler's**  20:20
**house**  24:19 25:21
**houston**  4:6
**hundred**  17:21
  22:19 23:21
**hunt**  4:8 5:4,8,8
  5:19 6:3,7,11,15
**hyde**  3:25 42:3,8

## i

**identify**  16:6
**ignoring**  21:20
**illegal**  23:25
**illness**  23:3
**immediate**  35:10
  37:25 39:14 40:21
**imminent**  38:20
  39:2 40:6
**impact**  36:24
  37:21
**impair**  35:19
**implicate**  36:22
**implies**  38:19
  39:18
**important**  39:2
**inadequate**  5:12
**incinerating**
  27:16
**including**  28:20
  30:7
**increase**  21:8,9
**independent**  33:6
  37:11
**indicated**  30:15
  30:25
**indication**  40:6
**indiscernible**  5:10
  5:24 19:5,15 20:3

20:25 22:6,9,19
  22:25 23:23 24:7
  24:9,12 25:2,6,21
  25:23 26:4,5,6,19
  27:1,17 28:21
  29:15 30:3,6,23
  31:8
**individual**  16:13
**individualized**
  31:24 39:22
**induced**  31:17
  32:10 33:19
**inducement**  40:19
**inducing**  32:5
**information**  5:12
  5:14,21 21:14
**injunction**  28:21
  28:23 30:4,13
  31:12,13 35:3,14
  36:18 39:17
**injunctions**  31:23
**injunctive**  38:16
**injury**  37:15
  39:22 40:1
**injustice**  36:1
**inquired**  34:18
**instance**  8:18
**interest**  33:1,3
  38:10
**interests**  40:11
**interference**
  31:13
**interpret**  24:14
**interrupt**  29:12
**intervening**  35:24
  36:3
**invest**  31:18 32:5
  32:10 33:19
**invested**  20:15
**investing**  33:2
**investment**  1:8,14
  2:4 40:19,20

**investments**  36:14
**investor**  1:5
**involved**  31:7
**irreparable**  35:11
  38:2 39:16 40:22
**irving**  1:13 2:3
**isn't**  14:1
**issue**  6:21,23 7:2
  9:23,24 11:9
  12:23 15:13 16:4
  18:10 31:21
**issued**  3:2 28:8
  34:21
**issues**  36:5
**item**  13:1
**it's**  16:1,20 17:5
  18:12 19:6,13
  20:23 22:13 24:11
  24:19 25:13 29:7
  31:6,9,10,25 32:9
  32:15
**i'll**  9:8 11:12 13:6
  13:14 23:7,20
  24:16,17,19 25:5
  26:4
**i'm**  12:16,24 16:8
  18:13,20 20:2
  22:13,14 23:14,17
  24:14,15,17 25:9
  25:10,10,10,16,16
  25:22 27:6 28:13
  29:12 31:25 32:1
**i've**  11:8 12:20,21
  20:23

## j

**j**  4:22
**january**  34:17
**jason**  4:23
**jeopardize**  35:14
**job**  17:18 26:18
  26:20
**joint**  30:5

judge   2:23 20:1
  20:17 31:7
judgement   40:4
judgment   5:20,22
  6:4,6 25:20,21
  30:8,16 35:18
  38:6,14,24 39:8
  39:12 40:2
july   10:22 11:2
june   5:20 10:22
  11:2 20:22

**k**

keith   4:11 28:15
kevin   4:21
know   8:24 10:14
  10:23 12:20 15:6
  15:9 16:1 18:18
  19:7 20:6 21:2,2
  23:4,23 24:15,21
  26:13,17 27:15
  32:6,20,21
knowledge   16:13
  16:16

