Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
David J. Sheehan
Seanna R. Brown
Heather R. Wlodek

Hearing Date: August 28, 2019
Hearing Time: 10:00 a.m. (EST)
Objection Deadline:  August 21, 2019
Time: 4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**THIRTIETH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
DECEMBER 1, 2018 THROUGH MARCH 31, 2019**

# TABLE OF CONTENTS
## (continued)

**Page**

I.  PRELIMINARY STATEMENT ..................................................................................2

II.  BACKGROUND ....................................................................................................4

    A.  THE SIPA LIQUIDATION ..............................................................................4

    B.  THE TRUSTEE, COUNSEL AND CONSULTANTS ...........................................4

    C.  PRIOR COMPENSATION ORDERS.................................................................5

III.  SUMMARY OF SERVICES ...................................................................................7

    A.  HARDSHIP PROGRAM ..................................................................................7

    B.  THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ......................8

IV.  DETAILED DESCRIPTION OF SERVICES ...........................................................8

    A.  MATTER 01 .................................................................................................9

        a.  Task Code 02: Bankruptcy Court Litigation............................9

        b.  Task Code 03: Feeder Funds..................................................11

        c.  Task Code 05: Internal Meetings with Staff...........................11

        d.  Task Code 07: Billing and Trustee Reports............................11

        e.  Task Code 08: Case Administration .......................................11

        f.  Task Code 11: Press Inquiries and Responses.........................12

        g.  Task Code 12: Document Review ...........................................13

        h.  Task Code 13: Depositions and Document Productions by
           the Trustee..............................................................................13

        i.  Task Code 14: International.....................................................13

        j.  Task Code 21: Allocation .......................................................14

    B.  MATTER 05 – CUSTOMER CLAIMS ............................................................16

        a.  Customer Claims.....................................................................16

        b.  General Creditor Claims .........................................................16

        c.  The Trustee Has Kept Customers Informed Of The Status
           Of The Claims Process............................................................17

    C.  MATTER 07 – MADOFF FAMILY ...............................................................18

    D.  MATTER 09 – FAIRFIELD GREENWICH.....................................................18

# TABLE OF CONTENTS
## (continued)

<u>Page</u>

E.     MATTER 11 – COHMAD SECURITIES CORPORATION .............................22

F.     MATTER 13 – KINGATE .................................................................23

G.     MATTER 19 – RUTH MADOFF.........................................................26

H.     MATTER 21 – AVOIDANCE ACTION LITIGATION and MATTER 75 – GOOD FAITH 5A COHMAD REFERRED ACCOUNTS..................................28

    a.     Resolution of Good Faith Avoidance Actions ...........................28

    b.     Summary Judgment Motions ................................................29

    c.     Motions To Withdraw The Reference ......................................31

    d.     Trial-Related Motion Practice................................................32

    e.     Discovery-Related Motion Practice .........................................37

I.     MATTER 29 – RYE/TREMONT ........................................................37

J.     MATTER 30 – HSBC ....................................................................39

K.     MATTER 32 – LUXALPHA UBS/LIF................................................41

L.     MATTER 34 – CITIBANK ...............................................................42

M.     MATTER 35 – NATIXIS .................................................................42

N.     MATTER 37 – ABN AMRO.............................................................43

O.     MATTER 39 – FORTIS ..................................................................46

P.     MATTER 40 – MEDICI/KOHN ........................................................46

Q.     MATTER 53 – MAGNIFY ...............................................................47

R.     MATTER 59 – STANLEY SHAPIRO..................................................48

S.     MATTER 60 – AVELLINO & BIENES ...............................................49

T.     MATTER 62 – SUBSEQUENT TRANSFERS .....................................49

U.     MATTER 65 – LEGACY .................................................................50

V.     MATTER 71 – SQUARE ONE ..........................................................52

W.     MATTER 73 – BNP PARIBAS .........................................................52

X.     MATTER 77 – EXTRATERRITORIALITY ..........................................53

V.     COMPENSATION REQUESTED........................................................55

VI.     RELEASE OF THE HOLDBACK.......................................................58

**TABLE OF CONTENTS**
**(continued)**

**Page**

VII.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ...................59

VIII.    CONCLUSION.................................................................................................................60

**TO THE HONORABLE STUART M. BERNSTEIN**
**UNITED STATES BANKRUPTCY JUDGE:**

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and the chapter 7 case of Bernard L. Madoff ("Madoff"), individually (collectively, the "Debtor"), respectfully submits this thirtieth application (the "Application") on behalf of the Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing December 1, 2018 through and including March 31, 2019 (the "Compensation Period") of $31,008,908.43, (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period of $495,036.96, and (iii) release of $11,433,697.74, a portion of the amount which has not been paid in connection with prior and current applications, and in support thereof, respectfully represents as follows:

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

## I.   <u>PRELIMINARY STATEMENT</u>

1.      The work completed as counsel to the Trustee during the Compensation Period yielded significant results for BLMIS customers and the liquidation.  Through pre-litigation and other settlements, which were approved by the Bankruptcy Court and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, nearly $13.403 billion as of May 31, 2019[2] for the benefit of all customers of BLMIS with an allowed claim.

2.      The Trustee has made ten interim distributions of customer property to date.  *See* discussion *infra* Section IV(A)(j).  The Trustee has distributed approximately $12.38 billion to BLMIS customers through May 31, 2019, inclusive of SIPC advances in the amount of $845.93 million.[3]  *See* discussion *infra* Section IV(A)(j).

3.      No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers. Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers. Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H, various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), including Browne Jacobson LLP ("Brown Jacobson"), Soroker-Agmon  ("Soroker"), Williams Barristers & Attorneys ("Williams Barristers"), various special counsel to the Trustee (collectively

---

[2] In general, figures will be reported as of March 31, 2019, unless otherwise noted.

[3] SIPC makes advances to satisfy customer claims before the Trustee recovers funds. Since the Trustee has recovered funds to satisfy customers up to $1,490,000 SIPC is reimbursed for the advances to customers whose claims have been fully satisfied to date. 1,424 BLMIS accounts have been fully satisfied.

referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and consultants, are paid out of administrative advances made by SIPC, as SIPA plainly directs. As Judge Lifland affirmed: "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.      As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.      In a SIPA liquidation proceeding such as this, where the general estate is insufficient to pay trustee and counsel compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration. *See* SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2). SIPC staff has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered. Each month, SIPC staff, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein. Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

6.      During the hearing on the Eighth Interim Fee Application, Judge Lifland acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else to follow

3

all the trails and the trails do lead almost everywhere in the world.  It is clear under
the circumstances that a Herculean effort to follow those trails has been involved
both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

7.      No single document can capture all of the tasks engaged in by the Trustee and B&H

since their appointment on December 15, 2008.  Hundreds of thousands of hours have been

expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and

advance the interests of all claimants by litigating and settling cases for the return of customer

property ("Customer Property").  Moreover, the Trustee has vigorously defended the estate with

respect to a number of litigations filed against it and against his protection of Customer Property.

The following discussion and materials attached to this Application cover the major categories of

services for which allowance of compensation is sought.

## II.    BACKGROUND

### A.    THE SIPA LIQUIDATION

8.      The Trustee and B&H's prior interim fee applications, each of which is fully

incorporated herein, have detailed the circumstances surrounding the filing of this case and the

events that have taken place during prior phases of this proceeding.

### B.    THE TRUSTEE, COUNSEL AND CONSULTANTS

9.      The Trustee and B&H's prior interim fee applications have detailed the description

of the Trustee's background and experience.

10.     In rendering professional services to the Trustee, B&H has utilized a legal team

comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax,

corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

11.     The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long

in duration, and broad in its geographical reach.  The Trustee, with the assistance of his counsel,

4

has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

## C.    PRIOR COMPENSATION ORDERS

12.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

| **Applications** | **Compensation Period** | **Orders Entered**[4] |
|---|---|---|
| First Application (ECF Nos. 320, 321) | December 11, 2008 to May 31, 2009 | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | June 1, 2009 to September 30, 2009 | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | October 1, 2009 to January 31, 2010 | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | February 1, 2010 to May 31, 2010 | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | June 1, 2010 to September 30, 2010 | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | October 1, 2010 to January 31, 2011 | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | February 1, 2011 to May 31, 2011 | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |

---

[4] On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee.  The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCACreque, an additional $0.60 became due and owing to that firm.

| **Applications** | **Compensation Period** | **Orders Entered**[4] |
|---|---|---|
| Eighth Application (ECF No. 4676) | June 1, 2011 to September 30, 2011 | January 2, 2013 (ECF No. 5181);[5] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | October 1, 2012 to January 31, 2012 | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | February 1, 2012 to June 30, 2012 | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | July 1, 2012 to November 30, 2012 | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | December 1, 2012 to April 30, 2013 | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | May 1, 2013 through July 31, 2013 | December 17, 2013 (ECF No. 5605) |
| Fourteenth Application (ECF No. 5980) | August 1, 2013 through November 30, 2013 | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | December 1, 2013 through March 31, 2014 | August 28, 2014 (ECF No. 7825) |
| Sixteenth Application (ECF No. 8549) | April 1, 2014 through July 31, 2014 | December 22, 2014 (ECF No. 8867) |
| Seventeenth Application (ECF No. 9583) | August 1, 2014 through November 30, 2014 | April 16, 2015 (ECF No. 9823) |
| Eighteenth Application (ECF No. 10814) | December 1, 2014 through March 31, 2015 | August 27, 2015 (ECF No. 11148) |
| Nineteenth Application (ECF No. 12089) | April 1, 2015 through July 31, 2015 | December 18, 2015 (ECF No. 12292) |
| Twentieth Application (ECF No. 12958) | August 1, 2015 through November 30, 2015 | April 28, 2016 (ECF No. 13180) |
| Twenty-First Application (ECF No. 13751) | December 1, 2015 through March 31, 2016 | September 8, 2016 (ECF No. 13990) |
| Twenty-Second Application (ECF No. 14456) | April 1, 2016 through July 31, 2016 | December 23, 2016 (ECF No. 14778) |
| Twenty-Third Application (ECF No. 15355) | August 1, 2016 through November  30, 2016 | May 10, 2017 (ECF No. 15984) |
| Twenty-Fourth Application (ECF No. 16367) | December 1, 2016 through March 31, 2017 | August 24, 2017 (ECF No. 16562) |
| Twenty-Fifth Application (ECF No. 16886) | April 1, 2017 through July 31, 2017 | December 21, 2017 (ECF No. 17072) |

