**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Gonzalo S. Zeballos
Michelle R. Usitalo

Hearing Date: August 8, 2019
Time:  10:00 a.m.

Objection Deadline: August 1, 2019
Time:  5:00 p.m.

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | No. 08-01789 (SMB) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA LIQUIDATION |
| | (Substantively Consolidated) |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 09-1161 (SMB) |
| v. | |
| FEDERICO CERETTI, et al., | |
| Defendants. | |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a) OF THE
BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT AGREEMENT BY AND
AMONG THE TRUSTEE AND KINGATE GLOBAL FUND, LTD.
AND KINGATE EURO FUND, LTD.**

TO:    THE HONORABLE STUART M. BERNSTEIN
        UNITED STATES BANKRUPTCY JUDGE

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C.

§§ 78aaa-*lll* ("SIPA"),[1] and the substantively consolidated Chapter 7 estate of Bernard L. Madoff

("Madoff," and together with BLMIS, the "Debtors"), by and through his undersigned counsel,

submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to

section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy

Code") and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in

an agreement (the "Agreement")[2] by and among the Trustee and Paul Pretlove, Tammy Fu, and

John C. McKenna (the "Joint Liquidators"), solely in their respective capacities as the Joint

Liquidators of Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd.

("Kingate Euro" and, together with Kingate Global, the "Kingate Funds"), both of which are

British Virgin Islands ("BVI") companies (each of the Trustee and the Joint Liquidators a

"Party" and collectively, the "Parties").  In support of the Motion, the Trustee respectfully

represents as follows:

---

[1] Further citations to SIPA will omit "15 U.S.C." and refer only to the relevant sections of SIPA.
[2] The form of Agreement is attached hereto as Exhibit "A."

2

## PRELIMINARY STATEMENT

The Kingate Funds were two of the largest BLMIS customers investing more than $1.7 billion over a period of 14 years and were solely invested with BLMIS for nearly that entire period. During that same 14-year period, the Kingate Funds withdrew $926,351,905.48 from BLMIS (the "Lifetime Transfers"). Following Madoff's arrest and commencement of the SIPA liquidation proceeding of BLMIS, the Kingate Funds also went into liquidation in the BVI.

The Kingate Funds were named as defendants, along with their principals and service providers, in the above-captioned adversary proceeding that seeks to avoid and recover the Lifetime Transfers (the "Adversary Proceeding"). The Parties engaged in extensive discovery over a four year period, which involved the production and review of over one million documents, the examination of 22 witnesses both domestically and abroad, and thorough written discovery.

The Agreement represents a good faith, complete settlement of all disputes between the Trustee and the Kingate Funds and the customer claims the Kingate Funds submitted in connection with BLMIS Account Nos. 1FN061 and 1FN086. The settlement will benefit the customer property fund by $860,000,000 (the "Settlement Payment") and represents 100% of the Six Year Transfers[3] of $825,000,000 and approximately 93% of the Lifetime Transfers of $926,351,905. The Trustee therefore respectfully requests that the Court approve this settlement.

---

[3] Terms not otherwise defined in the Motion shall have the meaning ascribed to them in the Agreement. In the event of any inconsistency between the Motion and the Agreement, the Agreement controls.

## BACKGROUND

1.      On December 11, 2008 (the "Filing Date")[4], the Securities and Exchange

Commission (the "SEC") filed a complaint in the United States District Court for the Southern

District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791).  In the

complaint, the SEC alleged that the Debtors engaged in fraud through the investment advisor

activities of BLMIS.

2.      On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC

consented to a combination of its own action with an application of the Securities Investor

Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed

an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its

obligations to securities customers as they came due and, accordingly, its customers needed the

protection afforded by SIPA.

3.      On that date, the District Court entered the Protective Decree, to which BLMIS

consented, which, in pertinent part:

> a)      appointed the Trustee for the liquidation of the business of BLMIS
> pursuant to section 78eee(b)(3) of SIPA;

> b)      appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to
> section 78eee(b)(3) of SIPA; and

> c)      removed the case to this Court pursuant to SIPA section 78eee(b)(4).

