# EXHIBIT A

# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT, dated as of  June 26, 2019 (together with the related agreements referenced herein, as applicable, the "Settlement Agreement"), is made by and among IRVING H. PICARD, in his capacity as trustee (the "Trustee") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq.*,[1] as amended ("SIPA"), for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff"), and PAUL PRETLOVE, TAMMY FU, and JOHN C. MCKENNA, in their capacity as joint liquidators (together with any successor liquidator, the "Liquidators") of KINGATE GLOBAL FUND, LTD. ("Kingate Global") and KINGATE EURO FUND, LTD. ("Kingate Euro") (each of the Trustee and the Liquidators a "Party" and collectively, the "Parties").

# RECITALS

A.     BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.     On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application by SIPC.  Thereafter, SIPC filed an application in the District Court under section 78eee(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.  On December 15, 2008, the District Court granted SIPC's application and entered an order, which, in pertinent part, appointed the Trustee under section 78eee(b)(3) of SIPA, and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 78eee(b)(4) of SIPA, where it is currently pending (No. 08-01789 (SMB)) (the "SIPA Proceeding").  The Trustee is duly qualified to serve and act on behalf of BLMIS's and Madoff's substantively consolidated estate (the "Estate").

D.     On December 11, 2008, Madoff was arrested by federal agents for criminal securities laws violations including securities fraud, investment adviser fraud, and mail and wire fraud.  At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS.

E.     Kingate Global and Kingate Euro (together, the "Kingate Funds") were incorporated in the British Virgin Islands ("BVI") on February 11, 1994 and April 19, 2000,

---

[1] Citations to sections of SIPA shall hereinafter omit reference to title 15.

respectively.  The Kingate Funds provided a vehicle for investing cash collected from numerous investors with BLMIS.

F.      By separate orders dated June 4, 2009, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands (the "BVI Court"), in accordance with the BVI Insolvency Act, 2003, appointed Mr. William R. Tacon and Mr. Richard E. F. Fogerty as joint liquidators of the Kingate Funds, each having the right to exercise all functions and powers held jointly.  On September 4, 2009, the Supreme Court of Bermuda (the "Bermuda Court") granted the Kingate Funds' petitions to be wound up under the provisions of the Companies Act 1981 [Bermuda] and on October 5, 2010, appointed Mr. Tacon, Mr. McKenna and Mr. Fogerty as joint liquidators of the Kingate Funds in Bermuda (they having been appointed provisional liquidators by the order of the Bermuda Court dated September 4, 2010).  By separate orders of the BVI Court dated March 6, 2012, upon the resignation of Mr. Fogerty, the BVI Court appointed Mr. Stuart C. E. Mackellar to act as a Liquidator in his place.  On July 25, 2012, the Bermuda Court appointed Mr. Mackellar to act as a Liquidator of the Kingate Funds in place of Mr. Fogerty, to act jointly in Bermuda with Mr. McKenna and Mr. Tacon.  On March 12, 2014, the BVI Court appointed Mr. Hopkins in place of Mr. Tacon.  On April 29, 2016, the BVI Court appointed Mr. Pretlove in place of Mr. Hopkins.  On July 15, 2016, the Bermuda Court appointed Mr. Pretlove in place of Mr. Hopkins.  On March 9, 2018, the BVI Court appointed Ms. Fu in place of Mr. Mackellar.  On May 11, 2018, the Bermuda Court appointed Ms. Fu in place of Mr. Mackellar.

G.      Kingate Global was a customer of BLMIS and maintained customer account number 1-FN061 (the "Kingate Global Account"), commencing as of March 1994.

H.      Kingate Global also maintained customer account number 1-FN086 (the "Kingate Euro Account"), commencing in January 1996 when the Kingate Euro Account was opened as a sub-fund of the Kingate Global Account.  The Kingate Euro Account was transferred to Kingate Euro in May 2000, when Kingate Euro became a customer of BLMIS.  The Kingate Euro Account and the Kingate Global Account are together referred to as the "Kingate Accounts."

I.      From the opening of the Kingate Accounts to the Filing Date, the Kingate Funds withdrew from the Kingate Accounts $926,351,905.48 from BLMIS (the "Lifetime Transfers").

J.      In the six years prior to the Filing Date, the Kingate Funds withdrew from the Kingate Accounts $825,000,000.

K.      The Liquidators, on behalf of the Kingate Funds, timely filed customer claim numbers 15358, on behalf of Kingate Euro, and 15359, on behalf of Kingate Global, in the SIPA Proceeding (each a "Customer Claim" and, collectively, the "Customer Claims") alleging aggregate net losses of $869,699,162.81 for Kingate Euro and $3,178,668,366.51 for Kingate Global purportedly based upon the Kingate Accounts' customer statements issued by BLMIS for the period ending November 30, 2008.  The Trustee and the Liquidators acknowledge that the alleged losses, as set forth in the Customer Claims, contained errors, and the correct calculation of Kingate Euro's and Kingate Global's alleged losses based on the customer statements issued by BLMIS for the period ending November 30, 2008, are $734,956,540 and $2,714,140,694, respectively (the "Last Statement Amounts").

2

L.    The Trustee disputed that the Kingate Funds are entitled to allowance of the
Customer Claims based upon the Last Statement Amounts.  On March 1, 2010, The Honorable
Burton R. Lifland, United States Bankruptcy Judge, issued an opinion affirming the Trustee's
"net equity" calculation of customer claims as the difference between investment into BLMIS
and amounts withdrawn (the "Net Investment Method").  On August 16, 2011, the United States
Court of Appeals for the Second Circuit upheld the Trustee's use of the Net Investment Method,
and on June 25, 2012, the United States Supreme Court denied petitions for certiorari, thereby
upholding the Trustee's methodology.

M.    Kingate Global's net loss based upon the Net Investment Method is
$540,158,887.54.  Kingate Euro's net loss based upon the Net Investment Method is
$210,399,382.69.  The aggregate amount of Kingate Global's and Kingate Euro's net losses
based upon the Net Investment Method is $750,558,270.23.  The claims of each of the Kingate
Funds have benefited from a settlement between the Trustee and the United States of America
acting on behalf of the Internal Revenue Service approved by order of the Bankruptcy Court
dated December 21, 2011 ("IRS Settlement").  Pursuant to the IRS Settlement, the Trustee
adjusted Kingate Global's net loss to $578,862,952.73, and Kingate Euro's net loss to
$220,885,141.79, with aggregate net losses of $799,748,094.52.

