**DUFFYAMEDEO LLP**
275 Seventh Avenue, 7th Fl
New York, New York 10010
Tel: (212) 729-5832
Todd E. Duffy
Douglas A. Amedeo
*Attorneys for Alpha Prime Fund Limited and Senator Fund SPC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**BERNARD L. MADOFF INVESTMENT SECURITIES LLC,**<br><br>Debtor. | Adv. Pro. No. 08-1789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| **IRVING L. PICARD**, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>- against –<br><br>**HSBC BANK PLC, et. al.**<br><br>Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**DECLARATION OF TODD E DUFFY IN SUPPORT OF THE MOTION OF ALPHA PRIME FUND LTD FOR JUDGMENT ON THE PLEADINGS**

I, Todd E. Duffy, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am a member of the firm DuffyAmedeo LLP, counsel for Alpha Prime Fund Ltd. ("Alpha Prime"). I submit this Declaration in further support of the Motion of Alpha Prime Fund Ltd. for Judgment on the Pleadings.

2. Annexed hereto as Exhibit A is a true and correct copy of the Report of KPMG entitled Review of fraud and related operational risks at Bernard L. Madoff Investment Securities LLC dated February 16, 2006.

3. Annexed hereto as Exhibit B is a true and correct copy of the Report of KPMG entitled Review of fraud and related operational risks at Bernard L. Madoff Investment Securities LLC dated September 8, 2008.

I declare under penalty of perjury that the facts contained in this Declaration are true and I would testify to the same if needed.

Dated: New York, New York
July 27, 2019

/s/ Todd E. Duffy
Todd E. Duffy

# EXHIBIT A





**STRICTLY PRIVATE AND CONFIDENTIAL**

**HSBC Bank plc**

# Review of fraud and related operational risks at Bernard L Madoff Investment Securities LLC

KPMG LLP
16 February 2006
*This report contains 24 pages*
*Appendices contain 32 pages*
*dl/dy*

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 5 of 131

KPMG

## Contents

| | | |
|---|---|---|
| 1 | **Introduction** | **1** |
| 1.1 | Our instructions | 1 |
| 1.2 | Background | 1 |
| 1.3 | Our Approach | 2 |
| 1.4 | Limitations | 2 |
| 1.5 | Report format | 4 |
| 1.6 | Appendices | 4 |
| 1.7 | Confidentiality | 4 |
| 2 | **Executive summary** | **5** |
| 2.1 | Introduction | 5 |
| 2.2 | Major Findings | 5 |
| 2.3 | Main recommendations | 6 |
| 3 | **Madoff LLC** | **8** |
| 3.1 | Introduction | 8 |
| 3.2 | Background | 8 |
| 3.3 | Governance | 10 |
| 4 | **Risk and control issues** | **15** |
| 4.1 | Introduction | 15 |
| 4.2 | Process overview | 15 |
| 4.3 | Fraud and operational risks | 19 |
| 4.4 | Major findings and recommendations | 20 |
| 5 | **Review of Agreements** | **22** |
| Appendix A | Transaction process | 25 |
| Appendix B | Fraud risk, controls & testing | 26 |
| Appendix C | Summary of discrepancies in documentation | 38 |
| Appendix D | Contractual arrangements | 41 |
| Appendix E | Process flow | 49 |
| Appendix F | Sources of information | 55 |
| Appendix G | HSBC Clients | 56 |

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

# Glossary

| Term | Definition |
|---|---|
| Assets | Stocks, options, Treasury Bills and Fidelity funds. |
| BLM | Mr Bernard L Madoff (Chairman of Bernard L Madoff Securities LLC) |
| BNY | Bank of New York |
| BTDL | Bermuda Trust (Dublin) Limited |
| Client | Any one of eight clients where HSBC act as custodian and Madoff LLC acts as sub-custodian. These clients are identified in the Appendix of this report. |
| CUSIP | An identification number assigned to a fund |
| DTC | Depository Trust Company |
| Equity | Share in a listed company |
| HSBC | HSBC Bank plc |
| Loss | Losses resulting from fraud or related operational error by Madoff LLC management or staff. It excludes losses resulting from an investment |
| Madoff LLC | Bernard L Madoff Investment Securities LLC |
| NASD | The United States National Association of Securities Dealers |
| Option | A contract that gives the right to buy or sell some assets (eg shares) at a fixed price on or before a given date. |
| OTC | Over the Counter |
| Sub-custodian agreements | The two sub-custodian agreements entitled "Bank of Bermuda (Luxembourg) S.A and Bernard L. Madoff Investment Securities" and "Bank of Bermuda Limited and Bernard L Madoff Investment Securities Limited" |
| SEC | The United States Securities and Exchange Commission |
| SIAC | Securities Industry Automation Corporation |
| T-Bill | Treasury bill |



# 1 Introduction

## 1.1 Our instructions

This Report has been prepared in accordance with the terms of the engagement letter, dated 8 September 2005, between KPMG LLP ("KPMG") and HSBC Bank plc ("HSBC"). The purpose of the engagement was to assist HSBC to identify and review the fraud risks and related operational risks that may arise at Bernard L Madoff Investment Securities LLC ('Madoff LLC') while acting as sub custodian to eight HSBC client accounts. As stated in the engagement letter the purpose of our work was:

*"to assist you to:*

- *Understand how the client funds held by Madoff LLC are recorded and reported to HSBC;*
- *Identify the fraud and related operational risks that may arise as a result of HSBC, acting as custodian, placing the funds with Madoff LLC; and*
- *Determine the process whereby HSBC would be notified in the event of suspected fraud or misconduct which may impact on HSBC client funds."*

The review was to include speaking to HSBC staff based in London, Luxembourg and Dublin and conducting a selective review at the offices of Madoff LLC.

## 1.2 Background

HSBC has engaged KPMG LLP (UK) to conduct a review on behalf of HSBC, acting as custodian, placing the funds of a number of HSBC clients for investment with Madoff LLC in New York. As part of that review KPMG has been requested to review the process by which Madoff LLC receives, invests and accounts for these funds,how Madoff LLC interacts with HSBC with regards to these funds, and to look at potential

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 8 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

fraud and misappropriation risks, although to HSBC's knowledge, no allegations of fraud or misconduct have been raised, rather HSBC as custodian wished to ensure an appropriate review was undertaken.

## 1.3 Our Approach

The review was carried out as follows:

- Interviewing a number of selected employees of HSBC (refer to Appendix F). The purpose of these interviews was to gain an understanding of the various routes by which trades could be effected, to discuss specific fraud risks that could arise and to gain an understanding of the areas of concern.
- Obtaining and reviewing selected documentation from HSBC relating to trading conducted by Madoff LLC.
- Interviewing staff at Madoff LLC including Bernard L Madoff (BLM), Chairman of Madoff LLC and Frank di Pascali (FdP), Head of Operations (Refer to Appendix F). The purpose of these interviews was to confirm our understanding of the trading process and discuss specific fraud risk.
- Testing, on a selective basis, a number of fraud risks and related internal controls relating to trades executed by Madoff LLC (refer to Appendix B).
- Preparing this Report.

KPMG undertook its fieldwork during a six week period between October to 18 November 2005. During this time KPMG staff attended at HSBC's offices in London, held discussions with HSBC staff on a selective basis, attended at Madoff LLC's in order to meet with a number of Madoff LLC personnel and carried out testing on a selective basis.

This Report summarises our findings and recommendations in relation to the services provided in accordance with the Engagement Terms.

## 1.4 Limitations

The following needs to be considered when reading this document.



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 9 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

- We have relied on the information provided by HSBC and Madoff LLC personnel and have not independently verified that information.
- We were not required to review portfolio performance at Madoff LLC, nor have we carried out an audit of client assets.
- We have not independently assessed trading particularly at Madoff LLC against US legal and regulatory requirements as our work focussed on fraud and related operational risk issues.
- KPMG has not conducted an audit as part of this work, whether statutory or otherwise of HSBC, Madoff LLC or the information provided.
- This document is not intended to be a comprehensive review of HSBC's or Madoff LLC's processes for the purchase, transfer or sale of any asset on behalf of a client. The process by which HSBC uses the services of Madoff LLC and the process for investing client funds and allocating trade activity is complex; the document should be considered in the context of the limited time spent on this engagement.
- We have held discussions with HSBC staff, reviewed selected documents provided by HSBC and performed four days work on-site at Madoff LLC. However, our findings and conclusions may change if further information comes to light.
- The risks and controls outlined in this report do not constitute a complete list of all possible fraud and related loss risks that exist within Madoff LLC.
- We were not engaged to identify or review risk or controls at HSBC operations. However, we have made a number of recommendations for the consideration of HSBC management in order to assist HSBC manage the risks identified in this report. HSBC remain responsible for the implementation, or otherwise, of these recommendations.
- A number of suggested actions have been identified, which require priority consideration, with regard to fraud and related operational risks ("the risks"). HSBC may wish to prioritise these based on internal criteria.
- The assessment as to the existence and effectiveness of specific internal controls at Madoff LLC was limited to those reviewed while reviewing a select number of randomly selected trades.
- While we held discussions with BLM regarding the Internal Audit and Compliance framework at Madoff LLC, we did not specifically review any compliance related reports, internal audit reports, conflicts register or customer complaints.
- Whilst we were informed by BLM that Madoff LLC have in place an AML policy which formed part of the compliance framework we have focussed our work as requested on fraud rather than AML risks.

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

## 1.5 Report format

We have structured the Report as follows:

- Section 2 – Executive Summary;
- Section 3 – Madoff LLC;
- Section 4 – Risk and control issues; and
- Section 5 – Review of agreements.

## 1.6 Appendices

Appendices include a summary of the fraud and related operational risks, selective controls and a description of the tests undertaken.

## 1.7 Confidentiality

This document is strictly private and confidential. It may not be disclosed, copied, quoted or referred to in whole or in part, whether for the purposes of disciplinary proceedings or otherwise without our prior written consent. Such consent, if given, may be on conditions including, without limitation, an indemnity against any claims by third parties arising from release of any part of this document or other correspondence, including reports, issued by us.

dl/dy

4



# 2 Executive summary

## 2.1 Introduction

KPMG was engaged by HSBC to undertake a review of the fraud and related operational risks that may arise at Madoff LLC while acting as sub custodian to eight HSBC client accounts. We were asked to assist HSBC:

- understand how the client funds held by Madoff LLC are recorded and reported to HSBC;
- identify the fraud and related operational risks that may arise as a result of HSBC, acting as custodian, placing the funds with Madoff LLC; and
- determine the process whereby HSBC would be notified in the event of suspected fraud or misconduct which may impact on HSBC client funds.

The work included reviewing documentation provided by HSBC and Madoff LLC and holding discussions with HSBC and Madoff LLC management. We also carried out, on a selective basis, testing of client transactional data held at Madoff LLC. However, this did not represent a statistically significant selection.

## 2.2 Major Findings

Our major findings are set out below:

- **Asset ownership:** Independent and external confirmation as to the ownership of individual HSBC client assets cannot be made. Madoff LLC undertake bulk trades and then allocate these assets on a proportional basis within Madoff LLC to the individual client accounts. Madoff LLC produce a 'Client Confirmation' for each asset transaction other than for transactions to buy or sell Options and Fidelity funds.
- **Fund recognition:** The original documents relating to the trading activity and financial position for Square One Fund (originally known as ISIS, Worldwide Limited until 27 April 1999) appear to be sent by Madoff LLC to Bermuda Trust, Hong Kong. All other original fund information is either reported to HSBC in Dublin or Luxemburg.

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 12 of 131

KPMG

- **Internal controls:** The controls tested by KPMG during the course of the on-site work were found to be in place. However, they may not prevent fraud or error occurring on client accounts, if management or staff at Madoff LLC either override controls or undertake activities where appropriate controls are not in place.
- **Escalation:** BLM, is responsible for determining whether matters concerning HSBC client accounts (eg fraud or significant errors) should be reported to HSBC. In the event this occurs, then he states that he would report these issues to Paul Smith (Head of AFS), HSBC in New York. Madoff LLC currently has an insurance bond with Chubb Insurance.
- **HSBC operations:** HSBC staff in Luxembourg and Dublin receive information regards client accounts from BLM such as trading activity and price upon which a high level of reliance is placed.

## 2.3 Main recommendations

The following recommendations have been developed and are in addition to those set out in Appendix B.

- **Trade Activity:** Discuss and agree with Madoff LLC a more appropriate approach by which HSBC are notified of trading activity on HSBC client accounts. This may include considering, subject to key criteria such as security and cost, an electronic mechanism (e.g. service internet site) to enable HSBC to review trading activity on client accounts. (Refer to section 3.2)
- **Insurance:** Review the current fidelity insurance arrangements at both HSBC and Madoff LLC to ensure they provide appropriate coverage in the event of fraud or error. (Refer to section 3.2)
- **Escalation:** Establish a formal agreement, documented and signed by both parties (e.g. HSBC and Madoff LLC) which sets out the requirements and criteria for reporting suspected or proven fraud or error which has or may impact on a HSBC client account. (Refer to section 3.3)
- **Fund recognition:** HSBC should consider consolidating report information currently provided by Madoff LLC (currently report to three locations; Hong Kong, Luxembourg and Dublin). This may assist to reduce the risk of misallocating assets between the eight client accounts. (Refer to section 3.3)
- **Disaster Recovery action plan:** Consider documenting a response plan. This should include: key contacts, HSBC and Madoff LLC insurance details, contact details of key US, UK and other relevant regulators and actions to consider to secure control over client assets. (Refer to section 3.3)



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 13 of 131

- **Review HSBC operations:** Undertake a review at HSBC's custody centres (Luxembourg and Dublin) in order to ensure that appropriate procedures are in place to independently confirm, where possible, the accuracy of transactions, identify possible risks and issues and record any errors, missing information or other operational issues. (Refer to section 4.4)
- **Periodic review:** Undertake a periodic review at Madoff LLC to ensure the integrity of accounting for client transactions and assets. The information in this report may serve as a guide as to how this assessment may occur. (Refer to section 4.4)
- **Contract review:** Review the sub-custody contracts between HSBC and Madoff LLC to ensure that they reflect the current requirements and agreed obligations of Madoff LLC. (Refer to section 5)
- **Establish the legal chain:** Review sub-custody agreements and underlying contracts/documentation to ensure that HSBC has primary custodian rights over the underlying assets held within the funds. The table at Appendix C summaries the discrepancies identified between the sub-custody agreements and various other documentation. The charts at Appendix D further illustrate the relationships identified between the various parties and areas where gaps have been identified. (Refer to section 5 and Appendix D)

KPMG

# 3 Madoff LLC

## 3.1 Introduction

This section sets out how HSBC client funds are transacted and recorded at Madoff LLC. This section is set out as follows:

- Background
- Governance issues

## 3.2 Background

Madoff LLC records state that the business is a registered broker/dealer with the SEC and a member of the NASD. BLM provided KPMG with a number of documents at the time of the onsite review. This included a 'Statement of Financial Position - October 31, 2004', a four page summary of the financial accounts. This document states that Madoff LLC had total assets of USD 933 million and members equity of USD512 million. A copy of the documents provided by BLM to KPMG have been provided to HSBC.

Madoff LLC provides prime broker, wholesale and market maker services to its clients. According to BLM, the volume of trades executed annually through Madoff LLC (valued in excess of $1 trillion per annum) accounts for around 15% of the annual total trade volume of the US equity market. Notwithstanding this, Madoff LLC remains a predominantly family-owned business with the senior positions within the company all being held by members of the Madoff family. BLM is the CEO and chairman of the company whilst his younger brother Peter Madoff is Head of Compliance. BLM's two sons are also part of the senior management of the company.

Madoff LLC has approximately USD 16 billion of funds under management, of which approximately USD 2 billion are held and managed on behalf of HSBC clients. It was estimated that approximately five to eight percent of all trade executions at Madoff LLC related to HSBC client accounts.

HSBC took responsibility for the eight client funds when it acquired Bank of Bermuda approximately 18 months ago.



Although HSBC has the primary custodian relationship with the eight clients (as set out in Appendix G) managed by Madoff LLC, HSBC has appointed Madoff LLC as sub-custodian for these clients. Madoff LLC state that they do not hold any other relationship with any of these clients outside of the existing HSBC relationship. That is, none of the eight clients is also a client for Madoff LLC under another arrangement. BLM claims to offer the same strategy to all of the clients within the HSBC relationship and that their aim is to achieve consistent, moderate returns over the long term. Madoff LLC's strategy involves holding around 45 to 50 of the most liquid stocks within the S&P 100 and fully hedging the long equity positions with a collar strategy of S&P 100 put and call options. Although this is not specifically set out in the broker agreements between Madoff LLC and its clients, this is effectively the product which Madoff LLC markets to clients.

The key activities undertaken by Madoff LLC on behalf of its clients including HSBC clients includes: receiving client funds, determining the investment strategy, placing orders for client funds (new or existing) into one or more investments (equities, put or call options, T bills, or Fidelity funds), allocating the investments into client funds, selling the investment, making distribution payments to clients as required and reporting to HSBC and the clients.

***Reporting***

Madoff LLC provide HSBC and their clients with the following documents ('trading activity information'):

- a client confirmation for each trade;
- a monthly trading and positions statement; and
- a credit/debit memorandum where there have been any capital injections/withdrawals from the client account.

The client confirmation is a document created by Madoff LLC indicating the specific transaction undertaken on behalf of the client.

***Method of reporting***

Madoff LLC provide trading activity information by sending a facsimile to the respective HSBC offices (Luxemburg and Dublin). They state that they use this process as they have concerns over the security of other forms of dispatch such as encryption or email. Original copies of the documentation are then sent to the respective HSBC sites by post. Copies of the trade documentation are sent to the clients. Going forward, Madoff LLC are investigating ways by which trading data could be posted to a secure internet site for access by clients including HSBC. This would be done with a time delay to ensure that security concerning the investment strategy is not compromised. This would reduce the level of



facsimiled documentation and the time between a transaction and reporting to HSBC. Madoff LLC state that they send information relating to the Square One fund to Bermuda Trust Hong Kong ("BTHK"). KPMG have not independently confirmed that BTHK receive this on a regular basis.

The following information was provided by BLM during the course of the on-site work. These have not been independently confirmed:

- Disaster recovery: Madoff LLC has established a disaster recovery centre and states that they have part ownership of the recovery site. Located near New York's La Guardia airport, the site contains IT systems which shadow the New York city operations. Madoff LLC provided a document entitled 'Disaster Recovery Test SIA Industry Test 10/15/2005', a copy of which has been provided to HSBC.
- Manual trading: BLM stated that all trades are executed through the automated trading system and that no manual trades are undertaken. Password access is limited to BLM and FdP.
- Trading errors: Madoff LLC undertake approximately 200,000 trades per day. All trading is automated and while few errors occur they usually relate to errors in price or quantity. BLM maintains that if the error occurred at Madoff LLC, that Madoff LLC, would make up any loss that may arise. Gains received would be passed on to the client account.

## 3.3 Governance

A number of factors were taken into account when assessing governance issues at Madoff LLC with respect to the fraud and related operational risks. These are set out as follows:

- Fraud risk management
- Governance committees
- Escalation and reporting
- Other issues



*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

***Fraud risk management***

Fraud risk management ('FRM') can be considered to encapsulate those activities designed to prevent and detect fraud or misconduct. These activities include: setting out roles and responsibilities with respect to fraud, appropriate anti-fraud policies, identification and assessment of fraud risks, training and awareness and monitoring.

***Findings***

BLM stated that he is responsible for the prevention and detection of fraud or misconduct issues at Madoff LLC. While no specific fraud policies exist, Madoff LLC provided KPMG with the two following policy documents: "Anti-Money laundering (AML) Program: Compliance and Supervisory Procedures" and "Internal Risk Management and Controls".

The AML document states that "*Bernard L. Madoff Investment Securities LLC ("Madoff") prohibits and actively prevents money laundering and any activity that facilitates money laundering of the funding of terrorist or criminal activities*" (page 1). Peter Madoff is the designated Money Laundering Reporting Officer (MLRO).

BLM stated that the approach adopted by Madoff LLC is to identify any errors or potential non compliance issues rather than to identify fraud or related operational risks. Madoff LLC state that a major consideration is the potential for breaching compliance issues, rather than potential fraudulent activity.

***Recommendations***

Request that Madoff LLC introduce a fraud risk management policy applicable to all staff and raises staff awareness to the risk of fraud.

***Governance committees***

Governance committees, with respect of fraud, are those committees which actively seek to ascertain and, where appropriate, drive forward the organisation's approach to preventing, detecting and reporting fraud. Madoff LLC has in place Compliance and Internal Audit Committees which may consider fraud and misconduct issues.

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 18 of 131

KPMG

***Findings***

Madoff LLC operate a number of governance committees. Those relevant to this review are:

- Legal & Compliance Committee. A committee chaired by Peter Madoff and its members include Shana Madoff and BLM. The group meets monthly and focuses on new regulations, compliance and position limits.
- Internal Audit Committee. A committee chaired by BLM and its members are Peter Madoff and Elizabeth Weintraub. Attendees include David Hugel, Trading Floor Compliance Analyst, Enrica Pitz, Financial Controller and Daniel Bonventre, Head of Dealer Operations. Meetings are held monthly. Internal Audit produce a quarterly report. KPMG have provided HSBC with an example of this report. The chair of the Internal Audit Committee also conducts the reviews and signs the reports.

There does not appear to be a standing agenda item to consider specific fraud or misconduct risks or control issues.

***Recommendation***

Ensure that specific fraud or misconduct risks and control issues are considered through the Governance committees at Madoff LLC.

***Escalation and reporting***

This section considers how HSBC would be notified in event of suspected fraud or misconduct occurring and which may impact on a client account while under effective control of Madoff LLC.

***Findings***

A clear escalation and reporting framework has not been documented. Current arrangements at Madoff LLC are that BLM is responsible for client relationships and reporting of issues. Reports to HSBC can be considered on two levels:

- Ongoing reporting to HSBC operations in Luxembourg and Dublin. This includes reporting trading activity on individual client accounts and attending to queries which may arise and initiated by HSBC. Reporting and responding to these issues is usually undertaken by FdP, (Head of Operations) or one of his staff. Usual contacts within HSBC are Saverio Fiorino in Luxembourg and Ann Meehan in Dublin.



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 19 of 131

- Matters "of consequence" (as referred to by BLM) which are identified at Madoff LLC, whether they relate to Madoff LLC or HSBC, with regards to the client accounts. Reporting of these issues would be by BLM to Paul Smith (Head of AFS, HSBC in New York). BLM asserted that no such issues have been reported to date.

***Recommendation***

HSBC may wish to consider the following actions:

- Introduce a clear process for escalating issues to HSBC and document accordingly.
- Prepare consolidated information with regards the assets of the eight clients.
- Ensure there is clear guidance on the necessary steps to be undertaken in the event a report is made in order to secure client assets and notify the appropriate HSBC personnel and other relevant parties.

***Other relevant issues***

Other factors which were considered during the course of the on-site work include: insurance coverage, staff incentives, and potential conflicts of interest.

***Findings***

The following information was provided by BLM:

- Insurance: An insurance 'Bond' has been taken out by Madoff LLC with Chubb Group of Insurance Companies. There are a number of descriptions and restrictions in the policy such as the limit of liability on a single loss ($10 million for the stated categories) and that claims cannot be made for people classified as 'Partners' which may include BLM and other senior management. KPMG were provided with the front page to this document and this has subsequently been provided to HSBC.
- Remuneration: All Madoff LLC staff receive a base salary. In addition, traders receive a percentage of profits while support and other staff receive an additional amount depending on their individual performance throughout the year.

Pg 20 of 132
09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 20 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

- Conflicts of Interest: All staff are required to declare any conflicts of interests. While there is no formal process for recording this it was noted that Peter Madoff is a member of the Executive Committee at AG Edwards. AG Edwards are also a provider of trading facilities to Madoff LLC.

***Recommendation***

Bonus incentives can be a contributing factor in certain cases where fraud occurs and it is important that Madoff LLC address these concerns as part of the independent compliance reviews. Further, that HSBC request and review any actions undertaken to monitor financial and other incentives.

dl/dy

14



# 4 Risk and control issues

## 4.1 Introduction

The process by which Madoff LLC receives funds, invests and reports to HSBC was reviewed in order to assist HSBC identify fraud and operational risks which may result in a client suffering a loss. This process was discussed with HSBC staff and confirmed through discussions held with BLM and FdP. This resulted in the identification of a number of fraud and operational risks. Diagrams appear in appendices D and E which set out the transaction process and relationship between HSBC, Madoff LLC and the client accounts.

## 4.2 Process overview

The processes around the execution of trades was discussed with BLM and FdP and is documented below.

Equity and corresponding hedge trades are executed by Madoff LLC using a house model. There can be up to 40 models at any given time, all of which are based on the same overall strategy, but with differing timing and weighting parameters. Madoff LLC executes trades using the most favourable strategy model at any given time depending on market conditions. Principal trades are executed on a bulk basis with external market counterparties and allocated to the clients as "agency" trades on an average prices basis according to an allocation algorithm which effectively pro-rates the trades to the client's holdings. The house model is uploaded to the in-house developed electronic trading system which indicates $ bid and offer prices for the relevant stock to the external market counterparties on the trade blotter. All trades are executed through the electronic trade system and there is no further communication with the market counterparties unless there are settlement differences (see below).

As the principal bulk trade orders are filled, the corresponding customer confirmations are automatically generated for each of the agency trades being allocated to the client accounts. Original copies of these "customer trade confirmations" are sent directly to HSBC (and copies are sent to clients). The confirmations contain the following information:

- Stock name;
- CUSIP number;

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 22 of 131

KPMG

- Nominal /quantity of shares;
- Price at execution;
- Trade date and settlement date;
- Seller (in the case of the individual agency trades for each client, this is Madoff LLC);
- Agency account number; and
- A system-generated unique transaction identification number.

Madoff LLC settles the principal bulk trades through the Depository Trust Company (DTC) with the external market counterparties (see transaction process diagram in Appendix A). As the principal bulk trades are allocated to the clients, the trading system records the total amount of the trade which is to be allocated to clients as agency trades. This total is communicated to the DTC through the settlement process since the stock from the market counterparties can only be delivered to a "free position" at the DTC (a sub account used for settlement) before being transferred to the "Segregated Account" (or "Seg") for the benefit of the clients. This communication is done automatically by the trading system and the DTC confirms the movement of stock into the client segregated account through a "Seg Confirmation" on a daily basis (where client accounts have received stock). Where Madoff LLC executes a sell order on behalf of clients, the stock is transferred out of the segregated account into the free position at the DTC before the sell trades can be settled.

The trading system indicates the total amount of stock to be "released" from the segregated account and the DTC will confirm this through a "Seg Release" notification. The Seg Confirmations and Seg Releases are automatically printed for each bulk trade from the DTC terminal within Madoff LLC's operations. The confirmations include the CUSIP, the total nominal, cash consideration and trade identification number which can be reconciled back to the client stock record/and trade blotter if necessary. Copies of Seg Confirmations and Seg Releases were provided to KPMG for a selection of trades.

The principal bulk trades remain on the trade blotter which is reconciled to the DTC confirmations on a daily basis to ensure completeness and accuracy over trade recording. The agency trades are allocated to the client accounts in time priority with the aim of ensuring that no client is disadvantaged by market timing. According to BLM, the recorded agency trade execution price is typically an average of the principal bulk trade price achieved including commission which averages four cents per share.



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 23 of 131

***Equity trades***

On trade date (T), the trade blotters are assembled. These include details of all trading activity for the day, the sum value of trades and the average price. The customer trade confirmations are automatically generated for all agency trades and sent to HSBC/copies to clients. The agency trades for each client account are detailed on the trade blotter, the sum of which should equal the corresponding principal bulk trade. Copies of the trade blotters for a selection of days were provided to KPMG. KPMG observed that for a selection of client agency trades, the total nominal amounts of the agency trades were consistent with a corresponding principal bulk trade executed with an external market counterparty.

The aggregate amount of stock to be moved to/from the client segregated account is confirmed as segregated or released by the DTC (see above). The trade details flow directly from the trade blotter to update the underlying client ledgers. An individual client ledger is maintained for each client "fund" with an account number of the format "1-FR-XXXX-Y-0" ("X" represents client account number, whilst "Y" represents account type e.g. 3-0 is the equity, cash and US Treasuries account; 4-0 is the options account). Madoff LLC has one omnibus account at the DTC – the "0646" account which is used to settle all principal bulk trades. This omnibus account comprises the free position (used for settlement) and a segregated client account (used for holding client assets).

On T+1, the principal bulk trades are reconciled to the daily feed of matched/cleared items from the DTC. The reconciliation involves a download of the previous day's trading from the clearing system, SIAC (Securities Industry Automation Corporation – similar to CREST in the UK) which is automatically performed between 3am and 4am daily. All trade details on the download are in a standard "flat CSV file" format. The operations team format the trade details on the trade blotter to be consistent with the SIAC download which enables them to match the trade details. Any discrepancies are noted on the daily "Break Sheet". Items are classified as break items when any details outside of a set value tolerance do not agree (a value tolerance of $10.00 is set to account for rounding etc.) In the majority of cases, the differences are either due to rounding or incorrect recording of commission amounts. In some cases, the external market counterparty inputs an incorrect price. Copies of the daily Break Sheets were provided to KPMG for a selection of days.

The Purchase and Sales (P&S) department at Madoff LLC are responsible for resolving all breaks and document the actions taken on the daily Break Sheets. The original Break Sheets are retained for one month before being discarded (although a Break Sheet for any given day can be re-run from the trading system). The Break Sheets show cumulative breaks that are unresolved, hence a break which has not yet been resolved will appear on consecutive day's Break Sheets until cleared. Owing to how the client trades are priced (using an average of the order fill price), Madoff give their clients contractual settlement and the errors or differences are either written off or recovered from the market counterparty.

BLM noted that errors tend to be a rare occurrence owing to the way in which the automated trading system posts "bids" and "offers" to the market.

On Settlement date (typically T+3 for equities, T+1 for Treasury stock), the stock and relating cash is transferred between the market counterparty and the Madoff LLC settlement account at the DTC (the free position) and the total of client stock purchases are moved to the segregated client account. To ensure that each client ledger accurately reflects the post traded position, a daily stock reconciliation is performed between the individual client ledgers (the daily stock record) and the segregated client account at DTC (using a STFS Participants Statement' as provided by the DTC). These are typically retained for one quarter before being discarded. In addition, a monthly stock and cash reconciliation is performed in accordance with regulations. The total of reconciliation differences from these processes should sum to zero on the basis that all external breaks (from the daily SIAC process) have been resolved and hence the differences should only relate to the allocation of trades to individual clients accounts. Copies of the STFS Participant Statements were provided to KPMG for a selection of days. KPMG observed that the total segregated client assets per the STFS Participant Statements were consistent with the total clients holding per Madoff's records.

***T-Bills and other trades***

The trading process for T-Bills generally follows the same process as set out above except for the fact that the a single market counterparty is used for the external trade – Bank of New York ("BNY"), who also acts as clearing house for the trades. As these trades are settled directly with BNY, they do not appear on the daily SIAC download since they are not being settled through a depository such as the DTC. BLM asserted that Madoff LLC do not charge any commission for the trades in T-Bills. Copies of trade blotters were provided to KPMG for a selection of T-Bill trades. KPMG observed that the aggregate of nominal agency trades in T-Bills was consistent with a principal bulk trade executed with Bank of New York as counterparty.

Trades in put and call options are traded on behalf of clients "Over the Counter" (OTC) direct with market counterparties (who are typically wholesale clients of Madoff LLC). The details of the put/call options are recorded on the trade blotters which identify individual contracts with market counterparties. PdF asserted that as these are OTC contracts, there are no customer confirmations for these trades. FdP asserted that Madoff LLC is required to maintain at least a 15% cash margin in the event that the options are exercised.

Uninvested cash is maintained in either T-Bills or units in the Fidelity Money Markets Fund (Fidelity Spartan). Madoff LLC maintains a pooled holding within the Fidelity Fund and units are allocated to clients for the balance of uninvested cash. The allocations to underlying client accounts are processed on the trade blotters, but since this is effectively an internal allocation, there is no external confirmation. The operations department



perform a reconciliation of clients' holdings in Fidelity units (per the daily stock record) to the total units held by Madoff LLC in the Fidelity Fund. Any new funds received from clients is placed into a pooled client cash account held at JP Morgan Chase. The balance of this account is typically nil, since all cash is immediately switched into T-Bills or units in the Fidelity Fund. According to BLM, new cash injections from clients are a rare occurrence (less than once a month) and cash is rarely received without prior notice. Since cash is immediately switched into T-Bills, Fidelity units or stock, if a client has sent cash in error, Madoff LLC will unwind any positions in order to return the monies to the client. On an ongoing basis, T-Bills are liquidated in order to enable settlement of equity trades and vice versa.

## 4.3 Fraud and operational risks

KPMG reviewed the process by which client funds are remitted to/from Madoff LLC and the management of those funds while under the control of Madoff LLC. 25 fraud and operational risks were identified and discussed with HSBC. These are set out in Appendix B. During the course of the onsite work at Madoff LLC, KPMG identified, through discussion with Madoff LLC staff (primarily BLM and FdP) a number of internal controls relevant to these risks.

Specific tests were undertaken on 19 of the 25 risks identified in order to selectively test the controls. These were undertaken as follows:

- selecting one or more transactions that were recorded as occurring on each of the eight client accounts in 2005; and
- reviewing documentation provided by Madoff LLC purportedly supporting those transactions.

The table (following page) summaries the 25 fraud and related operational risks. These risks have been classified (as set out in Appendix B) after taking into account internal controls identified as a result of discussions with HSBC and Madoff LLC staff.

The internal controls were identified by reviewing documents and conducting interviews with Madoff LLC.

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

**Table 1: Summary of fraud and related operational risks**

| No of controls identified | Risks reviewed |
|---|---|
| Mandates to trade | 1 |
| Cash received or held | 2 to 6 |
| Trading (Equities/Options/Fidelity/T-Bills) | 7 to 20 and 22 to 24 |
| Accounting for client assets | 21 and 25 |

## 4.4 Major findings and recommendations

The major findings of the risk review are:

- 25 fraud and related operational risks were identified throughout the process whereby Madoff LLC receive, check and account for client funds.
- A limited number of selected controls were tested by KPMG during the course of the on site work at Madoff LLC and were found to be in place. However, they may not prevent fraud or error occurring on client accounts if management or staff at Madoff LLC either override controls or undertake activities where appropriate controls are not in place.
- There is strong reliance placed on Madoff LLC/BLM reporting suspected fraud, misconduct or significant error relating to a client account to the appropriate person in HSBC.
- The insurance cover held by Madoff LLC may not provide sufficient cover in the event of one of the above events occurring.

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 27 of 131

The major recommendations of the risk review are:

- HSBC should undertake a periodic review at Madoff LLC which should include:
  - Identifying and assessing risks and controls which may be relevant to the movement and control of client assets.
  - Review the internal audit and compliance reports, conflicts of interest documentation and any external reviews such as those conducted by US regulatory agencies.
  - Undertake on a periodic basis, independent confirmation of faxed client trading activity information as provided by Madoff LLC, as faxes can be easily replicated or falsified in order to commit fraud.
  - Request Madoff LLC to provide compliance, Internal Audit and other review reports on a periodic basis
  - Hold discussions with BLM and other Madoff LLC staff, as appropriate, on fraud and operational risks and controls and discuss any prior period incidents which may be relevant to the client accounts.
  - Testing key controls by selecting client trades.
- Ensure the HSBC locations (e.g. Luxembourg, Dublin and Hong Kong (if appropriate)) have in place a risk and compliance based program and that they actively test transaction information as provided by Madoff LLC.
- Ensure appropriate escalation procedures and fidelity insurance coverage are in place.

In addition to the above, HSBC should consider whether the appropriate Know Your Customer ("KYC"), transaction monitoring, and source of funds processes and procedures are in place, particularly given the regulatory requirements in the US and UK. This is applicable to both HSBC operations and Madoff LLC.

KPMG

## 5 Review of Agreements

KPMG were provided with a select number of sub custody and client agreement documents by HSBC and Madoff LLC. KPMG conducted a high level review of these documents and a number of discrepancies were identified with regards to different accounts or fund names. These findings and suggested actions are set out below. Further analysis appears in Appendix C. KPMG subsequently provided HSBC the documents obtained by KPMG while undertaking the onsite review at Madoff LLC.

***Sub-custody agreement between Bank of Bermuda (Luxembourg) S.A. and Bernard L. Madoff Investment Securities***

The following actions should be considered in respect of the named client funds:

- Primeo Fund
  - Establish that the fund name within Annex "A" of the above sub-custody agreement (Primeo Fund) and the fund name held by HSSL (Primeo Select Fund) relate to the same fund; and
  - Ensure that the account name for the fund as provided by Madoff LLC (Primeo Fund Class B) also corresponds to the fund name held by HSSL (Primeo Select Fund).
- Lagoon Investments Limited
  - Ensure that although Annex "A" of the above sub-custody agreement refers to Lagoon Investments Limited (a company of Hermes Limited) it still applies to the funds held by HSSL (Hermes Neutral, Hermes Universal, Hermes World USD); and
  - Ensure that the account name as provided by Madoff LLC (Lagoon Investments & Lagoon Investments D) corresponds to the actual account name held by HSSL (Lagoon Investments) and that it applies to the funds held by HSSL (Hermes Neutral, Hermes Universal, Hermes World USD).
- Alpha Prime Fund Limited



- Establish the name of the fund held by HSSL and ensure it relates to the fund name within Annex "A" of the above sub-custody agreement (Alpha Prime Fund Limited); and
- Ensure that the account name for the fund as provided by Madoff LLC (Alpha Prime) corresponds to the actual account name held by HSSL (Alpha Prime Fund Limited) and it applies to the fund held by HSSL (the fund name to be established by HSBC).

- Herald Fund SPC – Herald USA
  - Establish that the fund name within Annex "A" of the above sub-custody agreement (Herald Fund SPC-Herald USA) and the fund name held by HSSL (Herald USA segregated portfolio one) relate to the same fund; and
  - Ensure that the account name for the fund as provided by Madoff LLC (Herald Fund) corresponds to the actual account name held by HSSL (Herald Fund SPC – Herald USA) and it applies to the fund held by HSSL (Herald USA segregated portfolio one).
- Square One Fund Limited
  - Establish under which name this fund is held at HSSL; and
  - Establish the account name at Madoff LLC for this fund to ensure it corresponds to the fund name held at HSSL (the fund name is to be established by HSBC).
- Thema Coral Fund
  - Determine which sub-custody agreement captures this fund;
  - Ensure the fund name contained in the sub-custody agreement corresponds to the customer name according to HSSL's records; and
  - Establish that the account name as provided by Madoff LLC (Thema Wise) corresponds to the account name held by HSSL (Thema Wise Investments Ltd) and that the appropriate account name relates to the fund held by HSSL (Thema Coral Fund).

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 30 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

***Sub-custody agreement between The Bank of Bermuda Limited and Bernhard L. Madoff Investment Securities Limited, and a Custody agreement between Thema International Fund plc and Bermuda Trust (Dublin) Limited***

Under this sub-custody agreement an account has been set up entitled "The Bank of Bermuda Limited – Hamilton Special Custody Account for the exclusive benefit of customers of Bermuda Trust (Dublin) Limited (BTDL).

The following actions are recommended:

- Ensure there are appropriate contractual arrangements in place between The Bank of Bermuda Limited and BTDL;
- Establish the account name for this fund as recorded by HSBC / BTDL; and
- Ensure that the account name for the fund as provided by Madoff LLC (Thema Wise) corresponds to the actual account name held by BTDL (Thema International Fund Plc) and is applicable to the fund held by BTDL.



*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

## Appendix A – Transaction process

The following charts set out our understanding of the eight client accounts and the transaction process at Madoff LLC.



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 32 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

## Appendix B – Fraud risk, controls and testing

| Ref[1] | Risk or potential issue & its implication | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | *Establish mandate with clients* | | | | | |
| ● | BLM falsifies mandate with client. | F | There are mandates. Terms are set out in the Agreements. | N/A | | No action required |
| | *Cash received (new/existing)* | | | | | |
| ● | BLM embezzles client funds. | F | All funds are deposited in the nominated client account at JP Morgan Chase. | No testing undertaken. | | HSBC should consider undertaking the following: |
| | | | Restricted access to Madoff LLC's account at JP Morgan Chase Bank. Limited to the following Madoff LLC personnel: Dan Bonvertrie, Bernard Madoff, Peter Madoff, and Enrica Cotellessa-Pitz. | | R1 | • Establish a process to monitor monthly statements |
| | | | | | R2 | • Reconcile monthly statements to cash contributions from clients |
| | | | | | R3 | • Monitor the cash accounts of individual clients |
| | | | | | R4 | • Request independent confirmation of the signatories and their individual mandates as recorded by JP Morgan Chase (bankers for Madoff LLC) |
| ● | BLM falsifies client's instruction for investment to cover poor proprietary position. | F | Clients do not send instructions<br>Client assets are segregated from Proprietary assets at the DTC (for | Reviewed a total Fidelity holdings of all segregated clients against statement from Fidelity as of 30 | R5 | HSBC should consider instructing all clients to provide written notification to HSBC if they directly instruct Madoff LLC to undertake any investment activity on their behalf. |

[1] Legend: ● = Fraud risk (red dot); ⊙ = Operational risk ( )
[2] Internal controls as nominated during the course of discussions with Bernard Madoff and Frank DiPascali at Madoff LLC. These have not been independently verified or tested by KPMG unless as specifically stated in the 'Test' column.



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 33 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | | | Equities and Treasury Stocks)<br><br>Holdings in Fidelity fund are allocations to holdings in Fidelity units already held by Madoff LLC. | September 2005 for adequacy of cover. | | |
| 4 | Client cash received either not placed in segregated client money account or incorrectly rewarded. (e.g. pooled with BLM proprietary money). | O | Segregated clients accounts maintained in the financial records at Madoff LLC.<br><br>All funds deposited or waiting for investment are placed in short term treasury stock and any residual goes into Fidelity fund. | Reviewed a sample of reconciliations between 'STFS Participants Statement' as provided by the DTC (to Madoff LLC). This was compared to the September 2005 stock record. | | Refer to R1 to R4 |
| | | | Reconcile the cash book on a daily basis which identifies what is held at the DTC against Madoff LLC's internal records. [This would identify if amounts are segregated into client accounts or held in the proprietary account]. | No discrepancies identified. | | |
| 5 | Client cash received is diverted for personal gain. | F | Restricted access to Madoff LLC's account JP Morgan Chase Bank. Limited to the following Madoff LLC personnel: Dan Bonvertrie, Bernard Madoff, Peter Madoff, and Enrica Cotellessa-Pitz. | Reviewed a sample of reconciliations between 'STFS Participants Statement' as provided by the DTC (to Madoff LLC). This was compared to the | R6<br><br>R7 | Confirm:<br>• Whether the insurance policies as held by HSBC and Madoff LLC, would cover such loss |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 34 of 131

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | | | | September 2005 stock record.<br>No discrepancies identified | <br>R8 | • Account signatories (as set out in R4)<br>• Whether the escalation process would require Madoff LLC / BLM to immediately report an incident to the appropriately nominated person at HSBC. |
| 6 | Reinvested funds from Fidelity, etc. inaccurately allocated to individual client accounts | O | Holdings in Fidelity are recorded on a client by client basis on Madoff LLC daily stock records.<br>Amounts are not allocated externally, assets are allocated within the client's subledger relative to the investments. | Not undertaken. | <br>R9<br>R10 | HSBC should consider undertaking the following:<br>• Establish a process to monitor monthly statements<br>• Reconcile monthly statements to cash contributions from clients. |
| | *Trading: Buy Put options and write Call options (premiums earned)* | | | | | |



*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| [illegible] | Manipulate option price (recovery) in order to maximize commission, also for T-Bills and Fidelity. | F | Madoff LLC only act as agent for options trading.<br>Price is determined by the average price of bulk lots from external parties.<br>Option trades are allocated directly to the client account and do not enter Madoff LLC's Proprietary account. | KPMG reviewed trade blotters and found that the counter party trades matched off against HSBC client account option trades.<br>Prices paid by HSBC clients were found to be consistent with net value and price offered by market counter party. | R11 | HSBC should consider reviewing option prices on a spot basis as part of ongoing monitoring |
| [illegible] | Madoff LLC claim funds have been used to settle options exercised against HSBC | F | Restricted access to Madoff LLC's account at JP Morgan Chase Bank Limited to the following Madoff LLC personnel: Dan Bonvertrie, Bernard Madoff, Peter Madoff, and Enrica Cotellessa-Pitz.<br>Funds are held in T-Bills which are held in a segregated sub account at the DTC. Notification required to obtain funds held in T-Bills, needs to be sent to the DTC<br>(Note: Options are rarely exercised by Madoff LLC as they assert that their strategy is to roll forward as part of the hedge). | Not undertaken. | R12 | HSBC should consider undertaking a spot reconciliation of cash when options exercise. |
| [illegible] | Madoff LLC exercise client option (to purchase stock at preferred price) but tell client/HSBC, that the option was left to expire. | F | Option contracts are between HSBC clients and market counter party.<br>Madoff LLC do not take options onto proprietary books and trade with HSBC clients. | KPMG reviewed trade blotters and found that the counter party trades matched off against HSBC client account option trades. | | Refer to R11 |





09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 36 of 131

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | | | All the derivates are held in a sub ledger (40) for a client account<br>Option held in client name cannot be transferred to another party. | Prices paid by HSBC clients were found to be consistent with net value and price offered by market counter party. | | |
| | *Month end unwind deals* | | | | | |
| | Madoff LLC staff take advantage of timing position to invest client funds and misappropriate position (e.g. invest in premium bond/note but report as low value investment). | F | All equities and T-Bills are held in segregated client account at the DTC. | Reviewed allocation of bulk trades to client ledgers<br>Checked segregated confirmation and release confirmations from the DTC feed for a sample of equity and T-Bill trades.<br>For a sample of equity trades reviewed the SIAC feed for external confirmation of settlement<br>Review a sample of holdings on the September 2005 statement to DTC Participant Report. | <br>R13<br><br>R14 | HSBC should consider undertaking:<br>• A risk and compliance review of individual client statements on a monthly basis<br>• A spot check of investments and cash position in order to independently reconcile client accounts. |



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 37 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue *& its implication* | Risk type (*Fraud/* Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| [illegible] | BLM divert cash resulting from the sale of Equity/T-Bills. | F | Segregated clients accounts maintained in the financial records at Madoff LLC.<br><br>All funds deposited or waiting for investment are placed in short term treasury stock and any residual goes into Fidelity fund.<br><br>Reconcile the cash book on a daily basis which identifies what is held at the DTC against Madoff LLC's internal records. [This would identify if amounts are segregated into client accounts or held in the proprietary account].<br><br>Segregation of duties between accounting and cash disbursements. (Senior people could allocate cash to account).<br><br>Restricted access to Madoff LLC's account JP Morgan Chase Bank. Limited to the following Madoff LLC personnel: Dan Bonvertrie, Bernard Madoff, Peter Madoff, and Enrica Cotellessa-Pitz<br><br>HSBC should be monitoring the cash accounts of individual clients. | No specific test. However, note the above test of client funds and transactions. | | Refer R13 and R14 |



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 38 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| 12 | BLM report over valued position/return to client, but not to HSBC in order to control relationship. | O | Trading information drives the process and provided the details for the statements.<br>Ability to make manual trades on individual client accounts is limited to two people (Bernard Madoff and Frank De Pascali).<br>HSBC is provided with the original statements and confirmations. | Obtained monthly trading reports for each client for sample of months and verified that these were consistent with reports sent to and received by HSBC. | R15<br>R16 | HSBC should consider undertaking the following:<br>• Establish a process to monitor monthly statement<br>• Reconcile monthly statements to cash contributions from clients. |
| | Stocks not held in client name. (e.g. Equities, Options or Treasury Bonds) | F | All stocks are held in Madoff LLC name in segregated client sub account at DTC.<br>While stocks are not held in client name, copies are sent to the client | Refer to the above tests on buying and allocating trades. | R17<br>R18 | HSBC to consider:<br>• Robust reconciliation of monthly statements.<br>• Periodic onsite review at Madoff LLC to confirm a selection of trades in order to verify the operational effectiveness of internal controls. |
| | Execute trades with favoured external market counter parties for commission kickbacks (and not best return for client). Equity & Options. | F | Traders are monitored by Supervisors who are in turn are monitored by Madoff LLC senior management (brothers).<br>Bids go out to market and Madoff LLC cannot dictate to the external counterparty who fill the orders<br>NASD perform best execution price reviews as part of their examinations visits<br>Trades are allocated on the basis of average price. | Reviewed sample of equity trades per the trade blotters and confirm the consistency of allocated price across all segregated client accounts. | | Refer to R11, R23 and R26 |



*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

| Ref[4] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| [illegible] | HSBC makes a call on client funds & Madoff LLC inflates call value to client in order to cover over misappropriation or poor position, (e.g. Equity & Option) | F | Segregated client accounts at the DTC.<br>A review is carried out of the daily stock record to check the cash balance.<br>Segregation of duties between front and back office. | Not tested | R19 | HSBC to consider undertaking a review of the monthly statements and reconciling cash calls to movements in cash. |
| 16 | BLM undertake unauthorised trades on behalf of clients. (e.g. Equity, Option, Treasury bonds & Fidelity Funds | F | Sub-custody agreement and 'Customer Agreement' provide Madoff LLC with the authority to undertake trading activity.<br>Madoff LLC utilise an investment strategy which is reviewed by a number of Madoff LLC senior management.<br>Monthly statements are sent to HSBC and the client which identify the allocation of trades. | Review a sample of trade information and noted that equities were consistently SP100 listed stocks | <br>R20<br>R21 | HSBC should consider undertaking the following:<br>• Establish a process to monitor monthly statements put in place formerly monitoring of monthly statements.<br>• Reconcile monthly statements to cash contributions from clients. |
| 17 | Unauthorised staff member at BLM executes trades on behalf of clients. | O | Segregation of duties.<br>Access to front office systems is restricted (by door) to trading staff, senior management and a select number of other delegated staff.<br>Audit trail retained of trading activity. | Not tested. | R22 | As part of a periodic review at Madoff LLC, clarify access controls to trading systems. |



*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| ● | Trade is a sham in order to divert client cash. | F | The SIAC report demonstrates the existence of bulk trades between counter party and Madoff LLC.<br>Allocations of agency trades for client accounts are reconciled back to bulk trades on the trading blotter. | • Reviewed a sample of tests selected from the customer trading statement to the trading blotter<br>• Confirmed trades to SIAC download<br>• Reviewed Break Sheets for evidence of exceptions. (None noted)<br>• Confirmed holdings on an aggregate basis for a selection of trades with DTC participant Statement. | | Refer to R1 to R4 |
| 19 | BLM front-run client trades to own advantage/does not fairly allocate price to client. (Equity, Option, Treasury bond & Fidelity Fund) | O | Bulk trades executed with market counter party and allocated as agency trades to clients using an allocation algorithm which pro-rates the allocation and applies an average price. | Reviewed sample of trade prices per trade blotters for agency trades (allocated to clients) across different clients for a sample of days and confirm prices were consistent | | Refer to R11, R23 and R26 |



*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| 20 | Madoff LLC churns client funds for own advantage. (Equity, Option, Treasury bond & Fidelity Fund)<br><br>*(This risk is possible given the broad mandate in the agreements)* | O | Segregation of client assets at the DTC.<br><br>Equity trades on behalf of clients require Seg Confirmation or Seg Release in order to settle at the DTC.<br><br>Madoff LLC does not earn commissions on T-Bill trades or Options. | Obtained DTC Seg Confirmation/Release for a sample of equity trades and confirmed the existence of selected trades.<br><br>Reviewed client statements for a sample of months for any unusual trading patterns. Noted that no equity positions were held for July and August 2005 (all client assets held as T-Bill or Fidelity units). | R23 | HSBC should consider undertaking comparative reviews over time of trading actively on client accounts to monitor for potential churning |
| | *Accounting for client assets* | | | | | |
| [illegible] | Madoff LLC falsely reports buy/sell trades without actually executing in order to earn commissions. (Equity, Option, Treasury bond & Fidelity Fund). | F | The SIAC report demonstrates the existence of bulk trades between counter party and Madoff LLC.<br><br>Allocations of agency trades for client accounts reconcile back to bulk trades on the trading blotter | Reviewed a sample of trades selected from the customer trading statement to the trading blotter.<br><br>Confirmed trades to SIAC download.<br><br>Reviewed Break Sheets for evidence of exceptions. (None noted).<br><br>Confirmed holdings on an aggregate basis for a selection of trades with DTC participant Statement. | R24 | HSBC should consider undertaking a periodic review which includes tracing a sample of client trades back to the bulk order. |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 42 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| 22 | BLM falsifies accounting records which are provided to HSBC and clients. (Equity, Option, Treasury bond & Fidelity Fund). | F | Segregation of front and back office.<br>Reconcile of actual trades with the DTC | Reviewed sample of tests selected from the customer trading statement to the trading blotter.<br>Confirmed trades to SIAC download.<br>Reviewed Break Sheets for evidence of exceptions. (None noted).<br>Confirmed holdings on an aggregate basis for a selection of trades with DTC participant Statement | R25 | HSBC should consider :<br>• Refer to R24<br>• Compare above selected trading information to the client statements. |
| | *Market counterparty confirms trade with BLM* | | | | | |
| 23 | Collusion with counterparty to falsify trading records. (more likely with T-Bills) (Equity, Option, Treasury bond & Fidelity Fund). | F | SIAC report demonstrates the matching of trade details between counter party and Madoff LLC.<br>Restricted to T-Bills where Bank of New York is the settlement agent and counterparty (Equities could not settle if not put through DTC) | Confirmed a sample of trades to SIAC download. (No issues noted). | R26 | HSBC should consider reviewing prices against market rates on a sample of dates on an ongoing basis. |

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & its implication | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | Counterparty and/or BLM falsify instruction to DTC. (Equity, Option).<br>*Copies sent to HSBC and client* | F | SIAC confirmation would show mismatch.<br>Audit record of trades | Reviewed the audit trail of a sample of trades from Trade Blotter to SIAC down load, seg / release confirmation | | Refer to R24 |
| | Madoff LLC falsifies trade confirmations to clients and HSBC. (Equity, Option, Treasury bond & Fidelity Fund). | F | SIAC report demonstrates the matching of trade details between counter party and Madoff LLC.<br>Restricted to T-Bills where Bank of New York is the settlement agent and counterparty (Equities could not settle if not put through DTC). | Reviewed the audit trail of a sample of trades from Trade Blotter to SIAC down load, seg / release confirmation. | | Refer to R24 and R25 |



## Appendix C – Summary of discrepancies in documentation

| Name of customer per Sub-Custody Agreement (1) | Name of customer per customer agreement (2) | Name of customer per HSBC records (as provided) (3) | Account name & number per HSBC due diligence report (4) | Account name & number per HSBC records (5) | Recommended steps by HSBC for resolution |
|---|---|---|---|---|---|
| **Sub-custody agreement: Bank of Bermuda (Luxembourg) S.A. and Bernard L. Madoff Investment Securities** | | | | | |
| Primeo Fund | Primeo Fund Class B | Primeo Select Fund | Primeo Fund Class B FN092 | HSBC Securities Services (Luxembourg) SA Spec Cust Acct for Primeo Fund Class B | • Ensure fund names per 1 & 3 relate to the same fund<br>• Ensure account name per 4, corresponds to customer name per 3 |
| Lagoon Investments Limited (a company of Hermes International Fund Limited) | Signed by Smith (unrecognisable first name) | -Hermes Neutral<br>-Hermes Universal<br>-Hermes World USD | Lagoon Investment F021<br>Lagoon Investment D -FR016 | HSBC Securities Services (Luxembourg) SA Spec Cust Acct Lagoon Invmnt (a pool split across three Hermes accounts) | • Ensure that although 1 in the name of Lagoon, it still applies to customers per 3<br>• Establish that account names per 4 correspond to customer names per 3.<br>• Establish that the account per 5 corresponds to accounts per 4 (and 3). |
| Alpha Prime Fund Limited | Alpha Prime Fund Limited | (Not identified) | Alpha Prime – FR097 | HSBC Securities Services (Luxembourg) SA Spec Cust Acct for Alpha Prime Fund Limited | • Establish the name of the fund per 3 and ensure it corresponds to 1.<br>• Establish that account names per 4 correspond to customer name to be established per 3.<br>• Establish that the account per 5 corresponds to accounts per 4 |



| Name of customer per Sub-Custody Agreement (1) | Name of customer per customer agreement (2) | Name of customer per HSBC records (as provided) (3) | Account name & number per HSBC due diligence report (4) | Account name & number per HSBC records (5) | Recommended steps by HSBC for resolution |
|---|---|---|---|---|---|
| Herald Fund SPC-Herald USA | Herald Fund SPC – Herald USA segregated portfolio one | Herald USA segregated portfolio one | Herald Fund – FR109 | HSBC Securities Services (Luxembourg) SA Spec CUST Acct for Herald Fund SPC - Herald USA | • Ensure fund names per 1 & 3 relate to the same fund<br>• Establish that account names per 4 correspond to customer name per 3.<br>• Establish that the account per 5 corresponds to accounts per 4 |
| Square One Fund Limited | Square One Fund Limited (Changed name from Isis Worldwide Limited | *Unable to confirm exact detail at the time of the review* | *Unable to confirm exact detail at the time of the review* | *Unable to confirm exact detail at the time of the review* | • Establish where this fund is held in HSBC (Dublin/Luxembourg)<br>• Establish which account in Madoff LLC (which should be listed at 4) corresponds to customer name established above<br>• Establish the account name per HSBC records (which should be listed per 5)<br>• Establish that the account name per 5 corresponds to account per name 4 |
| *Unable to confirm exact detail at the time of the review* | *Unable to confirm exact detail at the time of the review* | Thema Coral Fund | Thema Wise – FR093 | HSBC Securities Services (Luxembourg) SA Spec Cust Acc for Thema Wise Investments Ltd | • Establish which sub-custody agreement should capture the fund<br>• Ensure the fund name per the sub-custody agreement corresponds to 3<br>• Establish that the account names per 4 correspond to customer name per 3<br>• Establish that the account name per 5 corresponds to account name per 4 |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 46 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

| Name of customer per Sub-Custody Agreement (1) | Name of customer per customer agreement (2) | Name of customer per HSBC records (as provided) (3) | Account name & number per HSBC due diligence report (4) | Account name & number per HSBC records (5) | Recommended steps by HSBC for resolution |
|---|---|---|---|---|---|
| **(a) Sub-custody agreement: The Bank of Bermuda Limited and Bernard L. Madoff Investment Securities, and (b)Sub-custody agreement between Thema International Fund plc and Bermuda Trust (Dublin) Ltd** | | | | | |
| Account Set up entitled ("The Bank of Bermuda Limited – Hamilton Special Custody Account for the exclusive benefit of customers of Bermuda Trust (Dublin) Limited" | Thema US Hedged Equity Fund<br><br>Account – FN095-30-40<br>Account – FR093-30-40 | Thema Internal Fund Plc | Thema Wise – FR093 | | • Establish that account name per 4 relates to customer name per 3<br>• Establish the account name per HSBC records (which should be listed per 5)<br>• Establish that the account name per 5 corresponds to account name per 4 |
| | Thema Wise Investments Limited | Thema Internal Fund Plc | Thema Wise - FR093 | | As above |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 47 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

# Appendix D – Contractual arrangements

**The following charts set out our understanding of the contractual arrangements between the various parties. A legend appears at the end of this appendix (page 48).**





KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 49 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*



KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 51 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006.*
*Strictly private and confidential*

09-01364-smb Doc 395-4 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 52 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

dl/dy

Pg 53 of 132
Pg 53 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

Thema Fund Ltd
Thema Coral Fund
Madoff
Madoff account – HSBC Securities Services (Luxembourg) S.A. Spec Cust Acct for Thema Wise Investments Ltd Account no FR093 per due diligence report
Funds
Trades executed
Trades exercised
Equity
T.Bills
Options
Fidelity

dl/dy

47



KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

Legend
A1
Custody agreement between Thema International Fund and Bermuda Trust (Dublin) Limited.
A2
Sub custody agreement between Bank of Bermuda Ltd and Madoff LLC.
A3
Referred to in Appendix 20a, Annex A (sub-custodial service to be provided for these as part of Annex A)
A4
Customer agreements with Madoff LLC. K18 & K19
A5
Lagoon Investment Ltd is a company of Hermes International Fund Limited
A6
Customer agreement with Madoff LLC K13 (Lagoon) signed in name of X Smith
A7
Sub custody agreement between Bank of Bermuda (Lux) and Madoff LLC
A8
Customer agreement with Madoff LLC in the name of Primeo Fund Class B. K12
A9
Customer agreement with Madoff LLC in the name of Herald Fund SPC. K15
A10
Customer agreement with Madoff LLC in the name of Alpha Prime Fund Ltd. K14
HSBC and related entities
Client
Process at Madoff LLC
Asset type
NB – K references relate to file of documents already provided to HSBC on 17 November 2006

Pg 55 of 132
09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 55 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

# Appendix E – Process flows

The following pages set out the following:

- Transaction process flows.
- Coloured dots indicating where a fraud or related operational risk may lie. A red dot indicates a potential fraud risk and a yellow dot, a related operational risk.

dl/dy

49



KPMG

HSBC Bank plc
Bernard L Madoff Investment Securities LLC
16 February 2006
Strictly private and confidential

**Overview**

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 57 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

EQUITY

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

**OPTIONS**

BLM establishes investment strategy
BLM initiates trade
17
Contact market counterparty (another BLM company) and executes trade
19
20
Instructions sent to OTC counterparty
NB – FR and OR at counterparty outside of scope to review
Trade settled
BLM updates accounting records
Reconciliation of stock and cash positions
BLM produces trade summary and position statement
Market Counterparty makes trade with OTC counterparty
Market counterparty confirms trade with BLM
Trade confirmation
Copies sent to HSBC and Client

dl/dy

52



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 59 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

TREASURY BILLS

Madoff LLC determines market conditions favourable to unwind stock/collar position
Madoff LLC unwinds investment strategy and executes T Bill trades
17
19
20
Agency trades executed on behalf of clients allocated from Bulk Principal Trades with Bank of New York
Bank of New York confirms principal bulk trade with Madoff LLC
Trade confirmation produced for each agency trade with Madoff LLC as counterparty
Instructions sent to DTC to move client assets in/out of segregated client account to/from free position
Bank of New York acts as settlement agent for all T Bill trades
NB – FR and OR at DTC outside of scope of review
Originals sent to HSBC and copies to client
"Seg Release" or "Seg confirmation" printed from Madoff LLC's DTC terminal
Segregated client account positions on STFS Participant Statement printed from DTC terminal
Trade settled. Bank of New York transmits details of net stock movement to DTC
Madoff LLC produces trade summary and position statement
Reconciliation of Madoff LLC stock record with STFS Participant Statement
Madoff LLC updates accounting records

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 60 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

**Fidelity**





# Appendix F – Sources of information

***Documents***

Sub-Custody Agreement between" The Bank of Bermuda Limited and Bernand L Madoff Investment Securities LLC

Sub-Custody Agreement between "The Bank of Bermuda (Lux) SA and Bernand L Madoff Investment Securities LLC

Pledge Agreement between Thema Wise Investments and HSBC Security Services (Lux) SA

A select number of Customer trade confirmations issued by Bernard L Madoff Investment Securities LLC

A select number of Trading Statements issued by Bernard L Madoff Investment Securities LLC

***HSBC and Madoff personnel***

Christine Coe, Chief Credit Officer, HSBC

Brian Pettitt, Network Manager, HSBC

Saverio Florino, HSSL Luxembourg

Anne Meehan, HSBC Dublin

Bernard Madoff, Chairman, Bernard L Madoff Investment Securities LLC

Frank Di Pascali, Head of Institutional Operations, Bernard L Madoff Investment Securities LLC

Shana Madoff, Compliance Counsel, Bernard L Madoff Investment Securities LLC

HSBC and Madoff LLC employees mentioned in the report but not spoken to:

Dan Bonvertrie, Head of Dealer Operations, Madoff LLC

Enrica Cotellessa-Pitaz, Financial Controller, Madoff LLC

David Hugel, Trading Floor Compliance Analyst, Madoff LLC

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*16 February 2006*
*Strictly private and confidential*

## Appendix G – HSBC clients

The following table sets out Bank of Bermuda (HSBC) clients

| Client name | Referred to in this report as |
|---|---|
| Thema International Fund Plc | Thema |
| Thema Fund Limited – Thema Coral Fund (Thema Wise Limited) | Thema Wise |
| Hermes International Funds – Hermes Neutral Fund (Lagoon Investments) | Hermes Neutral |
| Hermes International Funds – Hermes Universal Fund (Lagoon Investments) | Hermes Universal |
| Hermes International Funds – Hermes World USD Fund (Lagoon Investments) | Hermes World |
| Primeo Fund – Primeo Select Fund | Primeo |
| Herald Fund SPC - Herald USA Segregated Portfolio One Fund | Herald |
| Alpha Prime Fund Limited | Alpha |
| Square One Fund Limited | Square One |

dl/dy

56

09-01364-smb    Doc 395    Filed 06/26/15  Entered 06/26/15 17:26:54    Main Document
Pg 63 of 131

# EXHIBIT B

KPMG

**STRICTLY PRIVATE AND CONFIDENTIAL**

**HSBC Bank plc**

# Review of fraud and related operational risks at Bernard L Madoff Investment Securities LLC

KPMG LLP

8 September 2008

*This report contains 24 pages*

*Appendices contain 32 pages*

*dl/dy*

KPMG

## Contents

| | | |
|---|---|---|
| **1** | **Introduction** | **2** |
| 1.1 | Our instructions | 2 |
| 1.2 | Background | 3 |
| 1.3 | Our Approach | 3 |
| 1.4 | Limitations | 4 |
| 1.5 | Report format | 5 |
| 1.6 | Appendices | 5 |
| 1.7 | Confidentiality | 6 |
| **2** | **Executive summary** | **7** |
| 2.1 | Introduction | 7 |
| 2.2 | Major Findings | 7 |
| 2.3 | Main recommendations | 9 |
| **3** | **Madoff LLC** | **11** |
| 3.1 | Introduction | 11 |
| 3.2 | Background | 11 |
| 3.3 | Governance | 13 |
| **4** | **Risk and control issues** | **17** |
| 4.1 | Introduction | 17 |
| 4.2 | Process overview | 17 |
| 4.3 | Fraud and operational risks | 21 |
| 4.4 | Major findings | 22 |
| **5** | **Our Recommendations** | **24** |
| 5.1 | Governance and Entity-wide issues | 24 |
| 5.2 | Specific Risks | 27 |
| **6** | **Review of Agreements** | **29** |
| Appendix A | Transaction process | 25 |
| Appendix B | Fraud risk, controls & testing | 26 |
| Appendix C | Details of Funds per Madoff LLC records | 38 |
| Appendix D | Summary of discrepancies in documentation | 40 |
| Appendix E | Contractual arrangements | 45 |
| Appendix F | Process flow | 52 |

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

## Glossary

| | |
|---|---|
| Assets | Stocks, options, Treasury Bills and Fidelity funds |
| BLM | Mr Bernard L Madoff (Chairman of Bernard L Madoff Securities LLC) |
| BNY | Bank of New York |
| BTDL | Bermuda Trust (Dublin) Limited |
| Client | Any one of 12 clients (11 current and one expired [Primeo Fund]) where HSBC act as custodian and Madoff LLC acts as sub-custodian. These clients are identified in the Appendix of this report. |
| CUSIP | An identification number assigned to a fund |
| DTC | Depository Trust Company |
| Equity | Share in a listed company |
| FINRA | The Financial Industry Regulatory Authority (US) |
| HSBC | HSBC Bank plc |
| HSSL | HSBC Securities Services Luxembourg |
| Loss | Losses resulting from fraud or related operational error by Madoff LLC management or staff. It excludes losses resulting from an investment. |
| Madoff LLC | Bernard L Madoff Investment Securities LLC |
| NASD | The United States National Association of Securities Dealers |
| Option | A contract that gives the right to buy or sell some assets (eg shares) at a fixed price on or before a given date. |
| OTC | Over the Counter |
| SEC | The United States Securities and Exchange Commission |
| SIAC | Securities Industry Automation Corporation |
| T-Bills | Treasury bill |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 67 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

# 1 Introduction

## 1.1 Our instructions

This Report has been prepared in accordance with the terms of the engagement letter, dated 19 March 2008, between KPMG LLP ("KPMG") and HSBC Bank plc ("HSBC"). The purpose of the engagement was to assist HSBC to identify the fraud risks that may arise as a result of HSBC, acting as custodian and investment advisor, placing the funds of twelve HSBC clients (hereafter referred to as "HSBC clients") and in addition investments placed by HSBC for investment ("HSBC Investments") with Bernard L Madoff Investment Securities LLC ('Madoff LLC') in New York. As stated in the engagement letter the purpose of our work was:

*"to assist you to:*

- *Understand how the client funds held by Madoff LLC are recorded and reported to HSBC;*
- *Identify the fraud, related operational risks and related governance matters at Madoff LLC, arising from the relationship between HSBC and Madoff LLC;*
- *Determine the process whereby HSBC would be notified in the event of suspected fraud or misconduct which may impact on HSBC client funds; and*
- *Perform limited testing on a sample basis of the existence and accuracy of recording transactions executed by Madoff LLC on behalf of HSBC."*

The review was to include speaking to HSBC staff based in London, Luxembourg and Dublin and conducting a selective review at the offices of Madoff LLC.

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

## 1.2 Background

HSBC has engaged KPMG LLP (UK) to conduct a review on behalf of HSBC, acting as custodian, placing the funds of a number of HSBC clients for investment with Madoff LLC in New York. As part of that review KPMG has been requested to review the process by which Madoff LLC receives, invests and accounts for these funds, how Madoff LLC interacts with HSBC with regards to these funds, and to look at potential fraud and misappropriation risks. Although to HSBC's knowledge, no allegations of fraud or misconduct have been raised, HSBC as custodian wished to ensure that an appropriate review was undertaken.

## 1.3 Our Approach

The review was carried out as follows:

- Interviewing a number of selected employees of HSBC. The purpose of these interviews was to gain an understanding of the various routes by which trades could be effected, to discuss specific fraud risks that could arise and to gain an understanding of the areas of concern.
- Obtaining and reviewing selected documentation from HSBC relating to trading conducted by Madoff LLC.
- Interviewing staff at Madoff LLC including Bernard L Madoff (BLM), Chairman and Frank di Pascali (FdP), Head of Operations. The purpose of these interviews was to confirm our understanding of the trading process and discuss specific fraud risk issues.
- Testing, on a selective basis, a number of fraud risks and related internal controls relating to trades executed by Madoff LLC (refer to Appendix B).
- Preparing this Report.

KPMG undertook its fieldwork during a three week period between 8 to 25 April 2008. During this time KPMG staff attended at HSBC's offices in London, held discussions with HSBC staff on a selective basis, attended at Madoff LLC's in order to meet with a number of Madoff LLC personnel and carried out testing on a selective basis.

This Report summarises our findings and recommendations in relation to the services provided in accordance with the Engagement Terms.

KPMG

## 1.4 Limitations

The following needs to be considered when reading this document.

- We have relied on the information provided by HSBC and Madoff LLC personnel and have not independently verified that information.
- We were not required to review portfolio performance at Madoff LLC, nor have we carried out an audit of client assets.
- We have not independently assessed trading particularly at Madoff LLC against US legal and regulatory requirements as our work focussed on fraud and related operational risk issues.
- KPMG has not conducted an audit as part of this work, whether statutory or otherwise of HSBC, Madoff LLC or the information provided.
- This document is not intended to be a comprehensive review of HSBC's or Madoff LLC's processes for the purchase, transfer or sale of any asset on behalf of a client. The process by which HSBC uses the services of Madoff LLC and the process for investing client funds and allocating trade activity is complex; the document should be considered in the context of the limited time spent on this engagement.
- We have held discussions with HSBC staff, reviewed selected documents provided by HSBC and performed five days work on-site at Madoff LLC. However, our findings and conclusions may change if further information comes to light.
- The risks and controls outlined in this report do not constitute a complete list of all possible fraud and related loss risks that exist within Madoff LLC.
- We were not engaged to identify or review risk or controls at HSBC operations. However, we have made a number of recommendations for the consideration of HSBC management in order to assist HSBC manage the risks identified in this report. HSBC remain responsible for the implementation, or otherwise, of these recommendations.

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 70 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

- A number of suggested actions have been identified, which require priority consideration, with regard to fraud and related operational risks ("the risks"). HSBC may wish to prioritise these based on internal criteria.
- The assessment as to the existence and effectiveness of specific internal controls at Madoff LLC was limited to those reviewed while reviewing a select number of randomly selected trades.
- While we held discussions with BLM regarding the Internal Audit and Compliance framework at Madoff LLC, we did not specifically review any compliance related reports, internal audit reports, conflicts register or customer complaints.
- Whilst we were informed by BLM that Madoff LLC have in place an AML policy which formed part of the compliance framework we have focussed our work as requested on fraud rather than AML risks.

## 1.5 Report format

We have structured the Report as follows:

- Section 2 – Executive Summary;
- Section 3 – Madoff LLC;
- Section 4 – Risk and control issues;
- Section 5 – Our Recommendations; and
- Section 6 – Review of Agreements.

## 1.6 Appendices

Appendices include a summary of the fraud and related operational risks, selective controls and a description of the tests undertaken.

Pg 72 of 132
09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 71 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

## 1.7 Confidentiality

This document is strictly private and confidential. It may not be disclosed, copied, quoted or referred to in whole or in part, whether for the purposes of disciplinary proceedings or otherwise without our prior written consent. Such consent, if given, may be on conditions including, without limitation, an indemnity against any claims by third parties arising from release of any part of this document or other correspondence, including reports, issued by us.

dl/dy

6

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 72 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

# 2 Executive summary

## 2.1 Introduction

KPMG was engaged by HSBC to undertake a review of the fraud and related operational risks that may arise at Madoff LLC while acting as sub custodian to twelve HSBC client accounts and in addition managing investments placed by HSBC. We were asked to assist HSBC:

- understand how the client funds held by Madoff LLC are recorded and reported to HSBC;
- identify the fraud and related operational risks that may arise as a result of HSBC, acting as custodian, placing HSBC clients funds with Madoff LLC and in addition placing HSBC Investments for investment with Madoff LLC; and
- determine the process whereby HSBC would be notified in the event of suspected fraud or misconduct which may impact on HSBC clients funds and HSBC Investments.

The work included reviewing documentation provided by HSBC and Madoff LLC and holding discussions with HSBC and Madoff LLC management. We also carried out, on a selective basis, testing of client transactional data held at Madoff LLC. However, this did not represent a statistically significant selection.

This review follows a review by us of Madoff LLC in late 2005. The findings of that review are contained in our report entitled "*Review of fraud and related operational risks at Bernard L Madoff Investment Securities LLC*", dated 16 February 2006 ('previous review').

## 2.2 Major Findings

Our major findings are set out below:

- **Asset ownership:** Independent and external confirmation as to the ownership of individual HSBC client assets cannot be made. Madoff LLC undertake bulk trades and then allocate these assets on a proportional basis within Madoff LLC to the individual client



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 73 of 131

accounts. Madoff LLC produce a 'Client Confirmation' for each asset transaction other than for transactions to buy or sell Options and Fidelity funds.

- **Internal controls:** While the controls tested by KPMG during the course of the on-site work were found to be in place, we identified a number of areas where better segregation controls could be applied (e.g. Fidelity and options). In addition, current controls at Madoff LLC may not prevent fraud or error occurring on client accounts, if management or staff at Madoff LLC either override controls or undertake activities where appropriate controls are not in place.

- **Escalation:** BLM, is responsible for determining whether matters concerning HSBC client accounts (eg fraud or significant errors) should be reported to HSBC. BLM stated that in the event this occurs, he would report the issue to Paul Smith or Brian Petitt. BLM was not aware that Paul Smith was no longer with HSBC.

- **Limited contact with HSBC:** BLM stated that HSBC clients represented one-third of the total business of Madoff LLC. However, contact between the parties is mainly initiated by HSBC (through Brian Petitt) and although BLM visits Madoff LLC's office in London throughout the year, he does not appear to have had any meeting with HSBC in London.

- **HSBC operations:** HSBC staff in Luxembourg and Dublin receive information on client accounts from BLM (such as trading activity and price) upon which it appears that a high level of reliance is placed.

- **Fund recognition:** Kingate Global Fund Ltd is set up on Madoff LLC system "c/o Bank of Bermuda Ltd A/C/F Kingate Global Fund". According to Frank de Pascali, this fund had an equity balance of USD 2,669,384,000 as at 31 March 2008 and is held on behalf of HSBC, but the documentation is still in the name of Bank of Bermuda Ltd.

- **Fidelity Account:** Madoff LLC maintains a pooled holding within the Fidelity Fund and units are allocated to clients for the balance of uninvested cash. There is no segregation of accounts control in respect of HSBC client accounts.

- **Market relevant fraud:** BLM had no knowledge of the Sentinel case, which could be useful in confirming whether the controls at Madoff LLC would prevent and detect such an event.

- **Review of sub-custody agreements:** The Luxemburg and Dublin sub-custody agreements appear to contain certain discrepancies in terms of the funds held in these jurisdictions. This is further explained in Section 6 and Appendix D of this report.

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 74 of 131

KPMG

## 2.3 Main recommendations

The following main recommendations are further developed in Section 5 and are in addition to those set out in Appendix B.

- **Escalation:** Establish a formal agreement, documented and signed by both parties (e.g. HSBC and Madoff LLC) which sets out the requirements and criteria for reporting suspected or proven fraud or error which has or may impact on a HSBC client account (Refer to section 3.3)
- **Whistleblowing:** HSBC may wish to consider the introducing an external ethics line, where Madoff LLC staff can report directly any cases of suspected fraudulent activity in relation to HSBC held funds. This would require the cooperation of Madoff LLC. (Refer to section 3.3)
- **Fund recognition:** HSBC should consider consolidating report information currently provided by Madoff LLC (currently report to two locations; Luxembourg and Dublin). This may assist to reduce the risk of misallocating assets between the twelve client accounts. (Refer to section 3.3)
- **Disaster Recovery action plan:** Consider documenting a response plan. This should include: key contacts, HSBC and Madoff LLC insurance details, contact details of key US, UK and other relevant regulators and actions to consider to secure control over client assets. (Refer to section 3.2)
- **Review HSBC operations:** Undertake a review at HSBC's custody centres (Luxembourg and Dublin) in order to ensure that appropriate procedures are in place to independently confirm, where possible, accuracy of transactions, identify possible risks and issues and record any errors, missing information or other operational issues.
- **Periodic review:** Undertake a periodic review at Madoff LLC to ensure the integrity of accounting for client transactions and assets. The information in this report may serve as a guide as to how this assessment may occur.
- **Contract review:** Review the sub-custody contracts between HSBC and Madoff LLC to ensure that they reflect the current requirements and agreed obligations of Madoff LLC. (Refer to section 6)



*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

- **Establish the legal chain:** Review sub-custody agreements and underlying contracts/documentation to ensure that HSBC has primary custodian rights over the underlying assets held within the funds. The table at Appendix D summaries the discrepancies identified between the sub-custody agreements and various other documentation. The charts at Appendix E further illustrate the relationships identified between the various parties and areas where gaps have been identified. (Refer to section 6 and Appendix D)

dl/dy

10

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 76 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

# 3 Madoff LLC

## 3.1 Introduction

This section sets out how HSBC client funds are transacted and recorded at Madoff LLC. This section is set out as follows:

- Background
- Governance issues

## 3.2 Background

Madoff LLC records state that the business is a registered broker/dealer with the SEC and a member of the NASD. According to its website, Bernard L. Madoff LLC Investment Securities LLC is a leading international market maker. The firm has been providing quality executions for broker-dealers, banks, and financial institutions since its inception in 1960. During this time, Madoff LLC has compiled an uninterrupted record of growth, which has enabled it to continually build its financial resources. With more than $600 million in firm capital, Madoff LLC currently ranks among the top 1% of US Securities firms. Madoff LLC Securities' clients include scores of leading securities firms, banks and financial institutions from across the United States and around the world. The firm is a leading market-maker in all of the S&P 500 stocks as well as over 350 NASDAQ issues.

Madoff LLC remains a predominantly family-owned business with the senior positions within the company continuing to being held by members of the Madoff family. BLM is the CEO and Chairman of the company whilst his younger brother Peter Madoff is Head of Compliance. BLM's two sons are also part of the senior management of the company.

According to BLM, Madoff LLC has approximately USD 8 billion of funds under management on behalf of HSBC clients, (including Kingate Global Fund Ltd), which represents approximately 33% of Madoff LLC's total funds under management, an increase from the previous review when Madoff LLC held USD 2 billion of funds on behalf of HSBC clients i.e. approximately 12.5 % of Madoff LLC's total funds under management.



Although HSBC has the primary custodian relationship with the twelve clients (as set out in Appendix C) managed by Madoff LLC, HSBC has appointed Madoff LLC as sub-custodian for these clients. Madoff LLC state that they do not hold any other relationship with any of these clients outside of the existing HSBC relationship. That is, none of the twelve clients is also a client for Madoff LLC under another arrangement. BLM claims to offer the same strategy to all of the clients within the HSBC relationship and that their aim is to achieve consistent, moderate returns over the long term. Madoff LLC's strategy involves holding around 45 to 50 of the most liquid stocks within the S&P 100 and fully hedging the long equity positions with a collar strategy of S&P 100 put and call options. Although this is not specifically set out in the broker agreements between Madoff LLC and its clients, this is effectively the product which Madoff LLC markets to clients.

The key activities undertaken by Madoff LLC on behalf of its clients including HSBC clients includes: receiving client funds, determining the investment strategy, placing orders for client funds (new or existing) into one or more investments (equities, put or call options, T-bills, or Fidelity funds), allocating the investments into client funds, selling the investment, making distribution payments to clients as required and reporting to HSBC and the clients.

***Reporting***

Madoff LLC provide HSBC and their clients with the following documents ('trading activity information'):

- a client confirmation for each trade;
- a monthly trading and positions statement; and
- a credit/debit memorandum where there have been capital injections/withdrawals from the client account.

The client confirmation is a document created by Madoff LLC indicating the specific transaction undertaken on behalf of the client.

***Method of reporting***

Madoff LLC provide trading activity information by sending a facsimile to the respective HSBC offices (Luxemburg and Dublin). As noted in the previous review, they state that they use this process as they have concerns over the security of other forms of dispatch such as encryption or email. Original copies of the documentation are then sent to the respective HSBC sites by post. Copies of the trade documentation are sent to the clients.

KPMG

The following information was provided by BLM during the course of the on-site work. These have not been independently confirmed:

- Disaster recovery: Madoff LLC continues to maintain a disaster recovery centre and states that they have part ownership of the recovery site. Located near New York's La Guardia airport, the site contains IT systems which shadow the New York city operations.
- Manual trading: BLM stated that all trades are executed through the automated trading system and that no manual trades are undertaken. Password access is limited to BLM and FdP.
- Trading errors: All trading is automated and while few errors occur they usually relate to errors in price or quantity. BLM maintains that if the error occurred at Madoff LLC, that Madoff LLC, would make up any loss that may arise. Gains received would be passed on to the client account.

## 3.3 Governance

A number of factors were taken into account when assessing governance issues at Madoff LLC with respect to the fraud and related operational risks. These are set out as follows:

- Fraud risk management
- Governance committees
- Escalation and reporting
- Other issues

***Fraud risk management***

Fraud risk management ('FRM') can be considered to encapsulate those activities designed to prevent, detect and respond to suspected or actual fraud or misconduct. These activities include: setting out roles and responsibilities with respect to fraud, appropriate anti-fraud policies, identification and assessment of fraud risks, training and awareness, escalation and reporting processes and monitoring.



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 79 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

***Findings***

BLM stated that he is responsible for the prevention and detection of fraud or misconduct issues at Madoff LLC. We noted that Madoff LLC continues not to have any specific fraud policies and we were provided with the following policy documents: "Anti-Money laundering (AML) Program: Compliance and Supervisory Procedures" and "Internal Risk Management and Controls".

The AML document states that "Bernard L. Madoff Investment Securities LLC ("Madoff") prohibits and actively prevents money laundering and any activity that facilitates money laundering of the funding of terrorist or criminal activities" (page 1). Peter Madoff is the designated Money Laundering Reporting Officer (MLRO).

BLM stated that the approach adopted by Madoff LLC is to identify any errors or potential non compliance issues rather than to identify fraud or related operational risks. Madoff LLC state that a major consideration is the potential for breaching compliance issues, rather than potential fraudulent activity.

***Governance committees***

Governance committees, with respect of fraud, are those committees which actively seek to ascertain and, where appropriate, drive forward the organisation's approach to preventing, detecting and reporting fraud. Madoff LLC has in place Compliance and Internal Audit Committees which may consider fraud and misconduct issues.

***Findings***

Madoff LLC operate a number of governance committees. Those relevant to this review are:

- Legal & Compliance Committee. A committee chaired by Peter Madoff and its members include Shana Madoff and BLM. The group meets monthly and focuses on new regulations, compliance and position limits.

- Internal Audit Committee. A committee chaired by BLM and its members are Peter Madoff and Elizabeth Weintraub. Attendees include David Hugel, Trading Floor Compliance Analyst, Enrica Pitz, Financial Controller and Daniel Bonventre, Head of Dealer Operations. Meetings are held monthly. Internal Audit produces a quarterly report. The chair of the Internal Audit Committee also conducts the reviews and signs the reports.

KPMG

There does not appear to be a standing agenda item to consider specific fraud or misconduct risks or control issues.

***Escalation and reporting***

This section considers how HSBC would be notified in event of suspected fraud or misconduct occurring and which may impact on a client account while under effective control of Madoff LLC.

***Findings***

A clear escalation and reporting framework has not been documented. Current arrangements at Madoff LLC are that BLM is responsible for client relationships and reporting of issues. Reports to HSBC can be considered on two levels:

- Ongoing reporting to HSBC operations in Luxembourg and Dublin. This includes reporting trading activity on individual client accounts and attending to queries which may arise and initiated by HSBC. Reporting and responding to these issues is usually undertaken by FdP, (Head of Operations) or one of his staff.

- Matters "of consequence" which are identified at Madoff LLC, whether they relate to Madoff LLC or HSBC, with regards to the client accounts. BLM stated that although no such issues have arisen to date, he would report any such issue to either Paul Smith (Head of AFS, HSBC in New York) or Brian Petitt (Network Manager, HSBC London). We noted that BLM was not aware that Paul Smith was no longer with HSBC.

***Other relevant issues***

Other factors which were considered during the course of the on-site work include: staff incentives and potential conflicts of interest.

***Findings***

The following information was provided by BLM:

- Remuneration: All Madoff LLC staff receive a base salary. In addition, traders receive a percentage of profits while support and other staff receive an additional amount depending on their individual performance throughout the year.

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 81 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

- Conflicts of Interest: All members of staff are required to declare any potential conflicts of interests. We noted that there was no formal process for recording this.

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 82 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

# 4 Risk and control issues

## 4.1 Introduction

The process by which Madoff LLC receives funds, invests and reports to HSBC was reviewed in order to assist HSBC identify fraud and operational risks which may result in a client suffering a loss. This process was discussed with HSBC staff and confirmed through discussions held with BLM and FdP. This resulted in the identification of a number of fraud and operational risks. Diagrams appear in appendices D and E which set out the transaction process and relationship between HSBC, Madoff LLC and the client accounts.

## 4.2 Process overview

The processes around the execution of trades was discussed with BLM and FdP and is documented below.

Equity and corresponding hedge trades are executed by Madoff LLC using a house model. There can be up to 40 models at any given time, all of which are based on the same overall strategy, but with differing timing and weighting parameters. Madoff LLC executes trades using the most favourable strategy model at any given time depending on market conditions. Principal trades are executed on a bulk basis with external market counterparties and allocated to the clients as "agency" trades on an average prices basis according to an allocation algorithm which effectively pro-rates the trades to the client's holdings. The house model is uploaded to the in-house developed electronic trading system which indicates $ bid and offer prices for the relevant stock to the external market counterparties on the trade blotter. All trades are executed through the electronic trade system and there is no further communication with the market counterparties unless there are settlement differences (see below).

As the principal bulk trade orders are filled, the corresponding customer confirmations are automatically generated for each of the agency trades being allocated to the client accounts. Original copies of these "customer trade confirmations" are sent directly to HSBC (and copies are sent to clients). The confirmations contain the following information:

- Stock name;
- CUSIP number;

KPMG

- Nominal /quantity of shares;
- Price at execution;
- Trade date and settlement date;
- Seller (in the case of the individual agency trades for each client, this is Madoff LLC);
- Agency account number; and
- A system-generated unique transaction identification number.

Madoff LLC settles the principal bulk trades through the Depository Trust Company (DTC) with the external market counterparties (see transaction process diagram in Appendix A). As the principal bulk trades are allocated to the clients, the trading system records the total amount of the trade which is to be allocated to clients as agency trades. This total is communicated to the DTC through the settlement process since the stock from the market counterparties can only be delivered to a "free position" at the DTC (a sub account used for settlement) before being transferred to the "Segregated Account" (or "Seg") for the benefit of the clients. This communication is done automatically by the trading system and the DTC confirms the movement of stock into the client segregated account through a "Seg Confirmation" on a daily basis (where client accounts have received stock). Where Madoff LLC executes a sell order on behalf of clients, the stock is transferred out of the segregated account into the free position at the DTC before the sell trades can be settled.

The trading system indicates the total amount of stock to be "released" from the segregated account and the DTC will confirm this through a "Seg Release" notification. The Seg Confirmations and Seg Releases are automatically printed for each bulk trade from the DTC terminal within Madoff LLC's operations. The confirmations include the CUSIP, the total nominal, cash consideration and trade identification number which can be reconciled back to the client stock record/and trade blotter if necessary.

The principal bulk trades remain on the trade blotter which is reconciled to the DTC confirmations on a daily basis to ensure completeness and accuracy over trade recording. The agency trades are allocated to the client accounts in time priority with the aim of ensuring that no client is disadvantaged by market timing. According to BLM, the recorded agency trade execution price is typically an average of the principal bulk trade price achieved including commission which averages four cents per share.

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 84 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

***Equity trades***

On trade date (T), the trade blotters are assembled. These include details of all trading activity for the day, the sum value of trades and the average price. The customer trade confirmations are automatically generated for all agency trades and sent to HSBC/copies to clients. The agency trades for each client account are detailed on the trade blotter, the sum of which should equal the corresponding principal bulk trade. Copies of the trade blotters for a selection of days were provided to KPMG. KPMG observed that for a selection of client agency trades, the total nominal amounts of the agency trades were consistent with a corresponding principal bulk trade executed with an external market counterparty.

The aggregate amount of stock to be moved to/from the client segregated account is confirmed as segregated or released by the DTC (see above). The trade details flow directly from the trade blotter to update the underlying client ledgers. An individual client ledger is maintained for each client "fund" with an account number of the format "1-FR-XXXX-Y-0" ("X" represents client account number, whilst "Y" represents account type e.g. 3-0 is the equity, cash and US Treasuries account; 4-0 is the options account). Madoff LLC has one omnibus account at the DTC – the "0646" account which is used to settle all principal bulk trades. This omnibus account comprises the free position (used for settlement) and a segregated client account (used for holding client assets).

On T+1, the principal bulk trades are reconciled to the daily feed of matched/cleared items from the DTC. The reconciliation involves a download of the previous day's trading from the clearing system, SIAC (Securities Industry Automation Corporation – similar to CREST in the UK) which is automatically performed between 3am and 4am daily. All trade details on the download are in a standard "flat CSV file" format. The operations team format the trade details on the trade blotter to be consistent with the SIAC download which enables them to match the trade details. Any discrepancies are noted on the daily "Break Sheet". Items are classified as break items when any details outside of a set value tolerance do not agree (a value tolerance of $10.00 is set to account for rounding etc.) In the majority of cases, the differences are either due to rounding or incorrect recording of commission amounts. In some cases, the external market counterparty inputs an incorrect price.

The Purchase and Sales (P&S) department at Madoff LLC are responsible for resolving all breaks and document the actions taken on the daily Break Sheets. The original Break Sheets are retained for one month before being discarded (although a Break Sheet for any given day can be re-run from the trading system). The Break Sheets show cumulative breaks that are unresolved, hence a break which has not yet been resolved will appear on consecutive day's Break Sheets until cleared. Owing to how the client trades are priced (using an average of the order fill price), Madoff give their clients contractual settlement and the errors or differences are either written off or recovered from the market counterparty. BLM noted that errors tend to be a rare occurrence owing to the way in which the automated trading system posts "bids" and "offers" to the market. Copies of the counterparty blotters were provided to KPMG for a selection of dates. KPMG recalculated the average price per the



transaction details on the counterparty blotter and observed that the recalculated average price agreed to the price on the client statement per Madoff's records.

On Settlement date (typically T+3 for equities, T+1 for Treasury stock), the stock and relating cash is transferred between the market counterparty and the Madoff LLC settlement account at the DTC (the free position) and the total of client stock purchases are moved to the segregated client account. To ensure that each client ledger accurately reflects the post traded position, a daily stock reconciliation is performed between the individual client ledgers (the daily stock record) and the segregated client account at DTC (using a STFS Participants Statement' as provided by the DTC). These are typically retained for one quarter before being discarded. In addition, a monthly stock and cash reconciliation is performed in accordance with regulations. The total of reconciliation differences from these processes should sum to zero on the basis that all external breaks (from the daily SIAC process) have been resolved and hence the differences should only relate to the allocation of trades to individual clients accounts. Copies of the STFS Participant Statements were provided to KPMG for a selection of days. KPMG observed that the aggregate agency holdings per the stock records were consistent with the total segregated client assets per the STFS Participant Statements from DTC.

*T-Bills and other trades*

The trading process for T-Bills generally follows the same process as set out above except for the fact that the a single market counterparty is used for the external trade – Bank of New York ("BNY"), who also acts as clearing house for the trades. As these trades are settled directly with BNY, they do not appear on the daily SIAC download since they are not being settled through a depository such as the DTC. BLM asserted that Madoff LLC do not charge any commission for the trades in T-Bills. Copies of the STFS Participant Statements were provided to KPMG for a selection of quarters. KPMG observed that the aggregate agency holdings per the stock records were consistent with the total segregated client assets per the STFS Participant Statements from DTC.

Trades in put and call options are traded on behalf of clients "Over the Counter" (OTC) direct with market counterparties (who are typically wholesale clients of Madoff LLC). The details of the put/call options are recorded on the trade blotters which identify individual contracts with market counterparties. FdP asserted that as these are OTC contracts, there are no customer confirmations for these trades. FdP asserted that Madoff LLC is required to maintain at least a 15% cash margin in the event that the options are exercised. KPMG haphazardly selected one counterparty of a selected option contract held by HSBC to assess a representative coverage ratio of HSBC's aggregate exposure. KPMG noted a unique identifier of the selected counterparty and inspected the stock record position for T-Bills of all maturities held by the unique identified. KPMG obtained the market price for the T-Bills with an approximated weighted maturity at the mid point for all of the identified T-Bill maturities and applied it as the mid point price to all identified T-Bills. KPMG then recalculated the coverage ratio to confirm that there is at least a 15% cash margin in the event that the options are exercised.

Uninvested cash is maintained in either T-Bills or units in the Fidelity Money Markets Fund (Fidelity Spartan). Madoff LLC maintains a pooled holding within the Fidelity Fund and units are allocated to clients for the balance of uninvested cash. The allocations to underlying client accounts are processed on the trade blotters, but since this is effectively an internal allocation, there is no external confirmation. The operations department perform a reconciliation of clients' holdings in Fidelity units (per the daily stock record) to the total units held by Madoff LLC in the Fidelity Fund. Any new funds received from clients is placed into a pooled client cash account held at JP Morgan Chase. The balance of this account is typically nil, since all cash is immediately switched into T-Bills or units in the Fidelity Fund. According to BLM, new cash injections from clients are a rare occurrence (less than once a month) and cash is rarely received without prior notice. Since cash is immediately switched into T-Bills, Fidelity units or stock, if a client has sent cash in error, Madoff LLC will unwind any positions in order to return the monies to the client. On an ongoing basis, T-Bills are liquidated in order to enable settlement of equity trades and vice versa. Copies of the Fidelity statements were provided to KPMG for a selection of months. KPMG observed that the aggregated Fidelity holdings of all agency clients (including HSBC funds) were less than the total market value of the units held by Madoff for benefit of clients on the Fidelity statements to ensure adequacy of cover.

We have confirmed with FdP that Fidelity account X08-092622 titled: Bernard L Madoff Investments Securities LLC FBO Cust holds customers fully paid for securities, (Fidelity U.S. Treasury Money Market) free of any charge, lien or claim of any kind of such carrying firm.

## 4.3 Fraud and operational risks

KPMG reviewed the process by which client funds are remitted to and from Madoff LLC and the management of those funds while under the control of Madoff LLC. 28 fraud and operational risks were identified and discussed with HSBC. These are set out in Appendix B. During the course of the onsite work at Madoff LLC, KPMG identified, through discussion with Madoff LLC staff (primarily BLM and FdP) a number of internal controls relevant to these risks.

Specific tests were undertaken on 19 of the 28 risks identified in order to selectively test the controls. These were undertaken as follows:

- selecting one or more transactions that were recorded as occurring on each of the twelve client accounts in 2007; and
- reviewing documentation provided by Madoff LLC purportedly supporting those transactions.

The table (following page) summaries the 28 fraud and related operational risks. These risks have been classified (as set out in Appendix B) after taking into account internal controls identified as a result of discussions with HSBC and Madoff LLC staff.



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 87 of 131

The internal controls were identified by reviewing documents and conducting interviews with Madoff LLC.

Table 1: Summary of fraud and related operational risks

| No of controls identified | Risks reviewed |
|---|---|
| Mandates to trade | 1 |
| Cash received or held | 2 to 7 |
| Trading (Equities/Options/Fidelity/T-Bills) | 8 to 23 |
| Accounting for client assets | 24 and 25 |
| Market counterparty | 26 and 27 |
| Copies sent to HSBC and client | 28 |

## 4.4 Major findings

The major findings of the risk review are:

- 28 fraud and related operational risks were identified throughout the process whereby Madoff LLC receive, check and account for client funds.
- A limited number of selected controls relating to transactions were tested by KPMG during the course of the on site work at Madoff LLC and were found to be in place. However, we identified a number of areas where better segregation controls could be applied (e.g. Fidelity, Options). In addition, current controls at Madoff LLC may not prevent fraud or error occurring on client accounts if management or staff at Madoff LLC either override controls or undertake activities where appropriate controls are not in place.

Pg 89 of 132
09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 88 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

- There is strong reliance placed on Madoff LLC/BLM reporting suspected fraud, misconduct or significant error relating to a client account to the appropriate person in HSBC.

- The insurance cover held by Madoff LLC may not provide sufficient cover in the event of one of the above events occurring.

dl/dy

23



# Our Recommendations

## 1 Governance and Entity-wide issues

Based on our findings as detailed in Section 3.3 of this report, our recommendations on Governance and other entity wide issues at Madoff LLC is shown in Table 2 below:

**Table 2: Recommendations – Governance and Entity wide issues**

| Element | Recommendation |
|---|---|
| Fraud Risk Management | Request that Madoff LLC introduce a fraud risk management policy, applicable to all staff. Key elements could include:<br>- setting out the firm's zero tolerance to fraud;<br>- the role of the Audit and senior management committees with respect to the assessment of fraud;<br>- identification, assessment and mitigation of fraud risk;<br>- fraud awareness communication to management and staff; and<br>- escalation, reporting and monitoring.<br>Further details are contained below. |
| Governance Committees | Ensure that specific fraud or misconduct risks and control issues are considered through the Governance committees at Madoff LLC |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 90 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Element | Recommendation |
|---|---|
| Escalation and Reporting | Introduce a clear process for escalating issues to HSBC and document accordingly. This can be established as a formal agreement documents and signed by both parties (i.e. HSBC and Madoff LLC) which sets out the requirements and criteria for reporting suspected or proven fraud or error which has or may impact on a HSBC client account.<br>Consideration should be given as approximately 30% of funds under management with Madoff LLC are HSBC client funds, whether an external reporting arrangement could be made available with respect to HSBC client funds to Madoff LLC staff |
| Fund recognition | Consider whether Madoff LLC can ring-fence the assets of the twelve clients for which it acts as sub-custodian and prepare consolidated information for purposes of reporting to HSBC.<br>HSBC should also consider consolidating report information provided by Madoff LLC (which is currently reported to two locations: Luxembourg and Dublin). This may assist to reduce the risk of misallocating assets between the twelve client accounts. |
| Financial Incentives | Ensure that actions are undertaken by Madoff LLC to monitor financial and other incentives available to staff (e.g. bonus incentives) which can be a contributory factor in certain cases where fraud occurs. |
| Fines and Penalties | Ensure that Madoff LLC report all breaches identified and provide to HSBC a list of all fines and penalties which Madoff LLC staff have been subject to. |



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 91 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Element | Recommendation |
|---|---|
| Response Plan | Ensure there is clear guidance on the necessary steps to be undertaken at Madoff LLC in the event an incident is detected, for HSBC client assets to be secured, and appropriate HSBC personnel and other relevant parties notified.<br><br>Consider documenting a response plan, which should include: key contacts, HSBC and Madoff LLC insurance details, contact details of key US, UK and other relevant regulators and actions to consider to secure control over client assets |
| Review HSBC operations | Consider undertaking a review at HSBC's custody centres (Luxembourg and Dublin) in order to ensure that appropriate and consistent procedures are in place to independently confirm, where possible, accuracy of transactions, identify possible risks and issues and record any errors, missing information or other operational issues |
| Contract Review | Review the sub-custody contracts between HSBC and Madoff LLC to ensure that they reflect the current requirements and agreed obligations at Madoff LLC. Our review indicated that Kingate Global Fund Ltd appears as "Bank of Bermuda Ltd" on Madoff LLC's system, however, we were informed by Frank de Pascali of Madoff LLC that it should have been included in the HSBC sub custody agreement. Section 6 of this report details the steps HSBC need to take to ensure the fund names and other information are accurate. |
| Establish the legal chain | Review sub custody agreements and underlying contracts/documentation to ensure that HSBC has primary custodian rights over the underlying assets held within the funds. The table at Appendix D summarises the discrepancies identified between sub-custody agreements and various other documentation. (Refer to Section 6 and Appendix D). |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 92 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

## 5.2 Specific Risks

Table 3 below shows our recommendations in relation to the specific risks identified during our review and are in addition to those set out in Appendix B. HSBC should undertake a periodic review at Madoff LLC to ensure the integrity of accounting for client transactions and assets. The information in Table 3 below may serve as a guide as to how this assessment may occur.

**Table 3: Recommendations – Specific Risks**

| Element | Recommendation |
|---|---|
| Insurance Cover | Ensure that the insurance cover held by Madoff LLC provides sufficient cover of fraud and related risks |
| Movement in Client Assets | Identify and assess risks and controls relevant to the movement and control of client assets at Madoff LLC |
| Internal and External reports | Request Madoff LLC to submit to HSBC and review Madoff LLC's internal audit and compliance reports, conflict of interest documentation and any external reviews such as those conducted by US Regulatory agencies |
| Faxed Information | Confirm faxed information on client trading activity as provided by Madoff LLC |
| Operational Issues | Hold discussions with BLM and other Madoff LLC staff, as appropriate, on fraud and operational risks |
| Errors, Fines and Penalties | Discuss any errors which may be relevant to HSBC Client accounts and any fines or penalties which Madoff LLC or its staff may have been subject to |
| Client Trades | Test key controls by selecting client trades and ensure that the HSBC custody centres, (Dublin and Luxembourg), have in place a risk and compliance based program which may include actively testing transaction information provided by Madoff LLC |
| Options and Fidelity Fund | Consider reviewing prices against market rates on an ongoing basis as the OTC is an internal OTC as Madoff LLC acts as Agent for both clients.<br>Consider reviewing the aggregate holdings per Madoff LLC stock record for a selection of dates to the DTC Participation Report to confirm segregated holdings |



*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Element | Recommendation |
|---|---|
| Periodic Review | Consider undertaking a periodic review, which includes tracing a sample of client trades back to the bulk order placed by Madoff LLC. |

dl/dy

28

KPMG

# 5 Review of Agreements

KPMG were provided with a select number of sub custody and client agreement documents by HSBC and Madoff LLC. We conducted a high level review of these documents and a number of discrepancies were identified with regards to different accounts or fund names. These findings and suggested actions are set out below. Further analysis appears in Appendix D.

Square One Fund was one of HSBC client accounts at the time of our last review, however, this fund has reorganised their structure and changed the Fund Administrator from Bank of Bermuda to Circle Partners, The Netherlands. HSBC terminated the sub custodian agreement with effect from 30 June 2006, but Madoff LLC still acts for the fund.

The following actions should be considered in respect of the named client funds:

***Sub-custody agreement between HSBC Securities Services (Luxembourg) S.A. and Bernard L. Madoff Investment Securities dated 23 January 2008***

Lagoon Investments Limited (FN021 and FR016)

- Ensure that although Annex "A" of the above sub-custody agreement refers to Lagoon Investments Limited (a company of Hermes Limited) and it still applies to the funds held by HSSL (Hermes Neutral, Hermes Universal, Hermes World USD); and
- Ensure that the account names as provided by Madoff LLC (Lagoon Investments Limited) corresponds to the actual account name held by HSSL (SA Spec Cust Acct Lagoon Investment) and that it applies to the funds held by HSSL (Hermes Neutral, Hermes Universal, Hermes World USD)
- Ensure that the sub-custody agreement includes both Lagoon Investments Limited (1-FN021 and 1-FR016)



Alpha Prime Fund Limited (FR097)

- Establish the name of the fund held by HSSL and ensure it relates to the fund name within Annex "A" of the above sub-custody agreement (Alpha Prime Fund Limited); and

- Ensure that the account name for the fund as provided by Madoff LLC (Alpha Prime Fund Limited) corresponds to the actual account name held by HSSL (SA Spec Cust Acct for Alpha Prime Fund Limited) and it applies to the fund held by HSSL (the fund name to be established by HSBC).

Herald Fund SPC – Herald USA (FR109)

- Establish that the fund name within Annex "A" of the above sub-custody agreement (Herald Fund SPC-Herald USA) and the fund name held by HSSL (Herald USA segregated portfolio one) relate to the same fund; and

- Ensure that the account name for the fund as provided by Madoff LLC (Herald Fund SPC – Herald USA Segregated Portfolio One) corresponds to the actual account name held by HSSL (SA Spec Cust Acct for Herald Fund SPC – Herald USA) and it applies to the fund held by HSSL (Herald USA segregated portfolio one).

Herald (Lux) (FN135)

- Establish that the fund name within Annex "A" of the above sub-custody agreement Herald (Lux) is correctly reflected in the account name and fund name of HSSL; and

- Ensure that the account name for the fund as provided by Madoff LLC (Herald (Lux)) corresponds to the actual account name and fund name held by HSSL.

Senator Fund SPC (FN128)

- Establish that the fund name within Annex "A" of the above sub-custody agreement Senator Fund SPC – Senator equity Segregated Portfolio One is correctly reflected in the account name and fund name of HSSL;

KPMG

- Ensure that the account name for the fund as provided by Madoff LLC (Senator Fund SPC – Senator equity Segregated Portfolio One) corresponds to the actual account name and fund name held by HSSL;
- Ensure amended Annex "A" is legally valid. (Note: This fund was missing in the original 'Annex A' of the sub-custody agreement dated 23 Jan 2008 and was included in an amended 'Annex A' dated 8 April 2008).

Thema Wise Investments Ltd. (FR093)

- Determine which sub-custody agreement captures this fund;
- Ensure the fund name contained in the sub-custody agreement corresponds to the customer name according to HSSL's records; and
- Establish that the account name as provided by Madoff LLC (Thema Wise Investments Ltd) corresponds to the account name and fund name (Thema Coral Fund) according to HSBC's records .

***Sub-custody agreement between Bank of Bermuda (Luxembourg) S.A. and Bernard L. Madoff Securities***

Primeo Fund (FN092)

- Ensure that HSBC records are updated as Primeo Fund (1-FN092) merged with Herald Fund SPC-Herald USA Segregated Portfolio One (1-FR109) in May 2007.

***Sub-custody agreement between HSBC Institutional Trust Services (Ireland) Limited and Bernard L. Madoff Investment Securities***

Thema US Hedged Equity Fund (FN095)

- Ensure this fund is included in HSBC sub custody agreement;
- Ensure that the account name and fund name (Thema International Fund Plc) are correctly reflected in HSBC records;

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 97 of 131

CONFIDENTIAL: SIPC vs. BLMIS

- Ensure that the fund name and the customer agreement as obtained from Madoff LLC (Thema US Hedged Equity Fund) reflect the same fund; and
- Please note that the Account Set up is entitled ("The Bank of Bermuda Limited – Hamilton Special Custody Account for the exclusive benefit of customers of Bermuda Trust (Dublin) Limited)".

Defender Limited (FN132)

- Ensure this fund is included in HSBC sub custody agreement, apparently managed by Dublin;
- Ensure that the account name and fund name are correctly reflected in HSBC records; and
- Ensure that the fund name and the customer agreement as obtained from Madoff LLC (Defender Limited) reflect the same fund.

GI (Global Investments) Plc - Landmark Investment Fund Ireland (FN133)

- Ensure this fund is included in HSBC sub custody agreement, apparently managed by Dublin;
- Ensure that the account name and fund name are correctly reflected in HSBC records;
- Ensure that the fund name and the customer agreement as obtained from Madoff LLC (GI (Global Investments) Plc - Landmark Investment Fund Ireland) reflect the same fund; and
- Funds set up in Madoff LLC system as Bank of Bermuda Limited for which no sub-custody agreement has been provided to us for this fund either by HSBC or Madoff LLC.

Kingate Global Fund Ltd – USD Shares (FN061)

- Ensure this fund is included in HSBC sub custody agreement;
- Ensure that the account name and fund name are correctly reflected in HSBC records; and





- Please note that this fund appears as "Bank of Bermuda Ltd" on Madoff LLC's system.

***Funds dropped off since last review***

Square One Fund Limited

- Ensure that HSBC records correctly reflect that Square One Fund Limited dropped out on 30 June 2006. Square One Fund reorganised their structure and changed the Fund Administrator from Bank of Bermuda to Circle Partners, The Netherlands. The Bank terminated the sub custodian agreement with effect from 30 June 2006. Madoff LLC still acts for the fund.

***Sub-custody agreement between The Bank of Bemurda Limited and Bernhard L. Madoff Investment Securities Limited, and a Custody agreement between Thema International Fund plc and Bermuda Trust (Dublin) Limited***

Under this sub-custody agreement, an account has been set up entitled "The Bank of Bermuda Limited – Hamilton Special Custody Account for the exclusive benefit of customers of Bermuda Trust (Dublin) Limited (BTDL).

The following actions are recommended:

- Ensure there are appropriate contractual arrangements in place between The Bank of Bermuda Limited and BTDL;
- Establish the account name for this fund as recorded by HSBC / BTDL; and
- Ensure that the account name for the fund as provided by Madoff LLC (Thema US Hedged Equity Fund) corresponds to the actual account name held by BTDL (Thema International Fund Plc) and is applicable to the fund held by BTDL.

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 99 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

# Appendix A – Transaction process

The following charts set out our understanding of the eight client accounts and the transaction process at Madoff LLC.



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 100 of 131

KPMG

HSBC Bank plc
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

# Appendix B – Fraud risk, controls and testing

| Ref[1] | Risk or potential issue & its implication | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | *Establish mandate with clients* | | | | | |
| ● | BLM falsifies mandate with client. | F | There are mandates. Terms are set out in the Agreements. | N/A | | No action required |
| | *Cash received (new/existing)* | | | | | |
| ● | BLM embezzles client funds. | F | All funds are deposited in the nominated client account at JP Morgan Chase.<br>Restricted access to Madoff LLC's account at JP Morgan Chase Bank. Limited to the following Madoff LLC personnel: Dan Bonventrie, Bernard Madoff, Peter Madoff, and Enrica Cotellessa-Pitz. | No testing undertaken. | <br>R1<br>R2<br>R3<br>R4 | HSBC should consider undertaking the following:<br>• Establish a process to monitor monthly statements<br>• Reconcile monthly statements to cash contributions from clients<br>• Monitor the cash accounts of individual clients<br>• Request independent confirmation of the signatories and their individual mandates as recorded by JP Morgan Chase (bankers for Madoff LLC) |
| ● | BLM falsifies client's instruction for investment to cover poor proprietary position. | F | Clients do not send instructions<br>Client assets are segregated from Proprietary assets at the DTC (for | • Review the aggregate agency holdings per the stock record (T-Bills and equities) for a | R5 | HSBC should consider instructing all clients to provide written notification to HSBC if they directly instruct Madoff LLC to undertake any |

[1] Legend: ● = Fraud risk (red dot); ④ = Operational risk ( )
[2] Internal controls as nominated during the course of discussions with Bernard Madoff and Frank DiPascali at Madoff LLC. These have not been independently verified or tested by KPMG unless as specifically stated in the 'Test' column.



| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | | | Equities and Treasury Stocks)<br><br>Holdings in Fidelity fund are allocations to holdings in Fidelity units already held by Madoff LLC. | selection of dates to the DTC Participation Report to confirm segregated holdings.<br><br>▪ Review total Fidelity holdings of all Agency clients (including HSBC funds) against statements from Fidelity for a selection of dates to ensure adequacy of cover | | investment activity on their behalf. |
| 4 | Client cash received either not placed in segregated client money account or incorrectly allocated. (e.g. pooled with BLM proprietary money). | O | Segregated clients accounts maintained in the financial records at Madoff LLC.<br><br>All funds deposited or waiting for investment are placed in short term treasury stock and any residual goes into Fidelity fund.<br><br>Reconcile the cash book on a daily basis which identifies what is held at the DTC against Madoff LLC's internal records. [This would identify if amounts are segregated into client accounts or held in the proprietary account]. | ▪ Review the aggregate agency holdings per the stock record (T-Bills and equities) for a selection of dates to the DTC Participation Report to confirm segregated holdings. | | Refer to R1 to R4 |

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| [illegible] | Client cash received is diverted for personal gain. | F | Restricted access to Madoff LLC's account JP Morgan Chase Bank. Limited to the following Madoff LLC personnel: Dan Bonvertrie, Bernard Madoff, Peter Madoff, and Enrica Cotellessa-Pitz. | ▪ Review the aggregate agency holdings per the stock record (T-Bills and equities) for a selection of dates to the DTC Participation Report to confirm segregated holdings. | <br>R6<br>R7<br>R8 | Confirm:<br>• Whether HSBC's insurance policies would cover such loss<br>• Account signatories (as set out in R4)<br>• Whether the escalation process would require Madoff LLC / BLM to immediately report an incident to the appropriately nominated person at HSBC. |
| [illegible] | Client cash is diverted – signatures falsified on client instruction in an attempt to legitimise an unauthorised transaction (i.e. redemption) | F | • Segregation in the back office between authorisation and recording of the transaction<br>▪ Standard profile set up which includes set account details<br>• Two signatories required to sign | | R9 | • HSBC undertakes a cash reconciliation as part of the fund pricing process |
| 7 | Reinvested funds from Fidelity, etc. inaccurately allocated to individual client accounts | O | Holdings in Fidelity are recorded on a client by client basis on Madoff LLC daily stock records.<br>Amounts are not allocated externally, assets are allocated within the client's sub ledger relative to the investments. | Not undertaken (as only internal Madoff LLC records are available and all units are registered at Fidelity are in Madoff LLC's name) | <br>R10<br>R11 | HSBC should consider undertaking the following:<br>• Establish a process to monitor monthly statements<br>• Reconcile monthly statements to cash contributions from clients. |



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 103 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & its implication | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | *Trading: Buy Put options and write Call options (premiums earned)* | | | | | |
| ● | Manipulate option price (recovery) in order to maximize commission, also for T-Bills and Fidelity. | F | ▪ Madoff LLC only act as agent for options trading. ▪ Option trades are allocated directly to the client account and do not enter Madoff LLC's Proprietary account. | ▪ Review trade blotters to ensure that the counter party trades matched off against HSBC client account option trades. | R12 | HSBC should consider reviewing option premium on a spot basis as part of ongoing monitoring against market prices |
| ● | Madoff LLC claim funds have been used to settle options exercised against HSBC | F | ▪ Restricted access to Madoff LLC's account at JP Morgan Chase Bank Limited to the following Madoff LLC personnel: Dan Bonvertrie, Bernard Madoff, Peter Madoff, and Enrica Cotellessa-Pitz. ▪ Segregation of duties between those who can authorise payments and those who record transactions | Not undertaken. | R13 | HSBC should consider undertaking a spot reconciliation of cash when options exercise. |
| ● | Madoff LLC claim funds have been used to pay a premium for purchased options | F | ▪ Restricted access to Madoff LLC's account at JP Morgan Chase Bank Limited to the following Madoff LLC personnel: Dan Bonvertrie, Bernard Madoff, Peter Madoff, and Enrica Cotellessa-Pitz. ▪ Segregation of duties between those who can authorise payments and those who record transactions | Not undertaken. | | Refer to R13 |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 104 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & *its implication* | Risk type (*Fraud/ Operational*) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| [illegible] | Madoff LLC exercise client option (to purchase stock at preferred price) but tell client/HSBC, that the option was left to expire. | F | Option contracts are between HSBC clients and market counter party. Madoff LLC do not take options onto proprietary books and trade with HSBC clients. All the derivates are held in a sub ledger (40) for a client account Option held in client name cannot be transferred to another party. | ▪ Review trade blotters to ensure that the counter party trades matched off against HSBC client account option trades. | | Refer to R12 |
| | *Month end unwind deals* | | | | | |
| [illegible] | Madoff LLC staff take advantage of timing position to invest client funds and misappropriate position (e.g. invest in premium bond/note but report as low value investment). | F | All equities and T-Bills are held in segregated client account at the DTC. | ▪ Review the aggregate agency holdings per the stock record (T-Bills and equities) for a selection of dates to the DTC Participation Report to confirm segregated holdings. | R14 | HSBC should consider undertaking a spot check of investments and cash position in order to independently reconcile client accounts. |



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 105 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Ref[3] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[3] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| [illegible] | BLM divert cash resulting from the sale of Equity/T-Bills. | F | ▪ Segregated clients accounts maintained in the financial records at Madoff LLC.<br>▪ All funds deposited or waiting for investment are placed in short term treasury stock and any residual goes into Fidelity fund.<br>▪ Reconcile the cash book on a daily basis which identifies what is held at the DTC against Madoff LLC's internal records. [This would identify if amounts are segregated into client accounts or held in the proprietary account].<br>▪ Segregation of duties between accounting and cash disbursements. (Senior people could allocate cash to account).<br>▪ Restricted access to Madoff LLC's account JP Morgan Chase Bank. Limited to the following Madoff LLC personnel: Dan Bonvertrie, Bernard Madoff, Peter Madoff, and Enrica Cotellessa-Pitz | No specific test. However, note the above test of client funds and transactions. | R15 | ▪ HSBC should be monitoring the cash accounts of individual clients.<br>▪ Refer to R14 |
| 14 | BLM report over valued position/return to client, but not to HSBC in order to control relationship. | O | ▪ Trading information is automated and is driven by the process. This includes providing details for the statements.<br>▪ Ability to make manual trades on individual client accounts is limited | Obtained monthly trading reports for each client for sample of months and verified for a sample of trades that these were consistent with reports sent | R16<br>R17 | HSBC should consider undertaking the following:<br>• Establish a process to monitor monthly statements<br>• Reconcile monthly statements to cash |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 106 of 131

KPMG

| Ref[1] | Risk or potential issue & its implication | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | | | to two people (Bernard Madoff and Frank De Pascali).<br>▪ HSBC is provided with statements and confirmations. | to and received by HSBC. | | contributions from clients. |
| | Stocks not held in client name. (e.g. Equities, Options or T-Bills) | F | ▪ All stocks are held in Madoff LLC name in segregated client sub account at DTC | Refer to the above test on buying and allocating trades | R18<br>R19 | HSBC to consider:<br>• Robust reconciliation of monthly statements.<br>• Periodic onsite review at Madoff LLC to confirm a selection of trades in order to verify the operational effectiveness of internal controls. |
| | Stocks are intentionally not allocated a fair price from the bulk trade | F | ▪ Madoff LLC's systems automatically allocate a weighted average price at the end of each trading day | ▪ For a sample of equity trades, review the aggregate nominal agency trades and compare these to the aggregate total counter party trades to ensure matching<br>▪ Following the above test, recalculate the average price for the bulk trade and check this had been allocated to the trading blotter | | • Refer to above (R18 and R 19) |
| | Execute trades with favoured external market counter parties for commission kickbacks (and not best return for client). Equity & | F | ▪ Traders are monitored by Supervisors who are in turn are monitored by Madoff LLC senior management (brothers).<br>▪ Bids go out to market and Madoff | ▪ Review sample of equity trades per the trade blotters and confirm the consistency of allocated price across | | Refer to R12, R24 and R27 |



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 107 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Ref | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | Options.. | | LLC cannot dictate to the external counterparty who fill the orders<br>▪ FINRA perform best execution price reviews as part of their examinations visits<br>▪ Trades are allocated on the basis of average price. | all segregated client accounts. | | |
| | HSBC makes a call on client funds & Madoff LLC inflates call value to client in order to cover over misappropriation or poor position, (e.g. Equity & Option) | F | ▪ Segregated client accounts at the DTC.<br>▪ A review is carried out of the daily stock record to check the cash balance.<br>▪ Segregation of duties between front and back office. | ▪ Review the aggregate agency holdings per the stock record (T-Bills and equities) for a selection of dates to the DTC Participation Report to confirm segregated holdings. | R20 | HSBC to consider undertaking a review of the monthly statements and reconciling cash calls to movements in cash. |
| | BLM undertake unauthorised trades on behalf of clients. (e.g. Equity, Option, T-Bills & Fidelity Funds | F | ▪ The 'Customer Agreement' with Madoff LLC sets out the authority which in general is to buy, sell and trade in stocks, bonds, options or any other securities<br>▪ Madoff LLC utilise an investment strategy which is reviewed by a number of Madoff LLC senior management.<br>▪ Monthly statements are sent to HSBC and the client which identify the allocation of trades. | ▪ Review a sample of trade information and noted that equities were consistently SP100 listed stocks | R21<br>R22 | HSBC should consider undertaking the following:<br>• Establish a process to monitor monthly statements put in place formerly monitoring of monthly statements.<br>• Reconcile monthly statements to cash contributions from clients. |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 108 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| 20 | Unauthorised staff member at BLM executes trades on behalf of clients. | O | Segregation of duties.<br>Access to front office systems is restricted (by door) to trading staff, senior management and a select number of other delegated staff.<br>Audit trail retained of trading activity. | Not tested. | R23 | As part of a periodic review at Madoff LLC, clarify access controls to trading systems. |
| ● | Trade is a sham in order to divert client cash. | F | ▪ The assets (equities and bonds) are held in a segregated account at the DTC<br>▪ Allocations of agency trades for client accounts are reconciled back to bulk trades on the trading blotter. | • Review a sample of trades selected from the customer trading statement to the trading blotter<br>• Review the aggregate agency holdings per the stock record (T-Bills and equities) for a selection of dates to the DTC Participation Report to confirm segregated holdings. | | Refer to R1 to R4 |
| 22 | BLM front-run client trades to own advantage/does not fairly allocate price to client. (Equity and T-Bills)<br>[i.e. buys for own | O | Bulk trades executed with market counter party and allocated as agency trades to clients using an allocation algorithm which pro-rates the allocation and applies an average price. | ▪ Review sample of trade prices per trade blotters for agency trades (allocated to clients) across different clients for a sample of days and confirm | | Refer to R12, R24 and R27 |



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 109 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | benefit, prior to allocating to clients, at a higher price] | | | prices were consistent | | |
| 23 | Madoff LLC churns client funds for own advantage. (Equity, Option, T-Bills & Fidelity Fund)<br>*(This risk is possible given the broad mandate in the agreements)* | O | Segregation of client assets at the DTC.<br>Equity trades on behalf of clients require Seg Confirmation or Seg Release in order to settle at the DTC.<br>Madoff LLC does not earn commissions on T-Bill trades or Options. | ▪ Review the aggregate agency holdings per the stock record (T-Bills and equities) for a selection of dates to the DTC Participation Report to confirm segregated holdings.<br>▪ Review client statements for a sample of months for any unusual trading patterns | R24 | HSBC should consider undertaking comparative reviews over time of trading actively on client accounts to monitor for potential churning |
| | *Accounting for client assets* | | | | | |
| 24 | Madoff LLC falsely reports buy/sell trades without actually executing in order to earn commissions. (Equities) | F | ▪ Segregation of client assets at the DTC<br>▪ Allocations of agency trades for client accounts reconcile back to bulk trades on the trading blotter | ▪ Review the aggregate agency holdings per the stock record (T-Bills and equities) for a selection of dates to the DTC Participation Report to confirm segregated holdings<br>▪ Review a sample of trades selected from the customer trading statement to the trading blotter | R25 | HSBC should consider undertaking a periodic review which includes tracing a sample of client trades back to the bulk order. |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 110 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue *& its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | BLM falsifies accounting records which are provided to HSBC and clients. (Equity, Option, T-Bills & Fidelity Fund). | F | ▪ Segregation of staff and duties in the front and back office<br>▪ Reconcile of actual trades with the DTC (for equities and T-Bills only) | ▪ Review the aggregate agency holdings per the stock record (T-Bills and equities) for a selection of dates to the DTC Participation Report to confirm segregated holdings<br>▪ Review sample of trades selected from the customer trading statement to the trading blotter | R26 | HSBC should consider :<br>• Refer to R25<br>• Compare above selected trading information to the client statements. |
| | *Market counterparty confirms trade with BLM*<br>Collusion with counterparty to falsify trading records. (more likely with T-Bills as only one counterparty or Options, as the OTC is an internal OTC as Madoff LLC acts as Agent for both clients) | F | ▪ External settlement of equity trades at the DTC<br>▪ The Bank of New York also settles through the DTC for T-Bills | ▪ Review the aggregate agency holdings per the stock record (T-Bills and equities) for a selection of dates to the DTC Participation Report to confirm segregated holdings<br>▪ Review total Fidelity holdings of all Agency clients (including HSBC funds) against statements from Fidelity for a selection of dates to ensure adequacy of cover | R27 | HSBC should consider reviewing prices against market rates on a sample of dates on an ongoing basis. |

Pg 112 of 132
Pg 111 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Ref[1] | Risk or potential issue & *its implication* | Risk type (Fraud/ Operational) | Nominated internal controls[2] | Test | Ref | Recommendations for consideration |
|---|---|---|---|---|---|---|
| | | | | ▪ Review trade blotters to ensure that the counter party trades match off against HSBC client account option trades. | | |
| [illegible] | Counterparty and/or BLM falsify instruction to DTC. (Equity, Option).<br><br>*Copies sent to HSBC and client* | F | ▪ Bulk trades (recorded at the DTC) are confirmed by external counterparty<br>▪ Audit record of trades | | | Refer to R25 |
| [illegible] | Madoff LLC falsifies trade confirmations to clients and HSBC. (Equity, Option, T-Bills & Fidelity Fund). | F | ▪ The reconciliation between stock report and the DTC Participation Report should identify if there is a mismatch | ▪ Review the aggregate agency holdings per the stock record (T-Bills and equities) for a selection of dates to the DTC Participation Report to confirm segregated holdings. | | Refer to R25 and R26 |

dl/dy

46

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 112 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

# Appendix C – Details of Funds per Madoff LLC records

| Account Number (Madoff LLC reference) | Name of Fund | Date Account Established with Madoff LLC | HSBC Location | Sub-Custody Agreement Date | Equity Balance as at 31 March 2008 | Account name – Wire Location |
|---|---|---|---|---|---|---|
| 1-FN021 | Lagoon Investments Limited | Prior to Jan 2000 | HSBC SS (Luxembourg) | 23 Jan 2008 | 107,739,000 | JP Morgan Chase A/c 140081703 |
| 1-FR016 | Lagoon Investments Limited | Prior to Jan 2000 | HSBC SS (Luxembourg) | 23 Jan 2008 | 653,033,000 | JP Morgan Chase A/c 140081703 |
| 1-FR097 | Alpha Prime Fund Limited | 13 June 2003 | HSBC SS (Luxembourg) | 23 Jan 2008 | 315,419,000 | JP Morgan Chase A/c 140081703 |
| 1-FR109 | Herald Fund SPC-Herald USA Segregated Portfolio One | 1 April 2004 | HSBC SS (Luxembourg) | 23 Jan 2008 | 1,942,923,000 | JP Morgan Chase A/c 140081703 |
| 1-FN135 | Herald (Lux) | 17 March 2008 | HSBC SS (Luxembourg) | 23 Jan 2008 | 24,750,000 | JP Morgan Chase A/c 140081703 |
| 1-FN128 | Senator Fund SPC – Senator Equity Segregated Portfolio One | 6 Sep 2006 | HSBC SS (Luxembourg) | 23 Jan 2008 | 196,315,000 | JP Morgan Chase A/c 140081703 |
| 1-FR093 | Thema Wise Investments Ltd. | 3 Feb 2003 | HSBC SS (Luxembourg) | 23 Jan 2008 | 225,183,000 | JP Morgan Chase A/c 140081703 |
| 1-FN092 | Primeo Fund | Prior to Jan 2000 | HSBC SS (Luxembourg) | Closed 26 June 2007 | Closed 26 June 2007 | JP Morgan Chase A/c 140081703 |
| 1-FN061 | Kingate Global Fund Ltd – USD Shares | Prior to Jan 2000 | Bank of Bermuda Ltd | Not received | 2,669,384,000 | JP Morgan Chase A/c 140081703 |
| 1-FN095 | Thema US Hedged Equity Fund | Prior to Jan 2000 | Bermuda Trust (Dublin) | 1 July 1996 | 1,495,540,000 | JP Morgan Chase A/c 140081703 |
| 1-FN132 | Defender Limited | 11 May 2007 | HSBC Inst Tst Svc (Ireland) | 4 May 2007 | 408,522,000 | JP Morgan Chase A/c 140081703 |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 113 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Account Number (Madoff LLC reference) | Name of Fund | Date Account Established with Madoff LLC | HSBC Location | Sub-Custody Agreement Date | Equity Balance as at 31 March 2008 | Account name – Wire Location |
|---|---|---|---|---|---|---|
| 1-FN133 | GI (Global Investments) Plc – Landmark Investment Fund Ireland | 31 Oct 2007 | HSBC Inst Tst Svc (Ireland) | 4 May 2007 | 105,072,000 | JP Morgan Chase A/c 140081703 |
| | TOTAL | | | | 8,143,880,000 | |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 114 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

# Appendix D – Summary of discrepancies in documentation

| Account Number | Name of customer per Sub-Custody Agreement (1) | Name of customer per customer agreement (2) | Name of customer per HSBC records (as provided) (3) | Account name & number per HSBC due diligence report dated 21 Feb 2008 (4) | Account name per HSBC records (5) | Recommended steps by HSBC for resolution |
|---|---|---|---|---|---|---|
| | **Sub-custody agreement: HSBC Securities Services (Luxembourg) S.A. and Bernard L. Madoff Investment Securities – dated 23 Jan 2008** | | | | | |
| 1-FN021 | Lagoon Investments Limited (a company of Hermes International Fund Limited) | Lagoon Investment Limited as per Option Agreement [customer agreement signed by David. T. Smith, Director] | -Hermes Neutral<br>-Hermes Universal<br>-Hermes World USD | HSBC Securities Services (Luxembourg) SA Spec Cust Acct Lagoon Investment | HSBC Securities Services (Luxembourg) SA Spec Cust Acct Lagoon Invent (a pool split across three Hermes accounts) | • Ensure that although 1 is in the name of Lagoon, it still applies to customers per 3<br>• Establish that account names per 4 and 5 correspond to customer names per 3. |
| 1-FR016 | *As above –Note: only one name mentioned in sub-custody agreement for both funds* | Lagoon Investment Limited as per Option Agreement [customer agreement signed by David. T. Smith, Director] | As above. | HSBC Securities Services (Luxembourg) SA Spec Cust Acct Lagoon Investment | As above. | • Ensure that the sub-custody agreement includes both Lagoon Investments Limited funds.<br>• Ensure that although 1 is in the name of Lagoon, it still applies to customers per 3<br>• Establish that account names per 4 and 5 correspond to customer names per 3. |
| 1-FR097 | Alpha Prime Fund Limited | Alpha Prime Fund Limited | (Not identified) | HSBC Securities Services | HSBC Securities Services (Luxembourg) | • Establish the name of the fund per 3 and ensure it corresponds to 1. |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 115 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Account Number | Name of customer per Sub-Custody Agreement (1) | Name of customer per customer agreement (2) | Name of customer per HSBC records (as provided) (3) | Account name & number per HSBC due diligence report dated 21 Feb 2008 (4) | Account name per HSBC records (5) | Recommended steps by HSBC for resolution |
|---|---|---|---|---|---|---|
| | | | | (Luxembourg) SA Spec Cust Acct For Alpha Prime Fund Limited | SA Spec Cust Acct for Alpha Prime Fund Limited | • Establish that account names per 4 & 5 correspond to customer name to be established per 3. |
| - FR109 | Herald Fund SPC-Herald USA Segregated Portfolio One | Herald Fund SPC – Herald USA segregated portfolio one | Herald USA segregated portfolio one | HSBC Securities Services (Luxembourg) SA Spec Cust Acct For Herald Fund SPC-Herald USA | HSBC Securities Services (Luxembourg) SA Spec Cust Acct for Herald Fund SPC - Herald USA | • Ensure fund names per 1 & 3 relate to the same fund<br>• Establish that account names per 4 & 5 correspond to customer name per 3.<br>(Note: Primeo Fund [1-FN092] merged with this fund [1- FR109] in May 2007 – see below). |
| - FN 135 | Herald (Lux) | Herald (Lux) SICAV as per Option Agreement [customer agreement signed by directors] | Not available at the time of review | Not Included | Not available at the time of review | • Ensure fund names per 1, 2 & 3 relate to the same fund<br>• Establish that account names per 5 correspond to customer name per 3. |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 116 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Account Number | Name of customer per Sub-Custody Agreement (1) | Name of customer per customer agreement (2) | Name of customer per HSBC records (as provided) (3) | Account name & number per HSBC due diligence report dated 21 Feb 2008 (4) | Account name per HSBC records (5) | Recommended steps by HSBC for resolution |
|---|---|---|---|---|---|---|
| 1- FN128 | Senator Fund SPC – Senator Equity Segregated Portfolio One | Senator Fund SPC – Senator Equity Segregated Portfolio One | Not available at the time of review | HSBC Securities (Luxembourg) SA Spec Cust Acct For Senator Fund SPC | Not available at the time of review | • Obtain / Ensure that the main contract is signed. • Ensure amended Annex "A" is legally valid. (Note: This fund was missing in the original 'Annex A' of the sub-custody agreement dated 23 Jan 2008 and was included in an amended 'Annex A' dated 8 April 2008. • Ensure fund names per 1 & 3 relate to the same fund |
| -FR093 | *Name of fund not mentioned in sub – custody agreement of 23 Jan 2008* | Thema Wise Investments Ltd. | Thema Coral Fund | HSBC Securities Services (Luxembourg) SA Spec Cust Acct For Thema Wise Investments Ltd. | HSBC Securities Services (Luxembourg) SA Spec Cust Acc for Thema Wise Investments Ltd | • Establish whether fund is with Luxembourg or Dublin and which sub-custody agreement should capture the fund • Ensure the fund name per the sub-custody agreement per 1 corresponds to 4 and 5 • Establish that the account names per 4 and 5 correspond to customer name per 3 |
| | **Sub-custody agreement: Bank of Bermuda (Luxembourg) S.A. and Bernard L. Madoff Investment Securities** | | | | | |
| -FN092 | Primeo Fund | Not mentioned – signed by director, Austin J.O'Connor. | Primeo Select Fund | HSBC Securities Services (Luxembourg) SA | HSBC Securities Services (Luxembourg) SA Spec Cust Acct for | • Merged with 1- FR109 Herald Fund SPC-Herald USA Segregated Portfolio One in |



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 117 of 131

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Account Number | Name of customer per Sub-Custody Agreement (1) | Name of customer per customer agreement (2) | Name of customer per HSBC records (as provided) (3) | Account name & number per HSBC due diligence report dated 21 Feb 2008 (4) | Account name per HSBC records (5) | Recommended steps by HSBC for resolution |
|---|---|---|---|---|---|---|
| | | | | Spec Cust Acct for Primeo Fund Class B | Primeo Fund Class B | May 2007. |
| 1-FN061 | *Name of fund not mentioned on sub custody agreements of Luxembourg and Dublin of 21 Jan 2008 and 4 May 2007.* | Kingate Global Fund Ltd – USD Shares | Not available at the time of review | Kingate Global Fund Ltd c/o Bank of Bermuda Ltd A/C/F Kingate Global Fund | Not available at the time of review | [Note: Appears as 'Bank of Bermuda Ltd' on Madoff LLC system.]<br>• Ensure this fund is included in HSBC sub custody agreement.<br>• Establish that the account names per 4 and 5 correspond to customer name per 3 |
| | **Sub-custody agreement: HSBC Institutional Trust Services (Ireland) Limited and Bernard L. Madoff Investment Securities – dated 4 May 2007** | | | | | |
| 1-FN095 | *Name of fund not mentioned in agreement of 4 May 2007.*<br><br>Account Set up entitled ("The Bank of Bermuda Limited – Hamilton Special Custody Account for the exclusive benefit of customers of Bermuda Trust (Dublin) Limited" | Thema US Hedged Equity Fund | Thema International Fund Plc | The Bank of Bermuda Limited Hamilton, Special Custody Acct For The Exclusive Benefit of Cust of Bermuda TST (Dublin) Ltd, F/B/O Thema | Not available at the time of review | • Establish that account name per 4 relates to customer name per 3<br>• Establish the account name per HSBC records (which should be listed per 5)<br>• Establish that the account name per 5 corresponds to the account name per 4 |
| 1-FN132 | *Name of fund not mentioned in agreement of 4 May 2007.* | Defender Limited | Not available at the time of review | Defender Limited | Not available at the time of review | [Note: New Fund apparently managed by Dublin]<br>• Ensure that the client fund is included in sub-custody agreement |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 118 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

| Account Number | Name of customer per Sub-Custody Agreement (1) | Name of customer per customer agreement (2) | Name of customer per HSBC records (as provided) (3) | Account name & number per HSBC due diligence report dated 21 Feb 2008 (4) | Account name per HSBC records (5) | Recommended steps by HSBC for resolution |
|---|---|---|---|---|---|---|
| | | | | | | • Establish that account name per 4 relates to customer name per 3<br>• Establish the account name per HSBC records (which should be listed per 5) |
| – FN133 | *Name of fund not mentioned in agreement of 4 May 2007.* | GI (Global Investments) Plc – Landmark Investment Fund Ireland as per Option Agreement [customer agreement signed by Juan Carlos Rodriguez Hergueta] | Not available at the time of review | HSBC Institutional Trust Svcs (Ireland) Ltd FBO Landmark Investment Fund Ireland and Subfund of GI (Global Invmts) | Not available at the time of review | [Note: New Fund apparently managed by Dublin]<br>• Ensure that the client fund is included in sub-custody agreement<br>• Establish that account name per 4 relates to customer name per 3<br>• Establish the account name per HSBC records (which should be listed per 5) |
| | **Funds dropped out since last review** | | | | | |
| Dropped out – 30 une 2006 | Square One Fund Limited | Square One Fund Limited (Changed name from Isis Worldwide Limited | Not available at the time of review | Not available at the time of review | Not available at the time of review | • Square One Fund reorganised their structure and changed the Fund Administrator from Bank of Bermuda to Circle Partners, The Netherlands. The Bank terminated the sub custodian agreement with effect from 30 June 2006. Madoff LLC still acts for the fund. |

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 119 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

## Appendix E – Contractual arrangements

The following charts set out our understanding of the contractual arrangements between the various parties. A legend appears at the end of this appendix (page 48).

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 121 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*



KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 123 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 124 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

Thema Fund Ltd
Thema Coral Fund
Madoff
Madoff account – HSBC Securities Services (Luxembourg) S.A. Spec Cust Acct for Thema Wise Investments Ltd Account no FR093 per due diligence report
Funds
Trades executed
Trades exercised
Equity
T-Bills
Options
Fidelity

dl/dy

59



09-01364-smb Doc 395-4 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 125 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

Legend

A1
Custody agreement between Thema International Fund and Bermuda Trust (Dublin) Limited.
A2
Sub custody agreement between HSBC Institutional Trust Services (Ireland) and BLM Investment Securities
A3
Sub custody agreement between Bank of Bermuda (Luxembourg) S.A. and BLM Investment Securities
A4
Customer agreements with Madoff LLC.
A5
Lagoon Investment Ltd is a company of Hermes International Fund Limted
A6
Customer agreement with Madoff LLC K13 (Lagoon) signed in name of X Smith
A7
Sub custody agreement between HSSL S.A. and BLM Investment Securities
A8
Customer agreement with Madoff LLC in the name of Primeo Fund Class B.
A9
Customer agreement with Madoff LLC in the name of Herald Fund SPC.
A10
Customer agreement with Madoff LLC in the name of Alpha Prime Fund Ltd.
HSBC and related entities
Client
Process at Madoff LLC
Asset type

KPMG

***HSBC Bank plc***
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

## Appendix F – Process flows

The following pages set out the following:

- Transaction process flows
- Coloured dots indicating where a fraud or related operational risk may lie. A red dot indicates a potential fraud risk and a yellow dot, a related operational risk.

dl/dy

61



09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document Pg 127 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

Overview

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

EQUITY

Pg 130 of 132
09-01364-smb Doc 395 Filed 06/26/15 Entered 06/26/15 17:16:14 Main Document
Pg 129 of 131

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

OPTIONS

BLM establishes investment strategy
BLM initiates trade
20
22
23
Contact market counterparty (another BLM company) and executes trade
NB – FR and OR at counterparty outside of scope to review
Instructions sent to OTC counterparty
Trade settled
BLM updates accounting records
Market Counterparty makes trade with OTC counterparty
Market counterparty confirms trade with BLM
Reconciliation of stock and cash positions
Trade confirmation
BLM produces trade summary and position statement
14
Copies sent to HSBC and Client

dl/dy

64

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*

**TREASURY BILLS**

KPMG

*HSBC Bank plc*
*Bernard L Madoff Investment Securities LLC*
*8 September 2008*
*Strictly private and confidential*