# EXHIBIT G



A Division of Tremont Group Holdings, Inc.

November 1, 2007

ABN AMRO Bank N.V., London Branch
250 Bishopsgate
London EC2M 4AA

Attn: Mike Hodgson/George Turner

Dear Sirs:

This letter agreement (this "Agreement") is entered into in connection with the purchase, from time to time, by ABN AMRO Bank N.V., London Branch (or any of its affiliates which would be an acceptable investor of the Fund in accordance with the Offering Documents) ("Limited Partner") of limited partnership interests (the "Interest") in Rye Select Broad Market Fund, LP (the "Fund") pursuant to the Amended and Restated Confidential Private Placement Memorandum dated as of July 1, 2007 (the "Confidential Information Memorandum"), the subscription documents of the Fund and its Limited Partnership Agreement dated July 1, 2006(together the "Offering Documents") and in consideration of the proposed investment by Limited Partner in the Fund. Capitalized terms used and not defined herein shall have the meanings given to them in the above-referenced Limited Partnership Agreement included in the Offering Documents, or, if not contained therein, in the Confidential Information Memorandum.

Notwithstanding anything to the contrary contained in the Offering Documents, the Fund represents and warrants (as to statements), and agrees (as to forward looking information) with, Limited Partner that:

1. The Fund has disclosed to Limited Partner the material terms of each side letter (if any) or similar agreement (if any) entered into on or prior to the date hereof by the Fund or by Tremont Partners, Inc., the general partner of the Fund the "General Partner"), with any limited partners of the Fund in connection with such limited partner's subscription to, or investment in, the Fund, if such side letter or similar agreement provides any such limited partners with more favourable liquidity and redemption terms with respect to their investment in the Fund than those provided to Limited Partner under this Agreement (including for the avoidance of doubt the creation of "side-pockets" as defined below). If the Fund or (the General Partner shall in the future enter into any side letter or similar agreement (including for the avoidance of doubt the creation of side-pockets) with any investor granting any liquidity or redemption terms with respect to interests in the Fund that are in any respect more favourable than those granted to Limited Partner pursuant to this Agreement, the Fund shall promptly notify Limited Partner of such terms in writing and offer to Limited Partner the opportunity, within 15 days of notice of the offer, to have any or all such terms to apply to Limited Partner's investment in the Fund from and after the date of such election. "Side-pockets" means a separate division of interests of the Fund, to which the General Partner of the Fund may determine to allocate or attribute particular investments or assets, which it may segregate from other assets or investments of the Fund.

2. Except as disclosed to Limited Partner, there have been no administrative, civil or criminal actions, suits or proceedings (pending, on appeal or concluded) against the

RYE
Investment Management

Fund or the General Partner within the last six years that (i) are material to the operation of Fund or (ii) allege fraud or securities law violations of any kind by the General Partner or the Fund. The Fund has disclosed to Limited Partner any such claims that have been settled as well as such claims filed under errors and omissions and other insurance policies to cover liability to investors or other parties.

3. The Fund shall give Limited Partner at least thirty (30) days' prior written notice before effecting any change in the investment strategy or investment objective of the Fund that is materially different from the current investment strategy and/or investment objective, as specified in the Confidential Information Memorandum and/or the Offering Documents.

4. The Fund shall notify Limited Partner promptly (but in no event later than 10 business days after becoming aware of or receiving notice) of:

(a) (i) any lawsuits or legal proceedings in which the General Partner or the Fund are a named party, or (ii) any lawsuit or legal proceedings pending against the Fund (whether or not the General Partner is a party thereto), which may reasonably be expected to, among other things, adversely affect the Fund's or the General Partner's ability to perform its obligations under the Confidential Information Memorandum and/or the Offering Documents or in respect of the Fund;

(b) any formal investigation or request for information (other than routine examinations or routine requests for information) by the Securities and Exchange Commission or any other regulatory or administrative body with authority over the Fund or the General Partner which involve the Fund or the General Partner;

(c) if the Fund or the General Partner voluntarily files for bankruptcy protection, or if any petition is filed commencing an involuntary bankruptcy or insolvency proceeding against the Fund or the General Partner under any bankruptcy or insolvency law;

(d) the services or other benefits to be provided to the General Partner or the Fund are outside the safe harbor provisions of Section 28(e) of the Securities Exchange Act of 1934, as amended;

(e) the appointment of a new or additional General Partner to the Fund;

(f) any material variation from the statements, disclosures or terms stated in the Confidential Information Memorandum or Offering Documents;

(g) any material change of, or delegation to third parties or variation of material duties to the Fund by, the administrator (other than as provided for in the Confidential Offering Memorandum or the Offering Documents) of the Fund; and

(h) Any suspension or restriction of any nature in the calculation of Net Asset Value, redemption of interests in the Fund or restriction on redemption or transfer of interests in the Fund.

RYE
Investment Management

5. The Fund shall deliver (or caused to be delivered in the case of the Sub-Administrator) to Limited Partner the reports or information ("Reports") listed below by no later than the time period specified herein.

(a)

(i) within 3 days of any request, provide access to all statements and other documents regarding the Fund which the Sub-Administrator provides to the General Partner; and

(ii) provide copies of the Fund's Manager's monthly brokerage statements promptly as soon as such statements become available to the Administrator and, in any event, within one Business Day of the receipt of such information.

(b)

(i) the audited financial statements for the Fund promptly after they become available and, in any case, no later than 180 days after the Fund's fiscal year end;

(ii) the Net Asset Value of the Fund and the Net Assets attributed to the Fund within 15 Business Days after the end of each calendar month;

(iii) the full unaudited balance sheet of the Fund within 15 Business Days after the end of each calendar month;

(iv) the aggregate subscription and redemption activity for the Fund within 15 Business Days after the end of each calendar month;

(v) the trade activity containing all details which are available to the Sub-Administrator in relation to all transactions entered into by or on behalf of the Fund, including, but not limited to, currency, dealing date, amount traded, execution price, number of shares traded which shall be provided promptly as soon they become available and in any event within one Business Day of the receipt of such information notwithstanding that they may be incomplete in any respect;

(vi) the open position report listing all securities owned by the Fund at the end of the relevant month within 15 Business Days after the end of each calendar month;

(vii) the monthly trade activity report showing similar information as (vi) within 15 Business Days after the end of each calendar month.

(c)

(i) weekly estimates of the Net Asset Value of the Fund in respect of and for the previous week within five Business Days after the end of such week; and,

(ii) monthly estimates of the Net Asset Value of the Fund within 15 Business Days after the end of each calendar month.

Unless otherwise specified in writing by Limited Partner to the Fund, Limited Partner agrees to accept the delivery of all reports in electronic format with all email communications to Limited Partner under this Section 5 to be sent to Mike Hodgson (mike.hodgson@uk.abnamro.com) and George Turner (george.turner@uk.abnamro.com) and all facsimile communications to Limited Partner under this Section 5 to be sent to Fax No +44 207 678 7186.

Additionally, Limited Partner acknowledges the confidential and proprietary nature of the information and agrees to accept delivery with the restrictions commonly associated with digital rights management principles. Specifically, Limited Partner agrees that it will adhere to the delivery and acceptance instructions associated with each and every report provided.

6. The Fund hereby agrees that for so long as Limited Partner owns any interest in the Fund, the Fund shall not, without the prior written consent of Limited Partner (which shall not be unreasonably withheld), create, incur, assume or suffer to exist (i) any indebtedness for borrowed money (it being understood that amounts owed by the Fund to its service providers for services rendered in the ordinary course of business shall not be deemed "indebtedness for borrowed money"), or (ii) any lien, security interest, encumbrance or other charge, upon or with respect to, any of its properties or assets.

7. Upon the failure to provide information as set forth in Sections 4 or 5, or a material breach of any of the other provisions of this Agreement, the Fund will declare a special redemption date as of the end of the month, pursuant to which Limited Partner may redeem its Interest, early redemption penalties and other redemption costs will be waived and the redemption notice will be reduced from 30 calendar days to 5 business days, but all other redemption terms (including restrictions based on liquidity) as noted in the Offering Documents will apply for any special redemption date declared due to circumstances described in this Section. In addition, should Limited Partner submit a redemption request for all or a portion of the Interest following its receipt of a request by the counterparty under any swap or derivative transaction entered into by Limited Partner with the Fund, the General Partner or any of its affiliates to decrease the total exposure under such transaction in order to remedy the breach of a required ratio under such transaction, the Fund agrees to honor such request in full by no later than 5 business days following its receipt of such redemption request.

8. No sales fee or charge, placement agent fee, or other similar fee shall be charged with respect to Limited Partner's subscription or redemption for the Interest unless such fee or charge is paid in its entirety by the General Partner and such payment by the General Partner is not subject to any reimbursement by the Fund or Limited Partner.

9. The Fund and the General Partner confirm that no lock-up period or redemption fees or redemption charges will be applied to the Limited Partner's investment in the Fund.

10. The Fund agrees that it will consent to the transfer by Limited Partner of the Interest it holds in the Fund (or any portion thereof selected by Limited Partner) to (i) any



RYE
Investment Management

affiliate of Limited Partner which would be an acceptable investor of the Fund in accordance with the Offering Documents and to (ii) any party which would be an acceptable investor of the Fund in accordance with the Offering Documents, provided that in the case of clause (i) or (ii), the prior written consent of the Fund to such transfer shall be obtained, which consent shall not be unreasonably withheld or delayed.

11. The "Manager" specified in the Confidential Information Memorandum and the Cash-settled Index Swap Transaction dated as of [ ] November 2007 by and between the Fund and ABN AMRO Bank N.V., London Branch ("ABN AMRO") is Bernard L. Madoff Investment Securities LLC.

*Special Rights:*

**Enhanced Liquidity**

Subject to the powers and discretions of the General Partner with regards to the suspension, deferral or compulsory redemption or withdrawal of limited partnership interests as described in the Offering Documents, the Limited Partner may request a withdrawal and/or redemption (as applicable) of its limited partnership interest, on five Business Days prior written notification to the Administrator, as of the last Business Day of each month, or upon the occurrence of a Special Redemption Event as of the date which is five Business Days after such written notification (each a "Redemption Date"), at a withdrawal and/or redemption price (as applicable) equal to the Net Asset Value of the limited partnership interests on the corresponding Withdrawal Date. Except with the consent of the General Partner, redemption requests are irrevocable.

**Special Redemption Events**

Upon the occurrence of the following events ("Special Redemption Events"), the Limited Partner may request a withdrawal and/or redemption (as applicable) of its limited partnership interest in the Fund on five Business Days prior written notice to the Administrator:

(a) The Fund ceases to invest the majority of its assets with the Manager employing the "split strike conversion" strategy; or

(b) There is a material change in the management or control of the Manager; or

(c) There is a material change in the methodology of calculating the value of the assets of the Fund; or

(d) The Manager no longer employs the "split strike conversion" investment strategy; For the purposes of this clause, the "split strike conversion" investment strategy consists of: (i) the purchase of a group or basket of equity securities, at least 80% of which belong to the S&P100, that is highly correlated to the S&P 100 Index, (ii) the purchase of out-of-the-money S&P 100 Index put options with a notional value that approximately equals the market value of the basket of equity securities, and (iii) the sale of out-of-the-money S&P 100 Index call options with a notional value that approximately equals the market value of the basket of equity securities or maintains investments in USD cash, USD money market fund or US Treasury Securities;



(e) There is a decrease in the net asset value of the limited partnership interest of greater than 10% over a weekly period as determined by the Limited Partner in its reasonable discretion;

(f) The failure to provide for a period of ten Business Days from the date any such item is due any of the items set forth under section 5 above (except for item (a)(i));

(g) If the Manager becomes the subject of a formal investigation by a U.S. court, governmental or regulatory body or agency related to a specific breach of a U.S. securities law or regulation and the effect of such a breach would, as reasonably determined by the Calculation Agent, have a material adverse effect on the Manager and its ability to conduct its investment management business, the Limited Partner may reduce its investment by 33%.

**PROVIDED THAT:**

(i) The enhanced liquidity provisions available to the Limited Partner shall cease to apply and the Fund shall be under no obligation to recognise nor honour the same if the Fund or the General Partner has previously provided such Limited Partner with advance written notification of a Special Redemption Event sufficient to allow the Limited Partner to redeem its limited partnership interest pursuant to the standard redemption procedures of the Fund as set forth in the Offering Documents and the Limited Partner has not redeemed its limited partnership interest pursuant thereto prior to the occurrence of such Special Redemption Event;

(ii) If a Special Redemption Event occurs and the Limited Partner does not notify the Fund in writing of its intent to redeem within five Business Days of receipt of written notification from the Fund or the General Partner, or in the absence of such written notification, within five Business Days of otherwise_obtaining knowledge of such Special Redemption Event, the Limited Partner shall be deemed to have waived its right to the reduced notice period and will be deemed to have forfeited its special redemption right with respect to such Special Redemption Event; and

To the extent that the Fund or the General Partner obtains written notification of the occurrence of any Special Redemption Event from the Manager, a representative of the Manager or any regulatory judicial or governmental body (subject at all times to applicable confidentiality or other obligations, laws, rules or regulations to which the Fund and/or the General Partner must adhere), or upon the occurrence of Special Redemption Events (a) and (c) above, the General Partner shall undertake to notify all Limited Partners in writing promptly upon obtaining such notification or such occurrence, as applicable. For the avoidance of doubt, the General Partner shall be under no obligation to maintain any degree of vigilance or otherwise be responsible for investigating, monitoring or otherwise determining whether or not a Special Redemption Event has occurred and no liability shall arise in respect of the occurrence or existence of a Special Redemption Event of which the General Partner has not received written notification. For the avoidance of doubt, for the purposes of this letter agreement, the words "written notification" shall include any notification in written form, including but not limited to a letter, a notice, a fax, or an email.

RYE
Investment Management

The General Partner and the Administrator shall not be responsible for the loss of or damage to the Limited Partner or for any failure to fulfil its duties hereunder, if such loss, damage or failure shall be caused by or be directly or indirectly due to war damage, the act of any government or other competent authority, riot, civil commotion, rebellion, accident, fire, strike or other cause whether similar or not beyond the control of the General Partner and Administrator provided that the General Partner and the Administrator shall use all reasonable efforts to minimise the effect of the same.

**Payment of Redemption Proceeds**

Settlement of withdrawals and/or redemptions (as the case may be) of limited partnership interests will be subject to the redemption provisions of the Offering Documents, except where the withdrawal and/or redemption occurs pursuant to a Special Redemption Event, in which case 75% of the withdrawal and/or redemption proceeds shall be paid to the Limited Partner within ten Business Days of the Redemption Date, and a further 20% of the redemption proceeds shall be paid to the Limited Partner within thirty days from the month-end Valuation Date following the Redemption Date, with the remainder (5%) to be paid pending the validation of the withdrawal and/or redemption price by the Administrator, but in no event later than a reasonable time after the completion of the Fund's annual audit.

Other than (i) disclosure of the identity of Limited Partner as necessary for the fulfilment of the Fund's or General Partner's due diligence or anti money laundering obligations or in compliance with other normal operating procedures of the counterparties to the Fund, and (ii) disclosure of a summary of the terms of this letter to other persons or entities (without disclosure of the identity of Limited Partner and the exact wording of the terms of this letter), the Fund and the General Partner shall keep Limited Partner's investment in the Fund confidential and neither this letter nor any of its terms shall be copied, reproduced or otherwise disclosed to any person who is not an employee, affiliate or professional advisor engaged by the Fund or the General Partner, without the prior written permission of Limited Partner, or unless the Fund or the General Partner is required by applicable law or regulation, or by a court of competent jurisdiction, to disclose this letter or Limited Partner's investment in the Fund. This paragraph shall survive the termination of this Agreement for any reason.

The provisions of this Agreement are binding and enforceable on the Fund and the General Partner. No modifications or waivers of any term of this Agreement shall be effective unless agreed to in writing by the parties. This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and, except as provided herein, supersedes all prior or contemporaneous written or oral negotiations, correspondence, agreements and understandings regarding the subject matter hereof.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York (excluding the law thereof which requires the application of or reference to the law of any other jurisdiction). The parties hereto agree that any action or proceeding arising directly, indirectly, or otherwise in connection with, out of, related to, or from this Agreement, any breach hereof, or any transaction covered hereby, shall be resolved, within the City and State of New York. Accordingly, the parties consent and submit to the jurisdiction of the federal and state courts and, if they agree thereto, to any applicable arbitral body located within the City and State of New York. The parties further agree that any such action or proceeding brought by either party to enforce any right, assert any claim, or obtain any relief whatsoever in connection with this Agreement shall be brought by such party exclusively in the federal or state courts, or if they agree thereto, before any applicable arbitral body, located within the City and State of New York. The parties agree that money



damages would be an inadequate remedy for any breach of any confidentiality provisions set forth above and in the event of a breach or threatened breach of such provisions, Limited Partner and its successors and assigns may, in addition to other rights and remedies they may otherwise have, apply to any court of competent jurisdiction for injunctive or other relief in order to enforce, or prevent any violations of, such provisions, without posting a bond or other security.

Notwithstanding anything contained in this Agreement, or any documents in connection with the subscription contemplated hereby, obligations owed under this Agreement or any documents in connection with the subscription contemplated hereby to Limited Partner may be satisfied solely from the assets of the Fund and shall be nonrecourse (except to the extent of damages caused to Limited Partner by the fraud, bad faith or gross negligence of any of the following applicable person(s), as the case may be) to the Fund's affiliates, partners (general or limited), officers, members or related parties or any partners (general or limited), officers or members of each of the foregoing. For the avoidance of doubt, nothing in this paragraph shall be construed to expand any obligation or liability that the Fund or any of its affiliates, partners (general or limited), officers, members or related parties or any partners (general or limited), officers or members of any of the foregoing would otherwise have to Limited Partner.

This Agreement shall terminate upon Limited Partner ceasing to be a limited partner in the Fund.

As used in this Agreement, the term "business day" means a day of the year other than Saturday or Sunday on which banks are not authorized or required to close in New York, New York.

This Agreement may be executed in counterparts, each of which will constitute an original but which together will constitute one instrument. This Agreement may be amended only by an instrument in writing executed by each of the parties hereto. This Agreement shall bind and inure to the benefit of and be enforceable by the parties and their respective successors and permitted assigns.

Please indicate your agreement to the foregoing by signing a copy of this Agreement where indicated below and returning it to us.

RYE SELECT BROAD MARKET FUND, LP

By: Tremont Partners, Inc., its general partner

By: [signature]
Name: Mark Santero
Title: Senior Vice President

RYE
Investment Management

By: TREMONT PARTNERS, INC.

By: 
Name Rupert Allan
Title: Director

Acknowledged and agreed to this 12 day of November 2007

ABN AMRO BANK N.V., LONDON BRANCH

By: 
Name: Simon Freshfield
Title: Authorised Signatory

By: 
Name:
Title:

C J Knight
Authorised Signatory