# EXHIBIT I

**Exhibit I**

## RYE SELECT BROAD MARKET FUND, L.P.
## AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT

**AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP** of RYE SELECT BROAD MARKET FUND, L.P. (the "Partnership"), dated originally as of May 31, 1994, by and among Tremont Partners, Inc., a Connecticut corporation with an office at 555 Theodore Fremd Avenue, Rye, New York 10580, as the General Partner; the Partnership; and those Persons listed as limited partners in the books and records of the Partnership, as the Limited Partners, has been amended, dated as of July 1, 2006.

## W I T N E S S E T H :

**WHEREAS**, the Certificate of Limited Partnership for the Partnership has been filed with the Secretary of State of the State of Delaware on May 10, 1994; and

**WHEREAS**, this Agreement is being entered into to set out the rights, obligations and duties of the General Partner and the Limited Partners as Partners in the Partnership.

**NOW, THEREFORE**, the parties hereto, in consideration of their mutual covenants herein contained, hereby mutually covenant and agree as follows:

## ARTICLE I

## DEFINITIONS

The defined terms used in this Agreement shall have, unless the context otherwise requires, the meanings specified in this Article I.

**"Affiliate"** shall mean, with respect to any Partner, (i) any Person who is an officer, director, trustee, employee, stockholder or partner of such Partner; (ii) any Legal Representative, successor or assignee of such Partner or of any Person referred to in clause (i) hereof; or (iii) any Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Partner and/or any Person referred to in clauses (i) and (ii) hereof of such Person. For purposes hereof, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, by contract or otherwise.

**"Agreement"** shall mean this Agreement of Limited Partnership, as it may be amended, modified, supplemented or restated from time to time.

**"Assignee"** shall have the meaning set forth in Section 8.01(b) hereof.

**"Assignment"** shall have the meaning set forth in Section 8.01(a) hereof.

**"Average Net Asset Value"** shall mean, for any Partnership Year, the average of the Partnership's Net Asset Values on the last day of each calendar quarter during such Partnership Year.

**"Benefit Plan Investor"** shall have the meaning set forth in Section 2510.3-101(f)(2) of the regulations promulgated by the United States Department of Labor (29 CFR Part 2510) pursuant to Section 505 of the Employee Retirement Income Security Act of 1974, as amended.

**"Capital Account"** shall mean the capital account of each Partner described in Section 6.01 hereof.

**"Capital Contribution"** shall mean, for each Partner, the aggregate amount of its cash contributions to the Partnership.

**"Certificate"** shall mean the Partnership's Certificate of Limited Partnership, as originally filed with the Secretary of State of Delaware pursuant to the Delaware Act, as amended, modified, supplemented or restated from time to time.

**"Code"** shall mean the Internal Revenue Code of 1986, as amended from time to time (or any corresponding provisions of succeeding law).

**"Delaware Act"** shall mean the Delaware Revised Uniform Limited Partnership Act (6 Del. C. 17-101, et seq. ), as amended from time to time.

**"Fiscal Period"** shall mean the period beginning on the day next succeeding the last day of the immediately preceding Fiscal Period (or, in the case of the Partnership's first Fiscal Period, the date hereof) and ending on the first to occur of the following:

    (i)        any date which is the last day of a Partnership Year;

    (ii)      any date on which Capital Contributions are made to the Partnership pursuant to Section 3.02(b), Section 4.01 or Section 7.05 hereof;

    (iii)     the effective date of any withdrawals by the Partners pursuant to Section 7.03 or Section 7.04 hereof; or

    (iv)     the effective date of a liquidation of the Partnership pursuant to Section 10.01 hereof.

**"General Partner"** shall mean Tremont Partners, Inc., a Connecticut Corporation, and any other Person that becomes a general partner of the Partnership pursuant to this Agreement.

[92426-3]

"**Immediate Family**" shall mean, with respect to a General Partner which is an individual, any spouse or lineal descendant of such General Partner and any trusts created for the exclusive benefit of such General Partner and/or his spouse and/or lineal descendants.

"**Interest**" shall mean the entire ownership interest of a Partner in the Partnership, including the rights and obligations of such Partner under this Agreement and the Delaware Act.

"**Investment Advisors**" shall mean the Managers and/or the Portfolio Funds.

"**Legal Representative**" shall mean any executor, administrator, committee, guardian, conservator or trustee.

"**Limited Partner**" shall mean any Person who is a limited partner of the Partnership, as listed in the books and records of the Partnership (including any Person who becomes a Substituted Limited Partner pursuant to Section 8.01(c) hereof or an additional Limited Partner pursuant to Section 7.05 hereof), in such Person's capacity as a limited partner of the Partnership.

"**Loss**" shall mean an amount, calculated for each Fiscal Period, equal to the amount, if any, by which (i) the Partnership's Net Asset Value on the last day of the immediately preceding Fiscal Period, shall exceed (ii) the sum of (x) the Partnership's Net Asset Value on the last day of such Fiscal Period and (y) the amount of any Management Fee accrued during such Fiscal Period. For the Partnership's first Fiscal Period, the amount described in clause (i) shall equal the amount of Capital Contributions to the Partnership on its formation.

"**Management Fee**" shall mean the fee payable to the General Partner pursuant to Section 3.13 hereof.

"**Managers**" shall mean the investment advisor or investment advisors to which the Partnership allocates capital, as the case may be.

"**Memorandum**" shall mean the Amended and Restated Confidential Private Placement Memorandum and Disclosure Document of the Partnership dated as of July 1, 2006.

"**Net Asset Value**" shall have the meaning set forth in Section 7.01 hereof.

"**Partners**" shall mean the General Partner and the Limited Partners, collectively.

"**Partnership**" shall mean the limited partnership created and governed hereby, as such limited partnership may from time to time be constituted.

"**Partnership Year**" shall mean a fiscal year of the Partnership as set forth in Section 9.02 hereof.

"**Percentage Interest**" shall mean, with respect to any Partner, the percentage determined on any given date by dividing the balance in such Partner's Capital Account on the first

day of the Fiscal Period which contains such date, by the aggregate balance in all the Partners' Capital Accounts on the first day of such Fiscal Period.

"**Person**" shall mean any individual, corporation, general or limited partnership, limited liability company, joint venture, association, joint-stock company, trust or unincorporated organization.

"**Portfolio Fund**" shall mean a general or limited partnership, fund, corporation, trust, or other investment vehicle based in the United States that invests or trades in a wide range of Securities.

"**Profit**" shall mean an amount, calculated for each Fiscal Period, equal to the amount, if any, by which (i) the sum of (x) the Partnership's Net Asset Value on the last day of such Fiscal Period and (y) the amount of Management Fees accrued during such Fiscal Period, shall exceed (ii) the Partnership's Net Asset Value on the last day of the immediately preceding Fiscal Period, adjusted in each case for capital contributions and withdrawals. For the Partnership's first Fiscal Period, the amount described in clause (ii) shall equal the amount of Capital Contributions to the Partnership on its formation.

"**Reimbursable Expenses**" shall mean any fees and expenses of the Partnership payable for administrative or custodial services; occupancy expenses; routine legal, auditing and accounting fees and expenses (exclusive of fees and expenses incurred in connection with litigation or other extraordinary events); and expenses incurred in communicating with existing or prospective Limited Partners. Reimbursable Expenses shall not include brokerage commissions (including portions thereof used to acquire research, as such term is defined in Section 28(e) of the Securities Exchange Act of 1934, as such provision is interpreted by the Securities and Exchange Commission); interest; payments in lieu of interest; taxes; the Management Fee; the General Partner's administration fee, expenses directly related to a trading or investment transaction; fees and profit shares and allocations paid to investment managers of Portfolio Funds and to Investment Advisors; litigation and other extraordinary legal, auditing and accounting fees and expenses; and any other expenses not listed in the preceding sentence as a Reimbursable Expense.

"**Security**" shall mean any publicly traded or nonpublicly traded, domestic or foreign: (i) general or limited partnership interest; (ii) share of capital stock; (iii) share of beneficial interest; (iv) investment contract, preorganization certificate or subscription; (v) bond, note, debenture (whether subordinated, convertible or otherwise), trust receipt or certificate, loan, participation, account or note receivable, trade acceptance, contract or other claim, executory contract (including any notional principal contract), instrument or evidence of indebtedness; (vi) fixed and/or variable annuity; (vii) certificate of deposit; or (viii) right or option to purchase or sell any of the foregoing or any securities index, including a put or call option written by the Partnership or by another.

"**Separate Account**" means any managed account in which the Partnership places its assets for investment.

{92426-3}

**"Subscription Documents"** shall mean the subscription agreement accompanying the Memorandum, which is executed or to be executed by a Partner.

**"Substituted Limited Partner"** shall mean any Person admitted to the Partnership as a Limited Partner pursuant to the provisions of Section 8.01(c) hereof and shown as a Limited Partner on the books and records of the Partnership.

**"Withdrawal Notice"** shall mean the notice required to be delivered by a Limited Partner who desires to make a withdrawal from his or its Capital Account pursuant to Section 7.03 hereof.

**"Withdrawal Ratio"** shall mean, with respect to any Partner during any Partnership Year, the ratio of (i) the aggregate amount of withdrawals made by such Partner during such Partnership Year pursuant to Sections 7.03 and 7.04 hereof, to (ii) the sum of (x) the amount described in clause (i) hereof and (y) the balance in such Partner's Capital Account at the close of such Partnership Year.

**"Withdrawing Partner"** means any Partner who voluntarily or involuntarily makes a withdrawal from his or its Capital Account pursuant to Section 7.03 or Section 7.04 hereof.

Defined terms used in this Agreement, wherever set forth, shall apply equally to both the singular and plural forms and shall include equally both the masculine and feminine genders.

## ARTICLE II

## GENERAL PROVISIONS

2.01. Formation of Partnership. The Partners hereby agree to form the Partnership as a limited partnership pursuant to the provisions of the Delaware Act. The rights and liabilities of the Partners shall be as provided in the Delaware Act, except as otherwise expressly provided herein.

2.02. Name. The name of the Partnership shall be Rye Select Broad Market Fund, L.P. Title to all property, real, personal or mixed, owned by the Partnership, shall be held in such name. The General Partner may change the name of the Partnership upon notice to the Limited Partners.

2.03. Principal Office; Registered Agent.

(a) The Partnership shall maintain its principal office at 555 Theodore Fremd Avenue, Rye, New York 10580. The General Partner may from time to time change the location of the Partnership's principal office or establish additional offices, as the General Partner may deem necessary or desirable for the conduct of the Partnership's business.

(b) The name and address of the registered agent of the Partnership in the State of Delaware upon whom process may be served, and the address of the registered office of the

Partnership in the State of Delaware, is The Prentice Hall Corporation System, Inc., 32 Loockerman Square, Suite L-100, Dover, Delaware 19901. The General Partner may from time to time change the Partnership's registered agent or registered office in Delaware as the General Partner may deem necessary or desirable for the conduct of the Partnership's business.

2.04. Duration. The term of the Partnership shall continue through the close of business on December 31, 2013, unless the Partnership is sooner dissolved or unless its term is extended.

2.05. Investment Objective. The investment objective of the Partnership shall be to achieve long-term capital growth. The objective will be primarily achieved through investments with Managers and may also be achieved through investments with Portfolio Funds in each case which are a diversified group based in the United States that invest or trade in a wide range of equity Securities, and, to a lesser extent, other Securities. In connection with such objective, the Partnership may also at certain times invest in Securities directly or through selected Investment Advisors. The investment objective is more fully described in the Partnership's Memorandum.

2.06.        Operating Policy and Powers.

(a)        The Partnership shall be authorized and empowered to operate, and intends to operate, as a limited partnership under the Delaware Act.

(b)        Subject to the investment restrictions set forth in Section 2.07 hereof, the Partnership shall be authorized and empowered to do any and all acts necessary or appropriate to carry out the investment objective and the business of the Partnership, including without limitation, the following:

(i)        to invest with Investment Advisors, including Portfolio Funds which prohibit withdrawals for periods of up to three months; provided, however, that the principal activity or activities of such Investment Advisors shall be one or more of the activities enumerated in subsection (ii) hereof;

(ii)        to purchase, hold, sell, write, exchange, transfer, mortgage, pledge, and otherwise invest and trade in Securities and the proceeds therefrom, whether within or without the United States, and whether or not hedged;

(iii)        to exercise all rights, powers, privileges, and other incidents of ownership or possession with respect to Securities and other assets of the Partnership;

(iv)        to acquire a long or short position with respect to any Security, and make purchases or sales increasing, decreasing or liquidating such position or changing from a long position to a short position or from a short position to a long position, without any limitation as to the frequency of such fluctuation in such positions or as to the frequency of the changes in the nature of such positions;

(v)        to acquire Securities which may not be resold in the absence of an effective registration statement relating thereto under the Securities Act of 1933, or under an exemption from such registration requirements, and to hold such Securities for investment;

(vi)       to invest or deposit the Partnership's funds, pending investment or distribution to Partners, in one or more checking or savings accounts, money market mutual funds, short term investment funds, or other taxable or nontaxable investments;

(vii)      to acquire Securities on margin; borrow or raise moneys and obtain letters of credit; issue, accept, or endorse, and execute promissory notes, drafts, bills of exchange, warrants, bonds, debentures (including promissory notes or other evidences of indebtedness which pay interest measured by reference to the Partnership's profits or to any index) from time to time without limitation as to amount or manner and time of repayment; and secure the payment of such or other obligations of the Partnership by mortgage upon, or hypothecation or pledge of, all or part of the property of the Partnership whether at such time owned or thereafter acquired;

(viii)     to enter into custodian agreements with banks or securities brokerage firms (whether or not affiliated with the Partnership or the General Partner), open, maintain, and close bank and brokerage accounts, and draw checks or other orders for the payment of money or the delivery of instruments;

(ix)       to delegate discretionary and other authority to manage Partnership accounts to one or more Investment Advisors or other qualified Persons, in the General Partner's sole and absolute discretion;

(x)        to engage independent attorneys, accountants, advisors, consultants, or such other Persons as the General Partner may deem necessary or advisable;

(xi)       to maintain for the conduct of Partnership affairs one or more offices within or without the State of Delaware and in connection therewith to rent or acquire office space, engage personnel, and do such other acts as may be deemed advisable or necessary in connection with such offices and personnel;

(xii)      to enter into, make and perform all contracts and other undertakings and engage in all other activities and transactions, as the General Partner may deem necessary, advisable, or appropriate for carrying out the purposes of the Partnership; and

(xiii)     to exercise any and all other powers which may be necessary, suitable or convenient to implement the foregoing purposes, policies and powers of the Partnership, including those granted to limited partnerships under the Delaware Act.

2.07. Investment Restrictions.

(a)        The following investment restrictions of the Partnership may not be changed without the approval of Limited Partners holding at least 67% of the Percentage Interests held by the Limited Partners:

(i)        the Partnership will invest no more than 20% of the value of its total assets (at the time of investment) in the Securities of any one issuer;

(ii)       the Partnership will not purchase real estate or interests in real estate, except that the Partnership may purchase and sell securities that are secured by real estate or interests therein and may purchase securities issued by companies that invest or deal in real estate; and

(iii)      the Partnership will not invest in any Portfolio Fund that does not permit its investors to withdraw all or any portion of their interests on at least a monthly basis.

(iv)       The Partnership will not, directly or indirectly, invest in or acquire any commodity interests or any options and futures for currency interests.

The restriction set forth in clause (i) above shall not apply to investments in obligations of any government, or any government agency or instrumentality, or to investments in certificates of deposit, time deposits, short-term commercial paper, shares of money market funds or bankers' acceptances.

2.08.      Further Assurances. Each Limited Partner shall, at the request of the General Partner, execute such other documents, certificates, instruments and other writings as the General Partner shall deem necessary or appropriate in order to effectuate the provisions of this Agreement.

2.09.      Qualification. The Partnership shall use its best efforts to qualify to do business in each jurisdiction where its activities make such qualification necessary.

## ARTICLE III

## GENERAL PARTNER

3.01.  Identity of the General Partner. Tremont Partners, Inc. is the sole General Partner of the Partnership. The amount of Capital Contributions made by the General Partner shall be set forth in the books and records of the Partnership.  Additional General Partners may be admitted to the Partnership only with the consent of the General Partner and the consent of Limited Partners holding at least 67% of the Percentage Interests.

3.02.      General Partner's Contributions.

(a)        The General Partner shall not sell, assign or otherwise dispose of any portion of its Interest or elect to withdraw any portion of its Capital Account pursuant to Section

7.03 hereof, if such actions would result in the failure of the General Partner to maintain such Percentage Interest.

(b)      Except as provided in Section 3.02(a) hereof, the General Partner shall not be required or obligated to make any additional Capital Contributions to the Partnership.

3.03.      Management and Control.  Subject to the terms of this Agreement, the management, operation and control of the business of the Partnership shall be vested completely and exclusively in the General Partner, and the General Partner shall have the right, power and authority, on behalf of the Partnership and in its name, to exercise all rights, powers and authority of a general partner under the laws of Delaware. The General Partner may enter into, execute, amend, supplement, acknowledge and deliver any and all contracts, agreements or other instruments, including, but not limited to, contracts with one or more Investment Advisors, banks, trust companies or administrators for the performance of services to the Partnership, including the investment and reinvestment of all or part of the Partnership's assets, the execution of portfolio transactions and the performance of any or all administrative functions. The General Partner may also appoint agents to perform such duties on behalf of the Partnership as the General Partner may deem desirable.

3.04.      Other Activities of the General Partner. The General Partner shall devote such time as it shall determine to be necessary for the efficient conduct of the Partnership's business. The General Partner may engage or participate in other businesses or ventures, whether or not of the same nature as and competing with the business of the Partnership, and each Limited Partner consents to any such activities. No Limited Partner shall be entitled to any profits which the General Partner or any of its Affiliates shall derive from any businesses or ventures other than the Partnership, whether or not such businesses or ventures are of the same nature as and competing with the business of the Partnership. The General Partner and its Affiliates shall in no way be prohibited by this Agreement from buying or selling Securities for their own account, including Securities which are the same as those held by the Partnership; provided, however, that neither the General Partner nor its Affiliates shall buy Securities from, or sell Securities to, the Partnership.

3.05.      Restrictions on Authority of the General Partner.

(a)      The General Partner shall have no authority, without the approval of all the Limited Partners, to:

(i)      do any act in contravention of this Agreement;

(ii)      do any act that would make it impossible to carry on the ordinary business of the Partnership;

(iii)      possess any of the Partnership's property or assign, pledge or hypothecate the Partnership's rights in specific property for other than the purposes of the Partnership; or

(iv)        perform knowingly any act, unless specifically required by the terms of this Agreement, that would subject any Limited Partner to liability as a general partner in any jurisdiction.

(b) The General Partner shall have no authority, without the approval of Limited Partners holding at least 67% of the Percentage Interests held by the Limited Partners, to change the investment objective of the Partnership as specified in Section 2.05 hereof.

(c) In the event that the requisite approval of Limited Partners shall be obtained under this Section 3.05, the General Partner shall amend this Agreement to the extent necessary to reflect any such action. Nothing in this Section 3.05 shall preclude a dissolution of the Partnership in accordance with this Agreement.

(d) In the event that there shall be more than one General Partner of the Partnership, all checks or similar instruments drawn on any of the Partnership's accounts in excess of $10,000 shall require the signature of at least two of the General Partners.

3.06.        Voting of Securities. Any and all rights pertaining to any Securities held by the Partnership, including any rights to vote such Securities, shall be vested exclusively in the Partnership and may be exercised by action of the General Partner. No Limited Partner, acting alone or with one or more other Limited Partners, shall have any such rights with respect to such Securities.

3.07.        Termination of Status of a General Partner.

(a)        The status of a General Partner shall terminate, and, except as provided in Section 3.07(c) hereof, the Partnership shall be dissolved if (i) the General Partner, if not an individual, shall be dissolved or otherwise shall terminate its existence; (ii) the General Partner shall withdraw from the Partnership; (iii) the General Partner, if an individual, shall die or be adjudicated incompetent; (iv) the General Partner shall become bankrupt; or (v) the General Partner shall otherwise cease to be a general partner of the Partnership under the Delaware Act.

(b)        A General Partner may withdraw from the Partnership at any time upon at least six months' prior notice to the Partnership.  The General Partner shall have no liability to the Partnership or any Partner by reason of its withdrawal from the Partnership in accordance herewith.

(c)        Notwithstanding the foregoing, the Partnership shall not be dissolved upon the termination of the status of a General Partner if, within 90 days after the date of such termination of status, there shall be a remaining General Partner or General Partners who elect to continue the business of the Partnership. If the business of the Partnership shall be continued in accordance with this Section 3.07(c), the General Partner whose status shall have terminated:

(i)        shall be and remain liable for all obligations and liabilities incurred by such General Partner during his or its membership in the Partnership;

(ii)       shall be free of any obligations or liabilities incurred on account of the activities of the Partnership from and after the time as of which he or it ceased to be a General Partner; and

(iii)      shall hold his or its Interest in the Partnership, from and after the date of the termination of his or its status, as a Limited Partner.

3.08.     Actions by the General Partner. In the event that there shall be more than one General Partner of the Partnership, all actions required to be taken by the General Partner pursuant to this Agreement shall require the unanimous consent of all such General Partners.

3.09.     General Partner's Liability.

(a)       The General Partner shall not be liable, responsible or accountable in damages or otherwise to any Limited Partners or the Partnership for any act or omission of such General Partner, except for acts or omissions constituting willful misfeasance, bad faith, gross negligence or a reckless disregard of duty.

(b)       The General Partner shall not be personally liable to any Limited Partner or the Partnership by reason of any change in any tax laws, or in interpretations of the tax laws, as they apply to the Partnership or the Partners whether the change shall occur through legislative, judicial or administrative action.

3.10.     Assignment. The General Partner may not assign or otherwise transfer any portion of such General Partner's Interest without the prior written consent of the Partnership and Limited Partners with a 51% Percentage Interest.

3.11.     No Agency. Nothing in this Agreement shall be construed as establishing the General Partner as an agent of any Limited Partner except as such General Partner may act as an agent of the Partnership in accordance with this Agreement.

[92426-3]

3.12.      Indemnification.

(a)        The Partnership shall, subject to Section 3.12(b) hereof, to the extent permitted under applicable law, indemnify each Covered Person (as such term is hereinafter defined) against all liabilities and expenses, including, but not limited to, amounts paid in satisfaction of judgments, in compromise, or as fines and penalties, and reasonable counsel fees, incurred in connection with the defense or disposition of any action, suit or other proceeding, whether civil or criminal, before any court or administrative or legislative body, in which such Covered Person may be or may have been involved as a party or otherwise, or with which such Covered Person may be or may have been threatened, by reason of such Covered Person's past or present performance of services for the Partnership, except with respect to any matter as to which such Covered Person shall have been finally adjudicated in a decision on the merits in any such action, suit or other proceeding to be liable to the Partnership or its Partners by reason of willful misfeasance, bad faith, gross negligence or reckless disregard of such Covered Person's duties. Expenses, including reasonable counsel fees incurred by any such Covered Person (but excluding amounts paid in satisfaction of judgments, in compromise, or as fines or penalties), may be paid from time to time by the Partnership in advance of the final disposition of any such action, suit or proceeding upon receipt of an undertaking by or on behalf of such Covered Person to repay amounts so paid if it shall be ultimately determined that indemnification of such expenses is not authorized hereunder, provided (i) such Covered Person shall provide security for such undertaking, (ii) the Partnership shall be insured against losses arising by reason of such Covered Person's failure to fulfill his or its undertaking or (iii) independent legal counsel, in a written opinion, shall determine, based on a review of readily available facts, that there is reason to believe such Covered Person ultimately will be entitled to indemnification.

(b)        As to the disposition of any action, suit or proceeding (whether by a compromise payment, pursuant to a consent decree or otherwise) without an adjudication or a decision on the merits by a court, or by any other body before which the proceeding shall have been brought, that a Covered Person is liable to the Partnership or its Partners by reason of willful misfeasance, bad faith, gross negligence, or reckless disregard of duties, indemnification shall be provided if a written opinion of independent legal counsel, based upon a review of readily available facts, shall have been obtained, to the effect that such indemnification would not protect such Covered Person against any liability to the Partnership or its Partners to which such Covered Person would otherwise be subject by reason of willful misfeasance, bad faith, gross negligence, or reckless disregard of duties. Any indemnification pursuant to this Section 3.12(b) shall not prevent the recovery from any Covered Person of any amount paid to such Covered Person as indemnification in accordance with this Section 3.12(b) if such Covered Person subsequently shall be adjudicated by a court of competent jurisdiction to be liable to the Partnership or its Partners by reason of willful misfeasance, bad faith, gross negligence, or reckless disregard of duties.

(c)        The rights of indemnification provided herein shall be severable and shall not be exclusive of or affect any other rights to which any Covered Person may be entitled by contract or otherwise under law. Nothing contained in this Section 3.12 shall affect the power of the Partnership to purchase and maintain liability insurance on behalf of any Persons. As used in this Section 3.12, "Covered Person" shall mean the General Partner, any employee or agent of the Partnership (including any Person who shall serve at the Partnership's request as a director, officer,

partner, agent or trustee of another organization in which the Partnership shall have any interest as a shareholder, creditor or otherwise) and shall also include any shareholders, officers, directors, employees and agents of the General Partner if the General Partner is not an individual. The term "Covered Person" shall include the Legal Representatives and any heirs or distributees of a Covered Person. Notwithstanding the provisions of this Section 3.12 no Covered Person shall be exculpated from any liability arising from losses caused by his, her or its gross negligence or willful malfeasance or resulting from the violation of any federal or state securities law.

3.13.    Management Fees and administration fees. The Partnership shall pay the General Partner a monthly Management Fee for management and advisory services provided to the Partnership by the General Partner at the annual rate of one percent (1.0%) (.083% per month) of the Partnership's Net Asset Value as of the end of each month during the Partnership Year. The fee paid to the General Partner by the Partnership shall be paid in arrears. The General Partner, in its sole discretion, may waive payment of any or all Management Fees. The Partnership shall also pay the General Partner a monthly administration fee for administrative services provided to the Partnership by the General Partner at the annual rate of half of one percent (0.50%) (0.042% per month) of the Partnership's Net Asset Value as of the end of each month during the Partnership Year. The fee paid to the General Partner shall be in arrears. The General Partner may, in its sole discretion, waive payment of any or all administration fees.

3.14.    Expenses; Reimbursement of Expenses.

(a)    The General Partner and its Affiliates shall be entitled to reimbursement from the Partnership for all amounts expended by any of them on behalf of the Partnership in connection with the organization of the Partnership and accounting, legal, printing and clerical expenses, registration and filing fees of any kind, and mailing and courier expenses.

(b)    The Partnership shall pay all expenses incurred in connection with the Partnership's business, including the Management Fee, and any expenses of maintaining the Partnership's registered office in Delaware; provided, however, that the General Partner shall reimburse the Partnership, within sixty (60) days after the close of each Partnership Year, for any Reimbursable Expenses incurred by the Partnership during such Partnership Year in excess of 0.75% of the Partnership's Average Net Asset Value for such Partnership Year. Reimbursable Expenses mean any fees and expenses of the Partnership payable for administrative or custodial services; occupancy expenses; unaffiliated third party administration fees, routine legal, auditing and accounting fees and expenses (exclusive of fees and expenses incurred in connection with litigation or other extraordinary events); and expenses incurred in communicating with existing or prospective Limited Partners. Reimbursable Expenses do not include brokerage commissions (including portions thereof used to acquire research, as such term is defined in Section 28(e) of the Securities Exchange Act of 1934, as such provision is interpreted by the Securities and Exchange Commission); interest; payments in lieu of interest; taxes; the Management Fee; the General Partner's administration fee; expenses directly related to a trading or investment transaction; fees and profit shares and allocations paid to the Investment Advisor or Investment Advisors; litigation and other extraordinary legal, auditing and accounting fees and expenses; and any other expenses not listed in the preceding sentence as a Reimbursable Expense.

3.15.      Form ADV   The Partnership acknowledges receipt of the General Partner's Form ADV Part II, a copy of which is attached to the Memorandum as an Exhibit.

## ARTICLE IV

## LIMITED PARTNERS

4.01.      Admission of Limited Partners; Capital Contributions.

(a)      The Partnership is authorized to offer, issue, and sell Interests to such number of Limited Partners as will not cause the Partnership to be deemed an "investment company" for purposes of the Investment Company Act of 1940, or a "publicly traded partnership" for purposes of Section 7704 of the Code. Except to the extent provided herein, the manner of the offering of such Interests, the terms and conditions under which subscriptions for such Interests will be accepted (including the establishment of minimum Capital Contribution requirements), the manner of and conditions to the sale of Interests to subscribers therefor, and the admission of such subscribers as Limited Partners shall be as set forth in the Memorandum and/or the Subscription Documents. All capital contributions shall be made in cash unless the General Partner, in its sole discretion, agrees to accept other assets as Capital Contributions.

(b)      The General Partner shall maintain in the records of the Partnership, a schedule setting forth the name, address and Capital Contributions of each Limited Partner.

(c)      No Partner shall have the right to require partition of the Partnership's property or to compel any sale or appraisal of the Partnership's assets. Except as otherwise provided in Section 7.03 hereof, no Partner shall have the right to demand a return of his or its Capital Contribution. The General Partner shall not be personally liable for the return of any Capital Contributions, it being expressly understood that any such return shall be made solely from the Partnership's assets. No Limited Partner shall have the right to demand or receive property other than cash for his or its Interest. No interest shall be paid on any Capital Contribution.

4.02.      No Power to Control Business. A Limited Partner shall have no right to participate in and shall take no part in the control of the Partnership's business and shall have no right or authority to act for or bind the Partnership.

4.03.      Liability of Limited Partners. The liability of the Limited Partners shall be limited in accordance with the Delaware Act. Except to the extent required under the Delaware Act, no Limited Partner, in such capacity, shall have any obligation to make any further Capital Contributions to the Partnership or to contribute to the capital of the Partnership the amount of any deficit balance in his or its Capital Account upon the liquidation of his or its Interest in the Partnership.

## ARTICLE V

## MEETINGS AND VOTING; CONSENTS

5.01.    Meetings of Limited Partners.

(a)    Actions requiring the vote of the Limited Partners under this Agreement may be taken at a meeting of the Limited Partners, which shall be held at a location designated by the General Partner.

(b)    Meetings of the Limited Partners for the purpose of taking any action that the Limited Partners shall be required or permitted to take under this Agreement may be called by the General Partner or by Limited Partners holding 10% or more of the aggregate Percentage Interests. In the event that Limited Partners representing 10% or more of the aggregate Percentage Interests shall call such a meeting, the General Partner shall, within 10 days thereafter, issue a notice of the meeting.

(c)    Written notice stating the place, day and hour of a meeting of the Limited Partners and the record date therefor shall be mailed to each Limited Partner entitled to vote at the meeting at his or its last known post office address as shown on the books and records of the Partnership not less than 10 days or more than 60 days before the date of the meeting. Failure to receive notice of a meeting on the part of any Limited Partner shall not affect the validity of any act or proceeding at the meeting. Only matters set forth in the notice of a meeting may be voted on by the Limited Partners at a meeting. The presence in person or by proxy of Limited Partners holding more than 50% of the aggregate Percentage Interests held by the Limited Partners as of the record date shall constitute a quorum at any meeting. In the absence of a quorum, the General Partner may adjourn a meeting to a time or times as determined by the General Partner without additional notice to the Limited Partners. Unless otherwise provided in this Agreement or required by law, all actions of the Limited Partners shall require the voting of Limited Partners holding a majority of the Percentage Interests present, in person or by proxy, at a meeting at which a quorum is present.

5.02.    Voting Lists. The Partnership shall establish a record date pursuant to Section 5.03 hereof to determine eligibility to vote at any meeting and the Percentage Interest which each Limited Partner shall be entitled to vote thereat, and shall maintain a list setting forth the name of each Limited Partner and such Limited Partner's Percentage Interest. Such list shall be available for examination by any Limited Partner at the principal office of the Partnership during regular business hours, and a copy of the list may be obtained by each Limited Partner.

5.03.    Record Dates. The General Partner may set in advance a date for determining the Limited Partners entitled to notice of and to vote at any meeting. A record date with respect to voting shall be not less than 10 nor more than 60 days prior to the date of the meeting. All Assignees of Interests shown on the records of the Partnership on the record date shall be entitled to vote at a meeting, so long as they shall have become Substituted Limited Partners pursuant to Section 8.01(c) hereof prior to the date of the meeting.

5.04.    Consents.  Any action of the Limited Partners which is permitted to be taken at a meeting of the Partners may be taken without a meeting if consents in writing, setting forth the action taken, are signed by Limited Partners holding the Percentage Interests required in order to approve such action.

## ARTICLE VI

## CAPITAL ACCOUNTS AND ALLOCATIONS

6.01.    Capital Accounts.   A Capital Account shall be established and maintained for each Partner. Each such Capital Account shall be credited with (i) such Partner's Capital Contributions and (ii) the amount of Profit allocated to such Partner pursuant to Section 6.03(a) hereof. Each such Capital Account shall be debited with (i) the amount of money distributed to such Partner by the Partnership, (ii) the fair market value of property distributed to such Partner by the Partnership net of liabilities secured by such distributed property that such Partner is considered to assume or take subject to under Section 752 of the Code, (iii) the amount of Loss allocated to such Partner pursuant to Section 6.03(b) or Section 6.03(d) hereof; and (iv) the amount of any accrued Management Fee allocated to such Partner pursuant to Section 6.03(c) or Section 6.03(d) hereof.  Each Partner's Capital Account shall be otherwise adjusted as required under Treasury Regulation Section 1.704-1(b)(2)(iv).  In addition, upon a distribution in kind of Partnership property, the Capital Accounts of the Partners shall be increased or decreased, as the case may be, as though such Partnership property had been sold for an amount equal to its fair market value and gain or loss which would have been recognized were the property actually sold had been allocated to the Partners pursuant to this Article VI hereof.  The Capital Account of a Substituted Limited Partner shall include the portion allocable to him or it of the Capital Account of the Partner from whom he or it acquired his or its Interest, as such Capital Account existed on the effective date of the transfer of such Interest to such Substituted Limited Partner.

6.02.    Distributions.  No distributions of cash or other assets will be made by the Partnership except for distributions in accordance with Section 10.01(c) hereof upon a dissolution of the Partnership. Notwithstanding the foregoing, a Partner shall be entitled to withdraw all or a portion of his or its Capital Account in accordance with the provisions of Section 7.03 hereof.

6.03.    Allocations of Profit and Loss.  Profit and Loss of the Partnership shall be allocated among the Partners as follows:

(a)    Profit for each Fiscal Period shall be allocated:

(i)    first, to the General Partner, in proportion to and to the extent of the aggregate amount of Loss and the aggregate amount of Management Fee, if any, previously allocated to the General Partner pursuant to Section 6.03(d) hereof and not offset by previous allocations of Profit pursuant to this Section 6.03(a)(i); and

[92426-3]

(ii)        thereafter, to the Partners in proportion to their respective Percentage Interests on the first day of such Fiscal Period.

(b)        Loss for each Fiscal Period shall be allocated among the Partners in proportion to their respective Percentage Interests on the first day of such Fiscal Period.

(c)        The Management Fee and administration fee accrued during each Fiscal Period shall be allocated among all the Partners, other than the General Partner, in proportion to such Partners' respective Percentage Interests on the first day of such Fiscal Period.

(d)        Notwithstanding Section 6.03(b) and (c) hereof, Loss and the accrued Management Fee shall not be allocated to any Limited Partner to the extent such allocation would create (or increase) a negative Capital Account balance for such Limited Partner. Any Loss or Management Fee which cannot be allocated to a Limited Partner pursuant to this Section 6.03(d) shall instead be allocated to the General Partner.

6.04.        Allocations of Taxable Income and Taxable Loss. At the end of each Partnership Year, the Partnership's taxable income or loss and each item of income, gain, loss, deduction or credit for Federal income tax purposes shall be determined and allocated among the Partners in the following amounts and priorities:

(a)        First, all taxable loss or items of deduction attributable to the Management Fee shall be allocated among the Partners in the same manner as the Management Fee shall have been allocated pursuant to Sections 6.03(c) and (d) hereof;

(b)        Next, the General Partner may, in the General Partner's sole and absolute discretion, make special allocations of income and gain or deduction and loss to any Partner or former Partner who received one or more payments in withdrawal from his or its Capital Account pursuant to Section 7.03 or Section 7.04 hereof during the Partnership Year, in order to reduce or eliminate the difference between (i) the aggregate Profit or Loss allocated to such Partner for such Partnership Year and all prior Partnership Years, multiplied by such Partner's Withdrawal Ratio for such Partnership Year, and (ii) the aggregate taxable income or loss allocated to such Partner in all prior Partnership Years, multiplied by such Partner's Withdrawal Ratio for such Partnership Year;

(c)        Next, the General Partner may, in the General Partner's sole and absolute discretion, make special allocations of income and gain or deduction and loss among the Partners in such amounts and in such proportions as will, to the maximum extent practicable, reduce or eliminate the difference between (i) the aggregate Profit or Loss allocated to each Partner for the Partnership Year and all prior Partnership Years, and (ii) the sum of the total taxable income or loss allocated to such Partner during the Partnership Year pursuant to Section 6.04(b) hereof, and the total taxable income or loss allocated to such Partner in all prior Partnership Years; and

(d)        Thereafter, among the Partners in the same manner as Profit or Loss is allocated pursuant to Section 6.03 hereof.

6.05.      Determinations by the General Partner.   All matters concerning tax allocations among the Partners, tax elections (except as may otherwise be required by any income tax laws) and accounting procedures not expressly and specifically provided for by the terms of this Agreement shall be determined in good faith by the General Partner on a basis which is equitable among the Partners, and such determination shall be final and conclusive as to all of the Partners. The General Partner shall not be liable to any Partner for any consequences under the tax laws of any jurisdiction arising from any reallocation of the Partnership's tax items by any authorities of any such jurisdiction or by reason of the General Partner having made, revoked, or failed to make or revoke, any tax election.

## ARTICLE VII

### WITHDRAWALS AND ADDITIONAL CONTRIBUTIONS

7.01.      Net Asset Value.  The Net Asset Value of the Partnership shall be determined on the last day of each Fiscal Period. The Net Asset Value of the Partnership as of any such date shall equal the value of the assets of the Partnership (determined in accordance with Section 7.02 hereof) minus its liabilities, determined as of the close of business, prior to any withdrawals or additional Capital Contributions, on such date. For this purpose:

(a)      The assets of the Partnership as of any date shall be deemed to include:

(i)      All cash on hand or on deposit, including any interest accrued thereon;

(ii)      All bills, demand notes, and accounts receivable (including proceeds of Securities sold but not delivered);

(iii)      All Securities owned or contracted for by the Partnership;

(iv)      All stock dividends, cash dividends, and cash distributions receivable by the Partnership (provided that the Partnership may make adjustments with regard to fluctuations in the market value of Securities caused by trading ex-dividend, ex-rights, or by similar practices);

(v)      All interest accrued on any interest-bearing Securities owned by the Partnership, except to the extent that the same is included or reflected in the valuation of such Security;

(vi)      The unamortized organization expenses and similar costs of the Partnership;

(vii)      All interests maintained with the Investment Advisors; and

(viii)      All other assets of every kind and nature, including prepaid expenses.

include:

    (b)        The liabilities of the Partnership as of any date shall be deemed to

    (i)        All outstanding loans, bills and accounts payable;

    (ii)        All accrued or payable expenses (including investment advisory fees, custodian fees and the Management Fee);

    (iii)        The current market value of all short sale obligations; and

    (iv)        All other liabilities.

For purposes of determining the amount of the Partnership's liabilities as of any date, the General Partner may, in its sole and absolute discretion, treat estimates of expenses that are incurred on a regular or recurring basis over yearly or other periods as accruing in equal proportions over any such period.

7.02.        <u>Valuation of Assets.</u> For all purposes of this Agreement, including the determination of the Net Asset Value of the Partnership and the value of the Capital Account of any Partner, the assets of the Partnership shall be valued on any date according to the following:

(a)        Securities which are traded on a national securities exchange shall be valued at their last reported sales prices on such date on the national securities exchange on which such Securities are principally traded or on a consolidated tape which includes such exchange, whichever shall be selected by the General Partner, or, if there are no sales on such date on such exchange or consolidated tape, at the mean between the last "bid" and "asked" price at the close of trading on such date on the largest national securities exchange on which such Securities are traded (or on the consolidated tape if "bid" and "asked" prices are reported on the consolidated tape). However, in no case shall a convertible security be valued at less than its conversion value, as determined by the closing price of the underlying security into which it is convertible.

(b)        Securities not traded on a national securities exchange, but traded over the counter shall be valued at the mean between the "bid" and "asked" price on such date, as reported by the National Association of Securities Dealers Automated Quotations System (NASDAQ), or if such prices are not reported by NASDAQ, as reported by the National Quotation Bureau, Inc.; provided, however, that the valuation of options or notional principal contracts not traded on a national securities exchange may be determined from any reliable source selected by the General Partner.

In calculating the value of an open position with respect to any Security, any commission and any accrued transaction fee that would be incurred in liquidating such position may be taken into account.

(c)        Short-term money market instruments and bank deposits shall be valued at cost plus accrued interest to date.

(d)      If the asset being valued is an interest in a Portfolio Fund, the value of such interest shall be (i) the valuation of such interest as determined in accordance with the audited financial statements of said Portfolio Fund as of such date, or (ii) if audited financial statements are not available, the valuation of such interest as determined in accordance with either the unaudited financial statements of said Portfolio Fund as of such date, or an estimate made by said Portfolio Fund or the manager thereof. Without limiting the generality of the foregoing, it is understood and agreed that the Partnership may rely on such valuations for all purposes hereunder, notwithstanding that they may be based on the Partnership's investment in said partnership or entity, rather than the fair market value of its interest.

(e)      If on such date, the exchange or market herein designated for the valuation of any given asset is not open for business, the valuation of such asset shall be determined as of the last preceding date on which such exchange or market was open for business. If a Security could not be liquidated on the date of valuation, due to the operation of daily limits or other rules of the exchange or market designated for the valuation thereof, the settlement price on the first subsequent day on which the Security could be liquidated or such other value as the General Partner may deem fair and reasonable, shall be the basis for determining the value thereof for that day.

(f)      The foregoing valuations may be modified by the General Partner, in the General Partner's sole and absolute discretion, if and to the extent that the General Partner shall determine that such modifications are advisable in order to reflect restrictions upon marketability or other factors affecting the value of assets. Without limiting the generality of the foregoing, the valuation of an asset by the General Partner may reflect the amounts invested by the Partnership in such asset, notwithstanding that such amounts may not represent the market value of such asset. All determinations of values by the General Partner pursuant to this Section 7.02 shall be final and conclusive as to all Partners.

7.03.     Optional Withdrawals from Capital Accounts.

(a)      Subject to provisions for the payment and discharge when due of all of the Partnership's liabilities and the establishment of reserves for contingencies as the General Partner may determine, a Partner shall be entitled to withdraw, as of December 31, 1994 and thereafter as of the end of any calendar month (the "withdrawal date"), its entire Capital Account or any portion thereof by giving 30 days' prior written notice to the General Partner (the "Withdrawal Notice"), subject to the right of the General Partner, in the General Partner's sole and absolute discretion, to accept shorter notice.

(b)      A Withdrawing Partner shall be entitled to receive an amount equal to the lesser of the amount set forth in the Withdrawal Notice or such Partner's Capital Account at the close of the Fiscal Period in which said withdrawal is effective. Except to the extent provided herein, the Partnership shall, to the extent reasonably practicable, distribute not less than 90% of the amount or estimated amount withdrawn within 10 days following the withdrawal date. Notwithstanding the foregoing, if the Partnership is able to effect a withdrawal from Portfolio Funds or liquidate other investments of the Partnership as of the effective date of a withdrawal, but shall not receive withdrawn amounts or liquidation proceeds by the expiration of such 10 day period, payment of such amounts or proceeds to the Withdrawing Partner may be delayed until receipt thereof by the

[92426-3]

Partnership. Final settlement of the full amount of such distribution shall be made as promptly as practicable after completion of the Partnership's audit for the Partnership Year in which the withdrawal is effective.

      7.04.      Required Withdrawals.

      (a)      The General Partner may, in the General Partner's sole discretion, require any Limited Partner who provides a Withdrawal Notice pursuant to Section 7.03(a) hereof to withdraw his or its entire Capital Account, if, after giving effect to such withdrawal, such Limited Partner's Capital Account would be less than $500,000. Any such withdrawal shall be effective as of the last day of the Partnership Year in which the Withdrawal Notice shall have been given to the Partnership, and the General Partner shall provide notice to such Limited Partner of the General Partner's intention to exercise rights under this Section 7.04(a) at least 5 days prior to such effective date. In addition, the General Partner may for any reason, in its sole discretion, require the withdrawal of all or any portion of a Limited Partner's Capital Account at any time, upon 5 days' prior notice specifying the effective date for such withdrawal. Among the reasons for which the General Partner may require such withdrawal are: if the General Partner shall determine that the continued participation of such Limited Partner might cause the Partnership or any Partner to violate any law, rule or regulation, or cause the Partnership to register under the Investment Company Act of 1940, or if litigation is commenced or threatened against the Partnership or any Partner, arising out of, or relating to, the participation of such Limited Partner. The Partnership shall distribute 90% of any amount withdrawn pursuant to this Section 7.04(a) within 10 days after the withdrawal date, and the balance as promptly as practicable after completion of the annual audit for the Partnership Year during which such withdrawal was effective.

      (b)      If the General Partner shall determine that 25% or more of the Percentage Interests (exclusive of Percentage Interests held by the General Partner, the Partnership's Investment Advisors or any of their Affiliates) are held by Benefit Plan Investors at any time, the General Partners may require such Benefit Plan Investors to withdraw a sufficient portion of their Capital Accounts to cause the Percentage Interests held by Benefit Plan Investors to be reduced below such 25% level. In addition, the General Partner may, at any time, require any Limited Partner to withdraw all or any portion of such Limited Partner's Capital Account, if and to the extent that he shall determine such redemption to be necessary to prevent the Partnership's assets from being classified as "plan assets" for purposes of the Employee Retirement Income Security Act of 1974, as amended, and the Code. Any withdrawals pursuant to this Section 7.04(b) shall be made ratably among the Benefit Plan Investors or other Limited Partners who are required to withdraw amounts from their Capital Accounts in proportion to their respective Percentage Interests. The provisions of Section 7.04(a) hereof relating to the effective date of a withdrawal and the timing of distributions of amounts withdrawn, shall apply to all withdrawals pursuant to this Section 7.04(b).

      7.05.      Additional Capital Contributions.  Subject to the limitation on the number of Partners set forth in Section 4.01(a) hereof, the General Partner may, without the consent of any Limited Partner, cause the Partnership to accept additional Capital Contributions from Limited Partners or other Persons who meet the suitability criteria for Limited Partners set forth in the Subscription Documents. If a Person making Capital Contributions pursuant to this Section 7.05 is not a Limited Partner, such purchaser shall agree to be bound by the terms of this Agreement, and

shall be admitted to the Partnership as an additional Limited Partner without the consent of any Limited Partner. Any Capital Contributions pursuant to this Section 7.05 shall be made and shall be effective on the first day of any calendar month during any Partnership Year.

## ARTICLE VIII

### TRANSFERABILITY OF LIMITED PARTNERS' INTERESTS

8.01.   Assignments, Sales or Other Dispositions by Limited Partners.

(a)   No Limited Partner shall have the right to assign, transfer, sell, encumber, pledge or otherwise dispose of all or any portion of his or its Interest in the Partnership (an "Assignment"), unless:

(i)   the General Partner shall be satisfied that the purported Assignment complies with and does not violate any relevant provisions of law, including the Delaware Act, will not subject the Partnership, the General Partner or any Affiliates of the General Partner or of the Partnership to additional regulatory requirements and will not cause a dissolution of the Partnership or cause the Partnership to be classified other than as a partnership for Federal income tax purposes;

(ii)   such Assignment shall be made to a Person who meets the suitability criteria for Limited Partners set forth in the Subscription Documents; and

(iii)   the General Partner shall have given prior written consent to such Assignment, which consent shall not be unreasonably withheld.

Each Limited Partner agrees that he or it will, upon the request of the General Partner, execute such certificates or other documents and perform such acts as such General Partner shall deem appropriate to preserve the limited liability of the Limited Partners under the laws of the jurisdictions in which the Partnership is doing business after an Assignment by that Limited Partner. Any purported Assignment in violation of the provisions of this Section 8.01(a) shall be null and void and shall not bind, or be recognized by, the Partnership. Each Limited Partner agrees that he will, prior to the time of, and as a condition to, the General Partner's consent to an Assignment, pay all expenses, including attorneys' and accountants' fees, incurred by the General Partner and the Partnership in connection with such Assignment.

(b)   A Person who shall have received from a Limited Partner all or a portion of such Limited Partner's Interest, in compliance with Section 8.01(a) hereof (an "Assignee"), shall be entitled to receive allocations of Profit and Loss attributable to the assigned Interest from and after the date on which the General Partner shall consent to the Assignment, but shall have no other rights of a Limited Partner hereunder (including, without limitation, rights to information provided or made available to the Limited Partners and accounting, inspection and voting rights provided herein or by law) until such time as such Assignee shall have been admitted as a Substituted Limited Partner pursuant to the provisions of Section 8.01(c) hereof. All rights withheld from an Assignee

hereunder shall remain rights of the Limited Partner who made the Assignment (the "Assignor") until such time as such Assignee shall have been be so admitted. Notwithstanding the foregoing, the Partnership and the General Partner shall be entitled to treat the Assignor as the sole and absolute owner of the assigned Interest in all respects, and shall incur no liability to any Person for distributions or allocations (or for transmittal of reports and notices required hereunder to be given to Limited Partners) to such Assignor, made prior to the date an Assignee shall be admitted to the Partnership as a Substituted Limited Partner.

(c)     Upon compliance with Section 8.01(a) hereof, an Assignee shall become a Substituted Limited Partner to the extent of the assigned Interest, only upon compliance with the following additional conditions:

(i)     the General Partner shall have consented in writing to such substitution, which consent may be granted or withheld in the sole discretion of the General Partner;

(ii)     the Assignee shall have executed such instruments as the General Partner shall have reasonably deemed necessary or desirable to admit such Assignee as a Substituted Limited Partner (including, without limitation, a counterpart of this Agreement, an amendment to the Certificate, if required, and such other documents as may be necessary under the Delaware Act); and

(iii)     the Assignor shall have paid or caused to have been paid to the Partnership all costs and expenses incurred by the General Partner or the Partnership in connection with such Assignment and substitution (including, but not limited to, attorneys' and accountants' fees).

(d)     An Assignee who shall not have become a Substituted Limited Partner pursuant to Section 8.01(c) hereof and who shall desire to make a further Assignment of an Interest shall be subject to all the terms and conditions contained in this Article VIII applicable to Assignments by Limited Partners.

(e)     Each Limited Partner and each Assignee shall indemnify and hold harmless the Partnership, the General Partner, every other Limited Partner and any Affiliate of the foregoing (each, an "Indemnified Person") against all losses, claims, damages, liabilities, costs and expenses (including legal or other expenses incurred in investigating or defending against any such loss, claim, damage or liability, or any judgments, fines and amounts paid in settlement), joint or several, to which such Indemnified Persons may become subject by reason of or arising from (i) any Assignment made by such Limited Partner in violation of this Article VIII and (ii) any misrepresentation or misstatement of facts or omission to state facts by such Limited Partner or such Assignee to the General Partner or the Partnership in connection with any Assignment.

8.02.     Involuntary Transfers by a Limited Partner.

(a)     In the event of the death, incompetency, dissolution, termination, insolvency or bankruptcy of any Limited Partner, the successors, assigns, heirs, distributees or Legal Representatives, as the case may be, of such Limited Partner shall be deemed Assignees of such

[92426-3]

Limited Partner's Interest (without the requirement of obtaining the prior written consent of the General Partner). However, no such Assignee shall become a Substituted Limited Partner except in compliance with Section 8.01(c) hereof.

(b)       The death, incompetency, dissolution, termination, insolvency or bankruptcy of a Limited Partner shall not dissolve the Partnership, and each Limited Partner hereby authorizes the General Partner, pursuant to the power of attorney granted in Section 11.05 hereof, to execute such instruments, documents and certificates as the General Partner shall deem necessary or appropriate or as are required by the Delaware Act to continue the valid existence of the Partnership.

8.03.       Prohibition Against Withdrawals.  Except as provided in Sections 7.03 and 7.04 hereof, Limited Partners may not withdraw from the Partnership prior to the Partnership's dissolution, except with the consent of the General Partner, which consent may be granted or withheld in the sole discretion of the General Partner.

## ARTICLE IX

## REPORTS TO PARTNERS

9.01.       Records and Accounting.  The General Partner shall cause the Partnership to maintain proper and complete records and books of account of the business of the Partnership, including a list containing each Partner's name and address, at the Partnership's principal place of business. Any Partner, or such Partner's duly authorized representatives, shall be entitled, at such Partner's own expense, to a copy of the list of names and addresses of the Partners. Each Partner or such Partner's duly authorized representatives may inspect any of the Partnership's books of account, records, reports and other papers relating to the Partnership, at all reasonable times for any purpose reasonably related to such Partner's Interest.

9.02       Fiscal Year.  The taxable year of the Partnership shall be its fiscal year, which shall end on December 31.

9.03.       Statements.

(a)       Within 90 days after the end of each Partnership Year, the General Partner shall cause to be delivered to each Person who was a Partner at any time during such Partnership Year, (i) a statement of such Person's Capital Account as of the close of such Partnership Year (after any withdrawals or additional Capital Contributions pursuant to Sections 7.03, 7.04 and 7.05 hereof) and (ii) an annual report containing financial statements of the Partnership, including, without limitation, a statement of assets, liabilities and partners' capital as of the end of such Partnership Year and statements of operations and changes in partners' capital for such Partnership Year. Such financial statements shall be audited by a firm of independent public accountants.

(b)       Within 45 days after the end of each calendar quarter (other than the last quarter) of each Partnership Year, the General Partner shall cause to be delivered to each Person

[92426-3]

who was a Partner at any time during such quarter, a quarterly report containing unaudited financial statements for the period covered.

9.04.    Tax Information.    As soon as reasonably practicable after the end of each Partnership Year, the General Partner shall cause to be delivered to each Person who was a Partner at any time during such Partnership Year, all information necessary for the preparation of such Person's income tax returns, including, without limitation, a statement showing such Person's share of the Partnership's taxable income, taxable loss, and other tax items for such Partnership Year. Each Partner agrees to execute and deliver to the Partnership any document or to supply to the Partnership any information which shall be required for the Partnership to comply with the tax laws, regulations or administrative pronouncements of any jurisdiction.

9.05.    Other Reports.    The General Partner shall promptly notify each Limited Partner of any material lawsuit commenced by or against the Partnership, any material investigation undertaken of the Partnership or any transaction requiring the approval of the Partners.

9.06.    Tax Matters Partner.    The General Partner is hereby appointed the "Tax Matters Partner" of the Partnership for all purposes pursuant to Sections 6221-6233 of the Code. As Tax Matters Partner, the General Partner shall (i) furnish to each Partner or Assignee affected by an audit of the Partnership's income tax returns a copy of each notice or other communication received from the Internal Revenue Service or applicable state authority, (ii) keep each such Partner or Assignee informed of any administrative or judicial proceeding, as required by Section 6223(g) of the Code, and (iii) allow each such Partner and Assignee an opportunity to participate in all such administrative and judicial proceedings.

## ARTICLE X

## DISSOLUTION OF THE PARTNERSHIP

10.01.    Dissolution.

(a)    The Partnership shall be dissolved:

(i)    on December 31, 2013, unless extended by the General Partner for an additional period of up to two years upon the approval of Partners holding at least 67% of the Partnership Interests;

(ii)    upon a vote to dissolve the Partnership by Limited Partners holding at least 67% of the Partnership Interests held by the Limited Partners at a meeting called for such purpose;

(iii)    upon the 91st day following the termination of a General Partner's status as such pursuant to Section 3.07(a) hereof, if there shall be at least one remaining General Partner at the time of such termination of status, unless such remaining General Partner or

General Partners shall elect to continue the Partnership's business in accordance with Section 3.07(c) hereof;

      (iv)      upon the termination of the last remaining General Partner's status as such pursuant to Section 3.07(a) hereof; or

      (v)      upon a dissolution required by operation of law.

Dissolution of the Partnership shall be effective on the date on which the event giving rise to the dissolution shall occur, but the Partnership shall not terminate until all necessary requirements under the Delaware Act shall have been complied with and the assets of the Partnership shall have been distributed in accordance with Section 10.01(c) hereof.

      (b)      Upon the dissolution of the Partnership, the General Partner or a liquidator appointed by the General Partner (or, if no General Partner shall remain, a liquidator appointed by Limited Partners holding a majority of the Percentage Interests) shall proceed to wind up the affairs of the Partnership and to liquidate its assets.

      (c)      As soon as practicable after the effective date of dissolution of the Partnership, but in no event later than 90 days after such date, the Partnership's assets (except for amounts reserved pursuant to Section 10.02 hereof) shall be distributed in the following manner and order:

      (i)      the claims of all creditors of the Partnership, other than the General Partner, and the expenses of dissolution and winding up, shall be paid and discharged or adequately reserved against;

      (ii)      the claims of the General Partner as a creditor of the Partnership shall be paid and discharged or adequately reserved against; and

      (iii)      the remaining assets of the Partnership shall be distributed to the Partners in cash and/or in kind, as the General Partner or the liquidator, if appointed, may determine, in each case pro rata (as nearly as practicable in the case of distributions in kind) in accordance with the Capital Accounts of the Partners.

      (d)      If there shall be any pending transaction or claim by or against the Partnership as to which the interest or obligation of any Partner cannot, in the judgment of the General Partner, be ascertained, the value thereof or probable loss therefrom may be excluded from the valuation of assets for purposes of computing such Partner's Capital Account upon liquidation. No amount shall be paid or charged to any such Partner's Capital Account in respect of any such transaction or claim until its final settlement or such earlier time as the General Partner shall determine. The Partnership may retain from any sums due any such Partner an amount which the General Partner shall estimate to be sufficient to cover the share of such Partner in any probable loss or liability on account of such transaction or claim. The General Partner shall, at the earliest practicable time, distribute any assets excluded or retained to each Partner from whom such assets or proceeds shall have been withheld.

(e)       In the event that the foregoing order of distribution shall not be permitted under the Delaware Act, distributions shall be made as closely as legally possible to the order of distribution required hereunder. If certain assets cannot be liquidated, the General Partner or the liquidator, if appointed, may place such assets in a liquidating trust for the benefit of all Partners.

(f)       The death, legal disability, bankruptcy, insolvency, dissolution, or withdrawal of any Limited Partner shall not result in the dissolution or termination of the Partnership. The legal representative of such Limited Partner may cause such Limited Partner's Capital Account to be withdrawn in accordance with this Agreement.

10.02.   <u>Amount Reserved and Pending Claims.</u>

(a)       If there shall be any pending transaction or claim by or against the Partnership as to which the interest or obligation of any Partner therein cannot, in the judgment of the General Partner, be then ascertained, the value thereof or probable loss therefrom may be excluded from the valuation of assets for purposes of computing such Partner's Capital Account upon liquidation. No amount shall be paid or charged to any such Partner's Capital Account in respect of any such transaction or claim until its final settlement or such earlier time as the General Partner shall determine. Moreover, the Partnership may retain from any sums due any such Partner, an amount which the General Partner shall estimate to be sufficient to cover the share of such Partner in any probable loss or liability on account of such transaction or claim.

(b)       The General Partner shall, at the earliest practicable time, distribute any assets (or proceeds realized from the sale thereof) excluded or retained pursuant to Section 10.02(a) hereof to each Partner from whom such assets or proceeds shall have been withheld.

## ARTICLE XI

## MISCELLANEOUS

11.01.   <u>Binding Agreement.</u>   Except as otherwise specifically provided to the contrary in this Agreement, this Agreement shall be binding upon and shall inure to the benefit of the Partners and their respective heirs, distributees, successors, assigns and Legal Representatives.

11.02.   <u>Notices.</u>   All notices hereunder shall be in writing and shall be given: (a) if to the Partnership, at the address of its principal office as set forth in Section 2.03 hereof, with a copy to Tannenbaum, Helpern, Syracuse & Hirschtritt, 900 Third Avenue, New York, New York 10022, Attention: Michael G. Tannenbaum, Esq., or such other address or addresses as to which the Partners shall have been given notice; (b) if to the General Partner, at the address for such General Partner set forth on the first page of this Agreement, or such other address or addresses as to which the Partnership and the other Partners shall have been given notice; and (c) if to any Limited Partner, at the most recent address set forth in the books and records of the Partnership, or such other address as to which the Partnership shall have been given notice. Any notice shall be deemed to have been given if personally delivered or sent by mail or by commercial courier or delivery service or by

telegram, telefax, telex or facsimile transmission and will be deemed received when actually received, except that notice sent by telegram, telefax, telex or facsimile transmission will be deemed received when actually sent.

11.03.    Counterparts. This Agreement may be executed in counterparts, each of which may be executed by less than all the parties, with the same effect as if the parties executed one instrument as of the day and year first above written; provided, however, that the several counterparts, in the aggregate, shall have been executed by all the parties hereto.

11.04.    Entire Agreement; Amendments.

(a)    This Agreement, together with the Subscription Documents, sets forth the entire understanding of all the parties hereto with respect to the subject written hereof and shall not be amended without the consent of the General Partner and of Limited Partners holding at least 67% of the Percentage Interests held by the Limited Partners; provided, however, that amendments may be made to this Agreement, from time to time, by the General Partner, without the consent of any other Partner, (i) to amend any provision of the Agreement and/or the Certificate which requires any action to be taken by or on behalf of the General Partner or the Partnership pursuant to requirements of the Delaware Act if the provisions of the Delaware Act are amended, modified or revoked so that the taking of such action is no longer required, (ii) to add to the representations, duties or obligations of the General Partner, or to surrender any right or power granted to the General Partner herein, for the benefit of the Limited Partners (provided that any such surrender of a right or power would not adversely affect the limited liability of the Limited Partners), (iii) to take such action and make such amendments hereto in light of existing laws, rules and regulations, or changes therein, applicable or relating to the Partnership or its investment activities, as the General Partner shall deem necessary to permit the Partnership to continue in existence or to enable the Partnership to achieve the purposes for which it was formed, (iv) to cure any ambiguity, to correct any mistake, or to correct or supplement any provision herein or in the Certificate which may be inconsistent with any other provision herein or therein, or to correct any printing, stenographic or clerical errors or omissions which will not be inconsistent with the provisions of this Agreement or the status of the Partnership as a partnership for tax purposes, and (v) to make any changes hereto intended for the benefit of the Partnership as a whole, or which are not materially adverse, taken as a whole, to the Interest of any Limited Partner or group of Limited Partners; provided, further, that, notwithstanding any other provision herein, any amendment which (A) shall not result in the uniform treatment of all the Limited Partners as a group under the terms of this Agreement, (B) shall alter the rights of the Partners with respect to allocations to or distributions from Capital Accounts, (C) shall alter the rights of the Partners upon liquidation of the Partnership, (D) shall increase the authority or diminish the obligations of any Partner or group of Partners (except as provided in clause (ii) above) or (E) shall alter the provisions of this Section 11.04, shall require the unanimous approval of the Partners. The General Partner shall cause to be promptly furnished to each Partner a copy of each amendment to this Agreement except for amendments relating to Assignments and admissions and withdrawals.

(b)    In the event that this Agreement shall be amended pursuant to this Section 11.04, the General Partner shall amend the Certificate to reflect such change if they shall

deem such amendment to be necessary and shall make any other filings or publications required or desirable to reflect such amendment.

11.05.    Power of Attorney. Each Limited Partner hereby irrevocably constitutes and appoints the General Partner as his or its true and lawful representative and attorney-in-fact, with full power and authority in his or its name, place and stead, to make, execute, acknowledge, deliver, swear to, record, file and publish with respect to the Partnership (i) any and all instruments, documents and certificates (including the Certificate and any amendments thereto) which, from time to time, may be required by the laws of Delaware or any other jurisdiction in which the Partnership shall determine to do business, or any political subdivision or agency thereof, and to take any other action which the General Partner may deem necessary or appropriate, in the General Partner's sole discretion, to execute, implement and continue or terminate the valid and subsisting existence and business operations of the Partnership and (ii) any amendments to and restatements of this Agreement and the Certificate as such amendments and restatements are contemplated hereunder, including, without limitation, amendments for the purpose of admitting any Person as a Partner and effecting the withdrawal of any Partner from the Partnership to the extent permitted hereunder or any other instruments relating to any such amendments. The foregoing grant of authority is a special power of attorney coupled with an interest, shall be irrevocable and shall continue in full force and effect. The special power of attorney may be exercised on behalf of a Limited Partner by a facsimile signature of the General Partner acting as attorney-in-fact for all of the Limited Partners. The special power of attorney shall survive the Assignment by the Limited Partner of the whole or any portion of his or its Interest, except that in a case in which the Assignee of the whole Interest of a Limited Partner shall have furnished a power of attorney and shall have been approved by the General Partner for admission to the Partnership as a Substituted Limited Partner, this power of attorney shall survive the Assignment for the sole purpose of enabling the General Partner to execute, acknowledge and file any instrument necessary to effect the substitution and shall thereafter terminate. In addition, the special power of attorney shall survive the withdrawal of all of a Limited Partner's Capital Account as provided in Sections 7.03 and 7.04 hereof, respectively, for the sole purpose of enabling the General Partner to execute, acknowledge and file any instrument necessary to effect the withdrawal of the Person as a Limited Partner.

11.06.    Applicable Law. This agreement shall be governed by, and construed in accordance with, the laws of Delaware.

11.07.    Consent to Jurisdiction. The Partners hereby consent to the jurisdiction of the courts of the State of Delaware as the exclusive forum for the resolution of any and all disputes arising under this Agreement and further agree that service of process in connection with any such dispute shall be deemed good and sufficient if made by any method appropriate under the laws of the State of Delaware.

11.08.    Withholding. The General Partner shall have the right to deduct and withhold from any redemption or liquidation proceeds payable hereunder, any applicable taxes that the General Partner shall determine in good faith are required by law to be withheld with respect to such payments.

[92426-3]

11.09.     Severability.   If any sentence, paragraph or Section of this Agreement shall be declared by a court of competent jurisdiction to be void, such sentence, paragraph or Section shall be deemed severed from the remainder of the Agreement and the balance of the Agreement shall remain in effect.

11.10.     Captions.   Article and Section titles and captions contained in this Agreement are inserted only as a matter of convenience and for reference. The titles and captions in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

11.11.     Insurance.   The General Partner may procure and maintain insurance concerning the Partnership's activities in the amounts and covering the risks as may be deemed appropriate in the judgment of the General Partner.

11.12.     Custodian.   All assets of the Partnership (other than cash) may be held by a custodian or custodians, and may be registered in the name of the Partnership or that of a custodian or nominee.

11.13.     Actions by Written Consent; Consent by Silence; Certain Consent. All actions, votes or consents required or permitted to be taken by the Limited Partners will be taken by the written consent of Limited Partners holding in aggregate not less than the minimum Percentage Interest specified herein as to the particular action, vote or consent. Notwithstanding the foregoing, for purposes of obtaining any such consent as to any matter proposed by the General Partner, the General Partner may, in the notice seeking consent of Limited Partners, require a response within a specified period (which will not be less than fifteen days) and failure to give the General Partner written notice of opposition to the proposed action within that period will constitute a vote and consent to approve the proposed action. Except as otherwise expressly provided in the proposal for an action, that action will be effective immediately after the required signatures have been obtained or, if applicable, the expiration of the period within which responses were required, if that requirement was imposed and there were not votes cast against such action in the amount necessary to prevent the action from becoming effective.

11.14.     Confidentiality.   Each Limited Partner hereby agrees that it shall not employ the General Partner's investment strategy or divulge to third parties, other than any such Limited Partner's legal and accounting advisors, the identity of any Security held by the Partnership and the General Partner's trading strategy with respect to any positions in any such Limited Partner's Capital Account or Capital Accounts (as the case may be).  Furthermore, each Limited Partner understands and agrees that it does not have the right to know the names or identities of the other Limited Partners.

Notwithstanding the foregoing, the Partnership, the General Partner and each Limited Partner (and any employee, representative or other agent of the Partnership, the General Partner or any Limited Partner) may disclose to any and all persons, without limitation of any kind, the U.S. federal income tax treatment and tax structure of the transactions contemplated by the Partnership's Memorandum. However, any such information relating to the U.S. federal income tax treatment or tax structure is required to be kept confidential to the extent necessary to comply with any applicable U.S. federal or state securities laws. For this purpose, tax treatment and tax

structure shall not include (i) the identity of the Partnership, the General Partner or any Limited Partner (or, in each case, any affiliate thereof), (ii) any investment or transaction entered into by the Partnership, the General Partner or any Limited Partner (or, in each case, any affiliate thereof), (iii) any performance information relating to the Partnership, the General Partner or any Limited Partner (or in each case, any affiliate thereof), (iv) any performance or other information relating to previous funds or investments sponsored by the General Partner, or (v) other nonpublic business or financial information (including, without limitation, the amount of any fees, expenses, rates or payments) that is not relevant to an understanding of the U.S. tax treatment of the transactions contemplated by the Partnership's Memorandum.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands as of the date first set forth above.

**General Partner:**

Tremont Partners, Inc.

By:_____

    Name:

    Title:

**Limited Partner:**

Each person who shall sign a Limited Partner Signature Page in the form attached in the Subscription Agreement and who shall be accepted by the General Partner to the Partnership as a Limited Partner.

[92426-3]