**UNITED STATES BANKRUPTCY COURT
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>                           Plaintiff-Applicant, <br> v. <br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>                           Defendant. | Adv. Pro. No. 08-1789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br> BERNARD L. MADOFF, <br>                           Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC <br>                           Plaintiff, <br> v. <br> CAROL NELSON, individually and as joint tenant, and STANLEY NELSON, individually and as joint tenant, <br>                           Defendants. | Adv. Pro No. 10-04377 (SMB) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC <br>                           Plaintiff, <br> v. <br> CAROL NELSON, <br>                           Defendant. | Adv. Pro No. 10-04658 (SMB) |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO TRUSTEE'S MOTION *IN LIMINE* NUMBER 2, TO ADMIT THE FORMER TESTIMONY OF FRANK DIPASCALI**

**CHAITMAN LLP**
465 Park Avenue
New York, New York 10022
Phone & Fax: (888) 759-1114
Helen Davis Chaitman
Gregory M. Dexter
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com

*Attorneys for Defendants Carol Nelson and Stanley Nelson*

{00042346 3}

# TABLE OF CONTENTS

                                                    **Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT .................................................................................................................................... 3

    I.     DiPascali's former testimony is inadmissible under FRE 804(b)(1) ............................ 3

            A.    The convicted securities-fraud-felon Co-Conspirators are not
                   the Nelsons' predecessors in interest ................................................................. 3

            B.    The lack of actual cross-examination of DiPascali at the
                   Criminal Trial evidences the lack of similar motive ......................................... 6

            C.    None of the Co-Conspirators had a motive to cross-examine
                   DiPascali on whether Madoff purchased securities and
                   allocated them to customers .............................................................................. 9

    II.    FRE 807 is inapplicable .............................................................................................. 10

    III.   DiPascali's former testimony should be excluded under FRE 403 ............................ 12

CONCLUSION ................................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acme Printing Ink Co. v. Menard, Inc.*,
    812 F. Supp. 1498 (E.D. Wis. 1992) ................................................................................. 5

*Batoh v. McNeil-PPC*,
    167 F. Supp. 3d 296 (D. Conn. 2016) .............................................................................. 10

*Burkhart v. H.J. Heinz Co.*,
    19 N.E.3d 877 (Ohio 2014) ............................................................................................... 5

*Clay v. Johns-Manville Sales Corp.*,
    722 F.2d 1289 (6th Cir. 1983) ........................................................................................... 5

*Construction Technology, Inc. v. Cybermation, Inc.*,
    1996 WL 376601 (S.D.N.Y. Apr. 30, 1996) ..................................................................... 5

*Federal Housing Finance Agency v. Nomura Holding America, Inc.*,
    2015 WL 714747 (S.D.N.Y. Feb. 19, 2015) .................................................................. 5, 6

*Hoffman v. Palmer*,
    129 F.2d 976 (2d Cir. 1942), *aff'd Palmer v. Hoffman*, 318 U.S. 109 (1943) ................ 11

*Horne v. Owens-Corning Fiberglas Corp.*,
    4 F.3d 276 (4th Cir. 1993) ................................................................................................. 5

*Jacobson v. Deutsche Bank, A.g.*,
    206 F. Supp. 2d 590 (S.D.N.Y. 2002) ................................................................... 2, 10, 12

*Lloyd v. American Export Lines, Inc.*,
    580 F.2d 1179 (3d Cir. 1978) ......................................................................................... 4, 5

*Parsons v. Honeywell, Inc.*,
    929 F.2d 901 (2d Cir. 1991) ....................................................................................... 10, 11

*Robinson v. Shapiro*,
    646 F.2d 734 (2d Cir. 1981) ............................................................................................ 11

*Schering Corp. v. Pfizer Inc.*,
    189 F.3d 218 (2d Cir. 1999) .............................................................................................. 2

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
    71 F.3d 119 (4th Cir. 1995) ............................................................................................... 5

08-01789-cgm    Doc 18979    Filed 09/05/19    Entered 09/05/19 17:24:26    Main Document
Pg 4 of 16

*United States v. DiNapoli*,
   8 F.3d 909 (2d Cir. 1993) .................................................................................. *passim*

*United States v. McDonald*,
   837 F.2d 1287 (5th Cir. 1988) ........................................................................................7

*United States v. Salerno*,
   505 U.S. 317 (1992) .................................................................................................3, 5

**Statutes**

His act ..............................................................................................................................11

**Other Authorities**

Fed. R. Evid. 403 ............................................................................................................12

Fed. R. Evid. 803 ............................................................................................................11

Fed. R. Evid. 804(b)(1) .............................................................................................. *passim*

Fed. R. Evid. 804(b)(1)(B) ........................................................................................4, 8, 9

Fed. R. Evid. 807 ..................................................................................................2, 10, 11

Fed. R. Evid. 807(a)(4) ...................................................................................................12

Fed. R. Evid. 807(a)(b) ...................................................................................................10

H.R.Rep. No. 650, 93rd Cong., 1st Sess. 15 (1973), Report of the House
   Committee on the Judiciary ......................................................................................3, 4

S.Rep. No. 1277, 93rd Cong., 2d Sess. 28 (1974) ............................................................4

Wright & Miller, Federal Practice & Procedure ...................................................3, 4, 5, 7

Defendants Carol Nelson and Stanley Nelson (the "Nelsons") respectfully submit this supplemental memorandum of law in opposition to the Trustee's motion *in limine* number 2, to admit the former testimony of Frank DiPascali.

## **PRELIMINARY STATEMENT**

The Trustee wants this Court to admit the testimony of confessed securities-fraud felon Frank DiPascali from the criminal trial of Madoff's co-conspirators (the "Co-Conspirators").[1] To do so under Federal Rule of Evidence ("FRE") 804(b)(1), the Trustee must show that the Co-Conspirators were the Nelsons' "predecessors in interest," and they had a "substantially similar motive" to cross-examine DiPascali. The Trustee cannot satisfy either of the two elements of this test. It would be absurd to argue that convicted securities-fraud felons who confiscated the Nelsons' life savings were the Nelsons' "predecessors in interest." Instead, the Trustee pretends this element of the Rule does not exist and he improperly collapses the two elements into one. The Trustee does not even attempt to show that the Co-Conspirators were the Nelsons' "predecessors in interest."

With respect to the second element, *i.e.*, a substantially similar motive, this is also a showing that the Trustee cannot make. This Court has already correctly observed, "there doesn't appear to be motive to cross-examine him on whether or not the treasury purchases were real or actually allocated." [May 8, 2019 Hearing Tr. at 22:19-25]. As the Court recognized, the Co-Conspirators were on trial for securities fraud and "there was no reason to make that distinction between treasur[y] bills and equity securities as there may be in this case." [*Id.* at 22:25-23:4]; [*see also id.* at 26:5-8] (The Court: "I probably agree with you that the distinction between treasury

---

[1] *U.S. v. Boneventre*, 10-cr-228 (S.D.N.Y.) (the "Criminal Trial").

{00042346 3 }                                                  1

trades and equity trades is not something that the defense counsel had a motive to cross-examine him on.").

Whether or not any particular customer's clawback exposure should be reduced because Madoff purchased treasuries and allocated those treasuries to the customer's account is not a topic that the Co-Conspirators would have been expected to cross-examine DiPascali on. And lacking any motive to cross-examine DiPascali on this topic, the Co-Conspirators did not cross-examine him on this topic. The Trustee submitted to the Court with his supplemental briefing six pages of testimony from the cross-examination and redirect of DiPascali for the purpose of demonstrating, apparently, that the Co-Conspirators did have such motive. [*See Picard v. Nelsons*, 10-04377,[2] ECF No. 164-2]. But these pages of testimony actually show the opposite: the Co-Conspirators never elicited any meaningful testimony whatsoever from DiPascali regarding Madoff's purchase of treasuries. The six pages of testimony are discussed in more detail *infra*, and they are meaningless.

The Trustee also asks this Court to admit DiPascali's testimony under FRE 807, which is the residual hearsay exception. That Rule, however, admits only "especially trustworthy" hearsay, *Jacobson v. Deutsche Bank, A.g.*, 206 F. Supp. 2d 590, 595 (S.D.N.Y. 2002), which DiPascali's is not. It would be particularly inappropriate to admit DiPascali's testimony under this Rule because it is being offered to generally refute the accuracy of very specific, well-documented, corroborated, actual trades that occurred on numerous occasions. The Nelsons' defense is about the details, and the blanket admission of general, uncorroborated hearsay to rebut very specific factual proofs would raise all of the classic hearsay dangers of faulty perception, memory, and narration. *See Jacobson*, 206 F. Supp. 2d at 595; *see also Schering Corp. v. Pfizer Inc.*, 189 F.3d

---

[2] Unless otherwise stated, all ECF citations are to the docket in 10-04377.

{00042346 3}                                    2

218, 232 (2d Cir. 1999) (classic hearsay risks are "'distorted perception, imperfect memory, and ambiguity of utterance'") (citation omitted).

## ARGUMENT

### I. DiPascali's former testimony is inadmissible under FRE 804(b)(1)

#### A. The convicted securities-fraud-felon Co-Conspirators are not the Nelsons' predecessors in interest

The Trustee seeks to admit DiPascali's former testimony under FRE 804(b)(1). Former testimony is hearsay and is generally only admissible under that Rule if it is offered against the "same party" who participated in the former proceeding where the testimony was developed. *See* FRE 804(b)(1). However, there is "a narrow exception to the 'same party' requirement." Wright & Miller, Federal Practice & Procedure ("Wright & Miller"), § 6975.

Under that narrow exception, former testimony may be admitted against a party whose (a) "predecessor in interest" (b) had a similar motive and opportunity to develop the testimony. *See* FRE 804(b)(1). That exception is to be interpreted narrowly because "it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party." H.R.Rep. No. 650, 93rd Cong., 1st Sess. 15 (1973), Report of the House Committee on the Judiciary; *see also* Wright & Miller, § 6975 ("Congress inserted the phrase [predecessor in interest] to restrict Rule 804(b)(1)'s application to a narrower set of cases . . . . .").

Whether certain confessed felons were the Nelsons' "predecessors in interest" and whether they "had a similar motive and opportunity to develop" DiPascali's testimony are two separate elements that must both be strictly satisfied before former testimony is admitted under FRE 804(b)(1). *See United States v. Salerno,* 505 U.S. 317, 321 (1992) ("Nothing in the language of Rule 804(b)(1) suggests that a court may admit former testimony absent satisfaction of each of the

{00042346 3}                                                3

Rule's elements."); Wright & Miller, § 6975 ("predecessor in interest" and "similar motive and opportunity" are two distinct elements that must be satisfied). The Co-Conspirators were not the Nelsons' "predecessors in interest," and they did not have a similar motive to cross-examine DiPascali during their Criminal Trial.

The advisory committee's proposed, but rejected, draft of FRE 804(b)(1) was narrowed by Congress when the Rule was written into law. The rejected draft would have allowed prior testimony to be admissible if the party against whom it is offered or a person "with motive and interest similar" to his had an opportunity to examine the witness. H.R.Rep. No. 650, 93rd Cong., 1st Sess. 15 (1973), Report of the House Committee on the Judiciary. However, the House "amended the rule to apply only to a party's predecessor in interest." S.Rep. No. 1277, 93rd Cong., 2d Sess. 28 (1974). The Trustee attempts to equate "predecessor in interest" with "substantially similar motive," by collapsing these two elements into one, [Trustee's Br. at 5], but they are two independent and necessary elements. The Trustee's position is based on the exact draft of the rule that the House and Senate rejected when FRE 804(b)(1) was adopted. The Trustee is required to satisfy both elements of FRE 804(b)(1)(B), which he cannot do. *See* Wright & Miller, § 6975 ("After all, if 'similar motive' were all that was required, the 'predecessor in interest' language would be surplusage and the Congressional amendment of the originally-proposed rule rendered meaningless.").

In order to obscure the true law in the Second Circuit, the Trustee cites to bad authorities from other jurisdictions. For example, the Trustee cites *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir. 1978), but *Lloyd* improperly equates "predecessor in interest" with a "previous party having like motive to develop the testimony about the same material fact." This is contrary to the text of FRE 804(b)(1) and was later held to be incorrect by the Supreme Court in

{00042346 3}                                                                  4

*United States v. Salerno*, 505 U.S. 317 (1992). *Lloyd* has rightly been criticized for improperly collapsing the two elements. *See, e.g.*, *Acme Printing Ink Co. v. Menard, Inc.*, 812 F. Supp. 1498, 1526 (E.D. Wis. 1992); *Burkhart v. H.J. Heinz Co.*, 19 N.E.3d 877, 885 (Ohio 2014).

The Trustee also cites *Construction Technology, Inc. v. Cybermation, Inc.*, 1996 WL 376601 (S.D.N.Y. Apr. 30, 1996), which case also improperly collapses the two elements by relying on bad authority. The Court in *Cybermation* cites to *Lloyd*, as well as precedent from the Fourth and Sixth Circuits. The Fourth Circuit's approach has been criticized. *See* Wright & Miller, § 6975 (criticizing *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 128 (4th Cir. 1995) and *Horne v. Owens-Corning Fiberglas Corp.*, 4 F.3d 276, 282 (4th Cir. 1993) because "'similar motive' . . . [is] the Proposed Rule 804(b)(1) that Congress rejected").[3] And the Sixth Circuit's precedent is also a result of its improperly following *Lloyd*. *See Clay v. Johns-Manville Sales Corp.*, 722 F.2d 1289, 1295 (6th Cir. 1983) (following *Lloyd*). It is no surprise then that *Cybermation* has only been cited three times, and not once since 2001. The Trustee's authorities are entirely contrary to authority directly on point from the United States Supreme Court. *See Salerno*, 505 U.S. 317.

The Trustee also cites *Federal Housing Finance Agency v. Nomura Holding America*, *Inc.*, 2015 WL 714747, at *2 (S.D.N.Y. Feb. 19, 2015), but that case did ***not*** collapse the two elements and it merely quoted the Second Circuit's interpretation of the "similar motive" element of the Rule, which is that to be "similar," the motives to develop the testimony should be "'of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue.'" *Id.* at 2 (quoting *United States v. DiNapoli,* 8 F.3d 909, 914-15 (2d Cir. 1993)). This formation of

---

[3] *See* Wright & Miller, § 6975 ("Presumably a Fourth Circuit panel will eventually discover this error and reintroduce the rule's 'predecessor in interest' language to its trial courts.").

{00042346 3}                                        5

the second element of the rule, "similar motive," does nothing to get the Trustee around his problem that the Co-Conspirators are not predecessors in interest to the Nelsons and it is not on point. Rather, in referring to "substantially similar intensity," *Dinapoli* was concerned with whether grand jury testimony should be admitted in a subsequent trial. In grand jury proceedings, the prosecutor usually does not have the motive to cross-examine with substantially similar intensity as at trial, which is one reason why *Dinapoli* held that the former testimony was ***not*** admissible. *See Dinapoli*, 8 F.3d at 915. In *Nomura,* the former testimony was deposition testimony and the Court never made a ruling about whether the previous deposition testimony could be admitted. *Nomura Holding Am., Inc.*, 2015 WL 714747, at *2; *see also* Letter, *Nomura Holding Am., Inc.*, No. 11-cv-6201, ECF No. 1365 (filed March 5, 2015) (indicating that the parties had reached an agreement regarding the former testimony).

The Co-Conspirators, who are confessed felons, are not the Nelsons' predecessors in interest. On the contrary, they are in no way related to the Nelsons, contractually or otherwise, and the Nelsons were victims of their fraudulent conduct. There is no basis to hold that the Co-Conspirators are the Nelsons' predecessors in interest. Indeed, the Trustee does not even attempt to make such a showing, and instead simply assumes, incorrectly, that they must be the Nelsons' predecessors in interest merely because they allegedly had a substantially similar motive and opportunity to cross-examine DiPascali. [Trustee's Br. at 5-6]. This is incorrect because the two elements are distinct, as held by the United States Supreme Court.

    B.    <u>The lack of actual cross-examination of DiPascali at the Criminal Trial evidences the lack of similar motive</u>

DiPascali's testimony would only be admissible under FRE 804(b)(1) if the Nelsons had a "similar motive and opportunity" to cross-examine him. The Nelsons were not present at the Criminal Trial, and, therefore, did not have an opportunity to cross-examine DiPascali. *See* Wright

{00042346 3}    6

& Miller, § 6974 ("Obviously if the party was not present, there would be no 'opportunity' as required by the rule.").

The Trustee, therefore, can only rely on FRE 804(b)(1) if the convicted felons had a "similar motive" to cross-examine DiPascali as the Nelsons. The Trustee cannot make this showing. Even small differences in trial strategy have been found to preclude a finding of a "similar motive." *See United States v. McDonald*, 837 F.2d 1287, 1293 (5th Cir. 1988) (although present and former party "had similar status in their respective claims, we find that the trial strategies were not sufficiently similar" to permit admission under 804(b)(1)). Further, "[i]f a fact is critical to a cause of action at a second proceeding but the same fact was only peripherally related to a different cause of action at a first proceeding, no one would claim that the questioner had a similar motive at both proceedings to show that the fact had been established (or disproved)." *See DiNapoli*, 8 F.3d at 912.

Ignoring controlling law and this Court's own directive that the *actual* cross-examination of DiPascali be considered to establish whether there was a "similar motive," the Trustee argues that the actual testimony elicited at DiPascali's cross-examination is irrelevant because all that matters is potential cross-examination. [Trustee's Br. at 1-2]. This is wrong. The lack of any serious cross-examination of DiPascali regarding the purchases and allocations of treasury securities shows that the Co-Conspirators did not have any motive to cross-examine DiPascali on this issue. *DiNapoli*, 8 F.3d at 915 ("[T]he cross-examination at the prior proceeding – both what was undertaken and what was available but forgone – will be relevant though not conclusive on the ultimate issue of similarity of motive."). If the Co-Conspirators had a similar motive, the cross-examination would demonstrate that.

DiPascali was not cross-examined in any meaningful way by the Co-Conspirators regarding the issues in this case with respect to treasury bills. The testimony of DiPascali's cross-examination that the Trustee has submitted with his supplemental briefing does nothing more than establish the following basic and irrelevant propositions:

- There was an instance in which the Co-Conspirators put false information on a customer statement of an account owned by Jeffry Picower to "change the complexion of that account" by falsely reflecting ownership of certain securities, some of which were treasuries. [ECF No. 164-2 at 1] (citing *U.S. v. Boneventre*, 10-cr-228 (S.D.N.Y.), hearing transcript ("Criminal Transcript"), Dec. 16, 2013, at 5939:21-5940:3]. [*See* Declaration of Helen Davis Chaitman, September 5, 2019 ("Chaitman Decl."), Ex. A (Criminal Transcript, Dec. 16. 2013, at 5938-40)].[4]

- There were Co-Conspirators besides Jodi Crupi. [ECF No. 164-2 at 1] (citing Criminal Transcript, Dec. 19, 2013, at 6425:14-6426:18].

- Madoff's actual purchases of treasuries from the 703 Account were often in the billions of dollars. [ECF No. 164-2 at 2-4] (citing Criminal Transcript, Dec. 19, 2013, at 6445:17-6446:14, 6458:9-6460:13).

- DiPascali would occasionally retrieve items from Madoff's office when Madoff was not present. [ECF No. 164-2 at 5] (citing Criminal Transcript, Dec. 19, 2013, at 64640:14-6461:10).

The Trustee also submits one excerpt from DiPascali's redirect examination by the Government. The Government's redirect is irrelevant for purposes of FRE 804(b)(1)(B), as the relevant test is whether the Co-Conspirators had a motive to cross-examine. *See* FRE 804(b)(1)(B) ("[Former testimony may be admissible if it] is now offered against a party who had – or, in a civil case, whose predecessor in interest had – an opportunity and similar motive to develop it by direct, cross-, or redirect examination."); *DiNapoli*, 8 F.3d at 912 ("[For there to be a "similar motive" under FRE 804(b)(1)(B),] the questioner must . . . be on the same side of the same issue at both

---

[4] The Trustee's excerpts from the Criminal Trial sometimes require some context. Relevant pages of testimony from the Criminal Trial are included with the Chaitman Decl. for the Court's convenience.

{00042346 3}   8

proceedings."). Further, that one excerpt from redirect simply stands for the proposition that Madoff did not make a market in treasuries, although he held an inventory of treasuries. [ECF No. 164-2 at 6] (citing Criminal Transcript, January 13, 2014, 6950:17-6951:9); [*see* Chaitman Decl., Ex. B (Criminal Transcript, Jan. 13, 2014, at 6947-6951)]. The excerpts of testimony submitted by the Trustee, therefore, conclusively *disprove* the Trustee's argument that the Co-Conspirators had the same motive to cross-examine DiPascali.

    C.    None of the Co-Conspirators had a motive to cross-examine DiPascali on whether Madoff purchased securities and allocated them to customers

As the Trustee himself admits, FRE 804(b)(1)(B) requires a "substantially similar motive." [Trustee's Br. at 5-6] ("Rule 804(b)(1) requires only a substantially similar interest."). This a stringent test. *DiNapoli*, 8 F.3d at 916 (Pratt, C.J., dissenting) ("[T]he majority's test [is] more stringent than the rule itself . . . ."). The Co-Conspirators and the Nelsons did not have substantially similar motives.

The Co-Conspirators had no motive to establish that Madoff traded treasury bills and allocated them to customer accounts. The Co-Conspirators effectively conceded that they were engaged in various fraudulent activities at BLMIS, and their primary motive was to establish that they were simply taking orders from Madoff. [*See* ECF No. 137-5 at 55 (citing pages 5745:7-20 of the Criminal Trial in which testimony was elicited that Madoff would instruct Bongiorno as to how to handle customer accounts when the market declined)]; [*id.* at 57 (citing pages 5944-45 of the Criminal Trial, eliciting testimony that it was Madoff who determined the particular rate of return he wanted customers to receive)].

At the Criminal Trial, the jury was persuaded that the Co-Conspirators committed widespread violations of federal laws. It would be of no benefit for the Co-Conspirators to elicit on cross-examination the specifics of Madoff's purchase of treasuries or how those treasuries were

allocated to particular accounts, let alone the Nelsons' accounts. *See DiNapoli*, 8 F.3d at 915 ("The grand jury had already been persuaded . . . to believe that the Club existed and that the defendants had participated in it to commit crimes. It is fanciful to think that the prosecutor would have had any substantial interest in showing the falsity of the witnesses' denial of the Club's existence just to persuade the grand jury to add one more project to the indictment."). Likewise, it would be highly unlikely for the Co-Conspirators to impeach DiPascali's credibility by cross-examining him on Madoff's purchases of treasuries, of all topics, especially considering DiPascali had no credibility to begin with. Accordingly, DiPascali's former testimony is not admissible under FRE 804(b)(1) against the Nelsons.

## II.    FRE 807 is inapplicable

The Trustee also asks the Court to admit DiPascali's former testimony under FRE 807 for the purpose of contradicting highly detailed trading activity occurring in the Nelsons' accounts over a period of several years. This request should be denied as this is precisely the sort of testimony that is unreliable.

Evidence may be admitted under FRE 807 if: (1) "the statement has equivalent circumstantial guarantees of trustworthiness;" (2) the statement is "offered as evidence of a material fact;" (3) the statement is "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts;" (4) "admitting [the statement] will best serve . . . the interests of justice;" and (5) the opposing party was offered reasonable notice. FRE 807(a)(b); *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991). A party seeking to admit a statement under FRE 807 bears the burden of establishing that the statement is especially trustworthy. *See, e.g.*, *Jacobson*, 206 F. Supp. 2d at 595. At a minimum, "the hearsay evidence [must] have 'circumstantial guarantees of trustworthiness' that are 'equivalent' to those reflected in the other hearsay exceptions." *Batoh v. McNeil-PPC*, 167 F.

{00042346 3}                                    10

Supp. 3d 296, 311 (D. Conn. 2016) (citation omitted); FRE 803, advisory committee's note ("The committee believes that there are certain *exceptional circumstances* where evidence which is found by a court to have guarantees of trustworthiness equivalent to or exceeding the guarantees reflected by the presently listed exceptions, and to have a high degree of probativeness and necessity could properly be admissible.") (emphasis added). The Second Circuit holds that ***"the residual exception to the hearsay rule should be applied sparingly."*** *Robinson v. Shapiro*, 646 F.2d 734, 742 (2d Cir. 1981) (emphasis added); *see also Parsons*, 929 F.2d at 907 (stating that FRE 807 should "be used very rarely, and only in exceptional circumstances") (internal citations and quotation marks omitted).

The Trustee has made no showing whatsoever that hearsay statements by Madoff's primary co-conspirator are somehow so trustworthy that they should be admitted for their truth under FRE 807. To the contrary, DiPascali's hearsay statements are highly untrustworthy because they were made by a confessed securities-fraud felon who had a longstanding propensity to falsify information. His act of falsifying information was instrumental in allowing the fraud to continue for so long. The Trustee should not be permitted to introduce hearsay testimony from a person whose job it was to deceive customers. *See Hoffman v. Palmer*, 129 F.2d 976, 991 (2d Cir. 1942), *aff'd Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943) (excluding evidence "dripping with motivations to misrepresent"). Here, of course, DiPascali was motivated to escape a long prison sentence and there is no reason whatsoever to believe that he was motivated to tell the truth.

The classic hearsay dangers are faulty perception, memory, and narration. DiPascali's testimony is being relied on to refute the occurrence of very specific trades that the Nelsons have corroborated with highly detailed documentary evidence, including third-party evidence. DiPascali's unreliable hearsay testimony raises classic hearsay dangers that counsel against its

admission. *See Jacobson*, 206 F. Supp. 2d at 596 ("Jacobson seeks to prove that Mr. Breuer uttered certain specific statements at a specific time. We face a situation where every word, their placement, order, and translations from German to English, are highly relevant to Mr. Jacobson's defamation suit. As Mr. Jacobson's case truly rises and falls on the details, the classic hearsay dangers of faulty perception, memory, and narration are inherent.").

Further, the residual exception can only be applied when it would serve the interests of justice. *See* FRE 807(a)(4). It would not serve the interests of justice to allow the testimony of a felon who defrauded the Nelsons to be used against the Nelsons.

### III. DiPascali's former testimony should be excluded under FRE 403

Under FRE 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403. The Court should exclude DiPascali's testimony the grounds that the probative value is substantially outweighed by the danger of unfair prejudice. *See* FRE 403.

### CONCLUSION

The Nelsons respectfully request that the Court deny the Trustee's motion *in limine*.

New York, New York  
September 5, 2019

**CHAITMAN LLP**

By: /s/ *Helen Davis Chaitman*
Helen Davis Chaitman
Gregory M. Dexter
465 Park Avenue
New York, New York 10022
Phone & Fax: (888)-759-1114
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com

*Attorneys for Defendants Carol Nelson and Stanley Nelson*