UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                              :
                                                    :        Adv. Pro. No. 08-01789 (SMB)
SECURITIES INVESTOR PROTECTION             :
CORPORATION,                                        :        SIPA Liquidation
                                                    :        (Substantively Consolidated)
                        Plaintiff-Applicant,  :
                                                    :
        – against –                                 :
                                                    :
BERNARD L. MADOFF INVESTMENT          :
SECURITIES LLC,                                     :
                                                    :
                        Defendant.            :
--------------------------------------------------------X
In re:                                              :
                                                    :
BERNARD L. MADOFF,                                  :
                                                    :
                        Debtor.               :
--------------------------------------------------------X
IRVING PICARD, Trustee for the Liquidation    :
of Bernard L. Madoff Investment Securities    :
LLC,                                                :
                                                    :
                        Plaintiff,            :
                                                    :
        – against –                                 :        Adv. Pro. No. 10-04390 (SMB)
                                                    :
BAM L.P., MICHAEL MANN and MERYL      :
MANN,                                               :
                                                    :
                        Defendants.           :
--------------------------------------------------------X

**MEMORANDUM DECISION GRANTING
RELIEF UNDER FEDERAL CIVIL RULE 56(g)**

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111

        David J. Sheehan, Esq.
        Dean D. Hunt, Esq.

Lan Hoang, Esq.
Nicholas J. Cremona, Esq.
Seanna R. Brown, Esq.
Of Counsel

*Attorneys for Plaintiff*

SECURITIES INVESTOR PROTECTION
  CORPORATION
1667 K St., NW, Suite 1000
Washington, D.C. 20006

Josephine Wang, Esq.
General Counsel
Kevin H. Bell, Esq.
Senior Associate General Counsel
For Dispute Resolution
Nathanael S. Kelley, Esq.
Associate General Counsel
Of Counsel

*Attorneys for Securities Investor Protection*
  *Corporation*

DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10016

Arthur H. Ruegger, Esq.

*Attorneys for Defendants*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Plaintiff, Irving H. Picard, as trustee (the "Trustee") for the liquidation of Bernard

L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), moves for summary judgment (the

"*Motion*")[1] on his claim to avoid and recover $2,813,000 transferred to defendants

Michael Mann, Meryl Mann and BAM L.P. (collectively, the "Defendants") as intentional

---

[1]     *See Trustee's Memorandum of Law in Support of Motion for Summary Judgment*, dated Dec. 21,
2018 (ECF Doc. # 141).

fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A) and 550(a) (the "Avoidance

Action"). Among other things, the Trustee asserts that the arguments raised by the

Defendants in opposition to his *Motion* are barred by *res judicata* based on the parties'

prior litigation relating to the allowability of the Defendants' net equity claims (the

"Claims Litigation"). For the reasons that follow, the *Motion* is denied but certain facts

are deemed either immaterial or undisputed for purposes of this Avoidance Action.

## BACKGROUND

### A.    Madoff's Arrest and the BLMIS SIPA Liquidation

On December 11, 2008 (the "Filing Date"), Bernard L. Madoff was arrested for

securities fraud, (*see Complaint as to Bernard L. Madoff*, dated Dec. 11, 2008 (ECF

Dist. Ct. No. 1:08-mj-02735-UA-1 Doc. # 1)),[2] and the Securities and Exchange

Commission ("SEC") commenced an action against Madoff and BLMIS alleging

violations of the Investment Advisers Act of 1940, the Securities Act of 1933, and the

Securities Exchange Act of 1934. (*See Complaint*, dated Dec. 11, 2008 (ECF Dist. Ct. No.

1:08-cv-10791-LLS Doc. # 1).) Four days later, the Securities Investor Protection

Corporation ("SIPC") petitioned for a protective decree placing BLMIS into liquidation,

appointing the Trustee, and removing the SIPA liquidation to this Court.[3] (*Joint*

---

[2]    "ECF Main Case Doc. # _" refers to documents filed on the electronic docket of the BLMIS SIPA
liquidation, *In re BLMIS*, Case. No. 08-01789 (SMB). "ECF Doc. # _" refers to documents filed on the
electronic docket of this adversary proceeding, *Picard v. BAM L.P.*, Adv. Pro. No. 10-04390 (SMB).
References to other Bankruptcy Court dockets will include the abbreviation "Bankr. Ct.," the case number,
and the document number. References to District Court dockets will include the abbreviation "Dist. Ct.,"
the case number, and the document number.

[3]    The Filing Date for purposes of computing the reach-back period under 11 U.S.C. § 548(a)(1) is
December 11, 2008, the date the SIPA proceeding is deemed to have been commenced. *See* SIPA §
78*lll*(7)(B).

*Pretrial Order* ("*JTPO*")[4] at 15, ¶¶ 1-2.) The District Court granted SIPC's application. (*See Order*, dated Dec. 15, 2008 (ECF Main Case Doc. # 1).)

On March 12, 2009, Madoff pleaded guilty to an eleven-count criminal information including charges of securities fraud, investment adviser fraud, mail fraud, wire fraud, money laundering, making false statements, perjury, making false filings with the SEC, and theft from an employee benefit plan. (*See Transcript of March 12, 2009 Hr'g in United States v. Madoff*, No. 09 CR 213 (DC) ("Madoff Allocution")[5] at 7:23-8:12.) On June 29, 2009, Madoff was sentenced to a prison term of 150 years. (*See Judgment*, dated June 29, 2009 (ECF Dist. Ct. No. 1:09-cr-00213-DC-1 Doc. # 100).)

Madoff's creditors filed an involuntary bankruptcy petition against him individually on April 13, 2009. (ECF Bankr. Ct. No. 09-11893 Doc. #1.) The Court directed the appointment of an interim trustee pursuant to 11 U.S.C. § 303(g) (ECF Bankr. Ct. No. 09-11893 Doc. # 10), the United States Trustee appointed Alan Nisselson, Esq. as interim trustee (ECF Bankr. Ct. No. 09-11893 Doc. # 13), the Court entered an order for relief under chapter 7 of the Bankruptcy Code on May 7, 2009 (ECF Bankr. Ct. No. 09-11893 Doc. # 21), and Mr. Nisselson has continued to serve as Madoff's chapter 7 trustee. On June 9, 2009, the Court entered an order substantively consolidating

---

[4]     A copy of the *JPTO* is attached as Exhibit 12 to the *Declaration of David J. Sheehan in Support of Trustee's Motion for Summary Judgment*, dated Dec. 21, 2018 ("*Sheehan Declaration*") (ECF Doc. # 143). Although the Court has not signed this order, the parties have signed it and agreed that the Court should treat the document as a Court order for purposes of this *Motion* and rely on its contents including the facts stipulated therein. (Hr'g Tr. 4/24/19 at 59:19-60:17 (ECF Doc. # 173).)

[5]     A copy of the Madoff Allocution is attached as Exhibit 14 to the *Sheehan Declaration*.

Madoff's estate with the BLMIS SIPA estate.  (*Consent Order Substantively Consolidating the Estate of Bernard L. Madoff into the SIPA Proceeding of Bernard L. Madoff Investment Securities LLC and Expressly Preserving All Rights Claims and Powers of Both Estates* ("*Consolidation Order*"), dated June 9, 2009 (ECF Bankr. Ct. No. 09-11893 Doc. # 28).)  However, the *Consolidation Order* expressly preserved the right of Madoff's chapter 7 trustee to bring avoidance actions on behalf of Madoff's bankruptcy estate upon consultation with the Trustee and SIPC.  (*Consolidation Order*, ¶ 4.)

## B.    The Defendants' BLMIS Accounts and the Claims Litigation

Prior to 2001, Madoff operated his brokerage as a sole proprietorship.  (*See Defendants' Objections, Responses and Counterstatement of Material Facts Pursuant to Fed. R. Civ. P. 56, Fed. R. Bankr. P. 7056 and Local Rule 7056-1 to Trustee's Statement of Material Facts*, dated Feb. 22, 2019, ¶ 4 (ECF Doc. # 158), and *Reply to Defendants' Objections, Responses and Counterstatement of Material Facts Pursuant to Fed. R. Civ. P. 56, Fed. R. Bankr. P. 7056 and Local Rule 7056-1 to Trustee's Statement of Material Facts*, dated Mar. 27, 2019 at 14 (ECF Doc. # 166).)  I refer to the sole proprietorship as "Madoff Securities."  Thereafter, Madoff Securities was reorganized as a single-member limited liability company (*i.e.*, BLMIS) with Madoff as the sole member.  (*JTPO* at 17, ¶ 6.)  At that point, all of Madoff Securities' assets and liabilities were transferred to BLMIS.  *SIPC v. BLMIS* (*In re BLMIS*), 522 B.R. 41, 60 (Bankr. S.D.N.Y. 2014), *aff'd*, 15 Civ. 1151 (PAE), 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016), *aff'd*, 697 F. App'x 708 (2d Cir. 2017).

- 5 -

In December 1995, Defendants Michael and Meryl Mann opened account number 1CM363 as joint tenants at Madoff Securities (the "Mann Account"). (*JPTO* at 17, ¶ 5.) In March 1999, Michael Mann opened account 1CM579 with Madoff Securities in the name of BAM L.P. (the "BAM Account," and together with the Mann Account, the "Accounts"). (*JPTO* at 17, ¶ 5.) Over the life of the Mann Account, Michael Mann deposited a total of $14,850,000 and withdrew a total of $20,650,000 from the account, of which $2,250,000 (the "Mann Two-Year Transfers") was withdrawn within two years of the Filing Date (the "Two-Year Period"). (*JPTO* at 18, ¶ 8.) Over the life of the BAM Account, BAM L.P. deposited a total of $1,920,007 and withdrew a total of $3,551,000 from the account, of which $563,000 was withdrawn within the Two-Year Period (the "BAM Two-Year Transfers," and together with the Mann Two-Year Transfers, the "Two-Year Transfers"). (*JPTO* at 18, ¶ 9.)

Shortly after the Filing Date, the Court established a procedure for resolving the net equity claims of former BLMIS customers. (*Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claims; and Providing other Relief*, dated Dec. 23, 2008 ("*Claims Procedure Order*") (ECF Main Case Doc. # 12).) *See Picard v. BAM L.P.* (*In re BLMIS*), 597 B.R. 466, 471-72 (Bankr. S.D.N.Y. 2019) ("*Jurisdiction Decision*") (describing the *Claims Procedure Order*). Pursuant to the *Claims Procedure Order*, Michael and Meryl Mann submitted a customer claim (the "Mann Customer Claim")[6] on June 16, 2009 in the amount of

---

[6]    A copy Mann Customer Claim is attached to the *Sheehan Declaration* as Exhibit 1.

$7,192,467.45 representing the amount listed on the final BLMIS monthly statement for the Mann Account less a handwritten correction.  Similarly, BAM L.P. submitted a customer claim (the "BAM Customer Claim,"[7] and together with the Mann Customer Claim, the "Customer Claims") in the amount of $714,333.85, which adjusted the amount listed on its final BLMIS statement.

On August 28 and October 19, 2009, the Trustee sent notices to the Defendants denying the Mann Customer Claim (the "Mann Determination") and the BAM Customer Claim (the "BAM Determination," and together with the Mann Determination, the "Determinations"), respectively.[8]  The Trustee's denial was based on his determination that (i) no securities were ever purchased by BLMIS for the Accounts, (ii) the Accounts were overdrawn, (iii) the profits reported on the BLMIS Account statements were fictitious, and (iv) the withdrawal of fictitious profits from the Accounts came from principal deposits of other BLMIS customers.  (Mann Determination at MWPTAP01100141-42.)  Each Determination was accompanied by a schedule which set forth the deposits into and withdrawals from the Accounts to support the Trustee's determination that the Accounts were overdrawn.  (*See* Mann Determination at MWPTAP01100144.)

On September 25 and November 16, 2009, the Defendants objected to the Mann Determination (the "Mann Objection") and the BAM Determination (the "BAM

---

[7]       A copy of the BAM Customer Claim is attached to the *Sheehan Declaration* as Exhibit 2.

[8]       The Mann Determination and the BAM Determination are attached to the *Sheehan Declaration* as Exhibits 3 and 4, respectively.  Aside from the deposit and withdrawal amounts and certain administrative information, the Determinations were identical.  Therefore, the Court cites only to the Mann Determination.

Objection," and together with the Mann Objection, the "Objections"), respectively.[9]  The Objections mostly raised legal arguments including that the net equity claims should be determined by reference to the amount listed on the final BLMIS customer statement instead of the Trustee's "Net Investment Method," which offset withdrawals against deposits, (Mann Objection, ¶¶ 9, 11-19), that the Trustee's net equity calculation was barred by the statute of limitations on avoidance actions, (Mann Objection, ¶ 21), and that net equity claims should include interest or a similar adjustment to reflect the passage of time.  (Mann Objection, ¶ 23.)  In addition, paragraph 10 of the Objections argued that the Determinations failed to provide a basis for the disallowance of the Customer Claims and did not rebut the claims' *prima facie* validity under Federal Bankruptcy Rule 3001(f), (Mann Objection, ¶ 10(a) – (c)), and incorrectly set forth the deposits and withdrawals from the Accounts.  (Mann Objection, ¶ 10(d).)

## C.    The Avoidance Action

The Trustee commenced this Avoidance Action by filing a complaint (the "*Complaint*") on November 30, 2010 (ECF Doc. # 1), and the Trustee filed an amended complaint (the "*Amended Complaint*") on January 25, 2012.[10]  After accounting for claims and defendants that were dismissed via *Stipulation and Order* on August 19, 2015 (ECF Doc. # 46),[11] the *Amended Complaint* sought to avoid and recover the Two-

---

[9]    The Mann Objection and the BAM Objection are attached to the *Sheehan Declaration* as Exhibits 5 and 6, respectively.  Both Objections relied on the same arguments; therefore, the Court cites only to the Mann Objection.

[10]    The *Amended Complaint* was filed in the District Court while a motion to withdraw the reference was pending.  A copy of the *Amended Complaint* is attached as Exhibit 7 to the *Sheehan Declaration*.

[11]    Except for the intentional fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(A), the parties stipulated to the dismissal with prejudice of all the Trustee's avoidance claims, including his claims to avoid obligations, and the dismissal without prejudice of claims to recover from subsequent transferees.

Year Transfers from the Defendants as intentional fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A) and 550(a). Both the original *Complaint* and the *Amended Complaint* included as Exhibit B a schedule showing the Trustee's calculation of all deposits into and withdrawals from the Accounts. The transactions and the resulting calculations on Exhibit B were identical to the Trustee's calculations set forth on the schedules accompanying his Determinations denying the Customer Claims. The Defendants answered the *Amended Complaint* on April 16, 2014. (*Answer to Amended Complaint and Affirmative Defenses*, dated Apr. 16, 2014 ("*Answer*") (ECF Doc. # 40).)

**D.    Withdrawal of the Customer Claims**

As more fully discussed in the *Jurisdiction Decision*, the Defendants withdrew their Customer Claims with prejudice during the pendency of the Avoidance Action. (*Order Withdrawing Claims and Objections With Prejudice and Finally Determining Net Equity*, dated Dec. 20, 2018 ("*Order Withdrawing Claims*") (ECF Doc. # 138).) By then, the legal objections to the Trustee's Determinations had been resolved in the Trustee's favor, and the remaining dispute concerned the computation of the net equity claims — the amount of deposits and withdrawals. The withdrawal of the Customer Claims was apparently intended by the Defendants to strip this Court of equitable jurisdiction over the Avoidance Action. However, the Court concluded in the *Jurisdiction Decision* that it possessed equitable jurisdiction over the Avoidance Action at the time it was commenced based on the pending dispute over the allowance of the Customer Claims, and the subsequent withdrawal of the Customer Claims did not affect that jurisdiction. *Jurisdiction Decision,* 597 B.R. at 486.

E.    **The *Motion***

In the meantime, the Trustee filed the *Motion* on December 21, 2018 arguing that he is entitled to judgment as a matter of law on his fraudulent transfer claims based mainly on the facts set forth in the Madoff Allocution and the allocution of BLMIS employee Frank DiPascali.[12]  (*Motion* at 7-14.)  Moreover, he argued that *res judicata* barred the Defendants from raising issues that were resolved through the Claims Litigation.  (*Id.* at 18-22.)  The Defendants filed their objection to the *Motion*, (*Defendants' Memorandum in Opposition to Trustee's Motion for Summary Judgment*, dated Feb. 22, 2019 ("*Objection*") (ECF Doc. # 159)), primarily contending that the BLMIS fraudulent scheme was not a Ponzi scheme, the Two-Year Transfers were made by Madoff individually rather than by BLMIS and *res judicata* is inapplicable.[13]

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, governs motions for summary judgment.  The moving party bears the initial burden of showing that no genuine factual issue exists and that the undisputed facts establish its

---

[12]      *See Transcript of August 11, 2009 Hr'g in United States v. DiPascali*, No. 09 CR 764 (RJS) ("DiPascali Allocution") a copy of which is attached as Exhibit 15 to the *Sheehan Declaration*.  The Trustee also submitted the criminal allocutions of BLMIS employees David Kugel, Irwin Lipkin, Eric S. Lipkin, and Enrica Contellessa-Pitz attached to the *Sheehan Declaration* as Exhibits 16, 17, 18, and 19, respectively.  The Court may rely on a plea allocution as evidence to support a fact.  *See Picard v. Legacy Capital Ltd.* (*In re BLMIS*), Adv. Pro. No. 10-05286 (SMB), 2019 WL 2593008, at *4 n. 8 (Bankr. S.D.N.Y. June 25, 2019) (citing authorities).

[13]      The Defendants were permitted to adopt arguments made by defendants in a different adversary proceeding – *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-05286 (SMB) – in response to certain arguments made by SIPC.  (*See Order Regarding Defendants' Letter Dated April 8, 2019*, dated Apr. 16, 2019 (permitting adoption of arguments in *Sur-Reply of Legacy Capital Ltd. in Response to Reply Memorandum of Law of the Securities Investor Protection Corporation in Support of the Trustee's Motion for Summary Judgment*, dated Apr. 4, 2019 (ECF Bankr. Ct. No. 10-05286 Doc. # 212)) (ECF Doc. # 172).)

right to judgment as a matter of law. *Rodriguez v. City of N.Y.*, 72 F.3d 1051, 1060-61 (2d Cir. 1995); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In making that determination, a court must view the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). If the movant carries his initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587 (citation and internal quotation marks omitted); *accord Scott v. Harris*, 550 U.S. 372, 380 (2007). The court's function at the summary judgment stage is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Where the Court does not grant all the relief sought by the movant, it may nonetheless enter an order stating any material fact, including any item of damages or other relief, not in genuine dispute and treat that fact as established in the case. FED. R. CIV. P. 56(g); *see* 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.123 (3d ed. 2018).

## A.    The Trustee's *Prima Facie* Case

Under section 548(a)(1)(A) of the Bankruptcy Code, a bankruptcy trustee "may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . made such transfer . . . with actual intent to hinder, delay, or defraud

any [creditor]."[14] Thus, the elements of an intentional fraudulent transfer claim under section 548(a)(1)(A) are: (i) a transfer of an interest of the debtor in property; (ii) made within two years of the petition date; (iii) with "actual intent to hinder, delay, or defraud" a creditor. *Adelphia Recovery Tr. v. Bank of Am., N.A.*, No. 05 Civ. 9050 (LMM), 2011 WL 1419617, at *2 (S.D.N.Y. Apr. 7, 2011), *aff'd*, 748 F.3d 110 (2d Cir. 2014); *McHale v. Boulder Capital LLC* (*In re 1031 Tax Grp., LLC*), 439 B.R. 47, 68 (Bankr. S.D.N.Y. 2010), *supplemented by* 439 B.R. 78 (Bankr. S.D.N.Y. 2010). The Two-Year Transfers were obviously made within two years of the Filing Date, leaving only BLMIS's actual intent and the ownership of the property that was transferred in dispute.

## 1.    Intent

The Trustee relies on the Ponzi scheme presumption to establish intent. Under the "Ponzi scheme presumption," the intent to hinder, delay, or defraud creditors is presumed if the transfers were made in furtherance of a Ponzi scheme. *Moran v. Goldfarb*, No. 09 Civ. 7667 (RJS), 2012 WL 2930210, at *4 (S.D.N.Y. July 16, 2012); *Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 11 (S.D.N.Y. 2007). Although some courts have applied a four-factor test to determine the existence of a Ponzi scheme, *see Armstrong v. Collins*, No. 01 Civ. 2437 (PAC), 2010 WL 1141158, at *22 (S.D.N.Y. Mar. 24, 2010) (analyzing whether there were deposits from investors, little or no legitimate business operations, little or no profits or earnings, and payments to investors were funded by new investor deposits), the Ponzi scheme label

---

[14]    To the extent consistent with SIPA, a liquidation of a broker or dealer is "conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7" of the Bankruptcy Code. SIPA § 78fff(b).

applies "to any sort of inherently fraudulent arrangement under which the debtor-transferor must utilize after-acquired investment funds to pay off previous investors in order to forestall disclosure of the fraud." *Manhattan Inv. Fund*, 397 B.R. at 12 (quotation omitted); *accord Gowan v. Amaranth Advisors L.L.C.* (*In re Dreier LLP*), Adv. Pro. Nos. 10-03493, 10-05447 (SMB), 2014 WL 47774, at *9 (Bankr. S.D.N.Y. Jan. 3, 2014).

To prove the existence of a Ponzi scheme, the Trustee relies on the allocutions of Bernard Madoff and Frank DiPascali. Madoff admitted *inter alia* that:

- he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" for many years leading up to his arrest (Madoff Allocution at 23:14-16);

- he "never invested" investment-advisory ("IA") customers' funds in securities as he had promised, and instead, deposited those funds into a "bank account at Chase Manhattan Bank" (Madoff Allocution at 24:15-18);

- when IA customers sought to redeem their "profits" or principal, he "used the money in the Chase Manhattan bank account that belonged to them or other clients to pay the requested funds" (Madoff Allocution at 24:18-22);

- he fraudulently misrepresented that he utilized a "split strike conversion strategy" ("SSC Strategy") of purchasing a basket of stocks chosen to mimic the Standard & Poor's 100 Index, hedging the investments by buying and selling option contracts relating to those stocks, and opportunistically timing the sale of the securities investing the funds in U.S. Treasury bills ("T-Bills") during these periods (Madoff Allocution at 25:25-26:18); and

- he fraudulently concealed the fraud by knowingly causing the dissemination of bogus trade confirmations and account statements to IA customers.  (Madoff Allocution at 27:9-19.)

Similarly, DiPascali admitted that the IA business did not purchase or sell securities for its customers, (DiPascali Allocution at 46:12-15), and used historical stock prices to show backdated, profitable trades in customer accounts.  (DiPascali Allocution at 47:16-22.)  Madoff's and DiPascali's allocutions establish that BLMIS was a Ponzi scheme. *Accord Legacy Capital*, 2019 WL 2593008, at *5.

The Defendants nevertheless contest this conclusion.  They argue that (i) BLMIS did not promise unrealistically high returns, (ii) the Trustee failed to establish that BLMIS needed later deposits to satisfy redemptions of earlier investors, and (iii) no one at BLMIS was charged with operating a Ponzi scheme and establishing the existence of a Ponzi scheme was not a requirement for the criminal charges that were brought. (*Objection* at 28-34.)  These arguments lack merit.

First, the promise of exorbitant returns is often a characteristic of a Ponzi scheme but is not the *sine qua non* of a Ponzi scheme.  *See Dreier*, 2014 WL 47774, at *9 ("These badges are, however, merely characteristics of many Ponzi schemes but a Ponzi scheme can exist without them.").  Certain transferee-defendants raised the same objection in *Armstrong v. Collins*, No. 01 Civ. 2437 (PAC), 2010 WL 1141158, at *23 (S.D.N.Y. Mar. 24, 2010).  District Judge Crotty rejected the argument as a factual matter and added the following:

> In any event, even assuming [the fraudster] did not promise or represent high rates of return, this does not mean that he was not running a Ponzi

- 14 -

scheme.  "Case law has revealed that a clever twist on the Ponzi concept
will not remove a fraudulent scheme from the definition of Ponzi."

*Id.* (quoting *Forman v. Salzano* (*In re Norvergence, Inc.*), 405 B.R. 709, 730 (Bankr. D.
N.J. 2009)).

Here, Madoff operated BLMIS as a classic Ponzi scheme notwithstanding the
purported absence of the promise of high returns: he misrepresented to clients and
prospective clients that he would invest their funds using the SSC Strategy, those funds
were instead put into a commingled bank account, he never invested those funds as he
had promised, he sent bogus statements showing fictitious profits to conceal the fraud,
BLMIS's IA division engaged in little or no real business making little or no real profits,
and he paid out redemptions using other clients' deposits from the same commingled
bank account.

Second, although Madoff used the customer money in the Chase Manhattan bank
account to pay redemptions, (Madoff Allocution at 24:18-22), the Defendants imply that
his ability to stave off collapse for fifteen-plus years shows that he did not need
additional deposits.  (*Objection* at 28, 33.)  The argument borders on the absurd.  Where
do the Defendants think BLMIS got the money to pay redemptions during those fifteen-
plus years if it did not operate a business?  The longevity of the Ponzi scheme simply
proves that Madoff was able to swindle new investors at a faster rate than old investors
were redeeming their funds.  But like all Ponzi schemes, this one eventually collapsed
when redemptions outpaced new investments, and once the music stopped, the shortfall
amounted to nearly $20 billion.  Obviously, the deposits were insufficient to cover the
redemptions.

Third, although operating a Ponzi scheme will typically lead to criminal charges as was the case with Madoff, DiPascali and others at BLMIS, there is no specific crime entitled "Ponzi scheme." Here, Madoff (and DiPascali) committed the crimes of, among others, securities fraud, investment adviser fraud, mail fraud, money laundering and wire fraud *through the operation of a Ponzi scheme*. The Madoff and DiPascali Allocutions established the elements of a Ponzi scheme as the predicate for their crimes and for the District Court's acceptance of their guilty pleas. The *Dreier* decision which the Defendants cite is distinguishable because the defendant did not allocute to all of the elements of a Ponzi scheme. *Dreier*, 2014 WL 47774, at *11.[15]

Accordingly, the Trustee is entitled to rely on the Ponzi scheme presumption and has demonstrated that the Two-Year Transfers were made with the actual intent to hinder, delay or defraud creditors within the meaning of 11 U.S.C. § 548(a)(1)(A).

### 2.    Transfer of Customer Property

Section 548(a)(1) of the Bankruptcy Code provides that a trustee may avoid a transfer "of an interest of the debtor in property . . . made . . . within 2 years before the filing date of the petition." Money held by a broker on behalf of its customers is not the broker's property under state law. SIPA § 78fff-2(c)(3) circumvents this problem by treating customer property as though it were the SIPA debtor's property in an ordinary bankruptcy. *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 213 (2d Cir. 2014) (SIPA

---

[15]    The Defendants also provided evidence indicating that BLMIS purchased T-Bills. (*See Declaration of Arthur H. Ruegger in Opposition to Trustee's Motion for Summary Judgment*, dated Feb. 22, 2019 ("*Ruegger Declaration*"), Ex. L (JPMorgan statements showing T-Bill transactions for BLMIS) (ECF Doc. # 160).) However, the purchase of T-Bills was part of the cash management system used by BLMIS to sustain the Ponzi scheme and "did not transform BLMIS into a legitimate enterprise or prohibit the Trustee's reliance on the Ponzi scheme presumption." *Legacy Capital*, 2019 WL 2593008, at *6.

creates a "legal fiction that confers standing on a SIPA trustee by treating customer property as though it were 'property of the debtor'").  Therefore, customer deposits are deemed to have been BLMIS's property for the purposes of this Avoidance Action unless, as discussed immediately below, the customer deposits were Madoff's property at the time of the transfers.

The parties have stipulated to the amount of the deposits into and withdrawals from their respective Accounts, and to the amount of the transfers made during the Two-Year Period.  (*See JPTO* at 18-19, ¶¶ 8, 9.)  The Manns and BAM L.P. withdrew $2,250,000.00 and $563,000.00, respectively, during the Two-Year Period.  All of the Two-Year Transfers consisted of fictitious profits in the sense that the Defendants had exhausted the amounts of their deposits before the onset of the Two-Year Period.  The Defendants argue, however, that they did not withdraw the Two-Year Transfers from BLMIS.  Instead, the funds came from a Chase bank account (the "509 Account") that was owned and controlled by Madoff in his individual capacity, and hence, Madoff's chapter 7 trustee (not the BLMIS Trustee) is the only person with standing to avoid and recover the Two-Year Transfers.  (*Objection* at 1-3, 3 n. 9 (citing *Consolidation Order*, ¶ 4), 9-11.)  In other words, the Trustee cannot prove that there was a transfer of the debtor's property, an element of his claim.

In support of their argument, the Defendants supplied copies of the checks they received from the 509 Account which bore the name of "Bernard L. Madoff," not

BLMIS.[16]  On the other hand, the Trustee points out that the Defendants had previously admitted that they received the pertinent transfers *from BLMIS*.  (*See Answer* ¶ 43 ("Defendants admit that it [sic]. . . received transfers from BLMIS . . . [and] respectfully refers [sic] the Court to [Exhibit B of the *Amended Complaint*] for the complete contents thereof."); *see also Defendants' Response and Objections to Trustee's Motions in Limine*, dated Nov. 26, 2018 at 4 ("[F]or purposes of this [Avoidance Action] Michael Mann and BAM L.P. have admitted that the transactions listed in the Complaint are accurate.") (ECF Doc. # 126); Hr'g Tr. 11/28/18 at 7:17-21 ("[Defense counsel:]  When we got the documents that the Trustee had, where the client requested money and he got a check or a wire transfer, we now see that there's no way to contest it. . . .  We don't contest that.  That's not an issue at the trial.") (ECF Doc. # 130).)[17]  In addition, the declarations of the JPMorgan Chase representative provided to authenticate the 509 Account documents stated that the 509 Account was maintained by "Bernard L. Madoff Investment Securities LLC."  (*Declaration of David J. Sheehan in Support of Trustee's*

---

[16]      Checks received by the Mann Account and the BAM Account are attached as Exhibits C and H, respectively, to the *Ruegger Declaration*.

[17]      Ordinarily, "[f]acts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout [the] litigation." *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006).  "The amendment of a pleading does not make it any the less an admission of the party." *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) (citations omitted); *accord United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories.").  Nevertheless, an admission in a withdrawn or superseded pleading ceases to be a "conclusive judicial admission."  *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002) (citing *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929)), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215, 226-28 (2d Cir. 2006).

    Here, the parties stipulated that their prior pleadings would be deemed amended by the *JPTO*.  (*JPTO* at 20 ("The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties.").)  Through the *JPTO*, the Defendants now contend, consistent with the *Objection*, that the 509 Account belonged to Madoff.  (*JPTO* at 29, ¶ 10; 36, ¶ 27.)  Hence, the prior admissions are no longer "conclusive judicial admissions," although the fact finder may consider them in deciding the issue at trial.

*Reply Memorandum of Law in Further Support of Motion for Summary Judgment*, dated Mar. 27, 2019, Ex. 1 at ¶ 4; Ex. 2 at ¶ 4 (declarations regarding JPMorgan bank records)[18] (ECF Doc. # 167).)

The ownership of the funds used to pay the Two-Year Transfers is a disputed issue of fact. I do not mean to suggest that the deposit of customer funds into a Chase account in the name of Madoff or Madoff Securities changes the nature of customer funds or prevents the Trustee from avoiding and recovering the Two-Year Transfers. However, the parties have not briefed that issue and I do not decide it. Consequently, and subject to the applicability of *res judicata* discussed in the next section, the Court must conduct a trial to determine whether the Two-Year Transfers were transfers by the debtor within the meaning of SIPA § 78fff-2(c)(3) and Bankruptcy Code § 548(a)(1)(A).

## B.   *Res Judicata*

Under the doctrine of *res judicata*, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). The doctrine bars the later litigation if the earlier litigation was "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007); *accord Anaconda-Ericsson Inc. v. Hessen* (*In re Teltronics Servs., Inc.*), 762

---

[18]   The Defendants moved to strike the declarations of the JPMorgan representative, and the Court denied that motion at oral argument. (Hr'g Tr. 4/24/19 at 36:15-37:5.)

F.2d 185, 190 (2d Cir. 1985).  "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (citation omitted); *accord Celli v. First Nat'l Bank of N. N.Y.*, (*In re Layo*), 460 F.3d 289, 292 (2d Cir. 2006) (the second action must involve the same "nucleus of operate fact" as the first) (citation omitted).  "Also dispositive to a finding of preclusive effect, is whether an independent judgment in a separate proceeding would 'impair or destroy rights or interests established by the judgment entered in the first action.'" *Sure-Snap Corp. v. State St. Bank & Tr. Co.*, 948 F.2d 869, 874 (2d Cir. 1991) (quoting *Herendeen v. Champion Int'l Corp.*, 525 F.2d 130, 133 (2d Cir. 1975)); *accord Brown Media Corp.*, 854 F.3d at 162.  "A party cannot avoid the preclusive effect of res judicata by asserting a new theory or a different remedy." *Brown Media Corp.*, 854 F.3d at 157 (citation and internal quotation marks omitted).  However, "r*es judicata* is inapplicable if formal jurisdictional or statutory barriers" precluded a party from raising a claim in the prior action.  *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d Cir. 1997), *cert. denied*, 523 U.S. 1106 (1998).  The "critical question for res judicata purposes is whether the party could or should have asserted the claim in the earlier proceeding." *Layo*, 460 F.3d at 292 (quoting *Howe v. Vaughn* (*In re Howe*), 913 F.2d 1138, 1146 n. 28 (5th Cir. 1990)).  The burden lies with the party invoking *res judicata* to show that it applies.  *Comput. Assocs. Int'l*, 126 F.3d at 369.

The Trustee argues that the defenses raised by the Defendants in the Avoidance Action are precluded by the resolution of the Claims Litigation.  (*Motion* at 18-21.)  The Defendants do not contest the second (court of competent jurisdiction) and third (same parties) prongs of the four-prong test, but challenge the satisfaction of the first and fourth prongs.  (*Objection* at 25-28.)

### a.    Final Judgment on the Merits

The Claims Litigation was ultimately resolved when the Court granted the Defendants' counsel's oral motion to withdraw the Defendants' Customer Claims and related Objections with prejudice.  (*See Order Withdrawing Claims*.)  The withdrawal of a bankruptcy proof of claim is analogous to voluntary dismissal of a claim under Rule 41 of the Federal Rules of Civil Procedure.  *Resort Int'l, Inc. v. Lowenschuss* (*In re Lowenschuss*), 67 F.3d 1394, 1399 (9th Cir. 1995), *cert. denied*, 517 U.S. 1243 (1996); *Smith v. Dowden*, 47 F.3d 940, 942-43 (8th Cir. 1995); *In re 20/20 Sport, Inc.*, 200 B.R. 972, 977-78 (Bankr. S.D.N.Y. 1996); *see also* 9 COLLIER ON BANKRUPTCY ¶ 3006.01 (Richard Levin & Henry J. Sommer eds., 16th ed. 2019).  A voluntary dismissal with prejudice is a final judgment for purposes of *res judicata*.  *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995); *accord Mohamad v. Rajoub*, 767 F. App'x 91, 92 (2d Cir. 2019) (summary order).  Therefore, the Defendants' voluntary withdrawal of their Customer Claims with prejudice was a final judgment meeting the first prong of *res judicata*.  *See, e.g.*, *Johns v. Steege* (*In re Nat'l Indus. Chem. Co.*), 237 B.R. 437, 443 (Bankr. N.D. Ill. 1999).

The Defendants' authorities are distinguishable.  The issue in *In re Canton*, No. 05-47803 (PBS), 2007 WL 2848513 (Bankr. W.D. Wash. 2007) was whether an

unsuccessful bidder ("James Frank") had standing to object to a sale of estate assets under section 363 of the Bankruptcy Code. *Id.* at *1-2. The Court ruled that James Frank lacked standing but nevertheless analyzed whether approving the sale to the winning bidder ("Atkeson") was proper. Atkeson's bid included a provision allowing him to "voluntarily withdraw his $1.5 million proof of claim without any res judicata or other binding effect." *Id.* at *3. James Frank objected to that provision on the basis that the withdrawal should be treated as an adjudication on the merits. *Id.* The Court rejected the argument stating that "[t]here is nothing in this case, or any published case that the Court could find, holding that the voluntary withdrawal of a proof of claim acts as a judgment on the merits." *Id. Canton* dealt with a withdrawal of a claim without prejudice, *id.*, hence, it does not speak to a withdrawal of a claim with prejudice. Finally, two other cases cited by the Defendants did not discuss the *res judicata* effect of a voluntary dismissal or claim withdrawal and are therefore not applicable to the instant facts. *See St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000) (dismissal for lack of subject matter jurisdiction has no *res judicata* effect); *DeFlora Lake Dev. Assocs., Inc. v. Hyde Park* (*In re DeFlora Lake Dev. Assocs., Inc.*), 571 B.R. 587, 597 (Bankr. S.D.N.Y. 2017) (dismissal based on statute of limitations was not an adjudication on the merits).

### b.    Same Cause of Action

The more difficult question is whether the Claims Litigation and the Avoidance Action involve the same cause of action. As stated, the "same cause of action" prong focuses on whether "the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Brown Media Corp.*, 854 F.3d at 157. At first

blush, the Claims Litigation and the Avoidance Action appear to meet these criteria.

The calculation of net equity for purposes of determining entitlement to a net equity

claim against the BLMIS customer property estate and the calculation of a good faith

defendant's fraudulent transfer exposure are identical.  *SIPC v. BLMIS* (*In re BLMIS*),

499 B.R. 416, 430 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*"); *Picard v. Cohen* (*In re*

*BLMIS*), Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *14 (Bankr. S.D.N.Y. Apr.

25, 2016) ("Net equity and fictitious profits are two sides of the same coin.") (Report &

Recommendation), *adopted by* 16 Civ. 5513 (LTS), slip op. (S.D.N.Y. Feb. 24, 2016).  In

both cases, the Court nets deposits and withdrawals.  A deposit increases a customer's

net equity under the Net Investment Method and simultaneously decreases the

customer's fraudulent transfer liability by providing "value" within the meaning of 11

U.S.C. § 548(c).  *Picard v. Magnify Inc.* (*In re BLMIS*), 583 B.R. 829, 841 (Bankr.

S.D.N.Y. 2018).  Conversely, a withdrawal decreases a customer's net equity under the

Net Investment Method and simultaneously increases the customer's fraudulent

transfer exposure.

The Defendants challenged the Trustee's computation of the deposits and

withdrawals in their Objections.  To establish positive net equity claims, they could have

argued, among other things, that although they made their deposit payments to BLMIS,

the withdrawals, or at least some of the withdrawals, were not funded by BLMIS.

Instead, they were paid by a third party, Madoff.

On further consideration, however, the Claims Litigation and the Avoidance

Action do not involve the same cause of action or necessarily the same evidence.  The

former concerned the Defendants' net equity claims under SIPA against the BLMIS

- 23 -

estate.  The Defendants are not making a claim for anything in the Avoidance Action.

The Trustee is essentially arguing that their claim in the Claims Litigation and their

defense in the Avoidance Action involve the same facts (netting deposits and

withdrawals) and are the same cause of action.  He does not, however, cite authority to

support his proposition that a claim for affirmative relief in one action and a defense

based on the same facts in a second action constitute the same cause of action for *res

judicata* purposes.  Rather, it sounds like he is actually invoking collateral estoppel

which does not apply because the deposits and withdrawals were not "actually litigated

and decided."  *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (collateral

estoppel requires that "(1) the identical issue was raised in a previous proceeding; (2)

the issue was actually litigated and decided in the previous proceeding; (3) the party had

a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was

necessary to support a valid and final judgment on the merits") (citation omitted).

More importantly, the issues and evidence are not necessarily the same.  A

customer has a net equity claim of zero whether he has overdrawn his BLMIS account by

$1.00 or $1 million.  It makes no difference, and he might withdraw his net equity claim

in either circumstance.  On the other hand, the amount that he has overdrawn measures

his potential liability for fictitious profits in an avoidance action under the Bankruptcy

Code, and whether that is $1.00 or $1 million makes a big difference.  A claimant who

could show that some of the withdrawals came from third parties might still have a zero

net equity claim but the withdrawals paid by non-debtors would reduce the fictitious

profits he received and his liability for a fraudulent transfer.  The withdrawal of the net

equity claims acknowledges that the Defendants' net equity claims are zero but does not

necessarily say anything about their defense to the Avoidance Action.  Accordingly, *res judicata* does not foreclose the Defendants' argument that the Two-Year Transfers were not made by BLMIS.

## C.    The Defendants' Defenses

The Defendants have also raised a legal defense.  They contend that they provided "value" within the meaning of section 548(c) of the Bankruptcy Code because the Two-Year Transfers satisfied (i) obligations incurred by BLMIS under the New York Uniform Commercial Code when it issued customer statements showing securities transactions, (*Objection* at 14-16), and (ii) state and federal securities fraud claims held by the Defendants against BLMIS.  (*Id.* at 19-21) (collectively, the "Antecedent Debt Defense").[19]  The Antecedent Debt Defense has been rejected by this Court or the District Court on no less than nine occasions,[20] and the issue is currently before the Second Circuit in a separate adversary proceeding.  *See Picard v. Lowrey*, No. 19-429(L) (2d Cir.).  Since the Court would again affirm the prior rulings as a matter of law, the

---

[19]    11 U.S.C. § 548(c) provides a defense to a fraudulent transfer claim to the extent a transferee takes for value and in good faith.  "Value," for present purposes, includes satisfaction of an antecedent debt of the debtor.  11 U.S.C. § 548(d)(2)(A).

[20]    *See Picard v. Lowrey* (*In re BLMIS*), 596 B.R. 451, 464 (S.D.N.Y. 2019) ("*Lowrey II*"), *appeal docketed*, No. 19-429(L) (2d Cir. Feb. 20, 2019); *SIPC v. BLMIS* (*In re BLMIS*), 987 F. Supp. 2d 309, 310 (S.D.N.Y. 2013); *Antecedent Debt Decision*, 499 B.R. at 422-26; *Picard v. Greiff* (*In re BLMIS*), 476 B.R. 715, 724-26 (S.D.N.Y. 2012), *aff'd sub nom. on other grounds*, *Picard v. Ida Fishman Revocable Tr.* (*In re BLMIS*), 773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2859 (2015); *Legacy Capital*, 2019 WL 2593008, at *11-12; *Picard v. Goldenberg* (*In re BLMIS*), Adv. Pro. No. 10-04946 (SMB), 2018 WL 3078149, at *4-5 (Bankr. S.D.N.Y. June 19, 2018) (Report & Recommendation); *Picard v. Lowrey* (*In re BLMIS*), Adv. Pro. No. 10-04387 (SMB), 2018 WL 1442312, at *5-13 (Bankr. S.D.N.Y. Mar. 22, 2018) (Report & Recommendation), *adopted by Lowrey II*; *Picard v. Cohen*, 2016 WL 1695296, at *6-13; *SIPC v. BLMIS* (*In re BLMIS*), 531 B.R. 439, 461-63 (Bankr. S.D.N.Y. 2015).

Antecedent Debt Defense does not provide a defense under section 548(c) to the Trustee's claims.

## CONCLUSION

The Trustee has shown that there is no genuine material issue of fact that the transfers at issue were made within two years of the filing date and with fraudulent intent. These facts are deemed established for the purposes of this Avoidance Action. *See* FED. R. CIV. P. 56(g). The *Motion* is otherwise denied. The Court has considered the parties' other arguments and concludes that they lack merit or are mooted by the disposition of the *Motion*. The Trustee is directed to settle an order on notice that sets forth the established facts. The parties are directed to contact chambers to schedule a pre-trial conference.

Dated: New York, New York
September 11, 2019

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge