**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROL NELSON,<br><br>    Defendant. | Adv. Pro. No. 10-04658 (SMB) |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROL NELSON, Individually and as Joint Tenant; and STANLEY NELSON, Individually and as Joint Tenant,<br><br>    Defendants. | Adv. Pro. No. 10-04377 (SMB) |

**SECURITIES INVESTOR PROTECTION CORPORATION'S MEMORANDUM
OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

# TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**CASES:** **PAGE**

*In re Bankest Capital Corp.*, 374 B.R. 333 (Bankr. S.D. Fla. 2007) .................................. 4

*In re IFS Fin. Corp.*, 669 F.3d 255 (5th Cir. 2012) ........................................................... 4

*In re New Times Securities Services, Inc.*, 371 F.3d 68 (2d Cir. 2004) .............................1

*In re Old Naples Securities, Inc.*, 223 F.3d 1296 (11th Cir. 2000) .................................1, 3

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) ................................................................................ 5

*Picard v. Ida Fishman Revocable Trust*, 773 F.3d 411 (2d Cir. 2014) .............................. 3

*In re Primeline Sec. Corp.*, 295 F.3d 1100 (10th Cir. 2002) .......................................... 3, 5

*Rosenman Family, LLC v. Picard*, 395 F. App'x 766 (2d Cir. 2010) .................................1

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    499 B.R. 416 (Bankr. S.D.N.Y. 2013) ............................................................................. 4

*Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412 (1975) .............................. 5

**STATUTES AND RULES:**

Securities Investor Protection Act, as amended, 15 U.S.C. §

78ccc(a) ....................................................................................................................... 2
78*lll*(4) ........................................................................................................................1

ii

The Securities Investor Protection Corporation ("SIPC") joins Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–78*lll* ("SIPA"),[1] and Bernard L. Madoff, in opposition to the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction. 10-04377 Action, ECF No. 166; 10-04658 Action, ECF No. 169.

SIPC files this brief to address the following issue: where investors entrusted customer property to a SIPC member, first to Madoff as a sole proprietor and then, after January 1, 2001, to BLMIS, whether the Trustee may avoid fraudulent transfers of customer property to the Defendants in furtherance of the BLMIS Ponzi scheme, regardless of whether the property was held in an account in the name of Madoff or BLMIS. SIPC respectfully submits that the answer is "Yes."[2]

## ARGUMENT

### I. THE TRUSTEE HAS STANDING TO RECOVER TRANSFERS

Congress created SIPC in 1970 to protect "customer property"[3] entrusted to a failed broker-dealer. *See, e.g.*, *In re New Times Securities Services, Inc.*, 371 F.3d 68, 84 (2d Cir. 2004) (identifying SIPA's "statutory goals" as "promoting investor confidence and providing protection to investors . . . ," and noting that "remedial legislation should be construed broadly to effectuate its purposes.") (internal citation omitted); *In re Old Naples Securities, Inc.*, 223 F.3d 1296, 1300 (11th Cir. 2000) ("Congress passed SIPA in

---

[1] For convenience, future references to SIPA shall omit "15 U.S.C."
[2] SIPC adopts the Statement of Facts as presented in the Trustee's Opposition.
[3] "The term 'customer property' means cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted." SIPA § 78*lll*(4); *see also Rosenman Family, LLC v. Picard*, 395 F. App'x 766, 768-69 (2d Cir. 2010).

1970 . . . to protect investors when their brokerages fail. The statute established the SIPC to maintain a fund for investor protection, oversee the liquidation of brokerages in a manner similar to bankruptcy proceedings, and, under certain circumstances, reimburse customers of a failed brokerage."). SIPC membership, and thus SIPC protection, arises from a broker-dealer's registration with the SEC, without regard to the corporate form of the broker-dealer. SIPA § 78ccc(a). This statutory construct ensures that nearly all registered broker-dealers are SIPC members, thereby maximizing customer protection.

The evidence demonstrates that Madoff registered BLMIS as a broker-dealer with the SEC in January 1960, first as a sole proprietorship and then, beginning January 1, 2001, as an LLC. When Madoff converted his business from a sole proprietorship into an LLC, Madoff filed an "SEC Form BD" document to inform the Commission (and SIPC, through the Commission) of the nominal change in corporate structure. The SEC Form BD affirmed that

> EFFECTIVE JANUARY 1, 2001, PREDECESSOR WILL TRANSFER TO SUCCESSOR ALL OF PREDECESSOR'S ASSETS AND LIABILITIES, RELATED TO PREDECESSOR'S BUSINESS. THE TRANSFER WILL NOT RESULT IN ANY CHANGE IN OWNERSHIP OR CONTROL.

TX-007 (SEC Form BD). The customer property entrusted to the sole proprietorship became entrusted to BLMIS. There was no gap, or change in custody of customer property other than this nominal change. Madoff then continued the same ongoing Ponzi scheme under the veil of an LLC.

The evidence demonstrates that Madoff received customer property. *See, e.g.,* TX-338 (1ZA283 Account Opening Documents); TX-339 (1ZR265 Account Opening Documents); TX-340 (1ZA284 Account Opening Documents); TX-377 (1ZA283

2

Customer File) at 19-28; TX-378 (1ZA284 Customer File) at 41-53; TX-379 (1ZR265 Customer File) at 11-20; and TX-273 (Jan. 2008 Customer Statement for 1ZA284 Account). Once that customer property was entrusted to an SEC-registered broker-dealer, SIPA protection applied and continued to apply until the property was returned to the customer – from wherever the property was located, and by or through whomever was the custodian of the customer property. The availability of SIPA protection, therefore, focuses not solely on "[w]hether a claimant deposited cash with the debtor," but also on "whether there was actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." *In re Old Naples Sec., Inc.* at 1303 (internal quotes and citations omitted); *In re Primeline Sec. Corp.*, 295 F.3d 1100, 1107 (10th Cir. 2002) ("Whether a claimant deposited funds 'with the debtor' does not depend simply on to whom claimants made their checks payable . . . [t]he relevant inquiry is whether the brokerage firm actually received, acquired or possessed Claimants' property") (citing *In re Old Naples Securities, Inc.*, 223 F.3d at 1302).

In the present cases, the Defendants have admitted that they had accounts with BLMIS, and they filed claims with the Trustee of the LLC for customer property they entrusted to BLMIS for those accounts.[4] The Defendants argued successfully that the transfers they received from BLMIS constituted settlement payments in connection with a securities contract. *See Picard v. Ida Fishman Revocable Trust*, 773 F.3d 411 (2d Cir. 2014). Numerous courts have held that these transfers from BLMIS were in furtherance of the Ponzi scheme. *See, e.g., id.* at 422 ("Certainly SIPC and the Trustee are correct that these transfers were also made 'in connection with' a Ponzi scheme and, as a result,

---

[4] *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 08-01789-smb (Bankr. S.D.N.Y.), ECF Nos. 646, 647, 648.

3

were fraudulent.") (internal citation omitted). Furthermore, to the extent that transfers from BLMIS returned principal to customers, such transfers satisfied customers' net equity claims against BLMIS. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 423–24 (Bankr. S.D.N.Y. 2013) ("[I]n a SIPA bankruptcy even the claim for return of principal is based, not on a claim for restitution (let alone fraud and breach of fiduciary duty), but on a claim that depends on the notion of net equity.").

In short, the customer property entrusted to BLMIS by investors such as Defendants was used in furtherance and in the interests of the Ponzi scheme run through BLMIS. *Cf. In re Bankest Capital Corp.*, 374 B.R. 333, 338–39 (Bankr. S.D. Fla. 2007) ("Where the transaction primarily serves the interests of the debtor, courts generally find a transfer of 'property of the debtor.'"). Ultimately, BLMIS controlled these funds and must be said to have made these transfers. *See In re IFS Fin. Corp.*, 669 F.3d 255, 262–64 (5th Cir. 2012) ("[R]egardless of its legal title, [the debtor] had the ultimate power to transfer funds to others, who included the [defendants]. That it obscured its power to transfer in an intentionally complicated corporate structure suggests that control is decisive, and that legal title is irrelevant where, as here, a debtor organization has taken care to mask its activities through fictional divisions."). Madoff's misuse of customer property, whether placing it in a personal account or under his mattress, should not hinder the Trustee's goal of recovering customer property, and maximizing protection for all victims of the scheme.

The Trustee has standing, and therefore, this Court has subject matter jurisdiction to pursue recovery of customer property precisely because BLMIS received, acquired and took possession and control of customer property entrusted to it but then failed to return the property to the owners – thereby triggering the filing of an

application for a protective decree under SIPA. *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 416 (1975) ("The mere filing of an SIPC application gives the court in which it is filed exclusive jurisdiction over the member and its property, wherever located . . . ."). The manner in which BLMIS maintained custody of the customer property and the fraudulent pathway through which it transferred the funds to the Defendants in furtherance of its Ponzi scheme, is irrelevant, therefore, in determining standing. If it were otherwise, any Madoff-like fraudster could shield his stolen customer property from a SIPA Trustee simply by running the scheme through a bank account held in a different name, or transferring the customer property to a new, separate and distinct legal entity. SIPA and the applicable provisions of bankruptcy law co-exist to further the mission of protecting customers of insolvent broker-dealers by "facilitat[ing] the return of customer property held by the insolvent firm," *In re Primeline Securities Corp.* at 1106, not to limit the recovery of customer property.

Finally, the Defendants repeatedly cite to *Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*, 557 B.R. 89 (Bankr. S.D.N.Y. 2016), which held that the Trustee could not recover transfers of customer property made by the sole proprietorship. *Id.* at 108–09. This case is fundamentally different. The Trustee seeks to avoid only transfers of customer property made by BLMIS during the 2006–08 timeframe. Transfers of customer property by the sole proprietorship, necessarily occurring prior to January 1, 2001, are not at issue. *Avellino,* therefore, does not apply to this case, and is not dispositive on the issue of subject matter jurisdiction or the Trustee's standing to seek relief from the Defendants in this case.

## **CONCLUSION**

For the reasons set forth above and in the Trustee's Opposition, the Trustee has standing to pursue this matter and this Court has subject matter jurisdiction over these proceedings. Accordingly, SIPC respectfully requests that the Court deny the Defendants' Motion to Dismiss.

Dated:  September 18, 2019               Respectfully submitted,
        Washington, D.C.

                                                    */s/ Kenneth J. Caputo*
                                                    KENNETH J. CAPUTO
                                                    General Counsel

                                                    KEVIN H. BELL
                                                    Senior Associate General Counsel for
                                                    Dispute Resolution

                                                    NATHANAEL S. KELLEY
                                                    Associate General Counsel

                                                    SECURITIES INVESTOR PROTECTION
                                                    CORPORATION
                                                    1667 K St., NW, Suite 1000
                                                    Washington, D.C. 20006
                                                    Telephone: (202) 371-8300
                                                    Email: kcaputo@sipc.org
                                                    Email: kbell@sipc.org
                                                    Email: nkelley@sipc.org