**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Seanna R. Brown

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

Hearing Date: November 20, 2019
Objection Deadline: November 13, 2019

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff,<br> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br> v.<br><br>CARDINAL MANAGEMENT, INC., AND DAKOTA GLOBAL INVESTMENTS, LTD.,<br><br>    Defendants. | Adv. Pro. No. 10-04287 (SMB) |

**MOTION FOR ENTRY OF ORDER PURSUANT TO
SECTION 105(a) OF THE BANKRUPTCY CODE AND
RULES 2002 AND 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE APPROVING A
SETTLEMENT AGREEMENT BY AND BETWEEN THE
TRUSTEE AND CARDINAL MANGEMENT, INC. AND
DAKOTA GLOBAL INVESTMENTS, LTD.**

TO:    THE HONORABLE STUART M. BERNSTEIN
       UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"),[1] and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in an agreement (the "Agreement")[2] by and between the Trustee, on the one hand, and Cardinal Management, Inc. ("Cardinal Management") and Dakota Global Investments, Ltd. ("Dakota"), on the other hand. In support of the Motion, the Trustee respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Agreement represents a good faith, complete settlement of all disputes between the Trustee, on the one hand, and Cardinal Management and Dakota, on the other hand, and the customer claims Cardinal Management submitted in connection with BLMIS Account No. 1FR119. The settlement will benefit the customer property fund by $11,000,000.00. The

---

[1] Further citations to SIPA will omit "15 U.S.C." and refer only to the relevant sections of SIPA.
[2] The form of Agreement is attached hereto as Exhibit "A."

2

Trustee therefore respectfully requests that the Court approve this settlement.

## BACKGROUND

1. On December 11, 2008 (the "Filing Date"),[3] the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). In the complaint, the SEC alleged that the Debtors engaged in fraud through the investment advisor activities of BLMIS.

2. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

    (i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;
    (ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and
    (iii) removed the case to this Court pursuant to SIPA section 78eee(b)(4).

4. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating Madoff's Chapter 7 estate with the BLMIS SIPA proceeding.

---

[3] In this case, the Filing Date is the date on which the Commission commenced its suit against BLMIS, December 11, 2008, and a receiver was appointed for BLMIS. *See* SIPA § 78*lll*(7)(B).

## THE TRUSTEE'S CLAIMS AGAINST CARDINAL MANAGEMENT

5. Cardinal Management is an international business company organized under the laws of St. Lucia that at all relevant times was a customer of BLMIS.

6. Dakota is a private mutual fund incorporated in the British Virgin Islands.

7. Cardinal Management maintained an account with BLMIS. Cardinal Management's account was opened in 2005 and designated as account no. 1FR119 (the "Account").

8. From the opening of the Account to the Filing Date, Cardinal Management withdrew from the Account approximately Twenty-Eight Million, Seventy-Three Thousand United States Dollars ($28,073,000.00).

9. In the ninety days prior to the Filing Date, Cardinal Management withdrew from the account approximately Twenty-Four Million United States Dollars ($24,000,000.00) (the "90-Day Transfers").

10. In addition to the 90-Day Transfers, Cardinal Management withdrew from the Account approximately Four Million, Seventy-Three Thousand United States Dollars ($4,073,000.00) in the two years prior to the Filing Date for a total of Twenty-Eight Million, Seventy-Three Thousand United States Dollars ($28,073,000.00) in the two-year period (the "Two-Year Transfers").

11. Some or all of the 90-Day Transfers and the Two-Year Transfers were subsequently transferred to Dakota.

12. On November 24, 2010, The Trustee filed a complaint in the United States Bankruptcy Court for the Southern District of New York in the adversary proceeding captioned *Picard v. Cardinal Management, Inc., et al.*, Adv. Pro. No. 10-04287 (SMB) (the "Adversary

Proceeding"). In the complaint, the Trustee asserted claims against Cardinal Management to avoid and recover the 90-Day Transfers and Two-Year Transfers under 11 U.S.C. §§ 544, 547, 548, 550, 551, SIPA § 78fff-2(c)(3), New York Debtor and Creditor Law §§ 273-279, claims against Dakota to recover subsequent transfers made to them by Cardinal Management, and claims to disallow the Cardinal Management Customer Claims pursuant to 11 U.S.C. § 502(d) and equitably subordinate the Cardinal Management Customer Claims pursuant to 11 U.S.C. §§ 510(c) and 105(a).

13. On January 15, 2019, the Trustee filed an amended complaint in the Adversary Proceeding. In the amended complaint, the Trustee asserted claims against Cardinal Management to avoid and recover the Two-Year Transfers under 11 U.S.C. §§ 502, 548, 550, and 551, SIPA § 78fff-2(c)(3), and claims to disallow the Cardinal Management Customer Claims pursuant to 11 U.S.C. § 502(d) and equitably subordinate the Cardinal Management Customer Claims pursuant to 11 U.S.C. §§ 510(c) and 105(a) (collectively, the "Avoidance Claims").

## CARDINAL MANAGEMENT'S CUSTOMER CLAIMS

14. On or about July 2, 2009, Cardinal Management filed a customer claim with the Trustee, which was designated as Claim # 14653. On or about July 2, 2009, Cardinal Management filed a second customer claim with the Trustee, which was designated as Claim # 15267. On or about July 7, 2009, Cardinal Management filed a third customer claim with the Trustee, which was designated as Claim # 70152. Claim # 14653, Claim # 15267, and Claim # 70152 are duplicative of each other and will be treated as one and the same for the purposes of settlement and this Motion, and are referred to herein together as the "Customer Claim." The Customer Claim asserts that Cardinal Management is entitled to a customer claim for money or

5

the securities reflected on Cardinal Management's BLMIS Account statement for the period ended November 30, 2008.

15. Under the net equity calculation approved by the Second Circuit in this case, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d. Cir. 2011), Cardinal Management is a "net loser" with net equity of $96,249,769.00.

## SETTLEMENT DISCUSSIONS

16. In the past several years, the Parties have, on multiple occasions, engaged in good faith discussions aimed at resolving the Trustee's Avoidance Claims and the amount of the Customer Claim. These discussions proved unsuccessful, in part, because the Trustee's investigation was ongoing, and because the District Court issued opinions that affected the pleading standards for the Trustee's Avoidance Claims.

17. On September 27, 2019 the parties reached a compromise, and in light of the delay, expense, and uncertainties associated with litigation, have decided to settle the Adversary Proceeding.

## OVERVIEW OF THE AGREEMENT

18. The principal terms and conditions of the Agreement are generally as follows (as stated above, the Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms):[4]

- Cardinal Management shall pay the Trustee $11,000,000.00, which constitutes a 39.184% recovery of the Two-Year Transfers.

- Cardinal Management shall have an allowed customer claim in the

---

[4] Terms not otherwise defined shall have the meaning ascribed in the Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

6

    SIPA Proceeding in the amount of $107,249,769.00 (the "Allowed Claim") and shall be entitled to the full benefit of a SIPC customer advance under section 78fff-3(a) of SIPA. The Allowed Claim is equal to 100% of Cardinal Management's net equity of $96,249,769.00, plus an increase of $11,000.000.00 under section 502(h) of the Bankruptcy Code.

- At Closing, Cardinal Management shall pay or cause to be paid to the Trustee, for the benefit of the customer property fund, $11,000,000.00 in full and final satisfaction of the Trustee's Avoidance Claims, as follows: the Trustee shall pay Cardinal Management the amount of the Catch-Up distribution ($71,963,738.58) owed to Cardinal Management on its Allowed Claim[5] less the settlement payment amount of $11,000.000.00. The Catch-Up Distribution includes the SIPC customer advance provide for under section 78fff-3(a) of SIPA applicable to Cardinal Management's Allowed Claim in the amount of $500,000.00. Accordingly, under the currently approved distributions, the Trustee will pay Cardinal $60,963,738.58. Thereafter, Cardinal Management shall be entitled to ratable distributions owing on the Allowed Claim in due course as distributed by the Trustee and approved by the Bankruptcy Court from time to time on the same basis

---

[5] As of the date of the Agreement, the Bankruptcy Court has approved ten *pro rata* interim distributions to BLMIS customers with allowed customer claims of 4.602%, 33.556%, 4.721%, 3.180%, 2.743%, 8.262%. 1.305%, 1.729%, 3.806%, and 2.729% respectively (66.633% in total). Accordingly, in order to catch-up Cardinal Management's distribution to that of other customers with allowed claims, at the Closing, the Trustee will pay Cardinal Management 66.633% of its allowed claim, or $71,963,738.58.

7

and timetable as the holders of admitted claims in the SIPA liquidation of the BLMIS Estate.

- The Trustee will release, acquit, and absolutely discharge Cardinal Management and Dakota on the specific terms set forth in the Agreement.

- Cardinal Management and Dakota will release, acquit, and absolutely discharge the Trustee and all his agents and BLMIS and its consolidated estate, on the specific terms set forth in the Agreement.

- The Parties shall submit to the Bankruptcy Court a stipulation requesting dismissal of the Adversary Proceeding, on the specific terms set forth in the Agreement.

## **RELIEF REQUESTED**

19. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as Exhibit "B" approving the Agreement.

## **LEGAL BASIS**

20. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." To approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interest of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

21. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (internal citations omitted); *see also Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. "[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

22. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

    (i)    the probability of success in the litigation;

    (ii)    the difficulties associated with collection;

    (iii)    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

    (iv)    the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

23. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y.

2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

24.     The Agreement furthers the interest of BLMIS customers by (a) adding $11,000.000.00 to the fund of customer property and (b) recovering 39.184% of the Two-Year Transfers. Furthermore, the Agreement resolves all claims among the Parties and avoids the cost and delay of what could otherwise be lengthy and contentious litigation. *See* Declaration of the Trustee in Support of the Motion attached hereto as Exhibit C.

## **CONCLUSION**

25.     In sum, the Trustee submits that the Agreement should be approved to avoid lengthy, burdensome, and expensive litigation and because it represents a fair and reasonable compromise of the Avoidance Claims and the Customer Claim. Because the Agreement is well within the "range of reasonableness" and confers a benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## **NOTICE**

26.     In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) Jeff E. Butler, Clifford Chance US, LLP, 31 West 52nd Street, New York, New York, 10019. Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the

BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting Notice, ECF No. 4560. The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "B" granting the relief requested in the Motion.

| | |
|---|---|
| Dated: New York, New York<br>September 30, 2019 | Respectfully submitted,<br><br>BAKER & HOSTETLER LLP<br><br>By: */s/ Seanna R. Brown*<br>David J. Sheehan<br>Email: dsheehan@bakerlaw.com<br>Seanna R. Brown<br>Email: sbrown@bakerlaw.com<br><br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br><br>*Attorneys for Irving H. Picard,*<br>*Trustee for the Substantively Consolidated*<br>*SIPA Liquidation of Bernard L. Madoff*<br>*Investment Securities LLC and the Estate of*<br>*Bernard L. Madoff* |