**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff-Applicant,<br><br>　　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>CAROL NELSON,<br><br>　　　　　Defendant. | Adv. Pro. No. 10-04658 (SMB) |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>CAROL NELSON, Individually and as Joint Tenant; and STANLEY NELSON, Individually and as Joint Tenant,<br><br>　　　　　Defendants. | Adv. Pro. No. 10-04377 (SMB) |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I.     Judicial Estoppel Precludes Defendants from Arguing the Trustee Lacks Standing to Recover Transfers Defendants Received..................................................................2

        A.     For Years, Defendants Argued They Were Customers of BLMIS..........................3

              1.     Defendants Participated in *Fishman* Which is Law of the Case..................3

              2.     Defendants Stated They Were Customers of BLMIS Throughout the Litigation........................................................................................6

              3.     Defendants Still Rely on the Decision in *Fishman* While Arguing a Contrary Position .........................................................................7

        B.     Defendants' Standing Argument is Clearly Inconsistent With Their Previous Position That They Received Transfers From BLMIS.............................8

        C.     This Court Adopted Defendants' Position When It Dismissed the Six-Year Transfers ................................................................................................................9

        D.     If Allowed to Maintain Inconsistent Positions, Defendants Would Gain Unfair Advantage to the Detriment of the Trustee and Customer Estate ................9

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Adelphia Recovery Trust*,
   634 F.3d 678 (2d Cir. 2011) ................................................................................................. 2, 3

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*,
   491 B.R. 335 (S.D.N.Y. 2013) .................................................................................................. 9

*DeRosa v. Nat'l Envelope Corp.*,
   595 F.3d 99 (2d Cir. 2010) ........................................................................................... 2, 3, 9, 10

*Embraer S.A. v. Dougherty Air Tr., LLC*,
   348 F. Supp. 3d 246 (S.D.N.Y. 2018) ................................................................................. 9, 10

*Intellivision v. Microsoft Corp.*,
   784 F. Supp. 2d 356 (S.D.N.Y. 2011) ............................................................................ 2, 9, 10

*Intellivision v. Microsoft Corp.*,
   484 F. App'x 616 (2d Cir. 2012) .......................................................................................... 2, 3

*Johnson v. Holder*,
   564 F.3d 95 (2d Cir. 2009) ........................................................................................................ 3

*Laurent v. PriceWaterhouseCoopers LLP*,
   963 F. Supp. 2d 310 (S.D.N.Y. 2013) ....................................................................................... 4

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ............................................................................................................ 2, 9, 10

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) .................................................................................................................... 8

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
   773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2859 (2015) ................................. passim

*Picard v. Katz*,
   462 B.R. 447 (S.D.N.Y. 2011) .................................................................................................. 4

*Picard v. Madoff*,
   458 B.R. 87 (Bankr. S.D.N.Y. 2011) ........................................................................................ 4

*Picard v. Merkin*,
   440 B.R. 243 (Bankr. S.D.N.Y. 2010) ...................................................................................... 4

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
   476 B.R. 715 (S.D.N.Y. 2012) ............................................................................................5

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
   499 B.R. 416 (S.D.N.Y. 2013) ............................................................................................4

*Sewell v. 1199 Nat'l Benefit Fund for Health & Human Servs.*,
   187 F. App'x 36 (2d Cir. 2006) ..........................................................................................8

*United States v. Quintieri*,
   306 F.3d 1217 (2d Cir. 2002) .........................................................................................3, 4

**Statutes**

11 U.S.C. § 546(e) ........................................................................................................ *passim*

11 U.S.C. § 548(a) .................................................................................................................9

11 U.S.C. § 548(a)(1)(A) ...................................................................................................4, 5

11 U.S.C. § 548(a)(1)(B) ........................................................................................................1

11 U.S.C. § 548(c) .................................................................................................................4

**PRELIMINARY STATEMENT**

Defendants are barred under the doctrine of judicial estoppel from contending that the Trustee lacks standing to recover the fraudulent transfers received by Defendants. Beginning in January 2009, Defendants represented that they were customers of BLMIS[1] by filing multiple claims for each of their BLMIS accounts, seeking to recover from the customer estate amounts they allege they were owed by the broker, BLMIS. Subsequently, in *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2859 (2015), Defendants joined in and successfully argued that the transfers at issue were securities-related payments made by BLMIS in connection with a securities contract and settlement payments under section 546(e), thereby barring the Trustee's constructive fraud claims under section 548(a)(1)(B) and New York state law claims. As a result of *Fishman*, which is law of the case here, the Trustee's claims against Defendants were limited to recovery of fraudulent transfers from BLMIS within the Two-Year Period.

Now, Defendants take a directly contrary position, arguing they did not receive transfers from BLMIS, but from Madoff individually. Having argued they are entitled to recover from the BLMIS customer estate and having foreclosed the Trustee's right to pursue claims beyond the Two-Year Period by arguing that the transfers came from BLMIS, Defendants now seek dismissal of these Adversary Proceedings by arguing a contradictory position.

---

[1] Capitalized terms not defined in this brief shall have the meanings ascribed in the Trustee's Post-Trial Proposed Findings of Fact and Conclusions of Law (the "Trustee's FOF") and the Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Trustee's Opposition"). *See Picard v. Nelson*, Adv. Pro. No. 10-04377 (SMB) (Bankr. S.D.N.Y. July 30, 2019), ECF No. 162 (the "10-04377 Action"); *Picard v. Nelson*, Adv. Pro. No. 10-04658 (SMB) (Bankr. S.D.N.Y. July 30, 2019), ECF No. 165 (the "10-04658 Action," together with the 10-04377 Action, the "Adversary Proceedings"); 10-04377 Action, ECF No. 180; 10-04658 Action, ECF No. 183.

Judicial estoppel prevents parties from doing what Defendants attempt here—gain a benefit by advancing one theory in litigation and then seeking an unjust advantage based on a theory incompatible with the first.

## ARGUMENT

### I. Judicial Estoppel Precludes Defendants from Arguing the Trustee Lacks Standing to Recover Transfers Defendants Received

Judicial estoppel prevents a party from "taking a position that is inconsistent with one taken in a prior proceeding if the first position was adopted by the tribunal to which it was advanced." *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 363 (S.D.N.Y. 2011) (citation omitted) (internal quotation marks omitted), *aff'd*, 484 F. App'x 616 (2d Cir. 2012). The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (citations omitted) (internal quotation marks omitted).

In the context of judicial estoppel, the proper focus is on the objective conduct of a party or its counsel. *In re Adelphia Recovery Trust*, 634 F.3d 678, 696–97 (2d Cir. 2011). In determining whether to apply the doctrine, courts should consider: (1) whether a party's current position is "clearly inconsistent with its earlier position;" (2) whether a court "accept[ed] that party's earlier position;" and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Intellivision*, 484 F. App'x at 619 (internal quotation marks omitted) (citing *New Hampshire*, 532 U.S. at 750–51). In the Second Circuit, judicial estoppel applies in "situations where the risk of inconsistent results with its impact on judicial integrity is certain." *In re*

2

*Adelphia Recovery Trust*, 634 F.3d at 696 (citing *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)).

Judicial estoppel applies here to preclude Defendants from taking an inconsistent position regarding elements of the Trustee's actions against them. *See Intellivision*, 484 F. App'x at 621–22 (affirming lower court's application of judicial estoppel against party "asserting a new, inconsistent position as to the ownership of property, a matter that goes not to the court's jurisdiction, but to whether [there was] a cause of action"); *see also* Sept. 25, 2019 Hr'g Tr. at 17:8-10, 10-04377 Action, ECF No. 193; 10-04658 Action, ECF No. 195 ("[T]his motion just seems to be the same argument that [the Trustee] failed to prove that there was a transfer.").[2] This inquiry does not implicate the subject matter jurisdiction of this Court to adjudicate actions seeking to recover customer property used to perpetrate a Ponzi scheme.[3] *See Sec. Inv'r Prot. Corp. v. Barbour*, 421 U.S. 412, 416 (1975).

### A.    For Years, Defendants Argued They Were Customers of BLMIS

1.    Defendants Participated in *Fishman* Which is Law of the Case

The Second Circuit *Fishman* decision applying section 546(e) to Defendants' Adversary Proceedings is law of the case and Defendants' arguments there preclude them from now advancing an inconsistent position.

Law of the case applies "when a court has ruled on an issue," so that the "decision should generally be adhered to by that court in subsequent stages in the same case." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.

---

[2] A true and correct copy of the hearing transcript is attached as Exhibit A to the Hunt Decl.

[3] The Trustee adopts the legal arguments made in the Securities Investor Protection Corporation's Memorandum of Law in Opposition to Defendants' Motion ("SIPC's Opposition"), 10-04377 Action, ECF. No. 182; 10-04658 Action, ECF No. 185, and reiterates the arguments in the Trustee's FOF and Opposition concerning this Court's subject matter jurisdiction over these Adversary Proceedings as if restated herein.

2002)). The purpose of law of the case doctrine is to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Laurent v. PriceWaterhouseCoopers LLP*, 963 F. Supp. 2d 310, 314 (S.D.N.Y. 2013) (quoting 18B Wright, Miller & Cooper, Federal Practice and Procedure § 4478 (2d ed. 2019)).

The *Fishman* decision is law of the case here.[4] The applicability of section 546(e) was first litigated before this Court (Lifland, J.), which held that the issue of whether the section 546(e) defense applied to the Trustee's claims should not be determined at the pleading stage of the litigation. *See Picard v. Merkin*, 440 B.R. 243, 266–67 (Bankr. S.D.N.Y. 2010); *Picard v. Madoff*, 458 B.R. 87, 115–16 (Bankr. S.D.N.Y. 2011). Following the Bankruptcy Court's decisions, the District Court withdrew the bankruptcy reference in *Picard v. Katz* to determine the issue. 462 B.R. 447, 450 n.1 (S.D.N.Y. 2011). In *Katz*, the District Court held that section 546(e) applied because BLMIS was a stockbroker, the account documents executed by the defendant customers were securities contracts, and the various payments BLMIS made to customers were in connection with securities contracts, or were settlement payments. *Katz*, 462 B.R. at 452. The District Court dismissed all of the Trustee's claims, except claims under section 548(a)(1)(A). *Id.*

Following *Katz*, hundreds of defendants moved to withdraw the bankruptcy references for their cases seeking dismissal of claims for transfers outside the Two-Year Period based on section 546(e). Just as it held in *Katz*, the District Court found that the transfers BLMIS made to these defendants were in connection with securities contracts, and were settlement payments

---

[4] Defendants also participated in briefing on the issue of whether the same transfers from BLMIS to Defendants discharged BLMIS's obligation to pay amounts reflected on Defendants' most recent customer statements, making the transfers repayment of an antecedent debt "for value" under section 548(c). *See* 10-04377 Action, ECF No. 15; 10-04658 Action, ECF No. 16; *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 499 B.R. 416 (S.D.N.Y. 2013).

4

protected by section 546(e). *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 476 B.R. 715, 718–19 (S.D.N.Y. 2012). The District Court again dismissed all claims except for those under section 548(a)(1)(A). *Id.* at 723–24. Thereafter, the Trustee consolidated all pending actions raising the section 546(e) issue for appeal, including the Adversary Proceedings at issue here. *See* Consent Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12–MC–0115 (S.D.N.Y. May 16, 2012), ECF No. 109.

On appeal, customer-appellees, including Defendants here, argued that they received transfers from BLMIS, which was a "stockbroker" for the purposes of section 546(e). *Fishman*, 773 F.3d at 417. Indeed, Defendants stated that BLMIS[5] "was a member of SIPC and NASD and held itself out to the public and in the securities markets as a stockbroker." *Id.* at 17. Defendants described BLMIS as being comprised of "investment advisory, market making, and proprietary trading operations." *Id.* at 4. Defendants went so far as to say that BLMIS "deposited Customers' funds into a single bank account and used them to continue operations and satisfy withdrawals." *Id.* at 6. Finally, Defendants argued that BLMIS "made transfers to customers in connection with their securities contracts," so "[e]ach time a customer requested a withdrawal, that instruction required Madoff Securities to dispose of securities and remit payment to the customer," in the form of transfers the Trustee now attempts to recover. *Id.* at 19, 22. The Second Circuit agreed, finding that the transfers from BLMIS to customers were made "in connection with a securities contract," namely the agreement created when BLMIS customers executed the customer agreement, trading authorization, and option agreement.[6] *Fishman*, 773 F.3d at 418–20.

---

[5] In briefing for *Fishman*, Defendants used the term "Madoff Securities," which they defined as "Bernard L. Madoff Investment Securities LLC." Joint Brief of Customer Appellees, *Fishman*, No. 12-2557 (2d Cir. Oct. 25, 2013), ECF No. 318.

[6] Upon opening their BLMIS accounts, Defendants executed agreements with the sole proprietorship. In 2004,

5

### 2. Defendants Stated They Were Customers of BLMIS Throughout the Litigation

Since the fraud at BLMIS was uncovered, Defendants have taken the position that they received transfers from BLMIS. Defendants filed multiple customer claims with the Trustee for their BLMIS accounts in January 2009, claiming they were entitled to a total of $9,979,885.02 for all three accounts, supported by customer statements they received from BLMIS.[7] *See* TX-342, TX-343, TX-346, TX-347, TX-348, TX-351, TX-352. Defendants' customer claims refer to BLMIS only, without mention of Madoff individually. By filing customer claims, Defendants sought to collect from the BLMIS customer estate.[8] The Trustee denied these claims, not because Defendants weren't customers of BLMIS, but because Defendants withdrew more money than they deposited with BLMIS. *See* TX-344, TX-349, TX-353. Defendants objected to the Trustee's claims denials, reiterating their position that they invested with BLMIS. *See* TX-345, TX-350, TX-354.

When the Trustee initiated the Adversary Proceedings against Defendants, they continued to argue they deposited money with and received transfers from BLMIS in their Answers to the Trustee's Complaints and throughout their discovery responses. *See, e.g.*, Answer ¶¶ 2, 9, 21, 24, 29, 30, 36, 38, 39, 10-04377 Action, ECF No. 30; Answer ¶¶ 3, 9, 21, 24, 29, 30, 36-39, 10-04658 Action, ECF No. 31; TX-010 (Stanley Nelson's First Interrogatories Responses, 10-04377

---

Defendants executed a new set of agreements with BLMIS. *See* TX-377 (1ZA283 Customer File) at 19–28; TX-378 (1ZA284 Customer File) at 41–53; TX-379 (1ZR265 Customer File) at 11–20.

[7] While these Adversary Proceedings had not yet commenced at the time Defendants filed their customer claims, Defendants were aware their monthly statements contained the name of BLMIS. Defendants were also aware of the names, signatures, and endorsements on each of the checks they received from BLMIS over the life of their accounts.

[8] In submitting these claims, Defendants attested that "the foregoing claim [wa]s true and accurate to the best of [their] information and belief." Further, Defendants understood "it [wa]s a violation of federal law to file a fraudulent claim," of which "conviction c[ould] result in a fine of not more than $50,000 or imprisonment for not more than five years or both." *See* TX-342, TX-343, TX-346, TX-347, TX-348, TX-351, TX-352.

Action), ¶¶ 5, 7; TX-012 (Carol Nelson's First Interrogatories Responses, 10-04377 Action), ¶¶ 5, 7; TX-019 (Carol Nelson's First Interrogatories Responses, 10-04658 Action), ¶¶ 5, 7.

### 3. Defendants Still Rely on the Decision in *Fishman* While Arguing a Contrary Position

Defendants continue to rely on the application of section 546(e) and the *Fishman* decision to advance arguments in their Proposed Findings of Fact and Conclusions of Law (the "Defendants' FOF").[9] For example, in Defendants' FOF, they state:

- 13.   In *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs)*, No. 12-MC-0115 (JSR) (S.D.N.Y. Apr. 27, 2012), Docket No.101, Judge Rakoff held that all of the claims alleged in the Complaints were barred except those claims asserted under §§ 548(a)(1)(A) and 550(a)(2) of the Bankruptcy Code. Judge Rakoff's decision was affirmed by the Second Circuit. *In re Picard v. Ida Fishman (In re Bernard L. Madoff Inv. Secs. LLC)*, 773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2859 (2015) (the "*Section 546(e) Decision*"). As a result, the Trustee's claims were limited to Count One in each Complaint which sought to recover alleged fraudulent transfers made to the Nelsons pursuant to Bankruptcy Code § 548(A)(1).

- 135.   Under the Bankruptcy Code, payments made by brokers to their customers are protected from most avoidance theories. In the *Section 546(e) Decision,* the court held that the Trustee's powers to avoid transfers are limited to those powers "under section 548(a)(1)(A) of this title." 11 U.S.C. § 546(e). Section 546(e) should be interpreted broadly in order to further its "goal of promoting stability and finality in securities markets and protecting investors . . . " *In re Tribune Co. Fraudulent Conveyance Litig.*, 2019 WL 1771786, at *12 (S.D.N.Y. Apr. 23, 2019). Since 1982, § 546(e) has been broadened on numerous occasions, including most recently in 2006. *See Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 890 (2018) ("Congress amended the securities safe harbor exception over the years, each time expanding the categories of covered transfers or entities.").

- 203.   As the Second Circuit held in the *Section 546(e) Decision*, 773 F.3d at 422, the Nelsons had enforceable state rights to full payment of their securities entitlements under Section 8-501(b)(1) of the New York Uniform Commercial Code. "Each time a customer requested a withdrawal from [Madoff], he or she intended that [Madoff] dispose of securities and remit payment." *Section 546(e) Decision*, 773 F.3d at 422, citing N.Y.U.C.C. § 8-501(b)(1) and cmt. 2. When a broker "indicates by book entry that a

---

[9] *See* 10-04377 Action, ECF No. 176; 10-04658 Action, ECF No. 179. Defendants twist the Second Circuit's ruling in *Fishman* to suggest the Second Circuit was referring to transfers from Madoff individually, not BLMIS. *See* Defendants' FOF, ¶ 139 (stating "all of Madoff's customers were parties to securities contracts," and "[t]he Second Circuit held that the challenged payments to customers were settlement payments, made in response to Madoff's customers' instructions to him."). However, in all briefing before the Second Circuit and in *Fishman*, the parties and the Second Circuit were referring to BLMIS, not Madoff.

7

financial asset has been credited to the person's securities account," the customer has a statutory right to payment of that reported amount. N.Y.U.C.C. § 8-501(b)(1).

Within Defendants' FOF, a single pleading, Defendants take contradictory positions in an effort to benefit from both the section 546(e) defense and their more recent argument that the Trustee lacks standing—a textbook situation for applying judicial estoppel.

### B. Defendants' Standing Argument is Clearly Inconsistent With Their Previous Position That They Received Transfers From BLMIS

Judicial estoppel prevents a party "from prevailing in *one phase of a case* on an argument and then relying on a contradictory argument to prevail in *another phase*." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000); *see also Sewell v. 1199 Nat'l Benefit Fund for Health & Human Servs.*, 187 F. App'x 36, 40 (2d Cir. 2006) (plaintiffs judicially estopped from arguing on appeal they had a contractual relationship with defendant because argument was clearly inconsistent with briefings before the lower court where they disclaimed any such relationship).

Defendants state that "[n]o one disputes that the Nelsons received transfers from a broker or financial institution in connection with a securities contract," yet that is exactly what they claim here. Defendants' Reply Memorandum of Law in Further Support of Motion at 19, 10-04377 Action, ECF No. 184; 10-04658 Action, ECF No. 187. As discussed above, in order to invoke the protections of section 546(e), Defendants argued successfully that the *transfers were made by BLMIS* in connection with securities contracts they signed with BLMIS. Their current position is to disavow those contracts and the prior rulings in their favor to claim that the Trustee lacks standing to avoid and recover transfers because they allege the *transfers were not made by BLMIS* but were instead by Madoff personally. *See, e.g.*, Motion at 2 ("[A]ll of the alleged withdrawals made to the Nelsons were drawn on an account in the name of 'Bernard L. Madoff'"); Defendants' FOF, ¶ 2 ("As the evidence at trial irrefutably demonstrated, the Trustee lacks Article III standing to bring these actions against the Nelsons because all of the transfers at

8

issue were not of 'an interest of the debtor in property' pursuant to 11 U.S.C. § 548(a), but instead were all from an account that was the property of Bernard L. Madoff.").

Here, Defendants' inconsistent positions cannot be reconciled. Defendants were either customers of BLMIS, which they originally argued in their Claims in 2009, and then again argued in 2013 to obtain the benefit of section 546(e), or they were not, which they try to assert here to support their contention the Trustee lacks standing.

### C. This Court Adopted Defendants' Position When It Dismissed the Six-Year Transfers

In determining whether to invoke judicial estoppel, courts consider whether a court accepted or adopted the party's earlier position. *Intellivision*, 784 F. Supp. 2d at 363–64. Courts do not need to "expressly assume a party's position in formulating its opinion or even issue a final decision on the merits." *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 353 (S.D.N.Y. 2013). It is enough that courts accept the accuracy of a party's prior position and that it "might have" made a different decision. *Id.* (citing *New Hampshire*, 532 U.S. at 752) (finding the court's acceptance of a consent decree estopped a party from taking a contrary position).

There is no dispute that Defendants' position that it received transfers from the broker—BLMIS—was accepted when the District Court dismissed claims for transfers outside the Two-Year Period based on the section 546(e) defense, as affirmed by the Second Circuit in *Fishman*. *See* Consent Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12–MC–0115 (S.D.N.Y. May 16, 2012), ECF No. 109; *Fishman*, 773 F.3d at 423.

### D. If Allowed to Maintain Inconsistent Positions, Defendants Would Gain Unfair Advantage to the Detriment of the Trustee and Customer Estate

Finally, courts consider the unfair advantage of a party's inconsistent position against the party seeking estoppel. *See Embraer S.A. v. Dougherty Air Tr., LLC*, 348 F. Supp. 3d 246, 256

9

(S.D.N.Y. 2018) (citing *DeRosa*, 595 F.3d at 103); *see also Intellivision*, 784 F. Supp. 2d at 365 (estopping plaintiffs from "eleventh-hour recharacterization of the facts of the case" because "plaintiffs would both 'derive an unfair advantage' and 'impose an unfair detriment on the opposing party'" (quoting *New Hampshire*, 532 U.S. at 751)).

If Defendants were allowed to argue clearly inconsistent positions in this case, they would undoubtedly derive an unfair advantage. By arguing they received transfers from BLMIS in connection with securities contract or settlement payments, Defendants' liability was reduced by $4,636,671 (by $841,671 in the 10-04658 Action and by $3,795,000 in the 10-04377 Action). Nearly six years later, Defendants now argue the opposite, that they did *not* receive transfers from BLMIS, in order to obtain dismissal of these Adversary Proceedings. This is an unfair advantage to the detriment of the BLMIS customer estate and Defendants should be estopped.

Further, it must be noted that even if Defendants are not judicially estopped, their current position lacks merit given the evidence indicating Defendants in fact received transfers from the broker—BLMIS. The Trustee demonstrated through evidence adduced at trial, as further described in the Trustee's FOF and Opposition,[10] that Defendants received the transfers at issue from BLMIS and the Trustee has standing to recover those transfers.

## CONCLUSION

For the reasons set forth above, the Trustee respectfully requests that the Motion be denied and the Court rule that the Trustee has standing to recover transfers BLMIS made to Defendants.

---

[10] *See also* SIPC's Opposition.

10

| | |
|---|---|
| Dated: November 6, 2019<br>New York, New York | Respectfully submitted,<br><br>*/s/ Dean D. Hunt*<br>David J. Sheehan<br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York  10111<br>Tel: (212) 589-4200<br>Fax: (212) 589-4201<br>David J. Sheehan<br>Email:  dsheehan@bakerlaw.com<br>Dean D. Hunt<br>Email: dhunt@bakerlaw.com<br>Nicholas J. Cremona<br>Email: ncremona@bakerlaw.com<br>Lan Hoang<br>Email:  lhoang@bakerlaw.com<br>Seanna R. Brown<br>Email:  sbrown@bakerlaw.com<br><br>*Attorneys for Irving H. Picard, Trustee*<br>*for the Substantively Consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC and the Chapter 7 Estate of*<br>*Bernard L. Madoff* |