Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
David J. Sheehan
Seanna R. Brown
Heather R. Wlodek

Hearing Date: December 12, 2019
Hearing Time: 10:00 a.m. (EST)
Objection Deadline: December 5, 2019
Time: 4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**THIRTY-FIRST APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP**
**FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED**
**FROM APRIL 1, 2019 THROUGH JULY 31, 2019**

## TABLE OF CONTENTS
### (continued)

**Page**

I.     PRELIMINARY STATEMENT ...............................................................1

II.    BACKGROUND ...................................................................................4

    A.     THE SIPA LIQUIDATION ..............................................................4

    B.     THE TRUSTEE, COUNSEL AND CONSULTANTS ...........................4

    C.     PRIOR COMPENSATION ORDERS..................................................5

III.   SUMMARY OF SERVICES .................................................................7

    A.     HARDSHIP PROGRAM ..................................................................7

    B.     THE RECOVERY AND RETURN OF CUSTOMER PROPERTY .......8

IV.    DETAILED DESCRIPTION OF SERVICES .......................................8

    A.     MATTER 01 ...................................................................................9

        a.     Task Code 02: Bankruptcy Court Litigation..............................9

        b.     Task Code 03: Feeder Funds.................................................11

        c.     Task Code 05: Internal Meetings with Staff............................11

        d.     Task Code 07: Billing and Trustee Reports............................11

        e.     Task Code 08: Case Administration .......................................12

        f.     Task Code 11: Press Inquiries and Responses...........................12

        g.     Task Code 12: Document Review ...........................................13

        h.     Task Code 13: Depositions and Document Productions by
        the Trustee.........................................................................13

        i.     Task Code 14: International...................................................13

        j.     Task Code 21: Allocation .....................................................14

    B.     MATTER 05 – CUSTOMER CLAIMS ............................................16

        a.     Customer Claims..................................................................16

        b.     General Creditor Claims .......................................................16

        c.     The Trustee Has Kept Customers Informed Of The Status
        Of The Claims Process.........................................................17

    C.     MATTER 07 – MADOFF FAMILY .................................................18

    D.     MATTER 09 – FAIRFIELD GREENWICH.......................................19

# TABLE OF CONTENTS
## (continued)

| | | | Page |
|---|---|---|---|
| E. | MATTER 11 – COHMAD SECURITIES CORPORATION | | 22 |
| F. | MATTER 12 – PICOWER | | 24 |
| | a. | Picard v. Marshall | 26 |
| | b. | Picard v. A&G Goldman Partnership | 28 |
| G. | MATTER 13 – KINGATE | | 29 |
| H. | MATTER 19 – RUTH MADOFF | | 31 |
| I. | MATTER 21 – AVOIDANCE ACTION LITIGATION and MATTER 75 – GOOD FAITH 5A COHMAD REFERRED ACCOUNTS | | 33 |
| | a. | Resolution of Good Faith Avoidance Actions | 34 |
| | b. | Summary Judgment Motions | 34 |
| | c. | Trial-Related Motion Practice | 36 |
| J. | MATTER 29 – RYE/TREMONT | | 40 |
| K. | MATTER 30 – HSBC | | 42 |
| L. | MATTER 32 – LUXALPHA UBS/LIF | | 44 |
| M. | MATTER 34 – CITIBANK | | 45 |
| N. | MATTER 35 – NATIXIS | | 45 |
| O. | MATTER 37 – ABN AMRO | | 46 |
| P. | MATTER 39 – FORTIS | | 49 |
| Q. | MATTER 40 – MEDICI/KOHN | | 50 |
| R. | MATTER 51 – CRUPI | | 50 |
| S. | MATTER 53 – MAGNIFY | | 51 |
| T. | MATTER 59 – STANLEY SHAPIRO | | 52 |
| U. | MATTER 60 – AVELLINO & BIENES | | 53 |
| V. | MATTER 62 – SUBSEQUENT TRANSFERS | | 54 |
| W. | MATTER 65 – LEGACY | | 55 |
| X. | MATTER 71 – SQUARE ONE | | 57 |
| Y. | MATTER 77 – EXTRATERRITORIALITY | | 58 |
| V. | COMPENSATION REQUESTED | | 59 |

**TABLE OF CONTENTS**
**(continued)**

<u>**Page**</u>

VI.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ...................63

VII.    CONCLUSION....................................................................................................................65

**TO THE HONORABLE STUART M. BERNSTEIN**
**UNITED STATES BANKRUPTCY JUDGE:**

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and the chapter 7 case of Bernard L. Madoff ("Madoff"), individually (collectively, the "Debtor"), respectfully submits this thirty-first application (the "Application") on behalf of the Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing April 1, 2019 through and including July 31, 2019 (the "Compensation Period") of $32,929,220.70, and (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period of $578,705.53, and in support thereof, respectfully represents as follows:

I.     **PRELIMINARY STATEMENT**

1.     The work completed as counsel to the Trustee during the Compensation Period yielded significant results for BLMIS customers and the liquidation. Through pre-litigation and

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

1

other settlements, which were approved by the Bankruptcy Court and/or the District Court, the

Trustee has successfully recovered, or reached agreements to recover, nearly $14.286 billion as of

October 31, 2019[2] for the benefit of all customers of BLMIS with an allowed claim.[3]

2.      The Trustee has made ten interim distributions of customer property to date. *See*

discussion *infra* Section IV(A)(j). The Trustee has distributed approximately $13.49 billion to

BLMIS customers through October 31, 2019, inclusive of SIPC advances in the amount of $847.70

million.[4] *See* discussion *infra* Section IV(A)(j).

3.      No administration costs, including the compensation of the Trustee and his counsel,

will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.

Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy

Code is not applicable in a SIPA liquidation, *see* § 78eee(b)(5)(C) of SIPA, no applications filed

by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for

the benefit of BLMIS customers. Rather, all fees, expenses, and administrative costs incurred by

the Trustee and his counsel including, but not limited to, B&H, various international special

counsel retained by the Trustee (collectively referred to herein as "International Counsel"),

including Browne Jacobson LLP ("Brown Jacobson"), Soroker-Agmon ("Soroker"), Williams

Barristers & Attorneys ("Williams Barristers"), various special counsel to the Trustee (collectively

---

[2] On August 6, 2019, the United States Bankruptcy Court for the Southern District of New York approved an $860 million recovery agreement with Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. The BVI Court and the Bermuda Court approved the settlement on September 18, 2019 and October 8, 2019, respectively. *See infra* Section IV(G). The settlement closed on October 29, 2019 and $860 million was added to the Customer Fund. This $860 million recovery and other October recoveries, when combined with recoveries of $13,425,589,244.03 through September 30, 2019, brings the total recoveries to date to more than $14,285,589,244.03.

[3] In general, figures will be reported as of July 31, 2019, unless otherwise noted.

[4] SIPC makes advances to satisfy customer claims before the Trustee recovers funds. Since the Trustee has recovered funds to satisfy customers up to $1,490,000, SIPC is reimbursed for the advances to customers whose claims have been fully satisfied to date. 1,428 BLMIS accounts have been fully satisfied.

referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and consultants, are paid out of administrative advances made by SIPC, as SIPA plainly directs. As Judge Lifland affirmed: "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.     As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.     In a SIPA liquidation proceeding such as this, where the general estate is insufficient to pay trustee and counsel compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration. *See* SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2). SIPC staff has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered. Each month, SIPC staff, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein. Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

6.     During the hearing on the Eighth Interim Fee Application, Judge Lifland acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities
> started off by Bernie Madoff and the sequelae is left for everybody else to follow

3

> all the trails and the trails do lead almost everywhere in the world. It is clear under
> the circumstances that a Herculean effort to follow those trails has been involved
> both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

7.    No single document can capture all of the tasks engaged in by the Trustee and B&H since their appointment on December 15, 2008. Hundreds of thousands of hours have been expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and advance the interests of all claimants by litigating and settling cases for the return of customer property ("Customer Property"). Moreover, the Trustee has vigorously defended the estate with respect to a number of litigations filed against it and against his protection of Customer Property. The following discussion and materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

## II.    BACKGROUND

### A.    THE SIPA LIQUIDATION

8.    The Trustee and B&H's prior interim fee applications, each of which is fully incorporated herein, have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

### B.    THE TRUSTEE, COUNSEL AND CONSULTANTS

9.    The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

10.    In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

11.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach. The Trustee, with the assistance of his counsel,

has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities. To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

### C.    PRIOR COMPENSATION ORDERS

12.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

| **Applications** | **Compensation Period** | **Orders Entered**[5] |
|---|---|---|
| First Application (ECF Nos. 320, 321) | December 11, 2008 to May 31, 2009 | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | June 1, 2009 to September 30, 2009 | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | October 1, 2009 to January 31, 2010 | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | February 1, 2010 to May 31, 2010 | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | June 1, 2010 to September 30, 2010 | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | October 1, 2010 to January 31, 2011 | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | February 1, 2011 to May 31, 2011 | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |

---

[5] On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee. The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCACreque, an additional $0.60 became due and owing to that firm.

| Applications | Compensation Period | Orders Entered[5] |
|---|---|---|
| Eighth Application (ECF No. 4676) | June 1, 2011 to September 30, 2011 | January 2, 2013 (ECF No. 5181);[6] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | October 1, 2012 to January 31, 2012 | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | February 1, 2012 to June 30, 2012 | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | July 1, 2012 to November 30, 2012 | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | December 1, 2012 to April 30, 2013 | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | May 1, 2013 through July 31, 2013 | December 17, 2013 (ECF No. 5605) |
| Fourteenth Application (ECF No. 5980) | August 1, 2013 through November 30, 2013 | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | December 1, 2013 through March 31, 2014 | August 28, 2014 (ECF No. 7825) |
| Sixteenth Application (ECF No. 8549) | April 1, 2014 through July 31, 2014 | December 22, 2014 (ECF No. 8867) |
| Seventeenth Application (ECF No. 9583) | August 1, 2014 through November 30, 2014 | April 16, 2015 (ECF No. 9823) |
| Eighteenth Application (ECF No. 10814) | December 1, 2014 through March 31, 2015 | August 27, 2015 (ECF No. 11148) |
| Nineteenth Application (ECF No. 12089) | April 1, 2015 through July 31, 2015 | December 18, 2015 (ECF No. 12292) |
| Twentieth Application (ECF No. 12958) | August 1, 2015 through November 30, 2015 | April 28, 2016 (ECF No. 13180) |
| Twenty-First Application (ECF No. 13751) | December 1, 2015 through March 31, 2016 | September 8, 2016 (ECF No. 13990) |
| Twenty-Second Application (ECF No. 14456) | April 1, 2016 through July 31, 2016 | December 23, 2016 (ECF No. 14778) |
| Twenty-Third Application (ECF No. 15355) | August 1, 2016 through November 30, 2016 | May 10, 2017 (ECF No. 15984) |
| Twenty-Fourth Application (ECF No. 16367) | December 1, 2016 through March 31, 2017 | August 24, 2017 (ECF No. 16562) |
| Twenty-Fifth Application (ECF No. 16886) | April 1, 2017 through July 31, 2017 | December 21, 2017 (ECF No. 17072) |

---

[6] This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

| Applications | Compensation Period | Orders Entered[5] |
|---|---|---|
| Twenty-Sixth Application (ECF No. 17337) | August 1, 2017 to November 30, 2017 | April 25, 2018 (ECF No. 17524) |
| Twenty-Seventh Application (ECF No. 17763) | December 1, 2017 to March 31, 2018 | August 30, 2018 (ECF No. 17941) |
| Twenty-Eighth Application (ECF No. 18180) | April 1, 2018 to July 31, 2018 | December 20, 2018 (ECF No. 18324) |
| Twenty-Ninth Fee Application (ECF No. 18562) | August 1, 2018 to November 30, 2018 | April 25, 2019 (ECF No. 18696) |
| Thirtieth Fee Application (ECF No. 18867) | December 1, 2018 to March 31, 2019 | September 6, 2019 (ECF No. 18984) |

## III.    SUMMARY OF SERVICES

13.    A SIPA proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.    Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

### A.    HARDSHIP PROGRAM

14.    As of July 31, 2019, the Trustee had received 459 applications from avoidance action defendants relating to 305 adversary proceedings and 645 defendants. After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 281 Hardship Program applicants-defendants from avoidance actions. As of July 31, 2019, there were 13 Hardship Program applicants-defendants still under review and 364 applicants-defendants were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action

complaints while their Hardship Program applications are pending. Hardship applications continue to be submitted.

### B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY

15.    Without the need for protracted litigation, during the Compensation Period, the Trustee settled 7 cases for $3,838,010.00. Through the end of the Compensation Period, the Trustee had successfully recovered approximately $13.412 billion.[7]

16.    The Trustee entered into settlements subsequent to the Compensation Period that will bring additional funds into the Customer Fund.

17.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, will result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

18.    Through the end of the Compensation Period, the Trustee recovered $536,092,384.27 as a result of preferences and other settlements that were made pursuant to agreements subject to the net equity dispute. The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

## IV.    DETAILED DESCRIPTION OF SERVICES

19.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested. All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims. The following is a more detailed synopsis of the significant services rendered by the

---

[7] As of October 31, 2019, the Trustee has successfully recovered, or reached agreements to recover, more than $14,285,589,244.03. This total includes all recoveries through September 30, 2019 plus the $860 million Kingate recovery that was recorded on October 29, 2019 (see footnote 2) and other October recoveries.

Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

20.     Matter Number 01 is the general matter number used for tasks by the Trustee and B&H. Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

21.     Matter Numbers 03-77 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities. In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and engage in discussions with counsel for defendant(s). Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

### A.    MATTER 01

22.     This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

#### a.    Task Code 02: Bankruptcy Court Litigation

23.     This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

24.     During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations. They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations including developments in Ponzi law, fraudulent transfer law, bankruptcy matters, privilege, evidence, and rules regarding experts and expert testimony.

25.    Several customers, including claimant Mr. Aaron Blecker, objected to the Trustee's denial of their net equity claims because they disputed whether they received funds that appear to be identified on BLMIS customer account statements as "PW," or "Profit Withdrawals."

26.    Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions. Accordingly, the Trustee instituted an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper. (ECF No. 10266).

27.    Following extensive briefing, discovery, and motion practice, the Court held a trial on the matter on January 19, 2018. After hearing testimony from the Trustee's professionals, Mr. Blecker's son, and BLMIS employees, and consideration of the BLMIS books and records offered into evidence, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS customer statement indicated that the customer received a cash distribution in the amount of the PW Transaction. Because claimant Mr. Blecker failed to provide any credible, contrary evidence that the "PW" Transactions on his customer statements were not received, he failed to sustain his burden of proving the amount of his customer claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513 (Bankr. SDNY 2018). The Court entered its Order Affirming the Trustee's Determinations Denying Claims and Overruling the Objections of Participating Claimant Aaron Blecker on August 3, 2018. (ECF No. 17878).

28.    An appeal was taken to the District Court and was fully briefed by January 18, 2019. (ECF Nos. 18, 19, 20, 23, 24). Appellants challenged this Court's application of the Federal Rules of Evidence in admitting and relying on the BLMIS books and records in finding that the Profit Withdrawal Transactions were properly treated as debits under the Net Investment Method.

10

On August 16, 2019, the District Court affirmed the Bankruptcy Court's decision. *Blecker v. Picard*, 2019 WL 3886721 (Aug. 16, 2019). The District Court found no abuse of discretion in the decision; specifically, it found that that this Court rigorously and properly applied the Federal Rules of Evidence and its admission of BLMIS's books and records as business records was proper. The District Court further held that the burden to overcome the Trustee's claim determination was Mr. Blecker's and he failed to do so.

29.      On September 13, 2019, an appeal of the District Court's decision was taken to the Second Circuit. *Blecker v. Picard*, Docket No. 19-2988.

### b.      Task Code 03: Feeder Funds

30.      This categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors. The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and prosecute actions against such feeder funds for the recovery of Customer Property. Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

### c.      Task Code 05: Internal Meetings with Staff

31.      This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals. Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

### d.      Task Code 07: Billing and Trustee Reports

32.      This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries,

writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding

to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### e.    Task Code 08: Case Administration

33.    This category relates to time spent assisting the efficient administration of the case.

34.    The Trustee filed several motions before this Court that govern the treatment of and

procedures related to the efficient litigation of these actions. These procedures ensure compliance

with the Bankruptcy Code and SIPA, as well as consistency and transparency.

35.    On October 20, 2011, the Trustee and B&H moved for an Order Establishing

Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding

and all related adversary proceedings. (ECF No. 4469). This Court entered the Order on December

5, 2011. (ECF No. 4560).

36.    On October 28, 2011, this Court entered an Order Granting Supplemental Authority

to Stipulate to Extensions of Time to Respond and Adjourn Pre-Trial Conferences to March 16,

2012. (ECF No. 4483). Supplemental Orders were entered granting authority to extend time to

respond to the complaint and adjourn the pre-trial conferences through September 14, 2012 (ECF

No. 4483), July 18, 2014 (ECF No. 5358), January 16, 2015 (ECF No. 7037), July 17, 2015 (ECF

No. 8762), July 15, 2016 (ECF No. 12312), December 23, 2016 (ECF No. 13601), July 31, 2017

(ECF No. 14447), December 31, 2017 (ECF No. 16169), June 27, 2018 (ECF No. 16718), and

December 19, 2018 (ECF No. 17560). On October 18, 2018, a supplemental Order was entered

granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences

through December 18, 2019 (ECF No. 18093).

### f.    Task Code 11: Press Inquiries and Responses

37.    This category relates to time spent by the Trustee, B&H attorneys, and

paraprofessionals in responding to press inquiries, preparing and issuing press releases, and

preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

###### g.     Task Code 12: Document Review

38.     This category relates to time spent by the Trustee and B&H attorneys reviewing and analyzing BLMIS documents and documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee, in order to assess relevance to case-wide strategies and to identify and develop evidence in support of the Trustee's claims and defenses, as well as other discovery-related tasks that cross multiple cases.

###### h.     Task Code 13: Depositions and Document Productions by the Trustee

39.     This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter, including team meetings, discussions and strategizing among Discovery Management Team case liaisons; research and analysis of issues with potential case-wide implications; creation and management of document databases, filing systems and related reference materials; creation and revision of discovery resources and procedural guidance; analysis and coordination of discovery affirmatively produced by the Trustee in avoidance actions; and responding to discovery propounded to the Trustee by various third parties and defendants in avoidance actions.

###### i.     Task Code 14: International

40.     The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Guernsey, Ireland, Israel, Liechtenstein,

Luxembourg, Spain, and Switzerland. These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

41.     This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions. The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

42.     In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

### j.    Task Code 21: Allocation

43.     This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

44.     The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

45.     The Trustee filed ten motions seeking entry of an order approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through 10/31/19 | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $879.6 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.395 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $895.6 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $602.5 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[8] | $519.2 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/2015 | $345.472 million[9] | $1.558 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/2016 | $247.013 million | $245.3 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/2017 | $342.322 million | $324.5 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/2018 | $1.303 billion | $712.3 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/2019 | $515.974 million | $509.2 million | 2.729% | 18295 | 18398 |
| TOTAL | N/A | $13.305 billion | $12.641 billion | 66.633% | N/A | N/A |

46.     On January 22, 2019, this Court approved the Trustee's tenth allocation and distribution to customers. Through October 31, 2019, the Trustee distributed approximately $509.2 million on allowed claims, or 2.729% of each customer's allowed claim, unless the claim was fully satisfied. This represents a significant milestone in this litigation, with 1,428 BLMIS accounts fully satisfied through October 31, 2019.[10] When combined with the prior nine distributions, and $847.7 million in advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"), the Trustee has distributed approximately $13.489 billion to BLMIS

---

[8]The total amount allocated in the Fifth Allocation and Fifth Interim Distribution Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[9]This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Distribution Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

[10]Any customer with an allowed claim of $1,490,000.00 has been fully satisfied.

customers (related to 2,281 accounts) through October 31, 2019, or 66.633% of each BLMIS allowed customer claim.

## B.   MATTER 05 – CUSTOMER CLAIMS

### a.   Customer Claims

47.   During the Compensation Period, the Trustee allowed $1,777,000.00 in customer claims. Subsequent to the Compensation Period, the Trustee allowed an additional $1,661,188,930.43 in customer claims, bringing the total amount of allowed claims as of October 31, 2019 to $19,307,107,125.42. As of October 31, 2019, the Trustee has paid or committed to pay $847,699,334.97 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

48.   As of October 31, 2019, 21 claims relating to 13 accounts remained "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### b.   General Creditor Claims

49.   As of July 31, 2019, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 450 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265 million. At this time, the BLMIS general estate has no funds from which to make distributions to

16

priority/non-priority general creditors and/or broker dealers. If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e). All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate. The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

### c.   The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

50.     Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

51.     The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

52.     In addition, the Trustee Website allows claimants and third parties to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone

call to the claimants. As of July 31, 2019, the Trustee and his professionals had received and
responded to more than 7,100 e-mails via the Trustee website from BLMIS customers and their
representatives and fielded thousands of calls from claimants and their representatives.

53.     In sum, the Trustee and his team have endeavored to respond in a timely manner to
every customer inquiry and ensure that the customers are as informed as possible about various
aspects of the BLMIS proceeding.

## C.    **MATTER 07 – MADOFF FAMILY**

54.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing
numerous avoidance actions against members of the Madoff family and Madoff-related business
entities.

55.     During the Compensation Period, the Trustee continued to manage and attempt to
liquidate certain marketable securities and fund and business interests transferred pursuant to the
June 23, 2017 Stipulation and Order of Settlement (the "Stipulation") entered into between and
among the Trustee, the U.S. Attorney's Office for the Southern District of New York (the
"Government"), and the Estates of Andrew H. Madoff and Mark D. Madoff (the "Estates"). The
Stipulation, which resolved all of the Trustee's claims against the Estates in *Picard v. Andrew H.
Madoff*, Adv. Pro. No. 09-01503 (SMB), and against various Madoff-related business entities in
related adversary proceedings, was approved by the Court on July 24, 2017. (ECF No. 311). The
Trustee and the Government share all assets received under the Stipulation equally.

56.     As of March 31, 2019, the last day of the prior Compensation Period, the Trustee
had received $13,291,108.72 under the Stipulation. As of July 31, 2019, the Trustee received an
additional $609,912.30 from distributions and sales of certain of the assets under management and
liquidation.

### D.    MATTER 09 – FAIRFIELD GREENWICH

57.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009). This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions, as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

58.     On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators") (ECF No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

59.     As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators

also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield

Greenwich Group management companies, officers, and partners, and the Trustee retained his own

claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed

to share future recoveries in varying amounts, depending on the nature of the claims.

60.     On July 7, 2011, this Court approved a settlement between the Trustee and the

Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount

over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard

v. Fairfield Sentry*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y.), (ECF No. 107). In the

settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from

approximately $143 million to approximately $37 million, for a combined reduction of over $105.9

million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against

Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they

receive against service providers.

61.     On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed

motions to withdraw the reference on a number of issues that later became subject to common

briefing and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented

argument at the hearings on these issues before the District Court. As of July 31, 2014, the District

Court had issued decisions on all issues subject to common briefing and remanded the cases to this

Court for further findings based on the legal standards set forth in the District Court's decisions.

62.     On June 6, 2012, the Trustee filed additional recovery actions against entities or

persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*,

Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc*., Adv. No. 12-01702

(SMB) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.).

The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court. None

of the defendants in the three actions have yet responded to the Trustee's complaints.

63.    On November 22, 2016, this Court issued its decision on the extraterritoriality

motion to dismiss. *See* discussion *infra* Section IV(Y). Under the decision, some of the claims

against the moving defendants in the Fairfield, Barrenche, and RD Trust actions were dismissed.

Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of

certain non-moving defendants to the extraterritoriality motion to dismiss. The parties agreed to

consent to the entry of final judgments on the Court's extraterritoriality decision. Finally, the

parties consented to direct appeal of the extraterritoriality decision to the Second Circuit. On March

16, 2017, the Trustee filed his notice of appeal in the Fairfield, Barrenche, and RD Trust actions.

(ECF Nos. 229, 97, 93). On September 27, 2017, the Second Circuit issued an order granting the

parties' request for certification for direct appeal of the appeal of the extraterritoriality decision.

*Picard v. Banque Lombard Odier & Cie SA.*, No. 17-1294 (2d Cir.), (ECF No. 388). On February

25, 2019, the Second Circuit reversed this Court's November 22, 2016 ruling. *See* discussion *infra*

Section IV(Y).

64.    On January 24, 2019, in the action filed by the Joint Liquidators against the

Fairfield management entities and individuals, *In re Fairfield Sentry Limited, et al.*, Adv. No. 10-

13164 (SMB), the parties entered a stipulation substituting the Trustee as the plaintiff. (ECF No.

87). On February 22, 2019, the Trustee filed a motion to amend the complaint with an attached

proffered Amended Complaint. (ECF No. 90).

65.    On March 25, 2019, this Court approved a settlement between the Trustee and

certain Fairfield management defendants: Lourdes Barrenche, Robert Blum, Cornelius Boele,

Gregory Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark

McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barrenche, Inc., Dove Hill Trust, Fortuna Asset Management, and Selecta Financial Corporation. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, Order (S.D.N.Y., March 25, 2019). (ECF No. 270). The Trustee's claims against the remaining Fairfield management defendants remain pending.

66.     On June 18, 2019, the Trustee and the remaining defendants informed this Court they had agreed to enter mediation. (ECF No. 272). As a result, at the parties' request, this Court ordered the June 26, 2019 pretrial conference to be continued to December 18, 2019. (ECF No. 273).

67.     On June 19, 2019, again at the parties' request, this Court entered an order consolidating the actions *Picard v. Fairfield Investment Fund Limited*, No. 09-01239 and *Picard v. Fairfield Greenwich Capital Partners*, No. 12-01702. The consolidated action shall proceed under *Picard v. Fairfield Investment Fund Limited,* No. 09-01239. (ECF No. 274).

68.     On September 25, 2019, this Court held a hearing with the Trustee and the remaining defendants in the consolidated actions regarding a future case schedule. At the hearing, the Trustee and the remaining defendants informed this Court they had agreed to enter mediation with Richard Davis as the mediator. The Court ordered the parties to report on the progress of the mediation at a hearing to be held on November 26, 2019 and further ordered all matters held in abeyance until December 31, 2019. (ECF No. 275).

## E.     MATTER 11 – COHMAD SECURITIES CORPORATION

69.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation ("Cohmad"), its principals, certain employees of Cohmad, and their family members who held BLMIS IA Accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances,

disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Morton Kurzrok, et al.*, Adv. Pro. No. 09-01305 (SMB) (Bankr. S.D.N.Y.).[11]

70.    In November 2016, a motion was filed under Federal Rule of Bankruptcy Procedure 9019 for court approval of a settlement with certain defendants, including Cohmad Securities Corporation, and Marcia Cohn and Marilyn Cohn, in their individual capacities and as co-executors of the Estate of Maurice Cohn. The Court approved that settlement on November 29, 2016. Those defendants were dismissed from this adversary proceeding on January 3, 2017.

71.    The Trustee also entered into settlement agreements throughout 2016 to 2019 with various defendants. These defendants were ultimately dismissed from this adversary proceeding. In addition, several other defendants were voluntarily dismissed from this adversary proceeding in connection with, among other things, negotiations.

72.    On August 26, 2019, a stipulation and order for voluntary dismissal was entered dismissing defendants The Estate of Stanley Merwin Berman a/k/a Stanley M. Berman, Joyce Berman individually and in her capacity as Executor of The Estate of Stanley Merwin Berman a/k/a Stanley M. Berman, and S & J Partnership from the adversary proceeding. (ECF No. 405).

73.    On September 10, 2019, the Court entered an amended case management plan (ECF No. 406), which allows for the depositions of certain defendants. The deposition of defendant Mr. Kurzrok is forthcoming.

---

[11] The Adversary Proceeding is currently captioned *Picard v. Morton Kurzrok, et al.*, Adv. Pro. No. 09-01305 (SMB), as a result of the Trustee's settlement with and dismissal from this adversary proceeding of, among others, Cohmad.

74.     On October 2, 2019, a stipulation and order for voluntary dismissal was entered by the Court dismissing defendant Jane M. Delaire a/k/a Jane Delaire Hackett from the adversary proceeding. (ECF No. 407).

75.     On October 23, 2019, a stipulation and order for voluntary dismissal was entered by the Court dismissing defendants Richard Spring, Jeanne T. Spring Trust, and The Spring Family Trust from the adversary proceeding. (ECF No. 413).

76.     Currently, Morton Kurzrok is the only remaining defendant in this adversary proceeding.

## F.    MATTER 12 – PICOWER

77.     This matter categorizes time spent by the Trustee and B&H attorneys in connection with the Trustee's litigation and settlement with Jeffry M. Picower ("Picower") and Barbara Picower, both individually and as trustees for various foundations, and related entities (collectively, the "Picower Parties"), and related litigation. The Trustee's lawsuit sought recovery of nearly $7 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Picower Parties. *Picard v. Picower*, Adv. No. 09-01197 (SMB) (Bankr. S.D.N.Y.).

78.     On January 13, 2011, this Court entered an Order (the "Picower Settlement Order") approving the $5 billion settlement between the Trustee and the Estate of Jeffry M. Picower et al. (ECF No. 43). BLMIS claimants Adele Fox and Susanne Stone Marshall (the "Fox Plaintiffs"), who had brought putative class actions against the Picower Parties in Florida in 2010, appealed the Picower Settlement Order. (ECF Nos. 45, 49). On March 26, 2012, United States District Judge John G. Koeltl issued an Opinion and Order affirming this Court's Picower Settlement Order and permanently enjoining certain duplicative or derivative actions against the Picower Parties. *Fox v.*

24

*Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012). On further appeal, the Second Circuit affirmed the District Court's decision on January 13, 2014. *See In re Bernard L. Madoff Inv. Sec., LLC*, 740 F.3d 81 (2d Cir. 2014).

79.     A forfeiture action against Picower's estate resulted in the additional recovery of more than \$2.2 billion to the United States Government (the "Picower Forfeiture"), which is intertwined with the Trustee's Picower settlement. *See United States v. \$7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 10 Civ. 09398 (TPG) (S.D.N.Y.). On May 23 and 24, 2011, United States District Judge Thomas P. Griesa entered a final order of forfeiture in favor of the United States. (ECF Nos. 16, 17). The Second Circuit dismissed an appeal of Judge Griesa's order, and on June 8, 2012, a final order of forfeiture was issued. *See United States v. \$7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 11-2898 (2d Cir. June 8, 2012), (ECF No. 85).

80.     Because the time to appeal the final order of forfeiture expired, the settlement amount of \$5 billion was transferred to the BLMIS estate and the Customer Fund.

81.     The Trustee has litigated to defend and enforce the Permanent Injunction multiple times against two primary sets of putative class action plaintiffs. Detail concerning those litigations can be found in the Trustee's prior fee applications.

82.     B&H attorneys are currently defending an appeal of this Court's decision enjoining third party actions that the Trustee has argued are subject to the permanent injunction issued in connection with the Trustee's settlement with the Picower Parties (the "Permanent Injunction"). During the Compensation Period there were developments in the District Court and the Second Circuit.

### a.    Picard v. Marshall

83.    The Trustee has sought to enjoin multiple actions brought over the years by the Fox Plaintiffs against the Picower Parties in view of the Permanent Injunction, which precludes claims that duplicate or derive from claims the Trustee brought or could have brought against the Picower Parties. This Court, the District Court, and the Second Circuit have ruled in prior actions by the Fox Plaintiffs that their proposed lawsuits violated the Permanent Injunction. *See e.g., Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010), *aff'd, Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd, In re Marshall*, 740 F.3d 81 (2d Cir. 2014); *Picard v. Marshall (In re Bernard L. Madoff)*, 511 B.R. 375 (Bankr. S.D.N.Y. 2014), *aff'd, Fox v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 531 B.R. 345 (S.D.N.Y. 2015).

84.    On August 29, 2015, while the appeal to the Second Circuit by the Fox Plaintiffs was still pending relating to their last proposed complaint, the Fox Plaintiffs brought a declaratory judgment action and motion seeking to file a third amended complaint against the Picower Parties ("*Fox III*"). The Fox Plaintiffs again alleged that the Picower Parties were control persons of BLMIS and incorporated testimony from a recently disclosed deposition of Bernard Madoff. In support of their claim, the Fox Plaintiffs also introduced on reply a declaration from Bernard Madoff in an unrelated case, which made references to Mr. Picower. The Fox Plaintiffs also stated in their papers that they intended to seek Bernard Madoff's deposition. The Trustee and Picower Parties objected to the Fox Plaintiffs' motion on the ground that the *Fox III* complaint was, like the predecessor complaints, duplicative and derivative of the Trustee's complaint, and further objected to the inclusion of Bernard Madoff's declaration.

85.    Counsel for the Fox Plaintiffs then moved in this Court on March 9, 2016 in an unrelated matter for the deposition of Bernard Madoff. The Trustee and Picower Parties objected to the motion in part on the ground that counsel would improperly seek testimony concerning Mr.

Picower, which was irrelevant to the matter. On March 23, 2016, this Court issued a bench ruling allowing counsel to depose Mr. Madoff, but prohibited any reference to Mr. Picower during the deposition.

86.     On March 7, 2017, after oral argument, this Court issued a memorandum decision, enforcing the Permanent Injunction, denying the Fox Plaintiffs' motion for summary judgment and dismissing the *Fox III* complaint. *Marshall v. Capital Growth Co.*, 568 B.R. 203 (Bankr. S.D.N.Y.)  The Court found that many of the allegations in *Fox III* were identical to the allegations in *Fox II*, and the damages sought were likewise the same. *Id.* at 210. With respect to the new allegations in *Fox III* about Mr. Picower's alleged role as a control person, the Court found that the allegations were "practically identical" to the allegations in *Goldman III* (discussed further below), which this Court, the District Court, and the Second Circuit ruled were conclusory, as well as common to all BLMIS customers and thus owned by the Trustee. *Id.* at 211-13. The allegations likewise failed to identify any conduct by the Picower Parties that was directed at a member of the putative class. *Id.* at 217. This Court further held that Bernard Madoff's deposition and declaration did not supply any facts that would support independent claims. *Id.* at 213-17.

87.     On appeal, the District Court issued a decision on March 19, 2019 affirming this Court's decision and held that the *Fox III* complaint did not "give rise to a colorable claim that Picower controlled BLMIS" in its misrepresentations. *Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 598 B.R. 102, 106 (S.D.N.Y. 2019). The District Court recognized that the "vast majority" of the *Fox III* complaint was copied almost verbatim from previous iterations of the complaint, and thus the complaint "repeat[ed] and repackage[ed]" allegations rejected by eleven other court decisions. *Id.* at 106. As to the remaining propping-up and counterparty allegations, the District Court "wholly agree[d]" with the Second Circuit's findings concerning *Goldman III*

27

(discussed below) that neither set of allegations demonstrated that Picower controlled BLMIS within the meaning of Section 20(a) and were nothing more than an attempt to "plead around" the Injunction. *Id.* at 113-14 (citing *In re Bernard L. Madoff Inv. Sec. LLC ("Goldman III")*, 739 F. App'x 679, 685-86 (2d Cir. June 27, 2018)). The District Court further affirmed this Court's findings concerning Bernard Madoff's deposition and declaration. *Id.* at 115-17.

88.    The Fox Plaintiffs appealed the District Court's decision to the Second Circuit, where it is currently being briefed. *See In re Bernard L. Madoff Inv. Secs. LLC*, No. 19-995 (2d Cir.).

### b.    Picard v. A&G Goldman Partnership

89.    The Trustee has also defended and enforced the Permanent Injunction against actions brought by another set of third-party plaintiffs, the "Goldman Plaintiffs." As with the Fox Plaintiffs, this Court, the District Court, and the Second Circuit have ruled in prior actions by the Goldman Plaintiffs that their proposed lawsuits violated the Permanent Injunction. *See e.g., Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 477 B.R. 351 (Bankr. S.D.N.Y. 2012), *aff'd sub nom.*, *A & G Goldman P'ship v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 12 Civ. 6109 (RJS), 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013); *Picard v. Marshall (In re Bernard L. Madoff)*, 511 B.R. 375 (Bankr. S.D.N.Y. 2014), *aff'd, Fox v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 531 B.R. 345 (S.D.N.Y. 2015); *Picard v. A & G Goldman P'ship (In re Bernard L. Madoff)*, 546 B.R. 284 (Bankr. S.D.N.Y. 2016), *aff'd, A & G Goldman P'ship v. Capital Growth Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 565 B.R. 510 (S.D.N.Y. 2017).

90.    On June 27, 2018, the Second Circuit issued a decision affirming the judgments of the Bankruptcy and District Courts enjoining the latest proposed complaint brought by the Goldman Plaintiffs, the *Goldman III* complaint. *See In re Bernard L. Madoff Inv. Sec. LLC*, 739 F. App'x 679 (2d Cir. June 27, 2018). The Second Circuit held that the facts alleged in *Goldman*

*III* did not give rise to a colorable claim that Picower controlled BLMIS, and held instead that the nature of the legal claim was a fraudulent transfer claim and thus derivative of the Trustee's claims. The Second Circuit held that the allegations showed only that Picower's actions injured the estate by removing assets that could have been used to repay other creditors and investors, and thus were "inseparable from, and predicated upon, [the] legal injury to the estate." *Id.* at 685. The Court further held that additional allegations were conclusory, did not support an inference of control, and amounted to "nothing more than an attempt to plead around the injunction." *Id.*

### G.    MATTER 13 – KINGATE

91.    This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law, and other applicable law of approximately $926 million in initial fraudulent transfers that BLMIS made to Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," together with Kingate Global, the "Kingate Funds"). The proceeding before the Court is captioned as *Picard v. Federico Ceretti*,[12] Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.). The Kingate Funds are in liquidation proceedings in the BVI and Bermuda under the auspices of court-appointed joint liquidators. Kingate Global and Kingate Euro each filed a customer claim in the SIPA proceeding in the combined total amount of approximately $800 million. The Trustee seeks to avoid and recover the fraudulent transfers and equitably subordinate the Kingate Funds' customer claims. Until this proceeding is resolved, the customer claims are temporarily disallowed under section 502(d) of the Bankruptcy Code.

---

[12] Defendant Ceretti and 15 other defendants were dismissed by this Court's November 22, 2016 Memorandum decision on the ground of comity. That order was reversed by the Second Circuit and those defendants are seeking a writ of certiorari from the Supreme Court.

92.     During the Compensation Period, the Trustee continued to evaluate the evidence acquired during discovery and analyze legal issues anticipated to be raised by the Defendants.

93.     Also during the Compensation Period, the Trustee and the Kingate Funds devoted substantial time to mediation, including preparing mediation statements and attending a multiple day mediation. The mediation was followed by a series of negotiations and discussions between counsel to the Trustee and the Kingate Funds. As a result, the Trustee and the Kingate Funds reached a settlement in principle.

94.     Following these discussions, the Trustee drafted a settlement agreement, along with substantive exhibits, the terms of which were further negotiated with the Kingate Funds.

95.     The Trustee prepared and on July 17, 2019 filed a Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Agreement by and among the Trustee and the Kingate Funds (the "Motion"). (ECF No. 413.).

96.     The deadline for filing objections to the Motion expired on August 1, 2019. On August 5, 2019, the Trustee filed a Certificate of No Objection to the Motion. (ECF No. 415).

97.     On August 6, 2019, the Bankruptcy Court entered an Order approving the settlement among the Trustee and the Kingate Funds (ECF No. No. 417).

98.     Pursuant to its terms, the settlement agreement is subject to approval by the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands ("BVI Court") and the Supreme Court of Bermuda ("Bermuda Court"), jurisdictions in which the Kingate Funds are in liquidation.

99.     On September 18, 2019, counsel for the Kingate Funds and the Trustee appeared before the BVI Court on an application seeking the approval of the settlement agreement. The BVI Court issued an Order granting approval.

100.     On October 8, 2019, counsel for the Kingate Funds and the Trustee appeared before the Bermuda Court on an application seeking the approval of the Settlement Agreement. The Bermuda Court issued an Order granting approval.

101.     The Kingate settlement closed on October 29, 2019, and $860 million was added to the Customer Fund.

102.     Throughout the Compensation Period, in addition to foreign counsel, the Trustee's counsel continued to work with the Trustee's consultants in analyzing documents obtained through discovery that further support the Trustee's claims in the Fourth Amended Complaint against the Kingate Funds.

103.     The Trustee's legal team includes the advice and counsel of the Trustee's foreign solicitors and barristers in the United Kingdom, Bermuda, and BVI.

### H.     **MATTER 19 – RUTH MADOFF**

104.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing and resolving the avoidance and recovery action against Ruth Madoff seeking the return of approximately $44 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law, in connection with certain transfers of property by BLMIS to or for the benefit of Ruth Madoff. *Picard v. Ruth Madoff*, Adv. Pro. No. 09-01391 (SMB) (Bankr. S.D.N.Y. July 29, 2009).

105.     The Trustee and B&H attorneys conducted an investigation into Ruth Madoff, including but not limited to, her role in BLMIS, her investments with BLMIS, and her use of BLMIS monies. The Trustee's investigation included, without limitation, the review and analysis

of documents and communications relating to, among other things, Mrs. Madoff's involvement with BLMIS and BLMIS-related entities, the transfers, the source of Mrs. Madoff's assets, and Mrs. Madoff's alleged use of corporate funds.

106.    Following the Trustee's investigation, the Trustee and Mrs. Madoff reached a settlement of the Trustee's claims (the "Settlement"). The principal terms and conditions of the Settlement include, among others, the following: (i) Mrs. Madoff shall make an upfront cash payment to the Trustee of Two Hundred and Fifty Thousand Dollars ($250,000.00) by bank check, wire transfer or other immediately available funds pursuant to the two-installment payment schedule set forth in the Settlement; (ii) Mrs. Madoff shall cause to be transferred to the Trustee the proceeds of two New York State 529 accounts at Ascensus Trust owned by Mrs. Madoff for the benefit of Grandchild A and Grandchild B valued at approximately Three Hundred Forty-Four Thousand Dollars ($344,000.00), less any applicable taxes, penalties or fees relating to the accounts; (iii) the proceeds of all of Mrs. Madoff's remaining assets at the time of her death shall be transferred to the Trustee following her death through a revocable trust, over which the Trustee shall have the right to preclude any changes; (iv) Mrs. Madoff will provide the Trustee with a copy of certain testamentary documents evidencing the entire transfer of her estate to the Trustee upon her death; (v) Mrs. Madoff shall cooperate with the Trustee and SIPC to the extent that her assistance is requested in connection with any of the Trustee's pending litigations; and (vi) Mrs. Madoff and the Trustee shall provide each other mutual releases, on the specific terms set forth in the Settlement.

107.    On May 3, 2019, the Trustee and B&H attorneys filed a motion to approve the Settlement (ECF No. 52), which was approved by this Court by order entered May 28, 2019 (ECF No. 57).

108.     During the Compensation Period, B&H attorneys negotiated with counsel for Mrs. Madoff to finalize the terms of the Settlement. B&H attorneys also prepared the Settlement Agreement and related documents and performed an extensive review of testamentary documents integral to the Settlement.

109.     During the Compensation Period, B&H attorneys also drafted and submitted the motion to approve the settlement and the related supporting papers, reviewed the order approving the settlement, and took steps to effectuate the settlement following approval. In addition, B&H attorneys corresponded with counsel for Mrs. Madoff on the numerous required testamentary documents and consulted with local trusts and estates counsel.

110.     B&H attorneys further corresponded with Mrs. Madoff's counsel and others concerning the mechanics of the settlement payments, including corresponding with Ascensus Trust concerning the liquidation of the two New York State 529 accounts in connection with the Settlement. After the effective date of the Settlement passed, B&H attorneys prepared and filed a notice of voluntary dismissal of the case, as contemplated by the Settlement Agreement.

### I.       MATTER 21 – AVOIDANCE ACTION LITIGATION AND MATTER 75 – GOOD FAITH 5A COHMAD REFERRED ACCOUNTS

111.     This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, discovery requests, and reviewing produced documents, communicating formally and informally with counsel for various defendants, reviewing Hardship Program applications, drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to

track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

### a.    Resolution of Good Faith Avoidance Actions

112.    At the beginning of the Compensation Period, there were 143 active good faith avoidance actions. Ten were closed during the Compensation Period, leaving a total of 133 active good faith avoidance actions by the end of the Compensation Period. In certain avoidance actions, the Trustee entered into mediations and where appropriate, agreed to dismiss certain defendants from the actions. During the Compensation Period, the Trustee dismissed three cases: one for a deceased defendant, one for hardship, and one for unlikely recovery/insufficient assets. In addition, the Trustee's counsel engaged in settlement negotiations, which led to seven cases entering into documented settlements during the Compensation Period.

### b.    Summary Judgment Motions

#### 1.    South Ferry/Lowrey Motions

113.    Prior to the Compensation Period, the Trustee entered into separate stipulations with (1) Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson, and Zev Wolfson, (2) Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and Abraham Wolfson, (3) Defendant United Congregations Mesora, and (4) James Lowrey, setting a schedule for summary judgment motion practice (collectively, the "South Ferry/Lowrey Actions"). *See* Adv. Pro. No. 10-04488, ECF No. 77; Adv. Pro. No. 10-04350, ECF No. 86; Adv. Pro. No. 10-05110, ECF No. 53; Adv. Pro. No. 10-04387, ECF No. 71.

114.    Prior to the Compensation Period, from July 2017 through September 2017, the parties in the South Ferry/Lowrey Actions filed and briefed motions for summary judgment. *See* Adv. Pro. No. 10-04488, ECF Nos. 86-93, 96-97, 100, 103; Adv. Pro. No. 10-04350, ECF Nos. 95-102, 105-106, 109, 112; Adv. Pro. No. 10-05110, ECF Nos. 60-69, 70-71, 74, 77; Adv. Pro.

No. 10-04387, ECF Nos. 78-81, 83-84, 86-87, 91-92. On December 6, 2017, oral argument was held on the parties' motions for summary judgment.

115.     On March 22, 2018, the Bankruptcy Court issued its Report and Recommendation to the District Court granting the Trustee's motion for summary judgment and denying the South Ferry/Lowrey Actions' motions for summary judgment. *See In re Bernard L. Madoff [Good Faith Summary Judgment]*, Adv. Pro. No. 08-01789 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. March 22, 2018).

116.     On April 26, 2018, counsel for the South Ferry/Lowrey actions filed their Rule 9003 Objections to the Bankruptcy Court's Report and Recommendation. *See* Adv. Pro. No. 10-04387, ECF No. 116. On June 1, 2018, the Trustee filed his Response to Defendants' Rule 9033 Objections. *See* Adv. Pro. No. 10-04387, ECF No. 119. As of June 14, 2018, the case was assigned to District Court Judge Paul Engelmayer for his review and approval.

117.     On February 7, 2019, Judge Engelmayer issued his ruling adopting the Bankruptcy Court's Report and Recommendation, granting summary judgment to the Trustee, and denying summary judgment to the Defendants in the South Ferry/Lowrey Actions. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), 2019 WL 479185 (S.D.N.Y. Feb. 7, 2019).

118.     Defendants filed their notice of appeal to the Second Circuit on February 19, 2019. *See* No. 18-cv-05381, ECF No. 32. Defendants subsequently posted the requisite bond on April 9, 2019. *See* No. 18-cv-05381, ECF No. 37.

119.     Defendants filed their appellate brief with the Second Circuit on June 4, 2019. *See* No. 19-429, ECF No. 82. The Trustee filed his appellee brief on September 3, 2019. *See* No. 19-

429, ECF No. 102. The Defendants filed their reply brief on October 4, 2019. *See* No. 19-419,

ECF No. 138. The parties have requested oral argument, but no date has been set.

### c.    Trial-Related Motion Practice

#### 1.    Nelson Actions

120.    Prior to the Compensation Period, on November 15, 2018, the Trustee submitted a

letter to the Bankruptcy Court indicating that the parties agreed to set trial in the matter of *Picard*

*v. Carol Nelson*, Adv. Pro. No. 10-04658 to begin on May 8, 2019, but the parties could not agree

on a trial date for *Picard v. Carol Nelson, et al.*, Adv. Pro. No. PN 10-04377 involving both Carol

Nelson and her husband Stanley Nelson (together, the "Nelson Actions"). Counsel for the Nelsons

also declined to agree to a consolidated trial of the Nelson Actions. *See* Adv. Pro. No. 10-04658,

ECF No. 114; Adv. Pro. No. No. 10-04377, ECF No. 108.

121.    On November 28, 2018, the Bankruptcy Court issued an oral order to show cause

why the Nelson Actions should not be consolidated for trial pursuant to Federal Rule of Civil

Procedure Rule 42 (the "Order to Show Cause"). On December 5, 2018, counsel for the Nelsons

filed their response, opposing consolidation, and on December 12, 2018, the Trustee filed his

response, in favor of consolidation. *See* Adv. Pro. No. 10-04658, ECF Nos. 118, 121; Adv. Pro.

No. 10-04377, ECF Nos. 113, 116.

122.    On December 5, 2018, counsel for defendants Carol Nelson and Stanley Nelson

moved to adjourn the trial *sine die*, to which the Trustee opposed on December 12, 2018. *See* Adv.

Pro. No. 10-04658, ECF Nos. 117-18, 120; Adv. Pro. No. 10-04377, ECF Nos. 112-13, 115 (the

"Motion to Adjourn"). Counsel for the defendants filed a reply brief on December 14, 2018. *See*

Adv. Pro. No. 10-04658, ECF No. 123; Adv. Pro. No. 10-04377, ECF No. 118.

123.    On December 19, 2018, the Bankruptcy Court heard arguments regarding the Order

to Show Cause and the Motion to Adjourn, and issued a bench ruling for the Nelson Actions to be

36

consolidated and scheduled for trial beginning May 8, 2019. *See* Adv. Pro. No. 10-04658, ECF No. 130; Adv. Pro. No. 10-04377, ECF No. 123. The Bankruptcy Court subsequently filed on January 2, 2019 its Memorandum Decision and Order Denying Motion to Adjourn Trials *Sine Die*. *See* Adv. Pro. No. 10-04658, ECF No. 127; Adv. Pro. No. 10-04377, ECF No. 126.

124.    On April 1, 2019, the Defendants sought to adjourn the trials again, but the Trustee opposed the Defendants' request in a letter response dated April 2, 2019. The Defendants replied in another letter dated April 3, 2019. On April 22, 2019, the Bankruptcy Court issued an order denying the Defendants' adjournment request. *See* Adv. Pro. No. 10-04658, ECF Nos. 133-137, Adv. Pro. No. 10-04377, ECF Nos. 130-34.

125.    On April 24, 2019, the Trustee filed three motions in limine: (1) to admit the plea allocutions of Bernard L. Madoff and BLMIS employees, (2) to admit the trial testimony of Frank DiPascali, and (3) to exclude testimony and exhibits related to the Defendants' asserted tax obligations to governmental taxing authorities. *See* Adv. Pro. No. 10-04358, ECF Nos. 138-140; Adv. Pro. No. 10-04377, ECF Nos. 135-138. On May 1, 2019, the Defendants filed their opposition briefs to the motions in limine. *See* Adv. Pro. No. PN 10-04658, ECF Nos. 150-51; Adv. Pro. No. 10-04377, ECF Nos. 147-48.

126.    On May 2, 2019, the Defendants filed their objection to the admissibility of the Trustee's Madoff and/or BLMIS-generated exhibits, and on May 6, 2019, to the admissibility of certain of the Trustee's exhibits that constituted expert reports and criminal trial testimony of Frank DiPascali. *See* Adv. Pro. No. PN 10-04658, ECF Nos. 152, 158; Adv. Pro. No. 10-04377, ECF Nos. 149, 155.

127.    On May 3, 2019, the Trustee filed his motion to quash the subpoena served on the Trustee and his motion to strike Bernard L. Madoff, Enrica Cotellessa-Pitz, and Agatha M. Cole

from Defendants' proposed witness list. *See* Adv. Pro. No. 10-04658, ECF Nos. 153-56; Adv. Pro. No. 10-04377, ECF Nos. 150-153. On May 6, 2019, the Defendants filed their opposition brief to both motions. *See* Adv. Pro. No. 10-04658, ECF No. 159; Adv. Pro. No. 10-04377, ECF No. 156.

128.    The trial was held on May 8, 2019 and May 9, 2019. On May 16, 2019, the parties stipulated, and the Bankruptcy Court so ordered, the post-trial briefing schedule, which stated that (1) the parties shall exchange exhibit lists and deposition and trial transcript designations by June 17, 2019, (2) the parties shall exchange objections to exhibits and objections and cross-designations to deposition and trial transcript designations by July 1, 2019, and (3) set deadlines for the parties to file their proposed Findings of Fact and Conclusions of Law. *See* Adv. Pro. No. 10-04658, ECF No. 160, Adv. Pro. No. 10-04377, ECF No. 157.

129.    The Trustee filed his proposed Findings of Fact and Conclusions of Law on July 30, 2019. *See* Adv. Pro. No. 10-04658, ECF No. 165; Adv. Pro. No. 10-04377, ECF No. 162.

130.    The Defendants filed their response to the Trustee's proposed Findings of Fact and Conclusions of Law on September 5, 2019. *See* Adv. Pro. No. 10-04658, ECF No. 178-79; Adv. Pro. No. 10-04377, ECF No. 175-76.

131.    Separately, on August 8, 2019, the Defendants moved to dismiss for lack of subject matter jurisdiction. *See* Adv. Pro. No. 10-04658, ECF Nos. 169-71; Adv. Pro. No. 10-04377, ECF Nos. 166-68. On September 18, 2019, the Trustee filed his opposition brief. *See* Adv. Pro. No. 10-04658, ECF Nos. 183-84; Adv. Pro. No. 10-04377, ECF Nos. 180-81. On September 20, 2019, Defendants filed their reply brief in further support of their motion to dismiss for lack of subject matter jurisdiction. *See* Adv. Pro. No. 10-04658, ECF Nos. 187, 191; Adv. Pro. No. 10-04377, ECF Nos. 184, 188. Oral argument was held on September 25, 2019, and the Bankruptcy Court denied the motion.

132.    On October 23, 2019, the Bankruptcy Court entered an order for supplemental briefing on the issue of judicial estoppel. *See* Adv. Pro. No. 10-04377, ECF No. 194.

### 2.    Michael Mann Action

133.    Prior to the Compensation Period, on September 28, 2018, the Bankruptcy Court issued an Order setting the trial in the *Picard v. BAM, L.P.,* Adv. Pro. No. 10-04390 (SMB) matter (the "Mann Action") to start on December 3, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 108. In response, the Defendants filed the Mann Motion to Withdraw on October 26, 2018, and on November 20, 2018, moved to stay the December 3 trial, pending a ruling from the District Court on the Mann Motion to Withdraw. *See* Adv. Pro. No. No. 10-04390, ECF Nos. 114, 121-122. The Trustee filed his opposition to the Defendants' motion to stay the trial on November 27, 2018, and oral arguments were held on November 28, 2018. *See* Adv. Pro. No. 10-04390, ECF Nos. 127-28, 130.

134.    At the November 28, 2018 hearing, the Bankruptcy Court offered the Defendants the opportunity to make an oral motion to withdraw their customer claims and objections to the Trustee's determinations of those claims, and the Court granted the motion, which was memorialized in the subsequent Order Withdrawing Claims and Objections With Prejudice And Finally Determining Net Equity filed on December 20, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 138. However, the order did not determine the Bankruptcy Court's jurisdiction over the Mann Action, for which the parties provided separate briefing on December 5, 2018 and December 12, 2018, respectively. *See* Adv. Pro. No. 10-04390, ECF Nos. 132, 137. On January 18, 2019, the Bankruptcy Court issued its Memorandum Decision and Order holding that the Court has equitable jurisdiction over the Mann Action despite the Defendants' withdrawal of their customer claims and objections (the "Jurisdictional Decision"). *See* Adv. Pro. No. 10-04390, ECF No. 148.

135. On January 25, 2019, the Defendants moved for leave to appeal the Jurisdictional Decision. *See* Adv. Pro. No. 10-04390, ECF Nos. 149-150. The Trustee opposed the motion on February 8, 2019. *See* Adv. Pro. No. 10-04390, ECF Nos. 155-156. On February 19, 2019, the Defendants filed their reply brief in further support of their motion for leave to appeal the Jurisdictional Decision. *See* No. 19-cv-00812, ECF Nos. 6-7. The motion for leave remains pending before District Court Judge Vernon S. Broderick.

136. On December 21, 2018, the Trustee filed his Motion for Summary Judgment in the Mann Action. *See* Adv. Pro. No. 10-04390, ECF Nos. 140-143. On February 22, 2019, the defendants filed their opposition brief to the Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 158-160. On March 27, 2019, the Trustee filed his reply brief in further support of his Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 164, 166-167. Oral argument before the Bankruptcy Court was held on April 24, 2019. *See* Adv. Pro. No. 10-04390*,* ECF No. 173. On September 11, 2019, the Bankruptcy Court issued its Memorandum Decision Granting Relief Under Federal Rule of Civil Procedure 56(g). *See* Adv. Pro. No. 10-04390*,* ECF No. 174.

## J.    **MATTER 29 – RYE/TREMONT**

137. This matter categorizes time spent by the Trustee and B&H attorneys following the settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS (the "Tremont

Litigation"). *Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010).

138.    After the court filing, the parties entered into substantive settlement negotiations, which resulted in a significant settlement approved by the Court on September 22, 2011. The settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF No. 38). This is the largest cash settlement to date in any case brought by the Trustee against any feeder or investment fund.

139.    Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court. There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").

140.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011. *See Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18, 2011). On June 27, 2012, United States District Judge George B. Daniels granted the Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012. (ECF Nos. 35, 36).

141.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37). Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

142.    On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.*, Adv. Proc. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al.*, Adv. Proc. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

143.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.,* Adv. Proc. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her. After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

144.    During the Compensation Period, B&H attorneys assisted in drafting and revising a rider to be inserted into the reply brief to the defendants' opposition to the Trustee's motion for leave to amend the original complaint in the Citibank case. B&H attorneys also continued their review of those documents recovered from Tremont's Iron Mountain warehouse facility that contained the remainder of its Madoff-related hard-copy documents.

## K.    **MATTER 30 – HSBC**

145.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), as well as affiliated feeder funds including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., and Alpha Prime Fund, as well as management companies affiliated with those funds, seeking the return of approximately $1.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law for preferences and fraudulent conveyances. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2012).

146.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate. (ECF Nos. 338, 339, 349, 350, 352, 363).

147.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate. (ECF No. 16431).

148.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate. (ECF No. 16430).

149.    On October 20, 2017, this Court approved a settlement between the Trustee and Thema International Fund plc. *Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364, ECF No. 482. Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

150.    On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. *Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364, ECF No. 497. The Trustee's litigation with Alpha Prime is ongoing

151.    On July 27, 2019, Alpha Prime moved for judgment on the pleadings. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 545. On August 27, 2019, the Trustee opposed that motion and cross-moved to amend the complaint. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 548. Oral argument was heard on September 19, 2019, and on

September 23, 2019, the Court denied Alpha Prime's motion to dismiss and granted the Trustee's motion to amend. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 566.

152.    On September 24, 2019, the Trustee filed his amended complaint against Alpha Prime. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 567. Litigation is ongoing.

## L.    MATTER 32 – LUXALPHA UBS/LIF

153.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

154.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

155.    During the Compensation Period, the Trustee continued his analysis of evidence and investigation into facts related to the Luxalpha Action and LIF Action. The Trustee also continued his ongoing international discovery efforts, in particular, in Luxembourg. On June 7,

44

2019, counsel for the Trustee appeared for a hearing regarding Hague Requests that sought the Luxembourg Central Authority's assistance in obtaining relevant evidence from various parties germane to both the Luxalpha Action and LIF Action. The Trustee also continued to engage in mediation with Defendant Luxalpha. The Luxalpha Action and LIF Action remain ongoing.

### M.    **MATTER 34 – CITIBANK**

156.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citicorp North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action"). *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

157.    On May 7, 2019, the Trustee filed a reply brief in further support of his motion for leave to file an amended complaint.

158.    From May through July 2019, B&H attorneys prepared for oral argument in support of the pending motion for leave to file an amended complaint, which was held on July 18, 2019

159.    On October 18, 2019, the Bankruptcy Court denied the Trustee's motion for leave to file an amended complaint. (*Id.*, ECF No. 170).

### N.    **MATTER 35 – NATIXIS**

160.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law

45

for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

161.    During the Compensation Period, the Trustee entered stipulations with opposing counsel for the Trustee to file his motion for leave to amend the original Natixis complaint and the related proposed amended complaint. *Id.*, (ECF Nos. 166, 168). On December 28, 2018, the Trustee filed his motion for leave to amend as well as the proposed amended complaint. *Id*., (ECF Nos. 169-70).

162.    Prior to the Compensation Period, the Second Circuit issued its opinion regarding extraterritoriality and comity, reversing the Bankruptcy Court's 2016 decision. *In re Picard, Trustee for Liquidation of BLMIS*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *infra* Section IV(Y). This Second Circuit decision revived claims against all Natixis Defendants. To give the Trustee time to analyze the Second Circuit decision, the parties entered a stipulation on February 27, 2019, staying the action for 30 days. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 180). On March 28, 2019, the parties then entered a stipulation to stay the action until the mandate issues from the Second Circuit and the Bankruptcy Court's jurisdiction over the case is revived. *Id*., (ECF No. 181).

163.    During the Compensation Period, the Trustee began drafting an amended complaint to include claims and defendants the Trustee anticipates being revived by the denial of certiorari by the Supreme Court.

## O.    MATTER 37 – ABN AMRO

164.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("ABN/RBS") seeking the return of approximately $276 million under SIPA, the

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain subsequent transfers of BLMIS customer property to ABN/RBS (the "ABN/RBS Action"). *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.)*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

165.    Following Judge Rakoff's Opinion and Order on July 6, 2014,[13] the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion"). *Id.,* ECF Nos. 69-71. The Trustee's Omnibus Motion sought, among other things, limited discovery relevant to good faith under either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) (the "Limited Discovery Issue") from the defendants, as well as leave to file an amended complaint against the defendants (the "Leave to Replead Issue"). *Id.*

166.    On December 31, 2014, ABN/RBS joined in the Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality (the "Consolidated Motion to Dismiss"). *Id.*, ECF No. 90.

167.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "ET Decision") that denied the Consolidated Motion to Dismiss as to ABN/RBS in this adversary proceeding, and granted the Trustee leave to amend the complaint relating to extraterritoriality. *Sec. Inv. Prot. Corp. v. Bernard*

---

[13] On July 6, 2014, Judge Rakoff issued a decision indicating that certain of the Trustee's claims were barred under *Morrison*, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

*L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.) (ECF No. 14495); *see* discussion *infra* Section IV(Y).

168.    On March 3, 2017, in connection with the Bankruptcy Court ET Decision, the Bankruptcy Court so ordered a stipulated order denying ABN/RBS's motion to dismiss the complaint and granting the Trustee's motion to amend relating to extraterritoriality (the "ET Order"). *Picard v. ABN AMRO Bank N.V.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y.) (ECF No. 117).

169.    On June 18, 2018, the Court denied the branch of the Trustee's Omnibus Motion as to the Limited Discovery Issue and acknowledged that the parties previously agreed that further briefing and proceedings on the Leave to Replead Issue would be deferred until after the Court entered a decision on the Limited Discovery Issue. *Id.,* ECF No. 168.

170.    On August 14, 2018, the Parties entered into a Tolling Agreement providing for the dismissal without prejudice of the Trustee's claim seeking to recover approximately $74.6 million in subsequent transfers of BLMIS customer property that ABN/RBS received from Rye Select Broad Market XL Portfolio, Ltd. (the "RBS-Rye XL Portfolio Claim"), subject to the right of the Trustee to reinstate the RBS-Rye XL Portfolio Claim by filing an amended complaint in accordance with the terms of the Tolling Agreement.

171.    On February 25, 2019, the Second Circuit issued an Order and Opinion vacating the Bankruptcy Court's ET Decision and remanded the case for further proceedings. *In re Picard*, 917 F.3d 85 (2d Cir. 2019) (ECF No. 1311-1); *see* discussion *infra* Section IV(Y).

172.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued to prepare a motion for leave to file a Second Amended Complaint (the "Motion") and a proposed Second Amended Complaint with regard to the Leave to Replead Issue.

173.    On June 10, 2019, B&H attorneys filed the Motion, the Proposed Second Amended Complaint, and all related exhibits. The proposed Second Amended Complaint also incorporated amendments authorized by the Bankruptcy Court ET Decision, the ET Order, and the Tolling Agreement. The Motion is now fully briefed and scheduled for oral argument on October 30, 2019

174.    Oral argument on the Motion was held on October 30, 2019, and the Court reserved decision.

## P.    MATTER 39 – FORTIS

175.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants (the "Fortis Action"). *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

176.    On January 11, 2019, the Bankruptcy Court so ordered the Stipulation and Order Concerning the Trustee's Motion for Leave to File an Amended Complaint. *Id*. (ECF No. 162).

177.    On February 22, 2019, the Trustee filed the Motion for Leave to File an Amended Complaint. *Id*. (ECF No. 165).

178.    On April 23, 2019, the Fortis Defendants filed the Opposition to the Trustee's Motion for Leave to File an Amended Complaint. *Id*. (ECF No. 169).

179.    On May 23, 2019, the Trustee filed the Reply in Further Support of the Motion

for Leave to File an Amended Complaint. *Id.* (ECF No. 179).

180.    Oral argument in this matter was held on September 25, 2019, and the Bankruptcy Court reserved decision.

## Q.    MATTER 40 – MEDICI/KOHN

181.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against Sonja Kohn, Infovaleur, Inc., and Tecno Development & Research Ltd. (collectively, the "Kohn Defendants") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code and New York state law. *Picard v. Kohn, et al.*, Adv. No. 10-05411 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

182.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, entered into a stipulation with counsel for the Kohn Defendants for the Trustee to file a Third Amended Complaint. (*Id.*, ECF No. 349). Pursuant to this stipulation, the Trustee drafted, filed and served a Third Amended Complaint seeking a reduced recovery on March 25, 2019. (*Id.*, ECF No. 352–53).

183.    Following the filing of the Trustee's Third Amended Complaint, the parties conferred, resolved the matter, and stipulated to a dismissal of the case. (*Id.*, ECF No. 357).

## R.    MATTER 51 – CRUPI

184.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Jo Ann Crupi, a former BLMIS employee, and Judith Bowen (collectively, the "Crupi Defendants"), seeking the return of over $8.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Crupi Defendants. *Picard v. Jo Ann Crupi*, Adv. No. 10-04216 (SMB) (Bankr. S.D.N.Y.).

185.    Jo Ann Crupi was charged in a thirty-three count indictment by the United States
Attorney's Office, asserting among other things, that she conspired to defraud BLMIS investment
advisory clients, conspired to commit securities fraud and to falsify books and records, committed
securities fraud, falsified the records of BLMIS, committed tax evasion and committed bank fraud.
*USA v. O'Hara, et al.*, Case No. 10-cr-00228 (LTS). On or about March 24, 2014, following a
lengthy jury trial, Ms. Crupi was found guilty on several counts of the indictment. On December
23, 2014, the District Court entered the Judgment in a Criminal Case pursuant to which Ms. Crupi
was sentenced to six years imprisonment, plus four years of supervised release. A money judgment
in the amount of $33,950,967,159.26 was entered against Ms. Crupi. On April 8, 2015, the District
Court entered the Amended Consent Preliminary Order of Forfeiture as to Specific
Property/Money Judgment, Case No. 10-cr-00228 (LTS), (ECF No. 1318), pursuant to which Ms.
Crupi and Ms. Bowen forfeited certain assets and retained certain other assets. On February 9,
2018, the District Court entered a Final Order of Forfeiture against Ms. Crupi.

186.    During the Compensation Period, the Trustee's litigation against Ms. Crupi and Ms.
Bowen continued. Additionally, the Trustee noticed and deposed Ms. Crupi in connection with a
number of adversary proceedings in which discovery was open. Finally, the Trustee, Ms. Crupi,
and Ms. Bowen continued to engage in settlement discussions.

## S.    **MATTER 53 – MAGNIFY**

187.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the
avoidance action against Magnify Inc., Premero Investments Ltd., Strand International
Investments Ltd., The Yeshaya Horowitz Association, Yair Green and Express Enterprises Inc.
(collectively, the "Magnify Defendants") seeking the return of over $150 million under SIPA, the
Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for
preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain

transfers of property by BLMIS to or for the benefit of the defendants. *Picard v. Magnify Inc., et.al.*, Adv. No. 10-05279 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

188.    During the Compensation Period, the Trustee continued to analyze strategic issues relating to the case including working with experts, addressing discovery needs, and developing case strategy following the Court's April 13, 2018 Memorandum Decision Denying Defendants' Motion to Dismiss. (ECF No. 143). On June 18, 2019, the parties participated in a status conference before the Court, following which the Court so ordered the parties' Twelfth Amended Case Management Plan. (ECF No. 181). At the status conference, the Court also directed the parties to participate in mediation and to notify the Court when they had agreed on a mediator. On July 11, 2019, the Court entered an order appointing Mr. Ted Berkowitz as the mediator. (ECF No. 185).

189.    The Trustee also continued to prosecute two actions brought in Israel in December 2015 to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts. In connection with these actions, the Trustee worked with Israeli counsel to navigate various issues related to document discovery, including dealing with logistical and strategic issues relating to the production of documents in a foreign country, assessing deficiencies in the defendants' discovery responses, and performing various legal and factual research in preparation for a hearing before the Israeli court and mediation with certain defendants. The Trustee also worked with Israeli counsel to draft and file various pleadings in the Israeli actions, including a response to certain defendants' motion to bifurcate the proceedings and various discovery-related motions.

### T.    MATTER 59 – STANLEY SHAPIRO

190.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, the Estate of Renee Shapiro, S&R Investment Co., David Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the

"Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code,

the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances

and damages in connection with certain transfers of property by BLMIS to or for the benefit of the

Shapiro Defendants. *Picard v. Shapiro*, Adv. No. 10-05383 (SMB) (Bankr. S.D.N.Y. Dec. 9,

2010).

191.    In 2014, the Trustee filed a second amended complaint against the Shapiro

Defendants. The Shapiro Defendants moved to dismiss the second amended complaint on several

grounds including, but not limited to, that they could avail themselves of the safe harbor protection

under Section 546(e) of the Bankruptcy Code. In 2015, the Bankruptcy Court issued a written

decision in which it granted in part and denied in part the Shapiro Defendants' motion. (ECF

No. 59). In 2016, the Bankruptcy Court entered a Case Management Plan, and the parties

commenced discovery.

192.    Fact discovery ended in April 2019, and expert discovery ended in July 2019. (ECF

No. 132). Meanwhile, on July 10, 2019, the Trustee and the Shapiro Defendants informed the

Bankruptcy Court they had agreed to enter mediation. (ECF No. 134). Finally, on August 6, 2019,

the Trustee informed the Court that the parties had reached a settlement in principle to resolve all

of the Trustee's claims against the Shapiro Defendants. (ECF No. 136).

## U.    MATTER 60 – AVELLINO & BIENES

193.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C.

Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities

(collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain

transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

194.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, engaged in various aspects of discovery, including reviewing documents produced by the A&B Defendants and third parties, analyzing evidence with the help of consultants, producing additional documents to the A&B Defendants, preparing for depositions, performing overall case management, and conferring with counsel for defendants and third-parties.

195.    Additionally, B&H attorneys, on behalf of the Trustee, participated in a conference with the Court and counsel for the A&B Defendants regarding the amendment of the Case Management Plan governing this case. Subsequently, an amended Case Management Plan was so ordered by the Court. *Picard v. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y.), (ECF No. 190).

## V.    MATTER 62 – SUBSEQUENT TRANSFERS

196.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.

197.    Prior to the Compensation Period, the Trustee briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to common briefing and hearings. As of July 31, 2014, the District Court issued all of its decisions on the issues subject to common briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.

198.    As part of its common briefing decisions, the District Court remanded the cases in which subsequent transfer defendants filed an extraterritoriality motion to dismiss.

199.    On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss. This matter was appealed to the Second Circuit, which recently ruled in favor of the Trustee. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). *See* discussion *infra* Section IV(Y).

200.    As part of the original December 10, 2014 scheduling order regarding the extraterritoriality motion to dismiss briefing this Court held in abeyance the Trustee's Motion for Limited Discovery until after ruling on the Defendants' Extraterritoriality Motion to Dismiss. On June 5, 2018, the Court denied the Trustee's Motion for Limited Discovery. (ECF No. 16927).

201.    As of July 31, 2019, the Trustee's claims against the subsequent transfer defendants remain pending.

## W.    **MATTER 65 – LEGACY**

202.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

203.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared for oral argument on the Trustee's motion for summary judgment. This motion related to transfers Legacy received during the two year period from the December 11, 2008 filing date of the SIPA liquidation, of which $86,505,850 comprised fictitious profits. Oral argument took place on April 9, 2019, and the Court took the matter under advisement.

204. On June 25, 2019, Judge Bernstein issued an opinion denying the Trustee's motion for summary judgment and granting relief under Federal Rule of Civil Procedure 56(g). The court held that certain facts "are deemed either immaterial or undisputed for the purposes of this adversary proceeding" and that the Trustee "has shown that there is no genuine material issue of fact regarding his *prima facie* case and those facts are deemed established for the purposes of this adversary proceeding." Judge Bernstein directed the parties to prepare an order in connection with the established facts of the opinion. The parties were also directed to contact Judge Bernstein's chambers in order to fix a trial date on the following issues: (a) the start date of the BLMIS Ponzi scheme; and (b) the relationship, if any, between BLMIS's purchase of U.S. Treasury Bills from third party brokers, and the purported resale of a portion of those purchases to Legacy in its BLMIS account, and whether any profits reported to Legacy during the Ponzi scheme were real rather than fictitious.

205. Pursuant to Judge Bernstein's instructions, the parties met and conferred in order to negotiate a proposed order in connection with the rulings made in the June 25, 2019 summary judgment opinion. On July 9, 2019, the parties submitted a proposed order in connection with Judge Bernstein's summary judgment opinion. On July 10, 2019, Judge Bernstein entered the proposed order on the case docket. Additionally, Judge Bernstein scheduled a final pre-trial conference for September 5, 2019 for the purpose of setting a trial date in this adversary proceeding.

206. The parties further met and conferred and agreed to schedule a deposition of the Trustee's expert, Mr. Bruce Dubinsky, for November 26, 2019.

207. On September 5, 2019, the parties appeared at a final pre-trial conference before Judge Bernstein. During the conference, Judge Bernstein set a tentative trial start date of December

16, 2019 but requested that the parties supply alternate trial dates in early 2020 in the event the Court had a conflict with the tentatively scheduled date.

208.     During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared for trial in this matter.

## X.     **MATTER 71 – SQUARE ONE**

209.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Square One Fund Ltd. ("Square One") seeking the return of approximately $26 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law, in connection with certain transfers of property by BLMIS to or for the benefit of Square One. *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

210.     Prior to the Compensation Period, on December 21, 2018, the Trustee filed and served the Amended Complaint. *Id.*, (ECF No. 167–69). Additionally, Square One filed a motion to dismiss on February 14, 2019. *Id.*, (ECF No. 170).

211.     On April 1, 2019, the Trustee filed and served an opposition to Square One's motion to dismiss. *Id.*, (ECF No. 171–72).

212.     On April 30, 2019, Square One filed and served a reply to the Trustee's opposition. *Id.*, (ECF No. 173–74).

213.     On May 15, 2019, the Trustee filed and served a notice of adjournment of the pre-trial conference. *Id.*, (ECF No. 175–76).

214.     On May 29, 2019, the Court held a hearing on Square One's motion to dismiss. At the conclusion of the hearing, the Court granted in part and denied in part the motion to dismiss.

215.     On June 13, 2019, the Court entered an order granting in part and denying in part Square One's motion to dismiss. *Id.*, (ECF No. 177).

216.    On July 16, 2019, the Court so-ordered a Case Management Plan. *Id.*, (ECF No. 178).

217.    On July 19, 2019, Square One filed and served its Answer to the Amended Complaint. *Id.*, (ECF No. 179–80).

## Y.    MATTER 77 – EXTRATERRITORIALITY

218.    On July 6, 2014, the District Court held that certain of the Trustee's claims were barred by the presumption against extraterritoriality, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

219.    On November 22, 2016, this Court issued a decision granting in part and denying in part defendants' motion to dismiss on extraterritoriality. *Sec. Inv'r Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495).

220.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court and Bankruptcy Court. The Second Circuit held that neither the presumption against exterritoriality nor international comity limits the reach of section 550(a)(2) of the Bankruptcy Code, enabling the Trustee to recover property from certain subsequent transferees. Accordingly, the Second Circuit vacated the judgments of the Bankruptcy Court and remanded for further proceedings. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019).

221.    During the Compensation Period, the Second Circuit denied defendants' petition for panel rehearing and rehearing *en banc* on April 3, 2019. *Id.,* (ECF No. 1408). On April 8, 2019, the defendants filed a motion to stay the issuance of the mandate pending the filing of a petition

for a writ of certiorari. *Id.,* (ECF No. 1413). The Trustee filed an opposition. *Id.,* (ECF No. 1497). The Second Circuit granted the defendants' motion on April 23, 2019. *Id.,* (ECF No. 1503).

222.    On May 30, 2019, Justice Ginsberg granted the defendants' application for an extension of time to file the petition for a writ of certiorari, thereby extending the time to file the petition to August 30, 2019. Accordingly, the stay of the issuance of the mandate will continue through the extended period and until the Supreme Court's disposition of the petition.

223.    On August 30, 2019, the defendants filed a petition for a writ of certiorari in the Supreme Court of the United States. *HSBC Holdings PLC v. Irving H. Picard*, No. 19-277.

224.    On September 30, 2019, amicus briefs in support of petitioners were filed by: the Cayman Islands and the British Virgin Islands; certain British Virgin Islands restructuring professionals; Cayman Finance and Recovery and Insolvency Specialists Association of the Cayman Island; Recovery and Insolvency Specialists Association of Bermuda; and the Securities Industry and Financial Markets Association, the Institute of International Bankers, and the U.S. Chamber of Commerce.

225.    Pursuant to an extension granted on September 11, 2019, the Trustee's brief in opposition to the defendants' petition was filed. The petitioners' reply brief is due on November 14, 2019.

## V.    COMPENSATION REQUESTED

226.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995, as amended on August 1, 2013 (the "Local Guidelines") and the Second Amended Compensation Order. Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

227.     The Trustee, and B&H, as counsel to the Trustee, expended 72,332.90 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $455.25 for fees incurred.[14] The blended attorney rate is $533.06.

228.     Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application. In connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $1,871,417.00 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $285,711.94.

229.     At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates. This discount has resulted in an additional voluntary reduction during the Compensation Period of $3,658,802.30. The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

230.     Pursuant to the Second Amended Compensation Order, on May 16, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from April 1, 2019 through April 30, 2019 (the "April Fee Statement"). The April Fee Statement reflected fees of $9,999,859.30 and expenses of $98,951.68. SIPC's staff requested certain adjustments and made

---

[14]In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

suggestions, which were adopted by the Trustee and B&H. After such adjustments, the April Fee Statement reflected fees of $8,999,873.37 and expenses of $98,829.48. After subtracting the Court-ordered 10% holdback, SIPC advanced $8,099,886.03 for services rendered and $98,829.48 for expenses incurred by the Trustee and B&H.

231.    Pursuant to the Second Amended Compensation Order, on June 20, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from May 1, 2019 through May 31, 2019 (the "May Fee Statement"). The May Fee Statement reflected fees of $9,988,548.40 and expenses of $284,203.02. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the May Fee Statement reflected fees of $8,989,693.56 and expenses of $283,950.03. After subtracting the Court-ordered 10% holdback, SIPC advanced $8,090,724.20 for services rendered and $283,950.03 for expenses incurred by the Trustee and B&H.

232.    Pursuant to the Second Amended Compensation Order, on July 18, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from June 1, 2019 through June 30, 2019 (the "June Fee Statement"). The June Fee Statement reflected fees of $8,361,629.10 and expenses of $105,546.41. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the June Fee Statement reflected fees of $7,525,466.19 and expenses of $105,372.09. After subtracting the Court-ordered 10% holdback, SIPC advanced $6,772,919.57 for services rendered and $105,372.09 for expenses incurred by the Trustee and B&H.

233.    Pursuant to the Second Amended Compensation Order, on August 16, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from July 1, 2019 through July 31, 2019 (the "July Fee Statement"). The July Fee Statement reflected fees of $8,237,986.20 and expenses of $90,553.93. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the July Fee Statement reflected fees of $7,414,187.58 and expenses of $90,553.93. After subtracting the Court-ordered 10% holdback, SIPC advanced $6,672,768.82 for services rendered and $90,553.93 for expenses incurred by the Trustee and B&H.

234.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

235.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofessionals. The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

236.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

237.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services

rendered in this case. No agreement or understanding prohibited by 18 U.S.C. § 155 has been made

or will be made by the Trustee or B&H.

238.     To the extent that time or disbursement charges for services rendered or

disbursements incurred relate to the Compensation Period but were not classified or processed

prior to the preparation of this Application, the Trustee and B&H reserve the right to request

additional compensation for such services and reimbursement of such expenses in a future

application.

## VI.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

239.     Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate

application and after a hearing, "[t]he court shall grant reasonable compensation for services

rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the

attorney for such a trustee . . . ." Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's

role in connection with applications for compensation and the consideration the Court should give

to SIPC's recommendation concerning fees. That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there is no
> difference between the amounts requested and the amounts recommended by SIPC,
> the court shall award the amounts recommended by SIPC. In determining the
> amount of allowances in all other cases, the court shall give due consideration to
> the nature, extent, and value of the services rendered, and shall place considerable
> reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

240.     To the extent the general estate is insufficient to pay such allowances as an expense

of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay

the compensation of the Trustee and B&H. *See* SIPA § 78fff-3(b)(2).

63

241.    While the Trustee has recovered, or entered into agreements to recover, nearly $14.286 billion as of October 31, 2019, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

242.    Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses. The Trustee has been advised by SIPC that it concurs in this belief. Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

243.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990). SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on December 12, 2019.

244.    The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

VII.    **CONCLUSION**

The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $32,929,220.70 (of which $29,636,298.62 is to be paid currently and $3,292,922.08 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $578,705.53 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       November 12, 2019

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  *s/ David J. Sheehan*         
     Baker & Hostetler LLP
     45 Rockefeller Plaza
     New York, New York 10111
     Telephone: (212) 589-4200
     Facsimile: (212) 589-4201
     Irving H. Picard
     Email: ipicard@bakerlaw.com
     David J. Sheehan
     Email: dsheehan@bakerlaw.com
     Seanna R. Brown
     Email: sbrown@bakerlaw.com
     Heather R. Wlodek
     Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*