**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Jason I. Blanchard

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

Hearing Date: January 22, 2020
Hearing Time:  10:00 a.m. (EST)
Objections Due: January 8, 2020
Objection Time:  4:00 p.m. (EST)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                  Plaintiff-Applicant,<br><br>     v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                  Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                  Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW**
**TO AFFIRM HIS DETERMINATIONS DENYING THE CLAIMS OF**
**NEIL E. BOTWINOFF, ROBERT E. HELPERN, JOEL S. HIRSCHTRITT,**
**RALPH A. SICILIANO, VINCENT J. SYRACUSE AND MICHAEL G. TANNENBAUM**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

JURISDICTION. .................................................................................................... 2

STATEMENT OF FACTS ....................................................................................... 3

 A. Commencement of the SIPA Proceeding ................................................. 3

 B. The Trustee's Role under SIPA and the Claims Process in the BLMIS
  Liquidation ............................................................................................. 3

 C. PJ Administrator ...................................................................................... 4

  1. PJ Administrator's BLMIS Account ................................................ 5

  2. PJ Administrator's Claim ................................................................ 6

  3. The Trustee's Determination of PJ Administrator's Claim and the
   Related Objection ............................................................................ 6

  4. The Trustee's Litigation Against PJ Administrator and Others ......... 7

 D. The Claimants ......................................................................................... 8

  1. The Claims .................................................................................... 8

  2. The Trustee's Determination of the Claims and the Related
   Objection ....................................................................................... 9

  3. Discovery Regarding the Claims .................................................... 9

ARGUMENT ......................................................................................................... 11

 A. The Statutory Definition of "Customer" .................................................. 11

 B. The Customer Decisions in the BLMIS Liquidation ................................. 12

 C. The Claimants have not Proven they are Customers of BLMIS .................. 14

CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re A.R. Baron Co., Inc.*,
226 B.R. 790 (Bankr. S.D.N.Y. 1998) ................................................................12

*In re Adelphia Recovery Trust*,
634 F.3d 678 (2d Cir. 2011) ................................................................15

*In re Beacon Assocs. Litig.*,
745 F. Supp. 2d 386 (S.D.N.Y. 2010) ................................................................3

*In re Bernard L. Madoff Inv. Sec. LLC*,
454 B.R. 285 (Bankr. S.D.N.Y. 2011) ................................................................11

*In re Bernard L. Madoff Inv. Sec. LLC*,
592 B.R. 513 (Bankr. S.D.N.Y. 2018) ................................................................12

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011) ................................................................3, 12

*In re Bernard L. Madoff Inv. Sec. LLC*,
No. 08-01789 (SMB), (Bankr. S.D.N.Y. Feb. 15, 2015) ................................................................13

*In re Brentwood Sec., Inc.*,
925 F.2d 325 (9th Cir. 1991) ................................................................17

*CarVal Inv'rs UK Ltd. v. Giddens (In re Lehman Bros.)*,
791 F.3d 277 (2d Cir. 2015) ................................................................16, 18

*Great Lakes Chem. Corp. v. Monsanto Co.*,
96 F. Supp. 2d 376 (D. Del. 2000) ................................................................10

*Intellivision v. Microsoft Corp.*,
784 F. Supp. 2d 356 (S.D.N.Y. 2011), *aff'd*, 484 F. App'x 616 (2d Cir. 2012) ................................................................15

*In re Klein, Maus & Shire, Inc.*,
301 B.R. 408 (Bankr. S.D.N.Y. 2003) ................................................................11

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
708 F.3d 422 (2d Cir. 2013) ................................................................ *passim*

*Pitheckoff v. Sec. Inv'r Prot. Corp. (In re Great E. Sec., Inc.)*,
10. No. Civ. 8647 (CM), 2011 WL 1345152 (S.D.N.Y. Apr. 5, 2011) ................................................................12

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    779 F.3d 74 (2d Cir. 2015)..................................................................................20

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    515 B.R. 161 (Bankr. S.D.N.Y. 2014)...............................................................13

*Sec. Inv'r Prot. Corp. v. Cont'l Capital Inv. Servs. (In re Cont'l Capital Inv. Servs.)*,
    No. 03-3370, 2008 Bankr. LEXIS 4097 (Bankr. N.D. Ohio Nov. 4, 2008)..........17

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*,
    No. 12 CIV. 1039 (DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012)..............13

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
    533 F.2d 1314 (2d Cir. 1976)..................................................................2, 13, 16, 20

*SEC v. Madoff*,
    No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. Dec. 11, 2008) ................3

*SEC v. Sec. Inv'r Prot. Corp.*,
    872 F. Supp. 2d 1 (D.D.C. 2012) ........................................................................16

*SIPC v. Stratton Oakmont, Inc.*,
    229 B.R. 273 (Bankr. S.D.N.Y. 1999), *aff'd sub nom., Arford v. Miller (In re Stratton Oakmont, Inc.)*, 210 F.3d 420 (2d Cir. 2000).............................................12

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
    463 F.3d 125 (2d Cir. 2006)................................................................................11

*Stillwater Liquidating LLC v. Net Five at Palm Pointe, LLC*,
    559 B.R. 563 (Bankr. S.D.N.Y. 2016) ................................................................18

**Statutes**

6 Del. C. § 18-701 .......................................................................................................18

15 U.S.C. § 78aaa .........................................................................................................1

28 U.S.C. § 157 .............................................................................................................2

28 U.S.C. § 157(b) ........................................................................................................2

28 U.S.C. § 1334 ...........................................................................................................2

SIPA § 78eee(a)(4) ........................................................................................................3

SIPA § 78eee(b)(2) ........................................................................................................2

SIPA § 78eee(b)(3) ...................................................................................................................3

SIPA § 78eee(b)(4) ...............................................................................................................2, 3

SIPA § 78fff-1(a) ......................................................................................................................3

SIPA § 78fff-2(b) ....................................................................................................................20

SIPA § 78fff-3(a) ......................................................................................................................4

SIPA § 78*lll*(2) .........................................................................................................................3

SIPA § 78*lll*(2)(A) .................................................................................................................11

SIPA § 78*lll*(2)(B)(i) .............................................................................................................11

SIPA § 78*lll*(4) .........................................................................................................................3

SIPA § 78*lll*(11) .......................................................................................................................3

## Other Authorities

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ...................................................12

Treas. Reg. § 301.7701-1 et seq. ..........................................................................................10

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the Trustee's determinations denying the customer claims filed by Neil E. Botwinoff, Robert E. Helpern, Joel S. Hirschtritt, Ralph A. Siciliano, Vincent J. Syracuse and Michael G. Tannenbaum (collectively, the "Claimants") and overrule their related, jointly filed objection (the "Objection") (ECF No. 4525).

## PRELIMINARY STATEMENT

The Claimants do not qualify as customers of BLMIS within the meaning of SIPA. They invested with P.J. Administrator, LLC ("PJ Administrator") – an entity that held a pooled investment account at BLMIS – not BLMIS itself. Critically, the Claimants are nowhere to be found in BLMIS's books and records. Not only did the Claimants not have their own securities accounts at BLMIS, they never exercised control over the funds in PJ Administrator's account. In fact, it does not appear that the Claimants could have exercised such control even if they had tried. They never signed any account-related contracts with BLMIS that would have afforded them that right. In addition, the Claimants admit they never called, met, or wrote to BLMIS's employees. The Claimants also admit they never received account statements or tax information from BLMIS regarding their investments. In other words, the Claimants were completely unknown to BLMIS and incapable of directing it to make investment decisions on their behalf. Therefore, the Claimants

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

are not eligible to receive a share of the fund of customer property reserved for BLMIS customers with allowable net equity claims.

The Claimants nevertheless argue they are BLMIS's customers for two reasons. First, they claim to own the money they entrusted to PJ Administrator for investment with BLMIS. And second, they claim to have the contractual right to control how PJ Administrator invested their money. However, whether the Claimants qualify as customers under SIPA depends on the Claimants' satisfaction of the factors identified by the Second Circuit in *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976). Under those factors, PJ Administrator qualifies as a customer of BLMIS, not the Claimants. Only PJ Administrator had an account at BLMIS in its own name. It signed all account-related contracts on its own behalf and therefore had the exclusive power to direct BLMIS's investment-related decisions. PJ Administrator deposited and withdrew funds from BLMIS directly without attribution to the Claimants. It alone received account statements and communications from BLMIS, and it was identified as the only accountholder in BLMIS's books and records.

For these reasons, the Trustee respectfully requests that the Court enter an order affirming his determination denying the Claimants' claims and overruling their Objection.

## JURISDICTION

This Court has jurisdiction to consider this Motion pursuant to SIPA §§ 78eee(b)(2) and 78eee(b)(4) and 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## STATEMENT OF FACTS

### A.    Commencement of the SIPA Proceeding

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. Dec. 11, 2008), alleging fraud through the investment advisory activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of BLMIS's insolvency, its customers needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court pursuant to SIPA § 78eee(b)(4).

### B.    The Trustee's Role under SIPA and the Claims Process in the BLMIS Liquidation

Under SIPA, the Trustee is responsible for, among other things, recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). In satisfying customer claims, the Trustee evaluates whether claimants are "customers," as defined in SIPA § 78*lll*(2). Customers are entitled to share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case), if the customer's share of

customer property does not make her whole. SIPA § 78fff-3(a).

On December 23, 2008, this Court entered a Claims Procedures Order. (ECF No. 12) Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA. *Id.* To that end, the Trustee issued claim determination letters to claimants who filed claims. For claimants with accounts at BLMIS, the Trustee provided his determination of net equity along with a schedule showing the transactions in their accounts. Claimants were permitted to object to the Trustee's determination of a claim by filing a written objection with the Court, following which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.* If a claimant disagreed with the Trustee's determination but failed to file an objection, the Trustee's determination became binding on the claimant. *Id.*

## C.    PJ Administrator

The Claimants seek customer status based on their investment in PJ Administrator, a Delaware limited liability company that itself invested in BLMIS. PJ Administrator's initial member was North Peak LLC. *See* Declaration of Vineet Sehgal ("Sehgal Decl."), Ex. 2 (MWPTAP00312403-7). North Peak LLC's sole member appears to have been American Securities L.P. *Id.* (MWPTAP00312408-10). As discussed more fully below, the Trustee previously brought a "bad faith" avoidance action against PJ Administrator, American Securities and others to avoid and recover fraudulent transfers.[2] The Trustee ultimately settled and discontinued that action.

---

[2] "Bad Faith" avoidance actions are those brought by the Trustee against BLMIS accountholders and/or other transferees who the Trustee alleges had some knowledge of fraudulent activity at BLMIS and from whom the Trustee seeks the return of fictitious profits and principal.

### 1. PJ Administrator's BLMIS Account

In June of 2003, BLMIS opened a customer account on behalf of PJ Administrator and assigned number 1KW387 to the account (the "PJ Administrator Account"). Sehgal Decl. at ¶6. The PJ Administrator Account was funded by two inter-account transfers from a BLMIS account held on behalf of PJ Associates Group L.P. ("PJ Associates"), an account BLMIS assigned number 1KW172 (the "PJ Associates Account"). *See id*. at ¶¶7, 12, Ex. 3. The PJ Associates Account was closed shortly after those two transfers. *See id.* at ¶15, Ex. 4 (AMF00307760). According to BLMIS's books and records, PJ Associates was restructured as PJ Administrator around the time the PJ Administrator Account was funded. *Id.* (AMF00307767). The Claimants acknowledge that PJ Administrator assumed the obligations of PJ Associates as it relates to their investments. *See* Objection at 4.

Upon opening the PJ Administrator Account, BLMIS combined all its records for the two accounts into one customer file. *See* Sehgal Decl. at ¶15, Ex. 4 (AMF00307692-93). BLMIS's combined customer file contains a Customer Agreement and other account-related contracts each signed by a representative of PJ Administrator's predecessor, PJ Associates; PJ Associates agreed the contracts would be binding on its successors. *See id.* (AMF00307821-29). Those contracts gave BLMIS virtually unfettered discretion to buy, sell and trade in securities. *Id.* (AMF00307822, AMF00307824-29). Relevant here, in the Customer Agreement, PJ Administrator acknowledged "no one except the Customer [defined as the party opening or maintaining the account(s)] has an interest in the account or accounts of the Customer." *Id*. (AMF00307826). The customer file also contains correspondence from PJ Administrator requesting that BLMIS deposit and withdraw funds to and from the PJ Administrator Account. *Id*. (*e.g.,* AMF00307694-95, AMF00307698). Neither PJ Administrator nor BLMIS attributed those deposits or withdrawals to the Claimants or other investors. *Id.* at ¶16. When requesting withdrawals from the PJ Administrator Account, PJ

5

Administrator frequently instructed BLMIS to wire the funds to a bank account in PJ Administrator's name. *Id.* at ¶15, Ex. 4 (*e.g.* AMF00307702). For other withdrawals, BLMIS issued checks to PJ Administrator as payee. *Id.* at ¶16, Ex. 5. Furthermore, all correspondence in the customer file sent to BLMIS is on the letterhead of Sterling Equities, Inc. or American Securities L.P. *Id.* at ¶15, Ex. 4. (*e.g.,* AMF00307694, AMF00307719-20, AMF00307757, AMF00307761, AMF00307770). All customer statements for the PJ Administrator Account were addressed care of Sterling Equities, Inc. and American Securities L.P. *Id.* at ¶17, Ex. 6; *see also Id.* at ¶15, Ex. 4. (AMF00307692).

There is no mention of the Claimants or other investors in PJ Administrator in BLMIS's books and records. *Id.* at ¶25.

### 2. PJ Administrator's Claim

On March 2, 2009, PJ Administrator filed a claim with the Trustee on its own behalf. *Id.* at ¶10, Ex. 2. In a rider to its claim, PJ Administrator alleged that it was the owner of the PJ Administrator Account. *Id.* It further alleged that BLMIS owed it for the securities purportedly held in the PJ Administrator Account, shown by a list of securities positions as of November 30, 2008. *Id.*

PJ Administrator filed ninety-six additional claims on behalf of certain of its investors, but not on behalf of the Claimants. *Id.* at ¶11. In riders to those claims, PJ Administrator alleged that it held the PJ Administrator Account as agent for certain of its investors. *Id.*

PJ Associates did not file a claim with the Trustee. *Id.* at ¶14.

### 3. The Trustee's Determination of PJ Administrator's Claim and the Related Objection

On October 5, 2010, the Trustee issued a determination letter denying PJ Administrator's claim for lack of net equity. *Id.* at ¶12, Ex. 3. In the letter, the Trustee explained that based on his

analysis, the amount of money withdrawn from the PJ Administrator Account was greater than the amount that was deposited by over $10 million and that all profits reported on the customer statements were fictitious. *Id.* PJ Administrator subsequently filed an objection to the Trustee's determination based solely on its disagreement with the Trustee's methodology for calculating customer claims. *See* (ECF No. 4000).

The Trustee also issued determination letters denying the ninety-six claims filed on behalf of PJ Administrator's investors. Sehgal Decl. at ¶13. The Trustee determined that based on his review of BLMIS's books and records, the claimants did not have accounts with BLMIS and therefore did not qualify as its customers under SIPA. None of those investors filed objections to the Trustee's determination of their claims. *Id.*

### 4.       The Trustee's Litigation Against PJ Administrator and Others

On December 10, 2010, the Trustee commenced an adversary proceeding against PJ Administrator, PJ Associates, American Securities, L.P., the Claimants, and others for the avoidance and recovery of fraudulent transfers and the disallowance of PJ Administrator's claim.[3] In that adversary proceeding, the Trustee alleged that American Securities, L.P., its affiliated entities, and certain of its employees, officers and directors used both PJ Associates and PJ Administrator as pooled investment vehicles to funnel money to BLMIS in furtherance of the fraud. The Trustee identified the Claimants as investors in these investment vehicles and as recipients of subsequent transfers from PJ Administrator's BLMIS account.

On September 8, 2011, the Court so ordered stipulations between the Trustee and the Claimants dismissing them from the adversary proceeding.[4] As set forth in the stipulations, the

---

[3] *See Picard v. American Securities Management, L.P., et al.*, Adv. Pro. No. 10-05415 (SMB).

[4] *See Stipulation and Order Dismissing Defendants from Adversary Proceeding Without Prejudice*, Adv. Pro. No. 10-05415 (SMB), ECF Nos. 47, 49.

Trustee agreed to dismiss each Claimant based on his representation that he did not receive any initial or subsequent transfers from BLMIS. Each Claimant further represented that he had invested in the pooled account held by PJ Administrator and was aware that his money was in turn invested with BLMIS.

Several years later, the Court entered an order approving a settlement resolving the Trustee's claims in the adversary proceeding.[5] As part of the settlement, PJ Administrator withdrew its objection to the Trustee's determination of its customer claim. The parties then agreed to voluntarily dismiss the adversary proceeding and filed a stipulation to that effect.[6] The Clerk of the Court subsequently closed the adversary proceeding.

### D.    The Claimants

#### 1.    The Claims

On March 4, 2009, the Claimants each filed claims with the Trustee (collectively, the "Claims").[7] Each Claimant stated that he maintained an account at "Bear Stearns, which functioned as IRA custodian for Claimant's IRA investment in P.J. Administrator LLC, which, in turn, wholly invested with Bernard L. Madoff Securities LLC" through the PJ Administrator Account.[8] Each Claimant further stated that the amount of his Claim was based on "the net cash Claimant deposited

---

[5] *Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreements by and Among the Trustee and Defendants in Adversary Proceeding No. 10-05415*, Adv. Pro. No. 10-05415 (SMB), ECF No. 171, March 26, 2018.

[6] *Stipulation of Voluntary Dismissal of Adversary Proceeding with Prejudice*, Adv. Pro. No. 10-05415 (SMB), ECF No. 173.

[7] The Trustee assigned the following numbers to the Claims: 006429 (Michael G. Tannenbaum); 006430 (Robert E. Helpern); 006431 (Vincent J. Syracuse); 006432 (Joel S. Hirschtritt); 006433 (Ralph A. Siciliano); and 006434 (Neil E. Botwinoff). Sehgal Decl. at ¶¶ 18-23, Exs. 7-12.

[8] In their Claims, several Claimants alleged that PJ Administrator also invested their IRAs in BLMIS through account number 1FN086, an account held by Kingate Euro Fund Ltd. The Claimants have not explained the basis for this allegation and did not raise it in their Objection. Following a review of BLMIS's books and records, the Trustee has found no evidence to support the Claimants' allegation. Sehgal Decl. at ¶8, n.2.

8

with Bear Stearns as custodian for Claimant's IRA. That IRA was fully invested with P.J. Administrator LLC ("PJ"). PJ, in turn, deposited Claimant's net cash" into an account with BLMIS. To support their Claims, the Claimants each attached the following: (i) a cancelled check payable to Bear Stearns as the initial funding amount for the IRA; (ii) account statements for the IRA held at Bear Stearns showing an investment in PJ Administrator; (iii) a schedule of deposits in the IRA provided by PJ Administrator; and (iv) a list of purported securities positions in the IRA as of November 30, 2008, also provided by PJ Administrator.

### 2.      The Trustee's Determination of the Claims and the Related Objection

On December 8, 2009, the Trustee issued determination letters denying the Claims. Sehgal Decl. at ¶24, Ex. 13. As stated in the letters, the Trustee determined that based on his review of BLMIS's books and records, the Claimants did not have accounts with BLMIS and therefore do not qualify as BLMIS's customers under SIPA. *Id.*

On November 14, 2011,[9] the Claimants jointly filed the Objection to the Trustee's determinations of their Claims. In support of the Objection, the Claimants annexed copies of their respective Claims (Ex. 1), the Trustee's determinations of their Claims (Ex. 2), the Trustee's Amended Complaint in the adversary proceeding against PJ Administrator and others, styled as *Picard v. American Securities Management, L.P., et al.*, Adv. Pro. No. 10-05415 (SMB) (Ex. 3), and certain Account Administration Agreements, dated April 2, 2003, between PJ Administrator and each Claimant (Ex. 4).

### 3.      Discovery Regarding the Claims

After receiving the Objection, the Trustee served interrogatories and requests for admission

---

[9] Upon the Claimants' request, the Trustee extended the deadline for the Claimants to file objections to the Trustee's determination of the Claims.

and production of documents on the Claimants. *See* Declaration of Jason I. Blanchard ("Blanchard

Decl.") at ¶¶6-7, Ex. 1. The Claimants jointly responded to each discovery request and produced

over five hundred documents.

The Claimants admitted that they never received correspondence, investment or tax

statements directly from BLMIS. *See* Blanchard Decl. at ¶8, Ex. 2 (Response Nos. 3, 8, 9). The

Claimants further admitted they never paid cash or deposited securities directly with BLMIS, and

never entered into any contracts with BLMIS. *Id.* (Response Nos. 4, 5, 10). The Claimants also

confirmed that they never communicated with any BLMIS personnel, never attended any meetings

at which BLMIS personnel were present, and never received any documents of any kind from

BLMIS. *See* Blanchard Decl. at ¶9, Ex. 3 (Response Nos. 13, 15, 21).

The Claimants produced numerous documents that further confirm they did not invest in

BLMIS. For example, before the Claimants opened their IRA accounts at Bear Stearns, they were

advised that their investment in PJ Administrator would be structured as membership interests in

a newly formed limited liability company. *See id.* at ¶¶12-13, Exs. 5, 6. Then, upon opening their

IRA accounts, the Claimants each signed a customer agreement with Bear Stearns (*see id.* at ¶15,

Ex. 8) and represented that they were making a private investment in PJ Administrator. *Id.* at ¶16,

Ex. 9. PJ Administrator likewise represented that the Claimants were purchasing an ownership

interest in PJ Administrator. *Id.* at ¶19, Ex. 12. After opening and funding their IRA accounts, the

Claimants instructed Bear Stearns to wire funds from their IRAs to a JP Morgan Chase bank

account in the name of PJ Administrator. *Id.* at ¶¶17-18, Exs. 10, 11. Nearly a year later, the

Claimants further instructed Bear Stearns to wire funds to that same bank account for "an

additional purchase of PJ Administrator LLC." *Id.* at ¶20, Ex. 13. The Claimants' account

statements from Bear Stearns also show the investment in PJ Administrator, not BLMIS. *See*

10

Sehgal Decl. at ¶¶18-23, Exs. 7-12.

Furthermore, over the course of the Claimants' investment, PJ Administrator filed federal tax returns identifying itself as a partnership and each Claimants' IRA as one of its 115 limited partners.[10] *See* Blanchard Decl. at ¶21, Ex. 14. Consistent with this structure, PJ Administrator identified the funds in the capital accounts of the Claimants' IRAs and other partners as partnership assets and calculated the year-end balance for each account.[11] *Id*. PJ Administrator then reported each partners' distributive share of the partnership's income, which appears to have been based on each partner's ownership interest in the partnership. *Id*.

Finally, the Claimants alleged they had received payments directly from BLMIS. *Id.* at ¶9, Ex. 3 (Response No. 19). However, none of the checks the Claimants produced were from BLMIS. And the Claimants objected to producing bank statements or other information to substantiate their position. *Id.* (Response Nos. 23, 24).

## ARGUMENT

### A.    The Statutory Definition of "Customer"

To qualify as a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person[.]" SIPA § 78*lll*(2)(A). A customer includes "any person who has deposited cash with the debtor for the purpose of purchasing securities[.]" SIPA § 78*lll*(2)(B)(i).

---

[10] For federal taxation purposes, a Delaware limited liability company may elect to be treated as a partnership. *See Great Lakes Chem. Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376, 383 (D. Del. 2000) (citing Treas. Reg. § 301.7701-1 et seq.). PJ Administrator identified the Claimants' IRAs as its partner nos. 101-106 in its tax filings. *See* Blanchard Decl. at ¶ 21, Ex. 14.

[11] Following BLMIS's collapse, it appears that PJ Administrator attempted to change how it reported taxes to the IRS. *See* Blanchard Decl. at ¶22, Ex. 15.

The Second Circuit has held that SIPA's "customer" definition should be interpreted narrowly. *Stafford v. Giddens (In re New Times Sec. Servs., Inc.),* 463 F.3d 125, 127 (2d Cir. 2006) (internal citation omitted); *accord Kruse,* 708 F.3d at 426. The claimant bears the burden to establish its customer status, a burden that "is not easily met." *In re Bernard L. Madoff Inv. Sec. LLC,* 454 B.R. 285, 294 (Bankr. S.D.N.Y. 2011) (quoting *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)). The customer also bears the burden of proving the amount of his or her claim. *In re Bernard L. Madoff Inv. Sec. LLC,* 592 B.R. 513, 481 (Bankr. S.D.N.Y. 2018) (citing *Pitheckoff v. Sec. Inv'r Prot. Corp. (In re Great E. Sec., Inc.)*, 10. No. Civ. 8647 (CM), 2011 WL 1345152, at *4 (S.D.N.Y. Apr. 5, 2011); *In re A.R. Baron Co., Inc.*, 226 B.R. 790, 795 (Bankr. S.D.N.Y. 1998)). Because an investor can be a customer for certain transactions but not others, a claimant must prove that it is a customer on a transaction-by-transaction basis. *See SIPC v. Stratton Oakmont, Inc.*, 229 B.R. 273, 277 (Bankr. S.D.N.Y. 1999), *aff'd sub nom., Arford v. Miller, (In re Stratton Oakmont, Inc.)*, 210 F.3d 420 (2d Cir. 2000).

## B.   The Customer Decisions in the BLMIS Liquidation

In *Kruse*, the Second Circuit considered whether claimants who had invested in limited partnerships, which in turn had invested in the partnerships' own BLMIS accounts, qualified as BLMIS's customers under SIPA. *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422, 427 (2d Cir. 2013). The court held that the claimants "never entrusted their cash or securities to BLMIS" when they invested in the partnerships. *Id*. at 428. Therefore, the claimants had failed to satisfy the "critical aspect of the 'customer' definition" regardless of their intention to invest with BLMIS. *Id.* (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). Because the money sent to BLMIS belonged to the account holders, not the individual claimants, the claimants could not show entrustment of their own cash or securities to BLMIS. *Kruse*, 708 F.3d at 426-27 ("[A] claimant will not be entitled to customer protection under SIPA

12

unless the debtor actually receives the claimant's cash or securities; the debtor must actually have come into possession or control.") (citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012)).

The Second Circuit further determined that the claimants failed to demonstrate other key indicia of customer status in their dealings (or lack of dealings) with BLMIS. The evidence showed that the claimants: (i) had no direct financial relationship with BLMIS; (ii) held no property interest in the funds invested directly with BLMIS; (iii) did not hold securities accounts with BLMIS; (iv) lacked control over the account holders' investments with BLMIS; and (v) were not identified or otherwise reflected in BLMIS's books and records. *Id.* (citing *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976)). For these reasons, the court held that the claimants had failed to sustain their burden of proving they were BLMIS's customers. *Id.* at 427.

This Court and the District Court have held likewise. *See Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*, No. 12 CIV. 1039 (DLC), 2012 WL 3042986, at *13-14 (S.D.N.Y. July 25, 2012) (holding that the claimants did not qualify as customers under SIPA because they neither held accounts in their own names nor deposited their own cash directly with BLMIS); *In re Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB), (Bankr. S.D.N.Y. Feb. 15, 2015) (ECF No. 9506 at 27-35) (holding that indicia of customer status include a direct financial relationship with BLMIS, a property interest in the funds invested directly with BLMIS, securities accounts with BLMIS, control over the account holders' investments with BLMIS and identification of the alleged customer in BLMIS's books and records); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 168 (Bankr. S.D.N.Y. 2014) (holding that to qualify as a customer of BLMIS under SIPA, the party seeking customer status "must show that she entrusted her own assets directly through an account maintained in her own name rather than

13

indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name.").[12]

### C.    The Claimants have not Proven they are Customers of BLMIS

The Claimants are just like many other investors whose claims have been disallowed because they invested their money with entities that, in turn, invested directly with BLMIS. The Claimants too cannot show they invested their money with BLMIS for the purpose of trading in securities. Nor can they demonstrate other indicia of customer status, including (i) a direct financial relationship with BLMIS, (ii) a property interest in the funds PJ Administrator invested with BLMIS, (iii) securities accounts with BLMIS, (iv) control over PJ Administrator's investment with BLMIS, or (v) evidence of the Claimants' identification as customers in BLMIS's books and

---

[12] During this SIPA liquidation, this Court has issued numerous unpublished orders that have addressed whether certain investors in BLMIS account holders, or individual contributors to individually-held accounts, could be treated as "customers" under SIPA when those investors themselves did not have individual accounts with BLMIS. In each order, the court determined that those claimants could not be treated as customers of BLMIS. *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in: the David Shapiro Nominee, David Shapiro Nominee #2 and David Shapiro Nominee #3 Partnerships, ECF No. 16942 (November 22, 2017); the Jennie Brett and David Moskowitz Accounts, ECF No. 16812 (October 20, 2017); the Schupak Account, ECF No. 16641 (Sept. 18, 2017); the Brighton Company and the Popham Company, ECF No. 16523 (Aug. 16, 2017); the Lambeth Company, ECF No. 16404 (July 20, 2017); Jeffrey Schaffer Donna Schaffer Joint Tenancy and Stanley I. Lehrer and Stuart M. Stein Joint Tenancy, ECF No. 16229 (June 26, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF No. 15920 (Apr. 27, 2017); Judy L. Kaufman et al. Tenancy in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824, 15825 (Apr. 13, 2017); Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); and S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015).

records. For these reasons, the Claimants do not qualify as customers of BLMIS within the meaning of SIPA.

The Claimants had a direct financial relationship with PJ Administrator, not BLMIS. The Claimants each admit they never paid cash or deposited securities directly with BLMIS. They wired money from their IRA accounts at Bear Stearns to a bank account in PJ Administrator's name. And none of the checks the Claimants produced to the Trustee were payable to BLMIS. In addition, BLMIS's books and records confirm that when PJ Administrator requested a withdrawal from its account, BLMIS wrote checks or wired funds to PJ Administrator, not to the Claimants or other investors.

Notwithstanding this evidence, the Claimants refused to admit they did not withdraw funds directly from BLMIS, but then failed to produce evidence to substantiate their refusal. In any event, the Claimants have alleged in their Objection that they never withdrew any portion of their investments[13] and previously represented to the Trustee and the Court that they did not receive any initial or subsequent transfers from BLMIS.[14] Therefore, in responding to this Motion, the Claimants should not be allowed to take the contrary position that they received money directly from BLMIS. *See In re Adelphia Recovery Trust*, 634 F.3d 678, 695–99 (2d Cir. 2011) (affirming district court's application of judicial estoppel); *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 363–64 (S.D.N.Y. 2011) (citation omitted), *aff'd*, 484 F. App'x 616 (2d Cir. 2012) (applying judicial estoppel to prohibit plaintiffs from arguing a position inconsistent with one taken earlier in the same action).

---

[13] Objection, at 2, ¶ 2.

[14] *See Stipulation and Order Dismissing Defendants from Adversary Proceeding Without Prejudice*, Adv. Pro. No. 10-05415 (SMB), ECF Nos. 47, 49.

Furthermore, nothing in BLMIS's books and records or the documents the Claimants produced to the Trustee shows that the money PJ Administrator deposited into its BLMIS account was attributable to the Claimants. In fact, none of the cash activity in PJ Administrator's Account matches what the Claimants allege PJ Administrator invested on their behalf, either by date or amount, on an individual or aggregate basis. *Compare* Sehgal Decl. at ¶¶18-23, Exs. 7-12 *and* Blanchard Decl. at ¶¶18, 20, Exs. 11, 13 *with* Sehgal Decl. at ¶12, Ex. 3.[15] Under similar circumstances, the Second Circuit determined that claimants seeking customer status under SIPA lacked a direct financial relationship to the debtor and therefore could not qualify as customers. *See Morgan Kennedy*, 533 F.2d at 1318. In *Morgan Kennedy*, the claimants were beneficiaries of their employer's profit-sharing plan. The trustees of the plan established a securities account with the debtor in the name of the trust created for the plan. *Id*. at 1316. In rejecting the claimants' arguments for customer status, the court emphasized that the additions and subtractions from the profit-sharing plan did not correspond to additions or subtractions in the brokerage account. *Id*. at 1318. Because the claimants' interests in the profit-sharing plan "amounted only to a bookkeeping matter" in the accountholder's records, they were of no concern to the broker. *Id*. So too here.

The evidence before the Court also demonstrates that the Claimants did not entrust their money to BLMIS. To prove entrustment, the Claimants need to show that (i) BLMIS actually held their cash or securities and (ii) indicia of a fiduciary relationship between the Claimants and BLMIS. *See CarVal Inv'rs UK Ltd. v. Giddens (In re Lehman Bros.)*, 791 F.3d 277, 283 (2d Cir. 2015) (finding entrustment means the broker-dealer is holding assets for the customer as part of

---

[15] The Claimants collectively directed Bear Stearns to wire a total of $1,012,787.68 on September 21, 2006 and $13,662.50 on May 1, 2007 to an account in PJ Administrator's name. BLMIS's books and records reflect no such deposits in the PJ Administrator Account in September of 2006 or May of 2007 and the deposits closest in time are in very different amounts.

its fiduciary relationship with the customer, which can be shown by "the customer handing assets

over to a broker-dealer so that the broker-dealer may do business on the customer's behalf"); *SEC

v. Sec. Inv'r Prot. Corp.*, 872 F. Supp. 2d 1, 6 (D.D.C. 2012) ("To prove entrustment, the claimant

must prove that the SIPC member actually possessed the claimant's funds or securities . . . and the

transaction giving rise to the claim must contain the indicia of a fiduciary relationship between the

claimant and the debtor") (internal quotations and citations omitted).

Here, the Claimants handed their money over to PJ Administrator, albeit for the purpose

of investing with BLMIS. However, entrusting money to a third party, even with the intention of

investing that money with the debtor, is insufficient to confer customer status. *See, e.g.*, *Kruse*,

708 F.3d at 428 ("regardless of their intent, appellants never entrusted their cash or securities to

BLMIS, and thus, fail to satisfy this 'critical aspect of the customer definition.'") (internal citations

omitted); *In re Brentwood Sec., Inc.*, 925 F.2d 325, 327-28 (9th Cir. 1991) (holding that claimants

who had (i) made checks out directly to an entity unaffiliated with the debtor and (ii) intended for

those funds to be used to purchase securities for their securities accounts with the debtor, did not

qualify as customers because they had not entrusted cash or securities to the debtor); *Sec. Inv'r

Prot. Corp. v. Cont'l Capital Inv. Servs. (In re Cont'l Capital Inv. Servs.)*, No. 03-3370, 2008

Bankr. LEXIS 4097, at *13-17 (Bankr. N.D. Ohio Nov. 4, 2008) (claimant who (i) made a check

out to a non-debtor entity with the incorrect understanding that the funds would be placed in his

customer account and (ii) failed to present evidence that those funds were in fact deposited in the

account, was not entitled to customer status).

The Claimants nevertheless argue that the funds in PJ Administrator's Account belonged

to them. To support their position, the Claimants incorrectly rely on the terms of an Account

Administration Agreement between PJ Administrator and each Claimant, dated years before the

17

Claimants were even told of the opportunity to invest in the LLC. *See* Objection at 5-7; Blanchard Decl. at ¶¶11, 14 Exs. 4, 7.  According to the terms of the Agreements, the Claimants agreed to appoint PJ Administrator to serve as administrator for a "discretionary investment management" account to be managed by BLMIS. Blanchard Decl. at ¶11, Ex. 4. The Agreements do not provide that separate accounts would be established on the Claimants' behalf. Instead, each Claimant would be one of many "Account Participant[s]" in a BLMIS account. *Id*.

The Claimants' reliance on these Agreements is entirely misplaced. From the outset, the Claimants' investment was structured as an interest in PJ Administrator itself. Upon opening accounts with Bear Stearns, the Claimants and PJ Administrator each represented that the Claimants were purchasing an interest in the LLC. Then, after funding their new accounts, the Claimants directed Bear Stearns to wire money to PJ Administrator to purchase interests in the LLC itself. Following the initial acquisition, the Claimants wired additional money to PJ Administrator to purchase additional interests in the LLC. The money the Claimants contributed to PJ Administrator and anything it purchased with that money, belongs to PJ Administrator, not the Claimants. In other words, the Claimants lack an ownership interest in PJ Administrator's BLMIS account because members of a limited liability company lack an ownership interest in the company's assets. *See* 6 Del. C. § 18-701 ("A limited liability company interest is personal property. A member has no interest in specific limited liability company property."); *Stillwater Liquidating LLC v. Net Five at Palm Pointe, LLC (In re Stillwater Asset Backed Offshore Fund Ltd.)*, 559 B.R. 563, 593-94 (Bankr. S.D.N.Y. 2016) (holding that the ownership of membership interests in various limited liability companies did not give the post-confirmation entity the right to avoid transfers of real property owned by those limited liability companies themselves). The tax statements PJ Administrator filed with the IRS, which identify the Claimants' IRAs as owners of

PJ Administrator, and the Claimants' account statements with Bear Stearns, which show shares in PJ Administrator, further corroborate that the Claimants' investment was structured as an interest in PJ Administrator, not as investors with BLMIS.

Moreover, the Claimants do not explain how the Account Administration Agreements could have constrained BLMIS's use of the funds the Claimants delivered to PJ Administrator. *See Lehman Bros.*, 791 F.3d at 285-86 (stating that even if the claimant had retained an economic interest in the securities delivered to the debtor, to prove entrustment the claimant needed to show that those interests "somehow constrain [the debtor] to use the securities" on the claimant's behalf). The Claimants admit they never entered into any contracts with BLMIS, and the evidence shows they only contracted with Bear Stearns and PJ Administrator. In fact, it does not appear BLMIS was even aware of the Claimants or the Account Administration Agreements' existence. Therefore, it does not appear that the Claimants could have instructed BLMIS regarding their investments even if they had tried.

The evidence also shows that the Claimants did not hold securities accounts with BLMIS in their own names. Nor are the Claimants identified anywhere in BLMIS's records. At all times relevant to the Claims, BLMIS's books and records show that PJ Administrator held a securities account with BLMIS in its own name.[16] The Claimants are not listed as accountholders. In addition, the customer file for the PJ Administrator Account only has correspondence from PJ Administrator requesting deposits and withdrawals from the account without attribution by PJ Administrator or BLMIS to the Claimants or other investors. The account-related contracts are not

---

[16] The Trustee requested that the Claimants admit they did not have securities accounts at BLMIS in their own names. Blanchard Decl. at ¶8, Ex. 2. The Claimants responded that they lacked sufficient knowledge or evidence with respect to BLMIS's record keeping to admit the request. *See id*. However, in their Objection, they asserted that their "monies were held by BLMIS in an account in the name of P.J. Administrator, LLC[.]" Objection at 2, ¶ 3. Accordingly, this element does not appear to be in dispute.

signed by Claimants. And there is no indication in the contracts themselves that PJ Administrator would be acting as an agent on behalf of the Claimants or others. In fact, PJ Administrator represented that only it had an interest in its account. The Claimants admit they never spoke or met with anyone from BLMIS and never received any mail, tax or account statements, or any documents from BLMIS directly. Thus, to accept the Claimants' argument that they are customers of BLMIS "notwithstanding their complete anonymity and total incapacity to have dealings with the broker-debtor" would "stretch" the term "customers" "wholly beyond its limits." *See Morgan Kennedy*, 533 F.2d at 1318.

Because BLMIS did not perform a custodial function on behalf of the Claimants, they do not have "customer" claims. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the custody function of brokers." *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015) (finding impermissible the application of interest or time-based damages to customer claims under SIPA). Only customers of the debtor are entitled to share in the fund of customer property, according to each customer's "net equity," to the extent ascertainable from the debtor's books and records or otherwise established to the Trustee's satisfaction. *Id.* at 77, 81; *see* SIPA § 78fff-2(b). In short, the Claimants have not met their burden to establish their status as customers under SIPA. Therefore, they are not eligible for claims for net equity.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

20

## **CONCLUSION**

For all the foregoing reasons, the Trustee respectfully requests that the Court affirm the Trustee's determination denying the Claimants' Claims, overrule the Claimants' Objection, disallow their Claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      December 9, 2019

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Jason I. Blanchard
Email: jblanchard@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Chapter 7 Estate of Bernard L. Madoff*