# EXHIBIT 8

**BEAR STEARNS**

**BEAR, STEARNS SECURITIES CORP.**
**INDIVIDUAL RETIREMENT ACCOUNT**
**APPLICATION**

DATE _____

ACCOUNT NUMBER _____

**1. (PLEASE PRINT)**

Name: Ralph A. Siciliano    Date of Birth: Redacted    Social Security No.: Redacted  Redacted 2511

Mailing Address: Redacted

City: Redacted    State: _____    Zip Code: _____

Telephone No.: Redacted    Name of Working Spouse (If IRA for Nonworking Spouse): _____

**2.**

**(A) INITIAL CONTRIBUTION:**
_____ : $ _____
(year)    (amount)

-OR-

**(B) CHECK ONE:**
☒ Rollover or ☐ Transfer
(If a Transfer, also complete a Bear Stearns Transfer Form, which may be obtained from your Account Executive or advisor.)

-OR-

**(C) CHECK IF APPLICABLE:**
☐ SEP/IRA

**3. DESIGNATION OF BENEFICIARY:** If I die before my entire interest in the IRA has been distributed under Article IV of the Individual Retirement Account Custodial Agreement, it is my intention that the balance of the account shall be distributed to:

☒ **PRIMARY BENEFICIARY**

Name: Steven J. Rosandich, Friend    (don't know)    ~~SS#~~ Percentage: 100%

Mailing Address: Redacted

City: Redacted    State: _____    Date of Birth: _____    Zip Code: _____

**4.** ☐ **ADDITIONAL BENEFICIARY OR** ☒ **CONTINGENT BENEFICIARY: (CHECK ONE ONLY)**

Name: (self, i.e. my estate)    Relationship: _____    Social Security No.: _____    Percentage: _____

Mailing Address: _____    Date of Birth: _____

City: _____    State: _____    Zip Code: _____

**5.** ☐ **ADDITIONAL BENEFICIARY OR** ☐ **CONTINGENT BENEFICIARY: (CHECK ONE ONLY)**

Name: _____    Relationship: _____    Social Security No.: _____    Percentage: _____

Mailing Address: _____    Date of Birth: _____

City: _____    State: _____    Zip Code: _____

I may change or revoke this designation without notice to any beneficiary by completing a new form. Any such change or revocation shall be effective on the date Bear Stearns receives such notice. I understand that if no beneficiary designation is in effect at the time of my death, or if the designated beneficiary dies before my death, or if Bear Stearns is unable to readily locate the designated beneficiary, the balance of my account will be paid to my spouse if surviving, or if none, to my children in equal shares per stirpes, or if none, to my estate.

**6.** ☐ **DATE OF CHANGE OF BENEFICIARY DESIGNATION:** _____ / _____ / _____
Month    Day    Year

**7. UNINVESTED CASH:** I authorize and direct Bear Stearns to automatically invest daily in the money market fund I select any uninvested cash held in the account. Further, I understand that if I do not select a money market fund, my account will not earn interest on any uninvested cash.

**8. ANNUAL MAINTENANCE FEE PER ACCOUNT:** $35. Termination fee per account: $50. (For additional information on Custodial Fees, please refer to Article VIII, item 1 of the Custodial Agreement.) Fees are not prorated.

**9.** I HAVE RECEIVED AND READ THE IRA BOOKLET, INCLUDING THE IRA CUSTODIAL AGREEMENT AND IRA DISCLOSURE STATEMENT. I HEREBY APPOINT BEAR, STEARNS SECURITIES CORP. AS CUSTODIAN OF MY IRA IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE BEAR STEARNS IRA CUSTODIAL AGREEMENT (IRS FORM 5305-A (REV. MARCH 2002), AS MODIFIED BY BEAR STEARNS WITH RESPECT TO ARTICLE VIII THEREOF). THE TERMS OF THE AGREEMENT AS SO MODIFIED ARE INCORPORATED HEREIN BY REFERENCE AND EXPRESSLY MADE A PART OF THIS IRA APPLICATION. I UNDERSTAND THAT BEAR STEARNS HAS NO DISCRETIONARY INVESTMENT RESPONSIBILITY WITH RESPECT TO THE ASSETS HELD IN MY IRA AND THAT BEAR STEARNS WILL INVEST AND REINVEST THE ASSETS IN THE IRA ONLY ON MY DIRECTION.

I UNDERSTAND THAT THE ADOPTION OF THE IRA HAS SIGNIFICANT FEDERAL, STATE AND LOCAL TAX CONSEQUENCES AND I HAVE BEEN ADVISED BY BEAR STEARNS TO CONSULT MY ATTORNEY OR OTHER TAX ADVISOR.

I FURTHER ACKNOWLEDGE THAT ARTICLE VIII (Miscellaneous Section, item 5, Page 28) OF THE IRA CUSTODIAL AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

**DEPOSITOR:**

Date: 9/7/06

Signature: Ralph A. Siciliano

Print Name: Ralph A. Siciliano

**FIRM COPY**

THSH_PJ 0000613

## FACE COPY - DO NOT WRITE ON THIS SIDE

# Customer Agreement

**BEAR STEARNS**

The Bear Stearns Companies Inc.
383 Madison Avenue
New York, New York 10179
(212) 272-2000

**THIS DOCUMENT IS A BINDING CONTRACT AND CONTAINS OBLIGATIONS THAT CAN BE ENFORCED AGAINST YOU.**

**PLEASE READ CAREFULLY, SIGN AND RETURN.**

This agreement ("Agreement") sets forth the terms and conditions on which subsidaries of The Bear Stearns Companies Inc. will open and maintain account(s) in your name and otherwise transact business with you. Your signature confirms that you agree to and are bound by the provisions of this Agreement.

**1. PARTIES.** The parties to this Agreement are you and all present and future subsidaries of The Bear Stearns Companies Inc. (each subsidiary is referred to as a "Bear Stearns entity" and all the Bear Stearns entities are referred to collectively, as "Bear Stearns").

**2. APPLICABLE LAWS, RULES AND REGULATIONS.**
(a) All transactions shall be subject to the applicable laws, rules and regulations ("Applicable Laws") of all federal, state and self-regulatory authorities including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed.
(b) Bear Stearns is committed to complying with U.S. statutory and regulatory requirements designed to combat money laundering and terrorist financing. The USA PATRIOT Act requires that all financial institutions obtain certain identification documents or other information in order to comply with their customer identification procedures. Until you provide the required information or documents, Bear Stearns may not be able to open or maintain account(s) or effect any transactions for you.

**3. SATISFACTION OF YOUR LIABILITIES; SECURITY INTEREST AND LIEN.**
(a) You agree to satisfy, upon demand, any indebtedness to a Bear Stearns entity, to pay any debit balance in any of your accounts and, in the event of a sell order by you, to deliver the applicable security in good deliverable form no later than the deadline set by Bear Stearns.
(b) All of your property held by or under the control of a Bear Stearns entity is subject to a lien to secure the payment and performance of your liabilities and obligations to each Bear Stearns entity and you hereby grant each Bear Stearns entity a lien on and a valid and first priority, perfected, continuing security interest in the following: (i) all property, including all investment property, held, carried or controlled by or through any Bear Stearns entity in which you presently have or in which you acquire an interest in the future, including all property in each account in your name, (ii) any and all rights, claims or causes of action you may now or hereafter have against any Bear Stearns entity and (iii) all proceeds of or distributions on the foregoing (collectively (i) through (iii) are referred to in this Agreement as "Collateral").
(c) Any Collateral held by a Bear Stearns entity is held by such Bear Stearns entity as agent and bailee for itself and all other Bear Stearns entities. Each Bear Stearns entity holding Collateral shall, without your further consent, comply with (i) entitlement orders or instructions for a Bear Stearns entity with respect to the Collateral and (ii) if such Bear Stearns entity holding Collateral is a commodity intermediary, any instructions to such Bear Stearns entity from another Bear Stearns entity to apply any value distributed on account of a commodity contract. Additionally, each Bear Stearns entity holding Collateral has the right, in its sole discretion, to not comply with (i) any entitlement order or instruction from you or a third party with respect to the Collateral and (ii) any instruction from you to apply any value on account of any commodity contract, if a Bear Stearns entity requests that such order or instruction not be complied with in order to maintain security for the payment and performance of your obligations and liabilities to it. You agree that the actions of a Bear Stearns entity in not complying with orders or instructions as allowed in the preceding sentence satisfy any duties Bear Stearns may have under the New York Uniform Commercial Code ("NYUCC").
(d) You agree that your execution of this Agreement shall constitute notice to each Bear Stearns entity of the security interest you have granted to each other Bear Stearns entity herein, and each Bear Stearns entity holding Collateral is on notice of the security interest granted to each other Bear Stearns entity.
(e) The reasonable costs and expenses of collection of any such indebtedness or debit balance, including but not limited to attorneys' fees and expenses, shall be payable by you to Bear Stearns.
(f) In order to secure the payment and performance of any of your outstanding liabilities and obligations to any Bear Stearns entity, Bear Stearns may, to the fullest extent permitted by law, without prior notice to you, use, apply or transfer Collateral as it determines. Unless otherwise agreed in writing, Bear Stearns may register and hold Collateral in its name or the name of its designee.
(g) You appoint Bear Stearns with full power as your true and lawful attorney-in-fact, to the fullest extent permitted by law, for the purpose of perfecting the security interest granted in this Agreement and taking any action and executing any instrument that Bear Stearns deems necessary or advisable to accomplish the purposes of this Agreement.

**4. REPRESENTATIONS BY YOU.** To induce Bear Stearns to transact business with you, you represent and covenant that (a) you have the right to pledge and assign Collateral to Bear Stearns; and (b) Collateral is and shall at all times be free and clear of any liens, claims or encumbrances, except in favor of a Bear Stearns entity.

**5. DEPOSITS ON TRANSACTIONS.** Bear Stearns may require you to deposit cash or other property, acceptable to Bear Stearns, as Collateral, in your account(s) in such amounts as Bear Stearns determines in its sole discretion and you agree to comply with any such request by no later than the deadline set by Bear Stearns.

**6. BREACH, BANKRUPTCY OR DEFAULT.**
(a) Each Bear Stearns entity may elect to consider you in default of any or all agreements you may then have with it if (i) you do not pay any liability or perform any obligation to any Bear Stearns entity by the time you are obligated to do so; (ii) you otherwise breach, repudiate or default under this Agreement or any other agreement you may have with any Bear Stearns entity; (iii) you commence a proceeding in bankruptcy or insolvency or one is commenced against you; (iv) any guarantor, co-signer or other party (a "Responsible Party") liable on or providing security for your obligations to any Bear Stearns entity defaults in an obligation to Bear Stearns or commences a proceeding in bankruptcy or insolvency or one is commenced against it; (v) an attachment is made against your or a Responsible Party's account(s) with any Bear Stearns entity; (vi) a receiver is appointed with respect to you, any of your assets or the assets of a Responsible Party; (vii) if you are a natural person, you die or become incompetent, and if you are an entity, your merge, liquidate or dissolve; or (viii) an event, circumstance or condition occurs that, in Bear Stearns' judgment, materially impairs your creditworthiness, your ability to timely perform your obligations to Bear Stearns or otherwise causes us to view ourselves as insecure. The occurrence of any of the foregoing is referred to as an "Event of Default".
(b) Upon the election by Bear Stearns to consider you in default, each Bear Stearns entity shall have all of the rights and remedies of a secured party upon default under the NYUCC and other Applicable Laws and may, without notice to you, among other things, (i) foreclose, collect, sell or otherwise liquidate any Collateral a Bear Stearns entity selects in its sole discretion, in any order and at any time, and apply, in a manner determined by Bear Stearns in its sole discretion, the proceeds to satisfy any of your obligations or liabilities to any Bear Stearns entity and (ii) buy any property that may have been sold short. At any sale of Collateral or other sale or purchase permitted hereunder or otherwise, Bear Stearns may sell or purchase to or from itself or third parties, and you hereby acknowledge and agree that the securities subject to such sale or purchase are instruments traded in a recognized market. You will pay each Bear Stearns entity for any losses and costs incurred by Bear Stearns as a result of any default by you. You waive marshalling of assets and any similar doctrine dealing with the application of collateral.

**7. EXECUTION FEES AND SERVICE CHARGES.** Your account(s) will be charged brokerage commissions and/or other fees in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for other services

furnished to you ("Service Fees"). All such fees shall be determined by Bear Stearns. Execution Fees may be changed from time to time without prior notice to you and Service Fees may be changed from time to time upon thirty (30) days' prior written notice to you and, in each case, you agree to be bound thereby.

**8. CONFIRMATION REPORTS AND ACCOUNT STATEMENTS.** Confirmation reports of the execution of orders shall be conclusive if not objected to in writing by you within the shorter of (i) the applicable settlement cycle of the subject transactions or (ii) three (3) business days after such documents have been transmitted to you by mail or otherwise. Statements of account(s) shall be conclusive if not objected to in writing by you within ten (10) days after transmission. In all cases, Bear Stearns reserves the right to challenge your objections.

**9. TRUTH-IN-LENDING; DEBIT BALANCES.** You hereby acknowledge receipt of Bear Stearns' Truth-in-Lending disclosure statement. Interest will be charged on any debit balances in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any debit balance, which is not paid at the close of an interest period, will be added to the opening balance for the next interest period.

**10. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, fees, expenses, liabilities and damages incurred by Bear Stearns ("Costs") in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account(s) or any property therein, (iii) your or any other person authorized to act on your behalf's (A) use of or access to Electronic Service (as defined in paragraph 20 below) or (B) failure to comply with any terms, conditions or limitations applicable to such Electronic Service, (iv) any breach or failure by you to perform any term or provision of this Agreement, any other agreement between you and any Bear Stearns entity or any agreement governing your use of or access to any Electronic Service, or (v) Bear Stearns acting in reliance upon your instructions or any other person authorized to act on your behalf, if any. In each case and whether or not demand has been made therefor, you hereby authorize Bear Stearns to charge your account(s) for any and all such Costs.

**11. NATURE OF SERVICES.** Bear Stearns will not provide you with any legal, tax or accounting advice. Bear Stearns' employees are not authorized to give you any such advice and you will not solicit or rely upon any such advice from them or from Bear Stearns whether in connection with transactions in or for any of your accounts or otherwise.

**12. CONTROL OR RESTRICTED SECURITIES.** Prior to placing an order in connection with any securities subject to Rule 144 or 145(d) of the Securities Act of 1933, as amended, you shall advise Bear Stearns of the status of the securities and furnish us with the necessary documents to clear legal transfer. You acknowledge that there may be delays involved with the processing of control or restricted securities and that Bear Stearns will not be liable for any losses caused directly or indirectly by such delays. Bear Stearns may, in its sole discretion, require that control or restricted securities not be sold or transferred until such securities clear legal transfer.

**13. IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Bear Stearns holds, for your benefit bonds or preferred stock in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of the New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account with respect to which Bear Stearns has actual knowledge that any officer, director or employee of Bear Stearns has any financial interest until all other customers have been satisfied on an impartial lottery basis.

**14. WAIVER, ASSIGNMENT, NOTICES AND LIMITATION OF LIABILITY.**
(a) Neither Bear Stearns' failure to insist at any time upon strict compliance with the terms of this Agreement nor any continued course of such conduct on its part shall constitute or be considered a waiver by Bear Stearns of any of its rights or privileges hereunder. Any assignment of your rights and obligations hereunder or your interest in any property held by or through Bear Stearns without obtaining the prior written consent of an authorized representative of Bear Stearns shall be null and void. Each Bear Stearns entity reserves the right to assign any of its rights or obligations hereunder to any other Bear Stearns entity without prior notice to you. Notices and other communications (including, without limitation, margin calls) delivered, faxed, sent by express delivery service or mailed to the address provided by you shall, until Bear Stearns has received notice in writing of a different address, be deemed to have been personally delivered to you whether actually received or not. Notices and other communications may also be provided to you verbally. Such notices and other communications left for you on your answering machine, or otherwise, shall be deemed to have been delivered to you whether actually received or not. Notices and other communications from you to Bear Stearns shall be in writing. You hereby authorize Bear Stearns to accept facsimile copies of this or any other document or instruction as if it were the original and to accept signatures on facsimiles as if they were originals.
(b) You agree that, no Bear Stearns entity shall have any liability for any consequential, incidental or any similar damages and you hereby irrevocably and unconditionally waive any right you may have to claim or recover any such damages (even if you have informed Bear Stearns of the possibility or likelihood of such damages).

**15. FREE CREDIT BALANCES.** You hereby authorize Bear Stearns to use any free credit balance in any of your accounts in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Bear Stearns for such account(s) and for the amounts of cash so used. In accordance with applicable regulations, free credit balances are carried in customers' accounts pending, and with a view towards, reinvestment. Bear Stearns may determine not to pay interest on free credit balances representing either (i) uncollected funds or (ii) funds that are deposited and subsequently withdrawn prior to the expiration of the minimum time period required by Bear Stearns.

**16. RESTRICTIONS ON ACCOUNTS.** Bear Stearns, in its sole discretion, may restrict or prohibit trading of securities or other property in any of your accounts and you shall nevertheless remain liable for all of your obligations and liabilities to Bear Stearns under this Agreement or otherwise.

**17. CREDIT REPORTS AND OTHER INFORMATION.** You authorize Bear Stearns, in its sole discretion, to make or obtain reports concerning your credit standing and business conduct. You may make a written request for a description of the nature and scope of the reports made or obtained by Bear Stearns and the same will be provided to you within a reasonable period of time. You further agree to provide Bear Stearns, on request, with such additional information or certification as may be required by Bear Stearns or Applicable Laws.

**18. SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "short". In placing any sell order for a long account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "long". The designation by you of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the sell order has been placed, that such security may be sold without restriction in the open market and that, if Bear Stearns does not have the security in its possession at the time you place the sell order, you shall deliver the security for settlement date in good deliverable form or pay to Bear Stearns any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

THSH_PJ 0000614

**Customer Agreement**    DOC CODE ☐ 003

**19. MARGIN AND OTHER COLLATERAL REQUIREMENTS.** [Applicable only to margin account(s)] You hereby agree to deposit and maintain such margin in your margin account(s), if any, as Bear Stearns may in its sole discretion require, and you agree to pay on demand any debit balance owing with respect to any of your margin accounts. In addition, you further agree to deposit promptly and maintain such other collateral with Bear Stearns as is required by Applicable Laws or any other agreement or open transaction you may have with any Bear Stearns entity. No demands, calls, tenders or notices that Bear Stearns may have made or given in the past shall obligate Bear Stearns to make or give the same in the future. Unless you advise Bear Stearns in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under the Securities Act of 1933) of the issuer of any security held in any of your accounts. Margin calls may also be communicated orally, without subsequent written confirmation.

**20. ON-LINE AND ELECTRONIC SYSTEMS.** If you or any other person authorized to act on your behalf accesses or uses any internet site or on-line or other electronic system operated for or by Bear Stearns or any account access, trading, order entry or other services, systems, capabilities or content available through any of the foregoing (each, an "Electronic Service"), you acknowledge and agree that such Electronic Service is being made available to you or such other person without any warranty whatsoever, either express or implied, and you agree that any such access or use will be solely at your own risk, and Bear Stearns will not have any liability whatsoever relating to or arising out of any such access, use, or any problems with or failures of any Electronic Service. Moreover, you agree that if you or any person authorized to act on your behalf are given any digital certificate(s), user name(s) and/or password(s) which may be required to access or use any Electronic Services (collectively, "User Code(s)"), (a) you shall preserve the confidentiality of such User Codes; (b) you shall restrict access to the User Codes to those persons who are duly authorized to act on your behalf; (c) you shall notify Bear Stearns immediately in the event any such User Code is lost, stolen or the confidentiality of any such User Code has been compromised in any way or the authority of any person to act on your behalf has been revoked or limited; and (d) you are responsible for and will be bound by all statements made, orders entered, and instructions, trades, agreements, assents and consents communicated under any such User Code, to the same extent that the same was under your duly signed writing.

**21. CONSENT TO LOAN, PLEDGE OR USE OF SECURITIES IN MARGIN ACCOUNTS.** [Applicable only to margin account(s)] To the greatest extent permitted under Applicable Laws, you hereby authorize Bear Stearns to lend either to itself or to others and to otherwise use, sell or pledge any securities held by Bear Stearns in any of your margin account(s), to convey therewith all attendant rights of ownership (including voting rights) and to use all such property as collateral for Bear Stearns' general loans or other obligations or with respect to repurchase transactions. Any such property, together with all attendant rights of ownership, may be pledged, repledged, sold, hypothecated or rehypothecated or become subject to repurchase transactions either separately or in common with other property for any amounts due to Bear Stearns thereon and Bear Stearns shall have no obligations to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, (i) Bear Stearns may receive and retain certain benefits to which you will not be entitled and (ii) the securities in your margin account(s) may be used as collateral by Bear Stearns for loans made to it in excess of your indebtedness to Bear Stearns. In certain circumstances, such loans or other use may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities.

**22. LEGALLY BINDING.** You hereby agree that the terms of this Agreement shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any instruction with respect to any of your accounts was not in writing as may be required by the Statute of Frauds or any similar Applicable Laws.

**23. AMENDMENT; TERMINATION.**
(a)    You agree that Bear Stearns may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from Bear Stearns thereafter, you will have indicated your acceptance of any such modification. If you do not accept such modification, you must notify Bear Stearns in writing; your account(s) may then be terminated by Bear Stearns, after which you will remain liable to Bear Stearns for all outstanding liabilities and obligations. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Bear Stearns.
(b)    You may close any of your accounts at any time by giving Bear Stearns written notice, provided that Bear Stearns receives all securities and/or other property for which your account(s) are short and you have satisfied all of your outstanding liabilities and obligations which you owe to any Bear Stearns entity for any reason whatsoever.
(c)    Bear Stearns reserves the right to terminate this Agreement or your account(s) at any time for any reason. The provisions of this Agreement shall survive termination of this Agreement and/or closure of your account(s) insofar as they relate to obligations, liabilities, actions or failures to take action relating to, arising in or with respect to the period prior to termination of this Agreement or closure of your account(s).
(d)    On termination of this Agreement or closure of your account(s), it will be your responsibility to issue instructions in writing with regard to the assets held in your account(s). Unless and until Bear Stearns receives such instructions, it will be under no obligation to take any action with regard to your assets. You agree that you will be responsible for any transaction costs associated with your instructions, including commissions and related costs.

**24.    GOVERNING LAW.** THIS AGREEMENT SHALL BE GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25.    ARBITRATION; CONSENT TO JURISDICTION; SERVICE OF PROCESS.**
(a)    THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE. BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:
• ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.
• ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.
• THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS.
• THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.
• THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
• THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.
• THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.
• NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL:
    (i)        THE CLASS CERTIFICATION IS DENIED;
    (ii)       THE CLASS IS DECERTIFIED; OR
    (iii)      THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.
    SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.
BY SIGNING THIS AGREEMENT YOU AND BEAR STEARNS AGREE, THAT CONTROVERSIES
• ARISING UNDER OR RELATING TO THIS AGREEMENT OR ANY ACTIVITY BETWEEN YOU AND BEAR STEARNS, ITS PREDECESSORS, AND ANY OF THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND ANY OF THEIR DIRECTORS, EMPLOYEES AND ANY OTHER CONTROL PERSONS AND ANY OF THEIR AGENTS, WHETHER ARISING PRIOR TO, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS

AGREEMENT SHALL BE HELD ONLY AT THE FACILITIES OF, BEFORE AN ARBITRATION PANEL APPOINTED BY, AND PURSUANT TO THE RULES OF THE NEW YORK STOCK EXCHANGE, INC., OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. YOU MAY ELECT ONE OF THE FOREGOING FORUMS FOR ARBITRATION, BUT IF YOU FAIL TO MAKE SUCH ELECTION BY REGISTERED MAIL, OR TELEGRAM ADDRESSED TO BEAR, STEARNS SECURITIES CORP., 383 MADISON AVENUE, NEW YORK, NEW YORK 10179, ATTENTION: CHIEF LEGAL OFFICER (OR ANY OTHER ADDRESS OF WHICH YOU ARE ADVISED IN WRITING), BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM BEAR STEARNS TO MAKE SUCH ELECTION, THEN BEAR STEARNS MAY MAKE SUCH ELECTION. THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

(b)    Notwithstanding the provisions of subparagraph (a) above, either party may, at any time prior to the initial arbitration hearing pertaining to such dispute or controversy, seek by application to the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York any such temporary or provisional relief or remedy ("provisional remedy") provided for by the laws of the U.S. or the laws of the State of New York as would be available in an action based upon such dispute or controversy in the absence of an agreement to arbitrate. The parties acknowledge and agree that it is their intention to have any such application for a provisional remedy decided by the Court to which it is made and that such application shall not be referred to or settled by arbitration. No such application to either said Court for a provisional remedy, nor any act or conduct by either party in furtherance of or in opposition to such application, shall constitute a relinquishment or waiver of any right to have the underlying dispute or controversy with respect to which such application is made settled by arbitration in accordance with subparagraph (a) above.
(c)    With respect to any application for a provisional remedy and any application for judgment on an arbitration award, each party irrevocably (i) submits to the jurisdiction of the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York, (ii) waives any objection which it may have at any time to the laying of venue of any proceedings brought in any such court, waives any claim that such proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such proceedings, that such court does not have any jurisdiction over such party, and (iii) consents to service of process by certified mail, return receipt requested, to the address provided for herein.
(d)    You hereby agree to receive service of process in connection with any legal matters or actions or proceedings based upon, arising out of or relating in any way to this Agreement by confirmed, return-receipt requested mail and that delivery shall be presumed if such service is mailed to the address maintained by Bear Stearns in its records and the requested receipt is returned.

**26. SEVERABILITY.** If and to the extent any term or provision herein is or should become invalid or unenforceable, then (i) the remaining terms and provisions hereof shall be unimpaired and remain in full force and effect and (ii) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision.

**27. EXTRAORDINARY EVENTS.** Bear Stearns shall not be liable for losses caused directly or indirectly by suspension of trading, wars, civil disturbances, terrorism, strikes, natural calamities, labor or material shortages, government restrictions, acts or omissions of exchanges, specialists, markets, clearance organizations or information providers, delays in mails, delays or inaccuracies in the transmission of orders or information, governmental, exchange or self-regulatory organization laws, rules or actions, or any other causes beyond Bear Stearns' control that may or delay the performance of Bear Stearns' obligations.

**28. HEADINGS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights or obligations provided for hereunder.

**29. TELEPHONE AND ELECTRONIC COMMUNICATIONS.** You hereby authorize Bear Stearns to monitor and/or record any or all telephone and/or electronic communications between you and Bear Stearns or any of Bear Stearns' employees or agents. You agree that such recordings may be used in connection with a dispute between the parties. You acknowledge that Bear Stearns may determine not to make or keep such recordings and that such determination shall not in any way affect any party's rights.

**30. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights of each Bear Stearns entity set forth in this Agreement and in each other agreement you may have with any Bear Stearns entity are cumulative and in addition to any other rights and remedies that any Bear Stearns entity may have and shall supersede any limitation on or any requirement for the exercise of such rights and remedies that is inconsistent with the terms of this or any other such agreement. The provisions of this Agreement shall supersede any inconsistent provisions of any other agreement entered into between you and any Bear Stearns entity, unless such other agreement expressly states that the terms thereof shall supersede this Agreement. You agree that you will take such action as is necessary to cooperate with Bear Stearns with respect to Collateral and delivery and perfection thereof. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Bear Stearns concerning the subject matter hereof.

**31. CAPACITY TO CONTRACT; AFFILIATIONS.** You represent that you are of legal age to enter into contracts in the state of your domicile and that, unless you have notified Bear Stearns to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc., (iii) an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities options or futures or (iv) an employee of any bank, trust company or insurance company. Persons signing on behalf of others should indicate the titles or capacities in which they are signing. If the undersigned is signing on behalf of others, the undersigned hereby represents that the person(s) or entity(ies) on whose behalf it is signing is/are authorized to enter into this Agreement and that the undersigned is duly authorized to sign this Agreement and make the representations herein in the name and on behalf of such other person(s) or entity(ies). Subject to the preceding sentence, you represent that only the undersigned has any interest in the account(s) established pursuant to this Agreement.

BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:
1.    THE SECURITIES IN YOUR MARGIN ACCOUNT(S) AND ANY SECURITIES FOR WHICH YOU HAVE NOT FULLY PAID, TOGETHER WITH ALL ATTENDANT OWNERSHIP RIGHTS, MAY BE USED BY BEAR STEARNS OR SOLD OR PLEDGED TO BEAR STEARNS OR TO OTHERS; AND
2.    YOU HAVE RECEIVED A COPY OF THIS AGREEMENT.

THIS AGREEMENT IS DATED AS OF    9/7/    20    06

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 25, PAGE 2.

(Account Number)

(Typed or Printed Name)

X _Ralph A. Siciliano_
(Signature)

_Ralph A. Siciliano_
(Typed or Printed Name)

X
(Signature)

**BRANCH/CORRESPONDENT**

4767 REV. 4/05

THSH_PJ 0000615

| Form **W-9**<br>(Rev. November 2005)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | **Give form to the**<br>**requester. Do not**<br>**send to the IRS.** |
|---|---|---|

*Print or type*
*See Specific Instructions on page 2.*

Name (as shown on your income tax return)   Ralph A. Stelliano

Business name, if different from above

Check appropriate box: ☑ Individual/ Sole proprietor   ☐ Corporation   ☐ Partnership   ☐ Other ▶ ----------------   ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)   Redacted

City, state, and ZIP code   Redacted

Requester's name and address (optional)

List account number(s) here (optional)

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number   Redacted 2|5|1|1|1

or

Employer identification number   |_|_|_|_|_|_|

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here**   Signature of U.S. person ▶   *[signature]*   Date ▶ 9/7/06

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:

● An individual who is a citizen or resident of the United States,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X   Form **W-9** (Rev. 11-2005)

# BEAR STEARNS

**1 MetroTech Center North**
**Brooklyn, N.Y. 11201**

- ☐ 4K* = 401K
- ☐ C  = Cash/Mgn
- ☐ CO = Corporate
- ☐ CU = Custodian (UGMA)
- ☐ DR = Direct Roller
- ☐ Broker Change Only
- ☐ IR = IRA
- ☐ JT = Joint
- ☐ Non-ACAT
- ☐ EI = Educational
- ☐ QP = Qual/PS/Pen/Plan
- ☐ RI = Roth IRA
- ☐ SN = Single
- ☐ TR = Trust

## Account Transfer Form

Use this form to authorize the transfer of assets currently at another firm into your Bear Stearns account. Complete one form for each account you are transferring.

**1. Information About Your Account.** The registration of the account being transferred must match your Bear Stearns account (i.e., IRA to IRA).

| BEAR STEARNS ACCOUNT | | ACCOUNT BEING TRANSFERRED | |
|---|---|---|---|
| Bear Stearns Account Number (if available)    0352    BSSC Clearing No. | | Account Number    _Ralph A. Siciliano_    Broker Clearing No. | |
| Account Holder Name/Account Title   _Ralph A. Siciliano_   Redacted 2511 | | Title of Account You are Transferring (as shown on your statement) | |
| Primary Social Security or Tax Identification Number | | Name of Firm currently holding your account | |
| Joint Account Owner (if applicable)          Second SS # (if applic.) | | Address of Firm | |

**2. Transfer Instructions:  Complete section A or B and, if applicable, section C.  A copy of your most recent statement is required with this form.**

**A.** ☐ **Transfer from a Brokerage Firm only**
  ☐ Transfer all assets in kind      ☐ Partial transfer (Complete section C below.)

**B.** ☐ **Transfer from a Bank, Mutual Fund, or Credit Union only**
  ☐ Transfer all assets in kind      ☐ Partial transfer (Complete section C below.)      ☐ Liquidate all assets and transfer as cash
  ☐ Transfer proceeds from Certificates of Deposit AT MATURITY (Submit no earlier than 30 days prior to maturity.)      ☐ Liquidate Certificates of Deposit IMMEDIATELY.  I am aware of and acknowledge the penalty I will incur from an early withdrawal.

**C.** **Partial Transfer Instructions: Transfer only a portion of my account, as detailed below (continue on a separate sheet if needed).**

| Quantity | Symbol or CUSIP # | Description of Asset | Cash Balance (Indicate credit or debit) |
|---|---|---|---|
| | | | $ |
| | | | |
| | | | |

**To the Delivering Firm named above:**

If this account is a qualified retirement account, I have amended the applicable plan so that it names as successor custodian the below listed trustee. Unless otherwise indicated in the instructions above, please transfer all assets in my account to Bear, Stearns Securities Corp. I understand that to the extent any assets in my account are not readily transferable with or without penalties, such assets may not be transferred within the timeframes required by NYSE Rule 412 or similar rule of the NASD or other designated examining authority.

Unless otherwise indicated in the instructions below, I authorize you to liquidate any non-transferable proprietary money market fund assets that are part of my account and transfer the resulting credit balance to the successor custodian.  I authorize you to deduct any outstanding fees due you from the credit balance in my account.  If my account does not contain a credit balance, or if the credit balance in the account is insufficient to satisfy any outstanding fees due to you, I authorize you to liquidate the assets in my account to the extent necessary to satisfy that obligation.  If certificates or other instruments in my account are in your physical possession, I instruct you to transfer them in good deliverable form, including affixing any necessary tax waivers, to enable the successor custodian to transfer them in its name for the purpose of sale, when and as directed by me.  I understand that upon receiving a copy of this transfer instruction, you will cancel all open orders for my account on your books.

I affirm that I have destroyed or returned to you credit/debit cards and/or unused checks issued to me in connection with my securities account.

I understand that I will be contacted with respect to the disposition of any assets in my securities account that are non-transferable.

**Age 70-1/2 Restrictions – The following restrictions apply to a retirement account transfer.**

If I am over 70-1/2, I attest that none of the amount to be transferred will include the required minimum distribution for the current year pursuant to Section 401(a)(9) of the Internal Revenue Code.  If necessary, instruct your present custodian prior to effecting this transfer to either: **1)** Pay your required minimum distribution to you now **OR 2)** Retain that amount there for distribution to you later.

**3. Owner Authorization and Agreement to Terms.**  By signing below, I (we) acknowledge reading and agree to the above terms and conditions.

| Owner/Custodian/Trustee Signature   X _Ralph A. Siciliano_ | Joint Owner Signature (if any)/Plan Administrator/Trustee   X | Date (Required)   9/8/06 |
|---|---|---|
| Print Name          Title/Role | Print Name          Title/Role | |

**Letter of Acceptance**

BEAR STEARNS SECURITIES CORP. ("BSSC") will accept the above captioned account as SUCCESSOR CUSTODIAN/TRUSTEE.  BSSC does not accept and will not act as Custodian/ Trustee of and for any assets and/or positions which are not actually transferred to BSSC and BSSC specifically does not approve any notation on the books and records of any entity, including but not limited to any mutual fund company, that indicates, implies and/or states that BSSC is the custodian/trustee of any assets held away from BSSC.

| Successor Custodian Signature (BSSC Receiving Custodian Completes) | Date | Contact: **Bear, Stearns Securities Corp. ACAT Dept.** **Telephone No. 347-643-2944** |
|---|---|---|
| Name of Registered Representative | Branch | R.R. No. | Telephone No. |

449 (02/06)                                                                      Subject to the by-laws and rules of the N.S.C.C.

# BEAR STEARNS

**DOC CODE 301**

**NEW ACCOUNT FORM INDIVIDUALS**

OFFICE #_____   ACCOUNT #_____ T ____ CK ____   ACCOUNT EXECUTIVE # _____   GROUP # _____

## A. ACCOUNT TYPE

- ☒ Individual
- ☐ JTWROS
- ☐ Tenants in Common
- ☐ Tenants by Entirety
- ☐ Transfer on Death
- ☐ IRA
- ☐ IRA ROTH
- ☐ IRA KEOUGH
- ☐ SEP IRA
- ☐ IRA Education
- ☐ IRA Guardian
- ☐ IRA Rollover
- ☐ Escrow Individual
- ☐ UGMA
- ☐ UTMA
- ☐ Other Specify:

| CLASS CODE | SUB CLASS CODE | ACCOUNT TAX ID | GOVT. ISSUED ID [If no tax ID]] |
|---|---|---|---|
| | | | |

## B. ACCOUNT NAME/ TITLE (In Full):

Ralph A. Sigeliano

Telephone: _ **Redacted**

## C. ACCOUNT MAILING ADDRESS
(If this is a P.O. Box, provide physical address in Section D)

**Redacted**

## D. PERMANENT ADDRESS

same

## E. ACCOUNT INFORMATION

INVESTMENT OBJECTIVE: _Growth_

**ACCOUNT WILL BE TRADING**
☒ Cash ☐ Margin ☐ Short ☐ Futures (Complete Futures Addendum)

NET WORTH: _ **Redacted**   NUAL INCOME: _ **Redacted**

INVESTMENT EXPERIENCE: ☐ None ☐ Low ☒ Med ☐ High

INVESTMENT ADVISOR NAME & ADDRESS (If Applicable)

_____

_____

_____

**NAME & BUSINESS ADDRESS OF PERSON WITH TRADING AUTHORITY (If Applicable)**

_____

_____

_____

_____

Title: _____

SELL INSTRUCTIONS: ☒ 07 Hold Proceeds ☐ 08 Send to Customer

DIVIDENDS: ☐ Send Check ☐ Hold ☐ Income Acct. ☐ Direct Dep.

NAME OF AE: _____ Phone: _____

AE Trading Authority?: ☒ Yes ☐ No

AE Registered in Customer's State of Residence? ☐ Yes ☐ No

Is AE Related? ☐ Yes ☐ No  State Relationship: _____

Account Introduced to AE by: _____

AE Known How Long?: _____

Trading Authorization will be: ☐ Limited ☐ Gen. Pwr. of Atty.

Initial Transaction: ☐ Shares ☐ Deposit AMOUNT: _____

Reason for Waive of Deposit: _____

Bank and other References: _____

Have you sent forms to Customer?: ☐ Yes ☐ No

Does Customer have another account with us?: ☐ Yes ☐ No

Account Numbers: _____

New Acct Indiv (version 6/26/06)

Page 1 of 6



**BEAR STEARNS**

**DOC CODE 301**

**NEW ACCOUNT FORM INDIVIDUALS**

**ACCOUNT #** _____

**F. CLIENT / BENEFICIAL OWNER**

> This information must be filled out for EACH individual. Please use a separate page for each individual.

For **US Individual**: No documentation required at account opening. A copy of a driver's license or other valid, government-issued picture ID may be requested for verification purposes upon review of the account.

For **Non-US Individuals**: Please attach to this form a copy of a valid, government-issued picture ID evidencing nationality for each individual. The documentation must be presented _prior_ to account opening.

For **Trading Authority / Power of Attorney** complete Questions 1-6.

| 1. Name [First, Middle, Last Name]: Ralph A Siciliano | 2. Relation to Account [see definitions page 4]: |
|---|---|
| 3. Principal Business Address: 900 Third Ave. NY, NY 10022 Please do not use as mailing address Business Phone: 212-508-6718 | 4. Business Mailing Address [If different from Principal Business]: |

5. Is this individual a current or former Foreign Political Figure, an Immediate Family Member of Known Close Associate? [See definition on Page 4]
☒ No.
☐ Yes. Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity.

6. Is any Citizenship or Address associated with this individual located in a High Risk Jurisdiction? [See list on page 5]
☒ No.
☐ Yes. Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity.

| 7. Has an Account for this Individual been established since 10/01/03? ☐ Yes ☒ No If Yes, list Account Numbers: | 8. SSN or other Valid Gov't Issued ID No: Redacted 2511 Type of ID: Country of Issuance: USA |
|---|---|
| 9. Estimated Net Worth (US$): ☒ Redacted | 10. Annual Income (US$): ☒ Redacted |
| 11. Sources of Wealth: ☒ Employment ☐ Inheritance ☒ Investment ☐ Other (explain) | 12. Sources of Assets on Deposit: ☐ Employment ☐ Inheritance ☒ Investment ☐ Other (explain) |
| 13. Country of Citizenship: USA | 14. Date of Birth: Redacted |
| 15. Home Address: Redacted Home Phone: | 16. Mailing Address: [if different from Home Address] |
| 17. Occupation: Attorney Employment Status: ☒ Employed ☐ Self-Employed ☐ Unemployed If employed, Employer's Name: Tannenbaum Helpern Member Firm? ☐ Yes ☒ No | 18. Marital Status: ☒ Single ☐ Married If married, Spouse's Occupation: |

New Acct Indiv (version 6/26/06)

Page 2 of 6

# BEAR STEARNS

**DOC CODE 301**                                    **NEW ACCOUNT FORM INDIVIDUALS**

## G. INTERESTED PARTIES

I/P # 1      # CONFIRMS _____    #STATEMENTS _____          I/P # 2      # CONFIRMS _____    #STATEMENTS _____

_____          _____
_____          _____
_____          _____
_____          _____

I/P # 3      # CONFIRMS _____    #STATEMENTS _____          I/P # 4      # CONFIRMS _____    #STATEMENTS _____

_____          _____
_____          _____
_____          _____
_____          _____

---

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____        Date: _____

---

Account Opened by: _____        Telephone Number: _____

Signature of Registered Representative: _____        Date: _____

Signature of Branch Mgr/Compliance Officer: _____        Date: _____

---

**For AML DUE DILIGENCE GROUP USE ONLY**

Date Received: _____        Commercial Vendor ID Verification: ☐Positive ☐Negative ☐Inconclusive

Name of Reviewer: _____        If Negative or Inconclusive:
                                                Valid Gov't Issued Picture ID Requested on Date: _____
Risk Level: _____

Approved by: _____

Date: _____        Final ID Approval: ☐Yes ☐No

THSH_PJ 0000620



**BEAR STEARNS**                    **DOC CODE 301**                    **NEW ACCOUNT FORM INDIVIDUALS**

<u>**CLIENT / BENEFICIAL OWNER / AUTHORIZED PARTIES**</u>

**Customer:**  The nominal owner of an account.

**Custodian:**  Under the Uniform Transfer (or Gift) to Minors Act, the person appointed to manage and dispense funds for a child.

**Guardian:**  A person or entity named in a will, guardianship, or court order who is responsible for the care of minor children or incompetent adults.

**Conservator:**  A person or entity appointed by a court to manage the property and financial affairs of another (usually incompetent) person.

**Investment Advisor:**  A person who manages assets, making portfolio composition and individual security selection decisions.

**Power of Attorney:**  An instrument by which one person authorizes another to act for him in a manner which is as legally binding upon the person giving such authority as if he personally were to do the acts.

**Principal:**  A person who designates another to act as his/her attorney in fact or agent.

**Trading Authority:**  A person who is authorized to conduct trades and provide instructions for a customer's account.

<u>**Foreign Political Figure:**</u>  A "Foreign Political Figure" is an official of a foreign government, an official of a major foreign political party or an executive of a foreign government-owned corporation.  In addition, a Foreign Political Figure includes any corporation or other business formed by, or for the benefit of, a Foreign Political Figure.  An "Immediate Family Member" of a Foreign Political Figure includes the person's parents, siblings, spouse, children and in-laws.  A "Known Close Associate" of a Foreign Political Figure is a person who is widely and publicly known (or who is actually known by Bear Stearns or the introducing broker-dealer) to maintain a close personal or professional relationship with a Foreign Political Figure.

THSH_PJ 0000621



**DOC CODE 301**                    **NEW ACCOUNT FORM INDIVIDUALS**

## Country & Jurisdiction Tables

| PROHIBITED | HIGH RISK | | MEDIUM RISK | | AML EQUIVALENT |
|---|---|---|---|---|---|
| Burma (Myanmar) | Afghanistan | Macau | Albania | Macedonia (FYROM) | Australia |
| | Algeria | Madagascar | Anguilla | Maldives | Austria |
| | Andorra | Malawi | Antarctica | Malaysia | Belgium |
| Cuba | Angola | Malta | Antigua and | Mali | Bermuda |
| | Armenia | Marshall Islands | Barbuda | Mauritius | Canada |
| Iran | Azerbaijan | [Majuro] | Argentina | Mexico | Denmark |
| | Bangladesh | Mauritania | Aruba | Micronesia | Finland |
| Sudan | Belarus | Moldova | Bahamas | Monaco | France |
| | Belize | Mongolia | Bahrain | Nauru | Germany |
| | Benin | Montenegro | Barbados | Oman | Greece |
| | Bolivia | Montserrat | Bhutan | Palau | Guernsey |
| | Bosnia & Herzegovina | Morocco | Botswana | Peru | Hong Kong, [China] |
| | Burkina Faso | Mozambique | Brazil | Qatar | Iceland |
| | Burundi | Namibia | British Virgin | Samoa (Western) | Ireland |
| | Cambodia | Nepal | Islands | San Marino | Italy |
| | Cameroon | Netherlands | Brunei | Senegal | Japan |
| | Central African | Antilles | Bulgaria | Slovakia | Jersey |
| | Republic | Nicaragua | Cape Verde | Slovenia | Luxembourg |
| | Chad | Niger | Cayman Islands | South Africa | Netherlands |
| | Colombia | Nigeria | Chile | South Korea | New Zealand |
| | Comoros | Niue | China, People's | St. Kitts & Nevis | Norway |
| | Congo (Both) | North Korea | Republic | St. Lucia | Portugal |
| | Cook Islands | Pakistan | Costa Rica | St. Vincent & The | Singapore |
| | Cote D'Ivoire | Palestinian | Croatia | Grenadines | Spain |
| | Cyprus | Authority | Czech Republic | Swaziland | Sweden |
| | Dominican Rep | [Gaza, West | Djibouti | Taiwan | Switzerland |
| | East Timor | Bank] | Dominica | Thailand | United Kingdom |
| | Ecuador | Panama | El Salvador | Togo | |
| | Egypt | Papua-New Guinea | Estonia | Tonga | |
| | Equatorial Guinea | Paraguay | Fiji | Trinidad and Tobago | |
| | Eritrea | Philippines | Ghana | Tunisia | |
| | Ethiopia | Poland | Gibraltar | Turkey | |
| | Gabon | Romania | Grenada | Turks and Caicos | |
| | Gambia | Russia | Hungary | United Arab Emirates | |
| | Georgia | Rwanda | India | Uruguay | |
| | Guatemala | Sao Tome & | Isle of Man | Vatican City | |
| | Guinea | Principe | Israel | Vanuatu | |
| | Guinea-Bissau | Saudi Arabia | Jordan | | |
| | Guyana | Serbia | Kuwait | | |
| | Haiti | Seychelles | | | |
| | Honduras | Sierra Leone | | | |
| | Indonesia | Solomon Islands | | | |
| | Iraq | Somalia | | | |
| | Jamaica | Sri Lanka | | | |
| | Kazakhstan | Suriname | | | |
| | Kenya | Syria | | | |
| | Kiribati | Tajikistan | | | |
| | Kyrgyzstan | Tanzania | | | |
| | Laos | Turkmenistan | | | |
| | Latvia | Tuvalu | | | |
| | Lebanon | Uganda | | | |
| | Lesotho | Ukraine | | | |
| | Liberia | Uzbekistan | | | |
| | Libya | Venezuela | | | |
| | Liechtenstein | Vietnam | | | |
| | Lithuania | Western Sahara | | | |
| | | Yemen | | | |
| | | Yugoslavia FR | | | |
| | | Zambia | | | |
| | | Zimbabwe | | | |

THSH_PJ 0000622

# FUTURES ACCOUNT ADDENDUM FOR NEW ACCOUNTS

Type of Account
☐ Individual          ☐ Partnership          ☐ Omnibus Account
☐ Joint               ☐ Trust                ☐ Commodity Pool
☐ Corporation         ☐ Foreign Account      ☐ Other (Specify) _____

| TRADING EXPERIENCE | NONE | 1 YEAR | 2 YEAR | OVER 3 YEARS |
|---|---|---|---|---|
| Commodities | | | | |
| Options | | | | |
| Stocks/Bonds | | | | |
| Other | | | | |

Estimated Liquid Assets: _____

Security or Commodity Accounts with Other Firms:  (List Firms):

Other Security or Commodity Accounts at Bear Stearns :

Does this account control the trading in any other account?          ☐ Yes ☐ No
Does any other person(s) control the trading of this account?        ☐ Yes ☐ No
Does any other person have a financial interest in this account?     ☐ Yes ☐ No
Does any other person guarantee this account?                        ☐ Yes ☐ No
If yes, specify:

Name: _____   Address: _____

Information regarding the commission status must be fully completed:

Commission Rates    _____        ☐ Inclusive  ☐ +Fees
                    _____

Indicate how commissions will be charged:    Futures ☐ Round Turn  ☐ Half Turn
                                             Options ☐ Round Turn  ☐ Half Turn
Indicate if account is to be converted to US$:    ☐ Yes ☐ No

**Foreign Commodity Exchanges:**  Indicate the foreign commodity exchanges account will be trading and the native currency rates to be charged:

Exchange: _____
Rate: _____

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____   Date: _____

Signature of Registered Representative: _____   Date: _____

Signature of Branch Mgr/Compliance Officer: _____   Date: _____

New Acct Indiv (version 6/26/06)                                           Page 6 of 6

THSH_PJ 0000623

DOCUMENT DEPARTMENT USE ONLY-DO NOT WRITE IN THIS AREA    DOC CODE    015    080    181

**BEAR STEARNS**

**BEAR, STEARNS SECURITIES CORP.**
**INDIVIDUAL RETIREMENT ACCOUNT**
**APPLICATION**

DATE _____

ACCOUNT NUMBER _____

**1. (PLEASE PRINT)**

Name _JOEL S. HIRSCHTRITT_    Date of Birth _Redacted_    Social Security No. _Redacted 3866_

Mailing _Redacted_

Redacted    State /    Zip Code

Telephone No.      Name of Working Spouse (If IRA for Nonworking Spouse)

**2.**

| (A) INITIAL CONTRIBUTION: | | (B) CHECK ONE: | | (C) CHECK IF APPLICABLE: |
|---|---|---|---|---|
| _____ : $ _____ (year)  (amount) | -OR- | ☑ Rollover or ☐ Transfer (If a Transfer, also complete a Bear Stearns Transfer Form, which may be obtained from your Account Executive or advisor.) | -OR- | ☐ SEP/IRA |

**3. DESIGNATION OF BENEFICIARY:** If I die before my entire interest in the IRA has been distributed under Article IV of the Individual Retirement Account Custodial Agreement, it is my intention that the balance of the account shall be distributed to:

☐ **PRIMARY BENEFICIARY**

Name _NANCY HIRSCHTRITT_    Relationship _SPOUSE_    Social Security No. _Redacted 819_    Percentage _100%_

Mailing Address _SAME AS ABOVE_    Date of Birth _Redacted_

City    State    Zip Code

**4.** ☐ **ADDITIONAL BENEFICIARY OR** ☐ **CONTINGENT BENEFICIARY: (CHECK ONE ONLY)**

Name    Relationship    Social Security No.    Percentage

Mailing Address    Date of Birth

City    State    Zip Code

**5.** ☐ **ADDITIONAL BENEFICIARY OR** ☐ **CONTINGENT BENEFICIARY: (CHECK ONE ONLY)**

Name    Relationship    Social Security No.    Percentage

Mailing Address    Date of Birth

City    State    Zip Code

I may change or revoke this designation without notice to any beneficiary by completing a new form. Any such change or revocation shall be effective on the date Bear Stearns receives such notice. I understand that if no beneficiary designation is in effect at the time of my death, or if the designated beneficiary dies before my death, or if Bear Stearns is unable to readily locate the designated beneficiary, the balance of my account will be paid to my spouse if surviving, or if none, to my children in equal shares per stirpes, or if none, to my estate.

**6.** ☐ **DATE OF CHANGE OF BENEFICIARY DESIGNATION:** ____/____/____   Month  Day  Year

**7. UNINVESTED CASH:** I authorize and direct Bear Stearns to automatically invest daily in the money market fund I select any uninvested cash held in the account. Further, I understand that if I do not select a money market fund, my account will not earn interest on any uninvested cash.

**8. ANNUAL MAINTENANCE FEE PER ACCOUNT:** $35. Termination fee per account: $50. (For additional information on Custodial Fees, please refer to Article VIII, item 1 of the Custodial Agreement.) Fees are not prorated.

**9.** I HAVE RECEIVED AND READ THE IRA BOOKLET, INCLUDING THE IRA CUSTODIAL AGREEMENT AND IRA DISCLOSURE STATEMENT. I HEREBY APPOINT BEAR, STEARNS SECURITIES CORP. AS CUSTODIAN OF MY IRA IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE BEAR STEARNS IRA CUSTODIAL AGREEMENT (IRS FORM 5305-A (REV. MARCH 2002), AS MODIFIED BY BEAR STEARNS WITH RESPECT TO ARTICLE VIII THEREOF). THE TERMS OF THE AGREEMENT AS SO MODIFIED ARE INCORPORATED HEREIN BY REFERENCE AND EXPRESSLY MADE A PART OF THIS IRA APPLICATION. I UNDERSTAND THAT BEAR STEARNS HAS NO DISCRETIONARY INVESTMENT RESPONSIBILITY WITH RESPECT TO THE ASSETS HELD IN MY IRA AND THAT BEAR STEARNS WILL INVEST AND REINVEST THE ASSETS IN THE IRA ONLY ON MY DIRECTION.

I UNDERSTAND THAT THE ADOPTION OF THE IRA HAS SIGNIFICANT FEDERAL, STATE AND LOCAL TAX CONSEQUENCES AND I HAVE BEEN ADVISED BY BEAR STEARNS TO CONSULT MY ATTORNEY OR OTHER TAX ADVISOR.

I FURTHER ACKNOWLEDGE THAT ARTICLE VIII (Miscellaneous Section, item 5, Page 28) OF THE IRA CUSTODIAL AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

**DEPOSITOR:**

Date _____

Signature _[signature]_

Print Name _JOEL S. HIRSCHTRITT_

**FIRM COPY**

## FACE COPY - DO NOT WRITE ON THIS SIDE

# Customer Agreement

**BEAR STEARNS**

The Bear Stearns Companies Inc.
383 Madison Avenue
New York, New York 10179
(212) 272-2000

**THIS DOCUMENT IS A BINDING CONTRACT AND CONTAINS OBLIGATIONS THAT CAN BE ENFORCED AGAINST YOU.**

**PLEASE READ CAREFULLY, SIGN AND RETURN.**

This agreement ("Agreement") sets forth the terms and conditions on which subsidiaries of The Bear Stearns Companies Inc. will open and maintain account(s) in your name and otherwise transact business with you. Your signature confirms that you agree to and are bound by the provisions of this Agreement.

**1. PARTIES.** The parties to this Agreement are you and all present and future subsidiaries of The Bear Stearns Companies Inc. (each subsidiary is referred to as a "Bear Stearns entity" and all the Bear Stearns entities are referred to collectively, as "Bear Stearns").

**2. APPLICABLE LAWS, RULES AND REGULATIONS.**
(a) All transactions shall be subject to the applicable laws, rules and regulations ("Applicable Laws") of all federal, state and self-regulatory authorities including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed.
(b) Bear Stearns is committed to complying with U.S. statutory and regulatory requirements designed to combat money laundering and terrorist financing. The USA PATRIOT Act requires that all financial institutions obtain certain identification documents or other information in order to comply with their customer identification procedures. Until you provide the required information or documents, Bear Stearns may not be able to open or maintain account(s) or effect any transactions for you.

**3. SATISFACTION OF YOUR LIABILITIES; SECURITY INTEREST AND LIEN.**
(a) You agree to satisfy, upon demand, any indebtedness to a Bear Stearns entity, to pay any debit balance in any of your accounts and, in the event of a sell order by you, to deliver the applicable security in good deliverable form no later than the deadline set by Bear Stearns.
(b) All of your property held by or under the control of a Bear Stearns entity is subject to a lien to secure the payment and performance of your liabilities and obligations to each Bear Stearns entity and you hereby grant each Bear Stearns entity a lien on and a valid and first priority, perfected, continuing security interest in the following: (i) all property, including all investment property, held, carried or controlled by or through any Bear Stearns entity in which you presently have or in which you acquire an interest in the future, including all property in each account in your name, (ii) any and all rights, claims or causes of action you may now or hereafter have against any Bear Stearns entity and (iii) all proceeds of or distributions on the foregoing (collectively (i) through (iii) are referred to in this Agreement as "Collateral").
(c) Any Collateral held by a Bear Stearns entity is held by such Bear Stearns entity as agent and bailee for itself and all other Bear Stearns entities. Each Bear Stearns entity holding Collateral shall, without your further consent, comply with (i) entitlement orders or instructions for a Bear Stearns entity with respect to the Collateral and (ii) if such Bear Stearns entity holding Collateral is a commodity intermediary, any instructions to such Bear Stearns entity from another Bear Stearns entity to apply any value distributed on account of a commodity contract. Additionally, each Bear Stearns entity holding Collateral has the right, in its sole discretion, to not comply with (i) any entitlement order or instruction from you or a third party with respect to the Collateral and (ii) any instruction from you to apply any value on account of any commodity contract, if a Bear Stearns entity requests that such order or instruction not be complied with in order to maintain security for the payment and performance of your obligations and liabilities to it. You agree that the actions of a Bear Stearns entity in not complying with orders or instructions as allowed in the preceding sentence satisfy any duties Bear Stearns may have under the New York Uniform Commercial Code ("NYUCC").
(d) You agree that your execution of this Agreement shall constitute notice to each Bear Stearns entity of the security interest you have granted to each other Bear Stearns entity herein, and each Bear Stearns entity holding Collateral is on notice of the security interest granted to each other Bear Stearns entity.
(e) The reasonable costs and expenses of collection of any such indebtedness or debit balance, including but not limited to attorneys' fees and expenses, shall be payable by you to Bear Stearns.
(f) In order to secure the payment and performance of any of your outstanding liabilities and obligations to any Bear Stearns entity, Bear Stearns may, to the fullest extent permitted by law, without prior notice to you, use, apply or transfer Collateral as it determines. Unless otherwise agreed in writing, Bear Stearns may register and hold Collateral in its name or the name of its designee.
(g) You appoint Bear Stearns with full power as your true and lawful attorney-in-fact, to the fullest extent permitted by law, for the purpose of perfecting the security interest granted in this Agreement and taking any action and executing any instrument that Bear Stearns deems necessary or advisable to accomplish the purposes of this Agreement.

**4. REPRESENTATIONS BY YOU.** To induce Bear Stearns to transact business with you, you represent and covenant that (a) you have the right to pledge and assign Collateral to Bear Stearns; and (b) Collateral is and shall at all times be free and clear of any liens, claims or encumbrances, except in favor of a Bear Stearns entity.

**5. DEPOSITS ON TRANSACTIONS.** Bear Stearns may require you to deposit cash or other property, acceptable to Bear Stearns, as Collateral, in your account(s) in such amounts as Bear Stearns determines in its sole discretion and you agree to comply with any such request by no later than the deadline set by Bear Stearns.

**6. BREACH, BANKRUPTCY OR DEFAULT.**
(a) Each Bear Stearns entity may elect to consider you in default of any or all agreements you may then have with it if (i) you do not pay any liability or perform any obligation to any Bear Stearns entity by the time you are obligated to do so; (ii) you otherwise breach, repudiate or default under this Agreement or any other agreement you may have with any Bear Stearns entity; (iii) you commence a proceeding in bankruptcy or insolvency or one is commenced against you; (iv) any guarantor, co-signer or other party (a "Responsible Party") liable on or providing security for your obligations to any Bear Stearns entity defaults in an obligation to Bear Stearns or commences a proceeding in bankruptcy or insolvency or one is commenced against it; (v) an attachment is made against your or a Responsible Party's account(s) with any Bear Stearns entity; (vi) a receiver is appointed with respect to you, any of your assets or the assets of a Responsible Party; (vii) if you are a natural person, you die or become incompetent, and if you are an entity, you merge, liquidate or dissolve; or (viii) an event, circumstance or condition occurs that, in Bear Stearns' judgment, materially impairs your creditworthiness, your ability to timely perform your obligations to Bear Stearns or otherwise causes us to view ourselves as insecure. The occurrence of any of the foregoing is referred to as an "Event of Default".
(b) Upon the election by Bear Stearns to consider you in default, each Bear Stearns entity shall have all of the rights and remedies of a secured party upon default under the NYUCC and other Applicable Laws and may, without notice to you, among other things, (i) foreclose, collect, sell or otherwise liquidate any Collateral a Bear Stearns entity selects in its sole discretion, in any order and at any time, and apply, in a manner determined by Bear Stearns in its sole discretion, the proceeds to satisfy any of your obligations or liabilities to any Bear Stearns entity and (ii) buy any property that you may have been sold short. At any sale of Collateral or other sale or purchase committed hereunder or otherwise, Bear Stearns may sell or purchase to or from itself or third parties, and you hereby acknowledge and agree that the securities subject to such sale or purchase are instruments traded in a recognized market. You will pay each Bear Stearns entity for any losses and costs incurred by Bear Stearns as a result of any default by you. You waive marshalling of assets and any similar doctrine dealing with the application of collateral.

**7. EXECUTION FEES AND SERVICE CHARGES.** Your account(s) will be charged brokerage commissions and/or other fees in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for other services

**BRANCH/CORRESPONDENT**

furnished to you ("Service Fees"). All such fees shall be determined by Bear Stearns. Execution Fees may be changed from time to time upon prior notice to you and Service Fees may be changed from time to time upon thirty (30) days' prior written notice to you and, in each case, you agree to be bound thereby.

**8. CONFIRMATION AND ACCOUNT STATEMENTS.** Confirmation reports of the execution of orders shall be conclusive if not objected to in writing by you within the shorter of (i) the applicable settlement cycle of the subject transactions or (ii) three (3) business days after such documents have been transmitted to you by mail or otherwise. Statements of account(s) shall be conclusive if not objected to in writing by you within ten (10) days after transmission. In all cases, Bear Stearns reserves the right to challenge your objections.

**9. TRUTH-IN-LENDING; DEBIT BALANCES.** You hereby acknowledge receipt of Bear Stearns' Truth-In-Lending disclosure statement. Interest will be charged on any debit balances in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any debit balance, which is not paid at the close of an interest period, will be added to the opening balance for the next interest period.

**10. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, fees, expenses, liabilities and damages incurred by Bear Stearns ("Costs") in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account(s) or any property therein, (iii) your or any other person authorized to act on your behalf's (A) use of or access to Electronic Service (as defined in paragraph 20 below) or (B) failure to comply with any terms, conditions or limitations applicable to such Electronic Service, (iv) any breach or failure by you to perform any term or provision of this Agreement, any other agreement between you and any Bear Stearns entity or any agreement governing your use of or access to any Electronic Service, or (v) Bear Stearns acting in reliance upon your instructions or any other person authorized to act on your behalf, if any. In each case and whether or not demand has been made therefor, you hereby authorize Bear Stearns to charge your account(s) for any and all such Costs.

**11. NATURE OF SERVICES.** Bear Stearns will not provide you with any legal, tax or accounting advice. Bear Stearns' employees are not authorized to give you any such advice and you will not solicit or rely upon any such advice from them or from Bear Stearns whether in connection with transactions in or for any of your accounts or otherwise.

**12. CONTROL OR RESTRICTED SECURITIES.** Prior to placing an order in connection with any securities subject to Rule 144 or 145(d) of the Securities Act of 1933, as amended, you shall advise Bear Stearns of the status of the securities and furnish us with the necessary documents to clear legal transfer. You acknowledge that there may be delays involved with the processing of control or restricted securities and that Bear Stearns will not be liable for any losses caused directly or indirectly by such delays. Bear Stearns may, in its sole discretion, require that control or restricted securities not be sold or transferred until such securities clear legal transfer.

**13. IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Bear Stearns holds on your behalf bonds or preferred stock in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of the New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account with respect to which Bear Stearns has actual knowledge that any officer, director or employee of Bear Stearns has any financial interest until all other customers have been satisfied on an impartial lottery basis.

**14. WAIVER, ASSIGNMENT, NOTICES AND LIMITATION OF LIABILITY.**
(a) Neither Bear Stearns' failure to insist at any time upon strict compliance with the terms of this Agreement nor any continued course of such conduct on its part shall constitute or be considered a waiver by Bear Stearns of any of its rights or privileges hereunder. Any assignment of your rights and obligations hereunder or your interest in any property held by or through Bear Stearns without obtaining the prior written consent of an authorized representative of Bear Stearns shall be null and void. Each Bear Stearns entity reserves the right to assign any of its rights or obligations hereunder to any other Bear Stearns entity without prior notice to you. Notices and other communications (including, without limitation, margin calls) delivered, faxed, sent by express delivery service or mailed to the address provided by you shall, until Bear Stearns has received notice in writing of a different address, be deemed to have been personally delivered to you whether actually received or not. Notices and other communications may also be provided to you verbally. Such notices and other communications left for you on your answering machine, or otherwise, shall be deemed to have been delivered to you whether actually received or not. Notices and other communications from you to Bear Stearns shall be in writing. You hereby authorize Bear Stearns to accept facsimile copies of this or any other document or instruction as if it were the original and to accept signatures on facsimiles as if they were originals.
(b) You agree that, no Bear Stearns entity shall have any liability for any consequential, incidental or any similar damages and you hereby irrevocably and unconditionally waive any right you may have to claim or recover any such damages (even if you have informed Bear Stearns of the possibility or likelihood of such damages).

**15. FREE CREDIT BALANCES.** You hereby authorize Bear Stearns to use any free credit balance in any of your accounts in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Bear Stearns for such account(s) and for the amounts of cash so used. In accordance with applicable regulations, free credit balances are carried in customers' accounts pending, and with a view towards, reinvestment. Bear Stearns may determine not to pay interest on free credit balances representing either (i) uncollected funds or (ii) funds that are deposited and subsequently withdrawn prior to the expiration of the minimum time period required by Bear Stearns.

**16. RESTRICTIONS ON ACCOUNTS.** Bear Stearns, in its sole discretion, may restrict or prohibit trading of securities or other property in any of your accounts and you shall nevertheless remain liable for all of your obligations and liabilities to Bear Stearns under this Agreement or otherwise.

**17. CREDIT REPORTS AND OTHER INFORMATION.** You authorize Bear Stearns, in its sole discretion, to make or obtain reports concerning your credit standing and business conduct. You may make a written request for a description of the nature and scope of the reports made or obtained by Bear Stearns at the same time as that request is made to you. If you further agree to provide Bear Stearns, on request, with such additional information or certification as may be required by Bear Stearns or Applicable Laws.

**18. SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "short". In placing any sell order for a long account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "long". The designation by you of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the sell order has been placed, that such security may be sold for your account and that, if Bear Stearns does not have the security in its possession at the time you place the sell order, you shall deliver the security by settlement date in good deliverable form or pay to Bear Stearns any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

**Customer Agreement**                                                    DOC CODE ☐ 003

**19. MARGIN AND OTHER COLLATERAL REQUIREMENTS.** *[Applicable only to margin account(s)]* You hereby agree to deposit and maintain such margin in your margin account(s), if any, as Bear Stearns may in its sole discretion require, and you agree to pay on demand any debit balance owing with respect to any of your margin accounts. In addition, you further agree to deposit promptly and maintain such other collateral with Bear Stearns as is required by Applicable Laws or any other agreement or open transaction you may have with any Bear Stearns entity. No demands, calls, tenders or notices that Bear Stearns may have made or given in the past shall obligate Bear Stearns to make or give the same in the future. Unless you advise Bear Stearns in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under The Securities Act of 1933) of the issuer of any security held in any of your accounts. Margin calls may also be communicated orally, without subsequent written confirmation.

**20. ON-LINE AND ELECTRONIC SYSTEMS.** If you or any other person authorized to act on your behalf accesses or uses any internet site or on-line or other electronic system operated for or by Bear Stearns or any account access, trading, order entry or other services, systems, capabilities or content available through any of the foregoing (each, an "Electronic Service"), you acknowledge and agree that such Electronic Service is being made available to you or such other person without any warranty whatsoever, either express or implied, and you agree that any such access or use will be solely at your own risk, and Bear Stearns will not have any liability whatsoever relating to or arising out of any such access, use, or any problems with or failures of any Electronic Service. Moreover, you agree that if you or any person authorized to act on your behalf are given any digital certificate(s), user name(s) and/or password(s) which may be required to access or use any Electronic Services (collectively, "User Code(s)"), (a) you shall preserve the confidentiality of such User Codes; (b) you shall restrict access to the User Codes to those persons who are duly authorized to act on your behalf; (c) you shall notify Bear Stearns immediately in the event any such User Code is lost, stolen or the confidentiality of any such User Code has been compromised in any way or the authority of any person to act on your behalf has been revoked or limited; and (d) you are responsible for and will be bound by all statements made, orders entered, and instructions, trades, agreements, assents and consents communicated under any such User Code, to the same extent that the same was under your duly signed writing.

**21. CONSENT TO LOAN, PLEDGE OR USE OF SECURITIES IN MARGIN ACCOUNTS.** *[Applicable only to margin account(s)]* To the greatest extent permitted under Applicable Laws, you hereby authorize Bear Stearns to lend either to itself or to others and to otherwise use, sell or pledge any securities held by Bear Stearns in any of your margin account(s), to convey therewith all attendant rights of ownership (including voting rights) and to use all such property as collateral for Bear Stearns' general loans or other obligations or with respect to repurchase transactions. Any such property, together with all attendant rights of ownership, may be pledged, repledged, sold, hypothecated or rehypothecated or become subject to repurchase transactions either separately or in common with other property for any amounts due to Bear Stearns thereon and Bear Stearns shall have no obligations to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, (i) Bear Stearns may receive and retain certain benefits to which you will not be entitled and (ii) the securities in your margin account(s) may be used as collateral by Bear Stearns for loans made to it in excess of your indebtedness to Bear Stearns. In certain circumstances, such loans or other use may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities.

**22. LEGALLY BINDING.** You hereby agree that the terms of this Agreement shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any instruction with respect to any of your accounts was not in writing as may be required by the Statute of Frauds or any similar Applicable Laws.

**23. AMENDMENT; TERMINATION.**
(a)   You agree that Bear Stearns may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from Bear Stearns thereafter, you will have indicated your acceptance of any such modification. If you do not accept such modification, you must notify Bear Stearns in writing; your account(s) may then be terminated by Bear Stearns, after which you will remain liable to Bear Stearns for all outstanding liabilities and obligations. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Bear Stearns.
(b)   You may close any of your accounts at any time by giving Bear Stearns written notice, provided that Bear Stearns receives all securities and/or other property for which your account(s) are short and you have satisfied all of your outstanding liabilities and obligations which you owe to any Bear Stearns entity for any reason whatsoever.
(c)   Bear Stearns reserves the right to terminate this Agreement or your account(s) at any time for any reason. The provisions of this Agreement shall survive termination of this Agreement and/or closure of your account(s) insofar as they relate to obligations, liabilities, actions or failures to take action relating to, arising in or with respect to the period prior to termination of this Agreement or closure of your account(s).
(d)   On termination of this Agreement or closure of your account(s), it will be your responsibility to issue instructions in writing with regard to the assets held in your account(s). Unless and until Bear Stearns receives such instructions, it will be under no obligation to take any action with regard to your assets. You agree that you will be responsible for any transaction costs associated with any such instructions, including commissions and related costs.

**24. GOVERNING LAW.** THIS AGREEMENT SHALL BE GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25. ARBITRATION; CONSENT TO JURISDICTION; SERVICE OF PROCESS.**
(a)      THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE. BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:
• ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.
• ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.
• THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS.
• THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.
• THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
• THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.
• THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.
• NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL:
    (i)       THE CLASS CERTIFICATION IS DENIED;
    (ii)      THE CLASS IS DECERTIFIED; OR
    (iii)     THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.
SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

BY SIGNING THIS AGREEMENT YOU AND BEAR STEARNS AGREE, THAT CONTROVERSIES
• ARISING UNDER OR RELATING TO THIS AGREEMENT OR ANY ACTIVITY BETWEEN YOU AND BEAR STEARNS, ITS PREDECESSORS, AND ANY OF THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND ANY OF THEIR DIRECTORS, EMPLOYEES AND ANY OTHER CONTROL PERSONS AND ANY OF THEIR AGENTS, WHETHER ARISING PRIOR TO, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS

AGREEMENT SHALL BE HELD ONLY AT THE FACILITIES OF, BEFORE AN ARBITRATION PANEL APPOINTED BY, AND PURSUANT TO THE RULES OF THE NEW YORK STOCK EXCHANGE, INC., OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. YOU MAY ELECT ONE OF THE FOREGOING FORUMS FOR ARBITRATION, BUT IF YOU FAIL TO MAKE SUCH ELECTION BY REGISTERED MAIL, OR TELEGRAM ADDRESSED TO, BEAR STEARNS SECURITIES CORP., 383 MADISON AVENUE, NEW YORK, NEW YORK 10179, ATTENTION: CHIEF LEGAL OFFICER OR ANY OTHER ADDRESS OF WHICH YOU ARE ADVISED IN WRITING, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM BEAR STEARNS TO MAKE SUCH ELECTION, THEN BEAR STEARNS MAY MAKE SUCH ELECTION. THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

(b)      Notwithstanding the provisions of subparagraph (a) above, either party may, at any time prior to the initial arbitration hearing pertaining to such dispute or controversy, seek by application to the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York any such temporary or provisional relief or remedy ("provisional remedy") provided for by the laws of the U.S. or the laws of the State of New York as would be available in an action based upon such dispute or controversy in the absence of an agreement to arbitrate. The parties acknowledge and agree that it is their intention to have any such application for a provisional remedy decided by the Court to which it is made and that such application shall not be referred to or settled by arbitration. No such application to either said Court for a provisional remedy, nor any act or conduct by either party in furtherance of or in opposition to such application, shall constitute a relinquishment or waiver of any right to have the underlying dispute or controversy with respect to which such application is made settled by arbitration in accordance with subparagraph (a) above.
(c)      With respect to any application for a provisional remedy and any application for judgment on an arbitration award, each party irrevocably (i) submits to the jurisdiction of the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York, (ii) waives any objection which it may have at any time to the laying of venue of any proceedings brought in any such court, waives any claim that such proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such proceedings, that such court does not have any jurisdiction over such party, and (iii) consents to service of process by certified mail, return receipt requested, to the address provided for herein.
(d)      You hereby agree to receive service of process in connection with any legal matters or actions or proceedings based upon, arising out of or relating in any way to this Agreement by confirmed, return-receipt requested mail and that delivery shall be presumed if such service is mailed to the address maintained by Bear Stearns in its records and the requested receipt is returned.

**26. SEVERABILITY.** If and to the extent any term or provision herein is or should become invalid or unenforceable, then (i) the remaining terms and provisions shall be unimpaired and remain in full force and effect and (ii) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision.

**27. EXTRAORDINARY EVENTS.** Bear Stearns shall not be liable for losses caused directly or indirectly by suspension of trading, wars, civil disturbances, terrorism, strikes, natural calamities, labor or material shortages, government restrictions, acts or omissions of exchanges, specialists, markets, clearance organizations or information providers, delays in mails, delays or inaccuracies in the transmission of orders or information, governmental, exchange or self-regulatory organization laws, rules or actions, or any other causes beyond Bear Stearns' control that may or delay the performance of Bear Stearns' obligations.

**28. HEADINGS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights or obligations provided for hereunder.

**29. TELEPHONE AND ELECTRONIC COMMUNICATIONS.** You hereby authorize Bear Stearns to monitor and/or record any or all telephone and/or electronic communications between you and Bear Stearns or any Bear Stearns' employees or agents. You agree that such recordings may be used in connection with a dispute between the parties. You acknowledge that Bear Stearns may determine not to make or keep such recordings and that such determination shall not in any way affect any party's rights.

**30. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights of each Bear Stearns entity set forth in this Agreement and in each other agreement you may have with any Bear Stearns entity are cumulative and in addition to any other rights and remedies that any Bear Stearns entity may have and shall supersede any limitation on or any requirement for the exercise of such rights and remedies that is inconsistent with the terms of this or any other such agreement. The provisions of this Agreement shall supersede any inconsistent provisions of any other agreement entered into between you and any Bear Stearns entity, unless such other agreement expressly states that the terms thereof shall supersede this Agreement. You agree that you will take such action as is necessary to cooperate with Bear Stearns with respect to Collateral and delivery and perfection thereof. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Bear Stearns concerning the subject matter hereof.

**31. CAPACITY TO CONTRACT; AFFILIATIONS.** You represent that you are of legal age to enter into contracts in the state of your domicile and that, unless you have notified Bear Stearns to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc., (iii) an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities options or futures or (iv) an employee of any bank, trust company or insurance company. Persons signing on behalf of others should indicate the title or capacities in which they are signing. If the undersigned is signing on behalf of others, the undersigned hereby represents that the person(s) or entity(ies) on whose behalf it is signing is/are authorized to enter into this Agreement and that the undersigned is duly authorized to sign this Agreement and make the representations herein in the name and on behalf of such other person(s) or entity(ies). Subject to the preceding sentence, you represent that only the undersigned has any interest in the account(s) established pursuant to this Agreement.

BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:
1.      THE SECURITIES IN YOUR MARGIN ACCOUNT(S) AND ANY SECURITIES FOR WHICH YOU HAVE NOT FULLY PAID, TOGETHER WITH ALL ATTENDANT OWNERSHIP RIGHTS, MAY BE USED BY BEAR STEARNS OR SOLD OR PLEDGED TO BEAR STEARNS OR TO OTHERS; AND
2.      YOU HAVE RECEIVED A COPY OF THIS AGREEMENT.

THIS AGREEMENT IS DATED AS OF _____, 20_____.
THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 25, PAGE 2.

(Account Number) _____

(Typed or Printed Name) _____
X _____
(Signature)

(Typed or Printed Name) _____
X _____
(Signature)

THSH_PJ 0000865

| Form **W-9**<br>(Rev. November 2005)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | Give form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|

Name (as shown on your income tax return)

    JOEL  S.  HIRSCHTRITT

Business name, if different from above

Check appropriate box: ☑ Individual/<br>Sole proprietor   ☐ Corporation   ☐ Partnership   ☐ Other ▶ ................   ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)
    Redacted

Requester's name and address (optional)

City, state, and ZIP code
    Redacted

List account number(s) here (optional)

*Print or type. See Specific Instructions on page 2.*

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number
Redacted 3 8 6 6

or

Employer identification number

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

Sign<br>Here | Signature of<br>U.S. person ▶ | *[signature]* | Date ▶ 9/8/06

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:

● An individual who is a citizen or resident of the United States,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X                    Form **W-9** (Rev. 11-2005)

# BEAR STEARNS

**1 MetroTech Center North**
**Brooklyn, N.Y. 11201**

☐ 4K = 401K            ☐ Broker Change Only
☐ C = Cash/Mgn          ☐ IR = IRA              ☐ QP = Qual/PS/Pen/Plan
☐ CO = Corporate        ☐ JT = Joint            ☐ RI = Roth IRA
☐ CU = Custodian (UGMA)  ☐ Non-ACAT             ☐ SN = Single
☐ DR = Direct Roller     ☐ EI = Educational      ☐ TR = Trust

## Account Transfer Form

Use this form to authorize the transfer of assets currently at another firm into your Bear Stearns account. Complete one form for each account you are transferring.

**1. Information About Your Account.** The registration of the account being transferred must match your Bear Stearns account (i.e., IRA to IRA).

| BEAR STEARNS ACCOUNT | | ACCOUNT BEING TRANSFERRED | |
|---|---|---|---|
| | 0352 | | |
| Bear Stearns Account Number (if available) | BSSC Clearing No. | Account Number | Broker Clearing No. |
| *JOEL S. HIRSCHTRITT* | | Title of Account You are Transferring (as shown on your statement) | |
| Account Holder Name/Account Title | | | |
| Redacted  386 6 | | | |
| Primary Social Security or Tax Identification Number | | Name of Firm currently holding your account | |
| Joint Account Owner (if applicable) | Second SS # (if applic.) | Address of Firm | |

**2. Transfer Instructions: Complete section A or B and, if applicable, section C.  A copy of your most recent statement is required with this form.**

**A.**  ☐ **Transfer from a Brokerage Firm only**
☐ Transfer all assets in kind        ☐ Partial transfer (Complete section C below.)

**B.**  ☐ **Transfer from a Bank, Mutual Fund, or Credit Union only**
☐ Transfer all assets in kind    ☐ Partial transfer (Complete section C below.)    ☐ Liquidate all assets and transfer as cash
☐ Transfer proceeds from Certificates of Deposit AT MATURITY (Submit no earlier than 30 days prior to maturity.)    ☐ Liquidate Certificates of Deposit IMMEDIATELY.  I am aware of and acknowledge the penalty I will incur from an early withdrawal.

**C.**  ☐ **Partial Transfer Instructions: Transfer only a portion of my account, as detailed below (continue on a separate sheet if needed).**

| Quantity | Symbol or CUSIP # | Description of Asset | Cash Balance (Indicate credit or debit) |
|---|---|---|---|
| | | | $ |
| | | | |
| | | | |

**To the Delivering Firm named above:**

If this account is a qualified retirement account, I have amended the applicable plan so that it names as successor custodian the below listed trustee. Unless otherwise indicated in the instructions above, please transfer all assets in my account to Bear, Stearns Securities Corp. I understand that to the extent any assets in my account are not readily transferable with or without penalties, such assets may not be transferred within the timeframes required by NYSE Rule 412 or similar rule of the NASD or other designated examining authority.

Unless otherwise indicated in the instructions below, I authorize you to liquidate any non-transferable proprietary money market fund assets that are part of my account and transfer the resulting credit balance to the successor custodian. I authorize you to deduct any outstanding fees due you from the credit balance in my account. If my account does not contain a credit balance, or if the credit balance in the account is insufficient to satisfy any outstanding fees due to you, I authorize you to liquidate the assets in my account to the extent necessary to satisfy that obligation. If certificates or other instruments in my account are in your physical possession, I instruct you to transfer them in good deliverable form, including affixing any necessary tax waivers, to enable the successor custodian to transfer them in its name for the purpose of sale, when and as directed by me. I understand that upon receiving a copy of this transfer instruction, you will cancel all open orders for my account on your books.

I affirm that I have destroyed or returned to you credit/debit cards and/or unused checks issued to me in connection with my securities account.

I understand that I will be contacted with respect to the disposition of any assets in my securities account that are non-transferable.

**Age 70-1/2 Restrictions -- The following restrictions apply to a retirement account transfer.**

If I am over 70-1/2, I attest that none of the amount to be transferred will include the required minimum distribution for the current year pursuant to Section 401(a)(9) of the Internal Revenue Code. If necessary, instruct your present custodian prior to effecting this transfer to either: **1)** Pay your required minimum distribution to you now **OR 2)** Retain that amount there for distribution to you later.

**3. Owner Authorization and Agreement to Terms.** By signing below, I (we) acknowledge reading and agree to the above terms and conditions.

| Owner/Custodian/Trustee Signature | Joint Owner Signature (if any)/Plan Administrator/Trustee | Date (Required) |
|---|---|---|
| X  *Joel Hirschtritt* | X | 9/8/06 |
| Print Name            Title/Role | Print Name            Title/Role | |

**Letter of Acceptance**

BEAR STEARNS SECURITIES CORP. ("BSSC") will accept the above captioned account as SUCCESSOR CUSTODIAN/TRUSTEE.  BSSC does not accept and will not act as Custodian/ Trustee of and for any assets and/or positions which are not actually transferred to BSSC and BSSC specifically does not approve any notation on the books and records of any entity, including but not limited to any mutual fund company, that indicates, implies and/or states that BSSC is the custodian/trustee of any assets held away from BSSC.

| Successor Custodian Signature (BSSC Receiving Custodian Completes) | | Date | Contact: **Bear, Stearns Securities Corp.** ACAT Dept. Telephone No. 347-643-2944 |
|---|---|---|---|
| Name of Registered Representative | Branch | R.R. No. | Telephone No. |

449 (02/06)                                          Subject to the by-laws and rules of the N.S.C.C.

THSH_PJ 0000867

# BEAR STEARNS

**DOC CODE 301**

**NEW ACCOUNT FORM INDIVIDUALS**

**OFFICE #_____    ACCOUNT #_____    T____ CK____    ACCOUNT EXECUTIVE #_____    GROUP #_____**

## A. ACCOUNT TYPE

☐ Individual
☐ JTWROS

☐ Tenants in Common
☐ Tenants by Entirety
☐ Transfer on Death

☐ IRA
☐ IRA ROTH
☐ IRA KEOUGH
☐ SEP IRA

☐ IRA Education
☐ IRA Guardian
☐ IRA Rollover

☐ Escrow Individual
☐ UGMA
☐ UTMA

☐ Other
Specify:
_____

**CLASS CODE**          **SUB CLASS CODE**          **ACCOUNT TAX ID**          **GOVT. ISSUED ID [If no tax ID]]**

_____          _____          _____          _____

## B. ACCOUNT NAME/ TITLE (In Full):

JOEL S. HIRSCH TRMT

Telephone: _____

## C. ACCOUNT MAILING ADDRESS
(If this is a P.O. Box, provide physical address in Section D)

TANNENBAUM HELPERN et al
Redacted

## D. PERMANENT ADDRESS

Redacted

## E. ACCOUNT INFORMATION

**INVESTMENT OBJECTIVE:** _____

**ACCOUNT WILL BE TRADING**
☐ Cash  ☐ Margin  ☐ Short  ☐ Futures (Complete Futures Addendum)    Redacted

**NET WORTH:** _____  **ANNUAL INCOME:** Redacted

**INVESTMENT EXPERIENCE:** ☐ None ☐ Low ☐ Med ☑ High

**INVESTMENT ADVISOR NAME & ADDRESS (If Applicable)**

_____
_____
_____
_____

**NAME & BUSINESS ADDRESS OF PERSON WITH TRADING AUTHORITY (If Applicable)**

_____
_____
_____
_____

**Title:** _____

**SELL INSTRUCTIONS:** ☐ 07 Hold Proceeds ☐ 08 Send to Customer

**DIVIDENDS:** ☐ Send Check ☐ Hold ☐ Income Acct. ☐ Direct Dep.

**NAME OF AE:** _____ **Phone:** _____

**AE Trading Authority?:** ☐ Yes ☐ No

**AE Registered in Customer's State of Residence?** ☐ Yes ☐ No

**Is AE Related?** ☐ Yes ☐ No  **State Relationship:** _____

**Account Introduced to AE by:** _____

**AE Known How Long?:** _____

**Trading Authorization will be:** ☐ Limited ☐ Gen. Pwr. of Atty.

**Initial Transaction:** ☐ Shares ☐ Deposit **AMOUNT:** _____

**Reason for Waive of Deposit:** _____

**Bank and other References:** _____

**Have you sent forms to Customer?:** ☐ Yes ☐ No

**Does Customer have another account with us?:** ☐ Yes ☐ No

**Account Numbers:** _____

New Acct Indiv (version 6/26/06)

Page 1 of 6


**BEAR STEARNS**

**DOC CODE 301**

**NEW ACCOUNT FORM INDIVIDUALS**

## ACCOUNT # _____

**F. CLIENT / BENEFICIAL OWNER**

> This information must be filled out for EACH Individual. Please use a separate page for each individual.

**For US Individual:** No documentation required at account opening. A copy of a driver's license or other valid, government-issued picture ID may be requested for verification purposes upon review of the account.

**For Non-US Individuals:** Please attach to this form a copy of a valid, government-issued picture ID evidencing nationality for each Individual. The documentation must be presented _prior_ to account opening.

**For Trading Authority / Power of Attorney** complete Questions 1-6.

| | |
|---|---|
| **1. Name [First, Middle, Last Name]:** | **2. Relation to Account [see definitions page 4]:** |
| **3. Principal Business Address:**<br><br><br><br>**Business Phone:** | **4. Business Mailing Address [If different from Principal Business]:** |

**5. Is this individual a current or former Foreign Political Figure, an Immediate Family Member of Known Close Associate? [See definition on Page 4]**
☐ No.
☐ Yes. _Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity._

**6. Is any Citizenship or Address associated with this individual located in a High Risk Jurisdiction? [See list on page 5]**
☐ No.
☐ Yes. _Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity._

| | |
|---|---|
| **7. Has an Account for this Individual been established since 10/01/03?**<br>☐ Yes<br>☐ No<br>**If Yes, list Account Numbers:** | **8. SSN or other Valid Gov't Issued ID No:**<br><br>**Type of ID:**<br><br>**Country of Issuance:** |
| **9. Estimated Net Worth (US$):** | **10. Annual Income (US$):** |
| **11. Sources of Wealth:**<br>☐ Employment ☐ Inheritance ☐ Investment ☐ Other (explain) | **12. Sources of Assets on Deposit:**<br>☐ Employment ☐ Inheritance ☐ Investment ☐ Other (explain) |
| **13. Country of Citizenship:** | **14. Date of Birth:** |
| **15. Home Address:**<br><br><br><br>**Home Phone:** | **16. Mailing Address: [if different from Home Address]** |
| **17. Occupation:**<br><br>**Employment Status:** ☐ Employed ☐ Self-Employed ☐ Unemployed<br><br>**If employed, Employer's Name:**<br><br>**Member Firm?** ☐ Yes ☐ No | **18. Marital Status:** ☐ Single ☐ Married<br><br><br>**If married, Spouse's Occupation:** |

New Acct Indiv (version 6/26/06)

Page 2 of 6

THSH_PJ 0000869

# BEAR STEARNS

**DOC CODE 301**

**NEW ACCOUNT FORM INDIVIDUALS**

### G. INTERESTED PARTIES

I/P # 1      # CONFIRMS _____    #STATEMENTS _____

_____
_____
_____
_____

I/P # 2      # CONFIRMS _____    #STATEMENTS _____

_____
_____
_____
_____

I/P # 3      # CONFIRMS _____    #STATEMENTS _____

_____
_____
_____
_____

I/P # 4      # CONFIRMS _____    #STATEMENTS _____

_____
_____
_____
_____

---

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____    Date: _____

---

Account Opened by: _____    Telephone Number: _____

Signature of Registered Representative: _____    Date: _____

Signature of Branch Mgr/Compliance Officer: _____    Date: _____

---

**For AML DUE DILIGENCE GROUP USE ONLY**

Date Received: _____

Name of Reviewer: _____

Risk Level: _____

Approved by: _____

Date: _____

Commercial Vendor ID Verification: ☐Positive ☐Negative ☐Inconclusive

If Negative or Inconclusive:
Valid Gov't Issued Picture ID Requested on Date: _____

Final ID Approval: ☐Yes ☐No

---

New Acct Indiv (version 6/26/06)

Page 3 of 6

THSH_PJ 0000870

 **BEAR STEARNS**                    **DOC CODE 301**                    **NEW ACCOUNT FORM INDIVIDUALS**

## CLIENT / BENEFICIAL OWNER / AUTHORIZED PARTIES

**Customer:**  The nominal owner of an account.

**Custodian:**  Under the Uniform Transfer (or Gift) to Minors Act, the person appointed to manage and dispense funds for a child.

**Guardian:**  A person or entity named in a will, guardianship, or court order who is responsible for the care of minor children or incompetent adults.

**Conservator:**  A person or entity appointed by a court to manage the property and financial affairs of another (usually incompetent) person.

**Investment Advisor:**  A person who manages assets, making portfolio composition and individual security selection decisions.

**Power of Attorney:**  An instrument by which one person authorizes another to act for him in a manner which is as legally binding upon the person giving such authority as if he personally were to do the acts.

**Principal:**  A person who designates another to act as his/her attorney in fact or agent.

**Trading Authority:**  A person who is authorized to conduct trades and provide instructions for a customer's account.

**Foreign Political Figure:**  A "Foreign Political Figure" is an official of a foreign government, an official of a major foreign political party or an executive of a foreign government-owned corporation.  In addition, a Foreign Political Figure includes any corporation or other business formed by, or for the benefit of, a Foreign Political Figure.  An "Immediate Family Member" of a Foreign Political Figure includes the person's parents, siblings, spouse, children and in-laws.  A "Known Close Associate" of a Foreign Political Figure is a person who is widely and publicly known (or who is actually known by Bear Stearns or the introducing broker-dealer) to maintain a close personal or professional relationship with a Foreign Political Figure.

THSH_PJ 0000871



DOC CODE 301                    NEW ACCOUNT FORM INDIVIDUALS

## Country & Jurisdiction Tables

| PROHIBITED | HIGH RISK | | MEDIUM RISK | | AML EQUIVALENT |
|---|---|---|---|---|---|
| Burma (Myanmar) | Afghanistan | Macau | Albania | Macedonia (FYROM) | Australia |
| | Algeria | Madagascar | Anguilla | Maldives | Austria |
| | Andorra | Malawi | Antarctica | Malaysia | Belgium |
| Cuba | Angola | Malta | Antigua and | Mali | Bermuda |
| | Armenia | Marshall Islands | Barbuda | Mauritius | Canada |
| Iran | Azerbaijan | [Majuro] | Argentina | Mexico | Denmark |
| | Bangladesh | Mauritania | Aruba | Micronesia | Finland |
| Sudan | Belarus | Moldova | Bahamas | Monaco | France |
| | Belize | Mongolia | Bahrain | Nauru | Germany |
| | Benin | Montenegro | Barbados | Oman | Greece |
| | Bolivia | Montserrat | Bhutan | Palau | Guernsey |
| | Bosnia & Herzegovina | Morocco | Botswana | Peru | Hong Kong, [China] |
| | Burkina Faso | Mozambique | Brazil | Qatar | Iceland |
| | Burundi | Namibia | British Virgin | Samoa (Western) | Ireland |
| | Cambodia | Nepal | Islands | San Marino | Italy |
| | Cameroon | Netherlands | Brunei | Senegal | Japan |
| | Central African | Antilles | Bulgaria | Slovakia | Jersey |
| | Republic | Nicaragua | Cape Verde | Slovenia | Luxembourg |
| | Chad | Niger | Cayman Islands | South Africa | Netherlands |
| | Colombia | Nigeria | Chile | South Korea | New Zealand |
| | Comoros | Niue | China, People's | St. Kitts & Nevis | Norway |
| | Congo (Both) | North Korea | Republic | St. Lucia | Portugal |
| | Cook Islands | Pakistan | Costa Rica | St. Vincent & The | Singapore |
| | Cote D'Ivoire | Palestinian | Croatia | Grenadines | Spain |
| | Cyprus | Authority | Czech Republic | Swaziland | Sweden |
| | Dominican Rep | [Gaza, West | Djibouti | Taiwan | Switzerland |
| | East Timor | Bank] | Dominica | Thailand | United Kingdom |
| | Ecuador | Panama | El Salvador | Togo | |
| | Egypt | Papua-New Guinea | Estonia | Tonga | |
| | Equatorial Guinea | Paraguay | Fiji | Trinidad and Tobago | |
| | Eritrea | Philippines | Ghana | Tunisia | |
| | Ethiopia | Poland | Gibraltar | Turkey | |
| | Gabon | Romania | Grenada | Turks and Caicos | |
| | Gambia | Russia | Hungary | United Arab Emirates | |
| | Georgia | Rwanda | India | Uruguay | |
| | Guatemala | Sao Tome & | Isle of Man | Vatican City | |
| | Guinea | Principe | Israel | Vanuatu | |
| | Guinea-Bissau | Saudi Arabia | Jordan | | |
| | Guyana | Serbia | Kuwait | | |
| | Haiti | Seychelles | | | |
| | Honduras | Sierra Leone | | | |
| | Indonesia | Solomon Islands | | | |
| | Iraq | Somalia | | | |
| | Jamaica | Sri Lanka | | | |
| | Kazakhstan | Suriname | | | |
| | Kenya | Syria | | | |
| | Kiribati | Tajikistan | | | |
| | Kyrgyzstan | Tanzania | | | |
| | Laos | Turkmenistan | | | |
| | Latvia | Tuvalu | | | |
| | Lebanon | Uganda | | | |
| | Lesotho | Ukraine | | | |
| | Liberia | Uzbekistan | | | |
| | Libya | Venezuela | | | |
| | Liechtenstein | Vietnam | | | |
| | Lithuania | Western Sahara | | | |
| | | Yemen | | | |
| | | Yugoslavia FR | | | |
| | | Zambia | | | |
| | | Zimbabwe | | | |

THSH_PJ 0000872

# FUTURES ACCOUNT ADDENDUM FOR NEW ACCOUNTS

Type of Account
☐ Individual                ☐ Partnership              ☐ Omnibus Account
☐ Joint                     ☐ Trust                    ☐ Commodity Pool
☐ Corporation               ☐ Foreign Account          ☐ Other (Specify) _____

| TRADING EXPERIENCE | NONE | 1 YEAR | 2 YEAR | OVER 3 YEARS |
|---|---|---|---|---|
| Commodities | | | | |
| Options | | | | |
| Stocks/Bonds | | | | |
| Other | | | | |

Estimated Liquid Assets: _____

Security or Commodity Accounts with Other Firms:  (List Firms):

Other Security or Commodity Accounts at Bear Stearns :

Does this account control the trading in any other account?          ☐ Yes  ☐ No
Does any other person(s) control the trading of this account?        ☐ Yes  ☐ No
Does any other person have a financial interest in this account?     ☐ Yes  ☐ No
Does any other person guarantee this account?                        ☐ Yes  ☐ No
If yes, specify:

Name: _____    Address: _____

Information regarding the commission status must be fully completed:

Commission Rates     _____        ☐ Inclusive   ☐ +Fees
                     _____

Indicate how commissions will be charged:   Futures  ☐ Round Turn  ☐ Half Turn
                                            Options  ☐ Round Turn  ☐ Half Turn
Indicate if account is to be converted to US$:   ☐ Yes  ☐ No

**Foreign Commodity Exchanges:**  Indicate the foreign commodity exchanges account will be trading and the native currency rates to be charged:

Exchange: _____
Rate: _____

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____    Date: _____

Signature of Registered Representative:    _____    Date: _____

Signature of Branch Mgr/Compliance Officer:    _____    Date: _____

New Acct Indiv (version 6/26/06)                                                    Page 6 of 6

THSH_PJ 0000873

DOCUMENT DEPARTMENT USE ONLY–DO NOT WRITE IN THIS AREA     DOC CODE     015     080     181

**BEAR STEARNS**

**BEAR, STEARNS SECURITIES CORP.**
**INDIVIDUAL RETIREMENT ACCOUNT**
**APPLICATION**

DATE _____

ACCOUNT NUMBER _____

**1. (PLEASE PRINT)**

MICHAEL G, TANNENBAUM APP    Redacted Redacted ,1402

Redacted        e of Birth        Social Security No.

Redacted

Redacted        **State**        Zip Code

Name of Working Spouse (if IRA for Nonworking Spouse)

**2.**

| (A) INITIAL CONTRIBUTION: | (B) CHECK ONE: | (C) CHECK IF APPLICABLE: |
|---|---|---|
| (year)   $ (amount) -OR- | ☒ Rollover  ☐ Transfer (If a Transfer, also complete a Bear Stearns Transfer Form, which may be obtained from your Account Executive or advisor.)  -OR- | ☐ SEP/IRA |

**3. DESIGNATION OF BENEFICIARY:** If I die before my entire interest in the IRA has been distributed under Article IV of the Individual Retirement Account Custodial Agreement, it is my intention that the balance of the account shall be distributed to:

☒ **PRIMARY BENEFICIARY**

SANDRA L TANNENBAUM WIFE    Redacted    8945    100 %

Name    Relationship    Social Security No.    Percentage

Redacted    Redacted

Redacted

**4.** ☐ **ADDITIONAL BENEFICIARY** OR ☒ **CONTINGENT BENEFICIARY:** (CHECK ONE ONLY)

ANDREW TANNENBAUM    SON    50 %

Name    Relationship    Social Security No.    Percentage

Mailing Address    Date of Birth

City    State    Zip Code

**5.** ☐ **ADDITIONAL BENEFICIARY** OR ☒ **CONTINGENT BENEFICIARY:** (CHECK ONE ONLY)    Redacted 9197  50 %

DANA TANNENBAUM    DAUGHTER

Name    Relationship    Social Security No.    Percentage

Redacted    Redacted

Mailing Address ,    Date of Birth

Redacted

I may change or revoke this designation without notice to any beneficiary by completing a new form. Any such change or revocation shall be effective on the date Bear Stearns receives such notice. I understand that if no beneficiary designation is in effect at the time of my death, or if the designated beneficiary dies before my death, or if Bear Stearns is unable to readily locate the designated beneficiary, the balance of my account will be paid to my spouse if surviving, or if none, to my children in equal shares per stirpes, or if none, to my estate.

**6.** ☐ **DATE OF CHANGE OF BENEFICIARY DESIGNATION:** _____ / _____ / _____
Month    Day    Year

**7. UNINVESTED CASH:** I authorize and direct Bear Stearns to automatically invest daily in the money market fund I select any uninvested cash held in the account. Further, I understand that if I do not select a money market fund, my account will not earn interest on any uninvested cash.

**8. ANNUAL MAINTENANCE FEE PER ACCOUNT:** $35. Termination fee per account: $50. (For additional information on Custodial Fees, please refer to Article VIII, item 1 of the Custodial Agreement.) Fees are not prorated.

**9.** I HAVE RECEIVED AND READ THE IRA BOOKLET, INCLUDING THE IRA CUSTODIAL AGREEMENT AND IRA DISCLOSURE STATEMENT. I HEREBY APPOINT BEAR, STEARNS SECURITIES CORP. AS CUSTODIAN OF MY IRA IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE BEAR STEARNS IRA CUSTODIAL AGREEMENT (IRS FORM 5305–A (REV. MARCH 2002), AS MODIFIED BY BEAR STEARNS WITH RESPECT TO ARTICLE VIII THEREOF). THE TERMS OF THE AGREEMENT AS SO MODIFIED ARE INCORPORATED HEREIN BY REFERENCE AND EXPRESSLY MADE A PART OF THIS IRA APPLICATION. I UNDERSTAND THAT BEAR STEARNS HAS NO DISCRETIONARY INVESTMENT RESPONSIBILITY WITH RESPECT TO THE ASSETS HELD IN MY IRA AND THAT BEAR STEARNS WILL INVEST AND REINVEST THE ASSETS IN THE IRA ONLY ON MY DIRECTION.

I UNDERSTAND THAT THE ADOPTION OF THE IRA HAS SIGNIFICANT FEDERAL, STATE AND LOCAL TAX CONSEQUENCES AND I HAVE BEEN ADVISED BY BEAR STEARNS TO CONSULT MY ATTORNEY OR OTHER TAX ADVISOR.

I FURTHER ACKNOWLEDGE THAT ARTICLE VIII (Miscellaneous Section, item 5, Page 28) OF THE IRA CUSTODIAL AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

**DEPOSITOR:**

9-10-06
Date

Signature

MICHAEL G. TANNENBAUM
Print Name

**FIRM COPY**

THSH_PJ 0000874

FACE COPY - DO NOT WRITE ON THIS SIDE

# Customer Agreement

**BEAR STEARNS**

The Bear Stearns Companies Inc.
383 Madison Avenue
New York, New York 10179
(212) 272-2000

**THIS DOCUMENT IS A BINDING CONTRACT AND CONTAINS OBLIGATIONS THAT CAN BE ENFORCED AGAINST YOU.**

**PLEASE READ CAREFULLY, SIGN AND RETURN.**

This agreement ("Agreement") sets forth the terms and conditions on which subsidiaries of The Bear Stearns Companies Inc. will open and maintain account(s) in your name and otherwise transact business with you. Your signature confirms that you agree to and are bound by the provisions of this Agreement.

**1. PARTIES.** The parties to this Agreement are you and all present and future subsidiaries of The Bear Stearns Companies Inc. (each subsidiary is referred to as a "Bear Stearns entity" and all the Bear Stearns entities are referred to collectively, as "Bear Stearns").

**2. APPLICABLE LAWS, RULES AND REGULATIONS.**
(a) All transactions shall be subject to the applicable laws, rules and regulations ("Applicable Laws") of all federal, state and self-regulatory authorities including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed.
(b) Bear Stearns is committed to complying with U.S. statutory and regulatory requirements designed to combat money laundering and terrorist financing. The USA PATRIOT Act requires that all financial institutions obtain certain identification documents or other information in order to comply with their customer identification procedures. Until you provide the required information or documents, Bear Stearns may not be able to open or maintain account(s) or effect any transactions for you.

**3. SATISFACTION OF YOUR LIABILITIES; SECURITY INTEREST AND LIEN.**
(a) You agree to satisfy, upon demand, any indebtedness to a Bear Stearns entity. To pay any debit balance in any of your accounts and, in the event of a sell order by you, to deliver the applicable security in good deliverable form no later than the deadline set by Bear Stearns.
(b) All of your property held by or under the control of a Bear Stearns entity is subject to a lien to secure the payment and performance of your liabilities and obligations to each Bear Stearns entity and you hereby grant each Bear Stearns entity a lien on and a valid and first priority, perfected, continuing security interest in the following: (i) all property, including all investment property, held, carried or controlled by or through any Bear Stearns entity in which you presently have or in which you acquire an interest in the future, including all property in each account in your name, (ii) any and all rights, claims or causes of action you may now or hereafter have against any Bear Stearns entity and (iii) all proceeds of or distributions on the foregoing (collectively (i) through (iii) are referred to in this Agreement as "Collateral").
(c) Any Collateral held by a Bear Stearns entity is held by such Bear Stearns entity as agent and bailee for itself and all other Bear Stearns entities. Each Bear Stearns entity holding Collateral shall, without your further consent, comply with (i) entitlement orders or instructions for a Bear Stearns entity with respect to the Collateral and (ii) if such Bear Stearns entity holding Collateral is a commodity intermediary, any instructions to such Bear Stearns entity from another Bear Stearns entity to apply any value distributed on account of a commodity contract. Additionally, each Bear Stearns entity holding Collateral has the right, in its sole discretion, to not comply with (i) any entitlement order or instruction from you or a third party with respect to the Collateral and (ii) any instruction from you to apply any value on account of any commodity contract, if a Bear Stearns entity requests that such order or instruction not be complied with in order to maintain security for the payment and performance of your obligations and liabilities to it. You agree that the actions of a Bear Stearns entity in not complying with orders or instructions as allowed in the preceding sentence satisfy any duties Bear Stearns may have under the New York Uniform Commercial Code ("NYUCC").
(d) You agree that your execution of this Agreement shall constitute notice to each Bear Stearns entity of the security interest you have granted to each other Bear Stearns entity herein, and each Bear Stearns entity holding Collateral is on notice of the security interest granted to each other Bear Stearns entity.
(e) The reasonable costs and expenses of collection of any such indebtedness or debit balance, including but not limited to attorneys' fees and expenses, shall be payable by you to Bear Stearns.
(f) In order to secure the payment and performance of any of your outstanding liabilities and obligations to any Bear Stearns entity, Bear Stearns may, to the fullest extent permitted by law, without prior notice to you, use, apply or transfer Collateral as it determines. Unless otherwise agreed in writing, Bear Stearns may register and hold Collateral in its name or the name of its designee.
(g) You appoint Bear Stearns with full power as your true and lawful attorney-in-fact, to the fullest extent permitted by law, for the purpose of perfecting the security interest granted in this Agreement and taking any action and executing any instrument that Bear Stearns deems necessary or advisable to accomplish the purposes of this Agreement.

**4. REPRESENTATIONS BY YOU.** To induce Bear Stearns to transact business with you, you represent and covenant that (a) you have the right to pledge and assign Collateral to Bear Stearns; and (b) Collateral is and shall at all times be free and clear of any liens, claims or encumbrances, except in favor of a Bear Stearns entity.

**5. DEPOSITS ON TRANSACTIONS.** Bear Stearns may require you to deposit cash or other property, acceptable to Bear Stearns, as Collateral, in your account(s) in such amounts as Bear Stearns determines in its sole discretion and you agree to comply with any such request by no later than the deadline set by Bear Stearns.

**6. BREACH, BANKRUPTCY OR DEFAULT.**
(a) Each Bear Stearns entity may elect to consider you in default of any or all agreements you may then have with it if (i) you do not pay any liability or perform any obligation to any Bear Stearns entity by the time you are obligated to do so; (ii) you otherwise breach, repudiate or default under this Agreement or any other agreement you may have with any Bear Stearns entity, (iii) without notice to you, among other things, (i) foreclose, collect, sell or otherwise liquidate any Collateral a Bear Stearns entity or insolvency or one is commenced against you; (iv) any guarantor, co-signer or other party (a "Responsible Party") liable on or providing security for your obligations to any Bear Stearns entity defaults in an obligation to Bear Stearns or commences a proceeding in bankruptcy or insolvency or one is commenced against it; (v) an attachment is made against your or a Responsible Party's account(s) with any Bear Stearns entity, (vi) a receiver is appointed with respect to you, any of your assets or the assets of a Responsible Party; (vii) if you are a natural person, you die or become incompetent, and if you are an entity, your merge, liquidate or dissolve; or (viii) an event, circumstance or condition occurs that, in Bear Stearns' judgment, materially impairs your creditworthiness, your ability to timely perform your obligations to Bear Stearns or otherwise causes us to view ourselves as insecure. The occurrence of any of the foregoing is referred to as an "Event of Default".
(b) Upon the election by Bear Stearns to consider you in default, each Bear Stearns entity shall have all of the rights and remedies of a secured party upon default under the NYUCC and other Applicable Laws and may, without notice to you, among other things, (i) foreclose, collect, sell or otherwise liquidate any Collateral a Bear Stearns entity selects in its sole discretion, in any order and at any time, and apply, in a manner determined by Bear Stearns in its sole discretion, the proceeds to satisfy any of your obligations or liabilities to any Bear Stearns entity and (ii) buy any property that you have been sold short. At any sale of Collateral or other sale or purchase permitted hereunder or otherwise, Bear Stearns may sell or purchase to or from itself or third parties, and you hereby acknowledge and agree that the securities subject to such sale or purchase are instruments traded in a recognized market. We will pay each Bear Stearns entity for any losses and costs incurred by Bear Stearns as a result of any default by you. You waive marshalling of assets and any similar doctrine dealing with the application of collateral.

**7. EXECUTION FEES AND SERVICE CHARGES.** Your account(s) will be charged brokerage commissions and/or other fees in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for other services

furnished to you ("Service Fees"). All such fees shall be determined by Bear Stearns. Execution Fees may be changed from time to time without prior notice to you and Service Fees may be changed from time to time upon thirty (30) days' prior written notice to you and, in each case, you agree to be bound thereby.

**8. CONFIRMATION REPORTS AND ACCOUNT STATEMENTS.** Confirmation reports of the execution of orders shall be conclusive if not objected to in writing by you within the shorter of (i) the applicable settlement cycle of the subject transactions or (ii) three (3) business days after such documents have been transmitted to you by mail or otherwise. Statements of account(s) shall be conclusive if not objected to in writing by you within ten (10) days after transmission. In all cases, Bear Stearns reserves the right to challenge your objections.

**9. TRUTH-IN-LENDING; DEBIT BALANCES.** You hereby acknowledge receipt of Bear Stearns' Truth-in-Lending disclosure statement. Interest will be charged on any debit balances in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any debit balance, which is not paid at the close of an interest period, will be added to the opening balance for the next interest period.

**10. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, fees, expenses, liabilities and damages incurred by Bear Stearns ("Costs") in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account(s) or any property therein, (iii) your or any other person authorized to act on your behalf's (A) use of or access to Electronic Service (as defined in paragraph 20 below) or (B) failure to comply with any terms, conditions or limitations applicable to such Electronic Service, (iv) any breach or failure by you to perform any term or provision of this Agreement, any other agreement between you and any Bear Stearns entity or any agreement governing your use of or access to any Electronic Service, or (v) Bear Stearns acting in reliance upon your instructions or any other person authorized to act on your behalf, if any. In each case and whether or not demand has been made therefor, you hereby authorize Bear Stearns to charge your account(s) for any and all such Costs.

**11. NATURE OF SERVICES.** Bear Stearns will not provide you with any legal, tax or accounting advice. Bear Stearns' employees are not authorized to give you any such advice and you will not solicit or rely upon any such advice from them or from Bear Stearns whether in connection with transactions in or for any of your accounts or otherwise.

**12. CONTROL OR RESTRICTED SECURITIES.** Prior to placing an order in connection with any securities subject to Rule 144 or 145(d) of the Securities Act of 1933, as amended, you shall advise Bear Stearns of the status of the securities and furnish us with the necessary documents to clear legal transfer. You acknowledge that there may be delays involved with the processing of control or restricted securities and that Bear Stearns will not be liable for any losses caused directly or indirectly by such delays. Bear Stearns may, in its sole discretion, require that control or restricted securities not be sold or transferred until such securities clear legal transfer.

**13. IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Bear Stearns holds on your behalf bonds or preferred stock in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of the New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account with respect to which Bear Stearns has actual knowledge that any officer, director or employee of Bear Stearns has any financial interest until all other customers have been satisfied on an impartial lottery basis.

**14. WAIVER, ASSIGNMENT, NOTICES AND LIMITATION OF LIABILITY.**
(a) Neither Bear Stearns' failure to insist at any time upon strict compliance with the terms of this Agreement nor any continued course of such conduct on its part shall constitute or be considered a waiver by Bear Stearns of any of its rights or privileges hereunder. Any assignment of your rights and obligations hereunder or your interest in any property held by or through Bear Stearns without obtaining the prior written consent of an authorized representative of Bear Stearns shall be null and void. Each Bear Stearns entity reserves the right to assign any of its rights or obligations hereunder to any other Bear Stearns entity without prior notice to you. Notices and other communications (including, without limitation, margin calls) delivered, faxed, sent by express delivery service or mailed to the address provided by you shall, until Bear Stearns has received notice in writing of a different address, be deemed to have been personally delivered to you whether actually received or not. Notices and other communications may also be provided to you verbally. Such notices and other communications left for you on your answering machine, or otherwise, shall be deemed to have been delivered to you whether actually received or not. Notices and other communications from you to Bear Stearns shall be in writing. You hereby authorize Bear Stearns to accept facsimile copies of this or any other document or instruction as if it were the original and to accept signatures on facsimiles as if they were originals.
(b) You agree that, no Bear Stearns entity shall have any liability for any consequential, incidental or any similar damages and you hereby irrevocably and unconditionally waive any right you may have to claim or recover any such damages (even if you have informed Bear Stearns of the possibility or likelihood of such damages).

**15. FREE CREDIT BALANCES.** You hereby authorize Bear Stearns to use any free credit balance in any of your accounts in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Bear Stearns for such account(s) and for the amounts of cash so used. In accordance with applicable regulations, free credit balances are carried in customers' accounts pending, and with a view towards, reinvestment. Bear Stearns may determine not to pay interest on free credit balances representing prior to uncollected funds or (ii) funds that are deposited and subsequently withdrawn prior to the expiration of the minimum time period required by Bear Stearns.

**16. RESTRICTIONS ON ACCOUNTS.** Bear Stearns, in its sole discretion, may restrict or prohibit trading of securities or other property in any of your accounts and you shall nevertheless remain liable for all of your obligations and liabilities to Bear Stearns under this Agreement or otherwise.

**17. CREDIT REPORTS AND OTHER INFORMATION.** You authorize Bear Stearns, in its sole discretion, to make or obtain reports concerning your credit standing and business conduct. You may make a written request for a description of the nature and scope of the reports made or obtained by Bear Stearns and the same will be provided to you within a reasonable period of time. You further agree to provide Bear Stearns, on request, with such additional information or certification as may be required by Bear Stearns or Applicable Laws.

**18. SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "short". In placing any sell order for a long account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "long". The designation by you of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the sell order has been placed, that such security may be sold without restriction in the open market and that, if Bear Stearns does not have the security in its possession at the time you place the sell order, you shall deliver the security by settlement date in good deliverable form or pay to Bear Stearns any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

BRANCH/CORRESPONDENT

THSH_PJ 0000875

**Customer Agreement**                                   DOC CODE ☐ 003

**19. MARGIN AND OTHER COLLATERAL REQUIREMENTS.** *[Applicable only to margin account(s)]* You hereby agree to deposit and maintain such margin in your margin account(s), if any, as Bear Stearns may in its sole discretion require, and you agree to pay on demand any debit balance owing with respect to any of your margin accounts. In addition, you further agree to deposit promptly and maintain such other collateral with Bear Stearns as is required by Applicable Laws or any other agreement or open transaction you may have with any Bear Stearns entity. No demands, calls, tenders or notices that Bear Stearns may have made or given in the past shall obligate Bear Stearns to make or give the same in the future. Unless you advise Bear Stearns in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under The Securities Act of 1933) of the issuer of any security held in any of your accounts. Margin calls may also be communicated orally, without subsequent written confirmation.

**20. ON-LINE AND ELECTRONIC SYSTEMS.** If you or any other person authorized to act on your behalf accesses or uses any Internet site or on-line or other electronic system operated for or by Bear Stearns or any account issues, trading, order entry or other services, systems, capabilities or content available through any of the foregoing (each, an "Electronic Service"), you acknowledge and agree that such Electronic Service is being made available to you or such other person without any warranty whatsoever, either express or implied, and you agree that any such access or use will be solely at your own risk, and Bear Stearns will not have any liability whatsoever relating to or arising out of any such access, use, or any problems with or failures of any Electronic Service. Moreover, you agree that if you or any person authorized to act on your behalf are given any digital certificate(s), user name(s) and/or password(s) which may be required to access or use any Electronic Services (collectively, "User Code(s)"), (a) you shall preserve the confidentiality of such User Codes; (b) you shall restrict access to the User Codes to those persons who are duly authorized to act on your behalf; (c) you shall notify Bear Stearns immediately in the event any such User Code is lost, stolen or the confidentiality of any such User Code has been compromised in any way or the authority of any person to act on your behalf has been revoked or limited; and (d) you are responsible for and will be bound by all statements made, orders entered, and instructions, trades, agreements, assents and consents communicated under any such User Code, to the same extent that the same was under your duly signed writing.

**21. CONSENT TO LOAN, PLEDGE OR USE OF SECURITIES IN MARGIN ACCOUNTS.** *[Applicable only to margin account(s)]* To the greatest extent permitted under Applicable Laws, you hereby authorize Bear Stearns to lend either to itself or to others and to otherwise use, sell or pledge any securities held by Bear Stearns in any of your margin account(s), to convey therewith all attendant rights of ownership (including voting rights) and to use all such property as collateral for Bear Stearns' general loans or other obligations or with respect to repurchase transactions. Any such property, together with all attendant rights of ownership, may be pledged, repledged, sold, hypothecated or rehypothecated or become subject to repurchase transactions either separately or in common with other property for any amounts due to Bear Stearns thereon and Bear Stearns shall have no obligations to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, (i) Bear Stearns may receive and retain certain benefits to which you will not be entitled and (ii) the securities in your margin account(s) may be used as collateral by Bear Stearns for loans made to it in excess of your indebtedness to Bear Stearns. In certain circumstances, such loans or other use may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities.

**22. LEGALLY BINDING.** You hereby agree that the terms of this Agreement shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any instruction with respect to any of your accounts was not in writing as may be required by the Statute of Frauds or any similar Applicable Laws.

**23. AMENDMENT; TERMINATION.**
(a)    You agree that Bear Stearns may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from Bear Stearns thereafter, you will have indicated your acceptance of any such modification. If you do not accept such modification, you must notify Bear Stearns in writing, your account(s) may then be terminated by Bear Stearns, after which you will remain liable to Bear Stearns for all outstanding liabilities and obligations. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Bear Stearns.
(b)    You may close any of your accounts at any time by giving Bear Stearns written notice, provided that Bear Stearns receives all securities and/or other property for which your account(s) are short and you have satisfied all of your outstanding liabilities and obligations which you owe to any Bear Stearns entity for any reason whatsoever.
(c)    Bear Stearns reserves the right to terminate this Agreement or your account(s) at any time for any reason. The provisions of this Agreement shall survive termination of this Agreement and/or closure of your account(s) insofar as they relate to obligations, liabilities, actions or failures to take action relating to, arising in or with respect to the period prior to termination of this Agreement or closure of your account(s).
(d)    On termination of this Agreement or closure of your account(s), it will be your responsibility to issue instructions in writing with regard to the assets held in your account(s). Unless and until Bear Stearns receives such instructions, it will be under no obligation to take any action with regard to your assets. You agree that you will be responsible for any transaction costs associated with your instructions, including commissions and related costs.

**24.    GOVERNING LAW.** THIS AGREEMENT SHALL BE GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25.    ARBITRATION; CONSENT TO JURISDICTION; SERVICE OF PROCESS.**
(a)    THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE. BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:
- ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.
- ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.
- THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS.
- THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.
- THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
- THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.
- THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.
- NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL:
    (i)    THE CLASS CERTIFICATION IS DENIED; OR
    (ii)    THE CLASS IS DECERTIFIED; OR
    (iii)    THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.
    SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.
BY SIGNING THIS AGREEMENT YOU AND BEAR STEARNS AGREE, THAT CONTROVERSIES ARISING UNDER OR RELATING TO THIS AGREEMENT OR ANY ACTIVITY   BETWEEN YOU AND BEAR STEARNS, ITS PREDECESSORS, AND ANY OF THEIR   RESPECTIVE SUCCESSORS, ASSIGNS, AND ANY OF THEIR DIRECTORS, EMPLOYEES AND ANY OTHER CONTROL PERSONS AND ANY OF THEIR AGENTS, WHETHER ARISING PRIOR TO, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS

AGREEMENT SHALL BE HELD ONLY AT THE FACILITIES OF, BEFORE AN ARBITRATION PANEL APPOINTED BY, AND PURSUANT TO THE RULES OF THE NEW YORK STOCK EXCHANGE, INC. OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. YOU MAY ELECT ONE OF THE FOREGOING FORUMS FOR ARBITRATION, BUT IF YOU FAIL TO MAKE SUCH ELECTION BY REGISTERED MAIL OR TELEGRAM ADDRESSED TO BEAR, STEARNS SECURITIES CORP., 383 MADISON AVENUE, NEW YORK, NEW YORK 10179, ATTENTION: CHIEF LEGAL OFFICER (OR ANY OTHER ADDRESS OF WHICH YOU ARE ADVISED IN WRITING), BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM BEAR STEARNS TO MAKE SUCH ELECTION, THEN BEAR STEARNS MAY MAKE SUCH ELECTION. THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT ON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

(b)    Notwithstanding the provisions of subparagraph (a) above, either party may, at any time prior to the initial arbitration hearing pertaining to such dispute or controversy, seek by application to the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York any such temporary or provisional relief or remedy ("provisional remedy") provided for by the laws of the U.S. or the laws of the State of New York as would be available in an action based upon such dispute or controversy in the absence of an agreement to arbitrate. The parties acknowledge and agree that it is their intention to have any such application for a provisional remedy decided by the Court to which it is made and that such application shall not be referred to or settled by arbitration. No such application to either said Court for a provisional remedy, nor any act or conduct by either party in furtherance of or in opposition to such application, shall constitute a relinquishment or waiver of any right to have the underlying dispute or controversy with respect to which such application is made settled by arbitration in accordance with subparagraph (a) above.
(c)    With respect to any application for a provisional remedy and any application for judgment on an arbitration award, each party irrevocably (i) submits to the jurisdiction of the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York, (ii) waives any objection which it may have at this time to the laying of venue of any proceedings brought in any such court, waives any claim that such proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such proceedings, that such court does not have any jurisdiction over such party, and (iii) consents to service of process by certified mail, return receipt requested, to the address provided for herein.
(d)    You hereby agree to receive service of process in connection with any legal matters or actions or proceedings based upon, arising out of or relating in any way to this Agreement by confirmed, return-receipt requested mail and that delivery shall be presumed if such service is mailed to the address maintained by Bear Stearns in its records and the requested receipt is returned.

**26.    SEVERABILITY.** If and to the extent any term or provision herein is or should become invalid or unenforceable, then (i) the remaining terms and provisions hereof shall be unimpaired and remain in full force and effect and (ii) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision.

**27.    EXTRAORDINARY EVENTS.** Bear Stearns shall not be liable for losses caused directly or indirectly by suspension of trading, wars, civil disturbances, terrorism, strikes, natural calamities, labor or material shortages, government restrictions, acts or omissions of exchanges, specialists, markets, clearance organizations or information providers, delays in mails, delays or inaccuracies in the transmission of orders or information, governmental, exchange or self-regulatory organization laws, rules or actions, or any other causes beyond Bear Stearns' control that may or delay the performance of Bear Stearns' obligations.

**28.    HEADINGS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights or obligations provided for hereunder.

**29.    TELEPHONE AND ELECTRONIC COMMUNICATIONS.** You hereby authorize Bear Stearns to monitor and/or record any or all telephone and/or electronic communications between you and Bear Stearns or any of Bear Stearns' employees or agents. You agree that such recordings may be used in connection with a dispute between the parties. You acknowledge that Bear Stearns may determine not to make or keep such recordings and that such determination shall not in any way affect any party's rights.

**30.    CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights of each Bear Stearns entity set forth in this Agreement and in each other agreement you may have with any Bear Stearns entity are cumulative and in addition to any other rights and remedies that any Bear Stearns entity may have and shall supersede any limitation on or any requirement for the exercise of such rights and remedies that is inconsistent with the terms of this or any other such agreement. The provisions of this Agreement shall supersede any inconsistent provisions of any other agreement entered into between you and any Bear Stearns entity, unless such other agreement expressly states that the terms thereof shall supersede this Agreement. You agree that you will take such action as is necessary to cooperate with Bear Stearns with respect to Collateral and delivery and perfection thereof. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Bear Stearns concerning the subject matter hereof.

**31.    CAPACITY TO CONTRACT; AFFILIATIONS.** You represent that you are of legal age to enter into contracts in the state of your domicile and that, unless you have notified Bear Stearns to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc., (iii) an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities options or futures or (iv) an employee of any bank, trust company or insurance company. Persons signing on behalf of others should indicate the titles or capacities in which they are signing. If the undersigned is signing on behalf of others, the undersigned hereby represents that the person(s) or entity(ies) on whose behalf it is signing is/are authorized to enter into this Agreement and that the undersigned is duly authorized to sign this Agreement and make the representations herein in the name and on behalf of such other person(s) or entity(ies). Subject to the preceding sentence, you represent that only the undersigned has any interest in the account(s) established pursuant to this Agreement.

BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:
1.    THE SECURITIES IN YOUR MARGIN ACCOUNT(S) AND ANY SECURITIES FOR WHICH YOU HAVE NOT FULLY PAID, TOGETHER WITH ALL ATTENDANT OWNERSHIP RIGHTS, MAY BE USED BY BEAR STEARNS OR SOLD OR PLEDGED TO BEAR STEARNS OR TO OTHERS; AND
2.    YOU HAVE RECEIVED A COPY OF THIS AGREEMENT.

THIS AGREEMENT IS DATED AS OF _____ , 20 _____.
THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 25, PAGE 2

(Account Number)

MICHAEL GTANNENBAUM

X  _____
(Signature)

(Typed or Printed Name)

X  _____
(Signature)

BRANCH/CORRESPONDENT                                    4767 REV. 4/05

THSH_PJ 0000876

| Form **W-9**<br>(Rev. November 2005)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | Give form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|

**Print or type See Specific Instructions on page 2.**

Name (as shown on your income tax return)
MICHAEL  S. TANNENBAUM

Business name, if different from above

Check appropriate box: ☒ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ ..............  ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)
Redacted

Redacted

Requester's name and address (optional)

List account number(s) here (optional)

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number
Redacted / 1 4 0 2

**or**

Employer identification number

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here** | Signature of U.S. person ▶ *[signature]* | Date ▶ 9 - 10 - 06

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:

● An individual who is a citizen or resident of the United States,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X

Form **W-9** (Rev. 11-2005)

# BEAR STEARNS

**1 MetroTech Center North**
**Brooklyn, N.Y. 11201**

☐ 4K = 401K                       ☐ Broker Change Only
☐ C = Cash/Mgn                    ☐ IR = IRA              ☐ QP = Qual/PS/Pen/Plan
☐ CO = Corporate                  ☐ JT = Joint            ☐ RI = Roth IRA
☐ CU = Custodian (UGMA)           ☐ Non-ACAT             ☐ SN = Single
☐ DR = Direct Roller              ☐ EI = Educational      ☐ TR = Trust

# Account Transfer Form

Use this form to authorize the transfer of assets currently at another firm into your Bear Stearns account. Complete one form for each account you are transferring.

**1. Information About Your Account.** The registration of the account being transferred must match your Bear Stearns account (i.e., IRA to IRA).

| BEAR STEARNS ACCOUNT | | ACCOUNT BEING TRANSFERRED | |
|---|---|---|---|
| | 0352 | | |
| Bear Stearns Account Number (if available) | BSSC Clearing No. | Account Number | Broker Clearing No. |
| Redacted ~~Account Title~~ 1402 | | Title of Account You are Transferring (as shown on your statement) | |
| Primary Social Security or Tax Identification Number | | Name of Firm currently holding your account | |
| Joint Account Owner (if applicable) | Second SS # (if applic.) | Address of Firm | |

**2. Transfer Instructions:** Complete section A or B and, if applicable, section C.   A copy of your most recent statement is required with this form.

**A.** ☐ **Transfer from a Brokerage Firm only**

   ☐ Transfer all assets in kind        ☐ Partial transfer (Complete section C below.)

**B.** ☐ **Transfer from a Bank, Mutual Fund, or Credit Union only**

   ☐ Transfer all assets in kind      ☐ Partial transfer         ☐ Liquidate all assets and transfer as cash
                                          (Complete section C below.)

   ☐ Transfer proceeds from Certificates of Deposit AT MATURITY      ☐ Liquidate Certificates of Deposit IMMEDIATELY. I am aware of
   (Submit no earlier than 30 days prior to maturity.)                  and acknowledge the penalty I will incur from an early withdrawal.

**C.** ☐ **Partial Transfer Instructions: Transfer only a portion of my account, as detailed below (continue on a separate sheet if needed).**

| Quantity | Symbol or CUSIP # | Description of Asset | Cash Balance (Indicate credit or debit) |
|---|---|---|---|
| | | | $ |
| | | | |
| | | | |

**To the Delivering Firm named above:**

If this account is a qualified retirement account, I have amended the applicable plan so that it names as successor custodian the below listed trustee. Unless otherwise indicated in the instructions above, please transfer all assets in my account to Bear, Stearns Securities Corp. I understand that to the extent any assets in my account are not readily transferable with or without penalties, such assets may not be transferred within the timeframes required by NYSE Rule 412 or similar rule of the NASD or other designated examining authority.

Unless otherwise indicated in the instructions below, I authorize you to liquidate any non-transferable proprietary money market fund assets that are part of my account and transfer the resulting credit balance to the successor custodian. I authorize you to deduct any outstanding fees due you from the credit balance in my account. If my account does not contain a credit balance, or if the credit balance in the account is insufficient to satisfy any outstanding fees due to you, I authorize you to liquidate the assets in my account to the extent necessary to satisfy that obligation. If certificates or other instruments in my account are in your physical possession, I instruct you to transfer them in good deliverable form, including affixing any necessary tax waivers, to enable the successor custodian to transfer them in its name for the purpose of sale, when and as directed by me. I understand that upon receiving a copy of this transfer instruction, you will cancel all open orders for my account on your books.

I affirm that I have destroyed or returned to you credit/debit cards and/or unused checks issued to me in connection with my securities account.

I understand that I will be contacted with respect to the disposition of any assets in my securities account that are non-transferable.

**Age 70-1/2 Restrictions – The following restrictions apply to a retirement account transfer.**

If I am over 70-1/2, I attest that none of the amount to be transferred will include the required minimum distribution for the current year pursuant to Section 401(a)(9) of the Internal Revenue Code. If necessary, instruct your present custodian prior to effecting this transfer to either: 1) Pay your required minimum distribution to you now OR 2) Retain that amount there for distribution to you later.

**3. Owner Authorization and Agreement to Terms.** By signing below, I (we) acknowledge reading and agree to the above terms and conditions.

| Owner/Custodian/Trustee Signature | Joint Owner Signature (if any)/Plan Administrator/Trustee | Date (Required) |
|---|---|---|
| X | X | |
| Print Name          Title/Role | Print Name          Title/Role | |

**Letter of Acceptance**

BEAR STEARNS SECURITIES CORP. ("BSSC") will accept the above captioned account as SUCCESSOR CUSTODIAN/TRUSTEE. BSSC does not accept and will not act as Custodian/ Trustee of and for any assets and/or positions which are not actually transferred to BSSC and BSSC specifically does not approve any notation on the books and records of any entity, including but not limited to any mutual fund company, that indicates, implies and/or states that BSSC is the custodian/trustee of any assets held away from BSSC.

| Successor Custodian Signature (BSSC Receiving Custodian Completes) | Date | Contact: **Bear, Stearns Securities Corp. ACAT Dept.** Telephone No. 347-643-2944 |
|---|---|---|
| Name of Registered Representative | Branch | R.R. No. | Telephone No. |

449 (02/06)                                                         Subject to the by-laws and rules of the N.S.C.C.

# BEAR STEARNS

**DOC CODE 301**                    **NEW ACCOUNT FORM INDIVIDUALS**

OFFICE #_____ ACCOUNT # _____ T ____ CK ____ ACCOUNT EXECUTIVE # _____ GROUP # _____

## A. ACCOUNT TYPE

☐ Individual            ☐ Tenants in Common      ☐ IRA            ☐ IRA Education      ☐ Escrow Individual      ☐ Other
☐ JTWROS               ☐ Tenants by Entirety     ☐ IRA ROTH       ☐ IRA Guardian       ☐ UGMA                   Specify:
                        ☐ Transfer on Death       ☐ IRA KEOUGH     ☒ IRA Rollover       ☐ UTMA                   _____
                                                  ☐ SEP IRA

CLASS CODE        SUB CLASS CODE          ACCOUNT TAX ID                    GOVT. ISSUED ID [if no tax ID]]

_____        _____         _____                _____

## B. ACCOUNT NAME/ TITLE (In Full):

MICHAEL G. TANNENBAUM IRA

___ **Redacted** ___

___ **Redacted**

Telephone: **Redacted**

## C. ACCOUNT MAILING ADDRESS

(If this is a P.O. Box, provide physical address in Section D)

MICHAEL TANNENBAUM

**Redacted**

## D. PERMANENT ADDRESS

Same

## E. ACCOUNT INFORMATION

INVESTMENT OBJECTIVE: SPEC GROWTH

**ACCOUNT WILL BE TRADING**
☐ Cash  ☐ Margin  ☐ Short  ☐ Futures (Complete Futures Addendum)     **Redacted**

NET WORTH: _____ ANNUAL INCOME: _____ **Redacted**

INVESTMENT EXPERIENCE: ☐ None ☐ Low ☐ Med ☒ High

INVESTMENT ADVISOR NAME & ADDRESS (If Applicable)

_____

_____

_____

_____

**NAME & BUSINESS ADDRESS OF PERSON WITH TRADING AUTHORITY (If Applicable)**

_____

_____

_____

_____

Title: _____

SELL INSTRUCTIONS: ☐ 07 Hold Proceeds ☐ 08 Send to Customer

DIVIDENDS: ☐ Send Check ☐ Hold ☐ Income Acct. ☐ Direct Dep.

NAME OF AE: _____ Phone: _____

AE Trading Authority?: ☐ Yes ☐ No

AE Registered in Customer's State of Residence? ☐ Yes ☐ No

Is AE Related? ☐ Yes ☐ No  State Relationship: _____

Account Introduced to AE by: _____

AE Known How Long?: _____

Trading Authorization will be: ☐ Limited ☐ Gen. Pwr. of Atty.

Initial Transaction: ☐ Shares ☐ Deposit  AMOUNT: _____

Reason for Waive of Deposit: _____

Bank and other References: _____

Have you sent forms to Customer?: ☐ Yes ☐ No

Does Customer have another account with us?: ☐ Yes ☐ No

Account Numbers: _____

New Acct Indiv (version 6/26/06)                                        Page 1 of 6


**BEAR STEARNS**

**DOC CODE 301**

**NEW ACCOUNT FORM INDIVIDUALS**

**ACCOUNT #** _____

**F. CLIENT / BENEFICIAL OWNER**

**This information must be filled out for EACH Individual. Please use a separate page for each Individual.**

For **US Individual**: No documentation required at account opening. A copy of a driver's license or other valid, government-issued picture ID may be requested for verification purposes upon review of the account.

For **Non-US Individuals**: Please attach to this form a copy of a valid, government-issued picture ID evidencing nationality for each Individual. The documentation must be presented <u>prior</u> to account opening.

For **Trading Authority / Power of Attorney** complete Questions 1-6.

| 1. Name [First, Middle, Last Name]: | 2. Relation to Account [see definitions page 4]: |
|---|---|
| MICHAEL C. TANNENBAUM | BENEFICIARY OF IRA |

| 3. Principal Business Address: | 4. Business Mailing Address [if different from Principal Business |
|---|---|
| C/O TANNENBAUM HELPERN Redacted | Redacted |

5. Is this Individual a current or former Foreign Political Figure, an Immediate Family Member of Known Close Associate? [See definition on Page 4]
☒ No.
☐ Yes. Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity.

6. Is any Citizenship or Address associated with this Individual located in a High Risk Jurisdiction? [See list on page 5]
☒ No.
☐ Yes. Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity.

| 7. Has an Account for this Individual been established since 10/01/03? | 8. SSN or other Valid Gov't Issued ID No: |
|---|---|
| ☐ Yes ☒ No | Redacted 1402 USA |
| If Yes, list Account Numbers: | Type of ID: |
| | Country of Issuance: |

| 9. Estimated Net Worth (US$):  Redacted | 10. Annual Income (US$):  Redacted |
|---|---|

| 11. Sources of Wealth: | 12. Sources of Assets on Deposit: |
|---|---|
| ☒ Employment ☐ Inheritance ☐ Investment ☐ Other (explain) | ☒ Employment ☐ Inheritance ☐ Investment ☐ Other (explain) |

| 13. Country of Citizenship: USA | 14. Date of Birth:  Redacted |
|---|---|

| 15. Home Address: | 16. Mailing Address: [if different from Home Address] |
|---|---|
| Redacted | Same |

| 17. Occupation: Attorney at Law | 18. Marital Status: ☐ Single ☒ Married |
|---|---|
| Employment Status: ☐ Employed ☐ Self-Employed ☐ Unemployed | If married, Spouse's Occupation: |
| If employed, Employer's Name: Tannenbaum Helpern et al | none |
| Member Firm? ☒ Yes ☐ No | |

THSH_PJ 0000880

# BEAR STEARNS

**DOC CODE 301**                      **NEW ACCOUNT FORM INDIVIDUALS**

## G. INTERESTED PARTIES

I/P # 1     # CONFIRMS _____   #STATEMENTS _____          I/P # 2     # CONFIRMS _____   #STATEMENTS _____

_____               _____
_____               _____
_____               _____
_____               _____

I/P # 3     # CONFIRMS _____   #STATEMENTS _____          I/P # 4     # CONFIRMS _____   #STATEMENTS _____

_____               _____
_____               _____
_____               _____
_____               _____

---

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____     Date: _____

---

Account Opened by: _____     Telephone Number: _____

Signature of Registered Representative: _____     Date: _____

Signature of Branch Mgr/Compliance Officer: _____     Date: _____

---

**For AML DUE DILIGENCE GROUP USE ONLY**

Date Received: _____           Commercial Vendor ID Verification: ☐Positive ☐Negative ☐Inconclusive

Name of Reviewer: _____        If Negative or Inconclusive:
                                               Valid Gov't Issued Picture ID Requested on Date: _____
Risk Level: _____

Approved by: _____

Date: _____                    Final ID Approval: ☐Yes ☐No

---

New Acct Indiv (version 6/26/06)                                              Page 3 of 6

**BEAR STEARNS**          **DOC CODE 301**                    **NEW ACCOUNT FORM INDIVIDUALS**

## CLIENT / BENEFICIAL OWNER / AUTHORIZED PARTIES

**Customer:** The nominal owner of an account.

**Custodian:** Under the Uniform Transfer (or Gift) to Minors Act, the person appointed to manage and dispense funds for a child.

**Guardian:** A person or entity named in a will, guardianship, or court order who is responsible for the care of minor children or incompetent adults.

**Conservator:** A person or entity appointed by a court to manage the property and financial affairs of another (usually incompetent) person.

**Investment Advisor:** A person who manages assets, making portfolio composition and individual security selection decisions.

**Power of Attorney:** An instrument by which one person authorizes another to act for him in a manner which is as legally binding upon the person giving such authority as if he personally were to do the acts.

**Principal:** A person who designates another to act as his/her attorney in fact or agent.

**Trading Authority:** A person who is authorized to conduct trades and provide instructions for a customer's account.

**Foreign Political Figure:** A "Foreign Political Figure" is an official of a foreign government, an official of a major foreign political party or an executive of a foreign government-owned corporation. In addition, a Foreign Political Figure includes any corporation or other business formed by, or for the benefit of, a Foreign Political Figure. An "Immediate Family Member" of a Foreign Political Figure includes the person's parents, siblings, spouse, children and in-laws. A "Known Close Associate" of a Foreign Political Figure is a person who is widely and publicly known (or who is actually known by Bear Stearns or the introducing broker-dealer) to maintain a close personal or professional relationship with a Foreign Political Figure.

THSH_PJ 0000882



DOC CODE 301                    NEW ACCOUNT FORM INDIVIDUALS

## Country & Jurisdiction Tables

| PROHIBITED | HIGH RISK | | MEDIUM RISK | | AML EQUIVALENT |
|---|---|---|---|---|---|
| Burma (Myanmar) | Afghanistan | Macau | Albania | Macedonia (FYROM) | Australia |
| | Algeria | Madagascar | Anguilla | Maldives | Austria |
| | Andorra | Malawi | Antarctica | Malaysia | Belgium |
| Cuba | Angola | Malta | Antigua and | Mali | Bermuda |
| | Armenia | Marshall Islands | Barbuda | Mauritius | Canada |
| | Azerbaijan | [Majuro] | Argentina | Mexico | Denmark |
| Iran | Bangladesh | Mauritania | Aruba | Micronesia | Finland |
| | Belarus | Moldova | Bahamas | Monaco | France |
| Sudan | Belize | Mongolia | Bahrain | Nauru | Germany |
| | Benin | Montenegro | Barbados | Oman | Greece |
| | Bolivia | Montserrat | Bhutan | Palau | Guernsey |
| | Bosnia & Herzegovina | Morocco | Botswana | Peru | Hong Kong, [China] |
| | Burkina Faso | Mozambique | Brazil | Qatar | Iceland |
| | Burundi | Namibia | British Virgin | Samoa (Western) | Ireland |
| | Cambodia | Nepal | Islands | San Marino | Italy |
| | Cameroon | Netherlands | Brunei | Senegal | Japan |
| | Central African | Antilles | Bulgaria | Slovakia | Jersey |
| | Republic | Nicaragua | Cape Verde | Slovenia | Luxembourg |
| | Chad | Niger | Cayman Islands | South Africa | Netherlands |
| | Colombia | Nigeria | Chile | South Korea | New Zealand |
| | Comoros | Niue | China, People's | St. Kitts & Nevis | Norway |
| | Congo (Both) | North Korea | Republic | St. Lucia | Portugal |
| | Cook Islands | Pakistan | Costa Rica | St. Vincent & The | Singapore |
| | Cote D'Ivoire | Palestinian | Croatia | Grenadines | Spain |
| | Cyprus | Authority | Czech Republic | Swaziland | Sweden |
| | Dominican Rep | [Gaza, West | Djibouti | Taiwan | Switzerland |
| | East Timor | Bank] | Dominica | Thailand | United Kingdom |
| | Ecuador | Panama | El Salvador | Togo | |
| | Egypt | Papua-New Guinea | Estonia | Tonga | |
| | Equatorial Guinea | Paraguay | Fiji | Trinidad and Tobago | |
| | Eritrea | Philippines | Ghana | Tunisia | |
| | Ethiopia | Poland | Gibraltar | Turkey | |
| | Gabon | Romania | Grenada | Turks and Caicos | |
| | Gambia | Russia | Hungary | United Arab Emirates | |
| | Georgia | Rwanda | India | Uruguay | |
| | Guatemala | Sao Tome & | Isle of Man | Vatican City | |
| | Guinea | Principe | Israel | Vanuatu | |
| | Guinea-Bissau | Saudi Arabia | Jordan | | |
| | Guyana | Serbia | Kuwait | | |
| | Haiti | Seychelles | | | |
| | Honduras | Sierra Leone | | | |
| | Indonesia | Solomon Islands | | | |
| | Iraq | Somalia | | | |
| | Jamaica | Sri Lanka | | | |
| | Kazakhstan | Suriname | | | |
| | Kenya | Syria | | | |
| | Kiribati | Tajikistan | | | |
| | Kyrgyzstan | Tanzania | | | |
| | Laos | Turkmenistan | | | |
| | Latvia | Tuvalu | | | |
| | Lebanon | Uganda | | | |
| | Lesotho | Ukraine | | | |
| | Liberia | Uzbekistan | | | |
| | Libya | Venezuela | | | |
| | Liechtenstein | Vietnam | | | |
| | Lithuania | Western Sahara | | | |
| | | Yemen | | | |
| | | Yugoslavia FR | | | |
| | | Zambia | | | |
| | | Zimbabwe | | | |

THSH_PJ 0000883

# FUTURES ACCOUNT ADDENDUM FOR NEW ACCOUNTS

**Type of Account**

☐ Individual        ☐ Partnership        ☐ Omnibus Account
☐ Joint            ☐ Trust              ☐ Commodity Pool
☐ Corporation      ☐ Foreign Account    ☐ Other (Specify) _____

| TRADING EXPERIENCE | NONE | 1 YEAR | 2 YEAR | OVER 3 YEARS |
|---|---|---|---|---|
| Commodities | | | | |
| Options | | | | |
| Stocks/Bonds | | | | |
| Other | | | | |

Estimated Liquid Assets: _____

Security or Commodity Accounts with Other Firms:  (List Firms)

Other Security or Commodity Accounts at Bear Stearns :

Does this account control the trading in any other account?                  ☐ Yes  ☐ No
Does any other person(s) control the trading of this account?               ☐ Yes  ☐ No
Does any other person have a financial interest in this account?           ☐ Yes  ☐ No
Does any other person guarantee this account?                              ☐ Yes  ☐ No
If yes, specify:

Name: _____        Address: _____

Information regarding the commission status must be fully completed:

Commission Rates        _____        ☐ Inclusive   ☐ +Fees
                        _____

Indicate how commissions will be charged:    Futures  ☐ Round Turn  ☐ Half Turn
                                             Options  ☐ Round Turn  ☐ Half Turn
Indicate if account is to be converted to US$:  ☐ Yes  ☐ No

**Foreign Commodity Exchanges:**  Indicate the foreign commodity exchanges account will be trading and the native currency rates to be charged:

Exchange: _____
Rate: _____

---

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____    Date: _____

---

Signature of Registered Representative:    _____    Date: _____

Signature of Branch Mgr/Compliance Officer:    _____    Date: _____

New Acct Indiv (version 6/26/06)                                                    Page 6 of 6

THSH_PJ 0000884

DOCUMENT DEPARTMENT USE ONLY–DO NOT WRITE IN THIS AREA    DOC CODE    015    080    181

## BEAR STEARNS

**BEAR, STEARNS SECURITIES CORP.**
**INDIVIDUAL RETIREMENT ACCOUNT**
**APPLICATION**

DATE _____

ACCOUNT NUMBER _____

**1. (PLEASE PRINT)**

Name: *VINCENT J Suracuse*    Social Security No.: Redacted    Redacted 7678

Mail: Redacted

Redacted

_State_    _Zip Code_

Name of Working Spouse (If IRA for Nonworking Spouse)

**2.**

| (A) INITIAL CONTRIBUTION: | (B) CHECK ONE: | (C) CHECK IF APPLICABLE: |
|---|---|---|
| $ _____ (year) (amount) | -OR- | ☐ Rollover or ☐ Transfer (If a Transfer, also complete a Bear Stearns Transfer Form, which may be obtained from your Account Executive or advisor.) | -OR- | ☐ SEP/IRA |

**3. DESIGNATION OF BENEFICIARY:** If I die before my entire interest in the IRA has been distributed under Article IV of the Individual Retirement Account Custodial Agreement, it is my intention that the balance of the account shall be distributed to:

☑ **PRIMARY BENEFICIARY**

Name: *RITA K. Suracuse*  wife    Social Security No.: Redacted    Percentage: 8000  100%

Mail: Redacted

City    State    Zip Code

**4.** ☐ **ADDITIONAL BENEFICIARY** OR ☑ **CONTINGENT BENEFICIARY:** (CHECK

Name: *DANA V. Syracuse*  Son    Relationship    Social Security No.: Redacted J 7I5    Percentage: 100%

Mailing Address: *AS Abve*    Date of Birth

City    State    Zip Code

**5.** ☐ **ADDITIONAL BENEFICIARY** OR ☐ **CONTINGENT BENEFICIARY:** (CHECK ONE ONLY)

Name    Relationship    Social Security No.    Percentage

Mailing Address    Date of Birth

City    State    Zip Code

I may change or revoke this designation without notice to any beneficiary by completing a new form. Any such change or revocation shall be effective on the date Bear Stearns receives such notice. I understand that if no beneficiary designation is in effect at the time of my death, or if the designated beneficiary dies before my death, or if Bear Stearns is unable to readily locate the designated beneficiary, the balance of my account will be paid to my spouse if surviving, or if none, to my children in equal shares per stirpes, or if none, to my estate.

**6.** ☐ **DATE OF CHANGE OF BENEFICIARY DESIGNATION:** ____/____/____
Month    Day    Year

**7. UNINVESTED CASH:** I authorize and direct Bear Stearns to automatically invest daily in the money market fund I select any uninvested cash held in the account. Further, I understand that if I do not select a money market fund, my account will not earn interest on any uninvested cash.

**8. ANNUAL MAINTENANCE FEE PER ACCOUNT:** $35. Termination fee per account: $50. (For additional information on Custodial Fees, please refer to Article VIII, item 1 of the Custodial Agreement.) Fees are not prorated.

**9.** I HAVE RECEIVED AND READ THE IRA BOOKLET, INCLUDING THE IRA CUSTODIAL AGREEMENT AND IRA DISCLOSURE STATEMENT. I HEREBY APPOINT BEAR, STEARNS SECURITIES CORP. AS CUSTODIAN OF MY IRA IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE BEAR STEARNS IRA CUSTODIAL AGREEMENT (IRS FORM 5305–A (REV. MARCH 2002), AS MODIFIED BY BEAR STEARNS WITH RESPECT TO ARTICLE VIII THEREOF). THE TERMS OF THE AGREEMENT AS SO MODIFIED ARE INCORPORATED HEREIN BY REFERENCE AND EXPRESSLY MADE A PART OF THIS IRA APPLICATION. I UNDERSTAND THAT BEAR STEARNS HAS NO DISCRETIONARY INVESTMENT RESPONSIBILITY WITH RESPECT TO THE ASSETS HELD IN MY IRA AND THAT BEAR STEARNS WILL INVEST AND REINVEST THE ASSETS IN THE IRA ONLY ON MY DIRECTION.

I UNDERSTAND THAT THE ADOPTION OF THE IRA HAS SIGNIFICANT FEDERAL, STATE AND LOCAL TAX CONSEQUENCES AND I HAVE BEEN ADVISED BY BEAR STEARNS TO CONSULT MY ATTORNEY OR OTHER TAX ADVISOR.

I FURTHER ACKNOWLEDGE THAT ARTICLE VIII (Miscellaneous Section, item 5, Page 28) OF THE IRA CUSTODIAL AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

**DEPOSITOR:**

Date: *9/8/06*

Signature: _(signed)_

Print Name: *Vincent J. Syracuse*

**FIRM COPY**

THSH_PJ 0000885

## FACE COPY - DO NOT WRITE ON THIS SIDE

## Customer Agreement

**BEAR STEARNS**

The Bear Stearns Companies Inc.
383 Madison Avenue
New York, New York 10179
(212) 272-2000

**THIS DOCUMENT IS A BINDING CONTRACT AND CONTAINS OBLIGATIONS THAT CAN BE ENFORCED AGAINST YOU.**

**PLEASE READ CAREFULLY, SIGN AND RETURN.**

This agreement ("Agreement") sets forth the terms and conditions on which subsidiaries of The Bear Stearns Companies Inc. will open and maintain account(s) in your name and otherwise transact business with you. Your signature confirms that you agree to and are bound by the provisions of this Agreement.

**1. PARTIES.** The parties to this Agreement are you and all present and future subsidiaries of The Bear Stearns Companies Inc. (each subsidiary is referred to as a "Bear Stearns entity" and all the Bear Stearns entities are referred to collectively, as "Bear Stearns").

**2. APPLICABLE LAWS, RULES AND REGULATIONS.**
(a)  All transactions shall be subject to the applicable laws, rules and regulations ("Applicable Laws") of all federal, state and self-regulatory authorities including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed.
(b)  Bear Stearns is committed to complying with U.S. statutory and regulatory requirements designed to combat money laundering and terrorist financing. The USA PATRIOT Act requires that all financial institutions obtain certain identification documents or other information in order to comply with their customer identification procedures. Until you provide the required information or documents, Bear Stearns may not be able to open or maintain account(s) or effect any transactions for you.

**3. SATISFACTION OF YOUR LIABILITIES; SECURITY INTEREST AND LIEN.**
(a)  You agree to satisfy, upon demand, any indebtedness to a Bear Stearns entity, to pay any debit balance in any of your accounts and, in the event of a sale order by you, to deliver the applicable security in good deliverable form no later than the deadline set by Bear Stearns.
(b)  All of your property held by or under the control of a Bear Stearns entity is subject to a lien to secure the payment and performance of your liabilities and obligations to each Bear Stearns entity and you hereby grant each Bear Stearns entity a lien on and a valid and first priority, perfected, continuing security interest in the following: (i) all property, including all investment property, held, carried or controlled by or through any Bear Stearns entity in which you presently have or in which you acquire an interest in the future, including all property in each account in your name, (ii) any and all rights, claims or causes of action you may now or hereafter have against any Bear Stearns entity and (iii) all proceeds of or distributions on the foregoing (collectively (i) through (iii) are referred to in this Agreement as "Collateral").
(c)  Any Collateral held by a Bear Stearns entity is held by such Bear Stearns entity as agent and bailee for itself and all other Bear Stearns entities. Each Bear Stearns entity holding Collateral shall, without your further consent, comply with (i) entitlement orders or instructions for a Bear Stearns entity with respect to the Collateral and (ii) if such Bear Stearns entity holding Collateral is a commodity intermediary, any instructions to such Bear Stearns entity from another Bear Stearns entity to apply any value distributed on account of a commodity contract. Additionally, each Bear Stearns entity holding Collateral has the right, in its sole discretion, to not comply with (i) any entitlement order or instruction from you or a third party with respect to the Collateral and (ii) any instruction from you to apply any value on account of any commodity contract, if a Bear Stearns entity requests that such order or instruction not be complied with in order to maintain security for the payment and performance of your obligations and liabilities to it. You agree that the actions of a Bear Stearns entity in not complying with orders or instructions as allowed in the preceding sentence satisfy any duties Bear Stearns may have under the New York Uniform Commercial Code ("NYUCC").
(d)  You agree that your execution of this Agreement shall constitute notice to each Bear Stearns entity of the security interest you have granted to each other Bear Stearns entity herein, and each Bear Stearns entity holding Collateral is on notice of the security interest granted to each other Bear Stearns entity.
(e)  The reasonable costs and expenses of collection of any such indebtedness or debit balance, including but not limited to attorneys' fees and expenses, shall be payable by you to Bear Stearns.
(f)  In order to secure the payment and performance of any of your outstanding liabilities and obligations to any Bear Stearns entity, Bear Stearns may, to the fullest extent permitted by law, without prior notice to you, use, apply or transfer Collateral as it determines. Unless otherwise agreed in writing, Bear Stearns may register and hold Collateral in its name or the name of its designee.
(g)  You appoint Bear Stearns with full power as your true and lawful attorney-in-fact, to the fullest extent permitted by law, for the purpose of perfecting the security interest granted in this Agreement and taking any action and executing any instrument that Bear Stearns deems necessary or advisable to accomplish the purposes of this Agreement.

**4. REPRESENTATIONS BY YOU.** To induce Bear Stearns to transact business with you, you represent and covenant that (a) you have the right to pledge and assign Collateral to Bear Stearns; and (b) Collateral is and shall at all times be free and clear of any liens, claims or encumbrances, except in favor of a Bear Stearns entity.

**5. DEPOSITS ON TRANSACTIONS.** Bear Stearns may require you to deposit cash or other property, acceptable to Bear Stearns, as Collateral, in your account(s) in such amounts as Bear Stearns determines in its sole discretion and you agree to comply with any such request by no later than the deadline set by Bear Stearns.

**6. BREACH, BANKRUPTCY OR DEFAULT.**
(a)  Each Bear Stearns entity may elect to consider you in default of any or all agreements you may then have with it if (i) you do not pay any liability or perform any obligation to any Bear Stearns entity by the time you are obligated to do so; (ii) you otherwise breach, repudiate or default under this Agreement or any other agreement you may have with any Bear Stearns entity; (iii) you commence a proceeding in bankruptcy or insolvency or one is commenced against you; (iv) any guarantor, co-signer or other party (a "Responsible Party") liable on or providing security for your obligations to any Bear Stearns entity defaults in an obligation to Bear Stearns or commences a proceeding in bankruptcy or insolvency or one is commenced against it; (v) an attachment is made against your or a Responsible Party's account(s) with any Bear Stearns entity; (vi) a receiver is appointed with respect to you, any of your assets or the assets of a Responsible Party; (vii) if you are a natural person, you die or become incompetent, and if you are an entity, you merge, liquidate or dissolve; or (viii) an event, circumstance or condition occurs that, in Bear Stearns' judgment, materially impairs your creditworthiness, your ability to timely perform your obligations to Bear Stearns or otherwise causes us to view ourselves as insecure. The occurrence of any of the foregoing is referred to as an "Event of Default".
(b)  Upon the election by Bear Stearns to consider you in default, each Bear Stearns entity shall have all of the rights and remedies of a secured party upon default under the NYUCC and other Applicable Laws and may, without notice to you, among other things, (i) foreclose, collect, sell or otherwise liquidate any Collateral a Bear Stearns entity selects in its sole discretion, in any order and at any time, and apply, in a manner determined by Bear Stearns in its sole discretion, the proceeds to satisfy any of your obligations or liabilities to any Bear Stearns entity and (ii) buy any property that may have been sold short. At any sale of Collateral or other sale or purchase permitted hereunder or otherwise, Bear Stearns may sell or purchase to or from itself or third parties, and you hereby acknowledge and agree that the securities subject to such sale or purchase are instruments traded in a recognized market. You will pay each Bear Stearns entity for any losses and costs incurred by Bear Stearns as a result of any default by you. You waive marshalling of assets and any similar doctrine dealing with the application of collateral.

**7. EXECUTION FEES AND SERVICE CHARGES.** Your account(s) will be charged brokerage commissions and/or other fees in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for other services

furnished to you ("Service Fees"). All such fees shall be determined by Bear Stearns. Execution Fees may be changed from time to time without prior notice to you and Service Fees may be changed from time to time upon thirty (30) days' prior written notice to you and, in each case, you agree to be bound thereby.

**8. CONFIRMATION REPORTS AND ACCOUNT STATEMENTS.** Confirmation reports of the execution of orders shall be conclusive if not objected to in writing by you within the shorter of (i) the applicable settlement cycle of the subject transactions or (ii) three (3) business days after such documents have been transmitted to you by mail or otherwise. Statements of account(s) shall be conclusive if not objected to in writing by you within ten (10) days after transmission. In all cases, Bear Stearns reserves the right to challenge your objections.

**9. TRUTH-IN-LENDING; DEBIT BALANCES.** You hereby acknowledge receipt of Bear Stearns' Truth-in-Lending disclosure statement. Interest will be charged on any debit balances in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any debit balance, which is not paid at the close of an interest period, will be added to the opening balance for the next interest period.

**10. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, fees, expenses, liabilities and damages incurred by Bear Stearns ("Costs") in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account(s) or any property therein, (iii) your or any other person authorized to act on your behalf's (A) use of or access to Electronic Service (as defined in paragraph 26 below) or (B) failure to comply with any terms, conditions or limitations applicable to such Electronic Service, (iv) any breach or failure by you to perform any term or provision of this Agreement, any other agreement between you and any Bear Stearns entity or any agreement governing your use of or access to any Electronic Service, or (v) Bear Stearns acting in reliance upon your instructions or any other person authorized to act on your behalf, if any. In each case and whether or not demand has been made therefor, you hereby authorize Bear Stearns to charge your account(s) for any and all such Costs.

**11. NATURE OF SERVICES.** Bear Stearns will not provide you with any legal, tax or accounting advice. Bear Stearns' employees are not authorized to give you any such advice and you will not solicit or rely upon any such advice from them or from Bear Stearns whether in connection with transactions in or for any of your accounts or otherwise.

**12. CONTROL OR RESTRICTED SECURITIES.** Prior to placing an order in connection with any securities subject to Rule 144 or 145(d) of the Securities Act of 1933, as amended, you shall advise Bear Stearns of the status of the securities and furnish us with the necessary documents to clear legal transfer. You acknowledge that there may be delays involved with the processing of control or restricted securities and that Bear Stearns will not be liable for any losses caused directly or indirectly by such delays. Bear Stearns may, in its sole discretion, require that control or restricted securities not be sold or transferred until such securities clear legal transfer.

**13. IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Bear Stearns holds on your behalf bonds or preferred stock in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of the New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account with respect to which Bear Stearns has actual knowledge that any officer, director or employee of Bear Stearns has any financial interest until all other customers have been satisfied on an impartial lottery basis.

**14. WAIVER, ASSIGNMENT, NOTICES AND LIMITATION OF LIABILITY.**
(a)  Neither Bear Stearns' failure to insist at any time upon strict compliance with the terms of this Agreement nor any continued course of such conduct on its part shall constitute or be considered a waiver by Bear Stearns of any of its rights or privileges hereunder. Any assignment of your rights and obligations hereunder or your interest in any property held by or through Bear Stearns without obtaining the prior written consent of an authorized representative of Bear Stearns shall be null and void. Each Bear Stearns entity reserves the right to assign any of its rights or obligations hereunder to any other Bear Stearns entity without prior notice to you. Notices and other communications (including, without limitation, margin calls) delivered, faxed, sent by express delivery service or mailed to the address provided by you shall, until Bear Stearns has received notice in writing of a different address, be deemed to have been personally delivered to you whether actually received or not. Notices and other communications may also be provided to you verbally. Such notices and other communications left for you on your answering machine, or otherwise, shall be deemed to have been delivered to you whether actually received or not. Notices and other communications from you to Bear Stearns shall be in writing. You hereby authorize Bear Stearns to accept facsimile copies of this or any other document or instruction as if it were the original and to accept signatures on facsimiles as if they were originals.
(b)  You agree that, no Bear Stearns entity shall have any liability for any consequential, incidental or any similar damages and you hereby irrevocably and unconditionally waive any right you may have to claim or recover any such damages (even if you have informed Bear Stearns of the possibility or likelihood of such damages).

**15. FREE CREDIT BALANCES.** You hereby authorize Bear Stearns to use any free credit balance in any of your accounts in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Bear Stearns for such account(s) and for the amounts of cash so used. In accordance with applicable regulations, free credit balances are carried in customers' accounts pending, and with a view towards, reinvestment. Bear Stearns may determine not to pay interest on free credit balances representing either (i) uncollected funds or (ii) funds that are deposited and subsequently withdrawn prior to the expiration of the minimum time period required by Bear Stearns.

**16. RESTRICTIONS ON ACCOUNTS.** Bear Stearns, in its sole discretion, may restrict or prohibit trading of securities or other property in any of your accounts and you shall nevertheless remain liable for all of your obligations and liabilities to Bear Stearns under this Agreement or otherwise.

**17. CREDIT REPORTS AND OTHER INFORMATION.** You authorize Bear Stearns, in its sole discretion, to make or obtain reports concerning your credit standing and business conduct. You may make a written request for a description of the nature and scope of the reports made or obtained by Bear Stearns and the same will be provided to you within a reasonable period of time. You further agree to provide Bear Stearns, on request, with such additional information or certification as may be required by Bear Stearns or Applicable Laws.

**18. SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "short". In placing any sell order for a long account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "long". The designation by you of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the sell order has been placed, that such security may be sold without restriction in the open market and that, if Bear Stearns does not have the security in its possession at the time you place the sell order, you shall deliver the security to settlement date in good deliverable form or pay to Bear Stearns any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

BRANCH/CORRESPONDENT

THSH_PJ 0000886

**Customer Agreement**    DOC CODE ☐ 003

**19. MARGIN AND OTHER COLLATERAL REQUIREMENTS.** *[Applicable only to margin account(s)]* You hereby agree to deposit and maintain such margin in your margin account(s), if any, as Bear Stearns may in its sole discretion require, and you agree to pay on demand any debit balance owing with respect to any of your margin accounts. In addition, you further agree to deposit promptly and maintain such other collateral with Bear Stearns as is required by Applicable Laws or any other agreement or open transaction you may have with any Bear Stearns entity. No demands, calls, tenders or notices that Bear Stearns may have made or given in the past shall obligate Bear Stearns to make or give the same in the future. Unless you advise Bear Stearns in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under The Securities Act of 1933) of the issuer of any security held in any of your accounts. Margin calls may also be communicated orally, without subsequent written confirmation.

**20. ON-LINE AND ELECTRONIC SYSTEMS.** If you or any other person authorized to act on your behalf accesses or uses any internet site or on-line or other electronic system operated for or by Bear Stearns or any account access, trading, order entry or other services, systems, capabilities or content available through any of the foregoing (each, an "Electronic Service"), you acknowledge and agree that such Electronic Service is being made available to you or such other person without any warranty whatsoever, either express or implied, and you agree that any such access or use will be solely at your own risk, and Bear Stearns will not have any liability whatsoever relating to or arising out of any such access, use, or any problems with or failures of any Electronic Service. Moreover, you agree that if you or any person authorized to act on your behalf are given any digital certificate(s), user name(s) and/or password(s) which may be required to access or use any Electronic Services (collectively, "User Code(s)"), (a) you shall preserve the confidentiality of such User Codes; (b) you shall restrict access to the User Codes to those persons who are duly authorized to act on your behalf; (c) you shall notify Bear Stearns immediately in the event any such User Code is lost, stolen or the confidentiality of any such User Code has been compromised in any way or if any other person purporting to act on your behalf has been revoked or limited; and (d) you are responsible for and will be bound by all statements made, orders entered, and instructions, trades, agreements, assents and consents communicated under any such User Code, to the same extent that the same was under your duly signed writing.

**21. CONSENT TO LOAN, PLEDGE OR USE OF SECURITIES IN MARGIN ACCOUNTS.** *(Applicable only to margin account(s))* To the greatest extent permitted under Applicable Laws, you hereby authorize Bear Stearns to lend either to itself or to others and to otherwise use, sell or pledge any securities held by Bear Stearns in any of your margin account(s), to convey therewith all attendant rights of ownership (including voting rights) and to use all such property as collateral for Bear Stearns' general loans or other obligations or with respect to repurchase transactions. Any such property, together with all attendant rights of ownership, may be pledged, repledged, sold, hypothecated or rehypothecated or become subject to repurchase transactions either separately or in common with other property for any amounts due to Bear Stearns thereon and Bear Stearns shall have no obligations to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, (i) Bear Stearns may receive and retain certain benefits to which you will not be entitled and (ii) the securities in your margin account(s) insofar as they relate to collateral by Bear Stearns for loans made to it in excess of your indebtedness to Bear Stearns. In certain circumstances, such loans or other use may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities.

**22. LEGALLY BINDING.** You hereby agree that the terms of this Agreement shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any instruction with respect to any of your accounts was not in writing as may be required by the Statute of Frauds or any similar Applicable Laws.

**23. AMENDMENT; TERMINATION.**
(a) You agree that Bear Stearns may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from Bear Stearns thereafter, you will have indicated your acceptance of any such modification. If you do not accept such modification, you must notify Bear Stearns in writing; your account(s) may then be terminated by Bear Stearns, after which you will remain liable to Bear Stearns for all outstanding liabilities and obligations. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Bear Stearns.
(b) You may close any of your accounts at any time by giving Bear Stearns written notice, provided that Bear Stearns receives all securities and/or other property for which your account(s) are short and you have satisfied all of your outstanding liabilities and obligations which you owe to any Bear Stearns entity for any reason whatsoever.
(c) Bear Stearns reserves the right to terminate this Agreement or your account(s) at any time for any reason. The provisions of this Agreement shall survive termination of this Agreement and/or closure of your account(s) insofar as they relate to obligations, liabilities, actions or failures to take action relating to, arising in or with respect to the period prior to termination of this Agreement or closure of your account(s).
(d) On termination of this Agreement or closure of your account(s), it will be your responsibility to issue instructions in writing with regard to the assets held in your account(s). Unless and until Bear Stearns receives such instructions, it will be under no obligation to take any action with regard to your assets. You agree that you will be responsible for any transaction costs associated with your instructions, including commissions and related costs.

**24.** GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25.** ARBITRATION; CONSENT TO JURISDICTION; SERVICE OF PROCESS. THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE. BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:
• ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.
• ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.
• THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS.
• THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.
• THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
• THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.
• THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.
• NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL:
  (i)  THE CLASS CERTIFICATION IS DENIED;
  (ii)  THE CLASS IS DECERTIFIED; OR
  (iii)  THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.
SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

BY SIGNING THIS AGREEMENT YOU AND BEAR STEARNS AGREE, THAT CONTROVERSIES
• ARISING UNDER OR RELATING TO THIS AGREEMENT OR ANY ACTIVITY BETWEEN YOU AND BEAR STEARNS, ITS PREDECESSORS, AND ANY OF THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND ANY OF THEIR DIRECTORS, EMPLOYEES AND ANY OTHER CONTROL PERSONS AND ANY OF THEIR AGENTS, WHETHER ARISING PRIOR TO, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS

 AGREEMENT SHALL BE HELD ONLY AT THE FACILITIES OF, OR BEFORE AN ARBITRATION PANEL APPOINTED BY, AND PURSUANT TO THE RULES OF THE NEW YORK STOCK EXCHANGE, INC., OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. YOU MAY ELECT ONE OF THE FOREGOING FORUMS FOR ARBITRATION, BUT IF YOU FAIL TO MAKE SUCH ELECTION BY REGISTERED MAIL OR TELEGRAM ADDRESSED TO BEAR, STEARNS SECURITIES CORP., 383 MADISON AVENUE, NEW YORK, NEW YORK 10179, ATTENTION: CHIEF LEGAL OFFICER OR ANY OTHER ADDRESS OF WHICH YOU ARE ADVISED IN WRITING, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM BEAR STEARNS TO MAKE SUCH ELECTION, THEN BEAR STEARNS MAY MAKE SUCH ELECTION. THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

(b) Notwithstanding the provisions of subparagraph (a) above, either party may, at any time prior to the initial arbitration hearing pertaining to such dispute or controversy, seek by application to the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York any such temporary or provisional relief or remedy ("provisional remedy") provided for by the laws of the U.S. or the laws of the State of New York as would be available in an action based upon such dispute or controversy in the absence of an agreement to arbitrate. The parties acknowledge and agree that it is their intention to have any such application for a provisional remedy decided by the Court to which it is made and that such application shall not be deemed to be self settled by arbitration. No such application to either said Court for a provisional remedy, nor any act or conduct by either party in furtherance of or in opposition to such application, shall constitute a relinquishment or waiver of any right to have the underlying dispute or controversy with respect to which such application is made settled by arbitration in accordance with subparagraph (a) above.
(c) With respect to any application for a provisional remedy and any application for judgment on an arbitration award, each party irrevocably (i) submits to the jurisdiction of the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York, (ii) waives any objection which it may have at any time to the laying of venue of any proceedings brought in any such court, waives any claim that such proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such proceedings, that such court does not have any jurisdiction over such party, and (iii) consents to service of process by certified mail, return receipt requested, to the address provided for herein.
(d) You hereby agree to receive service of process in connection with any legal matters or actions or proceedings based upon, arising out of or relating in any way to this Agreement by confirmed, return-receipt requested mail and that delivery shall be presumed if such service is mailed to the address maintained by Bear Stearns in its records and the requested receipt is returned.

**26. SEVERABILITY.** If and to the extent any term or provision herein is or should become invalid or unenforceable, then (i) the remaining terms and provisions hereof shall be unimpaired and remain in full force and effect and (ii) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision.

**27. EXTRAORDINARY EVENTS.** Bear Stearns shall not be liable for losses caused directly or indirectly by suspension of trading, wars, civil disturbances, terrorism, strikes, natural calamities, labor or material shortages, government restrictions, acts or omissions of exchanges, specialists, markets, clearance organizations or information providers, delays in mails, delays or inaccuracies in the transmission of orders or information, governmental, exchange or self-regulatory organization laws, rules or actions, or any other causes beyond Bear Stearns' control that may or delay the performance of Bear Stearns' obligations.

**28. HEADINGS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights or obligations provided for hereunder.

**29. TELEPHONE AND ELECTRONIC COMMUNICATIONS.** You hereby authorize Bear Stearns to monitor and/or record any or all telephone and/or electronic communications between you and Bear Stearns or any of Bear Stearns' employees or agents. You agree that such recordings may be used in connection with a dispute between the parties. You acknowledge that Bear Stearns may determine not to make or keep such recordings and that such determination shall not in any way affect any party's rights.

**30. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights of each Bear Stearns entity set forth in this Agreement and in each other agreement you may have with any Bear Stearns entity are cumulative and in addition to any other rights and remedies that any Bear Stearns entity may have and shall supersede any limitation on or any requirement for the exercise of such rights and remedies that is inconsistent with the terms of this or any other such agreement. The provisions of this Agreement shall supersede any inconsistent provisions of any other agreement entered into between you and any Bear Stearns entity, unless such other agreement expressly states that the terms thereof shall supersede this Agreement. You agree that you will take such action as is necessary to cooperate with Bear Stearns with respect to Collateral and delivery and perfection thereof. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Bear Stearns concerning the subject matter hereof.

**31. CAPACITY TO CONTRACT; AFFILIATIONS.** You represent that you are of legal age to enter into contracts in the state of your domicile and that, unless you have notified Bear Stearns to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc., (iii) an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities options or futures of any kind, or (iv) an employee of any bank, trust company or insurance company. Persons signing on behalf of others should indicate the titles or capacities in which they are signing. If the undersigned is signing on behalf of others, the undersigned hereby represents that the person(s) or entity(ies) on whose behalf it is signing is/are authorized to enter into this Agreement and that the undersigned is duly authorized to sign this Agreement and make the representations herein in the name and on behalf of such other person(s) or entity(ies). Subject to the preceding sentence, you represent that only the undersigned has any interest in the account(s) established pursuant to this Agreement.

BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:
1.   THE SECURITIES IN YOUR MARGIN ACCOUNT(S) AND ANY SECURITIES FOR WHICH YOU HAVE NOT FULLY PAID, TOGETHER WITH ALL ATTENDANT OWNERSHIP RIGHTS, MAY BE USED BY BEAR STEARNS OR SOLD OR PLEDGED TO BEAR STEARNS OR TO OTHERS; AND
2.   YOU HAVE RECEIVED A COPY OF THIS AGREEMENT.

THIS AGREEMENT IS DATED AS OF __Aug 9__, 20 06

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 25, PAGE 2.

_____
(Account Number)

_____
(Typed or Printed Name)

X _____
(Signature)

Vincent J. Jeanusc
(Typed or Printed Name)

X _____
(Signature)

BRANCH/CORRESPONDENT                      4767 REV. 4/05

THSH_PJ 0000887

| Form **W-9**<br>(Rev. November 2005)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | **Give form to the<br>requester. Do not<br>send to the IRS.** |
|---|---|---|

Name (as shown on your income tax return)

Vincent J. Syrauve

Business name, if different from above

Check appropriate box: ☐ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ ................    ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)                Requester's name and address (optional)

City, state, and ZIP code

List account number(s) here (optional)

**Print or type — See Specific Instructions on page 2.**

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number
Redacted 2 | 6 | 7 | P
or
Employer identification number

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here**    Signature of U.S. person ▶                                Date ▶

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:

● An individual who is a citizen or resident of the United States,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X                                Form **W-9** (Rev. 11-2005)

# BEAR STEARNS

**1 MetroTech Center North**
**Brooklyn, N.Y. 11201**

☐ 4K = 401K          ☐ Broker Change Only

☐ C = Cash/Mgn      ☐ IR = IRA          ☐ QP = Qual/PS/Pen/Plan
☐ CO = Corporate    ☐ JT = Joint        ☐ RI = Roth IRA
☐ CU = Custodian (UGMA)  ☐ Non-ACAT     ☐ SN = Single
☐ DR = Direct Roller    ☐ EI = Educational  ☐ TR = Trust

# Account Transfer Form

Use this form to authorize the transfer of assets currently at another firm into your Bear Stearns account. Complete one form for each account you are transferring.

**1. Information About Your Account.** The registration of the account being transferred must match your Bear Stearns account (i.e., IRA to IRA).

| BEAR STEARNS ACCOUNT | | ACCOUNT BEING TRANSFERRED | |
|---|---|---|---|
| | 0352 | | |
| Bear Stearns Account Number (If available) | BSSC Clearing No. | Account Number | Broker Clearing No. |
| Account Holder Name/Account Title | | Title of Account You are Transferring (as shown on your statement) | |
| Primary Social Security or Tax Identification Number | | Name of Firm currently holding your account | |
| Joint Account Owner (if applicable) | Second SS # (if applic.) | Address of Firm | |

**2. Transfer Instructions:  Complete section A or B and, if applicable, section C.  A copy of your most recent statement is required with this form.**

**A.** ☐ **Transfer from a Brokerage Firm only**
  ☐ Transfer all assets in kind      ☐ Partial transfer (Complete section C below.)

**B.** ☐ **Transfer from a Bank, Mutual Fund, or Credit Union only**
  ☐ Transfer all assets in kind   ☐ Partial transfer          ☐ Liquidate all assets and transfer as cash
                          (Complete section C below.)
  ☐ Transfer proceeds from Certificates of Deposit AT MATURITY   ☐ Liquidate Certificates of Deposit IMMEDIATELY.  I am aware of
  (Submit no earlier than 30 days prior to maturity.)              and acknowledge the penalty I will incur from an early withdrawal.

**C.** ☐ **Partial Transfer Instructions: Transfer only a portion of my account, as detailed below** (continue on a separate sheet if needed).

| Quantity | Symbol or CUSIP # | Description of Asset | Cash Balance (Indicate credit or debit) |
|---|---|---|---|
| | | | $ |
| | | | |
| | | | |

**To the Delivering Firm named above:**

If this account is a qualified retirement account, I have amended the applicable plan so that it names as successor custodian the below listed trustee. Unless otherwise indicated in the instructions above, please transfer all assets in my account to Bear, Stearns Securities Corp. I understand that to the extent any assets in my account are not readily transferable with or without penalties, such assets may not be transferred within the timeframes required by NYSE Rule 412 or similar rule of the NASD or other designated examining authority.

Unless otherwise indicated in the instructions above, I authorize you to liquidate any non-transferable proprietary money market fund assets that are part of my account and transfer the resulting credit balance to the successor custodian.  I authorize you to deduct any outstanding fees due you from the credit balance in my account.  If my account does not contain a credit balance, or if the credit balance in the account is insufficient to satisfy any outstanding fees due to you, I authorize you to liquidate the assets in my account to the extent necessary to satisfy that obligation.  If certificates or other instruments in my account are in your physical possession, I instruct you to transfer them in good deliverable form, including affixing any necessary tax waivers, to enable the successor custodian to transfer them in his name for the purpose of sale, when and as directed by me.  I understand that upon receiving a copy of this transfer instruction, you will cancel all open orders for my account on your books.

I affirm that I have destroyed or returned to you credit/debit cards and/or unused checks issued to me in connection with my securities account.

I understand that I will be contacted with respect to the disposition of any assets in my securities account that are non-transferable.

**Age 70-1/2 Restrictions – The following restrictions apply to a retirement account transfer.**

If I am over 70-1/2, I attest that none of the amount to be transferred will include the required minimum distribution for the current year pursuant to Section 401(a)(9) of the Internal Revenue Code.  If necessary, instruct your present custodian prior to effecting this transfer to either: 1) Pay your required minimum distribution to you now OR 2) Retain that amount there for distribution to you later.

**3. Owner Authorization and Agreement to Terms.**  By signing below, I (we) acknowledge reading and agree to the above terms and conditions.

| Owner/Custodian/Trustee Signature | Joint Owner Signature (if any)/Plan Administrator/Trustee | Date (Required) |
|---|---|---|
| X *[signature]* | X | 9/8/06 |
| *[signature]* | | |
| Print Name                Title/Role | Print Name                Title/Role | |

**Letter of Acceptance**

BEAR STEARNS SECURITIES CORP. ("BSSC") will accept the above captioned account as SUCCESSOR CUSTODIAN/TRUSTEE.  BSSC does not accept and will not act as Custodian/ Trustee of and for any assets and/or positions which are not actually transferred to BSSC and BSSC specifically does not approve any notation on the books and records of any entity, including but not limited to any mutual fund company, that indicates, implies and/or states that BSSC is the custodian/trustee of any assets held away from BSSC.

| Successor Custodian Signature (BSSC Receiving Custodian Completes) | Date | Contact: **Bear, Stearns Securities Corp. ACAT Dept.** |
|---|---|---|
| | | **Telephone No. 347-643-2944** |
| Name of Registered Representative | Branch | R.R. No. | Telephone No. |

449 (02/06)                                                    Subject to the by-laws and rules of the N.S.C.C.

THSH_PJ 0000889

# BEAR STEARNS

**DOC CODE 301**

**NEW ACCOUNT FORM INDIVIDUALS**

OFFICE #_____ ACCOUNT # _____ T ____ CK ____ ACCOUNT EXECUTIVE # _____ GROUP # _____

## A. ACCOUNT TYPE

☑ Individual
☐ JTWROS

☐ Tenants in Common
☐ Tenants by Entirety
☐ Transfer on Death

☐ IRA
☐ IRA ROTH
☐ IRA KEOUGH
☐ SEP IRA

☐ IRA Education
☐ IRA Guardian
☐ IRA Rollover

☐ Escrow Individual
☐ UGMA
☐ UTMA

☐ Other
Specify:
_____

| CLASS CODE | SUB CLASS CODE | ACCOUNT TAX ID | GOVT. ISSUED ID [If no tax ID]] |
|---|---|---|---|
| _____ | _____ | _____ | _____ |

## B. ACCOUNT NAME/ TITLE (In Full):

Vincent J. Syravrl

_____

_____

_____

# Redacted

**Telephone:** _____

## C. ACCOUNT MAILING ADDRESS
(If this is a P.O. Box, provide physical address in Section D)

-
- # Redacted

## D. PERMANENT ADDRESS

JAM

_____

_____

_____

## E. ACCOUNT INFORMATION

INVESTMENT OBJECTIVE: _____

**ACCOUNT WILL BE TRADING**
☐ Cash ☐ Margin ☐ Short ☐ Futures (Complete Futures Addendum)

NET WORTH: Redacted ANNUAL INCOME: Redacted

INVESTMENT EXPERIENCE: ☐ None ☐ Low ☑ Med ☐ High

INVESTMENT ADVISOR NAME & ADDRESS (If Applicable)

_____

_____

_____

_____

**NAME & BUSINESS ADDRESS OF PERSON WITH TRADING AUTHORITY (If Applicable)**

_____

_____

_____

_____

Title: _____

SELL INSTRUCTIONS: ☐ 07 Hold Proceeds ☐ 08 Send to Customer

DIVIDENDS: ☐ Send Check ☐ Hold ☐ Income Acct. ☐ Direct Dep.

NAME OF AE: _____ Phone: _____

AE Trading Authority?: ☐ Yes ☐ No

AE Registered in Customer's State of Residence? ☐ Yes ☐ No

Is AE Related? ☐ Yes ☐ No State Relationship: _____

Account Introduced to AE by: _____

AE Known How Long?: _____

Trading Authorization will be: ☐ Limited ☐ Gen. Pwr. of Atty.

Initial Transaction: ☐ Shares ☐ Deposit AMOUNT: _____

Reason for Waive of Deposit: _____

Bank and other References: _____

Have you sent forms to Customer?: ☐ Yes ☐ No

Does Customer have another account with us?: ☐ Yes ☐ No

Account Numbers: _____

New Acct Indiv (version 6/26/06)

Page 1 of 6


**BEAR STEARNS**

**DOC CODE 301**

**NEW ACCOUNT FORM INDIVIDUALS**

**ACCOUNT # _____**

### F. CLIENT / BENEFICIAL OWNER

> This information must be filled out for EACH Individual. Please use a separate page for each individual.

For **US Individual:** No documentation required at account opening. A copy of a driver's license or other valid, government-issued picture ID may be requested for verification purposes upon review of the account.

For **Non-US Individuals:** Please attach to this form a copy of a valid, government-issued picture ID evidencing nationality for each individual. The documentation must be presented *prior* to account opening.

For **Trading Authority / Power of Attorney** complete Questions 1-6.

| 1. Name [First, Middle, Last Name]:<br><br>VINCENT J. SYRACUSE | 2. Relation to Account [see definitions page 4]: |
|---|---|
| 3. Principal Business Address:<br><br># Redacted | 4. Business Mailing Address [If different from Principal Business]:<br><br> |

**5. Is this individual a current or former Foreign Political Figure, an Immediate Family Member of Known Close Associate? [See definition on Page 4]**
☑ No.
☐ Yes. Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity.

**6. Is any Citizenship or Address associated with this individual located in a High Risk Jurisdiction? [See list on page 5]**
☑ No.
☐ Yes. Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity.

| 7. Has an Account for this Individual been established since 10/01/03?<br>☐ Yes<br>☑ No<br>If Yes, list Account Numbers: | 8. SSN or other Valid Gov't Issued ID No:<br>Redacted 7 6 7 8<br>Type of ID:<br><br>Country of Issuance: |
|---|---|
| 9. Estimated Net Worth (US$): # Redacted | 10. Annual Income (US$):   Redacted |
| 11. Sources of Wealth:<br>☑ Employment ☐ Inheritance ☐ Investment ☐ Other (explain) | 12. Sources of Assets on Deposit:<br>☐ Employment ☐ Inheritance ☐ Investment ☐ Other (explain) |
| 13. Country of Citizenship:   USA | 14. Date of Birth: |
| 15. Home Address:<br><br>Redacted<br><br>Home | 16. Mailing Address: [If different from Home Address] |
| 17. Occupation:<br><br>Employment Status: ☑ Employed ☐ Self-Employed ☐ Unemployed<br><br>If employed, Employer's Name:  TANNEN BAUM HILBURG SWARM & HIRSCH<br><br>Member Firm?  ☑ Yes ☐ No | 18. Marital Status: ☑ Single ☐ Married<br><br>If married, Spouse's Occupation:<br><br>teacher |

New Acct Indiv (version 6/26/06)

Page 2 of 6

THSH_PJ 0000891

# BEAR STEARNS

**DOC CODE 301**                    **NEW ACCOUNT FORM INDIVIDUALS**

G. INTERESTED PARTIES

I/P # 1      # CONFIRMS _____   #STATEMENTS _____              I/P # 2      # CONFIRMS _____   #STATEMENTS _____

I/P # 3      # CONFIRMS _____   #STATEMENTS _____              I/P # 4      # CONFIRMS _____   #STATEMENTS _____

---

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____   Date: _____

Account Opened by: _____   Telephone Number: _____

Signature of Registered Representative: _____   Date: _____

Signature of Branch Mgr/Compliance Officer: _____   Date: _____

---

**For AML DUE DILIGENCE GROUP USE ONLY**

Date Received: _____          Commercial Vendor ID Verification: ☐Positive ☐Negative ☐Inconclusive

Name of Reviewer: _____         If Negative or Inconclusive:
                                                Valid Gov't Issued Picture ID Requested on Date: _____
Risk Level: _____

Approved by: _____

Date: _____                     Final ID Approval: ☐Yes ☐No

---

New Acct Indiv (version 6/26/06)                                        Page 3 of 6

THSH_PJ 0000892



**DOC CODE 301**    **NEW ACCOUNT FORM INDIVIDUALS**

### CLIENT / BENEFICIAL OWNER / AUTHORIZED PARTIES

**Customer:**  The nominal owner of an account.

**Custodian:**  Under the Uniform Transfer (or Gift) to Minors Act, the person appointed to manage and dispense funds for a child.

**Guardian:**  A person or entity named in a will, guardianship, or court order who is responsible for the care of minor children or incompetent adults.

**Conservator:**  A person or entity appointed by a court to manage the property and financial affairs of another (usually incompetent) person.

**Investment Advisor:**  A person who manages assets, making portfolio composition and individual security selection decisions.

**Power of Attorney:**  An instrument by which one person authorizes another to act for him in a manner which is as legally binding upon the person giving such authority as if he personally were to do the acts.

**Principal:**  A person who designates another to act as his/her attorney in fact or agent.

**Trading Authority:**  A person who is authorized to conduct trades and provide instructions for a customer's account.

**Foreign Political Figure:**  A "Foreign Political Figure" is an official of a foreign government, an official of a major foreign political party or an executive of a foreign government-owned corporation.  In addition, a Foreign Political Figure includes any corporation or other business formed by, or for the benefit of, a Foreign Political Figure.  An "Immediate Family Member" of a Foreign Political Figure includes the person's parents, siblings, spouse, children and in-laws.  A "Known Close Associate" of a Foreign Political Figure is a person who is widely and publicly known (or who is actually known by Bear Stearns or the introducing broker-dealer) to maintain a close personal or professional relationship with a Foreign Political Figure.

New Acct Indiv (version 6/26/06)

THSH_PJ 0000893



**DOC CODE 301**                    **NEW ACCOUNT FORM INDIVIDUALS**

## Country & Jurisdiction Tables

| PROHIBITED | HIGH RISK | | MEDIUM RISK | | AML EQUIVALENT |
|---|---|---|---|---|---|
| Burma (Myanmar) | Afghanistan | Macau | Albania | Macedonia (FYROM) | Australia |
| | Algeria | Madagascar | Anguilla | Maldives | Austria |
| | Andorra | Malawi | Antarctica | Malaysia | Belgium |
| Cuba | Angola | Malta | Antigua and | Mali | Bermuda |
| | Armenia | Marshall Islands | Barbuda | Mauritius | Canada |
| | Azerbaijan | [Majuro] | Argentina | Mexico | Denmark |
| Iran | Bangladesh | Mauritania | Aruba | Micronesia | Finland |
| | Belarus | Moldova | Bahamas | Monaco | France |
| Sudan | Belize | Mongolia | Bahrain | Nauru | Germany |
| | Benin | Montenegro | Barbados | Oman | Greece |
| | Bolivia | Montserrat | Bhutan | Palau | Guernsey |
| | Bosnia & Herzegovina | Morocco | Botswana | Peru | Hong Kong, [China] |
| | Burkina Faso | Mozambique | Brazil | Qatar | Iceland |
| | Burundi | Namibia | British Virgin | Samoa (Western) | Ireland |
| | Cambodia | Nepal | Islands | San Marino | Italy |
| | Cameroon | Netherlands | Brunei | Senegal | Japan |
| | Central African | Antilles | Bulgaria | Slovakia | Jersey |
| | Republic | Nicaragua | Cape Verde | Slovenia | Luxembourg |
| | Chad | Niger | Cayman Islands | South Africa | Netherlands |
| | Colombia | Nigeria | Chile | South Korea | New Zealand |
| | Comoros | Niue | China, People's | St. Kitts & Nevis | Norway |
| | Congo (Both) | North Korea | Republic | St. Lucia | Portugal |
| | Cook Islands | Pakistan | Costa Rica | St. Vincent & The | Singapore |
| | Cote D'Ivoire | Palestinian | Croatia | Grenadines | Spain |
| | Cyprus | Authority | Czech Republic | Swaziland | Sweden |
| | Dominican Rep | [Gaza, West | Djibouti | Taiwan | Switzerland |
| | East Timor | Bank] | Dominica | Thailand | United Kingdom |
| | Ecuador | Panama | El Salvador | Togo | |
| | Egypt | Papua-New Guinea | Estonia | Tonga | |
| | Equatorial Guinea | Paraguay | Fiji | Trinidad and Tobago | |
| | Eritrea | Philippines | Ghana | Tunisia | |
| | Ethiopia | Poland | Gibraltar | Turkey | |
| | Gabon | Romania | Grenada | Turks and Caicos | |
| | Gambia | Russia | Hungary | United Arab Emirates | |
| | Georgia | Rwanda | India | Uruguay | |
| | Guatemala | Sao Tome & | Isle of Man | Vatican City | |
| | Guinea | Principe | Israel | Vanuatu | |
| | Guinea-Bissau | Saudi Arabia | Jordan | | |
| | Guyana | Serbia | Kuwait | | |
| | Haiti | Seychelles | | | |
| | Honduras | Sierra Leone | | | |
| | Indonesia | Solomon Islands | | | |
| | Iraq | Somalia | | | |
| | Jamaica | Sri Lanka | | | |
| | Kazakhstan | Suriname | | | |
| | Kenya | Syria | | | |
| | Kiribati | Tajikistan | | | |
| | Kyrgyzstan | Tanzania | | | |
| | Laos | Turkmenistan | | | |
| | Latvia | Tuvalu | | | |
| | Lebanon | Uganda | | | |
| | Lesotho | Ukraine | | | |
| | Liberia | Uzbekistan | | | |
| | Libya | Venezuela | | | |
| | Liechtenstein | Vietnam | | | |
| | Lithuania | Western Sahara | | | |
| | | Yemen | | | |
| | | Yugoslavia FR | | | |
| | | Zambia | | | |
| | | Zimbabwe | | | |

New Acct Indiv (version 6/26/06)

THSH_PJ 0000894

# FUTURES ACCOUNT ADDENDUM FOR NEW ACCOUNTS

**Type of Account**
- ☐ Individual
- ☐ Joint
- ☐ Corporation
- ☐ Partnership
- ☐ Trust
- ☐ Foreign Account
- ☐ Omnibus Account
- ☐ Commodity Pool
- ☐ Other (Specify) _____

| TRADING EXPERIENCE | NONE | 1 YEAR | 2 YEAR | OVER 3 YEARS |
|---|---|---|---|---|
| Commodities | | | | |
| Options | | | | |
| Stocks/Bonds | | | | |
| Other | | | | |

Estimated Liquid Assets: _____

Security or Commodity Accounts with Other Firms:  (List Firms):

Other Security or Commodity Accounts at Bear Stearns :

Does this account control the trading in any other account?    ☐ Yes  ☐ No
Does any other person(s) control the trading of this account?    ☐ Yes  ☐ No
Does any other person have a financial interest in this account?    ☐ Yes  ☐ No
Does any other person guarantee this account?    ☐ Yes  ☐ No
If yes, specify:

Name: _____    Address: _____

Information regarding the commission status must be fully completed:

Commission Rates    _____    ☐ Inclusive    ☐ +Fees

Indicate how commissions will be charged:    Futures ☐ Round Turn  ☐ Half Turn
                                             Options ☐ Round Turn  ☐ Half Turn
Indicate if account is to be converted to US$:    ☐ Yes ☐ No

**Foreign Commodity Exchanges:**  Indicate the foreign commodity exchanges account will be trading and the native currency rates to be charged:

Exchange: _____
Rate: _____

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____    Date: _____

Signature of Registered Representative:    _____    Date: _____

Signature of Branch Mgr/Compliance Officer:    _____    Date: _____

New Acct Indiv (version 6/26/06)                                    Page 6 of 6

THSH_PJ 0000895

**BEAR STEARNS**

**BEAR, STEARNS SECURITIES CORP.**
**INDIVIDUAL RETIREMENT ACCOUNT**
**APPLICATION**

DATE _____

ACCOUNT NUMBER _____

**1. (PLEASE PRINT)**  Robert E. Helpern    Redacted    Redacted 6266

Redacted

City (IL)    State    Zip Code
Telephone No.    Name of Working Spouse (If IRA for Nonworking Spouse)

**2.**
**(A) INITIAL CONTRIBUTION:**
_____ $ _____  -OR-
(year)    (amount)

**(B) CHECK ONE:**
☒ Rollover  or  ☐ Transfer  -OR-
(If a Transfer, also complete a Bear Stearns
Transfer Form, which may be obtained from
your Account Executive or advisor.)

**(C) CHECK IF APPLICABLE:**
☐ SEP/IRA

**3. DESIGNATION OF BENEFICIARY:** If I die before my entire interest in the IRA has been distributed under Article IV of the Individual Retirement Account Custodial Agreement, it is my intention that the balance of the account shall be distributed to:

☒ **PRIMARY BENEFICIARY**
Jacqueline Helpern    Wife    Redacted 5074    100%
Name    Relationship    Percentage

Redacted

Redacted
Redacted

City    State    Zip Code

**4.** ☐ ADDITIONAL BENEFICIARY  OR  ☒ CONTINGENT BENEFICIARY: (CHECK ONE)
Joshua Helpern    Son    Redacted 5F47    50%
Percentage

Redacted

Redacted
Redacted

City    State    Zip Code

**5.** ☐ ADDITIONAL BENEFICIARY  OR  ☒ CONTINGENT BENEFICIARY: (CHECK ONE)
Michael Helpern    Son    Redacted 7147    50%
Percentage

Redacted

Redacted
Redacted

I may change or revoke this designation without notice to any beneficiary by completing a new form. Any such change or revocation shall be effective on the date Bear Stearns receives such notice. I understand that if no beneficiary designation is in effect at the time of my death, or if the designated beneficiary dies before my death, or if Bear Stearns is unable to readily locate the designated beneficiary, the balance of my account will be paid to my spouse if surviving, or if none, to my children in equal shares per stirpes, or if none, to my estate.

**6.** ☐ DATE OF CHANGE OF BENEFICIARY DESIGNATION: ___ / ___ / ___
Month   Day   Year

**7. UNINVESTED CASH:** I authorize and direct Bear Stearns to automatically invest daily in the money market fund I select any uninvested cash held in the account. Further, I understand that if I do not select a money market fund, my account will not earn interest on any uninvested cash.

**8. ANNUAL MAINTENANCE FEE PER ACCOUNT:** $35. Termination fee per account: $50. (For additional information on Custodial Fees, please refer to Article VIII, item 1 of the Custodial Agreement.) Fees are not prorated.

**9.** I HAVE RECEIVED AND READ THE IRA BOOKLET, INCLUDING THE IRA CUSTODIAL AGREEMENT AND IRA DISCLOSURE STATEMENT. I HEREBY APPOINT BEAR, STEARNS SECURITIES CORP. AS CUSTODIAN OF MY IRA IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE BEAR STEARNS IRA CUSTODIAL AGREEMENT (IRS FORM 5305–A (REV. MARCH 2002), AS MODIFIED BY BEAR STEARNS WITH RESPECT TO ARTICLE VIII THEREOF). THE TERMS OF THE AGREEMENT AS SO MODIFIED ARE INCORPORATED HEREIN BY REFERENCE AND EXPRESSLY MADE A PART OF THIS IRA APPLICATION. I UNDERSTAND THAT BEAR STEARNS HAS NO DISCRETIONARY INVESTMENT RESPONSIBILITY WITH RESPECT TO THE ASSETS HELD IN MY IRA AND THAT BEAR STEARNS WILL INVEST AND REINVEST THE ASSETS IN THE IRA ONLY ON MY DIRECTION.

I UNDERSTAND THAT THE ADOPTION OF THE IRA HAS SIGNIFICANT FEDERAL, STATE AND LOCAL TAX CONSEQUENCES AND I HAVE BEEN ADVISED BY BEAR STEARNS TO CONSULT MY ATTORNEY OR OTHER TAX ADVISOR.

I FURTHER ACKNOWLEDGE THAT ARTICLE VIII (Miscellaneous Section, item 5, Page 28) OF THE IRA CUSTODIAL AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

**DEPOSITOR:**
September 8, 2006
Date

_Robert E. Helpern_
Signature

Robert E. Helpern
Print Name

**FIRM COPY**

THSH_PJ 0000896

## FACE COPY - DO NOT WRITE ON THIS SIDE

# Customer Agreement

**BEAR STEARNS**

The Bear Stearns Companies Inc.
383 Madison Avenue
New York, New York 10179
(212) 272-2000

**THIS DOCUMENT IS A BINDING CONTRACT AND CONTAINS OBLIGATIONS THAT CAN BE ENFORCED AGAINST YOU.**

**PLEASE READ CAREFULLY, SIGN AND RETURN.**

This agreement ("Agreement") sets forth the terms and conditions on which subsidiaries of The Bear Stearns Companies Inc. will open and maintain account(s) in your name and otherwise transact business with you. Your signature confirms that you agree to and are bound by the provisions of this Agreement.

**1.    PARTIES.** The parties to this Agreement are you and all present and future subsidiaries of The Bear Stearns Companies Inc. (each subsidiary is referred to as a "Bear Stearns entity" and all the Bear Stearns entities are referred to collectively, as "Bear Stearns").

**2.    APPLICABLE LAWS, RULES AND REGULATIONS.**
(a)    All transactions shall be subject to the applicable laws, rules and regulations ("Applicable Laws") of all federal, state and self-regulatory authorities including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed.
(b)    Bear Stearns is committed to complying with U.S. statutory and regulatory requirements designed to combat money laundering and terrorist financing. The USA PATRIOT Act requires that all financial institutions obtain certain identification documents or other information in order to comply with their customer identification procedures. Until you provide the required information or documents, Bear Stearns may not be able to open or maintain account(s) or effect any transactions for you.

**3.    SATISFACTION OF YOUR LIABILITIES; SECURITY INTEREST AND LIEN.**
(a)    You agree to satisfy, upon demand, any indebtedness to Bear Stearns entity, to pay any debit balance in any of your accounts and, in the event of a sale order by you, to deliver the applicable security in good deliverable form no later than the deadline set by Bear Stearns.
(b)    All of your property held by or under the control of a Bear Stearns entity is subject to a lien to secure the payment and performance of your liabilities and obligations to each Bear Stearns entity and you hereby grant each Bear Stearns entity a lien on and a valid and first priority, perfected, continuing security interest in the following: (i) all property, including all investment property, held, carried or controlled by or through any Bear Stearns entity in which you presently have or in which you acquire an interest in the future, including all property in each account in your name, (ii) any and all rights, claims or causes of action you may now or hereafter have against any Bear Stearns entity and (iii) all proceeds of or distributions on the foregoing (collectively (i) through (iii) are referred to in this Agreement as "Collateral").
(c)    Any Collateral held by a Bear Stearns entity is held by such Bear Stearns entity as agent and bailee for itself and all other Bear Stearns entities. Each Bear Stearns entity holding Collateral shall, without your further consent, comply with (i) entitlement orders or instructions for a Bear Stearns entity with respect to the Collateral and (ii) if such Bear Stearns entity holding Collateral is a commodity intermediary, any instructions to such Bear Stearns entity from another Bear Stearns entity to apply any value distributed on account of a commodity contract. Additionally, each Bear Stearns entity holding Collateral has the right, in its sole discretion, to not comply with (i) any entitlement order or instruction from you or a third party with respect to the Collateral and (ii) any instruction from you to apply any value on account of any commodity contract, if a Bear Stearns entity requests that such order or instruction not be complied with in order to maintain security for the payment and performance of your obligations and liabilities to it. You agree that the actions of a Bear Stearns entity in not complying with orders or instructions as allowed in the preceding sentence satisfy any duties Bear Stearns may have under the New York Uniform Commercial Code ("NYUCC").
(d)    You agree that your execution of this Agreement shall constitute notice to each Bear Stearns entity of the security interest you have granted to each other Bear Stearns entity herein, and each Bear Stearns entity holding Collateral is on notice of the security interest granted to each other Bear Stearns entity.
(e)    The reasonable costs and expenses of collection of any such indebtedness or debit balance, including but not limited to attorneys' fees and expenses, shall be payable by you to Bear Stearns.
(f)    In order to secure the payment and performance of any of your outstanding liabilities and obligations to any Bear Stearns entity, Bear Stearns may, to the fullest extent permitted by law, without prior notice to you, use, apply or transfer Collateral as it determines. Unless otherwise agreed in writing, Bear Stearns may register and hold Collateral in its name or the name of its designee.
(g)    You appoint Bear Stearns with full power as your true and lawful attorney-in-fact, to the fullest extent permitted by law, for the purpose of perfecting the security interest granted in this Agreement and taking any action and executing any instrument that Bear Stearns deems necessary or advisable to accomplish the purposes of this Agreement.

**4.    REPRESENTATIONS BY YOU.** To induce Bear Stearns to transact business with you, you represent and covenant that (a) you have the right to pledge and assign Collateral to Bear Stearns; and (b) Collateral is and shall at all times be free and clear of any liens, claims or encumbrances, except in favor of a Bear Stearns entity.

**5.    DEPOSITS ON TRANSACTIONS.** Bear Stearns may require you to deposit cash or other property, acceptable to Bear Stearns, as Collateral, in your account(s) in such amounts as Bear Stearns determines in its sole discretion and you agree to comply with any such request by no later than the deadline set by Bear Stearns.

**6.    BREACH, BANKRUPTCY OR DEFAULT.**
(a)    Each Bear Stearns entity may elect to consider you in default of any or all agreements you may then have with it if (i) you do not pay any liability or perform any obligation to any Bear Stearns entity by the time you are obligated to do so; (ii) you otherwise breach, repudiate or default under this Agreement or any other agreement you may have with any Bear Stearns entity; (iii) you commence a proceeding in bankruptcy or insolvency or one is commenced against you; (iv) any guarantor, co-signer or other party (a "Responsible Party") liable on or providing security for your obligations to any Bear Stearns entity defaults in an obligation to Bear Stearns or commences a proceeding in bankruptcy or insolvency or one is commenced against it; (v) an attachment is made against your or a Responsible Party's account(s) with any Bear Stearns entity; (vi) a receiver is appointed with respect to you, any of your assets or the assets of a Responsible Party; (vii) if you are a natural person, you die or become incompetent, and if you are an entity, you merge, liquidate or dissolve; or (viii) an event, circumstance or condition occurs that, in Bear Stearns' judgment, materially impairs your creditworthiness, your ability to timely perform your obligations to Bear Stearns or otherwise causes us to view ourselves as insecure. The occurrence of any of the foregoing is referred to as an "Event of Default".
(b)    Upon the election by Bear Stearns to consider you in default, each Bear Stearns entity shall have all of the rights and remedies of a secured party upon default under the NYUCC and other Applicable Laws and may, without notice to you, among other things, (i) foreclose, collect, sell or otherwise liquidate any Collateral a Bear Stearns entity selects in its sole discretion, in any order and at any time, and apply, in a manner determined by Bear Stearns in its sole discretion, the proceeds to satisfy any of your obligations or liabilities to any Bear Stearns entity and (ii) buy any property that may have been sold short. At any sale of Collateral or other sale or purchase permitted hereunder or otherwise, Bear Stearns may sell or purchase to or from itself or third parties, and you hereby acknowledge and agree that the securities subject to such sale or purchase are instruments traded in a recognized market. You will pay each Bear Stearns entity for any losses and costs incurred by Bear Stearns as a result of any default by you. You waive marshaling of assets and any similar doctrine dealing with the application of collateral.

**7.    EXECUTION FEES AND SERVICE CHARGES.** Your account(s) will be charged brokerage commissions and/or other fees in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for other services

**BRANCH/CORRESPONDENT**

furnished to you ("Service Fees"). All such fees shall be determined by Bear Stearns. Execution Fees may be changed from time to time without prior notice to you and Service Fees may be changed from time to time upon thirty (30) days' prior written notice to you and, in each case, you agree to be bound thereby.

**8.    CONFIRMATION REPORTS AND ACCOUNT STATEMENTS.** Confirmation reports of the execution of orders shall be conclusive if not objected to in writing by you within the shorter of (i) the applicable settlement cycle of the subject transactions or (ii) three (3) business days after such documents have been transmitted to you by mail or otherwise. Statements of account(s) shall be conclusive if not objected to in writing by you within ten (10) days after transmission. In all cases, Bear Stearns reserves the right to challenge your objections.

**9.    TRUTH-IN-LENDING; DEBIT BALANCES.** You hereby acknowledge receipt of Bear Stearns' Truth-in-Lending disclosure statement. Interest will be charged on any debit balances in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any debit balance, which is not paid at the close of an interest period, will be added to the opening balance for the next interest period.

**10.    COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, fees, expenses, liabilities and damages incurred by Bear Stearns ("Costs") in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account(s) or any property therein, (iii) your or any other person authorized to act on your behalf's (A) use of or access to Electronic Service (as defined in paragraph 20 below) or (B) failure to comply with any terms, conditions or limitations applicable to such Electronic Service, (iv) any breach or failure by you to perform any term or provision of this Agreement, any other agreement between you and any Bear Stearns entity or any agreement governing your use of or access to any Electronic Service, or (v) Bear Stearns acting in reliance upon your instructions or any other person authorized to act on your behalf, if any, in each case and whether or not demand has been made therefor, you hereby authorize Bear Stearns to charge your account(s) for any and all such Costs.

**11.    NATURE OF SERVICES.** Bear Stearns will not provide you with any legal, tax or accounting advice. Bear Stearns' employees are not authorized to give you any such advice and you will not solicit or rely upon any such advice from them or from Bear Stearns whether in connection with transactions in or for any of your accounts or otherwise.

**12.    CONTROL OR RESTRICTED SECURITIES.** Prior to placing an order in connection with any securities subject to Rule 144 or 145(d) of the Securities Act of 1933, as amended, you shall advise Bear Stearns of the status of the securities and furnish us with the necessary documents to clear legal transfer. You acknowledge that there may be delays involved with the processing of control or restricted securities and that Bear Stearns will not be liable for any losses caused directly or indirectly by such delays. Bear Stearns may, in its sole discretion, require that control or restricted securities not be sold or transferred until such securities clear legal transfer.

**13.    IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Bear Stearns holds on your behalf bonds or preferred stock in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of the New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account with respect to which Bear Stearns has actual knowledge that any officer, director or employee of Bear Stearns has any financial interest until all other customers have been satisfied on an impartial lottery basis.

**14.    WAIVER, ASSIGNMENT, NOTICES AND LIMITATION OF LIABILITY.**
(a)    Neither Bear Stearns' failure to insist at any time upon strict compliance with the terms of this Agreement nor any continued course of such conduct on its part shall constitute or be considered a waiver by Bear Stearns of any of its rights or privileges hereunder. Any assignment of your rights and obligations hereunder or your interest in any property held by or through Bear Stearns without obtaining the prior written consent of an authorized representative of Bear Stearns shall be null and void. Each Bear Stearns entity reserves the right to assign any of its rights or obligations hereunder to any other Bear Stearns entity without prior notice to you. Notices and other communications (including, without limitation, margin calls) delivered, faxed, sent by express delivery service or mailed to the address provided by you shall, until Bear Stearns has received notice in writing of a different address, be deemed to have been personally delivered to you whether actually received or not. Notices and other communications may also be provided to you verbally. Such notices and other communications left for you on your answering machine, or otherwise, shall be deemed to have been delivered to you whether actually received or not. Notices and other communications from you to Bear Stearns shall be in writing. You hereby authorize Bear Stearns to accept facsimile copies of this or any other document or instruction as if it were the original and to accept signatures on facsimiles as if they were originals.
(b)    You agree that, no Bear Stearns entity shall have any liability for any consequential, incidental or any similar damages and you hereby irrevocably and unconditionally waive any right you may have to claim or recover any such damages (even if you have informed Bear Stearns of the possibility or likelihood of such damages).

**15.    FREE CREDIT BALANCES.** You hereby authorize Bear Stearns to use any free credit balance in any of your accounts in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Bear Stearns for such account(s) and for the amounts of cash so used. In accordance with applicable regulations, free credit balances are carried in customers' accounts pending, and with a view towards, reinvestment. Bear Stearns may determine not to pay interest on free credit balances representing either (i) uncollected funds or (ii) funds that are deposited and subsequently withdrawn prior to the expiration of the minimum time period required by Bear Stearns.

**16.    RESTRICTIONS ON ACCOUNTS.** Bear Stearns, in its sole discretion, may restrict or prohibit trading of securities or other property in any of your accounts and you shall nevertheless remain liable for all of your obligations and liabilities to Bear Stearns under this Agreement or otherwise.

**17.    CREDIT REPORTS AND OTHER INFORMATION.** You authorize Bear Stearns, in its sole discretion, to make or obtain reports concerning your credit standing and business conduct. You may make a written request for a description of the nature and scope of the reports made or obtained by Bear Stearns and the same will be provided to you within a reasonable period of time. You further agree to provide Bear Stearns, on request, with such additional information or certification as may be required by Bear Stearns or Applicable Laws.

**18.    SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "short". In placing any sell order for a long account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "long". The designation by you of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the sell order has been placed, that such security may be sold without restriction in the open market and that, if Bear Stearns does not have the security in its possession at the time you place the sell order, you shall deliver the security to settlement date in good deliverable form or pay to Bear Stearns any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

**THSH_PJ 0000897**

**Customer Agreement**                                                                 DOC CODE ☐ 003

**19. MARGIN AND OTHER COLLATERAL REQUIREMENTS.** *[Applicable only to margin account(s)]* You hereby agree to deposit and maintain such margin in your margin account(s), if any, as Bear Stearns may in its sole discretion require, and you agree to pay on demand any debit balance owing with respect to any of your margin accounts. In addition, you further agree to deposit promptly and maintain such other collateral with Bear Stearns as is required by Applicable Laws or any other agreement or open transaction you may have with any Bear Stearns entity. No demands, calls, tenders or notices that Bear Stearns may have made or given in the past shall obligate Bear Stearns to make or give the same in the future. Unless you advise Bear Stearns in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under The Securities Act of 1933) of the issuer of any security held in any of your accounts. Margin calls may also be communicated orally, without subsequent written confirmation.

**20. ON-LINE AND ELECTRONIC SYSTEMS.** If you or any other person authorized to act on your behalf accesses or uses any Internet site or on-line or other electronic system operated for or by Bear Stearns or any account access, trading, order entry or other services, systems, capabilities or content available through any of the foregoing (each, an "Electronic Service"), you acknowledge and agree that such Electronic Service is being made available to you or such other person without any warranty whatsoever, either express or implied, and you agree that any such access or use will be solely at your own risk, and Bear Stearns will not have any liability whatsoever relating to or arising out of any such access, use, or any problems with or failures of any Electronic Service. Moreover, you agree that if you or any person authorized to act on your behalf are given any digital certificate(s), user name(s) and/or password(s) which may be required to access or use any Electronic Services (collectively, "User Code(s)"), (a) you shall preserve the confidentiality of such User Codes; (b) you shall restrict access to the User Codes to those persons who are duly authorized to act on your behalf; (c) you shall notify Bear Stearns immediately in the event any such User Code is lost, stolen or the confidentiality of any such User Code has been compromised in any way or the authority of any person to act on your behalf has been revoked or limited; and (d) you are responsible for and will be bound by all statements made, orders entered, and instructions, trades, agreements, assents and consents communicated under any such User Code, to the same extent that the same was under your duly signed writing.

**21. CONSENT TO LOAN, PLEDGE OR USE OF SECURITIES IN MARGIN ACCOUNTS.** *[Applicable only to margin account(s)]* To the greatest extent permitted under Applicable Laws, you hereby authorize Bear Stearns to lend either to itself or to others and to otherwise use, sell or pledge any securities held by Bear Stearns in any of your margin account(s), to convey therewith all attendant rights of ownership (including voting rights) and to use all such property as collateral for Bear Stearns' general loans or other obligations or with respect to repurchase transactions. Any such property, together with all attendant rights of ownership, may be pledged, repledged, sold, hypothecated or rehypothecated or become subject to repurchase transactions either separately or in common with other property for any amounts due to Bear Stearns thereon and Bear Stearns shall have no obligations to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, (i) Bear Stearns may receive and retain certain benefits to which you will not be entitled and (ii) the securities in your margin account(s) may be used as collateral by Bear Stearns for loans made to it in excess of your indebtedness to Bear Stearns. In certain circumstances, such loans or other use may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities.

**22. LEGALLY BINDING.** You hereby agree that the terms of this Agreement shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any instruction with respect to any of your accounts was not in writing as may be required by the Statute of Frauds or any similar Applicable Laws.

**23. AMENDMENT; TERMINATION.**
(a)   You agree that Bear Stearns may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from Bear Stearns thereafter, you will have indicated your acceptance of any such modification. If you do not accept such modification, you must notify Bear Stearns in writing; your account(s) may then be terminated by Bear Stearns, after which you will remain liable to Bear Stearns for all outstanding liabilities and obligations. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Bear Stearns.
(b)   You may close any of your accounts at any time by giving Bear Stearns written notice, provided that Bear Stearns receives all securities and/or other property for which your account(s) are short and you have satisfied all of your outstanding liabilities and obligations which you owe to any Bear Stearns entity for any reason whatsoever.
(c)   Bear Stearns reserves the right to terminate this Agreement or your account(s) at any time for any reason. The provisions of this Agreement shall survive termination of this Agreement and/or closure of your account(s) insofar as they relate to obligations, liabilities, actions or failures to take action relating to, arising in or with respect to the period prior to termination of this Agreement or closure of your account(s).
(d)   On termination of this Agreement or closure of your account(s), it will be your responsibility to issue instructions in writing with regard to the assets held in your account(s). Unless and until Bear Stearns receives such instructions, it will be under no obligation to take any action with regard to your assets. You agree that you will be responsible for any transaction costs associated with your instructions, including commissions and related costs.

**24.   GOVERNING LAW.** THIS AGREEMENT SHALL BE GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25.   ARBITRATION; CONSENT TO JURISDICTION; SERVICE OF PROCESS.**
(a)   THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE. BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:
• ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.
• ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.
• THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS.
• THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.
• THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
• THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.
• THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.
• NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL:
(i)    THE CLASS CERTIFICATION IS DENIED; OR
(ii)   THE CLASS IS DECERTIFIED; OR
(iii)  THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.
SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

BY SIGNING THIS AGREEMENT YOU AND BEAR STEARNS AGREE, THAT CONTROVERSIES
• ARISING UNDER OR RELATING TO THIS AGREEMENT OR ANY ACTIVITY   BETWEEN YOU AND BEAR STEARNS, ITS PREDECESSORS, AND ANY OF THEIR  RESPECTIVE SUCCESSORS, ASSIGNS, AND ANY OF THEIR DIRECTORS, EMPLOYEES AND ANY OTHER CONTROL PERSONS AND ANY OF THEIR AGENTS, WHETHER ARISING PRIOR TO, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS

AGREEMENT SHALL BE HELD ONLY AT THE FACILITIES OF, BEFORE AN ARBITRATION PANEL APPOINTED BY, AND PURSUANT TO THE RULES OF THE NEW YORK STOCK EXCHANGE, INC., OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. YOU MAY ELECT ONE OF THE FOREGOING FORUMS FOR ARBITRATION, BUT IF YOU FAIL TO MAKE SUCH ELECTION BY REGISTERED MAIL, OR TELEGRAM ADDRESSED TO BEAR, STEARNS SECURITIES CORP., 383 MADISON AVENUE, NEW YORK, NEW YORK 10179, ATTENTION: CHIEF LEGAL OFFICER (OR ANY OTHER ADDRESS OF WHICH YOU ARE ADVISED IN WRITING), BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM BEAR STEARNS TO MAKE SUCH ELECTION, THEN BEAR STEARNS MAY MAKE SUCH ELECTION. THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

(b)    Notwithstanding the provisions of subparagraph (a) above, either party may, at any time prior to the initial arbitration hearing pertaining to such dispute or controversy, seek by application to the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York any such temporary or provisional relief or remedy ("provisional remedy") provided for by the laws of the U.S. or the laws of the State of New York as would be available in an action based upon such dispute or controversy in the absence of an agreement to arbitrate. The parties acknowledge and agree that it is their intention to have any such application for a provisional remedy decided by the Court to which it is made and that such application shall not be referred to or settled by arbitration. No such application to either said Court for a provisional remedy, nor any act or conduct by either party in furtherance of or in opposition to such application, shall constitute a relinquishment or waiver of any right to have the underlying dispute or controversy with respect to which such application is made settled by arbitration in accordance with subparagraph (a) above.
(c)    With respect to any application for a provisional remedy and any application for judgment on an arbitration award, each party irrevocably (i) submits to the jurisdiction of the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York, (ii) waives any objection which it may have at any time to the laying of venue of any proceedings brought in any such court, waives any claim that such proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such proceedings, that such court does not have any jurisdiction over such party, and (iii) consents to service of process by certified mail, return receipt requested, to the address provided for herein.
(d)    You hereby agree to receive service of process in connection with any legal matters or actions or proceedings based upon, arising out of or relating in any way to this Agreement by confirmed, return-receipt requested mail and that delivery shall be presumed if such service is mailed to the address maintained by Bear Stearns in its records and the requested receipt is returned.

**26. SEVERABILITY.** If and to the extent any term or provision herein is or should become invalid or unenforceable, then (i) the remaining terms and provisions hereof shall be unimpaired and remain in full force and effect and (ii) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision.

**27. EXTRAORDINARY EVENTS.** Bear Stearns shall not be liable for losses caused directly or indirectly by suspension of trading, wars, civil disturbances, terrorism, strikes, natural calamities, labor or material shortages, government restrictions, acts or omissions of exchanges, specialists, markets, clearance organizations or information providers, delays in mails, delays or inaccuracies in the transmission of orders or information, governmental, exchange or self-regulatory organization laws, rules or actions, or any other causes beyond Bear Stearns' control that may or delay the performance of Bear Stearns' obligations.

**28. HEADINGS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights or obligations provided for hereunder.

**29. TELEPHONE AND ELECTRONIC COMMUNICATIONS.** You hereby authorize Bear Stearns to monitor and/or record any or all telephone and/or electronic communications between you and Bear Stearns or any Bear Stearns' employees or agents. You agree that such recordings may be used in connection with a dispute between the parties. You acknowledge that Bear Stearns may determine not to make or keep such recordings and that such determination shall not in any way affect any party's rights.

**30. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights of each Bear Stearns entity set forth in this Agreement and in each other agreement you may have with any Bear Stearns entity are cumulative and in addition to any other rights and remedies that any Bear Stearns entity may have and shall supersede any limitation on or any requirement for the exercise of such rights and remedies that is inconsistent with the terms of this or any other such agreement. The provisions of this Agreement shall supersede any inconsistent provisions of any other agreement entered into between you and any Bear Stearns entity, unless such other agreement expressly states that the terms thereof shall supersede this Agreement. You agree that you will take such action as is necessary to cooperate with Bear Stearns with respect to Collateral and delivery and perfection thereof. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Bear Stearns concerning the subject matter hereof.

**31. CAPACITY TO CONTRACT; AFFILIATIONS.** You represent that you are of legal age to enter into contracts in the state of your domicile and that, unless you have notified Bear Stearns to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc., (iii) an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities options or futures or (iv) an employee of any bank, trust company or insurance company. Persons signing on behalf of others should indicate the titles or capacities in which they are signing. If the undersigned is signing on behalf of others, the undersigned hereby represents that the person(s) or entity(ies) on whose behalf it is signing is/are authorized to enter into this Agreement and that the undersigned is duly authorized to sign this Agreement and make the representations herein in the name and on behalf of such other person(s) or entity(ies). Subject to the preceding sentence, you represent that only the undersigned has any interest in the account(s) established pursuant to this Agreement.

BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:
1.    THE SECURITIES IN YOUR MARGIN ACCOUNT(S) AND ANY SECURITIES FOR WHICH YOU HAVE NOT FULLY PAID, TOGETHER WITH ALL ATTENDANT OWNERSHIP RIGHTS, MAY BE USED BY BEAR STEARNS OR SOLD OR PLEDGED TO BEAR STEARNS OR TO OTHERS; AND
2.    YOU HAVE RECEIVED A COPY OF THIS AGREEMENT.

THIS AGREEMENT IS DATED AS OF   9/8   20  0 6
THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 25, PAGE 2

(Account Number)
_____

(Typed or Printed Name)
_____
X  *Robert C. Nol*
(Signature)
*Robert E Helpern*
(Typed or Printed Name)
_____
X
(Signature)

BRANCH/CORRESPONDENT                                                            4767 REV. 4/06

**THSH_PJ 0000898**

| Form **W-9**<br>(Rev. November 2005)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | **Give form to the<br>requester. Do not<br>send to the IRS.** |
|---|---|---|

**Name (as shown on your income tax return)**
Robert E. Helpern

**Business name, if different from above**

Check appropriate box:  ☒ Individual/Sole proprietor   ☐ Corporation   ☐ Partnership   ☐ Other ▶ ................   ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)
Redacted

City, state, and ZIP code
Redacted

Requester's name and address (optional)

List account number(s) here (optional)

*(margin: Print or type — See Specific Instructions on page 2.)*

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number**
Redacted  42166

**or**

**Employer identification number**

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here**   Signature of U.S. person ▶ *[signature]*   Date ▶ September 8, 2006

### Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:

● An individual who is a citizen or resident of the United States,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X                    Form **W-9** (Rev. 11-2005)

THSH_PJ 0000899

# BEAR STEARNS

**1 MetroTech Center North**
**Brooklyn, N.Y. 11201**

☐ 4K = 401K                    ☐ Broker Change Only
☐ C  = Cash/Mgn              ☐ IR = IRA              ☐ QP = Qual/PS/Pen/Plan
☐ CO = Corporate             ☐ JT = Joint           ☐ RI = Roth IRA
☐ CU = Custodian (UGMA)      ☐ Non-ACAT             ☐ SN = Single
☐ DR = Direct Roller         ☐ EI  = Educational    ☐ TR = Trust

# Account Transfer Form

Use this form to authorize the transfer of assets currently at another firm into your Bear Stearns account.  Complete one form for each account you are transferring.

**1. Information About Your Account.**  The registration of the account being transferred must match your Bear Stearns account (i.e., IRA to IRA).

| BEAR STEARNS ACCOUNT | | ACCOUNT BEING TRANSFERRED | |
|---|---|---|---|
| **0352** | | | |
| Bear Stearns Account Number (If available) | BSSC Clearing No. | Account Number | Broker Clearing No. |
| Account Holder Name/Account Title | | Title of Account You are Transferring (as shown on your statement) | |
| Primary Social Security or Tax Identification Number | | Name of Firm currently holding your account | |
| Joint Account Owner (if applicable) | Second SS # (if applic.) | Address of Firm | |

**2. Transfer Instructions:  Complete section A or B and, if applicable, section C.  A copy of your most recent statement is required with this form.**

**A.** ☐ **Transfer from a Brokerage Firm only**
☐ Transfer all assets in kind      ☐ Partial transfer (Complete section C below.)

**B.** ☐ **Transfer from a Bank, Mutual Fund, or Credit Union only**
☐ Transfer all assets in kind      ☐ Partial transfer      ☐ Liquidate all assets and transfer as cash
(Complete section C below.)
☐ Transfer proceeds from Certificates of Deposit AT MATURITY      ☐ Liquidate Certificates of Deposit IMMEDIATELY.  I am aware of
(Submit no earlier than 30 days prior to maturity.)      and acknowledge the penalty I will incur from an early withdrawal.

**C.** ☐ **Partial Transfer Instructions: Transfer only a portion of my account, as detailed below** (continue on a separate sheet if needed).

| Quantity | Symbol or CUSIP # | Description of Asset | Cash Balance (Indicate credit or debit) |
|---|---|---|---|
| | | | $ |
| | | | |
| | | | |

**To the Delivering Firm named above:**

If this account is a qualified retirement account, I have amended the applicable plan so that it names as successor custodian the below listed trustee. Unless otherwise indicated in the instructions above, please transfer all assets in my account to Bear, Stearns Securities Corp. I understand that to the extent any assets in my account are not readily transferable with or without penalties, such assets may not be transferred within the timeframes required by NYSE Rule 412 or similar rule of the NASD or other designated examining authority.

Unless otherwise indicated in the instructions below, I authorize you to liquidate any non-transferable proprietary money market fund assets that are part of my account and transfer the resulting credit balance to the successor custodian. I authorize you to deduct any outstanding fees due you from the credit balance in my account. If my account does not contain a credit balance, or if the credit balance in the account is insufficient to satisfy any outstanding fees due to you, I authorize you to liquidate the assets in my account to the extent necessary to satisfy that obligation. If certificates or other instruments in my account are in your physical possession, I instruct you to transfer them in good deliverable form, including affixing any necessary tax waivers, to enable the successor custodian to transfer them in his name for the purpose of sale, when and as directed by me. I understand that upon receiving a copy of this transfer instruction, you will cancel all open orders for my account on your books.

I affirm that I have destroyed or returned to you credit/debit cards and/or unused checks issued to me in connection with my securities account.

I understand that I will be contacted with respect to the disposition of any assets in my securities account that are non-transferable.

**Age 70-1/2 Restrictions – The following restrictions apply to a retirement account transfer.**

If I am over 70-1/2, I attest that none of the amount to be transferred will include the required minimum distribution for the current year pursuant to Section 401(a)(9) of the Internal Revenue Code.  If necessary, instruct your present custodian prior to effecting this transfer to either: 1) Pay your required minimum distribution to you now OR 2) Retain that amount here for distribution to you later.

**3. Owner Authorization and Agreement to Terms.**  By signing below, I (we) acknowledge reading and agree to the above terms and conditions.

| Owner/Custodian/Trustee Signature | Joint Owner Signature (if any)/Plan Administrator/Trustee | Date (Required) |
|---|---|---|
| X *[signature]* | X | *[signature]* |
| Print Name | Title/Role | Print Name | Title/Role |

**Letter of Acceptance**

BEAR STEARNS SECURITIES CORP. ("BSSC") will accept the above captioned account as SUCCESSOR CUSTODIAN/TRUSTEE.  BSSC does not accept and will not act as Custodian/ Trustee of and for any assets and/or positions which are not actually transferred to BSSC and BSSC specifically does not approve any notation on the books and records of any entity, including but not limited to any mutual fund company, that indicates, implies and/or states that BSSC is the custodian/trustee of any assets held away from BSSC.

| Successor Custodian Signature (BSSC Receiving Custodian Completes) | Date | Contact: **Bear, Stearns Securities Corp. ACAT Dept.** |
|---|---|---|
| | | **Telephone No. 347-643-2944** |
| Name of Registered Representative | Branch | R.R. No. | Telephone No. |

449 (02/06)                                    Subject to the by-laws and rules of the N.S.C.C.

# BEAR STEARNS

**DOC CODE 301**

**NEW ACCOUNT FORM INDIVIDUALS**

OFFICE #_____   ACCOUNT # _____   T ____ CK ____   ACCOUNT EXECUTIVE # _____   GROUP # _____

## A. ACCOUNT TYPE

☐ Individual
☐ JTWROS

☐ Tenants in Common
☐ Tenants by Entirety
☐ Transfer on Death

☐ IRA
☐ IRA ROTH
☐ IRA KEOUGH
☐ SEP IRA

☐ IRA Education
☐ IRA Guardian
☐ IRA Rollover

☐ Escrow Individual
☐ UGMA
☐ UTMA

☐ Other
Specify:
_____

CLASS CODE _____   SUB CLASS CODE _____   ACCOUNT TAX ID _____   GOVT. ISSUED ID [If no tax ID]] _____

## B. ACCOUNT NAME/ TITLE (In Full):

_____

_____

_____   Telephone: _____

## C. ACCOUNT MAILING ADDRESS
(If this is a P.O. Box, provide physical address in Section D)

_____

_____

_____

## D. PERMANENT ADDRESS

_____

_____

_____

## E. ACCOUNT INFORMATION

INVESTMENT OBJECTIVE: _____

**ACCOUNT WILL BE TRADING**
☐ Cash ☐ Margin ☐ Short ☐ Futures (Complete Futures Addendum)

NET WORTH: _____   ANNUAL INCOME: _____

INVESTMENT EXPERIENCE: ☐ None ☐ Low ☐ Med ☐ High

INVESTMENT ADVISOR NAME & ADDRESS (If Applicable)

_____

_____

_____

**NAME & BUSINESS ADDRESS OF PERSON WITH TRADING AUTHORITY (If Applicable)**

_____

_____

_____

Title: _____

SELL INSTRUCTIONS: ☐ 07 Hold Proceeds ☐ 08 Send to Customer

DIVIDENDS: ☐ Send Check ☐ Hold ☐ Income Acct. ☐ Direct Dep.

NAME OF AE: _____ Phone: _____

AE Trading Authority? ☐ Yes ☐ No

AE Registered in Customer's State of Residence? ☐ Yes ☐ No

Is AE Related? ☐ Yes ☐ No  State Relationship: _____

Account Introduced to AE by: _____

AE Known How Long?: _____

Trading Authorization will be: ☐ Limited ☐ Gen. Pwr. of Atty.

Initial Transaction: ☐ Shares ☐ Deposit  AMOUNT: _____

Reason for Waive of Deposit: _____

Bank and other References: _____

Have you sent forms to Customer? ☐ Yes ☐ No

Does Customer have another account with us? ☐ Yes ☐ No

Account Numbers: _____

New Acct Indiv (version 6/26/06)

Page 1 of 6


**BEAR STEARNS**

DOC CODE 301

**NEW ACCOUNT FORM INDIVIDUALS**

**ACCOUNT #** _____

**F. CLIENT / BENEFICIAL OWNER**

> This information must be filled out for EACH Individual. Please use a separate page for each Individual.

For **US Individual:** No documentation required at account opening. A copy of a driver's license or other valid, government-issued picture ID may be requested for verification purposes upon review of the account.

For **Non-US Individuals:** Please attach to this form a copy of a valid, government-issued picture ID evidencing nationality for each Individual. The documentation must be presented _prior_ to account opening.

For **Trading Authority / Power of Attorney** complete Questions 1-6.

| 1. Name [First, Middle, Last Name]: | 2. Relation to Account [see definitions page 4]: |
|---|---|
| 3. Principal Business Address:<br><br><br><br><br>Business Phone: | 4. Business Mailing Address [If different from Principal Business]: |
| 5. Is this individual a current or former Foreign Political Figure, an Immediate Family Member of Known Close Associate?  [See definition on Page 4]<br>☐ No.<br>☐ Yes.  Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity. | |
| 6. Is any Citizenship or Address associated with this individual located in a High Risk Jurisdiction?  [See list on page 5]<br>☐ No.<br>☐ Yes.  Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity. | |
| 7. Has an Account for this individual been established since 10/01/03?<br>☐Yes<br>☐No<br>If Yes, list Account Numbers: | 8. SSN or other Valid Gov't Issued ID No:<br><br>Type of ID:<br><br>Country of Issuance: |
| 9. Estimated Net Worth (US$): | 10. Annual Income (US$): |
| 11. Sources of Wealth:<br>☐Employment ☐Inheritance ☐Investment ☐Other (explain) | 12. Sources of Assets on Deposit:<br>☐Employment ☐Inheritance ☐Investment ☐Other (explain) |
| 13. Country of Citizenship: | 14. Date of Birth: |
| 15. Home Address:<br><br><br><br><br>Home Phone: | 16. Mailing Address:  [If different from Home Address] |
| 17. Occupation:<br><br>Employment Status: ☐Employed ☐Self-Employed ☐Unemployed<br><br>If employed, Employer's Name:<br><br>Member Firm?   ☐Yes ☐No | 18. Marital Status: ☐Single ☐Married<br><br><br>If married, Spouse's Occupation: |

New Acct Indiv (version 6/26/06)    Page 2 of 6

THSH_PJ 0000902

# BEAR STEARNS

**DOC CODE 301**                                **NEW ACCOUNT FORM INDIVIDUALS**

G. <u>INTERESTED PARTIES</u>

I/P # 1        # CONFIRMS _____     #STATEMENTS _____        I/P # 2        # CONFIRMS _____     #STATEMENTS _____
_____        _____
_____        _____
_____        _____
_____        _____

I/P # 3        # CONFIRMS _____     #STATEMENTS _____        I/P # 4        # CONFIRMS _____     #STATEMENTS _____
_____        _____
_____        _____
_____        _____
_____        _____

---

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____        Date: _____

---

Account Opened by: _____        Telephone Number: _____

Signature of Registered Representative: _____        Date: _____

Signature of Branch Mgr/Compliance Officer: _____        Date: _____

---

**For AML DUE DILIGENCE GROUP USE ONLY**

Date Received: _____        Commercial Vendor ID Verification: ☐Positive ☐Negative ☐Inconclusive

Name of Reviewer: _____        If Negative or Inconclusive:
                                                Valid Gov't Issued Picture ID Requested on Date: _____
Risk Level: _____

Approved by: _____

Date: _____        Final ID Approval: ☐Yes ☐No

---

New Acct Indiv (version 6/26/06)                                Page 3 of 6

THSH_PJ 0000903



**DOC CODE 301**                                   **NEW ACCOUNT FORM INDIVIDUALS**

## CLIENT / BENEFICIAL OWNER / AUTHORIZED PARTIES

**Customer:**  The nominal owner of an account.

**Custodian:**  Under the Uniform Transfer (or Gift) to Minors Act, the person appointed to manage and dispense funds for a child.

**Guardian:**  A person or entity named in a will, guardianship, or court order who is responsible for the care of minor children or incompetent adults.

**Conservator:**  A person or entity appointed by a court to manage the property and financial affairs of another (usually incompetent) person.

**Investment Advisor:**  A person who manages assets, making portfolio composition and individual security selection decisions.

**Power of Attorney:**  An instrument by which one person authorizes another to act for him in a manner which is as legally binding upon the person giving such authority as if he personally were to do the acts.

**Principal:**  A person who designates another to act as his/her attorney in fact or agent.

**Trading Authority:**  A person who is authorized to conduct trades and provide instructions for a customer's account.

**Foreign Political Figure:**  A "Foreign Political Figure" is an official of a foreign government, an official of a major foreign political party or an executive of a foreign government-owned corporation.  In addition, a Foreign Political Figure includes any corporation or other business formed by, or for the benefit of, a Foreign Political Figure.  An "Immediate Family Member" of a Foreign Political Figure includes the person's parents, siblings, spouse, children and in-laws.  A "Known Close Associate" of a Foreign Political Figure is a person who is widely and publicly known (or who is actually known by Bear Stearns or the introducing broker-dealer) to maintain a close personal or professional relationship with a Foreign Political Figure.

THSH_PJ 0000904



**BEAR STEARNS**                    DOC CODE 301                    NEW ACCOUNT FORM INDIVIDUALS

## Country & Jurisdiction Tables

| PROHIBITED | HIGH RISK | | MEDIUM RISK | | AML EQUIVALENT |
|---|---|---|---|---|---|
| Burma (Myanmar) | Afghanistan | Macau | Albania | Macedonia (FYROM) | Australia |
| | Algeria | Madagascar | Anguilla | Maldives | Austria |
| | Andorra | Malawi | Antarctica | Malaysia | Belgium |
| Cuba | Angola | Malta | Antigua and | Mali | Bermuda |
| | Armenia | Marshall Islands | Barbuda | Mauritius | Canada |
| Iran | Azerbaijan | [Majuro] | Argentina | Mexico | Denmark |
| | Bangladesh | Mauritania | Aruba | Micronesia | Finland |
| Sudan | Belarus | Moldova | Bahamas | Monaco | France |
| | Belize | Mongolia | Bahrain | Nauru | Germany |
| | Benin | Montenegro | Barbados | Oman | Greece |
| | Bolivia | Montserrat | Bhutan | Palau | Guernsey |
| | Bosnia & Herzegovina | Morocco | Botswana | Peru | Hong Kong, [China] |
| | Burkina Faso | Mozambique | Brazil | Qatar | Iceland |
| | Burundi | Namibia | British Virgin | Samoa (Western) | Ireland |
| | Cambodia | Nepal | Islands | San Marino | Italy |
| | Cameroon | Netherlands | Brunei | Senegal | Japan |
| | Central African | Antilles | Bulgaria | Slovakia | Jersey |
| | Republic | Nicaragua | Cape Verde | Slovenia | Luxembourg |
| | Chad | Niger | Cayman Islands | South Africa | Netherlands |
| | Colombia | Nigeria | Chile | South Korea | New Zealand |
| | Comoros | Niue | China, People's | St. Kitts & Nevis | Norway |
| | Congo (Both) | North Korea | Republic | St. Lucia | Portugal |
| | Cook Islands | Pakistan | Costa Rica | St. Vincent & The | Singapore |
| | Cote D'Ivoire | Palestinian | Croatia | Grenadines | Spain |
| | Cyprus | Authority | Czech Republic | Swaziland | Sweden |
| | Dominican Rep | [Gaza, West | Djibouti | Taiwan | Switzerland |
| | East Timor | Bank] | Dominica | Thailand | United Kingdom |
| | Ecuador | Panama | El Salvador | Togo | |
| | Egypt | Papua-New Guinea | Estonia | Tonga | |
| | Equatorial Guinea | Paraguay | Fiji | Trinidad and Tobago | |
| | Eritrea | Philippines | Ghana | Tunisia | |
| | Ethiopia | Poland | Gibraltar | Turkey | |
| | Gabon | Romania | Grenada | Turks and Caicos | |
| | Gambia | Russia | Hungary | United Arab Emirates | |
| | Georgia | Rwanda | India | Uruguay | |
| | Guatemala | Sao Tome & | Isle of Man | Vatican City | |
| | Guinea | Principe | Israel | Vanuatu | |
| | Guinea-Bissau | Saudi Arabia | Jordan | | |
| | Guyana | Serbia | Kuwait | | |
| | Haiti | Seychelles | | | |
| | Honduras | Sierra Leone | | | |
| | Indonesia | Solomon Islands | | | |
| | Iraq | Somalia | | | |
| | Jamaica | Sri Lanka | | | |
| | Kazakhstan | Suriname | | | |
| | Kenya | Syria | | | |
| | Kiribati | Tajikistan | | | |
| | Kyrgyzstan | Tanzania | | | |
| | Laos | Turkmenistan | | | |
| | Latvia | Tuvalu | | | |
| | Lebanon | Uganda | | | |
| | Lesotho | Ukraine | | | |
| | Liberia | Uzbekistan | | | |
| | Libya | Venezuela | | | |
| | Liechtenstein | Vietnam | | | |
| | Lithuania | Western Sahara | | | |
| | | Yemen | | | |
| | | Yugoslavia FR | | | |
| | | Zambia | | | |
| | | Zimbabwe | | | |

THSH_PJ 0000905

# FUTURES ACCOUNT ADDENDUM FOR NEW ACCOUNTS

**Type of Account**

☐ Individual          ☐ Partnership          ☐ Omnibus Account
☐ Joint               ☐ Trust                ☐ Commodity Pool
☐ Corporation         ☐ Foreign Account      ☐ Other (Specify) _____

| TRADING EXPERIENCE | NONE | 1 YEAR | 2 YEAR | OVER 3 YEARS |
|---|---|---|---|---|
| Commodities | | | | |
| Options | | | | |
| Stocks/Bonds | | | | |
| Other | | | | |

Estimated Liquid Assets: _____

Security or Commodity Accounts with Other Firms:  (List Firms):

Other Security or Commodity Accounts at Bear Stearns :

Does this account control the trading in any other account?          ☐ Yes ☐ No
Does any other person(s) control the trading of this account?        ☐ Yes ☐ No
Does any other person have a financial interest in this account?     ☐ Yes ☐ No
Does any other person guarantee this account?                        ☐ Yes ☐ No
If yes, specify:

Name: _____          Address: _____

Information regarding the commission status must be fully completed:

Commission Rates    _____    ☐ Inclusive    ☐ +Fees

Indicate how commissions will be charged:     Futures ☐ Round Turn  ☐ Half Turn
                                              Options ☐ Round Turn  ☐ Half Turn
Indicate if account is to be converted to US$:    ☐ Yes ☐ No

**Foreign Commodity Exchanges:**  Indicate the foreign commodity exchanges account will be trading and the native currency rates to be charged:

Exchange: _____
Rate: _____

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____    Date: _____

Signature of Registered Representative:    _____    Date: _____

Signature of Branch Mgr/Compliance Officer:    _____    Date: _____

New Acct Indiv (version 6/26/06)                                                    Page 6 of 6

THSH_PJ 0000906

DOCUMENT DEPARTMENT USE ONLY - DO NOT WRITE IN THIS AREA     DOC CODE    013   080   181

**BEAR STEARNS**

**BEAR, STEARNS SECURITIES CORP.**
**INDIVIDUAL RETIREMENT ACCOUNT**
**APPLICATION**

DATE _____

ACCOUNT NUMBER _____

**1. (PLEASE PRINT)**  Neil Botwinoff    Redacted    Redacted 5 1 7 4

Nam _____

Mail    Redacted

Redacted    State    \    Zip Code

Name of Working Spouse (If IRA for Nonworking Spouse)

**2.**

| (A) INITIAL CONTRIBUTION: | (B) CHECK ONE: | (C) CHECK IF APPLICABLE: |
|---|---|---|
| : $ _____ -OR- <br> (year)   (amount) | ☐ Rollover or ☐ Transfer <br>(If a Transfer, also complete a Bear Stearns Transfer Form, which may be obtained from your Account Executive or advisor.) -OR- | ☐ SEP/IRA |

**3. DESIGNATION OF BENEFICIARY:** If I die before my entire interest in the IRA has been distributed under Article IV of the Individual Retirement Account Custodial Agreement, it is my intention that the balance of the account shall be distributed to:

☐ **PRIMARY BENEFICIARY**  Stephen Botwinoff    brother    100%

Nam _____    Sc _____ Redacted _____    Percentage

Mail    Redacted    Date of Birth

City    Zip Code

**4.** ☐ **ADDITIONAL BENEFICIARY OR** ☐ **CONTINGENT BENEFICIARY: (CHECK ONE ONLY)**

| Name | Relationship | Social Security No. | Percentage |
|---|---|---|---|
| Mailing Address | | Date of Birth | |
| City | State | Zip Code | |

**5.** ☐ **ADDITIONAL BENEFICIARY OR** ☐ **CONTINGENT BENEFICIARY: (CHECK ONE ONLY)**

| Name | Relationship | Social Security No. | Percentage |
|---|---|---|---|
| Mailing Address | | Date of Birth | |
| City | State | Zip Code | |

I may change or revoke this designation without notice to any beneficiary by completing a new form. Any such change or revocation shall be effective on the date Bear Stearns receives such notice. I understand that if no beneficiary designation is in effect at the time of my death, or if the designated beneficiary dies before my death, or if Bear Stearns is unable to readily locate the designated beneficiary, the balance of my account will be paid to my spouse if surviving, or if none, to my children in equal shares per stirpes, or if none, to my estate.

**6.** ☐ **DATE OF CHANGE OF BENEFICIARY DESIGNATION:** _____ / _____ / _____
Month   Day   Year

**7. UNINVESTED CASH:** I authorize and direct Bear Stearns to automatically invest daily in the money market fund I select any uninvested cash held in the account. Further, I understand that if I do not select a money market fund, my account will not earn interest on any uninvested cash.

**8. ANNUAL MAINTENANCE FEE PER ACCOUNT:** $35. Termination fee per account: $50. (For additional information on Custodial Fees, please refer to Article VIII, item 1 of the Custodial Agreement.) Fees are not prorated.

**9.** I HAVE RECEIVED AND READ THE IRA BOOKLET, INCLUDING THE IRA CUSTODIAL AGREEMENT AND IRA DISCLOSURE STATEMENT. I HEREBY APPOINT BEAR, STEARNS SECURITIES CORP. AS CUSTODIAN OF MY IRA IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE BEAR STEARNS IRA CUSTODIAL AGREEMENT (IRS FORM 5305-A (REV. MARCH 2002), AS MODIFIED BY BEAR STEARNS WITH RESPECT TO ARTICLE VIII THEREOF). THE TERMS OF THE AGREEMENT AS SO MODIFIED ARE INCORPORATED HEREIN BY REFERENCE AND EXPRESSLY MADE A PART OF THIS IRA APPLICATION. I UNDERSTAND THAT BEAR STEARNS HAS NO DISCRETIONARY INVESTMENT RESPONSIBILITY WITH RESPECT TO THE ASSETS HELD IN MY IRA AND THAT BEAR STEARNS WILL INVEST AND REINVEST THE ASSETS IN THE IRA ONLY ON MY DIRECTION.

I UNDERSTAND THAT THE ADOPTION OF THE IRA HAS SIGNIFICANT FEDERAL, STATE AND LOCAL TAX CONSEQUENCES AND I HAVE BEEN ADVISED BY BEAR STEARNS TO CONSULT MY ATTORNEY OR OTHER TAX ADVISOR.

I FURTHER ACKNOWLEDGE THAT ARTICLE VIII (Miscellaneous Section, item 5, Page 28) OF THE IRA CUSTODIAL AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

**DEPOSITOR:**

_____
Date

Signature _____

Neil Botwinoff
Print Name

**FIRM COPY**

THSH_PJ 0000907

## FACE COPY - DO NOT WRITE ON THIS SIDE

# Customer Agreement

**BEAR STEARNS**
The Bear Stearns Companies Inc.
383 Madison Avenue
New York, New York 10179
(212) 272-2000

**THIS DOCUMENT IS A BINDING CONTRACT AND CONTAINS OBLIGATIONS THAT CAN BE ENFORCED AGAINST YOU.**

**PLEASE READ CAREFULLY, SIGN AND RETURN.**

This agreement ("Agreement") sets forth the terms and conditions on which subsidiaries of The Bear Stearns Companies Inc. will open and maintain account(s) in your name and otherwise transact business with you. Your signature confirms that you agree to and are bound by the provisions of this Agreement.

**1. PARTIES.** The parties to this Agreement are you and all present and future subsidiaries of The Bear Stearns Companies Inc. (each subsidiary is referred to as a "Bear Stearns entity" and all the Bear Stearns entities are referred to collectively, as "Bear Stearns").

**2. APPLICABLE LAWS, RULES AND REGULATIONS.**
(a) All transactions shall be subject to the applicable laws, rules and regulations ("Applicable Laws") of all federal, state and self-regulatory authorities including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed.
(b) Bear Stearns is committed to complying with U.S. statutory and regulatory requirements designed to combat money laundering and terrorist financing. The USA PATRIOT Act requires that all financial institutions obtain certain identification documents or other information in order to comply with their customer identification procedures. Until you provide the required information or documents, Bear Stearns may not be able to open or maintain account(s) or effect any transactions for you.

**3. SATISFACTION OF YOUR LIABILITIES; SECURITY INTEREST AND LIEN.**
(a) You agree to satisfy, upon demand, any indebtedness to a Bear Stearns entity, to pay any debit balance in any of your accounts and, in the event of a sale order by you, to deliver the applicable security in good deliverable form no later than the deadline set by Bear Stearns.
(b) All of your property held by or under the control of a Bear Stearns entity is subject to a lien to secure the payment and performance of your liabilities and obligations to each Bear Stearns entity and you hereby grant each Bear Stearns entity a lien on and a valid and first priority, perfected, continuing security interest in the following: (i) all property, including all investment property, held, carried or controlled by or through any Bear Stearns entity in which you presently have or in which you acquire an interest in the future, including all property in each account in your name, (ii) any and all rights, claims or causes of action you may now or hereafter have against any Bear Stearns entity and (iii) all proceeds of or distributions on the foregoing (collectively (i) through (iii) are referred to in this Agreement as "Collateral").
(c) Any Collateral held by a Bear Stearns entity is held by such Bear Stearns entity as agent and bailee for itself and all other Bear Stearns entities. Each Bear Stearns entity holding Collateral shall, without your further consent, comply with (i) entitlement orders or instructions for a Bear Stearns entity with respect to the Collateral and (ii) if such Bear Stearns entity holding Collateral is a commodity intermediary, any instructions to such Bear Stearns entity from another Bear Stearns entity to apply any value distributed on account of a commodity contract. Additionally, each Bear Stearns entity holding Collateral has the right, in its sole discretion, to not comply with (i) any entitlement order or instruction from you or a third party with respect to the Collateral and (ii) any instruction from you to apply any value on account of any commodity contract, if a Bear Stearns entity requests that such order or instruction not be complied with in order to maintain security for the payment and performance of your obligations and liabilities to it. You agree that the actions of a Bear Stearns entity in not complying with orders or instructions as allowed in the preceding sentence satisfy any duties Bear Stearns may have under the New York Uniform Commercial Code ("NYUCC").
(d) You agree that your execution of this Agreement shall constitute notice to each Bear Stearns entity of the security interest you have granted to each other Bear Stearns entity herein, and each Bear Stearns entity holding Collateral is on notice of the security interest granted to each other Bear Stearns entity.
(e) The reasonable costs and expenses of collection of any such indebtedness or debit balance, including but not limited to attorneys' fees and expenses, shall be payable by you to Bear Stearns.
(f) In order to secure the payment and performance of any of your outstanding liabilities and obligations to any Bear Stearns entity, Bear Stearns may, to the fullest extent permitted by law, without prior notice to you, use, apply or transfer Collateral as it determines. Unless otherwise agreed in writing, Bear Stearns may register and hold Collateral in its name or the name of its designee.
(g) You appoint Bear Stearns with full power as your true and lawful attorney-in-fact, to the fullest extent permitted by law, for the purpose of perfecting the security interest granted in this Agreement and taking any action and executing any instrument that Bear Stearns deems necessary or advisable to accomplish the purposes of this Agreement.

**4. REPRESENTATIONS BY YOU.** To induce Bear Stearns to transact business with you, you represent and covenant that (a) you have the right to pledge and assign Collateral to Bear Stearns; and (b) Collateral is and shall at all times be free and clear of any liens, claims or encumbrances, except in favor of a Bear Stearns entity.

**5. DEPOSITS ON TRANSACTIONS.** Bear Stearns may require you to deposit cash or other property, acceptable to Bear Stearns, as Collateral, in your account(s) in such amounts as Bear Stearns determines in its sole discretion and you agree to comply with any such request by no later than the deadline set by Bear Stearns.

**6. BREACH, BANKRUPTCY OR DEFAULT.**
(a) Each Bear Stearns entity may elect to consider you in default of any or all agreements you may then have with it if (i) you do not pay any liability or perform any obligation to any Bear Stearns entity by the time you are obligated to do so; (ii) you otherwise breach, repudiate or default under this Agreement or any other agreement you may have with any Bear Stearns entity; (iii) you commence a proceeding in bankruptcy or insolvency or one is commenced against you; (iv) any guarantor, co-signer or other party (a "Responsible Party") liable on or providing security for your obligations to any Bear Stearns entity defaults in an obligation to Bear Stearns or commences a proceeding in bankruptcy or insolvency or one is commenced against it; (v) an attachment is made against your or a Responsible Party's account(s) with any Bear Stearns entity; (vi) a receiver is appointed with respect to you, any of your assets or the assets of a Responsible Party; (vii) if you are a natural person, you die or become incompetent, and if you are an entity, you merge, liquidate or dissolve; or (viii) an event, circumstance or condition occurs that, in Bear Stearns' judgment, materially impairs your creditworthiness, your ability to timely perform your obligations to Bear Stearns or otherwise causes us to view ourselves as insecure. The occurrence of any of the foregoing is referred to as an "Event of Default".
(b) Upon the election by Bear Stearns to consider you in default, each Bear Stearns entity shall have all of the rights and remedies of a secured party upon default under the NYUCC and other Applicable Laws and may, without notice to you, among other things, (i) foreclose, collect, sell or otherwise liquidate any Collateral a Bear Stearns entity selects in its sole discretion, in any order and at any time, and apply, in a manner determined by Bear Stearns in its sole discretion, the proceeds to satisfy any of your obligations or liabilities to any Bear Stearns entity and (ii) buy any property that may have been sold short. At any sale of Collateral or other sale or purchase permitted hereunder or otherwise, Bear Stearns may sell or purchase to or from itself or third parties, and you hereby acknowledge and agree that the securities subject to such sale or purchase are instruments traded in a recognized market. You will pay each Bear Stearns entity for any losses and costs incurred by Bear Stearns as a result of any default by you. You waive marshalling of assets and any similar doctrine dealing with the application of collateral.

**7. EXECUTION FEES AND SERVICE CHARGES.** Your account(s) will be charged brokerage commissions and/or other fees in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for other services

furnished to you ("Service Fees"). All such fees shall be determined by Bear Stearns. Execution Fees may be changed from time to time upon prior notice to you and Service Fees may be changed from time to time upon thirty (30) days' prior written notice to you and, in each case, you agree to be bound thereby.

**8. CONFIRMATION AND ACCOUNT STATEMENTS.** Confirmation reports of the execution of orders shall be conclusive if not objected to in writing by you within the shorter of (i) the applicable settlement cycle of the subject transactions or (ii) three (3) business days after such documents have been transmitted to you by mail or electronic means. Statements of account(s) shall be conclusive if not objected to in writing by you within ten (10) days after transmission. In all cases, Bear Stearns reserves the right to challenge your objections.

**9. TRUTH-IN-LENDING; DEBIT BALANCES.** You hereby acknowledge receipt of Bear Stearns' Truth-in-Lending disclosure statement. Interest will be charged on any debit balances in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any debit balance, which is not paid at the close of an interest period, will be added to the opening balance for the next interest period.

**10. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, fees, expenses, liabilities and damages incurred by Bear Stearns ("Costs") in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account(s) or any property therein, (iii) your or any other person authorized to act on your behalf's (A) use of or access to Electronic Service (as defined in paragraph 20 below) or (B) failure to comply with any terms, conditions or limitations applicable to such Electronic Service, (iv) any breach or failure by you to perform any term or provision of this Agreement, any other agreement between you and any Bear Stearns entity or any agreement governing your use of or access to any Electronic Service, or (v) Bear Stearns acting in reliance upon your instructions or any other person authorized to act on your behalf, if any. In each case and whether or not demand has been made therefor, you hereby authorize Bear Stearns to charge your account(s) for any and all such Costs.

**11. NATURE OF SERVICES.** Bear Stearns will not provide you with any legal, tax or accounting advice. Bear Stearns' employees are not authorized to give you any such advice and you will not solicit or rely upon any such advice from them or from Bear Stearns whether in connection with transactions in or for any of your accounts or otherwise.

**12. CONTROL OR RESTRICTED SECURITIES.** Prior to placing an order in connection with any securities subject to Rule 144 or 145(d) of the Securities Act of 1933, as amended, you shall advise Bear Stearns of the status of the securities and furnish us with the necessary documents to clear legal transfer. You acknowledge that there may be delays involved with the processing of control or restricted securities and that Bear Stearns will not be liable for any losses caused directly or indirectly by such delays. Bear Stearns may, in its sole discretion, require that control or restricted securities not be sold or transferred until such securities clear legal transfer.

**13. IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Bear Stearns holds on your behalf bonds or preferred stock in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of the New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account with respect to which Bear Stearns has actual knowledge that any officer, director or employee of Bear Stearns has any financial interest until all other customers have been satisfied on an impartial lottery basis.

**14. WAIVER, ASSIGNMENT, NOTICES AND LIMITATION OF LIABILITY.**
(a) Neither Bear Stearns' failure to insist at any time upon strict compliance with the terms of this Agreement nor any continued course of such conduct on its part shall constitute or be considered a waiver by Bear Stearns of any of its rights or privileges hereunder. Any assignment of your rights and obligations hereunder or your interest in any property held by or through Bear Stearns without obtaining the prior written consent of an authorized representative of Bear Stearns shall be null and void. Each Bear Stearns entity reserves the right to assign any of its rights or obligations hereunder to any other Bear Stearns entity without prior notice to you. Notices and other communications (including, without limitation, margin calls) delivered, faxed, sent by express delivery service or mailed to the address provided by you shall, until Bear Stearns has received notice in writing of a different address, be deemed to have been personally delivered to you whether actually received or not. Notices and other communications may also be provided to you verbally. Such notices and other communications left for you on your answering machine, or otherwise, shall be deemed to have been delivered to you whether actually received or not. Notices and other communications from you to Bear Stearns shall be in writing. You hereby authorize Bear Stearns to accept facsimile copies of this or any other document or instruction as if it were the original and to accept signatures on facsimiles as if they were originals.
(b) You agree that, no Bear Stearns entity shall have any liability for any consequential, incidental or any similar damages and you hereby irrevocably and unconditionally waive any right you may have to claim or recover any such damages (even if you have informed Bear Stearns of the possibility or likelihood of such damages).

**15. FREE CREDIT BALANCES.** You hereby authorize Bear Stearns to use any free credit balance in any of your accounts in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Bear Stearns for such account(s) and for the amounts of cash so used. In accordance with applicable regulations, free credit balances are carried in customers' accounts pending, and with a view towards, reinvestment. Bear Stearns may determine not to pay interest on free credit balances representing either (i) uncollected funds or (ii) funds that are deposited and subsequently withdrawn prior to the expiration of the minimum time period required by Bear Stearns.

**16. RESTRICTIONS ON ACCOUNTS.** Bear Stearns, in its sole discretion, may restrict or prohibit trading of securities or other property in any of your accounts and you shall nevertheless remain liable for all of your obligations and liabilities to Bear Stearns under this Agreement or otherwise.

**17. CREDIT REPORTS AND OTHER INFORMATION.** You authorize Bear Stearns, in its sole discretion, to make or obtain reports concerning your credit standing and business conduct. You may make a written request for a description of the nature and scope of the reports made or obtained about you by Bear Stearns and the same will be provided to you within a reasonable period of time. You further agree to provide Bear Stearns, on request, with such additional information or certification as may be required by Bear Stearns or Applicable Laws.

**18. SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "short". In placing any sell order for a long account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "long". The designation by you of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the sell order has been placed, that such security may be sold without restriction in the open market and that, if Bear Stearns does not have the security in its possession at the time you place the sell order, you shall deliver the security by settlement date in good deliverable form or pay to Bear Stearns any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

BRANCH/CORRESPONDENT

THSH_PJ 0000908

**Customer Agreement**    DOC CODE ☐ 003

**19. MARGIN AND OTHER COLLATERAL REQUIREMENTS.** *[Applicable only to margin account(s)]* If you hereby agree to deposit and maintain such margin in your margin account(s), if any, as Bear Stearns may in its sole discretion require, and you agree to pay on demand any debit balance owing with respect to any of your margin accounts. In addition, you further agree to deposit promptly and maintain such other collateral with Bear Stearns as is required by Applicable Laws or any other agreement or open transaction you may have with any Bear Stearns entity. No demands, calls, tenders or notices that Bear Stearns may have made or given in the past shall obligate Bear Stearns to make or give the same in the future. Unless you advise Bear Stearns in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under The Securities Act of 1933) of the issuer of any security held in any of your accounts. Margin calls may also be communicated orally, without subsequent written confirmation.

**20. ON-LINE AND ELECTRONIC SYSTEMS.** If you or any other person authorized to act on your behalf accesses or uses any Internet site or on-line or other electronic system operated for or by Bear Stearns or any account access, trading, order entry or other services, systems, capabilities or content available through any of the foregoing (each, an "Electronic Service"), you acknowledge and agree that such Electronic Service is being made available to you or such other person without any warranty whatsoever, either express or implied, and you agree that any such access or use will be solely at your own risk, and Bear Stearns will not have any liability whatsoever relating to or arising out of any such access, use, or any problems with or failures of any Electronic Service. Moreover, you agree that if you or any person authorized to act on your behalf are given any digital certificate(s), user name(s) and/or password(s) which may be required to access or use any Electronic Services (collectively, "User Code(s)"), (a) you shall preserve the confidentiality of such User Codes; (b) you shall restrict access to the User Codes to those persons who are duly authorized to act on your behalf; (c) you shall notify Bear Stearns immediately in the event any such User Code is lost, stolen or the confidentiality of any such User Code has been compromised in any way or the authority of any person to act on your behalf has been revoked or limited; and (d) you are responsible for and will be bound by all statements made, orders entered, and instructions, trades, agreements, assents and consents communicated under any such User Code, to the same extent that the same was under your duly signed writings.

**21. CONSENT TO LOAN, PLEDGE OR USE OF SECURITIES IN MARGIN ACCOUNTS.** *[Applicable only to margin account(s)]* To the greatest extent permitted under Applicable Laws, you hereby authorize Bear Stearns to lend either to itself or to others and to otherwise use, sell or pledge any securities held by Bear Stearns in any of your margin account(s), to convey therewith all attendant rights of ownership (including voting rights) and to use all such property as collateral for Bear Stearns' general loans or other obligations or with respect to repurchase transactions. Any such property, together with all attendant rights of ownership, may be pledged, repledged, sold, hypothecated or rehypothecated or become subject to repurchase transactions either separately or in common with other property for any amounts due to Bear Stearns thereon and Bear Stearns shall have no obligations to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, (i) Bear Stearns may receive and retain certain benefits to which you will not be entitled and (ii) the securities in your margin account(s) may be used as collateral by Bear Stearns for loans made to it in excess of your indebtedness to Bear Stearns. In certain circumstances, such loans or other use may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities.

**22. LEGALLY BINDING.** You hereby agree that the terms of this Agreement shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any instruction with respect to any of your accounts was not in writing as may be required by the Statute of Frauds or any similar Applicable Laws.

**23. AMENDMENT; TERMINATION.**
(a)   You agree that Bear Stearns may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from Bear Stearns thereafter, you will have indicated your acceptance of any such modification. If you do not accept such modification, you must notify Bear Stearns in writing, your account(s) may then be terminated by Bear Stearns, after which you will remain liable to Bear Stearns for all outstanding liabilities and obligations. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Bear Stearns.
(b)   You may close any of your accounts at any time by giving Bear Stearns written notice, provided that Bear Stearns receives all securities and/or other property for which your account(s) are short and you have satisfied all of your outstanding liabilities and obligations which you owe to any Bear Stearns entity for any reason whatsoever.
(c)   Bear Stearns reserves the right to terminate this Agreement or your account(s) at any time for any reason. The provisions of this Agreement shall survive termination of this Agreement and/or closure of your account(s) insofar as they relate to obligations, liabilities, actions or failures to take action relating to, arising in or with respect to the period prior to termination of this Agreement or closure of your account(s).
(d)   On termination of this Agreement or closure of your account(s), it will be your responsibility to issue instructions in writing with regard to the assets held in your account(s). Unless and until Bear Stearns receives such instructions, it will be under no obligation to take any action with regard to your assets. You agree that you will be responsible for any transaction costs associated with your instructions, including commissions and related costs.

**24. GOVERNING LAW.** THIS AGREEMENT SHALL BE GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25. ARBITRATION; CONSENT TO JURISDICTION; SERVICE OF PROCESS.**
(a)   THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE. BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:
• ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.
• ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.
• THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS.
• THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.
• THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
• THE RULES OF THE ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.
• THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.
• NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL:
   (i)      THE CLASS CERTIFICATION IS DENIED; OR
   (ii)     THE CLASS IS DECERTIFIED; OR
   (iii)    THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.
SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

BY SIGNING THIS AGREEMENT YOU AND BEAR STEARNS AGREE, THAT CONTROVERSIES
• ARISING UNDER OR RELATING TO THIS AGREEMENT OR ANY ACTIVITY BETWEEN YOU AND BEAR STEARNS, ITS PREDECESSORS, AND ANY OF THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND ANY OF THEIR DIRECTORS, EMPLOYEES AND ANY OTHER CONTROL PERSONS AND ANY OF THEIR AGENTS, WHETHER ARISING PRIOR TO, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS

AGREEMENT SHALL BE HELD ONLY AT THE FACILITIES OF, BEFORE AN ARBITRATION PANEL APPOINTED BY, AND PURSUANT TO THE RULES OF THE NEW YORK STOCK EXCHANGE, INC., OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. YOU MAY ELECT ONE OF THE FOREGOING FORUMS FOR ARBITRATION, BUT IF YOU FAIL TO MAKE SUCH ELECTION BY REGISTERED MAIL OR TELEGRAM ADDRESSED TO BEAR, STEARNS SECURITIES CORP., 383 MADISON AVENUE, NEW YORK, NEW YORK 10179, ATTENTION: CHIEF LEGAL OFFICER (OR ANY OTHER ADDRESS OF WHICH YOU ARE ADVISED IN WRITING), BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM BEAR STEARNS TO MAKE SUCH ELECTION, THEN BEAR STEARNS MAY MAKE SUCH ELECTION. THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

(b)   Notwithstanding the provisions of subparagraph (a) above, either party may, at any time prior to the initial arbitration hearing pertaining to such dispute or controversy, seek by application to the U.S. District Court of New York or the Supreme Court of the State of New York for the County of New York any such temporary or provisional relief or remedy ("provisional remedy") provided for by the laws of the U.S. or the laws of the State of New York as would be available in an action based upon such dispute or controversy in the absence of an agreement to arbitrate. The parties acknowledge and agree that it is their intention to have any such application for a provisional remedy decided by the Court to which it is made and that such application shall not be referred to or settled by arbitration. No such application to either said Court for a provisional remedy, nor any act or conduct by either party in furtherance of or in opposition to such application, shall constitute a relinquishment or waiver of any right to have the underlying dispute or controversy with respect to which such application is made settled by arbitration in accordance with subparagraph (a) above.
(c)   With respect to any application for a provisional remedy and any application for judgment on an arbitration award, each party irrevocably (i) submits to the jurisdiction of the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York, (ii) waives any objection which it may have at any time to the laying of venue of any proceedings brought in any such court, waives any claim that such proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such proceedings, that such court does not have any jurisdiction over such party, and (iii) consents to service of process by certified mail, return receipt requested, to the address provided for herein.
(d)   You hereby agree to receive service of process in connection with any legal matters or actions or proceedings based upon, arising out of or relating in any way to this Agreement by confirmed, return-receipt requested mail and that delivery shall be presumed if such service is mailed to the address maintained by Bear Stearns in its records and the requested receipt is returned.

**26. SEVERABILITY.** If and to the extent any term or provision herein is or should become invalid or unenforceable, then (i) the remaining terms and provisions hereof shall be unimpaired and remain in full force and effect and (ii) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision.

**27. EXTRAORDINARY EVENTS.** Bear Stearns shall not be liable for losses caused directly or indirectly by suspension of trading, wars, civil disturbances, terrorism, strikes, natural calamities, labor or material shortages, government restrictions, acts or omissions of exchanges, specialists, markets, clearance organizations or information providers, delays in mails, delays or inaccuracies in the transmission of orders or information, governmental, exchange or self-regulatory organization laws, rules or actions, or any other causes beyond Bear Stearns' control that may or delay the performance of Bear Stearns' obligations.

**28. HEADINGS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights or obligations provided for hereunder.

**29. TELEPHONE AND ELECTRONIC COMMUNICATIONS.** You hereby authorize Bear Stearns to monitor and/or record any or all telephone and/or electronic communications between you and Bear Stearns or any of Bear Stearns' employees or agents. You agree that such recordings may be used in connection with a dispute between the parties. You acknowledge that Bear Stearns may determine not to make or keep such recordings and that such determination shall not in any way affect any party's rights.

**30. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights of each Bear Stearns entity set forth in this Agreement and in each other agreement you may have with any Bear Stearns entity are cumulative and in addition to any other rights and remedies that any Bear Stearns entity may have and shall supersede any limitation on or any requirement for the exercise of such rights and remedies that is inconsistent with the terms of this or any other such agreement. The provisions of this Agreement shall supersede any inconsistent provisions of any other agreement entered into between you and any Bear Stearns entity, unless such other agreement expressly states that the terms thereof shall supersede this Agreement. You agree that you will take such action as is necessary to cooperate with Bear Stearns with respect to Collateral and delivery and perfection thereof. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Bear Stearns concerning the subject matter hereof.

**31. CAPACITY TO CONTRACT; AFFILIATIONS.** You represent that you are of legal age to enter into contracts in the states of your domicile and that, unless you have notified Bear Stearns to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of The National Association of Securities Dealers, Inc., (iii) an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities options or futures or (iv) an employee of any bank, trust company or insurance company. Persons signing on behalf of others should indicate the titles or capacities in which they are signing. If the undersigned is signing on behalf of others, the undersigned hereby represents that the person(s) or entity(ies) on whose behalf it is signing is/are authorized to enter into this Agreement and that the undersigned is duly authorized to sign this Agreement and make the representations herein in the name and on behalf of such other person(s) or entity(ies). Subject to the preceding sentence, you represent that only the undersigned has any interest in the account(s) established pursuant to this Agreement.

**BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:**
1.   THE SECURITIES IN YOUR MARGIN ACCOUNT(S) AND ANY SECURITIES FOR WHICH YOU HAVE NOT FULLY PAID, TOGETHER WITH ALL ATTENDANT OWNERSHIP RIGHTS, MAY BE USED BY BEAR STEARNS OR SOLD OR PLEDGED TO BEAR STEARNS OR TO OTHERS; AND
2.   YOU HAVE RECEIVED A COPY OF THIS AGREEMENT.

THIS AGREEMENT IS DATED AS OF _____, 20 _____

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 25, PAGE 2

(Account Number)
_____

_____
(Typed or Printed Name)

X _____
(Signature)

_____
(Typed or Printed Name)

X _____
(Signature)

BRANCH/CORRESPONDENT                                    4767 REV. 4/05

THSH_PJ 0000909

Form **W-9**
(Rev. November 2005)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

**Give form to the
requester. Do not
send to the IRS.**

Name (as shown on your income tax return)

*Neil E. Botwinoff*

Business name, if different from above

Check appropriate box:   ☐ Individual/Sole proprietor   ☐ Corporation   ☐ Partnership   ☐ Other ▶ ----------------   ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)

# Redacted

Requester's name and address (optional)

List account number(s) here (optional)

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

Redacted 5 8 7 4

**or**

Employer identification number

## Part II    Certification

Under penalties of perjury, I certify that:

1.  The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2.  I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3.  I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here**   Signature of U.S. person ▶   Date ▶ 8/11/06

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:

● An individual who is a citizen or resident of the United States,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X

Form **W-9** (Rev. 11-2005)

# BEAR STEARNS

1 MetroTech Center North
Brooklyn, N.Y. 11201

- ☐ 4K = 401K          ☐ Broker Change Only
- ☐ C  = Cash/Mgn       ☐ IR = IRA          ☐ QP = Qual/PS/Pen/Plan
- ☐ CO = Corporate      ☐ JT = Joint        ☐ RI = Roth IRA
- ☐ CU = Custodian (UGMA)   ☐ Non-ACAT     ☐ SN = Single
- ☐ DR = Direct Roller  ☐ EI = Educational  ☐ TR = Trust

## Account Transfer Form

Use this form to authorize the transfer of assets currently at another firm into your Bear Stearns account. Complete one form for each account you are transferring.

**1. Information About Your Account.** The registration of the account being transferred must match your Bear Stearns account (i.e., IRA to IRA).

| BEAR STEARNS ACCOUNT | | ACCOUNT BEING TRANSFERRED | |
|---|---|---|---|
| 0352 | | | |
| Bear Stearns Account Number (If available) | BSSC Clearing No. | Account Number | Broker Clearing No. |
| Neil E. Botwinoff | | | |
| Acco  Redacted  5874 | | Title of Account You are Transferring (as shown on your statement) | |
| Primary Social Security or Tax Identification Number | | Name of Firm currently holding your account | |
| Joint Account Owner (if applicable) | Second SS # (if applic.) | Address of Firm | |

**2. Transfer Instructions:** Complete section A or B and, if applicable, section C.  A copy of your most recent statement is required with this form.

**A.**  ☐ **Transfer from a Brokerage Firm only**

  ☐ Transfer all assets in kind     ☐ Partial transfer (Complete section C below.)

**B.**  ☐ **Transfer from a Bank, Mutual Fund, or Credit Union only**

  ☐ Transfer all assets in kind     ☐ Partial transfer     ☐ Liquidate all assets and transfer as cash
                                      (Complete section C below.)

  ☐ Transfer proceeds from Certificates of Deposit AT MATURITY     ☐ Liquidate Certificates of Deposit IMMEDIATELY. I am aware of
  (Submit no earlier than 30 days prior to maturity.)                and acknowledge the penalty I will incur from an early withdrawal.

**C.**  ☐ Partial Transfer Instructions: Transfer only a portion of my account, as detailed below (continue on a separate sheet if needed).

| Quantity | Symbol or CUSIP # | Description of Asset | Cash Balance (Indicate credit or debit) |
|---|---|---|---|
| | | | $ |
| | | | |
| | | | |

**To the Delivering Firm named above:**

If this account is a qualified retirement account, I have amended the applicable plan so that it names as successor custodian the below listed trustee. Unless otherwise indicated in the instructions above, please transfer all assets in my account to Bear, Stearns Securities Corp. I understand that to the extent any assets in my account are not readily transferable with or without penalties, such assets may not be transferred within the timeframes required by NYSE Rule 412 or similar rule of the NASD or other designated examining authority.

Unless otherwise indicated in the instructions below, I authorize you to liquidate any non-transferable proprietary money market fund assets that are part of my account and transfer the resulting credit balance to the successor custodian. I authorize you to deduct any outstanding fees due you from the credit balance in my account.  If my account does not contain a credit balance, or if the credit balance in the account is insufficient to satisfy any outstanding fees due to you, I authorize you to liquidate the assets in my account to the extent necessary to satisfy that obligation. If certificates or other instruments in my account are in your physical possession, I instruct you to transfer them in good deliverable form, including affixing any necessary tax waivers, to enable the successor custodian to transfer them in its name for the purpose of sale, when and as directed by me. I understand that upon receiving a copy of this transfer instruction, you will cancel all open orders for my account on your books.

I affirm that I have destroyed or returned to you credit/debit cards and/or unused checks issued to me in connection with my securities account.

I understand that I will be contacted with respect to the disposition of any assets in my securities account that are non-transferable.

**Age 70-1/2 Restrictions -- The following restrictions apply to a retirement account transfer.**

If I am over 70-1/2, I attest that none of the amount to be transferred will include the required minimum distribution for the current year pursuant to Section 401(a)(9) of the Internal Revenue Code. If necessary, instruct your present custodian prior to effecting this transfer to either: 1) Pay your required minimum distribution to you now OR 2) Retain that amount here for distribution to you later.

**3. Owner Authorization and Agreement to Terms.** By signing below, I (we) acknowledge reading and agree to the above terms and conditions.

| Owner/Custodian/Trustee Signature | Joint Owner Signature (if any)/Plan Administrator/Trustee | Date (Required) |
|---|---|---|
| X | X | 9/11/06 |
| Print Name          Title/Role | Print Name          Title/Role | |

**Letter of Acceptance**

BEAR STEARNS SECURITIES CORP. ("BSSC") will accept the above captioned account as SUCCESSOR CUSTODIAN/TRUSTEE.  BSSC does not accept and will not act as Custodian/ Trustee of and for any assets and/or positions which are not actually transferred to BSSC and BSSC specifically does not approve any notation on the books and records of any entity, including but not limited to any mutual fund company, that indicates, implies and/or states that BSSC is the custodian/trustee of any assets held away from BSSC.

| Successor Custodian Signature (BSSC Receiving Custodian Completes) | Date | Contact: **Bear, Stearns Securities Corp. ACAT Dept.** |
|---|---|---|
| | | Telephone No. 347-643-2944 |
| Name of Registered Representative | Branch | R.R. No. | Telephone No. |

449 (02/06)

Subject to the by-laws and rules of the N.S.C.C.

THSH_PJ 0000911

**BEAR STEARNS**

DOC CODE 301

**NEW ACCOUNT FORM INDIVIDUALS**

OFFICE #_____ ACCOUNT #_____ T ____ CK ____ ACCOUNT EXECUTIVE # _____ GROUP # _____

**A. ACCOUNT TYPE**

| | | | | | |
|---|---|---|---|---|---|
| ☐Individual ☐JTWROS | ☐Tenants in Common ☐Tenants by Entirety ☐Transfer on Death | ☐IRA ☐IRA ROTH ☐IRA KEOUGH ☐SEP IRA | ☐IRA Education ☐IRA Guardian ☐IRA Rollover | ☐Escrow Individual ☐UGMA ☐UTMA | ☐Other Specify: _____ |

CLASS CODE     SUB CLASS CODE     ACCOUNT TAX ID          GOVT. ISSUED ID [if no tax ID]]

_____    _____    _____          _____

**B. ACCOUNT NAME/ TITLE (In Full):**

_Neil E. Botwinoff_

_____

_____

_____     Telephone: _____

**C. ACCOUNT MAILING ADDRESS**
(If this is a P.O. Box, provide physical address in Section D)

_Tannenbaum Helpern et al_

Redacted

**D. PERMANENT ADDRESS**

# Redacted

_____

_____

**E. ACCOUNT INFORMATION**

INVESTMENT OBJECTIVE: _____

**ACCOUNT WILL BE TRADING**
☐Cash ☐Margin ☐Short ☐Futures (Complete Futures Addendum)

NET WORTH: _Redacted_ _ ANNUAL INCOME: _Redacted_

INVESTMENT EXPERIENCE: ☐None ☐Low ☐Med ☐High

**INVESTMENT ADVISOR NAME & ADDRESS (If Applicable)**

_____

_____

_____

_____

**NAME & BUSINESS ADDRESS OF PERSON WITH TRADING AUTHORITY (If Applicable)**

_____

_____

_____

_____

Title: _____

SELL INSTRUCTIONS: ☐07 Hold Proceeds ☐08 Send to Customer

DIVIDENDS: ☐Send Check ☐Hold ☐Income Acct. ☐Direct Dep.

NAME OF AE: _____ Phone: _____

AE Trading Authority?: ☐Yes ☐No

AE Registered in Customer's State of Residence? ☐Yes ☐No

Is AE Related? ☐Yes ☐No State Relationship: _____

Account Introduced to AE by: _____

AE Known How Long?: _____

Trading Authorization will be: ☐Limited ☐Gen. Pwr. of Atty.

Initial Transaction: ☐Shares ☐Deposit AMOUNT: _____

Reason for Waive of Deposit: _____

Bank and other References: _____

Have you sent forms to Customer?: ☐Yes ☐No

Does Customer have another account with us?: ☐Yes ☐No

Account Numbers: _____

New Acct Indiv (version 6/26/06)

Page 1 of 6



**BEAR STEARNS**

DOC CODE 301

**NEW ACCOUNT FORM INDIVIDUALS**

**ACCOUNT #** _____

**F. CLIENT / BENEFICIAL OWNER**

> This information must be filled out for EACH Individual. Please use a separate page for each Individual.

For **US Individual:** No documentation required at account opening. A copy of a driver's license or other valid, government-issued picture ID may be requested for verification purposes upon review of the account.

For **Non-US Individuals:** Please attach to this form a copy of a valid, government-issued picture ID evidencing nationality for each Individual. The documentation must be presented prior to account opening.

For **Trading Authority / Power of Attorney** complete Questions 1-6.

| 1. Name [First, Middle, Last Name]: | 2. Relation to Account [see definitions page 4]: |
|---|---|
| 3. Principal Business Address:<br><br><br><br><br>Business Phone: | 4. Business Mailing Address [If different from Principal Business]: |

5. Is this individual a current or former Foreign Political Figure, an Immediate Family Member of Known Close Associate? [See definition on Page 4]
☐ No.
☐ Yes. Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity.

6. Is any Citizenship or Address associated with this individual located in a High Risk Jurisdiction? [See list on page 5]
☐ No.
☐ Yes. Contact your Compliance Officer and the Anti-Money Laundering Group before conducting trading activity.

| 7. Has an Account for this Individual been established since 10/01/03?<br>☐ Yes<br>☐ No<br>If Yes, list Account Numbers: | 8. SSN or other Valid Gov't Issued ID No:<br><br>Type of ID:<br><br>Country of Issuance: |
|---|---|
| 9. Estimated Net Worth (US$): | 10. Annual Income (US$): |
| 11. Sources of Wealth:<br>☐Employment ☐Inheritance ☐Investment ☐Other (explain) | 12. Sources of Assets on Deposit:<br>☐Employment ☐Inheritance ☐Investment ☐Other (explain) |
| 13. Country of Citizenship: | 14. Date of Birth: |
| 15. Home Address:<br><br><br><br><br>Home Phone: | 16. Mailing Address: [if different from Home Address] |
| 17. Occupation:<br><br>Employment Status: ☐Employed ☐Self-Employed ☐Unemployed<br><br>If employed, Employer's Name:<br><br>Member Firm?    ☐Yes ☐No | 18. Marital Status: ☐Single ☐Married<br><br><br>If married, Spouse's Occupation: |

THSH_PJ 0000913

# BEAR STEARNS

**DOC CODE 301**

**NEW ACCOUNT FORM INDIVIDUALS**

## G. INTERESTED PARTIES

I/P # 1    # CONFIRMS _____    #STATEMENTS _____

_____

_____

_____

_____

I/P # 2    # CONFIRMS _____    #STATEMENTS _____

_____

_____

_____

_____

I/P # 3    # CONFIRMS _____    #STATEMENTS _____

_____

_____

_____

_____

I/P # 4    # CONFIRMS _____    #STATEMENTS _____

_____

_____

_____

_____

---

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____    Date: _____

---

Account Opened by: _____    Telephone Number: _____

Signature of Registered Representative: _____    Date: _____

Signature of Branch Mgr/Compliance Officer: _____    Date: _____

---

**For AML DUE DILIGENCE GROUP USE ONLY**

Date Received: _____

Name of Reviewer: _____

Risk Level: _____

Approved by: _____

Date: _____

Commercial Vendor ID Verification: ☐Positive ☐Negative ☐Inconclusive

If Negative or Inconclusive:
Valid Gov't Issued Picture ID Requested on Date: _____

Final ID Approval: ☐Yes ☐No

---

THSH_PJ 0000914



**BEAR STEARNS**                    **DOC CODE 301**                    **NEW ACCOUNT FORM INDIVIDUALS**

### CLIENT / BENEFICIAL OWNER / AUTHORIZED PARTIES

**Customer:**  The nominal owner of an account.

**Custodian:**  Under the Uniform Transfer (or Gift) to Minors Act, the person appointed to manage and dispense funds for a child.

**Guardian:**  A person or entity named in a will, guardianship, or court order who is responsible for the care of minor children or incompetent adults.

**Conservator:**  A person or entity appointed by a court to manage the property and financial affairs of another (usually incompetent) person.

**Investment Advisor:**  A person who manages assets, making portfolio composition and individual security selection decisions.

**Power of Attorney:**  An instrument by which one person authorizes another to act for him in a manner which is as legally binding upon the person giving such authority as if he personally were to do the acts.

**Principal:**  A person who designates another to act as his/her attorney in fact or agent.

**Trading Authority:**  A person who is authorized to conduct trades and provide instructions for a customer's account.

**Foreign Political Figure:**  A "Foreign Political Figure" is an official of a foreign government, an official of a major foreign political party or an executive of a foreign government-owned corporation.  In addition, a Foreign Political Figure includes any corporation or other business formed by, or for the benefit of, a Foreign Political Figure.  An "Immediate Family Member" of a Foreign Political Figure includes the person's parents, siblings, spouse, children and in-laws.  A "Known Close Associate" of a Foreign Political Figure is a person who is widely and publicly known (or who is actually known by Bear Stearns or the introducing broker-dealer) to maintain a close personal or professional relationship with a Foreign Political Figure.

THSH_PJ 0000915



**BEAR STEARNS**

DOC CODE 301                    NEW ACCOUNT FORM INDIVIDUALS

## Country & Jurisdiction Tables

| PROHIBITED | HIGH RISK | | MEDIUM RISK | | AML EQUIVALENT |
|---|---|---|---|---|---|
| Burma (Myanmar) | Afghanistan | Macau | Albania | Macedonia (FYROM) | Australia |
| | Algeria | Madagascar | Anguilla | Maldives | Austria |
| Cuba | Andorra | Malawi | Antarctica | Malaysia | Belgium |
| | Angola | Malta | Antigua and | Mali | Bermuda |
| Iran | Armenia | Marshall Islands | Barbuda | Mauritius | Canada |
| | Azerbaijan | [Majuro] | Argentina | Mexico | Denmark |
| Sudan | Bangladesh | Mauritania | Aruba | Micronesia | Finland |
| | Belarus | Moldova | Bahamas | Monaco | France |
| | Belize | Mongolia | Bahrain | Nauru | Germany |
| | Benin | Montenegro | Barbados | Oman | Greece |
| | Bolivia | Montserrat | Bhutan | Palau | Guernsey |
| | Bosnia & Herzegovina | Morocco | Botswana | Peru | Hong Kong, [China] |
| | Burkina Faso | Mozambique | Brazil | Qatar | Iceland |
| | Burundi | Namibia | British Virgin | Samoa (Western) | Ireland |
| | Cambodia | Nepal | Islands | San Marino | Italy |
| | Cameroon | Netherlands | Brunei | Senegal | Japan |
| | Central African | Antilles | Bulgaria | Slovakia | Jersey |
| | Republic | Nicaragua | Cape Verde | Slovenia | Luxembourg |
| | Chad | Niger | Cayman Islands | South Africa | Netherlands |
| | Colombia | Nigeria | Chile | South Korea | New Zealand |
| | Comoros | Niue | China, People's | St. Kitts & Nevis | Norway |
| | Congo (Both) | North Korea | Republic | St. Lucia | Portugal |
| | Cook Islands | Pakistan | Costa Rica | St. Vincent & The | Singapore |
| | Cote D'Ivoire | Palestinian | Croatia | Grenadines | Spain |
| | Cyprus | Authority | Czech Republic | Swaziland | Sweden |
| | Dominican Rep | [Gaza, West | Djibouti | Taiwan | Switzerland |
| | East Timor | Bank] | Dominica | Thailand | United Kingdom |
| | Ecuador | Panama | El Salvador | Togo | |
| | Egypt | Papua-New Guinea | Estonia | Tonga | |
| | Equatorial Guinea | Paraguay | Fiji | Trinidad and Tobago | |
| | Eritrea | Philippines | Ghana | Tunisia | |
| | Ethiopia | Poland | Gibraltar | Turkey | |
| | Gabon | Romania | Grenada | Turks and Caicos | |
| | Gambia | Russia | Hungary | United Arab Emirates | |
| | Georgia | Rwanda | India | Uruguay | |
| | Guatemala | Sao Tome & | Isle of Man | Vatican City | |
| | Guinea | Principe | Israel | Vanuatu | |
| | Guinea-Bissau | Saudi Arabia | Jordan | | |
| | Guyana | Serbia | Kuwait | | |
| | Haiti | Seychelles | | | |
| | Honduras | Sierra Leone | | | |
| | Indonesia | Solomon Islands | | | |
| | Iraq | Somalia | | | |
| | Jamaica | Sri Lanka | | | |
| | Kazakhstan | Suriname | | | |
| | Kenya | Syria | | | |
| | Kiribati | Tajikistan | | | |
| | Kyrgyzstan | Tanzania | | | |
| | Laos | Turkmenistan | | | |
| | Latvia | Tuvalu | | | |
| | Lebanon | Uganda | | | |
| | Lesotho | Ukraine | | | |
| | Liberia | Uzbekistan | | | |
| | Libya | Venezuela | | | |
| | Liechtenstein | Vietnam | | | |
| | Lithuania | Western Sahara | | | |
| | | Yemen | | | |
| | | Yugoslavia FR | | | |
| | | Zambia | | | |
| | | Zimbabwe | | | |

New Acct Indiv (version 6/26/06)

THSH_PJ 0000916

# FUTURES ACCOUNT ADDENDUM FOR NEW ACCOUNTS

**Type of Account**
☐ Individual          ☐ Partnership          ☐ Omnibus Account
☐ Joint               ☐ Trust                ☐ Commodity Pool
☐ Corporation         ☐ Foreign Account      ☐ Other (Specify) _____

| TRADING EXPERIENCE | NONE | 1 YEAR | 2 YEAR | OVER 3 YEARS |
|---|---|---|---|---|
| Commodities | | | | |
| Options | | | | |
| Stocks/Bonds | | | | |
| Other | | | | |

Estimated Liquid Assets: _____

Security or Commodity Accounts with Other Firms:  (List Firms):



Other Security or Commodity Accounts at Bear Stearns :



Does this account control the trading in any other account?          ☐ Yes  ☐ No
Does any other person(s) control the trading of this account?        ☐ Yes  ☐ No
Does any other person have a financial interest in this account?     ☐ Yes  ☐ No
Does any other person guarantee this account?                        ☐ Yes  ☐ No
If yes, specify:

Name: _____          Address: _____

*Information regarding the commission status must be fully completed:*

Commission Rates      _____          ☐ Inclusive   ☐ +Fees
                      _____

Indicate how commissions will be charged:        Futures ☐ Round Turn  ☐ Half Turn
                                                 Options ☐ Round Turn  ☐ Half Turn
Indicate if account is to be converted to US$:   ☐ Yes ☐ No

**Foreign Commodity Exchanges:**  Indicate the foreign commodity exchanges account will be trading and the native currency rates to be charged:

Exchange: _____
Rate: _____

I certify that I have received and reviewed the requisite information and documentation for this account in accordance with Bear Stearns' anti-money laundering procedures and have conferred with the Registered Representative and the Branch Manager/Compliance Officer/Other Authorized Party concerning the results of such review.

Signature of AML Customer Identification Specialist: _____     Date: _____

Signature of Registered Representative:      _____     Date: _____

Signature of Branch Mgr/Compliance Officer:  _____     Date: _____

New Acct Indiv (version 6/26/06)

THSH_PJ 0000917