**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. <br> In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |

**AFFIDAVIT OF VINEET SEHGAL IN SUPPORT OF THE TRUSTEE'S MOTION FOR AN ORDER APPROVING THE ELEVENTH ALLOCATION OF PROPERTY TO THE FUND OF CUSTOMER PROPERTY AND AUTHORIZING ELEVENTH INTERIM DISTRIBUTION TO CUSTOMERS**

CITY OF NEW YORK     )
                     ) ss:
STATE OF NEW YORK    )

Vineet Sehgal, being duly sworn, deposes and says:

1.  I am a Managing Director at AlixPartners LLP ("AlixPartners"). I make this affidavit to transmit to the Court information relevant to the motion by Irving H. Picard, trustee (the "Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), for an Order Approving the Trustee's Eleventh Allocation of Property to the Fund of Customer Property and Authorizing Eleventh Interim Distribution to Customers (the "Motion").

---

[1] For convenience, subsequent references to sections of the Act shall follow the form: "SIPA § __."

1

2. AlixPartners has served as the Trustee's Claims Agent and as the accountant for the BLMIS estate since December of 2008 pursuant to SIPA § 78fff-1(a)(1). As the Claims Agent, AlixPartners was responsible for both mailing the notice of the liquidation and claim forms to potential claimants and causing the notice of the liquidation to be published. AlixPartners has also been responsible for processing all claims submitted to the Trustee and assisting the Trustee in reviewing each customer claim filed to determine whether the asserted claim amount agrees with the "net equity" for that account. In addition, as the accountants for the BLMIS estate, AlixPartners has assisted and continues to assist the Trustee in accounting for the assets of the BLMIS estate, including the cash and cash equivalents available to the Trustee.

3. I have been actively involved in the liquidation of BLMIS and the claims process since December 2008 and have personal knowledge of the matters set forth herein.

### The Claims Process

4. To date, the Trustee has received 16,521 customer claims and determined 16,503 of those claims. To date, the Trustee has allowed 2,646 claims, and SIPC has advanced $848,199,334.97 to the Trustee to pay these claims. To date, the allowed claims total $19.414 billion. The Trustee denied 2,694 claims by customers who had accounts with BLMIS and 10,734 claims purporting to be customer claims but were in fact claims filed on behalf of claimants without an account at BLMIS. Twelve other claims were filed that asserted no claim. Another 417 claims have been withdrawn.

5. Eighteen claims (relating to 12 accounts) are currently categorized as "deemed determined," meaning that the Trustee has instituted litigation against those claimants.

6. To date, the Trustee has received 428 timely and 22 untimely filed secured priority and unsecured non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-

customer proof of claim forms. Of these 450 claims, 95 are general creditor claims and 49 are broker-dealer claims, which together total approximately $265 million of the $1.7 billion.

7. 1,828 docketed objections have been filed to the Trustee's claims determinations relating to 3,379 claims, which have been, and will continue to be, noticed for hearing as appropriate. These 1,828 objections relate to 783 BLMIS accounts. 1,521 of the 1,828 docketed objections have been fully resolved. 307 objections are still subject to court review.

**Recoveries by the Trustee**

8. The Trustee previously filed ten motions seeking entry of an order approving allocations of property to the fund of customer property (the "Customer Fund") and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $884.561 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.431 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $900.702 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $605.916 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[2] | $522.180 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/2015 | $345.472 million[3] | $1.567 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/2016 | $247.013 million | $246.702 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/2017 | $342.322 million | $326.360 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/2018 | $1.303 billion | $716.342 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/2019 | $515.974 million | $512.080 million | 2.729% | 18295 | 18398 |

---

[2] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[3] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

9. The amounts previously distributed as outlined in each of the First through Tenth Allocation Motions change as additional accounts are determined. Below is a summary of the amounts allocated and distributed:

| No. | Amount Allocated | Reserve From Previous Allocations[4] | Funds Received After Eighth and Tenth Interim Dist Used for Springing Claims | Amount Available for Distribution | Allocation for Allowed Claims[5] | Allocation for Deemed Determined Claims[6] | SIPC Subrogation | Other Reserves[7] |
|---|---|---|---|---|---|---|---|---|
| 1 | $2.618 billion | N/A | $85.078 million | $2.703 billion | $884.561 million | $54.303 million | $8.887 million | $1.755 billion |
| 2 | $5.501 billion | $1.755 billion | $620.353 million | $7.877 billion | $6.431 billion | $395.955 million | $83.298 million | $966.393 million |
| 3 | $1.198 billion | $966.393 million | $87.278 million | $2.252 billion | $900.702 million | $55.707 million | $15.849 million | $1.279 billion |
| 4 | $477.504 million | $1.279 billion | $58.789 million | $1.816 billion | $605.916 million | $37.523 million | $11.461 million | $1.161 billion |
| 5 | $756.538 million[8] | $1.161 billion | $50.710 million | $1.968 billion | $522.180 million | $32.367 million | $10.356 million | $1.403 billion |
| 6 | $345.472 million[9] | $1.403 billion | $152.740 million | $1.901 billion | $1.567 billion | $97.490 million | $37.469 million | $199.925 million |
| 7 | $247.013 million | $199.925 million | $24.126 million | $471.064 million | $246.702 million | $15.399 million | $6.656 million | $202.308 million |
| 8 | $342.322 million | $202.308 million | $31.964 million | $576.594 million | $326.360 million | $20.402 million | $9.315 million | $220.518 million |
| 9 | $1.303 billion | $220.518 million | $33.150 million | $1.557 billion | $716.342 million | $44.910 million | $22.568 million | $772.713 million |
| 10 | $515.974 million | $772.713 million | $23.769 million | $1.312 billion | $512.080 million | $32.202 million | $17.737 million | $750.437 million |

[4] Reserve from Previous Allocations represents amounts that were reserved in prior allocations.
[5] Allocation for Allowed Claims represents the amount allocated for claims that have been allowed.
[6] Allocation for Deemed Determined Claims represents amounts allocated and reserved for claims that are currently in litigation with the Trustee.
[7] Other Reserves represents all funds that are reserved for various issues.
[8] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.
[9] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages reserve.

10. The Trustee has recovered $988,770,171.17 since the Tenth Allocation and Tenth Interim Distribution as a result of litigation and pre-litigation settlements, interest income, and other miscellaneous recoveries. Therefore, the Trustee seeks approval to allocate the full amount of these recoveries to the Customer Fund.

11. The most significant settlement reached since the Tenth Allocation Motion was Kingate, discussed below.

12. On August 6, 2019, this Court approved a settlement between the Trustee and Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (collectively, the "Kingate Funds"). *Picard v. Federico Ceretti*, Adv. No. 09-01161 (SMB) (Bankr. S.D.N.Y.) (ECF No. 100). The High Court of Justice Virgin Islands and the Supreme Court of Bermuda approved the settlement on September 18, 2019 and October 8, 2019, respectively. Under the settlement, the Kingate Funds received an allowed customer claim in the amount of $1,659,748,094.52. The Trustee has made the required payments under the settlement agreement. The Trustee recovered $860 million from the Kingate Funds for the BLMIS Customer Fund.

13. As reflected in the table in Paragraph 9, the amount reserved through the Tenth Interim Distribution is $750,436,507.06. This previously reserved amount, plus the $988,770,171.17 that the Trustee seeks to allocate in this Motion, less the $1,167,957,114.02 in aggregate catch-up payments from post-eighth and post-tenth interim distribution recoveries, constitutes the total amount available for distribution. Therefore, the total amount available for the Eleventh Interim Distribution will be $571,249,564.21. Of this amount, $4,924,519.52 must be held in reserve for non-liquid asset recoveries related to certain settlements, leaving a total of $566,325,044.69 available for distribution.

14. The Trustee will maintain a general reserve of $200,000,000.00. Thus, the amount available for the Eleventh Interim Distribution will be $366,325,044.69.

15. The table below summarizes this calculation.

| Category | Amount |
|---|---|
| **SIPC 17 Receipts (October 31, 2019)** | **$14,293,876,541.24** |
| **Total Recoveries** | **$14,293,876,541.24** |
| First Through Tenth Interim Distribution Deductions | |
|    Allowed Accounts | $12,712,771,682.92 |
|    Reserved For Deemed Determined Accounts | $786,258,546.18 |
|    SIPC Subrogation | $223,596,747.93 |
| **Amount Available for Eleventh Interim Distribution** | **$571,249,564.21** |
| Current Reserves | |
|    General Reserve | $200,000,000.00 |
|    Reserve related to non-liquid settlement recoveries | $4,924,519.52 |
| **Amount Available for Eleventh Interim Distribution After Reserves** | **$366,325,044.69** |

16. Of the $366,325,044.69 numerator, $332,454,396.23 will be distributed as part of the Eleventh Interim Distribution to allowed accounts, and SIPC subrogation for allowed accounts in the amount of $12,725,846.36[10] will be released to SIPC. For deemed determined accounts, $20,980,110.38 will be reserved.

### The Net Investment Method Denominator

17. The Trustee's Net Investment Method Denominator is the allowed amount of all accounts that have an allowed claim plus the net cash balance for all accounts into which more funds were deposited than withdrawn for which a claim has been filed, but not yet allowed. As of December 18, 2019, the Trustee's Net Investment Method denominator is $20,594,340,605.45. This number is subject to change as additional accounts are determined.

---

[10] An additional $7,023.10 of SIPC subrogation associated with the Eleventh Interim Distribution for accounts that have not returned the necessary paperwork required to receive their SIPC advance will be held in reserve.

**Interim Calculation of *Pro Rata* Share**
**Distribution of Customer Fund**

18. As set forth above, the total amount available for the Eleventh Interim Distribution will be $571,249,564.21. Of that amount, $366,325,044.69 is available for distribution (the "Net Customer Fund"). The difference between those amounts—$204,924,519.52—represents the general reserve and reserves related to certain non-liquid settlement recoveries.

19. The Denominator is $20,594,340,605.45. To determine the percentage of each allowed customer net equity claim that can be satisfied from the Customer Fund, the Net Customer Fund is divided by the Denominator, resulting in the following percentage:

$$\frac{\$366{,}325{,}044.69 \text{ (Net Customer Fund)}}{\$20{,}594{,}340{,}605.45 \text{ (Denominator)}} = 1.778\%$$

20. A total of 854 accounts will receive a distribution of approximately 1.778% of their net equity claims, unless the account becomes fully satisfied. Of these 854 accounts (relating to 996 claims), 39 accounts (relating to 44 claims) will become fully satisfied, bringing the total of fully satisfied account holders to 1,467 (all accounts with an allowed claim amount of up to $1,574,852.48). 815 accounts will remain partially satisfied and will be entitled to participate in future distributions.

21. An additional 12 accounts (relating to 18 claims) that are currently "deemed determined" could receive a distribution if and when the status of their claims moves from "deemed determined" to allowed. Five of the 12 accounts would be fully satisfied by the SIPC advance. The remaining seven accounts would receive both a SIPC advance and a distribution in accordance with the Trustee's Motion and his earlier distribution motions. One of the remaining seven accounts would be fully satisfied by the First through Eleventh Interim Distributions.

22. Upon approval of the Motion, each customer's ratable share of the Net Customer Fund should be no less than 68.411% of the customer's net equity claim, which includes the proposed 1.778% customers will receive upon the approval of the Eleventh Allocation and Eleventh Interim Distribution, the 4.602% customers received subject to the First Allocation and First Interim Distribution, the 33.556% customers received subject to the Second Allocation and Second Interim Distribution, the 4.721% customers received subject to the Third Allocation and Third Interim Distribution, the 3.180% customers received subject to the Fourth Allocation and Fourth Interim Distribution, the 2.743% customers received subject to the Fifth Allocation and Fifth Interim Distribution, the 8.262% customers received subject to the Sixth Allocation and Sixth Interim Distribution, the 1.305% customers received subject to the Seventh Allocation and Seventh Interim Distribution, the 1.729% customers received subject to the Eighth Allocation and Eighth Interim Distribution, the 3.806% customers received subject to the Ninth Allocation and Ninth Interim Distribution, and the 2.729% customers received subject to the Tenth Allocation and Tenth Interim Distribution.[11]

By: */s/ Vineet Sehgal*
Vineet Sehgal

City of New York
State of New York

Subscribed and sworn to me (or affirmed) before me, Joann Johnson, Notary Public, on this 18th day of December, 2019 by Vineet Sehgal, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

WITNESS my hand and official seal.

*/s/ Joann Johnson*
Joann Johnson, Notary Public
Qualified in New York
*Commission Expires: 7/2022*

---

[11] Each customer's ratable share may be less than 1.778% for those BLMIS accounts that are fully satisfied.