**EXHIBIT F**

Page 1

1  UNITED STATES BANKRUPTCY COURT
2  SOUTHERN DISTRICT OF NEW YORK
3  Case No. 08-99000-smb
4  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
5  In the Matter of:
6
7  ADMINISTRATIVE CASE RE: 08-01789 (SECURITIES INVEST-
8  ADVERSARY PROCEEDING),
9
10         Debtor.
11 - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
12
13 Adv. Case No. 10-04995-smb
14 - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
15 IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.
16 MADOFF INVESTMENT SECURITIES LLC,
17              Plaintiff,
18         v.
19 TRUST u/art FOURTH o/w/o ISRAEL WILENITZ,
20              Defendants.
21 - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
22
23
24
25

Page 2

1   Adv. Case No. 10-05184-smb

2   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

3   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4   MADOFF INVESTMENT SECURITIES LLC,

5               Plaintiff,

6         v.

7   LAURA ANN SMITH REVOCABLE LIVING TRUST et al,

8               Defendants.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

10

11  Adv. Case No. 10-04352-smb

12  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

13  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

14  MADOFF INVESTMENT SECURITIES LLC,

15              Plaintiff,

16        v.

17  RAR ENTREPRENEURIAL FUND. LTD. et al.,

18              Defendants.

19  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

20

21

22

23

24

25

```
 1                    U.S. Bankruptcy Court
 2                    One Bowling Green
 3                    New York, NY  10004
 4
 5                    May 17, 2016
 6                    10:51 AM
 7
 8
 9    B E F O R E :
10    HON STUART M. BERNSTEIN
11    U.S. BANKRUPTCY JUDGE
12
13
14
15    Hearing re:  10-04995-smb, 10-05184-smb, 10-04352-smb The
16    Trustee's Request For Leave To File A Motion For a
17    Protective Order in Wilentiz.
18
19
20
21
22
23
24
25    Transcribed by:  Sonya Ledanski Hyde
```

Page 4

```
 1  A P P E A R A N C E S :

 2

 3  WINDELS MARX LANE & MITTENDORF, LLP

 4       Special Counsel to Irving H. Picard, as Trustee

 5       156 West 56th Street

 6       New York, NY 10019

 7

 8  BY:  KIM M. LONGO

 9       JOHN J. TEPEDINO

10

11  BAKER HOSTETLER

12       Attorney for the Trustee

13       45 Rockefeller Plaza

14       New York, NY 10111

15

16  BY:  EDWARD J. JACOBS

17       NICHOLAS J. CREMONA

18

19  CHAITMAN LLP

20       Attorney for Defendants

21       465 Park Avenue

22       New York, NY 10022

23

24  BY:  HELEN DAVIS CHAITMAN, ESQ.

25
```

Page 5

1   ALSO PRESENT TELEPHONICALLY:
2   KEVIN H. BELL
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1  these same things in all of those cases.
2           What the Trustee has done in discovery in this
3  case is quite remarkable, and I believe unprecedented, and
4  we're very proud of it.  Without even receiving a discovery
5  request, we provide every single defendant with what we
6  refer to as their core account documents, which are their
7  customer statements, the cash activity of their accounts,
8  their correspondence files with all of their correspondence
9  to and from BLMIS over the life of their account; the
10 account opening and closing documents; and in addition to
11 that all of the applicable financial statements from BLMIS's
12 financial institutions showing the bank transfer records
13 from those independent third parties with respect to the
14 cash activity in each and every single account.
15          Where we don't have a complete set of customer
16 statements, we produce portfolio management reports, which
17 contain exactly the same information of the cash activity
18 over the life of the account.  Where we don't have those, we
19 produce spiral notebooks where various employees over time
20 at BMOIS kept meticulous notes of that cash transaction
21 activity.
22          And we provide that to every defendant.  Wilenitz
23 is no exception.  We produced, I believe, approximately,
24 19,000 records that we've indexed to make it easy for the
25 defendant to navigate exactly what's in that --

1             THE COURT:  19,000 records for Wilenitz?

2             MR. JACOBS:  For the Wilenitz accounts, correct,

3    over the life of their accounts.  And that includes all of

4    the items that I just discussed.

5             In addition to that, obviously, it is the

6    Trustee's burden of proof to prove that BLMIS was operating

7    a fraudulent Ponzi scheme and was insolvent.  So, as the

8    Court I believe --

9             THE COURT:  Why do you have to prove insolvency?

10   You don't have to prove insolvency for an intentional

11   fraudulent transfer.  These are good faith cases.

12            MR. JACOBS:  Right.  Well, that is, I believe, our

13   burden in the bad faith actions as well.

14            THE COURT:  Why?  To prove insolvency in an actual

15   fraudulent transfer claim -- I've never heard of that.

16            MR. JACOBS:  Well, that may very well be correct,

17   Your Honor, but nonetheless, we have endeavored to make all

18   of BMOIS's financial records available.

19            THE COURT:  Let me ask, Ms. Chaitman, do you think

20   that insolvency is an issue in these cases?  Since their

21   limited to intentional fraudulent transfers?

22            MS. CHAITMAN:  I do, Your Honor.

23            THE COURT:  Why?

24            MS. CHAITMAN:  If, in fact, they could only

25   recover transfers made within the last two years, then the

Page 11

1  Wilenitz matter, but a copy of that report has been served
2  to Ms. Chaitman on behalf of some of her other clients in
3  different proceedings.  And in Section 4C of the procedures
4  order, that permits the Trustee to handle the voluminous
5  nature of discovery that's potentially relevant in this case
6  in that fashion.
7           THE COURT:  Well, does Ms. Chaitman or any other -
8  - clients or any other defendant have the ability to look at
9  the same documents that your expert looked at and draw their
10 own conclusions?
11          MR. JACOBS:  Absolutely.  Every single document --
12 what we've endeavored to do, Your Honor, is that what we
13 refer to as Electronic Data Room 1 contains all of the
14 underlying documents considered by Mr. Dubinsky and we're
15 also building upon that in including documents that our
16 other experts who we may offer to prove transactions and who
17 do other functions, all of those documents as well.  So,
18 that's approximately 4 million records.  Not pages, but
19 records.
20          And it's an enormous amount of data that I believe
21 is unprecedented, at least in my career, and for that reason
22 we've structured the data room in a very organized fashion
23 with issue trees.  So if you're a participant who's
24 accessing the data room, you'll see something that you might
25 be familiar with already in terms of like, an Outlook email

1  folder tree that has topics, broken down documents,
2  financials, third party records; and then each of those
3  trees can be broken down further to drill down to J.P.
4  Morgan statements.  You know, Chicago Options Trading
5  information, Depository Trust Clearing Corporation
6  documents; all of those types of things.  It's also
7  searchable.
8          So, absolutely the Defendant has the ability to
9  conduct whatever investigation they believe is relevant to
10 the claims of their defenses, the same that our expert did,
11 and they have access to all the same information that our
12 expert did.  And we did that to be transparent and to
13 provide any data that any litigant believes that they should
14 have access to.
15         So, that's the starting point of where we are in
16 discovery.  And then because Section 4C of the procedures
17 order allows us to provide a summary report, we do that.
18 And Mr. Dubinsky painstakingly analyzes the Ponzi scheme and
19 the IA business specifically, but also the other aspects of
20 BLMIS's businesses as well.  And issues of insolvency are
21 also part of his analysis to the extent they may bear on the
22 Ponzi scheme or on other proofs we may have, or have had at
23 some point in our cases.
24         But all of the financials are considered, the
25 Ponzi scheme is considered, the stock-trading activity or

 1              THE COURT:  And, again, this comes back to my
 2   understanding of the records.  If you have tables of content
 3   or indices...
 4              MR. JACOBS:  I do.
 5              THE COURT:  I don't want to see them now.
 6              MR. JACOBS:  Okay.
 7              THE COURT:  If you have those things and somebody
 8   can look at them and see the subject matter of what they
 9   want to look at, figure out what to look at, fine.
10              MR. JACOBS:  There is a subfolder in Data Room 1
11   that is called DTC that has all of those records.
12              MS. CHAITMAN:  I'm not asking for -- I have the
13   DTC records.
14              THE COURT:  She wants other non-DTC records.
15              MR. JACOBS:  To the extent we have them in
16   addition to publicly available information that we obtain,
17   it's all in the data room clearly labeled.
18              THE COURT:  You'll have to show me when the time
19   comes.  17 -- these are the number of employees that work
20   for each unit.
21              MR. JACOBS:  Yes, Your Honor.  And as I had
22   mentioned before, we provided a specific chart that contains
23   this exact information, even though I believe we're not
24   obligated to because it had already been made available in
25   the data room and could've been found with the click of a

1    shows up in Wilenitz's account statement, you can make the

2    argument that he actually owned that stock.  But you can do

3    that (indiscernible) and the information has been made

4    available to you.

5              And the sense I'm getting -- and I understand that

6    it's a lot of work -- is you want the Trustee to do this for

7    you, but you're going to have to do this yourself if this

8    stuff is available.

9              MS. CHAITMAN:  You know, Judge, with 4 million

10   pages of documents, the least the Trustee could do is

11   specify the specific Bates Numbers.  Because I don't want to

12   be in a position where we go to trial...  I mean, for all I

13   know, the data room is updated constantly and new documents

14   are added.  How am I going to prove at trial that certain

15   documents were not made available to me?  I mean, it's

16   impossible.  Why can't the Trustee be bound to tell me these

17   are the documents responsive to this request?

18             THE COURT:  But that doesn't solve your problem...

19   Well, if the Trustee has additional documents, he's got to

20   supplement the disclosure or the production, which he does

21   by adding them to the data room, and maybe you have a

22   continuing duty to check the data room.

23             But part of the problem is you've thrown such a

24   broad net over what you're looking for, instead of the

25   specific documents relevant -- that I think seem to be

Page 70

1  relevant to this particular case, that you run into a
2  situation where there may be documents added about something
3  but they have nothing to do with Wilenitz.
4              MR. JACOBS:  And, Your Honor, specifically to
5  respond to Ms. Chaitman's concern about the data room being
6  voluminous, and I understand that 4 million records is
7  overwhelming, but that's the reason why the procedures order
8  permits us to provide an expert summary report to support
9  our claims and to satisfy our burdens of proof, which
10 specifically discusses all of that data, identifies all of
11 the Bates Numbers of the documents that are used to support
12 various conclusions -- and at a minimum, Ms. Chaitman is
13 free to depose those experts and to test and challenge any
14 of those analyses based on any of the documents they've
15 relied upon or that she has access to in discovery.
16             And no one's challenging her right to do that.
17 What we're saying is that we shouldn't have to do more than
18 what we've already done because we have invested enormous
19 amounts of resources and time in finding a way to make all
20 of those information available to all litigants in order for
21 them to conduct their own investigations and have access to
22 the same information that we do.
23             THE COURT:  Well, you know, I started out by
24 saying, I can't tell you not to make a motion to compel, but
25 I think that if you go back, for example, and look at the

1                    C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 19, 2016