# EXHIBIT N

# CHAITMAN LLP

465 PARK AVENUE
NEW YORK, NY 10022
(888) 759-1114
TELEPHONE & FAX

*HELEN DAVIS CHAITMAN*
hchaitman@chaitmanllp.com

February 21, 2017

**VIA EMAIL and FIRST CLASS MAIL**
The Honorable Frank Maas, U.S.M.J. (Ret.)
c/o JAMS, Inc.
620 Eighth Avenue, 34th Floor
New York, New York 10018
fmaas@jamsadr.com

   Re: *Irving H. Picard v. Wilenitz*, Adv. Pro. No. 10-04995 (SMB)

Dear Judge Maas:

  I write pursuant to Your Honor's direction during the February 9, 2017 telephone conference to make a submission in further support of our motion to compel the Trustee to comply with our discovery demands.

  **I.** **Judge Bernstein ordered the Trustee to produce all of Madoff's trading records**

  Judge Bernstein has always made it clear that the Trustee has an obligation to produce *all* of Madoff's trading records. (*See, e.g.*, May 17, 2016 Transcript in the *Wilenitz* case, attached as Ex. A, at 69:19-22) (THE COURT: "Well, if the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room . . . ."). The following colloquy occurred between Judge Bernstein and Mr. Jacobs:

> MR. JACOBS: We believe there was never a security traded in connection with the fraudulent Ponzi scheme being operated and the IA [Investment Advisory] business.
>
> THE COURT: So how does she [Ms. Chaitman] test that conclusion?
>
> MR. JACOBS: She tests that conclusion the same way our expert does, by examining the underlying records.

(*Id*. at 68:12-18). Mr. Jacobs did not say "by examining whatever underlying records we choose to give her." And Judge Bernstein did not limit his Order in any way. Judge Bernstein ordered the Trustee to produce *all* trading records – just as defendants have been required to produce all of their documents, no matter how burdensome. The Trustee has ignored Judge Bernstein's Order.

# CHAITMAN LLP

The Honorable Frank Maas
February 21, 2017
Page 2

**II.    The Trustee has represented that he would produce all of Madoff's trading records and Your Honor ordered the Trustee to produce all of Madoff's trading records**

During the December 13, 2016 hearing in front of Your Honor, Mr. Jacobs represented that the Trustee would produce all pre-1992 trading records. (*See* December 13, 2016 Transcript, attached as Ex. B, at 145:23-146:5) (MR. JACOBS: "We will look for and have been looking for stuff – any additional stock trading records as to earlier period of time . . . to the extent we find them or restore them or can obtain them from DTCC or any other method, we will produce them to you and will put them in the data room. Absolutely."). Mr. Jacobs made similar representations during the January 5, 2017 telephone conference with Your Honor. (*See* January 5, 2017 Transcript, attached as Ex. C, at 30:14-16) (MR JACOBS: "If it's a trading record, if it's a BLMIS trading record of securities having been traded, we will produce it.").

And Your Honor's Order required the Trustee to "promptly" produce all trading records that have not been produced. (*See* No. 08-01789 (S.D.N.Y. Bankr.), January 5, 2017 Order, ECF No. 14807 at 3). Your Honor also ordered the Trustee to "indicate how long it will take to make a good faith determination as to whether there are any BLMIS trading records for the years prior to 1992." (*Id.*).

**III.   The Trustee has made an inadequate production of Madoff's trading records, which does not comply with Judge Bernstein's Order or Your Honor's Order**

In response to Your Honor's Order, the Trustee has finally – for the first time in six years – produced *some* of the trading records that he previously concealed. However, the Trustee now refuses to make any additional productions unless defendants make some additional showing under Rule 26. And Mr. Jacobs has decided that, even though Treasury *securities* are "securities," the Trustee is not required to produce records showing that Investment Advisory funds were used to purchase Treasury securities. This is preposterous. Judge Bernstein and Your Honor already ruled that the Trustee must produce *all* trading records; Rule 26 is necessarily satisfied. Moreover, all of the statements sent to split-strike conversion customers from 1992 on show that Treasury securities were purchased for their accounts.

While Mr. Jacobs can make seemingly interminable arguments as to how burdensome it is to produce trading records, the Trustee paid his expert, Bruce Dubinsky, $30 million to opine that Madoff never conducted a single trade for any of his Investment Advisory customers. And now we have learned that Mr. Dubinsky rendered that opinion without having ever reviewed Madoff's trading records prior to 1992. (*See* Ex. C at 25:22-26:2) (MR. JACOBS: ". . . . So nobody has seen this material until we see it and produce it – until we get it and produce it." ARBITRATOR MAAS: "Including, in particular, Mr. Dubinsky." MR. JACOBS: "That's correct."); (*id.* at 27:7-9) (MR JACOBS: "But any – all of the documents that Mr. Dubinsky considered with his report as it exists today are in the data room."); (*id.* at 29:2-6) (MR. JACOBS: "The additional 93 that we produced were in the database of microfilm that we previously restored, but they, to my knowledge, have not been considered by Mr. Dubinsky in connection with his report."); (*see generally id.* at 25:9-29:6) (summarizing the issue).

# CHAITMAN LLP

The Honorable Frank Maas
February 21, 2017
Page 3

Instead, Mr. Dubinsky reviewed only the trading records that the Trustee chose to put into the E-Data Room. Obviously, the Trustee made a deliberate decision to conceal from Mr. Dubinsky, the customer body, and the courts, the pre-1992 trading records because they disprove one of the fundamental representations that the Trustee has made from inception of these proceedings: that Madoff never purchased securities for any of his Investment Advisory customers. Obviously, Mr. Dubinsky could not have supported this representation if he had reviewed all of Madoff's trading records.

Now, as a result of Your Honor's Order, the Trustee has produced some pre-1992 trading records but he still has not produced all of them. He either should produce every single trading record he has, or he should be barred from introducing any evidence at trial concerning Madoff's pre-1992 trading activity. As Your Honor now knows, there is substantial evidence that the Investment-Advisory fraud did not begin until sometime in 1992: Madoff testified that the fraud began in 1992 with the split-strike conversion strategy. (*See* Deposition of Bernard L. Madoff, No. 08-01789, ECF No. 14162-8 at 47:3-9, 50:23-51:3, 63:20-64:15). While the Trustee likes to impugn Madoff's truthfulness, the fact is that the Trustee apparently bases his whole case on Mr. Dubinsky – the accountant who was not given any of the pre-1992 trading records! Perhaps, since he misled his expert, the Trustee will be forced to rely upon the testimony of David Kugel and Annette Bongiorno, both of whom were indicted and, in Ms. Bongiorno's case, the Trustee paid millions of dollars for her cooperation, allowing, for example, her husband to keep approximately $3.5 million worth of securities that the Bongiornos had acquired with money stolen from Madoff customers. (*See* Annette Bongiorno Settlement Agreement, No. 08-01789, ECF No. 13926-2).

Mr. Madoff, on the other hand, confessed on his own volition at a time when there was not even a criminal investigation of his firm. He could easily have left the country and moved to Switzerland to live out his life in luxury. Instead, he confessed, knowing he would spend the rest of his life in prison. And, indeed, his confession is entirely consistent with the plea of the government's chief witness, Frank DiPascali. DiPascali had been Madoff's right-hand man and he pled that the fraud began with the split-strike conversion strategy in the early 1990s. (*See* Plea Allocution of Frank DiPascali, Jr., *United States v. DiPascali*, No. 09-CR-764 (S.D.N.Y. Aug. 11, 2009) at 44) ("I am standing here today to say that from the early 1990s until December of 2008 I helped Bernie Madoff, and other people, carry out the fraud that hurt thousands of people."). Thereafter, Mr. DiPascali repeated that the fraud began in the early 1990s. (*Id*. at 46-47). While DiPascali, later in his plea, said that the fraud began in the late '80s or early '90s, he was very clear that the fraud related to the split-strike conversion strategy and there is no factual dispute as to when Madoff began using that strategy. (*Id*. at 45-46).

### IV.   The Trustee cannot rely on FRCP 33(d) when he is withholding documents

The Trustee answers numerous interrogatories by reliance on FRCP 33(d), which permits a litigant to produce business records in lieu of specifically answering interrogatories when – but only when – certain conditions are met. But if the Trustee does not produce all trading records, he cannot rely on Rule 33(d). *See, e.g.*, Wright & Miller, Federal Practice and Procedure § 2178 (3d ed.) (To rely on Rule 33(d), a party "must affirm that the information sought by the interrogatory

{000028381 1 }

**CHAITMAN LLP**

The Honorable Frank Maas
February 21, 2017
Page 4

in fact is available in the specified records. . . . [B]y invoking Rule 33(d) the responding party represents that the information is in the designated records.").

The Trustee's failure to produce all trading records renders his reliance on Rule 33(d) patently inappropriate with respect to at least Interrogatories 16 and 18, which provide as follows:

> <u>Request 16:</u> Provide the gross trading volume by both number of shares traded and total dollar volume for each year of Madoff's operation, broken down by (a) investment advisory business (b) proprietary trading business; and (c) market making business. Produce documents on which you base your responses.
>
> <u>Request 18</u>: For each security listed on the Defendants' account statements for each year from 1982 on, set forth the number of shares of the listed companies' stock that BLMIS held at that time; and, if the stock was specified as belonging to a particular customer, specify the customer and the number of shares shown on BLMIS' records are being owned by that customer. Produce the documents on which you base your responses.

Your Honor's January 5, 2017 Order provides with respect to our motion to compel:

> The Requests are denied because (a) the underlying records have been made available to the Defendants and the other clients of Chaitman LLP, and (b) the burden of undertaking the requested investigation would be extensive. To the extent there are any additional relevant records of securities trading that have not been made available to Wilenitz through Data Room 1, they must promptly be produced.

(08-01789, January 5, 2017 Order, ECF No. 14807 at 3).

Thus, the plain terms of Your Honor's Order are premised on the Trustee's full compliance with Your Honor's Order that he produce **all** trading records.

Respectfully submitted,

*/s/ Helen Davis Chaitman*

Helen Davis Chaitman

HDC/sh
cc:    (*via Email*)
       Dean D. Hunt (dhunt@bakerlaw.com)
       Marie L. Carlisle (mcarlisle@bakerlaw.com)
       Edward J. Jacobs (ejacobs@bakerlaw.com)
       Keith R. Murphy (kmurphy@bakerlaw.com)

{000028381 1 }