**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>              Plaintiff-Applicant,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>              Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>              Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>              Plaintiff,<br><br>      v.<br><br>DEFENDANTS LISTED ON ECF NO. 14283,<br><br>              Defendants. | Adv. Pro. Nos. 10-04818<br>                    10-04914<br>                    10-04826<br>                    10-04541<br>                    10-04905<br>                    10-04621 |

**TRUSTEE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS APPLICATION FOR FEES AND EXPENSES PURSUANT TO FED. R. CIV. P. 37(A)(5)(B)**

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ........................................................................................................1

I.  The Fee and Expense Shifting Provisions of Fed. R. Civ. P. 37(a)(5)(B) Govern
This Motion...........................................................................................................1

    A.  The Joint Letter Was Primarily a Motion to Compel Additional Productions .............2

    B.  The Joint Letter Did Not Include a Motion for a Protective Order and the
Trustee Has Fully Discharged His Meet and Confer Obligations ................................5

II.  The Trustee is Entitled to Attorneys' Fees Pursuant to Fed. R. Civ. P. 37(a)(5)(B) ...........7

    A.  The Third Motion to Compel Was Not Substantially Justified ....................................7

    B.  There Are No Circumstances Making an Award of Fees Unjust .................................9

III. The Trustee's Requested Fees Are Reasonable Under Fed. R. Civ. P. 37(a)(5)(B)..........13

    A.  The Trustee's Submitted Time Records Are Not "Block Billed" And Enable
the Court to Conduct a Meaningful Review of the Hours Requested.........................13

    B.  The Trustee's Submitted Time Entries are Neither Vague Nor Excessive.................14

    C.  The Trustee is Entitled to All the Fees Related to the Joint Letter ..............................17

CONCLUSION.....................................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access 4 All, Inc. v. 135 West Sunrise Realty Corp.*,
  No. 06 Civ. 5487, 2008 U.S. Dist. LEXIS 91674, 2008 WL 4453221
  (E.D.N.Y. Sept. 30, 2008)........................................................................................15

*Bravia Capital Partners, Inc. v. Fike*,
  296 F.R.D. 136 (S.D.N.Y. 2013) ............................................................................16

*Brown v. Starrett City Associates*,
  Case No. 09 Civ. 3282 (JBW), 2011 WL 5118438 (E.D.N.Y. Oct. 27, 2011)........................13

*David v. Sullivan*,
  777 F. Supp. 212 (E.D.N.Y. 1991) ..........................................................................13

*United States ex rel. Doe v. Acupath Labs., Inc.*,
  2015 U.S. Dist. LEXIS 34506 (E.D.N.Y. Feb. 27, 2015)........................................15

*Marisol A. ex rel. Forbes v. Giuliani*,
  111 F.Supp.2d 381 (S.D.N.Y. 2000)........................................................................16

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)................................................................................................15

*Mantell v. Chassman*,
  512 Fed. Appx. 21 (2d Cir. 2013) ...........................................................................12

*Martinez v. City of New York*,
  330 F.R.D. 60 (E.D.N.Y. 2019) ..............................................................................17

*Meriwether v. Coughlin*,
  727 F. Supp. 823 (S.D.N.Y. 1989) ..........................................................................15

*Microban Prods. Co. v. API Indus.*,
  2014 U.S. Dist. LEXIS 92704 (S.D.N.Y. July 7, 2014) ..........................................15

*New York State Ass'n for Retarded Children, Inc. v. Carey*
  767 F.3d 144 (2d Cir. 2014)................................................................................13, 15

*Restivo v. Hessemann*,
  846 F.3d 547 (2d Cir. 2017)....................................................................................14

*S.E.C. v. Yorkville Advisors LLC*,
  2015 WL 855796 (S.D.N.Y. Feb. 27, 2015)............................................................16

*Safeco Ins. Co. of Am. V. M.E.S., Inc.*
    2019 U.S. App. LEXIS 32761 (2d. Cir. 2019) ........................................................14

*Spirit Realty, L.P. v. GH&H Mableton, LLC*,
    319 F.R.D. 474 (S.D.N.Y. 2017) ............................................................................17

*Telluride Management Solutions, Inc. v. Telluride Inv. Group*,
    55 F.3d 463 (9th Cir. 1995) ....................................................................................12

*Thomas v. City of New York*,
    Case No. 14 Civ. 7513, 2017 WL 6033532 (E.D.N.Y. Dec. 1, 2017)....................17

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
    982 F.2d 363 (9th Cir. 1992) ..................................................................................12

**Rules**

Fed. R. Civ. P. 26..........................................................................................................3, 5

Fed. R. Civ. P. 37 ................................................................................................ *passim*

## PRELIMINARY STATEMENT

Ms. Chaitman opposes the Trustee's motion by deploying the same tactic of obfuscation and mischaracterization that has exemplified her conduct throughout the "trading records" dispute.  In doing so, Ms. Chaitman lends further support to the motion's merits and fails to carry her burden of demonstrating that the underlying motion to compel access to over 30 million documents was substantially justified or the award of fees would be unjust.

Of the 22 pages Ms. Chaitman devotes to opposing the Trustee's application, less than two of them address the threshold question of whether the motion to compel was substantially justified—and virtually all the Trustee's arguments are left unrebutted.  Instead, and perhaps reflecting Ms. Chaitman's understanding that she cannot make that critical showing, the bulk of the brief attempts to distort the record further in order to sidestep the application Fed. R. Civ. P. 37(a)(5)(B) altogether.  At this juncture, however, the multitude of mischaracterizations Ms. Chaitman offers are demonstrably false based on the thorough record that has been submitted to the Court and upon which the relevant decisions by Judge Mass and this Court are based.  A straightforward comparison of that record to Ms. Chaitman's claims is enough to reject them.

The Trustee does not seek line-by-line compensation of his fees and expenses—indeed, the Trustee has represented that he will allocate all recouped fees to Madoff's victims.  What the Trustee seeks is a reasonable sanction that recognizes Ms. Chaitman's discovery abuse and deters similar conduct going forward.  The proposed fees accomplish these objectives.

## ARGUMENT

### I.    The Fee and Expense Shifting Provisions of Fed. R. Civ. P. 37(a)(5)(B) Govern This Motion

At the outset, Ms. Chaitman attempts to evade the fee and expense shifting provisions of Fed. R. Civ. P. 37(a)(5)(B) by claiming her motion was merely one for sanctions pursuant to

Fed. R. Civ. P. 37(**b**) and not one compelling the production of documents pursuant to Fed. R. Civ. P. 37(**a**). *See* Fed. R. Civ. P. 37(a)(3)(B) (authorizing a party to "move for an order compelling . . . production" if "a party fails to produce documents"). Ms. Chaitman further asserts that Fed. R. Civ. P. 37(a)(5)(**A**) (rather than (a)(5)(**B**)) governs the fee inquiry because the Trustee effectively included a request for a protective order in his Joint Letter, and his failure to adequately meet and confer in advance of that submission preclude any fee award. These positions are at odds with the record, the express terms of Rule 37, and the history of this dispute.

### A.    The Joint Letter Was Primarily a Motion to Compel Additional Productions

The record could not be clearer that the September 20, 2018 joint letter ("Joint Letter") was principally a motion to compel access to the BLMIS Database with a separate request for sanctions included as collateral relief. In the Joint Letter, Ms. Chaitman specifically framed her submission as a two-fold request for both documents and sanctions. *See* Chaitman Decl., Ex. AE at 1 ("Defendants make this application to compel the Trustee to share access to the BLMIS Database with Defendants <u>and</u> to sanction the Trustee's counsel for failing to comply with two court orders and failing to produce documents essential for the defense of these actions."). (emphasis added). Indeed, in the separate portion of the Joint Letter addressing the sanctions issue, Ms. Chaitman requested only monetary relief and did not mention the BLMIS Database at all. *See Id.* at 4 ("The Defendants are entitled to be compensated for their legal expenses."). *Id.* at 4. Notwithstanding her assertions to the contrary, Ms. Chaitman's failure to expressly cite Fed. R. Civ. P. 37(a) in support of her motion does not substantively alter the nature of her request.

Consistent with the parties' submissions, both Judge Maas's January 2019 Order and this Court's August 2019 Order treated the underlying motion as one to compel additional

productions.  *See* January 2019 Order at 1 ("For the reasons set forth below, the Defendants'

<u>application to compel this discovery</u> is denied.") (emphasis added); August 2019 Order at 1

("[Defendants] appeal from the *Discovery Arbitrator's Order* . . . denying the Defendants'

<u>application to compel discovery</u> from [the Trustee]") (emphasis added).  In their respective

decisions, Judge Maas and this Court each conducted a comprehensive relevance and

proportionality analysis under Fed. R. Civ. P. 26—an unnecessary analysis if Ms. Chaitman had

filed a pure sanctions motion pursuant to Fed. R. Civ. P. 37(b).  And in affirming Judge Maas's

January 2019 Order, this Court expressly authorized the Trustee to "seek his expenses and

attorneys' fees in accordance with Rule 37(a)(5)(B)"—precisely because Ms. Chaitman moved

to compel additional documents.  *See* August 2019 Order at 28.

Moreover, neither of Judge Maas's previous two orders required the Trustee to provide

access to the entire BLMIS Database, and thus Ms. Chaitman's contention that she filed her

motion to sanction the Trustee for something he was never ordered to do is meritless.  The March

2017 Order endeavored to narrow Ms. Chaitman's expanding request for "trading records" by

requiring her to consult the indices already in her possession.[1]  That Ms. Chaitman ignored this

---

[1] The Chaitman Declaration mischaracterizes the data indices (among many other aspects of this dispute).  Ms. Chaitman selectively references Judge Maas's speculative comments doubting the utility of the indices at the December 13, 2016 arbitration, despite the fact the Trustee produced the indices to both Ms. Chaitman and Judge Maas on December 16, 2016—three days after the arbitration.  *See* Chaitman Dec. at 9.  Whatever Judge Maas might have thought about indices prior to receiving them is meaningless given that, after having the indices in his possession for three months, Judge Maas ordered Ms. Chaitman to use them in connection with further requests.  *See* March 2017 Order, Adv. Pro. No. 10-04995, ECF No. 81 at 6 ("These indices should enable Ms. Chaitman to formulate more focused requests for trading records.").

Ms. Chaitman's attempts to discredit the indices are also belied by the fact that she used them (after losing her third motion to compel) to request additional documents and that, on her admission, the documents produced by the Trustee contained "trading records."  While Ms. Chaitman suggests she did not use the indices to make those requests, her colleagues emailed pages of the indices to the Trustee identifying the specific boxes she wanted produced.  Furthermore, Ms. Chaitman's claim that the indices "give no real indication of the contents of the boxes" is demonstrably false based on a review of her own Exhibit B, as each line item has a detailed description.  And Ms. Chaitman's claim that "the Trustee has never disclosed what documents, if any, from the Queens Warehouse are also in the BLMIS Database" is false: The Trustee has explained to Ms. Chaitman multiple times that the column on the  index labeled "SCANNED?" identifies whether the specific box has been "scanned" and added to the BLMIS Database.

order for two years and then filed a motion requesting relief completely at odds with it is the

principal reason the third motion to compel was not "substantially justified." *See* T. Mem. at 4-

10. And the fact that Ms. Chaitman attempted to frame her requests for additional and

previously unrequested documents using the demonstrably false narrative that the Trustee had

ignored multiple "orders" does not negate the fact that Ms. Chaitman was requesting an

enormous universe of documents that nether Judge Maas nor this Court ever ordered the Trustee

to produce.[2]

Finally, Fed. R. Civ. P. 37(b) is a vehicle for litigants to obtain sanctions against a party

that fails to comply with an order compelling the production of certain documents—not one to

obtain another order compelling the production of the same materials that the delinquent party

had already failed to produce. Indeed, Rule 37(b)(2)(A) provides seven examples of the specific

sanctions courts may impose for failing to comply with an order—including deeming certain

facts established, striking pleadings, dismissing the action, or entering a default judgment—and

none of them involve the inherent futility of compelling further productions. In other words, the

purpose of Rule 37(b) is to sanction a delinquent party when a requesting party's efforts to obtain

specific documents—including obtaining a court order—have already failed. Ms. Chaitman had

never previously moved to compel access to the entire BLMIS Database, and thus if Ms.

Chaitman's third motion for additional documents was styled exclusively as one for sanctions

under Rule 37(b), as opposed to one compelling the production of documents under Rule 37(a),

the motion would essentially be defective.

---

[2] Ms. Chaitman's cataloguing of all the instances that she accused the Trustee of ignoring various orders in her second motion to compel submitted on February 21, 2017 (*see* D. Mem at 6-7) has no bearing on her separate application for access to the BLMIS Database over 18 months later after the March 2017 Order was entered. But it does demonstrate just how many times Ms. Chaitman was willing to falsely accuse the Trustee in a single submission.

Accordingly, the third motion sought to compel the production of documents under Fed.

R. Civ. P. 37(a), and the Trustee is entitled to seek fees incurred opposing that motion under Fed.

R. Civ. P. 37(a)(5)(B).

### B.    The Joint Letter Did Not Include a Motion for a Protective Order and the Trustee Has Fully Discharged His Meet and Confer Obligations

In a separate attempt to sidestep the operative rule, Ms. Chaitman argues that the Joint

Letter constituted a motion for a protective order *by the Trustee*, which Ms. Chaitman suggests

Judge Maas and the Court granted, and thus the distinct provisions of Fed. R. Civ. P. 37(a)(5)(A)

apply.  Rule 37(a)(5)(A) precludes an award of fees to a prevailing movant if "the movant filed

the motion before attempting in good faith to obtain disclosure or discovery without court

action."  According to Ms. Chaitman, because the Trustee "abruptly terminat[ed] the meet-and-

confer process" in advance of the Joint Letter's submission, the Trustee failed to satisfy the meet

and confer obligations of Fed. R. Civ. P. 37(a)(5)(A)(i).

This argument is based on a fictional record.  There is nothing in the Joint Letter

reflecting any application by the Trustee for a protective order; the Trustee merely opposed Ms.

Chaitman's motion to compel.  *See* Joint Letter at 7 ("Your Honor should therefore deny Ms.

Chaitman's request for 30 million documents as inconsistent with both the March 2017 order and

the Fed. R. Civ. P. 26, and also deny her motion for sanctions.").  And as discussed above, the

January and August 2019 Orders clearly decided a motion to compel by Ms. Chaitman, not a

motion for a protective order by the Trustee.  *See supra* at 2.

But whatever the Trustee's meet-and-confer obligations were in advance of the Joint

Letter, the Trustee has surely satisfied them.  The Trustee has extensively chronicled for both

Judge Maas and this Court his two years of attempts to satisfy Ms. Chaitman's demands, which

both Judge Maas and this Court have credited.  *See* January 2019 Order at AA17 ("the Trustee

has repeatedly tried to accommodate Ms. Chaitman's requests for BLMIS trading records");
August 2019 Order at 17 ("With each production, Chaitman asked for more, culminating with a
request for access to the entire BLMIS Database and, one day after a hearing held by the
Discovery Arbitrator on November 19, 2018, she also demanded access to all of the third-party
records in the 13,000 boxes in the Queens warehouse."); *see id.* at 28 (referencing Ms.
Chaitman's "everchanging and ever growing discovery requests").  As extensively recounted in
the Trustee's opposition to Ms. Chaitman's appeal of the January 2019 Order, these efforts
included multiple additional productions before the Joint Letter's submission and multiple
attempts at compromise and resolution.  *See* Trustee's Opposition to Defendants' Appeal, Adv.
Pro. No. 10-04995, ECF No. 139, at 20-21.

Ms. Chaitman nevertheless argues that the September 17, 2018 letter reflected the
Trustee's "abrupt termination" of the meet and confer process—but that is a mischaracterization
of both the letter and the procedural history of the dispute.  At the time the Trustee's counsel sent
Ms. Chaitman the September 17, 2018 letter encouraging her to make her motion, the parties had
already drafted the Joint Letter on Ms. Chaitman's insistence, and Ms. Chaitman had already
rejected the Trustee's efforts for an additional meet and confer.  *See* Trustee's Opposition to
Appeal, Adv. Pro. No. 10-04995, at 21 and TA583-84; Chaitman Decl. Ex. Z.  And after the
Joint Letter was drafted, and the Trustee expected Ms. Chaitman to submit it, Ms. Chaitman sent
the Trustee a letter containing familiar inaccuracies, which the Trustee determined, at that point,
were futile to engage and address:

> Dear Helen:
>
> On September 4, 2018, your colleague, Greg Dexter, sent me your portion of a
> draft joint letter to Judge Maas pursuant to his March 15, 2017 order governing
> your request for "trading records." We subsequently sent you the Trustee's

6

> position on September 10, 2018, and we were under the impression that you would be submitting the joint letter shortly thereafter.
>
> You have yet to do so, however, and have instead sent us a separate letter, dated September 14, 2018, in which you continue to obfuscate and misrepresent the relevant history of this dispute. At this juncture, given the multitude of inaccuracies in this recent letter, it is clear to us that we will need Judge Mass's assistance if we are to come to any resolution, and we therefore encourage you to submit the joint letter at your earliest convenience.

*Id.*

Nothing in this exchange constitutes an "abrupt termination" of the meet and confer process—particularly given that Ms. Chaitman had already formally terminated the Trustee's additional meet and confer efforts days earlier.  By that point, the Trustee's counsel was simply exasperated by the futility of engaging with Ms. Chaitman.  And a brief glance at Ms. Chaitman's letter to which the Trustee's counsel was responding shows that the Trustee's exasperation was justified.  *See* Chaitman Decl. Ex. AD.

Accordingly, the Trustee did not file a motion for a protective order, and in any event, fully discharged all applicable meet and confer obligations.

## II.    The Trustee is Entitled to Attorneys' Fees Pursuant to Fed. R. Civ. P. 37(a)(5)(B)

### A.    The Third Motion to Compel Was Not Substantially Justified

Virtually all the Trustee's arguments supporting his position that the third motion to compel was not substantially justified are unrebutted in Ms. Chaitman's opposition.  Ms. Chaitman simply asserts, in conclusory fashion, that she was substantially justified in requesting access to the BLMIS Database "because it would have imposed virtually no burden on the Trustee to simply share access to it" and because she "reasonably" believed that the Trustee had

violated discovery orders."[3]  D. Mem. at 13-14.  In doing so, Ms. Chaitman commits the same

improprieties that support the Trustee's Motion for Fees: ignoring the March 2017 Order

establishing the governing protocol that Ms. Chaitman ignored for two years and doubling down

on her demonstrably false interpretations of this Court's statements.  *See* D. Mem. at 13-14.

Ms. Chaitman had no "reasonable" basis to believe this Court had ordered the Trustee to

produce anything at the May 2016 Conference.  And even though the transcript was

unambiguous, Ms. Chaitman perpetuated this falsehood for two years—successfully misleading

this Court to credit her misstatements and mistakenly state there were "two orders" directing the

Trustee to turn over the documents.  Now, Ms. Chaitman attempts to use this Court's

misinformed statements—which stemmed from Ms. Chaitman's own misrepresentations—to

support her current position that she "reasonably" believed this Court "ordered" the Trustee to

produce documents.  The Court should reject this brand of twisted logic outright.

Moreover, while repeating her various misrepresentations, Ms. Chaitman affirmatively

ignored the *actual* order that governed the "trading records" dispute—the March 2017 Order

establishing the governing protocol—and continues to ignore it to this day.  Instead, Ms.

Chaitman asserts that she "reasonably" believed that the "formal order" that governed the dispute

was the January 4, 2017 Order—the order that was superseded by the March 2017 two months

later after Ms. Chaitman filed a second motion to compel.  Nowhere in Ms. Chaitman's papers is

there any explanation for how she discharged her obligations under March 2017 Order (because

she never did); nor is there any explanation for why she ignored that Order (because there is

none).

---

[3] Ms. Chaitman's burden argument is a conclusory rehashing of the same argument she made on appeal, which the Trustee addressed in his opposition.  *See* Trustee's Opposition to Appeal, Adv. Pro. No. 10-04995, ECF No. 139 at 27-29.

None of this conduct was "reasonable"—in fact, the only reasonable interpretation of Ms. Chaitman's conduct is that it was all deliberately misleading. The glaring absence of any substantial discussion in Ms. Chaitman's opposition disputing the Trustee's position that the third motion was not substantially justified alone suggests that it was not.

**B.    There Are No Circumstances Making an Award of Fees Unjust**

Ms. Chaitman has failed to establish that there are any unjust circumstances precluding an award of fees. First, Ms. Chaitman argues that the Trustee's production of additional documents from the BLMIS warehouse—nearly a month after the briefing on Ms. Chaitman's appeal of the January 2019 Order was closed and over four months after the January 2019 Order was entered—makes them a "prevailing party" under Fed. R. Civ. P. 37 and renders an award of fees unjust. D. Mem at 12. But that production had nothing to do with Ms. Chaitman's third motion to compel or subsequent appeal. As explained in the Trustee's opening brief, the Trustee produced those documents precisely because Ms. Chaitman had finally used the indices—after losing her motion before Judge Maas—to specifically identify the additional documents she sought in accordance with Judge Maas's March 2017 Order.[4] The notion that the Trustee produced these documents "in response" to Ms. Chaitman's third motion to compel or subsequent appeal—or that this production somehow demonstrates that either application was "successful"—is meritless. At the time of the production, Judge Maas had already denied the

---

[4] Here again, the Chaitman Declaration fabricates a fictional record designed to minimize the indices and the Trustee's productions. *See* Chaitman Dec. at ¶¶ 57-59. Ms. Chaitman sent the Trustee pages from the index identifying specific boxes she wanted produced. After adjustments for duplicates and errors were made, the total number of boxes requested was 138—125 scanned boxes and 13 unscanned boxes. The Trustee informed Ms. Chaitman that, of the 187,656 documents in the scanned boxes, 120,733 were already in E-Data Room 1 or had otherwise been produced to her, and then promptly produced all remaining documents. Of the 13 unscanned boxes, the Trustee scanned and processed 11 of them, omitting one box that contained personal-items (and no documents) and another that contained microfiche too expensive to process.

third motion and the appeal was already fully briefed.  And this Court had no knowledge of these supplemental productions when it entered the August 2019 Order affirming Judge Maas's ruling.

Given that Judge Maas had already denied the third motion to compel and the appeal was already under advisement—and given that Ms. Chaitman had ignored the Trustee's multitude of implorations to consult the indices for two years—the Trustee would have been justified treating the dispute as fully resolved and refusing any additional productions.  But in yet another good faith effort to satisfy another request for documents (untimely as it was), the Trustee nevertheless produced the documents virtually without objection.  Nothing in the record supports the conclusion that this somehow negates or otherwise diminishes the Trustee's entitlement to fees for opposing Ms. Chaitman's meritless application for the entire BLMIS Database and supplemental application to force the Trustee himself to identify additional documents in the BLMIS warehouse.

Second, Ms. Chaitman asserts that it would be unjust for Ms. Chaitman to incur fees for appealing the January 2019 Order and to pay Judge Maas's invoices.  D. Mem. at 11.  With respect to the invoices, the Order Appointing Discovery Arbitrator required the Trustee to pay the first $50,000 in JAMS fees in any given adversary proceeding and to evenly split any payments exceeding that amount.  ECF No. 14227, at ¶ 6.  Given the multiple Chaitman-related adversary proceedings that were referred to Judge Maas, the Trustee effectively credited Ms. Chaitman for $50,000 per adversary proceeding, which as a practical matter, resulted in the Trustee paying all JAMS-related fees for all discovery arbitrations between the Trustee and Ms. Chaitman.  But nothing in this arrangement extinguished the Trustee's right to recoup those fees under Fed. R. Civ. P. 37 under appropriate circumstances—and the Trustee certainly did not voluntarily waive that right in consenting to the appointment of a discovery arbitrator.

Nor is it unjust, under the circumstances, to award the Trustee fees for opposing Ms. Chaitman's appeal. According to Ms. Chaitman, "[t]he appeal only became *necessary* because the parties agreed to the Order Appointing Arbitrator which was designed to facilitate judicial economy . . . and to provide an inexpensive resolution to disputes. If this procedure had not been used, there would be no *need* for an appeal." D. Mem. at 11 (emphasis added). But the appeal was hardly a necessity. The January 2019 Order unequivocally denied Ms. Chaitman's third motion to compel and left no conceivable basis for a successful appeal. Judge Maas rejected each of Ms. Chaitman's arguments—referring to them as "entirely unsupported," "largely unexplained," "utterly unsupported by the record," and "based on a contorted view of the record." January 2019 Order, ECF No. 18354, at 4-6. On the other hand, Judge Maas fully validated the Trustee's position, noting that the Trustee "ha[d] repeatedly tried to accommodate Ms. Chaitman's requests for BLMIS trading records." January 2019 Order, ECF No. 18354, at 4. Nothing in the January 2019 Order should have left Ms. Chaitman with any reasonable expectation that she would fare differently on appeal.

Nor do the principal arguments Ms. Chaitman advanced on appeal support her contention the appeal was "necessary." As this Court concluded in the August 2019 Order: "The fundamental premise of the appeal, that I *ordered* the Trustee at the May 2016 hearing to produce all pre-1992 trading records, is wrong." August 2019 Order at 21 (emphasis in original). Ms. Chaitman did not need a formal ruling from this Court to establish this basic reality—the transcript is and always has been unambiguous. Ms. Chaitman nevertheless spent nearly three years asserting this frivolous claim—despite the Trustee's multiple efforts to explain to her that it was demonstrably false—and made the strategic choice to not only assert it on appeal, but to make it the "fundamental premise of the appeal."

11

That the Court granted Ms. Chaitman leave to appeal the January 2019 Order is immaterial. Granting leave to appeal an appointed discovery arbitrator's order is not an implicit endorsement of the arguments' merits—much like the Court's authorizations of various discovery motions at Local Rule 7007 conferences are not implicit endorsement of a motion's merits. Nor did the Court "invite" Ms. Chaitman to file her appeal—unlike the magistrate judge in the inapposite case upon which Ms. Chaitman relies. *Mantell v. Chassman*, 512 Fed. Appx. 21, 24 (2d Cir. 2013) ("the magistrate judge *invited* [party] to file objections to [attorney declaration], but then sanctioned [party] for doing so by awarding fees associated with [counter-party's] reply"). Rather, Ms. Chaitman herself requested leave to appeal an order and the Court granted that request. And given that Ms. Chaitman's mischaracterizations of the May 2016 Conference had successfully persuaded the Court that there were "two orders" requiring the Trustee to produce "trading records," it is unclear whether the Court even realized the extent of Ms. Chaitman's mischaracterizations until the appeal was under advisement. Indeed, if the appeal was "necessary" to any party, it was necessary for the Trustee to fully brief the "trading records" dispute before this Court, as he did, in order to definitively correct the record Ms. Chaitman had successfully distorted.[5]

Ms. Chaitman has therefore failed to establish that the award of the requested fees would be unjust.

---

[5] In support of her contention that a party cannot recover fees for opposing an appeal of a motion to compel, Ms. Chaitman relies on a series of inapposite cases addressing the propriety of awarding fees incurred opposing a motion for reconsideration. *See, e.g., Telluride Management Solutions, Inc. v. Telluride Inv. Group*, 55 F.3d 463 (9th Cir. 1995) (addressing propriety of additional fees awarded for opposing a motion to reconsider a sanctions award, not the underlying discovery motion); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (holding that sanction of evidence preclusion is unavailable under Fed. R. Civ. P. 37(B)(2)(B) when the allegedly delinquent party had not violated a court order). While there apparently is no case law addressing the propriety of an award of fees under Fed. R. Civ. P. 37(a)(5)(B) incurred opposing an appeal of a discovery arbitrator's order denying a motion to compel, there are good reasons to award the Trustee such fees here, as discussed above.

### III.     The Trustee's Requested Fees Are Reasonable Under Fed. R. Civ. P. 37(a)(5)(B)

Rule 37(a)(5)(B) entitles the Trustee to his "reasonable expenses incurred in opposing the

motion, including attorney's fees," and the Trustee's proposed fees are reasonable.  As explained

in the Trustee's opening brief, the Trustee only seeks to recoup those fees billed by the associate

attorney that performed the bulk of the work on all relevant submissions and arguments—even

though other attorneys, including partners, were involved at all phases of the process (as

reflected in the time entries).[6]  Nor is the Trustee seeking fees for prosecuting this Motion, even

though "a prevailing party may recover for hours expended in connection with a fee request,"

*Brown v. Starrett City Associates*, Case No. 09 Civ. 3282 (JBW), 2011 WL 5118438, at *6

(E.D.N.Y. Oct. 27, 2011), or other qualified expenses the Rule expressly permits.

Ms. Chaitman nevertheless asserts a litany of complaints about the specific fees requested

and demands various remedies, ranging from a series of across-the-board discounts to outright

denial of the entire Motion.  The Trustee addresses these arguments below.

### A.     The Trustee's Submitted Time Records Are Not "Block Billed" And Enable the Court to Conduct a Meaningful Review of the Hours Requested

Ms. Chaitman asserts that the Court should apply a 15% reduction in the fees requested

because the contemporaneous time records contain "block billing."  This is a

mischaracterization, as the time entries on which Ms. Chaitman focuses demonstrate.  For

example, Ms. Chaitman takes issue with the 2.5 hour time entry on November 19, 2019

---

[6] Ms. Chaitman argues that the Trustee has not submitted contemporaneous time records in support of its Motion. *See* D. Mem. at 16.  However, as reflected in the Shifrin Declaration and accompanying Exhibits, the Trustee included charts cataloguing the contemporaneous time records submitted for each discreet component of the dispute, and these charts satisfy the time record requirements articulated in the relevant case law.  *See New York State Ass'n for Retarded Children, Inc. v. Carey* 767 F.3d 144, 148 (2d Cir. 2014) ("These records should specify, for each attorney, the date, the hours expended, and the nature of the work done."); *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991) (awarding attorney's fees to a plaintiff who submitted typewritten records that refer to transcriptions of contemporaneous records, and which indicate for each attorney, the dates on which they performed certain work and the hours they expended on these tasks).

containing the narrative: "Participate in Chaitman LLP arbitration before Judge Maas; confer

with Mr. Cremona regarding same."  Shifrin Dec. Ex. B.  The associate who billed this time was

accompanied to the in-person arbitration by the referenced attorney, and the two attorneys

conferred about the argument before and after the arbitration.  Including such detail in a time

entry does not constitute "block billing"—it merely states who the attorney spoke with in

connection with the stated task.  Many tasks attorneys do are collaborative, and including the

details of such collaboration in a time entry pertaining to a specific task does not make it a

"block entry"—it makes it a more detailed entry.  And it does not in any way impede the Court's

ability to determine whether the time spent on the given task was reasonable—which is the

ultimate objective.  *Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017) (holding that block

billing "is permissible so long as the records allow the court to conduct a meaningful review of

the hours requested"); *see Safeco Ins. Co. of Am. V. M.E.S., Inc.* 2019 U.S. App. LEXIS 32761 at

*6 (2d. Cir. 2019) (affirming award of attorney's fees because no alleged billing deficiency

prevented district court from meaningfully assessing reasonableness of fees and hours billed).

To the extent other time entries contain more than one item, they are identical or substantially

similar in style.[7]

**B.    The Trustee's Submitted Time Entries are Neither Vague Nor Excessive**

Ms. Chaitman submits that the time entries supporting the Trustee's opposition to Ms.

Chaitman's appeal are vague and excessive.  As a preliminary matter, Ms. Chaitman incorrectly

claims that the time entries related to the appeal total "over 80 hours in attorney time or

---

[7] The same is true for the 2.8 hour entry with the narrative: "Prepare for Chaitman LLP arbitration before Judge Maas; confer with Mr. Cremona regarding same."  The associate billing this time was preparing for the arbitration and conferring with the referenced attorney over email.  Moreover, none of the time entries include pure travel time. To the extent the attorney prepared for the arbitration and/or conferred with counsel to and from the arbitration, only that time was included.

approximately $45,000." D. Mem. at 18. The total time actually spent and reflected on the

relevant Exhibit is 68.8 hours for $40,179.20. *See* Shifrin Dec. Ex. E.

That error aside, Ms. Chaitman does not identify a single time entry that is vague—only

generally states that they *all* are vague. Ms. Chaitman is wrong. The case law is clear that

"[a]ttorneys...are not required to provide the Court with a detailed accounting of each minute

spent performing a task in the case." *Access 4 All, Inc. v. 135 West Sunrise Realty Corp.*, No. 06

Civ. 5487, 2008 U.S. Dist. LEXIS 91674, 2008 WL 4453221, at *10 (E.D.N.Y. Sept. 30, 2008)

(rejecting an argument for reduction of attorney's fees based on "vague" descriptions because the

Court was able to determine the nature of the work performed). Rather, time entries should be

specific enough to "identify the general subject matter of time expenditures." *Hensley v.

Eckerhart*, 461 U.S. 424, 437 n.12 (1983).

Time entries are considered "vague" only where they are devoid of any detail as to what

the attorney is billing for. *United States ex rel. Doe v. Acupath Labs., Inc.*, 2015 U.S. Dist.

LEXIS 34506 at *36 (E.D.N.Y. Feb. 27, 2015) (identifying entries as vague when an attorney

listed one word, "research", as the entire description and wrote "(see 6/28/10, 6/29/10,

7/1/10)"). And entries that "specify the date, hours expended, and nature of the work done" are

sufficient. *See Microban Prods. Co. v. API Indus.*, 2014 U.S. Dist. LEXIS 92704 at *13

(S.D.N.Y. July 7, 2014) (quoting *Meriwether v. Coughlin*, 727 F. Supp. 823, 827 & n.5

(S.D.N.Y. 1989) (citing *Carey*, 711 F.2d at 1148).

The submitted time entries satisfy these standards. Drafting a brief typically involves

writing, research, and discussions with others about the brief's contents, and that is exactly what

the time entries describe, explain, and reflect. *See* Shifrin Dec. Ex. E. Each entry details the

nature of the task performed and how it related to the appeal, allowing the Court to discern what exactly the billing attorney did.[8]

Nor is the fee request excessive given the nature of the task that was at hand. As this Court recognized in the August 2019 Order, the "trading records" dispute has a "long and tortuous history," which was exacerbated by Ms. Chaitman's various mischaracterizations of the record and accusations of impropriety against the Trustee. With that background, it was imperative for the Trustee to correct the record and definitively establish that he complied with every order and "accommodate[d] Ms. Chaitman's ever changing demands"—as opposed to concealing documents and making false statements to this Court, as Ms. Chaitman had routinely alleged the Trustee had done. The Trustee's opposition to the appeal contained 20 pages of procedural history with extensive references to the record, including a supplemental appendix totaling nearly 600 pages. Indeed, this Court stated in the August 2019 Order that "[t]he Trustee's opposing memorandum *extensively recounts the long history* of the discovery dispute regarding the trading records and the proceedings before this Court and the Discovery Arbitrator"—the bulk of which the Court expressly adopted in the 28-page August 2019 Order, presumably due to the Trustee's significant efforts to present the Court with the entire story for the first time. That was precisely the result the Trustee wanted, and it demonstrates that the fees expended synthesizing that story were justified and not excessive.[9]

---

[8] The Trustee agrees with Ms. Chaitman that the March 26, 2019 time entry for 1.8 hours totaling $1,051.20 with the narrative "Address Chaitman LLP discovery dispute; confer with Ms. Boga and Mr. Dexter regarding same" should not be included in the fee application, as it related to Ms. Chaitman's request for additional documents, and not the opposition to the appeal.

[9] The cases cited by Ms. Chaitman provide examples of billing not present here. *See, e.g., S.E.C. v. Yorkville Advisors LLC,* 2015 WL 855796 at *13 (S.D.N.Y. Feb. 27, 2015) (165.9 hours billed by four partners, two associates, and paralegal—including 1.8 hours to read a 21-word court order—deemed excessive because motion was straightforward, did not require input from four partners, and required minimal legal research); *Bravia Capital Partners, Inc. v. Fike,* 296 F.R.D. 136, 145 (S.D.N.Y. 2013) (reducing fees where references to "confer with" various individuals were not connected to the motion); *Marisol A. ex rel. Forbes v. Giuliani,* 111 F.Supp.2d 381,

16

### C.    The Trustee is Entitled to All the Fees Related to the Joint Letter

According to Ms. Chaitman, because Fed. R. Civ. P 37(a)(5)(B) limits a party's

recoupment of fees to those "incurred opposing the motion," the Trustee is precluded from

recovering fees for any task that took place before the Joint Letter was submitted.  But such

extreme formalism disregards the nature of a joint submission—which, by definition, contains

both the substantive application and the opposition to it—and would thereby preclude a party

from recovering the exact fees Fed. R. Civ. P. 37(a)(5)(B) authorizes.  Because it was a joint

submission, the Trustee's opposition to Ms. Chaitman's motion was drafted, by necessity, before

the Joint Letter was formally submitted to Judge Maas.  Each of the time entries on Exhibit A to

the Shifrin Declaration relate to the Trustee's drafting of his portion of the Joint Letter.  Under

Ms. Chaitman's theory, the Trustee could not recover the fees he incurred drafting the opposition

to her motion—an absurd result that would violate the spirit and purpose of Fed. R. Civ. P.

37(a)(5)(B).  The case Ms. Chaitman cites in support of her proposition is inapposite, as it

involved a party's attempts to obtain fees for communications "regarding the discovery dispute

before the motion was made" and before the party formally opposed it.  *See Spirit Realty, L.P. v.*

*GH&H Mableton, LLC*, 319 F.R.D. 474, 477, n.3 (S.D.N.Y. 2017).[10]

---

396-97 & n. 10 (S.D.N.Y. 2000) ("Of the thousands of hours challenged by defendants, at least some of the time entries are so vague that the Court is unable to determine whether the time was reasonably expended.").

[10] Ms. Chaitman is correct that the fees reflected in the exhibits attached to the Shifrin Declaration do not reflect the 10% discount provided to SIPC. Accordingly, the Trustee consents to a reduction in the total fees requested by 10%. The new total is reflected in the Conclusion section below.  With respect to Ms. Chaitman's claims that the Trustee has not submitted any evidence demonstrating that its rates are reasonable, courts may look to its own experience reviewing fee applications and other decisions to determine the market rate.  *Martinez v. City of New York*, 330 F.R.D. 60, 69 (E.D.N.Y. 2019).  Based on available case law in the Southern District of New York, the requested fees, particularly with the 10% discount, are well-within the market rate range for an associate in his eighth and ninth year of practice.  *See Thomas v. City of New York*, Case No. 14 Civ. 7513, 2017 WL 6033532 (E.D.N.Y. Dec. 1, 2017) (collecting cases from Southern District of New York and providing rates for attorneys with various amounts of experience).

## **CONCLUSION**

The Trustee respectfully requests that the Court award the Trustee the fees and expenses

described above and in the accompanying Declaration of Maximillian S. Shifrin, totaling

$70,095.87.

Dated: New York, New York
          January 17, 2019

By: */s/ David J. Sheehan*____
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:  212.589.4200
Facsimile:  212.589.4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Maximillian S. Shifrin
Email:  mshifrin@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*