**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Oren J. Warshavsky

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> HSBC BANK PLC, *et al.*, <br><br> Defendants. | Adv. Pro. No. 09-01364 (SMB) |

<u>**MOTION FOR THE ISSUANCE OF LETTER OF REQUEST**</u>

1.　　　Irving H. Picard (the "Trustee"), trustee for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor

Protection Act ("SIPA"), substantively consolidated with the chapter 7 bankruptcy estate of

Bernard L. Madoff, through the Trustee's attorneys, Baker & Hostetler LLP, respectfully submits

this Motion for the Issuance of a Letter of Request for International Judicial Assistance to

Bundesministerium für Verfassung, Reformen, Dereguilierung und Justiz of the Republic of

Austria for the examination of Austrian resident, Karim Bibars.

2.　　　This application is made pursuant to 28 U.S.C. § 1781, this Court's inherent

authority, and in light of the comity between the United States and Austria.

3.　　　Karim Bibars is a foreign citizen and a non-party.  Thus, the Letter of Request

provides the only means of compelling discovery from him.

## FACTUAL BACKGROUND

**Madoff's Ponzi Scheme and Alpha Prime's Connection to BLMIS**

4.　　　Madoff, through the investment advisory business of BLMIS, conducted a

decades-long Ponzi scheme of breathtaking scale.  (*See* Trustee's Second Amended Complaint

filed on September 24, 2019, ¶¶ 27-37 (ECF No. 567).)

5.　　　Sonja Kohn ("Kohn"), an Austrian investment professional with personal and

professional ties to Madoff, recruited new European investors to BLMIS.  In 1993, Stefan

Zapotocky ("Zapotocky"), the head of UniCredit Bank Austria AG's ("Bank Austria") securities

department, hired Kohn as an advisor and consultant.  (*Id.* ¶¶ 39, 41, 43.)

6.      Kohn introduced Zapotocky and other Bank Austria executives to Madoff.

Following this introduction, Kohn and Zapotocky established Primeo Fund ("Primeo"), one of

the many BLMIS feeder funds with which the two were ultimately associated.  (*Id. ¶* 44.)

7.      Primeo was hugely successful for its founders.  An outgrowth of this success was

the creation of a network of additional feeder funds whose sole purpose was also to direct

investments into BLMIS.  Alpha Prime Fund Ltd. ("Alpha Prime") was one such fund.  (*Id. ¶*

45.)

8.      Created in March 2003, Alpha Prime was designed to mimic Primeo in every

respect; it was designed as a "clone" of Primeo.  Alpha Prime and Primeo shared not only a

common broker and investment strategy, but were founded, serviced, and managed by the same

individuals: Kohn, Zapotocky, Ursula Radel-Leszczynski ("Radel-Leszczynski"), Nigel Fielding

("Fielding"), and Peter Fischer (the "Directors").  (*Id. ¶* 46.)

9.      During the six years preceding the Filing Date, BLMIS made transfers to Alpha

Prime totaling at least $83,170,000.  Of that amount, pursuant to a Partial Settlement Agreement,

Alpha Prime returned $76,450,000 in two-year transfers.  The Trustee seeks to avoid and recover

$6,720,000 (the "Six-Year Transfers") under section 544 of the Bankruptcy Code and applicable

provisions of the NYDCL, particularly §§ 273-277, and of SIPA, particularly § 78fff-2(c)(3).

The Six-Year Transfers were, and continue to be, customer property within the meaning of SIPA

§ 78*lll*(4) and are avoidable and recoverable under sections 548, 550, and 551 of the Bankruptcy

Code, and applicable provisions of SIPA.  (*Id. ¶¶* 6, 184, 186.)

10.     On or about February 2, 2009, Alpha Prime filed a customer claim with the

Trustee that the Trustee designated as Claim No. 001503 (the "Customer Claim").  The

Customer Claim asserted that Alpha Prime is entitled to the allowance of a customer claim in an

3

amount reflected on its BLMIS account statement for the period ending November 30, 2008.

Alpha Prime subsequently agreed that its Customer Claim is limited to its net equity,

$250,671,000.  As part of the Partial Settlement Agreement, the Trustee allowed Alpha Prime's

Customer Claim in an amount equal to 95% of Alpha Prime's net equity, or $238,137,450.  The

Trustee seeks to have the remaining five percent of the Customer Claim disallowed and/or

equitably subordinated.  (*Id.* ¶ 187.)

**Alpha Prime's Service Providers Have Relevant Knowledge**

11.     Kohn and Zapotocky appointed various service providers to form the enterprise

that operated Primeo.  (*Id.* ¶ 49.)  They formed BA Worldwide Fund Management Limited ("BA

Worldwide"), a Bank Austria affiliated company, to serve as Primeo's investment adviser, and

appointed Bank Medici AG ("Bank Medici"), another entity controlled by Kohn, as its sub-

adviser.  (*Id.* ¶¶ 50, 55.)

12.     Radel-Leszczynski worked at BA Worldwide and served as its president from

2000-2007.  (*Id.* ¶ 51.)

13.     HSBC entities acted as service providers to Primeo and Alpha Prime.  (*Id.* ¶¶ 50,

53-54, 56.)  The Directors appointed HSBC Bank Bermuda ("HBOB") as Alpha Prime's

administrator and custodian.  (*Id.* ¶ 62.)  By a January 2007 novation, Alpha Prime appointed

HSBC Securities Services (Bermuda) Ltd. ("HSSB") its administrator and HSBC Institutional

Trust Services (Bermuda) Limited ("HITSB") its custodian.  (*Id.*)  HBOB, HSSB, and HITSB

delegated their duties to HSBC Securities Services (Luxembourg) S.A. ("HSSL") which, as a

result, was appointed Alpha Prime's sub-administrator and sub-custodian.  (*Id.*)  HSSL was also

Primeo's custodian and sub-administrator.  (*Id.* ¶ 57.)

14.     The Directors and Alpha Prime's service providers worked together as divisions

4

of a single organization, just as they did with Primeo. Kohn, Zapotocky, and Radel-Leszczynski

recruited and interfaced with potential BLMIS investors; Fielding managed the diligence on

BLMIS and acted as the gatekeeper between the HSBC service providers and the funds' directors

and managers; and BA Worldwide monitored and analyzed Alpha Prime's investment portfolio

and performed various other administrative services. (*Id.* ¶ 68.)

15.     BA Worldwide performed due diligence on Primeo and Alpha Prime. This due

diligence included tracking the purported securities trades shown on BLMIS customer statements

and trade confirmations alongside publicly available market data. That purported trading activity

consistently showed impossible trades. (*Id.* ¶¶ 79, 108.)

16.     Based on its due diligence, Alpha Prime's Directors and service providers knew

that, among other things:

        a.   In a two-year period, 64% of the total number of options contracts purportedly

            traded for Primeo exceeded the total number of comparable options traded on

            the Chicago Board Options Exchange ("CBOE"). In one instance, the call

            options purportedly traded for Primeo on a particular day exceeded the

            number of those call options executed on the CBOE for that day by 19,700%.

            (*Id.* ¶ 83.) Purported options trades for Alpha Prime exceeded the total

            volume for options with the same trade date, strike price, and expiration date

            as traded on the CBOE on 162 separate occasions. (*Id.* ¶ 111.)

        b.   The prices BLMIS reported for securities traded for Primeo were outside the

            daily range. When this occurred, BA Worldwide's report marked the BLMIS

            price "False" and noted whether the false price benefitted Primeo's account by

            marking it positive or negative. (*Id.* ¶¶ 85-88.) BA Worldwide's reports for

Alpha Prime showed 395 equities trades outside of the daily range. (*Id.* ¶ 110.)

c.  Multiple dividend payments were purportedly made by Fidelity Spartan Fund in a calendar month (even though the fund reported only one payment) and on dates that did not correspond with published dividend payment dates. (*Id.* ¶ 91).  Primeo's Dividends Detail Reports indicated that 96.1% of the dividend payments did not correspond with the published payment dates.  Alpha Prime's Dividends Detail Reports indicated 128 of 133 dividend payments on the wrong date. (*Id.* ¶¶ 119-120.)

d.  Unbalanced hedges deviated from the split-strike conversion ("SSC") strategy.  Because a certain number of options are needed to hedge the equity positions in the basket, when an equity in a basket is sold without a corresponding adjustment to the options, this creates significant exposure to losses because the value of the equity basket and the options positions no longer match. (*Id.* ¶ 100.)  BA Worldwide's reports reflected at least 100 such instances over the course of its relationship with BLMIS. (*Id.* ¶ 101.)

e.  BA Worldwide's reports monitored the performance of other BLMIS feeder funds and reflected that between 2001 and 2008 there were not enough options on the entire listed market to implement the SSC strategy at any point in time. (*Id.* ¶¶ 102-104.)

f.  Equities were being purchased at the low and sold at the high at statistically impossible rates. (*Id.* ¶¶ 125-126.)

g. Speculative options trading deviated from the SSC strategy in 94 transactions. (*Id.* ¶¶ 129-133.)

h. Madoff always exited the market at quarter- and year-end despite his touting "market timing" as a cornerstone of the SSC strategy. (*Id.* ¶¶ 131-132.)

**Karim Bibars's Connections to Alpha Prime**

17. From May 2000 to December 2002, Mr. Bibars was employed by Domus Facility Management GmbH, a Bank Austria subsidiary located in Vienna, Austria, and was delegated to work at BA Worldwide.

18. During his time at BA Worldwide, Mr. Bibars worked closely with Radel-Leszczynski, who provided guidance to Mr. Bibars concerning Primeo's relationship with BLMIS.

19. Mr. Bibars's responsibilities at BA Worldwide included the calculation of the Net Asset Value of Primeo, for which BA Worldwide served as investment advisor.

20. The Trustee believes that Mr. Bibars has detailed personal knowledge relating to BA Worldwide's understanding of Madoff's trading strategy and performance, due diligence performed on BLMIS by BA Worldwide on behalf of its customers, and BA Worldwide's knowledge of fraudulent activity at BLMIS. Mr. Bibars's knowledge is relevant to these proceedings because, as Alpha Prime's agent, BA Worldwide acquired knowledge that can be imputed to Alpha Prime.

21. This Letter of Request is part of the Trustee's efforts to obtain testimony regarding Alpha Prime's knowledge of fraud at BLMIS. The testimony sought is directly relevant to the Trustee's allegations in the ongoing proceedings. The evidence sought is intended for use at trial to support the Trustee's claims to avoid and recover fraudulent transfers to Alpha Prime, to subordinate Alpha Prime's Customer Claim, and to recover fraudulent

7

transfers from the HSBC defendants.  This evidence is essential for the Trustee to fulfill his

statutory mandate to maximize recovery of customer property for the ultimate benefit of all of

Madoff's defrauded victims.

22.     For the above reasons, the Trustee believes that the proposed Letter of Request

(Exhibit 1) is just and appropriate and respectfully requests that the Court issue such Letter of

Request to the indicated Judicial Authority.


Dated:   New York, New York           */s/  Oren J. Warshavsky*
         January 21, 2020              Baker & Hostetler LLP
                                       45 Rockefeller Plaza
                                       New York, New York 10111
                                       Telephone:  212.589.4200
                                       Facsimile:  212.589.4201
                                       David J. Sheehan
                                       Oren J. Warshavsky

                                       *Attorneys for Irving H. Picard,*
                                       *Trustee for the Substantively Consolidated SIPA*
                                       *Liquidation of Bernard L. Madoff Investment*
                                       *Securities LLC and the Estate of Bernard L.*
                                       *Madoff*