**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Oren J. Warshavsky

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>          Plaintiff-Applicant,<br><br>                    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>          Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>          Plaintiff,<br><br>                    v.<br><br>HSBC BANK PLC, *et al.*,<br><br>          Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**MOTION FOR THE ISSUANCE OF LETTER OF REQUEST**

1.    Irving H. Picard (the "Trustee"), trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act ("SIPA"), substantively consolidated with the chapter 7 estate of Bernard L. Madoff, through the Trustee's attorneys, Baker & Hostetler LLP, respectfully submits this Motion for the Issuance of a Letter of Request for International Judicial Assistance to Le Procureur Général d'État of the Grand Duchy of Luxembourg for the examination of Luxembourg resident, Mr. Saverio Fiorino.

2.    This application is made pursuant to 28 U.S.C. § 1781, this Court's inherent authority, and in light of the comity between the United States and Luxembourg. Service will be effected pursuant to the *Hague Convention of 18 March 1970 of the Taking of Evidence Abroad in Civil or Commercial Matters*, to which the United States and Luxembourg are signatories.

3.    Mr. Fiorino is a foreign citizen and a non-party. Thus, the Letter of Request provides the only means of compelling discovery from him.

## FACTUAL BACKGROUND

**Madoff's Ponzi Scheme and Alpha Prime's Connection to BLMIS**

4.    Madoff, through the investment advisory business of BLMIS, conducted a decades-long Ponzi scheme of breathtaking scale. (*See* Trustee's Second Amended Complaint filed on September 24, 2019 ("SAC") ¶¶ 27-37 (ECF No. 567).)

5.    Sonja Kohn, an Austrian investment professional with personal and professional ties to Madoff, recruited new European investors to BLMIS. In 1993, Stefan Zapotocky, the head of UniCredit Bank Austria AG's ("Bank Austria") securities department, hired Kohn as an advisor and consultant. (*Id.* ¶¶ 39, 41, 43.)

6. Kohn introduced Zapotocky and other Bank Austria executives to Madoff. Following this introduction, Kohn and Zapotocky established Primeo Fund ("Primeo"), one of the many BLMIS feeder funds with which the two were ultimately associated. (*Id.* ¶ 44.)

7. Primeo was hugely successful for its founders. An outgrowth of this success was the creation of a network of additional feeder funds whose sole purpose was also to direct investments into BLMIS. Alpha Prime was one such fund. (*Id.* ¶ 45.)

8. Created in March 2003, Alpha Prime was designed to mimic Primeo in every respect; it was designed as a "clone" of Primeo. Alpha Prime and Primeo shared not only a common broker and investment strategy, but were founded, serviced, and managed by the same individuals: Kohn, Zapotocky, Ursula Radel-Leszczynski, Nigel Fielding, and Peter Fischer (the "Directors"). (*Id.* ¶ 46.)

9. During the six years preceding the Filing Date, BLMIS made transfers to Alpha Prime totaling at least $83,170,000. Of that amount, pursuant to a Partial Settlement Agreement, Alpha Prime returned $76,450,000 in two-year transfers. The Trustee seeks to avoid and recover $6,720,000 (the "Six-Year Transfers") under section 544 of the Bankruptcy Code and applicable provisions of the NYDCL, particularly §§ 273-277, and of SIPA, particularly § 78fff-2(c)(3). The Six-Year Transfers were, and continue to be, customer property within the meaning of SIPA § 78*lll*(4) and are avoidable and recoverable under sections 548, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA. (*Id.* ¶¶ 6, 184, 186.)

10. On or about February 2, 2009, Alpha Prime filed a customer claim with the Trustee that the Trustee designated as Claim No. 001503 (the "Customer Claim"). The Customer Claim asserted that Alpha Prime is entitled to the allowance of a customer claim in an amount reflected on its BLMIS account statement for the period ending November 30, 2008.

Alpha Prime subsequently agreed that its Customer Claim is limited to its net equity, $250,671,000. As part of the Partial Settlement Agreement, the Trustee allowed Alpha Prime's Customer Claim in an amount equal to 95% of Alpha Prime's net equity, or $238,137,450. The Trustee seeks to have the remaining five percent of the Customer Claim disallowed and/or equitably subordinated. (*Id.* ¶ 187.)

**Alpha Prime's Service Providers Have Relevant Knowledge**

11.  In addition to entities formed by Kohn, including BA Worldwide Fund Management Limited and Bank Medici AG, various HSBC entities acted as service providers to Primeo and Alpha Prime. (*Id.* ¶¶ 50, 53-54, 56.) The Directors appointed HSBC Bank Bermuda ("HBOB") as Alpha Prime's administrator and custodian. (*Id.* ¶ 62.) By a January 2007 novation, Alpha Prime appointed HSBC Securities Services (Bermuda) Ltd. ("HSSB") its administrator and HSBC Institutional Trust Services (Bermuda) Limited ("HITSB") its custodian. (*Id.*) HBOB, HSSB, and HITSB delegated their duties to HSBC Securities Services (Luxembourg) S.A. ("HSSL") which, as a result, was appointed Alpha Prime's sub-administrator and sub-custodian. (*Id.*) HSSL was also Primeo's custodian and sub-administrator. (*Id.* ¶ 57.)

12.  The Directors and Alpha Prime's service providers worked together as divisions of a single organization, just as they did with Primeo. Kohn, Zapotocky, and Radel-Leszczynski recruited and interfaced with potential BLMIS investors; Fielding managed the diligence on BLMIS and acted as the gatekeeper between the HSBC service providers and the funds' directors and managers; and BA Worldwide monitored and analyzed Alpha Prime's investment portfolio and performed various other administrative services. (*Id.* ¶ 68.)

13.  In addition to Primeo and Alpha Prime, HSSL, HBOB, HSSB, and HITSB acted as a custodian, sub-custodian, administrator or sub-administrator of other BLMIS feeder funds,

including Hermes International Fund, Thema International Fund, Herald Fund SPC, and Herald (Lux) SICAV. (*Id.* ¶¶ 56, 58, 62.)

14. HSSL performed due diligence on Primeo and Alpha Prime. This due diligence included tracking the purported securities trades shown on BLMIS customer statements and trade confirmation alongside publicly available market data. That purported trading activity consistently showed impossible trades. (*Id.* ¶¶ 79, 108.)

15. Based on its due diligence, Alpha Prime's Directors and service providers knew that, among other things:

a. In a two-year period, 64% of the total number of options contracts purportedly traded for Primeo exceeded the total number of comparable options traded on the Chicago Board Options Exchange ("CBOE"). In one instance, the call options purportedly traded for Primeo on a particular day exceeded the number of those call options executed on the CBOE for that day by 19,700%. (*Id.* ¶ 83.) Purported options trades for Alpha Prime exceeded the total volume for options with the same trade date, strike price, and expiration date as traded on the CBOE on 162 separate occasions. (*Id.* ¶ 111.)

b. The prices BLMIS reported for securities traded for Primeo were outside the daily range. When this occurred, BA Worldwide's report marked the BLMIS price "False" and noted whether the false price benefitted Primeo's account by marking it positive or negative. (*Id.* ¶¶ 85-88.) BA Worldwide's reports for Alpha Prime showed 395 equities trades outside of the daily range. (*Id.* ¶ 110.)

c. Multiple dividend payments were purportedly made by Fidelity Spartan Fund in a calendar month (even though the fund reported only one payment) and on dates that did not correspond with published dividend payment dates. (*Id.* ¶ 91.) Primeo's Dividends Detail Reports indicated that 96.1% of the dividend payments did not correspond with the published payment dates. Alpha Prime's Dividends Detail Reports indicated 128 of 133 dividend payments on the wrong date. (*Id.* ¶¶ 119-120.)

d. Unbalanced hedges deviated from the split-strike conversion ("SSC") strategy. Because a certain number of options are needed to hedge the equity positions in the basket, when an equity in a basket is sold without a corresponding adjustment to the options, this creates significant exposure to losses because the value of the equity basket and the options positions no longer match. (*Id.* ¶ 100.) BA Worldwide's reports reflected at least 100 such instances over the course of its relationship with BLMIS. (*Id.* ¶ 101.)

e. BA Worldwide's reports monitored the performance of other BLMIS feeder funds and reflected that between 2001 and 2008 there were not enough options on the entire listed market to implement the SSC strategy at any point in time. (*Id.* ¶¶ 102-104.)

f. Equities were being purchased at the low and sold at the high at statistically impossible rates. (*Id.* ¶¶ 125-126.)

g. Speculative options trading deviated from the SSC strategy in 94 transactions. (*Id.* ¶¶ 129-133.)

      h.   Madoff always exited the market at quarter- and year-end despite his touting "market timing" as a cornerstone of the SSC strategy.  (*Id.* ¶¶ 131-132.)

16. Through its various entities, divisions, and groups, HSBC had a multifaceted relationship with BLMIS.  (*See* Trustee's Amended Complaint filed on December 5, 2010 ¶¶ 243, 245, 281, 290, 292 (ECF No. 170).)

17. As noted above, HSSL, HBOB, HSSB, and HITSB acted as an administrator and custodian for several BLMIS feeder funds.  (*Id.* ¶¶ 281, 290.)

18. In addition, HSBC Private Banking Holdings (Suisse) SA, HSBC Private Bank (Suisse) SA, HSBC Bank USA, N.A., and their related affiliates persuaded wealthy clients to invest in BLMIS through BLMIS feeder funds.  (*Id.* ¶ 292.)

19. HSBC Bank USA and HSBC Bank plc also created structured financial products which directed hundreds of millions of dollars into Madoff's Ponzi scheme through various BLMIS feeder funds.  (*Id.* ¶¶ 245, 254.)

20. As a result of its many ties to BLMIS, HSBC performed significant amounts of due diligence over several years.  (*See, e.g.*, *id.* ¶¶ 295, 299, 305-312.)  The Alternative Fund Services ("AFS") division of HSSL directed much of HSBC's due diligence on BLMIS, including visits to BLMIS by Nigel Fielding and Brian Pettitt and several internal meetings where HSBC's identification of red flags was discussed.  (*See, e.g.*, SAC ¶¶ 150, 152-156, 162, 172, 174-177.)

**Mr. Fiorino's Connections to Alpha Prime**

21. Beginning in 1989, Mr. Fiorino held numerous positions at HSSL and its predecessor, Bank of Bermuda (Luxembourg) S.A., including Head of AFS.

22. During his employment with HSSL, Mr. Fiorino was commissioned to perform a detailed analysis of BLMIS' trading strategy and performance to assess whether the strategy

would be compatible with foreign regulations. As the Head of AFS, Fiorino communicated with HSBC employees across many HSBC entities.

23. Mr. Fiorino is specifically identified in the Trustee's SAC as a person with knowledge about Alpha Prime. In particular, his analysis of Primeo's customer statements and trade confirmations in 2001 and 2002 and his knowledge of the concerns about BLMIS raised by Ernst & Young are described in the Trustee's SAC. (*Id.* ¶¶ 82, 168-169.)

24. As an HSSL employee, Mr. Fiorino has knowledge of the various due diligence reports HSSL prepared and due diligence discussions that took place internally, as well as with clients and potential investors. (*See, e.g.*, *id.* ¶¶ 91, 108, 114, 119, 148.)

25. Mr. Fiorino was aware of and involved in HSSL's delegation of custodial duties to BLMIS and the implementation of formal sub-custody agreements between BLMIS and HSSL in connection with Primeo. He was aware of concerns raised by other HSBC employees regarding Madoff's trading strategy, performance, and operations, and served as a point of contact for fraud and related risk reviews HSBC commissioned KPMG to perform in 2006 and 2008.

26. The Trustee believes that Mr. Fiorino has detailed personal knowledge relating to HSSL's understanding of Madoff's trading strategy and performance, concerns raised by HSBC employees and auditors regarding BLMIS, and due diligence performed on BLMIS by HSSL and AFS on behalf of its customers, including Alpha Prime. Mr. Fiorino's knowledge as an HSSL employee and Head of AFS is imputed to HSBC, and as Alpha Prime's agent, HSBC's knowledge is imputed to Alpha Prime.

27. This Letter of Request is part of the Trustee's efforts to obtain testimony regarding Alpha Prime's knowledge of fraud at BLMIS. The testimony sought is directly

relevant to the Trustee's allegations in the ongoing proceedings.  The evidence sought is intended for use at trial to support the Trustee's claims to avoid and recover fraudulent transfers to Alpha Prime, to subordinate Alpha Prime's Customer Claim, and to recover fraudulent transfers from the HSBC defendants.  This evidence is essential for the Trustee to fulfill his statutory mandate to maximize recovery of customer property for the ultimate benefit of all of Madoff's defrauded victims.

28.    For the above reasons, the Trustee believes that the proposed Letter of Request (Exhibit 1) is just and appropriate and respectfully requests that the Court issue such Letter of Request to the indicated Judicial Authority.

| | |
|---|---|
| Dated:  New York, New York<br>January 21, 2020 | /s/ Oren J. Warshavsky<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone:  212.589.4200<br>Facsimile:  212.589.4201<br>David J. Sheehan<br>Oren J. Warshavsky<br><br>*Attorneys for Irving H. Picard,*<br>*Trustee for the Substantively Consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC and the Estate of Bernard L.*<br>*Madoff* |