**DUFFYAMEDEO LLP**
275 Seventh Avenue, 7th Fl
New York, New York 10010
Tel: (212) 729-5832
Todd E. Duffy
Douglas A. Amedeo

*Attorneys for Alpha Prime Fund Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**BERNARD L. MADOFF INVESTMENT SECURITIES LLC,**<br><br>Debtor. | **Adv. Pro. No. 08-01789 (SMB)**<br><br>**SIPA LIQUIDATION**<br><br>**(Substantively Consolidated)** |
| **IRVING H. PICARD,** Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>**ALPHA PRIME FUND LIMITED** *et al.*,<br><br>Defendants. | **Adv. Pro. No. 09-01364 (SMB)** |

**MOTION OF ALPHA PRIME FUND LTD FOR THE ISSUANCE OF LETTERS OF REQUEST**

Alpha Prime Fund ("Alpha Prime"), by and through its undersigned attorneys, respectfully submits this motion (the "Motion") for the issuance of Letters of Request for International Judicial Assistance to Bundesministerium für Verfassung, Reformen,

Dereguilierung und Justiz of the Republic of Austria for the examination of Austrian resident, Gerald Pistracher[1].

1. This application is made pursuant to 28 U.S.C. § 1781, this Court's inherent authority, and in light of the comity between the United States and Austria.[2]

2. Mr. Pistracher is a foreign citizen and a non-party. Thus, the Letter of Request provides the only means of compelling testimony from him.

## FACTUAL BACKGROUND

**Madoff's Ponzi Scheme and Alpha Prime's Connection to BLMIS**

**3. The following allegations in Paragraphs 4-19 are taken from the Trustee's Second Amended Complaint and do not represent factual assertions by Alpha Prime and in many instances are affirmatively denied by Alpha Prime.**

4. Madoff, through the investment advisory business of BLMIS, conducted a decades-long Ponzi scheme of breathtaking scale. (*See* Second Amended Complaint filed September 24, 2019 at ¶¶ 27-37 (ECF No. 567) ("Complaint")).

5. Sonja Kohn, an Austrian investment professional with personal and professional ties of Madoff, recruited new European investors to BLMIS. In 1993, Stefan Zapotocky, the

---

[1] In the Trustee's Motion filed with this Court on January 10, 2020 (ECF 574), the Trustee represents that he has "afforded Alpha Prime's counsel the opportunity to ask questions at the examination in order to give Alpha Prime a full and fair opportunity to ask questions at the examination in order to give Alpha Prime a full and fair opportunity to challenge the Trustee's allegations." (Trustee's Motion, Exhibit 1, Page 11, sec. 8. When Alpha Prime approached counsel to the Trustee to understand how they envisioned Alpha Prime receiving "a full and fair opportunity to ask questions", it turned out they had not. After discussions with the Trustee's counsel, Alpha Prime determined it would be simpler to file its own motion to examine Mr. Pristracher.

[2] In the Trustee's Motion, filed with the Court on January 10, 2020, the Trustee requests, among other things, "…(2) that eh examination be taken in the presence of a commercial stenographer selected by the Trustee or the court; (3) that the stenographer be allowed to record a verbatim transcript of the examination…" Alpha Prime believes that this request is contrary to Austrian Court procedures. Accordingly, Alpha Prime reserves its right to assert this concern in the Austrian Court.

2

head of UniCredit Bank Austria AG's ("Bank Austria") securities department, hired Kohn as an advisor and consultant. (*Id.* ¶¶39, 41, 43.)

6. Kohn introduced Zapotocky and other Bank Austria executives to Madoff. Following this introduction, Kohn and Zapotocky established Primeo Fund ("Primeo"), one of the many BLMIS feeder funds with which the two were ultimately associated. (*Id.* ¶ 44.)

7. Primeo was hugely successful for its founders. An outgrowth of this success was the creation of a network of additional feeder funds whose sole purpose was also to direct investments into BLMIS. Alpha Prime was one such fund. (*Id.* ¶ 45.)

8. Created in March 2003, Alpha Prime was designed to mimic Primeo in every respect; it was designed as a "clone" of Primeo. Alpha Prime and Primeo shared not only a common broker and investment strategy, but were founded, serviced, and managed by the same individuals: Kohn, Zapotocky, Ursula Radel-Leszczynski, Nigel Fielding, and Peter Fischer (collectively, the "Directors"). (Complaint at ¶ 46.)

9. During the six years preceding the Filing Date, BLMIS made transfers to Alpha Prime totaling at least $83,170,000. Of that amount, pursuant to a Partial Settlement Agreement, Alpha Prime returned $76,450,000 in two-year transfers. The Trustee seeks to avoid and recover $6,720,000 (the "Six-Year Transfers") under section 544 of the Bankruptcy Code and applicable provisions of the NYDCL, particularly §§ 273-277, and of SIPA, particularly § 78fff-2(c)(3). The Six-Year Transfers were, and continue to be, customer property within the meaning of SIPA § 78*lll*(4) and are avoidable and recoverable under sections 548, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA. (Complaint at ¶¶ 6, 184, 186.)

10. On or about February 2, 2009, Alpha Prime filed a customer claim with the Trustee that the Trustee designated as Claim No. 001503 (the "Customer Claim"). The Customer

Claim asserted that Alpha Prime is entitled to the allowance of a customer claim in an amount reflected on its BLMIS account statement for the period ending November 30, 2008. Alpha Prime subsequently agreed that its Customer Claim is limited to its net equity, $250,671,000. As part of the Partial Settlement Agreement, the Trustee allowed Alpha Prime's Customer Claim in an amount equal to 95% of Alpha Prime's net equity, or $238,137,450. The Trustee seeks to have the remaining five percent of the Customer Claim disallowed and/or equitably subordinated. (*Id.* ¶ 187.)

**ALPHA PRIME'S SERVICE PROVIDERS**

11.     Kohn and Zapotocky appointed various services providers to form the enterprise that operated Primeo. (*Id.* ¶ 49.) They formed BA Worldwide Fund Management Limited ("BA Worldwide"), a Bank Austria affiliated company, to serve as Primeo's investment advisor, and appointed Bank Medici AG, another entity controlled by Kohn, as its sub-adviser. (*Id.* ¶¶ 50, 55.).

12.     Radel-Leszczynski worked at BA Worldwide and served as its president from 2000-2007. (Complaint at ¶ 51.)

13.     HSBC entities acted as service providers to Primeo and Alpha Prime. (*Id.* ¶¶ 50, 53-54, 56.) The Directors appointed HSBC Bank Bermuda ("HBOB") as Alpha Prime's administrator and custodian. (*Id.* ¶ 62.) By a January 2007 novation, Alpha Prime appointed HSBC Securities Services (Bermuda) Ltd. ("HSSB") its administrator and HSBC Institutional Trust Services (Bermuda) Limited ("HITSB") its custodian. (*Id.*) HBOB, HSSB, and HITSB delegated their duties to HSBC Securities Services (Luxembourg) S.A. ("HSSL") which, as a result, was appointed Alpha Prime's sub-administrator and sub-custodian. (*Id.*) HSSL was also Primeo's custodian and sub-administrator. (*Id.* ¶ 57.)

14. The Directors and Alpha Prime's service providers worked together as divisions of a single organization, just as they did with Primeo. Kohn, Zapotocky, and Radel-Leszczynski recruited and interfaced with potential BLMIS investors; Fielding managed the diligence on BLMIS and acted as the gatekeeper between the HSBC service providers and the funds' directors and managers; and BA Worldwide monitored and analyzed Alpha Prime's investment portfolio and performed various other administrative services. (*Id.* ¶ 68.)

15. BA Worldwide performed due diligence on Primeo and Alpha Prime. This due diligence included tracking the purported securities trades shown on BLMIS customer statements and trade confirmations alongside publicly available market data. That purported trading activity consistently showed impossible trades. (Complaint at ¶¶ 79, 108.)

16. Based on its due diligence, Alpha Prime's Directors and service providers knew that, among other things:

   a. In a two-year period, 64% of the total number of options contracts purportedly traded for Primeo exceeded the total number of comparable options traded on the Chicago Board Options Exchange ("CBOE"). In one instance, the call options purportedly traded for Primeo on a particular day exceeded the number of those call options executed on the CBOE for that day by 19,700%. (Complaint at ¶ 83.) Purported options trades for Alpha Prime exceeded the total volume for options with the same trade date, strike price, and expiration date as traded on the CBOE on 162 separate occasions. (*Id.* ¶ 111.)

   b. The prices BLMIS reported for securities traded for Primeo were outside the daily range. When this occurred, BA Worldwide's report marked the BLMIS price "False" and noted whether the false price benefitted Primeo's account by marking it positive or negative. (*Id.* ¶¶ 85-

5

88.) BA Worldwide's reports for Alpha Prime showed 395 equities trades outside of the daily range. (*Id.* ¶ 110.)

  c. Multiple dividend payments were purportedly made by Fidelity Spartan Fund in a calendar month (even though the fund reported only one payment) and on dates that did not correspond with published dividend payment dates. (Complaint at ¶ 91). Primeo's Dividends Detail Reports indicated that 96.1% of the dividend payments did not correspond with the published payment dates. Alpha Prime's Dividends Detail Reports indicated 128 of 133 dividend payments on the wrong date. (*Id.* ¶¶ 119-120.)

  d. Unbalanced hedges deviated from the split-strike conversion ("SSC") strategy. Because a certain number of options are needed to hedge the equity positions in the basket, when an equity in a basket is sold without a corresponding adjustment to the options, this creates significant exposure to losses because the value of the equity basket and the options positions no longer match. (*Id.* ¶ 100.) BA Worldwide's reports reflected at least 100 such instances over the course of its relationship with BLMIS. (*Id.* ¶ 101.)

  e. BA Worldwide's reports monitored the performance of other BLMIS feeder funds and reflected that between 2001 and 2008 there were not enough options on the entire listed market to implement the SSC strategy at any point in time. (*Id.* ¶¶ 102-104.)

  f. Equities were being purchased at the low and sold at the high at statistically impossible rates. (*Id.* ¶¶ 125-126.)

  g. Speculative options trading deviated from the SSC strategy in 94 transactions. (*Id.* ¶¶ 129-133.)

  h. Madoff always exited the market at quarter- and year-end despite his touting "market timing" as a cornerstone of the SSC strategy. (*Id.* ¶¶ 131-132.)

6

17. From 2001 through 2005, Mr. Pistracher was an employee of BA Worldwide and was involved in due diligence BA Worldwide performed on Primeo's behalf.

18. During his employment with BA Worldwide, Mr. Pistracher was responsible for implementing BA Worldwide's "plausibility control" procedure for transactions BLMIS purportedly entered into on Primeo's behalf. BA Worldwide's "plausibility control" procedure involved performing extensive analytical work on BLMIS's purported options and equity trades to determine whether the transactions were in line with the market. This included, among other things, checking the securities Madoff purportedly traded on Primeo's behalf against publicly available price data reported by Bloomberg. BA Worldwide's "plausibility control" procedure is described in the Trustee's Second Amended Complaint. (*Id.* ¶¶ 85-88.)

19. Through his involvement with BA Worldwide's "plausibility control" procedure, Mr. Pistracher became aware of, among other things, instances where BLMIS purported to execute trades on behalf of Primeo at prices outside the daily range reported by Bloomberg. These pricing anomalies, among others, were recorded in reports created by Mr. Pistracher and other BA Worldwide employees and provided to Radel-Leszczynski. These reports are described in the Trustee's Second Amended Complaint. (*Id.* ¶¶ 85-106.)

20. The Trustee believes that Mr. Pistracher has detailed personal knowledge relating to the due diligence BA Worldwide performed on Primeo's behalf, the "plausibility control" procedure BA Worldwide implemented for transactions BLMIS purported to execute on Primeo's behalf, BA Worldwide's discovery of pricing anomalies relating to BLMIS's purported trading activity, and the various "plausibility control" reports BA Worldwide created to record those anomalies. Mr. Pistracher's knowledge is relevant to these proceedings because, as Alpha Prime's agent, BA Worldwide acquired knowledge that the Trustee may be allowed to impute to

7

Alpha Prime. Further, knowledge obtained by Radel-Leszczynski relating to BA Worldwide's due diligence may be allowed to be imputed to Alpha Prime through her role as a director of the fund.

21. In the alternative, Alpha Prime believes that Mr. Pistracher may be able to testify that through his work with Alpha Prime and BA Worldwide, he saw very few anomalies in the various reports. Mr. Pistracher can also testify whether he ever suspected that BLMIS was committing fraud or whether any of his colleagues at BA Worldwide (including Ursula Radel-Leszczynski) ever expressed their belief that BLMIS was not actually trading securities or whether anyone believed that BLMIS was front running.

22. This Letter of Request is part of the Alpha Prime's efforts to obtain testimony to defend against the Trustee's allegations of Alpha Prime's knowledge of fraud at BLMIS. The testimony sought is directly relevant to Alpha Prime's efforts to refute the Trustee's allegations in the ongoing proceedings. While the Trustee in his motion stated that he took provisions to allow Alpha Prime to fully participate in the proceedings, upon further conversations with counsel to the Trustee, the Parties agreed that Alpha Prime would file the instant application to ensure that its counsel would be allowed by the Austrian court to participate in the proceedings.

23. For the above reasons, Alpha Prime believes that the proposed Letter of Request (Exhibit 1) is just and appropriate and respectfully requests that the Court issue such Letter of Request to the indicated Judicial Authority.

Dated: New York, New York
February 3, 2020

**DuffyAmedeo LLP**

/s/ Todd E. Duffy
Todd E. Duffy
Douglas A. Amedeo
275 Seventh Avenue, 7th Floor
New York, NY 10001
Tel:    (212) 729-5832
Fax:   (212) 208-2437
*Counsel to Alpha Prime Fund Ltd.*