**CHAITMAN LLP**
Helen Davis Chaitman
hchaitman@chaitmanllp.com
465 Park Avenue
New York, New York 10022
Phone & Fax:  888-759-1114

*Attorneys for Defendants The Estate of Robert Shervyn Savin, and Barbara L. Savin in her capacity as Personal Representative of the Estate of Robert Shervyn Savin*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC<br><br>Plaintiff,<br><br>v.<br><br>THE ESTATE OF ROBERT SHERVYN SAVIN, and BARBARA L. SAVIN, in her capacity as Personal Representative of the Estate of Robert Shervyn Savin<br><br>Defendants. | Adv. Pro. No. 10-04889 (SMB) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR MANDATORY**
**WITHDRAWAL OF THE REFERENCE AND TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

   Madoff's Arrest, the SEC Complaint and the Bankruptcy ............................................ 2

   The Business ................................................................................................................... 4

   Formation of the LLC ..................................................................................................... 4

   Madoff Had Used BLMIS as a Trade Name Since the 1970s ........................................ 5

      The 509 and 703 Accounts ........................................................................................ 5

      The Letters ................................................................................................................. 7

      The Savin Account .................................................................................................... 7

ARGUMENT ........................................................................................................................ 8

  I.   WITHDRAWAL IS MANDATED ................................................................................ 8

  II.  THE TRUSTEE HAS NO STANDING AND THIS CASE MUST BE
       DISMISSED ................................................................................................................ 13

      A.   The Trustee Cannot Demonstrate An Injury in Fact ................................................ 14

          1.   SIPA Does Not Create Article III Injury .......................................................... 14

              a.   The Amended SEC Form BD does not establish that the
                   LLC paid the funds to Savin .................................................................... 18

              b.   The fact that the 703 and 509 Accounts were "commercial"
                   is non-dispositive. .................................................................................... 19

              c.   Savin did not make admissions in his Answer ......................................... 19

              d.   A bank customer cannot change ownership of a bank
                   account by printing debit memos. .............................................................. 20

              e.   The account agreement does not establish that the LLC's
                   funds were transferred to Savin. ............................................................... 21

B.    The Trustee Cannot Show That Any Loss Was Traceable to Savin's
      Conduct ............................................................................................................... 23

C.    The Trustee Does Not Have Prudential Standing .................................................... 23

CONCLUSION ........................................................................................................................ 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*In re A.R. Baron & Co.*,
    280 B.R. 794 (Bankr. S.D.N.Y. 2002) .................................................................................24

*Allen v. Wright*,
    468 U.S. 737 (1984) .....................................................................................13, 21, 23

*In re Ames Dep't Stores, Inc.*,
    512 B.R. 736 (S.D.N.Y. 2014) ..........................................................................................11

*Anderson v. City of Bessemer*,
    470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ...........................................17

*In re Bass*,
    171 F.3d 1016 (5th Cir. 1999) .............................................................................................9

*Bear, Stearns Sec. Corp. v. Gredd*,
    2001 WL 840187 (S.D.N.Y. July 25, 2001) .........................................................................12

*In re Bernard L. Madoff Inv. Secs., LLC*,
    424 B.R. 122 (Bankr. S.D.N.Y. 2010), *aff'd* 654 F.3d 229 (2d Cir. 2011) .......................18, 19

*In re Bernard L. Madoff Inv. Sec. LLC*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) ............................................................................. *passim*

*Bogart v. Israel Aerospace Indus. Ltd.*,
    No. 09 Civ. 4783 (LAP), 2010 WL 517582 (S.D.N.Y. Feb. 5, 2010) ..............................13, 23

*In re Cablevision*,
    315 B.R. 818 (S.D.N.Y. 2004) ..........................................................................................12

*Caplin v. Marine Midland Grace Trust Co.*,
    406 U.S. 416 (1972) ...................................................................................1, 10, 17, 24

*Cent. States v. Merck-Medco Managed Care, L.L.C.*,
    433 F.3d 181 (2d Cir. 2005) ..........................................................................................13, 21

*In re Chowaiki & Co. Fine Art Ltd.*,
    593 B.R. 699 (Bankr. S.D.N.Y. 2018) ...............................................................................15

*City of New York v. Exxon Corp.*,
    932 F.2d 1020 (2d Cir. 1991) ............................................................................................1

*City of New York v. Venkataram*,
2011 WL 2899092 (S.D.N.Y. July 13, 2011) ........................................................16

*In re Enron Corp.*,
388 B.R. 131 (S.D.N.Y. 2008) ..............................................................................12

*Enron Power Mktg., Inc.* v. *Cal. Power Exch. Corp.*,
2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) .........................................................9

*Fafel v. Dipaola*,
399 F.3d 403 (1st Cir. 2005) .................................................................................20

*Gladstone Realtors v. Village of Bellwood*,
441 U.S. 91 (1979) ................................................................................................22

*In re Int'l Pharmacy & Disc. II, Inc.*,
443 F.3d 767 (11th Cir. 2005) ..............................................................................16

*In re McCrory Corp.*,
160 B.R. 502 (S.D.N.Y. 1993) ................................................................................9

*Metzen v. United States*,
19 F.3d 795 (2d Cir. 1994) ..............................................................................17, 18

*NLRB v. Goodman (In re Goodman)*,
873 F.2d 598 (2d Cir.1989) ...................................................................................11

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ..............................................................................................22

*In re Park South Securities, LLC*,
326 B.R. 505 (Bankr. S.D.N.Y. 2005) ..................................................................22

*Perpetual Securities, Inc. v. Tang*,
290 F.3d 132 (2d Cir. 2002) ..................................................................................20

*Picard v. Fairfield Greenwich Ltd.*,
762 F.3d 199 (2d Cir. 2014) ..................................................................................21

*Picard v. Flinn Investments, LLC*,
463 B.R. 280 (S.D.N.Y. 2011) ..............................................................................11

*Picard v. HSBC Bank PLC*,
450 B.R. 406 (S.D.N.Y. 2011) .............................................................9, 12, 13, 24

*Picard v. HSBC Bank PLC*,
454 B.R. 25 (S.D.N.Y. 2011) ....................................................................13, 14, 23

*Picard v. JPMorgan Chase & Co. et. al.*,
    454 B.R. 307 (S.D.N.Y. 2011) ............................................................12

*Picard v. Mendelow*,
    560 B.R. 208 (Bankr. S.D.N.Y. 2016) ......................................1, 10, 14, 15

*Picard v Nelson, et al.*,
    2019 WL 6245772 (Bankr. S.D.N.Y. Nov. 19, 2019) ...........6, 17, 18, 20

*Raines v. Byrd*,
    521 U.S. 811 (1997) .................................................................22

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    2016 WL 6088136 .....................................................................15

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991) ..............................................13, 24

*Shugrue v. Air Line Pilots Ass'n, Int'l*
    , 922 F.2d 984 (2d Cir. 1990) ..................................................9

*Siding and Insulation Co., Inc. v. Acuity Mut. Ins. Co.*,
    754 F.3d 367 (6th Cir. 2014) ...................................................20

*Small Business Admin. v. Citibank, N.A.*,
    No. 94 Civ. 4259, 1997 WL 45514 (S.D.N.Y. Feb. 4, 1997) .................16

*Spielman v. Manufacturers Hanover Trust Co.*,
    60 N.Y.2d 221 (1983) ...............................................................16

*State of Qatar v. First American Bank of Va.*,
    885 F. Supp. 849 (E.D. Va. 1995) ............................................16

*Steinberg v. Buczynski*,
    40 F.3d 890 (7th Cir. 1994) ....................................................17

*U.S. v. McGaughy*,
    670 F.3d 1149 (10th Cir. 2012) ..............................................20

*Valley Forge Christian College v. Americans United for Separation of Church
    and State, Inc.*,
    454 U.S. 464 (1982) ...............................................................13

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..........................................................13, 24

*Wight v. BankAmerica Corp.*,
    219 F. 3d 79 (2d Cir. 2000) .............................................13, 23, 24

**Statutes**

11 U.S.C. § 303(g) ........................................................................................................... 3

11 U.S.C. § 304 ............................................................................................................... 12

11 U.S.C. § 548(a)(1) ...................................................................................................... 14

11 U.S.C. § 550(a)(1) ...................................................................................................... 13

15 U.S.C. § 78aaa, et seq. ........................................................................................ *passim*

15 U.S.C. § 78eee(a)(3) ............................................................................................ 10, 14

15 U.S.C. § 78eee(a)(4)(B) ......................................................................................... 2, 14

15 U.S.C. § 78eee(b)(3) .............................................................................................. 3, 14

15 U.S.C. § 78eee(b)(4) .............................................................................................. 3, 14

15 U.S.C. § 78fff–1(a) ..................................................................................................... 22

15 U.S.C. § 78fff-2(c)(3) ................................................................................................. 14

15 U.S.C. § 78iii(5) .................................................................................................... 10, 14

28 U.S.C. § 157(d) ............................................................................................... 1, 8, 9, 10

28 U.S.C. § 1334 ............................................................................................................... 9

N.Y. U.C.C. § 3-205 ........................................................................................................ 16

N.Y. U.C.C. § 3-401(2) .................................................................................................... 16

**Other Authorities**

Fed. R. Bankr. P. 5011 ...................................................................................................... 1

Local Rule 5011-1 ............................................................................................................. 1

United States Constitution ...................................................................................... 1, 10, 11

United States Constitution Article III ..................................................................... *passim*

Defendants The Estate of Robert Shervyn Savin and Barbara L. Savin, in her capacity as

Personal Representative of the Estate of Robert Shervyn Savin (together, "Savin"), through their

attorneys, Chaitman LLP, hereby submit this memorandum of law in support of their motion for

mandatory withdrawal of the bankruptcy reference, pursuant to 28 U.S.C. § 157(d), Federal Rule

of Bankruptcy Procedure 5011, and Rule 5011-1 of the Local Rules, and for dismissal of the

Complaint for lack of subject matter jurisdiction.

## PRELIMINARY STATEMENT

Withdrawal of the reference is mandatory in any proceeding that would involve

"significant interpretation, as opposed to simple application, of federal laws apart from the

bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991). This

motion to dismiss requires interpretation of subject matter jurisdiction and Article III standing

under the United States Constitution, as well as interpretation of the Securities Investor Protection

Act ("SIPA"), 15 U.S.C.A. § 78aaa, et seq., and New York State banking statutes. As a result, the

reference should be withdrawn.

The indisputable record submitted to this Court establishes that Irving H. Picard, the

Trustee of Bernard L. Madoff Investment Securities LLC (the "LLC") lacks Article III standing to

bring claims against Savin to recover withdrawals he took from his account because the Trustee is

not the personal trustee of Bernard L. Madoff and, as proven by the checks received by Savin,

every check Savin received was drawn on an account owned by Madoff individually, not on an

account owned by the LLC. Thus, the Trustee lacks standing to sue Savin. The only party who

had standing to sue Savin for transfers made by Madoff was Madoff's personal bankruptcy trustee.

*See In re Bernard L. Madoff Inv. Sec. LLC*, 557 B.R. 89, 109 (Bankr. S.D.N.Y. 2016) (*"Avellino"*),

("Only the Madoff trustee can recover actual transfers by the sole proprietorship."); *Mendelow*,

560 B.R. 208; *see also Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428-30 (1972)

{00043680 3 }                                    1

(a bankruptcy trustee is not empowered "to collect money not owed to the estate").  The Madoff

trustee did not file any fraudulent transfer claim against Savin.

     The Trustee has no evidence whatsoever that the debtor in whose shoes he stands, the LLC,

has ever owned the bank account from which withdrawals to Savin were made.  On the contrary,

every check paid to Savin was made from an account at JPMorgan Chase ("JPMC") in the name

of "Bernard L. Madoff" (the "509 Account").  Similarly, the Trustee has no evidence whatsoever

that the LLC ever owned the bank account into which checks from Savin were deposited: another

account at JPMC in the name of "Bernard L. Madoff" (the "703 Account").  Because, of course,

the Trustee only has Article III standing to claw back transfers allegedly made by his debtor, the

reference should be withdrawn and this case should be dismissed.

## **FACTUAL BACKGROUND**

<u>Madoff's Arrest, the SEC Complaint and the Bankruptcy</u>

     On December 11, 2008, Madoff was arrested by federal agents for violating criminal

securities statutes.  On the same day, the Securities and Exchange Commission (the "SEC") filed

a complaint against the LLC and Madoff in the Southern District of New York.  *Securities*

*Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791.

On December 15, 2008, pursuant to § 78eee(a)(4)(B) of SIPA, the Securities Investor Protection

Corporation ("SIPC") filed an application in the District Court asserting that the LLC was not able

to meet its obligations to securities customers as they became due and thus its customers needed

the protections afforded by SIPA.  *See* Application of SIPC, *Bernard L. Madoff Investment*

*Securities LLC et al.*, No. 08 CV 10791*, ECF Doc. No. 5.  On the same day, the SEC consented to

a combination of its own action with SIPC's application.  *Id*. at 10.

     On December 15, 2008, the District Court granted SIPC's application and entered an order

which, in relevant part, (i) appointed Picard as the trustee for the liquidation of the LLC pursuant

to § 78eee(b)(3) of SIPA; (ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant
to § 78eee(b)(3) of SIPA, and (iii) removed the case to this Court pursuant to § 78eee(b)(4) of
SIPA.  *See* Order of the United States District Judge Louis L. Stanton, *Bernard L. Madoff
Investment Securities LLC et al.*, No. 08 CV 10791, ECF Doc. No. 4.

On March 10, 2009, a Criminal Information was filed against Madoff.  On March 12, 2010,
Madoff pled guilty to 11 counts including securities fraud, investment adviser fraud, mail fraud,
wire fraud, three counts of money laundering, false statements, perjury, false filings with the SEC,
and theft from an employee benefit plan.

On April 13, 2009, several creditors commenced an involuntary bankruptcy petition against
Madoff.  (ECF Case No. 09-11893).  The court directed the appointment of an interim trustee for
Madoff pursuant to 11 U.S.C. § 303(g).  Alan Nisselson ("Nisselson" or the "Madoff Trustee")
was appointed Chapter 7 trustee for Madoff's individual bankruptcy estate.  While under a consent
order dated June 9, 2009, Madoff's estate was consolidated into the SIPA proceeding for the LLC,
under the terms of that order, both Picard and Nisselson remained as trustees of their respective
estates, continuing to have their separate powers and duties, with Nisselson retaining the authority
to bring avoidance actions on behalf of Madoff's estate pursuant to the express provisions of the
June 9, 2009 order.  *See Avellino* at 109; *see also* Adv. Pro. No. 08-01789-smb, ECF No. 252 at ¶
4 ("[n]otwithstanding the substantive consolidation of the Madoff estate into the [LLC] SIPA
Proceeding, the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate and shall
continue to have all powers, rights, claims and interests of a Chapter 7 trustee to bring claims under
Chapters 5 and 7 of the Bankruptcy Code in consultation with the SIPA Trustee and SIPC.").
Chapter 5 of the Bankruptcy Code is the Chapter under which the Trustee's action against Savin
has been brought.

<u>The Business</u>

It is undisputed that, through December 2008, Madoff operated two separate businesses:

a Legitimate Trading Business which included both proprietary trading ("PT"), trading securities

for its own account, and market-making("MM"), creating a market in certain securities and acting

as a broker-dealer for those securities; and an Investment Advisory ("IA") business.  Through

January 2001, Madoff operated both the Legitimate Trading Business and the IA business through

his sole proprietorship, which, as the Bankruptcy Court has acknowledged, were operated under

the trade name Bernard L. Madoff Investment Securities ("BLMIS") from as early as the 1970s.

("Madoff operated his financial business as a sole proprietorship" prior to January 1, 2001 under

the trade name "BLMIS," *Avellino*, 557 B.R. at 95); *see also* **Chaitman Dec. Ex. A**[1] [Nelson Trial

Tr. May 9, 2019 at 18:23-19:10]; **Ex. B** [July 17, 1991 letterhead of Bernard L. Madoff Investment

Securities]; **Ex. C** [February 9, 1979 credit to the Unflats from Bernard L. Madoff Investment

Securities]; **Ex. D** [February 7, 1979 confirmation slip to the Unflats from Bernard L. Madoff

Investment Securities].

<u>Formation of the LLC</u>

In January 2001, Madoff formed the LLC, to which he contributed his Legitimate Trading

Business.  There is extensive documentation evidencing that Madoff transferred the Legitimate

Trading Business to the LLC.  Indeed, Madoff sent letters to the Bank of New York, which serviced

the Legitimate Trading Business, to the SEC, the Depository Trust Company (the "DTC"), and to

others, informing them that the LLC would operate the Legitimate Trading Business.  **Chaitman**

**Dec. Ex. E [**January 1, 2001 letter from Madoff and the LLC to the Bank of New York; **Ex. F**

[January 1, 2001 letter from Madoff and the LLC to the National Securities Clearing Corporation

---

[1]  References to "Chaitman Dec." refer to the accompanying Declaration of Helen Davis Chaitman,
executed on February 3, 2020.

("NSCC")]; **Ex. G** [January 1, 2001 letter from Madoff and the LLC to the Options Clearing

Corporation ("OCC")]; **Ex. H** [January 1, 2001 letter from Madoff and the LLC to the Depository

Trust Company ("DTC")].  There is no documentary evidence that Madoff ever informed JPMC

that he wanted to transfer the IA business to the LLC.  Nor is there a single document suggesting

that Madoff sought to change the ownership of the 509 and 703 accounts to the LLC.

Indeed, even the Form BD that Madoff submitted to the SEC in 2001 when he transferred

the Legitimate Trading Business to the LLC, emphasized that the IA Business was not transferred.

On that form, Madoff clearly described the only businesses that the LLC engages in (or intends to

engage in) as market making and proprietary trading, *i.e.*, the Legitimate Trading Business.

Moreover, he affirmatively stated that the LLC does not engage in investment advisory services.

**Chaitman Dec. Ex. I** [SEC Form BD].  At pages 8 and 9 of Form BD, the LLC was asked to

check all of the "types of business[it] engaged in" (unless that business accounted for less than 1%

of annual revenue.).  It checked item "C," its market-making activities, item "V," its proprietary

trading activities, and item "Z," "Other" activities, which are described on page 10 of the form as

Madoff's membership in the Cincinnati Stock Exchange where he was a designated market maker.

Madoff did **not** check item "S," however, which referenced "Investment advisory services."

Madoff Had Used BLMIS as a Trade Name Since the 1970s

The 509 and 703 Accounts

As set forth below and in the Chaitman Dec., Savin's deposits to Madoff's IA Business

were all paid into the 703 Account.  The check deposits bear an endorsement stamp:  "For deposit

only, Bernard L. Madoff."  *See* **Chaitman Dec. Exs. J-N** [Deposits].  Similarly, all of the payments

allegedly sent to Savin were made with checks drawn on the 509 Account which bore the printed

name of "Bernard L. Madoff."  **Chaitman Dec. Exs. O -CV** [Checks].  Even after the LLC was

formed in January 2001, the 509 and 703 Accounts were never put into the name of the LLC.  The

509 Account continued in the name of Bernard L. Madoff and the 703 Account continued in the

name of the sole proprietorship, Bernard L. Madoff Investment Securities – with out the "LLC."

**Chaitman Dec. Exs. CW – CY** [JPMC Account Statements].

The Trustee has never produced a single document to indicate that Madoff's 509 or 703

Account was ever transferred to the LLC.  At the trial of *Picard v Nelson, et al.* Adv. Pro Nos. 10-

04377 and 10-04658, held on May 8 and 9, 2019, the Trustee's expert witness, Lisa Collura,

reluctantly admitted that, during her extensive review of Madoff's and the LLC's records and

JPMC's records, she had never seen any document to suggest that the LLC owned the 509

Account:

> Q:    And would you agree with me that you've never seen a J.P.
> Morgan Chase monthly statement which read as the owner of the
> account Bernard L. Madoff Investment Securities, LLC?
>
> A:    Not for the 509 account.
>
> Q:    You would agree with me that you have not seen it?
>
> A:    There -- I think there were some other bank accounts that
> were held in the name with LLC.
>
> Q:    Just answer my specific question.    You'll have an
> opportunity on redirect to say whatever you'd like.  But just answer
> my questions.  Did you ever see a statement from the 509 account
> that listed Bernard L. Madoff Investment Securities, LLC as the
> holder of the account?
>
> A:    No.

**Chaitman Dec. Ex. A** [Tr., May 9, 2019 at 13:7-21]; *see also* 18:3-5 (Q: "Okay.  The 509 account

was never changed to Bernard L. Madoff Investment Securities, LLC; was it?"  A: "That was never

on the statements.").  While Collura pointed out that, in 2002, the 703 account was changed from

Bernard L. Madoff to Bernard L. Madoff Investment Securities, the trade name that Madoff had used since the 1970's, Madoff never put the 703 Account into the name of the LLC.

At the same trial, Bruce Dubinsky, the Trustee's primary expert witness, was also forced to admit that he had never seen any bank statement for the 509 Account or 703 Account in the name of the LLC.  **Chaitman Dec. Ex. CZ** [Tr., May 8, 2019 at 171:23-172:8.].  And the Trustee has admitted that he has no document evidencing that the 509 Account was ever transferred to the LLC.  **Chaitman Dec. Ex. DA** [email dated June 12, 2018 from Baker & Hostetler to Chaitman].

<u>The Letters</u>

The Legitimate Trading Business had a banking relationship with Bank of New York, not JPMC, and it had relationships with the DTC, the NSCC, and the OCC, all of which provided services to the Legitimate Trading Business.  After the LLC was formed in January 2001, Madoff sent letters to the Bank of New York, to the DTC, to the NSCC, to the OCC, and to others, informing them that the LLC had been formed and that Madoff's accounts should be changed to the name of the LLC.  **Chaitman Dec. Ex. A** [Tr., May 9, 2019 at 29:15-31:15]; **Ex. E** [January 1, 2001 letter from Madoff and the LLC to the Bank of New York]; **Ex. F** [January 1, 2001 letter from Madoff and the LLC to the NSCC]; **Ex. G** [January 1, 2001 letter from Madoff and the LLC to the OCC]; **Ex. H** [January 1, 2001 letter from Madoff and the LLC to the DTC].  Madoff did not send any such letter to JPMC where he continued to hold the 509 Account in his personal name and the 703 Account in the name he had used for his sole proprietorship since the 1970s.

<u>The Savin Account</u>

Savin opened his account with the IA business, Account No. 1SO412, on January 17, 2000, a year before the LLC was formed.  But even after the LLC was formed in January 2001, Savin sent his deposits to Madoff individually.  For example, Savin sent a check to Madoff on May 10, 2004, in the amount of $75,000, and the check was made payable to "Bernard L. Madoff" and was

endorsed on the back by Bernard L. Madoff individually, stamped "For Deposit Only Bernard L. Madoff." **Chaitman Dec. Ex. N.**

Similarly, as set forth above, all of Savin's alleged withdrawals were paid to him on checks from the 509 Account bearing the name "Bernard L. Madoff." **Chaitman Dec. Exs. O-CV.** Moreover, Savin never directed a request for a withdrawal, or any other piece of correspondence, to the LLC. The correspondence was directed to "Bernard L. Madoff," "Bernard Madoff," "Bernard Madoff Withdrawal Dept," "Bernard Madoff Investment Securities, or individuals at some variation of the same. **Chaitman Dec. Ex. DB** [Correspondence].

While it is true that Savin signed a second agreement with Madoff on November 8, 2004 that is identical to the first agreement he signed except that it bears a header with the name of the LLC, he also signed a the Trading Authorization which, at MADTSS00548598, authorizes only "Bernard L. Madoff (whose signature appears below)" to act as Savin's agent for buying and selling securities and options. **Chaitman Dec. Exs. DC-DD.** The Customer Agreement itself defines the Broker as "you," *i.e.,* Bernard L. Madoff. Moreover, the original customer agreement states that it may not be "waived, altered, modified or amended" without a writing signed by the (original) broker, **Chaitman Dec. Ex. DD,** and the "new" customer agreement is not signed by anyone at all on behalf of Madoff. **Chaitman Dec. Ex. DC.** Thus, the original customer agreement controls.

## ARGUMENT

## I.    WITHDRAWAL IS MANDATED

Under 28 U.S.C. § 157(d), the District Court:

*shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires *consideration of both title 11 and other laws of the United States* regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).

District courts have original jurisdiction over bankruptcy cases and all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334 and may refer actions within its bankruptcy jurisdiction to the bankruptcy court. Bankruptcy courts are courts of limited jurisdiction, whose reach is wholly "grounded in and limited by statute." *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999), *citing Celotex Corp. v. Edwards*, 514 US 300, 307 (1995).

Under 28 U.S.C. § 157, the court must withdraw the reference to the bankruptcy court in any proceeding that would involve "'significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes.'" *Picard v. HSBC Bank PLC*, 450 B.R. 406, 409 (S.D.N.Y. 2011) ("*HSBC Bank I*") (quoting *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)); *accord Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990) (requiring "substantial and material consideration" of federal non-bankruptcy law). "'The purpose of section 157(d) is to assure that Article III judges decide issues calling for more than routine application of [federal laws] outside the Bankruptcy Code.'" *Enron Power Mktg., Inc.* v. *Cal. Power Exch. Corp. (In re Enron Corp.)*, 2004 WL 2711101, *2 (S.D.N.Y. Nov. 23, 2004) (quoting *Eastern Airlines, Inc.* v. *Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*, 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990)). The issues of non-bankruptcy law raised in the proceeding need not be "unsettled." *In re McCrory Corp.*, 160 B.R. 502, 505 (S.D.N.Y. 1993). Instead, they merely must involve "substantial and material" issues under non-bankruptcy law. *See In re Enron* 2004 WL 2711101 at *2 quoting *In re Ionosphere Clubs, Inc.*, 922 F.2d 994, 995 (2d Cir. 1990).

As set forth below, this case requires significant interpretation of non-bankruptcy law, including the United States Constitution, in order to determine whether the Trustee has standing to bring claims to recover funds transferred by Madoff individually as opposed to funds transferred by the LLC, when the June 9, 2009 Order of the District Court expressly reserved to Madoff's individual trustee the power to seek to void transfers by Madoff. Accordingly, this Court must withdraw the reference to the Bankruptcy Court and should then dismiss this case for lack of subject matter jurisdiction.

The Trustee was appointed as Trustee of the LLC; he was not appointed as trustee for Madoff individually. The LLC is the debtor under SIPA. *See* 15 U.S.C. § 78iii(5) ("The term 'debtor' means a member of SIPC with respect to whom an application for a protective decree has been filed under section 78eee(a)(3)".) In the complaint he filed against Savin, the Trustee seeks to recover certain withdrawals he claims were made by the LLC to Savin. *See, e.g.* **Chaitman Dec. Ex. DE** [Complaint at ¶¶ 36-37]. However, as demonstrated by the exhibits to the Chaitman Declaration, Savin never received any funds from the LLC; all the funds he received came from Madoff individually. The Trustee has no evidence whatsoever that ownership of either the 509 Account or the 703 Account was ever transferred from the sole proprietorship to the LLC.

Thus, the SIPA Trustee lacks standing to bring the action against Savin. *See Avellino*, 557 B.R. 89 ("Only the Madoff trustee can recover actual transfers by the sole proprietorship."); *Mendelow*, 560 B.R. 208; *see also Caplin v. Marine Midland Grace Trust Co*., 406 U.S. 416, 428-30 (1972) (a bankruptcy trustee is not empowered "to collect money not owed to the estate"). Accordingly, the Trustee does not have standing to avoid any alleged transfers.

Since the plain terms of 28 U.S.C. § 157(d) protect a party's constitutional interest in having an Article III court interpret federal statutes that affect interstate commerce, then it must

also protect a party's interest in having an Article III court interpret the Constitution itself.  *See Picard v. Flinn Investments, LLC*, 463 B.R. 280, 288 and n. 3 (S.D.N.Y. 2011) (withdrawing reference so that, *inter alia*, an Article III court may determine whether determining avoidance claims requires "exercise of 'judicial power' that the bankruptcy court lacks.")  Thus, mandatory withdrawal of the reference is applicable where, as here, a court must determine whether it has subject matter jurisdiction in the first place.  *In re Ames Dep't Stores, Inc.*, 512 B.R. 736 (S.D.N.Y. 2014), *citing Enron Power Mktg.*, 2004 WL 2711101, at *4 (mandatorily withdrawing reference because the bankruptcy court could not "determine whether funds at issue [fell] within the [Federal Energy Regulatory Commission's] exclusive jurisdiction or whether [it was] a garden variety bankruptcy case" without substantial and material consideration of federal law beyond the Bankruptcy Code); *NLRB v. Goodman (In re Goodman),* 873 F.2d 598, 604 (2d Cir.1989) (district court has the authority to permissively withdraw a reference *sua sponte* where the bankruptcy court lacked jurisdiction to proceed).

We anticipate that, in response to this Motion, the Trustee will argue (a) that the 509 and 703 Accounts should be deemed to belong to the LLC rather than to Madoff individually; (b) that, even if the Accounts do not technically belong to the LLC, the Trustee still has the power to seek to avoid transfers of property that belonged to Madoff individually as well as property that belonged to the LLC; and (c) relatedly, that the question whether the payments allegedly made to Savin are the LLC's "customer property" inherently answers the question whether this Court has subject matter jurisdiction.  These arguments all require interpretation of the United States Constitution and construction of state banking laws, securities laws and regulations, and other non-bankruptcy statutes.

A substantial issue under SIPA is "almost by definition, an issue 'the resolution of [which] requires consideration of both Title 11 and other laws of the United States.'"  *HSBC Bank I*, 450 B.R. at 410 (quoting 28 U.S.C. § 157(d)); *accord Picard v. JPMorgan Chase & Co. et. al.*, 454 B.R. 307, 316 (S.D.N.Y. 2011) ("[A]n issue that requires significant interpretation of SIPA undoubtedly requires consideration of laws other than Title 11.  Regardless of a bankruptcy court's familiarity with a statute outside of Title 11, the requirements for mandatory withdrawal are satisfied if the proceeding requires consideration of a law outside of Title 11.").

Withdrawal is also mandatory if there appears to be a conflict between the Bankruptcy Code and other federal laws.  *See HSBC Bank I*, 450 B.R. at 413 (deeming a conflict between SIPA and bankruptcy law as "something that itself warrants withdrawal of the bankruptcy reference"); *see also In re Cablevision*, 315 B.R. 818 at 821 (S.D.N.Y. 2004) ("The very existence of a dispute as to whether the rights of [investors] under the [Trust Indenture Act] and Williams Act supersede Section 304 [of the Code] or whether the Bankruptcy Code overrides the TIA, regardless of the ultimate resolution of such dispute, mandates withdrawal."); *Gredd*, 2001 WL 840187, at *2-4 (withdrawing reference where federal securities laws "arguably conflict[ed]" with the Code).

Similarly, mandatory withdrawal lies where a case requires significant interpretation of federal securities laws.  *See Bear, Stearns Sec. Corp. v. Gredd*, 2001 WL 840187, *4 (S.D.N.Y. July 25, 2001) (withdrawal mandatory where SEC rule potentially precluded application of the Code avoidance provisions because debtor would not have interest in subject property); *In re Cablevision S.A.*, at 821 (withdrawal mandatory where interplay between federal securities laws and ancillary proceeding section of the Code was required); *In re Enron Corp.*, 388 B.R. 131, 140 (S.D.N.Y. 2008) (withdrawal mandatory where trustee's theory of secondary liability under

Section 550(a)(1) of the Code, if it were reached, involved substantial and material consideration of Securities Act).

## II.   THE TRUSTEE HAS NO STANDING AND THIS CASE MUST BE DISMISSED

Federal courts have no power to entertain a suit unless the plaintiff has Article III standing, that is, unless the plaintiff has suffered an injury under Article III of the United States Constitution. *See HSBC*, 721 F.3d at 66 ("Standing depends, first, on whether the plaintiff has identified a 'case or controversy' between the plaintiff and the defendants within the meaning of Article III of the Constitution."); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472 (1982) (citations omitted); *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (Article III requires that "plaintiff . . . allege a distinct and palpable injury to himself[.]"). Thus, Article III standing is "a threshold issue in all cases, since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991); *Picard v. HSBC Bank PLC*, 454 B.R. 25, 29 (S.D.N.Y. 2011) ("*HSBC Bank II*").

The Trustee, as the party invoking the limited jurisdiction of the federal courts, bears the burden of demonstrating that he has standing to bring his claims.  *See Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984); *see also Cent. States v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).  To meet this burden, the Trustee must show "(i) a concrete and particularized "injury in fact" (ii) that can be fairly traced to the defendants' conduct, and (iii) that can be redressed by a favorable decision. *Bogart v. Israel Aerospace Indus. Ltd.*, No. 09 Civ. 4783 (LAP), 2010 WL 517582, at *3-4 (S.D.N.Y. Feb. 5, 2010) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)); *HSBC Bank II,* 454 B.R. at 29. To establish Article III standing, the plaintiff "must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. *Wight v. BankAmerica Corp*., 219 F. 3d 79, 86 (2d Cir. 2000) (quoting

*Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *HSBC Bank II*, 454 B.R. at 29. The Trustee cannot meet any of these elements, and accordingly, this case must be dismissed.

## A.     The Trustee Cannot Demonstrate An Injury in Fact

The debtor in whose shoes the Trustee stands, the LLC, has suffered no injury in fact, and accordingly the Trustee cannot meet this first, fundamental element of standing. Since, as set forth below, the Trustee's avoidance powers are plainly limited under the Bankruptcy Code to seeking to recover transfers of "an interest of the debtor in property" 11 U.S.C. § 548(a)(1), and all the evidence demonstrates that the transfers in question here were not made by the Trustee's " debtor," but rather by Madoff individually, the Trustee lacks Article III standing to avoid the transfers.

### 1.     SIPA Does Not Create Article III Injury

Any claim to jurisdiction and standing in this case must arise entirely out of the provisions of SIPA, 15 U.S.C. § 78fff-2(c)(3). The Trustee's standing is only to void transfers made by the LLC. *Picard v. Mendelow*, 560 B.R. 208, 227 (Bankr. S.D.N.Y. 2016) (*"Mendelow"*) ("15 U.S.C. § 78fff-2(c)(3) 'creates a legal fiction that confers standing on a SIPA trustee but not the bankruptcy trustee of an individual debtor.'"); *see also Avellino*, 557 B.R. at 108-109; *HSBC Bank II* 454 B.R. at 29-31. As alleged in the complaint, SIPC filed an application in the district court pursuant to 15 U.S.C. § 78eee(a)(4)(B) alleging that the LLC was not able to meet its obligations to its customers and the customers needed protection under SIPA. In response to the application, the District Court appointed Picard as Trustee for the liquidation of the LLC pursuant to 15 U.S.C. § 78eee(b)(3) of SIPA and transferred the case to the bankruptcy court pursuant to 15 U.S.C. § 78eee(b)(4) of SIPA. Thus, currently before the Court is the liquidation of the LLC, which is the debtor under the SIPA. *See* 15 U.S.C. § 78iii(5) ("The term 'debtor' means a member of SIPC with respect to whom an application for a protective decree has been filed under section 78eee(a)(3).").

And as SIPA Trustee for the liquidation of the LLC, the Trustee here has suffered no injury because the transfers made to Savin were made by Madoff individually, not by the LLC. Only Alan Nisselson, Madoff's individual trustee, has standing to avoid transfers of Madoff's property. *See Avellino* at 100 (The "SIPA debtor was [the LLC], the limited liability company, and not Madoff's sole proprietorship . . . ." "SIPA authorizes the trustee to avoid and recover transfers of customer property. 'Customer property' includes [property of the debtor]."); *reconsideration denied*, 2016 WL 6088136 (Bankr. S.D.N.Y. Oct. 18, 2016) (*"Avellino Reconsideration Decision"*); *Mendelow* 560 B.R. at 227. The Trustee's "debtor" is only the LLC.

In holding that the Trustee lacks standing to void transfers made by Madoff, the Bankruptcy Court considered and rejected the Trustee's contention that the definition of "debtor" under SIPA either did, or should be extended to, cover Madoff as well as the LLC. Thus, the Bankruptcy Court held that the Trustee could not sue to recover transfers made by Madoff as sole proprietor. *Avellino*, 557 B.R. at 108-110. The Court rejected the Trustee's contentions regarding the scope of the Protective Order entered by the District Court on December 15, 2009 that appointed Picard as SIPA Trustee to liquidate the LLC and regarding the impact of the Consolidation Order, entered by the District Court on July 9, 2009, which expressly provided that only Madoff's individual trustee had standing to sue to void transfers made by Madoff. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2016 WL 6088136, at *3-5. *See Avellino*, 557 B.R. at 110 ("Only the Madoff trustee can recover actual transfers by the sole proprietorship."). Nisselson is not a party to this case and has never asserted a claim against Savin. Nisselson is the only party who had standing to do so.

Moreover, since the 509 Account and the 703 Account were not owned by the LLC, they were not the property of the LLC. *See In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699, 713

(Bankr. S.D.N.Y. 2018) ("New York law presumes that 'once funds are deposited in a bank account, the account holder has title to and control over those funds.'") (citation omitted); *City of New York v. Venkataram*, 2011 WL 2899092, at *5, n.6 (S.D.N.Y. July 13, 2011) ("'Under New York law, the party who possesses property is presumed to be the party who owns it.'") (citation omitted); *see also In re Int'l Pharmacy & Disc. II, Inc.*, 443 F.3d 767, 771 (11th Cir. 2005) ("In most states, the name or title to a bank account creates a presumption of ownership in the titleholder.") (citation omitted).

And, as set forth above, even three years after the LLC was formed, Madoff endorsed Savin's deposit check with the stamp "for deposit only Bernard L. Madoff." **Chaitman Dec. Ex. N.** Where the endorsement on a check bears words such as "for deposit only," it is restrictive, N.Y. U.C.C. § 3-205, which means that a bank must deposit the funds into the account associated with that endorsement and cannot do anything else with them. *See Small Business Admin. v. Citibank, N.A.,* No. 94 Civ. 4259, 1997 WL 45514 *5 (S.D.N.Y. Feb. 4, 1997) (an endorsement that "includes the words 'for deposit only' . . . has the effect of requiring [the bank] to pay or apply the value of the instrument 'consistently with the endorsement."); *see also State of Qatar v. First American Bank of Va.*, 885 F. Supp. 849, 852 (E.D. Va. 1995) ("in so adding the restriction, the payee's intent plainly is to direct that the funds be deposited into her own account, not simply that the funds be deposited into some account."). An account number also serves to identify the place into which the funds must be paid, since this "does not alter the designation when the account is in existence and identifiable as belonging to a specific person." *Spielman v. Manufacturers Hanover Trust Co.,* 60 N.Y.2d 221, 227 (1983); *cf.* N.Y. U.C.C. § 3-401(2) (McKinney 1991) (including in the definition of signature "any word or mark used in lieu of a written signature."). Here, the checks were endorsed not only with Madoff's signature but with a stamp bearing the

name of the sole proprietorship and the account number. **Chaitman Dec. Ex. N.** Thus, the funds deposited on behalf of Savin could *only* have been deposited into the 703 Account, and could never have belonged to the LLC.

Analogously, in *Caplin v. Marine Midland Grace Trust Co*., 406 U.S. 416 (1972), the Supreme Court held that a Chapter X trustee had no standing under the Bankruptcy Act to assert claims of misconduct against a third party on behalf of the debtor's debenture holders rather than the entity itself, both because the Bankruptcy Act did not authorize a trustee to collect money not owed to the estate and because the debtor had no claim against the indenture trustee but was *in pari delicto* with the indenture trustee. *Id.* at 428-30. *See also Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) ("[t]he point is simply that the trustee is confined to enforcing entitlements of the corporation. . . There is a difference between a creditor's interest in the claims of the corporation against a third party, which are enforced by the trustee, and the creditor's own direct – not derivative – claim against the third party, which only the creditor himself can enforce").

In *Picard v. Nelson et al.*, Adv. Pro. Nos. 10-04658, 10-04377, 2019 WL 6245772 (Bankr. S.D.N.Y. Nov. 19, 2019) ("*Nelson*"), the Bankruptcy Court held that Madoff's sole proprietorship had transferred the 703 and 509 Accounts to the LLC but that finding was insupportable and clear error. It should not apply in this case. The United States Supreme Court holds that a finding of fact is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (internal quotation marks omitted).

The Second Circuit held in *Metzen v. United States*, 19 F.3d 795, 797–98 (2d Cir. 1994), that even factual findings that incorporate testimony may be clearly erroneous, *inter alia* where that testimony is contradicted by documents or other objective evidence. *Id.* at 806. The court

held that a trial court may not "insulate his findings from review by denominating them credibility

determinations, for factors other than demeanor and inflection go into the decision whether or not

to believe a witness. Documents or objective evidence may contradict the witness' story. Where

such factors are present, the court of appeals may well find clear error even in a finding purportedly

based on a credibility determination." *Id*. at 797–98, quoting *Anderson,* 470 U.S. at 575.

In *Nelson,* the Bankruptcy Court's ruling was explicitly contradicted by the terms of the

very documents it purported to rely on, namely (1) statements by the LLC in its SEC Form BD,

(2) the fact that the 703 and 509 Accounts were "commercial" accounts; (3) what the Trustee and

the court referred to as "admissions" by the defendants in their answer that Madoff, defined as

"Bernard L. Madoff Investment Securities LLC" paid the withdrawals in question, (4) debit memos

printed by Madoff, not by JPMC, that bore the imprint of the LLC, and (5) the account agreement.

*Id.* at *11. A court's subject matter jurisdiction under Article III of the Constitution cannot be

established by such illusory rationalizations.

### a. The Amended SEC Form BD does not establish that the LLC paid the funds to Savin

The statements made by the LLC in 2001 on Amended SEC Form BD, which purportedly

transfers the SEC registration of Madoff's sole proprietorship to the LLC, plainly do not reflect

that Madoff's sole proprietorship ever contributed its IA Business to the LLC. Indeed, the Form

plainly states that the LLC will not operate an investment advisory business and Madoff did not

even register as an investment advisor at all until 2006. **Chaitman Dec. Ex. I** [SEC Form BD].

*See In re Bernard L. Madoff Inv. Secs., LLC*, 424 B.R. 122, 127 (Bankr. S.D.N.Y. 2010), *aff'd* 654

F.3d 229 (2d Cir. 2011) ("On January 19, 1960, BLMIS [the sole proprietorship] registered with

the SEC as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C.

section 78*o* (b), and, beginning in 2006, as an investment advisor."). A form submitted to the SEC

five years before Madoff registered as an investment advisor could not possibly establish that the

LLC operated an investment advisory business.  On the contrary, the form itself clearly describes

the only businesses that the LLC engages in (or intends to engage in) as market making and

proprietary trading, that is, the Legitimate Trading Business; and it expressly states that the LLC

does not engage in investment advisory services.  At pages 8 and 9 of Form BD, the LLC was

asked to check all of the "types of business[it] engaged in" (unless that business accounted for less

than 1% of annual revenue.)  It checked item "C," its market-making activities, item "V," its

proprietary trading activities, and item "Z," "Other" activities (this is described on page 10 of the

form as Madoff's membership of the Cincinnati Stock Exchange where he was a designated market

maker).  The LLC did **not** check item "S," however, which referenced "Investment Advisory

Services."

> **b.  The fact that the 703 and 509 Accounts were "commercial" is non-dispositive.**

Second, the Bankruptcy Court's finding that the 703 and 509 Accounts were "commercial"

is irrelevant.  The IA business was a sole proprietorship and its accounts were commercial

accounts.  That is irrelevant to the question of who owned the 703 and 509 Accounts.

> **c.  Savin did not make admissions in his Answer.**

Third, Savin did not make such admissions in his Answer.  Though he correctly defined

the LLC as "BLMIS" when setting forth the identity of the plaintiff, the Trustee, *see* **Chaitman**

**Dec. Ex. DF** [Answer] Savin raised a specific affirmative defense asserting the precise issue raised

here, *i.e.,* that "[t]he Trustee lacks standing because [the LLC] was not formed until 2001 and the

orders of the District Court and the Bankruptcy Court did not give the Trustee authority to recover

fraudulent transfers of Bernard Madoff."  *Id.* at # 41.  Savin did not "admit" that the LLC made

certain transfers to him.  He admitted only that the LLC was not formed until 2001.  *Id* at 19.

Moreover, Savin did not admit that he had an account with the LLC and, notably, he specifically

differentiated between Madoff and the LLC in his affirmative defenses, admitting that to the extent there were transfers, these were to or from the LLC *or* Madoff.  *Id.* at 9, 10, 16, 18, 25, 29. Obviously, the answer was filed years before Savin had access to the documents in the Trustee's possession.   Neither Savin nor the defendants in *Nelson* could be expected to have personal knowledge of what entity owned the bank accounts Madoff used for the IA business.  It was only through discovery that Savin learned that the 703 and 509 accounts were always in the name of Madoff and his sole proprietorship.

Moreover, a party cannot – even voluntarily – confer subject matter jurisdiction on the bankruptcy court where that jurisdiction clearly does not exist.  *Perpetual Securities, Inc. v. Tang,* 290 F.3d 132, 136 (2d Cir. 2002); *Siding and Insulation Co., Inc. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 373-374 (6th Cir. 2014) ("Necessarily, then, the parties enjoy no more discretion to expand our bailiwicks than we do . . . In light of this teaching, the parties' consent to jurisdiction matters not.") *Fafel v. Dipaola*, 399 F.3d 403, 410 (1st Cir. 2005) ("A court without subject matter jurisdiction may not acquire it by consent of the parties.").  Subject matter jurisdiction cannot be conferred or waived by consent, estoppel, or failure to raise the issue early in the proceedings. *U.S. v. McGaughy,* 670 F.3d 1149, 1155 (10th Cir. 2012) ("Although the government did not raise any jurisdictional objections below, it is not precluded from raising them here.").

### d.   A bank customer cannot change ownership of a bank account by printing debit memos.

Any debit memos the Trustee may seek to rely on here were merely stationery printed by the LLC.  And the bankruptcy court's statement that the fact that "Madoff had his name printed on the BLMIS checks proves nothing" (*Nelson* at *11) can equally be read to show that, if the LLC had its name printed on the debit memos, that proves nothing either.  The only way ownership of the 509 and 703 accounts could have been transferred is if there were a written request to JPMC

to transfer ownership of the accounts. The Trustee, admittedly, has no such document and JPMC could not have legally deposited checks into an account owned by anyone other than Madoff based on the stamped endorsement that Madoff used: "For deposit only Bernard L. Madoff." *See supra* at pp. 16-17.

> **e.   The account agreement does not establish that the LLC's funds were transferred to Savin.**

The Bankruptcy Court cited *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 213 (2d Cir. 2014), for the proposition that all of the bank accounts in which the customer funds were held were transferred to the LLC and Madoff informed the SEC that he did not retain them regardless of what he told JPMC. However, the Second Circuit did not have before it the evidentiary record Savin submits here. Instead, the Second Circuit relied on certain Madoff-generated customer forms to say that all of the IA Business customers became customers of the LLC, noting that the customer agreements acknowledged that they inured to the benefit of any "successor organization." None of these agreements, whether signed before the LLC was created or after, lists the LLC as the broker. Instead, the executed Trading Authorizations actually authorize only Bernard L. Madoff and not the LLC to act as the agent for buying and selling securities and options. The Customer Agreement itself defines the Broker as "you" and states that it may not be "waived, altered, modified or amended" without a writing signed by the (original) broker **Chaitman Dec. Ex. DC-DD.** The "new" customer agreement is not signed by anyone on behalf of Madoff at all. **Chaitman Dec. Ex. DC.**

As set forth above, it is the Trustee's burden to prove jurisdiction, *Allen,* 468 U.S. at 753 n.19; *Cent. States,* 433 F.3d at 198 (2d Cir. 2005), not Savin's burden to disprove it, and the Trustee has not met that burden. Thus, the complaint should be dismissed.

We anticipate that the Trustee will rely upon 15 U.S.C. § 78fff–1(a), which provides that a "[SIPA] trustee shall be vested with the same powers and title with respect to the debtor and property of the debtor, including the same right to avoid preferences, as a trustee in a case under Title 11." The Trustee will likely also rely upon *In re Park South Securities, LLC*, 326 B.R. 505, 512-13 (Bankr. S.D.N.Y. 2005), which construed the above provision as authorizing a SIPA trustee to assert fraudulent transfer claims.

Savin does not dispute that the Trustee has the power to assert fraudulent transfer claims. However, he can only do so where there was a transfer of funds belonging to the LLC. Even if SIPA granted the Trustee the power to sue to void transfers not made by the LLC, any such authorization would be unenforceable because a party lacks standing to sue where the transfer was not of his own property. Thus, courts must dismiss a complaint where the plaintiff cannot show "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979); *accord Raines v. Byrd,* 521 U.S. 811, 820, n. 3 (1997) ("It is settled that Congress cannot erase Article III"s standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *O'Shea v. Littleton,* 414 U.S. 488, 493 n. 2 (1974) (holding that Congressional grant of statutory standing does not obviate need to "show actual or threatened injury of some kind to establish standing in the constitutional sense").

It is silly for the Trustee to argue that, because SIPA authorizes him to use the avoidance powers of the Bankruptcy Code, he can use those powers to recover property that does not belong to the LLC. SIPA cannot create Article III standing for the Trustee in the action against Savin because Savin never received the LLC's money. Accordingly, the reference should be withdrawn to determine the constitutional issue concerning the Trustee's standing to assert the claims he

raised against Savin.  And upon withdrawal, this Court should dismiss the actions against Savin for lack of subject matter jurisdiction.

Finally, we anticipate that the Trustee will argue that his power to claw back transfers from innocent customers derives from some source other than SIPA.  However, any such argument has previously been rejected by this Court as barred under the *in pari delicto* doctrine.  *See HSBC Bank II,* 454 B.R. at 37 (holding that "*in pari delicto* . . . bars a trustee from suing to recover for a wrong that [the debtor whose the estate he represents] essentially took part in.") (quotation marks and citation omitted; insertion in the original).

### B.    The Trustee Cannot Show That Any Loss Was Traceable to Savin's Conduct

The Trustee is required to show both injury in fact, which as set forth above, he cannot, and also that the injury "can be fairly traced to the defendants' conduct".  *Bogart* at *3-4 (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)).  The Trustee cannot meet this standard either.  There is no causal nexus whatsoever between Savin's conduct and the claimed injury – also a constitutional standing requirement.  *See Allen*, 468 U.S. at 753 n.19; *see also Bogart* at *3-4.  Savin's deposits and withdrawals were not made into or from accounts held by the LLC.  Therefore, any causal nexus between Savin's conduct and the claimed injury would be between Madoff individually and Savin, not the LLC and Savin.  Accordingly, the Trustee does not have standing to avoid any transfers to Savin and the Complaint must be dismissed for lack of Article III standing.

### C.    The Trustee Does Not Have Prudential Standing

In addition to the limitations on standing that Article III imposes, there are also "several judge-made 'prudential' requirements" that a litigant must meet in order to demonstrate standing. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000) (citation omitted).  "These are rules

of judicial self-restraint and are applied to further preserve the proper – and properly limited – role of the courts in a democratic society." *Id*. (internal quotation marks omitted) (citations omitted).

"Foremost among the prudential requirements is the rule that a party must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth*, 422 U.S. at 499); *see also HSBC*, 721 F.3d at 58. This limitation is "closely related to Art. III concerns." *Warth*, 422 U.S. at 500. The Trustee cannot meet these requirements.

Since, as SIPA Trustee, the Trustee is attempting to assert claims that belong to the Madoff Trustee, he does not have prudential standing. *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("[I]f a trustee has no power to assert a claim because it is not one belonging to the bankrupt estate, then he also fails to meet the prudential limitation that the legal rights asserted must be his own."); *In re A.R. Baron & Co.*, 280 B.R. 794, 801 (Bankr. S.D.N.Y. 2002) (same); *see also Caplin*, 406 U.S. at 416 (same). Accordingly, the Trustee does not have standing to avoid any transfers to Savin and the Complaint must be dismissed for lack of prudential standing.

## CONCLUSION

For all the foregoing reasons, this Court should withdraw the reference of this case to the

Bankruptcy Court and should dismiss it for lack of subject matter jurisdiction.

Dated:    New York, New York                **CHAITMAN LLP**
          February 3, 2020


                                        By:    */s/ Helen Davis Chaitman*
                                               Helen Davis Chaitman
                                               hchaitman@chaitmanllp.com

                                               465 Park Avenue
                                               New York, New York 10022
                                               Phone & Fax: 888-759-1114

                                               *Attorneys for Defendants The Estate of*
                                               *Robert Shervyn Savin and Barbara L. Savin,*
                                               *in her capacity as Personal Representative*
                                               *of the Estate of Robert Shervyn Savin*