# EXHIBIT B

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022

212 230-2424
800 221-2242
Telex 235130
Fax 212 486-8178

July 17, 1991

Manufacturers Hanover Trust
Financial Services Group
Grand Central Tower/32nd Floor
140 East 45th Street
New York, NY  10017

Attn: Debbie Walsh

Dear Ms. Walsh,

    Please accept this letter as authorization to add the
following report to our transend service:

CDS Checks Paid Report
Re: Manufacturers Hanover(Delaware)
Acct.# 6301-428151-509

Thank You,

Bernard L. Madoff

By

Anthony Tiletnick

AT:jl

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.01-374 0891

MADTSS01301365

*MANUFACTURERS HANOVER*

Manufacturers Hanover Trust Company

270 Park Avenue
New York, NY 10017

Mailing Address
Grand Central Station
P.O. Box 2702
New York, NY 10163

June 5, 1991

Mr. Anthony Tiletnick
Cashier
Bernard L. Madoff
885 Third Avenue
New York, NY  10022

Dear Tony:

Attached are two copies of a revised Funds Transfer Service Agreement for our funds transfer service.

The Agreement has been rewritten to be consistent with the content and terminology incorporated in Uniform Commercial Code Article 4A - Funds Transfer, which became law in New York on January 1, 1991.

A few of the important changes in the Agreement are:

1.   Clarification of existing procedures, including procedures for the cancellation or amendment of payment orders and treatment of name/identifying number inconsistencies (previously distributed as a separate notice).

2.   Formalization of security procedures and the individuals authorized to accept these procedures.

3.   Extension of time limit to one year (from 90 days) for customer to notify Bank of a discrepancy before being precluded from asserting a claim against the Bank.



**GEOSERVE**
Global Services Group

- 2 -

Please execute this new Agreement and return both signed copies at your earliest convenience to me at the following address:

      Peter M. Shepherd
      Assistant Vice President
      Manufacturers Hanover Trust
      270 Park Avenue - 32nd floor
      New York, New York  10017

Please note that it is necessary to sign the Agreement on page 4; to complete Schedule B; and to sign and seal the Secretary's Certificate on the last page of the Agreement.  Upon our execution of the Agreement, we will send you one signed copy for your files.

Thank you in advance for your quick attention to this matter.  If you have any questions, do not hesitate to call me at (212) 270-3079 or Anthony Congiusta, Funds Transfer Product Management at (212) 623-1429.

                Sincerely,

                Peter M. Shepherd
                Assistant Vice President

Enclosures



**MANUFACTURERS HANOVER TRUST COMPANY**

### CUSTODIAN AGREEMENT
#### FOR THE ACCOUNT OF

BERNARD L MADOFF
885 3RD AVE
New York N.Y 10022

**DATED** 7/16/91

MADTSS01301368

## CUSTODIAN AGREEMENT

Manufacturers Hanover Trust Company
New York, New York

Manufacturers Hanover Trust Company (the "Bank") is requested to open a custodian account for and in the name of *BERNARD L MADOFF* (the "Customer"), and hold therein, all securities and other property from time to time deposited with or collected by the Bank for such account, subject to the following instructions contained in this agreement (the "Agreement") and such other instructions with respect to said account as the Customer may from time to time furnish. This Agreement shall remain in force until expressly revoked or amended in writing on thirty days written notice sent by registered mail by either party to the other, or dissolution of the Customer if a corporation or partnership and written notification to the Bank thereof. The term "Security" shall be interpreted to mean stocks, bonds, rights, script, warrants, interim certificates, either temporary or permanent, and all other negotiable or non-negotiable paper commonly known as securities in banking custom or practice.

### INSTRUCTIONS

1. Unless otherwise directed, orders for purchase and sale shall be placed for the account and risk of the Customer with brokers, dealers, or similar agents selected by the Bank and the Bank shall not be liable or accountable for any act or omission of such brokers, dealers, or similar agents. All dealer concessions made to the Bank and not otherwise payable to the Customer, will be retained by the Bank. In complying with orders for delivery of eligible Securities, the Bank may make deliveries as provided in paragraph 6 below.

2. The proceeds of sales, redemptions, collections and other receipts including dividends, interest and other income when collected by the Bank shall be credited to the deposit account of the Customer with the Bank. The cost and expenses of purchases made upon instructions of the Customer and other items chargeable in connection with this account shall be charged to the above described deposit account.

3. The Bank is to notify the Customer upon receipt of notice by the Bank of any call for redemption, tender offer, subscription rights, merger, consolidation, reorganization or recapitalization or similar proceeding affecting the property held in the account, and shall take such action in respect thereto as may be directed in writing by the Customer. The Bank shall have no duty or responsibility to notify the Customer of any calls for redemption which do not appear in standard New York financial publications. All solicitation fees payable to the Bank as agent in connection with tender offers or any of the aforementioned proceedings that would not otherwise be payable to the Customer will be retained by the Bank.

   Should any Securities held in any depository, pursuant to paragraph 6 below be called for a partial redemption by the issuer of such Securities, the Bank is authorized in the Bank's sole discretion to allot the called portion to the respective holders in any manner deemed to be fair and equitable in the Bank's judgment.

4. All proxies and material pertaining thereto received by the Bank in connection with Securities and other property held in the account, together with all official reports referring to indentures securing such Securities are to be forwarded to the Customer. All other financial statements and reports are to be destroyed.

5. Whenever it becomes advisable to do so, the Bank is authorized to exchange temporary for definitive certificates, and old certificates for new or overstamped certificates evidencing a change therein.

6. The Customer, upon depositing Securities in this account, gives its consent for the subsequent deposit and delivery of such Securities, which are deemed eligible, with and through (a) a Federal Reserve Bank pursuant to Subpart 0 of the Treasury Department Circular No. 300, and operating circulars of the Federal Reserve Bank of New York; (b) the Depository Trust Company pursuant to Section 8-320 of the Uniform Commercial Code and its Rules and Procedures; and (c) any other domestic or foreign depository system or agent where mutually agreed upon or where necessary due to local custom and practice, and further will have been deemed to have given consent on behalf of the parties for whom the Customer acts with reference to Securities.

   Should any Securities which are forwarded to the Bank by the Customer, and which are subsequently deposited in any depository, or which the Customer may arrange to deposit in the Bank's account in any depository, not be deemed acceptable for deposit by such depository, for any reason, the Customer agrees to furnish the Bank immediately with like Securities in acceptable form, or in the alternative, the Bank is authorized to charge the Customer's account for the cost of replacing such Securities, and any further replacement fees imposed by the depository.

   Securities which are eligible for deposit in a depository may be maintained in the Bank's account with the depository. Securities which are not eligible for deposit in a depository will be held as follows: (a) Securities issued only in bearer form will be held in bearer form; (b) Securities issued only in registered form are to be registered in the name of the Bank's nominee, unless alternate instructions are furnished

MADTSS01301369

*by the Customer;* (c) Securities issued in both bearer and registered form which are freely interchange-able without penalty, are to be registered in the name of the Bank's nominee, unless alternate instructions are furnished by the Customer.

With respect to automatic dividend reinvestments, upon the receipt of a Customer's instructions, the Bank shall either: (a) enroll the designated Securities in an automatic reinvestment program with the agent; or (b) instruct a depository to enroll those Securities which the depository agrees to handle in an automatic reinvestment program. All income and capital gains distributions on the designated Securities shall be automatically reinvested in new shares. The shares resulting from the reinvestment shall be held in a depository, if eligible, or in the Bank's vaults registered in the name of the Bank's nominee.

7.   In consideration of the Bank's registration of any Securities and other property in the name of the Bank's nominee, the Customer agrees to pay on demand to the Bank or the Bank's nominee the amount of any loss or liability for stockholders' assessments or otherwise, claimed or asserted against the Bank or against the Bank's nominee by reason of such registration. In the event of the termination of this Agreement, the Bank shall have the right to transfer to the Customer all Securities and other property registered in the name of the Bank's nominee and the Bank shall charge all taxes and other expenses incident to such transfer to the deposit account of the Customer.

8.   With respect to mutual funds: (a) All shares of closed end funds shall be registered in the name of the Bank's nominee or nominees and shall be held in the Bank's vaults; (b) no shares of open end funds shall be registered in the name of the Bank's nominee or nominees. The Customer shall instruct the Bank to register the open end fund shares in the Customer's name, care of the Customer, or supply the name and address of the beneficial owner.

9.   With respect to restricted shares: The Customer understands that the Bank's policy dictates that Securities whose normal delivery or transfer is restricted under certain circumstances, cannot be registered in the Bank's nominee name. The Customer shall instruct the Bank to register the Securities in the Customer's name, care of the Customer, or supply the name and address of the beneficial owner.

10.   With respect to Securities of foreign issue: While it is expected that the Bank will use the Bank's best efforts to effect collections of dividends, interest, and other income, and to notify the Customer of any call for redemption, offer of exchange, right of subscription, reorganization, or other proceedings affecting such Securities, it is understood that the Bank shall have no responsibility for any failure or delay in effecting such collections or giving such notices, regardless of whether or not the relevant information is published in any financial service available to the Bank. Collections of principal and/or income in foreign currency are, to the extent possible, to be converted into United States dollars, and in effecting such conversion the Bank may use such methods or agencies as the Bank may see fit, including the facilities of the Bank's own International Division at customary rates. In the event of collections of principal and/or income in foreign currency with optional fixed rates of exchange, the Customer agrees that unless it informs the Bank of its election of a specific foreign currency payment the Bank may use such methods or agencies for collection as the Bank may see fit, including the facilities of the Bank's own International Division at customary rates. All risks and expense incident to such collection and conversion is for the account of the Customer, and the Bank shall have no responsibility for fluctuations in exchange rates affecting any such conversion.

11.   The Bank is authorized and empowered in the name and on behalf of the Customer to execute any certificates of ownership or other reports which are or may hereafter be required by any regulation of the Internal Revenue Service, or other authority of the United States, so far as the same are required in connection with any property which is now or may hereafter be in the Bank's possession hereunder, claiming no exemptions on behalf of the Customer. In the preparation of such reports, the status of the Customer is to be described as a bank, trust company, financial institution, insurance company, corporation, partnership or otherwise as the case may be. The Customer agrees to notify the Bank immediately in writing of any change in such status.

12.   Unless otherwise instructed in writing by a duly authorized officer of the Customer, the Bank is authorized, directed and instructed to act upon all instructions by the person or persons authorized to sign checks, drafts or other orders for the payment of money in connection with the deposit account of the Customer with the Bank. Said instructions may, in the Bank's discretion, be written, oral, by telephone, telegraph, cable, radio, or electronic communication which the Bank believes to be genuine, but the Bank shall not be liable for executing, failing to execute, or for any mistake in the execution of any such order except in case of willful default. Written confirmations, if any, of oral instructions provided by the Customer shall in no way affect any action taken by the Bank in reliance upon the oral instructions. The Bank in executing all instructions will effect payment or delivery or take other relevant action called for by the Customer's instructions in accordance with accepted industry practices. The Customer assumes responsibility for any loss, claim or expense incurred by the Bank for following or attempting to follow the Customer's instructions absent a showing of willful misconduct or bad faith on the Bank's part. The Bank is to recognize either a signature circular of the Customer or a proper resolution of the governing body of the customer granting authority to specified officers or their successors in office, or limiting authority of specified officers or their successors in office, provided the

MADTSS01301370

Bank is furnished with a certified copy of such resolution by the Customer duly authenticated by one of the signing officers above referred to. Without instructions from any person or persons referred to in this paragraph, the Bank is authorized, directed and instructed to receive any Securities free of payment, from any source, for the Customer's account.

The Bank shall maintain regular business records documenting all instructions transmitted to the Bank through any means previously described and any response by the Bank. Such records shall be determinative of the form, content and time of all the Customer's instructions and any response from the Bank. The record of each instruction and any response thereto shall be retained by the Bank for at least 45 days following the date of the instruction. Any claim against the Bank for failure to properly follow an instruction transmitted by the Customer must be made in writing within 45 days after the date the instruction was received by the Bank.

13. With respect to any directions to receive Securities in transactions not placed through the Bank, the Bank shall have no duty or responsibility to advise the Customer of non-receipt of, or to take any steps to obtain delivery of Securities from brokers or others either against payment or free of payment.

14. All communications which are to be furnished or forwarded hereunder to the Customer shall be sent by mail addressed to the Customer at the last address on the Bank's records, provided that in case the Bank in the Bank's sole discretion shall determine that an emergency exists the Bank may use such other means of communications as the Bank shall deem advisable.

15. The Bank is under no duty to supervise, recommend or advise the Customer relative to the investment, purchase, sale, retention or other disposition of any property held hereunder unless provided for by separate written agreement.

16. The Bank's compensation for services rendered under the above instructions shall be based upon rates which shall be determined from time to time. The Bank is authorized in its discretion to charge such compensation to the account of the Customer.

17. The Bank shall be under no duty to take or omit to take any action with respect to any property held in such account, except in accordance with the foregoing instructions, unless specifically otherwise directed by the Customer and agreed to by the Bank in writing. In case the Bank should agree to appear in, prosecute or defend any legal or equitable proceeding either in its own name or in the name of its nominee, the Bank shall first be indemnified to its satisfaction.

18. The Bank shall have a lien upon the property held by the Bank hereunder, and upon any deposit account of the Customer for compensation, expenses, commitments made by the Bank upon instructions of the Customer, reimbursement of taxes incurred by the Bank for account of the Customer, or other liabilities of the Customer to the Bank, and for indemnity against any claim or liability to which the Bank or its nominee may be subjected by reason of any registration of Securities or other property in the name of the Bank's nominee or otherwise.

19. All property held by the Bank in this account shall be kept with the care exercised as to the Bank's own securities, but the Bank assumes entire responsibility for loss occasioned by reason of the negligence of, or robbery, burglary or theft by its employees, to the extent of the market value thereof at the date of the discovery of such loss. It is understood by both parties under this paragraph and this Agreement that the use of any depository will not affect any of the Bank's responsibilities to the Customer under this Agreement. The Bank may at its option insure itself against loss from any cause but shall be under no obligation to insure for the benefit of the Customer.

20. This Agreement shall be construed and interpreted according to the laws of the State of New York.

Please Supply below the Nine Digit
Employer's Identification Number
assigned by Internal Revenue
Service: _____

13-1997126

By: _____

Title: SOLE PROPRIETOR

885 3RD AVE NY/NY

P.O. Address

10022

Accepted By:

**MANUFACTURERS HANOVER TRUST COMPANY**

By _____

Title

MADTSS01301371