# EXHIBIT A

## Trustee's Objections to Bibars Questions

## QUESTIONS TO BE PUT TO THE WITNESS

1. When were you first contacted with respect of your October 13, 2014 declaration?

2. By whom were you contacted?

3. How often did they contact you?

   **Objection: Lacks Foundation,[1] Vague[2]**

4. Was it always the same person or multiple persons who contacted you?

   **Objection: Compound[3]**

5. If multiple persons: please identify the persons' names.

6. How were you contacted?

7. By phone?

8. By email?

9. By text message?

10. How many times did you personally meet prior to signing the October 13, 2014 declaration?

    **Objection: Lacks Foundation, Vague**

11. Where did you meet on each occasion a meeting took place?

12. How long did each of the meetings last?

13. What was the context of the meeting (lunch, dinner, coffee, drinks)?

14. Who was present at each of these meetings?

15. Were lawyers present at the meetings?

16. If yes, at how many meetings?

---

[1] *See* Fed. R. Evid. 602; Trustee's Combined Mem. of Law in Opp'n to Alpha Prime's Mots. For the Issuance of Reqs. For Int'l Judicial Assistance ("Trustee's Mem. of Law") at 12-13.
[2] As used herein, the Trustee's objection "Vague" includes the objection to language that is vague, ambiguous, or otherwise results in "confusing the issues." *See* Fed. R. Evid. 403; Trustee's Mem. of Law at 16-17.
[3] *See* Fed. R. Evid. 403.

17. If yes, were they US lawyers?

18. If yes, did they tell you their names?

19. Was Oren Warshavsky present?

20. Was Dominic Gentile present?

21. Did Oren Warhavsky and/or Dominic Gentile disclose to you that they were lawyers?

      **Objection: Compound**

22. Was anybody else present?

23. Were any Austrian lawyers present?

24. Was the presence of lawyers announced prior to the meeting(s) where you met them?

      **Objection: Lacks Foundation, Vague**

25. If not, did their presence surprise you?

26. How did they introduce themselves?

27. How did they justify their presence?

      **Objection: Lacks Foundation, Vague**

28. Did Ms Collins tell you from whom she took instructions?

      **Objection: Hearsay, Lacks Foundation, Leading[4]**

29. Did she disclose to you that she was from the Mintz group?

      **Objection: Lacks Foundation, Leading**

30. Did you know that the Mintz group was retained by the law firm of Baker Hostetler?

      **Objection: Mischaracterizes a Prior Statement[5]**

31. Did you know that Baker Hostetler was a U.S. law firm representing the BLMIS Trustee?

32. Were you told what the purpose of the declaration is?

---

[4] As used herein, the Trustee's objection "Leading" includes objections to questions that suggest the answer, including by referencing out of court statements by third parties in the preceding questions. *See* Fed. R. Evid. 611(c); Trustee's Mem. of Law at 18-19.

[5] *See* Fed. R. Evid. 611(a); Trustee's Mem. of Law at 17-18.

33. Were you told what the declaration would be used for?

34. Were you told that your declaration would be used in proceedings against Alpha Prime to defeat a $250,671,000 claim?

    **Objection: Mischaracterizes a Document (the Trustee's claim)**

35. Would you have signed the declaration had you known that it would be used in proceedings against Alpha Prime?

36. Were you told that the declaration would help Alpha Prime's investors get their money back?

    **Objection: Leading**

37. Would you have signed the declaration had you known that its purpose is to defeat Alpha Prime's claim for the return of $250,671,000?

    **Objection: Mischaracterizes a Document (the Trustee's claim)**

38. Were you told that you would be called to testify about your declaration?

39. Would you have signed the declaration had you been told that you would be called to testify about your declaration?

40. Did you write the text of your declaration yourself or was it written by somebody else?

    **Objection: Compound**

41. Which sections did you write and which ones did you not write?

    **Objection: Compound**

42. If you did not write all of the sections, who wrote these sections?

43. Is everything that was discussed at each of the meetings in the text of your declaration?

    **Objection: Relevance,[6] Vague**

44. Did you discuss anything during the interview(s) that was not reflected in your declaration?

    **Objection: Cumulative,[7] Relevance, Vague**

---

[6] *See* Fed. R. Evid. 401.
[7] *See* Fed. R. Evid. 403; Trustee's Mem. of Law at 15-16.

3

45. If yes, what was that?

    **Objection: Cumulative, Relevance, Vague**

46. Did anyone discuss with you the proposed text in the declaration prior to your review and signature?

47. Who chose the contents of the text?

    **Objection: Cumulative, Vague**

48. Who chose the wording of the text?

    **Objection: Cumulative, Vague**

49. When was the text written?

    **Objection: Vague**

50. How long did it take to finalize the text?

    **Objection: Vague**

51. Was there any discussion about the draft of the declaration? Was there an exchange of drafts?

    **Objection: Compound, Vague**

52. Did you feel pressured to sign the declaration?

    **Objection: Leading, Vague**

53. Was a translator present at either of the meetings you referred to?

54. Was a translator present when you signed the declaration?

55. Were you told what the declaration should contain?

    **Objection: Cumulative, Vague**

56. If so, does the declaration match what you were told?

    **Objection: Vague**

57. Was the declaration edited?

    **Objection: Cumulative, Vague**

58. If yes, by whom?

59. Did the declaration have a cover page when you signed it?

60. Who gave you the text of the declaration?

   **Objection: Cumulative, Lacks Foundation, Vague**

61. Were you promised something in exchange for signing the declaration?

   **Objection: Vague**

62. Where did the signing take place?

63. Were you represented by a lawyer when you signed?

64. Were you advised to get a lawyer prior to signing?

65. Who was present when you signed the text?

66. Were either Oren Warshavsky or Dominic Gentile present when you signed the declaration?

   **Objection: Compound, Cumulative**

67. If yes, did they tell you whom they represented?

68. Did you receive a copy of your declaration?

69. Were you promised one?

70. Did you ask for one?

71. Did you ever receive one?

   **Objection: Cumulative**

72. Did you fully understand what you signed?

   **Objection: Leading, Vague**

73. Did somebody take notes during your meetings?

   **Objection: Lacks Foundation, Relevance**

74. If yes, who took notes?

   **Objection: Lacks Foundation, Relevance**

75. Did Ms Collins take notes?

   **Objection: Lacks Foundation, Relevance, Vague**

5

76. Did Oren Warshavsky and/or Dominic Gentile take notes?

> **Objection: Compound, Lacks Foundation, Relevance, Vague**

77. Did you take notes?

> **Objection: Lacks Foundation, Relevance, Vague**

78. Were you shown these notes?

> **Objection: Lacks Foundation, Relevance, Vague**

79. Did you ask for these notes?

> **Objection: Lacks Foundation, Relevance, Vague**

80. In your interview(s), were you shown other documents than Exhibit A attached to your declaration?

81. If yes, what were these documents?

82. If yes, why were they not mentioned in your declaration?

83. Were you contacted by somebody after signing the declaration?

> **Objection: Relevance, Vague**

84. If yes: by whom and how often?

> **Objection: Vague**

85. If yes: what were you told?

> **Objection: Vague**

86. If yes: when were the last contacts prior to today's deposition?

87. Why did your employment with Domus only last 2.5 years?

> **Objection: Lacks Foundation, Relevance**

88. While you worked for Domus did anyone provide you with an annual review of your work?

> **Objection: Lacks Foundation**

89. What were the circumstances surrounding the end of your employment with Domus/Bank Austria?

90. Did you enter into a contract with Domus/Bank Austria upon termination?

    **Objection: Compound**

91. Was the termination of your employment your idea or the idea of Bank Austria or Domus?

    **Objection: Compound**

92. If you claim it was your idea, why did you decide to leave Domus?

93. If it was the idea of Domus or Bank Austria, what was the reason given?

94. Is it true that in the last year preceding the termination date of your employment you were absent from work for several months?

    **Objection: Leading**

95. How many months did that leave of absence last?

96. Was it six months?

97. What was the reason for being absent?

98. Was your absence a reason for termination of your employment?

99. When did you last see Dr. Radel?

100. Upon leaving Domus, where was your next place of employment?

101. Approximately how long after leaving Domus did you begin working in that new position?

102. How did your monetary compensation at your new position compare to your monetary compensation at Domus?

103. What is your position today?

104. Were you in contact with HSBC? If yes, with whom?

    **Objection: Compound, Lacks Foundation, Vague**

105. What did HSBC do?

    **Objection: Lacks Foundation, Vague**

7

106. Did they calculate the NAV?

    **Objection: Lacks Foundation, Vague**

107. Why did they do that?

    **Objection: Lacks Foundation, Vague**

108. Were they the custodian?

    **Objection: Lacks Foundation, Vague**

109. Do you know how they did that?

    **Objection: Lacks Foundation, Vague**

110. Did they do that because they were the custodian?

    **Objection: Cumulative, Lacks Foundation, Vague**

111. What else did HSBC do?

    **Objection: Vague**

112. In your declaration at section 6 you state that you "verified" the NAV of Thema, in section 9 you state that there was a "calculation" the NAV of Thema. Did you verify or calculate?

    **Objection: Argumentative,[8] Compound**

113. How did you know how to calculate the NAV? According to which formula? With what data?

    **Objection: Compound**

114. Please refer to section 10 of your declaration. With how many clients were you in touch? Was being in touch with clients your responsibility at BAWFM?

    **Objection: Compound**

115. Did you read Primeo's PPM? Did it contain a description of the investment strategy?

    **Objection: Compound**

---

[8] *See* Fed. R. Evid. 611(a).

8

116. Were you in contact with Sonja Kohn? If yes, how often?

   **Objection: Compound**

117. What did you discuss with her?

118. In your declaration you state at section 3 that you have personal knowledge of BAWFM's business practices, including with 20:20 Medici AG (Bank Medici) and at section 11 that BAWFM had a business arrangement with Bank Medici. According to the public Austrian companies' register (Exhibit C), Bank Medici AG was only formed on December 18, 2003, and 20:20 Medici AG on July 21, 2009. Both these dates postdate the termination of your employment which according to your declaration, section 2, ended in December 2002.

   **Objection: Lacks Foundation, Mischaracterizes the Document**

119. How do you reconcile these facts?

   **Objection: Argumentative, Mischaracterizes the Document, Leading**

120. Were you ever in contact with BLMIS?

121. If yes, with whom?

122. If no, from whom do you have knowledge about him?

   **Objection: Vague**

123. Describe your working relationship with Dr. Radel.

   **Objection: Lacks Foundation**

124. How often did you see her?

   **Objection: Lacks Foundation**

125. Did you hear about Alpha Prime during your tenure at BAWFM?

126. Did you perform any tasks for Alpha Prime during your tenure with Domus?

127. Please refer to Section 8 of your Declaration dated October 13, 2014: How could contacting Madoff have helped you in verifying that the securities were held with Bank of Bermuda as custodian? Would you not have to verify this with BoB?

   **Objection: Compound, Vague**

128. When were you shown Exhibit A attached to your 2014 declaration?

129. Were you shown the English translation as well?

9

130. If yes, did you verify that it is a correct translation?

131. Did you mark on Exhibit A the paragraph citied in paragraph 10 of your statement?

    **Objection: Vague**

132. Was it marked when the document was shown to you?

    **Objection: Vague**

133. Please read the last paragraph at the end of page 1 and the first paragraph on the top of page 2 (German version) of Exhibit A

134. Please explain your understanding of these paragraphs

    **Objection: Vague**

135. Who chose to incorporate that paragraph into your declaration?

    **Objection: Cumulative**

136. Was it you?

137. If yes, why?

138. If yes, why only that paragraph from Exhibit A?

139. If no, who incorporated that paragraph into your declaration?

140. Did you ask for the reason to incorporate only that paragraph?

141. Was Exhibit A the document you were shown or another document?

142. Are you positive? Can you rule out that you were shown a different document?

    **Objection: Argumentative, Compound, Vague**

143. Please refer to Exhibit B. This is another report issued in June 2001 one year after the report in Exhibit A. Have you seen this report?

144. Can you confirm which of the two Exhibits you saw during your tenure or whether you saw both of them?

    **Objection: Compound**

145. Could you have seen only Exhibit B and not Exhibit A?

146. Was Exhibit B shown to you during the discussions leading to you signing the declaration?

147. Please turn to page 1 of Exhibit B. Do you know any of the names listed there?

148. Please refer to the bottom of page 1 of Exhibit B: Can you confirm that the individuals listed there were the directors of BAWFM?

149. Where were they located?

150. What were their functions?

151. Hierarchically speaking: who had the higher position?

152. Could the directors give instructions to Dr. Radel?

153. Did she have to report to the Directors?

154. Was Dr. Radel a director of BAWFM?

155. If she was not a director, what function did she have at BAWFM?

156. Could she make decisions without the consent of the directors?

157. Do you know to whom Exhibit A and/or Exhibit B have been distributed?

    **Objection: Compound**

158. Please turn to page 1 of the Exhibit B. Were you aware that the CEO of Bank Austria, NY, attended that meeting?

    **Objection: Leading**

159. Please turn to page 2 of the Exhibit B. It contains the same language as the marked language of Exhibit A with one additional sentence which reads: "With regard to presumptions of some journalists about a possibility of "front running", it should be stressed that Madoff Securities as broker doesn't execute block orders".

160. What is your understanding of this sentence?

161. Are you aware of any reactions to Exhibit B?

    **Objection: Vague**

162. How do you know about Bank Medici?

    **Objection: Lacks Foundation, Vague**

163. How do you know about Eurovaleur?

    **Objection: Lacks Foundation, Vague**

11

164. How do you know about the business arrangement between those two companies?

   **Objection: Lacks Foundation, Vague**

165. How do you know the facility was owned by Bank Austria?

   **Objection: Lacks Foundation, Vague**

166. How do you know about the percentage and payments referred to in paragraph 13?

167. How do you know that Madoff related investment funds were the source of the large majority of income that BAWFM generated?

168. Who told you this?

   **Objection: Lacks Foundation**

169. Was it suggested to you by the team interviewing you in connection with your declaration?

   **Objection: Lacks Foundation**

170. If yes by whom exactly?

171. Please refer to page 2, paragraph 4 and page 3, first full paragraph of Exhibit D, a judgment issued by the Vienna Commercial Court, Judge Exner, on May 30th, 2016. There Judge Exner appraises the paragraph in Exhibit A you quote in Section 10 of your Declaration.

   **Objection: Exhibit is Incomplete and Improperly Used to Lead the Witness and to Have Witness Improperly Adopt and/or Rely on Hearsay, No Translation Available**

172. Do you agree with the appraisal of Judge Exner?

   **Objection: Calls for Speculation/Lacks Personal Knowledge,[9] Calls for Lay Opinion,[10] Hearsay, Leading Subject to Question 172, Lacks Foundation**

173. Please refer to Exhibit E, statements of Dr. Radel given as a witness in the proceedings 56 Cg 26/12k of the Vienna Commercial Court.

   **Objection: Exhibit is Incomplete and Improperly Used to Lead the Witness and to Have Witness Improperly Adopt and/or Rely on Hearsay[11]**

---

[9] *See* Fed. R. Evid. 602; Trustee's Mem. of Law at 13-14.
[10] *See* Fed. R. Evid. 701; Trustee's Mem. of Law at 14-15.
[11] The Trustee's objection on this basis is more fully detailed in the Trustee's Mem. of Law at 10-12.

174. Do you agree with Dr. Radel's statement on page 2, 3rd paragraph and page 3 second full paragraph of Exhibit E?

    **Objection: Exhibit is Incomplete and Improperly Used to Lead the Witness and to Have Witness Improperly Adopt and/or Rely on Hearsay, Calls for Speculation/Lacks Personal Knowledge, Calls for a Lay Opinion, Compound, Hearsay, Leading, Lacks Foundation**

175. Did Dr. Radel ever tell you that she believed that Madoff was front running?

176. Did it surprise you that Dr. Radel would tell you "that Madoff's strategy was legal" (see paragraph 15 of your 2104 declaration)?

177. Did you believe that Madoff was front running?

178. If so, did you ever tell anyone else that you believed Madoff was front running?

179. Who is the person referred to in Section 15 of your Declaration?

180. What did you tell that person and why?

    **Objection: Compound**

13