**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Oren J. Warshavsky
Eric R. Fish
*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> HSBC BANK PLC, *et al.* <br><br> Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**THE TRUSTEE'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR THE**
**ISSUANCE OF LETTER OF REQUEST FOR SAVERIO FIORINO**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ...............................................................................................................3

I.      MR. FIORINO'S EXAMINATION FALLS WITHIN THE BROAD SCOPE OF
        RELEVANT DISCOVERY...................................................................................3

II.     OBJECTORS' ARGUMENTS REGARDING BURDEN HAVE NO MERIT .................5

        A.      The Trustee Offered to Examine Mr. Fiorino in a One-Day U.S.-Style
                Deposition ..................................................................................................6

        B.      The Luxembourg Court and Comity Considerations...............................7

        C.      The Categories of Questions Are Relevant and Appropriate.................10

        D.      The Trustee Respects Mr. Fiorino's Vision Issues ................................14

III.    THE DISCOVERY SOUGHT IS NOT AN END-RUN AROUND THE
        PROHIBITION ON PRE-MOTION DISCOVERY.........................................................15

CONCLUSION...............................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CBS, Inc. v. Ahern*,
    102 F.R.D. 820 (S.D.N.Y. 1984) ..............................................................................4

*In re Garlock*,
    463 F.Supp.2d 478 (S.D.N.Y. 2006)..........................................................................4

*General Star Indem. Co. v. Platinum Indem. Ltd.*,
    210 F.R.D. 80 (S.D.N.Y. 2002) ................................................................................4

*Inv. Props. Int'l, Ltd. v. IOS, Ltd.*,
    459 F.2d 705 (2d Cir. 1972)......................................................................................4

*Myun-Uk Choi v Tower Research Capital LLC*,
    14-CV-9912 (KMW), 2019 WL 6271324 (S.D.N.Y. Nov. 25, 2019).......................4

*Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*,
    218 F.R.D. 24 (D. Conn. 2003)..................................................................................4

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec.*,
    Adv. Pro. No. 09-01161 (SMB), 2019 WL 1055958 (Bankr. S.D.N.Y. Mar.
    2019) .................................................................................................. *passim*

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    No. 15 Civ. 2106 (ER), 2018 WL 2958361 (S.D.N.Y. June 13, 2018)................3, 4

**Rules**

Fed. R. Civ. P. 26..................................................................................................2, 3, 5

Plaintiff Irving H. Picard, as trustee ("Trustee") for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa–*lll*, substantively consolidated with the chapter 7 estate of

Bernard L. Madoff, respectfully submits this Reply in further support of his Motion for the

Issuance of Letter of Request for the examination under oath of Saverio Fiorino in Luxembourg

(ECF No. 579) (the "Motion") and in response to the Opposition filed by HSBC Bank plc

("HSBC"), HSBC Securities Services (Luxembourg) S.A. ("HSSL"), and Saverio Fiorino (ECF

No. 601) (the "Opposition").

## PRELIMINARY STATEMENT

Though loosely clothed in catch phrases like "unduly burdensome" and "duplicative," the

Opposition is nothing more than HSBC's attempt to unreasonably constrain discovery on key

elements of the Trustee's claims in this proceeding.  With no basis in law or precedent, HSBC,

HSSL, and Saverio Fiorino (the "Objectors") seek to limit the Trustee's discovery to witnesses

friendly to, and previously coached by, HSBC.  Alternatively, Objectors seek to reduce the

Trustee's examination questions to topics that HSBC deems suitable to them.[1]

Mr. Fiorino, a former HSSL officer who held numerous positions at HSSL and its

predecessor, Bank of Bermuda (Luxembourg) S.A., is a key witness for the Trustee with first-

hand knowledge of the services HSSL performed for Alpha Prime.  HSSL acted as custodian and

---

[1] HSSL does not have standing to oppose the Trustee's Motion.  As HSSL notes, it was previously dismissed on extra-territoriality grounds and is not currently a defendant in this case. Moreover, HSSL and the other Objectors "expressly reserve all rights, defenses, and objections, including, without limitation, any defense based on personal jurisdiction" and also reserve their rights to object again in Luxembourg.  Opp. at 1 n.1, 17.  Objectors—including non-party HSSL—cannot pick and choose when to participate substantively in this action while reserving their rights based on jurisdiction.  Nor can they raise their objections now, while simultaneously reserving their right to make another challenge in Luxembourg.

administrator to Alpha Prime and Primeo Fund, another BLMIS feeder fund whose founders and

principals were largely the same as those of Alpha Prime.  As head of Alternative Fund Services

("AFS") at HSSL, Mr. Fiorino has detailed personal knowledge relating to Madoff's trading

strategy and performance (including his own analysis of Madoff's trading activity), HSSL's due

diligence on BLMIS in connection with Alpha Prime, and HSBC and HSSL employees' and

auditors' concerns about BLMIS.  In addition, because HSSL acted as Alpha Prime's sub-

administrator and sub-custodian, HSSL's knowledge—which can only be obtained through

HSSL's agents and employees such as Mr. Fiorino—may also be imputed to Alpha Prime.  The

Second Amended Complaint's multiple references to Mr. Fiorino by name demonstrates his

significance to this case.

Mr. Fiorino's relevance to this proceeding is undisputed.  Nevertheless, Objectors set

forth a series of inaccurate and unpersuasive arguments as a means to prevent the Trustee from

obtaining relevant and probative testimony.  Objectors try to diminish the value of the Trustee's

claims against Alpha Prime; disingenuously argue that Mr. Fiorino's examination will cause

undue burden; suggest that the Trustee should rely on other witnesses selected by Objectors and

testimony from foreign proceedings in which the Trustee was not a party; and contend that Mr.

Fiorino's only relevance is to the Trustee's case against HSSL.  Considering that Alpha Prime

listed more than seventy HSBC-related witnesses on its Rule 26(a)(1) disclosures—including

Mr. Fiorino[2]—the Trustee has been eminently reasonable with his choices for depositions in this

---

[2] Alpha Prime's Initial Disclosures identify Mr. Fiorino as having knowledge of "HSSL CRM
procedures and history; Head of Business Development, visited BLMIS, expert of all aspects of
BLMIS strategy, provided expertise and analyses for registration, license, listing and taxation
issues, Concerning Madoff's handling of index options (puts and calls) as set forth in the BOB
Primeo analysis; Bank of Bermuda Agreement; Communication of HSBC with Madoff and
Kohn." *See* Ex. 1 to Declaration of Oren J. Warshavsky.

2

matter.  Mr. Fiorino's expected testimony falls well within the broad parameters of permissible

discovery under Federal Rule of Civil Procedure 26.  Objectors' efforts to restrict testimony to

HSBC's short list of curated witnesses—who have testified multiple times on HSBC's behalf in

other proceedings, but lack Mr. Fiorino's personal knowledge—should be rejected and the

Trustee's motion granted.

<strong>ARGUMENT</strong>

**I.     MR. FIORINO'S EXAMINATION FALLS WITHIN THE BROAD SCOPE OF RELEVANT DISCOVERY**

As HSBC is well aware, the Trustee is properly using letters rogatory as "an appropriate

mechanism for securing the testimony of other witnesses who cannot be compelled to appear by

the court in which the action is pending."  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec.*,

Adv. Pro. No. 09-01161 (SMB), 2019 WL 1055958, at *5 (Bankr. S.D.N.Y. Mar. 2019)

("*Kingate*") (internal quotations omitted).  Rule 26's relevance standards are considered when

making the determination to issue letters rogatory, which is within the Court's discretion.  *Id.*

Rule 26 provides that parties "may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ.

P. 26(b)(1).  As this Court noted:

> Discovery is not limited to issues raised by the pleading, nor to the merits of the
> case, and is warranted if there is any possibility that the information sought to be
> obtained may be relevant to the subject matter of the action.  Discovery is relevant
> if there is a possibility that the information sought may have a bearing on *any
> party's* claim or defense.  While not unlimited, relevance, for purposes of
> discovery, is an extremely broad concept.  It is well-established within this Circuit
> that Rule 26 will be satisfied if there is any possibility that the information sought
> to be obtained may be relevant to the subject matter of the action.

*Kingate*, 2019 WL 1055958, at *5 (internal quotations omitted).

The party seeking discovery pursuant to a letter of request bears the burden of persuasion,

but "that burden is not a heavy one."  *Id.* at *6 (citing *Villella v. Chem. & Mining Co. of Chile*

3

*Inc.*, No. 15 Civ. 2106 (ER), 2018 WL 2958361, at *3 (S.D.N.Y. June 13, 2018)).  "On the other

hand, '[a] party opposing issuance of a letter rogatory must show good reason why such [a] letter

should not issue.'"  *Id.* (quoting *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 24,

26-27 (D. Conn. 2003)).  Objectors' request to bar the Trustee from taking Mr. Fiorino's

deposition "is most extraordinary relief."  *In re Garlock*, 463 F.Supp.2d 478, 481 (S.D.N.Y.

2006) (quotations omitted).  The Second Circuit has held that "an order to vacate a notice of

taking [a deposition] is generally regarded as both unusual and unfavorable."  *General Star*

*Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 82 (S.D.N.Y. 2002) (quoting *Inv. Props.*

*Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 708 (2d Cir. 1972)).  Although discovery may be limited

under certain circumstances to avoid "unreasonably cumulative or duplicative" evidence, this is

not meant to restrict discovery to "unique knowledge."  *See Myun-Uk Choi v Tower Research*

*Capital LLC*, 14-CV-9912 (KMW), 2019 WL 6271324, at *2 (S.D.N.Y. Nov. 25, 2019) (citing

*CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984) (disclaiming "unique knowledge of

relevant facts … 'is simply not a basis for foreclosing otherwise proper discovery.'")).

    As an HSSL officer, Mr. Fiorino has direct knowledge of the services HSSL performed

for Alpha Prime and Primeo Fund, the due diligence conducted on BLMIS, and the concerns

raised as a result.  The Trustee's Second Amended Complaint features Mr. Fiorino prominently

in several allegations.  For instance, Mr. Fiorino "analyzed the trades reported on Primeo Fund's

customer statements and trade confirmations in 2001 and 2002.  He noted that during this period

Madoff 'never dealt in OTC options or other derivatives.'"  Second Am. Compl., ECF No. 567

("SAC") ¶ 82.  In 2005, Ernst & Young raised several serious questions concerning Madoff to

Mr. Fiorino, who then discussed them with Nigel Fielding, another HSSL officer who also

served as an Alpha Prime director.  SAC ¶ 168.  On February 24, 2005, Mr. Fiorino wrote to Mr.

4

Fielding: "(1) what is [Madoff's] real strategy, how on earth can he always produce 12% pa [per annum] (2) where are the assets and are there really assets or is it all fictitious"? *Id.* He again wrote to Mr. Fielding in March 2005 regarding Ernst & Young's concerns. SAC ¶ 169. Mr. Fiorino also participated in a March 21, 2005 meeting in which Madoff's relationship as custodian was discussed and concerns were raised. SAC ¶ 172.

In *Kingate*, which involved a similar motion by the Trustee seeking testimony of an HSBC Bank Bermuda employee with knowledge of HSBC's relationship with BLMIS and other BLMIS feeder funds, the Court noted that to prove his claims the Trustee must show the defendant's "state of mind and actions: what it knew, what it suspected, what it did. That state of mind can only be proven through the testimony of individuals, including individuals whose own knowledge may be imputed" to the defendant. *Kingate*, 2019 WL 1055958, at *8. Likewise, Mr. Fiorino's knowledge and actions as an HSSL officer bears directly on HSSL's knowledge and state of mind, which, in turn, may be imputed to Alpha Prime. Mr. Fiorino's examination is thus squarely within the scope of relevant discovery, and "the Trustee does not have to accept . . . HSBC['s] representation that he knows nothing or his knowledge duplicates what others know." *Id.*, at *10. There is no substitute for Mr. Fiorino's first-hand knowledge in this action.

## II.    OBJECTORS' ARGUMENTS REGARDING BURDEN HAVE NO MERIT

Objectors contend that Mr. Fiorino's examination would violate Rule 26 because the demand for testimony is unduly burdensome, duplicative of other information available to the Trustee, and disproportionate to Mr. Fiorino's relevance to the case. They do not deny Mr. Fiorino's obvious relevance to this case, but rather submit that the Trustee should rely on other witnesses. Objectors also try to shield themselves with the Luxembourg procedure by suggesting that such examinations are a burden on that court. Objectors do not have the right to dictate the

5

Trustee's discovery and limit the Trustee's examination of witnesses to those whom HSBC has preapproved.

### A.   *The Trustee Offered to Examine Mr. Fiorino in a One-Day U.S.-Style Deposition*

Although Objectors contend that the Luxembourg procedure imposes an undue burden, they elected for Mr. Fiorino's examination to be conducted there. Discussions between HSBC's and the Trustee's counsel regarding the depositions of HSBC witnesses have been ongoing since mid-2019. During those discussions, the Trustee made clear that the testimony of certain HSBC witnesses is essential to his claims against Alpha Prime and that it is his intention to obtain this testimony in the most efficient and convenient way for the parties and witnesses. To that end, despite the number of HSBC-related witnesses in Alpha Prime's disclosures, the Trustee has sought to take only a few depositions of HSBC witnesses in a staged approach.[3] When the Trustee determined that he needed to move forward with Mr. Fiorino's examination, the Trustee offered to take his deposition in one day under the Federal Rules of Civil Procedure in a location of Mr. Fiorino's choosing where such an examination would be permitted. This would allow the Trustee's counsel to narrow his questioning based on the answers provided by Mr. Fiorino and shorten the time for his examination. Objectors' counsel rejected the proposal and said that Mr. Fiorino would prefer to "take advantage" of the Luxembourg procedure. That is Mr. Fiorino's prerogative, but he and the other Objectors should not be permitted to "take advantage" of the Luxembourg procedure as a sword and then use the disadvantages of that procedure as a shield against the examination on the basis that the procedure is too burdensome.

---

[3] Thus far, the Trustee has sought examinations of only Mr. Fiorino, Mr. Fielding, and Brian Pettitt, whose examination HSBC also opposes.

Because of the election of Luxembourg procedure, the Trustee was required to prepare a thorough and detailed list of examination questions that both comports with Luxembourg procedure and will elicit admissible evidence for this Court.  Luxembourg procedure—unlike a U.S. deposition—favors reference to a document when beginning a line of questioning.  The Trustee also must be careful to lay a foundation so that Mr. Fiorino's testimony is admissible at trial in this Court.

Objectors identify the ongoing examination of Mr. Fielding as an example of why the Luxembourg process is burdensome.  The Trustee also offered to take a deposition of Mr. Fielding under the Federal Rules, but he, like Mr. Fiorino, declined that offer.  Instead, Mr. Fielding chose Luxembourg procedure, which allows him to have each question and answer read back to him and grants him the ability to revise each statement recorded in the Luxembourg judge's summary until he is satisfied with the statement.  These witness revisions have been time-consuming and account for the lengthy examination process described by Objectors.  The Trustee does not fault Mr. Fielding—nor does he fault Mr. Fiorino—for exercising his rights under Luxembourg law, but Objectors cannot point to this procedure as onerous when they have chosen it and the Trustee has no other mechanism to obtain evidence from these witnesses.

### B.    The Luxembourg Court and Comity Considerations

Objectors also make a comity argument, contending that the examination will place an undue burden on the Luxembourg courts.  Such a concern is disingenuous in light of the Trustee's offer to take a U.S.-style deposition under the Federal Rules.  The Luxembourg courts have not complained about the "burden" imposed on them and are more than capable of determining their own procedures.

HSBC made a similar comity argument in the *Kingate* case, where the Trustee sought the examination in Bermuda of a witness whom HSBC argued had no relevant information for that case. This Court's analysis in that case is instructive:

> The Trustee's request to take Perry's deposition does not raise the concerns regarding abusive foreign discovery articulated by the Supreme Court. The Trustee does not seek the production of documents, and the costs and inconvenience to Perry and HSBC Bermuda should be minimal. Moreover, his testimony may prove important to the Kingate Funds' state of mind and notwithstanding the Respondents' speculation, Perry may know something that no one else does. If Perry knows nothing, as the Respondents contend, it will be a very short deposition.

*Kingate*, 2019 WL 1055958, at *7. Similarly, the Trustee does not seek the production of documents from Mr. Fiorino, and his testimony is important to HSSL's and Alpha Prime's state of mind. Objectors speculate that Mr. Fiorino will answer questions in the same manner as their hand-picked witnesses, but Mr. Fiorino's knowledge of fund administration, his scrutiny of BLMIS trading activity, his personal interactions with other HSBC and HSSL employees, and his communications with Alpha Prime board members indicate otherwise. Mr. Fiorino also may offer a different perspective than other HSBC witnesses, such as Mr. Fielding, who was an Alpha Prime director and is presently retained by HSBC to consult on Madoff-related litigation. It is the Trustee's right—not HSBC's—to determine which relevant witnesses to examine and the questions to ask them.

Objectors also profess concern for the Luxembourg courts when they request that this Court refuse to include a request to the foreign court for a verbatim transcript. They cite to the current dispute in Mr. Fielding's examination regarding the European Union's General Data Protection Regulation ("GDPR"), suggesting that stenographic transcription is causing "confusion" as to the appropriate record for the testimony. Opp. at 16-17; Ex. D to Kay Decl., ECF No. 600-5. Some further explanation of this issue is necessary. In the days leading up to

8

Mr. Fielding's examination on November 14, 2019, Mr. Fielding's counsel, as well as counsel

for HSBC and Alpha Prime, objected to the taking of a verbatim transcript.  The Luxembourg

judge heard the parties' positions on this issue, determined that a verbatim transcript would be

permitted, and instructed the Trustee to make the necessary stenographic arrangements and pay

the applicable costs.  On the fourth day of Mr. Fielding's examination, Mr. Fielding's counsel

(from the same law firm representing HSBC) raised concerns regarding the GDPR and the

verbatim transcript.  As a result, the Luxembourg judge postponed the previously scheduled fifth

and sixth days of examination while the parties presented their positions to the Luxembourg

court.  The issue remains pending before the Luxembourg court, which has not ruled.  As such, it

is premature to argue that GDPR-related issues will affect Mr. Fiorino's examination.  Moreover,

Mr. Fielding's and HSBC's counsel engineered the conflict arising over the GDPR, which can

hardly form the basis for imposing a burden on the Luxembourg courts.

True comity would dictate deferring to the Luxembourg courts on how they wish to

conduct the examination.  Although Luxembourg procedure does not specifically call for

verbatim transcription, its use does not conflict with Luxembourg's rules.  *See Kingate*, 2019

WL 1055958, at *7-8 (discussing whether the proposed deposition conflicted with Bermuda

law).  The Luxembourg court already has allowed the verbatim transcription of Mr. Fielding's

testimony and Objectors admit that "there is no direct conflict with Luxembourg law here."

Opp. at 14.  The fact that the Luxembourg courts understand that this is a request of a U.S. court

in a U.S. proceeding is what should govern the comity analysis.  The Luxembourg court is more

than capable of determining whether to allow a verbatim transcript; it has done so before and can

do so again.

9

As there is no conflict with Luxembourg law, the benefits of a verbatim transcript are obvious.  An exact recording of the witness's testimony provides precision and thoroughness, and allows the trier of fact to consider the evidence as provided, including all nuances and distinctions stated by the witness.  A summary is, by its terms, less precise and thorough than a full transcript.  Equivocations, precise language, nuances, and internal contradictions may be absent from or inadvertently smoothed over in summaries, which is what the Luxembourg court would provide unless a verbatim transcript is requested.  It is therefore in the interest of all parties to rely on what the witness actually stated.  Unless Mr. Fiorino becomes subject to U.S. subpoena power or voluntarily appears for trial—neither of which is likely—the parties will need to rely on his Luxembourg examination at trial.  Without a verbatim transcript, the parties will not be able to effectively designate portions of his testimony, nor would they easily be able to assert proper objections.  If the Luxembourg court is willing to have Mr. Fiorino's testimony transcribed—as it was in the Fielding examination—nobody should stand in the way of the request.

## C.    *The Categories of Questions Are Relevant and Appropriate*

Objectors go through each of the eight sections of the examination questions and explain why each is burdensome or should not be asked.  It is notable, however, that Objectors do not challenge Mr. Fiorino's personal knowledge or his relevance.  Instead, Objectors argue that other witnesses are better suited to answer the questions.  As this Court held in *Kingate*, the Trustee should not be hamstrung in his questioning; the Trustee does not know what Mr. Fiorino will say "and the Trustee does not have to accept his or HSBC['s] . . . representation that he knows nothing or his knowledge duplicates what others know." *Kingate*, 2019 WL 1055958, at *10.

*Section I:*  Objectors argue that the lack of questions that specifically refer to Alpha Prime is somehow a reason to exclude questions about HSSL's operations, Mr. Fiorino's role at

HSSL, and information related to HSSL's diligence practices. This ignores HSSL's position as Alpha Prime's (and Primeo Fund's) service provider and the resulting agency relationship that allows HSSL's knowledge to be imputed to Alpha Prime. HSSL also acted as a service provider to other BLMIS feeder funds, so questions regarding its operations and overall knowledge gained from this experience also relate to Alpha Prime and provide necessary foundational information. The questions need not refer to Alpha Prime specifically in order to elicit relevant testimony.

Objectors also contend that prior testimony of other witnesses in foreign proceedings—in which the Trustee was not a party—provides the Trustee with "sufficient testimony on HSSL's operations" such that the Trustee should be precluded from "examin[ing] Mr. Fiorino on this subject at all." Opp. at 8. The Trustee is not obligated, nor should he be, to rely on testimony from foreign proceedings in which he neither participated nor had the opportunity to examine the witness. The Trustee is entitled to choose the witnesses he seeks to depose and ask the questions he deems necessary and appropriate. He cannot—and should not be—be forced to rely on testimony taken by others with dissimilar interests.

*Section II*: Objectors again argue that a different witness "already offered extensive testimony on [a November 2, 2000 meeting with Madoff] in other litigations." Opp. at 9-10. Again, the subject matter is obviously relevant and the Trustee is not required to rely on testimony from foreign proceedings in which he was neither a party nor otherwise able to participate. Objectors do not contend that Mr. Fiorino has no knowledge regarding this meeting. Rather, Objectors argue that Mr. Fielding already testified on this issue, discounting "[t]he possibility that Mr. Fiorino recalls something Mr. Fielding does not . . . ." Opp. at 10. Objectors' position also presumes that Mr. Fiorino and Mr. Fielding have the same interests and same motives. They do not. Mr. Fielding was a director of Alpha Prime and Primeo Fund; Mr.

11

Fiorino was not.  The Trustee has a right to ask Mr. Fiorino about his memory and impressions

of this meeting, which may be different from others.  Mr. Fiorino's testimony may prove

important to HSSL's state of mind "notwithstanding the [Objectors'] speculation."  *See Kingate*,

2019 WL 1055958, at *7.

*Section III*:  Objectors contend that the questions posed to Mr. Fiorino overlap with

questions to be posed to Mr. Fielding, the author of the email at issue in this section.  Objectors

suggest that the Trustee is entitled only to the author's understanding of the circumstances

surrounding the email, regardless of whether others have personal knowledge of these

circumstances.  Objectors' bald assertion that "Mr. Fiorino's views are irrelevant," *see* Opp. at

10, is belied by references to him in the email and the tasks he was asked to perform.  The

Trustee should be able to explore Mr. Fiorino's knowledge and impressions of this email and any

actions taken as a result.

*Section IV*:  The Second Amended Complaint alleges in part: "Saverio Fiorino, an HSSL

employee, analyzed the trades reported on Primeo's customer statements and trade confirmations

in 2001 and 2002.  He noted that during this period that Madoff 'never dealt in OTC options or

other derivatives.'"  SAC ¶ 82.  Section IV seeks to elicit Mr. Fiorino's testimony related to this

allegation, directing him to the language he used in an email.  Objectors claim that the Trustee's

Second Amended Complaint "misstates the record with respect to his claims" regarding Mr.

Fiorino's analysis.  *See* Opp. at 10-11.  Not only is this incorrect, but Objectors' pre-emptive

arguments on the substance of this email are not a substitute for Mr. Fiorino's personal

knowledge on the subject matter.  The plain language of the email shows that Mr. Fiorino was

commissioned to perform a detailed analysis of BLMIS's trading strategy and performance to

assess whether the strategy would be compatible with foreign regulations.  *See* Letter of Request,

12

Ex. 8.  This section therefore questions Mr. Fiorino on this analysis, using his own words in the email as a basis.

*Section V*:  Objectors complain that the Trustee intends to show Mr. Fiorino an email chain, including an email that Mr. Fiorino wrote, that the Trustee also relied on in his letter of request for Mr. Fielding.  Objectors suggest that only one witness with knowledge of the substance discussed in emails should be permitted to testify about it.  *See* Opp. at 11.  Objectors' argument in Section III is that, where Mr. Fielding sent a communication to Mr. Fiorino, the Trustee should only be permitted to question the author of the document, Mr. Fielding.  Objectors' argument here is that, where Mr. Fiorino sent a communication to Mr. Fielding, the Trustee should only be permitted to question the recipient of the document, Mr. Fielding.  There is no support for either position.  To the contrary, multiple witnesses are often questioned about the same document, and the Trustee is entitled to examine the author, the recipient, or anyone with knowledge of the contents of the document.  The questions in this section—regarding an email that specifically mentions Madoff—are obviously relevant and should not be limited.  However, the contradiction in Objectors' arguments are too blatant to ignore.  Objectors' position here is guided by one principal: the Trustee should rely on Mr. Fielding because he is their preferred witness.  The Trustee did not seek a corporate representative to testify; he seeks a witness with knowledge.  Objectors' unprincipled efforts to curtail the Trustee's legitimate discovery needs should be rejected.

*Sections VI and VII*:  Objectors assert that even though emails reflect that Ernst & Young raised certain well-known concerns regarding "red flags" with Mr. Fiorino, the Trustee should be able to question only Mr. Fielding about these issues because Mr. Fiorino "passed along E&Y's concerns" to Mr. Fielding.  *See* Opp. at 12.  This document is highly relevant to HSSL's

13

knowledge regarding BLMIS and potential fraud, but Objectors seek to constrain the Trustee to asking Mr. Fielding and not Mr. Fiorino.  This position should be rejected.  The information Mr. Fiorino discussed with Mr. Fielding, along with Mr. Fiorino's impressions of Ernst & Young's concerns, go to the heart of this case.  The Trustee should be able to question both witnesses on this issue without limitations.

*Section VIII*:  Objectors wish to prevent the Trustee from asking questions regarding the 2006 or 2008 KMPG reviews because the Trustee "has access to days of testimony covering these grounds from Christine Coe," an HSBC employee who "testified on that subject in the Cayman Islands, Ireland, and the United States" and who provided witness statements in another litigation.  Opp. at 12-13.  Objectors again fail to mention that the Trustee was not a party to those other litigations, could not cross-examine Ms. Coe, and has different interests than the parties who questioned her.  Moreover, the fact that another higher-level HSBC witness has testified on this subject matter in unrelated actions is of no moment.  The Trustee should not have to accept the prior testimony of HSBC's preferred witness in place of Mr. Fiorino.

### D.    *The Trustee Respects Mr. Fiorino's Vision Issues*

Objectors include a short paragraph in their Preliminary Statement regarding Mr. Fiorino's vision issues.  Opp. at 5.  They do not state that this issue would prevent Mr. Fiorino from testifying and provide few details.  Objectors submit that they informed the Trustee of Mr. Fiorino's condition and asked that the proposed exhibits be pared back.  Opp. at 5.  This is accurate, but the Trustee did not simply decline the request, as indicated in the Opposition.  The Trustee's counsel reviewed the questions and exhibits upon Objectors' counsel's request and advised that there was no realistic way to eliminate exhibits.  The Trustee also explained that there are eighteen exhibits being used in the letter of request, and the questions direct him to specific excerpts.  The Trustee included full copies of these documents, some of which are

14

voluminous, in the event the witness needs context during his examination.  The Trustee does not

anticipate that Mr. Fiorino will be required to review extensive portions of the documents during

his examination.  That said, the Trustee advised he would entertain any suggestions from

Objectors.  Objectors provided none.

### III.    THE DISCOVERY SOUGHT IS NOT AN END-RUN AROUND THE PROHIBITION ON PRE-MOTION DISCOVERY

Objectors argue that the "stated purpose for discovery is improper" because the Trustee

includes questions that may relate to his claims against HSBC and HSSL.  *See* Opp. at 15.  This

argument lacks merit for several reasons.  *First*, questions regarding HSBC's and HSSL's

knowledge may be imputed to Alpha Prime based on HSSL's agency relationship with Alpha

Prime.  Although HSSL is currently dismissed from the case based on extraterritoriality grounds,

the Trustee cannot wait for the Supreme Court's decision before seeking this necessary

deposition in its case against Alpha Prime.  The fact that Mr. Fiorino's knowledge may also

relate to HSBC's and HSSL's knowledge should not prevent his examination from going

forward.  Objectors downplay the Trustee's claims against Alpha Prime, but the fact remains that

the Court ruled in the Trustee's favor on a Motion for Judgment on the Pleadings (*see* ECF No.

566) and the Second Amended Complaint seeks relief of approximately $95 million against

Alpha Prime, including: (1) the Trustee's fraudulent transfer claim of $6.72 million; (2) claims

concerning the appropriate treatment (i.e., the disallowance, equitable subordination, or

treatment as a general creditor claim) of the remaining 5% of Alpha Prime's net equity claim

(i.e., $12,533,550); and (c) whether Alpha Prime is entitled to a Bankruptcy Code section 502(h)

claim for its settlement payment of $76,450,000 to the estate.  Objectors are simply wrong to

diminish the value and importance of these claims to the Trustee.

*Second*, HSBC is a defendant in the case.  HSBC has chosen not to enter into a case

management plan or participate in discovery on the Trustee's claims against it until the Trustee's

claims against the remaining HSBC-related entities are finally determined by the Supreme Court.

Yet, HSBC has selectively chosen to participate in discovery abroad.  HSBC's counsel has

attended all four days of Mr. Fielding's examination, substantively participated in that

examination by asking questions of the witness and made applications to the Luxembourg court

on the Luxembourg legal and procedural issues impacting Mr. Fielding's examination.  HSBC

also has the opportunity to attend Mr. Fiorino's examination and cross-examine if it so chooses,

but it should not be able to foreclose the Trustee's ability to examine this essential witness for his

case against Alpha Prime.

*Third*, the Trustee also does not need Mr. Fiorino's testimony to "bolster the pleading" of

his claims against HSBC and HSSL.  *See* Opp. at 5.  The Trustee's Amended Complaint and

Second Amended Complaint already allege HSSL's and HSBC's particularized knowledge

regarding BLMIS's fraud.  This Court noted during the hearing on the Trustee's Motion to

Amend the Complaint that "HSSL, an HSBC affiliate that provided administrative and custodial

services to both Alpha Prime and [Primeo] fund and employed Fielding . . . [d]iscovered that

BLMIS' reported option trades were impossible and informed the [Primeo] directors."  *See* Tr. of

Proceedings, ECF No. 569 at 45:7-13.  The Court thus already has found at least some of the

Trustee's allegations related to HSBC and HSSL plausibly allege willful blindness and/or actual

knowledge.

Finally, the fact that HSSL and HSBC are defending claims brought by Alpha Prime in

other jurisdictions in which pretrial discovery is not permitted should not prevent the Trustee

from pursuing discovery in this case.  The Trustee is not a party to those other proceedings,

which have no impact on this case.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court issue the

Trustee's Letter of Request for Saverio Fiorino, attached to the Motion as Exhibit 1, to the

Judicial Authority.


Dated:   New York, New York
         February 25, 2020

                                        Respectfully submitted,

                                         /s/ Oren J. Warshavsky
                                        **Baker & Hostetler LLP**
                                        45 Rockefeller Plaza
                                        New York, New York 10111
                                        Telephone: (212) 589-4200
                                        Facsimile: (212) 589-4201
                                        David J. Sheehan
                                        Email: dsheehan@bakerlaw.com
                                        Oren J. Warshavsky
                                        Email: owarshavsky@bakerlaw.com
                                        Eric R. Fish
                                        Email: efish@bakerlaw.com

                                        *Attorneys for Irving H. Picard, Trustee for the*
                                        *Substantively Consolidated SIPA Liquidation of*
                                        *Bernard L. Madoff Investment Securities LLC*
                                        *and the Chapter 7 Estate of Bernard L. Madoff*