| | |
|---|---|
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, NY 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201 | Hearing Date: March 25, 2020 at 10:00 a.m.<br>Objections Due: March 18, 2020 at 5:00 p.m. |

*Attorneys for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>          Plaintiff-Applicant,<br><br>          v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>          Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>          Plaintiff,<br><br>          v.<br><br>JO ANN CRUPI and JUDITH BOWEN,<br><br>          Defendants. | Adv. Pro. No. 10-04216 (SMB) |

**MOTION, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT**

TO:    THE HONORABLE STUART M. BERNSTEIN,
         UNITED STATES BANKRUPTCY JUDGE

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C.

1

§§ 78aaa-lll ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors") under chapter 7 of the United States Bankruptcy Code, §§ 101-1532 (the "Bankruptcy Code"), by and through his undersigned counsel, submits this motion (the "Motion") seeking, pursuant to section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure, entry of an order approving a settlement, the specific terms of which are set forth in an agreement (the "Agreement" attached at *Exhibit A*) between the Trustee and defendants Jo Ann Crupi ("Ms. Crupi") and Judith Bowen ("Ms. Bowen") (together, "Defendants" and with the Trustee, the "Parties"). In support of the Motion, the Trustee represents as follows:

## PRELIMINARY STATEMENT

The Trustee commenced this action against Defendants to recover avoidable transfers made by BLMIS to or for the benefit of Defendants from their investment advisory ("IA") accounts at BLMIS as well as in connection with Ms. Crupi's employment with BLMIS.

As a result of extensive settlement negotiations, the Parties have entered into the Agreement, which represents a good faith, complete settlement of all disputes between the Trustee and Defendants raised in this adversary proceeding brought by the Trustee and in the customer claims filed by Defendants in the underlying SIPA liquidation proceeding. Under the Agreement, Defendants have agreed to assign multiple customer claims to the Trustee and make certain payments to the Trustee, which in the aggregate will increase the funds, available for distribution to BLMIS customers with allowed claims, by more than $500,000.[1] Ms. Crupi has also agreed, given her work in the IA business of BLMIS, to cooperate in the Trustee's prosecution of his

---

[1] Additionally, the Trustee recovered from a third-party institution nearly $300,000 in funds which were transferred to that institution by BLMIS for the benefit of Defendants. These funds have already been made available for distribution.

2

remaining adversary proceedings before this Court.

The Trustee respectfully submits that the terms of the Agreement are fair and equitable, reasonable, and in the best interests of the substantively consolidated estates of BLMIS and Madoff. The Trustee respectfully requests that the Court approve the Parties' settlement.

## BACKGROUND

### *The Commencement of the BLMIS Liquidation Proceeding*

1. On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors. (Case No. 08 CV 10791). In the complaint, the Commission alleged that the Debtors engaged in fraud through the investment adviser activities of BLMIS.

2. On December 15, 2008, the Commission consented to a combination, pursuant to section 78eee(a)(4)(A) of SIPA, of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, in the District Court, SIPC filed an application, pursuant to section 78eee(a)(3) of SIPA, alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3. On that same date, the District Court entered a protective decree, to which BLMIS consented, which, in pertinent part:

(i) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

(ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(iii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

3

4. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating Madoff's Chapter 7 estate with the SIPA liquidation proceeding (together, the "BLMIS Estate").

### *Defendants' Customer Claims*

5. On or about February 23, 2009, Defendants filed customer claims in the underlying SIPA liquidation proceeding relating to Account Nos. 1B0136, 1C1210, 1ZR339, and 1ZR340, wherein Defendants claimed losses based on the market value of the securities and cash balances reflected on their last BLMIS customer statements.

6. On October 19, 2009, the Trustee denied the customer claim relating to Account No. 1C1210 based on his determination that the account had a negative "net equity," which the Trustee calculated by crediting the total amount deposited into the account less the amounts withdrawn from the account. Although the Trustee calculated that each of the remaining accounts, for which Defendants filed claims, had a positive "net equity," the Trustee withheld determination of such claims based on his position that the accounts had been funded, in whole or part, by avoidable transfers which Defendants had previously received from BLMIS.

### *The Trustee's Claims Against Defendants*

7. On November 12, 2010, the Trustee commenced this adversary proceeding against Defendants in the Bankruptcy Court in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Jo Ann Crupi et al.*, Adv. Pro. No. 10-04216 (the "Adversary Proceeding").

8. In the Adversary Proceeding, the Trustee sought, *inter alia*, to avoid and recover, under sections 105(a), 544, 548(a), 550(a) and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law ("NY DCL") §§ 273–279), N.Y. C.P.L.R. 203(g) and 213(8), and other applicable laws, avoidable transfers

totaling nearly $2.5 million made by BLMIS from Account Nos. 1B0136, 1B0227, 1C1210, and 1C1277 held by, or for the benefit of, Defendants. The Trustee also alleged that Ms. Crupi was liable to the BLMIS Estate for additional avoidable transfers totaling more than $6 million made by BLMIS to, or for the benefit of, Defendants in connection with Ms. Crupi's employment at BLMIS.[2] The Trustee additionally sought, pursuant to section 502(d) of the Code, disallowance of Defendants' remaining customer claims.

### *Ms. Crupi's Indictment, Conviction, and the Forfeiture Money Judgment*

9. On July 29, 2013, Ms. Crupi and four other former BLMIS employees were charged in a thirty-three-count Superseding Indictment (the "Indictment") with conspiracy to defraud BLMIS investment advisory clients, securities fraud, falsifying records of a broker dealer, falsifying records of an investment adviser, conspiracy to commit bank fraud, bank fraud, and tax evasion. *United States v. Bonventre et al.*, No. 1:10-cr-00228 (LTS) (S.D.N.Y.) (ECF 397). The government alleged that Ms. Crupi "worked in the investment advisory business essentially as a portfolio manager," "assisted Frank DiPascali, Jr. in the management of the so-called split strike conversion strategy accounts," and "was responsible for tracking the daily activity in the bank account into which billions of dollars of investment advisory client money was deposited and withdrawn." (*Id.* at 4).

10. The Indictment also included forfeiture allegations against Ms. Crupi seeking forfeiture of "all property, real and personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of [the] offenses [charged in the Indictment], including, but not limited to, a sum of money representing the amount of proceeds obtained as a result of the

---

[2] Nearly half of this $6 million was used by Defendants to purchase a residence in 2008 located at the New Jersey shore which, as detailed below, was forfeited to the United States in connection with Ms. Crupi's criminal prosecution and conviction.

5

said offenses, to wit, approximately $170 billion, and all property traceable thereto, for which the indicted defendants are jointly and severally liable." (*Id.* at 66-67).

11. On March 24, 2014, a jury returned a guilty verdict against Ms. Crupi on all counts charged against her in the Indictment. *U.S. v. Bonventre et al.* (Minute Entry 3/24/14). While the United States asked the court to sentence Ms. Crupi to a significant term of imprisonment (Sentencing Submission of United States at 3, 79, 97 (ECF 1082)), Ms. Crupi asked for leniency, particularly given that she is mother to two adopted children. (Sentencing Submission of Ms. Crupi at 3 (ECF 1076)). On December 15, 2014, the Honorable Laura Taylor Swain sentenced Ms. Crupi to six years in prison. (ECF 1243).

12. On December 16, 2014, Judge Swain entered an order of forfeiture against Ms. Crupi, consisting of (i) a money judgment in the amount of the sum of (a) $33,947,549,355, representing proceeds traceable to the commission of Counts One, Two, Six, Seven, Nine and Ten the Indictment, and (b) $3,417,804.26, representing proceeds traceable to the commission of Counts Sixteen and Seventeen of the Indictment, and (ii) the forfeiture of part or all of certain assets held by Ms. Crupi and/or Ms. Bowen which (a) were found to constitute or be derived from proceeds traceable to the commission of Counts One, Two, Six, Seven, Nine, Ten, Sixteen, and Seventeen of the Indictment (b) provided such assets were acquired with funds transferred by BLMIS to or for the benefit of Ms. Crupi and/or Ms. Bowen on or after January 1, 2002 (the "Specific Property"). Preliminary Order of Forfeiture as to Specific Property/Money Judgment, *U.S. v. Bonventre et al.* (ECF 1224), a copy of which is attached hereto at *Exhibit B*. The Specific Property forfeited to the United States included (i) all of the proceeds from the sale of a beach residence located in Mantoloking, New Jersey, (ii) a significant portion of the value of Defendants' primary residence in Westfield, New Jersey, and (iii) part or all of numerous bank or investment accounts held by Ms. Crupi and/or Ms. Bowen. (*Id.* at 4, 8).

## THE TRUSTEE'S INVESTIGATION AND
## THE PARTIES' SETTLEMENT DISCUSSIONS

13. The Trustee has conducted a comprehensive investigation of the funds that Defendants received from BLMIS. This investigation included but was not limited to: review and analysis of the BLMIS-related transactional histories as reflected in the BLMIS account statements of Defendants; review of correspondence and other BLMIS records and documents available to the Trustee; review of documents that the Trustee subpoenaed from numerous third parties; and review of records and documents admitted at the criminal trial of Ms. Crupi and certain other former BLMIS employees. As noted above, the Trustee was able, during the course of investigation, to trace and recover nearly $300,000 transferred to a third-party by BLMIS for the benefit of Defendants.

14. The Parties, through counsel, have engaged in extensive settlement discussions aimed at resolving the Trustee's avoidance claims and Defendants' customer claims. To that end, Defendants provided the Trustee with detailed financial disclosures. After a review of all relevant documents and in consideration of Defendants' forfeiture of substantially all of their assets to the United States, Defendants' financial demands in providing for their two adopted children, and the uncertainty and risks inherent in litigation and all associated costs, the Trustee has, in the exercise of his business judgment, determined that it is appropriate to reach a resolution rather than to continue to litigate the Adversary Proceeding against Defendants. Accordingly, the Parties negotiated and executed the proposed Agreement attached as *Exhibit A*.

## OVERVIEW OF THE AGREEMENT[3]

15. The principal terms of the Agreement are generally as follows:

---

[3] The Agreement should be reviewed for a complete account of its terms. Terms not otherwise defined herein shall have the meaning ascribed to them in the Agreement. To the extent there are any inconsistencies between the following account and the actual terms of the Agreement, the terms of the Agreement shall control.

7

(i) The customer claims for Account Nos. 1B0136, 1ZR339, and 1ZR340 shall be allowed respectively in the amounts of $54,647.94, $204,825.90, and $227,183.00, shall be assigned to the Trustee by Defendants, and shall each be satisfied by funds advanced by SIPC under section 78fff-3(a)(1) of SIPA.

(ii) Defendants shall pay the Trustee the aggregate amount of $75,000.00 in three annual installments.

(iii) Ms. Crupi shall cooperate with the Trustee and SIPC in connection with their efforts to recover additional Customer Property (as defined in section 78lll(4) of SIPA). Ms. Crupi's cooperation shall include making herself reasonably available to assist in the Trustee's ongoing investigation of the BLMIS fraud and to provide truthful and complete testimony by declaration or at deposition or trial. Ms. Crupi already has made herself available and has been deposed in numerous ongoing adversary proceedings.

(iv) The Trustee will release, acquit, and absolutely discharge Defendants on the specific terms set forth in the Agreement.

(v) Defendants will release, acquit, and absolutely discharge the Trustee and the BLMIS Estate on the specific terms set forth in the Agreement.

(vi) As soon as practicable after this Court's approval of the Agreement at which time the Agreement becomes final, counsel for the Trustee and counsel for Defendants shall respectively execute, and the Trustee shall file, a Stipulation of Dismissal dismissing the Adversary Proceeding with prejudice and without costs to either the Trustee or Defendants.

## RELIEF REQUESTED

16. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order submitted herewith approving the Agreement.

## LEGAL BASIS

18. Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

19. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, No. 98-5027, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.),* No. 05-6006, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. The "court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

20. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors: the probability of success in the litigation; the difficulties associated with collection; the complexity of the litigation, and the attendant expense, inconvenience, and delay; and the paramount interests of the creditor (or in this case, customers). *In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R.

9

115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

21. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.,* 134 B.R. at 505. Even though the court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532,536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

22. The Agreement between the Trustee and Defendants furthers the interests of BLMIS customers. The funds available for distribution to those BLMIS customers with allowed claims will be increased by more than $500,000. The Agreement resolves all claims between the Parties and avoids the cost and delay of what could otherwise be lengthy, complex, and contentious litigation. The Agreement further provides for Ms. Crupi's cooperation with the Trustee's ongoing investigation and recovery efforts. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit," a true and accurate copy of which is attached as *Exhibit C*).)

## CONCLUSION

23. The Trustee respectfully submits that the Agreement should be approved to avoid lengthy, burdensome, and expensive litigation and because it represents a fair and reasonable compromise of the Trustee's avoidance claims and Defendants' customer claims. Because the

Agreement is well within the "range of reasonableness" and confers a benefit on the BLMIS Estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

24.    In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to SIPC and Duane Morris LLP, One Riverfront Plaza 1037 Raymond Boulevard, Suite 1800, Newark, New Jersey 07102, Attn: Eric R. Breslin.  Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting Notice, ECF No. 4560.  The Trustee submits that no other or further notice is required.

**WHEREFORE**, the Trustee respectfully requests entry of an Order substantially in the form annexed hereto granting the relief requested in the Motion.

Dated: February 28, 2020
       New York, New York

Respectfully submitted,

By:    */s/ Nicholas J. Cremona*
       **BAKER & HOSTETLER LLP**
       45 Rockefeller Plaza
       New York, New York 10111
       Telephone: (212) 589-4200
       Facsimile: (212) 589-4201
       David J. Sheehan
       Email:  dsheehan@bakerlaw.com
       Nicholas J. Cremona
       Email: ncremona@bakerlaw.com

       *Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

11