# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
In re BERNARD L. MADOFF                                 :
INVESTMENT SECURITIES LLC                               :
                                                        :
------------------------------------------------------- :
                                                        :
BERNARD L. MADOFF INVESTMENT                            :
SECURITIES LLC,                                         :
                                        Debtor.         :
                                                        :
-------------------------------------------------------X
                                                        :
IRVING H. PICARD                                        :
*Trustee for the Liquidation of Bernard L.*             :
*Madoff Investment Securities LLC,*                     :
                                                        :
                                        Plaintiff-      :
                                        Appellee,       :
                                                        :
                       - against -                      :
                                                        :
BAM L.P., et al.,                                       :
                                                        :
                                        Defendants-     :
                                        Appellants.     :
                                                        :
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___2/26/2020___

18-CV-9916 (VSB)
19-CV-812 (VSB)

**OPINION & ORDER**

David J. Sheehan
Nicholas J. Cremona
Stacey Ann Bell
Baker & Hostetler LLP
New York, NY
*Counsel for Plaintiff-Appellee*

Carole Neville
Dentons US LLP
New York, NY
*Counsel for Defendants-Appellants*

VERNON S. BRODERICK, United States District Judge:

Before me is Defendants' motion to withdraw the bankruptcy reference pursuant to 28 U.S.C. § 157(d), (Doc. 1), as well as Defendants' motion for leave to appeal pursuant to 28 U.S.C. §158(a), (Doc. 25-2; *see also In Re: Bernard L. Madoff Investment Securities LLC*, 19-cv-812, Doc. 1).[1]  Because Defendants filed customer claims against the bankruptcy estate, Defendants "trigger[ed] the process of 'allowance and disallowance of claims,' thereby subjecting [themselves] to the bankruptcy court's equitable power."  *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59 n.14 (1989)). Accordingly, Defendants' motions are DENIED.

## I.    Factual Background and Procedural History[2]

The instant case stems from a Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, liquidation proceeding brought by the Securities Investor Protection Corporation against Bernard L. Madoff Investment Securities LLC ("BLMIS").  The liquidation proceeding was commenced on December 15, 2008 when Judge Louis L. Stanton referred the case to the Bankruptcy Court pursuant to SIPA § 78eee(b)(4).  (*See Sec. Inv'r Prot. Corp. v. BLMIS*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Dec. 15, 2008), ECF No. 1.)  On December 23, 2008, the Bankruptcy Court entered a claims procedure order, prescribing the procedure for BLMIS customers to file customer claims against the estate.  (*See Id.* at ECF No. 12.)  Pursuant to this order, on June 16, 2009, Defendants Michael Mann, Meryl Mann, and BAM L.P. served Trustee Irving H. Picard (the "Trustee") with statements of claims, seeking to recover purported

---

[1] Defendants Michael Mann, Meryl Mann, and BAM L.P. in this bankruptcy proceeding, 18-cv-9916, are also the Appellants in the bankruptcy appeal, *In Re: Bernard L. Madoff Investment Securities LLC*, 19-cv-812.  Plaintiff-Trustee Irving H. Picard is likewise the Appellee in the bankruptcy appeal.

[2] Bankruptcy Judge Stuart M. Bernstein's Memorandum Decision and Order Upholding Court's Equitable Jurisdiction dated January 8, 2019 set forth in great detail the factual and procedural history in this case.  *See Sec. Inv'r Prot. Corp. v. BLMIS*, 597 B.R. 466 (Bankr. S.D.N.Y. 2019).  I do not repeat that entire history in the instant Opinion & Order, and only incorporate parts of Bankruptcy Judge Bernstein's background section where relevant to this decision.  In addition, I outline the additional procedural history that has taken place since Bankruptcy Judge Bernstein's jurisdictional opinion.

outstanding balances in their BLMIS accounts.  *See Sec. Inv'r Prot. Corp. v. BLMIS*, 597 B.R.

466, 472 (Bankr. S.D.N.Y. 2019).  The Trustee denied the Defendants' claims, explaining that no

securities were ever purchased for their BLMIS accounts, and that the Defendants withdrew

more than they deposited into their accounts over the lives of the accounts.  *Id.*  In response, on

September 25, 2009, Defendants filed objections to the Trustee's determinations.  (*See Sec. Inv'r

Prot. Corp.*, Adv. Pro. No. 08-01789 (SMB), ECF Nos. 461, 815.)

The Trustee filed his original complaint commencing the adversary proceeding against

Defendants on November 30, 2010.  *See Sec. Inv'r Prot. Corp.*, 597 B.R. at 472; (*Picard v. Bam

L.P., et al.*, Adv. Pro. No. 10-04390 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2010), ECF No. 1).  The

complaint asserted, in relevant part, claims pursuant to sections 548(a) and 550(a) of the United

States Bankruptcy Code, 11 U.S.C. § 101, *et seq*, seeking to avoid and recover the alleged excess

transfers from Defendants' BLMIS accounts to Defendants.  *Id.*  After the adversary proceeding

was commenced, the Bankruptcy Court overruled Defendants' objection to the Trustee's

calculation of Defendants' net equity, *see Sec. Inv'r Prot. Corp. v. BLMIS*, 496 B.R. 744, 761

(Bankr. S.D.N.Y. 2013), which was appealed to and affirmed by the Second Circuit, *see In re

BLMIS*, 779 F.3d 74 (2d Cir. 2015).  The Supreme Court denied a petition for a writ of certiorari

later that year.  *See Peshkin v. Picard*, 136 S. Ct. 218 (2015).

Discovery in the Trustee's adversary proceeding concluded in February of 2015, and on

September 26, 2018, the Bankruptcy Court held a pre-trial conference in the proceeding and set a

trial date for December 3, 2018.  *See Sec. Inv'r Prot. Corp.*, 597 B.R. at 472; (*Picard*, Adv. Pro.

No. 10-04390, ECF No. 110).  At the conference, Defendants expressed their desire to withdraw

their customer claims and file a motion to withdraw the bankruptcy reference for lack of

jurisdiction.  *Sec. Inv'r Prot. Corp.*, 597 B.R. at 472.  Bankruptcy Judge Bernstein invited

briefing on whether the withdrawal of Defendants' customer claims on the eve of trial would

deprive the Bankruptcy Court of jurisdiction to decide the Trustee's §§ 548(a) and 550(a) claims,

which the parties later submitted.  (*See Picard*, Adv. Pro. No. 10-04390, ECF Nos. 131, 132,

137.)

On October 26, 2018, Defendants filed a motion to withdraw the bankruptcy reference

pursuant to 28 U.S.C. § 157(d).  (Doc. 1.)[3]  At a November 28, 2018 hearing, Bankruptcy Judge

Bernstein granted a stay of the scheduled trial pending my ruling on the motion to withdraw.

(*See Picard*, Adv. Pro. No. 10-04390, ECF No. 130.)  Additionally, Bankruptcy Judge Bernstein

heard Defendants' motion to withdraw the customer claims, and on December 20, 2018, entered

an order granting a withdrawal of Defendants' claims with prejudice.  (*Id.* at ECF Nos. 130,

138.)  However, on January 18, 2019, Bankruptcy Judge Bernstein entered his Memorandum

Decision and Order Upholding Court's Equitable Jurisdiction, rejecting Defendants' arguments

that the voluntary withdrawal of their customer claims on the eve of trial deprived the

Bankruptcy Court of jurisdiction over the Trustee's claims.  *Sec. Inv'r Prot. Corp. v. BLMIS*, 597

B.R. at 472.

On January 28, 2019, Defendants filed their motion for leave to appeal the decision

pursuant to 28 U.S.C. §158(a).  (Doc. 25-2; *see also In Re: BLMIS*, 19-cv-812, Doc. 1.)  Finally,

on January 10, 2020, the parties notified me that Bankruptcy Judge Bernstein has since granted

in part and denied in part the Trustee's motion for summary judgment on its §§ 548(a) and

550(a) claims.  (Docs. 26, 27.)

---

[3] The Trustee and SIPC filed memoranda of law in opposition to the motion on December 27, 2018 and December
28, 2018 respectively, and the Trustee further filed a declaration.  (Docs. 17–19.)  Defendants filed a reply
memorandum of law and a declaration on January 16, 2019.  (Docs. 22, 23.)

## II.     Legal Standards

### A.     *Motion to Withdraw*

District courts have "original but not exclusive jurisdiction" over all bankruptcy

proceedings.  *See* 28 U.S.C. § 1334(b).[4]  In this district, all proceedings arising under Title 11 of

the United States Code are automatically referred to the United States Bankruptcy Court for the

Southern District of New York.  *See* Amended Standing Order of Reference, M10-468 (S.D.N.Y.

Jan. 31, 2012) (Preska, C.J.) (referring all bankruptcy matters to the bankruptcy court pursuant to

28 U.S.C. § 157(a)).  Once a Title 11 proceeding has been referred to the bankruptcy court, the

district court's authority to withdraw the reference is governed by 28 U.S.C. § 157, which sets

forth the standards for mandatory and permissive withdrawal.  28 U.S.C. § 157(d) provides,

"[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this

section, on its own motion or on timely motion of any party, for cause shown."  Section 157 does

not define the term "cause."  *See S. St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger

Boys, Inc.)*, 94 F.3d 755, 762 (2d Cir. 1996).

In deciding whether there is "cause" to withdraw a bankruptcy reference, the Second

Circuit has outlined several factors a district court should consider, including "whether the claim

or proceeding is core or non-core, whether it is legal or equitable, and considerations of

efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy

law."  *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).  A claim qualifies as a

"core" bankruptcy claim where it "invokes a substantive right under [T]itle 11, or could only

arise in the context of a bankruptcy case."  *Joremi Enters., Inc. v. Hershkowitz (In re New 118th*

---

[4] Although the liquidation proceeding in this case was initiated pursuant to SIPA, SIPA § 78eee(b)(4) provides for
the removal of "the entire liquidation proceeding to the court of the United States in the same judicial district having
jurisdiction over cases under Title 11."  15 U.S.C. § 78eee(b)(4).

Case 1:19-cv-09319-VSB    Document 28    Filed 02/28/20    Page 6 of 25

*LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008). "Section 157 . . . contains a non-exhaustive list of 'core proceedings,'" *In re CBI Holding Co.*, 529 F.3d 432, 460 (2d Cir. 2008), which includes the "allowance or disallowance of claims against the estate" and "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. §§ 157(b)(2)(B), (H). Although withdrawal of a reference is less often appropriate where a claim falls within a bankruptcy court's core jurisdiction, "[a]fter the District Court 'makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors,' such as the presence of a jury demand." *In re Lehman Bros. Holdings Inc.*, 18 F. Supp. 3d 553, 557 (S.D.N.Y. 2014) (quoting *In Re Orion Pictures Corp.*, 4 F.3d at 1101). "The moving party bears the burden of demonstrating that permissive withdrawal of the reference is warranted," *id.* (citing *Nisselson v. Salim (In re Big Apple Volkswagon, LLC)*, No. 12 Civ. 92(PGG), 2013 WL 1245548, at *3 (S.D.N.Y. Mar. 25, 2013)), and the Court has "broad discretion to withdraw the reference for cause," *In re Haynes*, Nos. 14 CV 1474(VB), 14 CV 4171(VB), 14 CV 6183(VB), 14 CV 7525(VB), 2015 WL 862061, at *2 (S.D.N.Y. Mar. 2, 2015) (internal quotation marks omitted).

In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court recognized that "statutory authority to enter judgment" on a "core" claim under § 157 does not automatically give a bankruptcy court "the constitutional authority to do so." 564 U.S. at 469; *see also Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 35 (2014) ("*Stern* made clear that some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court in the manner designated by § 157(b)."). "Thus, 'post-*Stern*, district courts must further analyze whether the nature of the core proceeding allows the [b]ankruptcy [c]ourt to issue a final judgment.'" *Picard for Liquidation of*

*BLMIS v. Saren-Lawrence*, Nos. 17 Civ. 5157 (GBD), 17 Civ. 5162 (GBD), 17 Civ. 5163

(GBD), 2018 WL 2383141, at *3 (S.D.N.Y. May 15, 2018), *reconsideration denied sub nom.*

*Picard for Liquidation of BLMIS v. Saren-Lawrence*, Nos. 17 Civ. 5157 (GBD), 17 Civ. 5162

(GBD), 17 Civ. 5163 (GBD), 2018 WL 4659476 (S.D.N.Y. Sept. 11, 2018) (quoting *In re*

*Madison Bentley Assocs., LLC*, No. 16 Civ. 1083 (GBD), 2016 WL 5793990, at *3 (S.D.N.Y.

Sept. 27, 2016)).

      The "Supreme Court set forth three instances where a bankruptcy court may adjudicate

finally a claim at issue:  (1) if the claim involves a public right; (2) if the process of adjudicating

the creditor's proof of claim would resolve a counterclaim; or (3) if the parties consent to final

adjudication by the bankruptcy court."[5]  *Dynegy Danskammer, LLC v. Peabody COALTRADE*

*Int'l Ltd.*, 905 F. Supp. 2d 526, 530 (S.D.N.Y. 2012) (citing *Stern*, 564 U.S. at 482, 493, 497); *cf.*

*In re Arbco Capital Mgmt, LLP*, 479 B.R. 254, 262 (S.D.N.Y. 2012) (explaining that "the [c]ourt

consider[ed] the three factors emphasized in *Stern*:  1) whether the defendant filed a proof of

claim in the bankruptcy proceeding, 2) whether the right is public or private, and 3) whether the

parties consented to have the bankruptcy court enter final judgment").  When the bankruptcy

court lacks constitutional authority over a core claim, however, withdrawal of the reference is

still not necessary as the bankruptcy court can "simply treat[] the . . . claim as non-core" and

proceed under § 157(c)(1).  *Executive Benefits Ins. Agency*, 573 U.S. 25, 36 (2014).  In such a

circumstance, the "bankruptcy court should hear the proceeding and submit proposed findings of

fact and conclusions of law to the district court for de novo review and entry of judgment."  *Id.*

---

[5] Because the Supreme Court has concluded "that fraudulent conveyance actions [are] 'more accurately
characterized as a private rather than a public right," I do not consider the application of the public rights exception
in this case.  *Stern*, 564 U.S. at 492 (citing *Granfinanciera*, 492 U.S. at 55).

**B.**     *Motion for Leave to Appeal*

28 U.S.C. § 158(a) grants district courts jurisdiction to hear appeals from interlocutory orders issued by bankruptcy courts "with leave of the court."  "Since interlocutory appeals are disfavored, [t]he party seeking an interlocutory appeal has the burden of showing 'exceptional circumstances.'"  *Buckskin Realty Inc. v. Greenberg*, 552 B.R. 40, 43 (E.D.N.Y. 2016) (quoting *In re St. Clair*, No. 13–MC–1057, 2014 WL 279850, at *3 (E.D.N.Y. Jan. 21, 2014)).

"Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure provide precise standards for district courts to follow in determining whether to grant leave to appeal an interlocutory order."  *Id.*  "It has been recognized, however, that the decision is within the district court's sound discretion and that the court may apply, by analogy, the standards set forth in 28 U.S.C. § 1292(b) governing the appealability of interlocutory decisions of district court judges."  *Id.* (quoting *40 CPS Assocs., LLC v. The Villano Family Ltd. P'ship*, No. 15 CV 2055(SJF), 2015 WL 7455526, at *18 (E.D.N.Y. Nov. 23, 2015) (quoting *In re Club Ventures Invs. LLC*, 507 B.R. 91, 97 (S.D.N.Y. 2014)).  Under those standards, a district court may certify an interlocutory order for appeal when it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

### III.       <u>Discussion</u>

#### A.    **Motion to Withdraw**

##### 1.   *Orion* **Factors**

The *Orion* factors support denying Defendants' motion to withdraw.  First, with respect to whether the Trustee's fraudulent conveyance action is core or non-core, 28 U.S.C. § 157(b)(2)(H) unambiguously labels as core "proceedings to determine, avoid, or recover fraudulent conveyances."  *See also Picard for Liquidation of BLMIS*, 2018 WL 2383141, at *5 ("[A]ctions to avoid fraudulent transfers are 'core' proceedings." (citing 28 U.S.C.A. § 157(b)(2)(H))).  Thus, I find that the Trustee's adversary proceeding pursuant to §§ 548 and 550 is a core proceeding.

Second, the claims at issue are equitable in nature given Defendants' filing of a proof of claim.[6]  As the Supreme Court has made clear, the filing of a proof of claim "triggers the process of 'allowance and disallowance of claims,' thereby subjecting [a creditor] to the bankruptcy court's equitable power."  *Langenkamp*, 498 U.S. at 44 (1990) (citing *Granfinanciera*, 492 U.S. at 58–59 n.14); *see also In re CBI Holding Co.*, 529 F.3d at 466 (stating that "a creditor who files such a claim subjects itself to the bankruptcy court's equitable jurisdiction in proceedings affecting that claim."); *In re Residential Capital, LLC*, 698 F. App'x 16, 17 (2d Cir. 2017) (summary order) ("When Boyd filed a proof of claim with the bankruptcy court in 2011, he invoked the special rules of bankruptcy concerning objections to the claim." (internal quotation

---

[6] As Bankruptcy Judge Bernstein stated, "[t]he filing of a statement of claim under SIPA is the 'functional equivalent' of filing a claim in a bankruptcy case."  *Sec. Inv'r Prot. Corp. v. BLMIS*, 597 B.R. at 477 (quoting *SIPC v. BLMIS (In re BLMIS )*, 513 B.R. 437, 443 (S.D.N.Y. 2014)).  I adopt this conclusion in the instant opinion.  *See Picard for Liquidation of BLMIS*, 2018 WL 2383141, at *4 n.6 (concluding that 502(d) applies to customer claims brought under SIPA); *cf. In re BLMIS*, 740 F.3d 81, 88 n.8 (2d Cir. 2014) ("Although a SIPA liquidation is not a traditional bankruptcy, a SIPA trustee's authority to bring claims in administering a SIPA liquidation is coextensive with the powers of a Title 11 bankruptcy trustee. . . . Accordingly, we rely on statutes and case law relating to Title 11 bankruptcy actions.").

Case 1:18-cv-09916-VSB  Document 28  Filed 02/26/20  Page 10 of 23

marks omitted)); *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 98 (2d Cir. 2005) (collecting

cases and holding that "parties . . . who submit proofs of claim and thereafter actively litigate in

the bankruptcy court without contesting personal jurisdiction can transform a non-core

proceeding into a core one").  "As [the Second Circuit] recognized in *Germain v. National Bank*,

988 F.2d 1323 (2d Cir. 1993), filing a proof of claim is a necessary but not sufficient condition to

forfeiting a creditor's right to a jury trial" regarding objections to the claim.  *In re CBI Holding

Co.*, 529 F.3d at 466.  "Rather, a creditor loses its jury trial right only with respect to claims

whose resolution affects the allowance or disallowance of the creditor's proof of claim or is

otherwise so integral to restructuring the debtor-creditor relationship."  *Id.*; *accord Stern*, 564

U.S. 462, 499 (stating in the Article III context that "Congress may not bypass Article III simply

because a proceeding may have some bearing on a bankruptcy case; the question is whether the

action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims

allowance process.").  However, "'[b]ecause 11 U.S.C. § 502(d) provides that the claims of pre-

petition fraudulent transfers may be disallowed,' an adversary proceeding that invokes '11

U.S.C. § 548 is part of the claims allowance process . . . and does not carry a jury trial right.'"[7]

*Picard for Liquidation of BLMIS*, 2018 WL 2383141, at *4 (quoting *Glinka v. Abraham & Rose

Co.*, No. 2:93-CV-291, 1994 WL 905714, at *11 (D. Vt. June 6, 1994)); *see also Katchen v.

Landy*, 382 U.S. 323, 329 (1966) ("This power to allow or to disallow claims includes full power

to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a

demand or a claim against the estate is based.  This is essential to the performance of the duties

---

[7] 11 U.S.C. § 502(d) states in relevant part: "Notwithstanding subsections (a) and (b) of this section, the court shall
disallow any claim of any entity from which property is recoverable under section . . . 550 . . . of this title . . . or that
is a transferee of a transfer avoidable under section . . . 548 . . . of this title, unless such entity or transferee has paid
the amount, or turned over any such property . . . ."  11 U.S.C. § 502(d).

imposed upon it."[8] (internal quotation marks omitted)); *In re CBI Holding Co.*, 529 F.3d at 467–
68 (emphasizing that "[a]n action that bears directly on the allowance of a claim is integrally
related to the equitable reordering of debtor-creditor and creditor-creditor relations. If an
equitable reordering cannot be accomplished without resolution of what would otherwise be a
legal dispute, then that dispute becomes an essential element of the broader equitable
controversy." (quoting *Germain*, 988 F.2d at 1329)). Indeed, the Second Circuit has held that
where "defendants filed a proof of claim against the [bankruptcy] estate" and, "[i]n order to rule
on that claim, the Bankruptcy Court was required to first resolve [a] fraudulent transfer issue,"
the Bankruptcy Court could adjudicate both. *In re BLMIS*, 740 F.3d 81, 95 (2d Cir. 2014); *see
also In re: FKF 3, LLC*, No. 13-CV-3601 (KMK), 2016 WL 4540842, at *11 (S.D.N.Y. Aug. 30,
2016) ("Because § 502(d) requires that any creditor claim must be disallowed if the entity . . . is
the transferee of a transfer avoidable under, inter alia, §[] 548 (and recoverable under § 550),
unless the entity has turned over the property, the causes of action . . . brought pursuant to §§[]
548[] and 550 . . . would 'necessarily be resolved in the claims allowance process,' *Stern*, 564
U.S. at 499, and thus the Bankruptcy Court can constitutionally enter final judgment on those
claims."). Thus, in considering the second *Orion* factor, I conclude that the Trustee's claims are
equitable in nature.[9]

 Finally, with respect to considerations of efficiency, costs, and uniformity, I find that
withdrawal of the bankruptcy reference in this case would severely delay resolution of the

---

[8] *Katchen* involved the "statutory predecessor" of 11 U.S.C. § 502(d), *see Sec. Inv'r Prot. Corp. v. BLMIS*, 490 B.R.
46, 54 (S.D.N.Y. 2013), which required that a claim be disallowed when the creditor had "received or acquired
preferences . . . void or voidable under this title," *Katchen*, 382 U.S. at 330 n.5. The Supreme Court, however, does
not appear to distinguish between fraudulent transfer actions and preference actions for purposes of assessing
whether a creditor forfeits its right to a jury trial. *See, e.g.*, *Picard for Liquidation of BLMIS*, 2018 WL 2383141, at
*3 n.5.
[9] Defendants contest this reasoning, arguing that the withdrawal of their proof of claim rendered the withdrawn
claim a legal nullity for purposes of submitting to the Bankruptcy Court's equitable jurisdiction. For the reasons
presented in Section III.B. of this Opinion & Order, I disagree.

avoidance action, would strip determination of core issues from a forum that has developed
significant expertise over this SIPA liquidation, and would risk producing inconsistent outcomes
given Bankruptcy Judge Bernstein's involvement in "numerous [other] adversary proceedings to
avoid and recover transfers BLMIS made to certain customers," *Sec. Investor Prot. Corp. v.
BLMIS*, 568 B.R. 203, 205 (S.D.N.Y. 2017). As outlined above, this liquidation proceeding was
commenced on December 15, 2008 when Judge Louis L. Stanton referred the case to the
Bankruptcy Court pursuant to SIPA § 78eee(b)(4). (*See Sec. Inv'r Prot. Corp.*, Adv. Pro. No.
08-01789 (SMB), ECF No. 1.) I agree with the observation of other judges in this district that
Bankruptcy Judge Bernstein "has great familiarity with the facts regarding the BLMIS Estate."
*Picard for Liquidation of BLMIS*, 2018 WL 2383141, at *6; *see also Shapiro v. JPMorgan
Chase & Co*., Nos. 11 Civ. 8331(CM) (MHD), 11 Civ. 7961(CM), 2014 WL 1224666, at *2
(S.D.N.Y. Mar. 24, 2014) ("Judge Bernstein's intimate familiarity with the Madoff matter causes
this court to view his conclusions with great deference."). These considerations especially
disfavor withdrawal here given the procedural posture of this case, as Bankruptcy Judge
Bernstein has overseen the Defendants' and Trustee's claims for over a decade, and already
considered and granted in part and denied in part the Trustee's motion for summary judgment on
the §§ 548 and 550 claims. (*See* Doc. 8-1.)

Accordingly, I find that Defendants have failed to demonstrate that the *Orion* factors
favor withdrawal of the bankruptcy reference under 28 U.S.C. § 157(d).

## 2. *Stern* Analysis

I next assess whether, after *Stern*, the nature of the core proceeding allows the
Bankruptcy Court to issue a final judgment on the Trustee's claims consistent with Article III,
and conclude that the Bankruptcy Court has constitutional authority to adjudicate the Trustee's

avoidance claims because such claims "stem[] from the bankruptcy itself or would necessarily be
resolved in the claims allowance process" triggered by Defendants. *Stern*, 564 U.S. at 499.[10]
Defendants' only argument to the contrary is that the voluntary withdrawal of their proof of
claim on December 20, 2018 reversed the authority vested in the Bankruptcy Court to decide the
Trustee's claims. This argument fails for the reasons outlined by Bankruptcy Judge Bernstein in
his January 8, 2019 opinion, and for the additional reasons stated below.

In his opinion, Bankruptcy Judge Bernstein noted that the majority of cases to have
considered Defendants' argument have concluded that the withdrawal of a proof of claim does
not affect a Bankruptcy Court's authority to decide a Trustee's claim. *See Sec. Inv'r Prot. Corp.*,
597 B.R. at 477 (collecting cases). I find these cases to be persuasive, because at the moment

---

[10] Additionally, it is logical to conclude that, by filing their claims, Defendants impliedly consented to the
Bankruptcy Court's adjudication of the Trustee's §§ 548 and 550 claims, consent which is permissible under Article
III. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015) (holding that allowing bankruptcy courts to
decide *Stern* claims by consent "does not usurp the constitutional prerogatives of Article III courts," and clarifying
that "[b]ecause *Stern* was premised on nonconsent to adjudication by the Bankruptcy Court, the 'constitutional bar'
it announced . . . simply does not govern the question whether litigants may validly consent to adjudication by a
bankruptcy court."); *see also In re Kirwan Offices S.a.R.L.*, No. 18-3371, 2019 WL 6998891, at *3 (2d Cir. Dec. 20,
2019) (finding implied consent that foreclosed the need for Article III adjudication, and citing S*harif* for the
proposition that "[p]olicies in favor of 'increasing judicial efficiency and checking gamesmanship' underlie" the rule
that the bankruptcy court's entry of final judgment may be overcome by the parties' consent). In *In re: FKF 3, LLC*,
a court in this district noted that "as the Court explained in *Stern*, a creditor does not consent to final adjudication of
a debtor's common law counterclaim merely by filing a proof of claim, because such a creditor 'ha[s] nowhere else
to go if he wishe[s] to recover from [the debtor's] estate.'" 2016 WL 4540842, at *10 n.4 (quoting *Stern*, 564 U.S.
at 493). However, unlike in *Stern*, the Trustee does not bring a common law counterclaim under state law, but an
avoidance action under §§ 548 and 550 that, due to the nature of 11 U.S.C. § 502(d), are part and parcel of
Defendants' own claim. Thus, it can be said that when Defendants filed their claims, thereby consenting to the
Bankruptcy Court's authority to adjudicate the claims, they impliedly consented to the Bankruptcy Court's inherent
authority to decide, as a threshold matter pursuant to § 502(d), any antecedent claims. This reasoning is buttressed
by the fact that the Trustee "assert[s] a right of recovery created by federal bankruptcy law," *Stern*, 564 U.S. at 498,
as opposed to the state law counterclaims at issue in *Stern*. *Stern*'s discussion of *Katchen* is consistent with this
conclusion: "Although the creditor in *Katchen* objected that the preference issue should be resolved through a
'plenary suit' in an Article III court, this Court concluded that summary adjudication in bankruptcy was appropriate,
because it was not possible for the referee to rule on the creditor's proof of claim without first resolving the voidable
preference issue." *Id.* at 496; *see also U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 424–25 (5th
Cir. 2014)*, as revised* (Sept. 2, 2014) ("Moreover, the claim at issue here is analogous to the one in *Langenkamp* and
distinguishable from the debtor's counterclaim in *Stern* . . . . [R]esolution of Verizon's proof of claim will require
ruling, under § 502(d), on whether Verizon was the recipient of a fraudulent transfer. . . . Also, unlike the debtor's
counterclaim in *Stern*, here the Trustee's claim is derived, in part, from bankruptcy law (§§ 544 and 550).")." That
Defendants pursued their claims in Bankruptcy Court for nearly a decade further evidences their consent to the
Bankruptcy Court's authority.

Defendants filed claims against the bankruptcy estate, Defendants "trigger[ed] the process of 'allowance and disallowance of claims,' thereby subjecting [themselves] to the bankruptcy court's equitable power." *Langenkamp*, 498 U.S. at 44 (citing *Granfinanciera, S.A.*, 492 U.S. at 58–59 and n.14)); *see also Katchen*, 382 U.S. at 333 n.9 ("[H]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure."). Accordingly, when Defendants were "met, in turn, with a[n] [avoidance] action from the trustee, that action bec[a]me[] part of the claims-allowance process which is triable *only in equity*." *Langenkamp*, 498 U.S. at 44 (emphasis added); *see also Travellers Int'l AG v. Robinson*, 982 F.2d 96, 100 (3d Cir. 1992) ("The Supreme Court's holdings in *Granfinanciera* and *Langenkamp* leave no doubt that the equitable jurisdiction of the bankruptcy court is exclusive when its jurisdiction has been invoked by the filing of a claim."). In other words, as the Second Circuit has described this process, when "[a] dispute [is] part of the claims-allowance process . . . the legal dispute has been transformed into an equitable issue." *Germain*, 988 F.2d at 1330; *see also In re WorldCom, Inc.*, 378 B.R. 745, 755 (Bankr. S.D.N.Y. 2007) ("The disallowance of [Defendants'] claim simply resolved [Defendants'] part of the claims-allowance process, it did not end the process.").

Bankruptcy Judge Bernstein's jurisdictional opinion cited multiple district court and bankruptcy court opinions reiterating this reasoning, *see Sec. Inv'r Prot. Corp.*, 597 B.R. at 477 (collecting cases), but this reasoning also finds support in the decisions of circuits outside the Second Circuit. For example, in *Smith v. Dowden*, the Eighth Circuit held that "the successful withdrawal of a claim pursuant to Fed. R. Bankr. P. 3006 prior to the trustee's initiation of an adversarial proceeding renders the withdrawn claim a legal nullity and leaves the parties as if the claim had never been brought." *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995). Although

14

Defendants rely on cases that use this "legal nullity" language to argue for withdrawal here, *see, e.g.*, *In re Cruisephone, Inc.*, 278 B.R. 325, 333 (Bankr. E.D.N.Y. 2002) ("[U]pon the successful withdrawal of a proof of claim pursuant to Bankruptcy Rule 3006, the withdrawn proof of claim is a legal nullity and the parties are left as if the claim has never been filed."), *Dowden* explicitly stated that "the fact the motion [to withdraw] was filed prior to the initiation of the adversarial proceeding [was] essential to [its] holding," *id.* at 47 F.3d at 943 n.5. *See also Seven Ctys. Servs., Inc. v. NextGen Healthcare Info. Sys., Inc.*, No. 3:14CV330-S, 2014 WL 3941789, at *2 (W.D. Ky. Aug. 12, 2014) ("A creditor may retain its right to a jury trial only if the Proof of Claim is withdrawn prior to the filing of an adversary proceeding against it." (citing *In re Christou*, 448 B.R. 859, 862 (N.D. Ga. 2011) (relying on the reasoning in *Dowden*))).  In the instant case, however, Defendants sought to withdraw their claim nearly a decade after they initially served their claim on the Trustee and approximately nine years after they were named in the Trustee's adversarial proceeding.  In addition to *Dowden*, the Third Circuit's *Travellers International AG v. Robinson* opinion described the Supreme Court's *Langenkamp* decision as affording the Bankruptcy Court broad equity jurisdiction when creditor claims are filed:

> The Supreme Court . . . [held] that creditors who had earlier redeemed certificates, but who had filed a proof of claim for certificates they had yet to redeem, had, by filing claims as to non-redeemed certificates, brought themselves and their redeemed certificates within the equity jurisdiction of the bankruptcy court.  Thus, in *Langenkamp*, even though no claims, contingent or otherwise, were filed as to the redeemed certificates, the creditors had nonetheless lost their right to a jury in the preference action respecting the redeemed certificates.

*Travellers Int'l AG v. Robinson*, 982 F.2d 96, 99 (3d Cir. 1992); *see also EXDS, Inc. v. RK Elec., Inc. (In re EXDS, Inc.)*, 301 B.R. 436, 439–40 (Bankr. D. Del. 2003) (applying *Travellers Int'l AG* and stating that the claimant had "lost its right to a jury trial because it elected to participate in the equity court proceeding").  Given the unequivocal language of *Langenkamp* and *Travellers*

as to the effect of filing a proof of claim, I do not believe that a creditor can, for strategic

reasons, reverse the result it triggered by filing a proof of claim by later withdrawing the

claim."). *Stern* did nothing to diminish *Langenkamp*'s view of the Bankruptcy Court's equitable

jurisdiction:

> Our *per curiam* opinion in *Langenkamp* is to the same effect. We explained there
> that a preferential transfer claim can be heard in bankruptcy when the allegedly
> favored creditor has filed a claim, because then "the ensuing preference action by
> the trustee become[s] integral to the restructuring of the debtor-creditor
> relationship." 498 U.S.[] at 44[]. If, in contrast, the creditor has not filed a proof
> of claim, the trustee's preference action does not "become[ ] part of the claims-
> allowance process" subject to resolution by the bankruptcy court. [*S*]*ee id.*[] at
> 45[].

*Stern*, 564 U.S. at 497; *see also U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409,

424–25 (5th Cir. 2014) ("It is clear from *Stern* that *Langenkamp* is still good law. *Stern* did not

displace *Langenkamp*; in fact, it took great care to distinguish the facts before it from the facts in

*Langenkamp*."). Finally, the Fifth Circuit recently opined that a fraudulent transfer action

brought by a trustee would necessarily be resolved in the claims-allowance process by virtue of §

502(d) despite the fact that the creditor's claim was "provisionally resolved" but subject to

reopen. *U.S. Bank Nat. Ass'n*, 761 F.3d at 419–20 ("The bankruptcy court has expressly

permitted Verizon to re-open Claim No. 2450 depending on the outcome of this litigation. Thus,

the resolution of the fraudulent transfer claims before us will directly impact the claims-

allowance process."). The Fifth Circuit noted, however, that "even absent the bankruptcy court's

express order" permitting re-opening of the claim, "it was clear that the resolution of [the

creditor's claim] in the bankruptcy court would have required the resolution of the Trustee's

fraudulent transfer claim." *Id.* at 420 n. 5. These cases demonstrate that *Stern*'s "necessarily be

resolved" language, 564 U.S. at 499, should not be read as literally as Defendants suggest.[11]

---

[11] The language in *Stern* appears to support this conclusion. *Stern*, 564 U.S. at 497–98, 502 (2011) (stating "we

Two opinions from this district could be read as adopting Defendants' argument that the Bankruptcy Court's equitable jurisdiction is contingent on the continued presence of a contested proof of claim, and is not completely ascertainable at the time of filing. The first, *Picard v. Estate of Madoff*, evinced this view by interpreting *Stern*'s "necessarily be resolved" language in a literal sense as Defendants suggest I should. *See* 464 B.R. 578, 586 (S.D.N.Y. 2011) ("[T]he Trustee's common law claims might still be resolved as part of 'the allowance or disallowance' of Mark's and Andrew's proofs of claims, and it would be premature to insist that the common law claims be litigated in an Article III court."). Because the court found that "[i]t [was] far too early in th[e] proceeding" to determine whether the trustee's common law counterclaims would be resolved through resolution of the creditors' proofs of claims, the court rejected the creditors' jurisdictional argument under *Stern*. *Id.* at 585–86. The second opinion, *In re: FKF 3, LLC*, stated that *Stern*'s "justification for the 'necessarily resolved' rule is practical: where a Trustee's counterclaims are resolved by the bankruptcy court in the process of adjudicating a creditor's proof of claim, the creditor has 'no basis' for demanding a second adjudication of those claims in an Article III court." 2016 WL 4540842, at *8 n.3 (quoting *Stern*, 564 U.S. at 496). The opinion thus adopted the view that the Bankruptcy Court's constitutional authority to enter judgment shifts depending on the "precise positions of the parties and the evidence presented" at any given stage in the proceeding. *Id.* (quoting Ralph Brubaker, *A "Summary" Statutory & Constitutional Theory of Bankruptcy Judges' Core Jurisdiction after Stern v. Marshall*, 86 Am. Bankr. L.J. 121, 177–78 (2012)).

I find these cases to be distinguishable and unpersuasive. *Stern* itself suggests that a

---

agree with the United States that the question presented here is a 'narrow' one and describing the question presented as "concern[ing] [the] authority of a bankruptcy court to enter final judgment on a compulsory counterclaim 'when adjudication of the counterclaim requires resolution of issues that are not implicated by the claim against the estate'").

Bankruptcy Court can determine whether a counterclaim will necessarily be resolved through the claims-allowance process "[f]rom the outset" of that process. *Stern*, 564 U.S. at 498 ("From the outset, it was clear that, even assuming the Bankruptcy Court would . . . rule in Vickie's favor . . . , the court could not enter judgment for Vickie unless the court additionally ruled on [other] questions" not presented by the creditor's proof of claim). In fact, *Stern* emphasized that in the case before it, "there [] was *never* reason to believe that the process of ruling on [the] proof of claim would necessarily result in the resolution of [the] counterclaim." *Id.* at 498 (emphasis added). Here, unlike in *Picard v. Estate of Madoff* and *In re: FKF 3, LLC*—which involved the Bankruptcy Court's authority to adjudicate state common law counterclaims—given the nature of § 502(d), it was understood from the moment the Trustee's adversarial proceeding was filed that resolution of Defendants' customer claims necessitated the prior resolution of the Trustee's claims. Indeed, this is the very substance and nature of the "the process of 'allowance and disallowance of claims,'" that Defendants "triggered" by filing their claims. *Langenkamp*, 498 U.S. at 44 (citing *Granfinanciera, S.A.*, 492 U.S. at 58–59 n.14)).[12] Nothing in *Stern* suggests that the Bankruptcy Court's equitable jurisdiction is negated by the voluntary withdrawal of a creditor's claim nine years after the filing of an adversarial proceeding that, under federal bankruptcy law, would necessarily disallow the claim if successful.

It is important to note that the animating concern in *Stern* was constitutional: that "Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decisionmaking if the other branches of the Federal Government could

---

[12] Again, this reasoning is buttressed by the fact that the Trustee "assert[s] a right of recovery created by federal bankruptcy law," *Stern*, 564 U.S. at 498, as opposed to the state law counterclaims at issue in *Stern*. *See U.S. Bank Nat. Ass'n*, 761 F.3d at 424–25 ("Moreover, the claim at issue here is analogous to the one in *Langenkamp* and distinguishable from the debtor's counterclaim in *Stern* . . . . [R]esolution of Verizon's proof of claim will require ruling, under § 502(d), on whether Verizon was the recipient of a fraudulent transfer . . . . Also, unlike the debtor's counterclaim in *Stern*, here the Trustee's claim is derived, in part, from bankruptcy law (§§ 544 and 550).").

confer the Government's 'judicial Power' on entities outside Article III." *Stern*, 564 U.S. at 484. As such, *Stern*, like the earlier-decided *Northern Pipeline Construction Co. v. Marathon Pipe Line Co*., 458 U.S. 50 (1982), scrutinized the extent to which Congress authorized the Bankruptcy Courts, pursuant to 25 U.S.C. § 157(b)(2)(C), to decide "'[a]ll matters of fact and law in whatever domains of the law to which' a [debtor's] counterclaim may lead." *Stern*, 564 U.S. at 486 (quoting *Northern Pipeline Constr. Co.*, 458 U.S. at 91 (Rehnquist, J., concurring in judgment)); *see also id.* at 477 ("[D]esignating all counterclaims as 'core' proceedings raises serious constitutional concerns."). Congress's authorization raised particular constitutional concern in *Stern* and *Northern Pipeline* as it asked the Bankruptcy Courts to enter judgment on counterclaims involving traditional contract and tort actions arising under state law, implicating not just the separation of powers, but concerns about federalism. *See id.* at 494. Here, however—as I have stated above—the Trustee's claims are "federal claims under bankruptcy law, which would be completely resolved in the bankruptcy process of allowing or disallowing claims." *Id.* at 487. Thus, as *Stern* itself recognized, the constitutional concerns regarding Congress's reallocation of the judicial power are not as present in this case, where the Trustee's rights arise from Congress's exercise of its own constitutional role in the administration of bankruptcy. *See* U.S. Const. art. I, § 8, cl. 4 ("The Congress shall have Power . . . To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States . . . .").

Moreover, when assessing the contours of Article III's "case or controversy" requirement, the Second Circuit has observed that "a legal controversy is not like an electrical circuit, such that a court's power switches off as soon as" a controversy is mooted. *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 223 (2d Cir. 2018), *cert. dismissed sub nom. Cadian Capital Mgmt., LP v. Klein*, 139 S. Ct. 1406 (2019). But this is the exact view

of jurisdiction that Defendants propose.  The Second Circuit's observation regarding mootness

should similarly guide the resolution of *Stern*'s concern regarding the allocation of Article III's

"judicial power."  For, just as Article III's retention of the judicial power "is 'an inseparable

element of the constitutional system of checks and balances,'" *Stern*, 564 U.S. at 482–83 (citing

*Northern Pipeline Constr. Co.*, 458 U.S. at 78, so too does "the 'case or controversy'

requirement define[] with respect to the Judicial Branch the idea of separation of powers on

which the Federal Government is founded," *Allen v. Wright*, 468 U.S. 737, 750 (1984).

### 3.      Defendants' Proposed Jurisdictional Rule

In addition to my rejection of Defendants' reading of *Stern*, other considerations counsel

against adopting Defendants' proposed jurisdictional rule that the Bankruptcy Court's authority

is contingent on the continued presence of a contested proof of claim, and is not completely

ascertainable at the time of filing.  First, adopting Defendants' jurisdictional rule would permit

gamesmanship and the sandbagging of a bankruptcy Trustee after she expended resources and

time litigating only to have a putative creditor pull the plug on its proof of claim when faced with

a potential adverse ruling and/or on the eve of trial.  *See In re EXDS, Inc.*, 301 B.R. 436, 440

(Bankr. D. Del. 2003) ("Given the unequivocal language of *Langenkamp* and *Travellers* as to the

effect of filing a proof of claim, I do not believe that a creditor can, for strategic reasons, reverse

the result it triggered by filing a proof of claim by later withdrawing the claim."); *cf. In re

Kirwan Offices S.a.R.L.*, 2019 WL 6998891, at *3 (overriding Article III's jurisdictional "barrier

to the bankruptcy court's entry of a final judgment" based on "[p]olicies in favor of 'increasing

judicial efficiency and checking gamesmanship" (citing *Sharif*, 135 S. Ct. at 1948)).  Bankruptcy

Judge Bernstein highlighted this exact concern during the September 28, 2018 hearing, stating:

> [A]nother point is, this Rule 3006 goes back to the old Bankruptcy Act, Rule
> 3005.  And the reason for the rule was to prevent somebody from doing precisely

what you're doing[,] which is withdrawing a claim and stripping the Court of then summary jurisdiction for the purposes of defeating [the] Bankruptcy Court's jurisdiction. So those are issues that are in the case. . . . [I]t looks to me like the only reason you're withdrawing claim at this point is to defeat jurisdiction and ultimately delay the resolution of the case.

(Pre-Trial Conf. Tr. 33:13–24, *Picard*, Adv. Pro. No. 10-04390 (SMB), ECF No. 110); *see also Sec. Inv'r Prot. Corp.*, 597 B.R. at 484 ("[T]he defendant-creditor could manipulate the bankruptcy jurisdiction at any time simply by withdrawing the claim. Taking this argument to its logical conclusion, the defendant could seek to withdraw the claim at any time prior to final judgment if the defendant did not like the way the proceedings were unfolding. Here, the Defendants' Claims were pending for nearly ten years, but they sought to withdraw them with prejudice at the Court's invitation only a few days before the trial was scheduled to begin.").

Second, a rule that the Bankruptcy Court's constitutional authority to enter judgment fluctuates in time depending on the "precise positions of the parties and the evidence presented" at any given stage in the proceeding, *In re: FKF 3, LLC.*, 2016 WL 4540842, at *8 (citation omitted), or on whether, in the literal sense, a trustee's claim will be decided through the actual resolution of a creditor's claim, is simply not workable. *See In re WorldCom, Inc.*, 378 B.R. at 755 ("To hold otherwise would have the anomalous result that a creditor waives its jury trial right only if all or a portion of its proof of claim is allowed, yet retains the right if its proof of claim is disallowed in its entirety. In other words, the conversion of the contract dispute from a legal issue to an equitable issue would be temporary and would become permanent only if the proof of claim were allowed in order to offset the contract issue affirmatively raised by the debtor. If not, the creditor would have a right to a jury trial. There is no support for such a finding."). Applying such a rule, a Bankruptcy Court might not learn that it does not have jurisdiction until the end of closing arguments, or worse, while contemplating findings of fact or

21

conclusions of law. However, this same concern underscores why, in the § 502(d) context, a creditor's claim and a trustee's claim are at all times necessarily inextricably intertwined, because the success of the latter claim forecloses the success of the former, leaving no question as to whether the trustee's claim will "necessarily be resolved" through the claims-allowance process.

### B.     *Motion for Leave to Appeal*

Because I reject Defendants' arguments in support of their motion to withdraw, I also reject Defendants' arguments in support of their motion for leave to appeal, as these arguments rest on Defendants' interpretation of *Stern* and their proposed jurisdictional rule, and are substantially similar if not identical to their motion to withdraw arguments. Accordingly, I reject Defendants' contention that there is a substantial difference of opinion on this issue of law, and deny their motion for leave to appeal. Even if Defendants presented more compelling arguments, I find that additional briefing and review of their arguments would not materially advance the resolution of this matter given the delay an appeal would cause at this stage.

### IV.     <u>Conclusion</u>

For the foregoing reasons, it is hereby:

ORDERED that Defendants' motion to withdraw the bankruptcy reference, (Doc. 1), is DENIED.

IT IS FURTHER ORDERED that Defendants' motion for leave to appeal, (*In Re: Bernard L. Madoff Investment Securities LLC*, 19-cv-812, Doc. 1), is DENIED.

The Clerk of Court is respectfully directed to terminate the open motion at Document 1 of 18-cv-9916, and close the appeal at *In Re: Bernard L. Madoff Investment Securities LLC*, 19-cv-812, Doc. 1.

SO ORDERED.

Dated: February 26, 2020
New York, New York

Vernon S. Broderick
United States District Judge