**EXHIBIT B**

## DECLARATION OF ROBERT A. RICH

Peter S. Partee, Sr.
Robert A. Rich
Sherli M. Furst
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, New York 10166
(212) 309-1000

*Attorneys for Defendants Edward A. Zraick, Jr.,*
*Nancy Zraick, Patricia DeLuca, and Karen M. Rich*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>Edward A. Zraick, Jr., *et al*.,<br><br>Defendants. | Adv. Pro. No. 10-05257 (SMB) |

### DECLARATION OF ROBERT A. RICH IN SUPPORT OF ZRAICK DEFENDANTS' *EX PARTE* MOTION TO SHORTEN NOTICE AND FOR EXPEDITED HEARING ON MOTION *IN LIMINE* TO STRIKE THE "SUPPLEMENTAL" EXPERT REPORTS OF BRUCE G. DUBINSKY AND LISA M. COLLURA

I, Robert A. Rich, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a partner with the law firm of Hunton Andrews Kurth LLP, counsel for Defendants Edward A. Zraick, Jr., Nancy Zraick, Patricia DeLuca, and Karen Rich (collectively, the "Defendants") in the above-captioned proceeding

2.      I submit this declaration in support of the *Zraick Defendants' Motion to Shorten Notice and for Expedited Hearing on the Zraick Defendants' Motion in Limine to Strike the "Supplemental" Expert Reports of Bruce G. Dubinsky and Lisa M. Collura* (the "Motion to Shorten"),[1] through which Defendants request expedited consideration of their Motion in Limine.

3.      I incorporate by reference the statements set forth in my declaration in support of the Motion in Limine.

4.      Expert discovery in this case has been closed for years.

5.      On or about April 15, 2019, well after the close of discovery, the Trustee served the Supplemental Reports.

6.      Defendants preparation for trial is significantly impacted by whether the Court will permit the extensive new and untimely expert testimony in the Supplemental Reports.   Absent expedited consideration, Defendants would be forced to evaluate and prepare to address the Trustee's extensive and improper expert testimony prior to the Court's consideration of whether to exclude that evidence.  Proper evaluation of the extensive new testimony would require retention of rebuttal experts at substantial expense to Defendants, particularly in light of the amount at issue in this litigation.

7.      Annexed hereto as **Exhibit 1** are the docket entries from  *United States of America v. Dish Network LLC*, Case No. 09-03073 (C.D. Ill.) which are referenced in the Motion to Shorten. Copies of the relevant pleadings from that case are annexed hereto as **Exhibit 2**.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Motion to Shorten.

Dated: March 4, 2020

_/s/ Robert A. Rich_
Robert A. Rich

**EXHIBIT 1**

**RELEVANT DOCKET ENTRIES FROM**
***UNITED STATES OF AMERICA V. DISH NETWORK LLC***

| | | |
|---|---|---|
| 04/23/2015 | 489 | MOTION in Limine *Regarding Supplementation Under Rule 26(e)* by Plaintiffs State of California, State of Illinois, State of North Carolina, State of Ohio. Responses due by 5/11/2015 (Worm, Jon) (Entered: 04/23/2015) |
| 04/23/2015 | 490 | MEMORANDUM *in Support of Motion in Limine Regarding Supplementation Under Rule 26(e)* by State of California, State of Illinois, State of North Carolina, State of Ohio. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Worm, Jon) (Entered: 04/23/2015) |
| 04/28/2015 | 491 | RESPONSE to Motion re 489 MOTION in Limine *Regarding Supplementation Under Rule 26(e) and Cross-Motion to Strike Post-Discovery Expert Disclosures* filed by Defendant Dish Network LLC. (Attachments: # 1 Memo of Law in Support of Cross-Motion and in Opposition to Motion in Limine, # 2 Declaration of Elyse Echtman, # 3 Exhibit A - Declaration of Elyse Echtman, # 4 Exhibit B - Declaration of Elyse Echtman, # 5 Exhibit C - Declaration of Elyse Echtman, # 6 Exhibit D - Declaration of Elyse Echtman, # 7 Exhibit E - Declaration of Elyse Echtman, # 8 Exhibit F - Declaration of Elyse Echtman, # 9 Exhibit G - Declaration of Elyse Echtman, # 10 Exhibit H - Declaration of Elyse Echtman, # 11 Exhibit I - Declaration of Elyse Echtman, # 12 Exhibit J - Declaration of Elyse Echtman, # 13 Exhibit K - Declaration of Elyse Echtman, # 14 Exhibit L - Declaration of Elyse Echtman, # 15 Declaration Aaron Yeater)(Bicks, Peter) Modified on 4/28/2015 (MAS, ilcd). (Entered: 04/28/2015) |
| 04/28/2015 | 492 | MOTION to Expedite *Consideration of Plaintiffs' Motion in Limine re: Supplementation Under Rule 26(e) and Dish's Cross-Motion to Strike* by Defendant Dish Network LLC. Responses due by 5/15/2015 (Bicks, Peter) (Entered: 04/28/2015) |
| 04/29/2015 | | TEXT ORDER: Defendant's Motion to Expedite 492 is GRANTED. State Plaintiffs shall respond to Defendant's Cross-Motion to Strike State Plaintiffs' Post-Discovery Expert Disclosures, Preclude the Use of Any Related Evidence at Trial, and for Costs and Attorneys' Fees 491 on or before May 5, 2015. Entered by Judge Sue E. Myerscough on 4/29/2015. (MAS, ilcd) (Entered: 04/29/2015) |
| 05/04/2015 | 493 | RESPONSE to Motion re 491 MOTION to Strike, 489 MOTION in Limine *Regarding Supplementation Under Rule 26(e)* filed by Plaintiff |

| | | United States of America. (Attachments: # 1 Exhibit 1)(Runkle, Patrick) (Entered: 05/04/2015) |
|---|---|---|
| 05/05/2015 | 494 | MEMORANDUM in Opposition re 491 MOTION to Strike , *Preclude Use at Trial, and for Costs and Attorneys' Fees* filed by Plaintiffs State of California, State of Illinois, State of North Carolina, State of Ohio. (Worm, Jon) (Entered: 05/05/2015) |
| 05/06/2015 | 495 | NOTICE of Appearance of Attorney by Jeffrey Robert Loeser on behalf of State of Ohio (Loeser, Jeffrey) (Entered: 05/06/2015) |
| 05/08/2015 | 496 | MOTION for Leave to File *a Reply Memorandum of Law in Further Support of its Expedited Cross-Motion to Strike State Plaintiffs' Post-Discovery Expert Disclosures, Preclude the use of any Related Evidence at Trial, and for Costs and Attorneys' Fees* by Defendant Dish Network LLC. Responses due by 5/26/2015 (Attachments: # 1 Exhibit A)(Bicks, Peter) (Entered: 05/08/2015) |
| 05/12/2015 | | TEXT ORDER by U. S. District Judge Sue E. Myerscough on 5/12/2015. Defendant Dish Network L.L.C.'s Motion for Leave to File a Reply Memorandum of Law in Further Support of its Expedited Cross-motion to Strike State Plaintiffs' Post-Discovery Expert Disclosures, Preclude the use of any Related Evidence at Trial, and for Cost and Attorneys' Fees, d/e 496 (Motion) is ALLOWED. The Clerk is directed to file the Reply Memorandum, attached to the Motion as Exhibit A. (MAS, ilcd) (Entered: 05/12/2015) |
| 05/12/2015 | 497 | REPLY MEMORANDUM OF LAW in Further Support of Its Expedited Cross-Motion to Strike State Plaintiffs' Post-Discovery Expert Disclosures, Preclude the Use of Any Related Evidence at Trial, and for Costs and Attorneys' Fees filed by Defendant Dish Network LLC. (MAS, ilcd) (Entered: 05/12/2015) |
| 05/12/2015 | 498 | NOTICE of Change of Address by Jon F Worm (Worm, Jon) (Entered: 05/12/2015) |
| 05/13/2015 | 499 | OPINION: Plaintiff States of California, Illinois, North Carolina, and Ohio's Motion in Limine Regarding Admission of Supplement Under Rule 26(e) (d/e 489 ), and Defendant Dish Network, LLC's (Dish) Cross-Motion to Strike Plaintiff's Post-Discovery Expert Disclosures, Preclude the Use of Any Related Evidence at Trial, and for Cost and Attorneys' Fees (d/e 491 ) are ALLOWED in part and DENIED in part. The schedule of this proceeding is amended as follows. Defendant is given until June 15, 2015, to depose Dr. Erez Yoeli and Richard Stauffer and until July 15, 2015, to provide the Plaintiffs with a written response, including the disclosure of any additional expert opinions. The scope of this discovery is limited to the opinions set forth in the April 2015 Analysis discussed in this Opinion. The Plaintiffs have until August 1, |

| | | 2015, to depose Dish's expert who rendered opinions disclosed in its response. The pretrial order is due September 1, 2015; motions in limine are due September 1, 2015; responses to motions in limine are due September 15, 2015. The Final Pretrial Conference set for June 1, 2015, is vacated and reset for September 28, 2015 at 1:30 p.m. The Bench Trial set for July 21, 2015, is canceled and reset for October 6, 2015, at 9:00 a.m. SEE WRITTEN OPINION. Entered by Judge Sue E. Myerscough on 5/13/2015. (MJ, ilcd) (Entered: 05/13/2015) |
|---|---|---|

## <u>EXHIBIT 2</u>

**RELEVANT PLEADINGS FROM**
***UNITED STATES OF AMERICA V. DISH NETWORK LLC***

E-FILED
Tuesday, 28 April, 2015  01:07:23 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

UNITED STATES OF AMERICA and the
STATES OF CALIFORNIA, ILLINOIS,
NORTH CAROLINA, and OHIO,

      Plaintiffs,

      v.

DISH NETWORK LLC,

      Defendant.

Case No.: 3:09-cv-03073-SEM-TSH

## DEFENDANT DISH NETWORK L.L.C.'S CROSS-MOTION TO STRIKE STATE PLAINTIFFS' POST-DISCOVERY EXPERT DISCLOSURES, PRECLUDE THE USE OF ANY RELATED EVIDENCE AT TRIAL, AND FOR COSTS AND ATTORNEYS' FEES

Defendant DISH Network L.L.C. ("DISH"), by and through its undersigned counsel, respectfully cross-moves before this Court to:

1.  Strike the State Plaintiffs' post-discovery fact and expert disclosures and preclude the use of any related evidence at trial, pursuant to Rule 37(c)(1).

2.  In the alternative, DISH requests that this Court vacate the current pre-trial and trial schedule:

    a.  To permit DISH ample opportunity to obtain discovery on the State Plaintiffs' late disclosures and submit a rebuttal report; and

    b.  To permit DISH ample opportunity to supplement the fact and expert record in its own favor.

3.  Award DISH its costs and fees caused by Plaintiffs' violations of Rule 26(a), pursuant to Rule 37(c)(1)(A).

In support of its Cross-Motion, DISH submits the accompanying Memorandum of Law in

Opposition to the State Plaintiffs' Motion *In Limine* Regarding Admission Of Supplementation

Under Rule 26(e) And In Support Of Its Expedited Cross-Motion To Strike The State Plaintiffs'

Post-Discovery Expert Disclosures, Preclude The Use Of Any Related Evidence At Trial, And

For Costs And Attorneys' Fees, as well as the declarations of Aaron Yeater, dated April 27, 2015,

and Elyse D. Echtman, dated April 28, 2015.


Dated: April 28, 2015                                          /s/ Peter A. Bicks

                                                              Peter A. Bicks
                                                              Elyse D. Echtman
                                                              John L. Ewald
                                                              ORRICK HERRINGTON & SUTCLIFFE LLP
                                                              51 West 52nd Street
                                                              New York, New York 10019
                                                              Telephone: (212) 506-5000
                                                              pbicks@orrick.com
                                                              eechtman@orrick.com
                                                              jewald@orrick.com

                                                              Joseph A. Boyle
                                                              Lauri A. Mazzuchetti
                                                              KELLEY DRYE & WARREN LLP
                                                              200 Kimball Drive
                                                              Parsippany, New Jersey 07054
                                                              Telephone: (973) 503-5900
                                                              jboyle@kelleydrye.com
                                                              lmazzuchetti@kelleydrye.com

                                                              Henry T. Kelly
                                                              KELLEY DRYE & WARREN LLP
                                                              333 West Wacker Drive
                                                              Chicago, Illinois  60606
                                                              Telephone: (312) 857-2350
                                                              hkelly@kelleydrye.com

                                                              *Attorneys for Defendant DISH Network L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2015, I electronically filed the above document with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

<div align="center"></div>

       /s/ Peter A. Bicks

Peter A. Bicks
Elyse D. Echtman
John L. Ewald
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com
jewald@orrick.com

Joseph A. Boyle
Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
jboyle@kelleydrye.com
lmazzuchetti@kelleydrye.com

Henry T. Kelly
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, Illinois  60606
Telephone: (312) 857-2350
hkelly@kelleydrye.com

*Attorneys for Defendant DISH Network L.L.C.*

08-01789-cgm   Doc 19361-2   Filed 03/04/20   Entered 03/04/20 12:48:03   Exhibit B -
Declaration of Robert A. Rich   Pg 12 of 59
3:09-cv-03073-SEM-TSH   # 291-1   Page 1 of 21

E-FILED
Tuesday, 28 April, 2015  01:07:23 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA and the STATES OF CALIFORNIA, ILLINOIS, NORTH CAROLINA, and OHIO, | Case No.: 3:09-cv-03073-SEM-TSH |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED PURSUANT TO CDIL-LR 7.1(A)(2)** |
| v. | |
| DISH NETWORK L.L.C., | |
| Defendant. | |

---

**DEFENDANT DISH NETWORK L.L.C.'S MEMORANDUM OF LAW IN OPPOSITION TO STATE PLAINTIFFS' MOTION *IN LIMINE* AND IN SUPPORT OF DISH'S EXPEDITED CROSS-MOTION TO STRIKE STATE PLAINTIFFS' POST-DISCOVERY EXPERT DISCLOSURES, PRECLUDE THE USE OF ANY RELATED EVIDENCE AT TRIAL, AND FOR COSTS AND ATTORNEYS' FEES**

---

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND.................................................... 3

    A.    Dr. Yoeli's And Mr. Stauffer's Previous Disclosures ........................................... 3

    B.    The Court's Summary Judgment Opinion ............................................................. 5

    C.    The State Plaintiffs' Post-Summary Judgment "Disclosures"............................... 5

    D.    The April 16 Letter Took DISH By Surprise......................................................... 7

    E.    The State Plaintiffs' New Disclosures Prejudice DISH........................................ 7

ARGUMENT .................................................................................................................. 8

I.    THE STATE PLAINTIFFS' NEW DISCLOSURES SHOULD BE STRICKEN
    AND PRECLUDED ............................................................................................... 8

    A.    The New Opinions Do Not Fall Within The Narrow Scope Of
        Supplementation Allowed Under Rule 26(e)........................................................ 8

    B.    DISH Will Suffer Significant Prejudice If The New Disclosures Are Not
        Stricken And Precluded .................................................................................... 12

II.    THE NEWLY DISCLOSED FACTUAL INFORMATION FROM THE
    RESIDENTIAL ASSISTANCE DATABASES IS INADMISSIBLE........................... 15

CONCLUSION.............................................................................................................. 16

## PRELIMINARY STATEMENT

Expert discovery closed in this case on December 19, 2013. On April 16, 2015, almost sixteen months after the close of discovery, and in the midst of preparing for critical pretrial filings, the State Plaintiffs surprised DISH Network L.L.C. with a letter from counsel purporting to set forth **brand new** expert disclosures for Plaintiffs' expert Dr. Erez Yoeli and Mr. Rick Stauffer, the Chief Operating Officer of PossibleNOW (the "April 16 Letter").[1] *See* Declaration of Elyse D. Echtman, dated April 27, 2015 ("Echtman Decl."), Ex. B. These untimely disclosures are subject to automatic preclusion under Rule 37(c)(1) and should be stricken. If the Court were to permit the State Plaintiffs to offer the newly disclosed opinions and work product at trial, DISH would suffer insurmountable prejudice. The stakes for DISH in this action are enormous. Plaintiffs' pretrial disclosures reveal that the State Plaintiffs are seeking over **$20 billion** in penalties, the basis for which they seek to prove by using their eleventh-hour expert opinions. Accordingly, the State Plaintiffs should be precluded from offering any of these new facts or opinions at trial, and their "motion *in limine*" should be denied in its entirety.

The State Plaintiffs' Motion concedes that they commissioned altogether **new** expert opinions in reaction to findings by the Court in its December 12, 2014 Summary Judgment Opinion. Mot. at 1-2. Specifically, the State Plaintiffs have attempted to bolster their claim that alleged telemarketing violations by DISH were to residential landlines located within the States' respective jurisdictions. This type of new expert work product, after the close of discovery and in response to a summary judgment ruling, is not allowed. *See Council 31 v. Ward*, No. 87-0356, 1995 WL 549022 (N.D. Ill. Sept. 12, 1995) (precluding expert's new post-discovery statistical analyses in response to summary judgment rulings); *accord Plumley v. Mockett*, 836 F.

---

[1] In fact, Dr. Yoeli himself has made no disclosure. Plaintiffs' counsel provided a general description of work product and opinions that they attribute to Dr. Yoeli, but that he has not signed or otherwise endorsed.

Supp. 2d 1053, 1062 (C.D. Cal. 2010) (a supplemental report that seeks to strengthen an expert's opinions is subject to exclusion under Rule 37).

As justification for these new disclosures, the State Plaintiffs assert that they are engaging in "required" supplementation pursuant to Rule 26(e). But these disclosures do not come close to meeting Rule 26(e)'s requirements for late supplementation. Supplemental expert disclosures under Rule 26(e) must correct disclosures that an expert subsequently discovers to be misleading by virtue of a material error or omission. The State Plaintiffs do not endeavor to correct any of the prior opinions that Dr. Yoeli offered in this case over the course of six expert reports and two depositions, or the supporting work product performed by Mr. Stauffer. Instead, these new disclosures attempt to fix significant evidentiary issues identified by the Court's Summary Judgment Opinion.

In a futile attempt to cure the obvious prejudice that these new disclosures would impose upon DISH, the State Plaintiffs offered to re-open expert discovery—but for only one month as to expert work that it took them three months to generate. At the same time, Plaintiffs steadfastly refuse to adjourn the July 21, 2015 trial date. There is insufficient time available in the schedule to further adjourn all pretrial deadlines to allow for additional expert discovery and for DISH to have an opportunity to include information developed through additional expert discovery in its pretrial submissions. Moreover, if the State Plaintiffs were to be permitted a "do over" on their expert opinions in response to the Court's Summary Judgment Opinion, then fundamental fairness requires that DISH be afforded the very same opportunity post-summary judgment to re-calibrate and refine the work performed and opinions offered by its experts. Finally, the State Plaintiffs' machinations on the eve of the due date for pretrial materials prejudices DISH by diverting DISH's resources from its pretrial submissions. Under Rule

37(c)(1)(A), DISH is entitled to "payment of the reasonable expenses, including attorneys' fees, caused by" the State Plaintiffs' violations of Rule 26(a) and (e).  *See Allgood v. Gen. Motors Corp.*, No. 1:02CV01077 DFH-TAB, 2007 WL 647496, at *7 (S.D. Ind. Feb. 2, 2007) (granting defendant's motion for costs incurred in filing motion to strike plaintiffs' untimely expert report).

## PROCEDURAL AND FACTUAL BACKGROUND

### A.    Dr. Yoeli's And Mr. Stauffer's Previous Disclosures

Plaintiffs served Dr. Yoeli's first expert report on July 27, 2012.  Over the next one and one-half years, Dr. Yoeli provided five additional expert reports and was deposed twice.  Expert discovery finally closed on December 19, 2013.

In Dr. Yoeli's second report, dated October 16, 2012 (subsequently *corrected* on December 14, 2012), he responded to a report by DISH's expert, Dr. Robert Fenili.  Dr. Fenili addressed the integrity of the National Do Not Call Registry, which is supposed to be limited to residential landlines, and estimated the percentage of telephone numbers that are improperly listed in the Registry because they are not associated with active residential landlines.  *See* Echtman Decl. Ex. D at 8-9.  Dr. Yoeli responded that the more probative analysis is whether DISH's own alleged telemarketing call violations were to residential landlines.  In that same Rebuttal Report, Dr. Yoeli responded to opinions offered by another DISH expert, John Taylor of PossibleNOW, who DISH had retained to analyze and opine on DISH's call records.

As part of his response to Dr. Fenili, Dr. Yoeli provided Mr. Stauffer with sample sets of call records from discovery in this case, pulling samples of approximately 5,000 calls each from distinct buckets of call records that Dr. Yoeli had analyzed for telemarketing violations.  Mr. Stauffer compared each of Dr. Yoeli's sample sets against historical databases of telephone directories available at PossibleNOW to determine how many of the telephone numbers in those samples were associated with residential landlines at the times the calls were made.  Dr. Yoeli

3

relied upon Mr. Stauffer's analysis, which was set forth in a declaration appended to Dr. Yoeli's

rebuttal report, to extrapolate the percentage of call violations at issue that were made to

residential landlines.[2]  In that rebuttal report, Dr. Yoeli conceded that a significant proportion of

the telemarketing calls that Plaintiffs sued upon were not made to confirmed residential

landlines—a fact helpful to DISH's defense.

In Dr. Yoeli's rebuttal of Dr. Fenili, neither Dr. Yoeli nor Mr. Stauffer performed any

analysis to determine the physical addresses associated with those landlines.  Instead, Dr. Yoeli

relied exclusively on area code information and *assumed* that phone numbers belonged to

residents of States associated with particular area codes.

The State Plaintiffs assert that "DISH never raised the area code argument during

discovery."  Mot. at 13.  That assertion is belied by the discovery record.  DISH cross-examined

Dr. Yoeli at deposition in 2013 on the validity of his assumptions about area codes, asking

whether "a land line could [ever] utilize an area code other than the one that would belong to the

state in which the number is physically assigned to."  Dr. Yoeli admitted that "it's possible,"

candidly explaining: "It's not really within the scope of what I was asked.  I was simply asked to

break it down by area code."  Echtman Decl. Ex. G at 216:15-17.  In addition, the State Plaintiffs

produced documents in discovery evidencing that State area codes do not necessarily correlate to

State residences.  *See* Echtman Decl. Ex. A; Echtman Decl Ex. B.  The State Plaintiffs, therefore,

were on notice well before the close of discovery that DISH might challenge the use of area

---

[2] Mr. Stauffer was kept in the dark as to the specific litigation purpose of his work.  He had been assured by Plaintiffs' counsel that the work was unrelated to the work performed by Mr. Taylor.  *See* Echtman Decl. Ex. E (email from Patrick Runkle to PossibleNOW stating "This is not related to the John Taylor expert report prepared for DISH"); Echtman Decl. Ex. F at 362-65 ("Q:  And I gather you were never told that your declaration might be appended to Dr. Erez Yoeli's rebuttal report? . . . . THE WITNESS:  That's correct.  I was never told."  "Q:  . . . if the DOJ had said, 'You know what Mr. Stauffer, this is going to be part of an expert report, that in part is going to critique the work of John Taylor at PossibleNOW, does that impact your willingness to do the work,' if the DOJ had said something like that to you, as you sit here today, would that have affected your decision to do the work? . . . . THE WITNESS:  Yeah, I probably would not have done the work if I had known that.").

4

codes to assume residence in a particular State—an issue for which the State Plaintiffs bear the burden of proof.

**B.**     <u>The Court's Summary Judgment Opinion</u>

On December 11, 2014, the Court issued its Summary Judgment Opinion. [Dkt. 445]. With respect to Counts V-XII (the State Plaintiffs' claims under the TCPA and other state statutes), the Court found that DISH made a valid argument that an area code does not prove that a particular call was made to a resident of a particular State, and further found that the argument is relevant to the monetary remedies available to the States. *Id.* at 205-07. The Court squarely rejected the counterargument that the State Plaintiffs might sue on behalf of a holder of a telephone number associated by area code with a State, regardless of actual residence. *Id.* at 206.

**C.**     <u>The State Plaintiffs' Post-Summary Judgment "Disclosures"</u>

On April 16, 2015, the State Plaintiffs surprised DISH with a letter from counsel describing additional expert work performed over the prior three months in an attempt to strengthen the State Plaintiffs' evidence, and specifically in response to the Court's rejection of the use of area codes as definitive proof of State residence. The letter attaches a 17-page declaration from Mr. Stauffer, dated March 25, 2015, describing new data analyses that he had been retained to perform for the State Plaintiffs in January 2015. The State Plaintiffs acknowledge that this new work was done not to correct a mistake in Dr. Yoeli's prior opinions, but "in response to the Court's findings [on summary judgment]" to remedy an evidentiary issue faced by the States. *See* Echtman Decl. Ex. I at 1.

The State Plaintiffs nonetheless represent to the Court that none of this work is really "new" because it "deals with the same call sets" (Mot. at 8) and uses "the same sampling methodology and database analyses." Mot. at 10. That is incorrect. The State Plaintiffs provided new and different sample call sets to Mr. Stauffer for analysis against PossibleNOW's

databases. The new sample call sets: (i) were pulled from different call buckets, described as

"tailored call sets in response to the Court's summary judgment order" (Mot. at 10); (ii) are

limited to area codes associated with the State Plaintiffs; and (iii) include far fewer call records

per sample. In addition, Mr. Stauffer employed new methodology and database analyses in his

examination of those new sample call sets. Dr. Yoeli had previously assumed that area codes

were sufficient to show State residence. Now, for the first time, Mr. Stauffer correlates phone

numbers with residential addresses. The State Plaintiffs concede that this analysis and

methodology was not performed before, but gloss over it by describing it as merely "an extra

field." Mot. at 11.

The State Plaintiffs also assert that the information at issue here was "fully disclosed

during discovery." Mot. at 14. This is also incorrect. The new analyses rely upon evidence that

was not produced or made available during discovery—residential addresses extracted from

PossibleNOW's proprietary databases, which have not been produced in this case even though

Plaintiffs have now placed these databases on their trial exhibit list.

The purported expert disclosures that the State Plaintiffs ask this Court to admit into

evidence are not even expert disclosures at all. The April 16 Letter contains counsel's vague and

incomplete descriptions of additional work that counsel says has been performed and sets forth

supposed opinions that counsel says have been reached. Dr. Yoeli did not sign or otherwise

endorse the document as required under Rule 26(a)(2)(B).[3] DISH has no way of knowing at this

time whether the disclosures actually represent work product and opinion by Dr. Yoeli or by

others, because the information provided lacks any expert imprimatur. Moreover, there is no

---

[3] Plaintiffs assert that their attempt at supplementation is timely because expert disclosures were made before the
April 24, 2015 due date for Plaintiffs Rule 26(a)(3) pretrial disclosures. However, that April 24, 2015 due date
passed without any writing from Plaintiffs' expert Dr. Yoeli.

description in the letter of how the samples were selected, how the statistical analysis was

performed, or what the statistical analysis supposedly shows.

### D.     The April 16 Letter Took DISH By Surprise

The State Plaintiffs claim that their April 16 Letter should not have surprised DISH

because they "rais[ed] the possibility of supplementation at the status conference on January 9."

Mot. at 13.  The State Plaintiffs omit that DISH objected to such supplementation at that

conference and that the State Plaintiffs never again mentioned the possibility of supplementation

in the ensuing three months, notwithstanding numerous communications between counsel over

the pretrial schedule.

In late March, counsel for DISH initiated discussions with Plaintiffs on revising the

pretrial and trial schedule for this case because DISH had retained new counsel to assist in its

representation at trial.  Plaintiffs agreed to adjourn the pretrial deadlines, but refused to consent

to any adjournment of the July 21 trial date—not even to early September.  *See* Joint Motion For

A Limited Extension Of Pretrial Deadlines, dated March 30, 2015 [Dkt. 485].  The parties agreed

to a new pretrial schedule on March 27, which the Court approved on April 1.  Thereafter, the

parties further negotiated dates for the initial exchange of pretrial disclosures in advance of the

due date for the final pretrial order.  At no point during any of these communications did the

State Plaintiffs inform DISH that they planned to serve additional expert disclosures or that those

disclosures might jeopardize all of these mutually agreed-upon dates.

### E.     The State Plaintiffs' New Disclosures Prejudice DISH

The day after receiving the April 16 Letter, DISH sent a letter to the State Plaintiffs

demanding that they withdraw the disclosures and agree not to offer any of the newly disclosed

opinions at trial.  *See* Echtman Decl. Ex. K.  DISH represented that if the disclosures were not

withdrawn, it would move to strike and preclude them.  *Id.*

On April 20, 2015, the parties held a telephonic meet-and-confer.  The State Plaintiffs
refused to withdraw the disclosures.  The State Plaintiffs' counsel invited proposals from DISH
on how the prejudice to DISH might be ameliorated, though they had no proposals of their own.
DISH's counsel responded that in light of the upcoming July 21 trial date, there would be
insufficient time available in the pretrial schedule to reopen expert discovery to allow for expert
depositions and rebuttal.  In addition, DISH stated that it should be afforded the same
opportunity as the State Plaintiffs to respond to issues identified in the Summary Judgment
Opinion, and expert discovery should be reopened bilaterally for both sides to put in new
affirmative expert proof.  The State Plaintiffs refused to consider reopening expert discovery on
anything other than their new disclosures, or any adjournment of the trial date.

On April 22, 2015, the State Plaintiffs sent DISH a follow-up letter in which they offered
to stipulate to permit DISH to reopen expert discovery until May 21 and stated that they were
willing to "discuss" adjustments to the pretrial schedule that maintain the July 21 trial date.  In
the early morning hours of April 23, 2015, without any advance notice to DISH and before DISH
had a chance to respond to the April 22 Letter, the State Plaintiffs filed a preemptive motion *in
limine* seeking the Court's blessing for their improper disclosures.

### ARGUMENT

## I.    THE STATE PLAINTIFFS' NEW DISCLOSURES SHOULD BE STRICKEN AND PRECLUDED

### A.    The New Opinions Do Not Fall Within The Narrow Scope Of Supplementation Allowed Under Rule 26(e)

Rule 26(a)(2) requires that a party disclose expert witness reports within the time period
established by the court, including "a complete statement of all opinions to be expressed" by the
witness.  Rule 26(e) only allows for supplemental disclosure in the limited circumstance in

which "in a timely manner . . . the party learns that in some material respect the disclosure or response is incomplete or incorrect."

Rule 37(c)(1), in turn, requires "automatic and mandatory" exclusion of a late disclosure in violation of Rule 26(a) "unless such failure is harmless." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). The party attempting to supplement an expert report pursuant to Rule 26(e) bears the burden of establishing that the supplementation fits within the limited scope of the Rule. *See Stuhlmacher v. Home Depot USA, Inc*., No. 2:10 CV 467, 2012 WL 5866297, at *2 (N.D. Ind. Nov. 19, 2012).

The State Plaintiffs agree that supplementation is only proper under Rule 26(e) when "a party learns a disclosure is incomplete or incorrect in some material respect." Mot. at 8. Yet the State Plaintiffs do not even attempt to explain how the new opinions complete or correct Dr. Yoeli's earlier reports. The State Plaintiffs characterize the new disclosures as "refinements" of the original work done by Dr. Yoeli. That is just another way of saying that Dr. Yoeli strengthened his original opinions. A supplemental report that "'seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report' is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)." *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (quoting *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008)).

The State Plaintiffs *admit* that Dr. Yoeli's and Mr. Stauffer's supplemental work is intended to fill an evidentiary gap that the Court identified in its Summary Judgment Opinion. That evidentiary gap is the result of a strategic decision made by the State Plaintiffs, who took the position that area codes are sufficient to prove the State in which the holder of a telephone number is located. According to the State Plaintiffs' Motion, they have known since at least

9

2012 that the PossibleNOW databases purportedly contain the physical addresses associated with 
the numbers, but they chose not to ask Mr. Stauffer to run an analysis with those addresses until 
*after* the Court found the State Plaintiffs' summary judgment evidence wanting.  Remarkably, 
the State Plaintiffs also argue that Rule 26(e) actually "require[s]" Dr. Yoeli and Mr. Stauffer to 
conduct the new analyses and for Plaintiffs to supplement the record.  Mot. at 8.

Rule 26(e) does not permit parties to remedy deficiencies in proof that a court identifies 
in a summary judgment opinion after the close of discovery.  In *Council 31 v. Ward*, a party 
unsuccessfully tried to do exactly what the State Plaintiffs are trying to do here.  No. 87-0356, 
1995 WL 549022, at *1 (N.D. Ill. Sept. 12, 1995).  There, plaintiffs sought to submit a fifth 
expert report after discovery had closed, after the parties' experts had exchanged several reports, 
and after the court had ruled on cross-motions for summary judgment.  The court granted 
defendants' motion to exclude the additional report, finding that its summary judgment ruling 
was not an invitation for the parties to "revisit their statistical analyses."  *Id.*  The court also 
found that the "work of the experts should have been completed before the cross-motions for 
summary judgment were filed, since that did not occur until after discovery had closed."  *Id.*

The State Plaintiffs do not cite a single case allowing a party to supplement their expert 
opinions to respond to an unfavorable summary judgment ruling after the close of discovery.  
The cases relied on by the State Plaintiffs present starkly different circumstances.  The common 
thread that distinguishes all of them from this case is the timing of the supplemental disclosures.  
Not surprisingly, in purporting to state the Rule 26(e) standard (Mot. at 8), the State Plaintiffs 
omit the crucial requirement that the supplemental disclosure must be done "in a *timely* manner" 
(emphasis added).

The centerpiece of the State Plaintiffs' legal argument is *Talbert v. City of Chicago*, which they reference throughout their Motion. 236 F.R.D. 415 (N.D. Ill. 2006). The supplemental disclosure at issue in *Talbert* was served before the deadlines for dispositive motions and before the date for trial had even been set. The party seeking to exclude the expert report in *Talbert* relied heavily on *Council 31*. The *Talbert* court found a "substantial dissimilarity between [*Council 31*] and [*Talbert*]," emphasizing that contrary to the situation in *Talbert*, discovery in *Council 31* had closed, the parties had exchanged several expert reports, and the court had issued a ruling on cross-motions for summary judgment. *Id.* That, of course, is precisely the situation here.

The timing of the supplemental disclosures in the remaining cases relied on by the State Plaintiffs also bears no relation to the circumstances here:

- *Capitol Justice LLC v. Wachovia Bank, N.A.*: In this case, which the State Plaintiffs describe as "analogous" "in many ways," the expert stated at his deposition that his report was incomplete, the expert submitted a supplemental report less than a month later, and then the opposing party deposed the expert and submitted its own rebuttal expert report before the close of discovery. 706 F. Supp. 2d 34 (D.D.C. 2009).

- *Travelers Prop. Cas. Ins. Co. v. Serv. Experts Heating & Air Conditioning, LLC*: The party filed a supplemental disclosure before the close of discovery and before the dispositive motion deadline. No. 12-2208, 2014 WL 4947466 (C.D. Ill. Sept. 30, 2014).

- *Nnadili v. Chevron U.S.A., Inc.*: The party filed a supplemental disclosure before the close of discovery and the opposing party had six months in which to prepare a rebuttal report and depose the expert on the supplemental report. No. CIV.A. 02-1620, 2005 WL 6271043 (D.D.C. Aug. 11, 2005).

- *Mintel Int'l Group, Ltd. v. Neergheen*: The magistrate judge approved additional discovery after the expert discovery deadline and allowed supplemental reports from experts for both sides. 636 F. Supp. 2d 677 (N.D. Ill. 2009).

Courts routinely exclude supplemental expert reports where, as here, parties seek to supplement after the close of discovery based on information that was previously available. *See Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 743 (7th Cir. 1998) (district court

11

properly excluded report where "discovery was closed in the case" and "information contained in

the supplemental report must have been available before the missed deadline"); *Stuhlmacher*,

2012 WL 5866297, at *3 (refusing to allow new expert report after close of discovery that was

merely "designed to contradict the defendants' expert's opinion with information that was

available to the plaintiffs' expert at the time of his original report"); *Carter v. Finely Hosp.*, No.

01 C 50468, 2003 WL 22232844, at *2 (N.D. Ill. Sept. 22, 2003) (finding that Rule 26(e)(1) is

not "a vehicle" to disclose new expert opinions after the close of discovery, especially where

"the materials on which the new expert opinions are based were available [prior to the expert's

deposition]").

Here, the data samples underlying the new opinions comes from the same universe of call

records that were produced in discovery, which is the same universe of call records upon which

Dr. Yoeli based all of his previous reports. Nothing prevented the State Plaintiffs from

conducting their most recent analysis in the course of expert discovery, and their previous failure

to recognize the importance of this information, or their strategic decision not to conduct this

analysis, does not permit them to produce the disclosures under the guise of supplementation at

this very late stage in the proceedings. Holding otherwise would undermine the purpose of

setting discovery deadlines and issuing summary judgment rulings to narrow issues of fact for

trial.

**B.** **DISH Will Suffer Significant Prejudice If The New Disclosures Are Not
Stricken And Precluded**

DISH would suffer obvious prejudice if the Court were to permit the State Plaintiffs' new

expert opinions. Courts analyze four factors to determine whether a supplemental report causes

harm: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the

availability of the party to cure the prejudice; (3) the likelihood of disruption at trial; and (4) the

bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Stuhlmacher*, 2012 WL 5866297 at *2.

The State Plaintiffs' supplemental expert opinions cause DISH harm under each of these factors. As evidenced above, DISH was surprised by these new expert disclosures. While the State Plaintiffs vaguely mentioned the prospect of expert supplementation at a January 2015 conference, they never disclosed anything about the detail and substance of the disclosures so that DISH might be in a position to prepare a rebuttal, and said nothing to DISH about plans to supplement when the parties were negotiating new pretrial deadlines in late March. The State Plaintiffs sandbagged DISH with this new discovery material just eight days before Plaintiffs' deadline to serve their pretrial disclosures.

Additionally, the belatedness of the State Plaintiffs' new expert disclosures deprives DISH of any meaningful opportunity to rebut them. DISH does not have time within the constraints of the current schedule to have its own expert analyze all of the State Plaintiffs' new data and conclusions, depose Dr. Yoeli and Mr. Stauffer, submit rebuttal expert testimony, and incorporate this testimony into its pretrial submissions. The State Plaintiffs argue that DISH would not be prejudiced because it could have deposed both Dr. Yoeli and Mr. Stauffer on these issues before the close of expert discovery. This argument defies common sense. The State Plaintiffs admit in their Motion that: (1) the new expert opinions are based on new data samples; (2) Dr. Yoeli chose the size of the new samples by an undisclosed process; (3) Dr. Yoeli chose the new samples through an undisclosed method; and (4) Mr. Stauffer compared this new data to a new data field in PossibleNOW's databases. Mot. at 6. Clearly DISH could not have asked Dr. Yoeli and Mr. Stauffer in 2012 about new analyses involving new data sets that they would not undertake until more than two years later.

13

The State Plaintiffs also argue that DISH will not suffer prejudice because they have proposed a limited reopening of discovery. The State Plaintiffs offered DISH less than a month to conduct this rebuttal discovery and proposed a deadline for the discovery that fell *after* the pretrial disclosure deadline. The State Plaintiffs spent three months working "diligently" to produce their supplemental disclosures. Mot. at 11-12. Their offer of three weeks to rebut what took them three months to complete is patently disingenuous and insufficient. DISH submits with its brief a declaration from Aaron Yeater, Vice President at Analysis Group, Inc. (an expert consulting firm), who states that, at a minimum, it would take eight to ten weeks for DISH's expert to evaluate the new expert opinions. *See* Declaration of Aaron Yeater, dated April 27, 2015.

The time constraints are exacerbated by the fact that DISH would want to retain a new expert to rebut Dr. Yoeli's and Mr. Stauffer's new opinions. A proper rebuttal would likely involve testing a different set of call record samples against the PossibleNOW historical telephone directory databases. DISH had relied upon Mr. Taylor of PossibleNOW to analyze its call records, and he is the expert most familiar with those records. But Mr. Stauffer is a principal of the company for which Mr. Taylor works. DISH does not want to ask Mr. Taylor to critique Mr. Stauffer's work product—a task that Mr. Taylor has said he would not be comfortable performing. Without the services of Mr. Taylor, DISH would need to have another expert get up to speed on its call records and would want PossibleNOW to produce to that expert the databases that Mr. Stauffer used so an independent analysis can be performed.

While the prejudice to DISH could never be completely cured, the most equitable result would be for expert discovery to be reopened on a bilateral basis, with all of the current scheduling dates vacated, including the trial date, to allow DISH the opportunity to proffer

14

additional expert opinions to respond to issues raised by the Court in its Summary Judgment

Opinion with respect to DISH's evidence in the case. Only then would there be a level playing

field between the State Plaintiffs and DISH on expert supplementation.[4] At a minimum, DISH

should be afforded a meaningful opportunity to rebut the State Plaintiffs' new expert disclosures,

which could not be completed in a three-week period during which DISH is simultaneously

preparing critical pretrial filings. Because of the substantial prejudice DISH would face in re-

deposing the State Plaintiffs' experts and providing a rebuttal report or reports, as well as the

prejudice the State Plaintiffs caused by diverting DISH's resources from its pretrial submissions,

DISH seeks attorneys' fees and costs in connection with this additional discovery, as well as the

fees and costs accrued in bringing this Cross-Motion and opposing the State Plaintiffs' Motion.

*See Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 312-13 (M.D.N.C. 2002) (denying motion to

exclude expert's second report on condition that plaintiff pay defendants' attorneys' fees for

bringing the motion to exclude and that plaintiff submit the expert to a deposition by defendants,

with plaintiffs paying the cost of the deposition).

## II.   THE NEWLY DISCLOSED FACTUAL INFORMATION FROM THE RESIDENTIAL ASSISTANCE DATABASES IS INADMISSIBLE

The State Plaintiffs' alternative argument is that certain data from the national residential

directory assistance databases is admissible because they contend that DISH was aware of the

PossibleNOW databases' "*capacity* to generate address matches to residential landlines." Mot.

at 14. (emphasis added). The State Plaintiffs rely on a single inapposite case, *Stolarczyk ex rel.*

*Estate of Stolarczyk v. Senator Int'l Freight Forwarding, LLC*, where the plaintiff sought to rely

on the affidavit of an individual who was previously not disclosed under Rule 26(a). 376 F.

---

[4] Plaintiffs' pretrial submissions are replete with assertions of missing proof and insufficient proof by DISH. If Plaintiffs are permitted to supplement the factual and expert record before trial, then DISH should be allowed to as well.

Supp. 2d 834, 843 (N.D. Ill. 2005). The court held that this was harmless error given that the

plaintiff *specifically identified* the individual at deposition as someone with relevant knowledge.

*See id.* The State Plaintiffs argue for an unduly expansive reading of *Stolarczyk*, such that

knowledge that a third-party database containing millions of pieces of information could

hypothetically generate a certain category of data is tantamount to that data having actually been

produced in discovery. The argument proves too much, and the new data belatedly disclosed by

Mr. Stauffer should be precluded along with the untimely expert opinions. *See Finley v.

Marathon Oil Co.*, 75 F.3d 1225, 1230-31 (7th Cir. 1996) (failure to timely disclose third-party

data relied on by expert was not harmless where expert used previously disclosed data for a new

purpose on the eve of trial).

## <u>CONCLUSION</u>

For the foregoing reasons, the new expert disclosures attributed to Dr. Yoeli and Mr.

Stauffer (and the new factual data upon which they are premised) should be stricken. The State

Plaintiffs should also be precluded from relying on or referring to those opinions, and the factual

underpinnings for those opinions, for any reason at trial. The State Plaintiffs' motion *in limine*

should be denied. Alternatively, DISH respectfully requests that the Court bilaterally reopen

expert discovery and vacate all dates in the current schedule, including the trial date. The Court

should also award DISH its attorneys' fees and costs accrued in bringing this Cross-Motion and

opposing the State Plaintiffs' Motion, as well as any such fees and costs incurred in connection

with any rebuttal discovery permitted by the Court.

Dated: April 28, 2015

        /s/ Peter A. Bicks
Peter A. Bicks
Elyse D. Echtman
John L. Ewald
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com
jewald@orrick.com


Joseph A. Boyle
Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
jboyle@kelleydrye.com
lmazzuchetti@kelleydrye.com

Henry T. Kelly
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, Illinois  60606
Telephone: (312) 857-2350
hkelly@kelleydrye.com

*Attorneys for Defendant DISH Network L.L.C.*

17

## <u>WORD COUNT CERTIFICATION</u>

Peter A. Bicks, an attorney of record in the above captioned matter, hereby certifies that the foregoing memorandum contains 5,324 words and 33,522 characters, in compliance with the Court's type volume limitations as set forth in Local Rule 7.1(B)(4), as calculated by the word count function of the word processing system used to prepare the foregoing memorandum.

By:    /s/ Peter A. Bicks     
Peter A. Bicks

3:09-cv-03073-SEM-TSH  # 492  Page 1 of 5

E-FILED
Tuesday, 28 April, 2015  01:11:39 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

UNITED STATES OF AMERICA and the
STATES OF CALIFORNIA, ILLINOIS,
NORTH CAROLINA, and OHIO,

      Plaintiffs,

      v.

DISH NETWORK LLC,

      Defendant.

Case No.: 3:09-cv-03073-SEM-TSH

## MOTION TO EXPEDITE CONSIDERATION OF STATE PLAINTIFFS' MOTION *IN LIMINE* REGARDING ADMISSION OF SUPPLEMENTATION UNDER RULE 26(e) AND DISH'S CROSS-MOTION TO STRIKE STATE PLAINTIFFS' POST-DISCOVERY EXPERT DISCLOSURES, PRECLUDE THE USE OF ANY RELATED EVIDENCE AT TRIAL, AND FOR COSTS AND ATTORNEYS' FEES

Defendant DISH Network L.L.C. ("DISH") moves this Court to expedite its

consideration of the State Plaintiffs' Motion *In Limine* Regarding Supplementation Under Rule

26(e) and DISH's Cross-Motion to Strike State Plaintiffs' Post-Discovery Expert Disclosures,

Preclude The Use Of Any Related Evidence At Trial, And For Costs And Attorneys' Fees.  In

support of its Motion to Expedite, DISH states as follows:

      1.      Trial is set to begin in this case on July 21, 2015.  The parties have a number of

fast-approaching pretrial deadlines, including a May 15, 2015 deadline to file the final pretrial

order.

      2.      On April 16, 2015, without warning, the State Plaintiffs sent a letter to DISH that

they characterized as setting forth "refinements" of their expert opinions based on their expert

having "reexamined and further analyzed the discovery record to more precisely address the

factual disputes that the Court left for trial." *See* Declaration of Elyse D. Echtman, dated April

28, 2015 ("Echtman Decl."), Ex. I at 1-2. As set forth in DISH's Cross-Motion, the State

Plaintiffs' letter includes entirely new expert opinions and new data that the State Plaintiffs

concede are meant to fill gaps in proof that the Court identified in its Summary Judgment

Opinion.

3.      The day after receiving the April 16 letter, DISH sent a letter to the State

Plaintiffs demanding that they withdraw the disclosures and agree not to offer any of the newly

disclosed opinions at trial. *See* Echtman Decl ¶ 14; *id.* at Ex. K.

4.      On April 20, 2015, the parties held a telephonic meet-and-confer. The State

Plaintiffs refused to withdraw the disclosures, but indicated that they would discuss the issue

internally and potentially provide a proposal to alleviate the prejudice to DISH. *See* Echtman

Decl. ¶ 15.

5.      On April 22, 2015, the State Plaintiffs sent DISH a follow-up letter in which they

offered to stipulate to permit DISH to reopen expert discovery until May 21 and stated that they

were willing to discuss adjustments to the pretrial schedule that maintain the July 21 trial date.

*See* Echtman Decl. ¶ 18; *id.* at Ex. L.

6.      In the early morning hours of April 23, 2015, without any advance notice to DISH

and before DISH had a chance to respond to the April 22 Letter, the State Plaintiffs filed a

preemptive Motion *In Limine* Regarding Admission Of Supplementation Under Rule 26(e)

("Motion *In Limine*"), which requests that the Court admit the new opinions into evidence. *See*

Echtman Decl. ¶ 19.

7.      On April 28, 2015, DISH filed an Opposition to the Motion *In Limine* (which was

not due until May 11), as well as a Cross-Motion To Strike State Plaintiffs' Post-Discovery

2

Expert Disclosures, Preclude The Use Of Any Related Evidence At Trial, And For Costs And
Attorneys' Fees ("Cross-Motion").

8.      Under Local Rule 7.1 and Fed. R. Civ. P. 6(d), the State Plaintiffs' response to the
Cross-Motion is not due until May 15, 2015.

9.      DISH's Cross-Motion details how the submission of the new opinions in the State
Plaintiffs' letter has jeopardized the remaining pretrial deadlines that the Parties negotiated and
agreed to in the pretrial schedule.  DISH's preparation for the July 21, 2015 trial is significantly
impacted by whether the Court will permit these newly disclosed opinions, and if so, whether
DISH will be permitted an opportunity to conduct additional discovery prior to submission of its
pretrial materials to the Court, including the proposed findings of fact and conclusions of law.

10.     In light of the fast-approaching May 15, 2015 deadline to submit the Parties' final
pretrial order to the Court, as well as proposed findings of fact and conclusions of law, and other
imminent pretrial deadlines relating to the Parties' exchange of certain pretrial materials, DISH
respectfully requests that the Court expedite the briefing schedule for DISH's Cross-Motion, as
well as expedite consideration of the Motion *In Limine* and the Cross-Motion, so that DISH may
adequately prepare for trial.

11.     The State Plaintiffs will not be prejudiced by expediting the briefing schedule.
The Cross-Motion covers the same dispute between the parties as the Motion *In Limine*, the
relief sought being the only difference between the motions.  In essence, any response that the
State Plaintiffs file to the Cross-Motion will be a reply brief, which are not permitted by the
Local Rules of this Court.  *See* L.R. 7.1(B)(3).

WHEREFORE, DISH respectfully requests that the Court enter an order requiring the
State Plaintiffs to respond to DISH's Opposition to State Plaintiffs' Motion *In Limine* and Cross-

Motion To Strike State Plaintiffs' Post-Discovery Expert Disclosures, Preclude The Use Of Any

Related Evidence at Trial, And For Costs And Attorneys' Fees by May 5, 2015.


Dated: April 28, 2015                          /s/ Peter A. Bicks
                                           Peter A. Bicks
                                           Elyse D. Echtman
                                           John L. Ewald
                                           ORRICK HERRINGTON & SUTCLIFFE LLP
                                           51 West 52nd Street
                                           New York, New York 10019
                                           Telephone: (212) 506-5000
                                           pbicks@orrick.com
                                           eechtman@orrick.com
                                           jewald@orrick.com

                                           Joseph A. Boyle
                                           Lauri A. Mazzuchetti
                                           KELLEY DRYE & WARREN LLP
                                           200 Kimball Drive
                                           Parsippany, New Jersey 07054
                                           Telephone: (973) 503-5900
                                           jboyle@kelleydrye.com
                                           lmazzuchetti@kelleydrye.com

                                           Henry T. Kelly
                                           KELLEY DRYE & WARREN LLP
                                           333 West Wacker Drive
                                           Chicago, Illinois  60606
                                           Telephone: (312) 857-2350
                                           hkelly@kelleydrye.com

                                           *Attorneys for Defendant DISH Network L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2015, I electronically filed the above document with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

<div style="margin-left: 40%;">

/s/ Peter A. Bicks
_____

Peter A. Bicks
Elyse D. Echtman
John L. Ewald
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com
jewald@orrick.com

Joseph A. Boyle
Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
jboyle@kelleydrye.com
lmazzuchetti@kelleydrye.com

Henry T. Kelly
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, Illinois  60606
Telephone: (312) 857-2350
hkelly@kelleydrye.com

*Attorneys for Defendant DISH Network L.L.C.*

</div>

08-01789-cgm Doc 19361-2 Filed 03/04/20 Entered 03/04/20 12:48:03 Exhibit B - Declaration of Robert A. Rich Pg 37 of 59
3:09-cv-03073-SEM-TSH # 499 Page 1 of 23
E-FILED
Wednesday, 13 May, 2015 04:41:12 PM
Clerk, U.S. District Court, ILCD

<div align="center">

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

</div>

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**and the STATES of**<br>**CALIFORNIA, ILLINOIS,**<br>**NORTH CAROLINA, and OHIO,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**DISH NETWORK, LLC,**<br><br>    **Defendant,** | **No. 09-3073** |

<div align="center">

**<u>OPINION</u>**

</div>

**SUE E. MYERSCOUGH, U.S. District Judge:**

This matter comes before the Court on Plaintiff States of California, Illinois, North Carolina, and Ohio's (Plaintiff States) Motion in Limine Regarding Admission of Supplement Under Rule 26(e) (d/e 489) (Motion 489), and Defendant Dish Network, LLC's (Dish) Cross-Motion to Strike Plaintiff's Post-Discovery Expert Disclosures, Preclude the Use of Any Related Evidence at Trial, and for Cost and Attorneys' Fees (d/e 491) (Motion 491) (collectively "Motions"). For the reasons set forth below, the Motions are ALLOWED in part and DENIED in part.

<div align="center">

Page **1** of **23**

</div>

The Plaintiffs allege that Dish is liable for millions and millions
of telemarketing telephone calls that violated the Telemarketing and
Consumer Fraud and Abuse Prevention Act 15 U.S.C. § 6105
(Telemarketing Act); the Federal Trade Commission Act, 15 U.S.C. §
45 (FTC Act); the Telephone Consumer Protection Act, 47 U.S.C. §
227 (TCPA); the Federal Trade Commission (FTC) regulation entitled
the Telephone Sales Rule promulgated under the Telemarketing Act
and the FTC Act, 16 C.F.R. Part 310 (TSR); and the Federal
Communications Commission (FCC) regulation promulgated under
the TCPA, 47 C.F.R., 64.1200 (FCC Rule); and comparable state
laws of the Plaintiff States.  <u>Second Amended Complaint and
Demand for Jury Trial</u> (d/e 257) (Second Amended Complaint),
Counts I through XII.

The Plaintiff States allege claims for civil penalties for illegal
calls to residents of the Plaintiff States in violation of the TCPA and
certain of each State's consumer protection statutes.  <u>Id.</u>, at 25-28,
<u>Prayers for Relief</u>.  The TCPA authorizes State Attorneys General to
bring actions on behalf of the residents of such states for violations
of the TCPA or the FCC Rule.  Each Attorney General can seek
injunctive relief and secure actual damages or $500 per violation, or

both. The Attorneys General could also recover triple the penalties,
or $1,500.00 per violation, if the defendant willfully or knowingly
violated the TCPA. 47 U.S.C. § 227(g).

Both sides used experts who relied on telephone area codes to
determine whether a call was made to a resident of a Plaintiff State.
The Plaintiff States' expert Dr. Erez Yoeli, Ph.D., relied on area
codes of the telephone numbers called to determine the residency of
the recipients. E.g., Plaintiffs' Summary Judgment Exhibits (d/e
342), PX 38, Declaration of Dr. Erez Yoeli, Appendix C, Revised
Rebuttal Report by Dr. Erez Yoeli, dated December 14, 2012, at 10-
12, Tables 5 through 9. Dish's expert John Taylor similarly used
area codes to determine residency. Taylor opined that calls were
intrastate calls based on the area codes of the numbers called.
E.g., Plaintiffs' Summary Judgment Exhibits (d/e 342), PX 26,
Revised Expert Report of John T. Taylor dated September 20, 2012,
at 4-5. Taylor also used area codes to identify the number of calls
to residents of the Plaintiff States. E.g., Plaintiffs' Summary
Judgment Exhibits (d/e 342), PX 28, Rebuttal Report of John T.
Taylor dated November 6, 2013, at 3, 9-17, Tables 2a through 9c.

The parties' expert witnesses also prepared opinions related to whether the recipients of Dish telemarketing calls were residential telephone subscribers. The TCPA and the FCC Rule prohibited certain telemarketing calls to "residential telephone subscribers," including calls to residential telephone subscribers whose telephone numbers were registered on the National Do Not Call Registry (Registry). See Opinion entered December 11, 2014 (d/e 445 ) (Opinion 445), at 24; 47 U.S.C. § 227(c)(1); 47 C.F.C. § 64.1200(c)(2). Dish's expert, Dr. Robert Fenili, Ph.D., analyzed the make-up of the telephone numbers registered on the Registry. Dr. Fenili opined that by 2011, over half of the numbers on the Registry were wireless telephone numbers, only 28.2% were numbers for residential landlines, and 12.2% were business landline numbers. Dish Summary Judgment Exhibits (d/e 348), DX 189, Expert Report of Dr. Robert N. Fenili dated July 26, 2012, at 10 Table 1b.

In response, Dr. Yoeli analyzed the make-up of the telephone numbers that Dish and certain of its authorized retailers called. Dr. Yoeli took random samples of sets of call records that were produced in discovery. The call records sampled Dish call records for calls from 2003 to 2007, a second set of Dish call records from

2007 to 2010, and call records from four authorized retailers.[1]

Plaintiffs' Summary Judgment Exhibits (d/e 342), PX 38,

Declaration of Dr. Erez Yoeli, Appendix C, Revised Rebuttal Report

by Dr. Erez Yoeli, dated December 14, 2012, at 8-9.  The samples

were sent to Richard Stauffer at PossibleNOW, Inc. (PossibleNOW).

PossibleNOW maintains current and historical databases that

contain directory information about telephone numbers and about

numbers on the Registry.  Both sides in this case have used

PossibleNOW's services.  Taylor and Stauffer both work for

PossibleNOW.  PossibleNOW is the subcontractor that maintains

the Registry for the FTC.  Dish also employs PossibleNOW to assist

it in complying with state and federal do-not-call telemarketing laws

and regulations.  See Opinion 445, at 71-73, 141-43.

Stauffer ran Dr. Yoeli's samples through PossibleNOW's

directory databases to identify the telephone numbers in the

samples that were wireless, business, residential, or Voice over

Internet Protocol (VoIP) numbers.   Stauffer explained in his

deposition that PossibleNOW collected and maintained current and

---

[1] The 2003-2007 call records contain Dish calling records from October 2003 through September 2005, December 2005 through December 2006, and January 2007 through August 2007.  The 2007-2010 call records contain Dish calling records from September 1, 2007, to March 12, 2010.  Opinion 445, at 118, 120.

historical directory information.  Stauffer testified that the directory information for residential landlines included the residential address where the phone was located.  Plaintiffs' Summary Judgment Exhibits (d/e 380), PX 356, Richard Stauffer Deposition, dated November 28, 2102, at 353.

The PossibleNOW databases contained identifying information for many, but not all, of the sample telephone numbers that Dr. Yoeli provided.  The results from the 2007-2010 call records showed that 94% of the identified calls in the sample were directed to residential landlines and 69% of all calls were directed to residential landlines.  The results from the 2003-2007 call records showed that 85% of the identified calls in the sample were directed to residential landlines and 67 % of all calls were directed to residential landlines. Results were also secured for each of the samples from the authorized retailers' call records.  Plaintiffs' Summary Judgment Exhibits (d/e 342), PX 38, Declaration of Dr. Erez Yoeli, Appendix C, Revised Rebuttal Report by Dr. Erez Yoeli, dated December 14, 2012, at 9.

All discovery closed in this matter on December 19, 2013.

Text Order entered March 21, 2013, as modified by Text Order

entered November 7, 2013.

On February 5, 2014, Taylor prepared another declaration.

Defendants Summary Judgment Exhibits (d/e 368), DX 238,

Declaration of John Taylor dated February 5, 2014.  In paragraph

10 of that declaration, Taylor stated, in relevant part:

> There is an additional factor, however, which renders any
> attempt to identify calls placed to a consumer within any
> particular state a matter of guesswork.  In his work, Dr.
> Erez Yoeli assumed that the area code associated with a
> number dialed by DISH or one of its retailers actually
> rang in the state to which the area code was assigned.  In
> performing my work in this case, I relied on Dr. Yoeli's
> assumption out of necessity (since I was retained to
> critique his work), but it is not a valid assumption.  First,
> to the extent that the . . .  calls were made to cell
> numbers, and given that those numbers are not portable,
> *i.e.*, they can be retained by the cell customer no matter
> how many times they change providers or move
> locations, there is no guarantee that a cell number with a
> Springfield, Illinois area code, for example, actually rings
> in Springfield, much less Illinois.  In addition, with the
> proliferation of wireless family plans, even wider
> distribution of area codes outside of their original state
> exist (*e.g.*, one member buys the shared plan in one state
> with a designated area code – as one member of the
> family goes away to school out of state, joins the armed
> services, or relocates for some other reason, the
> telephone number with the original area code goes with
> the family member).  In the end, while the question of
> where the telephone was purchased and the contract

Page **7** of **23**

administered can be determined, the question of where
the telephone actually rings cannot.

Id., ¶ 10 (internal citation omitted) (emphasis in the original).

The Plaintiffs objected to Taylor's February 5, 2014,

Declaration.  Dish responded that paragraph 10 did not contain any

expert opinions; rather, the paragraph only stated "predicate

information included to give context to Mr. Taylor's subsequent

testimony."  Reply in Support of Motion to File Corrected DX-238

(d/e 428), at 3-4.  The Court accepted Dish's characterization of the

quoted material and found that the paragraph had no probative

value.  Opinion 445, at 38-39.

Dish, however, argued at summary judgment that the area

code of a telephone number did not prove that the recipient of the

telemarketing call was a resident of the state associated with the

area code.  Dish cited authority from the FCC and FTC and

persuasive judicial authority to support this argument.  See

Opinion 445, at 145-46.

On December 11, 2014, this Court entered partial summary

judgment.  Opinion 445, at 231-38.  The Court found that Dish was

liable for making over 50,000,000 telemarketing calls that violated

the TSR, Telemarketing Act, and the FTC Act.  The Court found

liability on specific sets of calls identified by the parties' experts

(Partial Summary Call Sets).  Opinion 445, at 19, 232-33.  The

Court also found that Dish engaged in a pattern or practice of

making telemarketing calls that violated the TCPA to residential

telephone subscribers in all of the Plaintiff States and made calls to

residents of the Plaintiff States of California, Illinois, and North

Carolina that violated relevant state laws.  Ohio did not seek partial

summary judgment on its state law claim, so the Court made no

findings with respect to that claim.  Issues of fact, however,

precluded granting summary judgment on any of the Plaintiff

States' claims.  Opinion 445, at 234-37.

One of the remaining issues of fact concerns proof of the

number of calls to residents of each State.  The Court found that

the legal and regulatory authority cited by Dish was sufficient to

create an issue of fact concerning whether area codes proved the

residency of the call recipient.  The Plaintiff States argued that area

codes established residency of the call recipient as a matter of law.

The Court rejected the Plaintiff States' position.  The Court held

that a State Plaintiff could only recover civil penalties for illegal calls

Page **9** of **23**

made to residents of the Plaintiff State.  When read favorably to

Dish for purposes of summary judgment, the authorities cited by

Dish could indicate that the area code of a telephone number did

not establish the geographical location of the telephone subscriber.

Opinion 445, at 201-02, 204-07.  The Court noted, however, that

Dish presented no quantitative evidence at summary judgment on

the percentage of telephone numbers in which the area code was

associated with one state, but the subscriber of the number resided

in a different state.  See Opinion 445, at 205.

On reconsideration, the Court found that issues of fact existed

as to one of the Partial Summary Call Sets, consisting of 2,386,386

calls (Reconsideration Call Set).  The Court modified Opinion 445 to

hold that issues of fact existed as to the Reconsideration Call Set.

Opinion entered February 17, 2015 (d/e 478) (Opinion 478), at 10-

11.

This matter is set for trial on July 21, 2015.  The parties are

required to file the pretrial order by May 15, 2015.  Text Order

entered April 1, 2015.  The parties agreed to make the first pretrial

disclosures by April 24, 2015.  Memorandum of Law in Support of

State Plaintiffs' Motion *in Limine* Regarding Supplementation under Rule 26(e), at 6, n. 4.

On April 16, 2015, Plaintiff States' counsel sent a letter (Letter) to Defense counsel disclosing a new analysis of call record data by Dr. Yoeli (April 2015 Analysis) and, also, summarizing some factual information reflected in PossibleNOW databases. Motion 489, Exhibit 1, Letter. The Letter disclosed that in 2015, Dr. Yoeli selected random samples from the Partial Summary Call Sets, including the Reconsideration Call Set. He provided the samples to Stauffer who compared the samples with the PossibleNOW directories as he had done with the other samples in 2012. Stauffer identified the calls that could be identified as wireless, business, residential, or VoIP in PossibleNOW's databases. Stauffer also identified the residential landline telephone numbers located in each Plaintiff State by using the address information of the residential landline telephone numbers on the PossibleNOW databases, rather than area codes. Dr. Yoeli used the information from Stauffer to opine on the percentage of identified calls and the percentage of all calls that were made to residential landlines in

each of the Plaintiff States.  <u>Letter</u>, at 2-3.  Dr. Yoeli's original analysis did not contain a breakdown by State.

The Letter also discussed the factual information that Stauffer retrieved from the PossibleNOW databases,

> This inquiry confirmed that there are apparently no residential landlines where the geographic area codes do not match the state where the landline is located— information that we also expect Mr. Stauffer to convey at trial when he testifies about the residential directory assistance database.  Of the 29,082 landline database matches returned, only 40 addresses did not match the state that the area code suggests—about one-tenth of one percent (.01%) of the total. . . The underlying data for those 40 landlines reveals not that the landline is located in some state other than that indicated by the area code, but that the database does not contain "state" data associated with that landline.

<u>Letter</u>, at 3.

The Letter stated that the Plaintiff States sent the Letter as a supplemental disclosure under Rule 26(e).  The Letter stated that the April 2015 Analysis was a supplement to Dr. Yoeli's previous opinions.  <u>Letter</u>, at 1; <u>see</u> Fed. R. Civ. P. 26(a)(2)(E) and 26(e).

Dish responded on April 17, 2015.  Dish stated that the April 2015 Analysis was not a supplement, but an undisclosed, inadmissible expert opinion.  Dish asked the Plaintiff States to withdraw the Letter and not present any of the information set forth

in the Letter at trial.  <u>Defendant Dish Network L.L.C.'s Cross-Motion</u>
<u>to Strike State Plaintiffs' Post-Discovery Expert Disclosures,</u>
<u>Preclude the Use of any Related Evidence at Trial, and for Costs and</u>
<u>Attorneys' Fees (d/e 491)</u>, attached <u>Declaration of Elyse Echtman</u>,
Exhibit K, <u>Letter dated April 17, 2015</u>.

The parties conferred, but did not resolve this dispute.  The
Motions followed.  The Plaintiff States ask the Court to rule in
limine that the information in the Letter is admissible at trial.  Dish
asks the Court to bar the information in the Letter and sanction the
Plaintiff States by awarding Dish costs and fees.

<div align="center">ANALYSIS</div>

The admissibility of Dr. Yoeli's April 2015 Analysis at trial
turns on whether the April 2015 Analysis is a supplement to Dr.
Yoeli's prior expert opinions or whether the April 2015 Analysis is a
new expert opinion.  Supplements to existing opinions must be
disclosed within the time set for pretrial disclosures.  Fed. R. Civ. P.
26(e)(2) and 26(a)(3)(B).  Pretrial disclosures in this case began on
April 24, 2015.  New expert opinions, however, must be disclosed
within the time set for expert discovery in the Rule 16(b) scheduling
order.  Fed. R. Civ. P. 16(b) and 26(a)(2)(D).  All discovery closed in

this case in December 2013. The disclosure in the Letter was untimely by more than a year if the April 15 Analysis was a new opinion. Such untimely information may not be used at trial unless the late disclosure is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

A party must make a supplemental disclosure if the original disclosure "in some material respect . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); see Fed. R. Civ. P. 26(a)(2)(E). A supplemental expert disclosure typically updates, corrects, refines, or otherwise modifies an existing expert opinion "based on information acquired subsequent to the original disclosure or a realization that the original disclosure was incomplete or incorrect." Mintel Intern. Group, Ltd. v. Neergheen, 636 F. Supp.2d 677, 685-86 (N.D. Ill. 2009) (quoting Baldwin Graphic Systems, Inc. v. Siebert, Inc., 2005 WL 1300763, at *2 (N.D. Ill. February 22, 2005) (internal quotation marks omitted)). A new opinion based on a new method of analysis or new underlying theory of the case is not a supplement. Council 31 v. Ward, 1995

WL 549022 (N.D. Ill. September 12, 1995).  See Mintel Intern.

Group, Ltd., 636 F.Supp.2d at 685 (supplemental opinions which

send the case on a "wholly different track" may be excluded as

improper).

Dr. Yoeli used a new methodology in the April 2015 Analysis to

determine the location of residential landline telephones.  Dr. Yoeli

used area codes in his original opinions to determine location, but

the April 2015 Analysis uses actual addresses in the PossibleNOW

directory database.  The use of addresses is clearly a new

methodology and a new opinion.  This is not a correction of

erroneous or incomplete information, but a change in method of

analysis.

Dr. Yoeli changed the method of analysis because this Court

rejected the Plaintiff States' prior legal position.  The Plaintiff States

took the position that area codes provided complete information to

determine state location of a telephone number as a matter of law.

See Opinion 445, at 206.  Dr. Yoeli's use of area codes was

consistent with this legal position.  This Court rejected that

argument.  Id.  Dr. Yoeli now presents an opinion based on a

different methodology to analyze the location of residential

08-01789-cgm   Doc 19361-2   Filed 03/04/20   Entered 03/04/20 12:48:03   Exhibit B -
395-cv-03073-SEM-TSH   #499-4   Page 16 of 23
Declaration of Robert A. Rich   Pg 52 of 59

telephone subscribers.  Given the context of the Plaintiff States'
legal position, this portion of the April 2015 Analysis is not a
supplement, but a new opinion.  The Plaintiff States' disclosure of
this new opinion is untimely.  The untimely opinion is only
admissible if the late disclosure is harmless or substantially
justified.  Fed. R. Civ. P. 37(c).[2]

Yoeli's change in methodology is not harmless.  The number of
calls to residents of the Plaintiff States is a significant issue.  The
Plaintiff States may seek civil penalties of up to $1,500.00 per call
on behalf of residents for willful violations of TCPA.  47 U.S.C. §
227(g).  Dish has prepared arguments to challenge Yoeli's use of
area codes to determine location of telephone subscribers, and so
the number of illegal calls to residents of each Plaintiff State.
Discovery is closed, and the Court has ruled on summary
judgment.  Now, at this late date, Dr. Yoeli presents a new method
of determining the location of a residential telephone subscriber.

---

[2] The Plaintiff United States argues that Dish is barred by the doctrine of judicial estoppel.  The United
States argues that Dish should be judicially estopped because Dish argued that similar post-discovery
opinions in Taylor's February 2014 declaration were admissible as supplemental opinions.  Judicial
estoppel applies if the Court accepted the prior position that Dish asserted.  See Matter of Cassidy, 892
F.2d 637, 641 (7th Cir. 1990).  This Court did not accept Dish's prior argument about Taylor's February
2014 opinion.  Rather, the Court did not rule on the issue because the opinion was immaterial; Dish had
already conceded the factual issue that the opinion sought to address.  See Opinion 445, at 39.  Judicial
estoppel does not apply.

The change could prejudice Dish.  See Council 31 v. Ward, 1995 WL 549022, at *1.

The Plaintiff States, however, may be substantially justified to use the expert opinions in the April 2015 Analysis in rebuttal. Dish's expert Taylor changed his position on area codes after discovery closed.  He relied on area codes to determine location of residential subscribers in his reports, but after discovery closed he stated under penalty of perjury that area codes were not reliable. Taylor claims that he had to use area codes because he was hired to critique Dr. Yoeli's opinions, and Dr. Yoeli used area codes.  This statement makes little sense.  Taylor had no trouble critiquing the use of area codes in February 2014; he could have made the same critique in a timely fashion in his expert opinion reports. Furthermore, Taylor's February 2014 statement under oath was not presented as an expert opinion, but as "predicate information included to give context to Mr. Taylor's subsequent testimony." Reply in Support of Motion to File Corrected DX-238 (d/e 428), at 3-4.  At this point, the Plaintiff States (and the Court) do not know what Taylor will opine at trial about determining the residency of telephone subscribers.  Given this ambiguity in Dish's expert

Taylor's statements, it is only prudent for the Plaintiff States to prepare some sort of response.[3]

The Court has broad discretion to determine what evidence may be presented in rebuttal at trial. <u>Finley v. Marathon Oil Co.</u>, 75 F.3d 1225, 1231 (7th Cir. 1996). Given the uncertainty of Taylor's potential testimony on this issue, and the uncertainty of what else Dish may present at trial, the Court will not bar the use of expert opinions in the April 2015 Analysis at this time; the Plaintiff States may seek to admit the opinions for rebuttal purposes. Once the Court has heard Dish's evidence, the Court in its discretion will decide whether the opinions may be admissible in rebuttal.

The factual data underlying the April 2015 Analysis is not barred from use at trial for any purpose. The underlying factual data showed that in 29,042 out of 29,082 landline numbers checked, the state in the address of a phone number was the same as the state associated with the telephone number's area code. The existence of the underlying factual data was disclosed during

---

[3] Rebuttals to expert opinion should be disclosed within thirty days of the party's disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii). Since Dish has not disclosed what Taylor will opine at trial, any thirty-day time period has not begun. <u>See also</u> <u>Finley v. Marathon Oil Co.</u>, 75 F.3d 1225, 1231 (7th Cir. 1996).

discovery.  The call records and the PossibleNOW databases were disclosed, including the fact that the PossibleNOW residential landline directory database included addresses.  Because the existence of the underlying factual data was disclosed in discovery, no supplemental disclosure was required.  Rule 26 only obligated the Plaintiff States to supplement their Rule 26 factual disclosures if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e); see Stolarczyk ex rel. Estate of Stolarczyk v. Senator Intern. Freight Forwarding, LLC, 376 F.Supp.2d 834, 843 (N.D. Ill. 2005) (failure to disclose witness in Rule 26 disclosures was harmless if witness was disclosed in discovery); Laboratory Skin Care, Inc. v. Coleman v. Keebler Co., 997 F. Supp. 1102, 1107 (N.D. Ind. 1998) ("'no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process'") (quoting Advisory Committee Notes to 1983 Amendments to Rule 26(e)(1)). Dish could have acquired the data in discovery and conducted a

similar factual comparison.  The underlying factual information is not barred by Rule 26 or Rule 37.[4]

Dish argues that the Plaintiffs had to produce the specific comparison of this factual information in discovery, not just the existence of the data, in order to avoid the obligation to supplement. The Court disagrees.  Rule 26 only requires disclosure of a description and the location of the information that may be used at trial.  See Fed. R. Civ. P. 26(a)(1)(A)(ii).  The disclosure in discovery that PossibleNOW had directory addresses for residential telephone numbers was a sufficient disclosure of additional information to meet the supplemental disclosure obligations under Rule 26(e).  The Plaintiff States are not barred from using the underlying factual data.

Dish asks for additional time to respond to the April 2015 Analysis.  Dish also asks for the Court to reopen all expert discovery.  The Plaintiff United States and the Plaintiff States object to any delay in the trial date.

The Court has carefully considered the matter and finds that in the interests of justice, Dish must be given some additional time

---

[4] The Court is not deciding any evidentiary issues related to the admissibility of the underlying factual data at trial.  The Court is only deciding that the factual evidence is not barred under the discovery rules.

to respond to the expert opinions in the April 2015 Analysis, but the Court will not reopen expert discovery for any other purpose. These opinions may only be used, if at all, in rebuttal. This narrow use does not warrant reopening expert discovery for any other purpose.

The Court, therefore, gives Dish until June 15, 2015, to depose Dr. Yoeli and Stauffer and until July 15, 2015, to provide the Plaintiffs with a written response, including the disclosure of any additional expert opinions. The scope of this discovery is limited to the opinions set forth in the April 2015 Analysis. The Plaintiffs will have until August 1, 2015, to depose Dish's expert who rendered opinions disclosed in its response.

This extension will force a continuance of the trial and other deadlines. The Court grants this extension over the Plaintiffs' objection to this change. The interests of justice require a small extension. The pretrial order is due September 1, 2015; motions in limine are due September 1, 2015; responses to motions in limine are due September 15, 2015. The Final Pretrial Conference set for June 1, 2015, is vacated and reset for September 28, 2015 at 1:30

p.m.  The Bench Trial set for July 21, 2015, is canceled and reset

for October 6, 2015, at 9:00 a.m.

Last, Dish asks for costs and expenses.  The Court has

discretion to award costs and fees for motions brought under Rule

37(c).  Fed. R. Civ. P. 37(c)(1)(A).  The Court, in its discretion,

determines that no fees or expenses are warranted.  The Court has

not barred any evidence.  The Court has determined that,

depending on Dish's evidence at trial, the April 2015 Analysis may

be used in rebuttal.  Therefore, Dish should incur any costs and

expenses to prepare a response.  The Court, in its discretion,

determines that Dish is not entitled to an award of expenses or fees.

## CONCLUSION

**THEREFORE Plaintiff States of California, Illinois, North**

**Carolina, and Ohio's Motion in Limine Regarding Admission of**

**Supplement Under Rule 26(e) (d/e 489), and Defendant Dish**

**Network, LLC's (Dish) Cross-Motion to Strike Plaintiff's Post-**

**Discovery Expert Disclosures, Preclude the Use of Any Related**

**Evidence at Trial, and for Cost and Attorneys' Fees (d/e 491)**

**are ALLOWED in part and DENIED in part.  The schedule of this**

**proceeding is amended as follows. Defendant is given until**

June 15, 2015, to depose Dr. Erez Yoeli and Richard Stauffer
and until July 15, 2015, to provide the Plaintiffs with a written
response, including the disclosure of any additional expert
opinions.  The scope of this discovery is limited to the opinions
set forth in the April 2015 Analysis discussed in this Opinion.
The Plaintiffs have until August 1, 2015, to depose Dish's
expert who rendered opinions disclosed in its response.  The
pretrial order is due September 1, 2015; motions in limine are
due September 1, 2015; responses to motions in limine are due
September 15, 2015.  The Final Pretrial Conference set for
June 1, 2015, is vacated and reset for September 28, 2015 at
1:30 p.m.  The Bench Trial set for July 21, 2015, is canceled
and reset for October 6, 2015, at 9:00 a.m.

Enter: May 13, 2015


_____/s Sue E. Myerscough_____
**UNITED STATES DISTRICT JUDGE**