# EXHIBIT A

DENTONS US LLP
Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
Email: arthur.ruegger@dentons.com

*Attorneys for Defendant*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04357 (SMB) |
| Plaintiff, | |
| v. | |
| JAMES GREIFF, | |
| Defendant. | |

**NOTICE OF MOTION FOR WITHDRAWAL OF THE REFERENCE**

**TO THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

      PLEASE TAKE NOTICE that Defendant James Greiff ("Defendant") respectfully moves the United States District Court for the Southern District of New York at the United States Courthouse, 500 Pearl Street, New York, NY 10007, on a date to be determined by the Court, pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure, and Rule 5011-1 of the Local Rules for the Southern District of New York, for an Order withdrawing the reference of the above-captioned adversary proceeding from the United States Bankruptcy Court for the Southern District of New York for the reasons set forth in the accompanying Memorandum of Law.

      WHEREFORE, Defendant respectfully requests that the Court enter an Order granting the relief requested herein, and such other and further relief as the Court deems just and proper.

Dated: March 4, 2020
      New York, New York

DENTONS US LLP

By: _/s/ Arthur H. Ruegger_
Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: arthur.ruegger@dentons.com

*Attorneys for Defendant*

DENTONS US LLP
Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
Email: arthur.ruegger@dentons.com

*Attorneys for Defendant*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br>v.<br><br>JAMES GREIFF,<br><br>       Defendant. | Adv. Pro. No. 10-04357 (SMB) |

**DEFENDANT JAMES GREIFF'S MEMORANDUM IN SUPPORT**
**OF MOTION TO WITHDRAW THE REFERENCE OF THE ADVERSARY**
**PROCEEDING PURSUANT TO 28 U.S.C. § 157(d), FEDERAL RULE OF**
**<u>BANKRUPTCY PROCEDURE 5011, AND RULE 5011-1 OF THE LOCAL RULES</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND............................................................................................. 4

    A.    The SEC Complaint and the BLMIS Bankruptcy.............................................4

    B.    BLMIS Was Not the Source of Payments To Defendant ................................6

    C.    The Greiff Brokerage Account ......................................................................10

    D.    The Disallowed Greiff Claim..........................................................................11

    E.    The Case is Ready for Trial in the District Court. .........................................14

ARGUMENT ................................................................................................................. 15

    I.    CAUSE EXISTS FOR WITHDRAWAL OF THE REFERENCE................................. 15

    A.    Mr. Greiff Has The Right to A Jury Trial......................................................15

    B.    The Bankruptcy Court Lacks Final Adjudicative Authority Over the
    Trustee's Claim...............................................................................................16

    II.    THE DEFENDANT HAS NOT WAIVED HIS RIGHT TO A JURY TRIAL .............. 19

    A.    There Is No Link Between Any Claim and The Adversary Proceeding...................19

    B.    The Time of Filing Rule Is Inapplicable In This Case.............................................20

    C.    The Outcome of the Adversary Proceeding Is Not Resolved By the Claim
    Disallowance...................................................................................................22

CONCLUSION............................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229 (2d Cir.2011)............................................................................23

*Brown Publ. Co. Liquidating Trust v. Brown*,
   15-MC-0531(JS)*,* 2017 WL 455418, 2017 U.S. Dist. LEXIS 14775 (E.D.
   N.Y. Feb. 1, 2017) ................................................................................16

*Buchwald v. Renco Grp.*,
   539 B.R. 31 (S.D.N.Y. 2015)................................................................15

*In re CBI Holding Co., Inc.*,
   529 F.3d 432 (2d Cir. 2008)................................................................19

*In re Chowaiki & Co. Fine Art Ltd.*,
   593 B.R. 699 (Bankr. S.D.N.Y. 2018) .................................................8

*City of New York v. Venkataram*,
   2011 WL 2899092 (S.D.N.Y. July 13, 2011) ......................................8

*In re Coudert Bros. LLP*,
   2011 WL 5593147 (S.D.N.Y. Sept. 23, 2011)......................................17

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
   462 B.R. 457 (S.D.N.Y. 2011)..............................................................17

*Exec. Bens. Ins. Agency v. Arkison*,
   573 U.S. 25 (2014)................................................................................18

*Germain v. Connecticut Nat. Bank*,
   988 F.2d 1323 (2d Cir. 1993)...............................................................19

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989)...............................................................2, 15, 17, 18

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
   541 U.S. 567 (2004)..............................................................................20

*In re Int'l Pharmacy & Disc. II, Inc.*,
   443 F.3d 767 (11th Cir. 2005) ..............................................................8

*Korea Trade Ins. Corp v. Neema Clothing, Ltd*,
   11 CV 8980, 2015 WL 363569, 2015 U.S. Dist. LEXIS 9975 (S.D.N.Y. Jan.
   28, 2015) ................................................................................................15

*Messer v. Magee (In re FKF3, LLC)*,
    Case No. 13 CV 3601, 2016 WL 4540842, 2016 U.S. Dist. LEXIS 117258
    (S.D.N.Y. Aug. 30, 2016) ..................................................................15, 16, 22

*Mollan v. Torrance*,
    22 U.S. (9 Wheat.) 537 (1824) ...................................................................20

*N.Y. Skyline, Inc. v. Empire State Building Tr. Co. (In re N.Y. Skyline, Inc.)*,
    512 B.R. 159 (S.D.N.Y. 2014) ...................................................................17

*In re Orion Pictures Corp.*,
    4 F.3d 1095 (2d Cir. 1993) ..................................................15, 16, 17, 18

*Penson Fin Servs., Inc. v. O'Connell (In re Arbco Capital Mgmt., LLP)*,
    479 B.R. 254 (S.D.N.Y. 2012) ...................................................................17

*Picard v. Avellino*,
    557 B.R. 89 (Bankr. S.D.N.Y 2016) .........................................................5, 9

*Picard v. BAM L.P.*,
    608 B.R. 165 (Bankr. S.D.N.Y. Sept. 11, 2019) ....................................13, 21

*Picard v. BAM L.P. (In re Bernard L. Madoff Inv. Secs. LLC)*,
    18-CV-9916 and 19-CV-812 (S.D.N.Y. Feb. 26, 2020) .............................21

*Picard v. BAM LP (In re Bernard L. Madoff Investment Securities LLC)*,
    Adv. Pro. No. 10-04390 (Bankr. S.D.N.Y. Sept. 11, 2019) ........................22

*Picard v. BAM LP (In re Bernard L. Madoff Investment Securities LLC)*,
    597 B.R. 466, Adv. Pro. No. 10-04390 (SMB) (Bankr. S.D.N.Y. Jan. 18,
    2019) ........................................................................................................20

*Picard v. Estate of Igoin (In re BLMIS)*,
    525 B.R. 871 (Bankr. S.D.N.Y. 2015) .................................................20, 21

*Picard v. Ida Fishman Rev. Trust*,
    773 F.3d 411 (2d Cir. 2014) .....................................................................14

*Picard v. Nelson et al.*,
    Adv. Pro. Nos. 10-04658, 2019 WL 6245772 (Bankr. S.D.N.Y. Nov. 19,
    2019) ......................................................................................................7, 8

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    490 B.R. 46 (S.D.N.Y. 2013) ............................................................17, 20, 22

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) .................................................20, 21

iv

*Securities and Exchange Commission v. Bernard L. Madoff Investment Securities
LLC, et al.*
(S.D.N.Y.) No. 08 CV 10791.................................................................................4

*Smith v. Dowden*,
47 F.3d 940 (8th Cir. 1995) .............................................................................21

*Stern v. Marshall*,
564 U.S. 462 (2011)..................................................................................... *passim*

*Wellness Int'l Network, Ltd. v. Sharif*,
575 U.S. 665 (2015)...........................................................................................2

**Statutes**

11 U.S.C. § 157..................................................................................................16

11 U.S.C. § 303(g) ...............................................................................................5

11 U.S.C. § 502(d) ...............................................................................13, 20, 21

11 U.S.C. § 546(e) .............................................................................................14

11 U.S.C. § 547...................................................................................................23

11 U.S.C. § 548...........................................................................................17, 23

11 U.S.C. § 548(a) ...............................................................................................4

11 U.S.C. § 548(a)(1)........................................................................................9, 14

11 U.S.C. § 548(a)(1)(A) ...................................................................................14

11 U.S.C. § 550...................................................................................................14

15 U.S.C. § 78aaa, *et seq.* ....................................................................................3

15 U.S.C. § 78eee(a)(4)(B) ..................................................................................4

15 U.S.C. § 78eee(b)(3) ........................................................................................4

15 U.S.C. § 78eee(b)(4) ........................................................................................5

15 U.S.C. § 78fff-2 .............................................................................................11

15 U.S.C. § 78fff-2(b).........................................................................................22

15 U.S.C. § 78fff-2(c)(3) ......................................................................................3

15 U.S.C. § 78lll(11)...........................................................................................22

28 U.S.C. § 157(b)(2) ...........................................................................................................2, 17

28 U.S.C. § 157(d) ...............................................................................................................1, 16

28 U.S.C. § 157(e) ......................................................................................................................2

**Rules**

Fed. R. Bankr. P. 5011 ...............................................................................................................1

L. B. R. 5011-1 ...........................................................................................................................1

**Other Authorities**

U.S. Const., Amend. VII...................................................................................................1, 15, 18

Defendant James Greiff ("Greiff" or the "Defendant"), through his attorneys, Dentons US LLP, hereby submits this memorandum of law in support of his motion for withdrawal of the reference of the above captioned adversary proceeding, pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Rule 5011-1 of the Local Rules.

## PRELIMINARY STATEMENT

1.     Section 157(d) of the Bankruptcy Code provides: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).  Based on the Supreme Court, Second Circuit, and District Court rulings on the constitutional limits of bankruptcy court jurisdiction discussed below, cause exists in this case for withdrawal of the reference to preserve Mr. Greiff's right to jury trial.  Mr. Greiff made a timely demand for a jury trial in this matter and is not a creditor of the debtor, Bernard L. Madoff Investment Securities LLC ("BLMIS").  Under *Stern v. Marshall*, 564 U.S. 462 (2011) (hereinafter "*Stern*") and its progeny, the Bankruptcy Court cannot conduct a jury trial in this case or enter final judgment as to the Defendant absent his consent, which Mr. Greiff has not given.  As shown below, withdrawal of the reference for trial in the District Court is the appropriate measure to preserve the Defendant's right to a jury trial.

2.     Mr. Greiff is indisputably entitled to a jury trial for resolution of the pending fraudulent transfer claim.  The Seventh Amendment to the United States Constitution provides: "in Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const., Amend. VII.  The Supreme Court has repeatedly held that avoidance actions, such as the sole cause of action in this adversary proceeding, are "quintessentially suits at common law that more nearly resemble state law contract claims brought by

a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Stern*, 564 U.S. at 492 (quoting, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989). Thus, a defendant in a fraudulent transfer litigation is generally entitled to a jury trial based on the nature of the claim.[1]

3.    The Bankruptcy Court, however, lacks authority to conduct a jury trial under the present circumstances. By statute, bankruptcy courts may conduct a jury trial only if (1) they are specially designated to do so by the district court and (2) both parties consent. See 28 U.S.C. § 157(e).[2] Here, the Bankruptcy Court is not designated to do so and Greiff has not consented to a jury trial conducted by the Bankruptcy Court.

4.    In addition, the Bankruptcy Court is barred by constitutional considerations from exercising jurisdiction over a jury trial absent Greiff's consent. A few years after *Stern* was decided, the Supreme Court in *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015) held that bankruptcy judges were only authorized to hear and determine *Stern* claims with the parties' consent. Absent such consent, a bankruptcy court may only submit a recommendation that is subject to *de novo* review by the district court. Where, as here, there is a right to a jury trial, *de novo* review is at odds with Seventh Amendment rights. In light of the Seventh Amendment provision that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law," it follows that the Constitution prohibits bankruptcy courts from holding jury trials in matters where the District Court must exercise *de novo* review. As

---

[1] Under *Stern*, bankruptcy courts lack final adjudicative authority over these private right claims, notwithstanding the fact that fraudulent transfer claims are "core" claims pursuant to 28 U.S.C. §157(b)(2).

[2] Section 157(e) states: "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties."

2

shown below, withdrawal of the reference for trial in the District Court is required to preserve the Defendant's right to a jury trial.

5.      Finally, the motion to withdraw is appropriate.  Mr. Greiff was sued by Irving H. Picard (the "Trustee"), the trustee of Bernard L. Madoff Investment Securities LLC (as previously defined, "BLMIS"), to recover alleged fraudulent transfers.   Mr. Greiff timely asserted a right to a jury trial in his answer.  At the time the Trustee filed the complaint, Mr. Greiff was not a creditor of BLMIS; his prior claim filed under the Securities Investor Protection Act ("SIPA")[3] against BLMIS having been finally and unequivocally disallowed more than a year before the adversary was filed.

6.      The motion to withdraw is timely.  It is the practice in this jurisdiction for adversary proceedings to conduct discovery and hear dispositive motions in the Bankruptcy Court before seeking to withdraw the reference for trial.  The Defendant abided by the practice.  Discovery has been completed; mediation was unsuccessful.

7.      Finally, there are significant factual issues remaining in dispute for trial, including the source and amount of the payments to the Defendant.  The Defendant contends and the evidence establishes that the transfers were not transfers of BLMIS property.  The undisputed history of this case as summarized in the Complaint[4] and on the docket of the District Court establishes that the Trustee is the trustee solely of BLMIS, with authority as a bankruptcy trustee to recover property of the debtor, BLMIS.  That is a complete defense as the Trustee is only authorized under SIPA to recover "property transferred by the debtor [BLMIS]."  *See* 15 U.S.C.

---

[3]  The Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa, *et seq.* ("SIPA").

[4]  A copy of the Complaint is attached as Exhibit A to the Declaration of Arthur H. Ruegger dated March 4, 2020 (hereinafter "Ruegger Dec.") filed simultaneously herewith.

§ 78fff-2(c)(3). It is the Trustee's burden as bankruptcy trustee to establish that the alleged fraudulent transfers were transfers "of an interest of debtor in property" under 11 U.S.C. §548(a). In sum, the source of payment is a critical fact, among others, remaining in dispute for resolution by trial.

8.    All of the factors considered by the courts in this jurisdiction for withdrawal of the reference have been met. Mr. Greiff requests that the Court withdraw the reference of this case for trial.

## **FACTUAL BACKGROUND**

### **A.    The SEC Complaint and the BLMIS Bankruptcy**

9.    On December 11, 2008, Madoff was arrested by federal agents for violating criminal securities statutes. On the same day, the Securities and Exchange Commission (the "SEC") filed a complaint against BLMIS and Bernard Madoff ("Madoff") in the Southern District of New York. *Securities and Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, (S.D.N.Y.) No. 08 CV 10791. On December 15, 2008, pursuant to 15 U.S.C. § 78eee(a)(4)(B) of SIPA, the Securities Investor Protection Corporation ("SIPC") filed an application in the District Court asserting that BLMIS was unable to meet its obligations to securities customers as they became due and thus its customers needed the protections afforded by SIPA. *See* Application of SIPC, *Bernard L. Madoff Investment Securities LLC et al.*, S.D.N.Y.) No. 08 CV 10791, ECF Doc. No. 5. On the same day, the SEC consented to a combination of its own action with SIPC's application. *Id.* at 10.

10.    On December 15, 2008, the District Court granted SIPC's application and entered an order which, in relevant part, (i) appointed Picard solely as the trustee for the liquidation of BLMIS pursuant to § 78eee(b)(3) of SIPA; and (ii) removed the case to the bankruptcy court

4

pursuant to § 78eee(b)(4) of SIPA. *See* Order of the United States District Judge Louis L. Stanton, *Bernard L. Madoff Investment Securities LLC, et al.*, No. 08 CV 10791, ECF Doc. No. 4.

11.     On March 10, 2009, a Criminal Information was filed against Madoff. On March 12, 2009, Madoff pled guilty to 11 counts including securities fraud, investment adviser fraud, mail fraud, wire fraud, three counts of money laundering, false statements, perjury, false filings with the SEC, and theft from an employee benefit plan.

12.     On April 13, 2009, several creditors commenced an involuntary bankruptcy petition against Madoff. (Case No. 09-11893). The court directed the appointment of an interim trustee for Madoff pursuant to 11 U.S.C. § 303(g). Alan Nisselson ("Nisselson" or the "Madoff Trustee") was appointed Chapter 7 trustee for Madoff's individual bankruptcy estate. While under a consent order dated June 9, 2009, Madoff's estate was consolidated with the BLMIS proceeding, under the terms of that order, both Picard and Nisselson remained as trustees of their respective estates, continuing to have their separate powers and duties, with Nisselson retaining the authority to bring avoidance actions on behalf of Madoff's estate pursuant to the express provisions of the June 9, 2009 order. S*ee Consent Order Signed On 6/9/2009, Substantively Consolidating The Estate of Bernard L. Madoff Into The SIPA Proceeding Of Bernard L. Madoff Investment Securities LLC And Expressly Preserving All Rights, Claims And Powers Of Both Estates,* Adv. Pro. No. 08-01789-smb, ECF No. 252 at ¶ 4 ("[n]otwithstanding the substantive consolidation of the Madoff estate into the [BLMIS] SIPA Proceeding, the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate and shall continue to have all powers, rights, claims and interests of a Chapter 7 trustee to bring claims under chapters 5 and 7 of the Bankruptcy Code in consultation with the SIPA Trustee and SIPC."); *see also Picard v. Avellino,*

10-04578-smb Doc 129-1 Filed 03/04/20 Entered 03/04/20 00:15:02 Exhibit Am of Law In Support of Motion to Withdraw the Reference    Pg 12 of 29

Pg 15 of 32

557 B.R. 89, 108 (Bankr. S.D.N.Y 2016) ("The SIPA debtor was BLMIS, the limited liability company, and not Madoff's sole proprietorship, an entity that had no legal existence separate from Madoff.").

### B. BLMIS Was Not the Source of Payments To Defendant

13.    The payments made to the Defendant were made from bank accounts held in the name of Bernard L. Madoff or his sole proprietorship, and not from the debtor BLMIS accounts.

14.    It is undisputed that, until December 2008, Madoff operated two separate businesses: a trading business which included both proprietary trading, trading securities for its own account, and market-making, creating a market in certain securities and acting as a broker-dealer for those securities (the "Trading Business"); and an "Investment Advisory Business," through which the customer brokerage accounts, like Mr. Greiff's, were managed.[5]  Through January 2001, Madoff operated both the businesses through a sole proprietorship, which were operated under the trade name "Bernard L. Madoff Investment Securities" from as early as the 1970s. (Complaint ¶ 19).¶

15.    In January 2001, Madoff formed BLMIS, to which he may have contributed portions of his legitimate trading business, as evidenced by documentation produced by the Trustee to third parties.  For example, Madoff sent letters to the Bank of New York (which serviced the legitimate trading business), to the SEC, the Depository Trust Company, and to others, informing them that BLMIS would operate that business. (*See* Ruegger Dec. Ex. B (January 1, 2001 letter from Madoff and BLMIS to the Bank of New York); Ex. C (January 1, 2001 letter from Madoff and BLMIS to the National Securities Clearing Corporation); Ex. D

---

[5]  The separate aspects of the trading business -- proprietary trading versus market-making -- are on occasion described as separate business units of Madoff's operations, but that distinction is immaterial to this matter.

6

(January 1, 2001 letter from Madoff and BLMIS to the Options Clearing Corporation); Ex. E (January 1, 2001 letter from Madoff and BLMIS to the Depository Trust Company)).

16.    In contrast, the Trustee, who has full control of the BLMIS bank account records, has produced no documentary proof that Madoff ever informed JP Morgan Chase that he wanted to transfer the Investment Adversary Business to BLMIS.  Indeed, at all times relevant to this action and well before, Madoff maintained two checking accounts at JP Morgan Chase to service the Investment Advisory Business:  Account No. 140-081703 (the "703 Account") and Account No. 6301428151 509 (the "509 Account"), both in his own name or the trade name of the sole proprietorship (*see* Ruegger Dec. Exs. G and H).  To Defendant's knowledge, there is not a single document suggesting or proving that Madoff sought to change the ownership of two bank accounts, through which the financial transactions for the brokerage customers were conducted.[6]

---

[6] In *Picard v. Nelson et al*., Adv. Pro. Nos. 10-04658, 10-04377, 2019 WL 6245772 (Bankr. S.D.N.Y. Nov. 19, 2019) ("*Nelson*"), the Bankruptcy Court held that Madoff's sole proprietorship had transferred the 703 and 509 Accounts to the LLC, but that finding was insupportable and clear error.  In the absence of documentary evidence, the Bankruptcy Court relied on a BLMIS Form BD filed with the SEC in 2001 when Madoff allegedly transferred the trading business to BLMIS.  For a number of reasons, both factual and evidentiary, the Form BD is not evidence that the 703 and 509 Accounts were transferred.  First, the Form BD itself does not represent that the Investment Advisory Business was transferred.  The Form BD described the only businesses that BLMIS engages in (or intends to engage in) as market making and proprietary trading.  Moreover, the Form BD affirmatively stated that BLMIS does not engage in investment advisory services.  *See* Ruegger Dec. Ex. F.  Where the Form required the applicant to check all of the "types of business [it] engaged in" (unless that business accounted for less than 1% of annual revenue), he checked item "C," its market-making activities, item "V," its proprietary trading activities, and item "Z," "Other" activities, which are described on page 10 of the form as Madoff's membership in the Cincinnati Stock Exchange where he was a designated market maker. Madoff did not check item "S," however, which referenced "Investment advisory services."

Furthermore, not only is the Form BD inadmissible hearsay, but both Madoff and his brother, Peter Madoff, the compliance officer referenced on the Form BD, pleaded guilty to falsifying the SEC forms.  In sum, none of the remaining factors cited by the Bankruptcy Court in *Nelson* constitutes admissible evidence that Madoff transferred these account to BLMIS.

17.    Moreover, since the 509 Account and the 703 Account were not owned by BLMIS, they were not the property of BLMIS.  *See In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699, 713 (Bankr. S.D.N.Y. 2018) ("New York law presumes that 'once funds are deposited in a bank account, the account holder has title to and control over those funds.'") (citation omitted); *City of New York v. Venkataram*, 2011 WL 2899092, at *5, n.6 (S.D.N.Y. July 13, 2011) ("'Under New York law, the party who possesses property is presumed to be the party who owns it.'") (citation omitted); *see also In re Int'l Pharmacy & Disc. II, Inc.*, 443 F.3d 767, 771 (11th Cir. 2005).

18.    The account redemption payments to Greiff were made by check written on the 509 Account, which was supplied by the 703 Account.  Even after BLMIS was formed in January 2001, unlike the accounts serving the other businesses, the 509 Account continued in the name of Bernard L. Madoff and the 703 Account continued in the name of the sole proprietorship, Bernard L. Madoff Investment Securities – without the "LLC."  Furthermore, as shown by the sample 703 Account statements representing the activity of the account during more than a decade, the 703 Account held billions of dollars representing, *inter alia*, customer deposits, proceeds of short term commercial paper, U.S. Treasuries and other securities, and interest.  *See* Ruegger Dec.  Ex. H.

19.    The ownership of the accounts is a critical fact in dispute that has profound implications for the outcome of the lawsuit.  If the funds were not BLMIS funds, Irving H. Picard, the Trustee of BLMIS lacks authority to bring claims against Mr. Greiff to recover withdrawals from his brokerage account because the Trustee is not the personal trustee of

---

None of the other "evidence" relied on by the Bankruptcy Court in *Nelson* reflects a transfer of the 509 or 703 Account to BLMIS.

Bernard L. Madoff.  The only party who had standing to pursue recovery of the transfers made by Madoff was the Madoff Trustee.  *See Picard v. Avellino*, 557 B.R. 89, 110 (Bankr. S.D.N.Y. 2016) (*"Avellino"*) ("Only the Madoff trustee can recover *actual* transfers by the sole proprietorship.")  The Madoff Trustee determined not to pursue those actions within the limitations period.

20.    As a result, the Trustee cannot meet his burden of proving a transfer of an interest of the debtor BLMIS to the Defendant.  Since, as set forth below, the Trustee's avoidance powers are plainly limited under the Bankruptcy Code to seeking to recover transfers of "an interest of the debtor in property" 11 U.S.C. § 548(a)(1), and all the evidence demonstrates that the transfers in question here were not made by the Trustee's "debtor", but rather by Madoff individually, the Trustee cannot avoid the transfers.

21.    The existence of these separate accounts, which Madoff used to manage his Investment Advisory Business, is not accidental or carelessness on Madoff's part.  The facts of the account management challenge the Trustee's assumption that BLMIS acted as a Ponzi scheme *vis à vis* the Defendant, which the parties dispute, and not only warrants denying the Trustee the ability to rely on Ponzi scheme presumptions and case law, but also warrants rejecting the holdings of several prior decisions where the Ponzi scheme label was not in dispute. Unlike the "get rich quick" schemes of the classic Ponzi scheme, Madoff customers deposited their money in what they believed were ordinary brokerage accounts managed by the former chairman of NASDAQ.  The customer deposits had no maturity dates and, as in the case of the Defendant, were drawn upon only in part on a schedule set up with Madoff or to meet occasional expenses of the customer.  Madoff was able to make reasonable assumptions about the aggregate ordinary redemption demands on a monthly basis.  The Chase accounts, which held billions of

10-04357-smb   Doc 119-379   Filed 03/07/20   Entered 03/07/20 00:57:02   Memorandum
of Law In Support of Motion to Withdraw the Reference    Pg 16 of 29

08-01789-cgm   Doc 12379   Filed 03/07/20   Entered 03/07/20 00:57:02   Exhibit Am
Pg 19 of 32

dollars, made it possible for Madoff to meet all customer redemption requests for decades without soliciting new customers.

22.    As established by the criminal pleas and documentary evidence, Madoff made redemptions from assets, including:  cash in those Chase accounts in his name (and/or the trade name of his sole proprietorship) and under his control; securities purchased from the 703 Account; cash and proceeds earned on those securities, including US Treasuries[7]; short term commercial paper and other investments.  These accounts, which held billions of dollars, enabled Madoff to meet every redemption until the market collapsed in 2008.  A sampling of the bank account statements is attached to the Ruegger Dec as Ex. H.  As a result, the critical feature of a Ponzi scheme -- that early redeeming investors are paid with later investors' money -- is not a feature of Madoff's fraudulent activity.[8]

23.    In fact, none of the other features of a classic Ponzi scheme are present in this case.  The customers were not promised exorbitant rates of return; there was no maturity date on their deposits; and early customers were not redeemed with later customer money.  Thus, the Madoff scheme must be treated for what it is -- a straightforward (if large and longstanding) broker securities fraud, but not a Ponzi scheme by any classic definition.

### C.    The Greiff Brokerage Account

24.    On or about July 8, 1997, Mr. Greiff opened an account with Bernard L. Madoff Investment Securities, the sole proprietorship, with a $5 million deposit.  Mr. Greiff's account

---

[7] U.S. Treasuries appear on virtually every customer statement.  It is possible to match the CUSIP numbers of U.S. Treasuries purchased from the 703 Account funds with CUSIP numbers on customer statements.

[8] The Trustee's experts have not produced any evidence that Madoff was continually funded by new investors.  Mr. Greiff, like many other customers, maintained his account for more than a decade.

was assigned number 1ZB324 by the sole proprietorship.  Over the life of the account, Mr. Greiff deposited over $13,620,000.  All of Mr. Greiff's alleged withdrawals were paid with checks from the 509 Account bearing the name "Bernard L. Madoff" or by wire from the 703 Account bearing the name "Bernard L. Madoff Investment Securities.  *See* Ruegger Dec. Ex. I.

25.    In late 2010, the Trustee filed identical complaints against approximately 1000 customers, including Mr. Greiff, who redeemed funds from their brokerage account without knowledge of the fraud.  The only reference to specific transfers in the Complaint are attached to the Complaint as an exhibit.  Greiff has disputed the Trustee's accounting of the withdrawals from his account.  His own accounting for the period shows withdrawals of $15,269,386.  The Trustee's schedule attached to his Complaint calculates $16,424,202 in withdrawals.  This discrepancy remains an issue for trial.

### D.    The Disallowed Greiff Claim

26.    As detailed below, following the 2008 commencement of the BLMIS liquidation proceeding, Mr. Greiff filed a claim under SIPA.  That claim was disallowed in 2009.  Thus, at the time the Trustee filed the adversary proceeding against Greiff in late 2010, his SIPA claim had been finally disallowed for more than a year.  Consequently, as a procedural or substantive matter there is no connection between the disallowed claim and the adversary proceeding.

27.    SIPA contains special provisions for the assertion and adjudication of processing of customers claims in section 78fff-2.  *See* 15 U.S.C. §78fff-2.  To satisfy his obligations under SIPA with respect to the claims processing, as his first official act, the Trustee filed his *Ex Parte Application For Entry Of An Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claims; and Providing Other Relief* on December 21, 2008, Adv. Pro No. 08-01789 (SMB), [ECF 8],

11

seeking, inter alia, approval of procedures and forms governing the SIPA claims.  On December 23, 2008, the Court approved the Trustee's request (the "Claims Procedures Order") [ECF 12]. Pursuant to this order, customers were required to file claims with the Trustee by the statutory bar date.  Claims Procedures Order at *3.

28.     In accordance with the Claims Procedures Order, on January 17, 2009, Mr. Greiff served the Trustee with his customer claim (the "Customer Claim), seeking to recover the purported balance in his account based upon his statements.

29.     On August 28, 2009, more than a year before the filing of the Complaint against Mr. Greiff, the Trustee issued a Notice of Trustee's Determination of Claim with respect to the Greiff Customer Claim.   The Trustee denied the Customer Claim on the grounds that the claimant had "withdrawn more than was deposited into your account, you do not have positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS proceeding."

The Trustee's Notice of Determination further states:

**PLEASE TAKE NOTICE**: If you disagree with this determination and desire a hearing before the Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after July 1, 2010, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:**  If you do not properly and timely file a written opposition , the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

See Complaint, Exhibit C; Ruegger Dec. Ex. A.

30.     Mr. Greiff did not object to the determination.   Thus, in accordance with the Trustee's own procedure, his claim was finally and completely disallowed.

31.     Furthermore, the Trustee did not assert a section 502(d) claim in the Complaint or

object to the Customer Claim in the adversary proceeding.   Notwithstanding the final

disallowance in the notice, the Trustee referred in the Complaint to the separate proceeding for

adjudicating claims that appears in every complaint against the customers. *See* Complaint at ¶ 55.

32.     As discussed more fully below, the mere filing of the claim does not does not

constitute a waiver of Mr. Greiff's right to a jury trial.  Mr. Greiff had no pending claim for more

than a year before the Trustee filed the adversary proceeding.  As a result, there was and could

not be a link between the issues or claims in the adversary proceeding and the allowance of the

proof of claim.

33.     Moreover, as the Bankruptcy Court has acknowledged the claims allowance

process the avoidance action do not involve the same cause of action or evidence:

> More importantly, the issues and evidence are not necessarily the same. A
> customer has a net equity claim of zero whether he has overdrawn his BLMIS
> account by $1.00 or $1 million. It makes no difference, and he might withdraw
> his net equity claim in either circumstance. On the other hand, the amount that
> he has overdrawn measures his potential liability for fictitious profits in an
> avoidance action under the Bankruptcy Code, and whether that is $1.00 or $1
> million makes a big difference. A claimant who could show that some of the
> withdrawals came from third parties might still have a zero net equity claim but
> the withdrawals paid by non-debtors would reduce the fictitious profits he
> received and his liability for a fraudulent transfer. The withdrawal of the net
> equity claims acknowledges that the Defendants' net equity claims are zero but
> does not necessarily say anything about their defense to the Avoidance Action.
> Accordingly, *res judicata* does not foreclose the Defendants' argument that the
> Two-Year Transfers were not made by BLMIS.

*Picard v. BAM L.P.,* 608 B.R. 165, 180, Adv. Proc. No. 10-04390 (Bankr. S.D.N.Y.
Sept. 11, 2019).

34.     In sum, there is no link between a claim and the Trustee's adversary proceeding

that could constitute a waiver of Mr. Greiff's right to a jury trial.

13

### E.    The Case is Ready for Trial in the District Court.

35.    The Trustee filed the adversary proceeding (Adv. Pro. No. 10-04357 (SMB)) on
November 30, 2010, against Mr. Greiff in which the Trustee sought to recover withdrawals
totaling $2,803,787 from Mr. Greiff under both New York State Debtor Creditor Law and the
Bankruptcy Code as fraudulent transfers.

36.    Mr. Greiff moved to withdraw the reference of this case to the District Court in
June 2011.  Once the reference of the case was withdrawn by Judge Rakoff in December 2011,
Greiff moved to dismiss the complaints on a number of grounds, including that 11 U.S.C. section
546(e) protected the withdrawals from the Trustee's avoidance powers except for claims under
section 548(a)(1)(A). On April 30, 2012, the District Court entered an order dismissing all of the
Trustee's claims pursuant to section 546(e) except those under sections 548(a)(1)(A) and 550
[Dkt. No. 66] (the "Section 546(e) Order") and this ruling was upheld by the Court of Appeals
for the Second Circuit on December 8, 2014.  *Picard v. Ida Fishman Rev. Trust*, 773 F.3d 411
(2d Cir. 2014) (the "*Section 546(e) Decision*").   On June 22, 2015, the United States Supreme
Court denied the Trustee's petition for review.  The Trustee's claim for avoidance of transfers for
the two years prior to the filing of the bankruptcy was reduced to $2,595,940.

37.    The adversary proceeding returned to the Bankruptcy Court by Order dated
August 4, 2014. [Dkt. No. 73].  The Defendant timely filed his answer on or about August 17,
2015.

38.    Discovery has substantially closed.   The case has been set for trial and the
Defendant brings this motion to withdraw the reference because the Trustee's claim is an action
at law as to which Defendant has a constitutional right to a jury trial, which right was timely
asserted.   It is well settled that the Bankruptcy Court cannot enter a final judgment on the

14

Trustee's claims or conduct a jury trial where, as here, the Defendant has asserted the right to a

jury trial and have not consented to final adjudication by the Bankruptcy Court.  Therefore, the

Defendant is entitled to an order withdrawing the reference so that the case can be tried by jury

in the District Court.

## ARGUMENT

### I.    CAUSE EXISTS FOR WITHDRAWAL OF THE REFERENCE

#### A.    Mr. Greiff Has The Right to A Jury Trial

39.    Mr. Greiff is indisputably entitled to a jury trial for resolution of the pending

fraudulent transfer claim in this adversary proceeding.  The Seventh Amendment to the United

States Constitution provides:  "in Suits at common law, where the value in controversy shall

exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const., Amend. VII.

The Supreme Court has held that fraudulent transfer actions are actions at law as to which a

defendant is entitled to a jury trial under the Seventh Amendment. *See Granfinanciera, S.A. v.

Nordberg*, 492 U.S. 33 (1989).  *See also Messer v. Magee (In re FKF3, LLC)*, Case No. 13 CV

3601, 2016 WL 4540842, 2016 U.S. Dist. LEXIS 117258 (S.D.N.Y. Aug. 30, 2016).   In the

*Messer v. Magee* case, a defendant in a complex adversary proceeding involving fraudulent

transfer and preference claims, among others, renewed a motion to withdraw the reference after

pretrial proceedings.  The court, applying the factors for withdrawal of the reference from *Ori*on,

as modified by *Stern*, determined that as the bankruptcy court lacked constitutional authority to

finally adjudicate the trustee's claims against the defendant and the Seventh Amendment

required a jury trial on those claims, the reference had to be withdrawn.  *See also Buchwald v.

Renco Grp*., 539 B.R. 31 (S.D.N.Y. 2015) (reference withdrawn for jury trial on adversary

proceeding asserting claims of fraudulent conveyance); *Korea Trade Ins. Corp v. Neema

Clothing, Ltd,* 11 CV 8980 (JMF), 2015 WL 363569, 2015 U.S. Dist. LEXIS 9975 (S.D.N.Y.

Jan. 28, 2015) (district court must hold a (potentially, jury) trial on disputed issues of fact in fraudulent conveyance case.)  The analysis of the limitations on the bankruptcy court's authority to adjudicate the fraudulent transfer claim is applicable here and requires withdrawal of the reference.

> **B.     The Bankruptcy Court Lacks Final Adjudicative Authority Over the Trustee's Claim**

40.     Section 157(d) of the Bankruptcy Code provides: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. §157(d).  Section 157 does not define "cause" but the Second Circuit and courts within this jurisdiction have identified several factors to evaluate whether cause exists.  *See, e.g., In re Orion Pictures Corp.*, 4 F.3d 1095, 1001 (2d Cir. 1993).

41.     Before *Stern*,[9] the first and most important *Orion* factor was whether the claim or proceeding was core or non-core.  In *Stern*, the Supreme Court shifted the withdrawal-of-the-reference analysis to whether the claim to be adjudicated involves a "public" or a "private" right. If the claim involves private rights, Congress cannot vest final adjudicative power over it in the Bankruptcy Court consistent with Article III, whether the claim is "core" or "non-core."  Courts in this jurisdiction use the *Orion* framework as modified by *Stern*.  *See, e.g., Brown Publ. Co. Liquidating Trust v. Brown,* 15-MC-0531(JS)*,* 2017 WL 455418, 2017 U.S. Dist. LEXIS 14775, *9-10 (E.D. N.Y. Feb. 1, 2017) ("In the wake of *Stern*, however, 'the relevant inquiry under the first prong of the *Orion* test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter' "); *Messer v. Magee (In re*

---

[9] *Stern v. Marshall,* 564 U.S. 462 (2011).

10-04385-smb    Doc 119-3    Filed 03/03/20    Entered 03/03/20 10:57:03    Exhibit Am of Law In Support of Motion to Withdraw the Reference    Pg 23 of 29

10-04385-rdm    Doc 129-379    Filed 03/04/20    Entered 03/04/20 21:80:07    Pg 26 of 32

*FKF 3, LLC)*, No. 13-CV-3601 (KMK), 2016 U.S. Dist. LEXIS 117258, 2016 WL 4540842, at *20 (S.D.N.Y. Aug. 30, 2016) ("the first inquiry is whether the bankruptcy court has final adjudicative authority over the claims at issue under *Stern*'s constitutional analysis"); *Penson Fin Servs., Inc. v. O'Connell (In re Arbco Capital Mgmt., LLP)*, 479 B.R. 254, 262 (S.D.N.Y. 2012) ("This Court concludes, as have others in this district, that the relevant inquiry under the first prong of the *Orion* test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter.")

42.    It is also clear under *Stern*, entirely apart from the right to a trial by jury, that the Bankruptcy Court lacks authority to finally adjudicate the Trustee's remaining claim for recovery of an alleged fraudulent transfer, even though these claim is characterized as "core" under 28 U.S.C. § 157(b)(2).  The *Stern* Court adopted the *Granfinanciara* characterization and treatment of fraudulent transfer claims, as follows:

> In *Granfinanciera* we rejected a bankruptcy trustee's argument that a fraudulent conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a bankruptcy proceeding fell within the "public rights" exception. We explained that, "[i]f a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact,  and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court."

*Stern*, 564 U.S. at 492 (citations omitted).[10]

---

[10] *See also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46, 49 (S.D.N.Y. 2013); *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 469 (S.D.N.Y. 2011) (withdrawing the reference based on finding that "DSI's fraudulent conveyance counterclaim against Dechert is precisely the kind of claim found to involve only private rights in *Granfinanciera*"); *In re Coudert Bros. LLP*, 2011 WL 5593147, at **7-9 (S.D.N.Y. Sept. 23, 2011) (vacating final order of bankruptcy court entered prior to Stern with respect to fraudulent conveyance claim because "a claim of fraudulent conveyance implicates private rather than public rights"); *N.Y. Skyline, Inc. v. Empire State Building Tr. Co. (In re N.Y. Skyline, Inc.)*, 512 B.R. 159, 177 (S.D.N.Y. 2014) ("Fraudulent conveyance actions 'arise under' section 548 of the Bankruptcy Code and are listed as core in section 157(b)(2), but following *Stern*, courts have

43. Following *Granfinanciera* and *Stern* and in an effort to reconcile bankruptcy and district court statutory and constitutional jurisdiction in bankruptcy matters, the courts have constructed a narrow exception to the bankruptcy court's limited jurisdiction in cases where defendants failed to assert a right to a jury trial, there are no disputed facts for a jury to determine, and the defendants do not consent to final adjudication by the bankruptcy court. In such circumstances, the bankruptcy court may issue findings of fact and conclusions of law in an adversary proceeding subject to *de novo* review by the district court. *See e.g. Exec. Bens. Ins. Agency v. Arkison*, 573 U.S. 25 (2014). Those circumstances are not present in this case. The Defendant's right to a jury trial eliminates that exception.

44. The threshold determination of whether "cause" exists to withdraw the reference also involves the defendant's right to a jury trial. The *Orion* Court concluded that the Constitution, in particular the reexamination clause of the Seventh Amendment, that states: 'no fact tried by a jury, shall be otherwise re-examined in any Court of the United States," prohibited bankruptcy courts from holding jury trials in non-core or Stern-like matters. *Orion*, 4 F.3d at 1101.

45. As stated above, the Defendant has timely asserted, not waived his right to a jury trial; he does not consent to the entry of a final order by the bankruptcy court; and a key issue of fact in the fraudulent conveyance litigation is in dispute. Under these circumstances, the appropriate procedure for the determination of the fraudulent conveyance issue is withdrawal of the reference for jury trial in the district court.

---

held that bankruptcy judges may not enter final judgments in such cases absent the consent of the parties.").

## II.     THE DEFENDANT HAS NOT WAIVED HIS RIGHT TO A JURY TRIAL

46.     The Trustee will contend, as he has in other cases, that the Defendant has waived his right to a jury trial by filing a SIPA claim with the Trustee.   He also will contend that the causes of action asserted by the Trustee and the defenses raised by the customer implicate the claims allowance process.  His contentions are wrong on several counts.

### A.     There Is No Link Between Any Claim and The Adversary Proceeding

47.     In this Circuit, the right to a jury trial depends upon the necessary link between the cause of action and the claims allowance process.  A creditor's right to a jury trial depends not only upon whether the claimant filed a proof of claim, but also upon whether the dispute in which it requested a jury trial implicates the claims-allowance process.  For a waiver of a jury trial to be effective, the resolution of the litigation must affect the allowance of the creditor's claim or *vice versa*.  *See Germain v. Connecticut Nat. Bank,* 988 F.2d 1323, 1330 (2d Cir. 1993) ("We conclude that neither precedent nor logic supports the proposition that either the creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is filed."); *In re CBI Holding Co., Inc.*, 529 F.3d 432, 466 (2d Cir. 2008) ("[F]iling a proof of claim is a necessary but not sufficient condition to forfeiting a creditor's right to a jury trial."). The necessary link between the cause of action and the claims allowance process is absent here.

48.     In this case, as discussed above, the Trustee cannot legitimately claim that either the adversary proceeding affects the claims allowance process or vice versa, as the Defendant's claim had been disallowed by the Trustee more than a year before the adversary proceeding was filed.[11]  It follows under Second Circuit law that when the claim has been disallowed outside of

---

[11] The Complaint refers to the claim but acknowledges that Defendant did not object to the final determination disallowing the claim.

19

the adversary proceeding, the filing of the claim is treated as a nullity and a timely asserted right to a jury trial is preserved. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 455 (Bankr. S.D.N.Y. 2015) ("The Court's authority to enter a final judgment depends, therefore, on whether a particular defendant filed a claim that is still subject to allowance or disallowance through the claims allowance process. If the defendant has filed a claim and the Trustee is seeking to disallow the claim under § 502(d) based on the defendant's receipt of a fraudulent transfer, this Court can enter a final judgment on the fraudulent transfer claim.... Similarly, no § 502(d) disallowance claim would lie against a defendant who filed a claim that has been finally disallowed."); *Picard v. Estate of Igoin (In re BLMIS),* 525 B.R. 871, 887-88 (Bankr. S.D.N.Y. 2015) (Where the customer claims have been finally denied by the Trustee, the disposition of the adversary proceeding will not affect their disallowed claims.). *See also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46, 54 (S.D.N.Y. 2013) ("In this liquidation proceeding, the Bankruptcy Court has rejected many customer claims simply because the customer, according to the Trustee's calculations, had no net equity. [Thus,] [a]s in Stern, the Court has no 'reason to believe that the process of adjudicating' net equity claims 'would necessarily resolve' the Trustee's avoidance actions.") (citation omitted).

**B.    The Time of Filing Rule Is Inapplicable In This Case**

49.    As the U.S. Supreme Court has stated, "it has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537 (1824)). The "time of filing" rule does not bar a jury trial in this case. The Defendant's claim had been disallowed well before the adversary proceeding was commenced. In *Picard v. BAM LP (In re Bernard L. Madoff Investment Securities LLC*), 597 B.R. 466, Adv. Pro. No. 10-04390 (SMB) (Bankr. S.D.N.Y. Jan. 18, 2019), the Bankruptcy Court considered the issue of whether a bankruptcy

court loses its equitable jurisdiction over a fraudulent transfer action because the defendant-creditor withdraws his proof of claim after the adversary proceeding was filed but before the bankruptcy court has tried the matter. The bankruptcy court concluded that it acquired equitable jurisdiction over the Trustee's fraudulent transfer action when it was commenced under the time-of-filing rule, and the defendants' withdrawal of their claims did not destroy it.  This case is different.  At the time the adversary proceeding was filed, there was no claim pending.  The Defendant's acceptance of the Trustee's determination was not an attempt to manipulate jurisdiction over the adversary proceeding, which would not be filed for months. [12]

50.     It follows that when the claim has been disallowed prior to and outside of the adversary proceeding, the filing of the claim is treated as a nullity and a timely asserted right to a jury trial is preserved.  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 455 (Bankr. S.D.N.Y. 2015) ("The Court's authority to enter a final judgment depends, therefore, on whether a particular defendant filed a claim that is still subject to allowance or disallowance through the claims allowance process. If the defendant has filed a claim and the Trustee is seeking to disallow the claim under § 502(d) based on the defendant's receipt of a fraudulent transfer, this Court can enter a final judgment on the fraudulent transfer claim…. Similarly, no § 502(d) disallowance claim would lie against a defendant who filed a claim that has been finally disallowed."); *Picard v. Estate of Igoin (In re BLMIS),* 525 B.R. 871, 887-88

---

[12] It is for this reason that District Judge Broderick's recent decision in that same case, *Picard v. BAM L.P., (In re Bernard L. Madoff Inv. Secs. LLC),* 18-CV-9916 and 19-CV-812 (S.D.N.Y. Feb. 26, 2020), is not on point.  Both Judge Bernstein's and Judge Broderick's decisions in the *BAM* case hinged on the fact that the customer's claim was pending when the adversary proceeding was commenced and remained pending for years before a voluntary withdrawal. Apart from the precedent finding no bankruptcy court jurisdiction when the claim is withdrawn before the adversary has been commenced (*e.g., Smith v. Dowden,* 47 F.3d 940 (8th Cir. 1995)), obviously there can be no concern with "gamesmanship" after the claim has been disallowed long before any adversary proceeding is commenced.

(Bankr. S.D.N.Y. 2015) (Where the customer claims have been finally denied by the Trustee, the

disposition of the adversary proceeding will not affect their disallowed claims.)

### C.     The Outcome of the Adversary Proceeding Is Not Resolved By the Claim Disallowance

51.     Determining whether the customer has an allowed or disallowed claim does not

require the Court to conclusively resolve the issues that are raised by the avoidance action.  It

takes more than potentially overlapping facts or issues to confer jurisdiction over the common

law claim; the fraudulent conveyance claims must be resolved in the claims allowance process.

*Messer v. Magee (In re FKF 3, LLC)*, Case No. 13-CV-3601 (KMK), 2016 WL 4540842, 2016

U.S. Dist. LEXIS 117258, *27-32 (S.D.N.Y. Aug. 30, 2016) (overlap of some facts and issues

between the adversary proceeding and the proof of claim are insufficient to confer final

adjudicative authority on the bankruptcy court.).  In *Picard v. BAM LP (In re Bernard L. Madoff

Investment Securities LLC)*, Adv. Pro. No. 10-04390 (Bankr. S.D.N.Y. Sept. 11, 2019), the

Bankruptcy Court determined that the claims allowance process and the avoidance litigation "do not

involve the same claims or necessarily the same evidence."

52.     The District Court came to the same conclusion in another litigation brought by

the Trustee. *See Securities Inv. Protection v. Bernard L. Madoff Investment Securities LLC,* 490

B.R. 46 (S.D.N.Y. 2013).  The court highlighted the difference in issues and evidence between

the determination of a SIPA claim and the defendant's defense of the adversary proceeding

claims as follows:

> Because SIPA governs the liquidation of Madoff Securities' estate, different
> types of claims are implicated than in an ordinary liquidation under Title 11. In a
> SIPA proceeding, customers of the debtor can file claims to recover their "net
> equit[ies]," i.e., "the sum which would have been owed by the debtor to such
> customer if the debtor had liquidated, ... on the filing date[,] ... all securities
> positions of such customer." 15 U.S.C. §§ 78fff-2(b), 78ll(11). Determining the
> amounts of customers' net equity claims does not require the Bankruptcy Court to

conclusively resolve any of the issues that arise in an avoidance action, much less the action in its entirety. See generally 11 U.S.C. §§ 547, 548. In this liquidation proceeding, the Bankruptcy Court has rejected many customer claims simply because the customer, according to the Trustee's calculations, had no net equity. The Second Circuit has affirmed the Bankruptcy Court's decision and approved the Trustee's method for determining net equity claims. *See generally In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir.2011). Nonetheless, these decisions have not resolved important issues that avoidance actions raise, and thus they have not bound the parties as *res judicata*. Accordingly, the fact that certain defendants have filed net equity claims, standing alone, does not empower the Bankruptcy Court to finally decide the Trustee's avoidance actions. As in *Stern*, the Court has no "reason to believe that the process of adjudicating" net equity claims "would necessarily resolve" the Trustee's avoidance actions. 131 S.Ct. at 2617.

*Id*. at 54.

53.     In sum, the causes of action asserted by the Trustee and the defenses raised by the customer do not implicate the claims allowance process.  Similarly, the disallowance of the claim does not determine the outcome of the adversary proceeding.

## CONCLUSION

Based upon the above, Defendants respectfully request that this Court withdraw the reference of this adversary proceeding.

Dated: March 4, 2020
New York, New York

DENTONS US LLP

By:  */s/ Arthur H. Ruegger*
Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: arthur.ruegger@dentons.com
        carole.neville@dentons.com

*Attorneys for Defendant*