Baker & Hostetler LLP                       Hearing Date: April 29, 2020
45 Rockefeller Plaza                        Hearing Time: 10:00 a.m. (EST)
New York, New York 10111                    Objection Deadline: April 22, 2020
Telephone: (212) 589-4200                   Time: 4:00 p.m. (EST)
Facsimile: (212) 589-4201
Irving H. Picard
David J. Sheehan
Seanna R. Brown
Heather R. Wlodek

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. No. 08-01789 (SMB) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**THIRTY-SECOND APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP
FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
FROM AUGUST 1, 2019 THROUGH NOVEMBER 30, 2019**

# TABLE OF CONTENTS
## (continued)

**Page**

I.      PRELIMINARY STATEMENT ...................................................................1

II.     BACKGROUND .........................................................................................4

    A.      THE SIPA LIQUIDATION................................................................4

    B.      THE TRUSTEE, COUNSEL AND CONSULTANTS ........................4

    C.      PRIOR COMPENSATION ORDERS..................................................5

III.    SUMMARY OF SERVICES .......................................................................7

    A.      HARDSHIP PROGRAM ....................................................................7

    B.      THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ....8

IV.     DETAILED DESCRIPTION OF SERVICES .............................................8

    A.      MATTER 01 ......................................................................................9

        a.      Task Code 02: Bankruptcy Court Litigation.................................9

        b.      Task Code 03: Feeder Funds.......................................................11

        c.      Task Code 05: Internal Meetings with Staff ...............................11

        d.      Task Code 07: Billing and Trustee Reports.................................12

        e.      Task Code 08: Case Administration .............................................12

        f.      Task Code 11: Press Inquiries and Responses...........................13

        g.      Task Code 12: Document Review .............................................13

        h.      Task Code 13: Depositions and Document Productions by
the Trustee...................................................................................13

        i.      Task Code 14: International..........................................................14

        j.      Task Code 21: Allocation ...........................................................14

    B.      MATTER 05 – CUSTOMER CLAIMS ...........................................16

        a.      Customer Claims..........................................................................16

        b.      General Creditor Claims ..............................................................16

        c.      The Trustee Has Kept Customers Informed Of The Status
Of The Claims Process.................................................................17

    C.      MATTER 07 – MADOFF FAMILY .................................................18

    D.      MATTER 09 – FAIRFIELD GREENWICH.....................................19

# TABLE OF CONTENTS
## (continued)

**Page**

E.   MATTER 11 – COHMAD SECURITIES CORPORATION ..............................23

F.   MATTER 12 – PICOWER ....................................................................................25

   a.   Picard v. Marshall ....................................................................................26

   b.   Picard v. A&G Goldman Partnership .......................................................29

G.   MATTER 13 – KINGATE ...................................................................................30

H.   MATTER 21 – AVOIDANCE ACTION LITIGATION and MATTER 75 –
   GOOD FAITH/5A COHMAD REFERRED ACCOUNTS ................................31

   a.   Resolution of Good Faith Avoidance Actions ..........................................32

   b.   Summary Judgment Motions ....................................................................32

   c.   Trial-Related Motion Practice...................................................................34

I.   MATTER 29 – RYE/TREMONT .........................................................................39

J.   MATTER 30 – HSBC ..........................................................................................41

K.   MATTER 32 – LUXALPHA/UBS/LIF................................................................42

L.   MATTER 34 – CITIBANK ..................................................................................43

M.   MATTER 35 – NATIXIS .....................................................................................45

N.   MATTER 37 – ABN AMRO................................................................................46

O.   MATTER 39 – FORTIS .......................................................................................49

P.   MATTER 53 – MAGNIFY ..................................................................................50

Q.   MATTER 59 – STANLEY SHAPIRO..................................................................51

R.   MATTER 60 – AVELLINO & BIENES ..............................................................52

S.   MATTER 62 – SUBSEQUENT TRANSFERS ....................................................53

T.   MATTER 65 – LEGACY .....................................................................................54

U.   MATTER 71 – SQUARE ONE.............................................................................56

V.   MATTER 73 – BNP PARIBAS ............................................................................57

W.   MATTER 77 – EXTRATERRITORIALITY .........................................................57

V.   COMPENSATION REQUESTED.......................................................................................59

VI.   REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED ..................62

VII.   CONCLUSION......................................................................................................................64

**TO THE HONORABLE STUART M. BERNSTEIN**
**UNITED STATES BANKRUPTCY JUDGE:**

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and the chapter 7 case of Bernard L. Madoff ("Madoff"), individually (collectively, the "Debtor"), respectfully submits this thirty-second application (the "Application") on behalf of the Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing August 1, 2019 through and including November 30, 2019 (the "Compensation Period") of $30,026,127.96, and (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period of $316,885.66, and in support thereof, respectfully represents as follows:

**I.    PRELIMINARY STATEMENT**

1.    The work completed as counsel to the Trustee during the Compensation Period yielded significant results for BLMIS customers and the liquidation. Through pre-litigation and

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

other settlements, which were approved by the Bankruptcy Court and/or the District Court, the

Trustee has successfully recovered, or reached agreements to recover, approximately $14.334

billion as of January 31, 2020 for the benefit of all customers of BLMIS with an allowed claim.[2]

2.      The Trustee has made eleven interim distributions of customer property to date. *See*

discussion *infra* Section IV(A)(j). The Trustee has distributed over $13.930 billion to BLMIS

customers through February 28, 2020, inclusive of SIPC advances in the amount of nearly $848.20

million.[3] *See* discussion *infra* Section IV(A)(j).

3.      No administration costs, including the compensation of the Trustee and his counsel,

will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers.

Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy

Code is not applicable in a SIPA liquidation, *see* § 78eee(b)(5)(C) of SIPA, no applications filed

by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for

the benefit of BLMIS customers. Rather, all fees, expenses, and administrative costs incurred by

the Trustee and his counsel including, but not limited to, B&H, various international special

counsel retained by the Trustee (collectively referred to herein as "International Counsel"),

including Browne Jacobson LLP ("Brown Jacobson"), Soroker-Agmon ("Soroker"), Williams

Barristers & Attorneys ("Williams Barristers"), various special counsel to the Trustee (collectively

referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels

Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and consultants, are paid

out of administrative advances made by SIPC, as SIPA plainly directs. As Judge Lifland affirmed:

---

[2] In general, figures will be reported as of November 30, 2019, unless otherwise noted.

[3] SIPC makes advances to satisfy customer claims before the Trustee recovers funds. Since the Trustee has recovered funds to satisfy customers up to $1,588,000, SIPC is reimbursed for the advances to customers whose claims have been fully satisfied to date. 1,469 BLMIS accounts have been fully satisfied.

"Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.      As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.      In a SIPA liquidation proceeding such as this, where the general estate is insufficient to pay trustee and counsel compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration. *See* SIPA §§ 78eee(b)(5)(C) and 78fff-3(b)(2). SIPC staff has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered. Each month, SIPC staff, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein. Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

6.      During the hearing on the Eighth Interim Fee Application, Judge Lifland acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world. It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

3

7.      No single document can capture all of the tasks engaged in by the Trustee and B&H

since their appointment on December 15, 2008. Hundreds of thousands of hours have been

expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and

advance the interests of all claimants by litigating and settling cases for the return of customer

property ("Customer Property"). Moreover, the Trustee has vigorously defended the estate with

respect to a number of litigations filed against it and against his protection of Customer Property.

The following discussion and materials attached to this Application cover the major categories of

services for which allowance of compensation is sought.

## II.    BACKGROUND

### A.      THE SIPA LIQUIDATION

8.      The Trustee and B&H's prior interim fee applications, each of which is fully

incorporated herein, have detailed the circumstances surrounding the filing of this case and the

events that have taken place during prior phases of this proceeding.

### B.      THE TRUSTEE, COUNSEL AND CONSULTANTS

9.      The Trustee and B&H's prior interim fee applications have detailed the description

of the Trustee's background and experience.

10.     In rendering professional services to the Trustee, B&H has utilized a legal team

comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax,

corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

11.     The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long

in duration, and broad in its geographical reach. The Trustee, with the assistance of his counsel,

has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related

individuals and entities. To this end, the Trustee has engaged not only the services of counsel, but

also those of forensic accountants and legal experts, including, but not limited to, AlixPartners

LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

### C.    PRIOR COMPENSATION ORDERS

12.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

| Applications | Compensation Period | Orders Entered[4] |
|---|---|---|
| First Application (ECF Nos. 320, 321) | December 11, 2008 to May 31, 2009 | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | June 1, 2009 to September 30, 2009 | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | October 1, 2009 to January 31, 2010 | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | February 1, 2010 to May 31, 2010 | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | June 1, 2010 to September 30, 2010 | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | October 1, 2010 to January 31, 2011 | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | February 1, 2011 to May 31, 2011 | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | June 1, 2011 to September 30, 2011 | January 2, 2013 (ECF No. 5181);[5] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | October 1, 2012 to January 31, 2012 | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | February 1, 2012 to June 30, 2012 | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |

---

[4] On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee. The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCACreque, an additional $0.60 became due and owing to that firm.

[5] This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

| **Applications** | **Compensation Period** | **Orders Entered**[4] |
|---|---|---|
| Eleventh Application (ECF No. 5333) | July 1, 2012 to November 30, 2012 | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | December 1, 2012 to April 30, 2013 | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | May 1, 2013 through July 31, 2013 | December 17, 2013 (ECF No. 5605) |
| Fourteenth Application (ECF No. 5980) | August 1, 2013 through November 30, 2013 | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | December 1, 2013 through March 31, 2014 | August 28, 2014 (ECF No. 7825) |
| Sixteenth Application (ECF No. 8549) | April 1, 2014 through July 31, 2014 | December 22, 2014 (ECF No. 8867) |
| Seventeenth Application (ECF No. 9583) | August 1, 2014 through November 30, 2014 | April 16, 2015 (ECF No. 9823) |
| Eighteenth Application (ECF No. 10814) | December 1, 2014 through March 31, 2015 | August 27, 2015 (ECF No. 11148) |
| Nineteenth Application (ECF No. 12089) | April 1, 2015 through July 31, 2015 | December 18, 2015 (ECF No. 12292) |
| Twentieth Application (ECF No. 12958) | August 1, 2015 through November 30, 2015 | April 28, 2016 (ECF No. 13180) |
| Twenty-First Application (ECF No. 13751) | December 1, 2015 through March 31, 2016 | September 8, 2016 (ECF No. 13990) |
| Twenty-Second Application (ECF No. 14456) | April 1, 2016 through July 31, 2016 | December 23, 2016 (ECF No. 14778) |
| Twenty-Third Application (ECF No. 15355) | August 1, 2016 through November 30, 2016 | May 10, 2017 (ECF No. 15984) |
| Twenty-Fourth Application (ECF No. 16367) | December 1, 2016 through March 31, 2017 | August 24, 2017 (ECF No. 16562) |
| Twenty-Fifth Application (ECF No. 16886) | April 1, 2017 through July 31, 2017 | December 21, 2017 (ECF No. 17072) |
| Twenty-Sixth Application (ECF No. 17337) | August 1, 2017 to November 30, 2017 | April 25, 2018 (ECF No. 17524) |
| Twenty-Seventh Application (ECF No. 17763) | December 1, 2017 to March 31, 2018 | August 30, 2018 (ECF No. 17941) |
| Twenty-Eighth Application (ECF No. 18180) | April 1, 2018 to July 31, 2018 | December 20, 2018 (ECF No. 18324) |
| Twenty-Ninth Fee Application (ECF No. 18562) | August 1, 2018 to November 30, 2018 | April 25, 2019 (ECF No. 18696) |
| Thirtieth Fee Application (ECF No. 18867) | December 1, 2018 to March 31, 2019 | September 6, 2019 (ECF No. 18984) |

6

| **Applications** | **Compensation Period** | **Orders Entered**[4] |
|---|---|---|
| Thirty-First Fee Application (ECF No. 19116) | April 1, 2019 to July 31, 2019 | December 12, 2019 (ECF No. 19219) |

## III.    SUMMARY OF SERVICES

13.    A SIPA proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers. Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

### A.    HARDSHIP PROGRAM

14.    As of November 30, 2019, the Trustee had received 462 applications from avoidance action defendants relating to 308 adversary proceedings and 648 defendants. After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 281 Hardship Program applicants-defendants from avoidance actions. As of November 30, 2019, there were 14 Hardship Program applicants-defendants still under review and 367 applicants-defendants were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending. Hardship applications continue to be submitted.

### B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY

15.    Without the need for protracted litigation, during the Compensation Period, the Trustee settled 12 cases for $888,855,150.43. Through the end of the Compensation Period, the Trustee had successfully recovered approximately $14.300 billion.

16.    The Trustee entered into settlements subsequent to the Compensation Period that will bring additional funds into the Customer Fund.

17.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, will result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

18.    Through the end of the Compensation Period, the Trustee recovered $536,092,384.27 as a result of preferences and other settlements that were made pursuant to agreements subject to the net equity dispute. The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

## IV.    DETAILED DESCRIPTION OF SERVICES

19.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested. All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims. The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

20.    Matter Number 01 is the general matter number used for tasks by the Trustee and B&H. Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

8

21.    Matter Numbers 03-77 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities. In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and engage in discussions with counsel for defendant(s). Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

A.    **MATTER 01**

22.    This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

a.    **Task Code 02: Bankruptcy Court Litigation**

23.    This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

24.    During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations. They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations including developments in Ponzi law, fraudulent transfer law, bankruptcy matters, privilege, evidence, and rules regarding experts and expert testimony.

25.    Several customers, including claimant Mr. Aaron Blecker, objected to the Trustee's denial of their net equity claims because they disputed whether they received funds that appear to be identified on BLMIS customer account statements as "PW," or "Profit Withdrawals."

26.    Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions. Accordingly, the Trustee instituted an omnibus proceeding

9

to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper. (ECF No. 10266).

27.    Following extensive briefing, discovery, and motion practice, the Court held a trial on the matter on January 19, 2018. After hearing testimony from the Trustee's professionals, Mr. Blecker's son, and BLMIS employees, and consideration of the BLMIS books and records offered into evidence, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS customer statement indicated that the customer received a cash distribution in the amount of the PW Transaction. Because claimant Mr. Blecker failed to provide any credible, contrary evidence that the "PW" Transactions on his customer statements were not received, he failed to sustain his burden of proving the amount of his customer claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513 (Bankr. SDNY 2018). The Court entered its Order Affirming the Trustee's Determinations Denying Claims and Overruling the Objections of Participating Claimant Aaron Blecker on August 3, 2018. (ECF No. 17878).

28.    An appeal was taken to the District Court and was fully briefed by January 18, 2019. (ECF Nos. 18, 19, 20, 23, 24). Appellants challenged this Court's application of the Federal Rules of Evidence in admitting and relying on the BLMIS books and records in finding that the Profit Withdrawal Transactions were properly treated as debits under the Net Investment Method. On August 16, 2019, the District Court affirmed the Bankruptcy Court's decision. *Blecker v. Picard*, 2019 WL 3886721 (Aug. 16, 2019). The District Court found no abuse of discretion in the decision; specifically, it found that this Court rigorously and properly applied the Federal Rules of Evidence and its admission of BLMIS's books and records as business records was proper. The

District Court further held that the burden to overcome the Trustee's claim determination was Mr. Blecker's and he failed to do so.

29.     On September 13, 2019, an appeal of the District Court's decision was taken to the Second Circuit. *Blecker v. Picard*, Docket No. 19-2988. During the Compensation Period, counsel to the Trustee coordinated with counsel for the Appellants regarding the filing of the joint appendix. On December 27, 2019, Appellants filed their opening brief, repeating their claims that this Court failed to apply the Federal Rules of Evidence, improperly shifted the burden of proof to Mr. Blecker, and that Mr. Blecker could not have ratified the transactions in his BLMIS account that occurred before 1992.

30.     The Trustee and SIPC's opposition briefs are due on March 27, 2020.

### b.     Task Code 03: Feeder Funds

31.     This categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors. The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and prosecute actions against such feeder funds for the recovery of Customer Property. Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

### c.     Task Code 05: Internal Meetings with Staff

32.     This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals. Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

11

### d.    Task Code 07: Billing and Trustee Reports

33.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### e.    Task Code 08: Case Administration

34.    This category relates to time spent assisting the efficient administration of the case.

35.    The Trustee filed several motions before this Court that govern the treatment of and procedures related to the efficient litigation of these actions. These procedures ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

36.    On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings. (ECF No. 4469). This Court entered the Order on December 5, 2011. (ECF No. 4560).

37.    On October 28, 2011, this Court entered an Order Granting Supplemental Authority to Stipulate to Extensions of Time to Respond and Adjourn Pre-Trial Conferences to March 16, 2012. (ECF No. 4483). Supplemental Orders were entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012 (ECF No. 4483), July 18, 2014 (ECF No. 5358), January 16, 2015 (ECF No. 7037), July 17, 2015 (ECF No. 8762), July 15, 2016 (ECF No. 12312), December 23, 2016 (ECF No. 13601), July 31, 2017 (ECF No. 14447), December 31, 2017 (ECF No. 16169), June 27, 2018 (ECF No. 16718), December 19, 2018 (ECF No. 17560), and December 18, 2019 (ECF No. 18093). On September

23, 2019, a supplemental Order was entered granting authority to extend time to respond to the

complaint and adjourn the pre-trial conferences through December 16, 2020 (ECF No. 19027).

### f.    Task Code 11: Press Inquiries and Responses

38.    This category relates to time spent by the Trustee, B&H attorneys, and

paraprofessionals in responding to press inquiries, preparing and issuing press releases, and

preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the

recovery of funds.

### g.    Task Code 12: Document Review

39.    This category relates to time spent by the Trustee and B&H attorneys reviewing

and analyzing BLMIS documents and documents received from parties and third parties in

response to the hundreds of letters and subpoenas issued by the Trustee, in order to assess relevance

to case-wide strategies and to identify and develop evidence in support of the Trustee's claims and

defenses, as well as other discovery-related tasks that cross multiple cases.

### h.    Task Code 13: Depositions and Document Productions by the Trustee

40.    This category generally relates to time spent by the Trustee and B&H attorneys

conducting discovery that touches upon more than one matter, including team meetings,

discussions and strategizing among Discovery Management Team case liaisons; research and

analysis of issues with potential case-wide implications; creation and management of document

databases, filing systems and related reference materials; creation and revision of discovery

resources and procedural guidance; analysis and coordination of discovery affirmatively produced

by the Trustee in avoidance actions; and responding to discovery propounded to the Trustee by

various third parties and defendants in avoidance actions.

i.      **Task Code 14: International**

41.      The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Guernsey, Ireland, Israel, Liechtenstein, Luxembourg, Spain, and Switzerland. These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

42.      This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions. The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

43.      In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

j.      **Task Code 21: Allocation**

44.      This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

45.      The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

14

46.    The Trustee filed eleven motions seeking entry of an order approving allocations

of property to the Customer Fund and authorizing pro rata interim distributions of Customer

Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through Compensation Period | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $884.6 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.431 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $900.7 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $605.9 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[6] | $522.2 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/2015 | $345.472 million[7] | $1.567 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/2016 | $247.013 million | $246.7 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/2017 | $342.322 million | $326.4 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/2018 | $1.303 billion | $716.3 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/2019 | $515.974 million | $512.1 million | 2.729% | 18295 | 18398 |
| 11 | 2/28/2020 | $988.770 million | N/A | 1.975% | 19245 | 19226 |
| TOTAL | N/A | $14.294 billion | $12.713 billion | 68.608% | N/A | N/A |

47.    On February 28, 2020, the Trustee distributed approximately $369.258 million, or

1.975% of each BLMIS allowed claim through the completion of the Eleventh Interim

Distribution, unless the claim had been fully satisfied. This represents a significant milestone in

this litigation, with 1,469 BLMIS accounts fully satisfied.[8] The 1,469 fully satisfied accounts

---

[6]The total amount allocated in the Fifth Allocation and Fifth Interim Distribution Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[7]This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Distribution Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

[8]Any customer with an allowed claim of $1,588,000 has been fully satisfied.

15

represent more than 64% of accounts with allowed claims. When combined with the prior ten distributions, and $848.2 million in advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"), the Trustee has distributed approximately $13.930 billion to BLMIS customers through February 28, 2020, or 68.608% of each BLMIS allowed customer claim.

## B.    MATTER 05 – CUSTOMER CLAIMS

### a.    Customer Claims

48.    During the Compensation Period, the Trustee allowed $1,768,438,699.43 in customer claims, bringing the total amount of allowed claims as of November 30, 2019 to $19,414,356,894.42. As of November 30, 2019, the Trustee has paid or committed to pay $848,199,334.97 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

49.    As of November 30, 2019, 18 claims relating to 12 accounts remained "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### b.    General Creditor Claims

50.    As of November 30, 2019, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 450 claims and $1.7

billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265 million. At this time, the BLMIS general estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers. If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e). All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate. The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

       **c.**       **The Trustee Has Kept Customers Informed Of The Status Of The Claims Process**

51.      Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

52.      The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an

FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

53.    In addition, the Trustee Website allows claimants and third parties to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of November 30, 2019, the Trustee and his professionals had received and responded to more than 7,100 e-mails via the Trustee website from BLMIS customers and their representatives and fielded thousands of calls from claimants and their representatives.

54.    In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

### C.    MATTER 07 – MADOFF FAMILY

55.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing numerous avoidance actions against members of the Madoff family and Madoff-related business entities.

56.    During the Compensation Period, the Trustee continued to manage and attempt to liquidate certain fund and business interests transferred pursuant to the June 23, 2017 Stipulation and Order of Settlement (the "Stipulation") entered into between and among the Trustee, the U.S. Attorney's Office for the Southern District of New York (the "Government"), and the Estates of Andrew H. Madoff and Mark D. Madoff (the "Estates"). The Stipulation, which resolved all of the Trustee's claims against the Estates in *Picard v. Andrew H. Madoff*, Adv. Pro. No. 09-01503 (SMB), and against various Madoff-related business entities in related adversary proceedings, was approved by the Court on July 24, 2017. (ECF No. 311). The Trustee and the Government share all assets received under the Stipulation equally.

18

57.     As of July 31, 2019, the last day of the prior Compensation Period, the Trustee had received $13,901,021.02 under the Stipulation. As of November 30, 2019, the Trustee received an additional $216,840.79 from the Estates and distributions of certain of the assets under management and liquidation.

### D.     MATTER 09 – FAIRFIELD GREENWICH

58.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009). This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions, as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

59.     On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators") (ECF No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the

amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

60.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

61.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y.), (ECF No. 107). In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

62.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to common briefing and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court. As of July 31, 2014, the District

20

Court had issued decisions on all issues subject to common briefing and remanded the cases to this

Court for further findings based on the legal standards set forth in the District Court's decisions.

63.    On June 6, 2012, the Trustee filed additional recovery actions against entities or

persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*,

Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702

(SMB) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.).

The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court. None

of the defendants in the three actions have yet responded to the Trustee's complaints.

64.    On November 22, 2016, this Court issued its decision on the extraterritoriality

motion to dismiss. *See* discussion *infra* Section IV(W). Under the decision, some of the claims

against the moving defendants in the Fairfield, Barrenche, and RD Trust actions were dismissed.

Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of

certain non-moving defendants to the extraterritoriality motion to dismiss. The parties agreed to

consent to the entry of final judgments on the Court's extraterritoriality decision. Finally, the

parties consented to direct appeal of the extraterritoriality decision to the Second Circuit. On March

16, 2017, the Trustee filed his notice of appeal in the Fairfield, Barrenche, and RD Trust actions.

(ECF Nos. 229, 97, 93). On September 27, 2017, the Second Circuit issued an order granting the

parties' request for certification for direct appeal of the appeal of the extraterritoriality decision.

*Picard v. Banque Lombard Ordier & Cie SA.*, No. 17-1294 (2d Cir.), (ECF No. 388). On February

25, 2019, the Second Circuit reversed this Court's November 22, 2016 ruling. *See* discussion *infra*

Section IV(W).

65.    On January 24, 2019, in the action filed by the Joint Liquidators against the

Fairfield management entities and individuals, *In re Fairfield Sentry Limited, et al.*, Adv. No. 10-

13164 (SMB), the parties entered a stipulation substituting the Trustee as the plaintiff. (ECF No. 87). On February 22, 2019, the Trustee filed a motion to amend the complaint with an attached proffered Amended Complaint. (ECF No. 90).

66.     On March 25, 2019, this Court approved a settlement between the Trustee and certain Fairfield management defendants: Lourdes Barrenche, Robert Blum, Cornelius Boele, Gregory Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barrenche, Inc., Dove Hill Trust, Fortuna Asset Management, and Selecta Financial Corporation. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, Order (S.D.N.Y., March 25, 2019). (ECF No. 270). The Trustee's claims against the remaining Fairfield management defendants remain pending.

67.     On June 18, 2019, the Trustee and the remaining defendants informed this Court they had agreed to enter mediation. (ECF No. 272). As a result, at the parties' request, this Court ordered the June 26, 2019 pretrial conference to be continued to December 18, 2019. (ECF No. 273).

68.     On June 19, 2019, again at the parties' request, this Court entered an order consolidating the actions *Picard v. Fairfield Investment Fund Limited*, No. 09-01239 and *Picard v. Fairfield Greenwich Capital Partners*, No. 12-01702. The consolidated action shall proceed under *Picard v. Fairfield Investment Fund Limited,* No. 09-01239. (ECF No. 274).

69.     On September 25, 2019, this Court held a hearing with the Trustee and the remaining defendants in the consolidated actions regarding a future case schedule. At the hearing, the Trustee and the remaining defendants informed this Court they had agreed to enter mediation with Richard Davis as the mediator. The Court ordered the parties to report on the progress of the

mediation at a hearing to be held on November 26, 2019 and further ordered all matters held in abeyance until December 31, 2019. (ECF No. 275).

70.    Discussions are ongoing. The parties are meeting with the mediator on March 18, 2020.

### E.    MATTER 11 – COHMAD SECURITIES CORPORATION

71.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation ("Cohmad"), its principals, certain employees of Cohmad, and their family members who held BLMIS IA Accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Morton Kurzrok*, Adv. Pro. No. 09-01305 (SMB) (Bankr. S.D.N.Y.).[9]

72.    In November 2016, a motion was filed under Federal Rule of Bankruptcy Procedure 9019 for court approval of a settlement with certain defendants, including Cohmad Securities Corporation, and Marcia Cohn and Marilyn Cohn, in their individual capacities and as co-executors of the Estate of Maurice Cohn. The Court approved that settlement on November 29, 2016. Those defendants were dismissed from this adversary proceeding on January 3, 2017.

73.    The Trustee also entered into settlement agreements throughout 2016 to 2019 with various defendants. These defendants were ultimately dismissed from this adversary proceeding.

---

[9] The Adversary Proceeding is currently captioned *Picard v. Morton Kurzrok*, Adv. Pro. No. 09-01305 (SMB), as a result of the Trustee's settlement with and dismissal from this adversary proceeding of, among others, Cohmad.

In addition, several other defendants were voluntarily dismissed from this adversary proceeding in connection with, among other things, negotiations.

74.    On August 26, 2019, a stipulation and order for voluntary dismissal was entered by the Court (ECF No. 405) dismissing defendants The Estate of Stanley Merwin Berman a/k/a Stanley M. Berman, Joyce Berman individually and in her capacity as Executor of The Estate of Stanley Merwin Berman a/k/a Stanley M. Berman, and S & J Partnership from the adversary proceeding after the parties entered into a settlement agreement and release..

75.    On September 10, 2019, the Court entered an amended case management plan (ECF No. 406), which allowed for the depositions of certain defendants, including Morton Kurzrok.

76.    On October 2, 2019, a stipulation and order for voluntary dismissal was entered by the Court (ECF No. 407) dismissing defendant Jane M. Delaire a/k/a Jane Delaire Hackett from the adversary proceeding after the parties entered into a settlement agreement and release.

77.    On October 23, 2019, a stipulation and order for voluntary dismissal was entered by the Court (ECF No. 413) dismissing defendants Richard Spring, Jeanne T. Spring Trust, and The Spring Family Trust from the adversary proceeding after the parties entered into a settlement agreement and release.

78.    On January 6, 2020, the Trustee filed a letter jointly with counsel for Morton Kurzrok informing the Court that the Trustee and Morton Kurzrok have reached a settlement in principle and requesting a 60-day extension of all outstanding discovery deadlines in order to finalize the settlement agreement and release (ECF No. 415). On the same day, the Court "so ordered" the Trustee's letter and granted the 60-day extension (ECF No. 417).

79.    Currently, Morton Kurzrok is the only remaining defendant in this adversary proceeding.

### F.    **MATTER 12 – PICOWER**

80.    This matter categorizes time spent by the Trustee and B&H attorneys in connection

with the Trustee's litigation and settlement with Jeffry M. Picower ("Picower") and Barbara

Picower, both individually and as trustees for various foundations, and related entities

(collectively, the "Picower Parties"), and related litigation. The Trustee's lawsuit sought recovery

of nearly $7 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act,

and other applicable law for preferences, fraudulent conveyances, and damages in connection with

certain transfers of property by BLMIS to or for the benefit of the Picower Parties. *Picard v.*

*Picower*, Adv. No. 09-01197 (SMB) (Bankr. S.D.N.Y.).

81.    On January 13, 2011, this Court entered an Order (the "Picower Settlement Order")

approving the $5 billion settlement between the Trustee and the Estate of Jeffry M. Picower et al.

(ECF No. 43). BLMIS claimants Adele Fox and Susanne Stone Marshall (the "Fox Plaintiffs"),

who had brought putative class actions against the Picower Parties in Florida in 2010, appealed

the Picower Settlement Order. (ECF Nos. 45, 49). On March 26, 2012, United States District Judge

John G. Koeltl issued an Opinion and Order affirming this Court's Picower Settlement Order and

permanently enjoining certain duplicative or derivative actions against the Picower Parties. *Fox v.*

*Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012). On further appeal, the Second Circuit affirmed the

District Court's decision on January 13, 2014. *See In re Bernard L. Madoff Inv. Sec., LLC*, 740

F.3d 81 (2d Cir. 2014).

82.    A forfeiture action against Picower's estate resulted in the additional recovery of

more than $2.2 billion to the United States Government (the "Picower Forfeiture"), which is

intertwined with the Trustee's Picower settlement. *See United States v. $7,206,157,717 On Deposit*

*at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 10 Civ. 09398

(TPG) (S.D.N.Y.). On May 23 and 24, 2011, United States District Judge Thomas P. Griesa

entered a final order of forfeiture in favor of the United States. (ECF Nos. 16, 17). The Second

Circuit dismissed an appeal of Judge Griesa's order, and on June 8, 2012, a final order of forfeiture

was issued. *See United States v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the

Account Numbers Set Forth on Schedule A*, No. 11-2898 (2d Cir. June 8, 2012), (ECF No. 85).

83.     Because the time to appeal the final order of forfeiture expired, the settlement

amount of $5 billion was transferred to the BLMIS estate and the Customer Fund.

84.     The Trustee has litigated to defend and enforce the Permanent Injunction multiple

times against two primary sets of putative class action plaintiffs. Detail concerning those litigations

can be found in the Trustee's prior fee applications.

85.     B&H attorneys are currently defending an appeal of this Court's decision enjoining

third party actions that the Trustee has argued are subject to the permanent injunction issued in

connection with the Trustee's settlement with the Picower Parties (the "Permanent Injunction").

During the Compensation Period there were developments in the District Court and the Second

Circuit.

### a.      Picard v. Marshall

86.     The Trustee has sought to enjoin multiple actions brought over the years by the Fox

Plaintiffs against the Picower Parties in view of the Permanent Injunction, which precludes claims

that duplicate or derive from claims the Trustee brought or could have brought against the Picower

Parties. This Court, the District Court, and the Second Circuit have ruled in prior actions by the

Fox Plaintiffs that their proposed lawsuits violated the Permanent Injunction. *See e.g., Picard v.

Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010), *aff'd, Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y.

2012), *aff'd, In re Marshall*, 740 F.3d 81 (2d Cir. 2014); *Picard v. Marshall (In re Bernard L.

Madoff)*, 511 B.R. 375 (Bankr. S.D.N.Y. 2014), *aff'd, Fox v. Picard (In re Bernard L. Madoff Inv.

Sec. LLC)*, 531 B.R. 345 (S.D.N.Y. 2015).

87.     On August 29, 2015, while the appeal to the Second Circuit by the Fox Plaintiffs

was still pending relating to their last proposed complaint, the Fox Plaintiffs brought a declaratory

judgment action and motion seeking to file a third amended complaint against the Picower Parties

("*Fox III*"). The Fox Plaintiffs again alleged that the Picower Parties were control persons of

BLMIS and incorporated testimony from a recently disclosed deposition of Bernard Madoff. In

support of their claim, the Fox Plaintiffs also introduced on reply a declaration from Bernard

Madoff in an unrelated case, which made references to Mr. Picower. The Fox Plaintiffs also stated

in their papers that they intended to seek Bernard Madoff's deposition. The Trustee and Picower

Parties objected to the Fox Plaintiffs' motion on the ground that the *Fox III* complaint was, like

the predecessor complaints, duplicative and derivative of the Trustee's complaint, and further

objected to the inclusion of Bernard Madoff's declaration.

88.     Counsel for the Fox Plaintiffs then moved in this Court on March 9, 2016 in an

unrelated matter for the deposition of Bernard Madoff. The Trustee and Picower Parties objected

to the motion in part on the ground that counsel would improperly seek testimony concerning Mr.

Picower, which was irrelevant to the matter. On March 23, 2016, this Court issued a bench ruling

allowing counsel to depose Mr. Madoff, but prohibited any reference to Mr. Picower during the

deposition.

89.     On March 7, 2017, after oral argument, this Court issued a memorandum decision,

enforcing the Permanent Injunction, denying the Fox Plaintiffs' motion for summary judgment

and dismissing the *Fox III* complaint. *Marshall v. Capital Growth Co.*, 568 B.R. 203 (Bankr.

S.D.N.Y.)  The Court found that many of the allegations in *Fox III* were identical to the allegations

in *Fox II*, and the damages sought were likewise the same. *Id.* at 210. With respect to the new

allegations in *Fox III* about Mr. Picower's alleged role as a control person, the Court found that

27

the allegations were "practically identical" to the allegations in *Goldman III* (discussed further

below), which this Court, the District Court, and the Second Circuit ruled were conclusory, as well

as common to all BLMIS customers and thus owned by the Trustee. *Id.* at 211-13. The allegations

likewise failed to identify any conduct by the Picower Parties that was directed at a member of the

putative class. *Id.* at 217. This Court further held that Bernard Madoff's deposition and declaration

did not supply any facts that would support independent claims. *Id.* at 213-17.

90.     On appeal, the District Court issued a decision on March 19, 2019 affirming this

Court's decision and held that the *Fox III* complaint did not "give rise to a colorable claim that

Picower controlled BLMIS" in its misrepresentations. *Secs. Inv'r Prot. Corp. v. Bernard L. Madoff

Inv. Secs. LLC*, 598 B.R. 102, 106 (S.D.N.Y. 2019). The District Court recognized that the "vast

majority" of the *Fox III* complaint was copied almost verbatim from previous iterations of the

complaint, and thus the complaint "repeat[ed] and repackage[ed]" allegations rejected by eleven

other court decisions. *Id.* at 106. As to the remaining propping-up and counterparty allegations,

the District Court "wholly agree[d]" with the Second Circuit's findings concerning *Goldman III*

(discussed below) that neither set of allegations demonstrated that Picower controlled BLMIS

within the meaning of Section 20(a) and were nothing more than an attempt to "plead around" the

Injunction. *Id.* at 113-14 (citing *In re Bernard L. Madoff Inv. Sec. LLC ("Goldman III")*, 739 F.

App'x 679, 685-86 (2d Cir. June 27, 2018)). The District Court further affirmed this Court's

findings concerning Bernard Madoff's deposition and declaration. *Id.* at 115-17.

91.     The Fox Plaintiffs appealed the District Court's decision to the Second Circuit. *See

In re Bernard L. Madoff Inv. Secs. LLC*, No. 19-995 (2d Cir.). During the Compensation Period,

counsel for the Trustee prepared and filed an appellate brief and conferred with and reviewed the

brief filed by counsel for the Picower Parties.

28

### b.    Picard v. A&G Goldman Partnership

92.    The Trustee has also defended and enforced the Permanent Injunction against actions brought by another set of third-party plaintiffs, the "Goldman Plaintiffs." As with the Fox Plaintiffs, this Court, the District Court, and the Second Circuit have ruled in prior actions by the Goldman Plaintiffs that their proposed lawsuits violated the Permanent Injunction. *See e.g., Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 477 B.R. 351 (Bankr. S.D.N.Y. 2012), *aff'd sub nom.*, *A & G Goldman P'ship v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 12 Civ. 6109 (RJS), 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013); *Picard v. Marshall (In re Bernard L. Madoff)*, 511 B.R. 375 (Bankr. S.D.N.Y. 2014), *aff'd, Fox v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 531 B.R. 345 (S.D.N.Y. 2015); *Picard v. A & G Goldman P'ship (In re Bernard L. Madoff)*, 546 B.R. 284 (Bankr. S.D.N.Y. 2016), *aff'd, A & G Goldman P'ship v. Capital Growth Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 565 B.R. 510 (S.D.N.Y. 2017).

93.    On June 27, 2018, the Second Circuit issued a decision affirming the judgments of the Bankruptcy and District Courts enjoining the latest proposed complaint brought by the Goldman Plaintiffs, the *Goldman III* complaint. *See In re Bernard L. Madoff Inv. Sec. LLC*, 739 F. App'x 679 (2d Cir. June 27, 2018). The Second Circuit held that the facts alleged in *Goldman III* did not give rise to a colorable claim that Picower controlled BLMIS, and held instead that the nature of the legal claim was a fraudulent transfer claim and thus derivative of the Trustee's claims. The Second Circuit held that the allegations showed only that Picower's actions injured the estate by removing assets that could have been used to repay other creditors and investors, and thus were "inseparable from, and predicated upon, [the] legal injury to the estate." *Id.* at 685. The Court further held that additional allegations were conclusory, did not support an inference of control, and amounted to "nothing more than an attempt to plead around the injunction." *Id.*

### G.    **MATTER 13 – KINGATE**

94.    This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law, and other applicable law of approximately $926 million in initial fraudulent transfers that BLMIS made to Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," together with Kingate Global, the "Kingate Funds"). The proceeding before the Court is captioned as *Picard v. Federico Ceretti*,[10] Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.). The Kingate Funds are in liquidation proceedings in the BVI and Bermuda under the auspices of court-appointed joint liquidators. Kingate Global and Kingate Euro each filed a customer claim in the SIPA proceeding in the combined total amount of approximately $800 million. The Trustee sought to avoid and recover the fraudulent transfers and equitably subordinate the Kingate Funds' customer claims. Until this proceeding was resolved, the customer claims were temporarily disallowed under section 502(d) of the Bankruptcy Code.

95.    During the Compensation Period, the Trustee implemented the terms of the Settlement Agreement as set out in his July 17, 2019 Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Agreement by and among the Trustee and the Kingate Funds (the "Kingate Motion"). (ECF No. 413.).

96.    The deadline for filing objections to the Kingate Motion expired on August 1, 2019. On August 5, 2019, the Trustee filed a Certificate of No Objection to the Kingate Motion. (ECF No. 415).

---

[10] Defendant Ceretti and 15 other defendants were dismissed by this Court's November 22, 2016 Memorandum decision on the ground of comity. That order was reversed by the Second Circuit and those defendants are seeking a writ of certiorari from the Supreme Court.

97.    On August 6, 2019, the Bankruptcy Court entered an Order approving the settlement among the Trustee and the Kingate Funds (ECF No. No. 417).

98.    Pursuant to its terms, the settlement agreement is subject to approval by the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands ("BVI Court") and the Supreme Court of Bermuda ("Bermuda Court"), jurisdictions in which the Kingate Funds are in liquidation.

99.    On September 18, 2019, counsel for the Kingate Funds and the Trustee appeared before the BVI Court on an application seeking the approval of the settlement agreement. The BVI Court issued an Order granting approval.

100.    On October 8, 2019, counsel for the Kingate Funds and the Trustee appeared before the Bermuda Court on an application seeking the approval of the Settlement Agreement. The Bermuda Court issued an Order granting approval.

101.    The Kingate settlement closed on October 29, 2019, and $860 million was added to the Customer Fund.

102.    Throughout the Compensation Period, the Trustee continued to work with foreign counsel and the Trustee's consultants to effectuate the Settlement Agreement. The Trustee's legal team included the advice and counsel of the Trustee's foreign solicitors and barristers in the United Kingdom, Bermuda, and BVI.

## H.    MATTER 21 – AVOIDANCE ACTION LITIGATION AND MATTER 75 – GOOD FAITH/5A COHMAD REFERRED ACCOUNTS

103.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, discovery requests, and reviewing produced documents, communicating formally and informally with counsel for various defendants, reviewing Hardship Program applications, drafting extensions of time to respond to various

complaints and adjournments of pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

### a.    Resolution of Good Faith Avoidance Actions

104.    At the beginning of the Compensation Period, there were 133 active good faith avoidance actions. Seven were closed during the Compensation Period, leaving a total of 126 active good faith avoidance actions by the end of the Compensation Period. In certain avoidance actions, the Trustee entered into mediations and where appropriate, agreed to dismiss certain defendants from the actions. During the Compensation Period, the Trustee dismissed one case for unlikely recovery/insufficient assets. In addition, the Trustee's counsel engaged in settlement negotiations, which led to six cases entering into documented settlements during the Compensation Period.

### b.    Summary Judgment Motions

### 1.    South Ferry/Lowrey Motions

105.    Prior to the Compensation Period, the Trustee entered into separate stipulations with (1) Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson, and Zev Wolfson, (2) Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and Abraham Wolfson, (3) Defendant United Congregations Mesora, and (4) James Lowrey, setting a schedule for summary judgment motion practice (collectively, the "South Ferry/Lowrey Actions"). *See* Adv. Pro. No. 10-04488, ECF No. 77; Adv. Pro. No. 10-04350, ECF No. 86; Adv. Pro. No. 10-05110, ECF No. 53; Adv. Pro. No. 10-04387, ECF No. 71.

106.    Prior to the Compensation Period, from July 2017 through September 2017, the
parties in the South Ferry/Lowrey Actions filed and briefed motions for summary judgment. *See*
Adv. Pro. No. 10-04488, ECF Nos. 86-93, 96-97, 100, 103; Adv. Pro. No. 10-04350, ECF Nos.
95-102, 105-106, 109, 112; Adv. Pro. No. 10-05110, ECF Nos. 60-69, 70-71, 74, 77; Adv. Pro.
No. 10-04387, ECF Nos. 78-81, 83-84, 86-87, 91-92. On December 6, 2017, oral argument was
held on the parties' motions for summary judgment.

107.    On March 22, 2018, the Bankruptcy Court issued its Report and Recommendation
to the District Court granting the Trustee's motion for summary judgment and denying the South
Ferry/Lowrey Actions' motions for summary judgment. *See In re Bernard L. Madoff [Good Faith
Summary Judgment]*, Adv. Pro. No. 08-01789 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. March
22, 2018).

108.    On April 26, 2018, counsel for the South Ferry/Lowrey actions filed their Rule
9003 Objections to the Bankruptcy Court's Report and Recommendation. *See* Adv. Pro. No. 10-
04387, ECF No. 116. On June 1, 2018, the Trustee filed his Response to Defendants' Rule 9033
Objections. *See* Adv. Pro. No. 10-04387, ECF No. 119. As of June 14, 2018, the case was assigned
to District Court Judge Paul Engelmayer for his review and approval.

109.    On February 7, 2019, Judge Engelmayer issued his ruling adopting the Bankruptcy
Court's Report and Recommendation, granting summary judgment to the Trustee, and denying
summary judgment to the Defendants in the South Ferry/Lowrey Actions. *See Sec. Inv'r Prot.
Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), 2019 WL 479185
(S.D.N.Y. Feb. 7, 2019).

110.    Defendants filed their notices of appeal to the Second Circuit on February 19, 2019.
*See* No. 18-cv-05381, ECF No. 32. Defendants subsequently posted the requisite bond on April 9,

2019. *See* No. 18-cv-05381, ECF No. 37. Defendants filed their appellate brief with the Second

Circuit on June 4, 2019. *See* No. 19-429, ECF No. 82. The Trustee filed his appellee brief on

September 3, 2019. *See* No. 19-429, ECF No. 102. The Defendants filed their reply brief on

October 4, 2019. *See* No. 19-419, ECF No. 138. Oral argument has been set for March 31, 2020.

### c.    **Trial-Related Motion Practice**

### 1.    **Nelson Actions**

111.    Prior to the Compensation Period, on November 15, 2018, the Trustee submitted a

letter to the Bankruptcy Court indicating that the parties agreed to set trial in the matter of *Picard*

*v. Carol Nelson*, Adv. Pro. No. 10-04658 to begin on May 8, 2019, but the parties could not agree

on a trial date for *Picard v. Carol Nelson, et al.*, Adv. Pro. No. PN 10-04377, involving both Carol

Nelson and her husband Stanley Nelson (together, the "Nelson Actions"). Counsel for the Nelsons

also declined to agree to a consolidated trial of the Nelson Actions. *See* Adv. Pro. No. 10-04658,

ECF No. 114; Adv. Pro. No. No. 10-04377, ECF No. 108.

112.    On November 28, 2018, the Bankruptcy Court issued an oral order to show cause

why the Nelson Actions should not be consolidated for trial pursuant to Federal Rule of Civil

Procedure Rule 42 (the "Order to Show Cause"). On December 5, 2018, counsel for the Nelsons

filed their response, opposing consolidation, and on December 12, 2018, the Trustee filed his

response, in favor of consolidation. *See* Adv. Pro. No. 10-04658, ECF Nos. 118, 121; Adv. Pro.

No. 10-04377, ECF Nos. 113, 116.

113.    On December 5, 2018, counsel for defendants Carol Nelson and Stanley Nelson

moved to adjourn the trial *sine die*, to which the Trustee opposed on December 12, 2018. *See* Adv.

Pro. No. 10-04658, ECF Nos. 117-18, 120; Adv. Pro. No. 10-04377, ECF Nos. 112-13, 115 (the

"Motion to Adjourn"). Counsel for the defendants filed a reply brief on December 14, 2018. *See*

Adv. Pro. No. 10-04658, ECF No. 123; Adv. Pro. No. 10-04377, ECF No. 118.

114.   On December 19, 2018, the Bankruptcy Court heard arguments regarding the Order

to Show Cause and the Motion to Adjourn, and issued a bench ruling for the Nelson Actions to be

consolidated and scheduled for trial beginning May 8, 2019. *See* Adv. Pro. No. 10-04658, ECF

No. 130; Adv. Pro. No. 10-04377, ECF No. 123. The Bankruptcy Court subsequently filed on

January 2, 2019 its Memorandum Decision and Order Denying Motion to Adjourn Trials *Sine Die*.

*See* Adv. Pro. No. 10-04658, ECF No. 127; Adv. Pro. No. 10-04377, ECF No. 126.

115.   On April 1, 2019, the Defendants sought to adjourn the trials again, but the Trustee

opposed the Defendants' request in a letter response dated April 2, 2019. The Defendants replied

in another letter dated April 3, 2019. On April 22, 2019, the Bankruptcy Court issued an order

denying the Defendants' adjournment request. *See* Adv. Pro. No. 10-04658, ECF Nos. 133-137,

Adv. Pro. No. 10-04377, ECF Nos. 130-34.

116.   On April 24, 2019, the Trustee filed three motions in limine: (1) to admit the plea

allocutions of Bernard L. Madoff and BLMIS employees, (2) to admit the trial testimony of Frank

DiPascali, and (3) to exclude testimony and exhibits related to the Defendants' asserted tax

obligations to governmental taxing authorities. *See* Adv. Pro. No. 10-04358, ECF Nos. 138-140;

Adv. Pro. No. 10-04377, ECF Nos. 135-138. On May 1, 2019, the Defendants filed their opposition

briefs to the motions in limine. *See* Adv. Pro. No. PN 10-04658, ECF Nos. 150-51; Adv. Pro. No.

10-04377, ECF Nos. 147-48.

117.   On May 2, 2019, the Defendants filed their objection to the admissibility of the

Trustee's Madoff and/or BLMIS-generated exhibits, and on May 6, 2019, to the admissibility of

certain of the Trustee's exhibits that constituted expert reports and criminal trial testimony of Frank

DiPascali. *See* Adv. Pro. No. PN 10-04658, ECF Nos. 152, 158; Adv. Pro. No. 10-04377, ECF

Nos. 149, 155.

118.    On May 3, 2019, the Trustee filed his motion to quash the subpoena served on the

Trustee and his motion to strike Bernard L. Madoff, Enrica Cotellessa-Pitz, and Agatha M. Cole

from Defendants' proposed witness list. *See* Adv. Pro. No. 10-04658, ECF Nos. 153-56; Adv. Pro.

No. 10-04377, ECF Nos. 150-153. On May 6, 2019, the Defendants filed their opposition brief to

both motions. *See* Adv. Pro. No. 10-04658, ECF No. 159; Adv. Pro. No. 10-04377, ECF No. 156.

119.    The trial was held on May 8, 2019 and May 9, 2019. On May 16, 2019, the parties

stipulated, and the Bankruptcy Court so ordered, the post-trial briefing schedule, which stated that

(1) the parties shall exchange exhibit lists and deposition and trial transcript designations by June

17, 2019, (2) the parties shall exchange objections to exhibits and objections and cross-

designations to deposition and trial transcript designations by July 1, 2019, and (3) set deadlines

for the parties to file their proposed Findings of Fact and Conclusions of Law. *See* Adv. Pro. No.

10-04658, ECF No. 160; Adv. Pro. No. 10-04377, ECF No. 157.

120.    The Trustee filed his proposed Findings of Fact and Conclusions of Law on July

30, 2019. *See* Adv. Pro. No. 10-04658, ECF No. 165; Adv. Pro. No. 10-04377, ECF No. 162.

121.    The Defendants filed their response to the Trustee's proposed Findings of Fact and

Conclusions of Law on September 5, 2019. *See* Adv. Pro. No. 10-04658, ECF No. 178-79; Adv.

Pro. No. 10-04377, ECF No. 175-76.

122.    Separately, on August 8, 2019, the Defendants moved to dismiss for lack of subject

matter jurisdiction. *See* Adv. Pro. No. 10-04658, ECF Nos. 169-71; Adv. Pro. No. 10-04377, ECF

Nos. 166-68. On September 18, 2019, the Trustee filed his opposition brief. *See* Adv. Pro. No. 10-

04658, ECF Nos. 183-84; Adv. Pro. No. 10-04377, ECF Nos. 180-81. On September 20, 2019,

Defendants filed their reply brief in further support of their motion to dismiss for lack of subject

matter jurisdiction. *See* Adv. Pro. No. 10-04658, ECF Nos. 187, 191; Adv. Pro. No. 10-04377,

36

ECF Nos. 184, 188. Oral argument was held on September 25, 2019, and the Bankruptcy Court denied the motion.

123.    On October 23, 2019, the Bankruptcy Court entered an order for supplemental briefing on the issue of judicial estoppel. *See* Adv. Pro. No. 10-04377, ECF No. 194.

124.    On November 21, 2019, the Bankruptcy Court issued its Post-Trial Findings of Facts and Conclusions of Law. *See* Adv. Pro. No. 10-04377, ECF No. 200. On December 9, 2019, the Bankruptcy Court entered judgment in favor of the Trustee to recover from Defendants, jointly and severally, the total amount of $4,740,929.02, including costs and pre-judgment interest on the avoidable transfers at the rate of 9% per annum pursuant to N.Y. C.P.L.R. § 5004, from the date of the complaint through the date of judgment. There was no appeal and the judgment is final.

## 2.    Michael Mann Action

125.    Prior to the Compensation Period, on September 28, 2018, the Bankruptcy Court issued an Order setting the trial in the *Picard v. BAM, L.P.,* Adv. Pro. No. 10-04390 (SMB) matter (the "Mann Action") to start on December 3, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 108. In response, the Defendants filed the Mann Motion to Withdraw on October 26, 2018, and on November 20, 2018, moved to stay the December 3 trial, pending a ruling from the District Court on the Mann Motion to Withdraw. *See* Adv. Pro. No. No. 10-04390, ECF Nos. 114, 121-122. The Trustee filed his opposition to the Defendants' motion to stay the trial on November 27, 2018, and oral argument was held on November 28, 2018. *See* Adv. Pro. No. 10-04390, ECF Nos. 127-28, 130.

126.    At the November 28, 2018 hearing, the Bankruptcy Court offered the Defendants the opportunity to make an oral motion to withdraw their customer claims and objections to the Trustee's determinations of those claims, and the Court granted the motion, which was memorialized in the subsequent Order Withdrawing Claims and Objections With Prejudice And

37

Finally Determining Net Equity filed on December 20, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 138. However, the order did not determine the Bankruptcy Court's jurisdiction over the Mann Action, for which the parties provided separate briefing on December 5, 2018 and December 12, 2018, respectively. *See* Adv. Pro. No. 10-04390, ECF Nos. 132, 137. On January 18, 2019, the Bankruptcy Court issued its Memorandum Decision and Order holding that the Court has equitable jurisdiction over the Mann Action despite the Defendants' withdrawal of their customer claims and objections (the "Jurisdictional Decision"). *See* Adv. Pro. No. 10-04390, ECF No. 148.

127.    On January 25, 2019, the Defendants moved for leave to appeal the Jurisdictional Decision. *See* Adv. Pro. No. 10-04390, ECF Nos. 149-150. The Trustee opposed the motion on February 8, 2019. *See* Adv. Pro. No. 10-04390, ECF Nos. 155-156. On February 19, 2019, the Defendants filed their reply brief in further support of their motion for leave to appeal the Jurisdictional Decision. *See* No. 19-cv-00812, ECF Nos. 6-7. The motion for leave remains pending before District Court Judge Vernon S. Broderick.

128.    On December 21, 2018, the Trustee filed his Motion for Summary Judgment in the Mann Action. *See* Adv. Pro. No. 10-04390, ECF Nos. 140-143. On February 22, 2019, the Defendants filed their opposition brief to the Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 158-160. On March 27, 2019, the Trustee filed his reply brief in further support of his Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 164, 166-167. Oral argument before the Bankruptcy Court was held on April 24, 2019. *See* Adv. Pro. No. 10-04390, ECF No. 173. On September 11, 2019, the Bankruptcy Court issued its Memorandum Decision Granting Relief Under Federal Rule of Civil Procedure 56(g). *See* Adv. Pro. No. 10-04390, ECF No. 174.

I.        **MATTER 29 – RYE/TREMONT**

129.     This matter categorizes time spent by the Trustee and B&H attorneys following the

settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc.,

Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous

related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the

Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the

New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent

conveyances in connection with certain transfers of property by BLMIS (the "Tremont

Litigation"). *Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr.

S.D.N.Y. Dec. 7, 2010).

130.     After the court filing, the parties entered into substantive settlement negotiations,

which resulted in a significant settlement approved by the Court on September 22, 2011. The

settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont

Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion. *Picard v. Tremont

Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF No.

38). This is the largest cash settlement to date in any case brought by the Trustee against any feeder

or investment fund.

131.     Two objections to the settlement agreement were filed by non-BLMIS customers,

both of which were overruled by this Court. There were two non-settling defendants at the time,

Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").

132.     Certain objectors filed an appeal of the Tremont settlement on October 18, 2011.

*See Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 11-7330 (GBD) (Bankr. S.D.N.Y.

Oct. 18, 2011). On June 27, 2012, United States District Judge George B. Daniels granted the

Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012. (ECF Nos. 35, 36).

133.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37). Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

134.    On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.*, Adv. Proc. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al.*, Adv. Proc. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

135.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd.*, *et al.,* Adv. Proc. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her. After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

136.    During the Compensation Period, B&H attorneys assisted in drafting and revising a rider to be inserted into the reply brief to the defendants' opposition to the Trustee's motion for leave to amend the original complaint in the Citibank case, and prepared for oral argument. Similarly, B&H attorneys aided the RBS and Fortis case efforts to avoid and recover fraudulent

transfers received by the defendants. B&H attorneys also continued reviewing documents recovered from Tremont's Iron Mountain warehouse facility that contained the remainder of its Madoff-related hard-copy documents.

## J.    **MATTER 30 – HSBC**

137.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), as well as affiliated feeder funds including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., and Alpha Prime Fund, as well as management companies affiliated with those funds, seeking the return of approximately $1.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2012).

138.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate. (ECF Nos. 338, 339, 349, 350, 352, 363).

139.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate. (ECF No. 16431).

140.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate. (ECF No. 16430).

141.    On October 20, 2017, this Court approved a settlement between the Trustee and Thema International Fund plc. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF

No. 482. Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

142.    On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. *Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364, ECF No. 497. The Trustee's litigation with Alpha Prime is ongoing

143.    On July 27, 2019, Alpha Prime moved for judgment on the pleadings. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 545. On August 27, 2019, the Trustee opposed that motion and cross-moved to amend the complaint. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 548. Oral argument was heard on September 19, 2019, and on September 23, 2019, the Court denied Alpha Prime's motion to dismiss and granted the Trustee's motion to amend. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 566.

144.    On September 24, 2019, the Trustee filed his amended complaint against Alpha Prime. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 567. Litigation is ongoing.

### K.    **MATTER 32 – LUXALPHA/UBS/LIF**

145.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

146.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

147.    During the Compensation Period, the Trustee continued his analysis of evidence and investigation into facts related to the Luxalpha Action and LIF Action. The Trustee also prepared to engage in another mediation session with Defendant Luxalpha. While the Luxalpha Action and LIF Action remain ongoing, B&H attorneys continued to prepare a second amended complaint in the Luxalpha Action.

## L.    MATTER 34 – CITIBANK

148.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citicorp North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action"). *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

149.    On October 18, 2019, the Bankruptcy Court denied the Trustee's motion for leave to file an amended complaint. (ECF No. 170).

150.    From October through November 2019, B&H attorneys analyzed the Court's ruling denying the Trustee's motion for leave to file an amended complaint and began preparing a motion for entry of final judgment.

151.    On November 19, 2019, the Bankruptcy Court granted the Trustee's motion on consent for entry of final judgment (ECF No. 174) and issued an order denying the Trustee's motion for leave to amend and entering partial final judgment. (ECF No. 176).

152.    On November 27, 2019, the Trustee filed a notice of appeal to the Second Circuit. (ECF No. 177) in connection with the following prior rulings: (i) Memorandum Decision Denying Trustee's Motion for Leave to File Amended Complaint. *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Oct. 18, 2019), ECF No. 140; (ii) Memorandum Decision Denying Trustee's Motion for Discovery Pursuant to Rule 26(d), *Picard v. Citibank*, 590 B.R. 200 (Bankr. S.D.N.Y. 2018) (Adv. Pro. No. 10-05345 (SMB)), ECF No. 140; (iii) Order of the United States Bankruptcy Court for the Southern District of New York (Bernstein, S.), dated June 18, 2018, denying the Trustee's motion for limited discovery pursuant to Federal Rules of Civil Procedure 26(d), *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y. June 18, 2018), ECF No. 143; and (iv) Opinion and Order of the United States District Court for the Southern District of New York (Rakoff, J.), dated April 28, 2014, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 516 B.R. 18 (S.D.N.Y. 2014) (No. 12-mc-115 (JSR)), ECF No. 524.

153.    On December 3, 2019, the Parties filed a joint certification to the Bankruptcy Court under 28 U.S.C. § 158(d)(2)(A) for direct appeal to the Second Circuit.

154.    On December 23, 2019, B&H attorneys, on behalf of the Trustee, filed an Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the Second Circuit, which is currently pending.

## M.    **MATTER 35 – NATIXIS**

155.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

156.    Prior to the Compensation Period, the Second Circuit issued its opinion regarding extraterritoriality and comity, reversing the Bankruptcy Court's 2016 decision. *In re Picard, Trustee for Liquidation of BLMIS*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *infra* Section IV(W). This Second Circuit decision revived claims against all Natixis Defendants. To give the Trustee time to analyze the Second Circuit decision, the parties entered a stipulation on February 27, 2019, staying the action for 30 days. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 180). On March 28, 2019, the parties then entered a stipulation to stay the action until the mandate issues from the Second Circuit and the Bankruptcy Court's jurisdiction over the case is revived. *Id.*, (ECF No. 181).

157.    During the Compensation Period, on August 30, 2019, defendant-petitioners filed a petition for a writ of certiorari in the Supreme Court of the United States. *HSBC Holdings PLC v. Irving H. Picard*, No. 19-277. *See* discussion *infra* Section IV(W).

45

158.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued to draft an amended complaint.

### N.    **MATTER 37 – ABN AMRO**

159.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("ABN/RBS") seeking the return of approximately $276 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain subsequent transfers of BLMIS customer property to ABN/RBS. *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.)*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) ("ABN/RBS Action").

160.    Following Judge Rakoff's Opinion and Order on July 6, 2014,[11] the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion"). *Id.,* ECF Nos. 69-71. The Trustee's Omnibus Motion sought, among other things, limited discovery relevant to good faith under either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) (the "Limited Discovery Issue") from the defendants, as well as leave to file an amended complaint against the defendants (the "Leave to Replead Issue").

---

[11] On July 6, 2014, Judge Rakoff issued a decision indicating that certain of the Trustee's claims were barred under *Morrison*, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

161.    On December 31, 2014, ABN/RBS joined in the Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality (the "Consolidated Motion to Dismiss"). (ECF No. 90).

162.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "ET Decision") that denied the Consolidated Motion to Dismiss as to ABN/RBS in this adversary proceeding, and granted the Trustee leave to amend the complaint relating to extraterritoriality. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.) (ECF No. 14495). *See* discussion *infra* Section IV(W).

163.    On March 3, 2017, in connection with the Bankruptcy Court ET Decision, the Bankruptcy Court so ordered a stipulated order denying ABN/RBS's motion to dismiss the complaint and granting the Trustee's motion to amend relating to extraterritoriality (the "ET Order"). *ABN/RBS Action*, ECF No. 117.

164.    On June 18, 2018, the Court denied the branch of the Trustee's Omnibus Motion as to the Limited Discovery Issue and acknowledged that the parties previously agreed that further briefing and proceedings on the Leave to Replead Issue would be deferred until after the Court entered a decision on the Limited Discovery Issue. (ECF No. 168).

165.    On August 14, 2018, the Parties entered into a Tolling Agreement providing for the dismissal without prejudice of the Trustee's claim seeking to recover approximately $74.6 million in subsequent transfers of BLMIS customer property that ABN/RBS received from Rye Select Broad Market XL Portfolio, Ltd. (the "RBS-Rye XL Portfolio Claim"), subject to the right of the Trustee to reinstate the RBS-Rye XL Portfolio Claim by filing an amended complaint in accordance with the terms of the Tolling Agreement.

47

166.    On February 25, 2019, the Second Circuit issued an Order and Opinion vacating the Bankruptcy Court's ET Decision and remanded the case for further proceedings. *In re Picard*, 917 F.3d 85 (2d Cir. 2019) (ECF No. 1311-1) (the "Second Circuit ET Order and Opinion"). *See* discussion *infra* Section IV(W).

167.    On June 10, 2019, B&H attorneys filed a Motion for Leave to File a Second Amended Complaint (the "Motion"), a Proposed Second Amended Complaint with regard to the Leave to Replead Issue, and all related exhibits. *ABN/RBS Action*, ECF Nos. 179, 180. The Proposed Second Amended Complaint also incorporated amendments authorized by the Bankruptcy Court ET Decision, the ET Order, and the Tolling Agreement.

168.    During the Compensation Period, on August 9, 2019, ABN/RBS filed a Memorandum of Law and Declaration with exhibits in opposition to the Motion (the "Opposition"). *ABN/RBS Action*, ECF Nos. 182, 183. B&H attorneys analyzed ABN/RBS's Opposition and, on September 9, 2019, filed a Reply Memorandum in Further Support of Trustee's Motion for Leave to File a Second Amended Complaint. (ECF No. 189).

169.    During the Compensation Period, B&H attorneys also spent time preparing for oral argument before the Court on the Trustee's Motion, which was held on October 30, 2019. The Court reserved decision, and it remains pending.

170.    Finally, on October 1, 2019, B&H attorneys prepared and filed the Eighth Joint Status Letter in the related District Court case captioned *Picard v. ABN Amro Bank, N.V. (presently known as The Royal Bank of Scotland)*, bearing case number 1:17-CV-07476 (AT). During the Compensation Period, B&H attorneys also considered next steps in relation to that case, which is subject to the Second Circuit Order and Opinion. *See* discussion *infra* Section IV(W).

48

O.    **MATTER 39 – FORTIS**

171.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants (the "Fortis Action"). *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

172.    On January 11, 2019, the Bankruptcy Court so ordered the Stipulation and Order Concerning the Trustee's Motion for Leave to File an Amended Complaint. (ECF No. 162). On February 22, 2019, the Trustee filed the Motion for Leave to File an Amended Complaint. (ECF No. 165). On April 23, 2019, the Fortis Defendants filed the Opposition to the Trustee's Motion for Leave to File an Amended Complaint. (ECF No. 169). On May 23, 2019, the Trustee filed the Reply in Further Support of the Motion for Leave to File an Amended Complaint. (ECF No. 179). Oral argument in this matter was held on September 25, 2019. On January 23, 2020, the Bankruptcy Court issued its Memorandum Decision Denying Motion for Leave to File Second Amended Complaint. (ECF No. 188). On February 6, 2020, the Bankruptcy Court entered the Stipulated Order Denying the Trustee's Motion for Leave to Amend and Entering Final Judgment. (ECF No. 189).

P.    **MATTER 53 – MAGNIFY**

173.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green and Express Enterprises Inc. (collectively, the "Magnify Defendants") seeking the return of over $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants. *Picard v. Magnify Inc., et.al.*, Adv. No. 10-05279 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

174.    During the Compensation Period, the Trustee continued to analyze strategic issues relating to the case including working with experts, addressing discovery needs, and developing case strategy following the Court's April 13, 2018 Memorandum Decision Denying Defendants' Motion to Dismiss. (ECF No. 143). Following the Court's Order of June 18, 2019 directing the parties to participate in mediation (ECF No. 181) and the July 11, 2019 order appointing Mr. Ted Berkowitz as the mediator (ECF No. 185), the parties engaged in a mediation from September 12-14, 2019 to consider a settlement framework that would involve both the U.S. and Israeli actions.

175.    The Trustee also continued to prosecute two actions brought in Israel in December 2015 to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts. In connection with these actions, the Trustee worked with Israeli counsel to navigate various issues related to document discovery, including dealing with logistical and strategic issues relating to the production of documents in a foreign country, assessing deficiencies in the Defendants' discovery responses, and performing various legal and factual research in preparation for a hearing before the Israeli court and mediation with certain defendants. Given that many of the transfers sought in the U.S. action are at issue in the Israeli actions, the Trustee

50

coordinated with Israeli counsel to ensure consistency with his strategic positions in both Israel

and the U.S. In furtherance of discovery, the Trustee also worked with Israeli counsel to respond

to and prepare for oral argument on Defendants' motion to strike all of the discovery produced by

the Trustee in advance of a December 2019 hearing in Israel.

### Q.    MATTER 59 – STANLEY SHAPIRO

176.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Stanley Shapiro, the Estate of Renee Shapiro, S&R Investment Co.,

David Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the

"Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code,

the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances

and damages in connection with certain transfers of property by BLMIS to or for the benefit of the

Shapiro Defendants. *Picard v. Shapiro*, Adv. No. 10-05383 (SMB) (Bankr. S.D.N.Y. Dec. 9,

2010).

177.    In 2014, the Trustee filed a second amended complaint against the Shapiro

Defendants. The Shapiro Defendants moved to dismiss on several grounds including, but not

limited to, that they could avail themselves of the safe harbor protection under Section 546(e) of

the Bankruptcy Code. In 2015, the Bankruptcy Court issued a written decision in which it granted

in part and denied in part the Shapiro Defendants' motion. (ECF No. 59).

178.    In 2016, the Bankruptcy Court entered a Case Management Plan, and the parties

commenced discovery. Fact discovery ended in April 2019, and expert discovery ended in July

2019. (ECF No. 132). Meanwhile, on July 10, 2019, the parties informed the Bankruptcy Court

they had agreed to enter mediation. (ECF No. 134).

179.    During the Compensation Period, the Trustee and the Shapiro Defendants reached

a settlement in principle to resolve all of the Trustee's claims against the Shapiro Defendants. (ECF

No. 136). The parties worked to memorialize the settlement in a written settlement agreement, and

B&H attorneys prepared a motion for entry of an order approving the settlement agreement under

Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### R.    MATTER 60 – AVELLINO & BIENES

180.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C.

Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities

(collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain

transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Avellino*,

Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

181.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, engaged

in various aspects of discovery, including reviewing documents produced by the A&B Defendants

and third parties, analyzing evidence with the help of consultants, producing additional documents

to the A&B Defendants, propounding and responding to certain discovery requests, including

requests for admission and interrogatories, preparing for depositions, performing overall case

management, and conferring with counsel for defendants and third-parties.

182.    Additionally, B&H attorneys, on behalf of the Trustee, took the depositions of

certain individual defendants, including Frank Avellino, Nancy Avellino, and Dianne Bienes, and

participated in defendants' noticed deposition of Bernard L. Madoff. B&H attorneys continued to

prepare for the upcoming depositions of defendant Thomas Avellino, several former BLMIS

employees, including Annette Bongiorno, Jo Ann Crupi, and Eric Lipkin, and certain third parties,

including Andrew Copperman and Joseph Avellino.

## S.     **MATTER 62 – SUBSEQUENT TRANSFERS**

183.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.

184.     Prior to the Compensation Period, the Trustee briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to common briefing and hearings. As of July 31, 2014, the District Court issued all of its decisions on the issues subject to common briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.

185.     As part of its common briefing decisions, the District Court remanded the cases in which subsequent transfer defendants filed an extraterritoriality motion to dismiss.

186.     On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss. This matter was appealed to the Second Circuit, which ruled in favor of the Trustee. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). *See* discussion *infra* Section IV(W).

187.     As part of the original December 10, 2014 scheduling order regarding the extraterritoriality motion to dismiss briefing, this Court held in abeyance the Trustee's Motion for Limited Discovery until after ruling on the Defendants' Extraterritoriality Motion to Dismiss. On June 5, 2018, the Court denied the Trustee's Motion for Limited Discovery. (ECF No. 16927).

188.     As of November 30, 2019, the Trustee's claims against the subsequent transfer defendants remain pending.

T.    **MATTER 65 – LEGACY**

189.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million

under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other

applicable law for fraudulent conveyances and damages in connection with certain transfers of

property by BLMIS to or for the benefit of the Legacy Capital Defendants. *Picard v. Legacy*

*Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

190.    During the Compensation Period, B&H attorneys, on behalf of the Trustee,

prepared for trial in connection with the Trustee's remaining claim for the return of transfers

Legacy received during the two year period from December 11, 2008, of which $86,505,850

constituted fictitious profits. The specific issues set for trial were: (a) the start date of the BLMIS

Ponzi scheme, and (b) the relationship, if any, between BLMIS's purchase of U.S. Treasury Bills

from third party brokers, and the purported resale of a portion of those purchases to Legacy in its

BLMIS account, and whether any profits reported to Legacy during the Ponzi scheme were real

rather than fictitious.

191.    On September 5, 2019, the parties appeared at a final pre-trial conference before

Judge Bernstein. During the conference, Judge Bernstein set a tentative trial start date of December

16, 2019 but requested that the parties supply alternate trial dates in early 2020 in the event the

Court had a conflict with the tentatively scheduled date.

192.    During the Compensation Period, B&H attorneys, on behalf of the Trustee,

negotiated a Stipulation and Order for Entry of Final Judgment ("Stipulated Order") as well as a

proposed Final Judgment and Order ("Final Judgement") with counsel for Legacy. The Stipulated

Order was filed on November 8, 2019 and included the agreement as to: (i) the Parties' consent to

the Bankruptcy Court's entry of a final order and judgment in connection with the Trustee's

54

avoidance claim, (ii) entry of a Final Judgment against Legacy in the amount of $79,125,781.00

(the "Legacy Transfers"), and (iii) certification that direct appeal to the Second Circuit is warranted

under 28 U.S.C. § 158(d)(2)(A), with each Party preserving all arguments, theories, claims, and

defenses for appeal.

193.    On November 12, 2019, Judge Bernstein entered the Stipulated Order as well as a

Final Judgment in this adversary proceeding.

194.    On November 22, 2019, B&H attorneys, on behalf of the Trustee, filed a notice of

appeal in connection with the following prior rulings: (i) Memorandum Decision Regarding

Motions to Dismiss the Trustee's Amended Complaint, granting in part Legacy Capital Ltd.'s

motion to dismiss the Trustee's Amended Complaint. *Picard v. Legacy Capital Ltd.*, Adv. Pro.

No. 10-05286 (SMB) (Bankr. S.D.N.Y. Mar. 14, 2016), ECF No. 134; (ii) Order Granting Legacy

Capital Ltd.'s and Khronos LLC's Motions to Dismiss the Amended Complaint Under Bankruptcy

Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(6). *Picard v. Legacy Capital Ltd.*, Adv.

Pro. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Apr. 12, 2016), ECF No. 137; and (iii) Opinion and

Order of the United States District Court for the Southern District of New York (Rakoff, J.), dated

April 28, 2014. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 516

B.R. 18 (S.D.N.Y. 2014) (No. 12 mc-115 (JSR)), ECF No. 524.

195.    On November 26, 2019, Legacy filed a notice of cross-appeal of the Final

Judgment, including without limitation the Memorandum Decision and Order Granting Relief

under Federal Civil Rule 56(g). *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-05286 (SMB)

(Bankr. S.D.N.Y. June 25, 2019), ECF No. 221. The Parties thereafter designated their respective

Contents and Issues on Appeal and Cross-Appeal in accordance with the Bankruptcy Court's

individual practices and the governing rules of appellate procedure.

196.    On November 26, 2019, the Parties filed a joint certification to the Bankruptcy Court under 28 U.S.C. § 158(d)(2)(A) that a circumstance specified in 28 U.S.C. § 158(d)(2) exists such that the Trustee's appeal and Legacy's cross-appeal should proceed directly to the Second Circuit.

197.    On December 20, 2019, B&H attorneys, on behalf of the Trustee, filed an Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the Second Circuit. The Trustee awaits a decision on whether the Second Circuit will grant the petition for a direct appeal.

198.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, commenced post-judgment discovery in aid of the execution of the Final Judgment entered against Legacy.

## U.    **MATTER 71 – SQUARE ONE**

199.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Square One Fund Ltd. ("Square One") seeking the return of approximately $26 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law, in connection with certain transfers of property by BLMIS to or for the benefit of Square One. *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

200.    On December 21, 2018, the Trustee filed and served the Amended Complaint. (ECF No. 167–69). After Square One filed a motion to dismiss on February 14, 2019 (ECF No. 170), the Court granted in part and denied in part the motion to dismiss at a hearing on May 29, 2019. On June 13, 2019, the Court entered an order granting in part and denying in part Square One's motion to dismiss. (ECF No. 177). The Court so-ordered a Case Management Plan on July 16, 2019. (ECF No. 178).

201.    During the Compensation Period, the Trustee and Square One continued to engage in fact discovery pursuant to the Court's Case Management Plan.

## V.    MATTER 73 – BNP PARIBAS

202.    This matter categorizes time spent by the Trustee and B&H attorneys in separate adversary proceedings that collectively seek the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust (Cayman) Limited, BNP Paribas Securities Services, BNP Paribas (Suisse) S.A., and BGL BNP Paribas Luxembourg S.A., (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS. *See Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. Nov. 3, 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. May 4, 2012); and *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. Dec. 1, 2010) (collectively, the "BNP Paribas Proceedings").

203.    On October 3, 2018, the Bankruptcy Court issued its decision granting in part and denying in part the BNP Paribas Defendants' motion to dismiss claims to recover subsequent transfers that the BNP Paribas Defendants received from certain Tremont feeder funds, and on January 17, 2019, the BNP Paribas Defendants filed their answer to the Trustee's Amended Complaint. Since that time the parties have negotiated a stay of discovery pending the issuance of the mandate following the BNP Paribas Defendants' filing of a petition for a writ of certiorari to the United States Supreme Court.

## W.    MATTER 77 – EXTRATERRITORIALITY

204.    On July 6, 2014, the District Court held that certain of the Trustee's claims were barred by the presumption against extraterritoriality, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign

transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

205.    On November 22, 2016, this Court issued a decision granting in part and denying in part defendants' motion to dismiss on extraterritoriality. *Sec. Inv'r Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495).

206.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court and Bankruptcy Court. The Second Circuit held that neither the presumption against exterritoriality nor international comity limits the reach of section 550(a)(2) of the Bankruptcy Code, enabling the Trustee to recover property from certain subsequent transferees. Accordingly, the Second Circuit vacated the judgments of the Bankruptcy Court and remanded for further proceedings. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). On April 8, 2019, defendants filed a motion to stay the issuance of the mandate pending the filing of a petition for a writ of certiorari, (ECF No. 1413), which the Second Circuit granted on April 23, 2019. (ECF No. 1503).

207.    During the Compensation Period, on August 30, 2019, defendant-petitioners filed a petition for a writ of certiorari in the Supreme Court of the United States. *HSBC Holdings PLC v. Irving H. Picard*, No. 19-277. On September 30, 2019, amicus briefs in support of petitioners were filed by the Cayman Islands and the British Virgin Islands; certain British Virgin Islands restructuring professionals; Cayman Finance and Recovery and Insolvency Specialists Association of the Cayman Islands; Recovery and Insolvency Specialists Association of Bermuda; and the Securities Industry and Financial Markets Association, the Institute of International Bankers, and the U.S. Chamber of Commerce. On October 30, 2019, the Trustee as respondent filed his brief in

opposition to the defendants' petition, and the petitioners filed their reply brief on November 14, 2019.

208.    On November 13, 2019, the defendants' petition was distributed for conference to be held on December 6, 2019, and on December 9, 2019, the Supreme Court of the United States invited the Solicitor General to file a brief in this case expressing the views of the United States.

## V.    COMPENSATION REQUESTED

209.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995, as amended on August 1, 2013 (the "Local Guidelines") and the Second Amended Compensation Order. Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

210.    The Trustee, and B&H, as counsel to the Trustee, expended 64,467.80 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $465.75 for fees incurred.[12] The blended attorney rate is $544.53.

211.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application. In connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees

---

[12]In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

by writing off $1,539,577.20 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $153,153.08.

212.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates. This discount has resulted in an additional voluntary reduction during the Compensation Period of $3,336,236.44. The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

213.    Pursuant to the Second Amended Compensation Order, on September 18, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from August 1, 2019 through August 31, 2019 (the "August Fee Statement"). The August Fee Statement reflected fees of $7,715,125.70 and expenses of $59,606.42. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the August Fee Statement reflected fees of $6,943,613.13 and expenses of $59,606.42. After subtracting the Court-ordered 10% holdback, SIPC advanced $6,249,251.82 for services rendered and $59,606.42 for expenses incurred by the Trustee and B&H.

214.    Pursuant to the Second Amended Compensation Order, on October 17, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from September 1, 2019 through September 30, 2019 (the "September Fee Statement"). The September Fee Statement reflected fees of $9,441,571.90 and expenses of $61,585.96. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the September Fee Statement reflected fees of $8,497,414.71 and expenses of

$61,585.96. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,647,673.24 for services rendered and $61,585.96 for expenses incurred by the Trustee and B&H.

215.    Pursuant to the Second Amended Compensation Order, on November 20, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from October 1, 2019 through October 31, 2019 (the "October Fee Statement"). The October Fee Statement reflected fees of $8,829,529.20 and expenses of $57,055.71. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the October Fee Statement reflected fees of $7,946,576.28 and expenses of $57,055.71. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,151,918.65 for services rendered and $57,055.71 for expenses incurred by the Trustee and B&H.

216.    Pursuant to the Second Amended Compensation Order, on December 18, 2019, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from November 1, 2019 through November 30, 2019 (the "November Fee Statement"). The November Fee Statement reflected fees of $7,376,137.60 and expenses of $143,491.18. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the November Fee Statement reflected fees of $6,638,523.84 and expenses of $138,637.57. After subtracting the Court-ordered 10% holdback, SIPC advanced $5,974,671.46 for services rendered and $138,637.57 for expenses incurred by the Trustee and B&H.

217.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in

which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

218.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofessionals. The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

219.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

220.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case. No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

221.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

222.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ." Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's

role in connection with applications for compensation and the consideration the Court should give

to SIPC's recommendation concerning fees. That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there is no
> difference between the amounts requested and the amounts recommended by SIPC,
> the court shall award the amounts recommended by SIPC. In determining the
> amount of allowances in all other cases, the court shall give due consideration to
> the nature, extent, and value of the services rendered, and shall place considerable
> reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

223.    To the extent the general estate is insufficient to pay such allowances as an expense

of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay

the compensation of the Trustee and B&H. *See* SIPA § 78fff-3(b)(2).

224.    While the Trustee has recovered, or entered into agreements to recover, nearly

$14.334 billion as of January 31, 2020, a significant portion of these funds must be held in reserve

pending final resolution of several appeals and disputes.

225.    Accordingly, the Trustee has determined that, at this time, he has no reasonable

expectation that the general estate will be sufficient to make a distribution to general creditors or

pay administrative expenses. The Trustee has been advised by SIPC that it concurs in this belief.

Any fees and expenses allowed by this Court will be paid from advances by SIPC without any

reasonable expectation by SIPC of recoupment thereof.

226.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the

Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts

recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990). SIPC

will file its recommendation to the Court with respect to this Application prior to the hearing

scheduled to be held on April 29, 2020.

227.     The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VII.    CONCLUSION

The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $30,026,127.96 (of which $27,023,515.17 is to be paid currently and $3,002,612.79 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $316,885.66 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
March 11, 2020

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:   _s/ David J. Sheehan_
      Baker & Hostetler LLP
      45 Rockefeller Plaza
      New York, New York 10111
      Telephone: (212) 589-4200
      Facsimile: (212) 589-4201
      Irving H. Picard
      Email: ipicard@bakerlaw.com
      David J. Sheehan
      Email: dsheehan@bakerlaw.com
      Seanna R. Brown
      Email: sbrown@bakerlaw.com
      Heather R. Wlodek
      Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*