**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (SMB) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No.  10-04357 (SMB) |
| Plaintiff, | |
| v. | |
| JAMES GREIFF, | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR A STAY**
**OF TRIAL PURSUANT TO RULE 5011(C) PENDING RULING BY DISTRICT COURT**
**ON DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................3

    A.    The Claims Procedures Order ............................................................3

    B.    Defendant's BLMIS Customer Claim ...................................................4

    C.    The Net Equity Dispute ......................................................................5

    D.    The Trustee's Avoidance Action Against Defendant .............................7

    E.    Motion To Withdraw The Reference ....................................................8

ARGUMENT ...........................................................................................................8

I.    DEFENDANT CANNOT MEET THE STANDARDS FOR A STAY ...........................8

    A.    Defendant Is Not Likely To Prevail On The Merits Because The District Court Already Held That Defendant's Right To A Jury Trial Is Extinguished Based On Filing Of Customer Claim ....................................................9

        1.    Defendant Has Submitted To The Equitable Jurisdiction Of The Bankruptcy Court To Decide All Matters Related To His Customer Claim .....................................................................................9

        2.    The Status of the Customer Claim Does Not Affect The Bankruptcy Court's Equitable Jurisdiction ...........................................12

        3.    There Is No Reason To Deviate From Prior Rulings Of The District Court ..........................................................................14

    B.    No Substantial and Material Consideration of Non-Bankruptcy Federal Law Is Required to Resolve Defendant's Asserted Factual Issues ..................16

        2.    Whether BLMIS Made the Transfers or Was a Ponzi Scheme Are Elements of the Trustee's Section 548(a)(1)(A) Claim and Are Immaterial to the Trustee's Standing to Sue ...............................17

    C.    Other Factors Weigh Against Withdrawal Of The Reference ..................19

    B.    Defendant Will Not Suffer Irreparable Harm If The Stay Is Denied ........20

    D.    The Trustee Will Be Harmed If The Motion Is Granted ........................20

-i-

**Page**

    E.      The Public Interest Will Not Be Served By Granting The Stay ............................21

CONCLUSION ........................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Bernard L. Madoff Inv. Sec. LLC*,
    654 F.3d 229 (2d Cir. 2011)..................................................................6, 12, 13

*In re Bernard L. Madoff Inv. Sec. LLC*,
    740 F.3d 81 (2d Cir. 2014)..................................................................15

*In re CBI Holding Co.*,
    529 F.3d 432 (2d Cir. 2008)..................................................................10, 14, 15

*In re Chrysler LLC*,
    No. 09-50002 (AJG), 2009 WL 7386569 (Bankr. S.D.N.Y. May 20, 2009) ...........8

*In re Dana Corp.*,
    No. 06–10354 (BRL), 2007 WL 2908221 (Bankr. S.D.N.Y. Oct. 3, 2007)..............8

*Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.)*,
    388 B.R. 131 (S.D.N.Y. 2008)..................................................................16

*First Fid. Bank N.A. v. Hooker Invs. Inc. (In re Hooker Invs., Inc.)*,
    937 F.2d 833 (2d Cir. 1991)..................................................................9

*Germain v. Connecticut Nat'l Bank*,
    988 F.2d 1323 (2d Cir. 1993)..................................................................10, 14, 15

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989)..................................................................10

*Int'l Ass'n of Machinists and Aerospace Workers v. Eastern Air Lines, Inc. (In re*
    *Ionosphere Clubs, Inc.)*,
    103 B.R. 416 (S.D.N.Y. 1989)..................................................................16

*In re Issa Corp.*,
    142 B.R. 75 (Bankr. S.D.N.Y. 1992)..................................................................8

*Langenkamp v. Culp*,
    498 U.S. 42 (1990)..................................................................9, 10, 15

*Messer v. Magee (In re FKF 3, LLC)*,
    No. 13 Civ. 3601 (KMK), 2016 WL 4540842 (S.D.N.Y. Aug. 30, 2016) ............13, 14, 19

*N.Y.C. v. Exxon Corp.*,
    932 F.2d 1020 (2d Cir. 1991)..................................................................16

## TABLE OF AUTHORITIES
### (Continued)

Page

*Peskin v. Picard*,
  413 B.R. 137 (Bankr. S.D.N.Y. 2009) ....................................................................3

*Picard v. BAM, L.P.*,
  597 B.R. 466 (Bankr. S.D.N.Y. 2019), *leave to appeal denied sub nom*. No.
  18-cv-09916 (VSB), 2020 WL 915822 (S.D.N.Y. Feb. 26, 2020) ................................. *passim*

*Picard v. BAM, L.P.*,
  No. 18-cv-09916 (VSB), 2020 WL 915822 (S.D.N.Y. Feb. 26, 2020) .......................... *passim*

*Picard v. Estate of Madoff*,
  464 B.R. 578 (S.D.N.Y. 2011) ..............................................................................12

*Picard v. Goldenberg*,
  Adv. Pro. No. 10-04946 (SMB), 2018 WL 3078149 (Bankr. S.D.N.Y. June
  19, 2018) ........................................................................................................22

*Picard v. Greiff*,
  476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom. on other grounds*, *Picard v. Ida
  Fishman Rev. Trust* (*In re BLMIS*), 773 F.3d 411 (2d Cir. 2014), *cert. denied*,
  135 S.Ct. 2859, 192 L.Ed.2d 910 (2015) ...............................................................11

*Picard v. Nelson (In re Bernard L. Madoff)*,
  610 B.R. 197 (Bankr. S.D.N.Y. 2019) ..............................................................16, 18

*Picard v. Saren-Lawrence*,
  No. 17 Civ. 5157 (GBD), 2018 WL 2383141 (S.D.N.Y. May 15, 2018),
  *recons. denied sub nom.*, 2018 WL 4659476 (S.D.N.Y. Sept. 11, 2018) ...............9, 11, 12, 19

*In re Residential Capital, LLC*,
  698 F. App'x 16 (2d Cir. 2017) ............................................................................10

*In re Residential Capital, LLC*,
  519 B.R. 890 (Bankr. S.D.N.Y. 2014) ...............................................................8, 19

*Ryan v. Picard*,
  133 S. Ct. 24 (2012) ...........................................................................................6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  Adv. Pro. Nos. 10-04387, 10-04488, 10-04350, 10-05110 (SMB), 2018 WL
  1442312 (Bankr. S.D.N.Y. Mar. 22, 2018) .............................................................21

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  490 B.R. 46 (S.D.N.Y. 2013) ...............................................................................15

## TABLE OF AUTHORITIES
### (Continued)

Page

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),*
    499 B.R. 416 (S.D.N.Y. 2013) .......................................................................................13, 16

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Bernard L.
    Madoff Inv. Secs. LLC),*
    424 B.R. 122 (Bankr. S.D.N.Y. 2010) ...............................................................................5, 6

*Sec. Investor Prot. Corp. v. BLMIS,*
    568 B.R. 203 (Bankr. S.D.N.Y. 2017), *aff'd,* 598 B.R. 102 (S.D.N.Y. 2019) .......................19

*Shapiro v. JPMorgan Chase & Co.,*
    Nos. 11 Civ. 8331 (CM), 11 Civ. 7961 (CM), 2014 WL 1224666 (S.D.N.Y.
    Mar. 24, 2014)...................................................................................................................19

*Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),*
    922 F.2d. 984 (2d Cir. 1990)...............................................................................................16

*Smith v. Dowden,*
    47 F.3d 940 (8th Cir. 1995) ................................................................................................14

*Stern v. Marshall,*
    564 U.S. 462 (2011).................................................................................................10, 11, 15

*Velvel v. Picard,*
    133 S. Ct. 25 (2012).............................................................................................................6

*In re WorldCom, Inc.,*
    378 B.R. 745 (Bankr. S.D.N.Y. 2007) ................................................................................14

**Statutes**

11 U.S.C. 548(a)(1)(A) ...............................................................................................................17

11 U.S.C. § 101 *et seq.*..................................................................................................................7

11 U.S.C. § 105(a) ........................................................................................................................6

11 U.S.C. § 502(d) ......................................................................................................................11

11 U.S.C. § 544 .............................................................................................................................6

11 U.S.C. § 548.......................................................................................................................11, 12

11 U.S.C. § 548(a) ........................................................................................................................6

11 U.S. C. § 548(a)(1)(A) ................................................................................................13, 17, 19

## TABLE OF AUTHORITIES
### (Continued)

Page

11 U.S.C. § 548(c) .............................................................................................................15

11 U.S.C. § 550 .................................................................................................................11

11 U.S.C. § 550(a) ..............................................................................................................7

11 U.S.C. § 551 ...................................................................................................................7

15 U.S.C. §§ 78aaa *et seq.* ...............................................................................................1

15 U.S.C. § 78eee(b)(4) ......................................................................................................3

15 U.S.C. § 78fff-1(a) .........................................................................................................6

15 U.S.C. § 78fff-2(a)(2) .....................................................................................................3

15 U.S.C. § 78fff-2(b) .........................................................................................................4

15 U.S.C. § 78fff-2(c)(3) ...............................................................................................6, 17

15 U.S.C. § 78fff(b) ............................................................................................................6

28 U.S.C. § 157(b) ............................................................................................................11

28 U.S.C. § 157(d) ....................................................................................................2, 8, 16

**Rules**

Fed. R. Bankr. P. 3006 ......................................................................................................14

Fed. R. Bankr. P. 5011 ........................................................................................................8

Fed. R. Bankr. P. 5011-1 .....................................................................................................8

Fed. R. Bankr. P. 5011(c) .................................................................................................1, 8

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act , 15 U.S.C. §§ 78aaa–*lll*[1] ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff,"), by and through his undersigned counsel, hereby submits this memorandum of law in opposition to the Motion For A Stay Of Trial Pursuant To Rule 5011(c) Pending Ruling By District Court On Defendant's Motion To Withdraw The Reference (the "Motion") filed by defendant James Greiff ("Defendant") in the above-captioned action (the "Greiff Action").

## PRELIMINARY STATEMENT

Defendant has no viable legal defenses and no factual record upon which to rebut the Trustee's claims for the recovery of $2,595,940 of fictitious profits. Although Defendant responded to the Trustee's document demands, he failed to identify any experts and failed to depose the Trustee's experts. Discovery has been closed for nearly three years and mediation was finally concluded in November 2019. Defendant has extensively litigated all of his defenses to the Trustee's actions, and those defenses have been rejected by this Court and the District Court no less than nine times. The case is trial ready and Defendant's motion to withdraw the reference, and the instant motion for a stay, are nothing more than delay "tactic[s]" that "just hold[] up disposition of the case."[2]

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."
[2] *Hearing Re Pre-Trial Conference,* at 5:21-6:4; *Picard v. Greiff,* Adv. Pro. No. 10-04387 (SMB) (Bankr. S.D.N.Y. March 20, 2020). A true and correct copy of the transcript of the final pre-trial conference held before the Bankruptcy Court is attached hereto as Exhibit 1 to the Declaration of Nicholas J. Cremona ("Cremona Declaration").

To obtain a stay, Defendant must show that he has a likelihood of success on the merits on his underlying motion to withdraw the reference from this Court, which turns on his jury trial right. But as the District Court recently held, jury demands in virtually identical avoidance actions were meritless because those defendants relinquished their jury trial right when they filed customer claims against the BLMIS estate. Here, Defendant filed his customer claim to recover his purported net equity from BLMIS, triggering the claims allowance process and subjecting himself to this Court's equitable jurisdiction to address his claim, and any related fraudulent transfer claim brought by the Trustee.

Defendant asserts that because he did not object to the Trustee's Notice of Determination of Claim—which denied his claim for net equity—he did not consent to this Court's jurisdiction. However, Defendant's failure to object means nothing in the face of his filed customer claim. Regardless of the status of Defendant's claim, it is the very filing of that claim—not its validity at any given stage of the litigation—that nullified Defendant's jury demand. As the District Court recently determined, any rule that allowed this Court's authority to fluctuate over the course of the litigation is simply not workable.

Even if Defendant were correct that his customer claim must have been contested at the time the Trustee filed his action against him, the facts here support that outcome as well. The Second Circuit did not affirm the Trustee's net equity methodology until August 16, 2011, and the Supreme Court denied *certiorari* a year later on June 25, 2012. Defendant's customer claim was therefore not finally and completely disallowed until well after the Trustee filed the Greiff Action on November 30, 2010. Thus, Defendant's live and justiciable claim was timely met with the instant action. Simply, Defendant invoked this Court's jurisdiction where there is no right to a jury trial.

2

Defendant's additional grounds for withdrawal under 28 U.S.C. § 157(d) based on "substantial" issues of fact fail because none of those identified issues involve "substantial and material consideration" of non-bankruptcy federal law. Instead, the factual issues relate to the merits of the Trustee's claim under the Bankruptcy Code and were already tried and resolved by this Court in other adversary proceedings brought by the Trustee. As a result, there is no basis for withdrawal of the reference, let alone a demonstrated likelihood of success required to prevail on a motion for a stay.

Nor do any of the other factors militate in favor of a stay. Defendant claims that he will be harmed if he is deprived of a jury trial, but harm—much less irreparable harm—cannot arise from a nonexistent right. The Trustee and BLMIS customers for whose benefit he acts will be harmed if avoidance defendants like Greiff are allowed to needlessly delay trial ready cases—for at least a year, if this case follows the same timeline as the prior cases that attempted this maneuver. Trial-ready cases must be tried, or this liquidation will never be concluded. The Motion should be denied.

## STATEMENT OF FACTS

### A.    The Claims Procedures Order

This liquidation proceeding was commenced on December 15, 2008 by order of District Judge Louis L. Stanton, who referred the case to the Bankruptcy Court pursuant to SIPA § 78eee(b)(4).[3] On December 23, 2008, the Bankruptcy Court entered the Claims Procedures Order,[4] which sets forth "a systematic framework for the filing, determination and adjudication of claims

---

[3] *See* Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Dec. 15, 2008), ECF No. 1.

[4] *See* Order on Application For An Entry Of An Order Approving Form And Manner Of Publication And Mailing Of Notices, Specifying Procedures For Filing, Determination, And Adjudication Of Claims; And Providing Other Relief (the "Claims Procedures Order"), *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB) (Bankr. S.D.N.Y. Dec. 23, 2008), ECF No. 12. A true and correct copy of the Claims Procedures Order is attached hereto as Exhibit 2 to the Cremona Declaration.

3

in the BLMIS liquidation proceeding." *Peskin v. Picard*, 413 B.R. 137, 143 (Bankr. S.D.N.Y.

2009). Under this order, customers were required to file claims with the Trustee by the statutory

bar date. Claims Procedures Order at *3; SIPA § 78fff-2(a)(2). If BLMIS's books and records

failed to support the claim or the claim was not otherwise established to the Trustee's satisfaction,

the Trustee denied it and notified the claimant of his determination in writing. *Id.* at *5-7 (citing

SIPA § 78fff-2(b)). If the claimant did not object to the Trustee's determination, the claim

determination was deemed approved by the Bankruptcy Court and binding on the claimant.

Claimants who disagreed were required to file objections within thirty days of receipt of the

Trustee's determination. *Id.* at *6-7.

This process is consistent with claims procedures in SIPA cases since its enactment in

1970. *Id.*

## B.    Defendant's BLMIS Customer Claim

In accordance with the Claims Procedures Order, on January 17, 2009, Defendant filed a

customer claim for BLMIS Account No. 1ZB324, which the Trustee designated as Claim #000626

(the "Customer Claim"). On August 28, 2009, the Trustee sent a Notice of Trustee's Determination

of Claim (the "Notice") with respect to the Customer Claim.[5]

As set forth in the Notice, the Trustee applied a cash in/cash out methodology (the "Net

Investment Method") to determine the amount of the Customer Claim. The Trustee denied the

Customer Claim based on the negative "net equity"[6] in Defendant's BLMIS accounts because (i)

BLMIS never purchased any securities on behalf of Defendant's accounts—any and all profits

reported to Defendant by BLMIS on his account statements were fictitious; (ii) Defendant

---

[5] A true and correct copy of the Notice is attached hereto as Exhibit 3 to the Cremona Declaration.
[6] A BLMIS customer has negative "net equity" where his/her life-to-date withdrawals from BLMIS exceeds his/her life-to-date deposits.

4

withdrew more funds than he deposited with BLMIS; and (iii) the funds received in excess of the

deposits in Defendant's account were taken from other BLMIS customers and given to Defendant.

*See* Notice at p. 2.

Notwithstanding the denial of the Customer Claim, the Notice preserved Defendant's rights

and claims related to the Trustee's net equity methodology until a final and unappealable court

order was issued, as it stated:

> Should a final and unappealable court order determine that the Trustee is
> incorrect in his interpretation of "net equity" and its corresponding
> application to the determination of customer claims, the Trustee will be
> bound by that order and will apply it retroactively to all previously
> determined customer claims in accordance with the Court's order. Nothing
> in this Notice of Trustee's Determination of Claim shall be construed as a
> waiver of any rights or claims held by you in having your customer claim
> re-determined in accordance with any Court order.

*Id.*. Thus, Defendant was entitled to a re-determination of his Customer Claim if the Net

Investment Method was not affirmed by the courts.

### C.    The Net Equity Dispute

Since the commencement of the liquidation, the Trustee and numerous BLMIS customers

have extensively litigated before the courts over the appropriate methodology for calculating

customer claims under SIPA. Specifically, BLMIS customers challenged the Trustee's Net

Investment Method by asserting that they should be entitled to recover the amounts on their last

account statement, even though those statements reflected fictitious profits and nonexistent trades,

because that would allow them to retain amounts they withdrew in excess of their cash deposits

(the "Last Statement Method"). *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In*

*re Bernard L. Madoff Inv. Secs. LLC)*, 424 B.R. 122, 125 (Bankr. S.D.N.Y. 2010) (the "*Bankruptcy*

*Court Net Equity Decision*").

On March 1, 2010, the Bankruptcy Court approved the Trustee's Net Investment Method, finding that "the Net Investment Method is appropriate because it relies solely on unmanipulated withdrawals and deposits and refuses to permit Madoff to arbitrarily decide who wins and who loses . . . ." *Id.* at 140. The Bankruptcy Court subsequently entered an order on March 8, 2010 that (1) upheld the Trustee's determinations denying customer claims for the amounts as stated on their last BLMIS account statements as of November 30, 2008; (2) affirmed the Trustee's Net Investment Method; and (3) overruled any objections, solely with respect to the Trustee's application of the Net Investment Method.[7]

On a direct appeal, the Second Circuit Court affirmed the *Bankruptcy Court Net Equity Decision* as a matter of law, holding that it would be "legal error" for the Trustee to rely on the Last Statement Method. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011) (the "*Second Circuit Net Equity Decision*"). The Second Circuit stated that reliance on the fictitious profits shown on customer statements "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id.* at 235.

On June 25, 2012, the United States Supreme Court denied *certiorari*, which finally and conclusively settled Trustee's Net Investment Method as the only appropriate method to calculate the net equity held by BLMIS customers in their accounts. *See Ryan v. Picard*, 133 S. Ct. 24 (2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012).

---

[7] *See* Order (1) Upholding Trustee's Determination Denying Customer Claims For Amounts Listed On Last Customer Statement; (2) Affirming Trustee's Determination Of Net Equity; and (3) Expunging Those Objections With Respect To The Determinations Relating to Net Equity (hereinafter the "Net Equity Order"), *In re: Bernard L. Madoff*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. March 8, 2010), ECF No. 2020. A true and correct copy of the Net Equity Order is attached hereto as Exhibit 4 to the Cremona Declaration.

D.    **The Trustee's Avoidance Action Against Defendant**

Before the Trustee's Net Investment Method was upheld by the Second Circuit and deemed

unappealable with the denial of *certiorari*, the Trustee commenced the Greiff Action by filing the

complaint on November 30, 2010 (the "Complaint").[8] The Complaint asserted, *inter alia*, claims

pursuant to §§78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, §§ 105(a), 544, 548(a), 550(a), and

551 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*., and other applicable laws,

seeking the avoidance and recovery of fraudulent transfers in connection with certain transfers of

property by BLMIS to or for the benefit of Defendant. *Id.* The Complaint referenced the existing

Customer Claim and Notice issued by the Trustee. *Id.* ¶¶ 40-41. Defendant filed an answer (the

"Answer") denying the Complaint's material allegations, and asserting numerous affirmative

defenses, including that the Trustee has improperly calculated the amount of fictitious profits he

seeks to avoid based upon the Net Investment Method.[9]

The Greiff Action is predicated on Defendant's negative "net equity" in his BLMIS account

as of December 11, 2008. The Trustee seeks to recover the fictitious profits Defendant received

from BLMIS during the two-year period preceding the liquidation. At the same time, the Customer

Claim is predicated on the purported securities transactions reflected on Defendant's final monthly

account statements received from BLMIS in November 2008 and seeks to not only retain the

fictitious profits received by Defendant, but also to recover the full balance of his customer account

as reflected on his final account statements. As recently stated by this Court, "to compute the

amount of fictitious profits, the Trustee must engage in the same exercise" as to compute net equity

for creditors of BLMIS. *Picard v. BAM, L.P.,* 597 B.R. 466, 474 (Bankr. S.D.N.Y. 2019), *leave to*

---

[8] Complaint, *Picard v. Greiff,* Adv. Pro. No. 10-04357 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2010), ECF No. 1.
[9] *See* Answer and Affirmative Defenses to the Complaint at 12-15, *Picard v. Greiff,* Adv. Pro. No. 10-04357 (SMB) (Bankr. S.D.N.Y. Aug. 17, 2015), ECF No. 47.

*appeal denied sub nom.* No. 18-cv-09916 (VSB), 2020 WL 915822 (S.D.N.Y. Feb. 26, 2020) (the

"*Equitable Jurisdiction Decision*").

### E.    Motion To Withdraw The Reference

During the pre-trial conference held on February 20, 2020, this Court set trial to start on

April 7, 2020.[10] On March 4, 2020, Defendant filed his motion to withdraw the reference of the

Greiff Action to the District Court for a jury trial (the "Motion to Withdraw").[11] The Motion to

Withdraw has not yet been assigned to a District Court Judge.

### ARGUMENT

## I.    DEFENDANT CANNOT MEET THE STANDARDS FOR A STAY

Federal Rule of Bankruptcy Procedure 5011(c) provides that the filing of a motion to

withdraw the reference does not stay proceedings unless the Bankruptcy Court so orders that a stay

is warranted. *See* Fed. R. Bankr. P. 5011(c) ("The filing of a motion for withdrawal of a case or

proceeding . . . shall not stay the administration of the case or any proceeding therein . . . except

that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings

pending disposition of the motion."). Defendant "bears the burden of proof in demonstrating that

a stay of proceedings pending a determination of a motion to withdraw the reference would be

proper." *In re Chrysler LLC*, No. 09-50002 (AJG), 2009 WL 7386569, at *1 (Bankr. S.D.N.Y.

May 20, 2009) (citing *In re Dana Corp.,* No. 06–10354 (BRL), 2007 WL 2908221, at *1 (Bankr.

S.D.N.Y. Oct. 3, 2007)).

To obtain a stay, Defendant must demonstrate (a) the likelihood of prevailing on the merits;

(b) that Defendant will suffer irreparable harm if the stay is denied; (c) that the Trustee will not be

---

[10] *See* Exhibit 2, at 7:22-23, *supra* n.2.
[11] *See* Defendant James Greiff's Memorandum of Law in Support of Motion to Withdraw the Reference Pursuant to 28 U.S.C. § 157(d), Fed. R. Bankr. P. 5011, and Rule 5011-1 of the Local Rules, *Picard v. Greiff,* Adv. Pro. No. 10-04357 (SMB) (Bankr. S.D.N.Y. Mar. 4, 2020), ECF No. 112.

substantially harmed by the stay; and (d) that the public interest will be served by granting the stay.

*Id.* (citing *In re Issa Corp.,* 142 B.R. 75, 77 (Bankr. S.D.N.Y. 1992)); *see also In re Residential Capital, LLC,* 519 B.R. 890, 904 (Bankr. S.D.N.Y. 2014). Defendant cannot meet this standard.

### A.    Defendant Is Not Likely To Prevail On The Merits Because The District Court Already Held That Defendant's Right To A Jury Trial Is Extinguished Based On Filing Of Customer Claim

Defendant's likelihood of success on the Motion to Withdraw is not only unlikely—the Motion to Withdraw is futile. He filed his motion in the face of clear and controlling precedent from the District Court denying similar motions to withdraw filed in the Trustee's avoidance actions, all of which share similar factual predicates and legal issues as the Greiff Action. *See, e.g., Picard v. BAM, L.P.,* No. 18-cv-09916 (VSB), 2020 WL 915822, at *1 (S.D.N.Y. Feb. 26, 2020); *Picard v. Saren-Lawrence,* No. 17 Civ. 5157 (GBD), 2018 WL 2383141, at *4-5 (S.D.N.Y. May 15, 2018), *recons. denied sub nom.*, 2018 WL 4659476 (S.D.N.Y. Sept. 11, 2018). Moreover, the grounds on which the District Court denied the other motions are well-established, and Defendant has little chance of obtaining a different result.

### 1.    Defendant Has Submitted To The Equitable Jurisdiction Of The Bankruptcy Court To Decide All Matters Related To His Customer Claim

The basis of Defendant's Motion to Withdraw is his asserted Seventh Amendment right to a jury trial. Motion ¶¶ 6-9. But as the District Court previously determined, when Defendant filed the Customer Claim on January 17, 2009, he "trigger[ed] the process of allowance and disallowance of claims" and "subject[ed] [himself] to the bankruptcy court's equitable power." *See BAM, L.P.,* 2020 WL 915822, at *6 (citing *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990)); *see also First Fid. Bank N.A. v. Hooker Invs. Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 838 (2d Cir. 1991) ("[A] creditor who invokes the bankruptcy court's equitable jurisdiction to establish a claim again a debtor's estate is also subject to the procedures of equity in the determination of

9

preference actions brought on behalf of the estate."). And in so doing, Defendant extinguished any right to a jury trial of any related fraudulent transfer claim, including those asserted by the Trustee in the Greiff Action. *See BAM, L.P.,* 2020 WL 915822, at *6; *see also Equitable Jurisdiction Decision,* 597 B.R. at 476 (finding that "the filing of a claim [against the bankruptcy estate] brings the creditor within the bankruptcy court's equitable jurisdiction where the avoidance action will be determined by the bankruptcy court without a jury.").

Indeed, the Supreme Court has made it clear that while the Seventh Amendment's jury right extends to suits at common law, such as fraudulent conveyance and preference actions, it does not extend to those triable in equity. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989); *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323, 1328 (2d Cir. 1993). Here, the District Court previously determined that when the defendant "file[d] a proof of claim against a bankruptcy estate and [was] later met with a trustee's fraudulent conveyance or preferential transfer action, "that action [became] part of the claims-allowance process which is triable only in equity." *BAM L.P.*, 2020 WL 915822, at *6 (citing *Langenkamp*, 498 U.S. at 44). In other words, "the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." *Langenkamp*, 498 U.S. at 44 (holding that those creditors who submitted claims against debtors' bankruptcy estates had no right to jury trial when sued by trustee to recover preferential transfers); *see also In re CBI Holding Co.*, 529 F.3d 432, 466 (2d Cir. 2008) (stating that "a creditor who files such a claim subjects itself to the bankruptcy court's equitable jurisdiction in proceedings affecting that claim."); *In re Residential Capital, LLC*, 698 F. App'x 16, 17 (2d Cir. 2017) ("When Boyd filed a proof of claim with the bankruptcy court in 2011, he invoked the special rules of bankruptcy concerning objections to the claim." (internal quotation marks omitted)).

10

This well-settled precedent was not upended by the Supreme Court's decision in *Stern v. Marshall,* 564 U.S. 462 (2011), as both this Court and the District Court concluded after conducting exhaustive analyses. *See, e.g., BAM, L.P.,* 2020 WL 915822, at *5, n.10; *Equitable Jurisdiction Decision,* 597 B.R. at 484-85. In *Stern*, the Supreme Court held that a bankruptcy court lacks the constitutional authority to enter a final judgment on a debtor's state law counterclaim because the creditor filed an unrelated proof of claim, notwithstanding the counterclaim's status as a "core" proceeding under 28 U.S.C. § 157(b). 564 U.S. at 502. In addition, the debtor's counterclaim in *Stern* was a "state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in the bankruptcy." *Id.* at 487.

In contrast, as this Court determined and the District Court subsequently affirmed, "the Trustee does not bring a common law counterclaim under state law, but an avoidance action under 11 U.S.C. § 548 and § 550 that, due to the nature of § 502(d), are part and parcel of Defendants' own claim." *BAM, L.P.,* 2020 WL 915822, at *5, n.10 (citing *Stern,* 564 U.S. at 498). The District Court further explained that "a creditor's claim and a trustee's claim are at all times necessarily inextricably intertwined, because the success of the latter claim forecloses the success of the former, leaving no question as to whether the trustee's claim will 'necessarily be resolved' through the claims-allowance process." *Id.* at *9; *Picard v. Greiff*, 476 B.R. 715, 729 (S.D.N.Y. 2012) (noting that under the first step in computing potential clawback liability, "amounts transferred by Madoff Securities to a given defendant at any time are netted against the amounts invested by that defendant in Madoff Securities at any time."), *aff'd sub nom. on other*

11

grounds, *Picard v. Ida Fishman Rev. Trust* (*In re BLMIS*), 773 F.3d 411 (2d Cir. 2014), *cert.*

*denied*, 135 S.Ct. 2859, 192 L.Ed.2d 910 (2015).[12]

As a result, when Defendant filed the Customer Claim, he "invoked th[e] Bankruptcy

Court's jurisdiction with regard to any matters affecting the disposition of [his] claims," including

the Greiff Action, and has "no right to a jury trial." *Saren-Lawrence,* 2018 WL 2383141, at *4;

*see also Picard v. Estate of Madoff,* 464 B.R. 578, 586 (S.D.N.Y. 2011) (holding that because the

defendants "invoked the aid of the bankruptcy court by offering a proof of claim and demanding

its allowance [they] must abide by the consequences of that procedure," and there is "no basis for

[them] to insist that the issue be resolved in an Article III Court.).

### 2. The Status of the Customer Claim Does Not Affect The Bankruptcy Court's Equitable Jurisdiction

Despite the heavily precedential rulings issued by this Court and the District Court in *BAM,*

*L.P.,* Defendant insists that this case is different because at the time the adversary proceeding was

filed, the claim had been finally determined. Specifically, Defendant insists that the Trustee's

Notice "dispose[d]" of the Customer Claim when he failed to file an objection thirty days after

July 1, 2010, the date on which the Trustee mailed the Notice to Defendant. Motion ¶¶ 16-17.

However, Defendant fails to acknowledge that the Notice still preserved all of his rights related to

the Customer Claim if a "final and unappealable court order" determined that the Trustee's net

equity calculations were incorrect and allowed for the Customer Claim to be re-determined and

---

[12] Defendant asserts that the Trustee did not assert a §502(d) claim in the Complaint or object to the Customer Claim in the Greiff Action, but the District Court made clear that "given the nature of § 502(d), it was understood from the moment the Trustee's adversarial proceeding was filed that resolution of Defendants' customer claims necessitated the prior resolution of the Trustee's claims." *BAM, L.P.,* 2020 WL 915822, at *8; *see also Equitable Jurisdiction Decision,* 597 B.R. at 476 (noting that §502(d) establishes "the link between this adversary proceeding to avoid and recover fraudulent transfers and the claims allowance process triggered by the Defendants' Claims"); *Saren-Lawrence,* 2018 WL 2383141, at *4 ("Because 11 U.S.C. § 502(d) provides that the claims of pre-petition fraudulent transfers may be disallowed," an adversary proceeding that invokes "11 U.S.C. § 548 is part of the claims allowance process . . .and does not carry a jury trial right.") (citation omitted)).

re-calculated in accordance with any such court order. Notice at p. 2. Here, the Trustee's net equity calculations were <u>not</u> finally determined at the time the Trustee filed the Greiff Action on November 30, 2010. The Supreme Court did not deny *certiorari* of the *Second Circuit Net Equity Decision* until June 25, 2012. Accordingly, there was still a live, justiciable claim that was met with the Trustee's complaint on November 30, 2010, effectively subjecting Defendant to the Bankruptcy Court's equitable jurisdiction.

In addition, while the *Second Circuit Net Equity Decision* has since provided the framework for the Trustee's net equity calculations, the Trustee still has to provide evidentiary support for the actual inputs for his net equity calculations, namely the transfers to and from Defendant's BLMIS customer account (deposits and withdrawals) to establish his *prima facie* case of actual fraudulent transfer under § 548(a)(1)(A) of the Bankruptcy Code in the two years prior to the filing of the bankruptcy petition. Thus, the determination of Defendant's fraudulent transfer liability is inseparable from that of his net equity. *See, e.g., Equitable Jurisdiction Decision,* 597 B.R. at 475; *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* (*In re Madoff Sec.*), 499 B.R. 416, 420 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*").

That said, the Bankruptcy Court's authority is not contingent on the continued presence of a contested proof of claim. Regardless of what happened to the Customer Claim, it is the very filing of that claim—not its validity, or status at any given stage of the litigation—that nullified Defendant's jury demand. As the District Court made clear, any sort of rule that allowed the Bankruptcy Court's authority to "fluctuate in time depending on the 'precise positions of the parties and the evidence presented' at any given stage in the proceeding' . . . is simply not workable." *BAM, L.P.,* 2020 WL 915822, at *9 (citing *Messer v. Magee (In re FKF 3, LLC)*, No. 13 Civ. 3601 (KMK), 2016 WL 4540842, at *8 (S.D.N.Y. Aug. 30, 2016); *see also BAM, L.P.,*

597 B.R. at 483 (noting "the dismissal of the bankruptcy case does not automatically strip the

bankruptcy court of jurisdiction over pending litigation."). The District Court explained further:

> To hold otherwise would have the anomalous result that a creditor waives its jury
> trial right only if all or a portion of its proof of claim is allowed, yet retains the right
> if its proof of claim is disallowed in its entirety. In other words, the conversion of
> the contract dispute from a legal issue to an equitable issue would be temporary and
> would become permanent only if the proof of claim were allowed in order to offset
> the contract issue affirmatively raised by the debtor. If not, the creditor would have
> a right to a jury trial. There is no support for such a finding.

*BAM, L.P.,* 2020 WL 915822, at *9 (citing *In re WorldCom, Inc.*, 378 B.R. 745, 755 (Bankr.

S.D.N.Y. 2007)). Because Defendant filed his Customer Claim, he was and remains subject to

Bankruptcy Court's equitable jurisdiction, and is not entitled to a jury trial.

### 3.    There Is No Reason To Deviate From Prior Rulings Of The District Court

Defendant asserts that "the appropriate procedure for the determination of the fraudulent

conveyance issue is withdrawal of the reference for jury trial in the district court." Motion ¶ 3.

However, Defendant relies on cases that are factually inapplicable here. For example, in *In re*

*FKF3, LLC*, the District Court granted the motion to withdraw the reference mainly because there

were non-bankruptcy causes of action at issue. 2016 WL 4540842, at *9-10, 16-19. That is not the

case here, where the Trustee asserts only fraudulent conveyance claims under the Bankruptcy Code

and SIPA. Defendant also cites to *Smith v. Dowden,* 47 F.3d 940 (8th Cir. 1995), but as Defendant

acknowledges in the Motion there, the bankruptcy court granted a motion to withdraw the claim

pursuant to Fed. R. Bankr. P. 3006, which is not applicable here.

In addition, Defendant's reliance on both *Germain,* 988 F.2d 1323, and *In re CBI Holding*

*Co., Inc.*, 529 F.3d 432, to assert that the filing of the Customer Claim did not waive his right to a

jury trial is misplaced, given that the District Court already determined that by filing such a claim,

Defendant "trigger[ed] the process of 'allowance and disallowance of claims,' thereby subjecting

14

[himself] to the bankruptcy court's equitable power." *BAM, L.P.,* 2020 WL 915822 (citing

*Langenkamp*, 498 U.S. at 42) (internal quotations omitted). The Second Circuit earlier held that

where "defendants filed a proof of claim against the [bankruptcy] estate" in this SIPA liquidation

and, "[i]n order to rule on that claim, the Bankruptcy Court was required to first resolve [a]

fraudulent transfer issue," the Bankruptcy Court could adjudicate both. *In re Bernard L. Madoff*

*Inv. Sec. LLC*, 740 F.3d 81, 95 (2d Cir. 2014); *see In re CBI Holding Co.*, 529 F.3d at 467-68

(emphasizing that "[a]n action that bears directly on the allowance of a claim is integrally related

to the equitable reordering of debtor-creditor and creditor-creditor relations. If an equitable

reordering cannot be accomplished without resolution of what would otherwise be a legal dispute,

then that dispute becomes an essential element of the broader equitable controversy." (quoting

*Germain*, 988 F.2d at 1329)).[13]

Here, when Defendant previously moved to withdraw the reference to the Bankruptcy

Court on discrete issues[14] and after the District Court issued its rulings on those discrete issues,

the District Court did not retain jurisdiction over the avoidance actions, but instead explicitly

directed the action "be returned to the Bankruptcy Court for further proceedings consistent with

th[e] Opinion and Order." *See, e.g., Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490

---

[13] Defendant mischaracterizes this Court's summary judgment ruling in *BAM, L.P.,* as finding that "the claims allowance process and the avoidance action do not involve the same cause of action or evidence." Motion ¶ 19 (citing *BAM, L.P.* 608 B.R. at 180). Instead, the Court determined that the doctrine of *res judicata* did "not foreclose the Defendants' argument that the Two-Year Transfers were not made by BLMIS." That is not the issue here. The Defendant's Customer Claim still triggered the Bankruptcy Court's equitable jurisdiction because the resolution of the Trustee's avoidance claim "affects the allowance or disallowance of the [Defendant's claim] or is otherwise so integral to restructuring of the debtor-creditor relationship." *Equitable Jurisdiction Decision,* 597 B.R. at 476. There is no res judicata issues at play here.

[14] In April 2012, the District Court instituted a briefing protocol to facilitate consolidated briefing on common issues raised in motions to withdraw the reference, including those previously filed by Defendant, who participated on the following issues: (1) whether the Supreme Court's decision in *Stern v. Marshall* precluded the Bankruptcy Court from entering final judgment on the Trustee's claims (Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), ECF No. 4); and (2) whether the Trustee's claims against certain defendants should be dismissed in light of the defendants' affirmative defense that defendants provided "value" on account of antecedent debt within the meaning of 11 U.S.C. § 548(c) (Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 107). The consolidated briefing resulted in the *Stern Consolidated Decision* and *Antecedent Debt Decision*, respectively.

B.R. 46, 59 (S.D.N.Y. 2013) (the "*Stern Consolidated Decision*"); *Antecedent Debt Decision*, 499

B.R. at 416. Accordingly, no harm can be derived from adjudicating this action before the court

with the proper authority and jurisdiction—the Bankruptcy Court.

**B.     No Substantial and Material Consideration of Non-Bankruptcy Federal Law Is Required to Resolve Defendant's Asserted Factual Issues**

Withdrawal of the reference "is reserved for cases where substantial and material

consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the

proceeding." *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d. 984,

995 (2d Cir. 1990) (citing *Int'l Ass'n of Machinists and Aerospace Workers v. Eastern Air Lines,*

*Inc. (In re Ionosphere Clubs, Inc.)*, 103 B.R. 416, 418–19 (S.D.N.Y. 1989)). "Substantial and

material consideration" requires a bankruptcy judge to "engage in significant interpretation, as

opposed to simple application, of federal laws apart from the bankruptcy statutes." *N.Y.C. v. Exxon*

*Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991); *Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron*

*Corp.)*, 388 B.R. 131, 136 (S.D.N.Y. 2008).

Defendant asserts that "there are substantial issues of fact warranting the jury trial before

the District Court," Motion ¶ 30, but fails to articulate how any of the three asserted factual issues

involve the "substantial and material consideration" of non-bankruptcy federal law, as required

under 28 U.S.C. § 157(d). Not only are these issues subsumed by the merits of the Trustee's claim

under the Bankruptcy Code, these are also issues that the Bankruptcy Court has already tried and

resolved in the Trustee's favor when raised by similarly-situated defendants in substantively

identical adversary proceedings. *See generally Picard v. Nelson (In re Bernard L. Madoff)*, 610

B.R. 197 (Bankr. S.D.N.Y. 2019).[15] Dissatisfied with the Bankruptcy Court's findings—which

---

[15] Defendant's assertions in his Motion to Withdraw that this Court's clear and principled determinations of these issues in *Nelson* were "insupportable and clear error," is neither an adequate nor appropriate basis for withdrawal of the reference. Motion to Withdraw at 7, n.6.

rejected the same claims Defendant asserts here—Defendant now seeks a new forum to lodge these

same rejected claims.

   2.    **Whether BLMIS Made the Transfers or Was a Ponzi Scheme Are Elements of the Trustee's Section 548(a)(1)(A) Claim and Are Immaterial to the Trustee's Standing to Sue**

   Defendant asserts that the Trustee cannot meet his burden of proving the transfers he seeks

to avoid and recover in this action were made by the debtor, BLMIS, and not Madoff, as an

individual or by his sole proprietorship. Motion ¶ 27. Defendant also asserts that this account

management issue "challenges the Trustee's assumption that BLMIS acted as a Ponzi Scheme"

and "warrants rejecting the holdings of several prior decisions where the Ponzi scheme label was

not in dispute." Motion to Withdraw ¶ 21; *see also* Motion ¶ 28. As a result, Defendant attempts

to frame the factual issues in this Greiff Action as a threshold standing issue for the District Court

to withdraw and resolve.[16]

   However, these are factual issues that relate solely to the Trustee's substantive claims,

which arise under the Bankruptcy Code. Pursuant to § 548(a)(1)(A), the Trustee is authorized to

"avoid any transfer . . . of an interest *of the debtor* in property . . . that was made . . . within 2 years

before the date of the filing of the petition, if *the debtor* voluntarily or involuntarily . . . made such

transfer . . . with actual intent to hinder, delay or defraud any entity to which the debtor was or

became, on or after the date that such transfer was made or . . ., indebted . . . ." (emphasis added).

Additionally, under SIPA § 78fff-2(c)(3), the Trustee may recover any customer property

transferred by the debtor using the avoidance and recovery provisions of the Bankruptcy Code.

Accordingly, in order to avoid and recover the transfers the Trustee alleges Defendant received,

---

[16] Defendant also disputes the Trustee's calculation of the withdrawals made from Greiff's BLMIS accounts, asserting that "the Trustee has inflated the withdrawal amount by $1,154,816." Motion ¶ 29. This is a purely factual issue that does not merit withdrawal as the Bankruptcy Court is well equipped to determine—and has done so numerous times—the correct calculation of transfers in and out of BLMIS customer accounts and does not involve "substantial and material consideration" of non-bankruptcy federal law.

the Trustee must demonstrate, among other things, that the transferred customer property was transferred by the debtor broker-dealer.

Like the Defendant here, the *Nelson* defendants argued that the Trustee lacked standing to avoid the transfers because Madoff, rather than BLMIS, made the transfers. *Nelson*, 610 B.R. at 215. This Court rejected this premise entirely, concluding that the defendants "conflate[d] subject matter jurisdiction with the merits of the Trustee's claim[]." *Id.* Instead, this Court concluded that standing was established because the Trustee

> br[ought] the avoidance actions as a representative of an insolvent customer property estate to avoid and recover transfers for the benefit of the customer property estate which was injured by the fraudulent transfers of customer property, and the Trustee's action will redress that injury by replenishing the funds in the customer property estate available to satisfy the customers' net equity claims in the SIPA proceeding.

*Nelson*, 610 B.R. at 215 (citations omitted). In short, this Court concluded that "[t]he Trustee certainly has standing to argue that BLMIS made the Two-Year Transfers," and "[i]f he cannot prove this, he will lose on the merits." *Id.*

After a trial, this Court accepted as findings of fact, *inter alia*, that (1) BLMIS made the transfers in dispute, and (2) Madoff was operating a Ponzi scheme through his investment advisory business. *See id.* at 208-10. While not binding on Defendant, these findings of fact by this Court relate to common issues surrounding BLMIS's business, which are applicable to all adversary proceedings brought by the Trustee. The Trustee intends to offer essentially the same evidence in every adversary proceeding tried, and it is unlikely that a different result will be reached in any other case on these common and already-decided issues. Indeed, the Motion to Withdraw is a transparent attempt to have a different judge in the District Court hear the claims that this Court already decided adversely to Defendant. But, just as in *Nelson*, this Court should conclude that these factual issues relate to the merits of the Trustee's claim under section 548(a)(1)(A) and are

18

irrelevant to the question of whether the Trustee has standing to bring the avoidance action. And

because no non-bankruptcy federal law must be consulted to resolve these issues, Defendant will

not prevail on his Motion to Withdraw.

### C.    Other Factors Weigh Against Withdrawal Of The Reference

The District Court previously determined that none of the other relevant factors, including

"considerations of efficiency, costs, and uniformity," warranted withdrawal of the Trustee's

avoidance actions. *BAM, L.P.,* 2020 WL 915822, at *5; *see also Saren-Lawrence,* 2018 WL

2383141, at *5 (citing *In re FKF 3, LLC,* 2016 WL 4540842, at *5)). Specifically, the District

Court held:

> withdrawal of the bankruptcy reference . . . would severely delay resolution
> of the avoidance action, would strip determination of core issues from a
> forum that has developed significant expertise over this SIPA liquidation,
> and would risk producing inconsistent outcomes given Bankruptcy Judge
> Bernstein's involvement in 'numerous [other] adversary proceedings to
> avoid and recover transfers BLMIS made to certain customers.'

*BAM, L.P.,* 2020 WL 915822, at *5 (citing *Sec. Investor Prot. Corp. v. BLMIS*, 568 B.R. 203

(Bankr. S.D.N.Y. 2017), *aff'd,* 598 B.R. 102 (S.D.N.Y. 2019)). The District Court further noted

that withdrawal is disfavored here where Judge Bernstein "has great familiarity with the facts

regarding the BLMIS Estate," and has "overseen the Defendant['s] and Trustee's claims for over

a decade." *Id.; see also Saren-Lawrence,* 2018 WL 2383141, at *6 (same); *Shapiro v. JPMorgan*

*Chase & Co.,* Nos. 11 Civ. 8331 (CM) (MHD), 11 Civ. 7961 (CM), 2014 WL 1224666, at *2

(S.D.N.Y. Mar. 24, 2014) ("Judge Bernstein's intimate familiarity with the Madoff matter causes

this court to view his conclusions with particular deference."). The Bankruptcy Court is in the best

position to conduct the trial of the Greiff Action promptly and efficiently. *See, e.g., In re*

*Residential Capital, LLC,* 519 B.R. at 905 (in denying motion for stay, noted that "[t]his Court is

most efficient judicial forum to resolve claims against the Debtors, and moving this proceeding to

19

another forum would further delay the claims allowance process, increase attendant administrative costs, and encourage forum shopping.").

### B.    <u>Defendant Will Not Suffer Irreparable Harm If The Stay Is Denied</u>

Defendant will not be irreparably harmed by denial of the Motion. Defendant elected to submit his claim against the estate, invoking this Court's exclusive jurisdiction and waiving his right to a jury trial. As confirmed by the District Court, his jury trial right was extinguished by the filing of his Customer Claim. No harm, much less irreparable, can arise from a nonexistent right. His knowing and voluntary submission to this Court's equitable jurisdiction in 2009 and resultant forfeiture of the jury trial right cannot now be used to claim prejudice.

### D.    <u>The Trustee Will Be Harmed If The Motion Is Granted</u>

The Trustee and the net loser victims will be prejudiced by a stay of the Greiff Action, which is currently set for trial on April 7, 2020. Defendant has no viable legal defenses and has no factual record to rebut the Trustee's claim. Discovery has now been closed for nearly three years and mediation was finally concluded in November 2019. Defendant has needlessly delayed the resolution of this case by maintaining defenses that have been repeatedly rejected by this Court and the District Court. The Motion to Withdraw, and the current Motion, are just more of the same.

It cannot be overstated how long these frivolous motions delay the resolution of the Trustee's avoidance actions. For example, in *Picard v. BAM, L.P.,* Adv. Pro. No. 10-04390 (SMB), which involved defendants represented by the same counsel here, a trial was scheduled to begin on December 3, 2018, but the defendants moved to withdraw the reference on their purported jury right on October 26, 2018, and later moved to stay the trial pending the resolution of the withdrawal motion on November 20, 2018. *See, e.g., Picard v. BAM, L.P.,* Adv. Pro. No. 10-04390 (SMB), ECF Nos. 108, 114, 121. However, it took over 15 months for the motions to be fully adjudicated

20

and for the District Court to ultimately reject and return the action to this Court for further

proceedings on February 26, 2020.[17] *See generally BAM, L.P.,* 2020 WL 915822.

Defendant's suggestion that a stay would not harm the Trustee reflects a fundamental

misunderstanding of the parties-in-interest in this action. The Trustee acts on behalf of BLMIS

customers, particularly those who have not yet recovered their full principal investment. It is time

for this case to move toward final resolution without further delay so that the Trustee may recover

those fictitious profits that Defendant has wrongfully held onto for the last ten-plus years, and

ratably distribute that amount to the net loser victims that have not yet recovered their full principal

investment. This case is trial ready and there is no basis for delay.

### E.    The Public Interest Will Not Be Served By Granting The Stay

The Court should not allow Defendant to further his own interests at the expense of the

administration of the estate as a whole, especially here where the District Court has already

considered and rejected his arguments at length in similarly-situated avoidance actions. Indeed,

Defendant has engaged in actions over the last ten years that have only resulted in significant delay

and harm to the net loser customers, for whom the Trustee is seeking a full recovery. The public

interest is not furthered by granting a stay.[18]

---

[17] Similarly, in *Picard v. Nelson,* Adv. Pro. No. 10-04377 (SMB); *Picard v. Nelson,* Adv. Pro. No. 10-04658 (SMB); *Picard v. Saren-Lawrence,* Adv. Pro. No. 10-04898 (SMB), the defendants all moved to withdraw the reference on June 29, 2017, but the motions were not fully resolved until over a year later when the District Court issued its rulings denying the defendants' motions to withdraw on May 15, 2018, and subsequent motion for reconsideration on September 11, 2018. *See, e.g., Picard v. Nelson,* Case No. 17-cv-05162 (GBD), ECF Nos. 1, 15, 28; *Picard v. Nelson,* Case No. 17-cv-05163 (GBD), ECF Nos. 1, 16, 29; *Picard v. Saren-Lawrence,* Case No. 17-cv-05157 (GBD), ECF Nos. 1, 18, 31. A consolidated trial of the *Nelson* matters were held on May 8 and 9, 2019, for which this Court issued post-trial findings of fact and conclusions of law on November 21, 2019, and a judgment was subsequently entered on December 9, 2019. *See, e.g., Nelson,* Adv. Pro. No. 10-04377, ECF Nos. 200, 203; *Nelson,* Adv. Pro. No. 10-04658, ECF Nos. 202, 205. For the *Saren-Lawrence* action, a trial was finally set to begin on February 20, 2019, but the parties ultimately agreed to voluntarily dismiss the action on June 25, 2019. *See* Stipulation and Order for Voluntary Dismissal of Adversary Proceeding with Prejudice, *Picard v. Saren-Lawrence,* Adv. Pro. No. 10-04898 (SMB) (Bankr. S.D.N.Y. June 25, 2019), ECF No. 177.
[18] Any further delay and stay of the Greiff Action will militate in favor of awarding prejudgment interest—which this Court has recently awarded at 9% per annum and has stated numerous times that the Trustee is entitled to collect—to counteract the harm to the net loser victims by such delays. *See, e.g.,* Judgment, *Picard v. Nelson*, Adv. Pro. No. 10-

21

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests this Court deny the Motion.

Date:   New York, New York
        March 17, 2020

/s/  Nicholas J. Cremona
_____
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities
LLC and the Estate of Bernard L. Madoff*

---

04377 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2019), ECF No. 203; Judgment, *Picard v. Nelson*, Adv. Pro. No. 10-04658 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2019), ECF No. 205; *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. Nos. 10-04387, 10-04488, 10-04350, 10-05110 (SMB), 2018 WL 1442312, at *15 (Bankr. S.D.N.Y. Mar. 22, 2018); *Picard v. Goldenberg*, Adv. Pro. No. 10-04946 (SMB), 2018 WL 3078149, at *6 (Bankr. S.D.N.Y. June 19, 2018).