**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>         Plaintiff-Applicant, <br><br>    v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>         Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br><br> SIPA LIQUIDATION <br><br><br> (Substantively Consolidated) |
| In re: BERNARD L. MADOFF, <br><br>         Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff, <br><br>         Plaintiff, <br><br>    v. <br><br> Edward A. Zraick, Jr., *et al.*, <br><br>         Defendants. | Adv. Pro. No. 10-05257 (SMB) |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO ZRAICK**
**DEFENDANTS' MOTION *IN LIMINE* TO STRIKE THE SUPPLEMENTAL**
**EXPERT REPORTS OF BRUCE G. DUBINSKY AND LISA M. COLLURA**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................................1

PROCEDURAL BACKGROUND.............................................................................................3

LEGAL STANDARD..................................................................................................................4

ARGUMENT ...............................................................................................................................8

I.      THE SUPPLEMENTAL REPORTS ARE PROPER UNDER FEDERAL RULE
        OF CIVIL PROCEDURE 26 .............................................................................................8

        A.      The Supplemental Reports Expand Upon The Original Conclusions To
                Address Madoff's Subsequently Provided Testimony ............................................8

        B.      The Trustee Timely Supplemented the Expert Reports.......................................12

II.     PRECLUSION IS NEVERTHELESS IMPROPER .........................................................14

        C.      The Supplemental Reports Are Important To The Issues Raised by
                Defendants After the Trustee Served the Initial Reports ......................................15

        D.      Defendants Are Not Prejudiced By The Supplemental Reports............................16

        E.      A Continuance is Possible to Allow For Experts' Depositions ............................18

CONCLUSION...........................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple, Inc. v. Motorola Mobility, Inc.*,
  No. 11-cv-178-bbc, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012) ......................................12

*Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*,
  769 F. Supp. 2d 269 (S.D.N.Y. 2011)...................................................................................6, 9

*Ceglia v. Zuckerberg*,
  287 F.R.D. 152 (W.D.N.Y. 2012)...........................................................................................6, 9

*Design Strategies, Inc. v. Davis*,
  228 F.R.D. 210 (S.D.N.Y. 2005) ..........................................................................................4, 10

*Engler v. MTD Prods., Inc.*,
  304 F.R.D. 349 (N.D.N.Y. 2015) ............................................................................................12

*Ferring Pharm. Inc. v. Serenity Pharm., LLC*,
  No. 1:17-cv-09922(CM (SDA), 2019 WL 5682635 (S.D.N.Y. Nov. 1, 2019) ..................5, 13

*Grdinich v. Bradlees*,
  187 F.R.D. 77 (S.D.N.Y. 1999) ................................................................................................8

*Haas v. Delaware and Hudson Ry. Co.*,
  282 F. App'x 84 (2d Cir. 2008) ................................................................................................7

*INVISTA N.A. S.a.r.l. v. M & G USA Corp.*,
  No. CIV. 11-1007-SLR-CJB, 2013 WL 3216109 (D. Del. June 25, 2013)..............................9

*In re Kreta Shipping S.A.*,
  181 F.R.D. 273 (S.D.N.Y. 1998) ......................................................................................14, 15

*Lab Crafters, Inc. v. Flow Safe, Inc.*,
  No. CV-03-4025 SJF/ETB, 2007 WL 7034303 (E.D.N.Y. Oct. 26, 2007) ........................ 7, 18

*LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*,
  No. 13-11272-JLG, 2019 WL 1750909 (Bankr. S.D.N.Y. Apr. 8, 2019) .............................6, 7

*LaPorte v. Fisher*,
  No. 11-cv-9458, 2014 WL 2924992 (S.D.N.Y. June 27, 2014) ............................................ 18

*Linkov v. Golding*,
  No. 12–CV–2722 (FB)(LB), 2013 WL 5922974 (E.D.N.Y. Oct. 31, 2013) ......................... 17

*Lore v. City of Syracuse*,
No. 00–CV–1833, 2005 WL 3095506 (N.D.N.Y. Nov. 17, 2005) .............................. 7, 16, 17

*Lukensow v. Harley Cars of N.Y.*,
124 F.R.D. 64 (S.D.N.Y. 1989) ........................................................................... 17

*Mathers v. Northshore Mining, Co.*,
217 F.R.D. 474 (D. Minn. 2003) ...................................................................... 6, 10

*Nnadili v. Chevron U.S.A., Inc.*,
Civ. No. 02–1620, 2005 WL 6271043 (D.D.C. Aug. 11, 2005) .............................. 6

*Noffsinger v. Valspar Corp.*,
No. 09 C 916, 2012 WL 5948929 (N.D. Ill. Nov. 27, 2012) ............................... 5, 11

*Optigen, LLC v. Int'l Genetics, Inc.*,
877 F. Supp. 2d 33 (N.D.N.Y. 2012) ...................................................................16

*Papyrus Tech. Corp. v. N.Y. Stock Exch., LLC*,
257 F.R.D. 39 (S.D.N.Y. 2009) ...................................................................7, 8, 18

*Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*,
No. 08-CV-2540 DLI JMA, 2011 WL 1239867 (E.D.N.Y. Mar. 30, 2011) ....................16, 17

*Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
No. 94CIV.5587 (PKL) (RLE), 2002 WL 31780188 (S.D.N.Y. Dec. 11, 2002) ...............8, 18

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ..............................................................................17

*S.E.C. v. Boock*,
No. 09 Civ. 8261 (DLC), 2011 WL 3792819 (S.D.N.Y. Aug. 25, 2011)....................5, 6, 9, 11

*S.W. v. City of New York*,
No. CV 2009-1777 (ENV)(MDG), 2011 WL 3038776 (E.D.N.Y. July 25,
2011) .......................................................................................................................10

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
No. 05 CIV. 09546 (LMM) (THK), 2007 WL 4157163 (S.D.N.Y. Nov. 16,
2007) .................................................................................................................12, 14

*Sanders v. Mount Sinai Med. Ctr.*,
No. 98 Civ. 828(AGS), 1999 WL 1029734 (S.D.N.Y. Nov. 10, 1999)....................................17

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
Adv. Pro. No. 08-01789 (SMB), 2019 WL 654293 (Bankr. S.D.N.Y. Feb. 15,
2019 ............................................................................................................. *passim*

*Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
  354 F. Supp. 3d 508 (S.D.N.Y. 2019)....................................................................7

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
  118 F.3d 955 (2d Cir. 1997)..................................................................7, 15, 16

*U.S. Fire Ins. Co. v. Omnova Sols., Inc.*,
  No. 10–1085, 2012 WL 5288783 (W.D. Penn. Oct. 23, 2012) ................................5

*Ward v. Ramkalawan*,
  No. CV 11–4295(JS)(ARL), 2013 WL 1149108 (E.D.N.Y. Feb. 11, 2013) ......................... 17

*Wechsler v. Hunt Health Sys., Ltd.*,
  381 F. Supp. 2d 135 (S.D.N.Y. 2003)..................................................................4, 6

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
  571 F.3d 206 (2d Cir. 2009)..................................................................16

**Statutes**

15 U.S.C. §§ 78aaa–*lll* ........................................................................................1

**Rules**

Fed. R. Civ. P. 26........................................................................................ *passim*

Fed. R. Civ. P. 26(a)(2)(B), (D) ........................................................................4

Fed. R. Civ. P. 26(a)(3)....................................................................................4

Fed. R. Civ. P. 26(e) ....................................................................................6, 12

Fed. R. Civ. P. 26(e)(1)....................................................................................12

Fed. R. Civ. P. 26(e)(1)(A) ..........................................................................4, 10

Fed. R. Civ. P. 26(e)(2)..................................................................................4, 14

Fed. R. Civ. P. 37(c)(1)....................................................................................14

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff

("Madoff"), respectfully submits this memorandum of law in opposition to Defendants' motion

*in limine* to strike the supplemental expert reports of Bruce G. Dubinsky and Lisa M. Collura

(the "Motion") and Declaration of Robert A. Rich in Support of the Motion (the "Rich Decl.").

## PRELIMINARY STATEMENT

The procedural posture of this case is unconventional.  The Trustee served his original

expert reports in November 2016 pursuant to the expert disclosure deadline in the operative case

management order.  Yet between December 2016 and November 2017, Defendants participated

in the deposition of Bernard L. Madoff over the course of five days on specific topics related to

the business operations of BLMIS, including the trading strategies purportedly employed by

Madoff, elements of the fraud, and the start date of the BLMIS Ponzi scheme—the core subjects

covered in the Trustee's already-served expert reports.  In other words, substantial fact discovery

took place *after* the Trustee served his expert reports—unusual circumstances that are ultimately

prejudicial to the Trustee unless his experts are permitted to address the full universe of fact

discovery taken in this case.

This Court has already recognized the Trustee's right to supplement his reports.  Because

fact discovery was already closed and expert reports had already been served in many cases

when Madoff's deposition went forward, the Trustee sought to re-open fact discovery to conduct

limited fact witness depositions of six former BLMIS employees and an FBI agent, and to serve

additional expert reports to rebut specific issues raised during or as a result of Madoff's

deposition.[1]

Over Defendants' (and others') objections, on February 15, 2019, this Court issued its

decision on the Motion to Reopen Discovery, allowing the depositions of three of the employees

and the FBI agent and service of two new expert reports in cases with open fact discovery.  As to

the Trustee's request to supplement Dubinsky's and Collura's reports, the Court clarified that the

Trustee did not need its permission to supplement expert reports in cases where the deadline for

pre-trial disclosures had not run, including the Defendants' case here.

Consistent with the guidance provided by the Court, the Trustee served supplemental

reports two months later—well in advance of any pre-trial disclosure deadline.  Now, nearly a

year later, Defendants argue that the Supplemental Reports are untimely and improper

supplements under the Federal Rules of Civil Procedure and this Court's orders.  But besides

being timely under the standard already recognized by this Court, the supplemental reports

merely expand upon the same conclusions reached in their original reports by addressing

Madoff's subsequently-provided testimony and the specific defenses Defendants now assert

based on it.  These circumstances are precisely the kind that justify a supplemental report.

Even if the reports were brand new, preclusion would nevertheless be improper given the

procedural irregularities of permitting significant fact discovery after the original expert

disclosure deadline, the importance of the expert testimony, the lack of any prejudice to

Defendants, and the possibility of a continuance.  Not only have Defendants waited nearly a year

after the Trustee served the supplemental reports to bring this Motion, they have not used that

---

[1] *See* Mem. of Law in Supp. of Trustee's Mot. for Limited Additional Discovery Based on Prior Orders Authorizing Dep. Of Bernard L. Madoff at 10, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Sept. 21, 2018), ECF No. 18015 ("Motion to Reopen Discovery").

time to depose the Trustee's experts on their supplemental reports or serve a rebuttal report from

their already-retained expert.  Regardless, the Trustee consents to such depositions and the

continuance necessary to accommodate them—and this alone should resolve the Motion.

For the reasons set forth below, Defendants' Motion should be denied because: (i) the

Supplemental Reports were timely, proper supplements to their initial opinions; and (ii)

preclusion is nevertheless inappropriate because Defendants have not been prejudiced and can

depose the Trustee's experts on their supplemental reports.

## **PROCEDURAL BACKGROUND**

The Madoff deposition was first requested in the summer of 2016 and was taken over

five days in 2016 and 2017.  The parties in this case exchanged initial disclosures on February 5,

2016 and fact discovery closed on August 26, 2016.  These dates were not stayed in connection

with the Madoff deposition and as a result, the Trustee served the initial expert reports in this

case on November 16, 2016, including Dubinsky's August 2013 expert report, Matthew

Greenblatt's November 2012 expert report, and Greenblatt and Collura's November 16, 2016

expert reports.  Thereafter, Defendants deposed Collura on June 14, 2017, and Greenblatt on

March 13, 2019.  Defendants did not seek to depose Dubinsky but did serve the rebuttal report of

Mr. Bill Feingold on February 4, 2017.

On April 15, 2019, after resolution of the Trustee's Motion to Reopen Discovery, to

address six specific issues raised by Madoff's deposition: (1) the start date of the fraud; (2) the

details of the convertible arbitrage trading strategy; (3) the purported purchase of actual

securities and/or directed trading in individual accounts; (4) management of customer cash at

BLMIS; (5) purchase and income from Treasuries transactions; and (6) the IBM computer

systems at BLMIS (collectively, the "Madoff Deposition Issues") the Trustee served the Expert

Report of Bruce G. Dubinsky and exhibits dated January 16, 2019, (the "Dubinsky Supplemental

Report"), and the Expert Report of Lisa M. Collura and exhibits dated January 16, 2019 (the

"Collura Supplemental Report," together, the "Supplemental Reports").

On May 6, 2019, counsel for Defendants objected to the Dubinsky Supplemental Report

as untimely and an improper supplementation and indicated that a motion to strike the report was

forthcoming.  Since that time, Defendants have not sought to depose either Collura or Dubinsky

on their Supplemental Reports, have not had their expert review the Supplemental Reports, and

have not offered any supplemental expert opinions to the extent they believed the Supplemental

Reports raised new issues.

On February 26, 2020, the parties appeared before this Court for a pre-trial conference at

which time Defendants sought permission to move to exclude the Supplemental Reports.  On

March 5, 2020, Defendants filed the Motion.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(e) requires supplementation of an expert report "if the

party learns that in some material respect the disclosure or response is incomplete or incorrect,

and if the additional or corrective information has not otherwise been made known to the other

parties during the discovery process or in writing."  *Design Strategies, Inc. v. Davis*, 228 F.R.D.

210, 211 (S.D.N.Y. 2005) (citing Fed. R. Civ. P. 26(e)(1)(A)); *see also Wechsler v. Hunt Health

Sys., Ltd.*, 381 F. Supp. 2d 135, 155 (S.D.N.Y. 2003).

A party's duty to supplement disclosures under Fed. R. Civ. P. 26 applies to any report of

a testifying expert disclosed under Rule 26(a)(2)(B).  Supplementation must be completed thirty

days before trial or "by the time the party's Rule 26(a)(3) pretrial disclosures are due" if the

court sets a different date.  Fed. R. Civ. P. 26(e)(2) & (a)(2)(D).  A party may supplement an

4

expert report at any time before the deadline to submit pretrial disclosures without a court order.

Fed. R. Civ. P. 26(e); *see also* Mem. Decision Regarding Trustee's Motion to Reopen Discovery,

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), 2019

WL 654293, at *7 (Bankr. S.D.N.Y. Feb. 15, 2019) (the "*February 15 Decision*"); *Ferring*

*Pharm. Inc. v. Serenity Pharm., LLC*, No. 1:17-cv-09922(CM (SDA), 2019 WL 5682635, at *2

(S.D.N.Y. Nov. 1, 2019).

The time for supplementing expert reports is not limited to the expert discovery period; it

is required any time new information becomes available after the initial report has been issued.

Fed. R. Civ. P. 26(a)(2)(D).  A supplemental report is unquestionably proper under Rule 26 when

it is produced in response to fact discovery that occurs after the issuance of expert reports.  *See*

*S.E.C. v. Boock*, No. 09 Civ. 8261 (DLC), 2011 WL 3792819, at *11 (S.D.N.Y. Aug. 25, 2011)

(finding supplemental report issued after close of discovery was proper where additional, court-

approved discovery had taken place, and the supplemental report addressed that additional

discovery); *Noffsinger v. Valspar Corp.*, No. 09 C 916, 2012 WL 5948929, at *4 (N.D. Ill. Nov.

27, 2012) (allowing supplemental report where discovery had been reopened to allow for a

second deposition of plaintiff, and plaintiff changed his original testimony).

Likewise, supplementation is appropriate when it is a response to new deposition

testimony.  *U.S. Fire Ins. Co. v. Omnova Sols., Inc.*, No. 10–1085, 2012 WL 5288783, at *2–3

(W.D. Penn. Oct. 23, 2012) (allowing supplemental expert report submitted after deposition of

fact witness over objections of opposing party who "after benefitting from such extended

discovery measures" claimed "it [would] be prejudiced or surprised from the [s]upplemental

[e]xpert [r]eport" and the supplemental expert report would "not disrupt the orderly and efficient

trial of the case, as it forwards no novel assertions that were not already discussed in the original

[e]xpert [r]eport"); *Mathers v. Northshore Mining, Co.*, 217 F.R.D. 474, 481–83 (D. Minn. 2003)

(allowing supplementation after the close of discovery when supplemental report contained

"similar analysis, finding and conclusions" and defendant knew that supplementation was

likely).

In addition, "Rule 26(e) foresees that in complex litigation involving the use of expert

witnesses, an expert will likely refine and even change his or her opinion as he or she prepares

for trial." *Nnadili v. Chevron U.S.A., Inc.*, Civ. No. 02–1620, 2005 WL 6271043, at *1 (D.D.C.

Aug. 11, 2005); *see also Wechsler*, 2003 WL 470330, at *7 n.5 ("If, after [the deposition of

plaintiff's expert] and plaintiff's receipt of the defendants' rebuttal report, plaintiff believes that

he is under an obligation, pursuant to Rule 26(e), to supplement [his opening] report in light of

the opinions and factual statements contained therein, the plaintiff has the right, and is in fact

under a duty, to make such a supplementation." (citing Fed. R. Civ. P. 26(e))).

An expert report is proper supplementation under Rule 26 where the expert clarifies her

initial opinions without changing her conclusions. *LaMonica v. CEVA Grp. PLC (In re CIL

Ltd.)*, No. 13-11272-JLG, 2019 WL 1750909, at *21 (Bankr. S.D.N.Y. Apr. 8, 2019) (finding

proper a supplemental expert disclosure where expert did not alter his methodology or

conclusion); *Boock*, 2011 WL 3792819, at *11 ("In any event, the supplemental report only

reaffirms the conclusions of [the expert's] initial report."); *Ceglia v. Zuckerberg*, 287 F.R.D. 152,

161 (W.D.N.Y. 2012) (finding the expert's supplemental report was proper as it "does not set

forth any new theory . . . but merely extends the same theory advanced in the Initial Report").

Unless the expert asserts a new or additional opinion, courts in this District have not

excluded the supplemental report. *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*,

769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011) (denying preclusion where expert's supplemental

report was "more explicit about the chemistry upon which he based his initial conclusions, but he 'did not alter this position' and 'did not include a new opinion which had not been previously disclosed'") (quoting *Lore v. City of Syracuse*, No. 00–CV–1833, 2005 WL 3095506, at *4 (N.D.N.Y. Nov. 17, 2005) ("[expert's] supplemental report did not alter [his] position. The supplemental affidavit did not include a new opinion which had not been previously disclosed.")

When considering whether exclusion of expert evidence is appropriate, courts in the Second Circuit evaluate the *Softel* factors: (1) the parties' explanation for failure to comply with the discovery order(s); (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997); *Haas v. Delaware and Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008).

Furthermore, "[p]recluding testimony is a drastic and disfavored measure." *Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 354 F. Supp. 3d 508, 510 (S.D.N.Y. 2019). "Before granting the extreme sanction of preclusion, the Court should inquire more fully into the actual difficulties which the violation causes and must consider less drastic responses." *In re CIL Ltd.*, 2019 WL 1750909, at * 9 (citations omitted) (internal quotation marks omitted). The "exclusion of expert testimony should be reserved for those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." *Lab Crafters, Inc. v. Flow Safe, Inc.*, No. CV-03-4025 SJF/ETB, 2007 WL 7034303, at *19 (E.D.N.Y. Oct. 26, 2007) (citation omitted) (internal quotation marks omitted).

Preclusion is particularly inappropriate where any perceived prejudice can be remediated by allowing the depositions of the experts. *Papyrus Tech. Corp. v. N.Y. Stock Exch., LLC*, 257

F.R.D. 39, 44 (S.D.N.Y. 2009) (no prejudice where defendant was "granted the opportunity to

depose [expert] about the supplemental reports"); *Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc.*,

No. 94CIV.5587 (PKL) (RLE), 2002 WL 31780188, at *3–4 (S.D.N.Y. Dec. 11, 2002) (allowing

additional expert report because trial was over a month away and plaintiff had an opportunity to

depose the expert); *Grdinich v. Bradlees*, 187 F.R.D. 77, 79 (S.D.N.Y. 1999) (stating that

prejudice can be alleviated by allowing allegedly prejudiced party to depose the expert).

## ARGUMENT

## I.    THE SUPPLEMENTAL REPORTS ARE PROPER UNDER FEDERAL RULE OF CIVIL PROCEDURE 26

### A.    The Supplemental Reports Expand Upon The Original Conclusions To Address Madoff's Subsequently Provided Testimony

Defendants accuse the Trustee's experts of improperly "bolstering" their existing

opinions and introducing "entirely new opinions" in violation of Rule 26.  In actuality, the

Supplemental Reports are proper supplements prepared and served in response to the Madoff

Deposition Issues.  The redlined expert reports provided to Defendants by the Trustee confirm

that the experts' opinions remain unchanged.  *See* Rich Decl., Exs. 5, 6.

The Dubinsky Supplemental Report expanded upon his overall opinion that the BLMIS

investment advisory ("IA") business was a fraud.  Specifically, the Dubinsky Supplemental

Report further details the mechanics of Madoff's purported execution of the convertible arbitrage

strategy, the market anomalies present, and how the BLMIS computer systems generated the

fake convertible arbitrage transactions to support his conclusion that the convertible arbitrage

transactions never occurred.  *See* Dubinsky Supplemental Report. at VI.A.1.a., Rich Decl, Ex. 1.

In response to claims made by Madoff that the fraud did not begin before the early 1990s,

Dubinsky supplemented his analysis in support of his conclusion that the purported "buy and

hold" strategy, employed in a small number of accounts from October 1979 to November 2008

also represented fictitious trading. *Id.* ¶¶ 182–193.

To counter the new argument that United States Treasuries (the "Treasuries") purchased

by BLMIS for cash management purposes were, in fact, purchased on behalf of individual IA

business customers, Dubinsky expanded his Treasuries volume analysis. Dubinsky compared

specific Treasuries listed on the brokerage accounts statements to those listed on IA customer

statements and compared the purported buy and sell dates and the volume of the holdings and

concluded that the Treasuries held in the brokerage accounts did not match those reported on the

IA business customer statements. Dubinsky Supplemental Report ¶¶ 228–240, Rich Decl., Ex. 1.

This is precisely the type of supplementation allowed under Rule 26. *Cedar*

*Petrochemicals, Inc.*, 769 F. Supp. 2d at 278 (denying preclusion where expert's supplemental

report clarified initial conclusions). In each instance, Dubinsky incorporated additional detail of

how he arrived at his opinions—all of which are unchanged from his original report—in direct

response to arguments raised by defendants based on Madoff's deposition testimony. As in

*Ceglia*, Dubinsky is not "set[ting] forth [a] new theory" but extending it to respond to new

arguments and facts. 287 F.R.D. at 161; *see also Boock*, 2011 WL 3792819, at *11. *INVISTA*

*N.A. S.a.r.l. v. M & G USA Corp.*, No. CIV. 11-1007-SLR-CJB, 2013 WL 3216109, *2–3 (D.

Del. June 25, 2013) (highlighting the tendency of courts to allow supplementation where it

expands upon theories raised in an original report).

Similarly, the Collura Supplemental Report provides further support for Collura's

reconciliation of cash transactions for all BLMIS customers based on handwritten employee

documents, and further analyzes the BLMIS brokerage accounts. The initial expert report

9

Collura served in this case did far more than "show that certain transfers were made from accounts held by Defendants or their predecessor accounts" as Defendants contend.  Motion ¶ 9.

Both the Collura initial and Supplemental Reports set forth the methodology and results of her reconciliation of the cash transfers for all BLMIS customers.  The Collura Supplemental Report expands her reconciliation beyond the 10-year period through her analysis of handwritten documents located in BLMIS's records that reflected cash activity in and out of BLMIS bank accounts.  *See* Collura Supplemental Report, Sec. V.  These documents were identified during the additional investigation triggered by Madoff's deposition and made available to Collura after she issued her initial report.

Supplementation is appropriate when documents and information not available to the experts at the time their reports were issued later become available.  *See, e.g.*, *S.W. v. City of New York*, No. CV 2009-1777 (ENV)(MDG), 2011 WL 3038776, at *4 (E.D.N.Y. July 25, 2011) (holding supplemental reports proper where expert relied on documents "previously unknown or unavailable").  In addition, Rule 26 requires the supplementation of an expert report in a situation such as this where "additional or corrective information" has been identified through discovery.  *Design Strategies, Inc.*, 228 F.R.D. at 211 (citing Fed. R. Civ. P. 26(e)(1)(A)); *see also Mathers*, 217 F.R.D. at 481–83 (declining to preclude supplemental report served because expert received additional documents after issuance of original report).  Because fact discovery continued, Collura was obligated to supplement her opinion based on the new information as intended by Rule 26.

Collura also responded to arguments raised after the Madoff deposition that Treasuries were purchased by BLMIS on behalf of individual customers and the resulting income was used to pay customer redemptions.  Collura expanded on her analysis of the cash flow in the 703

Account to confirm that (1) excess cash from the 703 account was used to purchase Treasuries and other short-term investments as a cash management tool only; and (2) that the interest earned on those Treasuries was insufficient to cover the total BLMIS customer withdrawals for the relevant periods. Collura Supplemental Report, ¶¶ 51–55, Rich Decl., Ex. 2. To reach these conclusions, Collura analyzed the short-term investment activity in the 703 account, including the purchase of the Treasuries directly and through the BLMIS brokerage accounts, and determined that the activity represented short term investments used for cash management purposes and not on behalf of any individual BLMIS customer. *Id.* ¶¶ 47–55. To further confirm that the Treasuries were not related to BLMIS customer redemptions, Collura calculated the total interest earned on Treasuries and confirmed that the interest earned was woefully insufficient to pay customer withdrawals. *Id.* ¶¶ 63–65.

As with Dubinsky's supplemental opinions, Collura's supplementation is directly related to her original opinions and is in response to arguments raised for the first time after the Trustee served the original reports in November 2016. Consistent with this Circuit's precedent, Collura's supplemental report is a proper supplemental report that should be allowed to address additional discovery resulting from court-ordered extensions. *Boock*, 2011 WL 3792819, at *11; *see also Noffsinger*, 2012 WL 5948929, at *4 (allowing supplemental report where discovery reopened to allow for a second deposition of plaintiff, and plaintiff changed his original testimony).

Defendants cite several cases to support their position that experts cannot "continually bolster, strengthen, or improve their reports," all of which are distinguishable. Motion at 6–7. Each of the cited cases involved dueling experts who continued to submit supplemental reports with entirely new theories up until a few months before trial. Further, each case was governed

11

by a scheduling order, which specifically set out the time for service of supplemental expert reports. *See, e.g.*, *Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05 CIV. 09546 (LMM) (THK), 2007 WL 4157163, *1 (S.D.N.Y. Nov. 16, 2007) (defendant improperly submitted a rebuttal expert report that contained opinions wholly unresponsive to plaintiff's affirmative expert report, and intended to submit a supplemental report to his own rebuttal report); *Engler v. MTD Prods., Inc.*, 304 F.R.D. 349 (N.D.N.Y. 2015) (plaintiff's expert submitted an initial report, supplemental report, and an affidavit in opposition to a motion for summary judgment that raised new issues not previously addressed); *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416941, at *27 (W.D. Wis. Oct. 29, 2012) (supplemental expert report "identifie[d] two additional alternatives to the technology of the [] patent" that were never discussed in the first report). These facts are not present here. The deadline for supplemental reports have not run and the Defendants received the reports nearly one year before trial.

The Supplemental Reports are proper and timely supplemental expert disclosures— directly related to their original opinions and required to respond to additional discovery— consistent with Rule 26(e)'s requirements and intent.

### B.    The Trustee Timely Supplemented the Expert Reports

The Supplemental Reports are proper supplements and were not precluded by this Court's prior decision on the Trustee's Motion to Reopen Discovery. *See February 15 Decision*, 2019 WL 654293, at *7. Rather, this Court confirmed that "[b]ecause deadlines to submit pretrial disclosures and the trial dates have not been set . . . , the deadlines to submit supplemental expert disclosures have not run. Therefore, the Trustee does not require a Court order authorizing supplementation under Rule 26(e)(1)." *Id.* at *16 (emphasis added). The Trustee served the Supplemental Reports on April 15, 2019, well in advance of the upcoming pretrial disclosure deadline. This distinction appears to be lost on Defendants, who argue that

12

supplementation "well after the close of discovery" is untimely. *See, e.g.*, Motion at 14. As this Court made clear, supplementation is timely so long as it completed before the deadline for pretrial disclosures, *id.*, and "[t]he duty to supplement continues even after the discovery period has closed." *Ferring Pharm.*, 2019 WL 5682635, at *2 (citation omitted).

Defendants' assertion that the Trustee was "denied leave to submit [a] new report[]" by Dubinsky on convertible arbitrage mischaracterizes the *February 15 Decision*. Motion at 8. In fact, the Trustee made no such request and thus this Court did not deny such a request. While the Court noted that Dubinsky opined that "[t]here was no trading using the so-called 'convertible arbitrage trading strategy' purportedly implemented by BLMIS in the 1970s," it did not hold that the Trustee could not supplement Dubinsky's report on convertible arbitrage or any other issue. *See February 15 Decision*, 2019 WL 654293, at *9. To be clear, the *February 15 Decision* denied only the Trustee's request to reopen *fact* discovery to conduct additional fact witness depositions and/or submit *new* expert reports; it in no way limited the Trustee's ability to supplement his experts' reports or the subject of any future supplemental reports. Instead, it explicitly confirmed his ability to do so.

The timing of the Trustee's supplementation was equally proper and lacked the "bad faith" claimed by Defendants. The Trustee has complied with Rule 26 and the *February 15 Decision*, both of which confirmed the Trustee's ability to supplement his expert reports without court order. *See id.* at *16. And, Defendants cannot argue bad faith because of their feigned surprise about the Trustee's Supplemental Reports. In his Motion to Reopen Discovery, the Trustee was clear that he intended to supplement the expert reports, an intention that Defendants opposed. *Id.* at *1.

13

Attempting to cast the Trustee's behavior as "bad faith," Defendants downplay the egregiousness of the *Sandata* defendants' behavior. Easily distinguished from the facts here, there the defendant submitted *two* reply reports despite the court's order *denying their right to do so* and simultaneously "termed them supplemental reports." 2007 WL 4157163, at *8. The defendants proceeded to prepare two additional rebuttal/supplemental reports under false pretenses and by lying to the court. *Id.* at *9. In contrast, the Trustee served the Supplemental Reports in this and the other cases once the Motion to Reopen Discovery was decided, at a time when no trial dates had been set, ultimately providing Defendants nearly a year to review them and seek depositions. Such service of supplemental reports is consistent with Rule 26(e)(2), cannot be deemed "bad faith," and is clearly distinguishable from the intentional violations of court orders, lying, and false pretenses engaged in by the *Sandata* defendants.

Defendants have not and cannot provide any evidence that the Trustee acted in bad faith.

## II.     PRECLUSION IS NEVERTHELESS IMPROPER

Even if the Supplemental Reports went beyond mere "supplementation" (which they do not), preclusion is not appropriate. The Trustee served the Supplemental Reports within the time period allowed for supplementation under Rule 26 and on topics covered in their original reports, giving the Defendants nearly a year to depose them on the narrow expansion of their opinions. Defendants chose not to.

The factors advocated for by Defendants are inapplicable here. The factors argued for by the Defendants were applied to determine whether to exclude late disclosed trial testimony presented outside the time allowed by Rule 26 or a court's scheduling order under Rule 37(c)(1). *In re Kreta Shipping S.A.*, 181 F.R.D. 273 (S.D.N.Y. 1998). Here, there is no applicable scheduling order and the deadline for supplementation has not run. Ultimately, *Kreta* does not support Defendants' arguments because the *Kreta* court found that even though the disclosure of

14

expert affidavits on the eve of trial and past the stipulated deadline for submission of trial

affidavits, preclusion was not the appropriate remedy. *Kreta*, 181 F.R.D. at 277. The court held

that any potential prejudice could be resolved through additional depositions and short

continuance of the trial. *Id*.

Ultimately, preclusion is not appropriate here under the Second Circuit's *Softel* factors.

As discussed above, the reports are timely supplements under Rule 26 because they were served

well in advance of pre-trial disclosures, thus satisfying the first *Softel* factor. An analysis of the

remaining factors similarly weighs against preclusion.

### C. The Supplemental Reports Are Important To The Issues Raised by Defendants After the Trustee Served the Initial Reports

The Supplemental Reports are important to address deposition testimony taken after the

Trustee served his original expert reports and arguments raised by Defendants that are based on

that belated testimony. As explained throughout this memorandum, the Trustee was justified

serving the Supplemental Reports in order to ensure that his experts could opine on the issues

raised by the additional fact discovery that unconventionally took place after their original

reports were served.

Moreover, as this Court explained in the *February 15 Decision*, the topics supplemented

in the Dubinsky Supplemental Report are relevant to the remaining adversary proceedings, in

which certain arguments were made for the first time after the close of fact discovery. *See

February 15 Decision*, 2019 WL 654293, at *7–12. This is also true in the present case. During

the pre-trial conference, Defendants identified the Ponzi start date and the question of whether

trading occurred in the convertible arbitrage accounts as issues to be resolved at trial. *See* Feb.

26, 2020 Hr'g Tr. 6:12–20, 7:22–8:3, ECF No. 116.[2]  As detailed above, the Supplemental

Reports are important to the Trustee's ability to present his case on these issues.  Where, as here,

evidence is important to a party's case, the second *Softel* factor weighs heavily against

preclusion.  *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213 (2d

Cir. 2009).

### D.    Defendants Are Not Prejudiced By The Supplemental Reports

Defendants are not prejudiced by this Court's reliance on the Supplemental Reports and

any claimed prejudice is self-inflicted.  "The touchstone for determining whether to exclude an

untimely expert report is whether the party opposing their admission is prejudiced."  *Optigen,*

*LLC v. Int'l Genetics, Inc.*, 877 F. Supp. 2d 33, 49 (N.D.N.Y. 2012) (citing *Lore*, 2005 WL

3095506, at *4).  The Trustee served the Supplemental Reports on April 15, 2019.  Defendants'

knew that the Trustee anticipated supplementing the Dubinsky and Collura expert reports

because that was a central issue in the Motion to Reopen Discovery and was discussed in the

*February 15 Decision*.  Motion to Reopen Discovery at 16–20.  Defendants have had plenty of

time to analyze the content of the Supplemental Reports and could have sought to depose

Dubinsky and Collura at any point.

Defendants have not been blindsided by these issues.  To the contrary, they submitted the

expert report of Bill Feingold in February 2017 to rebut Dubinsky's opinions on convertible

arbitrage issues.  Defendants will not need to retain new experts or extensively reformulate their

trial strategy as Dubinsky's opinions have not changed.  *See Rienzi & Sons, Inc. v. N. Puglisi &*

*F. Industria Paste Alientari S.P.A.*, No. 08-CV-2540 DLI JMA, 2011 WL 1239867, at *5

---

[2] A copy of the February 26, 2020 transcript is attached as Exhibit A to the Trustee's March 6, 2020 letter to the
Court.  ECF No. 122-1.

(E.D.N.Y. Mar. 30, 2011) (explaining responding party would sustain no prejudice because they "had all of the supporting documentation prior to the supplemental disclosure [and] had ample opportunity to review and investigate the alleged damages"). The Supplemental Reports served nearly one year ago do not set forth new opinions or "alter the expert's position[s]" but rather expand their analyses based on documents and evidence analyzed as part of the Trustee's litigation and in response to arguments raised after the close of discovery. *Lore*, 2005 WL 3095506, at *4.

Here, any claimed prejudice is self-created. "Plaintiff cannot claim prejudice from a delay to which he contributed." *Linkov v. Golding*, No. 12–CV–2722 (FB)(LB), 2013 WL 5922974 (E.D.N.Y. Oct. 31, 2013) (citing *Ward v. Ramkalawan*, No. CV 11–4295(JS)(ARL), 2013 WL 1149108, at *5 (E.D.N.Y. Feb. 11, 2013) (finding no prejudice and vacating default where "the plaintiffs are not free from blame for the [eleven-month] delays")). Defendants cannot wait nearly a year and then claim prejudice based upon their self-created exigency. "[A] party who fails to pursue discovery in the face of a court ordered cut-off cannot plead prejudice from his own inaction." *Sanders v. Mount Sinai Med. Ctr.*, No. 98 Civ. 828(AGS), 1999 WL 1029734, at *8 n.4 (S.D.N.Y. Nov. 10, 1999) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1019 (7th Cir. 1992)). Nothing prevented Defendants from seeking the depositions of Dubinsky and Collura. Their decision to not notice those depositions at any point in the past year caused any perceived prejudice they now claim. *Lukensow v. Harley Cars of N.Y.*, 124 F.R.D. 64, 66–67 (S.D.N.Y. 1989) (noting the plaintiff's failure to notify the court of a forwarding address resulted in any prejudice they suffered).

Defendants' claims of prejudicial costs to depose the experts are similarly unpersuasive. Counsel for the Defendants is proceeding *pro bono* in this matter. May 3, 2017 Hr'g Tr. 46:16,

17

ECF No. 77 ("THE COURT: Can I ask you a question, Mr. Rich? Do you maintain

contemporaneous time records in this case? MR. RICH: It's a non-billable case, you know . . .

."). Thus, legal fees are irrelevant. As counsel for the Defendants has had a year to analyze the

limited scope of the Supplemental Reports, in addition to the nearly four years since he received

the initial reports, any claim of prejudice to him and his time are uncompelling. Any further

costs to Defendants would be limited—the depositions would take place in New York, where the

experts and the parties are all located, thereby negating any travel expenses. In any event, there

is no prejudice where defendant has had the "opportunity to depose [the] expert[s] about the

supplemental reports" for nearly a year. *Papyrus Tech. Corp.*, 257 F.R.D. at 44. Any perceived

prejudice is of the Defendants' own making and does not warrant exclusion of the Supplemental

Reports.

### E.    A Continuance is Possible to Allow For Experts' Depositions

Courts have declined to preclude expert reports and/or supplementation in circumstances,

like those here, where a continuance is still possible. *Rmed Int'l, Inc.*, 2002 WL 31780188, at *3

(allowing additional expert report because trial was over a month away and plaintiff had an

opportunity to depose the expert). The Trustee consents to re-opening expert discovery for the

limited purpose of allowing depositions of Dubinsky and Collura by Defendants so that they may

answer questions related to the Supplemental Reports prior to the start of trial. *See, e.g.*, *LaPorte

v. Fisher*, No. 11-cv-9458, 2014 WL 2924992, at *6–7 (S.D.N.Y. June 27, 2014) (finding that a

continuance was possible more than seven months after the close of discovery). This can and

should end the dispute. *See, e.g.*, *Lab Crafters, Inc.*, 2007 WL 7034303, at *22–23 (recognizing

that "any prejudice to the opposing party can be alleviated by allowing them to depose the expert

prior to trial").

18

Depositions narrowly focused on the Supplemental Reports would not significantly burden the Defendants and would eliminate any perceived prejudice. As has always been the case, the Trustee is willing to make Dubinsky and Collura available for depositions in order to resolve this litigation. Defendants' apparent unwillingness to depose either expert does not warrant striking the Supplemental Reports.

## CONCLUSION

For these reasons, the Trustee respectfully requests that the Court enter an order denying Defendants' Motion.

Dated:   March 17, 2020
         New York, New York

Baker & Hostetler LLP

/s/ *Nicholas J. Cremona*
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*

19