```
                                                              Page 1

 1    UNITED STATES BANKRUPTCY COURT

 2    SOUTHERN DISTRICT OF NEW YORK

 3    Case No. 08-99000-smb

 4    - - - - - - - - - - - - - - - - - - - - - - - - - x

 5    In the Matter of:

 6    BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

 7               Debtor.

 8    - - - - - - - - - - - - - - - - - - - - - - - - - x

 9    Adv. Case No. 08-01789-smb

10    - - - - - - - - - - - - - - - - - - - - - - - - - x

11    SECURITIES INVESTOR PROTECTION CORPORATION,

12                    Plaintiff,

13               v.

14    BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

15                    Defendant.

16    - - - - - - - - - - - - - - - - - - - - - - - - - x

17    Adv. Case No. 10-04889-smb

18    - - - - - - - - - - - - - - - - - - - - - - - - - x

19    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF THE BERNARD

20    L. MADOFF TRUST,

21                    Plaintiff,

22               v.

23    THE ESTATE OF ROBERT SHERVYR,

24                    Defendant.

25    - - - - - - - - - - - - - - - - - - - - - - - - - x
```

Page 2

```
 1                    United States Bankruptcy Court

 2                    One Bowling Green

 3                    New York, NY   10004

 4

 5                    March 17, 2020

 6                    10:04 AM

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: SHEA
```

Page 3

1    HEARING re 08-01789-smb Conference on Letter of Baker &

2    Hostetler dated March 5, 2020 re Mediation

3

4    HEARING re 10-04889-smb Status Conference

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 4

1    A P P E A R A N C E S :

2

3    CHAITMAN LLP

4         Attorneys for the Shervy Defendants

5         465 Park Avenue

6         New York, NY 10022

7

8    BY:  HELEN CHAITMAN (TELEPHONICALLY)

9

10   BAKER HOSTETLER LLP

11        Attorneys for the Trustee

12        45 Rockefeller Plaza

13        New York, NY 10111

14

15   BY:  NICHOLAS J. CREMONA

16

17   ALSO PRESENT TELEPHONICALLY:

18

19   KEVIN H. BELL

20   DAVID J. SHEEHAN

21   JENNIFER ALLIM

22

23

24

25

08-01789-cgm   Doc 19412   Filed 03/17/20   Entered 03/19/20 14:56:26   Main Document
Pg 5 of 20

```
 1                P R O C E E D I N G S

 2            THE COURT:  Good morning.  Good morning.  Welcome.

 3    Let's begin with the Madoff matters.

 4            Ms. Chaitman, are you on the phone?

 5            MS. CHAITMAN:  Yes, I am, Your Honor.  Good

 6    morning.

 7            THE COURT:  Good morning.  Okay.  Just to expedite

 8    this a little bit, because it gets a little difficult

 9    sometimes on the phone, with respect to the mediation

10    issues, as I understand it, the parties were unable to agree

11    on a mediator, or even more than one mediator might be the

12    more accurate way to say it.  And then the Trustee raised

13    the question of whether mediation should just be dispensed

14    with as a waste of time and money.  Is that a fair

15    statement, Mr. Cremona?

16            MR. CREMONA:  I agree with that, Your Honor.

17            THE COURT:  Okay.  So let me hear from you, Ms.

18    Chaitman, on what your position is on those issues.

19            MS. CHAITMAN:  Sure, Your Honor.  I did have a few

20    mediations with the Trustee and they were a waste of time,

21    because the mediator's position was that the Trustee should

22    be paid 100 percent of what he was suing for.

23            THE COURT:  Well, don't tell me what the mediator

24    said.  But you're telling me --

25            MS. CHAITMAN:  Okay.
```

Veritext Legal Solutions

212-267-6868                 www.veritext.com                 516-608-2400

Page 6

1           THE COURT:  -- that there were no resolutions, and

2      in your view, as I understand it, it's not likely that

3      mediation of these 60 cases is going to make it -- is going

4      to be helpful, and it's going to be a waste of time and

5      money?

6           MS. CHAITMAN:  Well, I came back to the Trustee,

7      when the Trustee approached me within the last few months,

8      and I said that at this point I thought it would be a

9      constructive step for us to go through mediation of all the

10     cases that are trial ready.  And I said that I wanted to

11     have a mediator who, in the view of my clients, was

12     impartial.  And I suggested someone and the Trustee, in

13     fact, agreed to that person, and we have one mediation

14     scheduled.  And I would hope that we could schedule more

15     mediations with this same person, or someone else from JAMS,

16     J-A-M-S, that's where this mediator is from.

17          And the Trustee then -- the Trustee proposed a few

18     former bankruptcy judges from the District of New Jersey,

19     and I came back and said that those were not acceptable to

20     me, but I would like to go forward with someone from JAMS,

21     if the one mediator that we've selected already, is not

22     satisfactory to the Trustee after the first mediation that

23     we do, which is scheduled for early -- for next month.  And

24     then the Trustee wrote to the Court.  I would very much like

25     to schedule mediations, but I want to assume my clients for

Page 7

1    whom -- for many of whom they have to travel to New York to

2    the mediation, and I want to assure them that I don't think

3    this is going to be a waste of time, and I want to have

4    confidence that the mediator will be a hundred percent

5    impartial.

6            THE COURT:  Mr. Cremona?

7            MR. CREMONA:  Your Honor, if I may just respond to

8    a few points.  Ms. Chaitman indicated that we've had some

9    mediations that have been, in her words, a waste of time.

10   Just by way of background, Your Honor, we started this

11   liquidation proceeding with over a thousand good faith

12   actions, as we stand here today, we have roughly 110.  We've

13   commenced hundreds of mediations, we've -- which have

14   resulted, in part, in over 600 documented settlements.  So I

15   --

16           THE COURT:  Any with Ms. Chaitman's clients?

17           MR. CREMONA:  None.  Not while she was counsel.

18   We've settled several cases after she was removed by her

19   client.

20           So I would submit, Your Honor, that mediation has

21   been a very, very successful tool for the Trustee and has

22   enabled us to settle the vast majority of these cases.  And

23   I would submit that these 60 remaining cases with Ms.

24   Chaitman, just by virtue of the numbers I've just described

25   to you, are outliers.  We've settled over 75 percent of the

Page 8

1    cases.

2              THE COURT:  But you haven't settled any with her.

3    So let's --

4              MR. CREMONA:  Fair enough.

5              THE COURT:  -- I understand what mediation does.

6              MR. CREMONA:  I just wanted to give you the

7    background there.

8              THE COURT:  Let me ask you a different question.

9    These cases are trial ready but for the mediation, as I

10   understand it, right?

11             MR. CREMONA:  That's correct.

12             THE COURT:  In how many of the 60 cases do I have

13   equitable jurisdiction to render findings and conclusions?

14   In other words, in how many of these were there active

15   claims that had not been disallowed, or deemed disallowed

16   when you filed the adversary proceedings?

17             MR. CREMONA:  My understanding is that there were

18   17 cases where no claims have been filed, and the balance of

19   the cases have customer claims filed.

20             THE COURT:  That were still alive when you filed

21   the adversary proceedings?

22             MR. CREMONA:  Your Honor, it's our position, and

23   we can discuss that in the context of stating that they were

24   all alive at the time that the Trustee commenced the case.

25   And I'm happy to discuss why we show that.

Page 9

1           THE COURT:  Let me tell you what my thought is.  I

2     don't have a problem with trying this one mediation that

3     gets scheduled.  Is the mediator going forward in light of,

4     you know, the coronavirus?

5           MR. CREMONA:  At the moment we have a mediation

6     scheduled for a half day on April 24th at 9 a.m.  That's

7     part of the difficulty that we were having with JAMS.  And,

8     you know, I have not met Mr. Hurkin-Torres, who Ms. Chaitman

9     is recommending, and who we've agreed to.  And I assume he

10    has -- he's more than capable, he just does not have that

11    much availability, which, hence, is why we are out to April

12    24.

13          THE COURT:  Things are going to slow down.

14          MR. CREMONA:  I understand completely, Your Honor.

15    And everything is fluid.  So as of now, that is scheduled to

16    go forward.  That's all I can say.

17          THE COURT:  Okay.  Here's what I thought we should

18    do, and you can respond.  Go forward with the one mediation.

19    Given the history of the parties or the counsel, if it

20    doesn't -- if mediation doesn't work, I don't see the

21    purpose to putting everybody through the time and effort of

22    mediation in the 59 other cases.

23          And what I would do -- this is something -- what

24    I've been thinking about doing, and this is something that

25    we talked about two or three years ago, is having a

Page 10

1    consolidated trial on certain issues that seem to affect

2    every single case.  For example, whether the accounts from

3    which the transfers were made were held or owned by BLMIS or

4    Madoff personally.  I don't see the reason to try that case

5    -- that issue 60 times, if it can be avoided.  This issue of

6    whether or not it was a Ponzi Scheme, and if so, when it

7    began.  Whether there are other badges of fraud.  I don't

8    know if -- I think that could be done on an omnibus basis,

9    not on a case-by-case basis.  And this issue of allocation,

10   when BLMIS was buying T-bills and equity securities through

11   the proprietary trading market, whether it was allocating

12   those trades to customers.  It just seems to me that we

13   could try those issues in a consolidated trial.  And, you

14   know, then we can have individualized trials on the deposits

15   and withdrawals, once those are resolved, assuming they're

16   resolved in favor of the Trustee.

17          So what I'm suggesting then, for today, go forward

18   with your arbitration, we'll -- I'm sorry, mediation.  We'll

19   -- I'll schedule another conference for about two months

20   out, which is May already, we'll do it telephonically.

21          By the way, Mr. Cremona, I'm going to do these --

22   all these conferences telephonically now, we're going to

23   just telework.

24          MR. CREMONA:  I understand from the Clerk.

25          THE COURT:  And if it works, fine.  Then we'll

Page 11

1    talk about further mediation.  If it doesn't work, then I'll

2    just schedule a trial.

3          In the meantime, Mr. Cremona, why don't you send

4    Ms. Chaitman a list of those cases that you believe are

5    subject to the Court's equitable jurisdiction.  And by that,

6    I mean, that there was not a disallowed or deemed disallowed

7    claim when you filed the adversary proceeding.  If you want

8    to segregate those out and say, we think we have -- the

9    Court has equitable jurisdiction over these as well, fine.

10   But I want to know the cases where it's clear from the

11   record that there's still a live dispute, because there was

12   an objection to the Trustee's determination and that

13   objection has not been resolved.  Okay?

14         MR. CREMONA:  Understood.

15         THE COURT:  So that if the mediation doesn't work

16   out, then we'll be ready for the next step, because these

17   are more than half of the remaining good faith cases, as I

18   understand it.

19         MR. CREMONA:  That's correct.

20         THE COURT:  All right.  Anybody disagree with

21   that?  Ms. Chaitman?

22         MS. CHAITMAN:  No, that's fine, Your Honor.

23         THE COURT:  All right.  Let me just give you a

24   date in May.  I suspect it's going to be a telephonic, given

25   what's going on.  Let's say May 14 at 10:00.

1            All right.  Thank you very much.  I think that

2    takes care of your one matter.  Right, Ms. Chaitman?

3            MR. CREMONA:  Actually, Your Honor --

4            MS. CHAITMAN:  No, there's --

5            THE COURT:  Oh, there's another one?

6            MR. CREMONA:  Yeah, the other matter is a request

7    by the Trustee for a 7056 Conference, which we would now

8    like to convert, but I'm happy to discuss that.  That's in

9    the Savin case, which is Adversary Proceeding Number 10-

10   4889.

11           THE COURT:  You know my view on these summary

12   judgment --

13           MR. CREMONA:  I completely --

14           THE COURT:  -- motions, particularly on the issues

15   I've identified, I have to try it.

16           MR. CREMONA:  I understand.  And that's -- what I

17   -- so, Your Honor, when I filed this letter, it was February

18   10, it was in response to a motion to withdraw the reference

19   that Ms. Chaitman filed in the Savin matter, which is now

20   pending before Judge Swain.  And the Trustee had since filed

21   his opposition to that motion.

22           THE COURT:  Oh, all right.

23           MR. CREMONA:  So at that point in time, we had

24   requested a 7056 Conference, but we've gotten subsequent

25   guidance from Your Honor, and subsequent guidance from Judge

1    Broderick, which I think paves the way to try this matter,

2    and I'm happy to articulate why.

3            THE COURT:  Was Savin an open claim when you filed

4    the adversary proceeding?

5            MR. CREMONA:  Savin had filed a customer claim,

6    and I think -- I'd like to approach this in a twofold way.

7    I think, first off, as Your Honor articulated at the Greiff

8    final pretrial conference, there's a claim on file that

9    submits the Defendant and Claimant to this Court's equitable

10   jurisdiction and we are going forward with the trial there.

11   This case is no different than that one.  And I know we have

12   a motion for a stay that we'll talk about tomorrow.

13           THE COURT:  Yeah.

14           MR. CREMONA:  But our position is that Judge

15   Broderick's (indiscernible) decision was quite clear that

16   this Court's jurisdiction does not fluctuate based on the

17   status of a claim at any point -- given point during that

18   litigation.  And in fact, once the claim is filed, you're

19   submitted to the Court's equitable jurisdiction because

20   you've been invoked the debtor/creditor relationship, and

21   that's Langenkamp, that's Granfinanciera, nothing in Stern

22   changes that.  And Judge Broderick went through a

23   painstaking Stern analysis and found that that's submission

24   of a claim, number one, submitted that person or entity to

25   the bankruptcy court's jurisdiction.

```
 1            I would also point out, in Footnote 10 of that

 2    opinion, Judge Broderick also went into implied consent

 3    under Wellness, and pointed out that if these parties have

 4    been litigating in the bankruptcy court for ten years,

 5    they've also impliedly consented to Your Honor's final

 6    adjudicative authority to resolve these claims.  So I think

 7    that is certainly a basis for Your Honor's jurisdiction.

 8            THE COURT:  Okay.  In the meantime, there's a

 9    motion to withdraw the reference and you have mediation

10    scheduled.

11            MR. CREMONA:  We do not have mediation scheduled

12    in this matter.  But --

13            THE COURT:  Oh, I thought in Savin you did?

14            MR. CREMONA:  No, in (indiscernible), so that's a

15    different.

16            THE COURT:  Oh, I'm sorry.

17            MR. CREMONA:  We have been trying to -- you know,

18    that was -- we may have sought to schedule it, but were

19    unable to do so.

20            THE COURT:  Well, all right.

21            MR. CREMONA:  And so on that basis I think Judge

22    Broderick's decision makes clear that this Court's

23    jurisdiction does not fluctuate.

24            But if Your Honor was -- and you seem to have

25    articulated that you have some concern about a claim being
```

1   alive or judiciable, and being met with the adversary

2   proceeding, I would like to pass up, if I may approach, the

3   determination from the Trustee in the Savin matter.  I know

4   Your Honor --

5           THE COURT:  Was there a response to the

6   determination?

7           MR. CREMONA:  There is not.  There is no objection

8   to this determination.

9           THE COURT:  So if there's no objection, then

10  they're deemed disallowed.

11          MR. CREMONA:  Well, I'm going to get to that, Your

12  Honor.  I think if you look at the language -- so the

13  timing, just so we understand, I know you're focused on the

14  time of filing, as you articulated in your equity

15  jurisdiction opinion.  So if you look at page -- well, first

16  of all, the date on the determination is March 15, 2010.  I

17  acknowledge that this adversary proceeding wasn't commenced

18  until November of 2010.  However --

19          THE COURT:  But under the claims order, as I

20  understand it, if there was no objection to the

21  determination, it was deemed disallowed in 30 days?

22  Was that (indiscernible)?

23          MR. CREMONA:  Yes.  However, if you look at the

24  bold language on page 2, which provides as follows:  "Should

25  a final and unappealable court order determine the Trustee

Page 16

1    is incorrect in his determination of net equity and its

2    corresponding application to the determination of customer

3    claims, the Trustee will be bound by that order and will

4    apply it retroactively to all previously determined customer

5    claims --

6                THE COURT:  I got it.  So --

7                MR. CREMONA:  -- in accordance with the Court's

8    order."  Now --

9                THE COURT:  So you're saying this is just a

10   contingent, not a final disallowance?

11               MR. CREMONA:  Well, because at that point in time

12   net equity did not become a final order until 2012 --

13               THE COURT:  Okay.

14               MR. CREMONA:  -- two years after the fact.  So I -

15   - it is the Trustee's position that in those 40 cases, among

16   Ms. Chaitman and all other customers that have filed claims,

17   they have submitted to this Court's jurisdiction and were

18   met with adversary proceedings, and that's entirely

19   consistent with Your Honor's decision, and Judge Broderick's

20   decision, and several others.

21               THE COURT:  Well, I guess, you know, you could

22   make an omnibus motion in these adversary proceedings where

23   there is a question.  You're telling me -- well, 17 never

24   filed claims, right?

25               MR. CREMONA:  That's correct.

Page 17

1          THE COURT:  All right.  So but for the ones where

2     it was deemed disallowed under the claims procedure order, I

3     guess you can make a --

4          MR. CREMONA:  And by the way, I apologize, let me

5     just clarify, Your Honor.  Of those 40, approximately, and

6     I'll clarify, several have pending objections.  It just so

7     happens that in this case there is not a pending objection.

8          THE COURT:  Okay.  Well, you know, you can think

9     about, since we have the time to do this now, I guess, you

10    can think about a common issue like that and write a letter

11    saying that, you know, you think, based on the boldfaced

12    provisions of this disallowance -- I assume that it's in

13    every one of them, I don't know --

14         MR. CREMONA:  That's -- it is.

15         THE COURT:  All right.  That, you know, there was

16    no final determination, it had to await the definition of

17    net equity or the acceptance of a net investment method and

18    so it was really a live claim until the Supreme Court, I

19    guess, denied certiorari from the Second Circuit's decision.

20         Okay.  You can make -- I'm not deciding it now,

21    you can make (indiscernible).

22         MR. CREMONA:  I am -- well, Your Honor, at the

23    moment there -- I mean, there's no motion -- absent a motion

24    to stay, I guess there's no reason not to move the case

25    toward trial, as Your Honor indicated in Greiff.  I mean,

Page 18

1    this case is no different at all from that case.

2              THE COURT:  All right.  I hear you.  But in the

3    meantime, I thought what we were going to do, to save time,

4    because I don't want to try 60 cases 60 separate times, is

5    to see how the mediation works, and if it doesn't work,

6    start with a trial on common issues, and this will be part

7    of that determination whether or not I can just enter final

8    orders in all these cases, because there was no final

9    determination of the claim until the Supreme Court denied

10   cert from the net equity decision of the Second Circuit.

11   But we can deal with that at that point.

12             MR. CREMONA:  Just one final clarification, Your

13   Honor, just because I don't want to concede or impliedly

14   concede that I think that this determination language is

15   necessary.  I believe that Judge Broderick's decision has

16   found that the submission of the claim submits the party to

17   jurisdiction for all purposes.

18             THE COURT:  We're repeating ourselves.  Let me

19   give you this.  So the record is clear, I'm not deciding

20   anything today.  I haven't made any determinations, other

21   than to go forward with the (indiscernible) mediation and

22   schedule another conference to determine what the next steps

23   are.  Okay?

24             MR. CREMONA:  Understood.  Thank you, Your Honor.

25             THE COURT:  And as far as that motion for summary

1    judgment, you know, I can't tell you not to make the motion,

2    but you know what my views are, that these are factual

3    issues that have to be determined at a trial where I can

4    make findings of fact and conclusions of law.  Okay?

5              MR. CREMONA:  Understood.

6              THE COURT:  All right.  That's it.  Thanks very

7    much.  So May 14th is the date, 10:00.

8              MR. CREMONA:  Yes, Your Honor.  Thank you.

9              (Whereupon these proceedings were concluded at

10   10:22 AM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya               Digitally signed by Sonya
                         Landanski Hyde
     Landanski           DN: cn=Sonya Landanski Hyde, o,
                         ou, email=digital1@veritext.com,
7    Hyde                c=US
                         Date: 2020.03.18 15:49:04 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  March 18, 2020