DENTONS US LLP
Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
Email: arthur.ruegger@dentons.com

*Attorneys for Defendant*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04357 (SMB) |
| Plaintiff, | |
| v. | |
| JAMES GREIFF, | |
| Defendant. | |

## DEFENDANT'S REPLY MEMORANDUM OF LAW, IN SUPPORT OF
## MOTION FOR STAY OF PROCEEDINGS, ON THE ISSUE OF THE TRUSTEE'S NOTICE
## OF DETERMINATION AND ALLEGED PRESERVATION OF THE CUSTOMER CLAIM

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

A.  THE GREIFF CLAIM WAS FINALLY DISALLOWED PURSUANT TO THE
    BANKRUPTCY COURT ORDER AND THE TRUSTEE'S NOTICE ........................... 2

B.  THE TRUSTEE'S NOTICE DID NOT PRESERVE THE GREIFF CLAIM IN
    ANY WAY, PARTICULARLY NOT AS "LIVE AND JUSTICIABLE" ....................... 6

    1.  The "Appellate Review" Language in the Trustee Notice Was Never
        Authorized by the Bankruptcy Court; And Is Contrary to Both the
        Claims Procedures Order and the Trustee's Public Pronouncements that
        Unobjected-To Trustee Determinations Were Final. ................................ 6

    2.  The Finality of the Determination Disallowing Mr. Greiff's Claim Is Not
        Affected by Potential Appellate Processes, Particularly Where Those
        Processes Do Not Involve the Defendant. ................................ 7

    3.  Given the Trustee Notice Expressly Disclaims Any Waiver of a
        Customer's Claim-Determination Rights, the Trustee Should be Barred
        from Arguing the Notice Effected a Hidden Waiver of Other Customer
        Rights, Such as the Right To a Jury Trial. ................................ 11

C.  THE ADVERSARY PROCEEDING WAS NOT LINKED TO THE
    PREVIOUSLY DISALLOWED CLAIM ................................................................ 12

D.  CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Idearc Inc.*,
No. 09-31828 (Bankr.N.D.Tex. Dec. 29, 2011) ......................................................................8

*MCI WorldCom Commc'ns, Inc. v. Commc'ns Network Int'l (In re WorldCom, Inc.)*,
378 B.R. 745 (Bankr. S.D.N.Y. 2007) ....................................................................................13

*Sec. Inv'r. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
597 B.R. 466 (Bankr. S.D.N.Y. 2019) ..............................................................................13, 14

*Sec. Inv'r. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
608 B.R. 165 (Bankr. S.D.N.Y 2019) ....................................................................................14

*U.S. Bank Nat. Ass'n v. Verizon Communic'ns, Inc.*,
761 F.3d 409 (2014) .............................................................................................................7, 8

*Velvel v. Picard*,
567 U.S. 934 (2012) ...............................................................................................................11

**Statutes**

11 U.S.C. § 350 ..............................................................................................................................8

11 U.S.C. § 502(d) ..........................................................................................................................8

11 U.S.C. § 502(j) ...........................................................................................................................8

15 U.S.C. § 78fff-2 .........................................................................................................................3

28 U.S.C. § 157(d) ..........................................................................................................................1

**Other Authorities**

Fed. R. Bankr. P. 3008 ...................................................................................................................8

Fed. R. Bankr. P. 5011 ...................................................................................................................1

Fed. R. Bankr. P. 5011(c) ..............................................................................................................1

L. Bankr R. 5011-1 ........................................................................................................................1

www.madofftrustee.com/claims ....................................................................................................7

Defendant James Greiff (the "Defendant" or "Greiff"), pursuant to the Court's permission granted during oral argument on March 18, 2020, submits this Reply Memorandum of law in support of his motion, pursuant to Rule 5011(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order staying (the "Stay Motion") further proceedings with respect to the claims asserted against the Defendant in the above-captioned adversary proceeding pending a ruling by the United States District Court for the Southern District of New York (the "District Court") on the Defendant's Motion to Withdraw the Reference of the Adversary Proceeding Pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Rule 5011-1 of the Local Rules, filed March 4, 2020 (Adv. Proc. No. 10-04357 (SMB) [ECF 112]) for trial by a jury (the "Withdrawal Motion").

Specifically, this Reply addresses the Trustee's argument that language in the Trustee's August 28, 2009 Notice of Trustee's Determination of Claim (Complaint Ex. C) (the "8/28/09 Trustee Notice")[1] preserved as "live and justiciable" Defendant's disallowed claim so as to waive any right to a jury trial, as set forth in the Trustee's Memorandum of Law In Opposition to Motion For a Stay of Trial Pursuant to Rule 5011(c) Pending Ruling by District Court on Defendant's Motion to Withdraw the Reference, dated March 17, 2020 [ECF 121] (the "Trustee Mem." or "Trustee Memorandum"), pp. 2, 12 - 13.

---

[1] Capitalized terms not otherwise defined herein have the meanings as defined in Defendant's Stay Motion moving papers. The language in the 8/28/09 Trustee Notice on which the Trustee bases this argument provides:

> "Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of 'net equity' and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order."
> (8/28/09 Trustee Notice; Complaint Exhibit C).

The Trustee's argument that the 8/28/09 Trustee Notice finally disallowed yet somehow "preserved" Mr. Greiff's customer claim, which preservation in turn waived Mr. Greiff's right to a jury trial, fails for multiple reasons:

- First, the Claims Procedures Order expressly stated all determinations disallowing claims such as Mr. Greiff's (if not the subject of objections) were "deemed approved by the Court and binding on the claimant" (Claims Procedures Order, p. 7 ¶ B);

- Second, no "preservation" of disallowed claims can reasonably be read into the language of the 8/28/09 Trustee Notice relied upon by the Trustee; such language was added by the Trustee but never authorized by the Bankruptcy Court; and the language was contrary to the Claims Procedures Order and the Trustee's public pronouncements that such disallowances were "final";

- Third, the Trustee's twisted reading of the Notice's references to potential later appellate rulings has no relevance to the *finality* of either (i) Mr. Greiff's claim which was not the subject of any appeal, or (ii) any disallowed claims, the finality of which remained despite appellate proceedings;

- Fourth, with the 8/28/09 Trustee Notice itself expressly stating there was no waiver of any customer's claim-determination rights, the Court should reject the Trustee's argument that the Notice effected some hidden waiver of other customer rights, such as the right to a jury trial; and

- Finally, this Court has already recognized Second Circuit precedent requires, in order to effect a waiver of a jury trial; the customer's claim must be intertwined with the avoidance action issues, which cannot occur when the claim's disallowance was final long before the avoidance action was even commenced.

For all these reasons, Mr. Greiff has not waived his right to a jury trial and this Court should grant a stay of these proceedings to allow the District Court to address that right in the Withdrawal Motion.

## A.    THE GREIFF CLAIM WAS FINALLY DISALLOWED PURSUANT TO THE BANKRUPTCY COURT ORDER AND THE TRUSTEE'S NOTICE

In 2008, the Trustee designed and implemented with Bankruptcy Court approval a procedure for satisfying or disallowing customer claims and, in cases of customer disputes, for

resolution with court assistance.  The Trustee did not seek, nor did the Trustee obtain, court authority to preserve or revive in any way a finally disallowed claim.

Specifically, to satisfy the Trustee's obligations under section 78fff-2 of the Securities Investor Protection Act ("SIPA") with respect to the claims processing, as his first official act, the Trustee filed the Trustee's Ex Parte Application For Entry Of An Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claims; and Providing Other Relief, on December 21, 2008, (Bankr. S.D.N.Y. Case No. 08-01789 (BRL) [Main Case ECF 8] (the "Application")[2] seeking, *inter alia*, approval of procedures and forms governing SIPA claims to be filed in the BLMIS liquidation.  In the Application, the Trustee specifically sought approval for procedures including:  for customers who had objections to the Trustee's determination of their claims, a process for pursuing those objections before the Bankruptcy Court; and alternatively, where the customers failed to file objections, for the Trustee's decision to be final.  Significantly, the Trustee did not seek approval of any procedure for revival or preservation of disallowed claims.  The precise procedure sought, in pertinent part, was set forth as follows:

> The Trustee anticipates that individuals may file claims seeking "customer" protection that the Trustee may disallow completely, disallow as a protected customer claim, or disallow in part. The Trustee proposes this Court order a procedure for the expeditious resolution of disputes that may arise between the Trustee and claimants for protection as customers. The Trustee suggests the following procedures for those claims for protection as a customer of the Debtor, as defined in SIPA, which it does not allow as filed:
>
> (1) The Trustee will notify the claimant by certified mail that the Trustee has determined that the claimant's claim has been disallowed in whole or in part or has otherwise not been approved for satisfaction as filed. Notification shall be in a form similar to Exhibit G attached hereto. If a

---

[2] For the Court's ease of reference, a copy of the Application, including exhibits, is attached as Exhibit A to the accompanying Supplemental Declaration of Arthur H. Ruegger in Support of Defendant's Reply Memorandum of Law, In Support of Motion for Stay of Proceedings, On the Issue of the Trustee's Notice of Determination and Alleged Preservation of the Customer Claim, sworn to April 1, 2020 ("Supplemental Ruegger Dec." or "Supp. Ruegger Dec.").

claimant is aggrieved by the determination of the Trustee, the claimant shall be afforded the opportunity to have the matter heard by the Court as a contested matter under Rule 9014 of the Bankruptcy Rules.

. . .

(4) *If a claimant fails to request a hearing* within thirty days of the mailing of the Trustee's determination in accordance with the procedures established by this Court's order, or if the claimant fails to appear at the hearing, *then the Trustee's determination shall be final.*

. . .

Application ¶ 16 (Supp. Ruegger Dec. Ex. A) (emphasis added).

Consistent with the above, the Trustee's proposed Notice of Trustee's Determination of Claim form (Application Ex. G; Supp. Ruegger Dec. Ex. A, Sub-Ex. G), provided that should a customer not file a written opposition to the Trustee's determination, the claim "will be deemed confirmed by the Court and binding on [the customer]."   The proposed Notice of Trustee's Determination did *not* include, however, the language related to appellate review that appears in the 8/28/09 Trustee Notice.   That appellate-review language (and the sole basis for the Trustee's argument that Mr. Greiff's claim remained somehow "preserved") was never, to the best of Defendant's information, brought before and approved by the Bankruptcy Court.   Even more importantly, Defendant is not aware of any support for the Trustee's argument that the appellate-review language somehow rendered disallowed claims "live" and "justiciable" before the Bankruptcy Court.

Similarly, the Trustee's Proposed Order (Application, Ex. H), contained provisions that, if a claimant failed to file an opposition to the Trustee's determination, that determination "shall be deemed approved by the Court and binding on the claimant" (Application Ex. H p. 7, ¶ B).

On December 23, 2008, the Court approved the Trustee's request as the Trustee proposed (the "Claims Procedures Order") [ECF 12].   Pursuant to that Order, customers were required to

file claims with the Trustee by the statutory bar date.  Claims Procedures Order at *3.  The

Bankruptcy Court adopted the Trustee's proposal for final disallowance of those claims to which

no opposition was filed.  The Order further states:

> "If the claimant desires to oppose the determination, the claimant shall be required to file with this Court, preferably electronically, and a hard copy with the Trustee a written statement setting forth in detail the basis for the opposition, together with copies of any documents in support of such opposition, within thirty (30) days of the date on which the Trustee mails his determination to the claimant. *If the claimant fails to file an opposition as hereinabove required, the Trustee's determination shall be deemed approved by the Court and binding on the claimant.*"

Claims Procedures Order at 6 - 7 (emphasis added).

In accordance with the Claims Procedures Order, on January 17, 2009, Mr. Greiff served

the Trustee with his customer claim (the "Customer Claim"), seeking to recover the purported

balance in his account based upon his statement.

On August 28, 2009, more than a year before the filing of the Complaint against Mr. Greiff,

in accordance the Claims Procedures Order, the Trustee issued a Notice of Trustee's Determination

of Claim with respect to the Greiff Customer Claim (as previously defined, the "8/28/09 Trustee

Notice").   The Trustee denied the Customer Claim on the grounds that the claimants had

"withdrawn more than was deposited into your account, you do not have positive 'net equity' in

your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding."

As the Claims Procedures Order provided, the 8/28/09 Trustee Notice clearly advised the

Defendant that the determination will be final and binding if he failed to file an objection.  It states:

> **PLEASE TAKE NOTICE**: If you disagree with this determination and desire a hearing before the Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court and the Trustee within **THIRTY DAYS** after August 28, 2009, the date on which the Trustee mailed this notice.

> **PLEASE TAKE FURTHER NOTICE**: If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you**.**

Complaint, Exhibit C.[3]

It is undisputed that Mr. Greiff did not file an objection (or attend a hearing) within the thirty days and, thus, the Trustee's denial determination became final and binding pursuant to **both** the Bankruptcy Court Claims Procedures Order and the 8/28/09 Trustee Notice.

**B.      THE TRUSTEE'S NOTICE DID NOT PRESERVE THE GREIFF CLAIM IN ANY WAY, PARTICULARLY NOT AS "LIVE AND JUSTICIABLE"**

The Trustee's position -- that Mr. Greiff's claim remained a contested claim based on a theoretical right for Mr. Greiff to have his claim re-determined as stated in the 8/28/09 Trustee Notice -- is unavailing for several independent reasons.

**1.      The "Appellate Review" Language in the Trustee Notice Was Never Authorized by the Bankruptcy Court; And Is Contrary to Both the Claims Procedures Order and the Trustee's Public Pronouncements that Unobjected-To Trustee Determinations Were Final.**

As noted above, the Trustee's proposed form of Notice of Trustee's Determination of Claim (Application Ex. G; Supp. Ruegger Dec. Ex. A, Sub-Ex. G), and the Claims Procedures Order entered by Judge Lifland on December 23, 2008 (including the forms approved therein), provide that any claim determination not objected to will be "deemed confirmed by the Court and binding on [the customer]."   The Trustee added to the 8/28/09 Trustee Notice (and presumably other determination notices), without court authorization as best the Defendant can determine, the following "appellate review" language the Trustee now relies upon:

> Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding

---

[3] The same unequivocal admonition regarding the finality of the Trustee's determination if the claimant failed to object was featured on the Trustee's website and in the Trustee's First and Second Interim Reports of the Trustee dated July 9, 2009 and November 12, 2009, respectively. *See* Trustee's First Interim Report for the Period December 11, 2008 through June 30, 2009 at ¶69 and Trustee's Second Interim Report For the Period Ending October 31, 2009 at ¶89.

application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of determination shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

There are several reasons this appellate-review language is insufficient to find Mr. Greiff's claim still "live and justiciable" (Trustee Mem. p. 2).

Number one, as noted above, the Bankruptcy Court never approved such language, and the Trustee should not be permitted to manipulate this Court's jurisdiction by unauthorized, unilateral statements.

Number two, any construction of the above appellate-review language to preserve disallowed claims as "live and justiciable" would fly in the face of both the Court's and the Trustee's statements that disallowed not-objected-to claims were "binding" on the customers and "final". *See* Claims Procedures Order p. 7 ¶ B (such determination "shall be deemed approved by the Court and binding on the claimant"); Application p. 8, ¶ 16(4) ("If a claimant fails to request a hearing . . . the Trustee's determination shall be final"); *see also* www.madofftrustee.com/claims ("If the claimant fails to request a hearing, the SIPA Trustee's determination is final.")

2.    **The Finality of the Determination Disallowing Mr. Greiff's Claim Is Not Affected by Potential Appellate Processes, Particularly Where Those Processes Do Not Involve the Defendant.**

Both logically and on its face, the appellate-review language does not transform the final claim disallowance into a pending claim contest for purposes of the Court's jurisdiction. Where there is a genuine potential link between the claim determinations and avoidance litigation, the coordination can be addressed with the court's assistance. For example, in *U.S. Bank Nat. Ass'n v. Verizon Communic'ns, Inc.*, 761 F.3d 409, 419-20 (5th

Cir. 2014, the bankruptcy court expressly separated the fraudulent transfer litigation from the claims allowance process. The bankruptcy court provisionally allowed a claim for distribution purposes, but expressly reserved the rights of the reorganized debtor under section 502(d).[4] In short, the link between ultimate final allowance of the claims and the section 502(d) objection related to the fraudulent transfer litigation was expressly preserved in clear terms in a court order. That is not the case here.

There is a similar right under section 502(j) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3008 for a party in interest to seek reconsideration of a claim. However, this right has the protections against manipulation by either the claimant or the trustee of procedural and substantive restrictions that were not involved here.

In the instant case, the Trustee initiated proceedings on a consolidated basis to address that part of his Notice of Determination that required a hearing to resolve objections to his denial of claims. The Trustee did not notice Greiff of these proceedings and neither the Trustee nor the

---

[4] The *Verizon Communic'ns* court, 761 F.3d at 419 - 20, recounted the bankruptcy court's provisional allowance as follows:

On December 29, 2011, the bankruptcy court entered a stipulated order on Idearc's objections to all four of Verizon's claims. *See In re Idearc Inc.,* No. 09-31828 (Bankr.N.D.Tex. Dec. 29, 2011) (Doc. 3019). The order acknowledged that this lawsuit was pending in the district court. *Id.* at 3. The bankruptcy court provisionally disposed of Claim No. 2450, which it called the "Distribution Agreement Claim," as follows:

*Determination of Distribution Agreement Claims.* With the exception of the …§ 502(d) Objections, the allowance and amount of Verizon's Distribution Agreement Claims *may be determined in the Litigation Trust/Verizon Lawsuit.* To the extent those claims are so determined and allowed, such determination and allowance shall be binding on the Reorganized Debtors, except that the … §502(d) Objections shall be preserved. In such event, if (i) a judgment is entered in the Litigation Trust/Verizon Lawsuit against Verizon for actual or constructive fraudulent transfer, or for any cause of action brought by the Litigation Trust premised on fraud, including but not limited to promoter fraud or alter ego, and (ii) the Reorganized Debtors' Bankruptcy Cases have been closed pursuant to section 350 of the Bankruptcy Code, within 60 days following the completion, including all appeals, of the Litigation Trust/Verizon Lawsuit, the Reorganized Debtors, at Verizon's request, shall file an agreed motion *to re-open the Bankruptcy Cases for the sole purpose of determining the … § 502(d) Objections to the Verizon Proofs of Claim.* If the allowance and amount of Verizon's Distribution Agreement Claims are not determined in the Litigation Trust/Verizon Lawsuit, then the agreed motion to re-open the Bankruptcy Cases shall be for the purpose of determining the allowance and amount of Verizon's Distribution Agreement Claims and resolving ... § 502(d) Objections to the Verizon Proofs of Claim.

Court considered redetermination of disallowed claims in those cases where the claimant did not

object to the determination.

In his Motion of Trustee for an Order to Schedule Hearing on "Net Equity" Issue, filed on

August 27, 2009. [Main Case ECF No. 395] (the "Scheduling Motion"), the Trustee sought to

establish an orderly consolidated procedure for resolving net equity disputes with those parties

who filed objections (defined as "Objecting Claimants") consistent with the procedure for

resolving objections outlined in the Notice of Determination and the Claims Procedure Order. The

Trustee described the relief sought as follows:

> In furtherance of the requirement under the Claims Procedures Order that the
> Trustee obtain and notify an objecting party of a hearing on an objection, the
> purpose of this proposed scheduling order is to establish an orderly procedure
> for this Court to resolve objections involving the proper determination of Net
> Equity.
> (Scheduling Motion ¶ 13)

The Bankruptcy Court approved the Trustee's Scheduling Motion on September 11, 2009

in the context of a decision to dismiss customers' complaints to determine net equity. The Court

expanded the scope of net equity determination to include customers with allowed claims based

on the Trustee's methodology, but did not address re-determining disallowed claims when the

claimant had accepted the Trustee's denial.

> The Trustee has recently submitted the Scheduling Motion, which is an
> amplification of the Claims Procedure Order and establishes a procedural
> framework to allow all parties in interest to participate in the litigation of the
> Net Equity Issue. The Scheduling Motion will address the concerns of a
> variety of customers with different account histories and balances, including
> both net winners and net losers, and will provide everyone involved with the
> benefits from the submission of a comprehensive and complete record on this
> issue. Allowing Plaintiffs, who represent only one group of customers
> (namely, the net losers), to proceed with the adversary proceeding to
> determine the Net Equity Issue that will apply to all customer claims will
> yield an incomplete record that might result in piecemeal litigation on this
> issue. Moreover, Plaintiffs' will suffer no prejudice in having the Net Equity
> Issue decided pursuant to the Scheduling Motion while other customers will

suffer great harm if Plaintiffs are permitted to proceed without their participation.

*See* Memorandum Decision and Order Granting the Trustee's Motion to Dismiss the Plaintiffs' Complaint, entered 9/11/09 [Main Case ECF No. 417] at 12 - 13.  On September 16, 2009, the Court entered the scheduling order regarding a consolidated procedure for objecting "net winners" and "net losers" proposed by the Trustee.  [*See* Main Case ECF No. 437].

When the Trustee filed the Trustee's Motion For An Order Upholding Trustee's Determination Denying Customer Claims' For Amounts Listed On Last Statement, Affirming Trustee's Determination Of Net Equity, And Expunging Those Objections With Respect To The Determinations Relating To Net Equity, dated October 16, 2009, [Main Case ECF No. 524] (the "Trustee Net Equity Motion") and Exhibit A, [Main Case ECF No. 530], the focus of the Trustee's analysis was the claimants' objections to his determinations.  The Trustee Net Equity Motion was accompanied by the Declaration of Bik Cheema specifically identifying and analyzing the objections.  The Exhibit listed only objectors and/or their counsel and the Trustee served only those parties with the Motion.

The Trustee did not address or list claimants whose claims were disallowed, but who had not filed an objection.  The Trustee did not give notice of the Trustee Net Equity Motion to Mr. Greiff.  Mr. Greiff did not appear in these proceedings on his own behalf or by counsel.  .

The Bankruptcy Court rejected the Last Statement Method, upheld the use of the Net Investment Method to calculate net equity, and overruled certain objections well before the filing of the adversary proceeding.   *See* Order (1) Upholding Trustee's Determination Denying Customer Claims for Amounts Listed on Last Customer Statement; (2) Affirming Trustee's Determination of Net Equity; and (3) Expunging Those Objections with Respect to the Determinations Relating to Net Equity, dated Mar. 8, 2010 [Main Case ECF No. 2020].

- 10 -

Thus, as a practical matter the Trustee did not provide an opportunity for Mr. Greiff to exercise an alleged right to have his claim re-determined.  The Trustee did not raise the matter in his net equity proceeding and the Bankruptcy Court did not rule on it.

In fact, Mr. Greiff did not contest the Trustee's determination at any time before the Bankruptcy Court or in the appellate process.  By agreement between the Trustee and counsel for the objection claimants and with Court approval, the Bankruptcy Court's order was appealed directly to the Second Circuit, which affirmed in 2011, and the U.S. Supreme Court denied petitions for writs of certiorari in 2012.  *See Velvel v. Picard*, 567 U.S. 934 (2012).  Mr. Greiff did not pursue the appeal.  A copy of a portion of the docket in the Second Circuit appeal demonstrates that Mr. Greiff did not appear, nor did anyone appear on his behalf.  *See* portion of the General Docket, Court of Appeals for the 2d Circuit.  Docket No. 10-2378. (Supplemental Ruegger Dec. Ex. B)

**3.  Given the Trustee Notice Expressly Disclaims Any Waiver of a Customer's Claim-Determination Rights, the Trustee Should be Barred from Arguing the Notice Effected a Hidden Waiver of Other Customer Rights, Such as the Right To a Jury Trial.**

A final reason the Trustee cannot argue the appellate-review language preserved Mr. Greiff's claim as "live and justiciable," thus waiving Mr. Greiff's right to a jury trial, is the Notice language disclaiming any waiver of the customer's claim-determination rights.  Immediately following the appellate-review language, the Notice states:

> "Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order."

This express disclaimer of any effect on customer claim-determination rights removes any justification for the Trustee's arguments that the Notice operates as some hidden waiver of other customer rights.  Nevertheless, in the face of a Notice that explicitly disclaims any waiver of

- 11 -

customer claim-determination rights, the Trustee argues that same Notice carries with it a hidden waiver whereby Mr. Greiff's disallowed claim somehow was secretly preserved as "live and justiciable" at the time the adversary proceeding against Mr. Greiff was commenced, thus waiving Mr. Greiff's right to a jury trial. For the sake of simple fairness alone the Trustee's argument should be rejected. A trial by jury is a substantial right that should not be lost by hidden "waivers" such as that the Trustee seeks to assert here.

For all the above reasons, the language in the 8/28/09 Trustee Notice did not preserve Mr. Greiff's claim as "live and justiciable" and the Trustee's arguments based on that ground should be rejected.

## C.    THE ADVERSARY PROCEEDING WAS NOT LINKED TO THE PREVIOUSLY DISALLOWED CLAIM

Even if the language in the 8/28/09 Trustee Notice had been sufficient to create a contested claim up to and after the adversary proceeding was filed, the required link between the adversary proceeding and the claims resolution necessary to the Court's equitable jurisdiction was not present.

This Court acknowledged that, under Second Circuit precedent, this Court's equitable jurisdiction depends upon both the status of the claim at the time of the filing complaint **and** the link between the claims allowance process and the adversary proceeding:

> Not every claim filing triggers the bankruptcy court's equitable jurisdiction and defeats the defendant-creditor's right to a jury trial. *Bankr. Servs., Inc. v. Ernst & Young (In re CBI Holding Co., Inc.*), 529 F.3d 432, 466 (2d Cir. 2008) ("[F]iling a proof of claim is a necessary but not sufficient condition to forfeiting a creditor's right to a jury trial."), cert. denied, 556 U.S. 1183 (2009); *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1327 (2d Cir. 1993) ("We agree that the filing of a proof of claim is a necessary condition – the claims – allowance process can hardly begin before a claim is made – however, it is not a sufficient condition.") (emphasis in original). "Rather, a creditor loses its jury trial right only with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim or is otherwise so integral to restructuring the debtor-creditor relationship. *CBI*

*Holding*, 529 F.3d at 466; *accord Stern v. Marshall*, 564 U.S. 462, 496-99 (2011).

   *Sec. Inv'r. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 597 B.R. 466, 476 (Bankr. S.D.N.Y. 2019)(the "Jurisdictional Decision").[5]

   In the Jurisdictional Decision, this Court explained the justification for the link between the creditor's claim and the adversary proceeding:

> Principles of collateral estoppel and *res judicata* dictate whether a proceeding affects the claims allowance process or the restructuring of the debtor-creditor relationship. *Katchen v. Landy*, 382 U.S. at 334. If the bankruptcy court must determine the same issues or claims in connection with the adversary proceeding and the allowance of the proof of claim, a determination of the issue or claim in one proceeding will preclude the relitigation of the same issue or claim in the other proceeding. Avoidance claims always implicate the claims allowance process because the trustee must avoid the transfer to recover against the defendant-creditor and disallow the defendant-creditor's claim under Bankruptcy Code § 502(d).

597 B.R. at 476.

   However, in a later decision in the same adversary proceeding, after the Court had the opportunity to review the issues and evidence on the Trustee's summary judgment motion, the Court rejected the Trustee's *res judicata* argument that resolution of the claims allowance process determined the outcome of the adversary proceeding:

> On further consideration, however, the Claims Litigation and the Avoidance Action do not involve the same cause of action or necessarily the same evidence. The former concerned the Defendants' net equity claims under SIPA against the BLMIS estate. The Defendants are not making a claim for anything in the Avoidance Action. The Trustee is essentially arguing that their claim in the Claims Litigation and their defense in the Avoidance Action involve the same facts (netting deposits and withdrawals) and are the same cause of action. He does not, however, cite authority to support his proposition that a claim for affirmative relief in one action and a defense

---

[5] The Court cited a single decision where a court disregarded the disallowance of a claim before the adversary proceeding was filed for purposes of determining its equitable jurisdiction. *See MCI WorldCom Commc'ns, Inc. v. Commc'ns Network Int'l (In re WorldCom, Inc.)*, 378 B.R. 745, (Bankr. S.D.N.Y. 2007). That decision turns on the fact that the proof of claim and claims in the adversary proceeding were inextricably intertwined.

> based on the same facts in a second action constitute the same cause of action for *res judicata* purposes….
>
> More importantly, the issues and evidence are not necessarily the same. A customer has a net equity claim of zero whether he has overdrawn his BLMIS account by $1.00 or $1 million. It makes no difference, and he might withdraw his net equity claim in either circumstance. On the other hand, the amount that he has overdrawn measures his potential liability for fictitious profits in an avoidance action under the Bankruptcy Code, and whether that is $1.00 or $1 million makes a big difference. A claimant who could show that some of the withdrawals came from third parties might still have a zero net equity claim but the withdrawals paid by non-debtors would reduce the fictitious profits he received and his liability for a fraudulent transfer. The withdrawal of the net equity claims acknowledges that the Defendants' net equity claims are zero but does not necessarily say anything about their defense to the Avoidance Action. Accordingly, res judicata does not foreclose the Defendants' argument that the Two-Year Transfers were not made by BLMIS.

*Sec. Inv'r. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 608 B.R. 165, 179-80 (Bankr. S.D.N.Y 2019).

Some of the same issues are present in Mr. Greiff's defense in this adversary proceeding and compel the same conclusion: that the claims allowance process and adversary proceeding are not inextricably intertwined so as to foreclose the Defendant's right to a jury trial.

In this case, the customer claim was disallowed well before the adversary proceeding was filed. As a result, the concern that a claimant could manipulate bankruptcy court jurisdiction by withdrawing the claim a strategic point is not present here. *See* Jurisdictional Decision, 597 B.R. at 484.

- 14 -

**D.**     **CONCLUSION**

Based on the above, the Defendant respectfully requests that the Court stay proceedings in the Defendant's adversary proceeding pending a ruling by the District Court on his motion to withdraw the reference.

Dated: April 1, 2020
      New York, New York

**DENTON US LLP**

By:  _s/Arthur H. Ruegger_
Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Tel:  (212) 768-6700
Fax: (212) 768-6800
Email: arthur.ruegger@dentons.com

_Attorneys for Defendant_