**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | SIPA LIQUIDATION <br><br> No. 08-01789 (SMB) <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor, | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> STANLEY SHAPIRO, *et al.*, <br><br> Defendants. | Adv. Pro. No. 10-05383 (SMB) |

**MOTION FOR ENTRY OF ORDER, PURSUANT TO SECTION 105(a) OF THE**
**BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE, APPROVING SETTLEMENT AGREEMENT**

TO:    THE HONORABLE STUART M. BERNSTEIN
       UNITED STATES BANKRUPTCY JUDGE

       Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard

L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act,

15 U.S.C. §§ 78aaa–lll ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff

("Madoff") under chapter 7 of the United States Bankruptcy Code (the "Code"), 11 U.S.C.

§§ 101-1532, by and through his undersigned counsel, submits this motion (the "Motion")

seeking entry of an order, pursuant to section 105(a) of the Code and Rules 2002 and 9019 of the

Federal Rules of Bankruptcy Procedure, approving the settlement agreement (the "Agreement")

attached hereto as Exhibit 1, by and between the Trustee and Stanley Shapiro, the Estate of

Renee Shapiro, S&R Investment Co., David Shapiro, Leslie Shapiro Citron, and Kenneth Citron

(collectively, "Defendants,"[1] and together with the Trustee, the "Parties").

## PRELIMINARY STATEMENT

The Agreement represents a good faith, global settlement between the Parties as to all

avoidance claims asserted by the Trustee against Defendants and all customer claims submitted

by Defendants.  The settlement will benefit the customer property fund by more than $12

million, a total that well exceeds the avoidable transfers Defendants received from BLMIS in the

two years prior to December 11, 2008 (the "Filing Date").  The Trustee respectfully requests that

the Court approve the Parties' settlement.

## BACKGROUND

1.      On the Filing Date, the United States Securities and Exchange Commission (the

"SEC") filed a complaint in the United States District Court for the Southern District of New

York (the "District Court") against BLMIS and Madoff.  In the complaint, the SEC alleged that

BLMIS engaged in fraud through its investment advisor activities.

---

[1] Certain of Defendants enter into the Agreement in multiple capacities. *See* Agreement at 1.
For example, Stanley Shapiro is party thereto in his individual capacity as well as trustee of the
LAD Trust, the David Shapiro 1989 Trust, as amended, and the Leslie Shapiro Citron 1985
Trust, as amended.

2.      On December 15, 2008, the SEC consented, pursuant to SIPA § 78eee(a)(4)(A), to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, SIPC filed an application, pursuant to SIPA § 78eee(a)(3), in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and accordingly its customers needed the protection afforded by SIPA.

3.      Also on December 15, 2008, the District Court granted SIPC's application and entered an order that, *inter alia*, appointed the Trustee under SIPA § 78eee(b)(3) and removed the case to this Court under SIPA §78eee(b)(4), where it is currently pending (No. 08-01789 (SMB)).

4.      On April 13, 2009, an involuntary chapter 7 petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating Madoff's chapter 7 estate with the SIPA liquidation proceeding of BLMIS.

**THE DEFENDANTS**

5.      Stanley Shapiro ("Shapiro") and his family were long-time customers of BLMIS's investment advisory business.  Between 1995 and 2008, BLMIS also employed Shapiro in its proprietary trading business as a consultant regarding stocks of publicly traded companies in the retail clothing industry.

6.      Shapiro was married to Renee Shapiro until her death in September 2017.[2] Leslie Shapiro Citron and David Shapiro are both children of Stanley and Renee Shapiro.  Leslie Shapiro Citron is married to Kenneth Citron (together, the "Citrons").

---

[2] In 2018, Renee Shapiro's estate and Shapiro, in his capacity as executor of the estate, were added as defendants in this action in place of Renee Shapiro. (*Picard v. Shapiro*, Adv. Pro. No.

3

7.      S&R Investment Co. ("S&R") is a partnership which was formed by Stanley and

Renee Shapiro.  Shapiro is S&R's general partner.

8.      Defendants held more than twenty investment advisory accounts (the "Accounts")

at BLMIS.  Over the years, they received a significant number of transfers from BLMIS in

connection with the Accounts.  The largest of the Accounts were held by Shapiro and his wife

through S&R.

## THE TRUSTEE'S CLAIMS AGAINST DEFENDANTS

9.      On December 9, 2010, the Trustee filed a complaint in this Court against

Defendants and certain related parties to avoid and recover fraudulent transfers Defendants

received from BLMIS.  (ECF No. 1.)  The Trustee filed a Second Amended Complaint on July 8,

2014 seeking substantially the same relief.  (ECF No. 33.)  Defendants moved to dismiss the

Second Amended Complaint.  (ECF Nos. 37–38.)

10.     By order dated February 8, 2016, the Court partially granted and partially denied

Defendants' motion.  (ECF No. 63.)   In its ruling, the Court found that the Trustee had

sufficiently alleged that Shapiro knew, at a minimum, that BLMIS was not actually trading

securities as reported in the monthly statements of the Accounts, and therefore the Court held

that the Trustee could, notwithstanding section 546(e)'s safe harbor, seek to avoid and recover

transfers made by BLMIS outside of the two-year period prior to the Filing Date from those

Accounts that Shapiro controlled.  The Court further found that the Trustee had not alleged

sufficient facts to impute Shapiro's knowledge to his children.  As a result, the Court dismissed

certain of the Trustee's claims to the extent that they sought to avoid and recover transfers made

---

10-05383 (SMB), ECF No. 88.)  Further references to the record in this action refer only to the
ECF number.

4

outside of the two-year period from those Accounts held by his children in their own names. (*Id.*)[3]

## DEFENDANTS' CLAIMS AGAINST THE BLMIS ESTATE

11.     Defendants filed nine customer claims (the "Customer Claims") in the SIPA proceeding alleging losses based on cash balances and market value of the securities reflected on their last BLMIS customer statements for the Accounts (the "Last Statement Method").

12.     The Trustee denied each of the Customer Claims (with two exceptions[4]) based on his "net equity" calculations of crediting the total amount deposited into each Account less the amounts withdrawn from each Account (the "Net Investment Method").

13.     Defendants objected only to the claim denial relating to Account No. 1C1251 on the basis that the Trustee should have determined the claim using the Last Statement Method. On August 16, 2011, the United States Court of Appeals for the Second Circuit rejected the Last Statement Method and upheld the Net Investment Method used by the Trustee. *In re BLMIS, Inc.*, 654 F.3d 229 (2d Cir. 2011).

## DISCOVERY AND SETTLEMENT DISCUSSIONS

14.     Following the Court's ruling on Defendants' motion to dismiss, the Parties engaged in extensive discovery.  They exchanged thousands of documents and conducted numerous depositions across the country.  The Trustee served reports from four experts whom he planned on calling at trial.

---

[3] Accordingly, although the total amount that the Trustee could seek to avoid and recover from Shapiro remained the same (lifetime transfers of $29 million, six-year transfers of $27.5 million, and two-year transfers of $7.6 million), the amount that he could avoid and recover from the Citrons from their own Accounts was confined to two-year transfers totaling $828,304, and from David Shapiro from his own Accounts was limited to two-year transfers totaling $1,014,121.

[4] The Trustee did not determine the customer claims relating to Account Nos. 1C1345 and 1S0540 based on this contention that the accounts had been funded with subsequent transfers of fictitious profits.

15.     At the close of discovery, the Court required the Parties to mediate their dispute.

(ECF No. 68.)   The Court appointed the Honorable Faith S. Hochberg, United States District

Judge (ret.), to serve as mediator.  (ECF No. 134.)

16.     Judge Hochberg held her mediation on July 23 and 25, 2019 in New York, New

York.  The Parties argued their respective positions and Defendants furnished Judge Hochberg

and the Trustee with detailed financial disclosures of their current assets, liabilities, and income.

After carefully assessing the strengths and weakness of the Parties' respective positions,

weighing the costs associated with litigating this adversary proceeding to its conclusion, and

considering Defendants' finances, Judge Hochberg provided the Parties at the close of the

mediation with a Mediator's Final Recommendation setting forth the material terms of a

proposed global settlement of all claims.  The Parties accepted Judge Hochberg's recommended

settlement, which is now embodied in the Agreement.

## OVERVIEW OF THE AGREEMENT

17.     The principal terms of the Agreement[5] are as follows:

a.     Defendants shall pay to the Trustee the aggregate amount of $11,480,000 (the

"Settlement Payment"), which exceeds the avoidable transfers Defendants received from

BLMIS in the two years prior to the Filing Date, as follows:

      i.     The Citrons and Shapiro shall, within ten business days of an order

          approving the Agreement (the "Effective Date"), pay to the Trustee respectively

          $828,304 and $171,696; and

---

[5] The Agreement is attached to this Motion.  Terms not otherwise defined herein shall have the meaning ascribed to them in the Agreement.  In the event of any inconsistency between the summary provided herein and the actual terms of the Agreement, the Agreement shall control.

08-01789-cgm   Doc 19465   Filed 04/02/20   Entered 04/02/20 16:20:45   Main Document
Pg 7 of 10

ii.    Shapiro shall, within eighteen months of the Effective Date, pay to the

Trustee the further sum of $10,480,000.

b.    Customer Claim relating to Account No. 1C1345 shall be allowed in the amount

of $562,000.00, shall be satisfied by funds advanced by SIPC under section 78fff-3(a)(1)

of SIPA and by such additional funds from the customer property fund, and all such

funds shall be simultaneously assigned to the Trustee.   Customer Claim relating to

Account No. 1S0540 shall be allowed in the amount of $152,421.66, shall be satisfied by

funds advanced by SIPC under section 78fff-3(a)(1) of SIPA, and such funds shall be

simultaneously assigned to the Trustee.

c.    The Trustee shall release, acquit, and forever discharge Defendants on the specific

terms set forth in the Agreement.   Defendants likewise shall release, acquit, and forever

discharge the Trustee, all his agents, SIPC, BLMIS, and its consolidated estate on the

specific terms set forth in the Agreement.

d.    In the event that this Court grants this Motion, the Parties shall file a stipulation to

be so-ordered by this Court that discontinues this adversary proceeding without prejudice

on terms that there be no orders for costs entered against any of the Parties.

**RELIEF REQUESTED**

18.    The Trustee respectfully requests by this Motion, that this Court enter an order,

substantially in the form of the proposed order annexed hereto, approving the Agreement.

**LEGAL BASIS**

19.    Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the

trustee and after notice and a hearing, the court may approve a compromise or settlement."   For

approval under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise

7

proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *See In re*

*Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994)

(citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390

U.S. 414, 424 (1968)).

20.     The Second Circuit has stated that a bankruptcy court, in determining whether to

approve a compromise, should not decide the numerous questions of law and fact raised by the

compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below

the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699

F.2d 599, 608 (2d Cir. 1983); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purofied Down*

*Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("the court need not conduct a 'mini-trial' to

determine the merits of the underlying litigation").

21.     In deciding whether a particular compromise falls within the "range of

reasonableness," courts consider the following factors: (i) the probability of success in the

litigation; (ii) the difficulties associated with collection; (iii) the complexity of the litigation, and

the attendant expense, inconvenience and delay; and (iv) the paramount interests of the creditors

or, in this case, customers. *Mason Hall & Asylum Fund v. Official Comm. of Unsecured*

*Creditors of Refco Inc. (In re Refco, Inc.)*, 2006 WL 3409088, at *8 (S.D.N.Y. Nov. 16, 2006);

*Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert*

*Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993)).

22.     The bankruptcy court may credit and consider the opinions of the trustee or debtor

and their counsel in determining whether a settlement is fair and equitable. *See In re Purofied*

*Down Prods.*, 150 B.R. at 522; *Drexel Burnham*, 134 B.R. at 505.  Even though the Court must

independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536

8

(Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *Drexel Burnham*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

23.     The Trustee respectfully submits that the Agreement sets forth fair and equitable terms, which fall well within the range of reasonableness. *See* Declaration of Irving H. Picard in Support of Motion, attached hereto as Exhibit 2. The Agreement furthers the interests of BLMIS customers by adding more than $12 million to the fund of customer property. This amount exceeds the avoidable transfers Defendants received from BLMIS in the two years prior to the Filing Date. The Trustee's ability to avoid and recover transfers from Defendants outside of the two-year period is uncertain. The Trustee would bear the burden of proving at trial Shapiro's actual knowledge that the trading activity reflected on his and his family's BLMIS statements was not real. *See Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749, at *13–15 (Bankr. S.D.N.Y. Aug. 11, 2015). Even if the Trustee prevailed on this issue at trial, he would most likely not be able to fully collect on the judgment secured against Defendants, in light of their financial disclosures provided at mediation. Given these uncertainties, together with the aggregate amount to which the Parties have agreed to settle their respective claims, the Trustee respectfully submits that the terms of the Agreement are more than reasonable.

## NOTICE

24.     In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has

been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States

Attorney for the Southern District of New York; and (v) Defendants' counsel Barry R. Lax, Esq.,

Lax & Neville LLP, 350 Fifth Avenue, Suite 4640, New York, NY 10118.  Notice of this Motion

will also be provided via e-mail and/or U.S. mail to all persons who have filed notices of

appearance in the BLMIS proceeding and to all Defendants in this adversary proceeding

pursuant to the Order Establishing Noticing Procedures and Limiting Notice, Adv. Pro. No. 08-

01789, ECF No. 4560.  The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an order substantially in the

form of the proposed order annexed hereto granting the relief requested in this Motion.


Dated: April 2, 2020
      New York, New York

Respectfully submitted,

*/s/ David J. Sheehan*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Torello H. Calvani
Email: tcalvani@bakerlaw.com

*and*

127 Public Square
Suite 2000
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
James H. Rollinson
Email: jrollinson@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and the Estate of
Bernard L. Madoff*