# EXHIBIT G

| | |
|---|---|
| From: | Helfferich, Thomas |
| Sent: | Wednesday, December 24, 2003 10:59 AM |
| To: | De-Angelis, Viviane |
| Cc: | Stiehl, Bernd |
| Subject: | RE: "Trading Authority Madoff": Feedback und Empfehlung |

Hello Viviane,

I just discussed the matter with Bernd again. He had understood your question to mean that Madoff was supposed to be the custodian bank and UBSL the sub-custodian. Hence his negative reply.
But since your project is just the opposite (UBSL = custodian and Madoff = sub-custodian), Bernd agrees.

Regards

Thomas


-----Original Message-----
From: De-Angelis, Viviane
Sent: Wednesday, December 17, 2003 11:37 a.m.
To: Kiefer, Dieter
Cc: Helfferich, Thomas
Subject: FW: "Trading Authority Madoff": Feedback and Recommendation


Hello Dieter,

Bernd Stiehl does not accept the depository bank function with Madoff as "sub-custodian."

Our bank would effectively enter into several risks upon taking over the Oreades Fund (USD 300 million):

1)    Promoter function, UBS Lux on administrative board + Jean-Paul Delattre
2)    PM function, UBS would appear as PM and Littaie would be advisor
3)    Depository bank function:

Note that BNP Paribas, Luxembourg has terminated the mandate.

The risk should not be underestimated. It would be advantageous on the income side because I have already told the client that I would not accept the offer for 0.20% p.a. but would charge a minimum of 0.50% p.a. (in the event that we accepted it).

What is your opinion of the matter?

Best regards,

Viviane

-----Original Message-----
From: Kieft, Klaus
Sent: Tuesday, April 1, 2003 9:30 a.m.
To: De-Angelis, Viviane
Subject: FW: "Trading Authority Madoff": Feedback and Recommendation


1

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER.                    UBSL042021

UBSVAD0000260.0002


UBSVAD0000260.0001

... I think this is the OK

Best regards
Klaus

-----Original Message-----
From: Soliva, Florentin
Sent: Monday, March 31, 2003 6:02 p.m.
To: Kieft, Klaus
Cc: Soliva, Florentin; Heumann, Erhard; Weber, Burkard; Staehli, Urs
Subject: "Trading Authority Madoff": Feedback and Recommendation

Dear Mr. Kieft,

Attached please find our reply to your inquiry to Mr. Heumann regarding the Bernard L. Madoff Investment Securities LLC (Madoff) approach.

Pursuant to our depository policy, we normally have to give "NO" as the answer in cases like Madoff. In doing so, we make reference to the following principles: no broker as depository, and the broker may under no circumstances also be a depository at the same time! Such a NO is easy to comprehend for both business policy reasons and risk reasons.

On the basis of the documents at hand regarding the Madoff case, we make the following assumptions and can give you a set-up recommendation. Should the mentioned assumptions be incorrect, please notify us so that we can correct our recommendation.

Assumptions:
----------------
- Madoff as broker dealer is being monitored and audited by both the SEC (Securities Exchange Commission) and the NASD (National Association of Securities Dealers)
- The client does not yet have a relationship with UBS Lux and could be acquired with a special set-up
- UBS Lux does not have a depository relationship with Madoff yet, and this relationship would be a prerequisite for the acquisition of this new client
- Madoff acts as a broker and depository for these client positions, which consist exclusively of US securities
- Luxembourg SICAV: In this case, we are dealing with a fund that has only US securities as underlyings
- UBS Zurich will neither have to build a depository relationship for these special positions with this client nor with UBS Lux
- the "discretionary" account at Madoff is made out to UBS Lux ("discretionary" is only meant in reference to the client)
- there are no QI duties/reporting for UBS Luxembourg
- Madoff has some kind of trading authority for the client's entire depository holdings

Possible Set-Up:
--------------------
As an exception, we can approve the following "direct link set-up" with the conditions listed below:

1.) Client has a segregated depository relationship with UBS Luxembourg explicitly for these positions via Madoff. Other additional positions of the client that are not held via Madoff must be posted to and kept in a different account.
2.) UBS Lux keeps a segregated depository with Madoff which explicitly contains only the

2

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER.                    UBSL042022

UBSVAD0000260.0003

UBSVAD0000260.0001

Securities of this one client. Madoff reports to UBS Lux for the purpose of daily reconciliation similar to the reconciliation usage at UBS Luxembourg. UBS Luxembourg is in a position to guarantee the daily reconciliation and has a valid trading authority contract with Madoff.

3.) Madoff keeps a separate account for UBS Luxembourg in which only these positions of this one client are kept. The trading authority is limited to only this segregated account and these positions.

4.) Cash dealing/funding is done via USD correspondent of UBS Luxembourg (i.e., e.g., standing instruction for dividend payments to UBS Lux via the USD correspondent of UBS; USD acquisitions are undertaken by UBS Lux via this USD correspondent, in favor of Madoff account).

This 1:1 relationship principle would be one possible approach that we could approve from an operational standpoint by way of an exception if the conditions below are also met. From a risk management standpoint, we do, however, recommend that the UBS Lux Compliance Officer be consulted.

Conditions:
-------------

1.) Valid Trading Authority Contract (TAC) limited only to the positions of this client. From experience, it is advisable to mention in this TAC that only US securities may be traded (e.g., no doubly listed UK securities). This TAC authorization can be revoked at any time, effective immediately.

2.) Madoff discharges UBS Lux from any claims that could arise from the execution of transactions under this TAC (e.g., from all claims because of delayed processing of orders if UBS has not received the processing notice on time).

3.) A contractual depository relationship is to be established with the client (i.e., not just a management mandate), including the discharges as described in point 4.) below. Furthermore, it must be ensured on the client side that the TAC with Madoff can be amended or even terminated, effective immediately.

4.) It is advisable to have the client sign a waiver for corporate actions. We assume that UBS Luxembourg will have an actual and not a contractual agreement regarding corporate actions vis-à-vis the client. Without a waiver, the time component could have major negative consequences in the case of voluntary corporate actions, for example. The client should also release UBS from any duties under these stock exchange transactions. Such a release clause in the contract with the new UBS client should be reviewed thoroughly in light of any potential administrative tasks of UBS Lux.

5.) In the event of dissolution of the contract with the client, the immediate cancellation of the TAC is to be ensured.

6.) It must be ensured that a default case by Madoff would legally result in the immediate termination of the TAC.

The above is the commentary from our viewpoint as well as the recommendation to set up this unusual relationship. But this must remain an exception.

Best regards
Florentin Soliva

Florentin Soliva
Securities Services

3

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER.                UBSL042023

UBSVAD0000260.0004

UBSVAD0000260.0001

Strategic Projects / Core Custody
Tel. +41.1.236.12.87
Fax. +41.1.236.14.74
florentin.soliva@ubs.com

www.ubs.com

4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER.                    UBSL042024