# EXHIBIT 5

08-01789-cgm Doc 19491-5 Filed 04/23/20 Entered 04/23/20 14:52:03 Exhibit 5 - 4/28/2014 Opinion and Order of the United States District Court for Pg 2 of 14

Case 1:12-mc-00115-JSR Document 524 Filed 04/28/14 Page 1 of 13

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
SECURITIES INVESTOR PROTECTION          :
CORPORATION,                            :
                                        :
        Plaintiff,                      :
                                        :   12 Misc. 115 (JSR)
        -v-                             :
                                        :   OPINION AND ORDER
                                        :
BERNARD L. MADOFF INVESTMENT            :
SECURITIES LLC,                         :
                                        :
        Defendant.                      :
----------------------------------------x
In re:                                  :
                                        :
MADOFF SECURITIES                       :
----------------------------------------x
PERTAINS TO:                            :
                                        :
Consolidated proceedings on the         :
"Good Faith" Standard                   :
----------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Under section 548(a)(1) of the Bankruptcy Code, the trustee of a bankruptcy estate is empowered to, <u>inter alia</u>, "avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor . . . made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted." 11 U.S.C. § 548(a)(1)(A). However, this authority is limited by subsection (c) of the same statute, which provides that "a transferee . . . of such a transfer . . . that takes for value <u>and in good faith</u> has a lien on or may retain any interest transferred . . . to the extent that such transferee .

1

08-01789-cgm Doc 19491-5 Filed 04/23/20 Entered 04/23/20 14:52:03 Exhibit 5 - 4/28/2014 Opinion and Order of the United States District Court for Pg 3 of 14

Case 1:12-mc-00115-JSR Document 524 Filed 04/28/14 Page 2 of 13

. . gave value to the debtor in exchange for such transfer . . . ." Id. § 548(c) (emphasis supplied). Section 550(a)(2) of the Bankruptcy Code provides, in turn, that a trustee may recover avoided property or the value of such property from "any immediate or mediate transferee of such initial transferee." Id. § 550(a)(2). But, similarly to the restrictions on avoidance in section 548, section 550(b)(1) provides that a "trustee may not recover" under section 550(a)(2) from "a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." Id. § 550(b)(1) (emphasis supplied). The Bankruptcy Code does not define "good faith" in the context of section 548(c) or section 550(b), and it is that definitional question to which the instant consolidated proceeding is primarily directed, along with related questions of standards of pleading.[1]

In this proceeding, various defendants in actions brought against them by Irving Picard (the "Trustee") — the trustee appointed under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa-78lll, to administer the estate of Bernard L. Madoff Investment Securities LLC ("Madoff Securities") — have moved to dismiss the Trustee's avoidance and recovery actions against them. These defendants argue that the Trustee has failed to plead their lack of good faith such that they are entitled to retain the

___

[1] For purposes of this Opinion and Order, it is assumed that the transfers at issue were made "for value."

2

08-01789-cgm Doc 19491-5 Filed 04/23/20 Entered 04/23/20 14:52:03 Exhibit 5 - 4/28/2014 Opinion and Order of the United States District Court for Pg 4 of 14

Case 1:12-mc-00115-JSR Document 524 Filed 04/28/14 Page 5 of 13

transfers they have received from Madoff Securities (or some portion thereof). Defendants previously moved to withdraw the reference of their actions to the Bankruptcy Court, which the Court granted with respect to the following issue: "whether SIPA and other securities laws alter the standard the Trustee must meet in order to show that a defendant did not receive transfers in 'good faith' under either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b)." Order at 3, No. 12 Misc. 115, ECF No. 197 (S.D.N.Y. June 25, 2012). The Court received consolidated briefing and oral argument from the defendants (including separate briefs from various subgroups of defendants who raised issues relevant to their particular situations), and responding briefing and argument from the Trustee and the Securities Investor Protection Corporation ("SIPC"). The matter is therefore ripe for ruling.

In ruling, the Court assumes familiarity with the underlying facts of the Madoff Securities fraud and ensuing bankruptcy and recounts only those facts that are relevant to the instant proceeding. It is undisputed that Madoff Securities, a registered securities broker-dealer, engaged in a decades-long Ponzi scheme in which it accepted investments from various customers and then issued false monthly statements to those customers indicating consistent, favorable returns on securities transactions purportedly conducted by Madoff Securities on their behalf. In actuality, Madoff Securities undertook few, if any, securities transactions, and simply used other customers' investment funds to satisfy any

3

08-01789-cgm Doc 19491-5 Filed 04/23/20 Entered 04/23/20 14:52:03 Exhibit 5 - 4/28/2014 Opinion and Order of the United States District Court for Pg 5 of 14

Case 1:12-mc-00115-JSR Document 524 Filed 04/28/14 Page 4 of 13

customers' withdrawals of funds. Some withdrawing customers were individuals, and others were investment funds that in turn transferred the withdrawn funds to their customers. Additionally, some of these funds transferred some of the withdrawn monies to money managers and other professionals who were owed fees in connection with these transactions. The defendants in these consolidated proceedings are drawn both from direct customers of Madoff Securities and from these various subsequent transferees.

Underlying the complaints here in issue is the Trustee's central contention that all these defendants were sophisticated market participants who, even though they lacked actual knowledge of Madoff Securities' fraud, failed to act in good faith because they were aware of suspicious circumstances that should have led them to investigate the possibility of such fraud. Previously, however, in Picard v. Katz, 462 B.R. 447 (S.D.N.Y. 2011), this Court held that, in a SIPA proceeding such as this, a lack of "good faith" requires a showing that a given defendant acted with "'willful blindness' to the truth," that is, he "intentionally [chose] to blind himself to the 'red flags' that suggest a high probability of fraud." Id. at 455. In adopting this standard, this Court rejected the Trustee's alternative "inquiry notice approach," under which a transferee may be found to lack good faith "when the 'information the transferee learned would have caused a reasonable person in the transferee's position to investigate the matter further.'" Id. (brackets omitted) (quoting In re Manhattan Inv. Fund Ltd., 397 B.R. 1, 23 (S.D.N.Y.

4

08-01789-cgm   Doc 19491-5   Filed 04/23/20   Entered 04/23/20 14:52:03   Exhibit 5 -
4/28/2014 Opinion and Order of the United States District Court for    Pg 6 of 14

Case 1:12-mc-00115-JSR   Document 524   Filed 04/28/14   Page 6 of 13

2007)). The Court reasoned that, although the inquiry notice approach

> is not without some precedent in ordinary bankruptcies, it has much less applicability . . . in a context of a SIPA trusteeship, where bankruptcy law is informed by federal securities law. Just as fraud, in the context of federal securities law, demands proof of scienter, so too "good faith" in this context implies a lack of fraudulent intent. A securities investor has no inherent duty to inquire about his stockbroker, and SIPA creates no such duty. If an investor, nonetheless, intentionally chooses to blind himself to the "red flags" that suggest a high probability of fraud, his "willful blindness" to the truth is tantamount to a lack of good faith. But if, simply confronted with suspicious circumstances, he fails to launch an investigation of his broker's internal practices — and how could he do so anyway? — his lack of due diligence cannot be equated with a lack of good faith, at least so far as section 548(c) is concerned as applied in the context of a SIPA trusteeship.

Id. (citations omitted); see also Picard v. Avellino, 469 B.R. 408, 412 (S.D.N.Y. 2012) ("[T]o establish a lack of 'good faith' on the part of securities customers under § 548(c) in the context of a SIPA bankruptcy, the trustee must show that the customer either actually knew of the broker's fraud or 'willfully blinded' himself to it.").

Nonetheless, in a fashion that the Court has learned is typical of the Trutee's litigation strategy, the Trustee here seeks to litigate once again the issue of whether "good faith" should be judged by a subjective standard of willful blindness or by an objective standard of inquiry notice. But nothing in the intervening time has changed the analysis and conclusion that the Court reached

5

08-01789-cgm Doc 19491-5 Filed 04/23/20 Entered 04/23/20 14:52:03 Exhibit 5 - 4/28/2014 Opinion and Order of the United States District Court for Pg 7 of 14

Case 1:12-mc-00115-JSR Document 524 Filed 04/28/14 Page 8 of 15

in Katz and reiterated in Avellino.[2] See Katz, 462 B.R. at 455; Avellino, 469 B.R. at 412; see also In re Dreier, 452 B.R. 391, 449–50 (Bankr. S.D.N.Y. 2011) ("To be eligible for the good faith defense under § 548(c) . . . , a transferee should not be able to 'consciously avoid' facts within its knowledge that would suggest that the transfers were not made in good faith."). As Katz recognized, SIPA proceedings are informed by federal securities law. Although SIPA expressly incorporates the Bankruptcy Code's avoidance and recovery provisions, see 15 U.S.C. § 782fff-2(c)(3), SIPA nonetheless is part of the securities laws and expressly provides that the Bankruptcy Code applies only "[t]o the extent consistent with the provisions of this chapter [of the federal securities laws]," 15 U.S.C. § 78fff(b). Accordingly, where the Bankruptcy Code and the securities laws conflict, the Bankruptcy Code must yield.

It is well established that "good faith" in the securities context "implies a lack of fraudulent intent." See Katz, 462 B.R at 455; see also Ernst & Ernst v. Hochfelder, 425 U.S. 185, 206 (1976) (suggesting that a lack of good faith requires a mental state more culpable than negligence under the securities laws). From the perspective of an investor withdrawing funds from his account, any

---

[2] The Court is mindful that a comment in a footnote in a recent Second Circuit opinion might be read to suggest that good faith should be judged under the inquiry notice standard. See In re Bernard L. Madoff Inv. Sec. LLC, 740 F.3d 81, 90 n.11 (2d Cir. 2014). However, as its relegation to a footnote indicates, the statement in question is pure dictum, because the appeal did not raise any issue with respect to good faith or under what standard that question should be judged.

6

payments from Madoff Securities merely constituted the proceeds of a securities transaction on that customer's behalf. In these ordinary circumstances, it is undisputed that a "securities investor has no inherent duty to inquire about his stockbroker," and nothing in SIPA creates such a duty. Katz, 462 B.R. at 455; see also Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 477 (1977) ("[T]he fundamental purpose of the 1934 [Securities Exchange] Act [is] 'to substitute a philosophy of full disclosure for the philosophy of caveat emptor.'" (quoting Affiliated Ute Citizens v. United States, 406 U.S. 128, 151 (1972))); In re New Times Sec. Servs., Inc., 371 F.3d 68, 87 (2d Cir. 2004) (rejecting "greater investor vigilance" as a goal of SIPA and noting that "the drafters' emphasis was on promoting investor confidence in the securities markets and protecting broker-dealer customers"). Absent a duty to investigate, a customer's failure to do so does not equate with a lack of good faith. See Avellino, 469 B.R. at 412 ("[B]ecause the securities laws do not ordinarily impose any duty on investors to investigate their brokers, those laws foreclose any interpretation of 'good faith' that creates liability for a negligent failure to so inquire."); In re Dreier, 452 B.R. at 449 (applying a conscious avoidance standard where the investors-defendants "do not appear to have owed a duty to anyone (other than perhaps their own investors) to investigate Dreier's fraud").

The Trustee's approach would impose a burden of investigation on investors totally at odds with the investor confidence and securities market stability that SIPA is designed to enhance. This

7

08-01789-cgm Doc 19491-5 Filed 04/23/20 Entered 04/23/20 14:52:03 Exhibit 5 - 4/28/2014 Opinion and Order of the United States District Court for Pg 9 of 14

Case 1:12-mc-00115-JSR Document 524 Filed 04/28/14 Page 8 of 13

does not mean that an investor may purposely close her eyes to what is plainly to be seen. As stated in Katz, "[i]f an investor . . . intentionally chooses to blind himself to the 'red flags' that suggest a high probability of fraud, his 'willful blindness' to the truth is tantamount to a lack of good faith." 462 B.R. at 455. But, in the context of securities transactions such as those protected by SIPA, the inquiry notice standard that the Trustee seeks to impose would be both unfair and unworkable.

Although the subsequent transferees involved in these proceedings — including not only indirect investors but also individuals and entities who received fees for services provided to investment funds that were customers of Madoff Securities — were not themselves investors with Madoff Securities itself, the same standard applies to them under both section 548(c) and section 550(b). Not only does this outcome make sense as a matter of statutory interpretation, but it also reflects the impracticality of imposing a heightened duty of investigation on a securities market participant even further removed from Madoff Securities itself. See In re Schick, 223 B.R. 661, 663 (Bankr. S.D.N.Y. 1998) (finding that subsequent transferees are somewhat more insulated from liability because initial transferees have a "greater ability to monitor [the] debtor and the assets used to pay the debt"). This subjective standard also matches well with Congress's intent to limit the exception to recovery from subsequent transferees to those individuals who themselves acted in good faith. See S. Rep. No. 95-

8

08-01789-cgm Doc 19491-5 Filed 04/23/20 Entered 04/23/20 14:52:03 Exhibit 5 - 4/28/2014 Opinion and Order of the United States District Court for Pg 10 of 14

Case 1:12-mc-00115-JSR Document 524 Filed 04/28/14 Page 9 of 13

989, at 90 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5876 ("The phrase 'good faith' in [section 550(b)(1)] is intended to prevent a transferee from whom the transferee could recover from transferring the recoverable property to an innocent transferee, and receiving a retransfer from him, that is, 'washing' the transaction through an innocent third party. In order for the transferee to be excepted from liability under this paragraph, he himself must be a good faith transferee.").[3] In sum, the Court finds that, in the context of this litigation and with respect to both section 548(c) and section 550(b)(1), "good faith" means that the transferee neither had actual knowledge of the Madoff Securities fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud.

The Court turns next to the related question of which party bears the burden of pleading a defendant's good faith or lack thereof. If one looks at the question simply in terms of the Bankruptcy Code, without reference to SIPA or other considerations, "good faith" appears to be an affirmative defense that must in the first instance be pleaded by defendants. Accordingly, section 548(a)(1)(A) of the Bankruptcy Code permits a trustee to "avoid any

---

[3] The Court is unpersuaded by the Trustee's suggestion that the third phrase in section 550(b)(1) — "without knowledge of the voidability of the transfer" — implies that "good faith" in this context should be an objective test. In light of the legislative history, the most plausible reading is that this third requirement is merely one specific type of subjective knowledge required and does not preclude a subjective standard for good faith.

9

08-01789-cgm Doc 19491-5 Filed 04/23/20 Entered 04/23/20 14:52:03 Exhibit 5 - 4/28/2014 Opinion and Order of the United States District Court for Pg 11 of 14

Case 1:12-mc-00115-JSR Document 524 Filed 04/28/14 Page 10 of 13

transfer" made within two years of the debtor's filing of a bankruptcy petition, if the debtor (here, Madoff Securities) "made such transfer . . . with actual intent to . . . defraud any entity to which the debtor was . . . indebted." 11 U.S.C. § 548(a)(1)(A) (emphasis supplied), while section 548(c) allows a transferee to retain "any interest transferred" to the extent he received value for the transfer and if he can show that he took the transfer in good faith, 11 U.S.C. § 548(c). The structure of this language suggests that section 548(c) provides an affirmative defense to recovery of an otherwise avoided transfer under section 548(a)(1)(A). See, e.g., In re Actrade Fin. Techs. Ltd., 337 B.R. 791, 805 (Bankr. S.D.N.Y. 2005) (finding that section 548(c) creates an affirmative defense).

Although section 550's language differs to some degree, the structure of the relevant provisions is largely analogous to section 548. Section 550(a) provides that "[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided . . . , the trustee may recover, for the benefit of the estate, the property transferred" from either an initial transferee or "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). However, under section 550(b), "[t]he trustee may not recover" from a subsequent transferee who "takes for value, . . . in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). While the onus of section 550(b)(1) appears to be placed on the Trustee — contrary to section 548(c), which

10

08-01789-cgm Doc 19491-5 Filed 04/23/20 Entered 04/23/20 14:52:03 Exhibit 5 - 4/28/2014 Opinion and Order of the United States District Court for Pg 12 of 14

Case 1:12-mc-00115-JSR Document 524 Filed 04/28/14 Page 11 of 13

focuses on when a transferee may retain a transfer — this small difference in wording is overshadowed by the structural similarities of the two provisions. Accordingly, in the context of an ordinary bankruptcy proceeding, section 548(c) and section 550(b)(1) both provide an affirmative defense that must be raised by defendants in the first instance.

But, just as SIPA affects the meaning of "good faith" when a SIPA proceeding is involved, so too it affects the burden of pleading good faith or its absence. It would totally undercut SIPA's twin goals of maintaining marketplace stability and encouraging investor confidence if a trustee could seek to recover the investors' investments while alleging no more than that they withdrew proceeds from their facially innocent securities accounts. Put differently, this would not accord with the Supreme Court's requirement that, on a motion to dismiss for failure to state a claim, a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Without particularized allegations that the defendants here either knew of Madoff Securities' fraud or willfully blinded themselves to it, the Trustee's complaints here cannot make out a plausible claim that he is entitled to recover the monies defendants received from their securities accounts. See also Picard v. Grieff, 476 B.R. 715, 723 (S.D.N.Y. 2012) ("[D]efendants can prevail on

11

08-01789-cgm Doc 19491-5 Filed 04/23/20 Entered 04/23/20 14:52:03 Exhibit 5 - 4/28/2014 Opinion and Order of the United States District Court for Pg 13 of 14

Case 1:12-mc-00115-JSR Document 524 Filed 04/28/14 Page 12 of 13

their motion to dismiss . . . if they prove that, 'on the face of the complaint[s],' they can invoke the affirmative defense provided by § 548(c)." (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)).[4] Accordingly, the Court concludes that, in a SIPA proceeding such as this, a defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly allege that that defendant did not act in good faith.[5]

Because this determination must be made on the basis of the specific allegations in the Trustee's various complaints, the Court, having set out the general framework, hereby leaves it to the Bankruptcy Court to determine in any given instance whether the foregoing standards have been met. Accordingly, the Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order: (1) those cases listed in Exhibit A of item number 197 on the docket of 12 Misc. 115; and (2) those cases listed in the schedule attached to item number 468 on the docket of 12

---

[4] As with the willful-blindness standard set forth above, the same rule applies to subsequent transferees who received transfers from customers and thus are entitled to the same presumptions arising from securities transactions.

[5] The Trustee has extensive discovery powers under Rule 2004 of the Federal Rules of Bankruptcy Procedure through which he may gather information before he ever files a complaint. See In re Lehman Bros. Inc., No. 08-01420, 2008 WL 5423214, at *3 (Bankr. S.D.N.Y. Nov. 26, 2008) ("The broad scope of Rule 2004 is well recognized."). It is thus not unreasonable to require that the Trustee provide a plausible basis to claim that a defendant lacked good faith in his initial complaint.

12

08-01789-cgm Doc 19491-5 Filed 04/23/20 Entered 04/23/20 14:52:03 Exhibit 5 - 4/28/2014 Opinion and Order of the United States District Court for Pg 14 of 14

Case 1:12-mc-00115-JSR Document 524 Filed 04/28/14 Page 13 of 13

Misc. 115 that were designated as having been added to the "good faith" consolidated briefing.

    SO ORDERED.

Dated: New York, NY
April 28, 2014

                                            JED S. RAKOFF, U.S.D.J.