**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (SMB) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S TWENTY-THIRD INTERIM REPORT**
**FOR THE PERIOD OCTOBER 1, 2019 THROUGH MARCH 31, 2020**

4812-5216-8375.2

**TABLE OF CONTENTS**

**Page**

I.    EXECUTIVE SUMMARY ........................................................................................1

II.    BACKGROUND ....................................................................................................3

III.   FINANCIAL CONDITION OF THE ESTATE ....................................................3

IV.   CLAIMS ADMINISTRATION..............................................................................4

    A.    Claims Processing ......................................................................................4

        i.    Customer Claims ............................................................................4

        ii.   General Creditor Claims ................................................................5

        iii.  The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process ...............................................................................5

        iv.  The Hardship Program ...................................................................6

    B.    Objections To Claims Determinations.......................................................7

    C.    Settlements Of Customer Claims Disputes................................................8

V.    PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA............................8

    A.    Net Equity Dispute .....................................................................................8

    B.    Time-Based Damages ...............................................................................10

    C.    "Customer" Definition .............................................................................11

    D.    Inter-Account Transfers ...........................................................................12

    E.    Profit-Withdrawal Issue ...........................................................................14

VI.   LITIGATION.......................................................................................................15

    A.    The District Court—Motions to Dismiss and Related Appeals...............16

    B.    Good Faith Actions ..................................................................................16

        i.    Resolution of Good Faith Avoidance Actions ............................16

        ii.   Summary Judgment Motions .......................................................16

            (a)   South Ferry/Lowrey Motions...........................................16

        iii.  Trial-Related Motion Practice .....................................................18

            (a)   Nelson Actions .................................................................18

            (b)   Michael Mann Action .......................................................21

            (c)   Edward A. Zraick Action ..................................................23

            (d)   James Greiff Action ..........................................................23

            (e)   Chaitman LLP Actions .....................................................24

    C.    Subsequent Transfer Actions ...................................................................25

    D.    Actions Relating to BLMIS Feeder Funds...............................................27

        i.    Extraterritoriality..........................................................................27

        ii.   Limited Discovery Motion............................................................28

        iii.  Picard v. ABN AMRO..................................................................29

**TABLE OF CONTENTS**
(continued)

|  |  |  |  |
|---|---|---|---|
| | iv. | Picard v. ABN AMRO (Ireland) Ltd. (Fortis) | 32 |
| | v. | Picard v. Citibank | 33 |
| | vi. | The HSBC Action | 35 |
| | vii. | The Luxalpha Action | 37 |
| | viii. | Picard v. Kingate | 38 |
| | ix. | Picard v. Fairfield Greenwich | 39 |
| | x. | Picard v. Rye/Tremont | 43 |
| | xi. | Picard v. Square One | 45 |
| E. | Other Bad Faith Actions | | 46 |
| | i. | Picard v. Avellino & Bienes | 46 |
| | ii. | Picard v. Andrew H. Madoff and Picard v. Mark D. Madoff | 47 |
| | iii. | Picard v. Cohmad Sec. Corp. | 48 |
| | iv. | Picard v. Magnify Inc. | 49 |
| | v. | Picard v. Stanley Shapiro | 52 |
| | vi. | Picard v. Legacy | 53 |
| VII. | INTERNATIONAL INVESTIGATION AND LITIGATION | | 55 |
| A. | Austria | | 56 |
| B. | Bermuda | | 56 |
| C. | BVI | | 56 |
| D. | Cayman Islands | | 56 |
| E. | England | | 57 |
| F. | France | | 57 |
| G. | Ireland | | 57 |
| H. | Israel | | 57 |
| I. | Liechtenstein | | 57 |
| J. | Switzerland and Luxembourg | | 57 |
| VIII. | RECOVERIES AND CONTINGENCIES | | 58 |
| A. | Recoveries Accomplished During Prior Report Periods | | 58 |
| B. | Recoveries Accomplished During This Report Period | | 58 |
| IX. | THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS | | 59 |
| A. | The Customer Fund | | 59 |
| B. | The General Estate | | 60 |
| X. | FEE APPLICATIONS AND RELATED APPEALS | | 61 |
| A. | Objections to Prior Fee Applications | | 61 |

**TABLE OF CONTENTS**
(continued)

|  |  |  | **Page** |
|---|---|---|---|
| | B. | Thirty-First Fee Application .................................................................................. | 61 |
| | C. | Thirty-Second Fee Application .............................................................................. | 62 |
| XI. | | CONCLUSION ........................................................................................................... | 62 |

4812-5216-8375.2

TO THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE:

 Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the

Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the Chapter 7

estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and

collectively, the "Debtors"), respectfully submits his Twenty-Third Interim Report (this

"Report") pursuant to SIPA § 78fff-1(c) and this Court's Order on Application for an Entry of an

Order Approving Form and Manner of Publication and Mailing of Notices, Specifying

Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief

entered on December 23, 2008 (the "Claims Procedures Order") (ECF No. 12).[2] Pursuant to the

Claims Procedures Order, the Trustee shall file additional interim reports every six months. This

Report covers the period between October 1, 2019 and March 31, 2020 (the "Report Period").

## I. EXECUTIVE SUMMARY

 1. The Trustee has worked tirelessly for over eleven years to recover customer

property and distribute it to BLMIS customers who have not fully recovered the money they

deposited with BLMIS. Through litigation, pre-litigation, and avoidance action settlements, the

Trustee has successfully recovered approximately $14.345 billion through March 31, 2020.

 2. On January 8, 2020, this Court approved the Trustee's eleventh allocation and

distribution to customers, in which the Trustee allocated more than $988 million to the Customer

Fund. On February 28, 2020, the Trustee distributed approximately $369 million on allowed

claims relating to 854 accounts, or 1.975% of each customer's allowed claim, unless the claim

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

4812-5216-8375.2

was fully satisfied. When combined with the prior ten distributions, and $848.7 million in advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"), the Trustee has distributed approximately $13.931 billion to BLMIS customers through the Report Period, with 1,472 BLMIS accounts fully satisfied.[3] The 1,472 fully satisfied accounts represent more than 64% of accounts with allowed claims, demonstrating that the Trustee has made significant progress in returning customer property to BLMIS customers. All allowed customer claims up to $1.588 million have been fully satisfied. *See* discussion *infra* in Section IX.

3.     The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP ("B&H"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various special counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel"), continued to litigate hundreds of individual cases before this Court, the United States District Court for the Southern District of New York (the "District Court"), the United States Court of Appeals for the Second Circuit (the "Second Circuit"), the Supreme Court, and dozens of international courts.

4.     This Report is meant to provide an overview of the efforts of the Trustee and his team of professionals in unwinding the largest Ponzi scheme in history. This fraud involved many billions of dollars and thousands of people and entities located across the world. The Trustee continues to work diligently to coordinate the administration, investigation, and litigation to maximize recoveries and efficiencies and reduce costs.

---

[3] SIPC has advanced approximately $848.291 million through the Report Period to the Trustee to pay allowed claims. The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

4812-5216-8375.2

5.      All Interim Reports, along with a docket and substantial information about this liquidation proceeding, are located on the Trustee's website, www.madofftrustee.com (the "Trustee Website").

## II.      BACKGROUND

6.      The Trustee's prior interim reports, each of which is fully incorporated herein, have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.[4]

## III.      FINANCIAL CONDITION OF THE ESTATE

7.      No administration costs, including the compensation of the Trustee, his counsel, and his consultants, are being, or have been, paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers with allowed claims. Rather, the fees and expenses of the Trustee, his counsel and consultants, and administrative costs incurred by the Trustee are paid through administrative advances from SIPC. These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has obtained or will obtain. Thus, recoveries from

---

[4] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report") (ECF No. 4529); October 1, 2011 to March 31, 2012 (the "Seventh Interim Report") (ECF No. 4793); April 1, 2012 to September 30, 2012 (the "Eighth Interim Report") (ECF No. 5066); October 1, 2012 to March 31, 2013 (the "Ninth Interim Report") (ECF No. 5351); April 1, 2013 to September 30, 2013 (the "Tenth Interim Report") (ECF No. 5554); October 1, 2013 to March 31, 2014 (the "Eleventh Interim Report") (ECF No. 6466); April 1, 2014 to September 30, 2014 (the "Twelfth Interim Report") (ECF No. 8276); October 1, 2014 through March 31, 2015 (the "Thirteenth Interim Report") (ECF No. 9895); April 1, 2015 through September 30, 2015 (the "Fourteenth Interim Report") (ECF No. 11912); October 1, 2015 through March 31, 2016 (the "Fifteenth Interim Report") (ECF No. 13184); April 1, 2016 through September 30, 2016 (the "Sixteenth Interim Report") (ECF No. 14347); October 1, 2016 through March 31, 2017 (the "Seventeenth Interim Report") (ECF No. 15922); April 1, 2017 through September 30, 2017 (the "Eighteenth Interim Report") (ECF No. 16862); October 1, 2017 through March 31, 2018 (the "Nineteenth Interim Report") (ECF No. 17555); April 1, 2018 through September 30, 2018 (the "Twentieth Interim Report") (ECF No. 18146); October 1, 2018 through March 31, 2019 (the "Twenty-First Interim Report") (ECF No. 18716); and April 1, 2019 through September 30, 2019 ("the "Twenty-Second Interim Report") (ECF No. 19097).

4812-5216-8375.2

litigation, settlements, and other means are available in their entirety for the satisfaction of allowed customer claims.

8. A summary of the financial condition of the estate as of March 31, 2020 is provided in Exhibit A attached hereto.

9. This summary reflects cash of $20,170,601, short term investments, money market deposit accounts and other investments, including alternative investments received in connection with the Chais settlement of $248,252,678, and short-term United States Treasuries in the amount of $747,704,565. *See* Exhibit A, page 3, note (3) and page 5, notes (4) and (5).

10. As detailed in Exhibit A, as of March 31, 2020, the Trustee requested and SIPC advanced $2,761,450,519.64, of which $848,290,991.81 was used to pay allowed customer claims up to the maximum SIPA statutory limit of $500,000 per account, and $1,913,159,527.83 was used for administrative expenses. *See* Exhibit A, page 1.

## IV.    CLAIMS ADMINISTRATION

### A.    Claims Processing

#### i.    Customer Claims

11. During the Report Period, the Trustee allowed $1,767,484,520.36 in customer claims. This brings the total amount of allowed claims as of March 31, 2020 to $19,414,843,551.26. The Trustee has paid or committed to pay $848,685,991.81 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

12. As of March 31, 2020, there were 13 claims relating to 9 accounts that were "deemed determined," meaning the Trustee has instituted litigation against those accountholders and related parties. The complaints filed by the Trustee in those litigations set forth the express

4812-5216-8375.2

grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

ii. **General Creditor Claims**

13.    As of March 31, 2020, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 428 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265.4 million. At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

iii. **The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process**

14.    Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, from both claimants and their representatives.

15.    The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public regarding the ongoing recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and

5

updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

16.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of March 31, 2020, the Trustee and his professionals had received and responded to over 7,100 e-mails via the Trustee Website from BLMIS customers and their representatives and fielded thousands of calls from claimants and their representatives.

17.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that customers are as informed as possible about various aspects of the BLMIS proceeding.

### iv.    **The Hardship Program**

18.     This liquidation has offered two different Hardship Programs to former BLMIS customers, both of which are detailed in prior reports along with statistics regarding how many customers have availed themselves of the program. *See* Trustee's Twentieth Interim Report, ECF No. 18146. As of March 31, 2020, there were 7 Hardship Applications still under review and 2 that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement.

19.     The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address. A large number of potential applicants have been assisted by the Trustee through the use of the Hotline, and the Trustee urges customers to continue using this resource and the Hardship Program if they believe they qualify. Further information and applications are available on the Trustee Website.

4812-5216-8375.2

B.    **Objections To Claims Determinations**

20.    As of March 31, 2020, 1,819 docketed objections (which exclude withdrawn objections and include duplicates, amendments, and supplements) had been filed with the Court. These objections relate to 3,366 unique claims and 774 accounts. As of March 31, 2020, 294 docketed objections (related to 342 unique claims and 269 accounts) remained.

21.    The following objections, among others, have been asserted: Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with BLMIS, the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method," claimants should receive interest on deposited amounts, the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments, claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits, each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account, and there is no legal basis for requiring the execution of a Assignment and Release prior to prompt payment of a SIPC advance.

22.    The Trustee departed from past practice in SIPA proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

23.    As part of his ongoing efforts to resolve pending objections, counsel for the Trustee has continued investigating and analyzing objections of claimants to the Trustee's determination of their claims. During this extensive review of the facts unique to each claimant,

4812-5216-8375.2

the Trustee has identified circumstances that require resolution by the Bankruptcy Court. Prior disputes are described in the Trustee's previous reports.

## C.    Settlements Of Customer Claims Disputes

24.    As of March 31, 2020, the Trustee had reached agreements relating to 1,085 accounts and with the IRS (which did not have a BLMIS account). These litigation, pre-litigation, and avoidance action settlements allowed the Trustee to avoid the litigation costs that would have otherwise been necessary.

## V.    PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA

## A.    Net Equity Dispute

25.    For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method. Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

26.    On August 16, 2011, the Second Circuit affirmed this Court's decision and the Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee to discharge claims for securities under SIPA "upon the false premise that customers' securities positions are what the account statements purport them to be." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011) (the "Net Equity Decision"). Any calculation other than the Net Investment Method would "aggravate the injuries caused by Madoff's fraud." *Id.* at 235. Instead, the Net Investment Method prevents the "whim of the defrauder" from controlling the process of unwinding the fraud. *Id.*

27.    Under the Net Equity Decision, the relative position of each BLMIS customer account must be calculated based on "unmanipulated withdrawals and deposits" from its opening date through December 2008. *Id.* at 238. If an account has a positive cash balance, that accountholder is owed money from the estate. As a corollary, if an account has a negative cash balance, the accountholder owes money to the estate. Both the recovery and distribution of customer property in this case are centered on the principle that the Trustee cannot credit "impossible transactions." *Id.* at 241. If he did, then "those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id.* at 238.

28.    The Second Circuit found, "in the context of this Ponzi scheme—the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims unfairly ahead of others.'" *Id.* at 242 n.10 (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 463 (S.D.N.Y. 2001)). Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of Madoff's fictitious trades at the expense of the other class of customers—the "net losers," or those who have yet to recover their initial investment.

29.    Finally, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money entrusted to Madoff for the purpose of making investments." *Id.* at 240. Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would

4812-5216-8375.2

create 'potential absurdities.'" *Id.* at 241 (quoting *In re New Times Sec. Serv., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)). Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id.* at 235.

30.     A petition for panel rehearing, or, in the alternative, for rehearing en banc was denied. *Sterling Equities Assoc. v. Picard*, Adv. No. 10-2378 (2d Cir.) (ECF Nos. 505, 537, 551). Three petitions for certiorari were filed with the Supreme Court, which were denied. *Ryan v. Picard*, 133 S. Ct. 24 (2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012). Certiorari was also dismissed with respect to one appeal. *Sterling Equities Assoc. v. Picard*, 132 S. Ct. 2712 (2012).

## B.    **Time-Based Damages**

31.     Following the litigation regarding the Net Investment Method, the Trustee filed a motion to affirm his net equity calculations and denying requests for "time-based damages." (ECF Nos. 5038, 5039). The Trustee took the position that customers were not entitled to an inflation-based adjustment to their allowed customer claims. This Court agreed. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff)*, 496 B.R. 744 (Bankr. S.D.N.Y. 2013) (the "Time-Based Damages Decision"); *see also* ECF No. 5463.

32.     On February 20, 2015, the Second Circuit affirmed the Bankruptcy Court's decision, holding that "SIPA's scheme disallows an inflation adjustment as a matter of law." *See In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 80, 82 (2d Cir. 2015). The Court also held that "an interest adjustment to customer net equity claims is impermissible under SIPA's scheme." *Id.* at 83.

33.     Under the Second Circuit's decision, a customer's net equity claim, calculated in accordance with the Time-Based Damages Decision, will not be adjusted for inflation or interest.

The Second Circuit explained that "an inflation adjustment goes beyond the scope of SIPA's intended protections and is inconsistent with SIPA's statutory framework." *Id.* at 79. Nor does SIPA provide for compensation related to any opportunity cost of the use of such money during the pendency of the liquidation proceedings. *Id.* at 80. While SIPA operates to "facilitate the proportional distribution of customer property actually held by the broker," *id.* at 81, "the Act . . . restores investors to what their position would have been in the absence of liquidation." *Id.* at 79. For similar reasons, the Second Circuit rejected the request of one claimant who sought an adjustment for interest, in addition to inflation. *Id.* at 83.

34.     The Supreme Court denied the petition for certiorari filed. *Peshkin v. Picard*, 136 S. Ct. 218 (2015).

## C.     "Customer" Definition

35.     In this liquidation, the Trustee discovered that many claimants did not invest directly with BLMIS, but through an intermediary such as a "feeder fund." The Trustee's position consistently has been that only those claimants who maintained an account at BLMIS constitute "customers" of BLMIS, as defined in § 78lll(2) of SIPA. Where it appeared that claimants did not have an account in their names at BLMIS, the Trustee denied their claims for securities and/or a credit balance on the ground that they were not customers of BLMIS under SIPA.

36.     On June 28, 2011, the Court issued a decision affirming the Trustee's denial of these claims. (ECF Nos. 3018, 4193, 4209); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011). The Court found that the objecting claimants invested in, not through, the feeder funds, and had no individual accounts at BLMIS. It was the feeder funds who entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased

ownership interests in the feeder funds. The Court held that, absent a direct broker-dealer relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits.

37.     Judge Lifland put it succinctly: the objecting-claimants who invested in sixteen feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received no account statements or other communications from BLMIS and had no transactions reflected on the books and records of BLMIS . . . ." *Id.* at 290.

38.     On January 4, 2012, Judge Cote affirmed the Bankruptcy Court decision. *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012). In that decision, Judge Cote determined in light of SIPA, the "most natural reading of the 'customer' definition excludes persons like the appellants who invest in separate third-party corporate entities like their feeder funds that in turn invest their assets with the debtor." *Id.* at 123.

39.     On February 22, 2013, the Second Circuit affirmed the decisions of the District Court and the Bankruptcy Court. *See Kruse v. Sec. Investor Prot. Corp., Irving H. Picard*, 708 F.3d 422 (2d Cir. 2013). No petitions for certiorari were filed.

D.     **Inter-Account Transfers**

40.     The Trustee has maintained, and the Second Circuit affirmed, that the "cash-in, cash-out" methodology is appropriate for calculating a customer's net equity in this case. The *Net Equity Decision*, however, did not expressly address the treatment of transfers between BLMIS accounts, which the Trustee refers to as "Inter-Account Transfers." Many customers

maintained more than one BLMIS account and transferred funds between such accounts. Other customers transferred funds to the accounts of other BLMIS customers.

41.    On December 8, 2014, the Bankruptcy Court issued a decision upholding the Trustee's methodology for calculating inter-account transfers. ECF No. 8680; *see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). Judge Bernstein explained that if he adopted the objecting parties' arguments, "computing the balance in the transferor's account bloated by fictitious profits increases the transferee's claim to the customer property pool allocable to all Madoff victims by artificially increasing the transferee's net equity. This result aggravates the injury to those net losers who did not receive transfers of fictitious profits by diminishing the amount available for distribution from the limited pool of customer property." *Id.* at 53. The order memorializing Judge Bernstein's written decision was entered on December 22, 2014. (ECF No. 8857).

42.    On January 14, 2016, the District Court affirmed. Judge Engelmayer held that the Inter-Account Transfer Method "properly applies the Second Circuit's Net Equity Decision and is not otherwise prohibited by law;" in fact, he found that "the method is superior as a matter of law, and not 'clearly inferior,'" to the alternatives proposed by the appellants. *In re BLMIS*, 2016 WL 183492 *1, at *26 (S.D.N.Y. Jan. 14, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238 n.7 (2d Cir. 2011).

43.    On June 1, 2017, the Second Circuit issued a summary order agreeing with the lower courts. Rejecting each of the appellants' arguments in turn, and citing its Net Equity Decision, the Order confirms that the Second Circuit "continue[s] to refuse . . . to 'treat[] fictitious and arbitrarily assigned paper profits as real' and to give 'legal effect to Madoff's

machinations.'" *In re Bernard L. Madoff Inv. Sec., LLC*, 2017 WL 2376567, *3 (2d Cir. Jun. 1, 2017).

44.     No petitions for certiorari were filed.

**E.      Profit-Withdrawal Issue**

45.     Several customers, including claimant Mr. Aaron Blecker, objected to the Trustee's denial of their net equity claims because they disputed whether they received funds that appear to be identified on BLMIS customer account statements as "PW," or "Profit Withdrawals."

46.     Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions. Accordingly, the Trustee instituted an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper. (ECF No. 10266).

47.     Following extensive briefing, discovery, and motion practice, the Court held a trial on the matter on January 19, 2018. After hearing testimony from the Trustee's professionals, Mr. Blecker's son, and BLMIS employees, and consideration of the BLMIS books and records offered into evidence, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS customer statement indicated that the customer received a cash distribution in the amount of the PW Transaction. Because claimant Mr. Blecker failed to provide any credible, contrary evidence that the "PW" Transactions on his customer statements were not received, he failed to sustain his burden of proving the amount of his customer claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513 (Bankr. SDNY 2018). The Court entered its Order

4812-5216-8375.2

Affirming the Trustee's Determinations Denying Claims and Overruling the Objections of Participating Claimant Aaron Blecker on August 3, 2018. (ECF No. 17878).

48.    An appeal was taken to the District Court and was fully briefed by January 18, 2019. (ECF Nos. 18, 19, 20, 23, 24). Appellants challenged this Court's application of the Federal Rules of Evidence in admitting and relying on the BLMIS books and records in finding that the profit withdrawal transactions were properly treated as debits under the Net Investment Method. On August 16, 2019, the District Court affirmed the Bankruptcy Court's decision. *Blecker v. Picard*, 2019 WL 3886721 (Aug. 16, 2019) 18 Civ. 7449 (PAE). The District Court found no abuse of discretion in the decision; specifically, it found that this Court rigorously and properly applied the Federal Rules of Evidence and its admission of BLMIS's books and records as business records was proper. The District Court further held that the burden to overcome the Trustee's claim determination was Mr. Blecker's and he failed to do so.

49.    On September 13, 2019, an appeal of the District Court's decision was taken to the Second Circuit. *Blecker v. Picard*, Docket No. 19-2988. During the Report Period, counsel to the Trustee coordinated with counsel for the appellants regarding the filing of the joint appendix. On December 27, 2019, appellants filed their opening brief repeating their claims that this Court failed to apply the Federal Rules of Evidence, improperly shifted the burden of proof to Mr. Blecker, and that Mr. Blecker could not have ratified the transactions in his BLMIS account that occurred before 1992.

50.    The Trustee and SIPC's opposition briefs were filed on April 17, 2020.

## VI.    LITIGATION

51.    The Trustee is actively involved in dozens of litigations and appeals. This Report does not discuss each of them in detail but instead summarizes those matters with the most activity during the Report Period.

A.      **The District Court—Motions to Dismiss and Related Appeals**

52.      Upon the motions of hundreds of defendants, the District Court withdrew the reference in numerous cases and heard numerous motions to dismiss. A total of 485 motions to withdraw and 424 joinders were filed, altogether implicating a total of 807 adversary proceedings. The District Court consolidated briefing and argument on certain common issues raised in the motions to withdraw (the "Common Briefing"), which are discussed in prior reports. *See* Trustee's Twentieth Interim Report, ECF No. 18146. The District Court has since decided the Common Briefing issues and returned all proceedings to the Bankruptcy Court.

B.      **Good Faith Actions**

      i.      **Resolution of Good Faith Avoidance Actions**

53.      At the beginning of the Report Period, there were 129 active good faith avoidance actions. 11 were closed during the Report Period, leaving a total of 118 open good faith avoidance actions by the end of the Report Period. In certain avoidance actions, the Trustee entered into mediations, considered hardship applications and, where appropriate, agreed to dismiss certain defendants from the actions. During the Report Period, one action was dismissed for no liability and one action was resolved with a judgment in the Trustee's favor. In addition, the Trustee's professionals engaged in settlement negotiations, which led to nine cases entering into documented settlements during the Report Period.

      ii.      **Summary Judgment Motions**

            (a)      **South Ferry/Lowrey Motions**

54.      Prior to the Report Period, the Trustee entered into separate stipulations with (1) Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson, and Zev Wolfson, (2) Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and Abraham Wolfson, (3) Defendant United Congregations Mesora, and (4) James Lowrey, setting

a schedule for summary judgment motion practice (collectively, the "South Ferry/Lowrey Actions"). *See* No. 10-04488, ECF No. 77; No. 10-04350, ECF No. 86; No. 10-05110, ECF No. 53; No. 10-04387, ECF No. 71.

55.    Prior to the Report Period, the Trustee and the defendants in the South Ferry/Lowrey Actions each moved for summary judgment. On March 22, 2018, the Bankruptcy Court issued its Report and Recommendation to the District Court granting the Trustee's motion for summary judgment and denying the South Ferry/Lowrey Actions' motions for summary judgment. *See In re Bernard L. Madoff [Good Faith Summary Judgment]*, Adv. Pro. No. 08-01789 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. March 22, 2018).

56.    On February 7, 2019, District Court Judge Engelmayer issued his ruling adopting the Bankruptcy Court's Report and Recommendation, granting summary judgment to the Trustee, and denying summary judgment to the defendants in the South Ferry/Lowrey Actions. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (SMB), 2019 WL 479185 (S.D.N.Y. Feb. 7, 2019).

57.    Defendants filed their notice of appeal to the Second Circuit on February 19, 2019. *See* No. 18-cv-05381, ECF No. 32. Defendants subsequently posted the requisite bond on April 9, 2019. *Id.*, ECF No. 37.

58.    Defendants filed their appellate brief with the Second Circuit on June 4, 2019. *See* No. 19-429, ECF No. 82. The Trustee filed his appellee brief on September 3, 2019. *See* No. 19-429, ECF No. 102. The Defendants filed their reply brief on October 4, 2019. *See* No. 19-429, ECF No. 138. Oral arguments were heard telephonically on March 31, 2020. *See* No. 19-419, ECF No. 170.

4812-5216-8375.2

### iii.    Trial-Related Motion Practice

### (a)    Nelson Actions

59.     Prior to the Report Period, on November 15, 2018, the Trustee submitted a letter to the Bankruptcy Court indicating that the parties agreed to set trial in the matter of *Picard v. Carol Nelson*, Adv. Pro. No. 10-04658 to begin on May 8, 2019, but the parties could not agree on a trial date for *Picard v. Carol Nelson, et al.*, Adv. Pro. No. PN 10-04377 involving both Carol Nelson and her husband Stanley Nelson (together the "Nelson Actions"). Counsel for the Nelsons also declined to agree to a consolidated trial of the Nelson Actions. *See* Adv. Pro. No. 10-04658, ECF No. 114; Adv. Pro. No. No. 10-04377, ECF No. 108.

60.     On November 28, 2018, the Bankruptcy Court issued an oral order to show cause why the Nelson Actions should not be consolidated for trial pursuant to Federal Rule of Civil Procedure Rule 42 (the "Order to Show Cause"). On December 5, 2018, counsel for the Nelsons filed their response, opposing consolidation, and on December 12, 2018, the Trustee filed his response, in favor of consolidation. *See* Adv. Pro. No. 10-04658, ECF Nos. 118, 121; Adv. Pro. No. 10-04377, ECF Nos. 113, 116.

61.     On December 5, 2018, counsel for defendants Carol Nelson and Stanley Nelson moved to adjourn the trial *sine die*, to which the Trustee opposed on December 12, 2018. *See* Adv. Pro. No. 10-04658, ECF Nos. 117-18, 120; Adv. Pro. No. 10-04377, ECF Nos. 112-13, 115 (the "Motion to Adjourn"). Counsel for the defendants filed a reply brief on December 14, 2018. *See* Adv. Pro. No. 10-04658, ECF No. 123; Adv. Pro. No. 10-04377, ECF No. 118.

62.     On December 19, 2018, the Bankruptcy Court heard arguments regarding the Order to Show Cause and the Motion to Adjourn, and issued a bench ruling for the Nelson Actions to be consolidated and scheduled for trial beginning May 8, 2019. *See* Adv. Pro. No. 10-04658, ECF No. 130; Adv. Pro. No. 10-04377, ECF No. 123. The Bankruptcy Court

subsequently filed on January 2, 2019 its Memorandum Decision and Order Denying Motion to

Adjourn Trials *Sine Die. See* Adv. Pro. No. 10-04658, ECF No. 127; Adv. Pro. No. 10-04377,

ECF No. 126.

63.     On April 1, 2019, the Defendants sought to adjourn the trials again, but the

Trustee opposed the Defendants' request in a letter response dated April 2, 2019. The Defendants

replied in another letter dated April 3, 2019. On April 22, 2019, the Bankruptcy Court issued an

order denying the Defendants' adjournment request. *See* Adv. Pro. No. 10-04658, ECF Nos. 133-

137; Adv. Pro. No. 10-04377, ECF Nos. 130-34.

64.     On April 24, 2019, the Trustee filed three motions in limine: (1) to admit the plea

allocutions of Bernard L. Madoff and BLMIS employees, (2) to admit the trial testimony of

Frank DiPascali, and (3) to exclude testimony and exhibits related to the Defendants' asserted

tax obligations to governmental taxing authorities. *See* Adv. Pro. No. 10-04358, ECF Nos. 138-

140; Adv. Pro. No. 10-04377, ECF Nos. 135-138. On May 1, 2019, the Defendants filed their

opposition briefs to the motions in limine. *See* Adv. Pro. No. PN 10-04658, ECF Nos. 150-51;

Adv. Pro. No. 10-04377, ECF Nos. 147-48.

65.     On May 2, 2019, the Defendants filed their objection to the admissibility of the

Trustee's Madoff and/or BLMIS-generated exhibits, and on May 6, 2019, to the admissibility of

certain of the Trustee's exhibits that constituted expert reports and criminal trial testimony of

Frank DiPascali. *See* Adv. Pro. No. PN 10-04658, ECF Nos. 152, 158; Adv. Pro. No. 10-04377,

ECF Nos. 149, 155.

66.     On May 3, 2019, the Trustee filed his motion to quash the subpoena served on the

Trustee and his motion to strike Bernard L. Madoff, Enrica Cotellessa-Pitz, and Agatha M. Cole

from Defendants' proposed witness list. *See* Adv. Pro. No. 10-04658, ECF Nos. 153-56; Adv.

Pro. No. 10-04377, ECF Nos. 150-153. On May 6, 2019, the Defendants filed their opposition

brief to both motions. *See* Adv. Pro. No. 10-04658, ECF No. 159; Adv. Pro. No. 10-04377, ECF

No. 156.

67.    The trial was held on May 8, 2019 and May 9, 2019. On May 16, 2019, the parties

stipulated, and the Bankruptcy Court so ordered, the post-trial briefing schedule, which (1) stated

that the parties shall exchange exhibit lists and deposition and trial transcript designations by

June 17, 2019, (2) required the parties to exchange objections to exhibits and objections and

cross-designations to deposition and trial transcript designations by July 1, 2019, and (3) set

deadlines for the parties to file their proposed Findings of Fact and Conclusions of Law. *See*

Adv. Pro. No. 10-04658, ECF No. 160, Adv. Pro. No. 10-04377, ECF No. 157.

68.    The Trustee filed his proposed Findings of Fact and Conclusions of Law on July

30, 2019. *See* Adv. Pro. No. 10-04658, ECF No. 165; Adv. Pro. No. 10-04377, ECF No. 162.

The Defendants filed their response to the Trustee's proposed Findings of Fact and Conclusions

of Law on September 5, 2019. *See* Adv. Pro. No. 10-04658, ECF No. 178-79; Adv. Pro. No. 10-

04377, ECF No. 175-76.

69.    Separately, on August 8, 2019, the Defendants moved to dismiss for lack of

subject matter jurisdiction. *See* Adv. Pro. No. 10-04658, ECF Nos. 169-71; Adv. Pro. No. 10-

04377, ECF Nos. 166-68. On September 18, 2019, the Trustee filed his opposition brief. *See*

Adv. Pro. No. 10-04658, ECF Nos. 183-84; Adv. Pro. No. 10-04377, ECF Nos. 180-81. On

September 20, 2019, Defendants filed their reply brief in further support of their motion to

dismiss for lack of subject matter jurisdiction. *See* Adv. Pro. No. 10-04658, ECF Nos. 187, 191;

Adv. Pro. No. 10-04377, ECF Nos. 184, 188. Oral argument was held on September 25, 2019,

and the Bankruptcy Court denied the motion.

4812-5216-8375.2

70.     On October 23, 2019, the Bankruptcy Court entered an order for supplemental briefing on the issue of judicial estoppel. *See* Adv. Pro. No. 10-04377, ECF No. 194.

71.     On November 21, 2019, the Bankruptcy Court issued its Post-Trial Findings of Fact and Conclusions of Law, and on December 9, 2019, entered a judgment in favor of the Trustee to recover from Defendants, jointly and severally, the total amount of $4,740,929.02, granting the Trustee prejudgment interest of 9% from the date of the filing of the complaint. *See* Adv. Pro. No. 10-04377, ECF Nos. 200, 203.

### (b)     Michael Mann Action

72.     Prior to the Report Period, on September 28, 2018, the Bankruptcy Court issued an Order setting the trial in the *Picard v. BAM, L.P.*, Adv. Pro. No. 10-04390 (SMB) matter (the "Mann Action") to start on December 3, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 108. In response, on October 26, 2018, the Defendants filed a motion to withdraw the reference to the Bankruptcy Court (the "Mann Motion to Withdraw") on their asserted right to a jury trial before the District Court, and on December 27, 2018, the Trustee filed his opposition brief to the Mann Motion to Withdraw. *See* No. 18-cv-09916, ECF Nos. 1, 17. On January 16, 2019, the Defendants filed their reply brief in further support of the Mann Motion to Withdraw. *See* No. 18-cv-09916, ECF No. 22.

73.     Separately, on November 20, 2018, the Defendants moved to stay the December 3 trial, pending a ruling from the District Court on the Mann Motion to Withdraw. *See* Adv. Pro. No. 10-04390, ECF Nos. 114, 121-122. On November 27, 2018, the Trustee filed his opposition to the Defendants' motion to stay the trial, and oral arguments were held on November 28, 2018. *See* Adv. Pro. No. 10-04390, ECF Nos. 127-28, 130.

74.     At the November 28, 2018 hearing, the Bankruptcy Court offered the Defendants the opportunity to make an oral motion to withdraw their customer claims and objections to the

Trustee's determinations of those claims, and the Court granted the motion, which was memorialized in the subsequent Order Withdrawing Claims and Objections With Prejudice And Finally Determining Net Equity filed on December 20, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 138. However, the order did not determine the Bankruptcy Court's jurisdiction over the Mann Action, for which the parties provided separate briefing on December 5, 2018 and December 12, 2018, respectively. *See* Adv. Pro. No. 10-04390, ECF Nos. 132, 137. On January 18, 2019, the Bankruptcy Court issued its Memorandum Decision and Order holding that the Court has equitable jurisdiction over the Mann Action despite the Defendants' withdrawal of their customer claims and objections (the "Jurisdictional Decision"). *See* Adv. Pro. No. 10-04390, ECF No. 148.

75.     On January 25, 2019, the Defendants moved for leave to appeal the Jurisdictional Decision (the "Motion for Leave"). *See* Adv. Pro. No. 10-04390, ECF Nos. 149-150. The Trustee opposed the motion on February 8, 2019. *See* Adv. Pro. No. 10-04390, ECF Nos. 155-156. On February 19, 2019, the Defendants filed their reply brief in further support of their Motion for Leave. *See* No. 19-cv-00812, ECF Nos. 6-7.

76.     On December 21, 2018, the Trustee filed his Motion for Summary Judgment in the Mann Action. *See* Adv. Pro. No. 10-04390, ECF Nos. 140-143. On February 22, 2019, the Defendants filed their opposition brief to the Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 158-160. On March 27, 2019, the Trustee filed his reply brief in further support of his Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 164, 166-167. Oral argument before the Bankruptcy Court was held on April 24, 2019. *See* Adv. Pro. No. 10-04390, ECF No. 173. On September 11, 2019, the Bankruptcy Court issued its Memorandum

4812-5216-8375.2

Decision Granting Relief Under Federal Rule of Civil Procedure 56(g). *See* Adv. Pro. No. 10-04390, ECF No. 174.

77.     On February 26, 2020, District Court Judge Vernon S. Broderick entered an Opinion and Order denying the Mann Motion to Withdraw and Motion for Leave, and directing the Clerk of Court to close the motions. *See* No. 18-cv-09916, ECF No. 28; No. 19-cv-00812, ECF No. 10).

### (c)     Edward A. Zraick Action

78.     During the pre-trial conference held on February 26, 2020, the Bankruptcy Court set trial to start on May 6 and May 7, 2020. *See* Hearing Re Pre-Trial Conference, at 15:14-17; Adv. Pro. No. 10-05257, ECF No. 116.

79.     On March 4, 2020, the Defendants filed a motion in limine to strike the supplemental expert reports of Bruce G. Dubinsky and Lisa M. Collura. *See* Adv. Pro. No. 10-05257, ECF Nos. 117-119. On March 17, 2020, the Trustee filed his opposition brief and Defendants filed their reply brief in further support of their motion to strike. *See* Adv. Pro. No. 10-05257, ECF Nos. 127, 129. On March 20, 2020, the Court entered an order denying the motion in limine. *See* Adv. Pro. No. 10-05257, ECF No. 130.

### (d)     James Greiff Action

80.     During the pre-trial conference held on February 20, 2020, the Bankruptcy Court set trial to start on April 7, 2020. *See* Hearing Re Pre-Trial Conference, at 5:21-6:4; Adv. Pro. No. 10-04387, ECF No. 111.

81.     On March 4, 2020, Defendant James Greiff filed a motion to withdraw the reference, which was assigned to District Court Judge Katherine Polk Failla and Magistrate Judge Katharine H. Parker. *See* No. 20-cv-01926, ECF No. 1.

82.    On March 10, 2020, the Defendant moved to stay the trial scheduled for April 7, 2020 pending the disposition of his motion to withdraw. *See* Adv. Pro. No. 10-04357, ECF Nos. 114-117. On that same day, the Bankruptcy Court entered an Order to Show Cause asking the Trustee to show cause as to why the relief sought by the Defendant should not be granted. *See* Adv. Pro. No. 10-04357, ECF No. 118. The Trustee filed his objections on March 17, 2020, and the parties were heard by the Bankruptcy Court on March 18, 2020, at which time the Court granted the Defendant 14 days to file a reply brief in further support of his motion to stay the trial. *See* Adv. Pro. No. 10-04357, ECF Nos. 121-22.

(e)    **Chaitman LLP Actions**

83.    Starting in January 2020, certain defendants represented by Chaitman LLP began to file motions to withdraw the reference on their asserted right to a jury trial. They are at various procedural postures before the District Court:

- *Picard v. RAR Entrepreneurial Fund Ltd.*, Adv. Pro. No. 10-04352 (SMB)

  o  On January 31, 2020, the Defendants filed a motion to withdraw the reference, which was assigned to District Court Judge Jesse M. Furman and Magistrate Judge Debra C. Freeman. *See* No. 20-cv-01029, ECF No. 1.

- *Picard v. Estate of Robert Shervyn Savin,* Adv. Pro. No. 10-04889 (SMB)

  o  On February 3, 2020, the Defendants filed a motion for withdrawal of the reference. The motion was assigned to District Court Judge Laura Taylor Swain and Magistrate Judge Gabriel W. Gorenstein. *See* No. 20-cv-01186, ECF Nos. 1-2.

- *Picard v. Estate of Allen Meisels*, Adv. Pro. No. 10-04428 (SMB)

- o On February 7, 2020, the Defendants filed a motion to withdraw the reference, which was assigned to District Court Judge Gregory H. Woods and Magistrate Judge Robert W. Lehrburger. *See* No. 20-cv-01278, ECF No. 1.

- *Picard v. Estate of Seymour Epstein*, Adv. Pro. No. 10-04438 (SMB)

  - o On February 14, 2020, the Defendants filed a motion to withdraw the reference, which was assigned to District Court Judge Gregory H. Woods and Magistrate Judge James L. Cott. *See* No. 20-cv-01377, ECF No. 1.

- *Picard v. Elaine Dine Living Trust dated 5/12/06*, Adv. Pro. No. 10-04491 (SMB)

  - o On February 14, 2020, the Defendants filed a motion to withdraw the reference, which was assigned to District Court Judge Alison Nathan and Magistrate Judge Robert W. Lehrburger. *See* No. 20-cv-01748, ECF No. 1.

- *Picard v. Philip F. Palmedo*, Adv. Pro. No. 10-04749 (SMB)

  - o On February 28, 2020, the Defendant filed a motion to withdraw the reference, which was assigned to District Court Judge Paul G. Gardephe and Magistrate Judge Robert W. Lehrburger. *See* No. 20-cv-01926, ECF No. 1.

- *Picard v. Mark Horowitz*, Adv. Pro. No. 10-04748 (SMB)

  - o On March 6, 2020, the Defendant filed a motion to withdraw the reference, which was assigned to District Court Judge Ronnie Abrams and Magistrate Judge Sarah Netburn. *See* No. 20-cv-02525, ECF No. 1.

C.    **Subsequent Transfer Actions**

84.    The Trustee and B&H attorneys continue to pursue recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.

85.    Prior to the Report Period, the Trustee briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to Common Briefing and hearings. As of July 31, 2014, the District Court issued all of its decisions on the issues subject to Common Briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions. *See* discussion *supra* Section VI(A).

86.    As part of its Common Briefing decisions, the District Court remanded the cases in which subsequent transfer defendants filed an extraterritoriality motion to dismiss.

87.    On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss. This matter was appealed to the Second Circuit, which vacated the judgment of the Bankruptcy Court and remanded the cases. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). After denying Defendants' petition for rehearing and rehearing en banc, on April 23, 2019, the Second Circuit granted Defendants' motion for a stay of the issuance of the mandate pending Defendants' filing of a petition for a writ of certiorari, which remains pending. *See* discussion *infra* Section VI(D)(i).

88.    As part of the original December 10, 2014 scheduling order regarding the extraterritoriality motion to dismiss briefing, this Court held in abeyance the Trustee's Motion for Limited Discovery until after ruling on the Defendants' Extraterritoriality Motion to Dismiss. On June 5, 2018, the Court denied the Trustee's Motion for Limited Discovery. (ECF No. 16927).

89.    As of March 31, 2020, the Trustee's claims against the subsequent transfer defendants remain pending.

**D.**    **Actions Relating to BLMIS Feeder Funds**

**i.**    **Extraterritoriality**

90.    On July 6, 2014, the District Court held that certain of the Trustee's claims were barred by the presumption against extraterritoriality, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

91.    On November 22, 2016, this Court issued a decision granting in part and denying in part defendants' motion to dismiss on extraterritoriality. *Sec. Inv'r Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495).

92.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court and Bankruptcy Court. The Second Circuit held that neither the presumption against exterritoriality nor international comity limits the reach of section 550(a)(2) of the Bankruptcy Code, enabling the Trustee to recover property from certain subsequent transferees. Accordingly, the Second Circuit vacated the judgments of the Bankruptcy Court. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). Upon defendants' motion, the Second Circuit then stayed the issuance of the mandate. *Id.*, (ECF No. 1503).

93.    On August 29, 2019, defendants filed a petition for a writ of certiorari in the Supreme Court of the United States. *HSBC Holdings PLC v. Irving H. Picard*, No. 19-277.

94.    On September 30, 2019, amicus briefs in support of defendants were filed by the Cayman Islands and the British Virgin Islands; certain British Virgin Islands restructuring professionals; Cayman Finance and Recovery and Insolvency Specialists Association of the

Cayman Island; Recovery and Insolvency Specialists Association of Bermuda; and the Securities Industry and Financial Markets Association, the Institute of International Bankers, and the U.S. Chamber of Commerce.

95.     During the Report Period, on October 30, 2019, the Trustee and SIPC filed separate briefs in opposition to defendants' petition, and on November 12, 2019, defendants filed a brief in reply.

96.     On December 9, 2019, the Supreme Court invited the Solicitor General to file a brief expressing the views of the United States, and on April 10, 2020, the Solicitor General filed a brief recommending that the Supreme Court deny the petition.

97.     The petition is currently scheduled for distribution on May 12, 2020 for consideration at the Court's May 28, 2020 conference.

### ii.    <u>Limited Discovery Motion</u>

98.     In view of the altered pleading standards articulated in the *Good Faith Decision*[5] and the *District Court ET Decision*,[6] the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion") in August 2014. Mem. of Law on Omnibus Mot., *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Aug. 28, 2014), ECF No. 7827.

99.     In September 2014, at a status conference on the Omnibus Motion, defense counsel argued that pending motions to dismiss based on extraterritoriality should be addressed prior to the Trustee's request for discovery. The Court agreed and stayed proceedings on the

---

[5] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 516 B.R. 18 (S.D.N.Y. 2014).
[6] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

Omnibus Motion until after the extraterritoriality proceedings concluded. *See* Order at ¶ 14, Main Docket, ECF No. 8800 ("December 10 Scheduling Order").

100.    In November 2016, this Court issued the ET Decision. *See* discussion *supra* Section VI(D)(i).

101.    In July 2017, this Court ordered proceedings "solely on the Good Faith Limited Discovery Issue" of the Omnibus Motion. *See* Order at ¶¶ 1, 4, Main Docket, ECF No. 16428. On June 9, 2018, this Court denied the Trustee's request for limited discovery concerning good faith. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2018 WL 2734825 (Bankr. S.D.N.Y. June 5, 2018); Order Denying the Trustee's Mot. for Disc., Main Docket (June 18, 2018), ECF No. 17696.

### iii.    **Picard v. ABN AMRO**

102.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.) ("ABN/RBS"), ABN AMRO Incorporated, Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited ("Rye XL Portfolio"). *Picard v. ABN AMRO Bank N.V.*, No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (ECF No. 1) ("ABN/RBS Action"). The only remaining defendant in the action was ABN/RBS.

103.    Following the entry of the Extraterritoriality Opinion and Order on July 6, 2014, the Trustee filed the Omnibus Motion discussed *supra* in Section VI(D)(ii).[7] *Id.* at ECF Nos. 69-71. The Trustee's Omnibus Motion sought, among other things, limited discovery relevant to good faith under either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) (the "Limited Discovery Issue")

---

[7]On July 6, 2014, Judge Rakoff issued a decision indicating that certain of the Trustee's claims were barred under *Morrison*, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

from the defendants, as well as leave to file an amended complaint against the defendants (the "Leave to Replead Issue"). *Id.*

104.    On December 31, 2014, ABN/RBS joined in the Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality (the "Consolidated Motion to Dismiss"). *Id.* at ECF No. 90.

105.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "ET Decision") that denied the Consolidated Motion to Dismiss as to ABN/RBS in this adversary proceeding, and granted the Trustee leave to amend the complaint relating to extraterritoriality. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.) (ECF No. 14495); *see* discussion *supra* Section VI(D)(i).

106.    On March 3, 2017, in connection with the Bankruptcy Court ET Decision, the Bankruptcy Court so ordered a stipulated order denying ABN/RBS's motion to dismiss the complaint and granting the Trustee's motion to amend relating to extraterritoriality (the "Extraterritoriality Order"). ABN/RBS Action at ECF No. 117.

107.    On June 18, 2018, the Court denied the branch of the Trustee's Omnibus Motion as to the Limited Discovery Issue and acknowledged that the parties previously agreed that further briefing and proceedings on the Leave to Replead Issue would be deferred until after the Court entered a decision on the Limited Discovery Issue. *Id.* at ECF No. 168.

108.    On August 14, 2018, the Parties entered into a Tolling Agreement providing for the dismissal without prejudice of the Trustee's claim seeking to recover approximately $74.6 million in subsequent transfers of BLMIS customer property that ABN/RBS received from Rye XL Portfolio (the "RBS-Rye XL Portfolio Claim"), subject to the right of the Trustee to reinstate

the RBS-Rye XL Portfolio Claim by filing an amended complaint in accordance with the terms of the Tolling Agreement.

109.    On June 10, 2019, the Trustee filed a motion for leave to file a Second Amended Complaint (the "Motion") and a Proposed Second Amended Complaint (the "PSAC") with regard to the Leave to Replead Issue, and all related exhibits. *Id.* at ECF Nos. 179-181. The PSAC also incorporated amendments authorized by the Bankruptcy Court ET Decision, the Extraterritoriality Order, and the Tolling Agreement.[8] On August 9, 2019, ABN/RBS filed an Opposition to Trustee's Motion for Leave to File a Second Amended Complaint. *Id.* at ECF Nos. 182-83. On September 9, 2019, the Trustee filed a Reply Memorandum in Support of Trustee's Motion for Leave to File a Second Amended Complaint on September 9, 2019. *Id.* at ECF No. 189.

110.    During the Report Period, B&H attorneys prepared for and participated in oral argument on the Trustee's Motion, which was held on October 30, 2019. On March 31, 2020, the Court entered the Memorandum Decision Denying Trustee's Motion for Leave to File a Second Amended Complaint. *Id.* at ECF No. 200.

111.    In addition, during the Report Period, B&H attorneys prepared and filed two joint status letters in the related district court case captioned *Picard v. ABN AMRO Bank, N.V. (presently known as The Royal Bank of Scotland)*, No. 1:17-CV-07476 (AT) (S.D.N.Y.). This action was dismissed in the Bankruptcy Court pursuant to the ET Decision and is subject to the Second Circuit's Order and Opinion vacating the ET Decision. *In re Picard*, 917 F.3d 85 (2d Cir. 2019) (ECF No. 1311-1); *see* discussion *supra* Section VI(D)(i).

---

[8] *See* discussion *supra* Section VI(D)(i).

4812-5216-8375.2

### iv.    Picard v. ABN AMRO (Ireland) Ltd. (Fortis)

112.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Solutions Bank (Ireland) Limited), ABN Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Solutions Custodial Services (Ireland) Ltd.) (collectively, the "ABN (Ireland) Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited. *Picard v. ABN AMRO (Ireland) Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y. filed Dec. 8, 2010) (SMB) (the "ABN (Ireland) Action").

113.    On January 11, 2019, the Bankruptcy Court so ordered the Stipulation and Order Concerning the Trustee's Motion for Leave to File an Amended Complaint. *Id.* at ECF No. 162.

114.    On February 22, 2019, the Trustee filed the Motion for Leave to File an Amended Complaint. *Id.* at ECF No. 165.

115.    On April 23, 2019, the ABN (Ireland) Defendants filed their Opposition to the Trustee's Motion for Leave to File a Second Amended Complaint. *Id.* at ECF No. 169.

116.    On May 23, 2019, the Trustee filed the Reply Memorandum of Law in Further Support of the Trustee's Motion for Leave to File a Second Amended Complaint. *Id.* at ECF No. 179.

117.    Oral argument in the matter was held on September 25, 2019, and the Bankruptcy Court reserved decision.

118.    On January 23, 2020, the Bankruptcy Court denied the Trustee's Motion for Leave to File a Second Amended Complaint. *Id.* at ECF No. 188.

119.    On February 6, 2020, the Bankruptcy Court entered the Stipulated Order, dismissing the Amended Complaint with prejudice. *Id.* at ECF No. 189.

120.    On February 19, 2020, the Trustee filed the Notice of Appeal, appealing the Bankruptcy Court's decision on the Motion for Leave to File a Second Amended Complaint to the District Court. *Id*. at ECF No. 190.

121.    On March 4, 2020, the Trustee filed the Designation of Record and Statement of Issues Presented. *Id*. at ECF No. 192.

122.    On March 18, 2020, the ABN Defendants filed their Counter-Designation of Additional Items to be Included in the Record on Appeal. *Id*. at ECF No. 194.

123.    On March 27, 2020, the District Court appeal was formally assigned to Judge Colleen McMahon of the Southern District of New York. *Picard v. ABN AMRO Bank (Ireland),* 20-cv-02586 (CM), (ECF No. 1).

124.    On April 6, 2020, the ABN Defendants moved for Leave to Appeal to the Second Circuit Pursuant to 28 U.S.C. §158(d)(2)(A). *Id*. at ECF Nos. 8, 9, 10.

125.    On April 10, 2020, the parties jointly filed a letter with the District Court informing the District Court of the Trustee's consent to the ABN Defendant's request for Leave to Appeal to the Second Circuit and requesting a stay on the merits briefing until the Second Circuit resolved whether or not to grant the parties' forthcoming petition. *Id*. at ECF No. 14. This request remains pending.

### v.    Picard v. Citibank

126.    On December 8, 2010, the Trustee commenced an action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Limited (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of

Citibank. *Picard v. Citibank*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y.) (the "Citibank Action").

127.    On December 14, 2018, the Trustee moved for leave to file an amended complaint under Rule 15 of the Federal Rules of Civil Procedure and Rule 7015 of the Federal Rules of Bankruptcy Procedure. *Id.*, (ECF No. 149). With this motion, the Trustee submitted a proposed amended complaint against Citibank N.A., Citicorp North America, Inc., and Citigroup Global Markets Limited.

128.    In April and May 2019, B&H attorneys prepared and filed the Trustee's reply in further support of his motion for leave to amend. In June and July 2019, B&H attorneys prepared for oral argument in support of the Trustee's motion, which was held on July 18, 2019.

129.    On October 18, 2019, the Bankruptcy Court denied the Trustee's motion for leave to amend. *Id.* at ECF No. 170.

130.    From October through November 2019, B&H attorneys analyzed the Court's ruling denying the Trustee's motion for leave to file an amended complaint and began preparing a motion for entry of final judgment.

131.    On November 19, 2019, the Bankruptcy Court granted the Trustee's motion on consent for entry of final judgment (*Id.*, ECF No, 174) and issued an order denying the Trustee's motion for leave to amend and entering partial final judgment. *Id.* at ECF No, 176.

132.    On November 27, 2019, the Trustee filed a notice of appeal to the Second Circuit (*Id.*, ECF No, 177) in connection with the following prior rulings: (i) Memorandum Decision Denying Trustee's Motion for Leave to File Amended Complaint. *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Oct. 18, 2019), ECF No. 140; (ii) Memorandum Decision Denying the Trustee's Motion for Discovery Pursuant to Rule 26(d), *Picard v.*

*Citibank*, 590 B.R. 200 (Bankr. S.D.N.Y. 2018) (Adv. Pro. No. 10-05345 (SMB)), ECF No. 140; (iii) Order of the United States Bankruptcy Court for the Southern District of New York (Bernstein, J.), dated June 18, 2018, denying the Trustee's motion for limited discovery pursuant to Federal Rules of Civil Procedure 26(d), *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y. June 18, 2018), ECF No. 143; and (iv) Opinion and Order of the United States District Court for the Southern District of New York (Rakoff, J.), dated April 28, 2014, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 516 B.R. 18 (S.D.N.Y. 2014) (No. 12-mc-115 (JSR)), ECF No. 524.

133.    On December 3, 2019, the Parties filed a joint certification to the Bankruptcy Court under 28 U.S.C. § 158(d)(2)(A) for direct appeal to the Second Circuit.

134.    On December 23, 2019 B&H attorneys, on behalf of the Trustee, filed an Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the Second Circuit.

135.    From February through April 2020, B&H attorneys researched and analyzed the anticipated issues for appeal and began preparing their appellate brief challenging the Bankruptcy Court's denial of the Trustee's motion for leave to amend as well as the District Court's ruling escalating the standard for determining good faith from inquiry notice to willful blindness and placing the burden of pleading good faith on the Trustee.

136.    On April 7, 2020, the Trustee's Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) was added as a submitted case to the substantive motions calendar for April 21, 2020 in the Second Circuit.

### vi.    **The HSBC Action**

137.    On July 15, 2009, the Trustee commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that

4812-5216-8375.2

transferred funds to and from BLMIS. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y.) (the "HSBC Action"). After further investigation, the Trustee filed an amended complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS. (ECF No. 35).

138.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate. (ECF Nos. 338, 339, 349, 350, 352, 363).

139.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate. (ECF No. 16430).

140.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate. (ECF No. 16431).

141.    On October 20, 2017, this Court approved a settlement between the Trustee and Thema International Fund plc. (ECF No. 482). Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

142.    On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. (ECF No. 497).

143.    On July 27, 2019, Alpha Prime moved for judgment on the pleadings. (ECF No. 545). On August 27, 2019, the Trustee opposed that motion and cross-moved to amend the

4812-5216-8375.2

complaint. (ECF No. 548). Oral argument was heard on September 19, 2019, and on September 23, 2019, the Court denied Alpha Prime's motion to dismiss and granted the Trustee's motion to amend. (ECF No. 566).

144.    On September 24, 2019, the Trustee filed his amended complaint against Alpha Prime. (ECF No. 567). Litigation is ongoing.

### vii.    The Luxalpha Action

145.    On November 23, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, Access International Advisors LLC along with several of its affiliated entities and individuals, Groupement Financier Ltd., and Luxalpha SICAV (collectively, the "Luxalpha Defendants"). The proceeding seeks the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants, as well as other relief (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

146.    On December 7, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, M&B Capital Advisors Sociedad de Valores S.A. along with several of its affiliated entities and individuals (the "M&B Defendants"), Reliance International Research LLC along with several of its affiliated entities and individuals, Landmark Investment Fund Ireland, and Luxembourg Investment Fund along with its affiliated funds (collectively, the "LIF Defendants"). The proceeding seeks the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the LIF Defendants, as well as other relief

(the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

147.    During the Report Period, the Trustee worked on finalizing a proposed second amended complaint and an accompanying motion for leave to file a second amended complaint in the Luxalpha Action. On March 2, 2020, the Trustee filed a Motion for Leave to File a Second Amended Complaint, and thereafter prepared the Trustee's reply to Defendant Luxalpha SICAV's anticipated opposition to the Trustee's motion and Luxalpha's anticipated cross-motion for claim determination and allowance.

148.    On February 12, 2020, the Trustee filed a Motion for Order Issuing Letter Rogatory to AA Alternative Investment PLC on Behalf of Landmark Investment Fund Ireland in the LIF Action, which the Bankruptcy Court granted by Order dated February 25, 2020.

### viii.    Picard v. Kingate

149.    The Trustee sought to avoid and recover over $926,000,000 in initial transfers to Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (the "Kingate Funds"), and to equitably subordinate their customer claims, on the grounds set forth in the Fourth Amended Complaint filed in *Picard v. Federico Ceretti*, Adv. No. 09-01161 (SMB) (Bankr. S.D.N.Y.) (ECF No. 100).

150.    The parties reached a settlement agreement on all terms (the "Settlement Agreement") and on August 6, 2019, the Bankruptcy Court entered an Order approving the settlement among the Trustee and the Kingate Funds. (ECF No. No. 417).

151.    Pursuant to its terms, the Settlement Agreement was subject to approval by the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands ("BVI Court") and the Supreme Court of Bermuda ("Bermuda Court"), jurisdictions in which the Kingate Funds are in liquidation.

4812-5216-8375.2

152.    On September 18, 2019, counsel for the Kingate Funds and the Trustee appeared before the BVI Court on an application seeking the approval of the Settlement Agreement. The BVI Court issued an Order granting approval.

153.    On October 8, 2019, counsel for the Kingate Funds and the Trustee appeared before the Bermuda Court on an application seeking the approval of the Settlement Agreement. The Bermuda Court issued an Order granting approval.

154.    The Kingate settlement closed on October 29, 2019, and $860 million was added to the Customer Fund.

155.    On November 11, 2019, the Bankruptcy Court entered an Order of Dismissal.

ix.    **Picard v. Fairfield Greenwich**

156.    On May 18, 2009, the Trustee commenced an action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009). On July 20, 2010, the Trustee filed an Amended Complaint in the action adding as defendants individuals and entities associated with Fairfield Greenwich Group, a de facto New York partnership, that formed, managed, and marketed Sentry, Sigma, Lambda, Greenwich Sentry, and Greenwich Sentry Partners.

4812-5216-8375.2

157.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). (ECF No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

158.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

159.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. (ECF No. 107). In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

4812-5216-8375.2

160.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court. The District Court has issued its opinions providing guidance to this Court and remanded the cases for further findings applying the standards set forth in the District Court's opinions. *See* discussion *supra* Section VI(A).

161.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.). The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court. None of the defendants in the three actions have responded yet to the Trustee's complaints.

162.    On November 22, 2016, this Court issued its decision on the extraterritoriality motion to dismiss. *See* discussion *supra* Section VI(D)(i). Under the decision, some of the claims against the moving defendants in the *Fairfield, Barrenche, and RD Trust* actions were dismissed. Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of certain non-moving defendants to the extraterritoriality motion to dismiss. The parties agreed to consent to the entry of final judgments on the Court's extraterritoriality decision. Finally, the parties consented to direct appeal of the extraterritoriality decision to the Second Circuit.

163.    On March 16, 2017, the Trustee filed his notice of appeal in the *Fairfield, Barrenche, and RD Trust* actions. (ECF Nos. 229, 97, 93). On September 27, 2017, the Second

Circuit issued an order granting the parties' request for certification for direct appeal of the appeal of the extraterritoriality decision. *Picard v. Banque Lombard Ordier & Cie SA.*, No. 17-1294 (2d Cir.), (ECF No. 388). On February 25, 2019, the Second Circuit vacated the judgment of the Bankruptcy Court and remanded the cases. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). After denying Defendants' petition for rehearing and rehearing en banc, on April 23, 2019, the Second Circuit granted Defendants' motion for a stay of the issuance of the mandate pending Defendants' filing of a petition for a writ of certiorari, which remains pending. See discussion *supra* Section VI(D)(i).

164.    On January 24, 2019, in the action filed by the Joint Liquidators against the Fairfield management entities and individuals, *In re Fairfield Sentry Limited, et al.*, Adv. No. 10-13164 (SMB), the parties entered a stipulation substituting the Trustee as the plaintiff. (ECF No. 87). On February 22, 2019, the Trustee filed a motion to amend the complaint with an attached proffered Amended Complaint. (ECF No. 90).

165.    On March 25, 2019, this Court approved a settlement between the Trustee and certain Fairfield management defendants, Lourdes Barrenche, Robert Blum, Cornelius Boele, Gregory Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barrenche, Inc., Dove Hill Trust, Fortuna Asset Management, Selecta Financial Corporation. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, Order (S.D.N.Y., March 25, 2019). (ECF No. 270). The Trustee's claims against the remaining Fairfield management defendants remain pending.

166.    On June 19, 2019, this Court entered a stipulated order consolidating the *Fairfield, Barrenche, and RD Trust* actions. (ECF No. 274).

167.    On September 25, 2019, this Court held a hearing with the Trustee and the remaining defendants in the consolidated actions regarding a future case schedule. At the hearing, the Trustee and the remaining defendants informed this Court they had agreed to enter mediation with Richard Davis as the mediator. The Court ordered the parties to report on the progress of the mediation at a hearing to be held on November 26, 2019 and further ordered all matters held in abeyance until December 31, 2019. (ECF No. 275).

168.    On November 18, 2019, this Court entered the Second Order Concerning Mediation in which Richard Davis was appointed to serve as Mediator in the action and with all deadlines held in abeyance until March 3, 2020. (ECF No. 276).

169.    On November 25, 2019, the pretrial conference scheduled for November 26, 2019 was adjourned until April 29, 2020. (ECF No. 277).

170.    On February 19, 2020, this Court entered the Third Order Concerning Mediation whereby the parties are to report on the status of the mediation by May 19, 2020, a status conference is scheduled for May 27, 2020, and all deadlines are held in abeyance until June 30, 2020. (ECF No.279).

**x.    Picard v. Rye/Tremont**

171.    This matter categorizes time spent by the Trustee and B&H attorneys following the settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and

43

fraudulent conveyances in connection with certain transfers of property by BLMIS (the "Tremont Litigation"). *Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010).

172.    After the court filing, the parties entered into substantive settlement negotiations, which resulted in a significant settlement approved by the Court on September 22, 2011. The settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF No. 38). This is the largest cash settlement to date in any case brought by the Trustee against any feeder or investment fund.

173.    Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court. There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").

174.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011. *See Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18, 2011). On June 27, 2012, United States District Judge George B. Daniels granted the Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012. (ECF Nos. 35, 36).

175.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37). Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the

4812-5216-8375.2

settlement payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

176.    On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.*, Adv. Proc. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al.*, Adv. Proc. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

177.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd.*, *et al.,* Adv. Proc. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her. After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

178.    During the Compensation Period, B&H attorneys reviewed documents recovered from Tremont's Iron Mountain warehouse facility that contained the remainder of its Madoff-related hard-copy documents.

xi.    **Picard v. Square One**

179.    On November 29, 2010, the Trustee commenced an action against Square One Fund Ltd. ("Square One"), Luc D. Estenne, Square Asset Management Ltd., Partners Advisers S.A., Circle Partners, and Kathryn R. Siggins (collectively, the "Square One Defendants") seeking the return of approximately $26.2 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law in connection with certain transfers of property by BLMIS to or for the benefit of the Square One Defendants. *Picard v. Square One Fund, Ltd.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

180.    On December 21, 2018, the Trustee filed and served the Amended Complaint. *Id.* at ECF No. 167–69.

181.    Square One filed a motion to dismiss on February 14, 2019. *Id.* at ECF No. 170. On May 29, 2019, the Court held a hearing on Square One's motion to dismiss. At the conclusion of the hearing, the Court granted in part and denied in part the motion to dismiss. The Court subsequently entered an order granting in part and denying in part Square One's motion to dismiss on June 13, 2019. *Id.* at ECF No. 177.

182.    On July 16, 2019, the Court so-ordered a Case Management Plan. *Id.* at ECF No. 178.

183.    During the Report Period, the Trustee and Square One have been engaged in active discovery. On December 12, 2019, the Trustee filed and served a Notice of Adjournment of the Pre-Trial Conference. *Id.* at ECF Nos. 182–83.

## E.    Other Bad Faith Actions

184.    The Trustee has approximately 15 bad faith actions still pending as of the end of the Report Period. A few will be highlighted below.

### i.    Picard v. Avellino & Bienes

185.    On December 10, 2010, the Trustee commenced an avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Frank J. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y.) (the "A&B Action").

186.    During the Report Period, the Trustee engaged in various aspects of discovery, including reviewing documents produced by the A&B Defendants and third-parties, analyzing evidence with the help of consultants, conferring with counsel for defendants about various discovery issues, preparing for and taking nine depositions of certain defendants, former BLMIS employees and third parties, participating in the deposition of Bernard Madoff, performing overall case management, conferring with likely experts and discussing key topics of their reports, and preparing for trial.

### ii.    Picard v. Andrew H. Madoff and Picard v. Mark D. Madoff

187.    During the Report Period, the Trustee continued to manage and attempt to liquidate certain marketable securities and investment fund and business interests transferred pursuant to the June 23, 2017 Stipulation and Order of Settlement (the "Stipulation") entered into between and among the Trustee, the U.S. Attorney's Office for the Southern District of New York (the "Government"), and the Estates of Andrew H. Madoff and Mark D. Madoff (the "Estates"). The Stipulation, which resolved all of the Trustee's claims against the Estates in *Picard v. Andrew H. Madoff*, Adv. Pro. No. 09-01503 (SMB), and against various Madoff-related business entities in related adversary proceedings,[9] was approved by the Court on July 24, 2017. (ECF No. 311). The Trustee and the Government share all proceeds of the liquidation of assets received under the Stipulation.

188.    As of September 30, 2019, the last day of the prior Report Period, the Trustee had received $13,901,021.02 under the Stipulation. As of March 31, 2020, the Trustee received an additional $371,874.27 from distributions and sales of certain of the assets under management and liquidation.

---

[9] The Trustee's adversary proceedings against the Madoff-related business entities were entitled *Picard v. Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB), *Picard v. Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (SMB), and *Picard v. Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB).

### iii.    **Picard v. Cohmad Sec. Corp.**

189.    On June 22, 2009, the Trustee commenced an adversary proceeding against Madoff insiders Cohmad Securities Corporation ("Cohmad"), Maurice J. Cohn ("Sonny Cohn"), Marcia B. Cohn, and several other defendants (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (SMB).

190.    In November 2016, a motion was filed under Federal Rule of Bankruptcy Procedure 9019 for court approval of a settlement with certain defendants, including Cohmad Securities Corporation, and Marcia Cohn and Marilyn Cohn, in their individual capacities and as co-executors of the Estate of Maurice Cohn. The Court approved that settlement on November 29, 2016. Those defendants were dismissed from this adversary proceeding on January 3, 2017.[10]

191.    The Trustee also entered into settlement agreements throughout 2016 to 2019 with various defendants. These defendants were ultimately dismissed from this adversary proceeding. In addition, several other defendants were voluntarily dismissed from this adversary proceeding in connection with, among other things, negotiations.

192.    On August 26, 2019, a stipulation and order for voluntary dismissal was entered by the Court dismissing defendants The Estate of Stanley Merwin Berman a/k/a Stanley M. Berman, Joyce Berman individually and in her capacity as Executor of The Estate of Stanley

---

[10] This adversary proceeding is currently captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Morton Kurzrok et al.*, Adv. Pro. No. 09-01305 (SMB), as a result of the Trustee's settlement with and dismissal from this adversary proceeding of, among others, Cohmad.

48

Merwin Berman a/k/a Stanley M. Berman, and S & J Partnership from the adversary proceeding. (ECF No. 405).

193.    On September 9, 2019, an Eighth Amended Case Management Plan was so ordered by the Court extending the date by which the Trustee had to take the depositions of certain defendants to October 9, 2019 (the "Discovery Cut-Off Date").

194.    On October 2, 2019, a stipulation and order for voluntary dismissal was entered by the Court dismissing defendant Jane M. Delaire a/k/a Jane Delaire Hackett from the adversary proceeding. (ECF No. 407).

195.    On October 2, 2019, the Court granted defendant Morton Kurzrok's request to extend the Discovery Cut-Off Date to November 8, 2019. The Trustee's deposition of Mr. Kurzrok is forthcoming.

196.    On October 23, 2019, a stipulation and order for voluntary dismissal was entered by the Court dismissing defendants Richard Spring, Jeanne T. Spring Trust, and The Spring Family Trust from the adversary proceeding. (ECF No. 413).

197.    On October 25, 2019 and January 6, 2020, the Court granted defendant Morton Kurzrok's requests to extend all remaining deadlines, including the Discovery Cut-Off Date.

198.    On March 3, 2020, the Court again granted defendant Morton Kurzrok's request to extend all deadlines for sixty days.

199.    Currently, Morton Kurzrok is the only remaining defendant in this adversary proceeding.

iv.    **Picard v. Magnify Inc.**

200.    On December 6, 2010, the Trustee commenced an action against Magnify, Inc. and several related companies holding BLMIS accounts, individuals acting on behalf of these accounts, and several other recipients of transfers from these accounts (collectively, the

4812-5216-8375.2

"Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (SMB). On September 21, 2011, the Trustee filed an amended complaint in the action. (ECF No. 39). On September 29, 2017, the Trustee filed a second amended complaint. (ECF No. 143).

201.    During the Report Period, the Trustee continued to analyze strategic issues relating to the case following the Court's April 13, 2018 Memorandum Decision Denying Defendants' Motion to Dismiss (ECF No. 143). On June 18, 2019, the parties participated in a status conference with the Court, after which the Court so ordered the parties' Twelfth Amended Case Management Plan (ECF No. 181) and directed the parties to participate in mediation. (ECF No. 180). Pursuant to the Court's order, the parties participated in mediation on September 11-12, 2019. During this time, the Trustee continued working with experts, assessed deficiencies in the Magnify Defendants' discovery responses, and prepared for potential additional depositions.

202.    The Trustee also continued to prosecute two actions brought in Israel in December 2015 to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts. In connection with these actions, the Trustee worked with Israeli counsel to navigate various issues related to document discovery, including dealing with logistical and strategic issues relating to the production of documents in a foreign country, assessing deficiencies in the defendants' discovery responses, and performing various legal and factual research in preparation for a hearing before the Israeli court.

4812-5216-8375.2

203.    Prior to the Report Period, the Trustee engaged in a court-ordered mediation with the U.S. defendants. The mediation resulted in settlement negotiations, including the draft of a term sheet. Subsequently, and during the Report Period, the term sheet was converted into a draft settlement agreement with respect to resolving both the Israeli direct action and the U.S. action. The settlement agreement continues to be negotiated with defendants.

204.    In December 2019, the Trustee continued to work with Israeli counsel to coordinate strategy on the Israeli actions, including a potential settlement of the Israeli direct action and the U.S. action. Counsel for the Trustee also traveled to Israel to attend court hearings on, among other things, the status of the Israeli actions and issues related to discovery. The Israeli court judge ordered the Trustee to conduct a training session on its electronic discovery and management resources for the Israeli defendants. This training occurred on February 12, 2020. The judge also ordered the Trustee to review and categorize approximately 10,000 documents for review by defendants, which was completed and produced to defendants on February 28, 2020.

205.    During the Report Period, certain of the Israeli defendants filed a motion for an anti-suit injunction enjoining the Trustee from bringing a subsequent transferee action in the U.S. on the grounds that such an action is substantially similar to the proceeding against them and the Israeli Court is the forum better suited to adjudicate the case. Trustee's counsel collaborated with Israel counsel to file the Trustee's response. Oral argument on the motion was heard on December 16, 2019, and the motion was subsequently denied. The moving defendants filed an interim motion with the Israeli court to enjoin the Trustee from filing his subsequent transfer suit in the U.S. while defendants appeal the court's decision. The Trustee's counsel filed opposition

briefs to this interim request, and continued to draft a complaint against subsequent transferees to be filed in the U.S.

206.    On February 20-21, 2020, counsel for the Trustee met in New York with Israeli counsel to detail a strategy for preparing evidence submissions and preparations for trial against the indirect defendants in Israel. Israeli counsel retained an expert on tracing subsequent transfers from YHA to the indirect defendants.

     **v.**    **Picard v. Stanley Shapiro**

207.    On December 9, 2010, the Trustee commenced an action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *See Picard v. Shapiro*, Adv. No. 10-05383 (SMB).

208.    In 2014, the Trustee filed a second amended complaint against the Shapiro Defendants. The Shapiro Defendants moved to dismiss the second amended complaint on several grounds including, but not limited to, that they could avail themselves of the safe harbor protection under Section 546(e) of the Bankruptcy Code. In 2015, the Bankruptcy Court issued a written decision in which it granted in part and denied in part the Shapiro Defendants' motion. (ECF No. 59). In 2016, the Bankruptcy Court entered a Case Management Plan, and the parties commenced discovery.

209.    Fact discovery ended in April 2019, and expert discovery ended in July 2019. (ECF No. 132). Meanwhile, on July 10, 2019, the Trustee and the Shapiro Defendants informed the Bankruptcy Court they had agreed to enter mediation. (ECF No. 134). On August 6, 2019,

the Trustee informed the Court that the parties had reached a settlement in principle to resolve the Trustee's claims against the Shapiro Defendants. (ECF No. 136).

210.    During the Report Period, the Trustee and the Shapiro Defendants finalized the terms of their settlement and memorialized the same in a written agreement which has been fully executed. On April 2, 2020, the Trustee filed a motion, pursuant to section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure, seeking the Court's approval of the parties' settlement. (ECF No. 152).

### vi.    **Picard v. Legacy**

211.    On December 6, 2010, the Trustee commenced an action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Legacy. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

212.    During the Report Period, the Trustee and his counsel prepared for trial in this adversary proceeding in connection with the Trustee's remaining claim for the return of transfers Legacy received during the two year period from December 11, 2008, of which $86,505,850 constituted fictitious profits. The specific issues set for trial were (a) the start date of the BLMIS Ponzi scheme; and (b) the relationship, if any, between BLMIS's purchase of U.S. Treasury Bills from third party brokers, and the purported resale of a portion of those purchases to Legacy in its BLMIS account, and whether any profits reported to Legacy during the Ponzi scheme were real rather than fictitious.

213.    On September 5, 2019, the parties appeared at a final pre-trial conference before Judge Bernstein. During the conference, Judge Bernstein set a tentative trial start date of

December 16, 2019 but requested that the parties supply alternate trial dates in early 2020 in the event the Court had a conflict with the tentatively scheduled date.

214.    During the Report Period, B&H attorneys, on behalf of the Trustee, negotiated a Stipulation and Order for Entry of Final Judgment ("Stipulated Order") as well as a proposed Final Judgment and Order ("Final Judgment") with counsel for Legacy. The Stipulated Order was filed on November 8, 2019 and included the agreement as to: (i) the Parties' consent to the Bankruptcy Court's entry of a final order and judgment in connection with the Trustee's avoidance claim; (ii) entry of a Final Judgment against Legacy in the amount of $79,125,781.00 (the "Legacy Transfers"); and (iii) certification that direct appeal to the Second Circuit is warranted under 28 U.S.C. § 158(d)(2)(A), with each Party preserving all arguments, theories, claims, and defenses for appeal.

215.    On November 12, 2019, Judge Bernstein entered the Stipulated Order as well as a Final Judgment in this adversary proceeding.

216.    On November 22, 2019, B&H attorneys, on behalf of the Trustee, filed a Notice of Appeal in connection with the following prior rulings: (i) Memorandum Decision Regarding Motions to Dismiss the Trustee's Amended Complaint, granting in part Legacy Capital Ltd.'s motion to dismiss the Trustee's Amended Complaint. *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Mar. 14, 2016), ECF No. 134; (ii) Order Granting Legacy Capital Ltd.'s and Khronos LLC's Motions to Dismiss the Amended Complaint Under Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(6). *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Apr. 12, 2016), ECF No. 137; and (iii) Opinion and Order of the United States District Court for the Southern District of New

York (Rakoff, J.), dated April 28, 2014. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 516 B.R. 18 (S.D.N.Y. 2014) (No. 12 mc-115 (JSR)), ECF No. 524.

217.    On November 26, 2019, Legacy filed a notice of cross-appeal of the Final Judgment, including without limitation the Memorandum Decision and Order Granting Relief under Federal Civil Rule 56(g). *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-05286 (SMB) (Bankr. S.D.N.Y. June 25, 2019), ECF No. 221. The Parties thereafter designated their respective Contents and Issues on Appeal and Cross-Appeal in accordance with the Bankruptcy Court's individual practices and the governing rules of appellate procedure.

218.    On November 26, 2019, the Parties filed a joint certification to the Bankruptcy Court under 28 U.S.C. § 158(d)(2)(A) that a circumstance specified in 28 U.S.C. § 158(d)(2) exists such that the Trustee's appeal and Legacy's cross-appeal should proceed directly to the Second Circuit.

219.    On December 20, 2019, B&H attorneys, on behalf of the Trustee, filed an Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the Second Circuit (the "Motion for Leave to Appeal").

220.    On April 7, 2020, the Trustee's Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) was added as a submitted case to the substantive motions calendar for April 21, 2020 in the Second Circuit.

221.    During the Report Period, B&H attorneys, on behalf of the Trustee, commenced post-judgment discovery in aid of the execution of the Final Judgment entered against Legacy.

## VII.    INTERNATIONAL INVESTIGATION AND LITIGATION

222.    The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad, (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or

otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining international counsel to assist the Trustee in these efforts, when necessary. More than seventy of the actions filed in this Court have involved international defendants, and the Trustee is involved in actions and investigations in several jurisdictions, including Austria, Bermuda, Cayman Islands, France, Israel, and the United Kingdom, among others.

223.    The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

## A.    Austria

224.    The Trustee continues to actively investigate certain banks, institutions, and individuals located in this jurisdiction. In addition, the Trustee is actively engaged in discovery involving Austrian documents and witnesses.

## B.    Bermuda

225.    The Trustee continues to actively monitor third party legal proceedings taking place in Bermuda that involve several BLMIS-related entities and to pursue assets located in this jurisdiction.

## C.    BVI

226.    The Trustee is actively investigating the involvement of several BVI-based feeder funds that funneled money into the Ponzi scheme.

## D.    Cayman Islands

227.    The Trustee is actively monitoring certain third party BLMIS and HSBC-related proceedings currently pending in the Cayman Islands.

4812-5216-8375.2

E.      **England**

228.    The Trustee currently has protective claims pending in England against HSBC and related entities. In addition, the Trustee is actively engaged in discovery involving English documents and witnesses.

F.      **France**

229.    The Trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in France. In addition, the Trustee is actively engaged in discovery involving French documents and witnesses.

G.      **Ireland**

230.    The Trustee continues to investigate BLMIS-related third-party litigation currently pending in Ireland. In addition, the Trustee is actively engaged in discovery involving Irish documents and witnesses.

H.      **Israel**

231.    The Trustee is pursuing an avoidance and recovery claim against certain Israeli defendants who received fictitious profits from BLMIS. In addition, in 2015, the Trustee filed two separate actions in Israel under Israeli law. *See* discussion *supra* in Section VI(E)(iv).

I.      **Liechtenstein**

232.    The trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in Liechtenstein.

J.      **Switzerland and Luxembourg**

233.    In 2010, the Trustee filed two lawsuits in this Court against Switzerland-based UBS AG and other UBS and HSBC related entities based in Luxembourg and various feeder funds, management companies, and individuals. The Trustee also continues to monitor certain

BLMIS-related third-party actions currently pending in these jurisdictions. In addition, the Trustee is actively engaged in discovery involving Luxembourg documents and witnesses.

## VIII.    RECOVERIES AND CONTINGENCIES

### A.    Recoveries Accomplished During Prior Report Periods

234.    In the Sixth through Twenty-Second Interim Reports, the Trustee reviewed the significant settlements entered into during those periods and prior report periods. Prior to this Report Period, the Trustee had recovered or reached agreements to recover approximately $13.426 billion for the benefit of BLMIS customers.

### B.    Recoveries Accomplished During This Report Period

235.    During the Report Period, the Trustee settled 15 cases. Additionally, the Trustee received recoveries in connection with settlements totaling $909,429,710.48. As of the end of the Report Period, the Trustee has successfully recovered or reached agreements to recover approximately $14.345 billion.

236.    The Trustee has identified claims in at least eight shareholder class action suits that BLMIS filed before the Trustee's appointment arising out of its proprietary and market making desk's ownership of securities. During the Report Period, the Trustee had received distributions from seven of these class action settlements totaling over $91,000. The Trustee has not and will not receive any distributions from the eighth class action settlement.

237.    In addition, the Trustee has identified claims that BLMIS may have in 199 other class action suits also arising out of its proprietary and market making activities. The Trustee has filed proofs of claim in 128 of these cases and, based on a review of relevant records, has declined to pursue claims in 71 additional cases. As of March 31, 2020, the Trustee has recovered $2,652,678.26 from settlements relating to 62 of the 128 claims filed directly by the Trustee during the Report Period, of which $96,119.13 was recovered during the Report Period.

4812-5216-8375.2

## IX.    THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

### A.    The Customer Fund

238.    In order to protect customers of an insolvent broker-dealer such as BLMIS, Congress established a statutory framework pursuant to which customers of a debtor in a SIPA liquidation are entitled to preferential treatment in the distribution of assets from the debtor's estate. The mechanism by which customers receive preferred treatment is through the creation of a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general estate. Customers holding allowable claims are entitled to share in the Customer Fund based on each customer's net equity as of the filing date, to the exclusion of general creditors. SIPA § 78fff-2(c).

239.    In order to make interim distributions from the Customer Fund, the Trustee must determine or be able to sufficiently estimate: (a) the total value of customer property available for distribution (including reserves for disputed recoveries), and (b) the total net equity of all allowed claims (including reserves for disputed claims). Each element of the equation—the customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

240.    There are unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves. Nonetheless, the liquidation proceeding progressed to a stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation of property to the Customer Fund, or the "numerator" (taking reserves into account), (b) the amount of allowable net equity claims, or the "denominator" (also taking reserves into account), and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

4812-5216-8375.2

241.    The Trustee previously filed eleven motions seeking entry of orders approving

allocations of property to the Customer Fund and authorizing pro rata interim distributions of

Customer Property. This Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed Through 02/28/20 | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $884.6 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.431 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $900.7 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $605.9 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[11] | $522.2 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/15 | $345.472 million[12] | $1.567 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/16 | $247.013 million | $246.7 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/17 | $342.322 million | $326.4 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/18 | $1.303 billion | $716.3 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/19 | $515.974 million | $512.1 million | 2.729% | 18295 | 18398 |
| 11 | 02/28/20 | $988.770 million | $369.3 million | 1.975% | 19226 | 19245 |

B.    **The General Estate**

242.    If the Trustee is able to fully satisfy the net equity claims of the BLMIS

customers, any funds remaining will be allocated to the general estate and distributed in the order

of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

---

[11] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[12] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

243.   All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate. The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

## X.   FEE APPLICATIONS AND RELATED APPEALS

### A.   Objections to Prior Fee Applications

244.   Objections were filed to six of the thirty-two fee applications submitted by the Trustee and B&H. Discussions of the objections to the first through sixth fee applications, and related motions for leave to appeal the Court's orders granting the Trustee's and B&H's fee applications and overruling those objections, are discussed more fully in the Trustee's Amended Third Interim Report ¶¶ 186–90 (ECF No. 2207); the Trustee's Fourth Interim Report ¶¶ 163–66 (ECF No. 3083); the Trustee's Fifth Interim Report ¶¶ 134–43 (ECF No. 4072); and the Trustee's Sixth Interim Report ¶¶ 131–42 (ECF No. 4529). No decision has been entered on the motion for leave to appeal the Second Interim Fee Order, No. M47-b (DAB) (S.D.N.Y.). The motion for leave to appeal the Sixth Interim Fee Order was withdrawn on September 10, 2014. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Case No. 11 MC 00265 (PGG) (S.D.N.Y.), (ECF No. 9).

### B.   Thirty-First Fee Application

245.   On November 12, 2019, the Trustee and his counsel filed the Thirty-First Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from April 1, 2019 through and including July 31, 2019 with the Bankruptcy Court. (ECF No. 19116). Special counsel and international special counsel also filed applications for Interim Professional Compensation. (ECF Nos. 19117-19121, 19123-19126, 19128, 19129, 19131-19133). A hearing was held on December 12, 2019, and an Order was entered granting the Applications on December 12, 2019. (ECF No. 19219).

C.    **Thirty-Second Fee Application**

246.    On March 11, 2020, the Trustee and his counsel filed the Thirty-Second

Application for Interim Compensation for Services Rendered and Reimbursement of Actual and

Necessary Expenses incurred from August 1, 2019 through and including November 30, 2019

with the Bankruptcy Court. (ECF No. 19383). Special counsel and international special counsel

also filed applications for Interim Professional Compensation. (ECF Nos. 19385-19397). A

hearing is scheduled to be held on April 29, 2020.

## XI.    CONCLUSION

The foregoing report represents a summary of the status of this proceeding and the

material events that have occurred through March 31, 2020, unless otherwise indicated. This

Report will be supplemented and updated with further interim reports.

Dated:  New York, New York          Respectfully submitted,
        April 28, 2020

**BAKER & HOSTETLER LLP**          */s/ Irving H. Picard*
45 Rockefeller Plaza          ———————————————
New York, New York 10111          Irving H. Picard
Telephone: (212) 589-4200          **BAKER & HOSTETLER LLP**
Facsimile: (212) 589-4201          45 Rockefeller Plaza
David J. Sheehan          New York, NY 10111
Email: dsheehan@bakerlaw.com          Telephone: 212.589.4200
Seanna R. Brown          Facsimile: 212.589.4201
Email: sbrown@bakerlaw.com          Email: ipicard@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*          *Trustee for the Substantively Consolidated*
*Substantively Consolidated SIPA Liquidation*          *SIPA Liquidation of Bernard L. Madoff*
*of Bernard L. Madoff Investment Securities*          *Investment Securities LLC and the Chapter 7*
*LLC and the Chapter 7 Estate of Bernard L.*          *Estate of Bernard L. Madoff*
*Madoff*