# Exhibit 2

Repealed by the Law of 17 December 2010

> This coordinated text was drawn up by the CSSF for information purposes only. In case of discrepancies between the French and the English text, the French text shall prevail.

## LAW OF 20 DECEMBER 2002 RELATING TO UNDERTAKINGS FOR COLLECTIVE INVESTMENT AND AMENDING THE LAW OF 12 FEBRUARY 1979 CONCERNING THE VALUE ADDED TAX

as amended

- by the law of 19 December 2003 concerning the State budget of income and expenditure for the financial year 2004

- by the law of 15 June 2004 relating to the Investment company in risk capital (SICAR)

- by the law of 10 July 2005 on the prospectuses for securities and
    - transposing Directive 2003/71/EC of the European Parliament and of the Council  on the prospectus to be published when securities are offered to the public or admitted to trading and amending Directive 2001/34/EC;
    - amending the law of 23 December 1998 establishing a Commission de Surveillance du Secteur Financier;
    - amending the law of 23 December 1998 relating to the supervision of securities markets;
    - amending the law of 30 March 1988 on undertakings for collective investment;
    - amending the law of 20 December 2002 on undertakings for collective investment;
    - amending the law of 15 June 2004 relating to the Investment company in risk capital (SICAR);
    - amending the law of 10 August 1915 concerning commercial companies.

- by the law of 25 August 2006
    - concerning the European company (*Societas Europaea*, "SE"), the public limited company with a management organ[1] and a supervisory organ[2] and the sole-shareholder public limited company;
    - amending the amended law of 10 August 1915 concerning commercial companies and certain other legal provisions;
    - amending the law of 19 December 2002 on the commercial and companies Registry as well as the accounting practices and annual accounts of companies;
    - amending the amended law of 30 March 1988 relating to undertakings for collective investment;
    - amending the law of 20 December 2002 relating to undertakings for collective investment;
    - amending the law of 25 July 1990 concerning the statute of board members representing the State or a public legal person in a public limited company;
    - amending the law of 4 December 1992 on reporting requirements concerning the acquisition or disposal of major holdings in a listed company;
    - amending the law of 13 July 2005 on institutions for occupational retirement provision in the form of SEPCAVs and ASSEPs

- by the law of 13 February 2007 on specialised investment funds and
    - amending the amended law of 20 December 2002 relating to undertakings for collective investment;
    - amending the amended law of 12 February 1979 on the value added tax.

- by the law of 13 July 2007 on markets in financial instruments and transposing:
    - Directive 2004/39/EC of the European Parliament and of the Council of 21 April 2004 on markets in financial instruments amending Council Directives 85/611/EEC and 93/6/EEC and Directive 2000/12/EC of the European Parliament and of the Council and repealing Directive 93/22/EEC
    - article 52 of Commission Directive 2006/73/EC of 10 August 2006 implementing Directive 2004/39/EC of the European Parliament and of the Council as regards organisational requirements and operating conditions for investment firms and defined terms for the purposes of that Directive,
    and amending:
    - the law of 5 April 1993 on the financial sector, as amended;
    - the law of 20 December 2002 concerning undertakings for collective investment, as amended,
    - the law of 12 November 2004 on the fight against money laundering and terrorist financing;
    - the law of 31 May 1999 governing the domiciliation of companies, as amended;
    - the law of 23 December 1998 creating a *commission de surveillance du secteur financier*;
    - the law of 6 December 1991 on the insurance sector, as amended;
    - the law of 3 September 1996 concerning the involuntary dispossession of bearer shares;
    - the law of 23 December 1998 relating to the monetary status of the *Banque centrale du Luxembourg* (Luxembourg Central Bank);
    and repealing:
    - the law of 23 December 1998 relating to the supervision of securities markets, as amended;
    - the law of 21 June 1984 on futures markets, as amended.

---

[1] "Directoire"

[2] "Conseil de surveillance"

- - the law of 19 December 2008
  - revising the regime applicable to certain company acts as regards registration taxes
  - implementing Council Directive 2008/7/EC of 12 February 2008 concerning indirect taxes on the raising of capital
  - amending:
    - the law of 7 August 1920 increasing registration taxes, stamp duties, inheritance taxes, etc., as amended
    - the law of 20 December 2002 concerning undertakings for collective investment, as amended
    - the law of 22 March 2004 on securitisation
    - the law of 15 June 2004 relating to the investment company in risk capital (SICAR), as amended
    - the law of 13 July 2005 on institutions for occupational retirement provision in the form of pension savings companies with variable capital (SEPCAVs) and pension savings associations (ASSEPs), as amended
    - the law of 13 February relating to specialised investment funds
  - and repealing the law of 29 December 1971 concerning the tax on the raising of capital in companies governed by civil law or commercial law and revising certain legal provisions on the collection of registration taxes, as amended.

- by the law of 10 November 2009 on payment services, on the activity of electronic money institution and settlement finality in payment and securities settlement systems and
  - transposing Directive 2007/64/EC of the European Parliament and of the Council of 13 November 2007 on payment services in the internal market amending Directives 97/7/EC, 2002/65/EC, 2005/60/EC and 2006/48/EC and repealing Directive 97/5/EC;
  - amending:
    - the law of 5 April 1993 on the financial sector, as amended;
    - the law of 12 November 2004 on the fight against money laundering and terrorist financing, as amended;
    - the law of 18 December 2006 on financial services provided at distance;
    - the law of 15 December 2000 on postal services and financial postal services, as amended;
    - the law of 13 July 2007 on markets in financial instruments;
    - the law of 20 December 2002 concerning undertakings for collective investment, as amended;
    - the law of 23 December 1998 establishing a financial sector supervisory commission ("Commission de surveillance du secteur financier"), as amended;
    - the law of 23 December 1998 relating to the monetary status and to the Banque centrale du Luxembourg (Luxembourg Central Bank), as amended;
    - the law of 6 December 1991 on the insurance sector, as amended;
  - repealing Title VII of the law of 14 August 2000 on electronic commerce, as amended.

- by the law of 18 December 2009 on State revenue and expenditure budget for the financial year 2010

- by the law of 18 December 2009 concerning the audit profession and:
  - transposing Directive 2006/43/EC of the European Parliament and of the Council of 17 May 2006 on statutory audits of annual accounts and consolidated accounts amending Council Directives 78/660/EEC and 83/349/EEC and repealing Council Directive 84/253/EEC,
  - on the organisation of the audit profession,
  - amending divers other statutory provisions, and
  - repealing the law of 28 June 1984 on the organisation of the profession of company auditors, as amended

- by the law of 17 December 2010 relating to undertakings for collective investment:
  - transposing Directive 2009/65/EC of the European Parliament and of the Council of 13 July 2009 on the coordination of laws, regulations and administrative provisions relating to undertakings for collective investment in transferable securities (UCITS) (recast);
  - amending:
    – the law of 20 December 2002 relating to undertakings for collective investment, as amended;
    – the law of 13 February 2007 relating to specialised investment funds, as amended;
    – Article 156 of the law of 4 December 1967 on income tax.

<u>Table of contents</u>

**Introductory part**:        Definitions (Article 1)

**Part I.**                            **UCITS**
            Chapter 1.            General provisions and scope (Articles 2 to 4)
            Chapter 2.            Common funds in transferable securities (Articles 5 to 24)
            Chapter 3.            SICAVs in transferable securities (Articles 25 to 38)
            Chapter 4.            Other investment companies in transferable securities (Articles 39 and 40)
            Chapter 5.            Investment policy of a UCITS (Articles 41 to 52)
            Chapter 6.            UCITS situated in Luxembourg which market their units in other Member States of the European Union
                                         (Articles 53 to 57)
            Chapter 7.            UCITS situated in other Member States of the European Union which market their units in Luxembourg
                                         (Articles 58 to 62)

**Part II.**                          **Other UCIs**
            Chapter 8.            Scope (Articles 63 and 64)
            Chapter 9.            Common funds (Articles 65 to 68)
            Chapter 10.          SICAVs (Articles 69 to 72)
            Chapter 11.          UCIs which have not been constituted as common funds or SICAVs (Articles 73 to 75)

**Part III.**                        **Foreign UCIs**
            Chapter 12.          General provisions and scope (Article 76)

**Part IV.**                        **The authorisation of management companies**
            Chapter 13.          Management companies managing UCITS governed by Directive 85/611/EEC (Articles 77 to 90)
            Chapter 14.          Other management companies of Luxembourg UCIs (Articles 91 and 92)

**Part V.**                          **General provisions applicable to UCITS and other UCIs**
            Chapter 15.          Authorisation (Articles 93 to 96)
            Chapter 16.          Organisation of supervision (Articles 97 to 108)
            Chapter 17.          Obligations concerning information to be supplied to unitholders (Articles 109 to 119)
            Chapter 18.          Criminal law provisions (Articles 120 to 126)
            Chapter 19.          Fiscal provisions (Articles 127 to 131)
            Chapter 20.          Special provisions in relation to the legal form (Articles 132 to 133bis)
            Chapter 21.          Transitional and repealing provisions (Articles 134 to 138)

ANNEX I
            Schedule A
            Schedule B
            Schedule C

ANNEX II

INTRODUCTORY PART:

### DEFINITIONS [3]

**Art. 1.** For the purpose of this Law:

1) "branch" shall mean a place of business which is a part of the management company, which has no legal personality and which provides the services for which the management company has been authorised; all the places of business set up in the same Member State by a management company with its registered office1 in another Member State shall be regarded as a single branch.

2) "close links" shall mean a situation as defined in Article 2, paragraph (1) of Directive 95/26/EC of the European Parliament and of the Council of 29th June 1995 modifying Directives 77/780/EEC and 89/646/EEC in the field of credit institutions, Directives 73/239/EEC and 92/49/EEC in the field of non-life insurance, Directives 79/267/EEC and 92/96/EEC in the field of life insurance, Directive 93/22/EEC in the field of investment firms and Directive 85/611/EEC in the field of undertakings for collective investment in transferable securities (UCITS) with a view to reinforcing prudential supervision;

3) "competent authorities" shall mean the authorities which each Member State designates under Article 49 of Directive 85/611/EEC.

4) "CSSF" shall mean the Commission de Surveillance du Secteur Financier (the Commission for the Supervision of the Financial Sector).

5) "depositary bank" or "depositary" shall mean a credit institution ensuring the safe keeping of the assets of Luxembourg UCIs subject to Part I or Part II of this Law.

6) "Directive 78/660/EEC" shall mean the Council Directive 78/660/EEC of 25th July 1978 based on Article 54, paragraph (3), (g) of the Treaty on the annual accounts of certain types of companies, as amended.

7) "Directive 83/349/EEC" shall mean the Council Directive 83/349/EEC of 13th June, 1983 based on Article 54, paragraph (3), (g) of the Treaty on consolidated accounts, as amended.

8) "Directive 85/611/EEC" shall mean the Council Directive 85/611/EEC of 20th December 1985 on the coordination of laws, regulations and administrative provisions relating to undertakings for collective investment in transferable securities (UCITS), as amended.

9) "Directive 93/6/EEC" shall mean the Council Directive 93/6/EEC of 15th March 1993 on the capital adequacy of investment firms and credit institutions, as amended.

10) "Directive 93/22/EEC" shall mean Council Directive 93/22/EEC of 10th May 1993 on investment services in the transferable securities field, as amended.

11) "Directive 97/9/EC" shall mean the Directive 97/9/EC of the European Parliament and of the Council of 3rd March 1997 on investor-compensation schemes.

12) "initial capital" shall mean the elements referred to in items 1) and 2) of Article 34, paragraph (2) of Directive 2000/12/EC of the European Parliament and of the Council of 20th March 2000 relating to the taking up and pursuit of the business of credit institutions.

13) a "management company's home Member State" shall mean the Member State in which the management company's registered office is situated.

14) "money market instruments" shall mean instruments normally dealt in on the money market which are liquid, and have a value which can be accurately determined at any time.

15) a "management company's host Member State" shall mean the Member State, other than the home Member State, within the territory of which a management company has a branch or provides services.

16) "own funds" shall mean own funds as defined in Title V, Chapter 2, Section 1 of Directive 2000/12/EC; this definition may, however, be amended in the circum-stances described in Annex V of Directive 93/6/EEC.

17) "parent undertaking" shall mean a parent undertaking as defined in Articles 1 and 2 of Directive 83/349/EEC.

---

[3] The definitions are listed alphabetically and the order is therefore not consistent with the French original.

18)     "qualifying holdings in a management company" shall mean any direct or indirect holding in a management company which represents 10% or more of the capital or of the voting rights or which makes it possible to exercise a significant influence over the management of the management company in which that holding subsists. For the purpose of this definition, the voting rights referred to in Article 7 of the Law of 4th December 1992 on the information to be published in case of acquisition or disposal of a substantial participation in a listed company shall be taken into account.

19)     "regulated market" shall mean the market defined in item 13 of Article 1 of Directive 93/22/EEC3.

20)     (…)[4]

21)     "subsidiary" shall mean a subsidiary undertaking as defined in Articles 1 and 2 of Directive 83/349/EEC; any subsidiary of a subsidiary undertaking shall also be regarded as a subsidiary of the parent undertaking which is the ultimate parent of those undertakings.

22)     "transferable securities" shall mean:
-       shares and other securities equivalent to shares ("shares"),
-       bonds and other debt instruments ("bonds") ,
-       any other negotiable securities which carry the right to acquire any such transferable securities by subscription or exchange, excluding the techniques and instruments referred to in Article 42.

23)     "UCI" shall mean undertaking for collective investment.

24)     "UCITS" shall mean undertaking for collective investment in transferable securities governed by Directive 85/611/EEC.

25)     a "UCITS home Member State" shall mean:
        (a)     with regard to a UCITS constituted as a common fund, the Member State in which the management company's registered office is situated;
        (b)     with regard to a UCITS constituted as an investment company, the Member State in which the investment company's registered office is situated.

26)     a "UCITS host Member State" shall mean the Member State, other than the UCITS home Member State, in which the units of the common fund or of the investment company are marketed.

*(Law of 13 July 2007)* "The definitions shall be specified by way of a Grand-Ducal regulation."


# PART I. - UCITS

### Chapter 1. – General provisions and scope

**Art. 2.**    (1) This Part applies to all UCITS situated in Luxembourg.

(2) For the purpose of this Law, but subject to Article 3, UCITS shall be undertakings:
–       the sole object of which is the collective investment in transferable securities and/or in other liquid financial assets referred to in Article 41, paragraph (1) of this Law of capital raised from the public and which operate on the principle of risk-spreading, and
–       the units of which are, at the request of holders, redeemed directly or indirectly, out of those undertakings' assets. Action taken by a UCITS to ensure that the stock exchange value of its units does not significantly vary from their net asset value shall be regarded as equivalent to such redemption.

(3) Such undertakings may be constituted under the law of contract (as common funds - *fonds commun de placement* - managed by a management company - *société de gestion*) or under statute (as investment company - *société d'investissement*).

(4) Investment companies the assets of which are invested through the intermediary of subsidiary companies mainly otherwise than in transferable securities or in other liquid financial assets referred to in Article 41, paragraph (1) of this Law shall however not be subject to this Part.

(5) UCITS which are subject to this Part are prohibited from transforming themselves into investment undertakings which are subject to Part II of this Law.

---

[4] Deleted by the law of 10 November 2009

Repealed by the Law of 17 December 2010

**Art. 3.**   The following shall not be subject to this Part:

- –   UCITS of the closed-ended type;
- –   UCITS which raise capital without promoting the sale of their units to the public within the European Union or any part of it;
- –   UCITS the units of which, under their constitutional documents, may be sold only to the public in countries which are not members of the European Union;
- –   categories of UCITS determined by the CSSF, for which the rules laid down in Chapter 5 are inappropriate in view of their investment and borrowing policies.

**Art. 4.**   A UCITS shall be deemed to be situated in Luxembourg if the registered office of the management company of the common fund or the registered office of the investment company is situated in Luxembourg. The head office must be situated in Luxembourg.

### Chapter 2. – Common funds in transferable securities

**Art. 5.**   There shall be regarded as a common fund for the application of this Part any undivided collection of transferable securities and other liquid financial assets referred to in Article 41, paragraph (1) made up and managed according to the principle of risk-spreading on behalf of joint owners who are liable only up to the amount contributed by them and whose rights are represented by units intended for placement with the public by means of a public or private offer.

**Art. 6.**   The common fund shall not be liable for the obligations of the management company or of the unitholders; it shall be answerable only for the obligations and expenses expressly imposed upon it by its management regulations.

**Art. 7.**   A common fund shall be managed by a management company which complies with the conditions set out in Chapter 13 of Part IV of this Law.

**Art. 8.**   (1) The management company shall issue registered certificates or bearer securities, representing one or more portions of the common fund which it manages, or, in accordance with the conditions laid down in the management regulations, written confirmations of entry in the register of units or fractions of units without limitation as to the splitting-up of units.

Rights attached to fractions of units are exercised in proportion to the fraction of a unit held except for possible voting rights which can only be exercised for whole units. The certificates and securities shall be signed by the management company and by the depositary referred to in Article 17.

Such signatures may be reproduced mechanically.

(2) Ownership of units shall be determined and transfer thereof shall be effected in accordance with the rules laid down in Articles 40 and 42 of the Law of 10th August, 1915 concerning commercial companies, as amended.

**Art. 9.**   (1) Units shall be issued at a price arrived at by dividing the net asset value of the common fund by the number of units outstanding; such price may be increased by expenses and commissions, the maximum amounts and procedures for collection of which may be determined by a grand-ducal regulation for which an opinion from the CSSF shall be sought.

(2) Units may not be issued unless the equivalent of the net issue price is paid into the assets of the common fund within the usual time limits. This provision shall not preclude the distribution of bonus units.

(3) Unless otherwise provided for in the management regulations of the fund, the valuation of the assets of the fund shall be based, in the case of officially listed securities, on the last known stock exchange quotation, unless such quotation is not representative. For securities not so listed and for securities which are so listed, but for which the latest quotation is not representative, the valuation shall be based on the probable realisation value, estimated with care and in good faith.

**Art. 10.**   The purchase and sale of the assets may only be effected at prices conforming to the valuation criteria laid down in paragraph (3) of Article 9.

**Art. 11.**   (1) Neither the holders of the units nor their creditors may require the distribution or the dissolution of the common fund.

(2) A common fund must redeem its units at the request of any unitholder.

(3) The redemption of units shall be effected on the basis of the value calculated in accordance with Article 9, paragraph (1), after deduction of any applicable expenses and commissions, the maximum amounts and procedures for collection of which may be determined by grand-ducal regulation for which an opinion from the CSSF shall be sought.

**Art. 12.**   (1) By way of derogation from Article 11, paragraph (2):

Repealed by the Law of 17 December 2010

a)     the management company may in the interest of or according to the procedures provided for by the management regulations of the fund temporarily suspend the redemption of units. Suspension may be provided for only in exceptional cases where circumstances so require and where suspension is justified having regard to the interest of the unitholders;

b)     the CSSF may, in the interest of the unitholders or of the public, require the suspension of the redemption of units, in particular where the provisions of laws, regulations or agreements concerning the activity and operation of the common fund are not observed.

(2) In the cases referred to in paragraph (1) a), the management company must without delay communicate its decision to the CSSF and, if its units are marketed in other EU Member States, to the competent authorities of such States.

(3) The issue and redemption of units shall be prohibited:

a)      during any period where there is no management company or depositary;

b)      where the management company or the depositary is put into liquidation or declared bankrupt or seeks a composition with creditors, a suspension of payment or a court controlled management or is the subject of similar proceedings.

Art. 13.    (1) The management company shall draw up the management regulations for the common fund. Such regulations must be lodged with the registry of the district court and its publication in the Mémorial will be made through a notice advising of the deposit of such document with the registry, all in accordance with the provisions of the Law of 10th August, 1915 concerning commercial companies, as amended. The provisions of such regulations shall be deemed accepted by the unitholders by the mere fact of the acquisition of such units.

(2) The management regulations of the common fund shall at least contain the following provisions:

a)     the name and duration of the common fund, the name of the management company and of the depositary,

b)     the investment policy according to its proposed specific objectives and the criteria therefore,

c)     the distribution policy within the scope of Article 16,

d)     the remuneration and expenditure which the management company is empowered to charge to the fund and the method of calculation of such remuneration,

e)     the provisions as to publications,

f)     the date of the closing of the accounts of the common fund,

g)     the cases where, without prejudice to legal grounds, the common fund shall be dissolved,

h)     the procedures for amendment of the management regulations,

i)     the procedure for the issue of units,

j)     the procedure for the redemption of units and the conditions under which the redemptions are carried out and may be suspended.

Art. 14.    (1) The management company shall manage the common fund in accordance with the management regulations and in the exclusive interest of the unitholders.

(2) It shall act in its own name, but shall indicate that it is acting on behalf of the common fund.

(3) It shall exercise all the rights attached to the securities comprised in the portfolio of the common fund.

Art. 15.    The management company must fulfil its obligations with the diligence of a salaried agent (*mandataire salarié*); it shall be answerable to the unitholders for any loss resulting from the non-fulfilment or improper fulfilment of its obligations.

Art. 16.    Unless otherwise provided for in the management regulations, the net assets of the common fund may be distributed subject to the limits set out in Article 23 of this Law.

Art. 17.    (1) The custody of the assets of the common fund must be entrusted to a depositary.

(2) The depositary must either have its registered office in Luxembourg or be established in Luxembourg if its registered office is in another Member State of the European Union.

(3) The depositary must be a credit institution within the meaning of the Law of 5th April 1993 concerning the financial sector, as amended.

(4) The depositary's liability shall not be affected by the fact that it has entrusted all or some of the assets in its custody to a third party.

(5) The directors of the depositary must be of sufficiently good repute and be sufficiently experienced, also in relation to the UCITS concerned. To that end, the identity of the directors and of every person succeeding them in office must be communicated forthwith to the CSSF.

"Directors" shall mean those persons, who under law or the constitutional documents represent the depositary or effectively determine the conduct of its activity.

**Art. 18** (1) The depositary shall carry out all operations concerning the day-to-day administration of the assets of the common fund.

(2) The depositary must moreover:
a) ensure that the sale, issue, redemption and cancellation of units effected on behalf of the fund or by the management company are carried out in accordance with the law and the management regulations,
b) ensure that the value of units is calculated in accordance with the law and the management regulations,
c) carry out the instructions of the management company, unless they conflict with the law or the management regulations,
d) ensure that in transactions involving the assets of the fund, the consideration is remitted to it within the customary time limits,
e) ensure that the income of the fund is applied in accordance with the management regulations.

**Art. 19** (1) The depositary shall be liable in accordance with Luxembourg law to the management company and the unitholders for any losses suffered by them as a result of its wrongful failure to perform its obligations or its wrongful improper performance thereof.

(2) The liability to unitholders shall be invoked indirectly through the management company. Should the management company fail to act despite a written notice to that effect from a unitholder within a period of three months following receipt of such a notice, such unitholder may directly invoke the liability of the depositary.

**Art. 20** In the context of their respective roles, the management company and the depositary must act independently and solely in the interest of the unitholders.

**Art. 21** The duties of the management company or of the depositary in respect of the common fund shall respectively cease:

a) in the case of withdrawal of the management company, provided that it is replaced by another management company authorised in accordance with the present Law;

b) in the case of voluntary withdrawal of the depositary or of its removal by the management company; until it is replaced, which must happen within two months, the depositary shall take all necessary steps for the good preservation of the interests of the unitholders;

c) where the management company or the depositary has been declared bankrupt, has entered into a composition with creditors, has obtained a suspension of payment, has been put under court controlled management, or has been the subject of a similar proceedings or has been put into liquidation;

d) where the CSSF withdraws its authorisation of the management company or the depositary;

e) in all other cases provided for in the management regulations.

**Art. 22** (1) Liquidation of the common fund shall take place:

a) upon the expiry of any period as may be fixed by the management regulations;

b) in the event of cessation of their duties by the management company or by the depositary in accordance with sub-paragraphs b), c), d) and e) of Article 21, if they have not been replaced within two months without prejudice to the specific circumstance addressed in sub-paragraph c) below;

c) in the event of bankruptcy of the management company;

d) if the net assets of the common fund have fallen for more than 6 months below one fourth of the legal minimum provided for in Article 23 hereafter;

e) in all other cases provided for in the management regulations.

(2) Notice of the event giving rise to liquidation shall be published without delay by the management company or the depositary. If they fail to do so, such notice will be published by the CSSF at the expense of the common fund. The notice

Repealed by the Law of 17 December 2010

shall be published in the Mémorial and in at least two newspapers with adequate circulation one of which at least must be a Luxembourg newspaper.

(3) As soon as the event giving rise to liquidation of the common fund occurs, the issue of units shall be prohibited, on penalty of nullity. The redemption of units remains possible provided the equal treatment of unitholders can be ensured.

**Art. 23**    The net assets of a common fund may not be less than one million two hundred fifty thousand euro (1,250,000 euro).

This minimum must be reached within a period of six months following the authorisation of the common fund.

A grand-ducal regulation may increase such minimum amount up to a maximum of two million five hundred thousand euro (2,500,000 euro).

**Art. 24**    The management company must without delay inform the CSSF if the net assets of the common fund have fallen below two thirds of the legal minimum. In a case where the net assets of the common fund have fallen below two thirds of the legal minimum, the CSSF may, having regard to the circumstances, compel the management company to put the common fund into liquidation.

The order addressed to the management company by the CSSF to put a common fund into liquidation shall be published without delay by the management company or the depositary. If they fail to do so, such notice shall be published by the CSSF at the expense of the common fund. The notice shall be published in the Mémorial and in at least two newspapers with adequate circulation, one of which at least must be a Luxembourg newspaper.

## Chapter 3. – SICAVs in transferable securities

**Art. 25**    For the purposes of this Part, SICAVs shall be taken to mean those companies which have adopted the form of a public limited company (*société anonyme*) governed by Luxembourg law,

- whose exclusive object is to invest their funds in transferable securities and/or other liquid financial assets referred to in Article 41, paragraph (1) of this Law in order to spread the investment risks and to ensure for their shareholders the benefit of the result of the management of their assets, and
- whose shares are intended to be placed with the public by means of a public or private offer, and
- whose articles of incorporation provide that the amount of the capital shall at all times be equal to the net asset value of the company.

**Art. 26**    (1) SICAVs shall be subject to the provisions applicable in general to public limited companies, insofar as the present Law does not derogate therefrom.

*(Law of 17 December 2010)*

"(2) The articles of incorporation of a SICAV and any amendment to them shall be recorded in a special notarial deed drawn up in French, German or English as the appearers choose. By way of derogation from the provisions of the decree of 24 Prairial, year XI, where the notarial deed is drawn up in English, the requirement to append a translation in one of the official languages when it is registered is not applicable.

(3) By way of derogation from Article 73, sub-paragraph 2 of the law of 10 August 1915 on commercial companies, as amended, SICAVs are not required to transmit the annual accounts, the report of the *réviseur d'entreprises agréé* (approved statutory auditor), the management report and, if applicable, the observations of the supervisory board to the registered unitholders at the same time as the convening notice for the annual general meeting. The convening notice indicates the place and the way in which these documents are made available to the unitholders and specifies that every unitholder may request that the annual accounts, the report of the *réviseur d'entreprises agréé* (approved statutory auditor), the management report and, if applicable, the observations of the supervisory board be sent to him.

(4) The convening notices for the general meetings of the unitholders may set out that the quorum and the majority at the general meeting be determined according to the units issued and outstanding at midnight on the fifth day prior to the general meeting (Luxembourg time) (referred to as "Record Date"). The rights of a unitholder to participate in a general meeting and to exercise the voting right attached to his units are determined according to the units held by this unitholder at the Record Date."

**Art. 27**    (1) The minimum capital of a SICAV which has not designated a management company may not be less than three hundred thousand euro (300,000 euro) at the time of authorisation. The capital of any SICAV including SICAVs which have designated a management company must reach one million two hundred fifty thousand euro (1,250,000 euro) within a period of 6 months following the authorisation of the SICAV. A grand-ducal regulation may raise each such minimum

Repealed by the Law of 17 December 2010

amount up to a respective maximum of six hundred thousand euro (600,000 euro) and two million five hundred thousand euro (2,500,000 euro).

In addition, where a SICAV has not designated a management company authorised pursuant to Directive 85/611/EEC:

–     the application for authorisation must be accompanied by a program of activity setting out, *inter alia*, the organisational structure of the SICAV;
–     the directors of the SICAV shall be of sufficiently good repute and be sufficiently experienced in relation to the type of business carried out by such company. To that end the identity of the directors and of every person succeeding them in office must be communicated forthwith to the CSSF. The conduct of a SICAV's business must be decided by at least two persons meeting such conditions. "Directors" shall mean those persons who, under law or the constitutional documents represent the SICAV or who effectively determine the policy of the company;
–     moreover, where close links exist between the SICAV and other natural or legal persons, the CSSF shall grant authorisation only if such links do not prevent the effective exercise of its supervisory functions.

The CSSF shall also refuse authorisation if the laws, regulations or administrative provisions of a non-member country governing one or more natural or legal persons with which the SICAV has close links, or difficulties involved in their enforcement, prevent the effective exercise of its supervisory functions.

SICAVs shall communicate to the CSSF the information it requires.

The applicant shall be informed, within six months of the submission of a complete application, whether or not authorisation has been granted. Reasons shall be given whenever an authorisation is refused.

A SICAV may start business as soon as authorisation has been granted.

The CSSF may withdraw the authorisation issued to a SICAV subject to this Part of the Law only where that company:
(a) does not make use of the authorisation within twelve months, expressly renounces the authorisation or has ceased the activity covered by this Law for more than six months;
(b) has obtained the authorisation by making false statements or by any other irregular means;
(c) no longer fulfils the conditions under which authorisation was granted;
(d) has seriously and/or systematically infringed the provisions of this Law or of regulations adopted pursuant thereto; or
(e) falls within any of the cases where this Law provides for withdrawal.

(2) Articles 85 and 86 of Chapter 13 shall apply to SICAVs that have not designated a management company authorised pursuant to Directive 85/611/EEC, provided that the words "management company" shall be construed as "SICAV".

SICAVs may only manage assets of their own portfolio and may not, under any circumstances, receive any mandate to manage assets on behalf of a third party.

(3) SICAVs that have not designated a management company authorised pursuant to Directive 85/611/EEC shall at all times observe applicable prudential rules.

In particular, the CSSF, having regard also to the nature of the SICAV, shall require that the company has sound administrative and accounting procedures, control and safeguard arrangements for electronic data processing and adequate internal control mechanisms including, in particular, rules for personal transactions by its employees or for the holding or management of investments in financial instruments in order to invest its initial capital and ensuring, *inter alia*, that each transaction involving the company may be reconstructed according to its origin, the parties concerned, its nature, and the time when and the place at which it was effected and that the assets of the SICAV are invested according to the constitutional documents and the legal provisions in force.

**Art. 28**    (1) a) Subject to any contrary provisions of its articles of incorporation, a SICAV may issue its shares at any time;

b) A SICAV must redeem its shares at the request of the shareholder without prejudice to paragraphs (5) and (6) of this Article.

(2) a) The shares shall be issued at a price arrived at by dividing the net asset value of the SICAV by the number of shares outstanding; such price may be increased by expenses and commissions, the maximum amounts and procedures for collection of which may be determined by a grand-ducal regulation for which an opinion from the CSSF shall be sought;

b) The shares shall be redeemed at a price arrived at by dividing the net asset value of the SICAV by the number of shares outstanding; such price may be decreased by expenses and commissions, the maximum amounts and procedures for collection of which may be determined by a grand-ducal regulation for which an opinion from the CSSF shall be sought.

Repealed by the Law of 17 December 2010

(3) Shares of a SICAV may not be issued unless the equivalent of the net issue price is paid into the assets of the SICAV within the customary time limits. This provision shall not preclude the distribution of bonus shares.

(4) The articles of incorporation shall determine the time limits for payments in respect of issues and redemptions and shall specify the principles and methods of valuation of the assets of the SICAV. Unless otherwise provided for in the articles of incorporation, the valuation of the assets of the SICAV shall be based, in the case of officially listed securities, on the last known stock exchange quotation, unless such quotation is not representative. For securities not so listed and for securities which are so listed but for which the latest quotation is not representative, the valuation shall be based on the probable realisation value which must be estimated with care and in good faith.

(5) By way of derogation from paragraph (1), the articles of incorporation shall specify the conditions in which issues and redemptions may be suspended, without prejudice to legal causes. In the event of suspension of issues or redemptions, the SICAV must without delay inform the CSSF and, if it markets its shares in other Member States of the European Union, the competent authorities of such States.

Where the interest of the shareholders so requires, redemptions may be suspended by the CSSF if the provisions of laws, regulations or the articles of incorporation concerning the activity and operation of the SICAV are not observed.

(6) The articles of incorporation shall determine the frequency of the calculation of the issue and redemption price.

(7) The articles of incorporation shall describe the nature of the expenses to be borne by the SICAV.

(8) The shares must be fully paid. They shall have no par value.

(9) A share shall specify the minimum amount of capital and shall give no indication regarding its par value or the portion of the capital which it represents.

(10) The purchase and sale of assets must be effected at prices conforming to the valuation criteria of paragraph (4).

**Art. 29**    (1) Variations in the capital shall be effected *ipso jure* and without compliance with measures regarding publication and entry in the commercial and company register prescribed for increases and decreases of capital of public limited companies.

(2) Repayments to shareholders following a reduction of capital shall not be subject to any restriction other than the one provided for by Article 32, paragraph (1).

(3) In the case of issue of new shares, pre-emptive rights may not be claimed by existing shareholders unless the articles of incorporation provide for such a right by express provision.

**Art. 30**    (*Law of 25 August 2006*) "(1) If the capital of the SICAV falls below two thirds of the minimum capital, the directors or the management organ, as the case may be, must submit the question of the dissolution of the SICAV to a general meeting for which no quorum shall be prescribed and which shall decide by a simple majority of the shares represented at the meeting.

(2) If the capital of the SICAV falls below one fourth of the minimum capital, the directors or the management organ, as the case may be, must submit the question of the dissolution of the SICAV to a general meeting for which no quorum shall be prescribed; dissolution may be resolved by shareholders holding one fourth of the shares at the meeting."

(3) The meeting must be convened so that it is held within a period of forty days as from the ascertainment that the net assets have fallen below two thirds or one fourth of the minimum capital, as the case may be.

**Art. 31**    The creation of participating shares or similar securities, regardless of the name given to them, shall be permitted only in accordance with the conditions and procedures to be laid down by grand-ducal regulation.

**Art. 32**    (1) Unless otherwise provided for in the articles of incorporation, the net assets of the SICAV may be distributed subject to the limits set out in Article 27 of this Law.

(2) SICAVs shall not be obliged to create a legal reserve.

(3) SICAVs are not subject to the provisions in respect of payment of interim dividends as set out in Article 72-2 of the Law of 10th August, 1915 concerning commercial companies, as amended.

(*Law of 25 August 2006*) "Art. 33 For companies to which this Chapter applies, the words "public limited company" (*société anonyme*) or "European company (SE)" shall be replaced by the words "investment company with variable capital" (*société*

Repealed by the Law of 17 December 2010

*d'investissement à capital variable*) or the letters "SICAV" or the words "European investment company with variable capital" (*société européenne d'investissement à capital variable*) or "SICAV-SE"."

**Art. 34**    (1) The custody of the assets of a SICAV must be entrusted to a depositary.

(2) The depositary's liability shall not be affected by the fact that it has entrusted all or some of the assets in its custody to a third party.

(3) The depositary must moreover:
a) ensure that the sale, issue, redemption and cancellation of shares effected by or on behalf of the SICAV are carried out in accordance with the law or the articles of incorporation of the SICAV;
b) ensure that in transactions involving the assets of the SICAV, the consideration is remitted to it within the customary time limits;
c) ensure that the income of the SICAV is applied in accordance with its articles of incorporation.

**Art. 35**    (1)The depositary must either have its registered office in Luxembourg or be established in Luxembourg if its registered office is in another Member State of the European Union.

(2) The depositary must be a credit institution within the meaning of the Law of 5th April, 1993 concerning the financial sector, as amended.

(3) The directors of the depositary must be of sufficiently good repute and be sufficiently experienced, also in relation to the UCITS concerned. To that end, the identity of the directors and of every person succeeding them in office must be communicated forthwith to the CSSF.

"Directors" shall mean those persons, who under law or the constitutional documents represent the depositary or effectively determine the conduct of its activity.

**Art. 36**    The depositary shall, be liable in accordance with Luxembourg Law to the shareholders for any loss suffered by them as a result of its wrongful failure to perform its obligations or its wrongful improper performance thereof.

**Art. 37**    The duties of the depositary regarding the SICAV shall respectively cease:
a) in the case of voluntary withdrawal of the depositary or of its removal by the SICAV; until it is replaced, which must happen within two months, the depositary must take all necessary steps for the good preservation of the interests of the shareholders;
b) where the SICAV or the depositary has been declared bankrupt, has entered into a composition with creditors, has obtained a suspension of payment, has been put under court controlled management or has been the subject of a similar proceedings or has been put into liquidation;
c) where the CSSF withdraws its authorisation of the SICAV or the depositary;
d) in all other cases provided for in the articles of incorporation.

**Art. 38**    In carrying out its role as depositary, the depositary must act solely in the interest of the shareholders.

### Chapter 4. – Other investment companies in transferable securities

**Art. 39**    For the purposes of this Part I, other investment companies shall be taken to mean companies other than SICAVs and

–    whose exclusive object is to invest their funds in transferable securities and/or other liquid financial assets referred to in Article 41, paragraph (1) of this Law in order to spread the investment risks and to ensure for their shareholders the benefit of the results of the management of their assets, and

–    whose shares or units are intended to be placed with the public by means of a public or private offer provided that the words "investment company" (*société d'investissement*) appear on all their deeds, announcements, publications, letters and other documents.

**Art. 40**    Articles 26, 27, 28 with the exception of paragraphs (8) and (9), 30, 31, 34, 35, 36, 37 and 38 of this Law are applicable to investment companies subject to this Chapter.

### Chapter 5. – Investment policy of a UCITS

**Art. 41**    (1) The investments of a UCITS must consist solely of:

Repealed by the Law of 17 December 2010

a) transferable securities and money market instruments admitted to or dealt in on a regulated market "within the meaning of Directive 2004/39/EC of the European Parliament and of the Council of 21 April 2004 on markets in financial instruments"[5];

b) transferable securities and money market instruments dealt in on another market in a Member State of the European Union which is regulated, operates regularly and is recognised and open to the public;

c) transferable securities and money market instruments admitted to official listing on a stock exchange in a non-Member State of the European Union or dealt in on another market in a non-Member State of the European Union which is regulated, operates regularly and is recognised and open to the public provided that the choice of the stock exchange or market has been provided for in the constitutional documents of the UCITS;

d) recently issued transferable securities and money market instruments, provided that:
– the terms of issue include an undertaking that application will be made for admission to official listing on a stock exchange or on another regulated market which operates regularly and is recognised and open to the public, provided that the choice of the stock exchange or the market has been provided for in the constitutional documents of the UCITS;
– such admission is secured within one year of issue;

e) units of UCITS authorised according to Directive 85/611/EEC and/or other UCIs within the meaning of the first and second indent of Article 1, paragraph (2) of Directive 85/611/EEC, whether situated in a Member State of the European Union or not, provided that:
– such other UCIs are authorised under laws which provide that they are subject to supervision considered by the CSSF to be equivalent to that laid down in Community law, and that cooperation between authorities is sufficiently ensured;
– the level of protection for unitholders in such other UCIs is equivalent to that provided for unitholders in a UCITS, and in particular that the rules on assets segregation, borrowing, lending, and uncovered sales of transferable securities and money market instruments are equivalent to the requirements of Directive 85/611/EEC;
– the business of such other UCIs is reported in half-yearly and annual reports to enable an assessment of the assets and liabilities, income and operations over the reporting period;
– no more than 10% of the assets of the UCITS or of the other UCIs, whose acquisition is contemplated, can, according to their constitutional documents, in aggregate be invested in units of other UCITS or other UCIs;

f) deposits with credit institutions which are repayable on demand or have the right to be withdrawn, and maturing in no more than 12 months, provided that the credit institution has its registered office in a Member State of the European Union or, if the registered office of the credit institution is situated in a non-Member State, provided that it is subject to prudential rules considered by the CSSF as equivalent to those laid down in Community law;

g) financial derivative instruments, including equivalent cash-settled instruments, dealt in on a regulated market referred to in subparagraphs a), b) and c) above, and/or financial derivative instruments dealt in over-the-counter ("OTC derivatives"), provided that:
– the underlying consists of instruments covered by Article 41, paragraph (1), financial indices, interest rates, foreign exchange rates or currencies, in which the UCITS may invest according to its investment objectives as stated in the UCITS' constitutional documents,
– the counterparties to OTC derivative transactions are institutions subject to prudential supervision, and belonging to the categories approved by the CSSF, and
– the OTC derivatives are subject to reliable and verifiable valuation on a daily basis and can be sold, liquidated or closed by an offsetting transaction at any time at their fair value at the UCITS' initiative;

h) money market instruments other than those dealt in on a regulated market and which fall under Article 1 of this Law, if the issue or the issuer of such instruments are themselves regulated for the purpose of protecting investors and savings, and provided that such instruments are:
– issued or guaranteed by a central, regional or local authority or by a central bank of a Member State, the European Central Bank, the European Union or the European Investment Bank, a non-Member State or, in case of a Federal State, by one of the members making up the federation, or by a public international body to which one or more Member States belong, or
– issued by an undertaking any securities of which are dealt in on regulated markets referred to in subparagraphs (a), (b) or (c) above, or
– issued or guaranteed by an establishment subject to prudential supervision, in accordance with criteria defined by Community law, or by an establishment which is subject to and complies with prudential rules considered by the CSSF to be at least as stringent as those laid down by Community law, or

---

[5] Law of 10 November 2009

Repealed by the Law of 17 December 2010

– issued by other bodies belonging to the categories approved by the CSSF provided that investments in such instruments are subject to investor protection equivalent to that laid down in the first, the second or the third indent and provided that the issuer is a company whose capital and reserves amount to at least ten million euro (10,000,000 euro) and which presents and publishes its annual accounts in accordance with the fourth Directive 78/660/EEC, is an entity which, within a group of companies which includes one or several listed companies, is dedicated to the financing of the group or is an entity which is dedicated to the financing of securitisation vehicles which benefit from a banking liquidity line.

(2) However:
a) a UCITS may invest no more than 10% of its assets in transferable securities and money market instruments other than those referred to in paragraph (1);
b) an investment company may acquire movable and immovable property which is essential for the direct pursuit of its business;
c) a UCITS may not acquire either precious metals or certificates representing them.

(3) A UCITS may hold ancillary liquid assets.

(*Law of 13 July 2007*) "(4) The arrangements made to implement this article are laid down by way of a Grand-ducal regulation."

Art. 42    (1)The UCITS must employ a risk-management process which enables it to monitor and measure at any time the risk of the positions and their contribution to the overall risk profile of the portfolio; it must employ a process for accurate and independent assessment of the value of OTC derivative instruments. It must communicate to the CSSF regularly and in accordance with the detailed rules the latter shall define, the types of derivative instruments, the underlying risks, the quantitative limits and the methods which are chosen in order to estimate the risks associated with transactions in derivative instruments.

(2) A UCITS is also authorised to employ techniques and instruments relating to transferable securities and money market instruments under the conditions and within the limits laid down by the CSSF provided that such techniques and instruments are used for the purpose of efficient portfolio management. When these operations concern the use of derivative instruments, these conditions and limits shall conform to the provisions laid down in this Law.

Under no circumstances shall these operations cause the UCITS to diverge from its investment objectives as laid down in the UCITS' management regulations, its constitutional documents or prospectus.

(3) A UCITS shall ensure that its global exposure relating to derivative instruments does not exceed the total net value of its portfolio.

The exposure is calculated taking into account the current value of the underlying assets, the counterparty risk, foreseeable market movements and the time available to liquidate the positions. This shall also apply to the following subparagraphs.

A UCITS may invest, as a part of its investment policy and within the limits laid down in Article 43, paragraph (5) in financial derivative instruments provided that the exposure to the underlying assets does not exceed in aggregate the investment limits laid down in Article 43. When a UCITS invests in index-based financial derivative instruments, these investments do not have to be combined to the limits laid down in Article 43.

When a transferable security or money market instrument embeds a derivative, the latter must be taken into account when complying with the requirements of this Article.

(*Law of 13 July 2007*) "(4) The arrangements made to implement this article are laid down by way of a Grand-ducal regulation."

Art. 43    (1) A UCITS may invest no more than 10% of its assets in transferable securities or money market instruments issued by the same body. A UCITS may not invest more than 20% of its assets in deposits made with the same body. The risk exposure to a counterparty of the UCITS in an OTC derivative transaction may not exceed 10% of its assets when the counterparty is a credit institution referred to in Article 41, paragraph (1) (f) or 5% of its assets in other cases.

(2) The total value of the transferable securities and money market instruments held by a UCITS in the issuing bodies in each of which it invests more than 5% of its assets must not exceed 40% of the value of its assets. This limitation does not apply to deposits and OTC derivative transactions made with financial institutions subject to prudential supervision.

Notwithstanding the individual limits laid down in paragraph (1), a UCITS may not combine:
– investments in transferable securities or money market instruments issued by a single body,

Repealed by the Law of 17 December 2010

– deposits made with a single body, by its assets,
– exposures arising from OTC derivative transactions undertaken with a single body,

in excess of 20% of its assets.

(3) The limit laid down in the first sentence of paragraph (1) may be of a maximum of 35% if the transferable securities or money market instruments are issued or guaranteed by a Member State of the European Union, by its local authorities, by a non-Member State or by public international bodies of which one or more Member States are members.

(4) The limit laid down in the first sentence of paragraph (1) may be of a maximum of 25% for certain bonds when they are issued by a credit institution which has its registered office in a Member State of the European Union and is subject by law, to special public supervision designed to protect bondholders. In particular, sums deriving from the issue of these bonds must be invested in conformity with the law in assets which, during the whole period of validity of the bonds, are capable of covering claims attaching to the bonds and which, in case of bankruptcy of the issuer34, would be used on a priority basis for the repayment of principal and payment of the accrued interest.

If a UCITS invests more than 5% of its assets in the bonds referred to in the first sub-paragraph and issued by one issuer, the total value of such investments may not exceed 80% of the value of the assets of the UCITS.

(5) The transferable securities and money market instruments referred to in paragraphs (3) and (4) are not included in the calculation of the limit of 40% referred to in paragraph (2).

The limits set out in paragraphs (1), (2), (3) and (4) may not be combined, and thus investments in transferable securities or money market instruments issued by the same body, in deposits or derivative instruments made with this body carried out in accordance with paragraphs (1), (2), (3) and (4) may not exceed a total of 35% of the assets of the UCITS.

Companies which are included in the same group for the purposes of consolidated accounts, as defined in accordance with Directive 83/349/EEC or in accordance with recognised international accounting rules, are regarded as a single body for the purpose of calculating the limits contained in this Article.

A UCITS may cumulatively invest up to 20% of its assets in transferable securities and money market instruments within the same group.

**Art. 44**  (1) Without prejudice to the limits laid down in Article 48, the limits laid down in Article 43 are raised to a maximum of 20% for investments in shares and/or bonds issued by the same body when, according to the constitutional documents of the UCITS, the aim of the UCITS' investment policy is to replicate the composition of a certain stock or bond index which is recognised by the CSSF, on the following basis:
–  the composition of the index is sufficiently diversified,
–  the index represents an adequate benchmark for the market to which it refers,
–  it is published in an appropriate manner.

(2) The limit laid down in paragraph (1) is raised to 35% where that proves to be justified by exceptional market conditions in particular in regulated markets where certain transferable securities or money market instruments are highly dominant. The investment up to this limit is only permitted for a single issuer.

*(Law of 13 July 2007)* "(3) The arrangements made to implement this article are laid down by way of a Grand-ducal regulation."

**Art. 45**  (1) By way of derogation from Article 43, the CSSF may authorise a UCITS to invest in accordance with the principle of risk-spreading up to 100% of its assets in different transferable securities and money market instruments issued or guaranteed by any Member State of the European Union, its local authorities, a non-Member State of the European Union or public international bodies of which one or more Member States of the European Union are members.

The CSSF shall grant such an authorisation only if it considers that unitholders in the UCITS have protection equivalent to that of unitholders in UCITS complying with the limits laid down in Articles 43 and 44.

These UCITS must hold securities from at least six different issues, but securities from any one issue may not account for more than 30% of the total amount.

(2) The UCITS referred to in paragraph (1) must make express mention, in their constitutional documents, of the States, local authorities or public international bodies issuing or guaranteeing securities in which they intend to invest more than 35% of their assets.

Repealed by the Law of 17 December 2010

(3) In addition, the UCITS referred to in paragraph (1) must include a prominent statement in their prospectuses and in any promotional literature, drawing attention to such authorisation and indicating the States, local authorities and public international bodies in the securities of which they intend to invest or have invested more than 35% of their assets.

**Art. 46**  (1) A UCITS may acquire the units of UCITS and/or other UCIs referred to in Article 41, paragraph (1) (e), provided that no more than 20% of its assets are invested in the units of a single UCITS or other UCI.

For the purpose of the application of this investment limit, each compartment of a UCI with multiple compartments within the meaning of Article 133 of this Law is to be considered as a separate issuer provided that the principle of segregation of the obligations of the various compartments vis-à-vis third parties is ensured.

(2) Investments made in units of UCIs other than UCITS may not in aggregate exceed 30% of the assets of the UCITS.

When a UCITS has acquired units of UCITS and/or other UCIs, the assets of the respective UCITS or other UCIs do not have to be combined for the purposes of the limits laid down in Article 43.

(3) When a UCITS invests in the units of other UCITS and/or other UCIs that are managed, directly or by delegation, by the same management company or by any other company with which the management company is linked by common management or control, or by a substantial direct or indirect holding, that management company or other company may not charge subscription or redemption fees on account of the UCITS' investment in the units of such other UCITS and/or other UCIs.

A UCITS that invests a substantial proportion of its assets in other UCITS and/or other UCIs shall disclose in its prospectus the maximum level of the management fees that may be charged both to the UCITS itself and to the other UCITS and/or other UCIs in which it intends to invest. In its annual report it shall indicate the maximum proportion of management fees charged both to the UCITS itself and to the UCITS and/or other UCIs in which it invests.

**Art. 47**  (1) The prospectus shall indicate in which categories of assets a UCITS is authorised to invest. It shall mention if transactions in financial derivative instruments are authorised; in this event, it must include a prominent statement indicating if these operations may be carried out for the purpose of hedging or with the aim of meeting investment goals, and the possible outcome of the use of financial derivative instruments on the risk profile.

(2) When a UCITS invests principally in any category of assets defined in Article 41 other than transferable securities and money market instruments or replicates a stock or bond index in accordance with Article 44, its prospectus and, where necessary, any other promotional literature must include a prominent statement drawing attention to its investment policy.

(3) When the net asset value of a UCITS is likely to have a high volatility due to its portfolio composition or the portfolio management techniques that may be used, its prospectus and, where necessary, any other promotional literature must include a prominent statement drawing attention to this characteristics of the UCITS.

(4) Upon request of an investor, the management company must also provide supplementary information relating to the quantitative limits that apply in the risk management of the UCITS, to the methods chosen to this end and to the recent evolution of the risks and yields of the main categories of instruments.

**Art. 48**  (1) An investment company or a management company acting in connection with all of the common funds which it manages and which fall within the scope of Part I of this Law, may not acquire any shares carrying voting rights which would enable it to exercise significant influence over the management of an issuing body.

(2) Moreover, a UCITS may acquire no more than:
–        10% of the non-voting shares of the same issuer;
–        10% of the debt securities of the same issuer;
–        25% of the units of the same UCITS and/or other UCI;
–        10% of the money market instruments of any single issuer.

The limits laid down in the second, third and fourth indents may be disregarded at the time of acquisition if at that time the gross amount of bonds or of the money market instruments or the net amount of the instruments in issue cannot be calculated.

(3) Paragraphs (1) and (2) are waived as regards:

a) transferable securities and money market instruments issued or guaranteed by a Member State of the European Union or its local authorities;

b) transferable securities and money market instruments issued or guaranteed by a non-Member State of the European Union;

Repealed by the Law of 17 December 2010

c) transferable securities and money market instruments issued by public international bodies of which one or more Member States of the European Union are members;

d) shares held by UCITS in the capital of a company incorporated in a non-Member State of the European Union which invests its assets mainly in the securities of issuing bodies having their registered office in that State, where under the legislation of that State, such a holding represents the only way in which the UCITS can invest in the securities of issuing bodies of that State. This derogation, however, shall apply only if in its investment policy the company from the non-Member State of the European Union complies with the limits laid down in Articles 43 and 46 and Article 48, paragraphs (1) and (2). Where the limits set in Articles 43 and 46 are exceeded, Article 49 shall apply *mutatis mutandis*;

e) shares held by one or more investment companies in the capital of subsidiary companies which, exclusively on its or their behalf carry on only the business of management, advice or marketing in the country where the subsidiary is located, in regard to the redemption of units at the request of unitholders.

**Art. 49**    (1) UCITS need not comply with the limits laid down in this Chapter when exercising subscription rights attaching to transferable securities or money market instruments which form part of their assets.

While ensuring observance of the principle of risk-spreading, recently authorised UCITS may derogate from Articles 43, 44, 45 and 46 for a period of six months following the date of their authorisation.

(2) If the limits referred to in paragraph (1) are exceeded for reasons beyond the control of the UCITS or as a result of the exercise of subscription rights, it must adopt as a priority objective for its sales transactions the remedying of that situation, taking due account of the interests of its unitholders.

(3) To the extent an issuer is a legal entity with multiple compartments where the assets of a compartment are exclusively reserved to the investors in such compartment and to those creditors whose claim has arisen in connection with the creation, operation or liquidation of that compartment, each compartment is to be considered as a separate issuer for the purpose of the application of the risk-spreading rules set out in Articles 43, 44 and 46.

**Art. 50**    (1) Neither:
–        an investment company, nor
–        a management company or depositary acting on behalf of common funds,
may borrow.

However, a UCITS may acquire foreign currency by means of a back-to-back loan.

(2) By way of derogation from paragraph (1), UCITS may borrow the equivalent of:

a) up to 10% of their assets provided that the borrowing is on a temporary basis;
b) up to 10% of their assets in the case of an investment company provided that the borrowing is to make possible the acquisition of immovable property essential for the direct pursuit of their business; in this case, these borrowings and those referred to in sub-paragraph a) may not in any case in total exceed 15% of their assets.

**Art. 51**    (1) Without prejudice to the application of Articles 41 and 42, neither:
–        an investment company, nor
–        a management company or depositary acting on behalf of common funds,
may grant loans to or act as guarantor for third parties.

(2) Paragraph (1) shall not prevent such undertakings from acquiring transferable securities or money market instruments or other financial instruments referred to in Article 41, paragraph (1) e), g) and h) which are not fully paid.

**Art. 52**    Neither:
–        an investment company, nor
–        a management company or depositary acting on behalf of common funds,
may carry out uncovered sales of transferable securities, money market instruments or other financial instruments referred to in Article 41, paragraph (1) e), g) and h).

**Chapter 6. – UCITS situated in Luxembourg which market their units in other Member States of the European Union**

**Art. 53**    (1) A UCITS which markets its units in another Member State of the European Union must comply with the laws, regulations and administrative provisions in force in that State which do not fall within the matters governed by this Law.

Repealed by the Law of 17 December 2010

(2) A UCITS may advertise its units in the Member State in which they are marketed. It must comply with the provisions governing advertising in that State.

**Art. 54**  In the case referred to in Article 53, the UCITS must in accordance with the laws, regulations and administrative provisions in force in the Member State of marketing, *inter alia* take the measures necessary to ensure that facilities are available in that State for making payments to unitholders, redeeming units and making available the information which UCITS are obliged to provide.

**Art. 55**  A UCITS which proposes to market its units in another Member State of the European Union, must first inform the CSSF and the competent authorities of that other Member State. It must simultaneously send these authorities:
–    an attestation by the CSSF to the effect that it fulfils the conditions imposed in Part I of the Law,
–    its constitutional documents,
–    its full and simplified prospectuses,
–    where appropriate, its latest annual report and any subsequent semi-annual report,
–    details of the arrangements made for the marketing of its units in that other Member State of the European Union.

The UCITS may begin to market its units in that other Member State of the European Union two months after such communication unless the authorities of the Member States concerned establish, in a reasoned decision taken before the expiry of that period of two months, that the arrangements made for the marketing of units do not comply with the provisions referred to in Articles 53, paragraph (1) and 54.

**Art. 56**  If a UCITS markets its units in another Member State of the European Union, it must distribute in that other Member State in accordance with the same procedures as those provided for in Luxembourg, its full and simplified prospectuses, the annual and semi-annual reports and the other information provided for in Articles 111 and 112.

These documents shall be provided in the or one of the official languages of the host Member State or in a language approved by the competent authorities of the host Member State.

**Art. 57**  Where a UCITS situated in Luxembourg markets its units on the territory of a country which is a party to the Agreement on the European Economic Area other than a Member State of the European Union, the provisions of Articles 53 to 56 of this Law are also applicable within the limits provided by that Agreement and the instruments relating thereto.

### Chapter 7. – UCITS situated in other Member States of the European Union which market their units in Luxembourg

**Art. 58**  UCITS situated in other Member States of the European Union which market their units in Luxembourg must comply with the laws, regulations and administrative provisions in force in Luxembourg which do not fall within the matters governed by this Law.

**Art. 59**  The UCITS must appoint a credit institution to ensure that facilities are available in Luxembourg for making payments to unitholders and redeeming units.

The UCITS must take the measures necessary to ensure that the information which it is obliged to provide, is made available to unitholders in Luxembourg.

**Art. 60**  If a UCITS situated in another Member State of the European Union proposes to market its units in Luxembourg, it must inform the CSSF. It must simultaneously send to the latter authority:
–    an attestation by the competent authorities to the effect that it fulfils the conditions imposed by Directive 85/611/EEC,
–    its constitutional documents,
–    its full and simplified prospectuses,
–    where appropriate, its latest annual report and any subsequent semi-annual report,
–    details of the arrangements made for the marketing of its units in Luxembourg.

The UCITS may begin to market its units in Luxembourg two months after such communication unless the CSSF establishes, in a reasoned decision taken before the expiry of that period of two months, that the arrangements made for the marketing of units do not comply with the provisions referred to in Article 58 and Article 59.

**Art. 61**  If a UCITS situated in another Member State of the European Union markets its units in Luxembourg, it must distribute in Luxembourg in either the Luxembourg, French, German or English language the documents and information which must

18

Repealed by the Law of 17 December 2010

be published in the Member State of the European Union in which it is situated, in accordance with the same procedures as those provided for in the latter State.

**Art. 62**   Where a UCITS situated in a country which is a party to the Agreement on the European Economic Area other than a Member State of the European Union markets its units in Luxembourg, the provisions of Articles 58 to 61 of this Law are also applicable within the limits provided by that Agreement and the instruments relating thereto.

# PART II. - Other UCIS

## Chapter 8. – Scope

**Art. 63**   This Part shall apply to all UCITS excluded by Article 3 of this Law and to all other UCIs situated in Luxembourg not covered by Part I.

**Art. 64**   A UCI shall be deemed to be situated in Luxembourg if the registered office of the management company of the common fund or the registered office of the investment company is situated in Luxembourg. The head office must be situated in Luxembourg.

## Chapter 9. – Common funds

**Art. 65**   (1) There shall be regarded as a common fund for the application of this Part any undivided collection of assets made up and managed according to the principle of risk-spreading on behalf of joint owners who are liable only up to the amount contributed by them and whose rights are represented by units intended for placement with the public by means of a public or private offer.

(2) A common fund shall be managed by a management company which complies with the conditions set out in Chapter 13 or 14 of Part IV of this Law.

(3) The depositary must either have its registered office in Luxembourg or be established in Luxembourg if its registered office is in another Member State of the European Union or in a State which is a non-Member State.

**Art. 66**   Articles 6, 8, 9, 10, 11 (1), 12 (1) b), 12 (3), 13 (1), 13 (2) a) through i), 14, 15, 16, 17 (1), 17 (3), 17 (4), 18 (1), 18 (2) a) c) d) e), 19, 20, 21, 22, 23 and 24 of this Law are applicable to common funds falling within the scope of this Chapter.

**Art. 67**   (1) A grand-ducal regulation for which an opinion from the CSSF shall be sought may, *inter alia*, determine:

a) the minimum periodicities for the determination of the issue and redemption prices for units of the common fund;

b) the minimum percentage of the assets of the common fund which must be represented by liquid assets;

c) the maximum percentage of the assets of the common fund which may be invested in transferable securities not quoted on a stock exchange nor dealt in on an organised market offering comparable safeguards;

d) the maximum percentage of securities of the same kind issued by the same body which the common fund may hold;

e) the maximum percentage of the assets of the common fund which may be invested in securities issued by the same body;

f) the conditions under which and possibly the maximum percentages the common fund may invest in securities of other UCIs;

g) the maximum percentage, in relation to its total assets, of the amounts the common fund is authorised to borrow and the terms and conditions for such borrowings.

(2) The periodicities and percentages determined in accordance with the foregoing paragraph may be differentiated depending on whether or not the common funds display certain characteristics or fulfil certain conditions.

(3) A recently formed common fund may, while ensuring observance of the principle of risk-spreading, derogate from paragraph (1) e) above for a period of six months following the date of its authorisation.

(4) Where the maximum percentages fixed by reference to sub-paragraphs c), d), e), f) and g) of paragraph (1) above are exceeded as a result of the exercise of rights attached to securities in the portfolio or otherwise than by the purchase of

Repealed by the Law of 17 December 2010

securities, the management company must adopt as its priority objective for its sales transactions, the remedying of the situation of the fund, taking due account of the interests of the unitholders.

**Art. 68**  (1) Neither the management company nor the depositary, acting on behalf of the common fund, may grant loans to unitholders of the common fund.

(2) Paragraph (1) shall not prevent common funds from acquiring transferable securities which are not fully paid.

## Chapter 10. – SICAVs

**Art. 69**  For the purpose of this Part SICAVs shall be taken to mean those companies which have adopted the form of a public limited company (*société anonyme*) governed by Luxembourg law,
- whose exclusive object is to invest their funds in assets in order to spread the investment risks and to ensure for their investors the benefit of the results of the management of their assets, and
- whose shares are intended to be placed with the public by means of a public or private offer, and
- whose articles of incorporation provide that the amount of capital shall at all times be equal to the value of the net assets of the company.

**Art. 70**  The minimum capital of a SICAV may not be less than one million two hundred fifty thousand euro (1,250,000 euro). This minimum must be reached within a period of six months following the authorisation of the SICAV. A grand-ducal regulation may raise such minimum amount up to a maximum of two million five hundred thousand euro (2,500,000 euro).

**Art. 71**  Articles 26, 28 (1) a), 28 (2) a), 28 (3) to (10), 29, 30, 31, 32, 33, 34, 35 (2), 36, 37 and 38 of this Law are applicable to the SICAVs subject to the scope of this Chapter.

**Art. 72**  (1) A grand-ducal regulation for which an opinion from the CSSF shall be sought may, *inter alia*, determine:

a) the minimum periodicities for the determination of the issue and, where the articles of incorporation provide for the right of shareholders to have their shares redeemed, the redemption prices for shares of the SICAV;

b) the minimum percentage of the assets of the SICAV which must be represented by liquid assets;

c) the maximum percentage of the assets of the SICAV which may be invested in transferable securities not quoted on a stock exchange nor dealt in on an organised market offering comparable safeguards;

d) the maximum percentage of securities of the same kind issued by the same body which the SICAV may hold;

e) the maximum percentage of the assets which the SICAV may invest in securities issued by the same body;

f) the conditions under which and possibly the maximum percentages the SICAV may invest in securities of other UCIs;

g) the maximum percentage, in relation to its total assets, of the amounts the SICAV is authorised to borrow and the terms and conditions for such borrowings.

(2) The periodicities and percentages determined in accordance with the foregoing paragraph may be differentiated depending on whether or not the SICAVs display certain characteristics or fulfil certain conditions.

(3) A recently formed SICAV may, while ensuring observance of the principle of risk-spreading, derogate from paragraph (1) e) above for a period of six months following the date of its authorisation.

(4) Where the maximum percentages fixed by reference to sub-paragraphs c), d), e), f) and g) of paragraph (1) above are exceeded as a result of the exercise of rights attached to securities in the portfolio or otherwise than by the purchase of securities, the SICAV must adopt as its priority objective for its sales trans-actions, the remedying of the situation, taking due account of the interests of the shareholders.

## Chapter 11. –UCIs which have not been constituted as common funds or SICAVs

**Art. 73**  This Chapter is applicable to all companies and all undertakings other than common funds or SICAVs
- whose exclusive object is the collective investment of their funds in assets in order to spread the investment risks and to ensure for the investors the benefit of the results of the management of their assets, and
- which solicit the public for the subscription of their units by means of a public or private offer.

**Art. 74**  (1) The net assets of the UCIs falling within this Chapter may not be less than one million two hundred and fifty thousand euro (1,250,000 euro).

Repealed by the Law of 17 December 2010

This minimum must be reached within a period of six months following their authorisation. A grand-ducal regulation may raise that minimum figure up to a maximum of two million five hundred thousand euro (2,500,000 euro).

(*Law of 25 August 2006*)

"(2) If the net assets have fallen below two thirds of the legal minimum, the directors or the management organ, as the case may be, or managers must submit the question of the dissolution of the undertaking to a general meeting for which no quorum shall be prescribed and which shall decide by simple majority of the units represented at the meeting.

(3) If the net assets have fallen below one fourth of the legal minimum, the directors or the management organ, as the case may be, or managers must submit the question of the dissolution to a general meeting for which no quorum shall be prescribed. The dissolution may be resolved by investors holding one fourth of the units represented at the meeting."

(4) The meeting must be convened so that it is held within a period of 40 days as from the ascertainment that the net assets have fallen below two thirds or one fourth of the legal minimum, as the case may be.

(*Law of 25 August 2006*)

"(5) If the constitutional documents of the undertaking do not provide for general meetings, the directors or the management organ, as the case may be, or managers must, if the net assets of the UCI have fallen below two thirds of the legal minimum, inform without delay the CSSF. In such case, the CSSF may, having regard to the circumstances, require the directors or managers to liquidate the undertaking."

**Art. 75**   (1) A grand-ducal regulation for which an opinion from the CSSF shall be sought may, *inter alia*, determine:

a) the minimum periodicities for the determination of the issue and, in case the constitutional documents provide the right for the shareholders or members to have their shares redeemed, the redemption price of the shares or units of the UCI;

b) the minimum percentage of the assets of the UCI which must be represented by liquid assets;

c) the maximum percentage of the assets of the UCI which may be invested in transferable securities not quoted on a stock exchange nor dealt in on an organised market offering comparable safeguards;

d) the maximum percentage of securities of the same kind issued by the same body which the UCI may hold;

e) the maximum percentage of the assets of the UCI which may be invested in securities issued by the same body;

f) the conditions under which and possibly the maximum percentages the UCI may invest in securities of other UCIs;

g) the maximum percentage, in relation to its total assets, of the amounts the UCI is authorised to borrow and the terms and conditions for such borrowings.

(2) The periodicities and percentages determined in accordance with paragraph (1) above may be differentiated depending on whether or not the UCI displays certain characteristics or fulfils certain conditions.

(3) A recently formed UCI may, while ensuring observance of the principle of risk-spreading, derogate from paragraph (1) e) above, for a period of six months following the date of its authorisation.

(4) Where the maximum percentages fixed by reference to sub-paragraphs c), d), e), f) and g) of paragraph (1) above are exceeded as a result of the exercise of rights attached to securities in the portfolio or otherwise than by the purchase of securities, the UCI must adopt as its priority objective for its sales trans-actions, the remedying of the situation, taking due account of the interests of the shareholders or members.

(5) The constitutional documents of the UCI shall specify the principles and methods of valuation of the assets of the UCI. Unless otherwise provided in the constitutional documents, the valuation of the assets of the UCI shall be based in the case of officially listed securities, on the last known stock exchange quotation, unless such quotation is not representative. For securities not so listed and for securities which are so listed but for which the latest quotation is not representative, the valuation shall be based on the probable realisation value which must be estimated with care and in good faith.

(6) Articles 28(5), 34, 35 (2), 36, 37 and 38 of this Law are applicable to the UCIs subject to this Chapter.

Repealed by the Law of 17 December 2010

(*Law of 17 December 2010*)

"(7) The articles of incorporation of the UCI which is in the form of one of the companies set out in Article 2 of the law of 10 August 1915 on commercial companies, as amended, and any amendment to these articles of incorporation shall be recorded in a special notarial deed drawn up in French, German or English as the appearers choose. By way of derogation from the provisions of the decree of 24 Prairial, year XI, where the notarial deed is drawn up in English, the requirement to append a translation in one of the official languages when it is registered is not applicable.

(8) By way of derogation from Article 73, sub-paragraph 2 of the law of 10 August 1915 concerning commercial companies, as amended, the UCIs subject to this chapter which adopted the form of a public limited company (*société anonyme*) or a corporate limited partnership (*société en commandite par actions*) are not required to transmit the annual accounts, the report of the *réviseur d'entreprises agréé* (approved statutory auditor), the management report and, if applicable, the observations of the supervisory board to the registered unitholders at the same time as the convening notice for the annual general meeting. The convening notice indicates the place and the way in which these documents are made available to the unitholders and specifies that every unitholder may request that the annual accounts, the report of the *réviseur d'entreprises agréé* (approved statutory auditor), the management report and, if applicable, the observations of the supervisory board be sent to him.

(9) The convening notices for the general meetings of the unitholders may set out that the quorum and the majority at the general meeting be determined according to the units issued and outstanding at midnight on the fifth day prior to the general meeting (Luxembourg time) (referred to as "Record Date"). The rights of a unitholder to participate in a general meeting and to exercise the voting right attached to his units are determined according to the units held by this unitholder at the Record Date."

## PART III. - Foreign UCIS

### Chapter 12. – General provisions and scope

**Art. 76**    UCIs "other than the closed-end type"[6] formed according to or operating under foreign laws, which are not subject to Chapter 7 of this Law and whose securities are the subject of a public announcement, offer or sale in or from Luxembourg, must be submitted in their State of origin to a permanent supervision performed by a supervisory authority set up by law in order to ensure the protection of investors. Article 59 of this Law is applicable to such UCIs.

## PART IV. - The authorisation of management companies

### Chapter 13. – Management companies managing UCITS governed by Directive 85/611/EEC

*A. - Conditions for taking up business*

**Art. 77**    (1) Access to the business of management companies within the meaning of this Chapter is subject to prior authorisation by the CSSF. Authorisation granted under this Law to a management company shall be valid for all Member States of the European Union.

A management company shall be incorporated as a public limited company (*société anonyme*), a private limited company (*société à responsabilité limitée*), a cooperative company (*société coopérative*), a cooperative company set up as a public limited company (*société coopérative organisée comme une société anonyme*) or a corporate limited partnership (*société en commandite par actions*). The capital of such company must be represented by registered shares.

(2) No management company may engage in activities other than the management of UCITS authorised according to Directive 85/611/EEC except the additional management of other UCIs which are not covered by such Directive and for which the management company is subject to prudential supervision but the units of which cannot be marketed in other Member States of the European Union under Directive 85/611/EEC.

The activity of management of common funds and of investment companies includes the functions listed in Annex II of this Law which list is not exhaustive.

(3) By way of derogation from paragraph (2), management companies are also authorised to provide the following services:

---

[6] Law of 10 July 2005 on prospectuses for securities

Repealed by the Law of 17 December 2010

a) management of portfolios of investments, on a discretionary client-by-client basis, including those owned by pension funds, in accordance with mandates given by investors where such portfolios include one or more of the instruments listed in Section B of Annex II of the Law of 5th April, 1993 on the financial sector, as amended;

b) as non-core services:
– investment advice concerning one or more of the instruments listed in Section B of Annex II of the Law of 5th April, 1993 on the financial sector, as amended;
– safekeeping and administration in relation to units of UCIs.

Management companies may in no case be authorised under this Chapter to provide only the services mentioned in this paragraph or to provide non-core services without being authorised for the services referred to in point a).

*(Law of 13 July 2007)*

"For the purposes of this article, the investment advice consists in providing personal recommendations to a client, either upon its request or at the initiative of the management company, in respect of one or more transactions relating to financial instruments referred to in Section B of Annexe II to the law of 5 April 1993 on the financial sector as amended.

For the purpose of this article, a personal recommendation is a recommendation that is made to a person in his capacity as an investor or potential investor or in his capacity as an agent for an investor or potential investor.

That recommendation must be presented as suitable for that person, or must be based on a consideration of the circumstances of that person, and must constitute a recommendation to take one of the following sets of steps:

(a) to buy, sell, subscribe for, exchange, redeem, hold or underwrite a particular financial instrument;

(b) to exercise or not to exercise any right conferred by a particular financial instrument to buy, sell, subscribe for, exchange, or redeem a financial instrument.

A recommendation is not a personal recommendation if it is issued exclusively through distribution channels within the meaning of article 1(18) of the law of 9 May 2006 on market abuse or to the public."

(4) *(Law of 13 July 2007)* "Article 13(3), article 37-1 and article 37-3 of the law of 5 April 1993 on the financial sector, as amended apply *mutatis mutandis* to the provision by management companies of services referred to in paragraph (3) of this article.

The management companies that provide the service referred to in paragraph (3) (a) of this article shall in addition comply with the Luxembourg regulation transposing Directive 2006/49/EC of the European Parliament and of the Council of 14 June 2006 on the capital adequacy of investment firms and credit institutions (recast). (…)[7]."

**Art. 78**    (1) The CSSF shall grant authorisation to a management company on the following conditions:

a) the management company has an initial capital of at least one hundred twenty-five thousand euro (125,000 euro):
– When the value of the portfolios of the management company exceeds two hundred fifty million euro (250,000,000 euro) the management company shall be required to provide an additional amount of own funds. This additional amount of own funds shall be equal to 0.02% of the amount by which the value of the portfolios of the management company exceeds two hundred fifty million euro (250,000,000 euro). The required total of the initial capital and the additional amount shall not, however, exceed ten million euro (10,000,000 euro).

– For the purpose of this paragraph, the following portfolios shall be deemed to be the portfolios of the management company:
(i) common funds managed by the management company including portfolios for which it has delegated the management function but excluding portfolios that it is managing under delegation;
(ii) investment companies for which the management company is the designated management company;
(iii) other UCIs managed by the management company including portfolios for which it has delegated the management function but excluding portfolios that it is managing under delegation.

– Irrespective of the amount of these requirements, the own funds of the management company shall never be less than the amount prescribed in Annex IV of Directive 93/6/EEC.

Management companies are authorised not to provide up to 50% of the additional amount of own funds referred to above if they benefit from a guarantee of the same amount given by a credit institution or an insurance undertaking. The credit institution or insurance undertaking must have its registered office in a Member State of the European Union or in a non-

---

[7] Deleted by the law of 10 November 2009

Member State provided that it is subject to prudential rules considered by the CSSF as equivalent to those laid down in Community law.

(b) the persons who effectively conduct the business of a management company must be of sufficiently good repute and be sufficiently experienced, also in relation to the type of UCITS managed by the management company. To that end, the identities of these persons and of every person succeeding them in office must be communicated forthwith to the CSSF. The conduct of a management company's business must be decided by at least two persons meeting such conditions;

(c) the application for authorisation must be accompanied by a program of activity setting out, *inter alia*, the organisational structure of the management company;

(d) both its head office and its registered office are located in Luxembourg.

(2) Moreover where close links exist between the management company and other natural or legal persons, the CSSF shall grant authorisation only if such links do not prevent the effective exercise of its supervisory functions.

The CSSF shall also refuse authorisation if the laws, regulations or administrative provisions of a non-Member State governing one or more natural or legal persons with which the management company has close links, or difficulties involved in their enforcement, prevent the effective exercise of its supervisory functions.

The CSSF shall require management companies to provide it with the information they require to monitor compliance with the conditions referred to in this paragraph on a continuous basis.

(3) An applicant shall be informed, within six months of the submission of a complete application, whether or not authorisation has been granted. Reasons shall be given whenever an authorisation is refused.

(4) A management company may start business as soon as authorisation has been granted.

(5) The CSSF may withdraw the authorisation issued to a management company subject to this Chapter only where that company:

(a) does not make use of the authorisation within twelve months, expressly renounces the authorisation or has ceased the activity covered by this Chapter for more than six months;

(b) has obtained the authorisation by making false statements or by any other irregular means;

(c) no longer fulfils the conditions under which authorisation was granted;

(d) no longer complies with the Law of 5th April, 1993 on the financial sector, as amended, resulting from the implementation of Directive 93/6/EEC if its authorisation also covers the discretionary portfolio management service referred to in Article 77, paragraph (3) a) above;

(e) has seriously and/or systematically infringed the provisions of this Law or of regulations adopted pursuant to it; or

(f) falls within any of the cases where this Law provides for withdrawal.

**Art. 79**  1) Te CSSF shall not grant authorisation to take up the business of a management company until it has been informed of the identities of the share-holders or members, whether direct or indirect, natural or legal persons, that have qualifying holdings and of the amounts of those holdings.

The CSSF shall refuse authorisation if, taking into account the need to ensure the sound and prudent management of a management company, it is not satisfied as to the suitability of the aforementioned shareholders or members.

(2) The competent authorities of the other Member State involved shall be consulted beforehand on the authorisation of any management company which is:

(a) a subsidiary of another management company, investment firm, credit institution or insurance undertaking authorised in another Member State of the European Union,

(b) a subsidiary of the parent undertaking of another management company, investment firm, credit institution or insurance undertaking authorised in another Member State of the European Union, or

(c) controlled by the same natural or legal persons as control another management company, investment firm, credit institution or insurance undertaking authorised in another Member State of the European Union.

Repealed by the Law of 17 December 2010

**Art. 80**   "(1)The authorisation of a management company is subject to the condition that the audit of its annual accounting documents is entrusted to one or more *réviseur(s) d'entreprises agréé(s)* (approved statutory auditor(s)) who can justify of an adequate professional experience."[8]

"(2) Any change of external *réviseurs d'entreprises agréés* (approved statutory auditors) must be previously approved by the CSSF."[9]

(3) The institution of *commissaires aux comptes* (supervisory auditors) provided for by the Law of 10th August, 1915 concerning commercial companies, as amended, and by Article 137 of such law, shall not apply to management companies subject to this Chapter.

*B. Relations with third countries*

**Art. 81**   Relations with third countries shall be regulated in accordance with the relevant rules laid down in Article 7 of Directive 93/22/EEC.

For the purpose of this Law, the expressions "firm/investment firm" and "investment firms" contained in Article 7 of Directive 93/22/EEC shall be construed respectively as "management company" and "management companies"; the expression "providing investment services" in Article 7, paragraph (2) of Directive 93/22/EEC shall be construed as "providing services".

*C. Operating conditions*

**Art. 82**   (1) The management company shall comply at all times with the conditions laid down in Article 77 and Article 78, paragraphs (1) and (2) above. The own funds of a management company may not fall below the level specified in Article 78, paragraph (1) a). If they nevertheless do, the CSSF may, where the circum-stances justify it, allow such firms a limited period in which to rectify their situation or cease their activities.

(2) The prudential supervision of a management company shall be the responsibility of the CSSF whether or not the management company establishes a branch as defined in Article 1 of this Law or provides services in another Member State of the European Union, without prejudice to those provisions of Directive 85/611/EEC which give responsibility to the authorities of the host Member States.

**Art. 83**   (1) Qualifying holdings in management companies shall be subject to the same rules as those laid down in Article 18 of the Law of 5th April 1993 on the financial sector, as amended.

(2) For the purpose of this Law, the expressions "firm/investment firm" and "investment firms" contained in Article 18 of the Law of 5th April 1993 on the financial sector, as amended, shall be construed respectively as "management company" and "management companies".

**Art. 84**   (1) With regard to the nature of the UCITS managed by it and in furtherance of the prudential rules it is required to observe at all times with regard to the activity of management of UCITS subject to Part I of this Law, a management company shall be required:

(a) to have sound administrative and accounting procedures, control and safeguard arrangements for electronic data processing and adequate internal control mechanisms including, in particular, rules for personal transactions by its employees or for the holding or management of investments in financial instruments in order to invest own funds and ensuring, *inter alia*, that each transaction involving the UCITS may be reconstructed according to its origin, the parties concerned, its nature, and the time when and the place at which it was effected and that the assets of the common funds or of the investment companies managed by the management company are invested according to the constitutional documents and the legal provisions in force;

(b) to be structured and organised in such way as to minimise the risk of UCITS' or clients' interests being prejudiced by conflicts of interest between the company and its clients, between one of its clients and another, between one of its clients and a UCITS or between two UCITS. Nevertheless, where a branch is set up, the organisational arrangements may not conflict with the rules of conduct laid down by the host Member State to cover conflicts of interest.

(2) Each management company the authorisation of which also covers the discretionary portfolio management service mentioned in Article 77, paragraph (3) a):

---

[8] Law of 18 December 2009
[9] Law of 18 December 2009

– shall not be permitted to invest all the investor's portfolio in units of common funds or of investment companies it manages, unless it has received the prior general approval from the client;

– shall be subject with regard to the services referred to in Article 77, paragraph (3) to the provisions laid down by the Law of 17th July 2000 implementing Directive 97/9/EC in the Law of 5th April 1993 on the financial sector, as amended.

**Art. 85**   (1) Management companies are authorised to delegate to third parties for the purpose of a more efficient conduct of their business the power to carry out on their behalf one or more of their own functions. In that case, the following preconditions have to be complied with:

a) the CSSF must be informed thereof in an appropriate manner;

b) the mandate may not prevent the effectiveness of supervision over the management company, and in particular it must not prevent the management company from acting, or the UCITS from being managed, in the best interests of the investors;

c) when the delegation concerns the management of investments the mandate may only be given to undertakings which are authorised or registered for the purpose of asset management and are subject to prudential supervision; the delegation must be in accordance with investment allocation criteria periodically laid down by the management company;

d) where the mandate concerns the management of investments and is given to a third-country undertaking, cooperation between the CSSF and the supervisory authority of that country must be ensured;

e) a mandate with regard to the core function of investment management shall not be given to the depositary or to any other undertaking whose interests may conflict with those of the management company or the unitholders;

f) measures shall exist which enable the persons who conduct the business of the management company to monitor effectively at any time the activity of the undertaking to which the mandate is given;

g) the mandate shall not prevent the persons who conduct the business of the management company to give at any time further instructions to the under-taking to which functions are delegated and to withdraw the mandate with immediate effect when this is in the interest of investors;

h) having regard to the nature of the functions to be delegated, the under-taking to which functions will be delegated must be qualified and capable of undertaking the functions in question; and

i) the UCITS' prospectuses list the functions which the management  company has been permitted to delegate.

(2) In no case shall the management company's and the depositary's liability be affected by the fact that the management company delegated any functions to third parties, nor shall the management company delegate its functions to the extent that it becomes a letter box entity.

**Art. 86**   In the conduct of its business activities, a management company authorised under this Chapter shall, at all times, in furtherance of rules of conduct:

a) act honestly and fairly in conducting its business activities in the best interests of its clients and the integrity of the market;

(b) act with due skill, care and diligence, in the best interests of its clients and the integrity of the market;

(c) have and efficiently employ the resources and procedures that are necessary for the proper performance of its business activities;

(d) try to avoid conflicts of interests and, when they cannot be avoided, ensure that its clients are fairly treated, and

(e) comply with all regulatory requirements applicable to the conduct of its business activities so as to promote the best interests of its clients and the integrity of the market.

*D. The right of establishment and the freedom to provide services*

**Art. 87**   (1) A management company, authorised in accordance with Directive 85/611/EEC by the competent authorities of another Member State, may carry on in Luxembourg the activity for which it has been authorised, either by the establishment of a branch or under the freedom to provide services.

Repealed by the Law of 17 December 2010

(2) The establishment of a branch or the provision of services as described above is not subject to any authorisation requirement, to any requirement to provide endowment capital or to any other measure having equivalent effect.

**Art. 88**    (1) In addition to meeting the conditions imposed in Articles 77 and 78 any management company authorised under this Chapter wishing to establish a branch within the territory of another Member State of the European Union shall notify the CSSF thereof.

(2) It shall provide the following information and documents with the notification provided for in paragraph (1):

a) the Member State within the territory of which the management company plans to establish a branch;

b) a program of operations setting out the envisaged activities and services as referred to in Article 77, paragraphs (2) and (3) and the organisational structure of the branch;

c) the address in the host Member State from which documents may be obtained;

d) the name of those responsible for the management of the branch.

(3) Unless the CSSF has reason to doubt the adequacy of the administrative structure or the financial situation of a management company, taking into account the activities envisaged, it shall, within three months of receiving all the information referred to in paragraph (2), communicate that information to the competent authorities of the host Member State and shall inform the management company accordingly. It shall also communicate details of any compensation scheme intended to protect investors.

Where the CSSF refuses to communicate the information referred to in paragraph (2) to the competent authorities of the host Member State, it shall give reasons for its refusal to the management company concerned within two months of receiving all the information.

(4) Before the branch of a management company starts business, the competent authorities of the host Member State shall, within two months of receiving the information referred to in paragraph (2) prepare for the supervision of the management company and, if necessary, indicate the conditions, including the rules mentioned in Articles 53 and 54 in force in the host Member State and the rules of conduct to be respected in the case of provision of the portfolio management service mentioned in Article 77, paragraph (3) and of investment advisory and custody services, under which, in the interest of the general good, that business must be carried on in the host Member State.

(5) On receipt of a communication from the competent authorities of the host Member State or on the expiry of the period provided for in paragraph (4) without receipt of any communication from those authorities, the branch may be established and start business. From that moment the management company may also begin distributing the units of the common funds and of the investment companies subject to Directive 85/611/EEC which it manages, unless the competent authorities of the host Member State establish, in a reasoned decision taken before the expiry of that period of two months – to be communicated to the CSSF – that the arrangements made for the marketing of the units do not comply with the provisions referred to in Article 53, paragraph (1) and Article 54.

(6) In the event of change of any particulars communicated in accordance with paragraphs (2) b), c) or d), the management company shall give written notice of that change to the CSSF and the competent authorities of the host Member State at least one month before implementing the change so that the CSSF may take a decision on the change under paragraph (3) and the competent authorities of the host Member State may do so under paragraph (4).

(7) In the event of a change in the particulars communicated in accordance with the first subparagraph of paragraph (3), the CSSF shall inform the authorities of the host Member State accordingly.

**Art. 89**    (1) Any management company wishing to carry on business within the territory of another Member State of the European Union for the first time under the freedom to provide services shall communicate the following information to the CSSF:

a) the Member State of the European Union within the territory of which the management company intends to operate;

b) a program of operations stating the envisaged activities and services referred to in Article 77, paragraphs (2) and (3).

(2) The CSSF shall, within one month of receiving the information referred to in paragraph (1) forward it to the competent authorities of the host Member State.

It shall also communicate details of any applicable compensation scheme intended to protect investors.

Repealed by the Law of 17 December 2010

(3) The management company may then start business in the host Member State notwithstanding the provisions of Article 55 of this Law.

When appropriate, the competent authorities of the host Member State shall, on receipt of the information referred to in paragraph (1) indicate to the management company the conditions, including the rules of conduct to be respected in the case of provision of the portfolio management service mentioned in Article 77, paragraph (3) and of the investment advisory services and custody services, with which, in the interest of the general good, the management company must comply in the host Member State.

(4) Should the content of the information communicated in accordance with paragraph (1) b) be amended, the management company shall give notice of the amendment in writing to the CSSF and the competent authorities of the host Member State before implementing the change, so that the CSSF may, if necessary, inform the management company of any change or addition to be  made to the information communicated under paragraph (3).

(5) A management company shall also be subject to the notification procedure laid down in this Article in cases where it entrusts a third party with the marketing of the units in a host Member State.

**Art. 90**   (1) For statistical purposes, all management companies authorised in a Member State of the European Union under Directive 85/611/EEC with a branch  defined in that Directive within Luxembourg shall report periodically on their activities in Luxembourg to the CSSF.

(2) Branches of such management companies must provide the CSSF with the same particulars as required from management companies authorised under this Chapter.
(3) Where a management company that has a branch or provides services within Luxembourg is in breach of the provisions of this Law, the CSSF shall require the management company concerned to put an end to its irregular situation.

(4) If the management company concerned fails to take the necessary steps, the CSSF shall inform the competent authorities of the home Member State accordingly.

(5) If the management company persists in breaching the legal or regulatory provisions referred to in paragraph (2) in force in Luxembourg, the Luxembourg authorities may, after informing the competent authorities of the home Member State, take appropriate measures to prevent or sanction further irregularities and, insofar as necessary, to prevent that management company from initiating any further transactions within Luxembourg. The legal documents necessary for those measures shall be served on management companies.

(6) The foregoing provisions shall not affect the powers of Luxembourg to take appropriate measures to prevent or to penalise irregularities committed within its territory which are contrary to legal or regulatory provisions adopted in the interest of the general good. This shall include the possibility of preventing offending management companies from initiating any further transactions within Luxembourg.

(7) Any measure adopted pursuant to paragraphs (4), (5) or (6) involving penalties or restrictions on the activities of a management company must be properly justified and communicated to the management company concerned. Every such measure shall be subject to the right to apply to the courts in Luxembourg.

(8) Before following the procedure laid down in paragraphs (3), (4) or (5) the CSSF may, in emergencies, take any precautionary measures necessary to protect the interests of investors and others to whom services are provided. The European Commission and the competent authorities of the other Member States concerned must be informed of such measures at the earliest opportunity.

(9) In the event of the withdrawal of authorisation, the CSSF shall be informed thereof and shall take appropriate measures to prevent the management company concerned from initiating any further transactions within Luxembourg, and to safeguard investors' interests.

### Chapter 14. – Other management companies of Luxembourg UCIs

**Art. 91**   (1) Access to the business of a management company within the meaning of this Chapter is subject to prior authorisation by the CSSF.

The management company shall be incorporated as a public limited company (*société anonyme*), a private limited company (*société à responsabilité limitée*), a cooperative company (*société coopérative*), a cooperative company set up as a public limited company (*société coopérative organisée comme une société anonyme*) or a corporate limited partnership (*société en commandite par actions*). The capital of such company must be represented by registered shares.

Repealed by the Law of 17 December 2010

It may not engage in activities other than the management of UCIs, the administration of its own assets being only an ancillary activity provided that it must manage at least one Luxembourg law UCI.

Both its head office and its registered office must be situated in Luxembourg.

(2) The CSSF will grant authorisation to a company on the following conditions:

a) it must have sufficient financial resources at its disposal to enable it to conduct its business effectively and meet its liabilities; in particular it must have a minimum paid-up capital of one hundred twenty-five thousand euro (125,000 euro); a grand-ducal regulation may raise that minimum amount to a maximum of six hundred twenty-five thousand euro (625,000 euro);

b) the directors of the management company in the meaning of Article 93 (3) must justify their sufficiently good repute and that they have the professional experience required for the performance of their duties;

c) the identity of reference shareholders or members of the management company must be provided to the CSSF;

d) the application must describe the organisational structure of the management company.

(3) An applicant shall be informed, within six months of the submission of a complete application, whether or not authorisation has been granted. Reasons shall be given whenever an authorisation is refused.

(4) A management company may start business as soon as authorisation has been granted.

(5) The CSSF may withdraw the authorisation issued to a management company subject to this Chapter only where that company:

(a) does not make use of the authorisation within twelve months, expressly renounces the authorisation or has ceased the activity covered by this Chapter for more than six months;

(b) has obtained the authorisation by making false statements or by any other irregular means;

(c) no longer fulfils the conditions under which authorisation was granted;

(d) has seriously and/or systematically infringed the provisions adopted pursuant to this Law; or

(e) falls within any of the cases where this Law provides for withdrawal.

(6) The management company may not use the assets of the UCIs it manages for its own needs.

**Art. 92**     Article 80 of this Law is applicable to the management companies falling within the scope of this Chapter.

## PART V. - General provisions applicable to UCITS and other UCIs

### Chapter 15. – Authorisation

**Art. 93**     (1) UCIs subject to Articles 2, 63 and 76 must, in order to carry out their activities, be previously authorised by the CSSF. A UCITS subject to Article 2 which is legally prevented from marketing its units or shares in Luxembourg, notably by a provision included in the management regulations of the fund or the constitutional documents, will not be authorised by the CSSF.

(2) A UCI shall be authorised only if the CSSF has approved the constitutional documents and the choice of the depositary.

(3) The directors of the UCI and of the depositary must be of sufficiently good repute and have sufficient experience, also in relation to the type of UCI concerned. To that end, the names of the directors, and of every person succeeding them in office, must be communicated forthwith to the CSSF.

"Directors" shall mean those persons who under law or the constitutional documents represent the UCI or the depositary or who effectively determine the conduct of the activities of the UCI.

(4) The replacement of the management company or of the depositary and the amendment of the constitutional documents of the UCI are subject to approval by the CSSF.

**Art. 94** (1) Authorised UCIs shall be entered by the CSSF on a list. Such entry shall be tantamount to authorisation and shall be notified by the CSSF to the UCI concerned. For the UCIs referred to in Articles 2 and 63, applications for entry on the list must be filed with the CSSF within the month following their constitution or formation. The said list and any amendments made thereto shall be published in the *Mémorial* by the CSSF.

(2) The entering and the maintaining on the list referred to in paragraph (1) shall be subject to observance of all the provisions of laws, regulations or agreements relating to the organisation and operation of UCIs and the distribution, placing or sale of their units.

**Art. 95** (*Law of 10 July 2005*) "Luxembourg UCIs other than the closed-end type, UCITS governed by harmonised Community law and foreign UCIs in case of a public offer in Luxembourg shall be exempt from publishing a prospectus as provided for in Part III of the Law on prospectuses for securities. The prospectus which such UCIs draw up in accordance with the regulatory requirements applicable to UCIs shall be valid for the purposes of an offer to the public of securities or the admission of securities to trading on a regulated market."

**Art. 96** The fact that an UCI is entered on the list referred to in Article 94, paragraph (1) shall not under any circumstance be described in any way whatsoever as a positive assessment made by the CSSF of the quality of the units offered for sale.

### Chapter 16. – Organisation of supervision

**Art. 97** (1) The authority which is to carry out the duties provided for in this Law is the CSSF.

(2) The CSSF carries out its duties exclusively in the interest of the public.

(3) The CSSF is authorised to receive complaints from holders of units in UCIs and to mediate with such UCIs in order to resolve such complaints amicably.

**Art. 98** "(1) Any person who works or who has worked for the CSSF, as well as the *réviseurs d'entreprises agréés* (approved statutory auditors) or experts instructed by the CSSF, shall be bound by the obligation of professional secrecy provided for by Article 16 of the Law of 23rd December, 1998  creating the *Commission de Surveillance du Secteur Financier*, as amended."[10] Such secrecy implies that no confidential information which they may receive in the course of their duties may be divulged to any person or authority whatsoever, save in summary or aggregate form such that UCIs, management companies and depositaries cannot be individually identified, without prejudice to cases covered by criminal law.

(2) Paragraph (1) shall not prevent the CSSF from exchanging information with the supervisory authorities of the other Member States of the European Union within the limits provided by this Law.

The CSSF shall closely cooperate with the supervisory authorities of other Member States of the European Union for the purpose of the fulfilment of their duty of supervision of UCIs and shall communicate for that sole purpose all required information.

The supervisory authorities of countries other than Member States of the European Union which are party to the Agreement on the European Economic Area are assimilated to the supervisory authorities of the Member States of the European Union within the limits provided by that Agreement and the instruments relating thereto.

(3) Paragraph (1) shall not prevent the CSSF from exchanging information with:

– authorities of third countries with public responsibilities for the supervision of UCIs,

– the other authorities, bodies and persons referred to in paragraph (5), with the exception of central credit registers, when they are established in third countries,

– the authorities of third countries referred to in paragraph (6).

The communication of information by the CSSF authorised by this paragraph is subject to the following conditions:

– the transmitted information must be required for the purpose of performing the supervisory duty of the recipient authorities, bodies and persons,

– information received shall be subject to the professional secrecy of the recipient authorities, bodies or persons and the professional secrecy of such authorities, bodies or persons must offer guarantees at least equivalent to the professional secrecy of the CSSF,

---

[10] Law of 18 December 2009

Repealed by the Law of 17 December 2010

–    the authorities, bodies or persons which receive information from the CSSF may only use such information for the purposes for which it has been communicated to them and must be able to ensure that no other use can be made therewith,

–    the authorities, bodies or persons who receive information from the CSSF grant the same right of information to the CSSF,

–    the CSSF may only disclose information received from EU authorities responsible for the supervision of UCIs with the express agreement of such authorities and, where appropriate, solely for the purposes for which those authorities gave their agreement.

For the purpose of this paragraph third countries are countries other than those referred to in paragraph (2).

(4) Where the CSSF receives confidential information under paragraphs (2) and (3), the CSSF may use it only in the course of its duties:
–    to check that the conditions governing the taking-up of the business of UCIs, of management companies and of depositaries are met and to facilitate the monitoring of the conduct of that business, of administrative and accounting procedures and of internal control mechanisms; or

–    to impose sanctions; or

–    in administrative appeals against decisions by the CSSF; or

–    in court proceedings initiated against decisions refusing or withdrawing an authorisation.

(5) Paragraphs (1) to (4) shall not preclude:

a) the exchange of information within the European Union between the CSSF and
–    authorities with public responsibility for the supervision of credit institutions, investment firms, insurance undertakings and other financial organisations and the authorities responsible for the supervision of financial markets,
–    bodies involved in the liquidation, bankruptcy or other similar proceedings concerning UCIs, management companies and depositaries,
–    persons responsible for carrying out statutory audits of the accounts of credit institutions, investment firms, other financial institutions or insurance undertakings

in the performance of their supervisory functions,

b) the disclosure by the CSSF within the European Union to bodies which administer compensation schemes of investors or to central credit registers of information necessary for the performance of their functions.

The communication of information by the CSSF authorised by this paragraph is subject to the condition that such information is covered by the professional secrecy of the authorities, bodies and persons receiving the information and is only authorised to the extent the professional secrecy of such authorities, bodies and persons offers guarantees at least equivalent to the professional secrecy of the CSSF. In particular, authorities which receive information from the CSSF may only use such information for the purposes for which it has been communicated and must be able to ensure that no other use can be made therewith.

Countries other than Member States of the European Union which are party to the Agreement on the European Economic Area are assimilated to the Member States of the European Union within the limits provided by that Agreement and the instruments relating thereto.

(6) Paragraphs (1) and (4) do not prevent exchanges of information within the European Union between the CSSF and:

-    the authorities responsible for overseeing the bodies involved in the liquidation, bankruptcy or other similar proceedings concerning credit institutions, investment firms, insurance undertakings, UCIs, management companies and depositaries,

-    the authorities responsible for overseeing persons entrusted with the carrying out of statutory audits of the accounts of credit institutions, investment firms, insurance undertakings and other financial institutions.

The communication of information by the CSSF authorised by this paragraph is subject to the following conditions:

Repealed by the Law of 17 December 2010

- the transmitted information is intended to be used for the purpose of performing the supervisory duty of the recipient authorities,

- information received shall be subject to the professional secrecy of the recipient authorities and the professional secrecy of such authorities must offer guarantees at least equivalent to the professional secrecy of the CSSF,

- the authorities which receive information from the CSSF may only use such information for the purposes for which it has been communicated to them and must be able to ensure that no other use can be made therewith,

- the CSSF may only disclose information received from supervisory authorities referred to in paragraphs (2) and (3) with the express agreement of such authorities and, where appropriate, solely for the purposes for which those authorities gave their agreement.

Countries other than Member States of the European Union which are party to the Agreement on the European Economic Area are assimilated to the Member States of the European Union within the limits provided by that Agreement and the instruments relating thereto.

(7) This Article shall not prevent the CSSF from transmitting to central banks and other bodies with a similar function in their capacity as monetary authorities information intended for the performance of their duties.

The communication of information by the CSSF authorised by this paragraph is subject to the condition that such information is covered by the professional secrecy of the recipient authorities and is only authorised to the extent the professional secrecy of such authorities offers guarantees at least equivalent to the professional secrecy of the CSSF. In particular, authorities which receive information from the CSSF may only use such information for the purposes for which it has been communicated and must be able to ensure that no other use can be made therewith.

This Article shall furthermore not prevent the authorities or bodies referred to in this paragraph from communicating to the CSSF such information as it may need for the purposes of paragraph (4). Information received in this context by the CSSF shall be subject to its professional secrecy.

(8) This Article shall not prevent the CSSF from communicating the information referred to in paragraphs (1) to (4) to a clearing house or other similar body recognised under national law for the provision of clearing or settlement services for a market in Luxembourg if the CSSF considers it is necessary to communicate the information in order to ensure the proper functioning of those bodies in relation to defaults or potential defaults by market participants.

The communication of information by the CSSF authorised by this paragraph is subject to the condition that such information is covered by the professional secrecy of the recipient bodies and is only authorised to the extent the professional secrecy of such bodies offers guarantees at least equivalent to the professional secrecy of the CSSF. In particular, bodies which receive information from the CSSF may only use such information for the purposes for which it has been communicated and must be able to ensure that no other use can be made therewith.

The information received by the CSSF pursuant to paragraphs (2) and (3) may not be disclosed in the circumstances referred to in this paragraph without the express agreement of the supervisory authorities which have disclosed such information to the CSSF.

**Art. 99**   (1)The decisions to be adopted by the CSSF in implementation of this Law shall state the reasons on which they are based and, unless the delay entails risks, they shall be adopted after preparatory proceedings at which all parties are able to state their case (*instruction contradictoire).* They shall be notified by registered letter or delivered by bailiff (*huissier,* court process server).

(2) The decisions by the CSSF concerning the grant, refusal or withdrawal of the authorisations provided for in this Law may be referred to the administrative court (*tribunal administrative)* which will be dealing with the substance of the case. The case must be filed within one month from the date of notification of the contested decision, or else shall be time barred.

(3) The decision of the CSSF withdrawing the name of a UCI referred to in Articles 2 and 63 of this Law from the list provided for in Article 94 (1) shall, as from the notification thereof to such undertaking and until the decision has become final, *ipso jure* entail for such undertaking suspension of any payment by said under-taking and prohibition for such undertaking, on pain of nullity, to take any measures other than protective measures, except with the authorisation of the supervisory commissioner (*commissaire de surveillance).* The CSSF shall *ipso jure* hold the office of supervisory commissioner, unless at its request, the District Court dealing with commercial matters appoints one or more supervisory commissioners. The application, stating the reasons on which it is based and accompanied by supporting documents, shall be lodged for that purpose at the Registry of the District Court in the district within which the undertaking has its registered office.

Repealed by the Law of 17 December 2010

The Court shall give its ruling within a short period.

If it considers that it has sufficient information, it shall immediately make an order in public session, without hearing the parties. If it deems necessary, it shall convene the parties by notification from the registrar within three days  from the lodgement of the application. It shall hear the parties in chambers and give its decision in public session.

The written authorisation of the supervisory commissioners is required for all measures and decisions of the undertaking and, failing such authorisation, they shall be void.
The Court may, however, limit the scope of operations subject to authorisation.

The commissioners may submit for consideration to the relevant bodies of the undertaking any proposals which they consider appropriate. They may attend proceedings of the administrative, management, executive or supervisory bodies of the undertaking.

The Court shall decide as to the expenses and fees of the supervisory commissioners; it may grant them advances. The judgement provided for in paragraph (1) of Article 104 of this Law shall terminate the functions of the supervisory commissioner who must, within one month after his replacement, submit to the liquidators appointed in such judgement a report on the use of the undertaking's assets together with the accounts and supporting documents.

If the withdrawal decision is amended on appeal in accordance with paragraphs (2) and (3) above, the supervisory commissioner shall be deemed to have resigned.

**Art. 100**  (1) The CSSF may prohibit the marketing in Luxembourg of units of a UCITS situated in another Member State of the European Union if it infringes the provisions of Chapter 7.

(2) The decision taken under paragraph (1) above is notified by the CSSF to the UCI concerned and to the competent supervisory authorities of the home Member State.

**Art. 101**  (1) Where, through the provision of services or by the establishment of branches, a management company operates in one or more host Member States of the European Union, the CSSF shall collaborate closely with the competent authorities of the Member States concerned.

It shall supply on request all the information concerning the management and the ownership of such management companies that is likely to facilitate their supervision and all information likely to facilitate the monitoring of such companies. In particular, the CSSF shall cooperate to ensure that the competent authorities of the host Member State can collect the information referred to in Article 90, paragraph (2).

(2) Insofar as it is necessary for the purpose of exercising its powers of supervision, the CSSF shall be informed by the competent authorities of the host Member State of any measures taken by the host Member State pursuant to Article 90, paragraph (6) which involve sanctions imposed on a management company or restrictions on a management company's activities.

**Art. 102**  (1) Where a management company authorised in another Member State of the European Union carries on business within Luxembourg through a branch, the competent authorities of the management company's home Member State may, after informing the CSSF carry out themselves or through the intermediary of persons they instruct for the purpose, on-the-spot verification of the information referred to in Article 101.

(2) The competent authorities of the management company's home Member State may also ask the CSSF to have such verification carried out. "Within the scope of its powers, the CSSF shall act upon such requests by carrying out the verifications itself, by either allowing the authorities who have requested them to carry them out or by allowing *réviseurs d'entreprises agréés* (approved statutory auditors) or experts to do so."[11]

(3) This Article shall not affect the right of the CSSF, within the exercise of its duties under this Law, to carry out on-the-spot verifications of branches established within Luxembourg.

**Art. 103**  Any decision to withdraw the authorisation of, or any other serious measure taken against, a Luxembourg UCITS subject to Part I of this Law or any suspension of redemptions imposed upon it, shall be communicated without delay by the CSSF to the supervisory authorities of the other Member States of the European Union where the units of the UCITS are marketed.

**Art. 104**  (1) The District Court dealing with commercial matters shall, at the request of the Public Prosecutor (*procureur d'Etat*), acting on its own motion or at the request of the CSSF, pronounce the dissolution and order the liquidation of the UCIs

---

[11] Law of 18 December 2009

Repealed by the Law of 17 December 2010

referred to in Articles 2 and 63 of this Law, when registration in the list provided for in Article 94, paragraph (1) has finally been refused or withdrawn.

When ordering the liquidation, the Court shall appoint a reporting judge (*juge commissaire)* and one or more liquidators. It shall determine the method of liquidation. It may render applicable to such extent as it may determine the rules governing liquidation in bankruptcy. The method of liquidation may be changed by subsequent decision, either of the Court's own motion or at the request of the liquidator(s).

The Court shall decide as to the expenses and fees of the liquidators; it may grant advances to them. The judgment pronouncing dissolution and ordering liquidation shall be enforceable on a provisional basis.

(2) The liquidator(s) may bring and defend all actions on behalf of the undertaking, receive all payments, grant releases with or without discharge, realise all the transferable securities of the undertaking and reemploy the proceeds therefrom, issue or endorse any negotiable instruments, compound or compromise all claims. They may alienate immovable property of the undertaking by auction.

They may also but only with the authorisation of the Court, mortgage and pledge its assets and alienate its immovable property by private treaty.

(3) As from the day of the judgment, no legal actions relating to movable or immovable property nor any enforcement procedures relating to movable or immovable property may be pursued, commenced or exercised otherwise than against the liquidators.

The judgment ordering liquidation shall terminate all seizures effected at the instance of general creditors who are not secured by charges (*créanciers chirographaires et non privilégiés)* on movable and immovable property.

(4) After payment or payment into court of the sums necessary for the discharge of the debts, the liquidators shall distribute to unitholders the sums or amounts due to them.

(5) The liquidators may convene at their own initiative, and must convene at the request of holders of units representing at least one fourth of the assets of the undertaking, a general meeting of unitholders for the purpose of deciding whether instead of an outright liquidation it is appropriate to contribute the assets of the undertaking in liquidation to another UCI. That decision shall be taken, provided that the general meeting is composed of a number of unitholders representing at least one half of the outstanding units or capital of the undertaking, by a majority of two thirds of the votes of the unitholders present or represented.

(6) The court decisions pronouncing the dissolution and ordering the liquidation of an UCI shall be published in the *Mémorial* and in two newspapers with adequate circulation specified by the Court, one of which at least must be a Luxembourg newspaper. The liquidator(s) shall arrange for such publications.

(7) If there are no or insufficient assets, as ascertained by the reporting judge, the documents relating to the proceedings shall be exempt from any registry and registration duties and the expenses and fees of the liquidators shall be borne by the Treasury and paid as judicial costs.

(8) The liquidators shall be responsible both to third parties and to the UCI for the discharge of their duties and for any faults committed in the conduct of their activities.

(9) When the liquidation is completed, the liquidators shall report to the Court on the use made of the funds of the undertaking and shall submit the accounts and supporting documents thereof. The Court shall appoint *commissaires* (auditors) to examine the documents.

After receipt of the auditors' report, a ruling shall be given on the management of the liquidators and the closure of the liquidation.

The closure of the liquidation shall be published in accordance with paragraph (6) above.

Such publication shall also indicate:

- the place designated by the Court where the books and records must be kept for at least five years;

- the measures taken in accordance with Article 107 with a view to the payment into court of the sums and funds due to creditors, unitholders or members to whom it has not been possible to deliver the same.

(10) Any legal actions against the liquidators, in their capacity as such, shall be prescribed five years after publication of the closure of the liquidation provided for in paragraph (9).

Legal actions against the liquidators in connection with the performance of their duties, shall be prescribed five years after the date of the facts or, in the event of concealment thereof by wilful misconduct, five years after the discovery thereof.

(11) The provisions of this Article shall equally apply to the UCIs which have not applied to be entered on the list provided for in Article 94 within the time limit laid down therein.

**Art. 105**  (1) UCIs shall, after dissolution, be deemed to exist for the purpose of liquidation. In the case of a non-judicial liquidation, they shall remain subject to supervision by the CSSF.

(2) All documents issued by a UCI in liquidation shall indicate that it is in liquidation.

**Art. 106**  (1) In the event of a non-judicial liquidation of a UCI, the liquidator(s) must be approved by the CSSF. The liquidator(s) must provide all guarantees of honourability and professional skill.

(2) Where a liquidator does not accept office or is not approved, the District Court dealing with commercial matters shall, at the request of any interested party or of the CSSF, appoint the liquidator(s). The judgment appointing the liquidator(s) shall be provisionally enforceable, on the production of the original thereof and before registration, notwithstanding any appeal or objection.

**Art. 107**  In the event of a voluntary or compulsory liquidation of a UCI within the meaning of this Law, the sums and assets payable in respect of units whose holders failed to present themselves at the time of the closure of the liquidation, shall be paid to the public trust office (*Caisse de Consignation*) to be held for the benefit of the persons entitled thereto.

**Art. 108**  (*Law of 25 August 2006*) "(1)The directors or members of the management organ, as the case may be, managers and officers of UCIs subject to supervision by the CSSF as well as the liquidators in the case of voluntary liquidation of a UCI may have imposed upon them by the said authority a fine of fifteen to five hundred euro in the event of their refusing to provide the financial reports and the requested information or where such documents prove to be incomplete, inaccurate or false, and in the event of any infringement of Article 109 of this Law or in the event of any other serious irregularity being recorded."

(2) The same fine may be imposed upon any person who infringes the provisions of Article 96.

### Chapter 17. – Obligations concerning information to be supplied to unitholders

*A. – Publication of a prospectus and periodical reports*

**Art. 109**  (1) The investment company and, for each of the common funds it manages, the management company must publish:

- a simplified prospectus,
- a full prospectus,
- an annual report for each financial year, and
- a semi-annual report covering the first six months of the financial year.

(2) The annual and semi-annual reports must be published within the following time limits, with effect from the end of the periods to which they relate:
- four months in the case of the annual report,
- two months in the case of the semi-annual report.

(3) The obligation to publish a simplified prospectus set out in paragraph (1) is not applicable to UCIs subject to Part II and Part III of this Law.

(*Law of 10 July 2005*)
"(4) The obligation to publish a full prospectus within the meaning of this Law shall not apply to undertakings for collective investment of the closed-end type."

**Art. 110**  (1) Both the simplified and the full prospectus must include the information necessary for investors to be able to make an informed judgement of the investment proposed to them, and, in particular, of the risks attached thereto. The full prospectus shall include a clear easily understandable explanation of the fund's risk profile, irrespective of the instruments in which it invests.

35

Repealed by the Law of 17 December 2010

(2) The full prospectus shall contain at least the information provided for in Schedule A of Annex I to this Law insofar as such information does not already appear in the constitutional documents annexed to the full prospectus in accordance with Article 111, paragraph (1).

(3) The simplified prospectus shall contain in summary form the key information provided for in Schedule C of Annex I to this Law. It shall be structured and written in such way that it can be easily understood by the average investor. The simplified prospectus may be attached to the full prospectus as a removable part of it. The simplified prospectus can be used as a marketing tool designed to be used in all Member States of the European Union without any alterations except for its translation.

(4) Both the full and the simplified prospectus may be incorporated in a written document or in any durable medium having an equivalent legal status approved by the CSSF.

(5) The annual report must include a balance sheet or a statement of assets and liabilities, a detailed income and expenditure account for the financial year, a report on the activities of the past financial year and the other information provided for in Schedule B of Annex I to this Law, as well as any significant information which will enable investors to make an informed judgment on the development of the activities and the results of the UCI.

(6) The semi-annual report must include at least the information provided for in Chapters I to IV of Schedule B of Annex I to this Law; where a UCI has paid or proposes to pay an interim dividend, the figures must indicate the results after tax for the half-year concerned and the interim dividend paid or proposed.

(7) The Schedules as provided for by paragraphs (1), (2), (3), (4), (5) and (6) may be differentiated by the CSSF for UCIs subject to Articles 63 and 76 of this Law, depending on whether or not these UCIs display certain characteristics or fulfil certain conditions.

**Art. 111**  (1) The management regulations of the fund or the constitutional documents of the investment company shall form an integral part of the full prospectus and must be annexed thereto.

(2) The documents referred to in paragraph (1) need not, however, be annexed to the full prospectus provided that the unitholder is informed that on his request he will either be sent those documents or be apprised of the place where, in each Member State where the units are placed on the market, he may consult them.

**Art. 112**  The essential elements of the simplified and the full prospectus must be kept up-to-date.

**Art. 113**  (1) Luxembourg UCIs must have the accounting information given in their annual report audited by an approved statutory auditor.

"The report of the *réviseur d'entreprises agréé* (approved statutory auditor) and its qualifications (if any) are set out in full in each annual report."[12]

"The *réviseur d'entreprises agréé* (approved statutory auditor) must justify of an appropriate professional experience."[13]

"(2) The *réviseur d'entreprises agréé* (approved statutory auditor) shall be appointed and remunerated by the UCI."[14]

"(3) The *réviseur d'entreprises agréé* (approved statutory auditor) must report promptly to the CSSF any fact or decision of which he has become aware while carrying out the audit of the accounting information contained in the annual report of a UCI or any other legal task concerning a UCI, where such fact or decision is likely to:

-    constitute a material breach of this Law or the regulations adopted for its execution, or
-    affect the continuous functioning of the UCI, or
-    lead to a refusal to certify the accounts or to the expression of qualifications thereon."[15]

"The *réviseur d'entreprises agréé* (approved statutory auditor) shall likewise have a duty to promptly report to the CSSF, in the accomplishment of his duties referred to in the preceding sub-paragraph in respect of a UCI, any fact or decisions concerning the UCI and meeting the criteria referred to in the preceding sub-paragraph of which he has become aware while carrying out the audit of the accounting information contained in the annual report of another undertaking having

[12] Law of 18 December 2009
[13] Law of 18 December 2009
[14] Law of 18 December 2009
[15] Law of 18 December 2009

Repealed by the Law of 17 December 2010

close links resulting from a control relationship with that other undertaking or while carrying out any other legal task concerning such other undertaking."[16]

For the purpose of this Article, a close link resulting from a control relationship shall mean the link which exists between a parent undertaking and a subsidiary in the cases referred to in Article 77 of the Law of 17th June, 1992 concerning the annual accounts and consolidated accounts of credit institutions, as amended, or as a result of a relationship of the same type between any individual or legal entity and an undertaking; any subsidiary undertaking of a subsidiary undertaking is also considered as a subsidiary of the parent under-taking which is at the head of those undertakings. A situation in which two or more individuals or legal persons are permanently linked to one and the same person by a control relationship shall also be regarded as constituting a close link between such persons.

"If, in the discharge of his duties, the *réviseur d'entreprises agréé* (approved statutory auditor) ascertains that the information provided to investors or to the CSSF in the reports or other documents of the UCI does not truly describe the financial situation and the assets and liabilities of the UCI, he shall be obliged to inform the CSSF forthwith."[17]

"The *réviseur d'entreprises agréé* (approved statutory auditor) shall moreover be obliged to provide the CSSF with all information or certificates required by the latter on any matters of which the *réviseur d'entreprises agréé* (approved statutory auditor) has or ought to have knowledge in connection with the discharge of his duties. The same applies if the *réviseur d'entreprises agréé* (approved statutory auditor) ascertains that the assets of the UCI are not or have not been invested according to the regulations set out by the Law or the prospectus."[18]

"The disclosure in good faith to the CSSF by the *réviseur d'entreprises agréé* (approved statutory auditor) of any fact or decision referred to in this paragraph shall not constitute a breach of professional secrecy or of any restriction on disclosure of information imposed by contract and shall not result in liability of any kind of the *réviseur d'entreprises agréé* (approved statutory auditor)."[19]

The CSSF may regulate the scope of the auditor's mandate and the contents of the audit report on the annual accounts.

"The CSSF may request a *réviseur d'entreprises agréé* (approved statutory auditor) to perform a control on one or several particular aspects of the activities and operations of an UCI. This control is performed at the expense of the UCI concerned."[20]

"(4) The CSSF shall refuse or withdraw the entry on the list of UCIs whose *réviseur d'entreprises agréé* (approved statutory auditor) does not satisfy the conditions or does not discharge the obligations prescribed in this Article."[21]

(5) (*Law of 25 August 2006*) "The institution of *commissaires aux comptes* (supervisory auditors) provided for by Articles 61, 109, 114 and 200 of the Law of 10th August, 1915 on commercial companies, as amended, is repealed with respect to Luxembourg investment companies. The directors or the management organ, as the case may be, are solely competent in all cases the Law of 10th August, 1915 on commercial companies, as amended, provides for the joint action of the supervisory auditors and the directors or the management organ, as the case may be."

The institution of supervisory auditors provided for by Article 151 of the Law of 10th August, 1915 on commercial companies, as amended, is not applicable to Luxembourg investment companies. "Upon completion of the liquidation, a report on the liquidation shall be drawn up by the *réviseur d'entreprises agréé* (approved statutory auditor)."[22] This report shall be tabled at the general meeting at which the liquidators report on the application of the corporate assets and submit the accounts and supporting documents. The same meeting shall resolve on the approval of the accounts of the liquidation, the discharge and the closure of the liquidation.

(6) The accounting information included in the annual reports of foreign UCIs as referred to in Article 76 must be audited by an independent expert providing all guarantees of honourability and professional skill.

Paragraphs (2), (3) and (4) are applicable to the case referred to in this paragraph.

**Art. 114**  (1) UCIs must send their simplified and full prospectuses and any amendments thereto, as well as their annual and semi-annual reports, to the CSSF.

---

[16] Law of 18 December 2009
[17] Law of 18 December 2009
[18] Law of 18 December 2009
[19] Law of 18 December 2009
[20] Law of 18 December 2009
[21] Law of 18 December 2009
[22] Law of 18 December 2009

Repealed by the Law of 17 December 2010

(2) The CSSF may publish or cause the publication of the aforesaid documents by such means as it shall consider adequate.

**Art. 115**  (1) The simplified prospectus must be offered to subscribers free of charge before the conclusion of the contract.

In addition, the full prospectus and the latest published annual and semi-annual reports must be remitted to subscribers free of charge upon their request.

(2) The annual and semi-annual reports shall on request be supplied to unitholders free of charge.

(3) The annual and semi-annual reports must be available to the public at the places or through other means approved by the CSSF specified in the full and simplified prospectuses.

*B.  –  Publication of other information*

**Art. 116**  (1) The UCITS referred to in Article 2 of this Law must make public the issue, sale and redemption price of their units each time they issue, sell and redeem their units, and at least twice a month. The CSSF may, however, permit a UCITS to reduce this frequency to once a month, on condition that such a derogation does not prejudice the interests of unitholders.

(2) The UCIs referred to in Article 63 of this Law must make public the issue, sale and redemption price of their units each time they issue, sell and redeem their units, and at least once a month. The CSSF may however grant derogations therefrom upon a duly justified application.

**Art. 117**  All publicity comprising an invitation to purchase the units of a UCI must indicate that a prospectus or prospectuses exist and the places where it or they may be obtained by the public or how the public may have access thereto.

*C.  -  Transmission of other information to the CSSF*

**Art. 118**  The CSSF may request the UCIs to provide any information relevant to the fulfilment of its duties and may for that purpose itself or through appointees examine the books, accounts, registers or other records and documents of UCIs.

*D.  - Protection of Name*

**Art. 119**  (1) No UCI shall make use of designations or of a description giving the impression that its activities are subject to this Law if it has not obtained the authorisation provided for in Article 94. The UCIs referred to in Articles 58 and 76 may use the designation they bear according to their national law. However, should this be misleading, these undertakings shall accompany the designation they use with adequate particulars.

(2) The District Court dealing with commercial matters of the place where the UCI is situated or of the place where the designation has been used, may at the request of the Public Prosecutor issue an injunction, prohibiting anyone from using the designation as defined in paragraph (1), if the conditions provided for by this Law are not or no longer met.

(3) The final judgment of the District Court, of the Court of Appeals or of the Supreme Court which delivers this injunction, is published by the Public Prosecutor and at the expense of the person sentenced in two Luxembourg or foreign newspapers with adequate circulation.

### Chapter 18. – Criminal law provisions

**Art. 120**  A penalty of imprisonment from one month to one year and a fine of five hundred to twenty-five thousand euro or either such penalty shall be imposed upon:

(1) any person who has issued or redeemed or caused to be issued or redeemed units of a common fund in the cases referred to in Articles 12 (3), 22 (3) of this Law and in Article 66 of this Law to the extent that such Article provides that Chapter 9 is subject to Articles 12 (3) and 22 (3) of this Law;

(2) any person who has issued or redeemed units of a common fund at a price other than that obtained by application of the criteria provided for in Articles 9 (1), 9 (3), 11 (3) and in Article 66 of this Law to the extent that such Article provides that Chapter 9 is subject to Articles 9 (1) and 9 (3) of this Law;

*(Law of 25 August 2006)*

"(3) any person who, as director or member of the management organ, as the case may be, manager or *commissaire* (auditor) of the management company or the depositary has made loans or advances on units of the common fund using assets of the said fund, or who has by any means at the expense of the common fund, made payments in order to pay up units or acknowledged payments to have been made which have not actually been so made."

**Art. 121**  (1) A penalty of imprisonment from one to six months and a fine of five hundred to twenty-five thousand euro or either of such penalties shall be imposed upon:

(*Law of 25 August 2006*)

"1) any director or member of the management organ, as the case may be, or manager of the management company who has failed to inform the CSSF without delay that the net assets of the common fund have fallen below two thirds and one fourth respectively of the legal minimum for the net assets of the common fund;

2) any director or member of the management organ, or manager of the management company who has infringed Article 10 and Articles 41 to 52 of this Law, Article 66 of this Law to the extent that such Article provides that Chapter 9 is subject to Article 10 of this Law and the regulations taken pursuant to Article 67 of this Law."

(2) A fine of five hundred to twenty-five thousand euro shall be imposed upon any persons who in infringement of Article 119 purport to use a designation or description giving the impression that they relate to the activities subject to this Law if they have not obtained the authorisation provided for in Article 94.

(*Law of 25 August 2006*) "**Art. 122** A fine of five hundred to ten thousand euro shall be imposed on the directors or members of the management organ, as the case may be, or managers of the management company or the investment company who have not caused the issue and redemption price of the units of the UCI to be determined at the specified intervals or who have not made such prices public according to Article 116 of this Law."

(*Law of 25 August 2006*) "**Art. 123** A penalty of imprisonment from one month to one year and a fine of five hundred to twenty-five thousand euro or either of such penalties shall be imposed upon the founders, directors or members of the management organ, as the case may be, or managers of an investment company who have infringed the provisions of Articles 28 (2), 28 (4), 28 (10) and 31 of this Law; of Article 40 to the extent that it provides that Chapter 4 is subject to Articles 28 (2), 28 (4), 28 (10) and 31 of this Law; of Articles 41 to 52 of this Law; of Article 71 of this Law to the extent that it provides that Chapter 10 is subject to Articles 28 (2) a), 28 (4), 28 (10) and 31 of this Law; of the regulations implementing Article 72 of this Law and of the regulations implementing Article 75 of this Law."

(*Law of 25 August 2006*) "**Art. 124** A penalty of imprisonment of one month to one year and a fine of five hundred to twenty-five thousand euro or either of such penalties shall be imposed upon the directors or members of the management organ, as the case may be, or managers of an investment company who have not convened the extraordinary general meeting in accordance with Article 30 of this Law; Article 40 of this Law to the extent that it provides that Chapter 4 is subject to Article 30 of this Law; Article 71 to the extent that it provides that Chapter 10 is subject to Article 30 of this Law and Article 74 (2) to (4) of this Law."

**Art. 125**  A penalty of imprisonment of three months to two years and a fine of five hundred to fifty thousand euro or either of such penalties shall be imposed on anyone who has carried out or caused to be carried out operations involving the receipt of savings from the public with a view to investment if the UCI for which they acted was not entered on the list.

**Art. 126**  (1) A penalty of imprisonment from one month to one year and a fine of five hundred to twenty-five thousand euro or either of such penalties shall be imposed on the directors of UCIs of the kind referred to in Articles 73 and 76 who failed to observe the conditions imposed upon them by this Law.

(2) The same penalties or either of them only shall be imposed upon the directors of UCIs referred to in Articles 2 and 63 of this Law who, notwithstanding the provisions of Article 99, paragraph (4), have taken measures other than protective measures without being authorised for that purpose by the supervisory commissioner.

## Chapter 19. – Fiscal provisions

**Art. 127**  repealed by the law of 17 December 2010

**Art. 128**  (…) [23]

**Art. 129**  repealed by the law of 17 December 2010

---

[23] Repealed by the law of 19 December 2008.

Repealed by the Law of 17 December 2010

**Art. 130**  Article 44 (1) d) of the amended law of 12th February 1979 concerning value added tax is amended to read as follows: "d) the management of UCIs and pension funds subject to the supervision of the CSSF or the Commissariat aux Assurances."

**Art. 131**  The duties of the registration administration (*Administration de l'Enregistrement*) include the fiscal control of UCIs.

If, at any date after the constitution of the undertakings referred to in this Law, the said administration ascertains that such undertakings are engaging in operations which fall outside the framework of the activities authorised by this Law, the fiscal provisions provided for in Articles 127 to 129 shall cease to be applicable.

Moreover, the registration administration may levy a fiscal fine of 0.2% on the aggregate amount of the assets of the undertakings.

## Chapter 20. – Special provisions in relation to the legal form

**Art. 132**  (1) The investment companies entered in the list provided for by Article 94 (1) may be converted into SICAVs and their articles of incorporation may be brought into harmony with the provisions of Chapter 3, or as the case may be, Chapter 10 of this Law by resolution of a general meeting passed at a majority of two thirds of the votes of the shareholders present or represented regardless of the portion of the capital represented.

(2) The common funds referred to in Chapter 2 or, as the case may be, in Chapter 9 of this Law may on the same conditions as those laid down in paragraph (1) above, convert themselves into a SICAV governed by Chapter 3 or, as the case may be, Chapter 10 of this Law.

**Art. 133**  (1) UCIs may be constituted with multiple compartments, each compartment corresponding to a distinct part of the assets and liabilities of the UCI.

(2) The constitutional documents of the UCI must expressly provide for that possibility and the applicable operational rules. The issue prospectus must describe the specific investment policy of each compartment.

(3) The shares and units of UCIs with multiple compartments may be of different value with or without indication of a par value depending on the legal form which has been chosen.

(4) Common funds with multiple compartments may, by separate management regulations, determine the characteristics of and rules applicable to each compartment.

(5) The rights of investors and of creditors concerning a compartment or which have arisen in connection with the creation, operation or liquidation of a compartment are limited to the assets of that compartment, unless a clause included in the constitutional documents provides otherwise.

The assets of a compartment are exclusively available to satisfy the rights of investors in relation to that compartment and the rights of creditors whose claims have arisen in connection with the creation, the operation or the liquidation of that compartment, unless a clause included in the constitutional documents provides otherwise.

For the purpose of the relations as between investors, each compartment will be deemed to be a separate entity, unless a clause included in the constitutional documents provides differently.

(6) Each compartment of an undertaking may be separately liquidated without such separate liquidation resulting in the liquidation of another compartment. Only the liquidation of the last remaining compartment of the UCI will result in the liquidation of the UCI as referred to in Article 106 (1) of this Law.

(*Law of 17 December 2010*)

(7) "A compartment of a UCI may, subject to the conditions set out in the management regulations or the constitutional documents as well as in the prospectus, subscribe, acquire and/or hold securities to be issued or already issued by one or several other compartments of the same UCI without this UCI, when it is constituted in corporate form, being subject to the requirements regarding the subscription, acquisition and/or holding by a company of its own shares set out in the law of 10 August 1915 concerning commercial companies, as amended under the conditions however, that:
- the target compartment does not, in turn, invest in the compartment invested in this target compartment; and
- no more than 10% of the assets that the target compartments, contemplated for acquisition, may be globally invested in units of other UCIs in accordance with their management regulations or their constitutional documents; and

Repealed by the Law of 17 December 2010

- the voting rights, if any, which might appear on the securities concerned will be suspended for as long as they are held by the relevant compartment and without prejudice to an appropriate treatment in accounting and in the periodical reports; and
- in any case, as long as these securities are held by the UCI, their value shall not be taken into account for the calculation of UCI's net assets for the control of the minimum threshold of net assets imposed by this law; and
- there is no duplication of management/subscription or redemption fees between these fees of the compartment of the UCI which invested in the target compartment and this target compartment."

*(Law of 25 August 2006)*

**Art. 133bis**   All the provisions of this law referring to the "public limited company" shall be understood as referring also to the "European company (SE)"."

## Chapter 21. – Transitional and repealing provisions

**Art. 134**   (1) UCITS subject to Part I of the Law of 30th March, 1988 on undertakings for collective investment, as amended, established before 13th February, 2002 may, until 13th February, 2007 elect, to remain subject to the prementioned amended Law of 30th March, 1988 or to be governed by this Law. From and including 13th February, 2007, they shall *ipso jure* be governed by this Law.

The establishment of a new compartment does not affect the option that may be exercised pursuant to the preceding paragraph. Such option must be exercised in respect of the UCITS in its entirety, and such exercise will cover all compartments.

(2) UCITS subject to Part I of the Law of 30th March, 1988 on undertakings for collective investment, as amended, established between 13th February, 2002 and the date of entry into force of this Law may until 13th February, 2004 elect to remain subject to the prementioned amended Law of 30th March, 1988 or to be governed by this Law. As from 13th February, 2004 they shall be *ipso jure* governed by this Law.

(3) UCITS within the meaning of Article 1 of the Law of 30th March, 1988 concerning undertakings for collective investment as amended, but excluding those described in Article 2 of such law, established between the date of entry into force of this Law and 13th February, 2004 may elect to be governed by the prementioned amended Law of 30th March, 1988 or by the present Law. As from 13th February, 2004 they shall be *ipso jure* governed by this Law.

(4) To the extent the UCITS referred to in paragraphs (1) to (3) above are investment companies which have been authorised prior to 13th February, 2004, the references in such paragraphs to the present Law do not include Article 27, provided these investment companies may until 13th February, 2007 elect to subject such provision.

(5) UCIs other than the UCITS referred to in paragraphs (1) to (3) established before the entry into force of the present Law will remain subject to the provisions of the Law of 30th March, 1988 on undertakings for collective investment, as amended, until 13th February, 2004. They may however elect to be governed by the present Law as from its entry into force. From and including 13th February, 2004 they shall be *ipso jure* governed by the present Law.

(6) UCIs established between the entry into force of the present Law and 13th February 2004, have the option to be governed by the provisions of this Law or the provisions of the Law of 30th March, 1988 concerning undertakings for collective investment, as amended. From and including 13th February, 2004 they shall be *ipso jure* governed by the present Law.

(7) All UCIs established as from 13th February, 2004 will *ipso jure* be governed by the present Law unless they are subject to a specific separate law.

**Art. 135**   (1) The present Law is applicable to all management companies incorporated under Luxembourg law. For those management companies incorporated under Luxembourg law which exist at the date of its entry into force, all references in their articles of incorporation to the Law of 30th March, 1988 will be deemed to be replaced by references to the present Law. These companies are granted a period of twelve months to comply with the provisions of Article 80 of this Law.

(2) Management companies existing at the date of entry into force of the present law are *ipso jure* subject to the provisions of Chapter 14 and are deemed authorised pursuant to Article 91 (1) of this Law. To the extent that they manage UCITS governed by Directive 85/611/EEC, they must comply with the provisions of Chapter 13 of the present Law no later than 13th February, 2007.

(3) Management companies authorised between the date of entry into force of this Law and 13th February, 2004 have the option to submit themselves to Chapter 13 or to Chapter 14 of this Law. To the extent that they are subject to Chapter 14

Repealed by the Law of 17 December 2010

and that they manage UCITS governed by Directive 85/611/EEC, they must comply with the provisions of Chapter 13 no later than 13th February, 2007.

(4) Only management companies authorised pursuant to the provisions of Chapter 13 of this Law may benefit from the provisions of Directive 85/611/EEC in respect of the freedom of establishment and free provision of services.

(5) Investment firms within the meaning of Article 13 (1) of the Law of 5th April, 1993 on the financial sector, as amended, which are only authorised to provide the services described in Section A item 3 and in Section C items 1 and 6 of Annex II of such law, may be authorised pursuant to the present Law to manage common funds and investment companies and to call themselves "management companies". In such case, these investment firms must waive the authorisation obtained pursuant to Directive 93/22/EEC. They then become subject, depending on the date when they obtain their authorisation, to paragraph (1) or paragraph (2) above.

**Art. 136** References to the present Law may be made by using the following abridged title: "Law of 20th December, 2002 on undertakings for collective investment".

**Art. 137** The Law of 30th March, 1988 on undertakings for collective investment, as amended, is repealed effective on 13th February, 2007.

**Art. 138** The present Law shall enter into force the first day of the month following its publication in the *Mémorial*.

## ANNEX I

## SCHEDULE A

| 1. Information concerning the common fund | 1. Information concerning the management company | 1. Information concerning the investment company |
|---|---|---|
| 1.1. Name | 1.1. Name or style, legal form, registered office and head office, if different from the registered office | 1.1. Name or style, legal form, registered office and head office, if different from the registered office |
| 1.2. Date of establishment of the fund. Indication of duration, if limited | 1.2. Date of incorporation of the company. Indication of duration, if limited | 1.2. Date of incorporation of the company. Indication of duration, if limited |
| 1.3. In the case of common funds having different investment compartments, indication of the compartments | 1.3. If the company manages other common funds, indication of those other funds | 1.3. In the case of investment companies having different investment compartments, indication of the compartments |
| 1.4. Statement of the place where the management regulations, if they are not annexed, and periodical reports may be obtained | | 1.4. Statement of the place where the instruments of incorporation, if they are not annexed, and periodical reports may be obtained |
| 1.5. Brief indications relevant to unitholders of the tax system applicable to the fund. Details of whether deductions are made at source from the income and capital gains paid by the fund to unitholders | | 1.5. Brief indications relevant to unitholders of the tax system applicable to the company. Details of whether deductions are made at source from the income and capital gains paid by the company to unitholders |
| 1.6. Accounting and distribution dates | | 1.6. Accounting and distribution dates |
| 1.7. Names of the persons responsible for auditing the accounting information referred to in Article 113 | | 1.7. Names of the persons responsible for auditing the accounting information referred to in Article 113 |
| | 1.8. Names and positions in the company of the members of the administrative, management and supervisory bodies. Details of their main activities outside the company where these are of significance with respect to the company | 1.8. Names and positions in the company of the members of the administrative, management and supervisory bodies. Details of their main activities outside the company where these are of significance with respect to the company |
| | 1.9. Amount of the subscribed capital with an indication of the paid-up | 1.9. Capital |

capital

| | | |
|---|---|---|
| 1.10. Details of the types and main characteristics of the units and in particular:<br> – the nature of the right (real, personal or other) represented by the unit,<br>– original securities or certificates providing evidence of title; entry in a register or in an account,<br> – characteristics of the units: registered or bearer. Indication of any denominations which may be provided for,<br> – indication of unitholders' voting rights if these exist,<br> – circumstances in which winding-up of the fund can be decided on and winding-up procedure, in particular as regards the rights of unitholders | | 1.10. Details of the types and main characteristics of the shares and in particular:<br> – original securities or certificates providing evidence of title; entry in a register or in an account,<br>– characteristics of the shares: registered or bearer. Indication of any denominations which may be provided for,<br> – indication of share-holders' voting rights,<br>– circumstances in which winding-up of the investment company can be decided on and winding-up procedure, in particular as regards the rights of share-holders |
| 1.11. Where applicable, indication of stock exchanges or markets where the units are listed or dealt in | | 1.11. Where applicable, indication of stock exchanges or markets where the shares are listed or dealt in |
| 1.12. Procedures and conditions of issue and/or sale of units | | 1.12. Procedures and conditions of issue and/or sale of shares |
| 1.13. Procedures and conditions for the repurchase or redemption of units, and circumstances in which the repurchase or redemption may be suspended. In the case of common funds having different investment compartments, information on how a unitholder may pass from one compartment into another and the charges applicable in such case. | | 1.13. Procedures and conditions for the repurchase or redemption of shares, and circumstances in which repurchase or redemption may be suspended. In the case of investment companies having different investment compartments, information on how a shareholder may pass from one compartment into another and the charges applicable in such case. |
| 1.14. Description of rules for determining and applying income | | 1.14. Description of rules for determining and applying income |
| 1.15. Description of the common fund's investment objectives including its financial objectives (e.g. capital growth or income), investment policy (e.g. specialisation in geographical or industrial sectors), any limitations on that investment policy and an indication of any borrowing techniques and instruments or powers which may be used in the management of the fund | | 1.15. Description of the company's investment objectives, including financial objectives (e.g. capital growth or income), investment policy (e.g. specialisation in geographical or industrial sectors), any limitations on that investment policy and an indication of any borrowing techniques and instruments or powers which may be used in the management of the company |
| 1.16. Rules for the valuation of assets | | 1.16. Rules for the valuation of assets |
| 1.17. Determination of the sale or issue price and the redemption or repurchase price of units, in particular:<br>– the method and frequency of the calculation of those prices – information concerning the charges relating to the sale, issue, repurchase, redemption of units – the means, places and frequency of the publication of those prices | | 1.17. Determination of the sale or issue price and the redemption or repurchase price of shares, in particular: – the method and frequency of the calculation of those prices – information concerning the charges relating to the sale, issue, repurchase, redemption of shares – the means, places and frequency of the publication of those prices |
| 1.18. Information concerning the manner, amount and calculation of remuneration payable by the fund to the management company, the | | 1.18. Information concerning the manner, amount and calculation of remuneration paid by the company to its directors, and members of the |

43

| depositary or third parties, and reimbursement of any costs by the fund to the management company, to the depositary or to third parties | | administrative, management and supervisory bodies, to the depositary, or to third parties, and reimbursement of any costs by the company to its directors, to the depositary or to third parties |
| --- | --- | --- |

2.      Information concerning the depositary:

2.1.   Name or style, legal form, registered office and head office if different from the registered office;
2.2.   Main activity.

3.      Information concerning the advisory firms or external investment advisers who give advice under contract which is paid for out of the assets of the UCITS:

3.1.   Name or style of the firm or name of the adviser;
3.2.   Material provisions of the contract with the management company or the investment company which may be relevant to the unitholders, excluding those relating to remuneration;
3.3.   Other significant activities.

4.      Information concerning the arrangements for making payments to unitholders, repurchasing or redeeming units and making available information concerning the UCITS. Such information must in any case be given in Luxembourg. In addition, where units are marketed in another Member State, such information shall be given in respect of that Member State in the prospectus circulated therein.

5.      Other investment information:

5.1.   Historical performance of the common fund or of the investment company (where applicable) – such information may be either included in or attached to the prospectus.
5.2.   Profile of the typical investor for whom the common fund or the investment company is designed.
5.3.   In case an investment company or a common fund have different investment compartments, the information referred to in items 5.1. and 5.2. must be given for each compartment.

6.      Economic information

6.1.   Possible expenses or fees, other than the charges mentioned in item 1.17., distinguishing between those to be paid by the unitholder and those to be paid out of the common fund's or of the investment company's assets.


## SCHEDULE B

Information to be included in the periodical reports

*I.   Statement of assets and liabilities:*
–        transferable securities and money market instruments,
–        bank balances,
–        other assets,
–        total assets,
–        liabilities,
–        net asset value.

*II..  Number of units in circulation*

*III.  Net asset value per unit*

*IV.  Portfolio, distinguishing between:*

a) transferable securities and money market instruments admitted to official exchange listing;
b) transferable securities and money market instruments dealt in on another regulated market;
c) recently issued transferable securities and money market instruments of the type referred to in Article 41 (1) d);
d) other transferable securities and money market instruments of the type referred to in
Article 41 (2) a);

44

Repealed by the Law of 17 December 2010

and analysed in accordance with the most appropriate criterion in light of the investment policy of the UCITS (e.g. in accordance with economic, geographical or currency criteria) as a percentage of net assets; for each of the above investments the proportion it represents of the total assets of the UCITS should be stated.

Statement of changes in the composition of the portfolio during the reference period.

V.    *Statement of the developments concerning the assets of the UCITS during the reference period including the following:*
–    income from investments,
–    other income,
–    management charges,
–    depositary's charges,– other charges and taxes,
–    net income,
–    distributions and income reinvested,
–    changes in capital account,
–    appreciation or depreciation of investments,
–    any other changes affecting the assets and liabilities of the UCITS.

VI.    *A comparative table covering the last three financial years and including, for each financial year, at the end of the financial year:*
–    the total net asset value,
–    the net asset value per unit.

VII.    *Details, by category of transactions within the meaning of Article 42 carried out by the UCITS during the reference period, of the resulting amount of commitments.*

### SCHEDULE C

## Contents of the simplified prospectus

Brief presentation of the UCITS
–    when the common fund or the investment company was created and indication of the Member State where the common fund or the investment company has been registered/incorporated,
–    in the case of UCITS having different investment compartments, the indication of this circumstance,
–    management company (when applicable),
–    expected period of existence (when applicable),
–    depositary,
–    auditors,
–    financial group (e.g. bank) promoting the UCITS.

Investment Information
–    short definition of the UCITS' objectives,
–    the common fund's or the investment company's investment policy and a brief assessment of the fund's risk profile (including, if applicable, information according to Article 47 and by investment compartment),
–    historical performance of the common fund or investment company (where applicable) and a warning that this is not an indicator of future performance (such information may be either included in or attached to the prospectus),
–    profile of the typical investor the common fund or the investment company is designed for.

Economic information
–    tax regime,
–    entry and exit commissions,
–    other possible expenses or fees, distinguishing between those to be paid by the unitholder and those to be paid out of the common fund's or the investment company's assets.

Commercial information
–    how to buy the units,
–    how to sell the units,
–    in the case of UCITS having different investment compartments, how to pass from one investment compartment into another and the charges applicable in such case,
–    when and how dividends on units or shares of the UCITS (if applicable) are distributed,
–    frequency and where/how prices are published or made available.

Additional information

–         statement that, on request, the full prospectus and the annual and semi-annual reports may be obtained free of charge before the conclusion of the contract and afterwards,
–         competent authority,
–         indication of a contact point (person/department, timing etc.) where additional explanations may be obtained if needed,
–         publication date of the prospectus.

For UCITS with multiple compartments, the investment information and the economic and commercial information must be given for each compartment.


**ANNEX II**


*Functions included in the activity of collective portfolio management:*


– Investment management.
– Administration:
  (a) legal and fund management accounting services;
  (b) customer inquiries;
  (c) valuation of the portfolio and pricing of the units (including tax returns);
  (d) regulatory compliance monitoring;
  (e) maintenance of unitholder register;
  (f) distribution of income;
  (g) unit issues and redemptions;
  (h) contract settlements (including certificate dispatch);
  (i) record keeping.
– Marketing