**PORZIO BROMBERG & NEWMAN P.C.**
Brett S. Moore (BM-0014)
156 West 56th Street
Suite 803
New York, New York 10019-3800
(212) 265-6888 (telephone)
(212) 957-3983 (fax)

*Attorneys for Defendants Luxalpha Sicav as represented by its Liquidators Maitre Alain Rukavina and Paul Laplume, Maitre Alain Rukavina and Paul Laplume, in their capacities as liquidators and representatives of Luxalpha Sicav*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff, | SIPA LIQUIDATION |
| -v- | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC. | |
| Defendant. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04285 (SMB) |
| Plaintiff, | |
| -v- | |
| UBS AG, et al. | |
| Defendants. | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR CLAIM DETERMINATION AND ALLOWANCE

4465887

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

III.    ARGUMENT .................................................................................................................2

    A.    Neither 502(d) Nor The Assertion Of Interest Precludes The Allowance Of Luxalpha's Claims.................................................................................................2

    B.    Luxalpha's Cross-Motion Does Not Seek An Advisory Opinion ...........................5

    C.    Luxalpha's 502(h) Claim Is Against The Customer Property Estate .......................8

        1.    The Purpose And Effect Of Section 502(h) Claims....................................9

        2.    Section 502(h) Is Not Inconsistent With SIPA ...........................................11

    D.    The Trustee's Assertion That Luxalpha Has "Disavowed" Its Claims Is Both Factually And Legally Incorrect ...........................................................................14

    E.    The Trustee's Equitable Subordination Arguments Lack Merit ...........................15

        1.    Although The Trustee Can Plead Alternative Claims, Equitable Claims Are Not Available Where Adequate Legal Remedies Exist.....................15

        2.    The Trustee Has Not Alleged "Additional Harm" ...................................16

            i.    Oreades Alleged Fictitious Profit Argument .................................17

            ii.    The "Enabling" And "Perpetuating" Argument .............................19

CONCLUSION.....................................................................................................................20

4465887

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ansonia Assoc. v. Ansonia Residents Ass'n,* 78 A.D.2d 211, 434 N.Y.S.2d 370
(1980) ................................................................................................................ 15

*Aozora Bank Ltd. v. SIPC (In re Bernard L. Madoff Inv. Sec., LLC),* 480 B.R. 117
(S.D.N.Y. 2012) ................................................................................................. 18

*County of Sacramento v. Hackney (In re Hackney),* 93 B.R. 213
(Bankr.N.D.Cal.1988) ....................................................................................... 10

*Fleet National Bank v. Gray (In re Bankvest Capital Corp.),* 375 F.3d 51 (1st Cir.
2004) ............................................................................................................... 9, 10

*Gouveia v. The RDI Group, Inc. (In re Globe Bldg. Materials, Inc.),* 325 B.R. 253
(Bankr. N.D. Ind. 2005) ...................................................................................... 5

*Halperin v. Moreno (In re Green Field Energy Servs.),* 594 B.R. 239 (Bankr. D.
Del. 2018) ............................................................................................................ 5

*Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.),* 83
B.R. 880 (D.N.J. 1988) .............................................................................. 9, 12, 13

*Ingersoll–Rand Co. v. Textron, Inc.,* No. 96 Civ. 2582 (MBM), 1996 WL 680266
(S.D.N.Y. Nov. 25, 1996). (Opp. Mem. pp. 33-34) ........................................... 6

*In re Adler Coleman Clearing Corp.,* 195 B.R. 266 (Bankr. S.D.N.Y. 1996) ............... 12

*In re Bernard L. Madoff Inv. Securitiers., LLC,* 654 F.3d 229 (2d Cir. 2011), *cert.
denied,* 133 S. Ct. 24 (2012) ............................................................................ 3, 18

*In re Bernard L. Madoff Inv. Sec., LLC,* 708 F.3d 422 (2d Cir. 2013) ......................... 18

*In re Bruno Machinery Corp.,* 435 B.R. 819 (Bankr. N.D.N.Y. 2010) ........................... 5

*In re Cubic Energy, Inc.,* 587 B.R. 849 (Bankr. D. Del. 2018) ....................................... 6

*In Re Eakin,* 154 F.2d 717 (2d Cir.1946) ...................................................................... 15

*In re Kirchoff Frozen Foods, Inc.,* 496 F.2d 84 (9th Cir.1974) ...................................... 15

*In re Moody,* 131 F. 525 (N.D.Iowa 1904) .................................................................... 10

*In re Opus East, LLC,* 528 B.R. 30 (Bankr. D. Del. 2015) .............................................. 5

*In re Red Dot Scenic, Inc.*, 313 B.R. 181 (Bankr. S.D.N.Y. 2004) .................................................5

*In Re Stable Mews Associates, Inc.,* 41 B.R. 594 (Bankr.S.D.N.Y.1984) .........................................9

*Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130 (2d Cir. 2000) ................................................3

*Kriegman v. 1127477 Alberta Ltd. (In re LLS Am., LLC)*, No. 12-CV-324-RMP,
    2015 WL 328918 (E.D. Wash. Jan. 23, 2015).................................................................17

*Le Café Crème v. Le Roux (In re Le Café Creme, Ltd.)*, 244 B.R. 221 (Bankr.
    S.D.N.Y. 2000) ..............................................................................................................17

*McGowan v. Wachovia Bank, N.A.* (*In re Dreier LLP*), 453 B.R. 499 (Bankr.
    S.D.N.Y. 2011) (SMB) .............................................................................................16, 20

*Misty Management Corp. v. Lockwood,* 539 F.2d 1205 (9th Cir.1976)..........................................10

*Monzack v. ADB Inv'rs (In re EMB Assocs., Inc.)*, 92 B.R. 9 (Bankr. D.R.I. 1988) ....................17

*New York TRW Title Insurance v. Wade's Canadian Inn and Cocktail Lounge,
    Inc.,* 199 A.D.2d 661, 605 N.Y.S.2d 139 (1993).........................................................15

*Official Comm. of Unsecured Creditors of Toy King Distribs. v. Liberty Savs.
    Bank (In re Toy King Distribs. Inc.)*, 256 B.R. 1 (Bankr. M.D. Fla. 2000)..............17

*Picard v. Alpha Prime Fund, Ltd., et al.*, Adv. Pro. No. 09-01364 (SMB) (Bankr.
    S.D.N.Y. Sept. 19, 2019), ECF No. 569 .......................................................................7

*Picard v. Ceretti et al.,* Adv. Pro. No. 09-1161 (SMB) (Bankr. S.D.N.Y.), ECF
    No. 199 .............................................................................................................................1

*Picard v. Lustig et al*, 2017 WL 6205381 (Bankr. S.D.N.Y. December 6, 2017)
    (SMB)..............................................................................................................................19

*Picard v. Nelson,* Adv. Pro. No.10-04377 (SMB) (Bankr. S.D.N.Y. Nov. 21,
    2019), ECF No. 200 at pp. 20-21).................................................................................4

*Picard v. Oreades Sicav et al,* Adv. Pro. No. 10-05120 (Bankr. S.D.N.Y. (SMB)......................18

*Picard v. Zraick,* Adv. Pro. No.10-05257 (SMB) (Bankr. S.D.N.Y. Feb. 2, 2012),
    ECF No. 15, ¶ 2 ..............................................................................................................4

*Sarhank Group v. Oracle Corp.*, 2014 WL 324881 (S.D.N.Y. 2004) ............................................2

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (BRL),
    2009 WL 458769, at *1-2 (Bankr. S.D.N.Y. Feb. 24, 2009)......................................13

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Sec. Inv'r Prot.
    Corp.)*, 568 B.R. 481 (Bankr. S.D.N.Y. 2017) ............................................................13

iii

*Sec, Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41 (Bankr.
S.D.N.Y. 2014) (SMB), *aff'd Diana Melton Trust v. Picard (In re Bernard L.
Madoff Inv. Sec. LLC)* 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016), *aff'd In re
Bernard L. Madoff Inv. Sec. LLC*, 697 Fed.Appx. 708 (2d Cir. 2017, Summary
Order) ...........................................................................................................................19, 20

*Sec. Inv'r Prot. Corp. v. Bernard. L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-
01789 (SMB), 2018 WL 1442312, at *15, (Bankr. S.D.N.Y. Mar. 22, 2018) ......................3, 4

*Sec. Inv'r Prot. Corp. v. Lehman Bros. Inc.*, 433 B.R. 127 (Bankr. S.D.N.Y. 2010) ............11, 12

*Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y.
1999) ...........................................................................................................................15, 20

*United States v. Fields,* 783 F.2d 1382 (9th Cir.1986) .............................................................9

*Verco Indus. v. Spartan Plastics (In re Verco Indus.),* 704 F.2d 1134 (9th
Cir.1983) ..............................................................................................................................10

*Wickham Contracting Co., Inc. v. Local Union No. 3, IBEW*, 995 F.2d 831 (2d
Cir. 1992) ..........................................................................................................................2, 3

*Zicherman v. Korean Air Lines Co.,* 814 F.Supp. 605 (S.D.N.Y. 1993), *aff'd in
part, rev'd in part on other grounds,* 43 F.3d 18 (2d Cir. 1994), *aff'd in part,
rev'd in part on other grounds,* 516 U.S. 217 (1996) ...............................................................3, 4

## STATUTES

11 U.S.C. § 502(d) .......................................................................................................................2, 8

11 U.S.C. § 502(h) ....................................................................................................... *passim*

11 U.S.C. § 546(e) ..........................................................................................................................1

11 U.S.C. § 549 ............................................................................................................................12

11 U.S.C. § 548(a)(1)(A) ...............................................................................................................1

11 U.S.C. § 548(c) .......................................................................................................................17

11 U.S.C. § 550 .........................................................................................................................5, 13

11 U.S.C. § 562 ............................................................................................................................12

15 U.S.C. § 78fff(b) .......................................................................................................................8

15 U.S.C. § 78fff–2(b) .................................................................................................................12

28 U.S.C. § 1961............................................................................................................................5

iv

## OTHER AUTHORITIES

1 Coquillette, MOORE'S FEDERAL PRACTICE 3D, § 2.03[3], p. 2-27 (3d ed. 1999)......................................................................................................................16

Collier on Bankruptcy, § 502.09[1] (16th ed. 2013) ........................................................9

David Gray Carlson, *Security Interests in the Crucible of Voidable Preference Law*, 1995 U. Ill. L.Rev. 211 (1995) ..........................................................................11

Harry M. Flechtner, *Preferences, Post-petition Transfers, and Transactions Involving a Debtor's Downstream Affiliate,* 5 Bankr.Dev. J. 1, 20 (1987)...............................11

Michael F. Jones, *Structuring the Deed in Lieu of Foreclosure Transaction,* 19 Real Prop. Prob. & Tr. J. 58, 64–65 (1984).................................................................11

Rafael I. Pardo, *On Proof of Preferential Effect,* 55 Ala. L.Rev. 281, 281 (2004) .......................10

Defendants Luxalpha Sicav ("Luxalpha") as represented by its Liquidators Maitre Alain Rukavina and Mr. Paul Laplume, and Maitre Alain Rukavina and Mr. Paul Laplume, in their capacities as liquidators and representatives of Luxalpha Sicav (collectively, the "Liquidators" and together with Luxalpha, the "Defendants"), by and through their undersigned counsel, respectfully submit this Reply Memorandum of Law ("Reply") in support of Luxalpha's Cross-Motion for claim determination and allowance ("Cross-Motion").

## PRELIMINARY STATEMENT

In his opposition to the Cross-Motion ("Tr. Opp."), the Trustee asserts that this is a "willful blindness" case, and he is not alleging that Luxalpha had "actual knowledge" of the BLMIS[1] fraud. At a minimum, therefore, Bankruptcy Code section 546(e) requires dismissal of all of the Trustee's claims against Luxalpha except for Count One (equitable subordination) and Count Two (intentional fraudulent transfers under § 548(a)(1)(A)). Despite this not being an "actual knowledge" case, the Trustee's opposition makes clear that he wishes to spend countless more years scouring the globe in a seemingly never-ending search for facts to support his bad faith allegations, so that he can attempt to equitably subordinate Luxalpha's claims. But no claims have been subordinated in this case to date, and the Trustee has even settled with some defendants where he has been found to have sufficiently alleged actual knowledge.[2]

Given this unfortunate approach towards Luxalpha, the Cross-Motion provides an avenue to bring an end to litigation that's now been pending for a decade. The Trustee would recover a

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to such term in the Cross-Motion.

[2] See e.g., *Picard v. Ceretti et al.,* Adv. Pro. No. 09-1161 (SMB) (Bankr. S.D.N.Y.), ECF No. 199 (Memorandum Decision Granting In Part And Denying In Part Motion To Dismiss) and ECF No. 413 (Kingate Settlement). The results of such settlements are similar to what Luxalpha would receive if the Cross-Motion is granted.

substantial sum for the benefit of all BLMIS customers, a substantial reserve that he's been holding on account of Luxalpha's claims would be released, and at long last, Luxalpha and its investors would be able to begin realizing some recoveries. As explained below, none of the arguments raised in the Tr. Opp. precludes this Court from granting the Cross-Motion.

## I.    ARGUMENT

### A.    Neither 502(d) Nor The Assertion Of Interest Precludes The Allowance Of Luxalpha's Claims

The Trustee mistakenly argues that "Section 502(d) requires a transferee to pay pre- and post-judgment interest on a fraudulent transfer judgment before the transferee's claim may be allowed." Tr. Opp. p. 32. The actual text of Section 502(d) states that "the court shall disallow any claim of any entity from which property is recoverable . . . unless such entity . . . has paid the amount . . . for which such entity . . . is liable . . . ." 11 U.S.C. § 502(d). Section 502(d) makes no mention of having to pay interest on an avoidable transfer as a condition to claim allowance.

It is well-settled that where, as is the case here, the relevant statute is silent regarding an award of prejudgment interest, such relief is entirely within the Court's discretion and should only be granted when "such an award is fair, equitable and necessary to compensate the wronged party fully." *Sarhank Group v. Oracle Corp.*, 2014 WL 324881 at *2 (S.D.N.Y. 2004) (quoting *Wickham Contracting Co., Inc. v. Local Union No. 3, IBEW*, 995 F.2d 831, 835 (2d Cir. 1992)). In *Wickham*, the Second Circuit set forth the test on whether to award discretionary prejudgment interest, stating a reviewing court should be guided by four considerations: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham*, 995 F.2d at 833-34. Such "other general principles" include whether such a grant would overcompensate the plaintiff.

2

*Id.* at 834. Ultimately, the purpose of prejudgment interest is to fully compensate the plaintiff, by taking into account the time-value of money. *See Zicherman v. Korean Air Lines Co.,* 814 F.Supp. 605, 608 (S.D.N.Y. 1993), *aff'd in part, rev'd in part on other grounds,* 43 F.3d 18 (2d Cir. 1994), *aff'd in part, rev'd in part on other grounds,* 516 U.S. 217 (1996).

The real victims here are Luxalpha investors who have been deprived of a distribution for more than a decade. However, even if one assumed that the BLMIS estate is the "wronged party" for purposes of this analysis, the Trustee is still not entitled to prejudgment interest because no actual damages have been suffered. Luxalpha is very large substantial net loser—the amount of Luxalpha funds that were deposited into account 1FR108 (the "Account") totals $1,514,049,766, and the withdrawals total $751,566,000. *See* PSAC, Exhibit B. Thus, under the Trustee's cash-in cash-out methodology that was adopted by the Second Circuit in *In re BLMIS*, 654 F.3d 229, 240 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24 (2012) (the "Net Equity Decision"), Luxalpha has an initial net equity customer claim in the amount of $762,483,766, before considering section 502(h) of the Bankruptcy Code. In other words, the Trustee's estate has been holding $762,483,766 of Luxalpha's funds since the BLMIS liquidation proceeding began on December 11, 2008 (the "Filing Date"). Even if the entirety of the $751,566,000 is eventually avoided and required to be returned to the estate, the Trustee has been holding in excess of that sum (i.e., $762,483,766), in the Trustee's accounts since the Filing Date and which has been seemingly used for investment purposes. *See e.g., Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), Trustee's Twenty-Third Interim Report For The Period October 1, 2019 Through March 31, 2020, ECF No. 19502 at Exhibit A. Thus, any actual damages alleged by the Trustee are entirely illusory. *See Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000)) ("The purpose of prejudgment interest is not to punish

3

Defendants or to provide Plaintiff with a windfall, rather prejudgment interest . . . aims to make the plaintiff whole.").

Thus, considering the fairness and equities involved, and the remedial nature of returning fraudulent transfers when the Trustee is essentially holding a deposit in excess of the amount sought to be recovered, awarding interest here would only harm Luxalpha and its investors. Simply stated, an award of prejudgment interest under these facts would not be in line with the purpose of prejudgment interest---to fully compensate the plaintiff by taking into account the time-value of money. *Zicherman*, 814 F.Supp. at 608.

None of the cases cited by the Trustee support a different result because either the Court did not award prejudgment interest, or, they are fictitious profit cases. *See e.g.*, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Proc. No. 08-01789 (SMB), 2018 WL 1442312, at *15, (Bankr. S.D.N.Y. Mar. 22, 2018) ("This battle over interest has been fought out entirely in isolated footnotes included in lengthy legal memoranda. Since the Trustee has sought to reserve his right to litigate the amount of interest after judgment is entered, the parties can at that time also address in a more conventional manner whether a discretionary award of interest is appropriate."); *Picard v. Zraick*, Adv. Pro. No. 10-05257 (SMB) (Bankr. S.D.N.Y. Feb. 2, 2012), ECF No. 15, ¶ 2 (action brought to recover the transfers of fictitious profits ); *Picard v. Nelson*, Adv. Pro. No. 10-04377 (SMB) (Bankr. S.D.N.Y. Nov. 21, 2019), ECF No. 200 at pp. 20-21 (detailing the fictitious profits received by defendants).

The other cases cited by the Trustee are equally inapplicable as none involved a factual scenario like in the case *sub judice* where the creditor was a substantial net loser investor in a Ponzi scheme, and the trustee was in possession of creditor assets in excess of the amount sought to be recovered from the creditor during the pendency of the fraudulent conveyance action. *See*

4

*e.g., In re Red Dot Scenic, Inc.*, 313 B.R. 181, 185 (Bankr. S.D.N.Y. 2004) (non-Ponzi case awarding post-judgment interest on unpaid $18,000 fraudulent conveyance judgment); *Halperin v. Moreno (In re Green Field Energy Servs.)*, 594 B.R. 239, 259 (Bankr. D. Del. 2018) (non-Ponzi case awarding interest on a judgment based on contract breaches); *Gouveia v. The RDI Group, Inc. (In re Globe Bldg. Materials, Inc.)*, 325 B.R. 253, 255, 264 (Bankr. N.D. Ind. 2005) (non-Ponzi case awarding pre-judgment interest at the rate of 1.41% per annum as well as post-judgment interest on a preference judgment against equipment supplier).

Finally, although under the facts presented the Court can, and, respectfully, should, find that the Trustee is not entitled to an award of pre-judgment interest in ruling on the Cross-Motion, the Trustee's assertion that 9% is an appropriate interest rate is premature and not ripe for determination. If the Motion is granted, the Cross-Motion denied, and the Trustee eventually obtains a judgment, at that point the issue of any appropriate interest rate can be determined. And Luxalpha reserves all rights relative to the issue of an appropriate interest rate. In all events, an award of 9% prejudgment interest here would equate to a penalty, and be counter to the spirit and purpose of an award of prejudgment interest. *See, e.g., In re Bruno Machinery Corp.*, 435 B.R. 819, 851 (Bankr. N.D.N.Y. 2010) (finding 9% New York statutory interest too high in case for recovery under section 550 of the Bankruptcy Code); *In re Opus East, LLC*, 528 B.R. 30, 108-09 (Bankr. D. Del. 2015) (awarding prejudgment interest on preference and fraudulent transfer claims at the federal rate prescribed in 28 U.S.C. § 1961). For all of these reasons, the request for prejudgment interest does not preclude the Court from granting the Cross-Motion.

### B.    Luxalpha's Cross-Motion Does Not Seek An Advisory Opinion

The Trustee is mistaken when he argues that Luxalpha's Cross-Motion seeks an advisory opinion because it supposedly asks the Court for a legal ruling based on a hypothetical,

5

conjectural, or conditional question, or a factual situation that may never develop, and relies on

*Ingersoll–Rand Co. v. Textron, Inc.*, No. 96 Civ. 2582 (MBM), 1996 WL 680266, at *3

(S.D.N.Y. Nov. 25, 1996). (Opp. Mem. pp. 33-34). In *Ingersoll-Rand* the court declined to find

that an actual controversy exists "when the plaintiff seeks a declaratory judgment of

indemnification rights or obligations relating to a claim that has not yet been asserted by a third

party." *Id.* Far from presenting a "hypothetical, conjectural, or conditional question, or a factual

situation that may never develop," here, there are existing rights and claims pending between the

parties that are ripe for determination. These include the allowance of Luxalpha's claims;

including the extent and priority of any claim arising under section 502(h) of the Bankruptcy

Code; and the Trustee's assertion of his right to pursue equitable subordination.

Furthermore, the *In re Cubic Energy, Inc.*, 587 B.R. 849, 856-57 (Bankr. D. Del. 2018),

case cited by the Trustee entirely undermines his argument:

> [i]n a bankruptcy context, the Third Circuit has determined that an opinion
> is not advisory where it actually invalidates a clause, orders a party to do
> something, or otherwise resolves the parties' litigation. To the extent a
> bankruptcy opinion does 'nothing to resolve whether ... courts would be
> required to abide by it, ... the opinion ha[s] no legal effect' and is merely
> advisory. But an opinion that has some valid 'legal effect' will not be
> advisory, even if the proceeding 'sought to impact [a] state proceedings.'"

587 B.R. at 855 (internal citations omitted). Here, the Cross-Motion would resolve the litigation,

and would order the Trustee to pay the Luxalpha estate on its claims—something the Trustee has

refused to do for over ten years. That can hardly be considered advisory.

Citing to *Cubic Energy*, the Trustee argues that the Cross-Motion cannot be decided

before he engages in yet additional "fact finding" even though he has been doing so for more

than twelve years at this point. (Tr. Opp. p. 34). But there are no underlying factual issues that

require discovery relative to Luxalpha's claims—there are only legal issues. Specifically, there is

6

no factual dispute regarding the amount of Luxalpha funds that were deposited into the Account-$1,514,049,766, nor the amount of withdrawals from the Account-$751,566,000. *See* PSAC, Exhibit B. Thus, under the Net Equity Decision, Luxalpha has an initial net equity customer claim in the amount of $762,483,766, before determining its claim under section 502(h) of the Bankruptcy Code.

Similarly, calculating Luxalpha's section 502(h) claim requires no fact finding. Bankruptcy Code section 502(h) states, "[a] claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(h). Thus, in accordance with section 502(h) of the Bankruptcy Code, Luxalpha will have a claim in any amount recovered by the Trustee, "the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(h). There is simply no basis to continue to scour the globe to search for "facts" to determine the amount and validity of Luxalpha's claims.

Setting aside the Trustee's plea to continue his discovery efforts, the Cross-Motion does present certain limited legal issues that are ripe for adjudication, such as the extent and priority status of a claim under 11 U.S.C. § 502(h) in the context of this case. The Trustee argues that the Court previously declined to rule on the application of 502(h) in a similar proceeding, and wrongly states that the Court held "that such a ruling would be 'premature' if the Court first determined that the Trustee had adequately pleaded bad faith in his complaint." (Tr. Opp. pp. 34-35 citing Tr. of Hr'g on Mot. for Leave to Am. and to Sever at 42:43, *Picard v. Alpha Prime Fund, Ltd., et al.*, Adv. Pro. No. 09-01364 (SMB) (Bankr. S.D.N.Y. Sept. 19, 2019), ECF No. 569 ("Alpha Prime"). That is not at all what the Court ruled. The Court held "[t]he issue

7

regarding the status or priority of Alpha Prime's claim under Section 502H is premature **because right now, it's subject to disallowance under Bankruptcy Code Section 502D**." *Id.* at 43:22-25 (emphasis added), and attached as **Exhibit "1"** to Supplemental Moore Declaration submitted herewith in support of the Reply (the "Supp. Moore Decl.").

As the Court is aware, in Alpha Prime, the Trustee and Alpha Prime fund entered into a partial settlement agreement whereby, among other provisions, the parties agreed that the Trustee would be permitted to pursue his "six-year" fraudulent transfer claims against Alpha Prime. Alpha Prime, Adv. Pro. No. 09-01364 (SMB), ECF No. 491. As the Trustee had pending fraudulent transfer claims against Alpha Prime, and the Court held it was premature to rule on a section 502(h) claim because all of Alpha Prime's claims were disallowed pursuant to section 502(d) of the Bankruptcy Code until the pending fraudulent transfer claims were resolved.

As explained in the Cross-Motion, if granted, any of the Trustee's surviving fraudulent transfer claims against Luxalpha would be paid. (Cross-Motion at pp. 39-41). And with no outstanding fraudulent transfer claims pending, section 502(d) of the Bankruptcy Code would no longer require disallowance of any of Luxalpha's claims. Thus, unlike the situation in Alpha Prime, here, with section 502(d)'s application eliminated, the extent and validity of any claim under section 502(h) is ripe for consideration and determination by the Court.

### C.    Luxalpha's 502(h) Claim Is Against The Customer Property Estate

The Trustee argues that section 502(h) of the Bankruptcy Code is somehow inconsistent with SIPA. (Tr. Opp. pp. 44-48). While under SIPA, a "liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7" of the Bankruptcy Code "to the extent consistent" with SIPA, SIPA § 78fff(b), the Trustee fails to cite to a SIPA section that is inconsistent with section

8

502(h) of the Bankruptcy Code.  Likewise, he fails to cite to a single case that holds that claims under section 502(h) of the Bankruptcy Code are only against a debtor's general estate and not the customer property estate.  On the other hand, in *Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*, 83 B.R. 880, 891 (D.N.J. 1988), the court found that the return of an avoided transfer in a SIPA liquidation resulted in a creditor having a claim in the amount of the avoided transfer against the customer property estate.

Relevant SIPA and Bankruptcy Code provisions must be interpreted in tandem to preserve their respective goals and policy objectives. *In Re Stable Mews Associates, Inc.,* 41 B.R. 594, 599 (Bankr.S.D.N.Y.1984) (In reviewing a comprehensive statutory enactment, courts must interpret each section in such a fashion as to preserve an overall sense and design, in light of the policies sought to be achieved.).  And if a statute is susceptible to two meanings, courts should choose the interpretation "that gives full effect to all provisions of the statute." *United States v. Fields,* 783 F.2d 1382, 1384 (9th Cir.1986).

### 1.    The Purpose And Effect Of Section 502(h) Claims

"In short, section 502(h) is intended to ***put a creditor in the same position as it would have been if a recovered transfer had not occurred***, permitting the creditor to assert a claim for amounts owed just as it would if a preferential or other avoidable transfer had not been made."  4 Collier on Bankruptcy, §502.09[1] (16th ed. 2013). (emphasis added).  Courts interpreting section 502(h) of the Bankruptcy Code do not hold that creditors only receive a general unsecured claim as argued by the Trustee (Tr. Opp. at 46).  Rather, claims under section 502(h) are flexible and used to put creditors in the precise position such creditors would have been in but for the transfer at issue.  *Fleet National Bank v. Gray (In re Bankvest Capital Corp.),* 375 F.3d 51, 67-69 (1st Cir. 2004).  The question presented in *Bankvest* was whether a 502(h) claim would be entitled to

9

secured status in order to put the creditor in the same position as it would have been in if a

recovered transfer had never occurred:

> Contrary to appellant, we believe the natural import of this language—especially the words, 'shall be determined, and shall be allowed ... the same as if such claim had arisen before the date of the filing of the petition'—is that the 502(h) claim takes on the characteristics of the original claim, including, in this case, its secured status.

*Id.* at 67. The *Bankvest* court thoroughly analyzed the law interpreting section 502(h) of the

Bankruptcy Code, and found that it would be "manifestly unfair" to strip a secured creditor of

its secured status for a claim that would arise by operation of section 502(h).  To support its

holding, the *Bankvest* court cited to *Verco Indus. v. Spartan Plastics (In re Verco Indus.),*

704 F.2d 1134, 1138-39 (9th Cir.1983) ("'the modern view is that a transferee guilty of

fraudulent behavior may nevertheless prove a claim against a bankrupt estate ... [a] rule to the

contrary would allow the estate to recover the voidable conveyance and to retain whatever

consideration it had paid therefor. Such a result would clearly be inequitable.'"), quoting

*Misty Management Corp. v. Lockwood,* 539 F.2d 1205, 1214 (9th Cir.1976); *County of*

*Sacramento v. Hackney (In re Hackney),* 93 B.R. 213, 216-19 (Bankr.N.D.Cal.1988) (the

bankruptcy court, applying section 502(h) to a prepetition nondishargeable claim, concluded

that the policies of bankruptcy "are best satisfied if a nondischargeable claim is reinstated

under 11 U.S.C. § 502(h)."); *see also, In re Moody,* 131 F. 525, 530 (N.D.Iowa 1904) (stating

that the trustee is not entitled to avoid transfer while retaining the consideration received).

In addition to the above cases, the *Bankvest* court cited to scholars who similarly support

the view that section 502(h) claims are intended to put the creditor in the precise same position it

would have been in as of the petition date if the transfer had never occurred.  375 F.3d at 68,

citing Rafael I. Pardo, *On Proof of Preferential Effect,* 55 Ala. L.Rev. 281, 281 (2004)

10

("[P]referred creditor is granted the same legal rights it had before the transfer...."); David Gray Carlson, *Security Interests in the Crucible of Voidable Preference Law,* 1995 U. Ill. L.Rev. 211, 356 (1995) ("Payments received by a secured party are analytically different. Prior to bankruptcy, the 'payment' extinguished the antecedent debt. Once the payment is returned, it ought to be the case that the old debt, once dead, is now revived. This is universally assumed to be true, and § 502(h) more or less supports this conclusion...."); Harry M. Flechtner, *Preferences, Post-petition Transfers, and Transactions Involving a Debtor's Downstream Affiliate,* 5 Bankr.Dev. J. 1, 20 (1987) ("To the extent a transfer satisfied a claim against the debtor, recovery of the transfer as a preference or voidable post-petition transfer restores the claim."); Michael F. Jones, *Structuring the Deed in Lieu of Foreclosure Transaction,* 19 Real Prop. Prob. & Tr. J. 58, 64–65 (1984) ("Should the deed-in-lieu transaction ultimately be avoided …, then the [lender] will be returned substantially to the status quo ante with its status being that of a holder of a prepetition claim existing at the time of the filing of the debtor's petition.").

Given that the Trustee is allocating all returned transfers as part of the BLMIS customer property estate, the only way for Luxalpha to be put in the same position that it would have been in as of the Filing Date if the transfers had never occurred, is if Luxalpha's section 502(h) claim is against the BLMIS customer property estate. Any other result, such as allocating a 502(h) claim against the BLMIS general estate, would be "manifestly unfair" and "inequitable."

## 2.   Section 502(h) Is Not Inconsistent With SIPA

To support his argument, the Trustee cites to cases where the issues focused not on section 502(h) claims, but rather, the appropriate time to value the securities actually held in a customer's account. For example, *Sec. Inv'r Prot. Corp. v. Lehman Bros. Inc.*, 433 B.R. 127 (Bankr. S.D.N.Y. 2010), concerned "the proper date for determining the claim against [the

11

debtor] relating to closing out certain short positions in [the customer's] prime brokerage customer account with [the debtor]. Because of market movements, the amount of the claim changes significantly depending on the date selected." *Id.* at 129.  In determining whether the "valuation date for the short positions" was the SIPA filing date or the date a securities contract was later rejected by the customer under section 562 of the Bankruptcy Code, the Court held it was the filing date because section 562 was inconsistent with SIPA.  *Id.* at 134-35.  Picking a date to value the securities held in a customer's account, like in *Lehman*, is very different from providing a customer with a claim under section 502(h) for returned transfers which, by definition, would not have been in a customer's account as of the filing date.

Similarly, *In re Adler Coleman Clearing Corp.*, 195 B.R. 266 (Bankr. S.D.N.Y. 1996), concerned whether customers could recover alleged market losses during the pendency of a SIPA liquidation.  The Court held that a customer's account is valued as of the SIPA filing date under 15 U.S.C. § 78fff–2(b), and Congress did not intend to protect customers against market losses during the pendency of a SIPA liquidation proceeding.  *Id.* at 270-73.

The Trustee also cites to *Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*, 83 B.R. 880, 891 (D.N.J. 1988) but in that SIPA case, the court expressly stated that customers who returned avoided transfers ***would have claims for such transfers against the customer property estate.***  In *Spencer Sav. & Loan*, certain customers received unauthorized transfers of securities that were found to be avoidable under section 549 of the Bankruptcy Code. However, the court found that the customers would have a claim for such returned transfers against the customer property estate:

> if by some possibility the passage of time were to yield a 100% payout to customers and SIPC, the defendants in the avoidance actions would receive the benefit of that 100% payout. The trustee has stated that an unsuccessful defendant

12

in an avoidance action will be entitled to assert a claim against the fund of
customer property after satisfying the avoidance action judgment.

*Id.* at 891. The court went on to reject arguments that returning the transfers resulted in an

unauthorized taking of property from the defendants given that the recovery for customers,

including the defendants upon their return of the customer property, was estimated to be 85%

from the customer estate. *Id.* at 896. The *Spencer Sav. & Loan* case completely undercuts

the Trustee's argument that a section 502(h) claim is only against the general estate, and he

has failed to cite a single case on point that supports his position.

Additionally, at least in Luxalpha's case, this Court's decision in *Sec. Inv'r Prot. Corp. v.*

*Bernard. L. Madoff Inv. Sec. LLC*, No. 08-01789 (BRL), 2009 WL 458769, at *1–2 (Bankr.

S.D.N.Y. Feb. 24, 2009), holding that the Court did not have discretion to extend the statutory

bar date for filing SIPA claims, is of no moment because a claim under section 502(h) was

included in the timely filed claims for Luxalpha. *See e.g.,* Supp. Moore Decl. at **Exhibit "2"** at

Exhibit 1—Account Statement, ¶ 2.[3]

The Trustee also erroneously argues that his position is supported by this Court's decision

in *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Sec. Inv'r Prot. Corp.)*, 568

B.R. 481, 488 n.6 (Bankr. S.D.N.Y. 2017) where the Court referenced that claims under section

502(h) are "unsecured claims" and therefore, according to the Trustee, "must be paid from the

debtor's general estate." The Court did not state that the claims under section 502(h) are against

the general estate, the Court simply noted that such claims were unsecured claims. *Id.* In this

---

[3] Which states: "In addition to the claims for money balances and/or securities on pages one and two of
this customer claim, Claimant expressly states a customer claim for any amounts redeemed by Claimant
prior to the commencement of the liquidation of Bernard L. Madoff Investment Securities LLC to the
extent such redemptions are avoided or otherwise recovered by the Trustee pursuant to 11 U.S.C. § 550
and/or other applicable laws. Any such amounts would be in addition to the amounts set forth in point 1
above.".

case, all customer claims are "unsecured" because they lack a "security interest" in any underlying asset, and the Trustee's unsupported argument to the contrary lacks any merit.

### D.  The Trustee's Assertion That Luxalpha Has "Disavowed" Its Claims Is Both Factually And Legally Incorrect

As explained in its Cross-Motion, on April 27, 2012 Luxalpha previously filed a motion to dismiss the Trustee's AC based on grounds of personal jurisdiction and *forum non conveniens*. Therein, Luxalpha challenged the Trustee's argument that the filing of the Customer Claims was an affirmative action by Luxalpha itself to submit to the Court's jurisdiction, stating:

> although a customer claim was filed on behalf of [Luxalpha] by UBS SA employees who also served as [Luxalpha] directors, this was not an affirmative submission to the Court's jurisdiction by [Luxalpha]. Rather, it was a defensive measure to attempt to limit UBS SA's liability to [Luxalpha]'s investors for having invested [Luxalpha]'s assets with BLMIS in violation of Luxembourg law.

*See* Moore Decl. at Exhibits "B" and "C".

In the Tr. Opp., the Trustee presses an unsupported and illogical argument that Luxalpha "disavowed" its claims against the BLMIS estate. The Trustee's argument is incorrect for a number or reasons. First, the Trustee misrepresents the record when he claims that in filing the Claims, "UBS's only reason for doing so, Luxalpha maintained, was as a 'defensive measure' to limit UBS's liability to Luxalpha in the Luxembourg action." (Opp. Mem. P. 35). Luxalpha never stated that was "the only reason" the Claims were filed, and there is nothing whatsoever in the record to support this made up argument. *See* Moore Decl. Exhibits "B" and "C".

Second, the Trustee's entire argument rests on a false premise and is illogical. The Trustee argues that "[b]y admitting that the customer claims were filed without authorization, Luxalpha has foregone its ability to now claim the benefits that would come with them." (Tr. Opp. p. 36). Of course, the Trustee cites *zero* authority to support his incredible argument that challenging jurisdiction somehow results in a timely filed claim becoming invalid. In fact,

14

timely filed claims remain valid even where jurisdiction is challenged. *See e.g., In Re Eakin*, 154 F.2d 717 (2d Cir.1946) (creditor's filing of claim did not constitute consent to bankruptcy court's summary jurisdiction while preserving setoff rights); *In re Kirchoff Frozen Foods, Inc.*, 496 F.2d 84, 86 (9th Cir.1974) (creditor found not to affirmatively consent to the court's jurisdiction in filing claim for defensive purposes in the event trustee was successful in a turnover action).

Third, Luxalpha did not "disavow" the Customer Claims. Rather, for purposes of a jurisdictional challenge, Luxalpha simply argued that the filing of the Customer Claims by UBS was not an affirmative submission to the Court's jurisdiction by Luxalpha itself as more fully explained in the Cross-Motion. Luxalpha has spent years negotiating with the Trustee seeking allowance of its Claims and has never "disavowed" them in any manner. Further, as set forth in the Cross-Motion, Luxalpha is not challenging the Court's jurisdiction herein--- it is simply reserving all rights in the future to challenge the scope, authority and knowledge imputable to Luxalpha by its service agents, including UBS and Access, as well as any Luxalpha directors.

### E.    The Trustee's Equitable Subordination Arguments Lack Merit

#### 1.    Although The Trustee Can Plead Alternative Claims, Equitable Claims Are Not Available Where Adequate Legal Remedies Exist

The Trustee cites to *Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 332-33 (Bankr. S.D.N.Y. 1999) to argue that a party can assert various alternative claims for relief. However, the Court in *Stratton Oakmont* also stated that "where a plaintiff has an adequate legal remedy, he or she is then precluded from also seeking equitable relief. Indeed, defendants are correct in asserting that, in New York, equitable relief is only available when an adequate legal remedy is not." *Id.* citing *New York TRW Title Insurance v. Wade's Canadian Inn and Cocktail Lounge, Inc.,* 199 A.D.2d 661, 605 N.Y.S.2d 139, 140 (1993); *Ansonia Assoc. v. Ansonia Residents Ass'n,* 78 A.D.2d 211, 434 N.Y.S.2d 370, 374 (1980); 1 Coquillette, MOORE'S

15

FEDERAL PRACTICE 3D, § 2.03[3], p. 2–27 (3d ed.1999) (while a complaint may seek both legal and equitable relief, a court may not grant equitable relief unless it first determines that the party seeking equitable relief has no adequate remedy at law).

Luxalpha does not challenge that the Trustee may plead alternative relief. Rather, Luxalpha argues that by virtue of the Cross-Motion, the Trustee's legal relief (i.e., recovery of the fraudulent transfers) renders his requested equitable subordination relief moot because the Trustee fails to allege any legitimate "additional harm" caused by Luxalpha as required *McGowan v. Wachovia Bank, N.A.* (*In re Dreier LLP*), 453 B.R. 499, 517 (Bankr. S.D.N.Y. 2011) (SMB) ("equitable subordination is only an alternative to a monetary recovery for the creditor's wrongdoing...").

## 2. The Trustee Has Not Alleged "Additional Harm"

To support his argument that the Trustee can both recover fraudulent transfers against Luxalpha and equitably subordinate its claims (something that has never happened in these proceedings), the Trustee attempts to manufacture the following "additional harms" that Luxalpha allegedly caused to the BLMIS estate: (i) alleged harm from the Oreades fund receiving an alleged $135 million in alleged fictitious profits, which the Trustee asserts went to Oreades investors who then subsequently invested in Luxalpha; and (ii) alleged harm from "enabling" and "perpetuating" the Ponzi scheme by directing $1.5 billion into BLMIS. (Tr. Opp. at pp. 42-43). As explained below, both of these arguments lack merit.

As an initial matter, in support of his argument that he can both recover fraudulent transfers and equitably subordinate claims, the Trustee cites to cases that are easily distinguishable and do not support such relief against Luxalpha. For example, the Trustee cites to a series of cases where the alleged harm was conducted by insiders of a debtor, which requires

16

a much lower burden than when dealing with non-insiders such as Luxalpha. *See e.g., Official Comm. of Unsecured Creditors of Toy King Distribs. v. Liberty Savs. Bank (In re Toy King Distribs. Inc.)*, 256 B.R. 1, 198-200 (Bankr. M.D. Fla. 2000), where insiders who were found to have put their own interests ahead of other creditors and engaged in self-dealing at the expense of other creditors' interests had their claims subordinated.  The same was true in *Le Café Crème v. Le Roux (In re Le Café Creme, Ltd.)*, 244 B.R. 221, 244 (Bankr. S.D.N.Y. 2000) (insider shareholders' misconduct, in converting their equity interests into secured debt at time when debtor was insolvent, warranted subordination of their claims); *Monzack v. ADB Inv'rs (In re EMB Assocs., Inc.)*, 92 B.R. 9, 12 (Bankr. D.R.I. 1988) (insider fiduciary accountant's claims subordinated where he prepared false financial records to the detriment of non-insider creditors).

The only non-insider case the Trustee cites to is an non-binding unreported decision, *Kriegman v. 1127477 Alberta Ltd. (In re LLS Am., LLC)*, No. 12-CV-324-RMP, 2015 WL 328918 (E.D. Wash. Jan. 23, 2015) which is equally inapplicable.  Unlike Luxalpha, the creditors in *Kriegman* were *net winners* so their claims presumably would have been disallowed anyway.  *Id.* at *5.  Beyond that critical distinction, the court in *Kriegman* found that the creditors failed to establish good faith under 11 U.S.C. § 548(c) *using an objective standard*, which of course is not applicable here.  *Id.* at *10-11.  As such, none of those cases support the Trustee's argument that he can both recover fraudulent transfers and equitably subordinate Luxalpha's claims.

### i.    Oreades Alleged Fictitious Profit Argument

The argument attempting to tie alleged "fictitious profits" paid to the Oreades fund to an "additional harm" committed by Luxalpha is rife with fundamental legal problems.  For example, the Trustee seemingly seeks to collapse together two separate and unrelated BLMIS customer

accounts (one held for the benefit of Oreades, and the other, Luxalpha) on the basis that some investors in Oreades may have received fictitious profits prior to purchasing an interest in Luxalpha.  Setting aside the legion of factual issues this argument raises, the Trustee cites to no law to support how this could even be possible.  In fact, it is directly contrary to the Second Circuit's decision that defined the relationship between BLMIS feeder fund customers and their individual investors relative to BLMIS.  *In re Bernard L. Madoff Inv. Sec., LLC*, 708 F.3d 422, 425-27, (2d Cir. 2013) (holding that individuals who invested in feeder funds were not "customers" of BLMIS because they "purchased ownership interests in the Feeder Funds themselves, thereby investing *in,* and not *through,* the Feeder Funds," they did not "have a claim on account of a securities account with BLMIS," could not "establish that they entrusted cash or securities with BLMIS for the purpose of trading or investing in securities," and therefore lacked "the type of fiduciary relationship with the debtor that characterizes customers in general" (emphasis in original; internal quotation marks omitted)); *accord Aozora Bank Ltd. v. SIPC (In re Bernard L. Madoff Inv. Sec., LLC),* 480 B.R. 117, 121–29 (S.D.N.Y. 2012).  Thus, if the Trustee believes that Oreades investors received fictitious profits, his remedy to pursue those parties lies within his pending suit to recover alleged fictitious profits against the Oreades fund. *Picard v. Oreades Sicav et al,* Adv. Pro. No. 10-05120 (Bankr. S.D.N.Y.) (SMB).

Additionally, the Trustee's theory is also directly contrary to the Second Circuit's Net Equity Decision, which adopted the Trustee's "Net Investment Method" by which net equity is calculated by "crediting the amount of cash deposited by the customer into his or her BLMIS account, less any amounts withdrawn from it."  *In re Bernald l. Madoff Inv. Securities, LLC*, 654 F.3d 229, 233 (2d Cir. 2011).  "In this case the Net Investment Method allows the Trustee to make payments based on withdrawals and deposits, which can be confirmed by the debtor's

18

books and records, and results in a distribution of customer property that is proper under SIPA."
*Id.* at 238-39.  The Trustee now argues that a different rule should apply to the Account held for Luxalpha.  However, given the law that has developed in these cases, there can be no legitimate dispute that all "cash" deposited into the Account must be credited toward that account's net equity.  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41, 54-55 (Bankr. S.D.N.Y. 2014) (SMB) (where the Court rejected arguments that it was arbitrary to credit BLMIS customers with net equity for cash deposits into their BLMIS accounts from outside sources as opposed to "inter-account" transfers), *aff'd Diana Melton Trust v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)* 2016 WL 183492 *14-15 (S.D.N.Y. Jan. 14, 2016) ("Under the principles of the *Net Equity Decision*, deposits into an account from an outside financial institution—whatever their original source—count towards net equity"), *aff'd In re Bernard L. Madoff Inv. Sec. LLC*, 697 Fed.Appx. 708 (2d Cir. 2017, Summary Order).  *See also Picard v. Lustig et al*, 2017 WL 6205381 at *5 (Bankr. S.D.N.Y. December 6, 2017) (SMB) (funds invested into a BLMIS account from an outside source are credited as cash deposits in accordance with the *Net Equity Decision*) (emphasis in original).  Given the above, the Trustee is foreclosed from arguing that deposits made into the Account both "count" as net equity, but, also serve as a basis to equitably subordinate Luxalpha's claims.

### ii.    The "Enabling" And "Perpetuating" Argument

As for the Trustee's argument that Luxalpha somehow "enabled and perpetuated the Ponzi scheme," that is the same argument that the Trustee made in the *Merkin* case where the Court stated:

> Count Thirteen seeks to equitably subordinate the Defendant Funds' customer claims because they 'benefited by the withdrawal of at least $550 million, prior to the Filing Date,' (¶ 403), misled customers 'as to the true financial condition of BLMIS and ... induced [them] to invest without knowledge of the actual facts

19

> regarding BLMIS' financial condition, and/or customers and creditors are less likely to recover the full amounts due to them,' (¶404), and 'enabled Madoff to prolong the Ponzi scheme that resulted in injury to all customers and creditors of the BLMIS estate and conferred an unfair advantage on the Defendants.'

515 B.R. at 157. However, the Court went on to explain that the return of the avoided transfer would compensate the estate for the injury caused by the fraudulent transfer, and the estate cannot recover damages and equitable subordination for the same wrong. *Id.* at 160-61. *See also McGowan v. Wachovia Bank, N.A.* (*In re Dreier LLP*), 453 B.R. 499, 517 (Bankr. S.D.N.Y. 2011) (SMB) ("[e]ven when a complaint alleges gross and egregious conduct, equitable subordination is only an alternative to a monetary recovery for the creditor's wrongdoing, and the trustee cannot recover damages and equitably subordinate a claim based on the same wrong.").

As such, the Trustee's transparent efforts to manufacture "independent harms" should be rejected because neither the Oreades "fictitious profits" argument, nor the "perpetuation of the Ponzi scheme" argument are sufficient to permit the Trustee to both recover fraudulent transfers and pursue equitable subordination. And given that equitable remedies are alternative remedies and only available in the absence of legal remedies, *Stratton Oakmont, Inc.*, 234 B.R. at 332-33, payment of any alleged fraudulent transfer claims by Luxalpha's entirely moots the Trustee's claims for equitable subordination. In short, the Trustee's desire to equitably subordinate Luxalpha's claims does not square with the fact that the Trustee does not even allege Luxalpha had actual knowledge of the BLMIS fraud.

## CONCLUSION

WHEREFORE, Luxalpha respectfully requests that the Court: (i) deny the Trustee's Motion; or alternatively, (ii) allow Luxalpha's Cross-Motion, and determine the extent and validity of Luxalpha's Net Equity and 502(h) claims.

Dated: May 18, 2020                          Respectfully submitted,

20

4465887

**PORZIO BROMBERG & NEWMAN P.C.**

/s/     Brett S. Moore
Brett S. Moore (BM-0014)
156 West 56th Street
Suite 803
New York, New York 10019-3800
(212) 265-6888 (telephone)
(212) 957-3983 (fax)
bsmoore@pbnlaw.com

*Attorneys for Defendants Luxalpha Sicav as
represented by its Liquidators Maitre Alain
Rukavina and Paul Laplume, Maitre Alain
Rukavina and Paul Laplume, in their capacities as
liquidators and representatives of Luxalpha Sicav*

21