**Baker & Hostetler LLP**

45 Rockefeller Plaza

New York, New York 10111

Telephone: (212) 589-4200

Facsimile: (212) 589-4201

David J. Sheehan

Nicholas J. Cremona

Jorian L. Rose

Amy E. Vanderwal

Jason I. Blanchard

Hearing Date: May 27, 2020

Hearing Time:  10:00 a.m. (EST)

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the chapter 7 estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |

**TRUSTEE'S OPPOSITION TO THE LETTER OF DR. ALAN MELTON**
**<u>REQUESTING RELIEF FROM THE COURT</u>**

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ........................................................................................1

II.  STATEMENT OF FACTS ............................................................................................3

    A.  Background ..........................................................................................................3

    B.  The Melton LLC's BLMIS Account and Customer Claim ....................................4

    C.  The Melton LLC's Objection to the Trustee's Determination and Subsequent
        Filings ..................................................................................................................6

    D.  Dr. Melton's Request for Relief ...........................................................................8

III.  ARGUMENT ...............................................................................................................8

    A.  The Melton TIC is not Entitled to Customer Status Because it Failed to File a
        Claim by the Bar Date ..........................................................................................8

    B.  Reconsideration of the Omnibus Order Should be Denied Because Dr.
        Melton has not Demonstrated Extraordinary Circumstances to Support that
        Relief ...................................................................................................................11

IV.  CONCLUSION ...........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.R. Baron Co., Inc.*,
   226 B.R. 790 (Bankr. S.D.N.Y. 1998) .................................................................................. 11

*In re Adler, Coleman Clearing Corp.*,
   204 B.R. 99 (Bankr. S.D.N.Y. 1997) *aff'd* No. 97-cv-2095 (HB) (S.D.N.Y.
   Dec. 15, 1997) ...................................................................................................................... 9

*In re Barquet Grp., Inc.*,
   477 B.R. 454 (Bankr. S.D.N.Y. 2012) .................................................................................. 16

*In re Bernard L. Madoff Inv. Sec. LLC*,
   570 B.R. 477 (Bankr. S.D.N.Y. 2017) .................................................................................. 11

*In re Bernard L. Madoff Inv. Sec. LLC*,
   592 B.R. 513 (Bankr. S.D.N.Y. 2018) .................................................................................. 11

*Blecker v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*,
   605 B.R. 570 (S.D.N.Y. 2019) .............................................................................................. 12

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011) ................................................................................................. 11

*Davidson v. AMR Corp. (In re AMR Corp.)*,
   566 B.R. 657 (S.D.N.Y. 2017) .............................................................................................. 13

*In re Fairpoint Commc'ns, Inc.*,
   462 B.R. 75 (Bankr. S.D.N.Y. 2012) ............................................................................ 12, 16

*Lattanzio v. COMTA*,
   481 F.3d 137 (2d Cir. 2007) ................................................................................................. 11

*Lee v. Marvel Enters., Inc.*,
   765 F. Supp. 2d 440 (S.D.N.Y. 2011) ................................................................................. 14

*In re Lehman Bros.*,
   493 B.R. 437 (Bankr. S.D.N.Y. 2013) .................................................................................. 10

*In re MF Global Inc.*,
   11-2790 (MG), 2014 WL 657321 (Bankr. S.D.N.Y. Feb. 20, 2014) ...................................... 9

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
   277 B.R. 520 (Bankr. S.D.N.Y. 2002) .................................................................................. 11

*Montco, Inv. v. Barr (In re Emergency Beacon Corp.)*,
   666 F.2d 754 (2d Cir. 1981)................................................................................14

*Pitheckoff v. Sec. Inv'r Prot. Corp. (In re Great E. Sec., Inc.,)*,
   10. No. Civ. 8647 (CM), 2011 WL 1345152 (S.D.N.Y. Apr. 5, 2011) ...................11

*Redington v. Borghi (In re Weis Secs.)*,
   411 F. Supp. 194 (S.D.N.Y. 1975) *aff'd without opinion* 538 F.2d 317 (2d Cir.
   1976) ......................................................................................................................9

*Richardson Greenshields Sec., Inc. v. Lau*,
   819 F. Supp. 1246 (S.D.N.Y. 1993).....................................................................12

*Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*,
   No. 15 Civ. 3248 (KPF), 2016 U.S. Dist. LEXIS 21204 (S.D.N.Y. Feb. 22,
   2016) ......................................................................................................................13

*Sec. & Exch, Comm'n v. Goren*,
   206 F. Supp. 2d 344 (E.D.N.Y. 2002) ....................................................................8

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   476 B.R. 715 (S.D.N.Y. 2012), supplemented (May 15, 2012), *aff'd sub nom.*
   *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014) .....................7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   496 B.R. 713 (Bankr. S.D.N.Y. 2013).....................................................................12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   496 B.R. 744 (Bankr. S.D.N.Y. 2013) *aff'd In re Bernard L. Madoff Inv. Sec.*
   *LLC*, 779 F.3d 74 (2d Cir. 2015) *cert. denied, Peshkin v. Picard*, 136 S. Ct.
   218 (2015).................................................................................................................6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   No. 08-01789 (SMB), 2019 WL 3436542 (Bankr. S.D.N.Y. July 26, 2019) ............12, 14, 15

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   522 B.R. 41 (Bankr. S.D.N.Y. 2014) *aff'd In re Bernard L. Madoff Inv. Secs.,*
   *LLC*, 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016) *aff'd Sagor v. Picard (In re*
   *Bernard L. Madoff Inv. Sec. LLC)*, 697 F. App'x 708 (2d Cir. 2017) ......................7

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   Adv. No. 08-01789 (BRL), 2009 WL 458769 (Bankr. S.D.N.Y. Feb. 24,
   2009) .......................................................................................................................9

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
   522 B.R. 41 (Bankr. S.D.N.Y. 2014) *aff'd sub nom. Diana Melton Trust,
   Dated 12/05/05 v. Picard (In re Bernard L. Madoff)*, 2016 WL183492
   (S.D.N.Y. Jan. 14, 2016) *aff'd Sagor v. Picard (In re Bernard L. Madoff Inv.
   Sec. LLC)*, 697 F. App'x 708 (2d Cir. 2017) .........................................................16

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
   424 B.R. 122 (Bankr. S.D.N.Y. 2010) *aff'd In re Bernard L. Madoff Inv. Sec.
   LLC*, 654 F.3d 229 (2d Cir. 2011), *cert. denied, Velvel v. Picard*, 133 S. Ct. 25
   (2012); *Ryan v. Picard*, 133 S. Ct. 24 (2012) ...........................................................6

*Sec. Investor Prot. Corp. v. Stellatos (In re Blinder, Robinson & Co.)*,
   124 F.3d 1238 (10th Cir. 1997) ......................................................................9, 10

*SEC v. Madoff*,
   No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y., Dec. 11, 2008) .................3

*Stevens v. Miller*,
   676 F.3d 62 (2d Cir. 2012)..........................................................................................14

*United States v. Int'l Bhd. Of Teamsters*,
   247 F.3d 370 (2d Cir. 2001)........................................................................................14

*In re Worldcom, Inc.*,
   2005 Bankr. LEXIS 3481 (Bankr. S.D.N.Y. Oct. 27, 2005) ..................................17

**Statutes**

11 U.S.C. § 502(j)..................................................................................................................12

15 U.S.C. § 78fff(b) ..............................................................................................................12

15 U.S.C. § 78fff-2(a)(2) .......................................................................................................8

15 U.S.C. § 78fff-2(a)(3) ....................................................................................................4, 9

15 U.S.C. § 78fff-2(b) ...........................................................................................................12

15 U.S.C. § 78fff-3(a) ............................................................................................................4

15 U.S.C. § 78*lll* ...................................................................................................................3

**Rules**

Fed. R. Bankr. P. 3007 ...........................................................................................................16

Fed. R. Civ. P 60(b) ...............................................................................................................13

Fed. R. Civ. P. 60(c) ...................................................................................................................13

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq., ("SIPA")[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this opposition (the "Opposition") to the request for relief submitted to the Court by Dr. Alan Melton ("Dr. Melton") by letter, dated August 8, 2019, and by email, dated September 11, 2019, (collectively, the "Letter").[2]

## I.  **PRELIMINARY STATEMENT**

Dr. Melton filed a customer claim on behalf of the Melton Family LLC (the "Melton LLC") by the claims' bar date of July 2, 2009. Applying the Net Investment Method (defined below), the Trustee determined that the claim should be denied because the Melton LLC lacked net equity in its customer account. According to BLMIS's books and records, the Melton LLC withdrew more money than it deposited into its customer account. It received a full return of the principal it invested with BLMIS in addition to fictitious profits consisting of other BLMIS customers' money. Because the Melton LLC disagreed with the Trustee's determination, it filed an objection with the Court. Following substantial legal proceedings concerning the proper methodology for calculating customers' net equity claims, the Trustee filed a motion to affirm his determination of the Melton LLC's claim and overrule its objection. The Melton LLC received notice of the motion but chose not to respond. The Court subsequently entered an order granting the motion. The Melton LLC did not appeal. Therefore, the order stands as a final order of the Court.

---

[1] Subsequent references to SIPA shall omit "15 U.S.C."

[2] After submitting the Letter, Dr. Melton sent additional emails to the Court, including on October 7, 2019 and May 7, 2020, on matters related to scheduling a hearing on the Letter.

Now, several years later, Dr. Melton filed the Letter to dispute the Trustee's net equity calculation. According to Dr. Melton, several years after opening an account for the Alan R. Melton ET AL T/I/C (the "Melton TIC"), he had asked BLMIS to open a new account for the Melton LLC. BLMIS instead changed the name on the account from the Melton TIC to the Melton LLC and updated the tax identification number but did not open a new account. After the account was renamed in 2002, BLMIS continued to send monthly customer statements bearing the same account number to the same address and did so up until its collapse more than six years later. Dr. Melton received these statements but never objected to the name change. Without any support, Dr. Melton argues that the Trustee and his professionals should have considered whether BLMIS followed "standard accounting methods" to determine whether the Melton TIC and Melton LLC were separate accountholders, even if BLMIS's books and records only showed one account. According to Dr. Melton, if these considerations had been made, the two entities would be treated as separate accountholders and hence two separate customers of BLMIS, each entitled to separate claims for net equity.

Dr. Melton's arguments fail for several reasons. First, if Dr. Melton believed that the Melton TIC was a separate BLMIS customer, he was required to file a claim on its behalf by the claims' bar date. Neither Dr. Melton nor anyone else did so. And Dr. Melton has not stated a reason why the Court should relax SIPA's strict statutory requirements for filing timely claims. Therefore, the Melton TIC is time-barred from filing a claim. It is not eligible for a determination that the Melton TIC has an allowed claim and thereby could receive a share of the fund of property reserved for BLMIS's customers who filed timely customer claims allowed by the Trustee. Second, Dr. Melton has not demonstrated the extraordinary circumstances necessary to vacate the Court's order that (i) affirmed the Trustee's determination of the Melton LLC's claim and (ii) overruled its

objection. In fact, Dr. Melton raises the very same arguments the Court previously rejected in

disallowing the customer claim of the Diana Melton Trust.

Under SIPA, the customer bears the burden of providing new evidence and demonstrating

that it is entitled to an allowable customer claim. Because the Melton LLC has not satisfied its

burden, the Trustee respectfully submits that the Court should adhere to its prior decision to

disallow the Melton LLC's claim and overrule its objection.

## II.    STATEMENT OF FACTS

### A.    Background

On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a

complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-

cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y., Dec. 11, 2008), alleging fraud through the

investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with

an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed

an application under SIPA § 78eee(a)(4) alleging that because of BLMIS's insolvency, it needed

SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed

the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible for, among other things, recovering and distributing

customer property to a broker's customers, assessing and satisfying customer claims, and

liquidating other assets of the firm for the benefit of the estate and its creditors. In satisfying

customer claims, the Trustee evaluates whether claimants are "customers," as defined in SIPA §

78*lll*(2), as they are entitled to share pro rata in "customer property," defined in SIPA § 78*lll*(4),

to the extent of their "net equity," defined in SIPA § 78*lll*(11). For each customer with a valid net

equity claim, SIPC advances funds to the SIPA trustee up to the amount of the customer's net

3

equity, not to exceed $500,000 (the amount applicable to this case), if the customer's share of customer property does not make her whole. SIPA § 78fff-3(a).

On December 23, 2008, this Court entered the Claims Procedures Order, which approved (i) the form and manner of publication of the notice of the commencement of the liquidation proceeding and (ii) specified the procedures for filing, determining and adjudicating customer claims. (*See* ECF No. 12). *See* Declaration of Vineet Sehgal in Support of the Trustee's Opposition ("Sehgal Decl.") at ¶6, Ex. 1. BLMIS customers were directed to file their claims with the Trustee no later than six (6) months from the date the Trustee published notice of the commencement of the liquidation proceeding. *See* SIPA § 78fff-2(a)(3). After receiving a claim, the Trustee issued a determination letter to the claimant regarding the allowed amount of net equity. Claimants were permitted to object to the Trustee's determination of a claim by filing an objection in this Court, following which the Trustee requested a hearing date for the objection and notified the objecting claimant thereof.

On January 2, 2009, the Trustee's professionals published notice of commencement of this proceeding in major newspapers, mailed notice to former customers, broker-dealers, and other creditors of BLMIS, and posted claim-filing information on the Trustee's website (www.madofftrustee.com). *See* Sehgal Decl. at ¶¶7–8, Exs. 2–3. Therefore, the claims bar date was July 2, 2009 (the "Bar Date").

### B.    The Melton LLC's BLMIS Account and Customer Claim

In December of 1992, BLMIS opened a customer account on behalf of the Alan R. Melton ET AL T/I/C (the "Melton TIC"). BLMIS assigned number 1ZA894 to the account (the "Account"). *Id*. at ¶11. While the Account was held in the name of the Melton TIC, a total of $465,000 was deposited into the Account and $100,000 was withdrawn, resulting in a net cash balance of $365,000.

In September of 2002, Dr. Melton requested in writing that BLMIS rename the Account from the Alan R. Melton ET AL T/I/C to the Melton Family LLC and change the tax identification number ("TIN"). *Id*. at ¶¶12, 20.a., Ex. 8. BLMIS's books and records do not contain a request for the withdrawal, deposit, or transfer of funds at that time. *Id*. at ¶20.b. BLMIS employees complied with Dr. Melton's request but did not make any other changes to the Account. *Id*. at ¶20.c., Ex. 9. After the Account was renamed, there were several transactions that included $165,000 of deposits and $675,000 of withdrawals, resulting in a negative cash balance of ($510,000). The Melton LLC received monthly statements after these transactions, *id*. at ¶20.e., Ex. 11, and the Account continued to bear account number 1ZA894 for the rest of its existence. *Id*. at ¶20.d., Ex. 10.

According to BLMIS's books and records, BLMIS did not create separate accounts for the Melton TIC and Melton LLC. *Id*. at ¶ 20.f. Nor do those books and records show that a new account was ever requested. *Id*. As noted above, the Account received BLMIS monthly statements bearing the same account number after the name change. The documents in the Account file also do not indicate Dr. Melton, or any other party, disagreed with BLMIS's treatment of the change in the Account as a name change rather than as two separate accounts, or objected to the BLMIS monthly statements. *Id*. at ¶20.g.

The Melton LLC filed a customer claim signed by Dr. Melton by the Bar Date. The Trustee designated the Melton LLC's claim as no. 008649 (the "Claim"). *Id*. at ¶14, Ex. 4. According to the operating agreement the Melton LLC submitted with the Claim, Dr. Melton is the sole manager and one of the five members of the LLC. *See id*.

The Trustee did not receive a separate claim for the Melton TIC. *Id*. at ¶13.

The Trustee issued a determination letter (the "Determination Letter") denying the Claim for lack of positive net equity. *Id*. at ¶15, Ex. 5. In the Determination Letter, the Trustee explained

that based on his analysis of BLMIS's books and records, the total amount of withdrawals from the Account exceeded the deposits by $145,000[3] and that all profits reported on the customer statements were fictitious.

### C.  The Melton LLC's Objection to the Trustee's Determination and Subsequent Filings

On November 17, 2009, the Melton LLC, through counsel,[4] filed the *Objection to Trustee's Determination of Claim* (the "Objection") (ECF No. 876). *See* Sehgal Decl. at ¶16, Ex. 6. The Melton LLC argued, among other things, that the Trustee should have calculated net equity based on the final customer statement for the Account, that the Melton LLC was entitled to interest on its deposits, and that the Melton LLC should have received a credit for its payment of taxes on fictitious gains. The Objection did not raise the issue of a claim by or for the Melton TIC or the existence of a separate account.

After substantial legal proceedings, these arguments were resolved by the courts in the Trustee's favor. First, the courts upheld the Trustee's calculation of net equity according to the amount of cash a customer deposited into an account less the amounts withdrawn (the "Net Investment Method"), rather than the amount reflected on the customer's last account statement. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122, 134-35 (Bankr. S.D.N.Y. 2010) *aff'd In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011), *cert. denied, Velvel v. Picard*, 133 S. Ct. 25 (2012); *Ryan v. Picard*, 133 S. Ct. 24 (2012). Second, the courts rejected an adjustment to net equity for inflation

---

[3] As shown in the Determination Letter, a total of $630,000 had been deposited into the Account and a total of $775,000 had been withdrawn.

[4] Milberg LLP and Seeger Weiss LLP jointly filed the Objection on behalf of the Melton LLC. On July 30, 2013, the Court entered an order authorizing both law firms to withdraw as counsel of record for the Melton LLC and other claimants (ECF No. 5431). Dr. Melton was identified as the point of contact for the Melton LLC going forward (ECF No. 5393). Since the Court approved the withdrawal, no other counsel has filed a notice of appearance on the Melton LLC's behalf.

or interest. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 496 B.R. 744, 754-55 (Bankr. S.D.N.Y. 2013) *aff'd In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 78-79 (2d Cir. 2015) *cert. denied, Peshkin v. Picard*, 136 S. Ct. 218 (2015). Third, the courts rejected an adjustment to net equity for tax payments customers were required to make under the Internal Revenue Code. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41, 54 n.9 (Bankr. S.D.N.Y. 2014) *aff'd In re Bernard L. Madoff Inv. Secs., LLC*, 2016 WL 183492, at *15 (S.D.N.Y. Jan. 14, 2016) *aff'd Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 697 F. App'x 708 (2d Cir. 2017); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 729 (S.D.N.Y. 2012), supplemented (May 15, 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014).

Accordingly, on December 11, 2015, the Trustee filed the *Seventh Omnibus Motion to Disallow Claims and Overrule Objections of Claimants Who Have No Net Equity* (ECF No. 12242) together with the *Declaration of Vineet Sehgal in Support of the Trustee's Seventh Omnibus Motion to Disallow Claims and Overrule Objections of Claimants Who Have No Net Equity* (ECF No. 12243) (collectively, the "Omnibus Motion"). That same day, the Trustee's professionals served the Omnibus Motion and related notice of the January 27, 2016 hearing on the Melton LLC by regular mail (ECF No. 12309). *See* Sehgal Decl. at ¶19, Ex. 7.[5]

In the Omnibus Motion, the Trustee requested that the Court disallow the claims and overrule objections filed by or on behalf of customers that have no net equity, and are in the parlance of this proceeding, net winners, including the Melton LLC. *See id.* at ¶¶ 17-18. Because the Trustee did not receive any objections, on January 21, 2016, the Trustee filed the C*ertificate*

---

[5] Specifically, the Trustee's professionals sent the motion package to the Melton LLC's former counsel of record and to the address the Melton LLC identified on its customer claim. To protect the privacy of claimants, the Trustee's professionals redacted the claimants' addresses from the version of the affidavit of mailing filed with the Court. An unredacted version of the affidavit is available upon request.

*of No Objection to Trustee's Seventh Omnibus Motion to Disallow Claims and Overrule Objections of Claimants Who Have No Equity* (ECF No. 12492).

The Court entered an order (the "Omnibus Order") granting the Omnibus Motion on January 26, 2016 (ECF No. 12518). The Omnibus Order overruled the Objection and affirmed the Trustee's determination of the Claim. No party appealed the Omnibus Order.

### D.    Dr. Melton's Request for Relief

In the Letter, Dr. Melton argues that the Melton TIC and the Melton LLC should be treated as separate accountholders and hence two separate customers of BLMIS, each entitled to separate claims for net equity. According to Dr. Melton, he had asked BLMIS to open a new customer account on behalf of the Melton LLC but acknowledges that BLMIS never did so. Dr. Melton argues that the Trustee and his professionals should have considered the social security number or TIN for the Melton TIC and Melton LLC, respectively, to evaluate net equity, as opposed to only considering whether BLMIS maintained one account. If the Trustee and his professionals had done so, Dr. Melton contends, the Melton TIC would be entitled to a claim for positive net equity under the Net Investment Method.

## III.    ARGUMENT

Dr. Melton appears to seek separate customer relief for the Melton TIC or, alternatively, reconsideration of the Omnibus Order. For the reasons set forth below, both arguments must fail.

### A.    The Melton TIC is not Entitled to Customer Status Because it Failed to File a Claim by the Bar Date

In a SIPA liquidation proceeding, customers are required to file written statements of claim with the trustee to be eligible to receive a share of the fund of property reserved for customers with net equity claims. *See* SIPA § 78fff-2(a)(2); *Sec. & Exch, Comm'n v. Goren*, 206 F. Supp. 2d 344, 349 (E.D.N.Y. 2002) ("Customers of failed broker-dealers placed in liquidation proceedings must

file written claim statements in order to receive compensation for amounts lost due to broker-dealer failure, but need not file formal proofs of claim."). The statutory period for filing claims is limited to the six-month period beginning on the date of publication of notice of the commencement of the case. SIPA § 78fff-2(a)(3) ("No claim . . . which is received by the trustee after the expiration of the six month period beginning on the date of publication of notice under paragraph (1) shall be allowed . . . .").

Courts have uniformly determined that this limitation period is immutable and strictly enforced, and that late-filed claims are unequivocally barred. *See, e.g., Sec. Investor Prot. Corp. v. Stellatos (In re Blinder, Robinson & Co.),* 124 F.3d 1238, 1243 (10th Cir. 1997) (the "six-month time-bar contained in § 78fff-2(a)(3) of SIPA is mandatory and absolute"); *Redington v. Borghi (In re Weis Secs.),* 411 F. Supp. 194, 195 (S.D.N.Y. 1975) (denying late-filed claim despite lack of actual notice of the SIPA proceeding) *aff'd without opinion* 538 F.2d 317 (2d Cir. 1976)); *In re Adler, Coleman Clearing Corp.,* 204 B.R. 99, 103 (Bankr. S.D.N.Y. 1997) *aff'd* No. 97-cv-2095 (HB) (S.D.N.Y. Dec. 15, 1997) (SIPA § 78fff-2(a)(3) "is an absolute bar to late filed claims").

SIPA section 78fff-2(a)(3) "allows for an extension of a claims deadline only if a request is submitted to the court before the deadline passes, *and* the claimant is (i) governmental unit, (ii) an infant, or (iii) an incompetent person without a guardian." *In re MF Global Inc.,* 11-2790 (MG), 2014 WL 657321, at *3 (Bankr. S.D.N.Y. Feb. 20, 2014); *see also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL), 2009 WL 458769, at *1 (Bankr. S.D.N.Y. Feb. 24, 2009) ("it is clear from the face of the statute that the six-month time limit for filing [claims] is subject to extension at the discretion of the court in only three specified instances"). Therefore, a court's discretion to extend the claims deadline is "limited to requests made within that period by specified parties and for cause specified in the statute." *Adler, Coleman*

*Clearing Corp.*, 204 B.R. at 103; *see also Blinder, Robinson & Co. Inc.,* 124 F.3d at 1243 (holding

that claimant's "hardships caused by the automobile accident in which she was involved are

unfortunate, but the fact remains that she was required to apply for an extension within the six-

month time period to file her claim" and was therefore not entitled to an extension).

Unlike in ordinary bankruptcy cases, there is no exception for "excusable neglect" in a

SIPA proceeding. *See In re Lehman Bros.,* 493 B.R. 437, 443 (Bankr. S.D.N.Y. 2013)

("[E]xtensions of the time period for filing claims in SIPA cases are permitted only when the

express statutory requirements are satisfied. This differs from the familiar 'excusable neglect'

standard that applies to late filed claims in chapter 11 cases."). This conclusion is consistent with

the language of SIPA § 78fff-2(a)(3), its legislative history and SIPA's policy goals. *Id.* at 444.

"The standards are designed to be tough, and they are." *Id.* at 440.

The Trustee gave notice of the Bar Date by causing claim packages to be mailed to former

customers of BLMIS at their last known address on BLMIS's books and records, and by

publication on his website and in the national editions of the *New York Times*, the *Chicago Tribune*,

the *Financial Times*, and the *Wall Street Journal*. *See* Sehgal Decl., at ¶¶7–8, Exs. 2–3. Customers

were instructed how and where to file claims, that claims will be deemed filed only when received

by the Trustee, and that claims received after the Bar Date would not be allowed.

Despite these efforts on the part of the Trustee, the Melton TIC did not file a claim by the

Bar Date. SIPA absolutely bars the allowance of any claim, not actually received by the Trustee

on or before July 2, 2009. Although Dr. Melton did not request the opportunity to file a late claim

on behalf of the Melton TIC, even if he had, neither the Trustee nor SIPC has authority to grant

extensions of time for filing claims, regardless of the reason. SIPA section 78fff-2(a)(3) likewise

does not apply because Dr. Melton failed to request an extension of the Bar Date within the six-

month window permitted by the statute. For these reasons, Dr. Melton's request for relief with respect to the Melton TIC should be denied.

**B.    Reconsideration of the Omnibus Order Should be Denied Because Dr. Melton has not Demonstrated Extraordinary Circumstances to Support that Relief**

As a threshold matter, Dr. Melton lacks standing to assert the rights of the Melton LLC before this Court. In the Second Circuit, a limited liability company may not appear pro se or through a non-attorney representative, such as an officer, owner, or employee. *See Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("Because both a partnership and a corporation must appear through licensed counsel, and because a limited liability company is a hybrid of the partnership and corporate forms . . . a limited liability company also may appear in federal court only through a licensed attorney); *see also City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 132 (2d Cir. 2011) (same)). Because Dr. Melton is not a licensed attorney, he may not represent the Melton LLC before this Court.

Even if this Court were to consider the merits of the Letter, Dr. Melton has not satisfied his burden to prove the Melton LLC's entitlement to a claim for net equity. This Court has determined that it is the customer's burden to demonstrate he or she is entitled to be treated as a "customer" under SIPA. *In re Bernard L. Madoff Inv. Sec. LLC*, 570 B.R. 477, 481 (Bankr. S.D.N.Y. 2017) (citing *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.")). The customer also bears the burden of proving the amount of his or her claim. *In re Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513, 481 (Bankr. S.D.N.Y. 2018) (citing *Pitcheckoff v. Sec. Inv'r Prot. Corp. (In re Great E. Sec., Inc.,)*, 10. No. Civ. 8647 (CM), 2011 WL 1345152, at *4 (S.D.N.Y. Apr. 5, 2011); *In re A.R. Baron Co., Inc.*, 226 B.R. 790, 795 (Bankr. S.D.N.Y. 1998)).

Under SIPA, the Trustee's determination of a customer claim is informed by the debtor's books and records. To the extent the customer disagrees with the Trustee's determination, it must provide new evidence and demonstrate that it is entitled to an allowable customer claim. *See* SIPA § 78fff-2(b). Here, the Trustee has determined that based on BLMIS's books and records, the Melton LLC only had one customer account and that one account lacked positive net equity. BLMIS did not create two separate accounts for the Melton TIC and the Melton LLC. Nor is there any record of BLMIS being asked to do so. Nor do BLMIS's records show any objection to the Account being renamed after receipt of many years of Account statements. *See generally Blecker v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*, 605 B.R. 570, 590 (S.D.N.Y. 2019) (holding that a customer ratified transactions on his customer statement because several years had passed during which no objection had been made); *Richardson Greenshields Sec., Inc. v. Lau*, 819 F. Supp. 1246, 1259 (S.D.N.Y. 1993) (stating that customer's failure to object "over a long period of time is evidence of acquiescence in the unauthorized activity."). Therefore, the Trustee may not make an adjustment to his net equity calculation based on the existence of an alleged second account.

Furthermore, section 502(j) of the Bankruptcy Code allows a court to reconsider a previously disallowed claim for "cause" based on the "equities of the case." 11 U.S.C. § 502(j);[6] *In re Fairpoint Commc'ns, Inc.*, 462 B.R. 75, 79 (Bankr. S.D.N.Y. 2012). Motions seeking reconsideration[7] under section 502(j) of the Bankruptcy Code are analyzed in accordance with

---

[6] Chapters 1, 3, and 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply in SIPA liquidation proceedings to the extent consistent with SIPA. SIPA § 78fff(b). This Court has previously applied section 502(j) of the Bankruptcy Code to a request for reconsideration of a claim in this SIPA proceeding. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (SMB), 2019 WL 3436542, at *3 (Bankr. S.D.N.Y. July 26, 2019).

[7] Dr. Melton does not rely on a Rule or statute to support the Letter. The Trustee recognizes that the relief sought by Dr. Melton is typically analyzed under Rule 60 of the Federal Rules of Civil Procedure. Therefore, due to Dr. Melton's status as a *pro se* litigant, the Trustee has construed his arguments under section 502(j) of the Bankruptcy Code and

Rule 59 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by

Rule 9023 of the Federal Rules of Bankruptcy Procedure, and Rule 60 of the Federal Rules of Civil

Procedure, made applicable to bankruptcy proceedings by Rule 9024 of the Federal Rules of

Bankruptcy Procedure. *Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*,

No. 15 Civ. 3248 (KPF), 2016 U.S. Dist. LEXIS 21204, at *43 (S.D.N.Y. Feb. 22, 2016). Courts

have typically applied Rule 59 to motions filed within fourteen days after the entry of the order

disallowing the claim and Rule 60 to motions filed later. *Id.*; *see Davidson v. AMR Corp. (In re

AMR Corp.)*, 566 B.R. 657, 665 (S.D.N.Y. 2017). Rule 60 applies here because the Letter was

filed several years after entry of the January 26, 2016 Omnibus Order.

Rule 60(b) provides that the Court may relieve a party from a final judgment, order or

proceeding due to:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Relief under the first three prongs of 60(b) must be sought "no more than a

year after entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c).

---

Rule 60(b). *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 496 B.R. 713, 719 (Bankr. S.D.N.Y. 2013) (construing *pro se* pleadings seeking reconsideration as raising the strongest arguments that they suggest).

Because the Letter was filed more than a year after entry of the Omnibus Order, Dr. Melton may only seek relief under Rule 60(b)(4)–(6).

Because of the importance of ensuring finality in decisions of the courts, a "motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. Of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *see also Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 440, 452 (S.D.N.Y. 2011) ("Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice. The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.") (internal citations omitted)). The party seeking relief from a final order or judgment bears the burden of proof. *Int'l Bhd. Of Teamsters*, 247 F.3d at 391. Whether to grant a motion for relief under Rule 60(b) is within the sound discretion of the court. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (citing *Montco, Inv. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754, 760 (2d Cir. 1981)).

Dr. Melton has not met the high standard necessary to prevail under Rule 60(b). In fact, the Letter repeats arguments the Court previously considered and rejected in disallowing the claim of the Diana Melton Trust (the "Melton Trust"). *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (SMB), 2019 WL 3436542, at *3 (Bankr. S.D.N.Y. July 26, 2019). On behalf of the Melton Trust, Dr. Melton argued that the Trustee wrongfully disallowed the Melton Trust's claim because the Trustee failed to consider the change to the name of its BLMIS account and its new TIN. *Id.* at *4. Without pointing to any legal authority, Dr. Melton argued that BLMIS was required as a matter of law to withdraw the funds in the Melton Trust's account and re-deposit them in a new account. According to Dr. Melton, if BLMIS had done so, the Melton Trust would have been entitled to a net equity claim under the Net Investment Method. *Id.* The

Court rejected this argument and stated that even if BLMIS had opened a new account and transferred the cash into a newly created account, the Melton Trust and its transferees would be subject to substantial liability for the receipt of fraudulent transfers. *Id*. at *5.

Here, Dr. Melton argues that he allegedly asked BLMIS to open a new account for the Melton LLC but BLMIS did not comply with his request. According to Dr. Melton, the Trustee and his professionals should have considered whether BLMIS followed "standard accounting methods" to determine whether the Melton TIC and Melton LLC were separate accountholders, even if BLMIS's books and records only showed one account. If this exercise had been done, Dr. Melton contends that the Trustee would have determined that the Melton TIC and Melton LLC were separate investors each entitled to net equity claims. Under Dr. Melton's theory, this would result in a positive net equity claim for the Melton TIC as a net loser and the Melton LLC would remain a net winner.

Dr. Melton has not shown that setting aside the January 26, 2016 Omnibus Order would prevent manifest injustice, or that exceptional circumstances exist. First, Dr. Melton has failed to point to any controlling legal authority that required BLMIS as a matter of law to create a new account for the Melton LLC. Dr. Melton only asked BLMIS to change the name on the Account and BLMIS did exactly what it was asked to do. Dr. Melton even acknowledges that the number on the Account remained the same. *See* Letter at 9–10. The Court rejected a nearly identical argument with respect to the Melton Trust and it should reject Dr. Melton's argument here for the same reason. Second, Dr. Melton argues that because there was only one account, no inter-account transfers occurred between the Melton TIC and Melton LLC.[8] This argument fails to comprehend

---

[8] Under the Inter-Account Method, the Trustee determined net equity for accounts with inter-account transfers by calculating the actual amount of principal available in the transferor account at the time of the transfer, and credited the transferee account up to that same amount. Consistent with the Net Investment Method, the Trustee did not include

how net equity for accounts with inter-account transfers are calculated in this SIPA proceeding. And more importantly, it fails to explain how a new account for the Melton LLC would have been funded absent transfers from the Melton TIC. In other words, after BLMIS renamed the Account in September of 2002, no new funds were deposited for several years. Yet, during that same period, the Melton LLC withdrew $200,000 and subsequently continued to withdraw funds in excess of the available principal. These factual positions are entirely inconsistent. If the Melton TIC and Melton LLC are separate accounts, there is no explanation for how the Melton LLC account was established with no funds or how representatives of Melton LLC were able to make withdrawals, prior to any deposits being made into that account.

Finally, Dr. Melton cannot argue that he or the Melton LLC was unaware of the Omnibus Motion. The Trustee's professionals properly served the Melton LLC with notice of the Omnibus Motion and the hearing thereon in accordance with the Federal Rules of Bankruptcy Procedure.[9] Dr. Melton has not rebutted the presumption that the Melton LLC received such notice. *See FairPoint Communs., Inc.*, 462 B.R. at 80 n.7 ("The presumption of receipt or the common law 'mailbox rule' states that a properly directed letter proven to have been delivered to either the post office or the mail carrier, and not returned to the sender, is presumed to have reached its destination at the regular time and been received by the person to whom it was addressed."); *In re Barquet*

---

any fictitious gains in the net equity calculation. If the transferor account did not have any principal available at the time of the inter-account transfer, the transferee account was credited with $0 for that transfer. Similarly, if the transferor account had principal available at the time of the inter-account transfer, the transferee account was credited with the amount of the inter-account transfer, to the extent of that principal. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014) *aff'd sub nom. Diana Melton Trust, Dated 12/05/05 v. Picard (In re Bernard L. Madoff)*, 2016 WL183492 (S.D.N.Y. Jan. 14, 2016) *aff'd Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 697 F. App'x 708 (2d Cir. 2017).

[9] *See* Fed. R. Bankr. P. 3007. The Trustee's professionals served the Melton LLC by regular mail at the address of its former counsel of record and at the address identified as belonging to the Melton LLC. *See* ECF No. 12309.

*Grp., Inc.*, 477 B.R. 454, 462 n.7 (Bankr. S.D.N.Y. 2012) (same); *In re Worldcom, Inc.*, 2005

Bankr. LEXIS 3481, at *9 (Bankr. S.D.N.Y. Oct. 27, 2005) (same).

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Dr. Melton has failed to carry his burden in showing that the

relief requested in the Letter is warranted. Therefore, the Trustee respectfully requests that the

Court enter an order denying the relief requested in the Letter and granting such other and further

relief as is just.

Dated: New York, New York                    Respectfully submitted,
     May 20, 2020

                                       */s/ David J. Sheehan*
                                       David J. Sheehan
                                       Email: dsheehan@bakerlaw.com
                                       Nicholas J. Cremona
                                       Email: ncremona@bakerlaw.com
                                       Jorian L. Rose
                                       Email: jrose@bakerlaw.com
                                       Amy E. Vanderwal
                                       Email: avanderwal@bakerlaw.com
                                       Jason I. Blanchard
                                       Email: jblanchard@bakerlaw.com
                                       **Baker & Hostetler LLP**
                                       45 Rockefeller Plaza
                                       New York, New York 10111
                                       Tel: (212) 589-4200
                                       Fax: (212) 589-4201

                                       *Attorneys for Irving H. Picard, Trustee for the*
                                       *Substantively Consolidated SIPA Liquidation*
                                       *of Bernard L. Madoff Investment Securities LLC*
                                       *and the chapter 7 estate of Bernard L. Madoff*