UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SECURITIES INVESTOR PROTECTION          :
CORPORATION,                            :          Adv. Proc. No. 08-01789 (SMB)
                                        :
                Plaintiff,              :          SIPA LIQUIDATION
                                        :
          v.                            :          (Substantively Consolidated)
                                        :
BERNARD L. MADOFF INVESTMENT            :
SECURITIES LLC,                         :
                                        :
                Defendant.              :
------------------------------------------------------X
                                        :
In re:                                  :
                                        :
BERNARD L. MADOFF,                      :
                                        :
                Debtor.                 :
------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER DENYING THE LETTER MOTION OF ALAN R. MELTON ET AL TENANTS IN COMMON TO FILE A LATE CUSTOMER CLAIM

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111

      David J. Sheehan, Esq.
      Nicholas J. Cremona, Esq.
      Jorian L. Rose, Esq.
      Amy E. Vanderwal, Esq.
      Jason I. Blanchard, Esq.
         Of Counsel

*Attorneys for Irving H. Picard, Trustee*
*  for the Liquidation of Bernard L. Madoff*
*  Investment Securities LLC*

ALAN R. MELTON ET AL TENANTS
IN COMMON
        Alan R. Melton, M.D.
*Pro se*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

        The Melton Family LLC ("Melton LLC") maintained account 1ZA894 (the
"Account") with Bernard L. Madoff Investment Securities LLC ("BLMIS").  The Account
was a net winner, and by order dated January 26, 2016 ("Disallowance Order"),[1] the
Court disallowed its net equity claim.  Nearly four years later, Dr. Alan R. Melton, the
sole member of Melton LLC, said the Trustee had made a mistake.  He sent a letter to
the Court on September 11, 2019 (the "*Letter Motion*") (ECF Doc. # 19001)[2] asserting
that the Account, which was initially held in the name of Alan R. Melton *et al* T/I/C
("Melton TIC"), a tenancy-in-common, and subsequently held in the name of Melton
LLC, was actually two different accounts.  According to Dr. Melton, the Melton TIC
account had positive net equity and was therefore entitled to a net equity claim against
the BLMIS customer property estate.  Irving H. Picard ("Trustee"), the trustee for the
liquidation of BLMIS under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et
seq.* ("SIPA"), opposed the relief sought in the *Letter Motion*.  (*See Trustee's Opposition
to the Letter of Dr. Alan Melton Requesting Relief from the Court*, dated May 20, 2020

---

[1]        *See Order Granting Trustee's Seventh Omnibus Motion to Disallow Claims and Overrule
Objections of Claimants Who Have No Net Equity*, dated Jan. 26, 2016 (ECF Doc. # 12518).

[2]        "ECF Doc. # _" refers to documents filed on the electronic docket of this case.

- 2 -

("*Trustee Opposition*") (ECF Doc. # 19532).)[3]  For the reasons stated, the relief

requested in the *Letter Motion* is denied.

## BACKGROUND

### A.    The Account

On or about December 1992, Melton TIC opened the Account with BLMIS.

(*Sehgal Declaration* ¶ 11.)  By September 18, 2002, deposits exceeded withdrawals by

$365,000.  (*See Notice of Trustee's Determination of Claim*, dated Oct. 19, 2009

("Trustee Determination")[4] at 4.)  On the latter date, Dr. Melton sent a fax to Frank

DiPascali at BLMIS asking BLMIS to change the name of the Account from Melton TIC

to Melton LLC and make a corresponding change to the tax identification number

("TIN") linked to the Account.[5]  BLMIS did precisely what Dr. Melton asked, made no

other changes and continued to send monthly statements that listed the same account

number as the pre-September 2002 statements.  Between September 2002 and the

demise of BLMIS in December 2008, the withdrawals from the Account exceeded the

deposits by $510,000.  As a result, the net equity in the Account, which had been

positive $365,000 at the time of the name change, was negative $145,000 by December

2008.  (*See* Trustee Determination at 4.)

---

[3]        *See also Declaration of Vineet Sehgal in Support of the Trustee's Opposition to the Letter of Dr. Alan Melton Requesting Relief from the Court*, dated May 20, 2020 ("*Sehgal Declaration*") (ECF Doc. # 19533).

[4]        A copy of the Trustee Determination is attached as Exhibit 5 to the *Sehgal Declaration*.

[5]        A copy of Dr. Melton's fax is attached as Exhibit 8 to the *Sehgal Declaration*.

B.    **The Claim Dispute**

After the commencement of the BLMIS SIPA liquidation, Melton LLC, then

represented by counsel, filed a customer claim (the "Customer Claim")[6] in accordance

with the claims allowance procedure adopted by the Court[7] in the amount of

$2,268,933.17.  The amount corresponded to the balance listed on the final monthly

statement for the Account before Madoff's arrest.  (*See* Customer Claim at 2.)  On

October 19, 2009, the Trustee sent the Trustee Determination denying the Customer

Claim because no securities were ever purchased for the Account, the amount

withdrawn exceeded the amount deposited by $145,000, and the withdrawals were

funded by deposits of other BLMIS customers.  (Trustee Determination at 1-2.)  Melton

TIC never filed a separate customer claim.  (*Sehgal Declaration* ¶ 13.)

The following month, Melton LLC, through its counsel, objected to the Trustee

Determination.  (*See Objection to Trustee's Determination of Claim*, dated Nov. 17,

2009 ("Melton LLC Objection").)[8]  Counsel argued, *inter alia*, that the Account's net

equity should reflect the amount listed on its final BLMIS statement (Melton LLC

Objection at ¶¶ 9, 11), Melton LLC was entitled to interest on its deposits under state law

(*id*. at ¶ 12), at least some of the gains were not fictitious to the extent BLMIS engaged in

actual trades for the Account (*id*. at ¶ 14), and Melton LLC was entitled to an offset for

taxes paid based on fictitious gains.  (*Id*. at ¶ 15.)  Dr. Melton did not contend at the time

---

[6]    A copy of the Customer Claim is attached as Exhibit 4 to the *Sehgal Declaration*.

[7]    *See Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claims; and Providing Other Relief*, dated Dec. 23, 2008, a copy of which is attached as Exhibit 1 of the *Sehgal Declaration*.

[8]    A copy of the Melton LLC Objection is attached as Exhibit 6 to the *Sehgal Declaration*.

that the Melton TIC account and the Melton LLC account were two different accounts,

the former with positive net equity and the latter with negative net equity.

The legal issues raised in the Melton LLC Objection were resolved through

subsequent litigation.[9]  The Second Circuit approved the Trustee's "Net Investment

Method" of calculating a customer's net equity claim which netted deposits against

withdrawals and ignored the fictitious profits appearing on the BLMIS customer

statements.  *In re BLMIS*, 654 F.3d 229, 233-35 (2d Cir. 2011), *cert. denied*, 567 U.S.

934 (2012).  Therefore, if a customer withdrew more from his BLMIS account than he

deposited, he was a "net winner" and did not have a net equity claim.  Moreover, the

Second Circuit rejected the contention that a net equity claim must account for inflation

or interest, *SIPC v. 2427 Parent Corp.* (*In re BLMIS*), 779 F.3d 74, 79-81, 83 (2d Cir.),

*cert denied*, 136 S. Ct. 218 (2015), and this Court rejected the argument that net equity

should take into consideration the taxes paid by the customer.  *SIPC v. BLMIS* (*In re

BLMIS*), 522 B.R. 41, 54 n. 9 (Bankr. S.D.N.Y. 2014), *aff'd*, 14 Civ. 1151 (PAE), 2016 WL

183492 (S.D.N.Y. Jan. 14, 2016), *aff'd*, 697 F. App'x 708 (2d Cir. 2017) (summary

order); *cf. Picard v. Nelson* (*In re BLMIS*), 610 B.R. 197, 236-37 (Bankr. S.D.N.Y. 2019)

(a defendant who withdrew fictitious profits from a Ponzi scheme may not offset

fraudulent transfer liability with the taxes paid on account of those fictitious gains)

(citing precedent).

---

[9]      Dr. Melton has not argued or offered evidence that BLMIS engaged in actual trades for the
Account.

On December 11, 2015, the Trustee moved to disallow numerous claims including the Customer Claim ("Disallowance Motion").[10]  Relying on the precedent just discussed, he argued in substance that these customers were net winners and their BLMIS accounts had either zero or negative net equity.  The Court granted the Disallowance Motion and entered the Disallowance Order on January 26, 2016, and Melton LLC did not appeal.  The gravamen of the *Letter Motion* is that when BLMIS changed the name and TIN in September 2002, it should have opened a new account, leaving the first account in the name of Melton TIC with positive net equity.  The Court previously rejected this same argument made by Dr. Melton in connection with a different BLMIS account, *see SIPC v. BLMIS* (*In re BLMIS*), No. 08-01789 (SMB), 2019 WL 3436542 (Bankr. S.D.N.Y. July 25, 2019) ("*Diana Trust Decision*"), and reaches the same conclusion today.

## DISCUSSION

### A.    Standing

Initially, the Trustee challenges Dr. Melton's standing to represent Melton LLC *pro se*.  (*See Trustee Opposition* at 11.)  A party, in this regard, has the burden to demonstrate his standing.  *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018).  In response to the Trustee's standing challenge, Dr. Melton submitted a letter to the Court on May 21, 2020 stating that he was the sole member and beneficiary of Melton LLC and that Melton LLC had no creditors.  (*See* Letter, dated May 21, 2020 (attaching declarations from other interest holders disclaiming their interest in Melton

---

[10]    *See Trustee's Seventh Omnibus Motion to Disallow Claims and Overrule Objections of Claimants Who Have No Net Equity*, dated Dec. 11, 2015 (ECF Doc. # 12242).

LLC) (ECF Doc. # 19536).)  However, a limited liability company, even if it has only one member, may not appear in federal court without an attorney.  *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007); *accord Sanchez v. Walentin*, 526 F. App'x 49, 51 (2d Cir. 2013) ("a layperson may not represent . . . a limited liability company of which he is the sole member") (summary order).

After the hearing, Dr. Melton sent an email claiming that he was actually appearing on behalf of Melton TIC, not Melton LLC, in the instant proceeding.  (*See* Email, dated May 27, 2020 (ECF Doc. # 19552).)  This does not, however, resolve the Trustee's challenge.  "A tenancy in common exists when two or more persons each own and possess an undivided interest in property, real or personal."  *Chiang v. Chang*, 529 N.Y.S.2d 294, 295 n. 1 (N.Y. App. Div. 1988).  Each tenant in common holds title and interest independently of the other tenants in common.  *LoCurto v. LoCurto*, No. 07 Civ. 8238 (NRB), 2008 WL 4410091, at *7 (S.D.N.Y. Sept. 25, 2008).  Although a single tenant in common may bring an action that affects his undivided possessory interest such as an ejectment action or a summary proceeding to recover possession of real property, the tenant may not bring an action "for damages to the common interest.  For that, it is necessary that all of the tenants-in-common join the complaint."  *Caprer v. Nussbaum*, 825 N.Y.S.2d 55, 64 (N.Y. App. Div. 2006) (citing authorities); *see also Hoheb v. Muriel*, 753 F.2d 24, 27 (3d Cir. 1985) (absent co-tenant-mortgagees were necessary parties under Federal Civil Rule 19 in an action for rescission of a sale of real property owned by tenants in common).

A net equity claim against the BLMIS customer property estate is analogous to a claim for damages to all the tenants in common.  Dr. Melton has not identified a

personal interest separate from the interests of the other tenants in common.  He lacks

standing to assert the rights of the other tenants in common in the net equity claim, and

they have failed to join in the *Letter Motion* to assert their own interests.  As a result,

Dr. Melton has not demonstrated his standing to pursue the net equity claim on behalf

of Melton TIC.

**B.    Relief Sought in the *Letter Motion***

Even if he had standing, the *Letter Motion* fails as a procedural matter and on the

merits.  The Disallowance Order expunged the Customer Claim filed by Melton LLC.

Melton TIC never filed a separate customer claim, and Dr. Melton stated in his post-

hearing email that he is only appearing on behalf of Melton TIC.  Therefore, the *Letter*

*Motion* must be viewed as a motion by Melton TIC to file a late customer claim against

the BLMIS customer property estate.

SIPA § 78fff-2(a)(3) states in pertinent part:

No claim of a customer . . . which is received by the trustee after the
expiration of the six-month period beginning on the date of publication of
notice under paragraph (1) shall be allowed, except that the court may,
upon application *within such period and for cause shown*, grant a
reasonable, fixed extension of time for the filing of a claim by the United
States, by a State or political subdivision thereof, or by an infant or
incompetent person without a guardian.

(Emphasis added).  SIPA's deadline for filing claims is strictly enforced, and exceptions

are limited to applications made within the six-month period by the classes of claimants

enumerated in the statute and for cause shown.  *In re Adler, Coleman Clearing Corp.*,

204 B.R. 99, 103 (Bankr. S.D.N.Y. 1997); *accord In re MF Global Inc.*, Case No. 11–

2790(MG), 2014 WL 657321, at *2 (Bankr. S.D.N.Y. Feb. 20, 2014).  The Court may not

resort to equity to extend the deadline, *Adler Coleman*, 204 B.R. at 103, and the

- 8 -

"excusable neglect" exception set forth in Rule 9006(b)(1) of the Federal Rules of

Bankruptcy Procedure is unavailable in SIPA liquidations. *In re Lehman Bros. Inc.*, 493

B.R. 437, 443-44 (Bankr. S.D.N.Y. 2013).

Melton TIC has failed to demonstrate a basis for an extension. First, it failed to

seek an extension within the six-month period permitted by SIPA. Dr. Melton and his

counsel obviously received notice of the deadline because they filed a timely Customer

Claim.

Second, Melton TIC has failed to show cause. Dr. Melton has not identified a

change in law or pointed to anything that he learned in the past ten years that he did not

know at the time he or counsel submitted the only Customer Claim. Importantly, he

knew that he had sent DiPascali a fax asking BLMIS to change the name and the TIN on

the Account. Thereafter, he continued to receive monthly customer statements that

bore the same account number. Instead, he has developed a new legal theory for why

first BLMIS and then the Trustee should have treated Melton TIC as having a separate

account with a positive net equity. Accordingly, he has failed to show cause to extend

the claim filing deadline.

Moreover, Dr. Melton's arguments lack merit and rehash the same arguments he

made, and the Court rejected, in the *Diana Trust Decision*. In the latter case, which

involved a different account but nearly identical facts, Dr. Melton asserted that BLMIS

should have closed out rather than simply rename that account when he asked BLMIS to

change the name and the TIN. For support, he referred to conversations with

representatives of Fidelity and Vanguard, but the Court rejected his authorities:

> The Diana Trust has not pointed to any legal authority, such as a statute or regulation, to support its underlying contention that BLMIS was required as a matter of law to withdraw cash from and then redeposit cash in the Account. They have alluded to conversations with representatives at Vanguard and Fidelity, (June 26, 2019 Hr'g Tr. at 6:15-17 (ECF Doc. # 18863)), but these statements are hearsay and, in any event, are inadmissible to prove the law.

*Diana Trust Decision*, 2019 WL 3436542, at *4. Dr. Melton cites the same authorities in support of the *Letter Motion* and the Court rejects them for the same reason. At bottom, Dr. Melton never instructed BLMIS to open a second account, and BLMIS did exactly what Dr. Melton asked it to do: change the name and TIN on the Account.

Additionally, Dr. Melton acquiesced in BLMIS's treatment of interests held in the names of Melton TIC and Melton LLC as a single account. He received customer statements before and after the name change containing the same Account number. (*See Sehgal Declaration*, Ex. 11.) He affirmatively listed the same Account number in BLMIS redemption requests on behalf of both Melton TIC and Melton LLC. (*See id.*, Ex. 10.) Last, he filed the Customer Claim on behalf of Melton LLC which sought credit for the deposits made by Melton TIC. Therefore, Dr. Melton ratified BLMIS's treatment of the Account as a single account. *Richardson Greenshields Sec. Inc. v. Lau*, 819 F. Supp. 1246, 1259 (S.D.N.Y. 1993) (brokerage customer's "failure to object over a long period of time is evidence of acquiescence in the unauthorized activity") (citation and internal quotation marks omitted); *Altschul v. Paine, Webber, Jackson & Curtis, Inc.*, 518 F. Supp. 591, 594 (S.D.N.Y. 1981) ("By failing to object to the course of trading in the accounts for approximately two years despite ample opportunity to do so, the Altschuls must be held to have ratified the transactions conducted on their behalf."); *see also Blecker v. Picard* (*In re BLMIS*), 605 B.R. 570, 590 (S.D.N.Y. 2019) ("customers'

conduct in acquiescing to observed withdrawals on their statement can be held to ratify those transactions, provided that enough time passed during which no objection was made").

Finally, Dr. Melton misreads the *Diana Trust Decision*.  In describing the "Inter-Account Method," which limits the amount credited to an inter-account transferee by the transferor's net equity calculated under the Net Investment Method, *Diana Trust Decision*, 2019 WL 3436542, at *2 (citing *Sagor v. Picard* (*In re BLMIS*), 697 F. App'x 708, 711 (2d Cir. 2017) (summary order)), the Court observed that "if the transferor account was a net winner with zero net equity at the time of the transfer, the transferee account did not receive any credit." *Id.*  Dr. Melton argues that the opposite applies here because Melton TIC, as the transferor, had positive net equity.  (*Letter Motion* at ECF p. 4 of 12.)  Aside from the fact that there was no inter-account transfer because there was only one account, the Inter-Account Method does not help Dr. Melton.  Assuming Melton TIC *transferred* $365,000 in positive net equity to Melton LLC in September 2002, that positive net equity was completely dissipated.  By the time of BLMIS's collapse, Melton LLC had withdrawn all of the $365,000 plus an additional $145,000 in fictitious profits.

**CONCLUSION**

For the reasons stated, the *Letter Motion* is denied.  So ordered.


Dated:  New York, New York
         June 10, 2020


                                    /s/ *Stuart M. Bernstein*
                                    STUART M. BERNSTEIN
                                    United States Bankruptcy Judge