# CHAITMAN LLP
### 465 PARK AVENUE
### NEW YORK, NY 10022
### (888) 759-1114
TELEPHONE & FAX

*HELEN DAVIS CHAITMAN*
hchaitman@chaitmanllp.com

June 10, 2020

**VIA ECF**

The Honorable Stuart M. Bernstein, U.S.B.J.
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

    Re:    *Picard v Estate of Allen Meisels,* Adv. Pro. No. 10-04428 and
              *Picard v Estate of Seymour Epstein,* Adv. Pro No. 10-04438

Dear Judge Bernstein:

    We are counsel to all Defendants in the Meisels and Epstein Actions. We write in response to the June 9, 2020 letter of counsel for Irving H. Picard, Trustee for the liquidation of Bernard L. Madoff Investment Securities, LLC (the "LLC") requesting a pre-motion conference in each Action on July 29, 2020 pursuant to Rule 7056-1(a).

    The Defendants do not dispute the Trustee's recitation of the events leading up to their requests for a pre-motion conference. However, this Court has already indicated that it will deny a motion for summary judgment. During a recent conference, the Court expressed its concerns regarding the Trustee's announced intention to move for summary judgment in another, similar case, *Picard v. Savin,* Adv. Pro. No. 10-04889. The Court stated: "[y]ou know my view on these summary judgment . . . , motions, particularly on the issues I've identified, [whether the JPMC Accounts were held by Madoff personally or by the LLC, whether the LLC was a Ponzi scheme, and if so, when it began, whether the LLC was allocating T-bills purchased by the proprietary trading arm to customers of the IA business, deposits and withdrawals] . . . I have to try it." *See* **Exhibit A,** March 17, 2020 Hearing Tr. 9:23-10:15; 12:11-15, *Picard v. Savin,* Adv. Pro. No. 10-04889.

    This Court ruled that the Trustee is not entitled to summary judgment in *Picard v. Legacy Capital, Ltd.,* 603 B.R. 682 (Bankr. S.D.N.Y. 2019) (summary judgment denied, partly on grounds that there were disputed issues of fact regarding withdrawals from Legacy's account), and in *Picard v. Mann,* 608 B.R. 165 (Bankr. S.D.N.Y. 2019) (summary judgment denied, partly on grounds that there were disputed issues of fact regarding whether the LLC owned the funds used to make payment of the alleged withdrawals).

{00044582 1 }

**CHAITMAN LLP**

Hon. Stuart M. Bernstein
June 10, 2020
Picard v Estate of Allen Meisels
and Picard v Estate of Seymour Epstein
Page 2

As in *Legacy,* Defendants intend to prove that Madoff owned the T-bills shown on the accounts in each of the Meisels and Epstein Actions at the same time these T-bills appeared in the Defendants' accounts; and that the T-bills were purchased with investment advisory customer's money. This Court denied the Trustee's motion for summary judgment against Legacy Capital in part on the same grounds, holding that "[t]hese discrepancies and the relationship, if any, between BLMIS's purchase of T-Bills from brokers and the apparent resale of a portion of these purchases to customers like Legacy raise factual issues that the Court cannot resolve on this motion." *Legacy,* 603 B.R. at 697.

As in *Mann,* the Defendants in the Meisels and Epstein Actions will prove that any monies that were transferred were never the property of the Trustee's debtor, Bernard L. Madoff Investment Securities, LLC (the "LLC"), since Madoff's sole proprietorship never transferred ownership of its accounts ending 703 and 509 at JPMorgan Chase to the LLC. In *Mann,* 608 B.R. at 177, this Court denied summary judgment and held that "the Court must conduct a trial to determine whether the Two-Year Transfers were transfers by the debtor within the meaning of SIPA § 78fff-2(c)(3) and Bankruptcy Code § 548(a)(1)(A)."

Moreover, the Defendants in the Meisels and Epstein Actions have different proofs from each other and from those that were submitted in *Picard v. Nelson,* 610 B.R. 197 (Bankr. S.D.N.Y. 2019), or, indeed, in any other matter. As an example, Meisels' account with Madoff was an IRA account held in the name of Madoff's mandated IRA custodian, NTC/Fiserv, whom the Trustee voluntarily dismissed as a defendant. Meisels did not withdraw any funds from his IRA account in the two years prior to Madoff's confession; and, when he did take mandatory withdrawals, he did so as a "subsequent transferee." The Bankruptcy Code provides a specific statutory defense for Meisels in 11 U.S.C. § 550(b)(1). This provision "limits the Trustee's recovery from a subsequent transferee to the extent the subsequent transferee '[took] for value, . . . in good faith, and without knowledge of the voidability' of the initial transfer." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 195-96 (Bankr. S.D.N.Y. 2018). The Trustee must establish that "(1) the initial transfer is avoidable, and either (2) the subsequent transferee lacked good faith or (3) received the subsequent transfer with knowledge that the initial transfer was avoidable." *Id*. There is no dispute that Meisels took mandatory withdrawals from his IRA account after December 11, 2008 in good faith and pursuant to a statutory obligation.

The Trustee does not have standing to assert this affirmative defense on behalf of Fiserv, a non-party. But even if he did, Fiserv would not be entitled to avail itself of this equitable defense because the Trustee cannot establish that Fiserv exercised good faith. Rather, the evidence demonstrates that Fiserv was, at best, willfully blind to Madoff's fraud. More likely, based upon the evidence, however, is that Fiserv materially and knowingly assisted Madoff in defrauding Meisels, and it profited in doing so. Fiserv had an exclusive business relationship with Madoff whereby any customer wishing to invest in Madoff through an IRA would be required to open an account at Retirement Accounts, Inc., a division of Fiserv, and to appoint Fiserv as the account's

{00044582 1 }

**CHAITMAN LLP**

Hon. Stuart M. Bernstein
June 10, 2020
Picard v Estate of Allen Meisels
and Picard v Estate of Seymour Epstein
Page 3

custodian. Fiserv materially expanded the pool of Madoff victims. Fiserv's exclusive relationship was established by Madoff, not by Meisels; and it was lucrative for Fiserv because it allowed Fiserv to automatically deduct fees for itself from retirement accounts invested with Madoff. It was also lucrative for Madoff because it allowed Madoff to broaden his client base to include IRA accounts.

Unlike "mere conduits" generally, Fiserv's exclusive relationship with Madoff allowed it to obtain full dominion and control over the transfers in conjunction with Madoff. Like all Madoff customers who invested in Madoff through their retirement accounts, Meisels opened an account at Fiserv because Madoff required him to do so. Meisels' financial representative who dealt with Fiserv was Frank DiPascali, who ran the IA business for Madoff and was primarily responsible for defrauding Meisels and thousands of other customers. *See U.S. v. Boneventre*, 10-cr-228 (S.D.N.Y.). DiPascali and Fiserv were able to exercise full control over the IRA and they could make withdrawals without even informing Meisels.

Fiserv's control was so significant that, on multiple occasions, it improperly diverted funds from the IRA to pay fees that were not due to it. Fiserv later refunded many of these improper charges, recognizing that it acted wrongfully in diverting Meisels' funds to pay itself. Fiserv also controlled the timing of the Transfers, ignoring requests from Meisels that the $1.5 Million Transfer be made by November 30, 2006 and, instead, only purporting to receive the request weeks later, on the same date that it generated an invoice which it paid with that Transfer.

Even with Fiserv's unjustified delay in processing Meisels' request, Madoff deducted the $1.5 million withdrawal from the IRA Account on December 7, 2008 -- before the two-year period for which the Trustee can sue to recover withdrawals. But for Fiserv's self-dealing, the $1.5 million transfer would have unquestionably been made several days before December 11, 2006 and thus would not be recoverable by the Trustee under any theory. *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 423 (2d Cir. 2014) (bankruptcy trustee can recover fraudulent transfers under § 548(a)(1) only when the transfers took place within two years of the petition date). Moreover, rather than simply holding the funds in the IRA Account, Fiserv invested the funds in the Fiserv Money Market Account, thus allowing Fiserv to profit on the funds it held for Madoff's IRA customers. Instead of being a mere conduit, Fiserv at all times was the beneficiary of the transfers, and it exercised dominion and control over the transfers. *See In re Manhattan Inv. Fund Ltd.,* 397 B.R. 1, 17 (S.D.N.Y. 2007) (an entity that exercises dominion and control over funds is not a mere conduit).

The Epstein case is equally complex factually. The defendants include two former Madoff account holders, one a deceased individual and the other a dissolved corporation; the executor of the individual account holder's estate; the two trustees of a trust; and five subsequent transferee defendants. This is not a case which could possibly be decided on summary judgment.

{00044582 1 }

**CHAITMAN LLP**

Hon. Stuart M. Bernstein
June 10, 2020
Picard v Estate of Allen Meisels
and Picard v Estate of Seymour Epstein
Page 4

    It would be a waste of judicial resources for this Court to allow the Trustee to move for summary judgment in these two cases and it would impose an unjustifiable economic burden on the defendants.

Respectfully submitted,

*Helen Davis Chaitman*

Helen Davis Chaitman

HDC:aws

Cc (via email):
    David Sheehan, Esq
    Nicholas J. Cremona, Esq.

{00044582 1 }