

mwe.com

Andrew B. Kratenstein
Attorney at Law
akratenstein@mwe.com
+1 212 547 5695

July 8, 2020

VIA ECF AND E-MAIL

The Honorable Stuart M. Bernstein
United States Bankruptcy Court
One Bowling Green
New York, NY 10004-1408

Re:   *Picard v. Sage Associates, et al.*, Adv. Pro. No. 10-04362 (SMB)
      *Picard v. Sage Realty, et al.*, Adv. Pro. No. 10-04400 (SMB)

Dear Judge Bernstein:

I write on behalf of defendants Sage Associates, Sage Realty, Malcolm Sage, Martin Sage, and Ann Sage Passer (collectively, the "Sages") in the above-referenced Adversary Proceedings to request a conference concerning the Orders Setting Pretrial Deadlines and Scheduling a Final Pre-Trial Conference (collectively, the "Pretrial Scheduling Orders").[1]  Pursuant to the Pretrial Scheduling Orders, the parties are scheduled to exchange a draft Joint Pretrial Order on or before July 15, 2020, followed by various other deadlines in advance of the final pretrial conference scheduled for August 29, 2020.

On July 2, 2020, I sought the Trustee's consent to a 90-day extension of these deadlines principally because certain securities pricing information that we need in order to rebut assertions made by Bruce Dubinsky, one of the Trustee's experts, is not currently available due to COVID-19.  Specifically, Mr. Dubinsky dedicates an entire section of his report specific to the Sages' accounts to arguing that certain trades reflected in the Sages' account statements were outside the daily price range for the security at issue on the day of the trade.  (Ex. A, Dubinsky Report ¶¶ 37-39 and Exhibit 2.)

The publicly available pricing data relied on by Mr. Dubinsky dates back to the early 1990s and is not available on-line.  In order to rebut Mr. Dubinsky's assertions, the Sages are entitled to review and analyze the same pricing information, as well as pricing information dating back to the 1980s.  Our analysis will confirm that:  (1) Mr. Dubinsky's pricing analysis is wrong; (2) the Sage Associates account achieved both negative and positive returns over the years since the account was opened in 1980;[2] and (3) those returns tracked the returns of the securities reflected in the account.  It is critical that we have the opportunity to share this information with the Court as it will further demonstrate that

---

[1] Adv. Pro. No. 10-04362, Doc. No. 110; Adv. Pro. No. 10-04400, Doc. No. 110.

[2] Madoff statements provided month-end individual and portfolio stock pricing only after January 1993.



**340 Madison Avenue   New York NY 10173-1922   Tel +1 212 547 5400   Fax +1 212 547 5444**

*US practice conducted through McDermott Will & Emery LLP.*

The Honorable Stuart M. Bernstein
July 8, 2020
Page 2

the Sages Associates account differed entirely from the split-strike accounts, which generated consistently positive returns within a narrow band.

The pricing data for equities and bonds that we need to rebut Mr. Dubinsky and support the Sages' defense is available to the public via microfilm at only one location of which we are aware – in a special collection housed at the New York Public Library.  The NYPL is a repository for recognized publications that list prices of all stocks and bonds, including those that are currently defunct, have merged into other companies, have gone private or are otherwise no longer traded on exchanges, were previously traded on other exchanges, were "spun off" by another entity, underwent a name change, or had their pricing impacted by stock splits or multiple stock splits from time to time.  In fact, it was in the NYPL where Mr. Dubinsky himself obtained some of the pricing data on which he relies.  (*See* Ex. B, United States v. Bonventure, et al., Trial Tr. at 1262:25-1263:6) ("I had people that went down to the New York Public Library and pulled old numbers all the way back as far as we could go, old bond guides. There were books that the talked about the old pricing of bonds and preferred stocks in the old stacks of the New York Library. We had to go back and pull that data, because you can't get it online.").

We began reviewing this pricing data after mediation failed in February 2020 (the Mediator's Final Reports were filed on March 5, 2020),³ which was prior to the full onset of the COVID crisis.  We did not complete our work before the New York Public Library was closed on March 14, 2020, and even before that date library hours and regulations were significantly altered, which slowed our work.  No reopening date has been announced.  Accordingly, the Sages cannot complete their pretrial filings or preparations without access to this data.

It also bears reiterating that these cases are ***not*** like the other cases you have tried or ruled on to date and raise distinct issues.  Critically for purposes of these adversary proceedings, the Second Circuit premised its "Net Equity Opinion" entirely on Madoff's split-strike fraud and explicitly excluded all non-split strike accounts.  *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229, 242 n.1 (2d Cir. 2011) ("The non-split strike customers are not parties to this appeal.").  The Second Circuit also observed that the Securities Investor Protection Act "covers potentially a multitude of situations; ***no one size fits all***." *Id.* at 241 (emphasis added).  The Second Circuit also stated:  "In holding that it was proper for Mr. Picard to reject the Last Statement Method, we expressly do not hold that such a method of calculating 'net equity' is inherently impermissible.  ***To the contrary,*** a customer's last account statement will likely be ***the most appropriate means*** of calculating 'net equity' ***in more conventional cases***." *Id.* at 238 (emphasis added).  Most relevant here, the Second Circuit held that "the Last Statement Method may be ***especially appropriate*** where – ***unlike with the BLMIS accounts at issue in this appeal – customers authorize or direct purchases of specific stocks***." *Id.* at 238 (emphasis added, citation omitted).

Here, the Sage Associates account was not a split-strike account during the relevant time period.  Rather, the Sages authorized or directed the trading in that account and other Sage accounts.  After I presented Your Honor with correspondence from Malcolm Sage to Bernard Madoff authorizing and directing

---

³ Adv. Pro. No. 10-04362, Doc. No. 104; Adv. Pro. No. 10-04400, Doc. No. 104.



The Honorable Stuart M. Bernstein
July 8, 2020
Page 3

trading, Your Honor observed that the Sages are "*in a different position*" than the split-strike customers because the Sages "*can identify specific instructions*." (Ex. C at 50:1-9) (emphasis added).

The Trustee seeks to expunge the language above from the Net Equity Opinion. And, although the Sages contend that all that matters for purposes of the Net Equity Opinion is that they authorized or directed the trades – not whether the trades were actually executed – the Sages also intend to rebut Mr. Dubinsky's opinions, including his opinion that certain of the Sages' trades were purportedly outside the daily price range for the security at issue.

In addition, because of the COVID-19 pandemic, I have not had access to my office since early March and have therefore been unable to review certain documents critical to my clients' defense. Among the many materials inaccessible to me was a hard drive located in my office, which contained voluminous records on which the Trustee's five experts relied in rendering their opinions. Since these records are critical to the Trustee's case, and many are likely to be trial exhibits, a careful review (and, in some cases, re-review) of them is imperative before exchanging a draft Joint Pretrial Order.

In May, the Trustee's counsel kindly accommodated my request to resend these records to me. However, upon a lengthy review, we discovered that 71,000 pages were missing from the production. After the Trustee's counsel produced these missing pages on June 22, 2020, a different problem surfaced: these 71,000 pages had been divided arbitrarily into many shorter documents bearing no discernible relationship to the Bates sequences in the appendix to Mr. Dubinsky's expert report. Reassembling these documents, which we are still endeavoring to do, is a time-consuming and methodical exercise requiring another unanticipated expenditure of time and effort. As soon as this additional impediment became apparent, I notified the Trustee's counsel.

I also have not been able to meet with my clients since mid-March, nor have they been able to meet with each other. Two of my three clients are over the age of 65 and their spouses are all over this age as well, placing them in the highest risk group for COVID complications. Underlying health conditions and immunosuppressed systems further imperil their health. The Sages are entitled to review and discuss with their attorneys and each other all records, documents, and other data relevant to their cases at every step in the case preparation process, which has been hampered by the pandemic.

Any one of the factors cited above would alone justify an extension of the pretrial deadlines. Together, they jeopardize my ability to provide adequate and effective counsel to my clients, and threaten the due process to which they are entitled as the Trustee attempts to strip them of their life savings.

Any delays in this case have not been caused by my clients or me. The Sages could only operate within the time constraints and scheduling established principally by the Trustee, which coincidentally had mediation concluding at the very time the pandemic set in. Indeed, *the Trustee* has taken ten years to prosecute his case and delayed by, *inter alia*, seeking to extend discovery in February 2018 and again in October 2018 to take more depositions and to serve his expert reports. Those motions alone took a year to brief and decide. (*See* Adv. Pro. No. 08-01789, ECF Doc. No. 18480.) A 90-day allowance for my



The Honorable Stuart M. Bernstein
July 8, 2020
Page 4

clients to be able to defend themselves hardly seems like much of a request given the unprecedented nature of the times and the hardships and logistical impossibilities caused by them.

Accordingly, the Sages respectfully request that the Court grant an extension of the deadlines in the Pretrial Scheduling Orders for at least 90 days, which represents at minimum the amount of time that has been lost to effective case preparation due to the pandemic. If the New York Public Library has not opened by then, the Sages reserve the right to seek a further extension. The Sages' proposed schedule is as follows:

| Activity | Date |
| --- | --- |
| Exchange draft Joint Pre-Trial Order (45 days prior) | October 11, 2020 |
| Exchange Exhibits and Deposition Designations (30 days prior) | October 26, 2020 |
| Exchange Objections to Exhibits and Deposition Designations (21 days prior) | November 4, 2020 |
| File Motions in Limine (14 days prior) | November 11, 2020 |
| File Oppositions to Motions In Limine (7 days prior) | November 18, 2020 |
| Proposed Final Joint Pre-Trial Order to Judge Bernstein's Chambers (7 days prior) | November 18, 2020 |
| Proposed Final Pretrial Conference Date | November 25, 2020 |

Given the Trustee's opposition to this request, the Sages respectfully request a conference to discuss these issues.

Respectfully,

Andrew B. Kratenstein

Enclosures

cc: All counsel via ECF

