# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

July 9, 2020

Nicholas J. Cremona
direct dial: 212.589.4682
ncremona@bakerlaw.com

**VIA ECF AND ELECTRONIC MAIL
(BERNSTEIN.CHAMBERS@NYSB.USCOURTS.GOV)**

The Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Room 723
New York, NY 10004-1408

Re:   *Picard v. Sage Associates, et al.*, Adv. Pro. No. 10-04362 (SMB)
      *Picard v. Sage Realty, et al.*, Adv. Pro. No. 10-04400 (SMB)

Dear Judge Bernstein:

We are counsel to Irving H. Picard as trustee ("Trustee") in connection with the above referenced matters. We write in response to Mr. Kratenstein's July 8, 2020 letter ("Defendants' Letter"), which requests a conference concerning the Orders Setting Pre-trial Deadlines and Scheduling a Final Pre-Trial Conference entered by the Court on March 26, 2020 (ECF Docket Nos. 110) (collectively, the "Pre-Trial Scheduling Orders"). In filing Defendants' Letter, Mr. Kratenstein made several misstatements to the Court. We write below to clarify the record.

As an initial matter, Mr. Kratenstein did not request an extension of time until July 2, 2020, right before the holiday weekend and less than two weeks prior to July 15, 2020, the date by which the Court directed the parties to exchange drafts of the Joint Pre-Trial Orders in these proceedings. *See* Pre-Trial Scheduling Orders. The Court considered the COVID-19 pandemic and related restrictions when it fixed the deadlines in the Pre-Trial Scheduling Orders and provided the parties with five months to complete the pre-trial tasks. Thus, the pandemic alone is not a sufficient reason to adjourn these deadlines.

Second, the Trustee has done everything possible to ensure that these deadlines can be met. He has fully cooperated and timely responded to Defendants' requests for assistance. As part of the Trustee's expert disclosures in these adversary proceedings, the Trustee produced a hard drive of his experts' reports and the documents they relied upon on January 16, 2019. On May 4, 2020, more than a month after entry of the Pre-Trial Scheduling Orders, Mr. Kratenstein, citing the COVID-19 pandemic and his inability to access his office, requested a second copy of the hard drive with those documents.

Honorable Stuart M. Bernstein
Page 2

      Mr. Kratenstein was informed that the hard drive documents were accessible in the Trustee's E-Data Room, with certain exceptions due to file formatting issues. After some discussion, on May 14th, Mr. Kratenstein circulated a spreadsheet and requested that certain documents, representing a subset of documents relied upon by one of the Trustee's experts, Mr. Dubinsky, be uploaded to an FTP site. As a courtesy, those documents were uploaded to the FTP site on May 18th. About a month later, on June 15th, Mr. Kratenstein informed the Trustee that his request was for document ranges, not individual documents, and requested that additional records be uploaded as well. Again, as a courtesy, the documents were uploaded on June 22nd. Mr. Kratenstein's issues with the formatting of those documents was not communicated to the undersigned until his July 2nd correspondence, nearly two weeks later.

      Mr. Kratenstein's request for an extension of time hinges a great deal on these documents and Defendants' efforts to criticize Mr. Dubinsky's report. But Mr. Dubinsky's report and the documents on which he relied (including the information from the New York Public Library that Mr. Kratenstein claims he needs to obtain) were served on Defendants in January 2019, giving Defendants more than ample time already to review that report. And the time period for Defendants to rebut Mr. Dubinsky's report with contrary evidence has expired, as Defendants did not disclose any affirmative or rebuttal experts.

      Finally, the Trustee disputes Mr. Kratenstein's characterization of the Trustee's claims against Defendants. Mr. Kratenstein argues that his clients are unique because they authorized or directed trading in their accounts, but the evidence shows that Defendants are no different than any other defendant whom the Trustee has sued for fictitious profits. Like all other BLMIS customers, BLMIS did not purchase any stocks for Defendants' accounts. Mr. Dubinsky reviewed the correspondence purporting to represent trading directions of certain stocks and securities from Defendants to Mr. Madoff and BLMIS, as well as the customer ledgers and statements for Defendants' accounts. This included the correspondence Mr. Kratenstein brought to the Court's attention during a court conference on topics for Mr. Madoff's "Day 2" deposition. **Ex. A** at 42:24-25 through 47:1-17. After reviewing these records, Mr. Dubinsky concluded that "the IA Business did not engage in the execution of 'directed' trades for its customers" and "there is no evidence that the IA Business engaged in directed securities transactions on behalf of the Sage Defendants." **Ex. B**, pages 4–5, 26. Mr. Dubinsky analyzed the purported trades across the IA Business and found that the securities identified in Defendants' correspondence were not unique to their accounts. *Id.*, pages 26–30. Mr. Dubinsky concluded that "the transactions analyzed for the Sage Accounts were no different than the fake trades in the other IA Business accounts" and the transactions in Defendants' accounts "were similarly fictitious." *Id.*, page 27.

      Mr. Dubinsky also concluded that Defendants' account statements reflected: (i) transactions that were priced outside of the trading day's reported price range; (ii) transactions that occurred in volumes that exceeded, in the aggregate, the entire reported market volume for those securities; (iii) transactions that were recorded as having settled on days not within the standard settlement duration timeframe; and (iv) transactions that purportedly settled on weekends when the exchanges are closed. *Id.*, page 4. Mr. Dubinsky concluded that "the Sage Accounts contain fictitious transactions consistent with the indicia of fraud [he] identified across

Honorable Stuart M. Bernstein
Page 3

all of the trading strategies purportedly implemented by the IA Business in operating the Ponzi scheme." *Id*.

Having had the Trustee's expert reports since January 2019, there is no need to extend the current pre-trial deadlines. And a trial in these matters should not hinge on whether the New York Public Library re-opens. Defendants have wrongfully withheld fictitious profits stolen from net loser victims for over a decade in the face of clear and controlling precedent. The Court should set a trial date and bring these matters to a conclusion.

At the Court's direction, the parties agreed to a conference before the Court to be held at 10:00 a.m. on July 28, 2020.

Respectfully submitted,


*/s/ Nicholas J. Cremona*
Nicholas J. Cremona
Partner


cc:   Andrew B. Kratenstein, via ECF and e-mail (*akratenstein@mwe.com*)