**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-04390 (SMB) |
| v. | |
| BAM L.P., MICHAEL MANN, and MERYL MANN, | |
| Defendants. | |

## AMENDED JOINT PRETRIAL ORDER

Plaintiff Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated chapter 7

estate of Bernard L. Madoff ("Madoff"), and defendants BAM L.P., Michael Mann, and Meryl

Mann (the "Defendants," and together with the Trustee, the "Parties") have conferred among

themselves and with the Court pursuant to Federal Rule of Civil Procedure 16, made applicable

herein by Federal Rule of Bankruptcy Procedure 7016, and the following statements, directions, and agreements are adopted as the Joint Pretrial Order herein.

## I.  NATURE OF THE CASE

1.      This adversary proceeding arises from a fraud perpetrated by Madoff through the investment advisory business of BLMIS (the "IA Business").  On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violating criminal securities statutes. On the same day, the United States Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.  On December 15, 2008, the SEC consented to a combination of its action with an application of the Securities Investor Protection Corporation ("SIPC"), the Trustee was appointed as trustee for the liquidation of the business of BLMIS under the Securities Investor Protection Act ("SIPA"), and the District Court removed the combined action (the "Liquidation Proceeding") to this Court.

## II.  ADVERSARY PROCEEDING

2.      On November 30, 2010, the Trustee brought this adversary proceeding, pursuant to title 11 of the U.S. Code (the "Bankruptcy Code") and New York Debtor & Creditor Law, against Defendants seeking to avoid and recover fraudulent transfers allegedly received by Defendants from BLMIS.  As a result of the decision in *SIPC v. BLMIS, (In re Madoff Sec.)*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013), *aff'd*, 773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2859 (2015) , the Trustee is limited to recovering the two-year transfers from BLMIS solely pursuant to sections 548(a)(1)(A) and 550(a) of the Bankruptcy Code.  At present, the Trustee seeks to avoid and recover transfers in the amount of $563,000 from BAM L.P. and $2,250,000 from Michael and Meryl Mann made within two years of the Filing Date (the "Two-Year Transfers").

3.      In September 2019, the Court granted in part and denied in part the Trustee's

Summary Judgment Motion under Federal Rule of Civil Procedure 56(g). *See generally Picard*

*v. BAM L.P. (In re BLMIS)*, 608 B.R. 165 (Bankr. S.D.N.Y. 2019) ("*MSJ Decision*"). The *MSJ*

*Decision* determined:

- The Trustee has established that there is no genuine disputed issue of fact that Madoff

  operated BLMIS as a Ponzi scheme;

- The Trustee is entitled to rely on the Ponzi scheme presumption and has demonstrated

  that the Two-Year Transfers were made with the actual intent to hinder delay or defraud

  creditors within the meaning of 11 U.S.C. §§ 548(a)(1)(A) and 550(a);

- The Parties have stipulated to the amount of the deposits into and withdrawals from their

  respective accounts, and to the amounts of the transfers made during the Two-Year

  Period.

- The Court affirmed it prior rulings as a matter of law; the Antecedent Debt Defense does

  not provide a defense under Section 548(c) to the Trustee's claims.

4.      As set forth in the order on the Trustee's Summary Judgment Motion, the only

remaining issue of disputed fact is whether the Two-Year Transfers were transfers by the SIPA

debtor within the meaning of SIPA § 78fff-2(c)(3) and 11 U.S.C. § 548 (a)(1)(A).[1]

---

[1] *See* Order Denying the Trustee's Motion for Summary Judgment and Granting Relief Under Federal Rule of Civil
Procedure 56(g*), Picard v. BAM L.P.*, Adv. Pro. No. 10-04390 (SMB) (Bankr. S.D.N.Y. Sept. 25, 2019), ECF No.
175.

### III. BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY COURT MAY ENTER FINAL ORDER OR JUDGMENT

5.      The Court held that it has equitable and subject matter decision over this

adversary proceeding. *See Picard v. BAM L.P. (In re: Bernard L. Madoff)*, 597 B.R. 466, 482

n.15 (Bankr. S.D.N.Y. 2019).

### IV. STIPULATED FACTS

For purposes of the trial of this Avoidance Action, the parties hereby stipulate as follows:

6.      The Parties stipulate that Bruce G. Dubinsky is qualified as an expert witness in

the areas of forensic accounting, forensic fraud investigations, computer forensics, solvency

analysis and business valuations, and investment theory and practices.  Defendants reserve their

right to challenge the admission, analyses and opinions of Mr. Dubinsky at trial.

7.      The Parties stipulate that Lisa M. Collura is qualified as an expert witness in the

areas of forensic accounting and forensic fraud investigations.  Defendants reserve their right to

challenge the admission, analyses and opinions of Ms. Collura at trial.

8.      Between 1996 and 2008, the Defendants paid taxes on income from Account No.

1CM363 and received refunds pursuant to the theft loss deduction under IRS Rev. Proc. 2009-

20, 2009-14 I.R.B. Part III, related to their investment in that account as follows:

| | *Account Income & Taxes per Mann Defendants* | | *Refunds per Tax Returns Provided by Mann Defendants* | |
|---|---|---|---|---|
| **Year** | **Account Income** | **Taxes on Account Income** | **Federal** | **State** |
| 1996 | 274,871 | 131,704 | | |
| 1997 | 532,474 | 269,394 | | |
| 1998 | 986,915 | 508,538 | | |
| 1999 | 1,331,195 | 685,937 | | |

| 2000 | 1,297,943 | 418,827 | | |
| 2001 | 1,388,213 | 556,827 | | |
| 2002 | 1,382,070 | 828,653 | | |
| 2003 | 1,359,276 | 705,876 | (825,979) | (177,574) |
| 2004 | 1,159,151 | 515,722 | (641,458) | (200,947) |
| 2005 | 921,712 | 421,382 | | |
| 2006 | 780,259 | 313,208 | | |
| 2007 | 853,169 | 360,559 | | |
| 2008 | *n/a* | *n/a* | (655,780) | (73,850) |
| **Total** | **12,267,248** | **5,716,627** | **(2,123,217)** | **(452,371)** |

## V. PARTIES' CONTENTIONS

9.      The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

### A. Plaintiff's Contentions

10.     The Two-Year Transfers were made by BLMIS to the Defendants. Therefore, final judgment should be entered in favor of the Trustee and against Defendants to avoid and recover the amount of $2,813,000 transferred to Defendants as intentional fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A) and 550(a).

#### i.      BLMIS's Business

11.     In January 1960, Bernard L. Madoff registered as a broker-dealer with the SEC under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(b). He was assigned Registrant Number 8-8132. Through that registration, the broker-dealer became a member of SIPC when SIPA was enacted in 1970. In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration, which represented, *inter alia*, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion.

12.    Beginning in 1960 and until January 1, 2001, BLMIS operated as a sole proprietorship.  During its existence, it operated under the names Bernard L. Madoff and Bernard L. Madoff Investment Securities and, after 2001, as Bernard L. Madoff Investment Securities LLC.

13.    BLMIS was a single enterprise that operated three business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) the IA Business.

14.    Effective January 1, 2001, BLMIS was registered as a New York single member limited liability company, using the same SEC Registrant Number, 8-8132.  On January 12, 2001, BLMIS amended its SEC Form BD to reflect its change in corporate form from a sole proprietorship to a single member limited liability company and all the assets and liabilities of the sole proprietorship were transferred to the limited liability company.

15.    In response to the direction in the SEC Form BD to "[b]riefly describe details of the succession including any assets or liabilities not assumed by the successor [BLMIS]," (emphasis in original), Madoff replied:

> EFFECTIVE JANUARY 1, 2001, PREDECESSOR WILL
> TRANSFER TO SUCCESSOR ALL OF PREDECESSOR'S
> ASSETS AND LIABILITIES, RELATED TO PREDECESSOR'S
> BUSINESS. THE TRANSFER WILL NOT RESULT IN ANY
> CHANGE IN OWNERSHIP OR CONTROL.

SEC Form BD at Question 5.

16.    Madoff further certified that no "accounts, funds, or securities of customers of the applicant are held or maintained by such other person, firm, or organization." SEC Form BD at Question 8(c) (emphasis in original).

17.    As a result of the change reflected in the SEC Form BD, all of the bank accounts in which the customer funds were held by the sole proprietorship were transferred to BLMIS. All customers of the sole proprietorship, including the Defendants, became BLMIS customers.

The sole proprietorship had no business-related assets and no customers with which to carry on the business of a broker-dealer.

18.     Defendants' Customer Agreement acknowledged that it inured to the benefit of the "Broker's present organization and any successor organization, irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever."

19.     In 2006, BLMIS registered as an investment advisor.  BLMIS was also continuously registered with the SEC as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78$o$(b).

### ii.    The IA Business's Bank Accounts

20.     During at least the ten-year period before its collapse on December 11, 2008, BLMIS primarily used three commercial business accounts for customer deposits into and withdrawals from the IA Business: JPMorgan Chase Bank, N.A. ("Chase") account #xxxxx1703 (the "703 Account"); Chase account #xxxxxxxxx1509 (the "509 Account"); and Bankers Trust account #xx-xx0-599 (the "BT Account").

21.     The 703 and 509 Accounts were linked commercial checking accounts.  The 703 Account was the primary bank account used for BLMIS customer deposits and withdrawals and the 509 Account was a controlled disbursement account that was entirely funded by the 703 Account and used to process BLMIS customer withdrawals.  An analysis of the 703 Account showed that the money in that account consisted almost entirely of customer deposits.

22.     From December 1998 to August 2002, the bank statements for the 703 and 509 Accounts listed the account holder as "Bernard L. Madoff."  From December 1998 to August 2002, checks drawn on the 509 Account listed "Bernard L. Madoff" as the drawer of the check.

23.     From September 2002 through December 2008, the bank statements on the 703 and 509 Accounts listed the account holder as "Bernard L. Madoff Investment Securities."  After

September 2002, BLMIS continued to use checks for the 509 Account that listed "Bernard L.

Madoff" as the drawer of the check.

24.     For the time period for which bank records were available, the face of the bank

statements for the 703 Account and 509 Account showed they were designated as "Commercial

Checking" accounts.  The statements were addressed to the attention of either Tony Tiletnick, a

BLMIS employee, or Daniel Bonventre, BLMIS's operations manager, at the BLMIS business

address at 885 Third Avenue, New York, New York.  None of the statements were addressed to

Madoff personally.

25.     For the time period for which bank records were available (December 1998

through December 2008), the 703 and 509 Accounts solely were used for customer deposits and

withdrawals for the IA Business.

26.     IA Business customers' cash deposits were deposited into (and commingled in)

the 703 Account.

27.     IA Business customer withdrawals were made primarily through two accounts:

(1) the 509 Account (funded by the 703 Account); and, (2) the BT Account, which was a

checking account also entirely funded by the 703 Account during the period for which bank

records are available.

28.     There were no inflows into the 703 Account from sales of securities for customer

accounts.  Ninety-seven percent of all cash additions into the 703 Account came directly from IA

Business customers.  The other three percent of inflows into the 703 Account came from income

earned on (1) short-term investment activity made directly from the 703 Account (including

overnight sweeps, overnight deposits, commercial paper, Certificates of Deposit and Treasury

Bills); and (2) investments of BLMIS customer funds made through bank and brokerage

accounts held in the name of BLMIS or Madoff for cash management purposes. Because the

short-term investments, including overnight sweeps, were made directly out of the 703 Account,

the source of the money for those investments was customer funds.

29.     There were no outflows from the 703 Account to purchase securities for customer

accounts. Apart from two short-term loans, BLMIS received from JPMorgan totaling $145

million in November 2005 and January 2006—both of which were repaid by June 2006—the IA

Business did not obtain loans from third parties or from the Proprietary Trading Business

sufficient to pay the IA Business customer withdrawals.

30.     The IA Business also did not receive payments of any cash dividends. According

to the customer statements, the IA Business reported that it received cash dividends related to

purported trading and paid or credited them to the accountholders. Between 1998 and 2008,

BLMIS reported that it had paid or credited its customers $4.3 billion in cash dividends. Of the

more than 8,300 IA Business dividend transactions identified on the customer account statements

from 1998 to 2008, not one purported dividend payment matched to a cash addition to the 703

Account. There is no record of any dividends being received by the IA Business.

31.     The IA Business did not have any legitimate income-producing activities. The

only source of cash available for the IA Business to pay purported investment profits as well as

redemption requests from its customers was from cash that other IA Business customers

deposited in the 703 Account.

32.     At the time Defendants received the Two-Year Transfers, BLMIS controlled all

funds deposited into and withdrawn from the 703 and 509 Accounts, which were customer

property. These commingled funds were the source of the transfers made by BLMIS to

Defendants.

33.    Defendants received debit memos along with the withdrawals during the Two-Year Period that identified the owner of the 509 Account as BLMIS.  The fact that Madoff's personal name was on the checks "proves nothing" because it was BLMIS that made disbursements from the account.

34.    The funds in the 509 Account consisted of customer property and therefore the Trustee can recover it regardless of which variation of the BLMIS name appears on the check.

### iii.    Recovery of the Two-Year Transfers and Prejudgment Interest

35.    Under Section 550(a), the Trustee is entitled to recover the Two-Year Transfers, or specifically the amount of $2,813,000, from the Defendants.

36.    The Trustee is additionally entitled to prejudgment interest on each of the avoided and recoverable Two-Year Transfers.

37.    The Court has discretion when deciding the appropriateness of an award of prejudgment interest and in setting the appropriate rate, but it should be awarded absent a sound reason to deny it.

38.    Following BLMIS's collapse, Defendants had the use of $2,813,000 in avoidable transfers for more than a decade.

39.    Awarding prejudgment interest is proper even if Defendants received the avoidable transfers in good faith.  And, the relative equities also favor an award of prejudgment interest where there has never been any serious dispute as to Defendants' liability for the avoidable transfers.

40.    Accordingly, the Trustee should be awarded prejudgment interest in the amount of the avoidable transfers received by Defendants at the New York statutory rate of 9% per year, beginning on December 11, 2010.

**B.  Defendant's Contentions**

41.     Beginning in 1960's and until January 1, 2001, Madoff operated three businesses -- the market making (handling over-the-counter trades for others), proprietary trading (trading with the company's own money) and investment advisory businesses -- as a sole proprietor under the names Bernard L. Madoff and Bernard L. Madoff Investment Securities ("Madoff Securities").

42.     On or about January 1, 2001, Madoff transferred the market making and proprietary trading businesses into a newly formed limited liability company named Bernard L. Madoff Investment Securities LLC ("BLMIS").  Madoff maintained the investment advisory business with all of its assets in the sole proprietorship, which he operated under the Madoff Securities name, until the fraud was discovered in December 2008.

43.     The separation of the businesses coincided roughly with the beginning of market skepticism as to Madoff's returns in the investment advisory business.  In March 2000, Harry Markopolis had submitted an 8-page complaint to the Boston Regional Office of the SEC. Markopolis purportedly shared the results of his investigation with prospective Madoff customers.  In March of 2001 Michael Ocrant published an article "Madoff tops charts, skeptics ask how," which was followed that month by an article in Barrons titled "Don't Ask, Don't Tell."

44.     The transfer of the proprietary trading and market making businesses to the LLC and its registration with the SEC served several objectives.  The structure insulated Madoff's sons and his brother, who ran the trading business, from the fraud in the investment advisory business.  Thus, Madoff could testify in his plea allocution consistent with this objective and with some accuracy:

I want to emphasize today that while my investment advisory business, the vehicle of my wrongdoing, was part of my firm, Bernard L. Madoff Investment Securities, the other businesses my firm engaged in, proprietary trading and money making, were legitimate, profitable and successful in all respects. Those businesses were managed by my brother and two sons. Plea Allocution, p. 25, ll. 6-11

45.     At the same time, the spinoff of the trading business provided a showcase trading floor to assure prospective customers of the legitimacy of the investment advisory business.

46.     The separation of the businesses also made it easier for Madoff and his employees to conceal the fraud in the investment advisory business from the regulatory authorities. It became clear in the trial of Daniel Bonventre and other employees, for example, that the assets and liabilities of the investment advisory business were omitted from the general ledger of BLMIS and were not reflected in the Financial and Operational Combined Uniform Single Reports (FOCUS Reports) that BLMIS was required to file with the SEC for the registered businesses.

47.     When Madoff was forced to register the investment advisory business in August 2006 as a result of SEC scrutiny, according to the plea allocution of Frank DiPascali, the employees created false trade blotters to satisfy regulatory authorities. DiPascali, Plea Allocution, p. 49, ll.16-21. In or about January 2008, Madoff filed with the SEC an amended Uniform Application for Investment Adviser Registration, which represented, *inter alia*, that BLMIS had only 23 customer accounts and assets under management of approximately $17.1 billion. There is no evidence that assets of Madoff Securities were transferred to BLMIS in connection with the registration of the investment advisory business.

48.     As part of the transfer of the assets of the proprietary trading and market making businesses from the sole proprietorship to the limited liability company, on January 1, 2001, Madoff sent notification letters of the formation of the LLC to all of the business and

governmental entities with which the trading businesses dealt. *See, e.g.*, the following

notification letters all dated January 1, 2001 (letter from the LLC to BNY), (letter from LLC

to the National Securities Clearing Corporation), (letter from the LLC to the Options Clearing

Corporation), and (letter from the LLC to the Depository Trust Company).

49.    In addition, BLMIS opened trading accounts with third party brokers, such as

Bear Stearns, for the purchase of corporate securities in the name of the limited liability

company, and maintained an active trading platform for the market making and proprietary

trading businesses.

50.    On January 12, 2001, Madoff and his brother, Peter Madoff, who is described on

this form as the Director of Trading, Chief Compliance Officer, contact employee and authorized

signatory, filed a Form BD Uniform Application for Broker Dealer Registration (the "Form

BD") with the SEC to identify a change in corporate form from a sole proprietorship to a single

member limited liability company solely for the market making and proprietary trading business

51.    In answering question 12 of the Form BD, which asks the applicant to identify

which businesses it will be engaged in, the Madoffs checked "Broker or dealer making inter-

dealer markets in corporate securities over-the-counter" and "trading securities for own

account:"  Investment advisory services was not checked on the form and that business was not

included in the registration.  The reference in the Form to the transfer of all assets logically

relates only to the businesses that are the subject of the registration.

52.    In addition, Peter Madoff -- who as noted above was designated on the Form BD

as Director of Trading, Chief Compliance Officer, contact employee and authorized signatory

for BLMIS -- held those positions with the legitimate trading businesses separate from the

investment advisory business for several years.  He was not associated with the investment

advisory business until 2006 when that business was first registered with the SEC. At his plea

hearing, Peter Madoff testified that he "dedicated almost 40 years to building a legitimate

securities market-making business. In July 2006, my brother informed me that BLMIS was

going to register with the SEC as an investment adviser because of my brother's management of

customer accounts. In September 4 of 2006, when BLMIS first registered as an investment

adviser, I was designated as the chief compliance officer of the customer business." Peter

Madoff Plea Testimony at 36. In sum, at the time of the formation of the limited liability

company, Peter Madoff represented only the proprietary trading and market making businesses.

53.    There is ample evidence that the essential assets of the investment advisory

businesses -- the bank accounts, the customer accounts and trading accounts -- were **not**

transferred with the proprietary trading and market making business, but rather, remained in the

name of Madoff Securities under the control of Bernard L. Madoff and that the separation of the

businesses was calculated and deliberate.

54.    The ownership and administration of the primary bank accounts used in the

investment advisory business remained unchanged throughout the relevant period. From

December 1998 to August 2002, the bank statements for the JPMorgan Chase Bank, N.A.

("Chase") account #xxxxx1703 (the "703 Account") and Chase account #xxxxxxxxx1509 (the

"509 Account") listed the account holder as "Bernard L. Madoff." From September 2002

through December 2008, the bank statements on the 703 and 509 Accounts listed the account

holder as "Bernard L. Madoff Investment Securities."

55.    All the banks statements for the 509 Account from at least 1995 (when Michael

Mann opened his account) through 2008 were sent to the same address: Att: Daniel Benventre

[sic], 885 Third Avenue, 18 Floor, New York, New York 10002.

56.     Similarly, all bank statements for the 703 Account from at least 1995 through 2008 were sent to the same address: Att: Tony Tiletnick, 885 Third Avenue, 18 Floor, New York, New York 10002.  The lease for the offices at 885 Third Avenue was held in the name of Bernard L. Madoff.

57.     The checks written on both the 703 and the 509 Accounts identify Bernard L. Madoff as the payor/account owner.  Wire transfer instructions for the customer deposits were directed to the account of Bernard L. Madoff.

58.     Tony Tiletnick and Daniel Bonventre were employees of Madoff for decades before the formation of the LLC.  They cannot properly be characterized as employees of BLMIS.  Tiletnick was an employee of Madoff Securities long before the formation of the LLC.  Similarly, Daniel Bonventre began working for Madoff as an auditor in 1968 and became Director of Operations in or about 1978, long before the formation of the LLC.  Each received the respective 703 or 509 bank statements during the entire relevant period at the same address on behalf of Bernard L. Madoff or Madoff Securities.

59.     Madoff kept in the name of Madoff Securities certain investment vehicles for the investment advisory business.  For example, he used CHUSA Caymen, which was a service offered by a branch of JP Morgan Chase that arranged for the automatic investment of customer funds, the return of the funds, and the credit of interest to the main or sub-account.  Madoff selected an arrangement offered by Chase for overnight investments on the books of the Bank's Nassau Branch in his name. (For the CHUSA, *see* JPMorgan Chase, End of Day Investment and Loan Sweep Service, www.jpmorganchase.com.)  The 703 Account statements show billions of dollars run through this vehicle every month.

60.    Madoff also used -- in the name of Madoff Securities -- the services of AIP Investment, which is or was a platform offered by DTC to support investments in alternative investment products like hedge funds, funds of funds and private equity for investment of funds in the 703 Account.

61.    Madoff also kept accounts with third parties in the sole proprietorship for investments from the 703 Account.  For example, he held an account for the trading of government obligations with Bear Stearns in the Madoff Securities name.  He had another account with Morgan Stanley in the name of Madoff Securities for the purchase of US treasuries. Neither of these accounts were transferred to BLMIS in 2001 or at any time later.

62.    Moreover, it is incorrect to characterize the operations of the sole proprietorship as moribund after 2001.  Trading in the investment advisory business remained robust until the market collapse in or around November 2008.  During the two year period from January 2007 through October 2008, the transactional amounts in the 703 Account -- including customer deposits and constant investment in short term derivatives, commercial paper, US Treasuries and other securities -- rarely if ever fell below $10 billion monthly and went as high as $18 billion in March 2008.

63.    The Defendants' customer accounts were opened in the name of Madoff Securities and were never re executed in the name of BLMIS.  In December 1995, Defendants Michael Mann and Meryl Mann opened their account with the investment advisory business of Madoff Securities, which was assigned account number 1CM363 in the name of "Michael Mann and Meryl Mann J/T Wros" (the "Mann Account").  During the ten-year period between 1998 and 2008, Michael Mann made deposits into and received withdrawal payments for the Mann Account from two bank accounts:  the 703 Account and the 509 Account.

64.     In March 1999, Michael Mann opened another account with Madoff Securities, in the name of "BAM L.P.", which was assigned account number 1CM379 (the "BAM Account"). During the period between 1999 and 2008, Michael Mann made deposits into and received withdrawal payments for the BAM Account from two Chase accounts:  the 703 Account and  the 509 Account.  Meryl Mann had no interest in the BAM Account or BAM L.P.

65.     From 1995 to December 2008, Michael Mann received checks drawn on the 509 Account listing "Bernard L. Madoff" as the payor of the checks or wire transfers from the 703 Account.

66.     From 1999 to 2008 BAM received checks drawn on the 509 Account listing Bernard L.Madoff as the payor of the checks or wire transfers from the 703 Account.

67.     It is undisputed that the debtor is solely BLMIS.  Based on the above, the transfers received by the Defendants were assets of the sole proprietorship and not from BLMIS.

**Prejudgment Interest**

68.     Even if the Trustee is successful in this adversary proceeding, there should be no prejudgment interest awarded, particularly at the rate and from the date that the Trustee requests. In deciding whether to award prejudgment interest, courts consider fairness and the relative equities, including whether there is or has been serious dispute as to liability.  This factor weighs heavily against awarding prejudgment interest against the Defendants.

69.     Prejudgment interest should not be awarded because the Defendants in this case are not only innocent of the fraud, but also serious victims of the fraud.  Their funds were deposited with Madoff Securities for more than a decade in the case of the Mann Account and nearly a decade in the case of the BAM Account.  During that period, the Defendants paid taxes on their reported gains totaling more than $3,000,000 that was never recouped as demonstrated by the accounting prepared by the Defendants' accountant based on the Defendants' returns for

the period.    To add prejudgment interest in the face of real out-of-pocket losses on the part of the

Defendants would be unnecessarily punitive and inequitable.

70.    In addition to the fundamental misunderstanding of the structure of the Madoff

businesses and the operation of the fraud underlying the Trustee's claims as discussed above, the

fact is that the Defendants' antecedent debt and statute of repose defenses remain subject to

appellate review and are currently *sub judice* in the Second Circuit in the consolidated Lowrey

cases.  See *Picard v. Gettinger*, 19-0429-BK.  Accordingly, although the Bankruptcy Court

summarily dismissed the defenses in Rule 56(g) Order, if the Second Circuit decides in favor of

those appellants on any of the defenses, the same defense applicable here as well would

completely dispose of the Trustee's claims against the Defendants.

71.    The Trustee's claims to avoid obligations were dismissed with prejudice by a so-

ordered stipulation.    Accordingly, the withdrawal payments satisfied unavoidable obligations to

the Defendants.  Each time Michael Mann requested a withdrawal from the Mann Account, the

account statement reflected a substantial balance, which represented the broker's unavoidable

obligation under state and federal law.  This is shown on the chart below:

| Date | Withdrawal Amount | Statement Obligation |
|------|-------------------|----------------------|
| 11/07/2000 | $7,500,000 | $11,612,339 |
| 04/16/2003 | $400,000 | $13,380,916 |
| 02/23/2004 | $4,000,000 | $14,122,213 |
| 03/20/2006 | $500,000 | $6,161,058 |
| 03/07/2007 | $250,000 | $7,665,327 |
| 10/24/2007 | $2,000,000 | $8,327,789 |

72.    Each time Michael Mann requested a withdrawal from the BAM Account, its

account statement reflected a substantial balance, which represented the broker's unavoidable

obligation under state and federal law.  This is shown on the chart below.

18

| Date | Withdrawal Amount | Statement Obligation |
|---|---|---|
| 04/25/2000 | $52,000 | $1,216,468 |
| 10/12/2000 | $43,000 | $1,185,089 |
| 11/07/2000 | $750,000 | $1,594,424 |
| 06/25/2002 | $15,000 | $1,966,732 |
| 04/16/2003 | $70,000 | $2,367,470 |
| 01/06/2004 | $100,000 | $2,482,385 |
| 03/02/2005 | $275,000 | $2,631,694 |
| 04/08/2005 | $1,400,000 | $2.417.246 |
| 01/05/2006 | $60,000 | $1,037,629 |
| 04/17/2007 | $88,000 | $1,132,452 |
| 07/25/2007 | $300,000 | $1,075,738 |
| 10/24/2007 | $50,000 | $801,193 |
| 01/23/2008 | $15,000 | $775,127 |
| 04/23/2008 | $110,000 | $762,516 |

73.    Moreover, Madoff Securities unavoided liability on December 11, 2006b exceeded the subsequent withdrawal payments to them.   On November 30, 2006, the approximate date of the applicable two year statute of repose fixed by section 548(a ) of the Bankruptcy Code, the statement for Mann Account reflected a balance of $6,305,190.  Michael Mann added $1,500,000 thereafter and withdrew only $2,250,000.  On November 30, 2006, the approximate date of the applicable two year statute of repose fixed by Section 548(a)of the Bankruptcy Code, the BAM statement for its account showed a balance of $1,091,896.12. Between April 17, 2007and April 23, 2008, BAM requested and received $563,000.  If the Antecedent Debt or statute of repose defense are upheld on appeal, the Defendants would have no liability based on the facts of the case.

74.    In sum, uncertainty with respect to the Defendants' liability to this date weighs against awarding prejudgment interest, particularly from the date the adversary proceeding was filed.  Interest in this case, if any, should not accrue before the execution of a joint pretrial order.

75.    Finally, the case against the Defendants arises solely under a federal statute, 11 U.S.C §548(a)(1)(A).  Therefore, federal law should apply.  28 U.S.C. section 1961 fixes a rate

for post-judgment interest that would be applicable for prejudgment interest, if the court determined to award it. The Code provides: "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." The current rate is slightly above .18%.

## VI. ISSUES TO BE TRIED

76.    The Parties anticipate that the following issues will be tried before this Court:

- Whether the Two-Year Transfers were transfers by the debtor within the meaning of SIPA § 78fff-2(c)(3) and 11 U.S.C. § 548 (a)(1)(A); and

- Whether the Trustee should be awarded prejudgment interest and if so, at what rate and from what date based on establishing the factors emphasized by courts in this District.

## VII.    PLAINTIFF'S EXHIBITS

Exhibit A to the Joint Pre-Trial Order reflects the Trustee's anticipated exhibits during his case-in-chief. The Trustee reserves the right to rely upon and introduce any of the Defendants' exhibits, identified in Exhibit B, and/or additional exhibits on the issue of whether the Trustee is entitled to an award of prejudgment interest.

## VIII.    DEFENDANT'S EXHIBITS

Exhibit B to the Joint Pre-Trial Order reflects Defendants' exhibits. The Defendants reserve the right to rely upon and introduce any of the Trustee's exhibits, in addition to those identified herein, to amend or supplement the foregoing list of exhibits at any time prior to the time of trial, to identify additional exhibits for purposes of rebuttal or impeachment, whether or not designated herein, and to further supplement the foregoing list of exhibits as necessary in connection therewith.

## IX. STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

The Trustee's stipulations and objections with respect to Defendants' exhibits are set forth in Exhibit B.

The Defendants' stipulations and objections with respect to the Trustee's exhibits are set forth in Exhibit A.

## X.  PLAINTIFF'S WITNESS LIST

During his direct case-in-chief, the Trustee does not intend to call any non-expert witnesses.

## XI. DEFENDANT'S WITNESS LIST

During their case-in-chief, the Defendants anticipate calling the following witnesses:

- Michael Mann

## XII. PLAINTIFF'S EXPERT WITNESSES

During his case-in-chief, the Trustee will call:

- Lisa M. Collura, who will testify on the Trustee's proof of transfers to the Defendants as set forth in her expert report dated June 12, 2015;

- Bruce G. Dubinsky, who will testify on the BLMIS businesses and structure, bank accounts, sources of income as set forth in his expert report dated August 20, 2013.

## XIII.      DEFENDANT'S EXPERT WITNESSES

Defendants will not call any expert witnesses at trial and intend to dispute the admissibility of the Trustee's expert reports and witness testimony.

## XIV.      RELIEF SOUGHT

The Trustee seeks to avoid and recover from Defendants $2,813,000.00 in fraudulent transfers ($563,000 from BAM L.P and $2,250,000 from Michael and Meryl Mann), or the value thereof, pursuant to §§ 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code and various

provisions of SIPA, including § 78fff-2(c)(3).  The Trustee seeks, pursuant to federal common

law and/or New York Civil Practice Laws and Rules §§ 5001 and 5004, prejudgment interest on

the avoidable transfers.  Finally, the Trustee seeks such other and further relief as the Court

deems just, proper and equitable.

Defendants seek dismissal of the Trustee's remaining avoidance claim and denial of

prejudgment interest at the federal or state rate.  Defendants also seek such other and further

relief as the Court deems just, proper and equitable.

### XV.        ESTIMATED TIME OF TRIAL

~~This Court scheduled t~~he trial of this matter ~~to~~ **will** commence at **a time and day to be**

**fixed by the Court** ~~[TIME] on [DATE]~~, and continue ~~to the next day, [DATE],~~ **from day to**

**day, as necessary, subject to the availability of the Court and the parties.** ~~if necessary.~~  The

Trustee estimates it will take two to six hours to present his case-in-chief.  Defendants estimate

that it will take two to six hours to present their direct case-in-chief at trial and to cross-examine

the Trustee's witnesses. **[SMB: 8/11/20]**

22

Dated:  August 10, 2020
      New York, New York

**BAKER & HOSTETLER LLP**

By: */s/ Nicholas J. Cremona*
45 Rockefeller Plaza
New York, New York 10111
Telephone:  212.589.4200
Facsimile:  212.589.4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Nicholas J. Cremona
Email:  ncremona@bakerlaw.com
Lan Hoang
Email:  lhoang@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*

**DENTONS US LLP**

By: */s/ Arthur H. Ruegger*
Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: arthur.ruegger@dentons.com
Email: carole.neville@dentons.com

*Attorneys for Defendants*

Dated:  August 11, 2020

**IT IS SO ORDERED:**

                                    /s/ *Stuart M. Bernstein*
                                    **STUART M. BERNSTEIN**
                         **United States Bankruptcy Judge**

# EXHIBIT A

**TRUSTEE'S [PROPOSED] TRIAL EXHIBIT LIST**

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | DEFENDANTS' OBJECTION |
|---|---|---|---|
| 1 | Attestation of Kevin O'Neill, SEC | | Hearsay, Federal Rule of Evidence ("FRE") 802; *Savage & Assocs. P.C. v. Mandl (In re Teligent Inc.)*, 380 B.R. 324, 329 n. 2 (Bankr. S.D.N.Y. 2008) (Bernstein, J.) "*Teligent*"). |
| 2 | 12/31/1959 Form BD for Bernard L. Madoff | PUBLIC0003607–3614 | Hearsay, FRE 802; *Teligent*, n. 2; relevance, FRE 401 - 403. |
| 3 | 1/12/2001 Form BD for Bernard L. Madoff Investment Securities LLC | | Hearsay, FRE 802;  *Teligent*, n. 2; duplicative of TX 1 and cumulative, FRE 403; relevance, FRE 401. |
| 4 | Articles of Organization for BLMIS | MADTSS01160346–0349 | Stipulated. |
| 5 | Chain of Custody Affidavit—Meaghan Schmidt | | Improper authentication, FRE 901; no foundation, vague and ambiguous scope, FRE 403, 602, 702, 703, 705. |
| 6 | 12/13/2017 Certification of Domestic Records by JP Morgan Chase [Five Declarations] | | Hearsay, FRE 802; no foundation, no personal knowledge, FRE 602, 803(6), 902(11); relevance, FRE 401 - 403.[2] |
| 7 | 7/29/2015 Certification of Domestic Records by Deutsche Bank Trust Company Americas | | Stipulated to limited extent of certification of document custodian under FRE 902(11); relevance, FRE 401- 403. |

---

[2] *See United States v. Edwards*, 2012 WL 5522157, at *3 (D.D.C. Nov. 15, 2012) (certification of document custodian under FRE 902(11) is not testimonial, but merely establishes procedure through which underlying records were made).

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | DEFENDANTS' OBJECTION |
|---|---|---|---|
| 8 | 2/03/2015 Certification of Domestic Records by State Street Bank & Trust Company | | Stipulated to limited extent of certification of document custodian under FRE 902(11), relevance, FRE 401 - 403. |
| 9 | 1/1/2001 BLMIS letter to NSCC | MADTEE00544438 | Stipulated. |
| 10 | 1/1/2001 BLMIS letter to OCC | MADTEE00544720–4730 | Stipulated. |
| 11 | 8/11/2009 Frank DiPascali Plea Allocution | 09-CR-764_FDIPASCALI0000001–0095 | Relevance, FRE 402. |
| 12 | 11/21/2011 David Kugel Plea Allocution | 10-CR-228_DKUGEL0000001–0052 | Relevance, FRE 402. |
| 13 | 11/8/2012 Irwin Lipkin Plea Allocution | S9-10CR-228_ILIPKIN0000001–0053 | Relevance, FRE 402. |
| 14 | 1/29/2015 Michael Mann's Responses And Objections To Trustee's First Set Of Interrogatories To Defendant Michael Mann | | Partial objection to relevance (FRE 402), as superseded by the parties' contentions in the Pretrial Order. |
| 15 | 1/29/2015 Meryl Mann's Objections And Responses To Trustee's First Set of Interrogatories | | Partial objection to relevance (FRE 402), as superseded by the parties' contentions in the Pretrial Order. |
| 16 | 1/05/2015 Trustee's First Set of Requests For Admission To Defendant Michael Mann | | Partial objection to relevance (FRE 402), as superseded by the parties' contentions in the Pretrial Order. |
| 17 | 1/05/2015 Trustee's First Set of Requests For Admission To Defendant Meryl Mann | | Partial objection to relevance (FRE 402), as superseded by the parties' contentions in the Pretrial Order. |
| 18 | 1/05/2015 Trustee's First Set of Requests For Admission To Defendant BAM L.P. | | Partial objection to relevance (FRE 402), as superseded by the parties' contentions in the Pretrial Order. |
| 19 | Customer Agreement for Account 1CM363 | AMF00256539–6541 | Stipulated. |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | DEFENDANTS' OBJECTION |
|---|---|---|---|
| 20 | Customer Agreement for Account 1CM579 | AMF00267048–7050 | Stipulated. |
| 21 | BLMIS Customer File for Account 1CM363 | AMF00256511–6547 | Stipulated. |
| 22 | BLMIS Customer File for Account 1CM579 | AMF00267004–7081 | Stipulated. |
| 23 | Curriculum vitae of Lisa Collura | | Hearsay, FRE 802; relevance, FRE 401 - 403. |
| 24 | 6/12/2015 Expert Report of Lisa Collura | | Hearsay, FRE 802; outside case record, Fed. R. Civ, P. 26(a)(2); Fed. R. Bankr. Proc. 7026; FRE 403; relevance, FRE 401 - 403. |
| 25 | 6/12/2015 Expert Report of Lisa Collura, Exhibit 7 | | Hearsay, FRE 802; outside case record, Fed. R. Civ, P. 26(a)(2); Fed. R. Bankr. Proc. 7026; relevance, FRE 401 - 403. |
| 26 | 6/12/2015 Expert Report of Lisa Collura, Exhibit 9 | | Hearsay, FRE 802; outside case record, Fed. R. Civ, P. 26(a)(2); Fed. R. Bankr. Proc. 7026; relevance, FRE 401 - 403. |
| 27 | 6/12/2015 Expert Report of Lisa Collura, Exhibit 10 | | Hearsay, FRE 802; outside case record, Fed. R. Civ, P. 26(a)(2); Fed. R. Bankr. Proc. 7026; relevance, FRE 401 - 403. |
| 28 | Summary of Tracing 1CM363 | *See* Expert 6/12/2015 Expert Report of Lisa Collura, Exhibits 7, 9–10 | Hearsay, FRE 802; outside case record, Fed. R. Civ, P. 26(a)(2); Fed. R. Bankr. Proc. 7026; relevance, FRE 401 - 403. |
| 29 | Summary of Tracing 1CM579 | *See* Expert 6/12/2015 Expert Report of Lisa Collura, Exhibits 7, 9–10 | Hearsay, FRE 802; outside case record, Fed. R. Civ, P. 26(a)(2); Fed. R. Bankr. Proc. 7026; relevance, FRE 401 - 403. |
| 30 | Summary of Reconciliation 1CM363 | *See* Expert 6/12/2015 Expert Report of Lisa Collura, Exhibits 7, 9–10 | Hearsay, FRE 802; outside case record, Fed. R. Civ, P. 26(a)(2); Fed. R. Bankr. Proc. 7026; relevance, FRE 401 - 403. |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | DEFENDANTS' OBJECTION |
|---|---|---|---|
| 31 | Summary of Reconciliation 1CM579 | *See* Expert 6/12/2015 Expert Report of Lisa Collura, Exhibits 7, 9–10 | Hearsay, FRE 802; outside case record, Fed. R. Civ. P. 26(a)(2); Fed. R. Bankr. Proc. 7026; relevance, FRE 401 - 403. |
| 32 | 8/1/2002 - 8/30/2002 703 Account Statement | JPMSAB0000100–0151 | Stipulated. |
| 33 | 8/1/2002 - 8/30/2002 509 Account Statement | JPMTAA0000026–0028 | Stipulated. |
| 34 | 8/31/2002 - 9/30/2002 703 Account Statement | JPMSAB0000624–0672 | Stipulated. |
| 35 | 8/31/2002 - 9/30/2002 509 Account Statement | JPMTAA0000029–0032 | Stipulated. |
| 36 | 11/1/2008 - 11/28/2008 703 Account Statement | JPMSAB0004407–4454 | Stipulated. |
| 37 | 11/1/2008 - 11/28/2008 509 Account Statement | JPMTAA0000310–0315 | Stipulated. |
| 38 | Curriculum vitae of Bruce Dubinsky | | Hearsay, FRE 802; relevance, FRE 401 - 403. |
| 39 | 8/20/2013 Expert Report of Bruce Dubinsky, served 6/12/2015 | | Hearsay, FRE 802; relevance, FRE 401 - 403. |
| 40 | 8/20/2013 Expert Report of Bruce Dubinsky, Figure 39 | | Hearsay, FRE 802; relevance, FRE 401 - 403. |
| 41 | 8/20/2013 Expert Report of Bruce Dubinsky, Figure 37 | | Hearsay, FRE 802; relevance, FRE 401 - 403. |
| 42 | 8/20/2013 Expert Report of Bruce Dubinsky, Table 8 | | Hearsay, FRE 802; relevance, FRE 401 - 403. |
| 43 | 3/12/2009 Bernard L. Madoff Plea Allocution | | Stipulated. |
| 44 | 12/30/1997 Debit Memo for Account 1CM363 | 10-04390_Mann0000890–0915 | Stipulated. |
| 45 | 12/22/1998 Credit Memo for Account 1CM363 | 10-04390_Mann0000890–0915 | Stipulated. |
| 46 | 11/31/2000 BLMIS Customer Statement for Account 1CM363 | MDPTPP01250906–0909 | Stipulated. |
| 47 | 4/30/2003 BLMIS Customer Statement for Account 1CM363 | MDPTPP01251218–1220 | Stipulated. |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | DEFENDANTS' OBJECTION |
|---|---|---|---|
| 48 | 4/30/2003 BLMIS Customer Statement for Account 1CM363 | 10-04390_Mann0000475–0477 | Stipulated. |
| 49 | 4/16/2003 509 Account 1CM363 Check to Michael Mann and Meryl Mann J/T WROS | MADWAA00306470–6471 | Stipulated. |
| 50 | 4/16/2003 509 Account 1CM363 Check to Michael Mann and Meryl Mann J/T WROS | JPMSAF0013965 | Stipulated. |
| 51 | 2/29/2004 BLMIS Customer Statement for Account 1CM363 | MDPTPP01251283–1286 | Stipulated. |
| 52 | 2/29/2004 BLMIS Customer Statement for Account 1CM363 | 10-04390_Mann0000540–0543 | Stipulated. |
| 53 | 1/31/2004 - 2/27/2004 703 Account Statement | MADWAA00229293–9398 | Stipulated. |
| 54 | 1/31/2004 - 2/27/2004 703 Account Statement | JPMSAB0001515–1567 | Stipulated. |
| 55 | 12/31/2004 BLMIS Customer Statement for Account 1CM363 | MDPTPP01251343–1348 | Stipulated. |
| 56 | 12/31/2004 BLMIS Customer Statement for Account 1CM363 | 10-04390_Mann0000607–0612 | Stipulated. |
| 57 | 12/16/2004 509 Account 1CM363 Check to Michael Mann and Meryl Mann J/T WROS | MADWAA00333863–8634 | Stipulated. |
| 58 | 12/16/2004 509 Account 1CM363 Check to Michael Mann and Meryl Mann J/T WROS | JPMSAF0029657 | Stipulated. |
| 59 | 12/31/2005 BLMIS Customer Statement for Account 1CM363 | MDPTPP01251413–1418 | Stipulated. |
| 60 | 12/31/2005 BLMIS Customer Statement for Account 1CM363 | 10-04390_Mann0000677–0682 | Stipulated. |
| 61 | 12/1/2005 - 12/30/2005 703 Account Statement | JPMSAB0002089–2149 | Stipulated. |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | DEFENDANTS' OBJECTION |
|---|---|---|---|
| 62 | 3/31/2006 BLMIS Customer Statement for Account 1CM363 | MDPTPP01251432–1438 | Stipulated. |
| 63 | 3/31/2006 BLMIS Customer Statement for Account 1CM363 | 10-04390_Mann0000696–0702 | Stipulated. |
| 64 | 3/20/2006 509 Account 1CM363 Check to Michael Mann and Meryl Mann J/T WROS | MADWAA00367011–7012 | Stipulated. |
| 65 | 3/20/2006 509 Account 1CM363 Check to Michael Mann and Meryl Mann J/T WROS | JPMSAF0043602 | Stipulated. |
| 66 | 3/31/2007 BLMIS Customer Statement for Account 1CM363 | MDPTPP01251510–1515 | Stipulated. |
| 67 | 3/31/2007 BLMIS Customer Statement for Account 1CM363 | 10-04390_Mann0000774–0779 | Stipulated. |
| 68 | 3/7/2007 509 Account 1CM363 Check to Michael Mann and Meryl Mann J/T WROS | MADWAA00203642–3643 | Stipulated. |
| 69 | 3/7/2007 509 Account 1CM363 Check to Michael Mann and Meryl Mann J/T WROS | JPMSAF0054281 | Stipulated. |
| 70 | 10/31/2007 BLMIS Customer Statement for Account 1CM363 | MDPTPP01251551–1552 | Stipulated. |
| 71 | 10/31/2007 BLMIS Customer Statement for Account 1CM363 | 10-04390_Mann0000815–0816 | Stipulated. |
| 72 | 10/24/2007 509 Account 1CM363 Check to Michael Mann and Meryl Mann J/T WROS | MADWAA00266152–6153 | Stipulated. |
| 73 | 10/24/2007 509 Account 1CM363 Check to Michael Mann and Meryl Mann J/T WROS | JPMSAF0061485 | Stipulated. |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | DEFENDANTS' OBJECTION |
|---|---|---|---|
| 74 | 4/30/2000 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665258–5260 | Stipulated. |
| 75 | 4/25/2000 509 Account 1CM579 Check to BAM LP | MADWAA00048606–8607 | Stipulated. |
| 76 | 10/31/2000 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665291–5295 | Stipulated. |
| 77 | 10/12/2000 509 Account 1CM579 Check to BAM LP | MADWAA00242399–2400 | Stipulated. |
| 78 | 11/30/2000 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665297–5302 | Stipulated. |
| 79 | 11/1/2000 - 11/30/2000 703 Account Statement | MADWAA00242269–2350 | Stipulated. |
| 80 | 4/30/2002 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665398–5403 | Stipulated. |
| 81 | 4/23/2002 509 Account 1CM579 Check to BAM LP | MADWAA00064596–4597 | Stipulated. |
| 82 | 4/23/2002 509 Account 1CM579 Check to BAM LP | JPMSAF0004164 | Stipulated. |
| 83 | 6/30/2002 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665412–5416 | Stipulated. |
| 84 | 6/25/2002 509 Account 1CM579 Check to BAM LP | MADWAA00110010–0011 | Stipulated. |
| 85 | 6/25/2002 509 Account 1CM579 Check to BAM LP | JPMSAF0005242 | Stipulated. |
| 86 | 4/30/2003 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665474–5476 | Stipulated. |
| 87 | 4/30/2003 BLMIS Customer Statement for Account 1CM579 | 10-04390_Mann0000047–0049 | Stipulated. |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | DEFENDANTS' OBJECTION |
|---|---|---|---|
| 88 | 4/16/2003 509 Account 1CM579 Check to BAM LP | MADWAA00306476–6477 | Stipulated. |
| 89 | 4/16/2003 509 Account 1CM579 Check to BAM LP | JPMSAF0013968 | Stipulated. |
| 90 | 1/31/2004 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665529–5534 | Stipulated. |
| 91 | 1/31/2004 BLMIS Customer Statement for Account 1CM579 | 10-04390_Mann0000102–0107 | Stipulated. |
| 92 | 1/6/2004 509 Account 1CM579 Check to BAM LP | MADWAA00235780–5781 | Stipulated. |
| 93 | 1/6/2004 509 Account 1CM579 Check to  BAM LP | JPMSAF0019901–9902 | Stipulated. |
| 94 | 3/31/2005 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665613–5617 | Stipulated. |
| 95 | 3/31/2005 BLMIS Customer Statement for Account 1CM579 | 10-04390_Mann0000184–0188 | Stipulated. |
| 96 | 3/2/2005 509 Account 1CM579 Check to BAM LP | MADWAA00159427–9428 | Stipulated. |
| 97 | 3/2/2005 509 Account 1CM579 Check to BAM LP | JPMSAF0032193 | Stipulated. |
| 98 | 4/30/2005 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665619–5621 | Stipulated. |
| 99 | 4/30/2005 BLMIS Customer Statement for Account 1CM579 | 10-04390_Mann0000190–0192 | Stipulated. |
| 100 | 4/8/2005 509 Account 1CM579 Check to BAM LP | MADWAA00165503–5504 | Stipulated. |
| 101 | 4/8/2005 509 Account 1CM579 Check to BAM LP | JPMSAF0033999 | Stipulated. |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | DEFENDANTS' OBJECTION |
|---|---|---|---|
| 102 | 12/31/2005 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665662–5667 | Stipulated. |
| 103 | 12/31/2005 BLMIS Customer Statement for Account 1CM579 | 10-04390_Mann0000233–0238 | Stipulated. |
| 104 | 12/8/2005 509 Account 1CM579 Check to BAM LP | MADWAA00364392–4393 | Stipulated. |
| 105 | 12/8/2005 509 Account 1CM579 Check to BAM LP | JPMSAF0040437 | Stipulated. |
| 106 | 1/31/2006 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665669–5675 | Stipulated. |
| 107 | 1/31/2006 BLMIS Customer Statement for Account 1CM579 | 10-04390_Mann0000240–0246 | Stipulated. |
| 108 | 1/5/2006 509 Account 1CM579 Check to BAM LP | MADWAA00361956–1957 | Stipulated. |
| 109 | 1/5/2006 509 Account 1CM579 Check to BAM LP | JPMSAF0041744 | Stipulated. |
| 110 | 4/30/2007 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665766–5771 | Stipulated. |
| 111 | 4/30/2007 BLMIS Customer Statement for Account 1CM579 | 10-04390_Mann0000332–0337 | Stipulated. |
| 112 | 4/17/2007 509 Account 1CM579 Check to BAM LP | MADWAA00267722–7723 | Stipulated. |
| 113 | 4/17/2007 509 Account 1CM579 Check to BAM LP | JPMSAF0056254 | Stipulated. |
| 114 | 7/31/2007 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665785–5787 | Stipulated. |
| 115 | 7/31/2007 BLMIS Customer Statement for Account 1CM579 | 10-04390_Mann0000352–0354 | Stipulated. |

| EX. NO. | DOCUMENT DESCRIPTION | BATES NO. | DEFENDANTS' OBJECTION |
|---|---|---|---|
| 116 | 7/25/2007 509 Account 1CM579 Check to BAM LP | MADWAA00279600–9601 | Stipulated. |
| 117 | 7/25/2007 509 Account 1CM579 Check to BAM LP | JPMSAF0058939 | Stipulated. |
| 118 | 10/31/2007 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665799–5800 | Stipulated. |
| 119 | 10/31/2007 BLMIS Customer Statement for Account 1CM579 | 10-04390_Mann0000365–0366 | Stipulated. |
| 120 | 10/24/2007 509 Account 1CM579 Check to BAM LP | MADWAA00266160–6161 | Stipulated. |
| 121 | 10/24/2007 509 Account 1CM579 Check to BAM LP | JPMSAF0061489 | Stipulated. |
| 122 | 1/31/2008 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665814–5816 | Stipulated. |
| 123 | 1/31/2008 BLMIS Customer Statement for Account 1CM579 | 10-04390_Mann0000383–0385 | Stipulated. |
| 124 | 1/23/2008 509 Account 1CM579 Check to BAM LP | MADWAA00290613–0614 | Stipulated. |
| 125 | 1/23/2008 509 Account 1CM579 Check to BAM LP | JPMSAF0064380 | Stipulated. |
| 126 | 4/30/2008 BLMIS Customer Statement for Account 1CM579 | MDPTPP01665821–5827 | Stipulated. |
| 127 | 4/30/2008 BLMIS Customer Statement for Account 1CM579 | 10-04390_Mann0000390–0396 | Stipulated. |
| 128 | 4/23/2008 509 Account 1CM579 Check to BAM LP | MADWAA00298075–8076 | Stipulated. |
| 129 | 4/23/2008 509 Account 1CM579 Check to BAM LP | JPMSAF0066967 | Stipulated. |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | DEFENDANTS' OBJECTION |
|---|---|---|---|
| 130 | 4/23/2008 509 Account 1CM579 Check to BAM LP | DBTCA_2_000048 | Stipulated. |

The Trustee reserves the right to rely upon and introduce any of the Defendants' exhibits, identified in Exhibit B, to amend or supplement the foregoing list of exhibits at any time prior to the time of trial, to identify additional exhibits for purposes of rebuttal or impeachment, whether or not designated herein, and to further supplement the foregoing list of exhibits as necessary in connection therewith.

# EXHIBIT B

**DEFENDANTS' [PRELIMINARY DRAFT PROPOSED] TRIAL EXHIBIT LIST**

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | TRUSTEE'S OBJECTION |
|--------|----------------------|-----------|---------------------|
|  | 509 Account Statements |  | Stipulated |
| 1-A |  | JPMTAA0000184-186 | Stipulated |
| 1-B |  | JPMTAA0000220-222 | Stipulated |
| 1-C |  | JPMTAA0000251-253 | Stipulated |
| 1-D |  | MADWAA00332939-40 | Stipulated |
| 1-E |  | JPMTAA0000051-53 | Stipulated |
|  | 703 Account Statements |  | Stipulated |
| 2-A |  | JPMSAB0003510-3580 | Stipulated |
| 2-B |  | JPMSAB0003457-3509 | Stipulated |
| 2-C |  | JPMSAB0003705-3768 | Stipulated |
| 2-D |  | JPMSAB0003291-3357 | Stipulated |
| 2-E |  | JPMSAB0003769-3830 | Stipulated |
| 2-F |  | JPMSAB0003639-3704 | Stipulated |
| 2-G |  | JPMSAB0003581-3638 | Stipulated |
| 2-H |  | JPMSAB0003358-3404 | Stipulated |
| 2-I |  | JPMSAB0003915-3948 | Stipulated |
| 2-J |  | JPMSAB0003870-3914 | Stipulated |
| 2-K |  | JPMSAB0003831-3869 | Stipulated |

1

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | TRUSTEE'S OBJECTION |
|--------|----------------------|-----------|---------------------|
| 2-L | | JPMSAB0003405-3456 | Stipulated |
| 2-M | | JPMSAB0004132-4194 | Stipulated |
| 2-N | | JPMSAB0004091-4131 | Stipulated |
| 2-O | | JPMSAB0004312-4355 | Stipulated |
| 2-P | | JPMSAB0003950-4009 | Stipulated |
| 2-Q | | JPMSAB0004356-4406 | Stipulated |
| 2-R | | JPMSAB0004257-4311 | Stipulated |
| 2-S | | JPMSAB0004195-4256 | Stipulated |
| 2-T | | JPMSAB0004010-4064 | Stipulated |
| 2-U | | JPMSAB0004518-4570 | Stipulated |
| 2-V | | JPMSAB0004455-4504 | Stipulated |
| 2-W | | JPMSAB0009515-1567 | Stipulated |
| 2-X | | JPMSAB0003510-3579 | Stipulated |
| 2-Y | | JPMSAB0000152-210 | Stipulated |
| 2-Z | | JPMSAB0003129-3179 | Stipulated |
| 2-AA | | JPMSAB000001-48 | Stipulated |
| 2-BB | | MADWAA00048071-162 | Stipulated |
| 2-CC | | MADWAA00378499-566 | Stipulated |
| 2-DD | | MADWAA00139882-975 | Stipulated |
| 2-EE | | MADWAA01072688-714 | Stipulated |
| 2-FF | | MADWAA00147886-000 | Stipulated |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | TRUSTEE'S OBJECTION |
|--------|----------------------|-----------|---------------------|
| 2-GG | | MADWAA00389854-923 | Stipulated |
| | BAM CHECKS | | Stipulated |
| 3A | | JPMSAF0004164 | Stipulated |
| 3-B | | JPMSAF0005242 | Stipulated |
| 3-C | | JPMSAF0013968 | Stipulated |
| 3-D | | JPMSAF0019901-02 | Stipulated |
| 3-E | | JPMSAF0032193 | Stipulated |
| 3-F | | JPMSAF0040437 | Stipulated |
| 3-G | | JPMSAF0041744 | Stipulated |
| 3-H | | JPMSAF0056254 | Stipulated |
| 3-I | | JPMSAF0058939 | Stipulated |
| 3-J | | JPMSAF0061489 | Stipulated |
| 3-K | | JPMSAF0064380 | Stipulated |
| 3-L | | JPMSAF0066967 | Stipulated |
| 3-M | | MADWAA00048606-07 | Stipulated |
| 3-N | | MADWAA00242399-02 | Stipulated |
| 3-O | | JPMSAF0033999 | Stipulated |
| 4 | BAM Account Documents | AMF00267043-51 | Stipulated |
| | BAM Account Statements | | Stipulated |
| 5-A | | MDPTPP01667946-51 | Stipulated |

3

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | TRUSTEE'S OBJECTION |
|---|---|---|---|
| 5-B | | MDPTPP01667794-97 | Stipulated |
| 5-C | | MDPTPP01667750-54 | Stipulated |
| 5-D | | MDPTPP01667662-66 | Stipulated |
| 5-E | | MDPTPP01667602-06 | Stipulated |
| 5-F | | MDPTPP01667502-06 | Stipulated |
| 5-G | | MDPTPP01677410-14 | Stipulated |
| 5-H | | MDPTPP01667438-42 | Stipulated |
| 5-I | | MDPTPP01667070-73 | Stipulated |
| 5-J | | MDPTPP01666894-98 | Stipulated |
| 5-K | | MDPTPP01666874-77 | Stipulated |
| 5-L | | MDPTPP01666590-92 | Stipulated |
| 5-M | | MDPTPP01666470-76 | Stipulated |
| 5-N | | MDPTPP01666338-43 | Stipulated |
| 5-O | | MDPTPP01666308-13 | Stipulated |
| 5-P | | MDPTPP01666069-74 | Stipulated |
| 5-Q | | MDPTPP01666013-18 | Stipulated |
| 6 | Mann Account Documents | AMF00256536-45 | Stipulated |
| | Mann Account Statements | | Stipulated |
| 7-A | | MDTPP01251607-1612 | Stipulated |

4

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | TRUSTEE'S OBJECTION |
|---|---|---|---|
| 7-B | | MDTPP01251488-1492 | Stipulated |
| 7-C | | MDTPP01251503-1508 | Stipulated |
| 7-D | | MDTPP01251427-1430 | Stipulated |
| 7-E | | MDTPP01251336-1341 | Stipulated |
| 7-F | | MDTPP01251276-1281 | Stipulated |
| 7-G | | MDTPP01251209-1216 | Stipulated |
| 7-H | | MDTPP01250892-0904 | Stipulated |
| | Mann Checks | | Stipulated |
| 8-A | | MADWAA00203642 | Stipulated |
| 8-B | | MADWAA00266152 | Stipulated |
| 8-C | | MADWAA00306470 | Stipulated |
| 8-D | | MADWAA00333863 | Stipulated |
| 8-E | | MADWAA00367011 | Stipulated |
| | 703 Account Checks | | Stipulated |
| 9-A | | MADTSS01297477-79 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |
| 9-B | | MADTSS01297476 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |
| 9-C | | MADTSS01297472-3 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | TRUSTEE'S OBJECTION |
|---|---|---|---|
| 9-D | | MADTSS01297470-01 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |
| 9-E | | MADTSS01297473 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |
| 9-F | | JPMSAH0000053 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |
| 9-G | | JPMSAH0000051 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |
| 9-H | | JPMSAH0000052 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |
| 9-J | | MADTSS1301555 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |
| | | | |
| 10- | U.S. v. Bonventre et al., 10 cr. 00228 (LTS) | Bonventre Sentencing transcript, ECF 1441 | Objection as to Relevancy; Lack of Probative Value |
| 11- | U.S. v Peter Madoff, 10 cr 0228 (LTS) June 29, 2012 | Peter Madoff Plea Transcript | Objection as to Relevancy; Lack of Probative Value |
| 12- | JPMorgan Chase, End of Day Investment and Loan Sweep Service | www.jpmorgan.com | Require additional information, reserve objection |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | TRUSTEE'S OBJECTION |
|---|---|---|---|
| -13 | Wire Transfer Instructions | | Require additional information, reserve objection |
| 13-A | Bernard L. Madoff Investment Securities LLC., Registration of investment advisory business (2006) | advisorinfo.sec.gov | Require additional information, reserve objection |
| 14 | Agreement of Limited Partnership of BAM L.P. | | Stipulated as to authenticity to the extent Defendants refer to AMF00267053–076; Objection if referring to a different unidentified document; Objection as to Relevancy; Lack of Probative Value |
| 15 | Bear Stearns Trading Account Statements | BSTSAC0000383-502 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |
| 16 | Morgan Stanley Trading Account Statements | MS4SAB0000180-439 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |
| | | | |
| 17 | Tax Cost Analysis-Mann | 002310-211 | Objection as to Relevancy; Lack of Probative Value; Trustee's Motion *in Limine* to exclude testimony and documents related to tax payments granted at July 1, 2020 final pretrial conference |
| | TAX Returns | | |

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | TRUSTEE'S OBJECTION |
|---|---|---|---|
| 18-A | 1997 Mann Tax Return | 0001453-1561 | Objection as to Relevancy; Lack of Probative Value; Trustee's Motion *in Limine* to exclude testimony and documents related to tax payments granted at July 1, 2020 final pretrial conference |
| 18-B | 1998 Mann Tax Return | 0001563-1697 | Objection as to Relevancy; Lack of Probative Value; Trustee's Motion *in Limine* to exclude testimony and documents related to tax payments granted at July 1, 2020 final pretrial conference |
| 18-C | 2000 Mann Tax Return | 0001695-1797 | Objection as to Relevancy; Lack of Probative Value; Trustee's Motion *in Limine* to exclude testimony and documents related to tax payments granted at July 1, 2020 final pretrial conference |
| 18-D | 2001 Mann Tax Return | 0001798-1951 | Objection as to Relevancy; Lack of Probative Value; Trustee's Motion *in Limine* to exclude testimony and documents related to tax payments granted at July 1, 2020 final pretrial conference |
| 18-E | 2002 Mann Tax Returns | 0001952-2110 | Objection as to Relevancy; Lack of Probative Value; Trustee's Motion *in Limine* to exclude testimony and documents related to tax payments granted at July 1, 2020 final pretrial conference |
| 19 | BLMIS Bear Stearns Trading Account Statements | BSTSA0037362-429 | Stipulated as to authenticity; Objection as to Relevancy; Lack of Probative Value |

8

| EX NO. | DOCUMENT DESCRIPTION | BATES NO. | TRUSTEE'S OBJECTION |
|---|---|---|---|
| 20 | Customer 1099 | | Require additional information, reserve objection |
| | **TRUSTEE EXHIBITS** | | |
| | | | |
| | 1/1/2001 BLMIS letter to Bank of NY | MESTABL00005744 | Stipulated |
| | 1/1/2001 BLMIS letter to NSCC | MADTEE00544438 | Stipulated |
| | 1/1/2001 BLMIS letter to OCC | MADTEE00544720–4730 | Stipulated |
| | 1/1/2001 BLMIS letter to DTC | MESTABL00005745 | Stipulated |

The Defendants reserve the right to rely upon and introduce any of the Trustee's exhibits, in addition to those identified herein, to amend or supplement the foregoing list of exhibits at any time prior to the time of trial, to identify additional exhibits for purposes of rebuttal or impeachment, whether or not designated herein, and to further supplement the foregoing list of exhibits as necessary in connection therewith.

9