# Exhibit A

# UNITED STATES BANKRUPTCY COURT

SOUTHERN _____ District of _____ NEW YORK

Securities Investor Protection Corporation,

    Plaintiff,

v.

Bernard L. Madoff Investment Securities LLC,

    Defendant.

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.* Adv. Pro. No. 08-01789 BRL

To:

Rafael Mayer
Khronos LLC
140 East 45th Street, 28th floor
New York, NY 10017

☒ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111 | July 21, 2010 at 10:00 am |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents described in Attachment A to this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Tel.: 212-589-4200<br>Attn: Brian Esser, Esq. | July 20, 2010 at 1:00 pm |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| [signature] Attorney | July 7, 2010 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Brian K. Esser, Esq.  Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

American LegalNet, Inc.
www.FormsWorkflow.com

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

## PROOF OF SERVICE

| | DATE | PLACE | |
|---|---|---|---|
| **SERVED** | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                      DATE                                SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
   (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
   (2) Command to Produce Materials or Permit Inspection.
      (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
      (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
         (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
         (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
   (3) Quashing or Modifying a Subpoena.
      (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
         (i) fails to allow a reasonable time to comply;
         (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
         (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
         (iv) subjects a person to undue burden.
      (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
         (i) disclosing a trade secret or other confidential research, development, or commercial information;
         (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
         (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
      (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
         (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
         (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
   (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
      (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
      (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
      (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
      (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) Claiming Privilege or Protection.
      (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
         (i) expressly make the claim; and
         (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
      (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

## ATTACHMENT A TO SUBPOENA
## TO RAFAEL MAYER

### A.  DEFINITIONS AND INSTRUCTIONS

1.  The term "Rafael Mayer," "you" and "your" mean and include Rafael Mayer and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, partner, joint venture, principal, member, officer, director, shareholder, manager, employee, fiduciary, beneficiary, nominee, accountant, attorney-in-fact, attorney, auditor, bookkeeper, consultant, investment adviser, trustee, beneficiary, agent or representative thereof, or person acting on your behalf or for your benefit, including without limitation Rafael Mayer, without regard to whether the relationship of such person to you occurred in the past or currently exists.

2.  "Madoff" means and includes (a) Bernard L. Madoff Investment Securities, LLC, any parent, subsidiary, affiliate, predecessor, successor, partner, joint venturer, representative, manager, officer, employee and any related entity including but not limited to Madoff Securities International LLC; Madoff Securities International, Ltd.; Madoff Energy Holdings LLC; Madoff Brokerage and Trading Technologies LLC; Northern Waters LLC; BCC II LLC; 4th & Forty LLC; Angler Capital Partners; Urban Angler LLC; Davin Capital LP; Rogge Capital Management; P&C Restaurants; Underpar LLC; Abtech Industries Inc.; Stemline Therapeutics; Blow Styling Salon LLC; Massage NYC; Conglomerate Gas Resources LLC; AHM Ventures LLC; 916 SE 12 Street LLC; Nehst Media LLC; Primex Holdings LLC; ExchangeLab; PetRx; BLM Air Charter LLC; Madoff Family LLC; The Madoff Family Foundation; Abel Automatics Inc.; Abel Holdings LLC; Essex Realty Development LLC; The Schlichter Foundation and its representatives and employees (collectively, "BLMIS"); and (b) Bernard L. Madoff ("BLM") and any and all relatives, related persons including but not limited to Ruth Madoff; Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana Madoff/Swanson/Skoller; Andrew Madoff; Deborah Madoff/West; Mark Madoff; Jennifer Madoff/Stevens; Stephanie Madoff; Alec Madoff; Henry A. Madoff; Jeff M. Madoff; Sonya Madoff; Madoff Family Foundation; Gertrude E. Alpern; Lewis Alpern; The Paul Alpern Residuary Trust; Gertrude Alpern; Leonard Alpern; Minette Alpern Trust; Eileen Alpern; Jonathan Alpern Trust; Jonathan Alpern; Amanda Alpern Trust; Robert Roman; Joan Roman; Amy Luria Partners LLC; John (Joan) J. Fisher Partners; Trust of Gladys C. Luria and Robert Luria Partners.

3.  "Asset" means any real property, personal property, cash, security, loan, interest, equity, or other thing of value owned or held by you including but not limited to assets or properties which are owned or held by trustees, agents, or nominees for your benefit, or on your behalf. For any natural person, "Asset" includes any real property, personal property, cash, security, loan, interest, equity, or any thing of value owned or held by your spouse, family members or any entity in which you have an interest, except those which constitute separate property under applicable law.

4.  "CBOE" means the Chicago Board of Options Exchange.

5. "Communication" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 7026-1 of the Local Bankruptcy Rules and Civil Rule 26.3 of the Local District Rules. The term "communication" specifically includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or portrayed in any "document," and specifically includes: (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) written communications, including communications by email.

6. "Concerning" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 7026-1 of the Local Bankruptcy Rules and Civil Rule 26.3 of the Local District Rules. The term "concerning" specifically means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

7. "DTCC" means the Depository Trust and Clearing Corporation, and any parent, affiliate, subsidiary, predecessor and successor thereof, including without limitation the Depository Trust Company ("DTC") and the National Securities Clearing Corporattion ("NSCC").

8. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 7026-1 of the Local Bankruptcy Rules and Civil Rule 26.3 of the Local District Rules. "Document" specifically includes responsive content regardless of the media upon which it is expressed including but not limited to paper, physical evidence and Electronically Stored Information, as that term is defined in the Federal Rules of Civil Procedure. "Document" includes but is not limited to all computerized data or content stored on electromagnetic media even if they are designated as drafts or as deleted. "Document" includes but is not limited to voicemail messages, audio files, all e-mail messages including but not limited to web-based email messages such as Gmail messages, text messages, and all other formats including but not limited to word processing, electronic spreadsheets, images, databases, Intranet system data, Internet system data, telephone or cellular telephone calling records, or data compilations. "Document" includes "metadata" which includes but is not limited to all document properties, imbedded codes, links, and descriptions of the document's source as stored in the ordinary course of business. "Document" includes all related content including but not limited to attachments to documents, linked documents and appended documents as well as descriptions of each document's organization such as custodians, files, etc. "Document" includes multiple copies or versions of documents, an e-mail or its attachment(s) distributed to multiple recipients, or any other non-identical copy of a document so that each are separate documents within the meaning of this term. Identical copies of any "document" stored in distinct locations are separate documents within the meaning of this term.

9. "Fairfield Greenwich" means and includes Fairfield Greenwich Group, Fairfield Greenwich Advisors, LLC, Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Ltd., Fairfield International Managers, Inc., Greenwich Sentry, L.P., Greenwich Sentry Partners, L.P., Fairfield Sentry Limited, Fairfield Lambda Limited, Fairfield Sigma Limited, and their respective officers, directors, employees, partners, members, corporate parent, subsidiaries, and affiliates, including, but not limited to, Walter M. Noel, Jr., Jeffrey Tucker, Andrés Piedrahita, Amit Vijayvergia, Brian Francouer, Lourdes Barreneche, Cornelis Boele, Philip Toub, Richard Landsberger, Charles Murphy, Andrew Smith, Daniel Lipton, Mark McKeefry, Harold Greisman, Santiago Reyes, Jacqueline Harary, Robert Blum, Corina Noel Piedrahita, Maria

Teresa Pulido Mendoza, Yanko della Schiava, Matthew C. Brown, Vianney d'Hendecourt, David Horn, Julia Luongo, Disha Attavar, Jose Dios, Lauren Ross, and Mauro Musciacco.

10.     "FINRA" means the Financial Industry Regulatory Authority and any predecessor or successor entity.

11.     "Interest" means, without limitation, any cause, concern, responsibility, business, share, property, undertaking, right, participation or advantage owned by you, including without limitation, any and all capital stock, equity interests and debt interests, as well as any and all profits and/or capital interests in any partnerships, any and all membership interests in any limited liability companies, and any and all interests of any other kind or classification in any U.S. or foreign entity, as well as any and all other securities of any kind whether considered legal or beneficial ownership, ownership in form, a nominee interest, contingent or otherwise. "Interest" or "interests" shall also include restricted stock or shares, options, warrants, stock appreciation rights, other conversion privileges, and derivatives, including but not limited to swaps, 1256 contracts, hedging contracts and CFDs.

12.     "Madoff Account" means each and every account, borrowing, credit or cash advance facility (including any credit, debit, ATM or similar card), deposit, financial instrument, fund, investment property, other property, tangible or intangible, lease, loan, mortgage, note, money or thing of value held, maintained, made or extended by, to or from Madoff in Madoff's name or for Madoff's benefit, or any other person that Madoff owned or controlled or on whose behalf Madoff had power or authority or otherwise purported to act, alone or with other persons, or by Madoff for the benefit or use of any other person or entity,

13.     "Madoff Fund" means and includes without limitation any fund, fund of hedge or other funds, hedge fund, investment company, partnership, limited partnership, pension fund, endowment, foundation, charity, business, statutory or other trust, pool or other similar vehicle or entity, wherever and however organized by you or any other person, in, through or by which funds, moneys or assets were, in whole or in part, directly or indirectly, singly or jointly, invested in or managed by Madoff or used to obtain investment returns directly or indirectly linked or indexed to returns purportedly earned or generated by Madoff, including without limitation Fairfield Greenwich and Tremont.

14.     "Madoff Transfer" means any direct or indirect payment or transfer of any thing of value made by Madoff to you or any other person or by you or any other person to Madoff, by any means or instrumentality, including without limitation check, wire transfer, debit, deposit, credit to an account, return, exchange or swap of any property or any interest therein, or by any other means.

15.     "NASD" means the National Association of Securities Dealers and any successor entity.

16.     "OEX" means and includes, and refers to the symbol commonly used for, any Standard & Poor's 100 Index Put or Call Option traded on the CBOE.

17.     "Person" means any natural person or any business, not-for-profit, legal, governmental or other incorporated or unincorporated entity, association, fund, organization or group.

18. "Relevant Period" refers to the period beginning on the date when BLMIS initially registered as a broker-dealer under the Securities and Exchange Act of 1934 to the present. Unless otherwise indicated, the documents sought herein are for the Relevant Period.

19. "SEC" means the Securities and Exchange Commission.

20. "Security" means any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, forward or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, forward, or privilege relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

21. "SIPC" means the Securities Investor Protection Corporation.

22. "Suspicious Activity Report" means any reports, mandated by law, made to law enforcement by depository and other financial institutions regarding certain financial transactions.

23. "Transfer" means and includes any gift, demise, grant, sale, assignment, lease, or conveyance.

24. "Tremont" includes without limitation, Tremont Group Holdings, Tremont Partners, Inc., Rye Select Broad Market Fund LP, Rye Select Broad Market Portfolio Limited, the Rye Select Broad Market Prime Fund L.P., Rye Select Broad market Insurance Portfolio LDC, the Rye Select Broad Market Insurance Fund LP, Rye Select Broad Market XL Fund, L.P., Rye Select Broad Market XL Portfolio Limited, and their respective officers, directors, employees, partners, members, corporate parent, subsidiaries, and affiliates, including without limitation:  Robert Schulman, Sandra Manzke, Darren Johnston, Suzanne Hammond, Harry Hodges, Jim Mitchell, Rupert Allen, Stephen Clayton, Stuart Pologe, Patrick Kelly, Cynthia Nicoll, Ileana Lopez-Balboa, Michael Lynch, James Gabriel McCormick, Brian Marsh, John Matwey, James Mitchell, Monika Pascu, Tom Sandlow, Robert I. Schulman, Barry Tannen, Frank Trippoli, Aleksandr Weiler, Edward Wright, Mario Gabelli and Leon Meyers.

25. For all purposes herein, spelling, grammar, syntax, abbreviations, idioms and proper nouns shall be construed and interpreted to give proper meaning and consistency to its context.

26. The following rules of construction apply to this Subpoena:

    (a)    "Any" and "all" shall be deemed to include the other;

(b) "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Subpoena all responses that might otherwise be construed to be outside of its scope;

(c) "All" and "Each" shall be construed as "all and each";

(d) The singular form of any word includes the plural and *vice versa*; and

(e) Reference to any person that is not a natural person and is not otherwise defined herein refers to and includes any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such person.

27. These discovery requests shall be read reasonably in recognition of the fact that the Trustee does not have the information being sought and that you generally have or can obtain such information and documents more readily than the Trustee serving them.

28. All documents shall be identified by the request(s) to which they are primarily responsive.

29. Produce all documents and all other materials described below in your actual or constructive possession or custody, or subject to your control, including in possession, custody or control of current and former employee, wherever those documents and materials are held, including on personal computers, PDAs, wireless devices or electronic mail systems such as Gmail, Yahoo or the equivalent.

30. Produce all documents maintained on paper, electronically stored information, electronic mail and instant messaging platforms regardless of whether the electronic mail or instant messaging platform operates on your own server or Bloomberg or Reuters or similar servers and platforms.

31. Produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a copy should be produced in lieu thereof and should be legible and bound or stapled in the same manner as the original.

32. Documents not otherwise responsive to this Subpoena should be produced if such documents mention, discuss, refer to, explain or concern one or more documents that are called for by this Subpoena, if such documents are attached to, enclosed with or accompany documents called for by this Subpoena or if such documents constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

33. Documents attached to each other should not be separated; separate documents should not be attached to each other.

34. Documents should include all exhibits or appendices which are referenced in, attached to, included or are a part of the requested documents.

35. If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

36. You should produce the original of each document requested. If the original of a document cannot be located or it is unreasonable to produce the original, a fair and accurate copy should be produced in lieu thereof.

37. With respect to each document to which an objection as to production is made, state the following:

   1. Nature of the document;
   2. Date of the document;
   3. Name and title of the person(s) to whom the document was addressed and copied;
   4. Name and title of the person(s) who prepared and/or sent the document;
   5. General subject matter of the document;
   6. All documents referred to or accompanying such documents;
   7. Number of pages in the document; and
   8. Specific ground on which the objection is made.

38. No part of any request shall be left unanswered merely because an objection has been interposed to another part of the request.

39. If an objection is made to any request or part thereof under the Federal Rules of Bankruptcy Procedure 7034, the objection shall state with specificity all grounds for that objection.

40. If a request is objected to as unduly burdensome, you shall (i) indicate the nature of the burden involved in providing the response requested; and (ii) set forth a proposal as to a less burden-incurring response that would provide responsive information.

41. All requests herein incorporate Fed. R. Bankr. P. 7026-7037, Fed. R. Civ. P. 26-37, and Local Civil Rules for the United States Bankruptcy Court Southern District of New York 7026-7037.

42. To the extent a document sought herein was at one time, but is no longer, in your actual or constructive possession or custody, or subject to your control, state whether it: (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred to others, and/or (iv) has been otherwise disposed of. In each instance, explain the circumstances surrounding authorization for such disposition thereof; state the date or approximate date thereof; the contents of said document; and the person who authorized the transfer, destruction or other disposition of such document. Documents prepared prior to, but which relate or refer to, the time period covered by these documents are to be identified and produced.

43. All requests herein implicitly seek responses concerning the subject matter of the requests, and each request shall be interpreted so as to encompass the liberal scope of discovery set forth in the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, and you are expected to provide any supplementary answers, immediately, in compliance with Fed. R. Bankr. P. 7026.

## B. DOCUMENTS TO BE PRODUCED

1. All documents concerning Madoff.

2. All documents concerning any Madoff Fund, including without limitation Fairfield Greenwich and Tremont.

3. All documents concerning any person other than any Madoff Fund that invested or transacted with, or whose funds were proposed to be managed by, Madoff, directly or indirectly.

4. All documents concerning communications between you and Madoff.

5. All documents concerning communications between you and any Madoff Fund, including without limitation Fairfield Greenwich and Tremont.

6. All documents concerning any person other than any Madoff Fund that invested or transacted with, or whose funds were proposed to be managed by, Madoff, directly or indirectly.

7. All documents concerning investment, managerial, performance, operational, back office and other due diligence reviews, investigations, examinations, analyses, deliberations, meetings or recommendations, including but not limited to any business, legal, compliance, credit, financial, operational, quantitative, reputational, risk, suitability, or supervisory assessment or evaluation, by you or any other person concerning Madoff.

8. All documents concerning investment, managerial, performance, operational, back office and other due diligence reviews, investigations, examinations, analyses, deliberations, meetings or recommendations, including but not limited to any business, legal, compliance, credit, financial, operational, quantitative, reputational, risk, suitability or supervisory assessment or evaluation, by you or any other person concerning any Madoff Fund.

9. All documents concerning investment, managerial, performance, operational, back office and other due diligence reviews, investigations, examinations, analyses, deliberations, meetings or recommendations, including but not limited to any business, legal, compliance, credit, financial, operational, quantitative, reputational, risk, suitability or supervisory assessment or evaluation, by you or any other person concerning any person other than any Madoff Fund that invested or transacted with, or whose funds were proposed to be managed by, Madoff, directly or indirectly.

10. All documents concerning any analysis, review, study, investigation, deliberation, evaluation, recommendation, approval or disapproval by any oversight, review, committee or other similar committee, supervisor or other person, including without limitation any legal,

regulatory or compliance, treasury, finance, balance sheet management, systems, market, credit or operational risk, internal audit, management information system, document retention, "know your customer," anti-money laundering, transaction monitoring, new account or product committee, of any Madoff Account or any investment or transaction with Madoff, any Madoff Fund or any other person that invested or transacted with Madoff, directly or indirectly.

11. All documents concerning due diligence reviews, investigations, examinations or analyses of any persons providing services to Madoff, any Madoff Fund, and any other person that invested or transacted with Madoff, directly or indirectly, including without limitation

    (a) accounting,
    (b) administration,
    (c) auditing,
    (d) bookkeeping,
    (e) brokerage,
    (f) capital introduction
    (g) client reporting,
    (h) custody,
    (i) clearing,
    (j) consulting,
    (k) execution,
    (l) finder,
    (m) investment advisory or management,
    (n) legal,
    (o) marketing,
    (p) offering and placement agent,
    (q) prime brokerage,
    (r) promoter,
    (s) subscription,
    (t) redemption,
    (u) safekeeping,
    (v) trading counterparty,
    (w) transfer agency, and
    (x) valuation and pricing services.

12. All documents concerning the reputation of Madoff or any "red flags" or risk or indicia of fraud or potential loss associated with investing or transacting directly or indirectly with Madoff, including without limitation documents concerning any theory, hypothesis, opinion, conjecture, rumor, speculation or suspicion concerning the character of the investment strategy or investment performance and returns purportedly executed or generated by Madoff, any Madoff Fund or any other person that invested or transacted with Madoff, directly or indirectly.

13. All documents concerning the trading volume and price of OEX options on the CBOE in relation to the volume and price required to execute the investment strategy of Madoff.

14. All documents concerning the trading volume and price of over-the-counter ("OTC") Standard & Poor's 100 index options in U.S. or foreign markets in relation to the volume and price required to execute the investment strategy of Madoff.

15. All documents concerning the trading volume and price of Standard & Poor's 100 index underlying stocks and U.S. Treasury bills in U.S. and foreign markets in relation to the volume and price required to execute the investment strategy of Madoff.

16. All documents concerning transactions in and trading volumes and prices of securities purportedly bought or sold by Madoff in connection with any investment management and advisory client activity and market-making and proprietary trading activity.

17. All documents concerning transactions in and trading volumes and prices of securities executed in the U.S. and foreign listed and OTC markets purportedly utilized by Madoff in connection with investment management and advisory client activity, including without limitation research, sales, trading, marketing and other reports, analyses and compilations of equity, equity option and related derivatives market data and information created, prepared, generated, disseminated, received or obtained by you or any other person.

18. All documents concerning the dollar value of assets under management invested and managed by Madoff during the Relevant Period.

19. All documents concerning the possibility that Madoff may have been lending or misappropriating investor funds to support or subsidize the market-making or proprietary trading business of Madoff.

20. All documents concerning the possibility that Madoff was front-running investor or brokerage client trades to support or subsidize the market-making business of Madoff or the returns purportedly generated by the investment management business of Madoff.

21. All documents concerning the possibility that Madoff was operating a Ponzi scheme or engaging in any other form of fraudulent or wrongful conduct.

22. All documents concerning any inconsistency in any description or explanation by Madoff or any other person of the investment strategy and implementation of the strategy of Madoff.

23. All documents concerning the possibility that Madoff managed, manipulated or guaranteed rates of returns for any Madoff Fund or other Madoff investor.

24. All documents concerning the financial or statistical character of Madoff's returns.

25. All documents concerning any "red flag" or any other communication or information evidencing, indicating or suggesting that Madoff or any other person acting in combination with Madoff might have engaged in fraudulent or wrongful conduct prior to the collapse of the Madoff Ponzi scheme.

26. All documents concerning the article in the May 7, 2001 issue of *Barron's* entitled "Don't Ask, Don't Tell: Bernie Madoff Is So Secretive He Even Asks Investors To Keep Mum."

27. All documents concerning the article in the December 16, 1992 issue of *The Wall Street Journal* entitled "Wall Street Mystery Features A Big Board Rival."

28. All documents concerning the article in the May 2001 issue of the *MAR/Hedge Newsletter* entitled "Madoff Tops Charts: Skeptics Ask How."

29. All documents concerning any investigation or potential investigation of Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly, by any person not affiliated with any U.S. federal, state or local or foreign law enforcement, regulatory or governmental authority or any self-regulatory organization.

30. All documents concerning any investigation or potential investigation of Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly, by U.S. federal, state or local or foreign law enforcement, regulatory or other governmental authority, or self-regulatory organization, including without limitation the SEC, FINRA, NASD

31. All documents concerning your or any other person's due diligence of Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly, including without limitation dates and results of on-site visits, names and titles of persons who made any on-site visits; verification of compliance procedures; review of custody arrangements, prime brokerage agreements or other service provider agreements, DVP/RVP agreements, side letters; determinations of the identity of any accountant or auditor, reasons for any change in auditor, confirmation letters received from auditors; review of audited and/or unaudited financial statements; determination of the identity of Madoff legal counsel, identity of any third party service provider; descriptions or explanations of Madoff's internal management, operations, division of responsibility, supervision and compliance organization, functions and responsibilities; and any communication with any person, including without limitation any law enforcement, regulatory or other governmental authority or self-regulatory organization, regarding the foregoing.

32. All documents concerning any criticism, complaint, objection, inquiry or question by any person concerning any investment or transaction with Madoff, any Madoff Account, Madoff Transfer, Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly.

33. All documents sufficient to identify the names and addresses of any persons, and the beneficial owners or individual constituents of any such persons that are not natural persons, that invested or transacted directly or indirectly with Madoff, and all documents concerning such investments or transactions.

34. All documents sufficient to identify the names and addresses of any persons, and the beneficial owners or individual constituents of any such persons that are not natural persons, that considered investing or transacting directly or indirectly with Madoff and did not invest or transact directly or indirectly with Madoff, and all documents concerning their decision not to invest or transact with Madoff.

35. All documents sufficient to identify any persons that approved, offered or recommended any investment or transaction with Madoff, any Madoff Fund, or any other person that invested

or transacted with Madoff, directly or indirectly, and all documents concerning any such offer or recommendation.

36. All documents sufficient to identify any persons that disapproved, rejected or refused to approve, offer or recommend any investment or transaction with Madoff, any Madoff Fund or any other person that invested or transacted with Madoff, directly or indirectly, and all documents concerning any such disapproval, rejection or refusal.

37. All documents concerning your policies, procedures and practices concerning preservation of documents for the Relevant Period, including any document preservation notices sent to any person concerning Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly, and documents sufficient to show the recipients of any such notices.

38. All documents that refer or relate to your disaster recovery plan for technology infrastructure, the process, policies and procedures for recovery or continuation of infrastructure critical to your organization after a natural or human-induced disaster, including locally stored mirrors of systems and data, backups of data made to tape, backups of data made to disk, optical platters or other mass storage media, and replication of data to off-site locations.

39. All documents concerning the liquidation of any of your hedge fund investments or related transactions, including without limitation any swap or derivative transaction, from January 1990 to the present

40. All documents concerning your investigation, analysis, review, evaluation or due diligence of your exposure to hedge fund investments and related transactions, including any swap or derivative transaction, from January 1990 to the present.

41. All documents concerning any funds, investment managers, investment vehicles or similar persons in which you prohibited, disapproved, discouraged or declined to recommend any investment by any person from January 1990 to the present.

42. All documents relating to any analysis, assessment, due diligence, evaluation, investigation or review performed by you or any other person of any hedge fund or other investment manager, investor, trader or other person that utilized any investment strategy similar to that purportedly utilized by Madoff.

43. All documents concerning your or any other person's policies, procedures and practices concerning due diligence, investigation, analysis, review or evaluation of any investment by you or any other person in any hedge fund, fund of funds or other similar investment vehicle, entity or instrument prior to or during the pendency of any such investment.

44. All documents concerning or showing the amount of your direct or indirect investment in or financial exposure (by investment, hedge or otherwise) to, and any other person's direct or indirect investment in or financial exposure (by investment, hedge or otherwise) to, Madoff.

45. All documents relating to any write-offs, contingency reserves or liabilities related to or resulting from the liquidation of Madoff.

46. All documents concerning any investment, accommodation, service or transaction offered, issued, executed, made or proposed to be made by you or any other person that was in any way related, linked or indexed to, invested in or secured or hedged by an investment in Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly.

47. All documents sufficient to show the names and addresses of all persons, including the beneficial owners or individual constituents of any such persons that are not natural persons, involved in any capacity in any investment, accommodation, service or transaction offered, issued, executed, made or proposed to be made by you or any other person that were in any way related, linked or indexed to, or invested in Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly.

48. All documents concerning your or any other person's investment or transaction with Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly, including without limitation:

   (a) monthly statements, including account numbers;
   (b) historical account balance information;
   (c) incoming and outgoing wire transfer records;
   (d) copies of checks (front and back), both deposited and drawn;
   (e) records reflecting cash activity;
   (f) account opening documents;
   (g) subscription agreements;
   (h) administrative or custodial agreement;
   (i) account closing documents;
   (j) redemption or liquidation requests;
   (k) all correspondence with fund personnel;
   (l) securities trade tickets and confirmations; and
   (m) periodic investment performance reviews and commentary.

49. All documents concerning payments, subscriptions, or redemptions made by or to investors in any investment, accommodation, service or transaction offered, issued, executed, made or proposed to be made by you or any other person that was in any way related, linked or indexed to, invested in or secured or hedged by an investment in Madoff, any Madoff Fund or any person that invested or transacted with Madoff, directly or indirectly.

50. All documents concerning any investment, accommodation, service or transaction *not* offered, issued, executed, made or proposed to be made by you or any other person that were in any way related, linked or indexed to, invested in or secured or hedged by an investment in Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly.

51. All documents concerning remuneration, fees, commissions, compensation, revenues, profits, expenses, losses, reserve derived or resulting from any investment, accommodation, service or transaction offered, issued, executed, made or proposed to be made by you or any other person that were in any way related, linked or indexed to, invested in or secured or hedged

by an investment in Madoff, any Madoff Fund or any other person that invested or transacted with Madoff, directly or indirectly.

52. All documents concerning communications between or among you, any other person and DTCC concerning any securities positions held in or for any Madoff Account or for Madoff, any Madoff Fund or any other person that invested or transacted with Madoff, directly or indirectly.

53. All documents, including without limitation organization charts, sufficient to identify your or any other person's asset management, alternative asset investment management, hedge fund, fund of funds, equity and equity derivatives, fixed income, foreign exchange, commodity, or structured product trading, sales, research, marketing, credit and risk management, relationship management, investment banking and due diligence businesses, divisions, units, management personnel and staff and any other persons that may have been involved in any manner with Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly.

54. All documents concerning any communication, filing, registration or submission concerning your hedge fund, fund of funds, alternative asset, fiduciary and other similar investment management, advisory and trust activities and businesses made or required to be made by you with the SEC, FINRA, NASD or any other U.S. federal, state or local and foreign law enforcement, regulatory or other governmental authority or self-regulatory organization, including without limitation Form ADV.

55. All documents concerning any communication, referral, report, response or production made by you to U.S. federal, state or local or foreign law enforcement, regulatory or other governmental authorities, and self-regulatory organizations concerning Madoff, any Madoff Account, any Madoff Transfer, any Madoff Fund, and any other person that invested or transacted with Madoff, directly or indirectly.

56. All documents concerning any litigation, arbitration, mediation or other formal or informal dispute resolution proceeding or claim by any person, other than any law enforcement, regulatory or other governmental authority or the Trustee, for any reason concerning Madoff or any direct or indirect investment or transaction with Madoff.

## C.   HOW DOCUMENTS ARE TO BE PRODUCED

1. All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the Requesting Party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2. All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the

documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3.  Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4.  Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5.  Documents and their metadata portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall produced as those files were stored in the ordinary course of business.

6.  Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to the how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789-BRL <br><br> SIPA Liquidation |

**ORDER GRANTING AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND THE EXAMINATION OF WITNESSES**

This matter came before the Court on the motion (the "Motion")[1] of Irving H. Picard, Esq. ("Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("Debtor"), for an order authorizing the Trustee to compel the production of documents and the testimony of witnesses through the issuance of Rule 2004 Subpoenas without further order of the Court and establishing procedures in connection with such subpoenas, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein; and it appearing that the relief requested by the Motion is necessary and in the best interests of the estate, its customers, its creditors, and all parties in interest; and due notice of the Motion having been given, and it appearing that no other or further notice need be given; and the Court having determined that the Trustee articulated good cause for the relief requested in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the proceedings before the Court and after due deliberation,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted.

2. The Trustee hereby is authorized to issue and serve Rule 2004 Subpoenas for examinations pursuant to Bankruptcy Rule 2004 without further order of the Court.

3. The Trustee shall serve each Rule 2004 Subpoena and a copy of the order entered pursuant to this Motion on (i) the target of the Rule 2004 Subpoena, (ii) SIPC, (iii) the SEC, (iv) the Internal Revenue Service, and (v) the United States Attorney for the Southern District of New York.

4. The Trustee shall cooperate fully with the U.S Department of Justice, and any other federal agency designated by them (collectively, the "Government"), in any matter that the Government is currently or in the future may be investigating regarding the Debtor, its management or its financial condition. The Trustee shall use best efforts to coordinate with the Government in order to avoid unnecessary interference with any investigations conducted by the Government. The Trustee will follow a reasonable protocol to be established jointly with the Government for the sharing of information and such sharing shall be subject to appropriate conditions to protect the Debtor's estate, including but not limited to, the preservation of the attorney-client privilege and protections of the work product doctrine. If the Trustee and the Government disagree as to the appropriateness of a proposed action to be taken pursuant to this Order, the Trustee reserves the right to seek a determination from the Court.

5. The Trustee shall file with the Court an affidavit or declaration of service for each Rule 2004 Subpoena he serves.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

6. Recipients of a Rule 2004 Subpoena and any party in interest shall have ten (10) days after any Rule 2004 Subpoena is served to object to and/or seek to quash such Rule 2004 Subpoena.

7. Recipients of a Rule 2004 Subpoena are directed to produce, on a rolling basis, all responsive documents within ten (10) days of the service of the subpoena (unless otherwise agreed by the Trustee), subject to any documents withheld under a claim of privilege.

8. If a witness withholds any documents based upon a claim of privilege, the witness shall provide counsel for the Trustee with a privilege log containing the information required under Bankruptcy Rule 7026(a)(5), within ten (10) days of the service of a subpoena upon that witness (unless otherwise agreed by the Trustee).

9. Recipients of a Rule 2004 Subpoena are directed to submit to oral examination upon reasonable notice and, absent other agreement with the Trustee, in no event more than fifteen (15) days from the service of a deposition subpoena upon the recipient of said subpoena.

10. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, New York
January 12, 2009

/s/ BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE