# EXHIBIT 1

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Oren J. Warshavsky

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and the*
*estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | **LETTER OF REQUEST** |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> HSBC BANK PLC, *et al.* <br><br> Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO THE**
**APPROPRIATE JUDICIAL AUTHORITY IN THE UNITED KINGDOM**

Presenting his compliments to the appropriate judicial authority of the United Kingdom, this Request is made by the Honorable Stuart M. Bernstein of the United States Bankruptcy Court for the Southern District of New York, which is located at One Bowling Green, New York, NY 10004-1408, United States of America, to The Senior Master, for the attention of the Foreign Process Section, Room E16, Royal Courts of Justice, Strand, London WC2A 2LL, England.  Specifically, the Court requests assistance in obtaining testimonial evidence from Brian Pettitt, a citizen of England.

A copy of the transcript of the examination and the certification of the Senior Master should be returned to the Honorable Stuart M. Bernstein, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004-1408.

In light of the international law and comity that exists between the United States and the United Kingdom, the undersigned applicant respectfully submits this Request.

## INTRODUCTION

This Request seeks evidence for use in the above-named proceeding pending before this Court, which alleges claims arising under the Securities Investor Protection Act of 1970, the United States Bankruptcy Code, and the New York Debtor and Creditor Law.  The purpose of this Request is to obtain testimonial evidence from Brian Pettitt for use as evidence in a trial of this proceeding in this Court.  The Court has not yet made a determination of the merits of the Trustee's claims and allegations asserted in this action, which are set forth below.

## THE PARTIES AND THEIR REPRESENTATIVES

The applicable parties and their representatives are as follows:

(a) The Plaintiff is Mr. Irving H. Picard, as trustee ("Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), substantively consolidated with the estate of Bernard L.

3

Madoff.  The Trustee is represented in this action by Baker & Hostetler LLP, 45 Rockefeller

Plaza, New York, New York 10111, United States of America.

(b) The defendants in this action include: Alpha Prime Fund Limited ("Alpha Prime"),

represented in this action by DuffyAmedeo LLC, 275 7th Avenue, New York, New York 10001;

HSBC Bank plc, and HSBC Bank USA, N.A, HSBC Securities Services (Luxembourg), S.A.,

HSBC Bank Bermuda Limited, HSBC Institutional Trust Services (Bermuda) Limited, and

HSBC Securities Services (Bermuda) Limited, collectively the "HSBC Defendants," represented

by Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006; and BA

Worldwide Fund Management Ltd. ("BA Worldwide"), represented by Braun, Hagey & Borden

LLP, 7 Times Square, 27th Floor, New York, NY 10036-6524.

 **NATURE AND PURPOSE OF THE PROCEEDINGS AND SUMMARY OF THE FACTS**

**1.      Nature of the Proceedings**

This adversary proceeding arises from the massive Ponzi scheme orchestrated by Bernard

L. Madoff ("Madoff").  Madoff was the sole owner, founder, chairman, and chief executive

officer of BLMIS.  Through BLMIS, Madoff received billions of dollars in investments from

customers and generated account statements purportedly showing that securities were purchased

and sold on behalf of these customers.  Although Madoff seemingly produced consistent

investment returns for his customers, no securities were purchased or sold on any customer's

behalf.  It was a Ponzi scheme: Madoff satisfied his customers' redemption requests with the

deposits of other customers.  This scheme continued until December 2008, when the requests for

withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the

Ponzi scheme.

On December 11, 2008, Madoff was arrested by federal agents for his violations of

criminal securities laws, including securities fraud, investment adviser fraud, and mail and wire

fraud. In March 2009, Madoff admitted to having operated a Ponzi scheme and pleaded guilty to

all charges filed against him. In June 2009, Madoff was sentenced to 150 years in prison.

On December 15, 2008, Judge Stanton of the United States District Court for the

Southern District of New York appointed Irving H. Picard as the Trustee for the liquidation of

BLMIS pursuant to SIPA. Under SIPA, the Trustee has the general powers of a bankruptcy

trustee relating to the recovery and distribution of customer property. Pursuant to these powers,

the Trustee is responsible for recovering and distributing customer property, assessing claims

against BLMIS, and liquidating any other assets of BLMIS for the benefit of the estate and its

creditors.

As part of his statutory duty to recover customer property, the Trustee is empowered

under the United States Bankruptcy Code to bring "avoidance actions" to recover transfers of

funds made by BLMIS prior to its collapse. *See* 11 U.S.C. §§ 544, 547, 548(a)(1), 550. The

term "avoid" means to undo a transfer so that it may be returned to the BLMIS estate for

equitable distribution to BLMIS's customers. By this and some one thousand other avoidance

actions the Trustee has brought in connection with the liquidation of BLMIS, the Trustee seeks

to maximize the recovery of fraudulently transferred funds and, consequently, the ultimate

distribution to Madoff's defrauded customers, which is the purpose of this action. All sums

recovered by the Trustee are distributed to customers with approved customer claims; neither the

Trustee nor his counsel is compensated from the fund of customer property.

2. **The Trustee's Action**

In *Picard v. HSBC Bank plc, et al.,* Adv. Pro. No. 09-01364 (SMB) (Bankr. S.D.N.Y.),

the Trustee asserts various claims against Alpha Prime, the HSBC Defendants, and BA

Worldwide. The Trustee seeks to avoid and recover the initial transfers BLMIS made to Alpha

Prime. The Trustee also asserts claims to disallow, under section 502(d) of the Bankruptcy

Code, and to equitably subordinate, under sections 510(c) and 105(a) of the Bankruptcy Code, portions of Alpha Prime's customer claim.

The Trustee has also asserted claims to recover funds subsequently transferred to the HSBC Defendants and BA Worldwide. Those claims are based on both federal law and sections 273, 274, 275, 276, 276-a, 278, and 279 of New York State's Debtor and Creditor Law, which provide the Trustee with remedies similar to those provided by the Bankruptcy Code and are made applicable to bankruptcy cases under Section 544 of the Bankruptcy Code.

### 3. Summary of Facts and Allegations Pleaded by the Trustee[1]

The Trustee alleges that Alpha Prime is a BLMIS feeder fund operated by sophisticated directors and service providers. (*See, e.g.*, Trustee's Second Amended Complaint filed on September 24, 2019 (ECF No. 567) ¶¶ 2, 39, 42, 60, 65.) These directors and service providers, the Trustee contends, either knew that BLMIS was engaged in fraud or were aware of evidence strongly indicating fraud. (*Id.* ¶¶ 3, 47, 75-137.) The Trustee's complaint alleges that Alpha Prime received transfers of Customer Property, as defined by SIPA, of more than $83,000,000. (*Id.* ¶ 6.)

In the early 1990s, the Trustee's pleadings assert, Madoff turned to European investors to augment the flow of funds into his scheme. (*Id.* ¶ 38.) The Trustee also alleges that, among others, Sonja Kohn, an Austrian investment professional with personal and professional ties to Madoff, helped attract new European investors to BLMIS. (*Id.* ¶¶ 39-41.) In 1993, Kohn was hired as an advisor and consultant for Unicredit Bank Austria AG. (*Id.* ¶ 43.) In the early 1990s, Kohn and others created a variety of BLMIS feeder funds, including Primeo Fund ("Primeo"). (*Id.* ¶¶ 44, 45, 54.) Primeo's apparent success led to the establishment of a network

---

[1] The Court's summary is derived from the plaintiff's allegations in its Second Amended Complaint and do not necessarily denote the Court's views of the allegations or reflect findings by this Court. The Second Amended Complaint does not assert any claims against HSBC entities.

6

of feeder funds, by the same individuals who manged Primeo, whose sole purpose was to direct

investments into BLMIS.  Alpha Prime was one such fund.  (*Id.* ¶ 45.)  In June 2003, Alpha

Prime opened BLMIS customer account 1FR097, and began soliciting investments. *(Id.* ¶¶ 46,

60-62.)

The Trustee alleges that Primeo and its service providers delegated many of their duties

to BLMIS, concentrating in BLMIS the functions of investment adviser, custodian, and broker-

dealer responsible for initiating and executing securities trades.  (*Id.* ¶ 77.)  Primeo's directors

and service providers were, nevertheless, still responsible, according to the Trustee's pleadings,

for ensuring the integrity of the fund's investments, assessing the fund's performance, and

ensuring that BLMIS's investment strategy aligned with the fund's objectives.  (*Id.* ¶ 79.)  As

with Primeo, Alpha Prime's account opening documents allegedly gave BLMIS complete

authority to buy, sell, and trade in U.S. securities for Alpha Prime.  (*Id.* ¶ 95.)

The Trustee alleges that Alpha Prime's BLMIS customer statements were replete with

data showing Madoff s trading strategy to be impossible.  (*Id.* ¶¶ 75-137.)  These impossible

transactions, the Trustee contends, were reported on Alpha Prime's customer statements which

were provided to the fund's directors and service providers, all of whom were sophisticated

financial professionals, and were thus aware of these impossible trades.  (*Id.*).

The Trustee contends that Alpha Prime and its directors knew that, among other things:

a)  BLMIS's returns could not be replicated and appeared to be a
     product of illegal front running (*Id.* ¶¶ 141-42);

b)  BLMIS's operational structure was vulnerable to fraud because it
     subverted checks and balances (*Id*. ¶¶ 149-162);

c)  BLMIS customer statements showed impossible options trades (*Id*.
     ¶¶ 80-84, 111-180); and

d)  BLMIS customer statements showed trades outside published price
     ranges (*Id*. ¶¶ 85-89, 109-10).

**4. Alpha Prime's Alleged Relationship with HSBC and BLMIS**

The Trustee alleges that there are several nexuses between Alpha Prime, HSBC (as defined in the Definitions in the "Request for Judicial Assistance" below), and BLMIS relevant to the claims at issue in this case, of which the Trustee alleges Mr. Pettitt has personal knowledge.  As part of Alpha Prime's operations, the fund's directors appointed HSBC Bank Bermuda Limited, formerly known as The Bank of Bermuda Limited ("HSBC Bank Bermuda"), as Alpha Prime's custodian, and HSBC Securities Services (Bermuda) Ltd., formerly known as Management International (Bermuda) Ltd. ("HSSB"), as Alpha Prime's administrator.  Alpha Prime's directors appointed HSBC Securities Services (Luxembourg) S.A., formerly known as Bank of Bermuda (Luxembourg) S.A. ("HSSL"), as Alpha Prime's sub-administrator and sub-custodian.  (*See generally, id.* ¶ 70).  But BLMIS actually acted as Alpha Prime's sub-sub-custodian.  (*Id.* ¶ 77).  In addition, HSBC Bank plc provided administrative support as well as overdraft, foreign exchange, and credit facilities to various BLMIS feeder funds including Alpha Prime. (*Id.* ¶ 173).

At least one high-ranking HSBC official, Nigel Fielding, also held a seat on Alpha Prime's board of directors.  (*Id.* ¶¶ 46, 58).  Mr. Fielding was the deputy head of Global Client Services for Bank of Bermuda (Luxembourg)'s Global Fund Services Group.  After HSBC Holdings plc acquired The Bank of Bermuda Limited ("BOB") in 2004, Mr. Fielding became the Chief Administration Officer of HSBC's Alternative Fund Services group, and, eventually, the CEO of HSBC Bank Luxembourg, a position he currently holds.  (*See id.* ¶ 58).  The Trustee alleges that while Alpha Prime was operating, Mr. Fielding worked closely with Mr. Pettitt in performing various due diligence analyses of BLMIS.  (*Id.* ¶ 172).

### 5. Mr. Pettitt's Alleged Role at HSBC Bank plc

In 1992, upon HSBC Holding plc's acquisition of Midland Bank, Mr. Pettitt became an

employee of HSBC Bank plc. (*Id.*).  In 1994, Mr. Pettitt became the Head of Network

Management at HSBC Securities Services. (*Id.*)  There he remained until he retired in 2009.

Network Management was involved with the process of selecting, appointing, monitoring and

de-selecting sub-custodians for global custodians.

Many of BOB's clients were allegedly involved in alternative funds. (*Id.* ¶ 56).

Following the acquisition of BOB, the Trustee alleges that the roles of investment manager,

broker, and custodian to various BLMIS feeder funds, including Alpha Prime and Primeo,

were concentrated in certain of the HSBC entities, a potential conflict of interest, which, the

Trustee alleges, HSBC recognized. (*Id.* ¶¶ 176-77).

The Trustee contends that in fulfilling its roles as custodian and administrator of Alpha

Prime, and other BLMIS feeder funds, HSBC undertook several detailed reviews of BLMIS.

This included several visits to BLMIS by Mr. Fielding and Mr. Pettitt, and fraud and related

risk reviews HSBC Bank plc commissioned KPMG LLP ("KPMG") to perform. (*Id.* ¶¶ 150,

162, 174).  Mr. Pettitt was responsible for conducting due diligence reviews of BLMIS on

behalf of HSBC. (*Id.* ¶ 173).  Mr. Pettitt was also a direct point of contact for KPMG.  The

Trustee contends that employees of HSBC in Luxembourg and Dublin, where some of the

BLMIS feeder funds' HSBC-related administrators and custodians were located, shared

information regarding BLMIS and raised their concerns directly with Mr. Pettitt. (*Id.* ¶ 172).

The Trustee contends that Mr. Pettitt extensively discussed with HSBC employees, HSBC's

due diligence on BLMIS and its role as custodian, administrator, and credit provider for

several BLMIS feeder funds including Alpha Prime. (*Id.*).  Mr. Pettitt also was involved in the

review of, HSBC's other investments in BLMIS through HSBC's Private Banking and Global

Structured Fund Products groups, and he discussed those reviews with HSBC and KPMG employees.

The Trustee believes that Mr. Pettitt has detailed personal knowledge of the due diligence HSBC performed on BLMIS, which the Trustee alleges was performed on behalf of its customers, including Alpha Prime.  Such due diligence is relevant to these proceedings because the Trustee contends that, as Alpha Prime's agent, HSBC acquired knowledge that can be imputed to Alpha Prime or that it may have passed on to Alpha Prime.  That knowledge includes knowledge that Mr. Pettit may have exchanged through his communications with Mr. Fielding, who was not only a senior HSBC employee, but an Alpha Prime director.  Mr. Pettitt also testified on behalf of HSBC in other BLMIS-related proceedings, including *Primeo Fund (In Official Liquidation) v. Bank of Bermuda (Cayman) Limited and HSBC Securities Services (Luxembourg) SA*, Cause No. FSD 30 of 2013 (AJJ), an action in the Cayman Islands, and *Thema International Fund Plc v. HSBC Institutional Trust Services (Ireland) Limited et al.*, Record No.: 2008/10983P, an action in Ireland.  Mr. Pettitt was asked to provide testimony in those cases because of his involvement in relevant matters through the course of his employment at HSBC Bank plc.

**REQUEST FOR JUDICIAL ASSISTANCE**

The within Request includes a request for the examination under oath of Mr. Pettitt, who the Trustee understands is a resident of and is located in the County of Essex, England.

**Request for Testimonial Evidence and Subject Matter List for Mr. Pettitt**

**Definitions**

"Madoff" means Bernard L. Madoff.

"BLMIS" means Bernard L. Madoff Investment Securities LLC, including, without limitation, its agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, and affiliates.

"Alpha Prime" means Alpha Prime Fund Ltd, including, without limitation, its employees and directors.

"BOB" means The Bank of Bermuda Limited, including, without limitation, its employees and affiliates.

"HSBC PLC" means HSBC Bank plc.

"HSBC" means the banking and financial services organization and its global network of organizations referred to as the HSBC Group, including, without limitation, HSBC Bank plc, HSBC Bank USA, N.A., HSBC USA Inc., HSBC Securities Services (Bermuda) Limited, HSBC Securities Services (Luxembourg) S.A., HSBC Bank Bermuda Limited, HSBC Institutional Trust Services (Bermuda) Limited, HSBC Fund Services (Luxembourg) S.A., HSBC Institutional Trust Services (Ireland) Limited, HSBC Securities Services (Ireland) Limited, HSBC Private Bank (Suisse) S.A., and HSBC Bank (Cayman) Limited as well as any predecessors.

"BLMIS Feeder Fund" means a fund that placed investments into BLMIS either directly or indirectly, including, without limitation, Alpha Prime, Herald Fund SPC, Herald (Lux) SICAV, Hermes International Fund Limited, Lagoon Investment Limited, Lagoon Investment Trust, Primeo Fund SPC, Senator Fund SPC, Thema Fund Limited, Thema International plc, Thema Wise Investments Ltd., Defender Limited, Optimal Arbitrage Limited, Landmark Investment Fund Ireland, Kingate Euro Fund Ltd., Kingate Global Fund, Ltd., Square One Limited, Fairfield Sentry Limited, Fairfield Sigma Limited, Greenwich Sentry L.P., Harley International (Cayman) Ltd., Rye Select Broad Market Fund, L.P., and Rye Select Broad Market Portfolio Limited.

"2005 Due Diligence Review" means the onsite review conducted by HSBC at BLMIS on April 1, 2005.

"2007 Due Diligence Review" means the onsite review conducted by HSBC at BLMIS on February 9, 2007.

"2008 Due Diligence Review" means the onsite review conducted by HSBC at BLMIS on February 21, 2008.


**Subject Matter of Examination**

**Introductory Questions**

Nature

These questions will seek confirmation of relevant matters including Mr. Pettitt's background, qualifications and experience, the circumstances under which he learned of this Request, and the preparation of his response, including any communications with third parties. Matters to be addressed in questioning are likely to include:

- Details of Mr. Pettitt's education and professional qualifications;
- Mr. Pettitt's employment history to date; and
- Whether Mr. Pettitt has discussed this Request with anyone, and if so, details of the substance and circumstances of any relevant communications to the extent that they are not protected by legal privilege.

Purpose

This information will go to Mr. Pettitt's competence and credibility (*i.e.*, the weight the United States Bankruptcy Court for the Southern District of New York should give Mr. Pettitt's evidence).

**Mr. Pettitt's Employment at HSBC PLC**

Nature

These questions will cover Mr. Pettitt's roles and responsibilities at HSBC PLC, details of those who reported to him and to whom he reported, HSBC's organizational structure and behaviour, and the nature of the work conducted by various staff and divisions at HSBC. Matters to be addressed in questioning are likely to include:

- Mr. Pettitt's responsibilities at HSBC PLC, including his duties as Head of Network Management for HSBC Securities Services;
- The reporting structure at HSBC PLC and the role and responsibilities of those who reported to him;
- The composition and structure of HSBC, and the interactions of the various groups, divisions and entities, including those that invested in or acted on behalf of the BLMIS Feeder Funds; and
- The acquisition and transition of BOB into HSBC PLC, including the evaluation of processes and duties applicable to custodian, administration, and other services of BLMIS Feeders Funds, including Alpha Prime.

Purpose

This information will establish Mr. Pettitt's role at HSBC PLC, confirm his knowledge of, and involvement in HSBC's operations and activities, and provide the Trustee with information concerning HSBC responsibilities as Alpha Prime's administrator and custodian, which is relevant to various of the allegations concerning Alpha Prime in the Second Amended Complaint.

**HSBC's Review and Due Diligence**

Nature

These questions seek to confirm Mr. Pettitt's knowledge of any reviews and due diligence performed by HSBC in its role as investor, custodian, administrator, and provider of overdraft, foreign exchange, and credit facilities to funds. Matters to be addressed in questioning are likely to include:

- HSBC's procedures for conducting due diligence when providing overdraft, foreign exchange, and credit facilities to a fund;
- HSBC's procedures for conducting due diligence when acting as a custodian;
- HSBC's procedures for conducting due diligence on sub-custodians;
- HSBC's procedures for conducting due diligence when acting as an administrator;
- HSBC's procedures for conducting due diligence when investing in a fund;
- HSBC's sharing of information between different divisions and entities about funds;
- Mr. Pettitt's role in performing due diligence at HSBC; and
- HSBC's methods of documenting the due diligence it performed.

Purpose

The Trustee's Second Amended Complaint seeks to avoid and recover fraudulent transfers made to Alpha Prime and to equitably subordinate or disallow portions of Alpha Prime's claims against the customer property estate. To do so, the Trustee must demonstrate that Alpha Prime had actual knowledge of, or was wilfully blind, to BLMIS's fraud. The Trustee contends that as Alpha Prime's agent, HSBC's knowledge is imputed to Alpha Prime. Accordingly, Mr. Pettitt's testimony on HSBC's review and due diligence procedures and protocols will be used as evidence at trial to demonstrate HSBC's capabilities and the methods used to perform reviews and due diligence, which the Trustee contends was performed on behalf of its customers, such as Alpha Prime.

**HSBC's Relationship with BLMIS and the BLMIS Feeder Funds**

Nature

These questions seek to confirm Mr. Pettitt's knowledge of HSBC's role as investor, custodian, administrator, and provider of overdraft, foreign exchange, and credit facilities for funds invested with BLMIS, in particular Alpha Prime. Matters to be addressed in questioning are likely to include:

- The agreements and obligations in place between HSBC, the BLMIS Feeder Funds, and BLMIS;
- The appointment of BLMIS as sub-custodian for the BLMIS Feeder Funds, including Alpha Prime;
- Any review and analysis of BLMIS performed prior to HSBC's appointment as custodian or administrator;
- Any review and analysis of BLMIS or the BLMIS Feeder Funds performed in light of

13

HSBC's providing overdraft, foreign exchange, and credit facilities to the BLMIS
Feeder Funds, including Alpha Prime;

- Any direct or indirect investments relating to the BLMIS Feeder Funds involving
HSBC including any review and analysis of those BLMIS Feeder Funds and/or
BLMIS; and

- Mr. Pettitt's communications or analysis regarding the BLMIS Feeder Funds,
including communications with Alpha Prime.

Purpose

The Trustee's Second Amended Complaint seeks to avoid and recover fraudulent
transfers made to Alpha Prime and to equitably subordinate or disallow portions of Alpha
Prime's claims against the customer property estate. To do so, the Trustee must demonstrate that
Alpha Prime had actual knowledge of, or was wilfully blind, to BLMIS's fraud. HSBC acted in
various roles for the BLMIS Feeder Funds including being a custodian, administrator, and
providing overdraft, foreign exchange, and credit facilities, and as a result, the Trustee alleges,
HSBC often performed analyses on behalf of the BLMIS Feeder Funds, including Alpha Prime.
In addition to acting as a service provider, HSBC also invested in BLMIS through HSBC's
Private Banking and Global Structured Fund Products groups. Accordingly, Mr. Pettitt's
testimony as to these relationships, obligations, and HSBC's dealings with BLMIS, Alpha Prime,
and the other feeder funds will be used as evidence at trial to demonstrate HSBC's alleged
knowledge, the role BLMIS played for Alpha Prime and other feeder funds, and HSBC's alleged
function in that capacity. The Trustee contends that because HSBC was Alpha Prime's agent,
and their personnel overlapped, HSBC's knowledge is imputable to Alpha Prime.

## HSBC's Preparations for the 2005, 2007, and 2008 Due Diligence Reviews

Nature

These questions seek to confirm Mr. Pettitt's knowledge of HSBC's three separate due
diligence reviews of BLMIS led by Mr. Pettitt in 2005, 2007, and 2008 on behalf of HSBC's
customers, including Alpha Prime. Matters to be addressed in questioning are likely to include:

- HSBC's reasoning for conducting each of the 2005, 2007, and 2008 Due Diligence
Reviews, including the decision to conduct an onsite visit;

- Mr. Pettitt's meetings and discussions with HSBC employees, including Mr. Fielding,
in advance of each of his visits to BLMIS;

- Materials Mr. Pettitt reviewed or prepared in advance of each of the 2005, 2007, and
2008 Due Diligence Reviews;

- Internal meetings held to prepare for each of the 2005, 2007, and 2008 Due Diligence
Reviews;

- Concerns raised by investors in advance of each of the 2005, 2007, and 2008 Due
Diligence Reviews;

14

- Communications with BLMIS prior to the 2005, 2007, and 2008 Due Diligence Reviews; and
- Communications with Alpha Prime, its principals, or its employees prior to the 2005, 2007, and 2008 Due Diligence Reviews.

### Purpose

The Trustee's Second Amended Complaint seeks to avoid and recover fraudulent transfers made to Alpha Prime and to equitably subordinate or disallow Alpha Prime's 502(h) and net equity claims. To do so, the Trustee must demonstrate that Alpha Prime had actual knowledge of, or was wilfully blind, to BLMIS's fraud. HSBC acted in various roles for the BLMIS Feeder Funds including being a custodian, administrator, and providing overdraft, foreign exchange, and credit facilities, and as a result, the Trustee alleges, HSBC often performed analyses on behalf of the BLMIS Feeder Funds, including Alpha Prime. In addition to acting as a service provider, HSBC also invested in BLMIS through HSBC's Private Banking and Global Structured Fund Products groups. Accordingly, Mr. Pettitt's testimony on his preparations to review and perform due diligence on BLMIS, which the Trustee alleges was performed on behalf of HSBC's customers, including Alpha Prime, will be used as evidence at trial to demonstrate the alleged knowledge gained by HSBC in its various roles for Alpha Prime and with other BLMIS Feeder Funds. Any knowledge Mr. Pettitt passed on to Alpha Prime will be relevant to the Trustee's claims in this matter. In addition, the Trustee contends that because HSBC was Alpha Prime's agent, and their personnel overlapped, HSBC's knowledge is imputable to Alpha Prime.

## HSBC's 2005, 2007, and 2008 Due Diligence Reviews and Follow-Up

### Nature

These questions seek to confirm Mr. Pettitt's knowledge of the 2005, 2007, and 2008 Due Diligence Reviews conducted on behalf of HSBC's customers, including Alpha Prime. Matters to be addressed in questioning are likely to include:

- The information acquired by Mr. Pettitt during his visits to BLMIS, including Mr. Pettitt's ability to access BLMIS's back office;
- Communications with BLMIS employees during his visits, including with Madoff;
- Materials reviewed during and received after his visits to BLMIS;
- Internal HSBC communications and meetings about the 2005, 2007, and 2008 Due Diligence Reviews;
- Due diligence and analysis on BLMIS or any actions performed following the 2005, 2007, and 2008 Due Diligence Reviews;
- Reports and documentation prepared summarizing the 2005, 2007, and 2008 Due Diligence Reviews including any concerns raised or conclusions reached;
- Communications with Alpha Prime or its principals or employees after the 2005, 2007, and 2008 Due Diligence Reviews about those reviews; and
- Additional due diligence or monitoring of investments performed as a result of the 2005, 2007, and 2008 Due Diligence Reviews.

15

Purpose

The Trustee's Second Amended Complaint seeks to avoid and recover fraudulent transfers made to Alpha Prime and to equitably subordinate or disallow Alpha Prime's 502(h) and net equity claims. To do so, the Trustee must demonstrate that Alpha Prime had actual knowledge of, or was wilfully blind, to BLMIS's fraud. HSBC acted in various roles for the BLMIS Feeder Funds including being a custodian, administrator, and providing overdraft, foreign exchange, and credit facilities, and as a result, the Trustee alleges, often performed analyses on behalf of the BLMIS Feeder Funds, including Alpha Prime. In addition to acting as a service provider, HSBC also invested in BLMIS through HSBC's Private Banking and Global Structured Fund Products groups. Accordingly, Mr. Pettitt's testimony on the 2005 Due Diligence Review, 2007 Due Diligence Review, and 2008 Due Diligence Review of BLMIS, which the Trustee alleges was performed on behalf of HSBC and HSBC's customers, including Alpha Prime, and HSBC's resulting reactions, will be used as evidence at trial to demonstrate the alleged knowledge gained by HSBC in its various roles for Alpha Prime and with other BLMIS Feeder Funds. Any knowledge Mr. Pettitt or HSBC passed on to Alpha Prime will be relevant to the Trustee's claims in this matter. In addition, the Trustee contends that because HSBC was Alpha Prime's agent, and their personnel overlapped, HSBC's knowledge is imputable to Alpha Prime.

## HSBC's Engagement of KPMG to Review BLMIS in 2005 and 2008

Nature

These questions seek to confirm Mr. Pettitt's knowledge of HSBC PLC's engagement of KPMG to perform reviews of BLMIS in 2005 and 2008, which the Trustee alleges was performed on behalf of its customers, including Alpha Prime. Matters to be addressed in questioning are likely to include:

- Mr. Pettitt's and HSBC's communications with KPMG about each of HSBC PLC's engagements of KPMG;
- Mr. Pettitt's and HSBC's review of materials prepared by KPMG in advance of each of KPMG's 2005 and 2008 reviews of BLMIS;
- Mr. Pettitt's knowledge and overall role with respect to each of the KPMG engagements;
- Mr. Pettitt's and HSBC's discussions, communications, and actions taken regarding each of KPMG's reports on its reviews of BLMIS, including any drafts;
- Mr. Pettitt's and HSBC's communications with KPMG about each of its 2005 and 2008 reviews and any written communications, reports, or summaries; and
- Communications, if any, with Alpha Prime prior to or after each of the 2005 and 2008 reviews of BLMIS conducted by KPMG.

Purpose

The Trustee's Second Amended Complaint seeks to avoid and recover fraudulent transfers made to Alpha Prime and to equitably subordinate or disallow Alpha Prime's 502(h) and net equity claims. To do so, the Trustee must demonstrate that Alpha Prime had actual knowledge of, or was wilfully blind, to BLMIS's fraud. HSBC acted in various roles for the BLMIS Feeder Funds including being a custodian, administrator, and providing overdraft, foreign exchange, and credit facilities, and as a result, often performed analyses on behalf of the BLMIS Feeder Funds, including Alpha Prime. In addition to acting as a service provider, HSBC also invested in BLMIS through HSBC's Private Banking and Global Structured Fund Products groups. Accordingly, Mr. Pettitt's testimony on his role in the engagement of KPMG to conduct two separate reviews of BLMIS on behalf of HSBC and HSBC's customers, including Alpha Prime, as well as Mr. Pettitt's and HSBC's coordination with KPMG, and their review and reaction to KPMG's report, will be used as evidence at trial to demonstrate the knowledge gained by HSBC in its various roles for Alpha Prime and with other BLMIS Feeder Funds. Any knowledge Mr. Pettitt or HSBC passed on to Alpha Prime will be relevant to the Trustee's claims in this matter. In addition, the Trustee contends that because HSBC was Alpha Prime's agent, and their personnel overlapped, HSBC's knowledge is imputable to Alpha Prime.

## COSTS

All fees and costs incurred in the execution of this Request shall be borne by Plaintiff.

## CONCLUSION

This Court expresses its appreciation for this assistance and states that the courts of the

United States are authorized by statute, section 1782 of Title 28 of the United States Code, to

extend similar assistance to the tribunals of the United Kingdom and shall be ready and willing

to provide reciprocal assistance in a similar case when required.

The Court extends to the judicial authorities of the United Kingdom the assurances of

the highest consideration.

Dated: _____            _____

New York, New York                        The Honorable Stuart M. Bernstein
                                          United States Bankruptcy Judge

17