**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04390 (CGM) |
| Plaintiff, | |
| v. | |
| MICHAEL MANN, MERYL MANN and BAM L.P., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF LISA COLLURA**

Defendants Michael Mann, Meryl Mann and BAM L.P. (the "Defendants") hereby move this Court to exclude the report and testimony of Lisa Collura offered by Irving Picard, as Trustee (the "Trustee") of Bernard L. Madoff Investment Securities LLC ("BLMIS") on the grounds, as set forth below, that the report and testimony are irrelevant to the primary issue at trial. Indeed, that issue--the identity of the entity that made the transfers to the Defendants--does not require the technical or specialized knowledge of Ms. Collura (or any expert) for resolution. In support the motion, the Defendants respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Lisa Collura's report, dated June 12, 2015 and titled "Proof of Transfers to the Mann Defendants" (the "Report"), addresses limited issues.[1] Ms. Collura was tasked with reconciling[2] the cash deposits and withdrawals reflected on the Defendants' customer statements with the Chase bank accounts, customer communications and other documents evidencing the transactions, and then reconciling those withdrawals with subsequent deposits of the funds in the respective Mann and BAM bank accounts.

2. The purpose of her report was to prove the date and amount of transactions listed on the exhibit to the Trustee's complaint against the Defendants, as well as the Defendants' receipt of the withdrawn funds. With the exception of two cash deposits, Ms. Collura reconciled the deposits and withdrawals related to the Defendants. However, the fact of the transfers to Defendants and the results of the Trustee's cash in/cash out calculation, which her report substantiates, is not a material fact at issue in this adversary proceeding. The parties have stipulated to the accuracy of the transactions. The primary issue for trial is not the fact of the transfers but rather, the actual ownership of the transferred funds --which was not the subject of Ms. Collura's investigation or determination.

3. Furthermore, the determination of the source of the payments or ownership of the Chase accounts is not a matter that requires the technical or specialized knowledge of a forensic accountant or the testimony of Ms. Collura, who admittedly has no expertise is the securities or corporate issues involved or personal knowledge of the relevant factual matters.

---

[1] A true and correct copy of the Report is annexed to the Declaration of Arthur H. Ruegger (hereinafter, the "Ruegger Declaration") filed simultaneously herewith as Exhibit A

[2] Ms. Collura defines the term "reconcile" to indicate where she has matched, agreed and/or determined consistency between cash deposits and withdrawals on the customer statement to information or data from another source. See Report ¶8

2

4.      The evidence (SEC filings, bank records, trading accounts, employee testimony) will establish that in January 2001 Madoff transferred only his market making and proprietary trading businesses, which were run by his sons and his brother, to the newly formed limited liability company.  He kept his entire investment advisory business, including customer accounts, and bank and trading accounts in the sole proprietorship in his own name or his trade name.  This restructuring of his business afforded a degree of protection to his sons, gave him a means to stay below the radar of the regulators, and provided a legitimate front to deceive customers.  Because Madoff never transferred the investment advisory business to the LLC, the transfers were not property of the Debtor, BLMIS, or an interest of the Debtor in that property.  Thus, the transfers were not made by the Debtor.

5.      However, Ms. Collura assumes, without inquiry, that the transfers she has traced came from BLMIS.  She does not address the fact that the bank statements and checks of both the 703 and 509 Accounts are all in the name of Bernard L. Madoff or the trade name of his sole proprietorship, Bernard L. Madoff Investment Securities.  She does not delve into the business restructuring in January 2001 or any of the testimony with respect to the conduct of the businesses thereafter.  As a result her testimony does not assist the Trustee in meeting his threshold burden of proving that the transfers were transfers of an interest of the debtor in property as required under section 548(a)(1)(A).

6.      A trial court has broad discretion to determine the relevance of evidence and to exclude irrelevant information.  *U.S. v. Gupta*, 747 F.3d 111, 137 (2d Cir. 2014); *U.S. v. Scully*, 170 F. Supp. 3d 439 (S.D.N.Y. 2016). Fed. R. Evid. 402 prohibits the admission of irrelevant evidence in order to ensure that nothing is received into evidence that is not probative of some matter to be proved.  A motion *in limine* is intended to limit interruptions and lengthy arguments

3

at trial by enabling the court to determine the admissibility of evidence in advance of the trial. *Spizz v. Eluz (In re Ampal-American Israel Corp.)*, Adv. Proc. No. 14-02110 2020 WL 2529337 (SMB), at *6-7 (Bankr. S.D.N.Y., May 14, 2020) (excluding an expert report on several grounds). Under the these standards, it is both appropriate and necessary to grant the Defendants' motion and exclude the Report and related testimony.

**A.    STATUS OF THE CASE**

7.    A brief recap of the history of the case explains, in part, why this issue of the ultimate ownership of the funds has been overlooked for so long. The parties, as shown below, have focused on complex legal issues, rather than on challenging the Trustee's repeated recitation with respect to the transferor and the source of the transfers.

8.    This adversary proceeding is one of more than 900 virtually identical lawsuits brought by the Trustee against customers of Bernard L. Madoff's ("Madoff") investment advisory business to recover withdrawals they made from their brokerage account without knowledge of any fraud.[3] From the outset of the litigation, there were legitimate disputes regarding the Trustee's claims against the innocent customers, particularly with respect to the application to these cases of section 546(e) of the Bankruptcy Code, *Stern v. Marshall*, 564 U.S.462 (2011), and the "value" defense under section 548(c) based on federal and state securities law, among other issues. On or about July 19, 2011, the Defendants, along with hundreds of similarly situated defendants, successfully moved to withdraw the reference to the Bankruptcy Court pursuant to section 157 of the Bankruptcy Code.[4]

---

[3] This adversary proceeding, filed on November 12, 2010 and amended on January 25,2012,involves two separate customer accounts: a personal account held by Michael and Meryl Mann as Joint Tenants and an account of limited partnership, BAM L.P. Michael Mann is the general partner of BAM L.P.

[4] See 11 cv 04936 (JSR) [ECF. 17] Motion to Withdraw Reference granted, November 29, 2011.

4

9.      On April 30, 2012, District Court Judge Rakoff affirmed the application of section 546(e) to the cases and dismissed the Trustee's claims to avoid transfers under New York Debtor & Creditor law, and sections 544, 547 and 548 (a)(1)(B) of the Bankruptcy Code, leaving the Trustee with a single claim to avoid and recover transfers within two years of the filing of the BLMIS case under sections 548(a)(1) and 550 of the Bankruptcy Code. *Picard v.Greiff*, 476 B.R 715 (S.D.N.Y. 2012). The decision was affirmed by the Court of Appeals for the Second Circuit in *Picard v. Ida Fishman Rev. Trust*, 773 F.3d 411 (2d Cir. 2104). In that decision, the Second Circuit rejected the Trustee's effort to import a Ponzi scheme exception to the section 546(e) safe harbor and found that the withdrawal payments to customers were made in connection with a "securities contract" within the meaning of the statute, notwithstanding the fact that the trades had not occurred. However, the substantial limitation on the Trustee's avoidance powers was not finally resolved until June 24, 2015 when the Supreme Court rejected the Trustee's and SIPC's petitions for certiorari. U.S. Supreme Court Nos. 14-1128 and 14-1129.[5]

10.     Before the Second Circuit ruling, Judge Rakoff denied the defendants' omnibus motion to dismiss the complaints on the ground that the withdrawal payments to them satisfied an antecedent debt owed by the broker and therefore, constituted "value" within the meaning of section 548(d)(2)(A) and 548(c) of the Bankruptcy Code. *Sec. Invest. Prot. Corp. v. BLMIS,* 499 B.R. 416 (S.D.N.Y.2013) (the "Antecedent Debt Decision"). The Bankruptcy Court has rejected the section 548(c) defense in four adversary proceedings, including this one, on summary judgment and in one trial based on the Antecedent Debt Decision.[6] However, the issue has not been finally

---

[5] Except for the intentional fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(A), the parties stipulated to the dismissal with prejudice of all the Trustee's avoidance claims, including his claims to avoid obligations added in the 2012 amendment, and the dismissal without prejudice of claims to recover from subsequent transferees.

[6] See *Picard v. Nelson*, 610 B.R. 197, 236 (Bankr. S.D.N.Y. 2019); *Picard v. BAM L.P.* (*In re BLMIS*), 608 B.R. 165, 180–81 (Bankr. S.D.N.Y. 2019); *Picard v. Goldenberg*, No. 10-04946 (SMB), 2018 WL 3078149, at *4 (Bankr. S.D.N.Y. June 19, 2018); *Picard v. Lowrey (In re BLMIS)*, Nos. 10–04387, 10–04488, 10–04350, 10–05110

5

determined. The value defense in *Picard v.Lowrey* is currently under review by the Second Circuit. See *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Gettinger)*, No. 19-429. The Defendants in this case have adopted the *Lowrey* position that they had enforceable securities contracts that gave rise to the payments. As shown by statements submitted in this adversary proceeding, each withdrawal payment satisfied unavoidable obligations reflected on the customer statements that were owed by the broker.

11. In addition to the 548(c) defense, the Defendants in this case, as well as other defendants have litigated issues related to the method(s) for calculating claims and transfer liability, the right to a jury trial and the nature of the fraud, among other issues.

12. On September 11, 2019, the Bankruptcy Court granted in part the Trustee's motion for summary judgment in this case. Consistent with its prior decisions discussed above, the Court rejected the Defendants' defense under section 548(c). *Picard v. BAM L.P,* 608 B.R. at 180. Furthermore, as the Court noted, the amounts and dates of the transfers, which are the subject of the Report, were stipulated facts. *Id*. at 176 ("The parties have stipulated to the amount of the deposits into and withdrawals from their respective Accounts, and to the amount of the transfers made during the Two-Year Period.") The Court also determined that the Trustee was entitled to rely on the Ponzi scheme presumption and thereby demonstrated that the Two-Year Transfers were made with the actual intent to hinder, delay or defraud creditors within the meaning of 11 U.S.C. § 548(a)(1)(A). *Id*. at 176. However, the Trustee failed to establish a key element of a fraudulent transfer claim under section 548(a)(1)(A) that the transfers were "transfers of the Debtor's interest

---

(SMB), 2018 WL 1442312, at *8 (SMB) (Bankr. S.D.N.Y. Mar. 26, 2018); *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *10–11 (Bankr. S.D.N.Y. April 25, 2016).

6

in property." *Id.* at 177 ("The ownership of the funds used to pay the Two-Year Transfers is a disputed issue of fact."). That is the issue for trial.

**B.      THE COLLURA REPORT IS IRRELEVANT TO THE ISSUES FOR TRIAL**

13.      The Report establishes that transfers occurred, but not the source of the transfers. According to the Report, Ms. Collura and her team were tasked with determining (a) whether the cash deposits and withdrawal transactions as reflected on the customer statements for all customers reconcile to the bank accounts; (b) whether the cash deposits and withdrawal transactions on the Mann Defendants' customer accounts reconciled to the available documentation; (c) whether the cash withdrawals reflected on the customer statements can be traced to the Defendants' own bank accounts; and (d) whether the team could reconcile payments made to a custodian of an account that is no longer a subject of the Trustee's complaint. See Report ¶7.

14.      Ms. Collura's investigation targeted the above issues. The Report focused primarily on three bank accounts, which Ms. Collura determined were used for customer deposits and withdrawals: JPMorgan account 140081703 (the "703 Account"); JP Morgan account 6301428151509 (the "509 Account"), and the Bankers Trust account (the "BT Account"). See Report ¶18-19. Without examining the history of the investment advisory business, Ms. Collura and her team matched withdrawals and deposits reflected on thousands of customer statements with the available bank records and other documents.

15.      Armed with the results of the global reconciliation, Ms. Collura sought to match the transactions on the Defendants' customer statement with bank records and other documentation. Ms. Collura reconciled all but two cash deposits, which are not disputed by the Defendants.

16.      Ms. Collura states that if called as a witness in this trial, she intends to provide testimony regarding her analysis and conclusions consistent with the Report. (See Report ¶9).

7

17.     Ms. Collura does not address or attempt to explain the fact that the bank statements, and checks from both the 703 and 509 Account are in the name of Bernard L. Madoff or the trade name of his sole proprietorship, Bernard L. Madoff Investments Securities.  She does not investigate the restructuring of the Madoff businesses in January 2001 or any of the facts relevant to a determination of the actual source of the transfers.  Ms. Collura applies the BLMIS label to accounts without discrimination.  As a result, her testimony with respect to source of the transfers is irrelevant and should be excluded from trial.

C.    **MS. COLLURA'S PRIOR TESTIMONY DEMONSTRATES ITS LACK OF RELEVANCE TO THIS TRIAL**

18.     Ms. Collura submitted a substantially similar report in the Nelson case (Adv. Nos. 10-04377 and 10-04658 (SMB)) and after qualification as a forensic accountant, she provided testimony on direct examination consistent with that report.[7]  As she described it, her job in that case (much like her job this adversary case) "was specifically to focus on looking at the cash transactions that appeared on the customer statements of the BLMIS IA business customers and reconcile those cash transactions to available records. In addition to reconciliation, part of my [responsibility] was to trace transactions from BLMIS to other bank accounts, bank accounts held by the defendants or other account holders." Nelson Trial Transcript, May 8, 2019,, p. 182, *ll.* 17-23.  After lengthy review of the tracing and reconciliation process, Ms. Collura concluded that the cash transactions that appeared on the customer statements were accurate for each of the Nelson accounts.

19.     However, Ms. Collura was uncertain on the issue of the account ownership and unable to opine on the relevance of names on the documents or related corporate matters.  She

---

[7] Excerpts from the transcript of Ms. Collura's testimony are annexed to the accompanying Ruegger Declaration as Exhibit B.  Hereinafter referred to as the "Nelson Trial Transcript."

8

testified that the holder of the 703 and 509 accounts until August or September 2002 was Bernard L. Madoff. Thereafter, the name of the holder became Bernard L. Madoff Investment Securities. Nelson Trial Transcript, May 8, 2019, pp. 193-4. She acknowledged that the handling of the transactions in both accounts remained the same after the name change. Nelson Trial Transcript, May 8, 2019, p. 194, *ll.* 14-22. On cross examination, Ms. Collura denied that the name on a check had significance but conceded that the monthly statement would indicate the holder of the account (Nelson Trial Transcript, May 9, 2019, p. 12, *ll* .9-10). She agreed that she had never seen a J.P. Morgan Chase monthly statement which read Bernard L. Madoff Investment Securities LLC for the 509 Account. Nelson Trial Transcript, p. 13, *ll.* 17-20.

20.     Ms. Collura admitted that all of the statements and checks were in the name of Bernard L. Madoff or Bernard L. Madoff Investment Securities, but did not perceive any significance as to whether a document was held by the LLC or in the trade name. Nelson Trial Transcript, May 9, 2019, p. 24, *ll.* 11-15. Moreover, Ms. Collura could not opine on Madoff's obligation to notify banks of the formation of the LLC. Nelson Trial Transcript, May 9, 2019, p. 18, *ll.* 7-12; p. 29, *ll.* 15-21. She conceded that she did not know the difference between a trade name and a limited liability company. Nelson Trial Transcript, May 9, 2019, p. 24, *ll.* 1-5. The Trustee's counsel conceded that she was not designated to testify about corporate structures.

21.     In sum, as the Defendants in this case are not contesting the fact of the transfers and the fact of the transfers is not an issue at trial, Ms. Collura's reconciliation efforts are irrelevant. Her testimony with respect to the names on the documents is not the sort of testimony that will aid the Court in the final determination and she lacks the expertise to provide specialized testimony.

**D.     THE REPORT DOES NOT MEET THE STANDARD OF ADMISSIBILITY**

22.     Under the Federal Rules of Evidence, irrelevant testimony is inadmissible. Fed. R. Evid. 402. Evidence is relevant if (a) it has a tendency to make a fact more or less probable than

9

it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. In other words, relevant evidence must have a purpose in the trial **and** help prove or disprove a material fact at issue in the litigation. In this case, testimony from Ms. Collura with respect to undisputed facts (the transfers) will cause unnecessary delay and waste time.

23. In addition, expert testimony is not admissible under Federal Rule of Evidence 702 unless it meets the requirements of that rule, including that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. In *Spizz v. Eluz*, 2020 WL 2529337 at *3, Adv. Proc. No. 14-02110 (SMB). Judge Bernstein recently addressed the basis for precluding an expert report that fails to meet the requirements of Rule 702 as follows:

> An expert's testimony should be precluded if it is speculative, conjectural or conclusory. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (citations and internal quotation marks omitted). Moreover, expert testimony may not usurp "either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying the law to the facts before it." *Nimely,* 414 F.3d at 397; accord *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir.), cert. denied, 502 U.S. 813 (1991). Likewise, an expert should not testify about the factual background of the case because "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004); accord *Andrews v. Metro N. Commuter R.R. Co*., 882 F.2d 705, 708 (2d Cir. 1989) (an expert should not testify about "lay matters which a jury is capable of understanding and deciding without the expert's help"). "Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own." *United States v. Mejia,* 545 F.3d 179, 194 (2d Cir. 2008). For the same reasons, "[i]nferences about the intent or motive of parties lie outside the bounds of expert testimony." *Rezulin*, 309 F. Supp. 2d at 547. And in cases involving corporate governance experts, courts "overwhelmingly . . . preclude the expert from offering either legal conclusions or opinions that apply corporate governance concepts to the case's specific facts." *Brooks,* 2010 WL 291769, at *4 (footnote omitted). Nor may an expert testify in the form of a factual narrative based on evidence about which he lacks personal knowledge. *Scott v. Chipotle Mexican Grill, Inc*., 315 F.R.D. 33, 45 (S.D.N.Y. 2016)

24. The Report is irrelevant to the issue at trial. Ms. Collura is only qualified to provide a narrative of the facts of the transfers. Her testimony with respect to the account names is not expert testimony and the a issue--the extent of the corporate restructuring in 2001- is beyond both Ms. Collura's personal knowledge or her expertise.

## CONCLUSION

For the reasons stated above, the Defendants respectfully ask this Court to exclude the report and testimony of Lisa Collura.

Dated: August 27, 2020
New York, New York

**DENTONS US LLP**

By:   /s/Arthur H. Ruegger
Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Tel:   (212) 768-6700
Fax:   (212) 768-6800
Email: arthur.ruegger@dentons.com
Email: carole.neville@dentons.com

*Attorneys for Defendants*

11