**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S OPPOSITION TO MOTION TO QUASH**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ...............................................................................................................2

    I.     The Legacy Adversary Proceeding and Final Judgment .........................2

    II.    The Trustee's Post-Judgment Discovery Efforts and the Khronos Subpoena ..............................................................................................3

    III.   Khronos's Refusal to Comply with the Rule 2004 Subpoena ................4

LEGAL STANDARD........................................................................................................6

ARGUMENT .....................................................................................................................6

    I.     There Is Good Cause for the Requested Rule 2004 Discovery .............7

    II.    The "Pending Proceeding Rule" Does Not Bar the Trustee's Rule 2004 Subpoena ................................................................................................9

    III.   Khronos's Claim That It Does Not Have Responsive Documents Is an Insufficient Basis to Quash the Trustee's Rule 2004 Subpoena ...........12

    IV.   The Trustee's Rule 2004 Subpoena Is Not Unduly Burdensome .........14

CONCLUSION................................................................................................................15

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Arkin-Medo, Inc.*,
   44 B.R. 138 (Bankr. S.D.N.Y. 1984) ................................................................................... 12

*In re Bennett Funding Group, Inc.*,
   203 B.R. 24 (Bankr. N.D.N.Y. 1996) .................................................................................... 11

*In re Brooke Corp.*,
   No. 08–22786, 2013 WL 3948866 (Bankr. D. Kan. July 29, 2013) ....................................... 11

*In re Drexel Burnham Lambert Grp., Inc.*,
   123 B.R. 702 (Bankr. S.D.N.Y. 1991) ................................................................................. 6, 7

*ePlus, Inc., v. Katz (In re Metiom, Inc.)*,
   318 B.R. 263 (S.D.N.Y. 2004) ............................................................................................. 6, 7

*In re Gawker Media LLC*,
   No. 16-11700 (SMB), 2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017) ........................... 7

*In re Glitnir Banki HF*,
   No. 08-14757 (SMB), 2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) ..................... 9, 10

*In re Int'l Fibercom, Inc.*,
   283 B.R. 290 (Bankr. D. Ariz. 2002) ..................................................................................... 10

*In re Madison Williams and Co.*,
   LLC, 2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2004) .......................................................... 14

*In re Recoton Corp.*,
   307 B.R. 751 (Bankr. S.D.N.Y. 2004) ................................................................................. 6, 7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   590 B.R. 200 (Bankr. S.D.N.Y. 2018) ..................................................................................... 8

*Sec. Inv'r. Prot. Corp. v. Cont'l Cap. Inv. Serv., Inc. (In re Cont'l Cap. Inv. Serv., Inc.)*,
   Adv. Pro. No. 03-3370, 2009 WL 1604703 (Bankr. N.D. Ohio Mar. 6, 2009) ...................... 11

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
   490 F.3d 130 (2d Cir. 2007) ................................................................................................... 13

*Skyline Steel, LLC v. PilePro, LLC*,
   101 F. Supp. 3d 394 (S.D.N.Y. 2015), *on reconsideration in part on other grounds*, No. 13-CV-8171 JMF, 2015 WL 3739276 (S.D.N.Y. June 15, 2015) .................... 13

*In re Texaco, Inc.*,
    79 B.R. 551 (Bankr. S.D.N.Y. 1987) ...............................................................................14

*In re Vantage*, *Petroleum Corp.*,
    34 B.R. 650 (Bankr. E.D.N.Y. 1983) ............................................................................6, 14

*In re Washington Mut., Inc.*,
    408 B.R. 45 (Bankr. D. Del. 2009) ..................................................................................11

*Zubulake v. UBS Warburg LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003) .....................................................................................13

**Statutes**

11 U.S.C. § 550(f) ...............................................................................................................11

15 U.S.C. §§ 78aaa-*lll* .........................................................................................................1

**Rules**

Fed. R. Bankr. P. 2004(b) ......................................................................................................6

**Other Authorities**

9 Collier on Bankruptcy P 2004.01 (16th ed. 2020) ............................................................12

Plaintiff Irving H. Picard (the "Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-lll ("SIPA") and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff") respectfully submits this Opposition to the Motion to Quash the Trustee's Fed. R. Bank. P. 2004 Subpoena brought by Khronos LLC ("Khronos").

## PRELIMINARY STATEMENT

The discovery sought by the Trustee is essential to his ongoing efforts to recover customer property for the benefit of BLMIS's defrauded customers. Khronos's Motion to Quash the Trustee's July 13, 2020 Rule 2004 Subpoena (the "Khronos Subpoena") is nothing more than an attempt to thwart the Trustee's legitimate investigatory efforts to recover BLMIS assets.

Since the entry of the $79 million Final Judgment against Legacy Capital Ltd ("Legacy") in *Picard v. Legacy Capital Ltd. (In re BLMIS)*, Adv. Pro. No. 10-05286 (SMB) (Bankr. S.D.N.Y.) (the "*Legacy Adversary Proceeding*"), the Trustee sought to identify assets to satisfy that judgment. Both Legacy and Khronos—which was a service provider not only to Legacy but to a labyrinthine network of commonly owned and controlled entities that ultimately invested with BLMIS through Legacy—indicated that Legacy did not possess assets to satisfy the Final Judgment. As a result, the Trustee's only option to recover the avoided transfers is by bringing subsequent transfer actions. The time for the Trustee to do so expires in November 2020.

Through post-judgment discovery, the Trustee learned that Montpellier International Ltd. ("Montpellier") and Prince Assets LDC ("Prince")—Legacy's subsequent transferees—were liquidated and dissolved by Khronos's principals, Rafael and David Mayer. Prior to liquidation, Khronos provided financial services to Montpellier and Prince. It should be noted that the Mayers dissolved and liquidated Montpellier and Prince after the close of fact discovery in the

1

*Legacy Adversary Proceeding* with knowledge that both entities received subsequent transfers from Legacy, and never provided notice to the Trustee of these foreign liquidation proceedings. Regardless, however, because Montpellier and Prince were dissolved, the Trustee served discovery regarding the subsequent transfers they received and any further subsequent transfers of customer property on the best situated party who may have discoverable information: Khronos.

The Trustee is utilizing Rule 2004 discovery for the very purpose for which it was intended: as a pre-litigation device to discover assets and examine transactions to determine the viability of claims beneficial to the bankruptcy estate. Khronos, however, appears intent on blocking all discovery by the Trustee by urging an unduly restrictive view of Rule 2004. Khronos's Motion makes it clear that it—and all of the Mayer-related entities—would like to slither off into the darkness and not divulge to the Trustee, or the defrauded customers of BLMIS, what happened to the tens of millions of dollars in subsequent transfers Montpellier and Prince received. Khronos has not given the Court a valid reason to evade legitimate, Court-approved discovery, and its Motion to Quash should be denied.

## BACKGROUND

### I.  The Legacy Adversary Proceeding and Final Judgment

On December 6, 2010, the Trustee commenced the *Legacy Adversary Proceeding* against Legacy, Isaac Jimmy Mayer, Rafael Mayer, Khronos, Khronos Capital Research LLC, HCH Management Co. Ltd., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC. *See* Compl., *Legacy Adversary Proceeding*, ECF No. 1. By stipulation dated July 1, 2015, the Trustee amended the caption in the *Legacy Adversary Proceeding* and agreed to amend his complaint to discontinue the action

2

against all the previously named defendants except for Legacy and Khronos. (*See* Declaration of Jason S. Oliver (hereinafter, "Oliver Decl.") ¶ 3.)

The amended complaint alleged that Legacy was run by Isaac Jimmy Mayer and his son, Rafael Mayer. *See* Am. Compl. ¶ 33, *Legacy Adversary Proceeding*, ECF No. 112. In or around 2004, Legacy hired Khronos as a service provider to analyze the past and future activity in its BLMIS account. *Id.* ¶ 52. Khronos was founded and managed by the Mayers. *Id.* ¶ 31.

On July 30, 2015, Legacy and Khronos moved to dismiss the amended complaint in the *Legacy Adversary Proceeding*. (Oliver Decl. ¶ 4.) On March 14, 2016, Legacy's and Khronos's motions to dismiss were granted, resulting in a dismissal of all the Trustee's claims except his claim to recover fictitious profits transferred from BLMIS to or for the benefit of Legacy. (*Id.*) The Trustee then entered into a stipulation with Khronos whereby all claims in the *Legacy Adversary Proceeding* were dismissed against Khronos. (*Id.*)

After fact discovery in the *Legacy Adversary Proceeding* closed on January 11, 2017 (*id.* ¶ 5) and the Trustee's summary judgment motion was granted in part (*id.* ¶ 6), the Court entered Final Judgment against Legacy in the amount of $79,125,781. (*Id.* ¶ 7.) The parties then filed notices of appeal and cross-appeal. (*Id.*) The Trustee's appeal is pending in the Second Circuit and Legacy's cross-appeal is pending in the District Court.

## II. The Trustee's Post-Judgment Discovery Efforts and the Khronos Subpoena

After entry of Final Judgment, the Trustee engaged in post-judgment discovery in aid of enforcing the judgment entered against Legacy. In response to these post-judgment discovery requests, both Legacy and Khronos indicated that Legacy did not possess assets to satisfy the Final Judgment. (Oliver Decl. ¶ 8.) The Trustee was left with no choice but to consider subsequent transfer claims.

3

As part of his post-judgment investigation, the Trustee discovered that on January 16, 2017, Rafael Mayer, as Liquidator, dissolved Montpellier. (*Id.* ¶ 20.) Rafael Mayer was also identified as a director of Montpellier at the time of dissolution. (*Id.*) Notably, the date of dissolution was recorded after fact discovery closed in the *Legacy Adversary Proceeding*.[1] (*Id.* ¶¶ 5, 20.) The Trustee's investigation further uncovered that on April 15, 2019, David Mayer, as Liquidator, oversaw the voluntary dissolution of Prince. (*Id.* ¶ 21.) Despite having knowledge of the entities' receipt of subsequent transfers from Legacy, the Mayers did not advise the Trustee concerning the dissolution of either Montpellier or Prince. (*Id.* ¶¶ 20–21.)

Knowing that Khronos had been a service provider to both Montpellier and Prince and that Khronos's principals had served as liquidators, the Trustee issued the Khronos Subpoena—which comprises seventeen document requests concerning the subsequent transfers from Legacy and any further disposition of those assets—and sought Khronos's counsel's agreement to accept service. (*Id.* ¶ 9.) Khronos's counsel agreed to accept service of the Khronos Subpoena in exchange for an extension of time until July 31, 2020 to respond to the subpoena. (*Id.* ¶ 10.)

### III.    Khronos's Refusal to Comply with the Rule 2004 Subpoena

On July 29, 2020, Khronos advised the Trustee by letter that it believed the Khronos Subpoena was improper and that it intended to move to quash the subpoena unless the Trustee withdrew it. (*Id.* ¶ 11.) Khronos asserted that the Khronos Subpoena was unreasonably burdensome and duplicative of prior Rule 2004 subpoenas dated July 7, 2010 to Rafael and David Mayer (the "Mayer Subpoenas"), and that the Khronos Subpoena violated the pending proceeding rule. (*Id.*) After initially demanding a meet and confer within one day of Khronos's

---

[1] Exhibit 2 to the Oliver Decl. identifies January 9, 2017 as the date that Montpellier International was dissolved, but the date that the Bermuda Registrar of Companies recorded the Voluntary Winding-Up of Montpellier was January 16, 2017.

4

notice of intent to move to quash, Khronos agreed to participate in a telephonic meet and confer on August 3, 2020. (*Id.* ¶ 12.)

During the August 3 meet and confer, counsel for the Trustee advised Khronos that the Trustee did not intend to duplicate discovery efforts related to Mayer Subpoenas. (*Id.* ¶¶ 13–14.) Rather, the Trustee's counsel specified that the discovery sought in the Khronos Subpoena principally related to the foreign liquidations of Montpellier and Prince and the nature and extent of any further subsequent transfers of BLMIS customer property. (*Id.* ¶ 13.) At no point during the meet and confer did Khronos's counsel indicate a willingness or desire to narrow the Khronos Subpoena to the specific discovery needs addressed by the Trustee. (*Id.* ¶ 15.) Instead, Khronos's counsel questioned whether it was practical to seek to recover any subsequent transfers and used this argument as a basis to resist Rule 2004 discovery in its entirety. (*Id.*) Khronos followed-up the meet and confer with a letter dated August 6, 2020, which merely reiterated all prior objections to the Khronos Subpoena and made no suggestion or offer to limit or narrow production. (*Id.* ¶ 16.) Admitting that Montpellier received transfers from Legacy in 2007 and 2008, Khronos asserted standard subsequent transferee defenses—which belong to those transferees, not to Khronos—as a justification for refusing discovery. (*Id.*) With respect to Prince, Khronos stated that it "ceased providing services to [Prince] on December 31, 2015 and no longer has possession, custody or control over information concerning [Prince]." (*Id.*)

As Khronos did not address any of the Trustee's arguments concerning the propriety of the Khronos Subpoena, the Trustee refused Khronos's demand to withdraw the subpoena. (*Id.* ¶ 17.) The parties then conferred on a stipulated briefing schedule in connection with the instant motion to quash. *Id*

5

## LEGAL STANDARD

"Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure, and . . . can be legitimately compared to a fishing expedition." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). Indeed, an examination may relate to "any matter which may affect the administration of the debtor's estate . . . ." Fed. R. Bankr. P. 2004(b).

Courts generally apply a "good cause" test to determine whether a Rule 2004 subpoena is proper. *E.g.*, *ePlus, Inc., v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004). Good cause may be shown by demonstrating that the discovery sought "is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *Id.* (internal citations and quotation marks omitted). Provided that the Rule 2004 examination is not designed to "abuse or harass" a third party, courts will generally allow it. *See In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004). The party challenging a Rule 2004 subpoena must show how compliance would be oppressive or burdensome. *See, e.g.*, *In re Vantage*, *Petroleum Corp.*, 34 B.R. 650, 652 (Bankr. E.D.N.Y. 1983).

## ARGUMENT

Khronos's attempt to avoid its obligation to comply with the Trustee's Rule 2004 subpoena is without merit and its motion to quash should be denied. Despite Khronos's hyperbolic language, the Rule 2004 subpoena is not an "egregious abuse" (Khronos Br. ¶ 3) of the applicable discovery rules in bankruptcy proceedings. Rather, it is a court-sanctioned discovery method that is both permissible and necessary to fulfill the Trustee's statutory mandate to administer the debtor's estate and maximize recovery for the customers of BLMIS.

6

There is ample good cause for the issuance of the Khronos Subpoena and it is not duplicative of the Mayer Subpoenas. The validity of the Khronos Subpoena, moreover, is not undermined by the *Legacy Adversary Proceeding*, in which final judgment has already been entered, because there is no ongoing discovery and the entities regarding which the Trustee is seeking information were not parties to that action. Khronos's representation that it "does not have responsive documents in its possession" (Khronos Br. ¶ 18) not only strains credulity but is insufficient grounds for a motion to quash. Finally, the Trustee's requests are neither overly burdensome nor prejudicial, and are proportional to the potential claims at issue.

## I.     There Is Good Cause for the Requested Rule 2004 Discovery

The purpose of Rule 2004 discovery "is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. at 755. Good cause may be shown by demonstrating that the discovery sought "is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.*, 318 B.R. at 268 (citation and internal quotation marks omitted); *see also In re Gawker Media LLC*, No. 16-11700 (SMB), 2017 WL 2804870, at *6 (Bankr. S.D.N.Y. June 28, 2017) (allowing Rule 2004 discovery that seeks to evaluate possible claims against a party).

The Trustee plainly satisfies the good cause standard under Rule 2004. The Trustee is required to marshal the assets of the bankruptcy estate and maximize the recovery for the defrauded customers of BLMIS. *E.g.*, *In re Drexel Burnham Lambert Grp, Inc.*, 123 B.R. at 708. The Khronos Subpoena seeks information regarding the subsequent transfers Montpellier and Prince received, any further transfers those entities may have made, and the disposition of those entities' assets. In determining the viability of his subsequent transfer claims, the Trustee must

7

establish what happened to the BLMIS transfers Montpellier and Prince received. To the best of the Trustee's knowledge, Khronos, as Montpellier's and Prince's service provider, is the party best situated to provide that information because both Montpellier and Prince have been dissolved. Additionally, the Trustee has a reasonable basis to believe that Khronos is in possession of information concerning the disposition and ownership of assets stemming from the liquidation and dissolution of Montpellier and Prince because the Mayers, Khronos's principals, served as liquidators. (Oliver Decl. ¶¶ 20–21.)

While the Trustee may have access to certain documents regarding Montpellier's and Prince's redemptions from Legacy, this does not detract from the fact that the documents already in his purview are not sufficient to determine the scope of his potential claims, do not reveal the identities of the parties who may have received further subsequent transfers from Montpellier and Prince, or, indeed, what happened to the BLMIS customer property received by Montpellier and Prince. Additional investigation by means of a Rule 2004 examination is necessary for the Trustee to establish any recovery claims he may have. The cost or disruption to Khronos to produce responsive documents (which, at least with respect to Montpellier, it does not dispute it has) does not outweigh the benefits to the defrauded customers of BLMIS, who stand to share ratably in the potential recovery of up to $79 million of customer property.

Khronos contends that the Khronos Subpoena is duplicative of the Mayer Subpoenas.[2] (Khronos Br. ¶ 17.) This is nonsense. Khronos concedes in its moving papers that the Khronos Subpoena "seeks documents and information concerning the liquidation and assets of Prince

---

[2] Khronos relies on *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 590 B.R. 200, 209 (Bankr. S.D.N.Y. 2018), which did not involve a request for Rule 2004 discovery. The Court found that the expedited discovery sought there was served on the same parties and sought the same information already requested. The discovery sought here concerns information not in the Trustee's possession regarding entities that have been dissolved by people with knowledge of the Trustee's potential claims against them, without notice to the Trustee, and after the Trustee had the ability to seek discovery from them in the Legacy Adversary Proceeding.

8

Assets LDC and Montpellier International. *See* Mayer Decl. Ex. B (Current Rule 2004 Subpoena Requests Nos. 5-8, 11-17)." (Khronos Br. ¶ 18.) Montpellier and Prince were liquidated approximately seven and nine years, respectively, *after* the issuance of the Mayer Subpoenas. Requests concerning these events simply cannot be duplicative of any prior discovery requests. Khronos also admits that the only documents regarding Montpellier and Prince produced in response to the Mayer Subpoenas were "share registries indicating the dates and amounts of Prince Assets LDC's and Montpellier International's redemptions of their respective shares in Legacy." (Khronos Br. ¶ 6.) The Trustee, therefore, has not received any discovery concerning Montpellier's or Prince's assets, or the disposition of those assets, and requests seeking this information is not duplicative of any prior discovery request. To the extent Khronos is asserting that responsive documents were already produced to the Trustee by the Mayers in 2010, Khronos should respond to the Subpoena and identify the Bates ranges rather than waste this Court's limited resources on a motion to quash.

## II. The "Pending Proceeding Rule" Does Not Bar the Trustee's Rule 2004 Subpoena

Khronos further contends that, under the "pending proceeding rule," the *Legacy Adversary Proceeding* bars discovery under Rule 2004. It is, however, hard to fathom how the "very broad discovery" provided for by Rule 2004 could be curtailed by an adversary proceeding from which Khronos was dismissed with prejudice and that, by virtue of the entry of final judgment, involves no ongoing discovery whatsoever.

The purpose of the "pending proceeding rule" is to prevent parties from circumventing the procedural safeguards of the Federal Rules as discovery under Rule 2004 is broader in scope than that available in ordinary civil discovery. *See In re Glitnir Banki HF*, No. 08-14757 (SMB), 2011 WL 3652764, at *4 (Bankr. S.D.N.Y. Aug. 19, 2011). The concerns underpinning the

9

"pending proceeding rule" evaporate, however, where, as here, the proponent of the Rule 2004 discovery has no practical ability to obtain discovery under the Federal Rules. *See In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292–93 (Bankr. D. Ariz. 2002) (noting that courts typically apply the "pending proceeding rule" in cases where "discovery was in fact presently available in the other pending litigation"). Khronos was dismissed from the *Legacy Adversary Proceeding* with prejudice in March 2016; fact discovery concluded in January 2017; and final judgment was subsequently entered. At no point during the *Legacy Adversary Proceeding* could the Trustee obtain this discovery, as discovery commenced after Khronos was dismissed, and discovery concerning subsequent transfers was beyond the relevance of the remaining claims. Khronos cites no authority supporting the "pending proceeding rule's" application to proceedings in which final judgment has been entered, and its attempt to turn the "pending proceeding rule" into the "former proceeding rule" should be rejected. That the *Legacy Adversary Proceeding* is presently under appeal does not change the analysis. As this Court noted in *Glitnir Banki*, in an appeal there is no discovery being sought and "the potential for unfairness the [pending proceeding] rule seeks to prevent is not present." 2011 WL 3652764, at *5.

The Trustee, moreover, is only seeking documents, and, as this Court noted in *Glitnir Banki*, document discovery does "not implicate any rights the Movants would otherwise enjoy in civil discovery to have counsel present, object to questions or cross-examine witnesses." *Id.* None of the concerns underlying the "pending proceeding rule" are present here, and Khronos has not presented the Court with anything that justifies its application to prevent the Trustee's legitimate discovery requests.

As Khronos concedes, moreover, "[t]he Trustee did not name Montpellier International or Prince Assets LDC in the [Legacy] Adversary Proceeding (or any other proceeding)."

10

(Khronos Br. ¶ 7.) As both entities have been liquidated, Khronos and the Mayers, as its managers, are, to the best of the Trustee's knowledge, the only parties that may have relevant knowledge concerning the subsequent transfers received by Montpellier and Prince and any further transfers made by them. Nonetheless, Khronos asks this Court to undermine a basic discovery device in bankruptcy proceedings to thwart the Trustee's investigation despite no pending bankruptcy court (or other) litigation in which this discovery could be taken.

The law is clear: entities that are not parties to an adversary proceeding "should not be able to avoid examination under Fed. R. Bankr. P. 2004." *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 29 (Bankr. N.D.N.Y. 1996). The records regarding Montpellier and Prince the Trustee seeks from Khronos as a service provider are distinct from the claims in the *Legacy Adversary Proceeding* and relate solely to the Trustee's potential claims regarding the subsequent transfers under 11 U.S.C. § 550. Thus, even if the *Legacy Adversary Proceeding* were still ongoing and the Trustee was seeking an oral examination, the Trustee's Rule 2004 subpoena would still be permissible because "the requested examination [would have sought] to discover evidence unrelated to the pending proceeding." *In re Washington Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009); *see also In re Brooke Corp.*, No. 08–22786, 2013 WL 3948866, at *3 (Bankr. D. Kan. July 29, 2013) ("pending proceeding rule" did not apply to records sought for the purpose of determining whether entities were liable for allegedly avoidable transfers under alter ego theory because records requested were not relevant to liability in pending adversary proceeding); *Sec. Inv'r. Prot. Corp. v. Cont'l Cap. Inv. Serv., Inc. (In re Cont'l Cap. Inv. Serv., Inc.)*, Adv. Pro. No. 03-3370, 2009 WL 1604703 (Bankr. N.D. Ohio Mar. 6, 2009) (holding that "pending proceeding rule" did not preclude discovery of documents sought by a SIPA Trustee from a law firm that were unrelated to the adversary proceeding against that same law firm).

11

Simply put, there is no pending proceeding that allows Khronos to evade the legitimate Rule 2004 discovery sought by the Trustee in good faith to aid in the execution of his statutorily mandated duties.

### III. Khronos's Claim That It Does Not Have Responsive Documents Is an Insufficient Basis to Quash the Trustee's Rule 2004 Subpoena

Khronos further contends—without citing authority—that the Khronos Subpoena "should be quashed because Khronos does not have responsive documents in its possession." (Khronos Br. ¶ 18.) This is an improper basis upon which to move to quash a subpoena.

"When a motion to quash alleges that the party has no information to divulge, the motion should be denied. The purpose of the rule is to allow discovery to establish the scope of knowledge." 9 Collier on Bankruptcy P 2004.01 (16th ed. 2020); *see also In re Arkin-Medo, Inc.*, 44 B.R. 138, 140 (Bankr. S.D.N.Y. 1984) ("a mere claim that the party to be examined lacks knowledge of the debtor's affairs is insufficient to vacate an order of examination"). If Khronos truly no longer has possession, custody, or control of responsive documents, the proper course of action is not to waste this Court's resources by moving to quash but to respond to the subpoena and identify any potential other sources and/or custodians for such documents.

Leaving aside the impropriety of its argument, Khronos's claim to not have responsive documents rings hollow, unless it intentionally destroyed documents. Khronos represents that it "ceased providing any accounting or financial services to Prince Assets LDC on December 31, 2015, and thus is no longer no in possession of any documents or information relating to Prince Assets LDC."[3] (Khronos Br. ¶ 18.) While Khronos has not divulged who replaced it as Prince's service provider, this representation ignores the fact that David Mayer, a principal with Khronos,

---

[3] Khronos does not dispute that Khronos or the Mayers have possession of records concerning Montpellier. (*See* Fisher Decl., Ex. C.)

12

served as Prince's liquidator in 2019. (Oliver Decl. ¶ 21.) "[I]f a party has access and the practical ability to possess documents not available to the party seeking them, production may be required." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). There is no question that Khronos has the practical ability to obtain documents concerning Prince from one of its principals. Indeed, Khronos asserts that the Mayer Subpoenas—which were directed to Rafael and David Mayer as individuals—resulted in a document production from the files of Khronos. (Khronos Br. ¶ 5.) The converse applies here: Khronos has possession, custody, or control of responsive documents in the files of David Mayer and they should be produced.

As Khronos and the Mayers produced documents in 2010 to the Trustee indicating that Prince and Montpellier redeemed shares from Legacy (Khronos Br. ¶ 6), they were well aware of the likelihood that the Trustee had claims to claw back the subsequent transfers they received as a result of these redemptions. Being involved in the management of Legacy, moreover, they were also well aware that Legacy did not have the assets to satisfy a judgment against it, as they have represented to the Trustee, increasing the likelihood that the Trustee would seek to recover BLMIS customer property from Prince and Montpellier. Khronos and the Mayers, therefore, have long been under a duty to preserve evidence material to any potential recovery action against Prince and Montpellier. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (duty to preserve evidence arises "when a party should have known that the evidence may be relevant to future litigation"). "If triggered, the preservation obligation requires a litigant to do more than refrain from intentionally destroying relevant evidence; the litigant must also take affirmative steps to prevent inadvertent spoliation." *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 408 (S.D.N.Y. 2015), *on reconsideration in part on other grounds*, No. 13-CV-8171 JMF, 2015 WL 3739276 (S.D.N.Y. June 15, 2015) (internal citations and

13

quotation marks omitted). Despite this obligation, if Khronos is to be believed, it has made no effort whatsoever to preserve relevant documents with respect to Prince and, indeed, claims to no longer have possession of them. If responsive documents have not been destroyed, they should be produced.

### IV. The Trustee's Rule 2004 Subpoena Is Not Unduly Burdensome

Other than the naked assertion that the Khronos Subpoena is "burdensome" (Khronos Br. ¶ 16), Khronos does not even attempt to make the required showing that the Khronos Subpoena is "more disruptive and costly to the [producing party] than beneficial to the [requesting party]." *In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987); *see also In re Madison Williams and Co., LLC*, No., 11–15896, 2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2004) (finding movants failed to carry their burden when they identified no particular harm and offered "little more than a ritual incantation that the Rule 2004 examination will impose undue burden"). Where movants fail to show how compliance with a Rule 2004 subpoena would be oppressive or burdensome, the motion to quash must be denied. *E.g.*, *In re Vantage*, *Petroleum Corp.*, 34 B.R. at 652 (denying motion to quash where movant failed to show production would be oppressive or burdensome and connections between corporation and debtor indicated more than mere possibility that trustee would gain information concerning the debtor's financial affairs). The limited nature of the Khronos Subpoena, which focuses tightly on the subsequent transfers and any further disposition of BLMIS customer property, belies Khronos's conclusory contention.

Khronos's previous correspondence with the Trustee, moreover, does not dispute that either Khronos or the Mayers have possession of records concerning Montpellier (*see* Fisher Decl. Ex. C); Khronos just doesn't want the Trustee to see them. Documents concerning the subsequent transfers are unquestionably beneficial to the Trustee and Khronos's unarticulated "burden" cannot outweigh the Trustee's need for the documents or their potential benefit to the

14

customer property estate. Khronos's disinclination to produce the requested documents does not diminish their discoverability. Khronos's motion to quash must therefore be denied.

## CONCLUSION

For the aforementioned reasons, the Trustee respectfully requests this Court deny Khronos's Motion to Quash the Trustee's Rule 2004 subpoena.

| | |
|---|---|
| Dated: September 1, 2020<br>New York, New York | By:    */s/ Oren J. Warshavsky*<br><br>**Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: 212.589.4200<br>Facsimile: 212.589.4201<br>David J. Sheehan<br>Email: dsheehan@bakerlaw.com<br>Oren J. Warshavsky<br>Email: owarshavsky@bakerlaw.com<br>Jason S. Oliver<br>Email: joliver@bakerlaw.com<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the chapter 7 estate of Bernard L. Madoff* |