**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, NY  10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  

*Attorneys for Irving H. Picard, Trustee*  
*for the Substantively Consolidated SIPA Liquidation*  
*of Bernard L. Madoff Investment Securities LLC*  
*and the Chapter 7 Estate of Bernard L. Madoff*  

Hearing Date: September 30, 2020 at 10:00 a.m.  
Objection Deadline: September 23, 2020 at 4:00 p.m.  

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>MAGNIFY INC., et al.,<br><br>Defendants. | Adv. Pro. No. 10-05279 (SMB) |

# MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT AGREEMENT BY AND BETWEEN THE TRUSTEE AND THE DEFENDANTS IN <u>ADVERSARY PROCEEDING NO. 10-05279</u>

TO:    THE HONORABLE STUART M. BERNSTEIN
       UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–lll ("SIPA")[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in the annexed agreement (the "Settlement Agreement")[2] by and between the Trustee, on the one hand, and Magnify Inc. ("Magnify"), Strand International Investment Ltd. ("Strand"), Premero Investments Ltd. ("Premero"), The Yeshaya Horowitz Association ("YHA"), Yair Green ("Green"), and Express Enterprises Inc. ("Express") (collectively the "Defendants" and together with the Trustee, the "Parties"), on the other hand. In support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    The Trustee commenced this action against the Defendants to, among other things, avoid all fraudulent transfers made by BLMIS to the Defendants, and to recover the value

---

[1] Further citations to SIPA will omit "15 U.S.C." and refer only to the relevant sections of SIPA.
[2] The Settlement Agreement is attached hereto as Exhibit A.

2

of such transfers for the benefit of the BLMIS estate. Following two rounds of mediation and multiple settlement negotiations thereafter, the Parties reached agreement to settle this action.

2.  The Settlement Agreement represents a good faith settlement of disputes raised in this adversary proceeding between the Trustee and the Defendants, as well as the customer claims filed by the Defendants against the BLMIS estate. The overwhelming majority of the fraudulent transfers were transferred by Defendants to subsequent transferees prior to the collapse of BLMIS, and Defendant entities are insolvent or have few assets. Defendant Green, an Israeli resident and the only individual initial transferee U.S. defendant, has submitted financial disclosures demonstrating limited assets. The Settlement includes consent by each Defendant entity to a judgment for the full amount of the Initial Transfers (defined below) they received, which will assist the Trustee in his contemplated subsequent transferee action to be filed following this settlement in the U.S. In addition, the Defendants are withdrawing their objections to the Trustee's claims determinations and providing full cooperation with the Trustee going forward. Finally, the Settlement will benefit the customer property fund by approximately $3.5 million in cash.[3]

3.  The Trustee respectfully requests that the Court approve this settlement.

## BACKGROUND

4.  On December 11, 2008 (the "Filing Date"),[4] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The

---

[3] Despite the Parties' best efforts, to date the Trustee has not yet received documents in possession of YHA's former Israeli accounting firm and Bank Hapoalim, and certain finalized affidavits, as contemplated by the Settlement Agreement. The Parties anticipate these will be received or resolved in advance of the hearing on the Motion, but if necessary, the Trustee reserves the right to request an adjournment of the hearing.

[4] In this case, the Filing Date is December 11, 2008, the date on which the Securities and Exchange Commission commenced its suit against BLMIS, which resulted in the appointment of a receiver for the firm. *See* SIPA § 78lll(7)(B).

3

complaint alleged that the Debtors engaged in fraud through investment advisor activities of BLMIS.

5. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

6. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

   a. removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

   b. appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

   c. removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

7. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

## THE TRUSTEE'S CLAIMS AGAINST DEFENDANTS

8. The Defendants collectively received $153,722,071 in transfers from BLMIS (the "Initial Transfers") prior to BLMIS's collapse. The Trustee brought this action to avoid and recover those Initial Transfers, or the value thereof.

9. Magnify is a Panamanian corporation that was created as an investment vehicle for the late Albert Igoin, a French banker and longtime associate of Madoff. Ayala Nahir ("Nahir") is Magnify's chairperson and Green, an Israeli attorney, is its treasurer.

10. Magnify held two BLMIS accounts: BLMIS Account Number 1FN024, which was opened in 1983, and BLMIS Account Number 1FN025, which was opened in 1990 (the "Magnify Accounts"). A total of $12,349,371 was withdrawn from the Magnify Accounts during their lifetimes, with $2,600,000 withdrawn during the six-year period preceding the Filing Date and $700,000 withdrawn during the two-year period preceding the Filing Date (the "Two-Year Period"). The Trustee maintains that Magnify purported to generate more than $123 million in fictitious profits that were reportedly transferred to YHA's BLMIS account and much of this profit can be traced to a fictitious transaction appearing in a customer statement dated September 1990, which described a fraudulent transaction purporting to generate approximately $120 million, of which approximately $100 million was profit.

11. YHA is an Israeli association co-founded by Green and registered with the Israeli Registrar of Associations. Nahir serves as YHA's treasurer and Green serves as its legal counsel.

12. From 1989 until December 2008, YHA maintained a BLMIS account (No. 1FN037) (the "YHA Account"), which was funded entirely by inter-account transfers from the Magnify Accounts. Over this twenty-year period, of the approximately $153 million in life to date transfers to the Defendants, more than $126 million was transferred via inter-account transfers from Magnify's BLMIS Account to the YHA Account which YHA, in turn, withdrew and distributed to various research institutions throughout Israel ("Subsequent Transfers"). In other words, more than eighty percent of the total transfers at issue in this case were subsequently transferred to Israeli institutions, which are named in a separate action in Israel,

5

and, as to the largest transferees, are also potential defendants in a contemplated subsequent transferee action in the U.S.

13. Premero, a British Virgin Islands ("BVI") company, held two BLMIS accounts (Nos. 1FN073 and 1FN097) (the "Premero Accounts"), which were opened in 1995 and 1998, respectively. A total of $3,152,836 was withdrawn from the Premero Accounts during their lifetimes, with $652,836 withdrawn in years 1996-1998 and $2,500,000 withdrawn in the Two-Year Period, of which $1,468,902 consists of unrecovered principal.[5]

14. Strand, a BVI company and wholly owned subsidiary of Magnify, maintained a BLMIS account (No. 1FR051) (the "Strand Account") from 1998 until BLMIS's collapse in December 2008. A total of $11,730,019 was withdrawn from the Strand Account during its lifetime, with $4,800,000 withdrawn during the six-year period preceding the Filing Date, and $2,600,000 withdrawn during the Two-Year Period.

15. Express is a BVI company that received direct transfers, consisting entirely of fictitious profit, from BLMIS accounts held by Magnify and Strand. Specifically, Express received: (i) a $500,000 transfer of fictitious profit from Magnify Account No. 1FN024 in 1999; and (ii) a $500,000 transfer of fictitious profit from the Strand Account in 2002. Express did not have an account with BLMIS.

16. On December 6, 2010, the Trustee filed a complaint (the "Initial Complaint") commencing an adversary proceeding against individuals and entities that received and/or benefitted from avoidable transfers made from the BLMIS accounts held by Magnify (1FN024,

---

[5] On May 27, 2014, the Trustee entered into a settlement agreement with Robert H. Book and R.H. Book LLC and Premero to settle liability in connection with an initial transfer of $2.5 million from Premero Account (No. 1FN073) ("Premero I Account") made on July 23, 2008 (the "Book Settlement Agreement"). Of the $2.5 million, the Trustee alleges that $1,468,902 consisted of a return of principal deposited into the Premero I Account and $1,031,098 consisted of fictitious profits from the Ponzi scheme. Pursuant to the Book Settlement Agreement, the Trustee recovered $1,031,098 of the $2.5 million withdrawn from the Premero I Account, leaving $1,468,902 left to be recovered.

1FN025), Premero (1FN073, 1FN097), Strand (1FR051), and YHA (1FN037) (the "Defendant Accounts"). The Initial Complaint was twice amended, most recently by the Second Amended Complaint filed on September 29, 2017 (the "Second Amended Complaint").

17. In the Second Amended Complaint, the Trustee seeks to avoid and recover the Initial Transfers made from the Defendant accounts at BLMIS to Green, Magnify, Premero, Strand, YHA, and Express under Sections 544, 547, 548, 550, and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly § 78fff-2(c)(3), and applicable provisions of New York Debtor and Creditor Law sections 273-279, and N.Y. C.P.L.R. 203(g) and 213(8) (McKinney 2001). Among other claims alleged in the Second Amended Complaint, the Trustee asserts claims to disallow and equitably subordinate the customer claims filed by Magnify, Premero, Strand, and YHA.

18. On October 30, 2017, Defendants moved to dismiss the Second Amended Complaint. For the reasons explained in a written opinion, the Court denied Defendants' motion to dismiss by order dated April 25, 2018 (Docket Entry No. 166).

## THE DEFENDANTS' CLAIMS AGAINST THE BLMIS ESTATE

19. Magnify, Premero, Strand, and YHA filed customer claims (the "Customer Claims") in the SIPA proceeding for their respective BLMIS accounts.

20. By separate notices, the Trustee denied each of the Customer Claims based on his analysis of BLMIS's books and records and "net equity" calculations of crediting the total amount deposited into each account less the amounts withdrawn from each account.

21. Magnify, Premero, Strand, and YHA filed objections to the Trustee's determinations, which remain pending (the "Objections"). The objections submitted by Magnify, Strand, and YHA state that they have been rendered insolvent by reason of the losses in their respective BLMIS accounts.

7

## MEDIATION AND SETTLEMENT DISCUSSIONS

22. At various times during the pendency of this adversary proceeding, the Defendants, through their counsel, engaged in good faith discussions with the Trustee aimed at resolving the Trustee's claims. Although promoting the participants' understanding of their respective positions, those discussions were not successful in resolving the Trustee's claims. Thus, litigation continued.

23. Following this Court's April 2018 order denying Defendants' partial motion to dismiss, the Parties restarted settlement discussions and ultimately submitted the matter to mediation.

24. The Parties participated in mediation conferences on September 11 and 12, 2019. While significant progress was made, the mediation did not result in a settlement. Nonetheless, the Parties continued to engage in settlement discussions over the months that followed. The Parties were able to reach a resolution, as set forth in the Settlement Agreement, that redounds to the benefit of the Ponzi scheme victims. The settlement is the result of the mediation conferences and many good faith negotiations over the course of months.

25. The Trustee has conducted a comprehensive investigation in connection with this litigation. This investigation included, among other things: the review and analysis of the BLMIS-related transactional histories as reflected in the BLMIS account statements of Defendants; correspondence and other records and documents available to the Trustee; meetings with the Defendants' counsel; and a substantial review of third-party records and documents.

26. In addition, as part of the settlement discussions, Defendants provided the Trustee with confidential financial disclosures, affidavits, and other documents regarding Defendants' assets and liabilities (the "Financial Statements"). The Financial Statements demonstrate that Green does not have sufficient assets to satisfy the potential judgment that the Trustee could

obtain against him for total withdrawals from the Magnify and Strand Accounts or for the amount withdrawn from those accounts in the six-year period preceding the Filing Date. With respect to the entities, YHA, Magnify, Premero, Strand, and Express are insolvent or have no accessible appreciable assets and thus will not be able to satisfy judgments for the Initial Transfers they received.

27. After a thorough review of the Financial Statements and all relevant records and deliberate consideration of the costs and risks inherent in all litigation, as well as significant collectability issues that are unique to this action, the Trustee, in the exercise of his business judgment, has determined it is appropriate to reach a business resolution in this matter rather than proceed with further litigation.

28. Because YHA subsequently transferred the substantial funds it received from BLMIS to Israeli entities and has no significant assets remaining, the Trustee has determined not to seek recovery against YHA for transfers it received from the YHA Account. Rather, the Trustee will pursue recovery from entities that received Subsequent Transfers from the YHA Account. The Trustee has a pending case in Israel against recipients of the Subsequent Transfers.

29. As set forth below, under the settlement, the Defendants are providing the Trustee with information and materials which the Trustee believes will be helpful in pursuing his claims against entities that received Subsequent Transfers. The settlement allows the Trustee to focus his efforts on recovering from those entities.

**OVERVIEW OF THE AGREEMENT**

30.     The principal terms and conditions of the Settlement Agreement are generally as follows (as stated above, the Settlement Agreement is attached as Exhibit A and can be reviewed for a complete account of its terms)[6]:

- Resolution of the Trustee's claims against Defendants.

- Within five (5) business days of the Approval Order becoming final and unappealable, Defendants shall pay to the Trustee for the benefit of the fund of customer property the sum of $1,500,000 (the "Initial Payment").

- Defendants then shall pay the Trustee in installments the total sum of $800,000, by paying $100,000 by December 15, 2021, and additional $100,000 by December 15, 2022, and additional payments of $200,000 each year on December 15 for three years, commencing in year 2023 through 2025 (the "Installment Payments").

- On or before December 15, 2026, Defendants shall pay to the Trustee the sum of $1,200,000 (the "Balance Payment").

- Defendants' payment obligations will be secured by a first priority lien (or the Israeli equivalent) on unencumbered real property located in Israel, owned by Green's wife.

- Defendants agree to cooperate with the Trustee in connection with his efforts to recover customer property, as that term is defined under SIPA section 78*lll*(4), for the victims of Madoff's criminal conduct from entities that received Subsequent Transfers.

- Magnify, Premero, Strand, YHA, and Express will enter into consent judgments against them in favor of the Trustee for the respective amounts set forth in the Second Amended Complaint (totaling the entire amount of Initial Transfers sought to be avoided by the Trustee), plus prejudgment interest at 9% per annum.

- Defendants will execute stipulations acknowledging Defendants' receipt of the Initial Transfers and the distribution of Subsequent Transfers by YHA.

- Magnify, Premero, Strand, and YHA will withdraw their Objections relating to their filed claims.

---

[6] Terms not otherwise defined shall have the meaning ascribed to them in the Settlement Agreement. In the event of any inconsistency between the summary of the terms provided in this section and the terms of the Settlement Agreement, the Settlement Agreement shall prevail.

10

- The Trustee will discontinue the adversary proceeding with prejudice, subject to the terms and rights under the Settlement Agreement.

- The Trustee will release the Defendants (other than YHA) and certain others as provided for in the Settlement Agreement on the specific terms set forth in the Settlement Agreement. The release will become effective upon the Effective Date, including a final order approving the settlement, as defined in the Settlement Agreement.

- The Defendants will release the Trustee and others as provided for in the Settlement Agreement on the specific terms set forth in the Settlement Agreement. The release will become effective upon the Effective Date.

## RELIEF REQUESTED

31. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as Exhibit B approving the Settlement Agreement.

## LEGAL BASIS

32. Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

33. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W. T. Grant*

11

*Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (internal citations omitted); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

34.     In deciding whether a compromise falls within the "range of reasonableness," courts consider the following factors:

    a.  the probability of success in the litigation;

    b.  the difficulties associated with collection;

    c.  the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

    d.  the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.,* 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993)).

35.     The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be

mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

36. The Trustee's settlement with the Defendants is fair and falls well within the range of reasonableness. While the Trustee believes that he would ultimately prevail in litigation, litigating this case to judgment would be time-consuming and costly, and likely would not result in a greater result.

37. Moreover, because YHA, Magnify, Premero, Strand, and Express are insolvent or have no significant assets, future recovery against those entities is unlikely. In addition, based on Green's disclosures, had the Trustee continued litigation against Green and successfully imposed personal liability on him by piercing the corporate veil for the transfers from the Magnify and Strand Accounts, it appears unlikely that the Trustee's recovery would be substantially greater than his recovery under the Settlement Agreement, which provides for an amount in excess of the two-year transfers from the Magnify and Strand Accounts. Based on Green's disclosed assets, the Trustee's litigation recovery could conceivably be less than the amount payable under the Settlement Agreement because further litigation would deplete the assets available to pay the Trustee.

38. Additionally, through the Settlement Agreement, the Trustee is receiving collateral in the form of foreign real property held jointly with a third-party non-defendant, who has agreed to post that real property as collateral.

39. Equally, if not more importantly, the consent judgments and transfer stipulations obtained as a result of the Settlement Agreement will further the Trustee's efforts to recover the transferred customer property from the ultimate subsequent transferee recipients, which include large institutions with substantial assets. Those entities received the vast majority of the transferred funds that the Trustee seeks to recover.

13

40. The Defendants which filed claims in this action have also consented to withdraw their objections to the Trustee's determination of those claims.

41. Thus, the Settlement Agreement resolves the pending claims among the Parties and avoids the cost and delay of what could otherwise be lengthy and contentious litigation. (*See* Declaration of the Trustee in Support of the Motion attached hereto as Exhibit C). And, as discussed above, it provides for Defendants' cooperation and other benefits to which the Trustee would not be able to obtain in litigation.

## CONCLUSION

42. In sum, the Trustee submits that the Settlement Agreement should be approved to avoid lengthy, burdensome, and expensive litigation, and because it represents a fair and reasonable compromise that will greatly benefit the estate and the customers of BLMIS. Because the Settlement Agreement is well within the "range of reasonableness" and confers a benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Settlement Agreement.

## NOTICE

43. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (a) SIPC; (b) the SEC; (c) the Internal Revenue Service; (d) the United States Attorney for the Southern District of New York; and (e) Paul T. Weinstein, Esq., Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, New York 10271. Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting Notice, ECF No. 4560. The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit B granting the relief requested in the Motion.

Dated: September 4, 2020
New York, New York

By: */s/ David J. Sheehan*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Tracy L. Cole
Email: tcole@bakerlaw.com
Fernando A. Bohorquez
Email: fbohorquez@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Ganesh Krishna
Email: gkrishna@bakerlaw.com
Michelle N. Tanney
Email: mtanney@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*