# ATTACHMENT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                      Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                      Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>                      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                      Plaintiff,<br><br>v.<br><br>ESTATE OF SEYMOUR EPSTEIN,<br><br>MURIEL EPSTEIN, as beneficiary and of the Estate of Seymour Epstein and/or the Trusts created by the Last Will and Testament of Seymour Epstein, as Executor of the Estate of Seymour Epstein, and as trustee of Trusts created by the Last Will and Testament of Seymour Epstein,<br><br>HERBERT C. KANTOR, as trustee of Trusts created by the Last Will and Testament of Seymour Epstein,<br><br>RANDY EPSTEIN AUSTIN, as beneficiary of the Estate of Seymour Epstein and/or the Trusts created by the Last Will and Testament of Seymour Epstein,<br><br>ROBERT EPSTEIN, as beneficiary of the Estate of Seymour Epstein and/or the Trusts created by the Last Will and Testament of Seymour Epstein, | Adv. Pro. No. 10-04438 (SMB) |

JANE EPSTEIN, as beneficiary of the Estate of Seymour Epstein and/or the Trusts created by the Last Will and Testament of Seymour Epstein,

SUSAN EPSTEIN GROSS, as beneficiary of the Estate of Seymour Epstein and/or the Trusts created by the Last Will and Testament of Seymour Epstein, and

SHELBURNE SHIRT COMPANY, INC.,

                Defendants.

# EXPERT REPORT OF
# LISA M. COLLURA, CPA, CFE, CFF

**Proof of Transfers**
**To the Epstein Defendants**

**June 28, 2019**

# TABLE OF CONTENTS

I. PROFESSIONAL BACKGROUND ........................................................................................... 3

II. SCOPE OF ASSIGNMENT .................................................................................................... 3

III. METHODOLOGY ................................................................................................................. 5

IV. SUMMARY OF FINDINGS .................................................................................................. 6

V. RECONCILIATION OF CASH TRANSACTIONS FOR THE EPSTEIN ACCOUNTS ............................... 7
    A.    OVERVIEW    7
    B.    BLMIS BANK ACCOUNTS    7
    C.    BLMIS CUSTOMER FILES    8
    D.    DOCUMENTS PRODUCED TO THE TRUSTEE RELATED TO THE EPSTEIN ACCOUNTS    9
    E.    RESULTS OF RECONCILIATION    9

VI. TRACING CASH WITHDRAWALS FROM THE EPSTEIN ACCOUNTS ............................................. 10
    A.    OVERVIEW    10
    B.    RESULTS OF TRACING    11

VII. SIGNATURE AND RIGHT TO MODIFY ............................................................................... 12

VIII. LIST OF EXHIBITS ........................................................................................................ 13

**I. PROFESSIONAL BACKGROUND**

1.       I am a Senior Managing Director in the Forensic and Litigation Consulting practice of FTI Consulting, Inc. ("FTI"), with 25 years of experience in accounting, auditing and litigation consulting services. I specialize in providing forensic accounting and financial fraud investigative services in connection with internal investigations on behalf of trustees, boards of directors and audit committees of companies.

2.       I have extensive experience in conducting large-scale, fact-finding investigations into fraudulent financial transactions, including tracing significant flows of funds between accounts and entities. During my career at FTI, I have assisted in the investigation of several of the largest fraud cases in the United States.

3.       I am a Certified Public Accountant (CPA), a Certified Fraud Examiner (CFE), a member of the American Institute of Certified Public Accountants (AICPA), and am Certified in Financial Forensics (CFF) by the AICPA. My curriculum vitae, attached as **Exhibit 1** to this report, further describes my professional credentials, experience, and qualifications, including my testimony in the last four years.

**II. SCOPE OF ASSIGNMENT**

4.       Bernard L. Madoff Investment Securities LLC ("BLMIS") was an investment firm owned and operated by Bernard L. Madoff ("Madoff"). On December 11, 2008, Madoff was arrested for violating multiple securities laws in connection with running a Ponzi scheme through the investment advisory business of BLMIS (the "IA Business"). On December 15, 2008, Irving H. Picard was appointed as the Trustee for the liquidation of the business of BLMIS, and Baker & Hostetler LLP was retained as his counsel. Shortly thereafter, FTI was retained by Baker & Hostetler LLP, on behalf of the Trustee, to analyze, among other things, the financial affairs of BLMIS and to assist the Trustee with the liquidation of BLMIS. As part of our engagement, FTI was tasked with the exercise of reconstructing the books and records of

3

BLMIS, including all records of the cash transactions related to the BLMIS IA Business customer accounts as far back as the records allow.

5. This report should be read in conjunction with my Expert Report regarding the Reconciliation of Cash Transactions for All BLMIS Customers and Analysis of IA Business Cash Activity dated January 16, 2019 (the "Collura January 2019 Report").[1]

6. For this report, I was specifically tasked with performing forensic analyses to determine the following:

- Whether the cash deposit and withdrawal transactions reflected on the customer statements for the Epstein Defendants'[2] customer accounts at BLMIS that are at issue in this matter (the "Epstein Accounts"[3]) reconciled to available documentation; and

- Whether, based on my review of available bank records, the cash withdrawals (*i.e.*, transfers from BLMIS) reflected on the customer statements for the Epstein Accounts during the period between and including December 11, 2006 and December 11, 2008 (the "Two Year Period") could be traced to bank accounts held by, or for the benefit of, the Epstein Defendants.

7. For purposes of this report, I use the term "reconciled" to indicate when I have matched, agreed and/or determined consistency between cash deposits and withdrawals reflected on BLMIS customer statements to information or data per another source (*e.g.*,

---

[1] My findings and conclusions rendered in the Collura January 2019 Report, along with the accompanying Exhibits to that report are all incorporated by reference herein. All capitalized terms that are defined in the Collura January 2019 Report shall have the same meaning in this report.

[2] The defendants in this matter are the Estate of Seymour Epstein, Muriel Epstein, Herbert C. Kantor (deceased), Randy Epstein Austin, Robert Epstein, Jane Epstein, Susan Epstein Gross, and Shelburne Shirt Company, Inc. (collectively, the "Epstein Defendants"). Pursuant to court order, the count(s) seeking to recover subsequent transfers from Muriel Epstein, Randy Epstein Austin, Robert Epstein, Jane Epstein, and Susan Epstein Gross were dismissed without prejudice. *See* Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, dated July 16, 2015, Adv. No. 10-04438 (SMB), ECF No. 42.

[3] The Epstein Defendants maintained the following BLMIS customer accounts: 1) 1CM049 under the name "SEYMOUR EPSTEIN," and 2) 1CM005 under the name "SHELBURNE SHIRT C/O SEYMOUR EPSTEIN." Between February 1993 and February 2002, the name on account 1CM005 was "SHELBURNE SHIRT C/O BUCHBINDER TUNICK & CO." *See* AMF00240565.

4

amounts on BLMIS bank records, correspondence between the customer and BLMIS regarding incoming deposits and/or requests for withdrawals, or documents produced to the Trustee related to the Epstein Accounts). For purposes of this report, I use the term "traced" to indicate when I have followed the flow of funds from one bank account (*e.g.*, BLMIS's bank account) to another bank account (*e.g.*, the Epstein Defendants' bank account).

8.  This report has been prepared in connection with the above-captioned litigation and is to be used only for the specific purposes of this lawsuit. It is not to be used for any other purpose without the express written consent of FTI. If called upon to testify in this matter, I intend to provide testimony regarding my analyses and conclusions consistent with this report.

9.  FTI is being compensated at a rate of $670 per hour for my professional time incurred in performing the work necessary to prepare this report. FTI's fees are not contingent on the conclusions reached in this report or the outcome of the above-captioned litigation.

**III. METHODOLOGY**

10.  To determine whether the cash transactions reflected on the customer statements for the Epstein Accounts reconciled to available documentation, I used the results of the forensic analysis of the available BLMIS bank records as described in the Collura January 2019 Report. In addition, I reviewed and analyzed other documents and records maintained at BLMIS, including documents contained in BLMIS customer files, as well as documents produced to the Trustee related to the Epstein Accounts. Based on my review and analysis of these materials, I identified the cash transactions related to the Epstein Accounts that reconciled to these documents.

11.  Next, to determine whether the cash withdrawals reflected on the customer statements for the Epstein Accounts during the Two Year Period could be traced to bank accounts held by, or for the benefit of, the Epstein Defendants, I again used the available information from BLMIS bank records. In addition, I reviewed bank records produced to the Trustee by third-party financial institutions related to bank accounts held by the Epstein

5

Defendants. Using these available records, I identified the recipients of the transfers from BLMIS.

12.     The documents and data that I considered in connection with this report are listed in **Exhibit 2**. I reserve the right to supplement my report based on any additional documents or information received.

### IV. SUMMARY OF FINDINGS

13.     Based on the forensic analyses performed, as described above and throughout this report, as well as my skills, knowledge, experience, education and training that I applied to the documents and information available to me as of the date of this report, my findings are summarized as follows:

- For my reconciliation analysis, I analyzed the cash transactions in the Epstein Accounts from January 1993 to December 2008. During this time period, the customer statements for the Epstein Accounts reflected 23 cash deposit and withdrawal transactions. I reconciled all but two (approximately 91%) of the 23 cash transactions reflected on the customer statements for the Epstein Accounts to available BLMIS bank records, documentation contained in BLMIS customer files, and/or documents produced to the Trustee related to the Epstein Accounts. I was unable to complete my reconciliation for the two remaining cash deposit transactions reflected on the customer statements for the Epstein Accounts due to the unavailability of records related to transactions dated before December 1998. However, based on my review of documents contained in the customer files maintained at BLMIS for the Epstein Accounts, I have not found any instance of the Epstein Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Epstein Accounts.
- For my tracing analysis, I analyzed the cash withdrawals from the Epstein Accounts during the Two Year Period, totaling $2,622,439. Based on available bank records from BLMIS and bank records produced to the Trustee by third-party financial institutions,

6

Bank of America and Fidelity Investments, I traced 100% of the total amount of cash withdrawals reflected on the customer statements for the Epstein Accounts during the Two Year Period to four bank accounts – two accounts held by defendant Shelburne Shirt Company, Inc., and two accounts held by Seymour Epstein and defendant Muriel Epstein.

**V. RECONCILIATION OF CASH TRANSACTIONS FOR THE EPSTEIN ACCOUNTS**

*A. OVERVIEW*

14.     The chronological listings of all cash and principal transactions for every BLMIS customer account compiled by FTI, as described in the Principal Balance Calculation Report, included the cash transactions for the Epstein Accounts. From January 1993 to December 2008, the customer statements for the Epstein Accounts reflected 23 cash transactions, which consisted of three cash deposits into Epstein Account 1CM005 totaling $300,000 and 20 cash withdrawals from the Epstein Accounts totaling $3,738,439. I was tasked with reconciling these 23 cash transactions to available BLMIS bank records, documents contained in BLMIS customer files, and/or documents produced to the Trustee related to the Epstein Accounts. *See* **Exhibit 3** for a list of these cash deposit and withdrawal transactions; *see also* **Exhibit 6** – "Reconciliation and Tracing Results – Epstein Accounts."

*B. BLMIS BANK ACCOUNTS*

15.     Of the 23 cash transactions reflected on the customer statements for the Epstein Accounts, 18 occurred in the ten-year period for which there were available bank records for the three BLMIS bank accounts described in the Collura January 2019 Report. I reconciled all 18 cash transactions reflected on the customer statements for the Epstein Accounts during the period December 1998 to December 2008 to available BLMIS bank records, including monthly bank statements and copies of cancelled checks. The 18 cash transactions were reconciled to the BLMIS bank accounts as follows:

7

- 703 Account – one transaction (withdrawal via wire)
- 509 Account – 17 transactions (withdrawals via check)

16. Based on the results of my reconciliation of the cash transactions in the Epstein Accounts to available BLMIS bank records, as well as the results of my Global Reconciliation as further described in the Collura January 2019 Report, I can reasonably infer that if BLMIS bank records prior to December 1998 were available to me, I would be able to reconcile the pre-December 1998 cash transactions in the Epstein Accounts.

C. *BLMIS CUSTOMER FILES*

17. In addition to reconciling the cash deposit and withdrawal transactions for the Epstein Accounts to the available BLMIS bank records as described above, I also reviewed customer files from BLMIS's records to identify correspondence related to the cash transactions reflected on the customer statements for the Epstein Accounts.

18. Customer files related to customer accounts were maintained in BLMIS's records and were generally organized by BLMIS account number. These customer files contained documents including, but not limited to, correspondence between the customer and BLMIS employees regarding incoming deposits and/or requests for withdrawals, customer contact information, BLMIS customer agreements, as well as trust and other agreements.

19. As part of my analysis, I identified the customer files for the Epstein Accounts within BLMIS's records. I reviewed the documents contained in these customer files to identify correspondence that related to the cash transactions reflected on the customer statements for the Epstein Accounts. I identified letters and/or other correspondence in these customer files that support 20 of the 23 cash transactions in the Epstein Accounts. One of these letters, which is a request for a cash withdrawal from the Epstein Accounts, is attached as **Exhibit 4** and is described further below:

- In a letter dated February 27, 2008, Seymour Epstein states, "Please withdraw $75,000 from my above account [1CM049-3-0]."

8

20.     Furthermore, based on my review of the documents contained in the customer files for the Epstein Accounts, I have not found any instance of the Epstein Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Epstein Accounts.

D.  *DOCUMENTS PRODUCED TO THE TRUSTEE RELATED TO THE EPSTEIN ACCOUNTS*

21.     As of the date of this report, documents have been produced to the Trustee consisting of, among other things, correspondence that related to the cash transactions reflected on the customer statements for the Epstein Accounts. In addition, the Trustee received documents from an accounting firm, Sosnik Bell & Co., LLC, which included, among other things, electronic spreadsheets detailing activity in the Epstein Accounts, including cash deposit and withdrawal transactions. I reconciled 12 of the 23 cash transactions reflected on the customer statements for the Epstein Accounts to these documents produced to the Trustee.

E.  *RESULTS OF RECONCILIATION*

22.     In total, based on my analyses described above, I reconciled 21 (approximately 91%) of the 23 cash transactions reflected on the customer statements for the Epstein Accounts to available BLMIS bank records, documentation contained in BLMIS customer files, and/or documents produced to the Trustee related to the Epstein Accounts. **Exhibit 3**, which lists each of the 23 cash transactions for the Epstein Accounts, contains three columns that indicate the results of my reconciliation to each of these sources of information.

23.     I was unable to complete my reconciliation for the two remaining cash deposit transactions reflected on the customer statements for the Epstein Accounts due to the unavailability of records related to transactions dated before December 1998. However, as noted above, I have not found any instance of the Epstein Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Epstein Accounts.

**VI. TRACING CASH WITHDRAWALS FROM THE EPSTEIN ACCOUNTS**

*A. OVERVIEW*

24.     The available BLMIS bank records, as described in the Collura January 2019 Report, were also used to determine whether I could trace the funds that left BLMIS's bank accounts to bank accounts held by, or for the benefit of, the Epstein Defendants. To determine this, I performed a "Receiving Bank" analysis, which traces transfers from BLMIS's bank accounts to bank accounts that received funds from BLMIS.

25.     During the Two Year Period, the customer statements for the Epstein Accounts reflected eight cash withdrawal transactions totaling $2,622,439. These cash withdrawal transactions were in the form of a wire transfer from the 703 Account and checks written from the 509 Account.

26.     My tracing of withdrawals from the 703 Account via wire transfers was based on the transaction description contained on the monthly bank statements. Often, the description on the bank statements for the 703 Account included the identification of both the banking institution that received the cash transfer and the beneficiary of the transfer. In some cases, the description also included the corresponding bank account number. The JPMC Wire File produced to the Trustee by JPMC detailing the activity in the 703 Account contained the same, and in some cases additional, detail related to the transactions via wire transfers. Therefore, I also relied on the JPMC Wire File to identify information regarding the flow of funds related to wire transfers in and out of the 703 Account.

27.     Tracing withdrawals via check requires a legible copy of a cancelled check. The necessary information to trace the amount to a receiving bank account, including endorser, banking institution and bank account number, is typically included on the back of a cancelled check. Oftentimes, however, not all of this information was available on the copy of the cancelled check written from the 509 Account and/or the available information was often illegible. In any event, when possible, I identified and captured all available and legible

10

information from the cancelled checks written from the 509 Account related to withdrawals from the Epstein Accounts.

28.     In addition, to trace the cash withdrawals from BLMIS, I also reviewed documents related to bank accounts held by the Epstein Defendants that were produced to the Trustee by Bank of America and Fidelity Investments.[4]

B.  *RESULTS OF TRACING*

29.     **Exhibit 5** summarizes the results of my Receiving Bank analysis and my review of bank records produced to the Trustee by Bank of America and Fidelity Investments.[5]  This exhibit lists the bank accounts I identified by tracing cash withdrawals from BLMIS during the Two Year Period and supports that 100% of the total dollar amount of withdrawals reflected on the customer statements for the Epstein Accounts during the Two Year Period went to four bank accounts – two accounts held by defendant Shelburne Shirt Company, Inc., and two accounts held by Seymour Epstein and defendant Muriel Epstein.

---

[4] The producing party for the Fidelity Investments documents was FMR, LLC, the parent company of Fidelity Investments.  I also reviewed records produced to the Trustee by Washington Trust Company.  However, these records related to bank accounts that did not receive transfers from BLMIS during the Two Year Period.
[5] *See also* **Exhibit 6**.

11

**VII. SIGNATURE AND RIGHT TO MODIFY**

30.       This report and the exhibits contained herein present my findings and the bases thereof. To the extent that any additional information is produced by any party, I reserve the right to incorporate such additional information into my report or to modify my report as necessary.

By:

*Lisa M. Collura*

Lisa M. Collura, CPA, CFE, CFF
June 28, 2019

**VIII. LIST OF EXHIBITS**

Exhibit 1:  Curriculum Vitae
Exhibit 2:  Documents Considered
Exhibit 3:  List of All Cash Transactions in the Epstein Accounts
Exhibit 4:  Letter from BLMIS Customer Files for the Epstein Accounts
Exhibit 5:  Results of Tracing Analysis – Epstein Accounts (*During the Two Year Period*)
Exhibit 6:  Reconciliation and Tracing Results – Epstein Accounts