

```
                                                        Page 1

 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   Case No. 08-01789-smb

 4   - - - - - - - - - - - - - - - - - - - - - - - - - x

 5   SECURITIES INVESTOR PROTECTION CORPORATION,

 6                   Plaintiff,

 7           v.

 8   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, et al.,

 9                   Defendants.

10   - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   One Bowling Green

14                   New York, NY 10004

15

16                   September 9, 2020

17                   10:05 AM

18

19

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN
```

1    HEARING re Motion of Khronos LLC to Quash Trustees Rule 2004

2    Subpoena

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    A P P E A R A N C E S:

2

3    BAKER HOSTETLER LLP

4         Attorneys for Trustee Irving Picard

5         45 Rockefeller Plaza

6         New York, NY 10111

7

8    BY:  JASON OLIVER (TELEPHONICALLY)

9

10   LAW FIRM OF BINDER & SCHWARTZ

11        Attorney for Khronos

12        366 Madison Avenue, Sixth Floor

13        New York, NY 10017

14

15   BY:  ERIC FISHER (TELEPHONICALLY)

16

17   SECURITIES INVESTOR PROTECTION CORPORATION

18        1667 K Street, N.W., Suite 1000

19        Washington, D.C 20006

20

21   BY:  KEVIN H. BELL (TELEPHONICALLY)

22

23   ALSO APPEARING TELEPHONICALLY:

24   ALIX BROZMAN

25   DAVID SHEEHAN

Page 4

1                    P R O C E E D I N G S

2              THE COURT:  Madoff.

3              MR. OLIVER:  Good morning, Your Honor.  Jason

4    Oliver from Baker Hostetler on behalf of the Trustee, Irving

5    Picard.

6              THE COURT:  Okay.

7              MR. FISHER:  And Eric Fisher from the Law Firm of

8    Binder & Schwartz on behalf of Khronos.

9              THE COURT:  Are there any other appearances in

10   this matter?  All right.  Mr. Fisher, go ahead, it's your

11   motion.

12             MR. FISHER:  Thank you, Your Honor.  Following the

13   briefing between the parties, I think, Your Honor, that the

14   motion at this point boils down to the question of whether

15   it's appropriate for the Trustee to use a Rule 2004 subpoena

16   to discovery information about the liquidation and

17   dissolution of a Bermuda fund in 2017 and a Cayman fund in

18   2019.

19             The standard that govern the motion here, first,

20   of course, is the question of whether there is good cause

21   for the subpoena.  And as part of determining the motion, as

22   this Court has recognized, the Court has significant

23   discretion in considering the parameters that should apply

24   to Rule 2004 discovery.

25             So I want to briefly address the merits and

1   explain why it's Khronos' position that there is no good

2   cause for this subpoena.  I then want to very quickly touch

3   on the question of the burden imposed by the subpoena, and

4   finally address some equities that I think should govern the

5   Court's exercise of discretion here.

6           So, Your Honor, on the merits.  What the Trustee

7   is clearly looking to do here is find someone to sue as a

8   subsequent transferee for transfers that occurred back in

9   2007 and 2008.  And the Trustee offers really no basis to

10  believe that those transfers are traceable through and

11  beyond liquidations that happened 10 and 11 years after the

12  initial transfers in question.

13          So because there's just no reason, or at least no

14  supported reason that's offered, to think that the transfers

15  are traceable to that extent and over that period of time,

16  this is not really a legitimate exercise of the Trustee's

17  investigatory powers.

18          THE COURT:  Mr. Fisher, I thought that Prince and

19  Montpellier were investors in Legacy; is that correct?

20          MR. FISHER:  Yes.  That is correct, Your Honor,

21  yes.

22          THE COURT:  So any transfers they would have

23  gotten from Legacy, which presumably I think my recollection

24  is it invested all or substantially all of its assets in

25  BLMIS, would presumably emanate from BLMIS, right?

1          MR. FISHER:  Yes, Your Honor.  But transfers from

2     Legacy that occurred in 2007 and 2008 to the Prince assets

3     and to Montpellier International -- Legacy's only investment

4     was BLMIS.  But what the Trustee is now --

5          THE COURT:  But we don't know when those entities

6     transferred those assets, right?

7          MR. FISHER:  Correct.  And those entities, Your

8     Honor, the reason that we put in a reply declaration from

9     Rafael Mayer of Khronos is to just explain that the Trustee

10    creates a false picture here of these entities.  Montpellier

11    International, at the time that it redeemed its investment

12    from Legacy in 2007, it was a fund with a $3 billion

13    portfolio value with hundreds of investors.  The Legacy

14    redemption accounted for a tiny fraction of the portfolio

15    value.  And, of course, it only went down from there because

16    there were no further redemptions from Legacy because Madoff

17    imploded.

18          And so, you know, the idea that the Trustee wants

19    to take discovery about distributions that were made to

20    investors 10 years after the transfer in question I think

21    just highlights the futility of trying to trace these

22    transfers.  But it's not just traceability.  You know, these

23    entities have dissolved and, you know, Mr. Oliver in his

24    declaration provides the notices of dissolution for both

25    entities and the notices say, if you're a creditor, come

1   identify yourself and, if not, you're not going to be

2   entitled to get any distribution.

3           So there's an expungement of claims that would

4   have to be overcome if the Trustee is now going to try to,

5   you know, identify and trace subsequent transfers into

6   investors that redeemed from Montpellier and from Prince

7   respectively, again, 10 and 11 years after the transfers in

8   question.  And there's also no reason to think or suspect or

9   assert that the investors who got money in those

10  liquidations did so for anything other than, you know,

11  redemption of a legitimate investment, good faith and value.

12          And so, this is a kind of last ditch effort to

13  find somebody to sue, to find a bunch of names, but there's

14  just no reasonable basis that's offered to think that it

15  would lead to potentially viable claims that belong to the

16  BLMIS estate.

17          THE COURT:  When were Montpellier and Prince

18  liquidated?

19          MR. FISHER:  Montpellier in 2017 and Prince in

20  2019.

21          THE COURT:  Okay.  But in the course of those

22  liquidations, were any transfers made by the liquidating

23  trustee or whatever title might be?

24          MR. FISHER:  Yes, when the funds were (crosstalk).

25          THE COURT:  Okay.  So isn't it possible that the

Page 8

```
 1    trustee could, although many years have passed, trace

 2    transfers that began with BLMIS through Legacy, through

 3    Montpellier or Prince to the transfers that were made in

 4    2017 or 2019, right?

 5            MR. FISHER:  I think, Your Honor, it is --

 6            THE COURT:  It's difficult, that's the trustee's

 7    problem.

 8            MR. FISHER:  Right, but -- and that's why, though,

 9    we explained that, you know, Montpellier is the funds that

10    operates with -- you know, it operated with or, you know,

11    before its dissolution, a $600 million line of credit,

12    hundreds of investors, many investments.  So, of course, I

13    mean, that kind of tracing is, you know, a theoretical

14    abstract possibility, but it's not a real possibility and

15    the trustee offers no reason to think that that kind of

16    exercise is a worthwhile use of the estate's resources.

17            And, Your Honor, and that brings me to the

18    question of burden.  It's not only that we think that this

19    is not a legitimate investigatory exercise and that it's so

20    overwhelmingly unlikely to lead to any kind of viable claim,

21    but it's also that it is a very burdensome request.  There's

22    no timeframe in this --

23            THE COURT:  Where did you set forth the burden,

24    other than saying that it's burdensome?  I didn't see it in

25    the papers.  I mean, normally, you would see, you know, I
```

Page 9

1    have a hundred servers that I have to serve for this stuff

2    and I have to search for this stuff, they're all over the

3    world, it'll take this number of hours and cost this much,

4    or it's an old computer system that has to be transferred to

5    a new operating system or something like that.  I didn't see

6    that in your papers.

7              MR. FISHER:  Your Honor, we didn't set forth the

8    burden with that kind of detail.  The burden is -- well, two

9    points on that.  I mean, the information -- let's just take

10   Montpellier as an example -- at this point, it's information

11   about a liquidation that occurred over a period of time and

12   concluded three years ago.  We did put in information about

13   the size of the funds and transactions to give a sense that

14   the information is extremely voluminous, and at this point,

15   it's also old information that needs to be retrieved if it

16   were to be produced.

17             But I also think it's appropriate to look at the

18   burden on Khronos here because this is a subpoena to

19   Khronos.  On a cumulative basis, Khronos was served with a

20   Rule 2004 subpoena back in 2010.  It complied.  It produced

21   20,000 pages of information.  It was then --

22             THE COURT:  I thought the individuals were served

23   with a subpoena in 2010.

24             MR. FISHER:  So the individuals -- yes, Your

25   Honor.  To be more precise, yes.  Rafael Mayer and David

Page 10

```
 1    Mayer were with duplicate subpoenas.  They didn't and don't

 2    have in their personal possession any information that

 3    relates to Khronos' business and its role in providing

 4    services to Montpellier and Prince.  And so, what was

 5    produced to the Trustee -- and it was served at, you know,

 6    Khronos' office address; that's what it was addressed to.

 7    What was produced to the Trustee back in 2010 was

 8    information from Khronos' files about these transfers, and

 9    we provided a chart showing the extraordinary overlap

10    between that 2010 subpoena and the current subpoena.

11            So we've already complied with the Rule 2004

12    subpoena that relates to these transfers from Legacy that

13    occurred in 2007 and 2008.  Khronos was then sued with

14    respect to these transfers.  It litigated for five years,

15    and then ultimately got itself dismissed with prejudice from

16    the case.  It is now a party to the Trustee's appeal to the

17    Second Circuit from the conclusion of the Legacy case.  If

18    the Trustee prevails, Khronos will be back in the case.

19            So Khronos has been subjected to a pretty

20    extraordinary burden in this case over a period of 11 years

21    with respect to the same underlying transfers that originate

22    in 2007 and 2008, and I think it's appropriate for the Court

23    to consider that because really, I mean, my client is

24    responding in a way that it is because it's just truly

25    reached a point of enough is enough.  I struggle to advise
```

Page 11

1    Khronos when it is that they won't have to deal with more

2    subpoenas and litigation related to the transfers that

3    occurred so many years ago.

4         THE COURT:  Well, depending on how the Second

5    Circuit rules, you may be back in the case, and I'm sure

6    you've told you that, so this thing is not over.

7         MR. FISHER:  We have told them that, of course,

8    we've told them that.  And, you know, that gets to the

9    debate that you see in the papers about the pending

10   proceeding rule.  So while it is true that at the moment,

11   the Trustee does not have subpoena power under Rule 45 and

12   Khronos is not a party to the litigation subject to

13   discovery, this is still very much a live case.  And if the

14   Trustee prevails, Khronos may very well find itself a party

15   in the case subject to party discovery and that feeds the

16   burden, and I think it also does bring this within the

17   pending proceeding rule barring (crosstalk).

18        THE COURT:  Have you, in the past in 2010, turned

19   over all the documents relating to the transfers from BLMIS

20   to Legacy that you have?

21        MR. FISHER:  So, Your Honor, back in 2010 -- and

22   actually, it was a different law firm representing Khronos -

23   - I, having been through the production now, I know that we

24   -- I don't know that we turned over or that Khronos turned

25   over every document, but it certainly turned over documents

Page 12

1   sufficient to identify all transfers from Legacy to its

2   shareholders -- dates, amounts.  You know, that information

3   appears in various ways in the production.

4           And that brings me to the final point, which is

5   just the equities here, which I touched on in terms of the

6   ways in which Khronos has been subjected to a lot of

7   litigation and expense related to what are now very old

8   transfers.  But the Trustee has really sat on his rights for

9   many years.  This information I think was indisputably

10  provided to the Trustee sufficient to identify these

11  transfers long before these dissolutions.  The Trustee has

12  never sought more information.  The Trustee never argued

13  that what it received in response to that 2010 subpoena was

14  inadequate in any way.

15          In fact, the Trustee was able to issue the

16  subpoena that it did because of information that it received

17  back in 2010.  So for the Trustee to turn to this now 11

18  years later asking for information that is now more

19  burdensome to retrieve because of how old it is and that

20  anyway we don't think is potentially relevant to any

21  legitimate claims.

22          We think for all those reasons, the subpoena

23  should be quashed.

24          THE COURT:  Thank you.  Mr. Oliver.

25          MR. OLIVER:  Thank you, Your Honor.  Jason Oliver,

1   Baker Hostetler on behalf of the Trustee.  I'd first like to

2   address Mr. Fisher's point regarding alleged lack of

3   diligence with respect to the information that's being

4   sought with respect to the instant subpoena.

5           As Your Honor is aware, in the Legacy Capital

6   adversary proceeding, a judgment was entered for

7   approximately $79 million against Mr. Fisher's client,

8   Legacy Capital.  Legacy Capital consented to that judgment

9   and the Trustee would have certain preferred --

10          THE COURT:  I thought Mr. Fisher represented

11  Khronos and another firm represented Legacy.  Didn't Mr.

12  Kagan represent Legacy?

13          MR. OLIVER:  There was a split in time where Mr.

14  Kagan represented Legacy, but Mr. Fisher actually signed the

15  stipulated judgment that was negotiated on behalf of Legacy.

16  It was actually, Your Honor, after the summary judgment

17  proceeding was argued, then there was the switch in counsel.

18  May I continue?

19          THE COURT:  Thank you.  Yes, please.

20          MR. OLIVER:  Okay.  So as I was saying, the

21  Trustee would have preferred to recover the judgment from

22  Legacy Capital, so it diligently sought post-judgment

23  discovery starting in January of 2019.  As Your Honor is

24  aware, there's a 30-day period where you cannot seek to

25  enforce a judgment.  So after that expired, the Trustee

1   diligently went after post-judgment discovery from Legacy

2   Capital.  In response --

3           THE COURT:  Did you really think that Legacy would

4   have money?

5           MR. OLIVER:  Well, Legacy, prior to the summary

6   judgment proceeding, Legacy's counsel -- again, it wasn't

7   Mr. Fisher -- but did not take a position on whether or not

8   they were able to satisfy a judgment, and this was discussed

9   on more than one point.  And there's nothing in the amended

10  complaint that would suggest that Legacy would not be able

11  to satisfy a judgment in 2019.

12          While we did make an allegation concerning a

13  single-purpose vehicle invested solely in BLMIS, we did

14  learn through post-judgment discovery that Legacy is still a

15  going concern.  It's allegedly now owned and controlled or

16  owned rather by PNB Paribas, so we're not sure exactly, at

17  least when we served the post-judgment discovery, whether or

18  not Legacy Capital would be able to satisfy the judgment

19  that it consented to.

20          So we learned both from Legacy Capital and also

21  Mr. Fisher's other client, Khronos, who we subpoenaed in

22  post-judgment discovery for a Rule 45 and Rule 65 discovery

23  that Legacy was essentially impecunious and that it could

24  not satisfy the judgment.

25          So with that in mind, the Trustee was then forced

Page 15

1      to consider whether or not to bring subsequent transfer

2      claims and began its investigation into subsequent

3      transferees.  At that point, the Trustee learned through its

4      own investigation that the subsequent transferees that it

5      was aware of, both Montpellier International, a Bermuda

6      entity, and Prince Assets, a Cayman Island entity, had been

7      dissolved by Mr. David Mayer and Mr. Rafael Mayer who are,

8      as you know, also the principals of Khronos, Mr. Fisher's

9      client.

10             So we're now in a situation where we expeditiously

11     sought to serve the Rule 2004 subpoena to get access to

12     information that is not in the Trustee's possession

13     concerning any downstream additional subsequent transfers of

14     the money that Khronos has admitted and Legacy has admitted

15     has gone to both Montpellier International and Prince in

16     2007 and 2008.  Now Mr. Fisher --

17             THE COURT:  Did you get -- wait, before you go on.

18     You got the information of the transfers obviously from

19     BLMIS to Legacy.  And in 2010, did you get the information

20     relating to transfers from Legacy to other entities or

21     persons?

22             MR. OLIVER:  We did receive information from the

23     Mayers in their production that's similar to the documents

24     that Mr. Fisher attached to his declaration in support of

25     this motion.  But, yes, we did receive some information

Page 16

1   showing receipt of transfers.

2              THE COURT:  So to make it less burdensome, in Mr.

3   Fisher's words, how do you separate out and relieve them of

4   the obligation to produce documents they've already

5   produced?

6              MR. OLIVER:  Well, Your Honor, we are looking for

7   additional subsequent transfers that either result in (a)

8   from the liquidation that Mr. Fisher discussed in detail or

9   (b) at any time after the subsequent transfers to

10  Montpellier and Prince were received in the first instance

11  and potentially subsequently transferred or distributed.

12  Mr. Fisher said --

13             THE COURT:  So you know -- wait, wait, stop.  So

14  you know or you've gotten the information already about the

15  transfers from Legacy to Montpellier and Prince?

16             MR. OLIVER:  That's correct.

17             THE COURT:  You're looking for transfers from

18  Prince and Montpellier --

19             MR. OLIVER:  -- downstream.

20             THE COURT:  -- (crosstalk) transfers.

21             MR. OLIVER:  That's absolutely correct, Your

22  Honor.

23             THE COURT:  Okay.

24             MR. OLIVER:  So that is the basis of our request

25  for discovery and that is the basis of the request that was

1    clarified to Mr. Fisher starting on October 3rd -- excuse me

2    -- August 3rd of this year when we had our meet and confer.

3    In addition, you know, we talked about -- Mr. Fisher talked

4    about burden and, you know, the fact that Khronos is

5    involved in litigation.  But he has not addressed the fact

6    that it's his clients, the Mayers, who are actually the

7    individuals responsible for the voluntary liquidation and

8    dissolution of the two subsequent transferees that have been

9    identified in their very production.

10           Again, Khronos in its papers admits that there was

11   receipt of transfers from Legacy to those two subsequent

12   transferees in 2007 and 2008, but does not address the fact

13   that the Mayers went ahead and dissolved these entities with

14   knowledge and a production to the Trustee setting forth the

15   transfers of those to the subsequent transferee without

16   providing any notice whatsoever to the Trustee concerning

17   its desire to liquidate those entities.

18           So I think the --

19           THE COURT:  Why would the Trustee get notice;

20   you're saying the Trustee was a creditor of these entities?

21           MR. OLIVER:  Well, Khronos and the Mayers were on

22   notice of a potential claim where the Trustee could be a

23   creditor, and there was never a situation where, despite a

24   document production showing evidence of transfers, where

25   there was any preservation of that information or any notice

Page 18

1    whatsoever to the Trustee as a potential creditor that would

2    use the transfers for the --

3               THE COURT:  Wait, wait, wait.  Do the liquidation

4    rules in Bermuda and Cayman Island require that the

5    liquidators give notice to the BLMIS Trustee?

6               MR. OLIVER:  That's something that we'd have to

7    examine under foreign law.  And I would make one other point

8    that Mr. Fisher assumes that, you know, a claim would be

9    futile once an entity is dissolved and liquidated, but there

10   have been instances where companies or foreign entities are

11   reinstated.  As Your Honor might recall in the other BLMIS

12   matter involving HSBC BA worldwide is an example where there

13   was a reinstatement of a dissolved and struck off entity.

14               So, again, Mr. Fisher is essentially arguing, like

15   a motion to dismiss, that a claim would be futile where

16   there is no binding determination that there's a full

17   expungement of claims.

18               THE COURT:  Okay.

19               MR. OLIVER:  And one other point, Your Honor.

20               THE COURT:  Okay.

21               MR. OLIVER:  Khronos also served as the

22   administrator for at least Montpellier and Prince through

23   2016.  We have sought in our subpoena, in addition to

24   documents, you know, the instructions have a request

25   specifically in the event that the recipient under Rule 2004

Page 19

1     subpoena no longer have documents or information concerning

2     the targeted questions in the Rule 2004 discovery.  There's

3     a specific instruction that requires the recipient to

4     identify the information and the new individual or the new

5     repository of that information.

6          And even through the full briefing that we have

7     with respect to Khronos' motion to quash, we still don't

8     know the identity of the third party that is the

9     administrator of Prince; all we do know is that David Mayer

10    was the liquidator.  And there was no discussion with

11    respect to either burden to Khronos or the Mayers as to why

12    David Mayer would not be in a position to produce documents

13    as the liquidator of the Prince proceeding.

14          THE COURT:  I thought that -- I thought it was

15    Prince where it was stated that they no longer have the

16    documents.

17          MR. OLIVER:  Khronos has taken the position that

18    they no longer have the documents.  But Khronos has also

19    taken the position that a subpoena in 2010 to the Mayers as

20    individuals, as Your Honor pointed out, resulted in what Mr.

21    Fisher believes was the files of Khronos being produced.

22          We submit that the converse is also true since

23    David Mayer is a principal of Khronos, he certainly has

24    access to the liquidation files and information concerning

25    transfers that resulted from the liquidation as he served as

Page 20

```
 1    the liquidator of that proceeding in the Cayman Islands.

 2              THE COURT:  Okay.  Is there anything else?

 3              MR. OLIVER:  I would make a comment, Your Honor,

 4    that this discovery proceeding has been going on for some

 5    time.  We tried to expeditiously bring it to Your Honor's

 6    attention with the help of Mr. Fisher and the Court so that

 7    we wouldn't be on a motion omnibus date as it is urgent.

 8              And to the extent that Your Honor is going to

 9    award discovery, we'd ask that a document production

10    deadline be added to a proposed -- added to the order

11    requiring Khronos to provide documents within seven days of

12    any decision.

13              THE COURT:  Thank you.  Mr. Fisher, I will give

14    you the last word.

15              MR. FISHER:  Thank you, Your Honor.  Just really

16    briefly respond to --

17              THE COURT:  If you want it.

18              MR. FISHER:  I'll take it, thank you.

19              THE COURT:  All right.

20              MR. FISHER:  Just to respond to something Mr.

21    Oliver has pointed very quickly.  It's worth noting that the

22    Trustee, back in 2010 after receiving the first 2004

23    subpoena information, did sue a whole host of subsequent

24    transferees and then voluntarily discontinued the action

25    against them.  The Trustee never sued, never threatened to
```

Page 21

1  sue, never identified himself as having a claim against

2  Montpellier International or Prince Assets LBC.

3           Of course, there's no foreign law affidavit in

4  front of the Court, but I think the insinuation that there

5  was anything improper about that or that notice was required

6  is just -- isn't right.

7           Mr. Oliver described Legacy as a going concern.

8  It isn't and never was a going concern after Madoff

9  collapsed because all it ever had was its Madoff accounts.

10 And the information that was provided to the Trustee in

11 post-judgment discovery showed the Trustee that Legacy's

12 assets as of today are essentially exactly what they were in

13 December 2008 when Madoff collapsed.  Nothing has changed

14 and the Trustee knew or should have --

15          THE COURT:  Well, but he's asking really or the

16 sense I get is that the Trustee is seeking information

17 relating to transfers by Montpellier and Prince as late as

18 2019 in the case of one of them.  He's not interested in

19 transfers -- I don't think he's interested in transfers from

20 Legacy to Montpellier and Prince.  I asked him that question

21 and he said that he was interested in post Montpellier and

22 Prince transfers, you know, the subsequent transfers.

23          MR. FISHER:  Understood, Your Honor.  But that's

24 why I don't think that there's really a rational basis for

25 the request, because you're talking then about distributions

Page 22

1    that happened in 2017 and 2019 respectively without knowing,

2    you know, the hundreds of transactions and all the money in

3    and out that occurred over the 10 or 11 years between the

4    initial transfer and this subsequent transfer.  So I don't

5    see how that --

6              THE COURT:  How does the Trustee know that -- how

7    does the Trustee know that without discovery?

8              MR. FISHER:  Because if he's looking -- if the

9    Trustee is looking for information about a liquidation

10   occurring 10 or 11 years later, he's just got to offer some

11   theory as to why that's connected to something that happened

12   so many years before in a fund where there now is evidence

13   in the record that, you know, this is a substantial fund

14   with lots of transactions and a very substantial value

15   before its dissolution.

16             And, Your Honor, finally just to set the record

17   straight.  David Mayer is no longer an officer or in any

18   position of control at Khronos, LLC; it's Rafael Mayer who

19   is.  And starting at the end of 2016, as we've told the

20   Trustee and as is before the Court, Khronos no longer

21   provided any services to Prince Assets LBC or any Prince

22   entity.  And, you know, I'd be happy to provide the Trustee

23   with whatever information I have about who did provide

24   services to Prince Assets.

25             THE COURT:  But that should have been done before

Page 23

1    any motion was made.  Look, it seems to me -- I'm not going

2    to prejudge the futility of information about transfers that

3    occurred after 2010, because that's what we're really

4    talking about since the last subpoena spoke as of 2010.

5            You may be right, Mr. Fisher.  But, you know, the

6    Trustee's theory is BLMIS made transfers to Legacy, Legacy

7    made transfers to Montpellier and Prince, and it's

8    reasonable to assume that in the course of the liquidations,

9    Montpellier and Prince, if not before then, made transfers

10   to its investors and/or its creditors.  So it's very

11   difficult to prejudge that.

12           In terms of burden, you really haven't told me

13   what the burden is other than the information is old, you've

14   told me that, or at least I thought I read in the papers

15   that you don't have any information relating to Prince.  If

16   you don't have any information, then you can satisfy the

17   Trustee to that with a brief deposition or whatever the

18   person who would know that; that's really the end of it.

19           But it seems to me that the Trustee is entitled to

20   examine into transfers made by Montpellier and Prince under

21   Rule 2004 because there's subsequent transferees and he has

22   a year from the date of the judgment, which I guess was

23   November 2019 based on what the papers say, to try and trace

24   those transfers.

25           You may be right; it may be a waste of, you know,

Page 24

1    the Trustee's or SIPC's money.  But it seems to me that if

2    that's what the Trustee wants to do, that's what the Trustee

3    can do.  I mean, if Legacy doesn't really have any money, I

4    don't know why it's fighting the judgment so hard, but so be

5    it, or why the case isn't simply settled.

6             So, I mean, bottom line is the Trustee can

7    certainly examine into any transfers made by Montpellier or

8    Prince.  Was the information regarding the transfers by

9    Montpellier and Prince produced in response to the 2010

10   subpoena, Mr. Fisher?

11            MR. FISHER:  I'm sorry, Your Honor.  Transfers

12   from Montpellier and Prince to its investors?

13            THE COURT:  Yeah, to whoever.

14            MR. FISHER:  No.

15            THE COURT:  Well, investors/creditors, okay.  So

16   that was never produced, so it seems to me that the Trustee

17   is entitled to documents relating to transfers made by

18   Montpellier and Prince to investors, to creditors, to

19   anybody.

20            You know, and I will say, Mr. Fisher, you said you

21   don't -- you know, it's futile for the Trustee to try and

22   trace, but I don't know what the tracing rules are in the

23   Cayman Islands or Bermuda, so I really can't say whether or

24   not it's futile.

25            With respect to some of the stuff that's being

Page 25

1    requested, Mr. Oliver, I don't understand how it relates to

2    subsequent transfers.  I'm just looking through your

3    requests.  I mean, number four, documents or communications

4    concerning procedures, guidelines and policies for

5    investing, redeeming or monitoring BLMIS investments though

6    Legacy Capital.  Why are you asking that?

7                 MR. OLIVER:  Well, we'd be interested to see if

8    there was any changes to any of the policies regarding,

9    again, the subsequent subsequent transfers, especially post-

10   2010.

11                THE COURT:  For what?  You're looking, trying to

12   identify subsequent transfers.  I don't know why these

13   policies have to be produced.  You're entitled to documents

14   relating to subsequent transfers by Montpellier and Prince.

15   If you can trace them back to BLMIS and find someone you can

16   sue, well, you're entitled to under Section 550.

17                MR. OLIVER:  Right.  Your Honor, I agree with your

18   assessment.  That particular document request was to get a

19   complete picture of the situation regarding any changes in

20   guidelines or procedures that might affect later in time.

21   But I do agree with Your Honor with respect to the

22   information we exactly -- we precisely need, that 550 would

23   provide us the ability to look into the subsequent

24   subsequent transfers.

25                THE COURT:  I'm just looking through some of these

1    other requests.  Well, why don't you see if you can come up

2    with a formulation of what I've just said, you know,

3    specifically does the transfer documents -- I don't know

4    about some of this other stuff.  Oh, here it is.

5              I'm looking at 15, 16 and 17: 15 is documents

6    concerning Prince's credit facility; 16 is documents

7    concerning a pledge agreement; 17 is documents concerning

8    relationship between all investors and Prince.  Either

9    somebody got a transfer, or they didn't get a transfer.

10   What difference does it make about the relationship with the

11   credit facilities?

12             MR. OLIVER:  Those specific document requests

13   would be related to identifying assets that might be pointed

14   out in those documents.  And also, it might identify the

15   identities of other subsequent transferees.

16             THE COURT:  Okay.  But that's swept in with all

17   documents relating to transfers by Montpellier and Prince

18   and any transfers of their transferees.

19             MR. OLIVER:  Agreed.

20             THE COURT:  In other words, the requests should be

21   tailored to following the money.

22             MR. OLIVER:  Yes, Your Honor.  We can certainly

23   work together to put together a proposal.

24             THE COURT:  Okay, that's what I'm authorizing.

25   And I agree, Mr. Fisher, that this should be done

Page 27

1    expeditiously considering that the statute of limitations

2    under 550 is about to run in another couple of months.

3              MR. FISHER:  Understood.

4              THE COURT:  You can submit a consensual order or

5    settle an order on notice, Mr. Oliver, if you can't agree.

6              MR. OLIVER:  Thank you very much, Your Honor.

7              THE COURT:  Thank you.

8              MR. OLIVER:  Have a good day.

9              THE COURT:  You're excused.  Thank you.

10             MR. FISHER:  Thank you, Your Honor.

11   THE COURT:  Thank you.

12

13             (Whereupon these proceedings were concluded at

14   10:41 a.m.)

15

16

17

18

19

20

21

22

23

24

25

Page 28

```
 1              C E R T I F I C A T I O N

 2

 3        I, Sonya Ledanski Hyde, certified that the foregoing

 4    transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8    Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  September 10, 2020
```