| | |
|---|---|
| **Baker & Hostetler LLP** | Hearing Date: October 28, 2020 |
| 45 Rockefeller Plaza | Hearing Time: 10:00 a.m. (EST) |
| New York, New York 10111 | Objections Due: October 15, 2020 |
| Telephone: (212) 589-4200 | Objection Time: 4:00 p.m. (EST) |
| Facsimile: (212) 589-4201 | |
| David J. Sheehan | |
| Nicholas J. Cremona | |
| Jorian L. Rose | |
| Amy E. Vanderwal | |
| Jason I. Blanchard | |

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the chapter 7 estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S THIRTY-SECOND OMNIBUS MOTION
TO AFFIRM THE TRUSTEE'S CLAIMS DETERMINATIONS AND
OVERRULE OBJECTIONS THAT APPEAR TO RAISE FACTUAL ISSUES**

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa–lll, ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff") (collectively, the "Debtor"), by this combined motion and memorandum of law (the "Motion"), asks this Court to affirm his claims determinations and overrule the related objections that appear to raise customer-specific factual issues (the "Objections").

The claims ("Claims") at issue in this Motion were filed by customers that withdrew more money from BLMIS than they deposited and are thus, in the parlance of this case, net winners, and by customers that invested more money with BLMIS than they withdrew and are thus, in the parlance of this case, net losers (collectively, the "Claimants"). The Claims and the related Objections are listed in alphabetical order by the Claimant's first name in the exhibits to Vineet Sehgal's Declaration in Support of the Motion (the "Sehgal Declaration"). There are four net winner Claims and Objections identified on Exhibit A to the Sehgal Declaration and two net loser Claims and Objections identified on Exhibit B.

## PRELIMINARY STATEMENT

The Trustee determined the Claims by applying one or more of the methodologies for calculating net equity that have been approved by the courts during this SIPA liquidation. In the Objections, the Claimants contest the Trustee's determinations on various factual grounds, including their disagreement with the Trustee's net equity calculations based on these methodologies. However, the Claimants fail to offer supporting evidence that contradicts the Trustee's calculations and raise substantially similar arguments to those previously rejected by the courts and resolved in the Trustee's favor.

---

[1] Subsequent references to SIPA shall omit "15 U.S.C."

2

Specifically, the Claimants' make one or more of the following fact-based arguments: (i) the Trustee miscalculated the amount or number of withdrawals and deposits in a customer account; (ii) the Trustee wrongfully disregarded deposits of actual cash or securities; and (iii) the Trustee incorrectly adjusted the amounts transferred between BLMIS customer accounts (collectively, the "Fact-Based Arguments").

At bottom, the Claimants' unsupported Fact-Based Arguments challenge the Trustee's calculation of net equity based on the cash in/cash out method (the "Net Investment Method") and the method for calculating the net equity of accounts that received one or more transfers from another BLMIS account (the "Inter-Account Method"). However, the courts have approved the Net Investment Method[2] and the United States Supreme Court has declined to address these issues.[3] In addition, the Second Circuit has validated the Inter-Account Method in a decision that is final and no longer subject to appeal.[4] Therefore, these issues have been finally decided and the Claimants are not entitled to an adjustment to their net equity on these grounds.

Certain Claimants also contend the Trustee should have made adjustments to net equity to account for the length of time they were invested with BLMIS (the "Time-Based Damages Adjustment") and to account for their payments in compliance with the Internal Revenue Code (the "Tax-Based Adjustment"). However, the courts have also approved the Trustee's rejection of a Time-Based Damages Adjustment[5] and Tax-Based Adjustment.[6] These issues too have been

---

[2] *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011).
[3] The Supreme Court denied claimants' petitions for writ of certiorari. *Velvel v. Picard*, 133 S. Ct. 25 (2012) (Net Investment Method); *Ryan v. Picard*, 133 S. Ct. 24 (2012) (same).
[4] *Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 697 F. App'x 708 (2d Cir. 2017).
[5] *In re Bernard L. Madoff Inv. Sec. LLC,* 779 F.3d 74 (2d Cir. 2015) *cert. denied Peshkin v. Picard*, 136 S. Ct. 218 (2015).
[6] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 729 (S.D.N.Y. 2012), supplemented (May 15, 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014).

finally decided and the Claimants are not entitled to an adjustment to their net equity on these grounds either.

Moreover, under SIPA, a claimant bears the burden of proving he or she is entitled to an allowable customer claim by showing that the debtor's obligations to the claimant are ascertainable from the debtor's books and records or otherwise established to the trustee's satisfaction. Unsupported factual allegations, like those raised in the Objections, will not suffice. Because the Claimants have failed to carry their burden, the Trustee respectfully requests that the Court enter an order affirming his determinations of the Claims and overruling the Objections.

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to SIPA §§ 78eee(b)(2) and 78eee(b)(4) and 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### 1.   The Commencement of the SIPA Proceeding

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of BLMIS's insolvency, it needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to

this Court under SIPA § 78eee(b)(4).

2.   **The Trustee's Role under SIPA**

Under SIPA, the Trustee is responsible for, among other things, recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). In satisfying customer claims, the Trustee evaluates whether claimants are "customers," as defined in SIPA § 78*lll*(2), who are entitled to share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11).

For each customer with a valid net equity claim, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case), if the customer's share of customer property does not make her whole. SIPA § 78fff-3(a). It is the customer's burden to demonstrate he or she is entitled to customer status. *In re Bernard L. Madoff Inv. Sec. LLC*, 570 B.R. 477, 481 (Bankr. S.D.N.Y. 2017) (citing *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.")). The customer also bears the burden of proving the amount of his or her claim. *In re Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513, 532 (Bankr. S.D.N.Y. 2018) (citing *Pitheckoff v. Sec. Inv'r Prot. Corp. (In re Great E. Sec., Inc.)*, 10. No. Civ. 8647 (CM), 2011 WL 1345152, at *4 (S.D.N.Y. Apr. 5, 2011); *In re A.R. Baron Co., Inc.*, 226 B.R. 790, 795 (Bankr. S.D.N.Y. 1998) *aff'd* 605 B.R. 570 (S.D.N.Y. 2019)).

3.   **The Claims Process in the BLMIS Liquidation**

On December 23, 2008, this Court entered a claims procedures order (the "Claims Procedure Order"), which approved (i) the form and manner of publication of the notice of the

5

commencement of the liquidation proceeding and (ii) specified the procedures for filing, determining and adjudicating customer claims. (*See* ECF No. 12). BLMIS customers were directed to file their claims with the Trustee no later than six (6) months from the date the Trustee published notice of the commencement of the liquidation proceeding. *See* SIPA § 78fff-2(a)(3). After receiving a claim, the Trustee issued a determination letter to the claimant regarding the allowed amount of net equity. Claimants were permitted to object to the Trustee's determination of a claim by filing an objection in this Court, following which the Trustee requested a hearing date for the objection and notified the objecting claimant thereof.

Under the provisions of the Claims Procedure Order, the Trustee has successfully prosecuted thirty omnibus motions to affirm his claims determinations and overrule related objections based on legal issues previously decided in his favor and many other motions to affirm his determinations that certain claimants should not be treated as "customers" under SIPA.

On August 31, 2020, this Court entered an order establishing omnibus procedures for the adjudication of objections to the Trustee's claims determinations that appear to raise customer-specific factual issues (the "Omnibus Procedures Order"). (*See* ECF No. 19746).[7] The Omnibus Procedure Order authorizes the Trustee to file omnibus motions to affirm his determinations of claims and overrule related objections that raise various categories of factual issues identified in the Omnibus Procedures. Any claimant that disputes the relief requested in an omnibus motion is required to serve a response on the Trustee by the deadline provided in the notice of the motion. Upon the timely service of a response, the Trustee and responding claimant are required to confer on a mutually agreeable schedule for briefing and to conduct discovery, if any, under the

---

[7] A copy of the Omnibus Procedures Order is annexed to the Sehgal Declaration as Exhibit C.

parameters provided for in the form of Scheduling Order annexed to the Omnibus Procedures Order.

The Trustee has filed this Motion in accordance with the Omnibus Procedures Order to affirm his determinations of the Claims and overrule the Objections, which raise the customer-specific Fact-Based Arguments identified in Exhibit D of the Sehgal Declaration under the column bearing the heading "Category of Arguments." The Claims and Objections are now ripe for final adjudication and there are no pending avoidance actions related to the Claimants.

## RELIEF REQUESTED

By this Motion, the Trustee seeks the entry of an order affirming the Trustee's determination of the Claims in accordance with the Net Investment and Inter-Account Methods and without a Time-Based Damages Adjustment or Tax-Based Adjustment. The Trustee respectfully requests that the Court (i) disallow the Claims of the net winner Claimants identified on Exhibit A to the Sehgal Declaration; (ii) affirm the Trustee's claims determinations of the Claims identified on Exhibits A and B to the Sehgal Declaration and (iii) overrule the Objections identified on Exhibits A and B to the Sehgal Declaration.

## BASIS FOR RELIEF

### 1.    The Net Investment Method

Pursuant to SIPA § 78*lll*(11), the term "net equity" means the:

> dollar amount of the account or accounts of a customer, to be determined by – (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); . . . minus (B) any indebtedness of such customer to the debtor on the filing date.

SIPA § 78fff-2(b) directs the Trustee to make payments to customers based on "net equity" insofar as the amount owed to the customer is "ascertainable from the books and records of the

7

debtor or [is] otherwise established to the satisfaction of the trustee."

On this basis, the Trustee determined that net equity claims should be calculated according to the Net Investment Method: the Trustee calculated the amounts of money that customers deposited into their BLMIS accounts and subtracted any amounts they withdrew from their BLMIS accounts. Some claimants argued that the Trustee was instead required to calculate net equity using the amounts shown on their November 30, 2008 customer statements (the "Last Customer Statement Method").

This Court rejected the Last Customer Statement Method and upheld the Trustee's use of the Net Investment Method. *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 134-35 (Bankr. S.D.N.Y. 2010). Pursuant to 28 U.S.C. § 158(d)(2), the Bankruptcy Court certified an immediate appeal of its decision, which the United States Court of Appeals for the Second Circuit granted. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 234 (2d Cir. 2011). The Second Circuit subsequently affirmed the Bankruptcy Court's decision. *Id.* at 235-36. Then, on June 25, 2012, the United States Supreme Court denied certiorari. *Velvel v. Picard*, 133 S. Ct. 25 (2012); *Ryan v. Picard*, 133 S. Ct. 24 (2012). Therefore, a final order upholding the Trustee's use of the Net Investment Method has been issued.

### 2. The Inter-Account Method

An inter-account transfer is a transfer between BLMIS customer accounts in which no new funds entered or left BLMIS. BLMIS recorded a book entry to internally adjust the balances of those accounts, but because there was no actual movement of cash, these book entries did not reflect any transfers of cash. Rather, the inter-account transfers merely changed the reported value of the purported equity maintained in the accounts. Such transfers consisted of either: (i) all principal; (ii) all fictitious profits; or (iii) a combination of principal and fictitious profits.

To calculate the net equity for accounts with inter-account transfers, the Trustee

calculated the actual amount of principal available in the transferor account at the time of the transfer and credited the transferee account up to that same amount. Consistent with the Net Investment Method, the Trustee did not include any fictitious gains in the net equity calculation. If the transferor account did not have any principal available at the time of the inter-account transfer, the transferee account was credited with $0 for that transfer. Similarly, if the transferor account had principal available at the time of the inter-account transfer, the transferee account was credited with the amount of the inter-account transfer, to the extent of that principal.

Several claimants argued that the Trustee was instead required to credit inter-account transfers at their full, face value, as if actual money had been moved from one BLMIS account to another. In other words, these claimants argued that the Trustee should treat inter-account transfers as if they were external cash withdrawals by the transferor and external cash deposits by the transferee.

This Court approved the Trustee's use of the Inter-Account Method and held that "increasing [Claimants'] net equity claims by giving them credit for the fictitious profits 'transferred' into their accounts contravenes the *Net Equity Decision*." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41, 47 (Bankr. S.D.N.Y. 2014). The Court explained:

> [l]ike the Net Investment Method on which it is based [the Inter-Account Method] . . . ignores the imaginary, fictitious profits . . . and conserves the limited customer pool available to pay net equity claims on an equitable basis. . . . Crediting the Objecting Claimants with the fictitious profits . . . essentially applies the Last Statement Method to the transferors' accounts, and suffers from the same shortcomings noted in the *Net Equity Decision*. It turns Madoff's fiction into a fact.

*Id.* at 53. Several claimants appealed and on January 14, 2016, the District Court issued its Opinion and Order affirming this Court's decision, stating that the Inter-Account Method "is the

9

only method of calculating net equity in the context of inter-account transfers that is consistent with the Second Circuit's *Net Equity Decision*, and that it is not prohibited by law." *In re Bernard L. Madoff Inv. Secs., LLC,* 2016 WL 183492, at *2 (S.D.N.Y. Jan. 14, 2016). Several claimants further appealed to the Second Circuit. The Second Circuit affirmed the District Court's decision, *Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC),* 697 F. App'x 708 (2d Cir. 2017), and no appeal was taken therefrom.[8] Accordingly, the Second Circuit's decision stands as final.

### 3. Time-Based Damages Adjustment

Certain Claimants filed Objections seeking to adjust the Trustee's net equity calculation to allow for a Time-Based Damages Adjustment. Following the United States Supreme Court's decision denying certiorari on the Net Investment Method, the Trustee filed a motion to address objections that sought a Time-Based Damages Adjustment, arguing it is inconsistent with SIPA and therefore cannot be awarded. (*See* ECF No. 5038). In response, claimants raised numerous theories, all of which sought some increase in their customer claims based upon the amount of time they had invested with BLMIS. Most commonly, claimants relied on the New York prejudgment rate of 9% per annum, lost opportunity cost damages, or the consumer price index to take inflation into account.

The Bankruptcy Court ruled that, as a matter of law, SIPA does not permit the addition of time-based damages to net equity, and therefore upheld the Trustee's rejection of a Time-Based Damages Adjustment. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 496 B.R. 744, 754-55 (Bankr. S.D.N.Y. 2013). Following its decision, the Bankruptcy Court then certified an immediate appeal pursuant to 28 U.S.C. § 158(d)(2), which the Second Circuit granted. *In re*

---

[8] The deadline to file a petition for writ of certiorari has expired. *See* 28 U.S.C. §§ 1254, 2101(c).

10

*Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 78-79 (2d Cir. 2015). The Second Circuit affirmed the Bankruptcy Court's decision, holding that SIPA did not permit a Time-Based Damages Adjustment to "net equity" claims for customer property. *Id*. at 83. The Second Circuit concluded that such an adjustment would have gone beyond the scope of SIPA's intended protections and was inconsistent with SIPA's statutory framework. *Id.* at 79.

On October 5, 2015, the United States Supreme Court denied certiorari, and thus a final order has been issued upholding the Trustee's rejection of a Time-Based Damages Adjustment. *Peshkin v. Picard*, 136 S. Ct. 218 (2015).

### 4. Tax-Based Adjustment

Certain Claimants filed Objections seeking to adjust the Trustee's net equity calculation to allow for Tax-Based Adjustments. Specifically, these Claimants argue that the Trustee should give them credit for payments they made to the Internal Revenue Service ("IRS") required under the Internal Revenue Code or mandatory withdrawals they received in connection with their individual retirement accounts.

The Trustee has not provided any claimants with "credit" for payments of taxes to the IRS in connection with withdrawals from their BLMIS accounts, nor has the Trustee provided claimants with "credit" for mandatory withdrawals from their individual retirement accounts. To do so would be inconsistent with SIPA and the decisions affirming the Trustee's application of the Net Investment Method and rejection of a Time-Based Damages Adjustment. Nor have Claimants cited to any authority supporting such "credit." The Trustee's ability to "claw back" or avoid transfers does not affect the net equity analysis, especially where Claimants subject to this Motion are not the subject of avoidance actions by the Trustee.

In fact, arguments for a Tax-Based Adjustment, like those raised in the Objections, have been considered and rejected in these proceedings. In the inter-account transfer decision, this

11

Court addressed whether a claimant should receive credit for the payment of taxes on account of the "gains" realized in her BLMIS account. Citing to the Ninth Circuit's decision in *Donell v. Kowell*, the Court determined that she should not and stated "payment of taxes does not factor into the computation of fictitious profits." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41, 54 n.9 (Bankr. S.D.N.Y. 2014) (citing *Donell v. Kowell*, 533 F.3d 762, 778–79 (9th Cir. 2008), *cert. denied*, 555 U.S. 1047, 129 S. Ct. 640, 172 L. Ed. 2d 612 (2008)). In *Donnell v. Kowell*, the Ninth Circuit explained that unintended consequences would result from allowing an offset for tax payments in defense of a fraudulent transfer: (i) expenses other than tax payments would have to be credited; (ii) there would be complex problems of proof and tracing; and (iii) equity does not permit an offset where a third party, the IRS, receives a benefit without any recourse to the other investors. 533 F.3d at 779. Like in *Donnell*, this Court should reject a Tax-Based Adjustment due to the unintended consequences that would result from allowing such an adjustment to Trustee's net equity calculation.

Similarly, this Court has addressed whether the Trustee can avoid BLMIS customers' mandatory withdrawals from their individual retirement accounts as fraudulent transfers. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 729 (S.D.N.Y. 2012), supplemented (May 15, 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014). The Court acknowledged that the defendants were required to receive the withdrawals from BLMIS under the rules imposed by the Internal Revenue Code, but nevertheless held that the Trustee could avoid those payments as fraudulent transfers. *Id*. The Court reasoned that unlike the alimony example the defendants touted, the Internal Revenue Code did not require BLMIS to make the payments to the defendants, the defendants were not legally entitled to the payments, and the avoidance of the transfers would not deprive third

parties of their legal rights. *Id.* This analysis applies equally to the Trustee's determination that Claimants should not receive a Tax-Based Adjustment to their Claims. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 424 (S.D.N.Y. 2013) ("More fundamentally, the definition of net equity and the definition of claims that can provide 'value' to the customer property estate are inherently intertwined where the customer property estate is created as a priority estate intended to compensate customers only for their net-equity claims.").

5. **Fact-Based Arguments**

The Claimants' Fact-Based Arguments challenge the Trustee's application of one or more of the methodologies for calculating net equity described above to the determinations of their Claims. However, the Claimants offer no evidence to substantiate their disagreement. *See* Sehgal Decl. Ex. D. Under SIPA, the Trustee's determination of a customer claim is informed by the debtor's books and records. To the extent the customer disagrees with the Trustee's determination, it must provide new evidence and demonstrate that it is entitled to an allowable customer claim. *See* SIPA § 78fff-2(b). Here, the Trustee determined the Claims based on BLMIS's books and records. He applied the Net Investment and Inter-Account Methods to calculate the net equity for the Claims and without a Time-Based Damages or Tax-Based Adjustment. Because the Claimants have not presented affirmative evidence demonstrating the validity of their Claims, the Trustee respectfully submits that his determinations of the Claims be affirmed and the Objections overruled.

13

## NOTICE

Notice of this Motion has been provided by U.S. mail, postage prepaid, or email to (i) all Claimants listed on Exhibits A and B to the Sehgal Declaration (and their counsel) whose Objections are subject to this Motion; (ii) all parties included in the Master Service List as defined in the Order Establishing Notice Procedures (ECF No. 4560); (iii) all parties that have filed a notice of appearance in this case; (iv) the SEC; (v) the IRS; (vi) the United States Attorney for the Southern District of New York; and (vii) SIPC, pursuant to the Order Establishing Notice Procedures (ECF No. 4560). The Trustee submits that no other or further notice is required. In addition, the Trustee's pleadings filed in accordance with the schedule outlined above will be posted to the Trustee's website www.madofftrustee.com and are accessible, without charge, from that site.

No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

For the reasons stated above, the Trustee respectfully requests that the Court enter an order (i) disallowing the Claims of the net winner Claimants identified on Exhibit A to the Sehgal Declaration, (ii) affirming the Trustee's claims determinations of the Claims identified on Exhibits A and B to the Sehgal Declaration, (iii) overruling the Objections identified on Exhibits A and B to the Sehgal Declaration, and (iv) granting such other and further relief as is just.

Dated:  September 22, 2020
        New York, New York

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Jason I. Blanchard
Email: jblanchard@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the chapter 7 estate of Bernard L. Madoff*