**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-04362 (SMB) |
| Plaintiff, | |
| v. | |
| SAGE ASSOCIATES, *et al*; | |
| Defendants. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-04400 (SMB) |
| Plaintiff, | |
| v. | |
| SAGE REALTY, *et al.,* | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION *IN LIMINE* NUMBER 1 TO ADMIT THE TRIAL TESTIMONY OF FRANK DIPASCALI**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 2

I.     THE INSTANT TRIAL ............................................................................................ 2

II.    CRIMINAL TRIAL PROCEEDINGS ...................................................................... 3

III.   DIPASCALI'S CRIMINAL TRIAL TESTIMONY ................................................ 5

IV.   CROSS EXAMINATION ........................................................................................ 8

ARGUMENT ........................................................................................................................ 9

I.     DIPASCALI'S PRIOR TESTIMONY IS ADMISSIBLE UNDER FEDERAL
       RULE OF EVIDENCE 804(b)(1) ........................................................................ 10

      A.   The Criminal Defendants Are Predecessors in Interest to Defendants Here ........ 10

      B.   With Their Liberty at Stake, the Criminal Defendants Had a Similar
          Motive and Opportunity to Cross-Examine DiPascali And Did So ..................... 12

II.    DIPASCALI'S PRIOR TESTIMONY IS ADMISSIBLE UNDER FEDERAL
       RULE OF EVIDENCE 807 .................................................................................. 16

CONCLUSION .................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Annunziata v. City of New York*,
    No. 06 Civ. 7637 (SAS), 2008 WL 2229903 (S.D.N.Y. May 28, 2008).........................15, 17

*Antonucci v. Morgan Stanley Dean Witter & Co*,
    No. 02-cv-5246 (GBD) (CM), 2005 WL 627556 (S.D.N.Y. Jan. 11, 2005) ..........................13

*Apotex, Inc. v. Cephalon, Inc.*,
    No. 06-cv-2768 (MHG), 2017 WL 2362400 (E.D. Pa. May 31, 2018)..................................11

*In re Bernard L. Madoff Inv. Sec. LLC*,
    654 F.3d 229 (2d Cir. 2011).....................................................................................................3

*Deere & Co. v. FIMCO Inc.*,
    260 F. Supp. 3d 830 (W.D. Ky. 2017).....................................................................................18

*Dykes v. Raymark Indus. Inc.*,
    801 F.2d 810 (6th Cir. 1986) ..................................................................................................15

*Fed. Hous. Fin. Agency v. Merrill Lynch & Co.*,
    No. 11 Civ. 6202 (DLC), 2014 WL 798385 (S.D.N.Y. Feb. 28, 2014) ...........................13, 15

*Lloyd v. Am. Export Lines, Inc.*,
    580 F.2d 1179 (3d Cir. 1978)............................................................................................10, 13

*Pac. Emp'rs Ins.Co. v. Troy Belting & Supply Co.*,
    No. 1:11-CV-912 (TJM), 2016 WL 5477758 (N.D.N.Y. Sept. 29, 2016).............................15

*Patterson v. Cty. of Oneida*,
    375 F.3d 206 (2d Cir. 2004)....................................................................................................10

*Picard v. Nelson (In re Bernard L. Madoff)*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) ......................................................................... *passim*

*Schering Corp. v. Pfizer, Inc.*,
    189 F.3d 218 (2d Cir. 1999)...............................................................................................16, 17

*Silverstein v. Smith Barney, Inc.*,
    No. 96 Civ. 8892 (JSM), 2002 WL 1343748 (S.D.N.Y. June 18, 2002)................................16

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
    71 F.3d 119 (4th Cir. 1995) ....................................................................................................13

*United States v. DiNapoli*,
  8 F.3d 909 (2d Cir. 1993)..........................................................................................11, 13

*United States v. Ozsusamlar*,
  428 F. Supp. 2d 161 (S.D.N.Y. 2006).................................................................................11

*United States v. Panzardi–Lespier*,
  918 F.2d 313 (1st Cir. 1990)...............................................................................................17

*United States v. Salerno*,
  505 U.S. 317 (1992) (Blackmun, J., concurring)...................................................................11

*United States v. Sposito*,
  106 F.3d 1042 (1st Cir. 1997)............................................................................................16

*Walden v. City of Chicago*,
  846 F. Supp. 2d 963 (N.D. Ill. 2012)..................................................................................14

*Wright v. Kelly*,
  No. 95-CV-0688H (CEH), 1998 WL 912026 (W.D.N.Y. Oct. 16, 1998).............................14

**Statutes**

11 U.S.C. § 548.........................................................................................................................3

11 U.S.C. § 548(a)(1)(A).......................................................................................................3, 12

11 U.S.C. § 550.........................................................................................................................3

**Rules**

Fed. R. Bankr. P. 9017..............................................................................................................1

Fed. R. Evid. 102......................................................................................................................18

Fed. R. Evid. 804(b)(1)................................................................................................9, 10, 11, 13

Fed. R. Evid. 807.........................................................................................................9, 10, 16

Fed. R. Evid. 807(a).................................................................................................................16

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll*, and the chapter 7 estate of Bernard L. Madoff, respectfully submits this memorandum of law and the Declaration of Seanna R. Brown ("Brown Decl.") in support of the Trustee's motion *in limine* for entry of an order under the Federal Rules of Evidence, made applicable here by Federal Rule of Bankruptcy Procedure 9017, to admit certain testimony given by Frank DiPascali ("DiPascali") (deceased) in the trial captioned *United States v. Bonventre*, No. 10-cr-228 (LTS) (S.D.N.Y.) (the "criminal trial") and the criminal trial exhibits referenced in that testimony.

## PRELIMINARY STATEMENT

DiPascali was indicted on a series of charges related to the Ponzi scheme at BLMIS, including securities fraud, investment advisory fraud; falsifying investment adviser books and records; mail fraud; wire fraud; and money laundering. After pleading guilty, DiPascali agreed to testify for the federal government in the criminal case against five BLMIS employees involved in the Ponzi scheme. DiPascali testified for sixteen days at the criminal trial about his thirty-year tenure at BLMIS as Madoff's right-hand man. His testimony began in the 1970s when DiPascali first realized that the BLMIS investment advisory business (the "IA Business") was a fraud and ended with its demise in 2008 when massive redemption requests far exceeded any available cash on hand. Throughout his testimony, DiPascali explained how he and each of the five criminal defendants helped carry out the Ponzi scheme in their respective roles and that BLMIS did not conduct trading for customer accounts. With their liberty at stake, the criminal defendants, through their counsel, rigorously cross-examined DiPascali over ten days. DiPascali died in May 2015, before he could be sentenced on his guilty plea.

The parties dispute whether BLMIS operated a Ponzi scheme at all relevant times. As part of his proofs, the Trustee intends to offer at the upcoming trial the testimony of his expert witnesses and the criminal allocutions of DiPascali, David Kugel, Irwin Lipkin, and Bernard Madoff as evidence that BLMIS was operating a Ponzi scheme during its existence and did not conduct trading for customer accounts. The Trustee also seeks to admit DiPascali's testimony on those same issues. DiPascali's testimony admissible under the Federal Rules of Evidence as trustworthy evidence that will aid this Court in understanding the scope, breadth, and nature of Madoff's comprehensive Ponzi scheme. *See Picard v. Nelson (In re Bernard L. Madoff)*, 610 B.R. 197, 230 (Bankr. S.D.N.Y. 2019) ("*Nelson*") (admitting DiPascali's criminal trial testimony because it was "consistent with the purposes of the Federal Rules of Evidence of 'ascertaining the truth and securing a just determination.'").

DiPascali's testimony should be also be admitted so that the Court has the full evidentiary record before it. Defendants have indicated that they intend to offer Madoff's deposition testimony at the trial. In the testimony designated by Defendants, Madoff asserts that he did not start his Ponzi scheme until the 1990s and offers numerous self-serving statements that seek to deny, downplay or contradict the evidence that BLMIS was a Ponzi scheme and did not execute trades for customer accounts. DiPascali testified on many of the same matters designated by Defendants in Madoff's testimony. To the extent Madoff's testimony is admitted, the Court should also admit the testimony of DiPascali so that it has the full, balanced record on issues relating to scope and breadth of BLMIS's Ponzi scheme.

## **BACKGROUND**

## I.    **THE INSTANT TRIAL**

BLMIS ran a Ponzi scheme through its IA Business, resulting in thousands of fraudulent transfers to its customers. Some customers knew, and others did not. For those that did not, the

Trustee calculated the amounts that were withdrawn in excess of the principal invested and sued to recover those amounts transferred within the two-year period preceding the liquidation under sections 548(a)(1)(A) and 550 of the Bankruptcy Code. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 233–34 (2d Cir. 2011). In his avoidance actions, including the instant one, the Trustee alleged that BLMIS operated a Ponzi scheme, and that the funds transferred to customers were stolen monies that belonged to other BLMIS customers.[1]

Defendants are among the former BLMIS customers whom the Trustee sued. The Trustee seeks to avoid and recover $16,880,000, representing the amounts in excess of principal that BLMIS transferred to Defendants in the two-year period preceding the liquidation. Defendants argue that unlike other BLMIS customers, they are outside the Ponzi scheme because they gave specific trading directions to Madoff and he executed their directions to purchase the securities for their accounts.[2] More broadly, Defendants contend that the Trustee cannot avoid and recover the transfers sought here under sections 548 and 550 of the Bankruptcy Code.[3]

## II.    CRIMINAL TRIAL PROCEEDINGS

Following Madoff's confession to running the largest Ponzi scheme in history, the Government commenced criminal cases against him and other individuals employed by BLMIS for securities fraud, falsifying records of a broker-dealer, tax fraud, mail fraud, and wire fraud

---

[1] *See* Amended Complaint ¶¶ 1–2, 29, *Picard v. Sage Associates, et al.*, Civ. Pro. No. 11-cv-07682 (S.D.N.Y. Jan. 25, 2012), ECF No. 8; Amended Complaint ¶¶ 1–2, 29, *Picard v. Sage Realty, et al.*, Civ. Pro. No. 11-cv-07668 (S.D.N.Y. Jan. 25, 2012), ECF No. 8. The Amended Complaints were filed in the District Court when the reference was withdrawn in these adversary proceedings.

[2] *See* Answer and Affirmative Defenses, Fifty-Second, Fifty Third, and Fifty-Fourth Affirmative Defense, *Picard v. Sage Associates, et al.*, Adv. Pro. No. 10-4362 (Bankr. S.D.N.Y. Sept. 18, 2015), ECF No. 43; Answer and Affirmative Defenses, Fifty-Second, Fifty Third, and Fifty-Fourth Affirmative Defense, *Picard v. Sage Realty, et al.*, Adv. Pro. No. 10-04400 (Bankr. S.D.N.Y. Sept. 18, 2015), ECF No. 43.

[3] *See* Answer and Affirmative Defenses, Thirty-Third Affirmative Defense, *Picard v. Sage Associates, et al.*, Adv. Pro. No. 10-4362 (Bankr. S.D.N.Y. Sept. 18, 2015), ECF No. 43; Answer and Affirmative Defenses, Thirty-Third Affirmative Defense, *Picard v. Sage Realty, et al.*, Adv. Pro. No. 10-04400 (Bankr. S.D.N.Y. Sept. 18, 2015), ECF No. 43.

and related conspiracy charges where applicable.  Prior to trial, eight BLMIS principals and

employees, including DiPascali, pled guilty to their crimes.  BLMIS's accountant, David

Friehling, also pled guilty.

DiPascali pled guilty to conspiracy to commit securities fraud, investment advisory fraud,

falsifying books and records of a broker/dealer, falsifying books and records of an investment

fund, mail fraud, wire fraud and money laundering; as well as substantive counts of securities

fraud, investment adviser fraud, falsifying broker/dealer books and records; falsifying investment

adviser books and records; mail fraud; wire fraud; money laundering; perjury; and income tax

evasion.[4]  As part of his plea agreement, DiPascali cooperated with the Government in its

investigation into BLMIS and testified at the criminal trial.

Five former BLMIS employees proceeded to trial for five months beginning in October

2013: Daniel Bonventre, Annette Bongiorno, JoAnn (Jodi) Crupi, George Perez, and Jerome

O'Hara (collectively, the "criminal defendants").  Dozens of witnesses testified, including

DiPascali, and thousands of exhibits were admitted into evidence.

The Government set out to prove that the criminal defendants "enabled and supported

[Madoff's] fraud in different but essential ways.  These defendants spent every day of the last 20

years or more . . . manufacturing fictitious information, creating millions of fake documents and

keeping track of the money that they helped Bernie Madoff to steal. . . . All of these defendants

---

[4] Plea Allocution of Frank DiPascali at 18–20, 44–54, *United States v. DiPascali*, No. 09-cr-764 (RJS) (S.D.N.Y.
Aug. 11, 2009), ECF Nos. 11, 12.

were important and necessary players in Madoff's multi-billion dollar scheme, and each of them got rich as a result."[5]  All five criminal defendants were convicted in April 2014.[6]

## III.    DIPASCALI'S CRIMINAL TRIAL TESTIMONY

DiPascali testified about the specifics of the Ponzi scheme at BLMIS over the course of 16 days, with his direct testimony spanning 9 days, including re-direct, while counsel for each of the five criminal defendants cross-examined him across 10 days.  Bonventre also called DiPascali as an affirmative witness, where he was cross-examined by the Government, comprising one full day of testimony.  DiPascali provided a detailed account of his work at BLMIS during the three decades he worked there, particularly the extent and specifics of the Ponzi scheme at BLMIS and his involvement, as well as the involvement of the five criminal defendants.  The Trustee seeks to admit certain trial testimony summarized below and designated by page and line in Exhibit 1 attached to the Brown Decl. concerning the existence, scope, and duration of the BLMIS fraud, including: (1) BLMIS operations and cash management; (2) the various investment "strategies" that Madoff claimed to employ; (3) BLMIS's use of backdated trading information; and (4) BLMIS's failure to purchase or sell securities for customer accounts in the IA Business.

DiPascali began working at BLMIS in the late 1970s and continued to work there until the fraud was uncovered in December 2008.[7]  For most of his time at BLMIS, he worked on the 17th floor in the IA Business managing the split-strike BLMIS customer accounts, and was

---

[5] Trial Tr. of Oct. 16, 2013 at 57–58, *United States v. Bonventre, et al.*, No. 10-cr-228 (S.D.N.Y.).  Unless otherwise noted, all references to "Trial Tr." herein refer to the case captioned *United States v. Bonventre, et al.*, No. 10-cr-228 (S.D.N.Y.).

[6] Trial Tr. of Mar. 24, 2014 at 12166–84.

[7] *See, e.g.*, Brown Decl. Ex. 2, Testimony of Frank DiPascali, Trial Tr. of Dec. 2, 2013 at 4509–11.  The Trustee also attaches a chart containing the specific page and line designations for the testimony of DiPascali that the Trustee seeks to admit.  *See* Brown Decl. Ex. 1.

familiar with other types of accounts including options and convertible arbitrage accounts.[8] DiPascali interacted with the other IA Business employees on a daily basis and understood how each employee's job responsibilities fit into the larger fraudulent scheme at BLMIS.[9]

Concerning when the fraud began, DiPascali dated his personal knowledge of the fraud to the late 1980s although he was aware that the fraud began even earlier.[10] DiPascali detailed how, with the help of Bonventre, O'Hara, and Crupi, he fabricated Depository Trust Company ("DTC") reports that contained billions of dollars in fake treasury notes.[11] DiPascali also testified regarding how the main BLMIS bank account was used to monitor the fraudulent business and, specifically, how treasuries actually purchased by BLMIS were used in the IA Business as a cash management tool.[12] DiPascali confirmed that these treasury purchases were not for customer accounts.[13] Rather, DiPascali heeded Madoff's request to invest in treasury bills instead of short-term CDs to generate short term interest, though various brokerage accounts.[14] DiPascali testified that all stock in the IA Business was purchased using historical pricing information.[15] DiPascali testified that when creating a fictitious statement, they would use stocks everyone has heard of, such as Disney.[16] He testified multiple times: none of the

---

[8] *See, e.g.*, Trial Tr. of Dec. 2, 2013 at 4544–47, 4552, 4583–93.

[9] *See, e.g.*, *id.* at 4518–22.

[10] *See, e.g.*, *id.* at 4517–18, 4522, 4544–47, 4587–93, 4619–20.

[11] *See, e.g.*, Trial Tr. of Dec. 4, 2013 at 4769–70, 4773–78, 4780; 4796–97.

[12] *See, e.g.*, *id.* at 4931–32, 4959; Trial Tr. of Dec. 9, 2013 at 5108.

[13] *See, e.g.*, *id.* at 4803–05; *see also* Trial Tr. of Dec. 5, 2013 at 4930–32.

[14] *See, e.g.*, *id.* at 4960–61.

[15] Trial Tr. of Dec. 2, 2013, at 4595-96; Trial Tr. of Dec. 5, 2013 at 4934.

[16] *See, e.g.*, Trial Tr. of Dec. 2, 2013 at 4659.

trades in the IA Business were real;[17] no securities were ever purchased;[18] and no clients ever

actually had purchased securities in their account.[19]

Regarding convertible arbitrage trading specifically, DiPascali testified that beginning in

the 1970s,  he observed two BLMIS employees, David Kugel and Annette Bongiorno,

collaborate to create fictitious convertible arbitrage trades that were inserted into BLMIS

customer account statements and trade confirmations.[20]  DiPascali recounted that Bongiorno

would provide Kugel with illustrations of fictitious convertible arbitrage trades, including the

amount of funds to be traded for a certain amount of money.[21]  DiPascali testified that Kugel

used data from his real convertible arbitrage trades he made as a market maker in the trading

room and historical trade information gathered from backdated copies of the Wall Street Journal

to create a pricing mechanism that corresponded to the fictious trade amounts that Bongiorno

dictated and later entered into customer accounts.[22]  DiPascali further attested that Kugel

sometimes took these materials home with him at night to construct the fictitious trades after

hours.[23]

DiPascali distinguished Kugel's real trades in the BLMIS trading room used by the

market making and proprietary trading desks from the fictitious trades fabricated by Bongiorno

and others in the IA Business, describing the real trades as more complex and "entirely

---

[17] Trial Tr. of Dec. 5, 2013 at 4917.

[18] *Id.* at 4937.

[19] *Id.* at 4939.

[20] *See e.g.*, Trial Tr. of Dec. 2, 2013 at 4545–48.

[21] *See e.g.*, Trial Tr. of Dec. 4, 2013 at 4681.

[22] *See e.g.*, *id.* at 4681–83; Trial Tr. of Dec. 5, 2013 at 4916-17; Trial Tr. of Dec. 12, 2013 at 5741–42.

[23] *See e.g.*, *id.* at 4681–82.

different."[24]  He explained that the BLMIS arbitrage business of the market making desk was

conducted in an "over the counter environment" where trades required current quotations,

extensive activity, communication between the trading room and outside world, and "tons of

paper," which he did not see coming from Bongiorno's side of the business.[25]

## IV.    **CROSS EXAMINATION**

DiPascali was examined on cross and/or re-cross by counsel for each criminal

defendant.[26]  Several defendants cross-examined DiPascali on his decision to cooperate with the

Government and the attendant benefits of doing so.[27]  Bongiorno's counsel focused on elements

of the Ponzi scheme, including whether Bongiorno was inputting historical data into customer

statements at Madoff's direction,[28] and challenging DiPascali's testimony that the customer

accounts were given pre-ordained rates of return.[29]  O'Hara's counsel cross-examined DiPascali

about whether O'Hara had reservations about creating certain programming that was used to

perpetrate the fraud.[30]  Crupi's counsel engaged in a lengthy cross examination of DiPascali,

including Crupi's involvement in the fabrication of BLMIS reports submitted to regulators.[31]

The cross examination sought to cast doubt on DiPascali's characterization of the mechanics of

the fraud and how it was carried out.

---

[24] *See e.g.*, Trial Tr. of Dec. 4, 2013 at 4682.

[25] See e.g., *id*. at 4682–87.

[26] *See generally* Trial Tr. of Dec. 11, 2013; Trial Tr. of Dec. 12, 2013; Trial Tr. of Dec. 16, 2013; Trial Tr. of Dec. 17, 2013; Trial Tr. of Dec. 18, 2013; Trial Tr. of Dec. 19, 2013; Trial Tr. of Jan. 8, 2014; Trial Tr. of Jan. 9, 2014; Trial Tr. of Jan. 13, 2014; Trial Tr. of Jan. 15, 2014.

[27] *See generally* Trial Tr. of Dec. 12, 2013 at 5695–5772; Trial Tr. of Dec. 17, 2013 at 6085–6100.

[28] *See, e.g.*, Trial Tr. of Dec. 12, 2013 at 5741–45.

[29] *See, e.g.*, Trial Tr. of Dec. 16, 2013 at 5944.

[30] *See, e.g.*, Trial Tr. of Dec. 17, 2013 at 6116–19.

[31] *See, e.g.*, Trial Tr. of Jan. 8, 2014 at 6637–41.

As stated above, attached as Exhibit 1 to the Brown Decl. is a chart setting out the page

and line designations for the testimony of DiPascali that the Trustee seeks to admit.  The Trustee

notified Defendants of his intention to rely upon the criminal trial testimony in his amended

initial disclosures provided to Defendants in November 2018 and the transcripts have been

available to Defendants in E-Data Room 1 since 2016.

## ARGUMENT

In *Nelson,* this Court admitted the portion of DiPascali testimony regarding treasury bills

under Federal Rule of Evidence 807.[32]  *Nelson*, 610 B.R. at 227.  However, this Court held that

the testimony was not admissible under Federal Rule of Evidence 804(b)(1) because the criminal

trial defendants did not have motive to examine DiPascali regarding treasury bills.  *Id.* at 228

("[The criminal defendants] had no motive to show that the T-Bill transactions listed in the

customer statements were real even if the equity and options trades were phony; the latter were a

sufficient predicate to prove the criminal charges.").

Unlike *Nelson*, the instant case does not focus solely on the purchase of treasury bills, but

on Defendants' contention that this Court's previous findings on the scope and the existence of

the Ponzi scheme do not apply to them.  In response, the Trustee submits the portion of

DiPascali's testimony concerning the scope and breadth of the Ponzi scheme:  specifically,

whether the fraudulent activity encompassed the entire IA Business, and whether the fraud

included long-standing customers such as Defendants.  The other criminal trial defendants were

---

[32] There, the Trustee initially moved to admit the criminal trial testimony of DiPascali on several points.  *See* Memorandum of Law in Support of Trustee's Motion *In Limine* Number 2 to Admit the Trial Testimony of Frank DiPascali, *Picard v. Nelson*, Adv. Pro. No. 10-04377 (Bankr. S.D.N.Y. Apr. 24, 2019), ECF No. 136.  After the trial was held in the *Nelson* adversary proceedings, the Trustee amended his request to admit only DiPascali's testimony as it related to treasury bills.  *See* Supplemental Memorandum of Law in Support of Trustee's Motion *In Limine* Number 2 to Admit the Trial Testimony of Frank DiPascali, *Picard v. Nelson*, Adv. Pro. No. 10-04377 (Bankr. S.D.N.Y. Apr. 24, 2019), ECF No. 163.

very motivated and in fact worked to discredit DiPascscali's testimony on the timing and scope

of the Ponzi scheme.[33]  DiPascali's testimony is admissible under Federal Rules of Evidence

804(b)(1) and 807.

## I.    DIPASCALI'S PRIOR TESTIMONY IS ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 804(b)(1)

DiPascali's criminal trial testimony is admissible under Federal Rule of Evidence

804(b)(1).  Testimony in a prior proceeding is hearsay when offered for the truth of the matter

asserted.  *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219–20 (2d Cir. 2004) ("Testimony of a

nonparty witness that was given at a prior hearing is, when offered for its truth, hearsay.").  Prior

trial testimony is admissible, however, under Federal Rule of Evidence 804(b)(1) when offered

against a party whose "predecessor in interest" had an opportunity and similar motive to develop

that testimony on direct, cross, or redirect examination and that witness is unavailable to testify a

civil case.  DiPascali is deceased, and the other elements of Federal Rule of Evidence 804(b)(1)

are satisfied here.

### A.    The Criminal Defendants Are Predecessors in Interest to Defendants Here

The criminal defendants are the predecessors in interest to Defendants in this case.  In

civil cases, the term "predecessor in interest" means a party that has a similar motive and

opportunity to cross-examine.  *See Lloyd v. Am. Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir.

1978) ("the previous party having like motive to develop the testimony about the same material

facts is, in the final analysis, a predecessor in interest to the present party.").

---

[33] Trial Tr. of Dec 16, 2020 at 5797-98 (asking whether DiPascali's strategy in his account was different than Biongiorno's strategy); *id.* at 5814-15 (questioning DiPascali's testimony about when the fraud began); *id* at 5824 (questioning whether DiPascali was ever in Bongiorno's presence when she received requests for backdated trades); *id.* at 5842 (questioning why Bongiorno's accounts did not have commissions charged but she told customers that trading occurred in the trading room).

"Similar" does not mean identical. *United States v. Salerno*, 505 U.S. 317, 326 (1992)

(Blackmun, J., concurring). To be "similar," the motives to develop the testimony should be "of

substantially similar intensity to prove (or disprove) the same side of a substantially similar

issue." *United States v. DiNapoli*, 8 F.3d 909, 914–15 (2d Cir. 1993); *see also Apotex, Inc. v.

Cephalon, Inc.*, No. 06-cv-2768 (MHG), 2017 WL 2362400, at *8 (E.D. Pa. May 31, 2018)

(admitting prior testimony from regulatory hearings in a civil case where both parties challenged

the same allegedly unlawful conduct and "those challenged involved a substantial identity of

issues."). Where the two proceedings in question under Rule 804(b)(1) "are trials and the same

matter is seriously disputed at both trials, it will normally be the case that the side opposing the

version of a witness at the first trial had a motive to develop that witness's testimony similar to

the motive at the second trial." *DiNapoli*, 8 F.3d at 912–13 (2d Cir. 1993). "Courts take a

realistically generous approach and find a predecessor in interest where the previous party had

like motive to develop the testimony about the same material facts." *Nelson*, 610 B.R. at 227

(internal quotations omitted).

The criminal defendants are predecessors in interest here because the duration and scope

of the Ponzi scheme was common and central to both trials. *See, e.g.*, *United States v.

Ozsusamlar*, 428 F. Supp. 2d 161, 180 (S.D.N.Y. 2006) (admitting prior sworn testimony where

sufficient similarity of issues was established). The criminal trial of the five BLMIS employees

involved substantially the same facts and issues as the litigation against Defendants. At the

criminal trial, the Government sought to prove that the five BLMIS employees committed the

crimes charged, all of which stemmed from BLMIS's decades-long Ponzi scheme. DiPascali

testified that fake trading had been going on at BLMIS for "as long as I can remember,"[34] and

---

[34] Trial Tr. of Dec. 2, 2013 at 4517.

11

that trading in the accounts Bongiorno managed since the 1970s was all fictitious.[35]  DiPascali

also testified regarding his work with certain customer accounts in the 1980s, confirmed that no

trading was happening in those accounts and testifying that he looked up historical prices for the

purported options trades.[36]  DiPascali testified that he had "no doubt" that the trading in the IA

Business was "completely fake"[37] and that he "was committing a crime for 30-odd years."[38]

When asked, "What are people going to learn about that 30 years of fake trading that you were

working on?," DiPascali averred, "That it was a Ponzi scheme."[39]

Similarly, at the upcoming trial, the Trustee will also provide evidence regarding the

existence and duration of the BLMIS Ponzi scheme as part of his proofs that BLMIS made the

transfers within the two-year period preceding the liquidation with intent to hinder, delay or

defraud creditors under section 548(a)(1)(A) and that the transfers of fictitious profits made to

Defendants are recoverable.  This proof that BLMIS was operating a Ponzi scheme will establish

that the transfers were made with the requisite intent and that the amount of fraudulent transfers

that the Trustee seeks to recover are correctly calculated.   Each of these issues to be tried are

grounded in the nature, breadth, and scope of the Ponzi scheme that was also at the heart of the

criminal trial.

**B.      With Their Liberty at Stake, the Criminal Defendants Had a Similar Motive
and Opportunity to Cross-Examine DiPascali And Did So**

Each criminal defendant had the motive and opportunity to—and actually did—cross-

examine DiPascali at length.  Courts have adopted a "realistically generous approach over one

---

[35] *Id*. at 4544–48, 4592–93.

[36] *Id*. at 4589–90, 4619–20.

[37] Trial Tr. of Dec. 10, 2013 at 5423.

[38] *Id*.

[39] *Id*. at 5425.

that is formalistically grudging, admitting testimony where it appears in the former suit a party

having like motive to cross-examine about the same matters as the present party would have, was

accorded an adequate opportunity for such examination." *Fed. Hous. Fin. Agency v. Merrill*

*Lynch & Co.*, No. 11 Civ. 6202 (DLC), 2014 WL 798385, at *1 (S.D.N.Y. Feb. 28, 2014)

(quoting *Lloyd v. Am. Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir.1978)); *see also*

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 127 (4th Cir. 1995)

(prior testimony admissible because motive to cross-examine was "similar" and need not be

"identical").[40]  Determining whether two parties share a "similar" motive depends on whether the

motives to develop the testimony are "of substantially similar intensity to prove (or disprove) the

same side of a substantially similar issue." *United States v. DiNapoli*, 8 F. 3d 909, 914–15 (2d

Cir.1993); *see Fed. Hous. Fin. Agency*, 2014 WL 798385, at *1.

DiPascali was thoroughly cross-examined by five different defense attorneys over ten

days.  The criminal defendants relentlessly challenged DiPascali's credibility, including his

agreement to cooperate with the Government in exchange for leniency during sentencing.[41]

DiPascali was cross-examined on the start date of the fraud and was subjected to numerous

questions about the veracity of his testimony on the mechanics of the fraud.[42]  The cross

examination and re-cross examination spanned many days:

| Date | Exam (defendant) |
| --- | --- |
| 12/11/2013 | Cross (Perez) |
| 12/12/2013 | Cross (Perez) |
| 12/12/2013 | Cross (Bongiorno) |

---

[40] *Antonucci v. Morgan Stanley Dean Witter & Co*, No. 02-cv-5246 (GBD) (CM), 2005 WL 627556, at *4 (S.D.N.Y. Jan. 11, 2005) ("[Rule 804(b)(1)] does not require that the opposing party actually cross-examine the witness; it is instead enough that the opposing party be given a meaningful opportunity to cross-examine if it wishes to do so.")).

[41] *See, e.g.*, Trial Tr. of Dec. 12, 2013 at 5701–15; Trial Tr. of Dec. 17, 2013 at 6085–86.

[42] *See, e.g.*, Trial Tr. of Dec. 11, 2013 at 5527 ("Why did you choose to tell the judge that it was from at least the early 1990s when, in fact, it was from the late '70s, some ten to 15 years earlier than that?").

| Date | Exam (defendant) |
|---|---|
| 12/16/2013 | Cross (Bongiorno) |
| 12/17/2013 | Cross (Bongiorno) |
| 12/17/2013 | Cross (O'Hara) |
| 12/18/2013 | Cross (O'Hara) |
| 12/18/2013 | Cross (Crupi) |
| 12/19/2013 | Cross (Crupi) |
| 1/8/2014 | Cross (Crupi) |
| 1/8/2014 | Cross (Bonventre) |
| 1/9/2014 | Cross (Bonventre) |
| 1/13/2014 | Re-cross (Perez) |
| 1/13/2014 | Re-cross (Bongiorno) |
| 1/13/2014 | Re-cross (O'Hara) |
| 1/15/2014 | Re-cross (O'Hara) |
| 1/15/2014 | Re-cross (Crupi) |
| 1/15/2014 | Re-cross (Bonventre) |

With their liberty at stake, each criminal defendant had substantial motive to thoroughly cross-examine DiPascali. *See Wright v. Kelly*, No. 95-CV-0688H (CEH), 1998 WL 912026, at *6 (W.D.N.Y. Oct. 16, 1998) ("Because it was a criminal trial, the stakes were as high if not higher than the civil case, and the prosecutor had a very strong motive to develop the testimony."); *see also Walden v. City of Chicago*, 846 F. Supp. 2d 963, 972 (N.D. Ill. 2012) (noting that plaintiff had significant motive to develop testimony at his criminal trial "because he faced a lengthy prison sentence if convicted").

In *Nelson,* this court held that the criminal defendants "had no motive to show that the T-Bill transactions listed in the customer statements were real even if the equity and options trades were phony; the latter were a sufficient predicate to prove the criminal charges." 610 B.R. at 228. Here, Defendants argue that all of their equity trades were real. The other criminal defendants had a motive to show that the Ponzi scheme did not exist for the Defendants, as it could have been used to show that they did not have knowledge of the fraud, or that they were duped into believing that the other trades were also real. Yet, Bongiorno, who handled Defendants' accounts, focused on discrediting DiPascali's credibility and direct knowledge of

14

Bongiorno's actions. *See, e.g.*, *supra* at n.45. No one testified that real trading happened in Defendants' accounts.

In light of the robust cross examination that occurred, this Court can conclude that the criminal defendants had motive and opportunity to challenge DiPascali's testimony on the same material facts at issue in this litigation. Should Defendants disagree, they must explain precisely why the motive and opportunity for the criminal defendants should be considered inadequate—in essence, particularize what additional cross examination they could have performed. *See Fed. Hous. Fin. Agency*, 2014 WL 798385, at *1 ("When objecting to the admissibility of such [testimony], the opposing party should explain as clearly as possible to the judge precisely why the motive and opportunity of the [party] in the first case was not adequate to develop the cross-examination which the instant party would have presented to the witness.") (quoting *Dykes v. Raymark Indus. Inc.*, 801 F.2d 810, 815–17 (6th Cir. 1986)).

Because this Court will be the trier of fact, there are no concerns about juror confusion or potential prejudice. The Court has considerable discretion to admit the proffered testimony at trial and determine the appropriate weight at that time.[43] *See Pac. Emp'rs Ins.Co. v. Troy Belting & Supply Co.*, No. 1:11-CV-912 (TJM), 2016 WL 5477758, at *4 (N.D.N.Y. Sept. 29, 2016); *Annunziata v. City of New York*, No. 06 Civ. 7637 (SAS), 2008 WL 2229903 (S.D.N.Y. May 28, 2008).

---

[43] The Trustee also notes that the criminal trial exhibits that are in the Trustee's possession have been in E-Data Room 1 since 2016. The Trustee is not moving to admit the underlying documents referred to during DiPascali's testimony into evidence at this trial but will include them on his forthcoming exhibit list for identification purposes. The Trustee will submit copies of the exhibits for consideration herein upon the Court's request.

## II.    DIPASCALI'S PRIOR TESTIMONY IS ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 807

DiPascali's testimony should also be admitted because it falls under the "residual" exception of the hearsay rule. Fed. R. Evid. 807(a).  The testimony: (i) has equivalent circumstantial guarantees of trustworthiness; (ii) is offered as evidence of a material fact; (iii) is more probative on the point for which it is offered than any other evidence the proponent can obtain through reasonable efforts; and (iv) admitting it will best serve the purposes of the Rules of Evidence and the interests of justice.  Fed. R. Evid. 807(a); *see Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 231 (2d Cir. 1999); *Silverstein v. Smith Barney, Inc.*, No. 96 Civ. 8892 (JSM), 2002 WL 1343748, at *3 (S.D.N.Y. June 18, 2002); *Nelson*, 610 B.R. at 228.  The Trustee identified DiPascali in his amended initial disclosures provided to Defendants in November 2018 as a witness with knowledge.  The relevance of the criminal indictments, pleas, and trial proceedings to the Trustee's claims has been evident since the complaints were filed in these adversary proceedings.  *United States v. Sposito*, 106 F.3d 1042, 1047 (1st Cir. 1997) (stating that Rule 807 "requires only that the statement be offered as evidence of a material fact. It need not itself be a material fact."). DiPascali's testimony supplements his plea allocution and is a more probative firsthand account than other evidence that could be obtained through reasonable means.

As noted, pursuant to Federal Rule of Evidence 807, this Court admitted DiPascali's testimony on treasury bills in *Nelson*, concluding that the Trustee established all of the elements under Federal Rule of Evidence 807.  610 B.R. at 227 & 228–30.  "The Court has already concluded that he had no motive to lie when he allocuted, . . .  he never recanted his testimony and his unavailability was due to his death rather than to any attempt to absent himself to avoid testifying at the Defendants' trial in these adversary proceedings."  *Id.* at 229.  The Court looked

to a number of factors, including, " (1) the character of the witness for truthfulness and honesty; (2) whether the testimony was given voluntarily, under oath, subject to cross-examination, and a penalty for perjury; (3) the witness's relationship with both the defendant and the government; (4) the witness's motivation to testify; (5) whether the witness ever recanted the testimony; (6) the existence of corroborating evidence; and (7) the reasons for the witness's unavailability." *Id.*; *see also Schering Corp.*, 189 F. 3d at 233 (1999) ("Cross-examination serves to test the declarant's sincerity, narrative ability, perception, and memory.")  (citation omitted); *Annunziata v. City of New York*, No. 06 CIV. 7637 (SAS), 2008 WL 2229903, at *11 (S.D.N.Y. May 28, 2008) ("[T]he formalities of a trial, including the oath given to witnesses, the presence of a judge, and the transcription of testimony by a court reporter, provide sufficient guarantees of trustworthiness." ); *see also United States v. Panzardi–Lespier*, 918 F.2d 313, 316 (1st Cir. 1990) ("Courts have consistently provided that former testimony is trustworthy when it is given under oath . . .[and when] the witness testified about matters within his personal knowledge.").

The same analysis that this Court undertook in *Nelson* is applicable here. DiPascali was cross-examined by all five of the criminal defendants' counsel.  DiPascali's testimony was scrutinized and evaluated by a jury when they reached their verdict to convict all five defendants. In *Nelson,* the Court also credited the corroboration of the DiPascali testimony by the Trustee's expert when assessing its trustworthiness.  610 B.R. at 229.  Here, as in *Nelson*, the Trustee's expert will corroborate the relevant facts in DiPascali's testimony.

Finally, the interests of justice will be served by admitting the testimony.  While the Trustee intended to seek DiPascali's deposition (and trial testimony) in the BLMIS liquidation, DiPascali could not testify in any other proceedings until such time as the criminal process was completed.  He passed away in May 2015, one and a half years before the criminal convictions

became final in January 2017.  Thus, his criminal trial testimony is the only record of his

testimony on these issues and has been available to Defendants in E-Data Room 1 since 2016.

*See Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 844 (W.D. Ky. 2017) (notice requirement

met more than 1 month before bench trial, where there was no issue with the opposing party

obtaining the evidence).  Defendants have offered Madoff's testimony that covers many of the

same issues as DiPascali's testimony, and the Court should have the aid of the full evidentiary

record before it as it relates to the breadth, nature, and scope of BLMIS's Ponzi scheme.

DiPascali's testimony is admissible under the residual exception to the hearsay rule.  In

admitting his testimony in *Nelson*, this Court concluded that "DiPascali's testimony is consistent

with the purposes of the Federal Rules of Evidence of 'ascertaining the truth and securing a just

determination.' FED. R. EVID. 102."  610 B.R. at 230.

## **CONCLUSION**

The Trustee respectfully requests that the Court admit DiPascali's prior testimony

identified on Exhibit 1 and the criminal trial exhibits in Exhibits 9 through 23 into evidence at

trial.

Dated: October 14, 2020          /s/ *Seanna R. Brown*
      New York, New York         Baker & Hostetler LLP
                                      45 Rockefeller Plaza
                                      New York, New York 10111
                                      Telephone: (212) 589-4200
                                      Facsimile: (212) 589-4201
                                      David J. Sheehan
                                      Email: dsheehan@bakerlaw.com
                                      Nicholas J. Cremona
                                      Email: ncremona@bakerlaw.com
                                      Seanna R. Brown
                                      Email: sbrown@bakerlaw.com
                                      Lauren T. Attard
                                      Email:  lattard@bakerlaw.com
                                      Michael A. Sabella
                                      Email: msabella@bakerlaw.com
                                      Ariana Dindiyal
                                      Email: adindiyal@bakerlaw.com

                                      *Attorneys for Irving H. Picard, Trustee for*
                                      *the Substantively Consolidated SIPA*
                                      *Liquidation of Bernard L. Madoff Investment*
                                      *Securities LLC and Bernard L. Madoff*