**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-04390 (CGM) |
| v. | |
| BAM L.P., MICHAEL MANN, and MERYL MANN, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF**
**SUMMARY JUDGMENT MOTION FOR PREJUDGMENT INTEREST**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .........................................................................................................2

    A.    Defendants' BLMIS Accounts, Customer Claims And Objections.......................2

    B.    The Adversary Proceeding and First Motion to Withdraw the Reference..............3

    C.    Motion To Withdraw Objections, Second Motion To Withdraw the
        Reference, Motion for Stay, and Motion For Leave ...............................................4

    D.    Summary Judgment ...............................................................................................6

ARGUMENT .............................................................................................................7

II.    THIS COURT HAS BROAD DISCRETION IN DECIDING WHETHER TO
      AWARD PREJUDGMENT INTEREST AND IN SETTING THE INTEREST
      RATE ........................................................................................................7

    A.    The *Wickham* Factors Determine Whether To Award Prejudgment Interest .........8

    B.    Wide Discretion In Selecting Appropriate Interest Rate And Date Of
        Accrual..................................................................................................................9

III.    THE TRUSTEE IS ENTITLED TO PREJUDGMENT INTEREST ...............................11

    A.    The Need To Fully Compensate The Estate For Actual Damages Suffered
        Requires An Award Of Prejudgment Interest.........................................................11

    B.    The Equities Favor An Award Of Prejudgment Interest ........................................15

        1.    Defendants' Good Faith Does Not Preclude Prejudgment Interest
            Award...............................................................................................16

        2.    It Is Indisputable Defendants Are Liable For The Two-Year
            Transfers ..........................................................................................17

        3.    Defendants Should Not Receive the Benefit of Their Own Delays...........18

        4.    Awarding Prejudgment Interest Promotes Settlement And Reduces
            Delays ..............................................................................................20

IV.    THE COURT SHOULD AWARD PREJUDGMENT INTEREST FROM THE
      DATE OF THE FILED COMPLAINT ...........................................................................21

V.    THE COURT SHOULD AWARD PREJUDGMENT INTEREST AT THE RATE
OF NINE PERCENT PER YEAR ...................................................................................22

CONCLUSION ........................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Kovac (In re All Am. Petrol. Corp.)*,
   259 B.R. 6 (Bankr. E.D.N.Y. 2001)................................................................8, 9, 15

*Alfano v. CIGNA Life Ins. Co. of New York*,
   No. 07 Civ. 9661 (GEL), 2009 WL 890626 (S.D.N.Y. Apr. 2, 2009) .......................10, 12, 24

*Ames Merch. Corp. v. Cellmark Paper, Inc. (In re Ames Dept. Stores, Inc.)*,
   450 B.R. 24 (Bankr. S.D.N.Y. 2011, *judgment aff'd*, 470 B.R. 280 (S.D.N.Y.
   2012), *aff'd*, 506 F. App'x. 70 (2d Cir. 2012), *cert. denied*, 571 U.S. 819
   (2013)..........................................................................................................14

*Ball v. Soundview Cap. Mgmt. Ltd. (In re Soundview Elite Ltd.)*,
   594 B.R. 108 (Bankr. S.D.N.Y. 2018)...................................................................7

*Bruno Mach. Corp. v. Troy Die Cutting Co., LLC (In re Bruno Mach. Corp.)*,
   435 B.R. 819 (Bankr. N.D.N.Y. 2010) ............................................................10, 22

*Citibank, N.A. v. Barclays Bank, PLC*,
   28 F. Supp. 3d 174 (S.D.N.Y. 2013)................................................................22, 23

*CNB Int'l, Inc. v. Kelleher (In re CNB Int'l)*,
   393 B.R. 306 (Bankr. W.D.N.Y. 2008), *aff'd on other grounds*, *In re CNB*
   *Int'l, Inc.,* 440 B.R. 31 (W.D.N.Y. 2010) .............................................................8

*Davis v. Binswanger Corp. Servs., Inc. (In re Quebecor Worlds (USA) Inc.)*,
   No. 08-10152 (SHL), 2013 WL 5365404 (Bankr. S.D.N.Y. Sept. 25, 2013) ....................12

*Deng v. 278 Gramercy Park Grp. LLC*,
   No. 12 Civ. 7803 (DLC) (JLC), 2014 WL 1016853 (S.D.N.Y. Mar. 14, 2014) .....................9

*Dow Chem. Pac. Ltd. v. Rascator Mar., S.A.*,
   640 F. Supp. 882 (S.D.N.Y. 1986) ...................................................................16

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
   689 F.Supp.2d 585 (S.D.N.Y. 2010)...................................................................9

*First Nat'l Bank of Boston v. Kors, Inc. (In re Kors, Inc.)*,
   15 B.R. 444 (Bankr. D. Vt. 1981).....................................................................7

*In re FKF 3, LLC*,
   No. 13 Civ. 3601 (JCM), 2018 WL 5292131 (S.D.N.Y. Oct. 24, 2018)...........................10, 20

*Geltzer v. Artists Mktg. Corp. (In re Cassandra Grp.)*,
     338 B.R. 583 (Bankr. S.D.N.Y. 2006) ...............................................................................9, 21

*Gen. Facilities, Inc. v. Nat'l Marine Serv., Inc.*,
     664 F.2d 672 (8th Cir. 1981) ...................................................................................................20

*Gen. Motors Corp. v. Devex Corp.*,
     461 U.S. 648 (1983) ..................................................................................................................16

*Gill v. Maddalena (In re Maddalena)*,
     176 B.R. 551 (C.D. Cal. 1995) ...........................................................................................16, 21

*Gust, Inc. v. Alphacap Ventures, LLC*,
     No. 15CV6192 (DLC), 2017 WL 2875642 (S.D.N.Y. July 6, 2017), *rev'd on
     other grounds*, 905 F.3d 1321 (Fed. Cir. 2018) .......................................................................23

*Hirsch v. Steinberg (In re Colonial Realty Co.)*,
     226 B.R. 513 (Bankr. Conn. 1998) ...........................................................................................20

*Jones v. UNUM Life Ins. Co. of America*,
     223 F.3d 130 (2d Cir. 2000)......................................................................................................23

*Kittay v. Korff (In re Palermo)*,
     739 F.3d 99 (2d Cir. 2014)..........................................................................................................7

*In re Livent, Inc.*,
     360 F. Supp. 2d 568 (S.D.N.Y. 2005)...................................................................................9, 24

*Lodges 743 and 1746 v. United Aircraft Corp.*,
     534 F.2d 422 (2d Cir. 1976)......................................................................................................16

*Lyman Com. Sols., Inc. v. Lung*,
     No. 12 Civ. 4398 TPG, 2015 WL 4545089 (S.D.N.Y. July 16, 2015)......................................9

*In re Manning*,
     No. BR 20-20482-PRW, 2020 WL 5083325 (Bankr. Ct. S.D.N.Y. Aug. 27,
     2020) ............................................................................................................................................7

*McHale v. Boulder Cap. LLC (In re The 1031 Tax Grp., LLC)*,
     439 B.R. 84 (Bankr. S.D.N.Y 2010) ............................................................................. *passim*

*Moore v. CapitalCare, Inc.*,
     461 F.3d 1 (D.C. Cir. 2006) ......................................................................................................20

*Moran v. Goldfarb*,
     No. 09 Civ. 7667 (RJS), 2012 WL 2930210 (S.D.N.Y. July 16, 2012) ......................15, 16, 21

*New York City Dist. Council of Carpenters v. Tried N True Interiors LLC*,
No. 20 CIV. 00051 (LGS), 2020 WL 1809323 (S.D.N.Y. Apr. 9, 2020) ..............................23

*Newbro v. Freed*,
409 F. Supp. 2d 386 (S.D.N.Y. 2006) ................................................................................14, 21

*Oden v. Schwartz*,
71 A.3d 438 (R.I. 2013) ...........................................................................................................23

*Pereira v. Priv. Brands, Inc. (In re Harvard Knitwear, Inc.)*,
193 B.R. 398 (Bankr. E.D.N.Y. 1996) .....................................................................................22

*Pereira v. United Parcel Serv. of America, Inc. (In re Waterford Wedgwood USA, Inc.)*,
508 B.R. 821 (Bankr. S.D.N.Y. 2014) ...............................................................................12, 16

*Picard v. BAM L.P.*,
597 B.R. 466 (Bankr. S.D.N.Y. 2019) .......................................................................................6

*Picard v. BAM L.P.*,
612 B.R. 257 (S.D.N.Y. 2020) ...................................................................................................6

*Picard v. BAM L.P.*,
608 B.R. 165 (Bankr. S.D.N.Y. 2019) .................................................................6, 17, 18, 21

*Picard v. Cohen*,
550 B.R. 241 (Bankr. S.D.N.Y. 2016) .....................................................................................19

*Picard v. Greiff*,
476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom.* 773 F.3d 411 (2d Cir. 2014) ..........4, 17, 18, 19

*Picard v. Lowrey*,
Adv. Pro. No. 10-04387 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. Mar. 22, 2018), *adopted by* 596 B.R. 451 (S.D.N.Y. 2019), *aff'd sub nom.* 2020 WL 5666677 (2d Cir. Sept. 24, 2020) ........................................................................... *passim*

*Picard v. Nelson*,
610 B.R. 197 (Bankr. S.D.N.Y. 2019) .....................................................................................19

*S.E.C. v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996) ....................................................................................................10

*Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*,
380 B.R. 324 (Bankr. S.D.N.Y. 2008) .......................................................................................7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
531 B.R. 439 (Bankr. S.D.N.Y. 2015) .....................................................................................19

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*),
    499 B.R. 416 (S.D.N.Y. 2013) ................................................................12, 13, 18, 19

*Stanford Square L.L.C. v. Nomura Asset Cap. Corp.*,
    232 F. Supp. 2d 289 (S.D.N.Y. 2002) ...................................................................14

*Strobl v. New York Mercantile Exch.*,
    590 F. Supp. 875 (S.D.N.Y. 1984) .......................................................................18

*West Virginia v. United States*,
    479 U.S. 305 (1987) .............................................................................................14

*Wickham Contracting Co., Inc. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers,*
    *AFL–CIO,*
    955 F.2d 831 (2d Cir. 1992) ......................................................................... *passim*

## Statutes

11 U.S.C. § 105(a) ................................................................................................14

11 U.S.C. § 548(a) ..................................................................................................3

11 U.S.C. § 548(a)(1)(A) ....................................................................................6, 17

11 U.S.C. § 548(c) .......................................................................................18, 19, 20

11 U.S.C. § 550(a)(1) ..............................................................................................3

11 U.S.C. § 551 .......................................................................................................3

11 U.S.C. § 1142(b) ..............................................................................................14

15 U.S.C. § 78fff-1(a) ...........................................................................................13

15 U.S.C. § 78fff-2(c)(3) .....................................................................................6, 11

15 U.S.C. § 78fff(b) ..........................................................................................12, 23

26 U.S.C. § 6621 ..................................................................................................10

28 U.S.C. § 1961 ..................................................................................................10

## Rules

Fed. R. Bankr. P. 3006 ...........................................................................................4

Fed. R. Bankr. P. 5011(c) .......................................................................................5

Fed. R. Bankr. P. 7056 ...........................................................................................1

Fed. R. Bankr. P. 7056-1 ................................................................................................1

Fed. R. Civ. P. 41 .........................................................................................................4

Fed. R. Civ. P. 41(a)(1)(A)(ii) ....................................................................................14

Fed. R. Civ. P. 56 .........................................................................................................1

Fed. R. Civ. P. 56(g) ....................................................................................................6

Fed. R. Evid. 201 ..........................................................................................................7

Fed. R. Evid. 201(c) ......................................................................................................7

N.Y. C.P.L.R. § 5001(a) ..............................................................................................22

N.Y. C.P.L.R. § 5001(b) ................................................................................................9

N.Y. C.P.L.R. § 5004 ..............................................................................................9, 22

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff,

respectfully submits this memorandum of law in support of the Trustee's motion (the "Motion")

under Federal Rule of Civil Procedure 56 (made applicable by Rule 7056 of the Federal Rules of

Bankruptcy Procedure and Southern District of New York Local Bankruptcy Rule 7056-1), for

summary judgment as to prejudgment interest against defendants BAM L.P., Michael Mann, and

Meryl Mann (the "Defendants").  The facts underlying this Motion are fully set forth in the

Trustee's Statement of Material Facts Pursuant to Local Rule 7056-1 ("Stmt.") and the

Declaration of Nicholas J. Cremona ("Cremona Decl.").

## PRELIMINARY STATEMENT

Defendants have been on notice since December 11, 2008 that Madoff conducted a

massive fraud through BLMIS in New York causing its collapse and the resulting SIPA

proceeding.  They have been in possession of fictitious profits since that time and have refused to

return the transfers they received to the detriment of net loser customers—those customers who

lost their principal because of Madoff's fraud.  Despite the Trustee's initiation and resolution of

hundreds of lawsuits seeking to recover avoidable transfers, Defendants have undertaken efforts

spanning almost ten years to delay the resolution of the Trustee's avoidance action, thus harming

the net loser customers for whom the Trustee is seeking to make whole by the return of  the

transfers of fictitious profits with interest from Defendants.

The award of prejudgment interest is warranted in connection with the recovery of

avoided fraudulent transfers.  This is particularly true here because net loser customers

effectively have been forced to give Defendants non-consensual loans for nearly a decade.  In

that period of time, legal precedent holding that Defendants cannot retain fictitious profits from a

Ponzi scheme has remained unchanged.  In fact, the Bankruptcy Court, District Court, and the

Second Circuit have all determined that this is the law of the case.  Defendants nonetheless have

fought for years to impede the resolution of their case to retain their fictitious profits to the

detriment of other customers, who have not, and may not ever, recover their full principal

invested with BLMIS.

The Trustee thus seeks prejudgment interest in the amount of 9% per annum from the

date of the filed complaint against Defendants.

## BACKGROUND

### A.    Defendants' BLMIS Accounts, Customer Claims And Objections

Defendants Michael Mann and Meryl Mann are residents of New York, and became

customers of BLMIS's investment advisory business in December 1995 when they signed

account opening agreements in New York that authorized Madoff to manage and retain custody

and control of their assets in New York, and included a New York choice of law provision.

Stmt. ¶¶ 3–5; TX-019; TX-020; TX-021; TX-022; Answer and Affirmative Defenses to the

Amended Complaint ¶¶ 2, 9–10, *Picard v. BAM L.P.*, Adv. Pro. No. 10-04390 (CJM) (Bankr.

S.D.N.Y. Apr. 16, 2015), ECF No. 40 ("Ans.").  Defendants held Account No. 1CM363 in the

name of "Michael Mann and Meryl Mann J/T Wros" (the "Mann Account"), and Account No.

1CM579, in the name of "BAM L.P." (the "BAM Account, and together with the Mann Account,

again the "Accounts").  Stmt. ¶¶ 4–6; TX-019; TX-020; TX-021; TX-022; Ans. ¶¶ 2, 7–8.

On or about June 17, 2009, Defendants Michael Mann and Meryl Mann filed a customer

claim for Account No. 1CM363, which the Trustee designated as Claim #009823 (the "1CM363

Customer Claim"), and Michael Mann filed claim #009822 on behalf of BAM L.P. for Account

No. 1CM579 (the "1CM579 Customer Claim").  Stmt. ¶ 12.  On or about August 28, 2009, the

Trustee issued a Notice of Trustee's Determination of Claim with respect to the 1CM363

Customer Claim (the "1CM363 Determination"), and on or about October 19, 2009, the Trustee

issued a Notice of Trustee's Determination of Claim with respect to the 1CM579 Customer

Claim (the "1CM579 Determination").  Stmt. ¶ 13.  On or about September 25, 2009, Michael

Mann and Meryl Mann filed an objection to the 1CM363 Determination (the "1CM363

Objection"), and on or about November 16, 2009, Michael Mann filed an objection to the

1CM579 Determination (the "1CM579 Objection").  Stmt. ¶ 14.  In their objections, Defendants

acknowledged they opened accounts with, and were customers of, "Bernard L. Madoff

Investment Securities LLC."  Stmt. ¶ 14.

### B.     The Adversary Proceeding and First Motion to Withdraw the Reference

In November 2010, the Trustee brought this adversary proceeding against Defendants to

avoid and recover fraudulent transfers of fictitious profits.  Stmt. ¶ 17.  Under sections 548(a),

550(a)(1), and 551 of the Bankruptcy Code, the Trustee seeks to avoid and recover $2,813,000 of

fictitious profits received by Defendants during the Two-Year Period prior to the liquidation

("Two-Year Transfers").  Stmt. ¶ 18.

On March 30, 2012, Defendants filed a joinder to the motion to withdraw the reference

filed in the avoidance action, *Picard v. Harold Hein,* Adv. Pro. No. 10-04861 (SMB), seeking to

incorporate the arguments raised therein and for the District Court to grant withdrawal of the

reference.  Stmt. ¶ 19.  The District Court granted the motions to withdraw as filed in four

similarly situated actions, *Picard v. Greiff* (Adv. Pro. No. 10-04357); *Picard v. Gerald

Blumenthal* (Adv. Pro. No. 10-04582), *Picard v. Kara Fishbein Goldman* (Adv. Pro. No. 10-

04735), and *Picard v. Harold J. Hein* (Adv. Pro. No. 10-04861) (collectively the "*Greiff*

Actions"), as well as the joinders to those motions to withdraw the reference, including that of

Defendants here.  Stmt. ¶¶ 20–21.  Subsequently, the defendants in the *Greiff* Actions filed their

respective motions to dismiss, which the Trustee opposed, and the District Court issued one

consolidated decision addressing all four motions to dismiss in *Picard v. Greiff,* 476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom.* 773 F.3d 411 (2d Cir. 2014).  Stmt. ¶¶ 22, 24–27.

After the matter was referred back to the Bankruptcy Court, on April 16, 2014, Defendants answered the Amended Complaint.  Stmt. ¶ 30; *see* Ans.  Following discovery, the case was referred for mandatory mediation but was not successful.  Stmt. ¶¶ 31–32.

At the March 29, 2017 pretrial conference, the Court directed the parties to file summary judgment motions, contingent on the parties' filing of a joint statement of undisputed material facts in furtherance of summary judgment by May 3, 2017.  Stmt. ¶¶ 34.  The parties were unable to agree on a joint statement, resulting in several adjournments of the scheduled pre-trial conference until September 26, 2018.  Stmt. ¶ 35.

### C.    Motion To Withdraw Objections, Second Motion To Withdraw the Reference, Motion for Stay, and Motion For Leave

Over nine years after filing their objections to the Trustee's determinations of their customer claims and acknowledging they were customers of BLMIS, on June 1, 2018, Defendants unilaterally filed respective notices of withdrawal of the 1CM363 Objection and 1CM363 Objection.  Stmt. ¶ 36.  The Trustee moved to strike the withdrawals, asserting that a claimant may not unilaterally withdraw its claim or objection under Rule 3006 of the Federal Rules of Bankruptcy Procedure and Rule 41 of the Federal Rules of Civil Procedure.  Stmt. ¶ 37.  The Bankruptcy Court granted the Trustee's motion, holding the withdrawals were "stricken and have no legal effect."  Stmt. ¶ 38.  The Bankruptcy Court specifically stated that the reason for Rule 3006 "was to prevent somebody from doing precisely what you're doing, which is withdrawing a claim and stripping the Court of [its] summary jurisdiction for the purposes of

4

defeating [the] Bankruptcy Court's jurisdiction."  September 26, 2018 Hr'g Tr. 33:15–19, ECF No. 110.[1]

Ripe for trial, the Bankruptcy Court issued an order setting the trial to start on December 3, 2018.  Stmt. ¶ 39.  As permitted by that Order, on October 26, 2018, Defendants filed their second motion to withdraw the reference on their asserted right to a jury trial (the "Second Motion to Withdraw"), which was assigned to District Court Judge Vernon S. Broderick.  Stmt. ¶ 40.  Defendants further moved to stay the trial pursuant to Rule 5011(c), pending a ruling from the District Court on the Second Motion to Withdraw, which the Trustee opposed.  Stmt. ¶ 42. Notwithstanding the motion for a stay, the parties continued to prepare for trial by filing motions *in limine,* exchanging exhibits and submitting a joint pretrial order to the Bankruptcy Court on November 26, 2018.  Stmt. ¶ 43.

At a hearing held in November 2018, the Bankruptcy Court adjourned the trial as scheduled, and offered the Defendants the opportunity to make an oral motion to withdraw their customer claims and objections to the Trustee's determinations of those claims.  Stmt. ¶ 44.  The Defendants did so, and the court granted the motion, which was memorialized in a subsequently filed order.  Stmt. ¶ 45.  However, that order did not determine the Bankruptcy Court's jurisdiction over the adversary proceeding, for which the parties submitted separate briefing in December 2018.  Stmt. ¶ 46.  On January 18, 2019, the Bankruptcy Court issued its Memorandum Decision and Order holding that the court has equitable jurisdiction over the adversary proceeding despite the Defendants' withdrawal of their customer claims and objections, noting that such claims "were pending for nearly ten years, but [Defendants] sought to withdraw them with prejudice at the Court's invitation only a few days before the trial was

---

[1] A true and correct copy of the September 26, 2018 Hearing is attached hereto as Exhibit A to the Cremona Decl.

scheduled to begin."  Stmt. ¶ 47 (citing *Picard v. BAM L.P.*, 597 B.R. 466, 484 (Bankr. S.D.N.Y.

2019) (the "*Jurisdictional Decision*"); ECF No. 148).

Defendants moved for leave to appeal the *Jurisdictional Decision* (the "Motion for

Leave"), which the Trustee opposed, and on February 26, 2020, District Court Judge Vernon S.

Broderick denied the Second Motion to Withdraw and Motion for Leave, finding Defendants'

"jurisdictional rule that the Bankruptcy Court's authority is contingent on the continued presence

of a contested proof of claim . . . would permit gamesmanship and the sandbagging of a

bankruptcy Trustee after []he expended resources and time litigating only to have a putative

creditor pull the plug on its proof of claim when faced with a potential adverse ruling and/or on

the eve of trial."  Stmt. ¶¶ 48–50 (citing *Picard v. BAM L.P.*, 612 B.R. 257, 271 (S.D.N.Y.

2020); No. 19-cv-00812, ECF No. 10).

### D.     Summary Judgment

After the matter was referred back to the Bankruptcy Court, on December 21, 2018, the

Trustee filed his Motion for Summary Judgment, which the Defendants opposed, and in

September 2019, the Bankruptcy Court issued its Memorandum Decision Granting Relief Under

Federal Rule of Civil Procedure 56(g).  Stmt. ¶¶ 51–53 (citing *Picard v. BAM L.P.*, 608 B.R.

165, 170 (Bankr. S.D.N.Y. 2019) ("*MSJ 56(g) Decision*"), ECF No. 174).

The *MSJ 56(g) Decision* determined that the only remaining issue of disputed fact was

whether the Two-Year Transfers were transfers by the SIPA debtor within the meaning of SIPA

§ 78fff-2(c)(3) and 11 U.S.C. § 548(a)(1)(A).  Stmt. ¶ 53.  This was the issue addressed at trial,

which was held on September 14, 2020, before this Court pursuant to the Order Establishing

6

Procedures For Remote Evidentiary Hearing/Trial On September 14, 2020.  Stmt. ¶ 54.[2]

## ARGUMENT

## II.    THIS COURT HAS BROAD DISCRETION IN DECIDING WHETHER TO AWARD PREJUDGMENT INTEREST AND IN SETTING THE INTEREST RATE

The Court has wide discretion when deciding the appropriateness of an award of prejudgment interest as well as in setting the operative rate, "and absent a sound reason to deny it, it should be awarded."  *Picard v. Lowrey*, Adv. Pro. No. 10-04387 (SMB), 2018 WL 1442312, at *15 (Bankr. S.D.N.Y. Mar. 22, 2018) (*"Lowrey I") adopted by* 596 B.R. 451 (S.D.N.Y. 2019) ("*Lowrey II"*), *aff'd sub nom.* 2020 WL 5666677 (2d Cir. Sept. 24, 2020) ("*Lowrey III"*); *see also Savage & Assocs., P.C. v. Mandl* (*In re Teligent, Inc.*), 380 B.R. 324, 344 (Bankr. S.D.N.Y. 2008).  It has been well recognized that "[t]he decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion."  *Kittay v. Korff (In re Palermo)*, 739 F.3d 99, 108 (2d Cir. 2014); *see also McHale v. Boulder Cap. LLC* (*In re The 1031 Tax Grp., LLC*), 439 B.R. 84, 87 (Bankr. S.D.N.Y 2010).

Courts in the Second Circuit routinely award prejudgment interest in fraudulent transfer actions.  *See Ball v. Soundview Cap. Mgmt. Ltd. (In re Soundview Elite Ltd.)*, 594 B.R. 108, 135–36 (Bankr. S.D.N.Y. 2018) (awarding prejudgment interest "where the Trustee's damages stemmed from fiduciary breaches that deprived them of proper use of funds to which they were entitled"); *In re 1031 Tax Grp., LLC*, 439 B.R. at 89 n.3 (finding the trustee was entitled to

---

[2] The Court may take judicial notice of adjudicative facts.  *See* Fed. R. Evid. 201(c); *In re Manning*, No. BR 20-20482-PRW, 2020 WL 5083325 at *5-7 (Bankr. Ct. S.D.N.Y. Aug. 27, 2020) (court may take judicial notice under Federal Rule of Evidence 201 of fact of filing and the fact of arguments made by parties where identified with specificity); *First Nat'l Bank of Boston v. Kors, Inc. (In re Kors, Inc.)*, 15 B.R. 444, 446 (Bankr. D. Vt. 1981) (the "Bankruptcy Court, in the exercise of its discretionary power under this federal rule, could take judicial notice of all administrative and judicial actions previously undertaken in the proceedings") (internal citation omitted).

prejudgment interest from the date the adversary proceeding was commenced until the date judgment was entered); *CNB Int'l, Inc. v. Kelleher (In re CNB Int'l)*, 393 B.R. 306, 335–36 (Bankr. W.D.N.Y. 2008), (finding that prejudgment interest on a fraudulent conveyance allows a trustee to recover "the value" of the transferred property), *aff'd on other grounds*, *In re CNB Int'l, Inc.*, 440 B.R. 31 (W.D.N.Y. 2010); *Ackerman v. Kovac (In re All Am. Petrol. Corp.)*, 259 B.R. 6, 21 (Bankr. E.D.N.Y. 2001) (in awarding prejudgment interest, the Court stated that defendants "need to compensate the creditors of this estate for the actual damages suffered by this fraudulent conveyance.").

## A.    The *Wickham* Factors Determine Whether To Award Prejudgment Interest

In determining whether to award prejudgment interest, the Second Circuit has directed courts to consider four factors:

> (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

*Wickham Contracting Co., Inc. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL–CIO*, 955 F.2d 831, 833–34 (2d Cir. 1992); *see also Lowrey I*, 2018 WL 1442312, at *15; *In re 1031 Tax Grp., LLC*, 439 B.R. at 87.

In *Wickham*, the Second Circuit affirmed an award of prejudgment interest where (1) plaintiff "suffered actual damage to its business," that eroded its expected profits and "deprived [it] of money it otherwise would have earned but for the [defendants]; and (2) it "comport[ed] …with the remedial scheme of the [relevant] statute."  955 F.2d at 833–34, 836–37.  The Second Circuit stated that "the relative equities may make prejudgment interest inappropriate" when (1) "the defendant acted innocently and had no reason to know of the wrongfulness of his actions," (2) "there is a good faith dispute between the parties as to the existence of any liability," or

8

(3) "the plaintiff himself is responsible for the delay in recovery." *Id.* at 834–835. Each of the *Wickham* factors favors an award of prejudgment interest here.

## B. Wide Discretion In Selecting Appropriate Interest Rate And Date Of Accrual

After a court decides to award prejudgment interest, it also has considerable discretion "in selecting the interest rate to be applied in calculating prejudgment interest." *In re 1031 Tax Grp., LLC*, 439 B.R. at 88; *see In re Livent, Inc.*, 360 F. Supp. 2d 568, 570 (S.D.N.Y. 2005) (noting that "it is within the sound discretion of the trial court whether or not to award prejudgment interest at all, and the same considerations that inform that decision should also inform the choice of interest rate.") (citation omitted).

The court's goal in selecting an interest rate is to find the rate that will best compensate the estate and other stakeholders for loss of the use of their money. To meet this goal, courts in this district have adopted several different methodologies for determining an appropriate rate of prejudgment interest. *See Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F.Supp.2d 585, 614 n.4 (S.D.N.Y. 2010) (collecting cases). For example, while there is no federal statute governing the appropriate rate of prejudgment interest, "the majority approach has been to apply the pre-judgment interest rate of the state in which the district court sits—in the case of New York law, nine percent per annum." *Deng v. 278 Gramercy Park Grp. LLC*, No. 12 Civ. 7803 (DLC) (JLC), 2014 WL 1016853, at *11 (S.D.N.Y. Mar. 14, 2014) (citing N.Y. C.P.L.R. §§ 5001(b), 5004); *see also Lyman Com. Sols., Inc. v. Lung*, No. 12 Civ. 4398 TPG, 2015 WL 4545089, at *4 (S.D.N.Y. July 16, 2015) (in fraudulent transfers action, award of prejudgment interest was meritorious and the appropriate interest rate is nine percent per annum); *Geltzer v. Artists Mktg. Corp. (In re Cassandra Grp.)*, 338 B.R. 583, 599–600 (Bankr. S.D.N.Y. 2006) (awarding nine percent interest in action seeking to avoid fraudulent conveyances under the Bankruptcy Code and N.Y. Debtor & Creditor Law); *In re All Am. Petrol.*

*Corp.*, 259 B.R. at 20 (same).  Other courts look to the federal statute setting the post-judgment interest rate, *see* 28 U.S.C. § 1961, or the rates of interest based on the bank prime loan rate, or the fixed interest rate imposed by the Internal Revenue Service applicable to the underpayment of taxes.  *See* 26 U.S.C. § 6621.

The Second Circuit has recognized that the "suitability" of any methodology chosen will often vary, "depend[ing] on the circumstances of the individual case, and the court need not limit the award of prejudgment interest . . ."  *In re The 1031 Tax Grp., LLC*, 439 B.R. at 87 (rejecting the parties' prejudgment interest rate recommendations, stating "that application of these rates to the transfers in question would not fully compensate the Trustee for the loss of funds," and instead opting for a higher interest rate); *see also S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476–77 (2d Cir. 1996) (upholding prejudgment interest award in securities fraud case at higher rate Internal Revenue Service charges on delinquent taxes, rather than treasury-bill rate, since latter "advantageous rate would seem highly inappropriate in the circumstances here, where defendants have had the use of the money"); *In re FKF 3, LLC*, No. 13 Civ. 3601 (JCM), 2018 WL 5292131, at *15 (S.D.N.Y. Oct. 24, 2018) (determining the award of prejudgment interest "[b]ased on the equitable considerations in this case and the compensatory purpose of prejudgment interest"); *Alfano v. CIGNA Life Ins. Co. of New York,* No. 07 Civ. 9661 (GEL), 2009 WL 890626, at *7 (S.D.N.Y. Apr. 2, 2009) (awarding prejudgment interest at the New York nine percent statutory rate because it better reflected "the true loss to plaintiff").

The appropriate date for accruing prejudgment interest must also be determined by the court, namely whether it is "the date on which the fraudulent transfer occurred," or "the date of the commencement of the adversary proceeding."  *In re 1031 Tax Grp., LLC*, 439 B.R. at 89 n.3; *see also Bruno Mach. Corp. v. Troy Die Cutting Co., LLC (In re Bruno Mach. Corp.)*, 435 B.R.

819, 850 (Bankr. N.D.N.Y. 2010) (in awarding prejudgment interest, the court determined that "[i]n this context, interest accrues from the date of the demand, or from the date of the commencement of the adversary proceeding.") (internal quotation marks and citation omitted).

## III.    THE TRUSTEE IS ENTITLED TO PREJUDGMENT INTEREST

While the Trustee does not dispute Defendants acted in "good faith" when they withdrew funds from their customer accounts, Defendants have been on notice of the Ponzi scheme since the day Madoff revealed it on December 11, 2008.  At the very latest, Defendants knew they were "net winners," or in possession of funds that were not generated from any purported securities investments, when the Trustee filed this avoidance action in November of 2010. Despite this knowledge, Defendants have benefitted—and continue to benefit—from the fraudulent transfers in their possession for the duration of this litigation, to the detriment of the net loser BLMIS victims.  Under these facts, the Trustee is entitled to an award of prejudgment interest on the Two-Year Transfers received by Defendants.

### A.    The Need To Fully Compensate The Estate For Actual Damages Suffered Requires An Award Of Prejudgment Interest

Under the first *Wickham* factor, the customer property estate and the net loser victims must be awarded prejudgment interest to redress the loss of their principal investments.

As the trustee appointed under SIPA, the Trustee is charged with recovering and paying out customer property to BLMIS's customers.  The Trustee is in the process of making *pro rata* distributions; however, the customer property recovered to date "is not sufficient to pay in full [customers' net equity claims]." *Lowrey III,* 2020 WL 5666677 at *2 (citing SIPA § 78fff-2(c)(3)).[3]  SIPA incorporates the Bankruptcy Code (to the extent that it is "consistent" under

---

[3] *See* Trustee's Twenty-Third Interim Report for the Period October 1, 2019 Through March 31, 2020, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Apr. 28, 2020), ECF No. 19502.

SIPA § 78fff(b)), to permit the Trustee to bring avoidance actions to recover fictitious profits—including those received by Defendants here—and to equitably distribute the recovered profits to those BLMIS customers who, as net losers, did not receive the return of their lost principal from BLMIS. *See id.* at *12 (citing *Antecedent Debt Decision,* 499 B.R. at 425 (noting SIPA's policy decision to make "pro rata distributions based on each customer's net-equity claim, rather than merely letting those who came out ahead to retain the amounts obtained.")).

Further, the Trustee's success in recovering fraudulent transfers from other defendants, thereby enabling him to make distributions, does not inure to the benefit of Defendants, and their resistance in returning their fraudulent transfers is a knowing strategic decision that must have imposition-of-interest consequences. In fact, the District Court previously made it clear that it would "not ignore . . . the benefit that plaintiff could have derived from those funds had the funds been issued at the appropriate time and invested during the pendency of his proceedings …. To do so would be to inadequately compensate plaintiff." *Alfano*, 2009 WL 890626, at *7; *see also Pereira v. United Parcel Serv. of America, Inc. (In re Waterford Wedgwood USA, Inc.)*, 508 B.R. 821, 837–38 (Bankr. S.D.N.Y. 2014) (recognizing that prejudgment interest restores both the estate and net losers "to the economic position each were in prior" to the transfers); *Davis v. Binswanger Corp. Servs., Inc. (In re Quebecor Worlds (USA) Inc.)*, No. 08-10152 (SHL), 2013 WL 5365404, at *4 (Bankr. S.D.N.Y. Sept. 25, 2013) (same).

Defendants have resolutely withheld repayment of the fraudulent transfers, thereby enjoying a non-consensual loan from the customer property estate, and more directly, from the net loser victims. Defendants may have reinvested the fraudulent transfers received from BLMIS in other investments or in the stock market through their own trading accounts, or have utilized the fraudulent transfers in other ways to benefit themselves or their families; these

benefits would not have been otherwise possible without continuing to withhold the recovery of those fictitious profits from the net loser victims.  Such harm to net loser victims was recognized by the Second Circuit Court of Appeals:

> [Defendants] would retain funds that otherwise would be customer property distributed ratably to customers based on their net equity claims.  That result would place [Defendants], who have no net equity and thus are not entitled to share in the customer property fund, ahead of customers who have net equity claims.  SIPA does not permit it.

*Lowrey III*, 2020 WL 5666677, at *12 (noting "it would significantly undo the SIPA scheme to allow customers to recast amounts received as something other than what they were—fictitious profits—and treat them as a claim for antecedent debts beyond the customer's net equity.") (citing *Antecedent Debt Decision,* 499 B.R. at 425).  The court explained that "[d]eciding otherwise would reduce a SIPA trustee's authority to something less than a bankruptcy trustee's authority, which the statute does not contemplate."  *Lowrey III*, 2020 WL 5666677, at *12 n. 9*; see also* SIPA § 78fff-1(a) ("A trustee shall be vested with the same powers and title with respect to the debtor and the property of the debtor, including the same rights to avoid preferences, as a trustee in a case under title 11.").

As between net losers and net winners, equity weighs in favor of a judgment of interest against the Defendants on these non-consensual loans for the benefit of the customer property estate and its net loser victims.  In fact, Judge Drain ruled in a bankruptcy proceeding involving defendants' failures to make distributions in accordance with the debtor's approved chapter 11 plan, that prejudgment interest was warranted because during the pendency of the case, the plaintiffs "were making [a] coerced or forced loan" to the defendants and "they should be compensated for making that forced loan by being paid what someone who made a forced loan

should be paid." Hr'g Tr. at 58:7–13, *Solus Alt. Asset Mgmt. LP v. Delphi Automatic LLP (In re DPH Holdings Corp.),* No. 14-2445 (RDD) (Bankr. S.D.N.Y. May 19, 2017), ECF No. 131.[4]

Here, Defendants have withheld the return of fictitious profits from net losers for nearly ten years. Prejudgment interest is appropriate to compensate and make whole the net loser victims who have suffered due to the Ponzi scheme, and to avoid Defendants' unjust enrichment. As the District Court has explained:

> Awarding prejudgment interest is based upon the premise that the party to whom the money is owed has been deprived of the use of the funds and can be made whole only by the award of interest. Conversely, the party owing the money has had the use of the funds he was obligated to have paid and should be required to pay compensation by way of interest.

*Stanford Square L.L.C. v. Nomura Asset Cap. Corp.*, 232 F. Supp. 2d 289, 293 (S.D.N.Y. 2002); *see also Ames Merch. Corp. v. Cellmark Paper, Inc. (In re Ames Dept. Stores, Inc.)*, 450 B.R. 24, 35–36 (Bankr. S.D.N.Y. 2011) (awarding prejudgment interest where "[debtor] has been denied the funds that went out to defendant … for many years, and, in the early years of this case, needed to borrow money under its DIP financing facility; it is only fair to compensate [Debtor], at least to some extent, for the incremental interest expense it thereby had to incur."), *judgment aff'd,* 470 B.R. 280 (S.D.N.Y. 2012), *aff'd,* 506 F. App'x. 70 (2d Cir. 2012), *cert. denied*, 571 U.S. 819 (2013); *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987) (purpose of prejudgment interest is "[t]o compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered."); *Newbro v. Freed*, 409 F. Supp. 2d 386, 402

---

[4] A true and correct copy of the *In re DPH Holdings Corp.* hearing transcript is attached hereto as Exhibit B to the Cremona Decl. Judge Drain did not issue a written decision after making the prejudgment interest determination on the record, as the parties subsequently reached a settlement contemplating payments totaling $310 million. *See,* Order Granting Plaintiff's Motion Pursuant To 11 U.S.C. §§ 105(a) and 1142(b), For Approval Of Stipulation [ECF No. 132] and (B) So-Ordering Stipulation Pursuant to To Fed. R. Civ. P. 41(a)(1)(A)(ii), Vacating Final Judgment And Dismissing Adversary Proceeding With Prejudice [ECF No. 132-2], *In re DPH Holdings Corp,* No. 14-2445 (RDD) (Bankr. S.D.N.Y. July 5, 2017), ECF No. 140.

(S.D.N.Y. 2006) ("An important rationale for the prejudgment interest rule is that the party

against whom the claim is asserted could have stopped the running of interest by paying what

was owed …"); *In re All Am. Petrol. Corp.,* 259 B.R. 6, 20 (Bankr. E.D.N.Y. 2001)

(prejudgment interest is to "compensate the wronged person for deprivation of the monetary

value of the loss from the time of the loss to the payment of the monetary loss.") (citation

omitted).

Following BLMIS's collapse, Defendants had the use of $2,813,000 in avoidable

transfers for more than a decade. Stmt. ¶¶ 8–9, 18. Defendants may have unwittingly invested

in the Ponzi scheme, but they "still received money that was never in fact [theirs] to spend."

*Moran v. Goldfarb*, No. 09 Civ. 7667 (RJS), 2012 WL 2930210, at *9 (S.D.N.Y. July 16, 2012).

It cannot be ignored that Defendants "received profits that belong to all of [the] victims on a *pro*

*rata* basis." *Id.* (emphasis in original) (granting prejudgment interest where fraudulent transfers

from Ponzi scheme had deprived estate of use of the funds and that the estate could only be made

whole by an award of interest); *see also* Judgment, *Picard v. Nelson*, Adv. Pro. Nos. 10-04377,

10-04658 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2019), ECF No. 203, 205 (granting the Trustee

prejudgment interest at the rate of nine percent per annum in similarly situated avoidance

actions). Prejudgment interest is necessary to compensate fully the BLMIS estate for the loss of

the customer property while it was in Defendants' hands.

### B.   The Equities Favor An Award Of Prejudgment Interest

In *Wickham*, the Second Circuit stated that "the relative equities may make prejudgment

interest inappropriate" when (1) "the defendant acted innocently and had no reason to know of

the wrongfulness of his actions," (2) "there is a good faith dispute between the parties as to the

existence of any liability," or (3) "the plaintiff himself is responsible for the delay in recovery."

955 F.2d at 834–835.  However, none of those factors bar an award of prejudgment interest in the Trustee's avoidance actions against Defendants.

### 1.    Defendants' Good Faith Does Not Preclude Prejudgment Interest Award

Awarding prejudgment interest is proper even if Defendants received the fraudulent transfers in good faith because "[p]rejudgment interest is not a penalty, but rather is viewed as 'delayed damages to be awarded as a component of compensation to the prevailing party.'" *In re Waterford Wedgwood USA, Inc.*, 508 B.R. at 838 (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983)).  In *Moran*, the District Court awarded prejudgment interest against a "good faith" investor who received fictitious profits from a $55 million Ponzi scheme that spanned over a period of roughly twenty years.  2012 WL 2930210, at *9.  "Assuming, as the [District] Court must without evidence to the contrary, that [defendant] invested unwittingly in the Ponzi scheme, he still received money that was never in fact his to spend." *Id.*  Courts in this circuit has made clear that "awards of prejudgment interest are essentially compensatory, … and wrongdoing by a defendant is not a prerequisite." *Lodges 743 and 1746 v. United Aircraft Corp.*, 534 F.2d 422, 447 (2d Cir. 1976); *see also Dow Chem. Pac. Ltd. v. Rascator Mar., S.A.,* 640 F. Supp. 882, 886 (S.D.N.Y. 1986) ("[I]t is not the bad faith of the party from whom the interest is sought that is important"); *Gill v. Maddalena (In re Maddalena),* 176 B.R. 551, 557–58 (C.D. Cal. 1995) (awarding prejudgment interest against a good faith transferee, who assumed the consequences associated with failure to compensate the estate for the loss of the fraudulent conveyance).

Awarding prejudgment interest where defendants acted in good faith is equitable, where, as in the instant matter, the Trustee is entitled to recover the fraudulent transfers of fictitious profits Defendants received from BLMIS.

16

### 2. It Is Indisputable Defendants Are Liable For The Two-Year Transfers

The relative equities also favor an award of prejudgment interest where there has never been any serious dispute as to Defendants' liability for the Two-Year Transfers. As this Court has recognized, fictitious profits cases "are strict liability cases unless the law changes." Hr'g Tr. at 114:10–11, *Picard v. Marilyn Bernfeld Trust*, Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015), ECF No. 20; *see also id.,* at 100:19 (fictitious profit count is "almost a strict liability count"); Hr'g Tr. at 36:13–14, *Picard v. The Estate (Succession) of Doris Igoin,* 10-04336 (SMB) (Bankr. S.D.N.Y. Aug. 6, 2014), ECF No. 112 ("This is a strict liability case. It's a fictitious profits case. . .")[5] This is especially true where, as here, Defendants admit receipt of the Two-Year Transfers. Stmt. ¶¶ 8–9; *MSJ 56(g) Decision*, 608 B.R. at 170.

Section 548(a)(1)(A) of the Bankruptcy Code authorizes the Trustee to avoid "any payment" of an interest in property of the debtor made within two years of the filing date with actual intent to hinder, delay, or defraud creditors. 11 U.S.C. § 548(a)(1)(A); *see also Lowrey III,* 2020 WL 5666677, at *3; *Picard v. Greiff,* 476 B.R. 715, 725 (S.D.N.Y. 2012), *aff'd sub nom. on other grounds, Picard v. Ida Fishman Revocable Tr. (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014), *cert. denied,* 576 U.S. 1044 (2015). With no genuine dispute regarding BLMIS's: (1) transfer to and receipt by Defendants of the Two-Year Transfers; (2) Defendants' interest in the transferred funds; and (3) actual intent to hinder, delay, or defraud its creditors in making the transfers, the Trustee was entitled to avoid and recover the Two-Year Transfers. *See MSJ 56(g) Decision,* 608 B.R. at 170, 176, 181.

---

[5] True and correct copies of the October 28, 2015 and August 6, 2014 hearing transcripts are attached hereto as Exhibit C and D, respectively to the Cremona Decl.

### 3.    Defendants Should Not Receive the Benefit of Their Own Delays

The relative equities also weigh in favor of prejudgment interest due to the lengthy

passage of time since this SIPA liquidation proceeding began.  *See Wickham,* 955 F.2d at 834–

35. Throughout the course of this litigation, the Trustee "has made every effort to bring this case

to trial."  *Strobl v. New York Mercantile Exch.*, 590 F. Supp. 875, 882 (S.D.N.Y. 1984); *see also*

*Wickham*, 955 F.2d at 833–34 (upholding award of prejudgment interest in part because "the

long delay in obtaining judgment on the amount of damages was due essentially to procedural

matters beyond [plaintiff's] control.").

Any delay in this litigation has been effectuated by Defendants, who continued to

disregard multiple prior court decisions by repeating previously rejected arguments, including

but not limited to their affirmative defense that they provided value for transfers in amounts

exceeding their principal investments in BLMIS (the "Antecedent Debt Defense").  As this Court

observed, "[t]he Antecedent Debt Defense has been rejected by this Court or the District Court

on no less than nine occasions."  *MSJ 56(g) Decision,* 608 B.R. at 180 (collecting cases).

Indeed, after the District Court granted the Defendants' withdrawal of the reference in

November 2011 (Stmt. ¶¶ 20–21), it considered and rejected the Antecedent Debt Defense in

*Picard v. Greiff,* 476 B.R. 715 (S.D.N.Y. 2012), finding any "transfers from Madoff Securities to

defendants that exceeded the return of defendants' principal…were not 'for value'" for the

purposes of section 548(c).  *Id.* at 725.  The District Court considered the same arguments again

a year later in consolidated issue briefings and reiterated its *Greiff* decision that "only a

defendant's investment of principal may count as 'value' with respect to the customer property

estate for purposes of section 548(c)."  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.*

*LLC*, (*In re Madoff Sec.*), 499 B.R. 416, 424 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*")

(citing *Greiff,* 476 B.R. at 728).  The Second Circuit most recently affirmed both *Greiff* and the

*Antecedent Debt Decision,* finding that since "[t]he transfers at issue [ ] were not returns of

principal; they were transfers of fictitious profits . . . the transfers were not 'for value' for

purposes of § 548(c)." *Lowrey III,* 2020 WL 5666677, at *13 (citing *Greiff,* 476 B.R. at 726–27;

*Antecedent Debt Decision,* 499 B.R. at 424).

In addition, like Defendants here, the *Nelson* defendants raised the same arguments that

the Trustee lacked standing to avoid and recover the Two-Year Transfers because Madoff, rather

than BLMIS, made the transfers. *Picard v. Nelson*, 610 B.R. 197, 216 (Bankr. S.D.N.Y. 2019).

After a two day trial, this Court rejected the entire premise, finding the Trustee had standing

because he:

> br[ought] the avoidance actions as a representative of an insolvent
> customer property estate to avoid and recover transfers for the
> benefit of the customer property estate which was injured by the
> fraudulent transfers of customer property, and the Trustee's action
> will redress that injury by replenishing the funds in the customer
> property estate available to satisfy the customers' net equity claims
> in the SIPA proceeding.

*Id.* at 215 (citations omitted).

Thus, "[t]he prior decisions within this SIPA proceeding constitute law of the case and

Defendants offer no reason or evidence to allow this Court to revisit them." *Nelson*, 610 B.R. at

237; *see also Lowrey II*, 596 B.R. at 469 (same). The defendants in the Trustee's avoidance

actions "have had several opportunities to present their antecedent debt/value arguments, those

arguments have been rejected, and hearing them again will not add value to the disposition of the

antecedent debt/value defense in this Court." *Picard v. Cohen*, 550 B.R. 241, 255 (Bankr.

S.D.N.Y. 2016); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard L.

Madoff*), 531 B.R. 439, 465 (Bankr. S.D.N.Y. 2015) (stating defendants "have had their day in

court and Judge Rakoff's decisions are law of the case.").

In the face of these decisions among others, Defendants continued to delay the recovery of the net loser victims' full principal investments with BLMIS.  It would be inequitable for Defendants to receive the benefit of their own delays.  And even if the Court were to consider that some of the delay was not the fault of either party, an award of interest nonetheless is proper. *See Hirsch v. Steinberg (In re Colonial Realty Co.),* 226 B.R. 513, 527 (Bankr. Conn. 1998).

Defendants have knowingly chosen to reject prior decisions of this and many other courts, and to instead continue holding on to money to which they have no right.

### 4.    Awarding Prejudgment Interest Promotes Settlement And Reduces Delays

Finally, the equities weight in favor of prejudgment interest "where liability and the amount of damages are fairly certain" because it motivates the parties to reduce the cost of litigation, engage in meaningful settlement discussions, and "deter[ ] an[y] attempt to benefit unfairly from the inherent delays of litigation." *Gen. Facilities, Inc. v. Nat'l Marine Serv., Inc.*, 664 F.2d 672, 674 (8th Cir. 1981); *see also Moore v. CapitalCare, Inc.*, 461 F.3d 1, 13 (D.C. Cir. 2006) (reversing trial court for not awarding prejudgment interest, in part, because "prejudgment interest promotes settlement and deters any attempt to benefit unfairly from inevitable litigation delay"); *In re FKF 3, LLC*, 2018 WL 5292131, at *12 (finding "the loss of interest, the diminished value of the damages award due to the passage of time, and Plaintiff's lost opportunity to make use of the lost funds" favor awarding prejudgment interest despite the defendants being innocent bystanders to the fraudulent company's collapse).

Given the well-settled law regarding fictitious profits in Ponzi schemes, value under section 548(c), and as to the Trustee's standing to avoid the Two-Year Transfers, Defendants had no equitable justification to continue litigation *and* at the same time argue against an award of prejudgment interest.  Defendants are entitled to litigate, but if their position is not vindicated—

20

as has been proven on "no less than nine occasions" by this Court, the District Court, and the

Second Circuit—and parties are consequently injured economically, then those injured parties

should be properly compensated. *MSJ 56(g) Decision,* 608 B.R. at 180–81. This is especially

true where, as here, Defendants always had the ability to stop the running of prejudgment interest

on the fraudulent transfers received from BLMIS. *See Moran*, 2012 WL 2930210 at *9 (noting

defendant could have stopped the running of interest at any time by paying the amounts

outstanding); *see also Newbro v. Freed*, 409 F. Supp. 2d 386, 402 (S.D.N.Y. 2006) (same). To

discourage past and continuing efforts to benefit from lengthy litigation delays at the expense of

victims, the Court should award prejudgment interest to the Trustee.

Accordingly, the *Wickham* factors militate in favor of the Court awarding the Trustee

prejudgment interest on the amount of the Two-Year Transfers.

## IV.    THE COURT SHOULD AWARD PREJUDGMENT INTEREST FROM THE DATE OF THE FILED COMPLAINT

The Court, in its discretion, should award prejudgment interest from the date the Trustee

filed his complaint against Defendants on November 30, 2010 because "[f]ull compensation to

the estate for the avoided transfer[s] normally requires prejudgment interest to compensate for

the value over time of the amount recovered." *Geltzer v. Artists Mktg. Corp. (In re Cassandra

Grp.)*, 338 B.R. 583, 599 (Bankr. S.D.N.Y. 2006) (awarding prejudgment interest from date of

filed complaint "[t]o fully and fairly compensate [debtor's] creditors for their loss—not only of

[the amount] that was fraudulently conveyed …but of the use of that money since the date of the

demand"). It is appropriate to award prejudgment interest from the date the Trustee commenced

this avoidance action because "[o]n that date, Defendant[s] assumed the consequences associated

with [their] failure to compensate the bankruptcy estate for its loss occasioned by the fraudulent

conveyance." *In re Maddalena*, 176 B.R. at 557–58; *see also In re 1031 Tax Grp., LLC*, 439

B.R. at 89 (awarding prejudgment interest from the date the adversary proceeding was

commenced); *In re Bruno Mach. Corp.,* 435 B.R. 819, 2010 WL 2403124, at *21–22 (same).

## V.    THE COURT SHOULD AWARD PREJUDGMENT INTEREST AT THE RATE OF NINE PERCENT PER YEAR

Given that the Trustee's avoidance actions are being adjudicated in New York, where

Defendants executed customer agreements which included New York choice of law provisions,

and had their investments managed by BLMIS, it is appropriate to look to and consider the

governing state statute, which provides for an award of prejudgment interest where a defendant's

"act or omission" has "depriv[ed] or otherwise interfer[ed] with title to, or possession or

enjoyment of, property . . . ." N.Y. C.P.L.R. § 5001(a).  That statute further provides that in the

absence of another applicable statute, judgments shall be assessed interest at a constant rate of

nine percent per year from the earliest date on which the cause of action existed through to

payment of judgment.  *See id.*; *see also* N.Y. C.P.L.R. § 5004.

Courts have applied the statutory rate in similar circumstances where there were victims

"deserving of redress for the wrongful retention of the subject funds during the pendency of the

lawsuits."  *Pereira v. Priv. Brands, Inc. (In re Harvard Knitwear, Inc.)*, 193 B.R. 398, 399

(Bankr. E.D.N.Y. 1996) (allowing prejudgment interest at the New York statutory rate).

Defendants may argue the New York statutory rate "is higher than market rates in the current

economy," but the District Court previously addressed and rejected this argument stating, "[t]he

appropriate interest rate is not measured by particular fluctuations in categories of interest rates

for public or private securities or lending."  *Citibank, N.A. v. Barclays Bank*, *PLC,* 28 F. Supp.

3d 174, 184 (S.D.N.Y. 2013) (internal citation omitted).  The District Court explained that

"[m]any states have prejudgment interest rates of 9% or greater, and the Rhode Island Supreme

Court previously held that a prejudgment interest rate of 12% is 'even in today's economy …a

reasonable measure of the loss sustained through delay in payment.'" *Id.* (citing *Oden v. Schwartz,* 71 A.3d 438, 457 (R.I. 2013)).  Indeed, the rate of the Court's "award of prejudgment interest will depend on the circumstances of the individual case, and a court need not limit the award of prejudgment interest to the rate at which the injured party would have lent money to the government." *Jones v. UNUM Life Ins. Co. of America*, 223 F.3d 130, 139 (2d Cir. 2000).

In addition, the customer agreements pursuant to which Defendants' investment advisory accounts were opened and held at BLMIS all provide that the agreements were made in New York, and "shall be construed, and the rights and liabilities of the parties determined in accordance with the laws of the state of New York." Stmt. ¶ 3; TX-019; TX-020.  Defendants acceded to be judged under New York law (to the extent it is consistent with SIPA and the Bankruptcy Code (*see* 15 U.S.C. § 78fff(b))), in connection with their BLMIS accounts.

Further, it is not inconsistent or improper for the Court to look to the baseline set in New York's statutory prejudgment interest rate to award interest on a judgment where, as here, it accurately reflects the loss resulting from Defendants withholding of the return of fictitious profits.  For example, in *Gust, Inc. v. Alphacap Ventures, LLC*, the district court denied a motion to reconsider an award of prejudgment interest at the New York interest rate of nine percent, noting that "while [the plaintiff's] claims arise out of federal law . . . there is no reason to think that the [federal] rate more accurately captures the true loss to [the plaintiff]." No. 15CV6192 (DLC), 2017 WL 2875642, at *7 (S.D.N.Y. July 6, 2017), *rev'd on other grounds*, 905 F.3d 1321 (Fed. Cir. 2018); *see also New York City Dist. Council of Carpenters v. Tried N True Interiors LLC*, No. 20 CIV. 00051 (LGS), 2020 WL 1809323, at *4 (S.D.N.Y. Apr. 9, 2020) (finding arbitration award of 9% interest in federal labor law dispute appropriate after considering "the benefit that [plaintiff] could have derived from the due payments had the funds been issued at the

23

appropriate time and invested during the pendency of [this] proceeding") (internal citation and quotation marks omitted); *Alfano*, 2009 WL 890626, at *7 (while plaintiff brought only federal claims under ERISA, the court determined that New York's statutory prejudgment interest rate of 9% better reflected "the true loss to plaintiff"); *In re Livent, Inc.*, 360 F. Supp. 2d at 572 (holding that noteholders that brought federal claims under Section 11 of the Securities Act were entitled to prejudgment interest at the forum state rate of 9% to fully compensate for investment losses).

Accordingly, an award of prejudgment interest on the amount of the Two-Year Transfers at the rate of nine percent per year, beginning on November 30, 2010 is warranted. The Defendants are liable to the Trustee for the Two-Year Transfers in the amount of $2,813,000, plus interest thereon from November 30, 2010 through the date of this motion, October 15, 2020, in the amount of $2,303,847, for the total amount of $5,116,847.

## **CONCLUSION**

The Trustee respectfully requests that the Court, in its discretion, award prejudgment interest from the date of the filed complaint, at nine percent per annum.

Dated: October 15, 2020
      New York, New York

/s/ Nicholas J. Cremona
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*