# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement"), dated as of September 29, 2020, is made by and between Irving H. Picard, in his capacity as the trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of Bernard L. Madoff ("Madoff"), on the one hand, and AA (Alternative Advantage) PLC ("AA") on behalf of its sub-fund, Landmark Investment Fund Ireland ("Landmark"), on the other hand. Unless otherwise expressly provided, references to "AA" herein shall mean AA acting on behalf of its sub-fund, Landmark, and a reference herein to one shall include a reference to the other. The Trustee and AA collectively shall be referred to herein as the "Parties."

## BACKGROUND

A.   BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.   On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C.   On December 15, 2008, the District Court entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS

under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the consolidated BLMIS estate (the "BLMIS Estate"). By Order dated June 9, 2009 the estate of Madoff was substantively consolidated with the BLMIS Estate.

D. Landmark maintained an account with BLMIS, which was opened in September 2007 and designated Account No. 1FR133 (the "Account").

E. From the opening of the Account to the Filing Date, Landmark deposited One Hundred Forty and Three Million Five Hundred and Fifty Thousand United States Dollars ($143,550,000) into the Account, and withdrew Fifty-Two Million Two-Hundred Thousand United States Dollars ($52,200,000.00) in principal from the Account (the "Transfers").

F. Landmark did not file a customer claim in the SIPA Proceeding, and none of the balance of the funds it deposited into the Account (being $91,350,000, the difference between the amount deposited and the Transfers), has been returned to it.

G. On December 5, 2010, the Trustee filed a complaint in the United States Bankruptcy Court for the Southern District of New York in the adversary proceeding captioned *Picard v. UBS AG, et al.*, Adv. Pro. No. 10-05311 (Bankr. S.D.N.Y.) (SMB) (the "Adversary Proceeding"). In the complaint, the Trustee asserted claims against Landmark to avoid and recover the Transfers under 11 U.S.C. §§ 544, 547, 548, 550 or 551, SIPA § 78fff-2(c)(3), and the New York Debtor and Creditor Law §§ 270–281 (the "Avoidance Claims"). Landmark's

        time to answer to the complaint has not yet expired, but Landmark denies that the Avoidance Claims have merit.

H.    In connection with settlement mediation between the Parties, AA has made certain documents available for informal review by the Trustee.

I.    AA has no meaningful ongoing business other than the resolution of the Adversary Proceeding and Avoidance Claims as against it. Following the payment of portion of the Settlement Payment (as defined below) due on the Closing Date (as defined below) AA intends to appoint a liquidator (the "<u>Liquidator</u>") to itself to conclude its liquidation and winding up pursuant to Section 579 of The Companies Act of 2014 (No. 38 of 2014) (the "<u>AA Liquidation</u>").

J.    AA has provided to the Trustee satisfactory evidence of its financial status and assets, which reflects that, following (i) AA's payment of legal and other service provider fees and expenses up through the time of the AA Liquidation, (ii) AA's payment of the Settlement Payment, as that term is defined in this Agreement, and (iii) the AA Liquidation, AA will be left with no assets and will have no access or potential access to further sources of funds.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises, and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Parties agree:

1. **<u>The Closing and Settlement Payment</u>**. The closing ("<u>Closing</u>") of the settlement contemplated herein will occur on a date mutually agreed by the Parties within ten business days of the Effective Date (defined below) of this Agreement (the "<u>Closing

Date"). Upon the Closing, the releases contained in paragraphs 5 and 6 below shall become effective without any further action of the Parties, with the Parties continuing to have the right thereafter to seek enforcement of this Agreement.

2. **The Settlement Payment**. After discharging all legal and other service provider fees and expenses (including, but not limited to, the cost and expense of documenting and implementing this Agreement and the AA Liquidation), AA shall pay to the Trustee the balance of funds available to it (the "Settlement Payment"), an amount expected to be approximately $3 million. AA shall make the Settlement Payment in the following two installments: (1) on the Closing Date, AA shall pay the Trustee ninety percent (90%) of the expected Settlement Payment, and (2) upon the conclusion of AA Liquidation (at which time AA expects that it will incur no further costs or expenses and at which time the precise amount of the Settlement Payment will be known), AA (through its Liquidator) shall pay the Trustee such additional amount as necessary to satisfy the Settlement Payment in full (the "Final Settlement Payment"). The AA Liquidation, and accordingly the payment of the Final Settlement Payment, are expected to occur within six months of the Closing Date, but there is no certainty in that estimate. The foregoing amounts shall be wire-transferred to the Trustee as follows:

Citi Private Bank
153 East 53rd Street, 23rd Floor
New York, NY 10022

ABA No ▮▮▮▮▮▮▮

Swift Code: ▮▮▮▮▮▮▮

Account Name: Irving H. Picard, Trustee for the Liquidation of
Bernard L. Madoff Investment Securities LLC

Account No. ▮▮▮▮▮▮▮

CPAM: 13196080.11

4

3. **Letter Rogatory Discovery.** Based upon a Letter Rogatory in the Adversary Proceeding, the Trustee has obtained from the High Court of Justice of Ireland an Order for testimony supported by documentation from Landmark. The execution of this Settlement Agreement shall have no effect on that proceeding and any discovery required thereunder. Likewise, the outcome of that proceeding and discovery shall have no effect on this Settlement Agreement.

4. **Evidence of AA's Financial Condition**. As set forth in Background paragraph (J) above, this settlement is predicated, in part, upon AA's representations concerning its financial condition. Prior to the execution of this Agreement, AA has provided to the Trustee evidence of its assets and estimates of its anticipated expenses up through the time of the AA Liquidation, reflecting that, after AA's payment of outstanding and other legal service provider fees and expenses up through the time of the AA Liquidation, the expected amount of the Settlement Payment will be approximately $3 million and, following the Final Settlement Payment, AA will be left with no assets and will not have any access or potential access to any additional sources of funds. On the Closing Date, AA shall provide to the Trustee a certification, from a majority of its directors, certifying that, after taking into account the expenses AA has incurred consistent with the estimates it had provided to the Trustee, AA's financial condition has not materially changed from the time of the Trustee's review of AA's financial records. In connection with AA's Liquidation, pursuant Section 207 of The Companies Act of 2014 (No. 38 of 2014), AA will be required to prepare a Declaration of its solvency, sworn by a majority of it directors, for the purposes of the appointment of a Liquidator, a copy of which AA agrees to promptly provide to the Trustee when available.

5.   **Release by the Trustee.**  In consideration for the terms herein, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Trustee's receipt of the Final Settlement Payment (as defined in paragraph 2 above), the Trustee, on behalf of himself, BLMIS, and its consolidated estates, shall release, acquit, and forever discharge AA, including its successors and/or assigns, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of, and any, liability or damages (including any allegation of, and any, duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown (as defined in paragraph 7), that are, have been, could have been, or might in the future be asserted by the Trustee, on behalf of himself, BLMIS, and its consolidated estates, or based on, arising out of, or in any way related to BLMIS, Madoff, the Account, the Transfers or the claims against Landmark in the Adversary Proceeding, except for any and all claims to enforce the obligations of AA under this Agreement.  The release granted by the Trustee hereunder shall extend to AA's and/or Landmark's shareholders, directors, managers, third party service providers, agents and attorneys, and any subsequent transferees thereof, but shall not include a release of claims that the Trustee may bring that are unrelated to BLMIS, Madoff, the Account, the Transfers, or the claims against Landmark in the Adversary Proceeding.

6. **Release by AA.** In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Trustee's receipt of the Final Settlement Payment (as defined in paragraph 2 above), AA hereby releases, acquits, and forever discharges the Trustee and all his agents, representatives, attorneys, employees, and professionals, and the BLMIS Estate from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of, and any, liability or damages (including any allegation of, and any, duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity, or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs or, disbursements), known or unknown (as defined in paragraph 7), existing as of the date of the Closing (as defined in paragraph 2) that are, have been, could have been, or might in the future be asserted by AA based on, arising out of, or in any way related to BLMIS, Madoff, the Account, the Transfers or the claims against Landmark in the Adversary Proceeding, except for the rights of AA to enforce the obligations of the Trustee under this Agreement, but shall not include a release of claims that Landmark or AA may bring that are unrelated to BLMIS, Madoff, the Account, the Transfers, or the claims against Landmark in the Adversary Proceeding.

7. **Unknown Claims.**  Unknown claims shall mean any claims released pursuant to paragraph 5 or 6 of this Agreement that the Parties do not know of or suspect to exist in their favor at the time of giving the release in this Agreement that, if known by the Parties, might have affected their settlement and release in this Agreement.  The Parties shall be deemed to have waived, and by operation of the Bankruptcy Court's approval of this Agreement, shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542, (and any similar law, rule, or regulation), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR,

and any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or non-U.S. law, which is similar, comparable, or equivalent to California Civil Code § 1542.

8. **Dismissal of Adversary Proceedings.**  Within five business days of Trustee's receipt of the Final Settlement Payment (as set forth in paragraph 2 above), the Parties shall submit to the Bankruptcy Court a stipulation requesting the dismissal of the Adversary Proceeding, with prejudice, as against Landmark, with each Party bearing its own costs, attorneys' fees, and expenses.

9. **Court Approval; Effective Date.**  The parties' obligation to perform under this Agreement (other than the Trustee's obligation under this paragraph to submit this Agreement for the approval of the Bankruptcy Court and to use reasonable efforts to obtain such approval) is subject to and shall become effective and binding on the Parties

upon the Bankruptcy Court's entry of an order approving this Agreement in the SIPA Proceeding (the "Approval Order") that, with the passage of time or further proceedings, is no longer subject to appeal, review, or rehearing (the "Effective Date"). The Parties anticipate that, assuming no appeal or other challenge to the Bankruptcy Court's Approval Order, the Effective Date will be fifteen days after the entry of that Approval Order. The Trustee shall use his reasonable efforts to obtain the Approval Order as promptly as practicable after the execution of this Agreement.

10. **Termination.** If the Effective Date set forth in paragraph 9 above has not occurred within 120 days after the date this Agreement is executed (or within such additional time as mutually agreed upon by the Parties), then (i) this Agreement (other than this paragraph) shall terminate and be void; (ii) all of the statements, concessions, consents, and agreements contained in the Agreement (other than this paragraph) shall be void; and (iii) neither the Trustee nor AA may use or rely on any such statement, concession, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, Adversary Proceeding, or any case or proceeding relating to Landmark, BLMIS, or Madoff.

11. **AA's and Trustee's Authority.** AA represents and warrants to the Trustee that, (i) as of the date hereof, it has the full power, authority, and legal right to execute and deliver, and to perform its respective obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of its respective obligations under this Agreement and (ii) it will take reasonable steps to appoint a Liquidator to itself as soon as practicable after the Closing Date. The Trustee represents and warrants to AA that, as of the date hereof, and subject to the approval of the

    Bankruptcy Court as set forth in paragraph 9 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement

12. **Business Days.**  For purposes of this Agreement the term "business days" shall mean any day other than Saturday, Sunday, or a day that is a legal holiday in New York City.

13. **Further Assurances.**  The Parties shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

14. **Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the Trustee and AA and supersedes any and all prior agreements, representations, and understandings of the Parties concerning the subject matter hereof.

15. **No Admission.**  This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing whatsoever.  This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability, or wrongdoing whatsoever.

16. **Amendments; Waiver.**  This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

17. **Assignability.** No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

18. **Successors Bound.** This Agreement shall be binding upon and inure to the benefit of each of the Parties and their respective successors and permitted assigns.

19. **No Third-Party Beneficiary.** Except as expressly provided herein, the Parties do not intend to confer any benefit of or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

20. **Applicable Law.** This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of law provisions.

21. **Exclusive Jurisdiction.** The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all disputes between the Parties, whether in law or equity, arising out of this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action. In the event the BLMIS proceeding is closed by a final decree and not reopened, the Parties agree that any dispute arising out of this Agreement may be brought in the United States District Court for the Southern District of New York or the Supreme Court of the State of New York in New York County. For the avoidance of doubt, neither AA nor Landmark is submitting to jurisdiction in any court (including any Bankruptcy Court or the United States District Court for the Southern District of New York or the Supreme Court of New York in New York County) anywhere in the United States pursuant to the terms hereof, with the limited exception relating to disputes arising out of this Agreement or any provision hereof.

22. **Captions and Rules of Construction**. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not intended to be limiting.

23. **Counterparts; Electronic Copy of Signatures.** This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Party of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

24. **Negotiated Agreement**. This Agreement has been fully negotiated by the Parties. Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

25. **Severability.** In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

26. **Notices.** Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

If to the Trustee:                          If to Landmark, c/o:

| | |
|---|---|
| Irving H. Picard<br>Email: ipicard@bakerlaw.com<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br><br>with a copy to:<br><br>Oren J. Warshavsky<br>Email: owarshavsky@bakerlaw.com<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Fax: (212) 589-4201 | Thomas J. Hall<br>Email: thomas.hall@nortonrosefulbright.com<br>Norton Rose Fulbright US LLP<br>1301 Avenue of the Americas<br>New York, New York 10019-6022<br>Fax: (212) 541-5369<br><br>with a copy to:<br><br>Owen O'Sullivan<br>Email: owen.osullivan@williamfry.com<br>William Fry Solicitors<br>2 Grand Canal Square<br>Dublin 2, D02 A342<br>Ireland |

[*Signature pages follow*]

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

                                                AA Alternative Advantage PLC on behalf of its sub-fund, LANDMARK INVESTMENT FUND IRELAND

_/s/ Irving H. Picard, Trustee_
Irving H. Picard, Trustee

                                                By: _____
                                                Name:
                                                Title:

CPAM: 13196080.11

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

_____
Irving H. Picard, Trustee

AA Alternative Advantage PLC on behalf of its sub-fund, LANDMARK INVESTMENT FUND IRELAND

By: _____
Name: **Adrian Waters**
Title: **Director**

CPAM: 13196080.11

14