**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**TRUSTEE'S TWENTY-FOURTH INTERIM REPORT**
**FOR THE PERIOD APRIL 1, 2020 THROUGH SEPTEMBER 30, 2020**

# TABLE OF CONTENTS

<u>Page</u>

| | | |
|---|---|---|
| I. | EXECUTIVE SUMMARY | 1 |
| II. | BACKGROUND | 3 |
| III. | FINANCIAL CONDITION OF THE ESTATE | 3 |
| IV. | CLAIMS ADMINISTRATION | 4 |
| | A. Claims Processing | 4 |
| | i. Customer Claims | 4 |
| | ii. General Creditor Claims | 5 |
| | iii. The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process | 5 |
| | iv. The Hardship Program | 6 |
| | B. Objections To Claims Determinations | 6 |
| | C. Settlements Of Customer Claims Disputes | 7 |
| V. | PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA | 8 |
| | A. Net Equity Dispute | 8 |
| | B. Time-Based Damages | 10 |
| | C. "Customer" Definition | 11 |
| | D. Inter-Account Transfers | 12 |
| | E. Profit-Withdrawal Issue | 13 |
| VI. | LITIGATION | 16 |
| | A. The District Court—Motions to Dismiss and Related Appeals | 16 |
| | B. Good Faith Actions | 16 |
| | i. Resolution of Good Faith Avoidance Actions | 16 |
| | ii. Trial-Related Motion Practice | 17 |
| | (a) Nelson Actions | 17 |
| | (b) Michael Mann Action | 18 |
| | (c) James Greiff Action | 20 |
| | iii. Summary Judgment Motions | 21 |
| | (a) South Ferry/Lowrey Actions | 21 |
| | (b) RAR Entrepreneurial Fund Ltd. Action | 23 |
| | (c) Estate of Allen Meisels Action | 24 |
| | (d) Estate of Seymour Epstein Action | 25 |
| | (e) Elaine Dine Living Trust Action | 26 |
| | (f) Philip F. Palmedo Action | 27 |
| | (g) Mark Horowitz Action | 28 |
| | (h) Zieses Investment Partnership Action | 29 |

**TABLE OF CONTENTS**
(continued)

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | (i) | Lisa Beth Nissenbaum Action | 29 |
|  |  | (j) | JABA Associates LP Action | 30 |
|  |  | (k) | Marlene Krauss Action | 31 |
|  | C. | Subsequent Transfer Actions | | 31 |
|  | D. | Actions Relating to BLMIS Feeder Funds | | 32 |
|  |  | i. | Extraterritoriality | 32 |
|  |  | ii. | Limited Discovery Motion | 34 |
|  |  | iii. | Picard v. ABN AMRO | 35 |
|  |  | iv. | Picard v. ABN AMRO (Ireland) Ltd. (Fortis) | 37 |
|  |  | v. | Picard v. Citibank | 40 |
|  |  | vi. | The HSBC Action | 43 |
|  |  | vii. | The Luxalpha Action | 44 |
|  |  | viii. | Picard v. Fairfield Greenwich | 46 |
|  |  | ix. | Picard v. Rye/Tremont | 51 |
|  |  | x. | Picard v. Square One | 53 |
|  |  | xi. | Picard v. Natixis | 54 |
|  |  | xii. | Picard v. Nomura | 55 |
|  | E. | Other Bad Faith Actions | | 57 |
|  |  | i. | Picard v. Avellino & Bienes | 57 |
|  |  | ii. | Picard v. Andrew H. Madoff and Picard v. Mark D. Madoff | 58 |
|  |  | iii. | Picard v. Cohmad Sec. Corp. | 58 |
|  |  | iv. | Picard v. Magnify Inc. | 60 |
|  |  | v. | Picard v. Legacy | 62 |
|  |  | vi. | Picard v. Merrill Lynch | 65 |
| VII. | INTERNATIONAL INVESTIGATION AND LITIGATION | | | 67 |
|  | A. | Austria | | 68 |
|  | B. | BVI | | 68 |
|  | C. | Cayman Islands | | 68 |
|  | D. | England | | 68 |
|  | E. | France | | 69 |
|  | F. | Ireland | | 69 |
|  | G. | Israel | | 69 |
|  | H. | Liechtenstein | | 69 |
|  | I. | Switzerland and Luxembourg | | 69 |

**TABLE OF CONTENTS**
(continued)

                                                                        **Page**

VIII.    RECOVERIES AND CONTINGENCIES .........................................................70

    A.    Recoveries Accomplished During Prior Report Periods ......................................70

    B.    Recoveries Accomplished During This Report Period..........................................70

IX.    THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO
    CUSTOMERS...............................................................................................................71

    A.    The Customer Fund.............................................................................................71

    B.    The General Estate ...........................................................................................72

X.    FEE APPLICATIONS AND RELATED APPEALS.......................................................73

    A.    Objections to Prior Fee Applications...................................................................73

    B.    Thirty-Second Fee Application............................................................................73

    C.    Thirty-Third Fee Application..............................................................................74

XI.    CONCLUSION............................................................................................................75

TO THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the

Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the Chapter 7

estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and

collectively, the "Debtors"), respectfully submits his Twenty-Fourth Interim Report (this

"Report") pursuant to SIPA § 78fff-1(c) and this Court's Order on Application for an Entry of an

Order Approving Form and Manner of Publication and Mailing of Notices, Specifying

Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief

entered on December 23, 2008 (the "Claims Procedures Order") (ECF No. 12).[2] Pursuant to the

Claims Procedures Order, the Trustee shall file additional interim reports every six months. This

Report covers the period between April 1, 2020 and September 30, 2020 (the "Report Period").

## I.    EXECUTIVE SUMMARY

1.    The Trustee has worked tirelessly for nearly twelve years to recover customer

property and distribute it to BLMIS customers who have not fully recovered the money they

deposited with BLMIS. Through pre-litigation and other settlements, the Trustee has

successfully recovered approximately $14.364 billion through September 30, 2020.

2.    On January 8, 2020, this Court approved the Trustee's eleventh allocation and

distribution to customers, in which the Trustee allocated more than $988 million to the Customer

Fund. Through February 28, 2020, the Trustee distributed approximately $369 million on

allowed claims relating to 854 accounts, or 1.975% of each customer's allowed claim, unless the

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."
[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

claim was fully satisfied. When combined with the prior ten distributions, and $849.3 million in advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"), the Trustee has distributed approximately $13.931 billion to BLMIS customers through September 30, 2020, with 1,474 BLMIS accounts fully satisfied. The 1,474 fully satisfied accounts represent more than 64% of accounts with allowed claims, demonstrating that the Trustee has made significant progress in returning customer property to BLMIS customers. All allowed customer claims up to $1.588 million have been fully satisfied.

3.      The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP ("B&H"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various special counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel"), continued to litigate hundreds of individual cases before this Court, the United States District Court for the Southern District of New York (the "District Court"), the United States Court of Appeals for the Second Circuit (the "Second Circuit"), the Supreme Court, and dozens of international courts.

4.      This Report is meant to provide an overview of the efforts of the Trustee and his team of professionals in unwinding the largest Ponzi scheme in history. This fraud involved many billions of dollars and thousands of people and entities located across the world. The Trustee continues to work diligently to coordinate the administration, investigation, and litigation to maximize recoveries and efficiencies and reduce costs.

5.      All Interim Reports, along with a docket and substantial information about this liquidation proceeding, are located on the Trustee's website, www.madofftrustee.com (the "Trustee Website").

## II.    BACKGROUND

6.    The Trustee's prior interim reports, each of which is fully incorporated herein, have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.[3]

## III.    FINANCIAL CONDITION OF THE ESTATE

7.    No administration costs, including the compensation of the Trustee, his counsel, and his consultants, are being, or have been, paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers with allowed claims. Rather, the fees and expenses of the Trustee, his counsel and consultants, and administrative costs incurred by the Trustee are paid through administrative advances from SIPC. These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has obtained or will obtain. Thus, recoveries from litigation, settlements, and other means are available in their entirety for the satisfaction of allowed customer claims.

8.    A summary of the financial condition of the estate as of September 30, 2020 is provided in Exhibit A attached hereto.

---

[3] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report") (ECF No. 4529); October 1, 2011 to March 31, 2012 (the "Seventh Interim Report") (ECF No. 4793); April 1, 2012 to September 30, 2012 (the "Eighth Interim Report") (ECF No. 5066); October 1, 2012 to March 31, 2013 (the "Ninth Interim Report") (ECF No. 5351); April 1, 2013 to September 30, 2013 (the "Tenth Interim Report") (ECF No. 5554); October 1, 2013 to March 31, 2014 (the "Eleventh Interim Report") (ECF No. 6466); April 1, 2014 to September 30, 2014 (the "Twelfth Interim Report") (ECF No. 8276); October 1, 2014 through March 31, 2015 (the "Thirteenth Interim Report") (ECF No. 9895); April 1, 2015 through September 30, 2015 (the "Fourteenth Interim Report") (ECF No. 11912); October 1, 2015 through March 31, 2016 (the "Fifteenth Interim Report") (ECF No. 13184); April 1, 2016 through September 30, 2016 (the "Sixteenth Interim Report") (ECF No. 14347); October 1, 2016 through March 31, 2017 (the "Seventeenth Interim Report") (ECF No. 15922); April 1, 2017 through September 30, 2017 (the "Eighteenth Interim Report") (ECF No. 16862); October 1, 2017 through March 31, 2018 (the "Nineteenth Interim Report") (ECF No. 17555); April 1, 2018 through September 30, 2018 (the "Twentieth Interim Report") (ECF No. 18146); October 1, 2018 through March 31, 2019 (the "Twenty-First Interim Report") (ECF No. 18716), April 1, 2019 through September 30, 2019 (the "Twenty-Second Interim Report") (ECF No. 19097); and October 1, 2019 through March 31, 2020 (the "Twenty-Third Interim Report") (ECF No. 19502).

9.      This summary reflects cash of $20,325,636.34, short term investments, money market deposit accounts and other investments, including alternative investments received in connection with the Chais settlement of $657,779,244, and short-term United States Treasuries in the amount of $337,912,099.  *See* Exhibit A, page 3, note (3) and page 6, notes (4) and (5).

10.     As detailed in Exhibit A, as of September 30, 2020, the Trustee requested and SIPC advanced $2,817,677,592.38, of which $848,943,412.47 was used to pay allowed customer claims up to the maximum SIPA statutory limit of $500,000 per account, and $1,968,734,179.91 was used for administrative expenses.  *See* Exhibit A, page 1.

## IV.     CLAIMS ADMINISTRATION

### A.     Claims Processing

#### i.      Customer Claims

11.     During the Report Period, the Trustee allowed $714,420.66 in customer claims, bringing the total amount of allowed claims as of September 30, 2020 to $19,415,557,971.92. The Trustee has paid or committed to pay $849,338,412.47 in cash advances from SIPC through September 30, 2020. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

12.     As of September 30, 2020, there were 11 claims relating to 7 accounts that were "deemed determined," meaning the Trustee has instituted litigation against those accountholders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

**ii.      General Creditor Claims**

13.      As of September 30, 2020, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 428 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265.4 million. At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

**iii.      The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process**

14.      Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, from both claimants and their representatives.

15.      The Trustee Website (www.madofftrustee.com) allows the Trustee to share information with claimants, their representatives, and the general public regarding the ongoing recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

16.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of September 30, 2020, the Trustee and his professionals had received and responded to more than 7,100 e-mails via the Trustee Website from BLMIS customers and their representatives and fielded thousands of calls from claimants and their representatives.

17.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that customers are as informed as possible about various aspects of the BLMIS proceeding.

### iv.     The Hardship Program

18.     This liquidation had offered two different Hardship Programs to former BLMIS customers, both of which are detailed in prior reports along with statistics regarding how many customers have availed themselves of the program. *See* Trustee's Twentieth Interim Report, ECF No. 18146. As of September 30, 2020, there were 7 Hardship Applications still under review and 186 that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. After nearly 12 years, the Hardship Program was officially terminated.

### B.     Objections To Claims Determinations

19.     As of September 30, 2020, 1,812 docketed objections (which exclude withdrawn objections and include duplicates, amendments, and supplements) had been filed with the Court. These objections relate to 3,359 unique claims and 769 accounts. As of September 30, 2020, 287 docketed objections (related to 330 unique claims and 259 accounts) remained.

20.     The following objections, among others, have been asserted: Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those

who had a direct account with BLMIS, the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method," claimants should receive interest on deposited amounts, the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments, claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits, each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account, and there is no legal basis for requiring the execution of a Assignment and Release prior to prompt payment of a SIPC advance.

21.     The Trustee departed from past practice in SIPA proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

22.     As part of his ongoing efforts to resolve pending objections, counsel for the Trustee has continued investigating and analyzing objections of claimants to the Trustee's determination of their claims. During this extensive review of the facts unique to each claimant, the Trustee has identified circumstances that require resolution by the Bankruptcy Court. Prior disputes are described in the Trustee's previous reports.

## C.     Settlements Of Customer Claims Disputes

23.     As of September 30, 2020, the Trustee had reached agreements relating to 1,098 accounts and with the IRS (which did not have a BLMIS account). These litigation, pre-litigation, and avoidance action settlements allowed the Trustee to avoid the litigation costs that would have otherwise been necessary.

## V.      PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA

### A.      <u>Net Equity Dispute</u>

24.     For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method. Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

25.     On August 16, 2011, the Second Circuit affirmed this Court's decision and the Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee to discharge claims for securities under SIPA "upon the false premise that customers' securities positions are what the account statements purport them to be." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011) (the "Net Equity Decision"). Any calculation other than the Net Investment Method would "aggravate the injuries caused by Madoff's fraud." *Id.* at 235. Instead, the Net Investment Method prevents the "whim of the defrauder" from controlling the process of unwinding the fraud. *Id.*

26.     Under the Net Equity Decision, the relative position of each BLMIS customer account must be calculated based on "unmanipulated withdrawals and deposits" from its opening date through December 2008. *Id.* at 238. If an account has a positive cash balance, that accountholder is owed money from the estate. As a corollary, if an account has a negative cash balance, the accountholder owes money to the estate. Both the recovery and distribution of customer property in this case are centered on the principle that the Trustee cannot credit "impossible transactions." *Id.* at 241. If he did, then "those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional

benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id.* at 238.

27.    The Second Circuit found, "in the context of this Ponzi scheme—the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims unfairly ahead of others.'" *Id.* at 242 n.10 (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 463 (S.D.N.Y. 2001)). Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of Madoff's fictitious trades at the expense of the other class of customers—the "net losers," or those who have yet to recover their initial investment.

28.    Finally, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money entrusted to Madoff for the purpose of making investments." *Id.* at 240. Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would create 'potential absurdities.'" *Id.* at 241 (quoting *In re New Times Sec. Serv., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)). Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id.* at 235.

29.    A petition for panel rehearing, or, in the alternative, for rehearing en banc was denied. *Sterling Equities Assoc. v. Picard*, Adv. No. 10-2378 (2d Cir.) (ECF Nos. 505, 537, 551). Three petitions for certiorari were filed with the Supreme Court, which were denied. *Ryan v.*

*Picard*, 133 S. Ct. 24 (2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012). Certiorari was also

dismissed with respect to one appeal. *Sterling Equities Assoc. v. Picard*, 132 S. Ct. 2712 (2012).

**B.     Time-Based Damages**

30.     Following the litigation regarding the Net Investment Method, the Trustee filed a

motion to affirm his net equity calculations and denying requests for "time-based damages."

(ECF Nos. 5038, 5039). The Trustee took the position that customers were not entitled to an

inflation-based adjustment to their allowed customer claims. This Court agreed. *Sec. Inv'r Prot.*

*Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff)*, 496 B.R. 744 (Bankr.

S.D.N.Y. 2013) (the "Time-Based Damages Decision"); *see also* ECF No. 5463.

31.     On February 20, 2015, the Second Circuit affirmed the Bankruptcy Court's

decision, holding that "SIPA's scheme disallows an inflation adjustment as a matter of law." *See*

*In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 80, 82 (2d Cir. 2015). The Court also held

that "an interest adjustment to customer net equity claims is impermissible under SIPA's

scheme." *Id.* at 83.

32.     Under the Second Circuit's decision, a customer's net equity claim, calculated in

accordance with the Time-Based Damages Decision, will not be adjusted for inflation or interest.

The Second Circuit explained that "an inflation adjustment goes beyond the scope of SIPA's

intended protections and is inconsistent with SIPA's statutory framework." *Id.* at 79. Nor does

SIPA provide for compensation related to any opportunity cost of the use of such money during

the pendency of the liquidation proceedings. *Id.* at 80. While SIPA operates to "facilitate the

proportional distribution of customer property actually held by the broker," *id.* at 81, "the Act . . .

restores investors to what their position would have been in the absence of liquidation." *Id.* at 79.

For similar reasons, the Second Circuit rejected the request of one claimant who sought an

adjustment for interest, in addition to inflation. *Id.* at 83.

33.     The Supreme Court denied the petition for certiorari filed. *Peshkin v. Picard*, 136 S. Ct. 218 (2015).

**C.     "Customer" Definition**

34.     In this liquidation, the Trustee discovered that many claimants did not invest directly with BLMIS, but through an intermediary such as a "feeder fund." The Trustee's position consistently has been that only those claimants who maintained an account at BLMIS constitute "customers" of BLMIS, as defined in § 78lll(2) of SIPA. Where it appeared that claimants did not have an account in their names at BLMIS, the Trustee denied their claims for securities and/or a credit balance on the ground that they were not customers of BLMIS under SIPA.

35.     On June 28, 2011, the Court issued a decision affirming the Trustee's denial of these claims. (ECF Nos. 3018, 4193, 4209); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011). The Court found that the objecting claimants invested in, not through, the feeder funds, and had no individual accounts at BLMIS. It was the feeder funds who entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased ownership interests in the feeder funds. The Court held that, absent a direct broker-dealer relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits.

36.     Judge Lifland put it succinctly: the objecting-claimants who invested in sixteen feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received

no account statements or other communications from BLMIS and had no transactions reflected on the books and records of BLMIS . . . ." *Id.* at 290.

37.    On January 4, 2012, Judge Cote affirmed the Bankruptcy Court decision. *See Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012). In that decision, Judge Cote determined in light of SIPA, the "most natural reading of the 'customer' definition excludes persons like the appellants who invest in separate third-party corporate entities like their feeder funds that in turn invest their assets with the debtor." *Id.* at 123.

38.    On February 22, 2013, the Second Circuit affirmed the decisions of the District Court and the Bankruptcy Court. *See Kruse v. Sec. Inv'r Prot. Corp., Irving H. Picard*, 708 F.3d 422 (2d Cir. 2013). No petitions for certiorari were filed.

**D.    Inter-Account Transfers**

39.    The Trustee has maintained, and the Second Circuit affirmed, that the "cash-in, cash-out" methodology is appropriate for calculating a customer's net equity in this case. The *Net Equity Decision*, however, did not expressly address the treatment of transfers between BLMIS accounts, which the Trustee refers to as "Inter-Account Transfers." Many customers maintained more than one BLMIS account and transferred funds between such accounts. Other customers transferred funds to the accounts of other BLMIS customers.

40.    On December 8, 2014, the Bankruptcy Court issued a decision upholding the Trustee's methodology for calculating inter-account transfers. ECF No. 8680; *see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). Judge Bernstein explained that if he adopted the objecting parties' arguments, "computing the balance in the transferor's account bloated by fictitious profits increases the transferee's claim to the customer property pool allocable to all Madoff victims by artificially increasing the transferee's net equity. This result aggravates the injury to those net losers who

did not receive transfers of fictitious profits by diminishing the amount available for distribution from the limited pool of customer property." *Id.* at 53. The order memorializing Judge Bernstein's written decision was entered on December 22, 2014. (ECF No. 8857).

41.     On January 14, 2016, the District Court affirmed. Judge Engelmayer held that the Inter-Account Transfer Method "properly applies the Second Circuit's Net Equity Decision and is not otherwise prohibited by law;" in fact, he found that "the method is superior as a matter of law, and not 'clearly inferior,'" to the alternatives proposed by the appellants. *In re BLMIS*, 2016 WL 183492 *1, at *26 (S.D.N.Y. Jan. 14, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238 n.7 (2d Cir. 2011).

42.     On June 1, 2017, the Second Circuit issued a summary order agreeing with the lower courts. Rejecting each of the appellants' arguments in turn, and citing its Net Equity Decision, the Order confirms that the Second Circuit "continue[s] to refuse . . . to 'treat[] fictitious and arbitrarily assigned paper profits as real' and to give 'legal effect to Madoff's machinations.'" *In re Bernard L. Madoff Inv. Sec., LLC*, 2017 WL 2376567, *3 (2d Cir. Jun. 1, 2017).

43.     No petitions for certiorari were filed.

**E.      Profit-Withdrawal Issue**

44.     Several customers, including claimant Mr. Aaron Blecker, objected to the Trustee's denial of their net equity claims because they disputed whether they received funds that appear to be identified on BLMIS customer account statements as "PW," or "Profit Withdrawals."

45.     Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions. Accordingly, the Trustee instituted an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as

cash withdrawals for the purposes of a customer's net equity calculation is proper. (ECF No. 10266).

46.    Following extensive briefing, discovery, and motion practice, the Court held a trial on the matter on January 19, 2018. After hearing testimony from the Trustee's professionals, Mr. Blecker's son, and BLMIS employees, and consideration of the BLMIS books and records offered into evidence, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS customer statement indicated that the customer received a cash distribution in the amount of the PW Transaction. Because claimant Mr. Blecker failed to provide any credible, contrary evidence that the "PW" Transactions on his customer statements were not received, he failed to sustain his burden of proving the amount of his customer claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513 (Bankr. SDNY 2018). The Court entered its Order Affirming the Trustee's Determinations Denying Claims and Overruling the Objections of Participating Claimant Aaron Blecker on August 3, 2018. (ECF No. 17878).

47.    An appeal was taken to the District Court and was fully briefed by January 18, 2019. (ECF Nos. 18, 19, 20, 23, 24). Appellants challenged this Court's application of the Federal Rules of Evidence in admitting and relying on the BLMIS books and records in finding that the profit withdrawal transactions were properly treated as debits under the Net Investment Method. On August 16, 2019, the District Court affirmed the Bankruptcy Court's decision. *Blecker v. Picard*, 2019 WL 3886721 (Aug. 16, 2019) 18 Civ. 7449 (PAE). The District Court found no abuse of discretion in the decision; specifically, it found that this Court rigorously and properly applied the Federal Rules of Evidence and its admission of BLMIS's books and records

as business records was proper. The District Court further held that the burden to overcome the

Trustee's claim determination was Mr. Blecker's and he failed to do so.

48.     On September 13, 2019, an appeal of the District Court's decision was taken to

the Second Circuit. *Blecker v. Picard*, Docket No. 19-2988. On December 27, 2019, appellants

filed their opening brief repeating their claims that this Court failed to apply the Federal Rules of

Evidence, improperly shifted the burden of proof to Mr. Blecker, and that Mr. Blecker could not

have ratified the transactions in his BLMIS account that occurred before 1992.

49.     The Trustee and SIPC's opposition briefs were filed on April 17, 2020.

Appellants filed their reply on May 27, 2020, and oral argument was held on September 21,

2020.

50.     On October 6, 2020, the Second Circuit issued its Summary Order upholding the

District Court's judgment affirming this Court's decision that the Trustee properly treated PW

transactions as debits to BLMIS customer accounts. Summary Order, *In re: Bernard L. Madoff

Investment Securities LLC*, No. 19-2988-bk (2d Cir. Oct. 6, 2020), ECF No. 86-1.  The Second

Circuit found that the District Court properly upheld this Court's admission of the BLMIS books

and records as within the "permissible bounds of its discretion." *Id.* at 4.  Further, the Second

Circuit found no clear error as to this Court's factual determination that Blecker "ratified the PW

Transactions whether as a result of the 10-day clause in the 1992 customer agreements (for PW

Transactions postdating those agreements), or through his 23 years-long, knowing acceptance of

the PW Transactions and the corresponding reductions 24 to his BLMIS accounts" prior to the

1992 customer agreements.  *Id.* The Second Circuit found all other arguments by Mr. Blecker

without merit and rejected them without discussion. *Id.* at 5.

## VI.    LITIGATION

51.    The Trustee is actively involved in dozens of litigations and appeals. This Report does not discuss each of them in detail but instead summarizes those matters with the most activity during the Report Period.

### A.    <u>The District Court—Motions to Dismiss and Related Appeals</u>

52.    Upon the motions of hundreds of defendants, the District Court withdrew the reference in numerous cases and heard numerous motions to dismiss. A total of 485 motions to withdraw and 424 joinders were filed, altogether implicating a total of 807 adversary proceedings. The District Court consolidated briefing and argument on certain common issues raised in the motions to withdraw (the "Common Briefing"), which are discussed in prior reports. *See* Trustee's Twentieth Interim Report, ECF No. 18146. The District Court has since decided the Common Briefing issues and returned all proceedings to the Bankruptcy Court.

### B.    <u>Good Faith Actions</u>

#### i.    <u>Resolution of Good Faith Avoidance Actions</u>

53.    At the beginning of the Report Period, there were 118 active good faith avoidance actions. 9 were closed during the Report Period, leaving a total of 109 open good faith avoidance actions by the end of the Report Period. In certain avoidance actions, the Trustee entered into mediations, considered settlement offers and, where appropriate, agreed to dismiss certain defendants from the actions. During the Report Period, two actions were dismissed for inability to pay. In addition, the Trustee's professionals engaged in settlement negotiations, which led to seven cases entering into documented settlements during the Report Period.

ii.     **Trial-Related Motion Practice**

(a)     **Nelson Actions**

54.     A trial was held on May 8, 2019 and May 9, 2019 in the matters of *Picard v. Carol Nelson*, Adv. Pro No. 10-04658 and *Picard v. Carol Nelson*, Adv. Pro. No. 10-04377.

55.     The Trustee filed his proposed Findings of Fact and Conclusions of Law on July 30, 2019. *See* Adv. Pro. No. 10-04658, ECF No. 165; Adv. Pro. No. 10-04377, ECF No. 162. The Defendants filed their response to the Trustee's proposed Findings of Fact and Conclusions of Law on September 5, 2019. *See* Adv. Pro. No. 10-04658, ECF No. 178-79; Adv. Pro. No. 10-04377, ECF No. 175-76.

56.     Separately, on August 8, 2019, the Defendants moved to dismiss for lack of subject matter jurisdiction. *See* Adv. Pro. No. 10-04658, ECF Nos. 169-71; Adv. Pro. No. 10-04377, ECF Nos. 166-68. On September 18, 2019, the Trustee filed his opposition brief. *See* Adv. Pro. No. 10-04658, ECF Nos. 183-84; Adv. Pro. No. 10-04377, ECF Nos. 180-81. On September 20, 2019, Defendants filed their reply brief in further support of their motion to dismiss for lack of subject matter jurisdiction. *See* Adv. Pro. No. 10-04658, ECF Nos. 187, 191; Adv. Pro. No. 10-04377, ECF Nos. 184, 188. Oral argument was held on September 25, 2019, and the Bankruptcy Court denied the motion.

57.     On October 23, 2019, the Bankruptcy Court entered an order for supplemental briefing on the issue of judicial estoppel. *See* Adv. Pro. No. 10-04377, ECF No. 194.

58.     On November 21, 2019, the Bankruptcy Court issued its Post-Trial Findings of Fact and Conclusions of Law, and on December 9, 2019, entered a judgment in favor of the Trustee to recover from Defendants, jointly and severally, the total amount of $4,740,929.02, granting the Trustee prejudgment interest of 9% from the date of the filing of the complaint. *See* Adv. Pro. No. 10-04377, ECF Nos. 200, 203.

(b)    **Michael Mann Action**

59.    Prior to the Report Period, on September 28, 2018, the Bankruptcy Court issued an Order setting the trial in the *Picard v. BAM, L.P.*, Adv. Pro. No. 10-04390 (SMB) matter (the "Mann Action") to start on December 3, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 108. In response, on October 26, 2018, the Defendants filed a motion to withdraw the reference to the Bankruptcy Court (the "Mann Motion to Withdraw") on their asserted right to a jury trial before the District Court, and on December 27, 2018, the Trustee filed his opposition brief to the Mann Motion to Withdraw. *See* No. 18-cv-09916, ECF Nos. 1, 17. On January 16, 2019, the Defendants filed their reply brief in further support of the Mann Motion to Withdraw. *See* No. 18-cv-09916, ECF No. 22.

60.    Separately, on November 20, 2018, the Defendants moved to stay the December 3 trial, pending a ruling from the District Court on the Mann Motion to Withdraw. *See* Adv. Pro. No. 10-04390, ECF Nos. 114, 121-122. On November 27, 2018, the Trustee filed his opposition to the Defendants' motion to stay the trial, and oral arguments was held on November 28, 2018. *See* Adv. Pro. No. 10-04390, ECF Nos. 127-28, 130.

61.    At the November 28, 2018 hearing, the Bankruptcy Court offered the Defendants the opportunity to make an oral motion to withdraw their customer claims and objections to the Trustee's determinations of those claims, and the Court granted the motion, which was memorialized in the subsequent Order Withdrawing Claims and Objections With Prejudice And Finally Determining Net Equity filed on December 20, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 138. However, the order did not determine the Bankruptcy Court's jurisdiction over the Mann Action, for which the parties provided separate briefing on December 5, 2018 and December 12, 2018, respectively. *See* Adv. Pro. No. 10-04390, ECF Nos. 132, 137. On January 18, 2019, the Bankruptcy Court issued its Memorandum Decision and Order holding that the

Court has equitable jurisdiction over the Mann Action despite the Defendants' withdrawal of their customer claims and objections (the "Jurisdictional Decision"). *See* Adv. Pro. No. 10-04390, ECF No. 148.

62.     On January 25, 2019, the Defendants moved for leave to appeal the Jurisdictional Decision (the "Motion for Leave"). *See* Adv. Pro. No. 10-04390, ECF Nos. 149-150. The Trustee opposed the motion on February 8, 2019. *See* Adv. Pro. No. 10-04390, ECF Nos. 155-156. On February 19, 2019, the Defendants filed their reply brief in further support of their Motion for Leave. *See* No. 19-cv-00812, ECF Nos. 6-7.

63.     On December 21, 2018, the Trustee filed his Motion for Summary Judgment in the Mann Action. *See* Adv. Pro. No. 10-04390, ECF Nos. 140-143. On February 22, 2019, the Defendants filed their opposition brief to the Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 158-160. On March 27, 2019, the Trustee filed his reply brief in further support of his Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 164, 166-167. Oral argument before the Bankruptcy Court was held on April 24, 2019. *See* Adv. Pro. No. 10-04390, ECF No. 173. On September 11, 2019, the Bankruptcy Court issued its Memorandum Decision Granting Relief Under Federal Rule of Civil Procedure 56(g). *See* Adv. Pro. No. 10-04390, ECF No. 174.

64.     On February 26, 2020, District Court Judge Vernon S. Broderick entered an Opinion and Order denying the Mann Motion to Withdraw and Motion for Leave, and directing the Clerk of Court to close the motions. *See* No. 18-cv-09916, ECF No. 28; No. 19-cv-00812, ECF No. 10).

65.     On March 24, 2020, after conferring with counsel and the Court, the Trustee filed a notice of adjournment of the final pre-trial conference from March 25, 2020 to May 27, 2020

given the uncertainty created by COVID-19. *See* Adv. Pro. No. 10-04390, ECF Nos. 189, 191.

The parties subsequently agreed to complete all pre-trial matters by the final pre-trial conference,

which had been adjourned until July 1, 2020. *See* Adv. Pro. No. 10-04390, ECF No. 194.

66.     On June 17, 2020, the Trustee filed his motion in limine to exclude testimony and

exhibits related to Defendants' tax obligations to governmental taxing authorities and accrued

interest on principal deposits. *See* Adv. Pro. No. 10-04390, ECF No. 198-99.

67.     At the July 1, 2020 conference, the Court granted the Trustee's motion *in limine*,

and adjourned for one week to allow Defendants to secure access to their offices, which were

closed due to COVID-19 concerns, and provide the Court with an update by the next scheduled

conference on July 9, 2020. *See* Hr'g Tr. at 22:13-24; 24:18-25:6; Adv. Pro. No. 10-04390, ECF

No. 204.

68.     At the July 9, 2020 follow-up conference, Defendants confirmed they were able to

secure access to their offices, and the Bankruptcy Court adjourned until August 4, 2020 to

finalize the Pretrial Joint Order. *See* Hr'g Tr. at 6:14-23; Adv. Pro. No. 10-04390, ECF No. 205.

The Bankruptcy Court further adjourned the matter until August 11, 2020, after which the parties

submitted their finalized Joint Pretrial Order. *See id.*, ECF No. 209.

69.     On August 19, 2020, the matter was reassigned from Judge Bernstein to Chief

Judge Cecelia G. Morris and the trial was held virtually on September 14, 2020 pursuant to the

Order Establishing Procedures For Remote Evidentiary Hearing/Trial. *See* Adv. Pro. No. 10-

04390, ECF Nos. 213-214, 216.

                    **(c)      James Greiff Action**

70.     During the pre-trial conference held on February 20, 2020, the Bankruptcy Court

set trial to start on April 7, 2020. *See* Hearing Re Pre-Trial Conference, at 5:21-6:4; Adv. Pro.

No. 10-04387, ECF No. 111.

71.    On March 4, 2020, Defendant James Greiff filed a motion to withdraw the reference, which was assigned to District Court Judge Katherine Polk Failla and Magistrate Judge Katharine H. Parker. *See* No. 20-cv-01926, ECF No. 1.

72.    On March 10, 2020, the Defendant moved to stay the trial scheduled for April 7, 2020 pending the disposition of his motion to withdraw. *See* Adv. Pro. No. 10-04357, ECF Nos. 114-117. On that same day, the Bankruptcy Court entered an Order to Show Cause asking the Trustee to show cause as to why the relief sought by the Defendant should not be granted. *See* Adv. Pro. No. 10-04357, ECF No. 118. The Trustee filed his objections on March 17, 2020, and the parties were heard by the Bankruptcy Court on March 18, 2020, at which time the Court granted the Defendant 14 days to file a reply brief in further support of his motion to stay the trial. *See* Adv. Pro. No. 10-04357, ECF Nos. 121-22.

73.    On June 4, 2020, the District Court denied the Defendant's motion to withdraw the reference. *See* 20-cv-02560, ECF Nos. 9-10.

74.    On October 28, 2020, the parties are scheduled to have their final pretrial conference before the Bankruptcy Court. *See* Adv. Pro. No. 10-04357, ECF No. 136.

**iii.    Summary Judgment Motions**

**(a)    South Ferry/Lowrey Actions**

75.    Prior to the Report Period, the Trustee entered into separate stipulations with (1) Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson, and Zev Wolfson, (2) Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and Abraham Wolfson, (3) Defendant United Congregations Mesora, and (4) James Lowrey, setting a schedule for summary judgment motion practice (collectively, the "South Ferry/Lowrey Actions"). *See* Adv. Pro. No. 10-04488, ECF No. 77; Adv. Pro. No. 10-04350, ECF No. 86; Adv. Pro. No. 10-05110, ECF No. 53; Adv. Pro. No. 10-04387, ECF No. 71.

76.     Prior to the Report Period, from July 2017 through September 2017, the parties in the South Ferry/Lowrey Actions filed and briefed motions for summary judgment. *See* Adv. Pro. No. 10-04488, ECF Nos. 86-93, 96-97, 100, 103; Adv. Pro. No. 10-04350, ECF Nos. 95-102, 105-106, 109, 112; Adv. Pro. No. 10-05110, ECF Nos. 60-69, 70-71, 74, 77; Adv. Pro. No. 10-04387, ECF Nos. 78-81, 83-84, 86-87, 91-92. On December 6, 2017, oral argument was held on the parties' motions for summary judgment.

77.     On March 22, 2018, the Bankruptcy Court issued its Report and Recommendation to the District Court granting the Trustee's motion for summary judgment and denying the South Ferry/Lowrey Actions' motions for summary judgment. *See In re Bernard L. Madoff [Good Faith Summary Judgment]*, Adv. Pro. No. 08-01789 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. March 22, 2018).

78.     On April 26, 2018, counsel for the South Ferry/Lowrey actions filed their Rule 9003 Objections to the Bankruptcy Court's Report and Recommendation. *See* Adv. Pro. No. 10-04387, ECF No. 116. On June 1, 2018, the Trustee filed his Response to Defendants' Rule 9033 Objections. *See* Adv. Pro. No. 10-04387, ECF No. 119. As of June 14, 2018, the case was assigned to District Court Judge Paul Engelmayer for his review and approval.

79.     On February 7, 2019, Judge Engelmayer issued his ruling adopting the Bankruptcy Court's Report and Recommendation, granting summary judgment to the Trustee, and denying summary judgment to the Defendants in the South Ferry/Lowrey Actions. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), 2019 WL 479185 (S.D.N.Y. Feb. 7, 2019).

80.     Defendants filed their notices of appeal to the Second Circuit on February 19, 2019. *See* No. 18-cv-05381, ECF No. 32. Defendants subsequently posted the requisite bond on

April 9, 2019. *See* No. 18-cv-05381, ECF No. 37. Defendants filed their appellate brief with the Second Circuit on June 4, 2019. *See* No. 19-429, ECF No. 82. The Trustee filed his appellee brief on September 3, 2019. *See* No. 19-429, ECF No. 102. The Defendants filed their reply brief on October 4, 2019. *See* No. 19-419, ECF No. 138. Oral arguments were heard telephonically on March 31, 2020. *See* No. 19-419, ECF No. 170.

81.    On September 24, 2020, the Second affirmed the District Court's judgment, concluding that to the extent § 548(c) applies in this SIPA liquidation, the transfers were not "for value" for purposes of that provision, and that recovery would not violate the two-year limitation in § 548(a)(1). *In re Bernard L. Madoff Inv. Sec. LLC*, No. 19-0429-BK(L), 2020 WL 5666677 (2d Cir. Sept. 24, 2020). On October 8, 2020, defendants filed petitions for rehearing and rehearing en banc, 19-429, 19-443, 19-510.

**(b)    RAR Entrepreneurial Fund Ltd. Action**

82.    On January 31, 2020, counsel for Defendant RAR Entrepreneurial Fund Ltd. moved for permissive withdrawal of the reference. *See* No. 20-cv-01029, ECF No. 1.

83.    On February 18, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on March 5, 2020. *See* No. 20-cv-01029, ECF Nos. 5, 7.

84.    On April 1, 2020, the Trustee filed his motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 12-20.

85.    On June 5, 2020, Defendant filed its memorandum of law in opposition to the Trustee's motion for summary judgment and in support of its cross-motion for summary judgment dismissing the case in its entirely.    On June 9, 2020, Defendant filed its notice of cross-motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 25-29.

86.     On June 23, 2020, the Trustee filed his brief in reply to Defendant's cross-motion and Defendant's opposition to his motion for summary judgment.  *See* No. 20-cv-01029, ECF Nos. 33-35.

87.     Defendant filed its reply brief in support of its cross-motion on June 30, 2020. *See* No. 20-cv-01029, ECF No. 36.

### (c)     Estate of Allen Meisels Action

88.     On January 31, 2020, counsel for Defendants Estate of Allen Meisels, Peggy A. Meisels, and David T. Muldberg moved for permissive withdrawal of the reference.  *See* No. 20-cv-02178, ECF No. 1.

89.     On February 19, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to.  *See* No. 20-cv-02178, ECF No. 5.

90.     On February 21, 2020, the parties conducted a telephonic conference before District Court Judge Gregory H. Woods, who subsequently entered an order on March 2, 2020 granting the motion to withdraw the reference and directed the parties to follow the Courts' Individual Rules of Practice in Civil Cases for any motions for summary judgment.  *See* No. 20-cv-02178, ECF No. 10.

91.     On March 5, 2020, the Trustee filed a letter with the court requesting a pre-motion conference for permission to file a motion for summary judgment.  *See* No. 20-cv-02178, ECF No. 12.  On March 9, 2020, the parties conducted a telephonic conference before Judge Woods, who orally granted the Trustee's request to file a motion for summary judgment.

92.     On June 8, 2020, District Court Judge Woods referred the case back to the Bankruptcy Court to provide proposed findings of fact and conclusions of law on the Trustee's proposed motion for summary judgment.  *See* 20-cv-01278, ECF No. 17.

93.     On August 14, 2020, the parties entered into a settlement agreement and the action was subsequently dismissed with prejudice. *See* Adv. Pro. No. 10-04428 (SMB), ECF No. 111.

### (d)     Estate of Seymour Epstein Action

94.     On February 14, 2020, counsel for Defendants Estate of Seymour Epstein, Shelburne Shirt Company, Inc., and Muriel Epstein moved for permissive withdrawal of the reference. *See* No. 20-cv-01377, ECF No. 1.

95.     On March 6, 2020, the parties filed a letter with the District Court consenting to the withdrawal of the reference and attaching a proposed order, as previously done in *Picard v. Meisels*, No. 20-cv-01278 (GW). *See* No. 20-cv-01377, ECF Nos. 5, 9.

96.     On June 8, 2020, the District Court issued an order denying the motion for withdrawal of the reference, referring the case back to the Bankruptcy Court to adjudicate over the Trustee's proposed motion for summary judgment. *See* No. 20-cv-01377, ECF Nos. 8-9.

97.     On June 15, 2020, the Trustee filed a letter with the Bankruptcy Court referring to the District Court's denial of the Defendant's motion to withdraw the reference and requesting a pre-motion conference to be held on July 29, 2020. *See* Adv. Pro. No. 04438, ECF No. 5.

98.     On July 22, 2020, Defendant filed a letter with the District Court requesting permission to file a motion to dismiss for lack of subject matter jurisdiction, despite the July 8, 2020 order denying his motion to withdraw the reference. *See* No. 20-cv-01377, ECF No. 10. Judge Gregory H. Woods "directed [defendants] to submit a pre-motion conference letter more fully setting out the bases for the proposed motion . . . address[ing] why the Court should not refer the proposed motion to dismiss to the bankruptcy court for a report and recommendation," and inviting the Trustee to submit a responsive letter. *See id.*, ECF No. 11. On July 24, 2020, Defendant filed his pre-motion conference letter with the District Court, and the Trustee filed his

response on July 27, 2020.    *See* No. 20-cv-01377, ECF Nos. 12-13.    During a telephone conference, Judge Woods directed Defendant to file a motion to withdraw the reference by August 10, 2020.    However, Defendant notified the court on August 12, 2020 of his decision not to file a motion at that time.    *Id.*, ECF Nos. 14-17.

99.    After the parties appeared at the July 29, 2020 hearing, the Bankruptcy Court entered an order setting the deadlines for the Trustee's motion for summary judgment and Defendant's cross-motion to dismiss for lack of subject matter jurisdiction.    Adv. Pro. No. 10-04348, ECF No. 109.

100.    On September 4, 2020, the Trustee filed his motion for summary judgment.    Adv. Pro. No. 10-04438, ECF Nos. 113-119.

101.    Defendant filed his combined opposition to the Trustee's motion for summary judgment and cross-motion to dismiss for lack of subject matter jurisdiction on October 9, 2020, the Trustee will file his combined reply in further support of his motion for summary judgment and opposition to Defendant's cross-motion to dismiss for lack of subject matter jurisdiction on or before October 30, 2020, and Defendant will file his reply in further support of his cross-motion to dismiss for lack of subject matter jurisdiction on or before November 6, 2020. Adv. Pro. No. 10-04348, ECF No. 109.

### (e)    Elaine Dine Living Trust Action

102.    On February 21, 2020, Defendants Elaine Dine Living Trust Dated 5/12/96 and Elaine Dine moved for permissive withdrawal of the reference. *See* Adv. Pro. No. 10-04491, ECF No. 88; No. 20-cv-01748, ECF No 1.

103.    On March 5, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which

Defendants' counsel agreed to, and the Court so ordered on March 6, 2020.  *See* No. 20-cv-01748, ECF Nos. 5, 6.

104.    On April 24, 2020, the Trustee filed his motion for summary judgment.  *See* No. 20-cv-01748, ECF Nos. 11-14.  Defendants filed their opposition and cross-motion for summary judgment on June 26, 2020.  *See* No. 20-cv-01748, ECF Nos. 23-27.

105.    The Trustee's reply on his motion and opposition on the cross-motion was filed on July 17, 2020 and Defendants' reply on the cross-motion was filed on July 24, 2020.  *See* No. 20-cv-01748, ECF Nos. 30-33.

### (f)    **Philip F. Palmedo Action**

106.    On February 28, 2020, counsel for Defendant Philip F. Palmedo moved for permissive withdrawal of the reference.  *See* No. 20-cv-01926, ECF No. 1.

107.    On March 18, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to.  *See* No. 20-cv-01926, ECF No. 3.

108.    On July 8, 2020, District Court Judge Paul G. Gardephe denied without prejudice the motion to withdraw the reference, stating that given the Trustee's anticipated summary judgment motion, the case was not trial ready.  *See* No. 20-cv-01926, ECF No. 5.

109.    On July 22, 2020, Defendant filed a letter requesting permission to file a motion to dismiss for lack of subject matter jurisdiction in District Court, despite the July 8, 2020 order denying his motion to withdraw the reference.  *See* No. 20-cv-01926, ECF No. 6.  Judge Gardephe denied Defendant's request, directing this Court to "address Defendant's motion in the first instance." *See id.*, CF No. 7.

110.    After the parties appeared at the July 29, 2020 hearing, the Court entered an order setting the deadlines for the Trustee's motion for summary judgment and Defendant's cross-motion to dismiss for lack of subject matter jurisdiction.  Adv. Pro. No. 10-04749, ECF No. 97.

111.    On September 4, 2020, the Trustee filed his motion for summary judgment.  Adv. Pro. No. 10-04749, ECF Nos. 99-105.

112.    Defendant filed his combined opposition to the Trustee's motion for summary judgment and cross-motion to dismiss for lack of subject matter jurisdiction on October 2, 2020, the Trustee will file his combined reply in further support of his motion for summary judgment and opposition to Defendant's cross-motion to dismiss for lack of subject matter jurisdiction on or before October 23, 2020, and Defendant will file his reply in further support of his cross-motion to dismiss for lack of subject matter jurisdiction on or before October 30, 2020. Adv. Pro. No. 10-04749, ECF No. 98.

### (g)    Mark Horowitz Action

113.    On March 6, 2020, counsel for Defendant Mark Horowitz moved for permissive withdrawal of the reference.  *See* No. 20-cv-02525, ECF No. 1.

114.    On April 7, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on April 9, 2020.  *See* No. 20-cv-02525, ECF Nos. 4-5.

115.    The Trustee's motion for summary judgment was filed on June 8, 2020.  *See* No. 20-cv-02525, ECF Nos. 12-18.  Defendant's opposition to the Trustee's motion and cross-motion for summary judgment was filed on July 13, 2020.  *See id.*, ECF No. 23-26, 28.  The Trustee's reply on his motion and opposition on the cross-motion was filed on August 6, 2020.  *See id.*,

ECF No. 33-35. Defendant's reply on the cross-motion was filed on August 13, 2020. *See id.*,

ECF No. 36.

(h)    **Zieses Investment Partnership Action**

116.    On April 3, 2020, counsel for Defendants Zieses Investment Partnership, Barry

Inger, Susan B. Alswanger, Caryn Zieses, Marshall Zieses, Neil R. Zieses, Debra S. Zieses, and

Allan Inger moved for permissive withdrawal of the reference. *See* No. 20-cv-02872, ECF No.

1.

117.    On May 27, 2020, the Trustee filed a letter with the court consenting to the

withdrawal of the reference and proposing a briefing schedule for summary judgment, which

Defendants' counsel agreed to, and the Court so ordered on June 4, 2020. *See* No. 20-cv-02872,

ECF Nos. 3-4.

118.    The Trustee's motion for summary judgment was filed on June 30, 2020. *See* No.

20-cv-02872, ECF Nos.  9-15. Defendant's opposition to the Trustee's motion and cross-motion

for summary judgment was filed on August 4, 2020. *See id.*, ECF No. 16-20. The Trustee's

reply on his motion and opposition on the cross-motion was filed on August 24, 2020. *See id.*,

ECF No. 24-26. Defendant's reply on the cross-motion was filed on September 1, 2020. *See id.*,

ECF No. 27.

(i)    **Lisa Beth Nissenbaum Action**

119.    On April 17, 2020, counsel for Defendants Neal Kurn, in his capacity as Trustee

for the Lisa Beth Nissenbaum Trust, Lisa Beth Nissenbaum Trust, and Lisa B. Nissenbaum

moved for permissive withdrawal of the reference. *See* No. 20-cv-03140, ECF No. 1.

120.    On April 29, 2020, the Trustee filed a letter with the court consenting to the

withdrawal of the reference and proposing a briefing schedule for summary judgment, which

Defendants' counsel agreed to, and the Court so ordered on April 30, 2020.  *See* No. 20-cv-03140, ECF Nos. 4-6.

121.    The Trustee's motion for summary judgment was filed on June 22, 2020.  *See* No. 20-cv-03140, ECF Nos.  15-18, 20-22.  Defendant's opposition to the Trustee's motion and cross-motion for summary judgment was filed on July 20, 2020.  *See id.*, ECF No. 23-28.  The Trustee's reply on his motion and opposition on the cross-motion was filed on August 13, 2020. *See id.*, ECF No. 31-33.  Defendant's reply on the cross-motion was filed on August 20, 2020. *See id.*, ECF No. 36.

### (j)    **JABA Associates LP Action**

122.    On May 15, 2020, counsel for Defendants Audrey M. Goodman, Goodman Charitable Foundation, in its capacity as a limited partner of JABA Associates LP, Audrey Goodman, in her capacity as a general and limited partner of JABA Associates LP, Bruce Goodman, in his capacity as a general Partner of JABA Associates LP, Andrew Goodman, in his capacity as a general partner of JABA Associates LP, JABA Associates LP, and The Estate of James Goodman moved for permissive withdrawal of the reference.  *See* No. 20-cv-03836, ECF No. 1.

123.    On May 27, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on June 4, 2020.  *See* No. 20-cv-03836, ECF Nos. 3-5.

124.    The Trustee's motion for summary judgment was filed on July 14, 2020.  *See* No. 20-cv-02872, ECF Nos.  11-17.  Defendant's opposition to the Trustee's motion and cross-motion for summary judgment was filed on August 18, 2020.  *See id.*, ECF No. 20-24.  The Trustee's reply on his motion and opposition on the cross-motion was filed on September 8,

2020.  *See id.*, ECF No. 31-33.  Defendant's reply on the cross-motion was filed on September

15, 2020.  *See id*., ECF No. 34.

### (k)   **Marlene Krauss Action**

125.    On May 22, 2020, Defendant Marlene Krauss filed a motion to withdraw the

reference, which was assigned to District Court Judge Lorna G. Schofield and Magistrate Judge

James L. Cott. *See* No. 20-cv- 04086, ECF No. 1.

126.    On June 4, 2020, the Trustee filed a letter with the court consenting to the

withdrawal of the reference and proposing a briefing schedule for summary judgment, which

Defendants' counsel agreed to, and the Court so ordered on June 5, 2020.  *See* No. 20-cv-03836,

ECF Nos. 4-6, 8.

127.    The Trustee's motion for summary judgment was filed on August 18, 2020.  *See*

No. 20-cv-02872, ECF Nos.  12-20.  Defendant's opposition to the Trustee's motion and cross-

motion for summary judgment was filed on September 8, 2020.  *See id.*, ECF No. 21-25.  The

Trustee's reply on his motion and opposition on the cross-motion was filed on September 29,

2020.  *See id.*, ECF No. 26-27.  Defendant's reply on the cross-motion was filed on October 6,

2020.  *See id.*, ECF No. 28.

## C.    **Subsequent Transfer Actions**

128.    The Trustee and B&H attorneys continue to pursue recovery actions against

entities that received subsequent transfers of Customer Property from BLMIS.

129.    Prior to the Report Period, the Trustee briefed and presented argument at hearings

before the District Court on issues raised by subsequent transfer defendants, as well as other

defendants, that were subject to Common Briefing and hearings. As of July 31, 2014, the District

Court issued all of its decisions on the issues subject to Common Briefing and remanded the

cases to this Court for further findings based on the legal standards set forth in the District Court's decisions. *See* discussion *supra* Section VI(A).

130.    As part of its Common Briefing decisions, the District Court remanded the cases in which subsequent transfer defendants filed an extraterritoriality motion to dismiss.

131.    On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss. This matter was appealed to the Second Circuit, which vacated the judgment of the Bankruptcy Court and remanded the cases. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). After denying Defendants' petition for rehearing and rehearing en banc, on April 23, 2019, the Second Circuit granted Defendants' motion for a stay of the issuance of the mandate pending Defendants' filing of a petition for a writ of certiorari. The Supreme Court of the United States denied defendants' petition for writ of certiorari on June 1, 2020. *See* discussion *infra* Section (VI)(D)(i).

132.    As part of the original December 10, 2014 scheduling order regarding the extraterritoriality motion to dismiss briefing, this Court held in abeyance the Trustee's Motion for Limited Discovery until after ruling on the Defendants' Extraterritoriality Motion to Dismiss. On June 5, 2018, the Court denied the Trustee's Motion for Limited Discovery. (ECF No. 16927).

133.    As of September 30, 2020, the Trustee's claims against the subsequent transfer defendants remain pending.

**D.    Actions Relating to BLMIS Feeder Funds**

**i.    Extraterritoriality**

134.    On July 6, 2014, the District Court held that certain of the Trustee's claims were barred by the presumption against extraterritoriality, stating that "section 550(a) does not apply

extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

135.    On November 22, 2016, this Court issued a decision granting in part and denying in part defendants' motion to dismiss on extraterritoriality (the "ET Decision"). *Sec. Inv'r Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495).

136.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court and Bankruptcy Court. The Second Circuit held that neither the presumption against exterritoriality nor international comity limits the reach of section 550(a)(2) of the Bankruptcy Code, enabling the Trustee to recover property from certain subsequent transferees. Accordingly, the Second Circuit vacated the judgments of the Bankruptcy Court. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). Upon defendants' motion, the Second Circuit then stayed the issuance of the mandate. *Id.*, (ECF No. 1503).

137.    On August 29, 2019, defendants filed a petition for a writ of certiorari in the Supreme Court of the United States. *HSBC Holdings PLC v. Irving H. Picard*, No. 19-277.

138.    On September 30, 2019, amicus briefs in support of defendants were filed by the Cayman Islands and the British Virgin Islands; certain British Virgin Islands restructuring professionals; Cayman Finance and Recovery and Insolvency Specialists Association of the Cayman Island; Recovery and Insolvency Specialists Association of Bermuda; and the Securities Industry and Financial Markets Association, the Institute of International Bankers, and the U.S. Chamber of Commerce.

139.    On October 30, 2019, the Trustee and SIPC filed separate briefs in opposition to defendants' petition, and on November 12, 2019, defendants filed a brief in reply.

140.    On December 9, 2019, the Supreme Court invited the Solicitor General to file a brief expressing the views of the United States, and on April 10, 2020, the Solicitor General filed a brief recommending that the Supreme Court deny the petition.

141.    On April 10, 2020, the Solicitor General filed a brief recommending that the Court deny the petition. The petition was distributed on April 28, 2020 for consideration at the Court's May 14, 2020 conference. On June 1, 2020, the Supreme Court denied defendants' petition.

### ii.    Limited Discovery Motion

142.    In view of the altered pleading standards articulated in the *Good Faith Decision*[4] and the *District Court ET Decision*,[5] the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion") in August 2014. Mem. of Law on Omnibus Mot., *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Aug. 28, 2014), ECF No. 7827.

143.    In September 2014, at a status conference on the Omnibus Motion, defense counsel argued that pending motions to dismiss based on extraterritoriality should be addressed prior to the Trustee's request for discovery. The Court agreed and stayed proceedings on the Omnibus Motion until after the extraterritoriality proceedings concluded. *See* Order at ¶ 14, Main Docket, ECF No. 8800 ("December 10 Scheduling Order").

---

[4] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 516 B.R. 18 (S.D.N.Y. 2014).
[5] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

144.    In November 2016, this Court issued the ET Decision. *See* discussion *supra* Section VI(D)(i).

145.    In July 2017, this Court ordered proceedings "solely on the Good Faith Limited Discovery Issue" of the Omnibus Motion. *See* Order at ¶¶ 1, 4, Main Docket, ECF No. 16428. On June 9, 2018, this Court denied the Trustee's request for limited discovery concerning good faith. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2018 WL 2734825 (Bankr. S.D.N.Y. June 5, 2018); Order Denying the Trustee's Mot. for Disc., Main Docket (June 18, 2018), ECF No. 17696.

### iii.    **Picard v. ABN AMRO**

146.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.) ("ABN/RBS"), ABN AMRO Incorporated, Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited. *Picard v. ABN AMRO Bank N.V.*, No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (ECF No. 1) ("ABN/RBS Action"). The ABN/RBS Action seeks the return of approximately $276 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain subsequent transfers of BLMIS customer property to ABN/RBS. The only remaining defendant in the action is ABN/RBS.

147.    On June 10, 2019, the Trustee filed a motion for leave to file a second amended complaint (the "Motion"). *Id.*, ECF No. 177. On August 9, 2019, ABN/RBS filed an opposition to the Trustee's Motion. *Id.*, ECF Nos. 182-83. On September 9, 2019, the Trustee filed a reply brief in further support of his Motion.  *Id.*, ECF No. 189.  Oral argument on the Trustee's Motion was held on October 30, 2019. On March 31, 2020, the Bankruptcy Court denied the Motion. *Id.*,

ECF No. 200. On April 9, 2020, the Bankruptcy Court entered a final judgment in the matter (the "Final Judgment"). *Id.*, ECF No. 201.

148.    During the Report Period, B&H attorneys worked on items related to the Trustee's appeal of the Final Judgment. On April 23, 2020, the Trustee filed a Notice of Appeal, appealing the Final Judgment to the District Court. *Id.*, ECF No. 202. On May 7, 2020, the Trustee filed his Designation of Items to Be Included in the Record on Appeal and Statement of Issues to Be Presented. *Id.*, ECF No. 204. On May 26, 2020, ABN/RBS filed its Counter-Designation of Additional Items to Be Included in the Record on Appeal. *Id.*, ECF No. 208. On May 12, 2020, the Record of Appeal was transmitted to the District Court and the appeal was assigned to Judge Valerie E. Caproni. *Picard v. ABN AMRO Bank N.V.*, No. 20-cv-3684 (VEC) (S.D.N.Y. May 12, 2020) ("ABN/RBS Appeal"), ECF No. 1.

149.    On May 28, 2020, the Trustee moved the District Court for a stay of his appeal pending a decision by the Second Circuit in two similarly situated actions: *Picard v. Citibank, N.A.*, No. 20-1333 (2d Cir.), and *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir.) (collectively, the "Related Appeals"). *See* discussion *infra* Section (VI)(D)(v) and (VI)(E)(v). ABN/RBS Appeal, ECF Nos. 3-4. After the parties briefed the Trustee's motion for stay, on June 8, 2020, the District Court granted the Trustee's motion and stayed his appeal, with exception to permit an anticipated motion by ABN/RBS for certification of the appeal for direct appeal to the Second Circuit. *Id.*, ECF No. 12.

150.    On June 9, 2020, ABN/RBS moved the District Court to certify the Trustee's appeal for direct appeal to the Second Circuit. *Id.*, ECF Nos. 17-18. The Trustee opposed this motion. *Id.*, ECF No. 19. On July 16, 2020, the District Court granted ABN/RBS's motion and certified the Trustee' appeal for direct appeal to the Second Circuit. *Id.*, ECF No. 22.

151.    On July 21, 2020, ABN/RBS moved the Second Circuit to authorize the direct appeal, for expedited consideration of its motion, and for the resulting appeal to proceed in tandem with the Related Appeals. *Picard v. ABN AMRO Bank, N.V.*, No. 20-2291 (2d Cir. July 21, 2020), ECF Nos. 1-2. The Trustee opposed ABN/RBS's request for direct appeal and to proceed in tandem. *Id.*, ECF No. 24. On August 4, 2020, ABN/RBS sought leave to file a reply. *Id.*, ECF No. 36. Also on August 4, the Second Circuit denied ABN/RBS's motion to expedite consideration of its motion for leave to appeal and to have the resulting appeal proceed in tandem with the Related Appeals. *Id.*, ECF No. 37. On October 6, 2020, the Second Circuit granted ABN/RBS's motion for leave to file a reply, but deferred decision on its motion for leave to appeal pending resolution of the Related Appeals. *Id.*, ECF No. 48.

152.    In addition, B&H attorneys prepared and filed the Eleventh Joint Status Letter in the related district court appeal captioned *Picard v. ABN Amro Bank, N.V. (presently known as The Royal Bank of Scotland)*, 1:17-CV-07476 (AT). ECF No. 20. The Bankruptcy Court dismissed this case in its ET Decision, the Trustee appealed it to the District Court where it was stayed, and the case ultimately was subject to the Second Circuit's ET Order and Opinion. After the Supreme Court denied the defendants' petition for a writ of certiorari to review the Second Circuit ET Order and Opinion on June 1, 2020, *see* discussion *supra* Section (VI)(D)(i), the Second Circuit issued the mandate transferring jurisdiction over this case back to the Bankruptcy Court. As such, on June 30, 2020, the parties requested that the District Court terminate the Trustee's appeal. *Id.*, ECF No. 20. On August 7, 2020, the District Court granted the parties' request and dismissed the appeal. *Id.*, ECF No. 21..

### iv.    **Picard v. ABN AMRO (Ireland) Ltd. (Fortis)**

153.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Solutions Bank (Ireland) Limited), ABN Custodial

Services (Ireland) Ltd. (f/k/a Fortis Prime Solutions Custodial Services (Ireland) Ltd.) (collectively, the "ABN (Ireland) Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited. *Picard v. ABN AMRO (Ireland) Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y. filed Dec. 8, 2010) (SMB) (the "ABN (Ireland) Action").

154.    On January 11, 2019, the Bankruptcy Court so ordered the Stipulation and Order Concerning the Trustee's Motion for Leave to File an Amended Complaint. *Id*. at ECF No. 162.

155.    On February 22, 2019, the Trustee filed the Motion for Leave to File an Amended Complaint. *Id.* at ECF No. 165.

156.    On April 23, 2019, the ABN (Ireland) Defendants filed their Opposition to the Trustee's Motion for Leave to File a Second Amended Complaint. *Id.* at ECF No. 169.

157.    On May 23, 2019, the Trustee filed the Reply Memorandum of Law in Further Support of the Trustee's Motion for Leave to File a Second Amended Complaint. *Id.* at ECF No. 179.

158.    Oral argument in the matter was held on September 25, 2019, and the Bankruptcy Court reserved decision.

159.    On January 23, 2020, the Bankruptcy Court denied the Trustee's Motion for Leave to File a Second Amended Complaint. *Id*. at ECF No. 188.

160.    On February 6, 2020, the Bankruptcy Court entered the Stipulated Order, dismissing the Amended Complaint with prejudice. *Id*. at ECF No. 189.

161.    On February 19, 2020, the Trustee filed the Notice of Appeal, appealing the Bankruptcy Court's decision on the Motion for Leave to File a Second Amended Complaint to the District Court. *Id*. at ECF No. 190.

162.    On March 4, 2020, the Trustee filed the Designation of Record and Statement of Issues Presented. *Id*. at ECF No. 192.

163.    On March 18, 2020, the ABN Defendants filed their Counter-Designation of Additional Items to be Included in the Record on Appeal. *Id*. at ECF No. 194.

164.    On March 27, 2020, the District Court appeal was formally assigned to Judge Colleen McMahon of the Southern District of New York. *Picard v. ABN AMRO Bank (Ireland),* 20-cv-02586 (CM), (ECF No. 1).

165.    On April 6, 2020, the ABN Defendants moved for Leave to Appeal to the Second Circuit Pursuant to 28 U.S.C. §158(d)(2)(A). *Id*. at ECF Nos. 8, 9, 10.

166.    On April 10, 2020, the parties jointly filed a letter with the District Court informing the District Court of the Trustee's consent to the ABN Defendant's request for Leave to Appeal to the Second Circuit and requesting a stay on the merits briefing until the Second Circuit resolved whether or not to grant the parties' forthcoming petition. *Id*. at ECF No. 14. On May 7, 2020, the Trustee filed a Letter Motion for an Extension of Time of Briefing Schedule beyond May 15, 2020. *Id*. at ECF No. 17. On May 8, 2020 Judge McMahon granted the Trustee's Letter Motion, extending the filing of the opening merits briefs until August 20, 2020. *Id*. at ECF Nos. 18, 19. On June 11, 2020, Judge McMahon granted the Defendants' motion for Leave to Appeal directly to the Second Circuit. *Id*. at ECF No. 24.

167.    On June 18, 2020, Defendants moved the Second Circuit to authorize the direct appeal, for expedited consideration of its motion, and for the resulting appeal to proceed in tandem with certain similarly-situated appeals, specifically *Picard v. Citibank, N.A.*, No. 20-1333 (2d Cir.), and *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir.) (collectively, the "Related Appeals"). *Picard v. ABN AMRO Bank (Ireland), Ltd.*, 20-1898 (2d Cir. June 18, 2020) (ECF

Nos. 1-2). The Trustee opposed Defendants' request for direct appeal and to proceed in tandem. *Id.* at ECF No. 19. On August 4, 2020, the Second Circuit denied Defendants' motion to expedite consideration of its motion for leave to appeal and to have the resulting appeal proceed in tandem with the Related Appeals. *Id.* at ECF No. 42. Defendants' motion for leave to appeal was heard as a substantive motion on October 6, 2020, whereby the Second Circuit granted Defendants' motion to file replies but deferred Defendants' request for direct appeal until after the resolution of the Related Appeals. *Id.* at ECF No. 48.

### v.    **Picard v. Citibank**

168.    On December 8, 2010, the Trustee commenced an action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Limited (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank. *Picard v. Citibank*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y.) (the "Citibank Action").

169.    On December 14, 2018, the Trustee moved for leave to file an amended complaint under Rule 15 of the Federal Rules of Civil Procedure and Rule 7015 of the Federal Rules of Bankruptcy Procedure. *Id.*, (ECF No. 149). With this motion, the Trustee submitted a proposed amended complaint against Citibank N.A., Citicorp North America, Inc., and Citigroup Global Markets Limited.

170.    In April and May 2019, B&H attorneys prepared and filed the Trustee's reply in further support of his motion for leave to amend. In June and July 2019, B&H attorneys prepared for oral argument in support of the Trustee's motion, which was held on July 18, 2019.

171.   On October 18, 2019, the Bankruptcy Court denied the Trustee's motion for leave to amend. *Id.*, (ECF No. 170).

172.   From October through November 2019, B&H attorneys analyzed the Court's ruling denying the Trustee's motion for leave to file an amended complaint and began preparing a motion for entry of final judgment.

173.   On November 19, 2019, the Bankruptcy Court granted the Trustee's motion on consent for entry of final judgment (*Id.*, ECF No, 174) and issued an order denying the Trustee's motion for leave to amend and entering partial final judgment. (*Id.*, ECF No, 176).

174.   On November 27, 2019, the Trustee filed a notice of appeal to the Second Circuit (*Id.*, ECF No, 177) in connection with the following prior rulings: (i) Memorandum Decision Denying Trustee's Motion for Leave to File Amended Complaint. *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Oct. 18, 2019), ECF No. 140; (ii) Memorandum Decision Denying the Trustee's Motion for Discovery Pursuant to Rule 26(d), *Picard v. Citibank*, 590 B.R. 200 (Bankr. S.D.N.Y. 2018) (Adv. Pro. No. 10-05345 (SMB)), ECF No. 140; (iii) Order of the United States Bankruptcy Court for the Southern District of New York (Bernstein, J.), dated June 18, 2018, denying the Trustee's motion for limited discovery pursuant to Federal Rules of Civil Procedure 26(d), *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y. June 18, 2018), ECF No. 143; and (iv) Opinion and Order of the United States District Court for the Southern District of New York (Rakoff, J.), dated April 28, 2014, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Investment Sec. LLC (In re Madoff Sec.)*, 516 B.R. 18 (S.D.N.Y. 2014) (No. 12-mc-115 (JSR)), ECF No. 524.

175.     On December 3, 2019, the Parties filed a joint certification to the Bankruptcy Court under 28 U.S.C. § 158(d)(2)(A) for direct appeal to the United States Court of Appeals for the Second Circuit.

176.     On December 23, 2019, B&H attorneys, on behalf of the Trustee, filed an Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the United States Court of Appeals for the Second Circuit.

177.     On April 23, 2020, the United States Court of Appeals for the Second Circuit granted the Trustee's request pursuant to 28 U.S.C. § 158(d)(2)(A) for leave to appeal directly to the Second Circuit from the bankruptcy court judgment.

178.     On May 18, 2020, the Trustee filed his Scheduling Notification pursuant to Local Rule 31.2 informing the Court of a proposed due date of August 6, 2020 for the Trustee's opening brief.  The Court so-ordered the Trustee's Scheduling Notification on June 29, 2020.

179.     From May 18, 2020 through August 6, 2020, B&H attorneys researched and prepared their appellate brief and appendices challenging the bankruptcy court's denial of the Trustee's motion for leave to amend as well as the district court's ruling requiring the Trustee to plead willful blindness to allege a lack of good faith.

180.     On May 28, 2020, the Trustee filed a Motion for Related Appeals to Proceed in Tandem.  In the motion, the Trustee requested that the appeal *Picard v. Citibank, N.A.*, No. 20-1333, proceed in tandem and be heard before the same panel with the appeal captioned *Picard v. Legacy*, No. 20-1334.  *See* discussion *infra* Section (VI)(D)(v). On June 2, 2020 defendant-appellees Citibank, N.A. and Citicorp North America, Inc. filed their opposition.  On June 8, 2020 the Trustee filed his Reply in further support of his motion to proceed in tandem and the

Second Circuit granted the Trustee's motion, directing that the appeals docketed under 20-1333 and 20-1334 be heard in tandem.

181.    On August 6, 2020, the Trustee filed his appellate brief and appendices.

182.    On August 12, 2020, professors of bankruptcy law filed their brief as amici curiae in support of the Trustee's appeal.

183.    On August 13, 2020, the National Association of Bankruptcy Trustees filed its brief as amicus curiae in support of the Trustee's appeal.

184.    On August 13, 2020, professors of civil procedure filed their brief as amici curiae in support of the Trustee's appeal.

vi.    **The HSBC Action**

185.    On July 15, 2009, the Trustee commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that transferred funds to and from BLMIS. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y.) (the "HSBC Action"). After further investigation, the Trustee filed an amended complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS. (ECF No. 35).

186.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate. (ECF Nos. 338, 339, 349, 350, 352, 363).

187.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate. (ECF No. 16430).

188.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate. (ECF No. 16431).

189.    On October 20, 2017, this Court approved a settlement between the Trustee and Thema International Fund plc. (ECF No. 482). Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

190.    On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. (ECF No. 497).

191.    On July 27, 2019, Alpha Prime moved for judgment on the pleadings. (ECF No. 545). On August 27, 2019, the Trustee opposed that motion and cross-moved to amend the complaint. (ECF No. 548). Oral argument was heard on September 19, 2019, and on September 23, 2019, the Court denied Alpha Prime's motion to dismiss and granted the Trustee's motion to amend. (ECF No. 566).

192.    On September 24, 2019, the Trustee filed his amended complaint against Alpha Prime. (ECF No. 567). Litigation is ongoing.

**vii.    The Luxalpha Action**

193.    On November 23, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, Access International Advisors LLC along with several of its affiliated entities and individuals, Groupement Financier Ltd., and Luxalpha SICAV (collectively, the "Luxalpha Defendants"). The proceeding seeks the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha

Defendants, as well as other relief (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

194.    On December 7, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, M&B Capital Advisors Sociedad de Valores S.A. along with several of its affiliated entities and individuals (the "M&B Defendants"), Reliance International Research LLC along with several of its affiliated entities and individuals, Landmark Investment Fund Ireland, and Luxembourg Investment Fund along with its affiliated funds (collectively, the "LIF Defendants"). The proceeding seeks the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the LIF Defendants, as well as other relief (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

195.    On February 12, 2020, the Trustee filed a Motion for Order Issuing Letter Rogatory to AA Alternative Investment PLC on Behalf of Landmark Investment Fund Ireland in the LIF Action, which the Bankruptcy Court granted by Order dated February 25, 2020.

196.    On March 2, 2020, the Trustee filed a Motion for Leave to File a Second Amended Complaint in the Luxalpha Action. During the Report Period, on April 3, 2020, Luxalpha filed its Memorandum Of Law In Opposition To Trustee's Motion For Leave To File A Second Amended Complaint And In Support Of Cross Motion For Claim Determination And Allowance. On May 4, 2020, the Trustee filed his Reply Memorandum of Law in Further Support of the Trustee's Motion for Leave to File a Second Amended Complaint and Opposition to Cross Motion for Claim Determination and Allowance. On May 18, 2020, Luxalpha filed its

Reply Memorandum of Law in Support of its Cross-Motion for Claim Determination and Allowance.

197.    On June 18, 2020, the Bankruptcy Court held a telephonic conference with the Trustee and Luxalpha regarding the Trustee's Motion and Luxalpha's Cross-Motion, during which the Bankruptcy Court directed that hearing on the motions will be adjourned *sine die* pending issuance of orders from the United States Court of Appeals for the Second Circuit in the appeals of *Picard v. Citibank, N.A.*, Case No. 20-1333 and *Picard v. Legacy Capital Ltd.*, Case No. 20-1334. *See* discussion *supra* Section (VI)(D)(v) and *infra* Section (VI)(E)(v). On June 22, 2020, the Trustee and the Luxalpha filed a joint notice adjourning the hearing on the motions accordingly.

### viii.    **Picard v. Fairfield Greenwich**

198.    On May 18, 2009, the Trustee commenced an action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009). On July 20, 2010, the Trustee filed an Amended Complaint in the action adding as defendants individuals and entities associated with Fairfield Greenwich Group, a de facto New York partnership, that formed, managed, and marketed Sentry, Sigma, Lambda, Greenwich Sentry, and Greenwich Sentry Partners.

199.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). (ECF No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

200.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

201.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. (ECF No. 107). In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

202.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court. The District Court has issued its opinions providing guidance to this Court and remanded the cases for further findings applying the standards set forth in the District Court's opinions. *See* discussion *supra* Section (VI)(A).

203.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.). The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court. None of the defendants in the three actions have responded yet to the Trustee's complaints.

204.    On November 22, 2016, this Court issued its decision on the extraterritoriality motion to dismiss. *See* discussion *supra* Section (VI)(D)(i). Under the decision, some of the claims against the moving defendants in the *Fairfield, Barrenche, and RD Trust* actions were dismissed. Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of certain non-moving defendants to the extraterritoriality motion to dismiss. The parties agreed to consent to the entry of final judgments on the Court's extraterritoriality decision. Finally, the parties consented to direct appeal of the extraterritoriality decision to the Second Circuit.

205.    On March 16, 2017, the Trustee filed his notice of appeal in the *Fairfield,*

*Barrenche, and RD Trust* actions. (ECF Nos. 229, 97, 93). On September 27, 2017, the Second

Circuit issued an order granting the parties' request for certification for direct appeal of the

appeal of the extraterritoriality decision. *Picard v. Banque Lombard Ordier & Cie SA.*, No. 17-

1294 (2d Cir.), (ECF No. 388). On February 25, 2019, the Second Circuit vacated the judgment

of the Bankruptcy Court and remanded the cases. *In re Picard, Tr. for Liquidation of Bernard L.*

*Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019).  After denying

Defendants' petition for rehearing and rehearing en banc, on April 23, 2019, the Second Circuit

granted Defendants' motion for a stay of the issuance of the mandate pending Defendants' filing

of a petition for a writ of certiorari. *See* discussion *infra* Section (VI)(D)(i).

206.    On January 24, 2019, in the action filed by the Joint Liquidators against the

Fairfield management entities and individuals, *In re Fairfield Sentry Limited, et al.*, Adv. No. 10-

13164 (SMB), the parties entered a stipulation substituting the Trustee as the plaintiff. (ECF No.

87). On February 22, 2019, the Trustee filed a motion to amend the complaint with an attached

proffered Amended Complaint. (ECF No. 90).

207.    On March 25, 2019, this Court approved a settlement between the Trustee and

certain Fairfield management defendants, Lourdes Barrenche, Robert Blum, Cornelius Boele,

Gregory Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton,

Mark McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barrenche, Inc., Dove Hill

Trust, Fortuna Asset Management, Selecta Financial Corporation. *Sec. Inv'r Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, Order (S.D.N.Y., March 25, 2019). (ECF No.

270). The Trustee's claims against the remaining Fairfield management defendants remain

pending.

208.    On June 19, 2019, this Court entered a stipulated order consolidating the *Fairfield, Barrenche, and RD Trust* actions. (ECF No. 274).

209.    On September 25, 2019, this Court held a hearing with the Trustee and the remaining defendants in the consolidated actions regarding a future case schedule. At the hearing, the Trustee and the remaining defendants informed this Court they had agreed to enter mediation with Richard Davis as the mediator. The Court ordered the parties to report on the progress of the mediation at a hearing to be held on November 26, 2019 and further ordered all matters held in abeyance until December 31, 2019. (ECF No. 275).

210.    On November 18, 2019, this Court entered the Second Order Concerning Mediation in which Richard Davis was appointed to serve as mediator in the action and with all deadlines held in abeyance until March 3, 2020. (ECF No. 276).

211.    On November 25, 2019, the pretrial conference scheduled for November 26, 2019 was adjourned until April 29, 2020. (ECF No. 277).

212.    On February 19, 2020, this Court entered the Third Order Concerning Mediation whereby the parties are to report on the status of the mediation by May 19, 2020, a status conference is scheduled for May 27, 2020, and all deadlines are held in abeyance until June 30, 2020. (ECF No.279).

213.    On May 19, 2020, the Court entered the Fourth Order on Mediation in which the Court ordered the parties to report on the progress of the mediation in writing by August 19, 2020 and further ordered all matters held in abeyance until July 31, 2020. (ECF No. 282).

214.    On August 20, 2020, the Court entered the Fifth Order on Mediation in which the Court lifted the stay in actions consolidated under *Picard v. Fairfield Investment Fund Ltd., et al.,* Adv. No. 09-01239.  (ECF No. 285). The Court further ordered the Defendants to file their

Reply Brief in Support of their Motion to Dismiss in *Picard v. Fairfield Greenwich Group* Adv. No. 10-03800 on or before October 2, 2020. The Court also ordered the Trustee to file an Amended Complaint on or before August 31, 2020 with the parties to provide a proposed briefing schedule in response to the Amended Complaint on or before October 15, 2020.

215.    On August 28, 2020, the Trustee filed a Second Amended Complaint in *Picard v. Fairfield Investment Fund Ltd., et al.,* Adv No.09-01239. (ECF No. 286).

216.    On October 2, 2020, the Defendants filed their Reply Brief in Support of their Motion to Dismiss in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800. (ECF No. 129).

### ix.    Picard v. Rye/Tremont

217.    This matter categorizes time spent by the Trustee and B&H attorneys following the settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS (the "Tremont Litigation"). *Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010).

218.    After the court filing, the parties entered into substantive settlement negotiations, which resulted in a significant settlement approved by the Court on September 22, 2011. The settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF

No. 38). This is the largest cash settlement to date in any case brought by the Trustee against any feeder or investment fund.

219.    Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court. There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").

220.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011. *See Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18, 2011). On June 27, 2012, United States District Judge George B. Daniels granted the Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012. (ECF Nos. 35, 36).

221.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37). Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

222.    On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.*, Adv. Proc. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al.*, Adv. Proc. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

223.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd.*, *et al.,* Adv. Proc. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her. After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

224.    During the Report Period, B&H attorneys completed their review of documents recovered from Tremont's Iron Mountain warehouse facility that contained the remainder of its Madoff-related hard-copy documents. In addition, B&H attorneys assisted in drafting and revising a rider to be inserted into the proposed amended complaints of several of the Trustee's avoidance actions against the recipients of subsequent transfers.

### x.    **Picard v. Square One**

225.    On November 29, 2010, the Trustee commenced an action against Square One Fund Ltd. ("Square One"), Luc D. Estenne, Square Asset Management Ltd., Partners Advisers S.A., Circle Partners, and Kathryn R. Siggins (collectively, the "Square One Defendants") seeking the return of approximately $26.2 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law in connection with certain transfers of property by BLMIS to or for the benefit of the Square One Defendants. *Picard v. Square One Fund, Ltd.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

226.    On December 21, 2018, the Trustee filed and served the Amended Complaint. *Id.*, (ECF No. 167–69).

227.    Square One filed a motion to dismiss on February 14, 2019. *Id.*, (ECF No. 170). On May 29, 2019, the Court held a hearing on Square One's motion to dismiss. At the conclusion of the hearing, the Court granted in part and denied in part the motion to dismiss. The

Court subsequently entered an order granting in part and denying in part Square One's motion to dismiss on June 13, 2019. *Id.*, (ECF No. 177).

228.    On July 16, 2019, the Court so-ordered a Case Management Plan. *Id.*, (ECF No. 178).

229.    During the Report Period, the Trustee and Square One were engaged in active discovery. On June 9, 2020, the Trustee filed and served a notice adjourning the pre-trial conference to December 16, 2020. *Id.*, (ECF Nos. 186–87).

### xi.    Picard v. Natixis

230.    On December 8, 2010, the Trustee commenced an action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

231.    On February 25, 2019, the Second Circuit issued its opinion regarding extraterritoriality and comity, reversing the Bankruptcy Court's 2016 decision. *In re Picard, Trustee for Liquidation of BLMIS*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *supra* Section (VI)(D)(i). This Second Circuit decision revived claims against all Natixis Defendants. To give the Trustee time to analyze the Second Circuit decision, the parties entered a stipulation on February 27, 2019, staying the action for 30 days. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 180).  On March 28, 2019, the parties then entered a stipulation to

stay the action until the mandate issues from the Second Circuit and the Bankruptcy Court's jurisdiction over the case is revived. *Id.*, (ECF No. 181).

232.    The Bankruptcy Court so ordered a stipulation on July 1, 2020, staying the Natixis Action pending the issuance of orders from the Second Circuit in the appeals of *Picard v. Citibank, N.A.*, Case No. 20-1333 and *Picard v. Legacy Capital Ltd.*, Case No. 20-1334. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 185). *See* discussion *supra* Section (VI)(D)(v) and *infra* Section (VI)(E)(v).

233.    During the Report Period, B&H attorneys, on behalf of the Trustee, continued to investigate and analyze the facts of the case, and worked on drafting amended pleadings.

    **xii.**    **Picard v. Nomura**

234.    On December 8, 2010, the Trustee commenced an action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura (the "Nomura Action"). *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010). On June 6, 2012, the Trustee filed an Amended Complaint in the Nomura Action.

235.    By orders dated May 15, 2012 and June 7, 2012, the District Court entered orders withdrawing the reference in the Nomura Action to determine whether SIPA and/or the Bankruptcy Code apply extraterritorially, permitting the Trustee to avoid initial transfers that were received abroad or to recover from initial, immediate, or mediate foreign transferees (the "Extraterritoriality Issue"). *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 97 and 167.

236.    On July 7 and 28, 2014, the District Court entered an opinion and order, and a supplemental opinion and order, and returned the Nomura Action to the Bankruptcy Court for further proceedings.  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 551 and 556.

237.    On December 31, 2014, Nomura filed a consolidated memorandum of law in support of a motion to dismiss concerning the Extraterritoriality Issue (the "Extraterritoriality Motion to Dismiss").

238.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted the Extraterritoriality Motion to Dismiss as to Nomura.  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016). *See* discussion *supra* Section (VI)(D)(i).

239.    On March 3, 2017, the Bankruptcy Court entered an order granting the Extraterritoriality Motion to Dismiss.  *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (SMB), ECF No. 108.

240.    On April 4, 2017, the Trustee and Nomura filed a Certification to the Court of Appeals by All Parties.  *Id.*, ECF No. 113.  The Second Circuit subsequently authorized a direct appeal on October 13, 2017.

241.    On February 25, 2019, the Second Circuit issued a decision that vacated the Bankruptcy Court's order.  *In re Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Secs. LLC*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *supra* Section (VI)(D)(i).

242.    On August 29, 2019, Nomura filed a petition for writ of certiorari in the United States Supreme Court.  On June 1, 2020, the United States Supreme Court denied the petition for

writ of certiorari.  *See* discussion *supra* Section (VI)(D)(i).  Also on June 1, 2020, the Second Circuit issued the mandate, returning the Nomura Action to the Bankruptcy Court.

243.    During the Report Period, the Trustee continued to investigate and analyze the facts of the case and worked on preparing a draft amended complaint.

## E.    **Other Bad Faith Actions**

244.    The Trustee has approximately 12 bad faith actions still pending as of the end of the Report Period. A few will be highlighted below.

### i.    **Picard v. Avellino & Bienes**

245.    On December 10, 2010, the Trustee commenced an avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Frank J. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y.) (the "A&B Action").

246.    During the Report Period, the Trustee focused on preparing for trial and expert disclosures, including strategizing and planning for expert needs, finalizing the Trustee's expert's reports, analyzing defendants' expert's opinions, developing expert testimony, reviewing BLMIS documents, reviewing documents produced by the A&B Defendants and third-parties, reviewing deposition testimony from defendants and third-parties, including former BLMIS employees, and analyzing evidence with the help of consultants.  The Trustee also performed overall case management.

### ii.   Picard v. Andrew H. Madoff and Picard v. Mark D. Madoff

247.   During the Report Period, the Trustee continued to manage and attempt to liquidate certain investment fund and business interests transferred pursuant to the June 23, 2017 Stipulation and Order of Settlement (the "Stipulation") entered into between and among the Trustee, the U.S. Attorney's Office for the Southern District of New York (the "Government"), and the Estates of Andrew H. Madoff and Mark D. Madoff (the "Estates"). The Stipulation, which resolved all of the Trustee's claims against the Estates in *Picard v. Andrew H. Madoff*, Adv. Pro. No. 09-01503 (SMB), and against various Madoff-related business entities in related adversary proceedings,[6] was approved by the Court on July 24, 2017. (ECF No. 311). The Trustee and the Government share all proceeds of the liquidation of assets received under the Stipulation.

248.   As of March 31, 2020, the last day of the prior Report Period, the Trustee had received $14,272,895.29 under the Stipulation. The Trustee did not receive any funds under the Stipulation during the Report Period.

### iii.   Picard v. Cohmad Sec. Corp.

249.   On June 22, 2009, the Trustee commenced an adversary proceeding against Madoff insiders Cohmad Securities Corporation ("Cohmad"), Maurice J. Cohn ("Sonny Cohn"), Marcia B. Cohn, and several other defendants (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with

---

[6] The Trustee's adversary proceedings against the Madoff-related business entities were entitled *Picard v. Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB), *Picard v. Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (SMB), and *Picard v. Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB).

certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (SMB).

250.    In November 2016, a motion was filed under Federal Rule of Bankruptcy Procedure 9019 for court approval of a settlement with certain defendants, including Cohmad Securities Corporation, and Marcia Cohn and Marilyn Cohn, in their individual capacities and as co-executors of the Estate of Maurice Cohn. The Court approved that settlement on November 29, 2016. Those defendants were dismissed from this adversary proceeding on January 3, 2017.[7]

251.    The Trustee also entered into settlement agreements throughout 2016 to 2019 with various defendants. These defendants were ultimately dismissed from this adversary proceeding. In addition, several other defendants were voluntarily dismissed from this adversary proceeding in connection with, among other things, negotiations.

252.    On August 26, 2019, a stipulation and order for voluntary dismissal was entered by the Court dismissing defendants The Estate of Stanley Merwin Berman a/k/a Stanley M. Berman, Joyce Berman individually and in her capacity as Executor of The Estate of Stanley Merwin Berman a/k/a Stanley M. Berman, and S & J Partnership from the adversary proceeding. (ECF No. 405).

253.    On September 9, 2019, an Eighth Amended Case Management Plan was so ordered by the Court extending the date by which the Trustee had to take the depositions of certain defendants to October 9, 2019 (the "Discovery Cut-Off Date").

254.    On October 2, 2019, a stipulation and order for voluntary dismissal was entered by the Court dismissing defendant Jane M. Delaire a/k/a Jane Delaire Hackett from the adversary proceeding. (ECF No. 407).

---

[7] This adversary proceeding is currently captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Morton Kurzrok et al.*, Adv. Pro. No. 09-01305 (SMB), as a result of the Trustee's settlement with and dismissal from this adversary proceeding of, among others, Cohmad.

255.    On October 2, 2019, the Court granted defendant Morton Kurzrok's request to extend the Discovery Cut-Off Date to November 8, 2019.

256.    On October 23, 2019, a stipulation and order for voluntary dismissal was entered by the Court dismissing defendants Richard Spring, Jeanne T. Spring Trust, and The Spring Family Trust from the adversary proceeding. (ECF No. 413).

257.    On July 21, 2020, a stipulation and order for voluntary dismissal of the adversary proceeding was entered by the Court (ECF No. 419) dismissing defendant Morton Kurzrok (the only remaining defendant in the adversary proceeding), and dismissing the adversary proceeding with prejudice.

### iv.    Picard v. Magnify Inc.

258.    On December 6, 2010, the Trustee commenced an action against Magnify, Inc. and several related companies holding BLMIS accounts, individuals acting on behalf of these accounts, and several other recipients of transfers from these accounts (collectively, the "Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc*., Adv. No. 10-05279 (SMB). On September 21, 2011, the Trustee filed an amended complaint in the action. (ECF No. 39). On September 29, 2017, the Trustee filed a second amended complaint. (ECF No. 143).

259.    During the Report Period, the Trustee continued to analyze strategic issues relating to the case following the Court's April 13, 2018 Memorandum Decision Denying Defendants' Motion to Dismiss (ECF No. 143). On June 18, 2019, the parties participated in a status conference with the Court, after which the Court so ordered the parties' Twelfth Amended

Case Management Plan (ECF No. 181) and directed the parties to participate in mediation. (ECF No. 180). Pursuant to the Court's order, the parties participated in mediation on September 11-12, 2019. During this time, the Trustee continued working with experts, assessed deficiencies in the Magnify Defendants' discovery responses, and prepared for potential additional depositions.

260.    The Trustee also continued to prosecute two actions brought in Israel in December 2015 to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts. In connection with these actions, the Trustee worked with Israeli counsel to navigate various issues related to document discovery, including dealing with logistical and strategic issues relating to the production of documents in a foreign country, assessing deficiencies in the defendants' discovery responses, and performing various legal and factual research in preparation for a hearing before the Israeli court.

261.    Prior to the Report Period, the Trustee engaged in a court-ordered mediation with the U.S. defendants. The mediation resulted in settlement negotiations, including the draft of a term sheet and settlement agreement with respect to resolving both the Israeli direct action and the U.S. action. The settlement agreement was subsequently finalized, and on September 4, 2020, the Trustee filed a Federal Rule of Bankruptcy Procedure 9019 motion seeking bankruptcy court approval of the settlement. On September 28, 2020, the Bankruptcy Court entered an Order approving the settlement.

262.    During the Report Period, the Trustee continued to work with Israeli counsel to coordinate strategy on the Israeli actions, including a potential settlement of the Israeli direct action and the U.S. action. Israeli counsel filed several motions to compel additional discovery from the defendants, many of which were at least partially granted by the court and costs awarded to the Trustee.

263.    During the Report Period, certain of the Israeli defendants filed an appeal to the Supreme Court of Israel of the decision denying their motion for an anti-suit injunction enjoining the Trustee from bringing a subsequent transferee action in the U.S. on the grounds that such an action is substantially similar to the proceeding against them and the Israeli Court is the forum better suited to adjudicate the case. This appeal was denied on July 2, 2020, and the Trustee continued to draft a complaint against subsequent transferees to be filed in the U.S.

264.    During the Report Period, counsel for the Trustee and Israeli counsel coordinated to prepare and finalize expert reports and related discovery to be produced in the Israeli action on October 1, 2020, as the first of two submissions of evidence ordered by the court.  In addition, Israeli counsel retained an expert on corporate governance issues.

**v.      Picard v. Legacy**

265.    On December 6, 2010, the Trustee commenced an action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Legacy. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

266.    During the Report Period, B&H attorneys, on behalf of the Trustee, conducted post-judgment discovery pursuant to Federal Rules of Civil Procedure 69 and 45 on Legacy and third parties in connection with Judge Bernstein's entry of a Final Judgment against Legacy in the amount of $79,125,781.00.  The Trustee's counsel engaged in meet and confers and analyzed documents and discovery responses in connection with post-judgment discovery propounded by the Trustee.

267.    The Trustee also served a Rule 2004 subpoena to Khronos, LLC ("Khronos") in connection with the potential recovery of subsequent transfers of BLMIS customer property from various subsequent transferees.   During the Report Period, the Trustee's counsel engaged in motion practice concerning Khronos's objection to the Trustee's Rule 2004 subpoena.   A hearing took place on September 9, 2020 before Judge Bernstein in connection with Khronos's motion to quash the Trustee's Rule 2004 subpoena.   Judge Bernstein denied Khronos's motion to quash and entered an order requiring Khronos to: (i) turn over documents concerning additional subsequent transferees; and (2) identify the service provider who took over financial services for one of the subsequent transferees.   The Trustee engaged in additional Rule 2004 discovery upon receipt of documents from Khronos.

268.    During the Report Period, the Trustee's counsel continued preparations in connection with the appeals filed in this adversary proceeding. For background, on November 22, 2019, B&H attorneys, on behalf of the Trustee, filed a notice of appeal in connection with the following prior rulings: (i) Memorandum Decision Regarding Motions to Dismiss the Trustee's Amended Complaint, granting in part Legacy Capital Ltd.'s motion to dismiss the Trustee's Amended Complaint. *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Mar. 14, 2016), ECF No. 134; (ii) Order Granting Legacy Capital Ltd.'s and Khronos LLC's Motions to Dismiss the Amended Complaint Under Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(6). *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Apr. 12, 2016), ECF No. 137; and (iii) Opinion and Order of the United States District Court for the Southern District of New York (Rakoff, J.), dated April 28, 2014. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (In re Madoff Sec.), 516 B.R. 18 (S.D.N.Y. 2014) (No. 12 mc-115 (JSR)), ECF No. 524 (the "Trustee's Appeal").

269.   On November 26, 2019, Legacy filed a notice of cross-appeal of the Final Judgment, including without limitation the Memorandum Decision and Order Granting Relief under Federal Civil Rule 56(g). *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-05286 (SMB) (Bankr. S.D.N.Y. June 25, 2019), ECF No. 221 (the "Cross Appeal"). The Parties thereafter designated their respective Contents and Issues on Appeal and Cross-Appeal in accordance with the Bankruptcy Court's individual practices and the governing rules of appellate procedure.

270.   On May 27, 2020, the Trustee filed a motion for the appeals in *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020) and *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020) to proceed in tandem and be heard by the same panel. *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), ECF No. 29. *See* discussion *supra* Section (VI)(D)(v). On June 2, 2020, the defendants in *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020) filed an opposition to the Trustee's motion for the appeals to proceed in tandem. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 31. On June 8, 2020, the Trustee filed a reply in support of his motion for *Picard v. Citibank N.A.*, 20-1333 (2d Cir. 2019) and *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020) to proceed in tandem. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 41. On that same day, the Second Circuit granted the Trustee's motion. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 45. *See* discussion *supra* Section (VI)(D)(v).

271.   On July 1, 2020, the Second Circuit issued a Scheduling Order requiring the Trustee to file his opening appeal brief on or before August 6, 2020. *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), ECF No. 57. *See* discussion *supra* Section (VI)(D)(v).

272.   On July 21, 2020, the Second Circuit declined to docket Legacy's Cross-Appeal. *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), ECF No. 64.  On August 14, 2020, the United States District Court for the Southern District of New York docketed Legacy's Cross-

Appeal.  *Legacy Capital Ltd. v. Picard*, No. 20-CV-06483, (S.D.N.Y. Aug. 14, 2020), ECF No. 1.

273.    During the Report Period, B&H attorneys, on behalf of the Trustee, drafted and filed a brief in support of the issues presented in the Trustee's Appeal in accordance with the briefing schedule ordered by the Second Circuit.   The Trustee's counsel also compiled documents to be included in the accompanying appendices.

274.    During the Report Period, B&H attorneys, on behalf of the Trustee, began to prepare the Trustee's response to Legacy's Cross-Appeal.  Legacy's opening brief for its Cross-Appeal is currently due on November 23, 2020.

**vi.    Picard v. Merrill Lynch**

275.    On December 8, 2010, the Trustee commenced an action against Merrill Lynch International ("MLI") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of MLI (the "MLI Action*").  Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

276.    Prior to the Report Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the MLI Action, among others, to the Bankruptcy Court for further proceedings consistent with its opinions.  In response to the Extraterritoriality Opinion and Order, B&H attorneys, on behalf of the Trustee, prepared a Notice of Presentment of Order with coordinating defendants' counsel for the Bankruptcy Court to hear and decide issues concerning common briefing on the extraterritoriality issue.  (ECF Nos. 62, 64, 67, 71, 75).

277.    Prior to the Report Period, the Court so ordered a stipulation permitting the defendants, including MLI, to submit a consolidated memorandum of law in support of dismissal of the Trustee's complaints based on the extraterritoriality issue.  The Court also permitted the Trustee and SIPC to file a consolidated memorandum of law opposing the defendants' consolidated motion to dismiss and seeking leave to amend the complaints.  As part of that stipulated order, the Trustee and SIPC were permitted to file additional addenda opposing the motions to dismiss specific to each defendant, including as to MLI.

278.    Prior to the Report Period, B&H attorneys, on behalf of the Trustee, drafted and filed the consolidated memorandum of law opposing the defendants' motion to dismiss and seeking leave to amend the complaints. (ECF No. 87).  In addition, B&H attorneys drafted and filed certain addenda opposing the defendants' motion to dismiss specific to MLI. (ECF No. 88), and proffered allegations for an amended complaint pertaining to the extraterritoriality issue as to MLI.  (ECF No. 89).

279.    Prior to the Report Period, B&H attorneys, on behalf of the Trustee, reviewed the transferee defendants' supplemental memorandum of law and MLI's supplemental memorandum of law.  (ECF Nos. 92, 93).

280.    Prior to the Report Period, B&H attorneys, on behalf of the Trustee, entered into stipulations with counsel to MLI and prepared for further litigation while awaiting determination from the Bankruptcy Court on the Extraterritoriality Issue and the Omnibus Motion. (ECF Nos. 96, 100).

281.    Prior to the Report Period, on November 22, 2016, the Bankruptcy Court issued its opinion on the extraterritoriality issue.  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec.*

*LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 14495) (the "Extraterritoriality Memorandum Decision"). *See* discussion *supra* Section (VI)(D)(i).

282. Prior to the Report Period, on March 3, 2017, the Bankruptcy Court entered an order granting the Extraterritoriality Motion to Dismiss. *Picard v. Merrill Lynch Int'l*, Adv. Pro. No. 10-05346 (SMB), ECF No. 107.

283. Prior to the Report Period, on April 4, 2017, the Trustee and MLI filed a Certification to the Court of Appeals by All Parties. *Id.*, ECF No. 112. The Second Circuit subsequently authorized a direct appeal on October 13, 2017.

284. Prior to the Report Period, on February 25, 2019, the Second Circuit issued a decision that vacated the Bankruptcy Court's order. *In re Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Secs. LLC*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *supra* Section (VI)(D)(i).

285. Prior to the Report Period, on August 29, 2019, MLI filed a petition for writ of certiorari in the United States Supreme Court. On June 1, 2020, the United States Supreme Court denied the petition for writ of certiorari. *See* discussion *supra* Section (VI)(D)(i). Also on June 1, 2020, the Second Circuit issued the mandate, returning the MLI Action to the Bankruptcy Court.

286. During the Report Period, B&H attorneys, on behalf of the Trustee, continued to investigate and analyze the facts of the case, and worked on preparing a draft amended complaint.

## VII.   INTERNATIONAL INVESTIGATION AND LITIGATION

287. The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad, (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or

otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining international counsel to assist the Trustee in these efforts, when necessary. More than seventy of the actions filed in this Court have involved international defendants, and the Trustee is involved in actions and investigations in several jurisdictions, including Austria, Cayman Islands, France, Israel, and the United Kingdom, among others.

288.    The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

**A.      Austria**

289.    The Trustee continues to actively investigate certain banks, institutions, and individuals located in this jurisdiction. In addition, the Trustee is actively engaged in discovery involving Austrian documents and witnesses.

**B.      BVI**

290.    The Trustee is actively investigating the involvement of several BVI-based feeder funds that funneled money into the Ponzi scheme

**C.      Cayman Islands**

291.    The Trustee is actively monitoring certain third party BLMIS and HSBC-related proceedings currently pending in the Cayman Islands.

**D.      England**

292.    The Trustee currently has protective claims pending in England against HSBC and related entities. In addition, the Trustee is actively engaged in discovery involving English documents and witnesses.

E.    **France**

293.    The Trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in France. In addition, the Trustee is actively engaged in discovery involving French documents and witnesses.

F.    **Ireland**

294.    The Trustee continues to investigate BLMIS-related third-party litigation currently pending in Ireland. In addition, the Trustee is actively engaged in discovery involving Irish documents and witnesses.

G.    **Israel**

295.    The Trustee is pursuing an avoidance and recovery claim against certain Israeli defendants who received fictitious profits from BLMIS. In addition, in 2015, the Trustee filed two separate actions in Israel under Israeli law. *See* discussion *supra* in Section (VI)(E)(iv).

H.    **Liechtenstein**

296.    The Trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in Liechtenstein

I.    **Switzerland and Luxembourg**

297.    In 2010, the Trustee filed two lawsuits in this Court against Switzerland-based UBS AG and other UBS and HSBC related entities based in Luxembourg and various feeder funds, management companies, and individuals. The Trustee also continues to monitor certain BLMIS-related third-party actions currently pending in these jurisdictions. In addition, the Trustee is actively engaged in discovery involving Luxembourg documents and witnesses.

## VIII.   RECOVERIES AND CONTINGENCIES

### A.    Recoveries Accomplished During Prior Report Periods

298.    In the Sixth through Twenty-Third Interim Reports, the Trustee reviewed the significant settlements entered into during those periods and prior report periods. Prior to this Report Period, the Trustee had recovered or reached agreements to recover approximately $14.345 billion for the benefit of BLMIS customers.

### B.    Recoveries Accomplished During This Report Period

299.    During the Report Period, the Trustee settled 9 cases. Additionally, the Trustee received recoveries in connection with settlements totaling $15,417,114.53. As of the end of the Report Period, the Trustee has successfully recovered or reached agreements to recover nearly $14.364 billion.

300.    The Trustee has identified claims in at least eight shareholder class action suits that BLMIS filed before the Trustee's appointment arising out of its proprietary and market making desk's ownership of securities. During the Report Period, the Trustee had received distributions from seven of these class action settlements totaling over $91,000. The Trustee has not and will not receive any distributions from the eighth class action settlement.

301.    In addition, the Trustee has identified claims that BLMIS may have in 201 other class action suits also arising out of its proprietary and market making activities. The Trustee has filed proofs of claim in 128 of these cases and, based on a review of relevant records, has declined to pursue claims in 73 additional cases. As of September 30, 2020, the Trustee has recovered $2,652,752.43 from settlements relating to 62 of the 128 claims filed directly by the Trustee during the Report Period, of which $74.17 was recovered during this Report Period.

## IX.    THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

### A.    The Customer Fund

302.    In order to protect customers of an insolvent broker-dealer such as BLMIS, Congress established a statutory framework pursuant to which customers of a debtor in a SIPA liquidation are entitled to preferential treatment in the distribution of assets from the debtor's estate. The mechanism by which customers receive preferred treatment is through the creation of a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general estate. Customers holding allowable claims are entitled to share in the Customer Fund based on each customer's net equity as of the filing date, to the exclusion of general creditors. SIPA § 78fff-2(c).

303.    In order to make interim distributions from the Customer Fund, the Trustee must determine or be able to sufficiently estimate: (a) the total value of customer property available for distribution (including reserves for disputed recoveries), and (b) the total net equity of all allowed claims (including reserves for disputed claims). Each element of the equation—the customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

304.    There are unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves. Nonetheless, the liquidation proceeding progressed to a stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation of property to the Customer Fund, or the "numerator" (taking reserves into account), (b) the amount of allowable net equity claims, or the "denominator" (also taking reserves into account), and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

305.    The Trustee previously filed eleven motions seeking entry of orders approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property. This Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed Through 9/30/20 | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $884.6 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.431 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $900.7 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $605.9 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million | $522.2 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/15 | $345.472 million[8] | $1.567 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/16 | $247.013 million | $246.7 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/17 | $342.322 million | $326.4 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/18 | $1.303 billion | $716.3 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/19 | $515.974 million | $512.1 million | 2.729% | 18295 | 18398 |
| 11 | 02/28/20 | $988.770 million | $369.3 million | 1.975% | 19226 | 19245 |
| **TOTAL** | N/A | $14.294 billion | $13.082 billion | 68.608% | N/A | N/A |

B.    **The General Estate**

306.    If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order

---

[8] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

307.    All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate. The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

## X.    FEE APPLICATIONS AND RELATED APPEALS

### A.    Objections to Prior Fee Applications

308.    Objections were filed to six of the thirty-three fee applications submitted by the Trustee and B&H. Discussions of the objections to the first through sixth fee applications, and related motions for leave to appeal the Court's orders granting the Trustee's and B&H's fee applications and overruling those objections, are discussed more fully in the Trustee's Amended Third Interim Report ¶¶ 186–90 (ECF No. 2207); the Trustee's Fourth Interim Report ¶¶ 163–66 (ECF No. 3083); the Trustee's Fifth Interim Report ¶¶ 134–43 (ECF No. 4072); and the Trustee's Sixth Interim Report ¶¶ 131–42 (ECF No. 4529). No decision has been entered on the motion for leave to appeal the Second Interim Fee Order, No. M47-b (DAB) (S.D.N.Y.). The motion for leave to appeal the Sixth Interim Fee Order was withdrawn on September 10, 2014. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Case No. 11 MC 00265 (PGG) (S.D.N.Y.), (ECF No. 9).

### B.    Thirty-Second Fee Application

309.    On March 11, 2020, the Trustee and his counsel filed the Thirty-Second Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from August 1, 2019 through and including November 30, 2019 with the Bankruptcy Court. (ECF No. 19383). Special counsel and international special counsel also filed applications for Interim Professional Compensation. (ECF Nos. 19385-19397). A

telephonic hearing was held on April 29, 2020, and an Order was entered granting the Applications on May 4, 2020. (ECF No. 19510).

C.    **Thirty-Third Fee Application**

310.    On July 9, 2020, the Trustee and his counsel filed the Thirty-Third Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from December 1, 2019 through and including March 31, 2020 with the Bankruptcy Court. (ECF No. 19604). Special counsel and international special counsel also filed applications for Interim Professional Compensation. (ECF Nos. 19605-19618, 19626). A telephonic hearing was held on August 26, 2020, and an Order was entered granting the Applications on August 26, 2020. (ECF No. 19728).

## XI.    CONCLUSION

The foregoing report represents a summary of the status of this proceeding and the

material events that have occurred through September 30, 2020, unless otherwise indicated. This

Report will be supplemented and updated with further interim reports.

Dated:  New York, New York
       October 28, 2020

Respectfully submitted,

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*/s/ Irving H. Picard*
Irving H. Picard
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: ipicard@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities
LLC and the Chapter 7 Estate of Bernard L.
Madoff*

*Trustee for the Substantively Consolidated
SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and the Chapter 7
Estate of Bernard L. Madoff*