**CHAITMAN LLP**
Helen Davis Chaitman
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114
hchaitman@chaitmanllp.com

*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro No. 10-04438 (CGM) |
| Plaintiff, | |
| v. | |
| ESTATE OF SEYMOUR EPSTEIN, | |
| MURIEL EPSTEIN, as beneficiary and of the Estate of Seymour Epstein and/or the Trusts created by the Last Will and Testament of Seymour Epstein, as Executor of the Estate of Seymour Epstein, and as trustee of Trusts created by the Last Will and Testament of Seymour Epstein, | |

HERBERT C. KANTOR, as trustee of Trusts created
by the Last Will and Testament of Seymour Epstein,

RANDY EPSTEIN AUSTIN, as beneficiary of the
Estate of Seymour Epstein and/or the Trusts created
by the Last Will and Testament of Seymour Epstein,

ROBERT EPSTEIN, as beneficiary of the Estate of
Seymour Epstein and/or the Trusts created by the
Last Will and Testament of Seymour Epstein,

JANE EPSTEIN, as beneficiary of the Estate of
Seymour Epstein and/or the Trusts created by the
Last Will and Testament of Seymour Epstein,

SUSAN EPSTEIN GROSS, as beneficiary of the
Estate of Seymour Epstein and/or the Trusts created
by the Last Will and Testament of Seymour Epstein,
and

SHELBURNE SHIRT COMPANY, INC.,

                        Defendants.

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

I.     THERE IS NO SUBJECT MATTER JURISDICTION ................................................. 2

II.    PICARD CANNOT SHOW INTENT THROUGH 'BADGES OF FRAUD' ...................................................................................................................... 6

III.   DEFENDANTS OWNED T-BILLS THAT MADOFF VERIFIABLY HELD ................................................................................................................... 8

IV.   PICARD RELIES ON INADMISSIBLE EVIDENCE ............................................... 10

V.    DEFENDANTS ARE ENTITLED TO A CREDIT FOR TAXES PAID ................... 13

VI.   THE TRUSTEE MUST PROVE, AND HAS NOT, THAT ALL AMOUNTS TRANSFERRED INTO DEFENDANTS' ACCOUNTS WERE "FICTITIOUS" ................................................................................................ 14

VII.   THE TRUSTEE CONCEDES THAT THERE IS NO CROSS-LIABILITY HERE ............................................................................................... 15

VIII. THE TRUSTEE IS NOT ENTITLED TO AN AWARD OF PREJUDGMENT INTEREST ............................................................................... 16

CONCLUSION ......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfano v. CIGNA Life Ins. Co.*,
  No. 07 Civ. 9661 (GEL), 2009 WL 890626 (S.D.N.Y. Apr. 2, 2009) ...................................19

*Alliance for Envt'l Renewal, Inc. v. Pyramid Crossgates Co.*,
  436 F.3d 82 (2d Cir. 2006)...........................................................................................................6

*Arizona v. California*,
  460 U.S. 605 (1983)....................................................................................................................13

*Bendix Autolite Corp. v. Midwesco Enters. Inc.*,
  486 U.S. 888 (1988)......................................................................................................................7

*In re Bernard L. Madoff Inv. Sec., LLC*,
  2016 WL 183492 (S.D.N.Y. Jan. 14, 2016), *aff'd sub nom. Matter of Bernard
  L. Madoff Inv. Sec., LLC*, 697 F. App'x 708 (2d Cir. 2017)...................................................15

*In re Bernard L. Madoff Inv. Sec. LLC*,
  557 B.R. 89 (Bankr. S.D.N.Y. 2016) .............................................................................1, 4, 13

*Black Lives Matter v. Town of Clarkstown*,
  354 F. Supp. 3d 313 (S.D.N.Y. 2018)........................................................................................6

*Board of County Comm'rs of the County of Jackson v. United States*,
  308 U.S. 343 (1939).....................................................................................................................16

*Buonasera v. Honest Co., Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016).........................................................................................6

*Caplin v. Marine Midland Grace Trust Co.*,
  406 U.S. 416 (1972).......................................................................................................................3

*In re Chowaiki & Co. Fine Art Ltd.*,
  593 B.R. 699 (Bankr. S.D.N.Y. 2018) .......................................................................................3

*City of New York v. Venkataram*,
  2011 WL 2899092 (S.D.N.Y. July 13, 2011) ...........................................................................3

*Curtis v. Perkins (In re Int'l Mgmt. Assocs., LLC)*,
  781 F.3d 1262 (11th Cir. 2015) ................................................................................................11

*In re Dreier*,
  No. 08-15051 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan 3, 2014) .................................10

*Fernandez v. Capra,*
916 F.3d 215 (2d Cir. 2019)...................................................................13

*Gen. Elec. Co. v. Joiner,*
522 U.S. 136 (1997)...........................................................................12

*Goldman Sachs Execution & Clearing, L.P. v. The Official Unsecured Creditors'
Comm.,*
No. 10 Civ. 5622, 2011 WL 2224629 (S.D.N.Y. May 31, 2011), *aff'd,* 491
Fed.Appx. 201 (2d Cir.2012)..............................................................17

*Gust, Inc. v. Alphacap Ventures, LLC,*
No. 15CV6192 (DLC), 2017 WL 2875642 (S.D.N.Y. July 6, 2017), *rev'd on
other g'ds,* 905 F.3d 1321 (Fed. Cir. 2018) ...........................................19

*In re Int'l Pharmacy & Disc. II, Inc.,*
443 F.3d 767 (11th Cir. 2005) ..............................................................3

*JPMorgan Chase Bank, N.A. v. Yuen,*
2013 WL 2473013 (S.D.N.Y. June 3, 2013) ...........................................10

*Knipe v. Skinner,*
999 F.2d 708 (2d Cir. 1993)..................................................................7

*Kramer v. Mahia (In re Khan),*
14-MC-01674 (PKC), 2016 WL 6652724 (E.D.N.Y. Nov. 10, 2016) ....................16

*In re Livent, Inc.*
360 F. Supp. 2d 568 (S.D.N.Y. 2005).................................................18, 19

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)...........................................................................2

*In re Lyondell Chemical Co.,*
No. 13 Civ 3881(RA), 2014 WL 975507 (S.D.N.Y. Mar. 11, 2014) ....................16

*Lyondell Chemical Co. v. Blavatnik,*
567 B.R. 55 (Bankr. S.D.N.Y. 2017), *aff'd as modified* 585 B.R. 41 (S.D.N.Y
2018) .............................................................................................7

*In re Madoff,*
779 F.3d 74 (2d. Cir. 2015)..................................................................18

*Mecca v. Gibraltar Corp. of Am.,*
746 F. Supp. 338 (S.D.N.Y. 1990).........................................................16

*Mendelsohn v. Jacobowitz (In re Jacobs)*
394 B.R. 646 (Bankr. E.D.N.Y. 2008)......................................................7

*Mfg'rs Hanover Trust Co. v. Drysdale Sec. Corp.*,
   801 F.2d 13 (2d Cir. 1986)................................................................................18

*Michael v. Gen. Motors Co.*,
   15 Civ. 2659 (CM), 2018 WL 6332883 (S.D.N.Y. Nov. 13, 2018) .......................................12

*Morales v. Walt Disney Prods.*,
   361 F. Supp. 1157 (S.D.N.Y. 1973)......................................................................16

*In re Palermo*,
   739 F.3d 99 (2d Cir. 2014)................................................................................17

*Picard v. Estate (Succession) of Doris Igoin*,
   525 B.R. 871 (Bankr. S.D.N.Y. 2015)...................................................................13

*Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*),
   773 F.3d 411 (2d Cir. 2014), *cert. denied* 135 S. Ct. 2859 (June 22, 2015)..........................17

*Picard v. Legacy Capital, Ltd.*,
   603 B.R. 682 (Bankr. S.D.N.Y. 2019) ..................................................................8

*Picard v. Mendelow*,
   560 B.R. 208 (Bankr. S.D.N.Y. 2016) ...............................................................1, 4

*Picard v. Nelson*,
   610 B.R. 197 (Bankr. S.D.N.Y. 2019) .........................................................*passim*

*Playboy Enters., Inc. v. Dumas*,
   960 F.Supp. 710 (S.D.N.Y.1997)........................................................................7

*Ruggiero v. Warner-Lambert Co.*,
   424 F.3d 249 (2d Cir. 2005).............................................................................12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   513 B.R. 437 (S.D.N.Y. 2014)...........................................................................13

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   592 B.R. 513 (Bankr. S.D.N.Y. 2018)...................................................................11

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard L. Madoff*),
   2020 WL 1488399 (Bankr. S.D.N.Y. Mar. 20, 2020) ...........................................11

*In re Siskin*,
   231 B.R. 514 (Bankr. E.D.N.Y. 1999)...................................................................6

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998)....................................................................................5, 6

{00045498 1 }

*U.S. v. Blechman*,
    657 F.3d 1052 (10th Cir. 2011) ..........................................................................11

*United States v. Salerno*,
    505 U.S. 317 (1992)..............................................................................................9

*United States v. Seaboard Sur. Co.*,
    817 F.2d 956 (2d Cir. 1987)...............................................................................17

*USA United Fleet, Inc. v. Ally Financial, Inc.*,
    559 B.R. 41 (Bankr. E.D.N.Y. 2016)...................................................................7

*Whitmore v. Arkansas*,
    495 U.S. 149 (1950)..............................................................................................2

*Wolfe v. Devon Energy Prod. Co., LP*,
    382 S.W.3d 434 (Tex. App. 2012).......................................................................6

**Statutes**

11 U.S.C. § 546(e) ...............................................................................................14

**Other Authorities**

Fed. R. Evid. 804(b)(1) .........................................................................................9

Wright & Miller, Federal Practice & Procedure, §6975 .......................................9

Defendants Estate of Seymour Epstein, Muriel Epstein as Executrix of the Estate of Seymour Epstein and the Trustee of the Trusts created by the Last Will and Testament of Seymour Epstein (the "Trusts"), Herbert C. Kantor, as trustee of the Trusts, and Shelburne Shirt Company, Inc. ("Shelburne", and, collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their cross-motion for summary judgment dismissing the complaint of Irving H. Picard, the Trustee for the Liquidation of Bernard L. Madoff Investment Securities, LLC (the "LLC"), for lack of subject matter jurisdiction.

## PRELIMINARY STATEMENT

Defendants have demonstrated that Madoff individually, and not the LLC of which Picard is the Trustee, owned the two JPMC bank accounts from which the transfers to Epstein and Shelburne were made.  Thus, the property the Trustee seeks to recover is property that never belonged to the LLC in the first place, Picard lacks Article III standing to recover the withdrawals, and this Court has no subject matter jurisdiction over the complaint.  The bedrock principle of subject matter jurisdiction is not waived simply because the Trustee feels he can make good use of Defendants' money.  As this Court twice held, in carefully reasoned decisions, the Trustee has no standing to recover transfers by Madoff.  Picard is the Trustee for the LLC, not for Madoff individually.  Only the Trustee for Madoff individually ever had standing to recover the property of Madoff individually and that Trustee chose not to sue.  *See In re Bernard L. Madoff Inv. Sec. LLC*, 557 B.R. 89, 109 (Bankr. S.D.N.Y. 2016) ("*Avellino*") ("Only the Madoff trustee can recover actual transfers by the sole proprietorship."); *Picard v. Mendelow*, 560 B.R. 208, 227 (Bankr. S.D.N.Y. 2016) (same).

## ARGUMENT

### I.    THERE IS NO SUBJECT MATTER JURISDICTION

A federal court cannot exercise jurisdiction over a case where the plaintiff lacks Article III injury. *See Whitmore v. Arkansas,* 495 U.S. 149, 161 (1950). The indisputable documentary record proves that the money the Trustee seeks to recover was transferred by Madoff, not the LLC. Picard is the Trustee for the LLC, not Madoff individually, and he has no standing to assert a claim that, by statute and court order, could only have been asserted by Madoff's individual Trustee.

The burden is on the Trustee to establish that he has suffered Article III injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Trustee must carry that burden "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at successive stages of the litigation." *Id.*at 561.

The Trustee does not challenge any of the evidence which proves that Madoff owned the bank accounts through which Defendants were paid. Instead, he simply ignores it.

- The Trustee ignores the letters Madoff sent in January 2001 to the entities with which the LLC was going to do business that indicated that only the Legitimate Trading Business (the "LTB") had been transferred to the LLC. (CMF ¶ 10).

- The Trustee ignores the name printed on every check sent to Epstein and Shelburne from the 509 Account: "Bernard L. Madoff." (CMF ¶¶ 40, 49).

- The Trustee ignores the bank statements for the 703 and 509 Accounts, all of which show that the accounts were never owned by the LLC. (CMF ¶¶ 19, 20, 22, 27, 28).

- The Trustee ignores the admissions of his own experts that they had never seen even a single document relating to the JPMC accounts in the name of the LLC. (CMF ¶ 26).

- The Trustee ignores the admission of Bruce Dubinsky that the LLC was a legitimate business and it was only the investment advisory business that was fraudulent. (CMF ¶6). This admission, alone, demonstrates the fraud that the Trustee has perpetrated on this Court and on the innocent defendants in the clawback actions.

Since the 509 Account and the 703 Account were not owned by the LLC, they were not the property of the LLC. *In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699, 713 (Bankr. S.D.N.Y. 2018) ("New York law presumes that 'once funds are deposited in a bank account, the account holder has title to and control over those funds.'"); *City of New York v. Venkataram*, 2011 WL 2899092, at *5,n.6 (S.D.N.Y. July 13, 2011) ("'Under New York law, the party who possesses property is presumed to be the party who owns it.'"); *see also In re Int'l Pharmacy & Disc. II, Inc.,* 443 F.3d 767, 771 (11th Cir. 2005) ("In most states, the name or title to a bank account creates a presumption of ownership in the titleholder.") *See also Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428-30 (1972) (Chapter X trustee had no standing to assert claims against a third party on behalf of the debtor's debenture holders because, *inter alia,* the Bankruptcy Act did not authorize a trustee to collect money not owed to the estate.)

Since the Trustee cannot refute the evidence that Madoff owned the money he claims was transferred, he cannot satisfy this Court that it has subject matter jurisdiction. Ignoring all the documentary evidence to the contrary, the Trustee nevertheless argues that the transfers to Defendants were an "interest of the debtor in property," relying on *Picard v. Nelson,* 610 B.R. 197, 216 (Bankr. S.D.N.Y. 2019), where the court stated that the Nelsons had conflated subject matter jurisdiction with the merits of Picard's claims. (Tr.R.Br. at 3). In *Nelson,* this Court reasoned that Picard had standing because he represented

> an insolvent customer property estate to avoid and recover transfers for the benefit of the customer property estate which was injured by the fraudulent transfers of

customer property and the Trustee's action will redress that injury by replenishing
the funds in the customer property estate available to satisfy the customers' net
equity claims in the SIPA proceeding.

Tr.R.Br. at 3, *quoting Nelson*, 610 B.R. at 216.

Most respectfully, this conclusion makes no sense. This Court twice held, in carefully reasoned, detailed opinions, that Picard had no standing to sue to recover transfers by Madoff. *See Avellino*, 557 B.R. at 109 ("Only the Madoff trustee can recover actual transfers by the sole proprietorship."); *Mendelow*, 560 B.R. at 227 (Bankr. S.D.N.Y. 2016) (same). Notwithstanding these rulings, in *Nelson,* this Court held that the Trustee has standing to recover any property that will be used to enrich the LLC's customers. By that reasoning, the Trustee would have a right to rob a bank, so long as he put the money in the customer property estate. Article III injury cannot be so casually created. The LLC's "customer property estate" cannot include property that belonged to Madoff, just as Madoff's estate cannot include property that belonged to the LLC.

There is not a shred of evidence (and there was not a shred of evidence in the *Nelson* case) to establish that the Trustee has suffered Article III injury. In *Nelson* this Court stated, in addition to its conclusion that the Trustee could recover anything that was "customer property," that the "evidence demonstrated that BLMIS owned the Chase Accounts" *Nelson,* 610 B.R. at 216. But that factual finding is clearly erroneous: the evidence on which this Court relied, in fact, proved exactly the opposite: This Court stated that Madoff represented, on SEC Amended Form BD, that he would transfer "all of predecessor's assets and liabilities related to predecessor's business" and that no "accounts, funds, or securities of customers of the *applicant* are held or maintained by such other *person*, firm or organization." *Nelson,* 61- B.R. at 216. However, this Court over-looked the clear evidence in Amended Form BD proving that Madoff retained the IA business as a sole proprietorship. The LLC, not Madoff, is clearly noted as the "applicant" on Amended Form BD.

*See* Chaitman Dec. Exh. E.  Moreover, this Court failed to address the fact that the form contained a section in which the LLC confirmed that the only "business" of the LLC was market making and proprietary trading, and that it represented that it did not engage in "investment advisory services" at all.  CMF ¶ 12.

This Court referred to the JPMC bank statements as Commercial Checking Accounts but this does not indicate who owned the bank accounts.  Clearly, based on JPMC's records, Madoff did.  This Court also appeared to rely upon the fact that the JPMC bank statements were sent to Anthony Tiletnick or Daniel Bonventre, and not to Madoff personally.  But there is nothing in the law which suggests that an account holder can change the ownership of an account, not by notifying the bank in writing, but rather by simply designating an employee to receive the bank statements.

Finally, in *Nelson* this Court cited admissions in the Defendants' answers that they received transfers from the LLC, as well as debit memoranda that contained the name of the LLC.  *Nelson* 610 B.R. at 216.  Obviously, the defense counsel who prepared the Nelsons' answers assumed, mistakenly, that the Trustee would not knowingly make false allegations in the complaint.  The discovered eked out by the Nelsons' subsequent counsel proved, indisputably, that the Trustee misrepresented the ownership of the JPMC accounts.

As the Supreme Court held in *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 101 (1998), a district court must establish jurisdiction, including a determination that the plaintiff has Article III standing, before deciding the merits.  Courts may not simply resort to a theory of "hypothetical jurisdiction" without first determining that the court has subject matter jurisdiction. *Id.*at 94.  As the Supreme Court explained:

> Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is
> power to declare the law, and when it ceases to exist, the only function remaining

to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 7 Wall. 506, 514, 19 L.Ed. 264 (1868).

*Steel*, 523 U.S. at 94. For a federal court "to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act *ultra vires.*" *Id.* at 101; *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016); *see also Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 321 (S.D.N.Y. 2018). That a plaintiff may offer to make good use of the money he hopes to recover is not a basis to exercise jurisdiction when the plaintiff never owned the stolen property.

In *Alliance for Envt'l Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 86 (2d Cir. 2006), the Second Circuit, citing *Steel,* explicitly held that standing must be resolved before the merits. The issue in *Steel* was whether Article III standing or "statutory standing" should be decided first. As the court observed, "*Steel Co.* is clear enough that merits issues may not be decided first, but leaves us uncertain as to the circumstances under which statutory standing may be decided (and rejected) before Article III standing is established." *Alliance,* 436 F.3d at 86. Thus, *Alliance* in no way suggests that the court defer consideration of standing until after conducting a trial on the merits. Courts nationwide agree that subject matter jurisdiction is separate from whether the plaintiff has stated a claim. "Standing is not an element of a claim. It is a jurisdictional underpinning of a suit and can be challenged at any time." *Wolfe v. Devon Energy Prod. Co., LP,* 382 S.W.3d 434, 464 (Tex. App. 2012); *see also In re Siskin*, 231 B.R. 514, n.3 (Bankr. E.D.N.Y. 1999).

## II.  PICARD CANNOT SHOW INTENT THROUGH 'BADGES OF FRAUD'

Defendants demonstrated in their opening brief ("OB") that the Trustee could not prove intent in seeking summary judgment because he could not prove the existence of a Ponzi scheme and, thus, could not rely on the Ponzi scheme presumption to establish fraud. Despite the Trustee's

repeated representations to every court before which he appeared that Madoff never used IA customers' money to purchase securities, and after Dubinsky's repeated and flagrant perjury at the *Nelson* trial, Dubinsky finally admitted on cross-examination that Madoff bought T-bills with IA customer money and there is reliable third party evidence proving so. The Trustee now contends that, even if there was no Ponzi scheme, he has shown intent because there are "badges of fraud." (Tr.R.Br.III.A.2).

This argument, which the Trustee improperly raises for the first time in reply, is misplaced. Thus, the Court should not consider it. *Playboy Enters., Inc. v. Dumas,* 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997). *See also Bendix Autolite Corp. v. Midwesco Enters. Inc.,* 486 U.S. 888, 893–97 (1988); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).

However, even if this Court were to find "badges of fraud," there is, at best, circumstantial evidence only and not conclusive proof. *See, e.g. Lyondell Chemical Co. v. Blavatnik,* 567 B.R. 55, 117 (Bankr. S.D.N.Y. 2017), *aff'd as modified* 585 B.R. 41 (S.D.N.Y 2018). Even where badges of fraud are present, actual intent still must be proven. *Id; see also Mendelsohn v. Jacobowitz* (*In re Jacobs*) 394 B.R. 646, 661 (Bankr. E.D.N.Y. 2008); *USA United Fleet, Inc. v. Ally Financial, Inc.*, 559 B.R. 41, 57 (Bankr. E.D.N.Y. 2016). Notably, while the *Lyondell* court assumed, without deciding, that Picard need only show intent on the specific transfers by a preponderance of the evidence, it still determined that he had not done so. *Lyondell,* 567 B.R. at 142.

And the Trustee has not done so here: he has not proven any badges of fraud because Madoff was contractually obligated to make the payments the Trustee claims were fraudulent. Moreover, the Trustee has not proven that the LLC conducted a Ponzi scheme, and has not refuted the substantial evidence of legitimate investments in T-bills. In fact, Dubinsky himself admitted

that the LLC was a legitimate business.  CMF ¶ 6.  This admission alone destroys the Trustee's

standing.

### III.    DEFENDANTS OWNED T-BILLS THAT MADOFF VERIFIABLY HELD

The Trustee argues that Defendants simply "speculate" about the T-bills that appear in the

Epstein and Shelburne Accounts.  (Tr.R.Br. at 13).  On the contrary, the listing of a security on a

brokerage account statement is evidence that the brokerage firm has credited that security to the

customer's account.  No customer has any other proof.  Defendants have presented reliable third

party evidence that the T-bills on the account statements were owned by Madoff at the time they

appeared on the statements related to the Accounts.  The Trustee's reliance on Dubinsky's report

to suggest that these particular T-bills either somehow did not exist, or were bought only for "cash

management" purposes rather than "for" Epstein or Shelburne (Tr.R.Br. at III.B.2) is plainly

disproven by the T-Bills' undeniable existence on the customer statements and on the records of

the third parties that sold them to Madoff.

As this Court held in *Picard v. Legacy Capital, Ltd.,* 603 B.R. 682 (Bankr. S.D.N.Y. 2019),

summary judgment is inappropriate because "[t]he relationship, if any, between BLMIS's purchase

of T-bills from brokers and the apparent resale of a portion of these purchases . . . raise factual

issues that the Court cannot resolve on this motion."  The Court expressed the same concerns at a

recent hearing, telling Picard:  "[y]ou know my view on these summary judgment . . . , motions,

particularly on the issues I've identified, [whether the JPMC Accounts were held by Madoff

personally or by the LLC, whether the LLC was a Ponzi scheme, and if so, when it began, whether

the LLC was allocating T-bills purchased by the PT arm to customers of the IA business, deposits

and withdrawals] . . . I have to try it."  CMF ¶ 102.

The Trustee's argument that Defendants "have no claim to an individual credit for T-Bills

purchased by BLMIS as a cash management tool" because there is no mechanism in SIPA or the

Bankruptcy Code for a customer to increase its net equity claim (Tr.R.Br. at 14) does not refute any of Defendants' evidence of the T-Bills or that those T-Bills appear specifically on the statements. The Trustee has not proven that those particular T-Bills were purchased for any reason at all and, obviously, the securities market could not function if a decade after a securities transaction a bankruptcy trustee could claim that the dealer's motive for purchasing securities for a customer's account justified an *ex post facto* reversal of the transaction. The Trustee simply reiterates his statements in his OB regarding a chart Dubinsky prepared that purportedly reflected his comparison of T-Bills held in the PT Business and the spreadsheet DiPascali used "as a cash management tool." Even DiPascali's testimony regarding his process for purchasing T-bills as a cash management tool and fabricating customer statements (*e.g.* Tr.R.Br. at 12) does not make any reference to Defendants. Surely, if the statements of all of Madoff's other customers had been helpful, Picard would have produced them. Instead, Picard refused to produce the statements of non-clients and this Court indicated it would not compel Picard to produce those records. CMF ¶ 100. Thus, they are entirely inadmissible.

Picard has submitted further testimony of DiPascali in his reply, but, as explained in Defendants' OB at II, DiPascali's trial testimony cannot be relied upon here, especially where Defendants had no opportunity to depose DiPascali and his testimony, obviously, was fashioned to satisfy the government's needs in prosecuting various Madoff employees. *See, e.g. United States v. Salerno*, 505 U.S. 317, 321 (1992) ("Nothing in the language of Rule 804(b)(1) suggests that a court may admit former testimony absent satisfaction of each of the Rule's elements"); Wright & Miller, Federal Practice & Procedure, §6975. Moreover, Picard cannot explain the testimony of Jodi Crupi that DiPascali specifically told her to which customers she should credit specific T-bill purchases. CMF ¶ 62.

Picard also contends that Defendants are not entitled to a credit because the proof regarding the T-Bills improperly adopts a "tracing" theory which allows them to "cherry pick" profits and, "in the context of Ponzi schemes [. . .] tracing theories are almost universally rejected by courts as inequitable." (Tr.R.Br. at 15). Picard has put the cart before the horse. He has the burden of proving that Madoff's sole proprietorship was a Ponzi scheme and he has not met that burden. Defendants' proof makes it clear that Madoff did not operate a Ponzi scheme because at least certain of the profits were real. In *In re Dreier,* No. 08-15051 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan 3, 2014), the court held that, because the trustee "did not conduct an analysis or trace the flow of funds moving in and out of Wachovia or the sources of those funds," the trustee failed to prove that the funds at issue were derived from other customers' property. *Id.*

Every fraud is not a Ponzi scheme. Just as Picard has done here, the trustee in *Dreier* presented a plea allocution in which Dreier admitted to having established a fraudulent scheme and to his use of false financial statements. Dreier also admitted to the transfer and disbursement of various sums involving the proceeds of fraud. Yet, the court found that Dreier was **not** operating a Ponzi scheme.

## IV.    <u>PICARD RELIES ON INADMISSIBLE EVIDENCE</u>

The only reliable evidence concerning Madoff's purchase of securities is third party documentation produced by firms such as JPMC, Bear Stearns, and Fidelity, where Madoff maintained accounts through which he purchased T-bills. Having argued, when it served his purposes, that Madoff's records were "permeated with fraud," the Trustee argues, as he did in *Nelson*, that the business records of an entity engaged in fraud are routinely admitted into evidence under the business records exception. (Tr.R.Br. at 5). However, since the touchstone of admissibility is the general trustworthiness of the information, courts hold that the business records exception is inapplicable when there is an "incentive to falsify or alter" the records. *See JPMorgan*

*Chase Bank, N.A. v. Yuen*, 2013 WL 2473013, at \*7 (S.D.N.Y. June 3, 2013); *see also U.S. v. Blechman*, 657 F.3d 1052, 1066 (10th Cir. 2011).

The Trustee cites cases holding that the business records exception is inapplicable where the debtor's records are not supported by reliable third party evidence. *See e.g., Curtis v. Perkins (In re Int'l Mgmt. Assocs., LLC)*, 781 F.3d 1262, 1267-69 (11th Cir. 2015). And this Court itself recognized the need for reliability with respect to Madoff's records in *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513, 528–29 (Bankr. S.D.N.Y. 2018), where the Court found that the documents in question had been "reconciled . . . with third-party documents . . . obtained from financial institutions."). That is precisely what is absent here with respect to the documents on which the Trustee relies.

The Trustee cites *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 2020 WL 1488399, at \*19 (Bankr. S.D.N.Y. Mar. 20, 2020), where defense counsel was sanctioned for demanding that he produce all trading records. The Trustee's firm has already been paid in excess of $1.2 billion in fees and there has never been a suggestion that the Court would not allow him the fees he would incur in producing all the trading records to the Defendant. *See* 3/11/20 Trustee's 32nd Application for Allowance of Interim Compensation, Exs. C,D, Adv. Pro. No. 08-01789 (SMB), ECF Nos. 19833, 19834, *see also* ECF No. 19383 at 5-7**.** The Trustee obviously had a reason why he did not want Defendants to see all of the trading records.

At the appropriate time, the sanctions decision will be appealed, but the important point here is that this Court did not hold that all of Madoff's customer statements were irrelevant. It simply held that the Trustee did not have to produce them. Accordingly, having refused to produce the statements, Picard is absolutely barred from having his expert witness testify about their contents.

The Trustee contends that Dubinsky's testimony is admissible because a party must do more to rebut expert testimony than "simply assert that the expert evidence is not credible," (Tr.R.Br. at 4), citing only to a case in which the non-moving party was acting *pro se* and simply addressed the expert reports by contending, for example, that they were "plainly or obviously wrong to 'anyone with eyes'." *Michael v. Gen. Motors Co.,* 15 Civ. 2659 (CM), 2018 WL 6332883 *14 (S.D.N.Y. Nov. 13, 2018). We have done much more than "assert that the expert testimony is not credible." We have proven that the Trustee's counsel suborned perjury at the *Nelson* trial and that Dubinsky committed repeated perjury until he came clean on cross-examination.

It is the obligation of the trial court to exclude evidence which is clearly not credible. For example, in a case where the district court found that the expert's theory of causation did not rise above "subjective belief or unsupported speculation," the Supreme Court found that "it was within the District Court's discretion to conclude that the studies upon which the experts relied were not sufficient, whether individually or in combination, to support their conclusions that [plaintiff's] exposure to PCB's contributed to his cancer." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146-147 (1997). Similarly, the Second Circuit upheld the preclusion of a medical expert who sought to testify that the plaintiff's cirrhosis of the liver was caused by the drug Rezulin. *See Ruggiero v. Warner-Lambert Co.,* 424 F.3d 249, 254 (2d Cir. 2005). There was no error in the district court's exclusion of the testimony on the grounds that the expert "was unable to point to any studies or, for that matter, anything else that suggested that cirrhosis could be caused or exacerbated by Rezulin" and the technique of differential diagnoses under the circumstances was not sufficiently reliable. *Id.* at 254. Moreover, in a criminal context, "if it is established that the government knowingly permitted the introduction of false testimony reversal is 'virtually automatic.'"

*Fernandez v. Capra*, 916 F.3d 215, 230 (2d Cir. 2019), *quoting United States v. Wallach*, 935 F.2d

445, 456 (2d Cir. 1991).

Here, this Court witnessed first hand the flagrant perjury suborned by the Trustee's counsel

at the *Nelson* trial.   In order to protect the integrity of the judicial process, this Court should

preclude Dubinsky's testimony in all future trials.

## V.    DEFENDANTS ARE ENTITLED TO A CREDIT FOR TAXES PAID

In contending that Defendants are not entitled to a credit for taxes paid, the Trustee argues

that Defendants' argument was rejected in *Nelson* and in *Picard v. Estate (Succession) of Doris

Igoin*, 525 B.R. 871, 893 (Bankr. S.D.N.Y. 2015), and states that all the decisions within this SIPA

proceeding constitute law of the case and should not be revisited.  (Tr.R.Br. at 18.)  This is untrue.

The clawback cases were not substantively consolidated and, certainly, Defendants do not have

standing to appeal this Court's rulings in *Nelson*.   Thus, the law of the case doctrine does not even

apply.   But even if it applied, it is "a discretionary rule of practice and generally does not limit a

court's power to reconsider an issue."  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,

513 B.R. 437, 441 (S.D.N.Y. 2014).   Certainly, the District Court retains the power to review and

reverse all decisions of the Bankruptcy Court, and the doctrine of law of the case does not even

limit a court's power to reconsider its own decisions prior to final judgment. *Arizona v. California*,

460 U.S. 605 (1983).

The Trustee's contention that the "law of the case" binds Defendants, while it apparently

does not similarly bind him, is insupportable.  Indeed, it is the Trustee who is bound by the law of

the case in this Court's two decisions in *Avellino,* holding that only Madoff's Trustee can seek to

avoid transfers made by Madoff individually.  The Trustee does not explain why he should be able

to relitigate a ruling which he did not appeal yet Defendants should be bound by decisions in cases

which they were not a party.

{00045498 1 }                                         13

## VI.    THE TRUSTEE MUST PROVE, AND HAS NOT, THAT ALL AMOUNTS TRANSFERRED INTO DEFENDANTS' ACCOUNTS WERE "FICTITIOUS"

The Trustee argues that the Second Circuit's approval of his Net Investment Method constitutes approval of his clawback methodology. However, the Net Investment Method deals only with the allowance of customer claims. The Second Circuit did not have before it, and certainly did not rule, that avoidance actions are governed by the Net Investment Method. On the contrary, in construing 11 U.S.C. § 546(e), the Second Circuit explained that the Trustee's avoidance powers are not governed by SIPA; they are governed by the Bankruptcy Code. The Second Circuit wrote:

> [i]n our earlier decision, we interpreted "net equity" in a manner that would harmonize it with the SIPA statutory framework as a whole. . . . Section 546(e), however, is part of the Bankruptcy Code, not SIPA, and was not in issue in *In re BLMIS*. This is important because, in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality. . . . For example, a bankruptcy trustee can recover fraudulent transfers under § 548(a)(1) only when the transfers took place within two years of the petition date. And avoidance claims must be brought "two years after the entry of the order for relief" at the latest. . . . These statutes of limitations reflect that, at a certain point, the need for finality is paramount even in light of countervailing equity considerations. Similarly, by enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A). We are obliged to respect the balance Congress struck among these complex competing considerations.

*546(e) Decision* at 423 (citations omitted).

Moreover, the Trustee cannot simply assume, without evidence, that amounts transferred into Defendants' Accounts were fictitious. This is not what the Inter-Account Transfer decision provides. As Judge Engelmeyer noted in the underlying decision:

> all parties acknowledged [in the Bankruptcy Court] that a decision upholding the Inter-Account Method would not finally resolve the determination of net equity as to any claimant. A claimant would have the opportunity in the future to review the records supporting the Trustee's determination that an inter-account transfer should

be credited at less than full value and to challenge that factual determination before
the Bankruptcy Court.

*In re Bernard L. Madoff Inv. Sec., LLC*, 2016 WL 183492, at *7 n.12 (S.D.N.Y. Jan. 14, 2016),

*aff'd sub nom. Matter of Bernard L. Madoff Inv. Sec., LLC*, 697 F. App'x 708 (2d Cir. 2017).

While it would certainly be convenient for the Trustee, no court has held that he is relieved

of putting in credible evidence to establish to a trier of fact that a transfer is a transfer of "fictitious

profits." Even assuming *arguendo* that the Trustee could prove that the LLC transferred profits

that were fictitious in 2006, which he cannot, that still does not mean that the amounts transferred

to the Epstein Account from another Madoff account in the name of Bernard L. Madoff C&M 19

in 1993 were "fictitious." Defendants are entitled to the presumption that all of the monies that

were reflected in an account are legitimate unless and until the Trustee can prove that they were

not.

## VII.    THE TRUSTEE CONCEDES THAT THERE IS NO CROSS-LIABILITY HERE

The Trustee properly concedes, as he must, that he does not seek to hold any party liable

for damages allegedly incurred by the others, such that Defendant Estate of Seymour Epstein and

Muriel Epstein as executrix of the Estate and as one of the trustees of the Trusts created by

Epstein's will, are not liable for money withdrawn by Defendant Shelburne, and vice versa.

(Tr.R.Br. at 16). He also concedes that there are no claims remaining against Kantor, and that he

has not sued Muriel Epstein in an individual capacity, but only as executrix and trustee. (*Id.*).

While the Trustee apparently contends that the fact of Shelburne's dissolution does not affect any

remedy against it, its directors, officers or shareholders that existed prior to the dissolution (*id.*),

there can be no dispute that he has not stated any such claim against any directors, officers or

shareholders whatsoever.

## VIII.  THE TRUSTEE IS NOT ENTITLED TO AN AWARD OF PREJUDGMENT INTEREST

Finally, the Trustee contends that he is entitled to seek an award of prejudgment interest. (Tr.R.Br. at 19-20).  As Defendants stated in their OB, while the Trustee may be entitled to seek it, he is not entitled to receive such an award.  As the Trustee concedes, such awards are discretionary in the Second Circuit.  (Tr.R.Br. at 19).  Courts consider them inappropriate where, as here, the defendants did nothing wrong.  *See e.g. Board of County Comm'rs of the County of Jackson v. United States,* 308 U.S. 343, 352 (1939) ("interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable"); *Mecca v. Gibraltar Corp. of Am.,* 746 F. Supp. 338, 349 (S.D.N.Y. 1990) (same); *Morales v. Walt Disney Prods.,* 361 F. Supp. 1157, 1158 (S.D.N.Y. 1973); *In re Lyondell Chemical Co.,* No. 13 Civ. 3881(RA), 2014 WL 975507, at *10 (S.D.N.Y. Mar. 11, 2014) (affirming award of administrative expense but declining to impose prejudgment interest).  *See also Kramer v. Mahia (In re Khan)*, 14-MC-01674 (PKC), 2016 WL 6652724 at *2-3 (E.D.N.Y. Nov. 10, 2016)(declining to impose prejudgment interest in a case where the transferee had not made the transfer with actual intent to hinder, delay, or defraud his creditors or wrongfully retained or secreted away the transferred funds).

The Trustee concedes once again that Defendants acted in good faith.  (*Id.*).  Nonetheless, he desperately tries to point to some evidence of fault by suggesting that Defendants "knew they were 'net winners' or possessed funds BLMIS took from other customers, when the Trustee filed this avoidance action in November 2010."  *Id.*  That contention is preposterous.  There is absolutely no evidentiary support for this statement.  To the contrary, Defendants only knew that the Trustee *claimed* they were "net winners" at the time he filed this avoidance action, when he claimed wrongly that he was entitled to claw back six years of withdrawals under five different legal

theories, all of which were dismissed with prejudice by the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411, 423 (2d Cir. 2014), *cert. denied* 135 S. Ct. 2859 (June 22, 2015) (the "*546(e) Decision*"). The Trustee apparently believes that the minute he files a complaint, the Defendant should simply write him a check. That is not the law, and he is not entitled to an award of prejudgment interest. In Picard's view, Defendants are not entitled to any appreciation of their investments over a 40-year period yet he is entitled to prejudgment interest because he has deliberately drawn out these cases in order to enrich himself and his law firm.

The Trustee also contends that the rate of prejudgment interest should be set at the New York rate of nine percent. This is sadistic and conflicts with the purpose of awarding prejudgment interest, which is to compensate the plaintiff, not to punish an innocent defendant. *United States v. Seaboard Sur. Co.,* 817 F.2d 956, 966 (2d Cir. 1987) ("the purpose of prejudgment interest is compensatory, not penal"). There is no support for the Trustee's contention that the rate should be set at the New York statutory rate. If a court determines that prejudgment interest should be imposed, courts in the Second Circuit must look to the law under which the claims arise. Where the claims arise under federal law, as they exclusively do here, the federal rate, not the state statutory rate, applies. *In re Palermo*, 739 F.3d 99, 107 (2d Cir. 2014) ("claims that arise out of federal law are governed by federal rules, claims arising out of state law are governed by state rules"); *Goldman Sachs Execution & Clearing, L.P. v. The Official Unsecured Creditors' Comm.,* No. 10 Civ. 5622, 2011 WL 2224629, at *2 (S.D.N.Y. May 31, 2011) (if a case "ar[ises] under federal bankruptcy law[,] ... the federal interest rate should apply."), *aff'd,* 491 Fed.Appx. 201, 206 (2d Cir.2012) (summary order). Here, the Trustee's claims only arise under federal bankruptcy

law.  All of the Trustee's frivolous claims under New York law were dismissed by the Second Circuit.

The cases cited by the Trustee impose the New York statutory rate where the plaintiff would have received a comparable rate from its investments.  For example, in *In re Livent, Inc.* 360 F. Supp. 2d 568, 573 (S.D.N.Y. 2005) the court acknowledged that a court must be "fair and equitable" when imposing prejudgment interest.  It imposed the New York rate because a rate of 9% is "necessary to closely approximate the 9 3/8 percent interest rate that Plaintiffs actually would have obtained on the Notes" and defendants had introduced no evidence that the plaintiffs would not have received it.  *Livent* 360 F. Supp. 2d at 572.  Here, the Trustee did not allow net losers any interest on their allowed claims, even from 2009 on.  Thus, there is no basis to impose prejudgment interest on the Defendants.

Moreover, it would be inappropriate and cruel, not "fair and equitable," to impose the New York statutory rate to the facts in this case.  When customers with allowed claims sought allowance for some measure of appreciation on their investments in the 35 years their funds were invested with Madoff, Picard successfully opposed that relief entirely.  *In re Madoff,* 779 F.3d 74 (2d. Cir. 2015).  Thus, Picard's position – on which he prevailed – is that even allowed claimants are not entitled to any appreciation on their claims; not even interest.

Indeed, Picard acknowledged in this Court that state law is not applicable to federal claims. As he explained, the New York rate "applies only to the state law causes of action referenced in [the Complaint]", citing to *Mfg'rs Hanover Trust Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 28 (2d Cir. 1986) (reversing lower court because prejudgment interest under NY CPLR § 5001 is not applicable to federal securities laws claims, only to New York state law claims), and noting correctly that SIPA is not a New York state law.  See Memorandum Of Law In Support Of

Trustee's Motion For An Order Affirming Trustee's Calculations Of Net Equity And Denying Time-Based Damages dated October 12, 2012. In re BLMIS, 08-01789-smb, ECF No. 5039 at 18, n.8.

And Picard made it crystal clear that he views the New York rate as "unreasonable" and "absurd", arguing:

> [e]ven if prejudgment interest could attach in these circumstances, the 9% rate set forth under New York law is unreasonable and the Trustee would be well within his discretion to reject it. A court within the Second Circuit recently rejected the 9% rate, noting that it is "an absurd judgment rate in this day and age for any claim." *Sriraman v. Patel*, 761 F. Supp. 2d 23, 26-27 (E.D.N.Y. 2011). While it may have been reasonable when first enacted in 1981, when the federal funds rate was as high as 19.1%, it is not under current conditions, which include a federal funds rate that has been running at less than 1% for years.

*Id.* at n.9.

Awards of interest at the punitive New York rate are appropriate only where the defendant has acted wrongfully. Thus, the *Livent* court found "ample evidence of Defendants' egregious wrongdoing" in the record. *Livent,* 360 F. Supp. 2d at 573. Similarly, the court in *Alfano* found that, even though the defendant had not acted outrageously, there was "no sound basis" for its denial of coverage and it therefore was "culpable." Finally, in *Gust, Inc. v. Alphacap Ventures, LLC*, No. 15CV6192 (DLC), 2017 WL 2875642, at *7 (S.D.N.Y. July 6, 2017), *rev'd on other g'ds*, 905 F.3d 1321 (Fed. Cir. 2018), the court considered the New York rate appropriate only because it had also made a finding of subjective bad faith and awarded attorney's fees). Finally, the Trustee's reliance on *Alfano v. CIGNA Life Ins. Co.*, No. 07 Civ. 9661 (GEL), 2009 WL 890626, at *7 (S.D.N.Y. Apr. 2, 2009), is misplaced. There, the court noted the need to encourage plaintiffs to bring claims under ERISA, and awarded attorneys fees to the Plaintiff in addition to prejudgment interest. No court has ever found a need to encourage a Trustee to bring claims such

as these, especially where the defendants are completely innocent of any wrongdoing, as Defendants concededly are here.

## <u>CONCLUSION</u>

For the reasons stated, this Court should deny Picard's motion for summary judgment and should enter judgment in favor of Defendants dismissing the complaint with prejudice for lack of subject matter jurisdiction.

Dated:  November 6, 2020
      New York, New York

      **CHAITMAN LLP**

      By: *<u>/s/ Helen Davis Chaitman</u>*

      Helen Davis Chaitman
      465 Park Avenue
      New York, New York 10022
      Phone & Fax: (888) 759-1114
      hchaitman@chaitmanllp.com

      *Attorneys for Defendants*