**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Case No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br>v.<br><br>Michael Mann, Meryl Mann and BAM L.P.<br><br>Defendants. | Adv. Pro. No. 10-04390 (CMG) |

**DEFENDANTS' REPLY TO SECURITIES INVESTOR PROTECTION CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF THE TRUSTEE'S POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendants Michael and Meryl Mann and BAM L.P. (the "Defendants") hereby reply to and oppose the Memorandum Of Law In Support Of The Trustee's Post-Trial Proposed Findings Of Fact And Conclusions Of Law filed October 15, 2020, by the Securities Investor Protection Corporation ("SIPC"). In support thereof, the Defendants respectfully state as follows:

1. SIPC filed its Memorandum without notice to the Defendants or approval by the Court in the schedule for post-trial briefing, which did not provide for a response by the Defendants. The Defendants respectfully request that the Court disregard the Memorandum entirely. If the Court is inclined to review this unauthorized and belated Memorandum, it should permit this response and reject the SIPC Memorandum arguments on the grounds that they are not supported by the cases or the facts of this case.

2. SIPC makes two categories of arguments. The first is that the term "customer property" in section §78*lll*(4) of the Securities Investor Protection Act ("SIPA") should be read broadly, raising new issues and purportedly being based on legislative history, policy and SIPA case law. The second argument, that the corporate formation and structure of Madoff's businesses should be disregarded, raises matters that have been rejected by the Bankruptcy Court and disregards the evidence of account agreements, bank documents, statements and Madoff's conduct of the investment advisory business.

**A. SIPA Defines Customer Property With Reference To The SIPA Debtor**

3. SIPC contends that the term "customer property" should be read broadly in light of SIPA's purposes to "restore investor confidence in the capital markets and upgrade the financial responsibility requirements for registered brokers and dealers" and to protect the customers of the broker-dealer in a SIPA liquidation. *See* Memorandum at pp 2-4.

4. The legislative history cited by SIPC and described in the Memorandum expanded the definition of "customer property" solely to address the situations where property deposited with a failing broker-dealer may not have been properly segregated for customers as required by the Securities and Exchange Act of 1934. Hearings Before the Subcomm. on Consumer Protection & Finance of the Comm. on Interstate & Foreign Commerce,95th Cong., 1st Sess., 167 (Aug. 1,

2, and 3, 1977) (Hearings on H.R. 8331). The main issues addressed in considering the reform of SIPA at that point in its history was investor frustration at the distribution mechanisms in the Act, SIPC's role in the liquidation and the expenses of administration, and reformation of broker-dealer financial accounting; not the definition of customer property.

5. In support of its argument that the term "customer property" should be read broadly, SIPC also cites three reported decisions -- *In re MJK Clearing, Inc*., 286 B.R. 109, 129-32 (Bankr. D. Minn. 2002); *Peloro v. United States*, 488 F.3d 163, 170, 173-74 (3d Cir. 2007); and *In re John Dawson & Assocs. Inc*., 289 B.R. 654, 662 (Bankr. N.D. Ill. 2003) -- each of which denies a customer claim or interest in securities based, in part, on a fairly literal reading of the definition of "customer property" in §78*lll*(4) of SIPA.[1]

6. In *MJK Clearing*, the deposits made as collateral for the purchase of securities, which should have been segregated, were comingled with all funds held by the debtor. On these facts, the court found that the deposits fit comfortably within the definition of "customer property" in §78*lll*(4)(E) of SIPA described in the legislative history cited by SIPC.[2] In *Peloro*, the broker purchased the securities for Mrs. Peloro's account, but they were seized by the FBI before they were actually allocated to her account. The district court held that the bearer bonds became part of the customer fund because they fell within the SIPA definition of "customer property," as defined

---

[1] The court in the *John Dawson & Assocs* case held that courts interpret the protections under SIPA narrowly:

> "Courts have taken a restrictive view of the scope of customer protection pursuant to SIPA. *See e.g.*, *SIPC v. Pepperdine Univ. (In re Brentwood Secs., Inc.)*, 925 F.2d 325 327 (9th Cir.1991); *SIPC v. Stratton Oakmont, Inc.*, 229 B.R. 273, 278 (Bankr.S.D.N.Y.1999), aff'd, 210 F.3d 420 (2nd Cir.2000); *In re A.R. Baron & Co*., 226 B.R. 790, 795 (Bankr.S.D.N.Y.1998). The term "customer" is given a narrow meaning. *In re Stalvey & Assocs., Inc.*, 750 F.2d 464, 472 (5th Cir.1985)."
> 289 B.R. at 662.

[2] § 78*lll*(4)(E) of SIPA provides that customer property includes: "any other property of the debtor which, upon compliance with applicable laws, rules and regulations, would have been set aside or held for the benefit of customers, unless the trustee determines that including such property within the meaning of such term would not significantly increase customer property."

by SIPA, to include not only securities actually allocated to customer accounts, but any "cash and securities…at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor." §78*lll*(4). The district court denied her interest in the bonds and the Third Circuit affirmed. In the *John Dawson & Assocs*. case, the court recognized that "customer property" includes "the proceeds of any such property transferred by the debtor, including property unlawfully converted by the broker in unauthorized trading, but nevertheless upheld the trustee's denial of a customer claim based on the customer's failure to adequately prove the customer had properly preserved the claim for unauthorized trading.

7. In each case, there was no question that the SIPA debtor actually held, received or transferred the deposits for securities, the securities themselves or the funds in its account. That is not the situation in this case.

**B. Corporate Structure Cannot Be Disregarded**

8. SIPC contends that the corporate structure of Madoff's businesses should be disregarded because it is SIPC membership, not the duly constituted debtor, that determines ownership of the funds in the Madoff bank account or that substantive consolidation makes the distinction between Madoff's sole proprietorship and the limited liability company that became Bernard L. Madoff Investment Securities LLC irrelevant. (Memorandum at 13) [3] These arguments were rejected by the Court in *Picard v. Avellino (In re Bernard L. Madoff Inv. Secs. LLC*), 557 B.R. 89 (Bankr. S.D.N.Y. 2016), reconsideration denied, 2016 WL 6088136 (Bankr. S.D.N.Y. Oct. 18, 2016).

[3] SIPC is plainly wrong that the protective order entered by the District Court appointed the Trustee for Madoff business-regardless of the form the business may have taken (Memorandum at 13). SIPC's application and the protective order entered in response identifies only the limited liability company and not any property, including the investment advisory business and the bank accounts, held by Madoff.

9. In order to make the statement that " the funds in the 703 and 509 accounts constituted customer property precisely because BLMIS received, acquired and took possession and control of customer property entrusted to it, placed the entrusted funds in the 703 and 509 account, and then failed to return the property to the owners." (Memorandum at 8), SIPC must disregard the facts of this case, including the customer agreements, the history and use of the bank accounts by Madoff into which deposits were made and from which withdrawals were satisfied, and the complete omission from the BLMIS Form BD and focus reports of the investment advisory business.

10. The cases cited by SIPC for the proposition that corporate structure is irrelevant are also inapposite. *In re Primeline Sec.Corp*, 295 F.3d 1100, cited by SIPC, addressed two issues to determine whether the investors qualified as "customers" within the definition under SIPA: (1) whether the claimants entrusted funds "with the debtor" as required by SIPA, and (2) whether the interests the investors sought to purchase were "securities" protected SIPA. The facts of this case are substantially different from this case because Primeline was an introducing broker and therefore, was not authorized to hold customer funds or carry customer funds. *Id.* at n.1.

11. Some *Primeline* investors made payments to the debtor, the clearing broker or the fraudster directly. Under these facts, the court determined that it did not matter to whom the investors made the checks payable because the facts showed that the investors intended to make deposits with the debtor. *Id*. at 1107-08. There was evidence in the form of meetings with the broker, account agreements and statements in debtor's name and similar indications that the investor intended to have the brokerage purchase securities on the claimant's behalf. That evidence is not found in this case of the Mann accounts. Although the *Primeline* investors succeeded on the

first prong of the inquiry, they were determined not to be customers because the interests they purchased did not fit within the definition of a security covered by SIPA.

12. *In re Old Naples Sec. Inc.*, 223 F.3d 1296 (11th Cir. 2000) cited by SIPC also involved the investors in a SIPA liquidation of an introducing broker. The investors in that case intended to be making investments with the debtor although they made payments to an affiliate. The court held that relevant inquiry regarding customer status is not to whom the claimants made their checks payable, but "whether there was actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." *Id.* at 1302, quoting *SIPC v. Wise (In re Stalvey & Assocs.),* 750 F.2d 464 (5th Cir. 1985).

13. In this case, unlike *Old Naples,* the facts do not establish that there was receipt, acquisition or possession of the Mann account property by BLMIS.

**CONCLUSION**

For the reasons set forth above, without addressing every misstatement of the law or the facts, the Defendants respectfully request that the Court deny SIPC's request for judgment in favor of the Trustee.

Dated: November 17, 2020
New York, New York

**DENTONS US LLP**

By: */s/Arthur H. Ruegger*
Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
Email: arthur.ruegger@dentons.com
carole.neville@dentons.com

*Attorneys for Defendants*

US_Active\115938485\V-1

Pg 7 of 7

7

US_Active\115938485\V-1