EASTERN CARIBBEAN SUPREME COURT
IN THE COURT OF APPEAL

TERRITORY OF THE VIRGIN ISLANDS

BVIHCVAP2012/0020

(On appeal from the Commercial Division)

BETWEEN:

**FEATHERWOOD TRADING LIMITED**

Appellant

and

**FRAUNTELD MANAGEMENT LIMITED**

Respondent

Before:
    The Hon. Mr. Mario Michel                              Justice of Appeal
    The Hon. Mr. Don Mitchell                              Justice of Appeal [Ag.]
    The Hon. Mr. Frederick Bruce-Lyle                 Justice of Appeal [Ag.]

Appearances:
    Mr. Paul McGrath, QC with him Mr. Callum McNeil for the Appellant
    Mr. John Jarvis, QC with him Mr. Jeffrey Elkinson, Mr. George McPherson
    and Mr. Jerry Samuel for the Respondent

_____
2013:    January 17;
             June 10.
_____

*Civil appeal – Unjust enrichment – Failure of basis – Agreement for the purchase of shares in a Russian asset – Part of the purchase price paid in Russia in Roubles – Part paid by a BVI company to a Cypriot company offshore in US$ – BVI company not a party to the share purchase agreement – Transfer of shares frustrated by a Moscow court order – Rouble payment refunded to the buyer by the seller – The US$ payment not refunded – No written contract governing the US$ payment – Whether the BVI company could recover in unjust enrichment*

A series of agreements was made between two Russian businessmen for the sale by one and the acquisition by the other for a purchase price of US$15 million of a controlling interest in a Russian asset. Of that sum, US$2 million was paid in Russia in the amount of

1

45 million Russian Roubles ("RUR"); the balance of US$13 million was paid offshore. Featherwood was formed in the Virgin Islands by the purchaser, while Fraunteld was formed in Cyprus by the proposed seller. They were both special purpose vehicles formed for the purpose of paying and receiving the amount of US$13 million offshore in Cyprus. Both companies were connected with and controlled by the two Russian principals on behalf of the groups they represented. The agreement failed due to a court order made by a court in Moscow.

Subsequently, another agreement called the "Co-operation Agreement" for the purchase of the shares in the Russian asset and another unrelated company was concluded between the two groups represented by the two principals. The purpose of the Co-operation Agreement was to resurrect, by a slightly different mechanism, the aborted sale of the shares in the Russian asset. Neither Featherwood nor Fraunteld was a party to this Co-operation Agreement.

The Russian court order being upheld on appeal, the transfer of the shares in the Russian asset became impossible and the objectives contemplated by the Co-operation Agreement were not achieved. By written Termination Agreements dated 19th September 2008 the share purchase agreements made between the principals were rescinded.

While the RUR45 million were subsequently repaid by the principal of Featherwood to the principal of Fraunteld, the US$13 million was not, despite demand made. Fraunteld therefore brought proceedings to recover this payment. Initially, the claim was founded on contract, but after amendment it was framed in unjust enrichment. The learned judge found that Fraunteld was entitled to be repaid the US$13 million. Featherwood now appeals the judgment.

**Held**: dismissing the appeal and confirming the orders of the trial judge; allowing the counter-notice of appeal; and awarding costs to Fraunteld in the amount of two-thirds of the amount awarded in the court below, that:

1. First, to succeed in a claim in unjust enrichment the claimant must demonstrate three things: (1) that the defendant has been enriched; (2) that this enrichment was gained at the claimant's expense; (3) that the defendant's enrichment at the claimant's expense is unjust. Second, the basis must be jointly understood as such by both parties, though it need not be expressly stated. Third, failure of basis must not be confused with receipt of benefit. The transferor may receive a benefit from the transferee, but it does not follow that the basis for the transfer has, therefore, been satisfied. Fourth, in a claim for unjust enrichment, the cause of action is generally restricted to the direct provider of the benefit only.

   **Banque Financière de la Cité v Parc (Battersea) Ltd [1999] 1 AC 221** applied.

2. Enrichment will be unjust where there is a "failure of basis" or in more traditional language a "failure of consideration". A claimant may transfer a benefit to a

defendant on the basis of a future event without the defendant promising that that event will occur. If that event does not happen one can describe there as being a failure of consideration.

**Roxborough v Rothmans of Pall Mall Australia (2001) 208 CLR 516** applied.

3. Applying the above principles to the facts as found by the judge, the agreed purpose of the US$13 million payment was the transfer of the shares in the Russian asset from the group represented by Featherwood to the group represented by Fraunteld. Fraunteld paid that sum to Featherwood on the understanding that Featherwood's right to retain it was conditional upon the transfer of ownership of the shares in the Russian asset. Featherwood's enrichment occurred at Fraunteld's expense, and it is Fraunteld which has a non-exclusive right to make recovery. Since the shares in the Russian asset were not transferred to the group behind Fraunteld, the basis for the payment has failed. On the date when the transfer of the Russian shares became impossible, Fraunteld's restitutionary right arose. Accordingly, the judge was entitled to hold as he did that Fraunteld was entitled to recover the US$13 million on the grounds of a claim in unjust enrichment.

## JUDGMENT

[1]   **MITCHELL JA [AG.]:**  This appeal involves the failure of a series of agreements between two Russian businessmen for the sale by one and the acquisition by the other of a controlling interest in a Russian asset, but utilising a number of offshore structures. The appellant ("Featherwood") is a BVI Company while the respondent ("Fraunteld") is a Cypriot company. Both companies were special purpose vehicles connected with and controlled by the two Russian principals on behalf of the groups they represented. In August 2007, an agreement was reached between the two of them orally on a yacht in the South of France under which one of them would purchase half of the other's shares in the Russian asset for a total price of US$15 million. Part was to be paid in Russia and part offshore. Of the total sum, 45 million Russian Roubles ("RUR") (amounting to approximately US$2 million) was pre-paid under written share purchase agreements concluded on 20th August 2007 between two other companies controlled by the two principals. The balance of the price due, in the sum of US$13,132,595.78 ("the US$13 million"),

3

was pre-paid by Fraunteld to Featherwood's bank account in Cyprus on 17th October 2007. The payment was explained to Featherwood's bank using a fictitious share purchase agreement (the "Haberfield document") which gave the impression that it related to the sale and purchase of shares in a Cypriot company called Haberfield. The payment order made it clear that the payment was intended to be made for "the shares" under an agreement of 17th October 2007. The judge found, and there is no dispute concerning his finding of the facts, that the parties knew that this payment was in fact made in completion of the payment obligation under the August 2007 oral agreement made by the principals on board the yacht. By the time the payment was made, the principals knew that a third party, in an unrelated dispute, had obtained an injunction in Russia which prevented transfer of the shares in the Russian asset. Because of the injunction, the transfer of the shares in the Russian asset could not be effected.

[2] In about July 2008, another agreement called the "Co-operation Agreement" for the purchase of the shares in the Russian asset and another unrelated company was concluded between the two groups represented by the two principals. The parties to this Agreement were not expressly identified but were referred to as the "1st group of shareholders" and the "2nd group of shareholders". The purpose of the Co-operation Agreement was to resurrect, by a slightly different mechanism, the aborted sale of the shares in the Russian asset. Neither Featherwood nor Fraunteld was a party to this Co-operation Agreement. The learned trial judge found that the US$13 million was intended between the parties to the Co-Operation Agreement to stand ready to meet the cash obligation of Featherwood's principals under that Agreement, and that the consideration to be provided by Fraunteld's principals pursuant initially to the agreement of August 2007, and, subsequently, to the Co-operation Agreement in substitution for the original agreement, had wholly failed.

[3]     While the RUR45 million were subsequently repaid to the principal of Fraunteld, the US$13 million was not, despite demand made. Fraunteld therefore brought proceedings to recover this payment. Initially, the claim was founded on contract, but after amendments it was framed in unjust enrichment.

[4]     The learned trial judge found that the Haberfield document was in large part a red herring. It had been produced only to provide regulatory cover to the bank in Cyprus for their receipt of the US$13 million. He found that it had been seized on by the principal of Featherwood to support a false reason for the making of the payment. The US$13 million mentioned in the Haberfield document, he found, represented the balance of the US$15 million purchase of the Russian shares. In the result, he found, the objectives contemplated by the Co-operation Agreement were not achieved. By written Termination Agreements dated 19th September 2008, the share purchase agreements were rescinded. The Termination Agreements recorded that the freezing order had made it impossible for the contractual obligations of the seller to be executed.

[5]     The learned trial judge accepted the evidence of the witnesses for Fraunteld and rejected that of the witnesses for Featherwood wherever there was a conflict between their accounts of events. He set out the applicable law on unjust enrichment and concluded that Featherwood had received the payment from Fraunteld which it would not have received had the principals of Featherwood not promised the principals of Fraunteld that Fraunteld would obtain the Russian shares. In refusing to deliver any shares, Featherwood was enriched in the amount of US$13 million of Fraunteld's money. He found that the promise having failed, both as originally made and as superseded by the Co-operation Agreement, Featherwood knew in conscience that it had no basis for retaining the money. That made the retention of the money unjust. In case he was wrong, he went on to deal with Russian law on the basis of the expert testimony that he had received,

5

and concluded that as a matter of Russian law Fraunteld was not precluded from recovering the US$13 million.

### Contract trumps unjust enrichment

[6] There is no doubt that where a contract contains provisions which govern what is to happen in the event that its objectives cannot be achieved, those provisions exclude resort to common law rights of restitution: per Lord Goff in **Pan Ocean Shipping Co. Ltd. v Creditcorp Ltd.**[1] As Lord Goff explained, a claimant which was itself a party to the contract will be denied a right to restitution, and will be obliged to rely on the right prescribed under the contract in relation to payments made under the contract. I am satisfied that on the facts before the learned trial judge there was no suggestion that the parties to the payment of the US$13 million had agreed in any of the contracts who should bear the risk in relation to payments made, and the judge was right to so find. None of the contracts contained a term specifying what was to happen to any payment made under it. There was no contractual right to recover the US$13 million payment. Nor was there any contractual right limiting the right to recovery either to the Russian principals or to the paying company, Fraunteld. This was a claim in unjust enrichment made outside of any particular contract between the parties.

[7] The learned trial judge recognised that to succeed in a claim in unjust enrichment, the claimant must, as Lord Steyne set out in his judgment in **Banque Financière de la Cité v Parc (Battersea) Ltd.**,[2] demonstrate three things: (1) that the defendant has been enriched; (2) that this enrichment was gained at the claimant's expense; and (3) that the defendant's enrichment at the claimant's expense is

---

[1] [1994] 1 WLR 161, and as further explained in **Goff & Jones**, The Law of Unjust Enrichment (8th ed., Sweet & Maxwell 2011) para. 3-28.
[2] [1999] 1 AC 221; most recently dealt with by this Court in the case from the Territory of the Virgin Islands Ocean Conversion (BVI) Limited v Attorney General BVIHCVAP2009/0019 & 0020 (delivered 18th April 2012, unreported).

6

unjust.[3] If these criteria are satisfied, the question arises whether there is any defence to the claim. However, Featherwood did not contest the claim on this basis.

**Unjust Enrichment**

[8]  The recognition of a general principle of "failure of basis" as a ground for restitution has been made possible by relatively recent judicial and academic restatements of the law of unjust enrichment.[4] Enrichment will be unjust where there is a failure of basis or, in more traditional language a failure of consideration. There is no objection to using the term "consideration" provided that term is understood to have its broader, restitutionary meaning and is not limited to failure to perform under a specific contract.[5] The underlying idea of failure of basis is that a benefit has been conferred on the joint understanding that the recipient's right to retain it is conditional. If the condition is not fulfilled, the recipient must return the benefit.

[9]  The key principles which determine whether such a failure has occurred can be stated as set out in the following paragraphs.[6]

[10] First, the condition might take a number of forms. Most conventionally, it might consist in the recipient doing or giving something in return for the benefit (a "promissory condition"). However, it is not limited to mere counter-performance such as might occur under a contract. The condition might also be the existence of a state of affairs or the occurrence of an event for which the recipient has not undertaken any responsibility (a "non-promissory condition")[7] ("Principle 1").

---

[3] Goff & Jones at para.1-09; and see Banque Financiere de la Cité v Parc (Battersea) Ltd. [1999] AC 221 per Lord Steyn at 227.
[4] Goff & Jones at para. 12-02.
[5] Burrows, The Law of Restitution (3rd ed., 2010, Oxford University Press) at p.319; Goff & Jones at paras 12-10 to 12-15.
[6] Goff & Jones, Chapter 13.
[7] Goff & Jones at para. 13-02.

[11]  The availability of failure of basis in the latter scenario is acknowledged by the leading academic authors on restitution. **Goff & Jones, The Law of Unjust Enrichment** characterises this as "failure to confer expected legal rights"[8]. **Burrows, The Law of Restitution** explains that a claimant may transfer a benefit to a defendant on the basis of a future event without the defendant promising that that event will occur, i.e., the basis may be a non-promissory contingent condition.[9] If that event does not happen one can describe there as being a failure of consideration.

[12]  The leading case in which the non-completion of a "non-promissory condition" has been held to constitute a failure of basis is the High Court of Australia's decision in **Roxborough and Others v Rothmans of Pall Mall Australia Limited**.[10] In that case, a retailer (Roxborough) bought cigarettes from a wholesaler (Rothmans). The purchase price included an itemised amount representing tax, in the form of a licence fee, that it was thought the wholesaler would have to pay over to the state. That tax was subsequently held to be unconstitutional, so that the wholesaler did not have to pay it over. There was held to be a failure of consideration in the sense that the expected state of affairs (the requirement that the wholesaler pay over the tax) did not eventuate. That failure of consideration was being used to mean the failure of an unpromised future event is clear from the majority judgments.

[13]  Second, the basis must be jointly understood as such by both parties. However, it need not be expressly stated.[11] ("Principle 2").

---

[8] Goff & Jones at paras 13-14 to 13-19.
[9] Burrows at pp.320, 398-399.
[10] (2001) 208 CLR 516.
[11] Goff & Jones at para. 13-04.

[14] Third, failure of basis must not be confused with receipt of benefit. The transferor may receive a benefit from the transferee, but it does not follow that the basis for the transfer has, therefore, been satisfied.[12] ("Principle 3").

[15] Fourth, in a claim for unjust enrichment, the cause of action is generally restricted to the direct provider of the benefit only.[13] ("Principle 4"). As a general rule, subject to wide-ranging exceptions, the claimant is not entitled to the restitution of benefits conferred by a third party rather than by himself.

[16] Applying the above principles to the facts as found by the judge, as to Principle 1, the agreed purpose of the US$13 million payment was the transfer of ownership of the shares in the Russian asset from the group represented by Featherwood to the group represented by Fraunteld. Thus, as the leaned trial judge found:

> "[Fraunteld] did not make the payment with the intention that Featherwood, or those behind Featherwood, could apply it exactly as they pleased and whether or not the shares were delivered. Fraunteld would not have made any payment at all to Featherwood had it expected that to be the outcome.
> …
>
> "…Featherwood knows that the money … was transferred in anticipation of the due performance by those behind Featherwood of the promise made by [the two principals on the yacht of the principal purchaser]. That promise having failed, both as originally made and as superseded by the co-operation agreement, Featherwood knows in conscience that it has no basis for retaining the money."[14]

[17] It is therefore not correct for counsel for Featherwood to assert that the judge found that "… the objective basis for the payment was … simply the making of a payment". The judge found that the objective basis of the payment of the US$13 million was the transfer of the shares in the Russian asset to the Fraunteld group as agreed under the August 2007 oral agreement. The judge had before him

---

[12] Goff & Jones at para. 13-05.
[13] Burrows at p.70.
[14] At para. 59-60 of the lower court judgment.

9

abundant documentary support for this view, including the payment order of October 2007 which acknowledged that the basis for the payment was the transfer of shares. Against the wider background known to both parties, that can only have been a reference to the shares in the Russian asset.

[18]   As is abundantly clear from the views expressed by the authors of the leading textbooks on restitution,[15] recent Commonwealth authority,[16] and much older English authority,[17] it matters not that the "condition" (the transfer of the shares in the Russian asset) was non-promissory in character, namely that Featherwood had not undertaken any responsibility itself to transfer the shares and Fraunteld was never intended to receive them. Featherwood says that the "premise" of Fraunteld's pleaded case was that the basis of the transaction was an agreement by Featherwood to transfer the shares (i.e., that the consideration was a promissory condition). However, in its amended statement of claim, Fraunteld says that the payment was "… in respect of the shares to be transferred pursuant to the [share purchase agreements]". Thus, contrary to what Featherwood argues, no quid pro quo in terms of the transfer of shares by Featherwood is necessary to found recovery. It is sufficient that the condition itself remained unfulfilled.

[19]   As to Principle 2, it is clear from the judge's findings and from the documents themselves that Fraunteld and Featherwood jointly understood that the basis of the payment of the US$13 million was the transfer of ownership of the shares in the Russian asset to the Fraunteld group, not the simple fact of making payment. The parties themselves identified the purpose of the payment as "payment for the shares". It would be wholly artificial not to look beyond the act of payment itself to see what happened between the principal actors involved in effecting that purpose. That purpose, in accordance with the terms of the share purchase

---

[15] Goff & Jones at paras. 12-01, 13-14 to 13-19; Burrows at pp 320, 398-399.
[16] Roxborough v Rothmans of Pall Mall Australia (2001) 208 CLR 516.
[17] Chillingworth v Esche [1924] 1 Ch 97.

agreements was the transfer of the shares in the Russian asset from the group represented by Featherwood to the group represented by Fraunteld.

[20]  As to Principle 3, Featherwood contends that the consideration between itself and Fraunteld "...consisted simply of the payment of money by one to the other so that it constituted good receipt for the purpose of the Co-operation Agreement." However, as counsel for Fraunteld points out, at the time of receiving the US$13 million, the Co-operation Agreement was not even in the parties' contemplation. There was neither payment nor receipt of the US$13 million under the Co-operation Agreement. Under restitutionary principles, Featherwood's enrichment occurred at Fraunteld's expense and it is Fraunteld, therefore, which has a non-exclusive right to make recovery. That right to restitution (as direct provider) would exist even if Fraunteld had made the payment as agent for someone else, i.e., on behalf of the principals and persons behind Fraunteld.

[21]  Since there can be no dispute that no shares in the Russian asset were transferred to the group behind Fraunteld, the basis for the payment has failed. On the date when the Moscow court confirmed the judgment removing the Russian shares from the control of the Featherwood group, and the transfer of ownership became impossible, there was no prospect of the principal behind Featherwood fulfilling his obligation under either the oral agreement made on the yacht or the subsequent share transfer agreements. That this was so is recorded in the recitals to the Termination Agreements. On that date, Fraunteld's restitutionary right arose. The subsequent entering into by the principals of the Co-operation Agreement and the Termination Agreement did not affect Fraunteld's entitlement. The provisions of these Agreements are not material to Fraunteld's right to restitution, which is why Fraunteld did not rely upon their provisions.

[22]  As to Principle 4, it is not disputed that it was Fraunteld which made the actual payment of that sum to Featherwood. Fraunteld transferred the sum directly to the bank account of Featherwood in Cyprus. On the transfer form Fraunteld stated

11

that it was payment for shares. Given the understanding of the relevant parties at the time, there can be no doubt that the shares in question were the shares in the Russian asset that the principals behind Fraunteld were expecting to receive, but which they never did.

[23]  Finally, I do not find that Fraunteld's pleaded case was in any way deficient. All the material facts necessary to found recovery in its claim for unjust enrichment were pleaded. The money flowed from Fraunteld to Featherwood, and as the entity which made the payment Fraunteld is most obviously characterised as the direct provider of the payment and the party which would be entitled to recovery. I am satisfied that the judge was entitled to hold Fraunteld entitled to recover the US$13 million on the grounds of a claim in unjust enrichment.

[24]  I would therefore dismiss the appeal, confirming the order of the learned trial judge in the court below. In so far as the judge found that Fraunteld sought to claim under the Co-operation Agreement, that was an error, and the counter-notice of appeal is allowed. I would award costs to Fraunteld in the amount of two-thirds of the amount awarded in the court below in accordance with rule 65.13 of the **Civil Procedure Rules 2000**.

**Don Mitchell**
Justice of Appeal [Ag.]

I concur.

**Mario Michel**
Justice of Appeal

I concur.

**Frederick Bruce-Lyle**
Justice of Appeal [Ag.]
