**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br><br> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>     Plaintiff,<br><br>v.<br><br>CAROL L. KAMENSTEIN, individually and in her capacity as joint tenant, DAVID R. KAMENSTEIN, individually and in his capacity as joint tenant, SLOAN G. KAMENSTEIN, and TRACY D. KAMENSTEIN,<br><br>     Defendants. | Adv. Pro. No. 10-04469 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING THE COMPLAINT FOR LACK OF SUBJECT
MATTER JURISDICTION AND MOTION OF DEFENDANT
TRACY KAMENSTEIN FOR PARTIAL SUMMARY JUDGMENT**

{00045626 1 }

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND....................................................................................................... 2

   Madoff Had Used BLMIS as a Trade Name Since the 1970s .................................................. 4

     The JPMC 509 and 703 Accounts ..................................................................................... 4

   The Letters concerning the formation of the LLC .................................................................. 6

   The Kamenstein Accounts and the Tracy Trust....................................................................... 6

   The Tracy Trust Account ......................................................................................................... 7

ARGUMENT ............................................................................................................................... 8

  I     LEGAL STANDARDS .................................................................................................... 8

      A.   Dismissal for Lack of Subject Matter Jurisdiction ................................................. 8

      B.   Summary Judgment Standard ................................................................................... 9

  II    THE TRUSTEE CANNOT PROVE HE SUFFERED ARTICLE III INJURY ........... 10

      A.   SIPA Does Not Create Article III Injury .............................................................. 10

          1.   SEC Form BD does not establish that the LLC paid funds to
the Kamensteins............................................................................................15

          2.   The fact that the 703 and 509 Accounts were "commercial" is
non-dispositive..............................................................................................16

          3.   The Kamensteins did not make admissions in their Answer. .......................16

          4.   A bank customer cannot change ownership of a bank account
by printing debit memos. ..............................................................................17

          5.   The Kamensteins' account agreements do not establish that
the LLC's funds were transferred to them....................................................18

      B.   The Trustee Cannot Show That Any Loss Was Traceable to the
Kamensteins' Conduct.......................................................................................... 19

      C.   The Trustee Does Not Have Prudential Standing ................................................. 19

III     THE TRUSTEE CANNOT RECOVER FROM TRACY ............................................. 20

    A.     Tracy is Neither an Initial Transferee Nor One For Whose Benefit
       the Transfer Was Made......................................................................................... 21

CONCLUSION...................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.R. Baron & Co.*,
  280 B.R. 794 (Bankr. S.D.N.Y. 2002) ...................................................................................20

*Allen v. Wright*,
  468 U.S. 737 (1984) ...................................................................................................................8

*Ames Merch. Corp. v. Nikko Am., Inc.* (*In re Ames Dep't Stores, Inc.*),
  2011 WL 1239804 (Bankr. S.D.N.Y. Mar. 28, 2011) ...........................................................21

*Anderson v. City of Bessemer*,
  470 U.S. 564 (1985) .................................................................................................................13

*In re Bernard L. Madoff Inv. Secs., LLC*,
  424 B.R. 122 (Bankr. S.D.N.Y. 2010), *aff'd* 654 F.3d 229 (2d Cir. 2011) .......................4, 15

*In re Bernard L. Madoff Inv. Sec. LLC*,
  557 B.R. 89 (Bankr. S.D.N.Y. 2016), *reconsideration denied,* 2016 WL
  6088136 (Bankr. S.D.N.Y. Oct. 18, 2016) .............................................................2, 9, 10, 11

*In re Bernard L. Madoff Inv. Sec. LLC.*,
  721 F.3d 54 (2d Cir. 2013) ......................................................................................8, 9, 10, 20

*In re Black & Geddes, Inc.*,
  59 B.R. 873 (Bankr. S.D.N.Y. 1986) ......................................................................................21

*Bogart v. Israel Aerospace Indus. Ltd.*,
  No. 09 Civ. 4783 (LAP), 2010 WL 517582 (S.D.N.Y. Feb. 5, 2010) ................................8, 19

*Bonded Fin. Servs., Inc. v. European Am. Bank*,
  838 F.2d 890 (7th Cir. 1988) ..............................................................................................21, 22

*Caplin v. Marine Midland Grace Trust Co.*,
  406 U.S. 416 (1972) ............................................................................................................13, 20

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................................................9

*Cent. States v. Merck-Medco Managed Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005) ......................................................................................................8

*In re Chowaiki & Co. Fine Art Ltd.*,
  593 B.R. 699 (Bankr. S.D.N.Y. 2018) ....................................................................................12

*City of New York v. Venkataram*,
  2011 WL 2899092 (S.D.N.Y. July 13, 2011) ........................................................12

*Fafel v. Dipaola*,
  399 F.3d 403 (1st Cir. 2005) ...............................................................................17

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*,
  130 F.3d 52 (2d Cir. 1997)........................................................................20, 21, 22

*Hooker Atlanta (7) Corp. v. Hocker (In re Hooker Investments, Inc.)*,
  155 B.R. 332 (Bankr.S.D.N.Y.1993) ...................................................................21

*In re Int'l Pharmacy & Disc. II, Inc.*,
  443 F.3d 767 (11th Cir. 2005) .............................................................................12

*Mack v. Newton*,
  737 F.2d 1343 (5th Cir. 1984) .............................................................................23

*Metzen v. United States*,
  19 F.3d 795 (2d Cir. 1994)...................................................................................14

*Perpetual Securities, Inc. v. Tang*,
  290 F.3d 132 (2d Cir. 2002).................................................................................17

*Picard v. Fairfield Greenwich Ltd.*,
  762 F.3d 199 (2d Cir. 2014).................................................................................18

*Picard v. Mendelow*,
  560 B.R. 208 (Bankr. S.D.N.Y. 2016).............................................................10, 11

*Picard v. Nelson et al.*,
  610 B.R. 197 (Bankr. S.D.N.Y., 2019)........................................................... *passim*

*Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*,
  234 B.R. 293 (Bankr. S.D.N.Y. 1999)........................................................20, 21, 23

*Shearson Lehman Hutton, Inc. v. Wagoner*,
  944 F.2d 114 (2d Cir. 1991).................................................................................20

*Siding and Insulation Co., Inc. v. Acuity Mut. Ins. Co.*,
  754 F.3d 367 (6th Cir. 2014) ...............................................................................17

*Small Business Admin. v. Citibank, N.A.*,
  No. 94 Civ. 4259, 1997 WL 45514 (S.D.N.Y. Feb. 4, 1997) ...............................12

*Spielman v. Manufacturers Hanover Trust Co.*,
  60 N.Y.2d 221 (1983) ..........................................................................................13

*State of Qatar v. First American Bank of Va.*,
   885 F. Supp. 849 (E.D. Va. 1995) ...................................................................12

*Steinberg v. Buczynski*,
   40 F.3d 890 (7th Cir. 1994) .........................................................................13

*U.S. v. McGaughy*,
   670 F.3d 1149 (10th Cir. 2012) ....................................................................17

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...............................................................................8, 20

*Whitmore v. Arkansas*,
   495 U.S. 149 (1950) ...................................................................................8

*Wight v. BankAmerica Corp.*,
   219 F. 3d 79 (2d Cir. 2000) ...............................................................9, 19, 20

*Ying Jing Gan v. City of New York*,
   996 F.2d 522 (2d Cir. 1993) ........................................................................10

## Statutes

11 U.S.C. § 548(a)(1) ........................................................................................10

11 U.S.C. § 550 ..............................................................................20, 21, 22, 23

11 U.S.C. § 550(a)(1) ...............................................................................20, 21

15 U.S.C. § 78eee(a)(3) ...................................................................................11

15 U.S.C. § 78eee(a)(4)(B) ..............................................................................10

15 U.S.C. § 78eee(b)(3) ...................................................................................10

15 U.S.C. § 78eee(b)(4) ...................................................................................10

15 U.S.C. § 78fff-2(c)(3) ..................................................................................10

15 U.S.C. § 78iii(5) .........................................................................................11

N.Y. U.C.C. § 3-205 ........................................................................................12

N.Y. U.C.C. § 3-401(2) (McKinney 1991) ........................................................13

## Other Authorities

Fed. R. Civ. P. 56(a) .........................................................................................9

Defendants Carol L. Kamenstein ("Carol"), David R. Kamenstein ("David"), Sloan G. Kamenstein ("Sloan"), and Tracy D. Kamenstein ("Tracy") respectfully submit this memorandum of law in support of their motion for summary judgment dismissing the Complaint of Irving H. Picard, the Trustee for the Liquidation of Bernard L. Madoff Investment Securities, LLC (the "LLC"), for lack of subject matter jurisdiction, and for partial summary judgment dismissing the Complaint as against Tracy because, as set forth herein, she did not receive, directly or indirectly, any transfers during the clawback period.

## PRELIMINARY STATEMENT

The Trustee seeks to claw back withdrawals totaling $2,794,314 allegedly taken by the Kamensteins from four securities accounts with Bernard L. Madoff within the last two years of Madoff's operations (the "Clawback Period") on the theory that the funds paid to them belonged to the LLC (and not Madoff), even though there is not a single piece of documentary evidence indicating that the LLC owned the bank accounts from which Defendants were paid. The Trustee also seeks to claw back withdrawals from one of the accounts—the Tracy Kamenstein trust account—even though there is no evidence whatsoever that Tracy received the transfers or the benefit of them. **SMF** n. 1.[1]

This Court lacks subject matter jurisdiction over this action because Picard is the Trustee for the LLC and the Kamensteins never received any money from the LLC. On the contrary, the Kamensteins' contractual relationship was with Madoff individually and his sole proprietorship. As Judge Bernstein has held (twice), Picard lacks standing to recover transfers made by Madoff; he only has jurisdiction to recover withdrawals made by the LLC. Judge Bernstein correctly

---

[1] The Complaint and Answer are submitted as **Exhibits A** and **B** respectively to the Declaration of Helen Davis Chaitman. Exhibits are referred to herein as 'Exh. ___'.

reasoned that, since Picard is only the Trustee for the LLC, he only has standing to recover transfers made by the LLC. Only Alan Nisselson, the Trustee for Madoff individually, can seek to claw back transfers made by the sole proprietorship. *In re Bernard L. Madoff Inv. Sec. LLC,* 557 B.R. 89, 110 (Bankr. S.D.N.Y. 2016) (*"Avellino"*) ("[o]nly the Madoff trustee [Alan Nisselson] can recover actual transfers by the sole proprietorship", *reconsideration denied,* 2016 WL 6088136 (Bankr. S.D.N.Y. Oct. 18, 2016) (*"Avellino Reconsideration Decision"*). Thus, this Court lacks Article III jurisdiction over the complaint and it must be dismissed.

The evidence is irrefutable that the Kamensteins received withdrawals from a bank account owned by Bernard L. Madoff. Since, none of the Kamensteins ever received a withdrawal from the LLC, the Trustee lacks Article III standing to pursue this case. Madoff's individual trustee could have sued to recover withdrawals made by Madoff, but he chose not to do so. Picard lacks Article III standing to pursue these claims and the complaint should be dismissed.

In addition to the fact that this Court lacks subject matter jurisdiction of the complaint, the irrefutable evidence proves that Tracy never received, directly or indirectly, any funds from Madoff during the Clawback Period. On the contrary, the evidence shows that Tracy's Madoff account was a trust account and her father, David Kamenstein, was her trustee. All of the withdrawals from Tracy's account, during the Clawback Period, were deposited into Carol and David's joint account and used by them for their own purposes. Indeed, the Trustee admits that Tracy received no funds from any withdrawal during the Clawback Period. **SMF** ¶ 61.

## **FACTUAL BACKGROUND**

From the 1960s through 2008, Madoff operated a sole proprietorship called Bernard L. Madoff Investment Securities ("BLMIS"). Through 2000, BLMIS consisted of two separate businesses: (1) a legitimate trading business (the "LTB"), made up of proprietary trading ("PT"), which traded securities for its own account, and market-making ("MM") which created a market

in certain securities and acted as a broker-dealer for those securities, servicing all of the world's major securities firms; and (2) an investment advisory ("IA") business which serviced individual investment customers. **SMF ¶ 1**

Formation of the LLC

In January 2001, Madoff formed the LLC, to which he contributed his LTB. There is extensive documentation evidencing that Madoff transferred the LTB to the LLC. Madoff sent letters to the Bank of New York, which serviced the LTB, to the SEC, the Depository Trust Company (the "DTC"), and to others, informing them that the LLC would operate the LTB. **SMF ¶ 7**. There is no documentary evidence that Madoff ever informed JPMC that he wanted to transfer the IA business to the LLC. **SMF ¶ 8**. Nor is there a single document suggesting that Madoff sought to change the ownership of the 509 and 703 accounts to the LLC. **SMF ¶ 20**.

In 1959, Madoff, as a sole-proprietor, filed an application to register as a broker-dealer with the SEC. Even as of 2001, Madoff had not registered as an investment advisor. In January 2001, Madoff formed the LLC and transferred to it the LTB, run by his sons. The Trustee's own expert, Bruce Dubinsky, has admitted that the LTB was 100% legitimate. **SMF ¶ 3**. Madoff retained the fraudulent IA business as a sole proprietorship and operated the IA business through bank accounts that he maintained in his own name at JPMorgan Chase ("JPMC"). When Madoff transferred the LTB to the LLC in January 2001, the LLC filed SEC Form BD to register the LLC as a broker-dealer and to set forth the change in corporate form for the LTB from a sole proprietorship to an LLC. Form BD specifically indicated that Madoff did not transfer the IA Business to the LLC. On that form, Madoff clearly indicated that the LLC would not engage in investment advisory services. **SMF ¶ 9**. At pages 8 and 9 of Form BD, the LLC was asked to check all of the "types of business[it] engaged in" (unless that business accounted for less than 1%

of annual revenue.)  It checked item "C," its market-making activities, item "V," its proprietary

trading activities, and item "Z," "Other" activities, which are described on page 10 of the form as

Madoff's membership in the Cincinnati Stock Exchange where he was a designated market maker.

Madoff did **not** check item "S," however, which referenced "Investment advisory services."

Indeed, Madoff did not even register as an investment advisor at all until August 2006.  SMF ¶ 9.

Judge Bernstein has acknowledged this.  *See In re Bernard L. Madoff Inv. Secs., LLC*, 424 B.R.

122, 127 (Bankr. S.D.N.Y. 2010), *aff'd* 654 F.3d 229 (2d Cir. 2011) ("On January 19, 1960,

BLMIS [the sole proprietorship] registered with the SEC as a broker-dealer under section 15(b) of

the Securities Exchange Act of 1934, 15 U.S.C. section 78*o* (b), and, beginning in 2006, as an

investment advisor.").

### Madoff Had Used BLMIS as a Trade Name Since the 1970s

#### The JPMC 509 and 703 Accounts

For decades before the LLC was formed and, thereafter, through December 11, 2008, all

IA customer funds were deposited into the "703 Account" at JPMC and all checks written to IA

customers were written from the "509 Account" at JPMC.  **SMF ¶ 13.**  Through August 2002, the

JPMC 703 Account statements indicated that the account was held in the name of "Bernard L.

Madoff."  **SMF ¶ 15.**  From September 2002 on, the 703 account statements indicated the customer

as BLMIS, the trade name for Madoff's sole proprietorship.  *Id.*  **There is not a single 703**

**Account statement or other JPMC document indicating that the account was ever owned by**

**the LLC.**  Through 2008, all customer deposits were placed in the 703 Account and the

endorsement stamp read:  "For deposit only; Bernard L. Madoff."  **SMF ¶ 16.**

Through 2008, the statements for the 509 Account indicated that it was owned by Bernard

L. Madoff.  **SMF ¶ 22.**  Where IA customers requested wire transfers, the funds were transferred

from the 703 Account.  Defendants never received funds from an account owned by the LLC.  *E.g.*

**SMF** ¶ 31.  On the contrary, they only received funds from the 509 Account with Madoff's checks bearing the name "Bernard L. Madoff."

The Trustee has never produced a single document which indicates that Madoff's 509 or 703 Account was ever transferred to the LLC.  At the trial of *Picard v Nelson, et al.* Adv. Pro Nos. 10-04377 and 10-04658, held on May 8 and 9, 2019, the Trustee's expert witness, Lisa Collura, reluctantly admitted that, during her extensive review of Madoff's and the LLC's records and JPMC's  records, she had never seen any document to suggest that the LLC owned the 509 Account:

> Q:     And would you agree with me that you've never seen a J.P. Morgan Chase monthly statement which read as the owner of the account Bernard L. Madoff Investment Securities, LLC?
>
> A:     Not for the 509 account.
>
> Q:     You would agree with me that you have not seen it?
>
> A:     There -- I think there were some other bank accounts that were held in the name with LLC.
>
> Q:     Just answer my specific question.   You'll have an opportunity on redirect to say whatever you'd like.  But just answer my questions.  Did you ever see a statement from the 509 account that listed Bernard L. Madoff Investment Securities, LLC as the holder of the account?
>
> A:     No.

[Tr., May 9, 2019 at 13:7-21]; *see also* 18:3-5 (Q: "Okay.  The 509 account was never changed to Bernard L. Madoff Investment Securities, LLC; was it?"  A:  "That was never on the statements."). While Collura pointed out that, in 2002, the 703 account was changed from Bernard L. Madoff to Bernard L. Madoff Investment Securities, the trade name that Madoff had used since the 1970's,

Madoff never put the 703 Account into the name of the LLC and he had used the BLMIS trade name for 30 years before the LLC was formed.  **SMF ¶** 5.

At the *Nelson* trial, Bruce Dubinsky, the Trustee's primary expert witness, was also forced to admit that he had never seen any bank statement for the 509 Account or 703 Account in the name of the LLC.  **SMF ¶** 21. And the Trustee has admitted that he has no documentary evidence that the 509 Account was ever transferred to the LLC.  **SMF ¶** 8.

### The Letters concerning the formation of the LLC

The LTB had always maintained its banking relationship with Bank of New York, not JPMC.  After the LLC was formed in January 2001, Madoff sent letters to the Bank of New York (the "BNY"), to the Depository Trading Corporation (the "DTC,") to the NSCC, to the OCC, and to others, informing them that the LLC had been formed and that the accounts servicing the LTB will be changed to the name of the LLC.  **SMF ¶** 7.  Madoff did not send any such letter to JPMC where he continued to hold the 509 Account in his personal name and the 703 Account in the name he had used for his sole proprietorship since the 1970s.  Nor did his letters to BNY, the DTC, the NSCC, and the OOC mention anything about the IA business.

### The Kamenstein Accounts and the Tracy Trust

The Kamenstein Accounts consist of the following:

(1)     Account number 1CM596 in the name of the Tracy D. Kamenstein Irrevocable Trust (the "Tracy Trust").  Although the Trustee has not named as a defendant the Tracy Trust, the Trustee alleges that he is entitled to recover withdrawals from this account of $452,314.  *See* Compl.  **SMF ¶** 43.

(2)     Account number 1CM597 in the name of the Sloan Kamenstein Irrevocable Trust (the "Sloan Trust").  Although the Trustee has not named the Sloan Trust as a defendant, the

Trustee alleges that he is entitled to recover withdrawals from this account of $527,400. *See* Compl. **SMF** ¶ 37.

(3)    Account number 1CM914 in the name of Carol Kamenstein. The Trustee alleges that he is entitled to recover withdrawals from this account of $907,300. *See* Compl. **SMF** ¶ 32.

(4)    Account number 1CM913. opened in the name of David Kamenstein  The Trustee alleges that he is entitled to recover withdrawals from this account of $907,300. *See* Compl. **SMF** ¶ 27.

**The Tracy Trust Account**

David opened the Tracy Trust Account as Trustee for Tracy on August 23, 1999. David signed the account opening documents and attached the Trust Agreement for the Tracy D. Kamenstein Irrevocable Trust, which he had created on April 11, 1994. **SMF** ¶ 43. Under the terms of the Trust, Tracy did not have control over the funds. The Trust was irrevocable. Tracy was to receive the principal and income of the Trust at age 36. **SMF** ¶ 58. This distribution was not made, and David continued to manage the Tracy Trust Account. **SMF** ¶ 58.

The Trustee alleges that, in the Clawback Period, there were withdrawals from the Tracy Trust Account of $452,314 in excess of principal, for which he seeks to hold Tracy liable. **SMF** ¶ 43. However, none of these withdrawals were used by Tracy or for her benefit. Indeed, as the Trustee admits, Tracy received no funds from any withdrawal during the Clawback Period **SMF** ¶ 61.

It is undisputed that David managed all of the Kamenstein accounts, including the Tracy Trust Account. **SMF** ¶ 49. It was David who requested the withdrawals from all of the Madoff accounts, by writing, typically, to Jodi Crupi at Madoff's office. **SMF** ¶ 53. The withdrawals were then deposited into a bank account owned by David and Carol jointly. **SMF** ¶¶ 56-57. The Trustee's expert, Lisa Collura, has admitted this. Although Tracy's (and her brother Sloan's) name

was on David and Carol's accounts, this was for estate planning purposes only.  **SMF ¶** 55. .
Neither Tracy nor Sloan ever accessed their parents' accounts.  *Id.*

As the Trustee admits, the withdrawals during the Clawback Period were deposited into
David and Carol's CKDK CAP Account at First Union Bank (later Wachovia Bank) ending in
822.  **SMF ¶** 57.  There can be no dispute that Tracy did not receive any of these funds, and there
were no transfers to her during the Clawback Period.

## ARGUMENT

I    **LEGAL STANDARDS**

A.    **Dismissal for Lack of Subject Matter Jurisdiction**

A federal court cannot exercise jurisdiction over a case where the plaintiff lacks Article III
injury. There are no exceptions to this rule.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) (Article
III of the constitution requires that "plaintiff . . . allege a distinct and palpable injury to himself[.]");
*In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 66 (2d Cir. 2013) ("Standing depends, first,
on whether the plaintiff has identified a 'case or controversy' between the plaintiff and the
defendants within the meaning of Article III of the Constitution."); *Whitmore v. Arkansas,* 495
U.S. 149, 161 (1950) (nature of death penalty and society's interest in its 'proper' imposition do
not justify a relaxation of principles governing Article III standing). The Trustee, as the party
invoking the limited jurisdiction of the federal courts, bears the burden of proving that he has
standing to bring his claims.  *See Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984); *see also Cent.
States v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

To meet his burden, the Trustee must show "(i) a concrete and particularized "injury in
fact" (ii) that can be fairly traced to the defendant's conduct, and (iii) that can be redressed by a
favorable decision. *Bogart v. Israel Aerospace Indus. Ltd.*, No. 09 Civ. 4783 (LAP), 2010 WL
517582, at *3-4 (S.D.N.Y. Feb. 5, 2010) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263

(2d Cir. 2006)); *Picard v. HSBC Bank PLC*, 454 B.R. 25, 29 (S.D.N.Y. 2011) ("*HSBC Bank*

*II"), amended sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 11 CIV. 763 JSR, 2011 WL

3477177 (S.D.N.Y. Aug. 8, 2011), *aff'd sub nom.  In re Bernard L. Madoff Inv. Sec. LLC.*, 721

F.3d 54 (2d Cir. 2013), and *aff'd sub nom.  In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54

(2d Cir. 2013).  To establish Article III standing, the plaintiff "must 'assert his own legal rights and

interests, and cannot rest his claim to relief on the legal rights or interests of third parties. *Wight v.*

*BankAmerica Corp.*, 219 F. 3d 79, 86 (2d Cir. 2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 499

(1975)); *HSBC Bank II,* 454 B.R. at 29.

Thus, the Trustee must prove that the LLC owned the funds he alleges were transferred to

the Kamensteins.  This he cannot do.  As Judge Bernstein has already held, twice, since the Trustee

is only the Trustee for the LLC, he only has standing to recover transfers made by the LLC.  Only

Alan Nisselson, the Trustee for Madoff individually, can seek to claw back transfers made by the

sole proprietorship.  *Avellino,* 557 B.R. at 110 ("[o]nly the Madoff trustee [Alan Nisselson] can

recover actual transfers by the sole proprietorship", *reconsideration denied,* 2016 WL 6088136

(Bankr. S.D.N.Y. Oct. 18, 2016) *("Avellino Reconsideration Decision")*. The Trustee is bound by

these decisions.  Indeed, he never even appealed them.  Thus, this case must be dismissed for lack

of subject matter jurisdiction.

B.    **Summary Judgment Standard**

A court must grant summary judgment when there is no genuine issue of material fact and

the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322–23 (1986).  The non-movant must "go beyond the pleadings and by

[its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal

quotation marks omitted).  He may "not rely simply on conclusory statements or on contentions

that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).

The Kamensteins are entitled to summary judgment dismissing the Complaint for lack of subject matter jurisdiction and Tracy is entitled to summary judgment dismissing the Complaint against her because she did not receive, directly or indirectly, any of the withdrawals from the Tracy Trust Account during the Clawback Period.

## II    <u>THE TRUSTEE CANNOT PROVE HE SUFFERED ARTICLE III INJURY</u>

The debtor in whose shoes the Trustee stands, the LLC, has suffered no injury in fact, and accordingly the Trustee cannot meet this first, fundamental element of standing. Since, as set forth below, the Trustee's avoidance powers are plainly limited under the Bankruptcy Code to seeking to recover transfers of "an interest of the debtor in property," 11 U.S.C. § 548(a)(1), and all the evidence demonstrates that the transfers in question here were not made by the Trustee's " debtor," but rather by Madoff individually, the Trustee lacks Article III standing to avoid the transfers.

### A.    <u>SIPA Does Not Create Article III Injury</u>

Any claim to jurisdiction and standing must arise entirely out of the provisions of SIPA, 15 U.S.C. § 78fff-2(c)(3). The Trustee's standing is only to void transfers made by the LLC. *Picard v. Mendelow*, 560 B.R. 208, 227 (Bankr. S.D.N.Y. 2016) ("*Mendelow*") ("15 U.S.C. § 78fff-2(c)(3) 'creates a legal fiction that confers standing on a SIPA trustee but not the bankruptcy trustee of an individual debtor.'"); *see also Avellino*, 557 B.R. at 108-109; *HSBC Bank II* 454 B.R. at 29-31. As alleged in the complaint, SIPC filed an application in the district court pursuant to 15 U.S.C. § 78eee(a)(4)(B) alleging that the LLC was not able to meet its obligations to its customers and the customers needed protection under SIPA. In response to the application, the District Court appointed Picard as Trustee for the liquidation of the LLC pursuant to 15 U.S.C. § 78eee(b)(3) of SIPA and transferred the case to the bankruptcy court pursuant to 15

U.S.C. § 78eee(b)(4) of SIPA. Thus, currently before the Court is the liquidation of the LLC, which is the debtor under SIPA. *See* 15 U.S.C. § 78iii(5) ("The term 'debtor' means a member of SIPC with respect to whom an application for a protective decree has been filed under section 78eee(a)(3).").

And as SIPA Trustee for the liquidation of the LLC, the Trustee has suffered no injury because the transfers made to the Kamensteins were made by Madoff individually, not by the LLC. Only Alan Nisselson, Madoff's individual trustee, has standing to avoid transfers of Madoff's property. *See Avellino* at 100 (The "SIPA debtor was [the LLC], the limited liability company, and not Madoff's sole proprietorship . . . ." "SIPA authorizes the trustee to avoid and recover transfers of customer property. 'Customer property' includes [property of the debtor]."); *see also Avellino Reconsideration Decision*; *Mendelow* 560 B.R. at 227. The Trustee's "debtor" is only the LLC.

In holding that the Trustee lacks standing to void transfers made by Madoff, the Bankruptcy Court considered and rejected the Trustee's contention that the definition of "debtor" under SIPA either did, or should be extended to, cover Madoff as well as the LLC. Thus, the Bankruptcy Court held that the Trustee could not sue to recover transfers made by Madoff as sole proprietor. *Avellino*, 557 B.R. at 108-110. The Court rejected the Trustee's contentions regarding the scope of the Protective Order entered by the District Court on December 15, 2009 that appointed Picard as SIPA Trustee to liquidate the LLC and regarding the impact of the Consolidation Order, entered by the District Court on July 9, 2009, which expressly provided that only Madoff's individual trustee had standing to sue to void transfers made by Madoff. *See Avellino*, 557 B.R. at 110 ("Only the Madoff trustee can recover actual transfers by the sole proprietorship."). Nisselson is not a

party to this case and has never asserted a claim against the Kamensteins. Nisselson is the only party who had standing to do so.

Moreover, since the 509 Account and the 703 Account were not owned by the LLC, they were not the property of the LLC. *See In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699, 713 (Bankr. S.D.N.Y. 2018) ("New York law presumes that 'once funds are deposited in a bank account, the account holder has title to and control over those funds.'") (citation omitted); *City of New York v. Venkataram*, 2011 WL 2899092, at *5, n.6 (S.D.N.Y. July 13, 2011) ("'Under New York law, the party who possesses property is presumed to be the party who owns it.'") (citation omitted); *see also In re Int'l Pharmacy & Disc. II, Inc.*, 443 F.3d 767, 771 (11th Cir. 2005) ("In most states, the name or title to a bank account creates a presumption of ownership in the titleholder.") (citation omitted).

And, as set forth above, even after the LLC was formed in 2001, Madoff endorsed the Kamensteins' deposit checks with the stamp "for deposit only Bernard L. Madoff." **SMF** ¶¶ 21, 33, 45. Where the endorsement on a check bears words such as "for deposit only," it is restrictive, N.Y. U.C.C. § 3-205, which means that a bank must deposit the funds into the account associated with that endorsement and cannot do anything else with them. *See Small Business Admin. v. Citibank, N.A.,* No. 94 Civ. 4259, 1997 WL 45514 *5 (S.D.N.Y. Feb. 4, 1997) (an endorsement that "includes the words 'for deposit only' . . . has the effect of requiring [the bank] to pay or apply the value of the instrument 'consistently with the endorsement."); *see also State of Qatar v. First American Bank of Va.*, 885 F. Supp. 849, 852 (E.D. Va. 1995) ("in so adding the restriction, the payee's intent plainly is to direct that the funds be deposited into her own account, not simply that the funds be deposited into some account."). An account number also serves to identify the place into which the funds must be paid, since this "does not alter the designation when the account is

in existence and identifiable as belonging to a specific person." *Spielman v. Manufacturers Hanover Trust Co.,* 60 N.Y.2d 221, 227 (1983); *cf.* N.Y. U.C.C. § 3-401(2) (McKinney 1991) (including in the definition of signature "any word or mark used in lieu of a written signature."). Here, the checks were endorsed not only with Madoff's signature but with a stamp bearing the name of the sole proprietorship and the account number. Thus, the funds deposited on behalf of the Kamensteins could *only* have been deposited into the 703 Account, and could never have belonged to the LLC.

Analogously, in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972), the Supreme Court held that a Chapter X trustee had no standing under the Bankruptcy Act to assert claims of misconduct against a third party on behalf of the debtor's debenture holders rather than the entity itself, both because the Bankruptcy Act did not authorize a trustee to collect money not owed to the estate and because the debtor had no claim against the indenture trustee but was *in pari delicto* with the indenture trustee. *Id.* at 428-30. *See also Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) ("[t]he point is simply that the trustee is confined to enforcing entitlements of the corporation. . . There is a difference between a creditor's interest in the claims of the corporation against a third party, which are enforced by the trustee, and the creditor's own direct – not derivative – claim against the third party, which only the creditor himself can enforce").

In *Picard v. Nelson et al.*, 610 B.R. 197 (Bankr. S.D.N.Y., 2019), the Bankruptcy Court held that Madoff's sole proprietorship had transferred the 703 and 509 Accounts to the LLC but that finding was insupportable and clear error. The United States Supreme Court holds that a finding of fact is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of*

*Bessemer*, 470 U.S. 564, 573 (1985) (internal quotation marks omitted).  This Court is not bound to follow Judge Bernstein's holding and it would be clear error to do so.

The Second Circuit held in *Metzen v. United States*, 19 F.3d 795, 797–98 (2d Cir. 1994), that even factual findings that incorporate testimony may be clearly erroneous, *inter alia,* where that testimony is contradicted by documents or other objective evidence.  *Id.* at 806.  The court held that a trial court may not "insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness.  Documents or objective evidence may contradict the witness' story.... Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination." *Id*. at 797–98, quoting *Anderson,* 470 U.S. at 575.

In *Nelson,* Judge Bernstein ignored the admissions of the Trustee's own experts.  Bruce Dubinsky, who was paid over $40 million for his time working for Picard, admitted that the business of the LLC was entirely legitimate.  **SMF ¶** 3.  Collura admitted that she had never seen any documentary evidence that the JPMC accounts were owned by the LLC.  **SMF ¶¶** 5, 21.  Moreover, Judge Bernstein found that the LLC owned the IA business based upon SEC Form BD despite the fact that the Form made no mention whatsoever of the IA business.  Similarly, Judge Bernstein relied upon the finding that the 703 and 509 Accounts were "commercial" accounts, although obviously the sole proprietorship had operated through "commercial accounts" for decades.

Judge Bernstein relied upon the fact that the Nelsons' original counsel had assumed, in their answer, that Picard would not misrepresent material facts and admitted that the LLC paid the withdrawals to them.  Obviously, the Nelsons and their counsel had no personal knowledge to

support that allegation and, indeed, at trial the Nelsons proved that every withdrawal they received

came from Madoff individually and that they never received a withdrawal from the LLC.

Judge Bernstein relied upon debit memos printed by Madoff, not JPMC, which bore the

imprint of the LLC although there was no evidence that Madoff ever communicated with JPMC

that he wanted to change the ownership of the 509 and 703 accounts.  And, finally, Judge Bernstein

relied upon the account agreement, although, as set forth below, there was no evidence that the

agreement listed the LLC as the investment advisor, and again, there was no evidence that Madoff

ever communicated to JPMC that he wanted to change the ownership of the 509 and 703 accounts..

*Nelson,* 610 B.R. at 218.  A court's subject matter jurisdiction under Article III of the Constitution

cannot be established by such illusory rationalizations.

### 1.    SEC Form BD does not establish that the LLC paid funds to the Kamensteins

The statements made by the LLC in 2001 on SEC Form BD plainly do not reflect that

Madoff's sole proprietorship ever contributed its IA Business to the LLC.  Indeed, the Form plainly

states that the LLC will not operate an investment advisory business.  Madoff did not even register

as an investment advisor at all until August 2006.  **SMF ¶** 10.  *See In re Bernard L. Madoff Inv.*

*Secs., LLC*, 424 B.R. 122, 127 (Bankr. S.D.N.Y. 2010), *aff'd* 654 F.3d 229 (2d Cir. 2011) ("On

January 19, 1960, BLMIS [the sole proprietorship] registered with the SEC as a broker-dealer

under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. section 78*o* (b), and,

beginning in 2006, as an investment advisor.").  A form submitted to the SEC five years before

Madoff registered as an investment advisor could not possibly establish that the LLC operated an

investment advisory business.  On the contrary, the form itself clearly describes the only businesses

that the LLC engages in (or intends to engage in) are market making and proprietary trading, that

is, the Legitimate Trading Business; and it expressly states that the LLC does not engage in

investment advisory services.  At pages 8 and 9 of Form BD, the LLC was asked to check all of

the "types of business[it] engaged in" (unless that business accounted for less than 1% of annual

revenue.)  It checked item "C," its market-making activities, item "V," its proprietary trading

activities, and item "Z," "Other" activities (this is described on page 10 of the form as Madoff's

membership of the Cincinnati Stock Exchange where he was a designated market maker).  The

LLC did **not** check item "S," however, which referenced "Investment Advisory Services."  Thus,

Judge Bernstein's reliance on Form BD is utterly misplaced.  The document proves that the LLC

did not operate the IA business.

### 2.    The fact that the 703 and 509 Accounts were "commercial" is non-dispositive.

Second, Judge Bernstein held that the 703 and 509 Accounts were "commercial" are

therefore, according to Judge Bernstein, they were owned by the LLC.  This is a complete non

sequitur.

### 3.    The Kamensteins did not make admissions in their Answer.

Third, the Kamensteins did not make admissions in their Answer.  Though they correctly

defined the LLC as "BLMIS" when setting forth the identity of the plaintiff, the Trustee, *see* **Exh.**

**B** they raised a specific affirmative defense asserting the precise issue raised here, *i.e.,* that "[t]he

Trustee lacks standing because "he lacks Article III injury" Affirmative Defenses 6 and because

"BLMIS was not formed until 2001 and the orders of the District Court and the Bankruptcy Court

did not give the Trustee authority to recover fraudulent transfers of Bernard Madoff." *Id*. at 41.

The Kamensteins did not "admit" that the LLC made certain transfers to them. They admitted only

that the LLC was not formed until 2001.  **Exh**. **B**. Moreover, the Kamensteins did not admit that

they had accounts with the LLC and, notably, they specifically differentiated between Madoff and

the LLC in their affirmative defenses, admitting that to the extent there were transfers, these were

to or from the LLC *or* Madoff.  *E.g.,* Affirmative Defenses at 2.  **Exh**. **B.** Obviously, the Trustee

knew at the time he filed the complaints that the LLC did not own or operate the IA business.

However, the defendants had no access to Madoff's records until six years after the complaints

were filed.  Thus, the defendants could not possibly have known that the Trustee was perpetrating

a fraud on the defendants, the courts and the public.

It was only through prodigious discovery that the Kamensteins learned that the 703 and

509 accounts were always in the name of Madoff and his sole proprietorship.  Picard did everything

he possibly could have done to conceal the facts from the Kamensteins.  Moreover, a party cannot

– even voluntarily – confer subject matter jurisdiction on the bankruptcy court where that

jurisdiction clearly does not exist.  *Perpetual Securities, Inc. v. Tang,* 290 F.3d 132, 136 (2d Cir.

2002); *Siding and Insulation Co., Inc. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 373-374 (6th Cir.

2014) ("Necessarily, then, the parties enjoy no more discretion to expand our bailiwicks than we

do . . . In light of this teaching, the parties' consent to jurisdiction matters not.") *Fafel v. Dipaola*,

399 F.3d 403, 410 (1st Cir. 2005) ("A court without subject matter jurisdiction may not acquire it

by consent of the parties.").  Subject matter jurisdiction cannot be conferred or waived by consent,

estoppel, or failure to raise the issue early in the proceedings. *U.S. v. McGaughy,* 670 F.3d 1149,

1155 (10th Cir. 2012) ("Although the government did not raise any jurisdictional objections below,

it is not precluded from raising them here.").

**4.      A bank customer cannot change ownership of a bank account by printing
debit memos.**

Any debit memos the Trustee may seek to rely on here were merely stationery printed by

an employee of Madoff.  A bank customer can't change ownership of a bank account by printing

documents that he doesn't even disclose to his bank.  Incredibly, Judge Bernstein found that the

fact that "Madoff had his name printed on the BLMIS checks proves nothing." *Nelson,* 610 B.R.

at 218).  There is no precedent for such a holding.  A bank asked to pay a check for its customer has a contractual obligation to assure that the check is a bona fide instrument executed by its customer.  Here, over decades, JPMC accepted and paid checks drawn on the 509 account which had "Bernard L. Madoff" printed on them.  Similarly, for decades, JPMC had accepted Madoff's endorsement of checks into the 703 Account "For deposit only, Bernard L. Madoff."  Obviously, JPMC would not have engaged in these practices if the LLC owned the funds, rather than Madoff and his sole proprietorship.  The only way ownership of the 509 and 703 accounts could have been transferred is by a written request from Madoff *to JPMC to transfer ownership of the accounts, just as was done with respect to the BNY accounts in January 2001.  The Trustee, admittedly, has no such document, **SMF ¶ 8**,  and JPMC could not have legally deposited checks into an account owned by anyone other than Madoff based on the stamped endorsement that Madoff used:  "For deposit only Bernard L. Madoff."   Judge Bernstein's holding requires a finding that from January 2001 on, JPMC wrongfully honored checks bearing the name "Bernard L. Madoff" to satisfy obligations of the LLC.  This is preposterous.

**5.     The Kamensteins' account agreements do not establish that the LLC's funds were transferred to them.**

In *Nelson,* the Bankruptcy Court cited *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 213 (2d Cir. 2014), for the proposition that all of the bank accounts in which the customer funds were held were transferred to the LLC and Madoff informed the SEC that he did not retain them "regardless of what he told JPMC." *Nelson,* 610 B.R. at 217. However, in 2014, when *Fairfield Greenwich* was decided, the Second Circuit did not have before it the evidentiary record the Kamensteins submit here.  Instead, the Second Circuit relied on certain Madoff-generated customer forms to say that all of the IA Business customers became customers of the LLC, noting that the customer agreements acknowledged that they inured to the benefit of any "successor

organization."  None of the agreements here lists the LLC as the broker. Instead, the executed

Trading Authorizations actually authorize only Bernard L. Madoff and not the LLC to act as the

agent for buying and selling securities and options. *E.g.* Chaitman Dec. **Exhs.  AG, AH, AJ** and

**AO.**  For example, the Trading Authorization authorizes "Bernard L. Madoff, whose signature

appears below" to trade in certain securities.  *Id.*  The Customer Agreement itself defines the

Broker as "you" and states that it may not be "waived, altered, modified or amended" without a

writing signed by the (original) broker *Id.*

### B.    The Trustee Cannot Show That Any Loss Was Traceable to the Kamensteins' Conduct

The Trustee is required to show both injury in fact, which as set forth above, he cannot,

and also that the injury "can be fairly traced to the defendants' conduct".  *Bogart* at *3-4 (citing

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)).  The Trustee cannot meet this

standard either.  Since the Kamensteins' deposits and withdrawals were not made into or from

accounts held by the LLC, any causal nexus between the Kamensteins' conduct and the claimed

injury would be between Madoff individually and the Kamensteins, not the LLC and the

Kamensteins.  Accordingly, the Trustee does not have standing to avoid any transfers to the

Kamensteins and the Complaint must be dismissed for lack of Article III standing.

### C.    The Trustee Does Not Have Prudential Standing

In addition to the limitations on standing that Article III imposes, there are also "several

judge-made 'prudential' requirements" that a litigant must meet in order to demonstrate standing.

*Wight v. BankAmerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000) (citation omitted). "These are rules

of judicial self-restraint and are applied to further preserve the proper – and properly limited – role

of the courts in a democratic society."  *Id.*  (internal quotation marks omitted) (citations omitted).

"Foremost among the prudential requirements is the rule that a party must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth*, 422 U.S. at 499); *see also HSBC*, 721 F.3d at 58. This limitation is "closely related to Art. III concerns." *Warth*, 422 U.S. at 500.

Since, as SIPA Trustee, the Trustee is attempting to assert claims that belong to the Madoff Trustee, he does not have prudential standing. *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("[I]f a trustee has no power to assert a claim because it is not one belonging to the bankrupt estate, then he also fails to meet the prudential limitation that the legal rights asserted must be his own."); *In re A.R. Baron & Co.*, 280 B.R. 794, 801 (Bankr. S.D.N.Y. 2002) (same); *see also Caplin*, 406 U.S. at 416 (same). Accordingly, the Trustee also lacks prudential standing to avoid any transfers to the Kamensteins. This Court should grant the Kamensteins' motion for summary judgment dismissing the Complaint for lack of subject matter jurisdiction.

## III    THE TRUSTEE CANNOT RECOVER FROM TRACY

In order to recover the value of an avoided transfer from Tracy, under section 550 of the Bankruptcy Code the Trustee must prove that she falls into one of three categories: 1) the initial transferee; 2) one "for whose benefit such transfer was made" or 3) a subsequent transferee. 11 U.S.C. § 550(a)(1); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 56 (2d Cir. 1997); *Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 312 (Bankr. S.D.N.Y. 1999).

The Trustee cannot prove that Tracy is liable under section 550 at all. The Trustee has already admitted that the withdrawals were deposited into Carol and David's CKDK CAP bank account, and that Tracy did not receive any of the funds. **SMF ¶ 57.** And as demonstrated herein, Tracy was neither the initial transferee nor did she receive the benefit of any transfers. Moreover,

the Complaint contains no claims against Tracy as a subsequent transferee, and, even if it did, this Court has already dismissed any such claims across all adversary proceedings. **SMF** n.1**.** This Court should grant Tracy's motion for partial summary judgment and dismiss the Complaint against her.

A.   **Tracy is Neither an Initial Transferee Nor One For Whose Benefit the Transfer Was Made**

While the Bankruptcy Code allows for recovery from "the entity for whose benefit [the] transfer was made," 11 U.S.C. § 550(a)(1), the term "initial transferee" is not defined. Courts in the Second Circuit hold that the words mean something "more particular than the initial recipient." *Finley Kumble,* 130 F.3d at 57. And the one "for whose benefit such transfer was made" "does not simply reference the next pair of hands; it references entities that benefit as guarantors of the debtor, or otherwise, without ever holding the funds." *Id.* Thus, that entity is a person who receives a benefit from the initial transfer even though it is not the actual recipient of the funds. *Stratton Oakmont,* 234 B.R. at 314. "The paradigm 'entity for whose benefit such transfer was made' is a guarantor or debtor—someone who receives the benefit but not the money." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 895 (7th Cir. 1988); *see also Ames Merch. Corp. v. Nikko Am., Inc.* (*In re Ames Dep't Stores, Inc.*), 2011 WL 1239804, at *5 (Bankr. S.D.N.Y. Mar. 28, 2011) (same); *Finley Kumble,* 130 F.3d at 57. Courts require that the recipient have "dominion and control" over the funds, otherwise they are considered a "mere conduit" and are not liable under 11 U.S.C. § 550. *Finley Kumble,* 130 F.3d at 57; *Hooker Atlanta (7) Corp. v. Hocker (In re Hooker Investments, Inc.),* 155 B.R. 332, 337 (Bankr.S.D.N.Y.1993) ("Parties that act as conduits and simply facilitate the transfer of funds or property from the debtor to a third party generally are not deemed initial transferees for purposes of" section 550); *In re Black & Geddes, Inc.,* 59 B.R. 873, 875 (Bankr. S.D.N.Y. 1986) ("an entity that acts as a mere conduit of

funds is not an "initial transferee" within the ambit of section 550 and no recovery may be had

from the entity"). As the Seventh Circuit held, in order to have dominion and control over the

funds, the party must be "free to invest the whole [amount] in lottery tickets or uranium stocks."

*Bonded*, 838 F.2d at 894. Tracy clearly lacked "dominion and control" over the funds.

The Trustee has admitted that Tracy did not receive any of the funds from the withdrawals.

They were deposited into David and Carol's 822 Account. **SMF ¶ 57.** Even if the Trustee argues

that Madoff made out the withdrawal checks in question to Tracy, this is insufficient. The name

on the check is not enough to conclude that the person is an initial transferee. "It stands to reason

that the initial transfer is something other than the passing of mere possession." *Finley Kumble,*

130 F.3d at 57. And even if the Trustee had not admitted that Tracy did not receive any funds,

Tracy can clearly prove that she did not receive any of the funds withdrawn from her Trust account;

nor did she have any dominion or control over them. Withdrawal checks from the Tracy Trust

Account were requested by David, were sent to David, and were concededly deposited into the

CKDK CAP account, which Tracy never touched. **SMF ¶¶ 55, 57, 59.**

The Madoff account in the name of the Tracy Trust was opened by David, as Trustee, on

August 23, 1999. **SMF ¶ 43.** Even under the terms of the Tracy Trust Agreement, which was

attached to the account opening documents, Tracy did not have control over the funds. **Exhs. AE**

and **AG**. The Trust was irrevocable and Tracy was not due to receive the interest or principal until

her 36th birthday, but no such distribution was made. **SMF ¶ 58.** It is undisputed that the Tracy

Trust Account was set up as a Trust Account, even if it is wrongly referred to in Tracy's own name.

And after her 36th birthday, it is indisputable that the Tracy Trust Account continued to be managed

by David, who requested and controlled all of the withdrawals. *Id.*

Even if the Tracy Trust Account had been in Tracy's name individually, however, it is undisputed that all of the withdrawals during the Clawback Period were paid into an account which Tracy never touched.  **SMF** ¶¶ 55, 57, 59.  Courts have explained "that it would be inequitable to impose the strict liability reserved for an initial transferee on a conduit simply because he or she was the first to physically hold the money or property despite the fact that he or she was powerless to 'put the money to [his or her] own purposes.'"  *Stratton Oakmont, Inc.*, 234 B.R. at 313 (alteration in original).

Section 550 only allows recovery from three entities: an initial transferee, one for whose benefit the initial transfer was made, or from any "immediate or mediate transferee [subsequent transferees] of that immediate transferee".  11 U.S.C. § 550; *Stratton Oakmont*, 234 B.R. at 312.  As the Complaint reveals, there are no claims against Tracy (or, indeed, against any Kamenstein) as a subsequent transferee.  As the Trustee admits, he has traced none of the funds he seeks to recover to her.  **SMF** ¶ 61.  And he cannot do so, for as demonstrated, all the evidence shows that Tracy did not receive the benefit of any of the withdrawals.  "The general rule under the Bankruptcy Act is that one who did not actually receive any of the property fraudulently transferred . . . will not be liable for its value," *Mack v. Newton*, 737 F.2d 1343, 1357 (5th Cir. 1984).

Finally, the Complaint reveals no basis on which Tracy could possibly be held liable for any withdrawal from the other Kamenstein Accounts at issue in this matter: Account number 1CM597 opened in the name of the Sloan Kamenstein Irrevocable Trust, Account number 1CM914 opened in the name of Carol Kamenstein, and Account number 1CM913, opened in the name of David Kamenstein.  Here, the Trustee cannot even show that the withdrawal checks were made out to Tracy, far less that they were made for her benefit.  This Court should grant Tracy's motion for partial summary judgment dismissing the Complaint against her.

## CONCLUSION

For all the foregoing reasons, this Court should grant the Kamensteins' motion for summary judgment dismissing the Complaint for lack of subject matter jurisdiction. At a minimum, this Court should grant the motion for partial summary judgment of Tracy Kamenstein dismissing the Complaint as against her, because she was neither the initial transferee nor did she receive the benefit of any of the alleged withdrawals from her Trust account.

Dated:    November 25, 2020
        New York, New York

**CHAITMAN LLP**

By:  */s/ Helen Davis Chaitman*
     Helen Davis Chaitman
     465 Park Avenue
     New York, New York 10022
     Phone & Fax: 888-759-1114
     hchaitman@chaitmanllp.com

     *Attorneys for Defendants*