KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
(212) 940-8800
*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　Plaintiff-Applicant,<br><br>　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>　　　　Defendant. | **Adv. Pro. No. 08-01789 (SMB)**<br><br>**SIPA Liquidation**<br>**(Substantively Consolidated)** |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ROYAL BANK OF CANADA; GUERNROY LIMITED; ROYAL BANK OF CANADA (CHANNEL ISLANDS) LIMITED; ROYAL BANK OF CANADA TRUST COMPANY (JERSEY) LIMITED; ROYAL BANK OF CANADA (ASIA) LIMITED; ROYAL BANK OF CANADA (SUISSE) S.A.; RBC DOMINION SECURITIES INC.; AND RBC ALTERNATIVE ASSETS, L.P.,<br><br>　　　　Defendants | **Adv. Pro. No. 12-01699 (SMB)** |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' MOTION TO STAY**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

PROCEDURAL HISTORY.................................................................................................... 4

    A.    The Trustee Seeks and Obtains Discovery from RBC in 2009. ............................ 4

    B.    The Trustee Initiates this Matter Despite Prior Legal Authority Requiring Him to Plead Lack of Good Faith based on Willful Blindness to Madoff's Fraud. ................................................................................................................... 5

    C.    The District Court Again Confirms that the Trustee Must Plead an Absence of Good Faith, and this Case, Among Others, Was Dismissed for the Extraterritorial Application of Law and International Comity. ........................ 6

    D.    The Trustee Appeals Dismissal in *Citibank* and *Legacy*. ....................................... 7

    E.    The Second Circuit Reverses the Extraterritoriality and Comity Dismissals. ............................................................................................................. 7

    F.    The Trustee Moves to Amend.............................................................................. 8

ARGUMENT........................................................................................................................ 10

    A.    A Stay on Briefing the Trustee's Motion to Amend Would Prevent the Need for Duplicative Briefing and Would Not Prejudice the Trustee.................. 10

    B.    A Stay Promotes Judicial Efficiency and Enables Coordination in Related Proceedings. ........................................................................................................ 12

CONCLUSION..................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albert v. Blue Diamond Growers*,
    232 F. Supp. 3d 509 (S.D.N.Y. 2017) ............................................................................... 12

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*,
    630 F. Supp. 2d 295 (S.D.N.Y. 2009) ................................................................................ 12

*Heiser v. Deutsche Bank Tr. Co. Ams.*,
    2012 WL 2865485 (S.D.N.Y. July 10, 2012) ................................................................ 12-13

*Heiser v. Deutsche Bank Tr. Co. Ams.*,
    2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) ................................................................12, 13

*In re Literary Works in Elec. Databases Copyright Litig.*,
    2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) ........................................................................ 10

*Kappel v. Comfort*,
    914 F. Supp. 1056 (S.D.N.Y. 1996) ................................................................................... 10

*Loftus v. Signpost Inc.*,
    2020 WL 2848231 (S.D.N.Y. June 2, 2020) ...................................................................... 12

*Mount v. PulsePoint, Inc.*,
    2014 WL 902965 (S.D.N.Y. Mar. 5, 2014) ....................................................................... 10

*Picard v. BNP Paribas S.A.*,
    Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y. June 1, 2020) .................................................... 3

*Picard v. Citibank, N.A.*,
    608 B.R. 181 (Bankr. S.D.N.Y. 2019) ........................................................................ 7, 8, 9

*Picard v. Citibank, NA.*,
    No. 20-1333 (2d Cir.) ................................................................................................ *passim*

*Picard v. Fairfield Inv. Fund Ltd.*,
    No. 9-01239 (Bankr. S.D.N.Y. Aug. 28, 2020) ................................................................. 14

*Picard v. Fairfield Sentry Ltd.*,
    Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) ..................................................................... 4, 5

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011) ......................................................................................... 5, 8

*Picard v. Legacy Capital Ltd.*,
    548 B.R. 13 (Bankr. S.D.N.Y. 2016)..................................................................................7, 9

*Picard v. Legacy Capital Ltd.*,
    No. 20-1334 (2d Cir.).................................................................................................. *passim*

*Picard v. Natixis*,
    Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y. July 1, 2020)........................................................3

*Picard v. Standard Chartered Financial Services (Luxembourg) S.A.*,
    Adv. Pro. No. 12-01565 (SMB) (Bankr. S.D.N.Y) ............................................................4, 13

*Picard v. Tremont Group Holdings, Inc.*,
    No. 10-ap-05310 (S.D.N.Y. Bankr.)...................................................................................4-5, 5

*Picard v. Royal Bank of Scotland*,
    No. 20-cv-03684 (S.D.N.Y.)................................................................................10, 11, 12, 13

*Sikhs for Justice v. Nath*,
    893 F. Supp. 2d 598 (S.D.N.Y. 2012)................................................................................10, 13

*SIPC v. BLMIS*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)...........................................................................14

*SIPC v. BLMIS*,
    2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) ..............................................................6

*SIPC v. BLMIS*,
    501 B.R. 26 (S.D.N.Y. 2013)...................................................................................................14

*SIPC v. BLMIS*,
    513 B.R. 222 (S.D.N.Y. 2014)...................................................................................................6

*SIPC v. BLMIS*,
    516 B.R. 18 (S.D.N.Y. 2014)......................................................................................................6

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*,
    2005 WL 912184 (S.D.N.Y. Apr. 19, 2005).......................................................................10, 12

*WorldCrisa Corp. v. Armstrong*,
    129 F.3d 71 (2d Cir. 1997)........................................................................................................10

**Statutes**

11 U.S.C. § 546..................................................................................................................................14

11 U.S.C. § 548............................................................................................................................4, 8, 13

11 U.S.C. § 550.......................................................................................................................... *passim*

28 U.S.C. § 158 ............................................................................................................................7

**Rules**

Fed. R. App. P. 26 .......................................................................................................................2

Fed. R. Bankr. P. 2004 ............................................................................................................5, 6

Fed. R. Civ. P. 26 ........................................................................................................................6

Defendants Royal Bank of Canada; Guernroy Limited; Royal Bank of Canada (Channel Islands) Limited; Royal Bank of Canada Trust Company (Jersey) Limited; Royal Bank of Canada Singapore Branch, as successor to Royal Bank of Canada (Asia) Limited; Banque SYZ, as successor to Royal Bank of Canada (Suisse) S.A.; RBC Dominion Securities Inc.; and RBC Alternative Assets, L.P. (collectively, "Defendants" or "RBC") respectfully submit this memorandum of law in support of their motion to stay this adversary proceeding pending decisions by the United States Court of Appeals for the Second Circuit in *Picard v. Citibank, NA.*, No. 20-1333 (2d Cir.) and *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir.).

## PRELIMINARY STATEMENT

This adversarial proceeding is one of many such proceedings brought by Irving Picard (the "Trustee") as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Estate of Bernard L. Madoff (the "Estate") in an attempt to avoid transfers made by BLMIS to feeder funds Fairfield Sentry, Ltd. ("Sentry"), Kingate Global Fund, Ltd. ("Kingate"), Rye Prime Fund, Rye Broad Market, and Rye Portfolio Limited ("Rye" and with Sentry and Kingate, the "Funds") and to recover funds from such purported subsequent transferees pursuant to 11 U.S.C. § 550. This Court previously dismissed many of the defendants from this case, and many companion cases, ruling that these cases violated the principles of extraterritoriality and international comity. The District Court affirmed this Court's decision. The Second Circuit reversed and remanded the case to the Bankruptcy Court, and on June 1, 2020, the Supreme Court of the United States denied Defendants' petition for writ of certiorari.

In related proceedings in 2011 and 2014, the District Court confirmed that the Trustee could not avoid or recover initial or subsequent transfers equal to the customer's investment

1

principal without first alleging and successfully establishing that the customer lacked good faith in making the investment. In other words, the Trustee had to prove both the initial and subsequent transferee had actual knowledge of or were willfully blind to Madoff's Ponzi scheme. This Court has dismissed similar claims against subsequent transferee defendants for a failure to plead a lack of good faith. In 2019, the Trustee filed two appeals in the Second Circuit: *Picard v. Citibank, NA.*, No. 20-1333 (2d Cir.) ("*Citibank*") and *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir.) ("*Legacy*"). The Trustee challenged: (i) whether the District Court and this Court's interpretation of the "good faith" standard was appropriate; (ii) whether the Trustee needed to plead the transferee's lack of good faith; and (iii) whether the Trustee had adequately pleaded willful blindness in *Citibank* and *Legacy*. (Br. for Pl.-Appellant at 2, *Citibank*, No. 20-1333 (2d Cir. Aug. 6, 2020), ECF No. 78; Br. for Pl.-Appellant at 2, *Legacy*, No. 20-1334 (2d Cir. Aug. 6, 2020), ECF No. 73.) The parties are scheduled to complete briefing for the two appeals on November 27, 2020.[1]

The Trustee's original complaint in this proceeding, filed in April 2012 (Compl., ECF No. 1), does not allege that any Defendant lacked good faith when allegedly receiving subsequent transfers from the Funds, even in a conclusory fashion. On February 4, 2019, the parties agreed, and the Court so ordered, that the Trustee would file a motion for leave to file an amended complaint. (ECF No. 103, as extended by ECF Nos. 104, 105, 107, and 111.) Consistent with that agreement, the Trustee filed a Motion for Leave to File Amended Complaint on November 10, 2020 (ECF No. 112, the "Motion"). Defendants did not see the Trustee's proposed pleading until it was filed two weeks ago. In a 299-paragraph pleading, incorporating multiple other lengthy

---

[1] Appellees filed their briefs in the *Citibank* and *Legacy* appeals on November 5, 2020 (Citibank, No. 20-1333, ECF No. 134; Legacy, No. 20-1334, ECF No. 135). Pursuant to Rule 26(a)(2)(C) of the Federal Rules of Appellate Procedure, Appellant's reply brief is due the day after Thanksgiving, on November 27, 2020.

2

pleadings, each having hundreds of paragraphs in their own right, the Proposed Amended Complaint (ECF No. 113-1, the "PAC") alleges that individuals working for certain RBC entities at a point in time were aware of certain irregularities about Madoff's operation. Given the significant impact that the *Citibank* and *Legacy* appeals will have on this proceeding, this Court should grant a stay of briefing on the Motion. The Trustee has already agreed to such stays in similar proceedings for the same reasons as are warranted here. (*See, e.g.*, Stay Stipulation and Order at 5, *Picard v. Natixis*, Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y. July 1, 2020), ECF No. 185; Discovery Stay Stipulation and Order at 4, *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y. June 1, 2020), ECF No. 162).

*First*, a stay promotes judicial economy and reduces the cost and efforts of counsel. RBC intends to argue that the PAC fails to state a claim on multiple grounds, including an insufficient pleading that any RBC entity had actual knowledge of or was willfully blind to Madoff's fraudulent behavior. The Second Circuit's ruling on the proper interpretation of "good faith" and the adequate pleading standard for willful blindness in factually similar cases like *Citibank* and *Legacy* will significantly affect the briefing of both RBC and the Trustee in these proceedings.[2] Furthermore, should the Second Circuit find no need to plead a lack of good faith, the Trustee may seek a reconsideration of any adverse ruling in this proceeding.

*Second*, a stay will promote an efficient resolution for the other subsequent transferee cases. This case has been consistently coordinated with other adversary proceedings against subsequent transferees, which has allowed this Court to make omnibus decisions. If this Court were to proceed with this case prior to the Second Circuit's decision, this Court would be setting this case on a

---

[2] RBC agreed to a briefing schedule for the Trustee's Motion unaware that the Trustee's Proposed Amended Complaint would track closely with the allegations made in *Citibank* and *Legacy*. Because the allegations are similar, the outcome of the appeals could impact both the way in which RBC opposes the Motion, and the way in which the Court evaluates the merits of the Motion.

3

different track than the already stayed cases with significantly overlapping factual and legal issues. As a result, this Court would be faced with duplicative briefing and hearings for the more than 80 cases that were previously dealt with in a consolidated fashion. This motion itself is evidence of such duplicative briefing, as a nearly identical motion has been filed in formerly coordinated cases. (*See*, *e.g.*, *Picard v. Standard Chartered Financial Services (Luxembourg) S.A.*, Adv. Pro. No. 12-01565 (SMB) (Bankr. S.D.N.Y), (ECF Nos. 128-129).) A stay would maintain the coordinated timelines allowing the Defendants to streamline the motion practice, thereby promoting economic and judicial efficiency.

## PROCEDURAL HISTORY

A. <u>The Trustee Seeks and Obtains Discovery from RBC in 2009</u>.

After Madoff's fraud was revealed in December 2008, the Trustee began initiating adversary proceedings seeking to avoid and recover transfers of money made by BLMIS to its customers under 11 U.S.C. § 548 ("Section 548") and 11 U.S.C. § 550 ("Section 550"). In 2009, the Trustee brought suit against Sentry, the largest feeder fund to BLMIS to avoid and recover initial transfers from BLMIS to that fund. *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.). Sentry was one of Madoff's Ponzi scheme's biggest net losers because it had invested far more than it withdrew from its BLMIS accounts. (*See* Ex. E to Compl. at 31, 61, 67, 73, ECF No. 1-5 (reflecting four Sentry accounts with ending principal balances of $450,354,616, $496,226,989, $13,951,902, and $0, respectively).)

A year later, on December 7, 2010, the Trustee filed a complaint against another group of funds under the Tremont Group Holdings, Inc. umbrella (collectively, "Tremont Funds"), including the Rye Select funds, which, along with Sentry, are the initial transferees as alleged in this proceeding. (Complaint, *Picard v. Tremont Group Holdings, Inc.*, No. 10-ap-05310 (S.D.N.Y.

4

Bankr.) ("*Tremont*"), ECF No. 1.) The Tremont Funds comprised the second largest group of feeder funds to BLMIS after the Sentry and its sister funds.

In July 2009, the Trustee served a Subpoena for Rule 2004 Examination on RBC, seeking among other things, "[a]ny and all documents concerning": (i) "Fairfield Sentry or Fairfield Sigma"; (ii) "BLMIS," and (iii) "any Fund with a BLMIS account." (Declaration of Mark T. Ciani ("Ciani Decl."), Ex. A, at Requests 1-3.) RBC complied with the subpoena and produced documents relating to RBC's due diligence on Sentry, the Rye Select funds, and BLMIS, as well as marketing materials related to the investments. (Ciani Decl. ¶ 3.) The Trustee sought no additional documents from RBC at that time.

The Trustee also conducted a separate "comprehensive investigation" of Sentry, which included a "review and analysis of both the Fairfield Funds' BLMIS-related transactional histories as reflected in the BLMIS account statements, correspondence, and other records and documents" of the funds. (Mot. to Approve Settlement at 10, *Fairfield Sentry Ltd.*, No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011), ECF No. 69.) The Trustee performed a similarly rigorous investigation of the Rye Select funds. (Trustee's Motion to Approve Compromise, *Tremont*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y. July 28, 2011), ECF No. 17, ¶ 16 ("[T]he Trustee has conducted a comprehensive investigation of the Settling Defendants' direct and indirect investments with BLMIS.").)

      B.    <u>The Trustee Initiates this Matter Despite Prior Legal Authority Requiring Him to Plead Lack of Good Faith Based on Willful Blindness to Madoff's Fraud</u>.

In 2011, Judge Rakoff held that BLMIS customers who were net losers (i.e., they withdrew less than they invested) were only liable under Section 550 if the Trustee can show "an absence of good faith on defendants' part based on their willful blindness." *Picard v. Katz*, 462 B.R. 447, 456 (S.D.N.Y. 2011), *abrogated on other grounds by SIPC v. BLMIS*, 513 B.R. 437 (S.D.N.Y.

5

2014). Despite Judge Rakoff's ruling, on June 6, 2012, the Trustee initiated this adversarial proceeding without any allegations of a lack of good faith or willful blindness.

    C.    <u>The District Court Again Confirms that the Trustee Must Plead an Absence of Good Faith, and this Case, Among Others, Was Dismissed for the Extraterritorial Application of Law and International Comity</u>.

The District Court consolidated this case and dozens of similar cases involving investors of feeder funds. At the District Court, Judge Rakoff issued a series of rulings, including an April 28, 2014 decision further clarifying that *Katz*'s determination that the Trustee must show an absence of good faith based on willful blindness applied not only to the initial transferee, but to subsequent transferees as well. *SIPC v. BLMIS*, 516 B.R. 18, 22-24 (S.D.N.Y. 2014). The District Court reiterated that "'good faith' means that the transferee neither had actual knowledge of the . . . fraud nor willfully blinded himself to the circumstances." *Id.* at 23. In support of its holding, the District Court pointed to the extensive pre-dispute discovery available to the Trustee under Rule 2004. *Id.* at 25 n.5 ("It is thus not unreasonable to require that the Trustee provide a plausible basis to claim that a defendant lacked good faith in his initial complaint."). The District Court further explained that the absence of good faith is a pleading requirement. *Id.* at 24.

On July 6, 2014, the District Court further held that Section 550 does not permit the recovery of extraterritorial subsequent transfers. The District Court dismissed the Trustee's claim that it should be entitled to recover extraterritorial transfers to foreign defendants from foreign feeder funds based on comity grounds. *SIPC v. BLMIS*, 513 B.R. 222, 232 (S.D.N.Y. 2014). That decision led to an omnibus order by this Court dismissing claims related to subsequent transfers from the Fairfield funds and certain of the Rye Select funds. *SIPC v. BLMIS*, 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016). On March 9, 2017, the Trustee and RBC entered into a stipulated dismissal of this case on all claims except those related to the domestic Rye Select funds

(ECF No. 70). Following the dismissal, the Trustee sought and was denied additional expedited discovery under Rule 26(d)(1). (ECF No. 98.)

        D.        <u>The Trustee Appeals Dismissal in *Citibank* and *Legacy*</u>.

Following Judge Rakoff's decisions, this Court dismissed several cases based on the Trustee's failure to sufficiently allege a lack of good faith. Among those dismissed were *Citibank* and *Legacy*. *Picard v. Citibank, N.A.*, 608 B.R. 181, 196-205 (Bankr. S.D.N.Y. 2019); *Picard v. Legacy Capital Ltd.*, 548 B.R. 13, 29-39 (Bankr. S.D.N.Y. 2016). In each case, the Trustee alleged that the defendants had identified irregularities about Madoff's operation through their due diligence of BLMIS or the feeder funds, and that as a result, the defendants must be willfully blind. The Court rejected the Trustee's claims, noting that the defendants' demonstrable due diligence and the "remote" risk of fraud were not enough to render the defendants willfully blind. *Legacy*, 548 B.R. at 38; *Citibank*, 608 B.R. at 200.

The parties directly appealed to the Second Circuit under 28 U.S.C. § 158(d)(2). (*Citibank*, No. 20-1333, ECF No. 1; *Legacy*, No. 20-1334, ECF No. 1.) The appeals raise three issues: (1) the standard for determining a transferee's good faith; (2) whether the Trustee bears the burden to plead a transferee's lack of good faith in a SIPA proceeding; and (3) whether the Trustee's "proposed amended complaint plausibly pleaded defendants' willful blindness to fraud at BLMIS" under the governing standard. (Br. for Pl.-Appellant at 2, *Citibank*, 20-1333 (2d Cir. Aug. 6, 2020), ECF No. 78; *see also* Br. for Pl.-Appellant at 2, *Legacy*, No. 20-1334 (2d Cir. Aug. 6, 2020), ECF No. 73.)

        E.        <u>The Second Circuit Reverses the Extraterritoriality and Comity Dismissals</u>.

On February 25, 2019, the Second Circuit issued its opinion reversing and remanding the District Court's rulings on extraterritoriality and comity. On June 1, 2020, the Supreme Court of the United States denied the transferee defendants' petition for writ of certiorari, and the Second

Circuit subsequently issued a mandate returning the case to the Bankruptcy Courts. (*See* ECF No. 111, at 3.) The Trustee and RBC then entered into a stipulated briefing schedule for the Trustee's Motion. (*Id.*)

      F.      <u>The Trustee Moves to Amend</u>.

On November 10, 2020, the Trustee filed its Motion to Amend the Complaint, seeking leave to allege RBC lacked good faith for the first time. The Trustee argues he should be permitted to amend now due to a purported "intervening" change in the law concerning the good faith limitation under Sections 548(c) and 550(b). (Motion at 17.) However, despite this claim, the Trustee cites no case since 2011 regarding any changes to the pleading standard. (*Id*. at 17-18.) The Trustee initiated this action ***after*** the District Court first articulated the good faith standard in *Katz*.

While RBC entered a Stipulation and Order, consenting to a briefing schedule for the Trustee's Motion to Amend, it had not at that time seen the PAC. Indeed, as amplified in the table below, the PAC's (failed) attempt to show willful blindness and/or actual knowledge mirrors the insufficient allegations made in the *Citibank* and *Legacy* cases. In fact, in certain instances, the allegations in *Citibank* and *Legacy* suggest that those defendants had greater suspicion of Madoff's operation than RBC did. Given these similarities, the Second Circuit's determination will surely guide this Court's eventual evaluation of the Trustee's PAC in this case. This table illustrates exactly why:

|   | **<u>Allegation in Amended Complaint</u>** | **<u>RBC</u>** | **<u>Legacy</u>** | **<u>Citibank</u>** |
|---|---|---|---|---|
| 1. | Employee and/or agent of defendant was aware that Madoff's consistently positive returns were not the results one would expect from Madoff's disclosed investment strategy | √ PAC ¶¶ 94-118, 128 | √ 548 B.R. at 21, 33 | √ 608 B.R. at 186-88, 190, 197-98 |

| | **Allegation in Amended Complaint** | *RBC* | *Legacy* | *Citibank* |
|---|---|---|---|---|
| 2. | Employee and/or agent of defendant had suspicions that the Madoff options trading strategy was impossible | √ PAC ¶¶ 104, 110-14, 126-28 | √ 548 B.R. at 21, 33 | √ 608 B.R. at 187 |
| 3. | Written communications in which an employee and/or agent of defendant shared their concerns described in items 1 and 2 above | √ PAC ¶¶ 126-28 | √ 548 B.R. at 21, 33 | √ 608 B.R. at 186-88, 190, 197-98 |
| 4. | Defendant and/or agent of defendant refuses to renew a deal with BLMIS without first obtaining indemnification against fraud | X | X | √ 608 B.R. at 188-89, 192, 203 |
| 5. | BLMIS lacked the number of employees to manage billions of dollars in funds | X | √ 548 B.R. at 22 | X |
| 6. | In meetings, employee and/or agent of defendant was not impressed with Madoff | √ PAC ¶¶ 115-17 | X | √ 608 B.R. at 200 |
| 7. | Investors/customers raised questions or issues of potential fraud to defendant or agent of defendant | √ PAC ¶¶ 195-206 | √ 548 B.R. at 19-22, 31-32 | √ 608 B.R. at 187, 197 |
| 8. | After Madoff irregularities were identified by an employee or agent of defendant, the defendant and/or defendant's agent continued to permit clients to invest through the fund | √ PAC ¶¶ 129-31, 174-82 | √ 548 B.R. at 24, 32, 34 | √ 608 B.R. at 187, 197-99, 205 |
| 9. | After Madoff irregularities were identified by an employee or agent of defendant, defendant's due diligence efforts continued, but were not as rigorous, and/or BLMIS was exempted from strict due diligence | √ PAC ¶¶ 143-59 | X | √ 608 B.R. at 198-99 |

9

## ARGUMENT

Courts routinely stay cases where, as here, "a higher court is close to settling an important issue of law bearing on the action." *See, e.g.*, *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (granting stay pending the Supreme Court case's outcome that would settle crucial issues of law). Such a stay is also warranted where the pending appeal would settle some, but not all, of the undecided legal issues. *In re Literary Works in Elec. Databases Copyright Litig.*, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001). This Court has broad authority to issue a stay, *Mount v. PulsePoint, Inc.*, 2014 WL 902965, at *1 (S.D.N.Y. Mar. 5, 2014) (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997)). Courts in this Circuit generally consider five factors in determining whether to grant a stay: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest," *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996).

Here, all of the relevant factors favor a stay pending the Second Circuit's decisions in *Citibank* and *Legacy*.

### A. A Stay on Briefing the Trustee's Motion to Amend Would Prevent the Need for Duplicative Briefing and Would Not Prejudice the Trustee.

A stay pending a related appeal promotes the interests of the parties if it "will cause little prejudice or hardship to" the plaintiff and if the appeal "go[es] to the heart of [the] claims." *Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*, 2005 WL 912184, at *2-3 (S.D.N.Y. Apr. 19, 2005). In a similar proceeding, the Trustee argued in favor of a stay on the grounds that, "absent one, he would have to needlessly expend resources on simultaneous litigation of identical controlling questions of law in the Second Circuit and this [c]ourt" and "face[] the prospect of

duplicative proceedings and unnecessary costs" of briefing. (Mot. to Stay Appeal at 9-10, *Picard v. Royal Bank of Scotland*, No. 20-cv-03684 (S.D.N.Y. May 28, 2020) ("*RBS*"), ECF No. 4.) The situation is identical here.

The Trustee's PAC adds allegations regarding RBC's due diligence process in an attempt to plead that RBC lacked good faith under Section 550(b). The sufficiency of those allegations is the exact issue that the Trustee has presented to the Second Circuit. Indeed, as shown above, *see supra* at 8-9, the allegations at issue in *Citibank* and *Legacy* are closely aligned to those made against RBC. In appealing to the Second Circuit, the Trustee argues that the District Court and this Court misinterpreted and misapplied the good faith limitation in Madoff-related proceedings. (*See* Br. for Pl.-Appellant at 16-18, *Citibank*, No. 20-1333 (2d Cir. Aug. 6, 2020), ECF No. 78.) Furthermore, the Trustee contends in its appeals that this Court erroneously determined that the Trustee failed to adequately plead a lack of good faith. If this Court were to deny the Trustee's motion to amend as futile, and the Second Circuit were to accept the Trustee's arguments in the *Citibank* and *Legacy* appeals, the Trustee would almost certainly seek reconsideration. Conversely, if this Court grants the Trustee's motion to amend, and the Second Circuit affirms the lower court's *Citibank* and *Legacy* decisions with different reasoning than the lower court, then RBC would likely seek reconsideration. Regardless of the appeals' outcome, the Second Circuit's ruling on that argument is likely to trigger further supplemental briefing and possibly another round of proposed amendments.

Moreover, a stay does not prejudice the Trustee. The Trustee previously argued in the District Court that a stay "pending a decision by the Second Circuit in the Related Appeals is of a reasonable duration"; "the *Citibank* and *Legacy* appeals will be fully briefed by late November;" and "[t]here is no reason to anticipate any undue delay in the Second Circuit's decision concerning

11

the Related Appeals." (Mot. to Stay Appeal at 10, *RBS*, No. 20-cv-03684 (S.D.N.Y. May 28, 2020), ECF No. 4); *see also Heiser v. Deutsche Bank Tr. Co. Ams.*, 2012 WL 5039065, at *3 (S.D.N.Y. Oct. 17, 2012) (finding party's claim of prejudice due to stay pending decision on consolidated appeals was not compelling because the issues to be considered directly related to the case at bar); *Wing Shing*, 2005 WL 912184, at *2 (finding a stay pending a related appeal was not prejudicial where plaintiff was also a party to the related appeal and was not "be[ing] compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both'") (alteration in original).

    B.    <u>A Stay Promotes Judicial Efficiency and Enables Coordination in Related Proceedings</u>.

A stay also promotes the conservation of judicial resources and the orderly disposition of the related matters before this Court. *Albert v. Blue Diamond Growers*, 232 F. Supp. 3d 509, 513 (S.D.N.Y. 2017). Courts recognize the benefits of granting a stay when the Court of Appeals or Supreme Court is considering a threshold legal issue pertinent to the case. *See, e.g.*, *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 630 F. Supp. 2d 295, 304-305 (S.D.N.Y. 2009).

The Trustee has admitted in other proceedings that "[t]he interests in judicial economy and the orderly administration of justice weigh heavily in favor of [a stay]" because the "Second Circuit . . . will address controlling questions of law identical to those [at issue] here." (Mot. to Stay Appeal at 8, *RBS*, No. 20-cv-03684, ECF No. 4.) The Trustee further admitted that a stay would "conserv[e] judicial resources and avoid[] the possibility of conflicting decisions," which would benefit the Court and the parties and serve "the interests of non-parties and the public." (Mot. to Stay Appeal at 10, *RBS*, No. 20-cv-03684 (S.D.N.Y. May 28, 2020), ECF No. 4); *see also Loftus v. Signpost Inc.*, 2020 WL 2848231, at *2 (S.D.N.Y. June 2, 2020) ("The Court and public also

12

have an interest in the efficient conduct of litigation."); *Heiser v. Deutsche Bank Tr. Co. Ams.*, 2012 WL 2865485, at *5 (S.D.N.Y. July 10, 2012) ("considerations of judicial economy are frequently viewed as relevant to the public interest, and . . . weigh against the investment of court resources that may prove to have been unnecessary").

Here, RBC intends to oppose the Trustee's Motion in part because the PAC is futile, and because it still fails to allege a plausible claim that any Defendant was willfully blind to Madoff's fraud. As stated above, the Trustee's appeals in *Citibank* and *Legacy* challenge the District Court's interpretation of the good faith limitation and this Court's application of that standard in those cases. (*E.g.*, Br. for Pl.-Appellant at 52, *Citibank*, No. 20-1333 (2d Cir. Aug. 6, 2020), ECF No. 78.) The Second Circuit's decisions will be binding on this Court, and the outcome could be potentially dispositive to the Trustee's claims. At the very least, the Second Circuit's decision will provide meaningful guidance for this Court when considering whether the Trustee's PAC is futile. *See, e.g.*, *Heiser*, 2012 WL 5039065, at *6 ("failure to grant a stay could lead to unnecessary and time-consuming litigation"); *see also Sikhs for Justice*, 893 F. Supp. 2d at 622 (ordering a stay because "it 'would be an inefficient use of time and resources of the court and the parties'").

Additionally, this case has a long history of coordination with other similar subsequent transferee cases. A stay would allow this case to remain coordinated with the other stayed cases, pending the *Citibank* and *Legacy* appeals. Thus, the stay would enable this Court to treat similar cases on an omnibus basis as it has done in the past for threshold issues, including the good faith limitation under Sections 548(c) and 550(b). The Trustee has agreed, arguing that "clarity" on that issue "would benefit . . . the parties to the many adversary proceedings also affected by the Good Faith Decision pending in the bankruptcy court." (Mot. to Stay Appeal at 10, *RBS*, No. 20-cv-03684 (S.D.N.Y. May 28, 2020), ECF No. 4.) Placing this case on a separate track from others

13

would prevent such coordination, leading to duplicative briefing and motion practice. This very motion is evidence of that duplicative briefing. (*See* Mot. To Stay Appeal, *Standard Chartered*, No. 12-01565 (S.D.N.Y. Nov. 12, 2020), ECF No. 129.)

Finally, a stay would not hinder progress in related cases. In order to plead a lack of good faith against RBC and the other subsequent transferees of Sentry, the Trustee must plead the same against the initial transferees, Sentry and Rye. The Trustee has already filed an amended complaint against Sentry's managers, and incorporated by reference those allegations in the PAC. (PAC ¶ 253, incorporating Second Am. Compl., *Picard v. Fairfield Inv. Fund Ltd.*, No. 9-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.) In that case, the parties have agreed to proceed with briefing of a motion to dismiss, which is set to be completed by May 2021. (Scheduling Order, *Picard v. Fairfield Inv. Fund Ltd.*, No. 9-01239 (Bankr. S.D.N.Y. Oct. 21, 2020), ECF No. 289.) If the Court in that matter determines the complaint fails to state a claim, the Trustee will encounter tremendous hurdles to recover from RBC for the Sentry investments, which comprise nearly 50% of the transfers at issue. *See SIPC v. BLMIS*, 501 B.R. 26, 29 (S.D.N.Y. 2013) ("[T]he subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee."); *SIPC v. BLMIS*, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) (noting that "even if the initial (or mediate) transferee fails to raise a Section 546(e) defense against the Trustee's avoidance of certain transfers . . . the subsequent transferee is nonetheless entitled to raise a . . . defense against recovery of those funds"). Additionally, the Trustee is still filing amended complaints in other related proceedings. A stay would permit similarly situated defendants to determine whether there are any additional common issues raised by those proposed amendments that could be briefed and decided by the Court on an omnibus basis.

14

## CONCLUSION

For the reasons set forth above, RBC respectfully requests that the Court stay this adversary proceeding pending the Second Circuit's decision in *Citibank* and *Legacy*.

Dated: November 24, 2020
      New York, New York

**KATTEN MUCHIN ROSENMAN LLP**

/s/ *Anthony L. Paccione*
Anthony L. Paccione
Mark T. Ciani
575 Madison Ave
New York, New York 10026
Telephone: (212) 940-8800
anthony.paccione@katten.com
mark.ciani@katten.com

*Attorneys for Defendants*

15