# EXHIBIT AE

CAROL L. KAMENSTEIN,

Grantor

-and-

DAVID R. KAMENSTEIN,

Trustee

## TRUST AGREEMENT

Dated: *April 11, 1984*

ROBERTS & HOLLAND
60 ROCKEFELLER PLAZA
NEW YORK, N.Y. 10112

AMF00267661

## TRUST AGREEMENT

THIS TRUST AGREEMENT made this 11ᵗʰ day of April, 1984, by and between CAROL L. KAMENSTEIN, herein sometimes called "CAROL," as the Grantor, and DAVID R. KAMENSTEIN, herein sometimes called "DAVID," as the Trustee.

## W I T N E S S E T H:

CAROL desires hereby to create an irrevocable trust, to be known as the "1984 TRACY DARA KAMENSTEIN IRREVOCABLE TRUST," herein sometimes called the "Trust," for the purposes and on the terms and conditions hereinafter set forth. In consideration of the premises and the agreement of the Trustee to accept the Trust, CAROL has contemporaneously with the execution of this Agreement, delivered to the Trustee, the property described in Schedule A hereof, so that CAROL shall hereafter have no interest in, or control over, such property, the receipt of which property the Trustee hereby acknowledges.

TO HAVE AND TO HOLD such property, and such additional property, if any, as may be added to the Trust, in accordance with the terms of this Agreement, IN TRUST, NEVERTHELESS, upon the terms and conditions set forth in this Agreement.

## ARTICLE ONE

### CHARACTER OF TRUST

Section A.    Irrevocability.

The Trust created under this Agreement is irrevocable, and CAROL reserves no powers to alter or amend any provision of this Agreement.

Section B.    Additions.

At any time or from time to time, during CAROL'S lifetime and thereafter, CAROL or any other person may add any kind of real or personal property to the Trust herein created, but only with the Trustee's consent.  Property may be added either during the lifetime of the person doing so, or thereafter, by that person's Will or otherwise. All property added to the Trust shall be commingled with the principal thereof, and held, administered and distributed pursuant to the provisions of this Agreement.

Section C.    No Retained Interest.

CAROL reserves no reversion or other interest in the Trust herein created, or in any property herewith or hereafter transferred to the Trust.

## ARTICLE TWO

### TRUST PROVISIONS

Section A.    Income Until TRACY Attains Age Twenty-One.

Until TRACY DARA KAMENSTEIN ("TRACY"), the daughter

-2-

AMF00267663

of DAVID and CAROL, attains the age of twenty-one (21) years,
the Trustee shall pay to TRACY, or apply for her benefit,
as much of the net income of the Trust as the Trustee in
his sole discretion shall determine. At the end of each
trust year, the Trustee shall add to principal any net in-
come not so paid or applied and thereafter the same shall
be dealt with as principal for all purposes.

Section B.      Income After TRACY Attains Age Twenty-One.

After TRACY attains the age of twenty-one (21)
years and until the Trust held for her benefit terminates,
the Trustee shall pay to TRACY, or apply for her benefit,
the entire net income of the Trust in quarterannual or more
frequent installments as may be convenient to the Trustee.

Section C.      Discretionary Payments of Principal.

The Trustee may, at any time and from time to
time, pay to TRACY, or apply for her benefit, upon such
occasions as the Trustee in his sole discretion shall deem
advisable, so much or all of the principal of the Trust
as the Trustee may deem desirable, even if the exercise
of that discretion exhausts all of such principal and re-
sults in termination of the Trust. Without limiting the
Trustee as to occasion and without requiring him to make
any payment which he deems inadvisable, the Grantor sug-

-3-

AMF00267664

gests that purposes for which amounts of principal might
be paid include higher educational requirements, engagement,
marriage, acquisition of a home, birth of children, commence-
ment of a new business enterprise or continuation of an
existing one, and medical requirements.  In granting discre-
tion to the Trustee to make such payment or payments of
principal, it is the Grantor's desire that such discretion
be liberally exercised when the occasion, whether one previ-
ously specified or not, is such that the interests of TRACY
would be best served thereby.  In determining whether or
not to make any such payment or payments of principal, the
Trustee shall consider only the merits of the proposed pur-
pose of the distribution and he need not (but may) consider:
(1) the obligation of any person or persons for the support
of TRACY; (2) the other assets of TRACY or the income there-
from; and (3) the financial need of TRACY or of the person
or persons obligated for her support.

Section D.     TRACY'S Power to Withdraw Principal.

        1.     Power of Withdrawal.  During each year in
which any person shall transfer property to the Trust, in-
cluding the calendar year of the execution of this Agreement
(each such year being referred to herein as a "transfer
year"), TRACY shall have the absolute right to withdraw

-4-

AMF00267665

from the Trust, at any time during such transfer year, but
no later than thirty (30) days from the date of receipt
of the notice from the Trustee as hereinafter described
in subsection 3 of this Section D, an amount of principal
which, taking into account all prior withdrawals of prin-
cipal during the transfer year by TRACY relating to trans-
fers by such person, is not in excess of the lesser of (i)
the exclusion amount for such person for such transfer year
(as hereinafter defined in subsection 4 of this Section
D) or (ii) an amount equal to all of the transfers (which,
in the case of a transfer of property other than cash, shall
be taken into account at its fair market value at the date
of its transfer to the Trust) made by such person to the
Trust for such transfer year.  Each such right of withdrawal
shall be exercisable by TRACY'S acknowledged written instru-
ment, which shall be delivered to the Trustee; provided,
however, that such right of withdrawal shall terminate at
the close of the transfer year and shall, to the extent
not theretofore exercised by or on behalf of TRACY, there-
after no longer be exercisable by or on behalf of TRACY.

     2.   <u>Trustee's Duty to Notify Beneficiary and Others</u>.
Within ten (10) days after the Trustee receives actual notice
of any such transfer of property by any person to the

AMF00267666

Trust (including any transfer made in the calendar year
of the execution of this Agreement), the Trustee shall,
by written or oral notice, advise TRACY of such transfer
and of TRACY'S right to withdraw principal in accordance
with, and subject to the limitations of, this Section D.

3.   Exclusion Amount.  As used herein, the term
"exclusion amount" for any person for any transfer year
shall mean that amount which, with respect to any particular
transfer year, is excluded from the total amount of gifts
made by such person for such transfer year, within the meaning
of section 2503(b) of the Internal Revenue Code of 1954,
as amended, or any section in amendment or substitution
therefor.

Section E.   Mandatory Payments of Principal
And Termination of Trust.

1.   Mandatory Payments of Principal.  The Trustee
shall be required to make the following payments to TRACY
from the principal of the Trust:

a.   First Payment.  When TRACY attains the
age of twenty-seven (27) years, the Trustee shall pay over
and deliver to TRACY, one-third (1/3) of the then remaining
principal of the Trust.

b.   Second Payment.  When TRACY attains

AMF00267667

the age of thirty-two (32) years, the Trustee shall pay over and deliver to TRACY, one-half (1/2) of the then remaining principal of the Trust.

     c.   <u>Final Payment</u>. When TRACY attains the age of thirty-six (36) years, the Trustee shall pay over and deliver to TRACY any then remaining principal and any accrued or undistributed income of the Trust.

     2.   <u>If TRACY Dies Before Attaining Age Thirty-Six.</u>

If TRACY dies before attaining the age of thirty-six (36) years, the Trust shall terminate and the Trustee shall pay the entire remaining principal, together with all accrued and undistributed income, to TRACY'S issue who survive her, per stirpes; or if there be no such issue, to the then living issue of the Grantor, per stirpes; or if there be no such issue, to TRACY'S father if he survives her; or if TRACY'S father does not survive her, the entire remaining principal, together with all accrued and undistributed income of the Trust shall be distributed to the following, with each receiving the respective percentage of such assets which is hereinafter set forth:

     (i)   To DAVID'S brother, PETER D. KAMENSTEIN, herein sometimes called "PETER", forty percent (40%) if

AMF00267668

he is living when TRACY dies; and, if he is not then living,
to his issue in equal shares, per stirpes;

(ii)   To DAVID'S brother, MICHAEL D. KAMENSTEIN,
herein sometimes called "MICHAEL", forty percent (40%) if
he is living when TRACY dies; and, if he is not then living,
to his issue in equal shares, per stirpes; and

(iii)   To CAROL'S sister, MERYL LANDY CAYTON,
herein sometimes called "MERYL", twenty percent (20%) if
she is living when TRACY dies; and, if she is not then living,
to her issue in equal shares, per stirpes.

If one or more of PETER, MICHAEL or MERYL shall
not survive TRACY and leave no issue surviving TRACY, the
percentage of the remaining principal and income of the
Trust hereinabove set apart for each of PETER, MICHAEL and
MERYL who predeceases TRACY and leaves no issue surviving
TRACY shall be allocated pro rata to the shares of the re-
maining principal and income of the Trust passing hereunder
to any of PETER, issue of PETER, MICHAEL, issue of MICHAEL,
MERYL or issue of MERYL.

## ARTICLE THREE

### DISTRIBUTION TO MINORS AND OTHERS

Section A.   Minors.

If, under any provision of this Agreement, any

-8-

property shall become mandatorily payable to a minor, it
shall vest absolutely in the minor, but the Trustee may
nevertheless elect to pay over such property to a custodian
for such minor under the Uniform Gifts to Minors Act or
to hold all or any part of such property until the minor
attains majority, and to manage, invest and reinvest such
retained property with all of the rights, powers, authori-
ties, duties, privileges, immunities and discretions which
are granted to the Trustee elsewhere in this Agreement.
In that event, the Trustee shall, at any time and from time
to time, pay to, or apply for the benefit of, the minor
so much or all of the net income and principal of such re-
tained property as the Trustee may deem advisable for the
minor's best interests, accumulating any net income not
so paid or applied and, not less frequently than annually,
adding such accumulated net income to principal, to be held,
administered and distributed as a part thereof. When and
if the minor attains majority, the Trustee shall pay over
and deliver such retained property as then constituted to
the minor. If the minor should die before attaining major-
ity, the Trustee shall pay over and deliver such retained
property as then constituted to the minor's executors or
administrators.

AMF00267670

Section B.       Application to Beneficiary.

In applying amounts of income or principal pursu-
ant to any provision of this Agreement for the benefit of
any beneficiary, including a minor or other person under
a legal disability, the Trustee is authorized, in the Trus-
tee's absolute discretion, to expend such amounts for the
benefit of such beneficiary in such one or more of the fol-
lowing methods, as the Trustee may deem advisable from time
to time:

1.  By delivering any such amount to the
natural, general or testamentary guardian of any minor,
or to a custodian for any minor under the Uniform Gifts
to Minors Act, or to the committee, guardian or conservator
of any beneficiary who shall have been adjudicated an incom-
petent; or

2.  By delivering any such amount to any
individual or entity having the care, custody or control
of any such beneficiary, or with whom, or at which, such
beneficiary resides; or

3.  By delivering any such amount to such
beneficiary, personally; or

4.  By making direct expenditures for the

-10-

AMF00267671

benefit of such beneficiary.

The receipt of any such guardian, custodian, com-
mittee, conservator, individual, entity or beneficiary,
or evidence of such payment or expenditure of any such amount
shall be a full and sufficient discharge to the Trustee
for the payment or expenditure thereof, and the Trustee
shall be exonerated from all liability and responsibility
by reason of any amount so delivered, paid or expended,
irrespective of the application or use thereof which may
be made by any such guardian, custodian, committee, conser-
vator, individual, entity or beneficiary, and the Trustee
shall have no duty to see to the application of any such
amount.

## ARTICLE FOUR

## VESTING OF INTERESTS

### Section A.    Simultaneous Deaths.

If a disposition of any property or interest in
property which is made in this Agreement depends upon one
person's surviving another person, and if both of those
persons die under circumstances where there is no sufficient
evidence that they have died otherwise than simultaneously,
the alternate disposition of that property or interest in

AMF00267672

property made herein shall be operative.

## Section B.   Disclaimers and Releases.

    1.   <u>Disclaimers</u>.   Each person having a beneficial interest under this Agreement, or any person authorized by law to act on his behalf, is authorized, at any time and from time to time, to disclaim or renounce all or any part of that interest, regardless of whether such person has previously received any benefits hereunder; provided, however, that no disclaimer shall be effective as such to the extent that, under the law applicable to this Agreement, said person is deemed to have accepted that interest.   In addition to other methods of disclaimer or renunciation recognized by law, a person may disclaim or renounce all or any part of that interest by filing an acknowledged, written instrument to that effect in the office of the clerk of the court having jurisdiction over this Agreement and by delivering a copy of that instrument to any Trustee. The disclaimed interest shall be administered and distributed as expressly provided in this Agreement, as if such person had died immediately preceding the date such interest was created.   Unless that instrument specifically so provides, no disclaimer or renunciation shall affect that person's right to receive any other interest under this Agree-

AMF00267673

ment, whether upon the death of any other person or whether upon a subsequent disclaimer, renunciation or release by any other person.

2.    _Releases_.  Each person having a beneficial interest under this Agreement is authorized, at any time and from time to time, to release all or any part of that interest, regardless of whether such person is deemed, under the law applicable to this Agreement, to have accepted that interest.  In addition to other methods of release recognized by law, a person may release all or any part of that interest by filing an acknowledged, written instrument to that effect in the office of the clerk of the court having jurisdiction over this Agreement and by delivering a copy of that instrument to any Trustee.  The released interest shall be administered and distributed as expressly provided in this Agreement, as if such person had died immediately preceding the date of delivery of such instrument of release. Unless that instrument specifically so provides, no release shall affect that person's right to receive any other interest under this Agreement, whether upon the death of any other person or whether upon a subsequent disclaimer, renunciation or release by any other person.

-13-

AMF00267674

## ARTICLE FIVE

## SPENDTHRIFT PROVISIONS

No person having a beneficial interest under this Agreement may voluntarily or involuntarily alienate, anticipate, assign, encumber, pledge, sell, or otherwise transfer all or any part of that person's interest in trust income or principal, except pursuant to the exercise of the powers granted herein to disclaim and release. No beneficial interest under this Agreement shall be subject to being taken or reached by any attachment, levy, writ or other legal or equitable process to satisfy any claim against, or obligation of, the person having that interest, and no such interest shall be subject to control or interference by any other person. No attempt to dispose of, or to take or reach, any such interest in violation of this spendthrift provision shall be valid or given any effect by any Trustee.

## ARTICLE SIX

## SUCCESSOR TRUSTEES

Section A.   Appointment of Successor Trustees.

    1.   Power to Designate. DAVID is granted the continuing discretionary power to designate one or more

AMF00267675

successor Trustees, other than CAROL, to act, or a succession of successor Trustees other than CAROL, to act one or more at a time, to fill the vacancy in the office of Trustee occurring when he ceases to act as Trustee for any reason. If DAVID ceases to act as Trustee without having designated one or more successor Trustees, or if all of the successor Trustees designated by DAVID shall fail to qualify or, having qualified, shall cease to act as such Trustees, PETER and DAVID'S friend, HARRY BACH (herein sometimes called "HARRY"), shall act as successor Trustees; and if either or both of HARRY and PETER shall fail to qualify or, having qualified, shall cease to act as such Trustees, CAROL'S cousin, THEODORE GINSBERG (herein sometimes called "THEODORE"), shall act as a successor Trustee. Except as otherwise provided in this Section A, if any of PETER, HARRY and THEODORE fails to qualify or, having qualified, ceases to act as such Trustee, the ones remaining shall serve as Trustees without the necessity for any additional appointment. Every successor Trustee hereunder shall have all rights, powers, authorities, duties, privileges, immunities and discretions which are herein granted to DAVID, including the power to designate one or more successor Trustees, other than CAROL, to fill the vacancy in the office of Trustee

-15-

AMF00267676

occurring when said successor Trustee ceases to act as Trustee for any reason, except as otherwise provided herein.

2. <u>Definition</u>. The events which shall result in a person's ceasing to act as a Trustee hereunder shall include the death or resignation of such person, judicial appointment of a conservator of such person's property, or a judicial determination of such person's incompetency.

<u>Section B</u>.   <u>Power to Designate a Co-Trustee</u>.

DAVID and each successor Trustee serving as sole Trustee is authorized in his, her or its absolute discretion, at any time, to designate another individual, other than CAROL, to act as a co-Trustee, with all rights, powers, authorities, duties, privileges, immunities and discretions, including the power to designate one or more successor Trustees, other than CAROL, which are herein granted to any successor Trustee, except as is otherwise provided herein.

<u>Section C</u>.   <u>Manner of Designation</u>.

The power herein granted to a Trustee to designate one or more successor Trustees or co-Trustees shall be exercised by the Trustee to whom such power is granted as follows. Each such designation shall be made by the Trustee's acknowledged, written instrument executed while acting in that

AMF00267677

office, filed with the records of the Trust, a copy of which
shall be delivered to CAROL, if living, or if not, delivered
to TRACY. The persons or institutions so designated as
successor or co-Trustees may accept any such designation
only by an acknowledged, written instrument to that effect
filed with the records of the Trust, a copy of which shall
be delivered to CAROL, if living, or, if not, a copy of
which shall be delivered to TRACY. Any Trustee is author-
ized at any time and from time to time, while acting as
a Trustee, to revoke, alter or amend any designation pre-
viously made by him, by a subsequent acknowledged, written
instrument similarly executed, delivered and filed; provided,
however, that no such revocation or amendment shall affect
the tenure of any co-Trustee who has commenced to serve.
If more than one unrevoked designation is on file, the one
executed last in time shall govern.

Section D.   Resignation.

Every Trustee hereunder is authorized to resign
at any time, for any reason, by an acknowledged, written
instrument to that effect filed with the records of the
Trust, a copy of which shall be delivered to such Trustee's
successors, if any. In addition, a copy of such instrument
shall be delivered to CAROL, if living, or, if CAROL is

-17-

AMF00267678

not living, to TRACY.

## Section E.   Waiver of Bond.

No Trustee, co-Trustee or successor Trustee here-
under shall be required to give any bond or security in
any court or jurisdiction for acting hereunder.

## Section F.   No Compensation.

None of DAVID, PETER, HARRY or THEODORE, while
serving as Trustee, co-Trustee or successor Trustee here-
under, shall receive compensation or commissions of any
kind for acting hereunder, but they shall be entitled to
reimbursement for any expenses incurred in connection with
his administration of any trust created herein.

## ARTICLE SEVEN

## TRUSTEE'S POWERS AND PROVISIONS

## Section A.   Trustee's Powers.

The Trustee is granted all of the following rights,
powers, authorities, privileges and discretions to adminis-
ter each trust herein created, in addition to those granted
elsewhere herein and by applicable law, to be exercised
only in a fiduciary capacity at any time and from time to

-18-

AMF00267679

time within the limits of the rule against perpetuities,
including during the period after the termination of the
Trust and prior to the final distribution of assets, as
the Trustee may determine in the Trustee's absolute discre-
tion to be advisable, without authorization by any court;
and the exercise of all such rights, powers, authorities,
privileges and discretions shall be binding upon, and conclu-
sive against, all persons who are interested in, or who
claim an interest in, the Trust:

1.   Retention.

To retain indefinitely, or for any lesser period,
all or any part of the property of such trust
in the form in which it is received, regardless
of whether such property is authorized by law
for the investment of trust funds, regardless
of any law requiring diversification of trust
investments, without any liability for loss because
of depreciation in value;

2.   Investments.

To invest and reinvest all or any part of the
property of such trust in any kind of real or
personal property, including:  securities; oil,
gas, mineral interests and other natural resources;
commodity futures and foreign exchange; and land,
buildings, mortgages, and other interests in real
estate; to acquire any such investment from any
person, including any beneficiary of such trust,
the estate of any deceased beneficiary, the estate
of the Grantor, or any estate or other trust in
which any beneficiary has an interest; to make
any such investment or reinvestment without regard
to:  (a) the proportion which such investment
may bear to the value of such trust; (b) the rela-
tion such investment may bear to the type or char-

-19-

AMF00267680

acter of the other investments of such trust;
and (c) any law requiring diversification of trust
investments; and to make and retain such invest-
ment even though such investment shall be when
made, or shall thereafter become, unproductive
of income or speculative, and regardless of whe-
ther such investment is authorized by law for
the investment of trust funds, without any liabil-
ity for loss because of depreciation in value;
as used herein, the term "securities" shall be
construed to include, but shall not be limited
to, common, preferred and other classes of capital
stock, regardless of dividend arrearages; warrants,
options, puts and calls; bonds, debentures, notes
and other fixed income-bearing obligations, with
or without conversion privileges, notwithstanding
default in interest; and units of participation
in common trust funds, investment trust stocks
and mutual fund shares; regardless of whether
such securities are:  (i) listed on any stock
exchange or traded in any public market; (ii)
registered with, or approved by, any securities
commission or other governmental regulatory body;
(iii) foreign or domestic; or (iv) subject to
investment letters or other contractual or legal
restrictions on the ownership, retention or dispo-
sition thereof;

3.   **Sales.**

To sell all or any part of the property of such
trust to any person including any beneficiary
of such trust, the estate of any deceased benefi-
ciary, the estate of the Grantor, or any estate
or other trust in which any beneficiary has an
interest, at public or private sale, for cash
or upon credit for any period, regardless of any
law limiting such period, with or without secur-
ity, or partly for cash and partly upon credit,
upon any terms and conditions; similarly to make
exchanges of any such property for other property
of equivalent fair market value, whether or not
of like kind or similar use; to grant options
to sell any such property upon any terms, for
any period, regardless of any law limiting such
period, and regardless of whether any considera-
tion is received for the granting of any such
option; to make short sales of securities, whether
or not owned by such trust, and to borrow an equi-
valent amount of securities with which to make
any short sale;

AMF00267681

4.   Securities.

To exercise all rights and powers over all of
the securities constituting all or any part of
the property of such trust which could be exer-
cised by persons owning similar securities in
their own right, including powers:  to vote on
any proposition or election at any meeting of
security holders for any purpose, including the
purpose of electing any Trustee or any employee,
partner or officer of any Trustee as a director
or as an officer of any corporation; the secur-
ities of which constitute all or any part of the
property of such trust; to grant discretionary
proxies to vote at any such meeting, with or with-
out power of substitution; to consent to, join
in, become a party to or oppose any reorganization,
readjustment, recapitalization, foreclosure, merger,
voting trust, dissolution, consolidation, exchange,
sale of assets or other corporate action, and
to deposit any securities with any protective,
reorganization or similar committee, depositary
or trustee, and to pay from the property of such
trust all fees, expenses, assessments and other
charges incurred in such connection; to exercise
warrants, options and conversion, subscription
or other rights, and to make any necessary pay-
ments in connection therewith from the property
of such trust, or to sell any such rights, or
to refrain from exercising any such rights, per-
mitting them to expire; to borrow funds with which
to exercise any such rights, and to secure any
loan so incurred by pledge of the securities ac-
quired thereby or by pledge of any other property
of such trust; to give investment letters and
other assurances in connection with the acquisi-
tion of any securities, and to rely upon advice
of counsel in disposing of any securities subject
to investment letters or other restrictions; to
receive and retain as a trust investment any new
securities or other property distributed as a
result of any of the foregoing;

-21-

AMF00267682

5.   Property Management.

To hold securities or other property either in
the name of a nominee without indicating the fidu-
ciary character thereof, unregistered, or in such
form that title will pass by delivery; to possess,
manage, operate, develop, subdivide, dedicate
for public use, demolish, construct, reconstruct,
exchange, partition, repair, alter, improve and
change, structurally or otherwise, any realty
or personalty constituting all or any part of
the property of such trust; to mortgage any such
property and to modify, renew, extend, reduce,
pay off and satisfy mortgages on such property
and any installments of principal or interest
due thereon, and to waive any defaults; to continue
any mortgage after maturity, with or without re-
newal or extension, upon any terms, and to fore-
close any mortgage; to purchase any mortgaged
property or to acquire any mortgaged property
by deed from the mortgagor in lieu of foreclosure;
to permit any such property to be lost by tax
sale, foreclosure or other proceeding; to abandon,
destroy or convey at nominal consideration or
without consideration any property which is, or
has become, worthless, hazardous, subject to con-
fiscatory taxation or of insufficient value to
warrant keeping or protecting, and thereafter
to have no further responsibility to keep informed
as to the status of any such property; to grant
or release easements or charges of any kind, for
any period, regardless of whether any considera-
tion is received for such grant; to insure any
property of such trust against any risks, hazards
and liabilities; to lease any property of such
trust and to renew or extend leases upon any terms
and for any period, including a period extending
beyond the probable or actual term of such trust,
regardless of any law limiting such period; to
amend, change or modify leases; to grant options
to lease and options to renew leases for any per-
iod, regardless of whether any consideration is

-22-

received for the granting of any such option;
and to pay from the property of such trust all
expenses incurred in connection with any of the
foregoing;

6.   Business Interests.

To form one or more corporations, alone or with
others, in any jurisdiction, and to transfer all
or any part of the property of such trust to any
such corporation in exchange for the securities
or obligations of such corporation; to form one
or more partnerships in any jurisdiction, in which
such trust shall be either a general or limited
partner, and to transfer all or any part of the
property of such trust to any such partnership
as a capital contribution; to delegate to the
board of directors or to one or more officers
of any such corporation, or to one or more part-
ners of any such partnership, any powers, author-
ities and discretions; to enter into joint ventures
or associations with others on any terms; to enter
into, modify or terminate agreements respecting
voting rights, management, retention or disposi-
tion of any corporation or partnership or interest
therein constituting all or any part of the prop-
erty of such trust; to continue any business in
which the Grantor had an interest; or to dispose
of any such business on any terms and conditions,
without any liability for loss because of depre-
ciation in value;

7.   Lending.

To lend any part of the property of such trust
to any person, including any beneficiary of such
trust, the estate of any deceased beneficiary,
or any estate or other trust in which any benefi-
ciary has an interest, upon any reasonable terms
and conditions, for any period, with or without
security, for any purpose whatsoever; provided,
however, that no loan of principal or income shall
be made to the Grantor for any purpose;

8.   Borrowing.

To borrow funds on behalf of such trust from any

-23-

AMF00267684

person, including any Trustee, any beneficiary
of such trust, the estate of any deceased benefi-
·ciary, or any estate or other trust in which any
beneficiary has an interest; upon any terms and
conditions, for any period, for any purpose con-
nected with the protection, preservation or im-
provement of any property of such trust, for in-
vestment purposes, for the purpose of paying taxes
and expenses, or for the purpose of making any·
distribution to a beneficiary which is authorized
herein; to renew, modify or extend existing loans
on similar or different terms; to mortgage or
otherwise pledge property of such trust as security
for the repayment of such borrowing;

9.   **Banking.**

To open and maintain one or more interest-bearing
or non-interest-bearing accounts with any bank
or trust company, including any Trustee, or any·
savings and loan association or building and loan
association; to deposit all or any part of the
property of such trust to the credit of any such
account, and to permit such property to remain
on deposit in any such account without being li-
able for any loss of income; to lease one or more
safe deposit boxes for the safekeeping of property
of such trust; to open and maintain one or more
cash or margin accounts with any brokerage firm
or bank or trust company, including any Trustee,
and to conduct, maintain and operate any such
account for the purchase and sale of securities,
commodity futures and foreign exchange, and in
connection therewith, to borrow money, obtain
guarantees, and engage in all other activities
which are necessary or incidental to conduct,
maintain and operate any such account;

10.   **Distributions in Kind.**

To make any division, allocation or distribution
(including the satisfaction of any pecuniary amount)
authorized or directed herein, either wholly or
partly in kind, even though shares be composed
differently; except as is otherwise herein provided,
to determine the fair market value of all property

AMF00267685

so divided, allocated or distributed, to the extent
permitted by law;

11.   Consolidated Holdings.

To hold and invest separate funds held for minors
and separate trusts, if there is more than one,
in one or more consolidated accounts, and to allo-
cate undivided or fractional interests in one
or more assets to each such fund or trust and
to administer all or any part of any trust fund
consolidated with the funds of any other trust
created by the Grantor; provided that separate
records are maintained of the property of each
such fund or trust;

12.   Claims.

To litigate, enforce, abandon, adjust, compromise,
compound, settle, collect, pay, prepay, defer
or discharge any obligation, debt, tax, premium,
dividend, insurance policy, death benefit, claim,
controversy or suit at law or in equity, of what-
soever kind or nature which may exist or arise
against or in favor of such trust, upon any terms
and conditions; to submit any such matter to arbi-
tration, and to agree to be bound thereby; to
extend the time of payment for any such matter
with or without security;

13.   Removal of Assets.

To remove all or any part of the property of such
trust from the jurisdiction which is the situs
of such trust, and to take and keep such property
outside such jurisdiction and in any other place
or places within or outside the United States,
during the term of such trust or for any lesser
period;

14.   Agents.

To employ one or more brokers, agents, accountants,
real estate experts, attorneys, custodians, apprai-
sers, employees, investment advisers and others,
including any Trustee or any employee, partner

-25-

AMF00267686

or officer of any Trustee; regardless of whether
a bank or trust company is acting as a Trustee,
so long as any individual is acting as a Trustee,
the individual Trustee or Trustees are authorized
to employ an investment adviser in addition to
such bank or trust company; to pay from the prop-
erty of such trust all fees, expenses and disburse-
ments thereby incurred, without diminution of
any Trustee's commissions; to act or to refrain
from acting upon the advice or recommendations
received from any such adviser without liability
for any act done or omission made in good faith
in reliance upon such advice or recommendations;

## 15. Delegation.

To delegate to any suitable and appropriate per-
son, firm or corporation, any ministerial duties
in connection with the rights, powers, authorities,
privileges and discretions which are granted here-
in; to delegate to any other Trustee, if there
is one, any of the rights, powers, authorities,
privileges and discretions which are granted here-
in, including power to sign checks and other in-
struments for the payment of money, power to give
orders for the purchase and sale of securities,
and power to have custody of all or any part of
the property of such trust; provided, however,
that any such delegation shall be revocable at
any time by the Trustee making it;

## 16. Conflict of Interest.

To act with respect to any and all property held
in such trust and to manage, invest, dispose of
or retain the same even though any Trustee may
have a personal interest in such property or in
any investment or reinvestment or in any business
or corporation or other entity in which all or
part of the property held in such trust shall
be invested or reinvested, in like manner and
with like immunity from liability as if a complete
stranger thereto; to deal with any Trustee (includ-
ing herself) as an individual, or as a member
of a partnership, or as an officer, stockholder,
director or employee of any corporation or other

-26-

AMF00267687

entity, without liability except for negligence or wrongful misconduct, and the usual rules prohibiting a Trustee from dealing with herself as an individual or with respect to any matter in which she has an interest which is personal or individual shall not apply; to employ any Trustee (including herself), a partnership with which any Trustee (including herself) is associated, or any officer or employee of any corporate Trustee as an attorney or other agent; and to cause any Trustee (including herself), the partners with whom any Trustee (including herself) is associated, any Trustee's employees or any officer or employee of any corporate Trustee hereunder to act as an officer, employee or agent, or in any other capacity, or in more than one such capacity in any corporation whose securities shall be held by any Trustee and to allow such person to vote for such purposes; and to compensate any such person for so acting in addition to any lawful fiduciary fees or commissions to which such person may be entitled for acting as a fiduciary hereunder;

17.   Inventories and Accounts.

To refrain from making annual or other periodic inventories and accounts of the receipts, investments, disbursements and proceedings of such trust, notwithstanding any statute or rule of law requiring such inventories and accounts;

18.   General Powers.

To make any payment, to receive any money, to take any action, and to make, execute, deliver and receive any contract, deed, instrument, or other document which is advisable to exercise any of the foregoing powers or to carry into effect any provision contained herein; and in making any payment or distribution, or in otherwise acting hereunder, to rely upon any notice, certificate, affidavit, letter, telegram, cable or other written instrument which is believed to be genuine.

Section B.   Exculpation of Trustee.

No person, insurer or other entity which shall

-27-

AMF00267688

deal with the Trustee shall be bound to see to the applica-
tion of any money or other property received by the Trustee
or to inquire into the authority for, or propriety of, any
action taken by the Trustee. The Trustee shall not be li-
able for any act or omission in administering any trust
herein created; except that the Trustee shall be liable
for his own actual fraud, gross negligence or willful miscon-
duct. No Trustee shall be responsible for any act or omis-
sion of any other Trustee. If the Trustee becomes liable
as Trustee to any person not beneficially interested in
any trust herein created in connection with matters not
within the Trustee's control and not due to the Trustee's
actual fraud, gross negligence or willful misconduct, the
Trustee shall be entitled to indemnity out of the property
of such trust.

## Section C.  Limitations on Trustees and Others.

No Trustee, who is also a beneficiary of any trust
herein created to whom income or principal may be distrib-
uted currently, shall exercise, or participate in the exer-
cise of, any discretion to pay or apply the net income or
principal of such trust, or to terminate such trust. No
Trustee, who is under a legal obligation to support a bene-
ficiary of any trust herein created to whom income or prin-

AMF00267689

cipal may be distributed currently; shall exercise, or parti-
cipate in the exercise of, any discretion to pay or apply
the net income or principal of such trust in discharge of
that legal obligation. No Trustee shall lend the principal
or income of any trust herein created directly or indirectly
to the Grantor. Notwithstanding Section 7-1.11 of the Estates,
Powers and Trusts Law of New York or any other comparable
provision of law, no Trustee shall have the power to pay
to the creator of this trust any amount, whether as reim-
bursement for income taxes or otherwise. No person shall
be enabled to purchase, exchange or otherwise deal with
or dispose of the principal or income of any trust herein
created for less than an adequate consideration in money
or money's worth. No person acting in a nonfiduciary capac-
ity shall have any power to vote or direct the voting of
any stock or other securities constituting all or any part
of the property of any trust herein created; to direct invest-
ments or reinvestments, or veto proposed investments or
reinvestments, of any property constituting all or any part
of the property of any such trust; or to reacquire all or
any part of the property of any such trust by substituting
other property of equivalent value. The foregoing limita-
tions shall prevail over any conflicting or apparently con-
flicting provisions of this Agreement.

AMF00267690

Section. D.   Release of Powers.

Every Trustee hereunder may disclaim or release, in whole or in part, any power given to such Trustee with respect to the Trust herein created by filing with the records of the Trust an acknowledged written instrument containing such disclaimer or release and by delivering a copy thereof to CAROL, if living, and, if CAROL is not living, to TRACY.

Section E.   Non-Judicial Accounting.

To avoid the expenses and delay incident to a judicial settlement of the Trustee's accounts, the Trustee is authorized to render informal accounts of proceedings as Trustee of any trust herein created, to each beneficiary of such trust not under any legal disability, and to the executors or administrators of each deceased beneficiary who was a beneficiary during all or any portion of the period accounted for.  The beneficiaries and executors or administrators of deceased beneficiaries to whom such account shall be rendered shall have full power to settle finally any such account and on the basis of such account, to release the Trustee, individually and as Trustee, from all liability, responsibility or accountability for the Trus-

-30-

AMF00267691

tee's acts or omissions as Trustee; provided, however, that
such settlement shall not affect any claim that any person
beneficially interested in such trust may have against any
other person beneficially interested in such trust by reason
of the administration of such trust.  Such settlement and
release of the Trustee shall be binding upon all benefici-
aries and others interested in or claiming an interest in
such trust, even if then under any legal disability or not
as yet in being, and shall have the force and effect of
a final decree, judgment or order of a court of competent
jurisdiction rendered in an appropriate action or proceeding
for an accounting in which jurisdiction was obtained of
all necessary and proper parties; provided, however, that
nothing in this Section E shall be deemed to preclude the
Trustee from having a judicial settlement of the Trustee's
transactions, if the Trustee shall deem it advisable.  As
used in this Section E, the term "beneficiary" shall mean
a person to whom the Trustee is currently authorized or
directed to pay or apply all or any portion of the net in-
come or principal of any trust created herein.


## ARTICLE EIGHT

### CONSTRUCTION PROVISIONS


Section A.    Trustee.

As used herein, the term "Trustee" shall include

AMF00267692

the Trustee and all successor Trustees and co-Trustees named
herein or otherwise designated or appointed, and to mean
the plural form thereof whenever the facts and context re-
quire.

### Section B.   Child, Children, Issue.

It is expressly intended in this Agreement that
any individual who is not included in the terms child, chil-
dren or issue, as hereinafter defined, shall be excluded
from any and all gifts and other dispositions to a child,
children or issue under this Agreement or pursuant to any
provisions of law.

1.   Child or Children.   The term "child" or
"children" of any person shall be construed to mean only
that person's natural legitimate descendant or descendants
in the first degree, and such term shall not include that
person's adopted or illegitimate descendant or descendants
in the first degree.

2.   Issue.   The term "issue" of any person shall
be construed to mean only that person's natural legitimate
descendants in any degree, and such term shall not include
(a) that person's adopted or illegitimate descendants in
any degree or (b) a legitimate descendant (whether adopted
or natural) in any degree of an adopted or illegitimate
descendant in any degree of that person.

AMF00267693

<u>Section C.</u>   <u>Beneficiary.</u>

At any particular time of determination, the term "beneficiary" shall mean a person to whom the Trustee is then authorized or directed to pay or apply all or any portion of the net income or principal of the Trust.

<u>Section D.</u>   <u>Applicable Law.</u>

All questions pertaining to the validity, construction and administration of this Agreement and of any trust herein created, shall be determined in accordance with the laws of the State of New York.

<u>Section E.</u>   <u>Headings.</u>

The headings, titles and subtitles herein are inserted solely for convenient reference, and shall be ignored in any construction hereof.


IN WITNESS WHEREOF, this Trust Agreement has been executed in triplicate on the day and year first above written.

_____ (L.S.)
CAROL L. KAMENSTEIN, Grantor

_____ (L.S.)
DAVID R. KAMENSTEIN, Trustee


-33-

AMF00267694

SCHEDULE A

TO

1984 TRACY DARA KAMENSTEIN IRREVOCABLE TRUST


TRUST AGREEMENT dated the 11th day of April, 1984, by and between CAROL L. KAMENSTEIN, as Grantor, and DAVID R. KAMENSTEIN, as Trustee.


One hundred dollars each


_____
CAROL L. KAMENSTEIN, Grantor

_____
DAVID R. KAMENSTEIN, Trustee

AMF00267695

STATE OF NEW YORK )
                  :   ss.:
COUNTY OF NEW YORK)

On this 11th day of April , 1984, before me personally appeared CAROL L. KAMENSTEIN, to me known and known to me to be the person mentioned and described in, and who executed the foregoing instrument, and she duly acknowledged to me that she executed the same.

_____
Notary Public

LIONEL ETRA
Notary Public, State of New York
No. 31-1135475
Qualified in New York County
Commission Expires March 30, 1985

STATE OF NEW YORK )
                  :   ss.:
COUNTY OF NEW YORK)

On this 11th day of April , 1984, before me personally appeared DAVID R. KAMENSTEIN, to me known and known to me to be the person mentioned and described in, and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

_____
Notary Public

LIONEL ETRA
Notary Public, State of New York
No. 31-1135475
Qualified in New York County
Commission Expires March 30, 1985

AMF00267696