# EXHIBIT F

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue  New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

TAX ID NO.                                    ACCT# ASSIGNED

<span style="color:red">REDACTED</span>                    _____1CM5916_____

Mr./Mrs./Ms.  TRACY  D.  KAMENSTEIN
NAME

400   S.   OCEAN   BLVD.
STREET

PALM   BEACH,   FL.              33480
CITY                          STATE              ZIP

(561) 655-1126          (561) 833-4055
TEL. NUMBER          BUSINESS          RESIDENCE

REG. REP___L. Schoenheimer_____

WE DEEM THE QUESTIONS CONTAINED IN THIS SECTION TO BE REQUIRED BY THE
"KNOW YOUR CUSTOMER" RULE OF THE NATIONAL ASSOCIATION OF SECURITY
DEALERS, AND, THEREFORE, MUST BE ANSWERED IN FULL.

RESIDENCE  400  S.  OCEAN  BLVD

___PALM   BEACH,   FL,   33480___
NAME OF EMPLOYER (IF HOUSEWIFE, NAME THE HUSBAND'S EMPLOYER)
      TRACY   DARA   KAMENSTEIN,   INC
EMPLOYER'S ADDRESS  235 A  WORTH  AV.    PALM  BEACH, FL 33480

OCCUPATION  JEWELER

BANK REFERENCE AND ADDRESS FIRST  UNION   COCOANUT  ROW  PALM BEACH, FL.
                                                                33480
OTHER BROKERAGE ACCOUNTS  CIBC   OPPENHEIMER , TUCKER ANTHONY

CLIENT  INTRODUCED BY_____

### FOR OFFICE USE ONLY

R R.'S ESTIMATE OF CLIENTS NET WORTH _____

IS CLIENT OVER 21 YEARS OF AGE          YES_____   NO_____

HOW LONG HAVE YOU KNOWN CLIENT_____

CLIENT IS CITIZEN OF_____

APPROVED BY_____

DATE SENT TO CLIENT                    DATE SENT TO CLIENT

MARGIN AGREEMENT  _____        MAIL WAIVER FORM  _____
JOINT AGREEMENT  _____         MULTIPLE A/C FORM  _____
CORPORATE ACCOUNT FORM _____      CORPORATE RESOLUTION_____
CO-PARTNERSHIP FORM  _____

Affiliated with:
Madoff Securities International Ltd.
12 Berkeley Street, Mayfair, London W1X 5AD.0171-493 6222

AMF00267652

Bernie: 10/18/99
This acct opened
on 9/7/99 with
$1,782,332, to
close acct. of
Tracy + Sloan
Kamenstein Jt
WROS; To close
that acct (50%
of equity bal in
orig. acct. to
ea.) Pls sign
by

AMF00267653

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

Congress has mandated that all interest and dividend payers including banks, corporations and funds must withhold 10% of all dividends or Interest paid UNLESS you complete and return the form at the bottom of this page.

### Important New Tax Information

"Under the Federal income tax law, you are subject to certain penalties as well as withholding of tax at a 20% rate if you have not provided us with your correct social security number or other taxpayer identification number. Please read this notice carefully.

You (as a payee) are required by law to provide us (as payer) with your correct taxpayer identification number. If you are an individual, your taxpayer identification is your social security number. If you have not provided us with your correct taxpayer identification number, you may be subject to a $50 penalty imposed by the Internal Revenue Service. In addition, divided payments that we make to you may be subject to backup withholding starting on January 1, 1984.

Backup withholding is different from the 10% withholding on interest and dividends that was repealed in 1983. If backup withholding applies, payer is required to withhold 20% of dividend payments made to you. Backup withholding is not an additional tax. Rather, the tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of taxes, a refund may be obtained".

Please sign the form and return it to us.

Even if you have already provided this information it is required by the IRS that all information requested below be provided again.

Thank you for your cooperation.

------------------------------------------------

SUBSTITUTE INTERNAL REVENUE SERVICE FORM W-9

Account Number(s): _____                    Taxpayer Identification Number:

_____                    **REDACTED**

Name: TRACY  O.  KAMENSTEIN

Address: 400  S. OCEAN  BLVD        PALM  BEACH, FL  33480

(Signature) _____

"Under penalties of perjury, I certify that the number shown
On this form is my correct Taxpayer Identification Number".

Please fill in your name, address, taxpayer identification number, and sign above.

Affiliated with:
Madoff Securities International Ltd.
12 Berkeley Street, Mayfair, London W1X 5AD.0171-493 6222

AMF00267654

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue  New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## TRADING AUTHORIZATION LIMITED TO PURCHASES
## AND SALES OF SECURITIES AND OPTIONS

To Whom It May Concern:

The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds, options and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon. However, in no event will the losses exceed my investment.

In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and  with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at 885 Third Avenue but such revocation shall not affect any liability in any way resulting from transaction initiated prior to such revocation.  This authorization and indemnity shall enure to the benefit of your present firm and any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated, *August 23, 1999*

_____PALM BEACH_____   _____FLORIDA_____
(City)                                  (State)

Very truly yours, _____ ( Trustee )_____
(Client Signature)

Signature of Authorized Agent: _____

Affiliated with:
Madoff Securities International Ltd.
12 Berkeley Street, Mayfair, London W1X 5AD.0171-493 6222



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue  New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

# OPTION AGREEMENT

TO:  BERNARD L. MADOFF INVESTMENT SECURITIES

In order to induce you to carry accounts ("Option Accounts") for me (however designated) for transactions in option contracts (including, without limitations, purchase, sale, transfer, exercise and endorsement) ("Option Transaction"), I hereby warrant, represent and agree with you as set forth below on this Option Agreement.

1.     I understand, and am well aware, that option trading may be highly speculative in nature. I am also aware that on certain days, option trading may cease and this could result in a financial loss to me.  I agree to hold  BERNARD L. MADOFF, its other  Divisions,  and its officers, Directors and Agents  harmless for such loss.

2.     I understand that any option transaction  made for any account  of mine is  subject  to the  rules, regulations, customs and usages of The Options Clearing Corporation  and of the registered national  securities exchange,  national securities  association,  clearing  organization or market where  such transaction  was executed. I agree to  abide by such  rules, regulations, custom and usages and  I agree that,  acting individually or in concert with others, I will not exceed any applicable  position  or  exercise  limits  imposed  by  such  exchange,  association,  clearing organization or other market with respect  to option trading.

3.     If I do not satisfy, on a timely basis, your money or security calls,  you  are authorized in your sole discretion and without notification, to take  any and all steps you deem necessary to protect yourself (for any reason)  in connection with option transactions for my account including the right  to buy and/or sell (including short or short exempt) for my  account and risk any part or all of the shares represented by options  handled, purchased, sold and/or endorsed by you for my account or to buy  for my account and risk any option as you may  deem necessary or appropriate.  Any and all expenses or losses incurred in this connection  will be reimbursed by me.

4.     In addition to the terms and conditions  hereof,  my option account will be subject to all of the terms and conditions of all other agreements heretofore or hereafter at any time entered into with you relating to the  purchase and sale of securities  and commodities except to the extent that such other agreements are contrary to  or inconsistent herewith.

Affiliated with:
Madoff Securities International Ltd.
12 Berkeley Street, Mayfair, London W1X 5AD.0171-493 6222

AMF00267656

5.   This agreement shall apply to all puts or call which you may have executed, purchased, sold or handled for any account of mine and also shall apply to all puts, or calls which you may hereafter purchase, sell, handle or execute for any account of mine.

6.   I have received from BERNARD L. MADOFF the most recent risk disclosure documents entitled "Understanding the Risks and Uses of Listed Options", "Listed Options on Stock Indices", "Listed Options on Foreign Currencies", and "Listed Options in Debt Instruments". I have read and understand the information contained in these documents.

7.   I understand that you assign exercise notices on a random basis except that with respect to options on the following debt instruments: Treasury Bonds, Treasury Notes, Treasury Bills and GNMAS, you may preferentially assign exercises of block-size (i.e. covering $1,000,000 or more of underlying securities) to block-size writing positions and you may preferentially assign smaller exercises to smaller writing positions. I understand that upon my request you will provide me with further information regarding the procedure used to assign exercise notices.

DATED _August 23, 1999_                          ACCOUNT NO._____

SIGNATURES

(If a Corporation)                               (If Individuals)

_____                          _____
(Name of Corporation)

By_____                         _____
                                                 (Second Party if Joint Account)

Title_____                        (If a Partnership)

                                                 _____
                                                 (Name of Partnership)

        SEAL

                                                 By_____
                                                    (A Partner)

AMF00267657

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 13 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00267658

**7. BROKER AS AGENT**

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

**8. CONFIRMATIONS AND STATEMENTS**

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

**9. SUCCESSORS**

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall enure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

**10. CHOICE OF LAWS**

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _____ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _____

**11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION**

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

**12. ARBITRATION DISCLOSURES**

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

AMF00267659



**13. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 10, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**14. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

___ Yes, I do object to the disclosure of information.

___ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X) _Jony Kurnot (Trustee)_ _August 23, 1999_      (X) _____

(Customer Signature/date)      (Customer Signature/date)

_400 S. OCEAN BLVD._      _____

(Customer Address)      (Account Number)

_PALM BEACH, FL. 33480_

AMF00267660

CAROL L. KAMENSTEIN,

                                        Grantor

-and-

DAVID R. KAMENSTEIN,

                                        Trustee

TRUST AGREEMENT

Dated: *April 11, 1984*

ROBERTS & HOLLAND
60 ROCKEFELLER PLAZA
NEW YORK, N.Y. 10112

AMF00267661

## TRUST AGREEMENT

THIS TRUST AGREEMENT made this 11th day of April, 1984, by and between CAROL L. KAMENSTEIN, herein sometimes called "CAROL," as the Grantor, and DAVID R. KAMENSTEIN, herein sometimes called "DAVID," as the Trustee.

## W I T N E S S E T H:

CAROL desires hereby to create an irrevocable trust, to be known as the "1984 TRACY DARA KAMENSTEIN IRREVO-CABLE TRUST," herein sometimes called the "Trust," for the purposes and on the terms and conditions hereinafter set forth.  In consideration of the premises and the agreement of the Trustee to accept the Trust, CAROL has contempora-neously with the execution of this Agreement, delivered to the Trustee, the property described in Schedule A hereof, so that CAROL shall hereafter have no interest in, or con-trol over, such property, the receipt of which property the Trustee hereby acknowledges.

TO HAVE AND TO HOLD such property, and such addi-tional property, if any, as may be added to the Trust, in accordance with the terms of this Agreement, IN TRUST, NEVER-THELESS, upon the terms and conditions set forth in this Agreement.

AMF00267662

## ARTICLE ONE

## CHARACTER OF TRUST

Section A.    Irrevocability.

The Trust created under this Agreement is irrevo-
cable, and CAROL reserves no powers to alter or amend any
provision of this Agreement.

Section B.    Additions.

At any time or from time to time, during CAROL'S
lifetime and thereafter, CAROL or any other person may add
any kind of real or personal property to the Trust herein
created, but only with the Trustee's consent.  Property
may be added either during the lifetime of the person doing
so, or thereafter, by that person's Will or otherwise.
All property added to the Trust shall be commingled with
the principal thereof, and held, administered and distrib-
uted pursuant to the provisions of this Agreement.

Section C.    No Retained Interest.

CAROL reserves no reversion or other interest
in the Trust herein created, or in any property herewith
or hereafter transferred to the Trust.

## ARTICLE TWO

## TRUST PROVISIONS

Section A.    Income Until TRACY Attains Age Twenty-One.

Until TRACY DARA KAMENSTEIN ("TRACY"), the daughter

-2-

AMF00267663

of DAVID and CAROL, attains the age of twenty-one (21) years,
the Trustee shall pay to TRACY, or apply for her benefit,
as much of the net income of the Trust as the Trustee in
his sole discretion shall determine. At the end of each
trust year, the Trustee shall add to principal any net in-
come not so paid or applied and thereafter the same shall
be dealt with as principal for all purposes.

Section B.      Income After TRACY Attains Age Twenty-One.

After TRACY attains the age of twenty-one (21)
years and until the Trust held for her benefit terminates,
the Trustee shall pay to TRACY, or apply for her benefit,
the entire net income of the Trust in quarterannual or more
frequent installments as may be convenient to the Trustee.

Section C.      Discretionary Payments of Principal.

The Trustee may, at any time and from time to
time, pay to TRACY, or apply for her benefit, upon such
occasions as the Trustee in his sole discretion shall deem
advisable, so much or all of the principal of the Trust
as the Trustee may deem desirable, even if the exercise
of that discretion exhausts all of such principal and re-
sults in termination of the Trust. Without limiting the
Trustee as to occasion and without requiring him to make
any payment which he deems inadvisable, the Grantor sug-

-3-

AMF00267664

gests that purposes for which amounts of principal might
be paid include higher educational requirements, engagement,
marriage, acquisition of a home, birth of children, commence-
ment of a new business enterprise or continuation of an
existing one, and medical requirements.  In granting discre-
tion to the Trustee to make such payment or payments of
principal, it is the Grantor's desire that such discretion
be liberally exercised when the occasion, whether one previ-
ously specified or not, is such that the interests of TRACY
would be best served thereby.  In determining whether or
not to make any such payment or payments of principal, the
Trustee shall consider only the merits of the proposed pur-
pose of the distribution and he need not (but may) consider:
(1) the obligation of any person or persons for the support
of TRACY; (2) the other assets of TRACY or the income there-
from; and (3) the financial need of TRACY or of the person
or persons obligated for her support.

Section D.        TRACY'S Power to Withdraw Principal.

        1.     Power of Withdrawal.  During each year in
which any person shall transfer property to the Trust, in-
cluding the calendar year of the execution of this Agreement
(each such year being referred to herein as a "transfer
year"), TRACY shall have the absolute right to withdraw

-4-

AMF00267665

from the Trust, at any time during such transfer year, but
no later than thirty (30) days from the date of receipt
of the notice from the Trustee as hereinafter described
in subsection 3 of this Section D, an amount of principal
which, taking into account all prior withdrawals of prin-
cipal during the transfer year by TRACY relating to trans-
fers by such person, is not in excess of the lesser of (i)
the exclusion amount for such person for such transfer year
(as hereinafter defined in subsection 4 of this Section
D) or (ii) an amount equal to all of the transfers (which,
in the case of a transfer of property other than cash, shall
be taken into account at its fair market value at the date
of its transfer to the Trust) made by such person to the
Trust for such transfer year.  Each such right of withdrawal
shall be exercisable by TRACY'S acknowledged written instru-
ment, which shall be delivered to the Trustee; provided,
however, that such right of withdrawal shall terminate at
the close of the transfer year and shall, to the extent
not theretofore exercised by or on behalf of TRACY, there-
after no longer be exercisable by or on behalf of TRACY.

    2.   <u>Trustee's Duty to Notify Beneficiary and Others</u>.
Within ten (10) days after the Trustee receives actual notice
of any such transfer of property by any person to the

-5-

AMF00267666

Trust (including any transfer made in the calendar year
of the execution of this Agreement), the Trustee shall,
by written or oral notice, advise TRACY of such transfer
and of TRACY'S right to withdraw principal in accordance
with, and subject to the limitations of, this Section D.

3.   Exclusion Amount.  As used herein, the term
"exclusion amount" for any person for any transfer year
shall mean that amount which, with respect to any particular
transfer year, is excluded from the total amount of gifts
made by such person for such transfer year, within the meaning
of section 2503(b) of the Internal Revenue Code of 1954,
as amended, or any section in amendment or substitution
therefor.

Section E.   Mandatory Payments of Principal
And Termination of Trust.

1.   Mandatory Payments of Principal.  The Trustee
shall be required to make the following payments to TRACY
from the principal of the Trust:

a.   First Payment.  When TRACY attains the
age of twenty-seven (27) years, the Trustee shall pay over
and deliver to TRACY, one-third (1/3) of the then remaining
principal of the Trust.

b.   Second Payment.  When TRACY attains

-6-

AMF00267667

the age of thirty-two (32) years, the Trustee shall pay
over and deliver to TRACY, one-half (1/2) of the then re-
maining principal of the Trust.

        c.   **Final Payment.**  When TRACY attains the
age of thirty-six (36) years, the Trustee shall pay over
and deliver to TRACY any then remaining principal and any
accrued or undistributed income of the Trust.

       2.   <u>If TRACY Dies Before Attaining Age Thirty-
Six.</u>

      If TRACY dies before attaining the age of thirty-
six (36) years, the Trust shall terminate and the Trustee
shall pay the entire remaining principal, together with
all accrued and undistributed income, to TRACY'S issue who
survive her, per stirpes; or if there be no such issue,
to the then living issue of the Grantor, per stirpes; or
if there be no such issue, to TRACY'S father if he survives
her; or if TRACY'S father does not survive her, the entire
remaining principal, together with all accrued and undis-
tributed income of the Trust shall be distributed to the
following, with each receiving the respective percentage
of such assets which is hereinafter set forth:

       (i)  To DAVID'S brother, PETER D. KAMENSTEIN,
herein sometimes called "PETER", forty percent (40%) if

AMF00267668

he is living when TRACY dies; and, if he is not then living, to his issue in equal shares, per stirpes;

(ii)   To DAVID'S brother, MICHAEL D. KAMENSTEIN, herein sometimes called "MICHAEL", forty percent (40%) if he is living when TRACY dies; and, if he is not then living, to his issue in equal shares, per stirpes; and

(iii)   To CAROL'S sister, MERYL LANDY CAYTON, herein sometimes called "MERYL", twenty percent (20%) if she is living when TRACY dies; and, if she is not then living, to her issue in equal shares, per stirpes.

If one or more of PETER, MICHAEL or MERYL shall not survive TRACY and leave no issue surviving TRACY, the percentage of the remaining principal and income of the Trust hereinabove set apart for each of PETER, MICHAEL and MERYL who predeceases TRACY and leaves no issue surviving TRACY shall be allocated pro rata to the shares of the remaining principal and income of the Trust passing hereunder to any of PETER, issue of PETER, MICHAEL, issue of MICHAEL, MERYL or issue of MERYL.

## ARTICLE THREE

## DISTRIBUTION TO MINORS AND OTHERS

Section A.   Minors.

If, under any provision of this Agreement, any

-8-

AMF00267669

property shall become mandatorily payable to a minor, it
shall vest absolutely in the minor, but the Trustee may
nevertheless elect to pay over such property to a custodian
for such minor under the Uniform Gifts to Minors Act or.
to hold all or any part of such property until the minor
attains majority, and to manage, invest and reinvest such
retained property with all of the rights, powers, authori-
ties, duties, privileges, immunities and discretions which
are granted to the Trustee elsewhere in this Agreement.
In that event, the Trustee shall, at any time and from time
to time, pay to, or apply for the benefit of, the minor
so much or all of the net income and principal of such re-
tained property as the Trustee may deem advisable for the
minor's best interests, accumulating any net income not
so paid or applied and, not less frequently than annually,
adding such accumulated net income to principal, to be held,
administered and distributed as a part thereof. When and
if the minor attains majority, the Trustee shall pay over
and deliver such retained property as then constituted to
the minor. If the minor should die before attaining major-
ity, the Trustee shall pay over and deliver such retained
property as then constituted to the minor's executors or
administrators.

AMF00267670

Section B:      Application to Beneficiary.

In applying amounts of income or principal pursu-
ant to any provision of this Agreement for the benefit of
any beneficiary, including a minor or other person under
a legal disability, the Trustee is authorized, in the Trus-
tee's absolute discretion, to expend such amounts for the
benefit of such beneficiary in such one or more of the fol-
lowing methods, as the Trustee may deem advisable from time
to time:

1. By delivering any such amount to the
natural, general or testamentary guardian of any minor,
or to a custodian for any minor under the Uniform Gifts
to Minors Act, or to the committee, guardian or conservator
of any beneficiary who shall have been adjudicated an incom-
petent; or

2. By delivering any such amount to any
individual or entity having the care, custody or control
of any such beneficiary, or with whom, or at which, such
beneficiary resides; or

3. By delivering any such amount to such
beneficiary, personally; or

4. By making direct expenditures for the

-10-

AMF00267671

benefit of such beneficiary.

The receipt of any such guardian, custodian, com-
mittee, conservator, individual, entity or beneficiary,
or evidence of such payment or expenditure of any such amount
shall be a full and sufficient discharge to the Trustee
for the payment or expenditure thereof, and the Trustee
shall be exonerated from all liability and responsibility
by reason of any amount so delivered, paid or expended,
irrespective of the application or use thereof which may
be made by any such guardian, custodian, committee, conser-
vator, individual, entity or beneficiary, and the Trustee
shall have no duty to see to the application of any such
amount.

## ARTICLE FOUR

### VESTING OF INTERESTS

Section A.    Simultaneous Deaths.

If a disposition of any property or interest in
property which is made in this Agreement depends upon one
person's surviving another person, and if both of those
persons die under circumstances where there is no sufficient
evidence that they have died otherwise than simultaneously,
the alternate disposition of that property or interest in

AMF00267672

property made herein shall be operative.

## Section B.   Disclaimers and Releases.

1.   <u>Disclaimers</u>.  Each person having a beneficial
interest under this Agreement, or any person authorized
by law to act on his behalf, is authorized, at any time
and from time to time, to disclaim or renounce all or any
part of that interest, regardless of whether such person
has previously received any benefits hereunder; provided,
however, that no disclaimer shall be effective as such to
the extent that, under the law applicable to this Agreement,
said person is deemed to have accepted that interest.  In
addition to other methods of disclaimer or renunciation
recognized by law, a person may disclaim or renounce all
or any part of that interest by filing an acknowledged,
written instrument to that effect in the office of the clerk
of the court having jurisdiction over this Agreement and
by delivering a copy of that instrument to any Trustee.
The disclaimed interest shall be administered and distribu-
ted as expressly provided in this Agreement, as if such
person had died immediately preceding the date such interest
was created.  Unless that instrument specifically so pro-
vides, no disclaimer or renunciation shall affect that per-
son's right to receive any other interest under this Agree-

-12-

AMF00267673

ment, whether upon the death of any other person or whether
upon a subsequent disclaimer, renunciation or release by
any other person.

2.   <u>Releases</u>.   Each person having a beneficial
interest under this Agreement is authorized, at any time
and from time to time, to release all or any part of that
interest, regardless of whether such person is deemed, under
the law applicable to this Agreement, to have accepted that
interest.   In addition to other methods of release recog-
nized by law, a person may release all or any part of that
interest by filing an acknowledged, written instrument to
that effect in the office of the clerk of the court having
jurisdiction over this Agreement and by delivering a copy
of that instrument to any Trustee.   The released interest
shall be administered and distributed as expressly provided
in this Agreement, as if such person had died immediately
preceding the date of delivery of such instrument of release.
Unless that instrument specifically so provides, no release
shall affect that person's right to receive any other in-
terest under this Agreement, whether upon the death of any
other person or whether upon a subsequent disclaimer, renun-
ciation or release by any other person.

AMF00267674

## ARTICLE FIVE

### SPENDTHRIFT PROVISIONS

No person having a beneficial interest under this
Agreement may voluntarily or involuntarily alienate, antici-
pate, assign, encumber, pledge, sell, or otherwise transfer
all or any part of that person's interest in trust income
or principal, except pursuant to the exercise of the powers
granted herein to disclaim and release. No beneficial inter-
est under this Agreement shall be subject to being taken
or reached by any attachment, levy, writ or other legal
or equitable process to satisfy any claim against, or obliga-
tion of, the person having that interest, and no such inter-
est shall be subject to control or interference by any other
person. No attempt to dispose of, or to take or reach,
any such interest in violation of this spendthrift provi-
sion shall be valid or given any effect by any Trustee.

## ARTICLE SIX

### SUCCESSOR TRUSTEES

Section A.    Appointment of Successor Trustees.

    1.    Power to Designate.  DAVID is granted the
continuing discretionary power to designate one or more

AMF00267675

successor Trustees, other than CAROL, to act, or a succession of successor Trustees other than CAROL, to act one or more at a time, to fill the vacancy in the office of Trustee occurring when he ceases to act as Trustee for any reason.  If DAVID ceases to act as Trustee without having designated one or more successor Trustees, or if all of the successor Trustees designated by DAVID shall fail to qualify or, having qualified, shall cease to act as such Trustees, PETER and DAVID'S friend, HARRY BACH (herein sometimes called "HARRY"), shall act as successor Trustees; and if either or both of HARRY and PETER shall fail to qualify or, having qualified, shall cease to act as such Trustees, CAROL'S cousin, THEODORE GINSBERG (herein sometimes called "THEODORE"), shall act as a successor Trustee.  Except as otherwise provided in this Section A, if any of PETER, HARRY and THEODORE fails to qualify or, having qualified, ceases to act as such Trustee, the ones remaining shall serve as Trustees without the necessity for any additional appointment.  Every successor Trustee hereunder shall have all rights, powers, authorities, duties, privileges, immunities and discretions which are herein granted to DAVID, including the power to designate one or more successor Trustees, other than CAROL, to fill the vacancy in the office of Trustee

-15-

AMF00267676

occurring when said successor Trustee ceases to act as Trustee for any reason, except as otherwise provided herein.

2. __Definition.__  The events which shall result in a person's ceasing to act as a Trustee hereunder shall include the death or resignation of such person, judicial appointment of a conservator of such person's property, or a judicial determination of such person's incompetency.

### Section B.   Power to Designate a Co-Trustee.

DAVID and each successor Trustee serving as sole Trustee is authorized in his, her or its absolute discretion, at any time, to designate another individual, other than CAROL, to act as a co-Trustee, with all rights, powers, authorities, duties, privileges, immunities and discretions, including the power to designate one or more successor Trustees, other than CAROL, which are herein granted to any successor Trustee, except as is otherwise provided herein.

### Section C.   Manner of Designation.

The power herein granted to a Trustee to designate one or more successor Trustees or co-Trustees shall be exercised by the Trustee to whom such power is granted as follows. Each such designation shall be made by the Trustee's acknowledged, written instrument executed while acting in that

AMF00267677

office, filed with the records of the Trust, a copy of which
shall be delivered to CAROL, if living, or if not, delivered
to TRACY. The persons or institutions so designated as
successor or co-Trustees may accept any such designation
only by an acknowledged, written instrument to that effect
filed with the records of the Trust, a copy of which shall
be delivered to CAROL, if living, or, if not, a copy of
which shall be delivered to TRACY. Any Trustee is author-
ized at any time and from time to time, while acting as
a Trustee, to revoke, alter or amend any designation pre-
viously made by him, by a subsequent acknowledged, written
instrument similarly executed, delivered and filed; provided,
however, that no such revocation or amendment shall affect
the tenure of any co-Trustee who has commenced to serve.
If more than one unrevoked designation is on file, the one
executed last in time shall govern.

Section D.   Resignation.

        Every Trustee hereunder is authorized to resign
at any time, for any reason, by an acknowledged, written
instrument to that effect filed with the records of the
Trust, a copy of which shall be delivered to such Trustee's
successors, if any. In addition, a copy of such instrument
shall be delivered to CAROL, if living, or, if CAROL is

AMF00267678

not living, to TRACY.

## Section E.    Waiver of Bond.

No Trustee, co-Trustee or successor Trustee here-under shall be required to give any bond or security in any court or jurisdiction for acting hereunder.

## Section F.    No Compensation.

None of DAVID, PETER, HARRY or THEODORE, while serving as Trustee, co-Trustee or successor Trustee here-under, shall receive compensation or commissions of any kind for acting hereunder, but they shall be entitled to reimbursement for any expenses incurred in connection with his administration of any trust created herein.

## ARTICLE SEVEN

### TRUSTEE'S POWERS AND PROVISIONS

## Section A.    Trustee's Powers.

The Trustee is granted all of the following rights, powers, authorities, privileges and discretions to adminis-ter each trust herein created, in addition to those granted elsewhere herein and by applicable law, to be exercised only in a fiduciary capacity at any time and from time to

-18-

AMF00267679

time within the limits of the rule against perpetuities,
including during the period after the termination of the
Trust and prior to the final distribution of assets, as
the Trustee may determine in the Trustee's absolute discre-
tion to be advisable, without authorization by any court;
and the exercise of all such rights, powers, authorities,
privileges and discretions shall be binding upon, and conclu-
sive against, all persons who are interested in, or who
claim an interest in, the Trust:

1.  Retention.

To retain indefinitely, or for any lesser period,
all or any part of the property of such trust
in the form in which it is received, regardless
of whether such property is authorized by law
for the investment of trust funds, regardless
of any law requiring diversification of trust
investments, without any liability for loss because
of depreciation in value;

2.  Investments.

To invest and reinvest all or any part of the
property of such trust in any kind of real or
personal property, including:  securities; oil,
gas, mineral interests and other natural resources;
commodity futures and foreign exchange; and land,
buildings, mortgages, and other interests in real
estate; to acquire any such investment from any
person, including any beneficiary of such trust,
the estate of any deceased beneficiary, the estate
of the Grantor, or any estate or other trust in
which any beneficiary has an interest; to make
any such investment or reinvestment without regard
to:  (a) the proportion which such investment
may bear to the value of such trust; (b) the rela-
tion such investment may bear to the type or char-

AMF00267680

acter of the other investments of such trust;
and (c) any law requiring diversification of trust
investments; and to make and retain such invest-
ment even though such investment shall be when
made, or shall thereafter become, unproductive
of income or speculative, and regardless of whe-
ther such investment is authorized by law for
the investment of trust funds, without any liabil-
ity for loss because of depreciation in value;
as used herein, the term "securities" shall be
construed to include, but shall not be limited
to, common, preferred and other classes of capital
stock, regardless of dividend arrearages; warrants,
options, puts and calls; bonds, debentures, notes
and other fixed income-bearing obligations, with
or without conversion privileges, notwithstanding
default in interest; and units of participation
in common trust funds, investment trust stocks
and mutual fund shares; regardless of whether
such securities are: (i) listed on any stock
exchange or traded in any public market; (ii)
registered with, or approved by, any securities
commission or other governmental regulatory body;
(iii) foreign or domestic; or (iv) subject to
investment letters or other contractual or legal
restrictions on the ownership, retention or dispo-
sition thereof;

3.   <u>Sales</u>.

To sell all or any part of the property of such
trust to any person including any beneficiary
of such trust, the estate of any deceased benefi-
ciary, the estate of the Grantor, or any estate
or other trust in which any beneficiary has an
interest, at public or private sale, for cash
or upon credit for any period, regardless of any
law limiting such period, with or without secur-
ity, or partly for cash and partly upon credit,
upon any terms and conditions; similarly to make
exchanges of any such property for other property
of equivalent fair market value, whether or not
of like kind or similar use; to grant options
to sell any such property upon any terms, for
any period, regardless of any law limiting such
period, and regardless of whether any considera-
tion is received for the granting of any such
option; to make short sales of securities, whether
or not owned by such trust, and to borrow an equi-
valent amount of securities with which to make
any short sale;

AMF00267681

4.   Securities.

To exercise all rights and powers over all of
the securities constituting all or any part of
the property of such trust which could be exer-
cised by persons owning similar securities in
their own right, including powers:  to vote on
any proposition or election at any meeting of
security holders for any purpose, including the
purpose of electing any Trustee or any employee,
partner or officer of any Trustee as a director
or as an officer of any corporation; the secur-
ities of which constitute all or any part of the
property of such trust; to grant discretionary
proxies to vote at any such meeting, with or with-
out power of substitution; to consent to, join
in, become a party to or oppose any reorganization,
readjustment, recapitalization, foreclosure, merger,
voting trust, dissolution, consolidation, exchange,
sale of assets or other corporate action, and
to deposit any securities with any protective,
reorganization or similar committee, depositary
or trustee, and to pay from the property of such
trust all fees, expenses, assessments and other
charges incurred in such connection; to exercise
warrants, options and conversion, subscription
or other rights, and to make any necessary pay-
ments in connection therewith from the property
of such trust, or to sell any such rights, or
to refrain from exercising any such rights, per-
mitting them to expire; to borrow funds with which
to exercise any such rights, and to secure any
loan so incurred by pledge of the securities ac-
quired thereby or by pledge of any other property
of such trust; to give investment letters and
other assurances in connection with the acquisi-
tion of any securities, and to rely upon advice
of counsel in disposing of any securities subject
to investment letters or other restrictions; to
receive and retain as a trust investment any new
securities or other property distributed as a
result of any of the foregoing;

-21-

AMF00267682

5.   <u>Property Management.</u>

To hold securities or other property either in
the name of a nominee without indicating the fidu-
ciary character thereof, unregistered, or in such
form that title will pass by delivery; to possess,
manage, operate, develop, subdivide, dedicate
for public use, demolish, construct, reconstruct,
exchange, partition, repair, alter, improve and
change, structurally or otherwise, any realty
or personalty constituting all or any part of
the property of such trust; to mortgage any such
property and to modify, renew, extend, reduce,
pay off and satisfy mortgages on such property
and any installments of principal or interest
due thereon, and to waive any defaults; to continue
any mortgage after maturity, with or without re-
newal or extension, upon any terms, and to fore-
close any mortgage; to purchase any mortgaged
property or to acquire any mortgaged property
by deed from the mortgagor in lieu of foreclosure;
to permit any such property to be lost by tax
sale, foreclosure or other proceeding; to abandon,
destroy or convey at nominal consideration or
without consideration any property which is, or
has become, worthless, hazardous, subject to con-
fiscatory taxation or of insufficient value to
warrant keeping or protecting, and thereafter
to have no further responsibility to keep informed
as to the status of any such property; to grant
or release easements or charges of any kind, for
any period, regardless of whether any considera-
tion is received for such grant; to insure any
property of such trust against any risks, hazards
and liabilities; to lease any property of such
trust and to renew or extend leases upon any terms
and for any period, including a period extending
beyond the probable or actual term of such trust,
regardless of any law limiting such period; to
amend, change or modify leases; to grant options
to lease and options to renew leases for any per-
iod, regardless of whether any consideration is

-22-

received for the granting of any such option;
and to pay from the property of such trust all
expenses incurred in connection with any of the
foregoing;

6.   Business Interests.

To form one or more corporations, alone or with
others, in any jurisdiction, and to transfer all
or any part of the property of such trust to any
such corporation in exchange for the securities
or obligations of such corporation; to form one
or more partnerships in any jurisdiction, in which
such trust shall be either a general or limited
partner, and to transfer all or any part of the
property of such trust to any such partnership
as a capital contribution; to delegate to the
board of directors or to one or more officers
of any such corporation, or to one or more part-
ners of any such partnership, any powers, author-
ities and discretions; to enter into joint ventures
or associations with others on any terms; to enter
into, modify or terminate agreements respecting
voting rights, management, retention or disposi-
tion of any corporation or partnership or interest
therein constituting all or any part of the prop-
erty of such trust; to continue any business in
which the Grantor had an interest, or to dispose
of any such business on any terms and conditions,
without any liability for loss because of depre-
ciation in value;

7.   Lending.

To lend any part of the property of such trust
to any person, including any beneficiary of such
trust, the estate of any deceased beneficiary,
or any estate or other trust in which any benefi-
ciary has an interest, upon any reasonable terms
and conditions, for any period, with or without
security, for any purpose whatsoever; provided,
however, that no loan of principal or income shall
be made to the Grantor for any purpose;

8.   Borrowing.

To borrow funds on behalf of such trust from any

-23-

AMF00267684

person, including any Trustee, any beneficiary
of such trust, the estate of any deceased benefi-
·ciary, or any estate or other trust in which any
beneficiary has an interest, upon any terms and
conditions, for any period, for any purpose con-
nected with the protection, preservation or im-
provement of any property of such trust, for in-
vestment purposes, for the purpose of paying taxes
and expenses, or for the purpose of making any
distribution to a beneficiary which is authorized
herein; to renew, modify or extend existing loans
on similar or different terms; to mortgage or
otherwise pledge property of such trust as security
for the repayment of such borrowing;

9. <u>Banking</u>.

To open and maintain one or more interest-bearing
or non-interest-bearing accounts with any bank
or trust company, including any Trustee, or any
savings and loan association or building and loan
association; to deposit all or any part of the
property of such trust to the credit of any such
account, and to permit such property to remain
on deposit in any such account without being li-
able for any loss of income; to lease one or more
safe deposit boxes for the safekeeping of property
of such trust; to open and maintain one or more
cash or margin accounts with any brokerage firm
or bank or trust company, including any Trustee,
and to conduct, maintain and operate any such
account for the purchase and sale of securities,
commodity futures and foreign exchange, and in
connection therewith, to borrow money, obtain
guarantees, and engage in all other activities
which are necessary or incidental to conduct,
maintain and operate any such account;

10. <u>Distributions in Kind</u>.

To make any division, allocation or distribution
(including the satisfaction of any pecuniary amount)
authorized or directed herein, either wholly or
partly in kind, even though shares be composed
differently; except as is otherwise herein provided,
to determine the fair market value of all property

AMF00267685

so divided, allocated or distributed, to the extent
permitted by law;

11.   Consolidated Holdings.

To hold and invest separate funds held for minors
and separate trusts, if there is more than one,
in one or more consolidated accounts, and to allo-
cate undivided or fractional interests in one
or more assets to each such fund or trust and
to administer all or any part of any trust fund
consolidated with the funds of any other trust
created by the Grantor; provided that separate
records are maintained of the property of each
such fund or trust;

12.   Claims.

To litigate, enforce, abandon, adjust, compromise,
compound, settle, collect, pay, prepay, defer
or discharge any obligation, debt, tax, premium,
dividend, insurance policy, death benefit, claim,
controversy or suit at law or in equity, of what-
soever kind or nature which may exist or arise
against or in favor of such trust, upon any terms
and conditions; to submit any such matter to arbi-
tration, and to agree to be bound thereby; to
extend the time of payment for any such matter
with or without security;

13. ·  Removal of Assets.

To remove all or any part of the property of such
trust from the jurisdiction which is the situs
of such trust, and to take and keep such property
outside such jurisdiction and in any other place
or places within or outside the United States,
during the term of such trust or for any lesser
period;

14.   Agents.

To employ one or more brokers, agents, accountants,
real estate experts, attorneys, custodians, apprai-
sers, employees, investment advisers and others,
including any Trustee or any employee, partner

AMF00267686

or officer of any Trustee; regardless of whether
a bank or trust company is acting as a Trustee,
so long as any individual is acting as a Trustee,
the individual Trustee or Trustees are authorized
to employ an investment adviser in addition to
such bank or trust company; to pay from the prop-
erty of such trust all fees, expenses and disburse-
ments thereby incurred, without diminution of
any Trustee's commissions; to act or to refrain
from acting upon the advice or recommendations
received from any such adviser without liability
for any act done or omission made in good faith
in reliance upon such advice or recommendations;

15. **Delegation.**

To delegate to any suitable and appropriate per-
son, firm or corporation, any ministerial duties
in connection with the rights, powers, authorities,
privileges and discretions which are granted here-
in; to delegate to any other Trustee, if there
is one, any of the rights, powers, authorities,
privileges and discretions which are granted here-
in, including power to sign checks and other in-
struments for the payment of money, power to give
orders for the purchase and sale of securities,
and power to have custody of all or any part of
the property of such trust; provided, however,
that any such delegation shall be revocable at
any time by the Trustee making it;

16. **Conflict of Interest.**

To act with respect to any and all property held
in such trust and to manage, invest, dispose of
or retain the same even though any Trustee may
have a personal interest in such property or in
any investment or reinvestment or in any business
or corporation or other entity in which all or
part of the property held in such trust shall
be invested or reinvested, in like manner and
with like immunity from liability as if a complete
stranger thereto; to deal with any Trustee (includ-
ing herself) as an individual, or as a member
of a partnership, or as an officer, stockholder,
director or employee of any corporation or other

-26-

AMF00267687

entity, without liability except for negligence or wrongful misconduct, and the usual rules prohibiting a Trustee from dealing with herself as an individual or with respect to any matter in which she has an interest which is personal or individual shall not apply; to employ any Trustee (including herself), a partnership with which any Trustee (including herself) is associated, or any officer or employee of any corporate Trustee as an attorney or other agent; and to cause any Trustee (including herself), the partners with whom any Trustee (including herself) is associated, any Trustee's employees or any officer or employee of any corporate Trustee hereunder to act as an officer, employee or agent, or in any other capacity, or in more than one such capacity in any corporation whose securities shall be held by any Trustee and to allow such person to vote for such purposes; and to compensate any such person for so acting in addition to any lawful fiduciary fees or commissions to which such person may be entitled for acting as a fiduciary hereunder;

17.   Inventories and Accounts.

To refrain from making annual or other periodic inventories and accounts of the receipts, investments, disbursements and proceedings of such trust, notwithstanding any statute or rule of law requiring such inventories and accounts;

18.   General Powers.

To make any payment, to receive any money, to take any action, and to make, execute, deliver and receive any contract, deed, instrument, or other document which is advisable to exercise any of the foregoing powers or to carry into effect any provision contained herein; and in making any payment or distribution, or in otherwise acting hereunder, to rely upon any notice, certificate, affidavit, letter, telegram, cable or other written instrument which is believed to be genuine.

Section B.   Exculpation of Trustee.

No person, insurer or other entity which shall

AMF00267688

deal with the Trustee shall be bound to see to the application of any money or other property received by the Trustee or to inquire into the authority for, or propriety of, any action taken by the Trustee. The Trustee shall not be liable for any act or omission in administering any trust herein created; except that the Trustee shall be liable for his own actual fraud, gross negligence or willful misconduct. No Trustee shall be responsible for any act or omission of any other Trustee. If the Trustee becomes liable as Trustee to any person not beneficially interested in any trust herein created in connection with matters not within the Trustee's control and not due to the Trustee's actual fraud, gross negligence or willful misconduct, the Trustee shall be entitled to indemnity out of the property of such trust.

## Section C.    Limitations on Trustees and Others.

No Trustee, who is also a beneficiary of any trust herein created to whom income or principal may be distributed currently, shall exercise, or participate in the exercise of, any discretion to pay or apply the net income or principal of such trust, or to terminate such trust. No Trustee, who is under a legal obligation to support a beneficiary of any trust herein created to whom income or prin-

AMF00267689

cipal may be distributed currently; shall exercise, or parti-
cipate in the exercise of, any discretion to pay or apply
the net income or principal of such trust in discharge of
that legal obligation. No Trustee shall lend the principal
or income of any trust herein created directly or indirectly
to the Grantor. Notwithstanding Section 7-1.11 of the Estates,
Powers and Trusts Law of New York or any other comparable
provision of law, no Trustee shall have the power to pay
to the creator of this trust any amount, whether as reim-
bursement for income taxes or otherwise. No person shall
be enabled to purchase, exchange or otherwise deal with
or dispose of the principal or income of any trust herein
created for less than an adequate consideration in money
or money's worth. No person acting in a nonfiduciary capac-
ity shall have any power to vote or direct the voting of
any stock or other securities constituting all or any part
of the property of any trust herein created; to direct invest-
ments or reinvestments, or veto proposed investments or
reinvestments, of any property constituting all or any part
of the property of any such trust; or to reacquire all or
any part of the property of any such trust by substituting
other property of equivalent value. The foregoing limita-
tions shall prevail over any conflicting or apparently con-
flicting provisions of this Agreement.

AMF00267690

Section D.   Release of Powers.

Every Trustee hereunder may disclaim or release, in whole or in part, any power given to such Trustee with respect to the Trust herein created by filing with the records of the Trust an acknowledged written instrument containing such disclaimer or release and by delivering a copy thereof to CAROL, if living, and, if CAROL is not living, to TRACY.

Section E.   Non-Judicial Accounting.

To avoid the expenses and delay incident to a judicial settlement of the Trustee's accounts, the Trustee is authorized to render informal accounts of proceedings as Trustee of any trust herein created, to each beneficiary of such trust not under any legal disability, and to the executors or administrators of each deceased beneficiary who was a beneficiary during all or any portion of the period accounted for.  The beneficiaries and executors or administrators of deceased beneficiaries to whom such account shall be rendered shall have full power to settle finally any such account and on the basis of such account, to release the Trustee, individually and as Trustee, from all liability, responsibility or accountability for the Trus-

-30-

AMF00267691

tee's acts or omissions as Trustee; provided, however, that
such settlement shall not affect any claim that any person
beneficially interested in such trust may have against any
other person beneficially interested in such trust by reason
of the administration of such trust. Such settlement and
release of the Trustee shall be binding upon all benefici-
aries and others interested in or claiming an interest in
such trust, even if then under any legal disability or not
as yet in being, and shall have the force and effect of
a final decree, judgment or order of a court of competent
jurisdiction rendered in an appropriate action or proceeding
for an accounting in which jurisdiction was obtained of
all necessary and proper parties; provided, however, that
nothing in this Section E shall be deemed to preclude the
Trustee from having a judicial settlement of the Trustee's
transactions, if the Trustee shall deem it advisable. As
used in this Section E, the term "beneficiary" shall mean
a person to whom the Trustee is currently authorized or
directed to pay or apply all or any portion of the net in-
come or principal of any trust created herein.

## ARTICLE EIGHT

### CONSTRUCTION PROVISIONS

#### Section A.    Trustee.

As used herein, the term "Trustee" shall include

AMF00267692

the Trustee and all successor Trustees and co-Trustees named
herein or otherwise designated or appointed, and to mean
the plural form thereof whenever the facts and context re-
quire.

Section B.   Child, Children, Issue.

It is expressly intended in this Agreement that
any individual who is not included in the terms child, chil-
dren or issue, as hereinafter defined, shall be excluded
from any and all gifts and other dispositions to a child,
children or issue under this Agreement or pursuant to any
provisions of law.

1.   Child or Children.   The term "child" or
"children" of any person shall be construed to mean only
that person's natural legitimate descendant or descendants
in the first degree, and such term shall not include that
person's adopted or illegitimate descendant or descendants
in the first degree.

2.   Issue.   The term "issue" of any person shall
be construed to mean only that person's natural legitimate
descendants in any degree, and such term shall not include
(a) that person's adopted or illegitimate descendants in
any degree or (b) a legitimate descendant (whether adopted
or natural) in any degree of an adopted or illegitimate
descendant in any degree of that person.

-32-

AMF00267693

<u>Section C.   Beneficiary</u>.

At any particular time of determination, the term "beneficiary" shall mean a person to whom the Trustee is then authorized or directed to pay or apply all or any portion of the net income or principal of the Trust.

<u>Section D.   Applicable Law</u>.

All questions pertaining to the validity, construction and administration of this Agreement and of any trust herein created, shall be determined in accordance with the laws of the State of New York.

<u>Section E.   Headings</u>.

The headings, titles and subtitles herein are inserted solely for convenient reference, and shall be ignored in any construction hereof.

IN WITNESS WHEREOF, this Trust Agreement has been executed in triplicate on the day and year first above written.

_____ (L.S.)
CAROL L. KAMENSTEIN, Grantor

_____ (L.S.)
DAVID R. KAMENSTEIN, Trustee

-33-

SCHEDULE A

TO

1984 TRACY DARA KAMENSTEIN IRREVOCABLE TRUST


TRUST AGREEMENT dated the 11th day of April,
1984, by and between CAROL L. KAMENSTEIN, as Grantor, and
DAVID R. KAMENSTEIN, as Trustee.


One hundred dollars each


_____
CAROL L. KAMENSTEIN, Grantor

_____
DAVID R. KAMENSTEIN, Trustee

AMF00267695

STATE OF NEW YORK )
                   :   ss.:
COUNTY OF NEW YORK)

On this 11th day of April , 1984, before me personally appeared CAROL L. KAMENSTEIN, to me known and known to me to be the person mentioned and described in, and who executed the foregoing instrument, and she duly acknowledged to me that she executed the same.

_____
Notary Public

LIONEL ETRA
Notary Public, State of New York
No. 31-1135475
Qualified in New York County
Commission Expires March 30, 1985

STATE OF NEW YORK )
                   :   ss.:
COUNTY OF NEW YORK)

On this 11th day of April , 1984, before me personally appeared DAVID R. KAMENSTEIN, to me known and known to me to be the person mentioned and described in, and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

_____
Notary Public

LIONEL ETRA
Notary Public, State of New York
No. 31-1135475
Qualified in New York County
Commission Expires March 30, 1985

AMF00267696