# EXHIBIT G

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

TAX ID NO.

# REDACTED

ACCT# ASSIGNED

_____ 1CM597 _____

(Mr.)/Mrs./Ms.    SLOAN G. KAMENSTEIN

NAME    306 CHILEAN AVE

STREET    PALM BEACH    FL    33480

CITY    STATE    ZIP

TEL. NUMBER    N/A    (561) 833 8223
BUSINESS    RESIDENCE

REG. REP    L. Schoenheimer

WE DEEM THE QUESTIONS CONTAINED IN THIS SECTION TO BE REQUIRED BY THE
"KNOW YOUR CUSTOMER" RULE OF THE NATIONAL ASSOCIATION OF SECURITY
DEALERS, AND, THEREFORE, MUST BE ANSWERED IN FULL.

RESIDENCE 306 CHILEAN AVE.    PALM BEACH, FL. 33480

_____ N/A _____
NAME OF EMPLOYER (IF HOUSEWIFE, NAME THE HUSBAND'S EMPLOYER)

EMPLOYER'S ADDRESS    N/A

OCCUPATION    NOT EMPLOYED

BANK REFERENCE AND ADDRESS FIRST UNION    COCOANUT ROW    PALM BEACH, FL.
33480

OTHER BROKERAGE ACCOUNTS OPPENHEIMER, TUCKER ANTHONY

CLIENT INTRODUCED BY _____

#### FOR OFFICE USE ONLY

R R.'S ESTIMATE OF CLIENTS NET WORTH _____

IS CLIENT OVER 21 YEARS OF AGE    YES_____    NO_____

HOW LONG HAVE YOU KNOWN CLIENT_____

CLIENT IS CITIZEN OF _____

APPROVED BY _____

DATE SENT TO CLIENT    DATE SENT TO CLIENT

MARGIN AGREEMENT _____    MAIL WAIVER FORM _____
JOINT AGREEMENT _____    MULTIPLE A/C FORM _____
CORPORATE ACCOUNT FORM _____    CORPORATE RESOLUTION_____
CO-PARTNERSHIP FORM _____

Affiliated with:
Madoff Securities International Ltd.
12 Berkeley Street, Mayfair, London W1X 5AD.0171-493 6222

AMF00267767

Bernie  10/18/99
Then acct opened
on 9/7/99 with
$1,782,332, to
close acct of Tracy
+ Sloan Kamenstein
JTWROS, to close
that acct. (50%
of equity col on
orig. acct to err.)
Pls sign.

AMF00267768

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

Congress has mandated that all interest and dividend payers including banks, corporations and funds must withhold 10% of all dividends or interest paid UNLESS you complete and return the form at the bottom of this page.

## Important New Tax Information

"Under the Federal income tax law, you are subject to certain penalties as well as withholding of tax at a 20% rate if you have not provided us with your correct social security number or other taxpayer identification number. Please read this notice carefully.

You (as a payee) are required by law to provide us (as payer) with your correct taxpayer identification number. If you are an individual, your taxpayer identification is your social security number. If you have not provided us with your correct taxpayer identification number, you may be subject to a $50 penalty imposed by the Internal Revenue Service. In addition, divided payments that we make to you may be subject to backup withholding starting on January 1, 1984.

Backup withholding is different from the 10% withholding on interest and dividends that was repealed in 1983. If backup withholding applies, payer is required to withhold 20% of dividend payments made to you. Backup withholding is not an additional tax. Rather, the tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of taxes, a refund may be obtained".

Please sign the form and return it to us.

Even if you have already provided this information it is required by the IRS that all information requested below be provided again.

Thank you for your cooperation.

-------------------------------------------------

### SUBSTITUTE INTERNAL REVENUE SERVICE FORM W-9

Account Number(s): _____

Taxpayer Identification Number:

REDACTED

Name: SLOAN G. KAMENSTEIN

Address: 306 CHILEAN AVE.     PALM BEACH, FL. 33480

(Signature) _Carol Kamenstein Trustee_

"Under penalties of perjury, I certify that the number shown
On this form is my correct Taxpayer Identification Number".

Please fill in your name, address, taxpayer identification number, and sign above.

Affiliated with:
Madoff Securities International Ltd.
12 Berkeley Street, Mayfair, London W1X 5AD.0171-493 6222

AMF00267769



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## TRADING AUTHORIZATION LIMITED TO PURCHASES
## AND SALES OF SECURITIES AND OPTIONS

To Whom It May Concern:

The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds, options and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon. However, in no event will the losses exceed my investment.

In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at 885 Third Avenue but such revocation shall not affect any liability in any way resulting from transaction initiated prior to such revocation. This authorization and indemnity shall enure to the benefit of your present firm and any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated, _August 23, 1999_

_PALM BEACH_      _FLORIDA_
(City)          (State)

Very truly yours, _Carol (Kamenstein)    Trustee_
(Client Signature)

Signature of Authorized Agent: _____

Affiliated with:
Madoff Securities International Ltd.
12 Berkeley Street, Mayfair, London W1X 5AD.0171-493 6222

AMF00267770



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## OPTION AGREEMENT

TO:  BERNARD L. MADOFF INVESTMENT SECURITIES

In order to induce you to carry accounts ("Option Accounts") for me (however designated) for transactions in option contracts (including, without limitations, purchase, sale, transfer, exercise and endorsement) ("Option Transaction"), I hereby warrant, represent and agree with you as set forth below on this Option Agreement.

1.    I understand, and am well aware, that option trading may be highly speculative in nature. I am also aware that on certain days, option trading may cease and this could result in a financial loss to me.  I agree to hold  BERNARD L. MADOFF, its other  Divisions,  and its officers, Directors and Agents  harmless for such loss.

2.    I understand that any option transaction made for any account of mine is subject to the rules, regulations, customs and usages of The Options Clearing Corporation  and of the registered national  securities exchange,  national securities  association,  clearing  organization or market where such transaction was executed. I agree to  abide by such rules, regulations, custom and usages and I agree that,  acting individually or in concert with others, I will not exceed any applicable  position  or  exercise  limits  imposed  by  such  exchange,  association,  clearing organization or other market with respect  to option trading.

3.    If I do not satisfy, on a timely basis, your money or security calls,  you  are authorized in your sole discretion and without notification, to take  any and all steps you deem necessary to protect yourself (for any reason)  in connection with option transactions for my account including the right  to buy and/or sell (including short or short exempt) for my  account and risk any part or all of the shares represented by options  handled, purchased, sold and/or endorsed by you for my account or to buy  for my account and risk any option as you may deem necessary or appropriate.  Any and all expenses or losses incurred in this connection  will be reimbursed by me.

4.    In addition to the terms and conditions  hereof,  my option account will be subject to all of the terms and conditions of all other agreements heretofore or hereafter at any time entered into with you relating to the  purchase and sale of securities  and commodities except to the extent that such other agreements are contrary to  or inconsistent herewith.

Affiliated with:
Madoff Securities International Ltd.
12 Berkeley Street, Mayfair, London W1X 5AD.0171-493 6222

AMF00267771

5.    This agreement shall apply to all puts or call which  you may have executed, purchased, sold  or handled for any account of mine  and also  shall apply to all puts, or calls which  you may hereafter purchase, sell, handle or execute for any account of  mine.

6.    I have received from   BERNARD L. MADOFF the most recent risk disclosure  documents entitled "Understanding the Risks and Uses of Listed Options",  "Listed Options on Stock Indices", "Listed Options on Foreign Currencies", and "Listed Options in Debt Instruments".  I have read and understand the information contained in these documents.

7.    I understand that you assign exercise notices on a random basis  except that with respect to options on the following debt instruments: Treasury  Bonds, Treasury Notes, Treasury Bills and GNMAS, you may preferentially  assign exercises of block-size (i.e. covering $1,000,000 or more of  underlying securities) to block-size writing positions and you may  preferentially assign smaller exercises to smaller writing positions.  I  understand that upon my request you will provide me with further  information regarding the procedure used to assign exercise notices.

DATED _August 23, 1999_____              ACCOUNT NO._____

SIGNATURES

(If a Corporation)                                              (If Individuals)

_____          _Carol Kanenstine  Trustee_

(Name of Corporation)                                    (Second Party if Joint Account)

By_____

Title_____          (If a Partnership)

                                                                    _____

        SEAL                                                  (Name of Partnership)

                                                          By_____

                                                                      (A Partner)

AMF00267772

**BERNARD L. MADOFF**
**Investment Securities**

885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 13 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00267773

**7. BROKER AS AGENT**

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

**8. CONFIRMATIONS AND STATEMENTS**

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

**9. SUCCESSORS**

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall enure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

**10. CHOICE OF LAWS**

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _____ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _____

**11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION**

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

**12. ARBITRATION DISCLOSURES**

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

AMF00267774



**13. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 10, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION.  THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**14. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects.  Therefore, please check one of the boxes below:

\_\_\_ Yes, I do object to the disclosure of information.

\_\_\_ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X) _Carol Kamenstein Trustee_          (X)_____

(Customer Signature/date)                    (Customer Signature/date)

_306 Chilean Av._                            _____

(Customer Address)                           (Account Number)

_Palm Beach, FL 32480_

AMF00267775

DAVID R. KAMENSTEIN,

                                    Grantor

                    -and-

CAROL L. KAMENSTEIN,

                                    Trustee

TRUST AGREEMENT

Dated: APRIL 11, 1984

L

ROBERTS & HOLLAND
30 ROCKEFELLER PLAZA
NEW YORK, N.Y. 10112

AMF00267776

## TRUST AGREEMENT

THIS TRUST AGREEMENT made this 11ᵗʰ day of APRIL ,
1984, by and between DAVID R. KAMENSTEIN, herein sometimes
called "DAVID," as the Grantor, and CAROL L. KAMENSTEIN,
herein sometimes called "CAROL," as the Trustee.

### W I T N E S S E T H:

DAVID desires hereby to create an irrevocable
trust, to be known as the "1984 SLOAN GEORGE KAMENSTEIN
IRREVOCABLE TRUST," herein sometimes called the "Trust,"
for the purposes and on the terms and conditions hereinafter
set forth. In consideration of the premises and the agree-
ment of the Trustee to accept the Trust, DAVID has contempora-
neously with the execution of this Agreement, delivered
to the Trustee, the property described in Schedule A hereof,
so that DAVID shall hereafter have no interest in, or con-
trol over, such property, the receipt of which property
the Trustee hereby acknowledges.

TO HAVE AND TO HOLD such property, and such addi-
tional property, if any, as may be added to the Trust, in
accordance with the terms of this Agreement, IN TRUST, NEVER-
THELESS, upon the terms and conditions set forth in this

AMF00267777

Agreement.

## ARTICLE ONE

### CHARACTER OF TRUST

Section A.    Irrevocability.

The Trust created under this Agreement is irrevocable, and DAVID reserves no powers to alter or amend any provision of this Agreement.

Section B.    Additions.

At any time or from time to time, during DAVID'S lifetime and thereafter, DAVID or any other person may add any kind of real or personal property to the Trust herein created, but only with the Trustee's consent.  Property may be added either during the lifetime of the person doing so, or thereafter, by that person's Will or otherwise. All property added to the Trust shall be commingled with the principal thereof, and held, administered and distributed pursuant to the provisions of this Agreement.

Section C.    No Retained Interest.

DAVID reserves no reversion or other interest in the Trust herein created, or in any property herewith or hereafter transferred to the Trust.

-2-

AMF00267778

## ARTICLE TWO

### TRUST PROVISIONS

**Section A.**   **Income Until SLOAN Attains Age Twenty-One.**

Until SLOAN GEORGE KAMENSTEIN ("SLOAN"), the son of CAROL and DAVID, attains the age of twenty-one (21) years, the Trustee shall pay to SLOAN, or apply for his benefit, as much of the net income of the Trust as the Trustee in her sole discretion shall determine.  At the end of each trust year, the Trustee shall add to principal any net income not so paid or applied and thereafter the same shall be dealt with as principal for all purposes.

**Section B.**   **Income After SLOAN Attains Age Twenty-One.**

After SLOAN attains the age of twenty-one (21) years and until the Trust held for his benefit terminates, the Trustee shall pay to SLOAN, or apply for his benefit, the entire net income of the Trust in quarterannual or more frequent installments as may be convenient to the Trustee.

**Section C.**   **Discretionary Payments of Principal.**

The Trustee may, at any time and from time to time, pay to SLOAN, or apply for his benefit, upon such occasions as the Trustee in her sole discretion shall deem advisable, so much or all of the principal of the Trust as the Trustee may deem desirable, even if the exercise

-3-

AMF00267779

of that discretion exhausts all of such principal and re-
sults in termination of the Trust. Without limiting the
Trustee as to occasion and without requiring her to make
any payment which she deems inadvisable, the Grantor sug-
gests that purposes for which amounts of principal might
be paid include higher educational requirements, engagement,
marriage, acquisition of a home, birth of children, commence-
ment of a new business enterprise or continuation of an
existing one, and medical requirements. In granting discre-
tion to the Trustee to make such payment or payments of
principal, it is the Grantor's desire that such discretion
be liberally exercised when the occasion, whether one previ-
ously specified or not, is such that the interests of SLOAN
would be best served thereby. In determining whether or
not to make any such payment or payments of principal, the
Trustee shall consider only the merits of the proposed pur-
pose of the distribution and she need not (but may) consider:
(1) the obligation of any person or persons for the support
of SLOAN; (2) the other assets of SLOAN or the income there-
from; and (3) the financial need of SLOAN or of the person
or persons obligated for his support.

Section D.     SLOAN'S Power to Withdraw Principal.

    1.     Power of Withdrawal.  During each year in

-4-

AMF00267780

which any person shall transfer property to the Trust, in-
cluding the calendar year of the execution of this Agreement
(each such year being referred to herein as a "transfer
year"), SLOAN shall have the absolute right to withdraw
from the Trust, at any time during such transfer year, but
no later than thirty (30) days from the date of receipt
of the notice from the Trustee as hereinafter described
in subsection 3 of this Section D, an amount of principal
which, taking into account all prior withdrawals of prin-
cipal during the transfer year by SLOAN relating to trans-
fers by such person, is not in excess of the lesser of (i)
the exclusion amount for such person for such transfer year
(as hereinafter defined in subsection 4 of this Section
D) or (ii) an amount equal to all of the transfers (which,
in the case of a transfer of property other than cash, shall
be taken into account at its fair market value at the date
of its transfer to the Trust) made by such person to the
Trust for such transfer year.  Each such right of withdrawal
shall be exercisable by SLOAN'S acknowledged written instru-
ment, which shall be delivered to the Trustee; provided,
however, that such right of withdrawal shall terminate at
the close of the transfer year and shall, to the extent
not theretofore exercised by or on behalf of SLOAN, there-

AMF00267781

provided, however, that while SLOAN is a minor, the Trustee, in lieu of notifying SLOAN, shall, by written or oral notice, advise SLOAN'S legal guardian (or, if none, each then living parent of SLOAN) of such transfer and of such person's rights under this Section D to exercise such power on behalf of SLOAN.

4. <u>Exclusion Amount</u>. As used herein, the term "exclusion amount" for any person for any transfer year shall mean that amount which, with respect to any particular transfer year, is excluded from the total amount of gifts made by such person for such transfer year, within the meaning of section 2503(b) of the Internal Revenue Code of 1954, as amended, or any section in amendment or substitution therefor.

<u>Section E</u>.   <u>Mandatory Payments of Principal And Termination of Trust</u>.

1. <u>Mandatory ayments of Principal</u>. The Trustee shall be required to make the following payments to SLOAN from the principal of the Trust:

a. <u>First Payment</u>. When SLOAN attains the age of twenty-seven (27) years, the Trustee shall pay over and deliver to SLOAN, one-third (1/3) of the then remaining principal of the Trust.

-7-

b.    <u>Second Payment</u>.   When SLOAN attains
the age of thirty-two (32) years, the Trustee shall pay
over and deliver to SLOAN, one-half (1/2) of the then re-
maining principal of the Trust.

c.    <u>Final Payment</u>.   When SLOAN attains the
age of thirty-six (36) years, the Trustee shall pay over
and deliver to SLOAN any then remaining principal and any
accrued or undistributed income of the Trust.

2.    <u>If SLOAN Dies Before Attaining Age Thirty-
Six.</u>

If SLOAN dies before attaining the age of thirty-
six (36) years, the Trust shall terminate and the Trustee
shall pay the entire remaining principal, together with
all accrued and undistributed income, to SLOAN'S issue who
survive him, per stirpes; or if there be no such issue,
to the then living issue of the Grantor, per stirpes; or
if there be no such issue, to SLOAN'S mother if she survives
him; or if SLOAN'S mother does not survive him, the entire
remaining principal, together with all accrued and undis-
tributed income of the Trust shall be distributed to the
following, with each receiving the respective percentage
of such assets which is hereinafter set forth:

(i)   To the brother of the Grantor, PETER D.

-8-

AMF00267783

KAMENSTEIN, herein sometimes called "PETER", forty percent (40%) if he is living when SLOAN dies; and, if he is not then living, to his issue in equal shares, per stirpes;

    (ii)   To the brother of the Grantor, MICHAEL D. KAMENSTEIN, herein sometimes called "MICHAEL", forty percent (40%) if he is living when SLOAN dies; and, if he is not then living, to his issue in equal shares, per stirpes; and

    (iii)   To CAROL'S sister, MERYL LANDY CAYTON, herein sometimes called "MERYL", twenty percent (20%) if she is living when SLOAN dies; and, if she is not then living, to her issue in equal shares, per stirpes.

If one or more of PETER, MICHAEL or MERYL shall not survive SLOAN and leave no issue surviving SLOAN, the percentage of the remaining principal and income of the Trust hereinabove set apart for each of PETER, MICHAEL and MERYL who predeceases SLOAN and leaves no issue surviving SLOAN shall be allocated pro rata to the shares of the remaining principal and income of the Trust passing hereunder to any of PETER, issue of PETER, MICHAEL, issue of MICHAEL, MERYL or issue of MERYL.

## ARTICLE THREE

### DISTRIBUTION TO MINORS AND OTHERS

Section A.   Minors.

If, under any provision of this Agreement, any

AMF00267784

property shall become mandatorily payable to a minor, it shall vest absolutely in the minor, but the Trustee may nevertheless elect to pay over such property to a custodian for such minor under the Uniform Gifts to Minors Act or to hold all or any part of such property until the minor attains majority, and to manage, invest and reinvest such retained property with all of the rights, powers, authorities, duties, privileges, immunities and discretions which are granted to the Trustee elsewhere in this Agreement. In that event, the Trustee shall, at any time and from time to time, pay to, or apply for the benefit of, the minor so much or all of the net income and principal of such retained property as the Trustee may deem advisable for the minor's best interests, accumulating any net income not so paid or applied and, not less frequently than annually, adding such accumulated net income to principal, to be held, administered and distributed as a part thereof. When and if the minor attains majority, the Trustee shall pay over and deliver such retained property as then constituted to the minor. If the minor should die before attaining majority, the Trustee shall pay over and deliver such retained property as then constituted to the minor's executors or administrators.

AMF00267785

<u>Section B.</u>       <u>Application to Beneficiary.</u>

In applying amounts of income or principal pursuant to any provision of this Agreement for the benefit of any beneficiary, including a minor or other person under a legal disability, the Trustee is authorized, in the Trustee's absolute discretion, to expend such amounts for the benefit of such beneficiary in such one or more of the following methods, as the Trustee may deem advisable from time to time:

1.  By delivering any such amount to the natural, general or testamentary guardian of any minor, or to a custodian for any minor under the Uniform Gifts to Minors Act, or to the committee, guardian or conservator of any beneficiary who shall have been adjudicated an incompetent; or

2.  By delivering any such amount to any individual or entity having the care, custody or control of any such beneficiary, or with whom, or at which, such beneficiary resides; or

3.  By delivering any such amount to such beneficiary, personally; or

4.  By making direct expenditures for the

AMF00267786

benefit of such beneficiary.

The receipt of any such guardian, custodian, com-
mittee, conservator, individual, entity or beneficiary,
or evidence of such payment or expenditure of any such amount
shall be a full and sufficient discharge to the Trustee
for the payment or expenditure thereof, and the Trustee
shall be exonerated from all liability and responsibility
by reason of any amount so delivered, paid or expended,
irrespective of the application or use thereof which may
be made by any such guardian, custodian, committee, conser-
vator, individual, entity or beneficiary, and the Trustee
shall have no duty to see to the application of any such
amount.

## ARTICLE FOUR

### VESTING OF INTERESTS

Section A.   Simultaneous Deaths.

If a disposition of any property or interest in
property which is made in this Agreement depends upon one
person's surviving another person, and if both of those
persons die under circumstances where there is no sufficient
evidence that they have died otherwise than simultaneously,
the alternate disposition of that property or interest in

-12-

AMF00267787

property made herein shall be operative.

## Section B.   Disclaimers and Releases.

1.   <u>Disclaimers</u>.   Each person having a beneficial
interest under this Agreement, or any person authorized
by law to act on his behalf, is authorized, at any time
and from time to time, to disclaim or renounce all or any
part of that interest, regardless of whether such person
has previously received any benefits hereunder; provided,
however, that no disclaimer shall be effective as such to
the extent that, under the law applicable to this Agreement,
said person is deemed to have accepted that interest.   In
addition to other methods of disclaimer or renunciation
recognized by law, a person may disclaim or renounce all
or any part of that interest by filing an acknowledged,
written instrument to that effect in the office of the clerk
of the court having jurisdiction over this Agreement and
by delivering a copy of that instrument to any Trustee.
The disclaimed interest shall be administered and distribu-
ted as expressly provided in this Agreement, as if such
person had died immediately preceding the date such interest
was created.   Unless that instrument specifically so pro-
vides, no disclaimer or renunciation shall affect that per-
son's right to receive any other interest under this Agree-

-13-

AMF00267788

ment, whether upon the death of any other person or whether upon a subsequent disclaimer, renunciation or release by any other person.

2.  _Releases_.  Each person having a beneficial interest under this Agreement is authorized, at any time and from time to time, to release all or any part of that interest, regardless of whether such person is deemed, under the law applicable to this Agreement, to have accepted that interest.  In addition to other methods of release recognized by law, a person may release all or any part of that interest by filing an acknowledged, written instrument to that effect in the office of the clerk of the court having jurisdiction over this Agreement and by delivering a copy of that instrument to any Trustee.  The released interest shall be administered and distributed as expressly provided in this Agreement, as if such person had died immediately preceding the date of delivery of such instrument of release. Unless that instrument specifically so provides, no release shall affect that person's right to receive any other interest under this Agreement, whether upon the death of any other person or whether upon a subsequent disclaimer, renunciation or release by any other person.

-14-

AMF00267789

## ARTICLE FIVE

### SPENDTHRIFT PROVISIONS

No person having a beneficial interest under this Agreement may voluntarily or involuntarily alienate, antici-pate, assign, encumber, pledge, sell, or otherwise transfer all or any part of that person's interest in trust income or principal, except pursuant to the exercise of the powers granted herein to disclaim and release.  No beneficial inter-est under this Agreement shall be subject to being taken or reached by any attachment, levy, writ or other legal or equitable process to satisfy any claim against, or obliga-tion of, the person having that interest, and no such inter-est shall be subject to control or interference by any other person.  No attempt to dispose of, or to take or reach, any such interest in violation of this spendthrift provi-sion shall be valid or given any effect by any Trustee.

## ARTICLE SIX

### SUCCESSOR TRUSTEES

Section A.   Appointment of Successor Trustees.

1.   Power to Designate.  CAROL is granted the continuing discretionary power to designate one or more

AMF00267790

successor Trustees, other than DAVID, to act, or a succession of successor Trustees other than DAVID, to act one or more at a time, to fill the vacancy in the office of Trustee occurring when she ceases to act as Trustee for any reason.  If CAROL ceases to act as Trustee without having designated one or more successor Trustees, or if all of the successor Trustees designated by CAROL shall fail to qualify or, having qualified, shall cease to act as such Trustees, PETER and the Grantor's friend, HARRY BACH (herein sometimes called "HARRY"), shall act as successor Trustees; and if either or both of HARRY and PETER shall fail to qualify or, having qualified, shall cease to act as such Trustees, CAROL'S cousin, THEODORE GINSBERG (herein sometimes called "THEODORE"), shall act as a successor Trustee.  Except as otherwise provided in this Section A, if any of PETER, HARRY and THEODORE fails to qualify or, having qualified, ceases to act as such Trustee, the ones remaining shall serve as Trustees without the necessity for any additional appointment.  Every successor Trustee hereunder shall have all rights, powers, authorities, duties, privileges, immunities and discretions which are herein granted to CAROL, including the power to designate one or more successor Trustees, other than DAVID, to fill the vacancy in the office of Trustee

AMF00267791

occurring when said successor Trustee ceases to act as Trustee for any reason, except as is otherwise provided herein.

2.   Definition.   The events which shall result in a person's ceasing to act as a Trustee hereunder shall include the death or resignation of such person, judicial appointment of a conservator of such person's property, or a judicial determination of such person's incompetency.

Section B.   Power to Designate a Co-Trustee.

CAROL and each successor Trustee serving as sole Trustee is authorized in her, his or its absolute discretion, at any time, to designate another individual, other than DAVID, to act as a co-Trustee, with all rights, powers, authorities, duties, privileges, immunities and discretions, including the power to designate one or more successor Trustees, other than DAVID, which are herein granted to any successor Trustee, except as is otherwise provided herein.

Section C.   Manner of Designation.

The power herein granted to a Trustee to designate one or more successor Trustees or co-Trustees shall be exercised by the Trustee to whom such power is granted as follows. Each such designation shall be made by the Trustee's acknowledged, written instrument executed while acting in that

-17-

AMF00267792

office, filed with the records of the Trust, a copy of which
shall be delivered to DAVID, if living, or if not, delivered
to SLOAN if he is eighteen (18) years or older at that time.
The persons or institutions so designated as successor or
co-Trustees may accept any such designation only by an ac-
knowledged, written instrument to that effect filed with
the records of the Trust, a copy of which shall be delivered
to DAVID, if living, or, if not, a copy of which shall be
delivered to SLOAN if he is eighteen (18) years or older
at that time.  Any Trustee is authorized at any time and
from time to time, while acting as a Trustee, to revoke,
alter or amend any designation previously made by him, by
a subsequent acknowledged, written instrument similarly
executed, delivered and filed; provided, however, that no
such revocation or amendment shall affect the tenure of
any co-Trustee who has commenced to serve.  If more than
one unrevoked designation is on file, the one executed last
in time shall govern.

Section D.    Resignation.

Every Trustee hereunder is authorized to resign
at any time, for any reason, by an acknowledged, written
instrument to that effect filed with the records of the
Trust, a copy of which shall be delivered to such Trustee's

AMF00267793

successors, if any.   In addition, a copy of such instrument
shall be delivered to DAVID, if living, or, if DAVID is
not living, to SLOAN, if he is eighteen (18) years or older
at that time.

Section E.    Waiver of Bond.

    No Trustee, co-Trustee or successor Trustee here-
under shall be required to give any bond or security in
any court or jurisdiction for acting hereunder.

Section F.    No Compensation.

    None of CAROL, PETER, HARRY or THEODORE, while
serving as Trustee, co-Trustee or successor Trustee here-
under, shall receive compensation or commissions of any
kind for acting hereunder, but they shall be entitled to
reimbursement for any expenses incurred in connection with
her or his administration of any trust created herein.

## ARTICLE SEVEN
### TRUSTEE'S POWERS AND PROVISIONS

Section A.    Trustee's Powers.

    The Trustee is granted all of the following rights,

AMF00267794

powers, authorities, privileges and discretions to adminis-
ter each trust herein created, in addition to those granted
elsewhere herein and by applicable law, to be exercised
only in a fiduciary capacity at any time and from time to
time within the limits of the rule against perpetuities,
including during the period after the termination of the
Trust and prior to the final distribution of assets, as
the Trustee may determine in the Trustee's absolute discre-
tion to be advisable, without authorization by any court;
and the exercise of all such rights, powers, authorities,
privileges and discretions shall be binding upon, and conclu-
sive against, all persons who are interested in, or who
claim an interest in, the Trust:

 1. <u>Retention</u>.

  To retain indefinitely, or for any lesser period,
  all or any part of the property of such trust
  in the form in which it is received, regardless
  of whether such property is authorized by law
  for the investment of trust funds, regardless
  of any law requiring diversification of trust
  investments, without any liability for loss because
  of depreciation in value;

 2. <u>Investments</u>.

  To invest and reinvest all or any part of the
  property of such trust in any kind of real or
  personal property, including:  securities; oil,
  gas, mineral interests and other natural resources;
  commodity futures and foreign exchange; and land,
  buildings, mortgages, and other interests in real
  estate; to acquire any such investment from any

-20-

AMF00267795

person, including any beneficiary of such trust,
the estate of any deceased beneficiary, the estate
of the Grantor, or any estate or other trust in
which any beneficiary has an interest; to make
any such investment or reinvestment without regard
to:  (a) the proportion which such investment
may bear to the value of such trust; (b) the rela-
tion such investment may bear to the type or char-
acter of the other investments of such trust;
and (c) any law requiring diversification of trust
investments; and to make and retain such invest-
ment even though such investment shall be when
made, or shall thereafter become, unproductive
of income or speculative, and regardless of whe-
ther such investment is authorized by law for
the investment of trust funds, without any liabil-
ity for loss because of depreciation in value;
as used herein, the term "securities" shall be
construed to include, but shall not be limited
to, common, preferred and other classes of capital
stock, regardless of dividend arrearages; warrants,
options, puts and calls; bonds, debentures, notes
and other fixed income-bearing obligations, with
or without conversion privileges, notwithstanding
default in interest; and units of participation
in common trust funds, investment trust stocks
and mutual fund shares; regardless of whether
such securities are:  (i) listed on any stock
exchange or traded in any public market; (ii)
registered with, or approved by, any securities
commission or other governmental regulatory body;
(iii) foreign or domestic; or (iv) subject to
investment letters or other contractual or legal
restrictions on the ownership, retention or dispo-
sition thereof;

3.   Sales.

To sell all or any part of the property of such
trust to any person including any beneficiary
of such trust, the estate of any deceased benefi-
ciary, the estate of the Grantor, or any estate
or other trust in which any beneficiary has an
interest, at public or private sale, for cash
or upon credit for any period, regardless of any
law limiting such period, with or without secur-

-21-

AMF00267796

ity, or partly for cash and partly upon credit, upon any terms and conditions; similarly to make exchanges of any such property for other property of equivalent fair market value, whether or not of like kind or similar use; to grant options to sell any such property upon any terms, for any period, regardless of any law limiting such period, and regardless of whether any considera- tion is received for the granting of any such option; to make short sales of securities, whether or not owned by such trust, and to borrow an equi- valent amount of securities with which to make any short sale;

4.   Securities.

To exercise all rights and powers over all of the securities constituting all or any part of the property of such trust which could be exer- cised by persons owning similar securities in their own right, including powers:  to vote on any proposition or election at any meeting of security holders for any purpose, including the purpose of electing any Trustee or any employee, partner or officer of any Trustee as a director or as an officer of any corporation, the secur- ities of which constitute all or any part of the property of such trust; to grant discretionary proxies to vote at any such meeting, with or with- out power of substitution; to consent to, join in, become a party to or oppose any reorganization, readjustment, recapitalization, foreclosure, merger, voting trust, dissolution, consolidation, exchange, sale of assets or other corporate action, and to deposit any securities with any protective, reorganization or similar committee, depositary or trustee, and to pay from the property of such trust all fees, expenses, assessments and other charges incurred in such connection; to exercise warrants, options and conversion, subscription or other rights, and to make any necessary pay- ments in connection therewith from the property of such trust, or to sell any such rights, or to refrain from exercising any such rights, per- mitting them to expire; to borrow funds with which to exercise any such rights, and to secure any

AMF00267797

loan so incurred by pledge of the securities ac-
quired thereby or by pledge of any other property
of such trust; to give investment letters and
other assurances in connection with the acquisi-
tion of any securities, and to rely upon advice
of counsel in disposing of any securities subject
to investment letters or other restrictions; to
receive and retain as a trust investment any new
securities or other property distributed as a
result of any of the foregoing;

5.    Property Management.

To hold securities or other property either in
the name of a nominee without indicating the fidu-
ciary character thereof, unregistered, or in such
form that title will pass by delivery; to possess,
manage, operate, develop, subdivide, dedicate
for public use, demolish, construct, reconstruct,
exchange, partition, repair, alter, improve and
change, structurally or otherwise, any realty
or personalty constituting all or any part of
the property of such trust; to mortgage any such
property and to modify, renew, extend, reduce,
pay off and satisfy mortgages on such property
and any installments of principal or interest
due thereon, and to waive any defaults; to continue
any mortgage after maturity, with or without re-
newal or extension, upon any terms, and to fore-
close any mortgage; to purchase any mortgaged
property or to acquire any mortgaged property
by deed from the mortgagor in lieu of foreclosure;
to permit any such property to be lost by tax
sale, foreclosure or other proceeding; to abandon,
destroy or convey at nominal consideration or
without consideration any property which is, or
has become, worthless, hazardous, subject to con-
fiscatory taxation or of insufficient value to
warrant keeping or protecting, and thereafter
to have no further responsibility to keep informed
as to the status of any such property; to grant
or release easements or charges of any kind, for
any period, regardless of whether any considera-
tion is received for such grant; to insure any
property of such trust against any risks, hazards
and liabilities; to lease any property of such
trust and to renew or extend leases upon any terms
and for any period, including a period extending
beyond the probable or actual term of such trust,
regardless of any law limiting such period; to
amend, change or modify leases; to grant options
to lease and options to renew leases for any per-
iod, regardless of whether any consideration is

-23-

AMF00267798

received for the granting of any such option;
and to pay from the property of such trust all
expenses incurred in connection with any of the
foregoing;

6.   Business Interests.

To form one or more corporations, alone or with
others, in any jurisdiction, and to transfer all
or any part of the property of such trust to any
such corporation in exchange for the securities
or obligations of such corporation; to form one
or more partnerships in any jurisdiction, in which
such trust shall be either a general or limited
partner, and to transfer all or any part of the
property of such trust to any such partnership
as a capital contribution; to delegate to the
board of directors or to one or more officers
of any such corporation, or to one or more part-
ners of any such partnership, any powers, author-
ities and discretions; to enter into joint ventures
or associations with others on any terms; to enter
into, modify or terminate agreements respecting
voting rights, management, retention or disposi-
tion of any corporation or partnership or interest
therein constituting all or any part of the prop-
erty of such trust; to continue any business in
which the Grantor had an interest, or to dispose
of any such business on any terms and conditions,
without any liability for loss because of depre-
ciation in value;

7.   Lending.

To lend any part of the property of such trust·
to any person, including any beneficiary of such
trust, the estate of any deceased beneficiary,
or any estate or other trust in which any benefi-
ciary has an interest, upon any reasonable terms
and conditions, for any period, with or without
security, for any purpose whatsoever; provided,
however, that no loan of principal or income shall
be made to the Grantor for any purpose;

8.   Borrowing.

To borrow funds on behalf of such trust from any

-24-

AMF00267799

person, including any Trustee, any beneficiary
of such trust, the estate of any deceased benefi-
ciary, or any estate or other trust in which any
beneficiary has an interest, upon any terms and
conditions, for any period, for any purpose con-
nected with the protection, preservation or im-
provement of any property of such trust, for in-
vestment purposes, for the purpose of paying taxes
and expenses, or for the purpose of making any
distribution to a beneficiary which is authorized
herein; to renew, modify or extend existing loans
on similar or different terms; to mortgage or
otherwise pledge property of such trust as security
for the repayment of such borrowing;

9.  <u>Banking</u>.

To open and maintain one or more interest-bearing
or non-interest-bearing accounts with any bank
or trust company, including any Trustee, or any
savings and loan association or building and loan
association; to deposit all or any part of the
property of such trust to the credit of any such
account, and to permit such property to remain
on deposit in any such account without being li-
able for any loss of income; to lease one or more
safe deposit boxes for the safekeeping of property
of such trust; to open and maintain one or more
cash or margin accounts with any brokerage firm
or bank or trust company, including any Trustee,
and to conduct, maintain and operate any such
account for the purchase and sale of securities,
commodity futures and foreign exchange; and in
connection therewith, to borrow money, obtain
guarantees, and engage in all other activities
which are necessary or incidental to conduct,
maintain and operate any such account;

10.  <u>Distributions in Kind</u>.

To make any division, allocation or distribution
(including the satisfaction of any pecuniary amount)
authorized or directed herein, either wholly or
partly in kind, even though shares be composed
differently; except as is otherwise herein provided,
to determine the fair market value of all property
so divided, allocated or distributed, to the extent
permitted by law;

11.  <u>Consolidated Holdings</u>.

To hold and invest separate funds held for minors

-25-

AMF00267800

and separate trusts, if there is more than one,
in one or more consolidated accounts, and to allo-
cate undivided or fractional interests in one
or more assets to each such fund or trust and
to administer all or any part of any trust fund
consolidated with the funds of any other trust
created by the Grantor; provided that separate
records are maintained of the property of each
such fund or trust;

12.  Claims.

To litigate, enforce, abandon, adjust, compromise,
compound, settle, collect, pay, prepay, defer
or discharge any obligation, debt, tax, premium,
dividend, insurance policy, death benefit, claim,
controversy or suit at law or in equity, of what-
soever kind or nature which may exist or arise
against or in favor of such trust, upon any terms
and conditions; to submit any such matter to arbi-
tration, and to agree to be bound thereby; to
extend the time of payment for any such matter
with or without security;

13.  Removal of Assets.

To remove all or any part of the property of such
trust from the jurisdiction which is the situs
of such trust, and to take and keep such property
outside such jurisdiction and in any other place
or places within or outside the United States,
during the term of such trust or for any lesser
period;

14.  Agents.

To employ one or more brokers, agents, accountants,
real estate experts, attorneys, custodians, apprai-
sers, employees, investment advisers and others,
including any Trustee or any employee, partner
or officer of any Trustee; regardless of whether
a bank or trust company is acting as a Trustee,
so long as any individual is acting as a Trustee,
the individual Trustee or Trustees are authorized
to employ an investment adviser in addition to
such bank or trust company; to pay from the prop-
erty of such trust all fees, expenses and disburse-
ments thereby incurred, without diminution of
any Trustee's commissions; to act or to refrain
from acting upon the advice or recommendations

AMF00267801

received from any such adviser without liability
for any act done or omission made in good faith
in reliance upon such advice or recommendations;

15.   Delegation.

To delegate to any suitable and appropriate per-
son, firm or corporation, any ministerial duties
in connection with the rights, powers, authorities,
privileges and discretions which are granted here-
in; to delegate to any other Trustee, if there
is one, any of the rights, powers, authorities,
privileges and discretions which are granted here-
in, including power to sign checks and other in-
struments for the payment of money, power to give
orders for the purchase and sale of securities,
and power to have custody of all or any part of
the property of such trust; provided, however,
that any such delegation shall be revocable at
any time by the Trustee making it;

16.   Conflict of Interest.

To act with respect to any and all property held
in such trust and to manage, invest, dispose of
or retain the same even though any Trustee may
have a personal interest in such property or in
any investment or reinvestment or in any business
or corporation or other entity in which all or
part of the property held in such trust shall
be invested or reinvested, in like manner and
with like immunity from liability as if a complete
stranger thereto; to deal with any Trustee (includ-
ing herself) as an individual, or as a member
of a partnership, or as an officer, stockholder,
director or employee of any corporation or other
entity, without liability except for negligence
or wrongful misconduct, and the usual rules prohib-
iting a Trustee from dealing with herself as an
individual or with respect to any matter in which
she has an interest which is personal or indivi-
dual shall not apply; to employ any Trustee (in-
cluding herself), a partnership with which any
Trustee (including herself) is associated, or
any officer or employee of any corporate Trustee
as an attorney or other agent; and to cause any
Trustee (including herself), the partners with
whom any Trustee (including herself) is associated,
any Trustee's employees or any officer or employee
of any corporate Trustee hereunder to act as an

AMF00267802

officer, employee or agent, or in any other capac-
ity, or in more than one such capacity in any
corporation whose securities shall be held by
any Trustee and to allow such person to vote for
such purposes; and to compensate any such person
for so acting in addition to any lawful fiduciary
fees or commissions to which such person may be
entitled for acting as a fiduciary hereunder;

17.   Inventories and Accounts.

To refrain from making annual or other periodic
inventories and accounts of the receipts, invest-
ments, disbursements and proceedings of such trust,
notwithstanding any statute or rule of law requir-
ing such inventories and accounts;

18.   General Powers.

To make any payment, to receive any money, to
take any action, and to make, execute, deliver
and receive any contract, deed, instrument, or
other document which is advisable to exercise
any of the foregoing powers or to carry into ef-
fect any provision contained herein; and in making
any payment or distribution, or in otherwise act-
ing hereunder, to rely upon any notice, certifi-
cate, affidavit, letter, telegram, cable or other
written instrument which is believed to be genuine.

Section B.   Exculpation of Trustee.

No person, insurer or other entity which shall

deal with the Trustee shall be bound to see to the applica-

tion of any money or other property received by the Trustee

or to inquire into the authority for, or propriety of, any

action taken by the Trustee.  The Trustee shall not be li-

able for any act or omission in administering any trust

herein created; except that the Trustee shall be liable

-28-

AMF00267803

for her own actual fraud, gross negligence or willful miscon-
duct.  No Trustee shall be responsible for any act or omis-
sion of any other Trustee.  If the Trustee becomes liable
as Trustee to any person not beneficially interested in
any trust herein created in connection with matters not
within the Trustee's control and not due to the Trustee's
actual fraud, gross negligence or willful misconduct, the
Trustee shall be entitled to indemnity out of the property
of such trust.

Section C.   Limitations on Trustees and Others.

      No Trustee, who is also a beneficiary of any trust
herein created to whom income or principal may be distrib-
uted currently, shall exercise, or participate in the exer-
cise of, any discretion to pay or apply the net income or
principal of such trust, or to terminate such trust.  No
Trustee, who is under a legal obligation to support a bene-
ficiary of any trust herein created to whom income or prin-
cipal may be distributed currently, shall exercise, or parti-
cipate in the exercise of, any discretion to pay or apply
the net income or principal of such trust in discharge of
that legal obligation.  No Trustee shall lend the principal
or income of any trust herein created directly or indirectly
to the Grantor.  Notwithstanding section 7-1.11 of the Estates,

AMF00267804

Powers and Trusts Law of New York or any other comparable provision of law, no Trustee shall have the power to pay to the creator of this trust any amount, whether as reimbursement for income taxes or otherwise. No person shall be enabled to purchase, exchange or otherwise deal with or dispose of the principal or income of any trust herein created for less than an adequate consideration in money or money's worth. No person acting in a nonfiduciary capacity shall have any power to vote or direct the voting of any stock or other securities constituting all or any part of the property of any trust herein created; to direct investments or reinvestments, or veto proposed investments or reinvestments, of any property constituting all or any part of the property of any such trust; or to reacquire all or any part of the property of any such trust by substituting other property of equivalent value. The foregoing limitations shall prevail over any conflicting or apparently conflicting provisions of this Agreement.

<u>Section D</u>.   <u>Release of Powers</u>.

Every Trustee hereunder may disclaim or release, in whole or in part, any power given to such Trustee with respect to the Trust herein created by filing with the records of the Trust an acknowledged written instrument con-

-30-

AMF00267805

taining such disclaimer or release and by delivering a copy
thereof to DAVID, if living, and, if DAVID is not living,
to SLOAN if he is eighteen (18) years or older at that time.

Section E.   Non-Judicial Accounting.

To avoid the expenses and delay incident to a
judicial settlement of the Trustee's accounts, the Trustee
is authorized to render informal accounts of proceedings
as Trustee of any trust herein created, to each beneficiary
of such trust not under any legal disability, and to the
executors or administrators of each deceased beneficiary
who was a beneficiary during all or any portion of the period
accounted for.  The beneficiaries and executors or admin-
istrators of deceased beneficiaries to whom such account
shall be rendered shall have full power to settle finally
any such account and on the basis of such account, to re-
lease the Trustee, individually and as Trustee, from all
liability, responsibility or accountability for the Trus-
tee's acts or omissions as Trustee; provided, however, that
such settlement shall not affect any claim that any person
beneficially interested in such trust may have against any
other person beneficially interested in such trust by reason
of the administration of such trust.  Such settlement and
release of the Trustee shall be binding upon all benefici-

-31-

AMF00267806

aries and others interested in or claiming an interest in
such trust, even if then under any legal disability or not
as yet in being, and shall have the force and effect of
a final decree, judgment or order of a court of competent
jurisdiction rendered in an appropriate action or proceeding
for an accounting in which jurisdiction was obtained of
all necessary and proper parties; provided, however, that
nothing in this Section E shall be deemed to preclude the
Trustee from having a judicial settlement of the Trustee's
transactions, if the Trustee shall deem it advisable.  As
used in this Section E, the term "beneficiary" shall mean
a person to whom the Trustee is currently authorized or
directed to pay or apply all or any portion of the net in-
come or principal of any trust created herein.

## ARTICLE EIGHT

### CONSTRUCTION PROVISIONS

Section A.   Trustee.

As used herein, the term "Trustee" shall include
the Trustee and all successor Trustees and co-Trustees named
herein or otherwise designated or appointed, and to mean
the plural form thereof whenever the facts and context re-
quire.

–32–

AMF00267807

Section B.    Child, Children, Issue.

It is expressly intended in this Agreement that any individual who is not included in the terms child, children or issue, as hereinafter defined, shall be excluded from any and all gifts and other dispositions to a child, children or issue under this Agreement or pursuant to any provisions of law.

1.    Child or Children.    The term "child" or "children" of any person shall be construed to mean only that person's natural legitimate descendant or descendants in the first degree, and such term shall not include that person's adopted or illegitimate descendant or descendants in the first degree.

2.    Issue.    The term "issue" of any person shall be construed to mean only that person's natural legitimate descendants in any degree, and such term shall not include (a) that person's adopted or illegitimate descendants in any degree or (b) a legitimate descendant (whether adopted or natural) in any degree of an adopted or illegitimate descendant in any degree of that person.

Section C.    Beneficiary.

At any particular time of determination, the term "beneficiary" shall mean a person to whom the Trustee is

-33-

AMF00267808

then authorized or directed to pay or apply all or any por-
tion of the net income or principal of the Trust.

Section D.   Applicable Law.

    All questions pertaining to the validity, construc-
tion and administration of this Agreement and of any trust
herein created, shall be determined in accordance with the
laws of the State of New York.

Section E.   Headings.

    The headings, titles and subtitles herein are
inserted solely for convenient reference, and shall be ig-
nored in any construction hereof.

    IN WITNESS WHEREOF, this Trust Agreement has been
executed in triplicate on the day and year first above written.

                                                    (L.S.)
DAVID R. KAMENSTEIN, Grantor

                                                    (L.S.)
CAROL L. KAMENSTEIN, Trustee

-34-

AMF00267809

SCHEDULE A

TO

1984 SLOAN GEORGE KAMENSTEIN IRREVOCABLE TRUST

TRUST AGREEMENT dated the  11TH  day of APRIL ,
1984, by and between DAVID R. KAMENSTEIN, as Grantor, and
CAROL L. KAMENSTEIN, as Trustee.

One hundred dollars cash

DAVID R. KAMENSTEIN, Grantor

CAROL L. KAMENSTEIN, Trustee

AMF00267810

STATE OF NEW YORK )
              : ss.:
COUNTY OF NEW YORK)

       On this _11th_ day of _April_ , 1984, before me personally appeared DAVID R. KAMENSTEIN, to me known and known to me to be the person mentioned and described in, and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

                           _____
                           Notary Public

STATE OF NEW YORK )
              : ss.:
COUNTY OF NEW YORK)

LIONEL ETRA
Notary Public, State of New York
No. 31-1135475
Qualified in New York County
Commission Expires March 30, 1985

       On this _11th_ day of _April_ , 1984, before me personally appeared CAROL L. KAMENSTEIN, to me known and known to me to be the person mentioned and described in, and who executed the foregoing instrument, and she duly acknowledged to me that she executed the same.

                           _____
                           Notary Public

LIONEL ETRA
Notary Public, State of New York
No. 31-1135475
Qualified in New York County
Commission Expires March 30, 1985

AMF00267811