**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01565 (SMB) |
| Plaintiff, | **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY** |
| v. | |
| STANDARD CHARTERED FINANCIAL SERVICES (LUXEMBOURG) S.A. (f/k/a AMERICAN EXPRESS FINANCIAL SERVICES (LUXEMBOURG) S.A. and f/k/a AMERICAN EXPRESS BANK (LUXEMBOURG) S.A.), as represented by its Liquidator HANSPETER KRÄMER, HANSPETER KRÄMER, in his capacities as liquidator and representative of STANDARD CHARTERED FINANCIAL SERVICES | |

(LUXEMBOURG) S.A., STANDARD
CHARTERED BANK INTERNATIONAL
(AMERICAS) LTD., f/k/a AMERICAN
EXPRESS BANK INTERNATIONAL, and
STANDARD CHARTERED INTERNATIONAL
(USA) LTD., f/k/a AMERICAN EXPRESS
BANK LTD.,

            Defendants.

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   PROCEDURAL HISTORY .......................................................................................2

III.  THE LEGAL STANDARD FOR A STAY OF PROCEEDINGS ....................................4

    A.    Effect on the Trustee ..........................................................................................5

    B.    Effect on the Defendants .....................................................................................8

    C.    The Interests of the Court ....................................................................................9

    D.    The Interests of Madoff's Victims and the Public At Large ...............................11

IV.   DEFENDANTS' RELIANCE ON THE ISSUANCE OF STAYS IN OTHER
    CASES IS MISPLACED .........................................................................................11

V.    THE TRUSTEE SHOULD BE PERMITTED TO PROCEED WITH DISCOVERY .....14

    A.    The Strengths of the Trustee's Claims Weigh in Favor of Discovery ..................14

    B.    The Limited Breadth of Discovery and the Minimal Burden on Defendants
           Weigh in Favor of Discovery .............................................................................15

    C.    The Risk of Unfair Prejudice to the Trustee Weighs in Favor of Discovery ........16

VI.   CONCLUSION .......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Blue Diamond Growers*,
   232 F. Supp. 3d 509 (S.D.N.Y. 2017) ................................................................. 12

*Anwar et al v. Fairfield Greenwich Limited, et al.*,
   No. 1:09-cv-00118-VM (S.D.N.Y.) ............................................................. *passim*

*Barrett v. Forest Labs., Inc.*,
   12-CV-5224 (RA), 2015 WL 4111827 (S.D.N.Y. July 8, 2015) ............................. 2

*Benitez v. Lopez*,
   No. 17-CV-3827-SJ-SJB, 2018 WL 11159406 (E.D.N.Y. May 7, 2018) ............... 16

*Catskill Mountains Chapter of Trout Unlimited v. U.S. EPA*,
   630 F. Supp. 2d 295 (S.D.N.Y. 2009) .......................................................... 13, 14

*In re Chase Manhattan Corp. Secs. Litig.*,
   No. 90 Civ. 6092 (LMM), 1991 WL 79432 (S.D.N.Y. May 7, 1991) ..................... 2

*Conomos v. Chase Manhattan Corp.*,
   No. 97 CIV. 0909 (PKL) 1998 WL 118154 (S.D.N.Y. Mar. 17, 1988) ........... 14, 15

*Delgado v. NJ Transit Rail Operations, Inc.*,
   329 F.R.D. 506 (S.D.N.Y. 2019) ................................................................... 11, 12

*Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food &
   Commercial Workers*,
   13-cv-7187 (SJF) (SIL), 2014 WL 4384712 (E.D.N.Y. Sept. 3, 2014) ................ 15

*Greene v. Emersons, Ltd.*,
   86 F.R.D. 66 (S.D.N.Y. 1980) ...................................................................... 14, 15

*Estate of Heiser v. Deutsche Bank Trust Co. Ams.*,
   No. 11 Civ. 1608 AJN MHD, 2012 WL 2865485 (S.D.N.Y. July 10, 2012) .......... 4, 12

*Kappel v. Comfort*,
   914 F. Supp. 1056 (S.D.N.Y. 1996) ............................................................... 5, 11

*Klein v Adams & Peck*,
   436 F. 2d 337 (2d Cir. 1971) ............................................................................. 4

*In re Literary Works in Electronic Databases Copyright Litigation*,
   MDL 1379, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) ...................................... 12

*Loftus v. Signpost Inc.*,
   464 F. Supp. 3d 524 (S.D.N.Y. 2020) ................................................................. 12

*Maldonado-Padilla v. Holder*,
   651 F.3d 325 (2d Cir. 2011) ............................................................................... 4

*Mirra v. Jordan*,
   15-CV-4100 (AT) (KNF), 2016 WL 889559 (S.D.N.Y. Mar. 1, 2016) .................... 5

*Mount v. Pulse Point, Inc.*,
   No. 13 Civ 6592 (NRB), 2014 WL 902965 (S.D.N.Y. March 5, 2014) ................. 13

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................................ 4

*Picard v. ABN AMRO Bank N.V.*,
   No. 1:20-cv-03684 (S.D.N.Y. May 28, 2020), ECF No. 4 ...................................... 6

*Picard v. BNP Paribas S.A.*,
   No. 12-01576 (Bankr. S.D.N.Y., June 1, 2020), ECF No. 162 ............................... 6

*Picard v. Ceretti (In re BLMIS)*,
   Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug.
   11, 2015) .............................................................................................................. 9

*Picard v. Citibank, N.A.*,
   No. 20-1333 (2d Cir.) .................................................................................... *passim*

*Picard v. Legacy Capital Ltd*,
   No. 20-1334 (2d Cir.) ................................................................................... *passim*

*Picard v. Merkin (In re BLMIS)*,
   440 B.R. 243 (Bankr. S.D.N.Y. 2010) ................................................................. 9

*Picard v. Natixis*,
   Adv. Pro. No. 10-05353 ( Bankr. S.D.N.Y. July 1, 2020) ...................................... 6

*Picard v. Square One Fund Ltd.*,
   No. 10-04330 (Bankr. S.D.N.Y.) ................................................................. 7, 9, 10

*Rivera v. Inc. Vill. of Farmingdale*,
   No. CV 06-2613 (DRH) (ARL), 2007 WL 3047089 (E.D.N.Y. Oct. 17, 2007) .................. 14

*Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*,
   259 F.2d 921 (D.C. Cir. 1958) .............................................................................. 4

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*,
   No. 01 Civ. 1044 (RJH) (HBP), 2005 WL 912184 (S.D.N.Y. Apr. 19, 2005) ...................... 12

*In re WRT Energy Secs. Litig.*,
   No. 96 CIV. 3610 (JFK), 1996 WL 580930 (S.D.N.Y. Oct. 9, 1996) .....................................2

*Youngbloods v. BMG Music*,
   No. 07 Civ. 2394 (GBD) (KNF), 2011 WL 43510 (S.D.N.Y. Jan. 6, 2011)............................8

**Statutes**

11 U.S.C. § 550.........................................................................................................................3

15 U.S.C. §§ 78aaa–*lll* ................................................................................................ 1, 3, 11

Securities Investor Protection Act .............................................................................................1

**Rules**

Fed. R. Bankr. P. 2004 .................................................................................................. 16, 17, 18

Fed. R. Civ. P. 26............................................................................................................ 1, 17, 18

Fed. R. Civ. P. 26(c)...................................................................................................................2

Fed. R. Civ. P. 26(f)................................................................................................................3, 4

Plaintiff Irving H. Picard (the "Trustee"), as the Trustee for the substantively

consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC

("BLMIS"), under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–*lll*, and

the chapter 7 estate of Bernard L. Madoff, respectfully submits this memorandum of law in

opposition to the Defendants' Motion to Stay.

## I.    PRELIMINARY STATEMENT

The Defendants' motion, a request to further stall the Trustee's recovery efforts pending

the outcome of the Second Circuit appeals in the *Picard v. Citibank, N.A.*, No. 20-1333 (2d Cir.)

("*Citi*") and *Picard v. Legacy Capital Ltd,*, No. 20-1334 (2d Cir.) ("*Legacy*") avoidance actions

is a futile attempt to delay the inevitable. Regardless of the outcome in the Second Circuit, the

Trustee's Proposed Amended Complaint ("PAC") meets any applicable pleading standard in this

case now. Additional delay in litigating this action serves neither parties' legitimate interests nor

supports judicial economy.

The Trustee's PAC contains plausible allegations that more than satisfy the District

Court's willful blindness standard. As a result, irrespective of the outcome of the *Citi/Legacy*

appeals, this case will proceed to discovery under Rule 26. As the Trustee alleges, two of the

Defendants' executives, after reviewing materials furnished by BLMIS feeder fund Fairfield

Sentry, separately concluded: (1) Fairfield Sentry's reported returns (and therefore BLMIS's)

were not possible; (2) Fairfield Sentry would explode; and (3) Fairfield Sentry was a scam. (*See*

PAC ¶¶ 99, 101, ECF No. 120-1.) After becoming aware of these concerns and drawing these

conclusions, the Defendants turned away, failing to investigate further and instead took steps to

insulate their own exposure to a BLMIS collapse by shifting all risks to their clients. All the

while, the Defendants continued to benefit from the Ponzi scheme by charging clients fees for

investing in the BLMIS feeder funds and sharing management and performance fees with

Fairfield Greenwich Limited which managed Fairfield Sentry.

The Trustee has proposed staged discovery that begins with a narrow and non-

burdensome request for the Defendants to produce the documents they previously produced in

the *Anwar*[1] consolidated cases and provide access to the deposition transcripts of their employees

and former employees in the same litigation. Under Rule 26(c) the Trustee's request should not

be stayed. The Defendants are not entitled to a stay of discovery in the absence of good cause

shown and their anticipated future argument that the Trustee's PAC is futile is akin to a motion

to dismiss which courts have routinely rejected as good cause for granting a stay. *See Barrett v.*

*Forest Labs., Inc.,* 12-CV-5224 (RA), 2015 WL 4111827, at *4 (S.D.N.Y. July 8, 2015) ("It, of

course, is black letter law that the mere filing of a motion to dismiss the complaint does not

constitute 'good cause' for the issuance of a discovery stay."); *see also In re Chase Manhattan*

*Corp. Secs. Litig.*, No. 90 Civ. 6092 (LMM), 1991 WL 79432, at *1 (S.D.N.Y. May 7, 1991); *In*

*re WRT Energy Secs. Litig.*, No. 96 CIV. 3610 (JFK), 1996 WL 580930, at *1 (S.D.N.Y. Oct. 9,

1996).

There is no need to wait for the outcome of the *Citi/Legacy* appeals. The Defendants'

Motion to Stay should be denied and this case should proceed with the staged discovery plan

proposed by the Trustee.

## II.    PROCEDURAL HISTORY

The Trustee filed this action in 2012. Within weeks, the Defendants joined other

defendants in separate adversary proceedings in filing motions to withdraw the reference to have

numerous common legal issues determined by the District Court. At that time, to recover

---

[1] *Anwar et al v. Fairfield Greenwich Limited, et al.*, No. 1:09-cv-00118-VM (S.D.N.Y.)

fraudulent transfers under Section 550 of the Bankruptcy Code, it was not the Trustee's burden to plead the Defendants' affirmative defense of good faith. In 2014, the District Court issued two separate decisions on the motions to withdraw the reference. In the first, the District Court ruled that in a SIPA proceeding the Trustee must plausibly allege that transferees were willfully blind to or had actual knowledge of fraud at BLMIS. In the second, the District Court held that the Trustee's claims against subsequent transferees who received transfers from Fairfield Sentry or other foreign based feeder funds violated the presumption of extraterritoriality and further were barred by principles of international comity. The District Court then remanded the cases to this Court for disposition consistent with its extraterritoriality decision.

In 2016, this Court issued its extraterritoriality decision based on the District Court's instruction and dismissed this action. The Trustee appealed and the Second Circuit reversed. A motion for an *en banc* review was denied but a stay issued while the Defendants petitioned for certiorari. The Supreme Court denied the petition and this case, along with others, was remanded to this Court on June 1, 2020.

The Trustee filed his Motion for Leave to File an Amended Complaint ("Motion for Leave to Amend") on October 14, 2020. In response, the Defendants requested a conference to ask the Court to delay briefing on the Trustee's Motion for Leave to Amend until after the Second Circuit ruled on the appeals pending in the *Citi* and *Legacy* proceedings. On October 29, 2020, the Court held a conference during which the Court suggested that the parties proceed with discovery and permitted the Defendants to file a formal motion for a stay.

On November 6, 2020, the Trustee sent a letter to the Defendants requesting a Rule 26(f) conference in which the Trustee suggested a staged discovery process. (*See* November 6, 2020 letter from the Trustee, attached as Exhibit A to the December 3, 2020 Declaration of Jonathan

A. Forman in Support of the Trustee's Opposition to Standard Chartered's Motion to Stay

("Forman Dec.")) The Trustee proposed that the Defendants produce the documents they

previously produced as defendants in the *Anwar* litigation and provide the Trustee with access to

deposition transcripts of the Defendants' employees and former employees taken in that

litigation. The Trustee has been unable to access this information on his own because it is

covered by a confidentiality order obtained by the Defendants.

On November 12, 2020, the Defendants filed their Motion to Stay seeking to stay both

the briefing on the Trustee's Motion for Leave to Amend and any discovery. Finally, on

November 20, 2020, the Defendants informed the Trustee they would not participate in a Rule

26(f) conference. (*See* November 20, 2020 email from counsel for the Defendants, attached as

Exhibit B to the Forman Dec.)

## III.     THE LEGAL STANDARD FOR A STAY OF PROCEEDINGS

As the Supreme Court has made clear, a stay is an intrusion into the ordinary process of

administration and judicial review and is not a matter of right. *Nken v. Holder*, 556 U.S. 418,

427, 433 (2009) (citing *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921,

925 (D.C. Cir. 1958)). Granting a stay is within the Court's discretion and "the party requesting a

stay bears the burden of showing that the circumstances justify an exercise of the Court's

discretion." *Maldonado-Padilla v. Holder*, 651 F.3d 325, 328 (2d Cir. 2011). While within the

court's discretion, a party's "right to proceed in court should not be denied except under the most

extreme circumstances." *Estate of Heiser v. Deutsche Bank Trust Co. Ams.*, No. 11 Civ. 1608

AJN MHD, 2012 WL 2865485, at *3 (S.D.N.Y. July 10, 2012) ("*Heiser*") (referencing *Klein v*

*Adams & Peck*, 436 F. 2d 337, 339 (2d Cir. 1971)).

Within the Second Circuit, courts hold it is incumbent on the party seeking a stay to show how the court should exercise its discretion under the five factors set out in *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996):

(1)  The private interests of the plaintiffs in proceeding expeditiously with the civil
     litigation as balanced against the prejudice to the plaintiffs if delayed;

(2)  The private interest and burden on the defendants;

(3)  The interests of the courts;

(4)  The interests of persons not parties to the civil litigation; and

(5)  The public interest.

An analysis of those factors necessitates the denial of the Defendants' Motion to Stay because the Defendants cannot establish the extreme circumstances that would warrant further delaying this case.

## A.  Effect on the Trustee

The motions to withdraw the reference and the ensuing appeals have delayed this case for nearly a decade and have prevented the Trustee from pursuing his claims through no fault of his own. A further stay will only prejudice the Trustee as memories fade and witnesses become unavailable over the passage of time.

The relevant events in this case occurred 12 to 18 years ago. With each passing day the Trustee faces the loss of witnesses, the loss of relevant documentary evidence, and the increasing potential that available witnesses will be unable to recall events crucial to the case. *See, e.g.*, *Mirra v. Jordan*, 15-CV-4100 (AT) (KNF), 2016 WL 889559 at *3 (S.D.N.Y. Mar. 1, 2016) ("witness memories fading into time" was one reason that the plaintiff would suffer unfair prejudice from a discovery stay).

5

The Defendants argue that because the Trustee agreed to a stay in other cases shows that there is no burden on the Trustee for a stay in this case. They point to the stays in *Picard v. ABN AMRO Bank N.V.*, No. 1:20-cv-03684 (S.D.N.Y. May 28, 2020), ECF No. 4 ("RBS"); *Picard v. BNP Paribas S.A.*, No. 12-01576 (Bankr. S.D.N.Y., June 1, 2020), ECF No. 162 ("BNP"); and *Picard v. Natixis*, Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y. July 1, 2020), ECF No. 185 ("Natixis"). But the reasons why stays were appropriate in those case do not exist here.

In *RBS,* this Court already ruled, unlike the present case, that the Trustee's proposed amended complaint was futile because it failed to allege willful blindness. By the time the Trustee's appeal reached the District Court, the Second Circuit had certified the direct appeals in the *Citi/Legacy* matters. Therefore, so as not to further delay those appeals, the Trustee sought a stay. The District Court granted the stay but permitted *RBS* to seek permission from the Second Circuit to join the *Citi/Legacy* appeals, which the Circuit denied. Instead, the Second Circuit permitted *RBS* to file an amicus brief, which it did.

Similarly, in *BNP*, this Court granted a partial motion to dismiss holding the Trustee had failed to plausibly allege that the *BNP* defendants were willfully blind. As a result, the Trustee agreed to await the Second Circuit's decision in *Citi*, which contained a similar fact pattern. Likewise, in *Natixis*, which also involved a similar set of facts, the Trustee agreed to await the outcome of the *Citi* appeal.

In contrast, this Court has not ruled on the sufficiency of the allegations of the Trustee's PAC, which involves a different set of facts. Here, the Defendants were subsequent transferees that purchased the Fairfield Sentry shares for use in a fund of funds it developed. After the fund of funds did not perform well and one of the Defendants' executives had determined the Fairfield Sentry returns were not possible and Fairfield Sentry would explode, the Defendants insulated

themselves from any loss if the Ponzi scheme unraveled by shifting the risk to its customers. At the same time, the Defendants: (1) entered into a fee sharing agreement with the Fairfield Sentry management entities; and (2) continued to charge their own clients fees based on the Fairfield Sentry shares held for them. As a consequence, the present case is much more akin to the *Square One* case in which no stay was sought. *Picard v. Square One Fund Ltd.*, No. 10-04330, (Bankr. S.D.N.Y.). There, this Court determined that the Trustee's amended complaint plausibly alleged the bad faith of Square One in applying the willful blindness standard, because, like the present case, the *Square One* manager eliminated his personal liability but continued leaving his investors at risk and charging them fees. *Square One*, ECF 184.

Finally, the Defendants suggest, but do not expressly argue, that this case should be stayed not only until after the *Citi/Legacy* appeals are finalized but also until after the Trustee's case against certain Fairfield Greenwich Group entities and partners is resolved (the "FGG Action"). The Defendants imply that if the Trustee does not prevail in the FGG Action he cannot proceed in this action because the initial transfers are not avoidable. In doing so, the Defendants note that briefing on the motion to dismiss in the FGG Action is to be completed by the end of next May, nearly six months from now, with no hearing scheduled. The Defendants' argument ignores the fact that the losing party in the FGG Action almost certainly will appeal, resulting in even further delay if this Court issues a stay pending the final outcome of the FGG Action. In addition, because of the numerous issues involved therein, waiting on the outcome of the FGG Action offers no assurance of final resolution of the issue of the avoidability of the initial transfers.

If stayed for another lengthy and indefinite period of time, the Trustee would be further prejudiced, and Madoff's victims would continue to wait for relief as this case languishes.

### B.  Effect on the Defendants

The Defendants incorrectly assess the impact of the outcome of the *Citi* and *Legacy*

appeals. The issues involved in the *Citi/Legacy* appeals can be summarized as: (1) Does the

Trustee have a duty to affirmatively allege a lack of good faith in a fraudulent transfer action

against a transferee; and (2) If so, is the standard of good faith one of willful blindness or a lower

objective standard of inquiry notice.

If the Second Circuit rules there is no duty on the Trustee to affirmatively allege the

Defendants' lack of good faith, there would be no need for further briefing on the Trustee's PAC.

If the Second Circuit rules the Trustee does have a duty to affirmatively allege the Defendants'

lack of good faith regardless of whether the lower objective standard of inquiry notice or the

higher subjective standard of willful blindness applies, no further briefing would be required

because the Trustee's PAC contains explicit allegations of willful blindness that this Court has

previously determined meets the District Court's higher willful blindness standard. In short, this

case will continue because the Trustee's PAC meets either standard.

These circumstances do not merit a stay. In *Youngbloods v. BMG Music*, No. 07 Civ.

2394 (GBD) (KNF), 2011 WL 43510, at *6 (S.D.N.Y. Jan. 6, 2011), the court rejected a stay

where "[j]udicial economy, which encompasses the interests of all actors involved, will be

promoted by the Court's managing both actions simultaneously" and because "the substantial

amount of work the Court and counsel would undertake going forward" would occur in the

instant action regardless of the other pending action. In addition, the court found that plaintiffs

may be harmed more where a stay would delay the "expeditious resolution of this litigation, now

in its fourth year." *Id.* at *7.

Under the Defendants' theory, the only way to avoid any risk of unnecessary briefing

would be to require the parties to wait until the *Citi/Legacy* appeals have resulted in a final non-

appealable order. Final resolution could take years. Based on past history in this liquidation, the

losing party in the *Citi/Legacy* appeals is likely to seek *en banc* reconsideration as well as

Supreme Court review. Just as the Defendants did with the extraterritoriality appeal, if the

Second Circuit issues a ruling adverse to them, the Defendants will likely seek a stay until a

Supreme Court decision. In the extraterritoriality appeal, this delay cost the Trustee nearly two

years after the Second Circuit's briefing was completed.

   In summary, there is no justification for the issuance of a stay in this case because there is

no burden placed on the Defendants.

### C.  The Interests of the Court

   The interests of the Court are not served by additional delay. The Defendants argue that

the Court would be burdened by the prospect of additional briefing if it considers the Trustee's

Motion for Leave to Amend now and the Second Circuit later reverses the District Court's

pleading requirements in the *Citi/Legacy* appeals. For the reasons stated above, the Trustee is

prepared to proceed regardless of which standard is applied to the PAC. The prospect of

additional briefing is minimal, and then, any briefing would be cabined to the effects of any

Second Circuit *Citi/Legacy* decision.

   To justify their claim that the Court would be unduly burdened by the need for additional

briefing, the Defendants wrongly state that the Trustee's PAC merely contains a recitation of

generic red flags that were previously rejected by this Court as failing to meet the willful

blindness standard. In making this claim, the Defendants ignore those cases where this Court

found the actual knowledge or willful blindness standard was satisfied on facts consistent with

the specific allegations in the Trustee's PAC. *See Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No.

09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015); *Picard v. Merkin (In re

BLMIS)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010); *Square One* ECF 184.

9

To be clear, in the PAC, the Trustee alleges that the Defendants not only had access to extensive objective evidence pointing to fraud at BLMIS, but also one of the Defendants' executives responsible for reviewing hedge fund investments connected the dots in real time and concluded that the returns reported by Fairfield Sentry were "not possible" and that Fairfield Sentry would "explode." Instead of investigating further, the Defendants turned away, took measures to protect themselves if the scheme collapsed, and entered into fee sharing agreements with Fairfield whereby the Defendants were paid fees based on the amount their clients invested in the Fairfield funds. In addition, the Defendants charged their clients fees for investing money into the Fairfield funds, including Fairfield Sentry. Later, another one of the Defendants' executives concluded that Fairfield Sentry would explode because it was a scam. The Defendants profited while eliminating any exposure to the risk that BLMIS was a scam. As such, the PAC includes allegations closely analogous to those in *Square One* in which this Court held the Trustee's complaint met the more stringent subjective willful blindness test.

Finally, the Defendants argue that this case should be stayed so that it can be coordinated with other subsequent transfer cases dismissed by the extraterritoriality decision to consider common issues on an omnibus basis. Yet, the Defendants do not say what common issues remain that require coordinated proceedings. All the previously withdrawn issues have been decided. From this point forward, this case should proceed based on its individual facts, and it should not be held to the pace of other cases with their own unique facts. In fact, this delay tactic is nothing more than what the good faith defendants attempted and which this Court summarily rejected. (*See* relevant portion of the February 14, 2014 transcript of the status conference held before Judge Bernstein in the *SIPC v. BLMIS* (*In re Madoff*), Adv. Pro. No. 08-01789 proceedings, attached as Exhibit C to the Forman Dec.)

### D.  The Interests of Madoff's Victims and the Public At Large

In addressing the *Kappel* factors, the Defendants make no mention of the hundreds of customers with approved customer claims yet to be satisfied. Further delay could mean that they may never receive the restitution to which they are entitled.

The Madoff Ponzi scheme is one of the world's largest financial frauds. SIPA was passed to restore trust in the broker-dealer system and provide a mechanism to recover funds to pay those with approved claims. Further delay erodes the very purposes of SIPA. The public and Madoff's victims benefit by this and all SIPA liquidations taking place orderly and expeditiously. The Trustee has been put in this prejudicial position through no fault of his own. The Defendants' request for a stay is simply another delay tactic to prevent a reckoning as to their involvement in the Madoff Ponzi scheme.

## IV.   DEFENDANTS' RELIANCE ON THE ISSUANCE OF STAYS IN OTHER CASES IS MISPLACED

Unable to justify a stay under the *Kappel* factors, the Defendants blindly cite to a number of cases in which stays were granted arguing that because stays were issued in those cases, a stay is required here. The cases cited by the Defendants are easily distinguished and provide no valid basis for a stay.

The Defendants cite *Delgado v. NJ Transit Rail Operations, Inc.*, 329 F.R.D. 506 (S.D.N.Y. 2019) as precedent for granting a stay because the *Delgado* court granted a stay pending the outcome of another action. However, the Defendants conveniently fail to explain that a decision in the other action could have provided full immunity to the *Delgado* defendants foreclosing plaintiff from proceeding at all. *Id.* at 508. The Defendants do not, because they cannot, claim that rulings in the *Citi/Legacy* appeals will preclude the Trustee from proceeding in this case as a matter of law.

The same is true of another of the Defendants' cited cases, *Albert v. Blue Diamond Growers*, 232 F. Supp. 3d 509 (S.D.N.Y. 2017). There, a settlement was pending in another class action that enveloped all the claims being asserted by the plaintiffs. *Id.* at 513. If the settlement was approved, it would completely eliminate any claims pending in the *Albert* case. *Id.*

Similarly, in *Heiser,* the plaintiffs were attempting to attach certain electronic fund transfers that passed though the defendants and had been frozen as a result of federal law. 2012 WL 2865485, at *1. The *Heiser* court issued a stay pending a New York state court decision as to whether or not the transfers were deemed property under New York law subject to attachment. *Id.* at *6. If the New York state court ruled the transfers were not property there was no basis for the *Heiser* case proceeding. *Id.* The Trustee's case is simply not analogous to *Delgado*, *Albert*, or *Heiser.*

Other cases cited by the Defendants are also inapposite. In *Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*, No. 01 Civ. 1044 (RJH) (HBP), 2005 WL 912184, at *3 (S.D.N.Y. Apr. 19, 2005), the Court stayed a patent infringement case while another court was determining whether the patent at issue was valid. In *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 527–28 (S.D.N.Y. 2020), the Court issued a stay because the Supreme Court was expected to issue a decision within six weeks that could render the case moot. In *In re Literary Works in Electronic Databases Copyright Litigation*, MDL 1379, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001), the Court granted a motion for stay because the Supreme Court was to issue a ruling within a matter of months as to the meaning of the applicable statute; a decision that could be dispositive of the plaintiff's claims as a matter of law. All three cases presented situations where stays were issued because determinations in other pending actions could have resulted in the elimination of the plaintiff's claims. That is not the case here.

12

Recognizing that they cannot argue that the *Citi/Legacy* appeals will bar the Trustee's claims as a matter of law, the Defendants turn to cases in which the court granted a stay pending another decision because waiting would: (1) prevent inconsistent rulings or (2) provide guidance in issuing its own decision. But the cases cited by the Defendants again do not involve circumstances similar to the present case, especially given the de facto stay the Defendants have already received since filing their motion to withdraw the reference in 2012.

In *Mount v. Pulse Point, Inc.*, No. 13 Civ 6592 (NRB), 2014 WL 902965, at *2 (S.D.N.Y. March 5, 2014) the Court issued a stay because briefing had already begun in another court on the same legal issue affecting the same class of persons. Further, the parties had previously attempted to consolidate the cases through the Multi-District Litigation process. *Id.* In view of the entwinement of the cases, the Court issued a stay. *Id.*

In fact, *Mount* underscores the prejudice to the Trustee of staying this case. In *Mount*, the court reasoned that because "a stay will only temporarily delay proceedings, and because the central dispute in this case is one of law, and not one that can be compromised by unavailable witnesses, fading memories, or lost documents, there will be little prejudice to plaintiffs." *Id.* In contrast, the central disputes between the Trustee and the Defendants are factual in nature, essentially who received what from whom and what did they know at the time. Any further delay in this case, including to the start of discovery, will prejudice the proper resolution of these factual disputes.

Similarly, in *Catskill Mountains Chapter of Trout Unlimited v. U.S. EPA*, 630 F. Supp. 2d 295, 307 (S.D.N.Y. 2009) the Court issued a stay because a sister circuit was in the process of determining a legal issue of first impression regarding a new administrative rule and the application of a federal statute. Further, the plaintiffs were participating as an amicus in the other

13

case. *Id.* at 306. Based on those facts, even though a decision in the other circuit would not be binding, the Court issued a stay. *Id.* at 307.

Ultimately, the Defendants admit that any decision from the *Citi/Legacy* appeals will not be case determinative of the Trustee's claims. They fall back on purported "helpful guidance" from the Second Circuit that would aid this Court in assessing the futility of the Trustee's PAC. No guidance is needed as the Trustee's allegations asserted in his PAC more than satisfy either applicable pleading standard.

## V.    THE TRUSTEE SHOULD BE PERMITTED TO PROCEED WITH DISCOVERY

The Defendants fail to demonstrate good cause to stay discovery. In determining whether a stay of discovery is warranted, courts generally consider the following factors: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Rivera v. Inc. Vill. of Farmingdale*, No. CV 06-2613 (DRH) (ARL), 2007 WL 3047089, at *1 (E.D.N.Y. Oct. 17, 2007). Here, each factor weighs in favor of the Trustee's plan for staged discovery.

### A.  The Strengths of the Trustee's Claims Weigh in Favor of Discovery

The Defendants do not, because they cannot, argue the Trustee's allegations in the PAC lack merit. They cannot, because the Defendants' own employees admitted that Fairfield Sentry was a "scam" that would "explode." Instead, Defendants rely on cases that are simply not analogous. For example, in *Conomos v. Chase Manhattan Corp.*, No. 97 CIV. 0909 (PKL) 1998 WL 118154, at *3 (S.D.N.Y. Mar. 17, 1988), the plaintiff failed to allege any facts as to the defendants' involvement in the case. Facing dismissal, the plaintiff sought discovery to determine if he could learn of any facts that would enable him to allege a sufficient complaint. *Id.* Similarly, in *Greene v. Emersons, Ltd.*, 86 F.R.D. 66, 73 (S.D.N.Y. 1980), the plaintiff could

not allege any facts sufficient to state a 10(b)(5) claim against the defendant's outside directors. In view of the plaintiff's inability to allege facts sufficient to maintain a federal law claim the court barred discovery and declined to exercise pendant jurisdiction to determine any state law claims that could be asserted by the plaintiff. *Id.* at 74.

The Trustee's case is unlike either *Conomos* or *Greene*, because the Trustee is not seeking to engage in a fishing expedition; the PAC alleges a plausible claim.

### B.  The Limited Breadth of Discovery and the Minimal Burden on Defendants Weigh in Favor of Discovery

The Defendants cannot dispute that the breadth of the Trustee's requested discovery is limited nor do they attempt to quantify the burden, in time, expense, or other cost as required for a motion to stay discovery. *See, e.g., Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food & Commercial Workers*, 13-cv-7187 (SJF) (SIL), 2014 WL 4384712, at *2 (E.D.N.Y. Sept. 3, 2014).

The Trustee has proposed a staged discovery plan to minimize any potential burden on the Defendants with the initial steps being: (1) the production of documents that Defendants previously produced in the *Anwar* MDL proceeding;[2] (2) providing the Trustee with access to the deposition transcripts of the Defendants' employees or former employees in the same proceeding; and (3) a simple verification of whether or not individuals who were previously active employees of the Defendants are still employees and, if not, whether they are represented by counsel. Accordingly, the breadth of discovery is primarily limited to documents that the Defendants have already produced and to transcripts of depositions that have already been taken.

---

[2] The consolidated *Anwar* cases were brought by the Defendants' clients who suffered losses when BLMIS collapsed. Unfortunately for the Trustee, all of the discovery, and for that matter, many of the pertinent pleadings, cannot be obtained by the Trustee because they are covered by protective orders although they could be produced by Defendants.

The Defendants also have failed to show how providing documents and transcripts, which have already been collected, reviewed, and produced in *Anwar*, will unduly prejudice Defendants. *See Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2018 WL 11159406, at *2 (E.D.N.Y. May 7, 2018) (compelling defendants to produce discovery that is in their possession and previously produced in a related proceeding that is covered by a protective order). Indeed, the Defendants cannot claim any burden because during the meet and confer conferences several years ago regarding the sufficiency of the Defendants' response to the Trustee's Rule 2004 subpoena, the Defendants refused to produce the documents but made clear they could produce them within 30 days. (*See* October 7, 2016 letter from counsel for Standard Chartered International (USA) Ltd., attached as Exhibit D to the Forman Dec.)

The Defendants argue they should not produce the documents because there is no possible risk of the loss of evidence. In making this claim the Defendants do not assure the Court that the electronically stored data is safe. Moreover, the Defendants do not apprise the Court of the issues that arose during the *Anwar* proceeding as to whether all of the relevant documents were actually gathered by the Defendants internal personnel. According to public hearing transcripts, the completeness of the production was an issue. (*See* relevant portion of the May 19, 2011 transcript of the hearing held before Magistrate Judge Katz in the *Anwar v. Fairfield Greenwich Limited*, 09 CV 118 proceedings, attached as Exhibit E to the Forman Dec.) ("In the course of our review, we discovered that the minutes were incomplete. They didn't contain their attachments. So, we have had to go to our offices abroad and have them copied and have them sent here so that we can produce them immediately").

### C.  The Risk of Unfair Prejudice to the Trustee Weighs in Favor of Discovery

The Defendants fail to account for the delay that has already occurred. Many of the key witnesses were senior executives who participated in the relevant events anywhere from 12 to 18

years ago. The availability of those individuals for depositions is a serious concern. Moreover,

the mere passage of time, and an increased passage of time through the issuance of a stay, causes

legitimate concerns as to the ability of witnesses to recall details of events which occurred years

ago.

      To rebut a finding of unfair prejudice, the Defendants argue that they have already

produced documents in response to a Rule 2004 subpoena. However, a Rule 2004 production

does not obviate the Defendants' obligation to participate in Rule 26 discovery. The Defendants

also fail to mention that the Trustee's subpoena was served in 2009, well before the District

Court's initial good faith decision and the new affirmative pleading requirements imposed on the

Trustee. The scope of the Trustee's Rule 2004 subpoena did not contemplate the discovery to

which the Trustee is entitled in view of the District Court's ruling. The Defendants also fail to

mention that they produced only 247 documents in response to the Rule 2004 subpoena, a

fraction when compared to their production of "thousands of documents" in the *Anwar*

proceedings. (Memorandum of Law in Support of Defendants' Motion to Stay, at 17.) The

Defendants also wrongly claim that the Trustee never contested the completeness of the Rule

2004 production. That is simply incorrect as the Defendants and the Trustee continued to meet

and confer regarding the production up and until the time the Trustee's complaint was dismissed

as part of the extraterritoriality ruling. (*See* October 7, 2016 letter from counsel for Standard

Chartered International (USA) Ltd. attached, as Exhibit D to the Forman Dec.)

      Finally, the Defendants argue because this Court denied the Trustee's Omnibus Motion

for Limited Discovery in 2018, discovery should be stayed in the present case. The Trustee

sought the limited discovery in response to the District Court's 2014 decision that required the

Trustee to allege a transferee's lack of good faith. The 2014 District Court decision was issued

after Rule 2004 discovery was foreclosed, even though the District Court mistakenly concluded that Rule 2004 discovery was available to allow him to shape a complaint that would meet the District Court's new pleading standard. As a consequence, the Trustee filed the Omnibus Motion for Limited Discovery in order to put the Trustee in the position that the District Court thought he would have been in obtaining discovery to amend his complaints against the applicable subsequent transferees.

In contrast, in the present case, the Trustee is not seeking discovery to shape an amended complaint because the PAC includes plausible allegations of the Defendants' willful blindness and lack of good faith and meets any pleading standard that may be imposed following the Second Circuit decision in the *Citi/Legacy* appeals. Moreover, here, unlike the Trustee's Omnibus Motion for Limited Discovery, it is the Defendants who have the burden to show good cause why Rule 26 discovery should not proceed in the ordinary course – which they cannot do.

The Trustee's proposed discovery plan would not be burdensome to the Defendants and would provide for the immediate protection from any loss of evidence. After eight years, it is the next appropriate step to resolve this case.

## VI.    CONCLUSION

There is no reason to delay briefing on the Trustee's Motion for Leave to Amend as the PAC meets any applicable pleading standard. Furthermore, there is no good cause to delay discovery as the staged discovery proposed by the Trustee is neither burdensome nor unfair to the Defendants. For the foregoing reasons, the Trustee respectfully requests that the Court deny the Defendants' Motion to Stay, schedule briefing on the Trustee's Motion for Leave to Amend, and order the Defendants to proceed with discovery as proposed by the Trustee.

Dated: December 3, 2020
New York, New York

By:    /s/ *Thomas L. Long*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:   212.589.4200
Facsimile:   212.589.4201
David J. Sheehan
Thomas L. Long
Robertson D. Beckerlegge
Jonathan A. Forman

**Baker & Hostetler LLP**
200 Civic Center Drive
Suite 1200
Columbus, Ohio 43215
Telephone:   (614) 228-1541
Facsimile:   (614) 462-2616
Damon M. Durbin

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate*
*of Bernard L. Madoff*