# EXHIBIT D

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 7, 2016

By E-mail

Jonathan A. Forman, Esq.,
  Baker & Hostetler LLP,
    45 Rockefeller Plaza,
      New York, New York 10111.

> Re: *Picard* v. *Standard Chartered Financial Services (Luxembourg) S.A., et al.*, Adv. Pro. No. 12-1565 (Bankr. S.D.N.Y.)

Dear Jonathan:

      I write on behalf of Standard Chartered International (USA) Ltd. ("SCI") in furtherance of our recent meet-and-confers concerning the Trustee's requests made in your October 5, 2015 and December 21, 2015 letters, and SCI's proposal for resolving those requests.

      As set forth in my July 29, 2016 letter, in order to resolve the Trustee's request to revisit SCI's responses to the Trustee's October 1, 2009 Rule 2004 subpoena "Rule 2004 Subpoena," SCI proposed to forego any future objection to the re-production in the above-referenced adversary proceeding of certain documents SCI and its affiliates ("Standard Chartered" or the "Bank")[1] produced in the multidistrict litigation captioned *Anwar* v. *Fairfield Greenwich Ltd.*, No. 09-CV-118 (S.D.N.Y.) ("*Anwar*"). Specifically, in my July 29 letter we proposed that in the event the Bankruptcy Court grants the Trustee's August 28, 2014 motion for limited discovery concerning "good faith" in the form of the requests set forth in Exhibit D to that motion (the "Good Faith Requests"), SCI would produce responsive documents that the Bank produced in *Anwar* within thirty (30) days after service of those requests. In return, the Trustee would make no further requests for production pursuant to the Rule 2004 Subpoena and the Trustee would refrain from seeking to enforce that subpoena.

---

[1] For purposes of this letter, "Standard Chartered" includes American Express Bank Ltd. ("AEBL") and its private banking affiliates prior to Standard Chartered PLC's acquistion of AEBL in 2008.

Jonathan A. Forman, Esq. -2-

During our recent correspondence and calls, you expressed concern that SCI's proposal would somehow limit SCI's production in response to the Good Faith Requests. However, as I clarified in my August 19 email and on our August 25 call, SCI's proposal to produce *Anwar* documents responsive to the Good Faith Requests would not limit the Trustee's ability to make follow-up requests, and SCI does not seek the Trustee's agreement at this time that this proposed production would be sufficient to fully respond to the Good Faith Requests. Rather, SCI's proposal was and is intended to provide the Trustee with a set of previously reviewed and produced documents on an expedited basis in response to the Good Faith Requests (to the extent that discovery is authorized by the Court).

You also asked that SCI provide further details on the *Anwar* documents that we anticipate being included in a future production in response to the Good Faith Requests. In *Anwar*, Standard Chartered responded to dozens of broad document requests from plaintiffs who brought more than 50 individual actions asserting securities claims arising from their purchases of Fairfield Sentry Ltd. and Fairfield Sigma Ltd. (the "Fairfield Funds"). In response to those requests, the Bank searched for and produced documents related to, among other things: (a) Bernard L. Madoff Investment Securities LLC ("BLMIS"); (b) Standard Chartered's review, analysis, due diligence, evaluation, approval and ongoing monitoring of the Fairfield Funds; (c) certain fees paid to Standard Chartered in connection with investments in the Fairfield Funds; and (d) sales and marketing materials used with respect to the Fairfield Funds.

Standard Chartered's productions in *Anwar* were based on an extensive global search and review of documents. We anticipate that documents responsive to the Good Faith Requests would be encompassed in certain *Anwar* searches and productions, which were collected from the following locations:

- **_GIG Documents_**: During the time period that Standard Chartered made the Fairfield Funds available to its clients, the Bank maintained a group within its private banking division known at various times as Global Investment Services, the Global Investment Group, and the Investment Product Management Group (individually or collectively "GIG"). That group was tasked with developing and managing proprietary investment products, as well as evaluating, on an initial and ongoing basis, certain investment products offered to private banking customers of Standard Chartered Bank International (Americas) Ltd. ("SCBI") and its predecessor, American Express Bank International, as well as private banking customers of other SCI affiliates globally. For purposes of *Anwar*, searches for documents in the above-referenced categories were conducted of (i) emails from all GIG personnel who were primarily responsible for GIG's functions with respect to the Fairfield Funds, from the time period January 1, 2002 through December 11, 2008; (ii) the "shared drive" used by GIG personnel; and (iii) the hedge fund of funds database used by GIG personnel;

Jonathan A. Forman, Esq.                                                                    -3-

- ***Investment Committee Documents***: Searches also were conducted for documents associated with the relevant Bank investment committees tasked with reviewing and approving investment products to be offered to private banking clients. Specifically, we conducted searches for materials related to BLMIS or Fairfield Funds in the minutes and supporting documents from meetings between January 1, 2002 and December 11, 2008 of the Bank's Client Investment Committee ("CIC"), a committee tasked with approving and monitoring investment products offered by Standard Chartered to private banking clients. In addition, we searched minutes from meetings between January 1, 2002 and December 11, 2008 of the Bank's Product Approval Committee ("CIC"), a committee tasked with approving new investment products offered by Standard Chartered. Email searches of certain PAC and CIC members also were conducted;

- ***Policies and Procedures***: Searches for policies and procedures related to the initial approval and ongoing monitoring of investment products offered by Standard Chartered from the time period 2002 through 2008 were also conducted.

- ***Marketing Materials Relating to the Fairfield Funds***: We also conducted a search for marketing materials for the Fairfield Funds that were used internally and with SCBI private banking customers from three locations: (i) emails of GIG custodians primarily responsible for the Fairfield Funds, and the shared drive and Hedge Fund of Funds database used by GIG; (ii) emails of Relationship Managers ("RM") assigned to the accounts of the *Anwar* plaintiffs at SCBI and the Investment Specialists who assisted those RMs with respect to those accounts from the time period January 1, 2002 to December 11, 2008;[2] and (3) the internal website (called Infolink) on which sales and marketing materials relating to the Fairfield Funds were posted, as it existed in the fourth quarter of 2008, and the internal website that succeeded Infolink, called SCyBernet.

We anticipate that these materials would cover all or substantially all of the reasonably accessible documents SCI has that would be responsive to the Good Faith Requests. As you know, some of these materials have already been produced to the Trustee as part of SCI's agreed-to production in November 2009 in response to the Rule 2004 Subpoena.

---

[2]   This category would include generally applicable marketing materials and not plaintiff or client-specific materials.

Jonathan A. Forman, Esq. -4-

      As stated in my July 29 letter, SCI's proposal to resolve this dispute would be without prejudice to (i) any document requests other than the Good Faith Requests that any party may make in this action under the Fed. R. Bankr. P. 7026 and Fed. R. Civ. P. 26; (ii) any objections a party may have to such additional or alternative document requests; and (iii) any objections any party may have to the timing or scope of discovery in this action. Further, by agreeing to produce documents in response to the Good Faith Requests, Standard Chartered would reserve any objection to the relevance and/or admissibility of any document produced in this action, and the Trustee would agree not use the fact of this agreed-to production to argue any other document should be produced, or that any document produced by Standard Chartered is relevant or admissible, in this action.

      As I mentioned to you previously, to the extent that we can resolve this remaining issue concerning the Rule 2004 Subpoena, SCI would agree to de-designate as confidential the documents it previously produced to the Trustee, as set forth in my May 26, 2016 letter.

      Please let me know if the Trustee is willing to accept this proposal, and do not hesitate to contact me if you have any questions or need further clarification concerning our proposal.

                              Yours truly,

                              *Andrew J. Finn/TPN*

                              Andrew J. Finn