**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　Plaintiff-Applicant,<br><br>　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　Debtor. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**AFFIDAVIT OF VINEET SEHGAL IN SUPPORT OF THE TRUSTEE'S MOTION FOR AN ORDER APPROVING THE TWELFTH ALLOCATION OF PROPERTY TO THE FUND OF CUSTOMER PROPERTY AND AUTHORIZING TWELFTH INTERIM DISTRIBUTION TO CUSTOMERS**

Vineet Sehgal, being duly sworn, deposes and says:

1.　　I am a Managing Director at AlixPartners LLP ("AlixPartners"). I make this affidavit to transmit to the Court information relevant to the motion by Irving H. Picard, trustee (the "Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), for an Order Approving the Trustee's Twelfth Allocation of Property to the Fund of Customer Property and Authorizing Twelfth Interim Distribution to Customers (the "Motion").

2.　　AlixPartners has served as the Trustee's Claims Agent and as the accountant for the BLMIS estate since December of 2008 pursuant to SIPA § 78fff-1(a)(1). As the Claims Agent,

---

[1] For convenience, subsequent references to sections of the Act shall follow the form: "SIPA § __."

1

AlixPartners was responsible for both mailing the notice of the liquidation and claim forms to potential claimants and causing the notice of the liquidation to be published. AlixPartners has also been responsible for processing all claims submitted to the Trustee and assisting the Trustee in reviewing each customer claim filed to determine whether the asserted claim amount agrees with the "net equity" for that account. In addition, as the accountants for the BLMIS estate, AlixPartners has assisted and continues to assist the Trustee in accounting for the assets of the BLMIS estate, including the cash and cash equivalents available to the Trustee.

3.   I have been actively involved in the liquidation of BLMIS and the claims process since December 2008 and have personal knowledge of the matters set forth herein.

## The Claims Process

4.   To date, the Trustee has received 16,521 customer claims and determined 16,510 of those claims. To date, the Trustee has allowed 2,653 claims, and SIPC has advanced $849,338,412.47 to the Trustee to pay these claims. To date, the allowed claims total nearly $19.416 billion. The Trustee denied 2,694 claims by customers who had accounts with BLMIS and 10,734 claims purporting to be customer claims but were in fact claims filed on behalf of claimants without an account at BLMIS. Twelve other claims were filed that asserted no claim. Another 417 claims have been withdrawn.

5.   Eleven claims (relating to seven accounts) are currently categorized as "deemed determined," meaning that the Trustee has instituted litigation against those claimants.

6.   To date, the Trustee has received 428 timely and 22 untimely filed secured priority and unsecured non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 450 claims, 95 are general creditor claims and 49 are broker-dealer claims, which together total approximately $265 million of the $1.7 billion.

7. 1,802 docketed objections have been filed to the Trustee's claims determinations relating to 3,348 claims, which have been, and will continue to be, noticed for hearing as appropriate. These 1,802 objections relate to 760 BLMIS accounts. 1,531 of the 1,802 docketed objections have been fully resolved. 271 objections are still subject to court review.

## Recoveries by the Trustee

8. The Trustee previously filed eleven motions seeking entry of an order approving allocations of property to the fund of customer property (the "Customer Fund") and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $884.587 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.431 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $900.702 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $605.916 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[2] | $522.180 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/2015 | $345.472 million[3] | $1.567 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/2016 | $247.013 million | $246.702 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/2017 | $342.322 million | $326.360 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/2018 | $1.303 billion | $716.342 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/2019 | $515.974 million | $512.080 million | 2.729% | 18295 | 18398 |
| 11 | 02/28/2020 | $988.770 million | $369.258 million | 1.975% | 19245 | 19226 |

---

[2] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[3] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

3

9. The amounts previously distributed as outlined in each of the First through Eleventh Allocation Motions change as additional accounts are determined. Below is a summary of the amounts allocated and distributed:

| No. | Amount Allocated | Reserve From Previous Allocations[4] | Funds Received After Eighth and Tenth Interim Dist Used for Springing Claims | Amount Available for Distribution | Allocation for Allowed Claims[5] | Allocation for Deemed Determined Claims[6] | SIPC Subrogation | Other Reserves[7] |
|---|---|---|---|---|---|---|---|---|
| 1 | $2.618 billion | N/A | $85.078 million | $2.703 billion | $884.587 million | $54.248 million | $8.917 million | $1.755 billion |
| 2 | $5.501 billion | $1.755 billion | $620.353 million | $7.877 billion | $6.431 billion | $395.552 million | $83.665 million | $966.393 million |
| 3 | $1.198 billion | $966.393 million | $87.278 million | $2.252 billion | $900.702 million | $55.650 million | $15.906 million | $1.279 billion |
| 4 | $477.504 million | $1.279 billion | $58.789 million | $1.816 billion | $605.916 million | $37.485 million | $11.499 million | $1.161 billion |
| 5 | $756.538 million[8] | $1.161 billion | $50.710 million | $1.968 billion | $522.180 million | $32.334 million | $10.389 million | $1.403 billion |
| 6 | $345.472 million[9] | $1.403 billion | $152.740 million | $1.901 billion | $1.567 billion | $97.391 million | $37.568 million | $199.925 million |
| 7 | $247.013 million | $199.925 million | $24.126 million | $471.064 million | $246.702 million | $15.383 million | $6.671 million | $202.308 million |
| 8 | $342.322 million | $202.308 million | $31.964 million | $576.594 million | $326.360 million | $20.381 million | $9.335 million | $220.518 million |
| 9 | $1.303 billion | $220.518 million | $33.150 million | $1.557 billion | $716.342 million | $44.864 million | $22.614 million | $772.713 million |
| 10 | $515.974 million | $772.713 million | $23.769 million | $1.312 billion | $512.080 million | $32.169 million | $17.770 million | $750.437 million |
| 11 | $988.770 million | $750.437 million | $0 million | $571.250 million | $369.258 million | $23.281 million | $14.200 million | $164.511 million |

---

[4] Reserve from Previous Allocations represents amounts that were reserved in prior allocations.

[5] Allocation for Allowed Claims represents the amount allocated for claims that have been allowed.

[6] Allocation for Deemed Determined Claims represents amounts allocated and reserved for claims that are currently in litigation with the Trustee.

[7] Other Reserves represents all funds that are reserved for various issues.

[8] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[9] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages reserve.

10. The Trustee has recovered $74,324,876.19 since the Eleventh Allocation and Eleventh Interim Distribution as a result of litigation and pre-litigation settlements, interest income, and other miscellaneous recoveries. Therefore, the Trustee seeks approval to allocate the full amount of these recoveries to the Customer Fund.

11. As reflected in the table in Paragraph 9, the amount reserved through the Eleventh Interim Distribution is $164,511,336.62. This previously reserved amount, plus the $74,324,876.19 that the Trustee seeks to allocate in this Motion, constitutes the total amount available for distribution. Therefore, the total amount available for the Twelfth Interim Distribution will be $238,836,212.81. Of this amount, $3,170,109.13 must be held in reserve for non-liquid asset recoveries related to certain settlements, leaving a total of $235,666,103.68 available for distribution.

12. The Trustee will maintain a general reserve of $25,000,000.00, bringing the amount available for the Twelfth Interim Distribution to $210,666,103.68.

13. The table below summarizes this calculation.

| Category | Amount |
|---|---|
| | |
| **SIPC 17 Receipts (October 31, 2020)** | $14,368,201,417.43 |
| | |
| **Total Recoveries** | **$14,368,201,417.43** |
| | |
| First Through Eleventh Interim Distribution Deductions | |
|   Allowed Accounts | $13,082,091,264.04 |
|   Reserved For Deemed Determined Accounts | $808,739,189.24 |
|   SIPC Subrogation | $238,534,751.34 |
| | |
| **Amount Available for Twelfth Interim Distribution** | **$238,836,212.81** |
| | |
| Current Reserves | |
| General Reserve | $25,000,000.00 |
|   Reserve related to non-liquid settlement recoveries | $3,170,109.13 |
| | |
| **Amount Available for Twelfth Interim Distribution After Reserves** | **$210,666,103.68** |

14. Of the $210,666,103.68 numerator, $190,755,424.24 will be distributed as part of the Twelfth Interim Distribution to allowed accounts, and SIPC subrogation[10] for allowed accounts in the amount of $7,667,541.17[11] will be released to SIPC. For deemed determined accounts, $12,047,158.51 will be reserved.

### The Net Investment Method Denominator

15. The Trustee's Net Investment Method Denominator is the allowed amount of all accounts that have an allowed claim plus the net cash balance for all accounts into which more funds were deposited than withdrawn for which a claim has been filed, but not yet allowed. As of December 9, 2020, the Trustee's Net Investment Method denominator is $20,594,340,605.45. This number is subject to change as additional accounts are determined.

### Interim Calculation of *Pro Rata* Share Distribution of Customer Fund

16. As set forth above, the total amount available for the Twelfth Interim Distribution will be $238,836,212.81. Of that amount, $210,666,103.68 is available for distribution (the "Net Customer Fund"). The difference between those amounts—$28,170,109.13—represents the general reserve and reserves related to certain non-liquid settlement recoveries.

17. The Denominator is $20,594,340,605.45. To determine the percentage of each allowed customer net equity claim that can be satisfied from the Customer Fund, the Net Customer Fund is divided by the Denominator, resulting in the following percentage:

---

[10] According to the provisions of SIPA, SIPC is reimbursed for its advances to customers once each respective customer claim is fully satisfied.

[11] An additional $4,036.90 of SIPC subrogation associated with the Twelfth Interim Distribution for an account that has not returned the necessary paperwork required to receive their SIPC advance will be held in reserve.

$$\frac{\$210{,}666{,}103.68 \text{ (Net Customer Fund)}}{\$20{,}594{,}340{,}605.45 \text{ (Denominator)}} = 1.022\%$$

18. A total of 813 accounts will receive a distribution of approximately 1.022% of their net equity claims, unless the account becomes fully satisfied. Of these 813 accounts (relating to 950 claims), 16 accounts (relating to 17 claims) will become fully satisfied, bringing the total of fully satisfied account holders to 1,490 (all accounts with an allowed claim amount of up to $1,645,761.48). 797 accounts will remain partially satisfied and will be entitled to participate in future distributions.

19. An additional seven accounts (relating to 11 claims) that are currently "deemed determined" could receive a distribution if and when the status of their claims moves from "deemed determined" to allowed. One of the 7 accounts would be fully satisfied by the SIPC advance. The remaining six accounts would receive both a SIPC advance and a distribution in accordance with the Trustee's Motion and his earlier distribution motions. None of the remaining six accounts would be fully satisfied by the First through Twelfth Interim Distributions.

20. Upon approval of the Motion, each customer's ratable share of the Net Customer Fund should be no less than 69.630% of the customer's net equity claim, which includes the proposed 1.022% customers will receive upon the approval of the Twelfth Allocation and Twelfth Interim Distribution, the 4.602% customers received subject to the First Allocation and First Interim Distribution, the 33.556% customers received subject to the Second Allocation and Second Interim Distribution, the 4.721% customers received subject to the Third Allocation and Third Interim Distribution, the 3.180% customers received subject to the Fourth Allocation and Fourth Interim Distribution, the 2.743% customers received subject to the Fifth Allocation and Fifth Interim Distribution, the 8.262% customers received subject to the Sixth Allocation and Sixth Interim Distribution, the 1.305% customers received subject to the Seventh Allocation and Seventh

Interim Distribution, the 1.729% customers received subject to the Eighth Allocation and Eighth Interim Distribution, the 3.806% customers received subject to the Ninth Allocation and Ninth Interim Distribution, the 2.729% customers received subject to the Tenth Allocation and Tenth Interim Distribution, and the 1.975% customers received upon the approval of the Eleventh Allocation and Eleventh Interim Distribution.

By: */s/ Vineet Sehgal*
Vineet Sehgal

STATE OF TEXAS
COUNTY OF DALLAS

This instrument was acknowledged before me by means of a recorded interactive two-way audio and video communication on December 9, 2020 by Vineet Sehgal. This notarial act was an online notarization.

WITNESS my hand and official seal.

*/s/ Jane Kirby Murphey*
Jane Kirby Murphey, Notary Public
Qualified in Texas
*Commission Expires: 2/11/2024*