**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Jason I. Blanchard

Hearing Date: January 27, 2021
Hearing Time:  10:00 a.m. (EST)
Objections Due: January 7, 2021
Objection Time:  4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the chapter 7 estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

### TRUSTEE'S THIRTY-FIFTH OMNIBUS MOTION TO AFFIRM THE TRUSTEE'S CLAIMS DETERMINATIONS AND OVERRULE OBJECTIONS THAT APPEAR TO RAISE FACTUAL ISSUES

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa–*lll*, ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff

("Madoff") (collectively, the "Debtor"), by this combined motion and memorandum of law (the

"Motion"), asks this Court to affirm his claims determinations and overrule the related objections

that appear to raise customer-specific factual issues (the "Objections").

The claims ("Claims") at issue in this Motion were filed by customers that withdrew

more money from BLMIS than they deposited and are thus, in the parlance of this case, net

winners, and by customers that invested more money with BLMIS than they withdrew and are

thus, in the parlance of this case, net losers (collectively, the "Claimants"). The Claims and the

related Objections are listed in alphabetical order by the Claimant's first name in the exhibits to

Vineet Sehgal's Declaration in Support of the Motion (the "Sehgal Declaration"). Five net

winner Claims and six related Objections are identified on Exhibit A to the Sehgal Declaration

and three net loser Claims and two related Objections are identified on Exhibit B.

## PRELIMINARY STATEMENT

The Trustee determined the Claims by applying one or more of the methodologies for

calculating net equity that have been approved by the courts during this SIPA liquidation. In the

Objections, the Claimants contest the Trustee's determinations on various factual grounds,

including their disagreement with the Trustee's net equity calculations based on these

methodologies. However, the Claimants fail to offer supporting evidence that contradicts the

Trustee's calculations and raise substantially similar arguments to those previously rejected by

the courts and resolved in the Trustee's favor.

Specifically, the Claimants' make one or more of the following fact-based arguments: (i)

the Trustee miscalculated the amount or number of withdrawals and deposits in a customer

account; (ii) the Trustee wrongfully disregarded a claimant's separate "customer" status; and (iii)

---

[1] Subsequent references to SIPA shall omit "15 U.S.C."

the Trustee incorrectly adjusted the amounts transferred between BLMIS customer accounts (collectively, the "Fact-Based Arguments").

At bottom, the Claimants' unsupported Fact-Based Arguments challenge the Trustee's calculation of net equity based on the cash in/cash out method (the "Net Investment Method") and the method for calculating the net equity of accounts that received one or more transfers from another BLMIS account (the "Inter-Account Method"). However, the courts have approved the Net Investment Method[2] and the United States Supreme Court has declined to address these issues.[3] In addition, the Second Circuit has validated the Inter-Account Method in a decision that is final and no longer subject to appeal.[4] Therefore, these issues have been finally decided and the Claimants are not entitled to an adjustment to their net equity on these grounds.

Certain Claimants also contend the Trustee should have made adjustments to net equity to account for the length of time they were invested with BLMIS ("Time-Based Damages Adjustment") and to account for their payments in compliance with the Internal Revenue Code ("Tax-Based Adjustment"). However, the courts have also approved the Trustee's rejection of a Time-Based Damages Adjustment[5] and Tax-Based Adjustment.[6] These issues also have been finally decided and the Claimants are not entitled to an adjustment to their net equity on these grounds.

Moreover, under SIPA, a claimant bears the burden of proving he or she is entitled to an allowable customer claim by showing that the debtor's obligations to the claimant are

---

[2] *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011).

[3] The Supreme Court denied claimants' petitions for writ of certiorari. *Velvel v. Picard*, 133 S. Ct. 25 (2012) (Net Investment Method); *Ryan v. Picard*, 133 S. Ct. 24 (2012) (same).

[4] *Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 697 F. App'x 708 (2d Cir. 2017).

[5] *In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74 (2d Cir. 2015) *cert. denied Peshkin v. Picard*, 136 S. Ct. 218 (2015).

[6] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 729 (S.D.N.Y. 2012), supplemented (May 15, 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41, 54 n.9 (Bankr. S.D.N.Y. 2014).

ascertainable from the debtor's books and records or otherwise established to the trustee's satisfaction. Unsupported factual allegations, like those raised in the Objections, will not suffice. Because the Claimants have failed to carry their burden, the Trustee respectfully requests that the Court enter an order affirming his determinations of the Claims and overruling the Objections.

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to SIPA §§ 78eee(b)(2) and 78eee(b)(4) and 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### 1.    The Commencement of the SIPA Proceeding

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of BLMIS's insolvency, its customers needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

### 2.    The Trustee's Role under SIPA

Under SIPA, the Trustee is responsible for, among other things, recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other

assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general

powers of a bankruptcy trustee in addition to the powers granted by SIPA. SIPA § 78fff-1(a). In

satisfying customer claims, the Trustee evaluates whether claimants are "customers," as defined

in SIPA § 78*lll*(2), who are entitled to share pro rata in "customer property," defined in SIPA §

78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). For each customer with a

valid net equity claim, SIPC advances funds to the SIPA trustee up to the amount of the

customer's net equity, not to exceed $500,000 (the amount applicable to this case), if the

customer's share of customer property does not make her whole. SIPA § 78fff-3(a).

It is the customer's burden to demonstrate entitlement to customer status. *In re Bernard*

*L. Madoff Inv. Sec. LLC*, 570 B.R. 477, 481 (Bankr. S.D.N.Y. 2017) (citing *Mishkin v. Siclari (In*

*re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-

established in the Second Circuit that a claimant bears the burden of proving that he or she is a

'customer' under SIPA.")). The customer also bears the burden of proving the amount of his or

her claim. *In re Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513, 532 (Bankr. S.D.N.Y. 2018)

(citing *Pitheckoff v. Sec. Inv'r Prot. Corp. (In re Great E. Sec., Inc.*), No. 10 Civ. 8647 (CM),

2011 WL 1345152, at *4 (S.D.N.Y. Apr. 5, 2011)) *aff'd* 605 B.R. 570 (S.D.N.Y. 2019), *aff'd*

No. 19-2988, 2020 WL 5902581 (2d Cir. Oct. 6, 2020); *In re A.R. Baron Co., Inc.*, 226 B.R. 790,

795 (Bankr. S.D.N.Y. 1998).

### 3.    The Claims Process in the BLMIS Liquidation

On December 23, 2008, this Court entered a claims procedures order (the "Claims

Procedure Order"), which approved (i) the form and manner of publication of the notice of the

commencement of the liquidation proceeding and (ii) specified the procedures for filing,

determining and adjudicating customer claims. (*See* ECF No. 12). BLMIS customers were

directed to file their claims with the Trustee no later than six (6) months from the date the

Trustee published notice of the commencement of the liquidation proceeding. *See* SIPA § 78fff-2(a)(3). After receiving a claim, the Trustee issued a determination letter to the claimant regarding the allowed amount of net equity. Claimants were permitted to object to the Trustee's determination of a claim by filing an objection in this Court, following which the Trustee requested a hearing date for the objection and notified the objecting claimant thereof.

Under the provisions of the Claims Procedure Order, the Trustee has successfully prosecuted thirty-one omnibus motions to affirm his claims determinations and overrule related objections based on legal issues previously decided in his favor and many other motions to affirm his determinations that certain claimants should not be treated as "customers" under SIPA.

On August 31, 2020, this Court entered an order establishing omnibus procedures for the adjudication of objections to the Trustee's claims determinations that appear to raise customer-specific factual issues (the "Omnibus Procedures Order"). (*See* ECF No. 19746).[7] The Omnibus Procedures Order authorizes the Trustee to file omnibus motions to affirm his determinations of claims and overrule related objections that raise various categories of factual issues. Any claimant that disputes the relief requested in an omnibus motion is required to serve a response on the Trustee by the deadline provided in the notice of the motion. Upon the timely service of a response, the Trustee and responding claimant are required to confer on a mutually agreeable schedule for briefing and to conduct discovery, if any, under the parameters provided in the form of Scheduling Order annexed to the Omnibus Procedures Order.

The Trustee has filed this Motion in accordance with the Omnibus Procedures Order to affirm his determinations of the Claims and overrule the Objections, which raise the customer-specific Fact-Based Arguments identified in Exhibit D of the Sehgal Declaration under the

---

[7] A copy of the Omnibus Procedures Order is annexed to the Sehgal Declaration as Exhibit C.

column bearing the heading "Category of Arguments." The Claims and Objections are now ripe

for final adjudication and there are no pending avoidance actions related to the Claimants.

## RELIEF REQUESTED

By this Motion, the Trustee seeks the entry of an order affirming the Trustee's

determination of the Claims in accordance with the Net Investment and Inter-Account Methods

and without a Time-Based Damages Adjustment or Tax-Based Adjustment. The Trustee

respectfully requests that the Court: (i) disallow the Claims of the net winner Claimants

identified on Exhibit A to the Sehgal Declaration; (ii) affirm the Trustee's claims determinations

of the Claims identified on Exhibits A and B to the Sehgal Declaration; and (iii) overrule the

Objections identified on Exhibits A and B to the Sehgal Declaration.

## BASIS FOR RELIEF

### 1.    The Net Investment Method

Pursuant to SIPA § 78*lll*(11), the term "net equity" means the:

> dollar amount of the account or accounts of a customer, to be determined by – (A)
> calculating the sum which would have been owed by the debtor to such customer
> if the debtor had liquidated, by sale or purchase on the filing date, all securities
> positions of such customer (other than customer name securities reclaimed by
> such customer); . . . minus (B) any indebtedness of such customer to the debtor on
> the filing date.

SIPA § 78fff-2(b) directs the Trustee to make payments to customers based on "net equity"

insofar as the amount owed to the customer is "ascertainable from the books and records of the

debtor or [is] otherwise established to the satisfaction of the trustee."

On this basis, the Trustee determined that net equity claims should be calculated

according to the Net Investment Method. The Trustee calculated the amounts of money that

customers deposited into their BLMIS accounts and subtracted any amounts they withdrew from

their BLMIS accounts. Some claimants argued that the Trustee was instead required to calculate

net equity using the amounts shown on their November 30, 2008 customer statements (the "Last Customer Statement Method").

This Court rejected the Last Customer Statement Method and upheld the Trustee's use of the Net Investment Method. *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 134-35 (Bankr. S.D.N.Y. 2010). Pursuant to 28 U.S.C. § 158(d)(2), the Bankruptcy Court certified an immediate appeal of its decision, which the United States Court of Appeals for the Second Circuit granted. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 234 (2d Cir. 2011). The Second Circuit subsequently affirmed the Bankruptcy Court's decision. *Id.* at 235-36. Then, on June 25, 2012, the United States Supreme Court denied certiorari. *Velvel v. Picard*, 133 S. Ct. 25 (2012); *Ryan v. Picard*, 133 S. Ct. 24 (2012). Therefore, a final order upholding the Trustee's use of the Net Investment Method has been issued.

### 2.    The Inter-Account Method

An inter-account transfer is a transfer between BLMIS customer accounts in which no new funds entered or left BLMIS. BLMIS recorded a book entry to internally adjust the balances of those accounts, but because there was no actual movement of cash, these book entries did not reflect any transfers of cash. Rather, the inter-account transfers merely changed the reported value of the purported equity maintained in the accounts. Such transfers consisted of the following: (i) all principal; (ii) all fictitious profits; or (iii) a combination of principal and fictitious profits.

To calculate the net equity for accounts with inter-account transfers, the Trustee calculated the actual amount of principal available in the transferor account at the time of the transfer and credited the transferee account up to that same amount. Consistent with the Net Investment Method, the Trustee did not include any fictitious gains in the net equity calculation. If the transferor account did not have any principal available at the time of the inter-account

transfer, the transferee account was credited with $0 for that transfer. Similarly, if the transferor account had principal available at the time of the inter-account transfer, the transferee account was credited with the amount of the inter-account transfer, to the extent of that principal.

Several claimants argued that the Trustee was instead required to credit inter-account transfers at their full, face value, as if actual money had been moved from one BLMIS account to another. In other words, these claimants argued that the Trustee should treat inter-account transfers as if they were external cash withdrawals by the transferor and external cash deposits by the transferee.

This Court approved the Trustee's use of the Inter-Account Method and held that "increasing [Claimants'] net equity claims by giving them credit for the fictitious profits 'transferred' into their accounts contravenes the *Net Equity Decision*." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41, 47 (Bankr. S.D.N.Y. 2014). The Court explained:

> [l]ike the Net Investment Method on which it is based [the Inter-Account Method] . . . ignores the imaginary, fictitious profits . . . and conserves the limited customer pool available to pay net equity claims on an equitable basis. . . . Crediting the Objecting Claimants with the fictitious profits . . . essentially applies the Last Statement Method to the transferors' accounts, and suffers from the same shortcomings noted in the *Net Equity Decision*. It turns Madoff's fiction into a fact.

*Id.* at 53. Several claimants appealed and on January 14, 2016, the District Court issued its Opinion and Order affirming this Court's decision, stating that the Inter-Account Method "is the only method of calculating net equity in the context of inter-account transfers that is consistent with the Second Circuit's *Net Equity Decision*, and that it is not prohibited by law." *In re Bernard L. Madoff Inv. Secs., LLC*, 2016 WL 183492, at *2 (S.D.N.Y. Jan. 14, 2016). Several claimants further appealed to the Second Circuit. The Second Circuit affirmed the District

Court's decision, *Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 697 F. App'x 708 (2d Cir. 2017), and no appeal was taken therefrom.[8] Accordingly, the Second Circuit's decision stands as final.

### 3. Time-Based Damages Adjustment

Certain Claimants filed Objections seeking to adjust the Trustee's net equity calculation to allow for a Time-Based Damages Adjustment. After the United States Supreme Court's decision denying certiorari on the Net Investment Method, the Trustee filed a motion to address objections that sought a Time-Based Damages Adjustment. The Trustee argued it is inconsistent with SIPA and therefore cannot be awarded. (*See* ECF No. 5038). In response, claimants raised numerous theories, all of which sought some increase in their customer claims based upon the amount of time they had invested with BLMIS. Most commonly, claimants relied on the New York prejudgment rate of 9% per annum, lost opportunity cost damages, or the consumer price index to take inflation into account.

The Bankruptcy Court ruled that, as a matter of law, SIPA does not permit the addition of time-based damages to net equity, and therefore upheld the Trustee's rejection of a Time-Based Damages Adjustment. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 496 B.R. 744, 754-55 (Bankr. S.D.N.Y. 2013). Following its decision, the Bankruptcy Court then certified an immediate appeal pursuant to 28 U.S.C. § 158(d)(2), which the Second Circuit granted. *In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 78-79 (2d Cir. 2015). The Second Circuit affirmed the Bankruptcy Court's decision, holding that SIPA did not permit a Time-Based Damages Adjustment to "net equity" claims for customer property. *Id*. at 83. The Second Circuit concluded that such an adjustment would have gone beyond the scope of SIPA's intended protections and was inconsistent with SIPA's statutory framework. *Id.* at 79.

---

[8] The deadline to file a petition for writ of certiorari has expired. *See* 28 U.S.C. §§ 1254, 2101(c).

On October 5, 2015, the United States Supreme Court denied certiorari, and thus a final

order has been issued upholding the Trustee's rejection of a Time-Based Damages Adjustment.

*Peshkin v. Picard*, 136 S. Ct. 218 (2015).

### 4.        Tax-Based Adjustment

Certain Claimants filed Objections seeking to adjust the Trustee's net equity calculation

to allow for Tax-Based Adjustments. Specifically, these Claimants argue that the Trustee should

give them credit for payments they made to the Internal Revenue Service ("IRS") required under

the Internal Revenue Code or credit for mandatory withdrawals they received in connection with

their individual retirement accounts.

The Trustee has not provided any claimants with "credit" for payments of taxes to the

IRS in connection with withdrawals from their BLMIS accounts, nor has the Trustee provided

claimants with "credit" for mandatory withdrawals from their individual retirement accounts. To

do so would be inconsistent with SIPA and the decisions affirming the Trustee's application of

the Net Investment Method and rejection of a Time-Based Damages Adjustment. Nor have

Claimants cited to any authority supporting such "credit." The Trustee's ability to "claw back" or

avoid transfers does not affect the net equity analysis, especially where Claimants subject to this

Motion are not the subject of avoidance actions by the Trustee.

In fact, arguments for a Tax-Based Adjustment, like those raised in the Objections, have

been considered and rejected in these proceedings. In the inter-account transfer decision, this

Court addressed whether a claimant should receive credit for the payment of taxes on account of

the "gains" realized in her BLMIS account. Citing to the Ninth Circuit's decision in *Donell v.

Kowell*, the Court determined that she should not and stated "payment of taxes does not factor

into the computation of fictitious profits." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec.

LLC*, 522 B.R. 41, 54 n.9 (Bankr. S.D.N.Y. 2014) (citing *Donell v. Kowell*, 533 F.3d 762, 778–

79 (9th Cir. 2008), *cert. denied*, 555 U.S. 1047, 129 S. Ct. 640, 172 L. Ed. 2d 612 (2008)). In

*Donnell v. Kowell*, the Ninth Circuit explained that unintended consequences would result from

allowing an offset for tax payments in defense of a fraudulent transfer: (i) expenses other than

tax payments would have to be credited; (ii) there would be complex problems of proof and

tracing; and (iii) equity does not permit an offset where a third party, the IRS, receives a benefit

without recourse to the other investors. 533 F.3d at 779. Like in *Donnell*, this Court should reject

a Tax-Based Adjustment due to the unintended consequences that would result from allowing

such an adjustment to Trustee's net equity calculation.

Similarly, this Court has addressed whether the Trustee can avoid BLMIS customers'

mandatory withdrawals from their individual retirement accounts as fraudulent transfers. *Sec.*

*Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 729 (S.D.N.Y. 2012),

supplemented (May 15, 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d

411 (2d Cir. 2014). The Court acknowledged that the defendants were required to receive the

withdrawals from BLMIS under the rules imposed by the Internal Revenue Code, but

nevertheless held that the Trustee could avoid those payments as fraudulent transfers. *Id*. The

Court reasoned that unlike the alimony example the defendants touted, the Internal Revenue

Code did not require BLMIS to make the payments to the defendants, the defendants were not

legally entitled to the payments, and the avoidance of the transfers would not deprive third

parties of their legal rights. *Id.* This analysis applies equally to the Trustee's determination that

Claimants should not receive a Tax-Based Adjustment to their Claims. *See Sec. Inv'r Prot. Corp.*

*v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 424 (S.D.N.Y. 2013) ("More fundamentally,

the definition of net equity and the definition of claims that can provide 'value' to the customer

property estate are inherently intertwined where the customer property estate is created as a priority estate intended to compensate customers only for their net-equity claims.").

### 5. Customer Status under SIPA

Several Claimants argue that the Trustee miscalculated their Claims by failing to treat all interest holders or contributors to an account as separate customers with separate net equity claims. However, to qualify as a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person." SIPA § 78*lll*(2)(A). A customer includes "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2)(B)(i).

In *Kruse*, the Second Circuit considered whether claimants who had invested in limited partnerships, which in turn had invested in the partnerships' own BLMIS accounts, qualified as BLMIS's customers under SIPA. *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422, 427 (2d Cir. 2013). The court held that the claimants "never entrusted their cash or securities to BLMIS" when they invested in the partnerships. *Id.* at 428. Therefore, the claimants had failed to satisfy the "critical aspect of the 'customer' definition" regardless of their intention to invest with BLMIS. *Id.* (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). Because the money sent to BLMIS belonged to the account holders, not the individual claimants, the claimants could not show entrustment of their own cash or securities to BLMIS. *Kruse*, 708 F.3d at 426–27. The Second Circuit further determined that the claimants failed to demonstrate other key indicia of customer status in their dealings (or lack of dealings) with BLMIS. The evidence showed that the claimants: (i) had no direct financial relationship with BLMIS; (ii) held no property interest in the funds invested directly with BLMIS; (iii) did not hold securities accounts with BLMIS; (iv) lacked control over the account holders'

investments with BLMIS; and (v) were not identified or otherwise reflected in BLMIS's books and records. *Id.* (citing *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976)). For these reasons, the court held that the claimants had failed to sustain their burden of proving they were BLMIS's customers. *Id.* at 427.

This Court and the District Court have held likewise. *See Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*, No. 12 CIV. 1039 (DLC), 2012 WL 3042986, at *13–14 (S.D.N.Y. July 25, 2012) (holding that the claimants did not qualify as customers under SIPA because they neither held accounts in their own names nor deposited their own cash directly with BLMIS); *In re Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (Bankr. S.D.N.Y. Feb. 15, 2015), ECF No. 9506 at 27–35 (holding that indicia of customer status include a direct financial relationship with BLMIS, a property interest in the funds invested directly with BLMIS, securities accounts with BLMIS, control over the account holders' investments with BLMIS and identification of the alleged customer in BLMIS's books and records); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 168 (Bankr. S.D.N.Y. 2014) (holding that to qualify as a customer of BLMIS under SIPA, the party seeking customer status "must show that she entrusted her own assets directly through an account maintained in her own name rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name.").[9]

---

[9] During this SIPA liquidation, this Court has issued numerous unpublished orders that have addressed whether certain investors in BLMIS account holders, or individual contributors to individually-held accounts, could be treated as "customers" under SIPA when those investors themselves did not have individual accounts with BLMIS. In each order, the court determined that those claimants could not be treated as customers of BLMIS. *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in: PJ Administrator, LLC, ECF No. 19444 (Mar. 24, 2020); the David Shapiro Nominee, David Shapiro Nominee #2 and David Shapiro Nominee #3 Partnerships, ECF No. 16942 (November 22, 2017); the Jennie Brett and David Moskowitz Accounts, ECF No. 16812 (Oct. 20, 2017); the Schupak Account, ECF No. 16641 (Sept. 18, 2017); the Brighton Company and the Popham Company, ECF No. 16523 (Aug. 16, 2017); the Lambeth Company, ECF No. 16404 (July 20, 2017); Jeffrey Schaffer Donna Schaffer Joint Tenancy and Stanley I. Lehrer and Stuart M. Stein Joint Tenancy, ECF No. 16229 (June 26, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF

Several Claimants rely on SIPC's Series 100 Rules to support their arguments for separate customer status. This reliance is misplaced. SIPC's Series 100 Rules are applied to determine whether accounts held by the same person in different capacities will be treated as separate accounts of separate customers of the debtor. *See* 17 C.F.R. § 300.100(b). Although SIPC's Rules "have the force and effect of law," *Mishkin v. Ensminger (In re Adler Coleman Clearing Co.)*, 218 B.R. 689, 699 (Bankr. S.D.N.Y. 1998), customer status under SIPA is a "prerequisite to the application of the [Series 100] Rules, and not a substitute therefor." *Morgan Kennedy*, 533 F.2d at 1319. As explained in *Morgan Kennedy*, the Series 100 Rules "illustrate that, under SIPA, separate coverage for accounts held in different capacities is not to be confused with individual coverage for each individual owning some portion of, or interest in, the particular account." *Id.* at 1320. An individual may hold multiple accounts in different capacities, each of which may be deemed a customer; but, conversely, with the exception of an omnibus account maintained by a bank or another broker-dealer, *see* SIPA § 78fff-3(a)(5), a single account in a single capacity does not support the existence of more than one customer. The burden rests with

---

*…continued from previous page*

No. 15920 (Apr. 27, 2017); Judy L. Kaufman et al. Tenancy in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824, 15825 (Apr. 13, 2017); Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); and S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015).

the customer to prove each capacity in which it claims to hold an account separate from its individual capacity. 17 C.F.R. § 300.100(d).

### 6.    Fact-Based Arguments

The Claimants' Fact-Based Arguments challenge the Trustee's application of one or more of the methodologies for calculating net equity described above to the determinations of their Claims and their status as separate customers of BLMIS. However, the Claimants offer no evidence to substantiate their arguments. *See* Sehgal Decl. Ex. D. Under SIPA, the Trustee's determination of a customer claim is informed by the debtor's books and records. To the extent the customer disagrees with the Trustee's determination, he or she must provide new evidence and demonstrate entitlement to an allowable customer claim. *See* SIPA § 78fff-2(b). Here, the Trustee determined the Claims and the Claimants' customer status based on BLMIS's books and records. He applied the Net Investment and Inter-Account Methods to calculate the net equity for the Claims without applying a Time-Based Damages or Tax-Based Adjustment. Because the Claimants have not presented affirmative evidence demonstrating the validity of their Claims or their separate customer status, the Trustee respectfully submits that his determinations of the Claims be affirmed and the Objections overruled.

### <u>NOTICE</u>

Notice of this Motion has been provided by U.S. mail, postage prepaid, or email to the following: (i) all Claimants listed on Exhibits A and B to the Sehgal Declaration (and their counsel) whose Objections are subject to this Motion; (ii) all parties included in the Master Service List as defined in the Order Establishing Notice Procedures (ECF No. 4560); (iii) all parties that have filed a notice of appearance in this case; (iv) the SEC; (v) the IRS; (vi) the United States Attorney for the Southern District of New York; and (vii) SIPC, pursuant to the Order Establishing Notice Procedures (ECF No. 4560). The Trustee submits that no other or

further notice is required. In addition, the Motion and related pleadings will be posted to the Trustee's website www.madofftrustee.com and are accessible, without charge, from that site.

No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **<u>CONCLUSION</u>**

For the reasons stated above, the Trustee respectfully requests that the Court enter an

order (i) disallowing the Claims of the net winner Claimants identified on Exhibit A to the

Sehgal Declaration, (ii) affirming the Trustee's claims determinations of the Claims identified on

Exhibits A and B to the Sehgal Declaration, (iii) overruling the Objections identified on Exhibits

A and B to the Sehgal Declaration, and (iv) granting such other and further relief as is just.


Dated: New York, New York                    Respectfully submitted,
      December 10, 2020

                                        */s/ David J. Sheehan*
                                        David J. Sheehan
                                        Email: dsheehan@bakerlaw.com
                                        Nicholas J. Cremona
                                        Email: ncremona@bakerlaw.com
                                        Jorian L. Rose
                                        Email: jrose@bakerlaw.com
                                        Amy E. Vanderwal
                                        Email: avanderwal@bakerlaw.com
                                        Jason I. Blanchard
                                        Email: jblanchard@bakerlaw.com
                                        **Baker & Hostetler LLP**
                                        45 Rockefeller Plaza
                                        New York, New York 10111
                                        Tel: (212) 589-4200
                                        Fax: (212) 589-4201

                                        *Attorneys for Irving H. Picard, Trustee for the*
                                        *Substantively Consolidated SIPA Liquidation*
                                        *of Bernard L. Madoff Investment Securities LLC*
                                        *and the chapter 7 estate of Bernard L. Madoff*