**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (SMB) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant, | |
| In re: | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 12-01565 (SMB) |
| STANDARD CHARTERED FINANCIAL SERVICES (LUXEMBOURG) S.A., as represented by its Liquidator Hanspeter Kramer, *et al.*, | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STAY**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I. The Trustee's Opposition Confirms that Briefing of the Motion to Amend Should Be Stayed ................................................................................2

    A. The Trustee Mischaracterizes the Relevance of *Citibank* and *Legacy* to this Case ...............................................................................2

    B. A Stay Will Promote More Efficient Coordinated Proceedings in Subsequent Transferee Cases ...........................................................7

    C. The Trustee's Position Is Inconsistent with His Efforts To Obtain a Stay in Related Cases ..................................................................8

    D. The Trustee Has Failed To Demonstrate Any Undue Prejudice Would Result from a Stay ...................................................................9

        1. The Trustee Cannot Blame the Course of Proceedings in this Case on SCB ................................................................. 9

        2. The Trustee's Speculation About Loss of Evidence Is Unfounded and Directly Refuted ......................................... 11

        3. The Duration of the Stay Will Not Prejudice the Trustee ......................................................................................... 12

II. The Trustee Should Not Be Permitted To Impose the Burdens and Costs of Additional Discovery Before Adequately Pleading a Claim ........................................13

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bernard L. Madoff Inv. Sec. LLC*,
    773 F.3d 411 (2d Cir. 2014) ................................................................................................. 10

*Catskill Mountains Chapter of Trout Unlimited, Inc.* v. *EPA*,
    630 F. Supp. 2d 295 (S.D.N.Y. 2009) ....................................................................................... 6

*In re Herald, Primeo, & Thema Sec. Litig.*,
    2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011) ........................................................................ 15

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019) ..................................................................................................... 10

*Penberthy* v. *Chickering*,
    2017 WL 176312 (S.D.N.Y. Jan. 13, 2017) ............................................................................. 8

*Picard* v. *ABN AMRO Bank N.V.*,
    2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ...................................................... 1, 8, 9

*Picard* v. *BNP Paribas S.A.*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................................. 1, 8, 9

*Picard* v. *Ceretti*,
    2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ............................................................. 6

*Picard* v. *Citibank, N.A.*,
    608 B.R. 181 (Bankr. S.D.N.Y. 2019) ................................................................................. 1, 5

*Picard* v. *Katz*,
    462 B.R. 447 (S.D.N.Y. 2011) ......................................................................................... 10, 13

*Picard* v. *Legacy Cap. Ltd.*,
    548 B.R. 13 (Bankr. S.D.N.Y. 2016) ............................................................................. 1, 5, 6

*Picard* v. *Merkin*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..................................................................................... 6

*Picard* v. *Shapiro*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..................................................................................... 7

*Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*,
    516 B.R. 18 (S.D.N.Y. 2014) ....................................................................................... 9, 11, 14

# TABLE OF AUTHORITIES
(*Continued*)

**Page(s)**

*Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*,
    590 B.R. 200 (Bankr. S.D.N.Y. 2018) ................................................................. 13, 14

*Sikhs for Justice* v. *Nath*,
    893 F. Supp. 2d 598 (S.D.N.Y. 2012) ......................................................................... 2

*In re Term Commodities Cotton Futures Litig.*,
    2013 WL 1907738 (S.D.N.Y. May 8, 2013) ........................................................ 11, 15

**Statutes**

11 U.S.C. § 548 ................................................................................................................ 1, 4, 6

11 U.S.C. § 550 ................................................................................................................ 1, 4, 6

**Rule**

Fed. R. Civ. P. 26 ............................................................................................................. 10, 13

# PRELIMINARY STATEMENT

The Trustee made a strategic decision when filing this case back in 2012—after obtaining discovery from SCB through a Rule 2004 subpoena and after the district court first clarified the good faith standard—not to pursue a willful blindness or knowledge theory with respect to SCB.[1] Thus, under the rulings of this court and the district court, the claims in the operative complaint are barred by Section 550(b) of the Bankruptcy Code. The Trustee also made a strategic decision to challenge those rulings as applied to the complaints in *Picard* v. *Citibank, NA.*, No. 20-1333 (2d Cir.) and *Picard* v. *Legacy Capital Ltd.*, No. 20-1334 (2d Cir.), and those appeals are pending.

The Trustee nevertheless asks this Court to ignore those pending appeals and allow this case to proceed immediately based on his assertion that additional allegations in his proposed amended complaint "satisfy the District Court's willful blindness standard." (Opp. 1, ECF No. 133.) This is precisely what the Trustee argued in *Citibank*, *Legacy* and every other case in which this Court has ultimately denied the Trustee leave to amend or dismissed a complaint for failure to plead willful blindness under Sections 548(c) or 550(b).[2] In reality, if the Second Circuit affirms this Court's dismissals in *Citibank* or *Legacy*, the Trustee's motion to amend here should also fail.

---

[1] Capitalized terms as used herein have the same meanings as those set forth in SCB's opening brief in support of its Motion to Stay. (ECF No. 129.)

[2] *See Picard* v. *Citibank, N.A.*, 608 B.R. 181, 197 (Bankr. S.D.N.Y. 2019) ("The PAC alleges that the Defendants developed a subjective belief in the high probability that BLMIS was running a Ponzi scheme as a result of its due diligence."); *Picard* v. *Legacy Cap. Ltd.*, 548 B.R. 13, 26 (Bankr. S.D.N.Y. 2016) (The Trustee argued "the [a]mended [c]omplaint adequately pled that [the defendants] willfully blinded themselves to Madoff's Ponzi scheme."); *RBS*, 2020 WL 1584491, at *7 (Bankr. S.D.N.Y. Mar. 31, 2020) (The Trustee "asserts that the amendments are necessary to meet the more rigorous pleadings requirements relating to allegations of bad faith . . . , and the allegations in the PSAC satisfy those requirements."); *Picard* v. *BNP Paribas S.A.*, 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018) ("The Trustee contends that the [d]efendants were aware of the high probability that BLMIS was not actually trading securities.").

Indeed, the Trustee's proposed amended complaint against SCB contains far fewer factual allegations suggesting contemporaneous knowledge of or suspicions arising from supposed "red flags" than those this Court rejected in *Citibank* and *Legacy* and subsequent cases.

Moreover, the Trustee has no meaningful answer to the fact that he has expressly agreed and argued in similarly-situated cases that a stay pending the Second Circuit's decisions in *Citibank* and *Legacy* would promote judicial efficiency and avoid potentially needlessly duplicative briefing and other proceedings. The Trustee's Opposition here identifies no undue prejudice from a stay, and any delays in the resolution of this case are of the Trustee's own making. Further, the Trustee's purported concerns about potential loss of evidence are wholly unsupported. Courts routinely issue stays pending related appeals in circumstances such as those present here, *e.g.*, *Sikhs for Justice* v. *Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012), and the Trustee's opposition to one here is simply a tactic to take multiple shots at pleading a claim against SCB while imposing unnecessary costs and burdens on the parties and the Court.

SCB respectfully requests that the motion to stay be granted.

## ARGUMENT

**I.    The Trustee's Opposition Confirms that Briefing of the Motion to Amend Should Be Stayed.**

### A.    The Trustee Mischaracterizes the Relevance of *Citibank* and *Legacy* to this Case.

The Trustee's principal argument in opposing a stay is his assertion that any decision in *Citibank* and *Legacy* is unlikely to impact this case because the Trustee believes his proposed amended complaint against SCB "more than satisf[ies] the District Court's willful blindness standard." (Opp. 1.) The Trustee's argument relies on a mischaracterization of the issues on appeal in *Citibank* and *Legacy*, and the allegations in the proposed amended complaint here.

- 2 -

*First*, the *Citibank* and *Legacy* appeals are directly relevant (and possibly dispositive) to any further briefing in this proceeding because the Second Circuit will assess the appropriate pleading burden and "good faith" standard, and (to the extent the Second Circuit confirms that the willful blindness standard applies) could foreclose the Trustee's claims here by affirming this Court's rulings that the allegations in *Citibank* and *Legacy* fail to satisfy that standard.

The Trustee's Opposition misstates the issues presented to the Second Circuit, claiming the only two "issues involved" in those appeals are whether the Trustee has "a duty to affirmatively allege a lack of good faith" and whether the "standard of good faith [is] one of willful blindness or a lower objective standard of inquiry notice." (Opp. 8; *see also* Oct. 29, 2020 Conf. Tr. 9:2–10.) The Trustee, however, raised a third issue, arguing that this Court erred in finding his complaints in *Citibank* and *Legacy* failed to meet the willful blindness test. Specifically, the Trustee has asked the Second Circuit to decide "whether the proposed amended complaint plausibly pleaded defendants' willful blindness to fraud at BLMIS and the bankruptcy court therefore erred by denying the Trustee leave to amend his complaint." (Tr.'s Br. at 2, *Citibank*, No. 20-1333 (Aug. 6, 2020), ECF No. 78; *see also* Tr.'s Br. at 2, *Legacy*, No. 20-1334 (Aug. 6, 2020), ECF No. 73.) The Trustee devoted a significant portion of his appeal briefs (a quarter of his opening briefs and a sixth of his reply briefs) in both cases arguing that the complaints in those cases adequately alleged that defendants were willfully blind to the BLMIS fraud when they allegedly received subsequent transfers. (Tr.'s Br. at 52–67, *Citibank*, No. 20-1333; Tr.'s Br. at 51–68, *Legacy*, No. 20-1334; Tr.'s Reply at 28–32, *Citibank*, No. 20-1333 (Nov. 25, 2020), ECF No. 167; Tr.'s Reply at 28–33, *Legacy*, No. 20-1334 (Nov. 25, 2020), ECF No. 166.) Regardless of the outcome of those three issues, further briefing on the impact of the Second Circuit's decision

- 3 -

is inevitable in cases such as this, where the Trustee seeks to plead the absence of good faith under Sections 548(c) and 550(b).[3]

*Second*, if the Second Circuit affirms this Court's rulings in *Citibank* and *Legacy*, the Trustee's proposed amended complaint will necessarily fail. The Trustee's proposed amendments here rely on allegations about what SCB learned over the course of its due diligence of Sentry and BLMIS, together with allegations borrowed from court filings made by other plaintiffs in *Anwar* v. *Fairfield Greenwich Ltd.*, No. 09-cv-118 (S.D.N.Y.), about supposed concerns raised by employees about Sentry or Madoff.[4] (*See* Mot. to Am. at 12, ECF No. 119; Proposed Am. Compl. ¶¶ 99, 126–31, ECF No. 120-1.) The Trustee alleged far more in *Citibank* and *Legacy*. In particular, the Trustee alleged that defendants in *Citibank* and *Legacy* had greater access to BLMIS's trading records than SCB, and that defendants in those cases harbored far more suspicions in real time about Madoff's trading. (*See, e.g.*, *Citibank* Proposed Am. Compl. ¶ 138,

---

[3] The Trustee's attempt to downplay the significance of *Citibank* and *Legacy* runs directly counter to his acknowledgment on appeal that the good faith issue "will arise in . . . many other cases in this very long-running liquidation, and *all parties* would benefit from knowing both the meaning of 'good faith' and who bears the pleading burden." (Tr.'s Br. at 52 n.4, *Citibank*, No. 20-1333 (emphasis added); Tr.'s Br. at 52 n.6, *Legacy*, No. 20-1334; *see also* Stay Stipulation and Order at 5, *Picard* v. *Natixis*, Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y. July 1, 2020), ECF No. 185) ("agree[ing] that a stay of the [a]ction pending resolution of the Good Faith Appeals . . . by the Second Circuit is in the interest of all parties and would promote judicial economy").)

[4] *Compare* Proposed Am. Compl. ¶¶ 108, 142–43, *Picard* v. *Citibank N.A.*, Adv. Pro. No. 10-05345 (Bankr. S.D.N.Y. Dec. 14, 2018), ECF No. 150-1 ("CGMI performed a quantitative [returns] analysis that demonstrated BLMIS could not achieve its purported investment returns . . . . [by] show[ing] that BLMIS purported to generate positive returns for Fairfield Sentry . . . 96.5% of the time" as compared to the S&P 100 Index, which posted positive returns "roughly only 63% of the time.") *and* Am. Compl. ¶ 2, *Picard* v. *Legacy Cap. Ltd.*, Adv. Pro. No. 10-05286 (Bankr. S.D.N.Y. July 2, 2015), ECF No. 112 (Legacy "retained Khronos to conduct a quantitative analysis of Legacy Capital's BLMIS customer statements and trade confirmations . . . [using] technology to track BLMIS's 'pricing and volume statistics,' which . . . demonstrated the options volume and timing impossibilities in Legacy Capital's account."), *with* Proposed Am. Compl. ¶ 122 ("[T]he knowledge Defendants acquired about BLMIS's operations though their diligence of any BLMIS Feeder Fund provided them with insight into BLMIS's operations and the recurring theme that BLMIS could not be making the trades it purported to make.").)

Adv. Pro. No. 10-05345 (quantitative analysis of BLMIS returns); *id.* ¶ 240 (feeder fund financial statements); *id.* ¶¶ 5–6, 9, 93, 104, 107–10, 113–28, 131, 133–55, 163–74, 190–229, 249–51; *Legacy* Am. Compl. ¶ 2, Adv. Pro. No. 10-05286 (quantitative analysis of customer statements and trade confirmations); *id.* ¶ 122 (options trade confirmations); *id.* ¶¶ 1, 42–52, 55, 59–66, 69, 74–121, 124–37.)

After considering those allegations, this Court in *Citibank* recognized that while the complaint alleged "that the Defendants assumed the 'remote' risk that BLMIS was not trading securities and might be a fraud and at most, were reckless and deliberately indifferent to that risk," those allegations were insufficient to plead the requisite "subjective belief in the high probability that BLMIS was a fraud." *Citibank,* 608 B.R. at 200.  Likewise in *Legacy*, the Court found that while the Trustee's complaint alleged that "Legacy strongly suspected that, at a minimum, BLMIS' option trades were not real," the *Legacy* complaint still failed to "allege the second prong, that Legacy turned a blind eye to its suspicions." *Legacy*, 548 B.R. at 35.[5]  Here, the proposed amended complaint nowhere alleges facts suggesting anyone at SCB knowingly assumed a risk that BLMIS was not trading securities, or that BLMIS' trades were not real and as reported by Sentry.

Further, contrary to the Trustee's assertions, this case is nothing like the *Merkin, Kingate* and *Square One* cases.  As this Court is aware, all of those cases involved defendants who managed feeder funds that invested *directly* with Madoff and either suspected Madoff's was

---

[5] The Trustee also overlooks the fact that defendants in *Citibank* and *Legacy* were much closer to BLMIS than SCB.  Citibank made a loan directly to a BLMIS Feeder Fund "to invest with BLMIS," (*Citibank* Proposed Am. Compl. ¶¶ 2–3, Adv. Pro. No. 10-05345), while Legacy "was a single purpose vehicle [that] *invested solely with BLMIS* through" an account that "was opened by transfers from two other BLMIS [a]ccounts."  (*Legacy* Am. Compl. ¶¶ 33–34, Adv. Pro. No. 10-05286 (emphasis added).)  SCB, by contrast simply facilitated the purchase of shares in Sentry to its private banking clients.  (Proposed Am. Compl. ¶¶ 5, 67.)

- 5 -

operating a Ponzi scheme or did no due diligence whatsoever. The Trustee's proposed amended complaint contains no similar allegations.[6]

In any event, no matter how the Second Circuit rules, its decisions will undoubtedly "guide this Court in ruling on . . . the key issues in" the Trustee's motion for leave to amend relating to the good faith standard under Sections 548(c) and 550(b). *Catskill Mountains Chapter of Trout Unlimited, Inc.* v. *EPA*, 630 F. Supp. 2d 295, 305 (S.D.N.Y. 2009) (alteration in original).[7] Briefing those same issues here as applied to the proposed amended complaint before the Second Circuit rules will be an unnecessary waste of the parties' and Court's time and resources.[8] Instead,

---

[6] In *Merkin*, the defendant acknowledged "that Madoff's scheme was bigger than Ponzi, and 'Charles Ponze [sic] would lose out because it would be called the 'Madoff Scheme'" while he allegedly actively "concealed or failed to disclose Madoff's involvement with" certain of his funds. *Picard* v. *Merkin*, 515 B.R. 117, 129–30 (Bankr. S.D.N.Y. 2014). Similarly, the *Kingate* defendants allegedly "actively deflected inquiries directed at Madoff, intimidated, attacked and threatened analysts who raised questions about Madoff and threatened their employers with the loss of business, fabricated stories about Madoff to placate the funds' investors, and tellingly, expressed a fear that an audit by PricewaterhouseCoopers 'actually start to ask all sort [sic] of questions next time they visit Madoff.'" *Legacy*, 548 B.R. at 35 (citing *Picard* v. *Ceretti*, 2015 WL 4734749, at *14 (Bankr. S.D.N.Y. Aug. 11, 2015)). The *Square One* defendants were alleged not to have performed "any due diligence regarding Square One's investment in BLMIS," and when one of defendant's employees allegedly "learned or confirmed . . . that BLMIS was a black box," defendants "immediately withdrew" their investments despite the investment's success. (May 29, 2019 Hr'g re Mot. to Dismiss Tr. 36:12–13; 42:19–22, *Picard* v. *Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. Sept. 20, 2019), ECF No. 181 (emphasis added). There are no such allegations in the proposed amended complaint here.

[7] The Trustee's attempts to distinguish the facts of *Catskill* on the grounds that a "sister circuit was in the process of determining a legal issue of first impression regarding a new administrative rule and the application of a federal statute" and "plaintiffs were participating as an amicus in the other case" are unavailing. (Opp. 13–14.) In *Catskill*, the district court ruled that a stay would "best serve the interests of the courts by promoting judicial efficiency" because the Eleventh Circuit's decision would be "instructive as to the underlying merits of the instant actions." *Catskill*, 630 F. Supp. 2d at 304–05. That reasoning applies with even greater force here, where the plaintiff is seeking on a direct appeal the first determination by the Second Circuit on the application of Section 550(b) to BLMIS-related cases, which will be binding on this Court.

[8] The Trustee spills much ink attempting to distinguish the facts of numerous cases in which courts have stayed proceedings pending important appeals on threshold legal issues (Opp. 11–14), but the Trustee points to no authority for the proposition that a plaintiff who has brought thousands

- 6 -

briefing of the motion to amend should be stayed.

> **B.  A Stay Will Promote More Efficient Coordinated Proceedings in Subsequent Transferee Cases.**

The Trustee's conclusory assertion that the interests of the public at large weigh against a stay misses the mark. While it is indisputable that "[t]he Madoff Ponzi scheme is one of the world's largest financial frauds" and involved countless victims (Opp. 11), that does not give the Trustee a pass to engage in needlessly duplicative litigation of a threshold issue while simultaneously attacking this Court's prior rulings on that issue on appeal of related cases.

Moreover, the Trustee's efforts to engage in piecemeal litigation of each related subsequent transferee case "on its individual facts" (*id.* at 10) will only prolong proceedings by creating the future prospect of multiple rulings (and potential appeals) on similar issues in dozens of cases. And while it is not yet possible for SCB to say precisely "what common issues remain that require coordinated proceedings" (*id.*) due to the Trustee's delay in seeking amendment of related subsequent transferee cases (which also undermines the Trustee's position here), potential common issues include:  (i) whether the Trustee adequately alleges avoidability of initial transfers from BLMIS to Sentry; (ii) whether the initial transfers have been avoided such that the Trustee can recover subsequent transfers at all; and (iii) whether the Trustee's complaints set forth facts that plausibly "support the inference that the funds at issue"—*i.e.*, the alleged "subsequent transfers"—actually "originated with" BLMIS, so as to "tie [the alleged] initial transfer[s] to any subsequent transfer[s] or [alleged s]ubsequent [t]ransferee[s]." *Picard* v. *Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015).

---

of related lawsuits and challenges a threshold and potentially dispositive pleading issue on appeal in two of those cases should be permitted to proceed with motions to determine the sufficiency of related complaints that raise the very issues being appealed.

### C. The Trustee's Position Is Inconsistent with His Efforts To Obtain a Stay in Related Cases.

The Opposition also lays bare the Trustee's contradictory positions in related subsequent transferee cases where he has sought or agreed to stays pending the *Citibank* and *Legacy* appeals. The Trustee has sought a stay where this Court has ruled against him or where the Trustee thinks the Court will do so, which has the effect of forestalling final resolution in favor of defendants in those cases.

Specifically, the Trustee contends that he sought or agreed to stays in *RBS*, Adv. Pro. No. 10-05354, and *BNP Paribas S.A.*, Adv. Pro. No. 12-01576, because this Court had already ruled that the Trustee's allegations were insufficient to allege willful blindness. (Opp. 6.)[9] The Trustee similarly argues that he agreed to a stay in *Natixis*, Adv. Pro. No. 10-05353, before repleading his complaint there because this Court had already ruled that the Trustee "failed to allege willful blindness" in the *RBS* and *BNP* cases, and *Natixis* "involved a similar set of facts" as those cases and *Citibank*. (Opp. 6.) In other words, the Trustee has been happy to seek a stay where this Court has ruled against him or where the Trustee thinks the Court will do so, which has the effect of forestalling final resolution in favor of defendants in those cases. The Trustee should not be permitted to take a contrary position here to impose unnecessary costs and litigation on SCB. *See Penberthy* v. *Chickering*, 2017 WL 176312, at *7 (S.D.N.Y. Jan. 13, 2017) (applying doctrine of judicial estoppel where: "1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel").

---

[9]     *See also RBS*, 2020 WL 1584491, at *12 (Bankr. S.D.N.Y. Mar. 31, 2020) (rejecting the Trustee's allegations of willful blindness); *BNP*, 594 B.R. at 204 (same).

- 8 -

Moreover, the Trustee's rationale for agreeing to a stay in *Natixis* applies with even greater force here when comparing the proposed allegations against SCB with those this Court found to be inadequate in *RBS* and *BNP*. The Trustee alleged in those cases that: (i) defendants allegedly deviated from their standard due diligence procedures when investigating BLMIS and/or a feeder fund; (ii) defendants should have addressed supposed "red flags" discovered through due diligence; and (iii) instead of investigating further, defendants took measures to supposedly protect themselves if BLMIS collapsed. *See RBS*, 2020 WL 1584491, at *7, 12; *BNP*, 594 B.R. at 179, 181–82, 184–85. The Trustee characterizes allegations against SCB in similar terms. (Proposed Am. Compl. ¶¶ 98–101, 108, 112–28, 139–70, 191–94; Mot. to Am. at 14–22; Opp. 1–2, 10.)

> D. **The Trustee Has Failed To Demonstrate Any Undue Prejudice Would Result from a Stay**
>
>> 1. **The Trustee Cannot Blame the Course of Proceedings in this Case on SCB.**

The Trustee's argument that SCB delayed this case by withdrawing the reference to join consolidated proceedings before the district court in 2012 to address certain threshold issues "and [has] prevented the Trustee from pursuing his claims through no fault of his own" is unsupported by the actual facts. (Opp. 5.) This case has not progressed past the pleading stage due to the unique and unprecedented nature of the Trustee's claims and the Trustee's litigation strategy of re-litigating the same issues in numerous cases, and appealing every adverse decision. *See Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*, 516 B.R. 18, 21 (S.D.N.Y. 2014) ("[I]n a fashion that the Court has learned is typical of the Trustee's litigation strategy, the Trustee here seeks to litigate once again the issue of whether 'good faith' should be judged by a subjective standard of willful blindness or by an objective standard of inquiry notice [even though] nothing in the intervening time has changed the analysis and conclusion that the Court reached in *Katz* and reiterated in *Avellino*.").

*First*, the Trustee has no explanation for his decision to wait nearly four years after the BLMIS liquidation began (and three years after SCB responded to his Rule 2004 subpoena) to file this adversary proceeding, or his decision *not* to pursue an actual knowledge or willful blindness theory when filing the original complaint. The Trustee chose instead to file what his counsel generously referred to as an "inquiry notice Complaint" (Oct. 29, 2020 Conf. Tr. 12:8–16), despite the fact that in 2011 the district court expressly rejected an inquiry notice standard for alleging lack of good faith. *Picard* v. *Katz*, 462 B.R. 447, 455 (S.D.N.Y. 2011) ("But if, simply confronted with suspicious circumstances, [an investor] fails to launch an investigation of his broker's internal practices . . . his lack of due diligence cannot be equated with a lack of good faith."). The Trustee could have pursued a willful blindness theory in his original complaint,[10] and SCB cannot be blamed for his decision not to do so.

*Second*, the Trustee's extraordinarily broad claims seeking to recover billions of dollars of largely foreign subsequent transfers to purported subsequent transferees of Sentry—a large net loser in the BLMIS fraud—have inevitably led to a series of necessary challenges on threshold and novel issues. *See, e.g.*, *In re Picard*, 917 F.3d 85 (2d Cir. 2019) (whether claims against foreign transferees were impermissibly extraterritorial); *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014) (whether payments to certain BLMIS customers were shielded from clawback by Section 546(e)). Indeed, it was the Trustee's decision to challenge the good faith standard and this Court's decision dismissing *Citibank* and *Legacy* on appeal that has further

---

[10]   The Trustee claims that he "continued to meet and confer regarding the production" made pursuant to the Rule 2004 subpoena "up and until the time the Trustee's complaint was dismissed as part of the extraterritoriality ruling." (Opp. 17.) This is not true. As the letter the Trustee attached as Exhibit D to his Opposition demonstrates, the Trustee's counsel contacted SCB's counsel only years after filing this case seeking further post-complaint Rule 2004 discovery in an attempt to end-run around Federal Rule of Civil Procedure 26. SCB declined, and the Trustee now concedes that "Rule 2004 discovery was foreclosed" after he filed his complaint. (Opp. 18.)

"delay[ed] rather than hasten[ed] the termination of th[is] litigation." *Sec. Inv. Prot. Corp.*, 516 B.R. at 25.

*Third*, despite filing lawsuits against Sentry and persons and entities that managed that fund in 2009, the Trustee failed to prosecute those cases for years, leaving the threshold question of avoidability of the initial transfers he seeks to recover here in substantial doubt. As a result, the Trustee readily admits that a forthcoming motion to dismiss in his case against persons and entities who managed Sentry "offers no assurance of final resolution of the issue of the avoidability of the initial transfers," which is a threshold issue in this case. (Opp. 7.)

2. **The Trustee's Speculation About Loss of Evidence Is Unfounded and Directly Refuted.**

The Trustee's claims that he "faces the loss of witnesses" or "relevant documentary evidence" are completely unfounded (Opp. 5.) and are nothing more than "the usual litigation risks that affect all the parties equally, regardless of the amount of time permitted for discovery." *In re Term Commodities Cotton Futures Litig.*, 2013 WL 1907738, at *7 (S.D.N.Y. May 8, 2013) (granting stay). Unable to articulate any factual basis to support his concern about loss of evidence, the Trustee relies principally on the assertion that document production issues arose during the *Anwar* proceedings. (Opp. 16.) But those "issues" do not support the Trustee's argument here. As the transcript excerpt the Trustee relies on makes clear, all of the supposed issues concerning the completeness of the production were addressed by the parties and the court. (Forman Decl. Ex. E, ECF No. 134-5 (noting that where certain minutes were incomplete "we have had to go to our offices abroad and have them copied and have them sent here so that we can produce them immediately").) The Trustee's concern regarding the safety of electronically stored data is equally unfounded. (Opp. 5, 16.) In support of SCB's motion, SCB's counsel confirmed that the documents and deposition transcripts from the *Anwar* proceedings that the Trustee seeks have been

- 11 -

and will be retained. (Finn Decl. ¶ 6, ECF No. 130.)[11]

### 3. The Duration of the Stay Will Not Prejudice the Trustee.

When it suited his efforts to forestall final resolution of another case, the Trustee emphatically proclaimed back in May 2020 to Judge Valerie Caproni that a stay "pending a decision by the Second Circuit . . . is of a reasonable duration" and "[t]here is no reason to anticipate any undue delay in the Second Circuit's decision."[12] (Mot. to Stay Appeal at 10, *RBS*, No. 20-cv-03684 (S.D.N.Y. May 28, 2020), ECF No. 4.) Further, the Trustee's contrary argument that he will be prejudiced by the delay caused by a stay here is based on an overstatement of its likely duration. The Trustee argues that "[f]inal resolution" of *Citibank* and *Legacy* "could take years" because the losing party in the appeals "is likely to seek *en banc* reconsideration as well as Supreme Court review." (Opp. 9.) But, SCB has not sought a stay through "final resolution" of the *Citibank* and *Legacy* cases, and this Court recognized at the October 29, 2020 conference that waiting for further review after "the Second Circuit speaks" may not be necessary. (Oct. 29, 2020 Conf. Tr. 8: 20–25 ("THE COURT: Well, I'm not sure that we have to wait for -- depending on what the Court decides. I mean, this is really a pleading issue that we have to wait for en banc

---

[11] Without receiving the same assurance, the Trustee's supposed concerns over potential loss of evidence must have either dissipated when he agreed to a stay in similarly-situated cases or were secondary to the Trustee's belief "that a resolution of the Good Faith Appeals . . . by the Second Circuit could materially affect, inter alia, . . . the scope of any discovery in the [a]ction." (Stay Stipulation and Order at 5, *Natixis*, Adv. Pro. No. 10-05353.)

[12] The Trustee inexplicably challenges an argument that in the same breath he admits SCB did not make: "that this case should be stayed not only until after the *Citi/Legacy* appeals are finalized but also until after the Trustee's case against certain Fairfield Greenwich Group entities and partners is resolved." (Opp. 7.) SCB's reference to *Picard* v. *Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239, simply highlights the undisputed fact that "substantial progress in related cases can still be made before the Second Circuit rules" because "[i]f the Court in that action determines the complaint fails to state a claim" in that case, "the Trustee cannot recover from SCB here." (Mot. to Stay at 15, ECF No. 129.)

- 12 -

review or the mandate to issue because these cases are not on appeal. There's nothing that prevents these cases from going forward once the Second Circuit speaks.).)

## II. The Trustee Should Not Be Permitted To Impose the Burdens and Costs of Additional Discovery Before Adequately Pleading a Claim.

The Trustee argues that discovery should proceed because in his view the *proposed amended complaint* pleads a viable claim. (Opp. 14.) The Trustee cites no authority, however, to support his assertion that a party's subjective belief about the viability of proposed amendments warrants the opening of discovery where the only operative complaint (the Trustee's *original complaint* filed on April 26, 2012) does not state a claim. (ECF No. 1.)[13] Further, the Trustee already obtained discovery pursuant to Rule 2004 and elected not to allege any lack of good faith or willful blindness in the operative complaint. Against this procedural backdrop, the Court should not relieve the Trustee of the consequences of his strategic choices by permitting him to impose the burdens and costs of additional discovery at this stage of the proceeding, especially when "this Court has not ruled on the sufficiency of the allegations of the Trustee's" proposed amended complaint. (Opp. 6.)

Moreover, the Trustee provides no good reason to deviate from this Court's previous rulings rejecting the Trustee's attempts to seek Rule 26 discovery from other subsequent

---

[13] The Trustee attempts to distort history by claiming that "[t]he scope of [his] Rule 2004 subpoena did not contemplate the discovery to which the Trustee is entitled in view of the District Court's ruling" in *Katz*. (Opp. 17–18.) In reality, the Trustee brought the operative complaint here **a year after** the *Katz* decision, meaning the Trustee had plenty of time to contemplate the consequences of the decision and seek additional pre-complaint discovery from SCB related to the issue of lack of good faith. In any event, as this Court has recognized and as is the case here, "the Rule 2004 subpoenas issued to Defendants years before the law changed [with respect to the good faith standard] sought the same discovery [the Trustee] now seeks relating to the Defendants' due diligence and monitoring, their decision to invest directly or indirectly with BLMIS, their knowledge of illegality and the fees they paid or received." *Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*, 590 B.R. 200, 208–10 (Bankr. S.D.N.Y. 2018).

- 13 -

transferee defendants while also seeking to amend complaints against those defendants where, as here, the Trustee had also sought similar discovery from the defendants through pre-complaint Rule 2004 subpoenas. *Sec. Inv. Prot. Corp.*, 590 B.R. at 205–10; *see also* Oct. 28, 2015 Hearing Tr. at 102:12–15, *Picard* v. *Mendelow*, Adv. Pro. No. 10-04283 (Bankr. S.D.N.Y. Oct. 30, 2015), ECF No. 85 (noting "concern" that discovery taken "before [the Trustee has] a legally sufficient claim" might be used "to bolster the allegations which is exactly what you're not supposed to do"). Further, the Trustee's contention that the district court somehow misconstrued the Trustee's Rule 2004 subpoena powers (Opp. 18) is wrong and irrelevant. The district court's good faith decision in 2014 in no way suggested that the Trustee was entitled to additional Rule 2004 discovery or that the district court believed that such discovery was still available to the Trustee. Rather, the district court's opinion stated what has been plain in these proceedings—that "[t]he Trustee has extensive discovery powers under Rule 2004 of the Federal Rules of Bankruptcy Procedure through which he may gather information ***before he ever files a complaint***. It is thus not unreasonable to require that the Trustee provide a plausible basis to claim that a defendant lacked good faith in his ***initial*** complaint." *Sec. Inv. Prot. Corp.*, 516 B.R. at 24 n.5 (emphasis added and internal citation omitted). Indeed, the Trustee's proposed "staged discovery" involving requests for transcripts from depositions and thousands of documents produced in *Anwar* is nothing more than a fishing expedition in the hopes of uncovering some actual evidence to support the unsupported assertions the Trustee admits he borrowed from plaintiffs' public filings in *Anwar* to support his proposed amended complaint. (Mot. to Am. at 9 n.12, 12 (acknowledging proposed "willful blindness" allegations are "[b]ased on testimony in the *Anwar* cases that was referenced in public filings" and "the Trustee has not had the opportunity to review any of that evidence").)

Finally, the Trustee's assertion that obtaining discovery materials from *Anwar*

- 14 -

would impose "minimal burden" on SCB is not true. The *Anwar* discovery is not uniformly relevant to the Trustee's claims here, including because the claims in *Anwar* involved current or former clients of Standard Chartered and/or American Express Bank who *did not* redeem their Sentry investments and thus whose transactions are not at issue here. For this reason and given the sheer number of documents the Trustee seeks, responding to the Trustee's requests will be a costly and time-consuming process. *See In re Term Commodities Cotton Futures Litig.*, 2013 WL 1907738, at *1, 6 (recognizing the "significant" burden associated with compelling defendants to produce same documents to plaintiff that were previously produced to a government regulator); *see also In re Herald, Primeo, & Thema Sec. Litig.*, 2011 WL 5928952, at *15 (S.D.N.Y. Nov. 29, 2011) (acknowledging in BLMIS-related proceeding the enormous "costs of conducting discovery in New York, including, without limitation, the intensity and expense of U.S. discovery").

Thus, the most efficient course of action would be to stay discovery until the parties have clarity as to the sufficiency of the Trustee's proposed amended complaint.

## CONCLUSION

For the reasons set forth above and in its opening brief, SCB respectfully requests that the Court stay this adversary proceeding pending the Second Circuit's decisions in *Citibank* and *Legacy*.

Dated:  December 10, 2020
         New York, New York

/s/  *Andrew J. Finn*
Andrew J. Finn
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Tel:  (212) 558-4000
Fax:  (212) 558-3588
Email:  finna@sullcrom.com

Diane L. McGimsey (*pro hac vice*)
1888 Century Park East
Los Angeles, California  90067

*Attorneys for SCB*