| | |
|---|---|
| **Baker & Hostetler LLP** <br> 45 Rockefeller Plaza <br> New York, New York 10111 <br> Telephone: (212) 589-4200 <br> Facsimile: (212) 589-4201 <br> David J. Sheehan <br> Nicholas J. Cremona <br> Jorian L. Rose <br> Amy E. Vanderwal <br> Jason I. Blanchard | Hearing Date: January 27, 2021 <br> Hearing Time:  10:00 a.m. (EST) <br> Objections Due: January 20, 2021 <br> Objection Time:  4:00 p.m. (EST) |

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the chapter 7 estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. <br> In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |

**TRUSTEE'S THIRD MOTION**
**TO AFFIRM THE TRUSTEE'S CLAIMS DETERMINATIONS AND OVERRULE**
**OBJECTION OF CLAIMANTS WHO INVESTED IN CERTAIN FEEDER FUNDS AND**
<u>**DID NOT HAVE BLMIS ACCOUNTS IN THEIR NAMES**</u>

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa–lll, ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff") (collectively, the "Debtor"), by this combined motion and memorandum of law (the "Motion"), requests that this Court affirm his claims determinations and overrule the related objections of certain claimants (the "Claimants") who did not have accounts with BLMIS in their own names, but instead invested directly or indirectly in certain "feeder funds."

The five feeder funds (the "Feeder Funds") in which the Claimants invested are listed in alphabetical order on Exhibit 1 to Vineet Sehgal's Declaration in Support of the Motion (the "Sehgal Declaration"). The seven claims ("Claims") and related objections ("Objections") filed by the Claimants are listed in alphabetical order by the Claimant's first name on Exhibit 2 to the Sehgal Declaration. In support of this Motion, the Trustee states as follows:

## PRELIMINARY STATEMENT

Many claimants who lost money in Madoff's Ponzi scheme did not invest directly with BLMIS. Instead, many of them invested in various "feeder funds" that, in turn, invested with BLMIS through securities accounts held in the names of those funds. This Court, the District Court, and the Second Circuit Court of Appeals have determined that claimants who invested in feeder funds and did not have BLMIS accounts in their own names are not "customers" within the meaning of SIPA. Therefore, they are ineligible to share in the fund of customer property reserved for BLMIS customers with allowed net equity claims.

The Court previously granted the Trustee's motions to deny 1,844 claims of investors who invested in feeder funds and did not have BLMIS accounts in their own names and overruled the claimants' related objections. The Claimants at issue in this Motion are legally indistinguishable from those feeder fund investors whose claims have been denied. In fact, the

---

[1] Subsequent references to SIPA shall omit "15 U.S.C."

2

Feeder Funds in which the Claimants invested were the subject of a prior claims motion by the Trustee. Because the Claimants did not file their Objections until after briefing on that prior motion had begun, the Trustee did not include the Claims and Objections at that time. Now, the Claims and Objections are ripe for adjudication. Therefore, the Trustee respectfully requests that the Motion be granted for the same reasons the Court granted the Trustee's prior feeder fund motions.

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to SIPA §§ 78eee(b)(2) and 78eee(b)(4) and 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### 1. The Commencement of the SIPA Proceeding

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of BLMIS's insolvency, its customers needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

2. **The Trustee's Role under SIPA**

Under SIPA, the Trustee is responsible for, among other things, recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee in addition to the powers granted by SIPA. SIPA § 78fff-1(a). In satisfying customer claims, the Trustee evaluates whether claimants are "customers," as defined in SIPA § 78*lll*(2), who are entitled to share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case), if the customer's share of customer property does not make her whole. SIPA § 78fff-3(a).

It is the customer's burden to demonstrate entitlement to customer status. *In re Bernard L. Madoff Inv. Sec. LLC*, 570 B.R. 477, 481 (Bankr. S.D.N.Y. 2017) (citing *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.")). The customer also bears the burden of proving the amount of his or her claim. *In re Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513, 532 (Bankr. S.D.N.Y. 2018) (citing *Pitheckoff v. Sec. Inv'r Prot. Corp. (In re Great E. Sec., Inc.)*, No. 10 Civ. 8647 (CM), 2011 WL 1345152, at *4 (S.D.N.Y. Apr. 5, 2011)) *aff'd* 605 B.R. 570 (S.D.N.Y. 2019), *aff'd* No. 19-2988, 2020 WL 5902581 (2d Cir. Oct. 6, 2020); *In re A.R. Baron Co., Inc.*, 226 B.R. 790, 795 (Bankr. S.D.N.Y. 1998).

3. **The Claims Process in the BLMIS Liquidation**

On December 23, 2008, this Court entered a claims procedures order (the "Claims Procedure Order"), which approved (i) the form and manner of publication of the notice of the commencement of the liquidation proceeding and (ii) specified the procedures for filing, determining and adjudicating customer claims. (*See* ECF No. 12). BLMIS customers were directed to file their claims with the Trustee no later than six (6) months from the date the Trustee published notice of the commencement of the liquidation proceeding. *See* SIPA § 78fff-2(a)(3). After receiving a claim, the Trustee issued a determination letter to the claimant regarding the allowed amount of net equity. Claimants were permitted to object to the Trustee's determination of a claim by filing an objection in this Court, following which the Trustee requested a hearing date for the objection and notified the objecting claimant thereof.

Under the provisions of the Claims Procedure Order, the Trustee has successfully prosecuted numerous omnibus motions to affirm his claims determinations and overrule related objections based on legal issues previously decided in his favor and many other motions to affirm his determinations that certain claimants should not be treated as "customers" under SIPA.

The Trustee has filed this Motion in accordance with the Claims Procedures Order to affirm his determinations of the Claims and overrule the Objections, which are identified on Exhibit 2 of the Sehgal Declaration. There are no pending avoidance actions related to the Claimants and the Claims and Objections are now ripe for final adjudication.

4. **The Prior Feeder Fund Motions**

In 2010, the Trustee filed a motion (the "First Feeder Fund Motion") to affirm his denial of 1,771 claims filed by claimants who did not have BLMIS accounts in their names, but rather

invested in one or more feeder funds.[2] *See* ECF Nos. 2411–2413, 2416, 2995, 2996. The Court granted the First Feeder Fund Motion and determined that in light of the plain language of SIPA and relevant case law, the claimants did not qualify as "customers" of BLMIS under SIPA. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 292 (Bankr. S.D.N.Y. 2011). The Court's decision was affirmed by both the District Court and the Second Circuit Court of Appeals. *See In re Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013).

After the Second Circuit's decision became final, the Trustee filed another motion (the "Second Feeder Fund Motion") to affirm his denial of 73 claims filed by claimants who also did not have BLMIS accounts in their own names, but instead invested in several feeder funds. *See* ECF Nos. 5396-5399, 5438, 5439. The Court granted the Second Feeder Fund Motion for the same reasons it stated in granting the First Feeder Fund Motion. *See* ECF Nos. 5450, 5452.

### 5. The Feeder Funds

The Feeder Funds consist of (1) two limited partnerships organized under the laws of the State of Delaware; (2) one LLC organized under the laws of the State of New York; (3) one "exempted company" organized under the laws of the Cayman Islands; and (4) one "international business company" organized under the laws of the British Virgin Islands. *See* Sehgal Decl., Exs. 5, 10, 11, 13, 16, 17, 19.

Each Feeder Fund meets the following criteria: (1) it is a legal entity (i.e., capable of owning property and of suing or being sued) that was created as an investment vehicle; (2) it obtained funds that it used for investment by selling ownership interests in itself, either directly

---

[2] The five Feeder Funds in which the Claimants invested were among the feeder funds subject to the First Feeder Fund Motion.

or indirectly, to, among others, the Claimants and used the funds obtained from those sales for investment purposes; (3) its managers and administrators, not the Claimants, had responsibility for managing and directing the fund's investments; (4) it invested directly with BLMIS and had a BLMIS account; and (5) it is not a bank, broker or dealer. *Id.* at ¶32; *see also Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 292.

The Feeder Funds maintained the accounts with BLMIS identified on Exhibit 1 to the Sehgal Declaration (collectively, the "Feeder Fund Accounts"). Each Feeder Fund Account was held in the name of the respective Feeder Fund, not in the names of the Claimants. Sehgal Decl. at ¶¶33, 34. Moreover, to open an account with BLMIS, account holders generally executed a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements"). Many of the Feeder Funds executed the Account Agreements. *Id*. at ¶30, Exs. 5, 10, 13, 16. All account statements and confirmations were addressed care of the Feeder Funds and their agents, not the Claimants. *Id*. at ¶¶31, 35, Exs. 4, 7, 9, 12, 15. The Claimants did not open individual securities accounts with BLMIS for their Feeder Fund investments. *Id*. at ¶34.

BLMIS's books and records show that the Feeder Funds were responsible for, and in fact, made deposits and withdrawals from their respective Feeder Fund Accounts without attribution to the Claimants. *Id*. at ¶35. By contrast, those same books and records do not reflect deposits or withdrawals directly to or from BLMIS by the Claimants. *Id.*

The Feeder Funds filed customer claims with the Trustee for each of the Feeder Fund Accounts. *Id.* at ¶6, Exs. 3, 6, 8, 11, 14. These claims each have been finally determined by the Trustee. *Id.* Because the Feeder Funds maintained the Feeder Fund Accounts and were responsible for making deposits into and withdrawals from those accounts, the books and records

of BLMIS reflect the amounts owed between the Feeder Fund and the estate for each of the Feeder Fund Accounts.

Some of the Claims are not based upon investments in the Feeder Funds, but upon investments in other funds that, in turn, invested in the Feeder Funds. For example, Claimant Candace Newlove invested in an entity called Agile Group, LLC, which in turn invested in Rye Select Broad Market Prime Fund, L.P. *See id.* at ¶29, Ex. 20. In her claim form, Ms. Newlove stated that the amount owed to her was the "estimated pro-rata percentage of Agile's investment in [Rye Select Broad Market Prime Fund, LP, one of the Feeder Funds]." *Id*. Ms. Newlove conceded that she was an indirect investor who did not have a BLMIS account. *Id*.

## RELIEF REQUESTED

By this Motion, the Trustee seeks a determination by the Court that the Claimants do not qualify as customers of BLMIS within the meaning of SIPA. The Trustee respectfully requests entry of an order (i) affirming the Trustee's determinations of the Claims, (ii) disallowing the Claims, and (iii) overruling the Objections.

## BASIS FOR RELIEF

To qualify as a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person." SIPA § 78*lll*(2)(A). A customer includes "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2)(B)(i).

In *Kruse*, the Second Circuit considered whether claimants who had invested in limited partnerships, which in turn had invested in the partnerships' own BLMIS accounts, qualified as

8

BLMIS's customers under SIPA. *Kruse*, 708 F.3d at 427. The court held that the claimants "never entrusted their cash or securities to BLMIS" when they invested in the partnerships. *Id.* at 428. Therefore, the claimants had failed to satisfy the "critical aspect of the 'customer' definition" regardless of their intention to invest with BLMIS. *Id.* (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). Because the money sent to BLMIS belonged to the account holders, not the individual claimants, the claimants could not show entrustment of their own cash or securities to BLMIS. *Kruse*, 708 F.3d at 426–27. The Second Circuit further determined that the claimants failed to demonstrate other key indicia of customer status in their dealings (or lack of dealings) with BLMIS. The evidence showed that the claimants: (i) had no direct financial relationship with BLMIS; (ii) held no property interest in the funds invested directly with BLMIS; (iii) did not hold securities accounts with BLMIS; (iv) lacked control over the account holders' investments with BLMIS; and (v) were not identified or otherwise reflected in BLMIS's books and records. *Id.* (citing *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976)). For these reasons, the court held that the claimants had failed to sustain their burden of proving they were BLMIS's customers. *Id.* at 427.

This Court and the District Court have held likewise. *See Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*, No. 12 CIV. 1039 (DLC), 2012 WL 3042986, at *13–14 (S.D.N.Y. July 25, 2012) (holding that the claimants did not qualify as customers under SIPA because they neither held accounts in their own names nor deposited their own cash directly with BLMIS); *In re Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (Bankr. S.D.N.Y. Feb. 15, 2015), ECF No. 9506 at 27–35 (holding that indicia of customer status include a direct financial relationship with BLMIS, a property interest in the funds invested directly with BLMIS, securities accounts with BLMIS, control over the account holders' investments with

9

BLMIS and identification of the alleged customer in BLMIS's books and records); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 168 (Bankr. S.D.N.Y. 2014) (holding that to qualify as a customer of BLMIS under SIPA, the party seeking customer status "must show that she entrusted her own assets directly through an account maintained in her own name rather than indirectly through a fund that then entrusted the fund's assets through an account maintained in the fund's name.").[3]

The Claimants, like the feeder fund investors whose claims the Court has previously disallowed, do not meet the requirements for "customer" status identified by the Second Circuit in *Kruse*. Under those requirements, only the Feeder Funds qualify as customers of BLMIS, not the Claimants. First, BLMIS's books and records show that only the Feeder Funds had accounts

---

[3] During this SIPA liquidation, this Court has issued numerous unpublished orders that have addressed whether certain investors in BLMIS account holders, or individual contributors to individually-held accounts, could be treated as "customers" under SIPA when those investors themselves did not have individual accounts with BLMIS. In each order, the court determined that those claimants could not be treated as customers of BLMIS. *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in: PJ Administrator, LLC, ECF No. 19444 (Mar. 24, 2020); the David Shapiro Nominee, David Shapiro Nominee #2 and David Shapiro Nominee #3 Partnerships, ECF No. 16942 (November 22, 2017); the Jennie Brett and David Moskowitz Accounts, ECF No. 16812 (Oct. 20, 2017); the Schupak Account, ECF No. 16641 (Sept. 18, 2017); the Brighton Company and the Popham Company, ECF No. 16523 (Aug. 16, 2017); the Lambeth Company, ECF No. 16404 (July 20, 2017); Jeffrey Schaffer Donna Schaffer Joint Tenancy and Stanley I. Lehrer and Stuart M. Stein Joint Tenancy, ECF No. 16229 (June 26, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF No. 15920 (Apr. 27, 2017); Judy L. Kaufman et al. Tenancy in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824, 15825 (Apr. 13, 2017); Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); and S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015).

at BLMIS in their own names and were the only accountholders. Second, the Feeder Funds signed all account-related contracts on their own behalf and therefore had the exclusive power to direct BLMIS's investment-related decisions. Third, only the Feeder Funds had a direct financial relationship with BLMIS. They deposited and withdrew funds from BLMIS directly without attribution to the Claimants. Fourth, nothing in BLMIS's records shows that the Claimants entrusted their own cash or securities with BLMIS. Rather, the Claimants appear to have handed their money over to the Feeder Funds, albeit for the purpose of investing in BLMIS. Finally, BLMIS only sent account statements and communications for the Feeder Fund Accounts to the Feeder Funds and their agents.

Because BLMIS did not perform a custodial function on behalf of the Claimants, they do not have "customer" claims. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the custody function of brokers." *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015) (finding impermissible the application of interest or time-based damages to customer claims under SIPA). Only customers of the debtor are entitled to share in the fund of customer property, according to each customer's "net equity," to the extent ascertainable from the debtor's books and records or otherwise established to the Trustee's satisfaction. *Id.* at 77, 81; *see* SIPA § 78fff-2(b). In short, the Claimants have not met their burden to establish their status as customers under SIPA. Therefore, they are not eligible for claims for net equity.

## NOTICE

Notice of this Motion has been provided by U.S. mail, postage prepaid, or email to the following: (i) all Claimants listed on Exhibit 2 to the Sehgal Declaration (and their counsel) whose Claims and Objections are subject to this Motion; (ii) all parties included in the Master

11

Service List as defined in the Order Establishing Notice Procedures (ECF No. 4560); (iii) all parties that have filed a notice of appearance in this case; (iv) the SEC; (v) the IRS; (vi) the United States Attorney for the Southern District of New York; and (vii) SIPC, pursuant to the Order Establishing Notice Procedures (ECF No. 4560). The Trustee submits that no other or further notice is required. In addition, the Motion and related pleadings will be posted to the Trustee's website www.madofftrustee.com and are accessible, without charge, from that site.

No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

For the reasons stated above, the Trustee respectfully requests that the Court enter an order affirming the Trustee's determinations of the Claims, disallowing the Claims, overruling the Objections of the Claimants identified on Exhibit 2 to the Sehgal Declaration and granting such other and further relief as is just.

Dated: New York, New York
December 23, 2020

Respectfully submitted,

/s/ David J. Sheehan
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Jason I. Blanchard
Email: jblanchard@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the chapter 7 estate of Bernard L. Madoff*