**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant, | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01699 (SMB) |
| Plaintiff, | |
| v. | |
| ROYAL BANK OF CANADA; GUERNROY LIMITED; ROYAL BANK OF CANADA (CHANNEL ISLANDS) LIMITED; ROYAL BANK OF CANADA TRUST COMPANY (JERSEY) LIMITED; ROYAL BANK OF CANADA (ASIA) LIMITED; ROYAL BANK OF CANADA (SUISSE) S.A.; RBC DOMINION SECURITIES INC.; and RBC ALTERNATIVE ASSETS, L.P.; | **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY** |
| Defendants. | |

{11881350:1}

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...................................................................................1

II. PROCEDURAL HISTORY..........................................................................................2

III. DEFENDANTS HAVE ALREADY STIPULATED TO A BRIEFING SCHEDULE ......4

IV. DISPOSITIVE LEGAL AND FACTUAL PLEADING ISSUES IN THIS CASE
ARE NOT BEING ADDRESSED AT THE SECOND CIRCUIT .....................................9

V. ANY RELIEF AFFORDED TO DEFENDANTS SHOULD BE NARROWLY
TAILORED..................................................................................................................12

VI. CONCLUSION............................................................................................................13

## **TABLE OF AUTHORITIES**

**Cases**      **Page(s)**

*Babitt v. Wilton Estates, Inc. (In re Byung Kang)*,
 No. 07-02003, 2008 WL 2323359 (Bankr. S.D.N.Y. June 3, 2008) ........................................ 7

*Bidlack v. Chesapeake Appalachia, LLC*,
 No. 3:11-0129, 2012 WL 1657934 (M.D. Pa. May 11, 2012) .................................................. 8

*In re Fosamax Prods. Liab. Litig.*,
 815 F. Supp. 2d 649 (S.D.N.Y. 2011) ..................................................................................... 6

*In re Peck*,
 155 B.R. 301 (Bankr. D. Conn. 1993) ..................................................................................... 6

*Katel Limited Liability Co. v. AT & T Corp.*,
 607 F.3d 60 (2d Cir. 2010) ................................................................................................. 5, 7

*Keiser v. CDC Inv. Mgmt.*,
 No. 99 Civ. 12101, 2003 WL 1733729 (S.D.N.Y. Mar. 25, 2003) ................................. 5, 6, 8

*McCoy v. Feinman*,
 785 N.E.2d 714 (N.Y. Ct. App. 2002) ..................................................................................... 6

*Miroshnikowa v. Continuum Health Partners, Inc.*,
 No. 04 Civ. 7023, 2005 WL 2581744 (S.D.N.Y. Oct. 12, 2005) ............................................ 8

*Patterson v. Newspaper & Mail Deliverers Union of N.Y.*,
 No. 73 Civ. 3058, 2005 WL 3750749 (S.D.N.Y. July 13, 2005) ............................................ 7

*Picard v. ABN AMRO Bank Ireland Ltd., et al.*,
 Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y. Feb. 22, 2019), ECF No. 166 .............................. 9

*Picard v. ABN AMRO Bank N.V., et al.*,
 No. 1:20-cv-03684 (S.D.N.Y. May 28, 2020), ECF No. 4 .................................................... 12

*Picard v. ABN AMRO Bank, N.V., et al.*,
 Adv. Pro. No. 10-05354 (Bankr. S.D.N.Y. June 10, 2019), ECF No. 180 .............................. 9

*Picard v. BNP Paribas S.A., et al.*
 Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y.) ...................................................................... 9, 12

*Picard v. Ceretti (In re BLMIS)*,
 Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ....... 10

*Picard v. Citibank N.A., et al.*,
   Adv. Pro. No. 10-05345 (Bankr. S.D.N.Y. Dec. 14, 2018), ECF. No. 150 ............................. 9

*Picard v. Citibank, N.A.*,
   No. 20-1333 (2d. Cir) ................................................................................................... passim

*Picard v. Legacy Capital Ltd.*,
   No. 20-1334 (2d Cir.) ................................................................................................... passim

*Picard v. NATIXIS, et al.*
   Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y.) ...................................................................... 9, 12

*Picard v. Standard Chartered Financial Services (Luxembourg) S.A., et al.*,
   Adv. Pro. No. 12-01565 (Bankr. S.D.N.Y.) ............................................................. 2, 9, 11, 12

*Santana Prods., Inc. v. Sylvester Assocs., Ltd.*,
   No. 98 CV 6721 (ARR), 2006 WL 7077215 (E.D.N.Y. Nov. 13, 2006),
   *aff'd*, 279 Fed. Appx. 42 (2d Cir. 2008) ............................................................................ 6-7

*SIPC v. BLMIS (In re Madoff Sec.)*,
   516 B.R. 18 (S.D.N.Y. 2014) ............................................................................................ 2, 3, 8

*Stein & Day Inc. v. Coordinated Sys. & Servs. Corp. (In re Stein & Day Inc.)*,
   83 B.R. 221 (Bankr. S.D.N.Y. 1988) ..................................................................................... 5-6

*United States ex rel. Reilly v. New England Teamsters & Trucking Indus. Pension Fund*,
   737 F.2d 1274 (2d Cir. 1984) .................................................................................................. 6

**Statutes**

15 U.S.C. §§ 78aaa–*lll* ................................................................................................................ 1

11 U.S.C. § 550(b) ...................................................................................................................... 2

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 2

Plaintiff Irving H. Picard (the "Trustee"), as the Trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–lll, and the consolidated chapter 7 estate of Bernard L. Madoff, respectfully submits this memorandum of law in opposition to Defendants' Motion to Stay.

## I. PRELIMINARY STATEMENT

Defendants should not be granted a stay after they have agreed in five different court-ordered stipulations that the parties would move forward with briefing on an amended complaint once the appeal regarding extraterritoriality and comity was done. There were no other conditions to moving forward, and that appeal was concluded on June 1, 2020. Nothing has changed since the last stipulation they entered into in September 2020 that would allow Defendants to simply change their mind about proceeding with that briefing.

Requiring Defendants to abide by their stipulated agreement is also consistent with judicial economy and the interests of the parties and public. This case involves legal and factual issues that will not be resolved by the Second Circuit appeal in either *Citi*[1] or *Legacy*,[2] including that the Trustee is alleging Defendants' *actual knowledge* of BLMIS's fraud. Here, unlike in *Citi*, *Legacy*, or any other subsequent transfer case before this Court thus far, the Trustee's Proposed Amended Complaint (ECF No.113, Ex. A, the "PAC") alleges that executives in charge of Defendants' investments openly acknowledged they *knew at the time they were investing in and redeeming from BLMIS feeder funds* that Madoff was operating a fraud. Neither

---

[1] *Picard v. Citibank, N.A.*, No. 20-1333 (2d. Cir) ("*Citi*").

[2] *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir.) ("*Legacy*").

the Second Circuit appeal in *Citi* or *Legacy* addresses the legal sufficiency of a complaint alleging actual knowledge of BLMIS's fraud under Rule 12(b)(6).

As such, the Motion to Stay should be denied in its entirety, notwithstanding the stay recently granted to other, unrelated defendants in *Standard Chartered*.[3]  At the very least, any relief granted to Defendants should be narrowly tailored, as addressed herein.

## II.  PROCEDURAL HISTORY

The Trustee filed his original complaint (ECF No. 1, "Original Complaint") in this action in June 2012, when Defendants' "good faith" under Bankruptcy Code § 550(b) was still an affirmative defense, and the Trustee had no burden to plead otherwise.  A few weeks later, Defendants—along with defendants in other Trustee adversary proceedings—moved to withdraw the reference on numerous bases, including for a determination of the proper standard for "good faith" as to subsequent transferees in SIPA proceedings.  The District Court granted the motion to withdraw the reference on this issue, and in April 2014, it held for the first time that for the Trustee's claims to survive a motion to dismiss, the Trustee must plead that initial and subsequent transferees were willfully blind to or had actual knowledge of fraud at BLMIS.  *SIPC v. BLMIS (In re Madoff Sec.)*, 516 B.R. 18, 22-24 (S.D.N.Y. 2014) (the "Good Faith Decision").[4]

In July 2014, the District Court issued a separate decision on the effect of extraterritoriality and comity on the Trustee's cases, and remanded the cases to this Court for disposition consistent with that decision.  In November 2016, this Court issued its decision based

---

[3] *Picard v. Standard Chartered Financial Services (Luxembourg) S.A., et al.*, Adv. Pro. No. 12-01565 (SMB) ("*Standard Chartered*").

[4] Contrary to Defendants' contentions (Motion to Stay at 5-6), and as recently recognized by this Court in the hearing on Standard Chartered's motion to stay, it was not the Trustee's burden to plead bad faith of subsequent transferees until the District Court issued the Good Faith Decision in 2014.  *See* Tr. Of Hr'g at 31:23-32:6, 44:12-17, *Standard Chartered* (Bankr. S.D.N.Y. Dec. 16, 2020).

{11881350:1}                                                     2

on the District Court's guidelines, dismissing certain of the Trustee's claims in this action as against certain defendants, while allowing others to remain (the "ET decision"). The order formally granting in part the motion to dismiss was finalized in March 2017, and the Trustee thereafter appealed the Court's dismissal directly to the Second Circuit. ECF No. 71.

While the Second Circuit appeal was pending, on February 4, 2019, the Trustee and those Defendants not dismissed by the ET decision (the "Non-Dismissed Defendants") entered into, and this Court so-ordered, their first Stipulation and Order establishing a briefing schedule for the Trustee's anticipated motion for leave to amend the Original Complaint as against the Non-Dismissed Defendants. ECF No. 103. Defendants knew by this time that the Original Complaint would be amended to include allegations of bad faith. *See, e.g.,* Defs.' Mem. of Law, ECF No. 81, at 26 (Bankr. S.D.N.Y. Oct. 6, 2017) (arguing that if the Trustee is denied pre-answer discovery, he may still move forward by filing a proposed amended complaint addressing the good faith issue, as he has done in other cases following the Good Faith Decision).

A few weeks later, on February 25, 2019, the Second Circuit reversed the ET decision. The parties then entered into their second and third Stipulations, so-ordered by this Court, extending the briefing schedule for short periods, in order to determine appropriate next steps in light of that decision and related appellate proceedings. ECF Nos. 104-05. On May 30, 2019, the parties ultimately set forth in a further updated, fourth Stipulation and Order that it was in their mutual best interests to hold off on briefing a motion to amend until the mandate returned from the Second Circuit, in order to allow all claims and Defendants to be pursued together. ECF No. 107. The parties chose this course of litigation "to facilitate an efficient resolution of the Trustee's claims following the Second Circuit Decision." *Id*.

In the meantime, the Trustee filed proposed amended complaints in *Citi* and *Legacy*—two

cases not dismissed by the ET decision—each of which was rejected by this Court for failure to adequately plead bad faith in accordance with Judge Rakoff's heightened standard. At the end of 2019, the Trustee filed appeals directly with the Second Circuit challenging (i) the propriety of the good faith standard and pleading burden as established in the Good Faith Decision and (ii) whether the Trustee had adequately pleaded willful blindness in those cases. The Trustee's briefs in those appeals were filed in August 2020. *Citi*, ECF No. 78; *Legacy*, ECF No. 73.

On June 1, 2020, the Supreme Court denied Defendants' petition for certiorari with respect to the ET decision, and the previously-dismissed cases and claims were remanded to this Court. With all claims and Defendants in this case back before the Court, on September 11, 2020, the parties entered into a fifth so-ordered Stipulation (the "Fifth Stipulation and Order"). The Fifth Stipulation and Order states that the Trustee and Defendants "shall file" the motion for leave to amend the Original Complaint, opposition, and reply, as applicable, at set dates, beginning no later than 60 days from the so-ordered date. ECF No. 111.

Accordingly, on November 10, 2020, the Trustee filed his motion for leave to amend (ECF Nos. 112-13, the "Motion to Amend"). Two weeks later, Defendants filed the Motion to Stay, notwithstanding the agreed upon briefing schedule. ECF Nos. 116-18.

### III. DEFENDANTS HAVE ALREADY STIPULATED TO A BRIEFING SCHEDULE

This is not a case that was fully dismissed and revitalized solely as a result of the Second Circuit having overturned the ET decision. Rather, this has been a live case in the bankruptcy court since 2012 and throughout the ET decision appeal period. As evidenced by the five stipulated briefing schedules agreed to by the parties and entered by this Court, moving forward with the Trustee's Motion to Amend has always been the parties' intent. A stay improperly puts off what the parties mutually agreed they should be litigating now.

Defendants seek to withdraw from this stipulated course of litigation based on the existence of the *Citi* and *Legacy* appeals. But Defendants' procedural posture vis-à-vis those appeals today is no different than it was in September 2020, when Defendants voluntarily agreed in the Fifth Stipulation and Order, for the fifth time, to set a briefing schedule for moving forward.[5] By September 2020, Defendants had been on notice of the existence and status of those appeals for many months, and the *Citi* and *Legacy* appeals were already well underway. Moreover, in August 2020—a month before Defendants signed that fifth stipulation—the Trustee's briefs in the *Citi* and *Legacy* appeals were filed.

Consistent with case law enforcing stipulations in a variety of circumstances, the Fifth Stipulation and Order is binding on Defendants. *See, e.g.*, *Katel Limited Liability Co. v. AT & T Corp.*, 607 F.3d 60, 65-66 (2d Cir. 2010) (plaintiff bound by so-ordered stipulation fixing amount owed by defendant, because "[a] stipulation is generally binding on parties that have legal capacity to negotiate, do in fact freely negotiate their agreement and either reduce their stipulation to a properly subscribed writing or enter the stipulation orally on the record in open court"); *Keiser v. CDC Inv. Mgmt.*, No. 99 Civ. 12101, 2003 WL 1733729, at *3-*4 (S.D.N.Y. Mar. 25, 2003) (plaintiff bound by so-ordered stipulation wherein she agreed to administrative review of issue, because "[a] stipulation and order is a binding agreement between parties to a dispute that is enforceable as a contract" and "there is a strong judicial policy in favor of enforcing stipulations") (citations omitted); *Stein & Day Inc. v. Coordinated Sys. & Servs. Corp. (In re Stein & Day Inc.)*, 83 B.R. 221, 226-27 (Bankr. S.D.N.Y. 1988) (observing that a "'[s]o

---

[5] The parties have since agreed to allow Defendants an additional 30 days to file their opposition to the Motion to Amend; the stipulation reflecting that agreement has been submitted to, but not yet entered by, the Court.

{11881350:1}    5

ordered' stipulation has a double aspect both as a contract and as a court order" and holding creditor in contempt for failing to comply with so-ordered stipulation).

Per the terms of the Fifth Stipulation and Order, the Trustee had to file his Motion to Amend by the date provided therein, and he did so. Defendants obligated themselves to do the same, with respect to their opposition to that motion. A party cannot unilaterally withdraw from a stipulation. *See, e.g., United States ex rel. Reilly v. New England Teamsters & Trucking Indus. Pension Fund,* 737 F.2d 1274, 1278 (2d Cir. 1984).

As recognized in the Second Circuit, the enforcement of stipulations provides litigants with certainty as to the administration of their cases. *See, e.g., In re Fosamax Prods. Liab. Litig.*, 815 F. Supp. 2d 649, 653-54 (S.D.N.Y. 2011) ("The interests of predictability and judicial economy require courts to uphold stipulations into which parties have freely and knowingly entered where there is a clear record of the terms to which the parties have agreed."); *In re Peck*, 155 B.R. 301, 310 (Bankr. D. Conn. 1993) (Non-enforcement "would inject uncertainty into the enforcement of stipulated orders, which contribute immeasurably to the prompt and efficient administration of bankruptcy cases."); *see also McCoy v. Feinman*, 785 N.E.2d 714, 719 (N.Y. Ct. App. 2002) (noting that stipulations provide litigants with "predictability and assurance that courts will honor their prior agreements").

This policy extends to stipulations that are procedural in nature. *See Keiser*, 2003 WL 1733729, at *12 n.1 ("Plaintiff's assertion that authority cited by defendants is inapposite because it concerns stipulations of final settlement and not, as is the case here, a so-called 'mid-litigation procedural stipulation' highlights a distinction without a difference. Procedural and other interlocutory stipulations implicate many of the same policy considerations as do stipulations of final settlement, and are similarly favored."); *see also Santana Prods., Inc. v. Sylvester Assocs.*,

*Ltd.*, No. 98 CV 6721 (ARR), 2006 WL 7077215, at *11 (E.D.N.Y. Nov. 13, 2006), *aff'd*, 279 Fed. Appx. 42 (2d Cir. 2008) ("Defendant affirmatively waived [its right to file a reply brief] when it stipulated to a briefing schedule that did not permit it to file a reply brief."). When he filed the Motion to Amend in accordance with the stipulated briefing schedule, the Trustee believed he had procedural certainty.

Defendants offer no basis for relief from the Fifth Stipulation and Order, nor can they, given the high bar in the Second Circuit for doing so. *See, e.g., Babitt v. Wilton Estates, Inc. (In re Byung Kang)*, No. 07-02003, 2008 WL 2323359, at *2 (Bankr. S.D.N.Y. June 3, 2008) (creditor bound by so-ordered stipulation in which it agreed that summary judgment motion would be decided solely on the papers, where creditor "offers no reason why its own stipulation should be disregarded"); *Katel*, 607 F.3d at 65-66 ("Courts should not disturb a valid stipulation absent a showing of good cause such as fraud, collusion, mistake or duress[,] or unless the agreement is unconscionable or contrary to public policy[,] or unless it suggests an ambiguity indicating that the words did not fully and accurately represent the parties' agreement.") (citations and quotation marks omitted); *Patterson v. Newspaper & Mail Deliverers Union of N.Y.*, No. 73 Civ. 3058, 2005 WL 3750749, at *7 (S.D.N.Y. July 13, 2005) (Where so-ordered stipulation provided procedure for resolving plaintiffs' action, "[b]ecause there have been no allegations that the Stipulation was entered into as the result of fraud, overreaching, duress or mistake, the Stipulation is binding" and the court has a "'duty to enforce the stipulation.'") (citation omitted).

That Defendants in retrospect determined a stay would be preferable (or became aware after entering into the Fifth Stipulation and Order that other subsequent transfer defendants were seeking a stay) is not a sufficient rationale for withdrawing from a stipulated, court-ordered

briefing schedule. *See, e.g.*, *Keiser*, 2003 WL 1733729, at *4 ("[A] party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined here.") (citation omitted); *Miroshnikowa v. Continuum Health Partners, Inc.*, No. 04 Civ. 7023, 2005 WL 2581744, at *2 (S.D.N.Y. Oct. 12, 2005) (dismissing action where plaintiff failed to take certain actions by deadline provided by so-ordered stipulation and plaintiff offered "no basis for relief from the so-ordered Stipulation" other than his own negligence); *Bidlack v. Chesapeake Appalachia, LLC*, No. 3:11-0129, 2012 WL 1657934, at *6 (M.D. Pa. May 11, 2012) (deriding plaintiffs' request to be relieved from a stipulation to arbitrate that they belatedly determined to be prejudicial as an attempt "to avoid the consequences of a decision to ... compromise which in retrospect appears unfortunate").

Defendants' half-hearted suggestion in a footnote that they should be excused from the Fifth Stipulation and Order because they were "unaware that the Trustee's Proposed Amended Complaint would track closely with the allegations made in *Citibank* and *Legacy*" (Motion to Stay at 3 n.2) is wrong for two reasons. First, even if the facts in this case and those in *Citi/Legacy* "track[ed] closely"—which, as addressed in Section IV below, is not true—this is obviously no rationale for Defendants abandoning their agreement. *See* cases cited *supra*.

Second, Defendants were in any event well aware that a proposed amended complaint would include facts supporting Defendants' knowledge and conduct as to BLMIS's fraud. The Original Complaint makes clear that the Trustee is seeking recovery of subsequent transfers received by Defendants out of BLMIS feeder funds. ECF No. 1 at 2. Since the Good Faith Decision was issued in 2014, every subsequent transfer amended complaint the Trustee has filed (in both the main case and case-specific dockets) has alleged a lack of good faith and has set

{11881350:1}                                                    8

forth specific allegations to meet Judge Rakoff's heightened good faith standard.[6] Defendants have had notice of each of these filings through the main case docket (Adv. Pro. No. 08-01789). Defendants knew that here, as in the other cases, the Trustee would be amending the Original Complaint in order to meet the current burden and standard on good faith. *See supra* p. 4. Defendants chose to enter into the Fifth Stipulation and Order anyway, and accordingly should be bound by it.

## IV. DISPOSITIVE LEGAL AND FACTUAL PLEADING ISSUES IN THIS CASE ARE NOT BEING ADDRESSED AT THE SECOND CIRCUIT

Requiring Defendants to abide by the Fifth Stipulation and Order is contrary to neither judicial economy nor the interests of the parties. This case involves distinct, dispositive legal and factual issues not present in *Standard Chartered*, *Citi* or *Legacy* that the Second Circuit appeals in *Citi/Legacy* do not address.

One of Defendants' primary arguments for a stay is that this case and *Citi/Legacy* have "significantly overlapping factual and legal issues," such that the Second Circuit's ruling in *Citi/Legacy* will "significantly affect the briefing" in this case. Motion to Stay at 4. Defendants argue that allowing this matter to go forward risks "duplicative briefing," and that "the Second Circuit's decision will provide meaningful guidance for this Court when considering whether the Trustee's PAC is futile." *Id*. at 3, 13. These assertions ignore the allegations of the PAC.

Here, the PAC alleges actual knowledge of a subsequent transferee, which factual and legal issues are not on appeal in *Citi/Legacy*. As set forth in the Trustee's Motion to Amend,

---

[6] *See, e.g.*, *Picard v. ABN AMRO Bank, N.V., et al.*, Adv. Pro. No. 10-05354 (Bankr. S.D.N.Y. June 10, 2019), ECF No. 180; *Picard v. ABN AMRO Bank Ireland Ltd., et al.*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y. Feb. 22, 2019), ECF No. 166; *Picard v. NATIXIS, et al.*, Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y. Jan. 30, 2019), ECF No. 174; *Picard v. Citibank N.A., et al.*, Adv. Pro. No. 10-05345 (Bankr. S.D.N.Y. Dec. 14, 2018), ECF No. 150; *Picard v. BNP Paribas S.A., et al.*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y. Aug. 30, 2017), ECF No. 100.

{11881350:1}                                                9

unlike willful blindness, actual knowledge requires the Trustee to plead that Defendants had "a high level of certainty and absence of any substantial doubt regarding the existence of a fact." Motion to Amend at 19-20 (citing *Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749, at *13 (Bankr. S.D.N.Y. Aug. 11, 2015) ("*Kingate*")). The Trustee alleges that actual knowledge of Madoff's fraud exists in this case because, most notably, high-ranking RBC executives openly admitted having that knowledge. PAC at ¶¶ 91-131. As detailed by one such executive in a post-fraud book about Madoff, in 1997, he and his team conducted countless hours of due diligence on BLMIS, met with Madoff "to see whether his guaranteed investment strategy was for real," and "[w]ithin about fifteen minutes" of meeting Madoff, realized that they had "stumbled into a fraud." PAC at ¶¶ 96-97, 117. That executive told others his belief, but—as told by him—no one believed Madoff "could pull something off like that." *Id*. at ¶ 117. In endorsing the book, he then affirmatively stated that he had in the 1990s "debunked the legend" of Madoff. *Id*. at ¶ 118. This knowledge was moreover corroborated by two other RBC executives in charge of BLMIS investments, who in 2000 "agreed [Madoff] was a fraud." *Id*. at ¶ 120. Thereafter, RBC protected itself by "blacklisting" Madoff from the list of parties against which it would provide leverage. *Id*. at ¶¶ 129-131.

Under established case law, there is perhaps no stronger evidence of one's knowledge than that person's own admissions. Motion to Amend at 21 (citing cases). Moreover, as in *Kingate*, Defendants' certainty that Madoff was operating a fraud was the result of a substantial analysis of BLMIS. *Kingate* at *13-*15. This actual knowledge standard for good faith, and the application of *Iqbal/Twombly* to the aforementioned facts, are not at issue in the Second Circuit appeals. As with *Kingate*, to the extent the PAC sufficiently alleges actual knowledge, this Court may find that such allegations are sufficient to survive a motion to dismiss and that it need not

address the alternative standard of willful blindness. *Kingate* at *16.

The above facts regarding knowledge are markedly different from those in *Citi/Legacy*, and Defendants are therefore wrong that the PAC "track[s] closely" with the allegations in *Citi/Legacy*. In fact, whereas this Court found the *Citi* case implausible based on a disbelief that others would knowingly lend money to a Ponzi scheme (which finding is a part of the appeal), the PAC alleges that Defendants intentionally did *not* lend money into the fraudulent scheme, because of their knowledge. PAC at ¶¶ 129-31. That the cases may plead some of the same red flags of BLMIS's fraud is not a rationale for tying them together.[7] Thus the Second Circuit's resolution of the facts in *Citi/Legacy* is unlikely to provide guidance on how to analyze the adequacy of the Trustee's allegations against Defendants.

Given these differences, the risk of inconsistent outcomes is remote at best, and judicial economy does not favor a stay. For similar reasons, arguments about prejudice to Defendants are no rationale for staying this case. And practically speaking, how *could* Defendants claim prejudice, when just two months before filing their Motion to Stay, they entered into the Fifth Stipulation and Order agreeing to move forward and setting a briefing schedule? Prejudice does not arise merely because Defendants decide after the fact that another course of action is more preferable.

On the other hand, as set forth in the *Standard Chartered* briefing, the Trustee will be prejudiced by having to wait for the Second Circuit's decision to be issued and possibly longer if *en banc* review and/or certiorari is sought. This prejudice is not diminished by the fact that the

---

[7] Defendants themselves recognize that the differences in allegations between individual complaints matter, as evidenced by the chart in the Motion to Stay setting forth red flags asserted in the PAC versus those alleged in *Citi* and *Legacy*. Though the chart is intended to illustrate that the PAC's allegations are not as strong as those in *Citi* and *Legacy*, Defendants only reach that conclusion by totally disregarding all of the allegations in the PAC unique to the Trustee's case (as detailed herein), which are conspicuously absent from the chart.

Trustee agreed to a stay in *Picard v. ABN AMRO Bank N.V., et al.*, No. 1:20-cv-03684 (S.D.N.Y. May 28, 2020), ECF No. 4 ("*RBS*"); *Picard v. BNP Paribas S.A., et al.*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y., June 1, 2020), ECF No. 162 ("*BNP*"); and *Picard v. NATIXIS, et al.*, Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y. July 1, 2020), ECF No. 185 ("*Natixis*"). In each of those cases, the stay was issued while the decisions were on appeal. Without those stays, the *Citi* and *Legacy* appeals would have been delayed until the appeals in *RBS*, *BNP*, and *Natixis* caught up to and were potentially consolidated with *Citi* and *Legacy*. Avoiding unnecessary delay was the Second Circuit's goal in issuing stays in those other cases and is the same rationale driving the Trustee's opposition to a stay in this case.[8]

V. **ANY RELIEF AFFORDED TO DEFENDANTS SHOULD BE NARROWLY TAILORED**

There is no reason to put off the Trustee's Motion to Amend as Defendants have already committed to moving forward, the case involves factual and legal issues that are independent of the Second Circuit appeal, and there is no prejudice to Defendants. For all these reasons, Defendants' request for a stay should be denied in its entirety.

However, if this Court were inclined to grant Defendants any relief, that relief should be narrowly tailored, taking into account the Fifth Stipulation and Order. At the very least, the Court should require Defendants to adhere to the terms of the Fifth Stipulation and Order by

---

[8] The Motion to Stay makes certain additional arguments that mirror those in the *Standard Chartered* motion to stay. *Standard Chartered* docket, ECF Nos. 129-30. For example, Defendants argue that that this case should be stayed so that it can be coordinated in an omnibus fashion with other subsequent transfer cases. For duplicative arguments such as these, the Trustee adopts, and refers the Court, to the arguments made in rebuttal, in the Trustee's opposition to that motion. *Id.*, ECF Nos. 133-34.

The Motion to Stay also relies largely on the same case law as was cited by *Standard Chartered*. For the reasons set forth in the Trustee's opposition to the *Standard Chartered* motion, those cases are inapposite as they involve situations where (i) a decision in another action could have provided full immunity to the defendants, foreclosing plaintiff from proceeding at all or (ii) cases involving the same persons participating or seeking to participate in both proceedings. *Id.*, ECF No. 133 at 11-14.

{11881350:1}    12

requiring the parties to fully brief the Motion to Amend now, even if a determination on the motion is stayed until the Second Circuit rules on *Citi* and *Legacy*.

This would avoid further prejudicing the Trustee.  As addressed above, stipulations are enforced in order to allow parties certainty and predictability in litigation.  The Trustee's expectation in entering into the Fifth Stipulation and Order was that the parties would move forward expeditiously with briefing.  The Trustee agreed to be bound by the timetable contemplated therein based on that expectation, and filed his Motion to Amend accordingly.  There is no reason to reward Defendants with an unprecedented amount of time during which to craft their opposition, instead of adhering to the timetable to which they also agreed.

Even more significantly, there is no just reason to delay briefing on any purported grounds for dismissal of the Motion to Amend other than good faith.  As to those other grounds, the parties should be required to adhere to the Fifth Stipulation and Order and brief such issues now.  Defendants should not be allowed to freeze this case on the basis of a pending appeal that affects only one of their anticipated defenses.

By the same token, if the Second Circuit determines that the Trustee does not have the burden to plead good faith, Defendants should not thereafter be able to seek dismissal of the complaint—new or old—on the basis of good faith.  This is very important.  Otherwise, Defendants will be able to delay this case for many more years, even if the Second Circuit determines that the burden of pleading good faith was never on the Trustee to begin with.

## VI.    CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that Defendants' Motion to Stay be denied, and that the Trustee's Motion to Amend be permitted to continue in accordance with the Fifth Stipulation and Order on file in this case.

Dated: New York, New York
December 30, 2020

By: /s/ Kim M. Longo
Howard L. Simon (hsimon@windelsmarx.com)
Kim M. Longo (klongo@windelsmarx.com)
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*