KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
(212) 940-8800
*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>　　　　Plaintiff-Applicant,<br>　　v.<br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br>　　　　Defendant. | **Adv. Pro. No. 08-01789 (SMB)**<br><br>**SIPA Liquidation**<br>**(Substantively Consolidated)** |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROYAL BANK OF CANADA; GUERNROY LIMITED; ROYAL BANK OF CANADA (CHANNEL ISLANDS) LIMITED; ROYAL BANK OF CANADA TRUST COMPANY (JERSEY) LIMITED; ROYAL BANK OF CANADA (ASIA) LIMITED; ROYAL BANK OF CANADA (SUISSE) S.A.; RBC DOMINION SECURITIES INC.; AND RBC ALTERNATIVE ASSETS, L.P.,<br><br>　　　　Defendants | **Adv. Pro. No. 12-01699 (SMB)** |

**REPLY IN FURTHER SUPPORT**
**OF DEFENDANTS' MOTION TO STAY**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 4

    I.    The *Citibank* and *Legacy* Appeals Will Decide Controlling Issues of Law. ...................... 4

    II.    A Stay Will Promote More Efficient Proceedings in Subsequent Transferee Cases. ........ 10

    III.    The Trustee Has Failed to Demonstrate Any Undue Prejudice Would Result From a Stay. .................................................................................................................................. 11

    IV.    The Trustee's Request for Limited Relief Should Be Denied. ......................................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dean v. Lularoe LLC*,
   No. 17-01579, 2017 WL 10574353 (N.D. Cal. July 18, 2017) ..............................................11

*Hershfang v. Citicorp*,
   767 F. Supp. 1251 (S.D.N.Y. 1991) ..........................................................................................6

*Mayberry v. E.P.A.*,
   No. 06-2575, 2008 WL 11002708 (D. Kan. Jan. 1, 2008) .......................................................12

*Nicolas v. Trustees of Princeton Univ.*,
   No. 17-3695, 2017 WL 6514462 (D.N.J. 2017) ......................................................................11

*Penberthy v. Chickering*,
   2017 WL 176312 (S.D.N.Y. Jan. 13, 2017) .............................................................................10

*Picard v. ABN AMRO Bank N.V. (The Royal Bank of Scotland, N.V.)*,
   No. 1:20-cv-03684, 2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ..................... passim

*Picard v. BNP Paribas S.A.*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) .......................................................................8, 9, 13, 14

*Picard v. Citibank, N.A*,
   608 B.R. 181 (Bankr. S.D.N.Y. 2019) .......................................................................................8

*Picard v. Citibank, NA*,
   No. 20-1333 (2d Cir.) ...................................................................................................... passim

*Picard v. Katz*,
   462 B.R. 447 (S.D.N.Y. 2011), *abrogated on other grounds by SIPC v.*
   *BLMIS*, 513 B.R. 437 (S.D.N.Y. 2014) ....................................................................................8

*Picard v. Legacy Capital Ltd.*,
   548 B.R. 13 (Bankr. S.D.N.Y. 2016) ...............................................................................7, 8, 9

*Picard v. Legacy Capital Ltd.*,
   No. 20-1334 (2d Cir.) ...................................................................................................... passim

*Picard v. Natixis*,
   Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y. July 1, 2020) ..............................................9, 13, 14

*Picard v. Shapiro*,
   542 B.R. 100 (Bankr. S.D.N.Y. 2015) .....................................................................................10

*Picard v. Standard Chartered*,
  Adv. Proc. 12-01565-smb (Bankr. S.D.N.Y.) ................................................................ *passim*

*Picard v. Tremont Grp. Holdings, Inc.*,
  No 10-05310 (Bankr. S.D.N.Y. Dec. 7, 2010) ......................................................................... 8

*Sikhs for Justice v. Nath*,
  893 F. Supp. 2d 598 (S.D.N.Y. 2012) ..................................................................................... 4

*SIPC v. BLMIS*,
  516 B.R. 18 (S.D.N.Y. 2014) ............................................................................................. 7, 9

*Thornbrough v. Western Placer Unified School Dist.*,
  No. 2:09-cv-02613, 2010 WL 11717842 (N.D. Cal. Aug. 20, 2010) ..................................... 12

Defendants Royal Bank of Canada, Guernroy Limited, Royal Bank of Canada (Channel Islands) Limited, Royal Bank of Canada Trust Company (Jersey) Limited, Royal Bank of Canada Singapore Branch, as successor to Royal Bank of Canada (Asia) Limited, Banque SYZ, as successor to Royal Bank of Canada (Suisse) S.A., RBC Dominion Securities Inc., and RBC Alternative Assets, L.P. (collectively, "Defendants" or "RBC") respectfully submit this reply memorandum of law in further support of their motion to stay this adversary proceeding pending decisions by the United States Court of Appeals for the Second Circuit in *Picard v. Citibank, NA*, No. 20-1333 (2d Cir.) ("*Citibank*") and *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir.) ("*Legacy*").

## PRELIMINARY STATEMENT

Recently, on December 16, 2020, in another similarly situated subsequent transferee case, this Court granted the defendant's motion to stay a proceeding initiated by the Trustee in *Picard v. Standard Chartered*, Adv. Proc. 12-01565-smb (Bankr. S.D.N.Y.).[1]  This Court reasoned that the appeals in *Citibank* and *Legacy* concern "controlling issues of law, specifically the Trustee's pleading burden and the subjective versus objective standard of knowledge" and that a stay would "forestall the need for this Court to needlessly expend judicial resources" addressing those issues of law.  (Declaration of Mark T. Ciani in Further Support of Motion to Stay, dated Jan. 8, 2021 ("2d Ciani Decl."), Ex. D (Hearing Tr. dated Dec. 16, 2020, at 49:1-4).)  This Court also held that a stay would "reduce the risk of inconsistent rulings," (*id.* at 49:9), prevent the Trustee from "needlessly expend[ing] resources on simultaneous litigation of identical controlling questions of law" (*id.* at 49:14-16), and "serve[] the best interests of the non-parties and the public by

---

[1] Capitalized terms used herein, unless otherwise defined or necessitated by context, shall have the same meaning ascribed to them in Defendants' moving brief.

1

conserving judicial resources and avoiding the possibility of conflicting decisions" (*id.* at 49:19-22). As noted during the *Standard Chartered* hearing, the Trustee successfully argued for the same result in *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("RBS")*, No. 1:20-cv-03684 (S.D.N.Y.). (2d Ciani Decl. Ex. D (Hearing Tr. dated Dec. 16, 2020, at 47:22-48:2); *see also* Memo Endorsement on Notice of Motion to Stay Appeal, *RBS*, No. 1:20-cv-03684 (S.D.N.Y. June 8, 2020, ECF No. 12).) In *RBS*, the Trustee correctly argued that "the interests of judicial economy and uniformity on important questions of law would be served by staying" that proceeding. (*See RBS*, No. 1:20-cv-03684, ECF No. 4.)

The same prudent decision reached in *Standard Chartered* and *RBS* should be applied here, and despite the Trustee's contentions, there is no meaningful distinction between this case and those others. The Trustee's Proposed Amended Complaint in this case (No. 12-ap-01699, ECF No. 113-1, the "Proposed Amended Complaint" or "PAC") adds allegations to bolster his argument that RBC actually knew or was willfully blinded to the BLMIS Ponzi scheme. In his Opposition,[2] the Trustee argues that leave to amend in this case will not be determined based on the *Citibank* and *Legacy* decisions because, unlike in those cases where this Court applied the facts to the law on the willful blindness standard, the Proposed Amended Complaint meets the much higher and rigorous actual knowledge standard. In fact, the Trustee's proposed pleading is futile and he has not satisfied his burden to plead willful blindness, let alone actual knowledge. Indeed, the Trustee has only alleged in the Proposed Amended Complaint that certain individuals working at an RBC entity had suspicions that the investment strategy that BLMIS disclosed to its investors was not consistent with its assets under management and its routinely positive returns. The

---

[2] "Opposition" or "Opp." refers to the Trustee's Memorandum of Law in Opposition to Defendants' Motion to Stay dated December 30, 2020.

2

Proposed Amended Complaint has no credible allegations of anything more—only conclusory allegations largely based upon a book written by a person who never worked at RBC, who in turn spoke to a single former RBC employee seeking publicity.

However, this Court should not have to wade into these issues now. As this Court noted, a determination as to which party's argument is correct will require "a 30 to 40-page decision going through the factual allegations and then the law and then applying the law." (2d Ciani Decl. Ex. D (Hearing Tr. dated Dec. 16, 2020 at 33:6-8).) The *Citibank* and *Legacy* appeals, once decided, will shed light on whether the Trustee has to plead a lack of good faith in the first instance, and if so, whether it must plead willful blindness. Moreover, if the Trustee's motion for leave to amend in this case is briefed and argued before the Second Circuit decides the *Citibank* and *Legacy* appeals, the parties will be forced to argue, and the Court will be forced to decide, this issue without the benefit of not only the Second Circuit's decision on the appropriate pleading standard and the appropriate standard to determine a lack of good faith, but also the Second Circuit's application of that law to the facts in *Citibank* and *Legacy*. Without the Second Circuit's guidance, there is a substantial risk of inconsistent rulings and needlessly expended judicial resources, as this Court concluded in *Standard Chartered*.

The Trustee attempts to make hay of a Stipulation and Order setting a briefing schedule in this case, to which the parties agreed on September 10, 2020, and this Court so ordered on September 11, 2020. (*See* No. 12-ap-01699, ECF No. 111.) The parties expressly agreed, and this Court explicitly ordered, that the briefing schedule was set "without prejudice to any future extension of time." (*Id.* at ¶ 2.) The schedule was agreed to before the Trustee presented his Proposed Amended Complaint, which contains many analogous facts to both the *Citibank* and *Legacy* cases. In any event, the mere existence of the Stipulation and Order cannot be a guiding

3

force when considering a motion to stay because, as both this Court and the District Court concluded, the potential for inconsistent rulings and wasted resources exists irrespective of the parties' prior briefing schedule, and the Trustee has not claimed any prejudice would result if the Stipulation and Order is, in effect, modified by a stay.

Finally, the *Citibank* and *Legacy* appeals will be argued in early March,[3] only two months away. The requested stay will not result in substantial delay of this eight-year-old case and the Trustee has not identified any undue prejudice to him. Courts routinely issue stays in circumstances such as those present here. *See, e.g.*, *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012).

For the reasons set forth below, RBC respectfully requests that the motion to stay be granted.

## ARGUMENT

### I. The *Citibank* and *Legacy* Appeals Will Decide Controlling Issues of Law.

The Trustee argues that the outcome of the *Citibank* and *Legacy* appeals will have no impact on this case because, unlike in those cases, his Proposed Amended Complaint in this case "alleges actual knowledge." (Opp. at 9.) The Trustee's argument fails for several reasons.

As an initial matter, contrary to the Trustee's argument, he argues for over ten (10) pages in his motion for leave that the Proposed Amended Complaint sufficiently pleads willful blindness and a lack of good faith. (*See* No. 12-ap-01699, ECF No. 112 at 18-28.) To now argue that the Second Circuit's determination of whether the willful blindness standard is applicable is completely at odds with the Trustee's own argument about why his Proposed Amended Complaint

---

[3] Oral argument is scheduled for the *Citibank* and *Legacy* appeals during the week of March 8, 2020. (Case Calendaring, *Citibank*, No. 20-1333 (2d Cir.), ECF No. 168; Case Calendaring, *Legacy*, No. 20-1334 (2d Cir.), ECF No. 167.)

4

should be permitted.

Because the willful blindness standard is a contested issue in this case, the *Citibank* and *Legacy* appeals are very relevant. As this Court noted in the *Standard Chartered* hearing, the Trustee will not "have to plead around an affirmative defense" if the appeals are decided in his favor. (2d Ciani Decl. Ex. D (Hearing Tr. dated Dec. 16, 2020 at 32:17-18).) The Second Circuit could determine that the Trustee has no burden to plead a lack of good faith *or* that a lack of good faith merely requires inquiry notice to the defendant. If either of those determinations is made, the viability of the Proposed Amended Complaint in this case will be more assured, and RBC may have fewer arguments with which to oppose the Trustee's motion for leave. For this reason alone, a stay would promote judicial economy and save the parties and this Court from needlessly litigating certain issues.

If the Second Circuit determines that the District Court's elucidation of the lack of good faith burden and standard are correct, then the Second Circuit's application of those standards to the *Citibank* and *Legacy* cases will be instructive to the parties in this case.[4] Indeed, RBC believes that such a ruling would doom the Trustee's proposed amendment.

The Trustee argues that this case is different from *Citibank* and *Legacy*—and different too from *RBS* and *Standard Chartered*—because the Proposed Amended Complaint in this case alleges that (1) "RBC executives openly admitted" knowledge of the BLMIS fraud, (Opp. at 10), and (2) "RBC protected itself by 'blacklisting' Madoff from the list of parties against which it

---

[4] In both *Citibank* and *Legacy* the Trustee raised the issue of "whether the proposed amended complaint plausibly pleaded defendants' willful blindness to fraud at BLMIS and the bankruptcy court therefore erred by denying the Trustee leave to amend his complaint." (Tr.'s Br. at 2, *Citibank*, No. 20-1333 (Aug. 6, 2020), ECF No. 78; *see also* Tr.'s Br. at 2, *Legacy*, No. 20-1334 (Aug. 6, 2020), ECF No. 73.) The Trustee devoted more than forty (40) pages of his appellate briefs and replies to arguing that the complaints in those cases adequately alleged that defendants were willfully blind to the BLMIS fraud when they allegedly received subsequent transfers. (Tr.'s Br. at 52–67, *Citibank*, No. 20-1333; Tr.'s Br. at 51–68, *Legacy*, No. 20-1334; Tr.'s Reply at 28–32, *Citibank*, No. 20-1333 (Nov. 25, 2020), ECF No. 167; Tr.'s Reply at 28–33, *Legacy*, No. 20-1334 (Nov. 25, 2020), ECF No. 166.)

5

would provide leverage." (*Id.*)  However, RBC will show with the benefit of documents incorporated by reference into the Trustee's proposed pleading that the Trustee's allegations are no more damning, and in fact, far less so, than the *Citibank* and *Legacy* cases.  Concerning RBC executives' so-called "admi[ssions]," the Trustee alleges that RBC employee Robert Picard and others at RBC recognized the following facts about BLMIS: (1) its "consistent positive returns" that were "impossible to achieve if BLMIS was actually implementing the SSC strategy" (PAC ¶ 99; *see also id.* ¶¶ 100-109, 120); (2) "Madoff was significantly understating BLMIS' AUM" (*id.* ¶ 110); (3) Madoff "could not be trading options at the volume or in the manner he purported to be doing" (*id.* ¶ 112; *see also id.* ¶¶ 113-14); and (4) Madoff himself could not "explain his options strategy" (*id.* ¶ 116).  On the basis of these allegations, Robert Picard is alleged to have concluded that Madoff "either didn't understand it [his investment strategy] or wasn't doing what he said he was doing." (*Id.* ¶ 116.)  As explained in RBC's moving brief, these allegations are analogous to those in the *Citibank* and *Legacy* cases.  (No. 12-ap-01699, ECF No. 118 at 9.)  And Robert Picard's singular conclusion falls far short of the required belief of a "high probability" that BLMIS was not engaging in securities transactions which is required under the willful blindness standard.

The Trustee cites to other allegations, but they are conclusory statements he misleadingly attributes to Robert Picard and his colleagues.  The Trustee states that Robert Picard believed that, upon meeting Madoff, he had "stumbled into a fraud," (PAC ¶ 96) but that is not a quote from Picard; it is author Erin Arvedlund's characterization.  (*See* 2d Ciani Decl. Ex. E, at 90.)  Statements by Ms. Arvedlund, a journalist who never worked at RBC, should not be credited.  *See Hershfang v. Citicorp*, 767 F. Supp. 1251, 1255 (S.D.N.Y. 1991) ("The complaint must rise or fall on allegations about defendants' conduct and not on wide-eyed citation to the gratuitous

commentary of outsiders."). As stated above, Picard's actual quote reflects that he concluded that Madoff either failed to "understand" his own trading strategy or was not engaging in that particular trading strategy. (*Compare* 2d Ciani Decl. Ex. E, at 90, *with* PAC ¶¶ 110, 111, 115, and 116.)[5] Similarly, the Trustee points to a post on an online forum that reads, "[i]n conversation with the RBC guys [now Guggenheim] they agreed he was a fraud" to suggest that Picard's colleagues suspected BLMIS was a fraud. (*See* PAC ¶ 120; 2d Ciani Decl. Ex. F, at 3, postdated 2008-12-12 20:54.) But that inadmissible hearsay statement: (1) is anonymous; (2) does not identify the "RBC guys" by name; (3) does not reflect when the "RBC guys" suspected a fraud or conveyed that sentiment because the statement was made "post-fraud"; (4) does not reflect what was specifically fraudulent about BLMIS; and (5) does not indicate that the "RBC guys" believed that BLMIS was not trading securities. These falsely attributed, conclusory allegations should carry no weight with this Court. *SIPC v. BLMIS*, 516 B.R. 18, 24 (S.D.N.Y. 2014) (Trustee must plead particularized allegations that defendants either knew of BLMIS fraud or willfully blinded themselves to it); *Legacy*, 548 B.R. 13, 34 (Bankr. S.D.N.Y. 2016) (Trustee "must plead non-conclusory allegations that support the inference that the defendants actually knew that Madoff was not trading securities.").

With respect to the policy to not engage in leveraging transactions involving BLMIS investments, the Trustee alleges that RBC had a policy to "remove[] Madoff from [RBC's]

---

[5] The Proposed Amended Complaint is replete with mischaracterizations of Picard's public statements. The Trustee alleges that Picard believed "BLMIS's purported trading could not be real" (PAC ¶ 95), but Picard's conclusions after meeting Madoff are clear; he never came to a conclusion in his time at RBC that the trades could not be real, only that Madoff did not "understand" his investment strategy or was engaging in a different strategy. (PAC ¶ 116.) The Trustee alleges that Picard suspected that "something wasn't right" about BLMIS, but that quote is far from "actual knowledge" and in any event concerns Picard's impression after meeting with Madoff, after which he merely concluded that he was unsure about BLMIS's investment strategy. (*See* Paccione Decl. Ex. E, at 90; PAC ¶¶ 97, 116.) Finally, the Trustee alleges that Picard recognized BLMIS's consistent positive returns as "tell-tale signs of fraud," (*id.* ¶ 109), but that is merely the Trustee's characterization of Ms. Arvedlund's characterization of Picard's own statement. Picard's conclusion was not fraud, but merely the more indecisive "something wasn't right." (*Id.* ¶¶ 97, 116, Paccione Decl. Ex. E, at 90.)

7

approved list of parties against which it would provide leverage." (PAC ¶ 129.)[6] The Trustee alleges that this policy was "not a secret," (PAC ¶ 130), and Picard is quoted as saying that, while he and others convinced some RBC investors to redeem from feeder funds, others "wouldn't believe it. They said there was no chance he could pull off something like that." (PAC ¶ 117; 2d Ciani Decl. Ex. E, at 90.) The Trustee argues that the RBC Defendants' policy constitutes "willful avoidance" (Motion to Amend, No. 12-ap-01699, ECF No. 112, at 24), but it is merely evidence that RBC did not understand BLMIS's trading strategy and wished to reduce their exposure, not an attempt to put their collective head in the sand. The Trustee contradicts himself by alleging RBC was motivated to invest customer money in BLMIS for profit, but RBC's policy militates against such a finding.

The Trustee similarly fails to plausibly allege why RBC would invest tens of millions, if not hundreds of millions of dollars of its customers' monies in BLMIS if RBC believed that BLMIS was not investing in securities at all. *See Legacy*, 548 B.R. at 34 (it would be "implausible that [the defendant] would entrust its own investors' money with someone it knew was not trading securities."); *Picard v. BNP Paribas S.A. ("BNP")*, 594 B.R. 167, 203 (Bankr. S.D.N.Y. 2018) (This contention "requires an inference that is highly implausible, bordering on the absurd."); *Citibank*, 608 B.R. 181, 201 (Bankr. S.D.N.Y. 2019) (it is implausible that defendant would invest in BLMIS if at the same time "they entertained a subjective belief in the high probability that BLMIS was an illegal, criminal enterprise"); *Picard v. Katz*, 462 B.R. 447, 454 (S.D.N.Y. 2011) ("[E]ven the Trustee does not appear to undertake the dubious task of plausibly pleading that the

---

[6] The Trustee attempts to portray RBC's policy as evidence of its knowledge that BLMIS was not trading securities. But the Trustee's strategy in his cases has been a "damned if you do; damned if you don't" argument. Against the Tremont Funds, for example, the Trustee alleges that Tremont's continued leveraged investing in BLMIS created a motive to participate in BLMIS's fraud. *See* Cplt. ¶ 99, *Picard v. Tremont Grp. Holdings, Inc.*, No 10-05310 (Bankr. S.D.N.Y. Dec. 7, 2010) (The Tremont Funds "leverage[d] their investments with BLMIS, which, in turn, would generate more fees and profits and great Madoff returns.").

8

defendants knowingly invested in a Ponzi scheme."), *abrogated on other grounds by SIPC v. BLMIS*, 513 B.R. 437 (S.D.N.Y. 2014). "While greed may cloud judgment, it is not plausible that the average financial professional owing fiduciary duties to its own clients and investors would knowingly invest their money in a Ponzi scheme that is doomed to collapse." *Legacy*, 548 B.R. at 32 (citation omitted).

None of these issues need to be decided now. As this Court noted, there is no such thing as a "slam dunk" in these cases. (2d Ciani Decl. Ex. D (Hearing Tr. dated Dec. 16, 2020 at 33:3).) "[E]very one of these cases involves a 30 to 40-page decision going through the factual allegations" and the Trustee has suggested that the Court "keeps getting it wrong" by appealing multiple decisions. (*Id.* at 33:5-9.) At the very least, the futility of the Trustee's Proposed Amended Complaint based on a failure to plead lack of good faith will be a heavily litigated question under applicable law. (*Id.* at 35:22-36:1.)

The Trustee has argued that the good faith issue "will arise in . . . many other cases in this very long-running liquidation, and all parties would benefit from knowing both the meaning of 'good faith' and who bears the pleading burden." (Tr.'s Br. at 52 n.4, *Citibank*, No. 20-1333; Tr.'s Br. at 52 n.6, *Legacy*, No. 20-1334; Stay Stipulation and Order at 5, *Picard v. Natixis*, Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y. July 1, 2020), ECF No. 185 ("agree[ing] that a stay of the [a]ction pending resolution of the Good Faith Appeals . . . by the Second Circuit is in the interest of all parties and would promote judicial economy").) Waiting for the Second Circuit's guidance will enable this Court to adjudicate these motions with an issue of controlling law decided.[7]

---

[7] The Trustee has sought or agreed to stays in *RBS*, Adv. Pro. No. 10-05354, *Natixis*, Adv. Pro. No. 10-05353, and *BNP*, Adv. Pro. No. 12-01576. The Trustee contends that stays were appropriate in those cases because "decisions" in which this Court ruled that the Trustee's allegations were insufficient to allege willful blindness "were on appeal." (Opp. at 12.) *See, e.g.*, *RBS*, 2020 WL 1584491, at *12 (Bankr. S.D.N.Y. Mar. 31, 2020) (rejecting the Trustee's allegations of willful blindness); *BNP*, 594 B.R. at 204 (same). In other words, the Trustee has sought stays where this Court has ruled against him or where the Trustee thinks the Court will do so, which has the effect of forestalling final resolution in favor of defendants in those cases. This Court referenced that fact

9

**II.      A Stay Will Promote More Efficient Proceedings in Subsequent Transferee Cases.**

The Trustee's efforts to engage in piecemeal litigation of each subsequent transferee case on its individual facts will only prolong proceedings by creating the possibility of inconsistent rulings across the dozens of adversarial proceedings brought against alleged subsequent transferees by the Trustee. This Court even acknowledged that risk in determining that the stay in *Standard Chartered* would serve the best interest of non-parties. (2d Ciani Decl. Ex. D (Hearing Tr. dated Dec. 16, 2020, at 49:22).) The Trustee has not sought leave to amend most of the subsequent transferee cases, but RBC expects that there will be a significant number of issues common to these cases that this Court could resolve on an omnibus basis including, among others: (i) whether the Trustee adequately alleged that the initial transfers from BLMIS to the feeder funds were avoidable; (ii) whether the initial transfers have been avoided such that the Trustee can recover subsequent transfers at all; and (iii) whether the Trustee's complaints set forth facts that plausibly "support the inference that the funds at issue"—*i.e.*, the alleged "subsequent transfers"—actually "originated with" BLMIS, so as to "tie [the alleged] initial transfer[s] to any subsequent transfer[s] or [alleged s]ubsequent [t]ransferee[s]." *Picard v. Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015).

Similarly, it is in the Trustee's and the Estate's best interests for the motion to stay to be granted. As this Court noted, "[t]he Trustee has a strong interest in this stay because absent one he would have to needlessly expend resources on simultaneous litigation of identical controlling

---

when granting the same stay in *Standard Chartered* that RBC seeks now. (Paccione Decl. Ex. D (Hearing Tr. dated Dec. 16, 2020 at 47:23-48:02) ("[W]hat I'm about to say may sound familiar because a lot of it is taken from the brief the Trustee filed in the *RBS* case, in which the Trustee moved for a stay of its own appeal and the District Court granted it.").) The Trustee should not be permitted to take a contrary position here to impose unnecessary costs and litigation on RBC. *See Penberthy v. Chickering*, 2017 WL 176312, at *7 (S.D.N.Y. Jan. 13, 2017) (applying the doctrine of judicial estoppel where: "1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel.").

questions of law in the 2nd Circuit and this Court." (2d Ciani Decl. Ex. D (Hearing Tr. dated Dec. 16, 2020 at 49:13-18).)

### III. The Trustee Has Failed to Demonstrate Any Undue Prejudice Would Result from a Stay.

The Trustee argues that RBC entered five Stipulations and Orders setting forth briefing schedules, the most recent of which was so ordered on September 11, 2020, and that RBC should honor them. (Opp. at 4-9.) That argument fails for several reasons.

First, the Trustee has not claimed any prejudice will result from a stay simply because a stay will supersede a prior briefing schedule. Indeed, there will be no such prejudice. The Trustee abided by a briefing schedule before filing his motion for leave and Proposed Amended Complaint, but as the Trustee argues, he was contemplating making such a motion since at least February 2019. (Opp. at 3.) Accordingly, the Trustee had ample time to make his motion and was not adversely impacted by an accelerated schedule.

Without any claimed prejudice resulting from a stay, the Trustee fails to show how the existence of a prior briefing schedule should impact the Court's determination of whether a stay should be granted or not.[8] Indeed, applications for stays are routinely granted when discovery or briefing schedules are preexisting and then superseded by the stays. *See, e.g.*, *Nicolas v. Trustees of Princeton Univ.*, No. 17-3695, 2017 WL 6514462 (D.N.J. 2017) (granting motion to stay pending an appeal in a similar, but unrelated, case despite the parties agreeing to a briefing schedule for a motion for reconsideration); *Dean v. Lularoe LLC*, No. 17-01579, 2017 WL

---

[8] As this Court stated in the *Standard Chartered* hearing, in deciding motions to stay, a court considers five factors: "private interests of the plaintiffs in proceeding expeditiously as balanced against the prejudice to the plaintiffs if delayed, the private interests of and burden on the defendants in the interests of the Court, the interests of persons not parties to the civil litigation, and the public interest." (Paccione Decl. Ex. D (Hearing Tr. dated Dec. 16, 2020 at 48:8-13).) A preexisting briefing schedule in and of itself does not weigh for or against any of these five factors.

11

10574353 (N.D. Cal. July 18, 2017) (issuing a stay of all briefing on a motion to dismiss pending a motion to transfer and consolidate the action before the Judicial Panel on Multidistrict Litigation); *Thornbrough v. Western Placer Unified School Dist.*, No. 2:09-cv-02613, 2010 WL 11717842 (N.D. Cal. Aug. 20, 2010) (vacating a previous scheduling order and issuing stay pending a petition for a writ of mandamus); *Mayberry v. E.P.A.*, No. 06-2575-cm, 2008 WL 11002708 (D. Kan. Jan. 1, 2008) (vacating scheduling order and granting motion to stay all pretrial proceedings pending resolution of the Motion to Dismiss).

Second, the Trustee argues that he believed he had "procedural certainty," (Opp. at 7), but each of the five Stipulations and Orders setting forth briefing schedules in this case included a clause that the briefing schedules were made "without prejudice to any future extension of time." (No. 12-ap-01699, ECF No. 111 at ¶ 2; ECF No. 103 at ¶ 2; ECF No. 104 at ¶ 2; ECF No. 105 at ¶ 2; ECF No. 107 at ¶ 2.) By arguing that the Court should deny RBC's request for additional time pending the outcome of the *Citibank* and *Legacy* appeals due to the Stipulations and Orders, it is the Trustee, and not RBC, that is violating the terms of the Stipulations and Orders.

Third, the Trustee argues that RBC knew when entering the fifth Stipulation and Order "the existence and status of those [the *Citibank* and *Legacy*] appeals for many months," (Opp. at 5), and "that a proposed amended complaint would include facts supporting Defendant's knowledge and conduct as to BLMIS's fraud." (Opp. at 8.) That is simply not relevant to the current dispute. To the extent it requires explanation, however, RBC explained in its moving brief that it entered the fifth Stipulation and Order without having the ability to review the not-yet-served Proposed Amended Complaint. (Motion to Stay, 12-ap-01699, ECF No. 118, at 3 n.2.) After the Trustee filed the Proposed Amended Complaint and his motion for leave to amend, it became apparent that the outcome of the *Citibank* and *Legacy* appeals would resolve controlling

12

issues of law, provide useful guidance on the application of law to facts in this case, and that a stay would permit the parties and this Court to avoid unnecessary waste of resources and expense.[9]

Finally, the Trustee accuses RBC of attempting to "unilaterally withdraw from a stipulation." (Opp. at 6.) That is not what RBC is doing. RBC is asking this Court to impose a stay that will supersede a preexisting briefing schedule in light of the current circumstances. This Court and the District Court have granted stay applications in cases involving similarly situated defendants, sometimes when the Trustee has made the application himself. (*See supra*, at 9 n.7.) The Stipulation and Order surely does not bar the Court from exercising its own discretion in issuing a stay when the five factors determinative of such a finding favor one. Indeed, none of the cases cited by the Trustee involve an application for a stay that would supersede a mere briefing schedule.

The Stipulations and Orders have nothing to do with the Trustee's claimed prejudice at all. The only prejudice claimed by the Trustee is "having to wait for the Second Circuit's decision." (Opp. at 11.) As the Trustee notes himself, that argument was made and rejected by this Court during the *Standard Chartered* hearing. (2d Ciani Decl. Ex. D (Hearing Tr. dated Dec. 16, 2020, at 47:22-50:1).) Moreover, the Trustee himself claimed no prejudice would result from a stay in *RBS*, *BNP*, and *Natixis*. In any event, the delay will not be significant; oral argument is scheduled to occur in the *Citibank* and *Legacy* appeals during the week of March 8, 2020. (Case Calendaring, *Citibank*, No. 20-1333 (2d Cir.), ECF No. 168; Case Calendaring, *Legacy*, No. 20-1334 (2d Cir.), ECF No. 167.)

---

[9] The Trustee asks "how *could* Defendants claim prejudice" in light of the fifth Stipulation and Order. (Opp. at 11.) RBC's prejudice will result because its allegations in the Proposed Amended Complaint are closely aligned with many of the facts pleaded in the *Citibank* and *Legacy* cases.

13

**IV.      The Trustee's Request for Limited Relief Should Be Denied.**

The Trustee requests that this Court should deny the application for a stay, but seeks in the alternative that his motion for leave to amend should be "fully brief[ed] . . . now" and that the Court could rule on the motion following the outcome in the *Citibank* and *Legacy* appeals. (Opp. at 13.) That request makes no sense.

As this Court noted in *Standard Chartered*, briefing the good faith issue may not even be necessary, and will certainly not be briefed in the same manner, if the appeals are decided in favor of the Trustee. (*See supra* 5.) Conversely, if the appeals are decided in favor of the defendants in those cases, the precise articulation of the standard and application to the facts will provide useful guidance, and perhaps new controlling law, on how the issue should be decided. (*See supra* 4-5.) Briefing the issue now would result in wasted resources and needless costs.

The Trustee also argues that there is "no just reason to delay briefing on any purported grounds . . . other than good faith." (Opp. at 13.) To the extent that the Trustee is suggesting multiple rounds of briefing to decide various motion to dismiss issues, this too would result in needless expenses and resources when the motion for leave to amend can be briefed in a single round of briefing.

The Trustee writes that RBC will have an "unprecedented amount of time" to craft an opposition brief. (Opp. at 13.) This claim of prejudice is galling considering that the Trustee has had many *years* to craft his opening brief. Conversely, RBC cannot draft its opposition brief at this time because, as explained herein, the *Citibank* and *Legacy* appeals will guide much of the argument that RBC will be making.

There is simply nothing unique about this case that should result in an outcome any different from the *Standard Chartered*, *RBS*, *Natixis*, and *BNP* cases. The limited relief requested will only create the potential for duplicative briefing, multiple rounds of briefing, or a need for

14

supplemental briefing. All of that can be avoided with a stay that will prejudice no one and favors the principle of judicial economy.

## CONCLUSION

For the reasons set forth above, RBC respectfully requests that the Court stay this adversary proceeding pending the Second Circuit's decision in *Citibank* and *Legacy*.

Dated: January 8, 2021
   New York, New York

**KATTEN MUCHIN ROSENMAN LLP**

/s/ Anthony L. Paccione
Anthony L. Paccione
Mark T. Ciani
575 Madison Ave
New York, New York 10026
Telephone: (212) 940-8800
anthony.paccione@katten.com
mark.ciani@katten.com

*Attorneys for Defendants*

15