# EXHIBIT U

1cjdpitp

                                PLEA

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,                New York, N.Y.

4              v.                             S5 Cr. 0228 (LTS)

5    ENRICA COTELLESSA-PITZ,

6              Defendant.

7    ------------------------------x

8
                                             December 19, 2011
9                                            2:55 p.m.

10
     Before:
11
                      HON. LAURA TAYLOR SWAIN,
12
                                             District Judge
13

14                             APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BY:  LISA A. BARONI
17        JULIAN J. MOORE
          MATHEW SCHWARTZ
18             Assistant United States Attorneys

19   TIMOTHY J. TREANOR
     DAVID M. RODY
20        Attorneys for Defendant

21        – also present –

22   SA Jared Thompson, FBI
     SA Paul Takla, FBI
23   P.O. Jeffrey Steimel

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

PLEA

```
 1            THE COURT:  Good afternoon.  Would everyone other than
 2   the lawyers please be seated.
 3            THE CLERK:  This case is United States of America
 4   versus Enrica Cotellessa-Pitz.
 5            MS. BARONI:  Good afternoon, your Honor.  Lisa Baroni
 6   for the government.  With me is Julian Moore and Matthew
 7   Schwartz from the U.S. Attorney's office and Special Agents
 8   Jared Thompson and Paul Takla from the FBI.
 9            THE COURT:  Good afternoon, Ms. Baroni, Mr. Moore, Mr.
10   Schwartz, Agents Thompson and Takla.
11            MR. MOORE:  Good afternoon, your Honor.
12            MR. TREANOR:  Tim Treanor and David Rody for Enrica
13   Cotellessa-Pitz.  Good afternoon, your Honor.
14            THE COURT:  Good afternoon, Mr. Treanor, Mr. Rody, and
15   good afternoon, Ms. Cotellessa-Pitz.
16            This is Ms. Cotellessa-Pitz's first appearance, is
17   that correct?
18            MR. TREANOR:  Yes, your Honor.
19            THE DEFENDANT:  Yes.
20            MR. TREANOR:  Yes, your Honor.
21            THE COURT:  So let's address the advice of rights
22   first.
23            And good afternoon everyone.  Thank you all for coming
24   to court.
25            Would you please stand, Ms. Cotellessa-Pitz.
```

PLEA

1          Please state your full name.

2          THE DEFENDANT:  Enrica Cotellessa-Pitz.

3          THE COURT:  And how old are you, ma'am?

4          THE DEFENDANT:  53.

5          THE COURT:  I will now explain certain rights that you

6     have under the Constitution of the United States.

7          You have the right to remain silent.  You need not

8     make any statement.  Even if you have already made statement to

9     the authorities, you need not make any additional statements.

10    Any statements that you do make can be used against you.

11         Do you understand these rights?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  You have the right to be released either

14    conditionally or unconditionally pending trial unless I find

15    that there are no conditions that would reasonably assure your

16    presence at future court hearings and the safety of the

17    community.  If the government were to ask me to detain you

18    pending trial, you are entitled to a prompt hearing on whether

19    such conditions exist.

20         Do you understand this right?

21         THE DEFENDANT:  Yes.

22         THE COURT:  You have the right to be represented by an

23    attorney today and at all future proceedings in this case, and

24    if you are unable to afford an attorney, I will appoint an

25    attorney to represent you.

PLEA

1      Do you understand these rights?

2      THE DEFENDANT:  Yes, your Honor.

3      THE COURT:  Do you wish to have and are you able to

4  obtain and afford counsel on your own?

5      THE DEFENDANT:  Yes, your Honor.

6      THE COURT:  Have you retained Messrs. Treanor and Rody

7  to represent you?

8      THE DEFENDANT:  Yes, your Honor.

9      THE COURT:  Are you a citizen of the United States?

10      THE DEFENDANT:  Yes.

11      THE COURT:  The document that contains the charges

12  against you is called an information.  It has been issued by

13  the United States Attorney.  You have a constitutional right to

14  be charged by an indictment rather than by an information.  An

15  indictment would be a charge issued from a grand jury.

16      Do you understand that?

17      THE DEFENDANT:  Yes.

18      THE COURT:  Mr. Treanor, do you have the Waiver of

19  Indictment form there, and would you show it to

20  Ms. Cotellessa-Pitz?

21      MR. TREANOR:  Yes, your Honor.

22      THE COURT:  Thank you.

23      Ms. Cotellessa-Pitz, have you signed this waiver of

24  indictment?

25      THE DEFENDANT:  Yes, your Honor.

                                    PLEA

 1              THE COURT:  Did you read it before you signed it?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Did you understand it before you signed

 4    it?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  And did you discuss it with your attorneys

 7    before you signed it?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  Do you understand that if you did not

10    waive indictment, if the government wanted to prosecute you on

11    the charges that are in the Information, it would have to

12    present those charges to a grand jury, which might or might not

13    indict you on them?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Do you understand that you are under no

16    obligation to waive indictment?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Do you understand that by waiving

19    indictment you are giving up your right to have these charges

20    presented to a grand jury?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Do you understand what a grand jury is?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Did anyone give you anything or make any

25    threat or promises to get you to waive indictment?

1cjdpitp
                              PLEA

 1              THE DEFENDANT:  No.

 2              THE COURT:  Have you seen a copy of the Fifth

 3     Superseding Information that has number S5 10 Criminal 228 at

 4     the top?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  Have you read it?

 7              THE DEFENDANT:  Yes.

 8              THE COURT:  Have you discussed it with your attorneys?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  Do you understand the charges against you

11     that are detailed in the Information?

12              THE DEFENDANT:  Yes.

13              THE COURT:  If you want me to, I can read the

14     Information out loud for you here in court.

15              Do you want me to read it to you?

16              THE DEFENDANT:  No, your Honor.

17              THE COURT:  Are you taking any medication or suffering

18     from any condition that affects your ability to think clearly?

19              THE DEFENDANT:  No.

20              THE COURT:  Is your mind clear today?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Are you feeling well physically today?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Do you feel comfortable making important

25     decisions for yourself today?

                                PLEA

1            THE DEFENDANT:  Yes.

2            THE COURT:  In the past 24 hours, have you taken any

3    drugs, medicine or pills or drunk any alcohol?

4            THE DEFENDANT:  Just my prescription medications.

5            THE COURT:  And did you take those medications on

6    schedule?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Does any of those medications affect your

9    ability to think clearly?

10           THE DEFENDANT:  No.

11           THE COURT:  I find that Ms. Cotellessa-Pitz's Waiver

12   of Indictment is knowing and voluntary, and I accept it and I

13   so order it.

14           How do you intend to plead to the charges against you

15   that are in that Information, not guilty or guilty?

16           THE DEFENDANT:  Guilty.

17           THE COURT:  Now, Ms. Cotellessa-Pitz, you can have a

18   seat for a moment.  I have a couple of questions for counsel.

19           Mr. Treanor, this plea is pursuant to the agreement

20   that has been marked as Government Exhibit 1, is that correct?

21           MR. TREANOR:  That is correct, your Honor.

22           THE COURT:  And it is a letter addressed to you and

23   Mr. Rody dated today -- the printed date, I'm sorry, not today,

24   December 15th, last Thursday, at the top, is that correct?

25           MR. TREANOR:  That is correct.

1cjdpitp
PLEA

```
 1          THE COURT:  And the advice of rights form has also
 2  been executed and marked as Court Exhibit 1, is that correct?
 3          MR. TREANOR:  Yes, your Honor.
 4          THE COURT:  Thank you.  Ms. Baroni or Mr. Moore, would
 5  you make a statement regarding victim notification in
 6  connection with this proceeding?
 7          MS. BARONI:  Yes, your Honor.
 8          Last Thursday, on December 15th, we sent a letter to
 9  your Honor outlining the proposed charges against
10  Ms. Cotellessa-Pitz, and advising your Honor that she would
11  plead guilty pursuant to a cooperation agreement with the
12  government.  On that date we posted that letter on the
13  government's website on a page dedicated to Madoff-related
14  cases for victim notification.
15          THE COURT:  Thank you.
16          Ms. Cotellessa-Pitz, before I accept your guilty plea,
17  there are a number of questions that I must ask you while you
18  are under oath to assure that it is a valid plea.  At times I
19  may cover a point more than once, and I may cover matters that
20  were also addressed in the advice of rights form that you have
21  seen, but if I do that will be because it is very important
22  that you understand what is happening here today.
23          If you don't understand something that I ask you,
24  please say so and I will reword the question or you may speak
25  with your attorneys.
```

1cjdpitp
PLEA

1          Do you understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Please stand now to take the oath.

4          Ms. Ng, would you administer the oath, please.

5          THE CLERK:  Please raise your right hand.

6          (The defendant was sworn)

7          THE COURT:  Would you please state your full name for

8    the record.

9          THE DEFENDANT:  Enrica Cotellessa-Pitz.

10         THE COURT:  Do you understand that you have solemnly

11   promised to tell the truth, and that if you answer any of my

12   questions falsely, your false or untrue answers may later be

13   used against you in another prosecution for perjury or making a

14   false statement?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  You can be seated for the next portion of

17   the proceeding.

18         Was the information that you gave me about your age

19   and your mental condition a little while ago completely true?

20         THE DEFENDANT:  Yes.

21         THE COURT:  How far did you go in school?

22         THE DEFENDANT:  An undergraduate degree from college.

23         THE COURT:  In what field.

24         THE DEFENDANT:  Economics.

25         THE COURT:  And what types of work have you done since

1cjdpitp

PLEA

1   finishing your final education?

2            THE DEFENDANT:  I worked in the financial industry.

3            THE COURT:  Are you able to speak, read and understand

4   the English language well?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Counsel, does any of you have any doubt as

7   to Ms. Cotellessa-Pitz's competence to enter a guilty plea at

8   this time?

9            MR. TREANOR:  No, your Honor.

10            MS. BARONI:  No, your Honor.

11            THE COURT:  Ms. Cotellessa-Pitz, your attorneys have

12   informed me that you -- and you actually have informed me

13   yourself that you wish to enter a guilty plea to the

14   Information.  Do you wish to enter a plea of guilty?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  Have you fully discussed your case with

17   your attorneys, including the charges to which you intend to

18   plead guilty and any defenses that you may have to those

19   charges?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Have you and your attorneys also discussed

22   the consequences of entering a guilty plea?

23            THE DEFENDANT:  Yes.

24            THE COURT:  Are you satisfied with your attorneys and

25   their representation of you?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1cjdpitp
                              PLEA

1          THE DEFENDANT:  Yes.

2          THE COURT:  On the basis of Ms. Cotellessa-Pitz's

3    responses to my questions and my observations of her demeanor,

4    I find that she is fully competent to enter an informed plea at

5    this time.

6          Before I accept your plea, ma'am, I am going to ask

7    you some more questions.  Thee questions are intended to

8    satisfy the Court that you wish to plead guilty because you are

9    in fact guilty and that you fully understand your rights and

10   the consequences of your plea.

11         Now I will describe certain right that you have under

12   the Constitution and laws of the United States.  You will be

13   giving up these rights if you enter a guilty plea.  Please

14   listen carefully.  If you do not understand something that I am

15   saying or describing, stop me and I or your attorney will

16   explain it more fully.

17         Under the Constitution and laws of the United States,

18   you have the right to a speedy and public trial by a jury on

19   the charges against you that are in the Information.  Do you

20   understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you understand that you have the right

23   to plead not guilty and to continue to plead not guilty?

24         THE DEFENDANT:  Yes.

25         THE COURT:  If there were a trial, you would be

1cjdpitp

PLEA

1  presumed innocent and the government would be required to prove

2  you guilty by competent evidence and beyond a reasonable doubt.

3  You would not have to prove that you were innocent at a trial.

4  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  If there were a trial, a jury composed of

7  twelve people selected from this district would have to agree

8  unanimously in order to find you guilty.  Do you understand

9  that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  If there were a trial, and at all stages

12 leading up to it, you would have the right to be represented by

13 an attorney, and if you could not afford one, an attorney would

14 be provided to you free of cost.  Do you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  If there were a trial, you would have the

17 right to see and hear all of the witnesses against you and your

18 attorney could cross-examine them.  You would also have the

19 right to have your attorney object to the government's evidence

20 and offer evidence on your behalf, if you so desired.  In

21 addition, you would have the right to have witnesses required

22 to come to court to testify in your defense.  And you would

23 have the right to testify yourself but you would not be

24 required to testify.

25         Do you understand all of that?

Case 1:10-cv-02226-LTS Document 14-12 Filed 12/17/18 Page 13 of 48

1cjdpitp
PLEA

1    THE DEFENDANT:  Yes, your Honor.

2    THE COURT:  Do you understand that if there were a

3    trial and you decided not to testify, no adverse inference

4    could be drawn against you based on your decision not to

5    testify?

6    THE DEFENDANT:  Yes.

7    THE COURT:  Do you understand that if you were

8    convicted at a trial, you would have the right to appeal that

9    verdict?

10   THE DEFENDANT:  Yes.

11   THE COURT:  Do you understand each and every one of

12   the rights that I've asked you about?

13   THE DEFENDANT:  Yes, I do.

14   THE COURT:  Do you have any questions about any of

15   these rights?

16   THE DEFENDANT:  No.

17   THE COURT:  Do you understand that by entering a

18   guilty plea today, you will be giving up each and every one of

19   these rights?

20   THE DEFENDANT:  Yes.

21   THE COURT:  Do you also understand that you will be

22   giving up any possible claim that your constitutional rights

23   may have been violated?

24   THE DEFENDANT:  Yes.

25   THE COURT:  And do you understand that if you plead

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1cjdpitp
                                  PLEA

 1   guilty you will have no trial?

 2            THE DEFENDANT:  Yes.

 3            THE COURT:  Do you understand that by pleading guilty

 4   you will also have to give up your right not to incriminate

 5   yourself, because I will ask you questions about what you did

 6   in order to satisfy myself that you are guilty as charged and

 7   you will have to admit and acknowledge your guilt?

 8            THE DEFENDANT:  Yes.

 9            THE COURT:  Do you understand that you can change your

10   mind right now and refuse to enter a plea of guilty?  You do

11   not have to enter this plea if you do not want to for any

12   reason.  Do you understand this fully?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Do you still wish to plead guilty?

15            THE DEFENDANT:  Yes, I do.

16            THE COURT:  Do you understand that Count One of the

17   Superseding Information charges you participating in a

18   conspiracy to, one, obstruct or impede the lawful government

19   functions of the Internal Revenue Service in the ascertainment,

20   assessment, computation and collection of income taxes; two,

21   falsified books and records of a broker-dealer; three,

22   falsified books and records of an investment advisor; and,

23   four, make false filings with the United States Securities and

24   Exchange Commission, all in violation of Title 18 of the United

25   States Code, Section 371?

1cjdpitp

PLEA

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that Count Two of the

3    Superseding Information charges you with falsifying books and

4    records of a broker-dealer, in violation of Title 15 of the

5    United States Code, Section 78qa and 78ff; Title 17 of the Code

6    of Federal Regulations, Section 240.17a-3, and Title 18 of the

7    United States Code, Section 2?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that Count Three of the

10   Superseding Information charges you with falsifying books and

11   records of an investment advisor, in violation of Title 15 of

12   the United States Code, Sections 80b-4 and 80b-17; Title 17 of

13   the Code of Federal Regulations, Section 275.204-2, and Title

14   18 of the United States Code, Section 2?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand that Count Four of the

17   Superseding Information charges you making false filings with

18   the Securities and Exchange Commission, in violation of Title

19   15 of the United States Code, Sections 78q and 78ff; Title 17

20   of the Code of Federal Regulations, Sections 240.17a-5,

21   240.17a-13, and 210.2-01; as well as Title 18 of the United

22   States Code Section 2?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand that the government

25   would have to prove each and every part, or element, of each of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1cjdpitp

PLEA

1    these charges beyond a reasonable doubt at a trial if you did

2    not plead guilty?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Ms. Baroni or Mr. Moore, would you please

5    state for the record the elements that the government would

6    have to prove if we were to go to trial on these charges?

7              MS. BARONI:  Yes, your Honor.

8              With respect to Count One, the conspiracy count, the

9    government would have to prove the following elements beyond a

10   reasonable doubt:  First, that the conspiracy charged in the

11   Information existed, in other words, that there was in fact an

12   agreement or understanding to either violate the laws of the

13   United States or to defraud the United States; second, that the

14   defendant knowingly, willingly and voluntarily became a member

15   of the conspiracy; third, that any one of the conspirators, not

16   necessarily the defendant, knowingly committed at least one

17   overt act in the Southern District of New York in furtherance

18   of the conspiracy and during the life of the conspiracy.

19             With respect to Count Two, falsifying books and

20   records of a broker-dealer, in order to prove this crime the

21   government would have to prove beyond a reasonable doubt the

22   following elements:  First, that at the time of the alleged

23   offense Bernard L. Madoff Investment Securities was a

24   registered broker-dealer; second, that BLMIS failed to make and

25   keep certain accurate records as required under the SEC's rules

1cjdpitp

PLEA

1   and regulations; third, that the defendant aided and abetted

2   BLMIS's failure to make and keep accurate records; and, fourth,

3   that the defendant acted knowingly and willfully.

4          With respect to Count Three, falsifying books and

5   records of an investment advisor, the government would have to

6   prove, first, that at the time of the alleged offense BLMIS was

7   an investment advisor; second, that BLMIS failed to make and

8   keep certain accurate records as required under the SEC's rules

9   and regulations; third, that the defendant aided and abetted

10  BLMIS's failure to make and keep accurate records; fourth, that

11  the defendant acted knowingly and willfully; and, fifth, that

12  the offense involved the use of mails and the means and

13  instrumentalities of interstate commerce.

14         And, finally, with respect to Count Four, making false

15  filings with the SEC, the government would have to prove,

16  first, that the defendant was required to file an application,

17  report or document with the SEC under the Securities Exchange

18  Act of 1934 and the rules and regulations thereunder; second --

19         THE COURT:  The defendant personally or BLMIS?

20         MS. BARONI:  The defendant or the BLMIS, actually,

21  your Honor.

22         That the application or report or document filed with

23  the SEC contained false or misleading statements; third, that

24  the false or misleading statements were material; and, fourth,

25  that the defendant acted knowingly and willfully.

1cjdpitp
PLEA

1          THE COURT:  Thank you.

2          Ms. Cotellessa-Pitz, do you understand the matters

3     that the government would have to prove if you did not plead

4     guilty?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  Do you understand that the maximum

7     possible penalty for the crime with which you are charged in

8     Count One is five years of imprisonment, plus a fine of the

9     greatest of $250,000, twice the gain resulting from the offense

10    or twice the loss to other people resulting from the offense,

11    plus a $100 special assessment, plus full restitution to all

12    persons injured as a result of your criminal conduct, plus

13    three years of supervised release after your term of

14    imprisonment?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand that the maximum

17    possible penalty for the crime with which you are charged in

18    Count Two is 20 years of imprisonment, plus a fine of the

19    greatest of $5 million, twice the gain resulting from the

20    offense or twice the loss to other people resulting from the

21    offense, plus a $100 special assessment, plus full restitution

22    to all persons injured as a result of your criminal conduct,

23    plus three years of supervised release after your term of

24    imprisonment?

25         THE DEFENDANT:  Yes.

1cjdpitp

PLEA

| | |
|---|---|
| 1 | THE COURT:  Do you understand that the maximum |
| 2 | possible penalty for the crime with which you are charged in |
| 3 | Count Three is five years of imprisonment, plus a fine of the |
| 4 | greatest of $250,000, twice the gain resulting from the offense |
| 5 | or twice the loss to other people resulting from the offense, |
| 6 | plus a $100 special assessment, plus full restitution to all |
| 7 | persons injured as a result of your criminal conduct, plus |
| 8 | three years of supervised release after your term of |
| 9 | imprisonment? |
| 10 | THE DEFENDANT:  Yes. |
| 11 | THE COURT:  And do you understand that the maximum |
| 12 | possible penalty for the crime with which you are charged in |
| 13 | Count Four is 20 years of imprisonment, plus a fine of the |
| 14 | greatest of $5 million, twice the gain resulting from the |
| 15 | offense or twice the loss to other people resulting from the |
| 16 | offense, plus a $100 special assessment, plus full restitution |
| 17 | to all persons injured as a result of your criminal conduct, |
| 18 | plus three years of supervised release after your term of |
| 19 | imprisonment? |
| 20 | THE DEFENDANT:  Yes. |
| 21 | THE COURT:  Do you understand that the maximum |
| 22 | possible combined penalty for the four crimes with which you |
| 23 | are charged is 50 years of imprisonment, plus a fine of the |
| 24 | greatest of -- plus a fine of $10,500,000 or, if greater, the |
| 25 | sums of the relevant gains, losses and statutory amounts |

1cjdpitp

PLEA

1    relating to your offenses, plus full restitution to all persons

2    injured by your criminal conduct, plus $400 total mandatory

3    special assessment, plus supervised release for three years

4    after your term of imprisonment?

5            THE DEFENDANT:  Yes.

6            THE COURT:  I will now give you some information and

7    verify your understanding of the supervised release aspect of

8    the potential penalty.

9            Supervised release means that you will be subject to

10   monitoring when you are released from prison.  Terms and

11   conditions will be imposed.  If you violate any of the set

12   terms and conditions you can be reimprisoned without a jury

13   trial.

14           If you are on supervised release and you do not comply

15   with any of the set terms or conditions, you can be returned to

16   prison for the remainder of the term of supervised release, you

17   will be given no credit for the time that you served in prison

18   as a result of your sentence, and no credit for any time spent

19   on post-release supervision.

20           So, for example, if you received a prison term and

21   then a three-year term of supervised release and after you left

22   prison you lived up to the terms of supervised release for two

23   years but then you violated some term of the supervised

24   release, you could be returned to prison for three full years.

25           Do you understand that?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:10-cv-02226-LTS Document 41-2 Filed 12/17/12 Page 23 of 48

1cjdpitp
                                    PLEA

 1              THE DEFENDANT:  Yes.

 2              THE COURT:  Do you also understand that if I accept

 3    your guilty plea and adjudge you guilty, that adjudication may

 4    deprive you of valuable civil rights such as the right to vote,

 5    the right to hold public office, the right to serve on a jury,

 6    and the right to possess any kind of firearm?

 7              THE DEFENDANT:  Yes.

 8              THE COURT:  Do you understand that there are

 9    Sentencing Guidelines that the Court must consider in

10    determining your sentence?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Has your attorney discussed the Sentencing

13    Guidelines with you?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Do you understand that in determining your

16    sentence, the Court must calculate the applicable Sentencing

17    Guidelines' range and consider that range, possible departures

18    under the Sentencing Guidelines, and other sentencing factors

19    under Title 18 of the United States Code, Section 3553(a)?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Do you understand that if your attorney or

22    anyone else has attempted to estimate or predict what your

23    sentence will be, their estimate or prediction could be wrong?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Do you also fully understand that even if

1cjdpitp

PLEA

 1   your sentence is different from what your attorney or anyone

 2   else told you it might be, or if it is different from what you

 3   expect, you will still be bound to your guilty plea and you

 4   will not be allowed to withdraw your guilty plea?

 5            THE DEFENDANT:  Yes.

 6            THE COURT:  Do you understand that the sentence to be

 7   imposed will be determined solely by the Court, and that I can

 8   only determine the sentence to be imposed after the Probation

 9   Department prepares a presentence report?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Do you understand that the Court has

12   discretion, while taking into account the specific provisions

13   and policy statements in the guidelines, to sentence you to any

14   number of years of imprisonment between zero and the combined

15   statutory maximums of 50 years?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Are you now serving any state or federal

18   sentence, or are you being prosecuted for any other crime?

19            THE DEFENDANT:  No.

20            THE COURT:  Do you understand that the Superseding

21   Information also includes a forfeiture allegation in which the

22   government asserts that you are required to forfeit to the

23   United States all property, real and personal, that constitutes

24   or is derived from proceeds traceable to the commission of the

25   offenses charged in Counts One and Two of the Information

1cjdpitp

PLEA

1    including, but not limited to, a sum of money equal to

2    $97.3 billion, representing the amount of proceeds obtained as

3    a result of those offenses?

4                THE DEFENDANT:  Yes.

5                THE COURT:  Mr. Treanor, would you please show

6    Ms. Cotellessa-Pitz Government Exhibit 1, the agreement.

7                Ms. Cotellessa-Pitz, have you signed this agreement?

8                THE DEFENDANT:  Yes, your Honor.

9                THE COURT:  Did you read it before you signed it?

10               THE DEFENDANT:  Yes.

11               THE COURT:  Did you discuss it with your attorneys

12   before you signed it?

13               THE DEFENDANT:  Yes.

14               THE COURT:  Did you fully understand the agreement

15   before you signed it?

16               THE DEFENDANT:  Yes.

17               THE COURT:  Does the agreement reflect accurately your

18   complete and total understanding of the entire agreement

19   between the government, your attorney and you?

20               THE DEFENDANT:  Yes.

21               THE COURT:  Is everything that you understand about

22   your plea, cooperation and sentence covered in this agreement?

23               THE DEFENDANT:  Yes.

24               THE COURT:  Has anything been left out?

25               THE DEFENDANT:  No.

1cjdpitp
                                PLEA

1         THE COURT:  Has anyone made any promises to you other

2    than what's set forth in that agreement, or given you anything

3    or threatened you or forced you to plead guilty or to enter

4    into the cooperation agreement?

5         THE DEFENDANT:  No.

6         THE COURT:  Do you understand that even if the

7    government does not oppose or take a position on what your

8    attorney will ask as a sentence, I am free to impose whatever

9    sentence I believe is appropriate under the circumstances and

10   the applicable law and you will have no right to withdraw your

11   plea?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Do you understand that the agreement

14   provides that you must cooperate fully with the Office of the

15   United States Attorney, the Federal Bureau of Investigation,

16   the United States Department of Labor, the Internal Revenue

17   Service, and any other law enforcement agency designated by the

18   United States Attorney?

19        THE DEFENDANT:  Yes.

20        THE COURT:  Do you understand that the agreement does

21   not bind any federal, state or local prosecuting authority

22   other than the United States Attorney?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Do you understand that the agreement

25   provides that if the United States Attorney determines that you

1cjdpitp

PLEA

1  have provided substantial assistance in an investigation or

2  prosecution, and if you have fully complied with the

3  understandings specified in the agreement, the United States

4  Attorney will file a motion pursuant to Section 5K1.1 of the

5  Sentencing Guidelines requesting that the court sentence you in

6  light of the factors set forth in that section?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that the factors that

9  the Court may consider under Section 5K1.1 include the

10  significance and usefulness of your assistance, the

11  truthfulness, completeness and reliability of any information

12  or testimony you provide, the nature and extent of your

13  assistance, any injuries suffered or any danger or risk of

14  injury to you or your family as a result of your assistance,

15  and the timeliness of your assistance?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand that even if the United

18  States Attorney files such a motion, the sentence to be imposed

19  on you remains within the sole discretion of the Court?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand that you will not be

22  entitled to withdraw your plea even if the Court denies the

23  motion?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand that if the United

1cjdpitp

PLEA

1    States Attorney determines that you have not provided

2    substantial assistance, or that you violated any provision of

3    the agreement, the United States Attorney is not obligated to

4    file a motion under Section 5K1.1?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you understand that you will not be

7    entitled to withdraw your guilty plea even if the United States

8    Attorney does not file a motion?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand that the agreement

11   provides that if you commit any further crimes or if it is

12   determined that you gave false, incomplete or misleading

13   testimony or information, or that you otherwise violated any

14   provision of the agreement, you will be subject to prosecution

15   for any federal violations of which the United States Attorney

16   has knowledge, including perjury and obstruction of justice?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you also understand that your agreement

19   provides that if you commit any further crimes, or if it is

20   determined that you gave false, incomplete or misleading

21   testimony or information, or otherwise violated any provision

22   of the agreement, all statements made by you to the United

23   States Attorney or other designated law enforcement agents and

24   any testimony you have given before a grand jury or other

25   tribunal may be admissible in evidence in any criminal

1cjdpitp

PLEA

1   proceedings against you?

2               THE DEFENDANT:  Yes.

3               THE COURT:  Do you understand that your agreement also

4   provides that you may not assert a claim that such statements

5   should be suppressed from evidence and that you have waived

6   your right to claim that such statements should be suppressed

7   from evidence?

8               THE DEFENDANT:  Yes.

9               THE COURT:  Do you understand that on page 2, your

10  agreement, which is Government Exhibit 1, provides that you are

11  admitting the forfeiture allegation in the Information and that

12  you are agreeing to forfeit to the United States all property,

13  real and personal, that constitutes or is derived from proceeds

14  traceable to the commission of those offenses, including, but

15  not limited to, a sum of money equal to $97.3 billion,

16  representing the amount of proceeds obtained as a result of the

17  offenses charged in Counts One and Two of the Information?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Do you understand that you are not

20  obligated to admit the forfeiture obligation?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Do you understand that on page 5 -- just

23  one moment.

24              (Pause)

25              Sorry for the delay.

Case 1:10-cv-00226-LTS    Document 6512    Filed 11/08/21    Page 28 of 48
1cjdpitp                                                                28
                                    PLEA

1              Ms. Baroni, is there a factual basis or other reason

2      for my specifically querying the immigration-related agreement

3      that is on page 5?

4              MS. BARONI:  No, your Honor.

5              THE COURT:  Ms. Cotellessa-Pitz, do you understand

6      that any amount that you do forfeit will not be credited toward

7      any fines, restitution, costs of imprisonment, or any other

8      additional penalty that the Court may impose on you?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you still wish to plead guilty pursuant

11     to this plea agreement?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Messrs. Treanor and Rody, does either of

14     you know of any valid reason why Ms. Cotellessa-Pitz would

15     prevail at trial?

16             MR. TREANOR:  No, your Honor.

17             MR. RODY:  No, your Honor.

18             THE COURT:  Does either of you know of any reason why

19     she should not be permitted to plead guilty?

20             MR. TREANOR:  No, your Honor.

21             MR. RODY:  No, your Honor.

22             THE COURT:  Ms. Cotellessa-Pitz, would you please

23     stand now and tell me what you did that makes you guilty of the

24     crimes to which you are pleading guilty.

25             Your counsel may stand with you, if that will make you

Case 1:10-cv-02220-LTS Document 61-2 Filed 12/17/12 Page 29 of 48

1cjdpitp

PLEA

1    more comfortable.

2              THE DEFENDANT:  I have a statement here.

3              I am here to plead guilty to the counts in the

4    Information filed against me and to accept responsibility for

5    what I have done.

6              From approximately 1999 through December 2008, while

7    working for Bernard Madoff, I made accounting entries in the

8    books and records of his business that I knew were false and

9    inaccurate, and I filed document with regulatory authorities

10   and others that I knew repeated these falsehoods and

11   inaccuracies.  I now know that these acts helped Bernard Madoff

12   and others perpetuate a fraud that harmed thousands of people,

13   and I am terribly sorry that I contributed to the harm done to

14   so many.

15             I would like to explain my role further.

16             I began working at Bernard L. Madoff Investment

17   Securities, LLC, which I will refer to as "BLMIS," in 1978 as a

18   part-time employee while I was still in college.  For the next

19   30 years, I continued to work at BLMIS primarily performing

20   functions in the operations department associated with BLMIS's

21   Proprietary Trading and Market Making businesses.

22             During the entire time I worked at BLMIS, I reported

23   to Daniel Bonventre, who was the director of operations at the

24   firm.

25             In late 1998, I was promoted to comptroller of BLMIS.

1cjdpitp

PLEA

1    In that capacity, I assisted Bonventre in maintaining the books

2    and records of BLMIS, which included the General Ledger and

3    stock records.  I also regularly prepared the Financial and

4    Operational Combined Uniform Single Reports, also know as

5    "FOCUS Reports," that were filed with the Securities and

6    Exchange Commission.  In addition, I occasionally assisted

7    Annette Bongiorno, Joann Crupi and others in maintaining books

8    and records relating to Investment Advisory accounts and

9    signing redemption checks issued to investors.

10            During the period when I was comptroller of BLMIS, I

11   agreed with and worked together with other BLMIS employees to

12   violate the laws of the United States, and I took a number of

13   actions over the years at BLMIS's offices in Manhattan that

14   constituted violations of U.S. laws.  I did so knowingly and

15   willfully, and knew that what I was doing was wrong and

16   unlawful.

17            My conduct included a number of acts that I would like

18   to describe.

19            From about 1999 through December 2008, I worked with

20   others to make false entries in the books and records of BLMIS

21   and to cause the filing of false documents with the SEC.  As a

22   registered broker-dealer and as an investment advisor, BLMIS

23   was required to make and keep accurate books and records under

24   the SEC's rules.  At the direction of Madoff, Bonventre and

25   others, I caused inaccurate ledgers and other books and records

08-01789-cg.m   Doc 20170-31   Filed 01/08/21   Entered 01/08/21 19:58:08   Exhibit U
Case 1:10-cv-02220-LTS   Document 161-2   Filed 12/17/12   Page 32 of 48
Pg 32 of 49
1cjdpitp

PLEA

 1   to be created and kept by BLMIS, including inaccurate general

 2   ledgers and stock records.  I then transferred the same

 3   inaccurate record entries into FOCUS Reports and annual

 4   financial statements that I knew would be sent to the SEC.

 5           The false documents were prepared at the BLMIS offices

 6   in Manhattan, and some of these documents were submitted

 7   through the U.S. Mail.

 8           While undertaking these actions, I knew that what I

 9   was doing was wrong.

10           The following are a few examples of the types of false

11   records I created and maintained.

12           From about 1999 through December 2008, I made false

13   and inaccurate entries in the books and records of BLMIS

14   relating to transfers of funds from BLMIS's Investment Advisory

15   business.  At various times, I believed these transfers to be

16   the interest or commissions from securities trading in the

17   personal accounts of Bernard Madoff or the accounts of

18   customers of the Investment Advisory business.  Nevertheless,

19   at the direction of Madoff, Bonventre and others, I booked

20   these transfers improperly to the accounts of BLMIS's

21   Proprietary Trading and Market Making businesses, and recorded

22   these false entries in BLMIS's Trading Ledgers, General

23   Ledgers, and other supporting books and records of BLMIS's

24   Proprietary Trading and Market Making businesses.

25           In addition, at the direction of Bonventre and others,

1cjdpitp
PLEA

```
1    I booked the transfers of funds at times into specific
2    securities or trading positions and accounts that were part of
3    the firm's Proprietary Trading and Market Making businesses.  I
4    knew that the transfers bore no relation to these securities or
5    positions, and that the funds did not result from trading in
6    these securities through the firm's Proprietary Trading and
7    Market Making businesses and, therefore, that my entries were
8    false.  I understood that my entries falsely inflated the
9    revenue, increased the profits, and hid the losses of the
10   Proprietary Trading and Market Making businesses and at the
11   same time did not accurately report the financial condition of
12   BLMIS as a whole.
13          In addition, in 2005, the SEC conducted an audit of
14   BLMIS's businesses.  At Madoff's direction and in response to
15   this audit, I, together with others, created false books and
16   records to be shown to the auditors.
17          For example, the SEC requested a list and description
18   of all BLMIS trading accounts as well as a report reflecting
19   the monthly profit and loss for each of the trading accounts
20   for a three-month period in 2005.  In response, I, together
21   with Bonventre, O'Hara and others, created several false
22   trading account reports that were given to the SEC.  In those
23   reports, among other things, we intentionally omitted an
24   account affiliated with the Investment Advisory business.
25          I knew that my actions in creating these false reports
```

Case 1:10-cv-04218-LTS Document 61-2 Filed 12/17/12 Page 338 of 48

1cjdpitp

PLEA

1    and omitting this account were wrong and would have the effect

2    of misleading the SEC and concealing the account from the SEC.

3           Separately, I assisted Madoff and other BLMIS

4    employees in defrauding the United States by preventing the

5    Internal Revenue Service from collecting the proper amount of

6    income taxes from Madoff.  I did this in 2007, when the IRS

7    audited Madoff's 2004 and 2005 federal tax returns, as well as

8    on other occasions.

9           In 2007, at the direction of Madoff and his

10   accountant, David Friehling, I, together with Bonventre, O'Hara

11   and others, created a false backdated General Ledger and

12   Trading Ledger and created false reports derived from the

13   Trading Ledger in order to support Madoff's false tax returns.

14   In addition, I, together with Bonventre and others, fabricated

15   backdated positions in certain stocks in a backdated trading

16   ledger.  I knew that the backdated stock positions were not

17   real and that the false General Ledger and Trading Ledger were

18   being created in order to deceive IRS tax auditors in

19   connection with Madoff's tax returns.

20          The altered backdated documents that I helped to

21   create were shown to an IRS auditor.

22          I believe that the actions I have described above make

23   me guilty of the crimes charged in Counts One, Two, Three and

24   Four of the Information, and I plead guilty to those charges

25   because I am responsible for committing those crimes.

1cjdpitp
PLEA

 1          Although I now know that the crimes I committed helped

 2     to cover up and perpetuate Bernard Madoff's fraudulent Ponzi

 3     scheme, at the time I committed these crimes I did not know

 4     that Madoff and others were stealing investors' money instead

 5     of actually investing the money through securities trading.

 6     Nonetheless, the consequences of my actions are clear to me

 7     now, and for that I am, again, terribly sorry.

 8          I would like to apologize to the victims of the fraud,

 9     and I would like the Court and the public to know that I am

10     cooperating fully with the government in this matter.

11          Thank you, your Honor.

12          THE COURT:  Thank you.

13          Now, I notice that you were reading from notes as you

14     made that factual recitation.  Do those notes reflect

15     accurately and truthfully your own actions and knowledge as of

16     the time of the relevant events?

17          THE DEFENDANT:  Yes, they do.

18          THE COURT:  And to confirm, you knew at the time that

19     you made these false records and false submissions that you

20     have described that the information in them was false?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  And you nonetheless made them and

23     submitted them willfully?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Ms. Baroni, does the government wish

1cjdpitp

PLEA

```
 1   anything further as a factual matter to be addressed in the

 2   plea allocution?

 3             MS. BARONI:  No, your Honor.

 4             THE COURT:  Thank you.

 5             Ms. Baroni, would you please summarize the

 6   government's evidence against Ms. Cotellessa-Pitz.

 7             MS. BARONI:  Yes, your Honor.

 8             If this case had proceeded to trial, the government

 9   would have proven, through witness testimony, documents and

10   other evidence, beyond a reasonable doubt all the facts set

11   forth in the Superseding Information.

12             Specifically, the government would have proven that

13   Ms. Cotellessa-Pitz was employed at BLMIS from 1978 until at

14   least December 2008; that beginning in 1998 she became a

15   comptroller.

16             The evidence would show that Ms. Cotellessa-Pitz,

17   along with Daniel Bonventre, Annette Bongiorno, Joann Crupi,

18   Jerome O'Hara, George Perez, Eric Lipkin, David Kugel and Frank

19   DiPascali, and other co-conspirators, engaged in a scheme to

20   create many false and misleading entries in the books and

21   records of BLMIS that lasted for decades.

22             Ms. Cotellessa-Pitz, the evidence would show, worked

23   under the supervision of Mr. Bonventre, and that she engaged in

24   an accounting fraud that covered up Mr. Madoff's Ponzi scheme.

25             The evidence would prove that they took proceeds --
```

Case 1:10-cr-00228-LTS Document 614-12 Filed 12/17/12 Page 38 of 48

1cjdpitp
PLEA

1   she, Mr. Bonventre and others took proceeds from the Ponzi

2   scheme, which was a fraud run through the Investment Advisory

3   business, and made it appear that the money belonged in other

4   parts of Madoff's businesses.  This allowed Madoff to avoid

5   scrutiny by hiding the fact that the money came from the

6   fraudulent IA business, and it also allowed Madoff to prop up

7   BLMIS's market making and prop trading businesses that were

8   losing money and that served as a front for the Ponzi scheme.

9           The government would also prove, if this case had gone

10  to trial, that Ms. Cotellessa-Pitz, Mr. Bonventre and others

11  made similar false and misleading statements in reports that

12  were required to be filed with the SEC.

13          In addition, the government would prove that

14  Ms. Cotellessa-Pitz, along with Daniel Bonventre, Jerome

15  O'Hara, George Perez, Joann Crupi, Eric Lipkin, Frank DiPascali

16  and other co-conspirators, created false and fraudulent

17  documents for the purpose of deceiving the Securities and

18  Exchange Commission.  For example, the government would prove

19  that in connection with an audit of BLMIS conducted by the SEC

20  in 2005, Ms. Cotellessa-Pitz, Bonventre, O'Hara and others

21  created numerous false and altered documents that were given to

22  the SEC relating to BLMIS's trading accounts, bank accounts,

23  and relating to its profitability and loss.

24          Further, and separately, the government would also

25  prove that Ms. Cotellessa-Pitz, Daniel Bonventre, Jerome O'Hara

1cjdpitp
PLEA

1   and Madoff's accountant David Friehling, along with other

2   co-conspirators, created false and fraudulent documents in

3   connection with tax audits of Bernard L. Madoff.  For example,

4   in 2004, when New York State Department of Taxation and Finance

5   conducted an audit of Madoff, Ms. Cotellessa-Pitz, Bonventre,

6   O'Hara, Friehling and others covered up the fact that

7   Mr. Madoff had underreported BLMIS's profits by tens of

8   millions of dollars in each of those years and in that cover-up

9   Ms. Cotellessa-Pitz, Bonventre, O'Hara and others created fake

10  general ledgers and stock records and other documents to

11  deceive the tax auditors.

12          The government would further prove that

13  Ms. Cotellessa-Pitz and her co-conspirators did the same in

14  connection with a 2007 audit conducted by the Internal Revenue

15  Service.

16          THE COURT:  Thank you.

17          Ms. Cotellessa-Pitz, would you please stand again.

18          How do you now plead to the charge against you in

19  Count One of the Fifth Superseding Information, not guilty or

20  guilty?

21          THE DEFENDANT:  Guilty.

22          THE COURT:  How do you now plead to the charge against

23  you in Count Two of the Fifth Superseding Information, not

24  guilty or guilty?

25          THE DEFENDANT:  Guilty.

1cjdpitp
                              PLEA

1           THE COURT:  How do you now plead to the charge against

2    you in Count Three of the Fifth Superseding Information, not

3    guilty or guilty?

4           THE DEFENDANT:  Guilty.

5           THE COURT:  And how do you now plead to the charge

6    against you in Count Four of the Fifth Superseding Information,

7    not guilty or guilty?

8           THE DEFENDANT:  Guilty.

9           THE COURT:  Are you pleading guilty to each of these

10   charges because you are in fact guilty of the illegal conduct

11   charged?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Are you pleading guilty voluntarily and of

14   your own free will?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Mr. Treanor, would you please show

17   Ms. Cotellessa-Pitz Court Exhibit 1, the advice of rights form.

18          Ms. Cotellessa-Pitz, have you signed this form?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Did you read it before you signed it?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Did you discuss it with your attorney

23   before you signed it?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Did you fully understand it before you

1cjdpitp
                                    PLEA

 1   signed it?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Mr. Treanor, did you also review and sign

 4   Court Exhibit 1?

 5              MR. TREANOR:  Yes, I did, your Honor.

 6              THE COURT:  Mr. Treanor, are there any other questions

 7   that you believe I should ask Ms. Cotellessa-Pitz in connection

 8   with this plea?

 9              MR. TREANOR:  No, your Honor.

10              THE COURT:  Ms. Baroni, are there any other questions

11   that you believe I should ask Ms. Cotellessa-Pitz in connection

12   with this plea?

13              MS. BARONI:  No, your Honor.

14              THE COURT:  Ms. Cotellessa-Pitz, you have acknowledged

15   that you are guilty as charged in the Information.  I find that

16   you know your rights and that you are waiving them voluntarily.

17              Because your plea is entered knowingly and voluntarily

18   and is supported by an independent basis in fact containing

19   each of the essential elements of each of the offenses, I

20   accept your guilty plea, and I adjudge you guilty of the

21   offenses charged in Counts One, Two, Three and Four of the

22   Fifth Superseding Information.

23              Mr. Treanor, do you wish to be present for any

24   interview of Ms. Cotellessa-Pitz in connection with the

25   preparation of the presentence report?

1cjdpitp

PLEA

1        MR. TREANOR:  Yes, your Honor.

2        THE COURT:  I will make that direction.

3        Counsel, what is the desire of the parties with

4   respect to setting a sentencing date?

5        MS. BARONI:  Your Honor, the government would ask that

6   your Honor set a sentencing control date for approximately six

7   months into the future and that we would not ask that a

8   presentence report be prepared at this time.

9        THE COURT:  And you will inform the Court whether that

10  date would need to be extended further or, alternatively, when

11  it is an appropriate time to have the presentence report

12  prepared?

13       MS. BARONI:  We will.

14       THE COURT:  Thank you.

15       Ms. Ng, may I have a control date six months out?

16       THE CLERK:  Friday, June 22, 2012, at 11 a.m.

17       THE COURT:  The sentencing control date is set for

18  June 22, 2012, at 11 in the morning.

19       Counsel, when it is time for preparation for

20  sentencing, please make sure that you make and file your

21  submissions in accordance with the sentencing submission policy

22  that I have posted on the court's website.

23       Ms. Cotellessa-Pitz, at some point in the future the

24  Probation Office will be preparing a presentence report to

25  assist me in sentencing you.  You will be interviewed by the

PLEA

1   Probation Office.  It is important that the information that

2   you give to the probation officer be truthful and accurate.

3   The report is important in my decision as to what your sentence

4   will be.  You and your attorneys have a right and will have an

5   opportunity to examine the report, to challenge or comment on

6   it, and to speak on your behalf before sentencing.

7           Failing to be truthful with the Probation Office and

8   the Court may have an adverse effect on your sentence and may

9   subject you to prosecution.

10          Do you understand that?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Thank you.

13          Is there an application with respect to bail pending

14  sentencing?

15          MS. BARONI:  Yes, your Honor.  The parties have a

16  proposal for your Honor's consideration with respect to a bail

17  package.

18          It would be a $2.5 million personal recognizance bond

19  to be secured by eight financially-responsible people and to be

20  also secured by at least $800,000 in cash or property.  None of

21  the cash or property could come from proceeds of the fraud or

22  from any forfeitable funds.

23          Further, the proposal would subject the defendant to

24  strict pretrial supervision.  Her travel would be restricted to

25  the Southern and Eastern District of New York.  She would

1cjdpitp

PLEA

1     surrender all travel documents and would not make any new

2     travel applications.

3          Further, Judge, the government has interviewed eight

4     of the defendant's proposed suriters already, and we are

5     satisfied with respect to their qualifications.  We think that

6     they are financially responsible.  They are very close family

7     members and friends of the defendant, and we believe that they

8     would have moral suasion over her.

9          Further, your Honor, the defendant has been working

10    with the U.S. Attorney's Office and the FBI as well as the IRS

11    for quite a long time now.  She has met every appointment.  She

12    has been completely reliable, and the government believes that

13    she has an overwhelming incentive to continue to cooperate and

14    will not flee.

15         Further, as part of the cooperation process, she has

16    filled out financial affidavits and submitted them to our

17    office detailing all of her assets, the amounts and the

18    location of those assets.  She has also entered into a

19    voluntary restraint agreement with the government relating to

20    her assets.

21         And in light, your Honor, of her cooperation, which,

22    as I said, has been ongoing for a long time, her full

23    disclosure of her conduct while she was an employee at BLMIS,

24    as well as full disclosure of her financial situation and all

25    of her assets, the government believes that she will be

1cjdpitp
PLEA

1    compliant with the proposed bail package and with any rules set

2    forth by Pretrial Services.

3          THE COURT:  Does the government believe, on the basis

4    of its factual investigation, that the evidence is clear and

5    convincing that Ms. Cotellessa-Pitz will not pose a risk of

6    flight or danger to the community?

7          MS. BARONI:  Yes, your Honor.

8          THE COURT:  And has the government investigated the

9    proposed sources of the security?

10          MS. BARONI:  Yes, we have.

11          THE COURT:  And is the government satisfied that the

12    sources are indeed unrelated to the particular forfeitable

13    funds?

14          MS. BARONI:  Yes, your Honor.  They are not related to

15    BLMIS in any way.

16          THE COURT:  And what would be the government's

17    proposal as to the deadline for satisfaction of these

18    conditions?

19          MS. BARONI:  Given the upcoming holidays, your Honor,

20    we would be amenable to ten days to post the property and for

21    the cosigners to sign the bond.

22          THE COURT:  And so today being the 19th, that would be

23    the 29th of December?

24          MR. TREANOR:  Your Honor, if we could ask for

25    January 3rd, just to get us past the holidays.  It is a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1cjdpitp
PLEA

1   difficult time to get people focused on this.  The courthouses

2   aren't open all of the days between now an then.  And so we

3   have a number of cosigners ready to go, and we expect that that

4   will be a pretty quick process getting the signatures.  It is

5   the property that may take a little bit longer.  So we would

6   ask for that additional time.

7        MS. BARONI:  We have no objection to that, your Honor.

8        THE COURT:  I will allow until January 3rd for

9   satisfaction of the conditions.

10        And having reviewed the Pretrial Services' report and

11  considered carefully the government's proffers regarding the

12  proposed terms and its investigations in relation to those

13  proposed terms, I find that they are sufficient and compliant

14  with the relevant legal standards regarding bail pending

15  sentencing, and I will grant release on those conditions, with

16  the requirement that they be fully satisfied by why don't I

17  call it 4 in the afternoon on January 3rd.

18        And I am going to now prepare a bail disposition sheet

19  and I will show it to everyone to -- I'll show it to counsel to

20  confirm that I have all of the conditions written properly.

21        (Pause)

22        Ms. Ng, would you hand a copy to each table and one to

23  the court reporter, please.

24        The draft that I have handed out summarizes the bail

25  conditions as follows:  $2.5 million PRB with 8 FRPs and

1   $800,000 cash or property security (such security must be

2   unrelated to fraud proceeds and unrelated to forfeitable

3   funds); strict pretrial supervision; travel restricted to

4   S.D.N.Y./E.D.N.Y.; surrender travel documents and no new

5   applications.  All conditions must be satisfied by 4 p.m. on

6   January 3, 2012.

7           Does that accurately cover the agreed conditions?

8           MS. BARONI:  Yes, it does, your Honor.

9           If your Honor could add that she could be released

10  today on a certain subset of cosigner signatures, either on her

11  own signature or on a couple of other signatures, depending on

12  how many people are here to sign?

13          THE COURT:  How many do we have to sign?

14          MR. TREANOR:  We have two here.  I believe we have a

15  third that will be here.  We may have as many as five today.

16  Of course, we have Ms. Pitz also.

17          THE COURT:  I will permit release today on the

18  signature of Ms. Pitz and three financially-responsible

19  persons.

20          MR. TREANOR:  Thank you, your Honor.

21          THE COURT:  I will add that.

22          So I've added a sentence at the end that says:

23  "Defendant may be released today on own signature and those of

24  three FRPs."

25          So I will save and print those.

1cjdpitp
                                    PLEA

 1              How many copies to we need, Ms. Ng?

 2              THE CLERK:  Five.

 3              (Pause)

 4              THE COURT:  Ms. Cotellessa-Pitz, did you hear the bail

 5   conditions as I have outlined them?

 6              THE DEFENDANT:  Yes, your Honor.

 7              THE COURT:  Do you understand them?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  Do you understand that you are legally

10   obligated to comply with these conditions, and that the

11   consequences of noncompliance can be severe?

12              THE DEFENDANT:  Yes, I do.

13              THE COURT:  Do you understand that if you fail to

14   comply with the conditions, you are subject to remand and

15   potentially subject to further penalty?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Do you understand that if you do not

18   return to my courtroom on the time and date that is ultimately

19   set for sentencing, that you will be guilty of a crime

20   separate, apart from -- separate and apart from the crimes to

21   which you have just pled guilty?

22              THE DEFENDANT:  Yes.

23              THE COURT:  And do you understand that under such

24   circumstances, you will be subject to penalties separate, apart

25   from, and over and above any that may be imposed in connection

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

1cjdpitp
PLEA

1    with the crimes to which you have pled guilty?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Then I will fully expect you to comply

4    with these conditions and to appear as scheduled for

5    sentencing.

6              I will now sign the bail disposition sheet.

7              (Pause)

8              Is there a consent forfeiture order at this time, or

9    is that something the parties contemplate to prepare later?

10             MS. BARONI:  We will prepare it later, your Honor,

11   prior to sentencing.

12             THE COURT:  All right.  I will enter my usual order

13   regarding the preparation of a preliminary order of forfeiture.

14             Is there anything else that we need to take up

15   together this afternoon?

16             MS. BARONI:  Not from the government.  Thank you, your

17   Honor.

18             MR. TREANOR:  No, your Honor.

19             THE COURT:  Thank you.

20             Ms. Baroni, Mr. Moore, you will shepherd the process

21   through the Magistrate Clerk's office in relation to the

22   signing of the necessary documents?

23             MS. BARONI:  Yes, Judge.

24             THE COURT:  Thank you.

25             MR. MOORE:  Thank you very much.

1cjdpitp
                              PLEA

 1            THE COURT:  I wish you all a safe and healthy

 2    holidays.  Thank you all for being here today.

 3            We are adjourned.

 4            MR. MOORE:  Thank you, your Honor.  You, too.

 5            THE CLERK:  All rise.

 6

 7                              -   -   -

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300