**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955
Gary Stein
E-mail: gary.stein@srz.com
Abigail F. Coster
E-mail: abigail.coster@srz.com

*Attorneys for Claimant Dale Ellen Leff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**OPPOSITION OF CLAIMANT DALE ELLEN LEFF TO TRUSTEE'S THIRTY-FIFTH OMNIBUS MOTION TO AFFIRM THE TRUSTEE'S CLAIMS DETERMINATIONS AND OVERRULE OBJECTIONS THAT APPEAR TO RAISE FACTUAL ISSUES**

Claimant Dale Ellen Leff ("Claimant"), by and through her attorneys, Schulte Roth &

Zabel LLP, hereby opposes the Trustee's Thirty-Fifth Omnibus Motion to Affirm the Trustee's

Claims Determinations and Overrule Objections that Appear to Raise Factual Issues, dated

December 10, 2020 (ECF No. 20072) (the "Trustee's Motion" or "Trustee Mot."). As described

more fully herein, Claimant opposes the Trustee's Motion, and the Trustee's prior determination

of her claim, because the Trustee improperly attempts to eliminate Claimant's own net equity in

her own BLMIS account on the basis of withdrawals and deposits that were made by *another*

accountholder of BLMIS, during a period in which Claimant herself had *no* relationship with

BLMIS.[1]

## **BACKGROUND**

Claimant maintained an account at BLMIS, Account No. 1L0082, from December 9,

2003 through December 11, 2008, the date that the above-captioned liquidation proceeding was

commenced against BLMIS pursuant to SIPA. Claimant became the accountholder of that

account on December 9, 2003, following the death of her husband, Norman M. Leff, on July 3,

2003. (Ex. B, at ¶¶ 3-4; Ex. D.) Prior to July 3, 2003, Account No. 1L0082 was Mr. Leff's

personal IRA account, for which he was the sole accountholder. Until December 9, 2003,

Claimant was not an accountholder of, had no control over, and had no access to funds in

Account No. 1L0082. (Ex. B, at ¶¶ 3-4.)

Prior to December 9, 2003—*i.e.*, while Mr. Leff was the sole accountholder—Mr. Leff

made deposits totaling $727,955.74. (Ex. A.) Meanwhile, withdrawals during that period

totaled $1,362,000.00. (*Id.*) With withdrawals exceeding deposits, Mr. Leff would have been

deemed a "net winner" under the Trustee's Net Investment Method.

After December 9, 2003—*i.e.*, while Claimant was the sole accountholder of Account

No. 1L0082—Claimant deposited additional funds into the account on three separate occasions,

totaling $97,487.70. (Ex. B, at ¶ 5; *see also* Ex. A.) Meanwhile, Claimant made no withdrawals

from the account, except for one *de minimis* withdrawal of $51.10, to pay the account custodian,

---

[1] Unless otherwise noted, abbreviations and capitalized terms conform to those used in the Trustee's Motion.
Citations in the form "Ex. __" refer to the Exhibits annexed to the instant opposition (all of which also were Exhibits
to Claimant's Objection to the Trustee's Determination of Claim, filed November 17, 2009 (ECF No. 862)).

on July 11, 2007. (*Id.*; Ex. B., at ¶ 6.)  Claimant's final BLMIS statement, dated November 30,

2008, reflects that she owned securities in the account valued at $2,315,891.96. (Ex. C.)

On or about June 23, 2009, pursuant to the procedures established during the course of

the liquidation proceeding, Claimant timely submitted a customer claim form to SIPC (Claim

#012941) asserting a claim in the amount of $2,315,891.96 (*id.*), the total amount reflected on

Claimant's final BLMIS statement.  In response, the Trustee sent Claimant a letter with his

determination of her claim (the "Claim Determination"), dated October 19, 2009, denying her

claim in its entirety for the following reason:  "[B]ecause you have withdrawn more than was

deposited into your account, you do not have a positive 'net equity' in your account and you are

not entitled to an allowed claim in the BLMIS liquidation proceeding." (Ex. A.)

On November 17, 2009, according to established procedures, Claimant filed an objection

(the "2009 Objection") in which she challenged the Claim Determination on two grounds:  (i) the

Trustee's Net Investment Method (of netting cash deposits against cash withdrawals, rather than

looking to the reported values on customer account statements) was improper; and (ii) even

under that method, the Trustee in any case incorrectly calculated Claimant's cash deposits and

withdrawals—specifically, by including in that calculation amounts deposited and withdrawn by

Mr. Leff, before Claimant ever became the accountholder of Account No. 1L0082. (*See* ECF

No. 862.)  In light of the Second Circuit's approval of the Trustee's Net Investment Method, *see*

*In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011), Claimant has abandoned the

first ground of her 2009 Objection, and bases the instant opposition on the second ground only.

## ARGUMENT

The Trustee does not (and cannot) dispute the fact that Claimant was a named

accountholder of BLMIS Account No. 1L0082 from December 9, 2003 going forward.  And he

does not (and cannot) dispute the fact that during that period, Claimant's total deposits exceeded her total withdrawals.  Nevertheless, the Trustee takes the position that Claimant was still a "net winner" by including, in calculating *Claimant's* net equity, deposits and withdrawals that were made by *a different accountholder*, and during a period in which Claimant herself held no account or had any relationship whatsoever with BLMIS.   There is no legal basis for this position.

There is simply nothing in SIPA that supports determining Claimant's net equity based upon account activity of another customer, which occurred before Claimant ever became an accountholder.  Indeed, "net equity" is defined in a manner that focuses on the specific "customer" at issue—*i.e.*, as the "dollar amount of the account ... *of a customer*," as determined by "calculating the sum which would have been owed by the debtor *to such customer* ... minus any indebtedness *of such customer* to the debtor."  *See* 15 U.S.C. § 78*lll*(11) (emphasis added).  Deposits or withdrawals made before Claimant became the accountholder are irrelevant—they were made by another "customer."

A.     **The Trustee's Case Law Is Inapposite and Only Underscores the Flaws in His Determination of Claimant's Net Equity**

Rather than address the scenario at hand, the Trustee mischaracterizes Claimant's position as one arguing that all "interest holders" or "contributors" to a BLMIS account should be treated as separate customers (Trustee Mot. 13) and cites cases that are entirely inapplicable here—and which, if anything, support Claimant's position.  Each of the Trustee's cases involved claimants who themselves never held an individual account with BLMIS, but instead invested funds with other entities or individuals, which in turn invested in BLMIS, through accounts held in the name of such entity or individual.  (*See id.* at 13-15 (citing *Kruse v. Sec. Inv'r Prot. Corp.*, 708 F.3d 422 (2d Cir. 2013), *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314

4

(2d Cir. 1976), *Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*, No. 12 CV 1039

(DLC), 2012 WL 3042986 (S.D.N.Y. July 25, 2012), *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff*

*Inv. Sec. LLC*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014), and *In re Bernard L. Madoff Inv. Sec. LLC*,

Adv. Pro. No. 08-01789 (SMB), ECF No. 9506 (Bankr. S.D.N.Y. Feb. 25, 2015)).) As the

Trustee's Motion recognizes, in each of those cases, the court found the claimants did not qualify

as customers under SIPA because they could not show that they at any time directly "entrust[ed]

... their own cash or securities to BLMIS ... 'through an account maintained in [their] own

name[s].'" (Trustee Mot. 13-14 (citation omitted).)

   That is plainly not the case here. Claimant was listed as the accountholder of Account

No. 1L0082 from December 9, 2003 going forward; she was not merely investing money with a

third-party, which then invested her funds with BLMIS through an account in its own name.

Moreover, Claimant directly deposited her own funds with BLMIS during that period—as the

Trustee's Claim Determination itself acknowledges. (*See* Ex. A (showing $71,386.48 deposit

made on June 9, 2005).) It therefore cannot be disputed that Claimant did, in fact, "entrust[]

[her] cash" to BLMIS "through an account maintained in her own name." (Trustee Mot. 13-14

(quoting *Kruse*, 708 F.3d at 427 and *SIPC v. BLMIS*, 515 B.R. at 168).)

   On the other hand, Claimant did *not* do so at any time before becoming the accountholder

in late 2003. In fact, the Trustee's cases only bolster Claimant's argument that her claim cannot

be impacted by transactions that occurred prior that time. In those cases, the courts rejected

customer claims of investors indirectly invested in a failed broker-dealer based on factors such as

(i) the lack of a direct financial relationship with the broker-dealer; (ii) the lack of control over

the relevant accountholder's investments with the broker-dealer; and (iii) the fact that the

claimant was nowhere identified in the broker-dealer's books and records. (Trustee Mot. 13-14

(citing *Kruse*, 708 F.3d at 427 and *Morgan Kennedy*, 533 F.2d at 1318).)  All of those things are true about Claimant for the period before she was named an accountholder of Account No. 1L0082.  At all times prior, Mr. Leff was the sole accountholder, and Claimant had no direct (or, in fact, *any*) relationship with BLMIS and had no ability to control the investments or funds in the account.  Nor was she identified in BLMIS's records for the period before she was named the accountholder.  As such, Claimant was not a "customer" of BLMIS under SIPA in any sense for that period and, as such, any transactions made during that period are not properly included in the calculation of her customer claim.

### B.    Claimant's Net Equity is More Appropriately Determined Under the Inter-Account Method

Invoking inapposite case law in an effort to defeat Claimant's objection on the "customer status" issue, the Trustee's Motion ignores binding precedent from the BLMIS liquidation involving facts closely aligned with those here—and which supports Claimant's position.  That is the case law approving the Trustee's own Inter-Account Method of calculating net equity.

As the Trustee's Motion itself explains (although in a section not addressed to Claimant's arguments), the Inter-Account Method is how the Trustee calculated the net equity of BLMIS customers who had received money via a transfer from another customer's BLMIS account.  (Trustee Mot. 8-9.)  "Consistent with the Net Investment Method," under the Inter-Account Method, the Trustee "did not include any fictitious gains in the net equity calculation.  If the transferor account did not have any principal available at the time of the inter-account transfer, the transferee account was *credited with $0* for that transfer."  (*Id.* at 8-9 (emphasis added).)  This method was approved by this Court, in a decision that was later affirmed by both the District Court and the Second Circuit on appeal.  (*Id.* at 9-10; *see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014), *aff'd, In re Bernard L.*

6

*Madoff Inv. Sec. LLC*, Nos. 15 Civ. 1151 (PAE), 15 Civ. 1195 (PAE), 15 Civ. 1223 (PAE), 15

Civ. 1236 (PAE), 15 Civ. 1263 (PAE), 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016), *aff'd, Sagor*

*v. Picard*, 697 F. App'x 708 (2d Cir. 2017).)

 Claimant became an accountholder of BLMIS only because her husband, who had held

Account No. 1L0082 at BLMIS as a personal IRA account for many years, passed away, having

named Claimant the beneficiary. (Ex. D.) Therefore, several months after his death, Account

No. 1L0082 was effectively transferred into Claimant's name. This situation is, for all material

purposes, indistinguishable to one involving an inter-account transfer between two BLMIS

accounts. In fact, as the District Court expressly recognized in affirming this Court's decision

upholding the Inter-Account Method, "inter-account transfers were, apparently, common," and

that "many were among family members, including in the context of inheritance—for example,

where an estate transferred funds from a decedent's BLMIS account to the account of a

beneficiary." *In re BLMIS*, 2016 WL 183492, at *5; *see also id.* at *10 (explaining mechanics of

Inter-Account Method through hypothetical involving a claimant who inherits the funds of

deceased relative's BLMIS account through a provision in the deceased's will).

 Application of the Inter-Account Method here would yield a positive net equity claim for

Claimant. At the time her late husband's account was transferred to her, it had $0 net equity; Mr.

Leff had withdrawn more cash than he had deposited. (*See* Ex. A.) Thus, Claimant should have

been credited as having received $0 in net equity on the date the account was "transferred" into

her name. The Trustee instead valued the transfer as having a negative value, in the amount Mr.

Leff's withdrawals exceeded his deposits. That does not accord with the Trustee's Inter-Account

Method—through which he "credited ... transferee account[s] in an amount *up to* the recomputed

balance in the transferor account," but in no case less than $0, *In re BLMIS*, 2016 WL 183492, at

*5-6 (emphasis added)—a method that has withstood the scrutiny of the District Court and the Court of Appeals.[2]

Accordingly, for the foregoing reasons, the only deposits and withdrawals that should matter for determining Claimant's net equity under established and approved methods in this case are Claimant's own deposits made in 2004 and 2005—totaling $97,487.70—and her nominal withdrawal of $51.10 on July 11, 2007.  Based upon those transactions, Claimant is entitled to net equity in the amount of $97,436.60.

## CONCLUSION

For the foregoing reasons, the Court should overrule the Trustee's Claim Determination of Claimant's claim, and should direct SIPC to issue immediate payment to the Claimant in the amount of $97,436.60, plus interest.

Dated:  New York, New York
        January 7, 2021

**SCHULTE ROTH & ZABEL LLP**

By: _____

Gary Stein
Abigail F. Coster
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955
E-mail: gary.stein@srz.com
        abigail.coster@srz.com

*Attorneys for Claimant Dale Ellen Leff*

---

[2] Contrary to the Trustee's contention, Claimant is not "rely[ing] on SIPC's Series 10 Rules to support [her] argument[]." (Trustee Mot. 15.)  Those rules do, however, lend support to Claimant's position, by providing that an account held by spouses jointly is accorded separate customer status from an account held by one spouse individually.  *See* 17 C.F.R. § 300.105; *see also, e.g., In re Inv'rs Sec. Corp.*, 6 B.R. 415, 419 (Bankr. W.D. Pa. 1980) (finding investor had customer claim based on his own account with failed broker-dealer, and a separate claim based on joint account held with his wife as well).

8

# Exhibit A

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

### In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

Dale Ellen Leff (07372) (IRA)

**Redacted**

Dear Dale Ellen Leff:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1L0082 designated as Claim Number 012941:

To the extent your claim is a claim for a credit balance or securities, your claim is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $1,362,151.10), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300032483.1

of $799,342.22). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($562,808.88) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court and the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

300032483.1

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc: NTC & CO. FBO Dale Ellen Leff (07372)
PO Box 173785
Denver, CO 80217-3785

300032483.1

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|
| 2/22/1994 | CHECK | $726,725.27 |
| 3/11/1994 | CHECK | $1,230.47 |
| 6/9/2005 | CHECK WIRE | $71,386.48 |
| **Total Deposits:** | | **$799,342.22** |

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|
| 11/5/1997 | CHECK | ($45,000.00) |
| 2/12/1998 | CHECK | ($45,000.00) |
| 4/22/1998 | CHECK | ($45,000.00) |
| 7/21/1998 | CHECK | ($45,000.00) |
| 10/21/1998 | CHECK | ($45,000.00) |
| 1/21/1999 | CHECK | ($45,000.00) |
| 5/6/1999 | CHECK | ($45,000.00) |
| 7/23/1999 | CHECK | ($45,000.00) |
| 10/20/1999 | CHECK | ($45,000.00) |
| 1/31/2000 | CHECK | ($45,000.00) |
| 4/24/2000 | CHECK | ($45,000.00) |
| 7/12/2000 | CHECK | ($45,000.00) |
| 10/18/2000 | CHECK | ($45,000.00) |
| 2/6/2001 | CHECK | ($45,000.00) |
| 4/17/2001 | CHECK | ($45,000.00) |
| 7/19/2001 | CHECK | ($45,000.00) |
| 10/15/2001 | CHECK | ($45,000.00) |
| 1/16/2002 | CHECK | ($45,000.00) |
| 4/26/2002 | CHECK | ($45,000.00) |
| 7/12/2002 | CHECK | ($45,000.00) |
| 10/15/2002 | CHECK | ($45,000.00) |
| 1/16/2003 | CHECK | ($45,000.00) |
| 1/27/2003 | CHECK | ($282,100.00) |
| 4/14/2003 | CHECK | ($45,000.00) |
| 7/15/2003 | CHECK | ($45,000.00) |
| 7/11/2007 | CHECK | ($51.10) |
| **Total Withdrawals:** | | **($1,362,151.10)** |
| | | |
| **Total deposits less withdrawals:** | | **($562,808.88)** |

# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

## AFFIDAVIT OF DALE ELLEN LEFF

STATE OF NEW YORK    )
                    ) ss.
COUNTY OF NEW YORK   )

        I, Dale Ellen Leff, being duly sworn, depose and say:

        1.     My name is Dale Ellen Leff. I am of legal age and competent to make this affidavit. If called upon to testify as to the matters set forth herein, I could and would testify competently. I make this affidavit based on personal knowledge.

        2.     I am a customer of Bernard L. Madoff Investment Securities, LLC ("BLMIS") and a claimant in the above-captioned liquidation proceeding commenced pursuant to the Securities Investor Protection Act.

        3.     Prior to his death on July 3, 2003, my husband Norman M. Leff was the sole accountholder of Account No. 1L0082 at BLMIS, which was his personal IRA account.

           1

4.    I did not become the accountholder of Account No. 1L0082 and had no control over the account until December 9, 2003 when the account was transferred to my name as beneficiary.  (*See* IRA Beneficiary Distribution and Spousal Assumption or Inherited IRA Request Form (Exhibit D).)

5.    Since I have been the accountholder of Account No. 1L0082, I have made deposits totaling $97,487.70, which consist of the following:  a $20,428.95 deposit on December 9, 2004; a $5,672.27 deposit on February 18, 2005; and a $71,386.48 deposit on June 8, 2005.

6.    Since I have been the accountholder of Account No. 1L0082, I have made one withdrawal on July 11, 2007, which totaled $51.10.

Dale Ellen Leff

Subscribed and sworn to before me this ⎯17⎯ day of November, 2009.

Notary Public

My commission expires: 2/25/2012

SAHAR SHIRAZI
NOTARY PUBLIC, State of New York
No. 00SH6192855
Qualified in Kings County
Commission Expires Feb. 25, 2012

# Exhibit C

**CUSTOMER CLAIM**

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer:  Dale Ellen Leff
Mailing Address: _____
City: _____ State: _____ Zip: _____ **Redacted**
Account No.:  1-L0082
Taxpayer I.D. Number (Social Security No.): _____ 1436

**NOTE:**  BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*******************************************************************

1.    Claim for money balances as of December 11, 2008:

    a.    The Broker owes me a Credit (Cr.) Balance of        $ See Attached

    b.    I owe the Broker a Debit (Dr.) Balance of        $_____

    c.    If you wish to repay the Debit Balance,
        please insert the amount you wish to repay and
        attach a check payable to "Irving H. Picard, Esq.,
        Trustee for Bernard L. Madoff Investment Securities LLC."
        If you wish to make a payment, it must be enclosed
        with this claim form.        $_____

    d.    If balance is zero, insert "None."

502180406                                    1

2.        Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | X | |
| b. | I owe the Broker securities | | X |
| c. | If yes to either, please list below: | | |

|  |  | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| | *See Attached* | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

**Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received. PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:**    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | _____ | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | _____ | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | _____ | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | _____ | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | _____ | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | _____ | X |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? If so, give name of that broker. | _____ | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form:_____

_____

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _June 23, 2009_    Signature _Dale Ellen Leff_

Date _____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800-334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 0171 938 6222

**DUPLICATE** FOR ACCOUNT NTC & CO.
DALE ELLEN LEFF

Redacted

Account: 1-L0082-3-0
Date: 11/30/08
Page: 1

| DATE | BOUGHT | SOLD | TKN | DESCRIPTION | PRICE | AMOUNT DEBITED | AMOUNT CREDITED |
|------|--------|------|-----|-------------|-------|----------------|-----------------|
| | | | | BALANCE FORWARD | | 138,491.25 | |
| 11/12 | 1,470 | | 296 | HEWLETT PACKARD CO | 36.900 | 51,361.00 | |
| 11/12 | 1,274 | | 4120 | WAL-MART STORES INC | 55.830 | 71,177.42 | |
| 11/12 | 833 | | 4622 | INTERNATIONAL BUSINESS MACHS | 87.270 | 72,733.91 | |
| 11/12 | 3,087 | | 8448 | EXXON MOBIL CORP | 72.880 | 225,103.56 | |
| 11/12 | 3,381 | | 8948 | INTEL CORP | 14.510 | 49,193.31 | |
| 11/12 | 1,617 | | 13274 | JOHNSON & JOHNSON | 59.580 | 96,404.86 | |
| 11/12 | 2,205 | | 17599 | J.P. MORGAN CHASE & CO | 38.530 | 85,046.65 | |
| 11/12 | 1,176 | | 21925 | COCA COLA CO | 44.660 | 52,567.16 | |
| 11/12 | 686 | | 26251 | MCDONALDS CORP | 55.370 | 38,010.82 | |
| 11/12 | 1,274 | | 30577 | MERCK & CO | 28.550 | 36,422.70 | |
| 11/12 | 4,655 | | 34903 | MICROSOFT CORP | 21.810 | 101,721.55 | |
| 11/12 | 2,352 | | 39229 | ORACLE CORPORATION | 17.300 | 40,783.60 | |
| 11/12 | 931 | | 52207 | PEPSICO INC | 56.410 | 52,554.71 | |
| 11/12 | 539 | | 52709 | APPLE INC | 100.780 | 54,341.42 | |
| 11/12 | 3,969 | | 56533 | PFIZER INC | 16.940 | 67,392.06 | |
| 11/12 | 931 | | 57035 | ABBOTT LABORATORIES | 54.640 | 50,870.91 | |
| 11/12 | 1,764 | | 60859 | PROCTER & GAMBLE CO | 64.080 | 113,707.12 | |
| 11/12 | 657 | | 61361 | AMGEN INC | 59.160 | 38,867.12 | |
| 11/12 | 1,215 | | 65185 | PHILIP MORRIS INTERNATIONAL | 43.600 | 53,459.00 | |
| 11/12 | 2,980 | | 65585 | BANK OF AMERICA | 21.590 | 63,591.60 | |
| 11/12 | 3,185 | | 65515 | QUALCOMM INC | 33.770 | 107,538.55 | |
| 11/12 | 735 | | 70013 | CITI GROUP INC | 12.510 | 39,133.60 | |
| 11/12 | | | 73037 | SCHLUMBERGER LTD | 49.680 | 9,971.35 | |
| | | | | | | 36,396.80 | |

CONTINUED ON PAGE  2

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

**DUPLICATE** FOR ACCOUNT NTC & CO.
DALE ELLEN LEFF

Redacted

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

Page 2

11/30/08        00000006253

1-L0082-3-0

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/12 | 1,764 | | 74339 | COMCAST CORP CL A | 16.510 | 29,193.64 | |
| 11/12 | 3,479 | | 78163 | AT&T INC | 27 | 94,072.00 | |
| 11/12 | 882 | | 78665 | CONOCOPHILLIPS | 52.510 | 46,348.82 | |
| 11/12 | 588 | | 82489 | UNITED PARCEL SVC INC CLASS B | 52.040 | 30,622.52 | |
| 11/12 | 3,577 | | 82991 | CISCO SYSTEMS INC | 16.730 | 59,986.21 | |
| 11/12 | 1,029 | | 86615 | US BANCORP | 29.530 | 30,427.37 | |
| 11/12 | 1,225 | | 87317 | CHEVRON CORP | 73.630 | 90,000.75 | |
| 11/12 | 588 | | 91161 | UNITED TECHNOLOGIES CORP | 53.160 | 31,281.08 | |
| 11/12 | 6,223 | | 91643 | GENERAL ELECTRIC CO | 19.630 | 122,405.49 | |
| 11/12 | 1,666 | | 95467 | VERIZON COMMUNICATIONS | 30.610 | 50,729.06 | |
| 11/12 | 147 | | 95969 | GOOGLE | 337.400 | 49,602.80 | |
| 11/12 | 2,058 | | 99193 | WELLS FARGO & CO NEW | 29.900 | 61,610.40 | |
| 11/12 | | 2,225,000 | 22404 | U S TREASURY BILL DUE 2/12/2009 2/12/2009 | 99.936 | | 2,223,576.00 |
| 11/12 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/12/08 | DIV | | 52.88 |
| 11/12 | | 48,865 | 17506 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 48,865.00 |
| 11/12 | 43,467 | | 26873 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | 43,467.00 | |
| 11/19 | | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET DIV 11/19/08 | DIV | | 5.34 |

CONTINUED ON PAGE  3

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
New York □ London

**DUPLICATE** FOR ACCOUNT   NTC & CO.
DALE ELLEN LEFF

Redacted

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| YOUR ACCOUNT NUMBER | DATE | PAGE |
|---|---|---|
| 1-L0082-3-0 | 11/30/08  ******6253 | 3 |

| DATE | BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| 11/19 | | 43,467 | 52302 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | 43,467.00 |
| 11/19 | 175,000 | | 56861 | U S TREASURY BILL DUE 03/26/2009 | 99.926 | 176,870.50 | |
| 11/19 | 15,406 | | 61340 | FIDELITY SPARTAN U S TREASURY MONEY MARKET   3/26/2009 | 1 | 15,406.00 | |
| | | | | NEW BALANCE | | 275,397.50 | |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | 3,479 | | | AT&T INC | 28.560 | | |
| | 931 | | | ABBOTT LABORATORIES | 52.390 | | |
| | 637 | | | AMGEN INC | 55.540 | | |
| | 539 | | | APPLE INC | 92.670 | | |
| | 2,040 | | | BANK OF AMERICA | 16.250 | | |
| | 1,225 | | | CHEVRON CORP | 79.010 | | |
| | 3,577 | | | CISCO SYSTEMS INC | 16.540 | | |
| | 3,185 | | | CITI GROUP INC | 8.290 | | |
| | 1,176 | | | COCA COLA CO | 46.870 | | |
| | 1,764 | | | COMCAST CORP CL A | 17.340 | | |
| | 882 | | | CONOCOPHILLIPS | 52.520 | | |
| | 3,087 | | | EXXON MOBIL CORP | 80.150 | | |
| | 6,223 | | | GENERAL ELECTRIC CO | 17.170 | | |
| | | | | CONTINUED ON PAGE 4 | | | |



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York □ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

**DUPLICATE** FOR ACCOUNT   NTC & CO.
DALE ELLEN LEFF

Redacted

Account Number: 1-L0082-3-0   Date: 11/30/08   Tax ID: ******6253   Page: 4

| AMOUNT | SOLD/BOUGHT | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|
| 147 | | | GOOGLE | 292.960 | | |
| 1,470 | | | HEWLETT PACKARD CO | 35.280 | | |
| 3,381 | | | INTEL CORP | 13.800 | | |
| 833 | | | INTERNATIONAL BUSINESS MACHS | 81.600 | | |
| 2,205 | | | J.P. MORGAN CHASE & CO | 31.660 | | |
| 2,617 | | | JOHNSON & JOHNSON | 58.580 | | |
| 686 | | | MCDONALDS CORP | 58.790 | | |
| 1,274 | | | MERCK & CO | 26.720 | | |
| 4,655 | | | MICROSOFT CORP | 20.220 | | |
| 2,352 | | | ORACLE CORPORATION | 16.090 | | |
| 931 | | | PEPSICO INC | 56.700 | | |
| 3,969 | | | PFIZER INC | 16.430 | | |
| 1,225 | | | PHILLIP MORRIS INTERNATIONAL | 42.160 | | |
| 1,764 | | | PROCTER & GAMBLE CO | 64.350 | | |
| 980 | | | QUALCOMM INC | 33.570 | | |
| 735 | | | SCHLUMBERGER LTD | 50.740 | | |
| 15,406 | | | FIDELITY SPARTAN U S TREASURY MONEY MARKET | 1 | | |
| 1,029 | | | U S BANCORP | 26.980 | | |
| 568 | | | UNITED PARCEL SVC INC | 57.600 | | |
| 175,000 | | | U S TREASURY BILL CLASS B DUE 03/26/2009 3/26/2009 | 99.971 | | |
| 588 | | | UNITED TECHNOLOGIES CORP | 48.530 | | |

CONTINUED ON PAGE 5



BERNARD L. MADOFF
INVESTMENT SECURITIES LLC
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT NTC & CO.
DALE ELLEN LEFF

Redacted

Madoff Securities International Limited
12 Berkeley Street
London W1J 8DT
Mayfair Tel 020 7493 6222

11/30/08    ********6253    5

1-L0082-3-0

| BOUGHT RECEIVED | SOLD DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL |
|---|---|---|---|---|
| 1,666 | | | VERIZON COMMUNICATIONS | 32.650 |
| 1,274 | | | WAL-MART STORES INC | 55.480 |
| 2,058 | | | WELLS FARGO & CO NEW | 28.890 |
| | | | MARKET VALUE OF SECURITIES | |
| | | | LONG    2,349,211.46 | |
| | | | SHORT | |



**BERNARD L. MADOFF**
**INVESTMENT SECURITIES LLC**
New York ☐ London

885 Third Avenue
New York, NY 10022
(212) 230-2424
800 334-1343
Fax (212) 838-4061

**DUPLICATE** FOR ACCOUNT NTC & CO.
DALE ELLEN LEFF

Redacted

Madoff Securities International Limited
12 Berkeley Street
Mayfair, London W1J 8DT
Tel 020 7493 6222

| Account number: 1-L0082-4-0 | | | | | 000006253 | 11/30/08 | Page 1 |

| DATE | BOUGHT/RECEIVED | SOLD/DELIVERED | TRN | DESCRIPTION | PRICE OR SYMBOL | AMOUNT DEBITED TO YOUR ACCOUNT | AMOUNT CREDITED TO YOUR ACCOUNT |
|---|---|---|---|---|---|---|---|
| | | | | BALANCE FORWARD | | | 136,492.00 |
| 11/12 | | 49 | 43555 | S & P 100 INDEX NOVEMBER 460 CALL | 15.800 | | 77,371.00 |
| 11/12 | 49 | | 47081 | S & P 100 INDEX DECEMBER 450 PUT | 17.800 | 87,269.00 | |
| 11/19 | | 49 | 33905 | S & P 100 INDEX DECEMBER 430 CALL | 26 | | 127,351.00 |
| 11/19 | 49 | | 38310 | S & P 100 INDEX DECEMBER 420 PUT | 30 | 147,049.00 | |
| 11/19 | 49 | | 42635 | S & P 100 INDEX NOVEMBER 460 CALL | 3 | 14,749.00 | |
| 11/19 | | 49 | 46960 | S & P 100 INDEX NOVEMBER 450 PUT | 37 | | 181,251.00 |
| | | | | NEW BALANCE | | | 275,398.00 |
| | | | | SECURITY POSITIONS | MKT PRICE | | |
| | | | | LONG S & P 100 INDEX DECEMBER 430 CALL | 23.300 | | |
| | 49 | | | S & P 100 INDEX DECEMBER 420 PUT | 16.500 | | |
| | | | | MARKET VALUE OF SECURITIES | | | |
| | | | | LONG    80,050.00 | | | |
| | | | | SHORT    114,170.00-- | | | |

21585

 

**View Your Account Online!**
www.fiserviss-iaservices.com

### Traditional IRA
### October 1, 2008 - December 31, 2008

Page 1 of 3



DALE ELLEN LEFF        Redacted

**Account Name:** DALE ELLEN LEFF   Redacted          **Contact:** CLIENT CONNECTION
**Account Number:**      7372

## ACCOUNT SUMMARY

**REPORTED ACCOUNT VALUE**

Current Period
  Brokerage Accounts            $2,263,689.91
  *Cash                                 $0.00
**Total Account Value**        $2,263,689.91

Prior Period
Total Account Value            $2,263,689.91

**CONTRIBUTION AND DISTRIBUTION SUMMARY**

Rollovers
  Current Tax Year                       $0.00

Contributions
  Current Tax Year (2008)                $0.00
  Prior Tax Year (2007)                  $0.00

Employer Contributions
  Current Tax Year (2008)                $0.00
  Prior Tax Year (2007)                  $0.00

Distributions
  Current Tax Year (2008)                $0.00
  Current Tax Year Withholding (2008)    $0.00
  Prior Tax Year (2007)                  $0.00
  Prior Tax Year Withholding (2007)      $0.00

* FDIC insurance coverage applies only to deposits held in cash and to certificates of deposit issued by your trustee/custodian.
  No other investments are FDIC insured through this institution.

## IMPORTANT ACCOUNT INFORMATION

Please review the last page of your statement for more important account information and retain this statement for your records.
Report any discrepancies to us immediately.

As required by law, the fair market value reported on this statement will be furnished to the Internal Revenue Service on
IRS Form 5498, if the account is an IRA, SEP, Simple, or Roth account.

717 17th Street, Ste. 1700, Denver, CO 80202-3331 » PO Box 173859, Denver, CO 80217-3859 » 800-962-4238

*Trust and custodial services provided by Trust Industrial Bank, member FDIC.*

Redacted

Redacted                    :7372

## ACCOUNT INVESTMENTS

Investment Products: • Not FDIC Insured • No Bank Guarantee • May Lose Value

**BROKERAGE ACCOUNTS**

| Description/Account Number | Previous Reported Value | Current Reported Value |
|---|---|---|
| BERNARD L MADOFF BRKG ACCT VALUE L0082 | 2,263,689.91 | 2,263,689.91 |
| **Total Value of Brokerage Accounts** | | **$2,263,689.91** |
| **TOTAL ACCOUNT VALUE** | | **$2,263,689.91** |

## ACCOUNT TRANSACTIONS

| Transaction Date | Transaction | Transaction Description | Transaction Shares | Cash |
|---|---|---|---|---|
| **Beginning Cash Balance** (as of 10/01/2008) | | | | $0.00 |
| **Ending Cash Balance** (as of 12/31/2008) | | | | $0.00 |

 

**Redacted**

7372

A Guide to Understanding Your Statement of Account                     Page 3 of 3

## STATEMENT & REVIEW PERIOD

Your statement is a comprehensive summary of your account assets and account activity for the Statement Period indicated on the front of this statement. Additional important account information is also included each period. Please review the entire statement for accuracy. Any discrepancies should be documented in writing and sent to us within 90 days of the date of this statement. If the notice of discrepancies is not received in that time, Trust Industrial Bank (TIB) shall be relieved of any and all liability for the accuracy of the data reported in the statement.

## ACCOUNT INVESTMENTS & ASSET VALUE REPORTING POLICY

The "Account Investments" portion of your statement is separated into different asset categories. The following guidelines may apply, depending upon how your account is invested:

- Dividends paid near the end of the quarter may not appear on this statement.

- "Brokerage Accounts" is a category that reports a cumulative total of all retirement plan assets held by your broker(s), as provided to TIB by your brokerage firm(s). For IRA accounts, assets may be included in the cumulative value in this category which are not individually listed, and TIB does not verify the information provided by your brokerage firm(s). For Qualified Plans and Investment Annuity accounts, broker held assets will be individually listed in their appropriate asset category. Please contact your Financial Representative with questions.

- A column titled "Broker Cash" will appear in the "Account Activity" portion of your statement if cash transactions were reported to us at your Financial Representative's firm. The corresponding transaction description will appear next to the date of entry. Please note that the ending balance listed in the Broker Cash column has not been verified and is held at your brokerage firm (not at TIB). To ensure accuracy of this figure (and all brokerage activity), please consult your Financial Representative. If you wish to pay TIB fees from cash or assets held in your brokerage account, you may ask your Financial Representative to send funds to TIB.

- Individual values for securities that have publicly-quoted prices are reported based solely on such quoted prices, which are obtained from a quotation service or other source generally available to the public. TIB does not guarantee the accuracy of reported values, or whether you will be able to obtain the value indicated on this Account Statement in the event of a sale.

- Values for "alternative assets" are generally reported at their original offering price to investors and are classified into two investment types: alternative equity and alternative debt. On an annual basis (or more frequently, if requested), TIB requests updated valuation information from such persons as general partners of limited partnerships, officers of private corporations and sponsors of other assets it has classified as alternative equity investments. TIB will normally adjust the reported value of a alternative equity investment if the general partner, officer or sponsor provides TIB with an updated value. TIB does not request updated valuation information for assets it classifies as alternative debt investments. TIB does not conduct appraisals of investments and it does not seek to verify any values provided to it. If TIB has not received an updated value from the asset sponsor for a period of two years, it will begin to report the value as "N/A".

- Values reported as "N/A" indicate that updated valuation information was not available at the time of reporting, or that the asset has no value. Please refer to reports received from brokers, general partners, officers or other asset sponsors (or contact these sources directly) with regard to the current operation and status of your chosen asset(s). The reported value of any asset may differ materially from its actual value.

- A legend for the "Price Source" (usually only reported for alternative assets) is as follows:

  12 – Market Maker
  31 – Principal/Loan Value Outstanding
  32 – Original Purchase Cost
  33 – Investment Sponsor Reported Value
  34 – Plan Administrator Reported Value
  35 – Secondary Market Value
  36 – Third Party Appraisal
  37 – Bankruptcy/Receivership
  38 – No Updated Value or Response for Two or More Years
  39 – Miscellaneous

A total value for all your assets (by category) is listed in the "Account Summary" portion of this statement. This Account Statement (and the reported values herein) should not be used as the basis for making, retaining or disposing of an investment.

## ACCOUNT TRANSACTIONS

The amount listed with each transaction may not represent funds actually received into your account. It may represent the dollar value of a transaction that affects only asset shares in your account. The liability of TIB to make payment from your account at all times is limited to available liquid assets in the account.

## INVESTMENT RESPONSIBILITY

You (in conjunction with your Financial Representative) have sole authority and discretion to manage the investment of all assets in your account. As a DIRECTED trustee, we process your instructions (or your financial representative's if you chose to appoint one) and we provide account reporting and recordkeeping services. We do not give investment, tax or legal advice, provide retail investment products, perform independent investment valuations or appraisals, or maintain an agency relationship with your financial representative. TIB is not responsible for the performance of your investments.

## CUSTODY OF ASSETS

TIB may consolidate the information it receives from your Financial Representative, brokerage firm, or other investment sponsors (i.e., mutual funds, insurance companies, limited partnerships, banks, etc.) to report all assets held in your retirement plan on this Account Statement. TIB, however, may not have physical custody of all assets listed on this statement. Assets may be held at the investment sponsor, your brokerage firm, TIB or another designated site. In addition, many assets do not generate a physical certificate. Before selling an asset in your retirement plan, you and/or your Financial Representative should check with the designated brokerage firm or TIB to determine the custody of your asset(s). By determining the custody of an asset before a transaction or confirmation is received by TIB, we are able to reduce processing time and ensure proper asset delivery, if applicable.

## TAX INFORMATION

The December 31 year-end value of assets listed on your IRA Statement of Account will be furnished to the Internal Revenue Service (this does not apply to Qualified Plans or 403(b)(7) accounts). Please keep your December 31 IRA Statement of Account for your records.

NOTE: Investments in your account are not insured by the FDIC; are not deposits or obligations of and are not guaranteed by TIB; and are subject to investment risk, including the possible loss of your entire investment.

Uninvested cash deposits held in your account (which are not considered investments in your account) are insured by the FDIC to the legal limit per depositor.

IQP-5169 12/07)

**Redacted**

# Exhibit D



**RETIREMENT ACCOUNTS, INC.**

*Retirement Accounts, Inc. (RAI)*
*717 17th Street, Suite 1700*
*Denver, Colorado 80202-3323*
*1-800-325-4352*

*Please direct mail to:*
*P.O. Box 173785*
*Denver, CO 80217-3785*
*www.retirementaccountsinc.com*

# IRA Beneficiary Distribution and Spousal Assumption or Inherited IRA Request Form
## (for Traditional and Roth IRA accounts)

**Note: This request will not be processed until a certified copy of the death certificate and this form are received by RAI. If there are multiple beneficiaries, RAI must receive requests from all beneficiaries before any distributions may take place.**

## 1. ACCOUNT INFORMATION *(Please type or print all information requested below.)*

### Account Owner Information

Retirement Accounts, Inc. Account #
Redacted¹    0001

Account Owner's Name
*Norman M. Leff*

Date of Death    7 / 3 / 03

### Beneficiary Information

Beneficiary Name
*Dale Ellen Leff*

Beneficiary Residence Address

**Redacted**

City/State/Zip

Daytime Phone    ————— **Redacted** —————

Date of Birth

Social Security Number/TIN    143c **Redacted**

### Beneficiary Type (Check one.)

☒ Spouse *(only if the sole designated beneficiary)*
☐ Non-Spouse *(includes multiple beneficiaries even if one is a spouse)*
☐ Other *(includes no designated beneficiary or non-individuals such as estates, nonqualifying trusts, charities, etc.)*

Account Type    ☐ Roth IRA    ☒ Traditional IRA

**Note:** If you are requesting a Spousal Assumption IRA or an Inherited IRA, please go to Section 7. If there are multiple beneficiaries, complete Section 5 to indicate assets to be transferred to the new, inherited IRA. You do not need to complete Sections 2, 3, 4 and 6. If a spouse is one of the multiple beneficiaries, the spouse must elect an Inherited IRA before the account can become a Spousal Assumption.

**Retirement Accounts, Inc., (RAI) as Trustee of the Traditional or Roth Individual Retirement Account, is requested to make payment(s) to me as follows.**

## 2. DISTRIBUTION METHOD

**Options available for all Roth IRA Accounts OR Traditional IRA Accounts if the death of the Account Owner occurred before his/her Required Beginning Date (April 1 of the year following the year in which the Account Owner turned age 70½).**

I elect to receive my entire benefit

☐ By distributing the entire account to me personally. *(Available to all beneficiaries.)*

☐ By distributing only the amount(s) requested in Section 3. *(Available to all beneficiaries.)*

☐ According to the 5-year rule. *(Available to all beneficiaries; this is the only option which may be used for non-individual beneficiaries such as estates, etc., or if there is no designated beneficiary.)*

☐ Based on my recalculated life expectancy. *(Only for a spouse beneficiary who is the sole designated beneficiary.)*

☐ I elect to delay receipt of my entire benefit until such time as my spouse would have reached age 70½. *(Only for a spouse beneficiary who is the sole designated beneficiary.)*

☐ Based on my non-recalculated life expectancy. *(Only for a designated non-spouse beneficiary.)*

**Options available for Traditional IRA accounts (non Roth) if the death of the Account Owner occurred on or after his/her Required Beginning Date.**

I elect to receive my entire benefit:

☐ By distributing the entire account to me personally. *(Available to all beneficiaries.)*

☐ Distribute only the amount(s) requested in Section 3. *(Available to all beneficiaries.)*

☐ Based on my recalculated life expectancy. *(Only for a spouse beneficiary who is the sole designated beneficiary. The spouse beneficiary may use the longer of his/her recalculated life expectancy or the remaining non-recalculated life expectancy of the account owner. Check the appropriate box.)*

☐ Based on my non-recalculated life expectancy. *(Only for designated non-spouse beneficiaries. A non-spouse beneficiary may use the longer of his/her non-recalculated life expectancy or the remaining non-recalculated life expectancy of the account owners. Check the appropriate box.)*

☐ Based on the Account Owner's remaining non-recalculated life expectancy. *(Only option available for non-individual beneficiaries such as estates, non-qualifying trusts, charities, etc., or if there is no designated beneficiary. May be used by other beneficiaries as stated above.)*

## 3. PAYMENT OPTIONS *(Select one option below - Total, Partial, or Periodic Distributions.)*

**Total Distributions (closes account)**

☐ Please liquidate all assets in the account, distribute all cash and close account.

☐ Please reregister all assets in the account, distribute all cash and close account.

☐ Please liquidate or reregister the assets listed in Section 5, distribute all cash and close account.

*(Continued on next page.)*

**IRA Beneficiary Distribution and Spousal Assumption or Inherited IRA Request Form** *(continued)*

**7. SPOUSAL ASSUMPTION AND INHERITED IRAs** *(Choose one option below.)*

Please attach to this form:

- An original, certified copy of the Deceased Account Owner's death certificate.

- A new RAI IRA Application (if applicable).

**Spousal Assumption** *(Sole Spouse Beneficiary only.)*

I, _Dale Ellen Leff_, as the sole spouse beneficiary of the above account wish to assume the above Retirement Accounts, Inc. IRA account. Please transfer the assets in the account as follows:

❑ Transfer the assets to my existing RAI IRA, account # _____

❑ Transfer the assets to my new RAI IRA. An RAI IRA Application is attached.

❑ Transfer the assets to my IRA with (name of trustee/custodian)
_____
_____

I have attached a transfer letter from the trustee/custodial which will accept the assets.

**Inherited IRA Transfer**

❑ Transfer the assets to a new RAI Inherited IRA. An RAI IRA Application is attached.

❑ Transfer the assets to my Inherited IRA with (name of trustee/custodian) _____. I have attached a transfer letter from the trustee/custodian which will accept the assets.

**Please sign Section 9. A Medallion Signature Guarantee is required.**

---

**8. Transaction, Termination and Special Processing Fees**

| | |
|---|---|
| Transaction Fee | $10 Eight free transactions (including distributions) per year. $10 for each additional transaction. |
| Termination Fee | $100 for accounts under the Simple Fee Schedule. $150 (plus current period administration fees) for accounts under the Flexible Fee Schedule. |
| Overnight Fee | $10 - $35 (International or Special Delivery may be higher.) |
| Wire Fee | $35 |

**Fee and Billing Policies**

Fees, including all current or past due administration fees, that are not included by check with the distribution request will be deducted from the Peak Money Market. If cash is not available, fees will be billed to the Account Owner, which may delay the distribution request. If a distribution results in an account value reduction to under $250, RAI reserves the right to resign as trustee and close the account, subject to the fee schedule then in effect. We reserve the right to charge for extraordinary expenses.

---

**9. SIGNATURE AND ACKNOWLEDGMENT**

I hereby acknowledge that I have read, understand and agree to all of the provisions in this Beneficiary Distribution Request Form and if applicable, the EFT Authorization.

**IRA Account Owner's Signature**

X _Dale Ellen Leff_

Date (Required) _12/9/03_

**Medallion Signature Guarantee Required on Distributions**

(Certification by a Notary Public is not a substitute for a Signature Guarantee.)

_Eileen M. Cain_

---

**Notice of Withholding on Distributions or Withdrawals From IRAs**

This notice is required to be furnished to you by IRS regulations each time an IRA distribution is requested.

The distributions you receive from your retirement plan are subject to federal income tax withholding. You are liable for payment of federal income tax on the taxable portion of your distribution regardless of whether you elect to have tax withheld. If you have provided RAI your residence address within the United States, you may elect not to have withholding apply. The amount withheld will be based on your entire distribution. If you have not provided us with your residence address or if you have provided a residence address outside of the Unitied States, withholding generally is required and you cannot elect out of withholding.

If you are eligible (as explained above), you may elect not to have withholding apply to your distribution payments by completing this distribution request form, specifically Section 4, or the tax withholding section of another distribution request form or IRS Form W-4P and returning it to RAI.

If you elect not to have withholding apply to your distribution payments, or if you do not have enough federal income tax withheld from your distribution, you may be responsible for payment of estimated tax.

If you intend to make a rollover deposit of the distribution you are receiving, you should consider the election not to have tax withheld.

Your withholding election will remain in effect until you revoke it and will be honored for all future distributions from this IRA. You may revoke an election by completing an IRS Form W-4P or another distribution request form.

---

© Retirement Accounts, Inc. 2003

RAI-3114 (1/03)