**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Oren J. Warshavsky
Nicholas J. Cremona
Seanna R. Brown
Torello Calvani

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the Chapter 7 Estate of Bernard L. Madoff*

**Status Conference: March 17, 2021
Time: 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |

**STATUS REPORT ON SIPA LIQUIDATION PROCEEDING
AND ALL RELATED ADVERSARY PROCEEDINGS PENDING
<u>BEFORE THE HONORABLE CECELIA G. MORRIS</u>**

## TABLE OF CONTENTS

**Page**

I.  OVERVIEW OF TRUSTEE'S RECOVERY EFFORT AND DISTRIBUTIONS
TO BLMIS CUSTOMERS ........................................................................................1

II.  CASE ADMINISTRATION.......................................................................................2

    A.  Procedural Orders ...........................................................................................2

        (a)  Litigation Procedures Order...............................................................2

        (b)  Settlement Procedures Order .............................................................3

        (c)  Orders Granting Authority to Stipulate to Extensions of Time to
Respond and Adjourn Pre-Trial Conferences ...................................3

        (d)  Order Appointing a Discovery Arbitrator ..........................................3

    B.  General Practices .............................................................................................4

        (a)  Applications for Interim Compensation..............................................4

        (b)  Interim Reports ..................................................................................4

        (c)  Allocation of Customer Property and Interim Distribution Motions...........5

III.  CLAIMS ADMINISTRATION..................................................................................5

IV.  GOOD FAITH ACTIONS ..........................................................................................6

        (a)  Procedural Posture and Next Steps Pursuant to Avoidance
Procedures..........................................................................................7

        (b)  Matters Pending in District Court ......................................................8

V.  PROCEEDINGS IMPACTED BY THE APPEAL OF THE STANDARD FOR
"GOOD FAITH" UNDER SECTION 548(c) AND 550(b) OF THE
BANKRUPTCY CODE................................................................................................9

    A.  Procedural Background on Good Faith Defense Under Sections 548(c) and
550(b)..............................................................................................................10

    B.  Brief Discussion of Exemplar Feeder Fund Cases .................................................17

    C.  Subsequent Transfer Cases ...................................................................................22

TO THE HONORABLE CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as Trustee for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa-*lll*, and the Chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and collectively, the "Debtors"), respectfully submits this report on the status of remaining matters presently before the Honorable Cecelia G. Morris.

## I.    OVERVIEW OF TRUSTEE'S RECOVERY EFFORT AND DISTRIBUTIONS TO BLMIS CUSTOMERS

1.    As of February 26, 2021, the Trustee has recovered or reached agreements to recover approximately $14.413 billion since this inception of this SIPA Liquidation on December 11, 2008 (the "Filing Date"). The Trustee has made twelve distributions to customers of an aggregate amount of more than $14.16 billion, which includes approximately $849.8 million in advances committed by the Securities Investor Protection Corporation ("SIPC"). To date, BLMIS customers have received approximately 69.848 percent of their allowed claim, unless that claim has been fully satisfied.[2]

2.    The Trustee's recoveries have been principally comprised of proceeds from over 1,100 avoidance actions that he commenced in or around 2010. As more fully set forth below, those actions generally consisted of adversary proceedings in the following categories: (i) "Good Faith" cases (cases where the Trustee acknowledges that the defendants received the transfers from BLMIS in "good faith" within the meaning of 11 U.S.C. § 548(c)); (ii) "Bad Faith" cases (cases

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] The Trustee maintains a website, www.madofftrustee.com, with distribution information, copies of filings, press releases, and other pertinent information for BLMIS customers, creditors, and the public.

against family members, employees, friends, and other insiders where the Trustee alleges that the defendants were on notice of fraud at BLMIS); (iii) "Feeder Fund" cases (cases against financial institutions and feeder funds that held BLMIS accounts where the Trustee alleges that the defendants were on notice of fraud at BLMIS); and (iv) and "Subsequent Transfer" cases (cases against financial institutions, funds of funds, service providers, and management entities and individuals that received transfers from the Feeder Funds).[3]

## II.    CASE ADMINISTRATION

### A.    **Procedural Orders**

#### (a)    **Order Establishing Omnibus Claims Procedures**

3.    On December 23, 2008, the Court entered the Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices Procedures for Filing, Determination, and Adjudication of Claims; and Providing Other Relief *See* 08-01789 ECF No. 12 (the "Claims Procedures Order") which approved the Trustee's proposed procedures related to the resolution of customer claims, claims determinations and the adjudication of objections. As more fully discussed in Section III below, the Trustee continues to resolve pending objections to the Trustee's claims determinations pursuant to the Claims Procedures Order.

#### (b)    **Litigation Procedures Order**

4.    On November 10, 2010, the Court entered the Order (1) Establishing Litigation Case Management Procedures for Avoidance actions and (2) Amending the February 16, 2010 Protective Order approving the Trustee's proposed litigation case management procedures for certain avoidance actions. *See* 08-01789, ECF No. 3141. The Avoidance Procedures govern all remaining Good Faith actions, described in more detail below.

---

[3] The Trustee provides these descriptions of the categories of active cases for the Court's convenience only and should not be construed as a concession or judicial admission as to the Trustee's proofs in any case or category of cases.

### (c)    Settlement Procedures Order

5.    On November 10, 2010, the Court entered the Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Granting Authority and Establishing Procedures for Settlement Agreements in Connection with Avoidance Actions Filed by the Trustee. *See* 08-01789, ECF No. 3181 (the "Settlement Procedures Order"). Pursuant to the Settlement Procedures Order, the Trustee has authority, without further Court approval, to enter into settlement agreements with BLMIS transferees in final settlement of avoidable transfers and to grant releases to such transferees in connection with an avoidable transfer of which the face value is less than $20,000,000.

### (d)    Order Appointing a Discovery Arbitrator

6.    On October 4, 2016, the Court entered an Order Appointing a Discovery Arbitrator Pursuant to Bankruptcy Rule 9019(c) and General Order M-390. *See* 08-01789, ECF No. 14227. In an effort to establish a uniform, efficient, and fair framework for dealing with discovery disputes, the Honorable Frank Maas (ret.) was appointed as Discovery Arbitrator, effective October 4, 2016, to resolve discovery disputes that may arise, and which have been specifically referred to him by the Court with the consent of the parties to the dispute, including discovery disputes related to electronically stored information, questions of privilege, confidentiality, work product, relevance, scope, and burden. This order provides for the procedures for referral of matters to the Discovery Arbitrator and for the resolution of dispute referred to him.

### (e)    Orders Granting Authority to Stipulate to Extensions of Time to Respond and Adjourn Pre-Trial Conferences

7.    On October 5, 2020, the Court entered the most recent Order Granting Supplemental Authority to Stipulate to Extensions of Time to Respond and Adjourn Pre-Trial Conferences up to and including June 30, 2021. *See* 08-01789, ECF No. 19826. Pursuant to this

Order, the Trustee and relevant parties may adjourn pre-trial conferences or responses to the applicable complaint through June 30, 2021.

**B.  General Practices**

**(a)  Applications for Interim Compensation**

8.    The Trustee and his retained professionals file applications for interim compensation and reimbursement of expenses every 120 days, or 3 times per year (generally in March, July, and November). The fee application filed in March covers the period between August 1 of the prior year and November 30 of the prior year. The fee application filed in July covers the period between December 1 of the prior year and March 31 of the current year. The fee application filed in November covers the period between April 1 of the current year and July 31 of the current year. Attorneys for the Trustee and all retained professionals filed their latest interim fee applications on March 8, 2021, which are all returnable before the Court on April 21, 2021.

**(b)  Interim Reports**

9.    The Trustee files interim reports every six months. The interim report generally includes status updates on multiple topics including financial condition of the estate, claims administration, proceedings relating to the interpretation of SIPA, avoidance actions, international investigation, recoveries, the allocation and interim distribution of customer property, and interim fee applications. The interim report filed in April covers the 6-month period between October 1 of the prior year and March 31 of the current year. The interim report filed in October covers the 6-month period between April 1 of the current year and September 30 of the current year. The Trustee filed his Twenty-Fourth Interim Report for the period April 1, 2020 through September 30, 2020, on October 28, 2020. *See In re: Bernard L. Madoff*, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y. Oct. 28, 2020), ECF No. 19896. The Trustee will file his twenty-fifth interim report in April 2021, and it will cover the period between October 1, 2020 and March 31, 2021.

### (c)    Allocation of Customer Property and Interim Distribution Motions

10.    The Trustee files motions for the allocation of customer property and interim distribution to customers when practicable, usually once per year. Most recently, the Trustee completed the twelfth pro rata interim distribution from the Customer Fund distributing more than $231 Million to eligible BLMIS customers. Each of the Trustee's distribution motions and the orders authorizing each distribution are listed in the twelfth distribution motion, *SIPC v. BLMIS*, 08-1789 (CGM), ECF No. 20066 at 6.

## III.    CLAIMS ADMINISTRATION

11.    Since the Filing Date, the Trustee has resolved over 4,236 objections to the Trustee's claims determinations. As of March 16, 2021, 229 objections remained.

12.    The following objections, among others, have been asserted: Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with BLMIS, the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method," claimants should receive interest on deposited amounts, the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments, claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits, each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account, and there is no legal basis for requiring the execution of a Assignment and Release prior to prompt payment of a SIPC advance.

13.    The Trustee departed from past practice in SIPA proceedings and with the agreement of SIPC and with advances from SIPC, has paid or committed to pay the undisputed

portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

14.     As part of his ongoing efforts to resolve pending objections, the Trustee has continued investigating and analyzing objections of claimants to the Trustee's determination of their claims. During this extensive review of the facts unique to each claimant, the Trustee has identified circumstances that require resolution by this Court. The Trustee has filed thirty-seven omnibus motions and brought other proceedings to resolve pending claims matters before the Court. As provided in Claims Procedures Order, if there is an objection to an omnibus claims motion, the trustee will enter into a scheduling order with that claimant for a hearing date at a later date. The trustee is awaiting resolution on multiple objections that relate to appeals as well and will file motions as appropriate at the resolution of those appeals.

## IV.    GOOD FAITH ACTIONS[4]

15.     To date, the Trustee has successfully resolved over 935 Good Faith actions resulting in over $1.3 billion in recoveries for the Customer Fund. As of March 16, 2021, there are 64 active Good Faith actions.[5] A complete list of these adversary proceedings is attached hereto Exhibit A. As discussed above, the Good Faith actions are subject to the Litigation Procedures Order. *See* 08-01789, ECF No. 3141.

---

[4] For a more detailed discussion of the status of the Good Faith actions, including recent decisions, and matters pending before the District Court, the Trustee refers the Court and the parties to: (i) Trustee's Twenty-Fourth Interim Report For The Period April 1, 2020 Through September 30, 2020, *In re: Bernard L. Madoff*, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y. Oct. 28, 2020), ECF No. 19896 (the "Interim Report"), at 16-31; (ii) Thirty-Fifth Application Of Trustee And Baker & Hostetler LLP For Allowance Of Interim Compensation For Services Rendered And Reimbursement Of Actual And Necessary Expenses Incurred From August 1, 2020 Through November 30, 2020, *In re: Bernard L. Madoff*, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y. March 8, 2021), ECF No. 20323 (the "Interim Fee Application"), at 26-42; and (iii) the Trustee's website (https://www.madofftrustee.com/).

[5] The parties in nine (9) of these actions have reached settlements in principle and the Trustee expects to consummate those settlements over the next few months.

(a)    **Procedural Posture and Next Steps Pursuant to Avoidance
Procedures**

16.    Discovery has been completed in all the Good Faith actions except for five related cases referred to early mediation, which remains ongoing.[6] Pursuant to the Avoidance Procedures, all the remaining cases may now proceed to mediation or dispositive motion. It is the Trustee's position that all the remaining cases are substantially the same and amenable to disposition as a matter of law pursuant to this Court's recent decision in *Picard v. Estate of Seymour Epstein*, Adv. Pro. No. 10-04438 (Bankr. S.D.N.Y. Jan. 27, 2021), ECF No. 155, (the "*Epstein Decision*") ("All of Defendants' legal arguments in opposition to this summary judgment motion were previously decided and law of the case.") (citing *Picard v. Nelson*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case.").

17.    While the Trustee is open to mediation in the remaining cases where the parties mutually agree that mediation would be productive, the Trustee intends to seek leave to file summary judgment motions in the majority of the cases consistent with Local Bankruptcy Rule 7056-1. *See* Avoidance Procedures, ¶ 6.B. To the extent that the cases are not resolved through mediation or by dispositive motion, the Trustee intends to proceed to trial before this Court. *See* Avoidance Procedures, ¶ 7.

---

[6] *Picard v. James P. Marden, Iris Zurawin Marden, and Patrice M. Auld*, Adv. Pro. No. 10-04341; *Picard v. Patrice M. Auld, Merritt Kevin Auld, and James P. Marden*, Adv. Pro. No. 10-04343; *Picard v. Marden Family Limited Partnership, et al.*, Adv. Pro. No. 10-04348; *Picard v. Charlotte M. Marden, et al.*, Adv. Pro. No. 10-05118; *Picard v. Bernard Marden Profit Sharing Plan, Patrice M. Auld, and James P. Marden*, Adv. Pro. No. 10-05168.

### (b)    Matters Pending in District Court[7]

18.    Presently, eleven Good Faith actions are pending in District Court following motions to withdraw the reference filed by defendants over the last year.[8] The Trustee has opposed or intends to oppose the motions in 7 of those cases based on, among other reasons, the Trustee's assertion that defendants impliedly or expressly consented to this Court's final adjudicative authority.[9] In four cases, the automatic reference has been withdrawn from this court and the parties have filed cross-motions for summary judgment before the District Court.[10] Most recently, Judge Furman issued a decision on the parties' motions for summary judgment and scheduled a status conference on March 18, 2021 to discuss next steps in the case, including the nature of and deadline for submission of pretrial materials, the scheduling of trial, and whether settlement is possible.[11]

---

[7] For a more detailed discussion of the status of the Good Faith actions pending in the District Court, including recent decisions, the Trustee refers the Court and the parties to: (i) the Interim Report at pp. 21-31; (ii) the Interim Fee Application at pp. 28-42; and (iii) the Trustee's website (https://www.madofftrustee.com/).

[8] *Picard v. RAR Entrepreneurial Fund LTD*, Adv. Pro. No. 10-04352, No. 20-cv-01029 (JMF) (S.D.N.Y.); *Picard v. Lisa Beth Nissenbaum Trust*, Adv. Pro. No. 10-04878, No. 20-cv-03140 (JGK) (S.D.N.Y.); *Picard v. Zieses Investment Partnership*, Adv. Pro. No. 10-04669, No. 20-cv-02872 (VSB) (S.D.N.Y.); *Picard v. JABA Associates LP*, Adv. Pro. No. 10-05128, No. 20-cv-03836 (JGK) (S.D.N.Y.); *Picard v. Andrew M. Goodman*, Adv. Pro. No. 10-04709, 20-cv-04767 (MKV) (S.D.N.Y.); *Picard v. Sage Associates*, Adv. Pro. No. 10-04362, No. 20-cv-10057 (AJN) (S.D.N.Y.); *Picard v. Sage Realty*, Adv. Pro. No. 10-04400, No. 20-cv-10109 (AJN) (S.D.N.Y.); *Picard v. Jacob M. Dick Rev Living Trust DTD 4/6/01*, Adv. Pro. No. 10-04570, No. 21-cv-00706 (JPO) (S.D.N.Y.); *Picard v. Estate of James M. Goodman*, Adv. Pro. No. 10-04762, No. 21-cv-00907 (VSB) (S.D.N.Y.); *Picard v. Estate of James M. Goodman*, Adv. Pro. No. 10-05079, No. 21-cv-01763 (LJL) (S.D.N.Y.); and *Picard v. Boyer H. Palmer*, Adv. Pro. No. 10-05133.

[9] *Picard v. Andrew M. Goodman*, Adv. Pro. No. 10-04709, 20-cv-04767 (MKV) (S.D.N.Y.); *Picard v. Sage Associates*, Adv. Pro. No. 10-04362, No. 20-cv-10057 (AJN) (S.D.N.Y.); *Picard v. Sage Realty*, Adv. Pro. No. 10-04400, No. 20-cv-10109 (AJN) (S.D.N.Y.); *Picard v. Jacob M. Dick Rev Living Trust DTD 4/6/01*, Adv. Pro. No. 10-04570, No. 21-cv-00706 (JPO) (S.D.N.Y.); *Picard v. Estate of James M. Goodman*, Adv. Pro. No. 10-04762, No. 21-cv-00907 (VSB) (S.D.N.Y.); *Picard v. Estate of James M. Goodman*, Adv. Pro. No. 10-05079, No. 21-cv-01763 (LJL) (S.D.N.Y.); and *Picard v. Boyer H. Palmer*, Adv. Pro. No. 10-05133.

[10] *Picard v. RAR Entrepreneurial Fund LTD*, Adv. Pro. No. 10-04352, No. 20-cv-01029 (JMF) (S.D.N.Y.); *Picard v. Lisa Beth Nissenbaum Trust*, Adv. Pro. No. 10-04878, No. 20-cv-03140 (JGK) (S.D.N.Y.); *Picard v. Zieses Investment Partnership*, Adv. Pro. No. 10-04669, No. 20-cv-02872 (VSB) (S.D.N.Y.); *Picard v. JABA Associates LP*, Adv. Pro. No. 10-05128, No. 20-cv-03836 (JGK) (S.D.N.Y.).

[11] *Picard v. RAR Entrepreneurial Fund LTD*, No. 20-cv-01029 (JMF), 2021 WL 827195 (S.D.N.Y. Mar. 3, 2021), ECF No. 43.

## V.    PROCEEDINGS IMPACTED BY THE APPEAL OF THE STANDARD FOR "GOOD FAITH" UNDER SECTION 548(c) AND 550(b) OF THE BANKRUPTCY CODE

19.    The Trustee brought adversary proceedings under SIPA and the Bankruptcy Code to recover property that was fraudulently transferred by BLMIS against defendants who were alleged to have had notice of BLMIS's fraud, or "bad faith" defendants. Those bad faith cases are referred to above as Bad Faith, Feeder Fund, and Subsequent Transfer cases.

20.    To date, the Trustee has successfully resolved approximately 50 Bad Faith and Feeder Fund cases[12] resulting in recoveries of over $11.6 billion. There is one Bad Faith case (*Picard v. Avellino*, Adv. Pro. No. 10-05421 (CGM)), and ten Feeder Fund cases subject to ongoing litigation. A complete list of these adversary proceedings is attached hereto Exhibit B. Four of these cases, *Picard v. Avellino*, Adv. Pro. No. 10-05421 (CGM), *Picard v. HSBC Bank PLC*, Adv. Pro. No. 09-01364 (CGM), *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04530 (CGM), and *Picard v. UBS AG*, Adv. Pro. No. 10-04285 (CGM) are in active discovery.

21.    As of March 16, 2021, there are 82 active Subsequent Transferee actions where the Trustee sued defendants to recover customer property that was subsequently transferred by BLMIS Feeder Funds. A complete list of these adversary proceedings is attached hereto Exhibit C.

22.    Through the Bad Faith, Feeder Fund, and Subsequent Transferee actions, the Trustee is seeking to recover over $3.8 billion[13] in stolen funds that should be returned to BLMIS customers. Each of these remaining cases are likely to be impacted by the appeal pending in the Second Circuit on the good faith defense under sections 548(c) and 550(b), as described below.

---

[12] For a more detailed discussion of the status of the Bad Faith and Feeder Fund actions, including recent decisions, the Trustee refers the Court and the parties to: (i) the Interim Report at 43-57; (ii) the Interim Fee Application at 57-64; and (iii) the Trustee's website (https://www.madofftrustee.com/).

[13] This amount does not include any prejudgment interest that may be awarded. *See, e.g.*, *Picard v. BAM L.P.*, Adv. Pro. No. 10-04390 (Bankr. S.D.N.Y. Dec. 11, 2020), ECF No. 247 (awarding Trustee 4% prejudgment interest from date of complaint through date of the judgment).

A.    **Procedural Background on Good Faith Defense Under Sections 548(c) and 550(b)**

23.    When the Trustee brought his intentional fraudulent transfer claims under section 548(a)(1)(A), he met his pleading burden under governing case law by alleging that BLMIS was a Ponzi scheme and that the defendants received transfers from BLMIS. *See Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),* 440 B.R. 243, 255–56 (Bankr. S.D.N.Y. 2010) (citing *Bear, Sterns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 8 (S.D.N.Y. 2007)); *see also Bayou Superfund, LLC v. WAM Long/Short Fund II L.P., (In re Bayou Grp., LLC)*, 362 B.R. 624, 639 (Bankr. S.D.N.Y. 2007). The burden then shifted to defendants to prove their affirmative defense, as set forth in section 548(c), that they received the transfers for value and in good faith. *See Merkin*, 440 B.R. at 256 (citing *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 508 (Bankr. S.D.N.Y. 2002)).

24.    From 2009 through 2011, bad faith defendants brought motions to dismiss the Trustee's complaints under Federal Rule of Civil Procedure 12(b)(6), claiming, *inter alia*, that the Trustee had not adequately pled a lack of good faith on the part of the defendant. *See, e.g., Merkin*, 440 B.R. at 255–56; *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 331 (Bankr. S.D.N.Y. 2011); *Picard v. Estate of Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 220–21 (Bankr. S.D.N.Y. 2011).

25.    As to this argument, the Bankruptcy Court (Lifland, J.) denied the motions. *See Merkin*, 440 B.R. at 273; *Cohmad*, 454 B.R. at 342; *Chais*, 445 B.R. at 221. The Bankruptcy Court found that "a trustee need not dispute a transferee's good faith defense upon the face of the Complaint. Rather, the transferee bears the burden of establishing its good faith under section 548(c) of the Code as an *affirmative defense* that 'may be raised and proved by the transferee at trial.'" *Merkin*, 440 B.R. at 256 (citation omitted) (quoting *Bayou Superfund*, 362 B.R. at 639);

10

*see also Cohmad*, 454 B.R. at 331; *Chais*, 445 B.R. at 220–21. Accordingly, the Bankruptcy Court found defendants' arguments regarding section 548(c) of the Code irrelevant to the Trustee's pleading burden.

26.    Beginning in 2011, hundreds of defendants moved the District Court to withdraw its reference to the Bankruptcy Court. The District Court withdrew the reference on numerous issues, including the issues bulleted below, and directed the parties to undertake common briefing. The second indented bullet lists the decision of the District Court on each issue and any decisions on appeal related to the same:

- whether the Supreme Court's decision in *Stern v. Marshall* precluded the Bankruptcy Court from entering final judgment on the Trustee's claims and therefore mandated withdrawal of the reference to Bankruptcy Court. 131 S. Ct. 2594 (2011); *see* Order, *SIPC v. BLMIS*, No. 12 MC 0115 (JSR) (S.D.N.Y. Apr. 13, 2012), ECF No. 4;

  o *SIPC v. BLMIS*, 490 B.R. 46 (S.D.N.Y. 2013).

- whether the Trustee's claims against certain defendants should be dismissed in light of the defendants' affirmative defense of antecedent debt. *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 107;

  o *SIPC v. BLMIS*, 499 B.R. 416 (S.D.N.Y. 2013); *aff'd*, *Picard v. Gettinger*, 976 F.3d 184 (2d Cir. 2020).

- whether § 546(e) of the Bankruptcy Code precludes the Trustee's claims under 11 U.S.C. §§ 544, 547, and 548(a)(1)(B). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 22;

  o *Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012); *aff'd*, *Picard v. Fishman*, 773 F.3d 411 (2d Cir. 2014).

- whether the Trustee is entitled to employ § 502(d) of the Bankruptcy Code against defendants accused of receiving avoidable transfers. *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155;

  o *SIPC v. BLMIS*, 513 B.R. 437 (S.D.N.Y. 2014).

- whether the Supreme Court's ruling in *Morrison v. National Australia Bank Ltd.*, as applied to SIPA or the Bankruptcy Code, bars the Trustee's claims against certain defendants. 130 S. Ct. 2869 (2010); *see* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 6, 2012), ECF No. 167;

  o *SIPC v. BLMIS*, 513 B.R. 222 (S.D.N.Y. 2014), supplemented, No. 12-MC-115 JSR, 2014 WL 3778155 (S.D.N.Y. July 28, 2014); *rev'd*, *In re Picard*, 917 F.3d 85 (2d Cir. 2019), *cert. denied,* 140 S. Ct. 2824 (2020).

- whether SIPA or the securities laws alter the standards for determining good faith under either §§ 548(c) or 550(b) of the Bankruptcy Code. *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 23, 2012), ECF No. 197;

  o *SIPC v. BLMIS*, 516 B.R. 18 (S.D.N.Y. 2014) (the "*Good Faith Decision*"); appeals *sub judice* before the Second Circuit, *Picard v. Citibank*, 20-1333 (2d Cir.) and *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir.).

27.    With regard to the pleading burden, although good faith is an element of the affirmative defense to actions under sections 548 and 550, the District Court held that, in SIPA cases, a SIPA trustee must *plead* the absence of good faith, with particularized allegations, as part of his *prima facie* case to avoid and recover transfers under the Bankruptcy Code. *SIPC v. BLMIS*, 516 B.R. 18, 23–24 (S.D.N.Y. 2014). The Court reasoned that the usual rule that a defendant bears the burden of pleading an affirmative defense "would totally undercut SIPA's twin goals of maintaining marketplace stability and encouraging investor confidence." *Id.* at 24.

28.    With regard to the standard used to evaluate a transferee's lack of good faith, the District Court discarded the objective "inquiry notice" standard that governed the good faith affirmative defense for over a century. In its place, the District Court held that for purposes of SIPA recovery actions, "'good faith' means that the transferee neither had actual knowledge of the . . . fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud." *Id.* at 23. The District Court reasoned that because a securities investor has no inherent duty to inquire about his stockbroker, the inquiry notice standard that usually applied to avoidance

actions was "unfair and unworkable." *Id*. at 22. The District Court then returned the withdrawn actions to the Bankruptcy Court for further proceedings consistent with its ruling. *Id*. at 24.

29.     The Trustee moved for certification of an interlocutory appeal, and numerous defendants opposed. *SIPC v. BLMIS (In re Madoff Sec.)*, No. 12-mc-00115, ECF Nos. 544, 550 (S.D.N.Y. June 23 & July 2, 2014). The District Court denied certification, holding that the Second Circuit should review the *Good Faith Decision* only after the Bankruptcy Court determined, in individual cases, whether the Trustee sufficiently pleaded a given defendant's willful blindness. *SIPC v. BLMIS*, 516 B.R. at 25–26 (S.D.N.Y. July 21, 2014).

30.     Two months later, the District Court concluded that because section 550(b) does not apply extraterritorially, the Trustee must plead certain facts to establish that the subsequent transfers he seeks to recover are "domestic" transfers. *SIPC v. BLMIS (In re Madoff)*, 513 B.R. 222, 232 n.4 (S.D.N.Y. 2014) (the "*District Court ET Decision*"). Alternatively, the District Court held that recovery of subsequent transfers received from an entity in foreign liquidation proceedings would violate principles of international comity. *Id.* at 231–32. Following these decisions, the District Court returned the cases to this Court. Order Entered July 10, 2014, *In re Madoff Sec.*, No. 12-mc-115 (JSR) (S.D.N.Y.), ECF No. 552.

31.     In view of the altered pleading standards, the Trustee filed an Omnibus Motion for Leave to Replead Pursuant to Federal Rule Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion") in August 2014. Mem. of Law on Omnibus Mot., *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (CGM), ECF No. 7827. In this motion, the Trustee sought leave to file amended complaints with allegations sufficient to meet the new standards articulated by the District Court and leave to take limited discovery.

32.    In September 2014, at a status conference on the Omnibus Motion, defense counsel argued that pending motions to dismiss based on extraterritoriality should be addressed prior to the Trustee's request for discovery. Hr'g Tr. of Sept. 17, 2014 at 16:14–17, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y. Nov. 11, 2014), ECF No. 8636. In December 2014, this Court agreed, and stayed proceedings on the Omnibus Motion until after the extraterritoriality proceedings concluded. *See* Order at ¶ 14, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y.), ECF No. 8800 ("December 10 Scheduling Order") (staying proceedings on the Trustee's request for discovery and to replead based on good faith until after the Court ruled on the Defendants' motion to dismiss based on extraterritoriality).[14]

33.    In November 2016, this Court issued its ruling on extraterritoriality. *See SIPC v. BLMIS (In re Madoff)*, Adv. Pro. No. 08-01789 (CGM), 2016 WL 6900689, at *36 (Bankr. S.D.N.Y. Nov. 22, 2016) (the "*Bankruptcy Court ET Decision*"). That ruling resulted in partial dismissals of the Trustee's claims in approximately 20 actions and a complete dismissal of approximately 70 actions. The Trustee appealed that ruling to the Second Circuit, which reversed the decisions of the District Court and Bankruptcy Court. *In re Picard*, 917 F.3d 85 (2d Cir. 2019). In June 2020, the Supreme Court denied *certiorari*. *HSBC Holdings PLC v. Picard*, 140 S. Ct. 2824 (2020)

34.    While the Trustee's appeal on extraterritoriality was pending before the Second Circuit, in July 2017, this Court ordered proceedings "solely on the Good Faith Limited Discovery Issue" of the Omnibus Motion for those actions that remained pending. Order at ¶¶ 1, 4, Adv. Pro. No. 08-1789 (CGM) (Bankr. S.D.N.Y. July 24, 2017), (ECF No. 16428). That order deferred

---

[14] The December 10 Scheduling Order was subsequently modified three times. *See* 08-1789, ECF Nos. 8990, 9350, 9720. None of the subsequent orders modified the original paragraph 14 of the December 10 Order concerning discovery and repleading as to good faith. *See also* Hr'g Tr. of Sept. 17, 2014 at 27:17–25, 08-1789 (Nov. 11, 2014), ECF No. 8636.

proceedings on the issue of leave to replead concerning the Good Faith Issue in the Omnibus

Motion until after the Court's disposition on the Trustee's request for limited discovery. In June

2018, the Court denied the Trustee's request for limited discovery concerning good faith. *SIPC v.*

*BLMIS*, 2018 WL 2734825 (Bankr. S.D.N.Y. June 5, 2018).

35.     Thereafter, the Trustee moved for leave to amend his complaints to comport with

the new standard articulated in the *Good Faith Decision* without any additional discovery on that

issue. Judge Bernstein denied leave to amend in three separate cases against *Citibank, Fortis,* and

*RBS*, finding that the Trustee did not plead sufficient facts to meet the willful blindness standard.

*See Picard v. Citibank, N.A.*, 608 B.R. 181 (Bankr. S.D.N.Y. 2019); *Picard v. ABN Amro Bank*

*(Ireland) Ltd (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Limited)*, Adv. Pro. No. 10-05355

(SMB), 2020 WL 401822 (Bankr. S.D.N.Y. Jan. 23, 2020); *Picard v. ABN AMRO Bank N.A.*, Adv.

Pro. No. 10-05354 (SMB), 2020 WL 1584491 (Bankr. S.D.N.Y. March 31, 2020). Because the

*Citibank* decision was the first to result in a final judgment, the Trustee was finally able to appeal

Judge Rakoff's 2014 ruling on good faith to the Second Circuit.

36.     Proceeding on a slightly different track was the Trustee's case against Legacy

Capital and Khronos. Following the return of the cases from Judge Rakoff in 2014, the Trustee

filed an amended complaint in the Bankruptcy Court and defendants Legacy and Khronos moved

to dismiss, arguing that the Trustee had not adequately alleged willful blindness on the face of his

complaint. The Bankruptcy Court agreed, dismissing those counts of the Trustee's complaint for

which lack of good faith was an element of the affirmative defense under section 548(c) for initial

transferee Legacy and under section 550(b) for subsequent transferee Khronos. *Picard v. Legacy*

*Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13 (Bankr. S.D.N.Y. 2016). The

Court did not dismiss counts relating to transfers of fictitious profits to defendants. *See Picard v.*

*Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y.

2016). After the parties engaged in discovery, in December 2018, the Trustee moved for summary judgment,[15] which was granted in part.[16] Thereafter, the parties stipulated to judgment concerning the transfers of fictious profits, and a final judgment was entered on November 12, 2019.[17]

37.    With two final judgments in hand, the Trustee sought and obtained direct appeals to the Second Circuit on the issues of the good faith defense presented by the *Citibank* and *Legacy* cases. The appeals present two common issues:

- Whether the District and Bankruptcy Courts erred by holding that transferees on inquiry notice of a broker-dealer's fraud nevertheless are protected by the statutory "good faith" defense so long as they do not willfully blind themselves to the fraud.

- Whether the District and Bankruptcy Courts erred by holding that SIPA shifts the burden of pleading a transferee's affirmative defense of good faith to the plaintiff-trustee.

*See* Appellant Brief at 2, *Picard v. Citibank, N.A.*, No. 20-1333 (2d Cir. Aug. 6, 2020), ECF No. 78; Appellant Brief at 2, *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir. Aug. 6, 2020), ECF No. 73.

38.    Each appeal also presents the issue of whether, if the District Court did not err with respect to the standard for good faith or the pleading burden, whether the Bankruptcy Court therefore erred by either denying the Trustee leave to amend his complaint (*Citibank*) or dismissing certain claims in the Trustee's amended complaint (*Legacy*) where the Trustee had plausibly pleaded defendants' willful blindness to fraud at BLMIS. *Id.* The Second Circuit heard the appeals in tandem on March 12, 2021 before Circuit Judges Wesley, Sullivan, and Menashi.

---

[15] *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-5286, ECF No. 192.

[16] *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 603 B.R. 682 (Bankr. S.D.N.Y. 2019).

[17] *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-5286, ECF No. 231.

39.     The outcome of these appeals will likely affect the trajectory of all 93 remaining cases in which the good faith defense is implicated.

**B.      Brief Discussion of Exemplar Feeder Fund Cases**

40.     The *Legacy* and *Citibank* cases are emblematic of the Trustee's remaining litigations where the Trustee asserts that the defendants received transfers in bad faith. There were a variety of entities, like Legacy, that operated as so-called "Feeder Funds." In general, this term was used to refer to funds that pooled investors' assets to invest with BLMIS.

41.     The Trustee brought claims against some of those Feeder Funds, like Legacy, as well as the individuals and entities affiliated with those funds and/or subsequent transferees of those Feeder Funds. For example, the Trustee brought an action against several affiliated Feeder Funds and their service providers, under the caption *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (the "*HSBC* Action"). The Trustee's brought the *HSBC* Action against both initial and subsequent transferees. *Id.,* ECF No. 34 (corrected at ECF No. 170). The initial transferees included the following foreign Feeder Funds (with location of incorporation): (i) Alpha Prime Fund (Bermuda); (ii) Primeo Fund (Cayman); (iii) Herald (Cayman); (iv) Herald (LUX), SICAV (Luxembourg); (v) Senator Fund (Cayman); (vi) Hermes International Fund Limited (BVI); (vii) Lagoon Investment Limited (BVI); (viii) Thema Fund, Ltd. (BVI); (ix) Thema Wise Limited (BVI); and (x) Thema International Fund, Limited (Ireland). The subsequent transfer defendants in the *HSBC* action also included over 50 different entities and individuals that acted as service providers for the above listed foreign Feeder Funds. In addition, the Trustee also sought to recover subsequent transfers received by the HSBC from other Feeder Funds, including the "Fairfield Funds" managed by the Fairfield Greenwich Group, the "Tremont Funds" managed by Tremont Partners, Inc., and Harley International (Cayman) Limited ("Harley"), all initial transferees against whom the Trustee had brought separate actions.

42.     The defendants made a variety of motions to withdraw the reference, *see, e.g., id.*, ECF Nos. 38, 42, 132, 135, 140, 176, 179, 185, 200, 203; all defendants in the *HSBC* Action were parties to the *Good Faith Decision* and the *District Court ET Decision*. The *HSBC* Action was returned to the Bankruptcy Court on July 30, 2014 and August 1, 2014. *Id.*, (ECF Nos. 308-12). As described more generally above, in light of the new pleading burden set forth in the *Good Faith Decision*, as well as the issues raised in the *District Court ET Decision*, the Trustee sought to amend. *Id.*, (ECF No. 314). As the initial transferees in the *HSBC* Action were all foreign funds, all of the subsequent transferee defendants moved to dismiss the Trustees claims based on the *District Court ET Decision*. *See, e.g., id.*, ECF Nos. 355-58. As indicated above, that motion was largely granted by the *Bankruptcy Court ET Decision*.

43.     Though the Trustee's case against the subsequent transfer defendants was following the omnibus procedures, the Trustee continued his case against the initial transferees. This resulted in settlements with: (i) Herald and Primeo, resulting in over $486 Million in value to the fund of customer property, *id.*, ECF No. 338; (ii) Senator, which added over $113 Million, *id.*, ECF No. 339; (iii) Herald (Lux), which added over $25 Million, *id.*, ECF No. 352; (iv) Lagoon and Hermes, which added over $240 Million, *id.*, ECF No. 459; (v) Thema Wise and Thema Fund, which added over $130 Million, *id.*, ECF No. 460; and (vi) Thema International, which added $687 Million, *id.*, ECF No. 478.

44.     The Trustee continued to litigate with the sole remaining initial transferee, Alpha Prime. In 2018, the parties entered a partial settlement, leaving certain issues to be litigated. *Id.*, ECF No. 497. The parties consented to appoint Hon. Frank Maas as a discovery arbitrator, who then entered a case management plan. *Id.*, ECF Nos. 498-99. The Trustee has had some similar cases proceed before Judge Maas as a discovery arbitrator, including *Picard v. Federico Ceretti, et al.*, Adv. Pro. No. 09-01161, ECF No. 290. In July 2019, Alpha Prime filed a motion for

judgment on the pleadings, based on the fact that the Trustee's 2010 complaint did not meet the higher pleading standard. *Picard v. HSBC*, Adv. Pro. No. 09-01364, ECF Nos. 545–47. The Trustee opposed that motion and cross moved to: (1) file an amended complaint to meet the various pleading burdens that had been instituted subsequent to the filing of the complaint in 2010; and (2) sever the HSBC parties. *Id.*, ECF Nos. 548–49. Alpha Prime opposed the motion, *id.*, ECF No. 552, and this Court, having found that the Trustee's complaint pleads actual knowledge against Alpha Prime, granted the Trustee's motion to amend and denied the Trustee's motion to sever. *Id.,* ECF No. 566. The Trustee and Alpha Prime are engaged in discovery and continuing to litigate the remaining issues. *See*, *e.g.*, *id.,* ECF No. 656. Judge Maas remains the discovery arbitrator.

45.     In June 2020, the Supreme Court denied *certiorari* on the issue of extraterritoriality, and the mandate was returned to the Bankruptcy Court. As such, a variety of HSBC entities are now back in this case, facing subsequent transfer claims for transfers they received from Alpha Prime, the Fairfield Funds, the Tremont Funds, and Harley. However, as further explained below, because Judge Bernstein indicated that he would not consider motions related to bad faith given the pending appeals in *Citibank* and *Legacy*, the Trustee and the HSBC Defendants have not proceeded further with the case—whether by a motion to amend or a motion to dismiss.

46.     The guidance from Judge Bernstein came in connection with a different case, *Picard v. UBS et al.,* Adv. Pro. No. 10-04285 (the "*Luxalpha* Action"). In the *Luxalpha* Action, the Trustee brought fraudulent transfer claims against two foreign Feeder Funds, Luxalpha and Groupement Financier, Adv. Pro. No. 10-04285, ECF. No. 1. In the *Luxalpha* Action, the Trustee also brought subsequent transfer claims against the service providers to these funds. Because many of the defendants were foreign, and all were alleged to have acted without good faith, this case followed the trajectory of the *HSBC* Action. Similar to the rulings in the *HSBC* Action, the

subsequent transfer defendants were ultimately dismissed under the *Bankruptcy Court ET Decision*.

47.    While various issues were *sub judice*, the Trustee sought to take discovery of the defendants in the *Luxalpha* Action. *Id.,* ECF No. 224. The defendants opposed such discovery, and ultimately this Court allowed the Trustee to serve foreign discovery under the Hague Convention (but not party discovery under the Federal Rules). *Id.,* ECF Nos. 227-28. The Trustee and Luxalpha explored settlement, and ultimately went to mediation. *Id.,* ECF Nos. 243-44. After mediation failed, the parties agreed to a schedule and the Trustee filed a motion to amend. *Id.,* ECF No. 247. The Trustee's motion and amended complaint was limited to the initial transferees—Luxalpha and Groupement Financier—as the Supreme Court had not yet ruled on the petition for certiorari with respect to the extraterritoriality issue. Groupement Financier stipulated to the Trustee's amendment, subject to the right to make a motion to dismiss, *id.,* ECF No. 253, while Luxalpha opposed the Trustee's motion and moved in the alternative to have its customer claim allowed. *Id.,* ECF No. 251. The motions were fully briefed and scheduled for oral argument on June 24, 2020. Prior to that hearing, Judge Bernstein called a conference and advised the parties that the Court would not be considering the parties' motion until after the Second Circuit decided the appeal in the *Legacy* and *Citibank* actions. *Id.,* ECF No. 261. It was this *Luxalpha* conference—and in particular Judge Bernstein's position that the standard for reviewing the sufficiency of the Trustee's pleadings could change by virtue of the Second Circuit's ruling in the *Legacy* and *Citibank* actions—that the defendants in a number of cases, including the *HSBC* Action, relied upon to effectively stay proceedings until after the Second Circuit's ruling. Notwithstanding the uncertainty concerning the pleadings, the Trustee and Luxalpha have agreed to commence discovery and Hon. Frank Maas was appointed as a discovery arbitrator. ECF No. 265.

48.    As the *HSBC* Action and many of the subsequent transfer actions discussed below

seek to recover subsequent transfers from one or more of the Fairfield Funds, it is worthwhile to

raise the Fairfield matter, with which the Court already has familiarity. On May 18, 2009, the

Trustee filed a complaint against Fairfield Sentry Limited, Greenwich Sentry, L.P., and Greenwich

Sentry Partners, L.P., *Picard v. Fairfield Inv. Fund Ltd., et al.*, Adv. Pro. No. 09-01239, ECF No.

1. On July 20, 2010, the Trustee amended his complaint, naming a variety of other entities and

individuals, including additional Fairfield funds and the individuals and entities that were

responsible for the marketing and operations of the Fairfield funds (collectively, "Fairfield

Management"). *Id.,* ECF No. 23. Fairfield was the largest Madoff Feeder Fund; the Trustee's

Amended Complaint sought to avoid $4.7 billion in initial transfers to Fairfield, about $3.2 billion

of which was transferred in the six years prior to Madoff's collapse and about $1.7 billion of which

was transferred in the two years prior to Madoff's collapse.

49.    In 2011, The Trustee entered into a settlement with Kenneth Krys and Joanna Lau,

the foreign Liquidators for the Fairfield Sentry, Fairfield Sigma, and Fairfield Lambda funds

(again, the "Fairfield Funds"). *Id.,* ECF No. 69. Shortly thereafter, the Trustee entered into a

separate settlement agreement with Greenwich Sentry, L.P. And Greenwich Sentry Partners. *Id.,*

ECF No. 71. However, the Trustee's claims against Fairfield Management remained. The foreign

Liquidators have their own Chapter 15 proceeding in this Court, *In re Fairfield Sentry Limited et*

*al.*, Case No. 10-13164, brought their own claim against the Fairfield Management. *Fairfield*

*Sentry Limited v. Fairfield Greenwich Group et al.*, Adv. Pro. No. 10-03800. Under the settlement

the foreign Liquidators assigned their claims against Fairfield Management to the Trustee. *Id.*,

ECF No. 87 (stipulation substituting parties).

50.    In the SIPA Action, the Trustee's subsequent transfer claims against the Fairfield

Management defendants accuses them of lacking good faith. As such, those defendants joined the

various motions to withdraw the reference. *Picard v. Fairfield Inv. Fund Ltd., et al.*, Adv. Pro. No. 09-01239, ECF Nos. 117, 120. The reference was returned, at which point, like the defendants in the *HSBC* Action and the *Luxalpha* Action, various defendants moved to dismiss (or partially dismiss) the claims against them under the *District Court's ET Decision*. The *Bankruptcy Court ET Decision* dismissed certain defendants and certain claims.

51.     After several months of settlement discussions, in April 2019, the Trustee resolved his claims against Lourdes Barreneche, Robert Blum, Cornelis Boele, Gregory Bowes, Harold Greisman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark McKeefry, Gordon McKenzie, Santiago Reyes, and Andrew Smith. *Id.*, ECF No. 271. A similar group of defendants were dismissed from Adv. Pro. No. 10-03800 in the Ch. 15 liquidation. ECF No. 89. Thereafter, beginning in June 2019, the parties engaged in a negotiation process and an extended mediation. *Id.*, ECF Nos. 272, 275, 276, 279, 282, and 285. Mediation proved unsuccessful, and, as the Supreme Court denied the writ of certiorari on the extraterritoriality issue, the Trustee filed an amended complaint against the Fairfield Management defendants for all of the subsequent transfers received from the initial transferees. *Id.*, ECF No. 286. The Trustee alleges that Fairfield Management had actual knowledge of Madoff's fraud, and the defendants have moved to dismiss the complaint. *Id.*, ECF No. 305.

C.     **Subsequent Transfer Cases**[18]

52.     The Trustee's subsequent transfer actions primarily seek to recover transfers of Customer Property from BLMIS that defendants allegedly received from the Fairfield Funds,

---

[18] For a more detailed discussion of the status of the Subsequent Transferee actions, including recent decisions, the Trustee refers the Court and the parties to: (i) the Interim Report at pp. 31-57; (ii) the Interim Fee Application at pp. 48-60; and (iii) the Trustee's website (https://www.madofftrustee.com/).

the Tremont Funds, and Harley.[19]

53.     The Trustee settled his claims against the Fairfield Funds in 2011. *Picard v. Fairfield Inv. Fund Ltd., et al.*, Adv. Pro. No. 09-1239 (CGM), ECF No. 107. As part of the settlement, the Bankruptcy Court entered a consent judgment in the amount of approximately $3 billion, and the Fairfield Funds repaid only $70 million to the Trustee. The Trustee then commenced approximately 75 cases to recover the subsequent transfers that defendants received from the Fairfield Funds.

54.     In 2011, the Trustee also settled his claims against the Tremont Funds in 2011. *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (SMB), ECF No. 38. As part of this settlement, the Tremont Funds repaid the Trustee $1.025 billion out of the $2.1 billion received from BLMIS. The Trustee has nine actions against defendants who received subsequent transfers from the Tremont Funds. These actions seek to recover a portion of the $1 billion in transfers, which were not recovered as part of the settlement with the Tremont Funds.

55.     The Trustee has eight actions against defendants who received subsequent transfers from Harley. In 2009, the Trustee filed an adversary proceeding against Harley that sought to avoid and recover approximately $1 billion in initial transfers received from BLMIS. *Picard v. Harley International (Cayman) Limited, Inc.*, Adv. Pro. No. 09-01187 (CGM), ECF No. 1. Harley never responded to the complaint, and on November 10, 2010, the Bankruptcy Court entered a default judgment and summary judgment against Harley. ECF No. 15. The Trustee's actions seek to recover all of the avoided transfers that defendants received from Harley.

---

[19] BakerHostetler is counsel to the Trustee in the majority of these subsequent transfer cases. However, as conflicts counsel, Windels Marx Lane & Mittendorf, LLP represents the Trustee in ten cases, and Young Conaway Stargatt & Taylor, LLP represents the Trustee in five cases.

56.    A number of the Trustee's subsequent transfer cases also include claims to recover transfers allegedly received from the fund Kingate Global Ltd. and Kingate Euro Ltd. (the "Kingate Funds"). However, in 2019, the Trustee settled his claims against the Kingate Funds. *Picard v. Federico Ceretti, et al.*, Adv. Pro. No. 09-01161 (CGM), ECF No. 417. As part of the settlement, the Kingate Funds returned all of the transfers they received in the six years prior to the Filing Date. Consequently, the Trustee will not be seeking to recover any subsequent transfers made by the Kingate Funds to defendants.

57.    Upon the cases' return to the Bankruptcy Court following the denial of *certiorari* on the extraterritoriality decision, the Trustee's counsel identified a number of cases in which an amended complaint would plausibly allege a defendant's willful blindness to Madoff's fraud. In October 2020, the Trustee filed a Motion for Leave to Amend against the "Standard Chartered Bank" defendants. *Picard v. Standard Chartered Financial Services (Luxembourg) S.A., et al.*, Adv. Pro. No. 12-01565 (CGM), ECF No. 119. The proposed amended complaint sought to recover $289 Million that defendants allegedly received from the Fairfield Funds. ECF No. 120. On November 12, 2020, defendants filed a motion to stay proceedings until a decision is rendered by the Second Circuit in the *Citibank* and *Legacy* appeals. ECF No. 128.

58.    After briefing and argument, the Bankruptcy Court granted the Standard Chartered Bank defendants' motion to stay on December 16, 2020. ECF No. 138. The Bankruptcy Court found that a stay would preserve party and judicial economy and reduce the possibility of conflicting or inconsistent decisions. Hr'g Tr. of Dec. 16, 2020 at 49:7–12, ECF No. 139. The Bankruptcy Court noted that a decision from the Second Circuit in *Citibank* and *Legacy* would be binding on controlling questions of law. *Id.* at 48:23–49:4. The Bankruptcy Court further noted that if the Second Circuit reverses, at least in part, and the Trustee does not have to plead around

24

a good faith affirmative defense, then the Trustee may not need to amend his complaints. *Id*. at 35:18–21.

59.    On November 10, 2020, the Trustee, through conflicts counsel at Windels Marx Lane & Mittendorf, LLP, filed a Motion for Leave to Amend in the action entitled *Picard v. Royal Bank of Canada et al*., Adv. Pro. No. 12-01699 (CGM), ECF No. 112. On November 24, 2020, the Royal Bank of Canada defendants filed a Motion to Stay the proceeding until the Second Circuit issues its decision in *Citibank* and *Legacy* appeals. ECF. No. 115. After further briefing, on January 13, 2021, the Court held a hearing and granted the Royal Bank of Canada defendants' Motion to Stay. ECF. Nos. 129 & 130.

Dated: March 16, 2021
       New York, New York

Respectfully submitted,

 */s/ David J. Sheehan*
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Torello Calvani
Email: tcalvani@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*