# ATTACHMENT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |

In re:
BERNARD L. MADOFF,
                    Debtor.

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                    Plaintiff,

v.                                                            Adv. Pro. No. 10-04486 (SMB)

NORMA SHAPIRO, individually and in her
capacity as Trustee for the Norma Shapiro
Revocable Declaration of Trust Under Agreement
Dated 9/16/2008 and the Trust Under Will of
Philip L. Shapiro; NORMA SHAPIRO
DECLARATION OF TRUST UNDER
AGREEMENT DATED 9/16/2008, REVOCABLE
TRUST; TRUST UNDER WILL OF PHILIP
SHAPIRO; and MARTIN ROSEN, in his capacity
as Trustee of the Trust Under Will of Philip L.
Shapiro
                    Defendants.

<br>

### EXPERT REPORT OF
### LISA M. COLLURA, CPA, CFE, CFF

**Proof of Transfers**
**To the Shapiro Defendants**

July 31, 2015

# TABLE OF CONTENTS

I. PROFESSIONAL BACKGROUND ........................................................................................... 2

II. SCOPE OF ASSIGNMENT .................................................................................................... 2

III. METHODOLOGY .................................................................................................................. 5

IV. SUMMARY OF FINDINGS .................................................................................................. 6

V. RECONCILIATION OF CASH TRANSACTIONS FOR ALL BLMIS CUSTOMERS ................................. 7

    A.    OVERVIEW     7
    B.    BLMIS BANK ACCOUNTS     8
    C.    RESULTS OF RECONCILIATION     12

VI. RECONCILIATION OF CASH TRANSACTIONS FOR THE SHAPIRO ACCOUNTS ........................... 12

    A.    OVERVIEW     12
    B.    BLMIS BANK ACCOUNTS     13
    C.    BLMIS CUSTOMER FILES     14
    D.    DOCUMENTS RECEIVED BY THE TRUSTEE RELATED TO THE SHAPIRO ACCOUNTS     15
    E.    RESULTS OF RECONCILIATION     15

VII. TRACING CASH WITHDRAWALS FROM THE SHAPIRO ACCOUNTS ........................................ 16

    A.    OVERVIEW     16
    B.    RESULTS OF TRACING     17

VIII. SIGNATURE AND RIGHT TO MODIFY ................................................................................ 18

IX. LIST OF EXHIBITS ............................................................................................................. 19

## I. PROFESSIONAL BACKGROUND

1.        I am a Senior Managing Director in the Forensic and Litigation Consulting practice of FTI Consulting, Inc. ("FTI"), with more than 20 years of experience in accounting, auditing and litigation consulting services.  I specialize in providing forensic accounting and financial fraud investigative services in connection with internal investigations on behalf of trustees, boards of directors and audit committees of companies.

2.        I have extensive experience in conducting large-scale, fact-finding investigations into fraudulent financial transactions, including tracing significant flows of funds between accounts and entities.  During my career at FTI, I have assisted in the investigation of several of the largest fraud cases in the United States.

3.        I am a Certified Public Accountant (CPA), a Certified Fraud Examiner (CFE), a member of the American Institute of Certified Public Accountants (AICPA) and am Certified in Financial Forensics (CFF) by the AICPA.  My curriculum vitae, attached as **Exhibit 1** to this report, further describes my professional credentials, experience and qualifications, including my testimony in the last four years.

## II. SCOPE OF ASSIGNMENT

4.        Bernard L. Madoff Investment Securities LLC ("BLMIS") was an investment firm owned and operated by Bernard L. Madoff ("Madoff").  On December 11, 2008, Madoff was arrested for violating multiple securities laws in connection with running a Ponzi scheme.   On December 15, 2008, Irving H. Picard was appointed as the Trustee for the liquidation of the business of BLMIS, and Baker & Hostetler LLP was retained as his counsel.  Shortly thereafter, FTI was retained by Baker & Hostetler LLP, on behalf of the Trustee, to analyze, among other things, the financial affairs of BLMIS and to assist the Trustee with the liquidation of BLMIS.  As part of our engagement, FTI was tasked with the exercise of reconstructing the books and records of BLMIS, including all records of the "cash in/cash out" transactions related to the BLMIS customer accounts as far back as the records allow.

2

5.         Matthew B. Greenblatt, also a Senior Managing Director at FTI, and a team of professionals working under his supervision, were specifically tasked with creating chronological listings of all cash and principal transactions, including cash deposit and withdrawal transactions, for every BLMIS customer account, as set forth more fully in the Expert Report of Matthew B. Greenblatt regarding the Methodology for the Principal Balance Calculation (the "Principal Balance Calculation Report").

6.         The sources of cash deposit and withdrawal transactions related to BLMIS customer accounts include customer statements and other relevant information available within BLMIS's records, including Portfolio Management Reports, Portfolio Management Transaction Reports, spiral-bound notebooks, and a data table from BLMIS's computer system referred to as the "Checkbook File," which is the only available BLMIS record of cash transactions for the time period from December 1, 2008 through December 11, 2008.  *See* Principal Balance Calculation Report for further discussion regarding these sources.  For purposes of my report, I use the term "customer statements" to refer to these sources collectively.

7.         I, along with a team working under my supervision, was specifically tasked with performing forensic analyses to determine the following:

- Whether the cash deposit and withdrawal transactions as reflected on the customer statements (as defined in paragraph 6) for *all* BLMIS customers reconciled (as further explained in paragraph 8) to available BLMIS bank records;

- Whether the cash deposit and withdrawal transactions reflected on the customer statements for the *Shapiro Defendants*[1] customer accounts at BLMIS that are at issue in this matter (the "Shapiro Accounts"[2]) reconciled to available documentation; and

---

[1] The defendants in this matter include: Norma Shapiro, individually and in her capacity as Trustee for the Norma Shapiro Revocable Declaration of Trust Under Agreement Dated 9/16/2008 and the Trust Under Will of Philip L. Shapiro; the Norma Shapiro Declaration of Trust Under Agreement Dated 9/16/2008, Revocable Trust; Trust Under Will of Philip L Shapiro, and Martin Rosen, in his capacity as Trustee of the Trust Under Will of Philip L. Shapiro (collectively, the "Shapiro Defendants").

- Whether, based on my review of available bank account records, the cash withdrawals (*i.e.*, transfers from BLMIS) reflected on the customer statements for the Shapiro Accounts during the period between and including December 11, 2006 and December 11, 2008 (the "Two Year Period") could be traced (as further explained in paragraph 8) to bank accounts held by, or for the benefit of, the Shapiro Defendants.

8.     For purposes of this report, I use the term "reconciled" to indicate when I have matched, agreed and/or determined consistency between cash deposits and withdrawals reflected on BLMIS customer statements to information or data per another source (*e.g.*, amounts on BLMIS bank records, correspondence between the customer and BLMIS regarding incoming deposits and/or requests for withdrawals, or documents received by the Trustee related to the Shapiro Accounts). For purposes of my report, I use the term "traced" to indicate when I have followed the flow of funds from one bank account (*e.g.*, BLMIS's bank account) to another bank account (*e.g.*, the Shapiro Defendants' bank account).

9.     This report has been prepared in connection with the above-captioned litigation and is to be used only for the specific purposes of this lawsuit. It is not to be used for any other purpose without the express written consent of FTI. If called upon to testify in this matter, I intend to provide testimony regarding my analyses and conclusions consistent with this report.

10.     FTI is being compensated at a rate of $554 per hour for my professional time incurred in performing the work necessary to prepare this report. FTI's fees are not contingent on the conclusions reached in this report or the outcome of the above-captioned litigation.

---

[2] The Shapiro Defendants maintained the following three BLMIS customer accounts that are at issue in this matter: 1) 1S0337 under the name "Norma Shapiro Trustee, Norma Shapiro Rev Dec Trust U/A/D 9/16/08" (prior to November 2008, the name on this account was "Norma Shapiro" – *see* AMF00216126); 2) 1S0338 under the name "Trust U/W/O Philip L Shapiro" (prior to August 2002, the name on this account was "Philip L Shapiro" – *see* AMF00216207); and 3) 1S0467 under the name "NTC & Co. FBO Norma Shapiro (111184)" (the "Shapiro NTC Account"). NTC & Co. (also known under various other names, including, but not limited to, Fiserv, Inc., TIB Holdings, Inc., Fiserv Investment Support Services, First Trust Corporation, Retirement Accounts Inc., Fiserv Trust Company, Trust Industrial Bank, Lincoln Trust Company, and Pensco Trust Company, collectively, "NTC") was the former custodian of an Individual Retirement Account ("IRA") for the benefit of defendant Norma Shapiro.

### III. METHODOLOGY

11.      To determine whether the cash deposit and withdrawal transactions reflected on the customer statements for *all* BLMIS customers reconciled to available BLMIS bank records, I, using my experience as a forensic accountant and investigator, along with my staff, first identified and gathered the relevant and available records related to the BLMIS bank accounts. We then performed the following procedures:

- Reviewed hundreds of thousands of pages of records related to BLMIS's bank accounts, including monthly bank statements, cancelled checks and deposit slips, obtained from BLMIS's files and/or produced by third-party financial institutions, which cover a ten-year period from December 1998 to December 2008;

- Analyzed close to 150,000 transactions reflected within these bank records; and

- Reconciled the cash deposit and withdrawal transactions reported in the available BLMIS bank records to the cash transactions reflected on the customer statements related to *all* BLMIS customer accounts.

12.      Next, to determine specifically whether the cash transactions reflected on the customer statements for the Shapiro Accounts reconciled to available documentation, I used the results of the forensic analysis of the available BLMIS bank records as described above.  In addition, I reviewed and analyzed other documents and records maintained at BLMIS, including documents contained in the customer files related to the Shapiro Accounts, as well as documents received by the Trustee related to the Shapiro Accounts.  Based on my review and analysis of these materials, I identified the cash transactions related to the Shapiro Accounts that reconciled to these documents.

13.      Finally, to determine whether the cash withdrawals (*i.e.,* transfers from BLMIS) reflected on the customer statements for the Shapiro Accounts during the Two Year Period could be traced to bank accounts held by, or for the benefit of, the Shapiro Defendants, I again used the available information from the BLMIS bank records as described above.  In addition, I also reviewed records produced to the Trustee by third-party financial institutions related to

5

bank accounts held by the Shapiro Defendants.  Using these available bank records, I identified the recipients of the transfers from BLMIS.

14.      The documents and data that I considered in connection with this report are listed in **Exhibit 2**.  I reserve the right to supplement my report based on any additional documents or information received.

## IV. SUMMARY OF FINDINGS

15.      Based on the forensic analyses performed, as described above and throughout this report, as well as my skills, knowledge, experience, education and training that I applied to the documents and information available to me as of the date of this report, my findings are summarized as follows:

- My team and I reconciled 99% of the approximately 225,000 cash deposit and withdrawal transactions reflected on *all* BLMIS customer statements during the time period of December 1998 to December 2008 to the available BLMIS bank records for the same time period.  The remaining 1% that we were unable to reconcile consists primarily of withdrawal transactions for which copies of the related cancelled checks were not available.  Based on the results of our reconciliation of 99% of the cash transactions, I can reasonably infer that my team and I would have been able to reconcile these withdrawal transactions had copies of the related cancelled checks been available.  Only 13 transactions of this remaining 1% (representing less than 0.006% of the approximately 225,000 cash transactions) were reflected on the customer statements, but could not be reconciled to available BLMIS bank records.

- For my reconciliation analysis, I analyzed the cash transactions during the entire period for the Shapiro Accounts, from July 1997 to December 2008.  During this time-period, the customer statements for the Shapiro Accounts reflected 115 cash deposit and withdrawal transactions.  I reconciled 100% of the 115 cash transactions reflected on the customer statements for the Shapiro Accounts to available BLMIS bank records, documentation contained in the BLMIS customer files and/or documents received by the Trustee related

to the Shapiro Accounts.  In addition, based on my review of documents contained in the customer files maintained at BLMIS for the Shapiro Accounts, I have not found any instance of the Shapiro Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Shapiro Accounts.

- For my tracing analysis, I analyzed the cash withdrawals from the Shapiro Accounts during the Two Year Period totaling $926,064.  Based on available bank records from BLMIS and records produced to the Trustee by third-party financial institutions, I traced $812,488 (approximately 87.7%) of the total cash withdrawals reflected on the customer statements for the Shapiro Accounts during the Two Year Period to bank accounts held by defendants Norma Shapiro and/or the Trust Under Will of Philip L Shapiro.  In addition, I traced $112,576 (approximately 12.2%) of the total cash withdrawals reflected on the customer statements for the Shapiro Accounts during the Two Year Period from BLMIS to NTC, of which $112,566 went from NTC to a bank account held by defendant Norma Shapiro.

**V. RECONCILIATION OF CASH TRANSACTIONS FOR ALL BLMIS CUSTOMERS**

*A. OVERVIEW*

16.        As set forth in the Principal Balance Calculation Report, a team from FTI working under Mr. Greenblatt's supervision created chronological listings of all cash and principal transactions, including cash deposit and withdrawal transactions, for every BLMIS customer account.  I was tasked with reconciling the customer cash deposit and withdrawal transactions to available BLMIS bank records to assist in the determination of whether the cash transactions reported on the customer statements for all BLMIS customers were fairly and accurately represented.

B.  _BLMIS BANK ACCOUNTS_

17.      My team and I reviewed available bank account records for more than 90 bank and

brokerage accounts in the name of either BLMIS or Bernard L. Madoff,[3] and found that,

primarily, the following three bank accounts were used by BLMIS for customer deposits and

withdrawals during at least the ten-year period from December 1998 to December 2008:

- JPMorgan Chase account #xxxxx1703 (the "703 Account")[4]

- JPMorgan Chase account #xxxxxxxxx1509 (the "509 Account")

- Bankers Trust account #xx-xx0-599 (the "BT Account")

18.      Records for these three accounts consist of monthly bank statements, copies of

deposited checks, deposit slips and cancelled checks.  Records related to the 703 Account and

the 509 Account were available from December 1998 to December 2008 and were obtained from

BLMIS's files as well as from JPMorgan Chase & Co. ("JPMC").[5]   In addition to hard copy

documents, JPMC produced an electronic file that provides details of wire transfers in and out

of the 703 Account from January 1, 2002 to December 11, 2008 (the "JPMC Wire File").[6]  Records

---

[3] _See_ **Exhibit 3** for a listing of known bank accounts held by BLMIS and/or Bernard L. Madoff.

[4] Personal Identifying Information has been redacted throughout this report and the accompanying exhibits in compliance with Fed. R. Bankr. P. 9037 and applicable federal and state law.

[5] The October 1999 bank statement for the 509 Account could not be located.  However, I was able to use other available documents, such as the 703 Account statements, to estimate the activity in the 509 Account during October 1999.  In addition, there is activity reflected on the monthly bank statements for the 703 Account and 509 Account for which corresponding copies of deposited checks, deposit slips and/or cancelled checks were missing from the documents produced by JPMC and/or could not be located in BLMIS's records.  As reflected in my summary of findings and other results described throughout my report, these missing documents had a minimal impact on my overall analysis and reconciliation.

[6] This file was missing data for transactions dated December 11, 2004 to December 31, 2004.  However, we were able to use other available documents, such as the 703 Account statements, to obtain the necessary information to complete our analysis and reconciliation.

related to the BT Account were available from December 1998 to May 1999 and were obtained from BLMIS's files.[7]

19.        In the aggregate, FTI had available bank records related to the BLMIS bank accounts used for customer deposits and withdrawals for a ten-year period from December 1998 to December 2008.  To assist in our analysis of these bank records, which included copies of monthly bank statements and cancelled checks, we captured the transaction information from these records and converted the information into an electronic format through the use of a combination of Optical Character Recognition (OCR) software and manual entry.  This electronic data, which accurately reflects the underlying records, became the basis for our reconciliation of the cash transactions reported in the BLMIS bank records to the cash deposits and withdrawals reflected on BLMIS customer statements.

## The 703 Account

20.        Based on my review of the available BLMIS bank records, I determined that the 703 Account was the primary bank account used for BLMIS customer deposits and withdrawals. My team and I reviewed and analyzed every one of the transactions reported in the available monthly bank statements for the 703 Account from December 1998 to December 2008 to determine, among other things, whether the transactions were related to a BLMIS customer deposit or withdrawal.

21.        The results of our analysis of the activity in the 703 Account from the available bank records for December 1998 to December 2008 are set forth in an Excel spreadsheet titled "JPMC 703 Account Activity – December 1998 to December 2008" which is attached as **Exhibit 4**.

---

[7] Statements for June through August 1999, October 1999, December 1999 and July 2000 for the BT Account were also found in BLMIS's records.  However, May 1999 appears to be the last month of significant activity in the BT Account. There was no activity in the account during the months of June through August 1999, and the statements for these months showed an ending balance of $26,523.  In October 1999, the only transaction in the account was to transfer the $26,523 remaining balance to the 703 Account and zero out the BT Account.  The December 1999 and July 2000 statements for the BT Account both showed a zero balance.

22.        In conducting our reconciliation of the cash transactions reported in the 703 Account

bank records to the cash transactions reflected on the BLMIS customer statements, we first

matched transactions based on the transaction date and amount, but also manually reviewed

thousands of transactions to confirm our results.  In addition, there were instances when we

reconciled multiple transactions on the BLMIS customer statements to a single transaction on

the BLMIS bank statements.  For example, a deposit into the 703 Account that related to

multiple BLMIS customers appeared as one transaction on the monthly bank statement for the

703 Account.  In that case, we reconciled the 703 Account transaction to a combination of

multiple BLMIS customer transactions.[8]

23.        FTI assigned a unique identification number to each of the transactions reported on

the available 703 Account bank statements.  *See* "703 ID" in the first column of the detail tab of

Excel spreadsheet "JPMC 703 Account Activity – December 1998 to December 2008" (attached

as **Exhibit 4**).  FTI also assigned a unique identification number to each one of the customer

deposit and withdrawal transactions for every BLMIS customer account.  *See* "CM ID" in a

separate column of the detail tab of **Exhibit 4**.  Once a specific transaction reported in a 703

Account statement was matched to a specific customer deposit or withdrawal transaction

reflected on the BLMIS customer statements, we recorded the corresponding unique CM ID in

the respective column of **Exhibit 4**.  This matching formed a link between the cash transactions

per the bank records and the cash transactions per the customer statements.  This link ensured

that no two customer cash transactions were incorrectly matched to the same cash transaction

per the bank records or vice versa.

24.        Based on my review of the activity in the 703 Account from December 1998 to

December 2008, I determined that approximately 97% of the inflows into the account during

---

[8] As another example, BLMIS withheld certain amounts from foreign account holders and made payments to the
Internal Revenue Service on behalf of these customers.  In these cases, we reconciled one payment from the 703
Account to multiple related transactions per the BLMIS customer statements.

this period related to customer deposits and approximately 98% of the outflows from this account during this period related to customer withdrawals.

## The 509 Account

25.        Based on my review of the available bank records related to the 509 Account, I determined that the 509 Account was a checking account funded by the 703 Account.   From December 1998 to December 2008, the inflows into the 509 Account consisted solely of transfers from the 703 Account and the outflows from the 509 Account were solely in the form of checks.

26.        My team and I performed an analysis of the activity in the 509 Account, similar to the analysis we performed with respect to the 703 Account, to determine whether the outflows from the 509 Account were related to BLMIS customer withdrawals.  However, in this case, our analysis relied more heavily on our review of the cancelled checks because the statements themselves lacked the necessary detail.  The results of our analysis of the activity in the 509 Account from the available bank records for December 1998 to December 2008 are set forth in an Excel spreadsheet titled "JPMC 509 Account Activity – December 1998 to December 2008" which is attached as **Exhibit 5**.

27.        Based on my review of the activity in the 509 Account, I determined that approximately 99% of the checks written from the 509 Account from December 1998 to December 2008 were related to customer withdrawals.

## The BT Account

28.        Based on my review of the available bank records related to the BT Account, from at least December 1998 through May 1999, the BT Account was also funded by transfers from the 703 Account.  Outflows from the BT Account were in the form of both checks and wire transfers.

29.        My team and I performed a reconciliation analysis of the activity in the BT Account, similar to those described above, to determine whether the outflows from the BT Account were related to BLMIS customer withdrawals.  The results of our analysis of the activity in the BT

Account from the available bank records for December 1998 to May 1999 are set forth in an Excel spreadsheet titled "BT 599 Account Activity – December 1998 to May 1999" which is attached as **Exhibit 6**.

30.        Based on my review of the activity in the BT Account during this period, I determined that over 97% of the outflows from the BT Account were related to customer withdrawals.

*C.  RESULTS OF RECONCILIATION*

31.        My team and I reconciled 99% of the approximately 225,000 cash deposit and withdrawal transactions reflected on *all* BLMIS customer statements during the time period of December 1998 to December 2008 to the available BLMIS bank records for the same time period. The majority of the remaining 1%, or approximately 2,200 transactions, consist primarily of withdrawal transactions for which copies of the related cancelled checks were not available. Based on the results of our reconciliation of 99% of the cash transactions, I can reasonably infer that my team and I would have been able to reconcile these withdrawal transactions had the related cancelled checks been available.  Only 13 transactions of this remaining 1% (representing less than 0.006% of the approximately 225,000 cash transactions) were reflected on the customer statements, but could not be reconciled to available BLMIS bank records.

**VI. RECONCILIATION OF CASH TRANSACTIONS FOR THE SHAPIRO ACCOUNTS**

*A.  OVERVIEW*

32.        The chronological listings of all cash and principal transactions for every BLMIS customer account compiled by FTI included the cash transactions for the Shapiro Accounts. From July 1997 to December 2008, the customer statements for the Shapiro Accounts reflected 115 cash transactions, which consisted of 15 cash deposits into the Shapiro Accounts totaling

$1,561,349 and 100 cash withdrawals from the Shapiro Accounts totaling $6,270,069.[9]  I was tasked with reconciling these 115 cash transactions to available BLMIS bank records, BLMIS customer files and/or documents received by the Trustee related to the Shapiro Accounts.  *See* **Exhibit 7** for a list of these cash deposit and withdrawal transactions; *see also* **Exhibit 10** – "Reconciliation and Tracing Results – The Shapiro Accounts."

B.    *BLMIS BANK ACCOUNTS*

33.       Of the 115 cash transactions reflected on the customer statements for the Shapiro Accounts, 100 occurred in the ten-year period for which there were available bank records for the three BLMIS bank accounts described above.  I have reconciled 96 (or 96%) of these 100 cash deposit and withdrawal transactions reflected on the customer statements for the Shapiro Accounts to available BLMIS bank records, including monthly bank statements, copies of deposited checks and copies of cancelled checks.  The 96 cash transactions were reconciled to the BLMIS bank accounts as follows:

- 703 Account – 10 transactions (deposits via check)
- 509 Account – 86 transactions (withdrawals via check)

34.       The remaining four transactions, which occurred during the time period for which BLMIS bank records were available, could not be reconciled because the cancelled checks related to the cash withdrawal transactions from the Shapiro Accounts could not be located.[10]  Based on the results of my reconciliation, it is reasonable to infer that had a copy of these cancelled checks been available, I could have completed my reconciliation of the cash transactions recorded in the Shapiro Accounts during the ten-year period from December 1998 to December 2008.

---

[9] One cash deposit transaction and one cash withdrawal transaction reflected on the customer statements for the Shapiro Accounts were subsequently cancelled and therefore are excluded from the count of total cash transactions.
[10] *See* **Exhibit 7** (transactions dated 7/1/1999, 7/8/1999, 10/1/1999 and 10/8/1999).

35.      In addition, based on these results, I can reasonably infer that if BLMIS bank records prior to December 1998 were available to me, I would be able to reconcile the pre-December 1998 cash transactions in the Shapiro Accounts.

C.  *BLMIS CUSTOMER FILES*

36.      In addition to reconciling the cash deposit and withdrawal transactions for the Shapiro Accounts to the available BLMIS bank records as described above, I also reviewed customer files from BLMIS's records to identify correspondence related to the cash transactions reflected on the customer statements for the Shapiro Accounts.

37.      Customer files related to customer accounts were maintained in BLMIS's records and were generally organized by BLMIS account number.  These files contained documents including, but not limited to, correspondence between the customer and BLMIS employees regarding incoming deposits and/or requests for withdrawals, customer contact information, and customer, trust and other agreements.

38.      As part of my analysis, I identified the customer files for the Shapiro Accounts within BLMIS's records.  I reviewed the documents contained in these customer files to identify correspondence that related to the cash transactions reflected on the customer statements for the Shapiro Accounts.  I identified letters and/or other correspondence in these files that support all but one of the 115 cash transactions in the Shapiro Accounts.  One of these letters, which is a request from one of the Shapiro Defendants for a cash withdrawal from one of the Shapiro Accounts, is attached as **Exhibit 8** and is described further below:

- In a letter dated October 16, 2008, defendant Norma Shapiro requests, "Please accept this letter as authorization to issue a check made payable to Trust UWO Philip Shapiro in the amount of $1,000 from account number 1-S0338."

39.      Furthermore, based on my review of the documents contained in the customer files for the Shapiro Accounts, I have not found any instance of the Shapiro Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash deposit or withdrawal transactions reflected on the customer statements for the Shapiro Accounts.

14

D. *DOCUMENTS RECEIVED BY THE TRUSTEE RELATED TO THE SHAPIRO ACCOUNTS*

40.        As of the date of this report, the Shapiro Defendants have produced to the Trustee documents consisting of, among other things, correspondence related to the cash transactions in the Shapiro Accounts.  The Trustee has also received documents from NTC related to the Shapiro NTC Account.  These documents include quarterly account statements related to the IRA held for the benefit of defendant Norma Shapiro, which contain information related to the cash transactions in the Shapiro NTC Account during the quarter.[11]  The NTC documents also include correspondence related to the cash transactions in the Shapiro NTC Account.

41.        I reconciled 3 of the 115 cash transactions reflected on the customer statements for the Shapiro Accounts to these documents received by the Trustee in this matter.

E. *RESULTS OF RECONCILIATION*

42.        In total, based on my analyses described above, I reconciled 100% of the 115 cash transactions reflected on the customer statements for the Shapiro Accounts to available BLMIS bank records, documentation contained in the BLMIS customer files and/or documents received by the Trustee related to the Shapiro Accounts.  **Exhibit 7**, which is the chart that lists each of the 115 cash transactions in the Shapiro Accounts, contains three columns that indicate the results of my reconciliation to each of these sources of information.

43.        Further, as noted above, I have not found any instance of the Shapiro Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Shapiro Accounts.

-------

[11] The documents received by the Trustee from NTC included quarterly account statements related to the Shapiro NTC Account for the period from April 2007 – November 2009.  There was only one cash transaction in the Shapiro NTC Account during this time-period.

## VII. TRACING CASH WITHDRAWALS FROM THE SHAPIRO ACCOUNTS

### A. *OVERVIEW*

44.        The available BLMIS bank records, as described above, were also used to determine whether I could trace the funds that left BLMIS's bank accounts to accounts held by, or for the benefit of, the Shapiro Defendants.  To determine this, I performed a "Receiving Bank" analysis, which traces transfers from BLMIS's bank accounts to bank accounts that received funds from BLMIS.

45.        During the Two Year Period, the customer statements for the Shapiro Accounts reflected 19 cash withdrawal transactions totaling $926,064.  These cash withdrawal transactions were in the form of checks written from the 509 Account.

46.        Tracing withdrawals via check requires a legible copy of a cancelled check.  The necessary information to trace the amount to a receiving bank account, including endorser, banking institution and bank account number, is typically included on the back of a cancelled check.  Oftentimes, however, not all of this information was available on the copy of the cancelled check written from the 509 Account and/or the available information was often illegible.  In any event, when possible, I identified and captured all available and legible information from the cancelled checks written from the 509 Account related to withdrawals from the Shapiro Accounts.

47.        In addition, to trace the cash withdrawals from BLMIS, I also reviewed documents related to bank accounts held by the Shapiro Defendants that were produced to the Trustee by Northern Trust Company ("Northern Trust") and JPMorgan Chase.[12]

---

[12] The Trustee also received records from Wells Fargo Bank and Morgan Stanley related to bank accounts held by the Shapiro Defendants.  However, these records relate to bank accounts that did not receive transfers from BLMIS during the Two Year Period.

B.  *RESULTS OF TRACING*

48.        **Exhibit 9** summarizes the results of both my Receiving Bank analysis and my review
of third-party records produced to the Trustee by Northern Trust and JPMorgan Chase.[13]  This
exhibit lists the bank accounts identified by tracing cash withdrawals from BLMIS during the
Two Year Period and supports that $812,488 (approximately 87.7%) of the total cash
withdrawals reflected on the customer statements for the Shapiro Accounts during the Two
Year Period went to bank accounts held by defendants Norma Shapiro and/or the Trust Under
Will of Philip L Shapiro.  In addition, $112,576 (approximately 12.2%) of the total cash
withdrawals reflected on the customer statements for the Shapiro Accounts during the Two
Year Period went from BLMIS to NTC.[14]

49.        Further, the NTC quarterly account statements produced to the Trustee related to the
Shapiro NTC Account, described in **Section VI** above, reflect an increase in the cash balance of
$112,576 on 12/28/2007.  This is consistent with my tracing of the cash withdrawal transaction in
December 2007 reflected on the BLMIS customer statements for the Shapiro NTC Account from
BLMIS to NTC.  *See* **Exhibit 10**.  The NTC quarterly account statements also reflect a decrease in
the cash balance (*i.e.,* cash outflow) of $112,566 on 12/31/2007 with the description "SAME DAY
DISTRIBUTION For Tax Year 2007" and a decrease in the cash balance of $10 for a check fee.[15]
The bank records produced to the Trustee by JPMorgan Chase related to bank accounts held by
the Shapiro Defendants reflect a deposit of $112,556 on 1/2/2008 into a bank account held by
defendant Norma Shapiro.  My tracing results related to the December 2007 cash withdrawal
from the Shapiro NTC Account are shown in the following flowchart:

--------

[13] *See also* **Exhibit 10**.
[14] I was not able to trace the remaining $1,000 because the cancelled check related to a $1,000 cash withdrawal
transaction dated 10/21/2008 from one of the Shapiro Accounts (1S0338) did not contain an endorsement or the name
of the account holder for the bank account in receipt of funds from BLMIS.  The check was made payable to the
"Trust U/W/O Philip L Shapiro."
[15]  *See* FISERV-SHAPIRO-00023 to FISERV-SHAPIRO-00025 for the NTC quarterly account statement related to the
Shapiro NTC Account for the quarter ended December 31, 2007.



## VIII. SIGNATURE AND RIGHT TO MODIFY

50.        This report and the exhibits contained herein present my findings and the bases thereof.  To the extent that any additional information is produced by any party, I reserve the right to incorporate such additional information into my report or to modify my report as necessary.

By:

*Lisa M. Collura*

Lisa M. Collura, CPA, CFE, CFF
July 31, 2015

18

**IX. LIST OF EXHIBITS**

Exhibit 1:  Curriculum Vitae
Exhibit 2:  Documents Considered
Exhibit 3:  List of Known BLMIS/Bernard L. Madoff Bank and Brokerage Accounts
Exhibit 4:  Excel Spreadsheet "JPMC 703 Account Activity – December 1998 to December 2008"
Exhibit 5:  Excel Spreadsheet "JPMC 509 Account Activity – December 1998 to December 2008"
Exhibit 6:  Excel Spreadsheet "BT 599 Account Activity – December 1998 to May 1999"
Exhibit 7:  List of All Cash Transactions in the Shapiro Accounts
Exhibit 8:  Letter from BLMIS Customer Files for the Shapiro Accounts
Exhibit 9:  Results of Tracing Analysis – Shapiro Accounts (*During the Two Year Period*)
Exhibit 10: Reconciliation and Tracing Results – Shapiro Accounts