**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for*
*the substantively consolidated SIPA liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | Adv. Pro. No. 20-01316 (CGM) |
| Plaintiff, | |
| v. | |
| RAFAEL MAYER, DAVID MAYER, MONTPELLIER INTERNATIONAL LTD., PRINCE ASSETS LTD. (f/k/a PRINCE ASSETS LDC), KHRONOS GROUP LTD. (f/k/a MONTPELLIER RESOURCES LTD.), PRINCE RESOURCES LDC, MONTPELLIER USA HOLDINGS LLC, PRINCE CAPITAL PARTNERS LLC, and KHRONOS LIQUID OPPORTUNITIES FUND LTD. | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**KHRONOS LIQUID OPPORTUNITIES FUND, LTD'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ............................................................................................3

I.      THE LEGACY CAPITAL ADVERSARY PROCEEDING..................................3

II.     RULE 2004 DISCOVERY ........................................................................3

III.    THE CREATION AND FUNDING OF KLOF ................................................5

IV.     THE STRUCTURE OF KLOF...................................................................7

ARGUMENT ............................................................................................................8

I.      STANDARDS OF REVIEW .......................................................................8

        A.      STANDARD OF REVIEW ON A FED. R. CIV. P. 12(B)(6) MOTION
                TO DISMISS .................................................................................8

        B.      STANDARD OF REVIEW ON A FED. R. CIV. P. 12(B)(2) MOTION
                TO DISMISS FOR LACK OF PERSONAL JURISDICTION ............................9

II.     THE TRUSTEE SUFFICIENTY PLEADS A BASIS FOR PERSONAL
        JURISDICTION OVER KLOF ...................................................................10

        A.      THE TRUSTEE PLEADS SUFFICIENT MINIMUM CONTACTS FOR
                GENERAL JURISDICTION................................................................11

        B.      THE TRUSTEE PLEADS SUFFICIENT MINIMUM CONTACTS FOR
                SPECIFIC JURISDICION ..................................................................15

                (1)     KLOF Purposefully Directed Activities into the U.S. and Availed
                        Itself of U.S. Law...............................................................15

                (2)     KLOF is Subject to Jurisdiction Because Khronos Acted as
                        KLOF's Agent in the United States.........................................16

                (3)     KLOF Has Purposefully Availed Itself of the United States Due to
                        Its Relationship with Khronos Group .......................................17

                (4)     KLOF Purposefully Directed Activity to the U.S. by Directing
                        Investment Through U.S. Khronos LOF Holdings LLC ...............18

                (5)     KLOF Purposefully Directed Activity to the United States by
                        Offering Securities in the United States....................................19

i

(6)    The Underlying Cause of Action Is Related to KLOF's Activities ...........19

C.    JURISDICTION OVER KLOF IN THIS CASE IS REASONABLE...................22

III.    THE INFORMATION AND DOCUMENTS PRESENTED IN THE MAYER
DECLARATION SHOULD NOT BE CONSIDERED IN DECIDING KLOF'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
BECAUSE THEY WERE NEVER PRODUCED TO TRUSTEE...................................23

IV.    THE MAYER DECLARATION PRESENTS IRRELEVANT, INACCURATE,
AND INCOMPLETE INFORMATION THAT SHOULD NOT BE
CONSIDERED ON THIS MOTION TO DISMISS .........................................................27

A.    THE MAYER DECLARATION CONTAINS INACCURACIES AND
MUST BE DISREGARDED BY THIS COURT ...................................................28

B.    THE MAYER DECLARATION MISCHACTERIZES THE TOTAL
ASSETS AVAILABLE AT KHRONOS GROUP TO COVER A
POTENTIAL JUDGMENT ...................................................................................30

V.    JURISDICTIONAL DISCOVERY ..................................................................................32

VI.    THE TRUSTEE HAS SUFFICIENTLY PLEADED A § 550 CLAIM TO
RECOVER SUBSEQUENT TRANSFERS FROM KHRONOS LIQUID
OPPORTUNITIES FUND..................................................................................................33

A.    LEGACY SUBSEQUENT TRANSFERS TO MONTPELLIER..........................34

B.    MONTPELLIER SUBSEQUENT TRANSFERS TO KHRONOS GROUP
(MONTPELLIER RESOURCES).........................................................................34

C.    KHRONOS GROUP (MONTPELLIER RESOURCES) BECAME KLOF .........35

VII.    THE TRUSTEE SHOULD BE PERMITTED LEAVE TO AMEND .............................38

CONCLUSION....................................................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.I. Trade Fin., Inc. v. Petra Bank,*
    989 F.2d 76 (2d Cir.1993) ...................................................................................................... 10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................................. 8

*Balintulo v. Daimler AG (In re S. Afr. Apartheid Litig.),*
    643 F. Supp. 2d 423 (S.D.N.Y. 2009) .................................................................................... 32

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................................. 8

*In re Bello,*
    528 B.R. 562 (Bankr. E.D.N.Y. 2015) .................................................................................... 25

*Bickerton v. Bozel S.A. (In re Bozel S.A.),*
    434 B.R. 86 (Bankr. S.D.N.Y. 2010) ...................................................................................... 22

*Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.,*
    No. 05 Civ 9994 (KMW), 2007 WL 747807 (S.D.N.Y. Mar. 9, 2007 ...................................... 9

*Block v. First Blood Assocs.,*
    988 F.2d 344 (2d Cir. 1993) ................................................................................................... 37

*Bluestone Cap. Partners, L.P. v. MGR Funds Ltd.,*
    No. 98 CIV. 3128 (WHP), 1999 WL 322658 (S.D.N.Y. May 20, 1999) ................................. 18

*Brown v. Lockheed Martin Corp.,*
    814 F.3d 619 (2d Cir. 2016) ................................................................................................... 11

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ................................................................................................... 10, 21, 22

*Calder v. Jones,*
    465 U.S. 783 (1984) ............................................................................................................... 15

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ................................................................................................. 8, 9

*Charles Schwab Corp. v. Bank of Am. Corp.,*
    883 F.3d 68 (2d Cir. 2018) ............................................................................................... 15, 17

*Credit Lyonnais Sec. (USA) v. Alcantara*,
    183 F.3d 151 (2d Cir. 1999)...........................................................................................19

*Cresci v. Mohawk Valley Cmty. Coll.*,
    693 F. App'x 21 (2d Cir. 2017) ....................................................................................38

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001)..........................................................................15

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)................................................................................................16, 17

*DeLuca v. AccessIT Grp., Inc.*,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010)...............................................................................9

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)..........................................................................................8, 9

*Dorfman v. Marriott Int'l Hotels, Inc.*,
    No. 99 Civ. 10496 (CSH), 2002 WL 14363 (S.D.N.Y. Jan. 3, 2002) ....................16

*Energy Brands Inc. v. Spiritual Brands, Inc.*,
    571 F. Supp. 2d 458 (S.D.N.Y. 2008).........................................................................9, 28

*Fica Frio, Ltd. v. Seinfeld*,
    434 F. Supp. 3d 80 (S.D.N.Y. 2020).................................................................................9

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)...............................................................................................10, 20

*Gen. Atl. Invs. Ltd. v. Bus. Dev. Cap. Ltd. P'ship-II*,
    620 F. Supp. 964 (S.D.N.Y. 1985) .................................................................................13

*Gentry v. Kaltner*,
    No. 170-CV-8654 (KMK), 2020 WL 1467358 (S.D.N.Y. Mar. 25, 2020) ............33

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).........................................................................................................10

*Gowan v. Amaranth LLC (In re Dreier LLP)*,
    452 B.R. 451 (Bankr. S.D.N.Y. 2011).......................................................................36, 37

*Hanson v. Denckla*,
    357 U.S. 235 (1958).........................................................................................................15

*Hayden v. Cnty. of Nassau*,
    180 F.3d 42 (2d Cir. 1999)................................................................................................9

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ................................................................................................13, 14

*Hood v. Ascent Med. Corp.*,
  No. 13CV0628 (RWS) (DF), 2016 WL 1366920 (S.D.N.Y. Mar. 3, 2016),
  *report and recommendation adopted*, No. 13 CIV. 628 (RWS), 2016 WL
  3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017) ..............................14

*Kuhl v. U.S. Bank Tr. Nat'l Ass'n as trustee for Legacy Mortg. Asset Tr. 2018GS-1*,
  No. 19 CV 8403 (VB), 2020 WL 5775092 (S.D.N.Y. Sept. 28, 2020) ...................................9

*LCM XXII Ltd. v. Serta Simmons Bedding, LLC*,
  No. 20 CIV. 5090 (GBD), 2021 WL 918705 (S.D.N.Y. Mar. 10, 2021) .........................13, 15

*Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network)*,
  332 B.R. 896 (Bankr. D. Nev. 2005) .....................................................................................16

*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003) ...................................................................................................32

*Medcalf v. Thompson Hine LLP*,
  84 F. Supp. 3d 313 (S.D.N.Y. 2015) .........................................................................................9

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) .....................................................................................................10

*Noval Williams Films LLC v. Branca*,
  128 F. Supp. 3d 781 (S.D.N.Y. 2015) .......................................................................................9

*NV Petrus SA v. LPG Trading Corp.*,
  No. 14-cv-3138 (NGG) (PK), 2017 WL 1905820 (E.D.N.Y. May 8, 2017)..........................26

*Pereira v. Felzenberg*,
  No. 96 Civ. 7957 (RWS), 1997 WL 698186 (S.D.N.Y. Nov. 7, 1997)...................................25

*Phoenix Assocs. III v. Stone*,
  60 F.3d 95 (2d Cir. 1995)........................................................................................................27

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ....................................................................................11

*Picard v. Chais (In re BLMIS LLC)*,
  440 B.R. 274 (Bankr. S.D.N.Y. 2010) ...............................................................................10, 36

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
  418 B.R. 75 (Bankr. S.D.N.Y. 2009) ......................................................................................22

*Picard v. Cohmad Sec. Corp.* (*In re BLMIS LLC*),
    454 B.R. 317 (Bankr. S.D.N.Y. 2011)................................................33, 36

*Picard v. Estate of Stanley Chais* (*In re BLMIS LLC*),
    445 B.R. 206 (Bankr. S.D.N.Y. 2011)....................................................30

*Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*),
    Case No. 10-13164 (CGM), Adv. Pro. No. 10-03800 (CGM), 2021 WL
    1153005 (Bankr. S.D.N.Y. Mar. 25, 2021)........................8, 10, 15, 20

*Picard v. Legacy Capital Ltd.* (*In re BLMIS LLC*),
    548 B.R. 13 (Bankr. S.D.N.Y. 2016)......................................................33

*Picard v. Madoff* (*In re BLMIS LLC*),
    458 B.R. 87 (Bankr. S.D.N.Y. 2011)................................................33, 37

*Picard v. Maxam Absolute Return Fund, L.P.* (*SIPC v. BLMIS*),
    460 B.R. 106 (Bankr. S.D.N.Y. 2011)....................................................23

*Picard v. Merkin* (*In re BLMIS*),
    515 B.R. 117 (Bankr. S.D.N.Y. 2014)..............................................8, 30

*Picard v. Merkin* (*In re BLMIS LLC*),
    440 B.R. 243 (Bankr. S.D.N.Y. 2010)....................................................33

*Porat v. Lincoln Towers Cmty. Ass'n*,
    464 F.3d 274 (2d Cir. 2006)....................................................................38

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010)......................................................................9

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
    48 F.Supp.3d 675 (S.D.N.Y. 2014)..........................................................22

*Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999)....................................................33

*See Picard v. Ceretti* (*In re BLMIS LLC*),
    Adv. Pro. Nos. 08-01789 (SMB), 09-01161 (SMB), 2015 WL 4734749
    (Bankr. S.D.N.Y. Aug. 11, 2015)..............................................................8

*SIPC. v. BLMIS LLC* (*In re BLMIS*),
    531 B.R. 439 (Bankr. S.D.N.Y. 2015)................................................33, 36

*Stralia Mar. S.A. v. Praxis Energy Agents DMCC*,
    431 F. Supp. 3d 366 (S.D.N.Y. 2019)......................................................9

*Texas Instruments Inc. v. Powerchip Semiconductor Corp.*,
No. 06-cv- 2305 (SHS) (RLE), 2007 WL 1541010 (S.D.N.Y. May 24, 2007)......................25

*Triad Sec. Corp. v. Mfrs. Indem. & Ins. Co. of Am.*,
No. 93 Civ. 8019 (LMM), 1999 WL 330394 (S.D.N.Y. July 8, 1994) ................................19

*U.S. Bank Nat'l Ass'n v.Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019)..................................................................................20

*U.S. Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Indus. Inc.)*,
68 B.R. 690 (Bankr. S.D.N.Y. 1986)......................................................................22

*Walden v. Fiore*,
571 U.S. 277 (2014)..............................................................................................16

*World–Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980).............................................................................................21

**Statutes**

11 U.S.C. § 548(a)(1)(A) ............................................................................................3

11 U.S.C. § 550........................................................................................2, 21, 35

11 U.S.C. § 550(a) ...........................................................................................3, 33

11 U.S.C. § 550(f).....................................................................................................26

**Rules**

Fed. R. Bankr. P. 2004 ................................................................................... *passim*

Fed. R. Bankr. P. 7012 ...............................................................................................8

Fed. R. Civ. P. 8 ..................................................................................................33, 36

Fed. R. Civ. P. 8(a) ...................................................................................................33

Fed. R. Civ. P. 8(a)(2) ................................................................................................8

Fed. R. Civ. P. 12(b)(2).............................................................................................9

Fed. R. Civ. P. 12(b)(6).................................................................................8, 33, 37

Fed. R. Civ. P. 37 .....................................................................................................25

Fed. R. Civ. P. 37(b)(2)(A)(ii) .................................................................................25

Fed. R. Evid. 106 .....................................................................................................26

**Other Authorities**

17 C.F.R. § 230.503 ........................................................................................................19

17 C.F.R. § 230.503(a)(3)(iii) ........................................................................................19

Barron's Financial Guides, *Dictionary of Finance and Investment Terms* (6th ed.
    2003) ...........................................................................................................................12

Companies Law (2020 Revision), Part VII, § 163 ..........................................................13

New York Gen. Bus. L. Art. 23-A §359-e(2) .................................................................19

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§

78aaa-*lll* ("SIPA"), and the substantively consolidated chapter 7 estate of Bernard L. Madoff

("Madoff"), by and through the Trustee's undersigned counsel, respectfully submits this

memorandum of law in opposition to the motion ("Motion") brought by defendant Khronos Liquid

Opportunities Fund, Ltd. ("KLOF") to dismiss the Trustee's complaint ("Complaint").

## PRELIMINARY STATEMENT

KLOF is a mutual fund entirely run by and operated through its investment manager

Khronos LLC ("Khronos") in New York.  KLOF's current directors are all located in New York.

And KLOF is a defendant here because it received money that was previously transferred from

BLMIS, to New York based Montpellier International Ltd. ("Montpellier"), which was a decision

made by New York based Khronos.  Yet, KLOF moves to dismiss, claiming that this Court lacks

personal jurisdiction over it because it was formed in the Cayman Islands.  KLOF so urges despite

knowing that it has no operations in the Cayman Islands.  In fact, KLOF is a Cayman Islands

"exempted" company, which, by definition, cannot conduct business there.  Because KLOF is

entirely operated in New York—its nerve center—KLOF is subject to general jurisdiction here.

KLOF is also subject to specific jurisdiction: as KLOF received transfers of BLMIS customer

property from the Khronos Group Ltd.—another entity run and controlled by Khronos out of New

York—KLOF's contacts with the United States are related to the Trustee's cause of action to

recover subsequent transfers from it.

Despite the Trustee's clear jurisdictional allegations in the Complaint, in a feeble attempt to

escape liability, KLOF proffers the Declaration of Rafael Mayer, one of its directors, to present

facts and attach documents beyond the four corners of the Complaint.  The ostensible purpose of

Rafael Mayer's Declaration is to show that KLOF is not subject to personal jurisdiction and that it

purportedly never received BLMIS transfers.  The declaration, however, has the opposite effect and only further supports the Trustee's alter ego allegations based on the blurred lines between purportedly separate corporate entities that are all run and controlled out of the same office by David and Rafael Mayer.

Worse yet, the Declaration attaches documents never produced to the Trustee.  These documents were responsive to both Rule 2004 subpoenas served on Mr. Mayer and Khronos and were also ordered to be produced to the Trustee by Judge Bernstein.  The declaration also contains significant inaccuracies.  Most glaring of which is Mr. Mayer's testimony that KLOF did not receive BLMIS customer property.  Mr. Mayer testifies that when Khronos Group transformed into a Segregated Accounts Company, all the Legacy Capital transfers went to the Distribution Account, not the Continuing Account a/k/a KLOF.  In reality, there was no separation of assets; when Khronos Group liquidated its Distribution Account, $550 million was transferred to the Continuing Account a/k/a KLOF.  Accordingly, as the Trustee has already pleaded, KLOF is a continuation of Khronos Group, and he should be permitted to recover any transfers of BLMIS customer property to KLOF.  The Mayer Declaration, on the other hand should be disregarded as procedurally improper and for presenting inaccurate and incomplete information.

Finally, the Trustee's Complaint sufficiently pleads a Section 550 claim against KLOF because it sets forth all the vital statistics of a subsequent transfer claim.  KLOF is on notice of the transfers being sought against it, and its Motion should be denied.

## STATEMENT OF FACTS

### I.    THE LEGACY CAPITAL ADVERSARY PROCEEDING

On December 6, 2010, the Trustee commenced an adversary proceeding against Legacy

Capital Ltd. ("Legacy Capital") and other defendants to recover BLMIS customer property.  *Picard*

*v. Legacy Capital Ltd. (In re BLMIS)*, Adv. Pro. No. 10-05286 (CGM) (Bankr. S.D.N.Y.) (the

"Legacy Adversary Proceeding"); (Compl. ¶ 4, ECF No. 1.)

On November 12, 2019, the Court entered a Final Judgment and Order against Legacy

Capital in the amount of $79,125,781 (the "Legacy Transfers").  Final Judgment and Order, Legacy

Adversary Proceeding, ECF No. 231 (the "Final Judgment"); (Compl. ¶¶ 59, 109.)  That same day,

the Court also entered a Stipulation and Order that the Legacy Transfers were avoidable, avoided,

and recoverable from Legacy Capital under Sections 548(a)(1)(A) and 550(a) of the Bankruptcy

Code.  Stipulation and Order, Legacy Adversary Proceeding, ECF No. 230 (the "Stipulated Order");

(Compl. ¶¶ 59. 109.)

Rafael Mayer authorized Legacy Capital's counsel to enter into the Stipulated Order and

Final Judgment concerning the Legacy Transfers.  (Compl. ¶ 109.)  When the Trustee later sought

to enforce the Final Judgment, Rafael Mayer responded to the Trustee's post-judgment discovery by

representing that Legacy Capital was impecunious and did not possess assets to satisfy the Final

Judgment.  (*Id*.)  The Trustee then filed this action

### II.    RULE 2004 DISCOVERY

On July 7, 2010, the Trustee served Rule 2004 subpoenas on Rafael Mayer and David

Mayer (collectively, the "Mayers").  (Declaration of Oren J. Warshavsky in Opp'n to KLOF's Mot.

to Dismiss ("Warshavsky Decl.") Ex. 1, at Mayer Decl. Ex. A, *SIPC v. BLMIS LLC*, Adv. Pro. No.

08-1789, ECF No. 19705-1 (the "Rafael Mayer Subpoena"); Warshavsky Decl. Ex. 2, at Fisher

Decl. ¶ 6, *SIPC v. BLMIS LLC (In re Bernard L. Madoff)*, Adv. Pro. No. 08-1789, ECF No. 19706

(the "Fisher Decl.").)  Documents produced in response to the Rafael Mayer Subpoena indicated that Montpellier and Prince Assets Ltd. ("Prince") received subsequent transfers of BLMIS customer property from Legacy Capital.  Following the entry of the Final Judgment, the Trustee served a Rule 2004 subpoena (the "July 2020 Subpoena") on Khronos.  (Fisher Decl.  ¶¶ 2-4; Warshavsky Decl. Ex. 1, at Mayer Decl. Ex. B, *SIPC v. BLMIS LLC (In re Bernard L. Madoff)*, Adv. Pro. No. 08-1789, ECF No. 19705-2 (the "Khronos Subpoena").)

       In August 2020, without conferring with the Trustee, Khronos moved to quash the Khronos Subpoena arguing that it was duplicative of the 2010 subpoenas served on the Mayers.  (Mot. Quash Subpoena at 4-5, *SIPC v. BLMIS. LLC (In re Bernard L. Madoff)*, Adv. Pro. No. 08-1789, ECF No. 19704 (the "Mot. to Quash").)  During oral argument, Khronos's counsel claimed that producing documents concerning subsequent transfers was burdensome, but the Court did not find any burden. (Warshavsky Decl. Ex. 4, Tr. of Hr'g of Mot. to Quash Trustees Rule 2004 Subpoena at 23:12 to 24:8, *SIPC v. BLMIS (In re Bernard L. Madoff)*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Sept. 9, 2020), ECF No. 19788.)  On September 23, 2020, the Court ordered Khronos to produce "documents concerning any and all transfers to and from Montpellier International . . . and Prince . . . , and any transfers of their transferees."  (Warshavsky Decl. Ex. 3, Order at 2, *SIPC v. BLMIS LLC (In re Bernard L. Madoff)*, Adv. Pro. No. 08-1789, ECF No. 19801 (the "September 2020 Order").)

       In response to the September 2020 Order, Khronos produced bank statements and ledgers that failed to provide information that would allow the Trustee to properly identify the transferor or transferee.[1]  The Trustee was left to rely on Khronos's counsel's representations concerning the holders of the bank accounts.  (Warshavsky Decl. Exs. 6, 8.)  The Trustee repeatedly wrote to and

---

[1] *See* Warshavsky Decl. Ex. 5 (account statements list only account numbers without identifying the holder and "list transfers and SWIFT payments to entities such as 'Santander,' 'Dresdner Bank' and 'Montpellier' without providing any further identifying information"), Ex.7 (account statements lack any specificity), Ex. 9 (documents produced describe transfers as "TBA," "PO Deutsche Bank," and "PO Chase").

4

conferred with Khronos's counsel to obtain further information concerning these transfers. (*See* Warshavsky Decl. Exs. 5-11.)  Khronos's counsel called the Trustee's requests for further detailed information "absurd."  (Warshavsky Decl. Ex. 10.)  It also disagreed with the Trustee's "contention that Khronos's production does not satisfy Judge Bernstein's [September 2020] Order." (Warshavsky Decl. Ex. 11.)  In the end, the only documents produced were vague and ambiguous bank account statements and unverified ledgers containing limited information and undefined acronyms insufficient for identification.  (Warshavsky Decl. Exs. 5, 9.)

Now, in support of its motion to dismiss, Defendants submit Rafael Mayer's Declaration (ECF No. 20) ( the "Mayer Decl.") with fourteen exhibits that were never produced to the Trustee even though their production was called for under both the Rafael Mayer Subpoena and the September 2020 Order.  (Warshavsky Decl. ¶ 6, Ex. 3; *see infra* Section III.)  Sadly, this has been the consistent behavior of the defendants and their counsel.

## III.    THE CREATION AND FUNDING OF KLOF

In or about 2009, subsequent transferee Khronos Group Ltd. f/k/a Montpellier Resources Ltd. ("Khronos Group") became a Segregated Accounts Company in Bermuda and began conducting its investment activities through two classes of shares linked to segregated accounts: the Distribution Class and the Continuing Class.  (Compl. ¶¶ 91-92.)  According to the newly disclosed facts set forth in the Mayer Declaration and documents attached thereto, "only the assets of the Distribution Account [were to] be looked to for satisfaction of any claims arising in connection with the Distribution Account and only the assets of the Continuing Account [were to] be looked at for satisfaction of any claims arising in connection with the Continuing Account."  (Mayer Decl. Ex. E, at 7, ECF No. 20-5.)  Before converting to a segregated accounts company, Khronos Group stated that it would obtain "the necessary consent of creditors of the Company."  (*Id.* Ex. E, at 2.)  The Mayer Declaration is silent about the creditors' identity, how creditors were notified, and proof of

5

their consent.  The Trustee—one of Khronos Group's larger creditors—was never notified or asked for consent.  Yet, Khronos Group knew it was subject to potential liability and does not deny that it had "indirect investments with Legacy (and thereby BLMIS)."  (*Id.* ¶ 6.)

Instead, the Khronos Group board resolved, on or about November 11, 2011, that "[Khronos Group] has determined that the liability in respect of the Litigation and the Maximum Potential Judgment is attributable to the Distribution Fund and has determined that the Distribution Fund has sufficient assets to satisfy the Maximum Potential Judgment."  (*Id.* ¶ 15, Ex. I.)  Khronos Group obtained legal advice from (i) Rafael Mayer and Khronos's counsel, Mr. Eric Fisher's prior law firm of Dickstein Shapiro LLP[2] and (ii) Khronos Group's counsel's current law firm of (and Mr. Fisher's prior law firm) Butzel Long, P.C.,[3] to determine the maximum potential judgment from the Litigation.  (*Id.* Ex. I.)  Based on this alleged advice in the form of a memorandum dated June 20, 2011, which also has not been produced to the Trustee, the Khronos Group "resolved that the Distribution Account would 'at all times maintain sufficient assets under management to meet the Maximum Potential Judgment and all other contractual obligations, expenses, and liabilities.'"  (*Id.* ¶ 16; *see also Id.* Ex. I.)  According to Mr. Mayer, the Distribution Account would continue monitoring and assessing "its potential liability in respect of the Litigation and its maximum potential judgment on a continuing basis so as to assure that [Khronos Group], in respect of the Distribution Fund, is able at all times to satisfy any potential liability it may have in respect of the Litigation and its maximum potential judgment, should such liability exist."  (*Id.* Decl. ¶ 16 (quoting *Id.* Ex. I).)

---

[2] Notice of Appearance, Legacy Adversary Proceeding, ECF No. 25.

[3] At some point after the issuance of the legal advice in the memorandum dated June 20, 2011 (Mayer Decl., Ex. I), Khronos Group's counsel, Peter Morgenstern changed law firms from Morgenstern & Blue, LLC to Butzel Long.  *See* Stipulation at 4, Legacy Adversary Proceeding, ECF No. 17 Notice of Mot. to Withdraw the Reference at 3, Legacy Adversary Proceeding, ECF No. 33; *see also https://www.butzel.com/attorneys-peter-morgenstern.html* (last visited Apr. 11, 2021).

Beginning in or around August 2010, "Khronos and the Mayers began dismantling Montpellier Group, [including Khronos Group,] and replacing it with a structure centered around KLOF." (Compl. ¶ 72.)  Khronos Group's Continuing Class later became known as the Liquid Opportunities Fund Segregated Account, and "after KLOF was registered in 2011, the Liquid Opportunities Fund Segregated Account and the Continuing Class assets were transferred to KLOF." (*Id.* ¶¶ 92-93.)  Rafael Mayer states that the Continuing Account "never received any of the funds that [Khronos Group] received from Legacy through Montpellier International." (Mayer Decl. ¶ 12.)  Yet the Trustee has pleaded that beginning on July 26, 2011, Khronos Group transferred $109,253,099 to KLOF. (Compl. ¶ 93.)  Just a review of only a small section of Khronos Group's ledger, that was produced to the Trustee by Khronos, makes clear that various transfers were sent from Khronos Group to the Continuing Account and KLOF. (Warshavsky Decl. Ex. 12.)  For example, the Khronos Group ledgers lists the transferee as either KLOF or Liquid Opportunities Fund Segregated Account a/k/a KLOF. (Compl. ¶¶ 92-93; Warshavsky Decl. Ex. 12.)

## IV.    THE STRUCTURE OF KLOF

While KLOF is organized under Cayman law, it is entirely managed and run by Rafael Mayer and Khronos in New York. (Compl. ¶ 12.)  The investment vehicles comprising KLOF structure are "wholly owned and controlled by Khronos." (*Id.* ¶ 99.)  KLOF's directors over the years have included Rafael Mayer, Piero Di Capua, and Herbert Selzer. (*Id.* ¶ 81.)  David Mayer was an officer of KLOF. (*Id.*)  Additionally, Khronos employees Daniel Levy, Harris Newman, and Denise Mincak have served as officers or directors of KLOF. (Warshavsky Decl. Exs. 13-23.)  Each of these current and/or former officers and directors, except Di Capua, were located in New York, with five (David Mayer, Rafael Mayer, Mincak, Newman, and Levy) listing their addresses at

Khronos's New York office.  (*Id.*)  These five individuals also held director and officer roles at

Khronos.  (*Id.*)

## ARGUMENT

### I.   STANDARDS OF REVIEW

#### A.   STANDARD OF REVIEW ON A FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), as applicable under

Fed. R. Bankr. P. 7012, a court must liberally construe all claims in a complaint, accept all factual

allegations as true, and draw all reasonable inferences in the plaintiff's favor.  *See Ashcroft v. Iqbal*,

556 U.S. 662, 678-79 (2009); *see also Picard v. Merkin* (*In re BLMIS*), 515 B.R. 117, 137 (Bankr.

S.D.N.Y. 2014) (quoting *Iqbal*, 556 U.S. at 679).  A court must also read all of the allegations in a

complaint as a whole.  *See Picard v. Ceretti* (*In re BLMIS LLC*), Adv. Pro. Nos. 08-01789 (SMB),

09-01161 (SMB), 2015 WL 4734749, at *13 (Bankr. S.D.N.Y. Aug. 11, 2015) ("The totality of the

allegations in the FAC paint a picture of sophisticated financial professionals who knew that

Madoff was reporting fictitious transactions, and took steps to prevent any inquiry."); *see also*

*Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), Case No. 10-13164 (CGM), Adv.

Pro. No. 10-03800 (CGM), 2021 WL 1153005, at *11 (Bankr. S.D.N.Y. Mar. 25, 2021) (finding

allegations of partnership by estoppel sufficient to overcome a motion to dismiss "[w]hen the

Complaint is read as one cohesive document").  A pleading must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and its

allegations need only meet the "plausibility" standard, such that they nudge the claims "across the

line from conceivable to plausible."  *Iqbal*, 556 U.S. at 680 (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).

"[I]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a

district court may consider the facts alleged in the complaint, documents attached to the complaint

8

as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).   A court may take judicial notice of public records.  *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) (citations omitted).  A court may also consider documents that are integral to the complaint.  *DiFolco*, 622 F.3d at 111.  In order "[t]o be integral to a complaint, the [Trustee] must have (1) actual notice of the extraneous information and (2) relied upon the document in framing the complaint." *Kuhl v. U.S. Bank Tr. Nat'l Ass'n as trustee for Legacy Mortg. Asset Tr. 2018GS-1*, No. 19 CV 8403 (VB), 2020 WL 5775092, at *3 (S.D.N.Y. Sept. 28, 2020) (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (a plaintiff must have relied on the document and "mere notice or possession" of the document does not suffice).

### B.    STANDARD OF REVIEW ON A FED. R. CIV. P. 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 787 (S.D.N.Y. 2015).  A plaintiff's showing will depend on the procedural stage of the litigation.  *Fica Frio, Ltd. v. Seinfeld*, 434 F. Supp. 3d 80, 86 (S.D.N.Y. 2020).  When discovery has not been completed, a plaintiff need only make "a *prima facie* showing as to [personal] jurisdiction."  *Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*, No. 05 Civ 9994 (KMW), 2007 WL 747807, at *1 (S.D.N.Y. Mar. 9, 2007). This showing requires a plaintiff to make "legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Stralia Mar. S.A. v. Praxis Energy Agents DMCC*, 431 F. Supp. 3d 366, 370 (S.D.N.Y. 2019) (citation and internal quotation marks omitted).  A court may consider documents beyond the

pleadings.  *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 465 (S.D.N.Y.

2008); *see also S. New England Tel. Co. v. Glob. NAPs Inc.,* 624 F.3d 123, 138 (2d Cir. 2010).

When personal jurisdiction is averred on affidavits or declarations, "all allegations are construed in

the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor,

notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra

Bank,* 989 F.2d 76, 79–80 (2d Cir.1993).

## II.    THE TRUSTEE SUFFICIENTY PLEADS A BASIS FOR PERSONAL JURISDICTION OVER KLOF

In bankruptcy proceedings, the jurisdictional forum is the United States (not any particular,

individual state), and the Bankruptcy Court may assert jurisdiction over a defendant if the exercise

of jurisdiction satisfies due process, that is, if: (1) the defendant has minimum contacts with the

United States; and (2) the exercise of jurisdiction is reasonable.  *See In re Fairfield Sentry*, 2021

WL 1153005, at *13 n. 13; *see also Picard v. Chais (In re BLMIS LLC)*, 440 B.R. 274, 278 (Bankr.

S.D.N.Y. 2010).  "For purposes of this initial inquiry, a distinction is made between 'specific'

jurisdiction and 'general' jurisdiction."  *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560,

567 (2d Cir. 1996).  Specific personal jurisdiction applies only to claims based on the defendant's

forum related conduct.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).  A plaintiff

sufficiently pleads a basis for specific jurisdiction by alleging (1) the defendant purposefully

directed its activities into the forum, and (2) the underlying cause of action arises out of or relates to

those activities.  *Id.* at 472; *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017,

1024-26 (2021) (holding that personal jurisdiction attaches if defendant's in-state activities "arise

out of *or relate to*" the claim's factual basis (emphasis in original)).  General jurisdiction over

foreign corporations comports with due process "when their affiliations with the [forum] are so

'continuous and systematic' as to render them essentially at home in the forum."  *Goodyear Dunlop

Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

### A.    THE TRUSTEE PLEADS SUFFICIENT MINIMUM CONTACTS FOR GENERAL JURISDICTION

The Trustee's Complaint sets forth sufficient allegations to make out his *prima facie* case for general jurisdiction over KLOF because KLOF's principal place of business is in New York. "Except in an 'exceptional' case, a corporate defendant may only be subject to general jurisdiction in its place of incorporation or principal place of business." *Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*, 594 B.R. 167, 188 (Bankr. S.D.N.Y. 2018) (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016)). KLOF contends that general jurisdiction is lacking because the Trustee pleaded that "KLOF was organized in the Cayman Islands" while failing to include a conclusory allegation about KLOF's principal place of business. KLOF Mem. of Law in Supp. of Mot. to Dismiss ("KLOF Mem.") 11, ECF No. 18. However, the Trustee does not need to use the magic words "principal place of business" to meet this standard; the Trustee's Complaint clearly pleads that KLOF operated out of New York through Khronos and is controlled by the Mayers. (Compl. ¶¶ 12, 20.)

The Trustee pleads that the Mayers and Khronos "began dismantling the Montpellier Group and replacing it with a structure centered around KLOF." (*Id.* ¶ 99.) They did this "[a]fter BLMIS's fraud was revealed and Legacy Capital's and the Defendants' liability to the Trustee arose, . . . [and] to avoid repaying customer property to the BLMIS estate." (*Id.* ¶ 77.) In 2011, KLOF was formed and Khronos Group transferred over $100 million to KLOF. (*Id.* ¶ 93.) KLOF then "succeeded and took over for Khronos Group," and Khronos Group was liquidated in 2017. (*Id.* ¶¶ 94,104.) Now the Trustee seeks to recover from KLOF the transfers of BLMIS property that went to Khronos Group. (*Id.* ¶ 95.)

The various entities involved in the Montpellier Group, the Prince master fund structure and the KLOF master fund structure all "shared directors, officers, beneficial ownership, shareholders,

business operations, and offices." (*Id.* ¶ 80.) As a result, "the Mayers and Defendants are one and the same, act as the alter egos of each other, and acted in concert." (*Id.; see also Id.* ¶ 81.)

KLOF is a mutual fund incorporated in and organized under the laws of the Cayman Islands. (*Id.* ¶ 12; Mayer Decl. Ex. M. at 4, 8, ECF No. 20-13.) By the very nature of being a mutual fund, KLOF's operations are carried out by its investment manager, Khronos.[4] (*See* Compl. ¶¶ 81, 101). Khronos has full discretion over KLOF's investments; KLOF's investors have no influence over KLOF's investment decisions. (Warshavsky Decl. Ex. 24 ("Khronos does not permit investors in the Funds to impose limitations on the investment activities described in the offering documents.").) KLOF "is managed by Rafael Mayer and Khronos . . . in New York," and KLOF is also dominated and controlled by the Mayers. (Compl. ¶¶ 12, 20, 72, 76.) The funds comprising KLOF are also "wholly owned and controlled by Khronos." (*Id.* ¶ 99.)

The materials attached to the Mayer Declaration, which are improper and should not be considered for the reasons discussed below (*see infra* Section III-IV), only support the Trustee's *prima facie* case that KLOF is subject to personal jurisdiction in New York. The Mayer Declaration attaches a few pages from the June 2018 KLOF Offering Memorandum,[5] which boldly states on its cover page "KHRONOS." (Mayer Decl. Ex. M, at. 2.) It also states that KLOF is "a Cayman Islands exempted company." (*Id.*, at. 3.) By its very definition, an exempted company runs its business outside of the Cayman Islands. An exempted company "is defined as a company 'the

---

[4] A mutual fund is defined as a "fund operated by an Investment Company that raises money from shareholders and invests it in stocks, bonds, options, futures, currencies, or money market securities." Barron's Financial Guides, *Dictionary of Finance and Investment Terms*, 437 (6th ed. 2003). An Investment Company is defined as a "firm that, for a management fee, invests the pooled funds of small investors in securities appropriate for its stated investment objectives." Barron's Financial Guides, *Dictionary of Finance and Investment Terms*, 351 (6th ed. 2003).

[5] For the same reasons discussed below, Exhibit M to the Mayer Declaration is incomplete since it fails to provide all of the pages to the KLOF June 2018 Offering Memorandum including those pages discussing the "Investment Manager" and the "Investment Management Agreement," pages 1 and 3 according to the Table of Contents. (*See* Mayer Decl. Ex. M, at 6.) Absent having full discovery into the various Offering Memoranda and a complete copy of the 2018 version, the Trustee does not have the ability to fully challenge the veracity of the statements being made by KLOF concerning this Offering Memorandum, as compared to others, and KLOF's service providers.

objects of which are to be carried out mainly outside the Islands . . . .'" *LCM XXII Ltd. v. Serta Simmons Bedding, LLC*, No. 20 CIV. 5090 (GBD), 2021 WL 918705, at *5 (S.D.N.Y. Mar. 10, 2021) (quoting Companies Law (2020 Revision), Part VII, § 163).  Therefore, the Cayman Islands cannot be KLOF's principal place of business.  *Id.*; *see also Gen. Atl. Invs. Ltd. v. Bus. Dev. Cap. Ltd. P'ship-II*, 620 F. Supp. 964, 965 (S.D.N.Y. 1985) (finding that because a Bermuda exempt company is not authorized to do business in Bermuda, "its principal place of business must be outside of Bermuda.").  By virtue of its exempted company status, Caymanians cannot invest in KLOF.  KLOF's offering memorandum explicitly states in capitalized, bolded font that it "DOES NOT CONSTITUTE AN OFFER OF THE FUND'S SHARES TO MEMBERS OF THE PUBLIC IN THE CAYMAN ISLANDS."  (Mayer Decl. Ex. M, at 4).

KLOF cannot "affirmatively establish that the Directors actually make management decisions in the Cayman Islands, that board meetings are actually held there, or that books and records are actually maintained there."  *LCM XXII*, 2021 WL 918705, at *5.  KLOF has neither an office nor employees in the Cayman Islands, nor does it conduct business anywhere else besides at Khronos in New York.  (*See* Mayer Decl. Ex. M.)  The documents seen to date lists KLOF's registered office from 2012 forward at the address of its Cayman counsel, Maples and Calder at P.O. Box 309, Ugland House, "c/o Maples Corporate Services Limited."  (Mayer Decl. Ex. M, at 7; Warshavsky Decl. Exs. 13-22.)  As described on the Maples Group website, "Maples Corporate Services Limited provides registered office services."  (Warshavsky Decl. Ex. 25 at 2.)  "[W]hen a corporation's alleged nerve center is simply 'a mail drop box, a bare office with a computer, or the location of an annual executive retreat' it may reveal 'attempts at manipulation' and 'courts should instead take as the "nerve center" the place of actual direction, control, and coordination, in the absence of such manipulation.'"  *LCM XXII*, 2021 WL 918705, at *5 (quoting *Hertz Corp. v. Friend,* 559 U.S. 77, 97 (2010)).

13

KLOF's presence in the Cayman Islands is a façade, and this Court must look beyond that to the place where KLOF's "officers direct, control, and coordinate the corporation's activities . . . i.e., the 'nerve center.'" *Hertz*, 559 U.S. at 92-93; *see also Hood v. Ascent Med. Corp.*, No. 13CV0628 (RWS) (DF), 2016 WL 1366920, at *9 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, No. 13 CIV. 628 (RWS), 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017) (citing *Hertz* standard in general jurisdiction analysis). As shown on KLOF's Form Ds, since December 2011, KLOF's nerve center is in New York where its officers and directors are located. Over KLOF's history, six of its seven officers and directors have been in New York; five listing their address as Khronos's New York office. (Warshavsky Decl. Exs. 13-22.)

Today, KLOF has no officers and only two directors, Rafael Mayer and Denise Mincak. (Warshavsky Decl. Ex. 22.) Both list their address at Khronos's New York office. (*Id.*) Unsurprisingly, Rafael Mayer and Denise Mincak also are officers of Khronos. Ms. Mincak is Khronos's CFO and Mr. Mayer its principal owner. (Warshavsky Decl. Exs. 23-24.) The Khronos Funds are described by Khronos as "private investment vehicles that are primarily owned by the Managing Director [Rafael Mayer], family members and their affiliated entities, as well as close associates and their affiliates." (Warshavsky Decl. Ex. 24.) KLOF is one of the private investment vehicles that falls under the Khronos Fund umbrella.

Finally, KLOF's subscription form,[6] directs investors to send all documents to Khronos's New York office or by email to IR@khronos.com. (Mayer Decl. Ex. N, ECF No. 20-14.) The form further directs all questions to Khronos. Khronos coordinates KLOF's subscriptions, manages KLOF's investments, and houses KLOF's paperwork—in other words performing virtually all

---

[6] The Mayer Declaration attaches KLOF's Investor Subscription Form, which states at the bottom left side that the form was last updated December 2018. (Mayer Decl. Ex. N, ECF No. 20-14.) Absent discovery, the Trustee cannot confirm whether there are other versions of this Investor Subscription Form or KLOF's statements about the Cayman Islands and investors being subject to jurisdiction there.

KLOF's business activities. This, coupled with KLOF's lack of activities elsewhere, renders New

York KLOF's actual center of control, coordination, and direction as well as its principal place of

business. *See LCM XXII*, 2021 WL 918705, at *5 (finding a Cayman exempt company with a

registered office as a Cayman P.O. Box, had a principal place of business in New York as its

business was conducted in New York by its investment manager). KLOF is subject to general

jurisdiction in New York.

**B.    THE TRUSTEE PLEADS SUFFICIENT MINIMUM CONTACTS FOR SPECIFIC JURISDICION**

If the Court does not find that KLOF is subject to general jurisdiction in New York, KLOF

is nevertheless subject to specific jurisdiction in the United States. KLOF has the necessary

minimum contacts with the United States, which are related to the Trustee's underlying cause of

action. The requirements for specific jurisdiction are, therefore, satisfied.

### (1)    *KLOF Purposefully Directed Activities into the U.S. and Availed Itself of U.S. Law*

"In adversary proceedings, courts must determine whether the defendant has minimum

contacts with the United States, rather than with the forum state." *In re Fairfield Sentry*, 2021 WL

1153005, at *13 n. 13. Minimum contacts supporting specific jurisdiction exist when a defendant

"purposefully avails itself of the privilege of conducting activities within the forum . . ., thus

invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958);

*see also In re Fairfield Sentry*, 2021 WL 1153005, at *13 ("(s)pecific jurisdiction exists when the

defendant 'purposefully direct[s] his activities at residents of the forum' and the underlying cause of

action 'arises out of or relates to those activities.'") (quoting *Cromer Fin. Ltd. v. Berger*, 137 F.

Supp. 2d 452, 473 (S.D.N.Y. 2001)). Specific jurisdiction may be premised on a defendant's

actions that are "expressly aimed" at the forum state. *See Calder v. Jones*, 465 U.S. 783, 789-90

(1984); *accord Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018)

(referring to the "effects test" theory of personal jurisdiction). The contacts must evidence that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum state or entering a contractual relationship centered there. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (alterations omitted) (citation and internal quotation marks omitted). Here, KLOF purposefully directed activities into the United States and availed itself of United States law through: (1) its use of Khronos for investment management, (2) its relation to the Khronos Group; (3) investing in a United States fund, and (4) offering securities in the United States.

### (2)   *KLOF is Subject to Jurisdiction Because Khronos Acted as KLOF's Agent in the United States*

KLOF is subject to jurisdiction because Khronos acted as KLOF's agent in the United States. Khronos is unquestionably subject to the Court's jurisdiction as it is a New York limited liability company with its principal place of business in New York. (Compl. ¶ 20.) Given the critical role Khronos played in managing the day-to-day business of KLOF (*Id.* ¶¶ 12, 20, 101), Khronos's jurisdictional contacts are imputed to KLOF. *Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network)*, 332 B.R. 896, 905–06 (Bankr. D. Nev. 2005) (asserting agency jurisdiction over a foreign company because "[a foreign party] may not avoid jurisdiction in the United States by conveniently interposing a subsidiary between its acts and the debtor"); *see also Dorfman v. Marriott Int'l Hotels, Inc.*, No. 99 Civ. 10496 (CSH), 2002 WL 14363, at *3 (S.D.N.Y. Jan. 3, 2002) (finding jurisdiction where New York agent "does all the business which [the foreign corporation] could do were it here by its own officials.") (alterations in original) (citation and internal quotation marks omitted). Likewise, all KLOF officers and directors, except Di Capua, are located in New York. (Warshavsky Decl. Exs. 13-22.) These individuals are KLOF's agents, and their jurisdictional contacts are imputed to KLOF.

Under *Daimler AG v. Bauman*, an agency relationship is relevant to the exercise of specific jurisdiction. 571 U.S. 117, 135 n.13 (2014). "[A] corporation can purposefully avail itself of the

16

forum by directing its agents or distributors to take action there." *Id.* Courts have found "jurisdiction over a principal based on the acts of an agent where the alleged agent acted in [the venue] for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Charles Schwab*, 883 F.3d at 85 (citation and internal quotation marks omitted). Khronos acted in New York for the benefit of, with the knowledge and consent of KLOF. KLOF was managed by Khronos, which served as its investment manager. (Compl. ¶¶ 12, 76; Mayer Decl. Ex. M.) KLOF's general day-to-day operations were run from Khronos's New York office. *See supra* Section II.A.

Contrary to KLOF's assertion, these allegations do not impermissibly focus on KLOF's contacts with persons who reside in the forum. (KLOF Mem. 12.) The allegations describe KLOF's contacts with the forum: its business was operated and controlled from New York by New York-based officers, directors, and investment manager. KLOF is a mutual fund and its actions and contacts are only those of its directors, officers, and investment manager. Khronos and KLOF's officers and directors act on behalf and for the benefit of KLOF. This is an agency relationship and establishes that KLOF availed itself of this forum through its agents.

### (3)    *KLOF Has Purposefully Availed Itself of the United States Due to Its Relationship with Khronos Group*

As pleaded by the Trustee, KLOF existed and derived revenues from its contacts with the United States, specifically New York, from its receipt of transfers from Khronos Group. (Compl. ¶¶ 12, 93-95.) Khronos Group was managed in New York by Rafael Mayer and Khronos. (*Id.* ¶¶ 16, 106-08.) Khronos Group's directors are Rafael Mayer, Seltzer, and Di Capua. (*Id*. ¶ 100.) David Mayer was also a director of Khronos Group from 2011 to 2015. (*Id.*) For all purposes, Khronos Group was dominated and controlled by the Mayers in New York, and the Trustee alleges that the Mayers are alter egos of the Khronos Group. (*Id.* ¶¶ 3,5, 68-79, 123.)

From New York, Khronos Group directed the transfer of "$109,253,099 to KLOF" beginning on July 26, 2011.  (*Id.* ¶ 93.)  Khronos Group was then liquidated by Rafael Mayer, and KLOF succeeded and took over for the Khronos Group.  (*Id.* ¶¶ 94, 104.)

The Mayer Declaration—which this Court should not consider as discussed below—only supports the Trustee's allegations, as Mayer describes Khronos Group's restructuring into separate accounts: the Distribution Account and the Continuing Account.  (*Id.* ¶ 91; Mayer Decl. ¶ 9.) KLOF was then created in 2011, and the Continuing Account was transferred to KLOF with the approval of the Khronos Group board.  (Compl. ¶¶ 91-93; Mayer Decl. ¶¶ 10, 17, Ex. J.)  Khronos Group's board, which allegedly approved the transfer to KLOF, comprised Selzer, Rafael Mayer, and Di Capua, two of whom are located in New York.  (Mayer Decl. Ex. J, ECF No. 20-10.) Although KLOF urges that it received no transfers of BLMIS money, a review of the Khronos produced ledgers, shows that transfers of BLMIS customer property went from Khronos Group to the Continuing Account and KLOF.  (Warshavsky Decl. Ex. 12.)  In fact, based on the Mayer Declaration's alleged allegations of the division of assets at Khronos Group, a review of transfers to the Continuing Account and KLOF show that over $550 million was transferred from Khronos Group's Distribution Account to KLOF.  (Compl. ¶ 93.)  These transfers were controlled and directed in New York.

### (4)    *KLOF Purposefully Directed Activity to the U.S. by Directing Investment Through U.S. Khronos LOF Holdings LLC*

KLOF further purposefully directed activities to the United States by investing in United States-based fund Khronos Liquid Opportunities Fund Holdings LLC.  (Warshavsky Decl. Ex. 23.) This investment activity into the United States, confirms KLOF's purposeful direction of activity into the United States and establishes minimum contacts.  *See Bluestone Cap. Partners, L.P. v. MGR Funds Ltd.*, No. 98 CIV. 3128 (WHP), 1999 WL 322658, at *3 (S.D.N.Y. May 20, 1999) ("It is well-settled that . . . a non-domiciliary's contacts with New York are sufficient to confer

jurisdiction when it maintains an ongoing investment account in New York and conducts securities

transactions through such an account"); *Triad Sec. Corp. v. Mfrs. Indem. & Ins. Co. of Am.*, No. 93

Civ. 8019 (LMM), 1999 WL 330394, at *2-4  (S.D.N.Y. July 8, 1994) (finding personal jurisdiction

where foreign defendant opened brokerage account to trade securities in New York); *Credit*

*Lyonnais Sec. (USA) v. Alcantara*, 183 F.3d 151, 153-54 (2d Cir. 1999) (finding long arm

jurisdiction for claims arising out of defendant's transactions to and from its New York securities

account).

### (5)     KLOF Purposefully Directed Activity to the United States by Offering Securities in the United States

KLOF has undertaken commercial activities in the United States, specifically in New York,

by offering securities for sale in New York.  KLOF has been listed as a Broker/Dealer of Securities

Offerings on the New York State February 1, 2012 registry pursuant to New York Gen. Bus. L. Art.

23-A §359-e(2).[7]  (Warshavsky Decl. Ex. 26.)

KLOF's U.S. based commercial activities are also evidenced by its filing of Notices of

Exempt Offering of Securities (Form D and Amended Form Ds) with the SEC, since 2011.

(Warshavsky Decl. Exs. 13-22.)[8]  A Form D is the SEC's official notice of an exempt offering of

securities in reliance upon Regulation D (or Section 4(6) of the Securities Act).  *See generally* 17

C.F.R. § 230.503.  KLOF has continued to annually file an Amended Form D with the SEC,

because it continues to offer exempt securities for sale in the U.S.  (Warshavsky Decl. Exs. 13-22.);

*see also* 17 C.F.R. § 230.503(a)(3)(iii).

### (6)     The Underlying Cause of Action Is Related to KLOF's Activities

---

[7] Section 359-e(2) provides that "No dealer or broker shall sell or offer for sale to or purchase or offer to purchase from the public within or from this state, as principal, or broker, any securities issues or to be issued unless and until a notice, to be known as the 'state notice,' containing the name, business or post office address of such dealer or broker and if a corporation the state of country of incorporation thereof…"

[8] *See also* U.S. Securities and Exchange Commission, "Filing and Amending a Form D Notice," https://www.sec.gov/info/smallbus/secg/formdguide.htm (last visited April 28, 2020).

KLOF's contacts with the United States are related to the Trustee's subsequent transfer claim. Under *Ford Motor Co. v. Montana Eight Judicial District Court*, the Trustee need only show that KLOF's contacts relate to the underlying claim and does not need to show that they are the "but for cause" or proximate cause of the Trustee's claim. 141 S. Ct. 1017 (2021). In *Ford*, the Supreme Court found that specific jurisdiction does not always require proof of causation, "i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Id.* at 1026. Instead, a lawsuit can "relate to" the defendant's contacts with the forum. *Id.* As the Supreme Court made clear, "[n]one of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id.* KLOF's contention that specific jurisdiction exists only if the Trustee's injury was proximately caused by KLOF's contacts with the forum (KLOF Mem.13-14) is incorrect.

"The 'arises out of or relates to those activities' prong may be satisfied when 'defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum.'" *In re Fairfield Sentry*, 2021 WL 1153005, at *13 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)). The Trustee's allegations satisfy this prong. The Trustee has pleaded that KLOF received transfers of BLMIS money through Khronos Group. (Compl. ¶¶ 63, 91-95, Ex. D.) Prior to that, Khronos Group received subsequent transfers of BLMIS customer property as is detailed in Exhibit D to the Complaint. (*Id.* ¶¶ 63, 112, Ex. D.) Khronos Group then began transferring money to KLOF beginning on July 26, 2011. (*Id.* ¶ 93.) Thereafter, KLOF succeeded and took over for Khronos Group. (*Id.* ¶ 94.) The Trustee seeks to recover the Khronos Group transfers, which originated with BLMIS. (*Id.* ¶¶ 63, 95.) Khronos and Rafael Mayer ran and controlled Khronos Group and KLOF in New York. (*Id.* ¶¶ 12, 20, 76, 106, 108.) Accordingly, the transactions at issue here between Khronos Group and KLOF touch this forum.

As discussed *infra* in section IV.A, KLOF claims that it never received BLMIS money from Khronos Group. This is inaccurate. The Continuing Account and KLOF received transfers from the Khronos Group Distribution Account, the account which, according to the Mayer Declaration, contained the transfers from Legacy Capital and BLMIS. These transfers from the Distribution Account to the Continuing Account included BLMIS customer property, and these financial transactions touch the forum as money flowed out of New York.

KLOF, moreover, knew that transfers originating from BLMIS could subject it to litigation in the United States. The minimum contacts test ensures that a reasonable person would foresee that their "conduct and connection with the forum State are such he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Khronos Group's directors, including Rafael Mayer, knew that Khronos Group's funds were subject to recovery by the Trustee; indeed, Khronos Group's counsel provided an opinion concerning its liability to the Trustee. (Mayer Decl. ¶¶ 15-16.) Likewise, Khronos Group paid a portion of the fees in the Legacy Capital Adversary Proceeding. (Compl. ¶ 85.) When transferring assets from Khronos Group to KLOF, the directors, and Mayer, therefore understood that KLOF could be hauled into a U.S. court to recover those transfers. That knowledge is imputed to KLOF because Rafael Mayer was also the director of KLOF.

To find that KLOF's contacts do not relate to the Trustee's claim would effectively mean any defendant could circumvent a claim under section 550 by moving a fraudulent transfer to entities further removed from the original transferee. This would defeat the entire purpose of section 550.

21

## C.    JURISDICTION OVER KLOF IN THIS CASE IS REASONABLE

Once a plaintiff makes a *prima facie* case of minimum contacts, the burden shifts to the

defendant to "present a compelling case that the presence of some other considerations would

render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. The court considers five factors

in this inquiry:

> (1) the burden that the exercise of jurisdiction will impose on the
> defendant; (2) the interests of the forum state in adjudicating the case;
> (3) the plaintiff's interest in obtaining convenient and effective relief;
> (4) the interstate judicial system's interest in obtaining the most
> efficient resolution of the controversy; and (5) the shared interest of the
> states in furthering substantive social policies.

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F.Supp.3d 675, 687 (S.D.N.Y. 2014). Cases in

which jurisdiction is so unreasonable as to defeat a showing of minimum contacts are rare,

occurring only where the defendant presents a "compelling case" that the burden of litigating in the

forum clearly outweighs the interests of the plaintiff and forum in adjudicating in the selected court.

*See Bickerton v. Bozel S.A. (In re Bozel S.A.)*, 434 B.R. 86, 100 (Bankr. S.D.N.Y. 2010).

The United States has a strong interest in applying the provisions of its Bankruptcy Code.

*See U.S. Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Indus. Inc.)*, 68 B.R. 690, 699 (Bankr.

S.D.N.Y. 1986). The Trustee also has a strong interest in litigating in the United States because

BLMIS was a New York corporation with its files here, and the BLMIS liquidation proceeding is

before this Court. *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y.

2009) (finding personal jurisdiction over Defendants because "'the most efficient resolution of the

controversy' would be in the United States, where the inextricably-related BLMIS liquidation is

ongoing before this Court") (citation omitted).

Any burden KLOF would have litigating in New York is minimal: KLOF has counsel in

New York, its directors are located in New York, its investment advisor is located in New York,

KLOF has been selling securities in the United States since 2012 and continues to file its yearly

Notice of Exempt Offering of Securities (Form D) with the SEC, and there is a U.S. nexus to its

economic activities as it invests in U.S. based Khronos Liquid Opportunities Fund LLC.

(Warshavsky Decl. Exs.13-22, 24, 26.)  *See Picard v. Maxam Absolute Return Fund, L.P. (SIPC v.*

*BLMIS)*, 460 B.R. 106, 119-20 (Bankr. S.D.N.Y. 2011) (exercise of personal jurisdiction is

reasonable because defendant's counsel was in New York, there was a U.S. nexus to defendant's

economic activities, and modern communication and transportation mitigate potential hardship due

to geographic distance).  Jurisdiction over KLOF is therefore reasonable.

III.    **THE INFORMATION AND DOCUMENTS PRESENTED IN THE MAYER
         DECLARATION SHOULD NOT BE CONSIDERED IN DECIDING KLOF'S
         MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION BECAUSE
         THEY WERE NEVER PRODUCED TO TRUSTEE**

        KLOF submits fourteen exhibits attached to the Mayer Declaration, many with missing

pages and/or with references to other missing documents.  These documents are responsive to the

Trustee's Rule 2004 discovery requests to both Khronos and Rafael Mayer and Judge Bernstein's

September 2020 Order. Yet none of these documents were produced to the Trustee.  KLOF should

not now be permitted to rely on these documents here.

        The Rafael Mayer Subpoena requested documents concerning communications with Legacy

Capital and redemptions from and investments in BLMIS or a BLMIS-invested fund.  (*See* Rafael

Mayer Subpoena, Request Nos. 1-2, 5, 8-9, 46, 49.)  The Khronos Subpoena requested documents

and/or communications concerning: (i) subsequent transfers, (ii) the identity of all entities with an

interest in Montpellier International and the value of such interest, (iii) Montpellier International's

beneficial owners, and (iv) Montpellier International's liquidation including any assets and

distributions.  (Khronos Subpoena, Req. for Prod. Nos. 1, 7, 10, 14.)

        In response to the Khronos Subpoena, without conferring beforehand, Khronos filed a

motion to quash, arguing that the requests were duplicative of those served upon David and Rafael

Mayer (in 2010), and that "Khronos complied with long ago."  (Mot.to Quash ¶ 3.)  After denying

the motion to quash, Judge Bernstein ordered Khronos to produce, within thirty days, "documents concerning any and all transfers to and from Montpellier International . . . and Prince . . . and any transfers of their transferees." (Warshavsky Decl. Ex. 3, at 2.)

Exhibits A and B to the Mayer Declaration are letters from Montpellier International requesting redemptions from BLMIS account holder, Legacy Capital, in 2007 for $27 million and $50 million. (*See* Mayer Decl. Exs. A-B, ECF Nos. 20-1, 20-2; *see also* Compl. ¶ 61; Compl. Ex. C, ECF No. 1-3.) Exhibit C to the Mayer Declaration shows financial statements for Montpellier Resources describing its investment in Legacy Capital shareholder Montpellier International. (*See* Mayer Decl. Ex. C, ECF No. 20-3). Again, none of these documents were produced.

The Mayer Declaration includes documents concerning the creation of and movement of money and assets from Khronos Group into a segregated accounts company involving two accounts, a Distribution Account and a Continuing Account, which later became KLOF. (Mayer Decl. Exs. C-G. I-L; Compl. ¶¶ 92-93.) Exhibits C, G, and L are financial statements showing Khronos Group's investment in Montpellier International and payments for redemptions. (Mayer Decl. Exs. C, G, L.) Exhibit G further describes the two segregated accounts and how the Distribution Account will be liquidated and "distributed pro-rata to all holders and each holder may elect to have none, some or all of the proceeds from the liquidation reinvested in the Continuing Segregated Account." (Mayer Decl. Ex. G at 9.) Finally, the remaining documents are internal meeting minutes and resolutions concerning the creation of a segregated accounts company, movement of the assets to the two accounts, and ultimate creation of KLOF. (Mayer Decl. Exs D-F, I-K.) Again, none were produced.

As described in the Mayer Declaration, the Distribution Account supposedly received all Khronos Group's existing assets and liabilities, which included the transfers that originated with BLMIS. (Mayer Decl. ¶¶ 10-12, Ex. E.) Based on this, the Distribution Account is a transferee,

and the documents attached to the Mayer Declaration relating to the Distribution Account should

have been produced.  Likewise, since the Continuing Account received transfers from the

Distribution Account (Mayer Decl. Ex. G, at 9), it too received transfers, documents concerning

which should have been produced pursuant to the September 2020 Order.  Accordingly, all these

documents involve redemptions from BLMIS and/or transfers to or from transferees of Montpellier

International, *i.e.* Khronos Group, which fall squarely within the Rafael Mayer Subpoena and the

September 2020 Order and should have been produced to the Trustee.  (Mayer Decl. ¶ 1; Compl. ¶¶

12, 20, 72, 76, 81.)  Mr. Mayer brazenly submits those documents here with full knowledge that

they were called for and not produced in response to prior discovery demands.

Because the above referenced documents were never produced to the Trustee, this Court

should exclude them pursuant to Fed. R. Civ. P. 37.  *See* Fed. R. Civ. P. 37(b)(2)(A)(ii)

("prohibiting the disobedient party from supporting . . . designated . . . defenses, or from introducing

designated matters in evidence").  Bankruptcy courts may impose discovery sanctions against

parties to an adversary proceeding for failing to comply with an order directing compliance with a

Rule 2004 subpoena in the main bankruptcy case.  *See Pereira v. Felzenberg*, No. 96 Civ. 7957

(RWS), 1997 WL 698186, at *4–6 (S.D.N.Y. Nov. 7, 1997) (affirming the bankruptcy court's

sanction of two defendants for failure to comply with Rule 2004 subpoenas under the court's

inherent authority and stating that Rule 37 may "shape the court's determination of sanctions

pursuant to its inherent powers."); *In re Bello*, 528 B.R. 562, 568 (Bankr. E.D.N.Y. 2015) (imposing

sanctions against defendant in adversary proceeding under the bankruptcy court's inherent authority

for failure to appear for her Rule 2004 examination and produce documents and relying on Rule 37

to determine the scope of sanctions).  Court-ordered discovery sanctions under Fed R. Civ. P. 37

may involve precluding reliance on late produced discovery, particularly where its failure to

produce earlier is unjustifiable and results in prejudice to the receiving party.  *Texas Instruments*

25

*Inc. v. Powerchip Semiconductor Corp.*, No. 06-cv- 2305 (SHS) (RLE), 2007 WL 1541010, at *13-14 (S.D.N.Y. May 24, 2007).

There is no good reason that the documents attached to the Mayer Declaration were withheld.  It would be improper and prejudicial to the Trustee to consider such documents here. The Trustee requested and was entitled to receive this information.  Knowing that the Trustee had a one year deadline under 11 U.S.C. § 550(f) to file this action, Khronos engaged in brinkmanship, requesting an extension to respond, then moving to quash, and only producing copies of bank statements and select ledger entries, both of which contained, at best, limited information about the transfers.  Khronos did not produce any of the documents attached to the Mayer Declaration.  (*See e.g.*, Warshavsky Decl. Ex. 12.)  Despite the Trustee's repeated request for additional information concerning the transfers, he was told that this request was "absurd" and burdensome, an argument previously rejected by Judge Bernstein, and now belied by Mr. Mayers' declaration.  (Warshavsky Decl. Ex. 4, at 23:12 to 24:8; Warshavsky Decl. Ex. 10, at 1.)

Khronos and Rafael Mayer were the custodians of the documents concerning the transfers, and the Trustee had no way of knowing about the existence of these documents or the information therein until they were produced in connection with this Motion.  Moreover, many of the documents attached to the Mayer Declaration are provided to identify and describe transfer of assets to a newly formed segregated accounts company about which the Trustee has not had the benefit of obtaining discovery.  In fact, many of the documents provided to the Court contain redactions, select pages rather than the entire document, and/or refer to other documents that have not been produced and should all be found inadmissible for failing to satisfy Fed. R. Evid. 106.  (*See* Mayer Decl. Exs. C-G, I-N).  As the Second Circuit has explained, "Rule 106 requires that 'a full document . . . be admitted when it is essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact.'"  *NV Petrus SA v. LPG Trading*

*Corp.*, No. 14-cv-3138 (NGG) (PK), 2017 WL 1905820, at *3 (E.D.N.Y. May 8, 2017) (quoting

*Phoenix Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995)).

The Trustee has never been provided with a complete set of Khronos Group's financials, and

financial statements, board resolutions, or meeting minutes, nor has he been able to test the veracity

of the Mr. Mayer's Declaration.  In fact, as discussed below, there are inaccuracies and incomplete

statements within that declaration that warrant the denial of KLOF's Motion because, viewed in the

light most favorable to the Trustee, the Trustee has sufficiently pleaded a *prima facie* case to

establish personal jurisdiction over KLOF.  *See* Infra Section IV.

## IV.  THE MAYER DECLARATION PRESENTS IRRELEVANT, INACCURATE, AND INCOMPLETE INFORMATION THAT SHOULD NOT BE CONSIDERED ON THIS MOTION TO DISMISS

The Mayer Declaration proffers information that has no relevance to this Court's personal

jurisdiction analysis.  First, the Mayer Declaration discusses and attaches two letters requesting

transfers from Legacy Capital to Montpellier International, which are irrelevant to KLOF's

jurisdictional argument.  (Mayer Decl. ¶¶ 4-6, Exs. A-B.)  Next, Montpellier Resources' 2007 and

2008 Financial Statements are also irrelevant to KLOF's personal jurisdiction argument.  (Mayer

Decl. ¶ 6, Ex. C.)  These exhibits are used to present Defendants' version of the facts and have no

bearing on KLOF's personal jurisdiction motion and are facts outside the pleadings.  (KLOF Mem.

2-3.)

Likewise, KLOF argues that Khronos Group maintained sufficient assets under management

to satisfy a judgment in the Legacy Adversary Proceeding.  (KLOF Mem. 4-5, 15; Mayer Decl. ¶¶

13, 15-16, 19, Ex. G, I, L.)  This has no bearing on KLOF's jurisdictional challenge.  The value of

Khronos Group's Distribution Account has no impact on the Court's jurisdictional analysis.  As

such, even if this Court is inclined to review any of Mr. Mayer's new evidence, it should disregard

Exhibits A-C, G, I, L and all related paragraphs in the Mayer Declaration. (Mayer Decl. ¶¶ 4-6, 13, 15-16, 19.)

Further, to the extent this Court considers the Mayer Declaration, it should still find that it lacks credibility, is incomplete, and is inaccurate. As discussed below, the Continuing Account, and ultimately KLOF, received a substantial amount of money from the Distribution Account, following the alleged separation of the two accounts at the Khronos Group, contrary to Rafael Mayer's testimony and KLOF's brief. Moreover, Khronos Group, *i.e.* the Distribution Account, was liquidated in 2017 and any potential remaining assets are gone. (Compl. ¶ 104.) Based on this, in viewing the factual allegations in the light most favorable to the Trustee, the Trustee has made a *prima facie* showing that KLOF received subsequent transfers of BLMIS customer property and KLOF's Motion should be denied. *See Energy Brands Inc.*, 571 F. Supp. 2d at 465 (citation omitted).

### A.    THE MAYER DECLARATION CONTAINS INACCURACIES AND MUST BE DISREGARDED BY THIS COURT

The Trustee is unable to confirm the veracity of Mr. Mayer's statements as to whether Montpellier Resources's assets were transferred to the Distribution Account in 2009. Mr. Mayer states that "[t]he Continuing Account . . . never received any of the funds that [Khronos Group] received from Legacy through Montpellier International," (Mayer Decl. ¶ 12), because assets and liabilities of Khronos Group were purportedly transferred to the Distribution Account. (Mayer Decl. ¶ 10.) He further states that "the assets that [Khronos Group] initially linked to the Distribution Account included [Khronos Group's] ownership interest in Montpellier USA Holdings Ltd., Montpellier Redemption Holdings Company Ltd., and *Montpellier International*." (Mayer Decl. ¶ 11 (emphasis in original).)

To support these claims, Mr. Mayer refers to two board resolutions from February 2009 and April 2010. (Mayer Decl. ¶¶ 10-11.) However, the documents referenced in the February 27, 2009

resolution, including "a statement of the assets and liabilities of [Khronos Group]as at  December

31, 2008" and the terms of the reorganization plan have never been provided to the Trustee or this

Court.  (Mayer Decl. Ex. E, at 2).  Nor has KLOF provided any documentation to show that the

assets and liabilities of Khronos Group from the date of registration were actually transferred to the

Distribution Account.  In fact, a review of the assets, in the limited sections of the Financial

Statements provided to this Court, suggests otherwise: Khronos Group had over $1.4 billion at the

end of December 31, 2008 before becoming a segregated accounts company and there was just over

$500 million in the Distribution Segregated Account on December 31, 2009 following the

formation of the segregated accounts company.  (Mayer Decl. Exs. C-G.)

The Mayer Declaration also attaches a resolution showing that 9,514 shares of Montpellier

International were transferred from "Montpellier Resources Ltd." to "Montpellier Resources Ltd.

for and on behalf of the Distribution Segregated Account."  (Mayer Decl. Ex. F.)  However, no

documentation other than Rafael Mayer's statement (Mayer Decl. ¶ 11) has been provided to verify

that these were all the Montpellier International shares owned by Montpellier Resources Ltd.

The Mayer Declaration further ignores the fact that, after receiving the BLMIS money from

Montpellier International between September 2007 and October 2008 and becoming a Segregated

Accounts Company in 2009, Khronos Group transferred money to the Continuing Account and

KLOF.  (Compl. ¶¶ 63, 91; *Id.* Ex. D, ECF No. 1-4.)  For example, a review of the ledgers produced

by Khronos, that the Trustee used and referenced in his Complaint (*Id.* ¶ 93), show that KLOF and

the Continuing Account received over $550 million from Khronos Group.  In fact, just in looking at

one small excerpt from the Khronos Group's ledger, it is clear that Khronos Group transferred

money from Khronos Group to either the Liquid Opportunities Fund Segregated Account and/or

KLOF on October 25, 2010, March 15, 2011, July 26, 2011, October 19, 2012, and July 15, 2013.

(*See* Warshavsky Decl. Ex. 12.)  Therefore, as the Trustee has pleaded, and contrary to Mr. Mayer's

29

testimony, KLOF did receive transfers of BLMIS customer property.  *See also infra* Section VI.

And while KLOF may try to argue that, as a factual matter, the Trustee will have a hard time tracing

this money back to BLMIS, "it is premature to cut off the Trustee's opportunity to satisfy his

burden on a motion to dismiss because the burden may be a difficult one to meet."  *Merkin*, 515

B.R. at 152.

Furthermore, as the Court has already explained in *Picard v. Estate of Stanley Chais* (*In re*

*BLMIS LLC*) in finding that the Trustee as an outsider was entitled to discovery on the subsequent

transfer claims, and the transfers here involve "a group of interrelated individuals and entities

closely associated with [Legacy, Khronos, and Rafael Mayer] . . . [and w]hether they additionally

received Subsequent Transfers of BLMIS funds from one another is a question to which they, and

they alone have the requisite information."  445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011).

Accordingly, this Court should deny the motion to dismiss and permit this case to move forward

into discovery.

### B.     THE MAYER DECLARATION MISCHACTERIZES THE TOTAL ASSETS AVAILABLE AT KHRONOS GROUP TO COVER A POTENTIAL JUDGMENT

The Mayer Declaration is inaccurate and mischaracterizes the net assets in the Distribution

Account of Khronos Group.  Mr. Mayer testifies that "[t]he Khronos Group board resolved that the

Distribution Account would 'at all times maintain sufficient assets under management to meet the

Maximum Potential Judgment [in the Litigation] and all other contractual obligations, expenses, and

liabilities.'"  (Mayer Decl. ¶ 16, Ex. I.)  The Mayer Declaration states that the Distribution Account

had "approximately $557 million in net assets" on December 31, 2009.  (Mayer Decl. ¶ 13, Ex. G.)

By December 31, 2011, however, the Distribution Account only had $194 million in net assets

(Mayer Decl. ¶ 19, Ex. L.)  Based on this, KLOF argues that "neither the creation nor funding of

KLOF left the Distribution Account with insufficient assets to meet its liabilities, either contingent or otherwise." (KLOF Mem. 15.)

First, the Mayer Declaration fails to explain how nearly $363 million of Khronos Group assets were depleted in two years and where they went. Yet, as discussed, some those assets went directly from the Distribution Account to the Continuing Account after Khronos Group became a segregated accounts company. The chart below further displays the reduction in net assets using the limited financial statements provided in the Mayer Declaration as follows:

| Date | Entity / Account | Amount in Net Assets[9] | Net Change |
|---|---|---|---|
| December 31, 2007 | Khronos Group | $2,470,646,567[10] | |
| December 31, 2008 | Khronos Group | $1,412,345,173[11] | -$1,058,301,394 |
| February 27, 2009 | Khronos Group Divides into Distribution and Continuing Segregated Accounts | | |
| December 31, 2009 | Khronos Group – Distribution Account | $556,922,301[12] | -$855,422,872 |
| December 19, 2011 | Khronos Group – Transfers All Assets and Liabilities of Continuing Account to KLOF | Amount is unknown | |

[9] The Mayer Declaration fails to properly explain the net assets shown in the financial statements. Mr. Mayer testifies that Khronos Group agreed to "maintain sufficient assets under management" to satisfy a potential judgment. (Mayer Decl. ¶ 16.) Assets in the financial statements do not necessarily represent the total amount of liquid cash that can be used to pay a judgment or other debts. While the 2011 financial statement list the nets assets at $194,340,700 at the end of 2011 (Mayer Decl. Ex. L), the assets listed therein include investments in various funds, which upon the sale of those investments, maybe due to Khronos Group's investors. Without having a full understanding of the Khronos Group's Distribution Account assets, its investment holdings, and the entirety of Khronos Group's financials, it is impossible to compare the amount listed (Mayer Decl. Ex. L) against the Legacy Final Judgment and Order (Final Judgment, ¶ 1) to verify Mr. Mayer's statement that there were sufficient assets to cover that judgment along with "all other contractual obligations, expenses and liabilities." (Mayer Decl. Ex. I.)

[10] Mayer Decl. ¶ 6, Ex. C.

[11] *See id.* Exhibit E to the Mayer Declaration describes "a statement of the assets and liabilities of [Montpellier Resources] as at (sic.) December 31, 2008," which was provided to the directors and "carefully considered" in determining whether to convert Montpellier Resources into a segregated accounts company. (Mayer Decl. Ex. E, at 1-2.) It is unclear whether the partial document attached to Exhibit C of the Mayer Declaration is the same document referenced in Exhibit E but is also incomplete as it includes only pages 1 and 7 and does not list the any of Montpellier Resources' liabilities. (*See* Mayer Decl. Ex. C, at 3-4.)

[12] Mayer Decl. ¶ 13, Ex. G.

| December 31, 2011 | Khronos Group – Distribution Account | $194,340,700[13] | -$362,581,601 |
| September 6, 2017 | Khronos Group – Voluntarily Dissolved | Remaining assets, if any, are unknown. | |

The Mayer Declaration is silent about these reductions, Khronos Group's liquidation, and the fact that Rafael Mayer was Khronos Group's liquidator.  (Compl. ¶ 104.)  But what the Mayer Declaration does show is that Khronos Group's goal of the Distribution Account was always to liquidate it.  (Mayer Decl. Ex. G, at 3 (the "principal objective" of the Distribution Account was to liquidate the investments).)  Of course, because Khronos Group was liquidated, it did not maintain sufficient assets, or any assets for that matter, to satisfy a judgment.

Accordingly, the Mayer Declaration and KLOF's representations are incomplete and should be not be considered by this Court.

## V.     JURISDICTIONAL DISCOVERY

If the Court finds that the Trustee has not made a *prima facie* showing of jurisdiction over KLOF, the Court should permit jurisdictional discovery.  The Court has full discretion to permit jurisdictional discovery.  *See Balintulo v. Daimler AG (In re S. Afr. Apartheid Litig.)*, 643 F. Supp. 2d 423, 431 (S.D.N.Y. 2009) ("Allowance of jurisdictional discovery is committed to the discretion of the district court.").  Discretion is permitted because personal jurisdiction inquiries are by nature very fact-specific, as they involve a review of the totality of the circumstances.  *See id; In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207-208 (2d Cir. 2003) (reversing lower court's decision denying request for limited jurisdictional discovery prior to dismissal of case for lack of jurisdiction).  As discussed above, KLOF's activities are being directed from New York due to its numerous activities and contacts with New York.  Rafael Mayer, a principal of Khronos LLC, is a KLOF director and has dominated and controlled KLOF as well as its predecessor entity Khronos

---

[13] Mayer Decl. ¶ 19, Ex. L.

Group.  (Compl. ¶¶ 20, 80-81; Mayer Decl. ¶ 1.)  Therefore, the Trustee has, at a minimum

presented evidence to the Court that jurisdictional discovery could lead to evidence demonstrating

jurisdiction over KLOF is warranted.

## VI.    THE TRUSTEE HAS SUFFICIENTLY PLEADED A § 550 CLAIM TO RECOVER SUBSEQUENT TRANSFERS FROM KHRONOS LIQUID OPPORTUNITIES FUND

Section 550(a) of the Bankruptcy Code allows the Trustee to recover transfers made to "the

initial transferee of such transfer or the entity for whose benefit such transfer was made" or "any

immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550(a).  The Court need

only apply a Rule 8 analysis to determine "whether a claim to recover fraudulent transfers from a

subsequent transferee is adequately pled." *Picard v. Merkin (In re BLMIS LLC)*, 440 B.R. 243, 269

(Bankr. S.D.N.Y. 2010); *SIPC. v. BLMIS LLC (In re BLMIS)*, 531 B.R. 439, 473 (Bankr. S.D.N.Y.

2015) ("*Omnibus Good Faith Decision*") ("Rule 8(a) governs the portion of a claim to recover the

subsequent transfer"); *Picard v. Madoff (In re BLMIS LLC)*, 458 B.R. 87, 119 (Bankr. S.D.N.Y.

2011) ("*Madoff Family Decision*"); *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R.

293, 317–18 (Bankr. S.D.N.Y. 1999).

To meet a Rule 8 pleading standard for a section 550(a) claim, the Trustee must only plead

the "necessary vital statistics—the who, when, and how much of the purported transfers"—to

establish an entity as a subsequent transferee of the funds in dispute.  *Picard v. Legacy Capital Ltd.*

*(In re BLMIS LLC)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. 2016) (citation and internal quotation marks

omitted); *see also Omnibus Good Faith Decision*, 531 B.R. at 473; *Stratton Oakmont*, 234 B.R. at

318.  However, a "dollar-for-dollar accounting of the exact funds at issue" is not required for the

Trustee to meet his burden.  *Picard v. Cohmad Sec. Corp.* (*In re BLMIS LLC*), 454 B.R. 317, 340

(Bankr. S.D.N.Y. 2011).

Based on the Complaint, KLOF is "adequately apprise[d]" of the subsequent transfers at issue.[14] *Stratton Oakmont*, 234 B.R. at 318. In the Complaint, the Trustee clearly set forth how the initial transfers Legacy Capital received from BLMIS were then transferred to Defendant Montpellier International, subsequently transferred to Defendant Khronos Group, and finally to Defendant KLOF.

### A.    LEGACY SUBSEQUENT TRANSFERS TO MONTPELLIER

First, the Complaint pleads the transfers Legacy made to Defendant Montpellier with specificity:

> Prior to the Filing Date, a portion of the Legacy Initial Transfers was subsequently transferred to Defendants Montpellier and Prince (the "Legacy Subsequent Transfers"). Montpellier and Prince received the Legacy Subsequent Transfers as follows: Montpellier received $50,000,000 on September 4, 2007—which, based on records currently available to the Trustee, included up to approximately $12,505,850 of fictitious profits—and $27,000,000, consisting entirely of fictitious profits, on October 4, 2007. . . A chart setting forth the known Legacy Subsequent Transfers to Montpellier is attached as Exhibit C.

(Compl. ¶¶ 60-61, Ex. C.)

### B.    MONTPELLIER SUBSEQUENT TRANSFERS TO KHRONOS GROUP (MONTPELLIER RESOURCES)

Then, the Complaint pleads that on September 7, 2007, October 5, 2007, December 6, 2007, January 9, 2008, February 6, 2008, March 6, 2008, April 8, 2008, July 15, 2008, August 7, 2008, and October 10, 2008, Montpellier transferred $39,505,850 of the Legacy Subsequent Transfers it

---

[14] Since this is a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court should only consider documents within the four corners of the Complaint and disregard any facts and documents set forth in the Mayer Declaration. *See Gentry v. Kaltner*, No. 170-CV-8654 (KMK), 2020 WL 1467358, at *5 (S.D.N.Y. Mar. 25, 2020) (refusing to consider the defendants' declaration with respect to the Rule 12(b)(6) motion as it is improper for the court to consider). None of the documents or information in the Mayer Declaration involve information that is either integral to the Complaint or publicly available information the Court can take judicial notice of with the exception of the Certificate of Incorporation of Change of Name for Khronos Group.  (*See* Mayer Decl. Ex. H).

received to Montpellier Resources, which later changed its name to Khronos Group. (*Id.* ¶ 63, Ex.

D.)

## C.   KHRONOS GROUP (MONTPELLIER RESOURCES) BECAME KLOF

Finally, the Trustee pleads how the Montpellier Subsequent Transfers received by

Montpellier Resources (Khronos Group) are recoverable from KLOF.

Specifically, the Trustee pleads that after Montpellier Resources registered in Bermuda as a

Segregated Accounts Company on March 11, 2009, Montpellier Resources conducted its

investment activities through two classes of shares that were linked to segregated accounts: the

"Distribution Class" and the "Continuing Class."  (*Id.* ¶ 91.)  The Continuing Class account became

the "Liquid Opportunities Fund Segregated Account," after Montpellier Resources formally

changed its name to Khronos Group.  (*Id.* ¶ 92.)  In 2011, after KLOF was registered, the

Continuing Class assets were transferred to KLOF.  (*Id.* ¶ 93.)  The Trustee further pleads that

beginning on July 26, 2011, the Khronos Group transferred $109,253,099 to KLOF, for which

ledger entries specifically noted these payments were in connection with the "Continuing Fund."

(*Id.*)  The Khronos Group was then dismantled, dissolved, and liquidated by the Mayers, while

"KLOF succeeded and took over for Khronos Group."  (*Id.* ¶¶ 94, 99.)  Because of this "[t]he

Montpellier Subsequent Transfers received by Khronos Group are therefore recoverable from

KLOF."  (*Id.* ¶¶ 94-95.)  The Trustee, therefore, seeks to recover the Legacy Subsequent Transfers

from KLOF under Count One of the Complaint.  (*Id.* ¶ 95, p. 28.)

The Trustee has pleaded the requisite allegations to satisfy his burden on a cause of action

under section 550, including that: (i) the Transfers to Montpellier Resources originated with Legacy

(ii) KLOF was a continuation of the Khronos Group and (iii) the Montpellier Subsequent Transfers

received by Khronos Group are recoverable from KLOF.  (*Id.* ¶¶ 60-63, 91-95.)  There is no magic

language, as KLOF suggests, that must be included.  However, if the Court determines otherwise,

the Trustee is ready to amend the Complaint to include additional allegations to: (i) state that KLOF

received transfers of BLMIS customer property out of Legacy Capital and (ii) to add KLOF to

Count One of the Complaint, since it is clearly an oversight as KLOF is a continuation of Khronos

Group, and the Trustee had pleaded that it seeks to recover the transfers to Khronos Group from

both Khronos Group and KLOF.  (*Id.* ¶¶ 94-95, 121-123; *see also Id.* at 29 ("[o]n the Count One,

recovering the Legacy Subsequent Transfers, or the value therefore from . . . KLOF for the benefit

of the estate of BLMIS").

      The only response KLOF could muster in response to the allegation that KLOF succeeded

and took over for the Khronos Group is: "whatever that means."  (KLOF Mem. 18.)  KLOF does

not, and cannot, dispute that the continuing portion of Khronos Group became KLOF.  (Compl. ¶

93.)  Nor can KLOF argue that it has not been adequately apprised of the transfers the Trustee seeks

to recover from KLOF.  *Chais*, 445 at 235-36 ("[c]omplaint satisfies Rule 8 by providing 'fair

notice' . . . of the Subsequent Transfers sought to be recovered" by saying that "some or all of

the[se] Transfers were subsequently transferred . . . to Defendant Chais and/or other Defendants in

the form of payment of commissions or fees, transfers from one account to another, or other

means.") (citation and internal quotation marks omitted); *Cohmad*, 454 B.R. at 341 (although the

Trustee did not plead the transfers of commissions to the individual representatives, listing the total

commissions due adequately apprised defendants of "which transactions are claimed to be

fraudulent and why, when they took place, how they were executed and by whom.") (citation and

internal quotation marks omitted).

      KLOF relies on several cases in support of its position that the Trustee did not make the

requisite pleading; however, the Trustee's allegations are significantly more detailed than those in

the cases KLOF cites.  In all those cases, the pleadings only made general reference to the

possibility of the defendants' receipt of transfers.  First, in the *Omnibus Good Faith Decision*, the

Trustee could only allege "[o]n information and belief, some or all of the Transfers were

subsequently transferred . . . to [the three individual defendants]."  531 B.R. at 473 (citation and

internal quotation marks omitted).  The Court found such allegations lacked the necessary

specificity.  *See id.*  Likewise, in *Gowan v. Amaranth LLC,* (*In re Dreier LLP*), the Dreier trustee

asserted that "it is likely that Amaranth Partners invested the money . . . transferred to it pursuant to

the Note Fraud to Amaranth LLC."  452 B.R. 451, 465 (Bankr. S.D.N.Y. 2011).  The Trustee then

pleaded that "[o]n information and belief, Amaranth Partners transferred its Transfers to Amaranth

LLC."  *Id.* (alteration in original) (citation and internal quotation marks omitted)  Finally, in the

*Madoff Family Decision*, the Court found that the complaint only alleged that "[o]n information and

belief, some or all of the transfers were subsequently transferred by one or more [of the Defendants]

to another Family Defendant, either directly or indirectly without providing any sort of estimate of

the amount of the purported Subsequent Transfer, or when or how such Transfer occurred."  458

B.R. at 119-20 (citation and internal quotation marks omitted).  The court in the *Madoff Family*

*Decision* went on to state that while the failure to indicate specific amounts does not necessarily

warrant dismissal, "its failure to provide even a modicum of specificity with respect to the

Subsequent Transfers so as to put the Defendants on notice as to which ones the Trustee seeks to

recover does so warrant" dismissal.  *Id.* at 120.  Here, the Trustee has certainly provided the

requisite specificity with respect to the subsequent transfers KLOF received.  The Complaint makes

clear that the Trustee seeks to recover from KLOF the transfers that went from Legacy to

Montpellier International to the Khronos Group, the amounts and dates of which are detailed in

Exhibits C and D (ECF Nos. 1-3, 1-4), because KLOF was a continuation of Khronos Group.

(Compl. ¶¶ 91-95.)  Accordingly, KLOF's motion to dismiss the Trustee's subsequent transfer

claim should be denied.

## VII.    THE TRUSTEE SHOULD BE PERMITTED LEAVE TO AMEND

Should this Court find KLOF's arguments persuasive, the Trustee respectfully requests leave to further amend the Complaint.  *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith").  It is well-settled that the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."  *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) (q*uoting Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006)).

## <u>CONCLUSION</u>

For the reasons set forth above, the Trustee respectfully requests that KLOF's motion to dismiss be denied in its entirety.

Dated: May 4, 2021                              Respectfully Submitted,
     New York, New York

                                                 BAKER & HOSTETLER LLP

                                   By:  */s/ Oren J. Warshavsky*
                                       David J. Sheehan
                                       Oren J. Warshavsky
                                       Carrie A. Longstaff
                                       Tatiana Markel
                                       Jason S. Oliver
                                       Peter B. Shapiro
                                       Megan A. Corrigan
                                     45 Rockefeller Plaza
                                     New York, New York 10111
                                     Telephone: (212) 589-4200
                                     Facsimile: (212) 589-4201

                                     *Attorneys for Irving H. Picard,*
                                     *Trustee for the Substantively Consolidated*
                                     *SIPA Liquidation of Bernard L. Madoff*
                                     *Investment Securities LLC and the Chapter 7*
                                     *Estate of Bernard L. Madoff*