# Exhibit 1

**BINDER & SCHWARTZ LLP**
Eric B. Fisher
Lindsay A. Bush
Tessa B. Harvey
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008

*Attorneys for Khronos LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,

                                 Plaintiff-Applicant,

     -against-

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                                 Defendant.

------------------------------------------------------------------------x

In re:

BERNARD L. MADOFF,

                                 Debtor.

------------------------------------------------------------------------x

Adv. Pro. No. 08-01789 (SMB)

SIPA LIQUIDATION

(Substantively Consolidated)


**DECLARATION OF RAFAEL MAYER IN SUPPORT OF KHRONOS LLC'S**
**MOTION TO QUASH RULE 2004 SUBPOENA**

I, Rafael Mayer, declare as follows:

1.      I am the Managing Member of Khronos LLC ("Khronos") and submit this declaration in support of Khronos' motion to quash the subpoena issued pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004").

2.      More than ten years ago, on July 7, 2010, Irving H. Picard, as Trustee (the "Trustee") for the liquidation of Bernard L. Madoff Investment Services LLC ("BLMIS") served identical Rule 2004 subpoenas on David Mayer and me, as officers of Khronos (each, an "Original Subpoena").  A true and correct copy of the Original Subpoena addressed to me is attached hereto as Exhibit A.

3.      Our counsel at the time, Katten Muchin Rosenman LLP, submitted responses and objections to the Original Subpoenas on July 29, 2010.  On October 6, 2010, in response to the Original Subpoenas, our counsel produced approximately 20,000 pages of documents to the Trustee from Khronos' files consisting of financial documents, agreements, general corporate documents, BLMIS account statements, and correspondence.

4.      A decade later, the Trustee served another Rule 2004 subpoena (the "Current Rule 2004 Subpoena"), dated July 13, 2020, directed to Khronos.  A true and correct copy of the Current Rule 2004 Subpoena is attached hereto as Exhibit B.

5.      Khronos ceased providing any accounting or financial services to Prince Assets LDC on December 31, 2015, and thus is no longer in possession of any documents or information relating to Prince.

*  *  *

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct.

Executed on August 18, 2020

_____

Rafael Mayer

# Exhibit A

# UNITED STATES BANKRUPTCY COURT

SOUTHERN _____ District of _____ NEW YORK

Securities Investor Protection Corporation,

**SUBPOENA FOR RULE 2004 EXAMINATION**

                Plaintiff,

Case No.* Adv. Pro. No. 08-01789 BRL

    v.

Bernard L. Madoff Investment Securities LLC,

                Defendant.

To:

    Rafael Mayer
    Khronos LLC
    140 East 45th Street, 28th floor
    New York, NY 10017

☒ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111 | July 21, 2010 at 10:00 am |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents described in Attachment A to this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Tel.:   212-589-4200<br>Attn:  Brian Esser, Esq. | July 20, 2010 at 1:00 pm |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| _Brian K. Esser_  Attorney | July 7, 2010 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Brian K. Esser, Esq.  Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111

      * If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

American LegalNet, Inc.
www.FormsWorkflow.com

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
              DATE                                SIGNATURE OF SERVER


_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D)Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

## ATTACHMENT A TO SUBPOENA
## TO RAFAEL MAYER

### A.    DEFINITIONS AND INSTRUCTIONS

1.    The term "Rafael Mayer," "you" and "your" mean and include Rafael Mayer and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, partner, joint venture, principal, member, officer, director, shareholder, manager, employee, fiduciary, beneficiary, nominee, accountant, attorney-in-fact, attorney, auditor, bookkeeper, consultant, investment adviser, trustee, beneficiary, agent or representative thereof, or person acting on your behalf or for your benefit, including without limitation Rafael Mayer, without regard to whether the relationship of such person to you occurred in the past or currently exists.

2.    "Madoff" means and includes (a) Bernard L. Madoff Investment Securities, LLC, any parent, subsidiary, affiliate, predecessor, successor, partner, joint venturer, representative, manager, officer, employee and any related entity including but not limited to Madoff Securities International LLC; Madoff Securities International, Ltd.; Madoff Energy Holdings LLC; Madoff Brokerage and Trading Technologies LLC; Northern Waters LLC; BCC II LLC; 4th & Forty LLC; Angler Capital Partners; Urban Angler LLC; Davin Capital LP; Rogge Capital Management; P&C Restaurants; Underpar LLC; Abtech Industries Inc.; Stemline Therapeutics; Blow Styling Salon LLC; Massage NYC; Conglomerate Gas Resources LLC; AHM Ventures LLC; 916 SE 12 Street LLC; Nehst Media LLC; Primex Holdings LLC; ExchangeLab; PetRx; BLM Air Charter LLC; Madoff Family LLC; The Madoff Family Foundation; Abel Automatics Inc.; Abel Holdings LLC; Essex Realty Development LLC; The Schlichter Foundation and its representatives and employees (collectively, "BLMIS"); and (b) Bernard L. Madoff ("BLM") and any and all relatives, related persons including but not limited to Ruth Madoff; Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana Madoff/Swanson/Skoller; Andrew Madoff; Deborah Madoff/West; Mark Madoff; Jennifer Madoff/Stevens; Stephanie Madoff; Alec Madoff; Henry A. Madoff; Jeff M. Madoff; Sonya Madoff; Madoff Family Foundation; Gertrude E. Alpern; Lewis Alpern; The Paul Alpern Residuary Trust; Gertrude Alpern; Leonard Alpern; Minette Alpern Trust; Eileen Alpern; Jonathan Alpern Trust; Jonathan Alpern; Amanda Alpern Trust; Robert Roman; Joan Roman; Amy Luria Partners LLC; John (Joan) J. Fisher Partners; Trust of Gladys C. Luria and Robert Luria Partners.

3.    "Asset" means any real property, personal property, cash, security, loan, interest, equity, or other thing of value owned or held by you including but not limited to assets or properties which are owned or held by trustees, agents, or nominees for your benefit, or on your behalf. For any natural person, "Asset" includes any real property, personal property, cash, security, loan, interest, equity, or any thing of value owned or held by your spouse, family members or any entity in which you have an interest, except those which constitute separate property under applicable law.

4.    "CBOE" means the Chicago Board of Options Exchange.

5.    "Communication" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 7026-1 of the Local Bankruptcy Rules and Civil Rule 26.3 of the Local District Rules. The term "communication" specifically includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or portrayed in any "document," and specifically includes:  (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) written communications, including communications by email.

6.    "Concerning" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 7026-1 of the Local Bankruptcy Rules and Civil Rule 26.3 of the Local District Rules.  The term "concerning" specifically means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

7.    "DTCC" means the Depository Trust and Clearing Corporation, and any parent, affiliate, subsidiary, predecessor and successor thereof, including without limitation the Depository Trust Company ("DTC") and the National Securities Clearing Corporattion ("NSCC").

8.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 7026-1 of the Local Bankruptcy Rules and Civil Rule 26.3 of the Local District Rules.  "Document" specifically includes responsive content regardless of the media upon which it is expressed including but not limited to paper, physical evidence and Electronically Stored Information, as that term is defined in the Federal Rules of Civil Procedure.  "Document" includes but is not limited to all computerized data or content stored on electromagnetic media even if they are designated as drafts or as deleted.  "Document" includes but is not limited to voicemail messages, audio files, all e-mail messages including but not limited to web-based email messages such as Gmail messages, text messages, and all other formats including but not limited to word processing, electronic spreadsheets, images, databases, Intranet system data, Internet system data, telephone or cellular telephone calling records, or data compilations. "Document" includes "metadata" which includes but is not limited to all document properties, imbedded codes, links, and descriptions of the document's source as stored in the ordinary course of business.  "Document" includes all related content including but not limited to attachments to documents, linked documents and appended documents as well as descriptions of each document's organization such as custodians, files, etc.  "Document" includes multiple copies or versions of documents, an e-mail or its attachment(s) distributed to multiple recipients, or any other non-identical copy of a document so that each are separate documents within the meaning of this term.  Identical copies of any "document" stored in distinct locations are separate documents within the meaning of this term.

9.    "Fairfield Greenwich" means and includes Fairfield Greenwich Group, Fairfield Greenwich Advisors, LLC, Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Ltd., Fairfield International Managers, Inc., Greenwich Sentry, L.P., Greenwich Sentry Partners, L.P., Fairfield Sentry Limited, Fairfield Lambda Limited, Fairfield Sigma Limited, and their respective officers, directors, employees, partners, members, corporate parent, subsidiaries, and affiliates, including, but not limited to, Walter M. Noel, Jr., Jeffrey Tucker, Andrés Piedrahita, Amit Vijayvergia, Brian Francouer, Lourdes Barreneche, Cornelis Boele, Philip Toub, Richard Landsberger, Charles Murphy, Andrew Smith, Daniel Lipton, Mark McKeefry, Harold Greisman, Santiago Reyes, Jacqueline Harary, Robert Blum, Corina Noel Piedrahita, Maria

Teresa Pulido Mendoza, Yanko della Schiava, Matthew C. Brown, Vianney d'Hendecourt, David Horn, Julia Luongo, Disha Attavar, Jose Dios, Lauren Ross, and Mauro Musciacco.

10.    "FINRA" means the Financial Industry Regulatory Authority and any predecessor or successor entity.

11.    "Interest" means, without limitation, any cause, concern, responsibility, business, share, property, undertaking, right, participation or advantage owned by you, including without limitation, any and all capital stock, equity interests and debt interests, as well as any and all profits and/or capital interests in any partnerships, any and all membership interests in any limited liability companies, and any and all interests of any other kind or classification in any U.S. or foreign entity, as well as any and all other securities of any kind whether considered legal or beneficial ownership, ownership in form, a nominee interest, contingent or otherwise. "Interest" or "interests" shall also include restricted stock or shares, options, warrants, stock appreciation rights, other conversion privileges, and derivatives, including but not limited to swaps, 1256 contracts, hedging contracts and CFDs.

12.    "Madoff Account" means each and every account, borrowing, credit or cash advance facility (including any credit, debit, ATM or similar card), deposit, financial instrument, fund, investment property, other property, tangible or intangible, lease, loan, mortgage, note, money or thing of value held, maintained, made or extended by, to or from Madoff in Madoff's name or for Madoff's benefit, or any other person that Madoff owned or controlled or on whose behalf Madoff had power or authority or otherwise purported to act, alone or with other persons, or by Madoff for the benefit or use of any other person or entity,

13.    "Madoff Fund" means and includes without limitation any fund, fund of hedge or other funds, hedge fund, investment company, partnership, limited partnership, pension fund, endowment, foundation, charity, business, statutory or other trust, pool or other similar vehicle or entity, wherever and however organized by you or any other person, in, through or by which funds, moneys or assets were, in whole or in part, directly or indirectly, singly or jointly, invested in or managed by Madoff or used to obtain investment returns directly or indirectly linked or indexed to returns purportedly earned or generated by Madoff, including without limitation Fairfield Greenwich and Tremont.

14.    "Madoff Transfer" means any direct or indirect payment or transfer of any thing of value made by Madoff to you or any other person or by you or any other person to Madoff, by any means or instrumentality, including without limitation check, wire transfer, debit, deposit, credit to an account, return, exchange or swap of any property or any interest therein, or by any other means.

15.    "NASD" means the National Association of Securities Dealers and any successor entity.

16.    "OEX" means and includes, and refers to the symbol commonly used for, any Standard & Poor's 100 Index Put or Call Option traded on the CBOE.

17.    "Person" means any natural person or any business, not-for-profit, legal, governmental or other incorporated or unincorporated entity, association, fund, organization or group.

18.     "Relevant Period" refers to the period beginning on the date when BLMIS initially registered as a broker-dealer under the Securities and Exchange Act of 1934 to the present. Unless otherwise indicated, the documents sought herein are for the Relevant Period.

19.     "SEC" means the Securities and Exchange Commission.

20.     "Security" means any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, forward or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, forward, or privilege relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

21.     "SIPC" means the Securities Investor Protection Corporation.

22.     "Suspicious Activity Report" means any reports, mandated by law, made to law enforcement by depository and other financial institutions regarding certain financial transactions.

23.     "Transfer" means and includes any gift, demise, grant, sale, assignment, lease, or conveyance.

24.     "Tremont" includes without limitation, Tremont Group Holdings, Tremont Partners, Inc., Rye Select Broad Market Fund LP, Rye Select Broad Market Portfolio Limited, the Rye Select Broad Market Prime Fund L.P., Rye Select Broad market Insurance Portfolio LDC, the Rye Select Broad Market Insurance Fund LP, Rye Select Broad Market XL Fund, L.P., Rye Select Broad Market XL Portfolio Limited, and their respective officers, directors, employees, partners, members, corporate parent, subsidiaries, and affiliates, including without limitation:  Robert Schulman, Sandra Manzke, Darren Johnston, Suzanne Hammond, Harry Hodges, Jim Mitchell, Rupert Allen, Stephen Clayton, Stuart Pologe, Patrick Kelly, Cynthia Nicoll, Ileana Lopez-Balboa, Michael Lynch, James Gabriel McCormick, Brian Marsh, John Matwey, James Mitchell, Monika Pascu, Tom Sandlow, Robert I. Schulman, Barry Tannen, Frank Trippoli, Aleksandr Weiler, Edward Wright, Mario Gabelli and Leon Meyers.

25.     For all purposes herein, spelling, grammar, syntax, abbreviations, idioms and proper nouns shall be construed and interpreted to give proper meaning and consistency to its context.

26.     The following rules of construction apply to this Subpoena:

        (a)     "Any" and "all" shall be deemed to include the other;

(b)     "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Subpoena all responses that might otherwise be construed to be outside of its scope;

(c)     "All" and "Each" shall be construed as "all and each";

(d)     The singular form of any word includes the plural and *vice versa*; and

(e)     Reference to any person that is not a natural person and is not otherwise defined herein refers to and includes any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such person.

27.    These discovery requests shall be read reasonably in recognition of the fact that the Trustee does not have the information being sought and that you generally have or can obtain such information and documents more readily than the Trustee serving them.

28.    All documents shall be identified by the request(s) to which they are primarily responsive.

29.    Produce all documents and all other materials described below in your actual or constructive possession or custody, or subject to your control, including in possession, custody or control of current and former employee, wherever those documents and materials are held, including on personal computers, PDAs, wireless devices or electronic mail systems such as Gmail, Yahoo or the equivalent.

30.    Produce all documents maintained on paper, electronically stored information, electronic mail and instant messaging platforms regardless of whether the electronic mail or instant messaging platform operates on your own server or Bloomberg or Reuters or similar servers and platforms.

31.    Produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a copy should be produced in lieu thereof and should be legible and bound or stapled in the same manner as the original.

32.    Documents not otherwise responsive to this Subpoena should be produced if such documents mention, discuss, refer to, explain or concern one or more documents that are called for by this Subpoena, if such documents are attached to, enclosed with or accompany documents called for by this Subpoena or if such documents constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

33.    Documents attached to each other should not be separated; separate documents should not be attached to each other.

34.    Documents should include all exhibits or appendices which are referenced in, attached to, included or are a part of the requested documents.

35.     If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the Trustee to evaluate the claimed privilege or protection.  At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

36.     You should produce the original of each document requested.  If the original of a document cannot be located or it is unreasonable to produce the original, a fair and accurate copy should be produced in lieu thereof.

37.     With respect to each document to which an objection as to production is made, state the following:

    1.      Nature of the document;
    2.      Date of the document;
    3.      Name and title of the person(s) to whom the document was addressed and copied;
    4.      Name and title of the person(s) who prepared and/or sent the document;
    5.      General subject matter of the document;
    6.      All documents referred to or accompanying such documents;
    7.      Number of pages in the document; and
    8.      Specific ground on which the objection is made.

38.     No part of any request shall be left unanswered merely because an objection has been interposed to another part of the request.

39.     If an objection is made to any request or part thereof under the Federal Rules of Bankruptcy Procedure 7034, the objection shall state with specificity all grounds for that objection.

40.     If a request is objected to as unduly burdensome, you shall (i) indicate the nature of the burden involved in providing the response requested; and (ii) set forth a proposal as to a less burden-incurring response that would provide responsive information.

41.     All requests herein incorporate Fed. R. Bankr. P. 7026-7037, Fed. R. Civ. P. 26-37, and Local Civil Rules for the United States Bankruptcy Court Southern District of New York 7026-7037.

42.     To the extent a document sought herein was at one time, but is no longer, in your actual or constructive possession or custody, or subject to your control, state whether it: (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred to others, and/or (iv) has been otherwise disposed of.  In each instance, explain the circumstances surrounding authorization for such disposition thereof; state the date or approximate date thereof; the contents of said document; and the person who authorized the transfer, destruction or other disposition of such document. Documents prepared prior to, but which relate or refer to, the time period covered by these documents are to be identified and produced.

43.     All requests herein implicitly seek responses concerning the subject matter of the requests, and each request shall be interpreted so as to encompass the liberal scope of discovery set forth in the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, and you are expected to provide any supplementary answers, immediately, in compliance with Fed. R. Bankr. P. 7026.

## B.     DOCUMENTS TO BE PRODUCED

1.     All documents concerning Madoff.

2.     All documents concerning any Madoff Fund, including without limitation Fairfield Greenwich and Tremont.

3.     All documents concerning any person other than any Madoff Fund that invested or transacted with, or whose funds were proposed to be managed by, Madoff, directly or indirectly.

4.     All documents concerning communications between you and Madoff.

5.     All documents concerning communications between you and any Madoff Fund, including without limitation Fairfield Greenwich and Tremont.

6.     All documents concerning any person other than any Madoff Fund that invested or transacted with, or whose funds were proposed to be managed by, Madoff, directly or indirectly.

7.     All documents concerning investment, managerial, performance, operational, back office and other due diligence reviews, investigations, examinations, analyses, deliberations, meetings or recommendations, including but not limited to any business, legal, compliance, credit, financial, operational, quantitative, reputational, risk, suitability, or supervisory assessment or evaluation, by you or any other person concerning Madoff.

8.     All documents concerning investment, managerial, performance, operational, back office and other due diligence reviews, investigations, examinations, analyses, deliberations, meetings or recommendations, including but not limited to any business, legal, compliance, credit, financial, operational, quantitative, reputational, risk, suitability or supervisory assessment or evaluation, by you or any other person concerning any Madoff Fund.

9.     All documents concerning investment, managerial, performance, operational, back office and other due diligence reviews, investigations, examinations, analyses, deliberations, meetings or recommendations, including but not limited to any business, legal, compliance, credit, financial, operational, quantitative, reputational, risk, suitability or supervisory assessment or evaluation, by you or any other person concerning any person other than any Madoff Fund that invested or transacted with, or whose funds were proposed to be managed by, Madoff, directly or indirectly.

10.    All documents concerning any analysis, review, study, investigation, deliberation, evaluation, recommendation, approval or disapproval by any oversight, review, committee or other similar committee, supervisor or other person, including without limitation any legal,

regulatory or compliance, treasury, finance, balance sheet management, systems, market, credit or operational risk, internal audit, management information system, document retention, "know your customer," anti-money laundering, transaction monitoring, new account or product committee, of any Madoff Account or any investment or transaction with Madoff, any Madoff Fund or any other person that invested or transacted with Madoff, directly or indirectly.

11.    All documents concerning due diligence reviews, investigations, examinations or analyses of any persons providing services to Madoff, any Madoff Fund, and any other person that invested or transacted with Madoff, directly or indirectly, including without limitation

- (a)    accounting,
- (b)    administration,
- (c)    auditing,
- (d)    bookkeeping,
- (e)    brokerage,
- (f)    capital introduction
- (g)    client reporting,
- (h)    custody,
- (i)    clearing,
- (j)    consulting,
- (k)    execution,
- (l)    finder,
- (m)    investment advisory or management,
- (n)    legal,
- (o)    marketing,
- (p)    offering and placement agent,
- (q)    prime brokerage,
- (r)    promoter,
- (s)    subscription,
- (t)    redemption,
- (u)    safekeeping,
- (v)    trading counterparty,
- (w)    transfer agency, and
- (x)    valuation and pricing services.

12.    All documents concerning the reputation of Madoff or any "red flags" or risk or indicia of fraud or potential loss associated with investing or transacting directly or indirectly with Madoff, including without limitation documents concerning any theory, hypothesis, opinion, conjecture, rumor, speculation or suspicion concerning the character of the investment strategy or investment performance and returns purportedly executed or generated by Madoff, any Madoff Fund or any other person that invested or transacted with Madoff, directly or indirectly.

13.    All documents concerning the trading volume and price of OEX options on the CBOE in relation to the volume and price required to execute the investment strategy of Madoff.

14.    All documents concerning the trading volume and price of over-the-counter ("OTC") Standard & Poor's 100 index options in U.S. or foreign markets in relation to the volume and price required to execute the investment strategy of Madoff.

15.    All documents concerning the trading volume and price of Standard & Poor's 100 index underlying stocks and U.S. Treasury bills in U.S. and foreign markets in relation to the volume and price required to execute the investment strategy of Madoff.

16.    All documents concerning transactions in and trading volumes and prices of securities purportedly bought or sold by Madoff in connection with any investment management and advisory client activity and market-making and proprietary trading activity.

17.    All documents concerning transactions in and trading volumes and prices of securities executed in the U.S. and foreign listed and OTC markets purportedly utilized by Madoff in connection with investment management and advisory client activity, including without limitation research, sales, trading, marketing and other reports, analyses and compilations of equity, equity option and related derivatives market data and information created, prepared, generated, disseminated, received or obtained by you or any other person.

18.    All documents concerning the dollar value of assets under management invested and managed by Madoff during the Relevant Period.

19.    All documents concerning the possibility that Madoff may have been lending or misappropriating investor funds to support or subsidize the market-making or proprietary trading business of Madoff.

20.    All documents concerning the possibility that Madoff was front-running investor or brokerage client trades to support or subsidize the market-making business of Madoff or the returns purportedly generated by the investment management business of Madoff.

21.    All documents concerning the possibility that Madoff was operating a Ponzi scheme or engaging in any other form of fraudulent or wrongful conduct.

22.    All documents concerning any inconsistency in any description or explanation by Madoff or any other person of the investment strategy and implementation of the strategy of Madoff.

23.    All documents concerning the possibility that Madoff managed, manipulated or guaranteed rates of returns for any Madoff Fund or other Madoff investor.

24.    All documents concerning the financial or statistical character of Madoff's returns.

25.    All documents concerning any "red flag" or any other communication or information evidencing, indicating or suggesting that Madoff or any other person acting in combination with Madoff might have engaged in fraudulent or wrongful conduct prior to the collapse of the Madoff Ponzi scheme.

26.    All documents concerning the article in the May 7, 2001 issue of *Barron's* entitled "Don't Ask, Don't Tell: Bernie Madoff Is So Secretive He Even Asks Investors To Keep Mum."

27.     All documents concerning the article in the December 16, 1992 issue of *The Wall Street Journal* entitled "Wall Street Mystery Features A Big Board Rival."

28.     All documents concerning the article in the May 2001 issue of the *MAR/Hedge Newsletter* entitled "Madoff Tops Charts: Skeptics Ask How."

29.     All documents concerning any investigation or potential investigation of Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly, by any person not affiliated with any U.S. federal, state or local or foreign law enforcement, regulatory or governmental authority or any self-regulatory organization.

30.     All documents concerning any investigation or potential investigation of Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly, by U.S. federal, state or local or foreign law enforcement, regulatory or other governmental authority, or self-regulatory organization, including without limitation the SEC, FINRA, NASD

31.     All documents concerning your or any other person's due diligence of Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly, including without limitation dates and results of on-site visits, names and titles of persons who made any on-site visits; verification of compliance procedures; review of custody arrangements, prime brokerage agreements or other service provider agreements, DVP/RVP agreements, side letters; determinations of the identity of any accountant or auditor, reasons for any change in auditor, confirmation letters received from auditors; review of audited and/or unaudited financial statements; determination of the identity of Madoff legal counsel, identity of any third party service provider; descriptions or explanations of Madoff's internal management, operations, division of responsibility, supervision and compliance organization, functions and responsibilities; and any communication with any person, including without limitation any law enforcement, regulatory or other governmental authority or self-regulatory organization, regarding the foregoing.

32.     All documents concerning any criticism, complaint, objection, inquiry or question by any person concerning any investment or transaction with Madoff, any Madoff Account, Madoff Transfer, Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly.

33.     All documents sufficient to identify the names and addresses of any persons, and the beneficial owners or individual constituents of any such persons that are not natural persons, that invested or transacted directly or indirectly with Madoff, and all documents concerning such investments or transactions.

34.     All documents sufficient to identify the names and addresses of any persons, and the beneficial owners or individual constituents of any such persons that are not natural persons, that considered investing or transacting directly or indirectly with Madoff and did not invest or transact directly or indirectly with Madoff, and all documents concerning their decision not to invest or transact with Madoff.

35.     All documents sufficient to identify any persons that approved, offered or recommended any investment or transaction with Madoff, any Madoff Fund, or any other person that invested

or transacted with Madoff, directly or indirectly, and all documents concerning any such offer or recommendation.

36.    All documents sufficient to identify any persons that disapproved, rejected or refused to approve, offer or recommend any investment or transaction with Madoff, any Madoff Fund or any other person that invested or transacted with Madoff, directly or indirectly, and all documents concerning any such disapproval, rejection or refusal.

37.    All documents concerning your policies, procedures and practices concerning preservation of documents for the Relevant Period, including any document preservation notices sent to any person concerning Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly, and documents sufficient to show the recipients of any such notices.

38.    All documents that refer or relate to your disaster recovery plan for technology infrastructure, the process, policies and procedures for recovery or continuation of infrastructure critical to your organization after a natural or human-induced disaster, including locally stored mirrors of systems and data, backups of data made to tape, backups of data made to disk, optical platters or other mass storage media, and replication of data to off-site locations.

39.    All documents concerning the liquidation of any of your hedge fund investments or related transactions, including without limitation any swap or derivative transaction, from January 1990 to the present

40.    All documents concerning your investigation, analysis, review, evaluation or due diligence of your exposure to hedge fund investments and related transactions, including any swap or derivative transaction, from January 1990 to the present.

41.    All documents concerning any funds, investment managers, investment vehicles or similar persons in which you prohibited, disapproved, discouraged or declined to recommend any investment by any person from January 1990 to the present.

42.    All documents relating to any analysis, assessment, due diligence, evaluation, investigation or review performed by you or any other person of any hedge fund or other investment manager, investor, trader or other person that utilized any investment strategy similar to that purportedly utilized by Madoff.

43.    All documents concerning your or any other person's policies, procedures and practices concerning due diligence, investigation, analysis, review or evaluation of any investment by you or any other person in any hedge fund, fund of funds or other similar investment vehicle, entity or instrument prior to or during the pendency of any such investment.

44.    All documents concerning or showing the amount of your direct or indirect investment in or financial exposure (by investment, hedge or otherwise) to, and any other person's direct or indirect investment in or financial exposure (by investment, hedge or otherwise) to, Madoff.

45.    All documents relating to any write-offs, contingency reserves or liabilities related to or resulting from the liquidation of Madoff.

46.    All documents concerning any investment, accommodation, service or transaction offered, issued, executed, made or proposed to be made by you or any other person that was in any way related, linked or indexed to, invested in or secured or hedged by an investment in Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly.

47.    All documents sufficient to show the names and addresses of all persons, including the beneficial owners or individual constituents of any such persons that are not natural persons, involved in any capacity in any investment, accommodation, service or transaction offered, issued, executed, made or proposed to be made by you or any other person that were in any way related, linked or indexed to, or invested in Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly.

48.    All documents concerning your or any other person's investment or transaction with Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly, including without limitation:

    (a)    monthly statements, including account numbers;
    (b)    historical account balance information;
    (c)    incoming and outgoing wire transfer records;
    (d)    copies of checks (front and back), both deposited and drawn;
    (e)    records reflecting cash activity;
    (f)    account opening documents;
    (g)    subscription agreements;
    (h)    administrative or custodial agreement;
    (i)    account closing documents;
    (j)    redemption or liquidation requests;
    (k)    all correspondence with fund personnel;
    (l)    securities trade tickets and confirmations; and
    (m)    periodic investment performance reviews and commentary.

49.    All documents concerning payments, subscriptions, or redemptions made by or to investors in any investment, accommodation, service or transaction offered, issued, executed, made or proposed to be made by you or any other person that was in any way related, linked or indexed to, invested in or secured or hedged by an investment in Madoff, any Madoff Fund or any person that invested or transacted with Madoff, directly or indirectly.

50.    All documents concerning any investment, accommodation, service or transaction *not* offered, issued, executed, made or proposed to be made by you or any other person that were in any way related, linked or indexed to, invested in or secured or hedged by an investment in Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly.

51.    All documents concerning remuneration, fees, commissions, compensation, revenues, profits, expenses, losses, reserve derived or resulting from any investment, accommodation, service or transaction offered, issued, executed, made or proposed to be made by you or any other person that were in any way related, linked or indexed to, invested in or secured or hedged

by an investment in Madoff, any Madoff Fund or any other person that invested or transacted with Madoff, directly or indirectly.

52.    All documents concerning communications between or among you, any other person and DTCC concerning any securities positions held in or for any Madoff Account or for Madoff, any Madoff Fund or any other person that invested or transacted with Madoff, directly or indirectly.

53.    All documents, including without limitation organization charts, sufficient to identify your or any other person's asset management, alternative asset investment management, hedge fund, fund of funds, equity and equity derivatives, fixed income, foreign exchange, commodity, or structured product trading, sales, research, marketing, credit and risk management, relationship management, investment banking and due diligence businesses, divisions, units, management personnel and staff and any other persons that may have been involved in any manner with Madoff, any Madoff Fund, or any other person that invested or transacted with Madoff, directly or indirectly.

54.    All documents concerning any communication, filing, registration or submission concerning your hedge fund, fund of funds, alternative asset, fiduciary and other similar investment management, advisory and trust activities and businesses made or required to be made by you with the SEC, FINRA, NASD or any other U.S. federal, state or local and foreign law enforcement, regulatory or other governmental authority or self-regulatory organization, including without limitation Form ADV.

55.    All documents concerning any communication, referral, report, response or production made by you to U.S. federal, state or local or foreign law enforcement, regulatory or other governmental authorities, and self-regulatory organizations concerning Madoff, any Madoff Account, any Madoff Transfer, any Madoff Fund, and any other person that invested or transacted with Madoff, directly or indirectly.

56.    All documents concerning any litigation, arbitration, mediation or other formal or informal dispute resolution proceeding or claim by any person, other than any law enforcement, regulatory or other governmental authority or the Trustee, for any reason concerning Madoff or any direct or indirect investment or transaction with Madoff.

## C.    <u>HOW DOCUMENTS ARE TO BE PRODUCED</u>

1.    All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the Requesting Party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2.    All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database.  Even after producing documents in the document review database format, the

documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3.      Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4.      Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5.      Documents and their metadata portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall produced as those files were stored in the ordinary course of business.

6.      Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to the how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789-BRL |
| Plaintiff, | SIPA Liquidation |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

## ORDER GRANTING AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND THE EXAMINATION OF WITNESSES

This matter came before the Court on the motion (the "Motion")[1] of Irving H. Picard,

Esq. ("Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment

Securities LLC ("Debtor"), for an order authorizing the Trustee to compel the production of

documents and the testimony of witnesses through the issuance of Rule 2004 Subpoenas without

further order of the Court and establishing procedures in connection with such subpoenas, as

more fully described in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein; and it appearing that the relief requested by the Motion is necessary

and in the best interests of the estate, its customers, its creditors, and all parties in interest; and

due notice of the Motion having been given, and it appearing that no other or further notice need

be given; and the Court having determined that the Trustee articulated good cause for the relief

requested in the Motion; and the Court having determined that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and upon the proceedings

before the Court and after due deliberation,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted.

2.     The Trustee hereby is authorized to issue and serve Rule 2004 Subpoenas for examinations pursuant to Bankruptcy Rule 2004 without further order of the Court.

3.     The Trustee shall serve each Rule 2004 Subpoena and a copy of the order entered pursuant to this Motion on (i) the target of the Rule 2004 Subpoena, (ii) SIPC, (iii) the SEC, (iv) the Internal Revenue Service, and (v) the United States Attorney for the Southern District of New York.

4.     The Trustee shall cooperate fully with the U.S Department of Justice, and any other federal agency designated by them (collectively, the "Government"), in any matter that the Government is currently or in the future may be investigating regarding the Debtor, its management or its financial condition. The Trustee shall use best efforts to coordinate with the Government in order to avoid unnecessary interference with any investigations conducted by the Government. The Trustee will follow a reasonable protocol to be established jointly with the Government for the sharing of information and such sharing shall be subject to appropriate conditions to protect the Debtor's estate, including but not limited to, the preservation of the attorney-client privilege and protections of the work product doctrine. If the Trustee and the Government disagree as to the appropriateness of a proposed action to be taken pursuant to this Order, the Trustee reserves the right to seek a determination from the Court.

5.     The Trustee shall file with the Court an affidavit or declaration of service for each Rule 2004 Subpoena he serves.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

6.      Recipients of a Rule 2004 Subpoena and any party in interest shall have ten (10) days after any Rule 2004 Subpoena is served to object to and/or seek to quash such Rule 2004 Subpoena.

7.      Recipients of a Rule 2004 Subpoena are directed to produce, on a rolling basis, all responsive documents within ten (10) days of the service of the subpoena (unless otherwise agreed by the Trustee), subject to any documents withheld under a claim of privilege.

8.      If a witness withholds any documents based upon a claim of privilege, the witness shall provide counsel for the Trustee with a privilege log containing the information required under Bankruptcy Rule 7026(a)(5), within ten (10) days of the service of a subpoena upon that witness (unless otherwise agreed by the Trustee).

9.      Recipients of a Rule 2004 Subpoena are directed to submit to oral examination upon reasonable notice and, absent other agreement with the Trustee, in no event more than fifteen (15) days from the service of a deposition subpoena upon the recipient of said subpoena.

10.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, New York
       January 12, 2009

                          /s/ BURTON R. LIFLAND
                          UNITED STATES BANKRUPTCY JUDGE

-3-

# Exhibit B

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

Southern  District of  New York

In re  Bernard L. Madoff Investment Securities LLC          Case No.  Adv. Pro. No. 08-01789 (SMB)

 Debtor

 Chapter _____

## SUBPOENA FOR RULE 2004 EXAMINATION

To:  Khronos LLC, 41 Madison Avenue, 31st Floor, New York NY 10010

*(Name of person to whom the subpoena is directed)*

☐  *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE  Baker & Hostetler LLP  45 Rockefeller Plaza  New York, NY 10111  Attn: Anat Maytal, Esq. | DATE AND TIME  July 24, 2020, at 10 a.m. |
|---|---|

The examination will be recorded by this method: _____

☒  *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

    Documents described in Attachment A to this subpoena

_____

 The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: July 13, 2020

 CLERK OF COURT

 OR

 _____          _____
 *Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
    Irving Picard, SIPA Trustee    , who issues or requests this subpoena, are:

 Anat Maytal, Esq. Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

# PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date:  _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## ATTACHMENT A
## TO SUBPOENA TO KHRONOS LLC

### DEFINITIONS

1.      All definitions set forth in United States District Court for the Southern District of

New York Local Rule 26.3, as adopted by United States Bankruptcy Court for the Southern

District of New York's Rule 7026-1, are hereby incorporated by reference are as follows:

**Communication**.  The term "communication" means the transmittal of information
(in the form of facts, ideas, inquiries or otherwise).

**Concerning.**  The term "concerning" means relating to, referring to, describing,
evidencing, or constituting.

**Document**.  The term "document" is defined to be synonymous in meaning and equal
in scope to the usage of the term "documents or electronically stored information" in Fed.
R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the
meaning of this term.

**Identify (with respect to documents).**  When referring to documents, "to identify"
means to give, to the extent known, the (i) type of document; (ii) general subject matter;
(iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

**Identify (with respect to persons).**  When referring to a person, "to identify" means
to give, to the extent known, the person's full name, present or last known address, and
when referring to a natural person, additionally, the present or last known place of
employment. Once a person has been identified in accordance with this subparagraph,
only the name of that person need be listed in response to subsequent discovery
requesting the identification of that person.

**Parties**.  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated
name or a pronoun referring to a party mean the party and, where applicable, its officers,
directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition
is not intended to impose a discovery obligation on any person who is not a party to the
litigation.

**Person**.  The term "person" is defined as any natural person or any legal entity,
including, without limitation, any business or governmental entity or association.

2.      "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff

Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth

Madoff, and all affiliated Persons and entities, including, but not limited to, any officers,

directors, agents, representatives, employees, partners, parent companies, subsidiaries, predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

3.      "Initial Transfer" means any and all Transfers made by BLMIS or any Person acting on behalf of BLMIS to Legacy Capital (as defined below) through BLMIS Account No. 1FR071 between December 11, 2006 and December 11, 2008.

4.      "Legacy Capital" means Legacy Capital, Ltd., including without limitation its current and former parent companies, subsidiaries, divisions, officers, directors, principals, partners, mangers, members, shareholders, agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, and affiliates.

5.      "Montpellier International" means Montpellier International Ltd., Montpellier International LDC, Montpellier International Limited, and Montpellier International – Medallion Ltd., and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries, predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

6.      "Prince" means Prince Assets LDC and/or Prince Assets Limited, and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries, predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

7.      "Subsequent Transfer" means any Transfer or Transfers (as defined below) of an Initial Transfer conveyed by Legacy Capital to another Person or entity.

8.      "Transfer" or "Transfers" shall conform to the meaning set forth under the Bankruptcy Code, 11 U.S.C. § 101(54): (a) the creation of a lien; (b) the retention of title as a security interest; (c) the foreclosure of a debtor's equity redemption; or (d) each mode, direct and indirect, absolute or conditional, voluntary or involuntary, of disposing of or departing with—(i) property; or (ii) an interest in property.

9.      "You" and "Your" means Khronos LLC and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries, predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

10.     For all purposes herein, spelling, grammar, syntax, abbreviations, idioms, and proper nouns shall be construed and interpreted according to their context to give proper meaning and consistency to the Requests for Production of Documents set forth herein (the "Request" or "Requests").

11.     Reference to any Person that is not a natural Person and is not otherwise defined herein refers to and includes any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such Person.

## **INSTRUCTIONS**

Federal Rules of Civil Procedure 26-37, made applicable to this proceeding pursuant to Bankruptcy Rules 7026-7037, are hereby incorporated by reference and apply to each of the following instructions:

12.     All Documents shall be identified by the Request(s) to which they are primarily responsive or be produced as they are maintained in the usual course of business.

13.    Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of a current or former employee, that were created during or that relate or refer to the Applicable Period, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, or web-based email systems such as Gmail, Yahoo, etc.

14.    Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document.  If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

15.    Documents not otherwise responsive to these Requests should be produced: (i) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests; (ii) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests; or (iii) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

16.    Documents attached to each other should not be separated; separate Documents should not be attached to each other.

17.    To the extent a Document sought herein was at one time, but is no longer, in your actual or constructive possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred to others; and/or (iv) has been otherwise disposed of.  In each instance, Identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, Identify each Person having knowledge of the circumstances of the disposition, and Identify each Person who had possession, custody, or control of the Document.  Documents prepared prior to,

but which relate or refer to, the time period covered by these Requests are to be identified and
produced.

## FORMAT OF PRODUCTION

1.      All Documents produced to the Trustee shall be provided in either native file
("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified
below, along with appropriately formatted industry-standard database load files, and
accompanied by true and correct copies or representations of unaltered attendant metadata.
Where Documents are produced in tiff format, each Document shall be produced along with a
multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-
standard text extraction program in the case of electronic originals, or by an industry-standard
Optical Character Recognition ("ocr") program in the case of scanned paper Documents.
Searchable text of Documents shall not be produced as fielded data within the ".dat file" as
described below.

2.      Database load files and production media structure:  Database load files shall
consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier
information, data designed to preserve "parent and child" relationships within Document
"families," reasonably accessible and properly preserved metadata (or bibliographic coding in
the case of paper Documents), custodian or Document source information; and (ii) an Opticon
(".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level
folder named "Data," images shall be provided within a root level "Images" folder containing
reasonably structured subfolders, and searchable text files shall be provided in a single root-level
"Text" folder.   If any of the Documents produced in response to these requests are designated as
confidential pursuant to the Litigation Protective Order, in addition to marking the Documents

with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL,"
also include a confidential field within the load file, with a "yes" or "no" indicating whether the
Document has been designated as confidential, as well as native file loading/linking information
(where applicable).

3.    <u>Electronic Documents and data, generally</u>:  Documents and other responsive data
or materials created, stored, or displayed on electronic or electro-magnetic media shall be
produced in the order in which the Documents are or were stored in the ordinary course of
business, including all reasonably accessible metadata, custodian or Document source
information, and searchable text as to allow the Trustee, through a reasonable and modest effort,
to fairly, accurately, and completely access, search, display, comprehend, and assess the
Document's true and original content.

4.    <u>Emails and attachments, and other email account-related Documents</u>:  All
Documents and accompanying metadata created and/or stored in the ordinary course of business
within commercial, off-the-shelf email systems including but not limited to Microsoft
Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format,
accompanying metadata, and searchable text files or, alternately, in a format that fairly,
accurately, and completely represents each Document in such a manner as to make the
Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5.    <u>Documents and data created or stored in or by structured electronic databases</u>:
With the exclusion of email and email account-related Documents and data, all Documents and
accompanying metadata created and/or stored in structured electronic databases or files shall be
produced in a format that enables the Trustee to reasonably manage and import those Documents
into a useable, coherent database.  Documents must be accompanied with reasonably detailed

documentation explaining each Document's content and format, including but not limited to data
dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive
file(s), table(s), and field level schemas include:

    a.      XML format file(s);

    b.      Microsoft SQL database(s);

    c.      Access database(s); and/or

    d.      fixed or variable length ASCII delimited files.

6.    <u>Spreadsheets, multimedia, and non-standard file types</u>: All Documents generated
or stored in software such as Microsoft Excel or other commercially available spreadsheet
programs, as well as any multimedia files such as audio or video, shall be produced in their
native format, along with an accompanying placeholder image in tiff format indicating a native
file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the
relative file path to each native file on the production media. To the extent the party has other
file types that do not readily or easily and accurately convert to tiff and searchable text, the party
may elect to produce those files in native format subject to the other requirements listed herein.
Native files may be produced within a separate root-level folder structure on deliverable media
entitled "Natives."

7.    <u>"Other" electronic Documents</u>: All other Documents and accompanying metadata
and embedded data created or stored in unstructured files generated by commercially available
software systems (excluding emails, structured electronic databases, spreadsheets, or
multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image

files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and

searchable text format in the order the files are or were stored in the ordinary course of business.

8.    <u>Paper Documents</u>:  Documents originally created or stored on paper shall be

produced in tiff format.  Relationships between Documents shall be identified within the .dat file

utilizing Document identifier numbers to express parent Document/child attachment boundaries,

folder boundaries, and other groupings.  In addition, the searchable text of each Document shall

be provided as a multi-page text file as provided for by these requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Documents and Communications concerning any Subsequent Transfer.

2.    Documents concerning money, property, or anything else of value received by
Prince from any Person in exchange for any Subsequent Transfer.

3.    Documents concerning money, property, or anything else of value received by
Montpellier International from any Person in exchange for any Subsequent Transfer.

4.    Documents or Communications concerning any procedures, guidelines, and/or
policies for investing, redeeming, or monitoring BLMIS investments through Legacy Capital,
Montpellier International or Prince.

5.    Documents concerning, or Communications with, Montpellier International or
Prince in connection with BLMIS or Legacy Capital.

6.    Documents concerning Prince's liquidation, including without limitation
documents sufficient to identify assets distributed to its partners, shareholders, or agents upon
liquidation, and the value of any such distributions.

7.      Documents concerning Montpellier International's liquidation, including without limitation documents sufficient to identify assets distributed to its partners, shareholders, or agents upon liquidation, and the value of any such distributions.

8.      Documents concerning any insurance agreements relating to Montpellier International or Prince.

9.      Documents sufficient to Identify each person or entity having an interest (whether equity, security, debt, or other legal interest) in Prince, including without limitation partners, shareholders, or agents, specifying as to each the title and relationship to Prince and the value of the interest held by such person or entity in Prince.

10.     Documents sufficient to Identify each person or entity having an interest (whether equity, security, debt, or other legal interest) in Montpellier International, including without limitation partners, shareholders, or agents, specifying as to each the title and relationship to Montpellier International and the value of the interest held by such person or entity in Montpellier International.

11.     Documents concerning all assets or property owned by Prince in whole or in part, including without limitation: (i) all checking and savings accounts; (ii) all balance sheets, profit and loss statements and income statements; (iii) stocks, bonds, trusts, and other securities, including cryptocurrency, in the name of or for the benefit of Prince; (iv) accounts receivable; (v) inventory; (vi) judgments held by Prince against third parties; (vii) rents receivable; and (viii) intellectual property.

12.     Documents concerning all assets or property owned by Montpellier International in whole or in part, including without limitation: (i) all checking and savings accounts; (ii) all balance sheets, profit and loss statements and income statements; (iii) stocks, bonds, trusts, and

other securities, including cryptocurrency, in the name of or for the benefit of Montpellier International; (iv) accounts receivable; (v) inventory; (vi) judgments held by Montpellier International against third parties; (vii) rents receivable; and (viii) intellectual property.

13.     Documents sufficient to identify Prince's beneficial owners.

14.     Documents sufficient to identify Montpellier International's beneficial owners.

15.     Documents concerning Prince's credit facility agreement with Santander Bank & Trust Limited dated June 27, 2005 and the related assignment to Banco Santander (Suisse) S.A. dated June 1, 2010.

16.     Documents concerning the pledge agreement dated October 16, 2009 between Auber Investments Limited and Santander Bank & Trust Limited relating to Prince's credit facility agreement.

17.     Documents concerning the relationship between Auber Investments Limited and Prince.