**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

In re:

BERNARD L. MADOFF,

      Debtor.

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04921 (CGM) |
| Plaintiff, | |
| v. | |
| STANLEY T MILLER, | |
| Defendants. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

**DENTONS US LLP**
Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10016
Telephone: 212 768-6700
Facsimile:  212 768-6800
arthur.ruegger@dentons.com
carole.neville@dentons.com

*Attorneys for the Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

LEGAL STANDARD..................................................................................................... 4

FACTUAL BACKGROUND .......................................................................................... 5

I.    THE DEFENDANT HAS UNASSAILABLE DEFENSES TO THE TRUSTEE'S
      CLAIMS .............................................................................................................. 6

      A.    THE RAI IRA ACCOUNT IS EXEMPT FROM THE TRUSTEE'S
            FRAUDULENT TRANSFER CLAIMS ...................................................6

            1.    IRAs Are Trusts Exempted From Creditor Claims Under Both Non-
                  Bankruptcy Federal Law and New York State Law ........................... 6

            2.    The Trustee's Claim Under Section 548(a)(1)(A) Fails Against the RAI
                  IRA......................................................................................................... 10

            3.    The Statutory Exception To the Exemption Is Inapplicable .............. 11

      B.    THE DEFENDANT HAS THE DEFENSES OF A SUBSEQUENT
            TRANSFEREE UNDER SECTION 550(B)..............................................16

            1.    Retirement Accounts is the Initial Transferee .................................. 16

            2.    The Defendant Is Entitled To Complete Defense Of Bankruptcy Law
                  Including Section 550(b)...................................................................... 21

II.   THE TRANSFERS IN QUESTION WERE NOT THE DEBTOR'S PROPERTY ........... 22

III.  THE TRUSTEE HAS NOT PROPERLY CALCULATED THE TRANSFERS IN THE
      RAI IRA ACCOUNT. ......................................................................................... 28

CONCLUSION................................................................................................................ 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelphia Recovery Trust v. Bank of Am., N.A.*,
    05 Civ. 9050 (LMM); 2011 U.S.Dist Lexis 39139, 2011 WL 1419617
    (S.D.N.Y. April.7, 2011)........................................................................................22

*Andrews v. RBL, L.L.C. (In re Vista Bella, Inc.)*,
    No. 12-00060-MAM, 2013 Bankr. LEXIS 2275, 2013 WL 2422703 (Bankr
    SD.Ala. June 4, 2013) ...........................................................................................11

*Bear, Stearns Sec. Corp. v. Gredd (In re Gredd)*,
    275 B.R. 190 (Bankr. S.D.N.Y.2002) ..............................................................10, 23

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007).................................................................................17

*In re Bernard L. Madoff Inv. Securities, LLC*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016)...............................................................28, 29

*Blankenship v. Liberty Life Assur. Co.*,
    486 F.3d 620 (9th Cir. 2007) ................................................................................6

*Bonded Fin. Serv., Inc. v. European American Bank*,
    838 F.2d 890 (7th Cir. 1988) ...............................................................................17

*Bonded Financial Services v. European Amer. Bank*,
    838 F.2d at 895 ....................................................................................................18

*Breslin Realty Dev. Corp. v. Morgan Stanley*,
    48 Misc. 3d 424 (2015).........................................................................................12

*Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.)*,
    318 B.R. 276 (Bankr. S.D.N.Y. 2004)..................................................................10

*Buchwald v. Williams Energy Mktg. & Trading Co. (In re Magnesium Corp. of
    Am.)*,
    460 B.R. 360 (Bankr. S.D.N.Y. 2011) .................................................................25

*In re Chase & Sanborn Corp.*,
    904 F.2d 588 (11th Cir. 1990) .............................................................................20

*Christy v. Alexander & Alexander (In re Finley, Kumble, Wagner, Heine,
    Underberg, Manley, Myerson & Casey)*,
    130 F.3d 52 (2d Cir.1997)................................................................................17, 18

*Craft v. United States*,
    65 F. Supp. 2d 651 (D.W.D. Mich. 1999)reversed on other grounds ....................................11

*In re Dreier LLP*,
    429 B.R. 112 (Bankr. S.D. N.Y. 2010) ...................................................................................23

*Dubroff v. First Nat'l Bank (In re Dubroff)*,
    119 F.3d 75 (2d Cir. 1997)..........................................................................................................6

*Ehrlich v. Commercial Factors of Atlanta*,
    567 B.R. 684 (N.D.N.Y.2017) ...................................................................................................10

*Ellis National Bank v. Irving Trust Co.*,
    786 F.2d 466 (2d Cir. 1986)........................................................................................................7

*Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*,
    333 B.R. 205 (Bankr. S.D. N.Y. 2005) ...................................................................................22

*Enron Corp. v. J.P. Morgan Securities (In re Enron Corp.*,
    361 B.R. 36 (Bankr. S.D.N.Y. 2006) .......................................................................................18

*FDIC v. Giammettei*,
    34 F.3d 51 (2d Cir. 1994*)*.........................................................................................................4

*Gard Entertainment, Inc. v. Block*
    2012 WL 3764525 (N.Y. Sup. 2012) .......................................................................................12

*In re Glenn*,
    430 B.R. 56 (Bankr. N.D.N.Y. 2010) ......................................................................................14

*In re Goldberg*,
    229 B.R. 877 (Bankr. S.D. Fla. 1998) .....................................................................................11

*Grinspan v. Grinspan*,
    Adv. Proc. No. 14-08116 (LAS), 2015 Bankr.Lexis 2377, 2015 WL 4450668
    (Bankr. E.D.N.Y. July 20, 2015) ...............................................................................................4

*Highland Capital Mgmt., L.P. v. Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008)......................................................................................24

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs.)*,
    408 F.3d 689,708 (11th Cir. 2005) ..........................................................................................21

*In re Incomnet, Inc.*,
    463 F.3d 1064 (9th Cir. 2006) ..................................................................................................20

*Island Intellectual Prop. LLC v. Deutsche Bank AG*,
   No. 09 Civ. 2675, 2012 U.S. Dist. LEXIS 217422012 WL 526722, (S.D.N.Y.
   Feb. 14, 2012) ................................................................................................24

*Jensen v. Anderson (In re Anderson)*,
   561 B.R. 230 (Bankr. M.D.Fla 2016) ...........................................................11

*Jones v. Mansfield Training Sch.*,
   220 Conn. 721, 601 A.2d 507 (Conn. 1992)..................................................13

*In re Keil*,
   88 F.2d 7 (2d Cir. 1937)..................................................................................14

*KLC, Inc. v. Trayner*,
   426 F.3d 172 (2d Cir. 2005)........................................................................13, 14

*Lightbox Ventures, LLC v. 3RD Home Ltd.*,
   16 cv 2379, 2017 U.S. Dist. LEXIS 187202, 2017 WL 5312187 (S.D.N.Y.
   Nov, 13, 2017) ................................................................................................24

*Lowry v. Security Pacific Business Credit, Inc. (In re Columbia Data Products,
   Inc.)*,
   892 F.2d 26 (4th Cir. 1989) ................................................................17, 18, 20

*Mack v. Newton*,
   737 F.2d 1343 (5th Cir. 1984) .......................................................................21

*McCord v. Ally Fin, Inc. (In re USA United Fleet, Inc.)*,
   550 B.R. 41 (Bankr. E.D. N.Y. 2016.).............................................................23

*Meadow v. Katz*,
   2008 NY Slip Op 32674(U) (Sup. Ct. 2008) .................................................12

*Memmo v Perez*,
   63 AD3d 472 (1st Dept 2009)..........................................................................12

*Michael Grecco Prods. v. Valuewalk LLC*,
   1:16-cv-6171-GHW, 2018 U.S. Dist. LEXIS 190661, 2018 WL 5831311
   (S.D.N.Y. Nov. 6, 2018) ...................................................................................4

*Morgan v. Gordon*,
   450 B.R. 402 (W.D.N.Y. 2011) .......................................................................14

*Paloian v. LaSalle Bank, N.A.*,
   619 F.3d at 692 ........................................................................................18, 20

*Picard v. Fairfield Greenwich Ltd.*,
   762 F.3d 199 (2014)........................................................................................27

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
 2014 Bankr. LEXIS 4348. (Bankr. S.D.N.Y., Oct. 10, 2014) ...............................................21

*Pintavalle v. Valkanos*,
 216 Conn. 412, 581 A.2d 1050 (Conn. 1990)..........................................................13

*Planned Consumer Mktg. v. Coats & Clark*,
 71 N.Y.2d 442, 527 N.Y.S.2d 185 (N.Y. 1988) .....................................................13

*In re Rezulin Prods. Liab. Litig.*,
 309 F. Supp. 2d 531 (S.D.N.Y. 2004).....................................................................24

*Roedel Cos., LLC v JNK Home Enters., LLC*,
 2020 N.Y. Misc. LEXIS 2749 (Sup. Ct. 2020)......................................................12

*Savage & Assoc. v. Mandl (In re. Teligent Inc.*,
 380 B.R. 324 (Bankr. S.D.N.Y. 2008)...........................................................10, 25

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
 531 B.R. 439 (Bankr. S.D.N.Y. 2015) ...............................................................2, 15

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff
 Secs.)*,
 476 B.R. 715 (S.D.N.Y. 2012)............................................................................2, 15

*SEC v. Madoff*,
 No. 08-cv-10791 (LLS) (S.D.N.Y. Dec. 15, 2008) ..............................................28

*Syngenta Seeds, Inc. v. Wingate (In re Wingate)*,
 377 B.R. 687 (Bankr. M.D. Fla 2006) ...................................................................11

*Tardif v. McCuan (In re McCuan)*,
 569 B.R. 511 (M.D. Fla 2017)................................................................................11

*Tese-Milner v. Brune (In re Red Dot Scenic, Inc.)*,
 293 B.R. 116 (S.D.N.Y. 2003)...............................................................................17

*Travelers Indem. Co. v. Northrop Grumman Corp.*,
 2014 U.S. Dist. LEXIS 14981; 2014 WL 464769 (S.D.N.Y. Jan. 28, 2014) .........23

*U.S. v. Asare*,
 291 F. Supp. 3d 476 (S.D.N.Y. 2017)......................................................................4

*United States v. Madoff*,
 No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009) ...................................................26

*United States v. Mejia*,
 545 F.3d 179 (2d Cir. 2008)....................................................................................24

*In re Valerie D.*,
   223 Conn. 492, 613 A.2d 748 (Conn. 1992)........................................................................13

*Wagner v. Eberhard (In re Vaughn Co., Realtors)*,
   Adv. Pro. No. 11-1226, 2014 WL 271632 (Bankr. D.N.M. Jan. 23, 2014)..............................8

*Whitfield v. Scully*,
   241 F.3d 264 (2d Cir. 2001).........................................................................................13

**Statutes**

11 U.S.C. § 548(a)(1)(A) ........................................................................................ *passim*

11 U.S.C. § 550 .....................................................................................................18, 22

11 U.S.C. § 550(a) .................................................................................................16, 17

11 U.S.C. § 550(b) ................................................................................................. *passim*

11 U.S.C. § 550(b)(1) ..............................................................................................2, 21

15 U.S.C. § 78eee(a)(3) ................................................................................................28

15 U.S.C. § 78fff-2 ......................................................................................................29

15 U.S.C. § 78fff-4(b) ..................................................................................................28

15 U.S.C. § 78lll .........................................................................................................28

15 U.S.C. § 78lll(2)(A) .................................................................................................29

15 U.S.C. § 78lll(11) ...................................................................................................29

26 U.S.C. § 408 ...................................................................................................2, 6, 8

26 U.S.C. § 408(a) .......................................................................................................7

26 U.S.C. § 408(a)(2)(4)(5) .............................................................................................6

29 U.S.C. § 1001 *et seq* ..................................................................................................7

29 U.S.C. § 1056 [d] [1] ...............................................................................................2, 7

15 U.C.C. § 78fff-2(c)(3) ...............................................................................................27

N.Y. DCL §§ 270-281 ...............................................................................................11, 13

N.Y. DCL § 282(2)(e).....................................................................................................6

N.Y. EPT § 7-3.1(b)(1) ..................................................................................2, 8, 9

N.Y. EPT § 7-3.1(b)(2) .......................................................................................2

17 CFR § 230.501 .............................................................................................29

17 CFR § 230.502 .............................................................................................29

17 CFR § 242.201 .............................................................................................29

26 CFR § 1.401 [a]-13 [b] [1] ...........................................................................7

Fed. R. Bankr. P. 7056 .......................................................................................4

Fed. R. Civ. P. 56 ...............................................................................................4

Fed. R. Civ. P. 56(c) ..........................................................................................4

Fed. R. Civ. P. 56(f)(1) ....................................................................................30

Fed. R. Evid. 703 .............................................................................................24

Fed. R. Evid. 801(d)(2) ....................................................................................25

N.Y. CPLR § 5202(c)(3) ..................................................................................14

N.Y. CPLR § 5205 ........................................................................................6, 15

N.Y. CPLR § 5205(c) ...........................................................................2, 8, 9, 14

N.Y. CPLR § 5205(c)(2) .....................................................................................9

N.Y. CPLR § 5205(c)(5) ............................................................................. *passim*

N.Y. CPLR § 5205(d)(1) .........................................................................9, 15, 16

**Other Authorities**

5 Collier on Bankruptcy (16th Ed.),
    ¶ 550.03[1] ...................................................................................................22

Stanley T. Miller, (the "Defendant"), through his counsel, respectfully submits this Memorandum:

> A. In Support of the Defendant's Cross Motion for Summary Judgment (the "Cross Motion"), together with the Defendant's Statement of Material Facts Pursuant to Fed. R. Civ. P. 56, Fed. R. Bankr. P. 7056 and Local Rule 7056-1 and the Declaration of Arthur H. Ruegger sworn to on May 12, 2021 in support of the Defendant's Cross Motion for Summary Judgment filed simultaneously herewith; and

> B. In Opposition to Trustee's Motion for Summary Judgment dated April 14, 2021 (the "Trustee's Motion"), together with Defendant's Objections, Responses and Counterstatements of Material Facts Pursuant to Fed. R. Civ. P. 56, Fed. R. Bankr. P. 7056 and Local Rule 7056-1 to Trustee's Statement of Material Facts and the Declaration of Arthur H. Ruegger sworn to on May 12, 2021 in opposition to the Motion For Summary Judgment, filed by Irving Picard (the "Trustee"), as trustee of Bernard L. Madoff Investment Securities LLC ("BLMIS").

In support of the Defendant's Cross Motion and in opposition to the Trustee's Motion, the Defendant respectfully represents as follows:

## PRELIMINARY STATEMENT

The Trustee has framed his Motion as if this case was exactly like several other cases he has brought before this Court on summary judgment motions and as a result, the result is a foregone conclusion. However, this case is not like the others. The fact that the Defendant established an

account with Bernard L. Madoff Investment Securities ("Madoff Securities") in 1998 to invest the funds in an individual retirement account ("IRA") gives rise to a series of issues that this Court has not finally determined on a full factual record and discussion of the applicable law. [1]

As discussed below, both non bankruptcy federal law and New York state law consider a qualified IRA a trust-- a trust that is likened to a spendthrift trust even though the settlor typically creates the account for his or her own benefit. *See* 26 U.S.C. §408; NY Estates, Powers and Trust Law Section 7-3.1(b)(1) and (2). The characterization is indisputably applicable to the Defendant's IRA. Furthermore, both non-bankruptcy federal law and New York state law exempt the IRA from the claims of creditors. *See* 29 USC § 1056 [d] [1] (the anti-alienation provision of Employee Retirement Income Security Act (ERISA); Section 5205(c) of New York's Civil Practice Law and Rules ("CPLR"). The consequence of the broad exemptions of a defendant's property from the claims of creditors in this jurisdiction and several others cited below is that those assets are immune from fraudulent transfer actions because the creditors or entities to which the defendant was or becomes liable could have had no interest in the property. The principle is applicable in this case without qualification or exception.

A second consequence of the treatment of IRA as a trust administered and controlled by trustee is that the trustee may be the initial transferee and the IRA beneficiary a subsequent transferee who is afforded the complete defense to liability pursuant to section 550(b) of the Bankruptcy Code. 11 U.S.C. §550(b)(1). In his initial complaint against the Defendant the Trustee acknowledged Retirement Accounts, Inc. a/k/a NTC & Co., ("Retirement Accounts") as the holder

---

[1] The application of the exemption statutes to IRAs has been rejected as a basis for dismissal of the Trustee's claims on motions to dismiss without a full factual record or discussion of the applicable statutes. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.),* 476 B.R. 715 (S.D.N.Y. 2012); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC,* 531 B.R. 439 (Bankr. S.D.N.Y. 2015). These interlocutory decisions are not binding under the law of the case doctrine.

of the IRA (hereinafter the "RAI IRA Account") and potentially the initial transferee. *See* Defendant's Statement of Material Fact ¶¶2-3. Although the Trustee dismissed the claims against Retirement Accounts without prejudice by stipulation and purged the complaint of almost all references to the trustee of the IRA in the Amended Complaint filed on January 25, 2012, the characterization of Retirement Accounts as the initial transferee should be revived and accepted.

The Defendant has established below, by among other evidence comparing the dates that Retirement Accounts received funds from Madoff Securities with the later dates that Retirement Accounts made distributions to the Defendant, that Retirement Accounts exercised sufficient dominion and control over the funds to qualify as the initial transferee. As a result, the Defendant qualifies as the subsequent transferee. By virtue of the facts that the Defendant gave value to his transferor, and received distributions without knowledge of the fraud and in good faith he is entitled to the full protection of section 550(b) from liability.

In addition to these threshold factual and legal issues, which weigh in favor of granting the Defendant's Cross-Motion, the Defendant moves for denial of the Trustee's motion on the grounds that he has failed to establish by admissible evidence or legal argument the transfers were transfers of an interest of the debtor in property as required by section 548(a)(1)(A) of the Bankruptcy Code. 11 U.S.C. §548(a)(1)(A). The Trustee has not submitted evidence competent to establish that Madoff transferred the investment advisory business, including its bank and customer accounts to BLMIS.

Finally, if the Court finds the investment advisory business did become part of BLMIS in January 2001, the Trustee's calculation of the Defendant's liability is in error. The Securities Investor Protection Act ("SIPA") requires that any calculation of the transaction in the RAI IRA Account must begin with the books and records of the debtor, as defined by SIPA, beginning in

January 2001, not with the deposits and withdrawals from Madoff Securities prior to the formation of BLMIS. The recalculation establishes that that the Defendant withdrew less than he put in.

For these reasons, as more fully discussed below, summary judgment should be denied to the Trustee and granted to the Defendants, dismissing this adversary proceeding with prejudice.

## LEGAL STANDARD

Under Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P. 7056, a motion for summary judgment should be granted where there are no genuine issues of fact to be tried and the moving party is entitled to judgment as a matter of law.   *See* Fed. R. Civ. P. 56(c). When, as here, cross-motions for summary judgment are made on different issues and material facts, the Court should consider each motion independently of the other.  In each case the moving party has the burden of establishing there are no material factual issues in dispute and the non-movant must introduce evidence to establish a genuine dispute exists.  *See U.S. v. Asare*, 291 F. Supp. 3d 476, 479 (S.D.N.Y. 2017); *Grinspan v. Grinspan*, Adv. Proc. No. 14-08116 (LAS), 2015 Bankr. Lexis 2377  at *10, 2015 WL 4450668 (Bankr. E.D.N.Y. July 20, 2015)

On a motion for summary judgment, where, as here, the plaintiff is testing the affirmative defenses, then the plaintiff also bears the burden of not only establishing his *prima facie* case, but also demonstrating that all affirmative defenses are unsupported by the record or fail as a matter of law.  *See FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994*); Michael Grecco Prods. v. Valuewalk LLC,* 1:16-cv-6171-GHW, 2018 U.S. Dist. LEXIS 190661, 2018 WL 5831311, at *32-3 (S.D.N.Y. Nov. 6, 2018).  Denial of the Trustee's Motion is justified based on his lack of admissible supporting evidence to support his *prima facie* case and his inability to demonstrate that the Defendant's defenses fail as a matter of law.  The Trustee was well aware that the Defendant's primary defenses related to the status of the RAI IRA Account as an exempt asset and

the status of the Defendant as subsequent transferee by virtue of counsel's letter to the Court

regarding this adversary proceeding and other communications. The Trustee Statement of Material

Facts, and his expert reports, particularly the report of Lisa Collura, support the grant of summary

judgment on the Defendant's Cross-Motion.

## **FACTUAL BACKGROUND**

The facts underlying the Defendant's Cross-Motion are fully set forth in the Defendant's

Statement of Material Facts (the "Defendant's Statement.") filed herewith, are discussed more

fully in the Argument section below. The most compelling facts militating in favor of the

Defendant prevailing on his cross-motion for summary judgment are facts which the Trustee has

completely ignored. Significantly, the Trustee has ignored the broad control exercised by

Retirement Accounts over the flow of funds in the account evidenced by requests for funds

("Trading Instructions")(Ruegger Decl., ¶8, Exhibit F), credit memos (Ruegger Decl., ¶7, Exhibit

D) and actual transfers by checks payable solely to Retirement Accounts from Bernard L. Madoff's

bank account and the quarterly account statements reflecting substantial delay between Retirement

Accounts' receipt of funds and the distributions to the Defendant. The Trustee has also ignored,

the Defendant's almost complete reliance on Retirement Accounts to manage his investments in

both Madoff Securities and Austin Capital Safe Harbor Offshore Fund.

In support of his motion, the Trustee relies primarily on evidence that is largely

inadmissible against the Defendant, including forms filed by Madoff with the Securities and

Exchange Commission (the "SEC"), the self-exculpatory portions of plea agreements and

testimony of cooperating co-conspirators, and the narrative testimony of experts with no

experience or relevant education with respect to the ownership of bank accounts or corporate

structure. The Trustee's Statement of Material Facts is an extensive exposition on the issue of

fraud in Madoff's advisory business. This is a fact that is not necessary or material to a determination of the Defendant's liability.

## I.    THE DEFENDANT HAS UNASSAILABLE DEFENSES TO THE TRUSTEE'S CLAIMS

### A.    The RAI IRA ACCOUNT IS EXEMPT FROM THE TRUSTEE'S FRAUDULENT TRANSFER CLAIMS

#### 1.    IRAs Are Trusts Exempted From Creditor Claims Under Both Non-Bankruptcy Federal Law and New York State Law

The nature of an IRA is determined by both non-bankruptcy federal law and New York state law. Both characterize an IRA as a trust and protect it from the claims of creditors.

According to 26 U.S.C. §408, an individual retirement account is a trust created for the benefit of an individual and his or her beneficiaries that is subject to certain Internal Revenue Code limitations. To qualify as trust under the statute, among other requirements, the assets of the trust may not be comingled with other property, except in a common trust fund or common investment account, the interest of an individual in the balance in his account must be non-forfeitable. and a bank or otherwise qualified trustee must administer the trust. 26 U.S.C. §408(a)(2)(4)(5). *Dubroff v. First Nat'l Bank (In re Dubroff),* 119 F.3d 75, n 1 (2d Cir. 1997)[2]; *Blankenship v. Liberty Life Assur. Co.*, 486 F.3d 620 (9th Cir. 2007). The court held in that case that the custodian of an IRA is not a mere agent, but rather, is a trustee as established under the IRA provisions of the Internal Revenue Code.[3] The court also determined that retirement benefits transferred to the IRA account were not actually "received" by the plan participant as a matter of law.

---

[2] *Dubroff* holds that the debtor is entitled to claim an exemption from the bankruptcy estate for his IRA pursuant to N.Y. Debt. & Cred. Law § 282(2)(e) based on an analysis of Section 408, CPLR 5205, and other exemption statutes. The superior treatment of IRAs under New York law in numerous statutes discussed below is one reason why reliance on other state law that does not afford special treatment of IRAs is inapposite and misleading.

[3] The court in *Blankenship* based its characterization of the IRA as at trust on the federal statute, notwithstanding the discretion of the beneficiary:

Federal law protects plan benefits from the claims of creditors. Specifically, the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*.("ERISA"), requires that each pension plan provide that benefits may not be assigned or alienated (29 USC § 1056 [d] [1]). The Internal Revenue Service regulations promulgated thereunder provide that "benefits provided under the plan may not be …assigned …alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process" (Fed Treas. Reg. 26 CFR § 1.401 [a]-13 [b] [1] [1980]). The law prevents a creditor of a beneficiary from attaching vested benefits from an ERISA trust. *See Ellis National Bank v. Irving Trust Co.*, 786 F.2d 466 (2d Cir. 1986). In that case, the Second Circuit held that the anti-alienation provision of ERISA prohibited an employer from reclaiming certain funds contributed to an ERISA trust even though the funds represented moneys from fraudulent practices against the employer for which the employee was convicted. The anti-alienation provision of ERISA reflects a clear federal policy of preserving retirement benefits for the support of beneficiaries.

---

"Vanguard, in this context, lacks most of the traditional powers and responsibilities that characterize a trustee. It is Blankenship who directs the investment choices, Blankenship who controls the flow of funds in and out of the account, and Blankenship who can at any time terminate the account. Nonetheless, an IRA established in accordance with IRC § 408(a) constitutes a special type of trust account, in which the custodian of the account must fulfill particular obligations and must conform to certain restrictions. See 26 U.S.C. § 408(a). The custodian, acting as a trustee, must ensure that contributions to the account are made in cash; that the contributions not exceed the amount the individual is permitted to contribute each year; that the funds not be commingled with other property except in a common trust or investment fund; that the funds not be invested in life insurance contracts; and that the interest of an individual in the balance of his or her account be nonforfeitable. See id. It is compliance with these requirements that establishes the custodian of a IRA as a trustee….

"Thus, the IRC defines the relationship between an IRA account holder and the custodian/trustee of the account through the duties and obligations it imposes on each, and is directly relevant to our analysis. *See id.*; 26 U.S.C. § 408(a). Vanguard was not a mere agent for Blankenship, but was a trustee as established under the IRA provisions of the Internal Revenue Code. We therefore conclude that Blankenship did not obtain possession of his retirement funds through the trustee-to-trustee transfer from KPMG to Vanguard."

An IRA is also defined as a trust under New York law and afforded protections of a spendthrift trust even though the settlor may be a beneficiary[4]. *See* Estates, Powers and Trust Law Section 7-3.1(b)(1) and (2). This section, which is not an execution statute, defines qualified retirement accounts, including specifically IRAs, as spendthrift trusts, distinguishes them from other self-settled trusts and exempts them from the claims of creditors. The section is a part of trust law defining the rights of the trustees and third parties. It provides, in relevant part:

    (a)    A disposition in trust for the use of the creator is void as against the existing or subsequent creditors of the creator.

    (b)(1)    For purposes of paragraph (a) of this section, all trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, either an individual retirement account plan which is qualified under section 408 or section 408A of the United States Internal Revenue Code of 1986 , as amended, or a Keogh (HR-10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, shall not be considered a disposition in trust for the use of the creator, even though the creator is (i) in the case of an individual retirement account plan, an individual who is the settlor of and depositor to such account plan, or (ii) a self-employed individual, or (iii) a partner of the entity sponsoring the Keogh (HR-10) plan, or (iv) a shareholder of the corporation sponsoring the retirement or other plan.

    (2)    All trusts, custodial accounts, annuities, insurance contracts, monies, assets, or interests described in subparagraph one of this paragraph shall be conclusively presumed to be spendthrift trusts under this section and the common law of the state of New York for all purposes, including, but not limited to, all cases arising under or related to a case arising under sections one hundred one to thirteen hundred thirty of title eleven of the United States Bankruptcy Code, as amended. (emphasis added).

N.Y. EPTL ¶7-3.1(b)(1) and (2).

Section 5205(c) of New York's Civil Practice Law and Rules ("CPLR"), also both defines eligible accounts and exempts them from the claims of creditors. The section is not simply an

---

[4] In this regard, New York law differs sharply from the law in other jurisdictions that view an IRA like a self-settled trust. *See* e.g *Wagner v. Eberhard (In re Vaughn Co., Realtors)*, Adv. Pro. No. 11-1226, 2014 WL 271632, at *3 (Bankr. D.N.M. Jan. 23, 2014).

execution statute; it both defines eligible accounts and exempts them from the claims of creditors.

Section 5205(c), following the EPTL quoted above, classifies the IRA as trust and a specific sort

of trust that like spendthrift trusts protects it  from the claims of creditors as follows:

> " all trusts, custodial accounts . . . established as part of, and all
> payments from, either any trust or plan, which is qualified as an
> individual retirement account ... shall be considered a trust which has
> been created by or which has proceeded from a person other than the
> judgment debtor, even though such judgment debtor is (i) in the case of
> an individual retirement account plan, an individual who is the settlor
> of and depositor to such account plan, or (ii) a self-employed
> individual, or (iii) a partner of the entity sponsoring the Keogh (IIR-10)
> plan, or (iv) a shareholder of the corporation sponsoring the retirement
> or other plan or (v) a participant in a section 457 plan."

CPLR §5205(c)(2)

As companion to the treatment of IRA trust itself, CPLR § 5205(d)(1) exempts from

execution 100% of the income from the principal of IRA trust provided that the principal is exempt.

It provides:

> (d)    Income exemptions.   The following personal property is exempt from application
> to the satisfaction of a money judgment, except such part as a court determines to
> be unnecessary for the reasonable requirements of the judgment debtor and his
> dependents:
>
> 1.    ninety per cent of the income or other payments from a trust the principal
> of which is exempt under subdivision (c); provided, however, that with
> respect to any income or payments made from trusts, custodial accounts,
> annuities, insurance contracts, monies, assets or interest established as part
> of an individual retirement account plan or as part of a Keogh (HR-10),
> retirement or other plan described in paragraph two of subdivision (c) of
> this section, the exception in this subdivision for such part as a court
> determines to be unnecessary for the reasonable requirements of the
> judgment debtor and his dependents shall not apply, and the ninety percent
> exclusion of this paragraph shall become a one hundred percent exclusion.

It is undisputed that the Defendant opened his account with Madoff Securities in 1998

(without knowledge of the Madoff fraud) and simultaneously turned the administration of his IRA

over to Retirement Accounts.  *See* Defendant's Statement of Material Fact ¶¶9,10.    It is also

undisputed that the Defendant's account is a qualified IRA.  Finally, it is undisputed that the

Defendant's deposits constitute principal.  *See* Trustee's Statement of Material Fact, ¶¶126 to 127

("In sum, these five cash deposits provided the Miller Account with a total of $4,010,270 of

principal.  *Id*. ¶13, Exs. 3–4.)"); Defendant's Statement of Material Facts, ¶¶10, 11.  On their face,

state law exemptions from the Trustee's claims against both the IRA and distributions therefrom

are applicable

### 2.   The Trustee's Claim Under Section 548(a)(1)(A) Fails Against the RAI IRA

There is a fundamental connection between the limitation on collection and liability where,

as here, the alleged fraudulent transfers involve an exempt asset.  The consequence of the broad

exemptions of defendant's property from the claims of creditors is that those assets are immune

from fraudulent transfers actions because the creditors or entities to which the defendant was or

becomes liable could have had no interest in the property.  *See Bear, Stearns Sec. Corp. v. Gredd*

*(In re Gredd)*, 275 B.R. 190, 196 (Bankr. S.D.N.Y.2002)("We thus conclude that §548(a)(1)(A)

only permits a trustee to avoid a transfer of an interest in property of a debtor when, but for the

transfer, such property or interest would have been available to at least one of the debtor's

creditors."); *Ehrlich v. Commercial Factors of Atlanta*, 567 B.R. 684 (N.D.N.Y.2017)(payment to

a secured creditor does not hinder, delay or defraud creditors because it does not put assets

otherwise available in a bankruptcy distribution out of their reach.); *Savage & Assoc. v. Mandl (In*

*re. Teligent Inc.*,380 B.R. 324, 338 (Bankr. S.D.N.Y. 2008)(fraudulent transfer claims allow a

trustee to recover property that would have otherwise been available to the estate and creditors.);

*Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.)*, 318 B.R. 276, 283 (Bankr. S.D.N.Y.

2004)(no fraudulent transfer sustained to recover trust funds)

The same principle regarding exempt property has been adopted in other jurisdictions. *See Syngenta Seeds, Inc. v. Wingate (In re Wingate),* 377 B.R. 687, 695 (Bankr. M.D. Fla 2006)("It is generally held that a debtor's transfer of exempt property cannot be avoided pursuant to the fraudulent transfer provisions of the Bankruptcy Code.") citing *In re Goldberg*, 229 B.R. 877, 882-83 (Bankr. S.D. Fla. 1998); *Jensen v. Anderson (In re Anderson),* 561 B.R. 230 (Bankr. M.D.Fla 2016) ("Under both the fraudulent transfer provisions of the Bankruptcy Code and the Florida Uniform Fraudulent Transfer Act ("FUFTA"), a transfer of property that is exempt from creditors may not be the subject of an action to avoid a fraudulent transfer. The disposition of exempt property cannot be the result of an intent to defraud creditors because the creditors had no claim to the property regardless of whether or not it was transferred."(*Tardif v. McCuan (In re McCuan*), 569 B.R. 511 (M.D. Fla 2017)(Under Florida law, property that is absolutely exempt cannot be reached by creditors, even if disposed of with a purpose to hinder, delay, or to defraud, because the creditors never had the right to look at such property in the first place.); *Craft v. United States*, 65 F. Supp. 2d 651 (D.W.D. Mich. 1999)reversed on other grounds ( same); *Andrews v. RBL, L.L.C. (In re Vista Bella, Inc.*), Adv. Proc. No. 12-00060-MAM, 2013 Bankr. LEXIS 2275, 2013 WL 2422703, *37 (Bankr S.D. Ala. June 4, 2013)("sale or other disposition of property which is by law exempt from payment of debts cannot be impeached by creditors as fraudulent, since creditors cannot be deemed concerned with property not subject to their demands").

The principle is applicable in this case and bars the Trustee's remaining claim against the Defendant.

### 3.    The Statutory Exception To the Exemption Is Inapplicable

There is one exception to the protections offered by CPLR 5205(c)(5) that prevents a holder of an exempt asset from relying on the protections of the New York state law if the creator of the IRA or other similar asset contributed to the asset in violation of Article 10 of the New York

Debtor & Creditor Law ("DCL") §§270-281. The section is inapplicable in this case because the

Defendant did not make additions to the RAI IRA account to avoid his creditors and what he

received from the RAI IRA were not additions, but withdrawals.  Furthermore, the Trustee no

longer has claims under the DCL See Defendant's Statement ¶7.

CPLR 5205(c)(5) states:

> Additions to an asset described in paragraph two of this subdivision
> shall not be exempt from application to the satisfaction of a money
> judgment if (i) made after the date that is ninety days before the
> interposition of the claim on which such judgment was entered, or (ii)
> deemed to be fraudulent conveyances under article ten of the debtor
> and creditor law.

The section is clearly designed to cover the situations where the holder of the exempt assets

purposely transferred property to the IRA or Keogh to avoid his or her creditor's creditor claims

under one of the provisions of the DCL.  *See, e.g., Breslin Realty Dev. Corp. v. Morgan Stanley*,

48 Misc. 3d 424 (2015)(specifically discussing DCL law in connection with the provision and

stating "the relevant paragraph refers solely to "additions" without further elaboration or

exception"); *Memmo v Perez*, 63 AD3d 472 (1st Dept 2009)(charging lien on additions to IRA

within 90 days of divorce settlement); *Roedel Cos., LLC v JNK Home Enters., LLC*, 2020 N.Y.

Misc. LEXIS 2749 (Sup. Ct. 2020) (IRA fits squarely within this exception, as it was funded

entirely by Lien Law trust funds intentionally diverted during the hotel renovation project.);

*Meadow v. Katz*, 2008 NY Slip Op 32674(U) (Sup. Ct. 2008)(amounts deposited within 90 days

are not exempt from execution by depositor's creditor).  *Gard Entertainment, Inc. v. Block* 2012

WL 3764525 (N.Y. Sup. 2012) ("Under CPLR 5205(c)(5), a trust conveyance may be set aside if

the transfer was made in violation of the Debtor and Creditor Law.")  The exception to exemption

assumes a relationship (missing in this case) between the creator of the exempt asset, the

contributions or additions into the asset and the creator's creditors even when the contributions are

caused by third party. *See Planned Consumer Mktg. v. Coats & Clark*, 71 N.Y.2d 442, 527 N.Y.S.2d 185 (N.Y. 1988). In that case, the CEO of the company created a company pension plan to evade the claims of company creditors. The court analyzed the provisions of the DCL and upheld certain claims that violated its provisions: "The third, fourth and fifth causes of action allege that PCM created and contributed to the Plan, with the intent to avoid creditors, at a time when PCM was a counterclaim defendant against C&C, and when PCM was insolvent and inoperative, leaving it with an unreasonably small capital -- all in violation of these provisions." As a result, the exception to the exemption was applicable.

Application of this exception to the facts of this case and the extensive IRA exemption requires the Trustee to ignore generally accepted principles of statutory interpretation that begin with the language of the statute itself, view a single provision in the context of the whole statute, and construe a statute consistent with legislative intent. *See  KLC, Inc. v. Trayner*, 426 F.3d 172, at *176 (2d Cir. 2005) ("Our analysis begins by examining the text and structure of the statute itself. See *Whitfield v. Scully*, 241 F.3d 264, 275 (2d Cir. 2001). All parts of a statute must be read as a whole so one part is not found to be in conflict with another part, but also read to give meaning to each. *See Pintavalle v. Valkanos*, 216 Conn. 412, 581 A.2d 1050, 1053 (Conn. 1990). Further, statutes should be construed so as to attain a coherent result and to effectuate the purpose the legislature sought to achieve; an absurd result signals an erroneous construction. *See In re Valerie D.*, 223 Conn. 492, 613 A.2d 748, 769 (Conn. 1992); *Jones v. Mansfield Training Sch.*, 220 Conn. 721, 601 A.2d 507, 509 (Conn. 1992)").

On its face, the exception does not apply to withdrawals from the protected assets, which is what the Trustee is seeking to avoid and recover. As N.Y. CPLR § 5205(c)(5) only contemplates a carve-out for fraudulent conveyances under state law,  specifically article 10 of the  DCL and the

Trustee no longer has any such claims, the Trustee's claim for avoidance of distributions from the Defendant's RAI IRA Account under section 548(a)(1)(A) of the Bankruptcy Code must fail. Significantly, the CPLR §5205(c)(5) refers to fraudulent conveyances under article ten of the debtor and creditor law, not the Bankruptcy Code. However, in other sections, when the statute means to include the Bankruptcy Code, it cites expressly to the Code. *See, e.g.,* CPLR 5202(c)(3).

Finally, the Trustee's unique and distorted interpretation of the exception that would eliminate the protection from an innocent beneficiary of an IRA goes against the general policy of construing exemptions liberally in favor of the party claiming the exemption. "[I]t is well settled that exemption provisions are to be construed liberally." *Morgan v. Gordon,* 450 B.R. 402, 405 (W.D.N.Y. 2011) (holding that annuity and proceeds were exempt); *see also KLC, Inc. v. Trayner,* 426 F.3d 172, 176 (2d Cir.2005 )("[I]n attempting to construe the Connecticut homestead exemption, we must bear in mind the firmly established canon of interpretation instructing that, in order to effectuate the purpose of exemptions, such laws are to be liberally construed in favor of the debtor.") *In re Keil,* 88 F.2d 7, 8 (2d Cir. 1937) (exempting life insurance policy and dividends therefrom and noting that "exemption statutes are to be liberally construed"); *In re Glenn,* 430 B.R. 56, 58 (Bankr. N.D.N.Y. 2010) ("Exemption statutes are to be construed liberally in favor of a debtor. [I]t is the Trustee who bears the burden of proof to establish that the exemption is improper.").

There are two decisions which have rejected the exemption under CPLR §5205(c) for IRAs as a basis for dismissing the Trustee's complaints against the good faith defendants with IRAs. Since both were determinations on motions to dismiss they necessarily lacked a full development of the facts outside the complaints and they have not been subject to appeal on the legal analysis and conclusions.

In *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.*), 476

B.R. 715, n.13, (S.D.N.Y. 2012), Judge Rakoff rejected the defense to the Trustee's claims under

CPLR §5205 in a footnote based on the exception in section (c)(5) as follows:

> While N.Y. C.P.L.R. § 5205(c) exempts money in certain trusts,
> including IRAs, from "application to the satisfaction of a money
> judgment," § 5205(c)(5) specifically provides that the exemption does
> not apply to "[a]dditions to" the trust that are "fraudulent conveyances."
> Although Hein and Blumenthal argue that § 5205(c)(5) applies only to
> additions to an IRA, and not distributions from it, § 5205(d)(1) exempts
> distributions from IRAs only where "the principal . . . is exempt under
> subdivision (c)." Thus, where Madoff Securities fraudulently
> transferred profits into Hein's and Blumenthal's IRAs, distributions of
> those profits are not protected by § 5205(d)(1). Since Madoff Securities
> apparently did not segregate customer accounts as it claimed to do,
> Looby Decl. ¶ 18, the record before the Court suggests that additions
> to and distributions from IRAs occurred simultaneously in the form of
> payment to the transferee.

However, as shown above, the exception is not applicable to additions by a party, who is

not the creator of the IRA in order to evade his creditors. Moreover, CPLR § 5205(d)(1) expressly

exempts income from principal that is not subject to avoidance. Here, it is undisputed that the

principal additions made by the Defendant are not subject to avoidance. Finally, the record of the

transactions in the RAI IRA Account shows that withdrawal transfers to were made directly to

Retirement Accounts, not the Defendant and distributions were made to the Defendant

substantially later.

Similarly, in *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 531 B.R. 439,

483  (Bankr. S.D.N.Y. 2015) the Bankruptcy Court denied motions to dismiss claims against IRAs

and other retirement vehicles based on a limited record and without full development of the

applicable law as follows:

> The motion to dismiss on this ground is denied. First, CPLR § 5205
> exempts certain trust property from judgment execution, but the
> defendants have not cited any authority in support of their argument
> that it invalidates the plaintiff's cause of action. Second, the exemption

does not apply to all trusts. Third, CPLR § 5205 addresses the situation where the judgment debtor and the trust are different entities, and the plaintiff seeks to satisfy its judgment against the judgment debtor from the trust property or income. Here, the trust or retirement account received the fraudulent transfer. Fourth, even if the principal is exempt, the income earned by the trust may not be fully exempt from execution by a judgment creditor. See CPLR 5205(d)(1).

The cases discussed above directly address Judge Bernstein's initial basis for rejection of the defense based on the principle in this jurisdiction and elsewhere that a fraudulent transfer action will not be sustained against assets that are exempt from creditor claims.  Second, the exemption here expressly applies to an IRA which is deemed a spendthrift trust notwithstanding that the fact that the settlor may be the beneficiary. Third, the situation in the cases under New York law is distinctly different only because the RAI IRA did not contribute to his IRA or make distributions to evade the claims of the Defendant's creditors.  The Trustee is seeking a judgment against both the IRA trust and the Defendant for income from the RAI IRA trust.  Finally, pursuant to CPLR §5205(d)(1) income from the IRA trust is 100% exempt.

In sum, the RAI IRA is an exempt asset that is not subject to claims of creditors or undermined by a limited exception to the exemption provisions of New York law.  Consequently, the Trustee's claims must fail as a matter of law.

**B.    THE DEFENDANT HAS THE DEFENSES OF A SUBSEQUENT TRANSFEREE UNDER SECTION 550(B)**

**1.    Retirement Accounts is the Initial Transferee**

The Trustee treats the Defendant as the initial transferee and by eliminating Retirement Accounts entirely from the complaint, as the only transferee.  However, the facts of  the transactions in the RAI IRA account warrant defining the Defendant as a subsequent transferee.

Section 550(a) of the Bankruptcy Code allows a trustee to recover avoided transfers from either "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was

made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. §550(a).

With respect only to the second category consisting of immediate or mediate transferees of the

initial transferee, section 550(b) offers various defenses against recovery of an avoided transfer.

The Bankruptcy Code does not define the term "initial transferee." Rather, the courts have

developed a fact specific test for determining transferee status.  In the Second Circuit, courts apply

the "dominion and control" test. *See Christy v. Alexander & Alexander (In re Finley, Kumble,*

*Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57-58 (2d Cir.1997), *Tese-*

*Milner v. Brune (In re Red Dot Scenic, Inc.*), 293 B.R. 116, 119 (S.D.N.Y. 2003). Under the test,

the initial transferee is the one who first acquires dominion and control over the transferred asset.

*See Finley, Kumble,*, 130 F.3d at 57; *Bonded Fin. Serv., Inc. v. European American Bank*, 838

F.2d 890, 893 (7th Cir. 1988)("The minimum requirement of status as a 'transferee' is dominion

over the money or other asset, the right to put the money to one's own purposes.")   The court in

*Bonded* at one point in the decision humorously characterized dominion as the right to invest "in

lottery tickets or uranium stocks." *Id.* at 894. That exaggeration has been held out as the standard

of dominion and control by the Trustee.  However, the test is fact specific and the exercise of

dominion need not be so boundless to meet the test in this jurisdiction.

In *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.),* 397 B.R. 1, 7

(S.D.N.Y. 2007) the court rejected the notion that complete control over the subject property is

necessary to establish transferee liability:   "While we agree that Bear Stearns was not free to use

the transfers to buy "lottery tickets or uranium stocks," we reject the suggestion that the "dominion

and control" test formally incorporates Judge Easterbrook's dicta." *Id*. at 7.  The court also accepted

the less expansion definition applied in *Lowry v. Security Pacific Business Credit, Inc. (In re*

*Columbia Data Products, Inc.*), 892 F.2d 26 (4th Cir. 1989), that a party can be an initial transferee

even if it cannot use the received funds for purposes unrelated to the underlying transaction like playing the lottery. *Id*. In *Paloian v. LaSalle Bank N.A.*, the Seventh Circuit grappled with initial transferee liability in the context of a trustee of a securitized investment pool. The court in *Paloian* noted that the Bankruptcy Code does not define "initial transferee" but that courts have looked to the entity with control over the funds as the real recipient of a fraudulent transfer. LaSalle, as trustee, was the legal owner of the securitization trust's assets, and the proper subject of an avoidance action to recover certain loan payments made to the trust, even though LaSalle argued it lacked the requisite control over disbursement of the funds. Retirement Accounts held essentially the same role with the RAI IRA and is also the initial transferee.

In contrast to the initial transferee, one who is merely the first person to touch the transferred property or merely facilitates the transfer of funds or property is a conduit, not a transferee. *Finley Kumble*, 130 F.3d at n. 3.[5]

Retirement Accounts was not the passive trustee that would avoid liability as a mere conduit. In addition to providing the legal structure for the Defendant to maintain his IRA in conformity with applicable law and the necessary services to maintain the account[6], Retirement Accounts timed its requests from Madoff Securities so that it could use the float on the funds in its account for 10 days to two weeks on the average before making distributions to the Defendant. Based on a review of the monthly trading instructions sent by Retirement Accounts for the RAI IRA Account (and often other similar accounts), the dates of the checks sent monthly to Retirement

---

[5] To be clear, for purposes of section 550, a recipient of a transfer at any point in a series of transfers cannot qualify as the beneficiary of the transfer. "The structure of the statute separates initial transferees and beneficiaries, on the one hand, from 'immediate or mediate transferee[s]', on the other. The implication is that the 'entity for whose benefit' is different from a transferee, 'immediate' or otherwise. The paradigm 'entity for whose benefit such transfer was made' is a guarantor or debtor - someone who receives the benefit but not the money." *Bonded Financial Services v. European Amer. Bank*, 838 F.2d at 895.; *Enron Corp. v. J.P. Morgan Securities (In re Enron Corp.*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006).

[6] *See* Defendant's Statement of Material Facts ¶¶12 through 15.

Accounts and the dates that Retirement Accounts received the checks and then made distributions

to the Defendant reported in the quarterly statements sent to the Defendant, there were long periods

of time when the funds from Madoff Securities were in Retirement Accounts' bank account for

use by Retirement Accounts for any purpose.

The requests by Retirement Account for distributions from Madoff Securities were

typically made in the first two weeks of the month. *See* Ruegger Decl., ¶8, Exhibit E (Trading

Instructions). The monthly distribution checks were typically dated between the 15th and the 20th

of the month. *See* Exhibit A to the Amended Complaint. As shown on the quarterly account

statements sent to the Defendant by Retirement Accounts, the checks were received within days

by Retirement Accounts. The same quarterly account statement show that distributions were made

in the first few days of the following month. *See* Ruegger Decl., ¶12-19, Exhibits J through O.

Accordingly, Retirement Accounts, in numerous instances, held the funds in its account for a week

or two weeks before making distributions to the Defendant. The timing and delayed distribution

was a conscious decision on the part of Retirement Accounts. *See* Ruegger Decl., ¶24, Exhibit T

(Internal memorandum).

A few examples of the numerous similar transactions illustrate the fact.[7]  Exhibit A to the

Amended Complaint lists a check dated October 16, 2003 payable to Retirement Accounts.

Retirement Accounts noted receipt of the funds as a "cash adjustment" on October 20, 2003 on the

Quarterly Statement for the period ended December 31, 2003. Ruegger Decl., ¶15, Exhibit K. On

the same statement, Retirement Accounts notes the distribution to the Defendant 12 or so days

later on November 3, 2003. Similarly, Exhibit A to the Amended Complaint lists a check dated

---

[7] Although it was a regular practice to hold on to the funds, not all distributions were so delayed. However, it should be noted that Retirement Accounts was the required trustee for all IRA accounts opened with Madoff Securities. This regular monthly practice of holding onto the funds before making distributions to those IRA beneficiaries may have given Retirement Accounts access to substantial sums.

July 13, 2004, 2004 payable to Retirement Accounts.  Retirement Accounts noted receipt of the

funds as a "cash adjustment" on July 16, 2004 on the Quarterly Statement for the period ended

September 30, 2004.  Ruegger Decl., ¶15, Exhibit K.  On the same statement, Retirement Accounts

notes the distribution to the Defendant 16 or so days later on August 2, 2004.  Ruegger Decl., ¶15,

Exhibit K.  Exhibit A to the Amended Complaint lists a check dated March 14 , 2005 payable to

Retirement Accounts.  Retirement Accounts noted receipt of the funds on March 16, 2005 on the

Quarterly Statement for the period ended March 31, 2005.  Ruegger Decl., ¶16, Exhibit L.  On the

next quarterly statement for the period ended June 30, 2005, Retirement Accounts notes the

distribution to the Defendant 15 or so days later on April 1, 2005.  Ruegger Decl., ¶16, Exhibit L.

The checks from Bernard L. Madoff payable to Retirement Accounts dated October 16, 2003, July

13, 2004 and March 14, 2005 are all included in Exhibit F attached to the Ruegger Decl., ¶9.

By virtue of its timing of the requests for transfers and the distributions, Retirement

Accounts was able to use the funds for its own benefit and exercise dominion and control sufficient

to qualify as an initial transferee even though it could not buy uranium stocks or play the lottery.

The fact that trust distributions were required to be made within the confines of the

formulas set forth in the IRC and applicable regulations does not mean that the trust, through its

trustee, did not exercise dominion and control over the assets and in particular, the distributions

from BLMIS according to relevant case law.  *See, e.g., Paloian v. LaSalle Bank, N.A*., 619 F.3d at

692 ("But lots of decisions hold that an entity that receives funds for use in paying down a loan,

or passing money to investors in a pool, is an "initial transferee" even though the recipient is

obliged by contract to apply the funds according to a formula.") citing, *In re Columbia Data

Products, Inc*., 892 F.2d 26, 28 (4th Cir. 1989); *In re Chase & Sanborn Corp*., 904 F.2d 588, 599-

600 (11th Cir. 1990); *In re Incomnet, Inc*., 463 F.3d 1064, 1071-76 (9th Cir. 2006).

20

**2.    The Defendant Is Entitled To Complete Defense Of Bankruptcy Law Including Section 550(b).**

As Retirement Accounts was the initial transferee of transfers from Madoff Securities, the Defendant was a subsequent transferee of the distributions from the RAI IRA Account. The law in this jurisdiction and elsewhere is clear that in order to establish liability on the part of an alleged subsequent transferee, the Trustee must first show that that alleged transferee was in receipt of the fraudulently transferred funds. That requires establishing that the initial transfers were avoidable and that the subsequent transferee received them. See *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC),* 2014 Bankr. LEXIS 4348.*31-2 (Bankr. S.D.N.Y., Oct. 10, 2014) ("The Trustee would first have to demonstrate that the initial transfers to the three feeder funds were avoidable. He would then have to trace the avoidable BLMIS transfers from the feeder funds to JPMorgan to show that JPMorgan was a subsequent transferee."); *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs.*), 408 F.3d 689,708 (11th Cir. 2005) ("In an action seeking recovery, the plaintiff has the burden of tracing funds it claims to be property of the estate."). "The general rule under the Bankruptcy Act is that one who did not actually receive any of the property fraudulently transferred . . . will not be liable for its value," *Mack v. Newton*, 737 F.2d 1343, 1357 (5th Cir. 1984). In this case, the Trustee cannot establish the liability on the part of the initial transferee by virtue of the exemption statutes.

Section 550(b) affords a complete defense to liability of a subsequent transferee of the initial transferee if the subsequent transferee (i) takes for value, (ii) in good faith and (iii) without knowledge of the voidability of the transfer. 11 U.S.C. Section 550(b)(1). It is undisputed that the Defendant received distributions from the RAI IRA Account without knowledge of the fraud and in good faith. In this jurisdiction, assuming as is the case here, that there is no knowledge of the fraud on the part of the transferee, "value" within the meaning of § 550(b)(1) is consideration

sufficient to support a simple contract between the transferee and its transferor, not BLMIS or

Madoff Securities.  5 Collier on Bankruptcy (16th Ed.), ¶ 550.03[1], p. 550-20; *Enron Corp. v.*

*Ave. Special Situations Fund II, LP (In re Enron Corp.)*, 333 B.R. 205 (Bankr. S.D. N.Y. 2005)

(In addition, under section 550(b) of the Bankruptcy Code, "the value' required to be paid by the

transferee is merely consideration sufficient to support a simple contract. . . . There is no

requirement that the value given by the transferee be a reasonable or fair equivalent.") (citations

omitted).  The IRA trusts are legally binding contracts that provided the beneficiary with rights

and obligations to distribution in accordance with their age and the value of the assets.

Section 550(b) affords the Defendant with a complete defense to the Trustee's claim.

## II.    THE TRANSFERS IN QUESTION WERE NOT THE DEBTOR'S PROPERTY

The Trustee's only remaining claim against the Defendant is a claim under Sections

548(a)(1)(A) and Section 550 of the Bankruptcy Code. 11 U.S.C. §§ 548(a)(1)(A) and 550.

Section 548(a)(1)(A) provides in relevant part:

> (1) The trustee may avoid any transfer… of an interest of the debtor in
> property, or any obligation… incurred by the debtor, that was made or
> incurred on or within 2 years before the date of the filing of the petition,
> if the debtor voluntarily or involuntarily—
>
> A) made such transfer or incurred such obligation with actual intent to
> hinder, delay, or defraud any entity to which the debtor was or became,
> on or after the date that such transfer was made or such obligation was
> incurred, indebted;

The Trustee must establish three main elements to succeed on his only remaining claim

against the Defendant to avoid a fraudulent transfer under Bankruptcy Code section 548(a)(1)(A).

These are "(i) the transfer of an interest of the debtor in property; (ii) made within two years before

the debtor filed for bankruptcy; and (iii) done with 'actual intent to hinder, delay, or defraud' the

debtor." 11 U. S. C. §548(a)(1)(A) *See Adelphia Recovery Trust v. Bank of Am., N.A.*, 05 Civ. 9050

(LMM); 2011 U.S.Dist Lexis 39139, *23, 2011 WL 1419617 (S.D.N.Y. April.7, 2011); *McCord*

*v. Ally Fin, Inc. (In re USA United Fleet, Inc.)*, 550 B.R. 41, 57 (Bankr. E.D. N.Y. 2016.)

 As a threshold matter, the statute requires that the transfer involve property of the debtor

and the case fails where the debtor has no interest in the property. *Bear Stearns Securities Corp.*

*v. Gredd*, 275 B.R. 190 (S.D.N.Y. 2002)(Because Manhattan Investment Fund never had an

ownership interest in securities purchased to cover short sales by operation of law, the transfers

could not be avoided under Bankruptcy Code section 548 even if the fund had actually intended

to hinder, delay or defraud its creditors when it entered into the short-sale transactions*.) See also*

*In re Dreier LLP*, 429 B.R. 112, 125 (Bankr. S.D. N.Y. 2010) ("If the transfer did not involve

property of the debtor under non-bankruptcy law, the trustee cannot avoid and recover the transfer

or its value.").  In this case, the Trustee's claims must fail because the property transferred was not

property of BLMIS.  The Trustee's evidence of ownership of the property is inadmissible to

establish that transfers were property of BLMIS.  The evidence proffered by the Trustee is

inadmissible against the Defendant for several reasons.

 The Trustee has not offered an expert on corporate matters, New York banking practices

generally, or JP Morgan's practices in particular.  Bruce Dubinsky's recitation regarding the

corporate history of the Madoff business and the ownership of assets is inadmissible for several

reasons.  First, It is inappropriate for him as an expert to become a vehicle for factual narrative.

*See Travelers Indem. Co. v. Northrop Grumman Corp.*, 2014 U.S. Dist. LEXIS 14981at *12; 2014

WL 464769 (S.D.N.Y. Jan. 28, 2014)("It is also inappropriate for experts to become a vehicle for

a factual narrative that simply accumulates and puts together pieces of a factual story" (internal

citations omitted).  Acting simply as a narrator of the facts does not convey opinions that are based

on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology.

In short, mere narration fails to fulfill Daubert's most basic requirements…In addition, narration of facts of the case may easily invade the province of the jury, providing a separate basis for exclusion"); *Island Intellectual Prop. LLC v. Deutsche Bank AG*, No. 09 Civ. 2675 at \*8, 2012 U.S. Dist. LEXIS 217422012 WL 526722, at \*2 (S.D.N.Y. Feb. 14, 2012); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) ('Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology.").

Second, the Trustee's experts, Bruce Dubinsky, Matthew Greenblatt and Lisa Collura are forensic accountants, whose exhaustive work has demonstrated that the investment advisory business was operated as a fraud. None of them have no training or expertise in corporate formation or banking practices and regulations. Their purported evidence of the ownership of the banking accounts and other Investment Advisory Business assets, including the customer accounts themselves, is inadmissible hearsay. Their opinions and the lengthy list of tasks they undertook to reach their opinions have nothing to do with the ownership of the investment advisory business assets. Although experts may rely on hearsay or other inadmissible evidence if experts in their field reasonably rely on such evidence in forming their opinions under Fed. R. Evid. 703, it is inappropriate for an expert to serve as a conduit for inadmissible evidence that is not an essential part of their opinions. *See Lightbox Ventures, LLC v. 3RD Home Ltd.*, 16 cv 2379 (DLC), 2017 U.S. Dist. LEXIS 187202, \*24, 2017 WL 5312187 (S.D.N.Y. Nov, 13, 2017) ("Experts may rely upon otherwise inadmissible facts or data in reaching conclusions "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703.") citing *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008).

The Trustee has no third-party evidence that the alleged transfers from the opening of the account occurred.  The Trustee's primary evidence that the Investment Advisory Business became part of the limited liability company in 2001 is the Form BD, and the testimony of the Trustee's expert witness, Mr. Dubinsky.  The Form BD itself may be admissible as a statement of what was said at the time.  However, the statements regarding the transfer of the sole proprietorship assets are not admissible to establish that Madoff actually transferred the investment advisory business to the limited liability company, for several reasons.

First, the statements are not admissible against the Defendant.  The SEC forms are inadmissible hearsay against the Defendant, but admissible against the Trustee who is in effect the successor to BLMIS.  *See Buchwald v. Williams Energy Mktg. & Trading Co. (In re Magnesium Corp. of Am.),* 460 B.R. 360, n. 67 (Bankr. S.D.N.Y. 2011).  While SEC filings may be introduced by an opponent as admissions of the party that filed them, *see* Fed. R. Evid. 801(d)(2), they are hearsay when offered by the party that prepared them; *Savage & Assocs. v. Mandl (In re Teligent Inc.),* 380 B.R. 324 n. 2 (Bankr. S.D.N.Y. 2002) ("The Teligent SEC filings represent admissions by Teligent.  The plaintiff is the successor to Teligent, (internal citation omitted), and the contents are non-hearsay as to her.  The contents are not, however, admissible against Mandl.  The contents of IDT's SEC filings are not admissible because they are hearsay, and the plaintiff has failed to show that they are admissible under an exception to the hearsay rule.")

Second, as stated above, the Form BD is a registration statement solely for Madoff's proprietary trading and market making business.  In response to the direction in the Amended Form BD question 12 to "Check the types of businesses engaged in (or to be engaged in, if not yet active) by applicant," Madoff checked:  (C) "Broker or dealer making inter-dealer markets in corporate securities over the counter"; (V) "Trading securities for own account"; and (Z) Other.  Cremona

Decl., Ex. 3 (2001 SEC Amended Form BD, pp. 8-9.  Madoff did not check the box (S) Investment

advisory services.  Defendant's Statement of Material Facts, ¶44.  In addition, the Form BD itself

could not and did not affect a change in the assets and liabilities of the two businesses that were

transferred to the limited liability company..

Third, both Bernard and his brother, Peter Madoff, identified on the Form BD as

responsible parties for the filing entity, pleaded guilty to filing fraudulent SEC filings.  *United

States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009) (the "Madoff Allocution"), ECF

No. 57 (Ruegger Decl., ¶¶ 25-26, Exhibits U and V).  The statements in the Form BD as well as

the other documents filed with the SEC or other agencies and relied upon by the Trustee are

unreliable.

On the other hand, the Defendant has established that the bank and customer accounts of

the investment advisory business remained in the sole proprietorship.  *See* Statement of Material

Facts ¶¶14, 50.  The Defendant relies on evidence that the JP Morgan Chase Accounts remained

under Madoff sole control outside of BLMIS.  The evidence is in the form of the checks, produced

by the Trustee, that were written on an account at J.P. Morgan Chase account #xxxxxxxxx1509

(the "509 Account") in the name and control of Bernard L. Madoff.  This account was the source

of the withdrawal payments to the Retirement Accounts from the commencement of its control

over the RAI IRA Account.  *See* Ruegger Decl., ¶9, Exhibit F.  The checks written on both the 703

and the 509 Accounts bore the printed name of the sole proprietorship, "Bernard L. Madoff," as

the drawer of the checks on both the upper left corner of the check where the name of the drawer

typically appears and above the signature line.  There was never any time when a different name

appeared on the checks.  Similarly, the Chase bank account statements for both the 509 Account

and ("Chase") account #xxxxx1703 (the "703 Account") bore the names of the sole proprietorship,

not BLMIS.  Further, trading instructions sent by Retirement Accounts for transfers throughout the relevant period were all directed to Bernard L.  Madoff.  *See* Ruegger Decl., ¶8, Exhibit E. Finally, the evidence is that Madoff continued to trade in treasury securities, commercial paper, short term derivatives and other investments with funds in the 703 Account in order to keep funds at a level sufficient to meet customer withdrawal requests.  *See* Ruegger Decl., ¶32, Exhibit BB.

The relevant facts of this case are essentially undisputed.  Until January 1, 2001, Madoff operated three businesses -- the market making business (handling over-the-counter trades for others), the proprietary trading business (trading with the company's own money) and the Investment Advisory Business -- as a sole proprietor.  From 1998, when the RAI IRA Account was first set up through 2008, the checks sent to Retirement Accounts and the Chase bank statements continued to bear the name of sole proprietorship. *See* Ruegger Decl .¶32, Exhibit BB continued to bear the name of the sole proprietorship,.  As the documents both before and after January 1, 2001 unequivocally establish, Madoff operated the sole proprietorship under the names "Bernard L. Madoff" and "Bernard L. Madoff Investment Securities."

The incorrect characterization of these transfers as transfers by BLMIS is not saved by the legal fiction of SIPA § 78fff-2(c)(3) that expands the Trustee's reach to work around state law requirements for brokerage accounts.  That section of SIPA has a limited purpose.  It is meant to deal with the fact because money held by a broker on behalf of its customers is not the broker's property under state law; it would not be recoverable by an ordinary trustee in bankruptcy.  SIPA circumvents that particular problem with the fiction that confers standing on the Trustee by treating customer property held by the broker as though it were property of the debtor.  *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199,213 (2014).  The section does not convert individual's property into debtor property.

In sum, the Trustee has failed to satisfy his prima facie burden by establishing a "transfer . . . of an interest of the debtor in property" within the meaning of section 548(a)(1)(A).

## III.    THE TRUSTEE HAS NOT PROPERLY CALCULATED THE TRANSFERS IN THE RAI IRA ACCOUNT.

If the investment advisory business was restructured as part of BLMIS, the computation of the transactions in the RAI IRA Account should begin in January 2001 when BLMIS was formed, not from the opening of the account in 1998. SIPA directs the Trustee to look only to the books and records of the debtor, which is BLMIS, not its predecessor. When the Trustee is required to rely solely on the books and records of the debtor, as SIPA mandates, his calculation of money in versus money out leaves the Defendant with no liability for the transfers.

It is undisputed that the debtor in these proceedings is BLMIS, not Madoff individually or his sole proprietorship. SIPC filed an application for protection solely for the entity Bernard L. Investment Securities LLC. *See* Application of SIPC at 10, *SEC v. Madoff*, No. 08-cv-10791 (LLS) (S.D.N.Y. Dec. 15, 2008), ECF No. 5. SIPA § 78lll defines "debtor" within the meaning of the statute as a "member of SIPC with respect to whom an application for a protective decree has been filed under section 78eee(a)(3) of this title or a direct payment procedure has been instituted under section 78fff-4(b) of this title." Furthermore, in *In re Bernard L. Madoff Inv. Securities, LLC*, 557 B.R. 89 (Bankr. S.D.N.Y. 2016) (the "Avellino Decision"), this Court described the critical difference between the debtor and the individual, Bernard Madoff and his sole proprietorship and the limitations on the Trustee's avoidance power:

> The "debtor" in a SIPA liquidation proceedings is "a member of SIPC with respect to whom an application for a protective decree has been filed under section 78eee(a)(3) of this title." SIPA § 78lll(5). SIPC filed an application for a protective decree against "Bernard L. Madoff Investment Securities LLC," and the District Court's order identifies the Defendant as "Bernard L. Madoff Investment Securities LLC." The predecessor business, which was not a defendant or even mentioned in the District Court's Order, was conducted in the name of Bernard L.

> Madoff. (Uniform Application for Broker-Dealer Registration (Form
> BD), dated Jan. 12, 2001, at 9.) The SIPA debtor was BLMIS, the
> limited liability company, and not Madoff's sole proprietorship, an
> entity that had no legal existence separate from Madoff. *See United
> States v. Fox,* 721 F.2d 32, 36 (2d Cir.1983); *Mattel, Inc. v. Adventure
> Apparel,* No. 00 CIV. 4085, 2001 WL 1035140, at *5 n. 2 (S.D.N.Y.
> Sept. 7, 2001)

*Id*. at 108.

SIPA defines all aspects of the Trustee's and customer's respective rights and obligations

with respect to one specific debtor that is the subject of a liquidation proceeding. *See, e.g.,* section

78lll(2)(A) "Definition of Customer" (The term 'customer' of a debtor means any person

(including any person with *whom the debtor deals* as principal or agent) who has a claim on

account of securities received, acquired, or held *by the debtor* in the ordinary course of its business

as a broker or dealer from or for the securities accounts of such person for safekeeping, with a

view to sale, to cover consummated sales, pursuant to purchases, as collateral, security, or for

purposes of effecting transfer.) (emphasis added); section 78lll(11) "Net Equity" (defined

exclusively with reference to "the debtor"; Section 78fff-2 refers to obligations of the debtor

"ascertainable from the books and records of the debtor"; Rule 501 "Claim for Cash" (defines all

aspects of a customer claim with reference to a particular SIPC member); Rule 502 "Claim for

Securities" (same). Finally, Rule 201 calls for separate protection for accounts introduced by

different brokers or dealers. In sum, the statute and rules limit the Trustee's ability and authority

to calculate of liability across entities.

The SIPA statute and rules view the sole proprietorship and the limited liability company

as two separate entities and requires the Trustee to look to the books and records solely of the

limited liability company BLMIS. The SIPA statute should prevent the Trustee from going back

past January 1, 2001, the date of BLMIS' formation, to determine the account balance because

BLMIS and its records must be separately considered. Not surprisingly, the Trustee applies a strict

interpretation of the term "customer" under the SIPA statute and rules in determining eligibility to claim against customer property but applies a loose definition of debtor to incorporate the transactions in the sole proprietorship in the calculation of the avoidance liability.

On December 31, 2000, immediately before the creation on BLMIS, the statement for the RAI IRA Account showed securities with a stated value of $ 5,578,430.32.  Ruegger Decl., ¶13, Exhibit I.  According to the Trustee's chart attached as Exhibit A to the Amended Complaint, additional deposits were made between 2002 and 2004 in the aggregate amount of $60,279.00 for a total of $5,638,709.32.  According to the same chart, from January 2001 (from the date of the formation of BLMIS) through 2008 the Defendant purportedly made withdrawals totaling $4,660,063.17.  Based on the Trustee's methodology of money in versus money out, the Defendant would have no liability for transfers beyond his legitimate stated account.

Consequently, the Trustee is not entitled to summary judgment and, instead, summary judgment should be granted to the Defendant dismissing the adversary proceeding per Fed. R. Civ. P. 56(f)(1).

## CONCLUSION

For all these reasons, the Defendant requests that the Court grant the Defendant's Cross- Motion granting summary judgment in all respects and dismissing the action and that Trustee's motion for summary judgment be denied.

Dated:  May 12, 2021
New York, New York

**DENTONS US LLP**
By:  */s/ Arthur H. Ruegger*
Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Tel:  (212) 768-6700
Fax: (212) 768-6800
arthur.ruegger@dentons.com
carole.neville@dentons.com

*Attorneys for Defendant*