1

C6T8MAD1

1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  UNITED STATES OF AMERICA,
3
4              v.                        S7 10 Cr. 228 (LTS)
4
5  PETER MADOFF,
5
6                  Defendant.
6
7  ------------------------------x
7                                        June 29, 2012
8                                        11:00 a.m.
8
9  Before:
9
10                 HON. LAURA TAYLOR SWAIN
10
11                                       District Judge
11
12                      APPEARANCES
12
13  PREET BHARARA
13       United States Attorney for the
14       Southern District of New York
14  LISA A. BARONI
15  JULIAN J. MOORE
15  MATTHEW SCHWARTZ
16       Assistant United States Attorneys
16
17  LANKLER SIFFERT & WOHL LLP
17       Attorneys for Defendant
18  JOHN R. WING
18  CHARLES SPADA
19  JOANNE M. HARVEY
19
20
21  Also present:
22       AGENT PAUL TAKLA, FBI
22       AGENT PAUL ROBERTS, FBI
23       NICHOLE BROWN-MORIN, Pretrial Service
23       GARY SMITH, Paralegal, U.S. Attorney's Office
24
25
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

C6T8MAD1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

C6T8MAD1

```
 1              (Case called)
 2              MS. BARONI:  Good morning, your Honor.  Lisa Baroni
 3    for the government.  With me are Julian Moore and Matthew
 4    Schwartz from the U.S. Attorney's Office, Special Agents Paul
 5    Takla and Paul Roberts from the FBI, Gary Smith, who is a
 6    paralegal with the U.S. Attorney's Office, and Nichole
 7    Brown-Morin from Pretrial Services.
 8              THE COURT:  Good morning, Ms. Baroni, Mr. Moore,
 9    Mr. Schwartz, Agent Takla, Agent Roberts, Mr. Smith, and
10    Officer Brown-Morin.
11              MR. WING:  Good morning, your Honor.  John Wing for
12    Mr. Madoff, with my colleagues Charles Spada and Joanne Harvey.
13              THE COURT:  Good morning, Mr. Wing, Mr. Madoff,
14    Mr. Spada, Ms. Harvey.
15              Please be seated.
16              I am informed that Mr. Madoff has an application to
17    waive indictment and plead guilty to a two count information
18    bearing the number S7 10 Cr. 228.
19              Is that correct, Mr. Wing?
20              MR. WING:  That's correct, your Honor.
21              THE COURT:  Is this Mr. Madoff's first appearance?
22              MR. WING:  It is.
23              THE COURT:  Mr. Madoff, would you please stand?
24              Please state your full name.
25              THE DEFENDANT:  Peter B. Madoff.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

C6T8MAD1

1      THE COURT:  How old are you, sir?
2      THE DEFENDANT:  66.
3      THE COURT:  I will now explain certain rights that you
4  have under the Constitution of the United States.
5      You have the right to remain silent.  You need not
6  make any statement.  Even if you have already made statements
7  to the authorities, you need not make any additional
8  statements.  Any statements that you do make can be used
9  against you.
10      Do you understand these rights?
11      THE DEFENDANT:  Yes, your Honor.
12      THE COURT:  You have the right to be released, either
13  conditionally or unconditionally, pending trial, unless I find
14  that there are no conditions that would reasonably assure your
15  presence at future court hearings and the safety of the
16  community.  If the government were to ask me to detain you
17  pending trial, you are entitled to a prompt hearing on whether
18  such conditions exist.
19      Do you understand this right?
20      THE DEFENDANT:  Yes, your Honor.
21      THE COURT:  You have the right to be represented by an
22  attorney today and at all future proceedings in this case, and
23  if you are unable to afford an attorney, I will appoint an
24  attorney to represent you.
25      Do you understand these rights?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

5

C6T8MAD1

```
 1              THE DEFENDANT:  Yes, your Honor.
 2              THE COURT:  Do you wish to have and are you able to
 3    obtain and afford counsel on your own?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  Have you retained Mr. Wing and his
 6    colleagues to represent you?
 7              THE DEFENDANT:  That is correct.
 8              THE COURT:  Are you a citizen of the United States?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  Mr. Wing, this plea is pursuant to the
11    agreement that has been executed and marked as Government
12    Exhibit 1, which is a letter dated June 29, 2012, is that
13    correct?
14              MR. WING:  That is correct, your Honor.
15              THE COURT:  The advice of rights form has also been
16    executed and marked as Court Exhibit 1, is that correct?
17              MR. WING:  That is correct.
18              THE COURT:  And you have that there at defense table?
19              MR. WING:  We do.
20              THE COURT:  Ms. Baroni, would you please make a
21    statement regarding victim notification in connection with this
22    proceeding?
23              MS. BARONI:  Yes, your Honor.  On Wednesday, June 27,
24    the government published on our Web site a letter that your
25    Honor endorsed that set forth the charges that we anticipate
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

C6T8MAD1

1    the defendant will plead guilty to today and the penalties.
2            THE COURT:  Thank you.
3            Mr. Madoff, before I accept your waiver of indictment
4    and guilty plea, there are a number of questions that I must
5    ask you while you are under oath to assure that your plea and
6    waiver are valid.  At times I may cover a point more than once,
7    and I may cover matters that were also addressed in the advice
8    of rights form that you have seen.  If I do so, that is because
9    it is very important that you understand what is happening here
10   today.
11           In that connection, if you don't understand something
12   that I ask you, please say so and I will reword the question or
13   you may speak with your attorney.
14           Do you understand that?
15           THE DEFENDANT:  Yes, your Honor.  Thank you.
16           THE COURT:  Ms. Ng, would you please administer the
17   oath?
18           (Defendant sworn)
19           THE COURT:  Would you again state your full name?
20           THE DEFENDANT:  Peter B. Madoff.
21           THE COURT:  Mr. Madoff, do you understand that you
22   have solemnly promised to tell the truth and that if you answer
23   any of my questions falsely, your false or untrue answers may
24   later be used against you in another prosecution for perjury or
25   making a false statement?

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

7

C6T8MAD1

1           THE DEFENDANT:  Yes.
2           THE COURT:  Please be seated for the next portion of
3    the proceeding.
4           THE DEFENDANT:  Thank you.
5           THE COURT:  Mr. Madoff, you are 69 years old?
6           THE DEFENDANT:  66.
7           THE COURT:  I'm so sorry.
8           How far did you go in school?
9           THE DEFENDANT:  I have law degree from -- a JD degree
10   from Fordham Law School.
11          THE COURT:  Are you able to speak, read and understand
12   the English language well?
13          THE DEFENDANT:  Yes, ma'am.
14          THE COURT:  Are you now or have you recently been
15   under the care of a doctor or a psychiatrist?
16          THE DEFENDANT:  Yes.
17          THE COURT:  For what sort of condition?
18          THE DEFENDANT:  Stress, anxiety.
19          THE COURT:  Does the condition or any medication that
20   you're taking in connection with that condition affect your
21   ability to think clearly?
22          THE DEFENDANT:  No.
23          THE COURT:  Have you ever been treated or hospitalized
24   for any mental illness other than what we have talked about,
25   the anxiety condition, or for any type of addiction, including
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

8

C6T8MAD1

1  drug or alcohol addiction?
2          THE DEFENDANT:  No, your Honor.
3          THE COURT:  In the past 24 hours, have you taken any
4  drugs, medicine or pills or have you drunk any alcohol?
5          THE DEFENDANT:  I took a Xanax, which is an anxiety
6  pill.
7          THE COURT:  Is your mind clear today?
8          THE DEFENDANT:  Yes, your Honor.
9          THE COURT:  Are you feeling well physically today?
10         THE DEFENDANT:  Yes, your Honor.
11         THE COURT:  Do you feel comfortable making important
12  decisions for yourself today?
13         THE DEFENDANT:  Yes, ma'am.
14         THE COURT:  Are you represented by counsel here today?
15         THE DEFENDANT:  Yes.
16         THE COURT:  What is your lawyer's name?
17         THE DEFENDANT:  John Wing, Charles Spada, Joanne
18  Harvey.
19         THE COURT:  Does any of the counsel present have any
20  doubt as to Mr. Madoff's competence to waive indictment and
21  plead guilty at this time?
22         MR. WING:  We do not, your Honor.
23         MS. BARONI:  No, your Honor.
24         THE COURT:  Mr. Madoff, your attorney has informed me
25  that you wish to plead guilty to an information after waiving

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

9

C6T8MAD1

1  indictment.  Do you wish to waive indictment and enter a guilty
2  plea?
3         THE DEFENDANT:  Yes, your Honor.
4         THE COURT:  Have you fully discussed your case with
5  your attorneys, including the charges to which you intend to
6  plead guilty and any defenses that you may have to those
7  charges?
8         THE DEFENDANT:  Yes.
9         THE COURT:  Have you and your attorneys also discussed
10  the consequences of entering a guilty plea?
11        THE DEFENDANT:  That's correct.
12        THE COURT:  Are you satisfied with your attorneys and
13  their representation of you?
14        THE DEFENDANT:  Yes.
15        THE COURT:  On the basis of Mr. Madoff's responses to
16  my questions and my observations of his demeanor, I find that
17  Mr. Madoff is fully competent to waive indictment and enter an
18  informed plea.
19        Before I accept your plea, sir, I am going to ask you
20  some more questions.  These questions are intended to satisfy
21  the Court that you wish to plead guilty because you are in fact
22  guilty and that you fully understand your rights and the
23  consequences of your plea.
24        I will now describe to you certain rights that you
25  have under the Constitution and laws of the United States.  You
                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

10

C6T8MAD1

1    will be giving up these rights if you plead guilty.  Please
2    listen carefully.  If you do not understand something that I am
3    saying or describing, stop me, and I or your attorney will
4    explain it more fully.
5          Under the Constitution and laws of the United States,
6    you have the right to a speedy and public trial by a jury on
7    the charges against you that are in the information.
8          Do you understand that?
9          THE DEFENDANT:  Yes.
10          THE COURT:  Do you understand that you have the right
11    to plead not guilty and to continue to plead not guilty?
12          THE DEFENDANT:  Yes, your Honor.
13          THE COURT:  If there were a trial, you would be
14    presumed innocent and the government would be required to prove
15    you guilty by competent evidence and beyond a reasonable doubt.
16    You would not have to prove that you were innocent at a trial.
17          Do you understand that?
18          THE DEFENDANT:  Yes, your Honor.
19          THE COURT:  If there were a trial, a jury composed of
20    12 people selected from this district would have to agree
21    unanimously in order to find you guilty.
22          Do you understand that?
23          THE DEFENDANT:  Yes.
24          THE COURT:  If there were a trial, and at all stages
25    leading up to it, you would have the right to be represented by

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

C6T8MAD1

```
 1   an attorney, and if you could not afford one, an attorney would
 2   be provided to you free of cost?
 3              Do you understand that?
 4              THE DEFENDANT:  Yes, your Honor.
 5              THE COURT:  If there were a trial, you would have the
 6   right to see and hear all of the witnesses against you and your
 7   attorney could cross-examine them.  You would also have the
 8   right to have your attorney object to the government's evidence
 9   and offer evidence on your behalf if you so desired.  Also, you
10   would have the right to have witnesses required to come to
11   court to testify in your defense, and you would have the right
12   to testify yourself, but you would not be required to testify.
13              Do you understand all of that?
14              THE DEFENDANT:  Yes, your Honor.
15              THE COURT:  Do you understand that if there were a
16   trial and you decided not to testify, no adverse inference
17   could be drawn against you based on your decision not to
18   testify?
19              THE DEFENDANT:  Yes.
20              THE COURT:  Do you understand that if you were
21   convicted at a trial, you would have the right to appeal that
22   verdict?
23              THE DEFENDANT:  Yes.
24              THE COURT:  Do you understand each and every one of
25   the rights that I have asked you about?
```

SOUTHERN DISTRICT REPORTERS, P.C.<br>
(212) 805-0300

12

C6T8MAD1

1              THE DEFENDANT:  Yes, your Honor.
2              THE COURT:  Do you have any questions about any of
3      these rights?
4              THE DEFENDANT:  No, your Honor.
5              THE COURT:  Do you understand that by pleading guilty
6      today, you will be giving up each and every one of these
7      rights?
8              THE DEFENDANT:  Yes.
9              THE COURT:  Do you also understand that you will be
10     giving up any possible claim that your constitutional rights
11     may have been violated?
12             THE DEFENDANT:  Yes.
13             THE COURT:  Do you understand that if you plead guilty
14     today, you will have no trial?
15             THE DEFENDANT:  Yes, your Honor.
16             THE COURT:  Do you understand that by pleading guilty,
17     you will also have to give up your right not to incriminate
18     yourself, because I will ask you questions about what you did
19     in order to satisfy myself that you are guilty as charged and
20     you will have to admit and acknowledge your guilt?
21             THE DEFENDANT:  Yes, your Honor.
22             THE COURT:  Do you understand that you can change your
23     mind right now and refuse to enter a plea of guilty?  You do
24     not have to enter this plea if you don't want to for any
25     reason.  Do you understand this fully?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

C6T8MAD1

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you still wish to plead guilty?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  The document that contains the charges

5 against you is called an information.  It has been issued by

6 the United States Attorney.  You have a constitutional right to

7 be charged by an indictment rather than an information.  An

8 indictment would be a charge issued from a grand jury.

9          Do you understand that?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Mr. Wing, would you please show Mr. Madoff

12 the waiver of indictment form?

13         Mr. Madoff, have you signed this form?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Did you read it before you signed it?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Did you discuss it with your attorney

18 before you signed it?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Did you fully understand it before you

21 signed it?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Do you understand that if you did not

24 waive indictment, if the government wanted to prosecute you on

25 the charges that are in the information, it would have to

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

14

C6T8MAD1
1    present those charges to a grand jury, which might or might not
2    indict you on them?
3             THE DEFENDANT:  Yes.
4             THE COURT:  Do you understand that you are under no
5    obligation to waive indictment?
6             THE DEFENDANT:  Yes.
7             THE COURT:  Do you understand that by waiving
8    indictment, you are giving up your right to have these charges
9    presented to a grand jury?
10            THE DEFENDANT:  Yes, your Honor.
11            THE COURT:  Do you understand what a grand jury is?
12            THE DEFENDANT:  Yes, your Honor.
13            THE COURT:  Has anyone given you anything or made any
14    threats or promises to get you to waive indictment?
15            THE DEFENDANT:  No, your Honor.
16            THE COURT:  Have you seen a copy of the seventh
17    superseding information, that is, the charging document with
18    the number S7 10 Cr. 228 at the top?
19            THE DEFENDANT:  Yes.
20            THE COURT:  Have you read it?
21            THE DEFENDANT:  Yes.
22            THE COURT:  Have you discussed it with your attorneys?
23            THE DEFENDANT:  Yes, your Honor.
24            THE COURT:  Do you understand the charges against you
25    that are detailed in the information?
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

15

C6T8MAD1

1          THE DEFENDANT:  Yes.
2          THE COURT:  If you want me to, I can read the
3    information out loud to you here in court.  Do you want me to
4    read it out loud?
5          THE DEFENDANT:  No, your Honor, it's not necessary.
6          THE COURT:  I find that Mr. Madoff's waiver of
7    indictment is knowing and voluntary.  I accept it and I so
8    order it.
9          Mr. Madoff, do you understand that Count One of the
10   information charges you with participating in a conspiracy to:
11   (1) commit securities fraud; (2) falsify books and records of
12   an investment adviser; (3) falsify books and records of a
13   broker/dealer; (4) make false filings with the United States
14   Securities and Exchange Commission; (5) commit mail fraud; (6)
15   Falsify statements in relation to documents required by ERISA,
16   the Employee Retirement Income Security Act; and (7) obstruct
17   or impede the lawful government functions of the Internal
18   Revenue Service in the ascertainment, assessment, computation
19   and collection of taxes, all in violation of Title 18 of the
20   United States Code, Section 371?
21         THE DEFENDANT:  Yes, your Honor.
22         THE COURT:  Do you understand that Count Two charges
23   you with falsifying books and records of an investment adviser,
24   in violation of Title 15 of the United States Code, Sections
25   80b-4 and 80b-17, Title 17 of the Code of Federal Regulations,

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

16

C6T8MAD1

1  Section 275.204-2, and Title 18 of the United States Code,
2  Section 2?
3          THE DEFENDANT:  Yes.
4          THE COURT:  Do you understand that the government
5  would have to prove each and every part or element of each of
6  these charges beyond a reasonable doubt at trial if you did not
7  plead guilty?
8          THE DEFENDANT:  Yes, your Honor.
9          THE COURT:  Ms. Baroni, would you please explain what
10 the government would have to prove if we were to go to trial on
11 the charges in the information?
12         MS. BARONI:  Yes, your Honor.
13         In order to prove Count One, the crime of conspiracy,
14 the government would have had to establish each of the
15 following elements beyond a reasonable doubt:
16         First, that the conspiracy charged in the information
17 existed, in other words, that there was in fact an agreement or
18 understanding to either violate the law of the United States or
19 to defraud the United States;
20         Second, that the defendant knowingly, willingly and
21 voluntarily became a member of the charged conspiracy;
22         Third, that any one of the conspirators knowingly
23 committed at least one overt act in the Southern District of
24 New York in furtherance of the conspiracy during the time of
25 the conspiracy.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

17

C6T8MAD1

1        With respect to Count Two, falsifying books and
2   records of an investment adviser, in order to prove this crime,
3   the government would have had to prove beyond a reasonable
4   doubt the following elements:
5        First, that at the time of the alleged offense, BLMIS,
6   or Bernard L. Madoff Investment Securities, was an investment
7   adviser;
8        Second, that BLMIS failed to make and keep certain
9   accurate records as required under the SEC's rules and
10  regulations;
11       Third, that the defendant aided and abetted BLMIS's
12  failure to make and keep those accurate records;
13       Fourth, that the defendant acted knowingly and
14  willfully; and
15       Fifth, that the offense involved the use of the mails
16  or means and instrumentalities of interstate commerce.
17       THE COURT:  With respect to Count One, the government
18  would have to prove that the object of the conspiracy was
19  consistent with the objects charged in the information?
20       MS. BARONI:  That's right, your Honor.
21       THE COURT:  And with respect to venue, by a
22  preponderance that the crimes were connected with the Southern
23  District of New York?
24       MS. BARONI:  Yes, your Honor.
25       THE COURT:  Thank you.

            SOUTHERN DISTRICT REPORTERS, P.C.
                (212) 805-0300

18

C6T8MAD1

 1              Mr. Madoff, do you understand what the government
 2    would have to prove if you did not plead guilty?
 3              THE DEFENDANT:  Yes, your Honor.
 4              THE COURT:  Do you understand that the maximum
 5    possible penalty for the crime charged in Count One is five
 6    years of imprisonment, plus a fine of the greatest of $250,000,
 7    twice the gain resulting from the offense or twice the loss to
 8    other people resulting from the offense, plus a $100 special
 9    assessment, plus full restitution to all persons injured by
10    your criminal conduct, plus three years of supervised release
11    after your term of imprisonment?
12              THE DEFENDANT:  Yes.
13              THE COURT:  Do you understand that the maximum
14    possible penalty for the crime charged in Count Two is five
15    years of imprisonment, plus a fine of the greatest of $10,000,
16    twice the gain resulting from the offense or twice the loss to
17    other people resulting from the offense, plus a $100 special
18    assessment, plus full restitution to all persons injured as a
19    result of your criminal conduct, plus three years of supervised
20    release after your term of imprisonment?
21              THE DEFENDANT:  Yes, your Honor.
22              THE COURT:  Do you understand that the maximum
23    possible combined penalty for the two crimes to which you
24    propose to plead guilty is ten years of imprisonment, plus a
25    fine of $260,000, or if greater, the sums of the relevant

19

C6T8MAD1

1   gains, losses and statutory amounts relating to your offenses,
2   plus full restitution to all persons injured by your criminal
3   conduct, plus a $200 mandatory special assessment, plus
4   supervised release for three years after your term of
5   imprisonment?
6              THE DEFENDANT:  Yes, your Honor.
7              THE COURT:  I will now give you some information and
8   verify your understanding of the supervised release aspect of
9   the potential penalty.
10             Supervised release means that you will be subject to
11  monitoring when you are released from prison.  Terms and
12  conditions will be imposed.  If you violate any of the set
13  terms and conditions, you can be sent back to prison without a
14  jury trial.  If you are on supervised release and you do not
15  comply with any of the set terms or conditions, you can be sent
16  back to prison for the remainder of the term of supervised
17  release.  You will be given no credit for the time that you
18  served in prison as a result of your sentence and no credit for
19  any time spent on post-release supervision.
20             So, for example, if you received a prison term and
21  then a three year term of supervised release, and after you
22  left prison you lived up to the terms of supervised release for
23  two years, but then you violated some term of the supervised
24  release, you could be sent back to prison for three whole
25  years.  Do you understand that?
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

20

C6T8MAD1
```
1              THE DEFENDANT:  Yes, your Honor.
2              THE COURT:  Do you also understand that if I accept
3    your guilty plea and adjudge you guilty, that adjudication may
4    deprive you of valuable civil rights, such as the right to
5    vote, the right to hold public office, the right to serve on a
6    jury and the right to possess any kind of firearm?
7              THE DEFENDANT:  Yes.
8              THE COURT:  Under current law, there are sentencing
9    guidelines that judges must consider in determining your
10   sentence.
11             Have you spoken to your attorneys about the sentencing
12   guidelines?
13             THE DEFENDANT:  Yes, your Honor.
14             THE COURT:  Do you understand that in determining your
15   sentence, the Court must calculate the applicable sentencing
16   guidelines range and consider that range, possible departures
17   under the sentencing guidelines, and other sentencing factors
18   under Title 18, Section 3553(a)?
19             THE DEFENDANT:  Yes, your Honor.
20             THE COURT:  Do you understand that the Court has
21   discretion, while taking the guidelines into account, to
22   sentence you to any period of imprisonment from time served up
23   to the statutory maximum of ten years?
24             THE DEFENDANT:  Yes, your Honor.
25             THE COURT:  Do you understand that even though your
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

21

C6T8MAD1
```
 1   plea agreement includes a stipulated or agreed sentencing
 2   guidelines calculation, the Court will not be able to determine
 3   your sentence until after a presentence report has been
 4   completed by the probation department and you and the
 5   government have had a chance to challenge any of the facts
 6   reported by the probation office?
 7           THE DEFENDANT:  Yes.
 8           THE COURT:  Do you understand that you may have the
 9   right to appeal your sentence under certain circumstances even
10   if your plea agreement provides that you are waiving your right
11   to appeal?
12           THE DEFENDANT:  Yes.
13           THE COURT:  Do you understand that if your attorney or
14   anyone else has attempted to estimate or predict what your
15   sentence will be, their estimate or prediction could be wrong?
16           THE DEFENDANT:  Yes, your Honor.
17           THE COURT:  No one, not even your attorney or the
18   government, can or should give you any assurance of what your
19   sentence will be, because your sentence cannot be determined
20   until after your probation office report is completed, and I
21   have ruled on the challenges to the report, and I have
22   determined what the appropriate sentence is.
23           Do you understand that?
24           THE DEFENDANT:  Yes.
25           THE COURT:  Do you also fully understand that even if
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

22

C6T8MAD1

1   your sentence is different from what your attorney or anyone
2   else told you it might be, or if it is different from what you
3   expect, you will still be bound to your guilty plea and you
4   will not be allowed to withdraw your guilty plea?
5          THE DEFENDANT:  Yes, your Honor.
6          THE COURT:  Mr. Wing, would you please show Mr. Madoff
7   page 4 of the plea agreement which shows the stipulated
8   sentencing guideline range?
9          Mr. Madoff, this agreement provides that the
10  stipulated guideline range is 10 years of imprisonment, in
11  other words, the combined statutory maximum penalty.
12         Do you understand that the stipulation does not bind
13  the Court or the probation department as to the facts on which
14  it is based, as to how to apply the guidelines to the facts, or
15  as to what will be an appropriate sentence in your case?
16         THE DEFENDANT:  Yes.
17         THE COURT:  Do you understand that I may decide to
18  impose a sentence that is outside the guideline range?
19         THE DEFENDANT:  Yes.
20         THE COURT:  Are you now serving any state or federal
21  sentence or are you being prosecuted for any other crime?
22         THE DEFENDANT:  No, your Honor.
23         THE COURT:  Do you understand that the information
24  also includes a forfeiture allegation that states that you must
25  forfeit to the United States all property, real and personal,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23

C6T8MAD1

1   that constitutes or is derived from proceeds traceable to the
2   commission of the crime charged in Count One, including, but
3   not limited to, approximately $143.1 billion?
4           THE DEFENDANT:  Yes, your Honor.
5           THE COURT:  Would you please look again at the plea
6   agreement, which is marked as Government Exhibit 1?
7           Have you signed this agreement?
8           THE DEFENDANT:  Yes.
9           THE COURT:  Did you read it before you signed it?
10          THE DEFENDANT:  Yes, your Honor.
11          THE COURT:  Did you discuss it with your attorneys
12  before you signed it?
13          THE DEFENDANT:  Yes.
14          THE COURT:  Did you fully understand the agreement
15  before you signed it?
16          THE DEFENDANT:  Yes.
17          THE COURT:  Does the agreement reflect accurately your
18  complete and total understanding of the entire agreement
19  between the government, your attorneys and you?
20          THE DEFENDANT:  Yes, your Honor.
21          THE COURT:  Is everything that you understand about
22  your plea and sentence covered in this agreement?
23          THE DEFENDANT:  Yes, your Honor.
24          THE COURT:  Has anything been left out?
25          THE DEFENDANT:  No, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

24

C6T8MAD1

1       THE COURT:  Has anyone made any promises to you, other
2   than what is detailed in that plea agreement, or threatened you
3   or forced you to plead guilty or enter into that agreement?
4       THE DEFENDANT:  No, your Honor.
5       THE COURT:  Do you understand that on page 3, this
6   agreement includes stipulations that your offenses involved a
7   loss amount of more than $400 billion, that the offenses
8   involved 250 or more victims, that the offenses involved
9   sophisticated means, that the offenses substantially endangered
10  the solvency or financial security of 100 or more victims, that
11  you were a registered broker or dealer, a person associated
12  with a broker or dealer, and/or an investment adviser at the
13  time of the offense?
14      THE DEFENDANT:  Yes, your Honor.
15      THE COURT:  Do you understand that each of these
16  stipulated facts affects sentencing calculations under the
17  sentencing guidelines?
18      THE DEFENDANT:  Yes.
19      THE COURT:  Do you understand that you are under no
20  obligation to make an agreement with the government as to any
21  of those facts?
22      THE DEFENDANT:  Yes, your Honor.
23      THE COURT:  Do you understand that page 2 of the
24  agreement provides that you are admitting the forfeiture
25  allegation in the information and that you agree that you must

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

C6T8MAD1

 1   forfeit to the United States $143.1 billion in United States
 2   currency and certain enumerated property?
 3           THE DEFENDANT:  Yes, your Honor.
 4           THE COURT:  Do you understand that you are under no
 5   obligation to make an agreement with the government as to any
 6   money or other property that you are required to forfeit?
 7           THE DEFENDANT:  Yes.
 8           THE COURT:  Do you understand that the agreement
 9   provides that any forfeiture of your assets will not count
10   against any restitution obligation or other penalty the Court
11   may impose?
12           THE DEFENDANT:  Yes.
13           THE COURT:  Ms. Baroni, is there a consent order of
14   forfeiture or proposed preliminary order today?
15           MS. BARONI:  Yes, there is.  It has been executed,
16   your Honor.
17           THE COURT:  Has it been handed up?
18           MS. BARONI:  We will hand it up right now.
19           THE COURT:  Mr. Madoff, have you reviewed the
20   preliminary order of forfeiture, which is also captioned final
21   as to the defendant, in this case S7 10 Cr. 228?
22           THE DEFENDANT:  Yes, your Honor.
23           THE COURT:  Have you signed the preliminary -- just
24   one minute.  Is there a stipulation in this?
25           Have you signed the preliminary order?

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

26

C6T8MAD1

```
 1                THE DEFENDANT:  Yes.
 2                THE COURT:  Did you read it before you signed it?
 3                THE DEFENDANT:  Yes, your Honor.
 4                THE COURT:  Did you discuss it with your attorneys
 5      before you signed it?
 6                THE DEFENDANT:  Yes.
 7                THE COURT:  Did you fully understand it before you
 8      signed it?
 9                THE DEFENDANT:  Yes.
10                THE COURT:  Mr. Wing, has your office also signed this
11      preliminary order?
12                MR. WING:  Yes, your Honor.
13                THE COURT:  And may I take that as a firm indication
14      that the defense has no objection to the form or substance of
15      the order?
16                MR. WING:  Correct.
17                THE COURT:  Has the government also signed the
18      preliminary order?
19                MS. BARONI:  Yes, we have, your Honor.
20                THE COURT:  Is it the desire of the parties that I
21      execute this order in connection with today's proceeding?
22                MS. BARONI:  That's right, your Honor.
23                THE COURT:  I have also been given a stipulation and
24      order.  Has that been signed by the government?
25                MS. BARONI:  Yes, your Honor.  That's also fully
```

27

C6T8MAD1
1   executed.
2           THE COURT:  It is the government's representation that
3   all of the signatures on the order that I have been given are
4   genuine and reflect full execution of the stipulation?
5           MS. BARONI:  Yes, your Honor.
6           THE COURT:  Is it the desire that I execute this order
7   in connection with this proceeding as well?.
8           MS. BARONI:  That's right, your Honor.
9           THE COURT:  Thank you.
10          Mr. Madoff, do you understand that the preliminary
11  forfeiture order will be final as to you as soon as I sign it
12  and enter it?
13          THE DEFENDANT:  Yes.
14          THE COURT:  Do you understand that your agreement --
15  this is going back to the plea agreement, Government Exhibit
16  1 -- on page 2 provides that the conduct that I charged in the
17  information can be used as a predicate act or a basis for
18  sentencing enhancement in any future prosecution, including,
19  but not limited to, a prosecution under the federal RICO
20  statute?
21          THE DEFENDANT:  Yes.
22          THE COURT:  Do you understand that on page 2 your
23  agreement includes an understanding that you will file accurate
24  amended personal tax returns for the calendar years 1998
25  through 2008 prior to sentencing and that you will not contest
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

28

C6T8MAD1

1   the applicability of civil fraud penalties?
2              THE DEFENDANT:  Yes, your Honor.
3              THE COURT:  Do you understand that you are not
4   obligated to agree to these matters?
5              THE DEFENDANT:  Yes.
6              THE COURT:  Do you understand that on page 5 your
7   agreement provides that you are giving up or waiving your right
8   to appeal, to litigate your sentence under Sections 2255 and/or
9   2241 of Title 28 of the United States Code, and to seek a
10  sentence reduction under Section 3582(c) of Title 18 of the
11  United States Code if I sentence you to 10 or fewer years of
12  imprisonment?
13             THE DEFENDANT:  Yes, your Honor.
14             THE COURT:  Do you understand that you are under no
15  obligation to waive your rights to appeal or otherwise litigate
16  any sentence?
17             THE DEFENDANT:  Yes.
18             THE COURT:  Do you understand that on page 6 your
19  agreement provides that you will not appeal any supervised
20  release term of three or fewer years?
21             THE DEFENDANT:  Yes.
22             THE COURT:  Do you understand that you are under no
23  obligation to waive your right to appeal any supervised release
24  term that is imposed?
25             THE DEFENDANT:  Yes, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

29

C6T8MAD1

1        THE COURT:  Do you understand that the agreement
2  provides on page 4 that neither you nor the government will
3  seek a sentence other than 20 years of imprisonment?
4        THE DEFENDANT:  Yes, your Honor.
5        THE COURT:  Do you understand that you are under no
6  obligation to enter into such an agreement limiting your right
7  to make arguments for a lower sentence?
8        THE DEFENDANT:  Yes.
9        THE COURT:  Do you still wish to plead guilty pursuant
10  to this plea agreement?
11        THE DEFENDANT:  Yes, your Honor.
12        THE COURT:  Mr. Wing, do you know of any valid reason
13  why Mr. Madoff would prevail at trial?
14        MR. WING:  I am sorry, your Honor?
15        THE COURT:  Do you know of any valid reason why Mr.
16  Madoff would prevail at trial?
17        MR. WING:  No.
18        THE COURT:  Do you know of any reason why he should
19  not be permitted to plead guilty?
20        MR. WING:  No, I do not.
21        THE COURT:  Mr. Madoff, would you please stand now and
22  tell me what you did that makes you guilty of the crimes
23  charged in the information?
24        THE DEFENDANT:  Your Honor, I am here today to plead
25  guilty to conspiracy and falsifying records of an investment

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

30

C6T8MAD1

1  adviser and to accept responsibility for what I have done.  I
2  will describe in detail my conduct, for which I am deeply
3  ashamed and terribly sorry.  I know that my conduct was wrong.
4  But first I would like to make your Honor aware of some
5  important background facts that do not excuse my conduct, but
6  that may help your Honor understand why I am here today.
7          As the Court is aware, my brother is Bernard Madoff,
8  who in December 2008 confessed and later pled guilty to
9  operating a Ponzi scheme at Bernard L. Madoff Investment
10 Securities, otherwise known as BLMIS.  And while the conduct I
11 am pleading guilty to relates to my own employment at BLMIS,
12 it is important for your Honor to know that at no time before
13 December 2008 was I ever aware that my brother Bernard Madoff,
14 or anyone else at BLMIS, was engaged in a Ponzi scheme.  I
15 truly believed that my brother was a brilliant securities
16 trader who successfully traded for his customers' accounts.  In
17 fact, I encouraged my own family to invest millions of dollars
18 in accounts managed by my brother.  My wife lost millions of
19 dollars in an account managed by my brother, and my daughter
20 and granddaughter, sister and other relatives similarly had, at
21 my urging, invested money with my brother.
22         More than my family's financial investment, however, I
23 dedicated almost 40 years to building a legitimate securities
24 market-making business that I was proud of and that was well
25 regarded in the industry.  In December 2008, when my brother

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

31

C6T8MAD1

1  told me about his fraud, I was in shock and my world was
2  destroyed.  I lost everything I had worked for to build in my
3  legitimate business at BLMIS.  I lost my reputation and any
4  future ability to support my family financially.  My family was
5  torn apart as a result of my brother's atrocious conduct, and I
6  became reviled by strangers as well as former friends who
7  assumed that I had known about the Ponzi scheme.
8          My brother is seven years older than I am, and I
9  always looked up to and admired him.  My first job was working
10  for my brother in his lawn sprinkler business.  In 1970, when I
11  graduated from law school, my brother wanted me to go work for
12  him in his securities business, and I did.  Over the next 38
13  years, I worked long hours for my brother to build a
14  market-making business that challenged the larger exchanges and
15  was the envy of Wall Street firms.  As director of the
16  market-making business, I took great pride in that business and
17  loved my job.  While I knew that my brother managed brokerage
18  accounts for customers separate and apart from the
19  market-making business, I was not involved in my brother's
20  trading or investment activity for customer funds.
21          My respect and admiration for my brother only grew
22  over the decades, as he became one of the most successful and
23  best regarded traders on Wall Street.  He held important
24  positions within the industry, including chairman of the
25  NASDAQ.  Among the most prominent members of the securities

32

C6T8MAD1

1    industry -- including high-ranking officials at the SEC -- my
2    brother was widely viewed as one of the most honorable as well
3    as the most successful traders of our time, and no one believed
4    it more than I did.  I revered him and trusted him implicitly.
5            (Continued on next page)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

C6tQmadP2                    Plea

1        THE DEFENDANT:  (Continued) For the almost 40 years
2    that I worked for my brother, Bernie was the sole owner of the
3    business.  There was no doubt that Bernie was the boss.  He
4    never gave me any financial interest in the firm.  His reported
5    capital in 2008 was $700 million.  He made clear to me that I
6    would never be a partner in his business, and I rarely
7    challenged him.  However, he appreciated that I worked hard to
8    successfully build a market-making business, and he rewarded me
9    with substantial compensation and gifts.  This was especially
10   true from 2000 to 2008 after my battle with cancer and as my
11   son struggled with, and ultimately succumbed to, cancer in
12   April 2006.
13        On several occasions my brother and I engaged in money
14   transfers in ways specifically designed to avoid payment of
15   taxes.  I knew that this conduct was wrong.  In addition, at my
16   request, my wife was placed on the BLMIS payroll and for many
17   years received compensation for a no-show job.  At no time,
18   however, did I suspect that my brother had stolen from anyone
19   or that my family or I was receiving money that belonged to
20   customers.  At all times I believed that BLMIS was successful,
21   and that my compensation was well-earned, and also that my
22   brother had accumulated vast wealth that he used to provide me
23   and my family with various gifts of money.
24        With respect to the conspiracy charge, I am pleading
25   guilty because I conspired with others to commit several
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

34

C6tQmadP2                    Plea
1    violations of the law:
2              Attempts to interfere with the administration of
3    internal revenue laws; falsifying the books and records of an
4    investment adviser; false filings with the SEC; and mail fraud
5    and securities fraud.
6              As to the interference with the administration of
7    internal revenue laws, I conspired with others to prevent the
8    IRS from collecting proper tax revenue -- to my and my family's
9    benefit -- in three different ways.
10             First, I received various fringe benefits from BLMIS
11   including meals, travel, leased cars, country clubs, apartment
12   rentals, payment of household employees and life insurance
13   premiums, which I failed to report on my income tax returns.
14   In addition, because I wrongly had my wife under BLMIS payroll,
15   I caused her to receive untaxed 401(k) contributions to which
16   we were not entitled.
17             Second, in 2005, my brother gave me a substantial sum
18   of money in the form of a completed securities transaction
19   when I asked him for money to enable me to buy a one-floor
20   apartment for my son.  My son was then battling cancer and was
21   in a wheelchair which made it difficult for him to live in his
22   duplex apartment.  At the same time, I also asked for an equal
23   amount of money to give to my daughter.  My brother offered to
24   give me several million dollars by giving me profits from a
25   completed transaction in stock, which I believed had been

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

C6tQmadP2                    Plea

1   purchased and sold in an account of his, and I agreed.  In
2   2005, in order to avoid the payment of gift tax on a transfer
3   from my brother to me, we treated the stock transaction as
4   though it had occurred in my account rather than my brother's.
5   In 2002, in order to avoid the payment of a gift tax on a
6   transfer from my brother to me, we treated a similar stock
7   transaction as though it had occurred in my account rather than
8   my brother's.  I now know that those transactions never
9   occurred at all, but at the time I truly believed they were
10  legitimate transactions, albeit not my own transactions.
11          Third, in 2005, 2007 and 2008, I received gifts from
12  my brother which I used to provide my children with substantial
13  sums of money.  Although I had no expectation of repayment, I
14  required my children to execute promissory notes for the
15  amounts I provided in order to avoid gift tax.  On these and
16  other occasions my brother provided me with gifts of
17  substantial sums of money which I had no intention of repaying,
18  and some of these transfers were documented as loans in order
19  to avoid gift tax.
20          As to the objects of the securities fraud and false
21  filings and falsification of books and records of an investment
22  adviser, in 2006 through 2008 I knowingly signed and/or
23  approved false compliance documentation that I knew was
24  maintained as part of the books and records of BLMIS as a
25  registered investment adviser.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

36

C6tQmadP2                    Plea

1        In July 2006, my brother informed me that BLMIS was
2    going to register with the SEC as an investment adviser because
3    of my brother's management of customer accounts.  In September
4    of 2006, when BLMIS first registered as an investment adviser,
5    I was designated as the chief compliance officer of the
6    customer business.  I did not, however, have any substantive
7    experience or knowledge of the rules governing investment
8    advisers.
9        Upon assuming the role of chief compliance officer, I
10   failed to implement any meaningful supervision over my
11   brother's management of the customer business and failed to
12   test or confirm his representations that he was trading and
13   managing investment advisory accounts in compliance with the
14   customers' directions.
15       Nevertheless, I approved and/or signed as chief
16   compliance officer documents falsely certifying that I had
17   performed an annual review of the firm's investment advisory
18   compliance program and was qualified to perform the review on
19   my experience and knowledge of the Investment Adviser's Act of
20   1940; that I had examined the process by which all trading was
21   supervised and found that the implementation of the compliance
22   procedures reflected good principles of management and control;
23   that I had qualitatively tested the compliance procedures and
24   supervisory reviews relating to my brother's customer accounts;
25   and that it was demonstrated to me that the reviews were

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C6tQmadP2                    Plea

```
 1   reasonably designed to detect violations of the Investment
 2   Adviser's Act -- and Investment Adviser Rules and federal
 3   securities laws applicable to the adviser's business.
 4            I knew at the time that these statements were false
 5   because I made no effort to perform a meaningful compliance
 6   review or to test the adequacy or the effectiveness of the
 7   procedures as related to my brother's management of customer
 8   accounts.
 9            In addition, in 2006 and 2007, I allowed my brother to
10   file with the SEC an investment adviser registration form on
11   behalf of BLMIS that I knew contained certain false and
12   misleading statements.  For example, at Bernie's direction, the
13   form falsely stated that BLMIS had only 23 investment advisory
14   accounts.  Although I did not know the true number of the
15   accounts, I did know at the time that there were more than 23
16   accounts.  I failed to include in the investment adviser
17   registration form the material fact that my brother was only
18   registering for a limited number of accounts and that we were
19   not reporting the true number of accounts or money under
20   management or other relevant facts relating to the size and
21   activities of Bernie's customer business.  I knew that these
22   misstatements on the form allowed my brother to conceal the
23   true extent of my brother's customer business, as well as the
24   fact that some of his accounts were referred by another
25   brokerage firm in return for compensation.  I also knew that
```

38

C6tQmadP2                    Plea

1    the form was required to be filed with the SEC and that it
2    would be available to customers.
3            I also conspired with others to falsify employment and
4    payroll records of BLMIS including false reports that were
5    filed with the Department of Labor to allow my wife to receive
6    compensation and benefits as a no-show employee.
7            Finally, as to the securities fraud and mail fraud
8    objects of the conspiracy, when I first learned of the Ponzi
9    scheme in December of 2008, I agreed to assist my brother who
10   was planning to pay out remaining customer funds to a limited
11   number of customers -- specifically, family, friends and
12   employees -- thereby depriving the remaining investors of the
13   opportunity to share in those funds.
14           On the night of December 9, 2008, my brother told me
15   that his investment advisory business was a Ponzi scheme, and
16   that only a small fraction of the customer funds remained.
17   Bernie told me that he had made an appointment with his lawyer,
18   Ike Sorkin, and was planning to turn himself in to authorities.
19   I was in total shock, unable to absorb the full import of the
20   words I was hearing.  Bernie told me that he was planning to
21   redeem the customer accounts by mailing redemption checks to
22   friends, family and employees, and he asked me to review a
23   marked-up customer list to identify any additional people who
24   should share in the limited remaining funds.
25           I was shocked and devastated, but nevertheless I did

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

39

C6tQmadP2                    Plea

1   as my brother said, as I consistently had done for decades.
2   Although the redemption checks from BLMIS as to customers were
3   never mailed, I knew that the conduct was wrong, and I am
4   deeply ashamed.
5            In addition, the next day, I had taken out $200,000
6   from the firm to make end-of-year charitable contributions, as
7   I had planned to do before I was aware of the fraud.  The
8   following morning my brother was arrested and confessed, and
9   shortly thereafter my assets were restrained, and I never made
10  the planned charitable contributions.
11           With respect to the count of falsifying books and
12  records of an investment adviser, as a registered investment
13  adviser, BLMIS was required under the SEC rules to make and
14  keep accurate books and records.  As previously explained, I
15  approved and/or signed documents that included false statements
16  relating to compliance procedures.  For example, along with my
17  brother, I signed the BLMIS 2007 Annual Review pursuant to SEC
18  Rule 206(4)-7.
19           This document stated that:  I had performed an annual
20  review of the firm's investment advisory compliance program and
21  was qualified to perform the review based on my experience and
22  knowledge of the Investment Adviser's Act of 1940; that I had
23  examined the process by which all trading was supervised and
24  found that the implementation of compliance procedures
25  reflected good principles of management and control; that I

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

40

C6tQmadP2                    Plea

1    qualitatively tested the compliance procedures and supervisory
2    reviews relating to my brother's customer accounts; and that it
3    was demonstrated to me that the reviews were reasonably
4    designed to defect violations of the Investment Adviser Rules
5    and federal securities laws applicable to the Adviser's
6    business.
7            When I signed the document, I knew that it was false
8    because I had taken no action to test the effectiveness of the
9    compliance procedures as related to my brother's management of
10   customer accounts nor performed any substantial compliance of
11   supervisory function over my brother.
12           In addition to this and similar compliance documents,
13   I approved my brother's preparation and filing of a false BLMIS
14   investment adviser registration form.  The form falsely
15   concealed what I knew to be a much larger number of facts and
16   accounts, and that some of those accounts were being referred
17   to my brother by another brokerage firm in return for
18   compensation.  I knew that the form was required to be filed
19   with the SEC and that it would be available to customers.
20           I am deeply ashamed of my actions.  I want to
21   apologize to anyone who was harmed and to my family.  And I am
22   here today to take responsibility for my conduct.
23           Thank you, your Honor.
24           THE COURT:  Thank you.  I have a couple of questions
25   for you.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

41

C6tQmadP2                    Plea

1              I see that you were referring to some notes as you
2     gave me this account of your conduct.  Do the notes and the
3     information that you gave me accurately reflect the truth of
4     your actions and knowledge as you've related it to me?
5              THE DEFENDANT:  Yes, your Honor.
6              THE COURT:  With respect to the mail fraud object of
7     the conspiracy, was it your plan with your brother to put the
8     checks to the favored people into the United States mails?
9              THE DEFENDANT:  Yes.
10             THE COURT:  And where were the offices located in
11    which you did the work that you have described and had the
12    transactions with your brother and others?
13             THE DEFENDANT:  At 885 Third Avenue, our regular
14    offices in New York City.
15             THE COURT:  Here in Manhattan --
16             THE DEFENDANT:  Yes.
17             THE COURT:  -- in the Southern District of New York?
18             THE DEFENDANT:  Yes, ma'am.
19             THE COURT:  When you did the things that you've
20    described, did you know that what you were doing was wrong and
21    illegal?
22             THE DEFENDANT:  Yes, your Honor.
23             THE COURT:  Ms. Baroni, does the government wish any
24    further factual matters to be addressed in the plea allocution?
25             MS. BARONI:  No, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

42

C6tQmadP2                    Plea

1              THE COURT:  Would you please summarize the
2    government's evidence against Mr. Madoff?
3              MS. BARONI:  Yes, your Honor.  If this case had
4    proceeded to trial, the government would have proven through
5    witness testimony, documents and other evidence beyond a
6    reasonable doubt the facts that are set forth in the
7    superseding information; specifically, that Peter made was the
8    chief compliance officer and senior managing director at BLMIS;
9    that he committed many acts that deceived the firm's investment
10   advisory clients and regulators; that in his role as chief
11   compliance officer, Peter Madoff made many false statements
12   about the investment advisory business and about the compliance
13   program that he ran.
14             For example, the evidence would show that Peter Madoff
15   created documents that were filed with the SEC that stated that
16   the investment advisory business had 23 client accounts, a
17   statement that he knew was false.  In reality, it had more than
18   4,000 client accounts.  The evidence would show that in those
19   filings, he vastly underreported the amounts of assets under
20   management.  He also falsely stated that BLMIS's investment
21   advisory services were available only to institutional and
22   certain high-net-worth clients when in fact the evidence would
23   show that he knew that many investors of BLMIS did not fall
24   into these categories.
25             The evidence would further show that the false
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

43

C6tQmadP2                    Plea

1   statements were designed to create the false appearance that
2   the investment advisory business had a very small number of
3   sophisticated clients and fewer assets under management in
4   order to avoid scrutiny from the SEC.
5           In addition, the evidence would show that Peter Madoff
6   also made many false statements about the compliance program
7   and specifically the compliance reviews that he conducted of
8   the trading activity in the investment advisory business.
9           For example, Peter Madoff, the evidence would show,
10  wrote many compliance reports setting out in great detail the
11  regular reviews of the investment advisory trades that he
12  purportedly had performed, when in fact he never performed any
13  of them.
14          The evidence would show that he even signed many weeks
15  of compliance reports in one sitting intentionally changing
16  pens and ink colors in order to disguise the fact that he had
17  created them at one time and that they were false.
18          The evidence would show that had Peter Madoff actually
19  done the compliance work that he claimed he did, he would have
20  found that there were no real trades in the investment advisory
21  business.  These false documents also were designed to mislead
22  regulators such as the SEC, auditors and the clients of the
23  firm.
24          With respect to the tax fraud, the evidence would show
25  that Mr. Madoff engaged in an enormous tax fraud conspiracy in

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

44

C6tQmadP2                     Plea

1   which tens of millions of dollars were transferred within the
2   Madoff family so that Peter Madoff and others could avoid
3   paying millions of dollars of taxes.  Just from 1998 through
4   2008, the evidence would show that Peter Madoff received at
5   least $40 million from Bernie L. Madoff and BLMIS out of
6   accounts holding investor funds, and that Madoff conspired with
7   others not to pay taxes on this money.
8           For example, the evidence would show that Mr. Madoff
9   and others disguised these transfers of funds to each other
10  either as loans or as backdated stock trades in order to avoid
11  the taxes.
12          The evidence would also show that Mr. Madoff charged
13  personal vacations and luxury items on the BLMIS credit card
14  and avoided taxes on that income, and also arranged for his
15  wife to have a no-show job at BLMIS where she collected salary
16  and benefits to which she wasn't entitled.
17          Finally, your Honor, the evidence would show that in
18  December 2008, in the days before the collapse of BLMIS, Peter
19  Madoff conspired with others to choose which clients should get
20  the share of the remaining $300 million that was at the firm.
21  Peter Madoff and others reviewed lists of IA clients and picked
22  who should get the remaining funds, putting his friends and his
23  family ahead of all the other clients of the firm.
24          THE COURT:  Thank you.
25          Mr. Madoff, would you please stand again.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

C6tQmadP2                    Plea

1              Mr. Madoff, how do you now plead to the charge in
2    Count One of the information the conspiracy charge?  Not guilty
3    or guilty?
4              THE DEFENDANT:  Guilty, your Honor.
5              THE COURT:  How do you now plead to the charge in
6    Count Two of the information, the investment advisory fraud
7    charge?
8              THE DEFENDANT:  Guilty, your Honor.
9              THE COURT:  Are you pleading guilty to each of these
10   charges because you are in fact guilty?
11             THE DEFENDANT:  Yes, your Honor.
12             THE COURT:  Are you pleading guilty voluntarily and of
13   your own free will?
14             THE DEFENDANT:  Yes, your Honor.
15             THE COURT:  Mr. Wing, would you please show Mr. Madoff
16   Court Exhibit 1, the advice of rights form?
17             Mr. Madoff, have you signed this form?
18             THE DEFENDANT:  Yes, your Honor.
19             THE COURT:  Did you read it before you signed it?
20             THE DEFENDANT:  Yes.
21             THE COURT:  Did you discuss it with your attorney
22   before you signed it?
23             THE DEFENDANT:  Yes.
24             THE COURT:  And did you fully understand it before you
25   signed it?

C6tQmadP2                       Plea

```
 1              THE DEFENDANT:  Yes, your Honor.
 2              THE COURT:  Mr. Wing, has the form also been signed by
 3      someone from your team?
 4              MR. WING:  Yes, it has.
 5              THE COURT:  Mr. Madoff, do you admit or do you deny
 6      the allegation in the information that you are required to
 7      forfeiture $143.1 billion, including, but not limited to,
 8      enumerated property as a result of the crime charged in Count
 9      One?
10              THE DEFENDANT:  Yes, your Honor.
11              THE COURT:  You admit that?
12              THE DEFENDANT:  Yes, ma'am.
13              THE COURT:  Are you making that admission voluntarily
14      and of your own free will?
15              THE DEFENDANT:  Yes, your Honor.
16              THE COURT:  Mr. Wing, are there any other questions
17      that you believe that I should ask Mr. Madoff in connection
18      with this plea?
19              MR. WING:  None that I know of, Judge.
20              THE COURT:  Ms. Baroni, are there any other questions
21      that the government believes I should ask Mr. Madoff in
22      connection with this plea?
23              MS. BARONI:  No, your Honor.
24              THE COURT:  Mr. Madoff and Mr. Wing, would you be
25      seated for a moment?
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

47

C6tQmadP2                    Plea
1              THE DEFENDANT:  Thank you.
2              THE COURT:  Are there any victims present who wish to
3     be heard?
4              Mr. Madoff, would you stand again, please?
5              Mr. Madoff, you have acknowledged that you are guilty
6     as charged in the information.  I find that you know your
7     rights and that you are waiving them voluntarily.  Because your
8     plea is entered knowingly and voluntarily and is supported by
9     an independent basis in fact containing each of the essential
10    elements of each offense, I accept your guilty plea, and I
11    adjudge you guilty of the offenses charged in Counts One and
12    Two of the Seventh Superseding Information in case number
13    10 CR 228.
14             Thank you.  You can be seated again.
15             THE DEFENDANT:  Thank you.
16             THE COURT:  Mr. Wing, do you wish to be present for
17    any interview of Mr. Madoff in connection with the preparation
18    of the presentence report?
19             MR. WING:  Yes, your Honor.
20             THE COURT:  I will make that direction.
21             MR. WING:  Thank you.
22             THE COURT:  Ms. Ng, may we have a sentencing date?
23             THE DEPUTY CLERK:  Do you want it six months out or --
24             THE COURT:  The usual four.
25             THE DEPUTY CLERK:  Thursday, October 4, 2012 at 3:30.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

48

C6tQmadP2                    Plea

1       THE COURT:  Counsel, are all the necessary people
2  available on October 4 at 3:30?
3       MS. BARONI:  Yes, your Honor.
4       MR. WING:  I believe so, Judge.
5       THE COURT:  Thank you.
6       Counsel, please make your submissions in advance of
7  sentencing in accordance with my sentencing submission
8  procedures which are posted on the Court's web site and also
9  available from my chambers in hard copy if necessary.
10      Ms. Baroni, will the government be sure to provide
11 probation with the factual summary within two weeks?
12      MS. BARONI:  Yes, Judge.
13      THE COURT:  Mr. Wing, if you have not been contacted
14 by probation within two weeks to arrange an interview, would
15 you please reach out to make sure that that happens on a timely
16 basis?
17      MR. WING:  I will do so.
18      THE COURT:  Thank you.
19      Mr. Madoff, the probation office will be preparing a
20 presentence report to assist me in sentencing you.  You will be
21 interviewed by the probation office.  It is important that the
22 information that you give to the officer be truthful and
23 accurate.  The report is important in my decision as to what
24 your sentence will be.  You and your attorneys have a right,
25 and will have an opportunity, to examine the report, to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

49

C6tQmadP2                    Plea

1  challenge or comment on it and to speak on your behalf before
2  sentencing.  Failing to be truthful with the probation office
3  and the Court may have an adverse effect on your sentence and
4  may subject you to prosecution.  Do you understand that?
5            THE DEFENDANT:  Yes, your Honor.
6            THE COURT:  Thank you.
7            Now, I have had an opportunity to review the pretrial
8  services report.  Is there an application with respect to
9  release or detention pending sentencing?
10           MS. BARONI:  Yes, your Honor.  The parties have a
11 proposed bail package for your Honor's consideration.  It would
12 be a $5 million personal recognizance bond to be secured by
13 $1 million of cash or property, it would require six
14 financially responsible people to be cosigners; and that none
15 of the cash or property that secures the bond could come from
16 proceeds of the fraud or any forfeitable funds.  The package
17 would require strict pretrial supervision.  The defendant's
18 travel would be restricted to the Southern and Eastern
19 Districts of New York.  Mr. Madoff and his wife would surrender
20 their passports.  And we would ask that at least four cosigners
21 sign the bond before the defendant could be released.
22           THE COURT:  Is there an agreed deadline for the
23 remainder?
24           MS. BARONI:  We would ask that all the conditions be
25 satisfied within one week.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

50

C6tQmadP2                     Plea
```
 1          THE COURT:  So that would be by the 6th of July?
 2          MS. BARONI:  And I would add, your Honor, that the
 3  government has interviewed six proposed cosigners that the
 4  defense has put forward, and we found them all to be
 5  financially qualified.
 6          THE COURT:  Are these parameters acceptable to the
 7  defense?
 8          MR. WING:  Yes, your Honor.
 9          THE COURT:  Ms. Baroni, is it the government's
10  representation that having reviewed the assets that may be
11  available to Mr. Madoff, that these conditions are sufficient
12  to protect against the risk of flight and danger to the public?
13          MS. BARONI:  Yes, your Honor.  And I would add that
14  under the forfeiture order handed up to your Honor today, the
15  defendant has agreed to forfeiture of all of his assets
16  including all real property and personal property.  So that
17  goes to the remaining assets for potential flight.
18          THE COURT:  Yes.  Thank you.
19          Mr. Madoff, have you heard the proposed conditions as
20  detailed?
21          THE DEFENDANT:  Yes, your Honor.
22          THE COURT:  Do you understand them?
23          THE DEFENDANT:  Yes.
24          THE COURT:  Do you understand that if I approve them,
25  the consequence of violating any of the conditions and the
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

51
C6tQmadP2                    Plea
1   supervision conditions that are related to them may have severe
2   consequences, including penalties different from and over and
3   above any penalties that may be imposed on you in connection to
4   the crimes to which you've pled guilty?
5              THE DEFENDANT:  Yes, your Honor.
6              THE COURT:  I will approve release on the proposed
7   conditions.  I'm going to prepare a bail disposition sheet now.
8              (Pause)
9              THE COURT:  Are there any victims present who wish to
10  be heard in connection with the bail application?
11             I will note for the record that no one has identified
12  him or herself as wishing to be heard, so I will now prepare
13  the bail disposition form.
14             (Pause)
15             THE COURT:  This is what I've written:  $5 million PRB
16  with six FRPs, financially responsible persons, and secured by
17  $1 million in cash or property subject to Nebbia compliance,
18  strict PTS, that's pretrial services supervision, travel
19  restricted to SDNY/EDNY, surrender passports of defendant and
20  spouse and no new applications.  At least four FRPs to cosign
21  prior to release.  All conditions to be met by July 6, 2012.
22             MR. WING:  Judge, do we surrender the passports to the
23  pretrial services officer?
24             THE COURT:  Yes.
25             MR. WING:  Thank you.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

52

C6tQmadP2                        Plea

1     THE COURT:  I am informed that pretrial services
2  recommends that there be a condition also requiring continued
3  detention to the mental health issues and providing for the
4  provision of services even if they cannot be paid for.  Is
5  there an objection to such a condition?
6     MR. WING:  No objection, your Honor.
7     MS. BARONI:  Not from the government, your Honor.
8     THE COURT:  All right.  Let me add the language.
9     (Pause)
10     THE COURT:  I have added a paragraph as follows:
11  Defendant must participate in a mental health treatment program
12  approved by the United States Pretrial Services office and must
13  continue to take all prescribed medication unless otherwise
14  directed by the medical services provider -- sorry -- it should
15  be the mental health service provider.  Just one moment.  The
16  Court authorizes the release of all available mental health
17  records to the provider.  Defendant must contribute to the cost
18  of the services rendered to the extent not covered by insurance
19  or third-party payment in the form of a copayment as determined
20  by the pretrial services officer.
21     Is that language satisfactory to the pretrial services
22  department?
23     MS. BROWN-MORIN:  Yes, your Honor.
24     THE COURT:  Is that acceptable to the parties?
25     MR. WING:  Yes, your Honor.
               SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

53

C6tQmadP2                        Plea
1              MS. BARONI:  Yes, Judge.
2              THE COURT:  Very well then.
3              (Pause)
4              THE COURT:  I tried to make it all fit on one sheet
5     and it's awfully difficult.  You need five copies?
6              THE DEPUTY CLERK:  Yes.
7              THE COURT:  I will also sign the other orders now.
8              Ms. Ng, when those print out, would you just show it
9     to counsel for the government, defense and pretrial services
10    officer while I'm signing these others to make sure everything
11    is worded all right.
12             (Pause)
13             THE COURT:  I have signed all of the orders and the
14    bail disposition sheet.
15             Mr. Madoff, do you understand that if you fail to
16    return to my courtroom for sentencing on the date and time set,
17    you will be guilty of a criminal act for which you could be
18    sentenced to imprisonment separate, apart from, and in addition
19    to any other sentence that you might receive for the crimes to
20    which you have just pled guilty?
21             THE DEFENDANT:  Yes, your Honor.
22             THE COURT:  Then I will fully expect to see you on the
23    date of sentencing.
24             Counsel, is there anything further that we need to
25    address together this morning?
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

54

C6tQmadP2                    Plea
1            MS. BARONI:  Not from the government.
2       Thank you, your Honor.
3            MR. WING:  Nothing, your Honor.
4            THE COURT:  Thank you.  We are adjourned.
5       I look forward to seeing you all in October.
6            (Adjourned)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300