**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-04921 (CGM) |
| STANLEY T. MILLER, | |
| Defendant. | |

## REPLY TO DEFENDANT'S OBJECTIONS, RESPONSES AND COUNTERSTATEMENT OF MATERIAL FACTS PURSUANT TO FED. R. CIV. P. 56, FED. R. BANKR. P. 7056 AND LOCAL RULE 7056-1 TO TRUSTEE'S STATEMENT OF MATERIAL FACTS

Plaintiff Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated chapter 7 estate

of Bernard L. Madoff, respectfully submits, pursuant to Local Rule 56.1, this reply to the

Objections, Responses, and Counterstatement of Material Facts submitted by defendant Stanley T. Miller (the "Defendant"), in Opposition to the Trustee's Motion for Summary Judgment, ECF No. 107.

1. **TRUSTEE'S REPLY TO DEFENDANT'S RESPONSES TO RULE 56.1 STATEMENT**

For the Court's convenience, the Trustee has set forth together below his Rule 56.1 Statement, Defendant's Response, and the Trustee's Reply.

**I.    Background and the Trustee**

**TRUSTEE'S STATEMENT #1:**

1.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") commenced an action in the United States District Court for the Southern District of New York. Compl., *SEC v. Madoff*, No. 08-cv-10791 (LLS) (S.D.N.Y. Dec. 11, 2008), ECF No. 1.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

While Madoff was arrested on December 11, 2008, the Trustee is incorrect about the action's timing and the nature of the fraud. Further, the case cited involves unrelated issues of the nature and conditions of Madoff s detention pending trial.

On December 11, 2008, Bernard L. Madoff was arrested on a criminal complaint alleging one count of securities fraud. *U.S. v Madoff,* l:08-mj-02735 UA (S.D.N.Y. Dec. 11, 2008) [ECF No. 1], On the same date, an action was commenced against the BLMIS and against Madoff by the Securities and Exchange Commission ("SEC") in the United States District Court

2

for the Southern District of New York alleging violations of Section 17(a) of the Securities Act

of 1933, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b- 5, and Sections

206(1) and 206(2) of the Investment Advisers Act of 1940. *SEC v. Madoff,* Case l:08-cv-10791-

LLS (S.D.N.Y. Dec. 11, 2008) [ECF No. 1 ].

On March 10, 2009, a criminal Information was filed in the District Court charging

Madoff with eleven felonies including securities fraud, investment adviser fraud, mail fraud,

wire fraud, three counts of money laundering, false statements, perjury, false filings with the

SEC, and theft from an employee benefit plan. *United States v. Bernard L. Madoff,* 09 Cr. 213

(DC) (S.D.N.Y Mar. 10, 2009) [ECF No. 38].

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 1, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 1 is deemed admitted under

Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman v. Calyon Sec.*

*(USA) Inc.*, 817 F. Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011)  (noting that "56.1 statements not

explicitly denied by plaintiff are deemed admitted").

**TRUSTEE'S STATEMENT #2:**

2.      On December 11, 2008, the United States Government initiated a criminal action

against Madoff for criminal violations of federal securities laws, including, *inter alia*, securities

fraud, investment advisor fraud, and mail and wire fraud.  Compl., *United States v. Madoff*, No.

08-mj-02735 (S.D.N.Y. 2008), ECF No. 1.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

See Defendant's response and objection to Trustee's Statement No. 1.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 2, and it is therefore not controverted. Consequently, Trustee Statement ¶ 2 is deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011) (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

**TRUSTEE'S STATEMENT #3:**

3.      On December 15, 2008, under 15 U.S.C. § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC"). Application of SIPC at 10, *SEC v. Madoff*, No. 08-cv-10791 (LLS) (S.D.N.Y. Dec. 15, 2008), ECF No. 5. Thereafter, under 15 U.S.C. § 78eee(a)(4)(B), SIPC filed an application in the district court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by the Securities Investor Protection Act ("SIPA"). *Id.* at 2–3.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Trustee's recitation deliberately obscures the critical fact that SIPC filed an application for protection solely for the entity Bernard L. Madoff Investment Securities LLC. See Application of SIPC at 10, *SEC v. Madoff*, No. 08-cv-10791 (LLS) (S.D.N.Y. Dec. 15, 2008), ECF No. 5. In accordance with SIPA only the limited liability company is a debtor for which this Trustee is authorized to exercise avoidance powers. The "debtor" in SIPA liquidation

4

proceedings is "a member of SIPC with respect to whom an application for a protective decree has been filed under section 78eee(a)(3) of this title." SIPA § 78111(5).

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 3 because the protective decree speaks for itself.  Consequently, Trustee Statement ¶ 3 is deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011)  (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee does not dispute the additional statements in Defendant's Response that SIPC filed an application for protection on behalf of the LLC, and further avers that SIPA requires a protective decree when a SIPC-member broker-dealer fails.  SIPA § 78eee(b)(1).  The *only* SIPC *member* at the time of failure was the LLC, as the sole proprietorship had ceased to operate almost eight years prior, and thus the LLC was the only entity that *could have been* named in the protective decree.  There is no SIPA requirement that a protective decree identify every name or form of organization under which the broker-dealer member of SIPC formerly operated to provide the broker-dealer's customers with the protections of SIPA.  The protective decree names the SEC registrant/SIPC member, which is sufficient to encompass all customer property—in whatever form—ever possessed by that member.

**TRUSTEE'S STATEMENT #4:**

4.    Also, on December 15, 2008, the district court granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

> i.   appointed the Trustee for the liquidation of the business of BLMIS pursuant to
>      15 U.S.C. § 78eee(b)(3);

     ii.   appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to 15
U.S.C. § 78eee(b)(3); and

     iii.   removed the case to the bankruptcy court pursuant to 15 U.S.C. § 78eee(b)(4).

Order, *SEC v. Madoff*, No. 08-cv-10791 (LLS) (S.D.N.Y. Dec. 15, 2008), ECF No. 4 ("SIPC

Liquidation Order").

**DEFENDANT'S RESPONSE:**

     **DISPUTED.**

     Although the statement appears accurate on its face, it is subject to clarification. The

Trustee was appointed solely for the liquidation of the limited liability company, which the

Trustee has defined as "BLMIS", not for the liquidation of Madoff or his sole proprietorship,

SIPC Liquidation Order, ECF No. 4. See *In re Bernard L. Madoff Inv. Securities, LLC*, 557 B.R.

89 (Bankr. S.D.N.Y. 2016) (the "Avellino Decision"):

> "The "debtor" in a SIPA liquidation proceedings is "a member of SIPC
> with respect to whom an application for a protective decree has been filed
> under section 78eee(a)(3) of this title." SIPA § 78111(5). SIPC filed an
> application for a protective decree against "Bernard L. Madoff Investment
> Securities LLC," and the District Court's order identifies the Defendant as
> "Bernard L. Madoff Investment Securities LLC." The predecessor
> business, which was not a defendant or even mentioned in the District
> Court's Order, was conducted in the name of Bernard L. Madoff.
> (Uniform Application for Broker-Dealer Registration (Form BD), dated
> Jan. 12, 2001, at 9.) The SIPA debtor was BLMIS, the limited liability
> company, and not Madoff's sole proprietorship, an entity that had no legal
> existence separate from Madoff. *See United States v. Fox,* 721 F.2d 32, 36
> (2d Cir.1983); *Mattel, Inc. v. Adventure Apparel,* No. 00 CIV. 4085, 2001
> WL 1035140, at *5 n. 2 (S.D.N.Y. Sept. 7, 2001.

**TRUSTEE'S REPLY:**

     Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 4, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 4 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 8 are not relevant is

not a sufficient response or denial, and therefore the factual statement is deemed admitted. *See*

*Zhao-Royo v. New York State Educ. Dep't*, 14 Civ. 0935 (GTS) (CFH), 2017 WL 149981, at *2,

n.2 (N.D.N.Y. Jan. 13, 2017) ("The materiality of an assertion of fact on a motion for summary

judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has

merely objected to the materiality of a fact, and the Court has concluded that the fact is material,

the fact will be deemed admitted."); *see also Newmark v. Lawrence Hosp. Ctr.*, No. 07 Civ.

2861(CS), 2008 WL 5054731, at *8 n.7 (S.D.N.Y. Oct. 20, 2008) (finding two material facts

admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson v.

Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will

identify which facts are material.").

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted))*.

**TRUSTEE'S STATEMENT #5:**

5.      By orders dated December 23, 2008 and February 4, 2009, respectively, the

bankruptcy court approved the Trustee's bond and found that the Trustee was a disinterested

person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789

(SMB) (Bankr. S.D.N.Y. Dec. 23, 2008), ECF No. 11; Order, *Sec. Inv'r Prot. Corp. v. Bernard*

*L. Madoff Inv. Sec. LLC*, Adv. Pro. No 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 4, 2009), ECF

No. 69.

**DEFENDANT'S RESPONSE:**

      **DISPUTED.**

      By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy

Court approved the Trustee's bond and found that the Trustee was a disinterested person to serve

and act on behalf of the estate of the limited liability company only. See Order, Dec. 23, 2008,

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), ECF

No. 11; Order, Feb. 4, 2009, ECF No. 69. The statement fails to acknowledge that the "estate" is

solely the limited liability company--Bernard L. Madoff Investment Securities LLC.

**TRUSTEE'S REPLY:**

      Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 4, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 4 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

**TRUSTEE'S STATEMENT #6:**

      6.     On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff,

and on June 9, 2009, the bankruptcy court substantively consolidated the chapter 7 estate of

Madoff into the SIPA Proceeding.  Involuntary Petition, *In re Bernard L. Madoff*, Adv. Pro. No.

09-11893 (SMB) (Bankr. S.D.N.Y. Apr. 13, 2009), ECF No. 1; Consent Order, *Sec. Inv'r Prot.

Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.

June 9, 2009), ECF No. 252.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Statement falls short of a full and accurate description of the Court's action. The substantive consolidation order imposed limitations on the Trustee's avoidance powers relevant to the resolution of the Trustee's motion. On June 10, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the SIPA liquidation. Consent Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. No. 0801789 (Bankr. S.D.N.Y. June 10, 2009), ECF No. 252. The order substantively consolidating the Chapter 7 estate of Madoff into the SIPA liquidation was subject to the following important limitation:

> Notwithstanding the substantive consolidation of the Madoff estate into the BLMIS SIPA Proceeding, the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate and shall continue to have all powers, rights, claims and interests of a Chapter 7 trustee to bring claims under Chapters 5 and 7 of the Bankruptcy Code in consultation with the SIPA Trustee and SIPC. Further, all powers, rights, claims and interests of the Madoff estate are expressly preserved, including without limitation all Chapter 5 and Chapter 7 powers, rights, claims and/or interests. ECF No. 252. at ¶4.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 4, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 4 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

**II.    BLMIS Operated a Ponzi Scheme Through Its Investment Advisory Business**

**A.    BLMIS's Business**

**TRUSTEE'S STATEMENT #7:**

7.      In January 1960, Bernard L. Madoff registered as a broker-dealer with the SEC.
He was assigned registrant number 8-8132.  Through that registration, the broker-dealer became
a member of SIPC when SIPA was enacted in 1970.  SIPC Liquidation Order; Declaration of
Nicholas J. Cremona, dated April 14, 2021 ("Cremona Decl."), Ex. 1 (1959 SEC Form BD for
Bernard L. Madoff dated Dec. 31, 1959 (PUBLIC0003607)).

**DEFENDANT'S RESPONSE:**

    **NO DISPUTE.**

**TRUSTEE'S REPLY:**

Trustee Statement ¶ 7 should be deemed admitted under Local Rule 7056-1(d).

**TRUSTEE'S STATEMENT #8:**

8.      Beginning in 1960 and until January 1, 2001, BLMIS operated as a sole
proprietorship.  Declaration of Bruce G. Dubinsky, dated April 8, 2021 ("Dubinsky Decl."),
Attach. A (Expert Report of Bruce G. Dubinsky, dated January 16, 2019 ("Dubinsky Report")) ¶
36.  During its existence, it operated under the names Bernard L. Madoff and Bernard L. Madoff
Investment Securities and, after 2001, as Bernard L. Madoff Investment Securities LLC.  *Id.* ¶
38.

**DEFENDANT'S RESPONSE:**

    **DISPUTED.**

BLMIS, defined above as "Bernard L. Madoff Investment Securities LLC", and as used
broadly by Dubinsky, did not exist until January 1, 2001.

Furthermore, Dubinsky's recitation regarding the corporate history of the Madoff
business is inadmissible for several reasons. First, it is inappropriate for him as an expert to
become a vehicle for factual narrative. *See Travelers Indem. Co. v. Northrop Grumman Corp*.,

2014 U.S. Dist. LEXIS 14981at *12; 2014 WL 464769 (S.D.N.Y. Jan. 28, 2014)("It is also inappropriate for experts to become a vehicle for a factual narrative that simply accumulates and puts together pieces of a factual story. (internal citations omitted) Acting simply as a narrator of the facts does not convey opinions that are based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology. In short, mere narration fails to fulfill Daubert's most basic requirements…In addition, narration of facts of the case may easily invade the province of the jury, providing a separate basis for exclusion"); *.Island Intellectual Prop. LLC v. Deutsche Bank AG,* No. 09 Civ. 2675 at *8, 2012 U.S. Dist. LEXIS 217422012 WL 526722, at *2 (S.D.N.Y. Feb. 14, 2012); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008*); In re Rezulin Prods. Liab. Litig*., 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) ('Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology.")

Second, Dubinsky admittedly has no training or expertise in corporate formation. He describes his relevant education and training and expertise as follows:

> I earned a Bachelor of Science degree in Accounting from the University of Maryland, College Park, MD and a Master's in Taxation ("MST") from Georgetown University, Washington, D.C. I am a Certified Public Accountant ("CPA"), Certified Fraud Examiner ("CFE"), Certified Valuation Analyst ("CVA"), Certified in Financial Forensics ("CFF"), Certified Anti-Money Laundering Specialist ("CAMS"), and a Master Analyst in Financial Forensics ("MAFF"), all in good standing. I was formerly a Registered Investment Advisor Representative.

> I have been qualified and have testified as an expert witness in various federal and state courts in the areas of forensic accounting and fraud investigations, bankruptcy, solvency, commercial damages, business valuations, investment theory, federal and state income taxation, abusive tax shelters, accounting ethics and standards, accounting malpractice, investment advisory issues, and a variety of other financial and tax matters. Additionally, I have professional experience in the area of computer forensics and related computer investigations and have undergone fraud and forensics training as a CFE, CFF, and MAFF.

*See* Dubinsky Decl. ¶¶5, 6.

In sum, Dubinsky is not an expert in corporate structures, SEC requirements or banking procedures and requirements.

Dubinsky's opinions and the lengthy list of tasks he undertook to reach his opinions have nothing to do with the ownership of the investment advisory business assets. Although experts may rely on hearsay or other inadmissible evidence if experts in their field reasonably rely on such evidence in forming their opinions under Fed. R. Evid. 703, it is inappropriate for an expert to serve as a conduit for inadmissible evidence. See *Lightbox Ventures, LLC v. 3RD Home Ltd.*, 16 cv 2379 (DLC), 2017 U.S. Dist. LEXIS 187202, *24, 2017 WL 5312187 (S.D.N.Y. Nov, 13, 2017) ("Experts may rely upon otherwise inadmissible facts or data in reaching conclusions "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703.") citing *United States v. Mejia,* 545 F.3d 179, 197 (2d Cir. 2008).

Finally, Dubinsky relies on documents that are either inadmissible filings with the SEC or are not authenticated.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 8, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 8 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted))*.  Defendant's response that Dubinsky acts "simply

as a narrator of the facts" is not only a mischaracterization of the record before the Court, but

also demonstrates ignorance of the requirements of Fed. R. Civ. P. 26 and the foundation for

expert opinions.   Dubinsky, a forensic accountant and certified fraud examiner, among other

certifications, was tasked with the investigation of the 40-year fraud at BLMIS.  Dubinsky set

forth the findings of his investigation and the opinions therefrom as required by Fed. R. Civ. P.

26, which, in relevant part, requires a complete statement of all opinions and the basis and reason

for them, and the facts or data considered by the witness in forming the opinions.  *See* Fed. R.

Civ. P. 26.  Dubinsky's explanation of the facts, reasons, and basis for his opinions complies

with Rule 26.

Defendant's response incorrectly states that Dubinsky is not a proper expert despite his

prior qualification  by this Court as "an expert in the areas of forensic accounting, fraud

examinations, computer forensics, solvency and business valuations, and investment theory and

practices." *Picard v. Nelson*, 610 B.R. 197, 210 (Bankr. S.D.N.Y. 2019).  Defendant's response

also incorrectly states that Dubinsky relied upon inadmissible evidence, namely the BLMIS

books and records, and filings with the SEC, which have been admitted into evidence and relied

upon multiple times in this SIPA liquidation.  *See, e.g.*, Memorandum Decision Granting

Summary Judgment In Favor Of Trustee, Determining Funds Held In The Bank Accounts Are

Customer Property, And Awarding Prejudgment Interest at 7, *Picard v. Estate Of Seymour

Epstein,* Adv. Pro. No. 10-04438 (CGM) (Bankr. S.D.N.Y. Jan. 27, 2021), ECF No. 155 (the

"*Epstein Decision*"); *Picard v. BAM L.P.*, 624 B.R. 55, 59–61 (Bankr. S.D.N.Y. 2020); *Nelson,*

610 B.R. at 223–26; *In re Bernard L. Madoff*, 592 B.R. 513, 527–29 (Bankr. S.D.N.Y. 2018),

*aff'd, In re BLMIS LLC*, 605 B.R. 570, 584–87 (S.D.N.Y. 2019), *aff'd,* No. 19-2988-bk, 2020

WL 5902581 (2d Cir. Oct. 6, 2020).

**TRUSTEE'S STATEMENT #9:**

9.      Effective as of January 1, 2001, BLMIS was registered as a New York single

member limited liability company.  On January 12, 2001, BLMIS amended its SEC Form BD to

reflect its change in corporate form from a sole proprietorship to a single member limited

liability company and all the assets and liabilities of the sole proprietorship were transferred to

the limited liability company.  Cremona Decl., Ex. 3 (2001 SEC Amended Form BD).

**DEFENDANT'S RESPONSE:**

        **DISPUTED.**

        The Form BD is a registration statement solely for Madoff's proprietary trading and

market making business. Form BD specifically stated that BLMIS would not be engaged in the

investment advisory business. In response to the direction in the Amended Form BD question 12

to "Check the types of businesses engaged in (or to be engaged in, if not yet active) by

applicant," Madoff checked: (C) "Broker or dealer making inter-dealer markets in corporate

securities over the counter"; (V) "Trading securities for own account"; and (Z) Other. Cremona

Decl., Ex. 3 (2001 SEC Amended Form BD, pp. 8-9. Madoff did not check the box (S)

Investment advisory services. *Id*. p. 9. In addition, the Form BD itself could not and did not

affect a change in the assets and liabilities of the two businesses that were transferred to the

limited liability company.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 9 because the document speaks for itself. Consequently, Trustee Statement ¶ 9 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant's response also does not identify a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contentions regarding the 2001 SEC Form BD.

The Trustee does not dispute the additional statements in Defendant's Response that Madoff did not check the box "(S) Investment advisory services," and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee. *See, e.g.*, *Picard v. JABA Assocs. LP*, No. 20 CV. 3836 (JGK), 2021 WL 1112342, at *9 (S.D.N.Y. Mar. 24, 2021) (citing *BAM L.P.*, 624 B.R. at 61)a ("This Court finds that all of the assets and liabilities of the sole proprietorship, including the IA Business, were transferred to BLMIS via the 2001 SEC Amended Form BD.")); *Picard v. Lisa Beth Nissenbaum Trust*, No. 20 CV. 3140 (JGK), 2021 WL 1141638, at *9 (S.D.N.Y. Mar. 24, 2021); *SIPC v. BLMIS*, 522 B.R. 41, 60 (Bankr.S.D.N.Y.2014), *aff'd*, 15 Civ. 1151 (PAE), 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016), *aff'd*, 697 F. App'x 708 (2d Cir. 2017) ("*Inter–Account Transfer Decision*") (finding all of Madoff Securities' assets and liabilities were transferred to BLMIS upon the reorganization to a single member limited liability company).

**TRUSTEE'S STATEMENT #10:**

10.    In response to the direction in the SEC Amended Form BD to "[b]riefly describe details of the *succession* including any assets or liabilities not assumed by the *successor*

[BLMIS],'' (emphasis in original), Madoff replied:

> EFFECTIVE JANUARY 1, 2001, PREDECESSOR WILL TRANSFER TO SUCCESSOR ALL OF PREDECESSOR'S ASSETS AND LIABILITIES, RELATED TO PREDECESSOR'S BUSINESS. THE TRANSFER WILL NOT RESULT IN ANY CHANGE IN OWNERSHIP OR CONTROL.

Cremona Decl., Ex. 3 (2001 SEC Amended Form BD) at Question 5 (emphasis in original). No assets or liabilities of the sole proprietorship were listed as "not assumed by the successor." *Id.*

**DEFENDANT'S RESPONSE:**

> **DISPUTED.**

The Trustee's primary evidence that the Investment Advisory Business became part of the limited liability company in 2001 is the Form BD, and the testimony of the Trustee's expert witness, Mr. Dubinsky. The Form BD itself may be admissible as a statement of what was said at the time. However, the statements regarding the transfer of the sole proprietorship assets are not admissible to establish that Madoff actually transferred the investment advisory business to the limited liability company, for several reasons.

First, the statements are not admissible against the Defendant. The SEC forms are inadmissible hearsay against the Defendant, but admissible against the Trustee who is in effect the successor to BLMIS. *See Buchwald v. Williams Energy Mktg. & Trading Co. (In re Magnesium Corp. of Am.),* 460 B.R. 360, n. 67 (Bankr. S.D.N.Y. 2011). While SEC filings may be introduced by an opponent as admissions of the party that filed them, *see* Fed. R. Evid. 801(d)(2), they are hearsay when offered by the party that prepared them; *Savage & Assocs. v. Mandl (In re Teligent Inc.*), 380 B.R. 324 n. 2 (Bankr. S.D.N.Y. 2002) ("The Teligent SEC filings represent admissions by Teligent. The plaintiff is the successor to Teligent, (internal citation omitted), and the contents are non-hearsay as to her. The contents are not, however, admissible against Mandl. The contents of IDT's SEC filings are not admissible because they

are hearsay, and the plaintiff has failed to show that they are admissible under an exception to the hearsay rule.")

Second, as stated above, the Form BD is a registration statement solely for Madoff's proprietary trading and market making business. Accordingly, the statement logically means that the assets and liabilities that were transferred at that date are solely the assets and liabilities of those businesses.

Third, both Bernard and his brother, Peter Madoff, identified on the Form BD as responsible parties for the filing entity, pleaded guilty to filing fraudulent SEC filings. *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009) (the "Madoff Allocution"), ECF No. 57 (attached as Exhibit to Ruegger Decl.). The statements in the Form BD are unreliable.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 10 because the document speaks for itself.  Consequently, Trustee Statement ¶ 10 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted))*.  Defendant's response also does not identify a

percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contentions regarding the 2001 SEC Form BD.

The Trustee does not dispute the additional statements in Defendant's Response regarding Bernard Madoff and Peter Madoff's guilty pleas to filing fraudulent SEC filings, and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee. *See, e.g.*, *JABA Assocs. LP*, 2021 WL 1112342, at *9 (citing *BAM L.P.*, 624 B.R. at 61) ("This Court finds that all of the assets and liabilities of the sole proprietorship, including the IA Business, were transferred to BLMIS via the 2001 SEC Amended Form BD.")); *Lisa Beth Nissenbaum Trust*, 2021 WL 1141638, at *9; *Inter–Account Transfer Decision*, 522 B.R. at 60 (finding all of Madoff Securities' assets and liabilities were transferred to BLMIS upon the reorganization to a single member limited liability company).

**TRUSTEE'S STATEMENT #11:**

11.    Madoff further certified that no "accounts, funds, or securities of customers of the *applicant* are held or maintained by such other *person*, firm, or organization." *Id.* at Question 8(c) (emphasis in original).

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Madoff did not certify that accounts were held by the limited liability company. To the extent that this statement contains the Trustee's characterization of the effect of Amended Form BD, which speaks for itself, the Court is respectfully referred to the cited document for a true and accurate interpretation of its contents.

Furthermore, the Trustee's evidence directly contradicts his characterization that that the all of the assets of the sole proprietorship were transferred in January 2001. Exhibit 3 of the

Collura Report is a list of the bank and brokerage accounts, the names in which the accounts were originally held, the dates of the change in the name, if any, and the names of the new holder. Declaration of Lisa M. Collura, dated April 8, 2021 ("Collura Decl."), Attach. A (Expert Report of Lisa M. Collura, CPA, CFE, CFF, dated January 16, 2019 ("Collura Report"), Exhibit 3. Exhibit 3 confirms that the ownership names on the Investment Advisory Business accounts-- all JP Morgan Chase accounts--were not ever changed to BLMIS. The ownership names on the accounts were changed in 2002 from Bernard L. Madoff to Bernard L. Madoff Investment Securities, but not to name "Bernard L. Madoff Investment Securities LLC."

Exhibit 3 of the Collura Report also identifies other accounts that were originally in the name of "Bernard L. Madoff" that were changed to "Bernard L. Madoff Investment Securities LLC" as well as accounts that were either opened in or changed to the name "Bernard L Madoff Investment Securities", without the LLC, after 2001. These are accounts used by the proprietary trading business. In sum, the statement on the Form BD is only accurate with respect to the two businesses transferred. Further, the bank and brokerage accounts associated with the proprietary trading businesses were changed to or opened in the "Bernard L Madoff Investment Securities LLC" after 2001. Those that were associated with the investment advisory business remained in the name of "Bernard L. Madoff" or were changed to the other name used by the sole proprietorship, "Bernard L. Madoff Investment Securities." *See* Collura Report, Exhibit 3.

On January 1, 2001, Madoff sent notification letters of the formation of the limited liability company to all of the business and governmental entities with which the proprietary trading businesses dealt. *See*, *e.g.*, the following notification letters all dated January 1, 2001: Letter from BLMIS to the National Securities Clearing Corporation, *See* Ruegger Decl., ¶30, Exhibit Z; Letter from BLMIS to the Depository Trust Company, Letter from the LLC to the

Options Clearing Corporation; Letter from BLMIS to the Bank of New York, the bank for the proprietary trading business. *See* Ruegger Decl., ¶30, Exhibit Z.

In contrast, ownership of the bank accounts used in the investment advisory businesses and the customer account documents was not changed. The Trustee did not produce or introduce any document notifying the customers, business partners or banks associated with the investment advisory business of a change in corporate form or name. *See also* Defendant's response and Opposition to Trustee's Statement No. 8.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 11 because the document speaks for itself. Consequently, Trustee Statement ¶ 11 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted))*. Defendant's response also does not identify a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contentions regarding the 2001 SEC Form BD.

The Trustee does not dispute the additional statements in Defendant's Response regarding notification letters of the formation of the LLC sent to business and governmental

entities, and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee. *See, e.g.*, *JABA Assocs. LP*, 2021 WL 1112342, at *9 (citing *BAM L.P.*, 624 B.R. at 61) ("This Court finds that all of the assets and liabilities of the sole proprietorship, including the IA Business, were transferred to BLMIS via the 2001 SEC Amended Form BD.")); *Lisa Beth Nissenbaum Trust*, 2021 WL 1141638, at *9; *Inter–Account Transfer Decision*, 522 B.R. at 60 (all of Madoff Securities' assets and liabilities were transferred to BLMIS upon the reorganization to a single member limited liability company).

**TRUSTEE'S STATEMENT #12:**

12.    In 2006, BLMIS registered as an investment advisor with the SEC claiming to have only 23 accounts and $11.7 billion in assets under management.  Dubinsky Decl., Attach. A (Dubinsky Report) ¶ 39.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

*See* Defendant's response and objection to Trustee's Statement 8 above regarding the Dubinsky narrative.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 12, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 12 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee refers to his reply to Defendant's Response to Trustee's Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #13:**

13.     BLMIS operated three business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id.* ¶ 36.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant agrees that, prior to January 2001, the sole proprietorship operated the three businesses set forth above. However, after January 2001, the limited liability company (BLMIS), run by Madoff's sons, operated the proprietary trading and market making businesses. Madoff continued to operate the IA business as a sole proprietorship under both his own name and under his trade name, Bernard L Madoff Investment Securities.

*See also* Defendant's response and objection to Trustee's Statement No. 8 above regarding the inadmissibility of Mr. Dubinsky's narrative testimony.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 13, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 13 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee also refers to his reply to Defendant's response and objection to Trustee's Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #14:**

22

14.    The proprietary trading business traded for its own account to make money for

BLMIS.  *Id.* ¶¶ 36, 46.

**DEFENDANT'S RESPONSE:**

The term "BLMIS" as defined by the Trustee and as used in the Dubinsky Report is

deliberately misleading. Defendant does not dispute that the propriety trading business traded

for its own account to make money for the entity which held it, but that entity was Madoff prior

to January 2001 and the limited liability company (BLMIS) after January 2001.

*See* Defendant's response and objection to Trustee Statement 8 above regarding the

inadmissibility of the Dubinsky narrative recitation of corporate structure and organization.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 14, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 14 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee also refers to his reply to Defendant's response and objection to Trustee's

Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #15:**

15.    The market-making business made markets in certain stocks, bonds, warrants and

rights. *Id.*

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant does not dispute the market making business made markets in certain

stocks, bonds, warrants and rights. But see Defendant's response and objection to Trustee's

Statement 8 above regarding the inadmissibility of the Dubinsky narrative recitation of corporate

structure and organization. This statement is not "followed by citation to evidence which would

be admissible." Local Civ. R. 56.1; *see also* Fed. R. Civ. P. 56(c).

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 15, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 15 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation

to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument

to their counterstatements." (citations omitted))*.

The Trustee also refers to his reply to Defendant's response and objection to Trustee's

Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #16:**

16.    The proprietary trading and market-making businesses were referred to within

BLMIS as "House 5."*Id.* ¶ 36.

**DEFENDANT'S RESPONSE:**

The Defendant does not dispute the characterization of the two BLMIS businesses. But

see Defendant's response and objection to Trustee Statement 8 above regarding the

inadmissibility of the Dubinsky narrative recitation of corporate structure and organization. This statement is not "followed by citation to evidence which would be admissible." Local Civ. R. 56.1; *see also* Fed. R. Civ. P. 56(c).

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 16, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 16 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee also refers to his reply to Defendant's response and objection to Trustee's Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #17:**

17.     The IA Business was designed to purportedly trade stocks to buy equities and to buy options on behalf of its customer accounts.  *Id.* ¶¶ 41–44.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant does not deny the characterization of the investment advisory business. But see Defendant's response and objection to Trustee Statement 8 above regarding the inadmissibility of the Dubinsky narrative recitation of corporate structure and organization. This statement is not "followed by citation to evidence which would be admissible." Local Civ. R. 56.1; *see also* Fed. R. Civ. P. 56(c).

**TRUSTEE'S REPLY:**

25

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 17, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 17 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee also refers to his reply to Defendant's response and objection to Trustee's Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #18:**

18.    The proprietary trading business, the market-making business, and the IA Business were units of BLMIS operated by Madoff.  *Id.* ¶¶ 36, 48.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

This statement of an ultimate fact is deliberately misleading. The investment advisory business was conducted by Madoff as a sole proprietor. *See* Defendant's response and objection to Trustee's Statement No. 8 above regarding the inadmissibility of the Dubinsky narrative recitation of corporate structure and organization. This statement is not "followed by citation to evidence which would be admissible." Local Civ. R. 56.1; *see also* Fed. R. Civ. P. 56(c).

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 18, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 18 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee also refers to his reply to Defendant's response and objection to Trustee's Statement 8 above regarding Mr. Dubinsky.

### B.   BLMIS Was Not Trading Securities

**TRUSTEE'S STATEMENT #19:**

19.   Bruce Dubinsky, a forensic accountant with more than 30 years of experience in financial fraud investigations, was retained by the Trustee as an expert witness in this matter. Mr. Dubinsky conducted numerous analyses from which he concluded that BLMIS did not conduct any trading on behalf of its IA Business customers. *Id.* at Section VI.A.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The statement about Dubinsky's experience as a forensic accountant may well be accurate. However, the term "BLMIS" as defined by the Trustee is misleading because investment advisory business was operated by Madoff's sole proprietorship, not BLMIS. Moreover, the evidence contradicts the statement. Madoff may not have traded corporate securities reported on customer statements, however, Madoff regularly purchased securities for investment advisory business customers. *See* Ruegger Decl., ¶32, Exhibit BB.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 19, and it is therefore not controverted. Consequently, Trustee Statement ¶ 19 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant has not identified a percipient witness or expert witness in accordance with Fed. R.

Civ. P. 26 who can testify to support Defendant's contention that Madoff regularly purchased

securities for investment advisory business customers.

The Trustee also refers to his reply to Defendant's response and objection to Trustee's

Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #20:**

20.     At various times, BLMIS reported to its IA Business customers that the money

they deposited with BLMIS was invested in investment strategies called the "convertible

arbitrage" strategy or the "split-strike conversion" strategy.   BLMIS did not execute either

strategy on behalf of its IA Business customers.  *Id.* ¶¶ 19–26; *see also* ¶¶ 41–44.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The term "BLMIS" as defined by the Trustee and the Dubinsky Report is deliberately

misleading. The arbitrage strategy or the split-strike conversion strategy was conducted by

Madoff as a sole proprietor first during the 1980s and thereafter until the December 8, 2008. The

customers of the investment advisory business were not the customers of the limited liability

company. Furthermore, customers of the investment advisory business deposited money into

accounts held in the name of the sole proprietorship.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 20, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 20 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant has not identified a percipient witness or expert witness in accordance with Fed. R.

Civ. P. 26 who can testify to support Defendant's contentions regarding the split-strike

conversion strategy as conducted by Madoff as a sole proprietor or whether customers of the

investment advisory business were customers of the limited liability company.

**TRUSTEE'S STATEMENT #21:**

21.     Mr. Dubinsky analyzed BLMIS's execution of the convertible arbitrage strategy

and determined that trading never occurred dating back to at least the 1970s.  *Id.* at Section VI.A.

(1)(a).

**DEFENDANT'S RESPONSE:**

> **DISPUTED.**

The term "BLMIS" as defined by the Trustee and used the Dubinsky Report is

deliberately misleading. It is undisputed by all parties that BLMIS did not exist until January

2001. Thereafter, the evidence is that the investment advisory business was operated by Madoff

as sole proprietorship, not BLMIS. Moreover, Defendant objects to this statement as neither

material nor necessary for the determination of this case.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 21, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 21 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 21 are not relevant is

not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See*

*Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for

summary judgment is a legal conclusion to be made by the Court. . . . [a]s a result, where a non-

movant has merely objected to the materiality of a fact, and the Court has concluded that the fact

is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7

(finding two material facts admitted where the non-movant merely objected to the materiality of

the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify

which facts are material.").  Defendant also has not identified a percipient witness or expert

witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention

that the investment advisory business was operated by Madoff as a sole proprietorship after

January 2001.

**TRUSTEE'S STATEMENT #22:**

22.     By 1992, the IA Business changed its primary purported investment strategy to

the split-strike conversion strategy.  *Id.* at Section VI.A.(1)(b), specifically ¶ 155.

**DEFENDANT'S RESPONSE:**

    **DISPUTED.**

    *See* Defendant's response and objection to Trustee's Statement No. 8 regarding the

inadmissibility of the Dubinsky narrative recitation of corporate structure and organization. This

statement is not "followed by citation to evidence which would be admissible." Local Civ. R.

56.1; *see also* Fed. R. Civ. P. 56(c).

    Defendant objects to this statement as neither material nor necessary for the

determination of this case.

30

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 22, and it is therefore not controverted. Consequently, Trustee Statement ¶ 22 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 22 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted. *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

The Trustee also refers to his reply to Defendant's response and objection to Trustee's Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #23:**

23.     The split-strike conversion strategy, as purportedly executed by BLMIS, involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills ("T-Bills") when the money was "out of the market." The strategy was purportedly set up by BLMIS so that the purchase of put options and the sale of call

options would create a collar around the stock to reduce the volatility of BLMIS's portfolio. *Id.* ¶¶ 156–58. BLMIS did not conduct this strategy on behalf of its customers. *Id.* at Section VI.A.(1)(b).

**DEFENDANT'S RESPONSE:**

> **DISPUTED.**

The term "BLMIS" as defined by the Trustee and used the Dubinsky Report is deliberately misleading. The evidence is that the investment advisory business was operated by Madoff as sole proprietorship, not BLMIS.

Moreover, evidence establishes that Madoff did in fact continually purchased T-Bills with funds from the investment advisory bank accounts as reflected in the JP Morgan Chase Bank Account Statements. *See* Ruegger Decl., ¶32, Exhibit BB.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 23, and it is therefore not controverted. Consequently, Trustee Statement ¶ 23 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

The Trustee does not dispute the additional statements in Defendant's Response regarding the purchase of treasuries using funds from the bank accounts held by the investment

advisory business, and further avers that no treasuries were in fact purchased *for* customers of the investment advisory business, including Defendant.

**TRUSTEE'S STATEMENT #24:**

24.     Mr. Dubinsky's analysis demonstrated that BLMIS did not conduct any trading on behalf of its IA Business customers based on (a) the impossible reported volume of equity trades; (b) the impossible equity and options trades reported outside the daily price range; (c) the low volatility in its reported daily trading performance compared to the actual market behavior and the performance achieved by BLMIS in the proprietary trading business unit as measured by the volume weighted average prices for its sales and purchases; (d) the consistently positive rates of returns that did not "mirror" the volatility of the markets; (e) a lack of any Depository Trust Corporation ("DTC") records to confirm the reported IA Business equity or treasury trades; and (f) a lack of Options Clearing Corporation ("OCC") records to confirm the reported IA Business options trades. *Id.* at Section VI.A.(1)(c)(i)-(vi), A.(1)(e)(i)-(iv).

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant does not dispute that Dubinsky conducted this analysis but disputes that the records examined, except to the extent they were properly attributed to the proprietary trading business, were records of BLMIS. The term "BLMIS" as defined by the Trustee and used the Dubinsky Report is deliberately misleading to include the investment advisory business. It is undisputed by all parties that BLMIS did not exist until January 2001. Thereafter, the evidence is that the investment advisory business was operated by Madoff as sole proprietorship, not BLMIS. Further, the evidence establishes that treasury trades were conducted through various brokerage accounts.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 24, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 24 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

The Trustee does not dispute the additional statements in Defendant's Response regarding the purchase of treasuries through various brokerage accounts using funds from the investment advisory business, and further avers that no treasuries were in fact purchased *for* customers of the investment advisory business, including Defendant.

<strong>i.      Volume of Equity Trades</strong>

**TRUSTEE'S STATEMENT #25:**

25.    Mr. Dubinsky analyzed equity trades that the IA Business reportedly made in the split-strike conversion strategy between January 2000 and November 2008.  His analysis compared the daily volumes for certain stocks reported as purchased or sold by the IA Business on the aggregated customer statements with the actual market volumes sold as reported by Bloomberg.  *Id.* ¶¶ 159–60.

**DEFENDANT'S RESPONSE:**

**NO DISPUTE.**

Defendant does not dispute that Mr. Dubinsky conducted this exercise.

**TRUSTEE'S REPLY:**

Trustee Statement ¶ 25 should be deemed admitted under Local Rule 7056-1(d).

**TRUSTEE'S STATEMENT #26:**

26.    Mr. Dubinsky found many instances where the volume that BLMIS claimed to have purchased or sold on behalf of all IA Business customers exceeded the volume of equities traded for the entire market.  *Id.*

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The term "BLMIS" as defined by the Trustee and used the Dubinsky Report is deliberately misleading as it includes the investment advisory business. The evidence is that the investment advisory business was operated by Madoff as sole proprietorship, not BLMIS

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 27, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 27 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

**TRUSTEE'S STATEMENT #27:**

27.    For example, on July 14, 2000, the aggregated IA Business customer statements reported purchases of 2,822,680 shares of AIG (as reflected in the column titled "IA Business

Purported Value"), but the total market volume that traded that day for all of AIG shares in the

market was only 1,692,800 (as reflected in the column titled "Actual Market Value"). Similarly,

the IA Business reported trading 17,709,440 shares of GE on September 13, 2000, but the total

market volume that traded all day for GE shares in the market was only 7,604,800. *Id.* ¶ 159, Ex.

11 to Dubinsky Report ("Split-Strike Conversion IA Business Equity Volume Analysis,

Analyzed Time Period"); *see also* Ex. 12 to Dubinsky Report ("Split-Strike Conversion IA

Business Options Volume Analysis, Analyzed Time Period").

**DEFENDANT'S RESPONSE:**

      **DISPUTED.**

      Defendant objects to this statement as neither material nor necessary for the

determination of this case. In addition, although Madoff himself admitted that he did not

purchase the Fortune 100 company stocks shown on the investment advisory customers'

statements, the evidence shows that Madoff continuously purchased securities in connection with

the investment advisory business. *United States v. Madoff*, No. 09-CR-213(DC) 24:9-24.

**TRUSTEE'S REPLY:**

      Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 27, and it

is therefore not controverted. Consequently, Trustee Statement ¶ 27 should be deemed admitted

under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 27 are not relevant is

not a sufficient response or denial, and therefore the factual statement is deemed admitted. *See*

*Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

The Trustee does not dispute the additional statements in Defendant's Response regarding the investments made through bank and brokerage accounts held in the name of BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of* customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶ 45–62; Dubinsky Report Figure 52 & n.286.

**TRUSTEE'S STATEMENT #28:**

28.    Mr. Dubinsky concluded that BLMIS's trading in excess of market volumes demonstrated that the IA Business did not trade on behalf of its customers. *Id.* at Section VI.A.(1)(c), ¶¶ 159–60, Exs. 11–12 to Dubinsky Report.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The term "BLMIS" as defined by the Trustee and used the Dubinsky Report is deliberately misleading as it includes the investment advisory business. The evidence is that the investment advisory business was operated by Madoff as sole proprietorship, not BLMIS. Moreover, the evidence shows that Madoff continuously purchased securities in connection with the investment advisory business. *See* Ruegger Decl., ¶32, Exhibit BB.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 28, and it is therefore not controverted. Consequently, Trustee Statement ¶ 28 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

### ii.    Equity and Options Trades Priced Outside Daily Price Range

**TRUSTEE'S STATEMENT #29:**

29.    For the analyzed period of 2000-2008, Mr. Dubinsky determined that there were 99,972 equity transactions executed outside the daily market traded price range. The purported prices for these transactions exceeded the daily high price by as much as $8.96 and were below the daily low by as much as $105.04. There was no evidence in the BLMIS books and records that the almost 100,000 transactions were mistakes, and there were no DTC records evidencing that the trades were actually executed. Mr. Dubinsky opined that equity trades that were reported as having been executed outside the daily price range of the entire U.S. equities market could not have occurred. *Id.* ¶¶ 161–62, Ex. 13 to Dubinsky Report ("Split-Strike Conversion IA Business Equity Price Analysis, Analyzed Time Period").

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The term "BLMIS" as defined by the Trustee and the Dubinsky Report is misleading as it includes the investment advisory business. Defendant objects to this statement as neither material

38

nor necessary for the determination of this case. The Defendant does not deny that Madoff committed fraud in connection with the investment advisory business.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 29, and it is therefore not controverted. Consequently, Trustee Statement ¶ 29 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 29 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted. *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

**TRUSTEE'S STATEMENT #30:**

30.    Mr. Dubinsky performed the same analysis on options trades for the same time period and identified 34,501 options transactions traded outside of the daily price range. He found that the options traded above the daily high price by as much as $15.25 higher and by as much as $6.05 below the daily low price. Mr. Dubinsky opined, as with the equity trades, that the reported options trades purportedly executed outside the daily price range could not have

occurred. *Id.* ¶¶ 164–66, Ex. 14 to Dubinsky Report ("Split-Strike Conversion IA Business

Options Price Analysis, Analyzed Time Period").

**DEFENDANT'S RESPONSE:**

>    **DISPUTED.**

>    Defendant objects to this statement as neither material nor necessary for the

determination of this case. The Defendant does not deny that Madoff committed fraud in

connection with the investment advisory business.

**TRUSTEE'S REPLY:**

>    Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 30, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 30 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 30 are not relevant is

not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See*

*Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for

summary judgment is a legal conclusion to be made by the Court . . . [a]s a result, where a non-

movant has merely objected to the materiality of a fact, and the Court has concluded that the fact

is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7

(finding two material facts admitted where the non-movant merely objected to the materiality of

the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify

which facts are material.").

>    **Volume Weighted Average Price Analysis**

**TRUSTEE'S STATEMENT #31:**

31.     The absence of actual trading was also reflected in the prices at which the IA

Business purportedly bought and sold shares using the split-strike conversion strategy.  Mr.

Dubinsky conducted a Volume Weighted Average Price ("VWAP") analysis of the daily

purchases and sales reported by the IA Business and the proprietary trading business.  *Id.* ¶¶

168–72.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant does not dispute that Mr. Dubinsky conducted this exercise. However,

Defendant objects to this statement as neither material nor necessary for the determination of this

case. The Defendant does not deny that Madoff committed fraud in connection with the

investment advisory business.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 31, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 31 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 31 are not relevant is

not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See*

*Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for

summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-

movant has merely objected to the materiality of a fact, and the Court has concluded that the fact

41

is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7

(finding two material facts admitted where the non-movant merely objected to the materiality of

the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify

which facts are material.").

**TRUSTEE'S STATEMENT #32:**

32.     VWAP is a trading benchmark that gives the average price a security has traded

throughout the day, based on both volume and price.  The VWAP is a widely used industry

benchmark that allows a firm to see how well its traders are doing compared to the rest of the

market.  *Id.* ¶¶ 168–69.

**DEFENDANT'S RESPONSE:**

      **NO DISPUTE WITH RESPECT TO THE DEFINITION**.

**TRUSTEE'S REPLY:**

      Trustee Statement ¶ 32 should be deemed admitted under Local Rule 7056-1(d).

**TRUSTEE'S STATEMENT #33:**

33.     Based on Mr. Dubinsky's analysis, he determined that the IA Business

purportedly executed 83% of the daily buy transactions by share volume *below* the VWAP, and

72% of the daily sell transactions by share volume *above* the VWAP.   In other words, BLMIS

had the uncanny ability to buy low and sell high at a remarkable rate compared to the rest of the

market.   *Id.* ¶ 170.

**DEFENDANT'S RESPONSE:**

      **DISPUTED.**

      *See* Defendant's response and objection to Trustee's Statement Nos. 30-31.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 33, and it is therefore not controverted. Consequently, Trustee Statement ¶ 33 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 33 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted. *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

**TRUSTEE'S STATEMENT #34:**

34.     Mr. Dubinsky further compared the IA Business's purchase and sale of the same stock actually traded by the proprietary trading business on the same days. The proprietary trading business matched average VWAP of traders. The IA Business, however, consistently outperformed VWAP by such wide margins that it evidenced the fictitious nature of the trades. *Id.* ¶¶ 171–72.

**DEFENDANT'S RESPONSE:**

     **DISPUTED.**

     *See* Defendant's response and objection to Trustee's Statements 30-31 and 33.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 34, and it is therefore not controverted. Consequently, Trustee Statement ¶ 34 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 34 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted. *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

**TRUSTEE'S STATEMENT #35:**

35.     Mr. Dubinsky concluded that the unrealistic VWAP results demonstrated that the IA Business did not trade on behalf of its customers. *Id.* ¶¶ 170–72.

**DEFENDANT'S RESPONSE:**

  **DISPUTED.**

This statement is overbroad. Madoff conceded that he did not trade the equity securities on behalf of his investment advisory business customers. However, the evidence establishes that he traded in connection with the investment advisory business. *See* Ruegger Decl., ¶31, Exhibit

AA. *See* Defendant's response and objection to Trustee's Statements 30-31 and 33.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 35, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 35 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 35 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

The Trustee does not dispute the additional statements in Defendant's Response regarding the investments made through bank and brokerage accounts held in the name of BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of* customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶ 45–62; Dubinsky Report Figure 52 & n.286.

### iii.    Annual Rates of Return

**TRUSTEE'S STATEMENT #36:**

36.    To further test whether the IA Business engaged in trading, Mr. Dubinsky

analyzed the volatility of the IA Business's reported average annual rate of return for the split-strike conversion strategy as compared with the volatility of the annual rate of return as reported by Bloomberg for the two major market indices, the S&P 100 Index and the Dow Jones Industrial Average (the "Dow Jones") from December 31, 1996 through December 11, 2008. *Id.* ¶¶ 177–78.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant objects to this statement as neither material nor necessary for the determination of this case. Defendant does not dispute that the investment advisory business did not engage in trading corporate equities.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 36, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 36 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 36 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of

the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify

which facts are material.").

**TRUSTEE'S STATEMENT #37:**

37.     Because the IA Business's split-strike conversion strategy was supposedly

engineered around the S&P 100, with a basket of stocks in the S&P 100 and using S&P index

options, the IA Business's returns should have performed similarly to the S&P 100 Index.  In

other words, if the market goes down, the returns should have gone down and vice versa.  *Id.* ¶

177.

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

   Defendant objects to this statement as neither material nor necessary for the

determination of this case. Defendant does not dispute that the investment advisory business did

not engage in trading corporate equities.

**TRUSTEE'S REPLY:**

   Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 37, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 37 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 37 are not relevant is

not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See*

*Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for

summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-

movant has merely objected to the materiality of a fact, and the Court has concluded that the fact

is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7

(finding two material facts admitted where the non-movant merely objected to the materiality of

the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify

which facts are material.").

**TRUSTEE'S STATEMENT #38:**

38.    Mr. Dubinsky's analysis showed, however, that the volatility in the IA Business

rates of return did not mirror the volatility of the rates of returns of the major indices.  The IA

Business rates of return stayed within a small range, generally between 10-12% for most years

and going up to 20% for the year of 1999.  *Id.* ¶¶ 178, 180.  The returns for the major market

indices ranged from a high of 31% to a low of -37% (specifically, the S&P 100 swinging widely

from a high of 31% to a low of -37%, and the Dow Jones from a high of 25% to a low of -34%).

*Id.* ¶ 179.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant objects to this statement as neither material nor necessary for the

determination of this case. Defendant does not dispute that the investment advisory business did

not engage in trading corporate equities.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 38, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 38 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 38 are not relevant is

not a sufficient response or denial, and therefore the factual statement is deemed admitted. *See*

*Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for

summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-

movant has merely objected to the materiality of a fact, and the Court has concluded that the fact

is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7

(finding two material facts admitted where the non-movant merely objected to the materiality of

the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify

which facts are material.").

**TRUSTEE'S STATEMENT #39:**

39.    While the returns available in the major indices went up and down, representing

the volatility in the market, the IA Business returns stayed steady for the twelve-year period

examined, never having a negative year or month (even throughout 2008).  *Id.* ¶¶ 180–81.

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

*See* Defendant's response and objection to Trustee's Statements 30-31, 33 and 36-38.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 39, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 39 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 39 are not relevant is

not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See*

*Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for

summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-

movant has merely objected to the materiality of a fact, and the Court has concluded that the fact

is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7

(finding two material facts admitted where the non-movant merely objected to the materiality of

the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify

which facts are material.").

**TRUSTEE'S STATEMENT #40:**

40.    Mr. Dubinsky concluded that the lack of volatility in the IA Business

demonstrated that the IA Business was not engaged in trading.  *Id.* ¶ 181.

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

   Mr. Dubinsky's conclusion is overbroad. Defendant does not dispute that the investment

advisory business did not engage in trading corporate equities. However, Madoff traded in short

term securities, derivatives and T-Bills in connection with the investment advisory accounts. *See*

Ruegger Dec. *See* Defendant's response and objection to Trustee's Statements 30-39

**TRUSTEE'S REPLY:**

   Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 40, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 40 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 40 are not relevant is

not a sufficient response or denial, and therefore the factual statement is deemed admitted. *See*

*Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for

summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-

movant has merely objected to the materiality of a fact, and the Court has concluded that the fact

is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7

(finding two material facts admitted where the non-movant merely objected to the materiality of

the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify

which facts are material.").

The Trustee does not dispute the additional statements in Defendant's Response

regarding the investments made through bank and brokerage accounts held in the name of

BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of*

customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶

45–62; Dubinsky Report Figure 52 & n.286.

> iv.    **Securities Listed on the IA Business Customer Statements Did Not Reconcile with DTC Records**

**TRUSTEE'S STATEMENT #41:**

41.    Mr. Dubinsky compared the trades purportedly executed for the customer

accounts in the IA Business with the records maintained by the DTC, an organization in the

United States that clears and settles equity transactions in the U.S. market. *Id.* at Section

VI.A.(1)(e).

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant does not dispute that the investment advisory business did not engage in trading corporate equities evidenced by record of DTC. However, Madoff traded in short term securities, derivatives and T-Bills in connection with the investment advisory accounts reflected on the records of bank and brokerage accounts, not on DTC records. Defendant objects to this statement as neither material nor necessary for the determination of this case.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 41, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 41 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 41 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

The Trustee does not dispute the additional statements in Defendant's Response regarding the investments made through bank and brokerage accounts held in the name of BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of*

customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶ 45–62; Dubinsky Report Figure 52 & n.286.

**TRUSTEE'S STATEMENT #42:**

42.    When equity trades are recorded at the DTC it creates the official record of where that stock is held.   The ownership of the stock can be confirmed with the DTC.  *Id.* ¶¶ 194–95.

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

   Defendant objects to this statement as neither material nor necessary for the determination of this case.

**TRUSTEE'S REPLY:**

   Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 42, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 42 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 42 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of

the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

**TRUSTEE'S STATEMENT #43:**

43.    BLMIS had a single account with the DTC, the "646 account."    All equity trades made by BLMIS should have been reflected in the DTC records pertaining to its account.  *Id.* ¶ 209.

**DEFENDANT'S RESPONSE:**

    **DISPUTED.**

The equity trades of the proprietary trading business, which was one of the two businesses operated under the BLMIS name, were, in fact, reflected in the DTC records according to Mr. Dubinsky.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 43, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 43 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee does not dispute the additional statements in Defendant's response regarding the equity trades of the proprietary trading business being reflected in the DTC records (*see* Dubinsky Report ¶¶ 209–13), and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee.

**TRUSTEE'S STATEMENT #44:**

44.    Mr. Dubinsky's analysis confirmed that the securities that were cleared through

BLMIS's DTC account, the 646 account, were traded by the proprietary trading business.  No IA

Business trades were cleared through BLMIS's DTC account.  *Id.* ¶¶ 209–13.

**DEFENDANT'S RESPONSE:**

**NO DISPUTE BUT SUBJECT TO EXPLANATION.**

This statement supports the Defendant's position that the proprietary business and the

market making businesses were restructured in 2001 from the sole proprietorship to the limited

liability company. Upon the formation of BLMIS., the proprietary trading business sent notice

of the corporate change to DTC and its other trading partners, agencies and banking institution

in order to continue business. *See* Ruegger Decl., ¶30, Exhibit Z. The investment advisory

business did not send such notices and was not part of the corporate restructuring in 2001.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 44, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 44 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory

business was operated by Madoff as a sole proprietorship after January 2001.

The Trustee does not dispute the additional statements in Defendant's Response

regarding notification letters of the formation of the LLC sent to business and governmental

entities, and further avers that, regardless of whether true or disputed, the statements are

immaterial and do not preclude summary judgment for the Trustee.  *See, e.g.*, *JABA Assocs. LP*,

2021 WL 1112342, at *9 (citing *BAM L.P.*, 624 B.R. at 61) ("This Court finds that all of the

assets and liabilities of the sole proprietorship, including the IA Business, were transferred to

BLMIS via the 2001 SEC Amended Form BD.")); *Lisa Beth Nissenbaum Trust*, 2021 WL

1141638, at *9; *Inter–Account Transfer Decision*, 522 B.R. at 60 (all of Madoff Securities'

assets and liabilities were transferred to BLMIS upon the reorganization to a single member

limited liability company).

**TRUSTEE'S STATEMENT #45:**

45.    The proprietary trading business shares reflected in the DTC records matched the

BLMIS records evidencing those trades.  *Id.* ¶¶ 209, 211, 213.

**DEFENDANT'S RESPONSE:**

**NO DISPUTE BUT SUBJECT TO EXPLANATION.**

The corporate form of the proprietary trading business was changed in 2001 to the limited

liability company and renamed as "BLMIS". BLMIS continued to do business in the new form

with its trading partners, agencies and banking institutions. *See* Defendant's response to Trustee

Statement No.44.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 45, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 45 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory

business was operated by Madoff as a sole proprietorship after January 2001.

The Trustee does not dispute the additional statements in Defendant's Response regarding the corporate form change in 2001 to the LLC, and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee. *See, e.g.*, *JABA Assocs. LP*, 2021 WL 1112342, at *9 (citing *BAM L.P.*, 624 B.R. at 61) ("This Court finds that all of the assets and liabilities of the sole proprietorship, including the IA Business, were transferred to BLMIS via the 2001 SEC Amended Form BD.")); *Lisa Beth Nissenbaum Trust*, 2021 WL 1141638, at *9; *Inter–Account Transfer Decision*, 522 B.R. at 60 (all of Madoff Securities' assets and liabilities were transferred to BLMIS upon the reorganization to a single member limited liability company).

**TRUSTEE'S STATEMENT #46:**

46.    Mr. Dubinsky concluded that the proprietary trading business actually executed those trades in the marketplace, as confirmed by the DTC records.  For the IA Business, however, Mr. Dubinsky could not account for the stock purportedly traded for the customers in the IA Business in any DTC records.  *Id.* ¶ 209.

**DEFENDANT'S RESPONSE:**

**NO DISPUTE BUT SUBJECT TO EXPLANATION.**

*See* Defendant's response to Trustee Statement No. 44.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 46, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 46 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

**TRUSTEE'S STATEMENT #47:**

47.    Based on his analysis, Mr. Dubinsky concluded that the IA Business did not

execute the equity trades reflected on the customer statements.  *Id.* ¶ 212.

**DEFENDANT'S RESPONSE:**

**NO DISPUTE BUT SUBJECT TO EXPLANATION.**

Defendant does not dispute that the investment advisory business did not engage in

trading corporate equities. However, Madoff traded in short term securities, derivatives and T-

Bills in connection with the investment advisory accounts reflected on the records of bank and

brokerage accounts. *See* Ruegger Decl., ¶32, Exhibit BB, JP Morgan Chase Bank Account

Statements.  Defendant also has not identified a percipient witness or expert witness in

accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the

investment advisory business was operated by Madoff as a sole proprietorship after January

2001.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 47, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 47 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee does not dispute the additional statements in Defendant's Response

regarding the investments made through bank and brokerage accounts held in the name of

BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of* customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶ 45–62; Dubinsky Report Figure 52 & n.286.

**TRUSTEE'S STATEMENT #48:**

48.    Because there were no records from the DTC showing that BLMIS owned the securities listed on the IA Business customer statements, BLMIS created fake DTC records for the IA Business.  Mr. Dubinsky discovered dozens of fake DTC screen inquiries to document purported trading activity of the IA Business.  *Id.* ¶¶ 199–208.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant objects to the allegation that BLMIS created fake DTC records for the investment advisory business. BLMIS did not own or trade for the investment advisory business.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 48, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 48 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that BLMIS did not create fake DTC records for the investment advisory business.

**TRUSTEE'S STATEMENT #49:**

49.    BLMIS installed software on the IA Business computer system that recreated fake

DTC reports that were meant to look like official reports. *Id.* ¶¶ 206–07.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

While software may have been installed on certain computer systems, the assertion that BLMIS installed the software is an assertion unsupported by the evidence. Moreover, the term "BLMIS" as defined by the Trustee is deliberately misleading to the extent it is meant to the investment advisory business.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 49, and it is therefore not controverted. Consequently, Trustee Statement ¶ 49 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that BLMIS did not install the software.

**TRUSTEE'S STATEMENT #50:**

50.    Mr. Dubinsky explained that there would be no reason, if one were doing legitimate trading and had owned the stocks, to go into a computer system and write code that used form-printing software to print out a report that mimicked what the DTC puts out, because there would instead be a real DTC report. *Id.* ¶ 208. Mr. Dubinsky made this determination by examining the metadata of the fake DTC screens, the code embedded in the document to record characteristics of the document, including when it was created. *Id.* ¶¶ 199–205.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant does not dispute that Mr. Dubinsky made the explanation or determination. However, Defendant objects to this statement as neither material nor necessary for the determination of this case.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 50, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 50 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 50 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

**TRUSTEE'S STATEMENT #51:**

51.    Based on Mr. Dubinsky's analysis of the DTC records, Mr. Dubinsky concluded that BLMIS was not trading equities for its IA Business customers.  *Id.* ¶ 208.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant objects to this Statement on several grounds. First, it is based on the false premise that the investment advisory business was owned by BLMIS and BLMIS traded or did not trade on behalf of that business. Second, the conclusion is based on the false premise that all trades would be reflected in the DTC records.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 51, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 51 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

v.      **Reported Options Trades Could Not be Reconciled to OCC Records**

**TRUSTEE'S STATEMENT #52:**

52.      The options purportedly executed for the customer accounts in the IA Business could not be reconciled with the records of the OCC, an organization that clears and settles options transactions in the U.S. market.  *Id.* ¶¶ 196–98.

**DEFENDANT'S RESPONSE:**

**NO DISPUTE.**

**TRUSTEE'S REPLY:**

Trustee Statement ¶ 52 should be deemed admitted under Local Rule 7056-1(d).

**TRUSTEE'S STATEMENT #53:**

53.     Mr. Dubinsky explained that BLMIS had a single account with the OCC, and the

IA Business purportedly traded S&P Index options ("OEX"), which are "proprietary options"

traded exclusively on the Chicago Board of Option Exchange ("CBOE").  These proprietary

options can only be traded on the CBOE, but there would be a record of them both from the

CBOE and the OCC.  *Id.* ¶¶ 166, 219.

**DEFENDANT'S RESPONSE:**

**NO DISPUTE BUT SUBJECT TO EXPLANATION.**

The Defendant does not dispute the Trustee's Statement to the extent it is read to apply

the term "BLMIS" to the proprietary trading business. *See* Defendant's response with opposition

to Trustee's Statement No. 44.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 53, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 53 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory

business was operated by Madoff as a sole proprietorship after January 2001.

**TRUSTEE'S STATEMENT #54:**

54.     Mr. Dubinsky reviewed the OCC records for the BLMIS account from October

31, 2002 through October 31, 2008.  Based on his review of those records, Mr. Dubinsky was

able to reconcile and confirm the options that were traded by the proprietary trading business but

could not account for the options purportedly traded for the customers in the IA Business. *Id.* ¶¶
220–21.  Mr. Dubinsky found that the options purportedly traded on behalf of the IA Business
customers, as recorded in the IA Business trading records, were not shown on OCC records and
were not cleared through the OCC. *Id.* ¶ 222.

**DEFENDANT'S RESPONSE:**

      **DISPUTED.**

      The Defendant does not dispute the contention that the OCC records only reflected
options traded for the proprietary trading business that was part of BLMIS. This statement as
neither material nor necessary for the determination of this case.

**TRUSTEE'S REPLY:**

      Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 54, and it
is therefore not controverted.  Consequently, Trustee Statement ¶ 54 should be deemed admitted
under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for
purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at
328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").
Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 54 are not relevant is
not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See
Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for
summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-
movant has merely objected to the materiality of a fact, and the Court has concluded that the fact
is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7
(finding two material facts admitted where the non-movant merely objected to the materiality of

the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

**TRUSTEE'S STATEMENT #55:**

55.    For example, on October 31, 2005, records for the proprietary trading business and the OCC indicate that 20 options described as "S&P 100 INDEX November 590 Call" were purchased and held by BLMIS.  The aggregate number of "S&P 100 INDEX NOVEMBER 590 CALL" options reported on IA Business customer statements for the same date totaled 658,342. *Id.* ¶ 223.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant does not dispute the contention that the OCC records only reflected options traded for the proprietary trading business that was part of BLMIS. This statement as neither material nor necessary for the determination of this case

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 55, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 55 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 55 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-

movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

**TRUSTEE'S STATEMENT #56:**

56.     Based on his analyses, Mr. Dubinsky concluded that BLMIS did not conduct any options trading on behalf of its IA Business customers.  *Id.* ¶ 222.

**DEFENDANT'S RESPONSE:**

> **DISPUTED.**

Mr. Dubinsky's conclusion is based on the unsupported assumption that BLMIS was owned by or was trading for the investment advisory business customers.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 56, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 56 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

> C.     **The IA Business Did Not Purchase Treasuries for IA Business Customer Accounts**

**TRUSTEE'S STATEMENT #57:**

57.     In addition to purchasing stocks and options collars, BLMIS claimed it would intermittently invest IA Business customer funds in T-Bills as part of the split-strike conversion strategy.  *Id.* ¶ 44.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant objects to the use of the term "BLMIS" as the business entity that made claims to the investment advisory business. Moreover, Madoff did invest investment advisory customer funds in T-Bills. *See* Ruegger Decl., ¶32, Exhibit BB, 703 Account Statements.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 57, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 57 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee does not dispute the additional statements in Defendant's Response regarding the purchase of treasuries through various brokerage accounts using funds from the investment advisory business, and further avers that no treasuries were in fact purchased *for* customers of the investment advisory business, including Defendant.

**TRUSTEE'S STATEMENT #58:**

58.    Mr. Dubinsky found no evidence of such purchases having been made on behalf of IA Business customers.  While BLMIS purchased T-Bills with customer funds, these purchases did not match the allocation of T-Bill transactions that appeared on customer statements.  *Id.* ¶¶ 224, 218.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant objects to the use of the term "BLMIS" as the business entity that made purchases of T-Bills with investment advisory customer funds. The evidence is that purchases of T-Bills were made by Madoff from an account held by him operating as a sole proprietor. *See* Ruegger Decl., ¶32, Exhibit BB, 703 Account Statements.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 58, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 58 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

The Trustee does not dispute the additional statements in Defendant's Response regarding the purchase of treasuries through various brokerage accounts using funds from the investment advisory business, and further avers that no treasuries were in fact purchased *for* customers of the investment advisory business, including Defendant.

**TRUSTEE'S STATEMENT #59:**

59.    For the period of 2002 through 2007, Mr. Dubinsky reviewed the BLMIS books and records to identify the unique T-Bills held by the proprietary trading business on December 31 of each of those years.  He then compared those holdings to (i) those T-Bill positions held at BLMIS's account at the DTC, which serves as the custodian or the clearing house for treasuries, and (ii) the T-Bills purportedly held by the IA Business for its customers.  *Id.* ¶¶ 225–27.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant objects to the Statement to the extent that it fails to distinguish between the BLMIS that was formed in 2001 to hold the assets of the proprietary trading and market making businesses of Madoff's sole proprietorship and the sole proprietorship that was registered in 1960 and conducted business for the investment advisory customers continuously from its registration through 2008. Moreover, Dubinsky's exercise was irrelevant because he did not include the T-Bills that Madoff owned through various brokerage accounts, which T-bills he had purchased with IA customers' money.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 59, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 59 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

The Trustee does not dispute the additional statements in Defendant's Response regarding the purchase of treasuries through various brokerage accounts using funds from the investment advisory business, and further avers that no treasuries were in fact purchased *for* customers of the investment advisory business, including Defendant.

**TRUSTEE'S STATEMENT #60:**

60.    Mr. Dubinsky prepared a summary chart of his review of these voluminous records, which accurately represents his comparison of the T-Bill positions in the proprietary trading business and the positions purportedly purchased by the IA Business for its customers:

Table 5
Comparison of Year-End US Treasury Positions: Proprietary Trading Business vs. IA Business

| Year-End | Proprietary Trading Business | IA Business | Proprietary Trading Business positions as a percent of IA Business positions |
|---|---|---|---|
| 2002 | $84,000,000 | $30,975,765,000 | 0.27% |
| 2003 | $70,000,000 | $33,643,020,000 | 0.21% |
| 2004 | $70,000,000 | $37,935,258,000 | 0.18% |
| 2005 | $75,000,000 | $40,913,910,000 | 0.18% |
| 2006 | $70,000,000 | $48,342,420,000 | 0.14% |
| 2007 | $80,000,000 | $56,990,055,000 | 0.14% |

*Id.* ¶ 227, Table 5.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

*See* Defendant's response and objection to Trustee's Statement No. 59.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 60, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 60 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

The Trustee does not dispute the additional statements in Defendant's Response regarding the purchase of treasuries through various brokerage accounts using funds from the investment advisory business, and further avers that no treasuries were in fact purchased *for* customers of the investment advisory business, including Defendant.

**TRUSTEE'S STATEMENT #61:**

61.     The amount of T-Bills held by the proprietary trading business was negligible compared to those purportedly held on behalf of customers of the IA Business.  For example, by the end of 2007, the $80 million in treasury positions held by the proprietary trading business (as recorded on the DTC records) was only 0.14 percent of the approximately $57 billion in treasury positions purportedly held by the IA Business.  *Id.*

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

*See* Defendant's response and objection to Trustee's Statement No. 59.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 61, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 61 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

The Trustee does not dispute the additional statements in Defendant's Response regarding the purchase of treasuries through various brokerage accounts using funds from the investment advisory business, and further avers that no treasuries were in fact purchased *for* customers of the investment advisory business, including Defendant.

**TRUSTEE'S STATEMENT #62:**

62.    Mr. Dubinsky further analyzed whether T-Bills purportedly purchased for IA Business customers matched those T-Bills reported as being purchased and held by BLMIS's brokerage accounts.  Mr. Dubinsky determined that 100% of the treasuries held by the brokerage accounts were not the same treasuries as purportedly held by the IA Business accounts because of different maturity dates, different purchase and sale dates, and/or they had a different reported volume.  *Id.* ¶¶ 232–40.

**DEFENDANT'S RESPONSE:**

    **DISPUTED.**

The Defendant objects to characterization of the brokerage accounts as "BLMIS" accounts. Moreover, Defendant objects to Mr. Dubinsky's analysis of the brokerage accounts as admissible evidence because the Trustee refused to produce these documents to the Defendant

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 62, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 62 should be deemed admitted under Local Rule 7056-1(d).  See LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); see also Buckman, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee refers to his reply to Defendant's Response to Trustee's Statement 8 above regarding Mr. Dubinsky, and further avers that all of the records upon which Mr. Dubinsky relied, have always been available for inspection in the E-Data Room. *See Nelson*, 610 B.R. at 222 (citing *Picard v. Wilenitz* (*In re BLMIS*), 605 B.R. 617, 619-20 (Bankr. S.D.N.Y. 2019); *see also generally In re Bernard L. Madoff*, Adv. Pro. No. 08-01789 (SMB), 2020 WL 1488399, at *19 (Bankr. S.D.N.Y. Mar. 20, 2020) (awarding attorneys' fees and expenses against counsel personally for making baseless claims that the Trustee failed to produce account statements of all investment advisory customers).

**TRUSTEE'S STATEMENT #63:**

63.    Mr. Dubinsky additionally determined that even if one were to add up all of the treasuries in those eight brokerage accounts and the proprietary trading business, they would be short of what was reported on the IA Business customer statements. *Id.* ¶¶ 230–31 and Figure 36; *see also* Ex. 22 to Dubinsky Report ("Purported IA Business Treasuries versus Actual Treasuries Held by BLMIS").

**DEFENDANT'S RESPONSE:**

    **DISPUTED.**

*See* Defendant's response and objection to Trustee's Statement No. 62.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 62, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 62 should be deemed admitted under Local Rule 7056-1(d).  See LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); see also Buckman, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee refers to his reply to Defendant's Response to Trustee's Statement 8 above

regarding Mr. Dubinsky, and further avers that all of the records upon which Mr. Dubinsky

relied, have always been available for inspection in the E-Data Room.  *See Nelson*, 610 B.R. at

222 (citing *Picard v. Wilenitz* (*In re BLMIS*), 605 B.R. 617, 619-20 (Bankr. S.D.N.Y. 2019); *see*

*also generally In re Bernard L. Madoff*, Adv. Pro. No. 08-01789 (SMB), 2020 WL 1488399, at

*19 (Bankr. S.D.N.Y. Mar. 20, 2020) (awarding attorneys' fees and expenses against counsel

personally for making baseless claims that the Trustee failed to produce account statements of all

investment advisory customers).

**TRUSTEE'S STATEMENT #64:**

64.    Frank DiPascali, a former BLMIS employee, now deceased, gave certain

testimony at the multi-day criminal trial held in *United States v. Bonventre*, 10-CR-228 (LTS)

(S.D.N.Y.) ("DiPascali Testimony"), ECF Nos. 858, 862, 884 (attached as Exhibit 6 to Cremona

Decl.)  In his criminal trial testimony, DiPascali confirmed that the T-Bills purchased with the IA

Business money were for BLMIS's cash management and were not purchased for any customer

account:

> **Q.** From time to time did you get real treasury bills?
> **A.** Yes.
> **Q.** And what were those real treasury bills for?
> **A.** To invest the excess cash in the IA checking account.
> **Q.** And when you say to invest the excess cash in the IA checking
> account, for what reason did you get a treasury bill to do that?
> **A.** So as to provide safety and an enhanced yield to what the
> checking account interest rate was.
> **Q.** So it would be fair to say it would be a way of getting interest
> on the checking account?
> **A.** More or less, yes.

Cremona Decl., Ex. 6 (DiPascali Testimony) at 4931:12–23 (Dec. 5, 2013); *see also id.*

at 4921:7–12, 4930:6–4931:5, 4934:3–25; *id.* at 5345:1–5346:3 (Dec. 10, 2013).

74

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Frank DiPascali's testimony against his conspirators in criminal trial held in *United States v. Bonventre*, 10-CR-228 (LTS) (S.D.N.Y.) ECF Nos. 858, 862 and 884 (attached as Exhibit 3 to Cremona Decl.) is inadmissible hearsay.

Certain portions of guilty plea allocutions are admissible under Rule 804(b)(3), which permits a court to admit the statement of an unavailable witness if, when made, the statement so far tended to subject the declarant to criminal liability that a reasonable person would not have made the statement unless he or she believed it to be true. the rule. *See, e.g., United States v. Scopo*, 861 F.2d 339, 348 (2d Cir. 1988); *United States v. Winley*, 638 F.2d 560, 562 n.2 (2d Cir. 1981). However, the statements made by DiPascali in the trial of Daniel Bonventre are not part of his guilty plea. DiPascali pleaded guilty on August 11, 2009. The statements cited by the Trustee were made in April 2014 as part of DiPascali's agreement with the Government for a light sentencing in exchange for his cooperation in securing the conviction of other employee . *See U.S. v. DiPascali,* 09 cr. 764 (S.D.N.Y.) Nolle Prosequi, [ECF No. 111]. These statements lack the element of trustworthiness required by Rule 804 for admissibility. *See Lilly v. Virginia*, 527 U.S. 116 (1992) ('"It is clear that our cases consistently have viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those '"hearsay exceptions [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability.'" *White v. Illinois*, 502 U.S. at 357").

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 64, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 64 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory

business was operated by Madoff as a sole proprietorship after January 2001.

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted))*.*

**TRUSTEE'S STATEMENT #65:**

65.    DiPascali differentiated between the T-Bills actually purchased for cash

management purposes and those fabricated for customers of the IA Business:

> **Q.** And when you bought those real treasury bills to earn interest on
> the Madoff checking account, what did you have to do?
> **A.** I had to call my broker.
> **Q.** And after you called your broker, was there a process to going
> out and buying the treasury bill?
> **A.** Yeah, I would tell the broker how much dollars I wanted to
> commit to treasury bills and typically which one I wanted to buy,
> and he would take down that information and call me back and
> typically give me a report that I bought X amount of treasury bills
> at this price.
> **Q.** And then that would – you would actually get a real treasury bill?
> **A.** Yeah.
> **Q.** Now, for on the IA side, when you had to provide – when you
> would provide the fake information, what would you do there?
> **A.** I'd look at a pricing service of historical prices of treasury bills,
> ascertain the price on the date that I needed and write a ticket and
> put it into the AS/400.
>
> ***

**Q.** Now, what was your understanding of what Ms. Bongiorno would do with the treasury information that you gave to her?
**A.** She would put through a buy ticket that was approximately equal to the cash credit balance reflected in the account she was working on, and it would produce a confirmation and an entry on the customer statement that he was now – owned treasuries.
**Q.** And as with the other trading that was on those accounts, was any of it real?
**A.** No.

*Id.* at 4931:24–4934:13 (Dec. 5, 2013).

**DEFENDANT'S RESPONSE:**

      **DISPUTED.**

      *See* Defendant's response and opposition to Statement 64 above.

**TRUSTEE'S REPLY:**

      Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 65, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 65 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

      Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted))*.*

**TRUSTEE'S STATEMENT #66:**

66.     DiPascali further testified that the T-Bill purchases in the eight brokerage

accounts (held at Bank of New York, Bear Stearns, Fidelity, Lehman, and Morgan Stanley) were

made at the direction of Mr. Madoff to earn interest on the cash held in JP Morgan Chase Bank,

N.A. ("JPMorgan") account #xxxxx1703 (the "703 Account") (further discussed below in ¶ 69):

> **Q.** Did Mr. Madoff propose a solution for how to deal with this?
> **A.** He either already had an account or two open or was about to open a new account or a series of them, I don't recall.  He was basically giving that responsibility to me.  He wanted treasury notes, treasury bills only.  As the CDs would get unwound or, I don't remember, they might have unwound them immediately, I'm not sure, but in short order I managed a group of Bernard L. Madoff brokerage accounts that were held at other brokerage firms for the purpose of purchasing short-term U.S. government securities.
> **Q.** These short-term U.S. securities were real, right?
> **A.** Yes.
> **Q.** This was just a way of getting interest on the real cash that was in the 703 account?
> **A.** Yes.
> **Q.** What were some of the firms that you now had responsibility for that had these brokerage accounts?
> **A.** Bear Stearns, Fidelity, Bank of New York, Morgan Stanley, Lehman Brothers.
> **Q.** We talked a little bit about this earlier, when you were buying these short-term securities, what steps would you have to take to buy these real securities on those brokerage accounts?
> **A.** I typically picked up the phone and called the broker or the representative of each of those organizations and communicated my needs.  Then he typically got or she typically got back to me and told me what I had done.  Sometimes those conversations occurred in the form of faxes.  Most of the time they were on the telephone.
> **Q.** This was different than just looking at historical prices and writing something up for the fake trades, right?
> **A.** Yes.

*Id.* at 4961:15–4962:22 (Dec. 5, 2013).

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

*See* Defendant's response and opposition to Statement 64 above.

Pg 79 of 155

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 66, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 66 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory

business was operated by Madoff as a sole proprietorship after January 2001.

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted))*.

**TRUSTEE'S STATEMENT #67:**

67.    DiPascali explained the nuts and bolts of his process that resulted in T-Bill

transactions showing up on the IA Business customer statements, and further confirmed that they

were all fake:

> **Q.** Now can we go to the second page of this document. What is
> this that we are looking at?
> **A.** It's a spreadsheet that I created that was going to be the nuts
> and bolts of this exercise.  It was going to do a lot of the
> calculation for me and allow the process to progress swiftly instead
> of from month to month to month and client to client to client
> calculate all sorts of stuff, and then have to then create another side
> to that. This spreadsheet, which is an Excel-based spreadsheet, is
> identifying certain treasury bills across the top column. The top
> row is the CUSIP of treasury bills and options.  The second row

are the symbols of options and then a string of treasury bills. Going on the far left column are a string of account numbers. Those are the accounts that Bernie told us he wanted to use to be the counterparties of the customer option positions. What this is doing is it's allowing me to randomly assign, once I know the total of my customer option positions, a quantity to each of those counterparties. Then, once I've randomly defined what each counterparty's position is, this is calculating what its margin or collateral requirement would be. Once I established that, this spreadsheet allows me to randomly pick a group of treasuries that were going to represent that collateral, and then the whole total number would circle back to what I needed. It's fairly complicated, but it did all the grind work necessary to accomplish what Bernie wanted.

**Q.** Were any of the treasury bills that are reflected on this real?

**A.** No.

*Id.* at 5344:24–5346:3 (Dec. 10, 2013).

**DEFENDANT'S RESPONSE:**

    **DISPUTED.**

    *See* Defendant's response and opposition to Statement 64 above.

**TRUSTEE'S REPLY:**

    Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 67, and it is therefore not controverted. Consequently, Trustee Statement ¶ 67 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

    Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)).

**TRUSTEE'S STATEMENT #68:**

68.     DiPascali also confirmed that the proprietary trading business did not have an inventory of T-Bills "that was equivalent to the amount that was on the statements" for IA Business customers. *Id.* at 6950:25–6951:9 (Jan. 13, 2014).

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

*See* Defendant's response and opposition to Statement 64 above.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 68, and it is therefore not controverted. Consequently, Trustee Statement ¶ 68 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted)).

D.    **The IA Business Had No Other Sources of Funds**

**TRUSTEE'S STATEMENT #69:**

69.    During at least the ten-year period before its collapse on December 11, 2008,
BLMIS primarily used three bank accounts for the IA Business: the 703 Account; JPMorgan
account #xxxxxxxxx1509 (the "509 Account", together with the 703 Account, the "JPMorgan
Accounts"); and Bankers Trust account #xx-xx0-599 (the "BT Account").  Dubinsky Decl.,
Attach. A (Dubinsky Report) ¶ 340 n.285; Declaration of Lisa M. Collura, dated April 8, 2021
("Collura Decl."), Attach. A (Expert Report of Lisa M. Collura, CPA, CFE, CFF, dated January
16, 2019 ("Collura Report")) ¶ 17.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant disputes the characterization of the investment advisory accounts as "BLMIS"
accounts. These accounts were continuously held in the name of sole proprietorship--Bernard L.
Madoff or Bernard L. Madoff Investment Securities. *See* Ruegger Dec. Exhibit Defendant
disputes the admissibility of the documents on which the Trustee relies to the extent the Collura
and Dubinsky reports are being used to identify the ownership of the accounts as BLMIS
accounts . *See* Defendant's response and objection to Trustee's Statement No. 8.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 69, and it
is therefore not controverted.  Consequently, Trustee Statement ¶ 69 should be deemed admitted
under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for
purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory

business was operated by Madoff as a sole proprietorship after January 2001.

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted)).  Defendant's response also incorrectly states that

Dubinsky and Collura relied upon inadmissible evidence, namely the BLMIS books and records,

which have been admitted into evidence and relied upon multiple times in this SIPA liquidation.

*See, e.g.*, *Epstein Decision* at 7, *Nelson,* 610 B.R. at 223–26, *In re Bernard L. Madoff*, 592 B.R.

at 527–29, *aff'd*, 605 B.R. at 584–87.

**TRUSTEE'S STATEMENT #70:**

70.      IA Business customers' cash deposits were deposited (and commingled) into the

703 Account.  Dubinsky Decl., Attach. A (Dubinsky Report) ¶ 340; Collura Decl., Attach. A

(Collura Report) ¶¶ 20–24.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant disputes the use of the term "commingled" to the extent the Trustee means

anything other than IA business customer funds were held together with other investment

advisory business customer funds in the same account. Defendant further disputes the

admissibility of the Dubinsky Report regarding the description of the content and use of the JP

Morgan Accounts. *See* Defendant's response and opposition to Trustee's Statement No. 8.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 70, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 70 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory

business was operated by Madoff as a sole proprietorship after January 2001.

The Trustee refers to his reply to Defendant's Response to Trustee's Statement 8 above

regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #71:**

71.    IA Business customer withdrawals were made through the JPMorgan Accounts

and the BT Account, which was a checking account entirely funded by the 703 Account during

the period for which bank records are available.  Collura Decl., Attach. A (Collura Report)

¶¶ 25–30.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The statement is deliberately misleading and confusing. It indicates that the BT Account

was the primary account used by the investment advisory business. In fact, the BT Account was

only used by the sole proprietorship during the period from December 1998 to May 1999.

Collura Decl., Attach. A (Collura Report) ¶¶28–30.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 71, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 71 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee does not dispute the additional statements in Defendant's Response regarding the BT Account, and further avers that, regardless of whether true or disputed, the statements are immaterial and do not preclude summary judgment for the Trustee.

**TRUSTEE'S STATEMENT #72:**

72.     The JPMorgan Accounts were linked commercial business accounts.  The 509 Account was a controlled disbursement account that was entirely funded by the 703 Account.  *Id.* ¶ 25.  An analysis of the 703 Account showed that the money in that account consisted almost entirely of customer deposits.  Dubinsky Decl., Attach. A (Dubinsky Report) ¶ 340 n.285; Collura Decl., Attach. A (Collura Report) ¶ 27.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant does not dispute that the 509 Account and the 703 Account were linked accounts. However, Defendant disputes the contention that the money in the account consisted almost entirely of customer deposits. The investment advisory business in fact continuously

traded in T-Bills, short term derivatives and commercial paper with customer deposits and the

703 Account through as late of November 2008 showed billions of dollars of those investments.

*See* Ruegger Decl., ¶32, Exhibit BB, 703 Account Statements. In addition, Defendant disputes

the admissibility of the Dubinsky Report regarding the description of the content and use of the

JP Morgan Accounts. *See* Defendant's response and opposition to Trustee's Statement No. 8.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 72 and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 72 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the 703 Account was solvent

as late as November 2008.

The Trustee does not dispute the additional statements in Defendant's Response

regarding the investments made through bank and brokerage accounts held in the name of

BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of*

customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶

45–62; Dubinsky Report Figure 52 & n.286.

The Trustee also refers to his reply to Defendant's response and objection to Trustee's

Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #73:**

73.    Ninety-seven percent of all cash additions into the 703 Account came directly

from IA Business customers. Dubinsky Decl., Attach. A (Dubinsky Report) ¶ 340 n.285, Figure

52; Collura Decl., Attach. A (Collura Report) ¶ 24, Figure 1.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant does not dispute that the cash deposits were made by customers of the

investment advisory business. However, the statement is misleading because it fails to explain

that at all times through as late as November 2008, the 703 account held billions of dollars of

investments sufficient to meet the withdrawal requests of the investment advisory clients. *See*

Ruegger Decl., ¶32, Exhibit BB, 703 Account Statements.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 73 and it

is therefore not controverted. Consequently, Trustee Statement ¶ 73 should be deemed admitted

under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the 703 Account was solvent

as late as November 2008.

**TRUSTEE'S STATEMENT #74:**

74.    The other three percent of inflows into the 703 Account came from income earned

on (1) short-term investment activity made directly from the 703 Account (including overnight

sweeps, overnight deposits, commercial paper, Certificates of Deposit and T-Bills); and (2)

investments of BLMIS customer funds made through bank and brokerage accounts held in the

name of BLMIS or Madoff.  Collura Decl., Attach. A (Collura Report) ¶¶ 45–62; Dubinsky

Decl., Attach. A (Dubinsky Report) Figure 52 & n.286.

**DEFENDANT'S RESPONSE:**

>    **DISPUTED.**

>    *See* Defendant's response and opposition to Trustee's Statement Nos. 72-73.

**TRUSTEE'S REPLY:**

>    Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 74 and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 74 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the 703 Account was solvent

as late as November 2008.

>    The Trustee does not dispute the additional statements in Defendant's Response

regarding the investments made through bank and brokerage accounts held in the name of

BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of*

customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶

45–62; Dubinsky Report Figure 52 & n.286.

>    The Trustee also refers to his reply to Defendant's response and objection to Trustee's

Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #75:**

>    75.    Because the short-term investments, including overnight sweeps, were made

directly out of the 703 Account, the source of the money for those investments was customer

funds.  Dubinsky Decl., Attach. A (Dubinsky Report) ¶ 340; Collura Decl., Attach. A (Collura

Report) ¶¶ 24, 46–47.

**DEFENDANT'S RESPONSE:**

> **DISPUTED.**

The Statement is deliberately vague with respect to identity of the businesses of those

customers. *See also* Defendant's response and opposition to Trustee's Statement Nos. 72-73.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 75 and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 75 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the 703 Account was solvent

as late as November 2008.

The Trustee does not dispute the additional statements in Defendant's Response

regarding the investments made through bank and brokerage accounts held in the name of

BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of*

customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶

45–62; Dubinsky Report Figure 52 & n.286.

The Trustee also refers to his reply to Defendant's response and objection to Trustee's

Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #76:**

76.    There were no inflows into the 703 Account from sales of securities for customer accounts.  Dubinsky Decl., Attach. A (Dubinsky Report) ¶ 340; Collura Decl., Attach. A (Collura Report) ¶¶ 24, 32.

**DEFENDANT'S RESPONSE:**

> **DISPUTED.**

See Defendant's response and opposition to Trustee's Statement Nos. 72-73.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 76 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 76 should be deemed admitted under Local Rule 7056-1(d).  See LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); see also Buckman, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the 703 Account was solvent as late as November 2008.

The Trustee does not dispute the additional statements in Defendant's Response regarding the investments made through bank and brokerage accounts held in the name of BLMIS or Madoff, and further avers that no investments were in fact made on behalf of customers of the investment advisory business, including Defendant. See, e.g., Collura Report ¶¶ 45–62; Dubinsky Report Figure 52 & n.286.

The Trustee also refers to his reply to Defendant's response and objection to Trustee's Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #77:**

77.    There were no outflows from the 703 Account to purchase securities for customer

accounts.  Dubinsky Decl., Attach. A (Dubinsky Report) ¶ 350; Collura Decl., Attach. A

(Collura Report) ¶ 32.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

*See* Defendant's response and opposition to Trustee's Statement Nos. 72-73.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 77 and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 77 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the 703 Account was solvent

as late as November 2008.

The Trustee does not dispute the additional statements in Defendant's Response

regarding the investments made through bank and brokerage accounts held in the name of

BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of*

customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶

45–62; Dubinsky Report Figure 52 & n.286.

The Trustee also refers to his reply to Defendant's response and objection to Trustee's

Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #78:**

78.    Apart from two short-term loans BLMIS received from JPMorgan totaling $145 million in November 2005 and January 2006—both of which were repaid by June 2006—the IA Business did not obtain loans from third parties or from the proprietary trading and market-making businesses sufficient to pay the IA Business customer withdrawals.  Dubinsky Decl., Attach. A (Dubinsky Report) ¶¶ 341–44.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant does not dispute the Statement regarding loans. However, the funds in the 703 Account were sufficient to pay the investment advisory customer withdrawal requests until December 2008. *See* Defendant's response and opposition to Trustee's Statement Nos. 72-73.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 78 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 78 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the 703 Account was solvent as late as November 2008.

**TRUSTEE'S STATEMENT #79:**

79.    The IA Business also did not receive payments of any cash dividends.  According to the customer statements, the IA Business reported that it received cash dividends related to

purported trading and paid or credited them to the accountholders.  Between 1998 and 2008, BLMIS reported that it had paid or credited its customers $4.3 billion in cash dividends.  *Id.* ¶¶ 247–55.

**DEFENDANT'S RESPONSE:**

> **DISPUTED.**

The Statement is patently inaccurate to the extent is refers to BLMIS reporting prior to its formation in 2001 and after 2001 when it was held and operated by Madoff as a sole proprietorship. *See* Defendant's response and opposition to Trustee's Statement Nos. 72-73.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 79 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 79 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contentions that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001 or that the 703 Account was solvent as late as November 2008.

The Trustee does not dispute the additional statements in Defendant's Response regarding the investments made through bank and brokerage accounts held in the name of BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of* customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶ 45–62; Dubinsky Report Figure 52 & n.286.

The Trustee also refers to his reply to Defendant's response and objection to Trustee's Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #80:**

80.     Of the more than 8,300 IA Business dividend transactions identified on the customer account statements from 1998 to 2008, not one purported dividend payment matched to a cash addition to the 703 Account.  *Id.* ¶¶ 253–54.

**DEFENDANT'S RESPONSE:**

 **DISPUTED.**

Trustee Statement 79 is more argument than statement of fact. *See* Defendant's response and opposition to Trustee's Statement Nos. 72-73.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 80 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 80 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee does not dispute the additional statements in Defendant's Response regarding the investments made through bank and brokerage accounts held in the name of BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of* customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶ 45–62; Dubinsky Report Figure 52 & n.286.

The Trustee also refers to his reply to Defendant's response and objection to Trustee's Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #81:**

81.    There is no record of any dividends being received by the IA business.  *Id.* ¶ 248.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

*See* Defendant's response and opposition to Trustee's Statement Nos. 72-73

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 80 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 80 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the 703 Account was solvent as late as November 2008.

The Trustee does not dispute the additional statements in Defendant's Response regarding the investments made through bank and brokerage accounts held in the name of BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of* customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶ 45–62; Dubinsky Report Figure 52 & n.286.

The Trustee also refers to his reply to Defendant's response and objection to Trustee's Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #82:**

82.    The IA Business did not have any legitimate income-producing activities.  The

only source of cash available for the IA Business to pay purported investment profits as well as

redemption requests from its customers was from cash that other IA Business customers

deposited in the 703 Account.  *Id.* ¶¶ 330–37.

**DEFENDANT'S RESPONSE:**

      **DISPUTED.**

      The characterization of the investment advisory business transactions in the 703 Account

is conclusory and misleading. The investments in the 703 Account were both income producing

and legitimate. Until December 2008 the funds in the 703 Account were sufficient to meet the

redemption requests of the investment advisory customers. *See also* Defendant's response and

opposition to Trustee's Statement Nos. 72-73.

**TRUSTEE'S REPLY:**

      Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 82 and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 82 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant also has not identified a percipient witness or expert witness in accordance with Fed.

R. Civ. P. 26 who can testify to support Defendant's contention that the 703 Account was solvent

as late as December 2008.

      The Trustee does not dispute the additional statements in Defendant's Response

regarding the investments made through bank and brokerage accounts held in the name of

BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of*

customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶

45–62; Dubinsky Report Figure 52 & n.286.

The Trustee also refers to his reply to Defendant's response and objection to Trustee's

Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #83:**

83.    These transactions rendered BLMIS insolvent.  By no later than December 2002,

its assets totaled approximately $1.82 billion and its liabilities totaled $11.9 billion.  *Id.* at

Section VII., ¶¶ 432–33, Table 13.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant objects to the use of the term "BLMIS" in this Statement as vague and

misleading. Moreover, this Statement is neither relevant nor material to a resolution of this

adversary proceeding. The solvency or insolvency of either BLMIS or the investment advisory

business in 2002 is entirely irrelevant.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 83, and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 83 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 83 are not relevant is

not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See*

*Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

**TRUSTEE'S STATEMENT #84:**

84.    In December 2008, BLMIS's capital had dwindled to the point where customer redemptions or withdrawal requests grossly exceeded the amounts it had on hand.  The customer property on hand at BLMIS as of December 11, 2008 was not sufficient to pay the claims of its customers.  *Id.* ¶¶ 40, 440–41.

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

   The term "dwindled" is misleading. The events in the financial markets led to a dramatic run on the investment advisory funds, which until then had been more than sufficient to meet customer withdrawals *See also* Defendant's response and opposition to Trustee's Statement Nos. 72-73.

**TRUSTEE'S REPLY:**

   Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 84 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 84 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the 703 Account was solvent as late as December 2008.

The Trustee does not dispute the additional statements in Defendant's Response regarding the investments made through bank and brokerage accounts held in the name of BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of* customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶ 45–62; Dubinsky Report Figure 52 & n.286.

The Trustee also refers to his reply to Defendant's response and objection to Trustee's Statement 8 above regarding Mr. Dubinsky.

### i.    The Transfers Were Made by Bernard L. Madoff Investment Securities LLC

**TRUSTEE'S STATEMENT #85:**

85.    BLMIS operated as a sole proprietorship prior to 2001.  In January 2001, the sole proprietorship was converted to a single member LLC, using the same SEC registrant number, 8-8132.  Cremona Decl., Ex. 3 (2001 SEC Amended Form BD).

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

BLMIS, as defined by the Trustee as the limited liability company, did not exist prior to 2001. *See also* Defendant's response and opposition to Trustee's Statement No. 10.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 85 because the document speaks for itself.  Consequently, Trustee Statement ¶ 85 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)).

The Trustee does not dispute the remaining statements set forth in Defendant's response. The Trustee alleged in his complaint that the business of Bernard L. Madoff Investment Securities was operated as a sole proprietorship until 2001 and that Defendant's accounts were open prior to that time.  *See* Complaint ¶ 21, Ex. B, *Picard v. Miller*, Adv. Pro. No. 10-04921 (CGM) (Bankr. S.D.N.Y., Nov. 12, 2010), ECF No. 1.

**TRUSTEE'S STATEMENT #86:**

86.    The bank statements for the JPMorgan Accounts listed the account holder as "Bernard L. Madoff" from December 1998 to September 2002, when the name was changed to "Bernard L. Madoff Investment Securities." Collura Decl., Attach. A (Collura Report) ¶¶ 20 n.7, 25 n.9.

**DEFENDANT'S RESPONSE:**

**NO DISPUTE.**

**TRUSTEE'S REPLY:**

Trustee Statement ¶ 86 should be deemed admitted under Local Rule 7056-1(d).

**TRUSTEE'S STATEMENT #87:**

87.    For the time period for which bank records were available (December 1998

through December 2008), the JPMorgan Accounts were used for customer deposits and

withdrawals—the business of the IA Business.  *Id.* ¶¶ 20–27; Dubinsky Decl., Attach. A

(Dubinsky Report) ¶ 340 n.285, Figure 52.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The 703 Account was also used to invest in T-Bills, short term derivatives, commercial

paper and other securities.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 87 and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 87 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

The Trustee does not dispute the additional statements in Defendant's Response

regarding the investments made through bank and brokerage accounts held in the name of

BLMIS or Madoff, and further avers that no investments were in fact made *on behalf of*

customers of the investment advisory business, including Defendant. *See, e.g.*, Collura Report ¶¶

45–62; Dubinsky Report Figure 52 & n.286.

**TRUSTEE'S STATEMENT #88:**

88.    For the time period for which bank records were available, the face of the bank

statements for the JPMorgan Accounts showed they were designated as "Commercial Checking"

accounts.  The statements were addressed to the attention of either Tony Tiletnick, a BLMIS

employee, or Daniel Bonventre, BLMIS's operations manager, at the BLMIS business address at

885 Third Avenue, New York, New York.  None of the statements were addressed to Madoff

personally.  Cremona Decl., Ex. 5 (Exemplar BLMIS Bank Statements 1998-2008); Dubinsky

Decl., Attach. A (Dubinsky Report) ¶ 340, Exs. 31–32.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

This Statement is more argument than fact. It is meant to imply that the JP Morgan

Accounts were not accounts held by the sole proprietorship notwithstanding the facts that the

checks and statements were all held in the name of the sole proprietorship as the owner and

payor.

The argument ignores the fact that a sole proprietorship, although owned by an

individual, can operate as a commercial enterprise. *See Rovira v. N.Y. Apparel Sales*, 01 CV

2231 (ILG), 2002 WL 1471557, 2002 U.S. Dist. LEXIS 13543, n 7, (E.D.N.Y. May 31, 2002)

("A sole proprietorship is simply '[a] business in which one person owns all the assets, owes all

the liabilities, and operates in his or her personal capacity.' Black's Law Dictionary 1398 (7th

ed. 1999). There is no reason a sole proprietorship cannot employ more than fifteen people . A

sole proprietorship is simply '[a] business in which one person owns all the assets, owes all the

liabilities, and operates in his or her personal capacity.' Black's Law Dictionary 1398 (7th ed.

1999). There is no reason a sole proprietorship cannot employ more than fifteen people."); *In re

McCormick,* 381 B.R. 594, 600 (Bankr. S.D.N.Y. 2008) (same); *UPS of Am., Inc. v. Net, Inc.,*

225 F.R.D. 416, 421 (E.D.N.Y. 2005)("An owner can establish that it has operated an entity as a

going business concern by showing, among other things: (1) that it is doing business under a

certain name; (2) the use of a checking account for the payment of business expenses; (3) the

maintenance of an office; (4) the funding of and borrowing from an account; or (5) bank

transactions that would support a business.") Accordingly, the argument that the bank accounts

after were identified as commercial accounts has no bearing on the issue of whether the accounts

were held at all times by a sole proprietorship doing business under either the name "Bernard L.

Madoff" or "Bernard L. Madoff Investment Securities."

Similarly, the mailing address for the statement, which remained constant from well

before the formation of BLMIS, has no bearing on the ownership of the account. The statements

of the JP Morgan accounts never bore the name of BLMIS.

Finally, the testimony of Mr. Dubinsky is inadmissible on this issue. *See* Defendant's

response and objection to Trustee's Statement No. 8.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 88 and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 88 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation

to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument

to their counterstatements." (citations omitted)*).

The Trustee also refers to his reply to Defendant's response and objection to Trustee's Statement 8 above regarding Mr. Dubinsky.

**TRUSTEE'S STATEMENT #89:**

89.     At all times after January 1, 2001, the JPMorgan Accounts were owned by BLMIS. Cremona Decl., Ex. 3 (2001 SEC Amended Form BD).

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

This is not a statement of fact. It is a legal conclusion that is thoroughly disputed *See* Defendant's response and opposition to Trustee's Statement No. 10.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 89 and it is therefore not controverted. Consequently, Trustee Statement ¶ 89 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)).

### E.     The Plea Allocutions

**TRUSTEE'S STATEMENT #90:**

90.     The plea allocutions of Madoff and BLMIS employees Frank DiPascali, David

Kugel, Irwin Lipkin, and Eric Lipkin, attached as Exhibits 7–12 to the Cremona Decl., further

establish that BLMIS did not conduct legitimate operations from its IA Business.

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

   Defendant objects to the admissibility of the cited portions of plea allocutions of Madoff

and former BLMIS employees. These portions of the allocutions would only be admissible if the

facts contained therein are "essential to the judgment." *See* FRE 803(22)(C); *In re Dreier LLP*,

2014 WL 47774, at *11 (Bankr. S.D.N.Y. Jan. 3, 2014) (Bernstein, J.) ("A prior judgment of

conviction may be used as prima facie evidence in a subsequent civil suit only with respect to

matters of fact or law 'necessarily decided by the conviction and the verdict on which it was

based.'"). Here, the Trustee seeks to admit the allocutions on the question of whether a Madoff

operated a Ponzi scheme. Whether a Ponzi scheme existed depends upon a showing of the

following: (1) little or no legitimate underlying business; (2) the promise of exorbitant returns;

(3) early scheduled payment of such returns to early (or "top") investors; (4) the need to attract

new money in order to pay the existing top investors. *See Orlick v. Kozyak (In re Fin. Federated*

*Title & Trust, Inc.),* 309 F.3d 1325, 1327 n.2 (11th Cir. 2002); *Balaber-Strauss v. Lawrence,* 264

B.R. 303, 305-06 (S.D.N.Y. 2001). The existence of a Ponzi scheme is not dependent on the

characterization of a lay person.

   In addition, Defendant objects to admission of the portions of the plea allocutions to the

extent the statements are exculpatory or non-self-inculpatory. Rule 804(b)(3) permits a court to

admit the statement of an unavailable witness if, when made, the statement so far tended to

subject the declarant to criminal liability that a reasonable person would not have made the statement unless he or she believed it to be true. Guilty plea allocutions are admissible under the rule. exculpatory or non-self-inculpatory statements lack the trustworthiness required for admissibility under Rule 804. *See Williamson v. United States*, 114 S. Ct. 2431, 2435-37 (1994) (the class of statements admissible under Rule 804(b)(3) is limited to those that are truly self-inculpatory, thereby excluding collateral or self-exculpatory matter.).

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 90 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 90 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)*).

**TRUSTEE'S STATEMENT #91:**

**Bernard L. Madoff**

91.    At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal action filed against him by the United States Attorney for the Southern District of New York.  Plea Allocution of Bernard L. Madoff, *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009) (the "Madoff

Allocution"), ECF No. 57 (attached as Exhibit 7 to Cremona Decl.).

**DEFENDANT'S RESPONSE:**

**NO DISPUTE.**

**TRUSTEE'S REPLY:**

Trustee Statement ¶ 91 should be deemed admitted under Local Rule 7056-1(d).

**TRUSTEE'S STATEMENT #92:**

92.     At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."  Cremona Decl., Ex. 7 (Madoff Allocution) at 23:14–23; 31:25–32:1.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Although Madoff used the term "Ponzi scheme" to describe the fraud he conducted, he used that term as a lay person without explanation of what he meant by the term and accordingly, the admission does not establish an admissible fact. Madoff was admitting guilt to the elements of investment company and broker fraud among other claims, not to a Ponzi scheme.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 92 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 92 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("*Rule 56.1 statements are not argument.* They should contain factual assertions with citation

to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument

to their counterstatements." (citations omitted)).

**TRUSTEE'S STATEMENT #93:**

93.     Madoff further testified at the plea hearing that he never invested his clients' funds

in securities, that he used funds on hand in the JP Morgan account to pay customer redemptions,

and that he created false trading confirmations and client account statements to cover up the fact

that he had not executed trades on behalf of BLMIS investment advisory clients.  Madoff stated:

> The essence of my scheme was that I represented to clients and prospective clients
> who wished to open investment advisory and individual trading accounts with me
> that I would invest their money in shares of common stock, options, and other
> securities of large well-known corporations, and upon request, would return to them
> their profits and principal.  Those representations were false for many years.  Up
> until I was arrested on December 11, 2008, I never invested these funds in the
> securities, as I had promised.  Instead, those funds were deposited in a bank account
> at Chase Manhattan Bank.  When clients wished to receive the profits they believed
> they had earned with me or to redeem their principal, I used the money in the Chase
> Manhattan bank account that belonged to them or other clients to pay the requested
> funds.  The victims of my scheme included individuals, charitable organizations,
> trusts, pension funds, and hedge funds.

*Id.* at 24:9–24.

**DEFENDANT'S RESPONSE:**

  **DISPUTED.**

  *See* Defendant's response and opposition to Trustee's Statement No. 90.

**TRUSTEE'S REPLY:**

  Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 93 and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 93 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.* They should contain factual assertions with citation

to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument

to their counterstatements." (citations omitted)).

**TRUSTEE'S STATEMENT #94:**

94.    Beginning in the early 1990s, Madoff represented to IA Business customers that he

was using a split strike conversion strategy based on blue-chip securities. *Id.* at 25:18–24.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

*See* Defendant's response and opposition to Trustee's Statement No. 90.

**TRUSTEE'S REPLY:**

**TRUSTEE'S STATEMENT #95:**

95.    Madoff further detailed his strategy as follows:

Through the split strike conversion strategy I promised to clients and prospective
clients that client funds would be invested in a basket of common stocks within the
Standard & Poors 100 index, a collection of the 100 largest publicly-traded
companies in terms of their market capitalization. I promised that I would select a
basket of stocks that would closely mimic the price movements of the Standard &
Poors 100 index. I promised that I would opportunistically time those purchases
and would be out of the market intermittently, investing client funds during these
periods in United States Government-issued securities, such as United States
Treasury bills. In addition, I promised that as part of the split strike conversion
strategy, I would hedge the investments I made in the basket of common stocks by
using client funds to buy and sell option contracts related to those stocks, thereby
limiting the potential client losses caused by unpredictable changes in stock prices.
In fact, I never made those investments I promised clients, who believed they were
invested with me in the split strike conversion strategy.

*Id.* at 25:25–26:18.

**DEFENDANT'S RESPONSE:**

    **DISPUTED.**

    *See* Defendant's response and opposition to Trustee's Statement No. 90.

**TRUSTEE'S REPLY:**

**TRUSTEE'S STATEMENT #96:**

    96.    BLMIS investment advisory customers received account statements from BLMIS

that purported to reflect securities transactions and investment returns that appeared as though their

investments with BLMIS were profitable.  Madoff explained:

> To further cover up the fact that I had not executed trades on behalf of my
> investment advisory clients, I knowingly caused false trading confirmations and
> client account statements that reflected the bogus transactions and positions to be
> created and sent to clients purportedly involved in the split strike conversion
> strategy, as well as other individual clients I defrauded who believed they had
> invested in securities through me.

*Id.* at 27:9–16.

**DEFENDANT'S RESPONSE:**

    **DISPUTED.**

    Defendant denies that the investment advisory customers received account statements

from BLMIS, as stated in the introduction to his testimony, which is not part of Madoff's

statement, implies. *See also* Defendant's response and opposition to Trustee's Statement No. 90.

**TRUSTEE'S REPLY:**

    Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 93 and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 93 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation

to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument

to their counterstatements." (citations omitted)).

## TRUSTEE'S STATEMENT #97:

97.    Madoff stated that the proprietary trading and market-making businesses were

engaged in legitimate trading.  *Id.* at 25:6–11.

## DEFENDANT'S RESPONSE:

NO DISPUTE.

## TRUSTEE'S REPLY:

Trustee Statement ¶ 97 should be deemed admitted under Local Rule 7056-1(d).

## TRUSTEE'S STATEMENT #98:

98.    Madoff also stated that funds from his investment advisory business were

transferred to the proprietary trading and market-making businesses, via his affiliated London

entity.  *Id.* at 29:12–22.

## DEFENDANT'S RESPONSE:

DISPUTED.

Defendant objects to this statement as neither material nor necessary for the

determination of this case.

## TRUSTEE'S REPLY:

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 98 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 98 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 98 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

**TRUSTEE'S STATEMENT #99:**

**Frank DiPascali**

99.    At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal action charging him with participating in and conspiring to perpetuate the Ponzi scheme.  Plea Allocution of Frank DiPascali, Jr., *United States v. DiPascali*, No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (the "DiPascali Allocution"), ECF No. 12 (attached as Exhibit 8 to Cremona Decl.).  Mr. DiPascali confirmed Madoff's explanation of the split-strike conversion strategy and that BLMIS never engaged in the strategy or executed the purported

trades reported on customer statements.  DiPascali stated:

> By the early 1990s Bernie Madoff had stable clients whose accounts he managed
> as an investment adviser.  He attracted a lot of these clients by telling them that the
> firm would apply a hedged investment strategy to their money.  The clients were
> told that the strategy involved purchasing what we call basket of blue chip common
> stocks. Hedging those investments by buying and selling option contracts, getting
> in and out of the market at opportune times and investing in government securities
> at other times. . . .   From at least the early 1990s through December of 2008, there
> was one simple fact that Bernie Madoff knew, that I knew, and that other people
> knew but that we never told the clients nor did we tell the regulators like the SEC.
> No purchases of [sic] sales of securities were actually taking place in their accounts.
> It was all fake.  It was all fictitious.  It was wrong and I knew it was wrong at the
> time, sir.

Cremona Decl., Ex. 8 (DiPascali Allocution) at 45:21–46:15.

**DEFENDANT'S RESPONSE:**

> **DISPUTED.**

Frank DiPascali was a cooperating defendant and witness, who bargained for a shorter

sentence in exchange for incriminating Madoff and other Madoff employees. Much of his

statement relied on by the Trustee is collateral to the elements of the guilty plea and is

exculpatory. *See* Defendant's response and objection to Trustee's Statement No. 90. Moreover,

Defendant objects to the characterization of DiPascali as "BLMIS employee."

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 99 and it

is therefore not controverted.  Consequently, Trustee Statement ¶ 99 should be deemed admitted

under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for

purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at

328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation

to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument

to their counterstatements." (citations omitted)).

**TRUSTEE'S STATEMENT #100:**

100.    At the plea hearing, DiPascali testified that he had been instructed to falsely

represent to clients that security trading was occurring in their investment accounts when in fact,

no trades were being made.  DiPascali explained:

> From our office in Manhattan at Bernie Madoff's direction, and together with
> others, I represented to hundreds, if not thousands, of clients that security trades
> were being placed in their accounts when in fact no trades were taking place at all.

*Id.* at 46:21–25.

> ***Most of the time the clients' money just simply went into a bank account in
> New York that Bernie Madoff controlled.  Between the early '90s and December
> '08 at Bernie Madoff's direction, and together with others, I did [the] follow[ing]
> things: On a regular basis I told clients over the phones and using wires that
> transactions on national securities exchanges were taking place in their account
> when I knew that no such transactions were indeed taking place.  I also took steps
> to conceal from clients, from the SEC, and from auditors the fact that no actual
> security trades were taking place and to perpetuate the illusion that they actually
> were.  On a regular basis I used hindsight to file historical prices on stocks then I
> used those prices to post purchase of sales to customer accounts as if they had been
> executed in realtime.  On a regular basis I added fictitious trade data to account
> statements of certain clients to reflect the specific rate of earn return that Bernie
> Madoff had directed for that client.

*Id.* at 47:5–22.

> ***… I knew no trades were happening.  I knew I was participating in a fraudulent
> scheme.  I knew what was happening was criminal and I did it anyway.

*Id.* at 52:2–5.

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

   *See* Defendant's response and objection to Trustee's Statement No. 90.

114

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 100 and it is therefore not controverted. Consequently, Trustee Statement ¶ 100 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)).

**TRUSTEE'S STATEMENT #101:**

**David Kugel**

101.    At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal action charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Plea Allocution of David L. Kugel, *United States v. Kugel*, No. 10-CR-228 (LTS) (S.D.N.Y. Nov. 21, 2011) (the "Kugel Allocution"), ECF No. 188 (attached as Exhibit 9 to Cremona Decl.).

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

David Kugel was an employee of BLMIS' proprietary trading business. He was also a cooperating defendant and witness, who faced 85 years of imprisonment and received a sentence

of 10 months of home confinement after his testimony helped convict five former co-workers. *See* Defendant's response and objection to Trustee's Statement No. 90.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 101 and it is therefore not controverted. Consequently, Trustee Statement ¶ 101 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)).

**TRUSTEE'S STATEMENT #102:**

102.    As far as back as the 1970s, there is no evidence that the purported investment transactions reflected in the customer statements of BLMIS's IA Business customers  ever occurred, and in fact the evidence reveals that those transactions did not and could not have occurred. Cremona Decl., Ex. 9 (Kugel Allocution) at 32:4–12 ("Specifically, beginning the early '70s, until the collapse of BLMIS in December 2008, I helped create fake, backdated trades. I provided historical trade information . . . to create fake trades that, when included on the account statements and trade confirmations of Investment Advisory clients, gave the appearance of profitable trading when in fact no trading had actually occurred.").

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

*See* Defendant's response and objection to Trustee's Statement Nos. 90, 101.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 102 and it is therefore not controverted. Consequently, Trustee Statement ¶ 102 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)).

**TRUSTEE'S STATEMENT #103:**

**Irwin Lipkin**

103.    At a plea hearing on November 8, 2012, in the case captioned *United States v. Irwin Lipkin*, No. 10-CR-228 (LTS), Irwin Lipkin, a former BLMIS accountant, pleaded guilty to a two-count criminal action charging him with securities fraud, falsifying the records of BLMIS, and making false statements in relation to documents required by ERISA. Plea Allocution of Irwin Lipkin, *United States v. Irwin Lipkin*, No. 10-CR-228 (LTS) (S.D.N.Y. Nov. 8, 2012) (the "Irwin Lipkin Allocution"), ECF No. 288 (attached as Exhibit 10 to Cremona Decl.). Mr. Lipkin

admitted that BLMIS's revenue was falsely inflated through fraudulent bookkeeping entries and annual audited reports.  Cremona Decl., Ex. 10 (Irwin Lipkin Allocution) at 30:23–31:3, 31:10–18, 31:24–32:5.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Irwin Lipkin was employed by Madoff from 1964 through 1998, prior to the formation of BLMIS. He was a cooperating defendant and witness who received a six month sentence in exchange for his cooperation in convicting co employees. *See* Defendant's response and objection to Trustee's Statement No. 90.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 103 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 103 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)*).

**TRUSTEE'S STATEMENT #104:**

**Eric S. Lipkin**

104.    At a plea hearing on June 6, 2011, in the case captioned *United States v. Eric S. Lipkin*, No. 10-CR-228 (LTS), Eric Lipkin, a former BLMIS payroll clerk, pleaded guilty to a six-count criminal action charging him with bank fraud, falsifying the records of BLMIS, conspiracy, and making false statements to facilitate a theft concerning ERISA.  Plea Allocution of Eric S. Lipkin, *United States v. Eric S. Lipkin*, No. 10-CR-228 (LTS) (S.D.N.Y. June 6, 2011) (the "Eric Lipkin Allocution"), ECF No. 148 (attached as Exhibit 11 to Cremona Decl.).

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant disputes the admissibility of the plea allocutions on which the Trustee relies. Eric Lipkin was also a cooperating defendant and witness. *See* Defendant's response and objection to Trustee's Statement No. 90.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 104 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 104 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)).

119

**TRUSTEE'S STATEMENT #105:**

105.    Mr. Eric Lipkin admitted that BLMIS created fake reports that replicated those of

the DTC, which provides clearance for nearly all equity, bond, government securities, mortgage-

backed securities, money market instruments, and over-the-counter derivative transactions in the

U.S. Market.  The purpose of these fake DTC reports was to purportedly confirm non-existent

positions in the IA accounts, and the fake reports were given to auditors and the SEC to mislead

them.  Cremona Decl., Ex. 11 (Eric Lipkin Allocution) at 32:4–10, 33:22–34:8.

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

Defendant disputes the admissibility of the plea allocutions on which the Trustee relies.

Eric Lipkin was also a cooperating defendant and witness. *See* Defendant's response and

objection to Trustee's Statement No. 90.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 105 and

it is therefore not controverted.  Consequently, Trustee Statement ¶ 105 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed

admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817

F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are

deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation

to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument

to their counterstatements." (citations omitted)).

**TRUSTEE'S STATEMENT #106:**

**Enrica Cotellessa-Pitz**

106.    At a plea hearing on December 19, 2011, in the case captioned *United States v. Cotellessa-Pitz,* No. 10-CR-228 (LTS), Enrica Cotellessa-Pitz, a former BLMIS accountant and comptroller, pleaded guilty to a four-count criminal action charging her with conspiracy to falsify the records of BLMIS, conspiracy to obstruct the IRS in the collection of income taxes, and conspiracy to make false filings with the SEC.  Plea Allocution of Enrica Cotellessa-Pitz, *United States v. Cotellessa-Pitz*, No. 10-CR-228 (LTS) (S.D.N.Y. Dec. 19, 2011) (the "Cotellessa-Pitz Allocution"), ECF No. 1512 (attached as Exhibit 12 to Cremona Decl.).

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

Enrica Cotellessa-Pitz was a cooperating defendant and witness who received no prison term in consideration for cooperation in convicting other employees. *See* Defendant's response and objection to Trustee's Statement No. 90.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 106 and it is therefore not controverted.  Consequently, Trustee Statement ¶ 106 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation

to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument

to their counterstatements." (citations omitted))*.

**TRUSTEE'S STATEMENT #107:**

107.    Ms. Cotellessa-Pitz admitted that IA Business customer money was funneled to

BLMIS's proprietary trading and market-making businesses to falsely inflate their revenue and

hide their losses.  Cremona Decl., Ex. 12 (Cotellessa-Pitz Allocution) at 31:12–32:12.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant objects to this statement as neither material nor necessary for the

determination of this case. Defendant also objects to the admission of her testimony *See*

Defendant's response and objection to Trustee's Statement No. 90.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 107 and

it is therefore not controverted.  Consequently, Trustee Statement ¶ 107 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed

admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817

F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are

deemed admitted").  Moreover, Defendant's contention that certain facts in Trustee Statement ¶

107 are not relevant is not a sufficient response or denial, and therefore the factual statement is

deemed admitted.  *See Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion

of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a

result, where a non-movant has merely objected to the materiality of a fact, and the Court has

concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008

WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely

objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the

substantive law will identify which facts are material.").

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.* They should contain factual assertions with citation

to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument

to their counterstatements." (citations omitted)).

## III.    The Miller Account BLMIS Transactions

**TRUSTEE'S STATEMENT #108:**

108.    Defendant is a resident of Palm Beach, Florida.  Answer ¶ 7, *Picard v. Miller*,

Adv. Pro. No. 10-04921 (SMB) (Bankr. S.D.N.Y. Aug. 17, 2015), ECF No. 48.[1]

**DEFENDANT'S RESPONSE:**

    **DISPUTED.**

Defendant does not dispute that he is a resident of Florida. However, The Defendant

objects to the Trustee's reliance on the answer to the complaint (*Picard v. Miller*, Adv. Pro. No.

10-04921 (SMB) (Bankr. S.D.N.Y. Aug. 17, 2015), ECF No. 48) that was prepared prior to

completion of discovery regarding the ownership of investment advisory accounts and the

corporate structure of Madoff's businesses. The evidence that investment advisory business was

not transferred to BLMIS supersedes characterization of account in the answer.

---

[1] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Miller*, Adv. Pro. No.
10-04921 (CGM) (Bankr. S.D.N.Y.).

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 108, because the Answer speaks for itself and is a binding admission.  Consequently, Trustee Statement ¶ 108 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the investment advisory business was operated by Madoff as a sole proprietorship after January 2001.

**TRUSTEE'S STATEMENT #109:**

109.    Defendant was a customer of the IA Business and held BLMIS Account No. 1ZR284 (the "Miller Account") in the name of "NTC & CO. FBO Stanley T. Miller (xx0438)." *Id.* ¶ 7.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant does not dispute that account No. 1ZR284 was held in the name of NTC & Co., also known under various other names, including, but not limited to, Fiserv, Inc., TIB Holdings, Inc., Fiserv Investment Support Services, First Trust Corporation, Retirement Accounts Inc., Fiserv Trust Company, Trust Industrial Bank, Lincoln Trust Company, and Pensco Trust Company, collectively "Retirement Accounts", as trustee/custodian of an individual retirement account ("IRA"). Defendant objects to the characterization of the account

as the "Miller Account" because the account was held by, and managed and directed by which

was the recipient of all transfers from the Chase Accounts.

Defendant objects to the characterization of the account as a BLMIS account.  In the

initial complaint filed on December 2, 2010 (the "Initial Complaint"), the Trustee acknowledged

Retirement Accounts as the holder of the account: "FBO Defendant holds a BLMIS account in

the name, "NTC & Co. FBO Stanley T Miller (XXXXXX)," with the account address reported

as Denver, Colorado." *Picard v. Miller*, Adv. Pro. No. 10-04921 (SMB) (Bankr. S.D.N.Y. Aug.

17, 2015), [ECF No.1].

The Defendant further objects to the Trustee's reliance on the answer to the Complaint,

*Picard v. Miller*, Adv. Pro. No. 10-04921 (SMB) (Bankr. S.D.N.Y. Aug. 17, 2015), ECF No.

48) that was prepared prior to completion of discovery regarding the ownership of investment

advisory accounts and the corporate structure of Madoff's businesses. The evidence that

investment advisory business was not transferred to BLMIS supersedes the characterization of

the account in the answer.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 109,

because the Answer speaks for itself and is a binding admission.  Consequently, Trustee

Statement ¶ 109 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d)

(stating that facts shall be deemed admitted for purposes of the motion unless "specifically

controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not

explicitly denied by plaintiff are deemed admitted").

**TRUSTEE'S STATEMENT #110:**

110.    NTC & Co. (also known under various other names, including, but not limited to,

Fiserv, Inc., TIB Holdings, Inc., Fiserv Investment Support Services, First Trust Corporation,

Retirement Accounts Inc., Fiserv Trust Company, Trust Industrial Bank, Lincoln Trust

Company, and Pensco Trust Company, collectively, "NTC") was the former custodian of an

Individual Retirement Account ("IRA") for the benefit of Defendant.  Compl. ¶ 2, ECF No. 1.

On May 11, 2011, NTC was dismissed as a defendant.  Stipulation and Order for Voluntary

Dismissal, ECF No. 10.

**DEFENDANT'S RESPONSE:**

> **NO DISPUTE.**

As stated above in Defendant's response to Trustee's Statement No. 109, the IRA

account was held by, and managed and directed by Retirement Accounts, which was the initial

transferee of all transfers from the JP Morgan Accounts. *See* Ruegger Decl., ¶9, Exhibit F, 509

Account Checks.

**TRUSTEE'S REPLY:**

Trustee Statement ¶ 110 should be deemed admitted under Local Rule 7056-1(d).

> **A.    Analysis of the Miller Account**

**TRUSTEE'S STATEMENT #111:**

111.    Lisa Collura was retained by the Trustee to reconcile the cash transactions

reflected on the statements of the BLMIS customer accounts with available records and trace the

flow of those funds.  Collura Decl., Attach. A (Collura Report) ¶ 7; Collura Decl., Attach. B

(Expert Report of Lisa M. Collura, CPA, CFE, CFF, dated January 26, 2017 ("Collura Miller

Report")) ¶ 7.

**DEFENDANT'S RESPONSE:**

> **DISPUTED.**

The Defendant does not dispute that Lisa Collura was retained by the Trustee to reconcile the cash transactions on statements of customers of the investment advisory business, but disputes that the customers were customers of BLMIS. Furthermore, the Collura Report is inadmissible as evidence of the ownership of bank accounts or customer accounts because Ms. Collura lacks the relevant education, experience and expertise to opine on business and bank account ownership. See Collura Dec.(Collura Report,) Attach. A, Exhibit 1. In addition, Ms. Collura's report is inadmissible as evidence of alleged transfers to the Defendant because Ms. Collura failed to review a single cash transfer to the Defendant and instead only reviewed checks to Retirement Accounts. *See* Collura Miller Report, Attach. B, Exhibit 7.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 111, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 111 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)).  Defendant's response incorrectly states that Collura, a forensic accountant with more than twenty years of experience in financial fraud investigations and cases, is not a proper expert when she has been previously qualified as "an

expert in the area of forensic accounting." *Nelson*, 610 B.R. at 210; *see also Picard v. Merkin*, 581 B.R. 370, 386 (Bank. S.D.N.Y. 2017) (denying motion in limine to exclude portions of the Collura Report relating to tracing methodologies and her calculations of the immediate and mediate transfers utilizing those methodologies).

The Trustee does not dispute the additional statements in Defendant's Response that Collura reviewed checks to Retirement Accounts, and further avers she also reviewed third party records from Retirement Accounts, including quarterly account statements and documents related to the cash transactions in the BLMIS customer account held for the benefit of Defendant. *See* Collura Miller Report ¶ 40.

**TRUSTEE'S STATEMENT #112:**

112.    For both reconciliation and tracing analyses, Collura reviewed available third-party bank records.  These bank records include hundreds of thousands of pages of BLMIS bank statements, wire transfer data, cancelled checks, and deposit slips.  Collura Decl., Attach A (Collura Report) ¶ 10.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant does not dispute that Ms. Collura reviewed thousands of pages of bank statements, wire transfer data, cancelled checks, and deposit slips, but disputes the assertion that these documents were BLMIS documents. In addition, the Collura reports are inadmissible as evidence of ownership as stated above in the Defendant's response and objection to Trustee's Statement No. 111.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 112, and it is therefore not controverted. Consequently, Trustee Statement ¶ 112 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("*"Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted))*. Defendant's response incorrectly states that Collura, a forensic accountant with more than twenty years of experience in financial fraud investigations and cases, is not a proper expert when she has been previously qualified as "an expert in the area of forensic accounting." *Nelson*, 610 B.R. at 210; *see also Merkin*, 581 B.R. at 386 (denying motion in limine to exclude portions of the Collura Report relating to tracing methodologies and her calculations of the immediate and mediate transfers utilizing those methodologies).

The Trustee does not dispute the additional statements in Defendant's Response that Collura reviewed checks to Retirement Accounts, and further avers she also reviewed third party records from Retirement Accounts, including quarterly account statements and documents related to the cash transactions in the BLMIS customer account held for the benefit of Defendant. *See* Collura Miller Report ¶ 40.

**TRUSTEE'S STATEMENT #113:**

113.    The reconciliation of the customer statements and bank records was conducted to determine whether the cash transactions on the BLMIS customer statements were accurately reflected as cash transactions—cash deposits or cash withdrawals.  *Id.* ¶¶ 15, 31.

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

   The Defendant does not dispute that a reconciliation exercise was conducted but disputes that the reconciliation was conducted of customer accounts of BLMIS. In addition, the Collura Report and the Collura Miller Report are inadmissible as evidence of ownership as stated above in the Defendant's response and objection to Trustee's Statement No. 111.

**TRUSTEE'S REPLY:**

   Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 113, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 113 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

   Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)).  Defendant's response incorrectly states that Collura, a forensic accountant with more than twenty years of experience in financial fraud investigations and cases, is not a proper expert when she has been previously qualified as "an

expert in the area of forensic accounting." *Nelson*, 610 B.R. at 210; *see also Merkin*, 581 B.R. at

386 (denying motion in limine to exclude portions of the Collura Report relating to tracing

methodologies and her calculations of the immediate and mediate transfers utilizing those

methodologies).

The Trustee does not dispute the additional statements in Defendant's Response that

Collura reviewed checks to Retirement Accounts, and further avers she also reviewed third party

records from Retirement Accounts, including quarterly account statements and documents

related to the cash transactions in the BLMIS customer account held for the benefit of Defendant.

*See* Collura Miller Report ¶ 40.

**TRUSTEE'S STATEMENT #114:**

114.    Collura confirmed that the deposit and withdrawal transactions identified on the

BLMIS customer statements corresponded to transactions on the available third-party bank

records in the same amount, on or around the same date, and to or for the benefit of the same

customer. *Id.* ¶ 22; Collura Decl., Attach. B (Collura Miller Report) ¶¶ 12–14, 16.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant does not dispute that a reconciliation exercise was conducted but dispute

that the reconciliation was conducted of customer accounts of BLMIS. In addition, the Collura

Reports are inadmissible as evidence of ownership as stated above in the Defendant's response

and objection to Trustee's Statement No. 111.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 114, and

it is therefore not controverted.  Consequently, Trustee Statement ¶ 143 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed

admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817

F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are

deemed admitted").

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted)).  Defendant's response incorrectly states that

Collura, a forensic accountant with more than twenty years of experience in financial fraud

investigations and cases, is not a proper expert when she has been previously qualified as "an

expert in the area of forensic accounting."  *Nelson*, 610 B.R. at 210; *see also Merkin*, 581 B.R. at

386 (denying motion in limine to exclude portions of the Collura Report relating to tracing

methodologies and her calculations of the immediate and mediate transfers utilizing those

methodologies).

The Trustee does not dispute the additional statements in Defendant's Response that

Collura reviewed checks to Retirement Accounts, and further avers she also reviewed third party

records from Retirement Accounts, including quarterly account statements and documents

related to the cash transactions in the BLMIS customer account held for the benefit of Defendant.

*See* Collura Miller Report ¶ 40.

**TRUSTEE'S STATEMENT #115:**

115.    Collura reviewed over 225,000 transactions on the customer statements, and over

150,000 transactions on the bank records.  She kept track of these transactions by assigning a

unique identifier to each of the cash transactions on the customer statements and a different

unique identifying number to all of the transactions in the bank records. Collura Decl., Attach. A

(Collura Report) ¶¶ 10, 23.

**DEFENDANT'S RESPONSE:**

       **DISPUTED.**

       The Defendant does not dispute that Ms. Collura conducted a review, but disputes that

the process described in the Statement is material or necessary for the determination of this case.

*See also* Defendant's responses and objections to Trustee's Statement No. 111.

**TRUSTEE'S REPLY:**

       Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 115, and

it is therefore not controverted. Consequently, Trustee Statement ¶ 115 should be deemed

admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed

admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817

F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are

deemed admitted"). Moreover, Defendant's contention that certain facts in Trustee Statement ¶

115 are not relevant is not a sufficient response or denial, and therefore the factual statement is

deemed admitted. *See Zhao-Royo*, 2017 WL 149981, at *2, n.2 ("The materiality of an assertion

of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a

result, where a non-movant has merely objected to the materiality of a fact, and the Court has

concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008

WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely

objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the

substantive law will identify which facts are material.").

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at \*3

("*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted))*.*  Defendant's response incorrectly states that

Collura, a forensic accountant with more than twenty years of experience in financial fraud

investigations and cases, is not a proper expert when she has been previously qualified as "an

expert in the area of forensic accounting."  *Nelson*, 610 B.R. at 210; *see also Merkin*, 581 B.R. at

386 (denying motion in limine to exclude portions of the Collura Report relating to tracing

methodologies and her calculations of the immediate and mediate transfers utilizing those

methodologies).

The Trustee does not dispute the additional statements in Defendant's Response that

Collura reviewed checks to Retirement Accounts, and further avers she also reviewed third party

records from Retirement Accounts, including quarterly account statements and documents

related to the cash transactions in the BLMIS customer account held for the benefit of Defendant.

*See* Collura Miller Report ¶ 40.

**TRUSTEE'S STATEMENT #116:**

116.    Of the over 225,000 transactions reflected on BLMIS customer statements from

December 1998 to December 2008, Collura was able to reconcile 99.01% of these cash

transactions to BLMIS bank records.  *Id.* ¶¶ 15, 31.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant does not dispute that a reconciliation exercise was conducted but disputes

that the reconciliation was conducted of customer accounts of BLMIS or BLMIS bank records.

In addition, the Collura Report and the Collura Miller Report are inadmissible as evidence of

ownership as stated above in the Defendant's response and objection to Trustee's Statement No.

111.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 116, and

it is therefore not controverted.  Consequently, Trustee Statement ¶ 116 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed

admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817

F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are

deemed admitted").  Defendant also has not identified a percipient witness or expert witness in

accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that the

Collura's reconciliation did not involve customer accounts of BLMIS or BLMIS bank records.

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted))*.  Defendant's response incorrectly states that

Collura, a forensic accountant with more than twenty years of experience in financial fraud

investigations and cases, is not a proper expert when she has been previously qualified as "an

expert in the area of forensic accounting."  *Nelson*, 610 B.R. at 210; *see also Merkin*, 581 B.R. at

386 (denying motion in limine to exclude portions of the Collura Report relating to tracing

methodologies and her calculations of the immediate and mediate transfers utilizing those methodologies).

The Trustee does not dispute the additional statements in Defendant's Response that Collura reviewed checks to Retirement Accounts, and further avers she also reviewed third party records from Retirement Accounts, including quarterly account statements and documents related to the cash transactions in the BLMIS customer account held for the benefit of Defendant. *See* Collura Miller Report ¶ 40.

**TRUSTEE'S STATEMENT #117:**

117.    For Collura's reconciliation analysis with respect to Defendant, she analyzed the cash transactions in the Miller Account from November 1998 to December 2008.  During this time period, the customer statements for the Miller Account reflected 70 cash deposit and withdrawal transactions, consisting of five cash deposits and 65 cash withdrawals.  Of the 70 cash transactions reflected on the customer statements for the Miller Account, 69 occurred in the ten-year period, December 1998 to December 2008, for which there were available BLMIS bank records.  Collura Decl., Attach. B (Collura Miller Report) ¶¶ 16, 33–35, Ex. 7.

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

The Collura Miller Report only reports cash transactions from the JP Morgan Accounts to Retirement Accounts. None of the checks reviewed by Ms. Collura were made payable to the Defendant or endorsed by him. Moreover, the Defendant disputes that the records reviewed by Ms. Collura were BLMIS bank records. *See also* Defendant's response and objections to Trustee's Statement No. 111. *See* Ruegger Decl., ¶9, Exhibit F, 509 Account Checks.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 117, and it is therefore not controverted. Consequently, Trustee Statement ¶ 117 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that Collura did not review BLMIS bank records.

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)). Defendant's response incorrectly states that Collura, a forensic accountant with more than twenty years of experience in financial fraud investigations and cases, is not a proper expert when she has been previously qualified as "an expert in the area of forensic accounting." *Nelson*, 610 B.R. at 210; *see also Merkin*, 581 B.R. at 386 (denying motion in limine to exclude portions of the Collura Report relating to tracing methodologies and her calculations of the immediate and mediate transfers utilizing those methodologies).

The Trustee does not dispute the additional statements in Defendant's Response that Collura reviewed checks to Retirement Accounts, and further avers she also reviewed third party records from Retirement Accounts, including quarterly account statements and documents

related to the cash transactions in the BLMIS customer account held for the benefit of Defendant. *See* Collura Miller Report ¶ 40.

**TRUSTEE'S STATEMENT #118:**

118.    She reconciled all 70 cash transactions reflected on the customer statements for the Miller Account to available BLMIS bank records, documentation contained in BLMIS customer files, and/or documents produced to the Trustee related to the Miller Account.  *Id.* ¶¶ 16, 33–43, Ex. 10; *see also id.*, Ex. 8.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant does not dispute that Ms. Collura conducted a reconciliation but disputes that bank records, documentation contained in customer files, and/or documents produced to the Trustee related to the Miller Account evidence transfers to the Defendant or were BLMIS documents. All of the evidence of cash transactions reveals that the so-called Miller Account was held and managed by Retirement Accounts. All requests for withdrawals and other communications to Madoff were made by and the checks from the 509 Account were made payable to, endorsed by Retirement Accounts and deposited in its account. *See* Ruegger Decl., ¶9, Exhibit F, 509 Account Checks.

Exhibit 8 referred to in the Trustee's Statement demonstrates both that Retirement Accounts was the initial transferee of the transfers and that customers were customers of Bernard L. Madoff. The Exhibit is a request from Retirement Accounts dated November 3, 2008 sent to Bernard L. Madoff for a distribution of $60,000 to be sent to the "owner's address" which is the address of Retirement Accounts. All of the transactions from the account were similarly requested and processed.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 118, and

it is therefore not controverted.  Consequently, Trustee Statement ¶ 118 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed

admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817

F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are

deemed admitted").  Defendant also has not identified a percipient witness or expert witness in

accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that

Collura did not review BLMIS bank records.

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted))*.*  Defendant's response incorrectly states that

Collura, a forensic accountant with more than twenty years of experience in financial fraud

investigations and cases, is not a proper expert when she has been previously qualified as "an

expert in the area of forensic accounting."  *Nelson*, 610 B.R. at 210; *see also Merkin*, 581 B.R. at

386 (denying motion in limine to exclude portions of the Collura Report relating to tracing

methodologies and her calculations of the immediate and mediate transfers utilizing those

methodologies).

The Trustee does not dispute the additional statements in Defendant's Response that

Collura reviewed checks to Retirement Accounts, and further avers she also reviewed third party

records from Retirement Accounts, including quarterly account statements and documents

related to the cash transactions in the BLMIS customer account held for the benefit of Defendant.

*See* Collura Miller Report ¶ 40.

**TRUSTEE'S STATEMENT #119:**

119.    Based on her review of documents contained in the customer file maintained at

BLMIS for the Miller Account, Collura did not find any instance of Defendant communicating to

BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the

customer statements for the Miller Account.  *Id.* ¶¶ 39, 44.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant disputes that the relevant customer files are BLMIS documents.

Moreover, Ms. Collura cannot identify any communications from the Defendant regarding the

account after it was opened because all communications regarding the account came from

Retirment Accounts. *See* Ruegger Dec.¶21, Exhibit Q, telephone record logs. Moreover, the

records indicate that the Defendant did notify Madoff of a missing check.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 118, and

it is therefore not controverted.  Consequently, Trustee Statement ¶ 118 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed

admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817

F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are

deemed admitted").  Defendant also has not identified a percipient witness or expert witness in

accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that

Collura did not review BLMIS bank records.

08-01789-cgm    Doc 20522    Filed 05/26/21    Entered 05/26/21 18:18:12    Main Document
Pg 141 of 155

The Trustee does not dispute that communications regarding Defendant's customer account came from Retirement Accounts, but further avers that Defendant's response that he directly notified Madoff of a missing check, confirms that he exercised dominion and control over the BLMIS customer account that was held for his benefit.

**TRUSTEE'S STATEMENT #120:**

120.    For Collura's tracing analysis with respect to Defendant, she analyzed the cash withdrawals from the Miller Account during the two years prior to December 11, 2008 (the "Two-Year Period"), totaling $2,000,000.  *Id.* ¶¶ 45–49.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Trustee's Statement fails to disclose Ms. Collura's tracing analysis involved tracing of cash withdrawals received by and deposited into Retirement Accounts, not the Defendant's account. Ms. Collura states:

> Based on my review and analysis of the transactions reflected in the "Account Transactions" section of the NTC quarterly account statements related to the Miller Account, $2,000,000 of the total cash withdrawals reflected on the customer statements for the Miller Account during the Two Year Period first went from BLMIS to NTC, as custodian for the IRA held by the Defendant, which is consistent with the results of my tracing analysis described above.

Collura Decl., Attach. B (Collura Miller Report) ¶51.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 120 because the Collura Miller Report speaks for itself.  Consequently, Trustee Statement ¶ 120 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also*

141

*Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").

**TRUSTEE'S STATEMENT #121:**

121.    Based on available bank records from BLMIS, Collura traced 100% of the total amount of cash withdrawals reflected on the customer statements for the Miller Account during the Two-Year Period to NTC, of which: (i) $1,000,000 then flowed from NTC to Defendant, the IRA account holder, as distributions; and (ii) the remaining $1,000,000 was used to purchase shares in an Austin Capital Safe Harbor Offshore Fund on behalf of Defendant. *Id.* ¶¶ 16, 49–53, Exs. 9–11.

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

Defendant disputes that the bank records were records of BLMIS or that they evidence the flow of funds other than to Retirement Accounts. *See also* Defendant's responses and oppositions to Trustee's Statement Nos. 111-120.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 121 because the documents speak for themselves.  Consequently, Trustee Statement ¶ 121 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention

that Collura did not review BLMIS bank records, or that those bank records do not show the flow

of funds other than to Retirement Accounts.

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted))*.*  Defendant's response incorrectly states that

Collura, a forensic accountant with more than twenty years of experience in financial fraud

investigations and cases, is not a proper expert when she has been previously qualified as "an

expert in the area of forensic accounting."  *Nelson*, 610 B.R. at 210; *see also Merkin*, 581 B.R. at

386 (denying motion in limine to exclude portions of the Collura Report relating to tracing

methodologies and her calculations of the immediate and mediate transfers utilizing those

methodologies).

**TRUSTEE'S STATEMENT #122:**

122.    Matthew Greenblatt oversaw the task of reconstructing BLMIS's books and

records and calculating the principal balance for each BLMIS account (the "Principal Balance

Calculation").  Greenblatt's Principal Balance Calculation applied the Net Investment Method

(the Trustee's cash in/cash out net equity methodology), which takes into account all of the

customer deposits as additions to principal and all of the customer withdrawals or inter-account

transfers as reductions to principal.  Declaration of Matthew B. Greenblatt, dated April 14, 2021

("Greenblatt Decl."), Attach. A (Expert Report of Matthew G. Greenblatt, CPA/CFF, CFE dated

November 15, 2012 ("Greenblatt Report")) ¶¶ 4–5; *see also Sec. Inv'r Prot. Corp. v. Bernard L.

Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec.)*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010).

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

   Defendant does not deny that Greenblatt performed a series of tasks. However, Defendant

disputes the admissibility of the documents on which the Statement is based. The Principal

Balance Calculations are derived from hearsay (Fed. R. Evid. 801, 802). Mr. Greenblatt has no

personal knowledge of the transactions involved and the documents produced by Madoff to the

investment advisory customers were fraudulent. Summaries derived from inadmissible hearsay

cannot constitute a Rule 1006 summary. *U.S. v. Groysan*, 766 F.3d 147, 156 (2d Cir 2014)

(reversing a conviction based on Government's improper reliance on summary charts prepared

without personal knowledge and based on inherently unreliable documents); *Hackett v Hous.*

*Auth. of City of San Antonio*, 750 F2d 1308, 1312 (5th Cir. 1985) (citing *Soden v. Freightliner*

*Corp.*, 714 F.2d 498, 506 (5th Cir. 1983).

   Defendant also objects to admission of Mr. Greenblatt's report on the grounds that his

general methodology fails to take into account the fact that none of the withdrawals from

Account No 1ZR284 examined by Mr. Greenblatt were received by the Defendant.

**TRUSTEE'S REPLY:**

   Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 122, and

it is therefore not controverted.  Consequently, Trustee Statement ¶ 122 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed

admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817

F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are

deemed admitted").  Defendant also has not identified a percipient witness or expert witness in

accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that he did not receive the withdrawals from the customer account held on his behalf.

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)). Defendant's response incorrectly states that Greenblatt, a forensic accountant with more than twenty years of experience in financial fraud investigations and cases, is not a proper expert when he has been previously qualified as "an expert in the area of forensic accounting." *Nelson*, 610 B.R. at 210. Defendant's response also incorrectly states that Greenblatt relied upon inadmissible evidence, namely the BLMIS books and records, which have been admitted into evidence and relied upon multiple times in this SIPA liquidation. *See, e.g., Epstein Decision* at 7, *Nelson,* 610 B.R. at 223–26, *In re Bernard L. Madoff*, 592 B.R. at 527–29, *aff'd*, 605 B.R. at 584–87.

**TRUSTEE'S STATEMENT #123:**

123.    Greenblatt prepared a chronological listing of cash and principal transactions reflected in the BLMIS customer statements. Greenblatt relied on the customer statements because they are the most comprehensive and complete accounting of the debtor's books and records with respect to transaction-by-transaction line item detail of the cash and principal transactions and because the customer statements were sent to customers, giving customers the opportunity to object to the statements. Greenblatt Decl., Attach. A (Greenblatt Report) ¶¶ 10–12, 40–43.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

*See* Defendant's response and objection to Trustee's Statement No. 120.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 123, and

it is therefore not controverted.  Consequently, Trustee Statement ¶ 123 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed

admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817

F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are

deemed admitted").  Defendant also has not identified a percipient witness or expert witness in

accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that he did

not receive the withdrawals from the customer account held on his behalf.

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted))*.  Defendant's response incorrectly states that

Greenblatt, a forensic accountant with more than twenty years of experience in financial fraud

investigations and cases, is not a proper expert when he has been previously qualified as "an

expert in the area of forensic accounting."  *Nelson*, 610 B.R. at 210.  Defendant's response also

incorrectly states that Greenblatt relied upon inadmissible evidence, namely the BLMIS books

and records, which have been admitted into evidence and relied upon multiple times in this SIPA

liquidation.  *See, e.g.*, *Epstein Decision* at 7, *Nelson,* 610 B.R. at 223–26, *In re Bernard L.*

*Madoff*, 592 B.R. at 527–29, *aff'd*, 605 B.R. at 584–87.

**TRUSTEE'S STATEMENT #124:**

124.    The first monthly customer statement which reported dollar amounts for any securities allegedly held at month end was March of 1981.  Therefore, the full period for which the Principal Balance Calculation could be performed covers the period April 1, 1981 through December 11, 2008.  *Id.* ¶ 5 n.1.

**DEFENDANT'S RESPONSE:**

      **DISPUTED.**

      *See* Defendant's response and objection to Trustee's Statement No. 120.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 124 because the documents speak for themselves.  Consequently, Trustee Statement ¶ 124 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that he did not receive the withdrawals from the customer account held on his behalf.

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)).  Defendant's response incorrectly states that Greenblatt, a forensic accountant with more than twenty years of experience in financial fraud

investigations and cases, is not a proper expert when he has been previously qualified as "an

expert in the area of forensic accounting." *Nelson*, 610 B.R. at 210.  Defendant's response also

incorrectly states that Greenblatt relied upon inadmissible evidence, namely the BLMIS books

and records, which have been admitted into evidence and relied upon multiple times in this SIPA

liquidation. *See, e.g.*, *Epstein Decision* at 7, *Nelson,* 610 B.R. at 223–26, *In re Bernard L.*

*Madoff*, 592 B.R. at 527–29, *aff'd*, 605 B.R. at 584–87.

**TRUSTEE'S STATEMENT #125:**

125.    Greenblatt's Principal Balance Calculation for Defendant covered the period from

the Miller Account opening through December 11, 2008.  Greenblatt Decl., Attach. B (Expert

Report of Matthew B. Greenblatt, CPA/CFF, CFE dated January 26, 2017) ¶¶ 4, 7–15.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant objects to admission of Mr. Greenblatt's report and his conclusion with

respect to Account 1ZR284 on the grounds that his general methodology fails to take into

account the fact that none of the withdrawals from Account No 1ZR284 that Mr. Greenblatt

reviewed went directly to the Defendant.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 122, and

it is therefore not controverted.  Consequently, Trustee Statement ¶ 122 should be deemed

admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed

admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817

F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are

deemed admitted").  Defendant also has not identified a percipient witness or expert witness in

148

accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that he did not receive the withdrawals from the customer account held on his behalf.

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)). Defendant's response incorrectly states that Greenblatt, a forensic accountant with more than twenty years of experience in financial fraud investigations and cases, is not a proper expert when he has been previously qualified as "an expert in the area of forensic accounting." *Nelson*, 610 B.R. at 210. Defendant's response also incorrectly states that Greenblatt relied upon inadmissible evidence, namely the BLMIS books and records, which have been admitted into evidence and relied upon multiple times in this SIPA liquidation. *See, e.g., Epstein Decision* at 7, *Nelson,* 610 B.R. at 223–26, *In re Bernard L. Madoff*, 592 B.R. at 527–29, *aff'd*, 605 B.R. at 584–87.

**TRUSTEE'S STATEMENT #126:**

126.    Greenblatt determined that on November 9, 1998, the Miller Account was opened with a cash deposit via check in the amount of $3,000,000, all representing principal. *Id.* ¶ 11, Ex. 4.

**DEFENDANT'S RESPONSE:**

   **NO DISPUTE.**

**TRUSTEE'S REPLY:**

Trustee Statement ¶ 126 should be deemed admitted under Local Rule 7056-1(d).

**TRUSTEE'S STATEMENT #127:**

127.    After this initial cash deposit, there were four additional cash deposits into the Miller Account in the aggregate amount of $1,010,270, all representing principal.  *Id.* ¶ 12., Ex. 4.

**DEFENDANT'S RESPONSE:**

**NO DISPUTE.**

**TRUSTEE'S REPLY:**

Trustee Statement ¶ 127 should be deemed admitted under Local Rule 7056-1(d).

**TRUSTEE'S STATEMENT #128:**

128.    In sum, these five cash deposits provided the Miller Account with a total of $4,010,270 of principal.  *Id.* ¶ 13, Exs. 3–4.

**DEFENDANT'S RESPONSE:**

**NO DISPUTE.**

**TRUSTEE'S REPLY:**

Trustee Statement ¶ 128 should be deemed admitted under Local Rule 7056-1(d).

**TRUSTEE'S STATEMENT #129:**

129.    Between November 9, 1998 and December 11, 2008, the Miller Account reflected a total of 65 cash withdrawals totaling $4,680,063, which included both principal and fictitious profits.  *Id.* ¶ 14 n.3, Exs. 3–4.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant objects to admission of Mr. Greenblatt's report and his conclusion with respect to Account 1ZR284 on the grounds that his general methodology fails to take into account the fact that none of the withdrawals from Account No 1ZR284 were received directly

by the Defendant. In addition, Defendant object to the term "fictitious profits" to the extent that

it connotes a legal conclusion which is beyond the expertise of Mr. Greenblatt and is not a

statement of fact.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 129

because the documents speak for themselves.  Consequently, Trustee Statement ¶ 129 should be

deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be

deemed admitted for purposes of the motion unless "specifically controverted"); *see also*

*Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by

plaintiff are deemed admitted").  Defendant also has not identified a percipient witness or expert

witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention

that he did not receive the withdrawals from the customer account held on his behalf.

Defendant's response also contains improper legal argument in violation of Local Rule

7056-1, to which no response is required.  *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.*  They should contain factual assertions with citation to

the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to

their counterstatements." (citations omitted)).  Defendant's response incorrectly states that

Greenblatt, a forensic accountant with more than twenty years of experience in financial fraud

investigations and cases, is not a proper expert when he has been previously qualified as "an

expert in the area of forensic accounting."  *Nelson*, 610 B.R. at 210.  Defendant's response also

incorrectly states that Greenblatt relied upon inadmissible evidence, namely the BLMIS books

and records, which have been admitted into evidence and relied upon multiple times in this SIPA

liquidation. *See, e.g., Epstein Decision* at 7, *Nelson,* 610 B.R. at 223–26, *In re Bernard L. Madoff,* 592 B.R. at 527–29, *aff'd,* 605 B.R. at 584–87.

**TRUSTEE'S STATEMENT #130:**

130. The Principal Balance Calculation for the Miller Account demonstrated that between November 9, 1998 and December 11, 2008, $4,680,063 was withdrawn from BLMIS, which consisted of $4,010,270 of principal and an additional $669,793 of funds withdrawn in excess of principal, representing fictitious profits over the life of the Miller Account. *Id.* ¶ 15, Ex. 4.

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

Defendant disputes that any withdrawals were made from accounts held by BLMIS. *See also* Defendant's response and opposition to Trustee's Statement No. 129.

**TRUSTEE'S REPLY:**

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 130, and it is therefore not controverted. Consequently, Trustee Statement ¶ 130 should be deemed admitted under Local Rule 7056-1(d). *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman,* 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted"). Defendant also has not identified a percipient witness or expert witness in accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that he did not receive the withdrawals from the customer account held on his behalf.

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.,* 2006 WL 2136249, at *3

("'*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted))*. Defendant's response incorrectly states that Greenblatt, a forensic accountant with more than twenty years of experience in financial fraud investigations and cases, is not a proper expert when he has been previously qualified as "an expert in the area of forensic accounting." *Nelson*, 610 B.R. at 210. Defendant's response also incorrectly states that Greenblatt relied upon inadmissible evidence, namely the BLMIS books and records, which have been admitted into evidence and relied upon multiple times in this SIPA liquidation. *See, e.g.*, *Epstein Decision* at 7, *Nelson,* 610 B.R. at 223–26, *In re Bernard L. Madoff*, 592 B.R. at 527–29, *aff'd*, 605 B.R. at 584–87.

**TRUSTEE'S STATEMENT #131:**

131.    Within the Two-Year Period prior to December 11, 2008, $669,793 of fictitious profits was withdrawn from the Miller Account.  *Id.*

**DEFENDANT'S RESPONSE:**

   **DISPUTED.**

   *See* Defendant's response and opposition to Trustee's Statement No. 129.

**TRUSTEE'S REPLY:**

   Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 131, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 131 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Defendant also has not identified a percipient witness or expert witness in

153

accordance with Fed. R. Civ. P. 26 who can testify to support Defendant's contention that he did not receive the withdrawals from the customer account held on his behalf.

Defendant's response also contains improper legal argument in violation of Local Rule 7056-1, to which no response is required. *See U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("'*Rule 56.1 statements are not argument.* They should contain factual assertions with citation to the record . . . [parties] cannot evade the impact of accepting a fact by adding legal argument to their counterstatements." (citations omitted)). Defendant's response incorrectly states that Greenblatt, a forensic accountant with more than twenty years of experience in financial fraud investigations and cases, is not a proper expert when he has been previously qualified as "an expert in the area of forensic accounting." *Nelson*, 610 B.R. at 210. Defendant's response also incorrectly states that Greenblatt relied upon inadmissible evidence, namely the BLMIS books and records, which have been admitted into evidence and relied upon multiple times in this SIPA liquidation. *See, e.g., Epstein Decision* at 7, *Nelson,* 610 B.R. at 223–26, *In re Bernard L. Madoff*, 592 B.R. at 527–29, *aff'd*, 605 B.R. at 584–87.

**TRUSTEE'S STATEMENT #132:**

132.    It is therefore undisputed that, during the Two-Year Period, Defendant withdrew $669,793 in excess of principal deposited in the Miller Account. *Id.*

**DEFENDANT'S RESPONSE:**

**DISPUTED.**

The Defendant objects to this conclusion as neither material nor necessary for the determination of this case. The critical fact in this case is that the Defendant was not the initial transferee of the withdrawals.

**TRUSTEE'S REPLY:**

154

Defendant's response does not raise a genuine dispute with Trustee Statement ¶ 132, and it is therefore not controverted.  Consequently, Trustee Statement ¶ 132 should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1(d) (stating that facts shall be deemed admitted for purposes of the motion unless "specifically controverted"); *see also Buckman*, 817 F. Supp. 2d at 328 n.42 (noting that "56.1 statements not explicitly denied by plaintiff are deemed admitted").  Moreover, Defendant's contention that certain facts in Trustee Statement ¶ 132 are not relevant is not a sufficient response or denial, and therefore the factual statement is deemed admitted.  *See Zhao-Royo*, 2017 WL 149981, at *2, n.2  ("The materiality of an assertion of fact on a motion for summary judgment is a legal conclusion to be made by the Court.... [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); *see also Newmark*, 2008 WL 5054731, at *8 n.7 (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); *cf. Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").

Dated:  May 26, 2021
      New York, New York

                                                 */s/ Nicholas J. Cremona*
                                               BAKER & HOSTETLER LLP
                                               45 Rockefeller Plaza
                                               New York, New York 10111
                                               Telephone: (212) 589-4200
                                               Facsimile: (212) 589-4201
                                               Nicholas J. Cremona
                                               ncremona@bakerlaw.com

                                             *Attorneys for Irving H. Picard, Trustee*
                                             *for the Substantively Consolidated SIPA*
                                             *Liquidation of Bernard L. Madoff Investment*
                                             *Securities LLC and the Chapter 7 Estate of*
                                             *Bernard L. Madoff*