**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04921 (CGM) |
| Plaintiff, | |
| v. | |
| STANLEY T. MILLER, | |
| Defendant. | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND THE MEMORANDUM OF LAW FILED BY THE SECURITIES INVESTOR PROTECTION CORPORATION**

**DENTONS US LLP**

Arthur H. Ruegger
Carole Neville
1221 Avenue of the Americas
New York, New York 10016
Telephone: 212 768-6700
Facsimile:  212 768-6800
arthur.ruegger@dentons.com
carole.neville@dentons.com

*Attorneys for the Defendant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

    I.    TRANSFERS FROM DEFENDANT'S RAI IRA ACCOUNT ARE EXEMPT FROM THE TRUSTEE'S FRAUDULENT TRANSFER CLAIMS .......... 2

    II.    THE DEFENDANT HAS THE DEFENSES OF A SUBSEQUENT TRANSFEREE UNDER SECTION 550(B) ................................................................ 4

    III.    THE EXPERT REPORTS ARE INADMISSIBLE ON THE ISSUES OF CORPORATE STRUCTURE .................................................................................... 6

    IV.    SIPC'S UNSCHEDULED MEMORANDUM MERELY REPEATS THE TRUSTEE'S ARGUMENTS .......................................................................................... 9

    V.    THE COURT SHOULD NOT AWARD PREJUDGMENT INTEREST IN THIS CASE ..................................................................................................................... 10

CONCLUSION ........................................................................................................................ 13

ii

# TABLE OF AUTHORITIES

                                                                                     **Page(s)**

**Cases**

*Bear, Stearns Sec. Corp. v. Gredd*,
    275 B.R. 190 (Bankr. S.D.N.Y. 2002)..................................................................................2, 3

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007)..................................................................................................5, 6

*Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.)*,
    318 B.R. 276 (Bankr. S.D.N.Y. 2004)......................................................................................2

*Carrier Corp. v. Buckley (In re Globe Mfg. Corp.)*,
    567 F.3d 1291 (11th Cir. 2009) ..............................................................................................12

*Ehrlich v. Commercial Factors of Atlanta*,
    567 B.R. 684 (N.D.N.Y. 2017) ............................................................................................2, 3

*Goldberg v. Torell (In re Rundlett)*,
    149 B.R. 353 (Bankr. S.D.N.Y. 1993)......................................................................................2

*Golden v. The Guardian (In re Lenox Healthcare, Inc.)*,
    343 B.R. 96 (Bankr. D. Del. 2006) ..........................................................................................6

*Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors'*
    *Comm. of Bayou Group, LLC*,
    758 F. Supp. 2d 222 (S.D.N.Y. 2010)......................................................................................6

*Kramer v. Mahia (In re Khan)*,
    14-MC-01674 (PKC), 2016 U.S. Dist. LEXIS 156284 (E.D.N.Y. Nov. 10,
    2016) ......................................................................................................................................12

*Menotte v. Oxyde Chemicals, Inc. (In re JSL Chem. Corp.)*,
    424 B.R. 573 (Bankr. S.D. Fla. 2010).....................................................................................12

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016)......................................................................................10

*Picard v. Nelson*,
    619 B.R. 197 (Bankr. S.D.N.Y. 2019)......................................................................................5

*Picard v. Nelson*,
    Adv. Case No. 10-04377 (SMB)....................................................................................5, 6, 7

*Savage & Assoc. v. Mandl (In re. Teligent Inc.*,
    380 B.R. 324 (Bankr. S.D.N.Y. 2008)......................................................................................2


*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   2016 Bankr. LEXIS 3757 (Bankr. S.D.N.Y. Oct. 18, 2016) ...................................................10

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
   531 B.R. 439 (Bankr. S.D.N.Y. 2015) .........................................................................................4

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.)*,
   476 B.R. 715 (S.D.N.Y. 2012) ....................................................................................................4

*SIPC v. BLMIS (In re Madoff Sec.)*,
   No.12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013), aff'd, 773
   F.3d 411 (2d Cir.2015) ..............................................................................................................12

*Wagner v. Eberhard (In re Vaughn Co., Realtors)*,
   Adv. Pro. No. 11-01226, 2014 WL 271632, (Bankr. D.N.M. Jan. 23, 2014) ............................6

*Wickham Contracting Co. Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers,
AFL-CIO*,
   955 F.2d 831 (2d Cir. 1992) ................................................................................................11, 12

**Statutes**

11 U.S.C. § 546(e) ...........................................................................................................................12

11 U.S.C. § 548(a)(1)(A) ............................................................................................................2, 12

15 U.S.C. § 78eee(a)(3) ..................................................................................................................10

15 U.S.C. § 78lll(5) .........................................................................................................................10

CPLR § 5205 (c)(5) ..........................................................................................................................3

iv

Stanley T. Miller, (the "Defendant"), through his counsel, respectfully submits this Reply Memorandum (a) in further Support of the Defendant's Cross Motion for Summary Judgment (the "Cross Motion"), (b) in further opposition to Trustee's Motion for Summary Judgment dated April 14, 2021 (the "Trustee's Motion"), filed by Irving Picard (the "Trustee"), as trustee of Bernard L. Madoff Investment Securities LLC ("BLMIS"), and (c) in response to the Memorandum of Law in Support of the Trustee's Motion for Summary Judgment and in Support of the Trustee's Opposition to Defendant's Cross-Motion for Summary Judgment filed by the Securities Investor Protection Corporation ("SIPC") and respectfully represents as follows:

## PRELIMINARY STATEMENT

This reply memorandum addresses:

- the law in this jurisdiction and other issues raised by the Trustee in opposition to the Defendant's initial defense that the distributions to him from his individual retirement account ("IRA") are immune from the Trustee's fraudulent transfers claims because of the broad exemption for such IRAs from creditor claims under state law;

- the complete defense to liability pursuant to section 550(b) of the Bankruptcy Code, 11 U.S.C. §550(b)(1), afforded to the Defendant as a result of the dominion and control exercised by Retirement Accounts, Inc. ("Retirement Accounts") as custodian/ trustee over the funds in the IRA;

- the inadmissibility of the expert reports on issues of corporate structure and ownership of the investment advisory assets based on their admitted lack of expertise or other qualifications to testify on those issues and the absence of admissible, determinative evidence on these matters;

-the arguments raised by SIPC in its unscheduled memorandum which have been rejected by this Court and/or merely echo the Trustee's arguments; and

-the factors weighing against the imposition of interest as a matter of equity and law in the event that the Trustee prevails.

The Trustee devotes most of his reply memorandum to the Defendant's Cross Motion on an issue that is neither material nor necessary for the resolution of this case--whether Madoff traded U.S. Treasury Bills for the accounts of investment advisory customers. The Trustee's lengthy argument is simply a distraction and is not addressed herein.

I.  **TRANSFERS FROM DEFENDANT'S RAI IRA ACCOUNT ARE EXEMPT FROM THE TRUSTEE'S FRAUDULENT TRANSFER CLAIMS**

In this jurisdiction[1] the consequence of the clear state law exemption of the IRA from the claims of the creditor is that those assets are immune from fraudulent transfer actions because the creditors or entities to which the Defendant was or may have become liable have no interest in the

---

[1] The Trustee deliberately ignores the New York cases cited in the Defendant's Memorandum for this principle in order to argue the view of other circuits that reject the doctrine. The doctrine is alive and well in New York. *See* Defendant's Memorandum In Support Of His Cross Motion For Summary Judgment:

The consequence of the broad exemptions of defendant's property from the claims of creditors is that those assets are immune from fraudulent transfers actions because the creditors or entities to which the defendant was or becomes liable could have had no interest in the property. *See Bear, Stearns Sec. Corp. v. Gredd,* 275 B.R. 190, 196 (Bankr. S.D.N.Y. 2002)("We thus conclude that §548(a)(1)(A) only permits a trustee to avoid a transfer of an interest in property of a debtor when, but for the transfer, such property or interest would have been available to at least one of the debtor's creditors."); *Ehrlich v. Commercial Factors of Atlanta*, 567 B.R. 684 (N.D.N.Y. 2017)(payment to a secured creditor does not hinder, delay or defraud creditors because it does not put assets otherwise available in a bankruptcy distribution out of their reach.); *Savage & Assoc. v. Mandl (In re Teligent Inc.,*380 B.R. 324, 338 (Bankr. S.D.N.Y. 2008)(fraudulent transfer claims allow a trustee to recover property that would have otherwise been available to the estate and creditors.); *Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.)*, 318 B.R. 276, 283 (Bankr. S.D.N.Y. 2004)(no fraudulent transfer sustained to recover trust funds). Memorandum at 10 [ECF No. 106]

The only case cited by the Trustee in this jurisdiction rejected the application of the principle first because the asset was not exempt and second, the party who claimed the exemption as defense was a debtor who had failed to timely assert the exemption. . *Goldberg v. Torell (In re Rundlett),* 149 B.R. 353, 358 (Bankr. S.D.N.Y. 1993)

2

property. Contrary to the Trustee's assertion that the exemption is personal to the debtor (BLMIS) to assert or waive, the exemption is a complete defense to an action by a trustee, like this Trustee, against a third party defendant, like the Defendant in this case, to recover transfers by a debtor.

In *Bear, Stearns Sec. Corp. v. Gredd*, 275 B.R. 190, 196 (Bankr. S.D.N.Y. 2002), for example, the defendant Bear, Stearns demonstrated that none of the transfers sought by the Trustee would have been available to satisfy the Manhattan Investment Fund's creditors from Bear Stearns based on the operation of the federal securities laws governing short sales. Similarly, in *Ehrlich v. Commercial Factors of Atlanta,* 567 B.R. 684 (N.D.N.Y. 2017), the district court sustained the bankruptcy court's dismissal of a trustee's claims to recover the debtor's transfers to a secured creditor on the grounds that the funds were not available to satisfy the claims of other creditors. In New York, the defendant has a complete defense to a trustee's avoidance claim when the asset that the trustee seeks to recover is protected from creditor claims by federal or state law or even by unconditional pledge or agreement.

As explained in the Defendant's Cross Motion, the IRA is an asset that is protected from the claims of creditors under New York law. The Defendant predicted that the Trustee would dispute the legitimacy of the IRA exemption based on the exception to the exemption under CPLR §5205 (c)(5). The defendant addressed in his Cross Motion at length the principles of statutory interpretation, policy concerns regarding retirement assets, and case law interpreting the exception and demonstrating that it is inapplicable to this case. The Defendant refers the Court to the Defendant's Memorandum of Law in Support of His Cross Motion for Summary Judgment [ECF No. 105] pp.11-14. In sum, the Trustee offers a strained interpretation of the exception that would strip the beneficiary of retirement benefits, protected under both state and federal law, not because the Defendant gamed the system to avoid paying his creditors, but rather because without his

3

knowledge, his investments were managed by a fraudster. The exception to the clear statutory exemption from creditors' claims is inapplicable to the transfers to the Defendant from the IRA.

The Defendant also predicted that the Trustee would rely on two early decisions in this liquidation -- *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.)*, 476 B.R. 715 (S.D.N.Y. 2012) and *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 531 B.R. 439 (Bankr. S.D.N.Y. 2015) -- to support his position that his claims against the IRA can survive summary judgment.. Both of these decisions were reached on motions to dismiss, without a full factual record and without further development of the law. The Defendant distinguished these interlocutory rulings in Defendant's Memorandum of Law in Support of His Cross Motion for Summary Judgment [ECF No. 105] pp.14-16 and the analysis is incorporated herein.

## II. THE DEFENDANT HAS THE DEFENSES OF A SUBSEQUENT TRANSFEREE UNDER SECTION 550(B)

The Trustee does not dispute the key facts of the Defendant's defense with respect to the individual retirement account administered by Retirement Accounts, Inc. ("Retirement Accounts"). The Defendant opened his account with Madoff Securities in 1998 (without knowledge of the Madoff fraud) and simultaneously completely turned the administration of his IRA over to Retirement Accounts. *See* Defendant's Statement of Material Facts ¶¶9,10. The Trustee also does not dispute that the Defendant's account is a qualified IRA or that the Defendant's deposits of over $4 million constitute principal. *See* Trustee's Statement of Material Fact, ¶¶126 to 127 ("In sum, these five cash deposits provided the Miller Account with a total of $4,010,270 of principal. *Id.* ¶13, Exs. 3–4.)"); Defendant's Statement of Material Facts, ¶¶10, 11. The Trustee also does not dispute that in addition to providing all the services to maintain the account, for the majority of the ten years the Defendant's funds were deposited in the IRA, Retirement Accounts timed its requests from Madoff Securities so that it could use the float on the

4

funds in its account for 10 days to two weeks on the average before making distributions to the Defendant.

Retirement Accounts retained the right to use the funds received for distribution for its own protections, including the right to deduct unpaid fees. As shown on the Retirement Accounts Quarterly Reports for 2007 and 2008, attached to the Declaration of Arthur H. Ruegger as Exhibits N and O [ECF No. 106], Retirement Accounts continued to process all transactions in the IRA Account and deducted hefty fees, including fees for illiquid asset maintenance, from the distributions pending receipt or in lieu of receipt from Mr. Miller. By virtue of its actions with respect to the transfers from Madoff Securities, Retirement Accounts was able to use the funds for its own benefit and exercise dominion and control sufficient to qualify as an initial transferee even though it could not buy "uranium stocks" or "play the lottery."

Instead of addressing the undisputed facts of this case and the applicable law supporting the Defendant's position, the Trustee relies on the decision *Picard v. Nelson,* 619 B.R. 197, 238 (Bankr. S.D.N.Y. 2019) where the Court rejected the argument that the defendant was a subsequent transferee. That decision is inapposite for several reasons. First, neither the Court nor the Trustee refer to factual record in the *Nelson* case like the one in this case where Retirement Funds controlled the flow of funds in the IRA account for its own benefit for years. Second, courts in this jurisdiction have departed from the uranium stock and lottery ticket example of dominion and control to a broader definition, which encompasses Retirement Accounts' use of the funds in this case. *See, e.g., Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.),* 397 B.R. 1, 7 (S.D.N.Y. 2007) where the court rejected the notion that complete control over the subject property is necessary to establish transferee liability when Bear Stearns retained the transfers from the debtor so that it could use them to minimize its losses if it had to: "While we agree that Bear

5

Stearns was not free to use the transfers to buy "lottery tickets or uranium stocks," we reject the suggestion that the "dominion and control" test formally incorporates Judge Easterbrook's dicta." *Id*. at 7; *Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. of Bayou Group, LLC*, 758 F. Supp. 2d 222, 228 (S.D.N.Y. 2010)(clearing broker's rights over the fund monies while it held them was sufficient to qualify as dominion and control); *see also Golden v. The Guardian (In re Lenox Healthcare, Inc.)*, 343 B.R. 96, 103 (Bankr. D. Del. 2006) (To be a 'mere conduit,' a defendant must establish that it lacked dominion and control over the transfer because the payment simply passed through its hands and it had no power to redirect the funds to its own use.)

Finally, *Wagner v. Eberhard (In re Vaughn Co., Realtors)*, Adv. Pro. No. 11-01226, 2014 WL 271632, at *3 (Bankr. D.N.M. Jan. 23, 2014) cited in the *Nelson* decision and the cases collected therein are not based on New York law regarding the nature and treatment of IRAs. The *Wagner* case describes an IRA like a self-settled revocable trust, in which the beneficiary merges with its creator and the IRA and the individual are one and the same. However, New York law, particularly N.Y. EPTL §7-3.1, treats an IRA like a trust as an entity separate from the settlor as if created by a third party; it "shall not be considered a disposition in trust for the use of the creator, even though the creator is (i) in the case of an individual retirement account plan, an individual who is the settlor of and depositor to such account plan…." *Id.* In sum, the *Nelson* decision does not dispose of the Defendant's defense as a subsequent transferee.

### III. THE EXPERT REPORTS ARE INADMISSIBLE ON THE ISSUES OF CORPORATE STRUCTURE

The Trustee's Reply deliberately misstates the Defendant's objection to the admissibility of the expert's testimony. These reports may be admissible on certain accounting issues but they

6

are inadmissible on the primary issues of corporate structure of the Madoff businesses and the ownership of investment advisory assets.

The Trustee is well aware that his experts, Bruce Dubinsky, Matthew Greenblatt and Lisa Collura, are forensic accountants, who may testify to various financial aspects of Madoff's fraud. They are not experts who can credibly address the ownership issues. None of them have training or expertise in corporate formation or banking practices and regulations. This became absolutely clear during the trial in *Picard v. Nelson*, Adv.Proc. Case No. 10-04377 (SMB) on May 8. 2019 during the cross examination of Mr. Dubinsky by the defendants' counsel regarding the significance of the account names on 703 Account Statements -- all of which bore the name Bernard L. Madoff or Bernard L.Madoff Investment Securities, but not BLMIS,

> Q   Okay. So in the entire period applicable to the case against the Nelsons, J.P. Morgan Chase never issued a statement in the name of the LLC; isn't that true?
>
> A   Well, you showed me a statement that first started as Bernard L. Madoff when it was a sole proprietor. Then we both agreed that it became an LLC in January of 2001. There's then a name change on the J.P. Morgan Chase statements that then says Bernard L. Madoff Investment Securities; that certainly wouldn't be an individual. But I agree with you it does not say the letters LLC on any of these.
>
> Q   You're aware, are you not, that Mr. Madoff used the trade name Bernard L. Madoff Investment Securities prior to his formation of the LLC?
>
> A   Yes. I saw it on many documents, yes.

7

> Q   Okay.  And, in fact, we just pulled up something, DX-X,14   which is dated December 19th, 1996.  And do you see that even as far back as December 1996, he was using Bernard L. Madoff Investment Securities?
>
> A   I see that, yes.
>
> Q   So that was really just a trade name that he used, right?
>
> **MR. HUNT:  Objection, Your Honor**.  **This witness is not qualified to talk about trade names, corporate structure.**

*Picard v. Nelson*, [ECF No.190], Trial Transcript, May 8, 2019: 171:23-25;  172:1-22. (emphasis added)

Similarly, the Trustee's counsel cut off testimony from Ms. Collura with respect to the names on the 509 Account checks sent to the defendants and the ownership issue.  Ms. Collura, testified that she did not understand the difference between a trade name and a limited liability company and she never perceived any significance as to whether a document referred to the LLC or just referred to the trade name that Madoff used for three decades before the LLC was formed, "Bernard L. Madoff Investment Securities:."

> Q   Okay.  And you understand the difference between a trade name and a limited liability company?
>
> A   I --
>
> Q   You don't?
>
> A   No
>
> **MR. HUNT:  Ms. Collura's not designated to testify about corporate structures**.
>
> ….

8

> Q   So, when you analyzed the work to do, your report, you didn't perceive as any significance to whether a document said LLC or just said Bernard L. Madoff Investment Securities?
>
> A   No.

*Picard v. Nelson*, [ECF No.191], Trial Transcript, May 9, 2019; 24:1-15. (emphasis added) Without expertise in these matters, their narratives or opinions on these matters are inadmissible.

The Trustee has not offered admissible evidence on corporate matters, New York banking practices generally, or JP Morgan's practices in particular. The Trustee has not submitted evidence competent to establish that Madoff transferred the investment advisory business, including its bank and customer accounts to BLMIS.

## IV.   SIPC'S UNSCHEDULED MEMORANDUM MERELY REPEATS THE TRUSTEE'S ARGUMENTS

On May 26, 2021, SIPC filed a memorandum in support of the Trustee's motion for summary judgment and in opposition to the Defendant's cross motion that, with the exception of legislative history regarding the objective of SIPA, merely repeats the arguments in the Trustee's motion and rehashes arguments that have been previously[2] rejected by the Court.

In the absence of admissible and definitive evidence that Madoff transferred his investment advisory business to the limited liability company, both SIPC and the Trustee have argued that the corporate form was irrelevant, the language of SIPA is broad enough to include assets of the sole proprietorship or the substantive consolidation motion conveyed the power to the Trustee to recover property of the sole proprietorship. These arguments have been rejected by the Court in

---

[2] There is some irony in the fact that SIPC is emphasizing its duty to protect customers of a failed broker in a lawsuit by its trustee to collect funds from an innocent customer. Nothing in the legislative history compels SIPC to authorize recovery actions against innocent customers and until this liquidation proceeding, the SIPA only pursued the aiders and abettors of the broker's fraud.

9

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*, 557 B.R. 89, *108-9 (Bankr. S.D.N.Y. 2016). In denying SIPC's motion to reconsider the *Avellino* decision, the Court rejected SIPC's argument that the debtor in this liquidation proceeding included the sole proprietorship:

> The Court rejected the argument. It considered the definition of "debtor" under SIPA, parsed the language of the Protective Order and concluded that it covered BLMIS but did not cover Mr. Madoff. *Avellino*, 2016 WL 4040799, at *11. While Mr. Madoff and BLMIS were both SIPC members and used the same SEC registration number, "[t]he 'debtor' in a SIPA liquidation proceeding is 'a member of SIPC with respect to whom an application for a protective decree has been filed under section 78eee(a)(3) of this title.'" *Avellino*, 2016 WL 4040799, at *11 (quoting SIPA § 78lll(5)). The SIPA proceeding was brought against BLMIS, not Mr. Madoff, and BLMIS, not Mr. Madoff, was the "debtor" as defined in SIPA. *Id*.

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Proc. No. 10-05421 (SMB), 2016 Bankr. LEXIS 3757, *11-12 (Bankr. S.D.N.Y. Oct. 18, 2016). In the same denial of reconsideration, the Court rejected SIPC's reliance on the substantive consolidation order to combine the entities. *Id*. at *11-12.

The cases relied on by SIPC in its memorandum do not support the argument that "customer property" is broadly enough defined in SIPA to cover the property of the sole proprietorship. All involve non-customer property of the SIPA debtor, not property of an entity or individual that was not the SIPA debtor. *See* SIPC Memorandum at 5-7.

Finally, SIPC has not added any evidence that the property of the investment advisory business was property of the Debtor.

## V.    THE COURT SHOULD NOT AWARD PREJUDGMENT INTEREST IN THIS CASE

Even if the Trustee is successful in this adversary proceeding, there should be no prejudgment interest awarded against the Defendant as a matter of equity and law.

The Defendant is an 89-year-old man who is suffering from both Alzheimer and Parkinson diseases. His remaining funds and assets are insufficient to meet the judgment amount, let alone the Trustee's claim with interest. Moreover, these remaining assets are protected from creditors' claims by virtue of the Florida homestead protection and tenants by the entirety law.

The Defendant, unlike the defendants in virtually every case cited by the Trustee, was not either the perpetrator of the fraud or the cause of delay and damage to the plaintiff. The Defendant put his money in what he believed was a legitimate brokerage account for the protection and growth of his individual retirement account. After the Defendant was sued by the Trustee, he followed the protocol established by the Trustee along with hundreds of similarly situated customers for the resolution of his claim and the claims against him. Thereafter, he sought twice to have the Trustee dismiss his case, as the Trustee has done in over 350 other cases, based on financial hardship. These are not circumstances that warrant the Court's exercise of discretion to award prejudgment interest.

Applicable law also weighs against the imposition of interest in this case. The Second Circuit stated in *Wickham Contracting Co. Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO,*, 955 F.2d 831, 834 (2d Cir. 1992), that although discretionary awards of prejudgment interest are permissible under federal law in certain circumstances, the award should be a function of a number of factors: (1) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other principles as are deemed relevant by the court. The *Wickham* court cautioned that prejudgment interest should not result in over-compensation of the plaintiff, such as when the statute, as here, fixes damages deemed fully compensatory, *Id*. Similarly, prejudgment interest is inappropriate when the defendants, like the

Defendant here, acted innocently and did nothing wrongful. *Id*. Finally, interest should not be awarded when there was a legitimate dispute about liability. *Id*. Each of these considerations serves as a basis for denying interest in this case.

The Defendant was undisputedly the innocent recipient of funds from his IRA. He did not engage in any tactical maneuvers to delay the resolution of his case during the pendency of the case. Rather he raised defenses that were sustained by the courts and limited the Trustee's avoidance powers. . Under similar circumstances, courts generally decline to award interest. *See Kramer v. Mahia (In re Khan)*, 14-MC-01674 (PKC), 2016 U.S. Dist. LEXIS 156284 *6-7 (E.D.N.Y. Nov. 10, 2016) (declining to impose prejudgment interest in a case where the transferor had not made the transfer with actual intent to hinder, delay, or defraud her creditors or wrongfully retained or secreted away the transferred funds); *Carrier Corp. v. Buckley (In re Globe Mfg. Corp.),* 567 F.3d 1291, 1300 (11th Cir. 2009) (affirming the bankruptcy court's denial of prejudgment interest where the defendant's position was reasonable, that the parties' dispute was genuine and that there was no evidence that either party was responsible for delaying the dispute's resolution.); *Menotte v. Oxyde Chemicals, Inc. (In re JSL Chem. Corp.)*, 424 B.R. 573, 583 (Bankr. S.D. Fla. 2010) ("Although the Court's ruling in this matter favors the Trustee, the Defendant presented a colorable, if ultimately unpersuasive, ordinary course of business defense.")

The Defendant was one of the hundreds of good faith defendants who successfully moved to withdraw the reference for a determination that section 546(e) limited the Trustee's avoidance powers to a two year period solely under section 548(a)(1)(A), Adv. Pro. No. 10-04921 (CGM). The issue was decided in favor of the defendants. *SIPC v. BLMIS, (In re Madoff Sec.*), No.12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013), aff'd, 773 F.3d 411 (2d Cir.2015). The

12

Trustee delayed resolution of the issue with an unsuccessful certiorari petition to the Supreme Court until 2015.

Thereafter, delay in the resolution of this adversary proceeding is the result of the Trustee's unsuccessful effort to develop his case ten years after the commencement of the liquidation proceeding. The only issues on the docket of this adversary proceeding are Trustee's belated and unsuccessful (1) Motion and Supporting Memorandum of Law for an Order Establishing Omnibus Proceeding for the Purpose of Determining the Existence, Duration, and Scope of the Ponzi Scheme at BLMIS filed in February 2018 (Adv. Pro. No. 10-04921 (CGM) [ECF No. 56] and (2) Motion to Approve /Memorandum of Law in Support of Trustee's Motion for Limited Additional Discovery Based on Prior Orders Authorizing Deposition of Bernard L. Madoff [ECF No. 75] filed in June 2018, by which the Trustee first sought to depose 6 former employees and an FBI agent. Delay in this case was not caused by the Defendant.

## CONCLUSION

For all these reasons, the Defendant requests that the Court grant the Defendant's Cross- Motion granting summary judgment in all respects and dismissing the action and that Trustee's motion for summary judgment be denied.

| | |
|---|---|
| Dated:  June 2, 2021<br>New York, New York | **DENTONS US LLP**<br><br>By:  */s/ Arthur H. Ruegger*<br>Arthur H. Ruegger<br>Carole Neville<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Tel:  (212) 768-6700<br>Fax: (212) 768-6800<br>arthur.ruegger@dentons.com<br>carole.neville@dentons.com<br><br>*Attorneys for Defendant* |

13