FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-04921 (CGM) |
| v. | |
| Stanley T. Miller, | |
| Defendant. | |

**MEMORANDUM DECISION GRANTING SUMMARY JUDGMENT IN FAVOR OF TRUSTEE**

**A P P E A R A N C E S :**
BAKER HOSTETLER LLP
Attorneys for the Plaintiff
45 Rockefeller Plaza
New York, N.Y. 10111
BY:    NICHOLAS J. CREMONA (TELEPHONICALLY), TARA TURNER
(TELEPHONICALLY)

DENTONS US LLP
Attorneys for the Defendant
1221 Avenue of the Americas
New York, N.Y. 10016
BY:    ARTHUR H. RUEGGER (TELEPHONICALLY), CAROLE NEVILLE
(TELEPHONICALLY)

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Irving H. Picard ("Trustee"), Trustee for the Substantively Consolidated SIPA

Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"[1]) and Bernard L.

Madoff ("Madoff"), brings this adversary proceeding to avoid and recover fictitious profits

received by Stanley T. Miller ("Defendant") on account of his investment in the infamous Ponzi

scheme of BLMIS.

## <u>Jurisdiction</u>

This Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C.

§§ 1334(b) and 157(a) and the District Court's Standing Order of Reference, dated July 10, 1984,

and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,

Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision. As the district court case has been dismissed and

the reference has not been withdrawn, the Court has authority to enter a final order in these

cases. To the extent that it does not, the Court asks the District Court to construe this decision as

proposed findings of fact and conclusions of law, pursuant to the Amended Standing Order of

Reference dated January 31, 2012.

---

[1] The term BLMIS is used only with reference to the LLC and not the sole proprietorship, which
sometimes used the similar name of Bernard L. Madoff Investment Securities.

**Background**

For a background of these SIPA cases and the BLMIS Ponzi scheme, please refer to the findings of fact in *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 206–14 (Bankr. S.D.N.Y. 2019).

Undisputed Facts[2]

The Defendant is a resident of Florida. *See* Trustee's Reply ¶ 108, ECF No. 109. Defendant was a customer of the Investment Advisory Business and owned Account No. 1ZR284 in the name of NTC & Co. (also known as Fiserv, Inc., TIB Holdings, Inc., Fiserv Investment Support Services, First Trust Corporation, Retirement Accounts Inc., Fiserv Trust Company, Trust Industrial Bank, Lincoln Trust Company, and Pensco Trust Company ("FiServ"[3])). *Id.* ¶ 109. FiServ was the former custodian of an Individual Retirement Account ("Miller IRA") for the benefit of Defendant. *Id.* ¶ 110.[4] On November 9, 1998, the Defendant's IRA account was opened with a cash deposit check in the amount of $3,000,000, all representing principal. *Id.* ¶ 126. After this initial deposit, four additional cash deposits of $1,010,270 were made. *Id.* ¶ 127. These five cash deposits provided the Miller IRA with $4,010,270 of principal. *Id.* ¶ 128.

The Trustee has presented evidence that Fiserv did not hold onto this money, rather it was kept in BLMIS's 509 Account. Collura Decl., Attach B, ¶ 34. Collura's report shows that the

---

[2] The Trustee's Reply (ECF No. 109) contains the Defendant's Counterstatement of Material Facts (ECF No. 107). For ease of reference, the Court will cite to the Trustee's Reply.

[3] In the papers, the parties referred to the IRA custodian as NTC. At oral argument, the parties referred to the IRA custodian as FiServ. The Court will refer to the IRA custodian as FiServ.

[4] On December 2, 2010, the Trustee filed this Complaint and initially named Fiserv as a Defendant. Compl., ECF No. 1. NTC. On May 11, 2011, NTC was voluntarily dismissed from this adversary and 107 others. ECF No. 10.

four initial deposits were transferred into BLMIS's 703 Account, and Fiserv's withdrawals were

made from BLMIS's 509 Account. *Id.* This is consistent with the Defendant's instructions

regarding the opening of the Miller IRA. *See* Ruegger Decl., Ex. C. The instructions provide:

> Note that we would like to open this IRA account immediately and therefore would
> appreciate it being process as soon as possible…With regard to investment of funds,
> all monies are to be invested with Bernard L. Madoff Investment Securities.

*Id.* An IRA "means a trust created or organized in the United States for the exclusive benefit of

an individual or his beneficiaries . . . ." 26 U.S.C. § 408(a). The instructions also detailed that the

Miller IRA was a Self-Directed Individual Retirement Custodial Account. *Id.* "Self-directed

IRAs are authorized by federal law and are held by a trustee or custodian that permits investment

in a broader set of assets than is permitted by traditional IRA custodians." *Levine v. Entrust Grp.,*

*Inc.*, No. C 12-03959, 2012 WL 6087399, at *236 (N.D. Cal. Dec. 6, 2012).[5] In this case, Fiserv

was directed to invest with Madoff. An example will illustrate how this operated. On January 14,

2008, Fiserv sent Bernard L Madoff a distribution request. Ruegger Decl., Ex. E at 11. The

request stated:

> RE: Trading Instructions
> Please use this letter as authorization to:
> Please send 60,000.00 net. Do not withhold state or federal taxes.
> Correspondence and/or liquidation checks should be sent to:
> *Retirement Accounts, Inc. FBO Stanley T Miller
> Account # 031038030438
> 717 17th Street, STE 1700
> Denver, CO 80202

---

[5] "Custodians for self-directed IRAs disclaim most duties to investors, and may allow investors
to invest retirement funds in "alternative assets" such as real estate, promissory notes, tax lien
certificates, and private placement securities. *Investments in these kinds of assets may have
unique risks that investors should consider. Those risks can include a lack of disclosure and
liquidity -- as well as the risk of fraud. See* SEC Office of Investor Education and Advocacy,
Investor Alert: Self-Directed IRAs and the Risk of Fraud,
https://www.sec.gov/investor/alerts/sdira.html (emphasis in original) (last visited July 1, 2021).

*Id.* On January 16, 2008, the 509 Account, in the name of Bernard L. Madoff, sent a check of

$60,000.00 to NTC & Co. [Fiserv], FBO Stanley T. Miller. Ruegger Decl., Ex. F at 4. Collura's

analysis of Fiserv's account statements show an inflow of $60,00 on January 21, 2008. Collura

Decl., Attach B, Ex. 11. On January 23, 2008, there was an outflow of $60,000 from Fiserv's

account to the Defendant. *Id.* This turnaround of seven days seems to be the norm. It is also how

Fiserv operated other IRA accounts. The following exchange occurred when Collura testified in

*Picard v. Nelson*:[6]

> Q:  What was the timeframe that you saw from the funds going from BLMIS to the
> IRA, and ultimately to Mrs. Nelson [defendant/good faith investor]
> A:  Very short time period. Within, within a week.

There is no genuine dispute that between November 9, 1998 and December 11, 2008, the

IRA account reflected a total of 65 cash withdrawals totaling $4,680,063. Greenblatt Decl.,

Attach. B. ¶ 14. There is no genuine dispute that Defendant withdrew $669,793 of funds in

excess of principal, representing fictitious profits within the two-year period prior to December

11, 2008. *Id.* ¶ 15. The Trustee seeks to recover these fictitious profits to pay customer claims.

Before the Court is the Trustee's Motion for Summary Judgment[7] and the Defendant's

Cross-Motion for Summary Judgment.

The Court heard oral argument on the Trustee's summary judgment motion and the

Defendant's cross-motion for summary judgment on June 16, 2021.

### Discussion

### Admissibility of Trustee's Experts; Plea Allocutions; BLMIS Records

---

[6] Tr. at 229:13–15, No. 10-04658, ECF No. 181.
[7] On May 26, 2021, SIPC filed a memorandum of law in support of the Trustee's Motion for
Summary Judgment. ECF No. 110.

The Trustee relies on three experts to establish his *prima facie* case. Bruce G. Dubinsky is a forensic accountant with more than thirty-five years of experience investigating financial fraud. *See* Dubinsky Decl., Attach A at 9-10. Lisa Collura is a forensic accountant and certified fraud examiner: she analyzed the books and records of BLMIS. *See* Collura Decl., Attach A at 1-4. Matthew B. Greenblatt is a forensic account with more than twenty-five years of experience in financial fraud cases. Greenblatt Decl., ¶ 2.

The Defendant argues that all three of the Trustee's expert reports are inadmissible. The Court disagrees. This Court and the District Court have repeatedly admitted these expert reports to resolve prior trials and summary judgment motions. *See Picard v. Nelson, (In re BLMIS)*, 610 B.R. 197, 221–29 (Bankr. S.D.N.Y. 2019); *Picard v. JABA Associates L.P (In re BLMIS)*, No. 20 CV. 3836, 2021 WL 1112342, at *7 (S.D.N.Y. Mar. 24, 2021). The Trustee made the experts available for cross-examination and their reports available for inspection. Despite this, the Defendant never deposed any of the experts nor proffered their own in rebuttal. The experts' reports are admissible.

Defendant argues that the plea allocutions of Bernard Madoff and his brother Peter Madoff are unreliable and inadmissible. This objection has been overruled numerous times. *Picard v. Nelson, (In re BLMIS)*, 610 B.R. 197, 208–210 (Bankr. S.D.N.Y. 2019); *Picard v. JABA Associates L.P (In re BLMIS)*, No. 20 CV. 3836, 2021 WL 1112342, at *7 (S.D.N.Y. Mar. 24, 2021).

Next, the Defendant argues that BLMIS books and records are inadmissible. The Defendant argues that the BLMIS records are permeated with fraud and cannot be relied upon. The Court disagrees. *See Nelson*, 610 B.R. 197 at 223–24 (admitting BLMIS records into evidence after finding that Dubinsky, Collura, and Greenblatt adequately showed that BLMIS's

records of deposits and withdrawals "are extremely trustworthy."). And the Defendant's objection is disingenuous. His Opposition relies on BLMIS's records. Def.'s Mot. Summ. J. 25–27, ECF No. 105. It appears the Defendant advocates for admissibility when it suits his position, and inadmissibility when it does not.

## **Summary Judgment**

Pursuant to Rule 56(c), incorporated by Bankruptcy Rule 7056(c) in this adversary proceeding, summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The materiality of facts must be determined with reference to the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences." *In re CIS Corp.*, 214 B.R. 108, 118 (Bankr. S.D.N.Y. 1997).

A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322–23. A moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir.1994). The non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997). The nonmoving party should oppose the motion for summary judgment with evidence that is admissible at trial. *See* Fed. R. Civ. P. 56(e)(1); *Crawford v. Dep't of Investigation*, 324 F. App'x 139, 143 (2d Cir. 2009)

(affirming award of summary judgment in favor of defendant, where plaintiff presented testimony from uncorroborated source, as well as "speculation, hearsay and other inadmissible rumor, and conclusory allegations"). "If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Dish Network Corp. v. Ace Am. Ins. Co.*, 431 F. Supp. 3d 415, 421 (S.D.N.Y. 2019) (cleaned up). The court must evaluate each summary judgment motion "on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

I.      The Trustee Satisfies 11 U.S.C. § 548(a)(1)(A)

The Trustee seeks to avoid and recover transfers of fictitious profits made to Defendant under 11 U.S.C. § 548(a)(1)(A). The elements of this claim are: (i) a transfer of an interest of the debtor in property; (ii) made within two years of the petition date; (iii) with "actual intent to hinder, delay, or defraud" a creditor. *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 2011 WL 1419617, at *2 (S.D.N.Y. Apr. 7, 2011), *aff'd*, 748 F.3d 110 (2d Cir. 2014). SIPA § 78fff-2(c)(3) allows the Trustee to "invoke the fraudulent transfer provisions in the Bankruptcy Code to recover customer property." *In re Bernard L. Madoff Inv. Sec. LLC*, 976 F.3d 184, 199 (2d Cir. 2020).

i.      Transfer of an Interest of the Debtor in Property

The Trustee must prove that the property he is seeking to recover was "customer property" prior to the transfer.  All monies transferred from the 509 Account or the 703 Account are "customer property" for purposes of these SIPA cases.  *Picard v. BAM, L.P. (In re BLMIS)*, 624 B.R. 55, 61 (Bankr. S.D.N.Y. 2020) ("When the Defendants invested their money into the

IA Business, the deposits were placed into the Bank Accounts and commingled with all of the

Ponzi scheme victims' deposits. The funds held in the Bank Accounts were meant to be invested

legitimately through BLMIS but never were. Thus, they were 'customer property.'"); *see also*

*Picard v. Nelson, (In re BLMIS)*, 610 B.R. 197, 233 (Bankr. S.D.N.Y. 2019) ("All of the

transfers were made from the 509 Account held by BLMIS and consisted entirely of fictitious

profits. Under SIPA, the customer deposits are deemed to have been BLMIS's property for the

purposes of these adversary proceedings.").

As such, the Defendant's argument that the JPMorgan Accounts were the property of

Madoff, not BLMIS is without merit. The transfers the Trustee seeks to avoid are customer

property.

ii.      Made Within Two Years of the Petition Date

The Trustee seeks to recover the fictitious profits that BLMIS transferred to Defendant

within the two-year period between December 11, 2006, and December 11, 2008.  Greenblatt's

evidence shows that the Defendant withdrew an additional $669,793 of funds within two years of

the petition date. Greenblatt Decl., Attach B ¶¶ 4, 7–15, Ex. 4.

iii.      Actual Intent to Hinder, Delay, or Defraud

Intent to defraud is established as debtor operated a *Ponzi* scheme. *Picard v. Cohen*, Adv.

Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (citing

*SIPC v. BLMIS (In re BLMIS)*, 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015) ("the Trustee is

entitled to rely on the *Ponzi* scheme presumption pursuant to which all transfers are deemed to

have been made with actual fraudulent intent"); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330

(Bankr. S.D.N.Y. 2011) ("the fraudulent intent on the part of the debtor/transferor . . . is

established as a matter of law by virtue of the '*Ponzi* scheme presumption'"). That BLMIS

operated as a *Ponzi* scheme is well-established and the Court relies on earlier findings of same

and holds that the Trustee has met its burden of proof for summary judgment on this issue. *See*

*Picard v. Legacy Capital Ltd.*, 603 B.R. 682, 688–93 (Bankr. S.D.N.Y. 2019) (discussing in

detail that BLMIS was a *Ponzi* scheme and why the Trustee is permitted to rely on the Ponzi

scheme presumption to prove intent as a matter of law); *see also Bear Stearns Secs. Corp. v.*

*Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("[T]he *Ponzi* scheme

presumption remains the law of this Circuit.").

The Trustee has met his burden. The Defendant did not rebut any of the Trustee's

experts' opinions and the unrebutted reports are admissible. There is no genuine dispute

regarding BLMIS's (i) interest in the transferred funds; (ii) payment of fictitious profits within

the two-year period to or for the benefit of Defendant; (3) actual intent to hinder, delay, or

defraud its creditors. The Court now turns to the Defendant's numerous defenses.[8]

II.    <u>The IRA Account Is Not Exempt Under § 548(a)(1)(A)</u>

i.    ERISA Is Not Applicable

The Defendant argues that his IRA account is exempt under federal and New York state

law. Def.'s Mot. Summ. J. 6, ECF No. 105. Defendant relies on the Employee Retirement

Income Security Act (ERISA). ERISA states that "[e]ach pension plan shall provide that benefits

provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The

Defendant cites one case, *Ellis Nat. of Jacksonville v. Irving Tr. Co.*, 786 F.2d 466 (2d Cir.

1986), for the proposition ERISA protects pension plans even when funds contributed to the

---

[8] The Second Circuit recently held that BLMIS customers cannot invoke the "for value" defense
under 11 U.S.C. § 548(c). *In re Bernard L. Madoff Inv. Sec. LLC*, 976 F.3d 184, 188 (2d Cir.
2020), cert. denied, __ S.Ct. __, No. 20-1382, 2021 WL 1725218 (May 3, 2021).

pension plan are derived from fraudulent means. Defendant's reliance on ERISA is misplaced. The Defendant's account is an IRA account.

This Court has previously held that "ERISA does not generally apply to IRA accounts, including those that were rolled-over from ERISA-regulated plans." *Sec Inv. Prot. Corp. v Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41, 58 (Bankr. S.D.N.Y. 2014) (citing *In re Francisco*, 204 B.R. 799, 801 (Bankr. M.D. Fla. 1996) (holding that ERISA "expressly excludes IRAs from coverage."). "There is nothing in the Congressional Record or in the language of the legislation dealing with ERISA, to indicate that ERISA was designed to include IRAs within the definition of 'employee benefit program or a plan.'" *In re Francisco¸* 204 B.R. at 801. The Defendant's IRA account is not protected by ERISA.

Assuming the Miller IRA is protected under ERISA, the distributions made from the retirement account are not. "The anti-alienation provision protects vested ERISA pension plan benefits that have *not* been distributed." *In re Bernard L. Madoff Inv. Sec., LLC*, No. 15 CIV. 1151, 2016 WL183492, at *20 (S.D.N.Y. Jan. 14, 2016) (citing *United States v. All Funds Distributed To, or on Behalf of, Weiss*, 345 F.3d 49, 56 (2d Cir. 2003). "Only once the proceeds of the pension plan have been released to the beneficiary's hands, can creditors and others pursue claims against the funds and the funds' owners(s)." *Weiss*, 345 F.3d at 56. Here, the Miller IRA has already distributed funds to the Defendant. Those funds are not protected by ERISA.

ii.    New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") Is Not Applicable

The Defendant argues that §§ 5205(c)(1), (c)(2), and (d)(1) of the N.Y. C.P.L.R. protect withdrawals from IRA accounts. Def.'s Mot. Summ. J. 16–18, ECF No. 105. The Trustee acknowledges that these state law provisions may limit its ability to *collect* on a judgment. While

collection may be difficult, the Trustee argues that the state law provisions do not bar the entry of a judgment. The Court agrees.

Section 5205(c)(1) exempts from the satisfaction of a money judgment "all property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded form, a person other than the judgment debtor . . . ." Section 5205(c)(2) states that an IRA "shall be considered a trust" even when created by the judgment debtor.

Section 5205(c)(5) provides a limited exception:

> Additions to an asset described in paragraph two of this subdivision shall not be exempt from application to the satisfaction of a money judgment if (i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be **fraudulent conveyances** under article ten of the debtor and creditor law.

§ 5205(c)(5)(i–ii) (emphasis added). Section 5205(d)(1) provides:

> (d) Income exemptions. The following personal property is exempt from application to the satisfaction of a money judgment, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents:

> 1. ninety per cent of the income or other payments from a trust the principal of which is exempt under subdivision (c); provided, however, that with respect to any income or payments made from trusts, custodial accounts, annuities, insurance contracts, monies, assets or interest established as part of an individual retirement account plan or as part of a Keogh (HR10), retirement or other plan described in paragraph two of subdivision (c) of this section, the exception in this subdivision for such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents shall not apply, and the ninety percent exclusion of this paragraph shall become a one hundred percent exclusion;

§ 5205(d)(1). This section ensures that up to ninety percent of income is exempt. *See id.*

The Defendant cannot seek protection under § 5205(c). This Court and the District Court have held that N.Y. C.P.L.R. § 5205(c) is inapplicable. *SIPC v. BLMIS (In re BLMIS)*, 531 B.R. 439, 482–83 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*"); *In re BLMIS*, 476 B.R.

715, 728 n. 13 (S.D.N.Y. 2012) (hereinafter "*Greiff*"). The Court is not convinced that it should

depart from these decisions. In *Greiff*, Judge Rakoff made short shrift of the investors' state law

arguments. *Greiff*, 476 B.R. at 728 n. 13. Judge Rakoff stated that "[w]hile N.Y. C.P.L.R.

§5205(c) exempts money in certain trusts, including IRAs" from a money judgment,

"§5205(c)(5) specifically provides that the exemption does not apply to 'additions to' the trust

that are 'fraudulent conveyances.'" *Id.* Thus, the Defendant's argument that § 5205(c) operates

as a defense to § 548(a)(1) is extinguished by § 5205(c)(5). The "additions" made to the Miller

IRA are "fraudulent conveyances." *See* § 5205(c)(5). The Trustee is seeking to recover the

fictitious profits withdrawn from the Miller IRA and distributed to the Defendant.

Seizing on §5205(c)(5)'s "additions to an asset" language, the Defendant argues that the

exception is inapplicable where the Defendant only made withdrawals. This is another repeated

old argument that has been rejected. Section 5205(d)(1) exempts distributions to the extent the

principal is exempt under 52505(c). *Greiff*, 476 B.R. at 728 n. 13. In *Greiff*, Judge Rakoff stated

that "where Madoff Securities fraudulently transferred profits into [investors'] IRAs,

distributions of those profits are not protected by §5205(d)(1). *Id.; see also* 11 New York Civil

Practice: CPLR § 5205.22 ("5205(c) is effective only as to those portions of the principal

remaining in the trust. Any portion of the principal that is distributed falls under the protection of

CPLR 5205(d)(1)). Relying on *Greiff*, this Court denied similarly situated defendants' omnibus

motion to dismiss[9] and held that:

> CPLR § 5205 exempts certain trust property from judgment execution, but the
> defendants have not cited any authority in support of their argument that it
> invalidates the plaintiff's cause of action. Second, the exemption does not apply to
> all trusts. Third, CPLR § 5205 addresses the situation where the judgment debtor
> and the trust are different entities, and the plaintiff seeks to satisfy its judgment
> against the judgment debtor from the trust property or income. Here, the trust or

---

[9] Defendant joined the omnibus motion to dismiss. *See* ECF No. 44.

> retirement account received the fraudulent transfer. Fourth, even if the principal is exempt, the income earned by the trust may not be fully exempt from execution by a judgment creditor.

*Omnibus Good Faith Decision*, (citation omitted). Six years later, the Defendant in this case has renewed the same argument raised in *Greiff* and the *Omnibus Good Faith Decision*. Once again, the Defendant has not cited any authority for his assertion that Section 5205 "invalidates the plaintiff's cause of action." *Id.* The Defendant's cited cases are not persuasive. All of the Defendant's cases are distinguishable—the fraudulent conveyance actions pursued were not brought by a SIPA trustee. *See* Def.'s Mot. Summ. J. 10, ECF No. 105; *Bear Stearns Sec. Corp. v. Gredd*, 275 B.R. 190, 191 (S.D.N.Y. 2002) (chapter 11 trustee); *Ehrlich for Hoffmans Trade Grp. LLC v. Com. Factors of Atlanta,* 567 B.R. 684, 688 (N.D.N.Y. 2017) (chapter 7 trustee); *In re Teligent, Inc.*, 380 B.R. 324 (Bankr. S.D.N.Y. 2008) (representative of chapter 11 estate); *In re McCann, Inc.*, 318 B.R. 276, 279 (Bankr. S.D.N.Y. 2004) (chapter 11 trustee).

SIPA trustees have specific duties delineated under 15 U.S.C. § 78fff-1. They also have the "general powers of a bankruptcy trustee." *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011). In *SIPC v. BLMIS (In re BLMIS)*, 424 B.R. 122, 135–36 (Bankr. S.D.N.Y. 2010) *("Net Equity Decision"), aff'd*, 654 F.3d 229 (2d Cir. 2011), the Court described a SIPA liquidation proceeding as a "hybrid" between Titles 11 and 15 of the United States Code. The court noted that "SIPA and the [Bankruptcy] Code intersect to, *inter alia*, grant a SIPA trustee the power to avoid fraudulent transfers for the benefit of customers." *Net Equity Decision*, 424 B.R. at 135–36. The property the SIPA trustee seeks to avoid must be "customer property." *In re Bernard L. Madoff Inv. Sec. LLC*, 976 F.3d, 184, 199 (2d Cir. 2020). The Trustee has already shown why the transfers to the Defendant are customer property. Moreover, "no property is exempt until such time as the debtor claims an exemption for it…and transfers of potentially

exempt property are amenable to avoidance and recovery actions by bankruptcy trustees."
*Tavenner v. Smoot*, 257 F.3d 401, 407 (4th Cir. 2001). In this case, BLMIS is the debtor, not the
Defendant.

The Court is also not convinced that § 5205 prevents entry of a judgment against the
Defendant. The Defendant has not cited any case law in support. The Defendant's cited cases all
stand for the proposition that § 5205 prevents enforcement of a judgment. *See* Def.'s Mot.
Summ. J. 12–13, ECF No. 105. In each cited case, a judgment had already been entered against
the defendant and the defendant invoked § 5205 to prevent collection of the judgment. *Id.*;
*Breslin Realty Dev. Corp. v. Morgan Stanley*, 10 N.Y.S.3d 841, 841–42 (N.Y. Sup. Ct. 2015)
(proceeding to enforce judgment of $1,567.915.80); *Memmo v. Perez*, 882 N.Y.S.2d 24, 25
(2009) (charging lien of $70,000 entered and stipulated to); *Roedel Companies, LLC v JNK
Home Enterprises*, LLC, No. EF2020-67759, 145 N.Y.S.3d 330, 2021 WL 2069689, at *1 (N.Y.
Sup. Ct. May 21, 2021) (proceeding to enforce judgment of $1,093,456.70); *Cadles of Grassy
Meadows II, LLC. v. Katz*, No. 106022/2006, 2008 WL 4537796 (N.Y. Sup. Ct. Sep. 15, 2008)
(proceeding to enforce judgment of $870,272.05); *Gard Entertainment Inc. v Block*, No.
102399/2012, 960 N.Y.S.2d 50, 36, 2012 WL 3764525 (N.Y. Sup Ct. Aug. 21, 2012)
(proceeding commenced after summary judgment granted and judgment of $391,578.92
entered). The Court also rejects the Defendant's statutory argument that § 5205(c)(5) only
excepts fraudulent conveyances brought under article ten of the debtor and creditor law. New
York fraudulent transfer law and § 548 are substantially the same. *See In re Combes*, 382 B.R.
186, 193 (Bankr. E.D.N.Y. 2008); *Ehrlich for Hoffmans Trade Grp. LLC v. Com. Factors of
Atlanta*, 567 B.R. 684, 692–93 (N.D.N.Y. 2017).

In any event, the Court will follow the prior *Greiff* and *Omnibus Good Faith Decision*

and holds that § 5205 does not give the Defendant refuge.[10]

III.     The Defendant Does Not Have a Defense Under § 550(b)

i.     Defendant Is the Initial Transferee

Under 11 U.S.C. §550, a fraudulent transfer may be recovered from an initial or subsequent

transferee. Section 550(a)–(b) provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is
> avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the
> trustee may recover, for the benefit of the estate, the property transferred, or, if the
> court so orders, the value of such property, from--
>> (1) the initial transferee of such transfer or the entity for whose benefit such
>> transfer was made; or
>> (2) any immediate or mediate transferee of such initial transferee.
> (b) The trustee may not recover under section (a)(2) of this section from--
>> (1) a transferee that takes for value, including satisfaction or securing of a
>> present or antecedent debt, in good faith, and without knowledge of the
>> voidability of the transfer avoided; or
>> (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550. SIPA § 78fff-2(c)(3) also authorizes a trustee to "recover any property

transferred by the debtor which, except for such transfer would have been customer property if

and to the extent such transfer is voidable or void under the provisions of Title 11." The

Defendant argues that he is a subsequent transferee under 11 U.S.C. §550(a)(2). The Trustee's

Amended Complaint only alleges that the Defendant is an initial transferee and is liable under

---

[10] New York's Debtor and Creditor Law § 282 states that "an individual debtor domiciled in this state may exempt from the property of the estate...money judgments under sections fifty-two hundred five and fifty-two hundred six of the civil practice law and rules." While a fight for another day, it is not clear that Defendant, a Florida resident, can invoke § 5205 when faced with a judgment.

08-01789-cgm    Doc 20602    Filed 07/02/21    Entered 07/06/21 15:06:32    Main Document
Pg 17 of 26

§ 550(a)(1).[11] The issue before the Court is whether the Defendant is an initial transferee under

§ 550(a)(1). The Court finds in the affirmative.

The Bankruptcy Code does not define the term "initial transferee."  Courts follow *Bonded*

*Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988), where

the Court of Appeals for the Seventh Circuit held:

> [T]he minimum requirement of status as a 'transferee' is dominion over the money
> or other asset, the right to put the money to one's own purposes. When A gives a
> check to B as agent for C, then C is the 'initial transferee'; the agent may be
> disregarded.

*Id.* at 893. Writing for the Court of Appeals, Judge Easterbrook held that a bank holding a third-

party investor's note of $200,000 was not an initial transferee. *Id.* He commented that the third

party-investor was free to invest his money "in lottery tickets or uranium stocks." *Id.* The

*Bonded Financial* "dominion" and "control" test is followed by a majority of the Circuits. *See*

*Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Prop. Ltd P'ship)*, 99 F.3d 151,

156 (4th Cir. 1996); *First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 141 (5th Cir.

1993); *Martinez v. Hutton (In re Harwell),* 628 F.3d 1312 (11th Cir. 2010). In *In re Finley*, 130

F.3d 52, 58 (2d Cir. 1997), the Court of Appeals for the Second Circuit adopted the "mere

conduit" test—an extension of the *Bonded Financial* test. Under the "mere conduit" test, one

who merely facilitates the transfer of funds from the debtor to a third party does not exercise

sufficient dominion and control and is not an "initial transferee." *See id.* at 59 ("A commercial

entity that, in the ordinary course of its business, acts as a mere conduit for funds and performs

that role consistent with its contract undertaking in respect of the challenged transaction, is not

an initial transferee[.]").

---

[11] Am. Compl, *Picard v. Miller*, No 11-cv-07579 (JSR) (S.D.N.Y. Jan. 25, 2012), ECF No. 8.

Page **17** of **26**

The Defendant argues that Fiserv is the initial transferee and he is a subsequent transferee. This distinction—if proven—entitles the Defendant to § 550(b)'s good faith defense. The Defendant advocates for a low threshold needed to establish "dominion" and "control" and argues that that Fiserv was not simply a "mere conduit." The Defendant states that the "mere conduit" test has been limited by *Bear Stearns Secs., v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 15 (S.D.N.Y. 2007). The Defendant cites a portion of the *Gredd* decision out of context. The *Gredd* court was not satisfied with Judge Easterbrook's simplistic "lottery tickets or uranium stocks" language. *Id.* at 18. For good reason too, the *Gredd* court could not adequately analogize to *Bonded* nor the Second Circuit's *Finley* decision. The facts were distinguishable. The *Bonded* and *Finley* decisions rely on three parties: "the transferor, the conduit, and a third party who receives the transferred funds from the conduit." *Gredd*, 397 B.R. at 15. In contrast, *Gredd* was different: there was no third party that received any funds. *Id.*

In *Gredd*, the hedge fund-debtor transferred money into a margin account at Bear Stearns to further a Ponzi scheme. *Id.* at 4–5. Under 11 U.S.C. 548(a)(1)(A), the bankruptcy trustee sought to avoid the transfers into the Bear Stearns margin account. *Id.* The *Gredd* court found that Bear Stearns was an initial transferee and not a mere conduit, based on the following factors: (1) no third party received the funds from the margin account; (2) Bear Stearns did not have to respond to directions from the transferor; and (3) Bear Stearns was not required to return the money to the transferor.

Unlike *Gredd*, here, there is a third party, Defendant, who received the funds. Thus, this case is like *Bonded* and *Finley*: all three parties are present—BLMIS, the IRA custodian, and the Defendant. The Court holds that Fiserv was a mere conduit, not an initial transferee. The Court also holds that the Defendant was the initial transferee. *In re Finley*, 130 F.3d 52, 57 (2d Cir.

1997) ("The person who is the recipient [initial transferee] is the one to whom the funds

ultimately should go . . . ."). There is no genuine dispute that the funds ultimately went to the

Defendant. The *Gredd* court also held that Bear Stearns had dominion and control over the

transferred funds. 397 B.R. at 18. The court found that Bear Stearns: (1) had rights "to use the

funds to protect itself" from losses due to the hedge fund debtor's risky trading activity; and (2)

Bear Stearns possessed a "degree of decision-making authority" with respect to the funds. *Id.* at

18–21. None of those dominion factors are present in this case.

      The Defendant urges this Court to depart from the ruling in *Picard v. Nelson, (In re*

*BLMIS)*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019). In *Nelson*, the defendant/good faith investor

similarly argued that her IRA custodian rather than she, was the initial transferee of the transfers

to her IRA account. *Id.* The Court disagreed and held that "the IRA custodian is a mere conduit."

The Court cited *Bonded* and noted that the defendant's IRA custodian was "not free to invest her

money in lottery tickets or uranium stock." *Id.* at 81. The Defendant argues that the facts in this

case are different. The Defendant states that the IRA custodian exercised dominion and control

over the retirement funds for at least 10 days before making distributions to the Defendant. The

Defendant argues that the IRA custodian was free to use these funds for any purpose and this

qualifies it to be an initial transferee. At the hearing on June 16, 2021, Defendant's counsel

stated:

> I think the point that I was trying to make about the subsequent transferee and the
> timing here is that I don't -- I don't know if that was made a point in Nelson. I don't
> think it was, because I think I'm the one who spent most of her time tracing these
> ridiculous transfers from check to quarterly statement to client. But I do see that
> there was a period of time where Fiserv had the float on a good deal of money over
> a long period of time

Tr. at 152:15–22, ECF No. 122. The Court is not persuaded by the Defendant's argument and

will not depart from its holding in *Nelson*. The Defendant has not rebutted the Trustee's expert,

Lisa Collura. Collura's analysis shows that most of the cash withdrawals first went from BLMIS to the IRA custodian, then distributed to the Defendant on the "same day." Thus, the IRA custodian never had "dominion" and "control" over the funds. *See* Collura Decl., Attach B, ¶¶ 52–53.

At the hearing on June 16, 2021, Defendant's counsel stated that the first transfer in January 2008 shows a substantial delay and that upon receiving checks from BLMIS, Fiserv held onto them for a period of ten days. Tr. at 158:10–13, ECF No. 122. That is not supported in the evidence. On January 3, 2008, Fiserv sent a $60,000 distribution request to Bernard Madoff. Ruegger Decl., Ex. E at 12. On January 7, 2008, Bernard Madoff issued the check to Fiserv. Ruegger Decl., Ex. F at 2. Collura's analysis shows that Fiserv received the check on January 8, 2008 and distributed the funds that same day to the Defendant. Collura Decl., Attach B, Ex. 11. This five-day turnaround is not material and any delay did not come on Fiserv's end, rather any delay turned on how quickly Madoff responded to the distribution request and cut the check. While a factual dispute is present, the dispute is not material. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

The Court, as is required at the summary judgment stage, has drawn all reasonable inferences in favor of the nonmoving party—the Defendant. *See Dish Network Corp. v. Ace Am. Ins. Co.*, 431 F. Supp. 3d 415, 421 (S.D.N.Y. 2019). With this principle in mind, the Court holds that the ten-day period of the IRA custodian allegedly holding funds does not change its status from a mere conduit to an initial transferee. *See Gredd*, 397 B.R. at 9 (finding that Bear Stearns was an initial transferee because it subjected the funds to numerous conditions that "essentially wrested control of the money from the Fund.").

*Nelson* rejected the argument that the IRA custodian was an initial transferee for another reason: an "IRA is not a separate legal entity from its owner." 610 B.R. at 237 (citing *In re Vaughan Co.*, Adv.Pro. No. 11-1226, 2014 WL 271632, at *3 (Bankr. D.N.M. Jan. 23, 2014); *see also Lewis v. Delaware Charter Guarantee & Tr. Co.*, No. 14-CV-1779 KAM, 2015 WL 1476403, at *11 (E.D.N.Y. Mar. 31, 2015) ("[C]ustodial IRA's are not trusts . . . They are only treated as trusts for tax deferral purposes.")). Other states view custodial IRA's in the same manner. *In re Lakeview Dev. Corp.*, 614 B.R. 603, 610 (Bankr. D. Colo. 2020) (collecting cases) (finding that a custodial IRA "is not a separate legal entity…It is only a receptacle for a person's assets."). The overwhelming majority of federal courts have decided that self-directed IRA's are not trusts under state law. The Defendant argues that while this may be the majority approach, that is not the rule in New York.

The Defendant relies on N.Y. Estates, Powers, and Trusts Law ("EPTL") § 7.3-1(b)(1)-(2). The Trustee has not disputed that the Defendant's account is a qualified IRA. N.Y. EPTL § 7.3-1(a) states the general rule that "[a] disposition in trust for the use of the creator is void as against the existing or subsequent creditors of the creator." The effect of § 7.31-1(a) ensures "that a settlor cannot utilize a spendthrift trust to insulate assets from the reach of present or future creditors." 54 N.Y. Jur. 2d Enforcement and Execution of Judgments § 161; N.Y. EPTL § 7-3.1 (Margaret Valentine Turano's Practice Commentaries). This general rule was turned on its head by the 1987 and 1989 amendments that added subparagraph (b). N.Y. EPTL § 7.3-1(b)(1)–(2) states:

> (b)(1) For purposes of paragraph (a) of this section, all trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, either an individual retirement account plan which is qualified under section 408 or section 408A of the United States Internal Revenue Code of 1986,1 as amended, or a Keogh (HR-10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal

> Revenue Code of 1986, as amended, shall not be considered a disposition in trust for the use of the creator, even though the creator is (i) in the case of an individual retirement account plan, an individual who is the settlor of and depositor to such account plan . . . .
>
> (2) All trusts, custodial accounts, annuities, insurance contracts, monies, assets, or interests described in subparagraph one of this paragraph shall be conclusively presumed to be spendthrift trusts under this section and the common law of the state of New York for all purposes, including, but not limited to, all cases arising under or related to a case arising under sections one hundred one to thirteen hundred thirty of title eleven of the United States Bankruptcy Code, as amended.

Thus, N.Y. EPTL § 7.3-1(b)(1) provides that IRAs are not within the traditional rule of § 7.31-1(a) and (b)(2) provides that all trusts described in (b)(1) are conclusively presumed to be spendthrift trusts. However, the Defendant's argument fails for the same reason that it's N.Y.C.P.L.R. § 5205(c) argument fails. Once again, the New York legislature has balanced the need of exempting assets with the right of creditors to recover fraudulent conveyances. N.Y. EPTL § 7.3-1(b)(4) provides:

> (4) Additions to an asset described in subparagraph one of this paragraph shall not be exempt from application to the satisfaction of a money judgment if…(ii) deemed to be **voidable transactions**[12] under article ten of the debtor and creditor law.

(emphasis added).

The Defendant is an initial transferee. He cannot claim the § 550(b) defense. The Defendant did not retain an expert to rebut Collura's evidence. Rather, he only offered contrary evidence from his counsel. *See Rivera v. Home Depot USA, Inc.*, 776 F. App'x 4, 7–8 (2d Cir. 2019) (holding that "expert testimony may form the basis of summary judgment" when the testimony is "unequivocal, uncontradicted, and unimpeached"). The Trustee has satisfied his *prima facie* case to avoid and recover the two-year transfers.

---

[12] Prior to April 4, 2020, the exception was for "fraudulent conveyances." N.Y. EPTL § 7-3.1 (commentary)

IV.    The Trustee Has Submitted Evidence Establishing that Madoff transferred the IA
Business to BLMIS.

The Defendant argues that the net investment method should only be used from January

2001 when BLMIS became an LLC, rather than from the opening of the account in 1998. This

issue has already been decided. *See Picard v. BAM, L.P. (In re BLMIS)*, 624 B.R. 55, 59–61

(Bankr. S.D.N.Y. 2020) (finding "that all of the assets and liabilities of the sole proprietorship,

including the IA Business, were transferred to BLMIS via the 2001 SEC Amended Form BD."

As such, the Defendants customer accounts and the Bank Accounts are property of BLMIS and

the Trustee has properly calculated the transfers in the IRA account.

V.    Prejudgment Interest is Appropriate

This Court recently held that the Trustee is entitled to non-compounding, prejudgment

interest at the prime rate of 4% from similar Defendants who litigate issues that have already

been decided by the Court. *Picard v. BAM L.P. (In re BLMIS)*, 624 B.R. 55, 62–66 (Bankr.

S.D.N.Y. 2020); *see also* Order, Adv. Pro. No. 10-04390, Dkt. No. 253 ("The interest shall not

compound.").

To determine whether prejudgment interest should be awarded, the Court must consider

"(i) the need to fully compensate the wronged party for actual damages suffered, (ii)

considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the

statute involved, and/or (iv) such other general principles as are deemed relevant by the court."

*Wickham Contracting Co. v. Local Union No. 3, Int'l Brotherhood of Elec. Workers, AFL-CIO*,

955 F.2d 831, 834 (2d Cir. 1992). The purpose of prejudgment interest is to make the Plaintiff

whole rather than to punish Defendants or to provide Plaintiff with a windfall. *Jones v. UNUM

Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (citations and quotations omitted). "Courts

in the Second Circuit and in this district have recognized that the award of prejudgment interest

is discretionary, and absent a sound reason to deny prejudgment interest, such interest should be awarded." *In re 1031 Tax Grp.*, 439 B.R. at 87 (citations omitted). "The court must, however, explain and articulate its reasons for any decision regarding prejudgment interest." *Henry v. Champlain Enter., Inc.*, 445 F.3d 610, 623 (2d Cir. 2006).

Prejudgment interest is "normally" awarded in avoided transfer cases "to compensate for the value over time of the amount recovered." *In re Cassandra Grp.*, 338 B.R. 583, 599 (S.D.N.Y. 2006) ("To fully and fairly compensate Cassandra's creditors for their loss—not only of $300,000 that was fraudulently conveyed to the Defendants, but of the use of that money since the date of the demand—the Trustee should be permitted to recover prejudgment interest."); *see also In re FKF 3, LLC*, 2018 WL 5292131, at *13 (awarding prejudgment interest to compensate for "loss of interest, the diminished value of the damages award due to the passage of time, and Plaintiff's lost opportunity to make use of the lost funds").

Prejudgment interest is warranted in this instance. The Trustee is charged with collecting fictitious profits from net winners so that net losers in BLMIS's Ponzi scheme can be adequately compensated for their losses. He has spent approximately ten years prosecuting this case and cannot be made whole without an award of prejudgment interest. Moreover, he has spent time and energy having to defend against legal arguments that have already been decided in these SIPA cases. All of the Defendant's legal arguments in opposition to this summary judgment motion were previously decided and law of the case. *Picard v. Nelson*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019). ("The prior decisions within this SIPA proceeding constitute law of the case."). Under the holding of *FKF 3*, the Trustee is entitled to interest from the date that the SIPA action was commenced. *In re FKF 3, LLC*, 2018 WL 5292131, at *14 ("[T]he Court finds it appropriate to calculate prejudgment interest on the fraudulent conveyance claims from the

Petition Date."). The Trustee has requested interest from the date that the SIPA action was commenced. Consistent with other decisions that have awarded prejudgment interest, the Court holds that interest is awarded in the amount of 4%, without compounding, commencing on December 2, 2010 through the date of the entry of judgment in this case. *See Picard v. JABA Associates L.P (In re BLMIS)*, No. 20 CV. 3836, 2021 WL 1112342, at *19–20 (S.D.N.Y. Mar. 24, 2021) (applying 4% interest rate); *Picard v. BAM, L.P. (In re BLMIS)*, 624 B.R. 55, 65–66 (Bankr. S.D.N.Y. 2020) (4% interest rate).[13]

In reaching this conclusion the Court is reminded that the Defendant is a victim. The Defendant, like so many others, believed his retirement account to be making legitimate investments. Unknowingly, these retirement good faith investors may have prolonged the Ponzi scheme itself. A Ponzi scheme relies on new investors to infuse money into the business venture and old investors to leave their money in or at least keep withdrawals low. *See Wyle v. C.H Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 590 n.1 (9th Cir. 1991). IRA retirement accounts, in a way prolong the Ponzi scheme since old investors keep their money in for a longer period of time. Generally, they are withdrawing only what is necessary for their retirement years. In this case, the defendant made monthly withdrawals of $60,000 regularly. There were also months when he withdrew $300,000 and $1,0000,000. While the court sympathizes with the Defendant: he has recovered his principal investment. Other victims have not been so fortunate.

---

[13] The Court would be willing to consider awarding interest from the date of the SIPA action where the facts warrant it. In this case, where Mr. Miller is elderly and infirm, the Court sees no reason to treat him differently than the other defendants in *BAM* and *JABA*.

## Conclusion

For the foregoing reasons, the Trustee's Motion for Summary Judgment is GRANTED,

and the Defendant's Cross Motion for Summary Judgment is DENIED. The Trustee is directed

to submit a proposed order in accordance with this memorandum decision.



/s/ Cecelia G. Morris

**Dated: July 2, 2021**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**