**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
David J. Sheehan
Seanna R. Brown
Heather R. Wlodek

Hearing Date: August 18, 2021
Hearing Time: 10:00 a.m. (EST)
Objection Deadline: August 4, 2021
Time: 4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. No. 08-01789 (CGM) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**THIRTY-SIXTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP
FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
FROM DECEMBER 1, 2020 THROUGH MARCH 31, 2021**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................2

II.    BACKGROUND ..................................................................................4

    A.    THE SIPA LIQUIDATION................................................................4

    B.    THE TRUSTEE, COUNSEL AND CONSULTANTS ...........................4

    C.    PRIOR COMPENSATION ORDERS..................................................5

III.    SUMMARY OF SERVICES.................................................................7

    A.    HARDSHIP PROGRAM...................................................................7

    B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY .................8

IV.    DETAILED DESCRIPTION OF SERVICES....................................8

    A.    MATTER 01 ...............................................................................9

        a.    Task Code 02: Bankruptcy Court Litigation................................9

        b.    Task Code 03: Feeder Funds.......................................12

        c.    Task Code 05: Internal Meetings with Staff..............................12

        d.    Task Code 07: Billing and Trustee Reports..............................12

        e.    Task Code 08: Case Administration .......................................13

        f.    Task Code 11: Press Inquiries and Responses..........................14

        g.    Task Code 12: Document Review ..........................................14

        h.    Task Code 13: Depositions and Document Productions by
            the Trustee...................................................................14

        i.    Task Code 14: International...............................................14

        j.    Task Code 21: Allocation ................................................15

    B.    MATTER 05 – CUSTOMER CLAIMS .................................................17

        a.    Customer Claims.......................................................17

        b.    General Creditor Claims .............................................17

        c.    The Trustee Has Kept Customers Informed Of The Status
            Of The Claims Process.................................................18

-i-

C.  MATTER 07 – MADOFF FAMILY ...................................................19

D.  MATTER 09 – FAIRFIELD GREENWICH..........................................19

E.  MATTER 21 – AVOIDANCE ACTION LITIGATION and MATTER 75 – GOOD FAITH/5A COHMAD REFERRED ACCOUNTS .................................26

    a.  Resolution of Good Faith Avoidance Actions ...........................26

    b.  Trial-Related Motion Practice...................................................27

    c.  Summary Judgment Motions ....................................................32

F.  MATTER 29 – RYE/TREMONT..........................................................44

G.  MATTER 30 – HSBC...........................................................................46

H.  MATTER 32 – UBS/LUXALPHA/LIF................................................48

I.  MATTER 33 – NOMURA INTERNATIONAL PLC...........................50

J.  MATTER 34 – CITIBANK ...................................................................52

K.  MATTER 35 – NATIXIS ......................................................................55

L.  MATTER 53 – MAGNIFY ...................................................................56

M.  MATTER 60 – AVELLINO & BIENES................................................57

N.  MATTER 62 – SUBSEQUENT TRANSFERS ....................................58

O.  MATTER 63 – CITRUS INVESTMENT HOLDINGS, LTD. .............61

P.  MATTER 65 – LEGACY ......................................................................62

Q.  MATTER 71 – SQUARE ONE .............................................................64

R.  MATTER 73 – BNP PARIBAS .............................................................65

S.  MATTER 77 – EXTRATERRITORIALITY .......................................66

V.  COMPENSATION REQUESTED......................................................................67

VI.  RELEASE OF THE HOLDBACK .....................................................................71

VII.  REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED .................72

VIII.  CONCLUSION....................................................................................................73

**TO THE HONORABLE CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and the chapter 7 case of Bernard L. Madoff ("Madoff"), individually (collectively, the "Debtor"), respectfully submits this thirty-sixth application (the "Application") on behalf of the Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing December 1, 2020 through and including March 31, 2021 (the "Compensation Period") of $31,664,050.83, (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period of $164,513.86, and (iii) release of $10,045,076.21, a portion of the amount which has not been paid in connection with prior and current applications, and in support thereof, respectfully represents as follows:

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

## I.    **PRELIMINARY STATEMENT**

1.    The work completed as counsel to the Trustee during the Compensation Period yielded significant results for BLMIS customers and the liquidation.  Through pre-litigation and other settlements, which were approved by the Bankruptcy Court and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, over $14.469 billion as of May 31, 2021 for the benefit of all customers of BLMIS with an allowed claim.[2]

2.    The Trustee has made twelve interim distributions of customer property to date. *See* discussion *infra* Section IV(A)(j).  The Trustee has distributed approximately $14.16 billion to BLMIS customers through May 31, 2021, inclusive of SIPC advances in the amount of more than $849.8 million.[3] *See* discussion *infra* Section IV(A)(j).

3.    No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers. Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers.  Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H, various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), including Browne Jacobson LLP ("Brown Jacobson"), Soroker-Agmon ("Soroker"), Williams Barristers & Attorneys ("Williams Barristers"), various special counsel to the Trustee (collectively

---

[2] In general, figures will be reported as of March 31, 2021, unless otherwise noted.

[3] SIPC makes advances to satisfy customer claims before the Trustee recovers funds. Since the Trustee has recovered funds to satisfy customers up to $1,654,980, SIPC is reimbursed for the advances to customers whose claims have been fully satisfied to date. 1,497 BLMIS accounts have been fully satisfied.

referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and consultants, are paid out of administrative advances made by SIPC, as SIPA plainly directs. As Judge Lifland affirmed: "Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.      As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.      In a SIPA liquidation proceeding such as this, where the general estate is insufficient to pay trustee and counsel compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration. *See* SIPA §§ 78eee(b)(5)(C) and 78fff-3(b)(2). SIPC staff has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered. Each month, SIPC staff, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein. Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

6.      During the hearing on the Eighth Interim Fee Application, Judge Lifland acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else to follow

all the trails and the trails do lead almost everywhere in the world. It is clear under
the circumstances that a Herculean effort to follow those trails has been involved
both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

7.      No single document can capture all of the tasks engaged in by the Trustee and B&H

since their appointment on December 15, 2008. Hundreds of thousands of hours have been

expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and

advance the interests of all claimants by litigating and settling cases for the return of customer

property ("Customer Property"). Moreover, the Trustee has vigorously defended the estate with

respect to a number of litigations filed against it and against his protection of Customer Property.

The following discussion and materials attached to this Application cover the major categories of

services for which allowance of compensation is sought.

## II.    BACKGROUND

### A.    THE SIPA LIQUIDATION

8.      The Trustee and B&H's prior interim fee applications, each of which is fully

incorporated herein, have detailed the circumstances surrounding the filing of this case and the

events that have taken place during prior phases of this proceeding.

### B.    THE TRUSTEE, COUNSEL AND CONSULTANTS

9.      The Trustee and B&H's prior interim fee applications have detailed the description

of the Trustee's background and experience.

10.     In rendering professional services to the Trustee, B&H has utilized a legal team

comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax,

corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

11.     The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long

in duration, and broad in its geographical reach. The Trustee, with the assistance of his counsel,

4

has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities. To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

## C.    PRIOR COMPENSATION ORDERS

12.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

| **Applications** | **Compensation Period** | **Orders Entered**[4] |
|---|---|---|
| First Application (ECF Nos. 320, 321) | December 11, 2008 to May 31, 2009 | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | June 1, 2009 to September 30, 2009 | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | October 1, 2009 to January 31, 2010 | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | February 1, 2010 to May 31, 2010 | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | June 1, 2010 to September 30, 2010 | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | October 1, 2010 to January 31, 2011 | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | February 1, 2011 to May 31, 2011 | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |

---

[4]On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee. The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCACreque, an additional $0.60 became due and owing to that firm.

| **Applications** | **Compensation Period** | **Orders Entered**[4] |
|---|---|---|
| Eighth Application (ECF No. 4676) | June 1, 2011 to September 30, 2011 | January 2, 2013 (ECF No. 5181);[5] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | October 1, 2012 to January 31, 2012 | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | February 1, 2012 to June 30, 2012 | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | July 1, 2012 to November 30, 2012 | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | December 1, 2012 to April 30, 2013 | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | May 1, 2013 through July 31, 2013 | December 17, 2013 (ECF No. 5605) |
| Fourteenth Application (ECF No. 5980) | August 1, 2013 through November 30, 2013 | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | December 1, 2013 through March 31, 2014 | August 28, 2014 (ECF No. 7825) |
| Sixteenth Application (ECF No. 8549) | April 1, 2014 through July 31, 2014 | December 22, 2014 (ECF No. 8867) |
| Seventeenth Application (ECF No. 9583) | August 1, 2014 through November 30, 2014 | April 16, 2015 (ECF No. 9823) |
| Eighteenth Application (ECF No. 10814) | December 1, 2014 through March 31, 2015 | August 27, 2015 (ECF No. 11148) |
| Nineteenth Application (ECF No. 12089) | April 1, 2015 through July 31, 2015 | December 18, 2015 (ECF No. 12292) |
| Twentieth Application (ECF No. 12958) | August 1, 2015 through November 30, 2015 | April 28, 2016 (ECF No. 13180) |
| Twenty-First Application (ECF No. 13751) | December 1, 2015 through March 31, 2016 | September 8, 2016 (ECF No. 13990) |
| Twenty-Second Application (ECF No. 14456) | April 1, 2016 through July 31, 2016 | December 23, 2016 (ECF No. 14778) |
| Twenty-Third Application (ECF No. 15355) | August 1, 2016 through November 30, 2016 | May 10, 2017 (ECF No. 15984) |
| Twenty-Fourth Application (ECF No. 16367) | December 1, 2016 through March 31, 2017 | August 24, 2017 (ECF No. 16562) |
| Twenty-Fifth Application (ECF No. 16886) | April 1, 2017 through July 31, 2017 | December 21, 2017 (ECF No. 17072) |

---

[5]This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

| Applications | Compensation Period | Orders Entered[4] |
|---|---|---|
| Twenty-Sixth Application (ECF No. 17337) | August 1, 2017 to November 30, 2017 | April 25, 2018 (ECF No. 17524) |
| Twenty-Seventh Application (ECF No. 17763) | December 1, 2017 to March 31, 2018 | August 30, 2018 (ECF No. 17941) |
| Twenty-Eighth Application (ECF No. 18180) | April 1, 2018 to July 31, 2018 | December 20, 2018 (ECF No. 18324) |
| Twenty-Ninth Fee Application (ECF No. 18562) | August 1, 2018 to November 30, 2018 | April 25, 2019 (ECF No. 18696) |
| Thirtieth Fee Application (ECF No. 18867) | December 1, 2018 to March 31, 2019 | September 6, 2019 (ECF No. 18984) |
| Thirty-First Fee Application (ECF No. 19116) | April 1, 2019 to July 31, 2019 | December 12, 2019 (ECF No. 19219) |
| Thirty-Second Fee Application (ECF No. 19383) | August 1, 2019 to November 30, 2019 | May 4, 2020 (ECF No. 19516) |
| Thirty-Third Fee Application (ECF No. 19604) | December 1, 2019 to March 31, 2020 | August 26, 2020 (ECF No. 19728) |
| Thirty-Fourth Fee Application (ECF No. 19918) | April 1, 2020 to July 31, 2020 | December 14, 2020 (ECF No. 20093) |
| Thirty-Fifth Fee Application (ECF No. 20323) | August 1, 2020 to November 30, 2020 | April 19, 2021 (ECF No. 20451) |

## III.   SUMMARY OF SERVICES

13.      A SIPA proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.   Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

### A.   HARDSHIP PROGRAM

14.      After nearly 12 years, the Trustee officially terminated the Hardship Program. Statistics regarding how many customers availed themselves of the Hardship Program are detailed in prior fee applications.  After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, as of March 31, 2021, the Trustee

7

had dismissed 284 Hardship Program applicants-defendants from avoidance actions. As of March 31, 2021, 8 Hardship Program applicants-defendants were still under review and 365 applicants-defendants were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

### B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY

15.    Without the need for protracted litigation, during the Compensation Period, the Trustee settled 19 cases for $25,021,693.50. Through the end of the Compensation Period, the Trustee had successfully recovered approximately $14.418 billion.

16.    The Trustee entered into settlements subsequent to the Compensation Period that will bring additional funds into the Customer Fund.

17.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, will result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

18.    Through the end of the Compensation Period, the Trustee recovered $536,092,384.27 as a result of preferences and other settlements that were made pursuant to agreements subject to the net equity dispute. The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

### IV.    DETAILED DESCRIPTION OF SERVICES

19.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested. All of this requires an enormous effort by the Trustee and his counsel for the benefit of

the victims. The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

20.     Matter Number 01 is the general matter number used for tasks by the Trustee and B&H. Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

21.     Matter Numbers 03-77 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities. In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy and engage in discussions with counsel for defendant(s). Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

A.     **MATTER 01**

22.     This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

a.     **Task Code 02: Bankruptcy Court Litigation**

23.     This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

24.     During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations. They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations

including developments in Ponzi law, fraudulent transfer law, bankruptcy matters, privilege, evidence, and rules regarding experts and expert testimony.

25.     Several customers, including claimant Mr. Aaron Blecker, objected to the Trustee's denial of their net equity claims because they disputed whether they received funds that appear to be identified on BLMIS customer account statements as "PW," or "Profit Withdrawals."

26.     Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions. Accordingly, the Trustee instituted an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper. (ECF No. 10266).

27.     Following extensive briefing, discovery, and motion practice, the Court held a trial on the matter on January 19, 2018. After hearing testimony from the Trustee's professionals, Mr. Blecker's son, and BLMIS employees, and consideration of the BLMIS books and records offered into evidence, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS customer statement indicated that the customer received a cash distribution in the amount of the PW Transaction. Because claimant Mr. Blecker failed to provide any credible, contrary evidence that the "PW" Transactions on his customer statements were not received, he failed to sustain his burden of proving the amount of his customer claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513 (Bankr. SDNY 2018). The Court entered its Order Affirming the Trustee's Determinations Denying Claims and Overruling the Objections of Participating Claimant Aaron Blecker on August 3, 2018. (ECF No. 17878).

28.     An appeal was taken to the District Court and was fully briefed by January 18, 2019. (ECF Nos. 18, 19, 20, 23, 24). Appellants challenged this Court's application of the Federal

Rules of Evidence in admitting and relying on the BLMIS books and records in finding that the

Profit Withdrawal Transactions were properly treated as debits under the Net Investment Method.

On August 16, 2019, the District Court affirmed the Bankruptcy Court's decision.  *Blecker v.*

*Picard*, 2019 WL 3886721 (Aug. 16, 2019).  The District Court found no abuse of discretion in

the decision; specifically, it found that this Court rigorously and properly applied the Federal Rules

of Evidence and its admission of BLMIS's books and records as business records was proper.  The

District Court further held that the burden to overcome the Trustee's claim determination was

Mr. Blecker's and he failed to do so.

29.    On September 13, 2019, an appeal of the District Court's decision was taken to the

Second Circuit.  *Blecker v. Picard*, Docket No. 19-2988.  On December 27, 2019, Appellants filed

their opening brief, repeating their claims that this Court failed to apply the Federal Rules of

Evidence, improperly shifted the burden of proof to Mr. Blecker, and that Mr. Blecker could not

have ratified the transactions in his BLMIS account that occurred before 1992.

30.    The Trustee's and SIPC's oppositions were filed with the Second Circuit on

April 17, 2020.  Appellants filed their reply on May 27, 2020, and oral argument was held on

September 21, 2020.

31.    On October 6, 2020, the Second Circuit issued its Summary Order upholding the

District Court's judgment affirming this Court's decision that the Trustee properly treated PW

transactions as debits to BLMIS customer accounts.  Summary Order, *In re: Bernard L. Madoff*

*Investment Securities LLC*, No. 19-2988-bk (2d Cir. Oct. 6, 2020), ECF No. 86-1.  The Second

Circuit found that the District Court properly upheld this Court's admission of the BLMIS books

and records as within the "permissible bounds of its discretion."  *Id*. at 4.  Further, the Second

Circuit found no clear error as to this Court's factual determination that Blecker "ratified the PW

Transactions whether as a result of the 10-day clause in the 1992 customer agreements (for PW Transactions postdating those agreements), or through his 23 years-long, knowing acceptance of the PW Transactions and the corresponding reductions to his BLMIS accounts" prior to the 1992 customer agreements. *Id*. The Second Circuit found all other arguments by Mr. Blecker without merit and rejected them without discussion. *Id*. at 5.

32.     On March 19, 2020, the U.S. Supreme Court issued an order extending the deadline for filing petitions due on or after that date to 150 days from entry of judgment. In accordance with this order, Appellants' deadline to file a petition for a writ of certiorari was March 5, 2021. No petitions for certiorari were filed.

### b.     Task Code 03: Feeder Funds

33.     This categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors. The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and prosecute actions against such feeder funds for the recovery of Customer Property. Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

### c.     Task Code 05: Internal Meetings with Staff

34.     This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals. Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

### d.     Task Code 07: Billing and Trustee Reports

35.     This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the

statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### e.   Task Code 08: Case Administration

36.     This category relates to time spent assisting the efficient administration of the case.

37.     The Trustee filed several motions before this Court that govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

38.     On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings.  (ECF No. 4469).  This Court entered the Order on December 5, 2011.  (ECF No. 4560).

39.     On October 28, 2011, this Court entered an Order Granting Supplemental Authority to Stipulate to Extensions of Time to Respond and Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).  Supplemental Orders were entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012 (ECF No. 4483), July 18, 2014 (ECF No. 5358), January 16, 2015 (ECF No. 7037), July 17, 2015 (ECF No. 8762), July 15, 2016 (ECF No. 12312), December 23, 2016 (ECF No. 13601), July 31, 2017 (ECF No. 14447), December 31, 2017 (ECF No. 16169), June 27, 2018 (ECF No. 16718), December 19, 2018 (ECF No. 17560), December 18, 2019 (ECF No. 18093), December 16, 2020 (ECF No. 19027), and October 5, 2020 (ECF No. 19826).  On April 12, 2021, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through December 31, 2021 (ECF No. 20418).

####     f.     <u>Task Code 11: Press Inquiries and Responses</u>

40.     This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

####     g.     <u>Task Code 12: Document Review</u>

41.     This category relates to time spent by the Trustee and B&H attorneys reviewing and analyzing BLMIS documents and documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee, in order to assess relevance to case-wide strategies and to identify and develop evidence in support of the Trustee's claims and defenses, as well as other discovery-related tasks that cross multiple cases.

####     h.     <u>Task Code 13: Depositions and Document Productions by the Trustee</u>

42.     This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter, including team meetings, discussions and strategizing among Discovery Management Team case liaisons; research and analysis of issues with potential case-wide implications; creation and management of document databases, filing systems and related reference materials; creation and revision of discovery resources and procedural guidance; analysis and coordination of discovery affirmatively produced by the Trustee in avoidance actions; and responding to discovery propounded to the Trustee by various third parties and defendants in avoidance actions.

####     i.     <u>Task Code 14: International</u>

43.     The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is

actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Ireland, Israel, Luxembourg, Spain, and Switzerland. These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

44.     This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions. The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

45.     In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

### j.     Task Code 21: Allocation

46.     This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

47.     The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

48.     The Trustee filed twelve motions seeking entry of an order approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

15

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through Compensation Period | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $884.6 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.431 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $900.7 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $605.9 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[6] | $522.2 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/2015 | $345.472 million[7] | $1.567 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/2016 | $247.013 million | $246.7 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/2017 | $342.322 million | $326.4 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/2018 | $1.303 billion | $716.3 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/2019 | $515.974 million | $512.1 million | 2.729% | 18295 | 18398 |
| 11 | 2/28/2020 | $988.770 million | $369.3 million | 1.975% | 19226 | 19245 |
| 12 | 2/26/2021 | $74.325 million | $231.4 million | 1.240% | 20066 | 20209 |
| TOTAL | N/A | $14.368 billion | $13.314 billion | 69.848% | N/A | N/A |

49. On February 26, 2021, the Trustee distributed over $231.41 million, or 1.240% of each BLMIS allowed claim through the completion of the Twelfth Interim Distribution, unless the claim had been fully satisfied. This represents a significant milestone in this litigation, with 1,497 BLMIS accounts fully satisfied through the end of the Compensation Period.[8] The 1,497 fully satisfied accounts represent more than 65% of accounts with allowed claims. When combined with the prior eleven distributions, and $849.8 million in advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"), the Trustee has distributed

---

[6] The total amount allocated in the Fifth Allocation and Fifth Interim Distribution Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[7] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Distribution Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

[8] Any customer with an allowed claim of $1,654,980 has been fully satisfied.

over $14.16 billion to BLMIS customers through March 31, 2021, or 69.848% of each BLMIS
allowed customer claim.

## B.    MATTER 05 – CUSTOMER CLAIMS

### a.    Customer Claims

50.    During the Compensation Period, the Trustee allowed $691,895 in customer
claims, bringing the total amount of allowed claims as of March 31, 2021 to $19,416,249,866.92.
As of March 31, 2021, the Trustee has paid or committed to pay $849,838,412.47 in cash advances
from SIPC.  This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and
greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

51.    As of March 31, 2021, 11 claims relating to 7 accounts remained "deemed
determined," meaning that the Trustee has instituted litigation against those account holders and
related parties.  The complaints filed by the Trustee in those litigations set forth the express
grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code.  Accordingly,
such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise
and the judgments rendered against the claimants in the avoidance actions are satisfied.

### b.    General Creditor Claims

52.    As of March 31, 2021, the Trustee had received 428 timely and 22 untimely filed
secured and unsecured priority and non-priority general creditor claims totaling approximately
$1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing
claims on non-customer proof of claim forms.  Of these 450 claims and $1.7 billion, the Trustee
has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265
million.  At this time, the BLMIS general estate has no funds from which to make distributions to
priority/non-priority general creditors and/or broker dealers.  If the Trustee is able to fully satisfy
the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general

estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e). All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate. The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

### c.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

53.    Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

54.    The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

55.    In addition, the Trustee Website allows claimants and third parties to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of March 31, 2021, the Trustee and his professionals had received and

responded to thousands of e-mails via the Trustee Website from BLMIS customers and their representatives and fielded thousands of calls from claimants and their representatives.

56.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

### C.      MATTER 07 – MADOFF FAMILY

57.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing numerous avoidance actions against members of the Madoff family and Madoff-related business entities.

58.     During the Compensation Period, the Trustee continued to manage and attempt to liquidate certain fund and business interests transferred pursuant to the June 23, 2017 Stipulation and Order of Settlement (the "Stipulation") entered into between and among the Trustee, the U.S. Attorney's Office for the Southern District of New York (the "Government"), and the Estates of Andrew H. Madoff and Mark D. Madoff (the "Estates").  The Stipulation, which resolved all of the Trustee's claims against the Estates in *Picard v. Andrew H. Madoff*, Adv. Pro. No. 09-01503 (CGM), and against various Madoff-related business entities in related adversary proceedings, was approved by the Court on July 24, 2017.  (ECF No. 311).  The Trustee and the Government share all assets received under the Stipulation equally.

59.     As of November 30, 2020, the last day of the prior Compensation Period, the Trustee had received $14,272,892.28 under the Stipulation.  The Trustee did not receive any funds under the Stipulation during this Compensation Period.

### D.      MATTER 09 – FAIRFIELD GREENWICH

60.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd.

("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich

Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry

Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants

seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York

Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances,

and damages in connection with certain transfers of property by BLMIS to or for the benefit of the

Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv.

No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009). This matter also categorizes time spent

by the Trustee and B&H attorneys pursuing avoidance and recovery actions, as well as damages

claims against other Fairfield Greenwich Group related entities and individuals, including the

founding partners and other management officials.

61.     On June 7, 2011, this Court conditionally approved a settlement agreement between

the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators") (ECF

No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of

the Virgin Islands approved the settlement agreement between the Trustee and the Joint

Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and

Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion

(ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

62.     As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its

net equity claim from approximately $960 million to $230 million. Additionally, the Joint

Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators

also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield

Greenwich Group management companies, officers, and partners, and the Trustee retained his own

claims against the management defendants.  Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

63.     On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million.  *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y.), (ECF No. 107).   In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million.  Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

64.     On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to common briefing and hearings before Judge Rakoff of the District Court.  The Trustee briefed and presented argument at the hearings on these issues before the District Court.  As of July 31, 2014, the District Court had issued decisions on all issues subject to common briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.

65.     On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (CGM) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc*., Adv. No. 12-01702 (CGM) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (CGM) (Bankr. S.D.N.Y.).  The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court.  None of the defendants in the three actions have yet responded to the Trustee's complaints.

66.    On November 22, 2016, this Court issued its decision on the extraterritoriality motion to dismiss.  *See* discussion *infra* Section IV(S).  Under the decision, some of the claims against the moving defendants in the *Fairfield, Barrenche, and RD Trust* actions were dismissed. Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of certain non-moving defendants to the extraterritoriality motion to dismiss.  The parties agreed to consent to the entry of final judgments on the Court's extraterritoriality decision.  Finally, the parties consented to direct appeal of the extraterritoriality decision to the Second Circuit.  On March 16, 2017, the Trustee filed his notice of appeal in the *Fairfield, Barrenche, and RD Trust* actions.  (ECF Nos. 229, 97, 93).  On September 27, 2017, the Second Circuit issued an order granting the parties' request for certification for direct appeal of the appeal of the extraterritoriality decision.  *Picard v. Banque Lombard Ordier & Cie SA*., No. 17-1294 (2d Cir.), (ECF No. 388). On February 25, 2019, the Second Circuit reversed this Court's November 22, 2016 ruling.  *See* discussion *infra* Section IV(S).

67.    On January 24, 2019, in the action filed by the Joint Liquidators against the Fairfield management entities and individuals, *In re Fairfield Sentry Limited, et al*., Adv. No. 10-03800 (CGM), the parties entered a stipulation substituting the Trustee as the plaintiff.  (ECF No. 87).  On February 22, 2019, the Trustee filed a motion to amend the complaint with an attached proffered Amended Complaint.  (ECF No. 90).

68.    On March 25, 2019, this Court approved a settlement between the Trustee and certain Fairfield management defendants: Lourdes Barrenche, Robert Blum, Cornelius Boele, Gregory Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barrenche, Inc., Dove Hill Trust, Fortuna Asset Management, and Selecta Financial Corporation.  *Sec. Inv'r Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, Order (S.D.N.Y., March 25, 2019). (ECF
No. 270). The Trustee's claims against the remaining Fairfield management defendants remain
pending.

69.    On June 18, 2019, the Trustee and the remaining defendants informed this Court
they had agreed to enter mediation. (ECF No. 272). As a result, at the parties' request, this Court
ordered the June 26, 2019 pretrial conference to be continued to December 18, 2019. (ECF
No. 273).

70.    On June 19, 2019, again at the parties' request, this Court entered an order
consolidating the actions *Picard v. Fairfield Investment Fund Limited*, No. 09-01239 and *Picard
v. Fairfield Greenwich Capital Partners*, No. 12-01702. The consolidated action shall proceed
under *Picard v. Fairfield Investment Fund Limited,* No. 09-01239. (ECF No. 274).

71.    On September 25, 2019, this Court held a hearing with the Trustee and the
remaining defendants in the consolidated actions regarding a future case schedule. At the hearing,
the Trustee and the remaining defendants informed this Court they had agreed to enter mediation
with Richard Davis as the mediator. The Court ordered the parties to report on the progress of the
mediation at a hearing to be held on November 26, 2019 and further ordered all matters held in
abeyance until December 31, 2019. (ECF No. 275).

72.    On November 20, 2019, the Court entered the Second Order on Mediation in which
the Court ordered the parties to report on the progress of the mediation in writing by February 19,
2020 and further ordered all matters held in abeyance until March 31, 2020. (ECF No. 276).

73.    On February 19, 2020, the Court entered the Third Order on Mediation in which
the Court ordered the parties to report on the progress of the mediation in writing by May 19, 2020
and further ordered all matters held in abeyance until June 30, 2020. (ECF No. 279).

74.     On May 19, 2020, the Court entered the Fourth Order on Mediation in which the Court ordered the parties to report on the progress of the mediation in writing by August 19, 2020 and further ordered all matters held in abeyance until July 31, 2020.  (ECF No. 282).

75.     On August 20, 2020, the Court entered the Fifth Order on Mediation in which the Court lifted the order holding the matters in abeyance, ordered the Trustee to file his Second Amended Complaint in the *Fairfield* 09-01239 action by August 31, 2020, ordered the defendants in the *Fairfield* 10-03800 matter to file their Reply Memorandum in Support of the Motion To Dismiss by October 2, 2020, and adjourned the status conference to October 26, 2020.  (ECF No. 285).

76.     On August 28, 2020, the Trustee filed his Second Amended Complaint in the *Fairfield* 09-01239 matter.  (ECF No. 286).

77.     On October 2, 2020, the Defendants filed their Reply Memorandum of Law in Support of Motion to Dismiss in the *Fairfield* 10-03800 action.  (ECF No. 129).  In addition, the Defendants submitted a letter to the Court on the Foreign Authorities applicable to the *Fairfield* 10-03800 action.  (ECF No. 130).

78.     On October 20, 2020, the Fairfield actions were reassigned from Judge Stuart Bernstein to Chief Judge Cecelia G. Morris.  *Fairfield 090123* (ECF No. 288) and *Fairfield* 10-03800 (ECF No. 133).

79.     On October 21, 2020, this Court issued a scheduling order in the *Fairfield 09-1239* matter regarding the Defendants' request to file a Motion to Dismiss in which the Defendants' Opening Brief is to be filed by January 15, 2021, the Trustee's Opposition Brief is to be filed by April 15, 2021, and the Defendants' Reply Brief is to be filed by May 31, 2021.  (ECF No. 289).

80.     On October 26, 2020, this Court scheduled a pretrial conference in these matters for January 13, 2021 and requested the Parties to make a submission to the Court as to what substantive law applies in the *Fairfield* 10-03800 matter.  (ECF No. 290).

81.     On November 18, 2020, this Court entered an order in the *Fairfield* 10-03800 action ordering the Trustee to file a Supplemental Brief in Opposition to the Defendants' Motion to Dismiss by November 25, 2020 and the Defendants to file a Supplemental Reply Brief in Support of the Motion to Dismiss by December 11, 2020.  (ECF No. 137).

82.     On November 25, 2020, the Trustee filed his Supplemental Opposition to the Defendants' Motion to Dismiss in the *Fairfield* 10-03800 action.  (ECF No. 141).

83.     On November 25, 2020, the Trustee filed a letter as to the Foreign Authorities applicable to the *Fairfield* 10-03800 action.  (ECF No. 142).  On the same day, the Trustee submitted a letter to the Court on the claims and conflicts of law involved in the *Fairfield* 10-03800 matter.  (ECF No. 143). On November 25, 2020, in the *Fairfield* 10-03800 proceeding, the Trustee filed a Supplemental Memorandum in Opposition to the Defendants' Motion to Dismiss. (ECF No. 141).

84.     On December 11, 2020, the *Fairfield 10-03800* parties submitted a letter to the Court regarding the parties' position on conflicts of law concerning the Defendants' Motion to Dismiss. (ECF No. 145). On December 11, 2020, the Defendants filed their Supplemental Memorandum in Support of the Motion to Dismiss in *Fairfield 10-3800*. (ECF No. 146). On December 18, 2020, the parties submitted a letter to the Court regarding the choice of law issues involved in the Motion to Dismiss in the *Fairfield 10-03800* proceeding. (ECF No. 149). On January 13, 2021, the Court held a hearing on Defendants' Motion to Dismiss in the *Fairfield 10-03800* proceeding.

85.     On March 25, 2021, the Court issued its Memorandum Decision Granting in Part and Denying in Part Defendants' Motion to Dismiss in the *Fairfield 10-03800 proceeding*. (ECF No. 161). On April 8, 2021, the Court issued its order Granting in Part and Denying in Part Defendants' Motion to Dismiss in the *Fairfield 10-03800* proceeding. (ECF No. 162).

86.     On January 15, 2021, the Defendants filed their Opening Brief in Support of their Motion to Dismiss in the *Fairfield 09-01239* proceeding. (ECF No. 305). On April 15, 2021, the Trustee filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss in the *Fairfield 09-01239* proceeding. (ECF No. 311). The Defendants' Reply in Support of the Motion to Dismiss in the *Fairfield 09-01239* proceeding was filed on May 31, 2021. (ECF No. 313).

### E.      MATTER 21 – AVOIDANCE ACTION LITIGATION and MATTER 75 – GOOD FAITH/5A COHMAD REFERRED ACCOUNTS

87.     This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, discovery requests, and reviewing produced documents, communicating formally and informally with counsel for various defendants, drafting extensions of time to adjourn pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

### a.      Resolution of Good Faith Avoidance Actions

88.     At the beginning of the Compensation Period, there were 86 active good faith avoidance actions.  Twenty-two were closed during the Compensation Period, leaving a total of 64 active good faith avoidance actions by the end of the Compensation Period.   In certain avoidance actions, the Trustee entered into mediations and where appropriate, agreed to dismiss

certain defendants from the actions. In addition, the Trustee's counsel engaged in settlement negotiations, which led to 20 cases entering into documented settlements during the Compensation Period. In addition, the Trustee obtained judgments in two good faith avoidance actions during the Compensation Period.

### b.    **Trial-Related Motion Practice**

### 1.    **Michael Mann Action**

89.    Prior to the Compensation Period, on September 28, 2018, the Bankruptcy Court issued an Order setting the trial in *Picard v. BAM, L.P.*, Adv. Pro. No. 10-04390 (CGM) (the "Mann Action") to start on December 3, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 108. In response, the Defendants filed the Mann Motion to Withdraw on October 26, 2018, and on November 20, 2018, moved to stay the December 3 trial, pending a ruling from the District Court on the Mann Motion to Withdraw. *See* Adv. Pro. No. No. 10-04390, ECF Nos. 114, 121-122. The Trustee filed his opposition to the Defendants' motion to stay the trial on November 27, 2018, and oral argument was held on November 28, 2018. *See* Adv. Pro. No. 10-04390, ECF Nos. 127-28, 130.

90.    At the November 28, 2018 hearing, the Bankruptcy Court offered the Defendants the opportunity to make an oral motion to withdraw their customer claims and objections to the Trustee's determinations of those claims, and the Court granted the motion, which was memorialized in the subsequent Order Withdrawing Claims and Objections With Prejudice And Finally Determining Net Equity filed on December 20, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 138. However, the order did not determine the Bankruptcy Court's jurisdiction over the Mann Action, for which the parties provided separate briefing on December 5, 2018 and December 12, 2018, respectively. *See* Adv. Pro. No. 10-04390, ECF Nos. 132, 137. On January 18, 2019, the Bankruptcy Court issued its Memorandum Decision and Order holding that the Court has equitable

jurisdiction over the Mann Action despite the Defendants' withdrawal of their customer claims and objections (the "Jurisdictional Decision"). *See* Adv. Pro. No. 10-04390, ECF No. 148.

91.    On January 25, 2019, the Defendants moved for leave to appeal the Jurisdictional Decision. *See* Adv. Pro. No. 10-04390, ECF Nos. 149-150. The Trustee opposed the motion on February 8, 2019. *See* Adv. Pro. No. 10-04390, ECF Nos. 155-156. On February 19, 2019, the Defendants filed their reply brief in further support of their motion for leave to appeal the Jurisdictional Decision. *See* No. 19-cv-00812, ECF Nos. 6-7. The motion for leave remains pending before District Court Judge Vernon S. Broderick.

92.    On December 21, 2018, the Trustee filed his Motion for Summary Judgment in the Mann Action. *See* Adv. Pro. No. 10-04390, ECF Nos. 140-143. On February 22, 2019, the Defendants filed their opposition brief to the Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 158-160. On March 27, 2019, the Trustee filed his reply brief in further support of his Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 164, 166-167. Oral argument before the Bankruptcy Court was held on April 24, 2019. *See* Adv. Pro. No. 10-04390, ECF No. 173. On September 11, 2019, the Bankruptcy Court issued its Memorandum Decision Granting Relief Under Federal Rule of Civil Procedure 56(g). *See* Adv. Pro. No. 10-04390, ECF No. 174.

93.    On February 26, 2020, District Court Judge Vernon S. Broderick entered an Opinion and Order denying the Mann Motion to Withdraw and Motion for Leave and directing the Clerk of Court to close the motions. *See* No. 18-cv-09916, ECF No. 28; No. 19-cv-00812, ECF No. 10).

94.    On March 24, 2020, after conferring with counsel and the Court, the Trustee filed a notice of adjournment of the final pre-trial conference from March 25, 2020 to May 27, 2020

given the uncertainty created by COVID-19. *See* Adv. Pro. No. 10-04390, ECF Nos. 189, 191.
The parties subsequently agreed to complete all pre-trial matters by the final pre-trial conference,
which had been adjourned until July 1, 2020. *See* Adv. Pro. No. 10-04390, ECF No. 194.

95.    On June 17, 2020, the Trustee filed his motion in limine to exclude testimony and
exhibits related to Defendants' tax obligations to governmental taxing authorities and accrued
interest on principal deposits. *See* Adv. Pro. No. 10-04390, ECF No. 198-99.

96.    At the July 1, 2020 conference, the Court granted the Trustee's motion in limine,
and adjourned for one week to allow Defendants to secure access to their offices, which were
currently closed due to COVID-19 concerns, and provide the Court with an update by the next
scheduled conference on July 9, 2020. *See* Hr'g Tr. at 22:13-24; 24:18-25:6; Adv. Pro. No. 10-
04390, ECF No. 204.

97.    At the July 9, 2020 follow-up conference, Defendants confirmed they were able to
secure access to their offices, and the Bankruptcy Court adjourned until August 4, 2020 to finalize
the Pretrial Joint Order. *See* Hr'g Tr. at 6:14-23; Adv. Pro. No. 10-04390, ECF No. 205. The
Bankruptcy Court further adjourned the matter until August 11, 2020, after which the parties
submitted their finalized Joint Pretrial Order. *See id.*, ECF No. 209.

98.    On August 19, 2020, the matter was reassigned from Judge Bernstein to Chief
Judge Cecelia G. Morris and the trial was held virtually on September 14, 2020 pursuant to the
Order Establishing Procedures For Remote Evidentiary Hearing/Trial. *See* Adv. Pro. No. 10-
04390, ECF Nos. 213-214, 216.

99.    On December 11, 2020, Judge Morris issued her Memorandum Decision
Determining Funds Held in the Bank Accounts are Customer Property and Awarding Prejudgment
Interest in favor of the Trustee. *Picard v. BAM L.P. (In re BLMIS)*, Adv. Pro. No. 10-04390

(CGM), 2020 WL 7422316 (Bankr. S.D.N.Y. Dec. 11, 2020). On December 23, 2020, the

judgment was entered and so ordered by Judge Morris. *See* Adv. Pro. No. 10-04390, ECF No. 254.

100.    On January 5, 2021, Defendants filed their notice of appeal of the judgment entered

by Judge Morris. *See* Adv. Pro. No. 10-04390, ECF Nos. 257-58.

101.    On February 10, 2021, Defendants filed a stipulation of voluntary dismissal of the

appeal with prejudice. *See* No. 21-cv-00395 (PGG), ECF No. 7

### 2.    James Greiff Action

102.    During the pre-trial conference held on February 20, 2020, this Court set trial to

start on April 7, 2020. *See* Hearing Re Pre-Trial Conference, at 5:21-6:4; Adv. Pro. No. 10-04387,

February 20, 2020, ECF No. 111.

103.    On March 4, 2020, Defendant James Greiff filed a motion to withdraw the

reference. *See* No. 20-cv-02560, ECF Nos. 1, 3. The Trustee filed his opposition on April 20,

2020, and Defendant filed his reply brief in further support of his motion to withdraw the reference

on April 27, 2020. *See* No. 20-cv-02560, ECF Nos. 5-8.

104.    On March 10, 2020, Defendant filed an order to show cause why the Bankruptcy

Court should not grant his motion for stay of trial pursuant to Rule 5011(c) pending ruling by the

District Court on Defendant's motion to withdraw the reference. *See* Adv. Pro. No. 10-04357,

ECF Nos. 116-117. On that same day, the Bankruptcy Court entered a signed order to show cause,

scheduling oral argument to be held on March 18, 2020. *See* Adv. Pro. No. 10-04357, ECF

No. 118.

105.    On March 17, 2020, the Trustee filed his opposition, and on April 1, 2020,

Defendant filed his reply brief in further support of his motion for a stay. *See* Adv. Pro. No. 10-

04357, ECF Nos. 121-122, 126-27.

106.    On June 4, 2020, the District Court denied the Defendant's motion to withdraw the reference. *See* 20-cv-02560, ECF Nos. 9-10.

107.    On November 25, 2020, the Bankruptcy Court so ordered pre-trial deadlines and scheduled the parties' final pre-trial conference for January 27, 2021. *See* Adv. Pro. No. 10-04357, ECF No. 138.

108.    On January 27, 2021, the Trustee and Defendant entered into a Stipulation for Entry of Judgment, and the Bankruptcy Court entered a Consent Judgment with respect to the Trustee's claims against Defendant for avoidance and recovery of the disputed transfers. *See* Adv. Pro. No. 10-04357, ECF Nos. 142, 143.

### 3.    Savin Action

109.    On February 3, 2020, counsel for Defendants Estate of Robert Shervyn Savin and Barbara L. Savin moved for mandatory withdrawal of the reference and for dismissal of the action for lack of subject matter jurisdiction. *See* No. 20-cv-01186, ECF No. 1.

110.    The Trustee filed his opposition papers on March 11, 2020, and Defendants filed their reply brief in further support of their motion to withdraw on March 31, 2020. *See* No. 20-cv-01186, ECF Nos. 6, 10.

111.    On April 28, 2020, District Judge Laura Taylor Swain issued an order directing the Trustee to file a sur-reply addressing the Bankruptcy Court's equitable jurisdiction over matters where the Defendants' proof of claim was purportedly resolved prior to the initiation of the adversary proceeding. *See* No. 20-cv-01186, ECF No. 11. The Trustee filed his sur-reply on May 8, 2020. *See* No. 20-cv-01186, ECF Nos. 12-13.

112.    On September 8, 2020, Judge Swain issued her decision, denying Defendants' motion for mandatory withdrawal of the reference based on Defendants' failure to specify any federal non-bankruptcy laws that required "substantial and material consideration, much less

explain the significance of any such laws in the context of the avoidance action."  Opinion at 8,
No. 20-cv-01186, ECF No. 16.  Judge Swain also declined to exercise permissive withdrawal,
finding that Defendants "consented to the bankruptcy court's exercise of equitable jurisdiction" by
filing their customer claim.  *Id.* at 13 (citing *Picard v. BAM L.P.*, 612 B.R. 257, 265 n.6 (S.D.N.Y.
2020).

113.    On September 10, 2020, the Trustee filed a letter seeking to schedule a pretrial
conference.  *See* Adv. Pro. No. 10-04889, ECF No. 100.

114.    On January 14, 2021, the parties agreed to refer the matter to mediation and selected
the Honorable Allen Hurkin-Torres (Ret.) to act as mediator.  *See* Adv. Pro. No. 10-04889, ECF
No. 105.

### c.    Summary Judgment Motions

#### 1.    South Ferry/Lowrey Actions

115.    Prior to the Compensation Period, the Trustee entered into separate stipulations
with (1) Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson,
and Zev Wolfson, (2) Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and
Abraham Wolfson, (3) Defendant United Congregations Mesora, and (4) James Lowrey, setting a
schedule for summary judgment motion practice (collectively, the "South Ferry/Lowrey Actions").
*See* Adv. Pro. No. 10-04488, ECF No. 77; Adv. Pro. No. 10-04350, ECF No. 86; Adv. Pro. No. 10-
05110, ECF No. 53; Adv. Pro. No. 10-04387, ECF No. 71.

116.    Prior to the Compensation Period, from July 2017 through September 2017, the
parties in the South Ferry/Lowrey Actions filed and briefed motions for summary judgment.  *See*
Adv. Pro. No. 10-04488, ECF Nos. 86-93, 96-97, 100, 103; Adv. Pro. No. 10-04350, ECF Nos. 95-
102, 105-106, 109, 112; Adv. Pro. No. 10-05110, ECF Nos. 60-69, 70-71, 74, 77; Adv. Pro.

No. 10-04387, ECF Nos. 78-81, 83-84, 86-87, 91-92.  On December 6, 2017, oral argument was

held on the parties' motions for summary judgment.

117.    On March 22, 2018, the Bankruptcy Court issued its Report and Recommendation

to the District Court granting the Trustee's motion for summary judgment and denying the South

Ferry/Lowrey Actions' motions for summary judgment.  *See In re Bernard L. Madoff [Good Faith*

*Summary Judgment]*, Adv. Pro. No. 08-01789 (CGM), 2018 WL 1442312 (Bankr. S.D.N.Y.

March 22, 2018).

118.    On April 26, 2018, counsel for the South Ferry/Lowrey actions filed their

Rule 9003 Objections to the Bankruptcy Court's Report and Recommendation.  *See* Adv. Pro.

No. 10-04387, ECF No. 116.  On June 1, 2018, the Trustee filed his Response to Defendants'

Rule 9033 Objections.  *See* Adv. Pro. No. 10-04387, ECF No. 119.  As of June 14, 2018, the case

was assigned to District Judge Paul Engelmayer for his review and approval.

119.    On February 7, 2019, Judge Engelmayer issued his ruling adopting the Bankruptcy

Court's Report and Recommendation, granting summary judgment to the Trustee, and denying

summary judgment to the Defendants in the South Ferry/Lowrey Actions.  *See Sec. Inv'r Prot.*

*Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (CGM), 2019 WL 479185

(S.D.N.Y. Feb. 7, 2019).

120.    Defendants filed their notices of appeal to the Second Circuit on February 19, 2019.

*See* No. 18-cv-05381, ECF No. 32.  Defendants subsequently posted the requisite bond on April 9,

2019.  *See* No. 18-cv-05381, ECF No. 37.  Defendants filed their appellate brief with the Second

Circuit on June 4, 2019.  *See* No. 19-429, ECF No. 82.  The Trustee filed his appellee brief on

September 3, 2019.  *See* No. 19-429, ECF No. 102.  The Defendants filed their reply brief on

October 4, 2019.  *See* No. 19-419, ECF No. 138.  Oral arguments were heard telephonically on

March 31, 2020.  *See* No. 19-419, ECF No. 170.

121.    On September 24, 2020, the Second Circuit affirmed the District Court's judgment,

concluding that to the extent § 548(c) applies in this SIPA liquidation, the transfers were not "for

value" for purposes of that provision, and that recovery would not violate the two-year limitation

in § 548(a)(1).  *In re Bernard L. Madoff Inv. Sec. LLC*, No. 19-0429-BK(L), 2020 WL 5666677

(2d Cir. Sept. 24, 2020).

122.    On October 8, 2020, Defendants filed a petition for panel rehearing, or in the

alternative, for rehearing *en banc*.  On November 16, 2020, that request was denied.  *See* No. 19-

429, ECF Nos. 193, 197.

123.    On November 23, 2020, the Second Circuit issued its judgment mandate, affirming

the judgment of the District Court.  *See* No. 19-429, ECF No. 198-1.

124.    On March 30, 2021, Defendants filed a petition for a writ of certiorari before the

Supreme Court, and it was placed on the docket on April 1, 2021.  *See* No. 20-1382.  On May 3,

2021, the Supreme Court denied the writ of certiorari.  *See* No. 19-429, ECF No. 201.

125.    As of May 19, 2021, Defendants paid in full and complete satisfaction the judgment

of the District Court, including interest of 2.58% from February 8, 2019.  *See e.g.*, No. 18-cv-

05452, ECF No. 42; No. 18-cv-05453, ECF No. 39; No. 18-cv-05381, ECF No. 40; No. 18-cv-

05430, ECF No. 38.

## 2.    RAR Entrepreneurial Fund Ltd. Action

126.    On January 31, 2020, counsel for Defendant RAR Entrepreneurial Fund Ltd. moved

for permissive withdrawal of the reference.  *See* No. 20-cv-01029, ECF No. 1.

127.    On February 18, 2020, the Trustee filed a letter with the court consenting to the

withdrawal of the reference and proposing a briefing schedule for summary judgment, which

Defendants' counsel agreed to, and the Court so ordered on March 5, 2020. *See* No. 20-cv-01029, ECF Nos. 5, 7.

128.    On April 1, 2020, the Trustee filed his motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 12-20.    On June 5, 2020, Defendant filed its memorandum of law in opposition to the Trustee's motion for summary judgment and in support of its cross-motion for summary judgment dismissing the case in its entirely.    On June 9, 2020, Defendant filed its notice of cross-motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 25-29.    On June 23, 2020, the Trustee filed his brief in reply to Defendant's cross-motion and Defendant's opposition to his motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 33-35.    Defendant filed its reply brief in support of its cross-motion on June 30, 2020. *See* No. 20-cv-01029, ECF No. 36.

129.    On March 3, 2021, District Judge Jesse M. Furman granted in part and denied the Trustee's motion for summary judgment and denied in full Defendant's cross-motion, finding that the Trustee did have standing to pursue the Two-Year Transfers, and established the elements of his claim except that there were issues of fact with respect to whether the transfers were made by the LLC or Madoff personally, despite finding "RAR faces an uphill battle and that the Trustee is ultimately likely to prevail on its claim."    No. 20-cv-01029, 2021 WL 827195, at *10 (S.D.N.Y. Mar. 3, 2021).

130.    On March 18, 2021, Judge Furman held a telephonic conference, in which the parties agreed to go to mediation before proceeding with trial. *See* No. 20-cv-01029, ECF no. 45.

131.    On April 29, 2021, the parties filed a joint letter to notify the District Court that mediation concluded unsuccessfully and requested a conference to discuss next steps. *See* No. 20-cv-01029, ECF No. 46.

132.    On May 6, 2021, the court held a telephonic conference with the parties, during which the trial was scheduled to begin on July 19, 2021.    *See* No. 20-cv-01029, ECF No. 49.

133.    On June 2, 2021, the court issued an order rescheduling the trial to begin on July 20, 2021.  *See* No. 20-cv-01029, ECF No. 59.

### 3.    Estate of Seymour Epstein Action

134.    On February 14, 2020, counsel for Defendants Estate of Seymour Epstein, Shelburne Shirt Company, Inc., and Muriel Epstein moved for permissive withdrawal of the reference.  *See* No. 20-cv-01377, ECF No. 1.

135.    On March 6, 2020, the parties filed a letter with the District Court consenting to the withdrawal of the reference and attaching a proposed order, as previously done in *Picard v. Meisels*, No. 20-cv-01278 (GW).  *See* No. 20-cv-01377, ECF Nos. 5, 9.

136.    On June 8, 2020, the District Court issued an order denying the motion for withdrawal of the reference, referring the case back to the Bankruptcy Court to adjudicate over the Trustee's proposed motion for summary judgment.  *See* No. 20-cv-01377, ECF Nos. 8-9.

137.    On June 15, 2020, the Trustee filed a letter with the Bankruptcy Court referring to the District Court's denial of the Defendant's motion to withdraw the reference and requesting a pre-motion conference to be held on July 29, 2020.  *See* Adv. Pro. No. 04438, ECF No. 5.

138.    On July 22, 2020, Defendant filed a letter with the District Court requesting permission to file a motion to dismiss for lack of subject matter jurisdiction, despite the July 8, 2020 order denying his motion to withdraw the reference.  *See* No. 20-cv-01377, ECF No. 10. Judge Gregory H. Woods  "directed [defendants] to submit a pre-motion conference letter more fully setting out the bases for the proposed motion . . . address[ing] why the Court should not refer the proposed motion to dismiss to the bankruptcy court for a report and recommendation," and inviting the Trustee to submit a responsive letter.  *See id.*, ECF No. 11.  On July 24, 2020,

36

Defendant filed his pre-motion conference letter with the District Court, and the Trustee filed his response on July 27, 2020. *See* No. 20-cv-01377, ECF Nos. 12-13. During a telephone conference, Judge Woods directed Defendant to file a motion to withdraw the reference by August 10, 2020. However, Defendant notified the court on August 12, 2020 of his decision not to file a motion at that time. *Id.*, ECF Nos. 14-17.

139.    After the parties appeared at the July 29, 2020 hearing, the Bankruptcy Court entered an order setting the deadlines for the Trustee's motion for summary judgment and Defendant's cross-motion to dismiss for lack of subject matter jurisdiction. *See* Adv. Pro. No. 10-04348, ECF No. 109.

140.    On September 4, 2020, the Trustee filed his motion for summary judgment. *See* Adv. Pro. No. 10-04438, ECF Nos. 113-119. Defendant filed his combined opposition to the Trustee's motion for summary judgment and cross-motion to dismiss for lack of subject matter jurisdiction on October 9, 2020, the Trustee filed his combined reply in further support of his motion for summary judgment and opposition to Defendant's cross-motion to dismiss for lack of subject matter jurisdiction on October 30, 2020, and Defendant filed his reply in further support of his cross-motion to dismiss for lack of subject matter jurisdiction on November 6, 2020. *See* Adv. Pro. No. 10-04348, ECF No. 109.

141.    Oral argument on the Trustee's motion for summary judgment and Defendants' cross-motion to dismiss for lack of subject matter jurisdiction was adjourned to January 27, 2021 before the Bankruptcy Court. *See* Adv. Pro. No. 10-04348, ECF Nos. 138-145.

142.    On January 27, 2021, the Bankruptcy Court entered its Memorandum Decision granting summary judgment in favor of the Trustee, determining funds held in the bank accounts are customer property, and awarding prejudgment interest. *See* Adv. Pro. No. 10-04348, ECF

37

No. 155.  On February 4, 2021, the Bankruptcy Court entered its Judgment in favor of the Trustee

to recover from Defendants the avoidable transfers made within two years of December 11, 2008

plus pre-judgment interest at the rate of 4%, from Nov. 30, 2010 through Feb. 3, 2021.  *See* Adv.

Pro. No. 10-04348, ECF No. 158.

143.    On February 5, 2021, Defendants moved to vacate the Judgment, sought entry of a

proposed counter order, and requested a stay of enforcement of the Judgment pending appeal to

an Article III Court (the "Reconsideration Motion").  On March 3, 2021, the Bankruptcy Court

heard oral arguments, and subsequently denied Defendants' motion in its entirety.  *See* Adv. Pro.

No. 10-04348, ECF Nos. 160–162, 168–169.

144.    On March 15, 2021, Defendants filed their notice of appeal to the District Court,

where it was assigned to District Judge Colleen McMahon under case docket no. 21-cv-02334.

*See* Adv. Pro. No. 10-04348, ECF No. 172.

145.    On May 5, 2021, Defendants-Appellants filed their opening brief, and refiled it

again on May 28, 2021, after the District Court approved their motion to amend the record to add

additional documents.  The Trustee's brief was filed on June 14, 2021, and Defendants-Appellants'

reply brief is due on July 12, 2021.  *See* No. 21-cv-02334, ECF Nos. 20-21, 27-28, 30.

### 4.    Elaine Dine Living Trust Action

146.    On February 21, 2020, Defendants Elaine Dine Living Trust Dated 5/12/96 and

Elaine Dine moved for permissive withdrawal of the reference. *See* Adv. Pro. No. 10-04491, ECF

No. 88; No. 20-cv-01748, ECF No 1.

147.    On March 5, 2020, the Trustee filed a letter with the court consenting to the

withdrawal of the reference and proposing a briefing schedule for summary judgment, which

Defendants' counsel agreed to, and the Court so ordered on March 6, 2020. *See* No. 20-cv-01748,

ECF Nos. 5, 6.

148.     On April 24, 2020, the Trustee filed his motion for summary judgment. *See* No. 20-cv-01748, ECF Nos. 11-14. Defendants filed their opposition and cross-motion for summary judgment on June 26, 2020. *See* No. 20-cv-01748, ECF Nos. 23-27.

149.     The Trustee's reply on his motion and opposition on the cross-motion was filed on July 17, 2020 and Defendants' reply on the cross-motion was filed on July 24, 2020. *See* No. 20-cv-01748, ECF Nos. 30-33.

150.     On November 30, 2020, the parties entered into a settlement agreement and on January 5, 2021, a stipulation of voluntary dismissal with prejudice was filed. See Adv. Pro. No. 10-04491, ECF No. 95; No. 20-cv-01748, ECF No. 39

### 5.     Philip F. Palmedo Action

151.     On February 28, 2020, counsel for Defendant Philip F. Palmedo moved for permissive withdrawal of the reference. *See* No. 20-cv-01926, ECF No. 1.

152.     On March 18, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to. *See* No. 20-cv-01926, ECF No. 3.

153.     On July 8, 2020, District Judge Paul G. Gardephe denied without prejudice the motion to withdraw the reference, stating that given the Trustee's anticipated summary judgment motion, the case was not trial ready. *See* No. 20-cv-01926, ECF No. 5.

154.     On July 22, 2020, Defendant filed a letter requesting permission to file a motion to dismiss for lack of subject matter jurisdiction in District Court, despite the July 8, 2020 order denying his motion to withdraw the reference. *See* No. 20-cv-01926, ECF No. 6. Judge Gardephe denied Defendant's request, directing this Court to "address Defendant's motion in the first instance." *See id.*, CF No. 7.

155.    After the parties appeared at the July 29, 2020 hearing, the Court entered an order setting the deadlines for the Trustee's motion for summary judgment and Defendant's cross-motion to dismiss for lack of subject matter jurisdiction. *See* Adv. Pro. No. 10-04749, ECF No. 97.

156.    On September 4, 2020, the Trustee filed his motion for summary judgment. *See* Adv. Pro. No. 10-04749, ECF Nos. 99-105.

157.    On October 2, 2020, Defendant filed his combined opposition to the Trustee's motion for summary judgment and cross-motion to dismiss for lack of subject matter jurisdiction. *See* Adv. Pro. No. 10-04749, ECF Nos. 109-113.

158.    On October 23, 2020, the Trustee filed his motion for summary judgment. *See* No. 20-cv-01748, ECF Nos. 11-14. Defendants filed their opposition and cross-motion for summary judgment on June 26, 2020. *See* No. 20-cv-01748, ECF Nos. 23-27.

159.    The Trustee's reply on his motion and opposition on the cross-motion was filed on October 23, 2020 and Defendant's reply on the cross-motion was filed on October 30, 2020. *See* Adv. Pro. No. 10-04749, ECF Nos. 115-117, 121.

160.    On November 13, 2020, the parties entered into a settlement agreement and on December 17, 2020, a stipulation of voluntary dismissal with prejudice was filed. *See* Adv. Pro. No. 10-04749, ECF No. 133

### 6.    Mark Horowitz Action

161.    On March 6, 2020, counsel for Defendant Mark Horowitz moved for permissive withdrawal of the reference.  *See* No. 20-cv-02525, ECF No. 1.

162.    On April 7, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on April 9, 2020.  *See* No. 20-cv-02525, ECF Nos. 4-5.

163.    The Trustee's motion for summary judgment was filed on June 8, 2020.  *See* No. 20-cv-02525, ECF Nos. 12-18.  Defendant's opposition to the Trustee's motion and cross-motion for summary judgment was filed on July 13, 2020.  *See id.*, ECF No. 23-26, 28.  The Trustee's reply on his motion and opposition on the cross-motion was filed on August 6, 2020.  *See id.*, ECF No. 33-35.  Defendant's reply on the cross-motion was filed on August 13, 2020.  *See id.*, ECF No. 36.

164.    On December 4, 2020, the parties reached a settlement in principle, and on January 8, 2021, a stipulation of voluntary dismissal with prejudice was filed.  *See* Adv. Pro. No. 10-04748, ECF No. 97; No. 20-cv-02525, ECF No. 44.

### 7.    Zieses Investment Partnership Action

165.    On April 3, 2020, counsel for Defendants Zieses Investment Partnership, Barry Inger, Susan B. Alswanger, Caryn Zieses, Marshall Zieses, Neil R. Zieses, Debra S. Zieses, and Allan Inger moved for permissive withdrawal of the reference.  *See* No. 20-cv-02872, ECF No. 1.

166.    On May 27, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on June 4, 2020.  *See* No. 20-cv-02872, ECF Nos. 3-4.

167.    The Trustee's motion for summary judgment was filed on June 30, 2020.  *See* No. 20-cv-02872, ECF Nos. 9-15.  Defendant's opposition to the Trustee's motion and cross-motion for summary judgment was filed on August 4, 2020.  *See id.*, ECF No. 16-20.  The Trustee's reply on his motion and opposition on the cross-motion was filed on August 24, 2020.  *See id.*, ECF No. 24-26.  Defendant's reply on the cross-motion was filed on September 1, 2020.  *See id.*, ECF No. 27.  The case remains pending before the District Court.

### 8.    Lisa Beth Nissenbaum Action

168.    On April 17, 2020, counsel for Defendants Neal Kurn, in his capacity as Trustee for the Lisa Beth Nissenbaum Trust, Lisa Beth Nissenbaum Trust, and Lisa B. Nissenbaum moved for permissive withdrawal of the reference.  *See* No. 20-cv-03140, ECF No. 1.

169.    On April 29, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on April 30, 2020.  *See* No. 20-cv-03140, ECF Nos. 4-6.

170.    The Trustee's motion for summary judgment was filed on June 22, 2020.  *See* No. 20-cv-03140, ECF Nos. 15-18, 20-22.  Defendant's opposition to the Trustee's motion and cross-motion for summary judgment was filed on July 20, 2020.  *See id*., ECF No. 23-28.  The Trustee's reply on his motion and opposition on the cross-motion was filed on August 13, 2020.  *See id*., ECF No. 31-33.  Defendant's reply on the cross-motion was filed on August 20, 2020.  *See id*., ECF No. 36.

171.    On March 24, 2021, District Court Judge John G. Koeltl granted summary judgment in favor of the Trustee, finding no issues of disputed material fact, and awarded prejudgment interest.  *See* No. 20-cv-03140, 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021), ECF No. 46.

172.    On March 25, 2021, Judge Koeltl entered his judgment in favor of the Trustee to recover avoidable transfers in the amount of $625,551, plus prejudgment interest at a rate or 4%, from November 12, 2010 through the date of entry of judgment in the amount of $259,543.68 for a total sum of $885,094.68.  The judgment is now final and non-appealable.  *See* No. 20-cv-03140, ECF No. 47.

### 9.     JABA Associates LP Action

173.     On May 15, 2020, counsel for Defendants Audrey M. Goodman, Goodman Charitable Foundation, in its capacity as a limited partner of JABA Associates LP, Audrey Goodman, in her capacity as a general and limited partner of JABA Associates LP, Bruce Goodman, in his capacity as a general Partner of JABA Associates LP, Andrew Goodman, in his capacity as a general partner of JABA Associates LP, JABA Associates LP, and The Estate of James Goodman moved for permissive withdrawal of the reference.  *See* No. 20-cv-03836, ECF No. 1.

174.     On May 27, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on June 4, 2020.  *See* No. 20-cv-03836, ECF Nos. 3-5.

175.     The Trustee's motion for summary judgment was filed on July 14, 2020.  *See* No. 20-cv-02872, ECF Nos. 11-17.  Defendant's opposition to the Trustee's motion and cross-motion for summary judgment was filed on August 18, 2020.  *See id*., ECF No. 20-24.  The Trustee's reply on his motion and opposition on the cross-motion was filed on September 8, 2020.  *See id*., ECF No. 31-33.  Defendant's reply on the cross-motion was filed on September 15, 2020.  *See id*., ECF No. 34.

176.     On March 24, 2021, District Judge John G. Koeltl granted summary judgment in favor of the Trustee, finding no issues of disputed material fact, and awarded prejudgment interest.  *See* No. 20-cv-0386, 2021 WL 1112342 (S.D.N.Y. Mar. 24, 2021.

177.     On April 6, 2021, Defendants filed their Notice of Appeal of the District Court's judgment against them.  *See* No. 20-cv-0386, ECF No. 43.

### 10.   Marlene Krauss Action

178.   On May 22, 2020, Defendant Marlene Krauss filed a motion to withdraw the reference, which was assigned to District Judge Lorna G. Schofield and Magistrate Judge James L. Cott. *See* No. 20-cv- 04086, ECF No. 1.

179.   On June 4, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on June 5, 2020. *See* No. 20-cv-03836, ECF Nos. 4-6, 8.

180.   The Trustee's motion for summary judgment was filed on August 18, 2020. *See* No. 20-cv-02872, ECF Nos. 12-20. Defendant's opposition to the Trustee's motion and cross-motion for summary judgment was filed on September 8, 2020. *See id.*, ECF No. 21-25. The Trustee's reply on his motion and opposition on the cross-motion was filed on September 29, 2020. *See id.*, ECF No. 26-27. Defendant's reply on the cross-motion was filed on October 6, 2020. *See id.*, ECF No. 28.

181.   On December 1, 2020, the parties entered into a settlement agreement and on December 7, 2020, the District Court dismissed the proceeding without prejudice and costs. *See* No. 20-cv-03836, ECF No. 30.

### F.   <u>MATTER 29 – RYE/TREMONT</u>

182.   This matter categorizes time spent by the Trustee and B&H attorneys following the settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent

conveyances in connection with certain transfers of property by BLMIS (the "Tremont Litigation"). *Picard v. Tremont Group Holdings, Inc*., Adv. Proc. No. 10-05310 (CGM) (Bankr. S.D.N.Y. Dec. 7, 2010).

183.    After the court filing, the parties entered into substantive settlement negotiations, which resulted in a significant settlement approved by the Court on September 22, 2011.  The settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion.  *Picard v. Tremont Group Holdings, Inc*., Adv. Proc. No. 10-05310 (CGM) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF No. 38).  This is the largest cash settlement to date in any case brought by the Trustee against any feeder or investment fund.

184.    Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court.  There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").

185.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011. *See Picard v. Tremont Group Holdings, Inc*., Adv. Proc. No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18, 2011).  On June 27, 2012, United States District Judge George B. Daniels granted the Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012.  (ECF Nos. 35, 36).

186.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37).  Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012.  (ECF No. 39).  Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement

payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

187.    On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al*., Adv. Proc. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al*., Adv. Proc. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

188.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.*, Adv. Proc. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her. After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

189.    During the Compensation Period, strategy and investigation for proposed actions and amended pleadings against subsequent transferees has continued. This includes work related to issues related to establishing elements of actual knowledge or willful blindness of some of the proposed defendants, analysis consistent with recent court rulings, and preparation for proving at trial the underlying allegations against Tremont itself in support of several of the Trustee's avoidance actions against the recipients of subsequent transfers.

### G.    **MATTER 30 – HSBC**

190.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), as well as affiliated feeder funds including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., and

Alpha Prime Fund, as well as management companies affiliated with those funds, seeking the

return of approximately $1.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law for preferences and fraudulent conveyances. *Picard v.*

*HSBC Bank plc*, Adv. No. 09-01364 (CGM) (Bankr. S.D.N.Y. Nov. 30, 2012).

191.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims

against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted

in over $600 million in consideration to the Estate.  (ECF Nos. 338, 339, 349, 350, 352, 363).

192.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against

Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million

in consideration to the Estate.  (ECF No. 16431).

193.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against

Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over

$240 million in consideration to the Estate.  (ECF No. 16430).

194.    On October 20, 2017, this Court approved a settlement between the Trustee and

Thema International Fund plc.  *Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364, ECF

No. 482.  Under the settlement, Thema International paid approximately $687 million to the

BLMIS Customer Fund.

195.    On March 27, 2018, this Court approved a partial settlement between the Trustee

and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate.

*Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364, ECF No. 497.  The Trustee's litigation

with Alpha Prime is ongoing

196.    On July 27, 2019, Alpha Prime moved for judgment on the pleadings.  *Picard v.*

*HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 545.  On August 27, 2019, the Trustee

opposed that motion and cross-moved to amend the complaint. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 548. Oral argument was heard on September 19, 2019, and on September 23, 2019, the Court denied Alpha Prime's motion to dismiss and granted the Trustee's motion to amend. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 566.

197.    On September 24, 2019, the Trustee filed his amended complaint against Alpha Prime. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 567. Litigation is ongoing.

## H.    MATTER 32 – UBS/LUXALPHA/LIF

198.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (CGM) (Bankr. S.D.N.Y. Oct. 22, 2012).

199.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (CGM) (Bankr. S.D.N.Y. Oct. 22, 2012).

200.    In connection with the Luxalpha Action, on March 2, 2020, the Trustee filed his Motion for Leave to File a Second Amended Complaint and Proposed Second Amended Complaint. On April 3, 2020, the Luxalpha Liquidators filed their Memorandum in Opposition to the Trustee's Motion for Leave to File a Second Amended Complaint and in Support of Luxalpha's Cross-Motion for Claim Determination and Allowance. Subsequently, the Trustee filed his Reply Memorandum of Law in Further Support of the Trustee's Motion for Leave to File a Second Amended Complaint and Opposition to Luxalpha's Cross-Motion for Claim Determination and Allowance on May 4, 2020. On May 18, 2020, the Luxalpha Liquidators filed their Reply Memorandum of Law in Support of Luxalpha's Cross-Motion for Claim Determination and Allowance.

201.    On June 18, 2020, the Bankruptcy Court held a telephonic conference with counsel for the Trustee and the Luxalpha Liquidators regarding the Trustee's Motion and Luxalpha's Cross-Motion, during which the Bankruptcy Court stated that hearing on the motions will be adjourned *sine die* pending the issuance of orders from the Second Circuit in the appeals of *Picard v. Citibank, N.A.*, Case No. 20-1333 and *Picard v. Legacy Capital Ltd.*, Case No. 20-1334. *See* discussion *infra* Sections IV(J) and IV(P). On June 22, 2020, the Trustee and the Luxalpha Liquidators filed a joint notice adjourning the hearing on the motions accordingly. Subsequent to adjournment of Luxalpha's motion and the Trustee's motion, the Trustee communicated with Luxalpha on how to advance the case and proceed with discovery.

202.    On October 27, 2020 counsel for the Trustee and counsel for the Luxalpha Liquidators filed a joint stipulation, which was so-ordered by the Court (amended November 24, 2020), authorizing the Trustee and Luxalpha to proceed with discovery and authorizing the appointment of a discovery arbitrator.

203.    With respect to the LIF Action, on October 27, 2020, the Trustee filed a Motion for Entry of Order Approving a Settlement By And Between the Trustee and AA (Alternative Advantage) PLC on Behalf of its Sub-Fund Landmark Investment Fund Ireland ("Landmark"). On November 16, 2020, the Bankruptcy Court entered an order approving the settlement agreement. Pursuant to the terms of the settlement agreement, Landmark is to pay approximately $3 million and make available to B&H attorneys relevant documents and information that will assist the Trustee in prosecuting other actions to avoid and recover customer property.

204.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued to analyze legal issues in the case and reviewed relevant documents in preparation for drafting amended complaints. B&H attorneys also engaged in efforts to obtain discovery from relevant parties, including discovery from Landmark through an Order the Trustee obtained from the High Court of Justice of Ireland based on a Letter Rogatory filed in the LIF Action.

## I.    MATTER 33 – NOMURA INTERNATIONAL PLC

205.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura (the "Nomura Action"). *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010).

206.    By orders dated May 15, 2012 and June 7, 2012, the District Court entered orders withdrawing the reference in the Nomura Action to determine whether SIPA and/or the Bankruptcy Code apply extraterritorially, permitting the Trustee to avoid initial transfers that were received abroad or to recover from initial, immediate, or mediate foreign transferees (the

"Extraterritoriality Issue").  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 97 and 167.

207.    On July 7 and 28, 2014, the District Court entered an opinion and order, and a supplemental opinion and order, and returned the Nomura Action to the Bankruptcy Court for further proceedings.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 551 and 556.

208.    On December 31, 2014, Nomura filed a consolidated memorandum of law in support of a motion to dismiss concerning the Extraterritoriality Issue (the "Extraterritoriality Motion to Dismiss").

209.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted the Extraterritoriality Motion to Dismiss as to Nomura.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (CGM), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016).  *See* discussion *infra* Section IV(S).

210.    On March 3, 2017, the Bankruptcy Court entered an order granting the Extraterritoriality Motion to Dismiss.  *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 108.

211.    On April 4, 2017, the Trustee and Nomura filed a Certification to the Court of Appeals by All Parties.  *Id.*, ECF No. 113.  The Second Circuit subsequently authorized a direct appeal on October 13, 2017.

212.    On February 25, 2019, the Second Circuit issued a decision that vacated the Bankruptcy Court's order.  *In re Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Secs. LLC*, 917 F.3d 85 (2d Cir. 2019).  *See* discussion *infra* Section IV(S).

51

213.   On August 29, 2019, Nomura filed a petition for writ of certiorari in the United States Supreme Court.  On June 1, 2020, the United States Supreme Court denied the petition for writ of certiorari.  *See* discussion *infra* Section IV(S).

214.   During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued to investigate and analyze the facts of the case in anticipation of filing an amended complaint against Nomura and moving to consolidate the Nomura Action with a separate adversary proceeding the Trustee filed against Nomura on October 6, 2011, captioned as *Picard v. Nomura Int'l plc*, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y. Oct. 6, 2011).

## J.   MATTER 34 – CITIBANK

215.   This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citicorp North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action").  *Picard v. Citibank*, Adv. No. 10-05345 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010).

216.   On October 18, 2019, the Bankruptcy Court denied the Trustee's motion for leave to file an amended complaint.  (ECF No. 170).

217.   From October through November 2019, B&H attorneys analyzed the Court's ruling denying the Trustee's motion for leave to file an amended complaint and began preparing a motion for entry of final judgment.

218.   On November 19, 2019, the Bankruptcy Court granted the Trustee's motion on consent for entry of final judgment (ECF No. 174) and issued an order denying the Trustee's motion for leave to amend and entering partial final judgment.  (ECF No. 176).

219.    On November 27, 2019, the Trustee filed a notice of appeal to the Second Circuit (ECF No. 177) in connection with the following prior rulings: (i) Memorandum Decision Denying Trustee's Motion for Leave to File Amended Complaint. *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (CGM) (Bankr. S.D.N.Y. Oct. 18, 2019), ECF No. 140; (ii) Memorandum Decision Denying Trustee's Motion for Discovery Pursuant to Rule 26(d), *Picard v. Citibank*, 590 B.R. 200 (Bankr. S.D.N.Y. 2018) (Adv. Pro. No. 10-05345 (CGM)), ECF No. 140; (iii) Order of the United States Bankruptcy Court for the Southern District of New York (Bernstein, S.), dated June 18, 2018, denying the Trustee's motion for limited discovery pursuant to Federal Rules of Civil Procedure 26(d), *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (CGM) (Bankr. S.D.N.Y. June 18, 2018), ECF No. 143; and (iv) Opinion and Order of the United States District Court for the Southern District of New York (Rakoff, J.), dated April 28, 2014, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 516 B.R. 18 (S.D.N.Y. 2014) (No. 12-mc-115 (JSR)), ECF No. 524.

220.    On December 3, 2019, the Parties filed a joint certification to the Bankruptcy Court under 28 U.S.C. § 158(d)(2)(A) for direct appeal to the Second Circuit.

221.    On December 20, 2019, B&H attorneys, on behalf of the Trustee, filed an Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the Second Circuit. *Picard v. Citibank, N.A.*, 19-4282 (2d Cir. 2019), ECF No. 1.

222.    On April 23, 2020, the Second Circuit granted the Trustee's Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the Second Circuit. *Picard v. Citibank, N.A.*, 19-4282 (2d Cir. 2019), ECF No. 23.

223.    On May 28, 2020, the Trustee filed a motion for the appeals in *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), and *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), to

proceed in tandem and to therefore be heard before the same panel. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 28.

224.    On June 2, 2020, Defendants filed their opposition to the Trustee's motion. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 31.

225.    On June 8, 2020, the Trustee filed a Reply in support of his motion for *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2019), and *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), to proceed in tandem, and on that same day, the Second Circuit granted the Trustee's motion. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2019), ECF No. 45. *See* discussion *infra* Section IV(P).

226.    On August 6, 2020, the Trustee filed his appellate brief and appendices.   On August 13, professors of bankruptcy law, the National Association of Bankruptcy Trustees, and professors of civil procedure filed their respective briefs in support of the Trustee as *amici curiae*.

227.    On November 5, 2020, Defendants-Appellees filed their opposition brief, ECF No. 134.

228.    On November 12, 2020, (i) the Securities Industry and Financial Markets Association and the American Bankers Association; (ii) ABN AMRO Bank N.V.; and (iii) ABN AMRO Retained Custodial Services (Ireland) Limited and ABN AMRO Custodial Services (Ireland) Ltd. filed their respective briefs in support of the Defendants-Appellees' opposition as *amici curiae*, ECF Nos. 136, 139, 140.

229.    On November 25, 2020, the Trustee and SIPC filed their respective reply briefs, ECF Nos. 166, 167.

230.    Oral argument was heard on March 12, 2021 before the Second Circuit. A decision is expected later in 2021.

### K.    MATTER 35 – NATIXIS

231.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

232.    Prior to the Compensation Period, the Second Circuit issued its opinion regarding extraterritoriality and comity, reversing the Bankruptcy Court's 2016 decision. *In re Picard, Trustee for Liquidation of BLMIS*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *infra* Section IV(S). This Second Circuit decision revived claims against all Natixis Defendants. To give the Trustee time to analyze the Second Circuit decision, the parties entered a stipulation on February 27, 2019, staying the action for 30 days. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 180).

233.    On March 28, 2019, the parties entered a stipulation to stay the action until the mandate issues from the Second Circuit and the Bankruptcy Court's jurisdiction over the case is revived. *Id.*, (ECF No. 181).

234.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued to investigate and analyze the facts of the case, reviewed and analyzed pleadings and decisions in related cases, and worked on drafting amended pleadings.

L.    **MATTER 53 – MAGNIFY**

235.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green and Express Enterprises Inc. (collectively, the "Magnify Defendants") seeking the return of over $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants. *Picard v. Magnify Inc., et.al.*, Adv. No. 10-05279 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2010).

236.    Following the Court's Order of June 18, 2019 directing the parties to participate in mediation (ECF No. 181) and the July 11, 2019 order appointing Mr. Ted Berkowitz as the mediator (ECF No. 185), the parties engaged in a mediation from September 12-14, 2019 to consider a settlement framework that would involve both the U.S. action and the Trustee's action in Israel against certain defendants ("Direct Action"). Following the mediation session, discussions among the parties continued, which resulted in terms of a potential settlement.

237.    The Trustee continued negotiating and drafting agreements for the resolution of those actions, along with consent judgments to be entered against the defendants and other ancillary documents. In connection with the negotiations, the Trustee conducted due diligence on financial disclosures provided by the defendants.

238.    As a result of those efforts, the Trustee entered into a settlement agreement with the U.S. Defendants, which was approved by the Bankruptcy Court on September 28, 2020, and with the defendants in the Direct Action as well. In addition to a settlement payment of $3.5 million USD, which exceeded the two-year fictitious profits alleged against certain defendants, the settlement avoided the full life-to-date amount of the initial transfers as fictitious profits pursuant

to the Bankruptcy Code. The settlement resulted in Consent Judgments against Defendants Magnify, Premero, Strand, and YHA for the full amount of the unrecovered liability alleged by the Trustee, among other benefits. YHA has no assets and did not contribute to the settlement payment. The Consent Judgments were entered by the Court on October 22, 2020.

239.    After the settlement was approved by the Bankruptcy Court, the Trustee focused on potential claims against several subsequent transferees who received tens of millions of dollars that originated from the fraud at BLMIS.

240.    The Trustee also continued to prosecute his pending action commenced in 2015 in Israel to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts ("Indirect Action"). During the Compensation Period, the Trustee worked with Israeli counsel to analyze strategic issues relating to the case, including working with experts in support of the claims, and navigated multiple issues related to document discovery, including addressing logistical and strategic issues relating to the production of documents in a foreign country, assessing deficiencies in the defendants' discovery responses, and performing various legal and factual research to help prosecute the Trustee's case.

241.    During the Compensation Period, the Trustee and Israeli counsel continued to work together on trial preparation tasks in the Indirect Action and worked with U.S. and Israeli experts in connection with expert reports and related materials. The Trustee and Israeli counsel also continue to prepare a comprehensive final plaintiff's evidence submission due to the Israeli court on July 11, 2021 in furtherance of the preparation for trial.

## M.    MATTER 60 – AVELLINO & BIENES

242.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities

(collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Avellino*, Adv. No. 10-05421 (CGM) (Bankr. S.D.N.Y. Dec. 10, 2010).

243.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared for trial, which included reviewing documents produced by the A&B Defendants, BLMIS scanned hard copy documents, documents produced by third-parties, criminal trial testimony, and deposition transcripts of defendants and former BLMIS employees, as well as analyzing evidence sand performing overall case management.

244.    B&H attorneys, on behalf of the Trustee, focused on strategizing and planning for expert needs. The Trustee also prepared for and took the deposition of defendants' expert, Mr. Stanley Fortgang, and prepared for and defended the deposition of the Trustee's expert, Ms. Lisa Collura.

245.    B&H attorneys also focused on summary judgment motions, including developing the Trustee's motion, as well as opposing defendants' anticipated motion, which included analyzing defendants' expert's opinions, reviewing and identifying key documents, analyzing deposition testimony of defendants and third parties (including former BLMIS employees and experts), and developing themes and arguments for same.

## N.    **MATTER 62 – SUBSEQUENT TRANSFERS**

246.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.

247. Prior to the Compensation Period, the Trustee briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to common briefing and hearings. As of July 31, 2014, the District Court issued all of its decisions on the issues subject to common briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.

248. As part of its common briefing decisions, the District Court remanded the cases in which subsequent transfer defendants filed an extraterritoriality motion to dismiss.

249. On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss. This matter was appealed to the Second Circuit, which ruled in favor of the Trustee. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). The Supreme Court of the United States denied defendants' petition for writ of certiorari on June 1, 2020. *See* discussion *infra* Section IV(S).

250. As part of the original December 10, 2014 scheduling order regarding the extraterritoriality motion to dismiss briefing, this Court held in abeyance the Trustee's Motion for Limited Discovery until after ruling on the Defendants' Extraterritoriality Motion to Dismiss. On June 5, 2018, the Court denied the Trustee's Motion for Limited Discovery. (ECF No. 16927).

251. On October 14, 2020, in the action *Irving H. Picard, Trustee vs. Standard Chartered Financial Services (Luxembourg) S.A. et al*., Adv. Pro. No 12-01565, the Trustee filed a Motion for Leave to Amend His Complaint. (ECF No. 119). On October 23, 2020, in response to the Trustee's Motion for Leave to Amend, Defendants in the *Standard Chartered* action filed a Letter Requesting a Conference with the Court. (ECF No. 123). On October 26, 2020, the Trustee

filed a letter in response to the Standard Chartered defendants' Letter Requesting a Conference with the Court. (ECF No. 124). On October 29, 2020, this Court held a telephonic conference with the Trustee and the Standard Chartered defendants' counsel and ordered the parties to set a schedule for briefing on a Motion To Stay by the Standard Chartered defendants. On November 4, 2020, a stipulated briefing order on the Motion to Stay was filed. (ECF No. 127). On November 12, 2020, the Standard Chartered defendants filed a Motion to Stay. (ECF No. 128).

252.    On December 3, 2020, the Trustee filed a Memorandum of Law in Opposition to the Standard Chartered defendants' Motion to Stay. (ECF No. 133). On December 10, 2020, the Standard Chartered defendants filed a Reply Memorandum of Law in Support of their Motion to Stay. (ECF No. 136). On December 16, 2020, this Court held a hearing on the Standard Chartered defendants' Motion to Stay. (ECF No. 139). On December 16, 2020, this Court entered an order granting the Standard Chartered defendants' Motion to Stay until the Second Circuit issues its decision in *Picard v. Citibank,* Case No. 20-1333 (2d Cir.) and *Picard v. Legacy Capital Ltd.,* Case No. 20-1334 (2d Cir.). *See* discussion *supra* Section IV(J) and *infra* Section IV(P).

253.    On February 26, 2021, this adversary proceeding was reassigned to Chief Judge Cecelia G. Morris. (ECF No. 140).

254.    On November 10, 2020, the Trustee filed a Motion for Leave to Amend in the action entitled *Picard v. Royal Bank of Canada et al*., Adv. Pro. No. 12-01699. (ECF No. 112). On November 24, 2020, the Royal Bank of Canada defendants filed a Motion to Stay the proceeding until the Second Circuit issues its decision in *Picard v. Citibank,* Case No. 20-1333 (2d Cir.) and *Picard v. Legacy Capital Ltd.,* Case No. 20-1334 (2d Cir.) (ECF. No. 115). On December 30, 2020, the Trustee filed a Memorandum in Law Opposing the Motion to Stay. (ECF No. 120). On January 8, 2021, the Royal Bank of Canada defendants filed a Reply Memorandum in Support of

the Motion to Stay.  (ECF No. 124).  On January 13, 2021, the Court held a hearing on the Royal

Bank of Canada defendants' Motion to Stay and granted the stay in part but ordered certain

conditions for any of the Royal Bank of Canada defendants filing a Motion to Dismiss for a Lack

of Personal Jurisdiction.  The Court issued its Stay Order on January 27, 2021.  (ECF No. 129).

255.    On February 26, 2021, this adversary proceeding was reassigned to Chief Judge

Cecelia G. Morris. (ECF No. 132).

256.    As of March 31, 2021, the Trustee's claims against the subsequent transfer

defendants remain pending. All of those proceedings have been reassigned to Chief Judge Cecelia

G. Morris.

## O.    MATTER 63 – CITRUS INVESTMENT HOLDINGS, LTD.

257.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Citrus Investment Holdings, Ltd. ("Citrus") seeking the return of

approximately $17 million under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection

with certain transfers of property by BLMIS to or for the benefit of Citrus (the "Citrus Action").

*Picard v. Citrus Investment Holdings, Ltd.*, Adv. No. 10-04471 (SMB) (Bankr. S.D.N.Y.

November 30, 2010).

258.    During the Compensation Period, B&H attorneys, on behalf of the Trustee,

continued preparing an amended complaint and analyzing potential subsequent transfer claims in

addition to the claims set forth in the original complaint.  This work included review of and

revisions to the amended complaint, analysis of the amended complaint's allegations concerning

bad faith with regard to the Trustee's pleading burden and related appeals, the identification and

analysis of relevant transfers and structured transactions bearing on the Trustee's claims, and

review of relevant correspondence and additional account documents.  The work done during the

61

Compensation Period also included review of documents produced by service providers to Citrus relating to the credit facility underlying the subsequent transfers at issue, and analysis related to continuing settlement negotiations.

### P.    MATTER 65 – LEGACY

259.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2010).

260.    During the Compensation Period, the Trustee's counsel evaluated and prepared a subsequent transfer recovery complaint to be brought within the statutory time period set forth in 11 U.S.C. § 550(f).

261.    On November 11, 2020, the Trustee filed a recovery complaint against Rafael Mayer, David Mayer, Montpellier International, Ltd., Prince Assets LDC, Khronos Group, Ltd., Montpellier USA Holdings, LLC, Price Resources LDC, Prince Capital Partners LLC, and Khronos Liquid Opportunities Fund Ltd. (collectively, the "Defendants"). The complaint seeks to recover approximately $49,505,850 in subsequent transfers of BLMIS customer property originally made to Montpellier and Prince by Legacy. Among the claims are claims for vicarious liability including alter ego liability, and piercing the corporate veil concerning the individual defendants.

262.    On March 2, 2021, each of the Defendants filed Motions to Dismiss the Trustee's recovery complaint. Pursuant to a stipulated briefing schedule between the Trustee and the Defendants, the Trustee's Opposition to Defendants' Motions to Dismiss shall be filed on May 4,

2021, and the Defendants' reply papers shall be filed by June 1, 2021.  The Court set oral argument on Defendants' Motions to Dismiss for June 16, 2021.

263.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared opposition briefs in connection with the Motions to Dismiss.

264.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, evaluated and prepared a complaint seeking to recover from BNP Paribas - Dublin Branch ("BNP Paribas") pursuant to Section 550 of the Bankruptcy Code, initial transfers made from BLMIS to BNP Paribas from Legacy's BLMIS account.  These transfers were avoided in the Final Judgment as fictitious profits transferred from BLMIS to, or for the benefit of Legacy.  B&H attorneys, on behalf of the Trustee, entered into a tolling agreement with BNP Paribas's counsel in order to preserve such potential recovery claims against BNP Paribas.

265.    During the Compensation Period, the Trustee's counsel continued preparations in connection with the appeal and cross-appeal previously filed in this adversary proceeding.  For background, on November 22, 2019, B&H attorneys, on behalf of the Trustee, filed a notice of appeal in connection with the following prior rulings: (i) Memorandum Decision Regarding Motions to Dismiss the Trustee's Amended Complaint, granting in part Legacy Capital Ltd.'s motion to dismiss the Trustee's Amended Complaint.  *Picard v. Legacy Capital Ltd*., Adv. Pro. No. 10-05286 (CGM) (Bankr. S.D.N.Y. Mar. 14, 2016), ECF No. 134; (ii) Order Granting Legacy Capital Ltd.'s and Khronos LLC's Motions to Dismiss the Amended Complaint Under Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(6).  *Picard v. Legacy Capital Ltd*., Adv. Pro. No. 10-05286 (CGM) (Bankr. S.D.N.Y. Apr. 12, 2016), ECF No. 137; and (iii) Opinion and Order of the United States District Court for the Southern District of New York (Rakoff, J.), dated

April 28, 2014.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 516 B.R. 18 (S.D.N.Y. 2014) (No. 12 mc-115 (JSR)), ECF No. 524 (the "Trustee's Appeal").

266.    On November 26, 2019, Legacy filed a notice of cross-appeal of the Final Judgment, including without limitation the Memorandum Decision and Order Granting Relief under Federal Civil Rule 56(g).  *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-05286 (CGM) (Bankr. S.D.N.Y. June 25, 2019), ECF No. 221 (the "Cross Appeal").   The Parties thereafter designated their respective Contents and Issues on Appeal and Cross-Appeal in accordance with the Bankruptcy Court's individual practices and the governing rules of appellate procedure.

267.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, reviewed Legacy's brief in opposition of the issues presented in the Trustee's Appeal, and submitted a reply brief on November 25, 2020 in accordance with the briefing schedule ordered by the Second Circuit.  As of November 25, 2020, the Trustee's Appeal of the good faith standard under sections 548(c) and 550(b) of the Bankruptcy Code was fully briefed before the Second Circuit.  Oral argument on the Trustee's Appeal occurred March 12, 2021 before Circuit Judges Wesley, Sullivan and Menashi. A decision is expected later in 2021. *See* discussion *supra* Section IV(J).

## Q.    **MATTER 71 – SQUARE ONE**

268.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Square One Fund Ltd. ("Square One") seeking the return of approximately $26 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law, in connection with certain transfers of property by BLMIS to or for the benefit of Square One.  *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (CGM) (Bankr. S.D.N.Y. Nov. 29, 2010).

269.    Prior to the Compensation Period, the Trustee filed and served the Amended Complaint on December 21, 2018.  (ECF Nos. 167–69).  After Square One filed a motion to dismiss on February 14, 2019 (ECF No. 170), the Court granted in part and denied in part the motion to dismiss at a hearing on May 29, 2019.  On June 13, 2019, the Court entered an order granting in part and denying in part Square One's motion to dismiss.  (ECF No. 177).  The Court so-ordered a Case Management Plan on July 16, 2019.  (ECF No. 178).

270.    During the Compensation Period, the Trustee and Square One continued to engage in fact discovery pursuant to the Court's Case Management Plan.

271.    In addition, on March 19, 2021, the Trustee filed and served a Motion for the Issuance of a Letter of Request for International Judicial Assistance to collect documents from the A.R.T. – Absolute Return Target Fund.  (ECF Nos. 197–198).  On April 15, 2021, the Court entered an order granting the Trustee's motion.  (ECF No. 202).

272.    Finally, the Trustee filed and served three notices adjourning the pre-trial conference.  (ECF Nos. 188–191, 195–196).

## R.    MATTER 73 – BNP PARIBAS

273.    This matter categorizes time spent by the Trustee and B&H attorneys in separate adversary proceedings that collectively seek the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust (Cayman) Limited, BNP Paribas Securities Services, BNP Paribas (Suisse) S.A., and BGL BNP Paribas Luxembourg S.A., (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS. *See Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. Nov. 3, 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (SMB) (Bankr.

S.D.N.Y. May 4, 2012); and *Picard v. Equity Trading Portfolio Ltd*., Adv. No. 10-04457 (SMB)

(Bank. S.D.N.Y. Dec. 1, 2010) (collectively, the "BNP Paribas Proceedings").

274.    On October 3, 2018, the Bankruptcy Court issued its decision granting in part and

denying in part the BNP Paribas Defendants' motion to dismiss claims to recover subsequent

transfers that the BNP Paribas Defendants received from certain Tremont feeder funds, and on

January 17, 2019, the BNP Paribas Defendants filed their answer to the Trustee's Amended

Complaint. The parties then agreed to stay the proceedings until the United States Court of Appeals

for the Second Circuit decides the good faith appeal pending in the Trustee's actions against

Citibank, N.A. and Legacy Capital Ltd. *See* discussion *supra* Section IV(J) and (P).

## S.    MATTER 77 – EXTRATERRITORIALITY

275.    On July 6, 2014, the District Court held that certain of the Trustee's claims were

barred by principles of international comity and the presumption against extraterritoriality, stating

that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent

transfers received abroad by a foreign transferee from a foreign transferor," and directed further

proceedings related to the Trustee's claims be returned to the Bankruptcy Court. *Sec. Inv'r Prot.

Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

276.    On November 22, 2016, this Court issued a decision granting in part and denying

in part defendants' motion to dismiss on extraterritoriality. *Sec. Inv'r Prot. Corp v. Bernard L.

Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495).

277.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court

and Bankruptcy Court. The Second Circuit held that neither the presumption against exterritoriality

nor international comity limits the reach of section 550(a)(2) of the Bankruptcy Code, enabling

the Trustee to recover property from certain subsequent transferees.   Accordingly, the Second

Circuit vacated the judgments of the Bankruptcy Court and remanded for further proceedings. *In*

*re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL

903978 (2d Cir. Feb. 25, 2019).  On April 8, 2019, defendants filed a motion to stay the issuance

of the mandate pending the filing of a petition for a writ of certiorari, (ECF No. 1413), which the

Second Circuit granted on April 23, 2019.  (ECF No. 1503).

278.    On August 30, 2019, defendant-petitioners filed a petition for a writ of certiorari in

the Supreme Court of the United States.  *HSBC Holdings PLC v. Irving H. Picard*, No. 19-277.

On September 30, 2019, amicus briefs in support of petitioners were filed by the Cayman Islands

and the British Virgin Islands; certain British Virgin Islands restructuring professionals; Cayman

Finance and Recovery and Insolvency Specialists Association of the Cayman Islands; Recovery

and Insolvency Specialists Association of Bermuda; and the Securities Industry and Financial

Markets Association, the Institute of International Bankers, and the U.S. Chamber of Commerce.

On October 30, 2019, the Trustee as respondent filed his brief in opposition to the defendants'

petition, and the petitioners filed their reply brief on November 14, 2019.

279.    On December 9, 2019, the Supreme Court of the United States invited the Solicitor

General to file a brief in this case expressing the views of the United States. On April 10, 2020,

the Solicitor General filed a brief recommending that the Court deny the petition.

280.    The petition was distributed on April 28, 2020 for consideration at the Court's May

14, 2020 conference.  On June 1, 2020, the Supreme Court denied defendants' petition.

## V.    <u>COMPENSATION REQUESTED</u>

281.    This Application has been prepared in accordance with the Amended Guidelines

for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on April 19, 1995, as amended on August 1, 2013 (the "Local Guidelines")

and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration

of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

282.    The Trustee, and B&H, as counsel to the Trustee, expended 60,571.10 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $522.76 for fees incurred.  The blended attorney rate is $610.90.

283.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application.   In connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $1,343,548.00 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $10,766.46.

284.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $3,518,227.87.  The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

285.    Pursuant to the Second Amended Compensation Order, on January 19, 2021, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from December 1, 2020 through December 31, 2020 (the "December Fee Statement").  The December Fee Statement reflected fees of $7,790,309.80 and expenses of $41,417.40.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the December Fee Statement reflected fees of $7,011,278.82 and expenses of

$41,417.40. After subtracting the Court-ordered 10% holdback, SIPC advanced $6,310,150.94 for services rendered and $41,417.40 for expenses incurred by the Trustee and B&H.

286.    Pursuant to the Second Amended Compensation Order, on February 16, 2021, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from January 1, 2021 through January 31, 2021 (the "January Fee Statement"). The January Fee Statement reflected fees of $8,235,126.70 and expenses of $32,774.75. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the January Fee Statement reflected fees of $7,411,614.03 and expenses of $32,774.75. After subtracting the Court-ordered 10% holdback, SIPC advanced $6,670,452.63 for services rendered and $32,774.75 for expenses incurred by the Trustee and B&H.

287.    Pursuant to the Second Amended Compensation Order, on March 18, 2021, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from February 1, 2021 through February 28, 2021 (the "February Fee Statement"). The February Fee Statement reflected fees of $8,909,649.40 and expenses of $55,068.81. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the February Fee Statement reflected fees of $8,018,684.46 and expenses of $55,068.81. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,216,816.01 for services rendered and $55,068.81 for expenses incurred by the Trustee and B&H.

288.    Pursuant to the Second Amended Compensation Order, on April 20, 2021, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from March 1, 2021 through

69

March 31, 2020 (the "March Fee Statement").   The March Fee Statement reflected fees of $10,247,192.80 and expenses of $35,322.90.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the March Fee Statement reflected fees of $9,222,473.52 and expenses of $35,252.90.   After subtracting the Court-ordered 10% holdback, SIPC advanced $8,300,226.17 for services rendered and $35,252.90 for expenses incurred by the Trustee and B&H.

289.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

290.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofessionals.  The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

291.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

292.    Exhibit E annexed hereto is a calculation of the Holdback amounts and the release sought, as explained below in Section VI.

293.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services

rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

294.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    <u>RELEASE OF THE HOLDBACK</u>

295.    The Compensation Order established an orderly, regular process for the allowance and payment of interim monthly compensation and reimbursement to the Trustee and payment of interim monthly compensation and reimbursement to the Trustee and B&H. (ECF Nos. 126, 1078, 4125). Pursuant to the Compensation Order, payment of a percentage of the approved compensation – initially twenty percent (20%), subsequently reduced to fifteen percent (15%), and thereafter reduced to ten percent (10%) – is deferred through the conclusion of the liquidation period or until further order of the Court (the "Holdback").

296.    For this and prior Compensation Periods, the amount of the Holdback for B&H's fees is $20,090,152.42, which includes $3,166,405.08 held back in connection with this Application. The Trustee and B&H seek a release of the Holdback in the amount of $10,045,076.21, upon the consent and approval of SIPC.

297.    SIPC has advised that it will file a recommendation in support of the fees and expenses requested in this Application and the release of the Holdback in the amount of $10,045,076.21 for the Applicants.

71

## VII.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

298.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC. SIPA § 78eee(b)(5)(C).

299.    To the extent the general estate is insufficient to pay such allowances as an expense of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

300.    While the Trustee has recovered, or entered into agreements to recover, over $14.469 billion as of May 31, 2021, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

301.    Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief. Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

302.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts

72

recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on August 18, 2021.

303.    The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VIII.   <u>CONCLUSION</u>

The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $31,664,050.83 (of which $28,497,645.75 is to be paid currently and $3,166,405.08 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $164,513.86 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; (ii) releasing $10,045,076.21 to the Trustee and B&H from the Holdback; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       July 6, 2021

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: _s/ David J. Sheehan_
       Baker & Hostetler LLP
       45 Rockefeller Plaza
       New York, New York 10111
       Telephone: (212) 589-4200
       Facsimile: (212) 589-4201
       Irving H. Picard
       Email: ipicard@bakerlaw.com
       David J. Sheehan
       Email: dsheehan@bakerlaw.com
       Seanna R. Brown
       Email: sbrown@bakerlaw.com
       Heather R. Wlodek
       Email: hwlodek@bakerlaw.com

_Attorneys for Irving H. Picard, Trustee for the_
_Substantively Consolidated SIPA Liquidation of_
_Bernard L. Madoff Investment Securities LLC and_
_the Chapter 7 Estate of Bernard L. Madoff_

74