**EXHIBIT A**
**SETTLEMENT AGREEMENT**

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is entered into as of July 7, 2021 between Irving H. Picard, in his capacity as the trustee (the "Trustee") for the liquidation proceedings (the "SIPA Proceedings") under the Securities Investor Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff") pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and Orbita Capital Return Strategy Limited (the "Defendant"). The Trustee and the Defendant collectively shall be referred to herein as the "Parties" and each as a "Party."

## RECITALS

**WHEREAS**, on August 18, 2011, the Trustee commenced an adversary proceeding in the Bankruptcy Court against the Defendant in an action captioned *Picard v. Orbita Capital Return Strategy Limited*, Adv. Pro. No. 11-02537 (CGM) (the "Adversary Proceeding"), to recover a subsequent transfer from BLMIS under the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable laws;

**WHEREAS**, the Trustee alleges that on February 16, 2005, the Defendant received a subsequent transfer of customer property (as defined in SIPA section 78*lll*(4)) in the amount of $30,662,226 from BLMIS through Fairfield Sentry Ltd. (the "Subsequent Transfer");

**WHEREAS**, the Defendant denies the Trustee's allegations in the Adversary Proceeding; and

**WHEREAS**, the Parties wish to compromise and resolve their disputes on the terms set forth herein, without admission of liability, alleged wrongdoing, or any issue of fact or law;

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1. <u>Settlement Payment and Dismissal of the Adversary Proceeding</u>.

(a) As soon as practicable after the execution of this Agreement, and in no event later than ten days after execution of this Agreement, the Trustee shall file a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Rule 9019 Motion</u>") in the Adversary Proceeding seeking the Bankruptcy Court's entry of an order approving this Agreement (the "<u>Settlement Order</u>"). The Rule 9019 Motion shall be filed with 30 days' notice of hearing and 15 days for filing any objections unless otherwise directed by the Bankruptcy Court.

(b) Within five (5) business days of the Settlement Order becoming a final, non-appealable order (the "<u>Effective Date</u>"), the Defendant shall pay to Trustee the amount of Five Million, Two Hundred and Fifteen Thousand, Five Hundred and Thirty-Four United States Dollars ($5,215,534.00) (the "<u>Settlement Payment</u>") by wire transfer of immediately available funds to the account specified on <u>Schedule 1</u> attached hereto.

(c) Within three (3) business days of the date of the Settlement Payment, the Trustee shall file a notice dismissing the Adversary Proceeding with prejudice and without costs to either Party.

(d) If the Settlement Order is not entered by the Bankruptcy Court in the Adversary Proceeding within 90 days after the Trustee files the Rule 9019 Motion, or within such additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab initio*; and (ii) the Parties may not use or rely on any portion hereof or any statement herein for any purpose, including, without limitation, jurisdiction arguments.

2. <u>Releases.</u>

(a) In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

2

the Trustee hereby releases and forever discharges the Defendant and its feeder fund, Orbita Capital Return Strategy (Sterling) Limited, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or disbursements) known or unknown (including Unknown Claims, as defined in Section 3 herein), that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf of BLMIS, and/or the consolidated BLMIS/Madoff estate, against the Defendant based on, arising out of, or relating in any way to the Subsequent Transfer, the Adversary Proceeding, the Additional Transfers (defined herein), or any investment with or transfers made from Fairfield Sentry Ltd. (the "Trustee's Released Claims").

    (b)    Notwithstanding and except for the Trustee's Released Claims, the Defendant is not released from liability for any transfers that it may have received, or that it may receive after the Effective Date of this Agreement, that constitute subsequent transfers of customer property from BLMIS under the Bankruptcy Code, the New York Debtor and Creditor Law, or other applicable laws. The Trustee is not aware of any unreleased claims against Defendant.

    (c)    In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Defendant, on behalf of itself and its executors, administrators, and assigns, hereby releases

3

and forever discharges: (i) the Trustee; (ii) the Trustee's attorneys, professionals, agents and consultants; and (iii) BLMIS and its consolidated estate from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown (including Unknown Claims, as defined in Section 3 herein), that are, have been, could have been, or might in the future be, asserted by the Defendant against the Trustee based on, arising out of, or relating in any way to BLMIS, Madoff, the consolidated BLMIS/Madoff estate, the Subsequent Transfer, the Additional Transfers, the Adversary Proceeding, or any investment with or transfers made from Fairfield Sentry Ltd., including any preference, avoidance, or related clawback claim that the Defendant may have or may in the future exist with respect to the Settlement Payment in connection with any potential liquidation or winding down of the Defendant.

3. Unknown Claims.

"Unknown Claims" shall mean any claim released under Section 2 of this Agreement (the "Released Claims") that a Party does not know of or suspect to exist as of the Effective Date of this Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

>A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of any domestic or foreign jurisdiction that would have the effect of limiting the application of the terms of the releases set forth herein at Section 2 of this Agreement.

4.  No Admissions.

In connection with this Agreement, the Defendant does not admit or concede, and expressly denies, any liability or wrongdoing and further expressly denies the factual basis and legal validity of the claims in the Adversary Proceeding.

5.  General Representations and Warranties.

(a)  The Trustee represents and warrants that, as of the date hereof, he has the full power, authority, and legal right to execute and deliver this Agreement and to perform his obligations hereunder, subject to the Bankruptcy Court's entry of the Settlement Order.

(b)  The Defendant represents and warrants that, as of the date hereof: (i) it has the full power, authority, and legal right to execute and deliver this Agreement and to perform its obligations hereunder; (ii) this Agreement has been duly authorized, executed, and delivered by the Defendant and constitutes the valid and binding agreement of the Defendant, enforceable against the Defendant in accordance with its terms; (iii) the Defendant has executed this Agreement with the full knowledge of any and all rights that the Defendant may have with respect to the controversies herein compromised, and the Defendant has received independent legal advice from its counsel with regard to the facts relating to said controversies and with

5

respect to the rights arising out of said facts; and (iv) no other person or entity, other than those specifically identified herein, has any interest in the matters that the Defendant releases herein, and the Defendant has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that the Defendant release herein.

6.  Additional Representations and Warranties by the Defendant.

The Defendant represents and warrants that for the six-year period prior to the commencement of the SIPA Proceedings, and other than (i) the Subsequent Transfer and (ii) a transfer in the amount of $11,934.87 received on January 1, 2005, and a transfer in the amount of $5,448.10 received on April 27, 2005 (the "Additional Transfers"), to the Defendant's knowledge and reasonable belief, it: (1) has not received any money, funds, loans, transfers, assets, financial assistance, or financial accommodation from Madoff, BLMIS, or any other company or entity owned or controlled by Madoff or BLMIS; (2) is not an immediate, mediate, or subsequent transferee of any funds or property originating from Madoff or BLMIS to an initial transferee; and (3) is not aware of any claims against the Defendant by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS other than the claims referenced in this Agreement.

7.  Discovery.

The Defendant, through its U.S. counsel, agrees to accept service of a subpoena, and to waive any service objections to a subpoena, issued by the Trustee under the Federal Rules of Civil Procedure in the SIPA Proceedings. The Defendant further agrees to exercise good faith in responding to the subpoena; and the Parties agree to meet-and-confer in good faith to resolve any issues they may raise regarding the scope of the subpoena. That is provided that nothing in this

clause shall prevent Defendant from winding up its affairs, or require any liquidator to delay the dissolution of Defendant.

8. Further Assurances.

Each Party shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9. Entire Agreement.

This Agreement constitutes the entire agreement and understanding between the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations, and understandings of the Parties concerning the subject matter hereof.

10. Amendment; Waiver.

This Agreement may not be terminated, amended, or modified in any way except by written instrument signed by all Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute a continuing waiver.

11. Successors.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against the Parties and their respective estates, personal representatives, executors, successors, and permitted assigns.

12. Counterparts; Electronic Copy of Signatures.

This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same document. Each Party may evidence its execution of

this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

13. Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code, and SIPA. Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

14. JURISDICTION; WAIVER OF JURY TRIAL.

(a) THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT. IN THE EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY.

(b) EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15. <u>Expenses</u>.

Each Party shall bear its respective expenses relating to or arising out of the Adversary Proceeding and this Agreement, including, without limitation, fees for attorneys, experts, consultants, accountants, and other advisors.

16. <u>Notices</u>.

All notices or communications hereunder shall be in writing and delivered by hand or sent by registered or certified mail, return receipt requested, by overnight mail with confirmation, by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case addressed and copied as set forth on the applicable signature page hereto. A Party may change its address for receiving notice by giving notice of a new address in the manner provided herein.

17. <u>No Third-Party Beneficiaries</u>.

Except as expressly provided in Section 2, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

18. <u>Captions and Rules of Construction</u>.

The captions in this Agreement are inserted for convenience and reference and neither define nor limit the scope or content of any of the provisions herein. The Parties acknowledge that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities herein may be construed against any Party.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGES TO FOLLOW]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed and delivered as of the date set forth above.

**TRUSTEE**

IRVING H. PICARD, AS TRUSTEE FOR THE LIQUIDATION PROCEEDINGS OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC AND THE SUBSTANTIVELY CONSOLIDATED BANKRUPTCY CASE OF BERNARD L. MADOFF

By: *Irving H. Picard*
      51758A64583D4E7...
Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Torello H. Calvani
Facsimile: (212) 589-4201

Sworn and subscribed before me this 7th day of July, 2021.

*Mary S. Lee*
2FAD7787555D439...
Notary Public

MARY S. LEE
Notary ID
11405696
My Commission Expires
11/4/2022

10

**THE DEFENDANT**

Address:
Maples Corporate Services Limited
PO Box 309
Ugland House
Grand Cayman KY1-1104
Cayman Islands

With copies to:
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
Attention: Gary S. Lee
Facsimile: (212) 468-7900

**ORBITA CAPITAL RETURN STRATEGY LIMITED**

By: _____Nicola Espi_____
        DIRECTOR

Sworn and subscribed before me this
7th day of July, 2021.

_____Jennifer A. Nichols_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
Jennifer A. Nichols, Notary Public
Philadelphia County
My commission expires February 17, 2023
Commission number 1260700
Member, Pennsylvania Association of Notaries

11