# EXHIBIT 3

```
UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK
_____
                                       )
SECURITIES INVESTOR PROTECTION         )
CORPORATION,                           )
                                       )
          Plaintiff-Applicant,         )
                                       )
               vs.                     ) Adv. Pro. No.: 08-01789
                                       )              (SMB)
BERNARD L. MADOFF INVESTMENT           )
SECURITIES LLC,                        )
                                       )
          Defendant.                   )
_____)
In Re:                                 )
                                       )
BERNARD L. MADOFF,                     )
                                       )
          Debtor.                      )
_____)
IRVING H. PICARD, TRUSTEE FOR THE      )
SUBSTANTIVELY CONSOLIDATED SIPA        )
LIQUIDATION OF BERNARD L. MADOFF       )
INVESTMENT SECURITIES LLC AND          )
BERNARD L. MADOFF,                     )
                                       )
          Plaintiff,                   )
                                       )
               vs.                     ) Adv. Pro. No.: 10-04539
                                       )              (SMB)
THE GERALD AND BARBARA KELLER          )
FAMILY TRUST, GERALD E. KELLER,        )
INDIVIDUALLY AND IN HIS CAPACITY AS    )
TRUSTEE OF THE GERALD AND BARBARA      )
KELLER FAMILY TRUST, BARBARA           )
KELLER, INDIVIDUALLY AND IN HER        )
CAPACITY AS TRUSTEE OF THE GERALD      )
AND BARBARA KELLER FAMILY TRUST,       )
                                       )
          Defendants.                  )
_____)


Videotaped Deposition of:   GERALD E. KELLER
Date:                       September 13, 2017
Reported by:                Stephanie P. Borthwick
                            C.S.R. No. 12088
```

Page 2

1      Deposition of GERALD E. KELLER, taken on behalf
2  of the Plaintiff, before Stephanie P. Borthwick, a
3  Certified Shorthand Reporter, commencing at the hour
4  of 10:12 a.m., Wednesday, September 13, 2017, at the
5  offices of Litigation Services, 74199 El Paseo
6  Drive, Suite 202, Palm Desert, California.
7  APPEARANCES:
8       For the Plaintiff:
9          BAKER & HOSTETLER LLP
           Attorneys at Law
10         BY:  MARIE L. CARLISLE, ESQ.
           811 Main Street
11         Suite 1100
           Houston, Texas  77002-6111
12         (713) 646-1388
           mcarlisle@bakerlaw.com
13
        For the Defendants:
14
           CHAITMAN LLP
15         Attorneys at Law
           TELEPHONICALLY BY:  JENNIFER ALLIM, ESQ.
16         465 Park Avenue
           New York, New York  10022
17         (888) 759-1114
           jallim@chaitmanllp.com
18
19      Videographer:
20         Luis Garcia
21
22
23
24
25

1    Q.   And other than this one account that we're
2    discussing, 1ZB1314, did the trust have any other
3    accounts with BLMIS?
4    A.   No.
5         Jennifer?
6         MS. ALLIM:  Yes.
7         THE WITNESS:  You're listening to what I'm
8    saying, making sure I'm right?
9         MS. ALLIM:  Of course.
10        THE WITNESS:  Okay.  Thanks, hon.  Just
11   want to make -- I heard snoring so --
12        MS. CARLISLE:  Uh-oh, he caught you.
13   Q.   Okay.  Once you opened your account, what
14   did you do with the documents that you used to open
15   up the account?
16   A.   I gave them to Irwin Levine.
17   Q.   Okay.  And who is Mr. Levine?
18   A.   He's my financial director, vice president
19   of Keller Publishing.
20   Q.   Okay.
21   A.   And he handled all the financial parts of
22   it.
23   Q.   Okay.  When you say "the financial parts of
24   it," does that mean Keller Publishing or the BLMIS
25   investment?

```
 1      A.    Both.
 2      Q.    Both.
 3            Did he handle your personal finances?
 4      A.    Some of them.
 5      Q.    Some of them, okay.
 6            And to the extent you know, was Mr. Levine
 7   a CPA?
 8      A.    Yes.
 9      Q.    Okay.
10      A.    Yes.
11      Q.    Now when you provided documents to
12   Mr. Levine, did you ask him to retain those
13   documents on your behalf or anything of that nature?
14      A.    I'm sure when I give him things he retains
15   them for a certain amount of time.  That's what he's
16   supposed to do.
17      Q.    Do you know how long he retains them?
18      A.    Don't have the slightest idea.
19      Q.    Okay.  Since December of 2008 have you gone
20   back to Mr. Levine and asked if he has any of those
21   documents?
22      A.    Yes.
23      Q.    Yes.
24            THE WITNESS:  We have, right, Jennifer?
25            MS. ALLIM:  Correct.
```

```
 1   BY MS. CARLISLE:
 2       Q.   Okay.  And just stepping back, I don't
 3   necessarily want to know -- today what I'm trying to
 4   find out a lot of times is what you've done.  So if
 5   Jennifer has done something that's okay, that's
 6   wonderful, I just want to make sure that I get your
 7   testimony correct today.
 8       A.   Okay.  Sure.
 9       Q.   Okay.  Do you know whether Mr. Levine
10   provided those documents?
11       A.   As far as I know he did.
12       Q.   Okay.  And what types of documents over the
13   life of the account once you began investing to 2008
14   did you provide to Mr. Levine?
15       A.   Well, anytime a check would come in, I
16   would countersign it and deposit it in Keller
17   Publishing.
18       Q.   Okay.  What about account statements?
19       A.   Irwin got them.
20       Q.   They went directly to Mr. Levine?
21       A.   Right.
22       Q.   What about correspondence from BLMIS?
23       A.   All to Mr. Levine.
24       Q.   So the only thing that came to you or to
25   the trust were the checks?
```

1      A.    Right.

2      Q.    Okay.  And other than the checks which you
3  deposited, everything else went straight to
4  Mr. Levine and you didn't have any personal records?

5      A.    Correct.

6      Q.    Okay.  Over the life of the account what
7  types of documents did you or someone on behalf of
8  the trust send to BLMIS?

9      A.    You mean when they were asked for?

10     Q.    Either when they were asked for or if you
11 had inquiries and sent correspondence, things of
12 that nature?

13     A.    Well, the only correspondence we would ask
14 is when we would ask for money --

15     Q.    Okay.

16     A.    -- be sent to us.

17     Q.    Okay.  And did you or did Mr. Levine keep
18 copies of any of that correspondence?

19     A.    I'm sure Mr. Levine did.

20     Q.    Okay.  And when these items were sent --
21 and this actually answers some other questions I'll
22 have later -- were those sent by you or Mr. Levine?

23     A.    Mr. Levine.

24     Q.    Okay.  Were those done --

25     A.    I might be also involved in sending in a

1   request.  I'd have to sign for it, but then he would
2   send it in.
3       Q.   That was going to be my next question.
4            In making a decision to make a withdrawal,
5   was that made by you?
6       A.   Yes.
7            MS. CARLISLE:  Now I'm going to hand you
8   what has been marked as Exhibit No. 3.
9            (Exhibit 3 was marked for identification.)
10           THE WITNESS:  Jennifer?
11           MS. ALLIM:  Yes.
12           THE WITNESS:  There's a huge pile of papers
13  I'm looking at.
14           MS. ALLIM:  Right.  These are all the
15  exhibits that you're going to be shown today.
16           MS. CARLISLE:  Sadly, Jennifer, the whole
17  stack isn't on the table for him to look at.
18           MS. ALLIM:  Oh.
19           MS. CARLISLE:  Yeah, I know.  He's not even
20  looking at the full stack.
21      Q.   If it makes you feel better, Mr. Keller,
22  each of these is in triplicate and you're only to
23  get one.  I just have extra copies in case they're
24  needed --
25      A.   Okay.

1    Q.   Okay.  Did you, personally, keep copies of
2    any of those records at all?
3    A.   No.
4    Q.   Did you, personally, when you received
5    the -- well, I guess you didn't receive anything.
6         I guess you received the checks and you
7    mentioned that you signed the checks.
8    A.   Yeah.
9    Q.   Other than signing the checks, did you
10   maintain any other records regarding withdrawals or
11   deposits?
12   A.   That was Irwin's job.
13   Q.   Okay.
14   A.   My job to spend the money; his job to make
15   it work for me.
16        MS. CARLISLE:  Not a bad job to have.
17        Okay.  I'm going to hand you now what has
18   been marked as Exhibit No. 10.
19        Jennifer, I know we have a 10A, -B and -C,
20   but I'm just going to use 10C and that's the only
21   one I'm going to mark as 10.
22        MS. ALLIM:  Okay.
23        MS. CARLISLE:  Okay.
24        THE WITNESS:  Thank you.
25        MS. CARLISLE:  See, I told you.  I know the