**CHAITMAN LLP**
Helen Davis Chaitman
hchaitman@chaitmanllp.com
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114

*Attorneys for Defendants The Gerald and Barbara Keller Family Trust and Gerald E. Keller, in his capacity as Trustee of the Gerald and Barbara Keller Family Trust,*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>    Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC<br>    Plaintiff,<br>v.<br><br>THE GERALD AND BARBARA KELLER FAMILY TRUST and GERALD E. KELLER, in his capacity as Trustee of the Gerald and Barbara Keller Family Trust, Defendants. | Adv. Pro. No. 10-04539 (CGM) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF**
**THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

{00047263 4 }

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 2

    I.    THE CLAIMS AGAINST BARBARA KELLER MUST BEDISMISSED UNDER RULE 25(a)(1) ............................................................. 2

    II.    ALL CLAIMS AGAINST GERALD KELLER AND THE TRUST MUST BE DISMISSED UNDER THE MERE CONDUIT DEFENSE ....................... 3

    III.    LAW OF THE CASE IS INAPPLICABLE ................................................ 7

    IV.    FORM BD IS INADMISSIBLE ....................................................................... 7

    V.    THE PLEA ALLOCUTIONS ARE NOT ADMISSIBLE FOR ANY ISSUE RELEVANT TO THE PENDING MOTIONS ................................................ 10

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bellamy v. City of New York*,
  914 F.3d 727 (2d Cir. 2019)..................................................................................................8

*Picard v. Miller (In re BLMIS)*,
  2021 Bankr. LEXIS 1769 (Bankr. S.D.N.Y. July 2, 2021) .......................................................4

*Picard v. Nelson (In re BLMIS), LLC*,
  610 B.R. 197 (Bankr. S.D.N.Y. 2019)....................................................................................4

**Other Authorities**

Fed. R. Civ. P. 25................................................................................................................2, 3

Fed. R. Civ. P. 25(a) ...............................................................................................................1

Fed. R. Civ. P. 25(a)(1).......................................................................................................2, 3

Fed. R. Civ. P. 56(c)(2)(e) ......................................................................................................8

Fed. R. Evid. 703 ...................................................................................................................8

Fed. R. Evid. 807 ..............................................................................................................9, 10

Fed. R. Evid. 807(a)................................................................................................................9

Fed. R. Evid. 807(a)(1)............................................................................................................9

Defendants submit this reply memorandum in further support of their cross-motion for summary judgment.[1]  In addition to the papers previously filed, Defendants rely on the Supplemental Declaration of Helen Chaitman ("Chaitman Supp. Decl.") and the Declaration of Irwin Levine.

## PRELIMINARY STATEMENT

It is undisputed that the Trustee was served by Defendants' counsel with written notice of Barbara Keller's death on June 5, 2019, for the sole purpose of providing notice of death consistent with the agreed upon notification practice between Chaitman LLP and the Trustee. See Chaitman Supp. Decl.  Yet, the Trustee never amended the complaint to name Barbara Keller's estate as required by Fed. R. Civ. P. 25(a).  Counsel for Defendants followed that procedure in more than 20 other Madoff clawback cases where its clients passed away during the pendency of the action and, routinely, the Trustee timely amended his pleadings to name an estate representative.  For reasons that he has not explained, the Trustee never amended his pleadings in this case.  Hence, the Trustee's claim against Barbara Keller, as co-trustee of the Keller Trust, and her estate has been forfeited.

Gerald Keller, as co-trustee of the Keller Trust, is not an initial transferee; he is a mere conduit.  Gerald Keller was the payee on the withdrawal checks from Madoff, but he had a contractual obligation to pay those funds to Keller Publishing.  It is undisputed that every single withdrawal check was deposited into a bank account of Keller Publishing.  There is not a single withdrawal check that was deposited into an account owned by the Trust or by Gerald Keller.  Thus, neither the Trust nor Gerald Keller ever possessed the funds.

---

[1] Capitalized terms (*e.g.*, LLC, Sole Proprietorship, *RAR In Limine* Order, *etc.*) have the same meaning ascribed in Defendants' opening brief.

{00047263 4}                           1

Because the documentary evidence is so clear, the Trustee's counsel never asked Mr. Keller a single question at his deposition concerning the fact that no Madoff withdrawal check was ever cashed by the Trust. Yet, without providing the Court with a complete transcript of Mr. Keller's deposition, the Trustee argued to this Court:

> *During his deposition, Gerald Keller did not mention this agreement with Levine, who not only handled Keller Publishing's finances but also some of Gerald Keller's personal finances. Brown Decl., Ex. 3 (Keller Dep. Tr.) at 22:17–23:8.*

T. Br. at 24, n.10. One would have hoped for a bit more candor from a law firm that has been paid over $1.4 billion for its services in this case.

The Trustee cannot dispute the fact that the Trust did not deposit a single withdrawal check. Instead, he complains that he is learning about the contract for the first time in connection with these summary judgment motions. The Trustee has nobody to blame but himself for not knowing sooner about the contract between Mr. Keller and Keller Publishing. Prior to deposing Mr. Keller, the Trustee knew that none of the funds withdrawn from the Trust's Madoff account were received by the Defendants or deposited into their bank accounts. He knew that all withdrawal checks were endorsed over to and deposited into the bank accounts of Keller Publishing. And he knew from Defendants' interrogatory responses that all such funds benefited only Keller Publishing. Yet, the Trustee did not ask Mr. Keller a single question at his deposition about any of this. Under these circumstances, Gerald Keller is a mere conduit. The Trustee should have sued Keller Publishing. He did not and now the claims are time-barred.

## ARGUMENT

### I. THE CLAIMS AGAINST BARBARA KELLER MUST BE DISMISSED UNDER RULE 25(a)(1)

The plain language of Rule 25 required the Trustee to make a motion to substitute Barbara Keller's estate for Barbara within 90 days of having received notice of her death. It is undisputed

he did not do so. Pursuant to the agreed upon procedure between the parties, the Trustee received service of the notice of Mrs. Keller's death. Rule 25 speaks only in terms of "service." By its terms, Rule 25 does not require the notice to have been filed and, as established in Defendants opening brief, the Second Circuit construes R. 25 narrowly and does not permit additional formalities or requirements beyond those set forth in the text of the rule. Def. Br. at 10-11 (citing, *inter alia*, *Kopler v Jubbert*, 986 F. 3d 147, 155 (2d Cir. 2021)).

As the Trustee is well aware, the parties established an expedient procedure for Defendants' counsel, who represented scores of clawback defendants, to notify the Trustee when one of counsel's clients passed away. That procedure was followed in this case. And the procedure was followed in at least 17 other cases where a defendant represented by counsel died. In every one of those other cases, the Trustee made a timely motion to substitute the deceased party for the estate. Chaitman Supp. Decl. ¶ 4, Ex. A. He did not do so here.

The Trustee has provided no explanation as to why his counsel failed to make a timely motion to substitute but, instead, allowed the 90 day period to expire. Having failed to make a motion to substitute "within 90 days after service of [the] statement noting the death [of Barbara Keller], the action against [her] must be dismissed." Rule 25(a)(1).

## II.  ALL CLAIMS AGAINST GERALD KELLER AND THE TRUST MUST BE DISMISSED UNDER THE MERE CONDUIT DEFENSE

As established in Defendants' opening brief, when the totality of circumstances concerning the transactions at issue establish that a contractual obligation – even an informal agreement – requires the payee of funds received from the debtor to pay such funds over to a third-party, then the payee is a mere conduit, not an initial transferee. Under those circumstances, the third party may be liable as initial transferee under the Bankruptcy Code, but the payee is not liable under the mere conduit defense. See Def. Br. at 13-14 (citing, *inter alia*, *Finley, Kumble,* 130 F.3d 52, 55

{00047263 4}                                             3

(2d Cir. 1997) (courts must consider totality of transaction in determining mere conduit defense); *Nordberg v, Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1199-200 (11th Cir. 1988) (same); *In re Bullion Res. of N. Am.*, 922 F2d 544 (9th Cir. 1991) (mere conduit defense established by contractual obligation to pay funds to third party), *Sarachek v. Wahls (In re Agriprocessors, Inc*.), 490 B.R. 374 (Bankr. N.D. Iowa 2013) (even informal understanding sufficient to support mere conduit defense based on contractual obligation to pay funds to third party)). Defendants have established the existence of a contractual obligation of the Keller Trust to make loans to Keller Publishing. Keller Decl. ¶¶ 5-15; Levine Decl. It is undisputed that the Defendants never received or used any of the Madoff withdrawals. Every single withdrawal check was deposited into Keller Publishing's bank account. *Id*. It is also undisputed that, in answering the Trustee's interrogatories, Defendants stated that the Madoff account withdrawals benefited only the Keller Publishing and the tax authorities. *Id*. ¶ 14.

There is also no dispute that Gerald Keller and Keller Publishing are separate entities. Mr. Keller as Trustee had a contractual obligation to pay the withdrawn funds to Keller Publishing. He was not free to spend the funds as he chose. Mr. Keller is similar to the IRA custodians that this Court has held are mere conduits, not initial transferees, because he was not free "to invest the funds in lottery tickets or uranium stocks" and some other party – the initial transferee – is the one to whom the funds ultimately went. *See Picard v. Nelson (In re BLMIS), LLC*, 610 B.R. 197, 238 (Bankr. S.D.N.Y. 2019) (citing *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 894 (7th Cir. 1988)); *Picard v. Miller (In re BLMIS),* 2021 Bankr. LEXIS 1769, at *22-23 (Bankr. S.D.N.Y. July 2, 2021) (holding that party to whom funds ultimately went was the initial transferee and that IRA custodian between Madoff and that party was mere conduit) (quoting *Picard v. Nelson*, 610 B.R. at 238).

The Trustee cannot refute the existence of the Trust's contractual obligation to pay funds from Madoff to Keller Publishing. Instead, he claims that he was unaware of it until defendants filed their cross-motion and that Mr. Keller did not mention the agreement during his deposition. T. Reply Br. at 24, n.9. But if, in fact, the Trustee was ignorant of the loans from the Trust to Keller Publishing, his is a deliberate ignorance because – despite all of the documentary evidence showing that the Trust never cashed a single withdrawal check- the Trustee's counsel chose not to ask Mr. Keller a single question concerning the Trust's relationship with Keller Publishing in Mr. Keller's deposition. Chaitman Supp. Decl. ¶ 7, Ex. C (entire Keller Deposition transcript). Nothing prevented the Trustee from asking Mr. Keller why Defendants' interrogatory responses indicated that Keller Publishing was the beneficiary of the withdrawals or why every check from Madoff was deposited into the Keller Publishing bank account. Obviously, the Trustee had every opportunity to question Mr. Keller on these issues and deliberately chose not to do so.

The Trustee claims that Mr. Keller's deposition testimony does not support his mere conduit defense or the existence of a contractual obligation to pay the Madoff withdrawals to Keller Publishing. T. Reply Br. at 22. Yet, the Trustee submitted to the Court only a few excerpts from Mr. Keller's deposition transcript in opposition to Defendants' cross-motion. He cites to nothing in those excerpts calling into question the existence of the agreement between Mr. Keller and Keller Publishing as described in Mr. Keller's declaration. As noted, a review of the entire deposition transcript reveals that the Trustee never inquired about the relationship – contractual or otherwise – between Keller Publishing and the Defendants. Obviously, Mr. Keller had no obligation to volunteer information that was not requested by the Trustee.

The fact that the Trustee deliberately chose not to question Mr. Keller concerning Keller Publishing does not alter the facts. Nor does it alter the legal consequence, namely, that the

{00047263 4 }     5

Defendants are entitled to the mere conduit defense because all funds withdrawn from the Madoff account went to Keller Publishing pursuant to a contractual obligation. The Trustee's claim, if he ever had one, would have been against Keller Publishing as the initial transferee, not against the Defendants. All claims against the Defendants should be dismissed under the mere conduit defense.

Rather than deal with the legal consequences of the foregoing undisputed facts concerning the transfer of the withdrawals from Madoff to Keller Publishing, the Trustee quibbles with the details of the mechanics of the transfers relying, again, on only selected portions of Mr. Keller's deposition testimony. T. Reply Br. at 24-25. These details are not relevant to whether Keller exercised dominion and control over the funds or whether he was contractually obligated to pay the funds to Keller Publishing when Keller Publishing needed money to fund its operations. Mr. Keller did not have the absolute right to use the withdrawals any way he wanted. His declaration states that he agreed to fund cash shortfalls for Keller Publishing and the history of the withdrawals proves that this was the sole use of the Madoff account from inception through 2008.

The Trustee claims that Mr. Keller's declaration is misleading and contradicts his deposition testimony on the issue of who endorsed the Madoff checks. It is not and it does not. Mr. Keller stated in his declaration that Marianne Jannace endorsed all the withdrawal checks with his signature. Keller Decl. ¶¶ 10, 12. She did so with his permission; that was part of the procedure Mr. Keller described in his declaration. *Id*. ¶¶ 10-12. She also had his permission to sign his name on letters requesting withdrawals from Madoff. *Id*. ¶ 5. At his deposition, when he was shown endorsements on Madoff withdrawal checks, Mr. Keller acknowledged that the signature was his. Chaitman Supp. Decl. Ex. C. (Keller Dept. Trans. 66:24 – 67:5; 72:20-25). He did so because that was his signature made by his authorized agent, Ms. Jannace, with his permission. The Trustee

{00047263 4}                                6

correctly observes that Ms. Jannace "could not act alone." T. Reply Br. at 25. Defendants never argued that she acted alone; nobody is accusing Ms. Jannace of forging the checks. She signed Mr. Keller's name, using a facsimile signature with his permission, and Mr. Keller acknowledged his authorized signature at his deposition. There is nothing misleading or contradictory about his declaration or his deposition testimony, and none of this has any bearing on whether he exercised dominion and control over the funds.

### III.    LAW OF THE CASE IS INAPPLICABLE

Contrary to the Trustee's suggestion, T. Reply Br. at 2-3, none of the issues before the Court can be resolved by law of the case. No decisions or rulings in this action control any issues before the Court on the Trustee's summary judgment motion or the Defendants' cross-motion. Decisions from other courts dealing with identical facts are not dispositive either because some courts ruled in favor of the Trustee, while others ruled in favor of the Madoff customer-defendants similarly situated to the Defendants. Accordingly, the Court should reject the Trustee's appeal to law of the case as a substitute for failing to establish his *prima facie* case, especially since he has no good arguments as to why this Court should not follow *Avellino*, Judge Furman's decisions in *RAR*, and Judge Bernstein's repeated holdings, that these cases could not be disposed of on summary judgment as to the principal defenses but, instead, require a trial. Def. Br. at 15 (citing and quoting Judge Bernstein decisions). Furthermore, decisions that the Trustee urges this Court to follow as law of the case were decided before Judge Furman rendered decisions in *RAR*. Judge Furman did not follow those decisions and neither should this Court.

### IV.    FORM BD IS INADMISSIBLE

The Trustee falsely asserts that Defendants have misrepresented Judge Furman's ruling on the RAR *In Limine* Order. The Trustee suggests that Defendants overlooked Judge Furman's finding that Form BD might be admissible at trial to show the bases for his experts' opinions if

{00047263 4}                                   7

the Trustee's experts could lay a proper foundation under Fed. R. Evid. 703. T. Reply Br. at 3-4. But in their opening brief, Defendants disclosed that possibility and cited the same language from Judge Furman's order as the Trustee cites. Def. Br. at 23. Defendants misrepresented nothing.

The Trustee filed his summary judgment motion and his reply papers months after Judge Furman explained in the *RAR In Limine* Order that Form BD might be admissible for these limited purposes if the Trustee's experts could lay a proper foundation. Yet, despite knowing the evidentiary problems with Form BD might be cured with foundational testimony from his experts, the Trustee failed to submit to this Court any testimony from either of his experts. One should assume that, if those experts had anything to say that would support the admission of Form BD, then the Trustee would have filed their declarations here. But he did not. In all events, there is nothing his experts could say that would support a finding that Form BD was reliable or trustworthy enough to be admitted for the truth of its contents, given its author. Accordingly, for the very same reasons Judge Furman held that Form BD is not admissible at trial, the document should not be considered here because a court may only consider admissible evidence when deciding a summary judgment motion. *See Bellamy v. City of New York*, 914 F.3d 727, 750 (2d Cir. 2019); Fed. R. Civ. P. 56(c)(2)(e). The Trustee's summary judgment motion cannot be granted without Form BD because it is the only "evidence" he has offered that the 509 Account belonged to the LLC when Defendants received withdrawals from that account.

The Trustee suggests that the Court should consider Form BD on this motion because, when Judge Furman denied the Trustee's summary judgment motion and ordered a trial in the *RAR Decision*, he wrote that the document was "compelling evidence" that the JPMC Accounts were transferred to the LLC. T. Reply Br. at 4. The issue of the admissibility of Form BD was not

{00047263 4}                                      8

before Judge Furman on the parties' summary judgment motions. And, of course, obviously Form BD was not sufficiently compelling to Judge Furman because he denied the Trustee's summary judgement motion, finding that the jury must decide whether Madoff transferred his bank accounts to the LLC. *RAR* Decision at *11. And just a few months later, when the admissibility of Form BD was before Judge Furman on the parties' *in limine* motions, he effectively abrogated the "compelling evidence" dicta in the *RAR* Decision when he held that Form BD was inadmissible at trial because it was unreliable and untrustworthy hearsay and not an SEC business record. *RAR In Limine* Order at 2. Thus, Form BD is not admissible evidence. It cannot be considered in deciding the Trustee's summary judgment motion for all the same reasons Judge Furman granted the defendants' *in limine* motion in *RAR*. It is, indeed, ironic that the Trustee is relying for its truth upon an unsigned document that Madoff submitted to the SEC when Madoff confessed to the crime of submitting false documents to the SEC.

The Trustee argues that Form BD may still be admitted at trial in *RAR* under Fed. R. Evid. 807(a), the residual hearsay exception. T. Reply Br. at 4. But the Trustee cannot approach, much less satisfy, the elements of the residual hearsay rule for Form BD. For example, one such element requires proof that the "statement is supported by sufficient guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). The author of the document is Madoff, who pled guilty to filing false documents with the SEC. The Trustee will never convince any court that a statement made by Madoff to the SEC is sufficiently trustworthy to qualify for admission under the residual hearsay rule. Perhaps that is why the Trustee has not even tried to show this Court how the document could somehow be admissible under Rule 807. Theoretically, the document still may be admitted at the *RAR* trial, but there is no showing here as to why it qualifies as admissible evidence under Rule 807 in support of the Trustee's summary judgment motion. In all events, by the Trustee's

{00047263 4}  9

argument, the admissibility under R. 807 can only be determined at a trial and so at a minimum the Court should order a trial here.

Finally, the Trustee disingenuously asserts that Defendants are trying "to have it both ways" regarding the admissibility of Form BD. T. Reply Br. at 4. Not true. Defendants argued in the alternative in their opening brief that, if Form BD is admissible, then it tends to prove that the LLC did not acquire the IA Business. *See* Def. Br. at 25 ("C. Even if Form BD Is Admissible, It Proves that Madoff Did Not Transfer the JPMC Accounts to the LLC"). All of Defendants' arguments to that effect are clearly made in the alternative to its earlier arguments, consistent with the *RAR In Limine* Order, that Form BD is inadmissible.

Defendants are not trying to have it both ways. Form BD is inadmissible. The Trustee cannot prove his *prima facie* case without the admission of the contents of that document for the truth thereof because it is the only document that supports his contention that Madoff transferred ownership of the JPMC Accounts to the LLC from the Sole Proprietorship. Without Form BD, the Trustee's motion for summary judgment should be denied and the Defendants' cross-motion should be granted for the Trustee's failure to prove transfer to Defendants of an interest in the debtor, the LLC. If, however, contrary to *RAR*, the Court determines that Form BD is admissible for the truth of its content, then, at most, it tends to prove the existence of material issues of fact for trial, including whether Madoff continued to run the IA Business through the Sole Proprietorship after he formed the LLC in 2001, given that he did not indicate on Form BD that the LLC was going to engage in investment advisory services. *See* Def. Br. at 25.

### V. THE PLEA ALLOCATIONS ARE NOT ADMISSIBLE FOR ANY ISSUE RELEVANT TO THE PENDING MOTIONS

The Trustee argues that the Court should consider the plea allocations of Madoff and DiPascali to establish that the LLC was a Ponzi scheme to relieve the Trustee of the obligation to

prove fraudulent intent under the Ponzi scheme exception. T. Reply Br. at 18. But fraudulent intent is not at issue on either of the parties' summary judgment motions. Hence, the allocutions are irrelevant for purposes of deciding the pending motions.

The allocutions are inadmissible for any purpose other than to show that Madoff ran a Ponzi scheme through the LLC. The allocutions cannot, for example, be proof that the LLC was a single entity that included the IA Business or that the funds allegedly received by the Defendants were customer deposits. And the allocutions certainly cannot be proof that the LLC, as opposed to the Sole Proprietorship, owned the JPMC Accounts. Nothing about any of those issues, which are relevant to the pending motions, can be established by the Trustee through the plea allocutions because facts related to those issues were not essential to the criminal convictions, nor were any such issues decided when the guilty pleas were accepted. *See RAR In Limine* Order at 2-3 (citing, *inter alia*, *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1081 (2d Cir. 1988); *Evanston Ins. Co. v. Desert State Life Mgmt.*, 484 F. Supp. 3d 987, 1009 n.6 (D.N.M. 2020)).

## CONCLUSION

For the foregoing reasons and for all the reasons set forth in Defendants' opening brief, the Trustee's motion for summary judgment should be denied in its entirety, and the Defendants'

cross-motion for summary judgment should be granted in its entirety, together with such other and further relief as the Court deems appropriate.

Dated:  New York, New York
September 13, 2021

**CHAITMAN LLP**

By: */s/ Helen Davis Chaitman*
Helen Davis Chaitman
hchaitman@chaitmanllp.com
465 Park Avenue
New York, New York 10022
Phone & Fax: 888-759-1114

*Attorneys for Defendants The Gerald and Barbara Keller Family Trust and Gerald E. Keller, in his capacity as Trustee of the Gerald and Barbara Keller Family Trust*