# EXHIBIT D

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

COPY

_____ )

SECURITIES INVESTOR PROTECTION            )
CORPORATION,                              )
                                          )
        Plaintiff-Applicant,     )
                                          )
            vs.            )  Adv. Pro. No.: 08-01789
                                          )           (SMB)
BERNARD L. MADOFF INVESTMENT              )
SECURITIES LLC,                           )
                                          )
        Defendant.               )
_____ )
In Re:                                    )
                                          )
BERNARD L. MADOFF,                        )
                                          )
        Debtor.                  )
_____ )
IRVING H. PICARD, TRUSTEE FOR THE         )
SUBSTANTIVELY CONSOLIDATED SIPA           )
LIQUIDATION OF BERNARD L. MADOFF          )
INVESTMENT SECURITIES LLC AND             )
BERNARD L. MADOFF,                        )
                                          )
        Plaintiff,               )
                                          )
            vs.            )  Adv. Pro. No.: 10-04539
                                          )           (SMB)
THE GERALD AND BARBARA KELLER             )
FAMILY TRUST, GERALD E. KELLER,           )
INDIVIDUALLY AND IN HIS CAPACITY AS       )
TRUSTEE OF THE GERALD AND BARBARA         )
KELLER FAMILY TRUST, BARBARA              )
KELLER, INDIVIDUALLY AND IN HER           )
CAPACITY AS TRUSTEE OF THE GERALD         )
AND BARBARA KELLER FAMILY TRUST,          )
                                          )
        Defendants.              )
_____ )


Videotaped Deposition of:   GERALD E. KELLER
Date:                       September 13, 2017
Reported by:                Stephanie P. Borthwick
                            C.S.R. No. 12088

BENDISH REPORTING
877.404.2193

## Page 2

1   Deposition of GERALD E. KELLER, taken on behalf
2   of the Plaintiff, before Stephanie P. Borthwick, a
3   Certified Shorthand Reporter, commencing at the hour
4   of 10:12 a.m., Wednesday, September 13, 2017, at the
5   offices of Litigation Services, 74199 El Paseo
6   Drive, Suite 202, Palm Desert, California.
7
8   APPEARANCES:
9       For the Plaintiff:
10          BAKER & HOSTETLER LLP
            Attorneys at Law
            BY:  MARIE L. CARLISLE, ESQ.
11          811 Main Street
            Suite 1100
12          Houston, Texas  77002-6111
            (713) 646-1388
13          mcarlisle@bakerlaw.com

14      For the Defendants:

15          CHAITMAN LLP
            Attorneys at Law
16          TELEPHONICALLY BY:  JENNIFER ALLIM, ESQ.
            465 Park Avenue
17          New York, New York  10022
            (888) 759-1114
18          jallim@chaitmanllp.com

19      Videographer:
20          Luis Garcia
21
22
23
24
25

## Page 3

1                    INDEX
2
3   Deposition of GERALD E. KELLER
4   Taken on September 13, 2017
5
6   Examination By:                        Page
7   MS. CARLISLE                             9
8
9   Exhibits:
10  Exhibit 1   June 6, 2011, Litigation        9
                Protective Order, 17 pages
11
    Exhibit 2   Notice of Deposition of Keller    14
12              Family Trust, 4 pages
13  Exhibit 3   Claim No. 012655,                 26
                MWPTAP00531412-1424
14
15  Exhibit 6   Answer, 26 pages                  29
16  Exhibit 7   04/13/11 Preservation Letter,     37
                2 pages
17  Exhibit 10  Defendants' Interrogatory         42
                Responses, 12 pages
18
    Exhibit 11  Letter Transmitting Trustee's     44
19              Initial Disclosure Docs, 4 pages
20  Exhibit 12  Defendant's Responses to RFPs,    49
                11 pages
21
    Exhibit 13  Exhibit B to the Complaint,       34
22              MADC0726_0000002
23  Exhibit 14  10-04539_Defendant_0000262-63    51
24  Exhibit 15  10-04539_Defendant_0000293-299   53
25  Exhibit 18  10-04539_Defendant_000923        55

## Page 4

1   Exhibit 21  10-04539_Defendant_0001002-03     56
2   Exhibit 22  10_04539_Defendant_0000281        57
3   Exhibit 24  MADWAA00384184-289                59
4   Exhibit 25  10-04539_Defendant_0000562-66     61
5   Exhibit 27  AMF00058423                       63
6   Exhibit 28  10-04539_Defendant_0000910        64
7   Exhibit 29  JPMSAF0021471                      66
8   Exhibit 30  MADWAA00223841-42                 68
9   Exhibit 32  AMF00058422                       68
10  Exhibit 33  JPMSAF0023163                      69
11  Exhibit 34  MADWAA00228959-60                 70
12  Exhibit 36  AMF00058421                       70
13  Exhibit 38  JPMSAF0024422                      71
14  Exhibit 40  AMF00058420                       72
15  Exhibit 41  JPMSAF0027252                      73
16  Exhibit 42  MADWAA00351749-50                 73
17  Exhibit 44  AMF00058419                       74
18  Exhibit 45  JPMSAF0029877                      74
19  Exhibit 46  MADWAA00334221-22                 75
20  Exhibit 48  AMF00058418                       76
21  Exhibit 49  JPMSAF0033283-84                  77
22  Exhibit 50  MADWAA00161898-99                 77
23  Exhibit 52  AMF00058416                       78
24  Exhibit 53  JPMSAF0034729                      79
25  Exhibit 54  MADWAA00175548-49                 80

## Page 5

1   Exhibit 56  AMF00058415                       80
2   Exhibit 57  JPMSAF0035553                      81
3   Exhibit 58  MADWAA00156010-11                 81
4   Exhibit 60  AMF00058414                       82
5   Exhibit 61  JPMSAF0039403                      82
6   Exhibit 62  MADWAA00170021-22                 83
7   Exhibit 64  AMF00058413                       83
8   Exhibit 65  JPMSAF0042904                      84
9   Exhibit 66  MADWAA00363309-10                 85
10  Exhibit 68  AMF00058412                       85
11  Exhibit 69  JPMSAF0044578                      85
12  Exhibit 70  MADWAA00374149-50                 86
13  Exhibit 72  AMF00058411                       86
14  Exhibit 73  JPMSAF0046395                      87
15  Exhibit 74  Document                          88
16  Exhibit 78  AMF00058410                       89
17  Exhibit 79  JPMSAF0049072                      89
18  Exhibit 80  MADWAA00209692-93                 90
19  Exhibit 82  10-04539_Defendant_0000187        90
20  Exhibit 83  AMF00058409                       91
21  Exhibit 84  JPMSAF0053993                      91
22  Exhibit 85  MADWAA00200252-53                 92
23  Exhibit 87  AMF00058408                       92
24  Exhibit 88  JPMSAF0056061                      93
25  Exhibit 89  MADWAA00267346-47                 94

Page 6

1    Exhibit 91  AMF00058407            95
2    Exhibit 92  JPMSAF0057127          95
3    Exhibit 93  MADWAA00277086-87         96
4    Exhibit 94  CITI 000009-10         96
5    Exhibit 96  AMF00058406            98
6    Exhibit 97  JPMSAF0058955          99
7    Exhibit 98  MADWAA00273163-63        100
8    Exhibit 101  AMF00058405          101
9    Exhibit 102  JPMSAF0059365         101
10   Exhibit 103  MADWAA00280388-89       102
11   Exhibit 106  AMF00058404          102
12   Exhibit 107  JPMSAF0059549         103
13   Exhibit 108  MADWAA00276022-23       103
14   Exhibit 110  AMF00058403          104
15   Exhibit 111  JPMSAF0062166         104
16   Exhibit 112  MADWAA00291518-19       105
17   Exhibit 114  AMF00058402          105
18   Exhibit 115  JPMSAF0062875         106
19   Exhibit 116  MADWAA00290921-22       107
20   Exhibit 119  AMF00058401          107
21   Exhibit 120  JPMSAF0064853         108
22   Exhibit 121  MADWAA00287972-73       108
23   Exhibit 124  AMF00058400          108
24   Exhibit 125  JPMSAF0065413         109
25   Exhibit 126  MADWAA00297230-31       110

Page 7

1    Exhibit 130  AMF00058399          110
2    Exhibit 131  JPMSAFOO67355         110
3    Exhibit 132  MADWAA00293507-08       111
4    Exhibit 135  AMF00058398          112
5    Exhibit 136  JPMSAF0068215         112
6    Exhibit 137  MADWAA00286036-37       113
7    Exhibit 140  AMF00058397          113
8    Exhibit 141  JPMSAF0070050         114
9    Exhibit 142  MADWAA00301959-60       114
10   ///
11   ///
12   ///
13   ///
14   ///
15   ///
16   ///
17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///

Page 8

1        THE VIDEOGRAPHER:  Good morning.  We are
2    now on the record.  Today is September 13, 2017, and
3    the time is 10:12 a.m.  My name is Luis Garcia, the
4    video technician in association with Bendish
5    Reporting.  This deposition is being held at the
6    offices of Litigation Services located at
7    74-199 El Paseo Drive, Palm Desert, California,
8    92260.
9        The caption of this case is Irving Picard
10   versus the Gerald and Barbara Keller Family Trust,
11   et al., filed in the United States Bankruptcy Court,
12   Southern District of New York, Adversary Proceeding
13   No. 0801789.  The name of the witness is Gerald
14   Keller.
15       At this time the attorneys present will
16   identify themselves and the parties they represent
17   and the court reporter, Stephanie Borthwick, will
18   swear in the witness.
19       MS. CARLISLE:  Marie Carlisle of Baker
20   Hostetler on behalf of the trustee, Irving Picard.
21       MS. ALLIM:  Jennifer Allim from Chaitman
22   LLP on behalf of the witness, Gerald Keller, as trustee
23   for the Gerald and Barbara Keller Family Trust.
24       THE REPORTER:  Please raise your right
25   hand.

Page 9

1        Do you solemnly state under penalty of
2    perjury that the testimony you will give in this
3    matter will be the truth, the whole truth, and
4    nothing but the truth?
5        THE WITNESS:  Yes, I so state.
6        THE REPORTER:  Thank you.
7            EXAMINATION
8        MS. CARLISLE:  Mr. Keller, I'm going to
9    hand you what has been marked as Exhibit 1 to start
10   off.  This is the litigation protective order that
11   governs this case.
12       (Exhibit 1 was marked for identification.)
13   BY MS. CARLISLE:
14       Q.  Have you seen a copy of this before today?
15       A.  Yes.
16       MS. CARLISLE:  Okay.  And, Jennifer, I
17   understand he is not going to sign; is that correct?
18       MS. ALLIM:  Correct.
19       MS. CARLISLE:  Okay.
20       Q.  And, Mr. Keller, I'm going to ask that you
21   turn to -- it's page 5 of this document.  There's no
22   numbers on it, I apologize.  When the Court issued
23   it they didn't do that for us -- and I'm going to
24   read paragraph 10f.
25       If you go back one page I'm going to read

## Page 10

1  the little section at the beginning of the page 10
2  and then go into f.
3        A.  Okay.
4        Q.  And if at any time I misstate something,
5  please let me know.  Paragraph 10f states:
6        "Confidential Material shall not
7        be given, shown, made available or
8        communicated in any way to any person
9        or entity other than the following,"
10  and then subparagraph f, "A witness
11  at any deposition in the Actions or
12  Rule 2004 examination and such
13  witness's counsel, provided that
14  before providing any Confidential
15  Material to any witness or counsel
16  pursuant to this subparagraph; (i)
17  the party intending to disclose the
18  confidential material, (the 'Noticing
19  Party') shall make a good faith
20  effort to provide notice of its
21  intent to use the Confidential
22  Material to the producing party and
23  any party to whom the Confidential
24  Material relates at least four
25  business days prior to the

## Page 11

1  deposition, and in all instances
2  shall provide such notice at least
3  two business days prior to the
4  deposition; (ii) such notice should
5  include the name of the deponent to
6  whom the Noticing Party intends to
7  disclose the Confidential Material,
8  the date and time of the deposition,
9  and the Bates range for all
10  confidential material to be
11  disclosed; (iii) if the producing
12  party objects to the disclosure of
13  the Confidential Material, the
14  producing party must notify the
15  Noticing Party in writing prior to
16  the deposition and simultaneously
17  request an informal conference with
18  the Court, and the Noticing Party
19  shall not be permitted to disclose
20  the Confidential Material to any
21  witness absent a court order or
22  consent of the producing party; and
23  (iv) all witnesses and their counsel
24  shall be provided with a copy of this
25  Order and shall thereafter be bound

## Page 12

1  by this Order.
2        "Counsel taking the deposition
3        or Rule 2004 examination shall
4        designate all portions of the
5        transcript relating to the
6        Confidential Material as
7        Confidential."
8        Did I read that correctly?
9        THE WITNESS:  Jennifer?
10        MS. ALLIM:  Yes.
11  BY MS. CARLISLE:
12        Q.  Okay.  And just to give you a brief
13  summary, because I know there's a lot of legal
14  gobbledygook, part of the reason we have to do this
15  is because you're a witness and making sure you're
16  aware that this is in effect and there are no
17  documents that have been marked confidential that I
18  intend to use in this case -- in this deposition
19  today; however, if at any time you provide any
20  testimony that you believe is confidential, you can
21  let Ms. Allim or Ms. Chaitman know and they will
22  notify me and I will make sure that the portions of
23  the transcript and any related exhibits are so
24  designated.
25        Okay.  Today I'm going to be asking you

## Page 13

1  some questions.  If at any time I ask you a question
2  that you don't understand or you want some
3  clarification on, please let me know and I'll be
4  happy to reask it --
5        A.  And I'll ask Jennifer too.
6        Q.  Certainly.
7        I also ask that you don't guess at any
8  answers.  If you don't know, just let me know you
9  don't know or you don't recall and that's perfectly
10  acceptable.
11        The court reporter will be taking down your
12  answers today, even though you're on video, so I'm
13  going to ask that to the best of your ability
14  instead of saying "uh-huh" or "huh-uh" or shaking
15  your head you say "yes" or "no" clearly.
16        Also, as we go through if we can not speak
17  over one another, that way she can make sure she
18  gets everything down accurately.  At any time if you
19  need to take a break, if you want to talk to
20  Jennifer or anything like that, just let me know.
21  You need to answer whatever question has been asked,
22  but once you've done that you can take a break for
23  long as you like.
24        A.  Okay.
25        Q.  Before we begin, are you taking any

## Page 14

¹ medications that may impair your ability to testify
² today?
³     A. No.
⁴     Q. Any that would impact your memory?
⁵     A. No.
⁶     Q. No. Okay. Thank you.
⁷     A. Other than old age.
⁸     MS. CARLISLE: You know what? Happens to
⁹ all of us.
¹⁰     Okay. I'm going to hand you then what has
¹¹ been marked as Exhibit No. 2.
¹²     (Exhibit 2 was marked for identification.)
¹³ BY MS. CARLISLE:
¹⁴     Q. And, Mr. Keller, have you seen Exhibit 2
¹⁵ before today?
¹⁶     A. Yes.
¹⁷     I've seen this, haven't I, Jennifer?
¹⁸     MS. ALLIM: Yes.
¹⁹ BY MS. CARLISLE:
²⁰     Q. Okay. And turning to the very last page
²¹ that's marked as Exhibit A --
²²     A. Yes.
²³     Q. -- have you seen this list specifically
²⁴ before today?
²⁵     A. Yes.

## Page 15

¹     Q. Okay. And sitting here right now are you
² able to answer all of these -- answer questions
³ about all of the topics listed here on Exhibit A?
⁴     A. To the best of my ability.
⁵     Q. Okay. That's all I can ask.
⁶     Okay. Did you take any steps to prepare
⁷ for your deposition today?
⁸     A. Yes. I read the previous documents, went
⁹ over the information with Jennifer. That's pretty
¹⁰ much it.
¹¹     Q. Okay. When you say you "went over previous
¹² documents," what documents specifically are you
¹³ referring to?
¹⁴     A. Well, there was some very large documents
¹⁵ that I worked on with Jennifer a while ago, looked
¹⁶ at them, looked at the precis from Jennifer of what
¹⁷ we were going to talk about today and that was
¹⁸ pretty much it.
¹⁹     Q. And you mentioned "large documents" you
²⁰ worked on with Jennifer a while ago, would those
²¹ have been your discovery responses?
²²     A. Yeah.
²³     Q. Okay.
²⁴     A. They were large and repetitive.
²⁵     Q. I certainly understand that.

## Page 16

¹     Okay. Other than that, was there anybody
² else you met with or anything else you did?
³     A. No.
⁴     Q. Okay. Can you please provide your current
⁵ address for the record.
⁶     A. 12161 St. Andrews Drive, Rancho Mirage,
⁷ California, 92270.
⁸     Q. And, Mr. Keller, are you currently
⁹ employed?
¹⁰     A. As a consultant more than a full-time
¹¹ worker.
¹²     Q. Okay. Okay. And what area do you provide
¹³ consulting services in?
¹⁴     A. We have a small publishing company that's
¹⁵ left. I do work with them and we work with some
¹⁶ restaurants and I do some consulting work for them.
¹⁷     Q. Okay. When you say "small publishing" is
¹⁸ that the Keller International?
¹⁹     A. Keller International Publishing.
²⁰     Q. Okay. And what kind of consulting services
²¹ do you provide for Keller?
²²     A. Just discussing what they can do to do
²³ things better on the internet. Pretty much just
²⁴ general discussions of the direction they're going
²⁵ in.

## Page 17

¹     Q. Okay. And what kind of services do you
² provide for restaurants?
³     A. Pretty much similar, just discussing
⁴ directions they can go in and what they can do and
⁵ just my opinion of what the food is like every now
⁶ and then.
⁷     Q. I was going to ask, you could get us all
⁸ discounts.
⁹     Okay. What is your employment background
¹⁰ before becoming a consultant?
¹¹     A. I worked in publishing for 60 years for
¹² Keller Publishing.
¹³     Q. Okay. And when you say "worked in
¹⁴ publishing," what types of --
¹⁵     A. Well, we started off with a small
¹⁶ publishing, grew it up to a number of major and
¹⁷ minor publications and sold most of it 22 years ago.
¹⁸     Q. So you just kind of work with all aspects
¹⁹ of that?
²⁰     A. Uh-huh.
²¹     Q. Okay. Before today have you ever had your
²² deposition taken?
²³     A. Once, a long time ago.
²⁴     Q. Do you recall the circumstances?
²⁵     A. It was a dispute about commission owed to

Page 18

1  another publisher for the use of the publication.
2  Q. Okay. And were you deposed on behalf then
3  of Keller International?
4  A. Yes.
5  Q. Have you ever provided testimony in a
6  court?
7  A. I think at one time I was an expert witness
8  in the beverage business for one court case and I
9  forget exactly what it was. It was a long time ago.
10  Q. Okay.
11  A. I do know it paid very well.
12  Q. Nice.
13  Okay. And do you remember what business it
14  was for?
15  A. I don't have the slightest remembrance. I
16  just remember that I did it.
17  Q. Okay. And do you recall what you were -- I
18  mean I know you said an expert witness in the
19  beverage business, what aspects of the beverage
20  business were you an expert or designated an expert?
21  A. This was, I believe, for a franchise
22  company against the bottler or vice versa. It was a
23  long time ago.
24  Q. Okay. And have you ever provided any
25  testimony or been interviewed in connection with the

Page 19

1  Madoff fraud?
2  A. No.
3  Q. To the extent you know, has anyone else
4  been interviewed or given any testimony in
5  connection with the Madoff fraud on behalf of the
6  Gerald and Barbara Keller Family Trust?
7  A. No.
8  Q. Okay.
9  A. Are we done?
10  Q. Sorry, we're just getting started.
11  To aid the conversation today, I'm going to
12  define a few terms, but, again, if at any point some
13  of these terms you want some clarification, let me
14  know.
15  The first one is "BLMIS," and when I say
16  BLMIS I'm referring to Bernard L. Madoff Investment
17  Securities and any predecessor companies that came
18  before BLMIS.
19  If I'm referring to "Madoff" or
20  "Mr. Madoff," then I'm referring to Madoff, the
21  individual, as opposed to the investment entity.
22  If I use the term "account," I'm going to
23  be referencing the trust's BLMIS Account No. 1ZB314
24  and if I use the term "trust" I'm referring to the
25  Gerald and Barbara Keller Family Trust.

Page 20

1  And sometimes I may use the term "you" and
2  when I do that I'm also going to be referring to the
3  trust since it's the defendant; however, if again
4  you need clarification about whether I'm asking
5  about you, personally, or the trust, let me know and
6  I'll clarify.
7  And if I use the term "transfer" today, I'm
8  simply going to be referring to money that went
9  between the trust and BLMIS or vice versa, so
10  nothing beyond just those transfers there.
11  Any questions about those?
12  A. Not yet.
13  Q. Not yet, I know.
14  Okay. When did you first hear about Bernie
15  Madoff or BLMIS?
16  A. Oh, God. Probably 20 or 25 years ago.
17  Q. Do you recall the circumstances?
18  A. Yes. My father-in-law Marvin Cohn was an
19  investor --
20  Q. Okay.
21  A. -- and he told me about him.
22  Q. Okay. Did you ever have the chance to meet
23  Mr. Madoff in person?
24  A. No.
25  Q. Okay. Did anyone on behalf of the trust

Page 21

1  meet Mr. Madoff in person?
2  A. Not that I know of, no.
3  Q. Okay. And I'm going to probably ask this
4  again later but just to clarify, was it just you and
5  Barbara Keller that were the trustees of the trust?
6  That's correct?
7  A. Yes.
8  Q. Was there anyone else that was authorized
9  to do business on behalf of the trust?
10  A. No.
11  Q. Okay. Did you speak with anyone at BLMIS
12  before deciding to invest?
13  A. Yes. I forget the guy's name, but he had
14  an Italian name.
15  Q. If I say Frank DiPascali, does that sound
16  correct?
17  A. Frank, sounds correct, yeah. I think so.
18  Q. Okay. Did you receive any materials from
19  BLMIS prior to investing?
20  A. No, not that I remember.
21  Q. Okay. Do you recall who you spoke with at
22  BLMIS when you opened the account?
23  A. No.
24  Q. Okay.
25  A. It might have been Frank.

Picard v Keller                                        Keller 9/13/2017

Page 22

1  Q.  And other than this one account that we're
2  discussing, 1ZB1314, did the trust have any other
3  accounts with BLMIS?
4  A.  No.
5  Jennifer?
6  MS. ALLIM:  Yes.
7  THE WITNESS:  You're listening to what I'm
8  saying, making sure I'm right?
9  MS. ALLIM:  Of course.
10  THE WITNESS:  Okay.  Thanks, hon.  Just
11  want to make -- I heard snoring so --
12  MS. CARLISLE:  Uh-oh, he caught you.
13  Q.  Okay.  Once you opened your account, what
14  did you do with the documents that you used to open
15  up the account?
16  A.  I gave them to Irwin Levine.
17  Q.  Okay.  And who is Mr. Levine?
18  A.  He's my financial director, vice president
19  of Keller Publishing.
20  Q.  Okay.
21  A.  And he handled all the financial parts of
22  it.
23  Q.  Okay.  When you say "the financial parts of
24  it," does that mean Keller Publishing or the BLMIS
25  investment?

Page 23

1  A.  Both.
2  Q.  Both.
3  Did he handle your personal finances?
4  A.  Some of them.
5  Q.  Some of them, okay.
6  And to the extent you know, was Mr. Levine
7  a CPA?
8  A.  Yes.
9  Q.  Okay.
10  A.  Yes.
11  Q.  Now when you provided documents to
12  Mr. Levine, did you ask him to retain those
13  documents on your behalf or anything of that nature?
14  A.  I'm sure when I give him things he retains
15  them for a certain amount of time.  That's what he's
16  supposed to do.
17  Q.  Do you know how long he retains them?
18  A.  Don't have the slightest idea.
19  Q.  Okay.  Since December of 2008 have you gone
20  back to Mr. Levine and asked if he has any of those
21  documents?
22  A.  Yes.
23  Q.  Yes.
24  THE WITNESS:  We have, right, Jennifer?
25  MS. ALLIM:  Correct.

Page 24

1  BY MS. CARLISLE:
2  Q.  Okay.  And just stepping back, I don't
3  necessarily want to know -- today what I'm trying to
4  find out a lot of times is what you've done.  So if
5  Jennifer has done something that's okay, that's
6  wonderful, I just want to make sure that I get your
7  testimony correct today.
8  A.  Okay.  Sure.
9  Q.  Okay.  Do you know whether Mr. Levine provided
10  provided those documents?
11  A.  As far as I know he did.
12  Q.  Okay.  And what types of documents over the
13  life of the account once you began investing to 2008
14  did you provide to Mr. Levine?
15  A.  Well, anytime a check would come in, I
16  would countersign it and deposit it in Keller
17  Publishing.
18  Q.  Okay.  What about account statements?
19  A.  Irwin got them.
20  Q.  They went directly to Mr. Levine?
21  A.  Right.
22  Q.  What about correspondence from BLMIS?
23  A.  All to Mr. Levine.
24  Q.  So the only thing that came to you or to
25  the trust were the checks?

Page 25

1  A.  Right.
2  Q.  Okay.  And other than the checks which you
3  deposited, everything else went straight to
4  Mr. Levine and you didn't have any personal records?
5  A.  Correct.
6  Q.  Okay.  Over the life of the account what
7  types of documents did you or someone on behalf of
8  the trust send to BLMIS?
9  A.  You mean when they were asked for?
10  Q.  Either when they were asked for or if you
11  had inquiries and sent correspondence, things of
12  that nature?
13  A.  Well, the only correspondence we would ask
14  is when we would ask for money --
15  Q.  Okay.
16  A.  -- be sent to us.
17  Q.  Okay.  And did you or did Mr. Levine keep
18  copies of any of that correspondence?
19  A.  I'm sure Mr. Levine did.
20  Q.  Okay.  And when these items were sent --
21  and this actually answers some other questions I'll
22  have later -- were those sent by you or Mr. Levine?
23  A.  Mr. Levine.
24  Q.  Okay.  Were those done --
25  A.  I might be also involved in sending in a

Page 26

1  request. I'd have to sign for it, but then he would
2  send it in.
3      Q.  That was going to be my next question.
4      In making a decision to make a withdrawal,
5  was that made by you?
6      A.  Yes.
7      MS. CARLISLE:  Now I'm going to hand you
8  what has been marked as Exhibit No. 3.
9      (Exhibit 3 was marked for identification.)
10     THE WITNESS:  Jennifer?
11     MS. ALLIM:  Yes.
12     THE WITNESS:  There's a huge pile of papers
13  I'm looking at.
14     MS. ALLIM:  Right.  These are all the
15  exhibits that you're going to be shown today.
16     MS. CARLISLE:  Sadly, Jennifer, the whole
17  stack isn't on the table for him to look at.
18     MS. ALLIM:  Oh.
19     MS. CARLISLE:  Yeah, I know.  He's not even
20  looking at the full stack.
21     Q.  If it makes you feel better, Mr. Keller,
22  each of these is in triplicate and you're only to
23  get one.  I just have extra copies in case they're
24  needed --
25     A.  Okay.

Page 27

1      Q.  -- so they won't all get pulled out, but
2  yes.
3      Do you recognize Exhibit No. 3?
4      A.  Yes.
5      Q.  And this is the claim filed with Mr. Picard
6  on behalf of the trust; is that correct?
7      A.  It says "Customer Claim."
8      Yeah, I've seen this and signed it, yeah.
9      Q.  Okay.  That was my next question.
10     Looking at page 4, can you confirm that is
11  yours and Barbara Keller's signatures?
12     A.  Yes.
13     Q.  Looking at page 3, at the bottom of the
14  page it asks for the name and address of anyone
15  assisting you and it contains the name of Mr. Chris
16  Topolewski.
17     I may have slaughtered that.
18     A.  Yes.
19     Q.  Who is Mr. Topolewski?
20     A.  He was a stockbroker I was using and had
21  some information that we tapped into.
22     Q.  Okay.  Were you at all involved in
23  preparing this or did Mr. Topolewski prepare the
24  bulk of it?
25     A.  I'm not sure who prepared the bulk, whether

Page 28

1  it was Chris or Irwin.
2      Q.  Okay.  So Irwin would have also -- or
3  Irvin? Irvin?
4      A.  Irwin.
5      Q.  Irwin.
6      So Irwin would have also been prepared in
7  preparing this?
8      A.  Yes.
9      Q.  Were you at all involved in preparing this,
10  other than signing?
11     A.  Other than looking it over, no.
12     Q.  Okay.  Turning to page 5 -- it's that page.
13  There's no numbers after page 4.
14     A.  Okay.
15     Q.  This chart, do you know who created this
16  chart?
17     A.  No.
18     Q.  No, okay.
19     Do you know whether or not during the life
20  of the account Irwin or anyone else kept information
21  such as this regarding the trust's investment?
22     A.  I would think Irwin or somebody would have
23  kept this information.
24     Q.  But you don't know if he maintained any
25  spreadsheets or anything similar to this?

Page 29

1      A.  No.
2      MS. CARLISLE:  Okay.  Jennifer, I'm now
3  going to go to Exhibit No. 6.
4      MS. ALLIM:  Okay.
5      (Exhibit 6 was marked for identification.)
6      MS. ALLIM:  Skipping 4 and 5 or are we
7  going to go back?
8      MS. CARLISLE:  I do think I'm going to skip
9  4 and 5.
10     MS. ALLIM:  Okay.
11  BY MS. CARLISLE:
12     Q.  Okay.  I'm handing you what has now been
13  marked as Exhibit -- sorry.
14     A.  Just looking back at the good old days.
15     Q.  Before December of 2008?
16     A.  Yes.
17     Q.  Yes, I understand.
18     Okay.  That has been marked as an exhibit.
19     If you want to take the ones that are
20  marked with stickers and set them to one side, at
21  the end of the day the court reporter will be
22  gathering those up.
23     A.  She will do what?
24     Q.  She'll be gathering, taking those with her
25  to put on the back of the transcript.

Page 30

1    THE WITNESS:  You're going to take my
2  papers?
3    THE REPORTER:  I am.
4    MS. CARLISLE:  Jennifer, he just gave a
5  look, but he also smiled so it's all good.
6    MS. ALLIM:  Okay.
7  BY MS. CARLISLE:
8    Q.  I've handed you what has been marked as
9  Exhibit No. 6.  Do you recognize this document?
10    A.  Looks like something that -- some of those
11  fat papers I might have filled out.
12    Q.  Uh-huh.
13    A.  Yeah.  Believe me, I don't know what's --
14  yes.
15    Q.  I understand.  This is also --
16    A.  Yeah.
17    Q.  -- if you look at the top of the first page
18  this also was filed in the court in September of
19  2015, so it's been a little while.
20    But this -- the title's on page 2 and this
21  is the answer and defenses of the Gerald and Barbara
22  Keller Family Trust in this lawsuit.
23    A.  Right.
24    Q.  Do you recall seeing this document before
25  September of 2015?

Page 31

1    A.  I'm not sure when I saw it.
2    Q.  Okay.  And if you need a minute to look
3  through it, but do you recall going through this
4  document to confirm that the information provided is
5  accurate?
6    A.  As far as I was concerned, when we finished
7  this up it was as accurate as could be.
8    Q.  Okay.  Okay.  Do you recall whether or not
9  you went through any documents or spoke to anyone
10  other than counsel in determining the accuracy of
11  the information provided?
12    A.  No.
13    Q.  Okay.  And just stepping back just to
14  clarify.  Today when I'm asking questions about
15  things you've done, if you have a conversation --
16  you had a conversation --
17    A.  Yeah.
18    Q.  -- with either Jennifer or Mrs. Chaitman --
19    A.  Uh-huh.
20    Q.  -- I'm not asking about the details of
21  those.  You can just simply say you spoke with
22  Jennifer and I will understand.
23    A.  Yeah.
24    Q.  Not trying to get into that.
25    A.  I understand.

Page 32

1    Q.  Okay.  I'm going to ask that you turn to
2  page 22 of Exhibit 6.
3    A.  Okay.
4    Q.  Okay.  And this section of the answer
5  contains the affirmative defenses asserted by the
6  trust.  And looking at Affirmative Defense No. 16,
7  it states:  "The Defendants are entitled to setoff,
8  recoupment and/or equitable adjustment because each
9  year the Defendants were required to pay taxes on
10  the fictitious profits reported on, among other
11  things, IRS Form 1099 and other information reported
12  by BLMIS or Madoff to the IRS, State and/or other
13  local governmental taxing authorities."
14    Do you recall, sitting here today, how much
15  the trust paid to the IRS, how much in taxes the
16  trust paid to the IRS on its BLMIS income?
17    A.  No.  It was different every year.
18    Q.  Okay.  And you don't know the total for all
19  those years?
20    A.  Quite substantial, but I don't know total.
21    Q.  Is that something Mr. Levine would have
22  information on?
23    A.  Yes.
24    Q.  Okay.  Other than paying taxes to the
25  federal government, were there any state governments

Page 33

1  that the trust paid income taxes to on its BLMIS
2  income?
3    A.  As far as I know, New York and California.
4    Q.  Okay.  So both states?
5    A.  Yeah, and there may be another one, too,
6  but I don't think so.
7    Q.  Okay.  Were there any other places that the
8  trust --
9    A.  Well, we had an office in Chicago with a
10  publishing company, but I don't think that would
11  affect me in any way.  I think it's just primarily
12  my main residence, which was in New York and then
13  moved to California.
14    Q.  Okay.  And what year did you move to
15  California?
16    A.  Let me see.  I think 1995 or '96.
17    Q.  Okay.  And was that a permanent move or --
18    A.  Yeah.
19    Q.  Okay.  So with respect to this affirmative
20  defense, any of the documents related to those taxes
21  would Mr. Levine also have that information?
22    A.  He should have that.
23    Q.  If not already provided to your attorney?
24    A.  Right.
25    Q.  Okay.  Okay.

Page 34

1      Okay.  Do you know whether or not the trust
2  requested a refund of any of those taxes from the
3  IRS?
4      A.  I'm not sure.
5      MS. CARLISLE:  Okay.  I'm going to ask then
6  that you turn to page 23 and paragraph -- or
7  Affirmative Defense No. 27 states that, "The
8  Trustee's claims are barred in whole or part for
9  failure to properly credit inter-account transfers,
10  profit withdrawals, and other adjustments."
11      I'm going to also hand you what has been
12  marked as Exhibit No. 13.
13      (Exhibit 13 was marked for identification.)
14      THE WITNESS:  Are we done with this?
15  BY MS. CARLISLE:
16      Q.  No, not quite yet.
17      A.  Okay.
18      Q.  Exhibit 13 will help you, I think, in
19  answering my questions about that paragraph.
20      MS. ALLIM:  Marie, is that Exhibit B?
21      MS. CARLISLE:  Yes, ma'am.  It's Exhibit B
22  of the Complaint.
23      MS. ALLIM:  Okay.  We are withdrawing that
24  defense.  There are no inter-accounts transfers.
25      MS. CARLISLE:  Okay.

Page 35

1      Q.  So do you agree with that, that you're
2  going to withdraw this affirmative defense?
3      A.  Whatever makes Jennifer happy.
4      MS. CARLISLE:  Well, Jennifer, if I were
5  you, I'd start asking some good stuff then.
6      THE WITNESS:  I agree.
7  BY MS. CARLISLE:
8      Q.  Because what I was going to do was ask you
9  to look at that and see if you saw any inter-account
10  transfers.  That's what I needed to know.
11      Okay.  Then I'm going to ask then that --
12  we might pull that out.
13      A.  I'll keep that.
14      Q.  Yes.  That one we might pull out, because
15  that is Exhibit B, just for reference, to the
16  Complaint.
17      A.  Yeah.
18      Q.  I'm going to ask then you turn to page 24
19  of this Exhibit No. 6, and paragraph 37 -- or
20  Affirmative Defense, excuse me, 37 states that the
21  transfers were legally compelled under state and
22  federal securities laws.
23      Are you aware of any of these transfers
24  being compelled under the law?
25      A.  I don't know.

Page 36

1      Q.  Okay.  And this was not an IRA account, was
2  it?
3      A.  No.
4      Q.  No, okay.
5      THE WITNESS:  That's correct, isn't it,
6  Jennifer?  It wasn't an IRA.  No.
7      MS. ALLIM:  It was not an IRA.
8  BY MS. CARLISLE:
9      Q.  Okay.  I'm going to ask then that you turn
10  to page No. 25, so one page, and looking at
11  paragraph 46 --
12      I'm sorry, paragraph 43, excuse me.
13      And that paragraph states that, "The
14  Defendants cannot be liable for withdrawals that
15  Defendants were legally compelled to transfer to
16  state and federal taxing authorities."
17      Looking at that exhibit or just based on
18  your memory, are you aware of any transfers that the
19  trust was legally compelled to make and provide the
20  money to taxing authorities?
21      A.  If we made profits, we had to pay taxes on
22  them --
23      Q.  Okay.
24      A.  -- as far as I know.
25      Q.  I agree.  Unfortunately, that is the truth.

Page 37

1      When you say, though, "when we made
2  profits" was that profits on your BLMIS account?
3      A.  It was from the Madoff account.
4      Q.  Okay.  So you're referring to the taxes
5  that the trust was required to pay on its BLMIS
6  income?
7      A.  Correct.
8      Q.  Other than being required to pay taxes on
9  the income, were there any other reasons that a
10  taxing authority would have compelled you to make
11  any payments?
12      A.  Not that I know of.
13      MS. CARLISLE:  Okay.  I'm now going to hand
14  you what has been marked as Exhibit 7.
15      (Exhibit 7 was marked for identification.)
16  BY MS. CARLISLE:
17      Q.  I'm pretty much done with 6, Exhibit 6, if
18  you want to set that down.
19      A.  On this pile or keep it in front of me?
20      Q.  You can keep any of these in front of you
21  for reference.
22      A.  No, no.  I'd just as soon move them away.
23      Q.  Yeah, okay.
24      I'm handing you what has been marked as
25  Exhibit No. 7.

08-01789-cgm   Doc 20748-4   Filed 09/13/21   Entered 09/13/21 13:26:58   D-
Transcript   Pg 12 of 54
Picard v Keller                                        Keller 9/13/2017

11 (Pages 38 to 41)

Page 38

1       And do you recognize Exhibit No. 7?
2    A.  Yes.
3    Q.  Yes.
4    A.  I've seen it, I know.
5    Q.  This is a letter from my law firm, Baker &
6  Hostetler, to your counsel or Ms. Chaitman dated
7  April 13th, 2011, and we commonly refer to it as a
8  preservation letter.
9       And I'm going to read to you part of the
10 first paragraph and let me know if I read anything
11 incorrectly.  Starting at the second sentence it
12 says, "Please be advised your clients are not to
13 destroy, conceal or alter any paper or electronic
14 files or any other electronically generated or
15 stored information on computers or storage media
16 that your clients may have in their possession,
17 custody or control that may be related to this
18 matter."
19      At any time -- do you recall reading that?
20   A.  Yes.
21   Q.  Okay.  And in taking a step back, back in
22 2011 Ms. Chaitman and Mr. Smith and possibly others
23 at Becker & Poliakoff were your counsel; that's
24 correct?
25   A.  Correct.

Page 39

1    Q.  Okay.  Since receiving this letter what
2  steps have you taken to make sure that any documents
3  that you or Keller Publishing or, I guess,
4  Mr. Irwin --
5    A.  Levine.
6    Q.  -- Mr. Levine on behalf of Keller
7  Publishing -- to make sure those documents were
8  maintained?
9    A.  Yes, they were, by Irwin Levine.
10   Q.  Okay.  After receiving this letter did you
11 have a conversation with Mr. Levine to ensure this
12 happened?
13   A.  Yes.  Oh, yeah.
14   Q.  I don't know why I'm confusing his first
15 and last name.  I want to call him Mr. Irwin.
16   A.  You can call him anything you want.
17   Q.  I don't know if he would like that, but I
18 guess he's not here, is he?
19   A.  I often do.
20   Q.  Okay.  And I understand that this letter
21 was sent in 2011.  Prior to 2011 or when you first
22 saw this letter, had you already had any discussions
23 with Mr. Levine about maintaining the records?
24   A.  We talked about the fact that basically
25 there was going to be a problem and he should keep

Page 40

1  as much information as he could.
2    Q.  Okay.  Other than -- earlier we talked
3  about letters you had sent, correspondence asking
4  for withdrawals --
5    A.  Yeah.
6    Q.  -- and there's monthly statements and some
7  other documents received.
8       Do you know whether or not Mr. Levine
9  maintained copies of bank account records for either
10 the trust or Keller International Publishing?
11   A.  I assume he did.  It was his job.
12   Q.  Do you know how long he might have kept
13 those records?
14   A.  No, I don't.
15   Q.  Okay.
16   A.  I know there was a legal limit of when he
17 was supposed to keep it, for seven years, I believe.
18   Q.  Certainly.
19   A.  And I'm not sure he had them or kept them
20 longer than that.
21   Q.  Okay.  Do you know whether or not he
22 preserved those once you realized -- you realized
23 there was, what you said a minute ago, there was
24 going to be an issue related to the Madoff account?
25   A.  I'm sure he kept them.

Page 41

1    Q.  Okay.  Did you, personally, keep copies of
2  any of those records at all?
3    A.  No.
4    Q.  Did you, personally, when you received
5  the -- well, I guess you didn't receive anything.
6       I guess you received the checks and you
7  mentioned that you signed the checks.
8    A.  Yeah.
9    Q.  Other than signing the checks, did you
10 maintain any other records regarding withdrawals or
11 deposits?
12   A.  That was Irwin's job.
13   Q.  Okay.
14   A.  My job to spend the money; his job to make
15 it work for me.
16   MS. CARLISLE:  Not a bad job to have.
17      Okay.  I'm going to hand you now what has
18 been marked as Exhibit No. 10.
19      Jennifer, I know we have a 10A, -B and -C,
20 but I'm just going to use 10C and that's the only
21 one I'm going to mark as 10.
22   MS. ALLIM:  Okay.
23   MS. CARLISLE:  Okay.
24   THE WITNESS:  Thank you.
25   MS. CARLISLE:  See, I told you.  I know the

Page 42

1  stack looks daunting, but I promise --
2      (Exhibit 10 was marked for identification.)
3  BY MS. CARLISLE:
4      Q.  Mr. Keller, do you recall seeing this
5  exhibit before today?
6      A.  Vaguely, yes.
7      Q.  Vaguely.
8      A.  It's like the rest of the big fat pack of
9  papers I worked on.
10      Q.  Certainly.
11          Okay.  And when you mentioned that you
12  worked on them, again, I'm not asking about anything
13  you may or may not have discussed with counsel --
14      A.  We just discussed --
15      Q.  Okay.  Well, did you review any other
16  documents in answering these interrogatories?
17      A.  Not that I remember.
18      Q.  Did you have any discussions with
19  Mr. Levine in responding to these interrogatories?
20      A.  It's possible, but I don't remember that
21  either.
22      Q.  Okay.  Okay.  And I don't know --
23      A.  The answers were fairly -- well --
24      Q.  Well, if you look at either the second to
25  last page or the last page there's some dates and I

Page 43

1  just don't know if this will help refresh your
2  memory, but it shows that this was provided to us
3  and the last page is dated June 16th of this year
4  and then the page before that has your signature
5  dated June 6th of this year.
6          Does that help refresh your memory at all?
7      A.  Well, yeah.  It's a number of months ago
8  and it was a lot of stuff to look at and talk about.
9      Q.  Okay.
10      A.  And, frankly, not a lot of stuff I like to
11  remember.
12      Q.  Certainly understand that.
13          Okay.  I'm going to ask then that you turn
14  to page 3 and page 3 has, just for the record, this
15  section of this document is titled "General
16  Objections."
17      A.  Uh-huh.
18      Q.  And General Objection No. 9 states that,
19  "Responding Party's responses to the Requests are
20  based on information presently available."
21          In saying that, what information and/or
22  documents did you look at so that you could ensure
23  you looked at everything presently available in
24  responding to these requests?
25      A.  Basically, whatever I had available or

Page 44

1  whatever I remembered actually.
2      Q.  Okay.  And sitting here today do you recall
3  what you had available to you at that time?
4      A.  Nothing, really --
5      Q.  Okay.
6      A.  -- to speak of.
7          MS. CARLISLE:  I'm going to hand you now --
8  and we'll go back to that document, but just briefly
9  I am going to hand you what has been marked as
10  Exhibit No. 11.
11          (Exhibit 11 was marked for identification.)
12  BY MS. CARLISLE:
13      Q.  And have you seen Exhibit No. 11 prior to
14  today?
15      A.  I assume I have.
16      Q.  Okay.  And Exhibit No. 11, and correct me
17  if I'm wrong, is a letter from Baker Hostetler dated
18  November 17th of 2016 to Chaitman LLP.  Both
19  Jennifer and Ms. Chaitman are included on this and
20  this is a letter, at least it purports to be a
21  letter, sending them copies of the trustee's
22  documents.
23      A.  Uh-huh.
24      Q.  Okay.  And if you look, there's two disks
25  at least that are described on the letter and

Page 45

1  there's photocopies of the disks on the back.
2          The first one is for "Account No. 1ZB314
3  Core Account Documents" and the second disk is
4  titled "Account No. 1ZB314 Bank Transfer Documents."
5          At any time have you seen either the disks
6  or the documents contained on those disks?
7      A.  Not that I recall.
8      Q.  So would it be safe to say that you did not
9  review those documents in answering these
10  interrogatories?
11      A.  I don't think so.
12  Jennifer?
13          MS. ALLIM:  No, you did not.
14          THE WITNESS:  I didn't.
15  BY MS. CARLISLE:
16      Q.  Okay.  Okay.  Then turning -- I'm done with
17  11, yes.
18          Turning back to Exhibit No. 10, I'm going
19  to page 4.  The very first, and the second one is
20  very similar, but the very first interrogatory asks
21  you or asks the trust to identify each deposit into
22  the account and the trust states that it's unable to
23  do so.
24          In responding to that do you know -- or
25  actually, let me take that back.

Page 46

1    In responding to that what steps did you or
2  someone else on behalf of the trust take to try to
3  identify the deposits?
4    A.  I think -- I believe we talked to Irwin
5  about it to see if he had some of these documents.
6    Q.  Okay.
7    A.  I'm not sure if he still had them.
8    Q.  Okay.  And when you weren't sure that he
9  had still had them, do you know whether or not at
10 that time they had already been provided to counsel?
11   A.  I don't know.
12   Q.  Okay.  Okay.  Is it safe for me to assume
13 that the answers would be the same regarding the
14 second one asking to identify each withdrawal?
15   A.  I would say so, yes.
16   Q.  Okay.  You didn't handle the deposits and
17 withdrawals different from one another?
18   A.  No.
19   Q.  Okay.  Same page, going down to
20 paragraph -- or Interrogatory No. 3 it asks to
21 identify persons with knowledge of any transfer and
22 you list yourself and Mr. Levine.
23   A.  Right.
24   Q.  Is there anyone else that might have had
25 information?

Page 47

1    A.  No.
2    Q.  No.
3       Was your wife at all involved in handling
4  the BLMIS account?
5    A.  No.
6    Q.  Okay.  What about Mr. -- I believe it's
7  Top- --
8    A.  Topolewski.
9    Q.  Topolewski, thank you.
10   A.  I think he just helped Irwin with some
11 information, some detailed stuff, some minor stuff,
12 but he really wasn't involved in anything other than
13 maybe a consulting type just briefly.
14   Q.  And when you say "as a consultant," was
15 that more on the claims side of it after the fraud
16 was discovered --
17   A.  Yeah.
18   Q.  -- or was he involved at all --
19   A.  No.
20   Q.  -- in handling the account before 2008?
21   A.  No.
22   Q.  Okay.  And staying with Exhibit No. 10,
23 turning to page 5, Interrogatory No. 6, it asks to
24 "Identify each person or entity that ever received
25 funds."  Other than the trust, and you briefly

Page 48

1  mentioned that they were deposited into an account
2  held by Keller International Publishing, other than
3  the trust or through Keller International
4  Publishing's account, was there anyone else that
5  directly received the funds from BLMIS?
6    A.  No.
7    Q.  And just going back to that point, did the
8  trust have its own bank account?
9    A.  I don't know.  I don't think -- I'm not
10 really sure.
11   Q.  Okay.
12   A.  No.
13   Q.  Okay.  Do you know would that be something
14 Mr. Levine would know?
15   A.  Probably, yes.
16   Q.  Because earlier you mentioned that the
17 check -- you signed the checks and then they were
18 deposited for Keller International Publishing?
19   A.  Right.  The checks were made out to me.
20   Q.  As the trustee?
21   A.  Yeah, and I just signed them over to
22 Keller.
23   Q.  But I just want to clarify when you say
24 "Keller," you mean Keller International Publishing?
25   A.  Right.

Page 49

1    Q.  Okay.  And then quickly staying in this
2  page -- in this document turning to page 11, can you
3  confirm -- sorry.  I'm sorry.  I'm getting ahead.
4    A.  That's okay.
5       Yes.
6    Q.  Can you confirm for me whether or not that
7  is your signature at the bottom of that page?
8    A.  It is.
9       MS. CARLISLE:  Okay.  Thank you.
10      I'm going to now hand you what has been
11 marked as Exhibit No. 12.
12      And, Jennifer, I'm going to do the same
13 thing.  I'm not going to use 12A or -B.  It's just
14 going to be 12C.
15      MS. ALLIM:  Okay.
16      (Exhibit 12 was marked for identification.)
17 BY MS. CARLISLE:
18   Q.  And, Mr. Keller, do you recognize
19 Exhibit 12?
20   A.  Vaguely, yes.
21   Q.  Okay.  If I had you look at the title -- or
22 I'll read the title, "Responses and Objections of
23 Defendant The Gerald and Barbara Keller Family
24 Trust, the Trustee's First Request for Production of
25 Documents," does that help refresh your memory at

Page 50

1  all?
2     A.  It was part of a large, fat, duplicated
3  pieces of --
4     Q.  Gotcha.  Understand.
5     A.  -- documents I had.
6     Q.  Certainly.
7     And, again, turning to the very last page,
8  it shows that they're dated on June 16th.
9     Does that help refresh your memory at all?
10     A.  No.
11     Q.  Okay.  In responding to these requests for
12  production, did you provide to your counsel copies
13  of all documents that you had that you, personally,
14  maintained on behalf of the trust?
15     A.  I didn't have any.
16     Q.  You didn't have any.
17     Okay.  To the best of your knowledge did
18  Mr. Levine provide all of the documents he had to
19  your counsel?
20     A.  Yes, he did.
21     Q.  Other than Mr. Levine, is there anyone else
22  that might have had documents related to the BLMIS
23  accounts for the trust?
24     A.  No.
25     Q.  No, okay.

Page 51

1     Did you speak with any of your banks to
2  ensure that they -- to see if they had any of the
3  records that might -- any of your banking records or
4  the Keller International Publishing's banking
5  records that showed withdrawals or deposits into the
6  account?
7     A.  Irwin would.
8     Q.  Do you know if he did?
9     A.  I'm sure he got as much information as he
10  could.
11     Q.  Okay.  And then I'm going to ask you to
12  turn to page 5, Request No. 8, and the request here
13  was for documents sufficient to identify any money,
14  property or anything else of value provided by the
15  Trust or any other person on behalf of the trust to
16  BLMIS and/or Madoff in exchange for any transfer.
17     Other than deposits made into the account,
18  did the trust provide anything to Mr. Madoff or
19  BLMIS?
20     A.  No.
21     MS. CARLISLE:  Okay.  Okay.  I'm going to
22  hand you then what's been marked as Exhibit No. 14.
23     (Exhibit 14 was marked for identification.)
24     THE WITNESS:  Are we done with this guy?
25     MS. CARLISLE:  We are done with that one.

Page 52

1  Yes, sir.
2     THE WITNESS:  All right.  Maybe I'll take a
3  little break.  Do you mind?
4     MS. CARLISLE:  No, that's fine.  Certainly.
5     THE VIDEOGRAPHER:  We're off the record at
6  11:04 a.m.
7     (Recess taken.)
8     THE VIDEOGRAPHER:  We're back on the record
9  at 11:16 a.m.
10  BY MS. CARLISLE:
11     Q.  Okay.  Mr. Keller, I'm going to hand you
12  what has been marked as Exhibit No. 14 and this was
13  an item produced to us in this case.
14     Do you recognize this at all?
15     A.  No.
16     Q.  No.
17     Do you know why you or the trust would have
18  received any information from Friehling & Horowitz?
19     A.  No.
20     Q.  Okay.  Do you know whether or not this
21  was -- step back.
22     Did you or the trust have any dealings with
23  Friehling or Horowitz outside of BLMIS?
24     A.  Not that I know of.
25     MS. CARLISLE:  Okay.  I'm going to hand you

Page 53

1  then what has been marked as Exhibit No. 15.
2     (Exhibit 15 was marked for identification.)
3  BY MS. CARLISLE:
4     Q.  And do you recognize Exhibit No. 15?
5     A.  Not really.
6     Q.  Okay.  You see at the top on the very first
7  page there's like a fax note?
8     A.  Uh-huh.
9     Q.  And it shows that Mr. Levine was sending
10  this to a Neal Price?
11     A.  Uh-huh.
12     Q.  Do you know who Mr. Price is?
13     A.  No.
14     Q.  Do you know why Mr. Levine would have been
15  sending this to someone else?
16     A.  No.
17     Q.  Okay.  Do you recognize the area code on
18  that, Mr. Price's?  Is it area code 312?
19     A.  That's Chicago, I think, isn't it?
20     Q.  Off the top of my head, I don't know.  I
21  mean I'm sure I could look it up, I just didn't know
22  if that would help.
23     A.  No.
24     Q.  Okay.  And then looking further down on
25  page 1, it appears there some handwritten letters, A

## Page 54

and B, on that.

A. Uh-huh.

Q. Do you recognize that handwriting?

A. No.

Q. Okay. So you don't know whether that was Mr. Levine's or someone else's?

A. No.

Q. Okay. And since you mentioned you didn't recognize it, this is one of the monthly statements I was talking about that would have been received.

A. Yeah.

Q. Okay.

A. I might have seen these at one time when we first got involved, so they were pretty complete, as I remember.

Q. Okay. And understanding that they went to Mr. Levine, but to the best of your knowledge did Mr. Levine do any analyses of the information contained?

A. I think he did analysis for tax purposes.

Q. Okay. Beyond that did he do any checking to make sure that the transfers, the deposits and withdrawals were correct?

A. In this statement?

Q. In this statement. Yes, sir.

## Page 55

A. I don't know.

Q. You don't know. Okay.

A. I would doubt it, but --

MS. CARLISLE: Okay. Jennifer, I'm going to skip a couple of exhibits and go to Exhibit No. 18.

(Exhibit 18 was marked for identification.)

MS. ALLIM: Okay.

THE WITNESS: Thank you.

BY MS. CARLISLE:

Q. You just like hearing that I skipped exhibits, don't you?

A. As much as you can.

Q. I think my paralegal would have the same thought. She had to prepare all of these for us.

I've handed you what has been marked as Exhibit No. 18 and do you recognize this document?

A. Not really.

Q. Okay. Have you ever seen -- do you recall during the life of the account seeing documents that looked similar to this?

A. I might have but --

Q. Okay.

A. This is a mailing label or something?

Q. This is -- and I will tell you, I don't

## Page 56

know because I did not work for BLMIS so I don't necessarily know, but what I'm deeming this is kind of like a receipt that BLMIS would send to clients just referencing that on this date we debited your account for this and here it looks like it's some dividends on June 18th of '97 for Dupont.

So I just was curious if you were --

A. No.

Q. Okay. Documents similar to Document 18, would those have also gone directly to Mr. Levine?

A. Yeah.

MS. CARLISLE: Okay. I'm going to hand you now what's been marked as Exhibit No. 21.

(Exhibit 21 marked was for identification.)

BY MS. CARLISLE:

Q. And do you recognize Exhibit No. 21?

A. No.

Q. Okay. And looking at the first page of it, the address there, the Great Neck Road, was that your home address or --

A. No, that's the office address.

Q. That's the office address, okay.

So even though it's addressed to you, it likely would have gone straight to Mr. Levine?

A. Yes.

## Page 57

I'd like to have this now.

MS. CARLISLE: Okay. I'm going to hand you now what's been marked as Exhibit No. 22.

(Exhibit 22 was marked for identification.)

(Discussion off the record.)

BY MS. CARLISLE:

Q. And, Mr. Levine, earlier I mentioned that these documents like this and documents similar to this are the monthly statements for BLMIS.

A. Uh-huh.

Q. Would you agree with me that Exhibit No. 22 appears to be the monthly statement for your account for the month of March of 1997?

A. I think it's part of the statement; I don't think it's the whole statement.

Q. Okay. And why do you say that?

A. It's only a million dollars.

Q. Agreed.

Well, let me say this. It shows -- stepping back, it shows on March 20th you deposited a wire or there's a check wire for the amount of $1 million; correct?

A. Bought or received. This looks like something that they bought on my behalf.

Q. Okay. If you look right above -- I'm

Page 58

1  looking at the first date. It says "3/20," and I
2  understand it's kind of difficult to look across
3  these because the shading on the background doesn't
4  correlate with each one --
5      A. Uh-huh.
6      Q. -- but do you see on the first one it says
7  a check wire for $1 million?
8      A. A million dollars, uh-huh.
9      Q. Okay. Stepping back, do you know when the
10  Keller trust opened its account with BLMIS?
11      A. No. I'm not sure of the date, but it looks
12  like we sent a wire in for a million dollars and
13  they took that money and bought Treasury bills.
14      Q. I would agree with that assessment of what
15  this looks like.
16          Was that million dollars, was that the
17  first transfer of money to BLMIS?
18      A. I don't know. It could have been.
19      Q. Okay.
20      A. I'm not really sure.
21      Q. Okay. Do you know what amount was the
22  first transfer that was sent?
23      A. It looks like it is from the records you
24  also sent me before. So from what I'm looking at,
25  and that's this deposit thing, this is the first

Page 59

1  amount of money we put in.
2      Q. And I agree that's what our Exhibit B
3  states.
4      A. Yeah.
5      Q. I'm just trying to see if you remembered
6  something different from that.
7      A. All I can tell you is what I see here and
8  what I see here (indicating) seems to match.
9          MS. CARLISLE: Okay. Then I'm going to
10  hand you now what has been marked as Exhibit No. 24.
11          (Exhibit 24 was marked for identification.)
12          THE WITNESS: This is a nice one.
13      BY MS. CARLISLE:
14      Q. It is, but it is going to knock off a few
15  inches of my stack here for you all at once, so
16  figured you'd appreciate that.
17          Would you agree with me that Exhibit No. 24
18  appears to be a monthly bank statement for an
19  account held at Chase by Bernard L. Madoff and the
20  ending digits of the account number are -703 and it
21  appears to cover the time period of January of 1999?
22      A. Yeah.
23      Q. Okay.
24      A. 1st to the 29th, right.
25      Q. And I'm going to ask then that if you turn

Page 60

1  to page -- if you're looking at the numbers on the
2  bottom that start with an M, it's page 192 of that.
3  It's not page 192, but it ends in -192.
4      A. How far back?
5      Q. It's about ten pages back.
6      A. Okay.
7      Q. Nine pages back.
8      A. Well, looking for January 4th or something?
9      Q. I'm looking for January 4th, yes, sir. The
10  first transfer on the -- and, also, if you look at
11  the pages in the account statement, it shows page 5
12  of 53.
13      A. Yes, I see that.
14      Q. Okay. At the very first entry on this
15  page --
16      A. Uh-huh.
17      Q. -- it shows on January 4th that there was a
18  deposit in the amount of $1.8 million and looking at
19  the description it shows that that was made on
20  behalf of you, Gerald Keller.
21      A. Yes.
22      Q. Okay. In looking at that description, do
23  you recognize any of the other information? Are
24  there any account numbers or any banking
25  institutions that you recognize in that?

Page 61

1      A. Not really, no.
2      Q. Okay. But do you recall making a transfer
3  in January of 1999 of 1.8 million?
4      A. I do after I look at the papers you've
5  given me, but that's a long time ago.
6      Q. Okay. Okay.
7      A. I don't recall.
8          MS. CARLISLE: Okay. That's fine.
9          I'm now going to hand you what has been
10  marked as Exhibit No. 25, and if you don't mind
11  keeping Exhibit 24 either out or where you can grab
12  it just in case it's needed.
13          (Exhibit 25 was marked for identification.)
14      BY MS. CARLISLE:
15      Q. I've handed you Exhibit 25.
16          And I realize you have testified earlier
17  that you weren't the person primarily responsible
18  for reviewing these, but would you agree with me
19  that this appears to be another monthly statement
20  from Bernard L. Madoff for the Keller trust accounts
21  for the month of January of 1999?
22      A. Well, it looks like part of it and it looks
23  like we put in a million-eight.
24      Q. So you would agree with me that this
25  appears to show on January 4th you deposited a

## Page 62

1  million eight and this appears to match up with the
2  bank records we just looked at?
3      A.  Yes.
4      Q.  Okay.  Okay.  And stepping back, you
5  mentioned that it looks like it's a part of it.
6         Why do you believe it's only a part of the
7  statement?
8      A.  I don't know.  It looks very thin.  I think
9  the statements I've seen from time to time were
10  thicker than this, but maybe they weren't.  I don't
11  remember really.
12     Q.  No, that's okay.
13        Is it possible that you might have received
14  more than one document at the same time from Madoff?
15     A.  I have no idea.
16     Q.  Okay.
17     A.  I'm just going back in memory of what they
18  looked like, but this might have been it.  I don't
19  remember really.
20     Q.  Okay.  I'm going hand you now --
21     A.  Put this away?
22        MS. CARLISLE:  You can put that away, yes.
23        Just from here on out I'm going to be just
24  going through documents that are like one to two
25  pages and one or two will be referencing each other

## Page 63

1  like we just did --
2         THE WITNESS:  Okay.
3         MS. CARLISLE:  -- but other than that you
4  won't need to hold on to anything.
5         So I'm going to hand you what's been marked
6  as Exhibit No. 27.
7         (Exhibit 27 was marked for identification.)
8  BY MS. CARLISLE:
9      Q.  And do you recognize Exhibit No. 27?
10     A.  Obviously, looking at it, it's my signature
11  and I asked for money to be withdrawn, so I guess I
12  recognize it.
13     Q.  Okay.
14     A.  I don't recall doing it, it's a long time
15  ago, but yes.
16     Q.  Certainly.
17     A.  I recognize it.
18     Q.  I'm saying that so you do confirm that's
19  your signature?
20     A.  Yes.
21     Q.  Okay.  And then I understand you may not --
22  I certainly understand this was 13 years ago, 13 and
23  a half years ago, but at the time in 2004 was this
24  the format of the letters you might have sent?
25     A.  Yes.

## Page 64

1      Q.  Okay.  And do you recall whether or not you
2  would have typed this up or would somebody else have
3  typed it and you would just have signed it?
4      A.  I would just have signed it.
5      Q.  You would just have signed.
6         Would it have been Mr. Levine typing it up
7  or might it have been somebody else?
8      A.  I would assume it was him.
9      Q.  Okay.
10     A.  Fairly simple.
11     Q.  Okay.  And you would agree that this letter
12  is requesting a $240,000 withdrawal from your
13  account?
14     A.  Yes.
15        MS. CARLISLE:  Okay.  Now I'm going to show
16  you -- I'm going to hand you, excuse me, what's been
17  marked as Exhibit 28.
18        (Exhibit 28 was marked for identification.)
19  BY MS. CARLISLE:
20     Q.  And if you don't mind keeping Exhibit 27
21  out for just one moment --
22     A.  Sure.
23     Q.  -- because we'll compare them.
24        Would you agree with me that the letter in
25  Exhibit 28 appears to be the same letter in

## Page 65

1  Exhibit No. 27?
2      A.  Uh-huh.
3      Q.  Okay.  And in looking at Exhibit No. 28
4  there appears to be some additional handwriting on
5  it.
6      A.  Yeah.
7      Q.  Do you recognize that handwriting?
8      A.  Yes.
9      Q.  And can you tell me whose that is?
10     A.  This is a woman who had been working for
11  us.  If Irwin wasn't in the office, I would send it
12  to her.  She would give it to Irwin.
13     Q.  Okay.  Do you remember her name?
14     A.  Marianne (phonetic).
15     Q.  And what was Marianne's role or title
16  within the company?
17     A.  She was one of the secretaries.
18     Q.  Okay.  The note at the bottom, it says
19  "This is," looks like, "whose" or "This is what I
20  sent to Madoff."
21     A.  "To Madoff," right.
22     Q.  There appears to be some initials above
23  that, starts with an M.  Do you recognize that?  Do
24  you know whose initials those might be?
25     A.  Up on top?

Page 66

1     Q.  On top of that bottom note.
2     A.  Yeah, it's "MAH."
3     Q.  Okay.  And who is --
4     A.  That's Marianne.
5     Q.  Oh, okay.  So that's how you know it was
6   Marianne?
7     A.  Yes.
8     Q.  So other than Marianne, was there someone
9   else in the office that might have assisted
10   Mr. Levine in handling --
11     A.  No.
12     MS. CARLISLE:  No.  Okay.
13   Now we're almost done with those.
14     (Discussion off the record.)
15     MS. CARLISLE:  I'm going to hand you what
16   has been marked as Exhibit No. 29.
17     (Exhibit 29 was marked for identification.)
18   BY MS. CARLISLE:
19     Q.  And, Mr. Keller, would you agree with me
20   that Exhibit No. 29 appears to be a check from
21   Bernard L. Madoff to you as trustee dated March 8,
22   2004, in the amount of $240,000?
23     A.  Yes.
24     Q.  And looking at the back of the check that's
25   on this page, can you confirm for me whether or not

Page 67

1   that is your signature?
2     A.  Yes.
3     Q.  And is that the endorsement for Keller
4   International Publishing?
5     A.  Yes.
6     Q.  Okay.  And would you agree with me looking
7   at these that this check in Exhibit No. 29 appears
8   to match up with the letters we just looked at in
9   Exhibits 27 and 28?
10     A.  Yes.
11     Q.  Okay.  And, generally speaking, when you
12   sent requests to BLMIS for withdrawals, did you ever
13   have an issue obtaining the monies requested?
14     A.  No.
15     Q.  So it's safe to say every time you received
16   a request you received the money?
17     A.  Yes, as far as I know.
18     Q.  What would have been steps you might have
19   taken if you hadn't received the money?
20     A.  I'd cry.  No.
21   Never thought about it really.
22     Q.  Okay.
23     A.  It was never a problem.
24     Q.  Never a problem, okay.
25   I'm now going to hand you --

Page 68

1     A.  As far as I recall.
2     Q.  Sure.  No, I understand that.
3     A.  Yeah.
4     MS. CARLISLE:  Okay.  I'm going to hand you
5   now what has been marked as Exhibit No. 30.
6     (Exhibit 30 was marked for identification.)
7   BY MS. CARLISLE:
8     Q.  And in comparing Exhibit No. 30 to
9   Exhibit No. 29, other than possibly it looks like
10   there's a couple different stamps on Exhibit No. 30,
11   do these appear to be photocopies of the same check?
12     A.  It's gotten bigger, but it's the same
13   check.
14     Q.  It's the same check.  Certainly, I
15   understand.
16   Okay.  Jennifer, I'm skipping Exhibit 31.
17     MS. ALLIM:  Okay.
18     MS. CARLISLE:  Mr. Keller, I'm going to
19   hand you what has been marked as Exhibit No. 32.
20     (Exhibit 32 was marked for identification.)
21   BY MS. CARLISLE:
22     Q.  Would you agree with me that Exhibit No. 32
23   appears to be a letter from you -- or a letter
24   signed by you to Bernard L. Madoff Investment
25   Securities requesting a withdrawal in the amount of

Page 69

1   $230,000?
2     A.  Yes.
3     Q.  And it's dated April 6, 2004?
4     A.  Yes.
5     MS. CARLISLE:  I'm going to hand you what
6   has been marked as Exhibit No. 33.
7     (Exhibit 33 was marked for identification.)
8   BY MS. CARLISLE:
9     Q.  And would you agree with me that
10   Exhibit No. 33 appears to be a check from -- a
11   photocopy of a check from Bernard Madoff to you as
12   trustee dated April 13, 2004, in the amount of
13   $230,000?
14     A.  Yup.
15   Yes.
16     Q.  I think "yup" she got, it's more the
17   "uh-huhs" and "huh-uhs" that are hard.  But thank
18   you, I appreciate that.
19   Looking at the back of the check, can you
20   confirm for me whether that is your signature in the
21   endorsement --
22     A.  Yes.
23     Q.  -- for Keller Publishing?
24     A.  Yeah.
25     Q.  Okay.  And comparing Exhibits 32 and 33,

Page 70

1 would you agree that Exhibit 33 appears to be the
2 check that corresponds to your request in 32?
3     A.  Yes.
4     MS. CARLISLE:  Okay.  I'm now going to hand
5 you what has been marked as Exhibit No. 34.
6     (Exhibit 34 was marked for identification.)
7 BY MS. CARLISLE:
8     Q.  And, Mr. Keller, in looking at
9 Exhibit No. 34, would you agree with me that
10 Exhibit 34 appears to be a photocopy of the same
11 check that we just looked at in Exhibit No. 33?
12     A.  Yes.
13     MS. CARLISLE:  Okay.  Thank you.
14     I'm now going to hand you what has been
15 marked as Exhibit No. 36.
16     (Exhibit 36 was marked for identification.)
17 BY MS. CARLISLE:
18     Q.  And, Mr. Keller, do you recognize
19 Exhibit No. 36?
20     A.  I recognize it, yes.  It's similar to the
21 other two with a different amount of money.
22     Q.  Okay.  And it's also -- this one has a
23 different letterhead; correct?
24     A.  I'm not really sure.
25     No, I guess it does.

Page 71

1     Q.  Okay.  The letterhead that's on Exhibit 36,
2 was that the letterhead used by Keller Publishing at
3 the time?
4     A.  Yes.
5     Q.  Would you agree with me that Exhibit 36
6 appears to be letter from you -- or signed by you to
7 Bernard L. Madoff Investment Securities on
8 June 22nd, 2004, requesting a withdrawal in the
9 amount of $200,000?
10     A.  Yes.
11     MS. CARLISLE:  Okay.  I'm now going to hand
12 you what has been marked as Exhibit No. 38.
13     (Exhibit 38 was marked for identification.)
14 BY MS. CARLISLE:
15     Q.  And would you agree with me that
16 Exhibit No. 38 appears to be a check from Bernard L.
17 Madoff to you as trustee dated -- it's hard to read,
18 but June 28th of 2004 in the amount of $200,000?
19     A.  Yes.
20     Q.  And looking at the back of the check can
21 you confirm whether or not that is your signature
22 and endorsement?
23     A.  It is.
24     Q.  Okay.  And would you agree with me that
25 this check in Exhibit 38 appears to correspond with

Page 72

1 your request in Exhibit No. 37?
2     I'm sorry, 36.
3     A.  36, yeah.
4     Q.  36, excuse me.
5     A.  That's okay.
6     Yeah.
7     MS. CARLISLE:  Yes?  Okay.
8     I'm going to hand you what has been marked
9 as Exhibit No. 40.
10     (Exhibit 40 was marked for identification.)
11 BY MS. CARLISLE:
12     Q.  And, Mr. Keller, do you recognize
13 Exhibit No. 40?
14     A.  Same as the other ones, yes.
15     Q.  Okay.  And this one doesn't have the
16 letterhead.  Do you know why certain ones did or did
17 not?
18     A.  No.  No reason for it, as far as I can
19 tell.
20     Q.  Okay.  And would you agree that Exhibit 40
21 appears to be a letter from -- signed by you to
22 Bernard L. Madoff Investment Securities dated
23 September 22nd of 2004 requesting a check in the
24 amount of $200,000?
25     A.  I agree.

Page 73

1     MS. CARLISLE:  Okay.  I'm going to hand you
2 now what has been marked as Exhibit No. 41.
3     (Exhibit 41 was marked for identification.)
4 BY MS. CARLISLE:
5     Q.  And, Mr. Keller, would you agree with me
6 that Exhibit No. 41 appears to be a check from
7 Bernard L. Madoff to you dated September 24th, 2004,
8 in the amount of $200,000?
9     A.  I agree.
10     Q.  Can you confirm for me whether or not
11 that's your signature and endorsement information on
12 the back of the check?
13     A.  It is.
14     Q.  And looking at Exhibit No. 41 does it
15 appear to correspond with your request in No. 40?
16     A.  Yes.
17     MS. CARLISLE:  Okay.  Now going to hand you
18 what has been marked as Exhibit No. 42.
19     (Exhibit 42 was marked for identification.)
20 BY MS. CARLISLE:
21     Q.  Mr. Keller, in comparing Exhibit No. 42 and
22 41, again, other than possibly some stamps, do these
23 appear to be photocopies of the same checks?
24     A.  Yes.
25     MS. CARLISLE:  Okay.  Thank you.

Page 74

1       (Discussion off the record.)
2       MS. CARLISLE: I'm going to hand you what
3   has been marked as Exhibit No. 44.
4       (Exhibit 44 was marked for identification.)
5   BY MS. CARLISLE:
6       Q.  Mr. Keller, similar to the other letters
7   we've looked at, do you recognize this letter?
8       A.  Yes, I do.
9       Q.  Okay.  And would you agree that this
10  appears to be a letter dated January 3rd, 2005,
11  signed by you to Bernard L. Madoff Investment
12  Securities requesting a withdrawal in the amount of
13  $300,000?
14      A.  It does, yes.
15      Q.  Okay.  And just looking at the top of this,
16  I haven't asked this on any other others, but do you
17  recognize that fax number as being --
18      A.  Yes.
19      Q.  Is that one by Keller Publishing or --
20      A.  That's mine.
21      Q.  That's your personal?
22      A.  Yeah.
23      MS. CARLISLE: Okay.  I'm now going to hand
24  you what has been marked as Exhibit No. 45.
25      (Exhibit 45 was marked for identification.)

Page 75

1   BY MS. CARLISLE:
2       Q.  Mr. Keller, would you agree with me that
3   Exhibit No. 45 appears to be a copy of a check from
4   Bernard Madoff to you as trustee dated
5   December 27th, 2004, in the amount of $300,000?
6       A.  I agree.
7       Q.  Okay.  And looking at the back of the
8   check, can you confirm whether or not that's your
9   signature and endorsement information?
10      A.  It is.
11      Q.  And in comparing the check in Exhibit 45 to
12  your request in Exhibit 44, do those appear to
13  correspond to one another?
14      A.  They do.
15      MS. CARLISLE: Okay.  I'm going to now hand
16  you what has been marked as Exhibit No. 46.
17      (Exhibit 46 was marked for identification.)
18  BY MS. CARLISLE:
19      Q.  For the record, you were just marking,
20  checking things off on Exhibit No. 13, correct --
21      A.  Yeah.
22      Q.  -- as we've gone through them?
23      A.  Uh-huh.
24      MS. CARLISLE: So he's not changing the
25  substance though, but I appreciate that.

Page 76

1       Q.  I've handed you what has been marked as
2   Exhibit No. 46.  And, Mr. Keller, in comparing
3   Exhibit 46 with Exhibit No. 47, would you agree
4   with me that these both appear to be photocopies of
5   the same --
6       A.  I'm looking at Exhibit 45.
7       Q.  I'm sorry, 45.  You're right, 45 and 46.
8       A.  Yeah.
9       Q.  Would you agree with me --
10      A.  Yeah.
11      Q.  -- those appear to be copies of the same
12  check?
13      A.  Yeah.
14      MS. CARLISLE: Okay.  I'm going to hand you
15  what has been marked as Exhibit No. 48.
16      (Exhibit 48 was marked for identification.)
17  BY MS. CARLISLE:
18      Q.  And, Mr. Keller, would you agree with me
19  that this appears to be a check signed by you dated
20  March 31st of 2005 to Bernard L. Madoff Investment
21  Securities requesting a withdrawal in the amount of
22  $275,000?
23      A.  Yeah.
24      MS. CARLISLE: Okay.  And, Jennifer, I'm
25  going to go out of order real quick, but I'm going

Page 77

1   to get to both of the next two exhibits.
2       MS. ALLIM: Okay.
3       MS. CARLISLE: I'm going to hand you what
4   has been marked as Exhibit No. 50.
5       (Exhibit 50 was marked for identification.)
6   BY MS. CARLISLE:
7       Q.  Okay.  Mr. Keller, would you agree that
8   Exhibit 50 appears to be a photocopy of the check
9   from Bernard L. Madoff to you dated April 1st of
10  2005 in the amount of $275,000?
11      A.  Yeah, I agree.
12      Q.  And comparing Exhibit 50 to the letter in
13  Exhibit 48, would you agree that that check appears
14  to correspond with your request?
15      A.  It does.
16      Q.  Okay.  And turning to the second page of
17  Exhibit No. 50, can you confirm for me whether or
18  not that is your signature and endorsement
19  information?
20      A.  Yes.
21      MS. CARLISLE: Okay.  And then I'm now
22  going to hand you what's been marked as
23  Exhibit No. 49, and it's a dark copy which is why I
24  took these out of order.
25      (Exhibit 49 was marked for identification.)

Picard v Keller

Keller 9/13/2017

Page 78

1    THE WITNESS: Uh-huh.
2    BY MS. CARLISLE:
3    Q. But in comparing Exhibit Nos. 49 and 50,
4    would you agree with me that they appear to be
5    photocopies of the same check?
6    A. Yes, they are.
7    Q. They are.
8    A. They appear to be, yeah.
9    MS. CARLISLE: Okay. Thank you.
10    I'm going to hand you what has been
11    marked --
12    THE WITNESS: Can I just rest for one
13    second, tell my wife I'm still alive?
14    MS. CARLISLE: I'm sorry, yes.
15    THE VIDEOGRAPHER: We're off the record at
16    11:51 a.m.
17    (Luncheon recess.)
18    THE VIDEOGRAPHER: We're back on the record
19    at 12:27 p.m. and it is the beginning of Media
20    No. 2.
21    MS. CARLISLE: Okay. Mr. Keller, I'm going
22    to hand you what has been marked as Exhibit No. 52.
23    (Exhibit 52 was marked for identification.)
24    BY MS. CARLISLE:
25    Q. And would you agree this appears to be a

Page 79

1    letter signed by you dated March 10th, 2005, to
2    Bernard L. Madoff Investment Securities requesting a
3    withdrawal in the amount of $250,000?
4    A. Yes.
5    Q. And can you confirm for me that is your
6    signature at the bottom?
7    A. Yes.
8    Q. Okay. Thank you.
9    A. Excuse me, one sec. Do I need to keep this
10    thing here?
11    Q. You don't necessarily, no, sir.
12    A. Okay.
13    MS. CARLISLE: As thick as it was, we only
14    had the one question.
15    I'm going to hand you what has been marked
16    as Exhibit No. 53.
17    (Exhibit 53 was marked for identification.)
18    BY MS. CARLISLE:
19    Q. Mr. Keller, would you agree with me
20    Exhibit 53 appears to be a check from Bernard L.
21    Madoff to you dated May 11th, 2005, in the amount of
22    $250,000?
23    A. Yes.
24    Q. And can you confirm for me whether or not
25    that's your signature and endorsement on the back of

Page 80

1    the check?
2    A. Yes.
3    Q. Yes, it is?
4    A. Yes.
5    Q. Okay. And then comparing Exhibit 53 to
6    Exhibit 52, would you agree with me that the check
7    in Exhibit 53 appears to correspond with your
8    request in Exhibit No. 52?
9    A. Yes, it does.
10    MS. CARLISLE: Okay. Now going to hand you
11    what has been marked as Exhibit 54.
12    (Exhibit 54 was marked for identification.)
13    BY MS. CARLISLE:
14    Q. And, Mr. Keller, comparing Exhibit No. 54
15    to Exhibit No. 53, would you agree that these both
16    appear to be photocopies of the same check?
17    A. Yes.
18    MS. CARLISLE: Okay. Thank you.
19    I'm going to hand you what has been marked
20    as Exhibit 56.
21    (Exhibit 56 was marked for identification.)
22    BY MS. CARLISLE:
23    Q. Mr. Keller, would you agree with me that
24    Exhibit 56 appears to be a letter signed by you
25    dated June 24th, 2005, to Bernard L. Madoff

Page 81

1    Investment Securities requesting a withdrawal in the
2    amount of $200,000?
3    A. Yes.
4    MS. CARLISLE: Okay. I'm going to hand you
5    what has been marked as Exhibit No. 57.
6    (Exhibit 57 was marked for identification.)
7    BY MS. CARLISLE:
8    Q. And, Mr. Keller, would you agree with me
9    that Exhibit No. 57 appears to be a copy of a check
10    from Bernard Madoff to you dated June 28th, 2005, in
11    the amount of $200,000?
12    A. Yes.
13    Q. In looking at the back of the check, can
14    you confirm for me whether or not that is your
15    signature and endorsement?
16    A. I can.
17    Q. Thank you.
18    And would you agree with me that the check
19    in Exhibit No. 57 appears to correspond with the
20    request that we just looked at in Exhibit No. 56?
21    A. Yes.
22    MS. CARLISLE: I'm now handing you what has
23    been marked as Exhibit No. 58.
24    (Exhibit 58 was marked for identification.)
25    ///

Page 82

1   BY MS. CARLISLE:
2      Q.  And comparing Exhibit No. 58 with
3   Exhibit No. 57, would you agree with me that these
4   appear to be photocopies of the same check?
5      A.  Yes.
6      MS. CARLISLE:  Okay.  Thank you.
7   I'm going to hand you what has been marked
8   as Exhibit No. 60.
9      (Exhibit 60 was marked for identification.)
10  BY MS. CARLISLE:
11     Q.  Mr. Keller, would you agree with me that
12  Exhibit No. 60 appears to be a letter signed by you
13  to Bernard L. Madoff Investment Securities, LLC,
14  dated October 6th, 2005, requesting a withdrawal in
15  the amount of $125,000?
16     A.  Yes.
17     MS. CARLISLE:  Okay.  I'm going to hand you
18  what has been marked as Exhibit No. 61.
19     (Exhibit 61 was marked for identification.)
20  BY MS. CARLISLE:
21     Q.  Mr. Keller, would you agree with me that
22  Exhibit No. 61 appears to be a check from Bernard L.
23  Madoff dated October 11th, 2005, to you in the
24  amount of $125,000?
25     A.  Yes.

Page 83

1      Q.  Can you confirm for me whether or not that
2   is your signature and endorsement on the back of the
3   check?
4      A.  Yes.
5      Q.  Okay.  And comparing Exhibit No. 61 with
6   Exhibit No. 60 that we just looked at, would you
7   agree with me that Exhibit No. 61, the check,
8   appears to correspond with your request in
9   Exhibit No. 60?
10     A.  Yes, it does.
11     MS. CARLISLE:  Okay.  Thank you.
12  I'm going to hand you now what has been
13  marked as Exhibit No. 62.
14     (Exhibit 62 was marked for identification.)
15  BY MS. CARLISLE:
16     Q.  And, Mr. Keller, comparing Exhibit Nos. 62
17  and 61, would you agree with me these appear to be
18  photocopies of the same check?
19     A.  Yes, they are.
20     MS. CARLISLE:  Thank you.
21  I'm going to hand you now what has been
22  marked as Exhibit No. 64.
23     (Exhibit 64 was marked for identification.)
24  BY MS. CARLISLE:
25     Q.  Mr. Keller, would you agree that this

Page 84

1   appears to be a letter signed by you dated
2   January 30th of 2006 to Bernard L. Madoff Investment
3   Securities requesting a withdrawal in the amount of
4   $200,000?
5      A.  Yes.
6      MS. CARLISLE:  Okay.  Now going to hand
7   you, excuse me, what has been marked as
8   Exhibit No. 65.
9      (Exhibit 65 was marked for identification.)
10  BY MS. CARLISLE:
11     Q.  And, Mr. Keller, would you agree with me
12  that Exhibit No. 65 appears to be a check, a copy of
13  a check, from Bernard Madoff to you dated
14  February 3rd of 2006 in the amount of $200,000?
15     A.  Yes.
16     Q.  And can you confirm for me whether or not
17  that is your signature and endorsement on the back?
18     A.  Yes.
19     Q.  Okay.  And would you agree with me that the
20  check we're looking at in Exhibit No. 65 appears to
21  correspond with the request you made in Exhibit
22  No. 64?
23     A.  Yes, I do.
24     MS. CARLISLE:  I'm going to hand you what
25  has been marked as Exhibit No. 66.

Page 85

1      (Exhibit 66 was marked for identification.)
2   BY MS. CARLISLE:
3      Q.  And, Mr. Keller, would you agree with me
4   that Exhibit No. 66 appears to be a photocopy of the
5   same check we just looked at in Exhibit No. 65?
6      A.  Yes.
7      MS. CARLISLE:  Okay.  I'm going to hand you
8   now what has been marked as Exhibit No. 68.
9      (Exhibit 68 was marked for identification.)
10  BY MS. CARLISLE:
11     Q.  And, Mr. Keller, Exhibit No. 68 appears to
12  be a letter signed by you dated March 31st, 2006, to
13  Bernard L. Madoff Investment Securities; is that
14  correct?
15     A.  Correct.
16     Q.  This letter is requesting a withdrawal in
17  the amount of $200,000?
18     A.  Yes.
19     MS. CARLISLE:  Okay.  I'm going to hand you
20  now what has been marked Exhibit No. 69.
21     (Exhibit 69 was marked for identification.)
22  BY MS. CARLISLE:
23     Q.  And, Mr. Keller, would you agree with me
24  that Exhibit No. 69 appears to be a check from
25  Bernard L. Madoff to you dated March 3rd, 2006, in

Page 86

1  the amount of $200,000?
2      A.  Yes.
3      Q.  Can you confirm for me whether or not that
4  is your signature and endorsement on the back of the
5  check?
6      A.  It is.
7      Q.  Okay.  And in looking at the check in
8  Exhibit 69, would you agree with me that this check
9  appears to correspond with the request we just
10  looked at in Exhibit No. 68?
11      A.  Yes, it does.
12          MS. CARLISLE:  Okay.  Thank you.
13      I'm going to hand you now what has been
14  marked as Exhibit No. 70.
15          (Exhibit 70 was marked for identification.)
16  BY MS. CARLISLE:
17      Q.  And, Mr. Keller, would you agree with me
18  that Exhibit No. 70 and Exhibit No. 69 both appear
19  to be photocopies of the same check?
20      A.  Yes, they are.
21          MS. CARLISLE:  Okay.  Thank you.
22      I'm going to hand you what has been marked
23  as Exhibit No. 72.
24          (Exhibit 72 was marked for identification.)
25  ///

Page 87

1  BY MS. CARLISLE:
2      Q.  Mr. Keller, would you agree that Exhibit 72
3  appears to be a letter signed by you dated May 31st
4  of 2006 to Bernard L. Madoff Investment Securities
5  requesting a withdrawal in the amount of $100,000?
6      A.  I agree.
7      Q.  Okay.  And looking at the top of this one,
8  just because it looks like it's a little -- it's a
9  different fax -- I don't know what you call those,
10  fax stamp?
11      A.  Uh-huh.
12      Q.  Do you recognize that as being your fax
13  number?
14      A.  Yes.
15          MS. CARLISLE:  Okay.  Thank you.
16      I'm going to hand you now what has been
17  marked as Exhibit 73.
18          (Exhibit 73 was marked for identification.)
19  BY MS. CARLISLE:
20      Q.  And, Mr. Keller, would you agree with me
21  that Exhibit No. 73 appears to be a photocopy of a
22  check from Bernard Madoff to you and the date is
23  difficult to read, but it looks like it may be
24  June 1st of 2006 and the check's in the amount of
25  $100,000?

Page 88

1      A.  Yes.
2      Q.  Okay.  And can you confirm for me whether
3  or not the signature and endorsement on the back of
4  the check is your signature?
5      A.  Yes.
6      Q.  Okay.  And in comparing Exhibits No. 73 and
7  72, does it appear that the check in 73 corresponds
8  with your request in Exhibit 72?
9      A.  Yes it does.
10          MS. CARLISLE:  I'm going to hand you what
11  has been marked Exhibit No. 74.
12          (Exhibit 74 was marked for identification.)
13  BY MS. CARLISLE:
14      Q.  And, Mr. Keller, would you agree with me
15  that Exhibit 74 and Exhibit 73 both appear to be
16  photocopies of the same check?
17      A.  Yes.
18          MS. CARLISLE:  Okay.  Jennifer, I'm
19  skipping over a few.
20          MS. ALLIM:  Okay.
21          THE WITNESS:  Good.
22          MS. CARLISLE:  I know.  It's the little
23  things.
24      I'm going to hand you now what has been
25  marked as Exhibit No. 78.

Page 89

1          (Exhibit 78 was marked for identification.)
2  BY MS. CARLISLE:
3      Q.  And, Mr. Keller, would you agree with me
4  that Exhibit No. 78 appears to be a letter signed by
5  you dated September 15th of 2006 to Bernard L.
6  Madoff Investment Securities requesting a withdrawal
7  in the amount of 150,000?
8      A.  I agree.
9          MS. CARLISLE:  Okay.  Now going to hand you
10  what has been marked as Exhibit No. 79.
11          (Exhibit 79 was marked for identification.)
12  BY MS. CARLISLE:
13      Q.  And, Mr. Keller, would you agree with me
14  that Exhibit 79 appears to be a photocopy of a check
15  from Bernard Madoff to you dated September 20th,
16  2006, in the amount of $150,000?
17      A.  Yes, I agree.
18      Q.  Can you confirm for me whether or not that
19  is your signature and endorsement information on the
20  back of the check?
21      A.  Yes, it is.
22      Q.  Okay.  Looking at Exhibit No. 79, would you
23  agree this check appears to correspond with your
24  request in Exhibit 78?
25      A.  Yes, it does.

Picard v Keller

Keller 9/13/2017

Page 90

1    MS. CARLISLE:  Thank you.
2    And Exhibit No. 80.
3    (Exhibit 80 was marked for identification.)
4  BY MS. CARLISLE:
5    Q.  Mr. Keller, in comparing Exhibit Nos. 79
6  and 80 would you agree with me that they both appear
7  to be copies of the same check?
8    A.  Yes.
9    MS. CARLISLE:  Okay.  Thank you.
10    (Exhibit 82 was marked for identification.)
11  BY MS. CARLISLE:
12    Q.  Mr. Keller, I'm going to hand you what has
13  been marked as Exhibit 82 and just ask:  Do you
14  recall ever seeing documents like this?
15    A.  No, not really.
16    Q.
17    If I said this was a quarterly report sent
18  out by BLMIS, do you recall ever seeing those?
19    A.  Not really.
20    Q.  Okay.  That would be something
21  Mr. Levine --
22    A.  -- Levine would see.
23    Q.  -- would see, okay.
24    A.  Right.
25    MS. CARLISLE:  I'm going to now hand you

Page 91

1  what has been marked as Exhibit No. 83.
2    (Exhibit 83 was marked for identification.)
3  BY MS. CARLISLE:
4    Q.  Mr. Keller, would you agree with me
5  Exhibit 83 appears to be a letter signed by you
6  dated February 12th, 2007, to Bernard L. Madoff
7  Investment Securities requesting a withdrawal in the
8  amount of $200,000?
9    A.  I agree.
10    Q.  And can you confirm that is your signature?
11    A.  It is.
12    MS. CARLISLE:  I think by now I know it,
13  but just double-checking.
14    I'm going to hand you what has been marked
15  as Exhibit No. 84.
16    (Exhibit 84 was marked for identification.)
17  BY MS. CARLISLE:
18    Q.  And, Mr. Keller, would you agree with me
19  that Exhibit 84 appears to be a photocopy of a check
20  from Bernard Madoff to you dated February 14th of
21  2007 in the amount of $200,000?
22    A.  It was a Valentine's Day gift.
23    Q.  Was it?  Who was the lucky Valentine?
24    A.  Me.
25    Q.  Okay.  But you would agree that's what this

Page 92

1  appears to be?
2    A.  Yes.
3    Q.  Okay.  And can you confirm for me whether
4  or not that is your endorsement and signature?
5    A.  Yes, it is.
6    Q.  Thank you.
7    In comparing Exhibit No. 84 to Exhibit 85,
8  would you agree that this check appears to
9  correspond with the request?
10    A.  I don't have 85.
11    Q.  I'm sorry, 84 and 83.
12    A.  Yes.  There you go.
13    MS. CARLISLE:  Okay.  Thank you.
14    Now you'll have 85.  I was ahead of myself.
15    (Exhibit 85 was marked for identification.)
16  BY MS. CARLISLE:
17    Q.  Would you agree with me that Exhibit 85
18  appears to be a copy of the same check we looked at
19  in Exhibit No. --
20    A.  I agree.
21    MS. CARLISLE:  -- 84?  Okay.
22    I'm going to hand you what has been marked
23  as Exhibit No. 87.
24    (Exhibit 87 was marked for identification.)
25  ///

Page 93

1  BY MS. CARLISLE:
2    Q.  Would you agree with me that Exhibit No. 87
3  appears to be a letter from -- signed by you dated
4  April 5th, 2007, to Bernard L. Madoff Investment
5  Securities requesting a withdrawal in the amount of
6  $300,000?
7    A.  I agree.
8    MS. CARLISLE:  Okay.  I'm going to hand you
9  what's been marked as Exhibit 88.
10    (Exhibit 88 was marked for identification.)
11  BY MS. CARLISLE:
12    Q.  Would you agree with me that Exhibit 88
13  appears to be a copy of a check from Bernard L.
14  Madoff to you dated April 10th, 2007, in the amount
15  of $300,000?
16    A.  I agree.
17    Q.  And can you confirm whether or not that's
18  your signature and endorsement on the back of the
19  check?
20    A.  I confirm.
21    Q.  Thank you.
22    And comparing Exhibit 88 to the request in
23  Exhibit 87, would you agree that the check in 88
24  appears to correspond to that request?
25    A.  It does.

Page 94

1    Q.   Okay.
2    A.   Now give me the big one.
3    Q.   Pardon?
4    A.   Give me the large one.
5    Q.   No, there's no more large ones.  They're
6    all --
7    A.   No, I mean the blown-up version of this
8    check.
9    Q.   Oh, yes.  I'm sorry.  No, no, no.  Yes.
10        See, I thought you meant a large exhibit.
11   A.   No.
12        MS. CARLISLE:  Okay.  I've handed you what
13   has been marked as Exhibit 89.
14        (Exhibit 89 was marked for identification.)
15   BY MS. CARLISLE:
16   Q.   And comparing Exhibit 89 to Exhibit No. 88,
17   can you confirm these are copies of the same check?
18   A.   I confirm.
19   Q.   Thank you.
20   A.   There's a lot more?
21   Q.   Yes, sir.
22   A.   Jesus.
23        MS. CARLISLE:  I know.
24        We're moving through them quickly though,
25   so hopefully that makes up a little bit for you.

Page 95

1        I'm handing you what has been marked as
2    Exhibit No. 91.
3        (Exhibit 91 was marked for identification.)
4    BY MS. CARLISLE:
5    Q.   Would you agree with me that Exhibit No. 91
6    appears to be a letter signed by you dated June 1st,
7    2007, to Bernard L. Madoff Investment Securities
8    requesting a withdrawal of $125,000?
9    A.   I agree.
10        MS. CARLISLE:  I'm going to hand you what
11   has been marked as Exhibit No. 92.
12        (Exhibit 92 was marked for identification.)
13   BY MS. CARLISLE:
14   Q.   Would you agree with me Exhibit No. 92 is a
15   photocopy of a check from Bernard L. Madoff to you
16   dated June 6th, 2007, in the amount of $125,000?
17   A.   I agree.
18   Q.   Okay.  And can you confirm for me whether
19   or not that's your signature and endorsement?
20   A.   I confirm.
21   Q.   Thanks.
22        And would you agree with me that the check
23   in Exhibit No. 92 appears to correspond with the
24   letter we looked at in Exhibit 91?
25   A.   I agree.  I confirm.

Page 96

1        MS. CARLISLE:  Thank you.
2        Handing you now what has been marked as
3    Exhibit 93.
4        (Exhibit 93 was marked for identification.)
5    BY MS. CARLISLE:
6    Q.   And would you agree with me that
7    Exhibit No. 93 appears to be a copy of the same
8    check as Exhibit No. 92?
9    A.   I agree.
10        MS. CARLISLE:  Now I'm going to hand you
11   something a little different.  This is
12   Exhibit No. 94.
13        (Exhibit 94 was marked for identification.)
14   BY MS. CARLISLE:
15   Q.   And do you recognize this exhibit or this
16   document?
17   A.   No, not really.
18   Q.   Okay.  Would you agree that this appears to
19   be a copy of the monthly account statement for
20   Keller International Publishing for June of 2007?
21   A.   It looks like that, but -- okay.
22   Q.   During this time period did you manage the
23   bank account for Keller International Publishing?
24   A.   No.
25   Q.   No.

Page 97

1        So would you have received a copy of
2    this --
3    A.   No.
4    Q.   -- account statement?
5        No.
6        I believe you described this earlier, but
7    I'm not sure you answered this specific question,
8    but were you the individual who would physically
9    take the BLMIS checks and bring them to the bank or
10   did you simply sign them and hand them over to be
11   deposited?
12   A.   I signed them and someone else took them.
13   Q.   So you're not personally familiar with
14   whether or not they were deposited one check at a
15   time or maybe they took in three or four checks at
16   once?
17   A.   I have no idea.
18   Q.   You have no idea.  Okay.
19        In looking at this deposit slip -- or, I'm
20   sorry, not this deposit slip, this account
21   statement --
22   A.   Uh-huh.
23   Q.   -- if you look on page 2 the first entry on
24   June 7th shows a deposit in the amount of
25   $138,671.35.

Page 98

1    A.  Uh-huh.
2    Q.  Do you see that?
3    A.  I see it.
4    Q.  Do you know whether or not that deposit was
5  of multiple checks that might have included the
6  check we just looked at for $125,000 or do you know
7  if that was the practice?
8    A.  It looks to me like it would be more than
9  one check for those different amounts, so it looks
10 like it's more than one check.
11   Q.  If that's what this was, but do you know
12 whether or not --
13   A.  I do not know.  It looks like it's more
14 than one check, but I do not know.
15   Q.  Okay.  All right.
16   Do you know who within Keller International
17 Publishing would have been the person to make the
18 deposits on behalf of the company?
19   A.  No.
20   Q.  No.  Okay.
21   Would it have been Mr. Levine?
22   A.  It would have probably been Mr. Levine.
23   MS. CARLISLE:  Okay.  Okay.  I'm going to
24 hand you now what has been marked as Exhibit No. 96.
25   (Exhibit 96 was marked for identification.)

Page 99

1  BY MS. CARLISLE:
2    Q.  Mr. Keller, in looking at Exhibit No. 96 --
3  I'm sorry.
4    Would you agree with me that Exhibit No. 96
5  appears to be a letter from you to Bernard L. Madoff
6  Investment Securities on July 2nd, 2007, requesting
7  a withdrawal in the amount of $125,000?
8    A.  Yes.
9    MS. CARLISLE:  Now going to hand you what
10 has been marked as Exhibit No. 97.
11   (Exhibit 97 was marked for identification.)
12 BY MS. CARLISLE:
13   Q.  And, Mr. Keller, would you agree with me
14 that Exhibit No. 97 is a photocopy of a check from
15 Bernard L. Madoff to you dated July 25th, 2007, in
16 the amount of $125,000?
17   A.  Yes.
18   Q.  Okay.  And would you agree with me that the
19 check in Exhibit No. 97 appears to correspond with
20 the request in Exhibit No. 96?
21   A.  It appears, but the time difference
22 seems -- July 2nd to July 25 seems like a long time,
23 but --
24   Q.  Do you recall anything at all about --
25   A.  No.

Page 100

1    Q.  -- that check --
2    A.  No.
3    Q.  -- and any delays at all?
4    A.  No.
5    MS. CARLISLE:  No.
6    Okay.  Then I'm now going to hand you what
7  has been marked Exhibit No. 98.
8    (Exhibit 98 was marked for identification.)
9  BY MS. CARLISLE:
10   Q.  And in comparing the checks in
11 Exhibit Nos. 98 and 97, would you agree those appear
12 to be copies of the same check?
13   A.  Yes.
14   Q.  Okay.  And just stepping back a minute,
15 when we were looking a minute ago at the Keller
16 International Publishing bank statements --
17   A.  Yes.
18   Q.  -- would Mr. Levine be the individual to
19 ask any questions I might have about those?
20   I mean to the best of your knowledge.  I
21 understand you may not know what he does or doesn't
22 know.
23   A.  Yes, I would guess so.
24   Q.  Okay.  Okay.  Is there anyone else within
25 the company that might have reviewed those records

Page 101

1  or know any more?
2    A.  No.
3    MS. CARLISLE:  Now going to hand you what
4  has been marked as Exhibit No. 101.
5    (Exhibit 101 was marked for identification.)
6  BY MS. CARLISLE:
7    Q.  And, Mr. Keller, would you agree with me
8  that Exhibit 101 is a letter signed by you to
9  Bernard L. Madoff Investment Securities dated August
10 20th of 2007 and it's requesting a withdrawal in the
11 amount of $100,000?
12   A.  Yes.
13   MS. CARLISLE:  Okay.  And I'm going to hand
14 you what has been marked as Exhibit No. 102.
15   (Exhibit 102 was marked for identification.)
16 BY MS. CARLISLE:
17   Q.  And, Mr. Keller, would you agree with me
18 that Exhibit 102 appears to be a photocopy of a
19 check from Bernard L. Madoff to you dated
20 August 21st, 2007, in the amount of $100,000?
21   A.  Yes, I agree.
22   Q.  And in looking at Exhibit No. 102, can you
23 confirm whether or not that's your signature and
24 your endorsement?
25   A.  Yes, it is.

Page 102

1    Q.  Okay.  And would you agree me that the
2  check we just looked at in Exhibit No. 102 appears
3  to correspond with the request we looked at in
4  Exhibit No. 101?
5    A.  Yes, it does.
6    MS. CARLISLE:  I'm going to hand you what
7  has been marked as Exhibit No. 103.
8    (Exhibit 103 was marked for identification.)
9  BY MS. CARLISLE:
10    Q.  And, Mr. Keller, would you agree with me
11  that Exhibit No. 103 appears to be a photocopy of
12  the same check that we looked at in Exhibit No. 102?
13    A.  I agree.
14    MS. CARLISLE:  Thank you.
15    I'm going to hand you now what has been
16  marked as Exhibit No. 106.
17    (Exhibit 106 was marked for identification.)
18  BY MS. CARLISLE:
19    Q.  Mr. Keller, would you agree with me that
20  Exhibit No. 106 is a letter from -- signed by you to
21  Bernard L. Madoff Investment Securities dated
22  August 29th, 2007, requesting a withdrawal in the
23  amount of $100,000?
24    A.  I agree.
25    MS. CARLISLE:  Okay.  Going to hand you now

Page 103

1  what has been marked as Exhibit No. 107.
2    (Exhibit 107 was marked for identification.)
3  BY MS. CARLISLE:
4    Q.  And, Mr. Keller, would you agree with me
5  that Exhibit No. 107 appears to be a copy of a check
6  from Bernard Madoff to Gerald Keller dated
7  August 31, 2007, in the amount of $100,000?
8    A.  Agreed.
9    Q.  Can you confirm for me whether or not that
10  is your endorsement and signature on the back of the
11  check?
12    A.  I confirm.
13    Q.  Thank you.
14    And comparing Exhibit No. 107 -- or looking
15  at Exhibit 107, would you agree that appears to
16  correspond with the request we looked at in
17  Exhibit No. 106?
18    A.  Yes, I agree.
19    MS. CARLISLE:  Okay.  Now going to hand you
20  what has been marked as Exhibit No. 108.
21    (Exhibit 108 was marked for identification.)
22  BY MS. CARLISLE:
23    Q.  And, Mr. Keller, comparing No. 108 to
24  Exhibit 107, would you agree that these both appear
25  to be a photocopy of the same check?

Page 104

1    A.  I agree.
2    MS. CARLISLE:  Thank you.
3    Mr. Keller, I'm going to hand you what has
4  been marked Exhibit No. 110.
5    (Exhibit 110 was marked for identification.)
6  BY MS. CARLISLE:
7    Q.  In looking at Exhibit No. 110, would you
8  agree with me that Exhibit 110 appears to be a
9  letter from you dated November 26, 2007, to Bernard
10  L. Madoff Investment Securities requesting a
11  withdrawal in the amount of $100,000?
12    A.  I agree.
13    MS. CARLISLE:  Okay.  Going to hand you
14  what has been marked as Exhibit 111.
15    (Exhibit 111 was marked for identification.)
16  BY MS. CARLISLE:
17    Q.  Would you agree with me that Exhibit 111
18  appears to be a copy of a check from Bernard L.
19  Madoff to you dated November 30th of 2007 in the
20  amount of $100,000?
21    A.  I agree.
22    Q.  And can you confirm for me whether or not
23  that's your endorsement and signature on the back of
24  the check?
25    A.  I confirm.

Page 105

1    Q.  Thank you.
2    And in comparing Exhibits Nos. 111 and 110,
3  would you agree that it appears the check in 111
4  conforms with your request in Exhibit 110?
5    A.  I agree.
6    MS. CARLISLE:  Thank you.
7    I'm going to hand you what has been marked
8  as Exhibit No. 112.
9    (Exhibit 112 was marked for identification.)
10  BY MS. CARLISLE:
11    Q.  Mr. Keller, in comparing Exhibits 112 and
12  111, would you agree with me those both appear to be
13  photocopies of the same check?
14    A.  I agree.
15    MS. CARLISLE:  Okay.  Thank you.
16    Just so you know, I've got two more.
17    THE WITNESS:  When she runs out of those
18  two, I'll use the john again.
19    MS. CARLISLE:  Okay.  That's fine with me.
20    I'm going to hand you now what has been
21  marked as Exhibit No. 114.
22    (Exhibit 114 was marked for identification.)
23  BY MS. CARLISLE:
24    Q.  Mr. Keller, would you agree with me
25  Exhibit No. 114 is a letter from you dated

Picard v Keller

## Page 106

1  December 27 of 2007 to Bernard L. Madoff Investment
2  Securities requesting a withdrawal in the amount of
3  $200,000.
4      A.  I agree.
5      MS. CARLISLE:  Okay.  And I'm going to hand
6  you what has been marked as Exhibit No. 115.
7      (Exhibit 115 was marked for identification.)
8  BY MS. CARLISLE:
9      Q.  Mr. Keller, would you agree with me that
10  Exhibit No. 115 is a photocopy of a check from
11  Bernard L. Madoff to you dated December 28, 2007, in
12  the amount of $200,000?
13      A.  I agree.
14      Q.  And looking at the back of the check, can
15  you confirm whether or not that is your endorsement
16  and signature?
17      A.  I confirm.
18      Q.  Thank you.
19      And in comparing Exhibit 114 and 115 would
20  you agree it appears the check in Exhibit 115
21  appears to correspond with your request in
22  Exhibit 114?
23      A.  I agree.
24      MS. CARLISLE:  Okay.  Then let's go off the
25  record.

## Page 107

1      THE VIDEOGRAPHER:  We're off the record at
2  12:59 p.m.
3      (Recess taken.)
4      THE VIDEOGRAPHER:  We're back on the record
5  at 1:12 p.m.
6      MS. CARLISLE:  Okay.  Mr. Keller, I'm going
7  to hand you what has been marked as Exhibit 116.
8      (Exhibit 116 was marked for identification.)
9  BY MS. CARLISLE:
10      Q.  And in comparing Exhibit 115 and 116, would
11  you agree with me that those both appear to be
12  photocopies of the same check?
13      A.  Yes.
14      MS. CARLISLE:  Okay.  I'm now going to hand
15  you what has been marked as Exhibit No. 119.
16      (Exhibit 119 was marked for identification.)
17  BY MS. CARLISLE:
18      Q.  Okay.  Mr. Keller, would you agree with me
19  that Exhibit 119 is a letter from you dated
20  February 19th, 2008, to Bernard L. Madoff Investment
21  Securities requesting a withdrawal in the amount of
22  $100,000?
23      A.  I agree.
24      MS. CARLISLE:  Thank you.
25  I'm going to hand you what has been marked

## Page 108

1  as Exhibit No. 120.
2      (Exhibit 120 was marked for identification.)
3  BY MS. CARLISLE:
4      Q.  And, Mr. Keller, would you agree with me
5  that Exhibit 120 is a photocopy of a check from
6  Bernard L. Madoff to you dated February 21st, 2008,
7  in the amount of $100,000?
8      A.  I agree.
9      Q.  And can you confirm for me whether or not
10  that is your signature and your endorsement on the
11  back of the check?
12      A.  It is.
13      MS. CARLISLE:  Thank you.
14      I'm now going to hand you what has been
15  marked as Exhibit No. 121.
16      (Exhibit 121 was marked for identification.)
17  BY MS. CARLISLE:
18      Q.  And, Mr. Keller, would you agree with me
19  that Exhibits No. 120 and 121 both appear to be
20  photocopies of the same check?
21      A.  Yes, they appear to be.
22      MS. CARLISLE:  Thank you.
23      I'm going to hand you what has been marked
24  as Exhibit No. 124.
25      (Exhibit 124 was marked for identification.)

## Page 109

1  BY MS. CARLISLE:
2      Q.  Mr. Keller, would you agree with me
3  Exhibit 124 appears to be a letter from you dated
4  March 24th, 2008, to Bernard L. Madoff Investment
5  Securities requesting a withdrawal in the amount of
6  $125,000?
7      A.  I agree.
8      Q.  Okay.  And can you confirm whether or not
9  that's your signature at the bottom?
10      A.  It is.
11      MS. CARLISLE:  Thank you.
12      I'm going to hand you what has been marked
13  as Exhibit No. 125.
14      (Exhibit 125 was marked for identification.)
15  BY MS. CARLISLE:
16      Q.  Would you agree that Exhibit 125 appears to
17  be a photocopy of a check from Bernard Madoff to you
18  dated March 27th, 2008, in the amount of $125,000?
19      A.  I agree.
20      Q.  And can you confirm for me whether or not
21  that is your signature and endorsement on the back
22  of the check?
23      A.  I confirm.
24      Q.  Thank you.
25      And in looking at Exhibit No. 125, would

Picard v Keller                                              Keller 9/13/2017

Page 110

1  you agree with me that it appears to correspond with
2  the request in Exhibit No. 124?
3      A.  I agree.
4          MS. CARLISLE:  Thank you.
5          I'm going to hand you what has been marked
6  as Exhibit 126.
7          (Exhibit 126 was marked for identification.)
8  BY MS. CARLISLE:
9      Q.   And, Mr. Keller, in comparing Exhibits 125
10  and 126, would you agree that those appear to be
11  copies of the same check?
12      A.  I agree.
13          MS. CARLISLE:  Thank you.
14          I'm going to hand you now what has been
15  marked as Exhibit 130.
16          (Exhibit 130 was marked for identification.)
17  BY MS. CARLISLE:
18      Q.   And, Mr. Keller, would you agree with me
19  that Exhibit 130 is a letter from you to Bernard L.
20  Madoff Investment Securities dated May 12th, 2008,
21  requesting a withdrawal in the amount of $150,000?
22      A.  I agree.
23          MS. CARLISLE:  Okay.  I'm going to hand you
24  what has been marked as Exhibit 131.
25          (Exhibit 131 was marked for identification.)

Page 111

1  BY MS. CARLISLE:
2      Q.   And, Mr. Keller would you agree Exhibit 131
3  is a copy of a check from Bernard Madoff to you
4  dated May 16, 2008, in the amount of $150,000?
5      A.  I agree.
6      Q.   And can you confirm for me whether or not
7  that is your signature and endorsement on the back
8  of the check?
9      A.  I confirm.
10      Q.   Thank you.
11          And in looking at Exhibit 131, would you
12  agree that it appears to correspond with the request
13  in Exhibit No. 130?
14      A.  Yes.
15          MS. CARLISLE:  Thank you.
16          Mr. Keller, I'm going to hand you what has
17  been marked as Exhibit No. 132.
18          (Exhibit 132 was marked for identification.)
19  BY MS. CARLISLE:
20      Q.   Mr. Keller, would you agree with me that
21  the check you're looking at as Exhibit No. 132
22  appears to be a copy of the same check we looked at
23  in Exhibit No. 131?
24      A.  Yes, I agree.
25          MS. CARLISLE:  Thank you.

Page 112

1          Okay.  Mr. Keller, I'm going to hand you
2  what has been marked as Exhibit No. 135.
3          (Exhibit 135 was marked for identification.)
4  BY MS. CARLISLE:
5      Q.   Would you agree with me that
6  Exhibit No. 135 is a letter from you dated
7  June 25th, 2008, to Bernard L. Madoff Investment
8  Securities requesting a withdrawal in the amount of
9  $350,000?
10      A.  I agree.
11          MS. CARLISLE:  Okay.  I'm going to hand you
12  what has been marked as Exhibit No. 136.
13          (Exhibit 136 was marked for identification.)
14  BY MS. CARLISLE:
15      Q.   And, Mr. Keller, would you agree with me
16  that Exhibit No. 136 appears to be a copy of a check
17  from Bernard L. Madoff to you dated June 27th, 2008,
18  in the amount of $350,000?
19      A.  I agree.
20      Q.   And can you confirm for me whether or not
21  that is your signature and endorsement on the back
22  of the check?
23      A.  I confirm.
24      Q.   Thank you.
25          And would you agree that the check in

Page 113

1  Exhibit 136 appears to correspond with the request
2  in Exhibit No. 135?
3      A.  Yes, I agree.
4          MS. CARLISLE:  Thank you.
5          I'm going to hand you now what has been
6  marked as Exhibit No. 137.
7          (Exhibit 137 was marked for identification.)
8  BY MS. CARLISLE:
9      Q.   And, Mr. Keller, would you agree with me
10  that the check in Exhibit 137 appears to be a copy
11  of the same check we just looked at in
12  Exhibit No. 136?
13      A.  Yes.
14          MS. CARLISLE:  Thank you.
15          I'm going to hand you what has been marked
16  as Exhibit No. 140.
17          (Exhibit 140 was marked for identification.)
18  BY MS. CARLISLE:
19      Q.   Mr. Keller, would you agree that Exhibit
20  No. 140 is a letter from you dated August 27th,
21  2008, to Bernard L. Madoff Investment Securities
22  requesting a withdrawal in the amount of $150,000?
23      A.  I agree.
24          MS. CARLISLE:  Okay.  I'm going to hand you
25  now what has been marked as Exhibit No. 141.

Page 114

1  (Exhibit 141 was marked for identification.)
2  BY MS. CARLISLE:
3  Q.  Would you agree with me that
4  Exhibit No. 141 is a check from Bernard Madoff to
5  you dated September 2nd, 2008, in the amount of
6  $150,000?
7  A.  Yes, I agree.
8  Q.  And can you confirm that that's your
9  signature and endorsement on the back of the check?
10  A.  I confirm.
11  Q.  And would you agree that the check in
12  Exhibit 141 appears to correspond with the request
13  in Exhibit No. 140?
14  A.  Yes.
15  MS. CARLISLE:  Okay.  And I'm going to hand
16  you now what's been marked as Exhibit No. 142.
17  (Exhibit 142 was marked for identification.)
18  BY MS. CARLISLE:
19  Q.  And, Mr. Keller, in comparing
20  Exhibits No. 141 and 142, do you agree with me those
21  both appear to be copies of the same check?
22  A.  Yes, I do.
23  Q.  And as we've been going through this last
24  set of transfers, you've been marking on this --
25  A.  Yes, just keeping track.

Page 115

1  Q.  And when you say "keeping track," just for
2  purposes of the record what are you keeping track
3  of?
4  A.  Just as we go along to see how many are
5  left.
6  Q.  Oh, okay.  Just kind of like checking
7  things off so you know where we're going?
8  A.  Yes, so I knew where I was.
9  Q.  Certainly understand that.
10  A.  This is yours, by the way.  I thought I was
11  doing mine.
12  Q.  It is hers.  It is hers technically at the
13  end of the day.
14  A.  I know you were concerned about the dots.
15  I apologize.
16  Q.  That's okay.  That's fine.
17  But since you mentioned it, you mentioned
18  that you had a copy as well.  Other than any
19  information, like documents you received from
20  counsel that are privileged correspondence from
21  counsel, did you bring any other documents today
22  with you related to this case?
23  A.  No.
24  Q.  Okay.  And during the deposition when we've
25  been on the record have you referenced any documents

Page 116

1  other than the exhibits that we've been discussing?
2  A.  Just a confidential letter from her just
3  describing what today would be like.
4  Q.  And stepping back because I have some
5  concerns about that, when you say you referenced it,
6  did you actually reference it in developing your
7  answers today or did you just reference it during
8  breaks?
9  A.  Just during breaks, just to see -- just so
10  I knew what was going to happen or what was going
11  on.
12  Q.  Okay.  So nothing in that affected the
13  substance of your answers as far as --
14  A.  No.
15  Q.  Okay.  In the last couple hours maybe we've
16  been going through a bunch of checks and letters
17  that relate to the transfers that are in Exhibit B
18  to the Complaint.
19  A.  Uh-huh.
20  Q.  Before today since 2010 when the lawsuit
21  was filed, between 2010 and today, have you seen any
22  of those records?
23  A.  No.
24  Q.  So you did not review any of those in
25  developing answers to the discovery or the Complaint

Page 117

1  or anything like that?
2  A.  No.
3  Q.  No.  Okay.
4  A.  Not that I recall.
5  Q.  Okay.  And I know you'd mentioned that
6  Mr. Levine was the individual who handled all of the
7  documentation for the case and everything.
8  A.  Right.
9  Q.  At any time did Mr. Levine review the
10  discovery responses which were the interrogatories
11  and assist in helping you to either draft answers or
12  confirm the accuracy of those answers?
13  A.  No.  Basically he just sent the information
14  he had.
15  Q.  Okay.  And just to clarify, when you say
16  "information," was that in the form of just the
17  documents themselves?
18  A.  Yeah, the documents.
19  Q.  Did he send you any memos or any
20  descriptions?
21  A.  No.
22  MS. CARLISLE:  Okay.  I have no further
23  questions.  I pass the witness.
24  MS. ALLIM:  I don't have any questions for
25  you, Mr. Keller.  Thank you so much for your

Picard v Keller

Keller 9/13/2017

Page 118

1 patience and time today.
2     THE WITNESS: Are we all done?
3     MS. CARLISLE: We are off the record.
4     THE VIDEOGRAPHER: This concludes today's
5 deposition. We're off the record at 1:24 p.m.
6     THE REPORTER: Counsel, on the phone, do
7 you need a copy?
8     MS. ALLIM: No. We're not ordering a copy
9 at this time.
10     THE REPORTER: Thank you.
11     (The deposition was concluded at 1:24 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 119

1 Case:    Picard V Keller Trust
2 Deposition of: GERALD KELLER
3 Date taken:    September 13, 2017
4 PAGE LINE    WAS/CHANGE TO
5 _____ _____ _____
6 _____ _____ _____
7 _____ _____ _____
8 _____ _____ _____
9 _____ _____ _____
10 _____ _____ _____
11 _____ _____ _____
12 _____ _____ _____
13 _____ _____ _____
14 _____ _____ _____
15 _____ _____ _____
16 _____ _____ _____
17 _____ _____ _____
18 _____ _____ _____
19 _____ _____ _____
20 _____ _____ _____
21 _____ _____ _____
22 _____ _____ _____
23 _____ _____ _____
24 Date:_____
25 Signature:_____

Page 120

1     I hereby declare under penalty of perjury
2 under the laws of the State of California that I
3 have read the foregoing deposition and that the
4 testimony contained therein is a true and correct
5 transcript of my testimony given at said time and
6 place.
7     Dated this _____ day of _____,
8 2017, at _____, _____.
9
10
11         _____
12         Signature of Witness
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 121

1         CERTIFICATE
2         OF
3   CERTIFIED SHORTHAND REPORTER
4
5     I, Stephanie P. Borthwick, Certified
6 Shorthand Reporter of the State of California, do
7 hereby certify:
8     That the foregoing deposition was taken
9 before me at the time and place therein set forth,
10 at which time the witness was duly sworn by me;
11     That the testimony of the witness and all
12 objections made at the time of the examination were
13 recorded stenographically by me and thereafter
14 transcribed, said transcript being a true copy of my
15 shorthand notes thereof, and a true record of the
16 testimony given by the witness.
17     In witness whereof, I have subscribed my
18 name this date: September 17, 2017.
19
20
21
22     _____
23     STEPHANIE P. BORTHWICK, CSR
24     Certificate No. 12088
25

| A | Adversary | 112:5,10,15,19,25 | 6:1 |
|---|---|---|---|

**a.m**
2:4 8:3 52:6,9 78:16

**ability**
13:13 14:1 15:4

**able**
15:2

**absent**
11:21

**acceptable**
13:10

**account**
19:22,23 21:22 22:1,13
22:15 24:13,18 25:6
28:20 36:1 37:2,3
40:9,24 45:2,3,4,22
47:4,20 48:1,4,8 51:6
51:17 55:20 56:5
57:12 58:10 59:19,20
60:11,24 64:13 96:19
96:23 97:4,20

**accounts**
22:3 50:23 61:20

**accuracy**
31:10 117:12

**accurate**
31:5,7

**accurately**
13:18

**Actions**
10:11

**additional**
65:4

**address**
16:5 27:14 56:19,20,21
56:22

**addressed**
56:23

**adjustment**
32:8

**adjustments**
34:10

**Adv**
1:6,16

**Adversary**
8:12

**advised**
38:12

**affect**
33:11

**affirmative**
32:5,6 33:19 34:7 35:2
35:20

**age**
14:7

**ago**
15:15,20 17:17,23 18:9
18:23 20:16 40:23
43:7 61:5 63:15,22,23
100:15

**agree**
35:1,6 36:25 57:11
58:14 59:2,17 61:18
61:24 64:11,24 66:19
67:6 68:22 69:9 70:1
70:9 71:5,15,24 72:20
72:25 73:5,9 74:9
75:2,6 76:3,9,18 77:7
77:11,13 78:4,25
79:19 80:6,15,23 81:8
81:18 82:3,11,21 83:7
83:17,25 84:11,19
85:3,23 86:8,17 87:2
87:6,20 88:14 89:3,8
89:13,17,23 90:6 91:4
91:9,18,25 92:8,17,20
93:2,7,12,16,23 95:5
95:9,14,17,22,25 96:6
96:9,18 99:4,13,18
100:11 101:7,17,21
102:1,10,13,19,24
103:4,15,18,24 104:1
104:8,12,17,21 105:3
105:5,12,14,24 106:4
106:9,13,20,23
107:11,18,23 108:4,8
108:18 109:2,7,16,19
110:1,3,10,12,18,22
111:2,5,12,20,24

112:5,10,15,19,25
113:3,9,19,23 114:3,7
114:11,20

**Agreed**
57:18 103:8

**ahead**
49:3 92:14

**aid**
19:11

**al**
8:11

**alive**
78:13

**Allim**
2:15 8:21,21 9:18
12:10,21 14:18 22:6,9
23:25 26:11,14,18
29:4,6,10 30:6 34:20
34:23 36:7 41:22
45:13 49:15 55:8
68:17 77:2 88:20
117:24 118:8

**alter**
38:13

**AMF00058397**
7:7

**AMF00058398**
7:4

**AMF00058399**
7:1

**AMF00058400**
6:23

**AMF00058401**
6:20

**AMF00058402**
6:17

**AMF00058403**
6:14

**AMF00058404**
6:11

**AMF00058405**
6:8

**AMF00058406**
6:5

**AMF00058407**

6:1

**AMF00058408**
5:23

**AMF00058409**
5:20

**AMF00058410**
5:16

**AMF00058411**
5:13

**AMF00058412**
5:10

**AMF00058413**
5:7

**AMF00058414**
5:4

**AMF00058415**
5:1

**AMF00058416**
4:23

**AMF00058418**
4:20

**AMF00058419**
4:17

**AMF00058420**
4:14

**AMF00058421**
4:12

**AMF00058422**
4:9

**AMF00058423**
4:5

**amount**
23:15 57:21 58:21 59:1
60:18 66:22 68:25
69:12 70:21 71:9,18
72:24 73:8 74:12 75:5
76:21 77:10 79:3,21
81:2,11 82:15,24 84:3
84:14 85:17 86:1 87:5
87:24 89:7,16 91:8,21
93:5,14 95:16 97:24
99:7,16 101:11,20
102:23 103:7 104:11
104:20 106:2,12
107:21 108:7 109:5

109:18 110:21 111:4
112:8,18 113:22
114:5
**amounts**
98:9
**analyses**
54:18
**analysis**
54:20
**and/or**
32:8,12 43:21 51:16
**Andrews**
16:6
**answer**
3:14 13:21 15:2,2
30:21 32:4
**answered**
97:7
**answering**
34:19 42:16 45:9
**answers**
13:8,12 25:21 42:23
46:13 116:7,13,25
117:11,12
**anybody**
16:1
**anytime**
24:15
**apologize**
9:22 115:15
**appear**
68:11 73:15,23 75:12
76:4,11 78:4,8 80:16
82:4 83:17 86:18 88:7
88:15 90:6 100:11
103:24 105:12 107:11
108:19,21 110:10
114:21
**APPEARANCES**
2:7
**appears**
53:25 57:12 59:18,21
61:19,25 62:1 64:25
65:4,22 66:20 67:7
68:23 69:10 70:1,10

71:6,16,25 72:21 73:6
74:10 75:3 76:19 77:8
77:13 78:25 79:20
80:7,24 81:9,19 82:12
82:22 83:8 84:1,12,20
85:4,11,24 86:9 87:3
87:21 89:4,14,23 91:5
91:19 92:1,8,18 93:3
93:13,24 95:6,23 96:7
96:18 99:5,19,21
101:18 102:2,11
103:5,15 104:8,18
105:3 106:20,21
109:3,16 110:1
111:12,22 112:16
113:1,10 114:12
**appreciate**
59:16 69:18 75:25
**April**
38:7 69:3,12 77:9 93:4
93:14
**area**
16:12 53:17,18
**asked**
13:21 23:20 25:9,10
63:11 74:16
**asking**
12:25 20:4 31:14,20
35:5 40:3 42:12 46:14
**asks**
27:14 45:20,21 46:20
47:23
**aspects**
17:18 18:19
**asserted**
32:5
**assessment**
58:14
**assist**
117:11
**assisted**
66:9
**assisting**
27:15
**association**

8:4
**assume**
40:11 44:15 46:12 64:8
**attorney**
33:23
**attorneys**
2:9,15 8:15
**August**
101:9,20 102:22 103:7
113:20
**authorities**
32:13 36:16,20
**authority**
37:10
**authorized**
21:8
**available**
10:7 43:20,23,25 44:3
**Avenue**
2:16
**aware**
12:16 35:23 36:18

─────── **B** ───────

**B**
3:21 34:20,21 35:15
41:19 49:13 54:1 59:2
116:17
**back**
9:25 23:20 24:2 29:7
29:14,25 31:13 38:21
38:21 44:8 45:1,18,25
48:7 52:8,21 57:20
58:9 60:4,5,7 62:4,17
66:24 69:19 71:20
73:12 75:7 78:18
79:25 81:13 83:2
84:17 86:4 88:3 89:20
93:18 100:14 103:10
104:23 106:14 107:4
108:11 109:21 111:7
112:21 114:9 116:4
**background**
17:9 58:3
**bad**

41:16
**Baker**
2:9 8:19 38:5 44:17
**bank**
40:9 45:4 48:8 59:18
62:2 96:23 97:9
100:16
**banking**
51:3,4 60:24
**Bankruptcy**
1:1 8:11
**banks**
51:1
**Barbara**
1:17,19,19,21 8:10,23
19:6,25 21:5 27:11
30:21 49:23
**barred**
34:8
**based**
36:17 43:20
**basically**
39:24 43:25 117:13
**Bates**
11:9
**Becker**
38:23
**becoming**
17:10
**began**
24:13
**beginning**
10:1 78:19
**behalf**
2:1 8:20,22 18:2 19:5
20:25 21:9 23:13 25:7
27:6 39:6 46:2 50:14
51:15 57:24 60:20
98:18
**believe**
12:20 18:21 30:13
40:17 46:4 47:6 62:6
97:6
**Bendish**
8:4

**Bernard**
1:7,10,13,14 19:16
59:19 61:20 66:21
68:24 69:11 71:7,16
72:22 73:7 74:11 75:4
76:20 77:9 79:2,20
80:25 81:10 82:13,22
84:2,13 85:13,25 87:4
87:22 89:5,15 91:6,20
93:4,13 95:7,15 99:5
99:15 101:9,19
102:21 103:6 104:9
104:18 106:1,11
107:20 108:6 109:4
109:17 110:19 111:3
112:7,17 113:21
114:4
**Bernie**
20:14
**best**
13:13 15:4 50:17 54:17
100:20
**better**
16:23 26:21
**beverage**
18:8,19,19
**beyond**
20:10 54:21
**big**
42:8 94:2
**bigger**
68:12
**bills**
58:13
**bit**
94:25
**BLMIS**
19:15,16,18,23 20:9,15
21:11,19,22 22:3,24
24:22 25:8 32:12,16
33:1 37:2,5 47:4 48:5
50:22 51:16,19 52:23
56:1,3 57:9 58:10,17
67:12 90:18 97:9
**blown-up**

94:7
**Borthwick**
1:25 2:2 8:17 121:5,23
**bottler**
18:22
**bottom**
27:13 49:7 60:2 65:18
66:1 79:6 109:9
**bought**
57:23,24 58:13
**bound**
11:25
**break**
13:19,22 52:3
**breaks**
116:8,9
**brief**
12:12
**briefly**
44:8 47:13,25
**bring**
97:9 115:21
**bulk**
27:24,25
**bunch**
116:16
**business**
10:25 11:3 18:8,13,19
18:20 21:9

---

**C**

**C**
41:19
**C.S.R**
1:25
**California**
2:6 8:7 16:7 33:3,13,15
120:2 121:6
**call**
39:15,16 87:9
**CAPACITY**
1:18,20
**caption**
8:9
**Carlisle**

2:10 3:7 8:19,19 9:8,13
9:16,19 12:11 14:8,13
14:19 22:12 24:1 26:7
26:16,19 29:2,8,11
30:4,7 34:5,15,21,25
35:4,7 36:8 37:13,16
41:16,23,25 42:3 44:7
44:12 45:15 49:9,17
51:21,25 52:4,10,25
53:3 55:4,10 56:12,15
57:2,6 59:9,13 61:8
61:14 62:22 63:3,8
64:15,19 66:12,15,18
68:4,7,18,21 69:5,8
70:4,7,13,17 71:11,14
72:7,11 73:1,4,17,20
73:25 74:2,5,23 75:1
75:15,18,24 76:14,17
76:24 77:3,6,21 78:2
78:9,14,21,24 79:13
79:18 80:10,13,18,22
81:4,7,22 82:1,6,10
82:17,20 83:11,15,20
83:24 84:6,10,24 85:2
85:7,10,19,22 86:12
86:16,21 87:1,15,19
88:10,13,18,22 89:2,9
89:12 90:1,4,9,11,25
91:3,12,17 92:13,16
92:21 93:1,8,11 94:12
94:15,23 95:4,10,13
96:1,5,10,14 98:23
99:1,9,12 100:5,9
101:3,6,13,16 102:6,9
102:14,18,25 103:3
103:19,22 104:2,6,13
104:16 105:6,10,15
105:19,23 106:5,8,24
107:6,9,14,17,24
108:3,13,17,22 109:1
109:11,15 110:4,8,13
110:17,23 111:1,15
111:19,25 112:4,11
112:14 113:4,8,14,18
113:24 114:2,15,18

117:22 118:3
**case**
8:9 9:11 12:18 18:8
26:23 52:13 61:12
115:22 117:7 119:1
**caught**
22:12
**certain**
23:15 72:16
**certainly**
13:6 15:25 40:18 42:10
43:12 50:6 52:4 63:16
63:22 68:14 115:9
**Certificate**
121:1,24
**Certified**
2:3 121:3,5
**certify**
121:7
**Chaitman**
2:14 8:21 12:21 31:18
38:6,22 44:18,19
**chance**
20:22
**changing**
75:24
**chart**
28:15,16
**Chase**
59:19
**check**
24:15 48:17 57:21 58:7
66:20,24 67:7 68:11
68:13,14 69:10,11,19
70:2,11 71:16,20,25
72:23 73:6,12 75:3,8
75:11 76:12,19 77:8
77:13 78:5 79:20 80:1
80:6,16 81:9,13,18
82:4,22 83:3,7,18
84:12,13,20 85:5,24
86:5,7,8,19 87:22
88:4,7,16 89:14,20,23
90:7 91:19 92:8,18
93:13,19,23 94:8,17

95:15,22 96:8 97:14
98:6,9,10,14 99:14,19
100:1,12 101:19
102:2,12 103:5,11,25
104:18,24 105:3,13
106:10,14,20 107:12
108:5,11,20 109:17
109:22 110:11 111:3
111:8,21,22 112:16
112:22,25 113:10,11
114:4,9,11,21
**check's**
87:24
**checking**
54:21 75:20 115:6
**checks**
24:25 25:2 41:6,7,9
48:17,19 73:23 97:9
97:15 98:5 100:10
116:16
**Chicago**
33:9 53:19
**Chris**
27:15 28:1
**circumstances**
17:24 20:17
**CITI**
6:4
**claim**
3:13 27:5,7
**claims**
34:8 47:15
**clarification**
13:3 19:13 20:4
**clarify**
20:6 21:4 31:14 48:23
117:15
**clearly**
13:15
**clients**
38:12,16 56:3
**code**
53:17,18
**Cohn**
20:18

**come**
24:15
**commencing**
2:3
**commission**
17:25
**commonly**
38:7
**communicated**
10:8
**companies**
19:17
**company**
16:14 18:22 33:10
65:16 98:18 100:25
**compare**
64:23
**comparing**
68:8 69:25 73:21 75:11
76:2 77:12 78:3 80:5
80:14 82:2 83:5,16
88:6 90:5 92:7 93:22
94:16 100:10 103:14
103:23 105:2,11
106:19 107:10 110:9
114:19
**compelled**
35:21,24 36:15,19
37:10
**Complaint**
3:21 34:22 35:16
116:18,25
**complete**
54:14
**computers**
38:15
**conceal**
38:13
**concerned**
31:6 115:14
**concerns**
116:5
**concluded**
118:11
**concludes**

118:4
**conference**
11:17
**confidential**
10:6,14,18,21,23 11:7
11:10,13,20 12:6,7,17
12:20 116:2
**confirm**
27:10 31:4 49:3,6
63:18 66:25 69:20
71:21 73:10 75:8
77:17 79:5,24 81:14
83:1 84:16 86:3 88:2
89:18 91:10 92:3
93:17,20 94:17,18
95:18,20,25 101:23
103:9,12 104:22,25
106:15,17 108:9
109:8,20,23 111:6,9
112:20,23 114:8,10
117:12
**conforms**
105:4
**confusing**
39:14
**connection**
18:25 19:5
**consent**
11:22
**CONSOLIDATED**
1:13
**consultant**
16:10 17:10 47:14
**consulting**
16:13,16,20 47:13
**contained**
45:6 54:19 120:4
**contains**
27:15 32:5
**control**
38:17
**conversation**
19:11 31:15,16 39:11
**copies**
25:18 26:23 40:9 41:1

44:21 50:12 76:11
90:7 94:17 100:12
110:11 114:21
**copy**
9:14 11:24 75:3 77:23
81:9 84:12 92:18
93:13 96:7,19 97:1
103:5 104:18 111:3
111:22 112:16 113:10
115:18 118:7,8
121:14
**Core**
45:3
**CORPORATION**
1:4
**correct**
9:17,18 21:6,16,17
23:25 24:7 25:5 27:6
36:5 37:7 38:24,25
44:16 54:23 57:22
70:23 75:20 85:14,15
120:4
**correctly**
12:8
**correlate**
58:4
**correspond**
71:25 73:15 75:13
77:14 80:7 81:19 83:8
84:21 86:9 89:23 92:9
93:24 95:23 99:19
102:3 103:16 106:21
110:1 111:12 113:1
114:12
**correspondence**
24:22 25:11,13,18 40:3
115:20
**corresponds**
70:2 88:7
**counsel**
10:13,15 11:23 12:2
31:10 38:6,23 42:13
46:10 50:12,19
115:20,21 118:6
**countersign**

24:16
couple
55:5 68:10 116:15
course
22:9
court
1:1 8:11,17 9:22 11:18
  11:21 13:11 18:6,8
  29:21 30:18
cover
59:21
CPA
23:7
created
28:15
credit
34:9
cry
67:20
CSR
121:23
curious
56:7
current
16:4
currently
16:8
custody
38:17
Customer
27:7

**D**

dark
77:23
date
1:24 11:8 56:4 58:1,11
  87:22 119:3,24
  121:18
dated
38:6 43:3,5 44:17 50:8
  66:21 69:3,12 71:17
  72:22 73:7 74:10 75:4
  76:19 77:9 79:1,21
  80:25 81:10 82:14,23

84:1,13 85:12,25 87:3
  89:5,15 91:6,20 93:3
  93:14 95:6,16 99:15
  101:9,19 102:21
  103:6 104:9,19
  105:25 106:11 107:19
  108:6 109:3,18
  110:20 111:4 112:6
  112:17 113:20 114:5
  120:7
dates
42:25
daunting
42:1
day
29:21 91:22 115:13
  120:7
days
10:25 11:3 29:14
dealings
52:22
debited
56:4
Debtor
1:11
December
23:19 29:15 75:5 106:1
  106:11
deciding
21:12
decision
26:4
declare
120:1
deeming
56:2
defendant
1:8 20:3 49:23
Defendant's
3:20
Defendants
1:22 2:13 32:7,9 36:14
  36:15
Defendants'
3:17

defense
32:6 33:20 34:7,24
  35:2,20
defenses
30:21 32:5
define
19:12
delays
100:3
deponent
11:5
deposed
18:2
deposit
24:16 45:21 58:25
  60:18 97:19,20,24
  98:4
deposited
25:3 48:1,18 57:20
  61:25 97:11,14
deposition
1:24 2:1 3:3,11 8:5
  10:11 11:1,4,8,16
  12:2,18 15:7 17:22
  115:24 118:5,11
  119:2 120:3 121:8
deposits
41:11 46:3,16 51:5,17
  54:22 98:18
described
44:25 97:6
describing
116:3
description
60:19,22
descriptions
117:20
Desert
2:6 8:7
designate
12:4
designated
12:24 18:20
destroy
38:13

detailed
47:11
details
31:20
determining
31:10
developing
116:6,25
difference
99:21
different
32:17 46:17 59:6 68:10
  70:21,23 87:9 96:11
  98:9
difficult
58:2 87:23
digits
59:20
DiPascali
21:15
direction
16:24
directions
17:4
directly
24:20 48:5 56:10
director
22:18
disclose
10:17 11:7,19
disclosed
11:11
disclosure
3:19 11:12
discounts
17:8
discovered
47:16
discovery
15:21 116:25 117:10
discussed
42:13,14
discussing
16:22 17:3 22:2 116:1
Discussion

57:5 66:14 74:1
**discussions**
16:24 39:22 42:18
**disk**
45:3
**disks**
44:24 45:1,5,6
**dispute**
17:25
**District**
1:2 8:12
**dividends**
56:6
**Docs**
3:19
**document**
5:15 9:21 30:9,24 31:4
43:15 44:8 49:2 55:17
56:9 62:14 96:16
**documentation**
117:7
**documents**
12:17 15:8,12,12,14,19
22:14 23:11,13,21
24:10,12 25:7 31:9
33:20 39:2,7 40:7
42:16 43:22 44:22
45:3,4,6,9 46:5 49:25
50:5,13,18,22 51:13
55:20 56:9 57:8,8
62:24 90:14 115:19
115:21,25 117:17,18
**doing**
63:14 115:11
**dollars**
57:17 58:8,12,16
**dots**
115:14
**double-checking**
91:13
**doubt**
55:3
**draft**
117:11
**Drive**

2:6 8:7 16:6
**duly**
121:10
**duplicated**
50:2
**Dupont**
56:6

---
**E**
---
**E**
1:18,24 2:1 3:3
**earlier**
40:2 48:16 57:7 61:16
97:6
**effect**
12:16
**effort**
10:20
**eight**
62:1
**either**
25:10 31:18 40:9 42:21
42:24 45:5 61:11
117:11
**El**
2:5 8:7
**electronic**
38:13
**electronically**
38:14
**else's**
54:6
**employed**
16:9
**employment**
17:9
**endorsement**
67:3 69:21 71:22 73:11
75:9 77:18 79:25
81:15 83:2 84:17 86:4
88:3 89:19 92:4 93:18
95:19 101:24 103:10
104:23 106:15 108:10
109:21 111:7 112:21
114:9

**ends**
60:3
**ensure**
39:11 43:22 51:2
**entitled**
32:7
**entity**
10:9 19:21 47:24
**entry**
60:14 97:23
**equitable**
32:8
**ESQ**
2:10,15
**et**
8:11
**exactly**
18:9
**examination**
3:6 9:7 10:12 12:3
121:12
**exchange**
51:16
**excuse**
35:20 36:12 64:16 72:4
79:9 84:7
**exhibit**
3:10,11,13,14,15,17,18
3:20,21,21,23,24,25
4:1,2,3,4,5,6,7,8,9,10
4:11,12,13,14,15,16
4:17,18,19,20,21,22
4:23,24,25 5:1,2,3,4,5
5:6,7,8,9,10,11,12,13
5:14,15,16,17,18,19
5:20,21,22,23,24,25
6:1,2,3,4,5,6,7,8,9,10
6:11,12,13,14,15,16
6:17,18,19,20,21,22
6:23,24,25 7:1,2,3,4,5
7:6,7,8,9 9:9,12 14:11
14:12,14,21 15:3 26:8
26:9 27:3 29:3,5,13
29:18 30:9 32:2 34:12
34:13,18,20,21 35:15

35:19 36:17 37:14,15
37:17,25 38:1 41:18
42:2,5 44:10,11,13,16
45:18 47:22 49:11,16
49:19 51:22,23 52:12
53:1,2,4 55:5,7,17
56:13,14,16 57:3,4,11
59:2,10,11,17 61:10
61:11,13,15 63:6,7,9
64:17,18,20,25 65:1,3
66:16,17,20 67:7 68:5
68:6,8,9,10,16,19,20
68:22 69:6,7,10 70:1
70:5,6,9,10,11,15,16
70:19 71:1,5,12,13,16
71:25 72:1,9,10,13,20
73:2,3,6,14,18,19,21
74:3,4,24,25 75:3,11
75:12,16,17,20 76:2,3
76:3,6,15,16 77:4,5,8
77:12,13,17,23,25
78:3,22,23 79:16,17
79:20 80:5,6,7,8,11
80:12,14,15,20,21,24
81:5,6,9,19,20,23,24
82:2,3,8,9,12,18,19
82:22 83:5,6,7,9,13
83:14,16,22,23 84:8,9
84:12,20,21,25 85:1,4
85:5,8,9,11,20,21,24
86:8,10,14,15,18,18
86:23,24 87:2,17,18
87:21 88:8,11,12,15
88:15,25 89:1,4,10,11
89:14,22,24 90:2,3,5
90:10,13 91:1,2,5,15
91:16,19 92:7,7,15,17
92:19,23,24 93:2,9,10
93:12,22,23 94:10,13
94:14,16,16 95:2,3,5
95:11,12,14,23,24
96:3,4,7,8,12,13,15
98:24,25 99:2,4,10,11
99:14,19,20 100:7,8
100:11 101:4,5,8,14

101:15,18,22 102:2,4
102:7,8,11,12,16,17
102:20 103:1,2,5,14
103:15,17,20,21,24
104:4,5,7,8,14,15,17
105:4,8,9,21,22,25
106:6,7,10,19,20,22
107:7,8,10,15,16,19
108:1,2,5,15,16,24,25
109:3,13,14,16,25
110:2,6,7,15,16,19,24
110:25 111:2,11,13
111:17,18,21,23
112:2,3,6,12,13,16
113:1,2,6,7,10,12,16
113:17,19,25 114:1,4
114:12,13,16,17
116:17
**exhibits**
3:9 12:23 26:15 55:5
55:12 67:9 69:25 77:1
88:6 105:2,11 108:19
110:9 114:20 116:1
**expert**
18:7,18,20,20
**extent**
19:3 23:6
**extra**
26:23

---
**F**
---
**f**
10:2,10
**fact**
39:24
**failure**
34:9
**fairly**
42:23 64:10
**faith**
10:19
**familiar**
97:13
**Family**
1:18,19,21 3:12 8:10

8:23 19:6,25 30:22
49:23
**far**
24:11 31:6 33:3 36:24
60:4 67:17 68:1 72:18
116:13
**fat**
30:11 42:8 50:2
**father-in-law**
20:18
**fax**
53:7 74:17 87:9,10,12
**February**
84:14 91:6,20 107:20
108:6
**federal**
32:25 35:22 36:16
**feel**
26:21
**fictitious**
32:10
**figured**
59:16
**filed**
8:11 27:5 30:18 116:21
**files**
38:14
**filled**
30:11
**finances**
23:3
**financial**
22:18,21,23
**find**
24:4
**fine**
52:4 61:8 105:19
115:16
**finished**
31:6
**firm**
38:5
**first**
19:15 20:14 30:17
38:10 39:14,21 45:2

45:19,20 49:24 53:6
54:14 56:18 58:1,6,17
58:22,25 60:10,14
97:23
**following**
10:9
**food**
17:5
**foregoing**
120:3 121:8
**forget**
18:9 21:13
**form**
32:11 117:16
**format**
63:24
**forth**
121:9
**four**
10:24 97:15
**franchise**
18:21
**Frank**
21:15,17,25
**frankly**
43:10
**fraud**
19:1,5 47:15
**Friehling**
52:18,23
**front**
37:19,20
**full**
26:20
**full-time**
16:10
**funds**
47:25 48:5
**further**
53:24 117:22

---
**G**
---
**Garcia**
2:20 8:3
**gathering**

29:22,24
**general**
16:24 43:15,18
**generally**
67:11
**generated**
38:14
**Gerald**
1:17,18,19,20,24 2:1
3:3 8:10,13,22,23
19:6,25 30:21 49:23
60:20 103:6 119:2
**getting**
19:10 49:3
**gift**
91:22
**give**
9:2 12:12 23:14 65:12
94:2,4
**given**
10:7 19:4 61:5 120:5
121:16
**go**
9:25 10:2 13:16 17:4
29:3,7 44:8 55:5
76:25 92:12 106:24
115:4
**gobbledygook**
12:14
**God**
20:16
**going**
9:8,17,20,23,25 12:25
13:13 14:10 15:17
16:24 17:7 19:11,22
20:2,8 21:3 26:3,7,15
29:3,7,8 30:1 31:3
32:1 34:5,11 35:2,8
35:11,18 36:9 37:13
38:9 39:25 40:24
41:17,20,21 43:13
44:7,9 45:18 46:19
48:7 49:10,12,13,14
51:11,21 52:11,25
55:4 56:12 57:2 59:9

Picard v Keller                               Keller 9/13/2017

59:14,25 61:9 62:17
62:20,23,24 63:5
64:15,16 66:15 67:25
68:4,18 69:5 70:4,14
71:11 72:8 73:1,17
74:2,23 75:15 76:14
76:25,25 77:3,22
78:10,21 79:15 80:10
80:19 81:4 82:7,17
83:12,21 84:6,24 85:7
85:19 86:13,22 87:16
88:10,24 89:9 90:12
90:25 91:14 92:22
93:8 95:10 96:10
98:23 99:9 100:6
101:3,13 102:6,15,25
103:19 104:3,13
105:7,20 106:5 107:6
107:14,25 108:14,23
109:12 110:5,14,23
111:16 112:1,11
113:5,15,24 114:15
114:23 115:7 116:10
116:10,16
**good**
8:1 10:19 29:14 30:5
35:5 88:21
**Gotcha**
50:4
**gotten**
68:12
**government**
32:25
**governmental**
32:13
**governments**
32:25
**governs**
9:11
**grab**
61:11
**Great**
56:19
**grew**
17:16

**guess**
13:7 39:3,18 41:5,6
63:11 70:25 100:23
**guy**
51:24
**guy's**
21:13

---

**H**

**H**
1:12
**half**
63:23
**hand**
8:25 9:9 14:10 26:7
34:11 37:13 41:17
44:7,9 49:10 51:22
52:11,25 56:12 57:2
59:10 61:9 62:20 63:5
64:16 66:15 67:25
68:4,19 69:5 70:4,14
71:11 72:8 73:1,17
74:2,23 75:15 76:14
77:3,22 78:10,22
79:15 80:10,19 81:4
82:7,17 83:12,21 84:6
84:24 85:7,19 86:13
86:22 87:16 88:10,24
89:9 90:12,25 91:14
92:22 93:8 95:10
96:10 97:10 98:24
99:9 100:6 101:3,13
102:6,15,25 103:19
104:3,13 105:7,20
106:5 107:7,14,25
108:14,23 109:12
110:5,14,23 111:16
112:1,11 113:5,15,24
114:15
**handed**
30:8 55:16 61:15 76:1
94:12
**handing**
29:12 37:24 81:22 95:1
96:2

**handle**
23:3 46:16
**handled**
22:21 117:6
**handling**
47:3,20 66:10
**handwriting**
54:3 65:4,7
**handwritten**
53:25
**happen**
116:10
**happened**
39:12
**Happens**
14:8
**happy**
13:4 35:3
**hard**
69:17 71:17
**head**
13:15 53:20
**hear**
20:14
**heard**
22:11
**hearing**
55:11
**held**
8:5 48:2 59:19
**help**
34:18 43:1,6 49:25
50:9 53:22
**helped**
47:10
**helping**
117:11
**hold**
63:4
**home**
56:20
**hon**
22:10
**hopefully**
94:25

**Horowitz**
52:18,23
**Hostetler**
2:9 8:20 38:6 44:17
**hour**
2:3
**hours**
116:15
**Houston**
2:11
**huge**
26:12
**huh-uh**
13:14
**huh-uhs**
69:17

---

**I**

**idea**
23:18 62:15 97:17,18
**identification**
9:12 14:12 26:9 29:5
34:13 37:15 42:2
44:11 49:16 51:23
53:2 55:7 56:14 57:4
59:11 61:13 63:7
64:18 66:17 68:6,20
69:7 70:6,16 71:13
72:10 73:3,19 74:4,25
75:17 76:16 77:5,25
78:23 79:17 80:12,21
81:6,24 82:9,19 83:14
83:23 84:9 85:1,9,21
86:15,24 87:18 88:12
89:1,11 90:3,10 91:2
91:16 92:15,24 93:10
94:14 95:3,12 96:4,13
98:25 99:11 100:8
101:5,15 102:8,17
103:2,21 104:5,15
105:9,22 106:7 107:8
107:16 108:2,16,25
109:14 110:7,16,25
111:18 112:3,13
113:7,17 114:1,17

identify
8:16 45:21 46:3,14,21
  47:24 51:13
ii
11:4
iii
11:11
impact
14:4
impair
14:1
inches
59:15
include
11:5
included
44:19 98:5
income
32:16 33:1,2 37:6,9
incorrectly
38:11
INDEX
3:1
indicating
59:8
individual
19:21 97:8 100:18
  117:6
INDIVIDUALLY
1:18,20
informal
11:17
information
15:9 27:21 28:20,23
  31:4,11 32:11,22
  33:21 38:15 40:1
  43:20,21 46:25 47:11
  51:9 52:18 54:18
  60:23 73:11 75:9
  77:19 89:19 115:19
  117:13,16
Initial
3:19
initials
65:22,24

inquiries
25:11
instances
11:1
institutions
60:25
intend
12:18
intending
10:17
intends
11:6
intent
10:21
inter-account
34:9 35:9
inter-accounts
34:24
International
16:18,19 18:3 40:10
  48:2,3,18,24 51:4
  67:4 96:20,23 98:16
  100:16
internet
16:23
interrogatories
42:16,19 45:10 117:10
interrogatory
3:17 45:20 46:20 47:23
interviewed
18:25 19:4
invest
21:12
investing
21:19 24:13
investment
1:7,14 19:16,21 22:25
  28:21 68:24 71:7
  72:22 74:11 76:20
  79:2 81:1 82:13 84:2
  85:13 87:4 89:6 91:7
  93:4 95:7 99:6 101:9
  102:21 104:10 106:1
  107:20 109:4 110:20
  112:7 113:21

investor
1:3 20:19
involved
25:25 27:22 28:9 47:3
  47:12,18 54:14
IRA
36:1,6,7
IRS
32:11,12,15,16 34:3
Irvin
28:3,3
Irving
1:12 8:9,20
Irwin
22:16 24:19 28:1,2,4,5
  28:6,20,22 39:4,9,15
  46:4 47:10 51:7 65:11
  65:12
Irwin's
41:12
issue
40:24 67:13
issued
9:22
Italian
21:14
item
52:13
items
25:20
iv
11:23

―――――――――――――
                J
―――――――――――――
jallim@chaitmanllp....
2:17
January
59:21 60:8,9,17 61:3
  61:21,25 74:10 84:2
Jennifer
2:15 8:21 9:16 12:9
  13:5,20 14:17 15:9,15
  15:16,20 22:5 23:24
  24:5 26:10,16 29:2
  30:4 31:18,22 35:3,4

36:6 41:19 44:19
  45:12 49:12 55:4
  68:16 76:24 88:18
Jesus
94:22
job
40:11 41:12,14,14,16
john
105:18
JPMSAF0021471
4:7
JPMSAF0023163
4:10
JPMSAF0024422
4:13
JPMSAF0027252
4:15
JPMSAF0029877
4:18
JPMSAF0033283-84
4:21
JPMSAF0034729
4:24
JPMSAF0035553
5:2
JPMSAF0039403
5:5
JPMSAF0042904
5:8
JPMSAF0044578
5:11
JPMSAF0046395
5:14
JPMSAF0049072
5:17
JPMSAF0053993
5:21
JPMSAF0056061
5:24
JPMSAF0057127
6:2
JPMSAF0058955
6:6
JPMSAF0059365
6:9

JPMSAF0059549
6:12
JPMSAF0062166
6:15
JPMSAF0062875
6:18
JPMSAF0064853
6:21
JPMSAF0065413
6:24
JPMSAF0068215
7:5
JPMSAF0070050
7:8
JPMSAFOO67355
7:2
**July**
99:6,15,22,22
**June**
3:10 43:3,5 50:8 56:6
  71:8,18 80:25 81:10
  87:24 95:6,16 96:20
  97:24 112:7,17

**K**

**keep**
25:17 35:13 37:19,20
  39:25 40:17 41:1 79:9
**keeping**
61:11 64:20 114:25
  115:1,2
**Keller**
1:17,18,19,20,21,24
  2:1 3:3,11 8:10,14,22
  8:23 9:8,20 14:14
  16:8,18,19,21 17:12
  18:3 19:6,25 21:5
  22:19,24 24:16 26:21
  30:22 39:3,6 40:10
  42:4 48:2,3,18,22,24
  48:24 49:18,23 51:4
  52:11 58:10 60:20
  61:20 66:19 67:3
  68:18 69:23 70:8,18
  71:2 72:12 73:5,21

74:6,19 75:2 76:2,18
77:7 78:21 79:19
80:14,23 81:8 82:11
82:21 83:16,25 84:11
85:3,11,23 86:17 87:2
87:20 88:14 89:3,13
90:5,12 91:4,18 96:20
96:23 98:16 99:2,13
100:15 101:7,17
102:10,19 103:4,6,23
104:3 105:11,24
106:9 107:6,18 108:4
108:18 109:2 110:9
110:18 111:2,16,20
112:1,15 113:9,19
114:19 117:25 119:1
119:2
**Keller's**
27:11
**kept**
28:20,23 40:12,19,25
**kind**
16:20 17:1,18 56:2
  58:2 115:6
**knew**
115:8 116:10
**knock**
59:14
**know**
10:5 12:13,21 13:3,8,8
  13:9,20 14:8 18:11,18
  19:3,14 20:5,13 21:2
  23:6,17 24:3,9,11
  26:19 28:15,19,24
  30:13 32:18,20 33:3
  34:1 35:10,25 36:24
  37:12 38:4,10 39:14
  39:17 40:8,12,16,21
  41:19,25 42:22 43:1
  45:24 46:9,11 48:9,13
  48:14 51:8 52:17,20
  52:24 53:12,14,20,21
  54:5 55:1,2 56:1,2
  58:9,18,21 62:8 65:24
  66:5 67:17 72:16 87:9

88:22 91:12 94:23
98:4,6,11,13,14,16
100:21,22 101:1
105:16 115:7,14
117:5
**knowledge**
46:21 50:17 54:17
  100:20

**L**

**L**
1:7,10,13,14 2:10
  19:16 59:19 61:20
  66:21 68:24 71:7,16
  72:22 73:7 74:11
  76:20 77:9 79:2,20
  80:25 82:13,22 84:2
  85:13,25 87:4 89:5
  91:6 93:4,13 95:7,15
  99:5,15 101:9,19
  102:21 104:10,18
  106:1,11 107:20
  108:6 109:4 110:19
  112:7,17 113:21
**label**
55:24
**large**
15:14,19,24 50:2 94:4
  94:5,10
**law**
2:9,15 35:24 38:5
**laws**
35:22 120:2
**lawsuit**
30:22 116:20
**left**
16:15 115:5
**legal**
12:13 40:16
**legally**
35:21 36:15,19
**let's**
106:24
**letter**
3:15,18 38:5,8 39:1,10

39:20,22 44:17,20,21
44:25 64:11,24,25
68:23,23 71:6 72:21
74:7,10 77:12 79:1
80:24 82:12 84:1
85:12,16 87:3 89:4
91:5 93:3 95:6,24
99:5 101:8 102:20
104:9 105:25 107:19
109:3 110:19 112:6
113:20 116:2
**letterhead**
70:23 71:1,2 72:16
**letters**
40:3 53:25 63:24 67:8
74:6 116:16
**Levine**
22:16,17 23:6,12,20
  24:9,14,20,23 25:4,17
  25:19,22,23 32:21
  33:21 39:5,6,9,11,23
  40:8 42:19 46:22
  48:14 50:18,21 53:9
  53:14 54:17,18 56:10
  56:24 57:7 64:6 66:10
  90:21,22 98:21,22
  100:18 117:6,9
**Levine's**
54:6
**liable**
36:14
**life**
24:13 25:6 28:19 55:20
**limit**
40:16
**LINE**
119:4
**LIQUIDATION**
1:13
**list**
14:23 46:22
**listed**
15:3
**listening**
22:7

**litigation**
2:5 3:10 8:6 9:10
**little**
10:1 30:19 52:3 87:8
88:22 94:25 96:11
**LLC**
1:7,14 82:13
**LLP**
2:9,14 8:22 44:18
**local**
32:13
**located**
8:6
**long**
13:23 17:23 18:9,23
23:17 40:12 61:5
63:14 99:22
**longer**
40:20
**look**
26:17 30:5,17 31:2
35:9 42:24 43:8,22
44:24 49:21 53:21
57:25 58:2 60:10 61:4
97:23
**looked**
15:15,16 43:23 55:21
62:2,18 67:8 70:11
74:7 81:20 83:6 85:5
86:10 92:18 95:24
98:6 102:2,3,12
103:16 111:22 113:11
**looking**
26:13,20 27:10,13
28:11 29:14 32:6
36:10,17 53:24 56:18
58:1,24 60:1,8,9,18
60:22 63:10 65:3
66:24 67:6 69:19 70:8
71:20 73:14 74:15
75:7 76:6 81:13 84:20
86:7 87:7 89:22 97:19
99:2 100:15 101:22
103:14 104:7 106:14
109:25 111:11,21

**looks**
30:10 42:1 56:5 57:23
58:11,15,23 61:22,22
62:5,8 65:19 68:9
87:8,23 96:21 98:8,9
98:13
**lot**
12:13 24:4 43:8,10
94:20
**lucky**
91:23
**Luis**
2:20 8:3
**Luncheon**
78:17

─────────────
**M**

**M**
60:2 65:23
**ma'am**
34:21
**MADC0726_0000002**
3:22
**Madoff**
1:7,10,13,14 19:1,5,16
19:19,20,20 20:15,23
21:1 32:12 37:3 40:24
51:16,18 59:19 61:20
62:14 65:20,21 66:21
68:24 69:11 71:7,17
72:22 73:7 74:11 75:4
76:20 77:9 79:2,21
80:25 81:10 82:13,23
84:2,13 85:13,25 87:4
87:22 89:6,15 91:6,20
93:4,14 95:7,15 99:5
99:15 101:9,19
102:21 103:6 104:10
104:19 106:1,11
107:20 108:6 109:4
109:17 110:20 111:3
112:7,17 113:21
114:4
**MADWAA00156010...**
5:3

**MADWAA00161898...**
4:22
**MADWAA00170021...**
5:6
**MADWAA00175548...**
4:25
**MADWAA00200252...**
5:22
**MADWAA00209692...**
5:18
**MADWAA00223841...**
4:8
**MADWAA00228959...**
4:11
**MADWAA00267346...**
5:25
**MADWAA00273163...**
6:7
**MADWAA00276022...**
6:13
**MADWAA00277086...**
6:3
**MADWAA00280388...**
6:10
**MADWAA00286036...**
7:6
**MADWAA00287972...**
6:22
**MADWAA00290921...**
6:19
**MADWAA00291518...**
6:16
**MADWAA00293507...**
7:3
**MADWAA00297230...**
6:25
**MADWAA00301959...**
7:9
**MADWAA00334221...**
4:19
**MADWAA00351749...**
4:16
**MADWAA00363309...**
5:9
**MADWAA00374149...**

5:12
**MADWAA00384184...**
4:3
**MAH**
66:2
**mailing**
55:24
**main**
2:10 33:12
**maintain**
41:10
**maintained**
28:24 39:8 40:9 50:14
**maintaining**
39:23
**major**
17:16
**making**
12:15 22:8 26:4 61:2
**manage**
96:22
**March**
57:13,20 66:21 76:20
79:1 85:12,25 109:4
109:18
**Marianne**
65:14 66:4,6,8
**Marianne's**
65:15
**Marie**
2:10 8:19 34:20
**mark**
41:21
**marked**
9:9,12 12:17 14:11,12
14:21 26:8,9 29:5,13
29:18,20 30:8 34:12
34:13 37:14,15,24
41:18 42:2 44:9,11
49:11,16 51:22,23
52:12 53:1,2 55:7,16
56:13,14 57:3,4 59:10
59:11 61:10,13 63:5,7
64:17,18 66:16,17
68:5,6,19,20 69:6,7

70:5,6,15,16 71:12,13
72:8,10 73:2,3,18,19
74:3,4,24,25 75:16,17
76:1,15,16 77:4,5,22
77:25 78:11,22,23
79:15,17 80:11,12,19
80:21 81:5,6,23,24
82:7,9,18,19 83:13,14
83:22,23 84:7,9,25
85:1,8,9,20,21 86:14
86:15,22,24 87:17,18
88:11,12,25 89:1,10
89:11 90:3,10,13 91:1
91:2,14,16 92:15,22
92:24 93:9,10 94:13
94:14 95:1,3,11,12
96:2,4,13 98:24,25
99:10,11 100:7,8
101:4,5,14,15 102:7,8
102:16,17 103:1,2,20
103:21 104:4,5,14,15
105:7,9,21,22 106:6,7
107:7,8,15,16,25
108:2,15,16,23,25
109:12,14 110:5,7,15
110:16,24,25 111:17
111:18 112:2,3,12,13
113:6,7,15,17,25
114:1,16,17
**marking**
75:19 114:24
**Marvin**
20:18
**match**
59:8 62:1 67:8
**material**
10:6,15,18,22,24 11:7
11:10,13,20 12:6
**materials**
21:18
**matter**
9:3 38:18
**mcarlisle@bakerlaw...**
2:12
**mean**

18:18 22:24 25:9 48:24
53:21 94:7 100:20
**meant**
94:10
**media**
38:15 78:19
**medications**
14:1
**meet**
20:22 21:1
**memory**
14:4 36:18 43:2,6
49:25 50:9 62:17
**memos**
117:19
**mentioned**
15:19 41:7 42:11 48:1
48:16 54:8 57:7 62:5
115:17,17 117:5
**met**
16:2
**million**
57:17,22 58:7,8,12,16
60:18 61:3 62:1
**million-eight**
61:23
**mind**
52:3 61:10 64:20
**mine**
74:20 115:11
**minor**
17:17 47:11
**minute**
31:2 40:23 100:14,15
**Mirage**
16:6
**misstate**
10:4
**moment**
64:21
**money**
20:8 25:14 36:20 41:14
51:13 58:13,17 59:1
63:11 67:16,19 70:21
**monies**

67:13
**month**
57:13 61:21
**monthly**
40:6 54:9 57:9,12
59:18 61:19 96:19
**months**
43:7
**morning**
8:1
**move**
33:14,17 37:22
**moved**
33:13
**moving**
94:24
**multiple**
98:5
**MWPTAP00531412-...**
3:13

---

## N

**name**
8:3,13 11:5 21:13,14
27:14,15 39:15 65:13
121:18
**nature**
23:13 25:12
**Neal**
53:10
**necessarily**
24:3 56:2 79:11
**Neck**
56:19
**need**
13:19,21 20:4 31:2
63:4 79:9 118:7
**needed**
26:24 35:10 61:12
**never**
67:21,23,24
**New**
1:2 2:16,16 8:12 33:3
33:12
**nice**

18:12 59:12
**Nine**
60:7
**Nos**
78:3 83:16 90:5 100:11
105:2
**note**
53:7 65:18 66:1
**notes**
121:15
**notice**
3:11 10:20 11:2,4
**Noticing**
10:18 11:6,15,18
**notify**
11:14 12:22
**November**
44:18 104:9,19
**number**
17:16 43:7 59:20 74:17
87:13
**numbers**
9:22 28:13 60:1,24

---

## O

**Objection**
43:18
**objections**
43:16 49:22 121:12
**objects**
11:12
**obtaining**
67:13
**Obviously**
63:10
**October**
82:14,23
**office**
33:9 56:21,22 65:11
66:9
**offices**
2:5 8:6
**Oh**
20:16 26:18 39:13 66:5
94:9 115:6

Picard v Keller                                    Keller 9/13/2017

**okay**
9:16,19 10:3 12:12,25
13:24 14:6,10,20 15:1
15:5,6,11,23 16:1,4
16:12,12,17,20 17:1,9
17:13,21 18:2,10,13
18:17,24 19:8 20:14
20:20,22,25 21:3,11
21:18,21,24 22:10,13
22:17,20,23 23:5,9,19
24:2,5,8,9,12,18 25:2
25:6,15,17,20,24
26:25 27:9,22 28:2,12
28:14,18 29:2,4,10,12
29:18 30:6 31:2,8,8
31:13 32:1,3,4,18,24
33:4,7,14,17,19,25,25
34:1,5,17,23,25 35:11
36:1,4,9,23 37:4,13
37:23 38:21 39:1,10
39:20 40:2,15,21 41:1
41:13,17,22,23 42:11
42:15,22,22 43:9,13
44:2,5,16,24 45:16,16
46:6,8,12,16,19
47:6,22 48:11,13 49:1
49:4,9,15,21 50:11,17
50:25 51:11,21,21
52:11,20,25 53:6,17
53:24 54:5,8,12,16,21
55:2,4,8,19,23 56:9
56:12,18,22 57:2,16
57:25 58:9,19,21 59:9
59:23 60:6,14,22 61:2
61:6,6,8 62:4,4,12,16
62:20 63:2,13,21 64:1
64:9,11,15 65:3,13,18
66:3,5,12 67:6,11,22
67:24 68:4,16,17
69:25 70:4,13,22 71:1
71:11,24 72:5,7,15,20
73:1,17,25 74:9,15,23
75:7,15 76:14,24 77:2
77:7,16,21 78:9,21
79:8,12 80:5,10,18

81:4 82:6,17 83:5,11
84:6,19 85:7,19 86:7
86:12,21 87:7,15 88:2
88:6,18,20 89:9,22
90:9,20,23 91:25 92:3
92:13,21 93:8 94:1,12
95:18 96:18,21 97:18
98:15,20,23,23 99:18
100:6,14,24,24
101:13 102:1,25
103:19 104:13 105:15
105:19 106:5,24
107:6,14,18 109:8
110:23 112:1,11
113:24 114:15 115:6
115:16,24 116:12,15
117:3,5,15,22
**old**
14:7 29:14
**once**
13:22 17:23 22:13
24:13 40:22 59:15
97:16
**ones**
29:19 72:14,16 94:5
**open**
22:14
**opened**
21:22 22:13 58:10
**opinion**
17:5
**opposed**
19:21
**order**
3:10 9:10 11:21,25
12:1 76:25 77:24
**ordering**
118:8
**outside**
52:23
**owed**
17:25

———————————
              **P**
**P**

1:25 2:2 121:5,23
**p.m**
78:19 107:2,5 118:5,11
**pack**
42:8
**page**
3:6 9:21,25 10:1 14:20
27:10,13,14 28:12,12
28:13 30:17,20 32:2
34:6 35:18 36:10,10
42:25,25 43:3,4,14,14
45:19 46:19 47:23
49:2,2,7 50:7 51:12
53:7,25 56:18 60:1,2
60:3,11,15 66:25
77:16 97:23 119:4
**pages**
3:10,12,14,16,17,19,20
60:5,7,11 62:25
**paid**
18:11 32:15,16 33:1
**Palm**
2:6 8:7
**paper**
38:13
**papers**
26:12 30:2,11 42:9
61:4
**paragraph**
9:24 10:5 34:6,19
35:19 36:11,12,13
38:10 46:20
**paralegal**
55:14
**Pardon**
94:3
**Park**
2:16
**part**
12:14 34:8 38:9 50:2
57:14 61:22 62:5,6
**parties**
8:16
**parts**
22:21,23

**party**
10:17,22,23 11:6,12,14
11:15,18,22
**Party'**
10:19
**Party's**
43:19
**Paseo**
2:5 8:7
**pass**
117:23
**patience**
118:1
**pay**
32:9 36:21 37:5,8
**paying**
32:24
**payments**
37:11
**penalty**
9:1 120:1
**perfectly**
13:9
**period**
59:21 96:22
**perjury**
9:2 120:1
**permanent**
33:17
**permitted**
11:19
**person**
10:8 20:23 21:1 47:24
51:15 61:17 98:17
**personal**
23:3 25:4 74:21
**personally**
20:5 41:1,4 50:13
97:13
**persons**
46:21
**phone**
118:6
**phonetic**
65:14

photocopies
45:1 68:11 73:23 76:4
78:5 80:16 82:4 83:18
86:19 88:16 105:13
107:12 108:20
photocopy
69:11 70:10 77:8 85:4
87:21 89:14 91:19
95:15 99:14 101:18
102:11 103:25 106:10
108:5 109:17
physically
97:8
Picard
1:12 8:9,20 27:5 119:1
pieces
50:3
pile
26:12 37:19
place
120:6 121:9
places
33:7
Plaintiff
1:15 2:2,8
Plaintiff-Applicant
1:5
please
8:24 10:5 13:3 16:4
38:12
point
19:12 48:7
Poliakoff
38:23
portions
12:4,22
possession
38:16
possible
42:20 62:13
possibly
38:22 68:9 73:22
practice
98:7
precis

15:16
predecessor
19:17
prepare
15:6 27:23 55:15
prepared
27:25 28:6
preparing
27:23 28:7,9
present
8:15
presently
43:20,23
preservation
3:15 38:8
preserved
40:22
president
22:18
pretty
15:9,18 16:23 17:3
37:17 54:14
previous
15:8,11
Price
53:10,12
Price's
53:18
primarily
33:11 61:17
prior
10:25 11:3,15 21:19
39:21 44:13
privileged
115:20
Pro
1:6,16
probably
20:16 21:3 48:15 98:22
problem
39:25 67:23,24
Proceeding
8:12
produced
52:13

producing
10:22 11:11,14,22
production
49:24 50:12
profit
34:10
profits
32:10 36:21 37:2,2
promise
42:1
properly
34:9
property
51:14
PROTECTION
1:3
protective
3:10 9:10
provide
10:20 11:2 12:19 16:4
16:12,21 17:2 24:14
36:19 50:12,18 51:18
provided
10:13 11:24 18:5,24
23:11 24:10 31:4,11
33:23 43:2 46:10
51:14
providing
10:14
publication
18:1
publications
17:17
publisher
18:1
publishing
16:14,17,19 17:11,12
17:14,16 22:19,24
24:17 33:10 39:3,7
40:10 48:2,18,24 67:4
69:23 71:2 74:19
96:20,23 98:17
100:16
Publishing's
48:4 51:4

pull
35:12,14
pulled
27:1
purports
44:20
purposes
54:20 115:2
pursuant
10:16
put
29:25 59:1 61:23 62:21
62:22

Q

quarterly
90:17
question
13:1,21 26:3 27:9
79:14 97:7
questions
13:1 15:2 20:11 25:21
31:14 34:19 100:19
117:23,24
quick
76:25
quickly
49:1 94:24
quite
32:20 34:16

R

raise
8:24
Rancho
16:6
range
11:9
read
9:24,25 12:8 15:8 38:9
38:10 49:22 71:17
87:23 120:3
reading
38:19
real

76:25
**realize**
61:16
**realized**
40:22,22
**really**
44:4 47:12 48:10 53:5
   55:18 58:20 61:1
   62:11,19 67:21 70:24
   90:15,19 96:17
**reask**
13:4
**reason**
12:14 72:18
**reasons**
37:9
**recall**
13:9 17:24 18:17 20:17
   21:21 30:24 31:3,8
   32:14 38:19 42:4 44:2
   45:7 55:19 61:2,7
   63:14 64:1 68:1 90:14
   90:18 99:24 117:4
**receipt**
56:3
**receive**
21:18 41:5
**received**
40:7 41:4,6 47:24 48:5
   52:18 54:10 57:23
   62:13 67:15,16,19
   97:1 115:19
**receiving**
39:1,10
**recess**
52:7 78:17 107:3
**recognize**
27:3 30:9 38:1 49:18
   52:14 53:4,17 54:3,9
   55:17 56:16 60:23,25
   63:9,12,17 65:7,23
   70:18,20 72:12 74:7
   74:17 87:12 96:15
**record**
8:2 16:5 43:14 52:5,8

57:5 66:14 74:1 75:19
   78:15,18 106:25
   107:1,4 115:2,25
   118:3,5 121:15
**recorded**
121:13
**records**
25:4 39:23 40:9,13
   41:2,10 51:3,3,5
   58:23 62:2 100:25
   116:22
**recoupment**
32:8
**refer**
38:7
**reference**
35:15 37:21 116:6,7
**referenced**
115:25 116:5
**referencing**
19:23 56:4 62:25
**referring**
15:13 19:16,19,20,24
   20:2,8 37:4
**refresh**
43:1,6 49:25 50:9
**refund**
34:2
**regarding**
28:21 41:10 46:13
**relate**
116:17
**related**
12:23 33:20 38:17
   40:24 50:22 115:22
**relates**
10:24
**relating**
12:5
**remember**
18:13,16 21:20 42:17
   42:20 43:11 54:15
   62:11,19 65:13
**remembered**
44:1 59:5

**remembrance**
18:15
**repetitive**
15:24
**report**
90:17
**reported**
1:25 32:10,11
**reporter**
2:3 8:17,24 9:6 13:11
   29:21 30:3 118:6,10
   121:3,6
**Reporting**
8:5
**represent**
8:16
**request**
11:17 26:1 49:24 51:12
   51:12 67:16 70:2 72:1
   73:15 75:12 77:14
   80:8 81:20 83:8 84:21
   86:9 88:8 89:24 92:9
   93:22,24 99:20 102:3
   103:16 105:4 106:21
   110:2 111:12 113:1
   114:12
**requested**
34:2 67:13
**requesting**
64:12 68:25 71:8 72:23
   74:12 76:21 79:2 81:1
   82:14 84:3 85:16 87:5
   89:6 91:7 93:5 95:8
   99:6 101:10 102:22
   104:10 106:2 107:21
   109:5 110:21 112:8
   113:22
**requests**
43:19,24 50:11 67:12
**required**
32:9 37:5,8
**residence**
33:12
**respect**
33:19

**responding**
42:19 43:19,24 45:24
   46:1 50:11
**responses**
3:17,20 15:21 43:19
   49:22 117:10
**responsible**
61:17
**rest**
42:8 78:12
**restaurants**
16:16 17:2
**retain**
23:12
**retains**
23:14,17
**review**
42:15 45:9 116:24
   117:9
**reviewed**
100:25
**reviewing**
61:18
**RFPs**
3:20
**right**
8:24 15:1 22:8 23:24
   24:21 25:1 26:14
   30:23 33:24 46:23
   48:19,25 52:2 57:25
   59:24 65:21 76:7
   90:24 98:15 117:8
**Road**
56:19
**role**
65:15
**Rule**
10:12 12:3
**runs**
105:17

_____
S
_____
**Sadly**
26:16
**safe**

45:8 46:12 67:15
**saw**
31:1 35:9 39:22
**saying**
13:14 22:8 43:21 63:18
**says**
27:7 38:12 58:1,6
65:18
**sec**
79:9
**second**
38:11 42:24 45:3,19
46:14 77:16 78:13
**secretaries**
65:17
**section**
10:1 32:4 43:15
**securities**
1:3,7,14 19:17 35:22
68:25 71:7 72:22
74:12 76:21 79:2 81:1
82:13 84:3 85:13 87:4
89:6 91:7 93:5 95:7
99:6 101:9 102:21
104:10 106:2 107:21
109:5 110:20 112:8
113:21
**see**
33:16 35:9 41:25 46:5
51:2 53:6 58:6 59:5,7
59:8 60:13 90:22,23
94:10 98:2,3 115:4
116:9
**seeing**
30:24 42:4 55:20 90:14
90:18
**seen**
9:14 14:14,17,23 27:8
38:4 44:13 45:5 54:13
55:19 62:9 116:21
**send**
25:8 26:2 56:3 65:11
117:19
**sending**
25:25 44:21 53:9,15

**sent**
25:11,16,20,22 39:21
40:3 58:12,22,24
63:24 65:20 67:12
90:17 117:13
**sentence**
38:11
**September**
1:24 2:4 3:4 8:2 30:18
30:25 72:23 73:7 89:5
89:15 114:5 119:3
121:18
**services**
2:5 8:6 16:13,20 17:1
**set**
29:20 37:18 114:24
121:9
**setoff**
32:7
**seven**
40:17
**shading**
58:3
**shaking**
13:14
**She'll**
29:24
**shorthand**
2:3 121:3,6,15
**show**
61:25 64:15
**showed**
51:5
**shown**
10:7 26:15
**shows**
43:2 50:8 53:9 57:19
57:20 60:11,17,19
97:24
**side**
29:20 47:15
**sign**
9:17 26:1 97:10
**signature**
43:4 49:7 63:10,19

67:1 69:20 71:21
73:11 75:9 77:18 79:6
79:25 81:15 83:2
84:17 86:4 88:3,4
89:19 91:10 92:4
93:18 95:19 101:23
103:10 104:23 106:16
108:10 109:9,21
111:7 112:21 114:9
119:25 120:12
**signatures**
27:11
**signed**
27:8 41:7 48:17,21
64:3,4,5 68:24 71:6
72:21 74:11 76:19
79:1 80:24 82:12 84:1
85:12 87:3 89:4 91:5
93:3 95:6 97:12 101:8
102:20
**signing**
28:10 41:9
**similar**
17:3 28:25 45:20 55:21
56:9 57:8 70:20 74:6
**simple**
64:10
**simply**
20:8 31:21 97:10
**simultaneously**
11:16
**SIPA**
1:13
**sir**
52:1 54:25 60:9 79:11
94:21
**sitting**
15:1 32:14 44:2
**skip**
29:8 55:5
**skipped**
55:11
**skipping**
29:6 68:16 88:19
**slaughtered**

27:17
**slightest**
18:15 23:18
**slip**
97:19,20
**small**
16:14,17 17:15
**SMB**
1:6,17
**smiled**
30:5
**Smith**
38:22
**snoring**
22:11
**sold**
17:17
**solemnly**
9:1
**somebody**
28:22 64:2,7
**soon**
37:22
**sorry**
19:10 29:13 36:12 49:3
49:3 72:2 76:7 78:14
92:11 94:9 97:20 99:3
**sound**
21:15
**sounds**
21:17
**Southern**
1:2 8:12
**speak**
13:16 21:11 44:6 51:1
**speaking**
67:11
**specific**
97:7
**specifically**
14:23 15:12
**spend**
41:14
**spoke**
21:21 31:9,21

spreadsheets
28:25
**St**
16:6
**stack**
26:17,20 42:1 59:15
**stamp**
87:10
**stamps**
68:10 73:22
**start**
9:9 35:5 60:2
**started**
17:15 19:10
**Starting**
38:11
**starts**
65:23
**state**
9:1,5 32:12,25 35:21
   36:16 120:2 121:6
**statement**
54:24,25 57:12,14,15
   59:18 60:11 61:19
   62:7 96:19 97:4,21
**statements**
24:18 40:6 54:9 57:9
   62:9 100:16
**states**
1:1 8:11 10:5 32:7 33:4
   34:7 35:20 36:13
   43:18 45:22 59:3
**staying**
47:22 49:1
**stenographically**
121:13
**step**
38:21 52:21
**Stephanie**
1:25 2:2 8:17 121:5,23
**stepping**
24:2 31:13 57:20 58:9
   62:4 100:14 116:4
**steps**
15:6 39:2 46:1 67:18

**stickers**
29:20
**stockbroker**
27:20
**storage**
38:15
**stored**
38:15
**straight**
25:3 56:24
**Street**
2:10
**stuff**
35:5 43:8,10 47:11,11
**subparagraph**
10:10,16
**subscribed**
121:17
**substance**
75:25 116:13
**substantial**
32:20
**SUBSTANTIVELY**
1:13
**sufficient**
51:13
**Suite**
2:6,11
**summary**
12:13
**supposed**
23:16 40:17
**sure**
12:15,22 13:17 22:8
   23:14 24:6,8 25:19
   27:25 31:1 34:4 39:2
   39:7 40:19,25 46:7,8
   48:10 51:9 53:21
   54:22 58:11,20 64:22
   68:2 70:24 97:7
**swear**
8:18
**sworn**
121:10

|   T   |
|-------|
**table**
26:17
**take**
13:19,22 15:6 29:19
   30:1 45:25 46:2 52:2
   97:9
**taken**
2:1 3:4 17:22 39:2 52:7
   67:19 107:3 119:3
   121:8
**talk**
13:19 15:17 43:8
**talked**
39:24 40:2 46:4
**talking**
54:10
**tapped**
27:21
**tax**
54:20
**taxes**
32:9,15,24 33:1,20
   34:2 36:21 37:4,8
**taxing**
32:13 36:16,20 37:10
**technically**
115:12
**technician**
8:4
**TELEPHONICALLY**
2:15
**tell**
55:25 59:7 65:9 72:19
   78:13
**ten**
60:5
**term**
19:22,24 20:1,7
**terms**
19:12,13
**testified**
61:16
**testify**

14:1
**testimony**
9:2 12:20 18:5,25 19:4
   24:7 120:4,5 121:11
   121:16
**Texas**
2:11
**thank**
9:6 14:6 41:24 47:9
   49:9 55:9 69:17 70:13
   73:25 78:9 79:8 80:18
   81:17 82:6 83:11,20
   86:12,21 87:15 90:1,9
   92:6,13 93:21 94:19
   96:1 102:14 103:13
   104:2 105:1,6,15
   106:18 107:24 108:13
   108:22 109:11,24
   110:4,13 111:10,15
   111:25 112:24 113:4
   113:14 117:25 118:10
**Thanks**
22:10 95:21
**thereof**
121:15
**thick**
79:13
**thicker**
62:10
**thin**
62:8
**thing**
24:24 49:13 58:25
   79:10
**things**
16:23 23:14 25:11
   31:15 32:11 75:20
   88:23 115:7
**think**
18:7 21:17 28:22 29:8
   33:6,10,11,16 34:18
   45:11 46:4 47:10 48:9
   53:19 54:20 55:14
   57:14,15 62:8 69:16
   91:12

Picard v Keller                                    Keller 9/13/2017

**thought**
55:15 67:21 94:10
   115:10
**three**
97:15
**time**
8:3,15 10:4 11:8 12:19
   13:1,18 17:23 18:7,9
   18:23 23:15 38:19
   44:3 45:5 46:10 54:13
   59:21 61:5 62:9,9,14
   63:14,23 67:15 71:3
   96:22 97:15 99:21,22
   117:9 118:1,9 120:5
   121:9,10,12
**times**
24:4
**title**
49:21,22 65:15
**title's**
30:20
**titled**
43:15 45:4
**today**
8:2 9:14 12:19,25
   13:12 14:2,15,24 15:7
   15:17 17:21 19:11
   20:7 24:3,7 26:15
   31:14 32:14 42:5 44:2
   44:14 115:21 116:3,7
   116:20,21 118:1
**today's**
118:4
**told**
20:21 41:25
**top**
30:17 53:6,20 65:25
   66:1 74:15 87:7
**Top-**
47:7
**topics**
15:3
**Topolewski**
27:16,19,23 47:8,9
**total**

**32**:18,20
**track**
114:25 115:1,2
**transcribed**
121:14
**transcript**
12:5,23 29:25 120:5
   121:14
**transfer**
20:7 36:15 45:4 46:21
   51:16 58:17,22 60:10
   61:2
**transfers**
20:10 34:9,24 35:10,21
   35:23 36:18 54:22
   114:24 116:17
**Transmitting**
3:18
**Treasury**
58:13
**triplicate**
26:22
**true**
120:4 121:14,15
**trust**
1:18,19,21 3:12 8:10
   8:23 19:6,24,25 20:3
   20:5,9,25 21:5,9 22:2
   24:25 25:8 27:6 30:22
   32:6,15,16 33:1,8
   34:1 36:19 37:5 40:10
   45:21,22 46:2 47:25
   48:3,8 49:24 50:14,23
   51:15,15,18 52:17,22
   58:10 61:20 119:1
**trust's**
19:23 28:21
**trustee**
1:12,19,20 8:20,22
   48:20 66:21 69:12
   71:17 75:4
**trustee's**
3:18 34:8 44:21 49:24
**trustees**
21:5

**truth**
9:3,3,4 36:25
**try**
46:2
**trying**
24:3 31:24 59:5
**turn**
9:21 32:1 34:6 35:18
   36:9 43:13 51:12
   59:25
**turning**
14:20 28:12 45:16,18
   47:23 49:2 50:7 77:16
**two**
11:3 44:24 62:24,25
   70:21 77:1 105:16,18
**type**
47:13
**typed**
64:2,3
**types**
17:14 24:12 25:7
**typing**
64:6

_____
                  **U**
**uh-huh**
13:14 17:20 30:12
   31:19 43:17 44:23
   53:8,11 54:2 57:10
   58:5,8 60:16 65:2
   75:23 78:1 87:11
   97:22 98:1 116:19
**uh-huhs**
69:17
**Uh-oh**
22:12
**unable**
45:22
**understand**
9:17 13:2 15:25 29:17
   30:15 31:22,25 39:20
   43:12 50:4 58:2 63:21
   63:22 68:2,15 100:21
   115:9

**understanding**
54:16
**Unfortunately**
36:25
**United**
1:1 8:11
**use**
10:21 12:18 18:1 19:22
   19:24 20:1,7 41:20
   49:13 105:18

_____
                  **V**
**V**
119:1
**Vaguely**
42:6,7 49:20
**Valentine**
91:23
**Valentine's**
91:22
**value**
51:14
**versa**
18:22 20:9
**version**
94:7
**versus**
8:10
**vice**
18:22 20:9 22:18
**video**
8:4 13:12
**Videographer**
2:19 8:1 52:5,8 78:15
   78:18 107:1,4 118:4
**Videotaped**
1:24
**vs**
1:6,16

_____
                  **W**
**want**
13:2,19 19:13 22:11
   24:3,6 29:19 37:18
   39:15,16 48:23

Picard v Keller                                    Keller 9/13/2017

**WAS/CHANGE**
119:4
**wasn't**
36:6 47:12 65:11
**way**
10:8 13:17 33:11
  115:10
**we'll**
44:8 64:23
**we're**
19:10 22:1 52:5,8
  66:13 78:15,18 84:20
  94:24 107:1,4 115:7
  118:5,8
**we've**
74:7 75:22 114:23
  115:24 116:1,15
**Wednesday**
2:4
**went**
15:8,11 20:8 24:20
  25:3 31:9 54:16
**weren't**
46:8 61:17 62:10
**whereof**
121:17
**wife**
47:3 78:13
**wire**
57:21,21 58:7,12
**withdraw**
35:2
**withdrawal**
26:4 46:14 64:12 68:25
  71:8 74:12 76:21 79:3
  81:1 82:14 84:3 85:16
  87:5 89:6 91:7 93:5
  95:8 99:7 101:10
  102:22 104:11 106:2
  107:21 109:5 110:21
  112:8 113:22
**withdrawals**
34:10 36:14 40:4 41:10
  46:17 51:5 54:23
  67:12

**withdrawing**
34:23
**withdrawn**
63:11
**witness**
8:13,18,22 9:5 10:10
  10:15 11:21 12:9,15
  18:7,18 22:7,10 23:24
  26:10,12 30:1 34:14
  35:6 36:5 41:24 45:14
  51:24 52:2 55:9 59:12
  63:2 78:1,12 88:21
  105:17 117:23 118:2
  120:12 121:10,11,16
  121:17
**witness's**
10:13
**witnesses**
11:23
**woman**
65:10
**wonderful**
24:6
**work**
16:15,15,16 17:18
  41:15 56:1
**worked**
15:15,20 17:11,13 42:9
  42:12
**worker**
16:11
**working**
65:10
**writing**
11:15
**wrong**
44:17

**X**

**Y**

**yeah**
15:22 21:17 26:19 27:8
  27:8 30:13,16 31:17
  31:23 33:5,18 35:17

37:23 39:13 40:5 41:8
  43:7 47:17 48:21
  54:11 56:11 59:4,22
  65:6 66:2 68:3 69:24
  72:3,6 74:22 75:21
  76:8,10,13,23 77:11
  78:8 117:18
**year**
32:9,17 33:14 43:3,5
**years**
17:11,17 20:16 32:19
  40:17 63:22,23
**York**
1:2 2:16,16 8:12 33:3
  33:12
**yup**
69:14,16

**Z**

**0**

**000009-10**
6:4
**012655**
3:13
**04/13/11**
3:15
**08-01789**
1:6
**0801789**
8:13

**1**

**1**
3:10 9:9,12 53:25
  57:22 58:7
**1.8**
60:18 61:3
**1:12**
107:5
**1:24**
118:5,11
**10**
3:17 10:1 41:18,21
  42:2 45:18 47:22

**10-04539**
1:16
**10-04539_Defendant...**
5:19
**10-04539_Defendant...**
3:24
**10-04539_Defendant...**
4:4
**10-04539_Defendant...**
4:6
**10-04539_Defendant...**
4:1
**10-04539_Defendant...**
3:25
**10-4539_Defendant_...**
3:23
**10:12**
2:4 8:3
**10_04539_Defendan...**
4:2
**100**
6:7
**100,000**
87:5,25 101:11,20
  102:23 103:7 104:11
  104:20 107:22 108:7
**10022**
2:16
**101**
6:8,8,9 101:4,5,8 102:4
**102**
6:9,10,11 101:14,15,18
  101:22 102:2,12
**103**
6:10,12,13 102:7,8,11
**104**
6:14,15
**105**
6:16,17
**106**
6:11,18 102:16,17,20
  103:17
**107**
6:12,19,20 103:1,2,5
  103:14,15,24

Picard v Keller                                    Keller 9/13/2017

**108**
6:13,21,22,23 103:20
   103:21,23
**109**
6:24
**1099**
32:11
**10A**
41:19
**10C**
41:20
**10f**
9:24 10:5
**10th**
79:1 93:14
**11**
3:18,20 44:10,11,13,16
   45:17 49:2
**11:04**
52:6
**11:16**
52:9
**11:51**
78:16
**110**
6:14,25 7:1,2 104:4,5,7
   104:8 105:2,4
**1100**
2:11
**111**
6:15 7:3 104:14,15,17
   105:2,3,12
**112**
6:16 7:4,5 105:8,9,11
**113**
7:6,7
**114**
6:17 7:8,9 105:21,22
   105:25 106:19,22
**115**
6:18 106:6,7,10,19,20
   107:10
**116**
6:19 107:7,8,10
**119**

6:20 107:15,16,19
**11th**
79:21 82:23
**12**
3:17,20 49:11,16,19
**12:27**
78:19
**12:59**
107:2
**120**
6:21 108:1,2,5,19
**12088**
1:25 121:24
**121**
6:22 108:15,16,19
**12161**
16:6
**124**
6:23 108:24,25 109:3
   110:2
**125**
6:24 109:13,14,16,25
   110:9
**125,000**
82:15,24 95:8,16 98:6
   99:7,16 109:6,18
**126**
6:25 110:6,7,10
**12A**
49:13
**12C**
49:14
**12th**
91:6 110:20
**13**
1:24 2:4 3:4,21 8:2
   34:12,13,18 63:22,22
   69:12 75:20 119:3
**130**
7:1 110:15,16,19
   111:13
**131**
7:2 110:24,25 111:2,11
   111:23
**132**

7:3 111:17,18,21
**135**
7:4 112:2,3,6 113:2
**136**
7:5 112:12,13,16 113:1
   113:12
**137**
7:6 113:6,7,10
**138,671.35**
97:25
**13th**
38:7
**14**
3:11,23 51:22,23 52:12
**140**
7:7 113:16,17,20
   114:13
**141**
7:8 113:25 114:1,4,12
   114:20
**142**
7:9 114:16,17,20
**14th**
91:20
**15**
3:24 53:1,2,4
**150,000**
89:7,16 110:21 111:4
   113:22 114:6
**15th**
89:5
**16**
32:6 111:4
**16th**
43:3 50:8
**17**
3:10 121:18
**17th**
44:18
**18**
3:25 55:6,7,17 56:9
**18th**
56:6
**192**
60:2,3,3

**1995**
33:16
**1997**
57:13
**1999**
59:21 61:3,21
**19th**
107:20
**1st**
59:24 77:9 87:24 95:6
**1ZB1314**
22:2
**1ZB314**
19:23 45:2,4

───────────────
**2**
───────────────
**2**
3:11,16 14:11,12,14
   30:20 78:20 97:23
**20**
20:16
**200,000**
71:9,18 72:24 73:8
   81:2,11 84:4,14 85:17
   86:1 91:8,21 106:3,12
**2004**
10:12 12:3 63:23 66:22
   69:3,12 71:8,18 72:23
   73:7 75:5
**2005**
74:10 76:20 77:10 79:1
   79:21 80:25 81:10
   82:14,23
**2006**
84:2,14 85:12,25 87:4
   87:24 89:5,16
**2007**
91:6,21 93:4,14 95:7
   95:16 96:20 99:6,15
   101:10,20 102:22
   103:7 104:9,19 106:1
   106:11
**2008**
23:19 24:13 29:15
   47:20 107:20 108:6

Picard v Keller                                    Keller 9/13/2017

109:4,18 110:20
111:4 112:7,17
113:21 114:5
**2010**
116:20,21
**2011**
3:10 38:7,22 39:21,21
**2015**
30:19,25
**2016**
44:18
**2017**
1:24 2:4 3:4 8:2 119:3
120:8 121:18
**202**
2:6
**20th**
57:20 89:15 101:10
**21**
4:1 56:13,14,16
**21st**
101:20 108:6
**22**
4:2 17:17 32:2 57:3,4
57:11
**22nd**
71:8 72:23
**23**
34:6
**230,000**
69:1,13
**24**
4:3 35:18 59:10,11,17
61:11
**240,000**
64:12 66:22
**24th**
73:7 80:25 109:4
**25**
4:4 20:16 36:10 61:10
61:13,15 99:22
**250,000**
79:3,22
**25th**
99:15 112:7

**26**
3:13,14 104:9
**27**
4:5 34:7 63:6,7,9 64:20
65:1 67:9 106:1
**275,000**
76:22 77:10
**27th**
75:5 109:18 112:17
113:20
**28**
4:6 64:17,18,25 65:3
67:9 106:11
**28th**
71:18 81:10
**29**
3:14 4:7 66:16,17,20
67:7 68:9
**29th**
59:24 102:22
**2nd**
99:6,22 114:5

---
**3**
---
**3**
3:13 26:8,9 27:3,13
43:14,14 46:20
**3/20**
58:1
**30**
4:8 68:5,6,8,10
**300,000**
74:13 75:5 93:6,15
**30th**
84:2 104:19
**31**
68:16 103:7
**312**
53:18
**31st**
76:20 85:12 87:3
**32**
4:9 68:19,20,22 69:25
70:2
**33**

4:10 69:6,7,10,25 70:1
70:11
**34**
3:21 4:11 70:5,6,9,10
**350,000**
112:9,18
**36**
4:12 70:15,16,19 71:1
71:5 72:2,3,4
**37**
3:15 35:19,20 72:1
**38**
4:13 71:12,13,16,25
**3rd**
74:10 84:14 85:25

---
**4**
---
**4**
3:12,19 27:10 28:13
29:6,9 45:19
**40**
4:14 72:9,10,13,20
73:15
**41**
4:15 73:2,3,6,14,22
**42**
3:17 4:16 73:18,19,21
**43**
36:12
**44**
3:18 4:17 74:3,4 75:12
**45**
4:18 74:24,25 75:3,11
76:6,7,7
**46**
4:19 36:11 75:16,17
76:2,3,7
**465**
2:16
**47**
76:3
**48**
4:20 76:15,16 77:13
**49**
3:20 4:21 77:23,25

78:3
**4th**
60:8,9,17 61:25

---
**5**
---
**5**
9:21 28:12 29:6,9
47:23 51:12 60:11
**50**
4:22 77:4,5,8,12,17
78:3
**51**
3:23
**52**
4:23 78:22,23 80:6,8
**53**
3:24 4:24 60:12 79:16
79:17,20 80:5,7,15
**54**
4:25 80:11,12,14
**55**
3:25
**56**
4:1 5:1 80:20,21,24
81:20
**57**
4:2 5:2 81:5,6,9,19
82:3
**58**
5:3 81:23,24 82:2
**59**
4:3
**5th**
93:4

---
**6**
---
**6**
3:10,14 29:3,5 30:9
32:2 35:19 37:17,17
47:23 69:3
**60**
5:4 17:11 82:8,9,12
83:6,9
**61**
4:4 5:5 82:18,19,22

Picard v Keller                                    Keller 9/13/2017

83:5,7,17
**62**
5:6 83:13,14,16
**63**
4:5
**64**
4:6 5:7 83:22,23 84:22
**646-1388**
2:12
**65**
5:8 84:8,9,12,20 85:5
**66**
4:7 5:9 84:25 85:1,4
**68**
4:8,9 5:10 85:8,9,11
86:10
**69**
4:10 5:11 85:20,21,24
86:8,18
**6th**
43:5 82:14 95:16

--- **7** ---

**7**
3:15 37:14,15,25 38:1
**70**
4:11,12 5:12 86:14,15
86:18
**703**
59:20
**71**
4:13
**713**
2:12
**72**
4:14 5:13 86:23,24
87:2 88:7,8
**73**
4:15,16 5:14 87:17,18
87:21 88:6,7,15
**74**
4:17,18 5:15 88:11,12
88:15
**74-199**
8:7

**74199**
2:5
**75**
4:19
**759-1114**
2:17
**76**
4:20
**77**
4:21,22
**77002-6111**
2:11
**78**
4:23 5:16 88:25 89:1,4
89:24
**79**
4:24 5:17 89:10,11,14
89:22 90:5
**7th**
97:24

--- **8** ---

**8**
51:12 66:21
**80**
4:25 5:1,18 90:2,3,6
**81**
5:2,3
**811**
2:10
**82**
5:4,5,19 90:10,13
**83**
5:6,7,20 91:1,2,5 92:11
**84**
5:8,21 91:15,16,19
92:7,11,21
**85**
5:9,10,11,22 92:7,10
92:14,15,17
**86**
5:12,13
**87**
5:14,23 92:23,24 93:2
93:23

**88**
5:15,24 93:9,10,12,22
93:23 94:16
**888**
2:17
**89**
5:16,17,25 94:13,14,16

--- **9** ---

**9**
3:7,10 43:18
**90**
5:18,19
**91**
5:20,21 6:1 95:2,3,5,24
**92**
5:22,23 6:2 95:11,12
95:14,23 96:8
**92260**
8:8
**92270**
16:7
**93**
5:24 6:3 96:3,4,7
**94**
5:25 6:4 96:12,13
**95**
6:1,2
**96**
6:3,4,5 33:16 98:24,25
99:2,4,20
**97**
6:6 56:6 99:10,11,14
99:19 100:11
**98**
6:5,7 100:7,8,11
**99**
6:6