Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 95-88888-cgm

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    THE BANKRUPTCY LINK,

7            Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 08-01789-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   SECURITIES INVESTOR PROTECTION CORPORATION,

12               Plaintiff,

13         v.

14   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC. et al.,

15       Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 10-04986-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20               Plaintiff,

21         v.

22   KNEE,

23               Defendants.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 2

1    Adv. Case No.10-05083-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5            v.

6    THE S. JAMES COPPERSMITH CHARITABLE REMAINDER UNIT,

7                    Defendants.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 10-05144-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   PICARD,

12                   Plaintiff,

13           v.

14   ESTATE OF BERNARD J. KESSEL et al.,

15                   Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 10-05169-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21           v.

22   FAIRFIELD PAGMA ASSOCIATES, LP, A NEW YORK LIMITED,

23                   Defendants.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 3

1    Adv. Case No. 10-05346-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5              v.

6    MERRILL LYNCH INTERNATIONAL,

7                    Defendants.

8    - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 10-05348-cgm

10    - - - - - - - - - - - - - - - - - - - - - - - - - x

11    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                    Plaintiff,

13              v.

14    NOMURA BANK INTERNATIONAL PLC et al.,

15                    Defendants.

16    - - - - - - - - - - - - - - - - - - - - - - - - - x

17    Adv. Case No. 10-05351-cgm

18    - - - - - - - - - - - - - - - - - - - - - - - - - x

19    IRVING H. PICARD, ESQ., TRUSTEE FOR THE SUBSTANTIVE,

20                    Plaintiff,

21              v.

22    BANCO BILBAO VIZCAYA ARGENTARIA, S.A.,

23                    Defendants.

24    - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 4

1    Adv. Case No. 11-02493-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                   Plaintiff,

5            v.

6    ABU DHABI INVESTMENT AUTHORITY,

7                   Defendants.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 11-02538-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                  Plaintiff,

13           v.

14   QUILVEST FINANCE LTD.,

15                  Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 11-02539-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                  Plaintiff,

21           v.

22   MERITZ FIRE & MARINE INSURANCE CO. LTD.,

23                  Defendants.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 5



1    Adv. Case No. 11-02540-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5              v.

6    LION GLOBAL INVESTORS LIMITED,

7                    Defendants.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 11-02541-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13             v.

14   FIRST GULF BANK,

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 11-02542-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21             v.

22   PARSON FINANCE PANAMA S.A.,

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 6

1     Adv. Case No. 11-02551-cgm

2     - - - - - - - - - - - - - - - - - - - - - - - - - - x

3     IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5              v.

6     PARSON FINANCE PANAMA S.A.,

7                    Defendant.

8     - - - - - - - - - - - - - - - - - - - - - - - - - - x

9     Adv. Case No. 11-02551-cgm

10    - - - - - - - - - - - - - - - - - - - - - - - - - - x

11    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13             v.

14    DELTA NATIONAL BANK AND TRUST COMPANY,

15                   Defendant.

16    - - - - - - - - - - - - - - - - - - - - - - - - - - x

17    Adv. Case No. 11-02553-cgm

18    - - - - - - - - - - - - - - - - - - - - - - - - - - x

19    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20    MADOFF INVESTMENT SECURITIES LLC,

21                   Plaintiff,

22             v.

23    UNIFORTUNE ASSET MANAGEMENT SGR SPA et al.,

24                   Defendant.

25    - - - - - - - - - - - - - - - - - - - - - - - - - - x

Page 7

1    Adv. Case No. 11-02554-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5            v.

6    NATIONAL BANK OF KUWAIT S.A.K..

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 11-02568-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13           v.

14   CATHAY LIFE INSURANCE CO. LTD. et al.,

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 11-02569-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21           v.

22   BARCLAYS BANK (SUISSE) S.A. et al.,

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 8

1    Adv. Case No. 11-02570-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                Plaintiff,

5         v.

6    Banca Carige S.P.A.

7                Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 11-02572-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12               Plaintiff,

13        v.

14   KOREA EXCHANGE BANK, INDIVIDUALLY AND AS TRUSTEE,

15               Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 11-02573-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20               Plaintiff,

21        v.

22   THE SUMITOMO TRUST AND BANKING CO., LTD.,

23               Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 9

1    Adv. Case No. 11-02730-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                  Plaintiff,

5          v.

6    ATLANTIC SECURITY BANK,

7                  Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 11-02731-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                 Plaintiff,

13         v.

14   TRINCASTER CORPORATION,

15                 Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 11-02732-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                 Plaintiff,

21         v.

22   BUREAU OF LABOR INSURANCE,

23                 Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

```
                                                         Page 10

 1    Adv. Case No. 11-02733-cgm

 2    - - - - - - - - - - - - - - - - - - - - - - - - - - x

 3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

 4                    Plaintiff,

 5             v.

 6    NAIDOT & CO.,

 7                    Defendant.

 8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

 9    Adv. Case No. 11-02758-cgm

10    - - - - - - - - - - - - - - - - - - - - - - - - - - x

11    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                    Plaintiff,

13             v.

14    Caceis Bank Luxembourg et al

15                    Defendant.

16    - - - - - - - - - - - - - - - - - - - - - - - - - - x

17    Adv. Case No. 11-02759-cgm

18    - - - - - - - - - - - - - - - - - - - - - - - - - - x

19    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                    Plaintiff,

21             v.

22    Nomura International PLC

23                    Defendant.

24    - - - - - - - - - - - - - - - - - - - - - - - - - - x

25
```

Page 11

1    Adv. Case No. 11-02760-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4              Plaintiff,

5         v.

6    ABN AMRO BANK N.V. (presently known as THE ROYAL B

7              Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 11-02761-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12             Plaintiff,

13        v.

14   KBC Investments Limited

15             Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 11-02762-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20             Plaintiff,

21        v.

22   Lighthouse Investment Partners LLC, d/b/a Lighthou

23             Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 12

1    Adv. Case No. 11-02763-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                   Plaintiff,

5             v.

6    Inteligo Bank LTD. Panama Branch, f/k/a Blubank LT

7                   Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 11-02784-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                  Plaintiff,

13            v.

14   Somers Dublin Limited et al

15                  Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 11-02796-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                  Plaintiff,

21            v.

22   BNP Paribas Arbitrage SNC

23                  Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25



Page 13

1    Adv. Case No. 11-02910-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5            v.

6    Merrill Lynch Bank (Suisse) SA

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 11-02922-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13           v.

14   Bank Julius Baer & Co. Ltd.

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 11-02923-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21           v.

22   Falcon Private Bank Ltd. (f/k/a AIG Privat Bank AG

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 14

1    Adv. Case No. 11-02925-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5            v.

6    Credit Suisse AG et al

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 11-02929-cgm

10    - - - - - - - - - - - - - - - - - - - - - - - - - x

11    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                    Plaintiff,

13            v.

14    LGT Bank in Liechtenstein Ltd.

15                    Defendant.

16    - - - - - - - - - - - - - - - - - - - - - - - - - x

17    Adv. Case No. 12-01002-cgm

18    - - - - - - - - - - - - - - - - - - - - - - - - - x

19    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                    Plaintiff,

21            v.

22    The Public Institution For Social Security

23                    Defendant.

24    - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 15

1   Adv. Case No. 12-01004-cgm

2   - - - - - - - - - - - - - - - - - - - - - - - - - x

3   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                 Plaintiff,

5           v.

6   Fullerton Capital PTE Ltd.

7                 Defendant.

8   - - - - - - - - - - - - - - - - - - - - - - - - - x

9   Adv. Case No. 12-01005-cgm

10  - - - - - - - - - - - - - - - - - - - - - - - - - x

11  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                Plaintiff,

13          v.

14  SICO Limited

15                Defendant.

16  - - - - - - - - - - - - - - - - - - - - - - - - - x

17  Adv. Case No. 12-01019-cgm

18  - - - - - - - - - - - - - - - - - - - - - - - - - x

19  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                Plaintiff,

21          v.

22  Banco Itau Europa Luxembourg S.A. et al

23                Defendant.

24  - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 16

1    Adv. Case No. 12-01021-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5            v.

6    Grosvenor Investment Management Ltd. et al

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 12-01022-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13           v.

14   Credit Agricole (Suisse) S.A. et al

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 12-01023-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21           v.

22   Arden Asset Management Inc. et al

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 17



1    Adv. Case No. 12-01046-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5            v.

6    SNS Bank N.V. et al

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 12-01047-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13           v.

14   KOCH INDUSTRIES, INC., as successor in interest to

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 12-01048-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21           v.

22   Banco General S.A. et al

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 18

1    Adv. Case No. 12-01194-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5            v.

6    Kookmin Bank

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 12-01195-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13           v.

14   Six Sis AG

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 12-01202-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21           v.

22   Bank Vontobel AG f/k/a Bank J. Vontobel & Co. AG e

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - x

25



Page 19

1   Adv. Case No. 12-01205-cgm

2   - - - - - - - - - - - - - - - - - - - - - - - - - - x

3   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5            v.

6   Multi-Strategy Fund Limited et al

7                    Defendant.

8   - - - - - - - - - - - - - - - - - - - - - - - - - - x

9   Adv. Case No. 12-01207-cgm

10  - - - - - - - - - - - - - - - - - - - - - - - - - - x

11  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13           v.

14  Lloyds TSB Bank PLC

15                   Defendant.

16  - - - - - - - - - - - - - - - - - - - - - - - - - - x

17  Adv. Case No. 12-01209-cgm

18  - - - - - - - - - - - - - - - - - - - - - - - - - - x

19  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21           v.

22  BSI AG, individually and as successor in interest

23                   Defendant.

24  - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 20

1    Adv. Case No. 12-01210-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4              Plaintiff,

5         v.

6    Schroder & Co. Bank AG

7              Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 12-01211-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12             Plaintiff,

13        v.

14   Union Securities Investment Trust Co., Ltd. et al

15             Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 12-01216-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20             Plaintiff,

21        v.

22   Bank Hapoalim B.M. et al

23             Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 21

1    Adv. Case No. 12-01512-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5            v.

6    ZCM Asset Holding Company (Bermuda) LLC

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 12-01565-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13           v.

14   Standard Chartered Financial Services (Luxembourg)

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 12-01566-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21           v.

22   UKFP (Asia) Nominees Limited

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25



Page 22

1   Adv. Case No. 12-01577-cgm

2   - - - - - - - - - - - - - - - - - - - - - - - - - - x

3   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                   Plaintiff,

5           v.

6   UBS Deutschland AG as successor in interest to Dre

7                   Defendant.

8   - - - - - - - - - - - - - - - - - - - - - - - - - - x

9   Adv. Case No. 12-01669-cgm

10  - - - - - - - - - - - - - - - - - - - - - - - - - - x

11  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                  Plaintiff,

13          v.

14  Barfield Nominees Limited et al

15                  Defendant.

16  - - - - - - - - - - - - - - - - - - - - - - - - - - x

17  Adv. Case No. 12-01670-cgm

18  - - - - - - - - - - - - - - - - - - - - - - - - - - x

19  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                  Plaintiff,

21          v.

22  Credit Agricole Corporate and Investment Bank d/b/

23                  Defendant.

24  - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 23

1   Adv. Case No. 12-01676-cgm

2   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                  Plaintiff,

5            v.

6   Credit Suisse AG, as successor in interest to Clar

7                  Defendant.

8   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9   Adv. Case No. 12-01677-cgm

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                 Plaintiff,

13           v.

14  SOCIETE GENERALE PRIVATE BANKING (SUISSE) S.A. (f/

15                 Defendant.

16  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17  Adv. Case No. 12-01680-cgm

18  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                 Plaintiff,

21           v.

22  Intesa Sanpaolo SpA (as Successor in Interest to B

23                 Defendant.

24  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 24

1    Adv. Case No. 12-01690-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4               Plaintiff,

5          v.

6    EFG BANK S.A., f/k/a EFG Private Bank S.A. et al

7               Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 12-01693-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12              Plaintiff,

13         v.

14   Lombard Odier Darier Hentsch & Cie

15              Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 12-01694-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20              Plaintiff,

21         v.

22   BANQUE CANTONALE VAUDOISE

23              Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 25

1    Adv. Case No. 12-01695-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5            v.

6    Bordier & Cie

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 12-01697-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13           v.

14   ABN AMRO Fund Services (Isle of Man) Nominees Limi

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 12-01700-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21           v.

22   Citibank (Switzerland) Ltd.

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25



Page 26

1    Adv. Case No. 10-04488-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5              v.

6    South Ferry Building Company, a New York limited p

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 10-04538-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13             v.

14   James B. Pinto Revocable Trust U/A dtd 12/1/03 et

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 10-04631-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21             v.

22   151797 Canada Inc.

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 27

1    Adv. Case No. 10-04702-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5              v.

6    S&L Partnership, a New York partnership et al

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 10-04750-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

12                   Plaintiff,

13             v.

14   Samdia Family L.P., a Delaware Limited Partnership

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 10-05286-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21             v.

22   Legacy Capital Ltd. et al

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - x

25



Page 28

1    Adv. Case No. 10-05345-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    Irving H. Picard, Esq., Trustee for the Substantive

4         Plaintiff,

5              v.

6    Citibank, N.A. et al

7                   Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 10-05353-cgm

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   Irving H. Picard, Esq., Trustee for the Substantive

12                   Plaintiff,

13            v.

14   Natixis et al

15                   Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 10-04539-cgm

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20                   Plaintiff,

21            v.

22   The Gerald and Barbara Keller Family Trust et al

23                   Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 29

1    Adv. Case No. 20-01316-cgm

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4                    Plaintiff,

5            v.

6    Mayer et al

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9

10                   United States Bankruptcy Court

11                   355 Main Street

12                   Poughkeepsie, NY 12601

13                   September 15, 2021

14                   10:25 AM

15

16

17

18

19

20

21   B E F O R E :

22   HON CECELIA MORRIS

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

Page 30

1    HEARING re Case No. 95-88888-cgm Doc# 20531 Notice of

2    Adjournment of Hearing /Pre-Trial Conference (Adv. Pro. No.

3    10-04341 (CGM)) filed by Nicholas Cremona on behalf of

4    Irving H Picard Esq.. with hearing to be held on 9/15/2021

5    at 10:00 AM at Videoconference (ZoomGov) (CGM)

6

7    HEARING re 08-01789-cgm Doc# 20532 Notice of Adjournment of

8    Hearing /Pre-Trial Conference (Adv. Pro. No. 10-04343 (CGM))

9    filed by Nicholas Cremona on behalf of Irving H Picard Esq..

10   with hearing to be held on 9/15/2021 at 10:00 AM at

11   Videoconference (ZoomGov) (CGM)

12

13   HEARING re 08-01789-cgm Doc# 20533 Notice of Adjournment of

14   Hearing /Pre-Trial Conference (Adv. Pro. No. 10-04348 (CGM))

15   filed by Nicholas Cremona on behalf of Irving H Picard Esq..

16   with hearing to be held on 9/15/2021 (check with court for

17   location)

18

19   HEARING re 08-01789-cgm Doc# 20534 Notice of Adjournment of

20   Hearing /Pre-Trial Conference (Adv. Pro. No. 10-05118 (CGM))

21   filed by Nicholas Cremona on behalf of Irving H Picard Esq..

22   with hearing to be held on 9/15/2021 at 10:00 AM at

23   Videoconference (ZoomGov) (CGM)

24

25   HEARING re 08-01789-cgm Doc# 20535 Notice of Adjournment of

Page 31

1   Hearing /Pre-Trial Conference (Adv. Pro. No. 10-05168 (CGM))

2   filed by Nicholas Cremona on behalf of Irving H Picard Esq..

3   with hearing to be held on 9/15/2021 at 10:00 AM at

4   Videoconference (ZoomGov) (CGM)

5

6   HEARING re 08-01789-cgm Doc# 20687 Notice of Adjournment of

7   Hearing of Hearing re: Hearing on Trustees Motion to Strike

8   Defendants Answer (Adv. Pro. No. 10-05124) filed by Nicholas

9   Cremona on behalf of Irving H Picard Esq.. with hearing to

10  be held on 9/15/2021 at 10:00 AM at Videoconference

11  (ZoomGov) (CGM)

12

13  HEARING re 10-04986-cgm Doc# 58 Notice of Hearing for

14  failure to submit order (related document(s)50) filed by

15  Clerk of Court, United States Bankruptcy Court, SDNY. with

16  hearing to be held on 9/15/2021 at 10:00 AM at

17  Videoconference (ZoomGov) (CGM)

18

19  HEARING re 10-04986-cgm Doc. #50 Motion to Approve

20  /Memorandum of Law in Support of Trustee's Motion for

21  Limited Additional Discovery Based on Prior Orders

22  Authorizing Deposition of Bernard L. Madoff filed by Melissa

23  Kosack on behalf of Irving H. Picard, Trustee for the

24  Liquidation of Bernard L. Madoff Investment Securities LLC

25  with hearing to be held on 10/31/2018 at 10:00 AM at

1     Courtroom 723 (SMB) Responses due by 10/17/2018,.

2     (Attachments: # 1 Exhibit A - Remaining Good Faith Actions #

3     2 Exhibit B - Cases Participating in Madoff's Deposition # 3

4     Exhibit C - Cases Not Participating in Madoff's Deposition #

5     4 Exhibit D - Cases with Open Fact Discovery # 5 Exhibit E -

6     Cases with Closed Fact Discovery with CMOs # 6 Exhibit F -

7     Cases with Served Expert Reports # 7 Exhibit G - Bongiorno

8     Rule 30 Order # 8 Exhibit H - Bonventre Rule 30 Order # 9

9     Exhibit I - Crupi Rule 30 Order # 10 Exhibit J - Main

10    Proposed Order # 11 Notice of Motion) (Kosack, Melissa)

11

12    HEARING re 10-05083-cgm Doc# 70 Notice of Hearing for

13    failure to submit order (related document(s)62) filed by

14    Clerk of Court, United States Bankruptcy Court, SDNY. with

15    hearing to be held on 9/15/2021 at 10:00 AM at

16    Videoconference (ZoomGov) (CGM) Doc. #62 Motion to Approve

17    /Memorandum of Law in Support of Trustee's Motion for

18    Limited Additional Discovery Based on Prior Orders

19    Authorizing Deposition of Bernard L. Madoff filed by Melissa

20    Kosack on behalf of Irving H. Picard, Trustee for

21    the Liquidation of Bernard L. Madoff Investment Securities

22    LLC, and Bernard L. Madoff with hearing to be held on

23    10/31/2018 at 10:00 AM at Courtroom 723 (SMB) Responses due

24    by 10/17/2018. (Attachments: # 1 Exhibit A - Remaining Good

25    Faith Cases # 2 Exhibit B - Cases Participating in Madoff's

Page 33

1    Deposition # 3 Exhibit C - Cases Not Participating in

2    Madoff's Deposition # 4 Exhibit D - Cases with Open Fact

3    Discovery # 5 Exhibit E - Cases with Closed Fact Discovery

4    with CMOs # 6 Exhibit F - Cases with Served Expert Reports #

5    7 Exhibit G - Bongiorno Rule 30 Order # 8 Exhibit H -

6    Bonventre Rule 30 Order # 9 Exhibit I - Crupi Rule 30 Order

7    # 10 Exhibit J - Main Proposed Order # 11 Notice of Motion)

8    (Kosack, Melissa)

9    ****

10   HEARING re 10-05144-cgm Doc# 51 Notice of Hearing for

11   failure to submit order (related document(s)43) filed by

12   Clerk of Court, United States Bankruptcy Court, SDNY. with

13   hearing to be held on 9/15/2021 at 10:00 AM at

14   Videoconference (ZoomGov) (CGM) Doc. #43 Motion to Approve

15   /Memorandum of Law in Support of Trustee's Motion for

16   Limited Additional Discovery Based on Prior Orders

17   Authorizing Deposition of Bernard L. Madoff filed by David

18   J. Sheehan on behalf of Irving Picard with hearing to

                                              be held

19   on 10/31/2018 at 10:00 AM at Courtroom 723 (SMB) Responses

20   due by

         10/17/2018,. (Attachments: # 1 Exhibit A - Remaining

21   Good Faith Cases # 2 Exhibit B

                                 - Cases Participating in

22   Madoff's Deposition # 3 Exhibit C - Cases Not Participating

23   in Madoff's Deposition # 4 Exhibit D - Cases with Open Fact

24   Discovery # 5 Exhibit E - Cases with Closed Fact Discovery

25   with CMOs # 6 Exhibit F - Cases with Served Expert Reports #

1    7 Exhibit G - Bongiorno Rule 30 Order # 8 Exhibit H -

2    Bonventre Rule 30 Order # 9 Exhibit I - Crupi Rule 30 Order

3    # 10 Exhibit J - Main Proposed Order # 11 Notice of Motion)

4    (Sheehan, David)

5

6    HEARING re 10-05348-cgm Doc# 118 Notice of Hearing on Status

7    Conference (related document(s)115) filed by Clerk of Court,

8    United States Bankruptcy Court, SDNY. with hearing to be

9    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

10   (CGM) Doc. #115 Copy of Mandate from Circuit Court issued on

11   6/1/2020 Re: Appeal on Appellate Case Number: 17-3129. The

12   Court of Appeals VACATES the bankruptcy courts judgments

13   dismissing these actions and REMAND for further proceedings

14   consistent with this opinion. (related document(s)109, 113)

15   (Rouzeau, Anatin)

16

17   HEARING re 10-05351-cgm Doc# 138 Notice of Hearing on Status

18   Conference (related document(s)135) filed by Clerk of Court,

19   United States Bankruptcy Court, SDNY. with hearing to be

20   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

21   (CGM) Doc. #135 Copy of Mandate from Circuit Court issued on

22   6/1/2020 Re: Appeal on Appellate Case Number: 17-3122. The

23   Court of Appeals VACATES the bankruptcy courts judgments

24   dismissing these actions and REMAND for further proceedings

25   consistent with this opinion. (related document(s)133, 129)

Page 35

1    (Rouzeau, Anatin)

2

3    HEARING re 11-02493-cgm Doc# 104 Notice of Hearing on Status

4    Conference (related document(s)101) filed by Clerk of Court,

5    United States Bankruptcy Court, SDNY. with hearing to be

6    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

7    (CGM) Doc. #101 Copy of Mandate from Circuit Court issued on

8    6/1/2020 Re: Appeal on Appellate Case Number: 17-3059. The

9    Court of Appeals VACATES the bankruptcy courts judgments

10   dismissing these actions and REMAND for further proceedings

11   consistent with this opinion. (related document(s)95, 99)

12   (Rouzeau, Anatin)

13

14   HEARING re 11-02538 Doc# 102 Notice of Hearing on Status

15   Conference (related document(s)99) filed by Error: party not

16   known. with hearing to be held on 9/15/2021 at 10:00 AM at

17   Videoconference (ZoomGov) (CGM) Doc. #99 Copy of Mandate

18   from Circuit Court issued on 6/1/2020 Re: Appeal on

19   Appellate Case Number: 17-3032. The Court of Appeals VACATES

20   the bankruptcy courts judgments dismissing these actions and

21   REMAND for further proceedings consistent with this opinion.

22   (related document(s)96, 92) (Rouzeau, Anatin)

23

24   HEARING re 11-02539-cgm Doc# 116 Notice of Hearing on Status

25   Conference (related document(s)112) filed by Clerk of Court,

1    United States Bankruptcy Court, SDNY. with hearing to be

2    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

3    (CGM) Doc. #112 Copy of Mandate from Circuit Court issued on

4    6/1/2020 Re: Appeal on Appellate Case Number: 17-3071. The

5    Court of Appeals VACATES the bankruptcy courts judgments

6    dismissing these actions and REMAND for further proceedings

7    consistent with this opinion. (related document(s)108, 104)

8    (Rouzeau, Anatin)

9

10   HEARING re 11-02540-cgm Doc# 104 Notice of Hearing on Status

11   Conference (related document(s)101) filed by Clerk of Court,

12   United States Bankruptcy Court, SDNY. with hearing to be

13   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

14   (CGM) Doc. #101 Copy of Mandate from Circuit Court issued on

15   6/1/2020 Re: Appeal on Appellate Case Number: 17-3106. The

16   Court of Appeals VACATES the bankruptcy courts judgments

17   dismissing these actions and REMAND for further proceedings

18   consistent with this opinion. (related document(s)95, 99)

19   (Rouzeau, Anatin)

20

21   HEARING re 11-02541-cgm Doc# 82 Notice of Hearing on Status

22   Conference (related document(s)79) filed by Clerk of Court,

23   United States Bankruptcy Court, SDNY. with hearing to be

24   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

25   (CGM) Doc. #79 Copy of Mandate from Circuit Court issued on

1    6/1/2020 Re: Appeal on Appellate Case Number: 17-3004. The

2    Court of Appeals VACATES the bankruptcy courts judgments

3    dismissing these actions and REMAND for further proceedings

4    consistent with this opinion. (related document(s)76, 72)

5    (Rouzeau, Anatin)

6

7    HEARING re 11-02542-cgm Doc# 88 Notice of Hearing on Status

8    Conference (related document(s)84) filed by Clerk of Court,

9    United States Bankruptcy Court, SDNY. with hearing to be

10   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

11   (CGM) Doc. #84 Copy of Mandate from Circuit Court issued on

12   6/1/2020 Re: Appeal on Appellate Case Number: 17-3005. The

13   Court of Appeals VACATES the bankruptcy courts judgments

14   dismissing these actions and REMAND for further proceedings

15   consistent with this opinion. (related document(s)80, 76)

16   (Rouzeau, Anatin)

17

18   HEARING re 11-02551-cgm Doc# 94 Notice of Hearing on Status

19   Conference (related document(s)78) filed by Clerk of Court,

20   United States Bankruptcy Court, SDNY. with hearing to be

21   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

22   (CGM) Doc. #78 (Entered in Error. Wrong Adversary Case.)

23   Statement /

                 Notice of Appeal (11-02551) filed by Thomas L.

24   Long on behalf of Irving H. Picard, Trustee for the

25   Liquidation of Bernard L. Madoff Investment Securities LLC,

1    and Bernard L. Madoff. (Attachments: # 1 Exhibit 1 # 2

2    Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4) (Long, Thomas)

3    Modified on 3/22/2017 (Rouzeau, Anatin).

4

5    HEARING re 11-02553-cgm Doc# 108 Notice of Hearing on Status

6    Conference (related document(s)105) filed by Clerk of Court,

7    United States Bankruptcy Court, SDNY. with hearing to be

8    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

9    (CGM) Doc. #105 Copy of Mandate from Circuit Court issued on

10   6/1/2020 Re: Appeal on Appellate Case Number: 17-3134. The

11   Court of Appeals VACATES the bankruptcy courts judgments

12   dismissing these actions and REMAND for further proceedings

13   consistent with this opinion. (related document(s)103, 99)

14   (Rouzeau, Anatin)

15

16   HEARING re 11-02554-cgm Doc# 102 Notice of Hearing on Status

17   Conference (related document(s)99) filed by Clerk of Court,

18   United States Bankruptcy Court, SDNY. with hearing to be

19   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

20   (CGM) Doc. #99 Copy of Mandate from Circuit Court issued on

21   6/1/2020 Re: Appeal on Appellate Case Number: 17-3008. The

22   Court of Appeals VACATES the bankruptcy courts judgments

23   dismissing these actions and REMAND for further proceedings

24   consistent with this opinion. (related document(s)97, 93)

25   (Rouzeau, Anatin)

1

2    HEARING re 11-02568-cgm Doc# 109 Notice of Hearing on Status

3    Conference (related document(s)106) filed by Clerk of Court,

4    United States Bankruptcy Court, SDNY. with hearing to be

5    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

6    (CGM) Doc. #106 Copy of Mandate from Circuit Court issued on

7    6/1/2020 Re: Appeal on Appellate Case Number: 17-3134. The

8    Court of Appeals VACATES the bankruptcy courts judgments

9    dismissing these actions and REMAND for further proceedings

10   consistent with this opinion. (related document(s)104, 100)

11   (Rouzeau, Anatin)

12

13   HEARING re 11-02569-cgm Doc# 116 Notice of Hearing on Status

14   Conference (related document(s)113) filed by Clerk of Court,

15   United States Bankruptcy Court, SDNY. with hearing to be

16   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

17   (CGM) Doc. #113 Copy of Mandate from Circuit Court issued on

18   6/1/2020 Re: Appeal on Appellate Case Number: 17-3011. The

19   Court of Appeals VACATES the bankruptcy courts judgments

20   dismissing these actions and REMAND for further proceedings

21   consistent with this opinion. (related document(s)105, 109)

22   (Rouzeau, Anatin)

23

24   HEARING re 11-02570-cgm Doc# 104 Notice of Hearing on Status

25   Conference (related document(s)101) filed by Clerk of Court,

Page 40

1   United States Bankruptcy Court, SDNY. with hearing to be

2   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

3   (CGM) Doc. #101 Copy of Mandate from Circuit Court issued on

4   6/1/2020 Re: Appeal on Appellate Case Number: 17-3101. The

5   Court of Appeals VACATES the bankruptcy courts judgments

6   dismissing these actions and REMAND for further proceedings

7   consistent with this opinion. (related document(s)94, 99)

8   (Rouzeau, Anatin)

9

10  HEARING re 11-02572-cgm Doc# 126 Notice of Hearing on Status

11  Conference (related document(s)123) filed by Clerk of Court,

12  United States Bankruptcy Court, SDNY. with hearing to be

13  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

14  (CGM) Doc. #123 Copy of Mandate from Circuit Court issued on

15  6/1/2020 Re: Appeal on Appellate Case Number: 17-3043. The

16  Court of Appeals VACATES the bankruptcy courts judgments

17  dismissing these actions and REMAND for further proceedings

18  consistent with this opinion. (related document(s)117, 121)

19  (Rouzeau, Anatin)

20

21  HEARING re 11-02573-cgm Doc# 108 Amended Notice of Hearing

22  on Status Conference (related document(s)104) filed by Clerk

23  of Court, United States Bankruptcy Court, SDNY. with hearing

24  to be held on 9/15/2021 at 10:00 AM at Videoconference

25  (ZoomGov) (CGM) Doc. #104 Copy of Mandate from Circuit Court

1    issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

2    3038. The Court of Appeals VACATES the bankruptcy

3    courts judgments dismissing these actions and REMAND for

4    further proceedings consistent with this opinion. (related

5    document(s)102, 98) (Rouzeau, Anatin)

6

7    HEARING re 11-02730-cgm Doc# 96 Notice of Hearing on Status

8    Conference (related document(s)93) filed by Clerk of Court,

9    United States Bankruptcy Court, SDNY. with hearing to be

10   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

11   (CGM) Doc. #93 Copy of Mandate from Circuit Court issued on

12   6/1/2020 Re: Appeal on Appellate Case Number: 17-3034. The

13   Court of Appeals VACATES the bankruptcy courts judgments

14   dismissing these actions and REMAND for further proceedings

15   consistent with this opinion. (related document(s)86, 90)

16   (Rouzeau, Anatin)

17

18   HEARING re 11-02731-cgm Doc# 100 Notice of Hearing on Status

19   Conference (related document(s)97) filed by Clerk of Court,

20   United States Bankruptcy Court, SDNY. with hearing to be

21   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

22   (CGM) Doc. #97 Copy of Mandate from Circuit Court issued on

23   6/1/2020 Re: Appeal on Appellate Case Number: 17-3021. The

24   Court of Appeals VACATES the bankruptcy courts judgments

25   dismissing these actions and REMAND for further proceedings

1   consistent with this opinion. (related document(s)91, 95)

2   (Rouzeau, Anatin) Modified on 10/21/2020 (Rouzeau, Anatin).

3

4   HEARING re 11-02732-cgm Doc# 100 Notice of Hearing on Status

5   Conference (related document(s)97) filed by Clerk of Court,

6   United States Bankruptcy Court, SDNY. with hearing to be

7   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

8   (CGM) Doc. #97 Copy of Mandate from Circuit Court issued on

9   6/1/2020 Re: Appeal on Appellate Case Number: 17-3021. The

10  Court of Appeals VACATES the bankruptcy courts judgments

11  dismissing these actions and REMAND for further proceedings

12  consistent with this opinion. (related document(s)91, 95)

13  (Rouzeau, Anatin) Modified on 10/21/2020 (Rouzeau, Anatin).

14

15  HEARING re 11-02733-cgm Doc# 93 Notice of Hearing on Status

16  Conference (related document(s)89) filed by Clerk of Court,

17  United States Bankruptcy Court, SDNY. with hearing to be

18  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

19  (CGM) Doc. #89 Copy of Mandate from Circuit Court issued on

20  6/1/2020 Re: Appeal on Appellate Case Number: 17-3087. The

21  Court of Appeals VACATES the bankruptcy courts judgments

22  dismissing these actions and REMAND for further proceedings

23  consistent with this opinion. (related document(s)81, 87)

24  (Rouzeau, Anatin)

25

1    HEARING re 11-02733-cgm Doc# 93 Notice of Hearing on Status

2    Conference (related document(s)89) filed by Clerk of Court,

3    United States Bankruptcy Court, SDNY. with hearing to be

4    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

5    (CGM) Doc. #89 Copy of Mandate from Circuit Court issued on

6    6/1/2020 Re: Appeal on Appellate Case Number: 17-3087. The

7    Court of Appeals VACATES the bankruptcy courts judgments

8    dismissing these actions and REMAND for further proceedings

9    consistent with this opinion. (related document(s)81, 87)

10    (Rouzeau, Anatin)

11

12    HEARING re 11-02758-cgm Doc# 127 Notice of Hearing on Status

13    Conference (related document(s)124) filed by Clerk of Court,

14    United States Bankruptcy Court, SDNY. with hearing to be

15    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

16    (CGM) Doc. #124 Copy of Mandate from Circuit Court issued on

17    6/1/2020 Re: Appeal on Appellate Case Number: 17-3025. The

18    Court of Appeals VACATES the bankruptcy courts judgments

19    dismissing these actions and REMAND for further proceedings

20    consistent with this opinion. (related document(s)117, 112)

21    (Rouzeau, Anatin)

22

23    HEARING re 11-02758-cgm Doc# 88 Notice of Hearing on Status

24    Conference (related document(s)85) filed by Clerk of Court,

25    United States Bankruptcy Court, SDNY. with hearing to be

Page 44

1  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

2  (CGM) Doc. #85 Copy of Mandate from Circuit Court issued on

3  6/1/2020 Re: Appeal on Appellate Case Number: 17-3044. The

4  Court of Appeals VACATES the bankruptcy courts judgments

5  dismissing these actions and REMAND for further proceedings

6  consistent with this opinion. (related document(s)83, 77)

7  (Rouzeau, Anatin)

8

9  HEARING re 11-02760-cgm Doc# 107 Notice of Hearing on Status

10  Conference (related document(s)104) filed by Clerk of Court,

11  United States Bankruptcy Court, SDNY. with hearing to be

12  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

13  (CGM) Doc. #104 Copy of Mandate from Circuit Court issued on

14  6/1/2020 Re: Appeal on Appellate Case Number: 17-3862. The

15  Court of Appeals VACATES the bankruptcy courts judgments

16  dismissing these actions and REMAND for further proceedings

17  consistent with this opinion. (related document(s)75, 77)

18  (Rouzeau, Anatin)

19

20  HEARING re 11-02761-cgm Doc# 98 Notice of Hearing on Status

21  Conference (related document(s)93) filed by Clerk of Court,

22  United States Bankruptcy Court, SDNY. with hearing to be

23  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

24  (CGM) Doc. #93 Copy of Mandate from Circuit Court issued on

25  6/1/2020 Re: Appeal on Appellate Case Number: 17-3140. The

Page 45

1   Court of Appeals VACATES the bankruptcy courts judgments

2   dismissing these actions and REMAND for further proceedings

3   consistent with this opinion. (related document(s)87, 81)

4   (Rouzeau, Anatin)

5

6   HEARING re 11-02762-cgm Doc# 95 Notice of Hearing RE: Status

7   Conference on the Copy of Mandate from Circuit Court issued

8   on 6/1/2020 Re: Appeal on Appellate Case Number: 17-3132.

9   The Court of Appeals VACATES the bankruptcy courts judgments

10  dismissing these actions and REMAND for further proceedings

11  consistent with this opinion. (related document(s)92) filed

12  by Clerk of Court, United States Bankruptcy Court, SDNY.

13  With hearing to be held on 9/15/2021 at 10:00 AM at

14  Videoconference (ZoomGov) (CGM) Doc. #92 Copy of Mandate

15  from Circuit Court issued on 6/1/2020 Re: Appeal on

16  Appellate Case Number: 17-3132. The Court of Appeals VACATES

17  the bankruptcy courts judgments dismissing these actions and

18  REMAND for further proceedings consistent with this opinion.

19  (related document(s)90, 85) (Rouzeau, Anatin)

20

21  HEARING re 11-02763-cgm Doc# 104 Notice of Hearing on Status

22  Conference (related document(s)101) filed by Clerk of Court,

23  United States Bankruptcy Court, SDNY. with hearing to be

24  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

25  (CGM) Doc. #101 Copy of Mandate from Circuit Court issued on

1   6/1/2020 Re: Appeal on Appellate Case Number: 17-3136. The

2   Court of Appeals VACATES the bankruptcy courts judgments

3   dismissing these actions and REMAND for further proceedings

4   consistent with this opinion. (related document(s)95, 99)

5   (Rouzeau, Anatin)

6

7   HEARING re 11-02784-cgm Doc# 117 Notice of Hearing on Status

8   Conference (related document(s)114) filed by Clerk of Court,

9   United States Bankruptcy Court, SDNY. with hearing to be

10  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

11  (CGM) Doc. #114 Copy of Mandate from Circuit Court issued on

12  6/1/2020 Re: Appeal on Appellate Case Number: 17-3102. The

13  Court of Appeals VACATES the bankruptcy courts judgments

14  dismissing these actions and REMAND for further proceedings

15  consistent with this opinion. (related document(s)105, 111)

16  (Rouzeau, Anatin)

17

18  HEARING re 11-02796-cgm Doc# 93 Notice of Hearing on Status

19  Conference (related document(s)90) filed by Clerk of Court,

20  United States Bankruptcy Court, SDNY. with hearing to be

21  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

22  (CGM) Doc. #90 Copy of Mandate from Circuit Court issued on

23  6/1/2020 Re: Appeal on Appellate Case Number: 17-3069. The

24  Court of Appeals VACATES the bankruptcy courts judgments

25  dismissing these actions and REMAND for further proceedings

1   consistent with this opinion. (related document(s)81, 87)

2   (Rouzeau, Anatin)

3

4   HEARING re 11-02901-cgm Doc# 105 Notice of Hearing on Status

5   Conference (related document(s)101) filed by Clerk of Court,

6   United States Bankruptcy Court, SDNY. with hearing to be

7   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

8   (CGM) Doc. #101 Copy of Mandate from Circuit Court issued on

9   6/1/2020 Re: Appeal on Appellate Case Number: 17-3040. The

10  Court of Appeals VACATES the bankruptcy courts judgments

11  dismissing these actions and REMAND for further proceedings

12  consistent with this opinion. (related document(s)98, 94)

13  (Rouzeau, Anatin)

14

15  HEARING re 11-02922-cgm Doc# 107 Notice of Hearing on Status

16  Conference (related document(s)102) filed by Clerk of Court,

17  United States Bankruptcy Court, SDNY. with hearing to be

18  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

19  (CGM) Doc. #102 Copy of Mandate from Circuit Court issued on

20  6/1/2020 Re: Appeal on Appellate Case Number: 17-3019. The

21  Court of Appeals VACATES the bankruptcy courts judgments

22  dismissing these actions and REMAND for further proceedings

23  consistent with this opinion. (related document(s)97, 93)

24  (Rouzeau, Anatin)

25

Page 48

1    HEARING re 11-02923-cgm Doc# 115 Notice of Hearing on Status

2    Conference (related document(s)112) filed by Clerk of Court,

3    United States Bankruptcy Court, SDNY. with hearing to be

4    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

5    (CGM) Doc. #112 Copy of Mandate from Circuit Court issued on

6    6/1/2020 Re: Appeal on Appellate Case Number: 17-3067. The

7    Court of Appeals VACATES the bankruptcy courts judgments

8    dismissing these actions and REMAND for further proceedings

9    consistent with this opinion. (related document(s)108, 103)

10   (Rouzeau, Anatin)

11

12   HEARING re 11-02925-cgm Doc# 99 Notice of Hearing on Status

13   Conference (related document(s)96) filed by Clerk of Court,

14   United States Bankruptcy Court, SDNY. with hearing to be

15   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

16   (CGM) Doc. #96 Copy of Mandate from Circuit Court issued on

17   6/1/2020 Re: Appeal on Appellate Case Number: 17-3080. The

18   Court of Appeals VACATES the bankruptcy courts judgments

19   dismissing these actions and REMAND for further proceedings

20   consistent with this opinion. (related document(s)88, 92)

21   (Rouzeau, Anatin)

22

23   HEARING re 11-02929-cgm Doc# 90 Notice of Hearing on Status

24   Conference (related document(s)87) filed by Clerk of Court,

25   United States Bankruptcy Court, SDNY. with hearing to be

1   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

2   (CGM) Doc. #87 Copy of Mandate from Circuit Court issued on

3   6/1/2020 Re: Appeal on Appellate Case Number: 17-3126. The

4   Court of Appeals VACATES the bankruptcy courts judgments

5   dismissing these actions and REMAND for further proceedings

6   consistent with this opinion. (related document(s)82, 78)

7   (Rouzeau, Anatin)

8

9   HEARING re 12-01002-cgm Doc# 107 Notice of Hearing RE:

10  Status Conference on the Copy of Mandate from Circuit Court

11  issued on 6/1/2020 (related document(s)104) filed by Clerk

12  of Court, United States Bankruptcy Court, SDNY. with hearing

13  to be held on 9/15/2021 at 10:00 AM at Videoconference

14  (ZoomGov) (CGM) Doc. #104 Copy of Mandate from Circuit Court

15  issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

16  3109. The Court of Appeals VACATES the bankruptcy

17  courts judgments dismissing these actions and REMAND for

18  further proceedings consistent with this opinion. (related

19  document(s)102, 98) (Rouzeau, Anatin)

20

21  HEARING re 12-01004-cgm Doc# 100 Notice of Hearing RE:

22  Status Conference on the Copy of Mandate from Circuit Court

23  issued on 6/1/2020 (related document(s)97) filed by Clerk of

24  Court, United States Bankruptcy Court, SDNY. with hearing to

25  be held on 9/15/2021 at 10:00 AM at Videoconference

1     (ZoomGov) (CGM) Doc. #97 Copy of Mandate from Circuit Court

2     issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

3     3084. The Court of Appeals VACATES the bankruptcy

4     courts judgments dismissing these actions and REMAND for

5     further proceedings consistent with this opinion. (related

6     document(s)95, 91) (Rouzeau, Anatin)

7

8     HEARING re 12-01005-cgm Doc# 91 Notice of Hearing RE: Status

9     Conference on the Copy of Mandate from Circuit Court issued

10    on 6/1/2020 (related document(s)88) filed by Clerk of Court,

11    United States Bankruptcy Court, SDNY. with hearing to be

12    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

13    (CGM) Doc. #88 Copy of Mandate from Circuit Court issued on

14    6/1/2020 Re: Appeal on  Appellate Case Number: 17-3064. The

15    Court of Appeals VACATES the bankruptcy courts judgments

16    dismissing these actions and REMAND for further proceedings

17    consistent with this opinion. (related document(s)85, 80)

18    (Rouzeau, Anatin)

19

20    HEARING re 12-01019-cgm Doc# 111 Notice of Hearing RE:

21    Status Conference on the Copy of Mandate from Circuit Court

22    issued on 6/1/2020 (related document(s)108) filed by Clerk

23    of Court, United States Bankruptcy Court, SDNY. with hearing

24    to be held on 9/15/2021 at 10:00 AM at Videoconference

25    (ZoomGov) (CGM) Doc. #108 Copy of Mandate from Circuit Court

1     issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

2     3054. The Court of Appeals VACATES the bankruptcy

3     courts judgments dismissing these actions and REMAND for

4     further proceedings consistent with this opinion. (related

5     document(s)106, 102) (Rouzeau, Anatin)

6

7     HEARING re 12-01021-cgm Doc# 99 Notice of Hearing RE: Status

8     Conference on the Copy of Mandate from Circuit Court issued

9     on 6/1/2020 (related document(s)96) filed by Clerk of Court,

10    United States Bankruptcy Court, SDNY. with hearing to be

11    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

12    (CGM) Doc. #96 Copy of Mandate from Circuit Court issued on

13    6/1/2020 Re: Appeal on Appellate Case Number: 17-2999. The

14    Court of Appeals VACATES the bankruptcy courts judgments

15    dismissing these actions and REMAND for further proceedings

16    consistent with this opinion. (related document(s)94, 90)

17    (Rouzeau, Anatin)

18

19    HEARING re 12-01022-cgm Doc# 105 Notice of Hearing RE:

20    Status Conference on the Copy of Mandate from Circuit Court

21    issued on 6/1/2020 (related document(s)102) filed by Clerk

22    of Court, United States Bankruptcy Court, SDNY. with hearing

23    to be held on 9/15/2021 at 10:00 AM at Videoconference

24    (ZoomGov) (CGM) Doc. #102 Copy of Mandate from Circuit Court

25    issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

1    3026. The Court of Appeals VACATES the bankruptcy

2    courts judgments dismissing these actions and REMAND for

3    further proceedings consistent with this opinion. (related

4    document(s)99, 95) (Rouzeau, Anatin)

5

6    HEARING re 12-01023-cgm Doc# 113 Notice of Hearing RE:

7    Status Conference on the Copy of Mandate from Circuit Court

8    issued on 6/1/2020 (related document(s)110) filed by Clerk

9    of Court, United States Bankruptcy Court, SDNY. with hearing

10   to be held on 9/15/2021 at 10:00 AM at Videoconference

11   (ZoomGov) (CGM) Doc. #110 Copy of Mandate from Circuit Court

12   issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

13   3012. The Court of Appeals VACATES the bankruptcy

14   courts judgments dismissing these actions and REMAND for

15   further proceedings consistent with this opinion. (related

16   document(s)101, 106) (Rouzeau, Anatin)

17

18   HEARING re 12-01046-cgm Doc# 107 Notice of Hearing RE:

19   Status Conference on the Copy of Mandate from Circuit Court

20   issued on 6/1/2020 (related document(s)104) filed by Clerk

21   of Court, United States Bankruptcy Court, SDNY. with hearing

22   to be held on 9/15/2021 at 10:00 AM at Videoconference

23   (ZoomGov) (CGM) Doc. #104 Copy of Mandate from Circuit Court

24   issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

25   3014. The Court of Appeals VACATES the bankruptcy courts

Page 53

1    judgments dismissing these actions and REMAND for further

2    proceedings consistent with this opinion. (related

3    document(s)97, 101) (Rouzeau, Anatin)

4

5    HEARING re 12-01047-cgm Doc# 100 Notice of Hearing RE:

6    Status Conference on the Copy of Mandate from Circuit Court

7    issued on 6/1/2020 (related document(s)96) filed by Clerk of

8    Court, United States Bankruptcy Court, SDNY. with hearing to

9    be held on 9/15/2021 at 10:00 AM at Videoconference

10   (ZoomGov) (CGM) Doc. #96 Copy of Mandate from Circuit Court

11   issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

12   3016. The Court of Appeals VACATES the bankruptcy

13   courts judgments dismissing these actions and REMAND for

14   further proceedings consistent with this opinion. (related

15   document(s)90, 94) (Rouzeau, Anatin)

16

17   HEARING re 12-01048-cgm Doc# 69 Notice of Hearing RE: Status

18   Conference on the Copy of Mandate from Circuit Court issued

19   on 6/1/2020 (related document(s)65) filed by Clerk of Court,

20   United States Bankruptcy Court, SDNY. with hearing to be

21   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

22   (CGM) Doc. #65 Copy of Mandate from Circuit Court issued on

23   6/1/2020 Re: Appeal on Appellate Case Number: 17-3144. The

24   Court of Appeals VACATES the bankruptcy courts judgments

25   dismissing these actions and REMAND for further proceedings

1   consistent with this opinion.(related document(s)61, 60)

2   (Rouzeau, Anatin)

3

4   HEARING re 12-011940cgm Doc# 69 Notice of Hearing RE: Status

5   Conference on the Copy of Mandate from Circuit Court issued

6   on 6/1/2020 (related document(s)65) filed by Clerk of Court,

7   United States Bankruptcy Court, SDNY. with hearing to be

8   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

9   (CGM) Doc. #65 Copy of Mandate from Circuit Court issued on

10  6/1/2020 Re: Appeal on Appellate Case Number: 17-3144. The

11  Court of Appeals VACATES the bankruptcy courts judgments

12  dismissing these actions and REMAND for further proceedings

13  consistent with this opinion.(related document(s)61, 60)

14  (Rouzeau, Anatin)

15

16  HEARING re 12-01195-cgm Doc# 112 Notice of Hearing RE:

17  Status Conference on the Copy of Mandate from Circuit Court

18  issued on 6/1/2020 (related document(s)109) filed by Clerk

19  of Court, United States Bankruptcy Court, SDNY. with hearing

20  to be held on 9/15/2021 at 10:00 AM at Videoconference

21  (ZoomGov) (CGM) Doc. #109 Copy of Mandate from Circuit Court

22  issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

23  3020. The Court of Appeals VACATES the bankruptcy

24  courts judgments dismissing these actions and REMAND for

25  further proceedings consistent with this opinion. (related

1    document(s)101, 105) (Rouzeau, Anatin)

2

3    HEARING re 12-01202-cgm Doc# 107 Notice of Hearing RE:

4    Status Conference on the Copy of Mandate from Circuit Court

5    issued on 6/1/2020 (related document(s)104) filed by Clerk

6    of Court, United States Bankruptcy Court, SDNY. with hearing

7    to be held on 9/15/2021 at 10:00 AM at Videoconference

8    (ZoomGov) (CGM) Doc. #104 Copy of Mandate from Circuit Court

9    issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

10   3068. The Court of Appeals VACATES the bankruptcy

11   courts judgments dismissing these actions and REMAND for

12   further proceedings consistent with this opinion. (related

13   document(s)102, 97) (Rouzeau, Anatin)

14

15   HEARING re 12-01205-cgm Doc# 86 Notice of Hearing RE: Status

16   Conference on the Copy of Mandate from Circuit Court issued

17   on 6/1/2020 (related document(s)82) filed by Clerk of Court,

18   United States Bankruptcy Court, SDNY. with hearing to be

19   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

20   (CGM) Doc. #82 Copy of Mandate from Circuit Court issued on

21   6/1/2020 Re: Appeal on Appellate Case Number: 17-3074. The

22   Court of Appeals VACATES the bankruptcy courts judgments

23   dismissing these actions and REMAND for further proceedings

24   consistent with this opinion. (related document(s)76, 80)

25   (Rouzeau, Anatin)

Page 56

1

2      HEARING re 12-01207-cgm Doc# 82 Notice of Hearing RE: Status

3      Conference on the Copy of Mandate from Circuit Court issued

4      on 6/1/2020 (related document(s)79) filed by Clerk of Court,

5      United States Bankruptcy Court, SDNY. with hearing to be

6      held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

7      (CGM) Doc. #79 Copy of Mandate from Circuit Court issued on

8      6/1/2020 Re: Appeal on Appellate Case Number: 17-3033. The

9      Court of Appeals VACATES the bankruptcy courts judgments

10     dismissing these actions and REMAND for further proceedings

11     consistent with this opinion.(related document(s)73, 77)

12     (Rouzeau, Anatin)

13

14     HEARING re 12-01209-cgm Doc# 112 Notice of Hearing RE:

15     Status Conference on the Copy of Mandate from Circuit Court

16     issued on 6/1/2020 (related document(s)105) filed by Clerk

17     of Court, United States Bankruptcy Court, SDNY. with hearing

18     to be held on 9/15/2021 at 10:00 AM at Videoconference

19     (ZoomGov) (CGM) Doc. #105 Copy of Mandate from Circuit Court

20     issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

21     3003. The Court of Appeals VACATES the bankruptcy

22     courts judgments dismissing these actions and REMAND for

23     further proceedings consistent with this opinion. (related

24     document(s)98, 102) (Rouzeau, Anatin)

25

1   HEARING re 12-01210-cgm Doc# 87 Notice of Hearing RE: Status

2   Conference on the Copy of Mandate from Circuit Court issued

3   on 6/1/2020 (related document(s)84) filed by Clerk of Court,

4   United States Bankruptcy Court, SDNY. with hearing to be

5   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

6   (CGM) Doc. #84 Copy of Mandate from Circuit Court issued on

7   6/1/2020 Re: Appeal on Appellate Case Number: 17-3023. The

8   Court of Appeals VACATES the bankruptcy courts judgments

9   dismissing these actions and REMAND for further proceedings

10  consistent with this opinion. (related document(s)81, 77)

11  (Rouzeau, Anatin)

12

13  HEARING re 12-01211-cgm Doc# 95 Notice of Hearing RE: Status

14  Conference on the Copy of Mandate from Circuit Court issued

15  on 6/1/2020 (related document(s)92) filed by Clerk of Court,

16  United States Bankruptcy Court, SDNY. with hearing to be

17  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

18  (CGM) Doc. #92 Copy of Mandate from Circuit Court issued on

19  6/1/2020 Re: Appeal on Appellate Case Number: 17-2995. The

20  Court of Appeals VACATES the bankruptcy courts judgments

21  dismissing these actions and REMAND for further proceedings

22  consistent with this opinion.(related document(s)88, 84)

23  (Rouzeau, Anatin)

24

25  HEARING re 12-01216-cgm Doc# 111 Notice of Hearing RE:

1    Status Conference on the Copy of Mandate from Circuit Court

2    issued on 6/1/2020 (related document(s)108) filed by Clerk

3    of Court, United States Bankruptcy Court, SDNY. with hearing

4    to be held on 9/15/2021 at 10:00 AM at Videoconference

5    (ZoomGov) (CGM) Doc. #108 Copy of Mandate from Circuit Court

6    issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

7    3072. The Court of Appeals VACATES the bankruptcy

8    courts judgments dismissing these actions and REMAND for

9    further proceedings consistent with this opinion.(related

10   document(s)102, 106) (Rouzeau, Anatin)

11

12   HEARING re 12-01512-cgm Doc# 97 Notice of Hearing RE: Status

13   Conference on the Copy of Mandate from Circuit Court issued

14   on 6/1/2020 (related document(s)91) filed by Clerk of Court,

15   United States Bankruptcy Court, SDNY. with hearing to be

16   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

17   (CGM) Doc. #91 Copy of Mandate from Circuit Court issued on

18   6/1/2020 Re: Appeal on Appellate Case Number: 17-3075. The

19   Court of Appeals VACATES the bankruptcy courts judgments

20   dismissing these actions and REMAND for further proceedings

21   consistent with this opinion. (related document(s)88, 84)

22   (Rouzeau, Anatin)

23

24   HEARING re 12-015665-cgm Doc# 142 Notice of Hearing on

25   Status Conference filed by Clerk of Court, United

1   States Bankruptcy Court, SDNY. with hearing to be held on

2   9/15/2021 at 10:00 AM at Videoconference (ZoomGov) (CGM)

3

4   HEARING re 12-01566-cgm Doc# 77 Notice of Hearing RE: Status

5   Conference on the Copy of Mandate from Circuit Court issued

6   on 6/1/2020 (related document(s)74) filed by Clerk of Court,

7   United States Bankruptcy Court, SDNY. with hearing to be

8   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

9   (CGM) Doc. #74 Copy of Mandate from Circuit Court issued on

10  6/1/2020 Re: Appeal on Appellate Case Number: 17-3073. The

11  Court of Appeals VACATES the bankruptcy courts judgments

12  dismissing these actions and REMAND for further proceedings

13  consistent with this opinion.(related document(s)70, 66)

14  (Rouzeau, Anatin)

15

16  HEARING re 12-01577-cgm Doc# 94 Notice of Hearing RE: Status

17  Conference on the Copy of Mandate from Circuit Court issued

18  on 6/1/2020 (related document(s)91) filed by Clerk of Court,

19  United States Bankruptcy Court, SDNY. with hearing to be

20  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

21  (CGM) Doc. #91 Copy of Mandate from Circuit Court issued on

22  6/1/2020 Re: Appeal on Appellate Case Number: 17-3100. The

23  Court of Appeals VACATES the bankruptcy courts judgments

24  dismissing these actions and REMAND for further proceedings

25  consistent with this opinion. (related document(s)82, 87)

Page 60

1   (Rouzeau, Anatin)

2

3   HEARING re 12-016690-cgm Doc# 82 Notice of Hearing RE:

4   Status Conference on the Copy of Mandate from Circuit Court

5   issued on 6/1/2020 (related document(s)79) filed by Clerk of

6   Court, United States Bankruptcy Court, SDNY. with hearing to

7   be held on 9/15/2021 at 10:00 AM at Videoconference

8   (ZoomGov) (CGM) Doc. #79 Copy of Mandate from Circuit Court

9   issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

10  3041. The Court of Appeals VACATES the bankruptcy

11  courts judgments dismissing these actions and REMAND for

12  further proceedings consistent with this opinion. (related

13  document(s)73, 77) (Rouzeau, Anatin)

14

15  HEARING re 12-01669-cgm Doc# 52 Notice of Hearing RE: Status

16  Conference on the Copy of Mandate from Circuit Court issued

17  on 6/1/2020 (related document(s)49) filed by Clerk of Court,

18  United States Bankruptcy Court, SDNY. with hearing to be

19  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

20  (CGM) Doc. #49 Copy of Mandate from Circuit Court issued on

21  6/1/2020 Re: Appeal on Appellate Case Number: 17-3042. The

22  Court of Appeals VACATES the bankruptcy courts judgments

23  dismissing these actions and REMAND for further proceedings

24  consistent with this opinion. (related document(s)42, 46)

25  (Rouzeau, Anatin)

Page 61

1

2    HEARING re 12-01670-cgm Doc# 52 Notice of Hearing RE: Status

3    Conference on the Copy of Mandate from Circuit Court issued

4    on 6/1/2020 (related document(s)49) filed by Clerk of Court,

5    United States Bankruptcy Court, SDNY. with hearing to be

6    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

7    (CGM) Doc. #49 Copy of Mandate from Circuit Court issued on

8    6/1/2020 Re: Appeal on Appellate Case Number: 17-3042. The

9    Court of Appeals VACATES the bankruptcy courts judgments

10   dismissing these actions and REMAND for further proceedings

11   consistent with this opinion. (related document(s)42, 46)

12   (Rouzeau, Anatin)

13

14   HEARING re 12-01676-cgm Doc# 82 Notice of Hearing RE: Status

15   Conference on the Copy of Mandate from Circuit Court issued

16   on 6/1/2020 (related document(s)79) filed by Clerk of Court,

17   United States Bankruptcy Court, SDNY. with hearing to be

18   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

19   (CGM) Doc. #79 Copy of Mandate from Circuit Court issued on

20   6/1/2020 Re: Appeal on Appellate Case Number: 17-3091. The

21   Court of Appeals VACATES the bankruptcy courts judgments

22   dismissing these actions and REMAND for further proceedings

23   consistent with this opinion. (related document(s)76, 72)

24   (Rouzeau, Anatin)

25

Page 62

1   HEARING re 12-01677-cgm Doc# 128 Notice of Hearing RE:

2   Status Conference on the Copy of Mandate from Circuit Court

3   issued on 6/1/2020 (related document(s)125) filed by Clerk

4   of Court, United States Bankruptcy Court, SDNY. with hearing

5   to be held on 9/15/2021 at 10:00 AM at Videoconference

6   (ZoomGov) (CGM) Doc. #125 Copy of Mandate from Circuit Court

7   issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

8   3047. The Court of Appeals VACATES the bankruptcy

9   courts judgments dismissing these actions and REMAND for

10  further proceedings consistent with this opinion.(Rouzeau,

11  Anatin)

12

13  HEARING re 12-01680-cgm Doc# 89 Notice of Hearing RE: Status

14  Conference on the Copy of Mandate from Circuit Court issued

15  on 6/1/2020 (related document(s)86) filed by Clerk of Court,

16  United States Bankruptcy Court, SDNY. with hearing to be

17  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

18  (CGM) Doc. #86 Copy of Mandate from Circuit Court issued on

19  6/1/2020 Re: Appeal on Appellate Case Number: 17-3050. The

20  Court of Appeals VACATES the bankruptcy courts judgments

21  dismissing these actions and REMAND for further proceedings

22  consistent with this opinion. (related document(s)80, 84)

23  (Rouzeau, Anatin)

24

25  HEARING re 12-01690-cgm Doc# 91 Notice of Hearing RE: Status

Page 63

1    Conference on the Copy of Mandate from Circuit Court issued

2    on 6/1/2020 (related document(s)85) filed by Clerk of Court,

3    United States Bankruptcy Court, SDNY. with hearing to be

4    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

5    (CGM) Doc. #85 Copy of Mandate from Circuit Court issued on

6    6/1/2020 Re: Appeal on Appellate Case Number: 17-3115. The

7    Court of Appeals VACATES the bankruptcy courts judgments

8    dismissing these actions and REMAND for further proceedings

9    consistent with this opinion.(related document(s)72, 76)

10   (Rouzeau, Anatin)

11

12   HEARING re 12-01693-cgm Doc# 83 Notice of Hearing RE: Status

13   Conference on the Copy of Mandate from Circuit Court issued

14   on 6/1/2020 (related document(s)76) filed by Clerk of Court,

15   United States Bankruptcy Court, SDNY. with hearing to be

16   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

17   (CGM) Doc. #76 Copy of Mandate from Circuit Court issued on

18   6/1/2020 Re: Appeal on Appellate Case Number: 17-2992. The

19   Court of Appeals VACATES the bankruptcy courts judgments

20   dismissing these actions and REMAND for further proceedings

21   consistent with this opinion. (related document(s)69, 73)

22   (Rouzeau, Anatin)

23

24   HEARING re 12-01694-cgm Doc# 82 Notice of Hearing RE: Status

25   Conference on the Copy of Mandate from Circuit Court issued

1    on 6/1/2020 (related document(s)79) filed by Clerk of Court,

2    United States Bankruptcy Court, SDNY. with hearing to be

3    held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

4    (CGM) Doc. #79 Copy of Mandate from Circuit Court issued on

5    6/1/2020 Re: Appeal on Appellate Case Number: 17-2996. The

6    Court of Appeals VACATES the bankruptcy courts judgments

7    dismissing these actions and REMAND for further proceedings

8    consistent with this opinion. (related document(s)72, 76)

9    (Rouzeau, Anatin)

10

11   HEARING re 12-01695-cgm Doc# 79 Notice of Hearing RE: Status

12   Conference on the Copy of Mandate from Circuit Court issued

13   on 6/1/2020 (related document(s)76) filed by Clerk of Court,

14   United States Bankruptcy Court, SDNY. with hearing to be

15   held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

16   (CGM) Doc. #76 Copy of Mandate from Circuit Court issued on

17   6/1/2020 Re: Appeal on Appellate Case Number: 17-3112. The

18   Court of Appeals VACATES the bankruptcy courts judgments

19   dismissing these actions and REMAND for further proceedings

20   consistent with this opinion. (related document(s)69, 73)

21   (Rouzeau, Anatin)

22

23   HEARING re 12-01695-cgm Doc# 133 Notice of Hearing RE:

24   Status Conference on the Copy of Mandate from Circuit Court

25   issued on 6/1/2020 (related document(s)130) filed by Clerk

Page 65

1     of Court, United States Bankruptcy Court, SDNY. with hearing

2     to be held on 9/15/2021 at 10:00 AM at Videoconference

3     (ZoomGov) (CGM) Doc. #130 Copy of Mandate from Circuit Court

4     issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

5     3065. The Court of Appeals VACATES the bankruptcy

6     courts judgments dismissing these actions and REMAND for

7     further proceedings consistent with this opinion. der

8     (related document(s)121, 125) (Rouzeau, Anatin)

9

10     HEARING re 12-01700-cgm Doc# 101 Notice of Hearing RE:

11     Status Conference on the Copy of Mandate from Circuit Court

12     issued on 6/1/2020 (related document(s)98) filed by Clerk of

13     Court, United States Bankruptcy Court, SDNY. with hearing to

14     be held on 9/15/2021 at 10:00 AM at Videoconference

15     (ZoomGov) (CGM) Doc. #98 Copy of Mandate from Circuit Court

16     issued on 6/1/2020 Re: Appeal on Appellate Case Number: 17-

17     3076. The Court of Appeals VACATES the bankruptcy

18     courts judgments dismissing these actions and REMAND for

19     further proceedings consistent with this opinion. (related

20     document(s)90, 95) (Rouzeau, Anatin)

21

22     HEARING re 10-04538-cgm Doc# 97 Notice of Hearing for

23     failure to submit order (related document(s)89) filed by

24     Clerk of Court, United States Bankruptcy Court, SDNY. with

25     hearing to be held on 9/15/2021 at 10:00 AM at

1    Videoconference (ZoomGov) (CGM) Doc. #89 Motion to Approve

2    /Memorandum of Law in Support of Trustee's Motion for

3    Limited Additional Discovery Based on Prior Orders

4    Authorizing Deposition of Bernard L. Madoff filed by David

5    J. Sheehan on behalf of Irving H. Picard, Trustee for

6    the Liquidation of Bernard L. Madoff Investment Securities

7    LLC, and Bernard L. Madoff. (Attachments: # 1 Exhibit A:

8    Remaining Good Faith Cases # 2 Exhibit B:

9    Cases Participating in Madoffs Deposition # 3 Exhibit C:

10   Cases Not Participating in Madoffs Deposition # 4 Exhibit D:

11   Cases with Open Fact Discovery # 5 Exhibit E:

12   Cases with Closed Fact Discovery with CMOs # 6 Exhibit F:

13   Cases with Served Expert Reports # 7 Exhibit G: Bongiorno

14   Rule 30 Order # 8 Exhibit H: Bonventre Rule 30

15   Order # 9 Exhibit I : Crupi Rule 30 O

16

17   HEARING re 10-04631-cgm Doc# 53 Notice of Hearing for

18   failure to submit order (related document(s)44) filed by

19   Clerk of Court, United States Bankruptcy Court, SDNY. with

20   hearing to be held on 9/15/2021 at 10:00 AM at

21   Videoconference (ZoomGov) (CGM) Doc. #44 Motion to Approve

22   /Memorandum of Law in Support of Trustee's Motion for

23   Limited Additional Discovery Based on Prior Orders

24   Authorizing Deposition of Bernard L. Madoff filed by David

25   J. Sheehan on behalf of Irving H. Picard trustee for

1   the liquidation of Bernard L. Madoff Investment Securities

2   LLC with hearing to be held on 10/31/2018 at 10:00 AM at

3   Courtroom 723 (SMB) Responses due by 10/17/2018.

4   (Attachments: # 1 Exhibit A: Remaining Good Faith Cases # 2

5   Exhibit B: Cases Participating in Madoff's Deposition # 3

6   Exhibit C: Cases Not Participating in Madoff's Deposition #

7   4 Exhibit D: Cases with Open Fact Discovery # 5 Exhibit E:

8   Cases with Closed Fact Discovery with CMOs # 6 Exhibit F:

9   Cases with Served Expert Reports #7 Exhibit G: Bongiorno

10  Rule 30 Order # 8 Exhibit H: Bonventre Rule 30 Order # 9

11  Exhibit I: Crupi Rule 30 Order

12

13  HEARING re 10-04702-cgm Doc# 92 Notice of Hearing on Status

14  Conference (related document(s)88) filed by Clerk of Court,

15  United States Bankruptcy Court, SDNY. with hearing to be

16  held on 9/15/2021 at 10:00 AM at Videoconference (ZoomGov)

17  (CGM) Doc. #88 Mediator's Final Report Settled Filed by

18  Allen G. Kadish on behalf of Allen G. Kadish. (Kadish,

19  Allen)

20

21  HEARING re 10-04702-cgm Doc# 84 Notice of Hearing for

22  failure to submit order (related document(s)76) filed by

23  Clerk of Court, United States Bankruptcy Court, SDNY. with

24  hearing to be held on 9/15/2021 at 10:00 AM at

25  Videoconference (ZoomGov) (CGM) Doc. #76 Motion to Approve

Page 68

1   /Memorandum of Law in Support of Trustee's Motion for

2   Limited Additional Discovery Based on Prior Orders

3   Authorizing Deposition of Bernard L. Madoff filed by David

4   J. Sheehan on behalf of Irving H. Picard, Trustee for

5   the Liquidation of Bernard L. Madoff Investment Securities

6   LLC with hearing to be held on 10/31/2018 at 10:00 AM at

7   Courtroom 723 (SMB) Responses due by 10/17/2018,.

8   (Attachments: # 1 Exhibit A: Remaining Good Faith Cases # 2

9   Exhibit B: Cases Participating in Madoffs Deposition # 3

10   Exhibit C: Cases Not Participating in Madoffs Deposition # 4

11   Exhibit D: Cases with Open Fact Discovery # 5 Exhibit E:

12   Cases with Closed Fact Discovery with CMOs # 6 Exhibit F:

13   Cases with Served Expert Reports # 7 Exhibit G: Bongiorno

14   Rule 30 Order # 8 Exhibit H: Bonventre Rule 30 Order # 9

15   Exhibit I: Crupi Rule 30 Order # 10 Exhibit J: Main Proposed

16   Order # 11 Notice of Motion) (Sheehan, David)

17

18   HEARING re 10-05286-cgm Doc# 251 Notice of Hearing on the

19   Order of U.S. District Court Judge signed on 8/31/2021.

20   (related document(s)250) filed by Clerk of Court, United

21   States Bankruptcy Court, SDNY. with hearing to be held on

22   9/15/2021 at 10:00 AM at Videoconference (ZoomGov) (CGM)

23   Doc. #250 Order of U.S. Circuit Court Judge signed on

24   8/31/2021 (DuBois, Linda) Additional attachment(s) added on

25   8/31/2021 (DuBois, Linda).

1

2    HEARING re 10-053450cgm Doc# 204 Notice of Hearing on the

3    Order of U.S. District Court Judge signed on 8/31/2021.

4    (related document(s)203) filed by Clerk of Court, United

5    States Bankruptcy Court, SDNY. with hearing to be held on

6    9/15/2021 at 10:00 AM at Videoconference (ZoomGov) (CGM)

7    Doc. #203 Order of U.S. Circuit Court Judge signed on

8    8/31/2021. (DuBois, Linda) Additional attachment(s) added on

9    8/31/2021 (DuBois, Linda).

10

11   HEARING re 10-053530-cgm Doc# 188 Notice of Hearing on

12   Status Conference filed by Clerk of Court, United States

13   Bankruptcy Court, SDNY. with hearing to be held on 9/15/2021

14   at 10:00 AM at Videoconference (ZoomGov) (CGM)

15

16   HEARING re 10-04539-cgm Doc# 110 Cross Motion for Summary

17   Judgment Notice of Defendants' Cross Motion

18   for Summary Judgment (related document(s)99) filed by Helen

19   Davis Chaitman on behalf of Barbara Keller, Gerald E.

20   Keller, The Gerald and Barbara Keller Family Trust

21   Doc# 111 Memorandum of Law Memorandum of Law in Opposition

22   to the Trustees Motion for Summary Judgment and in Support

23   of Defendants Cross-Motion for

24   Summary Judgment Dismissing the Complaint (related

25   document(s)110) filed by Helen Davis Chaitman on behalf of

Page 70

1    Barbara Keller, Gerald E. Keller, The Gerald and Barbara

2    Keller Family Trust.

3    Doc# 112 Response to Motion Opposition and Response to

4    Trustees Statement of Material Facts, ECF no. 101 filed by

5    Helen Davis Chaitman on behalf of Barbara Keller, Gerald E.

6    Keller, The Gerald and Barbara Keller Family Trust.

7    Doc# 113 Counter Statement Counterstatement of Material

8    Facts in Opposition to the Trustees Motion for Summary

9    Judgment and in Support of Defendants Cross-Motion

10   for Summary Judgment Dismissing the Complaint filed by Helen

11   Davis Chaitman on behalf of Barbara Keller, Gerald E.

12   Keller, The Gerald and Barbara Keller Family

13   Trust.

14   Doc# 99 Motion for Summary Judgment /Notice of Trustees

15   Motion for Summary Judgment filed by Nicholas Cremona on

16   behalf of Irving H. Picard, Trustee for the

17   Liquidation of Bernard L. Madoff Investment Securities LLC,

18   and Bernard L. Madoff with hearing to be held on 8/18/2021

19   at 10:00 AM at Videoconference (ZoomGov) (CGM).

20   Doc# 119 Reply to Motion /Trustees Reply Memorandum of Law

21   in Further Support of Motion for Summary Judgment and

22   Opposition to Defendants Cross-Motion for Summary Judgment

23   (Adv. Pro. No. 10-04539) filed by Nicholas Cremona on behalf

24   of Irving H Picard Esq..

25   Doc# 124 Reply to Motion Defendants Reply Memorandum of Law

Page 71

1    in Further Support of Their Cross-Motion for Summary

2    Judgment Dismissing the Complaint (related document(s)110)

3    filed by Helen Davis Chaitman on behalf of Barbara Keller,

4    Gerald E. Keller, The Gerald and Barbara Keller Family

5    Trust.

6

7    HEARING re 20-013160cgm Doc# 17 Motion to Dismiss Party

8    filed by Daniel Stuart Alter on behalf of KHRONOS LIQUID

9    OPPORTUNITIES FUND LTD.

10

11   HEARING re  20-01316-cgm Doc# 21 Motion to Dismiss Party /

12   Rafael Mayer filed by Eric Fisher on behalf of

13   Rafael Mayer with hearing to be held on 6/9/2021 at 09:00 AM

14   at Courtroom 621 (CGM - NYC) Responses due by 5/4/2021,.

15   Doc# 24 Motion to Dismiss Adversary Proceeding (Defendants

16   Prince Resources LDCs and Prince Capital Partners LLCS

17   Notice of Motion To Dismiss The Complaint) filed

18   by Daniel H. Tabak on behalf of PRINCE CAPITAL PARTNERS

19   LLC,, PRINCE RESOURCES LDC. with hearing to be held on

20   6/9/2021 at 09:00 AM at Courtroom 621 (CGM - NYC) Responses

21   due by 5/4/2021,

22   Doc# 25 Motion to Dismiss Adversary Proceeding filed by

23   Matthew M. Graham on behalf of David Mayer. with hearing to

24   be held on 6/9/2021 at 09:00 AM at

25   Teleconference Line (CourtSolutions) (CGM) Responses due by

Page 72

```
 1    5/4/2021,

 2    Doc# 77 Notice of Adjournment of Hearing re: Memorandum of

 3    Law (related document(s)17) filed by Daniel Stuart Alter on

 4    behalf of KHRONOS LIQUID OPPORTUNITIES FUND LTD ; hearing

 5    not held and adjourned to 9/15/2021 at 10:00 AM at

 6    Videoconference (ZoomGov) (CGM) (DuBois, Linda).

 7    Doc# 78 Notice of Adjournment of Hearing re: Reply

 8    Memorandum of Law of Rafael Mayer in Support of His Motion

 9    to Dismiss the Complaint (related document(s)21) filed by

10    Eric Fisher on behalf of Rafael Mayer; hearing not held and

11    adjourned to 9/15/2021 at 10:00 AM at Videoconference

12    (ZoomGov) (CGM) (DuBois, Linda).

13    Doc# 79 Notice of Adjournment of Hearing re: Reply

14    Memorandum of Law of Defendants Prince Resources LDC and

15    Prince Capital Partners LLC in Support of Their

16    Motion to Dismiss the Complaint (related document(s)24)

17    filed by Daniel H. Tabak on behalf of PRINCE CAPITAL

18    PARTNERS LLC,, PRINCE RESOURCES LDC; hearing not held and

19    adjourned to 9/15/2021 at 10:00 AM at Videoconference

20    (ZoomGov) (CGM) (DuBois, Linda).

21    Doc# 80 Notice of Adjournment of Hearing re: Reply to Motion

22    Defendant David Mayers Reply Memorandum of Law in Further

23    Support of Motion to Dismiss the Complaint (related

24    document(s)25) filed by Matthew M. Graham on behalf of David

25    Mayer; hearing not held and adjourned to 9/15/2021 at 10:00
```

Page 73

1   AM at Videoconference (ZoomGov) (CGM) (DuBois, Linda).

2   Doc# 81 Notice of Adjournment of Hearing re: Declaration of

3   Alexander Potts QC in Support of Individual Defendants

4   Motions to Dismiss (related document(s)21) filed by Doc# 21

5   Motion to Dismiss Party / Rafael Mayer filed by Eric Fisher

6   on behalf of Rafael Mayer with hearing to be held on

7   6/9/2021 at 09:00 AM at Courtroom 621 (CGM - NYC) Responses

8   due by 5/4/2021,. Eric Fisher on behalf of Rafael Mayer;

9   hearing not held and adjourned to 9/15/2021 at 10:00 AM at

10  Videoconference (ZoomGov) (CGM) (DuBois, Linda).

11  Doc# 82 Notice of Adjournment of Hearing re: Opposition

12  Brief /Trustees Memorandum of Law in Opposition to Motion to

13  Dismiss by Prince Resources LDC and Prince Capital Partners

14  LLC (related document(s)24) filed by Oren Warshavsky on

15  behalf of Irving Picard, as Trustee for the Liquidation of

16  Bernard L. Madoff Investment Securities LLC.; hearing not

17  held and adjourned to 9/15/2021 at 10:00 AM at

18  Videoconference (ZoomGov) (CGM) (DuBois, Linda).

19  Doc# 84 Notice of Adjournment of Hearing re: Opposition

20  Brief /Trustees Memorandum of Law in Opposition to Khronos

21  Liquid Opportunities Fund, Ltds Motion to Dismiss (related

22  document(s)17) filed by Oren Warshavsky on behalf of

23  Irving Picard, as Trustee for the Liquidation of Bernard L.

24  Madoff Investment Securities LLC .; hearing not held and

25  adjourned to 9/15/2021 at 10:00 AM at Videoconference

1    (ZoomGov) (CGM) (DuBois, Linda).

2    Doc# 83 Notice of Adjournment of Hearing re: Opposition

3    Brief /Trustees Memorandum of Law in Opposition to Motions

4    to Dismiss By Rafael Mayer and David Mayer (related

5    document(s)21, 25) filed by Oren Warshavsky on behalf of

6    Irving Picard, as Trustee for the Liquidation of Bernard L.

7    Madoff Investment Securities LLC.; hearing not held and

8    adjourned to 9/15/2021 at 10:00 AM at Videoconference

9    (ZoomGov) (CGM) (DuBois, Linda).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 75

```
 1   A P P E A R A N C E S :

 2

 3   BAKER HOSTETLER LLP

 4        Attorneys for Irving H. Picard, Trustee

 5        45 Rockefeller Plaza

 6        New York, NY 10111

 7

 8   BY:  NICHOLAS CREMONA

 9        TORELLO CALVANI

10        MATTHEW FEIL

11        MARIE CARLISLE

12        JASON OLIVER

13        CARRIE LONGSTAFF

14

15   DENTONS US LLP

16        Attorney for S&L Partnership

17        1221 Avenue of the Americas

18        New York, NY 10020-1089

19

20   BY:  CAROLE NEVILLE

21

22

23

24

25
```

Page 76

1    A P P E A R A N C E S :

2

3    HOGAN LOVELLS US LLP

4        Attorneys for Barclays Private Bank & Trust Ltd.

5        390 Madison Avenue

6        New York, NY 10017

7

8    BY:  MARC GOTTRIDGE

9

10   WINDELS MARX LANE MITTENDORF, LLP

11       Special Counsel for Irving H. Picard, Trustee

12       156 West 56th Street

13       New York, NY 10019

14

15   BY:  HOWARD L. SIMON

16

17   YOUNG CONAWAY STARGATT TAYLOR, LLP

18       Complex Counsel for Irving H. Picard, Trustee

19       Rockefeller Center

20       1270 Avenue of the Americas

21       New York, NY 10020

22

23   BY:  JUSTIN DUDA

24

25

1    A P P E A R A N C E S :

2

3    KOBRE KIM LLP

4        Attorney for The EFG Bank and BSI AG-related Defendants

5        800 Third Avenue

6        New York, NY 10022

7

8    BY:  ADAM LAVINE

9

10   CHAITMAN LLP

11       Attorney for The Gerald and Barbara Keller Family

12       Trust, Gerald E. Keller, Barbara Keller

13       465 Park Avenue

14       New York, NY 10022

15

16   BY:  HELEN DAVIS CHAITMAN

17

18   BINDER & SCHWARTZ LLP

19       Attorney for Rafael Mayer, Individually

20       3566 Madison Avenue, Sixth Floor

21       New York, NY 10017

22

23   BY:  ERIC FISHER

24

25

Page 78

1   A P P E A R A N C E S :

2

3   STEARNS WEAVER MILLER

4        Attorney for David Mayer, Individually

5        Museum Tower

6        150 West Flagler Street, Suite 2200

7        Miami, FL 33130

8

9   BY:  CARLOS CANINO

10        EUGENE STEARNS

11        MATTHEW GRAHAM

12

13   YANKWITT LLP

14        Attorney for Khronos Liquid Opportunities Fund

15        140 Grand Street, Suite 705

16        White Plains, NY 10601

17

18   BY:  DANIEL ALTER

19

20

21

22

23

24

25

Page 79

1   A P P E A R A N C E S :

2

3   COHEN & GRESSER

4       Attorney for Prince Resources LDC and Prince Capital

5       Partners LLC

6       800 Third Avenue

7       New York, NY 10022

8

9   BY:  DANIEL TABAK

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 80

```
 1                    P R O C E E D I N G S
 2             THE COURT:  Adversary Proceeding 08-01789,
 3    Securities Investment Protection Corp. -- is that the one
 4    I'm on?  Yes.  This is -- this is the in general, I believe
 5    -- I'm sorry.  I skipped down.  Give me a moment, please.
 6    The calendar is really so big, I have a -- I struggle
 7    keeping up with it on the computer.  If it's on paper, I
 8    could easily thumb through it.  But that just shows my age.
 9             Yes.  This is the -- this is the Securities
10    Investor Protection in the Bernie Madoff securities --
11    Securities Investor Protection v. Bernard Madoff, In re
12    Bernie Madoff, Adversary Proceeding 08-01789.  And this is
13    the status conference on what is coming before us, I
14    believe.  State your name and affiliation.
15             MR. CREMONA:  Good morning, Your Honor.  This is
16    Nicholas Cremona, of Baker & Hostetler, appearing on behalf
17    of Irving Picard, as Trustee.  I have a few of my colleagues
18    here with me this morning, and we're prepared to present the
19    status report that we filed on Friday, if that's acceptable
20    to Your Honor.
21             THE COURT:  Absolutely.  And I have it in front of
22    me.  And let everyone put their name on the record, or you
23    can put it on for them.
24             MS. NEVILLE:  Good morning, Your Honor.  It's
25    Carol Neville, on behalf of S&L Partnership.
```

Page 81

```
 1                 THE COURT:  That is not the case I'm on yet, Ms.

 2    Neville, I don't believe.  Yes, it is.

 3                 MS. NEVILLE:  It's on -- it's on that strap list

 4    (ph), Your Honor.

 5                 THE COURT:  Okay.  Pardon me, Ms. Neville.

 6                 MR. CALVANI:  Good morning, Your Honor.  My name

 7    is Torello Calvani.  I'm an attorney at Baker Hostetler, on

 8    behalf of the Trustee.

 9                 THE COURT:  Very good.  Yeah.  I just called about

10    a hundred cases, I understand.  Thank you.

11                 MR. GOTTRIDGE:  Your Honor -- I'm sorry.  Your

12    Honor, good morning.  It's Marc Gottridge, from Hogan

13    Lovells, on behalf of the Barclays defendants in these

14    cases, and I may have a comment to make or a suggestion to

15    make after the Trustee's counsel presents based on what

16    we've seen in the status report.

17                 THE COURT:  Certainly, and I'm glad to hear from

18    everybody on this.  Very good.  Anyone else wish to put

19    their name on the record?

20                 MR. FEIL:  Your Honor, Matthew Feil, from Baker

21    Hostetler, on behalf of the Trustee.

22                 MR. SIMON:  Good morning, Your Honor.  This is

23    Howard Simon, from Windels Marx, as special counsel to the

24    Trustee on certain of the matters on for the status

25    conference.
```

1              THE COURT:  Okay.

2              MR. DUDA:  Good morning, Your Honor.  Justin Duda,

3    from Young Conaway Stargatt & Taylor, as complex counsel for

4    Irving Picard in certain of the matters before Your Honor

5    today.

6              THE COURT:  Very good.  Anyone else wish to put

7    their name on the record?  Okay.  Mr. Carmona, let's go

8    through what we've got.  I've got your letter.  I mean,

9    excuse me, your status conference report.  And this is all -

10   - a lot of this has to do with the fact that the Second

11   Circuit overruled Judge Rakoff.

12             MR. CREMONA:  Yes, Your Honor.  Again, this is

13   Nicholas Cremona, Baker & Hostetler, appearing on behalf of

14   the Trustee.  That is certainly a good portion of the

15   Trustee's status report and what we intend to present to

16   Your Honor this morning.  As you saw, we filed our status

17   report which is located at ECF Number 20740 initially in

18   response to the Court's scheduling of multiple status

19   conferences in numerous adversary proceedings across the

20   categories of the remaining cases.

21             You know, unless at the outset Your Honor has any

22   specific questions about any particular case scheduled for

23   conference, my colleagues and I will plan to provide the

24   Court with a general update on each category of cases, the

25   progress and developments since we last appeared before Your

1    Honor, most importantly, as you note, the decision from the

2    Second Circuit overruling Judge Rakoff's decision and then

3    getting into the current posture of the cases and how we

4    expect the cases to proceed before the Court over the next

5    several months.

6              THE COURT:  Right.  And there are the defendants'

7    attorney that would like to weigh in on these things.  So

8    I'm pleased with that.  Go ahead.  We can follow your

9    report, if that's easier for everyone.

10             MR. CREMONA:  That would be my suggestion, Your

11   Honor.  And with that, I will start with the good faith

12   cases that remain before the Court if that's acceptable.

13             THE COURT:  It is with me.

14             MR. CREMONA:  I am pleased to report to Your Honor

15   that we have resolved 20 additional good faith cases by way

16   of litigation through judgment or settlement since our last

17   status conference in March.  As we stated in the report and

18   detailed on Exhibit A, we have 44 remaining cases.  Of those

19   44, the Court noticed nine cases for status conference

20   today.

21             Unless Your Honor has specific questions about

22   those nine cases, I can generally report that those cases

23   are either in settlement discussions, ongoing mediations or

24   ripe for summary judgment.  In the event that we are unable

25   to consensually resolve the remaining good faith cases, we

Page 84

1      expect to bring motions for summary judgment before the

2      Court on a monthly or semimonthly basis over the next

3      several months, consistent with the permission Your Honor

4      granted to the parties at the March 17th conference and the

5      law of the case as most recently articulated in Your Honor's

6      July 2 decision in the Stanley Miller case.

7             I would also point out, consistent with Your

8      Honor's direction on March 17, we have indicated on Exhibit

9      A to our report which of the 44 remaining cases are

10     currently pending before the District Court or the Court of

11     Appeals.  As I'm sure Your Honor noted, there are nine

12     proceedings currently before the District Court with pending

13     motions to withdraw the reference or summary judgment

14     motions.

15            One case is on appeal, and that is the appeal of

16     Your Honor's Epstein decision which is now pending and fully

17     briefed before Judge McMahon.  One case is on appeal at the

18     circuit and that's the appeal of Judge Koeltl's summary

19     judgment decision in favor of the Trustee, and that matter

20     will be fully briefed by mid-November.

21            THE COURT:  Okay.

22            MR. CREMONA:  Absent any questions Your Honor may

23     have about those cases or the remaining good faith cases,

24     there's one correction to Exhibit A that I need to make on

25     the record, if that's acceptable.  With respect to the

1    151797 Canada Inc. case, which is Adversary --

2              THE COURT:  Okay.  I'm sorry.  You're going to

3    have to point me to where you are.

4              MR. CREMONA:  I am on Exhibit A to the report.

5              THE COURT:  Okay.

6              MR. CREMONA:  And it's one of the cases that is

7    indicated to be on for today's conference.

8              THE COURT:  Right.

9              MR. CREMONA:  On page one of Exhibit A, and it's

10   Adversary --

11             THE COURT:  I have it.  I have it now.

12             MR. CREMONA:  Okay.  Adversary Proceeding Number

13   10-4631.  As Your Honor will see there, the Trustee

14   inadvertently referenced Judith and Samuel Pisar as active

15   defendants.  They should not have been included, as they

16   were both dismissed from the case by stipulation on the

17   relevant docket and counsel for the defendants pointed that

18   out.  And I just wanted to make that correction on the

19   record, and we'll certainly correct the reports going

20   forward to reflect that.

21             THE COURT:  Excellent.  Okay.

22             MR. CREMONA:  With that, Your Honor, unless you

23   have any particular questions on the good faith matters, I

24   will turn matters over to my colleague, Torello Calvani, to

25   provide an update on the subsequent transfer cases.

Page 86

1              THE COURT:  Very good.  Please.

2              MR. CREMONA:  Thank you, Your Honor.

3              MR. CALVANI:  Again, Your Honor, my name is

4     Torello Calvani.  I'm an attorney at Baker Hostetler.  I

5     would like to briefly discuss a couple of points raised in

6     the Trustee's status report filed on Friday, September 10th

7     and answer any questions Your Honor may have about recent

8     proceedings or next steps in the subsequent transfer cases.

9              THE COURT:  Okay.

10             MR. CALVANI:  As an overview, the Trustee has 80

11    cases against defendants who allegedly received subsequent

12    transfers of customer property from Madoff's feeder funds,

13    and 70 of these cases have been noticed for today's

14    conference.  The Trustee's cases primarily seek to recover

15    transfers from the Fairfield funds, certain Tremont funds

16    and the fund Harley International.

17             Most of these cases were dismissed following the

18    District Court's and this Court's prior rulings on

19    extraterritoriality and international comity.  However in

20    2019 the Second Circuit reversed those decisions and, in

21    2020, these cases returned to this Court.  Upon the cases'

22    return, the Trustee attempted to move forward in a couple of

23    cases.

24             In two proceedings, the Trustee sought to amend

25    his complaints.  Each defendant responded with a motion --

Page 87

1    with a motion to stay proceedings pending a decision from

2    the Second Circuit on the issue of good faith in the

3    Citibank and Legacy Capital appeals, and in each proceeding

4    the Court granted a stay.  In light of the stays, the

5    Trustee did not make any further motions to amend at the

6    time.

7              As much as the Trustee wanted to move forward, we

8    understood that defendants would resist and likely receive a

9    stay until the Second Circuit decided the good faith issue

10   in the Citibank and Legacy Capital appeal.  We now of course

11   have that decision from the Second Circuit.  On August 30th,

12   the Second Circuit issued its decision in Citibank and

13   Legacy Capital.

14             The Second Circuit held that the good faith

15   defense under Section 548(c) and Section 550(b) is governed

16   by an inquiry notice standard, and that the Trustee does not

17   have the burden of pleading a transferee's lack of good

18   faith.

19             The Second Circuit also vacated the District

20   Court's decision from 2014 that announced the willful

21   blindness standard and this Court's prior decisions in

22   Citibank and Legacy Capital which applied the District

23   Court's willful blindness standard.  Neither Citibank nor

24   Legacy Capital have petitioned for panel rehearing or en

25   banc review.  That deadline passed on Monday, September

Page 88

1    13th.

2            Consequently I would expect that the mandate would

3    issue in the Citibank and Legacy Capital proceedings by

4    Monday, September 20th, unless of course either Citibank or

5    Legacy Capital move to stay the mandate pending cert

6    petition to the Supreme Court.

7            I would like to talk briefly about next steps in

8    these cases.  In light of the Second Circuit's decision, the

9    subsequent transfer complaints on file state a claim for

10   recovery under Section 550(b).  The Trustee has pled that

11   BLMIS, in furtherance of a Ponzi scheme, made avoidable

12   transfers of customer property to the feeder funds and that

13   the funds subsequently transferred this property to

14   defendants.

15           Consequently the Trustee intends to move forward

16   in these cases.  It's been ten years, and defendants still

17   have not answered the complaints.  Our concern here is

18   prejudice.  Given the passage of time since Madoff's arrest,

19   further delay will only hinder the Trustee's ability to

20   rebut any purported good faith defense.

21           So over the coming month, the Trustee plans to

22   meet and confer with counsel for each of the subsequent

23   transfer defendants to discuss a date by which the

24   defendants will response to the Trustee's complaints and

25   moving these cases forward into discovery.  In approximately

Page 89

1    15 cases, the Trustee will also seek consent from the

2    defendants or leave from the Court by motion to amend the

3    Trustee's previously filed complaints based on information

4    now available.  Here the Trustee may seek to add additional

5    transfers that defendants received from the feeder funds or,

6    in certain cases, the Trustee may seek to add or substitute

7    a new defendant in under Rule 15.

8              Finally after meeting and conferring with counsel

9    for the individual defendants, we plan to update the Court

10   on the  outcome of those meetings.  But we expect that the

11   individual cases will proceed on their own schedules going

12   forward.  And unless Your Honor has any questions, that's

13   the status report on the Trustee's subsequent transfer cases

14   that were noticed for today's conference.

15             THE COURT:  Very good.  Does someone wish to be

16   heard?

17             MR. GOTTRIDGE:  Yes, Your Honor.  It's Marc

18   Gottridge again.  Just to be clear, I represent the Barclays

19   defendants in the Adversary Proceeding 11-02569.  There are

20   three defendants.  They're all Barclays affiliates.  And

21   just to be clear, I am speaking on behalf of those

22   defendants.  I am not presuming to speak on behalf of other

23   defendants, where defendants' counsel may agree or disagree

24   with what I'm going to say.  Our clients are in the --

25             THE COURT:  Would you please give me the case

Page 90

1    numbers on those, please?

2              MR. GOTTRIDGE:  Yes.  It's all one -- there are

3    three defendants that are named in Adversary Proceeding 11-

4    02569.

5              THE COURT:  Excellent.  I have it.  Thank you.

6    Yes.

7              MR. GOTTRIDGE:  Okay.  Thank you, Your Honor.  So,

8    and this is one of the so-called subsequent transfer cases.

9    So in general I think there are two points that are made by

10   counsel for the Trustee in paragraph 14 of the status

11   report.  One has to do with the Trustee's desire to amend

12   his pleadings in certain of the cases.  I have nothing to

13   comment about that.  I think it's obviously entirely up to

14   the Trustee to decide whether he would like to amend or seek

15   leave to amend where he needs to seek leave to amend.  And

16   I'm not proposing to intrude upon that process.

17             But I do have a concern that there may be a more

18   efficient way to approach the next steps in these cases than

19   the Trustee has proposed.  So I would like to suggest a

20   tweak that might make things a bit more streamlined, a bit

21   more efficient.

22             The concern I have is really with the part of

23   paragraph 14, and it was repeated again by counsel for the

24   Trustee today, that what they'd like to do is go out and

25   have separate meet-and-confers with counsel for each of what

Page 91

1    I think is up to 80 defendants to discuss a date by which

2    the defendants will respond to the Trustee's complaints.

3    And the response under the Federal Rules could be either a

4    motion to dismiss or an answer.

5            It seems to me that it's not the most efficient

6    way to proceed to potentially have as many as 80 different

7    schedules in cases which are largely very similar.  They're

8    based on the same legal theory.  And the pleading is likely

9    to be, based on what we've seen already, and I don't mean

10   this in a pejorative sense at all, kind of cookie cutter

11   complaints where the elements are being pleaded in the same

12   way.

13           Obviously the dollar amounts are different, and

14   the dates may be different.  But essentially these are very

15   much mirror image cases.  And they're up to 80 of them.  And

16   it seems that it wouldn't be efficient really to have

17   different cases with different response dates where it

18   wouldn't be all that difficult to come up wit ha system

19   where we could have simply one schedule as opposed to 80

20   schedules.

21           So what I would propose is this, Your Honor.

22   First of all, with respect to the amendments and all, I

23   think that the Trustee should take whatever time they need

24   to do whatever amending they need to do or whatever motions

25   for leave to amend they feel they need to do and then advise

Page 92

1    all defendants and advise the Court of the date by which the

2    Trustee will have completed the amendment process.  And I

3    think in fairness to the defendants and to the Court, once

4    these amendments are done, once that date's passed, there

5    should be no further amendments of the pleadings in the

6    subsequent transfer cases.

7         And then I would suggest that a group of

8    defendants' counsel should meet and confer with the Trustee

9    and his counsel on what would be a reasonable amount of time

10   from that date, measured from that date, for a response

11   date.  And to the extent there will be motion practice,

12   motions to dismiss, we can propose, as Your Honor spoke

13   about earlier this morning in the connection -- in

14   connection with different cases, we can then propose to the

15   Court briefing schedules for those motions.

16        But I think that it's more efficient to have a

17   single response date off of which we can pivot and come up

18   with a single briefing schedule.

19        THE COURT:  So you're telling me that I need to be

20   hearing 80 individual defendants at one time.  But also

21   you're trying to -- you said they can't do an amendment.

22   The Federal Rules of Civil Procedure even allow amendments

23   after judgment.  So that's off the table.

24        MR. GOTTRIDGE:  No.  Yeah.  I didn't mean in the

25   sense that they can't do it.  But I just think it should --

Page 93

1   the Court and the defendants should know what the operative

2   pleading in that we're responding to.  That's all.

3           THE COURT:  I think it would be your client.

4           MR. GOTTRIDGE:  Well, I think we'd need to see if

5   there's an amendment.  If it's been amended, then obviously

6   that's the operative pleading.  But if there hasn't been an

7   amendment, we need to know --

8           THE COURT:  Well, we have the complaint.

9           MR. GOTTRIDGE:  Uh-huh.

10          THE COURT:  Then they have to decide on it.  I

11  mean, it's the same thing as we're doing before.  It sounds

12  like there's a bit of trying to lump.  And you may say

13  they're cookie cutter.  But by in large, it is a cookie

14  cutter type of proceeding right now.  Bu each one of those

15  have individual issues.

16          MR. GOTTRIDGE:  Well, they may.  They may, Your

17  Honor.  But they also I think are going to have common

18  issues, and I think that there's no prejudice to the Trustee

19  from proceeding the way I'm proposing, and it actually may

20  help the Trustee, it may help the Court and it may help the

21  defendants because if it turns out --

22          THE COURT:  I don't know that it helps us because

23  I think you just heard me on the letters before, and that

24  ends up not helping me --

25          MR. GOTTRIDGE:  No, no --

1            THE COURT:  -- because your clients are unique.

2    Let's just give a little history to me for two seconds, and

3    most of you know this.  Most of my case is a consumer

4    caseload.  I have 300 matters on my calendars often.  I will

5    tell you we pay attention individually to those 300 matters.

6    And sure, I think there's a possibility you could lump sum

7    together because all the facts would be similar.  But that's

8    for the two of you to come up with.

9            Mr. Cremona, did I speak or -- answer the -- I

10   thought we had it that you would answer the complaint or you

11   would move to dismiss.  Mr. Cremona, what am I missing?

12           MR. CREMONA:  Well, I will defer to my colleague,

13   Mr. Calvani.  But --

14           THE COURT:  Mr. Calvani.  I'm sorry.

15           MR. CALVANI:  That's fine, Your Honor.  Yeah.

16   What we proposed would be to meet and confer with the

17   defendants on an individual basis.

18           THE COURT:  Always.  Always.

19           MR. CALVANI:  And then come up with schedules in

20   the individual cases for the defendants to answer or file a

21   responsive pleading.  What I've taken from Mr. Gottridge, I

22   understand what he's setting forth.

23           My concern however is that the cases will only

24   move as fast as the slowest case.  And so it would not be

25   expeditious.  And what I heard from Your Honor in the

Page 95

1    conference in the Fairfield Sentry matter was that each

2    defendant may have different facts or issues that should be

3    dealt with on an individual case-by-case basis.  That's what

4    I believe Your Honor said, and I think it holds true in this

5    case as well.

6            I also think that we are running out of common

7    issues that can be dealt with on some sort of a consolidated

8    basis.  We've had consolidated briefing in this case on

9    Stern v. Marshall, antecedent debt, the safe harbor under

10   Section 546(e), the meaning of the term avoided under

11   Section 550(a), international comity, the extraterritorial

12   reach and application of the Bankruptcy Code and, more

13   recently, good faith under Section 548(c) and 550(b).

14           Litigation over these common issues has taken, you

15   know, ten years.  And we're essentially where we are today.

16   And I think the defendants -- I just don't see any remaining

17   common issues that should be dealt with on some sort of a

18   class-wide or defendant-wide consolidated basis.  So that

19   would be my initial response to the defendants.

20           But again, what we are proposing is to meet and

21   confer with Mr. Gottridge to discuss his cases and, you

22   know, we are obviously open to listen.  So we want to

23   coordinate this in a fashion that doesn't waste any party or

24   judicial resources.

25           THE COURT:  Right.  That's sort of where I am too.

Page 96

1    I can't say -- I mean, all the big issues have been

2    resolved.  We've been 13 years on this.  We've got -- we

3    need the individual briefing, and I need -- but I will leave

4    it to the plaintiffs to set it up in such a way as we can

5    have them staggered in.  Mr. Lavine, you turned your light

6    on.  Did you wish to say something?

7              MR. LAVINE:  Yes, Your Honor.  Thank you.  I

8    represent defendants in three adversaries.  Happy to give

9    you the numbers --

10             THE COURT:  Please.

11             MR. LAVINE:  -- although my question doesn't

12   relate to any particular one.

13             THE COURT:  Well, let's just make sure the record

14   reflects who you're representing.  That's what I want.

15             MR. LAVINE:  The defendants in 11-2149 --

16             THE COURT:  Okay.

17             MR. LAVINE:  -- 11-2553 and 11-2731.

18             THE COURT:  Thank you.

19             MR. LAVINE:  Does the Court wish to provide

20   guidance here in the manner that it did in the Fairfield

21   cases, that personal jurisdiction issues should be briefed

22   and decided first before proceeding on briefing on any

23   12(b)(6) motions or should they be -- as opposed to having

24   all 12(b)(2) and 12(b)(6) motions combined?

25             THE COURT:  Well, I want everything moved under

Page 97

1    the Rules of Federal -- the Federal Rules of Civil

2    Procedure.  And the plaintiffs need to make them.  And

3    honestly we'll do them individually and then, when they're

4    done, when they've made their move, when they've made their

5    motion, then you have a chance to reply to it.

6            MR. LAVINE:  Your Honor, I think the defendants

7    are going to be making the motions, and my question is

8    whether you want us to separate out any personal

9    jurisdiction objections from merits objections, as you're

10   doing in the Fairfield cases.

11           THE COURT:  Just make it all in one motion.

12           MR. LAVINE:  Thank you, Your Honor.

13           THE COURT:  So, right.  Right.

14           MR. GOTTRIDGE: Your Honor, just -- if I may jut

15   briefly, Marc Gottridge again, and I just want to make sure

16   that I wasn't misunderstood.  The idea that we had about

17   trying to reduce the number of response dates is that there

18   may well be common issues that still remain, and to the

19   extent that there are, I think it would be better if instead

20   of the Court receiving 20, 30, 40 or up to 80 briefings on

21   it, if we can get together a group or subgroups and

22   consolidate that briefing on those issues, that would be

23   beneficial to the Trustee, to the defendants and to the

24   Court.  That's all I was suggesting.  I did --

25           THE COURT:  Okay.

1           MR. GOTTRIDGE:  I did think that -- I do

2    appreciate what Mr. Calvani said, that it sounds like the

3    Trustee is willing to, you know, consider streamlining and

4    rationalizing through this meet-and-confer process.  And we,

5    and I'm sure some of the other defendants, would be happy to

6    --

7           THE COURT:  Okay.  I just want to say something to

8    you.  I don't think you heard me.  I have a consumer

9    caseload.  And I often have 300 matters on.  I will tell you

10   almost every single one of those have the same issue.  But

11   they're individuals.  Their service is individual.  Their

12   discovery is individual.  Their needs are individual.  And

13   that's how I feel about these cases.  You've got 80 cases

14   here.  each one of those to me are separate cases.

15   Certainly there might be things that match.  If you all

16   decide that you want to have those returnable on the same

17   day so that I can make a ruling in one and it goes to the

18   other, that's fine with me.

19           But I want them individual, and I want the

20   individual brief.  If it means you're doing a cookie cutter

21   response, if it means you're doing a cookie cutter motion,

22   okay.  I do that 300 days out of the year.  But in the end,

23   your client is not the same as Mr. Lavine's client and your

24   clients do not have the same issues.  It may be the same set

25   of facts pretty much and it may be the same set of

1    circumstances.

2              But in the end, I've got to make a decision, and I

3    want to make a decision on your client.  And I'm really

4    truly -- looking at all the cases I've done so far, and I'm

5    still learning it, so bear with me, all the cases is the

6    "big lump" issues have been dealt with.  We are now down to

7    what does your client say was the issue in your case or his

8    case or her case.

9              So, and you may get a cookie cutter decision and

10   11-0256 may end up being the same decision that's in 11-

11   02149 by in large.  But we will also gear it to that client.

12   And so we're hoping everybody gets heard.  That's the issue.

13   So have I been muddy -- did I muddy the waters enough?

14             MR. GOTTRIDGE:  I understand, Your Honor.  I

15   understand what you're saying.  Thank you.

16             THE COURT:  Very good.  Now we have the good

17   faiths.  So that's the active good faith.  Does that take --

18   now we have the subsequent transferee cases, correct?  And

19   those were Mr. Levine had addressed three -- two of those.

20             MR. GOTTRIDGE:  And Your Honor, my case was also -

21   - this is Marc Gottridge again.  It was also a subsequent

22   transferee.

23             THE COURT:  Transferee.  Okay.  Okay.  So

24   continuing on with the report, the status conference report.

25   I will get more and more familiar as we go along.  I will

Page 100

1   even remember your clients at some point.

2          MR. CALVANI:  Yes, Your Honor.  Torello Calvani

3   again, on behalf of the Trustee, for the status report filed

4   on Friday, I think we have nothing further to say on either

5   the good faith cases or the subsequent transfer cases.

6          I'm happy to answer any questions about individual

7   cases.  But I think by in large until we meet and confer

8   with the defendants' counsel, that concludes the report, and

9   we can follow the -- either the calendar on the website or

10  the notice of agenda filed by the Trustee.

11         THE COURT:  No.  The calendar on the website.

12         MR. CALVANI:  Yes, Your Honor.

13         THE COURT:  Make sure they match.  Mr. Cremona, I

14  believe that we had some motions that we don't have orders

15  on yet.  Have you looked into that?

16         MR. CREMONA:  Yes, Your Honor.  Again, Nicholas

17  Cremona, of Baker & Hostetler, appearing on behalf of the

18  Trustee.  I can clarify that now on the record.  I saw that

19  a number, I believe eight of the nine good faith cases that

20  were scheduled for conference today related to an order that

21  was not entered on the docket related to the Trustee's

22  motion for additional limited discovery.  And I can get you

23  that docket number.

24         THE COURT:  Okay.

25         MR. CREMONA:  Just bear with me one second.

Page 101

1              THE COURT:  And that's the only one you think is

2     outstanding?  I thought we had about nine outstanding.

3              MR. CREMONA:  Well, I was just going to refer to

4     the motion which was filed -- excuse me -- it's Docket

5     Number 18015.  And if -- I would direct Your Honor to

6     Exhibit C of that motion, excuse me, which listed the cases

7     that did not participate in Madoff's deposition.

8              And just let me back up.  The Trustee filed that

9     motion after Bernard Madoff was deposed in approximately 90

10    or so good faith cases that were pending at the time.  On

11    Exhibit C to that motion, we listed the cases that did not

12    participate in Mr. Madoff's deposition.

13             So therefore they were carved out of the relief

14    sought, and that is why no order addressing that motion was

15    entered in all of the dockets in the cases that Your Honor

16    scheduled.  The only one where it was addressed was the S&L

17    Partnership case.  And in fact the order was entered on that

18    docket.  So I think --

19             THE COURT:  Okay.  So on those that you didn't,

20    it's withdrawn as to those?

21             MR. CREMONA:  It is, Your Honor, and it was never

22    relevant to them in that they were carved out specifically

23    on Exhibit C of the motion.

24             THE COURT:  Okay.  So we will enter withdrawn on

25    those, on those.  Be in touch with chambers and let's get

Page 102

1    that taken care of.  As many of you notice, I try to keep a

2    very clean docket so that -- I call it the hit by a bus

3    syndrome.  If I get hit by a bus or you get hit by a bus,

4    the docket is clean.

5                MR. CREMONA:  Understood, Your Honor.  We will

6    certainly make that clarification and coordinate with

7    chambers.

8                THE COURT:  Okay.  Because for every case that we

9    don't have an order, we're going to put it on withdrawn --

10   what you've just said on the record.  But you need to get

11   with chambers to make sure.  Okay.

12               MR. CREMONA:  Understood.

13               THE COURT:  Good.  Thank you.  Thank you, thank

14   you, thank you.  All right, everyone.  Ms. Neville, do you

15   have anything you wish to add since I cut you off twice?

16               MS. NEVILLE:  No, Your Honor.  May I be excused?

17               THE COURT:  Of course you may.

18               MS. NEVILLE:  Thank you.

19               THE COURT:  We're moving to the next matter that I

20   don't believe you're involved with anyway.

21               MS. NEVILLE:  Thank you.

22               THE COURT:  Anyone else?  Very good.

23               MAN 1:  Yes, Your Honor.  May any of us drop off

24   on these next matters --

25               THE COURT:  Please.  Yes, of course.

Page 103

1          MAN 1:  -- as they go.

2          THE COURT:  Because this is -- this is a whole

3    different matter.  So thank you.  Thanks, everyone.  Have a

4    good day.

5          MAN 1:  Thank you.

6          THE COURT:  And for you that are celebrating Yom

7    Kippur, I hope you have an easy fast.  Case Number 10-04539,

8    Bernie Madoff v. The Irving Picard, Trustee v. the Gerald

9    and Barbara Keller matter.

10         Wait.  I have another one first.  Excuse me.  10-

11   04986, Irving Picard as Trustee v. Knee.  This is Trustee's

12   motion for limited additional discovery.  I just did all of

13   those.  Never mind.  I apologize.  That's part of the entire

14   docket.  Sometimes it would be easier to do the agenda.  But

15   the agenda doesn't match my docket.  So, but I believe we

16   are -- Mr. Cremona, are we not on 10-04539?

17         MR. CREMONA:  We are, Your Honor.  Again, Nicholas

18   Cremona, Baker & Hostetler, appearing on behalf of the

19   Trustee.  This is the Trustee's motion for summary judgment

20   in the Keller matter.  And I'm going to hand off this matter

21   to my colleague, Marie Carlisle, who's handling the argument

22   of the Trustee's motion.

23         THE COURT:  Very good.  Ms. Carlisle, state your

24   name and affiliation.

25         MS. CARLISLE:  Certainly.  Marie Carlisle, of

Page 104

 1   Baker Hostetler, appearing on behalf of the Trustee, Irving

 2   Picard.

 3            THE COURT:  And for the Gerald and Barbara Keller

 4   Family Trust and Gerald Keller, individually and trustee of

 5   the Gerald and Barbara Keller Family Trust and Barbara

 6   Keller, individually and in her capacity as trustee, state

 7   your name.

 8            MS. CHAITMAN:  Your Honor, yes, this is Helen

 9   Davis Chaitman, of Chaitman LLP, on behalf of the

10   defendants.

11            THE COURT:  Ms. Chaitman, it is your motion.

12            MS. CHAITMAN:  No.  It is -- well, we made --

13            THE COURT:  Oh, I'm sorry.  It's a summary

14   judgment.  I'm sorry.  I apologize.  It's the Trustee's

15   motion.

16            MS. CHAITMAN:  Yes.  We opposed that --

17            THE COURT:  You have a cross-motion --

18            MS. CHAITMAN:  -- we made a --

19            THE COURT:  Exactly.  Go ahead.  This is the

20   original motion.  Thank you.

21            MS. CARLISLE:  Good morning, Your Honor.  As you

22   just mentioned, we're here today on the Trustee's motion for

23   summary judgment and the defendants' countermotion in this

24   case.  However practically speaking, Your Honor, all but two

25   of the issues that were argued in the parties' briefs have

Page 105

1    previously been addressed and determined by this Court,

2    essentially leaving only two issues to be addressed by the

3    parties today: whether or not defendant Barbara Keller has

4    been dismissed pursuant to Rule 25 and whether or not

5    defendants are the initial transferees of the transfers

6    received from the Keller Trust's BLMIS account.

7            The other argument of the parties' briefs, which

8    include the fact that BLMIS was a Ponzi scheme, that the

9    Trustee has met the requirements of 11 USC 548(a)(1)(A),

10   that the transfers at issue here consisted of customer

11   property, the admissibility of the records presented by the

12   Trustee including the Form BD, plea alloucions and expert

13   reports, that the IA business did not purchase Treasury

14   bills for the account of any individual BLMIS customer,

15   including the defendants here, and that the Trustee is

16   entitled to prejudgment interest have all been previously

17   decided and are all the law of the case here.

18           These arguments have been addressed and decided by

19   this Court and the District Court in at least six other

20   adversary proceedings largely in the Trustee's favor with

21   the courts rejecting defendants' arguments, most recently in

22   Your Honor's decision in the Miller case in July of this

23   year.  Further the Second Circuit recently issued an opinion

24   in which it determined that the funds transferred by BLMIS

25   to customers were in fact customer property.  Nothing in

Page 106

1   defendants' briefs here provide any legitimate basis for why

2   Your Honor should deviate from the established law of the

3   case for any of these previously decided issues.

4          Now it's clear to us, Your Honor, from the prior

5   proceedings this morning, that the Court does demand strict

6   compliance with the Federal Rules of Civil Procedure.

7   However, in arguing here that the defendants are -- that the

8   claims against Barbara Keller have been dismissed,

9   defendants are essentially asking the Court to ignore the

10  requirements of Rule 25 as it applies to them while

11  simultaneously insisting that this Court hold the Trustee to

12  the requirements found under that same rule.

13         The plain language of Federal Rule 25 clearly

14  provides that a statement noting death which would trigger

15  the 90-day period to substitute for that deceased defendant

16  must be served on parties as set forth in Rule 5.  Rule 5 in

17  turn provides six different mechanisms by which a party can

18  serve that notice of death on other parties, none of which

19  were utilized by the defendants here.

20         Defendants admit as much and their failure to

21  identify the use of any one of these six procedures provided

22  under that rule.  Instead, Your Honor, they deflect with a

23  list of actions purportedly taken by the Trustee regarding

24  deceased parties in other unrelated adversary proceedings.

25  What the Trustee did in other adversary proceedings with

Page 107

1   other defendants does not --

2           THE COURT:  Well, let me -- let me just interrupt

3   you because I have a question --

4           MS. CARLISLE:  Sure.

5           THE COURT:  -- that I need you to answer.  And

6   under what theory are Gerald and Barbara Keller liable for

7   these transfers in their individual capacities?

8           MS. CARLISLE:  I concede, Your Honor, in their

9   individual capacities, those claims were dismissed.  They

10  were sued in their individual capacities as subsequent

11  transferees in this case, and those claims were dismissed by

12  a prior order of the Court.  Currently the claims against

13  them are only in their capacity as trustees of the Gerald

14  and Barbara Keller Family Trust.

15          THE COURT:  Okay.  And so then given Rule 17(b) in

16  New York State on capacity to sue, how is the family trust

17  itself a proper party in this adversary proceeding?

18          MS. CARLISLE:  I apologize, Your Honor?

19          THE COURT:  Under Rule 17(b) and New York State on

20  capacity to sue, how is the family trust itself a property

21  party in this adversary proceeding?  Say that quickly.

22  Proper party in this adversary proceeding.

23          MS. CARLISLE:  I apologize, Your Honor.  I have

24  not looked at that issue specifically with respect to this

25  motion.  I was focused more on the arguments that have been

Page 108

1    brought by the parties here.

2            THE COURT:  Okay.  All right.

3            MS. CARLISLE:  If you'd like, I can certainly

4    provide supplemental briefing after this.

5            THE COURT:  Well, let's -- let me hear the rest of

6    it, and then we'll talk to you.

7            MS. CARLISLE:  Okay.  Certainly, Your Honor.  So

8    as I just mentioned, Federal Rule 25 clearly provides --

9            THE COURT:  Well, let me just say, shouldn't it

10   just be the trustees, not the family trust?

11           MS. CARLISLE:  Well, I --

12           THE COURT:  Because they're the ones that are

13   acting --

14           MS. CARLISLE:  On behalf of the trust, Your Honor?

15           THE COURT:  Right.

16           MS. CARLISLE:  I understand that.  I believe

17   because the trust was the account holder, that is the basis,

18   at least factually, with respect to why the trust was

19   included here.

20           THE COURT:  Okay.  All right.  Thank you.

21           MS. CARLISLE:  Certainly.  So Your Honor, stepping

22   back, Federal Rule 25 clearly provides that a statement

23   noting death must be served in compliance with Rule 5 which

24   defendants did not do here.  Rather than pointing, Your

25   Honor, the Court to any actions taken by the defendants,

Page 109

1    excuse me, in compliance with Rule 5, they deflect the Court

2    with a list of actions purportedly taken by the Trustee in

3    these other adversary proceedings.

4         What the Trustee did in these other adversary

5    proceedings with respect to deceased defendants is not

6    relevant here.  It does not provide any evidence of an

7    agreement between these specific defendants and the Trustee

8    nor does it relieve defendants of the obligations set forth

9    under Rule 25.

10        Therefore in this case the 90-day period to

11   substitute for deceased defendant Barbara Keller did not

12   believe until the defendants filed and served, pursuant to

13   Rule 5, their opposition and cross-motion to summary

14   judgment in this matter on August 17th.  There is no genuine

15   issue of fact here with respect to Ms. Keller, simply the

16   issue of whether or not defendants complied with the

17   requirements of Rule 25, which they did not do until

18   recently.

19        The only other issue not yet decided by this Court

20   and others is whether or not the BLMIS accountholder here,

21   defendant Gerald and Barbara Keller Family Trust, was a mere

22   conduit rather than the initial -- than the initial

23   transferee and thus is not liable to the Trustee here.

24        As Your Honor is well aware, the Second Circuit

25   uses the dominion and control test to define a transferee as

1    one who has the right to use -- to put money to one's own

2    purpose.  The Keller Trust, through its trustee, Gerald

3    Keller, had absolute and unfettered control over the

4    transferred funds, and the fact that the Keller Trust

5    purportedly entered into an agreement to subsequently

6    transfer those funds to Keller International Publishing does

7    not abolish the Keller Trust control over those funds, nor

8    does it shield the Trust from liability in this matter.

9            Gerald Keller, as trustee of the Keller Trust, was

10   at all times free to choose whether to deposit the funds

11   received from BLMIS into the bank account of Keller

12   Publishing, whether to deposit them into another account or

13   to take any other action with regard to the BLMIS check and

14   the funds -- that he chose to deposit them into an account -

15   - excuse me, Your Honor -- that he chose to enter into an

16   agreement with Keller Publishing and whereby he then

17   deposited those funds into an account held by Keller

18   Publishing does not convert the Keller Trust from the

19   initial transferee to a mere conduit.

20           And Your Honor, defendants cite to several cases

21   in support of their argument that, in light of the fact that

22   there was this contractual obligation, that the Keller Trust

23   is a mere conduit.  However the cases cited by the

24   defendants are all differentiated from the facts at issue

25   here.  In each of those cases, the defendant arguing it was

Page 111

1    not in fact an initial transferee.

2             In one case, Your Honor, it was merely somebody

3    who employed workers and was given cash to be used to pay

4    those employees.  In another case, the defendants at issue

5    were banks that simply received funds on behalf of

6    accountholders.

7             Here however, there is evidence in the record and

8    before Your Honor today in which Mr. Keller testified, first

9    of all, that he was the decisionmaker as to whether or not

10   to withdraw money from The Keller Trust's BLMIS accounts.

11   He also testified that it was "his job to spend the money."

12            In verified interrogatory responses, Your Honor,

13   which are attached as Exhibit 14 to Mr. Cremona's

14   declaration, The Keller Trust responded, stating that it

15   used the funds to pay taxes and, ironically applicable to

16   this argument, it objected to providing any further response

17   to the Trustee as "seeking information about subsequent

18   transfers in this case."

19            Finally, Your Honor, defendants produced

20   declaration of an accountant, Ms. (indiscernible), which is

21   attached as Exhibit AZ to Ms. Chaitman's declaration,

22   asserting that defendants Gerald and Barbara Keller paid

23   taxes on the reported BLMIS income.  All of these admissions

24   by defendant demonstrate that each of them had some modicum

25   of control, if not utter and complete control over the funds

Page 112

1    transferred from The Keller Trust's BLMIS accounts.

2            Finally, Your Honor, the Trustee objects to the

3    documents attached to the declaration of Mr. Irwin Lavine

4    filed on September 13th as inadmissible and ask that those

5    documents, as well as Mr. Levine's statements relying on

6    such documents not be considered by the Court.  The two

7    balance sheets that were provided by Mr. Levine are not part

8    of the discovery exchanged in this case.  They were never

9    produced by the defendants pursuant to Rule 26 or in

10   response to the Trustee's request for production.  Similarly

11   they were not produced by Keller International Publishing in

12   response to the Trustee's subpoena for documents.

13           Discovery in this case has long been closed and is

14   inappropriate for the defendants to attempt to use self-

15   serving declaration such as Mr. Levine's to introduce new

16   facts and documents into the record to support this argument

17   that The Keller Trust was a mere conduit.

18           For these reasons and for all of the reasons set

19   forth in the Trustee's memoranda in support of this motion,

20   the Trustee's motion for summary judgment should be granted

21   and defendants' cross-motion to be denied in its entirety.

22   Thank you, Your Honor.

23           THE COURT:  Thank you.  Ms. Chaitman?

24           MS. CHAITMAN:  Thank you, Your Honor.  The reason

25   we put in the supplemental declaration of Mr. Levine is that

Page 113

1    the Trustee made a disingenuous argument in its papers.  The

2    Trustee argued that in his deposition, Mr. Keller did not

3    testify at all about the loan that he had made to Keller

4    Publishing Company.

5         What the Trustee did though is not annex the

6    entire deposition transcript.  It only annexed ten pages.

7    And indeed when I asked Ms. Carlisle to provide me with a

8    copy of the complete transcript, she took six days to answer

9    my email and answered that the transcript would have to be

10   purchased.

11        So here they're making an allegation about what

12   Mr. Keller testified without disclosing to the Court the

13   full transcript, which in fact revealed because we've now

14   filed it, it revealed that Ms. Carlisle never asked a single

15   question to Mr. Keller about the relationship between Keller

16   Publishing and the Trust.  And now we've put before the

17   Court a complete record of the facts.

18        The loans that were made by Gerald Keller as

19   trustee to the Keller Publishing Company are indisputable.

20   The financial statements of Keller Publishing show those

21   loans.  And that's what Mr. Levine's supplemental

22   declaration indicates.  So we think that the law is clear

23   here and consistent with what Your Honor held recently in

24   the Stanley Miller case.  You held that the IRA custodian

25   was not an initial transferee and I think for very similar

Page 114

1    reasons here.  the law compels a ruling that Mr. Keller was

2    not the initial transferee.  Every single withdrawal from

3    the Madoff account was simply endorsed by Mr. Keller and

4    endorsed and deposited into a bank account of Keller

5    Publishing.  And inexplicably the Trustee never sued Keller

6    Publishing even though the back of every check, which was in

7    the Trustee's possession, indicated that the depositor was

8    Keller Publishing.

9             As to the other issues, Your Honor, I think that

10   it's very clear that we reached an agreement with the

11   Trustee's counsel early on in these cases.  I don't believe

12   it was on the record before Judge Bernstein.  But it was in

13   a conversation in Court with Judge Bernstein.  And it was

14   agreed that if clients died, it would be sufficient for me

15   to simply send an email to the Trustee's counsel.

16            And next to my certification is a list of the 17

17   cases in which I gave such email notification, and the

18   Trustee then filed the amended -- the motion to amend the

19   caption.  Inexplicably in this case, he didn't do so.  So I

20   think that for all of these reasons, the motion should be

21   decided in favor of the defendants.  Thank you, Your Honor.

22            THE COURT:  Any rebuttal?

23            MS. CARLISLE:  Certainly, Your Honor, just

24   briefly.  First of all, Ms. Chaitman states that there's an

25   agreement between the Trustee and her.  However, Your Honor,

Page 115

1    we're not aware -- counsel for the Trustee and the Trustee

2    himself is not aware of any such agreement.  She cannot

3    point to any such agreement on the record, and certainly

4    there is -- without going into too many details about all of

5    the lists here, at least one of these does not follow what

6    she states.  In the Bruno Di Giulian matter, Adversary

7    Proceeding 10-4728, the defendants actually refuse to

8    stipulate, Your Honor, to entry of a substitution and

9    require that the Trustee file a motion to substitute in that

10   case and filed motions in response to that.  If Your Honor

11   would like, I can certainly provide you with a copy of -- or

12   with the docket entry for that so you can take judicial

13   notice of that.

14           THE COURT:  Okay.  If it's a judicial -- if it's a

15   docket entry, just give me the docket entry and I can take

16   judicial notice.

17           MS. CARLISLE:  Certainly, Your Honor.  I

18   apologize.  One moment.  I'm finding it in my notes.  It is

19   in the main case 08-01789, it is Document Number 15979 filed

20   on May 10th of 2017.  The adversary proceeding is APN 10-

21   04728, Picard v. Bruno Di Giulian.

22           THE COURT:  Very good.  Thank you.  Very good.  I

23   will issue a written decision.

24           MS. CARLISLE:  Thank you, Your Honor.

25           MS. CHAITMAN:  Thank you, Your Honor.

Page 116

1          THE COURT:  Thank you.  Adversary Proceeding 20 --

2          MS. CHAITMAN:  I believe --

3          THE COURT:  Yes, Ms. Chaitman?  I didn't hear you.

4          MS. CHAITMAN:  Yeah.  I just -- I believe this

5    concludes my involvement in the hearing.  But I just would

6    ask that Mr. Cremona confirm that before I hang up.

7          MR. CREMONA:  Nicholas Cremona, Baker and

8    Hostetler.  I can confirm that that's -- that concludes the

9    need for Ms. Chaitman's participation.

10         MS. CHAITMAN:  Okay.  Thank you.

11         THE COURT:  Very good, Ms. Chaitman.  You have a

12   good day.

13         MS. CHAITMAN:  You too, Your Honor.  Bye.

14         THE COURT:  20-01316, Irving Picard, Trustee for

15   the Liquidation of Bernie L. Madoff Investment Securities v.

16   Rafael Mayer, David Mayer, Montpellier International Ltd.,

17   Prince Assets Ltd., also known as Prince Asset LDC, Prince

18   Resources LDC, Montpellier USA Holdings LLC, Khronos Liquid

19   Opportunities Fund Ltd. and Prince Capital Partners LLC.

20   State your name and affiliation.

21         MR. OLIVER:  Good morning, Your Honor.  Jason

22   Oliver, Baker & Hostetler, on behalf of the Trustee, Irving

23   Picard.

24         MS. LONGSTAFF:  Good morning, Your Honor.  Carrie

25   Longstaff, on behalf of the Trustee, Irving Picard, as well.

Page 117

```
 1              MR. FISHER:  Good morning, Your Honor.  Eric

 2    Fisher, from the Law Firm of Binder & Schwartz, on behalf of

 3    individual defendant, Rafael Mayer.

 4              MR. STEARNS:  Good morning, Your Honor.  Eugene

 5    Stearns, Carlos Canino and Matt Graham, on behalf of the

 6    individual defendant, David Mayer.

 7              THE COURT:  I'm sorry --

 8              MR. WALTER:  Good morning, Your Honor.

 9              THE COURT:  -- what is the individual defendant,

10    Mr. Stern?

11              MR. STEARNS:  Your Honor, the individual defendant

12    is David Mayer.

13              THE COURT:  Thank you.  I thought that's what you

14    said.  I just didn't hear you clearly.

15              MR. STEARNS:  And I didn't indicate my firm, David

16    Stearns Weaver Miller, and we're in Miami, Florida, Your

17    Honor.

18              THE COURT:  Thank you.

19              MR. ALTER:  Good morning, Your Honor.  I'm Daniel

20    Alter, with the Yankwitt firm.  We represent the Khronos

21    Liquid Opportunities Fund defendant.

22              THE COURT:  Very good.

23              MR. TABAK:  Good morning, Your Honor.  Daniel

24    Tabak, with Cohen & Gresser.  We represent Prince Resources

25    LDC and Prince Capital Partners LLC.
```

Page 118

1              THE COURT:  Very good.  And this is your motion to

2      dismiss.

3              MR. FISHER:  That's right, Your Honor.  Eric

4      Fisher, on behalf of Rafael Mayer.  I spoke with Trustee's

5      counsel before today's hearing and with all other defense

6      counsel.  And with the Court's permission, we've agreed that

7      Rafael Mayer will proceed first with argument on his motion.

8              THE COURT:  Very good.  Thank you.  If you would

9      just give me a moment to get to my notes on this.  Very

10     good.  Go ahead, please.

11             MR. FISHER:  Thank you, Your Honor.  I appreciate

12     that the Court has read the papers.  And so I want to use my

13     argument time to really just focus on a few salient points

14     that I think are very important in considering this case

15     from the perspective of defendant Rafael Mayer.

16             And the first point I want to make is that this

17     is, as the Court just heard in the status conference, one of

18     80 subsequent transfer cases.  But this case is like none

19     other because 79 of those other subsequent transfer cases

20     were filed between 2010 and 2012.  This case was commenced

21     eight years later, eight years after the last subsequent

22     transfer case in November 2020 and it seeks to recover

23     transfers that happened 13 years earlier in 2007 and 2008.

24             And, Your Honor, we respectfully submit that many

25     of the difficulties that the Trustee has encountered that

Page 119

1    have caused the Trustee to rely on what I'll characterize as

2    hyper-aggressive, meritless theories of liability are a

3    result of the Trustee's extreme delay here.  And it is

4    working a truly brutal unfairness on Mr. Rafael Mayer as an

5    individual defendant.  That's the first point I wanted to

6    make.

7          The second point, Your Honor, is that Rafael Mayer

8    is not alleged to have gotten a single transfer.  That is

9    not in dispute.  So this is not really a Section 550

10   subsequent transfer case as to Rafael Mayer.  It's something

11   entirely different.  And what it is, is an alter ego claim

12   that arises under Bermuda and Delaware law.

13         And I now want to shift and focus very directly on

14   that alter ego claim because that's all there is as to

15   Rafael Mayer.  There's no allegation that he received any

16   subsequent transfer or indeed no allegation that he received

17   any personal benefit in the entire complaint, not one.

18         So shifting to the alter ego theory itself, Your

19   Honor, as appendices to Rafael Mayer's reply brief, we

20   included two diagrams, Appendix A and Appendix B.  And we

21   included those to really try to simplify the allegations in

22   the complaint and present them fairly.  And what the Court

23   will find there is based entirely on allegations in the

24   complaint.  And the timeline and the diagram of the entities

25   illustrates a few really important things.

Page 120

1          First of all, when the Court looks at those

2     diagrams, so I'm referring here to Appendix B, you will see

3     that as to Rafael Mayer, as I said, all of the relevant

4     transfers happened in 2007 and 2008 between and among

5     various entities.  And then those -- three of those

6     defendant entities -- so I'm talking here about Montpellier

7     -- it's Montpellier International, but it's defined in the

8     briefing as Montpellier, Khronos Group and Montpellier USA,

9     those were dissolved in 2017.  Two of them are Bermuda

10    entities that were dissolved under Bermuda law.  One of them

11    is a Delaware that was dissolved and liquidated under

12    Delaware law.

13         And in essence, because those entities don't exist

14    anymore and haven't existed since 2017, the Trustee is

15    looking for someone else to hold liable.  And so he's come

16    up with this notion that Rafael Mayer should be held

17    individually liable for each of those three entities.  Why?

18    Essentially because he served as the liquidator for those

19    entities.  And the Trustee does not cite any case in which a

20    liquidator of a Bermuda entity or a liquidator of a Delaware

21    entity are held liable by virtue of having served in that

22    role of liquidator.

23         Your Honor, I want to turn quickly to the choice

24    of law question because I think it's important here,

25    although not dipositive.  I think that these claims are so

Page 121

1    aggressive and out of bounds that they fail under any

2    applicable law.  They fail under Bermuda law, they fail

3    under Delaware law and they fail under New York law which is

4    really the only law that the Trustee argues.

5           But the Trustee should not be arguing New York

6    because this is not a subtle choice of law question.  There

7    are not a lot of different considerations to look at in

8    figuring out what law applies.  Essentially what the Trustee

9    contends Rafael Mayer did that was a "wrongful act" was that

10   he served as a liquidator for entities that liquidated under

11   foreign law, Bermuda law and Delaware law.  And there's just

12   no question that the liquidation of a company under the laws

13   that govern that company have to be governed by those

14   relevant local laws.  And the Trustee does not cite any

15   cases to the contrary.

16          Yes, there are cases where if there are an

17   overriding number of contacts or interests with New York,

18   maybe that can override what is the internal affairs

19   doctrine and the notion that a company's liquidation should

20   be governed by its own laws.  But that's not true in the

21   case of a liquidation.  And the Trustee cites no case to the

22   controversy -- to the contrary.  And so under Bermuda law,

23   there's just no way that the Trustee can ever hold Rafael

24   Mayer liable individually.  We put in a foreign law

25   declaration in connection with our papers.  It wasn't

1    rebutted.  The Trustee barely argues Bermuda law at all.

2              And the reason that the claims fail under Bermuda

3    law, and I should say really fail under UK law -- I know

4    David Mayer who will be arguing after me, the relevant

5    entity is a Cayman entity.  But it's the same principle

6    because they all follow UK law.  And under UK law, there

7    isn't a doctrine of alter ego liability at all.

8              The closest you get is something called piercing

9    the corporate veil, which of course is a concept we're

10   familiar with here as well.  But in order to pierce the

11   corporate veil, you have to have an individual who's liable,

12   and then the individual has to create a company that the

13   individual interposes between the individual and the

14   liability to try to evade the liability.

15             That's the only way to pierce the corporate veil

16   under UK law.  I'm of course simplifying it, and it's all

17   there in our papers.  But that's why you can see that, as a

18   matter of law, this can't possibly succeed because, as I

19   said at the outset, there is no individual liability alleged

20   as to Rafael Mayer.  And these companies existed before.  So

21   they just can't possibly satisfy any of the elements under

22   Bermuda law.

23             Under Delaware law, and here I'm only talking

24   about one of the entities, Montpellier USA that dissolved

25   under Delaware law, they would need to be able to allege

Page 123

1    that the owner and entity operated as a single economic

2    entity to work an injustice.  And again there is no

3    allegation of fact that involves anything to suggest that

4    these entities operated as single economic entities.  Quite

5    to the contrary, the complaint is able to be very specific

6    about transfers from one entity to another to another.  Why?

7    Because they had separate bank accounts.  They kept separate

8    records, all of which has been produced to the Trustee.

9            In paragraph 81 of the complaint, the Court will

10   find a helpful chart that the Trustee provides that shows

11   that each of these entities had their own directors,

12   officers, shareholders.  They had a common investment

13   manager in Khronos LLC.  But there's no claim that there was

14   any disregard of any of those forums in connection with the

15   decision to engage in these various liquidations ten years

16   after the transfers at issue.

17           And I should add, Your Honor, that in 2017 when

18   these entities dissolved, there was no pending litigation

19   against them and there was no threat of litigation against

20   them.  The Trustee had never so much as sent a letter

21   saying, oh, you know, we think we might have claims some day

22   against these entities.

23           The complaint also alleges, and this is

24   illustrated in the timeline that the Court will find in

25   Appendix A, that the -- this liquidation process for the

1    Montpellier entities began in 2009 and only concluded in

2    2017.  So the Trustee's complaint tries very unfairly to

3    paint a picture of some kind of shell game that's going on

4    when that's not at all what's going on.

5           And what's crystal clear from the allegations in

6    the complaint itself is that these are investment funds that

7    suffered losses in Madoff and lots of other losses as a

8    result of the financial crisis of 2008 and 2009 and engaged

9    in a ten-year process to wind down their funds, during which

10   time they were not threatened with suit.

11          And now the Trustee comes forward in 2020 and

12   decides that he wants to sue them.  But they don't exist

13   anymore.  So he's looking to individuals to try to hold them

14   personally liable when, as I said at the outset, really the

15   Trustee has only himself to blame here for this extreme

16   delay.

17          Your Honor, I want to very quickly -- I appreciate

18   the Court's indulgence.  I know it's been a long morning.

19   But I want to very quickly touch on New York law which is

20   what the Trustee says applies here.  And as I said, it just

21   doesn't.  It doesn't.  Khronos LLC is an investment manager

22   that managed these funds, and yes, Khronos LLC is based on

23   New York.  But what we're talking about here are foreign

24   liquidations, and the Trustee does not cite a single case

25   that could possibly suggest that New York law should apply

Page 125

1    to a foreign liquidation and New York law should apply to

2    decide whether a foreign liquidation rises to the level of

3    creating alter ego liability.

4          But the reason anyway that under law the claim

5    against Rafael Mayer has to fail as a matter of law, and the

6    Court doesn't need to look any further than the case that is

7    sort of the Trustee's favorite case.  The Trustee cites

8    Picard v. Magnify throughout the Trustee's brief.  And that

9    case says very clearly that if you want to create alter ego

10   -- a viable claim for alter ego liability under New York

11   law, you need to show that the corporate forum had been

12   disregarded at the time of the transaction that's being

13   challenged.

14         The precise language, it's at page 848 of that

15   decision.  The misuse of the corporate forum must occur "at

16   the time of the transaction in question."  The transaction

17   in question here, Your Honor, are transfers that happened in

18   2007 and 2008.  The alleged wrongful conduct are

19   liquidations that happened in 2017.  There is no allegation

20   of wrongful conduct at the time of the transaction in

21   question.  There are lots of other reasons.  You could look

22   at the multifactor test.  But you don't need to because

23   there's a really simply reason why this cannot ever succeed

24   under New York law.

25         Really my last point, Your Honor, is that the

Page 126

1   Trustee sort of suggests that he should have been given

2   specific notice of these liquidations when they occurred in

3   2017.  So first of all, there's no dispute that these

4   liquidations did occur in accordance with Bermuda and

5   Delaware law and that public notice was provided, as

6   required, right?  These liquidations were published in the

7   newspaper.  And the Trustee is basically saying, well, why

8   didn't you give us specific notice.

9          So first of all, those are questions governed by

10  foreign law.  And in fact, we cite in our papers the Trustee

11  conceding to Judge Bernstein that questions of foreign

12  liquidation as regards these transferees ought to be

13  governed by foreign law.

14          But even so, let's just say for the sake of

15  argument that a trustee who had not threatened a claim

16  against these entities, had not sued these entities was

17  somehow entitled to specific notice, as if the Trustee could

18  imagine that we would call them up and say, you know, it's

19  been about ten years.  And do you think you might want to

20  sue us some day?  Because if so, we want to make sure you

21  know that we're completing a liquidation that we started in

22  2008.

23          I mean, it's just -- talk about implausible, which

24  of course is the touchstone for pleading standards here.  it

25  just makes no sense.  And even if it were true, even if it

1    were true that they were entitled to specific notice, that

2    can't possibly be the basis for holding an individual liable

3    on an alter ego theory.  If they have remedy -- if anything

4    wrong happened, and nothing did, the remedies lie in Bermuda

5    or Delaware.  They can try to reconstitute the entity.  They

6    can see what remedies they have.

7              But to jump from that to the idea that an

8    individual is going to be held personally liable for this

9    massive alleged liability is really, as I said at the

10   outset, brutally unfair.  The fact that an individual has

11   been sued in this case is personally devastating.  It hurts

12   his reputation.  It makes it impossible for him to go on

13   with his business.  And there are truly compelling grounds

14   here, Your Honor, for the claims against Rafael Mayer

15   individually to be dismissed definitively.  That means with

16   prejudice, without leave to replead.

17             Having him in the case, having these personal

18   issues in the case just complicates the case.  And this is a

19   case that if it's going to go forward, it really needs to be

20   cleaned up before it does, and it needs to be a case that

21   goes forward in a commercially sensible way.  And that's not

22   the way the case is currently set up.

23             Unless the Court has questions, I have nothing

24   further on behalf of Mr. Mayer.

25             THE COURT:  I do not.  Next, I think you all have

Page 128

1    a way that you all want to argue these.

2              MR. STEARNS:  We did, Your Honor, by agreement.

3    And I'm Gene Stearns, of Stearns Weaver Miller.  And Your

4    Honor, I was told by your clerk's office that I need to ask

5    to share a screen, be co-host for purposes of sharing the

6    screen and, if so --

7              THE COURT:  And for what purpose --

8              MR. OLIVER:  Your Honor, I apologize.  This is

9    Jason Oliver, on behalf of the Trustee.  The Trustee would

10   like to respond to Mr. Fisher's argument on the motion to

11   dismiss filed by Rafael Mayer.

12             MR. STEARNS:  If I may, Your Honor, my argument is

13   going to be brief and it's going to be consistent with Mr.

14   Fisher's argument and it makes it --

15             THE COURT:  I think we're going to hold and let

16   you respond at the end because some of it will be redundant,

17   I'm sure.  But what do you want to share on the screen?

18             MR. STEARNS:  I just have just a brief

19   presentation that I think will -- I'm going over what's in

20   their complaint, and I believe it's useful to see it.  So

21   it's just a very brief presentation that I think you'll find

22   useful, Your Honor.  And I think our host screen would be

23   Stearns --

24             THE COURT:  Well, wait.  Wait, wait, wait.  I

25   still want to know what you're going to show me.

Page 129

1          MR. STEARNS:  This is a PowerPoint presentation

2   that's just very brief, one slide with -- which lays out the

3   allegations in the complaint.

4          THE COURT:  Okay.  You're on the co-host.  But you

5   can just point us to -- you can just point us to the

6   complaint.

7          MR. STEARNS:  The co-host --

8          THE COURT:  You're on there.

9          MR. STEARNS:  The co-host needs to be Stearns

10  Weaver share screen, not me personally, Your Honor.  Your

11  clerk that can find it, the Stearns Weaver share screen.

12         THE COURT:  Whatever you sent us is what we gave

13  you as co-host.

14         MR. STEARNS:  Okay.

15         THE COURT:  We did Stearns  Weaver.

16         MR. STEARNS:  Share screen.

17         THE COURT:  We did it when you started speaking.

18         MR. STEARNS:  One second, Your Honor.  Okay.  Got

19  it?  I'm sorry, Your Honor.  We're not the co-host?  I can't

20  do it because it's got to be -- it's got to be Stearns

21  Weaver share screen, Your Honor.  It shows up on the top,

22  screen share.  Stearns Weaver screen share.

23         THE COURT:  We see it as Stearns Weaver screen

24  share.  That's what we see from our position.

25         MR. STEARNS:  Okay.  Try it.  Okay.  It says it's

Page 130

1  disabled.  Okay.  So let me -- I'll do it without the

2  PowerPoint.  So let's go forward.

3          THE COURT:  Hold on.  We're trying to see it.

4          MR. STEARNS:  Well, I'm just not going to use it,

5  Your Honor.  I apologize for --

6          THE COURT:  We have -- we have -- I guess that's

7  it.  We have you as the host.

8          MR. STEARNS:  Okay.  Let's try to get Stearns

9  Weaver screen share.

10         THE COURT:  No.  It's the wrong one.  We have you

11  individually.

12         MR. STEARNS:  Okay.  All right.  Well, I'll

13  proceed without it, Your Honor.  First, let's be clear.  I

14  want to adopt absolutely what Mr. Fisher said because it

15  applies to David Mayer as well.  But it's --

16         THE COURT:  Can you -- can you see if you can

17  share it?

18         MR. STEARNS:  Yes.  Go ahead.  See if it will

19  work.  It doesn't?  There we go.

20         THE COURT:  We've got it.

21         MR. STEARNS:  There we go.  And it's very brief,

22  Your Honor, and I think you'll -- I think it's helpful

23  because -- the reason I think it's helpful is because the

24  names are confusing.  And they're unusual names.  And what

25  you'll see in the Trustee's complaint -- and I don't -- I

1    wouldn't accuse them of continuing to repeat the same

2    transactions over and over again to create an impression

3    that there are multiple transactions.  But as to David

4    Mayer, the transactions are very few.

5            First, the allegation in the complaint in

6    paragraph 11 is he's an individual who resides in Santa Ana,

7    Costa Rica.  The Prince Resources, one of the defendants in

8    this matter, is organized under the laws of the Cayman

9    Islands.

10           Prince LDC, which is referred to in the complaint

11   as the dissolved entity in 2019 which Mr. Mayer had a

12   relationship with, which is all organized and dissolved

13   under the laws of the Cayman Islands.  Prince Capital is a

14   Delaware company that's managed in Florida.  Prince LDC,

15   paragraph 61, allegedly received $10 million of fictitious

16   profits from Legacy -- Legacy is of course the judgment

17   debtor -- on June 6, 2008.

18           The allegations in the complaint in paragraph 66

19   are between June 13, 2008 and March 9, 2009, Prince

20   transferred the entire $10 million to Prince Resources in a

21   series of transactions.  So in that period of June '08 to

22   March '09, all of the money that's allegedly the fictitious

23   profits occurred -- was transferred in that time period.

24   Between July 11, 2008 and March 20, 2009, Prince Resources

25   transferred a portion of the $10 million, $7,250,000,

Page 132

1    roughly -- a little more than 72 percent, of the $10 million

2    was transferred to Prince Capital.

3              David Mayer was the director of Prince LDC and

4    Prince Resources, alleged in paragraph 81.  David Mayer was

5    the liquidator of Prince LDC on April 15, 2019, ten years

6    after the transfers in question.  And the single complaint

7    alleged against David Mayer is that Prince received $10

8    million of fictitious profits in '08, transferred $10

9    million to Prince Resources in '08 and '09, followed by

10   Prince Resources transferring $7,250,000 to Prince Capital

11   in '08 and '09.

12             And those entities, Prince Resources and Prince

13   Capital, are defendants in this litigation.  And all the

14   subsequent transfers to Prince Resources, Prince Capital,

15   all occurred ten years prior to the dissolution in the Grand

16   Cayman.  And the only claim against David Mayer is that he

17   is the alter ego of Prince.  There is no allegation that he

18   is a transferee and no allegation of fraud.

19             Your Honor, it is difficult -- I mean, and so

20   we're perfectly clear here, the law in this jurisdiction

21   could not be more clear that there is no claim for assisting

22   a fraudulent transfer.  The case we cited is Klein v.

23   Tabatchnick, 459 F. Supp. 707 (S.D.N.Y 1978), and adopted by

24   reference in Klein v. Tabatchnick, 610 F.2d 1043 in the

25   Second Circuit in 1979.  And all the cases have adopted

1    that.  Uniformly the theory is you -- it's a transferee map,

2    that you follow the money.  You don't have a civil action

3    for allegedly aiding and abetting or causing someone to

4    obtain a transfer.  That law just is crystal clear.

5           So now look at what the Trustee filed in this

6    case.  Suing David Mayer, a citizen of Costa Rica, a day or

7    two prior to the expiration of the statute of limitations,

8    alleging that the thing he did wrong, which they

9    acknowledged in their reply brief was not a fraud, that he

10   received no transfer himself and alleged no benefit that he

11   received for himself.  But somehow he's liable for a

12   dissolution of an entity that ten years earlier transferred

13   the money that allegedly came from Madoff into the funds in

14   which he had back ten years earlier some responsibility.

15          Now this, you know, the Trustee has had an

16   enormous run of success in the Madoff litigation.  No one

17   can quarrel with that.  But, you know, he has shot and made

18   great claims.  He's collected a lot of money for victims.

19   But at some point, you begin to believe that everything you

20   do is right, that you don't have to worry about doing

21   something that's just wrong.  But to sue David Mayer

22   individually to create what we would call, at least in this

23   jurisdiction, a designer claim, one that is not recognized

24   by the law, but one that's attempting to get around the law

25   because the law -- if you read his complaint, all it seems

Page 134

1    to allege is somehow or another there's some aiding and

2    abetting liability when in reality the law doesn't permit

3    it.  And when it comes down to the end, the claim that they

4    hang their hat on is a dissolution in 2019, ten years after

5    the money that allegedly came from Madoff to other entities

6    that are defendants in this case.  By the way, it's not

7    alleged that the defendants in this case can't respond to a

8    judgment until they get to their papers.  And in their

9    papers, now in their response to the motion to dismiss, they

10   say, oh, this was intended to avoid a solvency claim.  It

11   was intended to move the money beyond the reach of the

12   Trustee.  That is not in their allegations in their

13   complaint.

14           This, respectfully, Your Honor, I'll reiterate

15   what Mr. Fisher said, that individuals being brought into

16   these cases that had no involvement in the cases in terms of

17   receiving transferred money, this causes enormous pain and

18   anguish and personal responsibility, personal harm.  And to

19   just throw a claim like this against the wall is

20   particularly outrageous.  And, Your Honor, respectfully,

21   this claim needs to be dismissed.

22           THE COURT:  Thank you.  Would you please give up

23   cohosting responsibilities so we can take it back?

24           MR. STEARNS:  Yes, of course.  Okay.

25           THE COURT:  And again, I'll let the Trustee at the

Page 135

1    end.  Who else is next?  You're on mute.  You're on mute.

2    You're on mute.  You're on mute.

3              MR. ALTER:  I apologize.  Good morning, Your

4    Honor.  This is Daniel Alter, on behalf of Khronos Liquid

5    Opportunities Fund.  And I seem to be the caboose in a very

6    long train of claims here.  And, you know, Your Honor,

7    that's pretty consistent with the way the Trustee has

8    treated KLOF in its own pleadings, most demonstrated in the

9    fact that in several of the most operative allegations of

10   the complaint, the Trustee has left out KLOF entirely.  And

11   I think I can explain why.

12             Unless the Court has any questions about the

13   jurisdictional issues we've raised, I would happily rest on

14   our papers and instead really focus on the complaint itself,

15   the allegations that have been made, a total of six

16   allegations in a 28-page complaint.  And I could walk the

17   Court, if Your Honor would allow it, through each allegation

18   quickly and demonstrate exactly why it fails to state a

19   claim.

20             THE COURT:  But did you do that in your papers?

21             MR. ALTER:  Yes, I did.  But I think I can make

22   some added comments here because, you know, Your Honor --

23             THE COURT:  As long as you don't repeat yourself.

24             MR. ALTER:  I certainly will try not to.  In

25   paragraph 61, Your Honor, that's the base paragraph by which

Page 136

1    the Trustee alleges that Legacy transferred $50 million in

2    customer property to Montpellier Resources.  Fair enough.

3    That's the initial transfer.  Actually it's the second

4    transfer.  In March of 2019, two years later, Montpellier

5    becomes what's known as a Bermuda segregated company.  And

6    this is where it gets tricky for the Trustee because the

7    company divides all of its assets into two accounts, a

8    distribution account and a continuing account.  But nowhere

9    in the complaint is there an allegation that explains

10   whether or not Legacy funds are included in one or both of

11   those accounts.  We simply don't know where the Legacy

12   property is.

13          If you move on to paragraph 92, there's some

14   mechanical things.  Montpellier changes its name to Khronos

15   Group.  The continuing account changes its name to the

16   liquid opportunities segregated account.  But we know that

17   the distribution account is still in existence and still

18   there's no clarity as to whether the Legacy funds are in

19   either account.

20          Now in paragraph 93, in 2011, two years later,

21   KLOF is formed as a Cayman Islands company, and the Khronos

22   Group transfers allegedly approximately $109 million from

23   the Khronos Group continuing account to KLOF.  Again we

24   don't know what that money compromises, what constitutes

25   that $109 million, if it has any Legacy funds.  Now we get

Page 137

1    to paragraph 94 and this is the touchstone of the Trustee's

2    complaint.  This is the fudge factor.  And it says after

3    July 2011, which is four years after the Legacy transfer to

4    Montpellier, KLOF allegedly succeeded and took over for

5    Khronos Group.

6              Now what this is, Your Honor, is an effort to

7    connect KLOF with the Legacy funds.  And that is an effort

8    because they have to somehow avoid the vacuum of information

9    created by the segregated account structure.  But there's

10   two problems with this key -- at least two problems with

11   this key allegation which the whole claim rests on.  And the

12   first is it's conclusory.  You know, it's not well pleaded.

13   We don't know what that means.  There are no factual

14   supports for it.

15             So that in and of itself can't support a cause of

16   action.  But even more importantly, Your Honor, that

17   allegation is false and is contradicted by the complaint

18   itself because if you look at paragraph 104, the Trustee

19   alleges that in September 2007 -- that's six years after

20   KLOF is formed and supposedly took over for Khronos Group,

21   the Trustee alleges that Khronos Group is liquidated and

22   dissolved in Bermuda.

23             So the complaint admits that these two corporate

24   entities coexisted for no less than six years.  In other

25   words, KLOF did not take over and succeed to the Khronos

Page 138

1    Group.  It was a separate entity and it can't fudge the fact

2    -- when I say it, I mean the Trustee can't fudge the fact

3    that it can't follow the Legacy funds into KLOF.  And that's

4    no small thing.  I mean, that's the fundamental element to a

5    Section 550 claim.

6            And you know, it's not really too -- when they're

7    being sued for at least $50 million, it's not too much to

8    demand that the plaintiff allege that it actually received

9    the money.  We have no such allegation here.  We have an

10   allegation which is factually incorrect and entirely

11   conclusory that somehow KLOF succeeded to and took over

12   arguably what they're saying the liability of Khronos Group

13   was.  But they don't plead the underlying facts.  There's

14   nothing to support those barebones conclusions, that bald

15   assertion as some in the case referred to.

16           So Your Honor, my argument really isn't much more

17   complicated than that.  Six allegations that go to the

18   liability of KLOF and they don't connect KLOF with customer

19   money that came from Legacy, plain and simple.  I don't want

20   to burden the Court anymore with that because I think it

21   plainly makes our defense.  So if Your Honor has no further

22   questions, I'd be happy to rest.

23           THE COURT:  Thank you.  I do not.  Anyone else

24   wish to be heard on the motion to dismiss the filing of the

25   motion?  Very good.  Trustee?

1          MR. OLIVER:  Thank you, Your Honor.  Jason Oliver,

2     Baker Hostetler, on behalf of the Trustee.  And I will be

3     speaking in response to the motions to dismiss filed by Mr.

4     Rafael Mayer and Mr. David Mayer, and my colleague, Ms.

5     Carrie Longstaff, will be speaking as to the motion to

6     dismiss filed by Khronos Liquid Opportunities Fund.

7          THE COURT:  Very good.  Thank you.

8          MR. OLIVER:  So to begin, it's not unsurprising

9     that neither Mr. Fisher nor Mr. Stearns make any reference

10     of what happens with respect to the Mayers and Khronos even

11     before the subsequent transfers in this case were made.

12     And, you know, as Your Honor is aware, the Second Circuit on

13     August 30th overturned the good faith standard, and in so

14     doing summarized the Trustee's amended complaint in the

15     Legacy Capital adversary proceeding and at the same time

16     vacated Judge Bernstein's findings on that motion to

17     dismiss.

18          In the Trustee's view, the Second Circuit's

19     summary of the facts alleged in the amended complaint in the

20     Legacy Capital adversary proceeding show a plausible abuse

21     of the corporate forum with respect to the Mayers' actions

22     and Khronos LLC.

23          For background, both the Mayers are mentioned in

24     the Legacy Capital complaint.  The Trustee has incorporated

25     by reference and, in some instances, specifically re-pled

Page 140

1    allegations in the Legacy Capital amended complaint.  And in

2    the summary the Second Circuit put forth, on page five of

3    their opinion, they do talk about the fact that Legacy,

4    which was controlled by Jimmy Mayer and Rafael Mayer, hired

5    Khronos LLC upon suspicions raised by Renaissance

6    Technologies regarding risks of fraud with respect to Madoff

7    and the Legacy BLMIS investigation.  They hired Khronos LLC

8    to do an investigation of those concerns which confirmed

9    those concerns.  And Khronos LLC, from its founding in 2001,

10   was comanaged and cofounded by managing partners David Mayer

11   and Rafael Mayer, and both of those individuals are

12   mentioned in the Second Circuit opinion.

13            The Second Circuit opinion goes on to cite the

14   Legacy Capital amended complaint to note that Rafael Mayer

15   was a member of the oversight committee for Meritage.  The

16   oversight committee was responsible for looking into the --

17   all the investments of the Meritage fund, which included the

18   BLMIS Legacy investment.  And Mr. Rafael Mayer was the only

19   member of that oversight committee that objected to the

20   Meritage oversight committee's decision to redeem from the

21   Legacy Capital investment from BLMIS.

22            As a result, Mr. Mayer and Khronos LLC, which was

23   controlled by both David and Rafael Mayer, confirmed the

24   suspicions of the Renaissance report and the time was used

25   for Mr. Rafael Mayer to go out and essentially purchase the

Page 141

1    second half of the investment that was remaining that

2    Renaissance and Meritage had not yet redeemed.  And he found

3    a purchaser and obtained a loan from BNP Paribas Dublin -

4    Dublin Branch to satisfy that portion of the investment.

5            So with that backdrop, the Trustee is not simply,

6    as I hope Your Honor can appreciate from our papers,

7    complaining about liquidations that occurred in 2017 and

8    2019.  The Trustee is looking at the actions of the Mayers

9    and their controlling powers over Khronos Group, which was

10   the investment advisor of each and every recipient of

11   subsequent transfers in our recovery complaint that's before

12   the Court and looking at the actions that the Mayers took

13   both individually and in conjunction with their roles as

14   managing directors of Khronos that was, in our view, as Mr.

15   Fisher put it, a shell game to funnel away money and

16   frustrate the Trustee's purpose of recovery for the victims

17   of the BLMIS estate.

18           Mr. Fisher and Mr. Stearns also talked about a

19   ten-year period of time where the Trustee did not advise

20   either by letter, email or complaint that there could be the

21   potential that we would be bringing subsequent transfer

22   claims against these particular entities.

23           And I'll respectfully point to the fact that under

24   Section 550(f) of the Bankruptcy Code, there is no

25   requirement for the Trustee to bring an action to seek

Page 142

```
 1    subsequent transfers until within a one-year period of

 2    avoidance.  I don't believe that there was a discussion at

 3    length in Mr. Fisher's presentation.

 4              But Legacy Capital in the underlying proceeding

 5    did agree to a judgment of $79.5 million which did, in the

 6    final judgment, seek to avoid the initial transfers.  So

 7    from November of 2019, those transfers were avoided and that

 8    started the clocks that required the Trustee to file the

 9    subsequent transfer action which we did within that

10    statutory time period.

11              I'd like to next turn to the choice of law that

12    both counsel raised, unless Your Honor has any questions.

13              THE COURT:  No.  Please go ahead.

14              MR. OLIVER:  Okay.  Thank you.  The Trustee has

15    taken the position that New York law governs the substantive

16    issues of alter ego law in this particular case.  The

17    Trustee has cited the Picard v. Magnify decision, 583 B.R.

18    829 (Bank. S.D.N.Y. 2018), for the proposition that the

19    internal affairs doctrine and reliance on the place of

20    incorporation of an alleged defendant in the alter ego

21    context is a rebuttable presumption.

22              We've also cited Judge Bernstein's decision in

23    Magnify to point out that in that particular case the judge

24    took particular note of the unique injury to the Trustee who

25    stands in the shoes of the BLMIS victims, all of them, and
```

Page 143

1    that the specific injury in that case was to a third party,

2    not a creditor or shareholder or other related entity to the

3    defendant that was dissolved.

4           The Mayers essentially, in both of their replies

5    and opening papers, ignore all case law that the Trustee has

6    cited on pages 17 and 19 of our opposition brief that

7    showcases both in the alter ego context and other commercial

8    contexts where the presumption was rebutted when the control

9    over the entities and the specific actions complained of

10   occurred and had greatest contacts with New York.

11          So in this case, it's our position that New York

12   law should be applied by Your Honor because Khronos LLC, as

13   I identified at the outset, is a New York-based investment

14   manager for all the subsequent transferees.  And Rafael

15   Mayer and David Mayer, as we know, were both the managing

16   principals of Khronos.

17          During the time at issue that the subsequent

18   transfers were made in this complaint, Montpellier Khronos

19   Group, Montpellier USA and Prince Investment Funds were all

20   run out of New York through Khronos with Khronos directing

21   the day-to-day investments.  So the day-to-day business was

22   run from New York and the investment decisions were all made

23   by the Mayers that related to the Legacy Capital investment

24   and the subsequent transferees.

25          Beginning in 2016, Prince Assets LDC was managed

Page 144

1    by Prince Capital, which is another Mayer entity that was

2    formerly wholly owned -- who was a formerly wholly owned

3    subsidiary of Khronos LLC, which in turn conducted business

4    in New York through Khronos LLC's New York office, citing to

5    paragraph 15 and 112 to 114 of our complaint.

6            So, you know, using Magnify as a backdrop, here

7    the alter ego defendants, Rafael Mayer and David Mayer,

8    didn't even have to come to New York at the time for a

9    handful of meetings.  They were here.  they were conducting

10   day-to-day business as the investment manager for all of

11   these subsequent transfers -- subsequent transferee

12   recipients.

13           BLMIS, as Your Honor is aware, is a New York

14   debtor.  And as I mentioned before, the injury in this case

15   results to third parties.  You know, these are Rafael Mayer

16   and David Mayer, we've alleged rendered judgment-proof, the

17   foreign companies that they managed benefited their families

18   and friends to redeem their shares at the expense of BLMIS

19   defrauded customers.  So therefore the location of the

20   injury is the location of the BLMIS defrauded customers,

21   states and victims, not the place of incorporation.

22           The individual defendant location activities,

23   Rafael Mayer is and was a New York citizen.  David Mayer at

24   some point, you know, moved to Costa Rica.  But he was a

25   managing director of Khronos LLC through February 2016

Page 145

1    conducting day-to-day business in New York.

2           Another glaring omission from both Mayer

3    defendants' arguments today is that the Trustee in 2010 sent

4    Rule 2004 subpoenas to both David Mayer and Rafael Mayer as

5    individuals.  And we received in response -- I'm sorry.

6    that was in July of 2010.  We received in response a joint

7    document production from the Mayers which basically

8    identified the subsequent transfers to Montpellier and

9    Prince, what we'll call the initial level subsequent

10   transfers, which are sought in this complaint.

11          So at that time, the Mayers were clearly aware

12   that there were subsequent transfers to Montpellier and

13   Prince, at a minimum.  And as we see later in 2020, we get a

14   separate Rule 2004 production, this time from Khronos LLC,

15   that shows that there are second level and third level

16   subsequent transfers.

17          So we also talk about in our complaint that the

18   Mayers had a plan of reorganization.  And in the Trustee's

19   pleading, we see in August of 2010, right after the Mayers

20   received the Rule 2004 subpoena from Khronos -- excuse me,

21   right after the Trustee received the 2004 subpoena from the

22   Trustee, we see that Khronos and the Mayers planned to

23   dismantle the Montpellier Group.

24          And the focus of this restructuring on the

25   Montpellier side of the equation is that all of het assets

Page 146

1    in the funds included in Khronos Group are going to be

2    transferred to a new fund called Khronos Liquid

3    Opportunities Fund, as Mr. Alter referred to as KLOF, which

4    is owned and controlled in its totality by Khronos LLC, and

5    citing to paragraph 72 and 79 of our complaint and also

6    paragraph 99.  So these are essentially a new entity that's

7    created by the Mayers that's wholly controlled and owned by

8    Khronos LLC, again a Mayer entity run out of New York.

9            The only arguments that the Mayers essentially

10   make concerning application of Bermuda or Caymanian law as

11   to an alter ego analysis are non-persuasive for the

12   following reasons.  The facts just simply support foreign

13   law in this case.  The only real argument that we're seeing

14   regarding the application of foreign law is the place of

15   incorporation and the place of filing foreign dissolution

16   documents.  That's it.  I mean, even a New York address is

17   used by Rafael Mayer on the dissolution documents that we

18   found filed in Bermuda.  There's no allegation that the --

19   or there's no argument that the bank accounts related to

20   these subsequent transfers are in the place of incorporation

21   because they're not.

22           Defendants also here are exempt entities in both

23   Bermuda and the Cayman Islands.  You know, while not

24   dispositive, this fact, in our view, significantly reduces

25   the interest of the chartering jurisdictions.  So

Page 147

1    Montpellier International, Khronos Group, which was formerly

2    Montpellier Resources and Prince Assets LDC, these are all

3    exempt entities under foreign law.

4            The Mayers also talked about whether or not the

5    real issue here is a dissolution under foreign law and the

6    Trustee's complaint regarding whether or not that was

7    proper.  And the Mayers cite certain cases on page seven of

8    their reply brief for David Mayer and pages nine to ten for

9    Rafael Mayer reply brief.  But in all those cases, the

10   remedy sought was that a dissolution was going to be brought

11   in a foreign insolvency hearing

12           Here, the Mayers have gone ahead and dissolved the

13   corporations.  There's no foreign insolvency proceeding.

14   There's no request for dissolution or shareholder

15   restrictions coming out of a dissolution because simply the

16   companies are resolved and there's no more entity to sue.

17           For those purposes, we think New York law should

18   govern.  And then moving on, specifically under New York

19   law, the requirements -- and I'll pause for a second.  The

20   Mayers are essentially in our view arguing a motion for

21   summary judgment at this phase.  We are here today on a

22   motion to dismiss to make sure that the claims are properly

23   pled and that we have the elements met for each claim.

24   We're not looking to prejudge the result here.  And as Your

25   Honor  recognized in the recent Fairfield decision, it's not

Page 148

1    so much whether or not the Trustee will ultimately prevail

2    in this claim but whether a claim has bene properly pled

3    under the law so that evidence can be taken for discovery.

4          So under New York law, to assert a claim for

5    piercing the corporate veil, a plaintiff must establish that

6    the owners exercised complete domination of the corporation

7    in respect to the transaction attacked and that such

8    domination was used to commit a fraud or wrong against a

9    plaintiff which resulted in plaintiff's injury.

10         You know, we heard some complaint from both

11   counsel today that there's no allegations concerning the

12   subsequent transfers which are the transactions attacked.

13   And I would dispute that, Your Honor because, as I pointed

14   out, Rafael Mayer and David Mayer were well aware of the

15   suspicions with respect to BLMIS investment going back to

16   2003 and 2004, based on their own investigation with Khronos

17   Group, which eliminated any third-party oversight as the

18   Second Circuit set forth in its summary of our facts

19   concerning the BLMIS questions regarding risk of fraud.

20         I would also submit that the 2010 document

21   production, you know, also shows that the Mayers, who were

22   the managing directors of the Khronos Group, at the time of

23   the transfers in question, the subsequent transfers in

24   question and certainly had knowledge that, you now, they

25   existed and produced documents showing their very existence.

1          You know, we've talked about Khronos being

2    dominated by the Mayers, which is set forth in our recovery

3    complaint at paragraph 108 where, again, there was a

4    restriction as set forth in the Trustee's complaint at

5    paragraph 108 in the recovery complaint and the Legacy

6    Capital amended complaint at paragraph 52 which was

7    incorporated by reference that the Mayers unusually

8    restricted access to Legacy Capital's BLMIS investment to

9    both Rafael and David Mayer, again removing any third-party

10   oversight and controlling the historical review of the BLMIS

11   Legacy Capital account statements.

12          As we said, these very allegations are cited in

13   the Second Circuit appeal decision.

14          Rafael Mayer, turning to paragraph 81, we've put

15   together a chart that shows that Rafael Mayer managed, at

16   the time the transfers were made, Montpellier, Montpellier

17   Resources, later Khronos Group, and Montpellier USA.  These

18   all invested through Montpellier and Montpellier USA was

19   their majority owner and had voting and dispositive powers

20   over them, citing paragraph 69.

21          We've also alleged as part of the New York alter

22   ego analysis that Rafael Mayer -- all of these specific

23   entities, Montpellier, Khronos Group, Montpellier USA, KLOF,

24   Prince and Prince Resources all used Khronos LLC's New York

25   address to do business.  Montpellier USA was managed as well

Page 150

1   by Rafael Mayer and Khronos in New York, complaint 17 and

2   81, and we alleged that Montpellier Resources invested

3   through three entities of which it was the majority owner

4   and over which it had voting and dispositive power,

5   including Montpellier USA, paragraph 69.  Montpellier

6   Resources was also managed by Khronos at the same time.

7           We talked about earlier how Rafael Mayer had

8   personal knowledge of subsequent transfers based on his role

9   of Khronos as the investment advisor and therefore, based on

10  his role as the investment advisor of both Legacy and

11  Khronos LLC, Rafael Mayer knew on the filing date, which was

12  December 11, 2008, that Legacy Capital could never satisfy a

13  judgment against it, citing complaint paragraph 112.

14          Thus, upon avoidance, it was imminent that the

15  Trustee would seek recovery of subsequent transfers within

16  the within the statutory time period set forth in Section

17  550(f) of the Bankruptcy Code.

18          Rafael Mayer also knew that all of the transfers

19  from Montpellier International to Montpellier Resources

20  occurred between September 2007 and October 2008.  Now this

21  was prior to Montpellier Resources, later Khronos Group,

22  being directed into a segregated accounts company in or

23  about March of 2009.  And Mr. Alter made reference to that

24  segregated accounts company, and that's citing  paragraphs

25  63 and 91 of our complaint.

Page 151

1           So to use Mr. Fisher's words, this is where we

2    start to see a shell game starting to unfold, you know, with

3    the background of the Mayers' knowledge of subsequent

4    transfers and the backdrop of the Mayers' role in terms of

5    Khronos LLC taking over any review of Renaissance's concerns

6    regarding the BLMIS investment and risk fraud.

7           So right after, you know, soon after the December

8    11, 2008 filing date, it was clear that Legacy Capital would

9    be liable for fictitious profits based on -- excuse me, when

10   it was clear that --

11          THE COURT:  Aren't you just -- aren't you just

12   telling me your complaint?  I was looking for rebuttal.  But

13   it just seems to me you're just repeating your complaint.

14   Am I missing something?

15          MR. OLIVER:  I'm trying to explain, Your Honor,

16   that the actions that we're complaining about are not just

17   limited to the liquidations and that the Mayers --

18          THE COURT:  Okay.  But didn't you say that in your

19   complaint basically?

20          MR. OLIVER:  Well, we talk about the Mayers being

21   involved in creating a segregated accounts company after

22   having knowledge of the subsequent transfers.  And this is

23   being set forth in paragraph 91.  We also talk about the

24   Mayers having knowledge of the subsequent transfers by their

25   Rule 2004 document production in 2010.

1           THE COURT:  Okay.  Go ahead.  Go ahead.  If you

2    think -- if you think it's different, I want to hear it.

3           MR. OLIVER:  -- which is in paragraph 98.

4           THE COURT:  Okay.

5           MR. OLIVER:  We then talk about in paragraphs 81

6    and 100 that Montpellier Resources name changed in August of

7    2010, where again the Mayers are creating a new entity in --

8           THE COURT:  I didn't mean to interrupt your

9    argument.  I just -- I just didn't want you repeating what's

10   in your complaint, and now that's what you're doing.  So

11   just continue with your argument.

12          MR. OLIVER:  We also have talked about KLOF

13   earlier and that the Mayers, you know, transferred --

14   created KLOF as an entity that was owned by Khronos LLC and

15   in turn transferred the continuing class assets to KLOF such

16   that those funds were owned by Khronos and both Mayer

17   brothers were managing directors of Khronos LLC at the time.

18          The Trustee alleges that in July of 2019, Khronos

19   Group transferred over $109 million to KLOF, which was owned

20   by -- which was owned by Khronos LLC.

21          So again, we're -- the point here, Your Honor, is

22   to show that at multiple turns, and I appreciate this is

23   somewhat evident in our complaint and in our briefing, the

24   Mayers created a new entity that received new transfers of

25   money, each time creating an entity that they controlled.

Page 153

1   And just to be clear, David Mayer, who was not a managing

2   director of KLOF but was an executive officer of KLOF in its

3   formation of 2011 when that transfer was made.

4           And as we, you know, alleged in our complaint,

5   KLOF succeeded and took over for Khronos Group and the

6   Trustee sought recovery of Montpellier's subsequent

7   transfers from KLOF, and that's paragraphs 94 to 95.

8           And we've also alleged specific incidents of

9   comingling of corporate funds.  And, you know, these are --

10  I won't go through all of them.  But they're in paragraphs

11  89 to 90 of our complaint.  And chiefly important here is

12  that the Mayers did personally benefit by entities -

13  corporate entities paying their personal legal fees

14  responding to the Trustee's complaint -- to the Trustee's

15  Rule 2004 subpoena.

16          We also see the liquidations as part of the

17  overall shell game approach where the Mayers, as we know,

18  didn't provide notice to the Trustee.  They were the

19  director submitting the declaration of insolvency for

20  foreign entities.  And, you know, basically once again, like

21  we saw in 2003 and 2004, the Mayers removed all independent

22  oversight and, despite there potentially being other

23  directors of both Montpellier International, Khronos Group

24  and Prince, the Mayers, both Rafael and David Mayer, you

25  know, designed declarations of solvency knowing that there

Page 154

1    were claims that the Trustee would bring based on, you know,

2    David Mayer and Rafael Mayer's own arguments that Legacy

3    Capital was impecunious and that Section 550(f) provided a

4    period of time to do so.  so again we see the dissolution of

5    these two companies, Montpellier, Khronos Group and Prince

6    as a final step in the shell game where the misconduct of

7    the Mayers led to distributing assets away from the

8    Trustee's estate.

9            A final point, when we did avoid the judgment in

10   the Legacy Capital action, we see that there was discovery

11   misconduct once again with the Mayers because when the

12   Trustee served this Rule 2004 subpoena in the summer of 2020

13   on Khronos LLC, the Mayers did not -- or Khronos Group did

14   not provide the identity of the custodian of records for

15   Prince.

16           Now Prince -- you know, the management of Prince

17   was taken over in 2016 by Prince Capital, which is another

18   Mayer entity managed by David Mayer as a director and which

19   was formerly a subsidiary of Khronos LLC and run out of

20   Khronos' New York office.

21           So as Judge Bernstein noted in his Rule 2004

22   motion to quash hearing, that that particular identity

23   should have been turned over, it wasn't, and it wasn't in

24   fact turned over to the Trustee at the last possible minute

25   under Judge Bernstein's discovery order, again, in our view,

1    for the purposes of making this as difficult as it could be

2    for the Trustee to get information regarding subsequent

3    transfers.

4           For those reasons, I think our motion to dismiss -

5    - it's the Trustee's position that we have pled more than

6    enough at this stage for there to be an abuse of the

7    corporate forum, showing domination of David Mayer and

8    Rafael Mayer from Khronos LLC which is the investment

9    manager for each and every subsequent transferee at issue

10   and including those that were dissolved solely by the Mayers

11   without any notice or third-party oversight for voluntary

12   liquidations in the foreign -- in Bermuda and Cayman

13   Islands.

14          We also have pled that there's resulting injury to

15   the Trustee.  In summary, the complaint alleges that money

16   was comingled among the dominated corporate defendants,

17   their assets were stripped and they were liquidated in order

18   to avoid repaying customer property to the BLMIS estate.

19          So the benefit to the Mayers and personal interest

20   is another issue that was raised by both Mayer counsel in

21   their arguments.  We've asserted and alleged that the Mayers

22   were protecting friends and family investments from

23   recovery, citing paragraphs 71, 78 to 79 of our complaint.

24   And the Mayers were also seeking to profit from the

25   continued business by transferring assets to a new entity,

Page 156

1    KLOF, that they controlled, and that's paragraph 79.  We do

2    mention that the Mayers were profiting from this -- from

3    this creation of new entities and from keeping the money

4    away from the Trustee because they, as we know, were the

5    managing directors of Khronos which was getting investment

6    and performance fees at all times from these particular

7    entities.  So there is a benefit to the Mayers which are

8    both reputational because, as we 'eve alleged, the funds

9    were, you know, were family-related and associate-related.

10   And also there's a fee aspect here too.

11           Finally, as Your Honor is aware, we've cited the

12   Baby Phat Holding Company LLC v. Kellwood Co., 123 A.D.3d

13   405 (1st Dept. 2004), which said that allegations of

14   corporate funds that were purposefully diverted to make it

15   judgment-proof of that a corporation was resolved without

16   making appropriate reserves for contingent liabilities are

17   sufficient to satisfy the pleading requirement of wrongdoing

18   which is necessary to pierce the corporate veil on an alter

19   ego theory.

20           And I think at this point, you know, I would

21   again, you know, just counter Mr. Fisher's argument that we

22   haven't addressed English law.  I think that we certainly

23   have and we would take the position that our facts as pled

24   in the complaint also plead a plausible alter ego or

25   piercing the corporate veil complaint under foreign law,

Page 157

1    which would be the law of England.  Thank you, Your Honor.

2            THE COURT:  Thank you.  And your colleague?

3            MS. LONGSTAFF:  Good afternoon, Your Honor.

4    Carrie Longstaff, on behalf of the Trustee.  Your Honor, the

5    counsel for KLOF skipped the jurisdictional argument which

6    I'd like to -- you know, which I think goes to how specious

7    their argument is on that point, and I'd like to cover it

8    briefly.

9            I just want to point out that I do think that

10   there's general jurisdiction here over Khronos Liquid

11   Opportunities Fund.  The officers and the directors were all

12   in New York.  I mean, there's no -- the parties don't

13   dispute that it's a Cayman Island-exempt company.  KLOF is a

14   mutual fund.  It's run out of New York by its investment

15   manager, and it's run by Rafael Mayer.  I mean, we've pled

16   this in our complaint.

17           And then even beyond the pleadings, which we tell

18   the Court that it really doesn't need to look to, but if you

19   look at Rafael Mayer's declaration, I mean, Exhibit K, they

20   admit that KLOF has no staff in the Cayman Islands.  And

21   like I said, its current directors today are Mr. Mayer and

22   Denise Mincak who are both not only in New York, but are

23   officers and directors and owners of KLOF's investment

24   manager, Khronos LLC.

25           Furthermore if we look at Khronos' ADV, Khronos

1    LLC, that is, you can see that Mr. Mayer is the managing

2    director and portfolio manager of KLOF.  Khronos LLC

3    provides investment advice for KLOF.  It selects and

4    allocates the strategies and investments for KLOF.  And

5    Khronos LLC has also allocated a portion of KLOF's capital

6    into its own separately managed account that's wholly owned

7    and controlled by Khronos LLC.

8           Khronos LLC also has custody of all of the funds

9    and all of the securities.  And the other thing, which I

10   know is in our papers, but we pointed out that the

11   subscription agreement requires all paperwork be sent to

12   Khronos LLC in New York, all questions, all transfers of

13   shareholders all go to New York.

14          And KLOF still tries to say that it's in the

15   Cayman Islands.  And what does it do to support that?  It

16   gives this Court -- it points this Court to Exhibit M.  And

17   Exhibit M gives a list of service providers.  But it gives a

18   list of service providers in the U.S. as well as in Cayman,

19   and also missing from Exhibit M are pages, which as we've

20   told the Court, we have issues with the fact that we don't

21   have complete copies of documents.

22          And clearly the pages that are missing from that

23   Exhibit M, the authoring memoranda from KLOF, talk about the

24   investment advisory agreement.  It talks about Khronos LLC,

25   and it talks about the directors.  And none of that has been

Page 159

1    produced to the Trustee.  And there's no doubt that that's

2    relevant to show what KLOF is doing and who's running KLOF.

3    But we know from Khronos LLC's ADV, we know who's running

4    KLOF.  It's Rafael Mayer and it's Khronos LLC out of New

5    York.

6              For that reason, we believe that there's specific

7    jurisdiction here, and we don't need to look at -- I'm

8    sorry, there's general jurisdiction here and we don't need

9    to look at specific jurisdiction because, as this Court

10   knows, you need to purposefully direct activities at the

11   forum.  And the underlying cause of action needs to arise

12   out of or relate to those activities.

13             And KLOF says it wasn't in existence at the time

14   that the transfers went to Khronos Group, that the BLMIS

15   transfers went out to Khronos Group.  But as the Trustee has

16   pled, KLOF succeeded and took over for the Khronos Group.

17   KLOF is Khronos Group's successor in interest and is a mere

18   continuation of the Khronos Group.

19             And because of that, Khronos Group's contacts with

20   this forum apply equally to KLOF in order to find specific

21   jurisdiction.  And these entities, as Mr. Oliver just

22   explained, these entities aren't strangers to each other.

23   We're not dealing with strangers.  We're dealing with all

24   Mayer-owned and controlled entities.  These are the same

25   entities that are operating out of the same address, with

Page 160

1    the same money, with the same people in New York.

2            Montpellier Resources, a Mayer entity, received

3    the BLMIS from Legacy Capital, another Mayer entity.  That's

4    the BLMIS accountholder.  Resources then transfers the BLMIS

5    money to Montpellier International, another Mayer-run

6    entity.  They then rename Montpellier International as

7    Khronos Group.  And then what do they do?  They dissolve

8    Khronos Group.  They decide they're going to dissolve

9    Khronos Group.  But they turn it into KLOF, another Mayer

10   entity, another entity with Rafael Mayer.

11           KLOF succeeds and takes over for the Khronos Group

12   after the complaint is filed in the Picard v. Legacy action

13   in 2010.  This was intentional.  They were intentionally

14   moving money.  We've pled that.  We've pled that the Mayers

15   have intentionally dismantled structures and misused

16   corporate forums.  And we've pled that they dismantled these

17   entities and replaced them with the structures centered

18   around KLOF.

19           And our claim here is to recover a transfer or the

20   value of that transfer.  We don't need to prove that we're

21   getting the exact dollar that came out of BLMIS.  The first

22   transfer out of BLMIS happened in New York.  The subtenant

23   transfer happened in New York, and the subsequent transfer

24   happened here.  These transfers were directed by the Mayers

25   in New York.  So certainly they touched this forum.  They

Page 161

1   arise out of the activities in this forum.  And there can be

2   no doubt that this Court has specific jurisdiction over

3   them.

4              So what KLOF tries to do is it tries to tell this

5   Court that it didn't get the money because you know what it

6   did?  It became a -- they -- Khronos Group became a

7   segregated account, and it became a segregated account in

8   2009, right?  In 2009.  And so what it does is it says we're

9   going to create a distribution account and continuing

10  account.  And the distribution account is going to get all

11  current assets and liabilities and the continuing account

12  will get all future assets and liabilities, and they put in

13  this declaration to try to prove this.

14             But if we step back for a minute about the

15  significance of the Mayer declaration, which I think Mr.

16  Oliver has touched on, in 2020, in July of 2020, we served a

17  subpoena on Khronos LLC as the manager of the various Mayer

18  funds, and we sought to get information related to

19  transfers.  We had a meet-and-confer -- we didn't meet and

20  confer in good faith.  They just moved, and they moved to

21  quash.  And they wouldn't tell us who the custodian of

22  records was for Prince, and it turns out that's a Prince

23  entity.

24             And Judge Bernstein not only told them that they

25  should have told us who the custodian was, he also ordered

Page 162

1    them to give us all information, all documents concerning

2    any and all transfers to and from Montpellier International

3    and Prince assets and any transfers to the transferees.

4           And so what did they do?  They gave us a carefully

5    curated production of documents, very limited information

6    about the transfers.  So now we have this new Mayer --

7    Rafael Mayer declaration that clearly contains documents

8    that were responsive to the Rule 2004 subpoena.  I mean,

9    just if we look at Exhibit A and B to the Mayer declaration,

10   what are those letters?  They seek the two transfers at

11   issue in this case from Legacy Capital shareholder,

12   Montpellier International.  And it's for the $27 million and

13   the $50 million.  And they were never provided to the

14   Trustee.

15          And now they seek to then provide limited

16   information to the Trustee.  They give a page here, a page

17   there.  We're not allowed to have everything.  And all

18   they've ever done is they continue to have excuses about why

19   the Trustee can't collect the money.  It either can't trace

20   the money, it shouldn't move forward with the recovery

21   action.  We didn't get the money, it's not us.

22          So now if we go back to this continuing and the

23   distribution account story, the problem with this is they

24   split this in 2009.  And then they give this Court Exhibit I

25   to say, you know what, we forgot about that Legacy Capital

1   liability.  So in 2011, they get the advice of Dickstein

2   Shapira and Beckster Long.  And who are they?  They're the

3   counsel for Khronos LLC, David Mayer, Rafael Mayer and

4   Montpellier Resources who becomes Khronos Group.  And they

5   tell them what the potential maximum liability is.

6            And they say, you know what, we're going to take

7   that maximum liability and we're going to put it over there

8   in the distribution account because we said so.  we're

9   saying that's a past liability.  That's where we're going to

10  stick it.  And what they did is they just arbitrarily

11  assigned it over there.  And Mr. Mayer does the declaration

12  to this Court and says, you know what, KLOF didn't get any

13  of the money.  So you can't get anything from them.

14           And you know what they're saying here, Your Honor?

15  They're basically taking a pitcher of water and what they

16  did is they poured that pitcher of water into a cup.  And

17  they said we're going to take this little part of the

18  pitcher of water, this cup here, and we're going to stick it

19  over there and we're going to call it the distribution

20  account.  And we're going to say that includes the BLMIS

21  money.  That's where it is.  It's over there.  And this

22  continuing piece is the rest of that pitcher of water and

23  we're going to keep it over here.

24           What they also don't tell you is that they then

25  took the money from the distribution account and they start

Page 164

1    funneling it back into the continuing account.  This is all

2    while it's still Khronos Group.  And we only know this now

3    because we just got these documents.  They have now -- we

4    now appreciate further, now that we've looked back at the

5    ledgers, that internally between the continuing account and

6    the distribution account, they have poured back $500 million

7    in a matter of two years.

8              And the other thing they did that's most telling,

9    is if you look at Exhibit G, the distribution account was

10   always liquidating.  In 2009, they were liquidating that

11   piece of Khronos Group.  And you know the other part was the

12   continuing part.  It was continuing on.  They were going to

13   move on with everything.

14             And I think that's why it's important if you also

15   look at Exhibit J.  Exhibit J is about how KLOF got the

16   continuing account.  But you know what else they did?  They

17   took everybody else's shares back from Khronos Group and

18   they handed them KLOF shares because they were restructuring

19   and the restructuring was in the best interest of the

20   company.  You know which company?  Khronos Group.  So they

21   switched their hat and they were Khronos Group one day.  And

22   the next day, they're calling themselves KLOF.

23             And not only did they give them new shares.  They

24   also took the assets of Khronos Group and they took it

25   subject to all liabilities, according to Exhibit J.  But

1    what they did is they continue to tell us, no, no, Khronos

2    Group had the money.  It had sufficient assets.  Look at all

3    these financial statements we've given you.  But they don't

4    tell you anything.  It's a bottom line number with no other

5    documents.  And by the way, Khronos Group is gone.  Khronos

6    Group is liquidated.

7            So this whole story about how the distribution

8    account still existed, how the money's there and you can get

9    it from them, there's no Rafael Mayer declaration explaining

10   how they're still monitoring the potential liability from

11   the Legacy Capital action, which we know is back in the

12   Second Circuit.  So the liability just got bigger.

13           There's no information on this because Khronos

14   Group is gone.  And you know what Khronos Group did?  It

15   became KLOF.  And they try to say that it didn't and they

16   try to say that it's false and it's a lie.  But that's not

17   the case here.

18           So Your Honor, for these reasons, this is why we

19   say there's specific jurisdiction, and we also say that we

20   can recover the money from KLOF.

21           And I'd just like to turn quickly to the 550

22   point.  Right?  We have pled in our complaint all of the

23   steps, as counsel has walked through.  And the final step we

24   plead is that KLOF succeeded and took over for Khronos

25   Group.  And the documents they put in which shouldn't be

Page 166

1    considered because it's a 12(b)(6) motion only hurts their

2    position and helps us.  It only supports everything we've

3    said in this complaint.  And then they try to say that,

4    well, Khronos Group didn't liquidate until 2007.  And you've

5    said that it continued on and it continued to exist.

6           But that's not what we say in paragraph 104, which

7    they cite.  All we say is they liquidated.  And the fact

8    that it took them that time to finally shut the company down

9    once and for all doesn't mean that it operating, doesn't

10   mean that it had any assets, doesn't mean it was doing

11   anything.

12          The last thing we see from them is in 2011.  So we

13   don't know where all the money went to.  We know it's gone,

14   and we know there was a continuing piece.  And we know in

15   '09, they were continuing and liquidating.  The continuing

16   piece became KLOF.

17          And the only other thing I will add, Your Honor,

18   is just that even they try to say for the 550 piece that

19   maybe it went to distribution, maybe.  They don't cite

20   anything because they know that this Court shouldn't be

21   looking at documents beyond the pleadings.

22          But the one thing that's clear is we did properly

23   plead the claim because, you know what, Khronos Group is

24   KLOF and we have the right -- Khronos Group got the money

25   and now we're seeking it from KLOF.  KLOF can't just change

Page 167

1    its name and say, no, no, we don't have the money.  You

2    didn't provide us notice.  We don't know.  We don't know

3    what transfers we got.  You didn't give us the vital

4    statistics.  We did.  We've provided the vital statistics

5    for the 550 claim.  That's all I have, Your Honor.  Thank

6    you so much.

7              THE COURT:  Very good.  Rebuttal?

8              MR. FISHER:  Yes, Your Honor.  Eric Fisher again,

9    for Rafael Mayer.  I can't possibly address everything

10   that's been said, and of course I won't.  I just want to

11   focus on a few things.

12             And maybe this is not such a delicate way to say

13   it.  But I really think that the Trustee with this complaint

14   is testing the very outer limits of what he can get away

15   with.  At the end of the day, the Court will of course need

16   to apply the pleading standards and look for facts in the

17   complaint that support these grand theories and these

18   conspiracy theories and these stories that the Court has

19   been told today that don't tie to facts that are alleged in

20   the complaint.

21             It's interesting that they describe Rafael Mayer

22   as this villain when they argue that this is not a fraud

23   complaint and they shouldn't be held to the standards of

24   Rule 9(b).  So that's pretty interesting, and I think

25   demonstrates that they don't have the facts to support these

Page 168

1    kinds of stories.  But it doesn't matter because the

2    complaint fails under Rule 8 as well.

3            Discovery.  This is not a discovery conference.  I

4    do not know why we're arguing about discovery.  But to be

5    really clear, because I was involved in that discovery and

6    because it's been so brutally mischaracterized, they issued

7    a subpoena.  The subpoenaed parties challenged that

8    subpoena.  It was litigated in front of Judge Bernstein who

9    narrowed the subpoena.

10           Before they filed the complaint, they agreed with

11   the subpoenaed parties that the subpoena, in accordance with

12   Judge Bernstein's narrowed order, had been complied with.

13   They said the subpoena was closed.  They said if they wanted

14   more information, they'd have to issue it in the context of

15   litigation discovery.

16           And the idea that they're trying to bootstrap,

17   mischaracterize false alleged discovery abuses into some

18   basis to pierce the corporate veil is really nothing short

19   of an outrage.

20           They've also talked about how this case intersects

21   with the Second Circuit's good faith decision in the Legacy

22   case.  And I didn't have a chance to speak to that in my

23   opening remarks.  So I just really briefly want to speak to

24   that.

25           THE COURT:  Okay.

Page 169

1           MR. FISHER:  Let's take the really wide view on

2     what's going on here and where this now goes.  Okay.  They

3     basically said, oh, we pled a Legacy complaint back in 2010.

4     By the way, they've conceded in their argument that they've

5     known since 2010 that the subsequent transferees were

6     Montpellier and Prince entities, and they never did anything

7     about it.

8           That being said, they said we pled a complaint

9     back then.  The complaint pled factual knowledge and willful

10    blindness.  And Judge Bernstein said, no, you haven't pled

11    enough facts to show that Khronos LLC or Legacy were

12    willfully blind or had actual knowledge of the fraud.  It

13    went up on appeal to the Second Circuit.  The Second Circuit

14    has not said that's not the right standard.  It's an inquiry

15    notice standard.  We're going to send it back to the

16    Bankruptcy Court to proceed.

17          Fine.  And in the Legacy case, which I presume

18    will roll forward, there will be litigation about whether

19    Rafael Mayer as managing director of Khronos LLC which was

20    the investment manager to Legacy's shareholders and provided

21    other account services to Legacy, there will be questions

22    about was there anything that made you suspect that this

23    might be a Ponzi scheme.  What due diligence did Khronos LLC

24    then do in response?  And this is not the time for that

25    case.

1            But ultimately the question there is, okay, then

2     if they can follow the money to Legacy and they can follow

3     the money to other shareholders of Legacy, they can go ahead

4     and try to recover it.  This general vague sense that Mr.

5     Oliver has that Rafael Mayer is a bad guy and therefore I'm

6     going to hold him personally liable for corporate transfers

7     has no basis whatsoever in the law, whatever Mr. Oliver or

8     the Court or I think of Mr. Mayer.  It has no basis in the

9     law whatsoever.

10           And the other thing that the Court needs to be

11    careful about is the way that they throw terms around.  And

12    this gets to the difference between conclusions and facts.

13    When they talk about this case, they talk about Mayer

14    entities and they talk about domination and control.  Okay.

15    A CEO makes decisions for a company.  A board of directors

16    makes decisions for a company.  A majority shareholder

17    controls a company.

18           That doesn't mean that you can't pierce the

19    corporate veil, and they haven't actually alleged anything

20    more than that.  They say Rafael Mayer is the managing

21    director of Khronos LLC which is an investment manager to

22    these entities and therefore can make lots of decisions for

23    these entities.  Absolutely right.  That's absolutely right.

24    And that's not a basis for piercing the corporate veil.

25           The only wrongful conduct is this notion that

1    money was put out of the reach of the Trustee by virtue of

2    the liquidation.  That's really it when you look through the

3    conclusions and the fog and the mist and look for facts.

4    And when you realize that those are the only facts that

5    matter, you realize that UK law applies, and you realize

6    that as a matter of law, they cannot possibly proceed on

7    this alter ego theory which, as I said before, is

8    devastating to an individual human being without any basis.

9    It is an abuse of their power.

10             THE COURT:  Very good.

11             MR. STEARNS:  I will be very brief, Your Honor.  I

12   know that you've listened patiently to a long argument.  But

13   let me tell you what you didn't hear.

14             In response to our point that New York expressly -

15   - bankruptcy law expressly prohibits reliability for aiding

16   and abetting, taking money out of a transfer.  The case is

17   Klein v. Tabatchnick.  I would urge the Court to read the

18   case.  It is cited at 459 F.Supp 707.  You'll see the Second

19   Circuit dealt with it at 610 F.2d 1043.

20             In that case, a senior officer, in fact, the

21   president of a company allegedly took money that was subject

22   to a 505 claim, and that money was then -- a 550 claim, and

23   that money was then transferred to friends and family.  And

24   the Court said there is no aiding and abetting liability

25   under 550, period, end of story.

1           So what you heard over a lengthy period of time is

2    two arguments.  One argument is what's in the complaint over

3    and over and over again, which repeats the same arguments

4    that essentially now we hear they're making an aiding and

5    abetting claim because their dissolution claim that occurs

6    ten years after the transfers is so preposterous, there's so

7    basically no claim that, forget the foreign law issue for a

8    minute, whether you're dealing with New York law, whether

9    you're dealing with Cayman law, whether you're dealing with

10   the law in the Bermuda, there's no claim here.  It's ten

11   years after the transfers.

12          And so now what they're saying, well no, no, go

13   back and look at all the other things these officers did in

14   their corporate capacity.  They aided and abetted.  That's

15   what their argument is, and they can't make that argument.

16          And let me tell you, it isn't in the complaint in

17   any event.  What you heard in the last half-hour was an

18   argument that isn't anywhere found in this complaint.  In

19   fact, the most important thing they said in their reply

20   brief is, Judge, please let us amend because what you have

21   is a case that literally, it is a designer theory to avoid

22   the Klein decision.  And you can't avoid the Klein decision.

23   There's no personal liability of David Mayer for allegedly

24   participating in aiding and abetting moving monies to

25   transfers.  And by the way, these transfers occurred in '08

Page 173

1    and '09 and the Trustee knew about it in 2010.

2            And so if the money that came in and was

3    transferred out and then allegedly there's a dissolution ten

4    years later, you cannot breathe life into a claim that

5    didn't exist in 2010 by saying a dissolution in 2020 when

6    there's no allegation by 2020 there was any money left in

7    that fund in any event.  I mean, it's just a preposterous

8    legal theory unsupported by these facts.  And these

9    individuals, David Mayer has no business being part of this

10   claim.

11           And the last point I want to make is over and over

12   and over again they say the Mayers, the Mayers, the Mayers,

13   the Mayers, the Mayers.  There are two Mayers in this case,

14   Rafael Mayer and David Mayer.  They're two human beings.

15   They live in different countries.  And the process of adding

16   them together and treating them so that if one is a

17   corporate officer of one entity, their argument is they're

18   all the corporate officers because they're brothers.

19           It doesn't work that way.  Group pleading is

20   inappropriate, and the argument that they rely upon to

21   continue to make that argument is clearly an inappropriate

22   under a 12(b)(6) argument.  But frankly, you don't even need

23   to get there because there's no claim here.  So

24   respectfully, Your Honor, the motion to dismiss should be

25   granted.

Page 174

1           THE COURT:  Very good.  Very good.  I heard you

2    clearly.

3           MR. OLIVER:  If I may just a few moments, Your

4    Honor, in rebuttal to arguments made for KLOF?

5           THE COURT:  Go ahead.

6           MR. ALTER:  First of the jurisdictional points,

7    you know, Your Honor, with regard to general jurisdiction, I

8    would like to refer the Court to a case I came upon in

9    preparing for the argument.  It's a Second Circuit case

10   which interpreted Daimler which is one of the leading

11   Supreme Court cases on general jurisdiction.  And the name

12   of the case is Gucci America v. Li, and you can find it at

13   768 F.3d 122, jump cite 135, Second Circuit 2014.  And I'll

14   read you the quote directly which I think bears on the

15   analysis here.

16          It speaks about general jurisdiction available

17   against foreign corporations.  And it says, "Only where its

18   contacts are so continuous and systemic, judged against the

19   corporation's national and global activities, that it is

20   essentially at home in the state."  So the Circuit has read

21   the law to require that the Court also do a measure, a

22   balance as to what the companies' activities are both

23   nationally and globally.

24          As we set out in our papers, Your Honor, at most,

25   at any time, there was a 0.12 percent U.S. ownership in

Page 175

1    KLOF.   That was the participation of American individuals

2    and investment, 0.12 percent.   And I argue to the Court that

3    under Gucci, that's not the kind of continuous and systemic

4    contacts judged against a corporation's national and global

5    activities, national and global that can present general

6    jurisdiction for all claims in all purposes in the United

7    States.

8         On specific jurisdiction, we rely on Your Honor's

9    articulation of the rule in the Fair Sentry case and it

10   requires that a defendant show that the culpable conduct

11   involves at least in some part financial transactions that

12   touch the forum.

13        You know, Your Honor, in responding to that, the

14   Trustee points to everybody else but KLOF.   KLOF wasn't even

15   in existence.   KLOF came into existence in 2011.   So it's

16   really hard to imagine that KLOF can be tagged with any

17   culpable conduct.   They may want to point to all these other

18   entities.   And I support if the Court is going down the

19   route of piercing corporate veils, that may have an impact

20   on the Court's analysis.   But without that, no, there is no

21   culpable conduct that they can -- one, that KLOF ever

22   committed but, two, that ever touched the corporate forum.

23        And next, you know, there's a standard analysis in

24   specific jurisdiction law that requires you to consider

25   whether the company ever, ever anticipated being called into

Page 176

1    a U.S. court.  Well, Your Honor, we heard the Trustee's

2    interpretation of the documents attached in our motion which

3    related solely to the jurisdictional point.  And that became

4    a little unclear in the Trustee's argument a moment ago.

5            But the point that we made with those documents is

6    that, one, KLOF never received the funds.  Now the Trustee

7    went off on a tirade of speculation about what happened

8    between accounts and monies that were transferred.  There's

9    no evidence to that and it's not pled in the complaint.  But

10   the evidence that we provided showed that KLOF never

11   received the funds.

12           Two, Khronos Group remained solvent after 2011

13   transfer to KLOF.  So in other words, even after the monies

14   were sent from Montpellier to KLOF -- from Khronos Group to

15   KLOF, KLOF was solvent and could have met any judgment

16   entered by the Trustee.  Why would KLOF feel that it could

17   be haled into court if there was a solvent entity still in

18   existence that could answer for the Legacy transfer claim?

19           And then there's the fact that KLOF and Khronos

20   Group coexisted for six years until Khronos Group was

21   dissolved.  Again this goes to the very odd notion which is

22   entirely unsupported and is absolutely contradicted by

23   paragraph 114 which reads, "On September," -- I'm sorry,

24   104, which reads, "On September 6, 2007, Khronos Group was

25   dissolved after voluntary liquidation."  It was there.  It

Page 177

1    existed for six years.  Why would KLOF feel that it could be

2    haled into court when the potential defendant in a 550 case

3    was in existence?  It makes no sense.

4           Now -- and it's self-contradictory.  It

5    contradicts -- the complaint's allegations contradict

6    themselves because, again, as I started out in my argument

7    by saying that the touchstone argument here, Your Honor, for

8    the Trustee is that somehow there was some sort of successor

9    liability -- I'm sorry, successor in interest liability I

10   believe the Trustee's counsel referred to in her argument.

11   Respectfully, where does the Trustee get that?

12          There's no -- first of all, there's no allegation

13   other than that conclusion.  There's no allegation of any

14   transaction.  There's no allegation of any contract or

15   merger.  Nothing.  Silent.  Okay.  Secondly, as I just

16   pointed out, the succeeded entity lasted for six years after

17   the transfer.

18          Look, the story told, the Trustee brought this

19   complaint.  The Trustee, by the book, must be held to the

20   rule of stating the facts that state a claim.  We heard a

21   very impassioned response by Trustee's counsel, none of

22   which is contained in the complaint.  They made a

23   representation that they can show $500 million went to the

24   continuing account.  I don't think that's possible.  But

25   they did not allege it.

Page 178

1            You have a huge chasm between Khronos Group and

2    KLOF.  And until and unless they can close that chasm, there

3    is simply no cause of action in law.  That winds up my

4    argument, Your Honor.

5            THE COURT:  Very good.  Very good.  I'm taking

6    under advisement.  You'll receive a written opinion.

7            MR. ALTER:  Thank you, Your Honor.

8            MR. OLIVER:  Thank you, Your Honor.

9            THE COURT:  Thank you for hosting.  So you have to

10   turn us all off.

11           MR. STEARNS:  Thank you, Your Honor.

12           MR. ALTER:  Thank you, Your Honor.

13           THE COURT:  Very good.  Have a good day.

14           MR. FISHER:  You too, Your Honor.

15           THE COURT:  Thank you for your arguments.

16           MR. OLIVER:  Thank you.

17

18           (Whereupon these proceedings were concluded.)

19

20

21

22

23

24

25

Page 179

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date: September 17, 2021