**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION CORP.,

                Plaintiff–Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.

-------------------------------------------------------------X

In re:

      BERNARD L. MADOFF,

                Debtor.

-------------------------------------------------------------X

IRVING H. PICARD, Trustee for the Substantively
Consolidated SIPA Liquidation of Bernard L.
Madoff Investment Securities LLC and Bernard L.
Madoff,

                Plaintiff,

v.

THE GERALD AND BARBARA KELLER
FAMILY TRUST, GERALD E. KELLER,
individually and in his capacity as Trustee of the
Gerald and Barbara Keller Family Trust,
BARBARA KELLER, individually and in her
capacity as Trustee of the Gerald and Barbara
Keller Family Trust,

                Defendants.

-------------------------------------------------------------X

SIPA LIQUIDATION

Case No. 08-01789 (CGM)

(Substantively Consolidated)

Case No. 10-04539 (CGM)

## MEMORANDUM DECISION
## GRANTING SIPA TRUSTEE'S MOTION FOR SUMMARY JUDGMENT
## AND DENYING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

**A P P E A R A N C E S :**

MARIE L. CARLISLE
NICHOLAS J. CREMONA
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

HELEN DAVIS CHAITMAN
Chaitman LLP
465 Park Avenue
New York, NY 10022
*Attorney for Defendants*

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Irving H. Picard ("SIPA Trustee"), Trustee for the Substantively Consolidated SIPA

Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff

("Madoff"), brought this adversary proceeding to avoid and recover fictitious profits received by

the Gerald and Barbara Family Trust ("Family Trust") and Gerald and Barbara Keller, in their

capacities as trustees of the Gerald and Barbara Family Trust (collectively, "Defendants"),[1] on

account of their investment in BLMIS's Ponzi scheme. The parties have filed cross motions for

summary judgment. For the reasons that follow, the Court dismisses the Family Trust as a

defendant, grants the SIPA Trustee's motion, and denies the Defendants' motion.

---

[1] The SIPA Trustee also sued Gerald and Barbara Keller in their individual capacities as
subsequent transferees. Those counts were dismissed by July 16, 2015 order of the Court (ECF
No. 39).

## Jurisdiction

This Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C.

§§ 1334(b) and 157(a), the District Court's Standing Order of Reference dated July 10, 1984, and

the Amended Standing Order of Reference dated January 31, 2012. In addition, the District

Court removed the SIPA[2] liquidation to this Court pursuant to SIPA § 78eee(b)(4), *see* Order,

Civ. 08-01789 (Bankr. S.D.N.Y. Dec. 15, 2008), at ¶ IX, ECF No. 1, and this Court has

jurisdiction under the latter provision. As the district court case has been dismissed and the

reference has not been withdrawn, the Court has authority to enter a final order in these cases. To

the extent that it does not, the Court asks the District Court to construe this decision as proposed

findings of fact and conclusions of law, pursuant to the Amended Standing Order of Reference

dated January 31, 2012.

## Background

For background of these SIPA cases and the BLMIS Ponzi scheme, please refer to the

findings of fact in *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 206–14 (Bankr. S.D.N.Y.

2019). Unless discussed below, the relevant facts noted are not in dispute here.

Undisputed Facts

At all relevant times, Gerald and Barbara Keller were residents of Great Neck, New York

and Rancho Mirage, California. Answer ¶ 8, ECF No. 40. In 1998, they created the Family Trust

under California law and have served as its trustees. *Id.* at ¶ 7–8; Chaitman Decl., Ex. AD, ECF

No. 115. In 1997, Gerald Keller opened Account No. 1ZB3143 ("Family Trust BLMIS

Account") with Madoff's Investment Advisory Business ("IA Business") in his own name with

an initial investment of $1,000,000. Greenblatt Decl., Attach. B., Ex. 4, ECF No. 105; Keller

---

[2] Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.*

Decl., Ex. 1, ECF No. 114. In 1999, Gerald Keller renamed the account "Gerald E. Keller,

Trustee The Gerald and Barbara Keller Family Trust U/A June 2, 1998" and then "Gerald E.

Keller (Gerald E. Keller Separate Property) The Gerald and Barbara Keller Family Trust U/A

June 2, 1998." *Id.*, Ex. 4. Additional investments into the Family Trust BLMIS Account totaling

$1,898,852 were made on January 4, 1999 and August 24, 2006. Greenblatt Decl., Attach B., Ex.

4, ECF No. 105.

At least the latter two deposits were made into a specific JP Morgan Chase bank account

ending in 703 ("703 Account"). Collura Decl., Attach. A ¶ 20–24, ECF No. 103; *id.* Attach. B,

Ex. 6. Expert analysis shows that money in the 703 Account was then transferred to another JP

Morgan Chase bank account ending in 509 ("509 Account"), from which payments were made to

BLMIS's customers. *Id.*, Attach. A, ¶ 25–27.

During the two-year period prior to the initiation of this SIPA case on December 11, 2008

("Two-Year Period"), there were thirteen withdrawals from the Family Trust BLMIS Account

totaling $2,125,000. Greenblatt Decl., Attach B, Ex. 4, ECF No. 105. Prior to the Two-Year

Period, $2,670,000 had been withdrawn from the Family Trust BLMIS Account, meaning that

the account had a positive balance of $228,852 at the start of the Two-Year Period. *See id.* The

$2,125,000 withdrawn during the Two-Year Period thus represents withdrawals of $1,896,148 in

excess of principal deposited with Madoff and BLMIS. *See id.*

All withdrawal checks came from the 509 Account and were issued to "Gerald E Keller

Tstee." Keller Decl., Ex. 5, ECF No. 114. Either Gerald Keller himself or Marianne Jannace

(with Gerald Keller's authorization) would endorse the checks with Gerald Keller's signature

and deposit the funds into accounts for Keller International Publishing, LLC and Keller

International Publishing Corp. (together, "Keller Publishing"). *Id.*; Keller Decl., ¶ 10, ECF No. 114; Collura Decl. Attach. B, Ex. 5, ECF No. 103.

The SIPA Trustee filed this adversary proceeding on December 1, 2010. Complaint, ECF No. 1. After the claims against Gerald and Barbara Keller in their individual capacities were dismissed, Order, ECF No. 39, the Defendants answered the Complaint on September 17, 2015. Answer, ECF No. 40. The SIPA Trustee filed his motion for summary judgment on July 22, 2021 (ECF No. 99) seeking judgment on Count One of the Complaint.[3] The Defendants filed their cross motion for summary judgment on August 17, 2021 (ECF No. 110). After replies were filed by both sides (ECF Nos. 119 and 124) and the Securities Investor Protection Corporation (ECF No. 122), the Court heard oral argument on September 15, 2021.

## Discussion

Under Rule 56(a) of the Federal Rules of Civil Procedure, as applied by Rule 7056(c) of the Federal Rules of Bankruptcy Procedure: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The materiality of facts must be determined with reference to the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences." *In re CIS Corp.*, 214 B.R. 108, 118 (Bankr. S.D.N.Y. 1997).

A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A moving party may obtain

---

[3] Count One alleges that each of the transfers made during the Two-Year Period "constitutes a fraudulent transfer avoidable by the [SIPA] Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA."

summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir.1994). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997). The nonmoving party should oppose the motion for summary judgment with evidence that is admissible at trial. *See* Fed. R. Civ. P. 56(e)(1); *Crawford v. Dep't of Investigation*, 324 F. App'x 139, 143 (2d Cir. 2009) (affirming award of summary judgment in favor of defendant, where plaintiff presented testimony from uncorroborated source, as well as "speculation, hearsay and other inadmissible rumor, and conclusory allegations"). "If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Dish Network Corp. v. Ace Am. Ins. Co.*, 431 F. Supp. 3d 415, 421 (S.D.N.Y. 2019) (cleaned up). "The court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (cleaned up).

I.   The SIPA Trustee Satisfies 11 U.S.C. § 548(a)(1)(A)

The SIPA Trustee seeks to avoid and recover transfers of fictitious profits to the Defendants under 11 U.S.C. § 548(a)(1)(A). The elements of this claim are: (i) a transfer of an interest of the debtor in property (ii) made within two years of the petition date (iii) with "actual intent to hinder, delay, or defraud" a creditor. *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 2011 WL 141967, at *2 (S.D.N.Y. Apr. 7, 2011), *aff'd* 748 F.3d 110 (2d Cir. 2014). SIPA § 78fff-2(c)(3) allows the SIPA Trustee to "invoke the fraudulent transfer provisions in the Bankruptcy

Code to recover customer property." *Picard v. Gettinger (In re BLMIS)*, 976 F.3d 184, 199 (2d Cir. 2020).

> a.   Transfer of an Interest of the Debtor in Property

The Defendants cite *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89 (Bankr. S.D.N.Y. 2016), arguing that the SIPA Trustee cannot recover from the Defendants, as the IA Business was run by Madoff and that *Avellino* is binding on the SIPA Trustee. The Defendants' argument is misplaced. *Avellino* does not firmly establish when the IA Business became part of BLMIS. Instead, it holds that the SIPA Trustee may not recover transfers made by Madoff prior to January 1, 2001, when the IA Business was indisputably part of Madoff's sole proprietorship, as the SIPA liquidation only concerns BLMIS. *Id.* at 107–10. That case also does not hold that the SIPA Trustee cannot recover customer property transferred by BLMIS from an account technically owned by Madoff. Thus, even were the 509 Account Madoff's, the reasoning of *Avellino* would not preclude recovery of transfers made by BLMIS from the 509 Account so long as the SIPA Trustee can establish that those funds are customer property within the definition of SIPA § 78*lll*(4), meaning he must establish conclusively that the IA Business was part of BLMIS at the time of the Two-Year Transfers.

Were the Court, as the Defendants argues it should, to ignore the "law of the case" doctrine, neither *res judicata* nor claim preclusion apply, as the *Avellino* adversary proceeding has not reached final judgment. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim"); *Arizona v. California*, 530 U.S. 392, 414 (2000) ("It is the general rule that issue preclusion attaches only when an issue of fact or law is actually litigated and determine by a valid and final judgment").

The Defendants nevertheless persist in pressing that Madoff, not BLMIS, ran the IA Business. Whether this was true in 2001 when Madoff submitted Form BD, Chaitman Decl., Ex. D., ECF No. 115, to the Securities and Exchange Commission is unnecessary to determine, as the IA Business was indisputably part of BLMIS before the Two-Year Period began.[4] *See id*., Ex. BA (SEC Form ADV, registering IA Business with BLMIS on August 25, 2006). This is corroborated by both the letters Madoff sent to banks in 2001 saying that his business had shifted to BLMIS, *id*., Ex. E, BLMIS's Amended and Restated Operating Agreement, Cremona Decl., Ex. 4, at ¶ 3, ECF No. 102 (BLMIS "formed to receive as of January 1, 2001, all of the assets, subject to liabilities, associated with the business being conducted by" Madoff and to conduct that business), the 2002 change of the 509 Account's name from "Bernard L. Madoff" to "Bernard L. Madoff Investment Securities." Collura Decl., Attach. A, at 12 n. 9, ECF No. 103; Chaitman Decl., Exs. U and Z, ECF No. 115.[5] The Defendants can hardly claim surprise, as every letter sent to withdraw funds from the Family Trust BLMIS Account was sent to BLMIS, not Madoff. *See* Keller Decl., Ex. 4, ECF No. 114. A review of the correspondence submitted by Gerald Keller affirms what is evident. In 1999, Gerald Keller sent two letters to Frank Di Pascali at Bernard L. Madoff Investment Securities—*i.e.*, the sole proprietorship—regarding the name of the Family Trust BLMIS Account. *Id.* All other letters were for withdrawals, with the earliest being dated March 5, 2004, and all were addressed to BLMIS. *Id.* The only rational inference

---

[4] On this basis, it is unnecessary to determine the admissibility of the Form BD submitted by Madoff and BLMIS to the Securities and Exchange Commission in 2001, which the Defendants have contested.

[5] To the extent that the Defendants argue that the SEC Form BD proves that Madoff did not transfer the IA Business to BLMIS, as he did not check the box indicating that BLMIS engaged in investment advisory services, that form clearly states that, "effective January 1, 2001, [Madoff] will transfer to [BLMIS] *all* of [Madoff's] assets and liabilities, related to [Madoff's] business." (emphasis added). The Defendants' argument is also belied by the aforementioned bank records and is rendered moot by the 2006 Form ADV.

from this is that at some point between 1999 and 2004, Gerald Keller was informed that the

Family Trust BLMIS Account was being managed by BLMIS.

The Defendants persist, pointing to the 1099-B forms issued to them as proof that Madoff

retained the IA Business, as the relevant forms listed "Bernard L. Madoff" as the payer. None of

those forms is from the Two-Year Period, making them irrelevant, nonprobative, and, thus,

immaterial. Even considering Gerald Keller's statement that all 1099 forms he received were

from Madoff and not BLMIS, Keller Decl., at ¶ 3, ECF No. 114, proves nothing either way, as

the "PAYER'S Federal identification number" listed is the same as BLMIS's: 13-1997126.

*Compare id*., Ex. 3 *with* Chaitman Decl., Ex. M, ECF No. 115. The 1099 forms are thus not

probative of the IA Business's ownership. At the end of the day, none of the Defendants'

proffers can trump that they admitted that the Family Trust BLMIS Account was with BLMIS.

Answer, at ¶ 7, ECF No. 40 (Defendants admit having BLMIS account, with "BLMIS" being

identified as Bernard L. Madoff Investment Securities LLC in introduction).

Under SIPA § 78*lll*(4): "The term 'customer property' means cash and securities . . . at

any time received, acquired, or held by or for the account of a debtor from or for the securities

accounts of a customer, and the proceeds of any such property transferred by the debtor,

including property unlawfully converted." SIPA protects cash and securities deposited with the

debtor. SIPA § 78*lll*(2). The Eleventh Circuit has held that "[w]hether a claimant deposited cash

with the debtor . . . does not . . . depend simply on to whom the claimant handed her cash or

made her check payable, or even where the funds were initially deposited. Instead, the question

is whether there was actual receipt, acquisition or possession of the property of a claimant by the

brokerage firm under liquidation." *Focht v. Heebner (In re Old Naples Sec., Inc.)*, 223 F.3d

1296, 1302 (11th Cir. 2000). Here, by the time the Two-Year Period commenced, it was BLMIS

that filtered cash received from customers in the 703 Account through the 509 Account to send

fictitious payments to those customers. Collura Decl., Attach. A., at ¶¶ 20–27, ECF No. 103. It

does not matter whether these accounts were owned by Madoff or BLMIS.[6] BLMIS used them to

pay customers fictitious profits. The funds sent from them are customer property under SIPA.

### b. Made within Two Years of the Petition Date

The SIPA Trustee seeks to recover the fictitious profits that BLMIS transferred to the

Defendants within the two-year period between December 11, 2006 and December 11, 2008.

Greenblatt's evidence shows that the Defendants withdrew an additional $1,896,148 of funds

within two years of the petition date. Greenblatt Decl., Attach. B, Ex. 4, ECF No. 105.

### c. Actual Intent to Hinder, Delay, or Defraud

Intent to defraud is established as Madoff operated a Ponzi scheme. *Picard v. Citibank,*

*N.A. (In re BLMIS),* ___ F.4th ____, ____, 2021 WL 3854761, at *3 (2d Cir. Aug. 30, 2021); *see*

*also* Cremona Decl., Ex. 7 at 23 (Madoff admits running Ponzi scheme through BLMIS). The

SIPA Trustee has met his burden of proof for summary judgment on this issue. *See id.*; *Picard v.*

*Legacy Capital Ltd. (In re BLMIS),* 603 B.R. 682, 688–93 (Bankr. S.D.N.Y. 2019) (discussing in

detail that BLMIS was a Ponzi scheme and why the SIPA Trustee is permitted to rely on the

Ponzi scheme presumption to prove intent as a matter of law).

The SIPA Trustee has met his burden on every element of his *prima facie* case. The

Defendants did not rebut any of the SIPA Trustee's experts' opinions and the unrebutted reports

are admissible. There is no genuine dispute regarding BLMIS's (i) interest in the transferred

---

[6] The Court thus need not address the Defendants' argument that Madoff's plea
allocutions are inadmissible to prove anything about BLMIS's structure or ownership of the 509
Account.

funds; (ii) payment of fictitious profits within the two-year period to or for the benefit of the

Defendants; and (iii) actual intent to hinder, delay, or defraud its creditors.

II. Defendants' Arguments

The Court now considers the Defendants' defenses to the SIPA Trustee's motion and

arguments in support of their cross motion for summary judgment.

a. Proper Defendants

The Court next addresses the Defendants' argument that the SIPA Trustee has sued the

wrong parties. The Defendants contend that the SIPA Trustee has waived all claims against

Barbara Keller and that the Family Trust was a mere conduit and not a transferee. For the reasons

that follow, the Court holds that, except for the Family Trust, the proper parties have been sued,

that Barbara Keller's death does not affect the liability of the Family Trust, and that the Family

Trust was the initial transferee of the payments made by BLMIS.

i. The Family Trust Itself Is Not a Proper Party

Before addressing the Defendants' specific arguments, the Court *sua sponte* addresses a

glaring issue. The SIPA Trustee named the Family Trust as one of the Defendants. Under Rule

17(b)(3) of the Federal Rules of Civil Procedure, the law of the state where the court is located

governs whether the Family Trust has the capacity to be sued. "Under New York law, an express

trust vests in the trustee the legal estate, and the trustee is the party with capacity to sue on behalf

of the trust." *Revitalizing Auto Communities Environmental Response Tr. v. National Grid USA*,

10 F.4th 87, 97–98 (2d Cir. 2021) (cleaned up); *see also Liveo v. Hausman*, 61 Misc. 3d 1043,

1044, 86 N.Y.S.3d 378, 379 (N.Y. Sup. Ct. 2018) ("A trust . . . is a legal fiction, and cannot sue

or be sued itself." [cleaned up]).[7]

No party specifically addressed the Family Trust's capacity to be sued. "Capacity to sue

is non-jurisdictional in nature and can be waived." *Id*. As the SIPA Trustee also named the

trustees of the Family Trust, there is no concern that dismissal of the Family Trust would result

in "a completely wasteful repetition of proceedings that have already occurred." *Id.* The Court

dismisses the Family Trust.

> ii.    Barbara Keller Will Not Be Dismissed at This Time

The Defendants argue that the SIPA Trustee has forfeited his claims against Barbara

Keller, who apparently died in June 2019. The Defendants claim to have notified the SIPA

Trustee and that the SIPA Trustee did not amend the Complaint to name her estate within ninety

days of this notice. The SIPA Trustee counters that the Defendants failed to formally notify the

SIPA Trustee of Barbara Keller's death by filing a suggestion of death on the docket and serving

the same on the SIPA Trustee.

This issue is nothing more than a red herring. As the counts against Barbara Keller in her

individual capacity were dismissed, there is absolutely no reason that her estate needs to be

substituted into the case. The appropriate party for substitution would instead be whoever

succeeded her in her role as trustee of the Family Trust. The declaration of trust for the Family

Trust clearly states that "[i]f BARBARA KELLER is unable or unwilling to serve or to continue

to serve as Trustee or as co-Trustee of any portion of the trust estate, GERALD E. KELLER

shall serve of sole Trustee of said portion." Chaitman Decl., Ex. AD, art. 5, ¶ 1.(a), ECF No. 115.

---

[7] Were California law to apply, the result would be the same. *See Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 521 (2010) ("because a trust is not a legal entity, it cannot sue or be sued, but rather legal proceedings are properly directed at the trustee").

Gerald Keller, in his capacity as trustee of the Family Trust, is already a party to this action.

There was no need for the SIPA Trustee to substitute in another party. The Family Trust liability

through Gerald Keller as its trustee is not affected by Barbara Keller's death.

To the extent Rule 25(a)(1) does require substitution, the Defendants have not filed a

formal suggestion of death on the record, meaning that the ninety-day window has not been

triggered. *See* Fed. R. Civ. P. 25, advisory committee notes (1963 am.) (The . . . rule establishes

a time limit for the motion to substitute based not upon the time of death, but rather upon the

time information of the death *as provided by the means of a suggestion of death upon the

record*[.]" [emphasis added]); *see also Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 469 (2d

Cir. 1998) (same).

Defendants' counsel's states that "[a]t some point early in the litigations, there was a

discussion with Judge Bernstein concerning notification to the [SIPA] Trustee of the death of a

defendant. In that discussion, it was agreed that email notification to the [SIPA] Trustee's

counsel of the death of a defendant would be sufficient." Chaitman Suppl. Decl., at ¶ 3, ECF No.

125. Absent a record of this "agreement," the Court follows the text and commentary of Rule 25,

which makes clear that a suggestion of death on the record is required to trigger the ninety-day

window to substitute in the proper party. While the SIPA Trustee and the Defendants' counsel

may have agreed to be more informal in substituting other parties in other matters in this SIPA

liquidation as a matter of expediency, this course of action cannot override the baseline

requirements of the Federal Rules of Civil Procedure without a court order.

Should the SIPA Trustee be satisfied that Barbara Keller has indeed died and that Gerald

Keller has subsumed her role as trustee of the Family Trust, the SIPA Trustee may withdraw his

claims against her and have judgment entered Gerald Keller in his capacity as trustee of the

Family Trust alone. Otherwise, the Court declines to dismiss Barbara Keller at this time.

iii.     The Family Trust Was the Initial Transferee

The Defendants next argue that the Family Trust was a mere conduit of the funds and that

Keller Publishing was the transferee. The Court disagrees with the Defendants.

According to the Defendants, under an oral agreement with Keller Publishing's Chief

Financial Officer, Irwin Levine, Gerald Keller asked for withdrawals from its account with

BLMIS only when Mr. Levine told Gerald Keller that Keller Publishing needed funds and that

no funds were ever deposited into a Family Trust bank account. Keller Decl., at ¶ 13, ECF No.

114. All checks were payable to "Gerald E Keller TSTEE." *Id.*, Ex. 5. The Defendants' argument

that Gerald Keller never held dominion and control of the checks is meritless, whether the Court

takes the Defendants' suggestion that Marianne Jannace endorsed the checks or that Gerald

Keller himself did (as he admitted in his deposition testimony); Brown Decl., Ex. 3, at 6 (Tr.

24:15–17), ECF No. 121; in both instances, Gerald Keller's signature was used to endorse the

checks and redirect them to Keller Publishing.[8]

Under 11 U.S.C. § 550(a), the SIPA Trustee may recover avoided transfers from the

initial transferee. To be a "transferee" and not a "mere conduit," the party must have "dominion

over the money or other asset, the right to put the money to one's own purpose." *Christy v.*

*Alexander & Alexander of N.Y., Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manly,*

*Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir. 1997). One way in which a party may be a mere

---

[8] The Court finds incredible the Defendants' contention that Gerald Keller withdrew funds as an individual on Keller Publishing stationary. *See* Keller Decl., at ¶ 4, ECF No. 114. The BLMIS account belonged to the Family Trust, not Gerald Keller personally; all checks were issued to Gerald Keller in his role as trustee of the Family Trust. Tellingly, the letter Gerald Keller sent to change the account from his personally to the Family Trust's was also sent on Keller Publishing letterhead, *see id.*, Ex. 4, rendering the argument even more unreasonable.

conduit is that it has "no discretion or authority to do anything else but transmit the money" to another, like a contractual obligation. *See id.* at 59 (citing *Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 549 (9th Cir. 1991)). "An initial transferee is the person who has dominion and control over the subject of the initial transfer to the extent that he or she may dispose of it as he or she pleases, such as investing the whole amount in lottery tickets or uranium stocks." *Miller v Porush*, 234 B.R. 293, 313 (Bankr. S.D.N.Y. 1999) (cleaned up).

The Defendants have presented two declarations discussing the nature of the agreement for Keller Publishing to receive the withdrawals from the Family Trust's BLMIS account. These two declarations are inconsistent. In Gerald Keller's declaration, he states that, based on an oral agreement between Mr. Levine and himself, Mr. Levine was allowed to take money from the Family Trust's BLMIS account when Keller Publishing needed working capital. Keller Decl., at ¶ 5, ECF No. 115. Gerald Keller does not state that there was an agreement between the Family Trust and Keller Publishing. *See id.* In the prior paragraph, Gerald Keller insisted that he made these withdrawals as an individual. *Id.*, at ¶ 4. The only reasonable inference is that Gerald Keller made this agreement with Mr. Levine in his personal capacity, which would mean that there was no binding agreement between the Family Trust and Keller Publishing.

Mr. Levine's declaration, though, characterizes this agreement as one in which the Family Trust agreed to make loans to Keller Publishing. Levine Decl., at ¶ 2, ECF No. 126. Levine states that these loans were noted on Keller Publishing's financial statements, pointing to two attached to his declaration. *Id.*, at ¶ 4. Those financial records do not show any loans from the Family Trust to Keller Publishing. *See id.*, Ex. A. One statement for December 31, 2008 shows an obligation on a loan from "J. Keller," which is presumably Gerald Keller. *Id.* The other statement, which shows a date of June 30, 2021—and thus is not even remotely relevant—shows

loans from other trusts and GEK (again, presumably Gerald Keller). *Id.* Neither mentions a loan

from the Family Trust. *See id.*

"To establish the existence of an enforceable agreement, a [party] must establish an offer,

acceptance of the offer, consideration, mutual assent, and an intent to be bound. That meeting of

the minds must include agreement on all essential terms." *Kowalchuk v. Stroup*, 61 A.D.3d 118,

121, 873 N.Y.S.2d 43, 46 (N.Y. App. Div., 1st Dep't 2009). "Under New York law, an oral

agreement is not enforceable unless there is a manifestation of mutual assent sufficiently definite

to assure that the parties are truly in agreement with respect to all material terms." *Anderson v.

Greene*, 774 F. App'x 694, 697 (2d Cir.) (cleaned up), *cert. denied*, 140 S. Ct. 556 (2019).

As no written agreement has been produced, the Court is left with the pieces that the

Defendants have presented to determine whether a contract actually existed. Neither the Keller

nor the Levine declarations demonstrate an offer and acceptance. Gerald Keller states that he and

Mr. Levine had an agreement. Mr. Levine states that the Family Trust and Keller Publishing had

an agreement. Neither states what was the offer and what was the acceptance. Gerald Keller's

declaration does not show that there was any consideration for this supposed agreement. Mr.

Levine's declaration states that the Family Trust loaned the money to Keller Publishing (without

any indication of the terms of the loan), and yet this is not borne out by the financial statements

he attaches to his declaration, which only show loans from Gerald Keller and other trusts. The

two declarations do not show mutual assent, as their recitations of the parties to the oral

agreement are inconsistent. Nor do they show an intent to be bound by this agreement. All

withdrawals from the Family Trust's BLMIS account indisputably went to Keller Publishing.

There is no indication that this arrangement was binding, that the Family Trust could not

otherwise use the money in the BLMIS account, or that Keller Publishing would have had any

remedy against the Family Trust should it not receive money. Instead, this arrangement has all

the hallmarks of Gerald Keller using one asset at his disposal—the Family Trust BLMIS

Account—to prop up his business, which is consistent with his statement that so many

withdrawals were made in 2007 and 2008 due to Keller Publishing "not doing well financially."

Keller Decl., at ¶ 6, ECF No. 114.

The Court notes its obligation to construe this evidence in the light mot favorable to the

Defendants. This requirement only requires the Court to draw "all justifiable inferences" in the

Defendants' favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014). There is simply no way to read

Gerald Keller's and Mr. Levine's declarations harmoniously. The Court is justified in ignoring

all contradictory parts of the declarations. *Cf. Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619

(2d Cir. 1996) ("factual issues created solely by an affidavit crafted to oppose a summary

judgment motion are not genuine issues for trial."). Gerald Keller's declaration clearly

contradicts his deposition testimony, in which he states unequivocally that he made all decisions

to withdraw funds from the Family Trust's BLMIS account. *See* Brown Decl., Ex. 3, at 8 (Tr.

26:4–6). ECF No. 121.[9] "[F]actual allegations that might otherwise defeat a motion for summary

judgment will not be permitted to do so when they are made for the first time in the plaintiff's

affidavit opposing summary judgment and that affidavit contradicts her own prior deposition

testimony." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Even taking the declarations

at face value—and disregarding the contradictory parts—there is no support for the Defendants'

argument that there was a binding contract between the Family Trust and Keller Publishing. All

of the information regarding the supposed oral contract is at the Defendants' disposal. The

Defendants "must provide concrete particulars showing that a trial is needed, and it is not

---

[9] "Q. . . . In making a decision to make a withdrawal, was that made by you? A. Yes."

sufficiently merely to assert a conclusion without supplying supporting arguments or facts in opposition to [a summary judgment] motion." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 59, 77 (2d Cir. 1984); *see also Innomed Labs, LLC. v. Alza Corp*, 98 F. App'x 51, 54 (2d Cir. 2004) (affirming summary judgment where party alleging oral contract did not establish terms of supposed contract, meaning that the trier of fact would have to "speculat[e] as to the scope of [the] obligations under the contract").

The Court is left with the evidence that Gerald Keller made all decisions to withdraw funds from the BLMIS account, endorsed the checks sent (whether personally or through Marianne Jannace), and directed that the funds go to Keller Publishing. In other words, he had "the right to put the money to [his] own purpose." *In re Finley*, 130 F.3d at 57. The notion that Gerald Keller made the withdrawals as an individual is unsubstantiated, as every single check in the two-year period was made to Gerald Keller *as trustee* of the Family Trust for the Family Trust's account and Gerald Keller could only make withdrawals in his capacity as trustee of the Family Trust. That he did so only upon the request of Keller Publishing and immediately gave the money to Keller Publishing *was his own decision*. As Gerald Keller, as trustee of the Family Trust, had complete discretion over the use of the funds (and lacking evidence of a binding agreement), the Defendants' "mere conduit" argument is meritless.

b.   The Purchase of U.S. Treasury Bills Is Not Material

The Defendants also contend that Madoff invested IA customers' funds in U.S. Treasury bills ("T-Bills"). The SIPA Trustee counters with evidence that the T-Bills appearing on customer statements were fictitious. Dubinsky Decl., Attach. A., at ¶¶ 224–40, ECF No. 104. The Defendants offer no more than speculation that T-Bills were allocated to the Family Trust. The Court sees no reason to depart from earlier cases holding this issue immaterial. *See Picard v.*

*Estate of Seymour Epstein (In re BLMIS)*, No. 10-04438, slip op. at 7–8 (Bankr. S.D.N.Y. Jan.

27, 2021); *see also Picard v. JABA Assocs. LP (In re BLMIS)*, ___ F. Supp. 3d ____, ____, 2021

WL 1112342, at *13 (S.D.N.Y. Mar. 24, 2021) ("there is . . . no dispute of material fact that

BLMIS did not legitimately trade equities for its IA Business customers").

    c.  All Defenses Not Addressed by the Defendants Are Abandoned

    The Defendants pleaded forty-six affirmative defenses in the Answer. Few of these

defenses were addressed in the Defendants' papers. "If a party fails to assert a legal reason why

summary judgment should not be granted, that ground is waived[.]" *Vaughner v. Pulito*, 804

F.2d 873, 877 n.2 (5th Cir. 1986); *cf. Edward B. Marks Music Corp. v. Continental Record Co.*,

222 F.2d 488, 492 (2d Cir. 1955) ("[parties] in [their] opposition to a motion for summary

judgment cannot abandon an issue and then, after an unpalatable decision by the trial judge, on

appeal, by drawing on the pleadings resurrect the abandoned issue"). The Court thus addressed

only those defenses discussed by the Defendants in their opposing papers. Every other defense is

waived for purposes of summary judgment.

III. Prejudgment Interest Is Warranted

    The SIPA Trustee has requested prejudgment interest from the filing date through the

date of the entry of judgment at the rate of 4%. The Defendants resist this request with a panoply

of arguments. This Court has considered this issue on multiple prior occasions. *See, e.g., Picard*

*v. BAM L.P. (In re BLMIS)*, 624 B.R. 55, 62–66 (Bankr. S.D.N.Y. 2020).

    To determine whether prejudgment interest should be awarded, the Court must consider

"(i) the need to fully compensate the wronged party for actual damages suffered,

(ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of

the statute involved, and/or (iv) such other general principles as are deemed relevant by the

court." *Wickham Contracting Co. v. Local Union No. 3, Int'l Brotherhood of Elec. Workers, AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992). The purpose of prejudgment interest is to make the Plaintiff whole rather than to punish Defendants or to provide Plaintiff with a windfall. *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (citations and quotations omitted). "Courts in the Second Circuit and in this district have recognized that the award of prejudgment interest is discretionary, and absent a sound reason to deny prejudgment interest, such interest should be awarded." *McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010) (citations omitted). "The court must, however, explain and articulate its reasons for any decision regarding prejudgment interest." *Henry v. Champlain Enter., Inc.*, 445 F.3d 610, 623 (2d Cir. 2006).

Prejudgment interest is "normally" awarded in avoided transfer cases "to compensate for the value over time of the amount recovered." *Geltzer v. Artists Mktg. Corp. (In re Cassandra Grp.)*, 338 B.R. 583, 599 (S.D.N.Y. 2006) ("To fully and fairly compensate Cassandra's creditors for their loss—not only of $300,000 that was fraudulently conveyed to the Defendants, but of the use of that money since the date of the demand—the Trustee should be permitted to recover prejudgment interest."); *see also Messer v. McGee (In re FKF 3, LLC)*, 2018 WL 5292131, at *13 (S.D.N.Y. Oct. 24, 2018) (awarding prejudgment interest to compensate for "loss of interest, the diminished value of the damages award due to the passage of time, and Plaintiff's lost opportunity to make use of the lost funds").

Prejudgment interest is warranted in this instance. The SIPA Trustee is charged with collecting fictitious profits from net winners so that net losers in BLMIS's Ponzi scheme can be adequately compensated for their losses. He has spent more than ten years prosecuting this case and cannot be made whole without an award of prejudgment interest. The SIPA Trustee has

requested interest from the date that the SIPA action was commenced. Consistent with other decisions that have awarded prejudgment interest, the Court holds that interest is awarded in the amount of 4%, without compounding, commencing on December 1, 2010 through the date of the entry of judgment in this case. *See JABA Associates L.P*, ___ F. Supp. 3d at ___, 2021 WL 1112342, at *19–20 (applying 4% interest rate); *BAM, L.P.*, 624 B.R. at 65–66 (same).[10]

In reaching this conclusion the Court is reminded that the Defendants are victims. The Defendants, like so many others, believed their account to be making legitimate investments. While the court sympathizes with the Defendants, they have recovered their principal investment. Other victims have not been so fortunate.

---

[10] The Court has previously invited the SIPA Trustee to argue for prejudgment interest from the filing date of the underlying SIPA case "where the facts warrant it." *Picard v. Miller (In re BLMIS)*, ___ B.R. ___, ___ n. 13, 2021 WL 2787604, at *12 n.13 (Bankr. S.D.N.Y. July 2, 2021). As the Court has not relied on the law of the case doctrine in this decision, the SIPA Trustee has presented no compelling rationale to deviate from prior decisions awarding prejudgment interest from the date the respective adversary proceedings were filed.

### Conclusion

For the foregoing reasons, the Family Trust is dismissed as a defendant, the SIPA

Trustee's Motion for Summary Judgment is GRANTED as to the remaining Defendants, and the

Defendants' Cross Motion for Summary Judgment is DENIED. Judgment shall enter in favor of

the SIPA Trustee and against Gerald and Barbara Keller as trustees of the Family Trust on Count

One of the Complaint. The SIPA Trustee shall submit a proposed order within fourteen days of

the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days'

notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: September 30, 2021**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris

_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**