# EXHIBIT 11

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA

 4             v.                        (S9)10CR228(LTS)

 5   IRWIN LIPKIN,

 6             Defendant.

 7   ------------------------------x

 8                                       New York, NY
                                         November 8, 2012
 9                                       4:55 p.m.

10   Before:

11                 HON. LAURA TAYLOR SWAIN

12                                       District Judge

13                        APPEARANCES

14   PREET BHARARA
          United States Attorney for the
15        Southern District of New York
     JULIAN J. MOORE
16   LISA A. BARONI
     MATTHEW SCHWARTZ
17        Assistant United States Attorneys

18   DAVID M. RICHMAN
     GARY REDISH
19        Attorneys for Defendant

20   ALSO PRESENT:
     Jared Thompson, Special Agent, FBI
21   Paul Takla, Special Agent, FBI
     Patrick Duffy, Special Agent, FBI
22   Lisa Chan, Pretrial Services Officer
     Rebecca Baskin, Paralegal, U.S. Attorney's Office
23

24

25
```

```
 1            (Case called)

 2            THE COURT:  Good afternoon to everybody who is in

 3   attendance here in court today; thank you for coming to court.

 4            I understand that this is Mr. Lipkin's initial

 5   appearance and that we are here today in contemplation of a

 6   waiver of indictment and a plea of guilty to a 9th superseding

 7   information in this case.  Is that correct?

 8            MR. MOORE:  Yes, your Honor.

 9            THE COURT:  First, I would address the initial

10   appearance matter.  So, Mr. Lipkin, would you please state your

11   full name.

12            THE DEFENDANT:  Irwin Lipkin.

13            THE COURT:  How old are you?

14            THE DEFENDANT:  74.

15            THE COURT:  I will now explain certain rights that you

16   have under the Constitution of the United States.  You have the

17   right to remain silent.  You need not make any statement.  Even

18   if you have already made statements to the authorities, you

19   need not make additional statements.  Any statements that you

20   do make can be used against you.

21            Do you understand these rights?

22            THE DEFENDANT:  Yes, your Honor.

23            THE COURT:  You have the right to be released either

24   conditionally or unconditionally pending trial unless I find

25   that there are no conditions that would reasonably assure your
```

```
 1   presence at future court hearings and the safety of the

 2   community.  If the government were to ask me to detain you

 3   pending trial, you are entitled to a prompt hearing on whether

 4   such conditions exist.

 5            Do you understand this right?

 6            THE DEFENDANT:  Yes, your Honor.

 7            THE COURT:  The microphone is pretty powerful; why

 8   don't you try not leaning forward but speaking as if I need to

 9   hear you without the microphone and that should do it.

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  That works.

12            You have the right to be represented by an attorney

13   today and at all futures proceedings in this case.  If you are

14   unable to afford an attorney, I will appoint an attorney to

15   represent you.

16            Do you understand these rights?

17            THE DEFENDANT:  Yes, your Honor.

18            THE COURT:  Do you wish to have and are you able to

19   obtain and afford counsel on your own?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Have you retained Mr. Richman and

22   Mr. Redish to represent you?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  Am I correct in understanding that you are

25   not applying to have the court appoint counsel for you?
```

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Are you a citizen of the United States?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Mr. Richman, I am going to ask you

5    formally, am I correct in understanding that Mr. Lipkin intends

6    to waive indictment and plead guilty to superseding information

7    (S9)10CR228 today.

8          MR. RICHMAN:  You are correct, your Honor.

9          THE COURT:  Is the plea pursuant to the agreement that

10   has been signed and that has been marked Government Exhibit 1?

11         THE DEFENDANT:  It is.

12         THE COURT:  Has the executed advice of rights form

13   been marked as Court Exhibit 1?

14         MR. RICHMAN:  I don't see anything marked on that.

15         THE COURT:  The deputy indicates that she has not

16   written on it yet.  I will refer to the advice of rights form

17   as Court Exhibit 1 and we will attend to that afterward.

18         MR. RICHMAN:  We have signed it already, your Honor.

19         THE COURT:  Yes.

20         Mr. Moore, would you make a statement as to victim

21   notification in connection with today's proceedings.

22         MR. MOORE:  Yes, your Honor.

23         On Tuesday, November 6, the government published on

24   our public website the letter that your Honor endorsed the

25   prior day setting forth the charges and penalties that we

```
 1   expect the defendant to plead guilty to today.

 2              THE COURT:  Thank you.

 3              Mr. Lipkin, before I accept your waiver of indictment

 4   and your guilty plea, there are a number of questions that I

 5   must ask you while you are under oath to assure that the waiver

 6   and plea are valid.  At times, I may cover a point more than

 7   once and I may cover matters that were also addressed in the

 8   advice of rights form that you have seen.  If that happens, it

 9   is because it is very important that you understand what is

10   happening here today.  In that connection, if you don't

11   understand something that I ask you, please say so, and I will

12   reword the question or you may speak with your attorney.

13              Do you understand that?

14              THE DEFENDANT:  Yes, your Honor.

15              (Defendant sworn)

16              THE COURT:  Would you please state your full name

17   again for the record.

18              THE DEFENDANT:  Irwin Lipkin.

19              THE COURT:  Mr. Lipkin, do you understand that you

20   have solemnly promised to tell the truth and that if you answer

21   any of my questions falsely, your false or untrue answers may

22   later be used against you in another prosecution for perjury or

23   making a false statement?

24              THE DEFENDANT:  Yes, your Honor.

25              THE COURT:  You are 74 years old, is that correct?
```

```
 1              THE DEFENDANT:  Yes, your Honor.

 2              THE COURT:  How far did you go in school?

 3              THE DEFENDANT:  I graduated with an associate's degree

 4     from Brooklyn College.

 5              THE COURT:  What field was the associate's degree in?

 6              THE DEFENDANT:  Accounting.

 7              THE COURT:  What types of work have you done since

 8     finishing your formal education?

 9              THE DEFENDANT:  I worked for Bernard L. Madoff for all

10     those years.

11              THE COURT:  For your entire career?

12              THE DEFENDANT:  Yes.

13              THE COURT:  In what capacity?

14              THE DEFENDANT:  I guess I was controller, accountant,

15     controller.

16              THE COURT:  Are you able to read, speak and understand

17     the English language well?

18              THE DEFENDANT:  Well enough.

19              THE COURT:  Are you a citizen of the United States?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  Are you now or have you recently been

22     under the care of a doctor or a psychiatrist?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  For what sort of condition?

25              THE DEFENDANT:  I have a Foley bag.  I have had
```

1   pneumonia twice in the last 3 or 4 months.  I have been

2   hospitalized twice.  I have been to therapy twice, physical

3   therapy twice.

4              THE COURT:  The hospitalziation and the physical

5   therapy are for medical conditions, is that correct?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do any of the medical problems that you

8   have described impair your ability to understand information or

9   make important decisions for yourself?

10             THE DEFENDANT:  No, your Honor.

11             THE COURT:  Are you on any medication that affects

12  your ability to understand information or make important

13  decisions for yourself?

14             THE DEFENDANT:  No, your Honor.

15             THE COURT:  In the past 24 hours have you taken any

16  drugs, medicine or pills, or drunk any alcohol?

17             THE DEFENDANT:  In regards to pills and medication,

18  yes; alcohol, no.

19             THE COURT:  Was it all prescribed medication?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Have you taken it on the prescribed

22  schedule?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Is your mind clear today?

25             THE DEFENDANT:  Pardon me?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1        THE COURT:  Is your mind clear today?

2        THE DEFENDANT:  Yes, your Honor.

3        THE COURT:  Under the circumstances are you feeling

4  well physically today?

5        THE DEFENDANT:  Well enough.

6        THE COURT:  Well enough to feel comfortable proceeding

7  with this plea today?

8        THE DEFENDANT:  Yes, your Honor.

9        THE COURT:  Are you represented by a lawyer here

10  today?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  What is your lawyer's name?

13        THE DEFENDANT:  David Richman.

14        THE COURT:  Mr. Richman, Mr. Moore, does either of you

15  have any doubt as to Mr. Lipkin's competence to waive

16  indictment and plead guilty at this time?

17        MR. MOORE:  No, your Honor.

18        MR. RICHMAN:  No, your Honor.

19        THE COURT:  Mr. Lipkin, your attorney has informed me

20  that you want to enter a plea of guilty to a superseding

21  information charging you with certain crimes.

22        Do you want to plead guilty?

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  Have you fully discussed your case with

25  your attorney, including the charges to which you intend to

1    plead guilty and any defenses that you may have to those

2    charges?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Have you and your attorney also discussed

5    the consequences of pleading guilty?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Are you satisfied with your attorney and

8    his representation of you?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  On the basis of Mr. Lipkin's responses to

11   my questions and my observations of his demeanor, I find that

12   he is fully competent to waive indictment and enter an informed

13   plea at this time.

14             Mr. Lipkin, the document that contains the charges

15   against you is called an information.  It has been issued by

16   the United States Attorney.  You have a constitutional right to

17   be charged by an indictment rather than an information.  An

18   indictment would be a charge issued from a grand jury.

19             Do you understand that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Mr. Richman, would you please show

22   Mr. Lipkin the waiver of indictment form.

23             Mr. Lipkin, have you signed this waiver of indictment?

24             THE DEFENDANT:  Yes, I have, your Honor.

25             THE COURT:  Before you signed it did you read it?

```
1              THE DEFENDANT:  No, your Honor, I did not.

2              THE COURT:  Did you discuss it with your attorney

3    before you signed it?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Did you understand it before you signed

6    it?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Would you read it to yourself now.

9              THE DEFENDANT:  OK.

10             (Pause)

11             THE DEFENDANT:  I have, your Honor.

12             THE COURT:  Do you understand it?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Is that understanding consistent with the

15   discussion that you had with your attorney?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Do you understand that if you don't waive

18   indictment, the government would have to bring these charges

19   before a grand jury if it wanted to prosecute you on them and

20   the grand jury might or might not decide to indict you on them?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Do you understand that you are under no

23   obligation to waive indictment?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Do you understand that by waiving
```

1    indictment, you are giving up your right to have these charges

2    presented to the grand jury?

3             THE DEFENDANT:  Yes, your Honor.

4             THE COURT:  Do you understand what a grand jury is?

5             THE DEFENDANT:  Yes, your Honor.

6             THE COURT:  Has anyone given you anything or

7    threatened you or made you any promises to get to you waive

8    indictment?

9             THE DEFENDANT:  No, your Honor.

10            THE COURT:  Have you seen a copy of the ninth

11   superseding document, that is, the document with the charges in

12   it that has the number (S9)10CR228 at the top?

13            THE DEFENDANT:  I am not sure, your Honor.

14            THE COURT:  Mr. Richman, would you please show it to

15   Mr. Lipkin now.  It is a document of approximately 21 pages.

16            (Pause)

17            THE DEFENDANT:  Your Honor, in looking over these

18   pages, I remember seeing them quite a while ago.

19            THE COURT:  Have you discussed these charges with your

20   attorney?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  Do you feel comfortable that you

23   understand the charges against you that are detailed in that

24   information?

25            THE DEFENDANT:  Yes, your Honor.

```
 1              THE COURT:  If you want me to I can read the

 2  information out loud to you here in court.  Would you like me

 3  to read it out loud for you now?

 4              THE DEFENDANT:  Yes, your Honor.

 5              MR. RICHMAN:  No.

 6              THE DEFENDANT:  No, your Honor, I am sorry.

 7              THE COURT:  If you want me to I will; if you don't

 8  need me to I won't.

 9              THE DEFENDANT:  No.  It's OK, your Honor.

10              THE COURT:  Mr. Richman, would you make a

11  representation as to the extent and to confirm your discussion

12  of the contents of the information with Mr. Lipkin.

13              MR. RICHMAN:  Certainly, your Honor.

14              The government has supplied us with a series of drafts

15  that have emerged over a period of time.  I think Mr. Lipkin

16  may be confused by having seen a draft of a week or two or

17  three ago with the document that now appears that I received

18  from the government yesterday.  But he has seen the document.

19  We have discussed the document.  I believe he understands the

20  nature of the two charges that he is pleading guilty to and is

21  prepared to go forward at this time.

22              THE COURT:  Mr. Lipkin, is that consistent with your

23  recollection of your discussions with Mr. Richman on this

24  topic?

25              THE DEFENDANT:  Yes, your Honor.
```

 1          THE COURT:  I find that Mr. Lipkin's waiver of

 2     indictment is knowing and voluntary.  I accept it and I so

 3     order it.

 4          Before I accept your guilty plea, Mr. Lipkin, I am

 5     going to ask you some more questions.  These questions are

 6     intended to satisfy the court that you want to plead guilty

 7     because you are in fact guilty and that you fully understand

 8     your rights and the consequences of your plea.

 9          Now I will describe certain rights that you have under

10     the Constitution and laws of the United States.  You will be

11     giving up these rights if you plead guilty.  Please listen

12     carefully.  If you do not understand something that I am saying

13     or describing, stop me, and I or your attorney will explain it

14     more fully.

15          Under the Constitution and laws of the United States,

16     you have the right to a speedy and public trial by a jury on

17     the charges against you that are in the information.

18          Do you understand that?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Do you understand that you have the right

21     to plead not guilty and to continue to plead not guilty to each

22     of the charges?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  If there were a trial, you would be

25     presumed innocent and the government would be required to prove

1   you guilty by competent evidence and beyond a reasonable doubt.

2   You would not have to prove that you were innocent at a trial.

3            Do you understand that?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  If there were a trial, a jury composed of

6   12 people selected from this district would have to agree

7   unanimously in order to find you guilty.

8            Do you understand that?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  If there were a trial, you would have the

11  right to be represented by an attorney at the trial and at all

12  other stages of the proceedings.  If you could not afford one,

13  an attorney would be provided to you free of cost.

14           Do you understand that?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  If there were a trial, you would have the

17  right to see and hear all of the witnesses against you and your

18  attorney could cross-examine them.  Also, you would have the

19  right to have your attorney object to the government's evidence

20  and offer evidence on your behalf if you so desired.  Also, you

21  would have the right to have witnesses required to come to

22  court to testify in your defense, and you would have the right

23  to testify yourself, but you would not be required to testify.

24           Do you understand that all that?

25           THE DEFENDANT:  Yes, your Honor.

```
 1              THE COURT:  Do you understand that if there were a
 2     trial and you decided not to testify, no adverse inference
 3     could be drawn against you based on your decision not to
 4     testify?
 5              THE DEFENDANT:  Yes, your Honor.
 6              THE COURT:  Do you understand that if you were
 7     convicted at a trial, you would have the right the appeal that
 8     verdict?
 9              THE DEFENDANT:  Yes, your Honor.
10              THE COURT:  Do you understand each and every one of
11     the rights I have asked you about?
12              THE DEFENDANT:  Yes, your Honor.
13              THE COURT:  Do you have any questions about any of
14     these rights?
15              THE DEFENDANT:  No, your Honor.
16              THE COURT:  Do you understand that by pleading guilty
17     today you will giving up each and every one of these rights?
18              THE DEFENDANT:  Yes, your Honor.
19              THE COURT:  Do you also understand that you will be
20     giving up any possible claim that your constitutional rights
21     may have been violated and that you will have no trial?
22              THE DEFENDANT:  Yes, your Honor.
23              THE COURT:  Do you understand that by pleading guilty
24     you will also have to give up your right not to incriminate
25     yourself because I will ask you questions about what you did in
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   order to satisfy myself that you are guilty as charged and you

2   will have to admit and acknowledge your guilt?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you understand that you can change your

5   mind right now and refuse to enter a plea of guilty; you do not

6   have to enter this plea if you do not want to for any reason?

7          Do you understand that fully?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Do you still want to plead guilty?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Do you understand that Count 1 of the

12  information charges with you conspiring to commit securities

13  fraud, falsify books and records of a broker/dealer, falsify

14  books and records of an investment advisor, make false filings

15  with the United States Securities and Exchange Commission, and

16  falsify statements in relation to documents required by the

17  Employee Retirement Income Security Act of 1974 as amended,

18  which we call ERISA, and that the government accuses you in

19  this connection of violating Title 18 U.S.C. Section 371?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Do you understand that you are charged in

22  Count 2 of the information with making false statements in

23  relation to documents required by ERISA, in violation of

24  Section 1027 of Title 18 U.S.C. and Section 2 of Title 18?

25         THE DEFENDANT:  Yes, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1          THE COURT:  Do you understand that the government

2   would have to prove each and every part or element of each of

3   these charges beyond a reasonable doubt at trial if you did not

4   plead guilty?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Mr. Moore, would you please explain the

7   matters that the government would have to prove if we were to

8   go to trial on the charges in the information.

9          MR. MOORE:  Yes, your Honor.

10          With regard to Count 1, the conspiracy court, in order

11  to prove this crime, the government must establish each of the

12  following elements beyond a reasonable doubt: first, that the

13  conspiracy charged in the information in fact existed, in other

14  words, that there was in fact an agreement or understanding to

15  either violate the law of the United States or to defraud the

16  United States; second, your Honor, that the defendant

17  knowingly, willingly, and voluntarily became a member of the

18  conspiracy charged; and third, that any one of the

19  conspirators, not necessarily the defendant, knowingly

20  committed at least one overt act in the Southern District of

21  New York in furtherance of the conspiracy during the life of

22  that conspiracy.

23          With regard to Count 2, your Honor, falsifying

24  statements concerning ERISA, in order to prove this crime, the

25  government must prove beyond a reasonable doubt the following

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   essential elements: first, that at the time of the alleged

2   offense, the defendant made a false statement; second, that the

3   defendant knew the statement to be false; and third, that the

4   defendant made a false statement in a document required by

5   ERISA.

6              THE COURT:  Thank you.

7              Mr. Lipkin, do you understand what the government

8   would have to prove if you did not plead guilty?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Do you understand that the maximum

11  possible penalty for the crime charged in Count 1 is 5 years of

12  imprisonment, plus a fine of the greatest of $250,000, twice

13  the gain resulting from the offense or twice the loss to other

14  people resulting from the offense, plus a $100 special

15  assessment, plus 3 years of supervised release after your term

16  of imprisonment, plus full restitution to all persons injured

17  by your criminal conduct?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Do you understand that the maximum

20  possible penalty for the crime with which you are charged in

21  Count 2 is 5 years of imprisonment, plus a fine of the greatest

22  of $250,000, twice the gain resulting from the offense or twice

23  the loss to other people resulting from the offense, plus a

24  $100 special assessment, plus 3 years of supervised release

25  after your term of imprisonment, plus full restitution to all

1    persons injured by your criminal conduct?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you understand that the maximum

4    possible combined penalty for the two crimes to which you

5    propose to plead guilty is 10 years of imprisonment, plus a

6    fine of $500,000 or, if greater, the sums of the relevant

7    gains, losses and statutory amounts relating to your offenses,

8    plus full restitution to all persons injured by your criminal

9    conduct, plus a $200 mandatory special assessment, plus

10   supervised release for 3 years after your term of imprisonment.

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  I will now give you some information and

13   verify your understanding of the supervised release aspect of

14   the potential penalties.  Supervised release means that you

15   will be subject to monitoring when you are released from

16   prison.  Terms and conditions will be imposed.  If you violate

17   any of the set terms and conditions, you can be sent back to

18   prison without a jury trial.

19             If you are on supervised release and you do not comply

20   with any of the set terms and conditions, you can be sent back

21   to prison for the remainder of the term of supervised release.

22   You will you be given no credit for the time that you served in

23   prison as a result of your sentence and no credit for any time

24   spent on post-release supervision.

25             For example, if you received a prison term and then a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1   3-year term of supervised release, and after you left prison,
 2   you lived up to the terms of supervised release for 2 years but
 3   then you violated some term of the supervised release, you
 4   could be sent back to prison for 3 whole years.
 5               Do you understand that?
 6               THE DEFENDANT:  Yes, your Honor.
 7               THE COURT:  Do you also understand that if I accept
 8   your guilty plea and adjudge you guilty, that adjudication may
 9   deprive you of valuable civil rights, such as the right to
10   vote, the right to hold public office, the right to serve on a
11   jury, and the right to possess any kind of firearm?
12               THE DEFENDANT:  Yes, your Honor.
13               THE COURT:  Under current law there are sentencing
14   guidelines that judges must consider in determining your
15   sentence.  Has your attorney spoken to you about the sentencing
16   guidelines?
17               THE DEFENDANT:  Yes, your Honor.
18               THE COURT:  Do you understand that in determining your
19   sentence, the court must calculate the applicable sentencing
20   guidelines range and consider that range, possible departures
21   under the sentencing guidelines, and other sentencing factors
22   under Title 18 U.S.C. Section 3553(a)?
23               THE DEFENDANT:  Yes, your Honor.
24               THE COURT:  Do you understand that the court has
25   discretion while taking the guidelines into account to sentence
```

1   you to any period of imprisonment from time-served all the way

2   up to the statutory maximum of 10 years?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Do you understand that even though the

5   plea agreement includes a stipulated or agreed sentencing

6   guidelines calculation, the court will not be able to determine

7   your sentence until after a presentence report has been

8   completed by the probation department and you and the

9   government have had a chance to challenge any of the facts

10  reported by the probation office?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Do you understand that you may have the

13  right to appeal your sentence under certain circumstances, even

14  if your plea agreement provides that you are waiving your right

15  to appeal?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Do you understand that if your attorney or

18  anyone else has attempted to estimate or predict what your

19  sentence will be, their estimate or prediction could be wrong?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  No one, not even your attorney or the

22  government, can or should give you any assurance of what your

23  sentence will be because your sentence cannot be determined

24  until after the probation office report is completed and I have

25  ruled on the challenges to the report and I have determined

```
 1    what the appropriate sentence is.

 2              Do you understand that?

 3              THE DEFENDANT:  Yes, your Honor.

 4              THE COURT:  Do you also fully understand that even if

 5    your sentence is different from what your attorney or anyone

 6    else told you it might be or if it is different from what you

 7    expect, you will be still bound to your guilty plea and you

 8    will not be allowed to withdraw your guilty plea?

 9              THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  Mr. Richman, would you please show

11    Mr. Lipkin page 3 of the plea agreement which is Government

12    Exhibit 1.

13              MR. RICHMAN:  I am doing that, your Honor.

14              THE COURT:  Thank you.

15              Mr. Lipkin, this agreement provides that the

16    stipulated sentencing guidelines range is 10 years of

17    imprisonment.

18              Do you understand that this stipulation does not bind

19    the court or the probation department as to the facts on which

20    it is based, as to how to apply the guidelines to the facts, or

21    as to what will be an appropriate sentence in your case?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  Do you understand that I may decide to

24    impose a sentence that is different from the guidelines

25    sentence?
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Are you now serving any state or federal

3     sentence or are you being prosecuted for any other crime?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  Do you understand that the superseding

6     information also includes a forfeiture allegation in which the

7     government asserts that you are required to forfeit to the

8     United States all property real and personal that constitutes

9     or is derived from proceeds traceable to the commission of the

10    crimes charged in Counts 1 and 2?

11         THE DEFENDANT: Yes, your Honor.

12         THE COURT:  Would you look again please at the plea

13    agreement which is Government Exhibit 1.  Mr. Lipkin, have you

14    signed this agreement?

15         (Pause)

16         THE DEFENDANT:  Yes, I did sign it, your Honor.

17         THE COURT:  Did you read it before you signed it?

18         THE DEFENDANT:  I gave it a cursory look, your Honor.

19         THE COURT:  Did you discuss it thoroughly with your

20    attorney before you signed it?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Were you certain that you fully understood

23    the agreement before you signed it?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Would you like any further opportunity to

1    read it now?

2            THE DEFENDANT:  No, your Honor.

3            THE COURT:  The record will reflect that Mr. Lipkin

4    did look at certain pages of the agreement before making that

5    response.

6            Mr. Richman, would you please explain for the court

7    the extent of your discussions of that agreement with

8    Mr. Lipkin before today.

9            MR. RICHMAN:  Well, our discussions started as far as

10   back as when I began to represent Mr. Lipkin, explaining the

11   various consequences and alternatives and things that might

12   happen in the case.  The government initially supplied me with

13   a draft of an agreement back in the month of August when we

14   were originally going down this path.  We discussed, Mr. Lipkin

15   and I discussed the draft of that agreement at that time.  We

16   have discussed it on several occasions since then.  I believe

17   Mr. Lipkin understands the terms and conditions of this

18   agreement and what its implications and consequences are.

19           THE COURT:  Were the terms of the draft agreement or

20   agreements that you discussed consistent substantively with the

21   terms of this final agreement that has been signed?

22           MR. RICHMAN:  They did.  They do.

23           THE COURT:  You explained all these terms to

24   Mr. Lipkin.

25           MR. RICHMAN:  On several different occasions.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

 1           THE COURT:  Mr. Lipkin, does the agreement as

 2    explained to you as you have had an opportunity to look at it

 3    today reflect accurately your complete and total understanding

 4    of the entire agreement between the government, your attorney,

 5    and you?

 6           THE DEFENDANT:  Yes, your Honor.

 7           THE COURT:  Is everything that you understand about

 8    your plea and sentence covered in the agreement as it has been

 9    explained to you and as you have been able to see today?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Has anything that you understand been left

12    out?

13           THE DEFENDANT:  No, your Honor.

14           THE COURT:  Has anyone made any promises to you other

15    than what is detailed in that plea agreement or threatened you

16    or forced you to plead guilty or enter into the plea agreement?

17           THE DEFENDANT:  No, your Honor.

18           THE COURT:  Do you understand that on pages 2 and 3,

19    this agreement includes stipulations that you agree to the

20    following facts: that the offenses involved a loss amount of

21    more than $400 million, that your offenses involved more than

22    250 victims, that your offenses involved sophisticated means,

23    that your offenses substantially endangered the solvency or

24    financial security of 100 or more victims, and that at the time

25    of the offenses, you were a registered broker or dealer or

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

1  person associated with a broker or dealer and/or an investment

2  advisor?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you understand that these facts affect

5  the sentencing calculations under the sentencing guidelines?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Do you understand that you are under no

8  obligation to agree with the government as to any of these

9  facts?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Do you understand that on page 2, the

12  agreement provides that you are admitting the forfeiture

13  allegation in the information and that you agree that you must

14  forfeit to the United States property including but not limited

15  to $170 billion in United States currency as well as certain

16  property enumerated in the information?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Do you understand that you are under no

19  obligation to make an agreement with the government as to any

20  property or amount of money that you are required to forfeit?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Do you understand that anything that you

23  do forfeit will not count against any other fine, penalty, or

24  restitution that the court may impose as part of your sentence?

25          THE DEFENDANT:  Yes, your Honor.

1    THE COURT:  Mr. Richman and Mr. Moore, is it the

2    parties' intention that a consent order of forfeiture will be

3    prepared at some point before sentencing?

4    MR. MOORE:  That's correct, your Honor.

5    MR. RICHMAN:  That's my understanding, your Honor.

6    MR. MOORE:  Your Honor, if the government could have

7    one moment with defense counsel before we proceed.

8    THE COURT:  Yes.

9    (Pause)

10    MR. MOORE:  Thank you, your Honor.

11    THE COURT:  Is there anything that needs to be put on

12    the record?

13    MR. MOORE:  Nothing, your Honor.

14    THE COURT:  Thank you.

15    Mr. Lipkin, do you understand that on page 5, this

16    plea agreement provides that you are giving up or waiving your

17    right to appeal, to litigate or to challenge your sentence,

18    under Title 28 Sections 2255 and/or 2241, as well as your right

19    to seek a sentence reduction under Title 18 Section 3582(c), if

20    I sentence you to 10 or fewer years of imprisonment?

21    THE DEFENDANT:  Yes, your Honor.

22    THE COURT:  Do you understand that you are under no

23    obligation to waive your right to appeal or otherwise litigate

24    any sentence?

25    THE DEFENDANT:  Yes, your Honor.

```
 1              THE COURT:  Do you understand that on page 5, your

 2    agreement provides that you will not appeal any supervised

 3    release term of 3 years or less?

 4              THE DEFENDANT:  Yes, your Honor.

 5              THE COURT:  Do you understand that you are under no

 6    obligation to waive your right to appeal any supervised release

 7    term that is imposed?

 8              THE DEFENDANT:  Yes, your Honor.

 9              THE COURT:  Do you understand that on page 3, your

10    agreement provides that you will not move for a downward

11    departure under the sentencing guidelines or seek any

12    adjustment under the guidelines that is not described in the

13    plea agreement except that you can apply for a health-related

14    downward departure and you can make arguments for a lower

15    sentence under the general sentencing statute that is known as

16    Section 3553(a)?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  Do you understand that you are under no

19    obligation to agree to restrictions on your right to ask for a

20    lower sentence?

21              THE DEFENDANT:  Yes, your Honor.

22              THE COURT:  Do you understand that the plea agreement

23    provides that you will not appeal any forfeiture order of $170

24    billion or less?

25              THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  Do you understand that you are under no

2     obligation to waive your right to appeal the forfeiture order?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you still want to plead guilty pursuant

5     to this agreement?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Do you understand that even if the

8     government does not oppose or take a position on what your

9     attorney will ask as a sentence, I am free to impose whatever

10    sentence I believe is appropriate under the circumstances and

11    the applicable law, and you will have no right to withdraw your

12    plea?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Mr. Richman, do you know of any valid

15    reason why Mr. Lipkin would prevail at trial?

16         MR. RICHMAN:  I do not, your Honor.

17         THE COURT:  Do you know of any reason why he should

18    not be permitted to plead guilty?

19         MR. RICHMAN:  No, your Honor.

20         THE COURT:  Mr. Lipkin, would you please tell me now

21    what makes you guilty of the two crimes, what you did that

22    makes you guilty of the two crimes to which you are pleading

23    guilty.

24         THE DEFENDANT:  Your Honor, I appear today pursuant to

25    an agreement with the government regarding my entering a guilty

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

1    plea to the crimes of conspiracy and falsifying certain

2    financial records of my employer of some 35 years, the

3    securities firm formerly known as Bernard L. Madoff Investment

4    Securities.  I was Madoff's first employee starting in 1964.

5    Eventually, I became controller of Madoff Securities.  I

6    retired in 1998.  I remained on the Madoff payroll along with

7    my wife Carol to enable both of us to appear eligible for

8    continuing financial perks such as health insurance and 401K

9    benefits and in Carol's case Social Security benefits.

10           By maintaining two noshow jobs for Carol and me and my

11   filing false ERISA 5500 forms, I perpetrated criminal acts.

12           While the conduct I am pleading guilty to today

13   relates to my employment at Madoff Securities, I would like the

14   court to know that at no time before I retired was I ever aware

15   of Mr. Madoff or anyone else in the company was engaged in the

16   Ponzi scheme reported in the media.

17           My belief in Bernie Madoff's trading skills were such

18   that I encouraged my own family to invest their money in

19   accounts managed by Mr. Madoff.  In fact, my wife, my sons, and

20   my grandchildren invested and lost virtually all of their money

21   with Mr. Madoff.  As it turns out, these investments never

22   existed, and the family faces financial ruin.

23           While working for Bernie Madoff, I made accounting

24   entries in financial records that I knew were inaccurate.

25   Moreover, I knew the documents containing these false entries

1   were to be filed with various regulatory authorities.  These

2   filings helped Mr. Madoff run the Ponzi scheme that harmed

3   thousands of people.

4           I am truly sorry that I contributed in any way to the

5   massive harm done so to many victims.

6           As Madoff's controller, I was responsible for

7   preparing and maintaining certain financial books and records,

8   which included (a) the general ledger, (b) the stock records,

9   (c) FOCUS reports, and (d) the firm's annual financial

10  statement.  I understand that the numbers in the general ledger

11  and the stock records, some of which were false, went into the

12  firm's financial, annual financial statements, which in turn

13  were sent to some customers.  The FOCUS reports were to be

14  filed with the Securities and Exchange Commission (SEC) on a

15  monthly, quarterly, and annual basis.  I knew these reports

16  were to be accurate and certified as accurate when filed.

17  Until 1998, I signed FOCUS reports that I knew to be inaccurate

18  as directed by Mr. Madoff.  By following Mr. Madoff's

19  directions, I violated the federal securities laws.

20          Sorry, your Honor.

21          I also assisted Mr. Madoff in performing internal

22  audits of the many securities positions held by him and the

23  company.

24          @@I helped Bernie Madoff create records and books, the

25  general ledger and the FOCUS reports so he could deliver

1    promised financial returns to his customers.  In a nutshell,

2    the entries typically came at the end of the financial

3    reporting period.  They were created to enable the company to

4    report particular profit and loss numbers.  I changed the P&L

5    numbers when Bernie would tell me what he wanted.

6          I made false entries in the company's books and

7    records to reflect the adjustments to the value of certain

8    securities.  At Bernie's direction, I would change the value of

9    certain securities in our records, and from time to time, as

10   directed, I entered false securities to our stock records to

11   artificially depress P&L and to impact Bernie's tax liability.

12         Bernie was frequently audited by both the IRS and the

13   New York State taxing authorities.  It was common in our

14   business.  The company's income was reported on Mr. Madoff's

15   tax returns, which I believe was inaccurate.  Since Mr. Madoff

16   directed our outside accountant how much income to report, I

17   made changes to the general ledger as Mr. Madoff instructed me.

18         During these tax audits, the books and records were

19   altered to corroborate the information that Bernie was

20   supplying to the IRS.  For example, during the IRS audit in

21   1992, at Bernie's request, I made revisions to the 1992 general

22   ledger several years after the fact so documents would appear

23   to be consistent with Bernie's tax returns.

24         I also made sham trades in our families' investment

25   accounts in November of 2001 when I called Annette Bongiorno

 1   and asked her to locate a transaction to enable me to reduce my

 2   long-term capital gain for that period.  She canceled the

 3   original purchase of Johnson & Johnson shares after the

 4   original transaction occurred.

 5        In December of 2002, I again asked Annette to create

 6   losses in my IA account and those of my sons'.  According to my

 7   monthly statements, I learned she created backdated trades that

 8   reflected purported purchases of the stock of Micron Technology

 9   which resulted in the losses I sought.

10        Finally, since Carol and I were represented to be

11   employees of Madoff Securities, when we were not, the labor

12   department form 5500 was false, which violated federal law.

13   Not only was the 5500 form unlawfully provided to the

14   Department of Labor, it was also provided to the third-party

15   administrator of the Madoff health plan.

16        Thank you, your Honor.

17        THE COURT:  I have some questions for you.

18        As to the 5500 form, were you directly involved in the

19   preparation or filing of any of the forms that falsely showed

20   yourself and your wife as employees?

21        THE DEFENDANT:  To be perfectly honest with you, your

22   Honor, that was 10 or 12 years ago and I really don't remember.

23        THE COURT:  Was your wife improperly carried on the

24   5500 form while you were still controller?

25        THE DEFENDANT:  Again, I don't really remember because

1   it was so long ago.  She may have been; I am not sure.

2           THE COURT:  So what's your understanding of the

3   factual basis for your being guilty of falsifying statements in

4   relation to the 5500s or aiding and abeting that falsification?

5           You can turn talk to your attorney about this first if

6   you would like to.

7           (Pause)

8           THE DEFENDANT:  Your Honor, in discussing with my

9   attorney, I remember that, yes, she was on the 5500 at my

10  awareness.

11          THE COURT:  At what time?

12          THE DEFENDANT:  Pardon me?

13          THE COURT:  When was that that you were aware that she

14  was on the 5500s?

15          THE DEFENDANT:  It had to be probably late in the

16  1990s, because at some point in time she was on the books and

17  she actually worked there.

18          THE COURT:  Did she stop actually working there prior

19  to 1998?

20          THE DEFENDANT:  More than likely, yes, your Honor.

21          THE COURT:  Tell me a little bit why you feel it's

22  likely that it was before 1998.

23          THE DEFENDANT:  Since I was doing the books, I

24  remember paying her and what I used to do was take half of my

25  salary and give it to her on the books.  So I know that she was

1   on the books at that point.

2              THE COURT:  Would allocating half of your salary to

3   her have made her either ineligible for plans that were being

4   reported on the 5500s or made false the precise information

5   that was reported about her on these forms?

6              THE DEFENDANT:  Well, the problem is I don't remember

7   exactly when she stopped working.  So, at a certain point in

8   time I just kept her on the books as half of my salary, that's

9   all, and I don't remember the dates in question so far as her

10  stopping work and so forth.

11             THE COURT:  That's why I am asking you these

12  questions, because if, while she was working, what was reported

13  to the Department of Labor was correct about her being an

14  employee and, for instance, the salary basis on which her 401K

15  contributions were reported and that was true all the time that

16  you were actually doing the 5500s or supervising the 5500s,

17  then I have not yet heard a basis for making a conclusion that

18  you are guilty of Count 2 or the part of Count 1 that puts you

19  in the conspiracy to falsify 5500s.

20             So, I need you to remember that you are under oath

21  right now and I need the truth as best you can recollect it,

22  and if you don't have a recollection that puts it at that

23  specific date point, you can tell me that.  I am going to be

24  asking the government to make some representations as to the

25  evidence that it has.  But I need your best truthful

1    recollection to the extent you have it.  So you don't need to

2    speculate, you shouldn't be making anything up for me, but I

3    need to know what's in your mind and what you know.

4              THE DEFENDANT:  As I said, your Honor, probably up

5    through the early 1990s or so she was on the books and I am

6    pretty sure she was working at that time for us when she was

7    needed.  So, as some point in time I guess closer to my

8    retirement was when she probably stopped working.  I still kept

9    her on the books.

10             THE COURT:  That's when you started switching over

11   part of your salary?

12             THE DEFENDANT:  Yes.

13             THE COURT:  When you put the false information into

14   the books and records and made the changes that you were

15   talking about, did you know that the information that you were

16   putting in was false, was wrong at that time?

17             THE DEFENDANT:  Would you please repeat that.

18             THE COURT:  You told me that you changed P&L numbers,

19   that you put in stock record information that was wrong, and

20   that you knew that documents you were putting that information

21   into would be going to customers, going to the SEC under

22   certain circumstances.  When you put those numbers in at

23   Mr. Madoff's request or otherwise, did you know at the time

24   that they were wrong, that they were false?

25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Are you sure?  Are you sure that you knew

2    they were false?  I am asking if you are telling me the truth

3    on that.

4          THE DEFENDANT:  To my recollection, yes.

5          THE COURT:  Did you know that what you were doing was

6    wrong and illegal at that time?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Does the government wish any further

9    factual information to be addressed in Mr. Lipkin's allocution?

10          MR. MOORE:  No.  Thank you, your Honor.

11          THE COURT:  Mr. Moore, would you please summarize the

12    government's evidence against Mr. Lipkin.

13          MR. MOORE:  Yes, your Honor.

14          If this case had proceeded to trial, the government

15    would have proven beyond a reasonable doubt through witness

16    testimony, documents and other evidence, the following:

17          Mr. Lipkin was employed at BLMIS from in or about 1964

18    when he was the first outside employee hired by Bernard L.

19    Madoff.  He continued his employment through in or about 1998.

20    In his role as the controller of BLMIS, Lipkin created false

21    and misleading entries in the BLMIS general ledger and stock

22    records, as well as the supporting books and records that were

23    designed among other things to manipulate BLMIS' profit and

24    loss numbers or P&L numbers.

25          Specifically, beginning at least as early as the mid

1  1970s, Mr. Lipkin made false entries with respect to BLMIS' P&L

2  in the books and records of the firm.  On an approximately

3  monthly basis, Lipkin changed the P&L numbers at the direction

4  of Bernard Madoff.  As a result of these false entries made in

5  the BLMIS books and records by Lipkin and the BLMIS director of

6  operations Daniel Bonventre, BLMIS' general ledger, stock

7  record, FOCUS report and other documents were false and

8  misleading.  As an SEC registered broker/dealer, BLMIS was

9  required to file FOCUS reports on a monthly, quarterly, and

10  annual basis, as well as annual financial statements.

11          The information contained in the BLMIS FOCUS reports

12  and the annual financial statements concerning BLMIS's assets,

13  liabilities, revenues and expenses was derived principally from

14  information reported in the BLMIS general ledger and the stock

15  record.  The FOCUS reports and the annual financial statements

16  filed by BLMIS with regulators and provided to various BLMIS

17  investment advisory customers failed to reflect accurately the

18  P&L of BLMIS because the actual P&L numbers had been altered by

19  Lipkin, Bonventre, and others.

20          When Mr. Lipkin retired from BLMIS in or around 1998,

21  he instructed Enrica Cotellessa-Pitz on how to manipulate the

22  revenues at BLMIS in order to reach a particular P&L result and

23  allow the fraud at BLMIS to continue.

24          In addition, since in or about at least 1975, Lipkin

25  and his wife Carol maintained their own personal investment

1   advisory accounts at BLMIS.  On multiple occasions Lipkin

2   requested that Annette Bongiorno execute fake, back-dated

3   trades in his personal account and the accounts of his family

4   members.  In order to reduce Lipkin's capital gains income, at

5   his request, Bongiorno would either (1) cancel the sales of

6   shares in Lipkin's account well after those sales purportedly

7   had occurred or (2) document purported purchases of shares near

8   the monthly high price and purported sales of these shares near

9   the monthly low price weeks later.  No such trades actually

10  occurred.

11          In fact, your Honor, at paragraph 28 of the

12  information, the government has included the text of one of

13  Mr. Lipkin's written requests to Annette Bongiorno which

14  Ms. Bongiorno reflected upon.  The text of that note reads:

15  Dear Annette, please set up losses in the following accounts.

16  It then goes on to list Mr. Lipkin's accounts where he requests

17  a $125,000 loss to one account, a $40,000 loss in another

18  account, and a $30,000 loss in the final account.  The note

19  goes on to continue to read:  These are about what each will

20  need.  Thanks.  I will see you in Florida next month.  Love,

21  Irwin.

22          With regard to the noshow jobs, your Honor, Lipkin

23  arranged for he and his wife to have noshow jobs at BLMIS from

24  which they received income from a purported salary.  They

25  received healthcare benefits, 401K, and other benefits to which

1    they were not entitled.  Ms. Carol Lipkin was never an official

2    employee of BLMIS and she was never officially part of the

3    books.  There is some indication that Mr. Lipkin has a side

4    agreement with his own wife in which he would share half of his

5    salary with her.  However, at no time was Ms. Lipkin ever on

6    the official books and records of BLMIS as an employee.

7         Now, of course, after Mr. Lipkin retired in 1998, both

8    he and his wife remained employees, well, had noshow jobs at

9    BLMIS where they were reflected on the 5500 forms that were

10   sent to the Department of Labor.  As Eric Lipkin, Mr. Lipkin's

11   son, reported and previously testified when he pled guilty, he

12   reported a higher number of employees on the 5500s than in fact

13   worked at BLMIS.  So, in fact, Mr. Lipkin caused false filings

14   to be made through the 5500 forms to the Department of Labor.

15        THE COURT:  You are saying that preretirement as well,

16   that the government's representation is that the evidence would

17   show that Mrs. Lipkin was not actually an employee in the legal

18   sense of BLMIS and was reflected nonetheless as an employee on

19   the 5500s that were filed while Mr. Lipkin was the controller.

20        MR. MOORE:  That's correct, your Honor.

21        THE COURT:  Thank you.

22        Will you make those representations regarding the

23   broker/dealer and investment advisor status of the company

24   insofar as an element of the charges of falsification of the

25   records.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1              MR. MOORE:  Yes, your Honor.  BLMIS at all times was

 2     operating as a broker/dealer.  In 2006, they officially

 3     registered as an SEC investment advisor.  However, as we have

 4     now learned, they have always had investment advisor accounts

 5     when they were supposed to have registered with the SEC as an

 6     investment advisor.  Therefore, BLMIS was also always in fact

 7     acting as an investment advisor; they had just not notified the

 8     proper authorities that they had been doing so.

 9              THE COURT:  Thank you.

10              Mr. Lipkin, how do you now plead to the charge against

11     you in Count 1 of the information, the conspiracy count, not

12     guilty or guilty?

13              THE DEFENDANT:  Guilty, your Honor.

14              THE COURT:  How do you now plead to the charge against

15     you in Count 2 of the information, false ERISA-related filings

16     count, not guilty or guilty?

17              THE DEFENDANT:  Guilty, your Honor.

18              THE COURT:  Are you pleading guilty to each of these

19     charges because you are in fact guilty of the conduct charged?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  Are you pleading guilty to each of these

22     charges voluntarily and of your own free will?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  Do you admit that you are required to

25     forfeit property including money in the amount of $170 billion?
```

 1               THE DEFENDANT:  Yes, your Honor.

 2               THE COURT:  Are you making this admission voluntarily

 3     and of your own free will?

 4               THE DEFENDANT:  Yes, your Honor.

 5               THE COURT:  Mr. Richman, please show Mr. Lipkin Court

 6     Exhibit 1, the advice of rights form.

 7               Mr. Lipkin, have you signed this form?

 8               THE DEFENDANT:  Yes, your Honor.

 9               THE COURT:  Did you discuss it with your attorney

10     before you signed it?

11               THE DEFENDANT:  Yes, I did, your Honor.

12               THE COURT:  Did you read it before you signed it?

13               THE DEFENDANT:  Yes, your Honor.

14               THE COURT:  Did you understand it when you signed it?

15               THE DEFENDANT:  Yes, your Honor.

16               THE COURT:  Mr. Richman, did you also review and sign

17     Court Exhibit 1?

18               MR. RICHMAN:  I did, your Honor.

19               THE COURT:  Mr. Richman, are there any other questions

20     that you believe I should ask Mr. Lipkin in connection with

21     this plea?

22               MR. RICHMAN:  Not at this time, your Honor.

23               THE COURT:  Mr. Moore, are there any other questions

24     that the government believes I should ask in connection with

25     the plea.

                      SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

```
 1              MR. MOORE:  No, your Honor.  The government just adds
 2    that BLMIS at all times was operating in the Southern District
 3    of New York.
 4              THE COURT:  Thank you.
 5              That was at the 885 Third Avenue address?
 6              MR. MOORE:  Correct.
 7              THE COURT:  Mr. Lipkin, you have acknowledged that you
 8    are guilty as charged in the information.  I find that you know
 9    your rights and that you are waiving them voluntarily.  Because
10    your plea is entered knowingly and voluntarily and is supported
11    by an independent basis in fact containing each of the
12    essential elements of each of the charged offenses, I accept
13    your guilty plea and I adjudge you guilty of the offenses
14    charged in Counts 1 and 2 of information number (S9)10CR228.
15              Mr. Richman, do you want to be present for any
16    interview of Mr. Lipkin in connection with the preparation of
17    the presentence report?
18              MR. RICHMAN:  Yes, your Honor.
19              THE COURT:  I will make that direction.
20              Sentencing date please, Ms. Eng.
21              THE DEPUTY CLERK:  Friday, March 22, 2013 at 2:00 p.m.
22              THE COURT:  Is everybody available on March 22, 2013
23    at 2:00 in the afternoon?
24              MR. MOORE:  Yes, your Honor.
25              MR. RICHMAN:  Yes, your Honor.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
1              THE COURT:  Sentencing is set for March 22, 2013 at

2    2:00 p.m.

3              Counsel, please make sure to get any objections or

4    other comments back to probation promptly after the draft

5    presentence report is disclosed.  Mr. Moore, please make sure

6    that the government's factual statement is provided to

7    probation within the next two weeks.

8              MR. MOORE:  Yes, your Honor.

9              THE COURT:  Mr. Richman, if you have not been

10   contacted by probation to schedule an interview within the next

11   two weeks, please reach out to probation to make sure that

12   happens promptly.

13             MR. RICHMAN:  I shall.

14             THE COURT:  Counsel, please review my sentencing

15   submission procedures as published on the court's website.

16   They are also available here in hard copy in the courtroom.

17   Make sure that your submissions are compliant with those

18   procedures.

19             MR. MOORE:  Yes, your Honor.

20             MR. RICHMAN:  Yes, your Honor.

21             THE COURT:  Thank you.

22             Mr. Lipkin, the probation office will be preparing a

23   presentence report to assist me in sentencing you.  You will be

24   interviewed by the probation office.  It is important that the

25   information that you give to the probation officer be truthful
```

| 1 | and accurate.  The report is important in my decision as to |
| 2 | what your sentence will be.  You and your attorney have a right |
| 3 | and will have an opportunity to examine the report, to |
| 4 | challenge and to comment on it and to speak on your behalf |
| 5 | before sentencing.  Failing to be truthful with the probation |
| 6 | office and the court may have an adverse effect on your |
| 7 | sentence and may subject you to prosecution. |
| 8 | Do you understand that? |
| 9 | THE DEFENDANT:  Yes, your Honor. |
| 10 | THE COURT:  Thank you. |
| 11 | Do the parties have a proposal for the court as to |
| 12 | release conditions? |
| 13 | MR. MOORE:  We do, your Honor.  The parties have a |
| 14 | proposed bail package for your consideration.  The package |
| 15 | consists of a $1.5 million personal recognizance bond cosigned |
| 16 | by three financially responsible persons, secured by $250,000 |
| 17 | in cash or property, and that none of that cash or property |
| 18 | could come from the proceeds of the fraud or from any |
| 19 | forfeitable funds pursuant to *Nebbia*, regular pretrial |
| 20 | supervision, travel restricted to the Southern District of New |
| 21 | York, the District of New Jersey and the District of |
| 22 | Connecticut.  Mr. Lipkin and his wife must surrender their |
| 23 | passports and submit no new applications for travel. |
| 24 | Your Honor, finally, the government would suggest that |
| 25 | these conditions be met by November 19 of this year.  The |

1    government believes that this packages would be sufficient to

2    ensure the defendant's appearance and that it meets the

3    standards set forth in 3143 of the bail statute.

4                    THE COURT:  Thank you.

5                    Officer Chan, does the pretrial services department

6    concur in the government's recommendation of these conditions

7    as sufficient to satisfy the statutory criteria?

8                    MS. CHAN:  Yes, your Honor.  Just for clarification,

9    does the government want both passports of Mr. Lipkin and his

10   wife.

11                   MR. MOORE:  The government requests both passports,

12   your Honor.

13                   THE COURT:  Thank you.

14                   MR. RICHMAN:  We have no problem with the passports

15   issue.  We do have an issue that I think I need to address with

16   you in a few days with respect to the amount of money the

17   government is looking for to secure these bonds.  We have been

18   trying desperately to come with the assets.  Mr. Moore and

19   Ms. Baroni and I have talked about this on one or two occasions

20   before appearing here today.  I don't want to see Mr. Lipkin

21   incarcerated.  He just has been impoverished by the

22   consequences of what has gone on here.

23                   So I would just like the court to give us an

24   opportunity to report back whether we can meet these conditions

25   or whether they are a little too onerous and can be modified so

1    that we can meet them and bail can then serve the purpose for

2    which it's really designed.

3           THE COURT:  Mr. Moore, do you wish to be heard further

4    on that?

5           MR. MOORE:  No, your Honor.  From the government's

6    perspective we believe the $250,000 cash or property

7    requirement should be included in the package to meet the

8    requirements of the 3143 bail statute.  These are very serious

9    crimes that Mr. Lipkin has admitted.  He still has some assets

10   available to him.  We believe $250,000 cash securement is

11   perfectly reasonable in this instance.

12         THE COURT:  Mr. Richman, do you have any objection to

13   my granting the bail, putting in place the bail package tonight

14   as outlined by Mr. Moore, including the $250,000 requirement

15   and the November 19 deadline for meeting that requirement which

16   is a week from Monday.

17         MR. RICHMAN:  The answer is I don't have any

18   principles objection to that, if I have the opportunity after

19   we scour whatever we have to scour to see what assets we can

20   put up to satisfy the requirements of this bail package.

21         THE COURT:  You have all next week and the following

22   Monday.

23         MR. RICHMAN:  I don't want to sandbag the court and

24   say woe is me, we can't do this.  I am saying we are going to

25   have a hard time if we can do it at all.  I don't want 5, 10

1   $20,000 to be the reason that we might be in violation of

2   something the government asking for the court to impose.

3          THE COURT:  I appreciate the advance notice that there

4   may be such an application.  I trust that you appreciate as

5   well that the court has been persuaded that it is appropriate

6   that there be some serious amount of security and what I have

7   heard generally now is that the $250,000 the government

8   represents is an appropriate amount and I am assuming that the

9   government believes that that ought to be a feasible amount and

10   it's not proposing that amount with the intention of making

11   that a barrier to Mr. Lipkin's ability to make bail.

12          I will listen to any application.  I will hear it in

13   terms of what you present to me.

14          MR. RICHMAN:  Thank you.

15          THE COURT:  I will consider it in the context of the

16   statute.

17          MR. RICHMAN:  Thank you, your Honor.

18          THE COURT:  I need to type up the bail disposition

19   form now.  I will read to you all what I have written on it to

20   make sure that it is accurate and acceptable to all parties.

21          MR. MOORE:  Thank you, your Honor.  With those

22   conditions, we would agree to Mr. Lipkin being released on his

23   own signature tonight.

24          THE COURT:  Thank you.

25          (Pause)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1          MR. MOORE:  Your Honor, pretrial services officer Chan

 2   has informed me that Mr. Lipkin will be supervised in the

 3   district of his residence which is in New Jersey, in case your

 4   Honor needs to make a notation of that.

 5          THE COURT:  Officer Chan, would you prefer that I note

 6   that in the conditions?

 7          MS. CHAN:  Yes, please.

 8          (Pause)

 9          THE COURT:  Do we want to put on the record that

10   Mr. Lipkin has provided to officer Chan a passport.  Is that

11   Mr. Lipkin's own passport as opposed to his wife's.

12          MR. RICHMAN:  Correct.

13          THE COURT:  Let me read to you what I have written

14   here.  I will let Mr. Richman get back to his seat.

15          (Pause)

16          THE COURT:  This is what I have written as the bail

17   disposition:  $1.5 million PRB, personal recognizance bond,

18   with 3 FRPs, financially responsible persons, and $250,000 cash

19   or property security, parens, *Nebbia* compliant, regular

20   supervision, travel restricted to S.D.N.Y., D.N.J., D. CON.,

21   that's District of Connecticut.  Defendant and wife to

22   surrender all travel documents and no new applications.

23   Defendant may be released on own recognizance with all

24   conditions to be met by 11/19/2012.  Defendant to be supervised

25   by district of residence.
```

```
 1              Does that cover everything?

 2              MR. MOORE:  Yes, your Honor.

 3              THE COURT:  All right.  Let me print this out and I

 4   will sign 5 copies of it.

 5              (Pause)

 6              THE COURT:  Mr. Moore, you will Shepard through the

 7   magistrate clerk's office what needs to be Shepard in.

 8              MR. MOORE:  Yes, your Honor.

 9              THE COURT:  Mr. Lipkin, do you understand the

10   conditions on which you are being released?

11              THE DEFENDANT:  Yes, I do, your Honor.

12              THE COURT:  Do you understand that the consequences of

13   violating any of those conditions can be severe?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  Do you also understand that if you fail to

16   return to my courtroom for sentencing on the date and time set,

17   you will be guilty of the criminal act for which you could be

18   sentenced to imprisonment separate and apart from and in

19   addition to any other sentence that you might receive for the

20   crimes to which you have just pled guilty?

21              THE DEFENDANT:  Yes, your Honor.

22              THE COURT:  Then I fully expect to see you on the date

23   of sentencing.

24              Ms. Eng, is there a paper that Mr. Lipkin will have to

25   take to the probation in order to commence the process of
```

 1   preparing the presentence report?

 2               THE DEPUTY CLERK:  Yes.

 3               THE COURT:  Probation is currently on the 5th floor of

 4   this building, is that correct?

 5               THE DEPUTY CLERK:  Yes.

 6               THE COURT:  I don't know if they are still around this

 7   evening, but promptly, Mr. Lipkin, you will need to go to our

 8   probation department with the paper that Ms. Eng will be giving

 9   you to set up the paperwork.  Do you understand that?

10               THE DEFENDANT:  Yes, your Honor, but I do have a

11   problem and that's travel.  I am not at this moment able to

12   drive and neither can my wife.

13               THE COURT:  Ms. Eng, please call the number to see if

14   anybody is in probation now.

15               (Pause)

16               THE COURT:  Due to the storm people are in places

17   other than where they usually are.

18               (Pause)

19               THE COURT:  Mr. Moore, may I ask your assistance in

20   working with Mr. Richman and probation to see whether the

21   interviews can be done at Mr. Lipkin's home or by telephone.

22               MR. MOORE:  We will work with counsel, yes, your

23   Honor.

24               THE COURT:  Thank you; I appreciate that.

25               MR. RICHMAN:  We will do so, your Honor.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

```
 1              THE COURT:  All right.  Is there anything else that we
 2     all need to take up together this evening?
 3              MR. MOORE:  No, your Honor.  Thank you.
 4              MR. RICHMAN:  No, your Honor.
 5              THE COURT:  Thank you all.
 6              Thank you officer Chan.
 7              Safe travel and good health.
 8              We are adjourned.
 9                                 -  -
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```