# EXHIBIT 13

**Bernfeld, DeMatteo and Bernfeld, LLP**
600 Third Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 661-1661
Facsimile: (212) 557-9610
David B. Bernfeld
davidbernfeld@bernfeld-dematteo.com
Jeffrey Bernfeld
jeffreybernfeld@bernfeld-dematteo.com

*Attorneys for Ken-Wen Family Limited Partnership*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>    Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant, | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor, | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff,<br><br>    Plaintiff,<br>v.<br><br>KEN-WEN FAMILY LIMITED PARTNERSHIP; KENNETH W. BROWN, in his capacity as a General Partner of the Ken-Wen Family Limited Partnership; and WENDY BROWN,<br><br>    Defendant, | Adv. Pro. No. 10-04468 (SMB) |

## ANSWERS TO TRUSTEES'S FIRST SET OF REQUESTS FOR ADMISSION BY DEFENDANTS KEN-WEN FAMILY LIMITED PARTNERSHIP

Defendant **KEN-WEN FAMILY LIMITED PARTNERSHIP** (the "**Partnership**"), by the Partnership's attorneys **Bernfeld, DeMatteo and Bernfeld, LLP** as and for the Partnership's answers to the Trustee's First Set of Requests for Admission, states as follows:

### GENERAL OBJECTIONS

A. Objects to the purported definitions as both inaccurate and misleading as well as too vague to permit a proper response. Among other defects, the purported definition of "BLMIS" conflicts with the purported definition of "BLMIS" in the Complaint and requires Defendant to respond to purported legal conclusions, as opposed to factual assertions and to apply otherwise undefined legal conclusions, as opposed to factual assertions and to apply otherwise undefined legal concepts (e.g. who are intended to be embraced within the concept of "all affiliated Persons and entities… and affiliates of the above specifically identified Persons and affiliates" as set forth in paragraph 4 of the "Definitions" section). Further, the definition of "Applicable Period" begins January 1992 and continues to the present even though Plaintiff's sole surviving claim is limited to a period starting two years before the SIPA Liquidation period was filed in December 2008 (i.e. it relates back to December 2006, not January 1992) and would appear logically to end with the filing of SIPA Petition.

B. As a non-Article III Court, the Bankruptcy Court lacks the constitutional power to make final determinations or judgement on the merits of adversarial proceedings such as the instant Madoff clawback proceeding. As such, the Bankruptcy Court's authority is limited to making proposed findings of fact and law to the federal district court which is then charged with conducting an independent *de novo* review of the factual and legal issues presented.

In responding to the instant request for admissions, Defendant reserves and does not thereby waive or abandon in whole or in part Defendant's right to have all issues in the case determined *de novo* finally by the District Court nor does Defendant waive any substantive issues or defenses raised or to be raised herein and in responding herein, Defendant maintains any and all such positions and defenses, including without limitation, each of the following.

2

1. For purposes of this Adversary Proceeding, the Defendant contends that the final November 2008 BLMIS statement represented Defendant's correct principal account balance and since that statement reflected a substantial positive account balance, Defendant has no liability for any of the clawback claims set forth in the complaint.

2. The Trustee has acknowledged that this Defendant was an *innocent victim* of Madoff's alleged Ponzi Scheme who, when taking withdrawals from the account acted in good faith and with the belief that Defendant was dealing Defendant's own funds.

3. The Trustee's Complaint is premised on the claim that Madoff was operating a complete Ponzi Scheme from day one when he began his brokerage and securities operations in 1958 or 1959. Defendant rejects as erroneous this operating premises based, in part, on earlier public statements by the Trustee, on the statements (including those under oath) made by Madoff each of which confirms that the alleged Ponzi Scheme and the alleged fictitious trades did not even commence until sometime in the 1990's.

The Trustee has stated publicly that the alleged fictitious trades may have commenced *as far back as 12 years* prior to the public disclosure of the fraud in December 2008 which would place the *beginning of the Ponzi Scheme and the fictitious trades at no earlier than the end of 1996 or early 1997*. Thus the Trustee's own statements contradict the Complaint herein in that most basic and material respect.

Madoff himself in his plea allocation stated that any fraud first began in the 1990's and that prior to that time, his customer operations and trades were real, not fictitious. He later confirmed that under oath, stating that the fictitious trades occurred only with respect to purported trading utilizing his so-called Split Strike Conversion methodology which (consistent with the foregoing), appears to have been adopted and utilized as Madoff's primary trading methodology in or about 1997.

4. Defendant received trade confirmations for each trade Defendant was originally credited with at the time the trades were reported to Defendant and in addition received monthly account statements from the Madoff firm also confirming that those trades had taken place. Defendant contends that under such circumstances, Defendant is entitled to

3

treat those reported transactions as having taken place, being complete and final, with results thereof representing the unfettered property of the Defendant to do with as the Defendant determined.

5.  The Trustee has acknowledged that during the time period that this Defendant had an account with Madoff or BLMIS, the brokerage firm was engaged in significant daily volumes of legitimate securities transactions in a variety of capacities including as a substantial market maker, and as a large proprietary trader for the firm's own account.  (In addition, Madoff and BLMIS acted as a broker for various customer trades).  Under basic principles of securities law and practice, a broker owes a fiduciary duty to the customer and may not trade for the broker's benefit if at the time the broker has an order to fill from a customer either with respect to a discretionary account or an account controlled by the customer.  Upon information and belief, during the period that Defendant maintained the account, Madoff and BLMIS engaged in a tremendous volume of trades on a daily basis which were profitable for Madoff and/or BLMIS.  After the Trustee was appointed, the Trustee unilaterally eliminated all customer trades alleging that all were fictitious trades for the various customers including Defendant.  The elimination of those trades from Defendant's account was improper for purposes of this claw back action; but, even if *arguendo*, that had been proper, nevertheless Defendant and other customers should have been credited with the profitable transactions executed by Madoff and/or BLMIS in the same securities for their own accounts because they now represented transactions where the broker was executing for the broker when the broker was legally obliged to first execute for the customers, including Defendant.

In the Answer and other Court filings, Defendant has alleged that the calculations contained in the Complaint on which the clawback claims are predicted are all inaccurate and/or incomplete and accordingly, Defendant denies each request to admit which seeks admissions concerning any of those inaccurate calculations.

## ANSWERS

**ADMISSION No. 1:**

"Admit that Exhibit B to the Trustee's Complaint accurately reflects the complete history of the transactions affecting the principal balance calculation of the Account."

**ANSWER TO ADMISSION No. 1:**

Denies.

**ADMISSION No. 2:**

"Admit that Exhibit B to the Trustee's Complaint accurately reflects the complete history of the transactions concerning the Account."

**ANSWER TO ADMISSION No. 2:**

Denies.

**ADMISSION No. 3:**

"Admit that Column 4 of Exhibit B to the Complaint accurately reflects the deposits made into the Account."

**ANSWER TO ADMISSION No. 3:**

Denies.

**ADMISSION No. 4:**

"Admit that Column 4 of Exhibit B to the Complaint accurately reflects the deposits made into the Account during the Applicable Period."

**ANSWER TO ADMISSION No. 4:**

Denies.

**ADMISSION No. 5:**

"Admit that Column 5 of Exhibit B to the Complaint accurately reflects the withdrawals from the Account."

**ANSWER TO ADMISSION No. 5:**

Admits, upon information and belief.

**ADMISSION No. 6:**

"Admit that Column 5 of Exhibit B to the Complaint accurately reflects the withdrawals from the Account during the Applicable Period."

**ANSWER TO ADMISSION No. 6:**

Admits, upon information and belief.

**ADMISSION No. 7:**

"Admit that over the life of the Account, no less than $7,001,000 was withdrawn from the Account."

**ANSWER TO ADMISSION No. 7:**

Admits, upon information and belief.

**ADMISSION No. 8:**

"Admit that $3,850,000 was withdrawn from the Account during the time period between December 11, 2006 and December 11, 2008."

**ANSWER TO ADMISSION No. 8:**

Admits, upon information and belief.

**ADMISSION No. 9:**

"Admit that You received the withdrawals from the Account listed in Column 5 of Exhibit B to the Complaint."

6

**ANSWER TO ADMISSION No. 9:**

Denies, upon information and belief.

**ADMISSION No. 10**

"Admit that You received the withdrawals listed in Column 5 of Exhibit B to the Complaint that occurred between December 11, 2006 and December 11, 2008."

**ANSWER TO ADMISSION No. 10:**

Denies, upon information and belief

**ADMISSION No. 11:**

"Admit that $7,001,000 that was withdrawn from the Account, $1,278,000 consisted of principal."

**ANSWER TO ADMISSION No. 11:**

Denies

**ADMISSION No. 12:**

"Admit that, of the $7,001,000 that was withdrawn from the Account, no less than $5,000,000 was in excess of principal."

**ANSWER TO ADMISSION No. 12:**

Denies

**ADMISSION No. 13:**

"Admit that no less than $5,000,000 more was withdrawn from the Account than was deposited into the Account."

**ANSWER TO ADMISSION No. 13:**

Denies

**ADMISSION No. 14:**

"Admit that, between December 11, 2006 and December 11, 2008, no less than $3,850,000 in excess of principal was withdrawn from the Account."

**ANSWER TO ADMISSION No. 14:**

Denies

**ADMISSION No. 15:**

"Admit that, between December 11, 2006 and December 11, 2008, You received no less than $3,850,000 in excess of principal that was withdrawn from the Account."

**ANSWER TO ADMISSION No. 15:**

Denies

**ADMISSION No. 16:**

"Admit that the Account was initially funded by an inter-account transfer from BLMIS account in the amount of $535,163."

**ANSWER TO ADMISSION No. 16:**

Admits, upon information and belief

**ADMISSION No. 17:**

"Admit that, of the $535,163 transferred from another BLMIS account into the Account January 4, 1993, $340,000 consisted of principal."

**ANSWER TO ADMISSION No. 17:**

Denies

**ADMISSION No. 18:**

"Admit that, of the $535,163 transferred from another BLMIS account into the Account on January 4, 1993, $195,163 consisted entirely of fictitious profits which were never achieved."

8

**ANSWER TO ADMISSION No. 18:**

Denies

**ADMISSION No. 19:**

"Admit that BLMIS made all Transfers to Defendants between December 11, 2006 and December 11, 2008, with actual intent to hinder, delay, or defraud BLMIS investors."

**ANSWER TO ADMISSION No. 19:**

Denies

**ADMISSION No. 20:**

"Admit that BLMIS was operating a Ponzi scheme as alleged in the Complaint."

**ANSWER TO ADMISSION No. 20:**

Denies

Dated:  June 14, 2018                            Bernfeld, DeMatteo & Bernfeld LLP

                                                 By_____/s/_____
                                                 David B. Bernfeld (0177)
                                                 Jeffrey B. Bernfeld (1615)
                                                 Attorneys for Defendant Ken-Wen Family
                                                 Limited Partnership
                                                 600 Third Avenue, 15th Floor
                                                 New York, NY 10016
                                                 (212) 661-1661