**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>    Plaintiff,<br><br>v.<br><br>FAIRFIELD PAGMA ASSOCIATES, LP, a New York limited partnership, SEYMOUR KLEINMAN, ESTATE OF MARJORIE KLEINMAN A/K/A MARJORIE HELENE KLEINMAN, BONNIE JOYCE KANSLER, as executor, FAIRFOX, LLC, a New York limited liability company, and SEYFAIR, LLC, a New York limited liability company,<br><br>    Defendants. | Adv. Pro. No. 10-05169 (CGM) |

**TRUSTEE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................3

I.   THE TRUSTEE HAS MET HIS PRIMA FACIE CASE AGAINST
     DEFENDANTS FAIRFIELD PAGMA, SEYFAIR LLC, AND FAIRFOX LLC .............3

II.  SEYMOUR KLEINMAN AND MARJORIE KLEINMAN WERE GENERAL
     PARTNERS OF FAIRFIELD PAGMA AND ARE LIABLE FOR THE TWO-
     YEAR TRANSFERS ........................................................................................................4

     A.   The Trustee's Evidence Establishes That Seymour Kleinman and Marjorie
          Kleinman Were General Partners of Fairfield Pagma .............................................5

     B.   Trustee's Requests For Admissions Should Be Deemed Admitted........................7

     C.   Defendants Should Be Precluded From Relying On Documents Never
          Produced During Discovery and Undisclosed Witnesses.......................................7

     D.   Even If Considered, The Undated and Unsigned LLC Agreements
          Submitted Through Self-Serving Witness Declarations Do Not Create a
          Genuine Factual Dispute for Trial .......................................................................12

III. THE TRUSTEE DID NOT FORFEIT HIS CLAIM AGAINST SEYMOUR
     KLEINMAN ...................................................................................................................15

IV.  THE TRUSTEE IS ENTITLED TO PREJUDGMENT INTEREST ...............................16

CONCLUSION..........................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 1031 Tax Grp.*,
    439 B.R. 84 (Bankr. S.D.N.Y. 2010)........................................................................17

*Brown v. Eli Lilly & Co.*,
    654 F.3d 347 (2d Cir. 2011)..................................................................................12

*Brown v. Henderson*,
    257 F.3d 246 (2d Cir. 2001)..................................................................................14

*Centi v. Fedigan*,
    413 F. Supp. 3d 171 (S.D.N.Y. 2019)...................................................................12

*City of Almaty, Kazakhstan v. BTA Bank JSC*,
    No. 15-CV-05345, 2019 WL 3281326 (S.D.N.Y. July 3, 2019).............................9

*Dawson v. County of Westchester*,
    373 F.3d 265 (2d Cir. 2004)..................................................................................13

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 2006)....................................................................................9

*Dickinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    431 F.Supp.2d 247 (D. Conn. 2006).......................................................................9

*Gibson v. SCE Grp., Inc.*,
    391 F. Supp. 3d 228 (S.D.N.Y. 2019).....................................................................7

*Haas v. Delaware & Hudson Ry. Co.*,
    282 F. App'x 84 (2d Cir. 2008) ..............................................................................8

*Healy v. Chelsea Resources, Ltd.*,
    736 F. Supp. 488 (S.D.N.Y. 1990).......................................................................13

*Kotler v. Jubert*,
    986 F.3d 147 (2d Cir. 2021)..................................................................................15

*Lubrano v. Berkshire Life Ins. Co.*,
    No. 94CV5651, 1995 WL 313144 (E.D.N.Y. May 17, 1995)...........................5, 13

*Mandarino v Mandarino*,
    257 F.R.D. 394 (S.D.N.Y. 2009) ..........................................................................16

*O'Rourke v. Drunken Chicken in NY Corp.*,
  No. 19 CV 3942 (NGG)(LB), 2021 WL 1394176 (E.D.N.Y. Feb. 26, 2021) ........................15

*Picard v. BAM L.P.*,
  624 B.R. 55 (Bankr. S.D.N.Y. 2020) .................................................................................16, 17

*Picard v. Citibank, N.A.*,
  12 F.4th 171 (2d. Cir. 2021) ...................................................................................................17

*Picard v. The Gerald and Barbara Keller Fam. Tr.*,
  Adv. Pro. No. 10-04539, 2021 WL 4476811 (Bankr. S.D.N.Y. Sept. 30, 2021) ...............3, 14

*Picard v. Greiff*,
  476 B.R. 715 (S.D.N.Y. 2012)..................................................................................................4

*Picard v. JABA Assocs. LP*,
  528 F. Supp. 3d 219 (S.D.N.Y. 2021).............................................................................3, 6, 17

*Picard v. Lisa Beth Nissenbaum Tr.*,
  No. 20 cv. 3140, 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021) .........................................3, 17

*Picard v. Merkin*,
  440 B.R. 243 (Bankr. S.D.N.Y. 2010) ......................................................................................6

*Picard v. Miller*,
  631 B.R. 1 (Bankr. S.D.N.Y. 2021) ...............................................................................3, 4, 17

*Picard v. Shapiro*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015)......................................................................................6

*R.G. Group, Inc. v. Horn & Hardart Co.*,
  751 F.2d 59 (2d Cir. 1984).....................................................................................................14

*SIPC v. BLMIS (In re Bernard L. Madoff)*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015)......................................................................................4

*Stephens v. Am. Risk Mgmt. Inc.*,
  No. 89 CIV 2999, 1995 WL 479438 (S.D.N.Y. Aug. 14, 1995) ............................................15

*Unicorn Tales, Inc. v. Banerjee*,
  138 F.3d 467 (2d Cir. 1998)...................................................................................................15

*Wickham Contracting Co., Inc. v. Local Union No. 3, Intern. Broth. of Elec.*
  *Workers, AFL-CIO*,
  955 F.2d 831 (2d Cir. 1992)...................................................................................................16

**Statutes**

11 U.S.C. § 550(a) ........................................................................................................................6

iii

15 U.S.C. § 78fff(a)(1)....................................................................................................17

15 U.S.C. § 78fff(a)(1)(B) ..............................................................................................17

**Rules**

Fed. R. Civ. P. 25 .......................................................................................................2, 15

Fed. R. Civ. P. 25(a)(1)...................................................................................................15

Fed. R. Civ. P. 25(a)(3)...................................................................................................15

Fed. R. Civ. P. 36 ..............................................................................................................2

Fed. R. Civ. P. 36(a)(3)......................................................................................................7

Fed. R. Civ. P. 37 .........................................................................................................1, 9

Fed. R. Civ. P. 37(c) .....................................................................................................4, 8

Fed. R. Civ. P. 37(c)(1)......................................................................................................8

Fed. R. Civ. P. 45 ............................................................................................................12

**Other Authorities**

Moore's Federal Practice § 25.13[1], [2][b] (3d. ed. 2008).............................................15

N.Y. P'ship L. § 121-602.................................................................................................14

N.Y. P'ship L. § 26(a).......................................................................................................6

## PRELIMINARY STATEMENT

Defendants[1] concede the Trustee's claims against the initial transferee, Fairfield Pagma, and two of the four general partners the Trustee sued, Seyfair LLC and Fairfox LLC.  With no available defenses, the Trustee is entitled to a judgment of $1,247,929 against these three entities, representing the fictitious profits received in the Two-Year Period, plus prejudgment interest consistent with the law of this liquidation.

The only issue raised by Defendants' Opposition is whether that judgment should extend to the two other general partners the Trustee sued, Seymour Kleinman, the Estate of Marjorie Kleinman, and Bonnie Joyce Kansler, as the estate's executor.  But Defendants' argument that Seymour Kleinman and Marjorie Kleinman ceased being general partners of Fairfield Pagma at an unknown date in 2005, prior to the Two-Year Transfers to Defendants, fails in every possible respect.  Most fundamentally, Defendants never disclosed the witnesses and documents they now rely on, never produced the records when the Trustee requested them, and never even served written responses to any of the Trustee's discovery demands.  A straightforward application of Rule 37 is sufficient to strike these declarations and documents from consideration on this Motion—especially given defense counsel's admission that his clients "screamed at [him] to stop doing work on the case and hung up on [him]" when the Trustee followed up on the delinquent discovery.  This Court should not reward Defendants' intentional skirting of their discovery obligations by permitting them to use testimonial and documentary evidence they failed to disclose and produce.

---

[1] Defined terms shall have the same meaning ascribed in the Trustee's Memorandum of Law in Support of Motion for Summary Judgment (the "Motion").  *See Picard v. Fairfield Pagma Assocs. LP*, Adv. Pro. No. 10-05169 (Bankr. S.D.N.Y. Nov. 17, 2021), ECF No. 95.

The *only* admissible evidence properly before the Court in this case—the BLMIS books and records recovered by the Trustee, which Defendants fully ignore in their Opposition—establish that Seymour and Marjorie were general partners of Fairfield Pagma.  Instead of confronting this evidence, Defendants mischaracterize the Trustee's Motion as relying solely on the unanswered Requests for Admission, which are deemed admitted by operation of Fed. R. Civ. P. 36.  But while Defendants offer no valid reason to discard their admissions, the Trustee does not even need to rely on them in order to carry his *prima facie* burden; the unrebutted evidence contained in the BLMIS books and records is sufficient.  Nor do the documents Defendants now rely on even show that Seymour and Marjorie Kleinman ceased being general partners of Fairfield Pagma.  Rather, Defendants rely principally on the corporate records of Seyfair LLC and Fairfox LLC—including unsigned and undated LLC agreements—which do not speak to the partnership structure of Fairfield Pagma.  No partnership agreement for Fairfield Pagma is included, and the 2005 K-1s for Seymour and Marjorie do not show they ceased being general partners of Fairfield Pagma.

Defendants further argue that the Trustee cannot maintain his claim against Defendant Seymour Kleinman because the Trustee failed to timely substitute Seymour's estate when he passed away.  But Defendants failed to file a statement of death as required by Fed. R. Civ. P. 25, and thus the Trustee's duty to substitute the estate was never triggered.  Further, although Defendants notified the Trustee of Seymour's death via email from counsel on January 27, 2016, in the same email Defendants' counsel represented to the Trustee that they intended to withdraw as counsel, which meant that counsel could not provide the Trustee with the consent necessary to substitute any defendants.

Finally, Defendants claim that the Trustee was the cause for delay in this case and as such, he should not be entitled to prejudgment interest. Not only do Defendants misunderstand the standard for applying prejudgment interest but they severely mischaracterize the Trustee's efforts to conduct discovery and bring this case to judgment. The Trustee was the *only* party to serve and request discovery throughout the entire case, all within the deadlines agreed upon by the parties and set by the case management order. The real cause for delay in this case was counsel's intention to withdraw, which never came to fruition, but is evident in the emails they attach to their Opposition.

## ARGUMENT

## I.    THE TRUSTEE HAS MET HIS PRIMA FACIE CASE AGAINST DEFENDANTS FAIRFIELD PAGMA, SEYFAIR LLC, AND FAIRFOX LLC

Defendants concede that "Fairfield Pagma received the [$1,247,929 in] transfers the Trustee is seeking to avoid and recover between March 2007 and July 2008." Defs.' Opposition at 1, ECF No. 105. Defendants also concede that "[t]here is no genuine dispute that Seyfair and Fairfox were the general partners of Fairfield Pagma during the two-year transfer period," making them liable for the Two-Year Transfers as well. *Id.* at 2. Defendants make no attempt to rebut the extensive evidence the Trustee offers to support his summary judgment motion against Fairfield Pagma, Seyfair LLC, or Fairfox LLC.

Nor can they. As to Defendants Fairfield Pagma, Seyfair LLC, and Fairfox LLC, each issue in this Motion has been previously decided by this Court and the District Court, overwhelmingly in the Trustee's favor. *See Picard v. The Gerald and Barbara Keller Fam. Tr.*, Adv. Pro. No. 10-04539, 2021 WL 4476811 (Bankr. S.D.N.Y. Sept. 30, 2021); *Picard v. Miller*, 631 B.R. 1 (Bankr. S.D.N.Y. 2021); *Picard v. JABA Assocs. LP*, 528 F. Supp. 3d 219 (S.D.N.Y. 2021); *Picard v. Lisa Beth Nissenbaum Tr.*, No. 20 cv. 3140 (JGK), 2021 WL 1141638

3

(S.D.N.Y. Mar. 24, 2021); Mem. Decision, *Picard v. Est. of Seymour Epstein*, Adv. Pro. No. 10-04438 (CGM) (Bankr. S.D.N.Y. Jan. 27, 2021), ECF No. 155 ("*Epstein Decision*"). Other than the amounts and dates of the transfers, both the claims and the record submitted in support of this Motion are the same as the other cases in which the Trustee was granted summary judgment.

While the Trustee may be unable to collect certain assets to satisfy a judgment against Defendants, none of these arguments are a defense to the Trustee's claims. *See Miller*, 631 B.R. at 10 ("While collection may be difficult, the Trustee argues that the state law provisions do not bar the entry of a judgment. The Court agrees."); *see also SIPC v. BLMIS (In re Bernard L. Madoff)*, 531 B.R. 439, 483 (Bankr. S.D.N.Y. 2015) (finding that New York law may exempt certain trust property from judgment execution but did not invalidate the Trustee's claims); *Picard v. Greiff*, 476 B.R. 715, n.13 (S.D.N.Y. 2012) (finding New York state law regarding exempt IRA assets would not apply to fraudulent transfers). The Trustee is therefore entitled to a judgment against Fairfield Pagma, Seyfair LLC, and Fairfox LLC for the Two-Year Transfers.

## II.    SEYMOUR KLEINMAN AND MARJORIE KLEINMAN WERE GENERAL PARTNERS OF FAIRFIELD PAGMA AND ARE LIABLE FOR THE TWO-YEAR TRANSFERS

Defendants spend the majority of their Opposition arguing that Seymour Kleinman and Marjorie Kleinman ceased being general partners of Fairfield Pagma during the Two-Year Period and thus cannot be liable for the Two-Year Transfers. But Defendants rely on testimonial and documentary evidence that they neither disclosed in their initial disclosures nor produced in response to the Trustee's discovery requests, and are therefore precluded from relying on this evidence on summary judgment. *See* Decl. of Maximillian S. Shifrin dated January 12, 2022 ("Shifrin Decl."), Ex. 1 (Defendants' Initial Disclosures); Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a

trial, unless the failure was substantially justified or is harmless.").  And the Trustee's evidence,

which consists of the BLMIS books and records, affirmatively disclosed and produced to

Defendants years ago, demonstrates that Seymour and Marjorie were general partners of

Fairfield Pagma.  As an independent basis to reject Defendants' efforts to defeat summary

judgment, the Trustee's unanswered Requests for Admission, including the specific requests

relating to the general partners of Fairfield Pagma, should be deemed admitted.

Even if the Court considers the non-disclosed, non-produced witnesses and documents,

they are nevertheless insufficient to establish a genuine factual dispute for trial.  None of the

undisclosed and unproduced documents Defendants submit through their undisclosed

witnesses—including unsigned and undated LLC agreements, rather than partnership

agreements—demonstrate that Seymour and Marjorie Kleinman ceased being general partners of

Fairfield Pagma.  Such incomplete documents attached to self-serving declarations of individuals

never disclosed during discovery cannot raise a genuine dispute of material fact sufficient to

overcome the Trustee's Motion.  *See Lubrano v. Berkshire Life Ins. Co.*, No. 94CV5651, 1995

WL 313144, at *4 (E.D.N.Y. May 17, 1995).

## A.    The Trustee's Evidence Establishes That Seymour Kleinman and Marjorie Kleinman Were General Partners of Fairfield Pagma

Defendant Fairfield Pagma is a New York limited partnership.  Answer ¶ 7, ECF No. 59.

Defendants Fairfox LLC, Seyfair LLC, Marjorie Kleinman, and Seymour Kleinman were general

partners of Fairfield Pagma.  *See id.* ¶ 9; Cremona Decl., Ex. 16 (BLMIS Partnership Account

Agreement), ECF No. 97-16; Ex. 17 (Trustee's First Set of Reqs. for Admis. to Def. Fairfield

Pagma Associates,  LP Nos. 38–39), ECF No. 97-17.  While Defendants frame the Trustee's

Motion as relying solely on the unanswered Requests for Admission to support the fact that

Marjorie and Seymour were general partners of Fairfield Pagma, they completely ignore the

evidence the Trustee attached and expressly relied on in his opening brief to prove these facts. The Partnership Account Agreement for the Fairfield Pagma Account lists Seymour and Marjorie as general partners.  Cremona Decl., Ex. 16 (BLMIS Partnership Account Agreement), ECF No. 97-16; *see also* Trustee's Motion Section III.C, ECF No. 95.  In addition, contained within Defendants' customer file is a list of limited partners for Fairfield Pagma.  Shifrin Decl., Ex. 2 (List of Fairfield Pagma Limited Partners).  Seymour and Marjorie's names are crossed out indicating they were not limited partners.  *See id.*  The Trustee's evidence—the only admissible evidence properly before this Court in this case—all indicates that Seymour and Marjorie were general partners of Fairfield Pagma.  And this evidence alone discharges the Trustee's *prima facie* burden on summary judgment.

"[G]eneral partners are jointly liable for the obligations of the partnership . . . and courts that have considered this issue in the context of this SIPA liquidation have concluded that general partners are jointly liable as initial transferees of the Two-Year Transfers."  *JABA Assocs. LP*, 528 F. Supp. 3d at 244–45 (citing N.Y. P'ship L. § 26(a)); *see also Picard v. Shapiro*, 542 B.R. 100, 114 (Bankr. S.D.N.Y. 2015) ("[The individuals] are liable as general partners of [the partnership] for the fraudulent transfers that [the partnership] received.");  *Picard v. Merkin*, 440 B.R. 243, 268–69 (Bankr. S.D.N.Y. 2010) ("Specifically in the bankruptcy context, general partners can be held personally liable under state law for avoidable transfers made to the partnership.  A trustee is empowered under section 550(a) of the Code to recover avoided transfers from a partnership as initial transferee, or from the general partner of the partnership under applicable state partnership law.").  Thus, Defendants Seymour Kleinman, Estate of Marjorie Kleinman, and Bonnie Joyce Kansler, as executor, are liable for the Two-Year Transfers.

### B.    Trustee's Requests For Admissions Should Be Deemed Admitted

As noted above, Defendants falsely argue the Trustee relies entirely on the unanswered

Requests for Admissions to prove his claim, ignoring the signed and dated BLMIS partnership

account agreement that demonstrates Seymour and Marjorie were general partners.  In reality,

the opposite is true: the Trustee does not need the unanswered Requests for Admission to carry

his burden on summary judgment, as the evidence in the BLMIS books and records is sufficient

to do so.  Nevertheless, the Trustee's unanswered Requests for Admission provide an additional

and independent basis to establish Seymour and Marjorie Kleinman's general partnership status.

*See Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 250 (S.D.N.Y. 2019) (deeming facts

conclusively established where responding party neither timely responded to requests for

admission nor made a motion for the admission to be withdrawn or amended); Fed. R. Civ. P.

36(a)(3).

### C.    Defendants Should Be Precluded From Relying On Documents Never Produced During Discovery and Undisclosed Witnesses

In support of Defendants' argument that Seymour and Marjorie ceased being general

partners prior to the Two-Year Transfers, Defendants attach three witness declarations from

Adam Kansler, Bonnie Joyce Kansler, and Ronnie Leo.  *See* Declaration of Adam Kansler dated

December 22, 2021 ("A. Kansler Decl."), ECF No. 107; Declaration of Bonnie Joyce Kansler

dated December 22, 2021 (B. Kansler Decl."), ECF No. 108; Declaration of Ronni Leo dated

December 22, 2021 ("Leo Decl."), ECF No. 109.  Neither Adam Kansler nor Ronnie Leo were

identified in Defendants' initial disclosures, and Defendants never supplemented these

disclosures or otherwise disclosed these witnesses.  *See* Shifrin Decl., Ex 1 (Defendants' Initial

Disclosures).

Defendants also attach documents to their witness declarations, including:

- Articles of Organization for Seyfair LLC and Fairfox LLC (A. Kansler Decl., Ex. A);

- Amended and Restated Limited Liability Company Agreements for Seyfair LLC and Fairfox LLC (A. Kansler Decl., Ex. B);

- Fairfield Pagma's tax returns from 2007–2008 (B. Kansler Decl., Ex. B);

- Schedule K-1s for Seyfair LLC and Fairfox LLC from 2007– 2008 (B. Kansler Decl., Ex. A); and

- Schedule K-1s for Seyfair LLC, Foxfair, LLC,[2] Seymour Kleinman, and Marjorie Kleinman from 2005 (Leo Decl., Ex. A).

But apart from the tax returns, none of these documents—including the Articles of Organization, LLC agreements, and Schedule K-1s—were ever disclosed by Defendants. And despite the Trustee's longstanding requests for production covering these materials, none of these documents were produced during discovery.[3] *See* Shifrin Decl., Ex 1 (Defendants' Initial Disclosures). Although the Trustee properly sought documents and information relating to Fairfield Pagma in his discovery requests, he didn't receive it during discovery and had no way to know such documents or witnesses even existed. *See* Shifrin Decl., Exs. 7–9 (Trustee's Requests for Production to Fairfield Pagma; Trustee's Interrogatories to Fairfield Pagma; Trustee's Requests for Production to Defendants Estate of Marjorie Kleinman and Bonnie Joyce Kansler, as Executor)

Rule 37(c) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

---

[2] Notably, various documents attached to the witness declarations refer to "Fairfox LLC" and "Foxfair LLC." *Compare* A. Kansler Decl, Ex. A (Articles or Organization of Fairfox LLC) *with* Ex. B (Amended and Restated Limited Liability Company Agreement of Foxfair LLC). Defendants provide no explanation for these discrepancies.

[3] In addition, Defendants' counsel claims he "explained to Plaintiff's counsel that Fairfield Pagma could not effectively answer written discovery," yet Defendants provide no explanation in their Opposition for why documents were not produced and witnesses were not disclosed during discovery but are now accessible to them. *See* Decl. of Brian J. Neville dated December 22, 2021 ("Neville Decl."), ¶ 13, ECF No. 106.

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Haas v. Delaware & Hudson Ry. Co.*, 282 F.

App'x 84, 86 (2d Cir. 2008) (affirming striking of affidavit in opposition to motion for summary

judgment from previously undisclosed witness).  In determining whether a discovery sanction is

appropriate, courts consider four factors: "'(1) the party's explanation for the failure to comply

with the disclosure requirement; (2) the importance of the [excluded evidence]; (3) the prejudice

suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and

(4) the possibility of a continuance.'"  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296, 98 (2d

Cir. 2006) (applying these factors at summary judgment and determining that preclusion was

appropriate where plaintiff attempted to use documents not produced in discovery).  In *City of

Almaty, Kazakhstan v. BTA Bank JSC*, the District Court preluded defendant "from offering any

of the documents he claims support his defenses in opposition to summary judgment or at trial,"

in addition to drawing an adverse inference against defendant for purposes of determining

liability, after defendant failed to respond to any written discovery requests.  No. 15-CV-05345,

2019 WL 3281326, at *6 (S.D.N.Y. July 3, 2019); *see also Dickinson v. Merrill Lynch, Pierce,

Fenner & Smith, Inc.*, 431 F.Supp.2d 247, 254–55 (D. Conn. 2006) (striking exhibit attached to

an affidavit submitted in connection with defendant's reply memorandum in support of summary

judgment where, as here, the document was requested during discovery but not produced, and no

legitimate excuse for the delayed production was offered).

Here, a straightforward application of Rule 37 resolves Defendants' belated improper

attempts to use undisclosed and unproduced documents for the first time on summary judgment.

Defendants not only failed to produce the documents they attach to their Opposition and failed to

identify two of the witnesses that now submit declarations, they also failed to serve written

responses to any of the Trustee's discovery requests. *See* Neville Decl., Ex. B. Defendants offer

no direct explanation for this. Instead, they vaguely argue (without citation to any authority) that

Fairfield Pagma is "defunct" and is thus somehow excused from responding to discovery—

despite the fact that Fairfield Pagma remains represented by defense counsel on this Motion.

This explanation directly contradicts defense counsel's response to an email from counsel for the

Trustee concerning the status of their delinquent discovery responses:

> We have not been able to communicate with our client. As you
> know Seymour Kleinman died some time ago. **The last time I was
> able to get his daughter on the phone she screamed at me to
> stop doing work for the case and hung up on me.** If we cannot
> communicate with our clients, we will need to set up a call with the
> court in an effort to resolve this matter. . . .We cannot respond to
> discovery without communication from the client. Sorry, it seems
> we will have to involve the court. We have been trying to
> withdraw from the case for two years.

Neville Decl., Ex. B. There is nothing in this email about defunct partnerships. Rather, it is

clear that Defendants made the affirmative decision to intentionally flout their discovery

obligations by ignoring the Trustee's discovery requests. This Court should avoid tacitly

approving such discovery malfeasance by permitting Defendants to now benefit from evidence

they intentionally withheld (despite the Trustee's requests) through witnesses they never

disclosed.

Nor did the Trustee agree to "hold in abeyance" the Defendants' delinquent discovery

responses, contrary to Defendants' arguments. The Trustee's original email to Defendants could

not have been clearer: "Please be advised that if we are not in receipt of responses, without

objections which are deemed waived as a result of the failure to timely respond, by March 17,

2017 we will have no alternative other than to file a motion with respect thereto." Neville Decl.,

Ex. B. After defense counsel explained that his client "had screamed at [him] to stop doing work

for the case and hung up on [him]," the Trustee offered to "not take any action with respect to the

discovery without another 15 day notice"—which, based on the context of the initial email, clearly meant that he would not move to compel or otherwise bring the issue to the Court. *Id.* Defendants' attempt to take the Trustee's 15-day notice out of context and assert that this somehow excused Defendants' four-year failure to produce documents they now rely on to oppose summary judgment is disingenuous.

Defendants further suggest that their failure to produce documents is somehow the Trustee's fault because he did not move to compel their production. But based on the documents and witnesses properly identified in Defendants' initial disclosures (which consisted of identifying Bonnie Joyce Kansler and the tax returns), the Trustee had no way of knowing that Defendants planned to rely on the documents they now attach or that Adam Kansler and Ronnie Leo had discoverable information. Even though the Trustee did not move to compel that discovery, Defendants are not permitted to use—at this late stage—non-produced documents that clearly fall under a valid and properly served discovery request they decided to ignore. *See generally* Shifrin Decl., Exs. 7–9 (Trustee's Requests for Production to Fairfield Pagma; Trustee's Interrogatories to Fairfield Pagma; Trustee's Requests for Production to Defendants Estate of Marjorie Kleinman and Bonnie Joyce Kansler, as Executor).

Defendants' argument that *the Trustee* failed to meet his discovery obligations is belied by the record. On December 18, 2015, the parties exchanged initial disclosures consistent with the deadline in the case management order. *See* Shifrin Decl., Ex. 3 (Trustee's Initial Disclosures); Case Management Order, ECF No. 61. On June 14, 2016, the Trustee affirmatively produced—without waiting for a document request—all documents identified in his initial disclosures, including the Fairfield Pagma Account documents and bank transfer documents and also made available the millions of documents in the Trustee's E-Data Room 1.

Shifrin Decl., Ex. 4 (June 14, 2016 Letter to Defendants).  On January 25, 2017, the Trustee

served Interrogatories, Document Requests, and Requests for Admission on Fairfield Pagma and

Document Requests Defendants Estate of Marjorie Kleinmn and  Bonnie Joyce Kansler, as

executor of Marjorie's estate.  *See* Cremona Decl. Ex. 16 (Trustee's Requests for Admission);

Shifrin Decl., Exs. 7–9 (Trustee's Requests for Production to Fairfield Pagma; Trustee's

Interrogatories to Fairfield Pagma; Trustee's Requests for Production to Defendants Estate of

Marjorie Kleinman and Bonnie Joyce Kansler, as Executor); Neville Decl., Ex. B.  That same

day, the Trustee notified Defendants that he intended to serve a Rule 45 subpoena on Citibank,

N.A. in connection with Fairfield Pagma's bank account.  Shifrin Decl., Ex. 5 (Jan. 25, 2017

Email to Defendants).  On March 9, 2017, the Trustee notified Defendants that their responses to

discovery were past due.  *See* Neville Decl., Ex. B.  Under the Case Management Order, fact

discovery was completed on June 5, 2017.  ECF No. 61.  On August 24, 2017, the Trustee served

his expert reports on Defendants.  Shifrin Decl., Ex. 6 (Aug. 24, 2017 Letter to Defendants).

Defendants did not respond or otherwise serve their own expert reports, and expert discovery

closed on November 14, 2017 under the Case Management Order.  ECF No. 61.  Accordingly,

the Trustee met all discovery deadlines while Defendants failed to meaningfully participate in

fact and expert discovery at all.

### D.  Even If Considered, The Undated and Unsigned LLC Agreements Submitted Through Self-Serving Witness Declarations Do Not Create a Genuine Factual Dispute for Trial

Even if the documents were somehow admissible after Defendants' four-year delay and

the close of discovery (which Defendants fail to address in their brief), the documents do not

purport to show what Defendants claim.  The non-moving party "must do more than simply

show that there is some metaphysical doubt as to the material facts, and may not rely on

conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347,

358 (2d Cir. 2011) (citations omitted). "The mere existence of a scintilla of evidence in support

of the non-moving party's position is likewise insufficient." *Centi v. Fedigan*, 413 F. Supp. 3d

171, 176 (S.D.N.Y. 2019) (citing *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir.

2004).

      Here, Defendants attach a variety of documents that do not demonstrate what they claim.

First, the articles of organization for Seyfair LLC and Fairfox LLC are irrelevant to the issue of

whether Seymour and Marjorie were general partners of Fairfield Pagma. *See* A. Kansler Decl.,

Ex. A. Second, Defendants attach *undated* and *unsigned* LLC agreements for Seyfair LLC and

Fairfox LLC—not a partnership agreement for Fairfield Pagma—which they argue show that

Seymour and Marjorie were replaced as general partners by the LLCs. *See* A. Kansler Decl., Ex.

B. But the LLC agreements for two of the general partners do not provide comprehensive

insight into the Fairfield Pagma partnership. At most, these unsigned and undated documents—

which ultimately could be drafts—do no more than raise "some metaphysical doubt" as to

whether Seymour and Marjorie were general partners during the relevant time.

      The case law is in accord. In *Lubrano v. Berkshire Life Ins. Co.*, the plaintiff asserted in

his affidavit that a crucial agreement between the parties "was made in 1986 and still remains in

effect." 1995 WL 313144, at *4. However, the plaintiff attached a copy of the agreement that

was undated and unsigned which the Court found had no evidentiary value and would be

inadmissible at trial. *Id.* (citing *Healy v. Chelsea Resources, Ltd.*, 736 F. Supp. 488, 491

(S.D.N.Y. 1990) ("Although a party opposing summary judgment need not prove its evidence in

a form admissible at trial or under the evidentiary standards which will be required, it must show

facts sufficient to enable a reasonable mind to conclude that a material dispute of fact exists.")).

Based on the plaintiff's submission, the *Lubrano* court found a reasonable mind could not

conclude that a dispute existed as to the existence of the required agreement. *Id.* "[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

Third, Defendants include Fairfield Pagma's tax returns from 2007–2008, Schedule K-1s for Seyfair LLC and Fairfox LLC from 2005, 2007, and 2008, and Schedule K-1s for Seymour and Marjorie. *See* Kansler Decl., Exs. A–B; Leo Decl., Ex. A. But Fairfield Pagma's tax returns do not identify its general partners and are therefore irrelevant. Likewise, the Schedule K-1s for Seyfair LLC and Fairfox LLC from 2007 and 2008 demonstrate that Seyfair LLC and Fairfox LLC were general partners of Fairfield Pagma, but nothing more. The Schedule K-1s for Seymour and Marjorie in 2005 indicate they received partnership distributions, but again, do not establish that they ceased being general partners after 2005.

Indeed, Defendants fail to attach the only documents that would conclusively establish the general partners of Fairfield Pagma—the partnership agreement. They likewise fail to attach a written notice of withdrawal for Seymour and Marjorie, which together with the partnership agreement, would be necessary for this Court to determine if Seymour and Marjorie ceased being general partners consistent with N.Y. P'ship L. § 121-602. As this Court stated in *Keller Family Trust*, "[a]ll of the information regarding the supposed [agreement] is at the Defendants' disposal. The Defendants 'must provide concrete particulars showing that a trial is needed, and it is not sufficient[] merely to assert a conclusion without supplying supporting arguments or facts in opposition to [a summary judgment] motion.'" 2021 WL 4476811, at *8 (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 59, 77 (2d Cir. 1984)). Here, Defendants offer no

concrete evidence that raises a genuine dispute about whether Seymour and Marjorie were general partners of Fairfield Pagma during the Two-Year Period.  And again, even if they did submit these documents into the summary judgment record, they would nevertheless be subject to preclusion because they were neither disclosed nor produced.

## III.    THE TRUSTEE DID NOT FORFEIT HIS CLAIM AGAINST SEYMOUR KLEINMAN

Defendants argue that the Trustee's Motion is moot against Defendant Seymour Kleinman because he died on September 8, 2015, and the Trustee did not substitute his estate although he was notified of Seymour's death via email attaching the death certificate on January 27, 2016.  But an email is not sufficient notice under Fed. R. Civ. P. 25(a)(1), which requires a "statement noting death" of a party to be filed and "served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4."  Fed. R. Civ. P. 25(a)(3); *see also Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 469–70 (2d Cir. 1998); Moore's Federal Practice § 25.13[1], [2][b] (3d. ed. 2008) (Fed. R. Civ. P. 25 "implies that the statement noting the death of a party . . . must be a formal, written document that is both served on the appropriate persons and filed with the court").

Indeed, "[t]his requirement of a formal suggestion of death is absolutely necessary to trigger the running of the ninety days.  Actual knowledge of the party's death is not sufficient, nor is mention of the death in court proceedings or pleadings."  *Stephens v. Am. Risk Mgmt. Inc.*, No. 89 CIV 2999, 1995 WL 479438, at *2 (S.D.N.Y. Aug. 14, 1995) (informal notice by attorney did not trigger the 90–day period, which "can only be triggered by formal service of a suggestion of death" made on the record); *see also Kotler v. Jubert*, 986 F.3d 147, 153–54 (2d Cir. 2021) (citing *Unicorn Tales v. Banerjee*, 138 F.3d 467, 469 (2d Cir. 1998) (holding that the 90-day limit began running only when properly served with a formal statement of death on the

15

record); *O'Rourke v. Drunken Chicken in NY Corp.,* No. 19 CV 3942 (NGG)(LB), 2021 WL

1394176, at *3 (E.D.N.Y. Feb. 26, 2021) (same, stating that "[a] formal suggestion of death, for

the purposes of Rule 25(a), is more than a simple statement that a party has died. . . . Knowledge

of the death or a mention of it in a filing is insufficient."); *Mandarino v Mandarino*, 257 F.R.D.

394, 395–96 (S.D.N.Y. 2009) (letter to the court advising it of plaintiff's death was not a

properly served statement of death sufficient to trigger the 90-day period).

Because Defendants failed to file a statement of death for Seymour Kleinman, the ninety-

day period to substitute Seymour Kleinman has not started.

## IV.    THE TRUSTEE IS ENTITLED TO PREJUDGMENT INTEREST

Defendants argue prejudgment interest is inappropriate because "[a]ny delays in the

resolution of th[e] case are as much due to the Trustee's own inaction as could possibly be due to

any conduct on the part of Defendants."  Defs.' Opposition at 18.  But that is not the relevant

inquiry.  Prejudgment interest is based on the sound discretion of this Court, and "should be a

function of (i) the need to fully compensate the wronged party for actual damages suffered,

(ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of

the statute involved, and/or (iv) such other general principles as are deemed relevant by the

court."  *Picard v. BAM L.P.*, 624 B.R. 55, 63 (Bankr. S.D.N.Y. 2020) (citing *Wickham

Contracting Co., Inc. v. Local Union No. 3, Intern. Broth. of Elec. Workers, AFL-CIO*, 955 F.2d

831, 833-34 (2d Cir. 1992)).  Even if this Court were to consider the Trustee's conduct, the

Trustee propounded fact and expert discovery within the time frame provided by the case

management order, which was agreed upon by the parties and ordered by the Court.  *See

generally* Shifrin Decl., Exs. 3–9; Neville Decl., Ex. B.; Case Management Order, ECF No. 61.

Defendants failed to: (i) respond to the Trustee's written discovery, (ii) produce any documents

responsive to the Trustee's requests despite clearly having documents in their possession, (iii)

serve or participate in discovery in any way, and (iv) withdraw as counsel despite representing to the Trustee that they intended to "withdraw from the case for two years." Neville Decl., Ex. B.

"[A]bsent a sound reason to deny prejudgment interest, such interest should be awarded." *Epstein Decision* at 10 (citing *In re 1031 Tax Grp.*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010)); *see also BAM L.P.*, 624 B.R. at 63. Defendants have done nothing to distinguish themselves from the defendants whose cases have come before them where this Court awarded prejudgment interest. *See Miller*, 631 B.R. at 17–18 (awarding prejudgment interest from the date of the complaint where defendant "recovered his principal investment" from his IRA when "[o]ther victims have not been so fortunate"); *JABA Assocs. LP*, 528 F. Supp. 3d at 246 (awarding prejudgment interest from the date of the complaint to "compensate[] the Trustee for the loss of the use of the Two-Year Transfers for the years that this litigation has lasted, and [to] reduce[] the profits to the defendants from having withheld the funds); *Lisa Beth Nissenbaum Tr.*, 2021 WL 1141638, at *18 (same); *Epstein Decision* at 10 (awarding prejudgment interest from the date of the complaint where "[a]ll of Defendants' legal arguments in opposition to this summary judgment motion were previously decided and law of the case"); *BAM L.P.*, 624 B.R. at 63 (awarding prejudgment interest from the date of the complaint where defendants went to trial on an issue that was previously resolved by this Court in *Nelson*).

The same factors that militated in favor of prejudgment interest in other adversary proceedings are present here; perhaps even more so since these Defendants—to this very day—continue to withhold fictitious profits stolen from other customers in the face of clearly binding precedent. Further, "[t]he purposes of a liquidation proceeding under [SIPA] include to distribute customer property and . . . otherwise satisfy net equity claims of customers *as promptly as possible after the appointment of a trustee in such liquidation proceeding*." *Picard v.*

17

*Citibank, N.A.*, 12 F.4th 171, 200 (2d. Cir. 2021) (citing 15 U.S.C. § 78fff(a)(1), (a)(1)(B))

(internal quotation marks omitted) (emphasis added).  Defendants have held onto other

customers' property for over a decade and it must be returned in addition to prejudgment interest.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court grant summary

judgment on Count One of the Trustee's Complaint and enter an order: (1) avoiding the fictitious

profits that BLMIS transferred to Defendants within the Two-Year Period ($1,247,929);

(2) awarding the Trustee prejudgment interest from the Filing Date through the date of entry of

judgment at the rate of 4%; and (3) requiring Defendants to return such transfers or the value

thereof to the Trustee.


Dated: January 12, 2022
       New York, New York

/s/ Nicholas J. Cremona
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Maximillian S. Shifrin
Email: mshifrin@bakerlaw.com
Tara E. Turner
Email: tturner@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*