JENNER & BLOCK LLP
Richard Levin
Carl Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Counsel for Defendant Banque Syz SA*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　　　　*Plaintiff-Applicant,*<br><br>　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>　　　　　　　　　　*Defendant.* | Adv. Proc. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　　　　*Debtor.* | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　　　　　　*Plaintiff,*<br><br>　　　　v.<br><br>BANQUE SYZ & CO., SA,<br>　　　　　　　　　　*Defendant.* | Adv. Proc. No. 11-02149 (CGM)<br><br>**BANQUE SYZ SA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** |

## Table of Contents

Table of Contents....................................................................................................... i

Table of Authorities ................................................................................................. iii

Standard on Motion to Dismiss............................................................................... 2

Facts......................................................................................................................... 2

    I.   Complaint's Allegations Relating to Recovery of Subsequent Transfers. .................. 2

    II.  Complaint's Allegations Relating to the Proof of Claim. .............................................11

Argument .................................................................................................................11

    I.   Adopting the Entire Fairfield Amended Complaint by Reference Is Improper and Does Not Adequately Plead the Avoidability of the Fairfield Initial Transfers. ...........................................................................................................11

    II.  The Fairfield Amended Complaint's Allegations Defeat The Claims Against Banque Syz. ................................................................................16

        A.   Section 546(e) Bars the Avoidance of the Fairfield Initial Transfers. .....................17

            1.    The Relevant Fairfield Initial Transfers Were Made More than Two Years Before the Filing Date and May Not Be Avoided Under Section 548(a)(1)(A). ...................................................................................18

            2.    The Fairfield Initial Transfers Were Settlement Payments and Made in Connection with a Securities Contract.............................................18

            3.    The Fairfield Initial Transfers Were Made By or To a Covered Entity............20

               i.    The Fairfield Initial Transfers Were Made By a Stockbroker..........................21

               ii.   The Fairfield Initial Transfers Were Made To (Or For The Benefit Of) A "Financial Institution." .......................................................................21

            4.    Section 546(e) Does Not Contain a "Knowledge" Exception.............................23

        B.   The Complaint Establishes Banque Syz's Good Faith Defense.............................25

            1.    Value..............................................................................................................25

            2.    Good Faith ......................................................................................................26

             3.    Without Knowledge of Voidability ...................................................................29

    III. The Trustee Does Not Plead Plausibly that Subsequent Transfers Were of BLMIS Customer Property...................................................................................29

IV.   The Complaint Does Not Adequately Allege Facts Showing That Syz Is Subject
      To Personal Jurisdiction. ............................................................................................35

V.    Count Two Should Be Dismissed and the Customer Claim Should Be Allowed........40

Conclusion ............................................................................................................................40

# Table of Authorities

**Page(s)**

## Cases

*Am. Casein Co. v. Geiger (In re Geiger)*,
446 B.R. 670 (Bankr. E.D. Pa. 2010) ..............................................................................12, 13

*Asahi Metal Indus. Co., Ltd. v. Superior Court*,
480 U.S. 102 (1987).........................................................................................................37

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................2

*Atherton v. F.D.I.C.*,
519 U.S. 213 (1997)..........................................................................................................25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................2, 30

*In re Bernard L. Madoff Inv. Sec. LLC*,
No. 12-2557 (2d Cir. May 15, 2013), ...............................................................................21

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*,
773 F.3d 411 (2d Cir. 2014)...................................................................................... passim

*Brandt v. Horseshoe Hammond, LLC (In re Equip. Acq. Res., Inc.)*,
803 F.3d 835 (7th Cir. 2015) ............................................................................................29

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..........................................................................................................35

*In re Caremerica, Inc.*,
409 B.R. 737 (Bankr. E.D.N.C. 2009) ..............................................................................31

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002).............................................................................................30

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
651 F.3d 329 (2d Cir. 2011).............................................................................................19

*Davis v. Bifani*,
2007 U.S. Dist. LEXIS 30800 (D. Colo. 2007) ................................................................12

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
323 B.R. 857 (Bankr. S.D.N.Y. 2005)..............................................................................22

*In re Fairfield Sentry Ltd. (Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam)*,
2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020)..........................................................21, 22

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021)...............................................................................................35, 36, 38

*Garfinkle v. Conf. on Jewish Material Claims Against Germany, Inc.*,
2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020) ...........................................................34

*Ghazzaoui v. Anne Arundel Cty.*,
2014 U.S. Dist. LEXIS 111558 (D. Md. Aug. 11, 2014) ........................................14

*Hanson v. Denckla*,
357 U.S. 235 (1958).................................................................................................36

*Hill v. HSBC Bank plc*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016).....................................................................38

*Hinton v. Trans Union, LLC*,
654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010).......................14

*Kreutter v. McFadden Oil Corp.*,
71 N.Y.2d 460 (1988) ..............................................................................................38

*Law v. Siegel*,
571 U.S. 415 (2014).................................................................................................24

*Leema Enters., Inc. v. Willi*,
575 F. Supp. 1533 (S.D.N.Y. 1983).........................................................................38

*In re Lehman Bros. Holdings Inc.*,
535 B.R. 608 (Bankr. S.D.N.Y. 2015) .......................................................................2

*Lowden v. William M. Mercer, Inc.*,
903 F. Supp. 212 (D. Mass. 1995) ...........................................................................13

*McGowan v. Smith*,
52 N.Y.2d 268 (1981) ..........................................................................................38, 39

*Merit Mgmt. Grp., LP v. FTI Consulting Inc.*,
138 S. Ct. 883 (2018)...............................................................................................24

*Muhammad v. Bethel-Muhammad*,
2012 U.S. Dist. LEXIS 70330 (S.D. Ala. May 21, 2012)........................................13

*Muth v. Dechert, Price & Rhoads*,
391 F. Supp. 935 (E.D. Pa. 1975) ...........................................................................12

*NCUA Bd. v. Morgan Stanley & Co.*,
2014 U.S. Dist. LEXIS 58751 (S.D.N.Y. Apr. 28, 2014).......................................................12

*New Hampshire v. Maine*,
532 U.S. 742 (2001)...............................................................................................................22

*Nycomed US, Inc. v. Glenmark Generics, Ltd.*,
2010 U.S. Dist. LEXIS 29267 (E.D.N.Y. Mar. 26, 2010) ......................................................14

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016)..................................................................................................35

*Palnik v. Westlake Entm't, Inc.*,
344 Fed. App'x 249 (6th Cir. 2009) .......................................................................................36

*Papasan v. Allain*,
478 U.S. 265 (1986).................................................................................................................2

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
440 B.R. 274 (Bankr. S.D.N.Y. 2010)....................................................................................35

*Picard v. Citibank N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*,
12 F.4th 171 (2d Cir. 2021) ...................................................................................................26

*Picard v. Katz*,
4625 B.R. 447 (S.D.N.Y. 2011)..............................................................................................28

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014)...............................................................................30, 32

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015)................................................................................30, 31

*Quilvest Finance Ltd. v. Fairfield Sentry Ltd.*,
Case Nos. HCVAP 2011/041–052 .........................................................................................26

*Rajala v. Spencer Fane LLP (In re Generation Res. Holding Co, LLC)*,
964 F.3d 958 (10th Cir. 2020) ...............................................................................................29

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
151 F.Supp.2d 371 (S.D.N.Y. 2001).........................................................................................2

*In re Roco Corp.*,
701 F.2d 978 (1st Cir. 1983)...................................................................................................24

*Salahuddin v. Cuomo*,
861 F.2d 40 (2d Cir. 1988).....................................................................................................30

*Sec. Inv. Protect. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    516 B.R. 18 (S.D.N.Y. 2014) ................................................................................29

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    2013 U.S. Dist. LEXIS 56042 (S.D.N.Y. Apr. 15, 2013) ....................................11

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) .............................................................................................35

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) ................................................................24

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ...................................19, 20, 23, 24

*SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*),
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...................................16, 17, 23

*In re Sledziejowski*,
    2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ...........................................37

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) ................................................................................35

*Strandberg v. State Farm Mutual Auto Ins. Co.*,
    2016 WL 614401 (D. Nev. Feb. 16, 2016) ..........................................................30

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) .............................................................................................22

*Texas Water Supply Corp. v. R.F.C.*,
    204 F.2d 190 (5th Cir. 1953) ..............................................................................12

*To v. HSBC Holdings PLC*,
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ........................................................38

*Toberman v. Copas*,
    800 F. Supp. 1239 (M.D. Pa. 1992) ....................................................................13

*In re Trib. Co. Fraudulent Conv. Litig.*,
    10 F.4th 147 (2d Cir. 2021) ................................................................................10

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    946 F.3d 66 (2d Cir. 2019) .......................................................................20, 22, 25

*U.S. v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ................................................................14

*Walden v. Fiore,*
    571 U.S. 277 (2014) ...............................................................................35, 36, 37

*Waldman v. Palestine Liberation Org.,*
    835 F.3d 317 (2d Cir. 2016) ...............................................................................36

*Welinsky v. Resort of the World D.N.V.,*
    839 F.2d 928 (2d Cir. 1988) ...............................................................................37

*Wolfe v. Charter Forest Behavioral Health Sys., Inc.,*
    185 F.R.D. 225 (W.D. La. 1999) .........................................................................13

**Statutes**

11 U.S.C. § 101(22)(A) ...........................................................................................21

11 U.S.C. §§ 101-1532 .............................................................................................1

11 U.S.C. § 544 ...........................................................................................3, 8, 17

11 U.S.C. § 546(e) ..................................................................................... *passim*

11 U.S.C. § 548(a) .....................................................................................................3

11 U.S.C. § 550 .................................................................................................3, 40

11 U.S.C. § 550(a) .................................................................................................11

11 U.S.C. § 551 ..............................................................................................3, 8, 9

11 U.S.C. § 741(7)(A)(i) .........................................................................................20

11 U.S.C. § 741(8) .................................................................................................24

28 U.S.C. § 1334(a) .................................................................................................13

**Other Authorities**

Collier on Bankruptcy ¶ 550.03[1] (16th ed. 2021) .........................................25, 26

Fed. R. Bankr. P. 7004(f) .........................................................................................35

Fed. R. Bankr. P. 9011(b) .........................................................................................32

Fed. R. Civ. P. 8(a) ..................................................................................12, 13, 17

Fed. R. Civ. P. 8(a)(1) .............................................................................................36

Fed. R. Civ. P. 8(a)(2) .........................................................................................13, 15

Fed. R. Civ. P. 8(d)(1).............................................................................................................13

Fed. R. Civ. P. 10(c) .................................................................................................12, 13, 14

Fed. R. Civ. P. 12(b)(2)...........................................................................................................2

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 2

N.Y. C.P.L.R. § 302(a)(1).....................................................................................................39

Defendant Banque Syz SA ("**Banque Syz**")[1] submits this memorandum of law in support of its motion to dismiss both Counts of the Complaint, ECF 1 (the "**Complaint**"),[2] filed by plaintiff Irving H. Picard, Trustee (the "**trustee**") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("**BLMIS**") and the Estate of Bernard L. Madoff.[3]

Count One of the Complaint seeks recovery of avoidable transfers of customer property from BLMIS that Banque Syz allegedly subsequently received from Fairfield Sentry Ltd. ("**Sentry**"). This Court should dismiss Count One under Federal Rule of Civil Procedure 12(b)(6) because the Complaint fails to allege plausibly that Banque Syz received transfers of BLMIS customer property that were initially transferred to Fairfield Sentry in avoidable transfers; because the Complaint shows that any transfers Banque Syz received were received for value, in good faith, and without knowledge of the voidability of the initial transfers; and because Banque Syz is not subject to personal jurisdiction in this Court.

Count Two of the Complaint seeks disallowance under section 502(d)[4] of a customer proof of claim that Banque Syz filed as sub-custodian on behalf of Isos Fund Ltd. ("**Isos**"), a direct customer of BLMIS that did not receive any direct or indirect transfers from BLMIS. The Court should dismiss Count Two because Isos did not receive and fail to return any property from BLMIS, or because upon dismissal of Count One against Banque Syz, section 502(d) would not require disallowance of the Isos claim.

---

[1] Following commencement of this adversary proceeding, Syz changed its name from Banque Syz & Co. SA to Banque Syz SA.

[2] Unless otherwise noted, all ECF citations refer to Adv. Proc. No. 11-2149 (CGM).

[3] By Stipulation and Order entered December 7, 2021, ECF 147, the trustee amended the Complaint by dismissing any claims related to the Kingate funds but without actually filing an amended complaint. This Memorandum refers to the Complaint as originally filed, except for the Kingate-related allegations and claims.

[4] This reference and all subsequent references to sections are to sections of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, unless specified otherwise.

## Standard on Motion to Dismiss

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Moreover, a claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow … the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F.Supp.2d 371, 405 (S.D.N.Y. 2001).

To survive a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden to make a prima facie showing that jurisdiction exists." *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015).

## Facts

## I.    Complaint's Allegations Relating to Recovery of Subsequent Transfers.

In broad outline, the trustee's Complaint, as amended, alleges BLMIS transferred cash to two British Virgin Islands feeder funds, Sentry and Rye Select Broad Market Fund (a Tremont fund)[5]; the cash was customer property as defined in SIPA; and those feeder funds

---

[5] This Memorandum addresses in detail the claims relating to the transfers to Banque Syz from Sentry, which account for over 97% of the total recovery the trustee seeks. The same analysis applies to claims

thereafter directly or indirectly transferred the customer property to the defendant Banque Syz, a private bank in Switzerland.[6] (Compl. ¶¶ 23, 36.)

The Complaint alleges that all transfers from BLMIS to Sentry made within six years before the "Filing Date,"[7] referred to collectively as the "Fairfield Initial Transfers," "are avoidable, should be avoided, and are recoverable under sections 544, 550, and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3), and sections 273–279 of New York and Debtor and Creditor Law," as to the "Fairfield Six Year Initial Transfers" (Compl. ¶¶ 64, 87), or under section 548(a) of the Bankruptcy Code as to the "Fairfield Two Year Initial Transfers" (*id.* ¶¶ 65, 87), and that under section 550, the transferred property is recoverable from Banque Syz as an immediate (initial) or mediate (subsequent) transferee. (*Id.* ¶¶ 88, 91.) To support that conclusory allegation of avoidability, the Complaint alleges only that the "Trustee filed an action against Fairfield Sentry to avoid and recover initial transfers of Customer Property, styled as *Picard v. Fairfield Sentry Limited, et al.*, No. 08-01789 (BRL), Adv. Proc. No. 09-01239 (the 'Fairfield Amended Complaint')" and "incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein." (Compl. ¶ 63.)

The Fairfield Amended Complaint[8] consists of 798 paragraphs of allegations spanning 217 pages plus 111 exhibits. It asserts claims against numerous defendants other than

---

[6] *See* Register of Commerce of Geneva (Excerpt without Deletions), Ref. No 00135/1996, 16 Dec. 2015 (copy attached as Exhibit A to the *Request For Judicial Notice In Support Of Defendant Banque Syz SA's Motion To Dismiss The Complaint; Declaration Of Richard Levin*, filed concurrently herewith ("**Req. for Jud. Not.**").) (Banque Syz is a bank).

[7] Capitalized terms in this Memorandum that are defined in the Complaint are used with the same meaning as in the Complaint.

[8] A copy of the Fairfield Amended Complaint, without exhibits, is attached as Exhibit B to the Request for Judicial Notice.

3

Sentry, and against Sentry on numerous bases in addition to the avoidance of the Sentry Initial Transfers, which are at issue in this adversary proceeding, including turnover and accounting, preference, subsequent transfer to defendants other than Banque Syz, unjust enrichment, conversion, money had and received, aiding and abetting fraud and breach of fiduciary duty, and objections to the allowance of claims.

The Fairfield Amended Complaint, which sought to avoid approximately $3.0 billion in Fairfield Initial Transfers from BLMIS to Sentry (Fairfield Am. Compl. ¶ 536), alleges that Sentry "is organized as an international business company under the laws of the British Virgin Islands[,]" (*id*. ¶ 32), and that Sentry was one of BLMIS's largest feeder funds. (*Id*. ¶¶ 2, 20, 33–34.)

Regarding BLMIS, the Fairfield Amended Complaint alleges that BLMIS was operated under a shroud of secrecy and lack of transparency. (*Id*. ¶¶ 501, 520.) It alleges that some potential Fairfield investors decided not to invest because of a lack of independence at BLMIS (*id*. ¶ 463), concerns about lack of transparency (*id*. ¶ 464), and BLMIS's unwillingness to submit to a due diligence process. (*Id*. ¶ 469.) It further alleges that Sentry's management "went to great lengths to keep their investors far away from Madoff" (*id*. ¶ 342), "misled investors" (*id*. ¶ 344), "remove[d] all references to BLMIS from their marketing materials" and offering memorandum in 2002 (*id*. ¶ 346), "actively and repeatedly 'blocked' investors wishing to obtain more information" (*id*. ¶ 348), "went to great lengths to cover up Madoff's actual role with the FGG funds" (*id*. ¶ 350), and "sold the false assurance that they conducted superior due diligence." (*Id*. ¶ 362.)

The Fairfield Amended Complaint alleges that some industry experts and consultants were suspicious of BLMIS, opining that BLMIS was "likely a fraud" (*id*. ¶ 511), "felt illegal" (*id*. ¶ 514), and that "fraudulent activity was highly likely." (*Id*. ¶ 516). The Fairfield

4

Amended Complaint attaches a report from an independent research and advisory firm advising clients against investing in BLMIS or its feeder funds, but the advisory firm did not conclude that BLMIS was a fraud (*id.* Ex. 101, at 2–3), and, after the fraud was revealed, stated, "Our decision to not recommend these feeders was never based on the existence or discovery of a smoking gun." (*Id.* Ex. 102, at 1.) The Fairfield Amended Complaint also alleges that the SEC began an investigation in 2006 into whether BLMIS was a Ponzi scheme or engaged in other illegal activity (*id.* ¶ 351) but could not determine BLMIS's fraudulent purpose. (*Id.* ¶¶ 360–61.) More than 8,000 direct customer accounts were opened at BLMIS (Compl. ¶ 34), and more than $4 billion was invested through Sentry alone. (Fairfield Am. Compl. ¶ 33.)

The trustee settled his action against Sentry and some of the other Fairfield funds over 10 years ago. *Settlement Agreement*, *Picard v. Fairfield Sentry Ltd.*, Adv. Proc. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011), ECF 69-2 (the "**Fairfield Settlement Agreement**") (copy attached to the Req. for Jud. Not. as Exhibit C).[9] Among other things, the Fairfield Settlement Agreement gave the trustee full access to all of Sentry's records: "[T]he Trustee and the Liquidators each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims." (*Id.* ¶ 14 at 15.) The Fairfield Settlement Agreement also provided for full cooperation between the trustee and the Fairfield Liquidators in pursuing claims against alleged subsequent transferees. It requires "regular communications about the commencement of any Subsequent Transferee Claims" (*id.* ¶ 7), sharing of recoveries on any such claims (*id.* ¶¶ 7, 8, 9), and for a joint interest agreement and "cooperation and assistance to the other Party

---

[9] The Fairfield Settlement Agreement was subsequently approved by this Court. *Picard v. Fairfield Sentry Ltd.*, Adv. Proc. No. 09-1239 (Bankr. S.D.N.Y. June 7, 2011), ECF 92.

in connection with the prosecution of the Sharing Claims," as well as consultation regarding settlements. (*Id.* ¶ 14.) The Fairfield Settlement Agreement also attaches as Exhibit G a list of 209 actions against Sentry investors brought by the Fairfield Liquidators and pending as of May 11, 2009, seeking to recover redemption payments Sentry made to them. The defendants in some (but not all) of these actions are also defendants in Sentry subsequent transferee actions the trustee has commenced, including this one, referred to as "Common Defendants." (*Id.* ¶ 8.)

Following the Fairfield Settlement Agreement, the trustee filed an amended complaint against the other remaining defendants, seeking, among other things, recovery of an additional $1.139 billion in alleged subsequent transfers of BLMIS customer property from Sentry to Fairfield management entities and related funds. (*Second Amended Complaint* ¶ 333, *Picard v. Fairfield Sentry Ltd.*, Adv. Proc. No. 09-1239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF 286 ("**Fairfield Second Amended Complaint**") (copy attached to the Req. for Jud. Not. as Exhibit D).)

Exhibit J to the Complaint is a spreadsheet which the trustee alleges sets forth the "Fairfield Initial Transfers." (Compl. ¶ 66.) However, Exhibit J lists all activity in the accounts Sentry maintained with BLMIS and does not specify which transactions constituted the Fairfield Initial Transfers. Exhibit K to the Complaint lists payments from Sentry to Banque Syz. Giving the exhibits the reading most favorable to the trustee, it would appear the Fairfield Initial Transfers[10] were those labeled on Exhibit J as "CHECK WIRE" (that is, not inter-account transfers, transfers to the IRS, or transfers to a money market fund). If so, (i) the Fairfield Initial Transfers, (ii) the Sentry deposits into its BLMIS accounts, and (iii)

---

[10] Although the spreadsheets include all transactions since the opening of the accounts, the Fairfield Initial Transfers include only those made within six years before the December 11, 2008 Filing Date.

the alleged subsequent transfers of customer property that the trustee alleges are recoverable

from Banque Syz would be:

| Date | BLMIS to Sentry (USD) | Sentry to BLMIS (USD) | Sentry to Banque Syz (USD) |
|---|---|---|---|
| 5/9/2003 | 40,000,000 | | |
| 7/11/2003 | 55,000,000 | | |
| 7/22/2003 | 25,000,000 | | |
| 10/23/2003 | | (20,000,000) | |
| 11/14/2003 | | (50,000,000) | |
| 1/21/2004 | | (50,000,000) | |
| 3/10/2004 | | (50,000,000) | |
| 8/31/2004 | | (100,000,000) | |
| 12/28/2004 | | (100,000,000) | |
| 4/1/2005 | 175,000,000 | | |
| 5/11/2005 | | (50,000,000) | |
| 7/6/2005 | 85,000,000 | | |
| 9/2/2005 | 30,000,000 | | |
| 10/3/2005 | 90,000,000 | | |
| 10/3/2005 | 90,000,000 | | |
| 10/3/2005 | 70,000,000 | | |
| 11/16/2005 | 185,000,000 | | |
| 12/15/2005 | 85,000,000 | | |
| 1/10/2006 | 60,000,000 | | |
| 1/10/2006 | 55,000,000 | | |
| 3/16/2006 | 50,000,000 | | |
| 3/27/2006 | 50,000,000 | | |
| 3/27/2006 | 50,000,000 | | |
| 4/13/2006 | 120,000,000 | | |
| 5/15/2006 | | | (332,185) |
| 8/4/2006 | | (160,000,000) | |
| 9/6/2006 | | (150,000,000) | |
| 10/5/2006 | | (100,000,000) | |
| 1/4/2007 | | (500,000,000) | |
| 1/16/2007 | | | (13,635,353) |
| 2/12/2007 | | (175,000,000) | |
| 3/16/2007 | | | (193,278) |
| 3/16/2007 | | | (1,288,425) |
| 5/3/2007 | | (100,000,000) | |
| 6/7/2007 | | (100,000,000) | |

| Date | BLMIS to Sentry (USD) | Sentry to BLMIS (USD) | Sentry to Banque Syz (USD) |
|---|---|---|---|
| 8/6/2007 | | (100,000,000) | |
| 9/6/2007 | 65,000,000 | | |
| 10/3/2007 | 95,000,000 | | |
| 11/6/2007 | | (110,000,000) | |
| 1/11/2008 | 70,000,000 | | |
| 3/13/2008 | | (60,000,000) | |
| 5/5/2008 | 80,000,000 | | |
| 7/10/2008 | 20,000,000 | | |
| 8/1/2008 | | (80,000,000) | |
| 9/4/2008 | 120,000,000 | | |
| 10/3/2008 | 150,000,000 | | |
| 10/23/2008 | 130,000,000 | | |
| 11/4/2008 | 450,000,000 | | |
| 11/4/2008 | 400,000,000 | | |
| **TOTALS** | **2,895,000,000** | **(2,055,000,000)** | **(15,449,241)** |

(Compl., Exs. J, K.)

The sole allegations in the Complaint that the Fairfield Initial Transfers are avoidable

are:

> 63. The Trustee filed an action against Fairfield Sentry to avoid and recover initial transfers of Customer Property, styled as *Picard v. Fairfield Sentry Limited, et al.*, No. 08-01789 (BRL), Adv. Proc. No. 09-01239 (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

> 64. During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Six Year Initial Transfers"). The Fairfield Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4) and are avoidable, should be avoided, and are recoverable under sections 544, 550, and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3), and sections 273-279 of New York and Debtor and Creditor Law.

> 65. The Fairfield Six Year Initial Transfers include approximately $1.6 billion that BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Two Year Initial Transfers"). The Fairfield Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4) and are

avoidable, should be avoided, and are recoverable under sections 548(a), 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

(*Id.* ¶¶ 63–65.)

The sole allegations in the Complaint that the transfers from Sentry to Banque Syz were of BLMIS customer property are:

> 67. Based on the Trustee's investigation to date, approximately $15,449,241 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Banque Syz (the "Sentry-Syz Subsequent Transfers"). A chart setting forth the presently known Sentry-Syz Subsequent Transfers is attached as Exhibit K.

> 69. As set forth in paragraph 67 of this Complaint, a portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Banque Syz and is recoverable from Banque Syz pursuant to section 550 of the Bankruptcy Code.

> 88. Banque Syz received the Kingate Subsequent Transfers, Fairfield Subsequent Transfers, and Tremont Subsequent Transfers totaling the equivalent of approximately $73,266,724 which are recoverable pursuant to Section 550 of the Bankruptcy Code.

> 89. Each of the Kingate Subsequent Transfers, Fairfield Subsequent Transfers, and Tremont Subsequent Transfers was made directly or indirectly to, or for the benefit of, Banque Syz.

> 90. Banque Syz was an immediate or mediate transferee of the Kingate Initial Transfers, Fairfield Initial Transfers, and Tremont Initial Transfers.

(*Id.* ¶¶ 67, 69, 88–90.)

The Fairfield Liquidators commenced a separate action in this Court to recover from Banque Syz the same transfers that are at issue in this adversary proceeding. (*First Amended Complaint* ¶¶ 5, 9, 37, 38, *Fairfield Sentry Limited (In Liquidation) et al. v. Banque Syz & Co. SA, et al. (In re Fairfield Sentry Limited, et al)*, Adv. Proc. No. 10-03513 (Bankr. S.D.N.Y. Jan. 5, 2011), ECF 15 (copy attached to the Req. for Jud. Not. as Exhibit E).) In that litigation, the Fairfield Liquidators fairly spell out the relationship between Sentry and Banque Syz: Banque Syz was an investor in Sentry, which invested in the fund by subscribing for and

purchasing shares in Sentry and receiving cash from Sentry to redeem the shares from Banque Syz. Sentry's Articles of Association (copy attached to the Req. for Jud. Not. as Exhibit F) governed Sentry's payments to Banque Syz, which were for the redemption of Banque Syz's shares in Sentry. *See Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, ¶ 10 ("the terms of the subscriber's membership of the Fund, which govern the redemption of its shares … are to be found in the Articles of Association of the Fund") (copy of decision attached to Req. for Jud. Not. as Exhibit G). Therefore, each of the transfers from Sentry to Banque Syz alleged in the Complaint is for a redemption of Sentry shares.[11]

The trustee has filed over 80 adversary proceedings in this SIPA case seeking to avoid transfers from Sentry to its investors. (*See Trustee's Twenty-Sixth Interim Report For The Period April 21, 2021 Through September 3, 2021* ¶ 229, Ex. D, *In re Bernard L. Madoff Inv. Secs. LLC*, Adv. Proc. No. 08-1789 (Bankr. S.D.N.Y. Oct. 29, 2021), ECF 20821 (copy attached to Req. for Jud. Not. as Exhibit H).) The total amount the trustee seeks to recover in those adversary proceedings as subsequent transfers made by Sentry to its investors is at least $3.211 billion. (*See* Req. for Jud. Not., Ex. I.) As noted above, the trustee also alleges in the Complaint that Sentry made $752 million in transfers to Sigma after May 9, 2003 (the date of the earliest possibly avoidable Fairfield Initial Transfer) and in the Fairfield Amended Complaint that Sentry made $1.035 billion in subsequent transfers of BLMIS customer property to Fairfield management entities and other funds (Req. for Jud. Not., Ex. D), all of which he claims are avoidable. Thus, he claims that Sentry made more than $5.018 billion in subsequent transfers of avoidable initial transfers from BLMIS to Sentry.  The Trustee also

---

[11] This Court may consider the Articles of Association in connection with this motion because, as the basis for the challenged redemption, they are integral to the Complaint. *See In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 176 (2d Cir. 2021) ("Here, the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint.").

alleges that Sentry transferred $2.055 billion to BLMIS as deposits during this period (Compl., Ex. J), for a total of nearly $7.053 billion in transfers made by Sentry during the six-year period.

## II.    Complaint's Allegations Relating to the Proof of Claim.

The Complaint alleges that Banque Syz maintained an account at BLMIS and filed a Customer Claim in the SIPA Proceeding. (Compl. ¶¶ 7, 8, 83.) The Complaint does not provide a copy of the Customer Claim (a copy of the Customer Claim is attached to the Req. for Jud. Not. as Exhibit K). The Customer Claim shows that Banque Syz filed the claim as sub-custodian on behalf of Isos. (Customer Claim, Endnotes, ¶ 3 at 5.)

Argument

## I.    Adopting the Entire Fairfield Amended Complaint by Reference Is Improper and Does Not Adequately Plead the Avoidability of the Fairfield Initial Transfers.

To recover from a mediate (subsequent) transferee, the trustee must plead and prove, among other things, an initial transfer that is avoided or at least avoidable. 11 U.S.C. § 550(a); *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2013 U.S. Dist. LEXIS 56042, at *40–41 (S.D.N.Y. Apr. 15, 2013). Paragraphs 64 and 65 of the Complaint assert in conclusory fashion that the Fairfield Initial Transfers were avoidable—that BLMIS was a Ponzi scheme (Compl. ¶¶ 1, 17–18, 25–35), BLMIS made transfers to Sentry (*id.* ¶¶ 64–65, Ex. J), and the Sentry Initial Transfers are avoidable (*id.*)—without any supporting factual allegations that would meet the pleading requirements of *Twombly* and *Iqbal*. Without more, the Complaint is missing essential factual allegations and must be dismissed for failure to state a claim on which relief may be granted. The only allegations that might meet those requirements are contained in the Fairfield Amended Complaint, which the Complaint purports to incorporate in its entirety by reference in paragraph 63.

Rule 10(c) of the Federal Rules of Civil Procedure provides, "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading." The Rule "eliminates redundancy and repetition." Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Brause v. Travelers Fire Ins. Co.*, 19 F.R.D. 231, 234 (S.D.N.Y. 1956)). For example, the common practice of adopting by reference the background allegations of a complaint into the specific claims for relief obviates the need to repeat general allegations.

However, the authority to incorporate by reference is not unlimited. Courts have generally held that a pleading in one action may not adopt by reference the pleadings in a different action. *Texas Water Supply Corp. v. R.F.C.*, 204 F.2d 190, 196 (5th Cir. 1953); *NCUA Bd. v. Morgan Stanley & Co.*, 2014 U.S. Dist. LEXIS 58751 (S.D.N.Y. Apr. 28, 2014); *see Davis v. Bifani*, 2007 U.S. Dist. LEXIS 30800 (D. Colo. 2007) (noting it is improper "to incorporate by reference wholesale the allegations in a complaint in a completely separate action, even if that action is between the same parties," but striking the incorporation by reference for violation of Rule 8(a), rather than Rule 10(c)); *Muth v. Dechert, Price & Rhoads*, 391 F. Supp. 935, 938 (E.D. Pa. 1975) ("when determining the sufficiency of the Third-Party Complaints, we can look only to the pleadings in this case").

Banque Syz has found only one reported bankruptcy court decision that has permitted incorporation by reference of pleadings filed in one adversary proceeding in a different adversary proceeding, reasoning that the bankruptcy case itself was a single action because it was the umbrella under which all other proceedings took place. *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010). That reading mixes the terminology used in the Federal Rules of Civil Procedure (the "**Civil Rules**") with different terminology used in the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Part VII of the Bankruptcy Rules applies to adversary proceedings and treats each adversary proceeding as

a separate proceeding, analogous to a civil action under the Civil Rules. *Compare* 28 U.S.C. § 1334(a) (jurisdiction over "cases" under title 11) *with id.* § 1334(b) (jurisdiction over "proceedings" arising in or related to cases under title 11).

Regardless, the *Geiger* court granted the defendant's motion to dismiss the complaint incorporating the other pleading for failure to comply with Rule 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[each] allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1); *Geiger*, 446 B.R. at 679. Thus, even where adoption by reference is permitted (whether from the same adversary proceeding or another), Rule 8(a) additionally requires that the resulting pleading must be clear and concise, *Geiger*, 446 B.R. at 679, and the adoption must be "with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation." *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 229 (W.D. La. 1999). "The reference must be clear and specific and must specifically identify the statements incorporated." Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992)).

Finally, not only must the resulting pleading be clear, concise, and specific, the incorporation "must specifically identify which portions of the prior pleading are adopted." *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995); *accord Toberman*, 800 F. Supp. at 1243 (plaintiff must "provid[e], at a minimum, direct reference to specific paragraphs relied on"). Rule 10(c) permits only adoption by reference of a "statement in a pleading," not of entire pleadings. *Muhammad v. Bethel-Muhammad*, 2012 U.S. Dist. LEXIS 70330, at *8 (S.D. Ala. May 21, 2012) (condemning "sweeping reference to his 100-page complaint"). The requirement that references be explicit and direct is not merely for the sake

13

of form: it "enable[s] the responding party to ascertain the nature and extent of the incorporation." *Ghazzaoui v. Anne Arundel Cty.*, 2014 U.S. Dist. LEXIS 111558, at *12 (D. Md. Aug. 11, 2014). As one court has stated:

> This requirement of clarity ensures fairness to the responding party, for without this requirement incorporations "may prove confusing and inconvenient." 5A Wright & Miller, *supra*, § 1326. And the risk of such confusion and inconvenience is particularly high where, as here, a party seeks wholesale incorporation in an amended pleading of a superseded version of that same pleading. This is so because "[a]s a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" *Young v. City of Mount Ranier,* 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),* 226 F.3d 160, 162 (2d Cir. 2000)). This general rule, like Rule 10(c)'s clarity requirement, also has fairness as its purpose, for it breeds confusion and uncertainty if in responding to an amended pleading, a party is required to take into account a number of other, superseded pleadings. This is especially true with respect to a complaint, which serves as the "pleading that starts a civil action and states ... the basis for the plaintiff's claim[ ] and the demand for relief.'" *Black's Law Dictionary* (8th ed. 2004) (defining "complaint").

*Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). Thus, a "Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite "guidance to the responding party." *Nycomed US, Inc. v. Glenmark Generics, Ltd.*, 2010 U.S. Dist. LEXIS 29267, at *12–13 (E.D.N.Y. Mar. 26, 2010) (internal quotes omitted).

The District Court for the Eastern District of New York synthesized each of these requirements in dismissing a complaint that relied on numerous prior pleadings. In *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007), the government brought a complex civil RICO action in a complaint which attached as exhibits pleadings from several prior criminal and civil actions against some of the same defendants. The court rejected the

attempt to incorporate the prior pleadings. First, "[t]he Government's failure to specifically identify which portions of the hundreds of pages of exhibits it intends to incorporate by reference into the Amended Complaint makes it impossible for the Court or the defendants to ascertain the nature and extent of the incorporation, and the purported incorporation is therefore invalid." *Id.* at 462. Second, the wholesale incorporation of the prior pleadings is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plaint statement of the claim,'" and it would have rendered the complaint "utterly incoherent" and "an unintelligible morass of self-contradictory allegations." *Id.* at 462 n.72, 463. Finally, the court noted that if the incorporation were accepted, the defendants would have been required to respond not only to the 85-page complaint, but also to every paragraph in the 400 pages of exhibits. *Id.* at 464.

In this case, the trustee pleads alleges avoidability of the Fairfield Initial Transfers solely by incorporating by reference "the allegations contained in the Fairfield Amended Complaint as if fully set forth herein." (Compl. ¶ 63.) The attempt to incorporate by reference all 798 paragraphs of a 217-page complaint (which itself attaches and refers to 111 exhibits) into what would otherwise be a 23-page complaint against Banque Syz violates numerous pleading rules and requirements: it improperly incorporates by reference a pleading from another action; it improperly incorporates an entire pleading, not the statements in a pleading; and it improperly fails to specify the relevant allegations (as opposed to "all" allegations) that are being incorporated. And worse, the Complaint incorporates a pleading that has been superseded by a further amended complaint which removes numerous allegations and claims and has rendered the incorporated earlier pleading inoperative.

Because the Fairfield Amended Complaint asserts claims against numerous defendants other than Sentry and against Sentry for much more than the avoidance of the transfers at issue in this adversary proceeding, the incorporation does not contain a short

and plain statement of the claim—avoidability—entitling the trustee to relief. Permitting the trustee's incorporation by reference here might require Banque Syz to answer all the allegations in all 798 paragraphs in the Fairfield Amended Complaint, even those that have nothing to do with the claim in this adversary proceeding. Even if Banque Syz could respond to the Fairfield Amended Complaint, the result would be to expand the scope of this adversary proceeding well beyond the claims asserted in the complaint for recovery of subsequent transfers of allegedly avoidable transfers of BLMIS customer property and put in issue here all the other claims for relief in the Fairfield Amended Complaint. The trustee does not assert liability of Banque Syz for any of the trustee's claims against any of the defendants named in the Fairfield Amended Complaint, and Banque Syz should not be required to address those claims, with all the associated discovery and trial time that would likely result, or guess, at its peril, which of the incorporated allegations are relevant and must be addressed.

For all these reasons, the Court should reject the trustee's attempt to incorporate the Amended Fairfield Complaint by reference. Without the incorporated Fairfield Amended Complaint, the Complaint pleads avoidability in only a conclusory fashion. Under *Iqbal* and *Twombly*, the court need not credit legal conclusions styled as factual allegations. As such, the Complaint does not adequately plead an essential element of the claim to recover subsequent transfers—avoidability of the Fairfield Initial Transfers—and should be dismissed.

## II.    The Fairfield Amended Complaint's Allegations Defeat The Claims Against Banque Syz.

A motion to dismiss may rely on an affirmative defense if the facts necessary for the defense appear on the face of the complaint. *SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021). If this

Court concludes that the Complaint's incorporation by reference violates neither Civil Rule 8(a) nor Civil Rule 10(c), then the allegations in the Fairfield Amended Complaint defeat the trustee's claims against Banque Syz. The trustee's allegations show that section 546(e) prohibits the recovery of the Fairfield Initial Transfers and establish Banque Syz's defenses to recovery under section 550(b).[12]

### A.  Section 546(e) Bars the Avoidance of the Fairfield Initial Transfers.

In an action to recover a subsequent transfer, the subsequent transferee may assert any defenses to avoidability of the initial transfer the initial transferee could have asserted, including section 546(e). *See Fairfield Inv. Fund*, 2021 WL 3477479, at *3 ("Where the initial transferee fails to raise a § 546(e) defense against the trustee's avoidance of certain transfers, as is the case here … the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.").

Section 546(e)[13] bars the trustee from avoiding (other than under section 548(a)(1)(A) with a limited reach-back period of two years) a transfer, *inter alia*, (1) that was either a settlement payment or a transfer in connection with a securities contract; and (2) made by or to (or for the benefit of) a covered entity such as a stockbroker, financial institution, or financial participant. Because BLMIS's initial transfers to Sentry relevant to this adversary

---

[12] The Court may also take judicial notice of the allegations in the Fairfield Amended Complaint, even if it is not properly incorporated by reference into the Complaint. *See generally* Req. for Jud. Not.

[13] "Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title." 11 U.S.C. § 546(e).

proceeding are protected from avoidance by section 546(e), they therefore cannot be recovered from a subsequent transferee, and the Complaint must be dismissed.

### 1. The Relevant Fairfield Initial Transfers Were Made More than Two Years Before the Filing Date and May Not Be Avoided Under Section 548(a)(1)(A).

Under section 548(a)(1)(A), a trustee may avoid only transfers made within two years before the Filing Date. Any transfer before that date is protected by section 546(e) and may not be avoided.

The Complaint does not specify which of the 27 transfers from BLMIS to Sentry listed in Exhibit J constitute the customer property that the trustee alleges was subsequently transferred to Banque Syz. However, any transfers from BLMIS to Sentry that occurred *after* the final transfer to Banque Syz obviously are irrelevant. Looking at the 17 transfers that predated the final transfer from Sentry to Banque Syz, the last one was made on April 13, 2006, more than two years before the Filing Date. Because section 546(e) protects transfers made more than two years before the Filing Date from avoidance, none of the transfers from Sentry to Banque Syz could have constituted a subsequent transfer of BLMIS customer property whose initial transfer to Sentry is avoidable.

### 2. The Fairfield Initial Transfers Were Settlement Payments and Made in Connection with a Securities Contract.

Section 546(e) applies to transfers from BLMIS to its account holders and shields them from avoidance, both because the documents governing BLMIS customers' accounts constituted securities contracts, and because the payments BLMIS made to those customers were made "in connection with" those contracts and also constituted "settlement payments." *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411, 417, 418–23 (2d Cir. 2014) ("*Fishman*"). Either of those reasons would suffice to invoke the safe harbor.

18

The Court of Appeals rejected the trustee's argument that the safe harbor did not apply because Madoff did not actually carry out the promised securities transactions with BLMIS's customers. *Id.* at 419–20. Therefore, the Fairfield Initial Transfers were settlement payments and were made in connection with a securities contract, so as to come within the protection of section 546(e).

There's another reason section 546(e) applies to the Fairfield Initial Transfers. Section 546(e) applies to a transfer "in connection with *a* securities contract," not just to a transfer in connection with *the* securities contract between the initial transferor and transferee. If the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and the subsequent transferee, then the withdrawal from BLMIS also would be a transfer made in connection the contract between the initial transferee and the subsequent transferee, and would not be avoidable. As Judge Rakoff stated:

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a … financial institution [or] financial participant … in connection with a securities contract."

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") (footnote omitted)[14]; *see Fishman*, 773 F.3d at 422 ("Section 546(e) sets a low bar

---

[14] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron* [*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall within

for the required relationship between the securities contract and the transfer sought to be avoided.").

The definition of "securities contract" includes "a contract for the purchase, sale, or loan of a security." 11 U.S.C. § 741(7)(A)(i). "The term 'redemption,' in the securities context, means 'repurchase.'" *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 80 (2d Cir. 2019) ("*Tribune I*"). Accordingly, "the definition of securities contract … includes … redemption requests." *Cohmad*, 2013 WL 1609154, at *8. As noted above, all transfers from Sentry to Banque Syz were payments for the redemption of shares. (*See* pp. 9–10, *supra*.) Therefore, a redemption request that Sentry honored under its Articles of Association is itself a securities contract, and the payment of the redemption amount is a settlement payment.

As shown in Section III, *infra*, the Complaint's allegations that the Sentry redemption payments to Banque Syz were tied to payments of customer property transferred from BLMIS to Sentry lack plausible support. However, if the Court determines the Complaint establishes that connection, it shows the transfers were "in connection with" the securities contract between Banque Syz and Sentry and thus unavoidable on that basis.

### 3.  The Fairfield Initial Transfers Were Made By or To a Covered Entity.

Here, the alleged Fairfield Initial Transfer was made by or to (or for the benefit of) an entity covered by section 546(e) both because the alleged initial transfer was made by a stockbroker and because it was made to or for the benefit of a financial institution, though either of those facts alone would be sufficient.

---

the purview of Section 546(e), assuming it meets the statute's other requirements." *Cohmad*, 2013 WL 1609154 *9 n.5.

i.    The Fairfield Initial Transfers Were Made By a
      Stockbroker.

In a prior adversary proceeding in this SIPA case, the District Court concluded:

> Overall, Madoff Securities, which was registered as a stockbroker with
> the SEC, clearly engaged in securities transactions…. [E]ven assuming
> the truth of the allegation that Madoff Securities' investment advisory
> division never traded securities on behalf of clients, Madoff Securities
> nonetheless qualifies as a stockbroker by virtue of the trading
> conducted by its market making and proprietary trading divisions.

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (footnote and

citation omitted), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir.

2014). As the Second Circuit noted on appeal, "[i]t is not disputed [by the Trustee] that

BLMIS was a 'stockbroker' for the purposes of § 546(e)." *Fishman*, 773 F.3d at 417; *see* Br.

for Pl.-Appellant Irving H. Picard at i-ii, 5, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 12-

2557 (2d Cir. May 15, 2013), ECF 145 (not challenging stockbroker finding on appeal). That

fact is no longer subject to dispute.

ii.    The Fairfield Initial Transfers Were Made To (Or For
       The Benefit Of) A "Financial Institution."

Section 101(22) defines "financial institution" to include not only "an entity that is a

commercial or savings bank," but also the customer of such a bank "when [it] is acting as

agent or custodian for a customer … in connection with a securities contract." 11 U.S.C.

§ 101(22)(A). In *In re Fairfield Sentry Ltd. (Fairfield Sentry Ltd. v. Theodoor GGC

Amsterdam)*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"), this Court

held that the Fairfield funds (Sentry, Sigma, and Lambda) were "financial institutions"

because they were customers of Citco Bank Nederland N.V. Dublin Branch ("**Citco Bank**"),

a bank regulated by the Central Bank of the Netherlands and registered with the Central

Bank of Ireland. *Fairfield III*, 2020 WL 7345988, at *6 & n.11,[15] which acted as the Fairfield

Funds' agent in connection with the securities contracts under which the BLMIS transfers to

Sentry were made. *Id.* at *7. As this Court found in *Fairfield III*:

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by
> Citco Bank establishes the necessary agency. It is implausible to infer
> that Citco Bank made the redemption payments to specific redeemers
> in specific amounts absent the [Fairfield] Funds' directions to do so.
> Moreover, Citco Bank accepted those directions by executing the
> redemption payments. Based on the foregoing, the Funds were
> customers of Citco Bank who acted as their agents in connection with
> the securities contracts pursuant to which the redemption payments
> were made, and the Funds were, therefore "financial institutions"
> within the meaning of 11 U.S.C. § 546(e).

2020 WL 7345988, at *7 (footnote omitted). This Court's holding in *Fairfield III* binds the

trustee because he was in privity with the Fairfield Liquidators.[16] Even if not, there is no

reason for this Court to deviate from Judge Bernstein's well-reasoned *Fairfield III* decision.

---

[15] *See* De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTDG&relation Number=B0275 (last visited Jan. 27, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited Jan. 27, 2022) (classifying Citco Bank as a "credit institution … whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account"). This Court can take judicial notice of information from such public registries. *See Tribune I*, 946 F.3d at 78; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

[16] As described above, the Fairfield Settlement Agreement provides for the sharing of recoveries on the parties' claims for recovery of property that Sentry transferred, cooperation and consultation on bringing those claims, and a joint interest agreement. The trustee's and the Liquidators' agreed joint interest in any such recovered BLMIS customer property constitutes a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of the kind recognized by the Supreme Court to give rise to non-party issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). Because the trustee is in privity with the Liquidators in actions to recover alleged BLMIS customer property, such as the actions at issue in *Fairfield III*, and because the issue of Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on the ground of the section 546(e) safe harbor, this Court's finding in *Fairfield III* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its subscribers is binding on the trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

22

In addition, to the extent the Complaint alleges that the Sentry redemption payments to Banque Syz were tied to payments of customer property transferred from BLMIS to Sentry (which Section III, *infra*, shows to be implausible), the Fairfield Initial Transfers were settlement payments for the benefit of a financial institution, Banque Syz, which is a bank, and may not be avoided. *See Cohmad*, 2013 WL 1609154, at *9.

### 4. Section 546(e) Does Not Contain a "Knowledge" Exception.

The trustee might respond that the safe harbor does not apply here because the initial transferee, Sentry, allegedly knew of Madoff's fraud and thus knew that there was no actual "settlement payment" or "securities contract." In *Fairfield Investment Fund*, which involved the later version of the *Fairfield* complaint than the one that was incorporated by reference here, this Court accepted that the trustee adequately pled Sentry's actual knowledge. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5 (citing Fairfield Second Amended Complaint). It then denied a motion to dismiss based on section 546(e), relying on Judge Rakoff's statement that "'if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor.'" *Id.* at *4 (quoting *Cohmad*, 2013 WL 1609154, at *7).

That argument does not defeat the application of section 546(e) in this case. *First*, as noted above, even if there was no actual securities contract between BLMIS and Sentry, there still was a securities contract between Sentry and Banque Syz, and there is no allegation that the securities contracts between Sentry and its investors were not real. As Judge Rakoff ruled in *Cohmad*, even if the initial transferee knew BLMIS was a fraud and was not trading securities, if the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and the subsequent transferee, then the

withdrawal from BLMIS would be a transfer made in connection with the securities contract between the initial transferee, Sentry, and the subsequent transferee, Banque Syz, and would not be avoidable. *Cohmad*, 2013 WL 1609154, at *7 .

*Second*, although the Complaint alleges that Banque Syz, based on its expertise, knew or should have known of BLMIS's fraud and that there were no real settlement payments or securities contracts between BLMIS and Sentry, nothing in section 546(e) turns on the knowledge of the transferee.[17] The *only* exception to section 546(e) is a claim under section 548(a)(1)(A), which involves actual fraudulent intent by the *transferor*. *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant") (citations omitted). Nor does knowledge play any role in the definitions of "settlement payment," 11 U.S.C. § 741(8), or "securities contract." *Id.* § 741(7). Where the Code creates an exemption or safe harbor and specifies exceptions, a court is not free to create additional exceptions, even when doing so is motivated by a party's alleged wrongdoing. *See Law v. Siegel*, 571 U.S. 415, 424–25 (2014). The courts must adhere to "the plain meaning of the language" of the statute. *See Merit Mgmt. Grp., LP v. FTI Consulting Inc.*, 138 S. Ct. 883, 897 (2018). A holding that transferee knowledge defeats the safe harbor would be inconsistent with section 546(e)'s language.

Section 546(e) reflects a balancing of interests by Congress, one of which is the protection of market stability. "Unwinding settled securities transactions … would seriously

---

[17] Although the Second Circuit in *Fishman* noted that the defendants there had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have differed had that not been the case. The only circumstances in which the knowledge of the transferee would be relevant would be if it could be imputed to the transferor, such as where the transferee, "as the [transferor]'s president, director, and sole shareholder … was in a position to control the disposition of [the transferor's] property." *See In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir. 1983) (citation omitted).

undermine … markets in which certainty, speed, finality, and stability are necessary to attract capital." *Tribune I*, 946 F.3d at 90. "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds— would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at 420 (citation omitted).

### B.  The Complaint Establishes Banque Syz's Good Faith Defense.

Under section 550(b), a trustee may not recover from a subsequent transferee who took for value, in good faith, and without knowledge of the voidability of the transfer. The Complaint and the proceedings of which this Court may take judicial notice establish each of these elements of the affirmative defense.

### 1.  Value

Collier describes what is required to show "value":

> The "value" required to be paid by the secondary transferee is merely consideration sufficient to support a simple contract, analogous to the "value" required under state law to achieve the status of a bona fide purchaser for value. There is no requirement that the value given by the transferee be a reasonable or fair equivalent. The term "value" in this subsection is different from and does not mean value to the debtor ….

COLLIER ON BANKRUPTCY ¶ 550.03[1] (16th ed. 2021) (footnotes omitted).

The Complaint seeks recovery of transfers from Sentry to Banque Syz. Those transfers were all payments by Sentry for redemption of shares in the Sentry fund. (*See Fairfield v. Syz* Compl. ¶¶ 5, 9, 37, 38.) As a British Virgin Islands company, Sentry's corporate relationship with its shareholders is governed by BVI law under the internal affairs doctrine. *Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997); *see Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, ¶ 10 ("the terms of the subscriber's membership of the Fund, which govern the redemption of its shares … are to be found in the Articles of Association of the Fund"). The

Eastern Caribbean Court of Appeal has held that a Sentry investor's surrender of Sentry shares upon Sentry's redemption of the shares for cash gives good consideration to support the exchange. *Id.* ¶¶ 8, 87. *Quilvest Finance Ltd. v. Fairfield Sentry Ltd.*, Case Nos. HCVAP 2011/041–052 (Req. for Jud. Not., Ex. K). Therefore, the Complaint and related proceedings show that the "value" element of the affirmative defense is satisfied.

### 2. Good Faith

The Court of Appeals for the Second Circuit recently defined what is required to show that a transferee took a transfer "in good faith." In *Picard v. Citibank N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171, 191–92 (2d Cir. 2021) ("*Citibank*"), the Court established a three-step inquiry for a good faith defense:

1. "[W]hat facts the defendant actually knew; this is a subjective inquiry, not 'a theory of constructive notice.'"

2. "[W]hether these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud."

3. "[W]hether 'diligent inquiry [by the transferee] would have discovered the fraudulent purpose' of the transfer."

Under *Citibank*, therefore, even if the transferee (1) knew actual facts that (2) would put it on inquiry notice of the fraudulent purpose underlying the transaction or transfer, the transferee still takes the transfer in good faith if (3) a diligent inquiry would not have discovered the fraudulent purpose of the transfer. The Fairfield Amended Complaint shows that a diligent inquiry would not have revealed the fraud, and thus establishes Banque Syz's good faith defense.

In the Fairfield Amended Complaint (and numerous other pleadings), the trustee alleges various "red flags" that he claims should have alerted investors to the fraudulent purposes of BLMIS's transfers to Sentry. Even assuming, *arguendo*, that Banque Syz

26

actually knew some of these facts (as opposed to having constructive knowledge, a standard that *Citibank* rejected) and that the known facts would have put Banque Syz on inquiry notice, the Fairfield Amended Complaint establishes that even upon a diligent inquiry, investors could not have discovered the fraudulent purpose of the transfers.

The Fairfield Amended Complaint alleges that some consultants and market analysts opined at various times that BLMIS may have been involved in improper activities. However, most of those suspicions related to lack of transparency, potential self-dealing, or improper trading activities; only a handful suspected a Ponzi scheme. At the same time, *thousands* of market participants with varying degrees of sophistication disagreed with their opinions and invested in BLMIS, either directly or through feeder funds.

Even if a reasonable investor might have suspected that something was amiss at BLMIS, the Fairfield Amended Complaint shows that a diligent inquiry could not reasonably have discovered the fraudulent purpose underlying the transfers from BLMIS to Sentry. The Fairfield Amended Complaint alleges that BLMIS operated under a cloak of secrecy and lack of transparency. (*Id.* ¶¶ 501, 520.) It alleges that Sentry's management "went to great lengths to keep their investors far away from Madoff" (*Id.* ¶ 342), "misled investors" (*Id.* ¶ 344), in 2002, "remove[d] all references to BLMIS from their marketing materials" and offering memorandum (*Id.* ¶ 346), "actively and repeatedly 'blocked' investors wishing to obtain more information" (*Id.* ¶ 348), "went to great lengths to cover up Madoff's actual role with the FGG funds" (*Id.* ¶ 350), and "sold the false assurance that they conducted superior due diligence." (*Id.* ¶ 362.)

Although the Fairfield Amended Complaint points to some analysts, consultants, or market participants who suspected wrongdoing at BLMIS, only two of those instances involved diligent investigations of red flags, and neither of those investigations uncovered

the BLMIS fraud. First, the Fairfield Amended Complaint alleges that SEC began an investigation in 2006 into whether BLMIS was a Ponzi scheme or engaged in other illegal activity (*id.* ¶ 351), but that the SEC was stymied by the efforts of BLMIS and Sentry insiders to hinder the government investigation. (*Id.* ¶¶ 360–361.) The SEC thus did not uncover the fraud before BLMIS's scheme fell apart in December 2008.

Second, the Fairfield Amended Complaint alleges that an independent hedge fund research and advisory firm, Aksia, LLC, conducted an investigation into BLMIS and its feeder funds. Aksia's report is attached to the complaint. (*Id.* Ex. 101.) Although the Fairfield Amended Complaint includes a laundry list of supposed red flags identified by Aksia during its investigation (*id.* ¶ 523), the complaint omits critical facts contained in the report: Aksia's report did not conclude that BLMIS was a fraud, only that red flags existed (*Id.* Ex. 101 at 2–3), and that Aksia's "decision to not recommend these feeders was never based on the existence or discovery of a smoking gun." (*Id.* Ex. 102 at 1.)

If neither the SEC, with its powerful investigative tools, expansive subpoena powers and broad resources, nor Aksia, with all of the information available to it following on-site meetings with Sentry, a one-hour call with Madoff, interviews of former Madoff employees and access to financial documents and quantitative analysts (*id.* Ex. 101 at 1–2), could not determine the fraud during their investigations, how could a once-removed feeder fund investor, which did not even have a direct relationship with BLMIS, do so? As Judge Rakoff pondered, as a practical matter, how might a direct investor even "launch an investigation of his broker's internal practices—and how could he do so anyway?" *Picard v. Katz*, 4625 B.R. 447, 455 (S.D.N.Y. 2011), *vacated and remanded, Picard v. Citibank* (*In re Bernard L. Madoff Inv. Secs.*), 12 F.4th 171 (2d Cir. 2021). If (as the district court found) a direct investor such as Katz could not have realistically investigated Madoff's business practices, how could

Banque Syz possibly have done so with any success? The trustee's own Fairfield Amended Complaint convincingly shows that a diligent inquiry would not have enabled Banque Syz to discover the fraudulent purpose of the transfers and that therefore that Banque Syz may avail itself of the good faith defense.

### 3.  Without Knowledge of Voidability

In applying this element of the affirmative defense, the court must test the subsequent transferee's knowledge of the voidability of the initial transfer, not of the subsequent transfer. *Brandt v. Horseshoe Hammond, LLC (In re Equip. Acq. Res., Inc.)*, 803 F.3d 835 (7th Cir. 2015). The courts construe "without knowledge of the voidability of the transfer" the same as good faith, so a transferee who is found to be in good faith is also found to be without knowledge of voidability. As Judge Rakoff noted, "[i]n light of the legislative history, the most plausible reading is that this third requirement is merely one specific type of subjective knowledge required …." *Sec. Inv. Protect. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 516 B.R. 18, 23 n.3 (S.D.N.Y. 2014). Therefore, this element of the defense also has been established.

## III.  The Trustee Does Not Plead Plausibly that Subsequent Transfers Were of BLMIS Customer Property.

Under section 550(a)(2), a trustee may recover from a subsequent transferee only the property that was transferred in the initial transfer or its value. A trustee may not recover proceeds of the transferred property. *Rajala v. Spencer Fane LLP (In re Generation Res. Holding Co, LLC)*, 964 F.3d 958, 965 (10th Cir. 2020). Where the initial transfer involved cash, the ability to recover its value in lieu of the property does not differ meaningfully from the ability to recover the property, subject to considerations relating to the fungibility of cash. Still, a trustee must plead facts showing that the money the subsequent transferee received was in fact the property transferred in the initial, avoidable transfer.

A complaint must "give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). Factual allegations must imply more than a logical "possibility" that liability arises. *Twombly*, 550 U.S. at 555 (more than "mere possibility" is required).

To do so in this case, *Iqbal* and *Twombly* require the trustee to plead facts, not conclusions of law or statements of the elements of the cause of action, that create the plausible inference that the redemption payments were subsequent transfers of BLMIS customer property and that "liability necessarily, not only possibly, follows." *Strandberg v. State Farm Mutual Auto Ins. Co.*, 2016 WL 614401, at *1 (D. Nev. Feb. 16, 2016). As Judge Bernstein ruled:

> The Trustee must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the "necessary vital statistics"—the "who, when, and how much" of the transfers to establish that an entity was a subsequent transferee of the funds. At the pleading stage, the Trustee is not required to provide a "dollar-for-dollar accounting" of the exact funds at issue. However, barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient.

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 150–51 (Bankr. S.D.N.Y. 2014) (same).

In *Shapiro*, the trustee alleged only generically that (i) BLMIS transferred funds to certain accounts and (ii) the "Initial Transferee Defendants subsequently transferred a portion of the $53,778,486 received from BLMIS" to Defendants who held an account at BLMIS which was funded largely, if not completely, with subsequent transfers. (*Fairfield Second Amended Complaint* ¶¶ 110, 43, *Picard v. Shapiro*, Adv. Proc. No. 10-5383 (Bankr. S.D.N.Y. July 8, 2014), ECF 33.) The Court dismissed the complaint because it did not "tie

any initial transfer to any subsequent transfer or Subsequent Transferee" and did "not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Picard v. Shapiro*, 542 B.R. at 119; *accord In re Caremerica, Inc.*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009) (court dismissed a preference claim under *Twombly* and *Iqbal* because the trustee's factual allegations included allegations about transfers into and out of an account and amounts received by the supposed transferees, but nothing to tie them together). Here, the Complaint's allegations fail to make the very connections that the courts required in *Shapiro*, *Merkin*, and *Caremerica*.

Although the Complaint attaches (i) an exhibit that includes the BLMIS-to-Sentry Fairfield Initial Transfers, and (ii) lists the redemption payments from Sentry to Banque Syz, it does not specify which, if any, of the Fairfield Initial Transfers involved the customer property that the trustee alleges Sentry subsequently transferred to Banque Syz or how those transfers are tied. The Complaint and exhibits thus do not make any connection between the two and show only that it is possible, not plausible, that some of the Sentry redemption payments to Banque Syz might have been made from transferred customer property. Thus, the Complaint does not state the "'when, and how much' of the transfers to establish that [Banque Syz] was a subsequent transferee of the funds." It contains only the "barebones allegations that the funds at issue were transferred" to Banque Syz. *See Shapiro*, 542 B.R. at 119.

By contrast, in *Merkin*, the trustee sought recovery of subsequent transfers from one defendant to another. This Court denied a motion to dismiss the complaint that was made on the ground that the trustee did not adequately connect the initial transfers to the subsequent transfers. The Court reasoned that the subsequent transfers were close in time, some

31

"contemporaneously or shortly after an initial transfer" and others "by larger time gaps, but
… still sufficiently close to support the inference that a portion of the subsequent transfer
originated with BLMIS." *Merkin*, 515 B.R. at 150–51. Moreover, the Court relied on "the
difficulties the Trustee faces in a case such as this [which] must ultimately be proved through
the books and records of the defendants." *Id.*

Neither of those factors is present here. For over 10 years, the trustee has had *all* of
the records of both BLMIS and Sentry; the defendants have none. The trustee already knows,
and the defendants do not, how Sentry used any of the Sentry Initial Transfers including, for
example, whether they were redeposited with BLMIS, transferred to Sentry's management,
or transferred to other Fairfield funds such as Sigma and Lambda. The trustee may not hide
behind a supposed need for discovery to connect the initial transfers to Sentry and the
subsequent transfers from Sentry. No amount of discovery will add anything to the records
the trustee already has and should have researched and relied on before filing the Complaint.
*See* Fed. R. Bankr. P. 9011(b) (requiring "inquiry reasonable under the circumstances"). The
trustee should not be permitted to rest on vague and conclusory allegations about connections
between the Fairfield Initial Transfers and Sentry's transfers to Banque Syz, and after 10
years, he should be required to allege plainly how those transfers are tied.

This is not merely a question of re-pleading or clarification. In the 70+ Sentry
subsequent transferee recovery actions, the trustee alleges that $3.211 billion in redemption
payments were made by Sentry to its investors after May 9, 2003 (the date of the earliest
possibly avoidable Fairfield Initial Transfer), each of which is alleged by the trustee to be the
proceeds of transfers from BLMIS to Sentry. The trustee alleges that during the same period,
Sentry transferred another $1.035 billion in transfers to its management and affiliates in the
same time period (Fairfield Second Amended Complaint), $2.055 billion to BLMIS as deposits
(Compl., Ex. J), and $752 million to Sigma (Compl., Ex. L), for a total of nearly $7.053 billion

in transfers made by Sentry during the six-year period. Yet the trustee admits that only $2.895 billion in alleged avoidable initial transfers of customer property were made by BLMIS to Sentry during this period, meaning that at least $4.189 billion of the transfers Sentry made during this period—well more than half of Sentry's transfers during the period—could not have been subsequent transfers of avoidable initial customer property transfers. Nevertheless, the trustee has challenged all the transfers from Sentry (other than transfers to BLMIS), despite the mathematical impossibility of his position. It is clear from the pleadings and by applying simple math that many of the Sentry transfers to Banque Syz and other defendants must have from sources other than BLMIS and are not tied to avoidable initial customer property transfers. And the trustee has the records that show that.

In addition, Exhibit J and K show a large time gap between the Fairfield Initial Transfers and the transfers to Banque Syz. Focusing on the BLMIS-to-Sentry transfers made before March 2007 (the last Sentry-to-Banque Syz transfer), the Complaint's exhibits show:

| Dates | BLMIS to Sentry (USD) | Sentry to BLMIS (USD) | Sentry to Banque Syz (USD) |
|---|---|---|---|
| May 2003–July 2003 | 120,000,000 | | |
| Oct. 2003–Dec. 2004 | | (370,100,000) | |
| April 2005 | 175,000,000 | | |
| May 2005 | | (50,000,000) | |
| July 2005–March 2006 | 900,000,000 | | |
| April 13, 2006 | 120,000,000 | | |
| May 15, 2006 | | | (332,185) |
| August 4, 2006 | | (160,000,000) | |
| Sept. 6, 2006 | | (150,000,000) | |
| October 5, 2006 | | (100,000,000) | |
| Jan. 4, 2007 | | (500,000,000) | |
| Jan., 16, 2007 | | | (13,635,353) |
| Feb. 12, 2007 | | (175,000,000) | |
| March 16, 2007 | | | (193,278) |
| March 16, 2007 | | | (1,288,425) |
| | 1,315,000,000 | (1,505,100,000) | (15,449,241) |

Three of the four transfers to Banque Syz that the trustee seeks to recover, involving nearly 98% of the amount at issue, were made in January and March 2007. The last Fairfield Initial Transfer before January 2007 was made nine months earlier, in April 2006. The Complaint shows that after April 2006, Sentry deposited $1.085 billion with BLMIS without any withdrawals from its BLMIS account.

Exhibits J and K show that the trustee's claim that Banque Syz is liable for having received customer property from BLMIS through Sentry is not plausible. The three Banque Syz transfers were made nine and eleven months after the last prior BLMIS-to-Sentry transfer, from a fund that the trustee alleges was one of BLMIS's largest feeder funds, and which therefore must have made numerous redemption payments during that nine-month period, or so the trustee alleges in nearly 80 adversary proceedings filed in this SIPA case. *See Trustee's Twenty-Sixth Interim Report For The Period April 21, 2021 Through September 3, 2021* ¶ 229, Ex. D, *In re Bernard L. Madoff Inv. Secs. LLC*, ECF 20821, Adv. Proc. No. 08-01789 (Bankr. S.D.N.Y. Oct. 29, 2021). During that same period, Sentry transferred $1.085 billion *to* BLMIS. Therefore, it is not plausible that somehow the funds that Sentry received in April 2006 and before were stashed aside and used to pay redemptions to Banque Syz in January and March 2007. *See also Garfinkle v. Conf. on Jewish Material Claims Against Germany, Inc.*, 2020 WL 6323462, at *4–5 (S.D.N.Y. Oct. 28, 2020) (where there is an "obvious alternative explanation … that explanation renders [plaintiff]'s competing explanation 'conceivable [but not] plausible'").

Because the above shows that a substantial portion of the transfers the trustee seeks to avoid in the Sentry subsequent transferee recovery actions could not have been subsequent transfers of Fairfield Initial Transfers, and the Complaint does nothing to attempt to tie any Fairfield Initial Transfer to any payment made by Sentry to Banque Syz many months (or even years) later—even though the trustee has the records that would permit him to do so—

34

the Complaint does not plausibly plead that Banque Syz received customer property that was transferred from BLMIS to Sentry in avoidable transfers and must be dismissed.

## IV.    The Complaint Does Not Adequately Allege Facts Showing That Syz Is Subject To Personal Jurisdiction.

The Complaint should also be dismissed for failure to adequately allege facts establishing personal jurisdiction over Banque Syz. A bankruptcy court may exercise personal jurisdiction over a defendant in a proceeding arising in or related to a case under the Bankruptcy Code if the exercise is consistent with the U.S. Constitution. Fed. R. Bankr. P. 7004(f); *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC),* 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010).[18] Due process requires allegations "(1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted). The minimum contacts sufficient to support specific jurisdiction focus on "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), a relationship that "must arise out of contacts that the defendant himself creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation marks omitted).

A court may exercise specific personal jurisdiction[19] only if it finds sufficient contacts directly related to the action. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) ("The plaintiff's claims … must arise out of or relate to the defendant's contacts with the forum."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). A person should not be required to defend against claims in a foreign court if he could not

---

[18] The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

[19] The trustee does not allege that the Court has general jurisdiction over Banque Syz—which conducts no business operations in the United States and has no office, postal address, telephone listing, agent, employee, property, marketing, sales, or other physical presence in the United States.

reasonably have anticipated being haled into that court or if he did not purposefully avail himself of the benefits and protections of the forum's laws. *Ford Motor Co.*, 141 S. Ct. at 1027; *Hanson v. Denckla*, 357 U.S. 235, 251–52 (1958).

The trustee bears the burden of establishing that this Court has personal jurisdiction over Banque Syz. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016). The "short and plain statement of the grounds for the court's jurisdiction" required under Rule 8(a)(1) must state facts that support personal jurisdiction with reasonable specificity. *Palnik v. Westlake Entm't, Inc.,* 344 Fed. App'x 249, 251–52 (6th Cir. 2009) (citing *Twombly,* 550 U.S. 567). Each of the Complaint's jurisdictional allegations is unavailing.

*First*, the Complaint alleges that Banque Syz is subject to specific jurisdiction by "knowingly directing funds to be invested with New York-based BLMIS through Madoff Feeder Funds" and "invested substantial sums with … [Sentry] … , which in turn invested nearly all of [its] funds with BLMIS." (Compl. ¶ 6.) Personal jurisdiction is not measured by third-party contacts, but on contacts "the Defendant himself creates." *Waldman*, 835 F.3d at 335. *Sentry's* contacts with BLMIS cannot establish that *Banque Syz* "accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and the State of New York" (Compl. ¶ 6), and settled Supreme Court precedent has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between … third parties and the forum State." *Walden*, 571 U.S. at 284.

Mere knowledge that Sentry would invest in New York is insufficient to support jurisdiction. *Walden* is dispositive on this point. In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful seizure of money in a Georgia airport. The police officer knew that the plaintiff had connections to Nevada and that the seizure

would delay return of plaintiff's property to Nevada, but the Supreme Court held it unconstitutional to exercise personal jurisdiction over the police officer in Nevada. The foreseeability of plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over defendant because it "allows a plaintiff 's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289. The Court has "consistently rejected attempts to satisfy this defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Id.* at 284; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) ("The 'substantial connection' … [for] minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.").

Similarly, the trustee cannot establish specific contacts through redemption of Sentry shares. Banque Syz never sent funds to or received funds from BLMIS in New York for the purchase of securities in the United States, and as a mere investor in Sentry, would not have had authority or reason to send funds to or from BLMIS. Only the underlying feeder funds would have reason to do so, and their contacts are not attributable to Banque Syz. Nor can Sentry's withdrawal of funds from BLMIS be imputed to Syz. While a court might hold a principal liable for the jurisdictional contacts of its agent, *see Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir. 1988), there is no allegation that Sentry acted in this capacity, and the allegation that Banque Syz received redemptions nearly one year after the last BLMIS-Sentry Transfer strongly contradicts an agency relationship.

*Second*, the Complaint alleges that Banque Syz used New York banks to transfer investor funds and receive redemption payments made by the Feeder Funds. (Compl. ¶ 7.) The "mere maintenance" of a U.S. bank account and the "knowing receipt of funds" through the account does not establish personal jurisdiction. *See, e.g., In re Sledziejowski*, 2016 WL

6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016); *Leema Enters., Inc. v. Willi,* 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983). Banque Syz's use of New York banks was incidental to foreign investment contracts that were negotiated and performed entirely abroad and do not create the minimum contacts necessary to exercise specific jurisdiction. *See To v. HSBC Holdings PLC*, No. 15-CV-3590 (LTS), 2017 WL 816136, at *6–7 (S.D.N.Y. Mar. 1, 2017) (contact with U.S. banking system pursuant to foreign feeder fund service contracts does not support jurisdiction); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (same).

*Third*, the Complaint alleges that Banque Syz maintained an account with BLMIS. (Compl. ¶ 7.) Banque Syz opened the account for Isos at BLMIS on or about March 7, 2007. The trustee seeks to recover fraudulent transfers that were made by BLMIS to Fairfield Sentry no later than April 2006, and by Sentry to Syz as subsequent transferee in January and March 2007. Transfers initiated in April 2006 cannot "arise out of or relate to" Banque Syz's opening of the Isos Account in a custodian capacity eleven months after the initial transfer. *See Ford Motor Co.*, 141 S. Ct. at 1025.

*Fourth*, although a court may exercise personal jurisdiction over an agent even when the agent was acting in the forum solely on behalf of its principal, *see Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) (rejecting fiduciary shield doctrine), specific personal jurisdiction is based only on the defendant's contacts with the forum state that are specifically related to the litigation. In *McGowan v. Smith*, 52 N.Y.2d 268 (1981), the Court of Appeals of New York denied personal jurisdiction over a defendant when a third-party plaintiff failed to establish that the defendant's contacts were substantially related to the transaction out of which the original plaintiff's claim arose. Although the defendant's representatives had made several trips to New York, *id.* at 272, the Court of Appeals determined that the visits did not "bear a substantial relationship to the transaction out of which the instant cause of action

arose," *id.,* making the exercise of personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1) was improper. *See id.* Here, opening a BLMIS account in a custodial capacity for its customer Isos had nothing to do with Banque Syz's own investment in Sentry.

*Fifth,* the Complaint alleges "Banque Syz filed a Customer Claim in the SIPA Proceeding seeking to recover funds it allegedly lost on its investments in BLMIS, whereby it has submitted to the jurisdiction of this Court." (Compl. ¶ 8.) Banque Syz filed the Customer Claim on behalf of Isos to recover Isos's property, not on Banque Syz's own behalf or to recover Banque Syz's or its customers' Sentry investments. Moreover, the Complaint does not allege any connection between the Sentry Initial Transfers and the Customer Claim, much less that they "arise out of or relate to'" the Customer Claim as required to establish specific jurisdiction.

Section 502(d) requires the bankruptcy court to determine as part of the claims allowance process whether a claimant received recoverable property, which will bind the claimant in an action to recover the property. Here, however, the claimant is Isos, not Banque Syz. The trustee asserts that for purposes of SIPA, Banque Syz, not Isos, is the "customer." But the Customer Claim makes is clear that Banque Syz is the claimant under the proof of claim, and that it is filed on behalf of Isos by its subcustodian. The trustee has not alleged that Isos received any recoverable property or that any recovery on the Customer Claim would be for the benefit of Banque Syz (as opposed to Isos). Therefore, the filing of the Isos Customer Claim does not give rise to personal jurisdiction over Banque Syz to recover transfers that are wholly unrelated to the Customer Claim and the beneficial owner of the Isos account.

**V.**    **Count Two Should Be Dismissed and the Customer Claim Should Be Allowed.**

Section 502(d) provides for disallowance of a claim of an entity who received property that is recoverable under section 550 unless the entity has paid the amount or turned over the property for which it is liable.

Here, the Complaint alleges that Banque Syz received property that is recoverable under section 550, not that Isos did. Accordingly, section 502(d) should not apply to the proof of claim filed on behalf of Isos. In addition, as shown above, the Complaint fails to state a claim that Banque Syz is liable to pay or turn over any property. The trustee raises no other objection to the Isos claim. For any or all of these reasons, Count Two of the Complaint should be dismissed, and the Customer Claim should be allowed.

### Conclusion

For the foregoing reasons, the Court should dismiss the Complaint.

Dated:   New York, New York
         January 28, 2022

By: /s/ *Richard Levin*

JENNER & BLOCK LLP
Richard Levin
Carl Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rlevin@jenner.com
cwedoff@jenner.com

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
vlazar@jenner.com

*Counsel for Defendant Banque Syz SA*