UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SECURITIES INVESTOR PROTECTION : 
CORPORATION, :

                 Plaintiff-Applicant, :

     v. :

BERNARD L. MADOFF INVESTMENT :
SECURITIES, LLC, :
:
               Defendant. :

Adv. Pro. No. 08-01789 (CGM)

SIPA LIQUIDATION

(Substantively Consolidated)

-------------------------------------------------------------x

In re: :
:
BERNARD L. MADOFF, :
:
            Debtor. :

-------------------------------------------------------------x

IRVING H. PICARD, Trustee for the : 
Liquidation of Bernard L. Madoff Investment :
Securities LLC, and Bernard L. Madoff, :
:
            Plaintiff, :
:
     v. :
:
BANCA CARIGE S.P.A., :
:
            Defendant. :

Adv. Pro. No. 11-02570 (CGM)

-------------------------------------------------------------x

# MEMORANDUM OF LAW IN
## SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR
## LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM

David J. Mark
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
*Attorneys for Defendant Banca Carige S.p.A.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................2

BACKGROUND ........................................................................................................................5

ARGUMENT .............................................................................................................................7

I.    THIS CASE SHOULD BE DISMISSED FOR LACK OF  PERSONAL
      JURISDICTION ................................................................................................................7

      A.    Banca Carige's Alleged Contacts with the Forum Are Insufficient to
            Establish Jurisdiction. .........................................................................................7

            1.    Alleged Foreseeability of Fairfield's Sentry's Investment in BLMIS
                  Does Not Satisfy Minimum Contacts. .........................................................8

            2.    The Jurisdiction Provision in The Subscription Agreement Does
                  Not Support Jurisdiction In New York. ....................................................13

            3.    Use Of A Correspondent Account Does Not Support Minimum
                  Contacts.....................................................................................................14

      B.    The Exercise of Personal Jurisdiction over Banca Carige Would Be
            Unreasonable......................................................................................................17

II.   THE COMPLAINT SHOULD BE DISMISSED FOR  FAILURE TO STATE A
      CLAIM............................................................................................................................18

      A.    The Complaint Fails to Plead the Avoidance or Avoidability of the Initial
            Transfers. ...........................................................................................................18

      B.    The Complaint Does Not Sufficiently Allege That Banca Carige Received
            BLMIS Customer Property. ................................................................................24

CONCLUSION........................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achtman v. Kirby McInerney & Squire, LLP,*
    464 F.3d 328 (2d Cir. 2006)..................................................................................... 8

*Aguas Lenders Recovery Grp. v. Suez, S.A.,*
    585 F.3d 696 (2d Cir. 2009)..................................................................................... 13

*Am. Casein Co. v. Geiger (In re Geiger),*
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ..................................................................... 20

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC,*
    2012 WL 527209 (S.D.N.Y. Feb. 17, 2012) ........................................................... 13

*Angell v. Ber Care, Inc. (In re Caremerica, Inc.),*
    409 B.R. 737 (Bankr. E.D.N.C. 2009) .................................................................... 25

*Arma v. Buyseasons, Inc.,*
    591 F. Supp. 2d 637 (S.D.N.Y. 2008)..................................................................... 13

*Asahi Metal Indus. Co. v. Superior Court,*
    480 U.S. 102 (1987)........................................................................................... 10, 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................. 25

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................. 25

*Benton v. Cameco Corp.,*
    375 F.3d 1070 (10th Cir. 2004) .............................................................................. 18

*In re Bernard L. Madoff Inv. Sec. LLC,*
    515 B.R. 117 (Bankr. S.D.N.Y. 2014)..................................................................... 25

*BLI,*
    Adv. No. 11-2732 (Bankr. S.D.N.Y.) ...................................................................... 12

*Charles Schwab Corp. v. Bank of Am. Corp.,*
    883 F.3d 68 (2d Cir. 2018)............................................................................ 8, 10, 11

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)................................................................................................. 8

*Davis v. Bifani,*
  2007 U.S. Dist. LEXIS 30080, 2007 WL 1216518 (D. Colo. April 24, 2007) ....................... 20

*In re Fairfield Sentry Ltd.,*
  2018 Bankr. LEXIS 2324 (Bankr. S.D.N.Y. Aug. 6, 2018) ............................................*passim*

*Fairfield Sentry Ltd. v. Citco Global Custody NV,*
  No. 19-1122 (Bankr. S.D.N.Y. Nov. 26, 2019) .................................................................. 3, 26

*Garfinkle v. Conference on Jewish Material Claims Against Germany, Inc.,*
  2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020) ................................................................. 17, 27

*Ghazzaoui v. Anne Arundel Cty.,*
  2014 U.S. Dist. LEXIS 111558 (D. Md. Aug. 11, 2014) ....................................................... 21

*Hau Yin To v. HSBC Holdings, PLC,*
  2017 WL 816136, . (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir.
  2017) ...................................................................................................................... 11, 15, 17

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
  466 U.S. 408 (1984) ................................................................................................................ 9

*Hill v. HSBC Bank*
  207 F.Supp. 3d 333, 339-40 (S.D.N.Y. 2016) ....................................................................... 15

*Hinton v. Trans Union, LLC,*
  654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010)...................... 22

*J. McIntyre Mach., Ltd v. Nicastro,*
  564 U.S. 873 (2011) .............................................................................................................. 12

*Jesner v. Arab Bank, PLC,*
  138 S. Ct. 1386 (2018) .......................................................................................................... 16

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.,*
  34 A.D.3d 433 (2d Dep't 2006) ............................................................................................. 14

*LaMonica v. CEVA Grp., PLC (In re CIL Ltd.),*
  582 B.R. 46 (Bankr. S.D.N.Y. 2018) ..................................................................................... 17

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
  732 F.3d 161 (2d Cir. 2013).................................................................................................. 16

*Lowden v. William M. Mercer, Inc.,*
  903 F. Supp. 212 (D. Mass. 1995) ........................................................................................ 21

*Manko Window Systems, Inc. v. Prestik,*
  2017 WL 4355580 (D. Kan. Sept. 29, 2017) ......................................................................... 18

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
  12 N.E.3d 456 (N.Y. 2014) ................................................................................. 16

*In re Mexican Gov't Bonds Antitrust Litig.*,
  2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020) ...................................................... 12

*Muhammad v. Bethel-Muhammad*,
  2012 U.S. Dist. LEXIS 70330 (S.D. Ala. May 21, 2012) ..................................... 21

*Muth v. Dechert, Price & Rhoads*,
  391 F. Supp. 935 (E.D. Pa. 1975) ....................................................................... 20

*NCUA Bd. v. Morgan Stanley & Co.*,
  2014 U.S. Dist. LEXIS 58751 (S.D.N.Y. Apr. 28, 2014) ..................................... 19

*Nycomed US, Inc. v. Glenmark Generics, Ltd.*,
  2010 U.S. Dist. LEXIS 29267 (E.D.N.Y. Mar. 26, 2010) ..................................... 22

*PATRICIA YAK, v. BIGGERPOCKETS, L.L.C., CRAIG CURELOP*,
  2022 WL 67740 (2d Cir. Jan. 7, 2022) ........................................................... 13, 14

*Picard v. BNP Paribas S.A. (In re Madoff)*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) .................................................................. 12

*Picard v. Bureau of Labor Insurance (In re Securities Investor Protection SIPA
  Liquidation Corp.)*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) .............................................................. 11, 12

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd)*,
  627 B.R. 546 (S.D.N.Y. Bankr. 2021) (Morris, C.J.) ..................................... 6, 9, 19

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) .................................................................. 25

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
  917 F.3d 85 (2d Cir. 2019) .................................................................................... 7

*Porina v. Marward Shipping Co.*,
  2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ...................................................... 17

*Rocky Mountain Chocolate Factory v. Arellano*,
  2017 WL 4697503 (D. Colo. Oct. 19, 2017) ........................................................ 18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Aozora Bank Ltd. v.
  Sec. Inv. Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. In re
  Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013) .............................. 11

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    2013 U.S. Dist. LEXIS 56042 (S.D.N.Y. Apr. 15, 2013)........................................................ 18

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    490 B.R. 46 (S.D.N.Y. 2013).................................................................................................. 2

*Tamam v. Fransabank SAL*,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010)............................................................................. 4, 15

*In re Terrorist Attacks on September 11, 2001*,
    714 F.3d 659 (2d Cir. 2013).................................................................................................. 8

*Texas Water Supply Corp. v. R. F. C.*,
    204 F.2d 190 (5th Cir. 1953) .............................................................................................. 19

*U.S. Bank National Association v. Bank of America N.A.*,
    916 F.3d 143 (2d Cir. 2019).................................................................................................. 9

*U.S. v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) .......................................................................... 22, 23

*Universal Trading & Inv. Co. v. Tymoshenko*,
    2012 WL 6186471 (S.D.N.Y. 2012).................................................................................... 16

*Walden v. Fiore*,
    571 U.S. 277 (2014).................................................................................................*passim*

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016).................................................................................................. 7

*Wolfe v. Charter Forest Behavioral Health Sys., Inc.*,
    185 F.R.D. 225 (W.D. La. 1999) ........................................................................................ 21

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)............................................................................................................ 17

*Young v. City of Mount Ranier*,
    238 F.3d 567 (4th Cir. 2001) .............................................................................................. 21

**Statutes**

11 U.S.C. § 550(a) ...........................................................................................................18, 24

11 U.S.C. §§ 550(a) and 551 ................................................................................................. 6

15 U.S.C. § 78fff-2(c)(3) .................................................................................................. 6, 24

28 U.S.C. § 1334(a) ............................................................................................................. 20

United States Code title 11 sections 550 and 551 ................................................. 2, 20, 24

Bankruptcy Code, §§ 273-279 sections 544, 550 and 551 ............................................ 6

New York Debtor and Creditor Law ................................................................ 6

Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ...................................... 2

## Other Authorities

Charles Alan Wright & Arthur R. Miller, et al., 5A Fed. Prac. & Proc. Civ. § 1326
    (3d ed. 2013) ...................................................................................... 21

Bankruptcy Rule 7008 ............................................................................... 20

Civil Rules 8(a)(2), (d)(1) ........................................................................ 20

Federal Rules of Bankruptcy Procedure. Part VII .................................................... 20

Federal Rules of Civil Procedure Rule 10(c) ................................................ 19, 21, 22

Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) ............................................. 2

2 Moore's Federal Practice - Civil § 10.04[1] (2021) ......................................... 19, 21

2 Moore's Federal Practice - Civil § 10.04[3] (2021) .............................................. 20

Rule 8(a) ........................................................................................... 20

Rule 8(a)(2)'s ...................................................................................... 22

Rule 8(a)'s .................................................................................... 20, 23

Rule 10(c)'s ........................................................................................ 21

S. at 284 ............................................................................................ 8

## Suspects

*id.* § 1334(b) ..................................................................................... 20

*id*. Ex. B ......................................................................................... 24

Defendant Banca Carige S.p.A. ("Banca Carige"), by and through its undersigned counsel, respectfully submits this memorandum of law and the accompanying declaration of Francesco Guido dated January 25, 2022 (the "Moving Decl.") and declaration of David J. Mark (the "Mark Decl.") dated January 28, 2022, in support of its motion to dismiss the complaint (the "Complaint" or "Compl.") [Dkt. 1][1] filed by plaintiff Irving Picard (the "Trustee"), as trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[2]

## PRELIMINARY STATEMENT

In this action, the Trustee, appointed under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, seeks to recover over $10.5 million from Banca Carige. The Trustee does not allege that Banca Carige, an Italian bank, was a BLMIS customer. Instead, he sues to recover the proceeds Banca Carige received from Fairfield Sentry Limited ("Fairfield Sentry"), a British Virgin Islands ("BVI") investment fund, as a result of redeeming its shares in that fund. In his Complaint, the Trustee alleges a single claim for relief under SIPA and sections 550 and 551 of title 11 of the United States Code (the "Bankruptcy Code"), on the theory that Banca Carige was a subsequent transferee of a portion of approximately $3 billion in initial transfers which Fairfield Sentry received from BLMIS.

The Trustee has not established that the Court has personal jurisdiction over Banca Carige with respect to its claim. Every purported material aspect of the conduct alleged is foreign:

- As alleged in the Complaint, ¶ 21, Banca Carige is a bank organized and

---

[1]    All citations in this memorandum to "[Dkt. __] refer to the docket entry of that number in this adversary proceeding, Adv. Proc. No. 11-02570 (CGM) (Bankr. S.D.N.Y 2011). Capitalized terms not defined herein shall have the same meaning as ascribed in the Complaint or the Second Amended Fairfield Complaint (defined herein).

[2]    By making this motion, Banca Carige is not waiving its right to have an Article III court enter a final judgment in this matter. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 490 B.R. 46, 58 (S.D.N.Y. 2013).

existing under the laws of Italy. It is not alleged to and does not conduct any business in the United States. Moving Decl. ¶¶ 4-6.

- Fairfield Sentry is a BVI investment fund that is now in liquidation in its home jurisdiction of the BVI. Complaint, ¶ 2.

- Banca Carige made an equity investment in Fairfield Sentry pursuant to a subscription agreement (the "Subscription Agreement") whereby Banca Carige acquired the right to redeem its shares at Fairfield Sentry's net asset value at the time the shares were tendered. Moving Decl. Exhibit 1.

- All of Banca Carige's transactions with Fairfield Sentry were conducted through Fairfield Sentry's Dutch administrator, Citco Funds Services (Europe) B.V. ("Citco"). Moving Decl. ¶ 8.

- Banca Carige was contractually due the redemption payment under Fairfield Sentry's Articles of Association, which are governed by BVI law. *In re Fairfield Sentry Ltd.,* 2018 Bankr. LEXIS 2324 (Bankr. S.D.N.Y. Aug. 6, 2018), at *27-32. ("*Fairfield*").

The Trustee has alleged three bases for personal jurisdiction. Compl. ¶ 6. None of these bases satisfies the U.S. Constitution's minimum contacts test for exercising jurisdiction over Banca Carige.

*First,* the Trustee alleges that the minimum contacts case is satisfied because Banca Carige knew that Fairfield Sentry was investing funds it received from investors such as Banca Carige with BLMIS, and thus Banca Carige "purposely availed itself of the laws and protections of the United States and the state of New York" and "knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York." Compl. ¶ 6. However, those investments, which were not made by Banca Carige, are not the sort of minimum

3

contacts that would support personal jurisdiction. As the Supreme Court's decision in *Walden v. Fiore,* 571 U.S. 277, 282 (2014), establishes, the defendants' knowledge of other parties' contacts with the forum — here, the Fairfield Sentry's investment funds' alleged contacts with BLMIS — are insufficient to establish personal jurisdiction.

*Second,* the Trustee alleges that Banca Carige entered into the Subscription Agreement with Fairfield Sentry under which it submitted to New York jurisdiction. Pursuant to the Subscription Agreement, Banca Carige consented to jurisdiction in New York "with respect to this Agreement and the Fund." Subscription Agreement, ¶ 19. However, because the Trustee is not a party to the Subscription Agreement and the claim asserted by the Trustee does not arise under the Subscription Agreement, that Agreement does not provide a basis for jurisdiction here. *Fairfield*, at *21-32 (holding that in actions brought by the Fairfield Sentry liquidator to recover redemption payments, the subscription agreements cannot be used as a basis for jurisdiction since such actions do not arise out of those agreements).

*Third,* the Trustee alleges that Banca Carige wired funds to Fairfield Sentry through a bank in New York. Similarly, the redemption payment at issue here was wired to Banca Carige through a New York account. But the mere use of a bank account at a U.S. Financial institution to facilitate the making and receipt of dollar-denominated payments does not subject Banca Carige to personal jurisdiction in the United States. *Tamam v. Fransabank SAL,* 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.") (collecting cases). Foreign banks often maintain correspondent accounts denominated in dollars to facilitate the clearing of foreign dollar transactions. These accounts are essential to international commerce and to the economy because they facilitate clearance of more than a trillion dollars in transactions each day. Making a payment in U.S. dollars, and facilitating that payment ministerially through a U.S. bank

4

account, has been widely recognized in this Circuit as not giving rise to personal jurisdiction; were it otherwise, virtually anyone in the world who does business in U.S. dollars would potentially be subject to personal jurisdiction in New York. *See infra* Section I.A.3 (citing cases establishing that use of a correspondent bank account alone does not infer personal jurisdiction). Moreover, the Trustee's claims do not arise out of the use of any correspondent account, even if it were a sufficiently purposeful contact.

Banca Carige also moves to dismiss the Complaint for failure to state a claim. For the Trustee's claim to be viable, the Trustee must demonstrate that there was an initial transfer that was void or voidable. The Trustee attempts to satisfy this essential element solely by purporting to incorporate an extensive and wide ranging complaint in another adversary proceeding. For the reasons stated in Section II.A below, the proposed incorporation by reference is improper under the Federal Rules and requires dismissal of the Complaint. Moreover, even if the incorporation by reference was permitted it would not satisfy the Trustee's burden. The Trustee merely alleges that BLMIS transferred a large amount of money to Fairfield Sentry over a long period of time but does not identify which, if any, of these transfers constituted initial transfers of BLMIS customer property that were allegedly subsequently transferred to Banca Carige.

## **BACKGROUND**

This action is one of many in which the Trustee seeks to recover transfers that defendants received not from BLMIS itself, but instead from foreign investment funds such as Fairfield Sentry that invested in BLMIS. In this action, the Trustee seeks to recover $10,532,489 in subsequent transfers of alleged "Customer Property" made to Banca Carige by Fairfield Sentry on October 16. 2007. Compl. ¶ 2, Exhibit C. Fairfield Sentry is currently in liquidation in the BVI. *Id.* These payments were made to redeem shares held by Banca Carige in Fairfield Sentry. Banca Carige had previously acquired shares in Fairfield Sentry pursuant to the Subscription Agreement. Moving

Decl. ¶ 7.

Banca Carige is an Italian bank which is not alleged to have been a BLMIS customer, but which invested in Fairfield Sentry. Compl. ¶ 2. The Trustee alleges that Fairfield Sentry in the BVI transferred to Banca Carige in Italy funds that were previously transferred by BLMIS to Fairfield Sentry. Compl. ¶¶ 33, 40.

The sums at issue in the alleged subsequent transfer here are allegedly part of approximately $3 billion that BLMIS paid to Fairfield Sentry over six years before BLMIS's filing date, representing the proceeds of those funds' redemptions of BLMIS shares. Compl. ¶ 35. In an adversary proceeding filed in the Bankruptcy Court, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. 2009) ("*Picard v. Fairfield*"), the Trustee claimed that these transfers were "avoidable, and recoverable under sections 544, 550 and 551 of the Bankruptcy Code, §§ 273-279 of [the New York Debtor and Creditor Law (the "NYDCL")], and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)." Compl. ¶¶ 34-35. In paragraph 34 of the Complaint, the Trustee purports to incorporate by reference each of the allegations in the Fairfield Amended Complaint which consists of 798 paragraphs.

On September 1, 2011, the Trustee commenced this action against Banca Carige, seeking to recover a transfer it allegedly received from Fairfield Sentry. The Trustee's complaint contains a single claim for "Recovery of Subsequent Transfers," in an amount of "approximately $10,532,489." Compl. ¶ 43. The Trustee claims that this relief is authorized by 11 U.S.C. §§ 550(a) and 551 and SIPA, 15 U.S.C. § 78fff-2(c)(3). *Id.* ¶ 46.

In his Complaint, the Trustee does *not* allege that Banca Carige knew about or was willfully blind to the Madoff/BLMIS Ponzi scheme or that Banca Carige received the alleged subsequent transfer from Fairfield Sentry in bad faith.

The Complaint alleges that Banca Carige made its investment in Fairfield Sentry by wiring

funds to Fairfield Sentry through a bank in New York. Compl. ¶ 6. That payment was made pursuant to instructions provided by Citco for credit to the Dublin branch of Citco Bank Nederland NV. Moving Decl. ¶ 9. Although not specifically alleged in the Complaint, the redemption payment was made by wiring the funds to Banca Carige's correspondent account at Wachovia Bank in New York. Moving Decl. Exhibit 3.

Soon after the Complaint was filed, reference of this action was withdrawn to the District Court along with numerous other actions for the purpose of addressing various gating issues. After those issues were addressed by the District Court, this case was referred back to the Bankruptcy Court in July 2014. Subsequently, Banca Carige moved to dismiss this action on the ground *inter alia* that the Trustee's claim is an improper extraterritorial application of the Bankruptcy Code. Similar motions were made in approximately 90 other cases presenting the same issue. By decision dated March 3, 2017 [Dkt. 93], the Bankruptcy Court granted the extraterritoriality motion and this Action was dismissed. By the decision dated February 25, 2019, *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85 (2d Cir. 2019), the Second Circuit reversed and following the denial of a petition for certiorari in June 2020, the Second Circuit issued its mandate vacating the judgment, with the case returned to this Court. [Dkt. 101].

## ARGUMENT

### I.      THIS CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

#### A.      Banca Carige's Alleged Contacts with the Forum Are Insufficient to Establish Jurisdiction.

The Trustee has the "burden of establishing jurisdiction over the defendant." *Waldman v. Palestine Liberation Org.,* 835 F.3d 317, 334 (2d Cir. 2016) (quoting *Koehler v. Bank of Berm. Ltd,* 101 F.3d 863, 865 (2d Cir. 1996)). At the motion to dismiss stage, the Trustee has the pleading burden, and "must make a prima facie showing that jurisdiction exists" over Banca Carige consistent with due

process. *Charles Schwab Corp. v. Bank of Am. Corp.,* 883 F.3d 68, 81 (2d Cir. 2018) (internal quotation marks omitted). Where, as here, the Trustee has not done so, its claims should be dismissed.

The Trustee does not allege that the Court has general jurisdiction over Banca Carige, an Italian bank that is not "at home" in the United States, and so the Trustee must plead facts supporting the exercise of specific jurisdiction over Banca Carige. *See Daimler AG v. Bauman,* 571 U.S. 117, 136-37 (2014). To do so, the Trustee must assert that (1) its claims arise out of Banca Carige's sufficient "minimum contacts with the relevant forum," and (2) "the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001,* 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted). The minimum contacts inquiry "focuses on the relationship among the defendant, the forum, and the litigation, a relationship that "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden,* 571 U.S. at 284 (internal quotation marks omitted) (emphasis in original). The Trustee has failed to meet this pleading burden.

### 1.    Alleged Foreseeability of Fairfield's Sentry's Investment in BLMIS Does Not Satisfy Minimum Contacts.

The Trustee asserts that the Court has jurisdiction over Banca Carige based on allegations in the Complaint that it invested in Fairfield Sentry while "knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry," that Banca Carige "knowingly received transfers of Customer Property from BLMIS"[3] and that it "knowingly accepted the rights, benefits and privileges of conducting business and/or transactions in New York." (Compl. ¶ 6). However, those allegations are jurisdictionally irrelevant for at least three reasons.[4]

*First,* the allegation that Banca Carige knew that subscription payments into Fairfield Sentry

---

[3]    The Complaint does not allege any basis for the allegation that Banca Carige "knowingly" obtained transfers of "Customer Property." Accordingly, this conclusory allegation is not well pleaded and will not suffice to defeat a motion to dismiss. *Achtman v. Kirby McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).

[4]    Solely for the purposes of this motion to dismiss, Banca Carige does not dispute the allegations that it "knew" that its funds would be invested with BLMIS in New York.

may have been comingled with subscriptions from others, and the net surplus of those payments (in excess of redemption payments) would be invested by Fairfield Sentry's investment funds with BLMIS, does not give rise to this litigation and thus does not support jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). The Trustee's claim is not based on Banca Carige's decision to invest with Fairfield Sentry as the basis for liability. The Trustee's claim is for recovery of a subsequent transfer and relates to and arises out of the transfer by Fairfield Sentry to Carige of funds Fairfield Sentry allegedly received from BLMIS. Every aspect of the transaction between Fairfield Sentry and Banca Carige that gives rise to this claim is purely foreign.

For the same reason, the *U.S. Bank National Association v. Bank of America N.A.,* 916 F.3d 143 (2d Cir. 2019) decision, which this Court applied to hold that it may exercise jurisdiction over Andres Piedrahita in its decision in the Fairfield Greenwich Group case, *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd),* 627 B.R. 546, 568 (S.D.N.Y. Bankr. 2021) (Morris, C.J.) *("FGG"),* does not establish jurisdiction here. *U.S. Bank* found specific jurisdiction in Indiana over a defendant that made misrepresentations in connection with selling a bundle of mortgages because the misrepresentations related specifically to a mortgage for an Indiana property and breach of a promise to cure by taking action in Indiana. *U.S. Bank,* 916 F.3d at 151-52 (describing breach and obligation to cure). In *FGG,* this Court found specific jurisdiction over Mr. Piedrahita because he spent a "substantial amount of time" in New York and met with other "founding partners" of FGG and Madoff in New York; these were the facts that gave rise to the claims against him for return of management and performance fees and supported jurisdiction. *FGG,* 627 B.R. at 568. Unlike in these cases, the claims against Banca Carige are not based on any action taken by Banca Carige or even directed by Banca Carige in the United States. Banca Carige's

mere knowledge that Fairfield Sentry would invest the funds received from investors such as Banca Carige in the United States is not a sufficient basis for jurisdiction.

*Second,* mere knowledge that Fairfield Sentry would invest money it raised in the BVI with BLMIS in New York is insufficient as a matter of law to support jurisdiction. The Supreme Court's opinion in *Walden* is dispositive on this point. In *Walden,* a Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful seizure of money in a Georgia airport. *Walden*, 571 U.S. at 279-81. The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over the police officer in Nevada. *Id.* at 289. As the Supreme Court explained, the foreseeability of plaintiff's connection to the forum is irrelevant as to whether there is jurisdiction over a defendant because it "impermissibly allows a plaintiff's contacts with the defendant and the forum to drive the jurisdictional analysis." *Id.* The Supreme Court instead has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id. at* 284; *see also Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112 (1987) ("The substantial connection . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the internal forum State.*") (internal quotation marks omitted) (emphasis in original).

Furthermore, in *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83-84 (2018), the Second Circuit followed *Walden* to hold that California courts could not constitutionally assert jurisdiction over defendant banks as a result of the banks' fraudulent conduct in London, even though the defendants allegedly sold fraudulent instruments to plaintiff in California indirectly through their affiliates and other third parties.

Therefore, the assertion that Banca Carige knew that Fairfield Sentry would invest with

BLMIS, even if true, falls far short of the facts of *Walden* and *Charles Schwab,* and under the circumstances of this case such an allegation is insufficient to haul Banca Carige into this Court. Once Banca Carige transferred subscription money to Fairfield Sentry, the money was no longer Banca Carige's because Banca Carige entered into a contract to exchange it for shares. While some of the money invested in Fairfield Sentry may have been transferred to BLMIS, and some of the redemption payments may have been funded by transfers from BLMIS, that does not convert the actions of Fairfield Sentry into actions by Banca Carige. The law does not support the Trustee's expansive view that an investor in an investment company can be sued in any jurisdiction where that investment company itself decides to make investments simply because the investor was aware of the investment strategy and therefore purportedly agreed, upon making the investment, to be subject to any jurisdiction where the investment is located.

In *Picard v. Bureau of Labor Insurance (In re Securities Investor Protection SIPA Liquidation Corp.)* (*"BLI"*)*,* 480 B.R. 501, 516-19 (Bankr. S.D.N.Y. 2012), Judge Lifland held that the defendant's investment with Fairfield Sentry was sufficient to establish personal jurisdiction with respect to claims arising from the liquidation of BLMIS on the ground that the defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." 480 B.R. at 517. [5] However, this is

---

[5]    It is incorrect that Banca Carige obtained the benefit and protections of New York law when Fairfield Sentry made its investment in BLMIS. No such protections and benefits are identified. In fact, this Court has held that parties such as Banca Carige that did not have accounts with BLMIS could not assert claims in the SIPA proceeding. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 290–91 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Aozora Bank Ltd. v. Sec. Inv. Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013).

Also, even direct transactions between a foreign bank and BLMIS are not a sufficient basis for jurisdiction in this Court. *See e.g. Hau Yin To v. HSBC Holdings, PLC*, 2017 WL 816136, at *15. (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (Communications with and payments to BLMIS by foreign bank insufficient for jurisdiction and "were incidental consequences of fulfilling a foreign contract and are insufficient to 'project' the Foreign Defendants into New York.").

precisely the type of foreseeability that the Supreme Court rejected in its subsequent decision in

*Walden* as a basis for jurisdiction.[6]

Similarly, *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 190-92 (Bankr.

S.D.N.Y. 2018), does not support a finding of minimum contacts based on knowledge of Fairfield

Sentry's investment in New York-based BLMIS. *BNP Paribas* is readily distinguishable, including

by the fact, emphasized by Judge Bernstein, that many of the subsequent transfers alleged in that

case "were largely the result of" the activities in New York of BNP Paribas's Fund Derivative

Group, "which operated from New York." 594 B.R. at 192. In contrast, the Trustee does not allege

that Banca Carige engaged in any comparable activities in New York in connection with its

redemption.

*Third,* the Trustee's suggestion that money placed with the Fairfield Sentry may have been

— but was not necessarily — invested by Fairfield Sentry in BLMIS is not a basis for asserting

personal jurisdiction over investors in Fairfield Sentry's funds; it is nothing more than the type of

"stream of commerce" theory of personal jurisdiction rejected by the Supreme Court. *See J.*

*McIntyre Mach., Ltd v. Nicastro,* 564 U.S. 873, 882, 886 (2011) ("[I]t is not enough that [a]

defendant might have predicted that its goods will reach the forum," but rather the defendant must

"engage[] in conduct purposefully directed at [the forum].");[7] *In re Mexican Gov't Bonds Antitrust*

---

[6]     The *BLI* defendant's argument on specific jurisdiction was limited to two pages asserting that it had no control over how Fairfield Sentry invested its subscription monies and that it could not reasonably be subjected to suit in New York because its investment just happened to "end up" with BLMIS. *See BLI*, Adv. No. 11-2732 (Bankr. S.D.N.Y.), ECF 10, at 10-11. The briefing in *BLI* made it appear that the dispositive issue was whether the defendant's investment ended up in a BLMIS account "merely . . . as a result of happenstance or coincidence," *BLI*, 480 B.R. at 517, or whether the Trustee adequately alleged that the defendant knew that Fairfield Sentry's investment strategy consisted of placing money with BLMIS. Here, Banca Carige's argument is instead that knowledge of what another party such as Fairfield Sentry did (or said it was going to do) in the forum is jurisdictionally irrelevant under *Walden* and many other cases never presented to Judge Lifland.

[7]     In *McIntyre,* a worker at a scrap metal business in New Jersey hurt himself while using one of the U.K. defendant's machines and sued in New Jersey. 564 U.S. at 878. The Court held that personal jurisdiction in New Jersey was lacking because the defendant did not purposefully direct its conduct at the forum. *Id.* This was so despite evidence that there was a high likelihood that the machines would have been used in New Jersey. *See id.* at 895 (Ginsburg, J., dissenting). Similarly, here, even if it were foreseeable that investments would be made in New York-based BLMIS, Banca Carige did not purposely direct its conduct to New York — but instead to the BVI.

*Litig.,* 2020 WL 7046837, at *3-4 (S.D.N.Y. Nov. 30, 2020) (holding neither an attempt to profit

from conduct underlying *claim* nor foreseeability of a harm in forum were sufficient to establish

jurisdiction in absence of a defendant's contact with forum).

### 2.    The Jurisdiction Provision in The Subscription Agreement Does Not Support Jurisdiction In New York.

While parties may consent to personal jurisdiction by entering into contracts with forum

selection clauses, any such consent is limited by the scope of the forum selection clause. *See Am.*

*S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*, 2012 WL 527209, at *2–3

(S.D.N.Y. Feb. 17, 2012) (Parties can consent to personal jurisdiction through forum-selection

clauses in contractual agreements… [but a] party seeking to enforce a forum selection clause must

demonstrate that:  (1) the clause was reasonably communicated to the party resisting enforcement;

(2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in

the suit are subject to the forum selection clause.) (quotations omitted) (collecting cases). *See also*

*Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 645–46 (S.D.N.Y. 2008) ("Where…the rights being

asserted do not originate from the contract containing the forum selection clause, the clause does

not apply.") (collecting cases); *PATRICIA YAK, v. BIGGERPOCKETS, L.L.C., CRAIG CURELOP*,

2022 WL 67740, at *3 (2d Cir. Jan. 7, 2022) ("…we have consistently held that forum selection

and choice-of-law clauses like the one contained in the [engagement letter contract] are not broad

enough to reach claims that are only incidental to the contractual relationship.").

Furthermore, since neither BLMIS nor the Trustee are parties to the Subscription

Agreement, they cannot assert jurisdiction based on that agreement.  Notably, none of the rare

exceptions triggering application of a forum selection clause to a non-party are present in this

proceeding.  *See Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701–02 (2d Cir. 2009)

(finding that non-signatories to an agreement cannot be bound by agreement's forum selection

clause absent rare exceptions not applicable here).  Moreover, as Judge Bernstein held in *Fairfield,*

the Subscription Agreements does not cover claims and disputes relating to redemption payments.

*Fairfield* at *31.

The Subscription Agreement contains the following provision:

New York Courts. Subscriber agrees that any suit, action or proceeding ("Proceeding") with respect to this Agreement and the Fund may be brought in New York. Subscriber irrevocably submits to the jurisdiction of the New York courts with respect to any Proceeding and consents that service of process as provided by New York law may be made upon Subscriber in such Proceeding, and may not claim that a Proceeding has been brought in an inconvenient forum.

Subscription Agreement at ¶ 19.  In *Fairfield*, Judge Bernstein held, in the context of the

Fairfield Sentry Chapter 15 proceeding, that the forum selection provision applied to claims by the

Fairfield Sentry Liquidator that are "with respect to this Agreement *and* Fund."  *Id.* at 26-27. The

Court further determined that because the claims asserted by the Liquidator in the Fairfield cases

were based on redemption payments that did not arise out of the Subscription Agreement, the

consent to jurisdiction was inapplicable and did not confer jurisdiction on the New York courts.

*Id.*at 32.  Here, it indisputable that the claims asserted by the Trustee are not based on the

Subscription Agreement and, moreover, are being asserted by the Trustee, who is not a party to the

Subscription Agreement.  Accordingly, the Subscription Agreement is not a basis for asserting

jurisdiction over Carige in this action.[8]

### 3.    Use Of A Correspondent Account Does Not Support Minimum Contacts.

The Trustee also claims that minimum contacts are established based on the allegation that

Banca Carige made its investment by wiring funds to Fairfield Sentry "through" a bank in New

York.  The Trustee may also seek to assert jurisdiction of the ground that the redemption payment

---

[8]        The Trustee also alleges "[u]pon information and belief" that Banca Carige "had" a copy of the Subscription Agreement" sent to New York but provides no factual basis for this allegation.  Compl. ¶ 6.  However, even if true, this allegation would provide no basis for jurisdiction in New York.  *See Kimco Exch. Place Corp. v. Thomas Benz, Inc.*, 34 A.D.3d 433, 434 (2d Dep't 2006) ("The defendants' acts of faxing the executed contracts to New York . . . do not qualify as purposeful acts constituting the transacting of business.").

made by Fairfield Sentry went through a correspondent bank account in the United States on its way to Banca Carige in Italy. This argument does not support the exercise of personal jurisdiction.

Foreign financial institutions often use correspondent accounts to receive U.S. dollar-denominated payments. Here, the payments to and from Fairfield Sentry traveled to and from Fairfield Sentry in the BVI to Banca Carige in Italy by way of a U.S.-based correspondent account to facilitate clearing the U.S. dollar transactions. Moving Decl. ¶ 11, 12, Exhibit 3.

Receiving payments at a U.S.-based correspondent bank account is insufficient to establish personal jurisdiction in this case. The incidental use of a bank account in the United States to facilitate U.S. dollar-denominated payments to settle a foreign securities transaction — here, the investment in and the redemption of shares in a BVI company by its Italian shareholder — does not, as a matter of controlling law, give rise to personal jurisdiction. To the extent the payments transited through a U.S.-based account during the course of those transactions, it was solely for the purpose of facilitating that transfer in U.S. dollars under a foreign contract. The mere use of a correspondent account by a foreign bank to clear transfers denominated in U.S. dollars does not, as a matter of law, confer jurisdiction over the foreign bank. *See Hau Yin To v. HSBC Holdings, PLC,* 2017 WL 816136, at *6. (S.D.N.Y. Mar. 1, 2017), *aff'd,* 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank plc,* 207 F.Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract…insufficient to 'project' the Foreign Defendants into New York" and not amounting "to 'purposeful availment' of the laws of [the forum]"); *Tamam v. Fransabank Sal,* 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.") (collecting cases).

15

Hundreds of thousands of foreign dollar transactions valued at over $1.5 trillion are cleared in New York each day. *See generally Jesner v. Arab Bank, PLC,* 138 S. Ct. 1386, 1395 (2018) ("In New York each day, on average, about 440,000 of these transfers [Clearing House Interbank Payments System (CHIPS) — the system used for most large banking transactions], occur, in dollar amounts totaling about $1.5 trillion."). Were the incidental use of U.S.-based accounts sufficient to confer personal jurisdiction over foreign entities, New York would become a forum for any foreign commercial dispute, contrary to federal and state policy, merely because global transactions are frequently cleared in U.S. dollars in New York. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.,* 12 N.E.3d 456, 459-60 (N.Y. 2014) ("Our state's interest in the integrity of its banks…is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *see also Universal Trading & Inv. Co. v. Tymoshenko,* 2012 WL 6186471, at *3 (S.D.N.Y. 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on... a correspondent bank account.") (internal quotation marks omitted).

The Trustee may argue based on *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161 (2d Cir. 2013) and similar cases, that use of a correspondent account in the United States is itself sufficient to establish specific jurisdiction over Banca Carige, but in *Licci* the Second Circuit concluded that wire transfers from a correspondent bank account could establish personal jurisdiction when the transfers are part of the "principal wrong" alleged. *Id.* at 170-71. The principal wrong in that case was the intentional use of a correspondent account to fund terrorist activity in violation of statutory duties in antiterrorism laws. *Id.* at 171.

Here, there is no allegation that the transmission of funds through correspondent accounts is the principal wrong that forms the basis for the Trustee's suit. In fact, the Trustee alleges no fraudulent scheme or breach of duty by Banca Carige at all. The Trustee brings a narrow, statutory claim to avoid

16

a subsequent transfer.  If money passed through a correspondent account in the United States, the use

of such account is entirely incidental to the Trustee's claims and accordingly is insufficient to establish

jurisdiction.  *See Hau Yin To,* 2017 WL 816136, at *7 n. 6 (finding use of correspondent account

incidental).

**B.    The Exercise of Personal Jurisdiction over Banca Carige Would Be
Unreasonable.**

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to be

consistent with due process.  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)

("The Due Process Clause ... gives a degree of predictability to the legal system that allows potential

defendants to structure their primary conduct with some minimum assurance as to where that conduct

will and will not render them liable to suit.") (citation omitted).  Courts apply a "sliding scale" in

assessing whether jurisdiction is consistent with due process: "the weaker the plaintiff's showing on

minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat

jurisdiction." *LaMonica v. CEVA Grp., PLC (In re CIL Ltd.),* 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018)

(internal quotation marks and citation omitted); *see also Porina v. Marward Shipping Co.,* 2006 WL

2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f a defendant's contacts with the United States are weak,

the plaintiff has to make a stronger showing of reasonableness in order to show that jurisdiction over

the defendant is proper.").  In evaluating the reasonableness of exercising personal jurisdiction, "[a]

court must consider the burden on defendant, the interests of the forum State, and the plaintiff's interest

in obtaining relief." *Asahi,* 480 U.S. at 113.

The Trustee here seeks to rely on the most incidental of contacts to establish jurisdiction.  *See

supra,* Pt. A.  Even if those contacts are deemed sufficient, which they should not be, the Trustee must

therefore make a *stronger showing* that the exercise of jurisdiction would be reasonable, but each of the

factors that the Court must assess in weighing reasonableness weigh *against* jurisdiction:  the burden on

Banca Carige in litigating here is high, and the Trustee cannot show that New York is more reasonable than

other available fora, including Italy where Banca Carige has its principal place of business. Because the alleged contacts are insignificant and all of the reasonableness factors weigh against jurisdiction, the Court should dismiss the claim against Banca Carige.

Courts have held that defendants should be dismissed in circumstances like this, where even assuming defendants' contacts with the forum only "'barely satisf[y] the minimum contacts standard'" — and Banca Carige's do not — "a majority of the reasonableness factors weigh against the exercise of jurisdiction." *Rocky Mountain Chocolate Factory v. Arellano,* 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017) (citation omitted); *see also Benton v. Cameco Corp.,* 375 F.3d 1070, 1080 (10th Cir. 2004) (The defendant's "contacts with [the forum] were quite limited, barely satisfying the minimum contacts standard. As a result, [the defendant] need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry… Because the majority of the... reasonableness factors weigh in [the defendant's] favor, ... exercise of personal jurisdiction over [the defendant]... would offend traditional notions of fair play and substantial justice."); *Manko Window Systems, Inc. v. Prestik,* 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017) ("[B]ecause [the defendant's] contacts with [the forum] are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction, the Court grants Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)."). Given this bright-line case law, the same result is warranted here.

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.    The Complaint Fails to Plead the Avoidance or Avoidability of the Initial Transfers.

To recover from a mediate transferee, the Trustee must prove, among other things, an initial transfer that is avoided (sec. 550(a)) or at least avoidable. 11 U.S.C. § 550(a); *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2013 U.S. Dist. LEXIS 56042 *40-*41 (S.D.N.Y. Apr.

15, 2013).  In his Complaint, the Trustee attempts to plead an avoidable initial transfer from BLMIS

to Fairfield Sentry by only the following single allegation:

> 34. The Trustee has filed an adversary proceeding against Fairfield Sentry and
> other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield
> Sentry Limited, et al.*, Adv. Pro. No. 09-01239 (BRL) in which, in part, the Trustee
> sought to avoid and recover initial transfers of Customer Property, from BLMIS to
> Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended
> Complaint").  The Trustee incorporates by reference the allegations contained in the
> Fairfield Amended Complaint as if fully set forth herein.[9]

Compl. ¶ 34.  If that allegation does not adequately plead an avoidable initial transfer, then

the Trustee's Complaint is missing an essential allegation and must be dismissed for failure to state

a claim on which relief may be granted.

Rule 10(c) of the Federal Rules of Civil Procedure provides, "[a] statement in a pleading

may be adopted by reference elsewhere in the same pleading or in any other pleading." The Rule

"eliminates redundancy and repetition."  2 Moore's Federal Practice–Civil § 10.04[1] (2021) (*citing

Brause v. Travelers Fire Ins. Co.*, 19 F.R.D. 231, 234 (S.D.N.Y. 1956)).  For example, the common

practice of adopting by reference the general and background allegations of a complaint into the

specific claims for relief obviates the need to repeat the lengthy general and background allegations.

Similarly, an answer in responding to general and background allegations may incorporate by

reference into each claim for relief the responses to the general and background allegations.

However, the authority to adopt by reference is limited.  Although Rule 10(c) does not

address the practice, the courts have generally held that a pleading in one action may not adopt by

reference the pleadings in a different action.  *Texas Water Supply Corp. v. R. F. C.*, 204 F.2d 190,

196 (5th Cir. 1953); *NCUA Bd. v. Morgan Stanley & Co.*, 2014 U.S. Dist. LEXIS 58751 (S.D.N.Y.

Apr. 28, 2014) (citing Charles Alan Wright & Arthur R. Miller, et al., 5A Fed. Prac. & Proc. Civ.

---

[9]    The Trustee has since superseded the Fairfield Amended Complaint by filing a second amended complaint
(the "Second Fairfield Amended Complaint") in that adversary proceeding.  *See Picard v. Fairfield Sentry Ltd.*, Adv.
Pro. No. 09-01239 (CMG) [ECF 286], dated Aug. 28, 2020.

§ 1326 (3d ed. 2013)); *see Davis v. Bifani*, 2007 U.S. Dist. LEXIS 30080, *3, 2007 WL 1216518 (D. Colo. April 24, 2007) (noting it is improper "to incorporate by reference wholesale the allegations in a complaint in a completely separate action, even if that action is between the same parties," but striking the incorporation by reference for violation of Rule 8(a)); *Muth v. Dechert, Price & Rhoads*, 391 F. Supp. 935, 938 (E.D. Pa. 1975); 2 Moore's Federal Practice - Civil § 10.04[3] (2021).

One bankruptcy court permitted adoption by reference of pleadings in one adversary proceeding into the pleadings of another adversary proceeding on the ground that the bankruptcy case itself was a single action because it was the umbrella under which all other proceedings took place. *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010). However, that approach mixes terminology used in the Federal Rules of Civil Procedure with different terminology used in the Federal Rules of Bankruptcy Procedure. Part VII of the Bankruptcy Rules, which applies to adversary proceedings, treats each adversary proceeding as a separate proceeding, analogous to a civil action under the Civil Rules, lessening the force of that precedent. *Compare* 28 U.S.C. § 1334(a) (jurisdiction over "cases" under title 11) *with id.* § 1334(b) (jurisdiction over "proceedings" arising in or related to cases under title 11).

Moreover, the *Geiger* court granted the defendant's motion to dismiss the complaint that incorporated the prior pleading because the complaint did not comply with Rule 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[each] allegation must be simple, concise, and direct." Civil Rules 8(a)(2), (d)(1), incorporated by reference in Bankruptcy Rule 7008; *Geiger*, 446 B.R. at 679.

Even where adoption by reference, whether from the same adversary proceeding or another, is expressly permitted, the resulting pleading must be clear and concise, *In re Geiger*, *supra* at 679, and the adoption must be "with a degree of specificity and clarity which would enable the

responding party to easily determine the nature and extent of the incorporation." *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 229 (W.D. La. 1999). Also, "[t]he reference must be clear and specific and must specifically identify the statements incorporated." 2 Moore's Federal Practice - Civil § 10.04[1] (2021) (citing *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992)).

Not only must the resulting pleading be clear, concise and specific, the incorporation "must specifically identify which portions of the prior pleading are adopted." *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995). Rule 10(c) permits only adoption by reference of a "statement in a pleading," not of entire pleadings. *Muhammad v. Bethel-Muhammad*, 2012 U.S. Dist. LEXIS 70330, *8 (S.D. Ala. May 21, 2012) (condemning "sweeping reference to his 100-page complaint"). The requirement that references be explicit and direct is not merely for the sake of form; importantly, it "enable[s] the responding party to ascertain the nature and extent of the incorporation." *Ghazzaoui v. Anne Arundel Cty.*, 2014 U.S. Dist. LEXIS 111558, *12 (D. Md. Aug. 11, 2014).

This requirement of clarity ensures fairness to the responding party, for without clarity, incorporations "may prove confusing and inconvenient." 5A Wright & Miller, *supra,* § 1326. And the risk of such confusion and inconvenience is particularly high where, as here, a party seeks wholesale incorporation in an amended pleading of a superseded version of that same pleading. This is so because "[a]s a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" *Young v. City of Mount Ranier,* 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),* 226 F.3d 160, 162 (2d Cir. 2000)). This general rule, like Rule 10(c)'s clarity requirement, also has fairness as its purpose, for it breeds confusion and uncertainty if in responding to an amended pleading, a party is required to take into account a number of other, superseded pleadings. The risk

21

of confusion is especially high with respect to a complaint, which serves as the "pleading that starts a civil action and states ... the basis for the plaintiff's claim [ ] and the demand for relief." *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446-47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010) (citing *Black's Law Dictionary* (8th ed. 2004) (defining "complaint")). Thus, a "Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite "guidance to the responding party." *Nycomed US, Inc. v. Glenmark Generics, Ltd.*, 2010 U.S. Dist. LEXIS 29267, *12–13 (E.D.N.Y. Mar. 26, 2010) (internal quotes omitted).

The District Court for the Eastern District of New York synthesized these factors in dismissing a complaint that relied on numerous prior pleadings. In *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007), the Government brought a complex civil RICO action against defendants alleged to be involved in organized crime. To plead elements of the alleged predicate acts required for a RICO action, the complaint attached as exhibits the pleadings of several prior criminal and civil actions against some of the same defendants. The court rejected the attempt to rely on the prior pleadings. First, the complaint did not aver that it was incorporating the prior pleadings by reference; it only attached them as exhibits and referred to them in the body of the complaint: "[t]he Government's failure to specifically identify which portions of the hundreds of pages of exhibits it intends to incorporate by reference into the Amended Complaint makes it impossible for the Court or the defendants to ascertain the nature and extent of the incorporation, and the purported incorporation is therefore invalid." *Id.* at 462. Second, even if the exhibits in their entirety had been expressly incorporated, the wholesale incorporation of the prior pleadings is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plaint statement of the claim,'" and it would have rendered the complaint "utterly incoherent" and "an unintelligible morass of self-contradictory allegations." *Id.* at 462, n. 72, 463 (citing *Salahuddin v.*

22

*Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (Rule 8(a)'s purpose is to give the adverse party fair notice of the claim asserted.)).  Finally, the court noted that if the incorporation was accepted, the defendants would have been required to respond not only to the 85-page complaint, but also to every paragraph in the 400 pages of exhibits.  *Id.* at 464.

In this case, the Trustee pleads the avoidability of the initial transfers from BLMIS to Fairfield Sentry solely by incorporating by reference "the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."  Complaint, ¶ 34.  The attempt to incorporate by reference all 798 paragraphs of a 217-page complaint (not including exhibits) into what would otherwise be a 12-page complaint violates all the principles set forth above.  It incorporates by reference a pleading from another action.  It incorporates an entire pleading, not the statements in a pleading. It does not specify which allegations (other than "all") are incorporated.  Because the Amended Fairfield Complaint asserts claims against numerous defendants other than Fairfield Sentry and against Fairfield Sentry for more than the avoidance of the transfers that would beat issue in this adversary proceeding, including turnover and accounting, preference, subsequent transfer to other defendants, unjust enrichment, conversion, money had and received, aiding and abetting fraud and breach of fiduciary duty, and objections to the allowance of other claims, the incorporation does not contain a short and plain statement of the claim—avoidability—entitling the Trustee to relief.  Also, it would require the defendant to answer all the allegations in all 798 paragraphs, even those that have nothing to do with the claim in this adversary proceeding.  It incorporates a pleading that has been superseded by a further amended complaint, removing numerous allegations and claims, which defendant would be required to answer if the incorporation were permitted to stand.  Once a pleading is amended, the prior pleading becomes a nullity, so defendant would be required to respond to a pleading that is no longer operative.  Even if defendant could respond to the Amended Fairfield Complaint, the result would be to expand the scope of this

adversary proceeding well beyond the claims asserted in the complaint for recovery of subsequent transfers of allegedly avoidable transfers of BLMIS customer property.  The Trustee does not assert liability of Defendant Banca Carige for any of the Trustee's claims against any of the defendants named in the Amended Fairfield Complaint, and the Defendant should not be required to address those claims and all the associated discovery and trial time.

For these reasons, the Court should disregard the Trustee's attempt to incorporate the Amended Fairfield Complaint by reference.  And, without that allegation, the Complaint fails to plead an essential element of the claim to recover subsequent transfers—avoidability of the initial transfers—and should be dismissed.

## B.     The Complaint Does Not Sufficiently Allege That Banca Carige Received BLMIS Customer Property.

Even if the Trustee was permitted to rely on the Fairfield Amended Complaint, the Complaint does not sufficiently allege that the $10,532,489 million Banca Carige received from Fairfield Sentry on October 16, 2007 was a subsequent transfer of BLMIS customer property fraudulently transferred from BLMIS to Fairfield Sentry.  *See* 15 U.S.C. § 78fff-2(c)(3) ("the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11"); *see also*, 11 U.S.C. § 550(a).

At most, all the Complaint could attempt to allege based on the Fairfield Amended Complaint is that during the six years preceding the petition date, BLMIS transferred approximately $3 billion to Fairfield Sentry, and that "[a] portion of [those transfers] was subsequently transferred either directly or indirectly to, or for the benefit of," Banca Carige.  Compl. ¶¶ 34, 40.  Although one of the Complaint's exhibits contains 75 pages of small type listing thousands of transactions recorded in Fairfield Sentry's accounts at BLMIS, *id.* Ex. B, it fails to identify which, if any, of these transactions constituted initial transfers of BLMIS customer property that were allegedly

subsequently transferred to Banca Carige.  Essentially, the Trustee is asking the Court to infer that

because BLMIS transferred a large amount of money to Fairfield Sentry over a long period of time,

to the extent Fairfield Sentry transferred money during that time to Banca Carige, *all* of that money

*must* have come from BLMIS.  Such reason is based on blatant, unsupported presumption.

As the Supreme Court has made clear, the Federal Rules of Civil Procedure do not permit

such speculative and conclusory pleading.  To survive a motion to dismiss, a claim must not merely

be possible, but must be plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007).  As this Court stated in *Picard v. Shapiro (In*

*re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015), barebones allegations

that customer funds were transferred to the subsequent transferee do not suffice to make the claim

plausible:

> "The Trustee must allege facts that support the inference that the funds at issue
> originated with . . . BLMIS, and contain the 'necessary vital statistics'—the 'who,
> when, and how much' of the transfers to establish that an entity was a subsequent
> transferee of the funds.  At the pleading stage, the Trustee is not required to provide
> a 'dollar-for-dollar accounting' of the exact funds at issue.  However, barebones
> allegations that the funds at issue were transferred to the Subsequent Transferees,
> without more detail, are insufficient." *Id*. at 119.

In *Shapiro*, the Court dismissed a conclusory subsequent transferee claim, noting that the

complaint "does not tie any initial transfer to any subsequent transfer or Subsequent Transferee."

*Id*.  The same is true for the instant Complaint, which does not tie the Banca Carige transfer to any

particular transfer from BLMIS to Fairfield Sentry.  *See also Angell v. Ber Care, Inc. (In re*

*Caremerica, Inc.)*, 409 B.R. 737, 750-51 (Bankr. E.D.N.C. 2009).

The Trustee's failure to tie the Banca Carige transfer to any particular transfer from BLMIS

to Fairfield Sentry cannot be excused on the ground that the Trustee lacks access to sufficient

information, *cf. In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117, 151 (Bankr. S.D.N.Y. 2014)

(granting Trustee "greater latitude" in pleading the required tie in case where the "subsequent

transfer claim must ultimately be proved through the books and records of the defendants")
(quotations omitted), inasmuch as the Trustee, by virtue of the document-sharing provisions of the
Fairfield Settlement Agreement, had access to Fairfield Sentry's records at the time he filed the
Complaint and for nearly a decade since.  *See* Fairfield Settlement Agreement, Case No. 09-1239
[ECF 69-2], ¶ 14 (Trustee and Liquidators "each agree to provide reasonable access to the other's
documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing
Claims.").

The Complaint's conclusory allegation that Banca Carige's redemption from Fairfield
Sentry consisted solely of BLMIS customer property is, moreover, not plausible.  First, Fairfield
Sentry had sources of funds aside from BLMIS.  The most obvious source are subscription monies
received from other investors.  In fact, Fairfield Sentry has stated that "[f]rom time to time, to make
Redemption Payments, [Fairfield] Sentry…. utilized subscription monies of other investors on hand
that were directed for investment in BLMIS."  First Am. Compl. ¶ 63, *Fairfield Sentry Ltd. v. Citco
Global Custody NV*, No. 19-1122 [ECF 19] (Bankr. S.D.N.Y. Nov. 26, 2019).  This procedure made
perfect sense; there would have been no point in sending money to BLMIS while simultaneously
withdrawing a lesser amount.

The Trustee may point out that <u>Exhibit B</u> to the Complaint identifies a $95 million transfer
from BLMIS to Fairfield Sentry on October 3, 2007 and argue that it was plausible that such transfer
was the source of the transfer to Banca Carige, made less than two weeks later.  However, other
pleadings filed by the Trustee in these proceedings show that the withdrawals from Fairfield Sentry
from October 3, 2007 through October 16, 2007 exceeded $140 million.  Mark Decl. Exhibit A.  It
is therefore implausible that the $95 million transfer from BLMIS on October 3, 2007 was the sole
source of the alleged subsequent transfer to Banca Carige on October 16, 2007.

Accordingly, the Trustee's conclusory allegation that the money sent by Fairfield Sentry to

Banca Carige all came from BLMIS is implausible in light of the Trustee's otherwise detailed, specific allegations of cash flows into and out of Fairfield Sentry and cannot be credited on a motion to dismiss.  Put another way, because "[t]here is an 'obvious alternative explanation'" for the source of Banca Carige's redemption, "that explanation renders [the Trustee's] competing explanation 'conceivable but not plausible.'"  *Garfinkle v. Conference on Jewish Material Claims Against Germany, Inc.*, 2020 WL 6323462, at *5 (S.D.N.Y. Oct. 28, 2020) (incorporating the *Garfinkle* Court's reasoning to the issue-at-hand).  In sum, the Trustee's customer property allegations concerning Banca Carige do not meet the *Iqbal-Twombly* plausibility standard and must be dismissed.

[*Remainder of page intentionally left blank*]

## CONCLUSION

For the foregoing reasons, Banca Carige respectfully requests that the Court enter an order

dismissing for lack of personal jurisdiction and for failure to state a claim.


Dated:   New York, New York
        January 28, 2022

                                        Respectfully submitted,

                                        **KASOWITZ, BENSON, TORRES LLP**

                                        By: /s/ *David J. Mark*_____
                                            David J. Mark
                                            1633 Broadway
                                            New York, New York 10019
                                            (212) 506-1700

                                        *Attorneys for Defendant Banca Carige S.p.A.*

28