**Hearing Date: May 18, 2022, 10:00 a.m.**
**Objections Date: March 29, 2022**
**Reply Date: April 28, 2022**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01693 (CGM) |
| v. | |
| BANQUE LOMBARD ODIER & CIE SA, | |
| Defendant. | |

**BANQUE LOMBARD ODIER & CIE S.A.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 4

    A.    Background ...................................................................................... 4

    B.    The Trustee's Actions Against the Fairfield Funds ................................. 5

    C.    The Actions Brought by the Fairfield Liquidators.................................. 6

    D.    The Present Complaint against Lombard Odier...................................... 8

        i.    Overview of the Trustee's Claims ............................................. 8

        ii.    The Trustee's Insufficient Jurisdictional Allegations .............................. 10

        iii.    The Subsequent Transfers Were Received in Foreign Accounts .................................................................... 11

    E.    The Trustee's Complaints Against Other Alleged Subsequent Transferees .................................................................... 12

ARGUMENT ...................................................................................... 12

I.    THE TRUSTEE CANNOT ESTABLISH PERSONAL JURISDICTION OVER LOMBARD ODIER ........................................................ 12

    A.    The Trustee Does Not Allege that the Subsequent Transfers Were Received in Accounts in New York.................................... 14

    B.    The Alleged Foreseeability of the Fairfield Funds' Investment in BLMIS Does Not Establish Personal Jurisdiction over Lombard Odier ...................................................................... 15

    C.    The Subscription Agreement Cannot Subject Lombard Odier to this Court's Personal Jurisdiction ......................................... 17

    D.    The Trustee's Miscellaneous Jurisdictional Allegations Also Fail...................... 18

    E.    The Exercise of Personal Jurisdiction over Lombard Odier Would Not Comport with Due Process ......................................... 20

II.    THE COMPLAINT FAILS TO PLEAD ADEQUATELY THAT LOMBARD ODIER RECEIVED CUSTOMER PROPERTY ....................... 21

i

A.  The Trustee Has Not Plausibly Alleged That Any of the Alleged
    Subsequent Transfers Contain Customer Property ............................................... 21

B.  The Trustee's Complaint Seeks to Recover Transfers Made by
    Sentry at Times When the Trustee Alleges There was no Money
    Left From BLMIS ............................................................................................... 26

III.  RECOVERY OF ALLEGED SUBSEQUENT TRANSFERS OF INITIAL
    TRANSFERS MADE OUTSIDE THE TWO-YEAR LOOKBACK IS
    BARRED BY THE SAFE HARBOR OF 11 U.S.C. § 546(E) ........................................ 28

A.  The Alleged Initial Transfers Were Made by, to, or for the Benefit
    of, a Covered Entity .......................................................................................... 30

    1.  The Alleged Initial Transfers Were Made by a Stockbroker .................... 30

    2.  The Alleged Initial Transfers Were Made to a Financial
        Institution ................................................................................................. 30

    3.  The Alleged Initial Transfers Were Allegedly Made "for
        the Benefit of" a Financial Institution, Lombard Odier ........................... 31

B.  The Alleged Initial Transfers Were Settlement Payments and Made
    "in Connection With" a Securities Contract ........................................................ 33

IV.  THE COMPLAINT FAILS TO CONTAIN A "SHORT AND PLAIN
    STATEMENT OF THE CLAIM" .................................................................................. 36

CONCLUSION ............................................................................................................. 37

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Al Rushaid v. Pictet & Cie*,
28 N.Y.3d 316 (2016) ................................................................................. 18

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) ...................................................................... 20

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*,
480 U.S. 102 (1987) .................................................................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................. 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 21, 26

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) ...................................................................... 13

*Burger King v. Rudzewicz*,
471 U.S. 462 (1985) .................................................................................. 21

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
651 F.3d 329 (2d Cir. 2011) ...................................................................... 35

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .................................................................................. 13

*DiStefano v. Carozzi N. Am., Inc.*,
286 F.3d 81 (2d Cir. 2001) ........................................................................ 13

*Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*,
No. 19-cv-03911-VSB 24 (S.D.N.Y. July 21, 2021) ............................. 15, 16

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,
[2014] UKPC 9 ...................................................................................... 7, 33

*Hau Yin To v. HSBC Holdings PLC*,
No. 15CV3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ..................... 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) .................................................................................. 15

*Hill v. HSBC Bank plc*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016)........................................................................ 18, 19

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,
No. 19-CV-6046, 2020 WL 1166053 (S.D.N.Y. Mar. 11, 2020) ................................. 14

*HSBC Holdings PLC v. Picard*,
140 S. Ct. 2824 (2020)................................................................................................... 5

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*,
773 F.3d 411, (2d Cir. 2014)................................................................................. passim

*In re Bernard L. Madoff Inv. Sec. LLC*,
12 F.4th 171, (2d Cir. 2021) ......................................................................................... 29

*In re Bernard L. Madoff Inv. Sec. LLC*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014)..................................................................... 25, 27

*In re Bernard L. Madoff Inv. Sec. LLC*,
525 B.R. 871 (Bankr. S.D.N.Y. 2015)........................................................................... 19

*In re Bernard L. Madoff Inv. Sec. LLC*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015)..................................................................... 21, 22

*In re CIL Ltd.*,
582 B.R. 46, (Bankr. S.D.N.Y. 2018) ............................................................................. 9

*In re Fairfield Sentry Ltd.*,
596 B.R. 275 (Bankr. S.D.N.Y. 2018) ............................................................................ 8

*In re Fairfield Sentry Ltd.*,
No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)....................... 15, 17

*In re Fairfield Sentry Ltd.*,
No. 10-13164, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ............... 8, 30, 31

*In re Khan*,
No. 10-46901, 2014 WL 4956676 (Bankr. E.D.N.Y. Sept. 30, 2014) ......................... 27

*In re Lyondell Chem. Co.*,
543 B.R. 127 (Bankr. S.D.N.Y. 2016) .......................................................................... 13

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
917 F.3d 85 (2d Cir. 2019)............................................................................................. 5

*In re Trib. Co. Fraudulent Conv. Litig.*,
10 F.4th 147 (2d Cir. 2021) ......................................................................................... 33

*In re Tribune Co. Fraudulent Conv. Litig.*,
946 F.3d 66 (2d Cir. 2019)........................................................................................ 3, 29, 33

*Kennedy v. Mondelez Glob. LLC*,
No. 19-CV-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020).................................................. 28

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991).................................................................................................. 4

*Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*,
No. 20 CIV. 9993, 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021)............................................. 17

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*,
No. 03 CIV. 2936, 2004 WL 1620874 (S.D.N.Y. July 20, 2004) ............................................ 14

*New Hampshire v. Maine*,
532 U.S. 742 (2001)........................................................................................................... 31

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016)............................................................................................... 13

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)................................................................................................ 25

*Pyskaty v. Wide World of Cars, LLC*,
856 F.3d 216 (2d Cir. 2017)................................................................................................ 20

*Rose v. Goldman, Sachs & Co.*,
163 F. Supp. 2d 238 (S.D.N.Y. 2001).................................................................................. 20

*Sapia v. Home Box Off., Inc.*,
No. 18 CIV. 1317, 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018)............................................ 25

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
476 B.R. 715, 719 (S.D.N.Y. 2012)..................................................................................... 30

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ................................................................................ 21

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
505 B.R. 135 (S.D.N.Y. 2013)............................................................................................ 32

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018)............................................................................. 11, 14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........................................ passim

*See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
337 B.R. 791 (Bankr. S.D.N.Y. 2005) ......................................................................... 36

*SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*),
No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ............................. 4

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018) ................................................................................. 15, 18

*Sullivan v. Kodsi*,
373 F. Supp. 2d 302 (S.D.N.Y. 2005) ......................................................................... 21

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .................................................................................................... 31

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ...................................................................................................... 4

*U.S. v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ........................................................................ 37

*Verhagen v. Saperstein*,
No. 93 CIV. 7441, 1994 WL 330055 (S.D.N.Y. July 11, 1994) .................................. 26

*Walden v. Fiore*,
571 U.S. 277 (2014) ......................................................................................... 16, 19, 20

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) .................................................................................................... 20

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,
No. 19-CV-3444, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) .......................... 13, 18

<u>Statutes</u>

11 U.S.C. § 101(22)(A) ............................................................................................... 30

11 U.S.C. § 101(53A) ................................................................................................... 30

11 U.S.C. § 546(e) ................................................................................................. passim

11 U.S.C. § 548(a)(1)(A) ....................................................................................... 29, 36

11 U.S.C. § 550 ........................................................................................................... 21

11 U.S.C. § 550(a) ................................................................................................. 27, 28

11 U.S.C. § 551 ............................................................................................................. 9

11 U.S.C. § 741(7) ............................................................................................. 36

11 U.S.C. § 741(7)(A)(i) ................................................................................... 34

11 U.S.C. § 741(8) ............................................................................................. 36

15 U.S.C. § 78fff-2(c)(3) ............................................................................. 21, 24

Other Authorities

§ 278 of the New York Debtor & Creditor Law ................................................. 10

Rules

Fed. R. Civ. P. 8(a)(2) ....................................................................................... 26

Fed. R. Civ. P. 8(b)(1) ....................................................................................... 37

Federal Rule of Bankruptcy Procedure 7004 .................................................... 13

N.Y. C.P.L.R. § 302 (McKinney 2001) ............................................................. 13

Hearing Date: May 18, 2022, 10:00 a.m.
Objections Date: March 29, 2022
Reply Date: April 28, 2022

Defendant Banque Lombard Odier & Cie S.A. ("Lombard Odier" or "Defendant"), by its undersigned counsel, respectfully submits this memorandum of law in support of its motion to dismiss the Complaint (the "Complaint") of Irving Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

In the Trustee's pursuit of claims against alleged foreign subsequent transferees of the feeder funds Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda" and, together with Sentry and Sigma, the "Fairfield Funds"), he has asserted a right to "recover" every dollar ever received by anyone from any party with any connection to the Ponzi scheme run by Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Madoff"). In so alleging, the Trustee's Complaint flouts fundamental principles of jurisdictional Due Process, by seeking to hale into court a non-U.S. bank that engaged in no transactions in the United States, merely because the money it invested in a non-U.S. fund was (possibly) ultimately invested in the U.S. The Trustee also ignores principles of basic arithmetic, by improperly suing Lombard Odier for the recovery of so-called "subsequent transfers" it received from Sentry, when he simultaneously alleges that Sentry transferred to investors and others approximately $2 billion more of BLMIS customer property than Sentry ever received from BLMIS in alleged initial transfers. Further, the Trustee disregards the statutory safe harbor Congress created to promote certainty and finality in the securities markets, which bars the bulk of his subsequent transfer claims. Finally, the Trustee disregards Federal Rule of Civil Procedure 8(a)(2)'s pleading requirements and therefore leaves Lombard Odier to guess at what,

exactly, is the basis for the Trustee's claims. The Trustee's claims are fatally flawed and should be dismissed.

First, the Complaint's barebones allegations do not make out a prima facie case for personal jurisdiction over Lombard Odier. There are no allegations suggesting that the alleged subsequent transfers (redemptions) from which the Trustee's claims arise (and on which jurisdiction over Lombard Odier must be grounded) had any connection to New York (or the United States). Indeed, as the liquidators for the Fairfield Funds (the "Fairfield Liquidators") — on whose contacts **with Lombard Odier** the Trustee must rely to establish jurisdiction—have made clear, the redemptions occurred entirely outside the United States. None of the Complaint's other vague and speculative allegations supports jurisdiction over Lombard Odier for the Trustee's claims.

Second, basic arithmetic dictates that recoverable subsequent transfers from Sentry cannot exceed the approximately *$3 billion* in initial transfers BLMIS made to Sentry. In this and other proceedings, the Trustee nonetheless seeks to recover approximately *$5 billion* in claims from defendants that allegedly redeemed shares from Sentry or received other transfers from Sentry. That massive disparity alone renders the Trustee's subsequent transfer claims entirely implausible. Some of the specific transfers alleged in the Complaint drive home this point. For instance, the Trustee seeks to recover transfers from Sentry to Lombard Odier that were made in July 2004. This is a full year after Sentry had last received any funds from BLMIS, by which time, according to the Trustee's own allegations, Sentry had already transferred all of those funds from BLMIS to other recipients; this means that any transfer to Lombard Odier could not possibly have included BLMIS customer funds. Such allegations violate the most basic pleading standards, which demand that the Trustee tie all subsequent

2

transfers he seeks to recover to an initial transfer (which he also fails to do), and that those ties be plausible. The Trustee's pleading failures are even more striking because, for over a decade, the Trustee has had the very records from Sentry and Sigma that would demonstrate which subsequent transfers contain money from Madoff, if any – and which did not. That the Trustee has nonetheless put forth such impossible allegations prevents Lombard Odier from evaluating the claims against it for purposes of defending or settling the litigation and requires that the Complaint be dismissed.

Third, Congress recognized the importance of certainty, speed and finality in securities transactions and thus created the safe harbor of 11 U.S.C. § 546(e). *See In re Tribune Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 90 (2d Cir. 2019), *cert. denied,* 141 S. Ct. 2552 (2021) (*"Tribune I"*) ("Unwinding settled securities transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and stability are necessary to attract capital."). As the Second Circuit has explained, "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411, 420 (2d Cir. 2014), *cert. denied*, 576 U.S. 1044 (2015) (*"Fishman"*) (citation omitted). Here, the alleged subsequent transfers that the Trustee seeks to recover were, according to his own allegations, settlement payments made by, to, or for the benefit of "covered entities" in connection with securities contracts. Despite this, and despite no allegation that Lombard Odier had any knowledge that Madoff was running a Ponzi scheme, the Trustee seeks to recover transfers as far back as 2003, which, if allowed, would lead to the very disruption of the securities market that the statute was designed to avoid.

3

<u>Finally</u>, Defendant is entitled to a "short and plain statement" of the claims against it. Instead, the Trustee's 16-page Complaint, which he has failed to amend for a decade, purports to "incorporate by reference" another 217-page complaint that was filed in another adversary proceeding and has since been amended, rendering the iteration purportedly incorporated into the Trustee's Complaint superseded and moot. This does not provide Lombard Odier with fair notice of the claims against it, and the Complaint should be dismissed on this basis as well.

## STATEMENT OF FACTS[1]

### A.    Background

From the 1990s through BLMIS's collapse in December 2008, Sentry sold shares directly to foreign investors. *See* First Amended Complaint (the "Trustee's Fairfield Amended Complaint"), *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. 09-01239 (Bankr. S.D.N.Y.) (the "Fairfield Action"), Dkt. No. 23 ¶¶ 32, 33 (Pincus Dec. Ex. 2). Sigma and Lambda were "feeder funds" for Sentry that also accepted investments in non-U.S. currency and then invested those funds in Sentry. Sentry in turn, invested with BLMIS. *See id.* ¶ 22; Compl. ¶ 2. This action is one of more than six dozen proceedings in which the Trustee seeks to recover from the defendants alleged payments they received when they redeemed shares in Sentry; here, the

---

[1] These facts are taken from allegations in the Complaint – which Defendant neither admits nor concedes – and documents incorporated by reference therein, as well as the Trustee's pleadings in other Madoff proceedings and other items of which the Court may take judicial notice. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789, 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021)) (on motion under Rule 12(b)(6), "courts must consider… matters of which a court may take judicial notice", quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Here, the Court may take judicial notice of the Trustee's pleadings in other adversary proceedings, and Lombard Odier respectfully requests that it do so. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings").

Trustee seeks to recover approximately $95 million that Lombard Odier received in redemptions from two of the Fairfield Funds, Sentry and Sigma.  Compl. ¶¶ 55-58.[2]

The Trustee's claims are best understood in the context of related proceedings, some initiated by the Trustee, and some by the Fairfield Liquidators.  We describe these briefly below.

### B.    The Trustee's Actions Against the Fairfield Funds

Madoff's massive fraud was revealed in December 2008.  On or about May 18, 2009, the Trustee commenced an action against the Fairfield Funds and others seeking the avoidance and recovery of over $3.5 billion of initial transfers they received from BLMIS.  Trustee's Twenty-Sixth Interim Report for the Period April 1, 2021 through September 30, 2021, *In re Bernard L. Madoff Inv. Secs. LLC,* Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.), Dkt. No. 20821 ¶ 167.  On July 20, 2010, the Trustee filed the Trustee's Fairfield Amended Complaint in which he named additional defendants, including entities and individuals (the "FGG Defendants") associated with the Fairfield Greenwich Group ("FGG"), which formed, managed, and marketed the Fairfield Funds, alleging that BLMIS made approximately $3 billion in initial transfers to Sentry during the six-year look-back period, from December 11, 2002 to December 11, 2008.  Trustee's Fairfield Amended Complaint, Fairfield Action, Dkt. No. 23 ¶ 536 (Pincus Decl. Ex. 2).

On May 9, 2011, the Trustee settled with the Fairfield Liquidators.  *See* Settlement Agreement (the "Fairfield Settlement"), Fairfield Action, Dkt. No. 69-2 (Pincus Dec. Ex. 3).  On July 13, 2011, this Court entered consent judgments in favor of the Trustee against Sentry for $3.054 billion (Consent Judgment, Fairfield Action, Dkt. No. 109), Sigma for $752.3 million

---

[2] While the Complaint against Lombard Odier was initially dismissed under principles of comity, it was subsequently reinstated following appeal.  *See In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85 (2d Cir. 2019), *cert. denied sub. nom. HSBC Holdings PLC v. Picard*, 140 S. Ct. 2824 (2020).

(Consent Judgment, Fairfield Action, Dkt. No. 110) and Lambda for $52.9 million (Consent

Judgment, Fairfield Action, Dkt. No. 108).  In the Fairfield Settlement, the Trustee and the

Fairfield Liquidators "each agree[d] to provide reasonable access to the other's documents, data,

and other information relating to, or beneficial to the pursuit of, the Sharing Claims."  Fairfield

Settlement, Fairfield Action, Dkt. No. 69-2 ¶ 14 (Pincus Dec. Ex. 3).  "Sharing Claims" includes

the present action, as well as the Fairfield Liquidators' actions against Lombard Odier.  *Id*. ¶¶ 4,

7, 11.  The Trustee and the Fairfield Liquidators also each agreed to provide the other with

"reasonable cooperation and assistance … in connection with the prosecution of the Sharing

Claims".  *Id.* ¶ 14.  Thus, the Trustee has had access to Fairfield's documents and cooperation

(including, presumably, the documents pursuant to which the Trustee brought many of the Sentry

Redeemer Actions, including this one filed in 2012) since 2011.

On August 28, 2020, the Trustee filed a second amended complaint in the Fairfield

Action (Second Amended Complaint, Fairfield Action, Dkt. No. 286 (the "Second Amended

Complaint")), seeking to recover, as BLMIS customer property, *inter alia*, approximately $1

billion in amounts allegedly paid by Sentry to certain FGG Defendants (*i.e.*, one-third of the total

amount of customer property BLMIS allegedly transferred to Sentry).  *See* Exhibits 8, 10, 12, 13,

14 and 21 to the Second Amended Complaint, Fairfield Action, Dkt. Nos. 286-8, 286-10, 286-

12, 286-13, 286-14, 286-21 (Pincus Decl. Ex. 4).

### C.    The Actions Brought by the Fairfield Liquidators

Shortly after Madoff's fraud was revealed, the Fairfield Funds entered liquidation

proceedings before the Eastern Caribbean Supreme Court in the High Court of Justice of the

Virgin Islands.  Fairfield Settlement, Fairfield Action, Dkt. No. 69-2, at 2-3.  The Fairfield

Liquidators commenced actions in the British Virgin Islands ("BVI") against a number of the

Fairfield Funds' alleged investors, including Lombard Odier, seeking repayment of redemptions

6

payments made by the Funds to these investors prior to BLMIS's collapse.  *See* Exhibit G to the

Fairfield Settlement, Fairfield Action, Dkt. No. 69-9, at 6-7; *see also Fairfield Sentry Ltd. (In*

*Liquidation) v. Migani*, [2014] UKPC 9 ("*Migani*") (*available at*

https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf).  The Fairfield Liquidators

discontinued their claims in the BVI litigation following a final appellate decision in April 2014

issued by the U.K. Privy council in favor of defendants.  *See Migani*.

   Starting in or about April 2010, the Fairfield Liquidators had separately commenced

actions in New York against hundreds of the Funds' shareholders, including many that had been

sued unsuccessfully in the BVI.  *See* Exhibit G to the Fairfield Settlement, Fairfield Action, Dkt.

No. 69-9 (listing 209 actions seeking to recover redemption payments against Sentry investors

brought by the Fairfield Liquidators and pending as of May 11, 2009).[3]  Lombard Odier is named

as a defendant in three of these.  Fifth Amended Complaint*, Fairfield Sentry Ltd. (In*

*Liquidation), et al. v. ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03635 (Bankr. S.D.N.Y.)

(the "3635 Citco Brokerage Action"), Dkt. No. 620 (Pincus Decl. Ex. 7); Fifth Amended

Complaint*, Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.,* Adv.

Pro. No. 10-03636 (Bankr. S.D.N.Y.) (the "3636 Citco Brokerage Action", together with the

3635 Citco Brokerage Action, the "Citco Brokerage Complaints"), Dkt. No. 679 (Pincus Decl.

Ex. 8) ); Third Amended Complaint, *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lombard*

*Odier Darier Hentsch & Cie, et al*., Adv. Pro. No. 10-03795, Dkt. No. 86 (Bankr. S.D.N.Y.).[4]

---

[3] While there is substantial overlap, these actions by the Fairfield Liquidators also include
defendants who are not being sued by the Trustee.  *See, e.g.*, Third Amended Complaint,
*Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Piguet & Cie S.A.*, Adv. Pro. No. 10-
03514 (Bankr. S.D.N.Y.), Dkt. No. 72.

[4] As set forth in footnote 1, above, this Court may take judicial notice of pleadings in other
actions.  This is especially true here where the Trustee is in privity with the Fairfield Liquidators

Pursuant to a series of decisions by this Court (which are currently subject to appeal), all of the Fairfield Liquidators' New York claims have been dismissed except for constructive trust claims against the so-called "Knowledge Defendants". *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 282, 305, 316 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"); *In re Fairfield Sentry Ltd.*, No. 10-13164, 2020 WL 7345988, at \*22-\*35 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*").

### D.    The Present Complaint against Lombard Odier

#### i.    Overview of the Trustee's Claims

The Trustee brings this proceeding pursuant to his statutory authority under the Securities Investor Protection Act ("SIPA"). Compl. ¶ 4. The Complaint alleges that Lombard Odier is a Swiss limited partnership based in Geneva and "a global banking and wealth management institution offering a wide range of financial advisory services to private and institutional clients." Compl. ¶¶ 3, 22. According to the Complaint, Lombard Odier received from Sentry and Sigma approximately $95 million in redemptions, which the Trustee attempts to characterize as supposed "subsequent transfers" of BLMIS "customer property." *Id.* ¶ 2.[5] The Trustee invokes Section 550 of the Bankruptcy Code and Section 278 of the New York Debtor & Creditor Law ("NYDCL"). Compl. ¶¶ 41, 43[6]

---

in actions to recover alleged BLMIS customer property and the Trustee and Fairfield Liquidators have stipulated to a joint interest between them in this respect. *See infra* at 31, n. 16.

[5] The Trustee also originally sought recovery of certain alleged redemption payments Lombard Odier received from Kingate Global Fund ("Kingate"), but those claims were dismissed as a result of a June 26, 2019, settlement between the Trustee and Kingate's joint liquidators. Additionally, the Trustee originally alleged that Lombard Odier received approximately $95,595,385 in Sentry transfers; however, pursuant to a Stipulation and Order dated January 27, 2022 (the "Stipulation of Dismissal"), Dkt. No. 88, certain of those claims were dismissed.

[6] The Complaint also purports to assert claims pursuant to 11 U.S.C. § 551. Section 551, however, does not provide for an independent cause of action. *See In re CIL Ltd.*, 582 B.R. 46, 97 (Bankr. S.D.N.Y. 2018), *amended on reconsideration*, No. 13-11272, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018).

<u>Transfers from Sentry.</u> The Trustee alleges that BLMIS made numerous initial transfers over six years to Sentry (Compl. Ex. B) totaling "approximately $3 billion" (*id.* ¶ 36) and that Sentry, on certain days during those six years, transferred $93,511,465.60 in total to Lombard Odier (*id.* ¶ 41, Ex. C; Stipulation of Dismissal). The Trustee does not identify which portions of these initial transfers from BLMIS to Sentry were supposedly subsequently transferred to Lombard Odier as redemptions—not a date, not an amount, not anything from which Lombard Odier or this Court might discern the supposed source of the funds that were transferred from Sentry and Sigma to Lombard Odier. Instead, the Trustee breezily alleges:

> 36.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). . . .
>
> 37.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). . . .
>
> 38.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). . . .
>
> 41.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Lombard Odier . . . . Based on the Trustee's investigation to date, approximately $95,595,385 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Lombard Odier (the "Fairfield Sentry Subsequent Transfers") . . . .

Compl. ¶¶ 36-38, 41.

<u>Transfers from Sigma.</u> The Trustee likewise vaguely alleges that approximately $750 million of the initial transfers Sentry received from BLMIS was transferred by Sentry to Sigma, and that Sigma transferred approximately $1,280,000 of that amount to Lombard Odier as redemption payments:

> 43.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Lombard Odier through Fairfield Sigma and is recoverable from Defendant Lombard Odier pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma. Thereafter, the equivalent of approximately $1,279,986 was transferred by Fairfield Sigma to Defendant Lombard Odier (the "Fairfield Sigma Subsequent Transfers").

Compl. ¶ 43.  Again, the Complaint offers no details regarding the source of the funds that comprise these alleged transfers from Sigma to Lombard Odier.

Other than the conclusory statements set forth above, the Complaint utterly fails to identify which of the BLMIS initial transfers, if any, were the actual source of the Sentry and Sigma transfers to Lombard Odier.  As explained below, this pleading failure is dispositive, particularly because at the time he filed the Complaint, the Trustee long had access to the Fairfield Funds' records.

### ii.    The Trustee's Insufficient Jurisdictional Allegations

The Trustee alleges three primary bases of personal jurisdiction over Lombard Odier. First, Lombard Odier "purposely availed itself of the laws and protections of the United States and the state of New York by … knowingly directing funds to be invested with New York-based BLMIS through Feeder Funds."  Compl. ¶ 6.  Second, "Lombard Odier entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction[.]"  Id. ¶ 7.  Third, Lombard Odier "sent a copy of the subscription agreement to [FGG's] New York city office, and wired funds to Fairfield Sentry through a bank in New York … [and] also regularly communicated by e-mail and letters with its FGG account representatives located in FGG's New York City office."  Id. ¶ 7.

As set forth below, none establishes this Court's personal jurisdiction over Lombard Odier because none is relevant to the supposed subsequent transfers that the Trustee seeks to

10

recover.  The Complaint does not allege that Lombard Odier received the money transferred as

redemptions in accounts based in the U.S.  In fact, the Complaint does not allege that the

transfers that Lombard Odier allegedly received from Sentry or Sigma had any connection

whatsoever to the U.S.  The Complaint is silent as to how the receipt of those transfers could

subject Lombard Odier to this Court's jurisdiction even though the Trustee must establish this

Court's personal jurisdiction over Lombard Odier with respect to ***each*** alleged subsequent

transfer.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 190

(Bankr. S.D.N.Y. 2018) (Bernstein, J.) ("*BNP Paribas*").

### iii.    The Subsequent Transfers Were Received in Foreign Accounts

The Complaint's silence as to how the alleged subsequent transfers could subject

Lombard Odier to this Court's jurisdiction is revealing.  In stark contrast to the absence of

anything beyond the most barebones allegations here, the Fairfield Liquidators have specifically

alleged in related proceedings against Lombard Odier that virtually all the same supposed

subsequent transfers that Lombard Odier received from Sentry and Sigma that the Trustee seeks

to recover here were paid into accounts in non-U.S. banks, and were not made to or through any

U.S. banks.  *See* Fifth Amended Complaint, 3635 Citco Brokerage Action, Dkt. No. 620 (Pincus

Decl. Ex. 7); Fifth Amended Complaint, 3636 Citco Brokerage Action, Dkt. No. 679 (Pincus

Decl. Ex. 8).  In fact, the Citco Brokerage Complaints assert that, in order to invest in the

Fairfield Funds, Lombard Odier *was required* to maintain an account with a bank outside the

U.S., into which all redemption payments were to be deposited.  *See, e.g.*, Fifth Amended

Complaint, 3635 Citco Brokerage Action, Dkt. No. 620 ¶ 106; Fifth Amended Complaint, 3636

Citco Brokerage Action, Dkt. No. 679 ¶ 114.

Lombard Odier has moved to dismiss the Citco Brokerage Complaints for failure to allege personal jurisdiction on these very grounds, *see* Banque Lombard Odier & Cie SA's Memorandum of Law in Support of its Motion to Dismiss for Lack of Personal Jurisdiction, 3635 Citco Brokerage Action, Dkt. No. 674, at 5, 7-10, 13-16; Banque Lombard Odier & Cie SA's Memorandum of Law in Support of its Motion to Dismiss for Lack of Personal Jurisdiction, 3636 Citco Brokerage Action, Dkt. No. 734 at 5, 7-10, 13-16, grounds that are equally applicable here, even if the Trustee has chosen to omit relevant jurisdictional facts from his barebones pleading.

### E. The Trustee's Complaints Against Other Alleged Subsequent Transferees

Besides the claims in this action against Lombard Odier, the Trustee also has filed approximately six dozen actions against other Sentry investors. In those actions, combined with the Trustee's action against Sigma and Lambda, the Trustee seeks to recover, in the aggregate, alleged subsequent transfers of BLMIS customer property totaling approximately $4 billion from defendants who allegedly received redemption payments from Sentry. *See* Pincus Decl. Exs. 5, 6, ¶ 12. And on top of that $4 billion in supposed "subsequent transfers", the Trustee also seeks to recover *another* approximately $1 billion in amounts paid by Sentry to the FGG Defendants. *See* Pincus Decl. Ex. 4, ¶ 13. In short, the Trustee is trying to recover roughly $5 billion in alleged "subsequent transfers" that flowed out of Sentry, even though he simultaneously alleges that BLMIS made initial transfers of only $3 billion that flowed in to Sentry.

### ARGUMENT

### I. THE TRUSTEE CANNOT ESTABLISH PERSONAL JURISDICTION OVER LOMBARD ODIER

The Trustee bears the burden of establishing that this Court has personal jurisdiction over Lombard Odier. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The

Complaint does not allege that the Court has general jurisdiction over Lombard Odier, a Swiss

bank that is based in Geneva with no operations in the United States and is not "at home" in the

United States (*see* Compl. ¶ 22), so the Trustee must plead facts supporting the exercise of

specific jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 136-40 (2014). To do so, under

New York's long-arm statute,[7] the Trustee must satisfy two exacting pleading requirements: (1)

Lombard Odier must have transacted business within the state; and (2) the claims asserted must

arise from that business activity. *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design

Techs. LLC*, No. 19-CV-3444, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick,

J.) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). The Trustee also

must demonstrate that the exercise of personal jurisdiction over Lombard Odier "would comport

with due process." *Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *3 (internal

quotations omitted).

        As Judge Bernstein already held in these proceedings with respect to this very

jurisdictional issue, each subsequent transfer is a separate claim. Accordingly, the Trustee must

establish the Court's jurisdiction over Lombard Odier for ***each individual transfer*** it seeks to

recover. *BNP Paribas*, 594 B.R. at 190 ("Each transfer is a separate claim, and the Trustee must

establish the court's jurisdiction with respect to each claim asserted.") (internal quotations and

citations omitted). He has failed to do so here because the Complaint does not allege that the

---

[7] The Trustee bases personal jurisdiction on New York's long-arm statute, N.Y. C.P.L.R. § 302
(McKinney 2001), and Federal Rule of Bankruptcy Procedure 7004. Compl. ¶ 8. Under Federal
Rule of Bankruptcy Procedure 7004(f), the Trustee can establish personal jurisdiction by
demonstrating sufficient minimum contacts with the United States as a whole. *See In re
Lyondell Chem. Co.*, 543 B.R. 127, 138-39 (Bankr. S.D.N.Y. 2016). The federal jurisdictional
analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so
the analyses are largely interchangeable. *Off. Comm. of Unsecured Creditors of Arcapita v.
Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

alleged subsequent transfers were received in accounts in New York or that there was anything linking these transfers to New York.

A.      **The Trustee Does Not Allege that the Subsequent Transfers Were Received in Accounts in New York**

The fact that the Complaint does not allege that the transfers the Trustee seeks to recover were sent to or even through New York (or any U.S.) accounts, on its own, defeats jurisdiction over the Trustee's claims to recover each alleged subsequent transfer.  *See Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*, No. 03 CIV. 2936, 2004 WL 1620874, at *5 (S.D.N.Y. July 20, 2004) (non-U.S. bank did not engage in any jurisdictionally relevant activities in New York where it did not use its U.S. correspondent account to effect any transactions giving rise to plaintiff's claims); *see also Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, No. 19-CV-6046, 2020 WL 1166053, at *5 (S.D.N.Y. Mar. 11, 2020) (Broderick, J) (plaintiff failed to make a *prima facie* showing under CPLR § 302(a)(1) because plaintiff did not allege "the existence of a single act directed at New York out of which these claims arise").

The Fairfield Liquidators confirmed that virtually all of the same transfers the Trustee seeks to recover here allegedly occurred entirely outside of the United States:

> ***The redemption transfers at issue here were purely foreign***.  The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities).  ***[E]very relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States***.

Plaintiff-Appellants' Opening Brief for Second-Round Appeal ("Liquidators' Appeal"), *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-cv-03911-VSB 24 (S.D.N.Y. July 21, 2021), Dkt. No. 440, at 24 (emphasis added).  Because BLMIS did not transact any business with Lombard Odier, the contacts that the Trustee cites and must rely upon are 100%

derivative of the Fairfield Funds' contacts; if the Fairfield Liquidators cannot allege sufficient

jurisdictional contacts with Lombard Odier, neither can the Trustee.

There can be no doubt that, based on the Trustee's and Fairfield Liquidators' own

allegations in their complaints, the same transfers they seek to recover occurred completely

outside the United States. Thus, the Trustee cannot meet his burden of establishing this Court's

personal jurisdiction over each of these transfers, and the Complaint must be dismissed.

> **B.     The Alleged Foreseeability of the Fairfield Funds' Investment in BLMIS Does Not Establish Personal Jurisdiction over Lombard Odier**

The Trustee's alternate jurisdictional theory, that Lombard Odier purposefully availed

itself of the laws of New York by investing in the foreign Fairfield Funds, which in turn invested

in BLMIS (Compl. ¶ 6), also fails.

*First*, the allegation that Lombard Odier allegedly knew that non-U.S. funds (Sentry and

Sigma), in which Lombard Odier's banking customers invested, would invest in BLMIS (id. ¶¶

6, 7) does not give rise to this litigation and thus does not support jurisdiction.  *See Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of

another party or a third person is not an appropriate consideration when determining whether a

defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV*

*Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on the

relationship among the defendant, the forum, and the litigation").  The Trustee's claims do not

focus on the decision to *invest* with Sentry and Sigma as the basis for liability.  *See In re*

*Fairfield Sentry Ltd.,* No. 10-13164, 2018 WL 3756343, at *4-12 (Bankr. S.D.N.Y. Aug. 6,

2018) *("Fairfield I")* (subscription agreements irrelevant to claim not based on subscription).

Instead, the Trustee's claim to recover the transfers Lombard Odier received from Sentry and

Sigma outside the United States relates to and arises out of those very transfers.  *See, e.g.,*

Compl. ¶¶ 55, 60.  As the Fairfield Liquidators themselves maintain, every element of the

transaction is "purely foreign."  Liquidators' Appeal, *Fairfield Sentry Limited (In Liquidation) v.*

*Citibank NA London*, No. 19-cv-03911-VSB 24 (S.D.N.Y. July 21, 2021), Dkt. No. 440, at 24.

*Second*, knowledge that the foreign Fairfield Funds would invest with BLMIS in New

York is insufficient as a matter of law to support jurisdiction over Lombard Odier.  The Supreme

Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts'

inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State."

*Walden v. Fiore,* 571 U.S. 277, 284 (2014).  In *Walden,* a Nevada-based plaintiff sued a Georgia

police officer in Nevada for an unlawful seizure of money in a Georgia airport.  *Id*. at 288.  The

police officer knew that the plaintiff had connections to Nevada and that the seizure would delay

return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it

unconstitutional to exercise personal jurisdiction over the police officer in Nevada.  *Id*. at 289.

As the Supreme Court explained, the foreseeability of a plaintiff's connection to the forum is

irrelevant to whether there is jurisdiction over the defendant because it "impermissibly allows a

plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."  *Id*.

Instead, "[t]he substantial connection … between the defendant and the forum State necessary

for a finding of minimum contacts must come about by *an action of the defendant purposefully*

*directed toward the forum State*."  *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano*

*Cty.*, 480 U.S. 102, 112 (1987) (quotation omitted) (emphasis in original).  Even if true, the

Trustee's allegation that Lombard Odier knew that the Fairfield Funds would invest with BLMIS

does not satisfy *Walden*, and it is insufficient to hale Lombard Odier into a New York court.

Moreover, if the Trustee's theory were upheld, any investment that foreseeably found its way

into a U.S. asset would confer personal jurisdiction.  There is no precedent for such a sweeping

result that would flood U.S. courts with cases against parties with no U.S. contacts.  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (noting foreseeability by itself is "insufficient" for the exercise of personal jurisdiction).

> **C.    The Subscription Agreement Cannot Subject Lombard Odier to this Court's Personal Jurisdiction**

The Trustee's jurisdictional theory that "Lombard Odier entered into a subscription agreement with Sentry under which it submitted to New York jurisdiction" (Compl. ¶ 7), is not applicable as to the Trustee claims against Lombard Odier and has already been rejected by this Court.

Any theory of jurisdiction predicated on the subscription agreement is not applicable because the Trustee cannot invoke a forum selection clause in a contract to which he is a stranger, to establish this Court's jurisdiction over the subsequent transfer claim that he seeks to advance.  *See Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, No. 20 CIV. 9993, 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause for a non-party plaintiff bringing claims outside of the clause's scope).

Additionally, the law of the case disposes of this theory of jurisdiction.  In the Liquidators' Proceedings, this Court concluded that the execution of certain subscription agreements, without more, did not subject the defendants—including Lombard Odier—to personal jurisdiction.  *Fairfield I*, 2018 WL 3756343, at *12.  Specifically, this Court held that the New York choice of forum provisions in the subscription agreement were not applicable to the disputes concerning subsequent transfers because the Fairfield Liquidators' claim is solely based on redemptions and does not arise out of the subscription agreements.  *Fairfield I*, 2018 WL 3756343, at *11 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").

**D.      The Trustee's Miscellaneous Jurisdictional Allegations Also Fail**

The Trustee's remaining miscellaneous jurisdictional allegations, that Lombard Odier

"sent a copy of the subscription agreement to FGG's New York city office, and wired funds to

Fairfield Sentry through a bank in New York … [and] also regularly communicated by e-mail

and letters with its FGG account representatives located in FGG's New York City office,"

(Compl. ¶ 7), also fail because they are unrelated to the Trustee's claims, and in any event, are

insufficient.

First, the Trustee does not allege facts explaining how any of these alleged contacts

purportedly give rise to his claims. Those claims arise from the alleged subsequent transfers he

seeks to recover (*see, e.g.*, Compl. ¶¶ 2, 55, 60); they do not arise from the Subscription

Agreement, investments in Sentry, or alleged communications with FGG account

representatives.  *See Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *5 (various

contacts with New York insufficient to confer personal jurisdiction under Section 302(a)(1)

where none gave rise to plaintiff's cause of action); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316,

323 n.4 (2016) (to establish jurisdiction, the cause of action must arise from the very transactions

that are relied upon to provide the contact with the forum).

Second, even if accepted as true, allegations that a foreign bank sent contracts or emails

to New York or wired money through New York are insufficient to establish that it was

transacting business in New York or had minimum contacts with the U.S.  *See SPV Osus Ltd.*,

882 F.3d at 345 (finding "handful of communications and transfer of funds . . . are insufficient to

allow the exercise of specific personal jurisdiction over the [Foreign] Defendants"); *Hill v. HSBC

Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding allegations that foreign

defendants "communicated with and transmitted information and funds to and from BLMIS

located in New York" were insufficient to "project" the foreign defendants into New York)

18

(internal quotations omitted); *see also Walden*, 571 U.S. at 285 (instructing that the relevant

analysis "looks to the defendant's contacts with the forum State itself, not the defendant's

contacts with persons who reside there.").

Based on the Trustee's own statements made to this Court in a related action, the

Trustee's limited allegations regarding Lombard Odier's purported contacts with New York or

the U.S. are lacking when compared with the allegations that this Court has found sufficient:

> This is not the *Hill* [*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016)]
> case or the *To* [*Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590, 2017 WL
> 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017)] case
> where there's a foreign plaintiff [as] a foreign administrator of a foreign feeder
> fund and nobody is present in New York but somebody presses a button and a
> transfer goes through some … account in New York. *These defendants are
> working in New York; they're marketing their leverage from New York; they're
> routing money in BNP Paribas New York accounts, not correspondent accounts,
> actual accounts. And all our claims arise from the activity that was here, Your
> Honor.*

Tr. March 9, 2018 Hr'g *SIPC v. BLMIS, LLC*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y.), Dkt.

No. 137, at 56–57 (emphasis added). The Trustee has offered no such allegations regarding

Lombard Odier's contacts in New York or the U.S. from which his claims arise. *Cf. In re

Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (the Trustee

established *prima facie* that defendants had sufficient minimum contacts with the U.S. to support

the exercise of jurisdiction where they entered into contracts with BLMIS, transferred money

into their BLMIS accounts in New York, and withdrew money from their BLMIS accounts in

New York).

Here, the Trustee alleges that Lombard Odier invested in the foreign Fairfield Funds and

alleges no U.S. contacts with Lombard Odier. He does not allege that Lombard Odier entered

into any contracts with BLMIS or maintained an account with BLMIS in New York. Indeed, as

established by the Fairfield Liquidators' detailed allegations, Lombard Odier was required to

maintain a non-U.S. account with a foreign bank—not BLMIS in New York—in order to even invest in and to receive redemptions from the foreign Fairfield Funds.[8]

### E.    The Exercise of Personal Jurisdiction over Lombard Odier Would Not Comport with Due Process

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("The Due Process Clause … gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit.") (citation omitted).

As demonstrated above, the Trustee has not alleged that Lombard Odier had any contacts whatsoever with the United States related to the Trustee's claims to recover the alleged subsequent transfers.  Accordingly, the exercise of personal jurisdiction over Lombard Odier would not comport with due process. *See Walden*, 571 U.S. at 286 ("Due Process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other

---

[8] The Complaint's miscellaneous jurisdictional allegations are also insufficient because the Complaint does not allege any additional facts supporting these unsubstantiated allegations. Conclusory allegations like this, based solely on "information and belief," (Compl. ¶ 7), are inadequate as a matter of law.  *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (allegations based "upon information and belief" were entirely speculative where the complaint contained no allegations of fact which, if true, would have supported such allegations); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (a "conclusory allegation on information and belief" is insufficient to make a claim plausible where the complaint's factual allegations do not raise a right to relief above the speculative level); *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (complaint with no specific factual allegations to enable court to evaluate information and belief assertions failed to state a claim).

persons affiliated with the State."), quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475

(1985).[9]

## II.    THE COMPLAINT FAILS TO PLEAD ADEQUATELY THAT LOMBARD ODIER RECEIVED CUSTOMER PROPERTY

### A.    The Trustee Has Not Plausibly Alleged That Any of the Alleged Subsequent Transfers Contain Customer Property

In order to state a claim under SIPA, the Trustee must plausibly allege that each

redemption payment Lombard Odier received was a subsequent transfer of BLMIS customer

property that had been fraudulently transferred from BLMIS to Sentry or Sigma.  *See* 15 U.S.C.

§ 78fff-2(c)(3) ("the trustee may recover any property transferred by the debtor which, except for

such transfer, would have been customer property if and to the extent that such transfer is

voidable or void under the provisions of title 11").  To state a claim under 11 U.S.C. § 550, the

Trustee must allege not just that the initial transfer is avoidable, but that the initial transfer (or

subsequent transfers of the initial transfer) was transferred to the subsequent transferee.  *In re*

*Bernard L. Madoff Inv. Sec. LLC*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*").[10]  And

of course, the claim must be "plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[9] *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012), an action brought by the Trustee, in which this Court held that, for purposes of jurisdiction in New York, a foreign governmental body's investment of its *own* funds with Sentry based on its own due diligence was consistent with Due Process, is clearly distinguishable from this case.  The decision in that case was grounded in (1) the defendant's extensive contacts with New York not present here, including that the subscription payments and redemptions were made from and to the defendant's New York bank account, and (2) the choice of forum clause in the Subscription Agreement.

[10] Equally, under the New York Debtor and Creditor Law, "as to claims of both actual and constructive fraud, New York law permits money damages to be recovered only against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance."  *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005) (emphasis, citation, and internal quotation marks omitted).

In the context of a claim to set aside subsequent transfers under SIPA, this Court has held

that barebones allegations – such as the Trustee's allegations here – that customer funds were

transferred to the subsequent transferee do not suffice:

> The Trustee must allege facts that support the inference that the funds at issue
> originated with . . . BLMIS, and contain the "necessary vital statistics"—the "who, when,
> and how much" of the transfers to establish that an entity was a subsequent transferee of
> the funds.  At the pleading stage, the Trustee is not required to provide a "dollar-for-
> dollar accounting" of the exact funds at issue. However, barebones allegations that the
> funds at issue were transferred to the Subsequent Transferees, without more detail, are
> insufficient.

*Shapiro*, 542 B.R. at 119.  In *Shapiro*, the Court dismissed as conclusory a subsequent transferee

claim, noting that the complaint "does not tie any initial transfer to any subsequent transfer or

Subsequent Transferee."  *Id.*

As in *Shapiro*, the Trustee's Complaint fails to plead the "necessary vital statistics".

Rather, it merely alleges that during the six years preceding the Petition, BLMIS transferred

approximately $3 billion to Sentry, and that "[a] portion of [those transfers] was subsequently

transferred either directly or indirectly to, or for the benefit of, Defendant".  Compl. ¶¶ 36, 41.

The Trustee does not cure this insufficient allegation by attaching exhibits (75 pages worth in

small font) that list thousands of transactions recorded in Sentry's accounts at BLMIS, *id.* Ex. B,

and exhibits that list alleged subsequent transfers from Sentry to Defendant, *id.* at Ex. C.  To the

contrary, the Complaint fails to identify which, if any, of the 75 pages of transactions – many of

which fall outside the statute of limitations – constitute initial transfers of BLMIS customer

property that were allegedly subsequently transferred to Lombard Odier and does nothing to tie

the two together.  Essentially, the Trustee is asking the Court to infer that because BLMIS

transferred a large amount of money to Sentry over a long period of time, to the extent Sentry

subsequently transferred *any* money to Lombard Odier, *all* of that money must have come from

BLMIS and can be recovered.  The claims to recover redemptions from Sigma are even more tenuous, as the Trustee merely alleges that approximately $750 million of the initial transfers Sentry received from BLMIS were transferred to Sigma, and approximately $1,280,000 of that was transferred to Lombard Odier (Compl. ¶ 43).

Not only do the Trustee's "barebones allegations" fail to plead the "necessary vital statistics", but they are facially implausible – indeed, they are mathematically impossible.  For instance, the Trustee alleges that BLMIS transferred approximately $3 billion to Sentry (Compl. ¶ 36); yet at the same time, he purports to "recover" an aggregate of nearly $4 billion of alleged subsequent transfers of customer property in the form of redemption payments made to dozens of defendants who redeemed from Sentry, including Sigma and Lambda themselves. *See* Exhibits 5 and 6 to the Second Amended Complaint, Fairfield Action, Dkt. Nos. 286-5, 286-6 (Pincus Decl. Exs. 5, 6, ¶ 12).  Additionally, the Trustee seeks to recover, again as alleged subsequent transfers of customer property from Sentry, *another* approximately $1 billion in money allegedly paid by Sentry to FGG Defendants.  *See* Exhibits 8, 10, 12, 13, 14 and 21 to the Second Amended Complaint, Fairfield Action, Dkt. Nos. 286-8, 286-10, 286-12, 286-13, 286-14, 286-21 (Pincus Decl. Ex. 4).  In other words, the Trustee is endeavoring to recover, all as subsequent transfers from Sentry, roughly $2 billion more than the total amount that the Trustee himself alleges that BLMIS transferred to Sentry.  As such, the Trustee's theory that all of the redemption payments are customer property is not merely implausible, it is impossible.

The reason that the amount BLMIS transferred to Sentry is at least $2 billion lower than the amount Sentry distributed is because transfers from BLMIS were not Sentry's sole source of money for redemptions and other payments.  The Trustee himself pleads that Sentry also continuously received funds not just from BLMIS, but from investor subscriptions.  *See, e.g.*,

Compl. ¶ 7 (alleging that Lombard Odier wired funds to Sentry for subscriptions). Numerous

complaints are rife with similar allegations regarding other redeemer defendants. The

transaction details the Trustee has provided to this Court in his numerous complaints – alleging

that Sentry paid out more than it received from BLMIS – lead to the inescapable conclusion that

Sentry paid redemptions to its investors with money that could not possibly have originated with

BLMIS.

This is about more than the Trustee's disregard of simple arithmetic. The Trustee's own

allegations demonstrate that at least approximately $2 billion in funds that he seeks to "recover"

indisputably are not "customer property" under 15 U.S.C. § 78fff-2(c)(3). There is nothing in

SIPA that authorizes the Trustee to recover funds that were not "customer property" and never

belonged to BLMIS. The Trustee's failure to allege the "necessary vital statistics" of the

transfers he seeks to put at issue is particularly inexcusable in this case, in which the *plaintiff*,

rather than the *defendant*, possesses all the records relevant to establishing whether, and to what

extent, any alleged transfers to Lombard Odier contain customer property. As noted above, the

Trustee sued and settled with the Liquidators of Sentry and Sigma, who in 2011 stipulated to the

entry of a judgment in favor of the BLMIS Estate (in the amount of approximately $3 billion for

Sentry and approximately $750 million for Sigma).[11] Fairfield Settlement, Fairfield Action, Dkt.

No. 69-2 ¶ 1; Compl. ¶ 40. Pursuant to that Settlement Agreement, the Trustee has had access to

Sentry and Sigma's records for over a decade. *See* Fairfield Settlement, Fairfield Action, Dkt.

No. 69-2 ¶ 14 (Trustee and Fairfield Liquidators "each agree to provide reasonable access to the

---

[11] This Court approved the Fairfield Settlement Agreement on June 7, 2011, *id*. at Bench
Memorandum and Order Granting Trustee's Motion for Entry of Order Approving Agreement,
Dkt. No. 92, and it was incorporated into the Consent Judgment entered against Sentry on July
13, 2011. Fairfield Action, Adv. Pro. No. 09-01239, Consent Judgment, Dkt. No. 109 , ¶ 2;
Compl. ¶ 40.

other's documents, data, and other information relating to, or beneficial to the pursuit of, the

Sharing Claims.").  Moreover, the Fairfield Liquidators "agree[d] to provide reasonable

cooperation and assistance" to the Trustee "in connection with the prosecution of the Sharing

Claims".  *Id.* ¶ 14.

Thus, this case is nothing like *In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117

(Bankr. S.D.N.Y. 2014) ("*Merkin*"), where this Court granted the Trustee "greater latitude" in

pleading where – having "specifie[d] numerous inter-defendant transfers" showing that

"defendants commingled their assets, transferring their funds into and out of each other's

accounts" – the Trustee faced special "difficulties" because "[t]he subsequent transfer claim must

ultimately be proved through the books and records of the defendants".  *See Merkin*, 515 B.R. at

150-51.  No such latitude is warranted here.  Not only does the Trustee allege no inter-Defendant

transfers in this action, but, for over a decade, the Trustee has had every piece of data he needs to

determine whether an alleged subsequent transfer contains customer property, and from which

initial transfer that transfer originates, yet he has failed to so allege here – because to do so

would lead to the inescapable conclusion that the Trustee is pursuing billions of dollars to which,

as a matter of simple math,, he is not entitled.  *See Pension Ben. Guar. Corp. v. Morgan Stanley

Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 722 (2d Cir. 2013) (affirming dismissal and finding that

"such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have

access, without discovery, to plan documents and reports that provide specific information from

which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc.*, No. 18 CIV. 1317, 2018

WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to

precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

25

The Complaint's pleading failure not only imposes substantial discovery and litigation costs on defendants, it fails to provide Lombard Odier with fair notice of the claims against it. This failure deprives Lombard Odier of the ability to evaluate those claims for the purposes of defense and settlement, in violation of Rule 8(a) (a pleading problem which, as set forth in Point IV below, is endemic to the Complaint).  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Fed. R. Civ. P. 8(a)(2) requires that the plaintiff "give the defendant fair notice of what the claim…is and the grounds upon which it rests") (citation omitted); *see also Verhagen v. Saperstein,* No. 93 CIV. 7441, 1994 WL 330055, at *2 (S.D.N.Y. July 11, 1994) (Rule 8(a) requires pleader to provide adverse party with fair notice of the claim "in order to answer and prepare a defense").  This pleading deficiency is not just on some trivial matter; given the lack of "necessary vital statistics" contained in the pleading here, Lombard Odier is hard-pressed to discern exactly what the Trustee claims is "customer property", let alone whether such claims are legitimate, or whether these ill-defined claims are time barred or shielded by the application of the safe harbor of 11 U.S.C. § 546(e) (*see* Point III, below).  No defendant should have to guess about what claims they are facing.

**B.    The Trustee's Complaint Seeks to Recover Transfers Made by Sentry at Times When the Trustee Alleges There was no Money Left From BLMIS**

The implausibility – and in many instances impossibility – of the Trustee's subsequent transferee claims against Lombard Odier is underscored by the fact that the Complaint repeatedly seeks to recover transfers from Lombard Odier during time periods when, according to the Trustee's own pleadings, the amounts paid out by Sentry to defendants, all allegedly as subsequent transfers of customer property, vastly exceeded the amounts BLMIS transferred to Sentry.

For example, the Trustee alleges that in the period from December 11, 2002 (*i.e.*, six

years preceding the filing of the petition (Compl. ¶¶ 11, 20[12]) through March 31, 2005, BLMIS

transferred a total of $120 million to Sentry in three separate transfers made May 9, 2003

through July 22, 2003.  *See* Compl. Ex. B pp. 19, 20 (Pincus Dec. Ex. 1) ("CHECK WIRE"

entries).  The Trustee further alleges that from the time of that first BLMIS transfer on May 9,

2003, through December 31, 2003, Sentry paid more than $200 million of alleged customer

property to redeeming shareholders, including Sigma, and Lambda.  *See* Pincus Decl. Exs. 5, 6, ¶

14.  So when the Trustee alleges that Lombard Odier received three redemption payments from

Sentry in January and July of 2004 (in the amounts of $1,155,302, $17,241 and $853,110), *those*

*redemption payments cannot possibly be BLMIS customer property* because the amount of

money Sentry had already paid to other defendants by December 31, 2003 far exceeded the total

amount it took in from BLMIS.[13]  That these redemption payments to Lombard Odier took place

six months to a year after Sentry last received funds from BLMIS further underscores the

implausibility that these redemption payments contain BLMIS "customer property."  *Cf. Merkin*,

---

[12] Since the statute of limitations under New York's Debtor and Creditor Law for fraudulent
conveyances is six years, *see In re Khan*, No. 10-46901, 2014 WL 4956676, at *52 (Bankr.
E.D.N.Y. Sept. 30, 2014), the Trustee cannot avoid transfers from BLMIS to Sentry that
occurred before December 11, 2002 (the "lookback period").  Thus, he cannot recover any
subsequent transfers of those transfers under Section 550(a).  Accordingly, the Court may only
consider alleged initial transfers after December 11, 2002 (the first of which was on May 9,
2003) in determining whether an alleged subsequent transfer was in fact a transfer of recoverable
customer property; any earlier initial transfers alleged in the Complaint must be excluded from
consideration.  In any event, as set forth in Point III below, pursuant to the safe harbor of 11
U.S.C. § 546(e), the Trustee is barred from recovering alleged subsequent transfers of initial
transfers which took place prior to two years before the petition date.

[13] Specifically, the Trustee alleges that on May 9, 2003, BLMIS transferred $40 million to
Sentry, which was spent by no later than June 2003; on July 11, 2003, BLMIS transferred $55
million to Sentry, which was spent by no later than July 16, 2003; and on July 22, 2003, BLMIS
transferred $25 million to Sentry, which was spent by no later than September 2003.  *See* Pincus
Decl. Exs. 5, 6, ¶ 14.

515 B.R., at 150-51 (inferring linkage where alleged "subsequent transfers took place contemporaneously or shortly after an initial transfer" or at most two or three months later).

A further example is the alleged subsequent transfer to Lombard Odier on May 13, 2005, which is likewise fatally flawed. While BLMIS allegedly transferred $175 million to Sentry on April 1, 2005, the Trustee alleges that days later, on April 4, 2005, Sentry transferred $200 million to another defendant, Abu Dhabi Investment Authority, a transfer which the Trustee also claims to recover as customer property. *See* Exhibit E to the Complaint, *Picard v. Abu Dhabi Investment Authority*, Adv. Pro. No. 11-02493 (Bankr. S.D.N.Y.) Dkt. No. 1-5 (Pincus Dec. Ex. 9). As set forth above, the three preceding transfers from BLMIS to Sentry (on May 9, 2003, July 11, 2003, and July 22, 2003), had all long been exhausted by 2004. Thus, according to the Trustee's own pleadings, there was no BLMIS customer property left at Sentry to fund Sentry's redemption payments by the time of Lombard Odier's May 13, 2005 redemption.

These are just two of many examples of the Trustee's impossible, internally contradictory allegations. Even if the Trustee, who has Fairfield's records and cooperation, were entitled to avail himself of liberal pleading rules designed for plaintiffs without access to such records, such allegations must be dismissed as a matter of law. *See Kennedy v. Mondelez Glob. LLC,* No. 19-CV-302, 2020 WL 4006197, at *9 (E.D.N.Y. July 10, 2020) ("where the allegations of a complaint are materially inconsistent with the evidence a plaintiff relies on to make those allegations, [a court] may easily conclude that plaintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss.") (citation omitted).

III.    **RECOVERY OF ALLEGED SUBSEQUENT TRANSFERS OF INITIAL TRANSFERS MADE OUTSIDE THE TWO-YEAR LOOKBACK IS BARRED BY THE SAFE HARBOR OF 11 U.S.C. § 546(E)**

Section 550(a) of the Bankruptcy Code provides that, to the extent a transfer is avoided under certain sections of the Code, a trustee may recover the property transferred, or its value,

28

from the initial transferee or any subsequent transferee.  However, Section 546(e) of the

Bankruptcy Code bars a trustee from avoiding a transfer (other than under Section 548(a)(1)(A),

which has only a two-year lookback period[14]) if that transfer, as relevant here, (1) was made "by

or to (or for the benefit of)" a covered entity, such as a stockbroker or financial institution; and

(2) was either a settlement payment or a transfer in connection with a securities contract.

11 U.S.C. § 546(e).[15]  The Section 546(e) safe harbor is available as a defense to alleged

subsequent transferees, even where, as here, the alleged initial transferee agreed to a consent

judgment.  *See SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*),

No. 08-01789, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("Where

the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain

transfers, … the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against

recovery of those funds.").

        As set forth below, both elements of a defense under Section 546(e) are established as a

matter of law.  Accordingly, any claim by the Trustee against Lombard Odier as Sentry's alleged

---

[14] Under 11 U.S.C. § 548(a)(1)(A), a trustee may avoid transfers made within two years before the petition date (here, December 11, 2008 (*see* Compl. ¶¶ 11, 20)), if the debtor made such transfer with actual intent to hinder, delay or defraud.  Because of the Ponzi scheme presumption and best actual intent is generally a factual issue, Defendant, at this stage, does not seek dismissal under Section 546(e) of claims based on initial transfers made within the two years prior to the petition date (the "Two Year Transfers").  However, in a recent concurring opinion, Judge Menashi of the United States Court of Appeals for the Second Circuit cast doubt on the validity of the presumption, *see In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 201-04 (2d Cir. 2021) (Menashi, J., concurring), and there is currently a petition for a direct appeal of that issue pending before the Second Circuit. *See Picard v. ABN Amro Bank (Ireland Ltd.) (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.) (n/k/a ABN Amro Retained Custodial Services (Ireland) Limited)*, No. 20 Civ. 1898 (2d Cir. Oct. 1, 2021) Dkt. No. 50.  Accordingly, Defendant reserves the right to challenge the avoidability of the Two Year Transfers should this action proceed beyond the motion to dismiss stage.

[15] 11 U.S.C. § 546(e) also preempts state law claims seeking to unwind redemptions.  *Tribune I,* 946 F.3d, at 81, 90.

subsequent transferee based on an initial transfer made prior to September 6, 2007 (the first of the Two Year Transfers) must be dismissed.  *See Fishman*, 773 F.3d at 415 (affirming dismissal of relevant claims under Rule 12(b)(6) because they were shielded by 11 U.S.C. § 546(e)).

### A.    The Alleged Initial Transfers Were Made by, to, or for the Benefit of, a Covered Entity

Here, the alleged initial transfers were made by, to, or for the benefit of, an entity covered by Section 546(e) for three independently sufficient reasons, namely, because the alleged initial transfers were made (1) by a stockbroker, (2) to a financial institution, and (3) allegedly for the benefit of another financial institution.

### 1.    The Alleged Initial Transfers Were Made by a Stockbroker

The Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities."  11 U.S.C. § 101(53A)(B).  As the District Court found, BLMIS "qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (footnote and citation omitted), *aff'd sub nom. Fishman*, 773 F.3d at 417 ("It is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e).").

### 2.    The Alleged Initial Transfers Were Made to a Financial Institution

Sentry, the initial transferee, is also a "financial institution" under the Code, which defines "financial institution" to include both "an entity that is a commercial or savings bank," and the bank's customer "when [the bank] entity is acting as agent or custodian for a customer … in connection with a securities contract."  11 U.S.C. § 101(22)(A).  In *Fairfield III*, this Court held that the Fairfield Funds were "financial institutions" because they were customers of a financial institution, Citco Bank Nederland N.V. Dublin Branch ("Citco Bank"), which acted as

their agent in connection with the securities contracts pursuant to which the redemption payments were made. *Fairfield III*, 2020 WL 7345988, at *7.

This Court's holding in *Fairfield III* is equally applicable here and, indeed, is binding on the Trustee because he was in privity with the Fairfield Liquidators, who were litigating that action partly for the Trustee's benefit.[16]

### 3.    The Alleged Initial Transfers Were Allegedly Made "for the Benefit of" a Financial Institution, Lombard Odier

Under the Trustee's theory, the initial transfers were made "for the benefit of" a financial institution, namely Lombard Odier. As Judge Rakoff explained, where an investment fund withdraws funds because a financial institution seeks redemption of its investment in the fund, "that situation appears to fit within the plain terms of Section 546(e)". *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115, 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). Although implausible (*see* Point II, above), the Trustee alleges just that situation.

It is indisputable that Lombard Odier was a financial institution at the relevant time. The Complaint alleges that "Lombard Odier was a global banking and wealth management institution

---

[16] Under the Fairfield Settlement, the Fairfield Liquidators will pay the Trustee 15% of net recoveries from their claims against redeemers from the Fairfield Funds until the Trustee has been paid $1.924 billion. Fairfield Settlement, Fairfield Action, Dkt. No. 69-2 ¶¶ 4, 11. Further, "[t]he Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims." *Id.* at ¶ 14. This agreed joint interest in pursuing alleged BLMIS customer property is a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of a kind that gives rise to nonparty issue preclusion in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). As such, and because the issue of Sentry's status as a "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on grounds of the Section 546(e) safe harbor, this Court's finding in *Fairfield III* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its subscribers is binding on the Trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

offering a wide range of financial advisory services to private and institutional clients." Compl. ¶ 3. As a bank, Lombard Odier was plainly a "financial institution". *See Cohmad* at \*8. ("where the Trustee alleges that the defendant is 'a banking institution'… the defendant may be deemed to constitute a protected 'financial institution' … for the purposes of Section 546(e) on the face of the complaint.")

The Trustee's theory of recovery against Lombard Odier as a subsequent transferee amounts to an allegation that the initial transfers from BLMIS to Sentry were made "for the benefit of" Lombard Odier. The term "for the benefit" is interpreted broadly – for a transfer to be "for the benefit of" a covered entity, there must be "some intent-to-benefit on the part of either the initial transferee or the debtor: that is, either of the parties to the initial transfer must have contemplated that defendants would benefit from the transfer." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 505 B.R. 135, 149 (S.D.N.Y. 2013) ("*ABN Amro Bank*").

Here, as the Trustee would have it, the funds Lombard Odier received were withdrawn from BLMIS by Sentry "in order to pay" redemption payments by Sentry to investors, including Lombard Odier. *See, e.g.*, Trustee's Fairfield Amended Complaint, Fairfield Action, Dkt. No. 23 ¶ 53 ("Between 2003 and 2008, Sigma redeemed approximately $752.3 million from Fairfield Sentry. … Upon information and belief, in order to pay these redemptions, Fairfield Sentry withdrew funds from its BLMIS accounts."); *see also id.* ¶ 58 (similar allegations as to Lambda's alleged redemption of "over $52.9 million from Fairfield Sentry"); *id.* ¶¶ 63, 71, 76, 80, 85, 100, 104, 109, 129, 141, 159. Since, according to the Trustee's own theory, "the funds' withdrawals were directly caused by the defendants' request for redemptions, these initial transfers were 'for the benefit' of defendants as redeeming investors." *ABN Amro Bank,* 505 B.R., at 149-50; *see also Cohmad*, 2013 WL 1609154, at \*9 (where Trustee alleges withdrawal of funds by

investment fund because financial institution sought to redeem its investment, that situation fits

within Section 546(e)).

### B. The Alleged Initial Transfers Were Settlement Payments and Made "in Connection With" a Securities Contract

In analogous circumstances, the Second Circuit has concluded that Section 546(e) shields

transfers from BLMIS to its account holders from the Trustee's avoidance powers. *Fishman*,

773 F.3d at 415. The *Fishman* court concluded that the documents governing BLMIS

customers' accounts constituted securities contracts, and that the payments BLMIS made to

those customers were made "in connection with" those contracts, and also constituted

"settlement payments," *id*. at 418-23 — either of which findings would have sufficed to invoke

the safe harbor. The court rejected the Trustee's argument that the safe harbor did not apply

because Madoff did not actually carry out the promised securities transactions. *Id*. at 419-20.

The same reasoning applies to the transfers that the Trustee alleges BLMIS made to

Sentry "in order to pay" investors' redemption requests. Those alleged transfers were clearly "in

connection with" both (a) the securities contracts Sentry had entered into with BLMIS, *see*

*Fishman*, 773 F.3d at 418-23, and (b) according to the Trustee, (although lacking in plausible

support), the separate securities contract under which Lombard Odier made its redemptions, *see*

Point III.A.3 above, namely, Sentry's Articles of Association (Pincus Dec. Ex. 10). *See Migani*

¶ 10 ("the terms of the subscriber's membership of the Fund, which govern the redemption of its

shares . . . are to be found in the Articles of Association of the Fund").[17]

---

[17] This Court may consider the Articles of Association on this motion because, as the basis for the challenged redemption, they are integral to the Complaint. *See In re Trib. Co. Fraudulent Conv. Litig.,* 10 F.4th 147, 176 (2d Cir. 2021) ("*Tribune II*") ("Here, the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint."). A petition for certiorari with respect to *Tribune II* was filed on January 14, 2022.

The definition of "securities contract" includes "a contract for the purchase, sale, or loan of a security," 11 U.S.C. § 741(7)(A)(i), and, as relevant here, "includes . . . redemption requests." *Cohmad*, 2013 WL 1609154 at *8. Further, all Section 546(e) requires is that the transfer be "in connection with *a* securities contract" (emphasis added), even if not the securities contract between the initial transferor and transferee. *See Fishman*, 773 F.3d at 422 ("Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided"; "a transfer can be connected to, and can be made in relation to, multiple documents or purposes simultaneously"); *Cohmad*, 2013 WL 1609154, at *9 (under the safe harbor, transfer from debtor to initial transferee may qualify as having been made "in connection with a securities contract" between initial transferee and subsequent transferee). The conclusion that the alleged initial transfers were made in connection with a securities contract does not change even if the initial transferee, Sentry, allegedly knew of Madoff's fraud.[18]

First, there was a securities contract between Sentry and its investors, even if there was none between BLMIS and Sentry, and Sentry's alleged knowledge of the BLMIS fraud would not preclude the straightforward application of Section 546(e) as being "in connection with" Sentry's agreement with its investors. In *Cohmad*, Judge Rakoff agreed that securities contracts other than the initial transferee's securities contract with BLMIS could independently satisfy Section 546(e). 2013 WL 1609154, at *8-9. Judge Rakoff ruled that so long as the initial

---

[18] In *Fairfield Investment Fund Ltd.*, the Court accepted that Sentry's knowledge had been adequately pleaded in a later version of the complaint in the Fairfield Action than the one incorporated by reference into the instant Complaint. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789, 2021 WL 3477479, at *4-5 (Bankr. S.D.N.Y. Aug. 6, 2021) (citing to the Second Amended Complaint, Fairfield Action, Dkt. No. 286). Defendant respectfully disagrees with that conclusion and reserves for appeal or a later stage of this action all arguments that the Trustee has not adequately pleaded Sentry's actual knowledge of Madoff's fraud either in the Second Amended Complaint or the earlier pleadings in that action and that Sentry did not in fact have such actual knowledge.

transferee withdrew funds from BLMIS to make a payment under a securities contract between

the initial transferee and the subsequent transferee, then the withdrawal from BLMIS would be a

transfer made in connection with the securities contract between the initial transferee and the

subsequent transferee and thus would not be avoidable:

> Take, for example, a hypothetical situation in which the Trustee alleges that a
> withdrawal of funds by an investment fund from its Madoff Securities customer
> account occurred because an investor in that fund sought redemption of its
> investment under the terms of its investment contract.  Assuming that either the
> investment fund or the investor qualifies as a financial institution or financial
> participant, and barring other circumstances that may appear on the facts of a
> given case, that situation appears to fit within the plain terms of Section 546(e):
> an initial transfer that was "made by or to (or for the benefit of) a . . . financial
> institution [or] financial participant . . . in connection with a securities contract."

*Id.* at *9 (footnote omitted).[19]  The logic of Judge Rakoff's hypothetical applies directly here,

where the investment fund was Sentry, a financial institution as shown above, and the investor

was Lombard Odier, also a financial institution.  And the Complaint is devoid of any allegation

that Lombard Odier knew of Madoff's fraud.

Second, while this Court and the District Court have previously ruled that Section 546(e)

cannot be invoked by a defendant with actual knowledge of Madoff's fraud, and while, as set

forth above, those rulings are inapplicable here, Defendant respectfully submits that there is

nothing in the language of Section 546(e) that supports creating an exception to its applicability

based on the knowledge of any transferee, as opposed to the debtor-transferor.[20]  That section

---

[19] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from
Madoff [S]ecurities to an investment fund customer and the subsequent transfer from the
investment fund to its redeeming investors may together comprise a 'settlement payment' under
*Enron [Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that
transfer may fall within the purview of Section 546(e), assuming it meets the statute's other
requirements." *Id*. at *9 n.5.

[20] This is an open question at the Circuit level, and Lombard Odier expressly preserves it.
Although the Second Circuit in *Fishman* noted that the defendants there had "every reason to

provides for only one exception to the safe harbor: a claim under Section 548(a)(1)(A), which requires the Trustee to allege and prove intentional fraud by the transferor, and which only has a two year lookback period. *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant") (citations omitted).[21] Thus, the exception to the safe harbor articulated in *Cohmad*, *i.e.*, that if the transferee from whom the Trustee seeks to recover knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e) (*Cohmad*, 2013 WL 1609154, at *7), is not supported by the text of the statute.

## IV.    THE COMPLAINT FAILS TO CONTAIN A "SHORT AND PLAIN STATEMENT OF THE CLAIM"

Beyond the Complaint's many infirmities, it fails for the overarching reason that it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief" as required under Rule 8(a)(2). In particular, although the Trustee has had nearly a decade to amend his pleadings to provide Lombard Odier with sufficient notice of the claims it faces, the Trustee instead depends on incorporating by reference an entire separate complaint filed in another proceeding. *See* Compl. ¶ 35 ("The Trustee incorporates by reference the allegations contained in the [Trustee's Fairfield Amended Complaint] as if fully set forth herein."). That complaint is 217 pages and 798 paragraphs, and contains allegations and claims against parties other than Sentry and Sigma which bear no relevance to this case. In contrast, the Complaint

---

believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have been different had that not been the case.

[21] Nor does transferee knowledge play any role in the definitions of "settlement payment," 11 U.S.C. § 741(8), or "securities contract," *id*. 741(7).

here is a mere 16 pages and 63 paragraphs even though the Trustee has had access to the information he has needed to amend his pleadings for over ten years.

The complaint the Trustee purports to incorporate into his pleadings has also since been superseded by a further amended complaint. Thus, Lombard Odier is left to guess not only which allegations of the incorporated pleading it must respond to, but even *which pleading*: the complaint referenced in paragraph 35; or the amended one. Neither alternative is acceptable under the Federal Rules.[22]

Such wholesale incorporation of since mooted pleadings in another action is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (internal quotations omitted). Indeed, "if all of the allegations in the prior pleadings are deemed to be incorporated into the [Complaint], then the [Complaint] would become an unintelligible morass of self-contradictory allegations" and "would in itself be grounds for dismissing the [Complaint pursuant] to Rules 12(b)(6) and 8(a)(2)." *Id*. 462, n. 72.

Accordingly, the Complaint should be dismissed for failure to comply with Rule 8(a). In addition, paragraph 35 of the Complaint should be stricken pursuant to Rule 12(f).

## **CONCLUSION**

For the foregoing reasons, Lombard Odier respectfully requests that the Court dismiss the Complaint in its entirety.

---

[22] If the former, Lombard Odier would be unreasonably forced to answer allegations that the Trustee no longer stands by. *Cf*. Fed. R. Civ. P. 8(b)(1) (requiring response to "a pleading"). If the latter, the Complaint would in effect become automatically self-amending, in contravention of Federal Rule of Civil Procedure 15's dictates governing the amendment of pleading.

Dated: January 28, 2022
      New York, New York

Respectfully Submitted,

ALLEGAERT BERGER & VOGEL LLP

By: */s/* John F. Zulack_____
John F. Zulack
Lauren J. Pincus
111 Broadway, 20th Floor
New York, New York 10006
Tel. No.: 212-571-0550
Email: jzulack@abv.com
Email: lpincus@abv.com

MAYER BROWN LLP

By: */s/* Mark G. Hanchet_____
Mark G. Hanchet
Kevin C. Kelly
1221 Avenue of the Americas
New York, New York 10020
Tel. No.: (212) 506-2500
Email: mhanchet@mayerbrown.com
Email: kkelly@mayerbrown.com

Marc R. Cohen
1999 K St., NW
Washington, DC 20006
Tel. No.: (202) 263-3000
Email: mcohen@mayerbrown.com

*Counsel for Defendant Banque Lombard
Odier & Cie SA*