**l**

l   1:8,13 2:3
lacks   39:19
late   33:16
law   8:24 34:21
  35:21,22,24 36:3
lawrence   1:17
  4:14 5:5 11:23
lawsuits   36:12
lead   17:5
leads   17:3
leaving   34:14
ledanski   3:25 42:3
  42:8
legal   24:15 36:4
  39:24 42:20
legally   36:24
  37:21 39:21
legitimate   6:1

letter   9:4 20:21,25
  24:22
letters   19:17 22:5
let's   6:20 29:19,20
lifting   3:2 31:13
  35:14
light   12:25 15:7
  28:18 34:20,24
limited   6:24 7:1
  8:7 15:7 26:14
  35:1 36:7 40:5,7
line   19:4 29:13
liquidated   23:24
liquidation   1:13
  2:3
list   17:17 18:20
listed   8:17
listen   21:11,15,23
  27:21
litigation   38:4
litigations   36:22
little   6:13 19:6
live   22:14
llc   1:8,14 2:4
llp   3:3 4:3,13 8:21
long   6:19 12:14
  22:14
longer   40:9
look   11:8 14:20
  14:20 21:24 26:7
  32:9 36:4
looked   26:21
  30:20
looking   17:17
lost   32:25 33:3,3
lot   11:9 14:18
  22:4 23:21

**m**

m   2:22 4:18
madoff   1:8,14 2:4
  5:2 14:7,13,16,25
  15:19 20:15 37:5
  37:11

madoff's   9:10
  11:14,18 14:10
main   4:5
manifest   36:1
march   2:15 8:4,5
  8:7,18 12:17 13:3
  13:4 14:3 15:11
  42:25
mark   13:13,14
markel   29:16
market   23:23
matter   5:2,5 6:20
  27:10 35:22 40:10
matters   15:4
maurice   28:19
  29:25 33:16
mean   14:24 17:17
  18:12,17 31:17
meaning   12:3
  39:15
means   23:14
mediation   31:3,9
  35:12,13 38:22
  39:9
meet   29:18 30:16
  32:1
member   21:14,22
memo   39:22
memorializing
  9:18
merit   39:19
merits   32:8 36:3
methodology   8:22
million   22:20 25:9
  30:22,24
millionaire   26:15
millions   20:19
  22:18
mineola   42:23
minute   13:18
mirkin   36:10,11
  36:15

mirkin's   38:6,7,10
misrepresentation
  40:2,18
misrepresentati...
  37:10,14
modify   14:13
monetary   37:16
  40:16
money   20:18 21:1
  21:4,15,19 23:12
  23:12,24 24:1,2,5
  24:18 25:13,24,25
  26:11,13 39:8
monies   22:18
months   10:13
  11:4
morning   28:15
motion   5:20 6:6
  6:10 14:13,15,16
  14:19,21 34:9,10
moved   34:5
muffled   19:14
murphy   4:11
  28:15,16 29:7,14
  29:21 30:19,22
  31:3,6,21 32:6,12
  32:17,23 33:5,9
must've   16:25
mute   29:13

**n**

n   4:1 5:1 42:1
near   39:4
need   5:21 30:13
  31:12 35:3,25
needs   40:9
negate   30:12
neither   34:8
nelson   11:23
net   29:2 33:1,12
never   22:13 26:21
  40:2
nevertheless
  35:22

**new** 1:2 2:13 4:16
  24:16 26:4 35:25
  36:9
**night** 7:19
**nine** 8:16 15:23
  16:2,3 17:11,13
  17:16,16,22 18:20
**note** 38:21 39:23
**notified** 34:4
**november** 33:24
**number** 7:6,7
  12:23 13:5 14:7
  15:5 16:21 34:3
**numbers** 13:13,17
  14:3,7
**numerous** 29:17
**ny** 2:13 4:16
  42:23
**nygard** 39:15

**o**

**o** 2:21 5:1 42:1
**object** 21:9
**objected** 6:24 7:5
  7:7 34:8
**objection** 7:1
**obviously** 12:4
  31:17 39:24
**october** 34:9
**offhand** 15:9
**office** 21:12 29:17
**oh** 5:6
**okay** 5:18 6:11,12
  7:20,23 8:2,10,15
  8:19 9:3,17 12:7
  12:12 13:25 15:13
  15:22,25 18:4,25
  19:1,6,16,16,22
  20:4,14,22,24
  22:3 23:2 26:3
  27:25 28:13,13
  29:19 33:10 40:22
  40:24

**old** 40:10 42:21
**once** 16:8,12 34:4
  38:15
**ones** 10:7 16:3
**open** 7:2,10,11,25
  8:3,11 10:17 24:2
  29:7
**opened** 25:24
**opportunity** 33:4
**opposed** 38:12
**order** 3:1,7 6:20
  6:25 8:13 10:21
  11:1,18,19,25
  12:8 14:8,22,23
  15:2,3,21 17:10
  18:1,24,24,25
  20:16 28:9,17
  34:11,19,21,22,24
  35:21 36:5,5
  40:15,15
**orders** 14:14,17
  14:25
**originally** 20:15
**outline** 7:18
**owe** 20:16,18
**owed** 37:3

**p**

**p** 4:1,1 5:1
**paek** 8:24
**page** 36:2
**paper** 23:22 30:1
**papers** 21:13,18
  21:23,24 23:5,7
  23:20,21 24:17
  27:5,13,16,16,17
**paperwork** 27:13
**park** 4:15
**part** 14:14 34:12
**particularly**
  31:15
**parties** 11:13,21
  31:12 35:11

**passed** 30:3
**pay** 33:1 35:17
**payments** 39:3
**pending** 11:17
  36:8 38:3
**people** 12:5 13:9
  13:20 16:6,8,16
  16:18 17:14,22,22
  22:23 24:14 26:1
  29:23 33:4
**permission** 5:19
**permitting** 35:8
**personal** 25:1
**phone** 19:8,8,9,10
  19:13,21 20:3
**picard** 1:13 2:3
  30:6 34:2,25 36:6
**picard's** 24:13
**pick** 15:23 16:2,3
**place** 8:6
**plaintiff** 1:6,15
  2:5
**plaintiffs** 36:20
**plus** 15:19
**point** 17:16 24:22
  25:22,22 30:10
  31:11,14 32:24
**points** 14:6
**ponzi** 6:2
**pool** 26:11
**position** 7:16
**positive** 23:16,17
  25:12
**possible** 32:1
  38:12
**post** 34:21
**pre** 3:5 33:23
**precede** 39:11
**precedent** 28:20
  28:25
**precludes** 32:15
**predicated** 9:10

**preliminary** 30:5
  39:17
**prepared** 40:6
**prerogative** 33:9
**present** 4:20
**prevail** 30:16
**prevent** 36:1
**principles** 36:4
**prior** 25:4,24
  28:21 31:22 33:24
**pro** 33:14
**probably** 8:25
  25:7,13,15
**problem** 8:21
**proceed** 12:8 35:9
**proceeding** 14:12
  34:3,15 35:12
  40:13
**proceedings** 41:1
  42:4
**products** 33:13
**profits** 29:3 30:2
  30:24
**program** 23:10
**property** 36:22,24
  38:8,8
**propose** 17:6,7
**proposed** 17:25
  40:15
**prosecute** 40:12
**prosecution** 38:25
  39:7
**protect** 31:12
**protection** 1:5
**prove** 21:22 39:25
**provide** 5:15
**provided** 7:19
**punish** 8:22 11:6
**purported** 38:17
**purpose** 28:6
**pursuant** 7:25
  13:11

pursuing 32:15
put 17:4,9 21:3
  23:25 26:14
putting 27:6 32:8

**q**

queenie 39:15
question 29:20
quite 14:23

**r**

r 2:21 4:1,11 5:1
  42:1
raised 9:9,11
  23:20
ran 12:14,22
  13:10,12 21:5
  36:11
reachable 31:1
read 9:8 31:20
ready 5:16
realize 33:1
really 16:2 20:10
  23:15
reason 14:15
reasonable 5:23
reasoning 37:7
  38:15
recall 8:24 9:3
recalls 8:25
receive 13:15
received 34:17
reconsidered
  28:22 34:24
record 9:13 42:4
records 25:5 26:7
recover 35:20
  38:19 40:2
recovered 38:9
recovers 35:18
recovery 35:19
  38:24
refer 15:3
refund 33:21

refused 22:11
regarding 6:25
rejected 37:24
related 29:2 36:12
relatives 26:19
relevant 28:24
relief 37:17 38:16
  40:17
relying 12:7
remains 35:22
remember 11:8,9
reports 11:16,24
  26:21
represent 32:4
representation
  13:2
representations
  32:7 37:4
representatives
  36:10
request 34:20
resolution 39:11
resolve 13:6,7
resolved 36:5
resources 35:17
respect 13:21 14:6
  15:5 30:14,23
respondent 34:15
respondents
  31:18 32:10 33:17
  33:18 34:1,13
  40:13,17
response 35:2
result 14:9
resulting 38:13
resumed 11:2
retiree 23:10
review 29:15
reviewing 34:20
revisit 35:23
richard 29:25
  33:16

ridiculous 24:19
right 6:5,5,8,19
  8:13 9:19,20,22
  10:9 12:10,11
  16:5,11,15,24
  17:1,2,14,15 19:3
  19:24 21:10 23:18
  24:15 25:18 26:2
  31:19 33:10
rights 38:7
road 42:21
ruling 28:21
run 8:12 12:1
running 10:19

**s**

s 4:1 5:1
sandbagged 9:12
sanjana 4:23
saren 1:17 4:14
  5:4 11:23
satisfaction 30:7
save 22:4
saying 17:20 18:5
  18:14 31:25 32:1
  32:13,14
says 20:22 21:3,6
  21:6 22:7 23:4
  26:6,8
schedule 6:9,10
scheduled 33:24
scheduling 14:13
scheme 6:2
se 33:15
second 11:7 34:25
  36:6,18 37:7,23
  38:15
section 34:8
securities 1:5,8,14
  2:4 16:14,15
  29:25 30:7 33:16
  34:2
see 26:2,3,4,20
  38:2

seeking 30:1,18
  32:18,20 37:16
seeks 40:16
sense 14:18 17:23
  20:17
sent 17:21 22:16
  22:16 29:14
september 10:11
  10:25
serve 9:6,12,13,20
  10:14,14,17,19,24
  10:24 11:4 12:4
  14:18 17:2
served 7:1,12 8:4
  8:5,8,9,12,18 9:20
  9:21,22 10:3,5,11
  11:5 12:2,18,19
  12:21 13:4,4,9,11
  13:22 14:2,9 15:8
  15:12,15 16:25
  29:9
serving 11:3
set 8:3 11:5,7
  32:21 33:20
settle 18:24 22:3
  31:2 38:19 40:3,7
settled 22:13,15
  30:10,11 34:13
  38:23
settlement 3:1
  5:12 23:13,14
  24:12 30:8 35:4
  38:20 39:2,10
settlements 28:18
  30:12 34:25 36:9
  36:12 37:25 38:14
seven 15:25
sheehan 4:22
sheets 23:21
short 40:4
shortly 11:2
shouldn't 9:25
  11:7 33:3

**show** 3:7 7:25
21:14 24:3 25:4
25:23,24 28:9,17
34:21,22,23 39:13
**showed** 21:17
**showing** 21:13
22:17 23:22 28:10
**shown** 13:2 30:2
38:11
**sick** 25:16
**sight** 38:5
**signed** 26:20
**sit** 24:13 27:5
**sitting** 9:1 19:7
**six** 8:5,8 15:12
17:18
**smb** 1:3,11 2:1 3:1
3:5,7
**solutions** 42:20
**somebody** 21:11
21:12
**sonya** 3:25 42:3,8
**sorry** 20:2
**sosnik** 26:23
**sought** 5:14 33:20
37:18
**southern** 1:2
**speak** 29:13
**speaker** 19:8,9,10
19:13,20
**speaking** 13:8
19:25 25:10
**specific** 31:15,23
**spent** 25:14
**spring** 19:23 20:9
30:1,12,14,14,25
32:4,7 33:17
34:14 35:5,9,16
35:20 37:10 38:19
38:20,23,25 39:5
39:6,10,12,21
40:1,3,4,6,17

**spring's** 37:11,14
40:5
**stage** 31:10 35:14
39:10
**standard** 32:2
**start** 22:21 24:3
**started** 17:18
22:20 26:16
**state** 32:1 33:5
39:20
**statement** 30:3
31:14,24 32:22
33:21 38:21
**statements** 30:2
**states** 1:1 2:11
39:9
**stating** 31:23
**status** 29:6 34:19
**statutory** 38:7
**stay** 3:2 32:15
34:6 35:7 36:21
37:9,23 40:20
**stayed** 22:12 39:5
**stipulation** 8:1
11:15,19
**stock** 23:23
**stocks** 23:10,22
23:23,24
**stop** 10:16,16 39:3
**street** 4:5
**stuart** 2:22
**subject** 12:23
13:17 29:23
**submission** 11:24
**submissions** 34:18
**submit** 15:2 18:24
18:24 40:14
**submitted** 9:4
35:16
**subpoena** 7:12
11:11
**subpoenaed** 12:5
13:9,20

**subpoenas** 3:2
6:25 8:4,5,7,9,12
8:18,23 9:5,6,12
9:13,14,20,21
10:3,5,10,14,15
10:18,19,24,24
11:3,5,6,7,17 12:3
12:18,19,21 13:3
13:4,10,11,22
14:2,8,9,18 15:8
15:11,14 16:25
17:3,21
**subsequent** 39:8
**substance** 31:19
33:18
**success** 29:9 35:15
**successful** 38:25
39:7
**sued** 29:23 33:13
34:1 36:8
**sufficiency** 39:24
**sufficient** 30:15
30:25
**suing** 36:15
**suite** 4:5 42:22
**summary** 5:20,21
6:3,6
**sunday** 9:4
**supports** 37:7
**sure** 7:17 12:16
12:24 20:2,13
29:21

**t**

**t** 42:1,1
**take** 8:6 9:25 10:2
10:4 11:10,11
12:2,5,22 13:8,16
13:17,19 14:4
15:20,24 16:11,22
17:3,6,10,11,12
17:16,24 18:2,3
18:14,14,19,21,21
18:23 19:12 23:17

26:11
**taken** 15:12 17:22
**talked** 25:25
**tax** 33:21
**taxes** 25:9
**telephonically**
4:20
**tell** 5:6 9:2,15
15:9 25:20 26:17
**telling** 14:15
**tenzer** 36:1
**term** 24:15
**terms** 31:23
**testimony** 14:10
18:7
**thank** 6:11,18
18:6 19:1,2 22:10
40:23,24
**thanks** 6:19 7:23
**that's** 6:16 8:14
9:7,20 10:5,12,13
12:10,11,17,24
13:6 15:13,23
17:15,25 18:1,11
18:18 20:17 21:16
21:22 25:11,22
28:8 29:11 30:2
31:16,18,19 32:17
32:17,23,24 33:5
33:6,9
**theories** 34:10
**theory** 17:21
**there's** 7:13 12:8
23:11
**they're** 11:6 14:3
16:12 17:12 21:20
23:12 25:2,12
26:1 27:5
**thing** 15:2 21:7,19
22:4 23:11 24:24
25:12,14,19 26:8
**things** 5:22 11:9
16:17 17:20 21:17

**think** 5:21 6:16
9:4,10,15 11:18
11:19 16:20 17:9
17:15 18:1 22:6
30:19,22 31:21,24
32:3
**third** 11:12
**thought** 17:1 28:8
**thousands** 25:5
**threaten** 40:3
**three** 11:23 22:5
29:23 32:10,22
34:12
**time** 5:9,10 6:14
8:4,9,13,17 10:19
11:13,13 12:4,6
16:12 21:8,18
22:12 25:6 26:15
30:4 36:15
**timely** 7:1 12:2,3
12:20
**times** 29:9
**title** 17:18
**tl** 2:25
**today** 13:7 28:24
**told** 9:19 22:1,3
**top** 26:22
**touch** 20:20
**traders** 11:10
**trading** 6:1 16:14
**traditional** 39:17
**transcribed** 3:25
**transcript** 9:9
42:4
**transfer** 36:25
37:1 38:3,13
**transfers** 34:2
36:16 37:12
**transform** 37:18
**trial** 3:5
**true** 29:11 42:4
**trustee** 1:13 2:3
4:4 5:9 14:12

23:19 27:5 28:14
28:16 29:3,24
30:9,10,16 31:1
32:19 33:12,25
34:5,14,23 35:2,5
35:18,19 36:8,15
36:18 37:13,24
38:5,6,11,17,19
38:23 39:3,9,13
39:18 40:5,8,14
**trustee's** 36:17
38:10,18 39:22
**trustees** 22:13,15
**trustees'** 8:22
**trustee's** 28:18
30:6 33:6
**trying** 11:6 24:14
25:22 39:3
**turn** 20:18 21:10
27:17
**turned** 21:4,16
23:3
**two** 11:23 14:6
29:2 33:11 34:12
36:8,17
**tx** 4:6

**u**

**u.s.** 2:23 36:1
**ultimately** 11:15
39:12
**unable** 38:13
**underlie** 36:4
**understand** 8:5
10:6 19:7 22:1,12
24:14
**understanding**
11:15 20:7 31:10
**understood** 26:12
**united** 1:1 2:11
**unsuccessfully**
37:17
**untimely** 14:4

**unwarranted**
38:16
**use** 18:7,16 40:7
**usually** 17:2

**v**

**v** 1:7,16 2:6 34:25
36:1,6 39:15
**vacating** 40:15
**vehicle** 5:12
**veritext** 42:20
**versus** 34:2
**viability** 30:13
**violate** 36:21 37:8
37:22 40:20
**violated** 34:6 35:6

**w**

**wait** 22:15
**waited** 9:12
**waive** 22:11
**wall** 27:17
**want** 8:22 9:24
14:5,21 16:4,7,9
16:14,17 19:22
20:5,7 22:14 23:4
23:5 24:6,11,13
27:2,8,12,24 28:4
28:7
**wanted** 11:10,14
17:10 24:21
**wants** 25:20
**wasn't** 10:21 20:2
**way** 5:9 6:16
14:22,25 21:22
22:10 31:19
**weekend** 9:4
**went** 14:11 20:11
21:11,17
**we'd** 6:13
**we'll** 5:2 9:13
13:17 16:3 21:7
22:8
**we're** 5:16 12:7
13:13 15:14 17:20

18:22 21:8 31:3
32:12
**we've** 16:21 17:4
29:8 30:11
**what's** 5:7 6:20
6:23 7:14 9:23
26:22 29:6 32:21
**where's** 24:4
**why'd** 24:20
**win** 38:12
**winner** 23:16 29:3
33:1,12
**won't** 21:15 29:13
**words** 37:5
**work** 22:8
**worked** 23:1
24:25
**working** 22:6
**worried** 10:19
**worse** 26:22
**would've** 27:14
**write** 24:17,18
**wrong** 23:17
24:17 31:19
**wrongful** 37:1,12
**wrote** 25:7

**x**

**x** 1:4,10,12,19 2:2
2:9

**y**

**yeah** 5:6 18:18
19:12,19
**year** 25:4 26:17
31:5 35:13 38:22
**years** 22:14 38:4
39:1,6 40:10
**york** 1:2 2:13 4:16
24:16 26:4 36:9
**you'll** 11:15
**you're** 6:5,19
10:18 14:15 15:7
19:7,14 21:9
32:14

| you've | 7:5 31:4,4 |
|--------|------------|
| **z** | |
| zero | 33:2 |
| **'** | |
| '13 | 27:15 |
| '96 | 24:1 |