[5] This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

6

| Applications | Compensation Period | Orders Entered[4] |
|---|---|---|
| Twenty-Sixth Application (ECF No. 17337) | August 1, 2017 to November 30, 2017 | April 25, 2018 (ECF No. 17524) |
| Twenty-Seventh Application (ECF No. 17763) | December 1, 2017 to March 31, 2018 | August 30, 2018 (ECF No. 17941) |
| Twenty-Eighth Application (ECF No. 18180) | April 1, 2018 to July 31, 2018 | December 20, 2018 (ECF No. 18324) |
| Twenty-Ninth Fee Application (ECF No. 18562) | August 1, 2018 to November 30, 2018 | April 25, 2019 (ECF No. 18696) |

## III.    SUMMARY OF SERVICES

13.    A SIPA proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.    Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

### A.    HARDSHIP PROGRAM

14.    As of March 31, 2019, the Trustee had received 458 applications from avoidance action defendants relating to 304 adversary proceedings and 641 defendants.    After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 277 Hardship Program applicants-defendants from avoidance actions.    As of March 31, 2019, there were 6 Hardship Program applicants-defendants still under review and 364 applicants-defendants were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement.    The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.    Hardship applications continue to be submitted.

### B.     THE RECOVERY AND RETURN OF CUSTOMER PROPERTY

15.     Without the need for protracted litigation, during the Compensation Period, the Trustee settled 6 cases for $6,218,735.37. Through the end of the Compensation Period, the Trustee had successfully recovered approximately $13.375 billion.[6]

16.     The Trustee entered into settlements subsequent to the Compensation Period that will bring additional funds into the Customer Fund.

17.     The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, will result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

18.     Through the end of the Compensation Period, the Trustee recovered $536,092,384.27 as a result of preferences and other settlements that were made pursuant to agreements subject to the net equity dispute.  The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

## IV.     DETAILED DESCRIPTION OF SERVICES

19.     Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested.  All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims.  The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

---

[6] As of May 31, 2019, the Trustee has successfully recovered, or reached agreements to recover, approximately $13.403 billion.

20.    Matter Number 01 is the general matter number used for tasks by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

21.    Matter Numbers 03-77 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.  In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

## A.    MATTER 01

22.    This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

### a.    Task Code 02: Bankruptcy Court Litigation

23.    This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

24.    During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations. They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations including developments in Ponzi law, fraudulent transfer law, bankruptcy matters, privilege, evidence, and rules regarding experts and expert testimony.

25.     Several customers, including claimant Mr. Aaron Blecker, objected to the Trustee's denial of their net equity claims because they disputed whether they received funds that appear to be identified on BLMIS customer account statements as "PW," or "Profit Withdrawals."

26.     Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions. Accordingly, the Trustee instituted an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper.  (ECF No. 10266)

27.     Following extensive briefing, discovery, and motion practice, the Court held a trial on the matter on January 19, 2018.  After hearing testimony from the Trustee's professionals, Mr. Blecker's son, and BLMIS employees, and consideration of the BLMIS books and records offered into evidence, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS customer statement indicated that the customer received a cash distribution in the amount of the PW Transaction. Because claimant Mr. Blecker failed to provide any credible, contrary evidence that the "PW" Transactions on his customer statements were not received, he failed to sustain his burden of proving the amount of his customer claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513 (Bankr. SDNY 2018). The Court entered its Order Affirming the Trustee's Determinations Denying Claims and Overruling the Objections of Participating Claimant Aaron Blecker on August 3, 2018.  (ECF No. 17878).

28.     An appeal was taken to the District Court. The PW appellants filed their opening brief on November 2, 2018. (ECF No. 18). On December 14, 2018, the Trustee and SIPC filed their opposition briefs in support of the Bankruptcy Court's decision. (ECF Nos. 19, 20). The

appellants' reply was filed on January 18, 2019, ECF Nos. 23, 24, and the parties are currently awaiting a date for oral argument.

### b.    Task Code 03: Feeder Funds

29.    This categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors. The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and prosecute actions against such feeder funds for the recovery of Customer Property.  Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

### c.    Task Code 05: Internal Meetings with Staff

30.    This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

### d.    Task Code 07: Billing and Trustee Reports

31.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### e.    Task Code 08: Case Administration

32.    This category relates to time spent assisting the efficient administration of the case.

33.    The Trustee filed several motions before this Court that govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

34.    On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings.  (ECF No. 4469).  This Court entered the Order on December 5, 2011.  (ECF No. 4560).

35.    On October 28, 2011, this Court entered an Order Granting Supplemental Authority to Stipulate to Extensions of Time to Respond and Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).  Supplemental Orders were entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012 (ECF No. 4483), July 18, 2014 (ECF No. 5358), January 16, 2015 (ECF No. 7037), July 17, 2015 (ECF No. 8762), July 15, 2016 (ECF No. 12312), December 23, 2016 (ECF No. 13601), July 31, 2017 (ECF No. 14447), December 31, 2017 (ECF No. 16169), June 27, 2018 (ECF No. 16718); December 19, 2018 (ECF No. 17560).  On October 18, 2018, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through December 18, 2019 (ECF No. 18093).

### f.    Task Code 11: Press Inquiries and Responses

36.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

**g.**    **Task Code 12: Document Review**

37.     This category relates to time spent by the Trustee and B&H attorneys reviewing and analyzing BLMIS documents and documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee, in order to assess relevance to case-wide strategies and to identify and develop evidence in support of the Trustee's claims and defenses, as well as other discovery-related tasks that cross multiple cases.

**h.**    **Task Code 13: Depositions and Document Productions by the Trustee**

38.     This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter, including team meetings, discussions and strategizing among Discovery Management Team case liaisons, research and analysis of issues with potential case-wide implications, creation and management of document databases, filing systems and related reference materials, analysis and coordination of discovery affirmatively produced by the Trustee in avoidance actions, and responding to discovery propounded to the Trustee by various third parties and defendants in avoidance actions.

**i.**    **Task Code 14: International**

39.     The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions.  The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Guernsey, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland.  These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

40.     This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions.   The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

41.     In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

### j.      Task Code 21: Allocation

42.     This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

43.     The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

44.     The Trustee filed ten motions seeking entry of an order approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through the Compensation Period | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $803.121 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $5.838 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $817.156 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $549.640 million | 3.180% | 6024 | 6340 |

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through the Compensation Period | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 5 | 02/06/2015 | $756.538 million[7] | $473.637 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/2015 | $345.472 million[8] | $1.420 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/2016 | $247.013 million | $223.618 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/2017 | $342.322 million | $295.782 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/2018 | $1.303 billion | $649.033 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/2019 | $515.974 million | $463.818 million | 2.729% | 18295 | 18398 |
| TOTAL | N/A | $13.305 billion | $11.534 billion | 66.633% | N/A | N/A |

45.    On February 22, 2019, the Trustee distributed approximately $464 million, or 2.729% of each BLMIS allowed claim through the completion of the Tenth Interim Distribution, unless the claim had been fully satisfied. This represents a significant milestone in this litigation, with 1,423 BLMIS accounts fully satisfied through the end of the Compensation Period.[9] The 1,423 fully satisfied accounts represent more than 62% of accounts with allowed claims. When combined with the $11.07 billion distributed as part of the First through Ninth Interim Distributions through the end of the Compensation Period and SIPC advances in the amount of $845.16 million,[10] the Trustee has distributed approximately $12.38 billion to BLMIS customers through March 31, 2019, or 66.633% of each BLMIS allowed customer claim.

---

[7] The total amount allocated in the Fifth Allocation and Fifth Interim Distribution Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[8] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Distribution Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

[9] Any customer with an allowed claim of $1,490,000.00 has been fully satisfied.

[10] SIPC makes advances to satisfy customer claims before the Trustee recovers funds. Since the Trustee has recovered funds to satisfy customers up to $1,490,000.00, SIPC is reimbursed for the advances to customers whose claims have been fully satisfied to date.

### B.    MATTER 05 – CUSTOMER CLAIMS

#### a.    Customer Claims

46.    During the Compensation Period, the Trustee allowed $244,703.37 in customer claims, bringing the total amount of allowed claims as of March 31, 2019 to $17,644,141,194.99. As of March 31, 2019, the Trustee has paid or committed to pay $845,162,577.35 in cash advances from SIPC.  This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

47.    As of March 31, 2019, 30 claims relating to 22 accounts remained "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code.  Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

#### b.    General Creditor Claims

48.    As of March 31, 2019, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 450 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265 million.  At this time, the BLMIS general estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers. If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e). All BLMIS customers who filed claims—whether their net equity customer claims were

allowed or denied—are deemed to be general creditors of the BLMIS estate. The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

### c. The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

49.     Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

50.     The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

51.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of March 31, 2019, the Trustee and his professionals had received and responded to more than 7,100 e-mails via the Trustee website from BLMIS customers and their representatives and fielded thousands of calls from claimants and their representatives.

17

52.    In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

### C.    MATTER 07 – MADOFF FAMILY

53.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing numerous avoidance actions against members of the Madoff family and Madoff-related business entities.

54.    During the Compensation Period, the Trustee continued to manage and attempt to liquidate certain marketable securities and fund and business interests transferred pursuant to the June 23, 2017 Stipulation and Order of Settlement (the "Stipulation") entered into between and among the Trustee, the U.S. Attorney's Office for the Southern District of New York (the "Government"), and the Estates of Andrew H. Madoff and Mark D. Madoff (the "Estates").  The Stipulation, which resolved all of the Trustee's claims against the Estates in *Picard v. Andrew H. Madoff*, Adv. Pro. No. 09-01503 (SMB), and against various Madoff-related business entities in related adversary proceedings, was approved by the Court on July 24, 2017. (ECF No. 311).  The Trustee and the Government share all assets received under the Stipulation equally.

55.    As of November 30, 2018, the last day of the prior Compensation Period, the Trustee had received $13,994,315.68 under the Stipulation.  As of March 31, 2019, the Trustee received an additional $24,184.90 from distributions and sales of certain of the assets under management and liquidation.

### D.    MATTER 09 – FAIRFIELD GREENWICH

56.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma"), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich

18

Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009). This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions, as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

57. On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"), (ECF No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

58. As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own

claims against the management defendants.  Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

59.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million.  *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y.), (ECF No. 107).   In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million.  Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

60.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to common briefing and hearings before Judge Rakoff of the District Court.  The Trustee briefed and presented argument at the hearings on these issues before the District Court.  As of July 31, 2014, the District Court had issued decisions on all issues subject to common briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.

61.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (SMB) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.). The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court.  None of the defendants in the three actions have yet responded to the Trustee's complaints.

62.     On November 22, 2016, this Court issued its decision on the extraterritoriality motion to dismiss. *See* discussion *infra* Section IV(X). Under the decision, some of the claims against the moving defendants in the Fairfield, Barrenche, and RD Trust actions were dismissed. Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of certain non-moving defendants to the extraterritoriality motion to dismiss. The parties agreed to consent to the entry of final judgments on the Court's extraterritoriality decision. Finally, the parties consented to direct appeal of the extraterritoriality decision to the Second Circuit.  On March 16, 2017, the Trustee filed his notice of appeal in the Fairfield, Barrenche, and RD Trust actions. (ECF Nos. 229, 97, 93).  On September 27, 2017, the Second Circuit issued an order granting the parties' request for certification for direct appeal of the appeal of the extraterritoriality decision. *Picard v. Banque Lombard Ordier & Cie SA.*, No. 17-1294 (2d Cir.), (ECF No. 388). On February 25, 2019, the Second Circuit reversed this Court's November 22, 2016 ruling.  *See* discussion *infra* Section IV(X).

63.     On January 24, 2019, in the action filed by the Joint Liquidators against the Fairfield management entities and individuals, *In re Fairfield Sentry Limited, et al*., Adv. No. 10-13164 (SMB), the parties entered a stipulation substituting the Trustee as the plaintiff. (ECF No. 87). On February 22, 2019, the Trustee filed a motion to amend the complaint with an attached proffered Amended Complaint. (ECF No. 90).

64.     On March 25, 2019, this Court approved a settlement between the Trustee and certain Fairfield management defendants: Lourdes Barrenche, Robert Blum, Cornelius Boele, Gregory Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barrenche, Inc., Dove Hill Trust, Fortuna Asset Management, and Selecta Financial Corporation. *Sec. Inv'r Prot. Corp. v. Bernard*

*L. Madoff Inv. Sec. LLC*, No. 08-01789, Order (S.D.N.Y., March 25, 2019). (ECF No. 270). The

Trustee's claims against the remaining Fairfield management defendants remain pending.

65.      On June 18, 2019, the Trustee and the remaining defendants informed this Court

they had agreed to enter mediation. (ECF No. 272).  As a result, at the parties' request, this Court

ordered the June 26, 2019 pretrial conference to be continued to December 18, 2019. (ECF No.

273). On June 19, 2019, again at the parties' request, this Court entered an order consolidating

the actions. *Picard v. Fairfield Investment Fund Limited*, No. 09-01239 and *Picard v. Fairfield

Greenwich Capital Partners*, No. 12-01702. The consolidated action shall proceed under *Picard

v. Fairfield Investment Fund Limited,* No. 09-01239. (ECF No. 274).

## E.      **MATTER 11 – COHMAD SECURITIES CORPORATION**

66.      This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Cohmad Securities Corporation ("Cohmad"), its principals, certain

employees of Cohmad, and their family members who held BLMIS IA Accounts (collectively, the

"Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code,

the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances,

disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in

connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad

Defendants. *Picard v. Alvin J. Delaire, Jr. et al.*, Adv. No. 09-01305 (SMB) (Bankr. S.D.N.Y.).[11]

67.      In November 2016, a motion was filed under Federal Rule of Bankruptcy Procedure

9019 for court approval of a settlement with certain defendants, including Cohmad Securities

Corporation, and Marcia Cohn and Marilyn Cohn, in their individual capacities and as co-

---

[11] The Adversary Proceeding is currently captioned *Picard v. Alvin J. Delaire, Jr. et al.*, Adv. Pro. No. 09-01305
(SMB), as a result of the Trustee's settlement with and dismissal from this adversary proceeding of, among others,
Cohmad.

executors of the Estate of Maurice Cohn. The Court approved that settlement on November 29, 2016. Those defendants were dismissed from this adversary proceeding on January 3, 2017.

68.    The Trustee also entered into settlement agreements throughout 2016 and 2017 with several defendants. These defendants were ultimately dismissed from this adversary proceeding. In addition, several other defendants were voluntarily dismissed from this adversary proceeding in 2016 and 2017, in connection with, among other things, negotiations.

69.    On January 10, 2019, a stipulation and order for voluntary dismissal was entered (ECF No. 404) dismissing defendants Alvin J. Delaire, Jr. and Carole Delaire from the adversary proceeding after the parties entered into a settlement agreement and release.

70.    Currently, nine defendants remain in this adversary proceeding.

71.    The Trustee continues to develop the case and continues confidential settlement discussions with certain defendants.

72.    In addition, in response to the Court's Order to Show Cause, dated February 26, 2019 (ECF No. 18515) why the Court's Order Enforcing Automatic Stay and Issuing Preliminary Injunction, dated December 4, 2013 (the "Injunction Order") should not be reconsidered, the Trustee filed a response (ECF No. 103) and appeared for a hearing on March 27, 2019.  On April 1, 2019, the Court issued an order (ECF No. 18631) vacating the Injunction Order.

## F.    MATTER 13 – KINGATE

73.    This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law, and other applicable law of approximately $926 million in initial fraudulent transfers that BLMIS made to Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," together with Kingate Global, the "Kingate Funds").  The proceeding before the Court is

captioned as *Picard v. Federico Ceretti*,[12] Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.). The

Kingate Funds are in liquidation proceedings in the BVI and Bermuda under the auspices of court-

appointed joint liquidators. Kingate Global and Kingate Euro each filed a customer claim in the

SIPA proceeding in the combined total amount of approximately $800 million. The Trustee seeks

to avoid and recover the fraudulent transfers and equitably subordinate the Kingate Funds'

customer claims. Until this proceeding is resolved, the customer claims are temporarily disallowed

under section 502(d) of the Bankruptcy Code.

74.     Throughout the Compensation Period, the Trustee's counsel has continued non-

party discovery, both within the United States and abroad, as discussed below.

75.     During the Compensation Period, the Trustee devoted substantial time to deposition

discovery of foreign-based witnesses. That process requires that the Trustee first seek the

Bankruptcy Court's issuance of a letter of request for assistance from the foreign court. Upon the

Trustee's separate motions, the Bankruptcy Court entered the following orders issuing a letter of

request to the appropriate foreign judicial authorities for the Trustee to obtain testimony:

> Order dated August 7, 2018 (ECF No. 363), relating to Mr. Scott Watson Brown. The
> Bermuda Court granted the Trustee's application to depose Mr. Watson Brown giving effect
> to the Bankruptcy Court's letter of request. The Trustee deposed Mr. Watson Brown on
> December 4, 2018, in Bermuda.

> Order dated October 1, 2018 (ECF No. 371), relating to Mr. Julian Henry Chapman. The
> English Court granted the Trustee's application to depose Mr. Chapman giving effect to the
> Bankruptcy Court's letter of request. The Trustee deposed Mr. Chapman on January 16,
> 2019, in London.

> Order dated December 4, 2018 (ECF No. 402), relating to Mr. Antony Clark. The English
> Court granted the Trustee's application to depose Mr. Clark giving effect to the Bankruptcy
> Court's letter of request. The Trustee deposed Mr. Clark on February 18, 2019, in London.

---

[12] Defendant Ceretti and 15 other defendants were dismissed by this Court's November 22, 2016 Memorandum
decision on the ground of comity. That order was reversed by the Second Circuit and those defendants are seeking a
writ of certiorari from the Supreme Court.

76.     The Trustee's motion for the Bankruptcy Court's issuance of a letter of request to
the judicial authority in Bermuda to obtain testimony and documents from Mr. Craig Perry (ECF
No. 373) resulted in a contested matter. The Bankruptcy Court conducted a hearing on the
contested motion on October 31, 2018, and on March 5, 2019, issued a written opinion granting
the motion (ECF No. 405), followed by entry of an Order on March 14, 2019, issuing the letter of
request to the judicial authority in Bermuda (ECF No. 409).  The Trustee's and Mr. Perry's
respective counsel then agreed upon a counter-proposed letter of request to the Bermuda judicial
authority, which was approved by the Bankruptcy Court (ECF No. 408).

77.     Deposition discovery of U.S.-based witnesses also continued during the
Compensation Period with the deposition of Mr. Michael Tannenbaum in New York on February
25, 2019.

78.     On February 20, 2019, the Bankruptcy Court so ordered the Amendment to the
Fourth Amendment to Case Management Report (ECF No. 404) agreed to by the Trustee and the
Joint Liquidators for the Kingate Funds, which extended the close of fact discovery as between the
Trustee and the Kingate Funds to March 29, 2019, subject to further extensions as agreed by the
parties or ordered by the Court.  The Fourth Amendment to Case Management Report was further
amended on March 27, 2019, when the Bankruptcy Court so ordered the Second Amendment
agreed to by the Trustee and the Joint Liquidators for the Kingate Funds further extending to and
including June 30, 2019, the close of fact discovery, the deadline for responding to interrogatories,
and requests for admissions. All other dates in the Fourth Amendment to Case Management Report
remain the same.

79.     On March 15, 2019, the Kingate Funds' Joint Liquidators made an additional
production of bank statements.

80.     Throughout the Compensation Period, in addition to foreign counsel, the Trustee's counsel continued to work with the Trustee's consultants in analyzing documents obtained through discovery that further support the Trustee's claims in the Fourth Amended Complaint against the Kingate Funds.

81.     Preparation for each deposition conducted during the Compensation Period required a close review of relevant documents, the preparation of deposition outlines, and consultation with counsel for the witness (if represented by counsel) and the Joint Liquidators to fix a mutually convenient date and settle on logistics and expenses.

82.     Following each deposition, the Trustee's legal team reviewed and took steps to finalize each transcript.  For those depositions occurring abroad, the process can be protracted and time consuming. The Trustee's counsel also deals periodically with issues of privilege raised during a deposition, as well as confidentiality of testimony and documents, and de-designation of confidential material in compliance with the Litigation Protective Orders entered by this Court.

83.     The Trustee's legal team includes the advice and counsel of the Trustee's foreign solicitors and barristers in the United Kingdom, Bermuda, BVI, France, and other foreign locations in which depositions are conducted under letters rogatory or the Hague Convention.  The Trustee's counsel also has sought the advice of the Trustee's consultants in the securities industry when necessary.

### G.     MATTER 19 – RUTH MADOFF

84.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing and resolving the avoidance and recovery action against Ruth Madoff seeking the return of approximately $44 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law, in connection with certain transfers of property by BLMIS to or for the benefit of

Ruth Madoff. *Picard v. Ruth Madoff*, Adv. Pro. No. 09-01391 (SMB) (Bankr. S.D.N.Y. July 29, 2009).

85.    The Trustee and B&H attorneys conducted an investigation into Ruth Madoff, including but not limited to, her role in BLMIS, her investments with BLMIS, and her use of BLMIS monies. The Trustee's investigation included, without limitation, the review and analysis of documents and communications relating to, among other things, Mrs. Madoff's involvement with BLMIS and BLMIS-related entities, the Transfers, the source of Mrs. Madoff's assets, and Mrs. Madoff's alleged use of corporate funds.

86.    Following the Trustee's investigation, the Trustee and Mrs. Madoff reached a settlement of the Trustee's claims (the "Settlement"). The principal terms and conditions of the Settlement include, among others, the following: (i) Mrs. Madoff shall make an upfront cash payment to the Trustee of Two Hundred and Fifty Thousand Dollars ($250,000.00) by bank check, wire transfer or other immediately available funds pursuant to the two-installment payment schedule set forth in the Settlement; (ii) Mrs. Madoff shall cause to be transferred to the Trustee the proceeds of two New York State 529 accounts at Ascensus Trust owned by Mrs. Madoff for the benefit of Grandchild A and Grandchild B valued at approximately Three Hundred Forty-Four Thousand Dollars ($344,000.00), less any applicable taxes, penalties or fees relating to the accounts; (iii) the proceeds of all of Mrs. Madoff's remaining assets at the time of her death shall be transferred to the Trustee following her death through a revocable trust, over which the Trustee shall have the right to preclude any changes; (iv) Mrs. Madoff will provide the Trustee with a copy of certain testamentary documents evidencing the entire transfer of her estate to the Trustee upon her death; (v) Mrs. Madoff shall cooperate with the Trustee and SIPC to the extent that her assistance is requested in connection with any of the Trustee's pending litigations; and (vi) Mrs.

Madoff and the Trustee shall provide each other mutual releases, on the specific terms set forth in the Settlement.

87.    On May 3, 2019, the Trustee and B&H attorneys filed a motion to approve the Settlement (ECF No. 52), which was approved by this Court by order entered May 28, 2019 (ECF No. 57).

88.    During the Compensation Period, B&H attorneys negotiated with counsel for Ruth Madoff to finalize the terms of the Settlement.   B&H attorneys also prepared the Settlement Agreement and related documents and performed an extensive review of testamentary documents integral to the Settlement.  B&H attorneys also corresponded with Ascensus Trust concerning the liquidation of the two New York State 529 accounts in connection with the Settlement.

### H.    MATTER 21 – AVOIDANCE ACTION LITIGATION AND MATTER 75 – GOOD FAITH 5A COHMAD REFERRED ACCOUNTS

89.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, discovery requests, and reviewing produced documents, communicating formally and informally with counsel for various defendants, reviewing Hardship Program applications, drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

### a.    Resolution of Good Faith Avoidance Actions

90.    At the beginning of the Compensation Period, there were 150 active good faith avoidance actions.  Seven (7) were closed during the Compensation Period, leaving a total of 143

active good faith avoidance actions by the end of the Compensation Period.  In certain avoidance actions, the Trustee entered into mediations and where appropriate, agreed to dismiss certain defendants from the actions.  During the Compensation Period, the Trustee dismissed two (2) cases for unlikely recovery/insufficient assets.  In addition, the Trustee's counsel engaged in settlement negotiations, which led to five (5) cases entering into documented settlements during the Compensation Period.

### b.    Summary Judgment Motions

#### 1.    South Ferry/Lowrey Motions

91.    Prior to the Compensation Period, the Trustee entered into separate stipulations with (1) Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson, and Zev Wolfson, (2) Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and Abraham Wolfson, (3) Defendant United Congregations Mesora, and (4) James Lowrey, setting a schedule for summary judgment motion practice (collectively, the "South Ferry/Lowrey Actions"). *See* Adv. Pro. No. 10-04488, ECF No. 77; Adv. Pro. No. 10-04350, ECF No. 86; Adv. Pro. No. 10-05110, ECF No. 53; Adv. Pro. No. 10-04387, ECF No. 71.

92.    Prior to the Compensation Period, from July 2017 through September 2017, the parties in the South Ferry/Lowrey Actions filed and briefed motions for summary judgment.  *See* Adv. Pro. No. 10-04488, ECF Nos. 86-93, 96-97, 100, 103; Adv. Pro. No. 10-04350, ECF Nos. 95-102, 105-106, 109, 112; Adv. Pro. No. 10-05110, ECF Nos. 60-69, 70-71, 74, 77; Adv. Pro. No. 10-04387, ECF Nos. 78-81, 83-84, 86-87, 91-92.  On December 6, 2017, oral argument was held on the parties' motions for summary judgment.

93.    On March 22, 2018, the Bankruptcy Court issued its Report and Recommendation to the District Court granting the Trustee's motion for summary judgment and denying the South Ferry/Lowrey Actions' motions for summary judgment. *See In re Bernard L. Madoff [Good Faith*

*Summary Judgment]*, Adv. Pro. No. 08-01789 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. March 22, 2018).

94.     On April 26, 2018, counsel for the South Ferry/Lowrey actions filed their Rule 9003 Objections to the Bankruptcy Court's Report and Recommendation. *See* Adv. Pro. No. 10-04387, ECF No. 116.  On June 1, 2018, the Trustee filed his Response to Defendants' Rule 9033 Objections.  Adv. Pro. No. 10-04387, ECF No. 119. As of June 14, 2018, the case was assigned to District Court Judge Paul Engelmayer for his review and approval.

95.     On February 7, 2019, Judge Engelmayer issued his ruling adopting the Bankruptcy Court's Report and Recommendation, granting summary judgment to the Trustee, and denying summary judgment to the Defendants in the South Ferry/Lowrey Actions. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), 2019 WL 479185 (S.D.N.Y. Feb. 7, 2019).

96.     Defendants filed their notice of appeal to the Second Circuit on February 19, 2019. *See* No. 18-cv-05381, ECF No. 32.  Defendants subsequently posted the requisite bond on April 9, 2019. *Id.*, ECF No. 37.

### 2.     Michael Mann Motion

97.     On December 21, 2018, the Trustee filed his Motion For Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 140-143.  On February 22, 2019, the defendants filed their opposition brief to the Motion For Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 158-160.  On March 27, 2019, the Trustee filed his reply brief in further support of his Motion For Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 164, 166-167.  Oral argument before the Bankruptcy Court was held on April 24, 2019.

c.    **Motions To Withdraw The Reference**

1.    **Saren-Lawrence/Nelson Motions**

98.    Prior to the Compensation Period, on July 7, 2018, counsel for defendants in three actions, *Picard v. Saren Lawrence,* Adv. Pro. No.. 10-04898, *Picard v. Carol Nelson, et al.,* Adv. Pro. No. 10-04377, and *Picard v. Carol Nelson,* Adv. Pro. No. 10-04658, moved to withdraw the reference to the Bankruptcy Court (the "Saren-Lawrence Motions to Withdraw") on their asserted right to a jury trial before the District Court.  *See* No. 17-cv-05157, ECF No. 1.  On November 1, 2017, the Trustee filed his opposition brief to Saren-Lawrence Motions to Withdraw.  *See* No. 17-cv-05157, ECF No. 16.  On Dec 6, 2017, the defendants filed their reply brief in further support of the Saren-Lawrence Motions to Withdraw.  *See* No. 17-cv-05157, ECF No.17.  On May 15, 2018, District Court Judge George B. Daniels issued his Memorandum Decision and Order denying the Saren-Lawrence Motions to Withdraw.

99.    On May 29, 2018, the defendants filed their Motion For Reconsideration And Alternatively, to Certify An Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), of Judge Daniels' Memorandum Decision and Order denying the Saren-Lawrence Motions to Withdraw. *See* No. 17-cv-05157, ECF Nos. 20-21 (the "Motion for Reconsideration").  On June 4, 2018, the Trustee filed his opposition brief, and on July 19, 2018, defendants filed their reply brief in further support of the Motion for Reconsideration. *See* No. 17-cv-05157, ECF Nos. 24-26.  On September 11, 2018, Judge Daniels issued his Memorandum Decision and Order denying the Motion for Reconsideration.  *See* No. 17-cv-05157, ECF No. 30.

100.    On September 26, 2018, the defendants filed a petition for a writ of mandamus in the Second Circuit, pursuant to 28 U.S.C. § 1651 and Fed. R. App. P. 21, requesting that the Second Circuit reverse Judge Daniels' denial of their motion to withdraw the reference.  On February 20, 2019, the Second Circuit denied the mandamus petition.  *See* No. 18-2840, ECF No. 34.

### 2.    Michael Mann Motion

101.    Prior to the Compensation Period, on October 26, 2018, counsel for defendants in *Picard v. BAM L.P.,* Adv. Pro. No. 10-04390, moved to withdraw the reference to the Bankruptcy Court (the "Mann Motion to Withdraw") on their asserted right to a jury trial before the District Court.  *See* No. 18-cv-09916, ECF No. 1.

102.    On December 27, 2018, Trustee filed his opposition brief to the Mann Motion to Withdraw.  *See* No. 18-cv-09916, ECF No. 17.  On January 16, 2019, the defendants filed their reply brief in further support of the Mann Motion to Withdraw.  *See* No. 18-cv-09916, ECF No. 22.  The matter remains pending before District Court Judge Vernon S. Broderick.

### d.    <u>Trial-Related Motion Practice</u>

### 1.    Saren-Lawrence Action

103.    Prior to the Compensation Period, on October 16, 2018, the Bankruptcy Court issued an Order setting the trial in *Picard v. Saren Lawrence,* Adv. Pro. No. 10-04898, to begin on February 20, 2019.  *See* Adv. Pro. No. 10-04898, ECF No. 150 (the "Saren-Lawrence Action").

104.    On December 5, 2018, counsel for defendants Helene Saren-Lawrence moved to adjourn the trial dates *sine die*, to which the Trustee opposed on December 12, 2018.  *See* Adv. Pro. No. 10-04898, ECF Nos. 156-58, 160-61 (the "Motion to Adjourn").  Counsel for the defendants filed a reply brief on December 14, 2018.  *See* Adv. Pro. No. 10-04898, ECF No. 163.

105.    On December 19, 2018, the Bankruptcy Court heard arguments regarding the Order to Show Cause and the Motion to Adjourn.  The Bankruptcy Court subsequently filed on January 2, 2019 its Memorandum Decision and Order Denying Motion to Adjourn Trials *Sine Die*.  *See* Adv. Pro. No. 10-04898, ECF No. 167.

106.    On January 11, 2019, counsel for Saren-Lawrence filed a letter motion seeking to adjourn the trial due to Saren-Lawrence's current medical condition, and the Trustee responded on

January 18, 2019, consenting to adjournment of the trial to allow Saren-Lawrence to submit an updated hardship application with supporting documentation. On February 22, 2019, an Order was entered adjourning the trial for the Saren-Lawrence Action, permitting Saren-Lawrence to submit hardship application with supporting documentation by March 1, 2019, and scheduling another pre-trial conference on March 27, 2019. *See* Adv. Pro. No. 10-04898, ECF No. 174.

107.    Following the March 27, 2019 pre-trial conference, the Bankruptcy Court issued a bench ruling granting the Trustee permission to file a motion for summary judgment in the Saren-Lawrence Action.

108.    The Saren-Lawrence Action was settled as of June 20, 2019 and was voluntarily dismissed with prejudice via stipulation on June 25, 2019. *See* Adv. Pro. No. 10-04898, ECF No. 177.

## 2.    Nelson Action

109.    Prior to the Compensation Period, on November 15, 2018, the Trustee submitted a letter to the Bankruptcy Court indicating that the parties agreed to set trial in the matter of *Picard v. Carol Nelson*, Adv. Pro. No. 10-04658 to begin on May 8, 2019, but the parties could not agree on a trial date for *Picard v. Carol Nelson, et al.*, Adv. Pro. No. PN 10-04377 involving both Carol Nelson and her husband Stanley Nelson (together the "Nelson Actions"). Counsel for the Nelsons also declined to agree to a consolidated trial of the Nelson Actions. *See* Adv. Pro. No. 10-04658, ECF No. 114; Adv. Pro. No. No. 10-04377, ECF No. 108.

110.    On November 28, 2018, the Bankruptcy Court issued an oral order to show cause why the Nelson Actions should not be consolidated for trial pursuant to Federal Rule of Civil Procedure Rule 42 (the "Order to Show Cause"). On December 5, 2018, counsel for the Nelsons filed their response, opposing consolidation, and on December 12, 2018, the Trustee filed his

response, in favor of consolidation. *See* Adv. Pro. No. 10-04658, ECF Nos. 118, 121; Adv. Pro.

No. 10-04377, ECF Nos. 113, 116.

111.    On December 5, 2018, counsel for defendants Carol Nelson and Stanley Nelson

moved to adjourn the trial *sine die*, to which the Trustee opposed on December 12, 2018. *See* Adv.

Pro. No. 10-04658, ECF Nos. 117-18, 120; Adv. Pro. No. 10-04377, ECF Nos. 112-13, 115 (the

"Motion to Adjourn"). Counsel for the defendants filed a reply brief on December 14, 2018. *See*

Adv. Pro. No. 10-04658, ECF No. 123; Adv. Pro. No. 10-04377, ECF No. 118.

112.    On December 19, 2018, the Bankruptcy Court heard arguments regarding the Order

to Show Cause, and the Motion to Adjourn, and issued a bench ruling for the Nelson Actions to

be consolidated and scheduled for trial beginning May 8, 2019. *See* Adv. Pro. No. 10-04658, ECF

No. 130; Adv. Pro. No. 10-04377, ECF No. 123. The Bankruptcy Court subsequently filed on

January 2, 2019 its Memorandum Decision and Order Denying Motion to Adjourn Trials *Sine Die*.

*See* Adv. Pro. No. 10-04658, ECF No. 127; Adv. Pro. No. 10-04377, ECF No. 126.

113.    On April 1, 2019, the Defendants sought to adjourn the trials again, but the Trustee

opposed the Defendants' request in a letter response dated April 2, 2019. The Defendants replied

in another letter dated April 3, 2019. On April 22, 2019, the Bankruptcy Court issued an order

denying the Defendants' adjournment request. *See* Adv. Pro. No. 10-04658, ECF Nos. 133-137,

Adv. Pro. No. 10-04377, ECF Nos. 130-34.

114.    On April 24, 2019, the Trustee filed three motions in limine: (1) to admit the plea

allocutions of Bernard L. Madoff and BLMIS employees, (2) to admit the trial testimony of Frank

DiPascali, and (3) to exclude testimony and exhibits related to the Defendants' asserted tax

obligations to governmental taxing authorities. *See* Adv. Pro. No. 10-04358, ECF Nos. 138-140;

Adv. Pro. No. 10-04377, ECF Nos. 135-138. On May 1, 2019, the Defendants filed their opposition

34

briefs to the motions in limine. *See* Adv. Pro. No. PN 10-04658, ECF Nos. 150-51; Adv. Pro. No. 10-04377, ECF Nos. 147-48.

115.    On May 2, 2019, the Defendants filed their objection to the admissibility of the Trustee's Madoff and/or BLMIS-generated exhibits, and on May 6, 2019, to the admissibility of certain of the Trustee's exhibits that constituted expert reports and criminal trial testimony of Frank DiPascali. *See* Adv. Pro. No. PN 10-04658, ECF Nos. 152, 158; Adv. Pro. No. 10-04377, ECF Nos. 149, 155.

116.    On May 3, 2019, the Trustee filed his motion to quash the subpoena served on the Trustee and his motion to strike Bernard L. Madoff, Enrica Cotellessa-Pitz, and Agatha M. Cole from Defendants' proposed witness list. *See* Adv. Pro. No. 10-04658, ECF Nos. 153-56; Adv. Pro. No. 10-04377, ECF Nos. 150-153. On May 6, 2019, the Defendants filed their opposition brief to both motions. Adv. Pro. No. 10-04658, ECF No. 159; Adv. Pro. No. 10-04377, ECF No. 156.

117.    The trial was held on May 8, 2019 and May 9, 2019. On May 16, 2019, the parties stipulated, and the Bankruptcy Court so ordered, the post-trial briefing schedule which stated that (1) the parties shall exchange exhibit lists and deposition and trial transcript designations by June 17, 2019, (2) the parties shall exchange objections to exhibits and objections and cross-designations to deposition and trial transcript designations by July 1, 2019, (3) the Trustee shall file his proposed Findings of Fact and Conclusions of Law by July 30, 2019, and (4) the Defendants shall file their response to the Trustee's proposed Findings of Fact and Conclusions of Law by August 30, 2019. *See* Adv. Pro. No. 10-04658, ECF No. 160, Adv. Pro. No. 10-04377, ECF No. 157.

### 3.    Michael Mann Action

118.    Prior to the Compensation Period, on September 28, 2018, the Bankruptcy Court issued an Order setting the trial in the Mann Action to start on December 3, 2018. *See* Adv. Pro.

No. 10-04390, ECF No. 108. In response, the Defendants filed the Mann Motion to Withdraw one month later, on October 26, 2018, and on November 20, 2018, moved to stay the December 3 trial, pending a ruling from the District Court on the Mann Motion to Withdraw. *See* Adv. Pro. No. No. 10-04390, ECF Nos. 114, 121-122. The Trustee filed his opposition to the Defendants' motion to stay the trial on November 27, 2018, and oral arguments were held on November 28, 2018. *See* Adv. Pro. No. 10-04390, ECF Nos. 127-28, 130.

119.    At the November 28, 2018 hearing, the Bankruptcy Court offered the Defendants the opportunity to make an oral motion to withdraw their customer claims and objections to the Trustee's determinations of those claims, and the Court granted the motion, which was memorialized in the subsequent Order Withdrawing Claims and Objections With Prejudice And Finally Determining Net Equity filed on December 20, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 138. However, the order did not determine the Bankruptcy Court's jurisdiction over the Mann Action, for which the parties provided separate briefing on December 5, 2018 and December 12, 2018, respectively. *See* Adv. Pro. No. 10-04390, ECF Nos. 132, 137. On January 18, 2019, the Bankruptcy Court issued its Memorandum Decision and Order holding that the Court has equitable jurisdiction over the Mann Action despite the Defendants' withdrawal of their customer claims and objections (the "Jurisdictional Decision"). *See* Adv. Pro. No. 10-04390, ECF No. 148.

120.    On January 25, 2019, the Defendants moved for leave to appeal the Jurisdictional Decision. *See* Adv. Pro. No. 10-04390, ECF Nos. 149-150. The Trustee opposed the motion on February 8, 2019. *See* Adv. Pro. No. 10-04390, ECF Nos. 155-156. On February 19, 2019, the Defendants filed their reply brief in further support of their motion for leave to appeal the Jurisdictional Decision. *See* No. 19-cv-00812, ECF Nos. 6-7. The motion for leave remains pending before District Court Judge Vernon S. Broderick.

e.    **Discovery-Related Motion Practice**

1.    **Trustee's Motion For Limited Additional Discovery**

121.    Prior to the Compensation Period, on September 21, 2018, the Trustee filed his

Motion and Memorandum of Law For Limited Additional Discovery Based on Prior Orders

Authorizing Deposition of Bernard L. Madoff (the "Motion For Limited Additional Discovery")

in at least 92 of his avoidance actions, all of which had participated in the Madoff deposition. *See*

Adv. Pro. No. 08-01789, ECF No. 18015.

122.    On February 15, 2019, the Bankruptcy Court issued the Memorandum Decision

Regarding Trustee's Motion for Additional Discovery, and on March 6, 2019, entered its Order

Granting in Part and Denying in Part Trustee's Motion For Limited Additional Discovery.

Specifically, the Bankruptcy Court stated that (1) in those avoidance actions in which fact

discovery was closed, the Trustee may depose one of the identified FBI agents on or by May 30,

2019; (2) in those avoidance actions in which fact discovery remains open, the Trustee may depose

former BLMIS employees Annette Bongiorno, Daniel Bonventre, and Joann Crupi; and (3) "the

Chaitman Defendants had previously issued subpoenas to numerous BLMIS traders which were

held in abeyance pending the conclusion of the Madoff Deposition. (*See* Order Implementing the

Court's May 31, 2017 and June 29, 2017 Bench Rulings on Multiple Discovery Disputes, dated

July 26, 2017, at ¶¶ 2-3 (ECF Doc. # 16459).) The Chaitman Defendants may now proceed with

those subpoenas to the extent they were timely served." *See* Adv. Pro. No. 08-01789, ECF Nos.

18480, 18537.

I.    **MATTER 29 – RYE/TREMONT**

123.    This matter categorizes time spent by the Trustee and B&H attorneys following the

settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc.,

Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous

related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS (the "Tremont Litigation"). *Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010).

124.    After the court filing, the parties entered into substantive settlement negotiations, which resulted in a significant settlement approved by the Court on September 22, 2011.  The settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion.  *Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF No. 38).  This is the largest cash settlement to date in any case brought by the Trustee against any feeder or investment fund.

125.    Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court.  There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").

126.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011.  *See Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18, 2011).  On June 27, 2012, United States District Judge George B. Daniels granted the Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012.  (ECF Nos. 35, 36).

127.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit.  (ECF No. 37).  Prior to submitting any briefing, however, the parties submitted a joint stipulation

of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

128.    On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.*, Adv. Proc. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al.*, Adv. Proc. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

129.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.,* Adv. Proc. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her. After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

130.    During the Compensation Period, B&H attorneys drafted and revised a rider to be inserted into the reply brief to the defendants' opposition to the Trustee's motion for leave to amend the original complaint in the Citibank case. *See* discussion *infra* Section IV(L). B&H attorneys also continued their review of those documents recovered from Tremont's Iron Mountain warehouse facility that contained the remainder of its Madoff-related hard-copy documents.

## J.    **MATTER 30 – HSBC**

131.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), as well as affiliated feeder funds including Thema

International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., and Alpha Prime Fund, as well as management companies affiliated with those funds, seeking the return of approximately $1.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2012).

132.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate.  ECF Nos. 338, 339, 349, 350, 352, 363.

133.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate. ECF No. 16431.

134.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate. ECF No. 16430.

135.    On October 20, 2017, this Court approved a settlement between the Trustee and Thema International Fund plc.  *Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364, ECF No. 482.  Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

136.    On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. *Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364, ECF No. 497. The Trustee's litigation with Alpha Prime is ongoing.

## K.    MATTER 32 – LUXALPHA UBS/LIF

137.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action").  *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

138.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action").  *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

139.    During the Compensation Period, the Trustee undertook international discovery efforts —including in the Bahamas, the United Kingdom, and other jurisdictions—to obtain other documents related to the Trustee's claims and reviewed and analyzed documents in connection with the Trustee's international discovery efforts.  The Trustee continued to develop his case against the defendants and relevant parties, analyzed evidence, and conducted legal research as to the Trustee's claims.

140.    During the Compensation Period, the Trustee engaged in mediation with Defendant Luxalpha.  The Luxalpha Action and LIF Action remain ongoing.

41

## L.    **MATTER 34 – CITIBANK**

141.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citicorp North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action").  *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

142.    On December 14, 2018, the Trustee moved for leave to file an amended complaint under Rule 15 of the Federal Rules of Civil Procedure and Rule 7015 of the Federal Rules of Bankruptcy Procedure. With this motion, the Trustee submitted a proposed amended complaint against Citibank N.A. and Citicorp North America, Inc.

143.    In March 2019, B&H attorneys analyzed the defendants' opposition to the Trustee's motion for leave to amend and began preparing the reply brief to be filed in May 2019. B&H attorneys also continued to review documents relevant to the action.

## M.    **MATTER 35 – NATIXIS**

144.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

42

145.    During the Compensation Period, the Trustee entered stipulations with opposing counsel for the Trustee to file his motion for leave to amend the original Natixis complaint and the related proposed amended complaint.  Id., (ECF Nos. 166, 168). On December 28, 2018, the Trustee filed his motion for leave to amend as well as the proposed amended complaint.  *Id*., (ECF Nos. 169-70).

146.    During the Compensation Period, the Second Circuit issued its opinion regarding extraterritoriality and comity, reversing the Bankruptcy Court's 2016 decision. *In re Picard, Trustee for Liquidation of BLMIS*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *infra* Section IV(X). This Second Circuit decision revived claims against all Natixis Defendants. To give the Trustee time to analyze the Second Circuit decision, the parties entered a stipulation on February 27, 2019, staying the action for 30 days. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 180).  On March 28, 2019, the parties then entered a stipulation to stay the action until the mandate issues from the Second Circuit and the Bankruptcy Court's jurisdiction over the case is revived.  *Id*., (ECF No. 181).

## N.    MATTER 37 – ABN AMRO

147.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("ABN/RBS") seeking the return of approximately $276 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain subsequent transfers of BLMIS customer property to ABN/RBS (the "ABN/RBS Action").  *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.)*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

148.    Following Judge Rakoff's Opinion and Order on July 6, 2014,[13] the Trustee filed

the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and

Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1)

(the "Omnibus Motion").    *Picard v. ABN AMRO Bank N.V.*, No. 10-05354 (SMB) (Bankr.

S.D.N.Y.) (ECF Nos. 69-71).  The Trustee's Omnibus Motion sought, among other things, limited

discovery relevant to good faith under either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) (the

"Limited Discovery Issue") from the defendants, as well as leave to file an amended complaint

against the defendants (the "Leave to Replead Issue").  *Id.*

149.    On December 31, 2014, ABN/RBS joined in the Consolidated Supplemental

Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on

Extraterritoriality (the "Consolidated Motion to Dismiss").  *Id.*, ECF No. 90.

150.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision

Regarding Claims to Recover Foreign Subsequent Transfers (the "ET Decision") that denied the

Consolidated Motion to Dismiss as to ABN/RBS in this adversary proceeding, and granted the

Trustee leave to amend the complaint relating to extraterritoriality.  *Sec. Inv. Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.) (ECF No.

14495). *See* discussion *infra* Section IV(X).

151.    On March 3, 2017, in connection with the Bankruptcy Court ET Decision, the

Bankruptcy Court so ordered a stipulated order denying ABN/RBS's motion to dismiss the

complaint and granting the Trustee's motion to amend relating to extraterritoriality (the "ET

---

[13] On July 6, 2014, Judge Rakoff issued a decision indicating that certain of the Trustee's claims were barred under *Morrison*, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

Order"). *Picard v. ABN AMRO Bank N.V.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y.) (ECF No. 117).

152.    On June 18, 2018, the Court denied the branch of the Trustee's Omnibus Motion as to the Limited Discovery Issue and acknowledged that the parties previously agreed that further briefing and proceedings on the Leave to Replead Issue would be deferred until after the Court entered a decision on the Limited Discovery Issue. *Picard v. ABN AMRO Bank N.V.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y.) (ECF No. 168).

153.    On August 14, 2018, the Parties entered into a Tolling Agreement providing for the dismissal without prejudice of the Trustee's claim seeking to recover approximately $74.6 million in subsequent transfers of BLMIS customer property that ABN/RBS received from Rye Select Broad Market XL Portfolio, Ltd. (the "RBS-Rye XL Portfolio Claim"), subject to the right of the Trustee to reinstate the RBS-Rye XL Portfolio Claim by filing an amended complaint in accordance with the terms of the Tolling Agreement.

154.    On February 25, 2019, the Second Circuit issued an Order and Opinion vacating the Bankruptcy Court's ET Decision and remanded the case for further proceedings. *In re Picard*, 917 F.3d 85 (2d Cir. 2019) (ECF No. 1311-1). *See* discussion *infra* Section IV(X).

155.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued to prepare a motion for leave to file a Second Amended Complaint and a proposed Second Amended Complaint with regard to the Leave to Replead Issue. The proposed Second Amended Complaint also will incorporate amendments authorized by the Bankruptcy Court ET Decision, the ET Order and the Tolling Agreement.

156.    On June 10, 2019, B&H attorneys, on behalf of the Trustee, filed the Motion for Leave to File a Second Amended Complaint, the Proposed Second Amended Complaint, and all related exhibits.

### O.    MATTER 39 – FORTIS

157.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants (the "Fortis Action"). *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

158.    On January 11, 2019, the Bankruptcy Court so ordered the Stipulation and Order Concerning the Trustee's Motion for Leave to File an Amended Complaint. *Id.* (ECF No. 162).

159.    On February 22, 2019, the Trustee filed the Motion for Leave to File an Amended Complaint. *Id.*, (ECF No. 165).

### P.    MATTER 40 – MEDICI/KOHN

160.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against Sonja Kohn, Infovaleur, Inc., and Tecno Development & Research Ltd. (collectively, the "Kohn Defendants") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code and New York state law. *Picard v. Kohn, et al.*, Adv. No. 10-05411 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

46

161.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, entered into a stipulation with counsel for the Kohn Defendants for the Trustee to file a Third Amended Complaint. (*Id.*, ECF No. 349). Pursuant to this stipulation, the Trustee drafted, filed and served a Third Amended Complaint on March 25, 2019. (*Id.*, ECF No. 352–53).

162.    Also during the Compensation Period, B&H attorneys filed and served a notice of adjournment of the pre-trial conference in this action. (*Id.*, ECF Nos. 340–41).

### Q.    MATTER 53 – MAGNIFY

163.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green and Express Enterprises Inc. (collectively, the "Magnify Defendants") seeking the return of over $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants. *Picard v. Magnify Inc., et.al.*, Adv. No. 10-05279 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

164.    During the Compensation Period, the Trustee continued to analyze strategic issues relating to the case, including working with experts, addressing discovery needs and developing case strategy, following the Court's April 13, 2018 Memorandum Decision Denying Defendants' Motion to Dismiss (ECF No. 143). On December 21, 2018, the Court so ordered the parties' Eleventh Amended Case Management Plan and scheduled a status conference for February 12, 2019 (ECF No. 175), which was subsequently adjourned to June 18, 2019. (ECF No. 177). At the subsequent status conference, the parties were directed to participate in mediation and to notify the Court when they had agreed on a mediator. On July 11, 2019, the Court entered an order appointing Mr. Ted Berkowitz as the mediator. (ECF No. 185).

165.    The Trustee also continued to prosecute two actions brought in Israel in December 2015 to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts.  In connection with these actions, the Trustee worked with Israeli counsel to navigate various issues related to document discovery, including dealing with logistical and strategic issues relating to the production of documents in a foreign country, assessing deficiencies in the defendants' discovery responses, and performing various legal and factual research in preparation for a hearing before the Israeli court and mediation with certain defendants.  The Trustee also worked with Israeli counsel to draft and file various pleadings in the Israeli actions, including an amended statement in reply and various discovery-related and procedural motions.

### R.    MATTER 59 – STANLEY SHAPIRO

166.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, the Estate of Renee Shapiro, S&R Investment Co., David Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *Picard v. Shapiro*, Adv. No. 10-05383 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

167.    In early 2014, the Trustee filed a second amended complaint against the Shapiro Defendants. The Shapiro Defendants moved to dismiss the second amended complaint on several grounds including, but not limited to, that they could avail themselves of the safe harbor protection under Section 546(e) of the Bankruptcy Code. In late 2015, the Bankruptcy Court issued a written decision in which it granted in part and denied in part the Shapiro Defendants' motion (ECF No. 59).

168.    During the Compensation Period, the Trustee continued to develop his case against the Shapiro Defendants. The Trustee received and reviewed documents produced by the Shapiro Defendants and deposed defendants David Shapiro, Leslie Shapiro Citron, and Kenneth Citron, as well as third-party Annette Bongiorno

169.    On July 10, 2019, the Trustee and the defendants informed this Court they had agreed to enter mediation. (ECF No. 18859).

### S.    MATTER 60 – AVELLINO & BIENES

170.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

171.    During the Compensation Period, the Trustee engaged in various aspects of discovery, including reviewing documents produced by the A&B Defendants and third-parties, analyzing evidence with the help of consultants, producing additional documents to the A&B Defendants, preparing for depositions, performing overall case management, and conferring with counsel for defendants and third-parties.

### T.    MATTER 62 – SUBSEQUENT TRANSFERS

172.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.

173.    Prior to the Compensation Period, the Trustee briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to common briefing and hearings.  As of July 31, 2014, the District Court issued all of its decisions on the issues subject to common briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.

174.    As part of its common briefing decisions, the District Court remanded the cases in which subsequent transfer defendants filed an extraterritoriality motion to dismiss.

175.    On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss. This matter was appealed to the Second Circuit, which recently ruled in favor of the Trustee. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). *See* discussion *infra* Section IV(X).

176.    As part of the original December 10, 2014 scheduling order regarding the extraterritoriality motion to dismiss briefing this Court held in abeyance the Trustee's Motion for Limited Discovery until after ruling on the Defendants' Extraterritoriality Motion to Dismiss. On June 5, 2018, the Court denied the Trustee's Motion for Limited Discovery. (ECF 16927).

177.    As of March 31, 2019, the Trustee's claims against the subsequent transfer defendants remain pending.

U.    **MATTER 65 – LEGACY**

178.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the Legacy Capital Defendants. *Picard v. Legacy Capital Ltd*., Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

179.    During the Compensation Period, the Trustee continued to develop his case against Legacy.  On December 21, 2018, B&H attorneys, on behalf of the Trustee, filed a motion for summary judgment against Legacy in connection with count one of the amended complaint.  This motion related to transfers Legacy received during the two-year period from the December 11, 2008 filing date of the SIPA liquidation, of which $86,505,850 comprised fictitious profits.  Additionally, during the Compensation Period, B&H attorneys prepared a Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056-1 in support of the Trustee's motion for summary judgment.

180.    On March 1, 2019, Defendant Legacy filed its opposition to the Trustee's Motion for Summary Judgment along with a Counter-Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056-1.  On March 22, 2019, B&H attorneys, on behalf of the Trustee, filed a reply brief in further support of the Trustee's Motion for Summary Judgment.

181.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared for oral argument on the motion for summary judgment. Oral argument took place on April 9, 2019, and the Court took the matter under advisement.

182.    On June 25, 2019, Judge Bernstein issued an opinion denying the Trustee's motion for summary judgment and granting relief under Federal Rule of Civil Procedure 56(g).  The court held that certain facts "are deemed either immaterial or undisputed for the purposes of this adversary proceeding" and that the Trustee "has shown that there is no genuine material issue of fact regarding his *prima facie* case and those facts are deemed established for the purposes of this adversary proceeding." Judge Bernstein directed the parties to prepare an order in connection with

51

the established facts of the opinion. The parties were also directed to contact Judge Bernstein's chambers in order to fix a trial date on the following issues: (a) the start date of the BLMIS Ponzi scheme; and (b) the relationship, if any, between BLMIS's purchase of U.S. Treasury Bills from third-party brokers, and the purported resale of a portion of those purchases to Legacy in its BLMIS account, and whether any profits reported to Legacy during the Ponzi scheme were real rather than fictitious.

## V.    MATTER 71 – SQUARE ONE

183.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Square One Fund Ltd. ("Square One") seeking the return of approximately $26 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law, in connection with certain transfers of property by BLMIS to or for the benefit of Square One. *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

184.    On December 21, 2018, the Trustee filed and served the Amended Complaint.  (*Id.*, ECF No. 167–69).

185.    On February 14, 2019, Square One filed a motion to dismiss.  (*Id.*, ECF No. 170).

186.    The Trustee filed an opposition to Square One's motion to dismiss on April 1, 2019. (*Id.*, ECF No. 171).  Square One replied to the Trustee's opposition on April 30, 2019.  (*Id.*, ECF No. 173).

187.    On May 29, 2019, the Court held a hearing on Square One's motion to dismiss.  At the conclusion of the hearing, the Court granted in part and denied in part the motion to dismiss.

## W.    MATTER 73 – BNP PARIBAS

188.    This matter categorizes time spent by the Trustee and B&H attorneys in separate adversary proceedings that collectively seek the return of approximately $1 billion under SIPA,

the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust (Cayman) Limited, BNP Paribas Securities Services, BNP Paribas (Suisse) S.A., and BGL BNP Paribas Luxembourg S.A., (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS. *See Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. Nov. 3, 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. May 4, 2012); and *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. Dec. 1, 2010) (collectively, the "BNP Paribas Proceedings").

189.    On September 13, 2018, the parties stipulated, and the Bankruptcy Court so ordered, to dismiss claims to recover subsequent transfers from Ascot Partners, L.P. ("Ascot") to Defendant BNP Paribas Bank & Trust Cayman Limited pursuant to a settlement agreement dated July 3, 2018 that the Trustee entered into with Ascot and Gabriel Capital Corp.

190.    On October 3, 2018, the Bankruptcy Court issued its decision granting in part and denying in part the BNP Paribas Defendants' motion to dismiss the BNP Paribas action, and the Trustee's (converted) motion for leave to file an amended complaint against the BNP Paribas Defendants, and entered its Order on Plaintiff's Motion for Leave to Serve Amended Complaint and the defendants' Motion to Dismiss Amended Complaint on October 17, 2018.

191.    On January 17, 2019, the BNP Paribas Defendants filed their answer and defenses to the Trustee's Amended Complaint.  Since that time the parties have negotiated a stay of discovery pending the issuance of the mandate following the BNP Paribas Defendants' filing of a petition for a writ of certiorari to the United States Supreme Court.

## X.    **MATTER 77 – EXTRATERRITORIALITY**

192.    On July 6, 2014, the District Court held that certain of the Trustee's claims were barred by the presumption against extraterritoriality, stating that "section 550(a) does not apply

extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court (the "District Court ET Decision"). *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

193.    On November 22, 2016, this Court issued a decision granting in part and denying in part the defendants' motion to dismiss on extraterritoriality (the "Bankruptcy Court ET Decision"). *Sec. Inv'r Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495). The Trustee appealed the orders dismissing claims directly to the Second Circuit. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L) (ECF No. 1).

194.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court and Bankruptcy Court. The Second Circuit held that the presumption against exterritoriality and international comity do not limit the reach of section 550(a)(2) of the Bankruptcy Code, enabling the Trustee to recover property from certain subsequent transferees. Accordingly, the Second Circuit vacated the judgments of the Bankruptcy Court and remanded for further proceedings. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019).

195.    On March 11, 2019, the defendants filed a petition for panel rehearing and rehearing *en banc*. *Id*., (ECF 1320). The Second Circuit denied the petition on April 3, 2019. *Id.,* (ECF 1408).

196.    On April 8, 2019, the defendants filed a motion to stay the issuance of the mandate pending the filing of a petition for a writ of certiorari. *Id.,* (ECF 1413). The Trustee filed an opposition. *Id.,* (ECF 1497). The Second Circuit granted the defendants' motion on April 23, 2019. *Id.,* (ECF 1503).

197.    On May 30, 2019, Justice Ginsberg granted the defendants' application for an extension of time to file the petition for a writ of certiorari, thereby extending the time to file the petition to August 30, 2019.  Accordingly, the stay of the issuance of the mandate will continue through the extended period and until the Supreme Court's disposition of the petition.

## V.    COMPENSATION REQUESTED

198.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995, as amended on August 1, 2013 (the "Local Guidelines") and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

199.    The Trustee, and B&H, as counsel to the Trustee, expended 69,306.80 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $447.42 for fees incurred.[14]  The blended attorney rate is $523.26.

200.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application. In connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $1,877,230.30 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $261,373.60.

---

[14]In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

201.     At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $3,445,434.27.  The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

202.     Pursuant to the Second Amended Compensation Order, on January 17, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from December 1, 2018 through December 31, 2018 (the "December Fee Statement").  The December Fee Statement reflected fees of $7,468,555.50 and expenses of $140,221.86.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the December Fee Statement reflected fees of $6,721,699.95 and expenses of $138,105.50.  After subtracting the Court-ordered 10% holdback, SIPC advanced $6,049,529.96 for services rendered and $138,105.50 for expenses incurred by the Trustee and B&H.

203.     Pursuant to the Second Amended Compensation Order, on February 19, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from January 1, 2019 through January 31, 2019 (the "January Fee Statement").  The January Fee Statement reflected fees of $9,231,915.00 and expenses of $89,085.03.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the January Fee Statement reflected fees of $8,308,723.50 and expenses of $89,036.33.  After subtracting the Court-ordered 10% holdback, SIPC advanced $7,477,851.15 for services rendered and $89,036.33 for expenses incurred by the Trustee and B&H.

204.    Pursuant to the Second Amended Compensation Order, on March 19, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from February 1, 2019 through February 28, 2019 (the "February Fee Statement").  The February Fee Statement reflected fees of $8,510,976.00 and expenses of $110,707.29.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the February Fee Statement reflected fees of $7,659,878.40 and expenses of $109,800.69.  After subtracting the Court-ordered 10% holdback, SIPC advanced $6,893,890.56 for services rendered and $109,800.69 for expenses incurred by the Trustee and B&H.

205.    Pursuant to the Second Amended Compensation Order, on April 18, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from March 1, 2019 through March 31, 2019 (the "March Fee Statement").  The March Fee Statement reflected fees of $9,242,896.20 and expenses of $158,202.28.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the March Fee Statement reflected fees of $8,318,606.58 and expenses of $158,094.44.  After subtracting the Court-ordered 10% holdback, SIPC advanced $7,486,745.92 for services rendered and $158,094.44 for expenses incurred by the Trustee and B&H.

206.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for

services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

207.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofessionals.  The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

208.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

209.    Exhibit E annexed hereto is a calculation of the Holdback amounts and the release sought, as explained below in Section VI.

210.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

211.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    <u>RELEASE OF THE HOLDBACK</u>

212.    The Compensation Order established an orderly, regular process for the allowance and payment of interim monthly compensation and reimbursement to the Trustee and payment of interim monthly compensation and reimbursement to the Trustee and B&H. (ECF Nos. 126, 1078,

4125). Pursuant to the Compensation Order, payment of a percentage of the approved

compensation – initially twenty percent (20%), subsequently reduced to fifteen percent (15%), and

thereafter reduced to ten percent (10%) – is deferred through the conclusion of the liquidation

period or until further order of the Court (the "Holdback").

213.    For this and prior Compensation Periods, the amount of the Holdback for B&H's

fees is $22,867,395.48, which includes $3,100,890.84 held back in connection with this

Application. The Trustee and B&H seek a release of the Holdback in the amount of

$11,433,697.74, upon the consent and approval of SIPC.

214.    SIPC has advised that it will file a recommendation in support of the fees and

expenses requested in this Application and the release of the Holdback in the amount of

$11,433,697.74 for the Applicants.

## VII.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

215.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate

application and after a hearing, "[t]he court shall grant reasonable compensation for services

rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the

attorney for such a trustee . . . ." Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's

role in connection with applications for compensation and the consideration the Court should give

to SIPC's recommendation concerning fees. That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there is no
> difference between the amounts requested and the amounts recommended by SIPC,
> the court shall award the amounts recommended by SIPC. In determining the
> amount of allowances in all other cases, the court shall give due consideration to
> the nature, extent, and value of the services rendered, and shall place considerable
> reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

216.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

217.    While the Trustee has recovered, or entered into agreements to recover, nearly $13.403 billion as of May 31, 2019, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

218.    Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief. Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

219.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC."  *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on August 28, 2019.

220.    The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VIII.  **CONCLUSION**

The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the

fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $31,008,908.43 (of which $27,908,017.59 is to be paid currently and $3,100,890.84 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $495,036.96 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; (ii) releasing $11,433,697.74 to the Trustee and B&H from the Holdback; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      July 15, 2019

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: *s/ David J. Sheehan*          
     Baker & Hostetler LLP
     45 Rockefeller Plaza
     New York, New York 10111
     Telephone: (212) 589-4200
     Facsimile: (212) 589-4201
     Irving H. Picard
     Email: ipicard@bakerlaw.com
     David J. Sheehan
     Email: dsheehan@bakerlaw.com
     Seanna R. Brown
     Email: sbrown@bakerlaw.com
     Heather R. Wlodek
     Email: hwlodek@bakerlaw.com

     *Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*