4.      On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff.

On June 9, 2009, this Court entered an order substantively consolidating Madoff's Chapter 7

estate with the BLMIS SIPA proceeding.

---

[4] In this case, the Filing Date is the date on which the SEC commenced its suit against BLMIS and a receiver was
appointed for BLMIS.  *See* SIPA § 78*lll*(7)(B).

## THE TRUSTEE'S CLAIMS AGAINST THE KINGATE FUNDS

5.        Kingate Global was a customer of BLMIS and opened a direct customer account

1FN061 in 1994 (the "Kingate Global Account").  Kingate Global withdrew a total of

$398,797,047 from the Kingate Global Account ("Global Lifetime Transfers").  Of the Global

Lifetime Transfers, approximately $360,000,000 was transferred during the six years preceding

the Filing Date, and approximately $150,000,000 was transferred during the two years preceding

the Filing Date.

6.        Kingate Euro was a customer of BLMIS and maintained a customer account

1FN086 (the "Kingate Euro Account").  The Kingate Euro Account was originally opened in

1996 as a sub-fund of Kingate Global.  Kingate Euro withdrew from the Kingate Euro Account a

total of $527,554,858 (the "Euro Lifetime Transfers").  Of the Euro Lifetime Transfers,

approximately $465,000,000 was transferred during the six years preceding the Filing Date, and

approximately $245,000,000 was transferred during the two years preceding the Filing Date.

7.        Pursuant to an Order entered on June 4, 2009, the BVI Court (i) permitted the

winding up of Kingate Global in accordance with the BVI Insolvency Act 2003, and (ii)

appointed William Tacon and Richard Fogerty as the Joint Liquidators for Kingate Global.

8.        Pursuant to a separate Order entered on June 4, 2009, the BVI Court (i) permitted

the winding up of Kingate Euro in accordance with the BVI Insolvency Act 2003, and (ii)

appointed William Tacon and Richard Fogerty as the Joint Liquidators for Kingate Euro.

9.        On September 4, 2009, the Supreme Court of Bermuda granted the Kingate

Funds' petitions to be wound up under the provisions of the Companies Act 1981 [Bermuda] and

on October 5, 2010, appointed Mr. Tacon, Mr. McKenna and Mr. Fogerty as Joint Liquidators.

10.        By separate orders of the BVI Court dated March 6, 2012, upon the resignation of

Mr. Fogerty, the BVI Court appointed Mr. Stuart C. E. Mackellar to act as a Liquidator in his

place.  On July 25, 2012, the Bermuda Court appointed Mr. Mackellar to act as a Liquidator of

the Kingate Funds in place of Mr. Fogerty, to act jointly in Bermuda with Mr. McKenna and Mr.

Tacon.  On March 12, 2014, the BVI Court appointed Mr. Hopkins in place of Mr. Tacon.  On

April 29, 2016, the BVI Court appointed Mr. Pretlove in place of Mr. Hopkins.  On July 15,

2016, the Bermuda Court appointed Mr. Pretlove in place of Mr. Hopkins.  On March 9, 2018,

the BVI Court appointed Ms. Fu in place of Mr. Mackellar.  On May 11, 2018, the Bermuda

Court appointed Ms. Fu in place of Mr. Mackellar.

11.    On or about April 17, 2009, the Trustee commenced the Adversary Proceeding,

which, as set forth above, was later amended, most recently by the Fourth Amended Complaint

filed on March 17, 2014, under the caption *Picard v. Ceretti, et al.*, Adv. Pro. No. 09-1161

(SMB).  In the Adversary Proceeding, the Trustee asserts that the Kingate Funds, as initial

transferees, are liable to the BLMIS estate under sections 544, 547, 548, 550, 551 of the

Bankruptcy Code, SIPA § 78fff-2(c)(3), the New York Fraudulent Conveyance Act (New York

Debtor and Creditor Law ("NY DCL") §§ 273-279) and the New York Civil Procedures Law for

the Lifetime Transfers (the "Avoidance Claims").  Specifically, the Adversary Proceeding seeks,

*inter alia*, to avoid and recover the Lifetime Transfers from the Kingate Funds in an aggregate

amount totaling $926,351,905.  In addition, the Adversary Proceeding seeks to disallow and

equitably subordinate the Kingate Funds' customer claims.

12.    The Trustee's Adversary Proceeding also asserts claims against Federico Ceretti,

Carlo Grosso, Kingate Management Limited, FIM Advisers LLP, FIM Limited, First Peninsula

Trustees Limited, the Ashby Trust, Ashby Investment Services Limited, Alpine Trustees Limited,

Port of Hercules Trustees Limited, El Prela Trust, El Prela Group Holding Services, Ashby

Holdings Services Limited, El Prela Trading Investments Limited, Citi Hedge Fund Services

Limited, and HSBC Bank Bermuda (collectively, the "Subsequent Transferee Defendants"). The Trustee's claim against the Subsequent Transferee Defendants seeks to recover the subsequent transfers of the Lifetime Transfers under sections 550(a) and 551 (the "Subsequent Transferee Claims").

13.    On July 18, 2014, the Kingate Funds moved to dismiss the Complaint. By Order dated August 11, 2015, Judge Bernstein denied the motion to dismiss with respect to all counts except Count X (disallowance under section 502(a)) and Count XII (equitable disallowance).[5]

14.    On September 30, 2015, the Joint Liquidators, on behalf of the Kingate Funds filed an Answer disputing liability to the Estate under all counts of the Complaint, except that the Liquidators have consented to the avoidance of the Lifetime Transfers under the terms of the Agreement.

15.    On January 5, 2015, the Subsequent Transferee Defendants moved to dismiss the Trustee's Subsequent Transferee Claims on the grounds that the U.S. Bankruptcy Code lacks extraterritorial application. By Order dated November 22, 2016, Judge Bernstein granted the motion with respect to the Subsequent Transferee Defendants.[6] The Trustee appealed, and on February 25, 2019, the Second Circuit vacated the Extraterritoriality Decision and remanded to the Bankruptcy Court for further proceedings.[7] The Subsequent Transferee Defendants filed a Petition for Panel Rehearing and Rehearing En Banc, which was denied on April 3, 2019. The Subsequent Transferee Defendants expressed their intention to file a petition for a writ of certiorari before the Supreme Court.

---

[5] *See Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. No. 09-01161 (SMB), 2015 WL 473479, at *1 (Bankr. S.D.N.Y. Aug. 11, 2015) (ECF No. 199) ("Motion to Dismiss Order").
[6] *SIPC v. BLMIS (In re BLMIS)*, No. 08-01789, 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) (the "Extraterritoriality Decision").
[7] *See In re Picard*, No. 17-2992(L), Main ECF Nos. 1312, 1317 (2d Cir. Feb. 25, 2019).

## THE KINGATE FUNDS' CLAIMS AGAINST THE BLMIS ESTATE

16.    The Joint Liquidators, on behalf of the Kingate Funds, timely filed customer

claim numbers 15358, on behalf of Kingate Euro, and 15359, on behalf of Kingate Global in the

SIPA Proceeding (the "Kingate Claims") alleging aggregate net losses of $869,699,162.81 for

Kingate Euro and $3,178,668,366.51 for Kingate Global purportedly based upon the Kingate

Funds' BLMIS account statements as of November 30, 2008.  The Trustee and the Joint

Liquidators acknowledge that the calculation of the alleged losses, as set forth in the Kingate

Claims, contained errors, and the correct calculation of Kingate Euro's and Kingate Global's

alleged losses based on the customer statements issued by BLMIS for the period ending

November 30, 2008, are $734,956,540 and $2,714,140,694.

17.    The Second Circuit confirmed the Trustee's method of determining claims using

the net equity calculation.  The aggregate amount of the Kingate Funds' net losses based upon

the net equity calculation is $750,558,271.  Pursuant to a settlement between the Trustee and the

United States of America acting on behalf of the Internal Revenue Service, the Trustee adjusted

the Kingate Funds' aggregate net equity calculation to $799,748,094.52 (the "Kingate Funds Net

Equity Claim").

## SETTLEMENT DISCUSSIONS AND TRUSTEE'S INVESTIGATION

18.    In the past several years, the Parties have, on multiple occasions, engaged in good

faith discussions aimed at resolving the Trustee's Avoidance Claims and the Kingate Funds Net

Equity Claim.  These discussions proved unsuccessful, in part, because the Trustee's

investigation of the Kingate Funds' principals and service providers was ongoing and the District

Court issued opinions that affected the pleading standards for the Trustee's Avoidance Claims.

19.    Following this Court's Motion to Dismiss Order and the Kingate Funds' Answer,

the Parties engaged in extensive fact discovery that continued for four years.  During fact

discovery the Trustee and the Joint Liquidators produced approximately 603,000 and 697,000 documents, respectively. The Trustee also received and reviewed hundreds of thousands of documents from third parties. Furthermore, the Trustee elicited the testimony of over 22 witnesses through subpoenas issued pursuant to Federal Rule of Civil Procedure 45 and through Hague Requests and Letters Rogatory issued in the United Kingdom, Bermuda, Ireland, and France.

20.     Following fact discovery, the Parties agreed to participate in a private, non-Court ordered mediation pursuant to protocols and procedures set forth in a letter agreement between the Parties. The Parties actively engaged in mediation, including exchanging mediation statements, and participating in several formal in-person sessions with the mediator and each other. Through the mediation process, the Parties reached a compromise, and, in light of the delay, expense, and uncertainties associated with litigation, have decided to settle the Adversary Proceeding.

## OVERVIEW OF THE AGREEMENT

21.     The principal terms and conditions of the Agreement are generally, as follows (as stated above, the Agreement is attached as Exhibit A and should be reviewed for a complete account of its terms):

a)     The Kingate Funds shall pay the Trustee $860,000,000, which constitutes a 100% recovery of the Kingate Two Years Transfers, a 100% recovery of the Kingate Six Year Transfers, and a 93% recovery of the Lifetime Transfers.

b)     Upon satisfaction of all the conditions to Closing or waiver by the applicable party as stated in the Agreement, the Kingate Funds will have an allowed claim in the SIPA Proceeding in the amount of $1,659,748,094.52 (the "Allowed Claim") and shall be entitled to the full benefit of a SIPC customer advance under SIPA section 78fff-3(a). The

Allowed Claim is equal to the Kingate Funds Net Equity Claim of $799,748,094.52, plus an increase of $860,000,000 under section 502(h) of the Bankruptcy Code.

c)      The Parties acknowledge that the Joint Liquidators are obligated to make distributions to the Kingate Funds' creditors and shareholders in accordance with BVI law.  The Parties also acknowledge the Trustee's desire to maximize returns to the allowed claims of good faith customers of BLMIS.  The Parties agree to cooperate, to the extent allowed by BVI law and permitted by the BVI Court, to restrict distributions to certain of the Kingate Funds' creditors and shareholders in accordance with the protocol set out in the Agreement.

d)      The Trustee will enter into mutual release agreements with each of the Subsequent Transferee Defendants in the form attached as Annex D to the Agreement thus resolving all claims in the Adversary Proceeding.

e)      The Trustee will release, acquit, and absolutely discharge the Kingate Funds on the specific terms set forth in the Agreement.

f)      The Kingate Funds will release, acquit, and absolutely discharge the Trustee and all his agents and BLMIS and its consolidated estate, on the specific terms set forth in the Agreement.

g)      The Trustee will dismiss with prejudice the actions listed in Annex B to the Agreement.

h)      The Closing will occur no later than the fifth business day after satisfaction or waiver (by the party in whose favor such condition is for) of the conditions to the Closing as set forth in the Agreement.

22.      The Agreement is subject to the approval of both this Court presiding over the SIPA liquidation proceeding of BLMIS and the substantively consolidated Chapter 7 Madoff

10

estate, the BVI court presiding over the BVI proceedings and the Bermuda court presiding over the Bermuda proceedings. Hearings before the BVI court and Bermuda court to consider approval of the Agreement will be scheduled as soon as practicable. Any stakeholder of the Kingate Funds seeking information regarding those proceedings should contact Nicholas Fox with the firm of Mourant Ozannes c/o Osiris, Coastal Buildings, Wickham's Cay II, PO Box 4857, Road Town, Tortola, British Virgin Islands, telephone +1 284 852 1700, representing the Joint Liquidators. If the Bankruptcy Court and/or the BVI Court have not entered a final order approving the Agreement within one hundred and fifty (150) days after the later date of (i) the date of the Agreement and (ii) the date the Trustee files a motion with the Bankruptcy Court to approve the Agreement, then, in the Trustee's discretion, upon written notice to the other parties to the Agreement, the Agreement will terminate and be null and void.

## RELIEF REQUESTED

23.    By this Motion, the Trustee respectfully requests that the Court enter an order, substantially in the form of the proposed Order attached as Exhibit B approving the Agreement.

## LEGAL DISCUSSION

24.    Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." In order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interest of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F. 3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968)).

25.    The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the

compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (internal citations omitted); *see also Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In Refco, Inc.),* 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs,* 156 B.R. at 426 ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

26.    In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

(a)    the probability of success in the litigation;

(b)    the difficulties associated with collection;

(c)    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(d)    the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied,* 506 U.S. 1088 (1993)).

27.    The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.,* 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.,* 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr.

S.D.N.Y. 2010). The competency and experience of counsel supporting the settlement may also

be considered. *Nellis,* 165 B.R. at 122. Finally, the court should be mindful of the principle that

"the law favors compromise." *In re Drexel Burnham Lambert Grp., Inc.,* 134 B.R. at 505

(quoting *In re Blair,* 538 F.2d 849, 851 (9th Cir. 1976)).

28.     The Agreement furthers the interest of BLMIS customers by (a) adding

$860,000,000 to the fund of customer property, and (b) recovering 93% of the Lifetime Transfers

and 100% of the Six Year Transfers.

29.     Furthermore, the Agreement resolves all claims among the Parties and avoids the

cost and delay of what could otherwise be lengthy and contentious litigation. *See* Declaration of

the Trustee in Support of the Motion attached hereto as Exhibit C.

30.     In sum, the Trustee submits that the Agreement should be approved to avoid

lengthy, burdensome, and expensive litigation and because it represents a fair and reasonable

compromise of the Avoidance Claims and the Customer Claims. Because the Agreement is well

within the "range of reasonableness" and confers a benefit on the estate, the Trustee respectfully

requests that the Court enter an Order approving the Agreement.

## NOTICE

31.     In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has

been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States

Attorney for the Southern District of New York; and (v) Gary S. Lee, Esq., Morrison & Foerster

LLP, 250 West 55th Street, New York, NY 10109. Notice of this Motion will also be provided via

e-mail and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS

proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing

Noticing Procedures and Limiting Notice, ECF No. 4560. The Trustee submits that no other or

further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the

form of Exhibit B granting the relief requested in the Motion.

Dated: July 17, 2019          /s/ *David J. Sheehan*
      New York, NY          Baker & Hostetler LLP
                                  45 Rockefeller Plaza
                                  New York, New York 10111
                                  Telephone: (212) 589-4200
                                  Facsimile: (212) 589-4201
                                  David J. Sheehan
                                  Gonzalo S. Zeballos
                                  Michelle R. Usitalo

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*