N.    The Trustee commenced an adversary proceeding against the Kingate Funds as
initial transferees, and Federico Ceretti, Carlo Grosso, Kingate Management Limited, FIM
Advisers LLP, FIM Limited, First Peninsula Trustees Limited, individually and as Trustee of the
Ashby Trust, the Ashby Trust, Ashby Investment Services Limited, Alpine Trustees Limited,
individually and as Trustee of El Prela Trust, Port of Hercules Trustees Limited, individually and
as Trustee of El Prela Trust, El Prela Trust, El Prela Group Holding Services, Ashby Holdings
Services Limited, and El Prela Trading Investments Limited (collectively, the "KML
Defendants"), Citi Hedge Fund Services Limited (now doing business as SS&C Fund Services
(Bermuda) Ltd.) ("CitiHedge" and, together with the KML Defendants, the "Subsequent
Transferee Defendants"),[2] and HSBC Bank Bermuda Limited ("HSBC Bank Bermuda"), as
subsequent transferees, now titled *Picard v. Federico Ceretti, et al.*, Adv. Pro. No. 09-01161
(SMB) ("Kingate Proceeding").  On March 17, 2014, the Trustee filed his Fourth Amended
Complaint in the Kingate Proceeding ("Complaint"), asserting claims against the Kingate Funds
to avoid and recover the Lifetime Transfers under 11 U.S.C. §§ 544, 547, 548, 550 and 551,[3] the
New York Uniform Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 273–
279), the New York Civil Procedure Law, and section 78fff-2(c)(3) of SIPA.  The Trustee's
claims described in this paragraph are collectively referred to as the "Avoidance Claims."

---

[2] The Trustee listed El Prela Group Holding Services, Ashby Holdings Services Limited, El Prela Trust, Alpine
Trustees Limited, individually and as Trustee of El Prela Trust, and Port of Hercules Trustees Limited, individually
and as Trustee of El Prela Trust, as defendants.  The proper names of those entities are, respectively, El Prela Group
Holding Services Limited, Ashby Holding Services Limited, the El Prela Trust, Alpine Trustees Limited,
individually and as Trustee of the El Prela Trust, and Port of Hercules Trustees Limited, individually and as Trustee
of the El Prela Trust (the "Properly Named Entities").  The term Subsequent Transferee Defendants includes the
Properly Named Entities.

[3] Citations to sections of the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) shall hereinafter omit reference to title 11.

O.      In addition to the Avoidance Claims, by his Complaint, the Trustee also seeks to disallow and equitably subordinate the Kingate Funds' Customer Claims (the "Disallowance and Subordination Claims").

P.      As alleged in the Complaint, the Trustee also asserts claims against the Subsequent Transferee Defendants and HSBC Bank Bermuda to recover the subsequent transfers of the Lifetime Transfers under sections 550(a) and 551 and New York Debtor Creditor Law § 278 (the "Subsequent Transferee Claims").

Q.      On July 18, 2014, the Kingate Funds moved to dismiss the Complaint.  By Order dated August 11, 2015, Judge Bernstein denied the motion to dismiss with respect to all counts except Count X (disallowance under 11 U.S.C. § 502(a)) and Count XII (equitable disallowance).

R.      On September 30, 2015, the Liquidators, on behalf of the Kingate Funds, filed an Answer disputing liability to the Estate under all counts of the Complaint, except that the Liquidators admit that the Lifetime Transfers constitute avoidable transfers within the meaning of sections 544, 547, 548, 550 and 551 of the Bankruptcy Code, New York Debtor and Creditor Law §§ 273–279, New York Civil Procedure Law and section 78fff-2(c)(3) of SIPA, as applicable.  Except as set forth in this Recital R and elsewhere in this Settlement Agreement, none of the allegations in the Complaint shall be, or argued to be, binding on, or admissible against, the Liquidators or the Kingate Funds in any proceeding, action, petition, or other process.

S.      Since 2015, the Parties have engaged in extensive document and testimonial discovery on the Trustee's claims and the Liquidators' defenses ("Fact Discovery").

T.      Following the conclusion of Fact Discovery, the Parties have engaged in mediation to resolve their disputes without the expense, delay and uncertainty of continuing the litigation about the matters described above.  The Parties have determined to settle and resolve all of the disputes, claims, actions, defenses or liabilities (whether or not asserted) between them, subject to the terms and conditions specified below.

U.      The Trustee and the Liquidators each have fiduciary duties in their respective roles, and the terms and conditions of the settlement have been negotiated consistent with those fiduciary duties, and the Trustee and the Liquidators each recognize and acknowledge that their rights and obligations hereunder shall be exercised in accordance with those duties.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for other good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Trustee and the Liquidators agree:

## AGREEMENT

1.     Recitals.  The foregoing Recitals are incorporated into, and are a material part of, this Settlement Agreement.

2.     Avoidance of Transfers.  The Liquidators agree that the Lifetime Transfers are avoided, and thus recoverable by the Trustee under sections §§ 550(a) and 551; provided, however, that the Trustee will neither assert any new claims nor seek recovery on previously filed claims against any subsequent transferee based on transfers initially made to the Kingate Funds.

3.     Settlement Payment.  At the Closing (as defined in paragraph 16), in consideration of the releases by the Trustee set forth herein, the Kingate Funds shall pay or cause to be paid to the Trustee, pursuant to the conveyances, assignments, endorsements, and transfers set forth in paragraph 5, the sum of $860,000,000 ("Settlement Payment") in full and final settlement and satisfaction of the Avoidance Claims, the Disallowance and Subordination Claims, the Subsequent Transferee Claims, and any claims the Trustee or the BLMIS estate may have against the Kingate Funds as identified in paragraph 13 herein, or against the Subsequent Transferee Defendants and HSBC Bank Bermuda as identified in paragraph 17(f) and Annex D.

4.     Allowance of Kingate Funds' Customer Claims.  On the Closing Date, the Kingate Funds shall have an allowed "net equity" claim pursuant to section 78$lll$(11) of SIPA, in the amount of $799,748,094.52, which the Trustee has determined in accordance with the Net Investment Method, adjusted to account for certain tax withholdings ("Kingate Funds' Net Equity Claim").  The Kingate Funds' Net Equity Claim shall be increased by the amount of $860,000,000.00, pursuant to section 502(h) of the Bankruptcy Code for a total allowed Customer Claim of $1,659,748,094.52 (the "Kingate Funds' Allowed Claim").  The Kingate Funds' Allowed Claim shall be equal in priority to all other allowed customer claims against the Estate and shall share ratably in all distributions made by the Trustee from the Estate.  The Trustee shall issue a letter of determination with respect to the Kingate Funds' Allowed Claim, in the form attached hereto as Annex A (the "Kingate Funds' Letter of Determination"), which letter of determination shall automatically go into effect upon the Closing and be final, binding, and irrevocable.

5.     Funding of Settlement Payment.  At the Closing, the Kingate Funds are entitled to payment on the Kingate Funds' Allowed Claim as follows:

(a)     first, the SIPC customer advance provided for under section 78fff-3(a) of SIPA applicable to each customer of the Kingate Funds' Allowed Claim in the aggregate amount of $1,000,000.00 ("SIPC Advances"); and

(b)     next, the *pro rata* interest of the Kingate Funds' Allowed Claim in all interim distributions made by the Trustee to allowed claims from funds allocated to customer property on or prior to the Closing Date (as defined in paragraph 16) (collectively, the "Catch-Up Payment").  As of the date of this Settlement Agreement, the Catch-Up Payment equals

$1,105,939,947.82, which represents 66.633% of the Kingate Funds'
Allowed Claim.

(c)    Effective upon the Closing Date (as defined in paragraph 16), the
Liquidators hereby convey, assign, endorse and transfer to the Trustee the
SIPC Advances and the Catch-Up Payment in an amount equal to the
Settlement Payment.

(d)    The remainder payment of $246,939,947.82 will be distributed to the
Liquidators on the Closing Date.

6.    <u>Discontinuance of Actions</u>.  Within 10 business days after the Closing Date, the
Trustee shall discontinue the actions listed in <u>Annex B</u> (the "<u>Actions</u>") on terms that there be
no orders for costs and all parties to the Actions bear their own costs and forever waive any
right to seek a costs order against any other party. The Actions shall be dismissed with
prejudice.

7.    <u>Restricted Distributions</u>.  The Parties acknowledge that the Liquidators are
obligated to make distributions to the Kingate Funds' creditors and shareholders, including
redeemed and continuing investors, in accordance with BVI law.  The Parties also
acknowledge the Trustee's desires to maximize returns to the allowed claims of good faith
customers of BLMIS.  The Parties agree to cooperate, to the extent allowed by BVI law and
permitted by the BVI Court, to seek to determine distributions to certain of the Kingate Funds'
creditors and shareholders (the "<u>Restricted Parties</u>") in accordance with following protocol:

(a)    <u>Entities and Individuals Identified on Annex C</u>:  The Trustee has listed on
<u>Annex C</u> certain entities and individuals that the Trustee considers should
not be entitled to recover from the Estate.

i.    The Liquidators will not make any distributions from the Kingate
Funds' Allowed Claim to any of the individuals and entities set
forth on <u>Annex C</u> to this Settlement Agreement, unless otherwise
ordered by the BVI Court.

ii.    If a creditor or shareholder of the Kingate Funds is identified as a
nominee or custodian, and that nominee or custodian represents to
the Liquidators that (A) some or all of its underlying account
holders are not entities or individuals identified on <u>Annex C</u> to this
Settlement Agreement and (B) they will use distributions from the
Kingate Funds solely to pay "non-Annex C" account holders, then
the Liquidators shall be entitled to make distributions to that
nominee or custodian, in respect of those underlying "non-Annex
C" account holders.

8.    <u>Madoff Victim Fund ("MVF") Recipients</u>:  The MVF is a fund operated by the U.S. Department of Justice ("<u>DOJ</u>") pursuant to 28 C.F.R. Part 9 and is comprised of recoveries gathered through various criminal and civil forfeiture actions.  The MVF makes distributions on claims belonging to customers without a BLMIS account.  The Parties are aware that the MVF has made or will make distributions to BLMIS customers without an account, which may include certain of the Kingate Funds' creditors or shareholders. The Liquidators, to the extent allowed by BVI law and permitted by the BVI Court, shall:

(a)    as part of the claims adjudication process, seek to require Kingate Funds' shareholders and creditors to disclose any monies received from the MVF ("<u>MVF Receipts</u>"); and

(b)    when making distributions from the Kingate Funds' estates, seek to take into account any MVF Receipts disclosed to them pursuant to paragraph 8(a) above so that no Kingate Fund creditor or shareholder receives a double recovery from the MVF and the Kingate Funds' estates from funds received on account of the Kingate Funds' Allowed Claim.

9.    <u>Cash in HSBC Bank Bermuda</u>.  The Liquidators, on behalf of the Kingate Funds, shall be entitled to the cash deposited in the Liquidators' bank accounts at HSBC Bank Bermuda, which, as of April 30, 2019, amounted to approximately $24,668,983.38 and €32,243.75 ("<u>Cash in Bermuda</u>"), free of any claim by the Trustee.  The Parties mutually agree that, at the Closing Date, the letter agreement entered into in October 2009 shall be terminated and without further legal effect.

10.    <u>Order Approving the Kingate Funds' Allowed Claim/Trustee's Waivers</u>.  The Trustee shall request that the Bankruptcy Court allow the Kingate Funds' Allowed Claim, as provided in this Settlement Agreement, in a separate provision of the order approving this Settlement Agreement.  The Trustee expressly waives (a) the operation of section 502(d) of the Bankruptcy Code, or any other provision for disallowance or reconsideration not expressly contemplated by this Settlement Agreement, and (b) subordination (whether pursuant to section 510(c) of the Bankruptcy Code or otherwise), or disallowance in each case with respect to the Kingate Funds' Allowed Claim.

11.    <u>Effect of Breach of the Settlement Agreement</u>.  If after the Closing Date either Party is found by the Bankruptcy Court in a final, non-appealable order to be in material breach of this Settlement Agreement, the non-breaching Party shall have the right to seek monetary damages and mandatory injunctive relief against the breaching Party.  In no event shall the Liquidators' breach of this Settlement Agreement result in the disallowance, subordination (whether pursuant to section 510(c) of the Bankruptcy Code or otherwise), or other impairment of the Kingate Funds' Allowed Claim, or in any way affect the releases referred to in Paragraphs 13 and 17 of this Agreement.  The non-breaching Party may seek the remedies provided for in this paragraph, after providing written notice of such material breach to the breaching Party, and the breaching Party's failure to cure such material breach within 45 days after receipt of such notice. The remedies specified in this paragraph are the sole remedies available to the non-breaching Party.

7

12. <u>Kingate Funds' Sources of Recovery</u>.  The Trustee acknowledges and agrees that nothing in this Settlement Agreement shall prejudice or impair whatsoever any rights of the Kingate Funds, whether or not arising outside the scope of this Settlement Agreement, including, without limitation, the right to receive distributions made by the Trustee from the Estate to satisfy the claims of BLMIS's customers in the same manner and on the same timetable as any other holder of an allowed customer claim against BLMIS.  In light of the consideration for the settlement, including without limitation, the amounts being remitted by the Kingate Funds to the Estate pursuant to this Settlement Agreement and the mutual releases in paragraphs 13 and 14 of this Settlement Agreement, upon the Closing Date, the Kingate Funds' Allowed Claim will stand in the same position as the allowed customer claims against BLMIS.  Nothing in this paragraph shall in any way affect any rights, claims or interests of the Trustee other than as expressly set forth in this Settlement Agreement, as the same may subsequently be amended, all of which are expressly reserved.

13. <u>Release by Trustee</u>.  In consideration for the terms herein, except with respect to any rights and obligations arising under this Settlement Agreement, effective upon the Closing Date (as defined below), the Trustee, on behalf of himself and BLMIS, and its consolidated estates, hereby releases, acquits and forever discharges the Kingate Funds and the Liquidators, including their successors and/or assigns, their professionals and agents, from any and all past, present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, arising out of, or in any way related to the Kingate Funds' respective relationship with Madoff or BLMIS, including, without limitation, the claims against the Kingate Funds in the Complaint filed in the Kingate Proceeding, except for any and all claims to enforce the obligations of the Kingate Funds under this Agreement.  The release granted by the Trustee hereunder shall extend to the Kingate Funds' shareholders to the extent that any such shareholders received transfers of money from the Kingate Funds but shall not include a release of claims that the Trustee may bring that are unrelated to the Kingate Funds' investments in or withdrawals from BLMIS.  For avoidance of doubt, this release shall not affect any claims against any person or entity except as set forth in this paragraph.

14. <u>Releases by the Liquidators, Kingate Global, and Kingate Euro</u>.  In consideration for the terms herein, except with respect to any rights and obligations arising under this Settlement Agreement including the Kingate Funds' Allowed Claim, effective upon the Closing Date, each of the Liquidators, Kingate Global, and Kingate Euro hereby releases, acquits and forever discharges SIPC, the Trustee and his professionals, agents and consultants, Madoff, BLMIS, and the Estate from any and all past, present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, arising out of or in any way related to Madoff or BLMIS.  For avoidance of doubt, this release shall not affect any claims against any third party, except as set forth in this paragraph.

15.     As soon as practicable after the execution of this Settlement Agreement, the Trustee shall undertake best efforts to seek a mutual release from each of the Subsequent Transferee Defendants and HSBC Bank Bermuda in the form attached hereto as Annex D.

16.     Closing and Closing Date.  There shall be a closing ("Closing") no later than five business days after satisfaction of the conditions set forth in paragraph 17 below, unless another time or date, or both, are agreed to in writing by the Parties (such date, the "Closing Date").  The Settlement Agreement shall be effective upon the Closing Date.

17.     Conditions to Closing.  The following constitute conditions precedent to the Parties' settlement pursuant to the terms and conditions set forth in this Settlement Agreement:

(a)     The Liquidators, on behalf of the Kingate Funds, hereby shall have conveyed, assigned, endorsed and transferred to the Trustee the total amount of $860,000,000.00, from the following: (i) the SIPC Advances, and (ii) the Catch-Up Payment.

(b)     The Bankruptcy Court shall have allowed in full the Kingate Funds' Allowed Claim on a final and irrevocable basis, as provided in this Settlement Agreement.

(c)     The Bankruptcy Approval Order (as defined below) shall have been entered.

(d)     The BVI Approval Order and the Bermuda Approval Order (each as defined below) shall have been entered.

(e)     The Letter of Determination shall have been issued on a permanent and irrevocable basis and be in full force and effect.

(f)     The Liquidators, the Trustee, the Subsequent Transferee Defendants and HSBC Bank Bermuda shall have executed and delivered mutual releases (a) with respect to the Trustee Release, in the form attached as Annex D and (b) with respect to the Kingate Funds Release, in the form mutually acceptable to the Liquidators, the Subsequent Transferee Defendants, and HSBC Bank Bermuda.

18.     Bankruptcy Court Approval; Termination.  This Settlement Agreement is subject to Bankruptcy Court approval by an order that is not subject to appeal, review or rehearing ("Bankruptcy Approval Order").  The form of the Bankruptcy Approval Order shall be subject to the Liquidators' prior approval, not to be unreasonably withheld, delayed, or conditioned.  The Trustee shall use his best efforts to obtain such approval as promptly as practicable on or after the date of this Settlement Agreement.  If the Closing Date of this Settlement Agreement has not occurred within 75 days after the later of (a) the date of this Settlement Agreement, (b) the date the Trustee files a motion with the Bankruptcy Court to approve this Settlement Agreement and (c) the date the BVI Court and the Bermuda Court approve the Settlement Agreement (or within such additional time as the Liquidators permit,

which extension shall not be unreasonably denied, withheld, or conditioned), then (i) this Settlement Agreement (other than this paragraph and paragraphs 28 and 29 below) shall be void; (ii) all of the statements, admissions, consents, and agreements contained in the Settlement Agreement (other than this paragraph and paragraphs 28 and 29 below) shall terminate and be void; and (iii) neither the Trustee nor any of the Liquidators, Kingate Global, or Kingate Euro may use or rely on any such statement, admission, consent, or agreement in any public statement or litigation involving the SIPA Proceedings, any case or proceeding relating to the SIPA Proceeding, or any case or proceeding relating to BLMIS or Madoff. Except as provided for in this paragraph and in paragraph 19 below, there shall be no other basis for termination of this Settlement Agreement by either Party.

19.   BVI Court Approval and Bermuda Court Approval. This Settlement Agreement is subject to (a) the BVI Court's approval by an order that is not subject to a timely appeal or to a stay by any court of competent jurisdiction ("BVI Approval Order"), and (b) the Bermuda Court's approval by an order that is not subject to a timely appeal or to a stay by any court of competent jurisdiction ("Bermuda Approval Order"). The form of the BVI Approval Order and the Bermuda Approval Order shall be subject to the Trustee's prior approval, not to be unreasonably withheld, delayed or conditioned. The Liquidators agree to (1) name the Trustee as a respondent and provide notice to the Trustee's counsel of (A) any application for a BVI and Bermuda Approval Order and (B) any application in which the Liquidators seek an order relevant to paragraphs 7 or 8 of this Agreement compelling payment of distributions to individuals on Annex C and/or who may have received MVF Receipts and (2) consent to the appearance of the Trustee's counsel at any hearings thereof (subject to the understanding that it may be necessary or appropriate to limit the documents provided to the Trustee's counsel and/or exclude the Trustee's Counsel from sections of any hearing at which confidential and/or privileged matters are discussed between the Liquidators/their counsel and their supervising court). The Liquidators shall use their best efforts to obtain such approvals as promptly as practicable on or after the date of this Settlement Agreement. If the Closing Date of this Settlement Agreement has not occurred within 150 days after the later of (a) the date of this Settlement Agreement, and (b) the date the Liquidators seek approval of the BVI Court and the Bermuda Court of this Settlement Agreement (or within such additional time as the Trustee permits, which extension shall not be unreasonably denied, withheld, or conditioned), then (i) this Settlement Agreement (other than this paragraph and paragraphs 28 and 29 below) shall terminate and be void; (ii) all of the statements, admissions, consents, and agreements contained in the Agreement (other than this paragraph and paragraph 18 above and paragraphs 28 and 29 below) shall be void; and (iii) neither the Trustee nor any of the Liquidators, Kingate Global, or Kingate Euro may use or rely on any such statement, admission, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, any case or proceeding relating to the SIPA Proceeding, or any case or proceeding relating to BLMIS or Madoff. Except as provided for in this paragraph and in paragraph 18 above, there shall be no other basis for termination of this Settlement Agreement by either Party.

20.    Liquidators' Authority and Representations.  The Liquidators represent to the Trustee, as of the date hereof, and subject to the approval of the BVI Court and the Bermuda Court, as set forth in paragraph 19 above, the following:

(a)    Each of them has the full power, authority, and legal right to execute and deliver, and to perform his or her respective obligations under, this Settlement Agreement, and has taken all necessary action to authorize the execution and delivery of, and the performance of his or her respective obligations under, this Settlement Agreement.

(b)    The only assets remaining in the Kingate Funds' respective liquidation proceedings pending before the BVI Court and the Bermuda Court, aside from the claims against BLMIS, the Cash in Bermuda and funds received from the settlement of *Kingate Global Fund Ltd. v. Kingate Management Ltd., et al.* 2010:454 Supreme Court of Bermuda, Civil Jurisdiction Commercial Division and other third-party litigation, and currently there are no insurance and/or insurance proceeds available to the Liquidators.

21.    Trustee's Authority and Other Representations.  The Trustee represents to the Liquidators, as of the date hereof, and subject to the approval of the Bankruptcy Court, as set forth in paragraph 18 above, that he has the full power, authority, and legal right to execute and deliver, and to perform his respective obligations under, this Settlement Agreement, and has taken all necessary action to authorize the execution and delivery of, and the performance of his respective obligations under, this Settlement Agreement.

22.    Further Assurances.  The Parties shall execute and deliver any document or instrument reasonably requested by either of them after the date of this Agreement to give effect to its intent.

23.    Entire Agreement.  This Settlement Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings concerning the subject matter hereof.

24.    Amendments, Waiver.  This Settlement Agreement may not be terminated, amended, or modified in any way except as set forth herein.  Material modifications to this Settlement Agreement must be in a writing signed by all the Parties and are subject to approval from the Bankruptcy Court, the BVI Court and the Bermuda Court.  Non-material modifications must be in a writing signed by all Parties.  No waiver of any provision of this Settlement Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

25.    Assignability.  No Party hereto may assign its rights under this Settlement Agreement to a third party without the prior written consent of each of the other Parties hereto; provided, however, the Liquidators may sell and transfer, subject to compliance with the claims trading procedures approved by the Bankruptcy Court in the SIPA Proceeding, the Kingate Funds' Allowed Claim; provided further, however, the Kingate Funds' Allowed Claim shall not be sold to any person or entity that is named on Annex C.

26.     <u>Successors Bound</u>.  This Settlement Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

27.     <u>No Third-Party Beneficiary</u>.  The Parties do not intend to confer any benefit by or under this Settlement Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns, except that the Kingate Funds' current and former shareholders shall benefit from the releases provided for in paragraph 13 and the Subsequent Transferee Defendants and HSBC Bank Bermuda shall benefit from the releases referred to in paragraph 17(f).

28.     <u>Applicable Law</u>.  This Settlement Agreement shall be construed and enforced in accordance with the laws of the State of New York without regard to its conflict of law provisions that would result in the application of the law of another jurisdiction.  Each Party waives, on behalf of itself and any successors and assigns, any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

29.     <u>Exclusive Jurisdiction</u>.  The Parties agree that any action between the Parties arising from, relating to, or in connection with this Settlement Agreement, may be brought only in the Bankruptcy Court, and each Party consents that the Bankruptcy Court may enter final judgment in any action against the other Party coming before it.  No Party shall bring, institute, prosecute, or maintain any action arising from, relating to, or in connection with any provision of this Settlement Agreement in any court other than the Bankruptcy Court, except for the limited purpose of enforcing a final award or judgment entered by the Bankruptcy Court, the BVI Court, the Bermuda Court, or some other court of competent jurisdiction in connection with the claims brought pursuant to this Settlement Agreement.  Each Party hereby submits to the jurisdiction of the Bankruptcy Court or, if the Bankruptcy Court does not exercise its jurisdiction, to the state and federal courts of the State of New York, and further agrees to accept service of process in connection with any action arising under this paragraph by hand or registered mail at the addresses set forth in paragraph 34 below and to waive any and all objections to the adequacy of such service.  Each Party further agrees to waive any and all defenses to the enforceability of a final award or judgment entered by the Bankruptcy Court under this paragraph in any action brought by either Party to enforce such final award or judgment.

30.     <u>Captions and Rules of Construction</u>.  The captions in this Settlement Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Settlement Agreement or the scope or content of any of its provisions.  Any reference in this Settlement Agreement to a paragraph is to a paragraph of this Settlement Agreement.  "<u>Includes</u>" and "<u>including</u>" are not limiting.

31.     <u>Counterparts; Electronic Copy of Signatures</u>.  This Settlement Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Parties may evidence their execution of this Settlement Agreement by delivery to the other Party of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

32.     Negotiated Agreement.  This Settlement Agreement has been fully negotiated by the Parties.  Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Settlement Agreement.

33.     Severability.  In the event that any term or provision of this Settlement Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Settlement Agreement and any other application of such term or provision shall not be affected thereby.

34.     Notices.  Any notices under this Settlement Agreement shall be in writing, shall be effective when received, and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

If to the Trustee:

David J. Sheehan, Esq.
Baker & Hostetler LLP
45 Rockefeller Center
New York, NY  10111
F:  (212) 589-4201
E:  dsheehan@bakerlaw.com

If to the Liquidators:

| | |
|---|---|
| Kalo Advisors                   and | John C. McKenna |
| PO Box 4571, | Finance & Risk Services Ltd. |
| 4th Floor, LM Business Center | P.O. Box HM 321 |
| Fish Lock Road | Hamilton HM BX |
| Road Town,Tortola | Bermuda |
| British Virgin Islands | E:  john.mckenna@frsl.bm |
| Attn: Paul Pretlove and Tammy Fu | |
| Tel: 284-393-6900 | |
| E: ppretlove@kaloadvisors.com | |
|     tfu@kaloadvisors.com | |

with a copy to:

| | |
|---|---|
| Gary S. Lee, Esq. | Robert S. Loigman, Esq. |
| Morrison & Foerster LLP | Quinn Emanuel Urquhart & Sullivan, LLP |
| 250 West 55th Street | 51 Madison Ave., 22nd Floor |
| New York, NY 10109 | New York, NY  10010 |
| F: (212) 468-7900 | F: (212) 849-7100 |
| E: glee@mofo.com | E:  robertloigman@quinnemanuel.com |

and

Jeremy Scott, Esq.
Lipman Karas LLP
Level 7, Holborn Gate
26 Southampton Buildings
London WC2A 1AN
United Kingdom
E:  jscott@lipmankaras.com

13

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed as of the date first above written.

_____
Irving H. Picard, solely as Trustee for the
liquidation of the business of Bernard L. Madoff
Investment Securities LLC under the Securities
Investor Protection Act of 1970, as amended, and
the substantively consolidated Chapter 7 estate of
Bernard L. Madoff, without personal liability

_____
Paul Pretlove, as Joint Liquidator for and on behalf
of Kingate Global Fund, Ltd. and Kingate Euro
Fund, Ltd., without personal liability

_____
Tammy Fu, as Joint Liquidator for and on behalf of
Kingate Global Fund, Ltd. and Kingate Euro Fund,
Ltd., without personal liability

_____
John C. McKenna, as Joint Liquidator for and on
behalf of Kingate Global Fund, Ltd. and Kingate
Euro Fund, Ltd., without personal liability

14

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed as of the date first above written.

Irving H. Picard, solely as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act of 1970, as amended, and the substantively consolidated Chapter 7 estate of Bernard L. Madoff, without personal liability

Paul Pretlove, as Joint Liquidator for and on behalf of Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd., without personal liability

Tammy Fu, as Joint Liquidator for and on behalf of Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd., without personal liability

John C. McKenna, as Joint Liquidator for and on behalf of Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd., without personal liability

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed as of the date first above written.

_____
Irving H. Picard, solely as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act of 1970, as amended, and the substantively consolidated Chapter 7 estate of Bernard L. Madoff, without personal liability

_____
Paul Pretlove, as Joint Liquidator for and on behalf of Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd., without personal liability

_____
Tammy Fu, as Joint Liquidator for and on behalf of Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd., without personal liability

_____
John C. McKenna, as Joint Liquidator for and on behalf of Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd., without personal liability

14

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be
executed as of the date first above written.

_____
Irving H. Picard, solely as Trustee for the
liquidation of the business of Bernard L. Madoff
Investment Securities LLC under the Securities
Investor Protection Act of 1970, as amended, and
the substantively consolidated Chapter 7 estate of
Bernard L. Madoff, without personal liability


_____
Paul Pretlove, as Joint Liquidator for and on behalf
of Kingate Global Fund, Ltd. and Kingate Euro
Fund, Ltd., without personal liability


_____
Tammy Fu, as Joint Liquidator for and on behalf of
Kingate Global Fund, Ltd. and Kingate Euro Fund,
Ltd., without personal liability


_____
John C. McKenna, as Joint Liquidator for and on
behalf of Kingate Global Fund, Ltd. and Kingate
Euro Fund, Ltd., without personal liability

14

Annex A

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]


## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIMS


July __, 2019

Kingate Euro Fund Ltd.
Kingate Global Fund Ltd.
c/o Kalo Advisors
P.O. Box 4571
4th Floor, LM Business Center
Fish Lock Road
Road Town, Tortola
British Virgin Islands
Attention: Paul Pretlove and Tammy Fu

Kingate Euro Fund Ltd.
Kingate Global Fund Ltd.
c/o John C. McKenna
Finance & Risk Services Ltd.
P.O. Box HM 321
Hamilton HM BX
Bermuda

Dear Kingate Global Fund Ltd. and Kingate Euro Fund Ltd.:

## PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claims on BLMIS Account Nos. 1FN061 and 1FN086, designated as Claim Nos. 015359 and 015358, respectively:

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

Your claims for securities are **DENIED**.   No securities were ever purchased for your accounts.

Your claims for BLMIS Account Nos. 1FN061 and 1FN086, and the Trustee's claims against you in *Picard v. Federico Ceretti, et al.,* Adv. Pro. No. 09-01161 (SMB), have been settled on the terms and subject to the conditions set forth in that certain **SETTLEMENT AGREEMENT**, dated as of June __, 2019 between Kingate Euro Fund Ltd. and Kingate Global Fund Ltd. (the "Kingate Funds"), by Paul Pretlove, Tammy Fu, and John C. McKenna, in their capacity as joint liquidators, and the Trustee, and approved by the Bankruptcy Court by Order entered _____, 2019.

Pursuant to the terms of and solely for purposes of the **SETTLEMENT AGREEMENT**, your claims are **ALLOWED** in the amount of $1,659,748,094.52 (the "Allowed Claim") representing $799,748,094.52, plus an additional $860,000,000.   Your Allowed Claim will be partially satisfied in the amount of $1,000,000.00 ($500,000.00 for each of BLMIS Account Nos. 1FN061 and 1FN086), with the funds being advanced by the Securities Investor Protection Corporation pursuant to section 78fff-3(a)(1) of SIPA, provided that you assigned, transferred, endorsed and set over to the Trustee the full amount of such advance on the terms and subject to the conditions set forth in the Settlement Agreement.

At this time (and through the Tenth Interim Distribution), catch-up payments from the Trustee's pro rata distributions of customer property are due and owing in the amount of $1,105,939,947.82 (66.633% of the Allowed Claim).  You have agreed that $859,000,000.00 of such distribution would be assigned, transferred, endorsed and set over to the Trustee, leaving a balance of $246,939,947.82 to be distributed to you subject to the terms of that certain **SETTLEMENT AGREEMENT**.

The Trustee expects that there will be future interim distributions of which you will be notified.

You agree to waive the thirty (30) day objection period in connection with this determination.

_____
Irving H. Picard
Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc: Robert S. Loigman, Esq.
    Quinn Emanuel Urquhart & Sullivan, LLP
    51 Madison Avenue, 22nd Floor
    New York, New York 10010

    Jeremy Scott, Esq.
    Lipman Karas LLP
    Level 7, Holborn Gate
    26 Southampton Buildings
    London WC2A 1AN
    United Kingdom

# **Annex B**

| |
|---|
| *Picard v. Federico Ceretti, et al.*, Adv. Pro. No. 09-01161 (SMB) (S.D.N.Y.) |
| *Picard v. Kingate Management Limited et al.*, 2010 Folio 1478 (In the High Court of Justice, Queen's Bench Division, Commercial Court) |
| *Picard v. HSBC Bank Bermuda*, 2010: No. 425 (Supreme Court of Bermuda) |
| *Picard v. Kingate Global Fund, Ltd. (in liquidation)*, BVIHCV(C) 0163 of 2010 (The Eastern Caribbean Supreme Court, In the High Court of Justice, British Virgin Islands, Commercial Division) |
| *Picard v. Kingate Euro Fund, Ltd. (in liquidation)*, BVIHCV(C) 0162 of 2010 (The Eastern Caribbean Supreme Court, In the High Court of Justice, British Virgin Islands, Commercial Division) |

# <u>Annex C</u>

1. Carlo Grosso, heirs, relatives, and assigns
2. Federico Ceretti, heirs, relatives, and assigns
3. FIM Advisers, FIM Limited, FIM (USA), or any related FIM entity (collectively, "FIM")
4. Any former or current FIM officer, director, or partner
5. Kingate Management Limited, in Liquidation ("KML")
6. Any former or current KML officer or director
7. Any former director of the Kingate Funds, including but not limited to Sandra Manzke, Charles Sebah, Keith Bish, John Epps, and Graham Cook
8. The Ashby Trust
9. The El Prela Trust
10. First Peninsula Trustees Limited, but only Individually and as Trustee of the Ashby Trust
11. Ashby Investment Services Limited
12. Alpine Trustees Limited, but only Individually and as Trustee of the El Prela Trust
13. Port of Hercules Trustees Limited, but only Individually and as Trustee of the El Prela Trust
14. El Prela Group Holding Services Limited
15. Ashby Holding Services Limited
16. El Prela Trading Investments Limited
17. Phillip Evans
18. Bernard L. Madoff, and any heirs, relatives, and assigns
19. Any former employees of Bernard L. Madoff Investment Securities
20. Citi Hedge Fund Services (now doing business as SS&C Fund Services (Bermuda) Ltd.)
21. HSBC Bank Bermuda

# **Annex D**

## **Mutual Release**

**WHEREAS,** on or about June 26, 2019, Irving H. Picard, in his capacity as trustee (the "Trustee") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq.*, as amended, for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 estate (the "Estate") of Bernard L. Madoff ("Madoff"), and Paul Pretlove, Tammy Fu, and John C. Mckenna, in their capacity as joint liquidators of Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro" and together with Kingate Global, the "Kingate Funds") entered into a Settlement Agreement (the "Agreement"), and pursuant to the Agreement, the Trustee shall discontinue all claims against Kingate Global and Kingate Euro, and Federico Ceretti, Carlo Grosso, Kingate Management Limited, FIM Advisers LLP, FIM Limited, First Peninsula Trustees Limited, individually and as Trustee of the Ashby Trust, the Ashby Trust, Ashby Investment Services Limited, Alpine Trustees Limited, individually and as Trustee of the El Prela Trust, Port of Hercules Trustees Limited, individually and as Trustee of the El Prela Trust, the El Prela Trust, El Prela Group Holding Services Limited, Ashby Holding Services Limited, and El Prela Trading Investments Limited (collectively the "KML Defendants"), Citi Hedge Fund Services Limited (now doing business as SS&C Fund Services (Bermuda) Ltd.) ("CitiHedge" and, collectively with the KML Defendants, the "Subsequent Transferee Defendants"), and HSBC Bank Bermuda Limited ("HSBC Bank Bermuda") in the actions identified in Annex B to the Agreement (the "Actions").

**NOW, THEREFORE**, in consideration of the mutual covenants, promises and undertakings set forth herein, and for other good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, and without admission by any party as to liability or the lack thereof, the Trustee, the Subsequent Transferee Defendants, and HSBC Bank Bermuda, agree as follows (the "Release"):

1.      Release by Trustee of KML Defendants and CitiHedge. The Trustee, on behalf of himself and BLMIS, and its consolidated estates, hereby releases, acquits and forever discharges the KML Defendants and CitiHedge, and their respective subsidiaries, affiliates, officers, directors, shareholders, partners, members, trustees, beneficiaries, agents, successors and assigns, employees, professionals and consultants from any and all past, present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, accrued or unaccrued, known or unknown, arising out of or in any way related to the Kingate Funds, or CitiHedge's or the KML Defendants' respective relationship to BLMIS or Madoff, including but not limited to the claims set forth in the Actions.

2.      Release by Trustee of HSBC Bank Bermuda. The Trustee, on behalf of himself and BLMIS, and its consolidated estates, hereby releases, acquits and forever discharges HSBC Bank Bermuda and its subsidiaries, affiliates, officers, directors, shareholders, partners, members, trustees, beneficiaries, agents, successors and assigns, employees, professionals and

consultants from any and all past, present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, accrued or unaccrued, known or unknown, arising out of or in any way related to the recovery of transfers made by BLMIS to the Kingate Funds, including but not limited to the claims set forth in the Actions. This is a limited and specific release and neither HSBC Bank Bermuda, nor its respective subsidiaries, affiliates, officers, directors, shareholders, partners, members, trustees, beneficiaries, agents, successors and assigns, employees, professionals and consultants are released from claims that the Trustee has brought or may bring that are unrelated to the Kingate Funds' investments in and/or withdrawals from BLMIS in other pending or future actions. For the avoidance of doubt, and notwithstanding anything to the contrary contained herein, the Trustee is not releasing any claims against HSBC Bank Bermuda to recover transfers made by BLMIS to any customer of BLMIS other than the Kingate Funds.

3.   <u>Releases by the Subsequent Transferee Defendants</u>. The Subsequent Transferee Defendants hereby release, acquit and forever discharge the Trustee and his professionals, agents and consultants, Madoff, BLMIS, and the Estate from any and all past, present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, accrued or unaccrued, known or unknown, arising out of or in any way related to the Kingate Funds, Madoff or BLMIS, including but not limited to the claims asserted in the Actions.

4.   <u>Release by HSBC Bank Bermuda Ltd.</u>  HSBC Bank Bermuda Ltd. hereby releases, acquits and forever discharges the Trustee and his professionals, agents and consultants, Madoff, BLMIS, and the Estate from any and all past, present or future actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, accrued or unaccrued, known or unknown, arising out of or in any way relating to the Kingate Funds' investments in or withdrawals from BLMIS, including but not limited to the claims asserted in the Actions.

5.   <u>Discontinuance of Actions</u>. Within 10 business days after the Closing Date (as defined in the Agreement), the Trustee shall discontinue the Actions on terms that there be no orders for costs and all parties to the Actions bear their own costs. The Trustee and each of the Subsequent Transferee Defendants and HSBC Bank Bermuda (collectively, the "<u>Release Parties</u>") agree that they shall bear their own respective costs in the Actions and forever waive their respective rights to seek a costs order against any other of the Release Parties. The Trustee shall dismiss the Actions with prejudice as to the Subsequent Transferee Defendants and HSBC Bank Bermuda. The parties shall promptly take any action necessary to effectuate the discontinuance of any related appeals of the Actions. The Trustee and his professionals, agents and consultants shall not make statements to the effect that it has been established in the Actions that any of the Subsequent Transferee Defendants or HSBC Bank Bermuda had actual knowledge of or were willfully blind to Madoff's fraud.

6.   <u>Applicable Law</u>. This Release shall be construed and enforced in accordance with the laws of the State of New York without regard to its conflict of law provisions that

would result in the application of the law of another jurisdiction.  The Release Parties each waives, on behalf of itself and any successors and assigns, any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

7.    Exclusive Jurisdiction.  The Release Parties agree that any action between any of the Release Parties arising from, relating to, or in connection with this Release, may be brought only in the Bankruptcy Court, and each of the Release Parties consents that the Bankruptcy Court may enter final judgment in any action against the other coming before it under this paragraph.  None of the Release Parties shall bring, institute, prosecute, or maintain any action arising from, relating to, or in connection with any provision of this Release in any court other than the Bankruptcy Court, except for the limited purpose of enforcing a final award or judgment entered by the Bankruptcy Court, the BVI Court, the Bermuda Court, or some other court of competent jurisdiction in connection with the claims brought pursuant to this Release.  Each of the Release Parties hereby submits to the jurisdiction of the Bankruptcy Court in connection only with any action arising under this paragraph or, if the Bankruptcy Court does not exercise its jurisdiction, to the state and federal courts of the State of New York, and further agrees to accept service of process in connection with any action arising under this paragraph by hand or registered mail and to waive any and all objections to the adequacy of such service.  Each of the Release Parties further agrees to waive any and all defenses to the enforceability of a final award or judgment entered by the Bankruptcy Court under this paragraph in any action brought by any of the Release Parties to enforce such final award or judgment.

8.    Counterparts; Electronic Copy of Signatures.  This Release may be executed and delivered in any number of counterparts (including by electronic or facsimile signature), each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  For the avoidance of doubt, the releases set forth herein shall not take effect until all of the Release Parties have executed this Release.  The Release Parties may evidence their execution of this Release by delivery of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

[Signature Pages to Follow]

IN WITNESS WHEREOF, the Parties hereto have caused this Mutual Release to be executed as of the date first above written.


_____
Irving Picard, as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act of 1970, as amended, and the substantively consolidated Chapter 7 estate of Bernard L. Madoff, without personal liability


_____
Kenneth Joaquin, as Official Receiver for Bermuda, in his capacity as provisional liquidator of Kingate Management Limited, without personal liability


_____
FIM Limited
By:
Title:


_____
FIM Advisers LLP
By:
Title:


_____
Carlo Grosso


_____
Federico Ceretti


_____
The Ashby Trust
by First Peninsula Trustees Limited
By:
Title:

_____
The El Prela Trust
by Port of Hercules Trustees Limited
By:
Title:


_____
Ashby Holding Services Limited
By:
Title:


_____
Ashby Investment Services Limited
By:
Title:


_____
El Prela Group Holding Services Limited
By:
Title:


_____
El Prela Trading Investments Limited
By:
Title:


_____
First Peninsula Trustees Limited, individually and
as Trustee of the Ashby Trust
By:
Title:


_____
Port of Hercules Trustees Limited, individually and
as Trustee of the El Prela Trust
By:
Title:

_____
Alpine Trustees Limited, individually and as
Trustee of the El Prela Trust
By:
Title:


_____
Citi Hedge Fund Services Limited
(now doing business as SS&C Fund Services
(Bermuda) Ltd.)
By:
Title:


_____
HSBC Bank Bermuda Limited
By:
Title:


_____
HSBC Bank Bermuda Limited
By:
Title: