# EXHIBIT 3

EXHIBIT A

FORM OF AGREEMENT BETWEEN
THE TRUSTEE AND KENNETH KRYS AND JOANNA LAU, SOLELY IN THEIR
RESPECTIVE CAPACITIES AS THE FOREIGN REPRESENTATIVES FOR AND
JOINT LIQUIDATORS OF FAIRFIELD SENTRY LIMITED,
FAIRFIELD SIGMA LIMITED, AND FAIRFIELD LAMBDA LIMITED

## AGREEMENT

This Agreement, dated as of May 9, 2011 ("Agreement"), is made by and among Irving H. Picard, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended ("SIPA"), of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and Kenneth Krys and Joanna Lau (together with their predecessors, the "Liquidators" or the "Joint Liquidators"), solely in their respective capacities as the Foreign Representatives for and Joint Liquidators of Fairfield Sentry Limited, a British Virgin Islands corporation ("Fairfield Sentry"), Fairfield Sigma Limited, a British Virgin Islands corporation ("Fairfield Sigma"), and Fairfield Lambda Limited, a British Virgin Islands corporation ("Fairfield Lambda" and, together with Fairfield Sentry and Fairfield Sigma, the "Fairfield Funds"), on the other hand (each of the Trustee, the Liquidators, Fairfield Sentry, Fairfield Sigma and Fairfield Lambda, a "Party" and, collectively, the "Parties").

## BACKGROUND

A.    Bernard L. Madoff Investment Securities LLC ("BLMIS") was a registered broker-dealer and a member of the Securities Investor Protection Company ("SIPC").

B.    On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Bernard L. Madoff ("Madoff"). On December 12, 2008, the District Court entered an order which among other things appointed a receiver for the assets of BLMIS (No. 08-CV-10791(LSS)).

C.    On December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS (the "BLMIS Estate").

D.    Fairfield Sentry is a British Virgin Islands ("BVI") company that at all relevant times, was a customer of BLMIS.

E.    Fairfield Sigma and Fairfield Lambda are BVI companies that at all relevant times, had as their respective sole purposes to invest funds in Fairfield Sentry.

F.    Pursuant to an Order entered on April 23, 2009, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands (the "BVI Court") appointed Christopher Stride to be the Liquidator for Fairfield Lambda, which appointment commenced the winding up of Fairfield Lambda pursuant to the British Virgin Islands Insolvency Act 2003 (the "Lambda Proceeding").

G.     Pursuant to an Order entered on July 21, 2009, the BVI Court (i) permitted the commencement of the winding up of Fairfield Sentry in accordance with the British Virgin Islands Insolvency Act 2003 (the "Sentry Proceeding"), and (ii) appointed Kenneth Krys and Christopher Stride as the Joint Liquidators for Fairfield Sentry.

H.     Pursuant to an Order entered on July 21, 2009, the BVI Court (i) permitted the commencement of the winding up of Fairfield Sigma in accordance with the British Virgin Islands Insolvency Act 2003 (the "Sigma Proceeding" and, together with the Lambda Proceeding and the Sentry Proceeding, the "BVI Proceedings"), and (ii) appointed Kenneth Krys and Christopher Stride to be the Joint Liquidators for Fairfield Sigma.

I.     On July 22, 2010, in proceedings commenced by the Liquidators pursuant to Chapter 15 of the Bankruptcy Code (the "Chapter 15 Proceedings"), the Bankruptcy Court entered an order recognizing the BVI Proceedings as foreign main proceedings and granting related relief to the Liquidators.

J.     On or about September 6, 2010, the BVI Court issued notices acknowledging Christopher Stride's resignation and Joanna Lau's appointment as Joint Liquidator with Kenneth Krys of each of the Fairfield Funds.

K.     Fairfield Sentry was a customer of BLMIS and maintained customer accounts, Accounts 1FN012, 1FN045, 1FN069, 1FN070 with BLMIS (the "Fairfield Sentry Accounts") commencing in or about 1990.  The Fairfield Sentry Accounts are listed as Exhibit A to this Agreement.  According to the Trustee, between then and the Filing Date, on an overall basis Fairfield Sentry deposited into the Fairfield Sentry Accounts a total of one billion, one hundred ninety-two million, five hundred thirty-six thousand, three hundred forty-two dollars ($1,192,536,342) in excess of the amount of withdrawals that Fairfield Sentry made from the accounts (the "Sentry Net Loss").  According to the Trustee, Fairfield Sentry withdrew one billion one hundred thirty million dollars ($1,130,000,000) from the Fairfield Sentry Accounts within ninety days before the Filing Date ("90 Day Withdrawals") and an additional one billion nine hundred twenty four million dollars ($1,924,000,000) from the Fairfield Sentry Accounts, during the period more than 90 days, but less than six years, before the Filing Date (the "Pre 90-Day Withdrawals" and, together with the 90 Day Withdrawals, the "Withdrawals").

L.     Prior to the appointment of the Liquidators, Fairfield Sentry filed three customer claims in the SIPA Proceeding (assigned claim numbers 008037, 007898 and 11251, later amended by claim numbers 011234 and 11429) (such claims, collectively, the "Sentry SIPA Claim") alleging aggregate losses from the Fairfield Sentry Accounts of six billion, two hundred eighty-four million, three hundred twenty-one thousand, five hundred eighty-one dollars ($6,284,321,581) (the "Last Statement Amount").  The Sentry SIPA Claim, including the relevant BLMIS Account Numbers 1FN012, 1FN045, 1FN069, 1FN070, is included as Exhibit B to this Agreement.  The Sentry SIPA Claim, as filed, asserts that Fairfield Sentry is entitled to allowance of a customer claim in the SIPA proceeding in an amount reflected on Fairfield Sentry's BLMIS account statements for the period ending November 30, 2008, i.e., the Last Statement Amount.

M. The Trustee has disputed that Fairfield Sentry is entitled to allowance of a customer claim in the amount of the Last Statement Amount. On March 1, 2010, the Honorable Burton R. Lifland, of the Bankruptcy Court, issued an opinion applying the Trustee's "net equity" calculation of customer claims as the difference between investment into BLMIS and amounts withdrawn (the "Net Equity Method"). On March 8, 2010 Judge Lifland entered an order implementing the decision and certifying it for immediate appeal for the United States Court of Appeals for the Second Circuit. According to the Trustee, the amount of the Sentry SIPA Claim based on the Net Equity Method is the Sentry Net Loss, i.e., One Billion, One Hundred Ninety-Two Million, Five Hundred Thirty-Six Thousand, Three Hundred Forty-Two Dollars ($1,192,536,342) (the "Sentry SIPA Net Equity Claim").

N. Prior to the appointment of the Liquidators, Fairfield Sigma filed four customer claims in the SIPA Proceeding (assigned claim numbers 011250, 011744, 011240 and 011249) claiming aggregate losses of seven hundred seventy-three million, six hundred thirty-five thousand, one hundred eighty-eight dollars ($773,635,188) (such claims, collectively, the "Sigma SIPA Claim"). On or about December 8, 2009, the Trustee issued a notice of denial of the Sigma SIPA Claim on the asserted basis that Sigma is not a customer of BLMIS within the meaning of 15 U.S.C. § 78*lll*(2) (the "Sigma Denial Notice"). On or about January 7, 2010, the Liquidators filed a timely objection to the Sigma Denial Notice in the SIPA Proceeding, and that objection remains pending. The Sigma SIPA Claim, the Sigma Denial Notice and the Liquidators' objection to the Sigma Denial Notice are included as Exhibit C to this Agreement.

O. Prior to the appointment of the Liquidators, Fairfield Lambda filed four customer claims in the SIPA Proceeding (assigned claim numbers 014661, 014761, 014762 and 014795) claiming aggregate losses of thirty-six million, six hundred seventy-six thousand, two hundred five dollars ($36,676,205) (such claims, collectively, the "Lambda SIPA Claim" and, together with the Sentry SIPA Claim and the Sigma SIPA Claim, the "Fairfield SIPA Claims"). On or about December 8, 2009, the Trustee issued a notice of denial of the Lambda SIPA Claim on the asserted basis that Lambda is not a customer of BLMIS within the meaning of 15 U.S.C. § 78*lll*(2) (the "Lambda Denial Notice"). On or about January 7, 2010, the Liquidators filed a timely objection to the Lambda Denial Notice in the SIPA Proceeding, and that objection remains pending. The Lambda SIPA Claim, the Lambda Denial Notice and the Liquidators' objection to the Lambda Denial Notice are included as Exhibit D to this Agreement.

P. The Trustee has brought an adversary proceeding against Fairfield Sentry, Fairfield Sigma, Fairfield Lambda and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd. et al.*, Adv. Pro. No. 09-01239 (BRL) (the "Adversary Proceeding"). In the Adversary Proceeding, the Trustee asserts that the Fairfield Funds are liable to the BLMIS Estate under 11 U.S.C. §§ 544, 547, 548, 550, SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281) for the Withdrawals made by Fairfield Sentry from BLMIS, and Fairfield Sentry's subsequent transfer of approximately Seven Hundred Fifty-Two Million, Three Hundred Thousand Dollars ($752,300,000) and Fifty-Two Million, Nine Hundred Thousand Dollars ($52,900,000) of the Withdrawals to Fairfield Sigma and Fairfield Lambda, respectively; specifically, the Trustee seeks, inter alia, recovery from the Fairfield Funds of an amount totaling Three Billion, Fifty-Four Million Dollars ($3,054,000,000). The Trustee has also asserted claims for turnover and accounting of the Withdrawals, and for disallowance of the Fairfield SIPA Claims.

Q.    All claims of the Trustee against the Fairfield Funds under 11 U.S.C. §§ 544, 547, 548 or 550, applicable provisions of SIPA, including § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270-281 shall be referred to herein as the "Avoiding Power Claims."

R.    The Liquidators, on behalf of each of the Fairfield Funds, have disputed any liability to the BLMIS Estate in connection with the Adversary Proceeding and the Avoiding Power Claims alleged therein.

S.    The Trustee, on the one hand, and the Liquidators, for each of the estates that they represent, on the other hand, desire to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation.

## AGREEMENT

1.    <u>Judgments Regarding the Trustee's Avoiding Power Claims</u>.  The Trustee and the Liquidators agree they shall jointly request the Bankruptcy Court to (i) enter a judgment against Fairfield Sentry in the amount of Three Billion, Fifty Four Million Dollars ($3,054,000,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Sentry (the "Sentry Judgment"), (ii) enter a judgment against Fairfield Sigma in the amount of Seven Hundred Fifty Two Million, Three Hundred Thousand Dollars ($752,300,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Sigma (the "Sigma Judgment") and (iii) enter a judgment against Fairfield Lambda in the amount of Fifty Two Million, Nine Hundred Thousand Dollars ($52,900,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Lambda (the "Lambda Judgment" and, together with the Sentry Judgment and the Sigma Judgment, the "Judgments"), each Judgment in the form attached hereto as Exhibit E.  By virtue of the mutual covenants and agreements contained in, and the consideration provided by, this Agreement, including (i) the cash payment to be made by the Liquidators to the Trustee as set forth below at Paragraph 2, infra, and (ii) the mutually agreed to reduction of the Sentry SIPA Net Equity Claim from One Billion, One Hundred Ninety-Two Million, Five Hundred Thirty-Six Thousand, Three Hundred Forty-Two Dollars ($1,192,536,432) to an allowed SIPA claim of Two Hundred Thirty Million Dollars ($230,000,000) as set forth below at Paragraph 13, infra, the Trustee agrees to forbear exercising any right to collect One Billion, One Hundred Thirty Million Dollars ($1,130,000,000) on the Sentry Judgment from Liquidators, the Fairfield Funds or their estates, leaving a non-forbearance amount of One Billion, Nine Hundred Twenty Four Million ($1,924,000,000) (the "Non-Forbearance Amount").  The Trustee shall have (i) an admitted claim in Fairfield Sentry's estate that is provable in the Sentry Proceeding for the full amount of the Sentry Judgment (the "Sentry Admitted Claim"), (ii) an admitted claim in Fairfield Sigma's estate that is provable in the Sigma Proceeding for the full amount of the Sigma Judgment (the "Sigma Admitted Claim"), and (iii) an admitted claim in Fairfield Lambda's estate that is provable in the Lambda Proceeding for the full amount of the Lambda Judgment (the "Lambda Admitted Claim" and, together with the Sentry Admitted Claim and the Sigma Admitted Claim, the "Admitted Claims").  Notwithstanding the foregoing, the Trustee's rights to enforce, collect on and/or satisfy the Judgments or any claims against the Liquidators and/or as against any of the Fairfield Funds, including, without limitation, the Admitted Claims, shall be limited solely to the

rights, remedies and considerations expressly provided in, under and by this Agreement (and such rights, remedies and considerations shall be the dividends paid to the Trustee on account of the Admitted Claims). For the avoidance of doubt, the Trustee shall not be entitled to, nor shall he seek, any distributions on account of the Admitted Claims in the BVI Proceedings or in any other proceedings. Interest shall not accrue on the Judgments. The Judgments shall be filed and entered by the Trustee on or after the Effective Date, defined below at Paragraph 18. The Judgments and the Admitted Claims shall not be assignable.

2.    Payment of Cash.  The Liquidators shall pay to the Trustee a total of Seventy Million Dollars ($70,000,000) (the "Settlement Payment") of Fairfield Sentry's cash as outlined in this Paragraph 2. On the Closing, as defined below at Paragraph 20, the Liquidators shall pay to the Trustee the sum of Twenty Four Million Dollars ($24,000,000). The Liquidators shall pay to the Trustee the balance of the Settlement Payment totaling Forty Six Million Dollars ($46,000,000) three (3) Business Days (as identified below) following the first to occur of (a) the first date when Fairfield Sentry's account at Citco Bank Nederland N.V.-Dublin branch (the "Citco Account") is no longer subject to an order of attachment; (b) the sale by the Liquidators of any Allowed Claim as defined in Paragraph 13; or (c) the aggregate receipt by the Liquidators of funds belonging to Fairfield Sentry equal to Forty Six Million Dollars ($46,000,000) from any source, other than from a Sharing Claim (as defined below), after the Closing (as defined below). Notwithstanding the foregoing, the Liquidators, in their sole discretion, may elect to pay the entire Settlement Payment to the Trustee prior to the occurrences outlined above. For the avoidance of doubt, none of Fairfield Sigma's cash shall be used to pay the Settlement Amount. For purposes of this Agreement, the term "Business Day" shall mean any day other than Saturday, Sunday, or a day that is a legal holiday in either New York City or the British Virgin Islands.

3.    Termination of Escrow Agreements.  The escrow agreements between the Trustee and the Liquidators dated as of September 24, 2009 and June 8, 2010, respectively (the "Escrow Agreements") (attached hereto as Exhibit F to this Agreement), shall terminate and be of no further force or effect upon receipt by the Trustee of the full amount of the Settlement Payment. Upon the termination of the Escrow Agreements, the Trustee shall have no interest in, rights to or control over any cash or cash equivalents or other property of the Liquidators or any of the Fairfield Funds, including, without limitation, the Fairfield Funds' non-BLMIS investments and the proceeds thereof, except as otherwise provided herein. Upon the receipt by the Trustee of the full amount of the Settlement Payment, the Parties shall jointly instruct the respective escrow agents under the Escrow Agreements to release all property that is subject thereto to the Liquidators. The Trustee hereby consents to (i) the transfer of all unattached funds of the Fairfield Funds in the Citco Account to Fairfield Sentry's accounts, and/or, as applicable, to Fairfield Sigma's or Fairfield Lambda's accounts, in the BVI at Scotiabank British Virgin Islands and/or VP Bank and Trust Company (BVI) (such accounts, collectively, the "Fairfield BVI Accounts"), (ii) the transfer of all funds of the Fairfield Funds in their Clydesdale Bank account in Great Britain, established pursuant to September 24, 2009 Escrow Agreement between the Parties to the applicable Fairfield BVI Accounts of the Fairfield Funds and (iii) the transfer of all proceeds of the Fairfield Funds' non-BLMIS investments to the applicable Fairfield BVI Accounts.

4.    <u>Redeemer Action Recoveries</u>.  So long as the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment have not been satisfied in full, the Liquidators shall pay to the Trustee fifteen percent (15%) of the Liquidators' Net Recoveries from all claims and causes of actions, asserted by the Liquidators (either on their behalf or on behalf of any of the Fairfield Funds) in any jurisdiction (including, without limitation, the State of New York and the British Virgin Islands) and based on any law (including, without limitation, the statutory and common law of the British Virgin Islands), seeking to recover payments made by or behalf any of the Fairfield Funds in connection with the redemption of shares in the Fairfield Funds ("<u>Redeemer Actions</u>"), and the Liquidators shall retain eighty-five percent (85%) of such Net Recoveries.  The Redeemer Actions include, but are not limited to, those pending actions identified on <u>Exhibit G</u> attached hereto.  The Liquidators shall provide reasonable notice to, and reasonably confer in good faith with, the Trustee prior to commencing any Redeemer Action not identified on <u>Exhibit G</u>.  The Liquidators shall retain one-hundred percent (100%) of the Net Recoveries from Redeemer Actions that the Liquidators receive once the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment are satisfied in full.  Except as otherwise provided herein, the Liquidators shall prosecute the Redeemer Actions at their sole expense, and the Trustee shall not, and shall have no right to, (i) intervene in or otherwise interfere with the Liquidators' prosecution of any Redeemer Actions, other than the Trustee's pursuit of the Subsequent Transferee Claims pursuant to Paragraphs 7, 8 and 9 below, or (ii) file, assert, pursue or prosecute any claims or causes of action against any shareholder of any of the Fairfield Funds, or any beneficiary thereof, seeking to recover payments made by or on behalf of any of the Fairfield Funds in connection with the redemption of shares in the Fairfield Funds, other than the Subsequent Transferee Claims pursuant to Paragraphs 7, 8 and 9 below.  For purposes of this Agreement, the term "<u>Net Recoveries</u>" shall mean the consideration of cash or a cash equivalent that is paid to the Liquidators pursuant to a settlement, judgment or other resolution of a claim or cause of action, and less the amount of the Liquidators' reasonable costs and/or expenses (including professional fees and expenses) incurred in connection with such claim or cause of action other than and expressly excluding any contingency or success fees of the Liquidators' attorneys (the "<u>Liquidator Expenses</u>").  The Liquidator Expenses (other than attorneys' contingency fees) shall be reasonably allocated to a particular claim or cause of action.  The Trustee shall have no right to object to or challenge the Liquidators' payment of any Liquidator Expenses reasonably incurred and properly allocated.  Further, for the avoidance of doubt, the Liquidators shall not be required to pay any amounts to the Trustee, or provide any credit to the Trustee, on account of the waiver, disallowance or reduction in amount of any claims against the Fairfield Funds, and any such waiver, disallowance or reduction in amount will not be credited against the Judgments.

5.    <u>Management Claim Recoveries</u>.  The Trustee, solely at the Trustee's expense, shall prosecute all claims and causes of action he has asserted in the Adversary Proceeding against the Fairfield Funds' former investment managers, investment advisors, managing entities, directors, partners, and officers, including but not limited to Fairfield Greenwich Group, Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Risk Services Limited, Fairfield Greenwich Limited, Fairfield International Managers, Inc., Walter M. Noel, Jr., Jeffrey Tucker, and all other individual persons named as defendants in the Adversary Proceeding (the "<u>Adversary Proceeding Claims</u>").  At the Closing, the Liquidators shall unconditionally and irrevocably assign to the Trustee any and all claims asserted by, or on behalf of, the Fairfield Funds against Fairfield Greenwich Group, Fairfield Greenwich

(Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Greenwich Limited, Fairfield Investment Mangers, Inc., Walter M. Noel, Jr., Jeffrey Tucker, Andres Piedrahita, Amit Vijayvergiya, Brain Francouer, Lourdes Barrenche, Cornelius Boele, Philip Toub, Richard Landsberger, Charles Murphy, Andrew Smith, Daniel Lipton, Mark McKeffrey, Harold Greisman, Santiago Reyes, Jacqueline Harrary, Robert Blum, Corina Noel-Piedrahita and Maria Teresa Pulido Mendoza in the action entitled *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.,* currently pending in the Bankruptcy Court, Adv. Pro. No. 10-03800 (BRL) (the "Liquidators' New York Action"), including but not limited to the Fairfield Funds' claims for Breach of Fiduciary Duty, Breach of Contract, Unjust Enrichment, Constructive Trust, Rescission of Investment Manager Contract based on Mutual Mistake, and Accounting (the "Assigned Claims" and, together with the Adversary Proceeding Claims, the "Management Claims"). For avoidance of doubt, the Management Claims shall not include claims or causes of action, if any, against the Liquidators or their agents, attorneys, employees, representatives or professionals.

In prosecuting the Assigned Claims, the Trustee shall assert only those substantive law claims and allegations set forth and contained in the Liquidators' New York Action and shall not assert any other substantive law claims or allegations as part of the Assigned Claims without the Liquidators' reasonable, written approval. Prior to the assignment of the Management Claims to the Trustee, the Liquidators, in their discretion, may amend their pleadings in the Liquidators' New York Action and shall confer in good faith with the Trustee with respect to the amendment in advance thereof. The Trustee shall retain one-hundred percent (100%) of the consideration received by the Trustee from the prosecution of the Management Claims until the Trustee recovers a gross amount of Two Hundred Million Dollars ($200,000,000) in the aggregate from such claims. The Trustee shall pay to the Liquidators fifteen percent (15%) of the gross consideration received by the Trustee from prosecution of the Management Claims in excess of Two Hundred Million Dollars ($200,000,000) in the aggregate, and the Trustee shall retain the remaining eighty five percent (85%) of the gross consideration received by the Trustee from the Management Claims in excess of Two Hundred Million Dollars ($200,000,000) in the aggregate. Except as otherwise provided in this Paragraph 5, the Liquidators shall not, and shall have no right to, intervene in or otherwise interfere with the Trustee's prosecution of the Management Claims, and the Trustee shall prosecute the Management Claims at his sole expense. The Trustee shall seek, in good faith, as part of any full or partial settlement of the Management Claims, a release of all claims by any settling party against the Fairfield Funds and the Liquidators.

6.     Service Provider Claim Recoveries. So long as the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment have not been satisfied in full, (i) the Liquidators shall retain one-hundred percent (100%) of the Net Recoveries from all claims and causes of action against the Fairfield Funds' custodians, administrators, accountants and auditors, including but not limited to PricewaterhouseCoopers LLP (Canada), PricewaterhouseCoopers Accountants N.V., Citco Fund Services (Europe) BV, Citco Bank Nederland N.V., Citco Global Custody N.V., Citco Global Custody (NA) N.V., Citco (Canada) Inc. and all affiliates of the foregoing entities (the "Service Provider Claims"), until the Liquidators collect Three Hundred Million Dollars ($300,000,000) in the aggregate from such claims, and (ii) the Liquidators shall pay to the Trustee fifteen percent (15%) of the Net Recoveries from Service Provider Claims in excess of Three Hundred Million Dollars

($300,000,000) in the aggregate, and the Liquidators shall retain the remaining eighty-five percent (85%) of such Net Recoveries. The Liquidators shall retain one-hundred percent (100%) of the Net Recoveries they receive from the Service Provider Claims once the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment are satisfied in full. The Liquidators shall prosecute the Service Provider Claims at their sole expense, and the Trustee shall not, and shall have no right to, intervene in or otherwise interfere with the Liquidators' prosecution of such actions.

7. <u>Designated Subsequent Transferee Claim Recoveries</u>. The Trustee in his sole discretion has commenced certain actions and may choose to commence additional actions against individuals and entities identified on <u>Exhibit H</u> hereto (the "<u>Designated Subsequent Transferees</u>" and "<u>Designated Subsequent Transferee Claims</u>") to recover transfers from BLMIS to Fairfield Sentry, and subsequently transferred to other individuals and/or entities (the "<u>Subsequent Transferee Claims</u>"). Said <u>Exhibit H</u>, attached and incorporated by reference hereto, is not, and is not intended to be, an exhaustive or inclusive list of all Subsequent Transferee Claims commenced, or to be commenced by the Trustee; provided, however, and except as otherwise provided in the last sentence of this Paragraph 7, that only the Subsequent Transferee Claims against the Designated Subsequent Transferees identified on <u>Exhibit H</u> shall be treated as provided in this Paragraph 7. The Trustee in his discretion has commenced and/or may commence Subsequent Transferee Claims against individuals and/or entities that are not Designated Subsequent Transferees to recover transfers from BLMIS to Fairfield Sentry, Fairfield Sigma, or Fairfield Lambda and subsequently transferred to such individuals and/or entities ("<u>Non-Designated Subsequent Transferees</u>" and "<u>Non-Designated Subsequent Transferee Claims</u>"), upon the Trustee's determination, in the exercise of his sole discretion, that his statutory duties require him to commence such Non-Designated Subsequent Transferee Claims; provided, however, that, with respect to Non-Designated Subsequent Transferee Claims not yet commenced, the Trustee shall provide reasonable notice to, and reasonably confer in good faith with, the Liquidators prior to commencing a Non-Designated Subsequent Transferee Claim; and provided, further, that the Trustee shall not commence a Non-Designated Subsequent Transferee Claim against Fairfield Sigma or Fairfield Lambda. Once the Trustee commences a Non-Designated Subsequent Transferee Claim, the case shall become a Subsequent Transferee Claim for purposes of this Agreement which shall, except as otherwise provided in the last sentence of this Paragraph 7, be treated as provided in either Paragraphs 8 or 9 of this Agreement, as applicable. The Trustee shall pay to the Liquidators forty percent (40%) of Subsequent Transferee Recoveries (as defined below) in connection with Designated Subsequent Transferee Claims, and the Trustee shall retain all other Subsequent Transferee Recoveries from such Designated Subsequent Transferee Claims. The Trustee shall prosecute all Subsequent Transferee Claims solely at his expense.

Pursuant to the cooperation and joint interest provisions set forth and contemplated by Paragraph 14 below, the Trustee and Liquidators shall be in regular communication about the commencement of any Subsequent Transferee Claims. As soon as is reasonably practicable following the Effective Date (defined below), the Liquidators shall take reasonable steps to enable the Trustee to prosecute Subsequent Transferee Claims against the Designated Subsequent Transferees that are subject to an existing action commenced by the Liquidators to the extent the parties mutually agree that any action by the Liquidators is required.

For purposes of this Agreement generally and Paragraphs 7, 8 and 9 herein specifically, the term "Subsequent Transferee Recoveries" shall mean the gross consideration that is paid to the Trustee pursuant to a settlement, judgment or other resolution of a Subsequent Transferee Claim; provided that if, in a particular action, the Trustee asserts a Subsequent Transferee Claim against an individual or entity and in the same action seeks to recover transfers made to or for the benefit of the defendant from one or more entities other than any of the Fairfield Funds, and the entire action is resolved without a judicially determined allocation of the total recoveries therein, the Subsequent Transferee Recoveries shall be deemed to be the gross amount of the Trustee's recoveries from such action, multiplied by a fraction, the numerator of which shall be the amounts claimed by the Trustee on account of transfers made to or for the benefit of the defendant from the Fairfield Funds, and the denominator of which shall be the total amount claimed by the Trustee in such action; provided, further, that any allocation of recoveries set forth in a settlement agreement resolving a Subsequent Transferee Claim shall have no effect on the amount of Subsequent Transferee Recoveries under this Agreement unless the Liquidators consent to such allocation in writing, which consent shall not be unreasonably withheld. To the extent that the Trustee commences a Subsequent Transferee Claim against a Non-Designated Subsequent Transferee and that action is neither a Common Defendant Claim as provided in and by Paragraph 8 below nor a Separately Treated Common Defendant Claim as provided in and by Paragraph 9 below, this Paragraph 7 shall apply to any such action.

8.    Common Defendant Claim Recoveries.    The Parties expressly acknowledge that the Liquidators have commenced or will commence certain Redeemer Actions, and the Trustee has commenced or will commence certain Subsequent Transferee Claims, against the same individuals or entities ("Common Defendants"), and the Trustee and the Liquidators expressly agree that a Redeemer Action and a Subsequent Transferee Claim may be prosecuted against a Common Defendant unless the Parties mutually determine in writing, in good faith, that only the Liquidators' Redeemer Action or only the Trustee's Subsequent Transferee Claim should proceed. Notwithstanding Paragraphs 4 and 7 above, and except as otherwise provided in this Paragraph 8 and in Paragraph 9 below, in the event that the Liquidators have commenced and are actively prosecuting a Redeemer Action and the Trustee has commenced and is actively prosecuting a Subsequent Transferee Claim against one or more Common Defendants ("Common Defendant Claims"), any and all Net Recoveries paid to the Liquidators and Subsequent Transferee Recoveries paid to the Trustee by or on behalf of Common Defendants in connection with any Common Defendant Claims (collectively, "Common Defendant Recoveries") shall be deemed to be pooled and aggregated by the Parties with respect to each such Common Defendant and allocated among the Parties as follows:

(i)    The Liquidators shall be paid or retain (as applicable) Eighty-Five Percent (85%) of the Fictitious Profit Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Fifteen Percent (15%) of the Fictitious Profit Component, if any;

(ii)    The Liquidators shall be paid or retain (as applicable) Sixty-Five Percent (65%) of the BVI Vulnerability Period Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Thirty-Five Percent (35%) of the BVI Vulnerability Period Component, if any; and

9

(iii)    The Liquidators shall be paid or retain (as applicable) Forty Percent (40%) of the Other Principal Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Sixty Percent (60%) of the Other Principal Component, if any.

Notwithstanding the foregoing, the allocation set forth in this Paragraph 8 shall not apply to (i) Subsequent Transferee Recoveries from the Designated Subsequent Transferees identified on Exhibit H hereto, and such Subsequent Transferee Recoveries shall, in all such Designated Subsequent Transferee Claims, be allocated among the Parties pursuant to Paragraph 7 above, or (ii) Non-Designated Subsequent Transferees identified on Exhibit I hereto, and such Subsequent Transferee Recoveries shall, in all such Non-Designated Subsequent Transferee Claims, be allocated among the Parties pursuant to Paragraph 9 below.

For purposes of this Agreement, (x) the term "Fictitious Profit Component" shall mean and include the first Common Defendant Recoveries up to and including the total amounts claimed by the Liquidators in the applicable Redeemer Action on account of payments made to or for the benefit of the applicable Common Defendant from each Fairfield Fund in excess of the amounts such Common Defendant invested in each such Fairfield Fund (directly or indirectly) as determined according to the Fairfield Funds' books and records (if and to the extent there is such excess); (y) the term "BVI Vulnerability Period Redemptions" shall mean the amounts claimed by the Liquidators in the applicable Redeemer Action on account of payments made to or for the benefit of each Common Defendant in connection with the redemption of shares in the Fairfield Funds (i) from and including April 21, 2007 and thereafter, in the case of redemption of shares in Fairfield Sentry, (ii) from and including April 23, 2007 and thereafter, in the case of redemption of shares in Fairfield Sigma and (iii) from and including February 27, 2007 and thereafter, in the case of redemption of shares in Fairfield Lambda, in all cases, less the Fictitious Profit Component for such Common Defendant, if any; and (z) the term "Other Principal Redemptions" shall mean the total amounts claimed by the Trustee in the applicable Subsequent Transferee Claim on account of payments made to or for the benefit of each Common Defendant in connection with the redemption of shares in the Fairfield Funds, less the BVI Vulnerability Period Redemptions, if any; and (xx) the term "BVI Vulnerability Period Pro Rata Share" shall mean a fraction, the numerator of which is the BVI Vulnerability Period Redemptions, and the denominator of which is the BVI Vulnerability Period Redemptions plus the Other Principal Redemptions; (yy) the term "BVI Vulnerability Period Component" shall mean the amount of the Common Defendant Recoveries less the Fictitious Profit Component, if any, multiplied by the BVI Vulnerability Period Pro Rata Share; and (zz) the term "Other Principal Component" shall mean the amount of the Common Defendant Recoveries less (i) the Fictitious Profit Component, if any, and (ii) the BVI Vulnerability Period Component, if any.

Notwithstanding the foregoing: (a) in the event that all of the Liquidators' claims against a Common Defendant asserted pursuant to the British Virgin Islands Insolvency Act 2003 are dismissed with prejudice prior to the payment of the applicable Common Defendant Recoveries to the Trustee and/or the Liquidators (as applicable), then (i) the BVI Vulnerability Period Component as to such Common Defendant Recoveries shall be zero and (ii) the Other Principal Component as to such Common Defendant Recoveries shall be the amount of Common Defendant Recoveries less the Fictitious Profit Component, if any; (b) in the event that a Subsequent Transferee Claim against a Common Defendant is dismissed with prejudice prior to

10

the resolution of a Redeemer Action against such Common Defendant, then the Liquidators' Net Recoveries from such Redeemer Action shall not constitute Common Defendant Recoveries, and such Net Recoveries shall be allocated among the Parties in accordance with Paragraph 4; and (c) in the event that the Fictitious Profit Component, BVI Vulnerability Period Component, and/or Other Principal Component of any Common Defendant Recoveries are determined pursuant to a settlement agreement mutually agreed to in writing by the Parties hereto, judgment, jury verdict form, jury interrogatories or other judicial adjudication with respect to the applicable Common Defendant Claim, such determination shall control and be used for purposes of determining the allocation of such Common Defendant Recoveries pursuant to this Paragraph 8.

9. Separately Treated Common Defendant Claim Recoveries. Notwithstanding Paragraph 8 above, unallocated Common Defendant Recoveries from Common Defendant Claims against the Non-Designated Subsequent Transferees identified on Exhibit I hereto ("Separately Treated Common Defendants" and "Separately Treated Common Defendant Claims") shall be deemed to be pooled and aggregated by the Parties with respect to each such Separately Treated Common Defendant and allocated among the Parties as follows:

(i) The Liquidators shall be paid or retain (as applicable) Eighty-Five Percent (85%) of the Pro Rata Fictitious Profit Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Fifteen Percent (15%) of the Pro Rata Fictitious Profit Component, if any; and

(ii) The Liquidators shall be paid or retain (as applicable) Forty Percent (40%) of the Pro Rata Principal Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Sixty Percent (60%) of the Pro Rata Principal Component, if any.

For purposes of this Agreement, (x) the term "Pro Rata Fictitious Profit Component" shall mean the applicable Common Defendant Recoveries multiplied by a fraction, the numerator of which shall be the total amounts claimed by the Liquidators in the applicable Redeemer Action on account of payments made to or for the benefit of the applicable Common Defendant from each Fairfield Fund in excess of the amounts such Common Defendant invested in each such Fairfield Fund (directly or indirectly) as determined according to the Fairfield Funds' books and records (if and to the extent there is such excess), and the denominator of which shall be the total amounts claimed by the Trustee in the applicable Subsequent Transferee Claim on account of payments made to or for the benefit of such Common Defendant in connection with the redemption of shares in the Fairfield Funds; and (y) the term "Pro Rata Principal Component" shall mean the applicable Common Defendant Recoveries less the Pro Rata Fictitious Profit Component. Notwithstanding the foregoing, in the event that the Pro Rata Fictitious Profit Component and/or Pro Rata Principal Component of any Common Defendant Recoveries are determined pursuant to a settlement agreement mutually agreed to in writing by the Parties hereto, judgment, jury verdict form, jury interrogatories or other judicial adjudication with respect to the applicable Separately Treated Common Defendant Claim, such determination shall control and be used for purposes of determining the allocation of such Common Defendant Recoveries with respect to Separately Treated Common Defendant Claims pursuant to this Paragraph 9.

10.     JPMC Claim Recoveries.  The Trustee shall pay to the Liquidators Thirty-Three and Two-Tenths percent (33.2%) of the first gross consideration the Trustee receives from any of the Trustee's and/or BLMIS Estate's claims or causes of action against JPMorgan Chase, N.A. and/or any of its affiliates in an adversary proceeding entitled, *Picard v. JP Morgan Chase & Co.*, which claims were initially filed in the Bankruptcy Court and, following decision on a motion to withdraw the reference, are currently pending in the United States District Court for the Southern District of New York, Case No. 11-cv-00913 (the "JPMC Claims"), until the Liquidators are paid Eighty Eight Million Dollars ($88,000,000) from such consideration.  The Trustee shall prosecute the JPMC Claims solely at his expense, and the Liquidators shall not, and shall have no right to, intervene in or otherwise interfere with the Trustee's prosecution of the JPMC Claims, except if, and only to extent that, the Trustee expressly agrees in writing otherwise.  The Liquidators shall have no right to any consideration received by the Trustee in connection with the JPMC Claims once the Liquidators are paid Eighty Eight Million Dollars ($88,000,000) in accordance with the terms hereof; provided, however, that each dollar of the Trustee recovers from the JPMC Claims in excess of $88,000,000 shall be credited to the Judgments pursuant to Paragraph 11 below, until the Trustee recovers Two-Hundred Sixty-Five Million Dollars ($265,000,000) in the aggregate from such claims.  Within five (5) Business Days after the Effective Date (defined below), the Liquidators shall dismiss with prejudice all claims and causes of action they have asserted against JPMorgan Bank, N.A., JPMorgan (Suisse) S.A., JPMorgan Securities Limited and JPMorgan Trust Company (Cayman).

11.     Application of Recoveries to the Judgments.  Any and all recoveries of monies from the Redeemer Actions, Management Claims, Service Provider Claims, Designated Subsequent Transferee Claims, Non-Designated Subsequent Transferee Claims, Common Defendant Claims, Separately Treated Common Defendant Claims and the JPMC Claims (with respect to the JPMC Claims, as provided in Paragraph 10 above) (collectively, the "Sharing Claims") that are paid, turned over or credited to, or otherwise retained or received by, the Trustee hereunder ("Judgment Reducing Recoveries") shall reduce, on a dollar-for-dollar basis, each of (i) the outstanding amount to be paid by Fairfield Sentry towards satisfying the Non-Forbearance Amount of the Sentry Judgment, and (ii) the outstanding amount to be paid by either (x) Fairfield Sigma towards satisfying the Sigma Judgment or (y) Fairfield Lambda towards satisfying the Lambda Judgment, to be determined by the Liquidators in their sole discretion. For the sake of clarity, each dollar of Judgment Reducing Recoveries shall reduce the outstanding amounts owing on the Non-Forbearance Amount of the Sentry Judgment by one dollar and, at the same time and at the Liquidators' discretion, either the Sigma Judgment or the Lambda Judgment, by one dollar.

12.     Allocation of Shared Recoveries.  On the date that is three (3) months from the Effective Date of this Agreement, and every three (3) months thereafter (each such date, a "Reconciliation Date"), the Trustee and the Liquidators shall jointly and in good faith determine and reconcile the consideration (cash or otherwise) that is payable to each from the Sharing Claims.  If the Trustee is entitled to payment from the Liquidators in connection with the Sharing Claims, the Liquidators shall make a cash payment to the Trustee, to an account identified by the Trustee, of the amount owed to the Trustee, plus any interest that has been earned on and is specifically allocable to such amount, within five (5) Business Days after the applicable Reconciliation Date.  If the Liquidators are entitled to payment from the Trustee in connection with the Sharing Claims, the Trustee shall make a cash payment to the Liquidators, to

one or more of the Fairfield BVI Accounts as identified by the Liquidators, of the amount owed
to the Liquidators, plus any interest that has been earned on and is specifically allocable to such
amount, within five (5) Business Days after the applicable Reconciliation Date. Any amounts
recovered by a Party that are subject to payment, turnover or allocation to another Party
hereunder shall be held in trust for the benefit of such Party. If a dispute arises between the
Parties as to the amounts payable to any Party from recoveries on the Sharing Claims, and such
dispute is not resolved within thirty (30) days following a Reconciliation Date, the Parties
consent to the jurisdiction of the Bankruptcy Court to resolve such dispute. For the avoidance of
doubt, the Trustee shall not be entitled to share in any recoveries from claims or causes of action
prosecuted by the Liquidators, and the Liquidators shall not be entitled to share in any recoveries
from claims or causes of action prosecuted by the Trustee, except for recoveries from the Sharing
Claims.

        13.    Allowance of a Fairfield Sentry Customer Claim. Upon the occurrence of
the making of the Twenty Four Million Dollar ($24,000,000) partial payment of the Settlement
Payment as set forth in Paragraph 2 above, and notwithstanding Section 502(d) of the
Bankruptcy Code, the Trustee shall allow a Fairfield Sentry customer claim pursuant to 15
U.S.C. § 78*lll* (11) equal in priority to other allowed customer claims against the BLMIS Estate
(the "Allowed Claim"), in the initial amount of Seventy Eight Million Dollars ($78,000,000).
Upon the payment of the balance of the Settlement Payment as set forth in Paragraph 2 above,
the Trustee shall increase the amount of the Allowed Claim by the amount of One Hundred Fifty
Two Million Dollars ($152,000,000) resulting in an Allowed Claim in a final amount of Two
Hundred Thirty Million Dollars ($230,000,000) (the "Final Amount"). The amount of the
Allowed Claim represents Nineteen and Two-Tenths percent (19.2%) (the "Settlement
Percentage") of the Sentry SIPA Net Equity Claim. The Liquidators shall receive the full benefit
of any SIPC customer advances under Section 9 of SIPA. The payment of any sums to the
Trustee by the Liquidators and/or the Fairfield Funds or via recoveries of monies from the
Sharing Claims shall not serve to increase the Allowed Claim. Notwithstanding any other
language in this Agreement, in the event that, as a result of a final, non-appealable judicial
determination and order of the Net Equity Method issue, allowed customer claims against
BLMIS are ultimately calculated based on the amounts reflected on a customer's BLMIS
account statement for the period ending November 30, 2008 (the "Last Statement Method"), or
to include other amounts beyond the Net Equity Method (including, for example, if customers
are entitled to receive interest on their deposits with BLMIS) (together with the Last Statement
Method, the "Modified Net Equity Method"), the amount of the Allowed Claim shall be
calculated in the same manner as other allowed customer claims are calculated pursuant to the
Modified Net Equity Method, provided that, in such event, the allowed amount of the Allowed
Claim shall equal the product of multiplying the Settlement Percentage of nineteen and two-
tenths percent (.192) times the amount of the Sentry SIPA Claim as calculated pursuant to the
Modified Net Equity Method (the "Adjusted Allowed Claim"). The Trustee shall not seek to
subordinate, under principles of equitable subordination or any other basis (including, but not
limited to, pursuant to Section 510(c) of the Bankruptcy Code), the Allowed Claim or the
Adjusted Allowed Claim (as applicable) below allowed customer claims in the SIPA Proceeding.
For the avoidance of doubt, in the event that valid customer claims against BLMIS are ultimately
calculated using the Last Statement Method without any other adjustments, the Adjusted
Allowed Claim would total One Billion Two Hundred Six Million Five Hundred Eighty Nine
Thousand Seven Hundred Forty Three Dollars ($1,206,589,743), which amount is calculated by

multiplying the Last Statement Amount of Six Billion Two Hundred Eighty Four Million Three Hundred Twenty One Thousand Five Hundred Eighty One Dollars ($6,284,321,581) times Nineteen and Two Tenths Percent (.192). The Bankruptcy Court's order approving this Agreement shall provide for the allowance of the initial amount of the Allowed Claim and the increase of the Allowed Claim as provided in this Paragraph 13.

14.    Cooperation in Pursuing and Resolving the Sharing Claims. Through a separate joint interest agreement, to be entered into by the Parties as soon as reasonably practicable following the Effective Date, the Trustee and the Liquidators each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims. The Trustee and the Liquidators each agree to provide reasonable cooperation and assistance to the other Party in connection with the prosecution of the Sharing Claims, provide the other with a reasonable opportunity to consider the terms for resolving any Sharing Claims and confer in good faith regarding such terms; provided, however, that the Party authorized under this Agreement with the right and/or responsibility of prosecuting a Sharing Claim (such Party, the "Prosecuting Party") shall not be required to obtain the consent of the other Party to resolve or settle the Prosecution Party's claim. Within five (5) Business Days following the settlement or other resolution of a Sharing Claim, the Prosecuting Party shall (i) notify the other Party of the amounts, if any, paid or to be paid to the Prosecuting Party in connection therewith and (ii) provide the other Party with a copy of the applicable settlement agreement, if any, subject to compliance with any applicable confidentiality obligations. If the Liquidators request that the Trustee, on behalf of himself, BLMIS and/or its estate, release claims against a person or entity in connection with the settlement of any of the Sharing Claims prosecuted by the Liquidators against such person or entity, the Trustee agrees that he shall not unreasonably refuse to provide such release. If the Trustee requests that the Liquidators, on behalf of themselves, any of the Fairfield Funds and/or their estates, release claims against a person or entity in connection with the settlement of any of the Sharing Claims prosecuted by the Trustee against such person or entity, the Liquidators agree that they shall not unreasonably refuse to provide such release. The Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims. The Trustee and the Liquidators further agree and stipulate that neither this Agreement nor any action taken thereunder constitutes the waiver of any privilege or immunity of the Trustee or the Liquidators or their respective counsel.

15.    Release by the Trustee. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee, on behalf of himself, BLMIS and its estate hereby releases, acquits and forever discharges each of the Fairfield Funds, the Liquidators, individually and in their capacities as Liquidators, and all of the Liquidators' agents, representatives, attorneys, employees and professionals from any and all Trustee Released Claims (as defined below). The Trustee and the Liquidators expressly agree this release shall not affect or encompass any claims by the Trustee against any third party, including but not limited to, the Fairfield Funds' respective former officers, directors, custodians, administrators, accountants, auditors, investment advisors and management companies, and the Fairfield Funds' former and present investors or shareholders. For purposes of this Agreement, the term "Trustee Released Claims" shall mean any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages,

judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future (including, without limitation, the claims asserted against the Fairfield Funds in the Adversary Proceeding), except for any and all claims and rights (and the enforcement thereof) of the Trustee and obligations of the Liquidators arising under this Agreement.

16.    Release by the Liquidators and the Fairfield Funds.  In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Liquidators, on behalf of themselves, each of the Fairfield Funds and their respective estates, hereby release, acquit and forever discharge the Trustee and all of the Trustee's agents, representatives, attorneys, employees and professionals from any and all Liquidator Released Claims (as defined below). The Trustee and the Liquidators expressly agree this release shall not affect or encompass (i) any claims by the Liquidators or any of the Fairfield Funds against any third party, including, but not limited to, the Fairfield Funds' investors and shareholders and former directors, auditors, managers, investment advisors, administrators, custodians and other service providers, (ii) any claims by any creditors or shareholders of, or investors in, any the Fairfield Funds against BLMIS or the BLMIS Estate, or (iii) the status or resolution of the Sigma SIPA Claim or the Lambda SIPA Claim, which shall be determined in a manner consistent with the customer claims asserted by other indirect investors in BLMIS.  For purposes of this Agreement, (i) the term "Liquidator Released Claims" shall mean any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future, except for the Fairfield SIPA Claims, the Allowed Claim, the Adjusted Allowed Claim (if applicable), and/or any and all claims and rights (and the enforcement thereof) of the Fairfield Funds and obligations of the Trustee arising under this Agreement; and (ii) the term "Released Claims" shall mean, collectively, the Trustee Released Claims and the Liquidator Released Claims.

17.    Unknown Claims. Unknown Claims shall mean any Released Claim, as defined herein, that the Trustee and/or the Liquidators do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement.  With respect to any and all Released Claims in Paragraphs 15 and 16 of this Agreement, the Trustee and the Liquidators shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Trustee and the Liquidators expressly waive, and shall be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code section 1542. The Trustee and/or the Liquidators may hereafter

discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Trustee and the Liquidators shall expressly have and shall be deemed to have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence or such different or additional facts. Each of the Trustee and the Liquidators acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

18. <u>Bankruptcy Court and BVI Court Approval; Effective Date; Termination</u>. This Agreement is subject to, and shall become effective and binding on the Parties upon, and only upon, the later of both, (i) fourteen days following the Bankruptcy Court's entry of an order approving this Agreement in the SIPA Proceeding that is not subject to a timely stay by any court of competent jurisdiction and (ii) fourteen days following the BVI Court's entry of an order approving this Agreement that is not subject to a timely stay by any court of competent jurisdiction (the date when this Agreement becomes effective and binding on the Parties, the "<u>Effective Date</u>"). The form of the approval order in the SIPA Proceeding shall be subject to the Liquidators' reasonable approval. The Trustee shall use his reasonable efforts to obtain approval of the Agreement in the SIPA Proceeding as promptly as practicable after the date of this Agreement. The form of the approval order in the BVI Proceedings shall be subject to the Trustee's reasonable approval. The Liquidators shall use their reasonable efforts to obtain approval of the Agreement in the BVI Proceedings as promptly as practicable after the date of this Agreement. If this Agreement has not become effective as provided in this Paragraph 18 within Three Hundred Sixty (360) days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this Agreement (other than this Paragraph 18) shall terminate and be void, (b) all of the statements, concessions, consents and agreements contained in the Agreement (other than this Paragraph 18) shall be void; and (c) none of the Trustee, the Liquidators, or any of the Fairfield Funds may use or rely on any such statements, concessions, consents or agreements in any public statement or litigation involving the SIPA Proceeding, the BVI Proceedings or the Chapter 15 Proceedings, any case or proceeding relating to the SIPA Proceeding, the BVI Proceedings or the Chapter 15 Proceedings or any case or proceeding relating to any of the Fairfield Funds, BLMIS or Madoff.

19. <u>Use of Complaint</u>. The Parties agree and acknowledge that the Liquidators, on behalf of themselves and each of the Fairfield Funds, deny any liability to the BLMIS Estate, do not admit to any of the allegations in the complaint or the amended complaint filed in the Adversary Proceeding, and none of the allegations in such complaints shall be binding on or admissible against the Liquidators or any of the Fairfield Funds in any proceeding.

20. <u>Closing</u>. There shall be a closing ("<u>Closing</u>") on the Effective Date of this Agreement. On the date when the Settlement Payment is paid in full pursuant to Paragraph 2 hereof, whether on the date of the Closing or some later date, (a) the Trustee shall pay Fairfield Sentry $500,000 from SIPC advances under Section 9 of SIPA to one or more of the Fairfield BVI Accounts as identified by the Liquidators, which amount may, prior to the payment in full

of the Settlement Payment, and with the mutual written consent of the Parties, such consent not to be reasonably withheld, be paid by setoff against the Settlement Payment; (b) the amount of the Allowed Claim shall be increased to the Final Amount without any further action by any of the Parties (subject to the adjustment of such amount as provided for in Paragraph 13); (c) the releases contained in Paragraphs 15 and 17 in favor of the Liquidators and the Fairfield Funds shall become effective without any further action by any of the Parties; and (d) the Escrow Agreements referenced in Paragraph 3 of this Agreement shall terminate without any further action by any of the Parties.

21.    Liquidators' and Trustee's Authority.    The Liquidators represent and warrant to the Trustee that, as of the date hereof, and subject to the approval of the BVI Court as set forth in Paragraph 18 above, each of them has the full power, authority and legal right to execute and deliver, and to perform his or her respective obligations under, this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his or her respective obligations under this Agreement.    The Trustee represents and warrants to the Liquidators that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in Paragraph 18 above, he has the full power, authority and legal right to execute and deliver, and to perform his obligations under, this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement.

22.    Further Assurances.    The Trustee and the Liquidators shall execute and deliver any document or instrument reasonably requested by either of them after the date of this Agreement to effectuate the intent of this Agreement.

23.    Entire Agreement.    This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings concerning the subject matter hereof.

24.    No admission.    This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession or admission by any Party of any fault, liability or wrongdoing whatsoever. This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any wrongdoing or liability. Notwithstanding the foregoing, the Judgments may be used by the Trustee to prosecute a Subsequent Transferee Claim, and then for the purpose of establishing the avoidance of the Withdrawals.

25.    Amendments, Waiver.    This Agreement may not be terminated, waived, amended or modified in any way except in a writing signed by all the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

26.    Assignability.    No Party hereto may assign his or her rights under this Agreement to a third party without the prior written consent of each of the other Parties hereto.

17

27.   Successors Bound.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

28.   No Third Party Beneficiary.  The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

29.   Applicable Law.  This Agreement shall be construed and enforced in accordance with the laws of the State of New York (without regard to its conflict of laws provisions); provided, however, that the BVI Court's approval of this Agreement pursuant to Paragraph 18 hereof shall be in accordance with the law of the BVI.

30.   Exclusive Jurisdiction.  The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any action to enforce this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action.  The Parties agree that no Party shall bring, institute, prosecute or maintain any action to enforce this Agreement, or any provision thereof, in any court other than the Bankruptcy Court except for the limited purpose of enforcing a final award or judgment entered by the BVI Court or Bankruptcy Court in connection with this Agreement.

31.   Captions and Rules of Construction.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a Paragraph is to a Paragraph of this Agreement.  "Includes" and "including" are not limiting.

32.   Recitals.  Any facts set forth in any sentence in the Background section hereto preceded by the phrase "according to the Trustee" are those provided by the Trustee, and none of such facts shall be binding on or admissible against the Liquidators or any of the Fairfield Funds in any proceeding.

33.   Counterparts; Electronic Copy of Signatures.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

34.   Notices.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

If to the Trustee, c/o:

Mark Kornfeld, Esq.
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
F:  (212) 589-4201
mkornfeld@bakerlaw.com

If to the Liquidators, c/o:

William Hare
Forbes Hare
Palm Grove House
P.O. Box 4649
Tortola VG 1110
British Virgin Islands
F:  (284) 494-1316
whare@forbeshare.com

With copies to:

Kenneth M. Krys and Joanna Lau
c/o KRyS Global
Commerce House, 2nd Floor
P.O. Box 930
Tortola VG 1110
British Virgin Islands
F:  (284) 494-7169
kenneth.krys@krys-global.com
joanna.lau@krys-global.com

-and-

David J. Molton, Esq.
Brown Rudnick LLP
Seven Times Square
New York, NY 10036
F: (212) 938-2822
dmolton@brownrudnick.com

[*Signature page follows*]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

_____

Irving H. Picard, Trustee


_____

Kenneth Krys, as Joint Liquidator for and on behalf of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited


_____

Joanna Lau, as Joint Liquidator for and on behalf of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited

## EXHIBIT A

## FAIRFIELD SENTRY ACCOUNTS

### Account Numbers

1-FN045

1-FN012

1-FN069

1-FN070

## EXHIBIT B
## FAIRFIELD SENTRY SIPA CLAIM

# SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA

NEW YORK, NEW YORK 10004

<table>
<tr><td>JACK YOSKOWITZ<br>PARTNER<br>(212) 574-1215<br>yoskowitz@sewkis.com</td><td>TELEPHONE: (212) 574-1200<br>FACSIMILE: (212) 480-8421<br>WWW.SEWKIS.COM</td><td>1200 G STREET, N.W.<br>WASHINGTON, D.C. 20005<br>TELEPHONE: (202) 737-8833<br>FACSIMILE: (202) 737-5184</td></tr>
</table>

June 22, 2009

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

Re:    Fairfield Sentry Limited – Amended Customer Claim

Dear Mr. Picard:

Please find enclosed an Amended Customer Claim form for Bernard L. Madoff
Investment Securities ("BLMIS") Account No. 1-FN012 held in the name of Fairfield Sentry
Limited (the "FN-012 Claim").

Under separate cover, we are additionally submitting Amended Customer Claim
forms for the following accounts held in the name of Fairfield Sentry Limited: BLMIS Account
No. 1-FN045, BLMIS Account No. 1-FN069 and BLMIS Account No. 1-FN070.

We have provided electronic copies of the account statements and trade
confirmations in support of each of these claims. Additional information is available upon
request. We reserve the right to further update or amend each claim if necessary.

Sincerely,

Enclosures

cc:    Jan Naess
       Peter Schmid
       Robert J.D. Briant, Esq.

SK 25528 0043 1007348

# AMENDED
## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

### In Liquidation

### DECEMBER 11, 2008

(Please print or type)

**Name of Customer:** Fairfield Sentry Limited

**Mailing Address:** P.O. Box 3140 Romasco Place, Wickhams Cay 1

**City:** Roadtown     **State:** Tortola     **Zip:** British Virgin Islands

**Account No.:** 1-FN012

**Taxpayer I.D. Number (Social Security No.):** _____

**NOTE:** BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.  Claim for money balances as of **December 11, 2008**:

    a.  The Broker owes me a Credit (Cr.) Balance of        $ 3,131,631,364\*

    b.  I owe the Broker a Debit (Dr.) Balance of        $    0

    c.  If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.        $    N/A

    d.  If balance is zero, insert "None."        $ 3,131,631,364

\*See Addendum for details.

2.    Claim for securities as of **December 11, 2008**:

## PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.

|     |                                    | YES        | NO         |
|-----|------------------------------------|------------|------------|
| a.  | The Broker owes me securities      | *See       | *See       |
| b.  | I owe the Broker securities        | Addendum   | Addendum   |

c.    If yes to either, please list below:

|                                        |                  | Number of Shares or Face Amount of Bonds | |
|----------------------------------------|------------------|-----------------------------|-----------------------------|
| Date of Transaction (trade date)       | Name of Security | The Broker Owes Me (Long)   | I Owe the Broker (Short)    |
| _____                              | _____ | _____                   | _____                    |
| _____                              | _____ | _____                   | _____                    |
| _____                              | _____ | _____                   | _____                    |
| _____                              | _____ | _____                   | _____                    |
| _____                              | _____ | _____                   | _____                    |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION
ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT
PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR
COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | x |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | x |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | x |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | x |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | x |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | x |  |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | x |

Please list the full name and address of anyone assisting you in the
preparation of this claim form: Seward & Kissel LLP
One Battery Park Plaza, New York, NY 10004

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date ___June 22, 2009___    Signature _____

Date ___June 22, 2009___    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**Fairfield Sentry Limited ("Sentry")**
**Addendum to Amended Customer Claim Form**
**Bernard L. Madoff Investment Securities LLC ("BLMIS")**

Sentry hereby amends its customer claim, which was originally filed on March 3,

2009, and which was received by the Trustee's Claim Processing Center on March 10, 2009.

This Amended Claim consists of four customer claim forms for Accounts No. 1-FN012, 1-

FN045, 1-FN069 and 1-FN070, and this addendum provides additional details:

      1.     Sentry is a business company organized under the laws of the British

Virgin Islands. Sentry sold shares to qualified, experienced and sophisticated investors (the

"Shareholders"). Sentry sought to obtain capital appreciation of its assets. In connection

therewith, Sentry held four brokerage accounts under its name with BLMIS:

| Account Number | Value as of November 2008 |
| --- | --- |
| 1- FN 045 | $3,247,736,777 |
| 1- FN 070 | ($95,046,560) |
| Sub-Total Net Claim | $3,152,690,217 |

| Account Number | Value as of November 2008 |
| --- | --- |
| FN 012 | $3,226,053,294 |
| FN 069 | ($94,421,930) |
| Sub-Total Net Claim | $3,131,631,364 |

| Total Net Claim for all Four Accounts | $6,284,321,581 |
| --- | --- |

      2.     Sentry submits this Amended Claim under its name only. Sentry has not

submitted individual claims on behalf of its Shareholders. However, Sentry reserves its right to

amend or supplement this Amended Claim to include individual Shareholders in the event the

Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), is amended or

interpreted now or in the future to provide coverage to indirect customers or investors of BLMIS, such as the Shareholders. Further, while neither Sentry nor its counsel is authorized to represent or bind the Shareholders in connection with this filing, Sentry reserves the rights of the Shareholders to file their own customer claim forms in the event SIPA is amended or interpreted to provide coverage to the Shareholders.

3. In support of this Amended Claim under 15 U.S.C. §78fff(a)(1)(B), Sentry submits copies of the last account statements and purchase/sales confirmations that Sentry received from BLMIS. Ex. 1 hereto.

4. In addition, Sentry is aware of the Trustee's February 20, 2009 representations that the Trustee intends to implement a cash "in and out" analysis in determining the value of customer claims in light of what the Trustee has indicated is evidence that BLMIS did not conduct trades on the account of customers. In this regard, Sentry has in its possession account statements and related information dating back to January 1995, showing that Sentry was a "net contributor" to BLMIS in the amount of approximately $895 million. In other words, Sentry deposited approximately $895 million more into BLMIS than it withdrew over the period January 1995 to November 2008. Copies of these materials are available upon request. Further, in Picard v. Fairfield Sentry Limited, et al., Adv. Pro. No. 09-1239, Docket No. 1 at ¶ 32, the Trustee acknowledged that it had records of accounts FN012, FN 043, FN069 and FN070, reflecting the amounts Sentry deposited with BLMIS and the amounts Sentry withdrew from BLMIS. See also Exhibits A and B to the adversary proceeding.

5. In further response to Item 8 of the Amended Customer Claim Form, Sentry executed investment management agreements over the relevant time period with certain affiliates of what is known informally as Fairfield Greenwich Group, most recently with Fairfield

Greenwich (Bermuda) Limited, and previously with Fairfield Greenwich Limited and Fairfield

International Managers, Inc. (collectively, the "Investment Managers"). Under the agreements,

Sentry retained the Investment Managers to manage its investments. Fairfield Greenwich

(Bermuda) Limited's mailing address is 12 Church Street, Suite 606, Hamilton, Bermuda, HM

11. The telephone number is (441) 292-5401.

## **RESERVATION OF RIGHTS**

6.     Sentry expressly reserves its right to replace, amend and/or supplement

this Amended Claim to include any claim at law or in equity.

7.     The filing of this Amended Claim shall not be deemed a waiver of any

claim in law or equity that Sentry may have against BLMIS. Furthermore, nothing contained

herein shall be construed as a waiver of any rights or remedies of Sentry with respect to any

claims against any of BLMIS's affiliates or the right to assert claims that are otherwise warranted

in any related or unrelated action. The filing of this Amended Claim is not and shall not be

deemed to be an admission for the purposes of any other proceeding and/or concerning any other

person.

8.     The filing of this Amended Claim is not intended to be and should not be

construed as (a) a consent by Sentry to the jurisdiction of the court overseeing the BLMIS SIPA

liquidation proceeding with respect to the subject matter of this claim, any objection or other

proceeding commenced in this case or otherwise involving Sentry; (b) a waiver of the rights and

remedies against any other person or entity who may be liable for all or part of the claims set

forth herein, whether an affiliate or guarantor of BLMIS or otherwise; (c) a waiver or release of

Sentry's right to trial by jury, or a consent to trial by jury, in this or any other court; or (d) a

waiver of any right to challenge the jurisdiction of the court, with respect to the subject matter of

this claim, any objection or other proceeding commenced in this case against or otherwise

involving Sentry.

9.  Sentry specifically preserves all of its procedural and substantive defenses

and rights with respect to any claim that may be asserted against Sentry by BLMIS, any of its

successors and assigns or by any trustee for BLMIS's estate.

SK 25528 0043 1006481 v2

4

# SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA

NEW YORK, NEW YORK 10004

JACK YOSKOWITZ
PARTNER
(212) 574-1215
yoskowitz@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

1200 G STREET, N.W.
WASHINGTON, D.C. 20005
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

June 22, 2009

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

Re:    Fairfield Sentry Limited – Amended Customer Claim

Dear Mr. Picard:

Please find enclosed an Amended Customer Claim form for Bernard L. Madoff Investment Securities ("BLMIS") Account No. 1-FN045 held in the name of Fairfield Sentry Limited (the "FN-045 Claim").

Under separate cover, we are additionally submitting Amended Customer Claim forms for the following accounts held in the name of Fairfield Sentry Limited: BLMIS Account No. 1-FN012, BLMIS Account No. 1-FN069 and BLMIS Account No. 1-FN070.

We have provided electronic copies of the account statements and trade confirmations in support of each of these claims. Additional information is available upon request. We reserve the right to further update or amend each claim if necessary.

Sincerely,

Enclosures

cc:    Jan Naess
       Peter Schmid
       Robert J.D. Briant, Esq.

SK 25528 0043 1007353

## AMENDED
## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008

(Please print or type)

Name of Customer:  Fairfield Sentry Limited

Mailing Address:  P.O. Box 3140 Romasco Place, Wickhams Cay 1

City:  Roadtown                    State:  Tortola              Zip:  British Virgin Islands

Account No.:  1-FN045

Taxpayer I.D. Number (Social Security No.): _____

**NOTE:**    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET.  A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009.  CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.    Claim for money balances as of **December 11, 2008**:

a.    The Broker owes me a Credit (Cr.) Balance of          $ 3,152,690,217*

b.    I owe the Broker a Debit (Dr.) Balance of              $     0

c.    If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.                                          $     N/A

d.    If balance is zero, insert "None."                       $ 3,152,690,217

\*See Addendum for details.

502180406                                1

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|     |                               | YES          | NO           |
|-----|-------------------------------|--------------|--------------|
| a.  | The Broker owes me securities | *See         | *See         |
| b.  | I owe the Broker securities   | Addendum     | Addendum     |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406                                    2

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | X |  |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Seward & Kissel LLP
One Battery Park Plaza, New York, NY 10004

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date ___June 22 2009___    Signature _____

Date ___June 22 2009___    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Fairfield Sentry Limited ("Sentry")
Addendum to Amended Customer Claim Form
Bernard L. Madoff Investment Securities LLC ("BLMIS")

Sentry hereby amends its customer claim, which was originally filed on March 3,

2009, and which was received by the Trustee's Claim Processing Center on March 10, 2009.

This Amended Claim consists of four customer claim forms for Accounts No. 1-FN012, 1-

FN045, 1-FN069 and 1-FN070, and this addendum provides additional details:

1.      Sentry is a business company organized under the laws of the British

Virgin Islands.  Sentry sold shares to qualified, experienced and sophisticated investors (the

"Shareholders").  Sentry sought to obtain capital appreciation of its assets.  In connection

therewith, Sentry held four brokerage accounts under its name with BLMIS:

| Account Number | Value as of November 2008 |
| --- | --- |
| 1- FN 045 | $3,247,736,777 |
| 1- FN 070 | ($95,046,560) |
| Sub-Total Net Claim | $3,152,690,217 |

| Account Number | Value as of November 2008 |
| --- | --- |
| FN 012 | $3,226,053,294 |
| FN 069 | ($94,421,930) |
| Sub-Total Net Claim | $3,131,631,364 |

| Total Net Claim for all Four Accounts | $6,284,321,581 |
| --- | --- |

2.      Sentry submits this Amended Claim under its name only.  Sentry has not

submitted individual claims on behalf of its Shareholders.  However, Sentry reserves its right to

amend or supplement this Amended Claim to include individual Shareholders in the event the

Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), is amended or

interpreted now or in the future to provide coverage to indirect customers or investors of BLMIS, such as the Shareholders. Further, while neither Sentry nor its counsel is authorized to represent or bind the Shareholders in connection with this filing, Sentry reserves the rights of the Shareholders to file their own customer claim forms in the event SIPA is amended or interpreted to provide coverage to the Shareholders.

3.    In support of this Amended Claim under 15 U.S.C. §78fff(a)(1)(B), Sentry submits copies of the last account statements and purchase/sales confirmations that Sentry received from BLMIS. Ex. 1 hereto.

4.    In addition, Sentry is aware of the Trustee's February 20, 2009 representations that the Trustee intends to implement a cash "in and out" analysis in determining the value of customer claims in light of what the Trustee has indicated is evidence that BLMIS did not conduct trades on the account of customers. In this regard, Sentry has in its possession account statements and related information dating back to January 1995, showing that Sentry was a "net contributor" to BLMIS in the amount of approximately $895 million. In other words, Sentry deposited approximately $895 million more into BLMIS than it withdrew over the period January 1995 to November 2008. Copies of these materials are available upon request. Further, in Picard v. Fairfield Sentry Limited, et al., Adv. Pro. No. 09-1239, Docket No. 1 at ¶ 32, the Trustee acknowledged that it had records of accounts FN012, FN 043, FN069 and FN070, reflecting the amounts Sentry deposited with BLMIS and the amounts Sentry withdrew from BLMIS. See also Exhibits A and B to the adversary proceeding.

5.    In further response to Item 8 of the Amended Customer Claim Form, Sentry executed investment management agreements over the relevant time period with certain affiliates of what is known informally as Fairfield Greenwich Group, most recently with Fairfield

2

Greenwich (Bermuda) Limited, and previously with Fairfield Greenwich Limited and Fairfield

International Managers, Inc. (collectively, the "Investment Managers"). Under the agreements,

Sentry retained the Investment Managers to manage its investments. Fairfield Greenwich

(Bermuda) Limited's mailing address is 12 Church Street, Suite 606, Hamilton, Bermuda, HM

11. The telephone number is (441) 292-5401.

### RESERVATION OF RIGHTS

6.      Sentry expressly reserves its right to replace, amend and/or supplement

this Amended Claim to include any claim at law or in equity.

7.      The filing of this Amended Claim shall not be deemed a waiver of any

claim in law or equity that Sentry may have against BLMIS. Furthermore, nothing contained

herein shall be construed as a waiver of any rights or remedies of Sentry with respect to any

claims against any of BLMIS's affiliates or the right to assert claims that are otherwise warranted

in any related or unrelated action. The filing of this Amended Claim is not and shall not be

deemed to be an admission for the purposes of any other proceeding and/or concerning any other

person.

8.      The filing of this Amended Claim is not intended to be and should not be

construed as (a) a consent by Sentry to the jurisdiction of the court overseeing the BLMIS SIPA

liquidation proceeding with respect to the subject matter of this claim, any objection or other

proceeding commenced in this case or otherwise involving Sentry; (b) a waiver of the rights and

remedies against any other person or entity who may be liable for all or part of the claims set

forth herein, whether an affiliate or guarantor of BLMIS or otherwise; (c) a waiver or release of

Sentry's right to trial by jury, or a consent to trial by jury, in this or any other court; or (d) a

waiver of any right to challenge the jurisdiction of the court, with respect to the subject matter of

this claim, any objection or other proceeding commenced in this case against or otherwise

involving Sentry.

9.    Sentry specifically preserves all of its procedural and substantive defenses

and rights with respect to any claim that may be asserted against Sentry by BLMIS, any of its

successors and assigns or by any trustee for BLMIS's estate.

SK 25528 0043 1006481 v2

## SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA

NEW YORK, NEW YORK 10004

JACK YOSKOWITZ
PARTNER
(212) 574-1215
yoskowitz@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

1200 G STREET, N.W.
WASHINGTON, D.C. 20005
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

June 22, 2009

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

      Re:    <u>Fairfield Sentry Limited – Amended Customer Claim</u>

Dear Mr. Picard:

        Please find enclosed an Amended Customer Claim form for Bernard L. Madoff Investment Securities ("BLMIS") Account No. 1-FN070 held in the name of Fairfield Sentry Limited (the "FN-070 Claim").

        Under separate cover, we are additionally submitting Amended Customer Claim forms for the following accounts held in the name of Fairfield Sentry Limited: BLMIS Account No. 1-FN012, BLMIS Account No. 1-FN045 and BLMIS Account No. 1-FN069.

        We have provided electronic copies of the account statements and trade confirmations in support of each of these claims. Additional information is available upon request. We reserve the right to further update or amend each claim if necessary.

                Sincerely,

Enclosures

cc:    Jan Naess
       Peter Schmid
       Robert J.D. Briant, Esq.

SK 25528 0043 1007355

# AMENDED
## CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: Fairfield Sentry Limited

Mailing Address: P.O. Box 3140 Romasco Place, Wickhams Cay 1

City: Roadtown          State: Tortola          Zip: British Virgin Islands

Account No.: 1-FN070

Taxpayer I.D. Number (Social Security No.): _____

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*********************************************************************

1.   Claim for money balances as of **December 11, 2008**:

    a.   The Broker owes me a Credit (Cr.) Balance of    $ 3,152,690,217*

    b.   I owe the Broker a Debit (Dr.) Balance of    $ 0

    c.   If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.    $ N/A

    d.   If balance is zero, insert "None."    $ 3,152,690,217

*See Addendum for details.

**NOTE:**   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|   |   | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | X |  |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Seward & Kissel LLP
One Battery Park Plaza, New York, NY 10004

502180406                                         3

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _____    Signature _____

Date _____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**Fairfield Sentry Limited ("Sentry")**
**Addendum to Amended Customer Claim Form**
**Bernard L. Madoff Investment Securities LLC ("BLMIS")**

Sentry hereby amends its customer claim, which was originally filed on March 3,

2009, and which was received by the Trustee's Claim Processing Center on March 10, 2009.

This Amended Claim consists of four customer claim forms for Accounts No. 1-FN012, 1-

FN045, 1-FN069 and 1-FN070, and this addendum provides additional details:

     1.    Sentry is a business company organized under the laws of the British

Virgin Islands. Sentry sold shares to qualified, experienced and sophisticated investors (the

"Shareholders"). Sentry sought to obtain capital appreciation of its assets. In connection

therewith, Sentry held four brokerage accounts under its name with BLMIS:

| Account Number | Value as of November 2008 |
|---|---|
| 1- FN 045 | $3,247,736,777 |
| 1- FN 070 | ($95,046,560) |
| Sub-Total Net Claim | $3,152,690,217 |

| Account Number | Value as of November 2008 |
|---|---|
| FN 012 | $3,226,053,294 |
| FN 069 | ($94,421,930) |
| Sub-Total Net Claim | $3,131,631,364 |

| | |
|---|---|
| Total Net Claim for all Four Accounts | $6,284,321,581 |

     2.    Sentry submits this Amended Claim under its name only. Sentry has not

submitted individual claims on behalf of its Shareholders. However, Sentry reserves its right to

amend or supplement this Amended Claim to include individual Shareholders in the event the

Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), is amended or

interpreted now or in the future to provide coverage to indirect customers or investors of BLMIS, such as the Shareholders. Further, while neither Sentry nor its counsel is authorized to represent or bind the Shareholders in connection with this filing, Sentry reserves the rights of the Shareholders to file their own customer claim forms in the event SIPA is amended or interpreted to provide coverage to the Shareholders.

3. In support of this Amended Claim under 15 U.S.C. §78fff(a)(1)(B), Sentry submits copies of the last account statements and purchase/sales confirmations that Sentry received from BLMIS. Ex. 1 hereto.

4. In addition, Sentry is aware of the Trustee's February 20, 2009 representations that the Trustee intends to implement a cash "in and out" analysis in determining the value of customer claims in light of what the Trustee has indicated is evidence that BLMIS did not conduct trades on the account of customers. In this regard, Sentry has in its possession account statements and related information dating back to January 1995, showing that Sentry was a "net contributor" to BLMIS in the amount of approximately $895 million. In other words, Sentry deposited approximately $895 million more into BLMIS than it withdrew over the period January 1995 to November 2008. Copies of these materials are available upon request. Further, in Picard v. Fairfield Sentry Limited, et al., Adv. Pro. No. 09-1239, Docket No. 1 at ¶ 32, the Trustee acknowledged that it had records of accounts FN012, FN 043, FN069 and FN070, reflecting the amounts Sentry deposited with BLMIS and the amounts Sentry withdrew from BLMIS. See also Exhibits A and B to the adversary proceeding.

5. In further response to Item 8 of the Amended Customer Claim Form, Sentry executed investment management agreements over the relevant time period with certain affiliates of what is known informally as Fairfield Greenwich Group, most recently with Fairfield

2

Greenwich (Bermuda) Limited, and previously with Fairfield Greenwich Limited and Fairfield

International Managers, Inc. (collectively, the "Investment Managers"). Under the agreements,

Sentry retained the Investment Managers to manage its investments. Fairfield Greenwich

(Bermuda) Limited's mailing address is 12 Church Street, Suite 606, Hamilton, Bermuda, HM

11. The telephone number is (441) 292-5401.

## RESERVATION OF RIGHTS

6.     Sentry expressly reserves its right to replace, amend and/or supplement

this Amended Claim to include any claim at law or in equity.

7.     The filing of this Amended Claim shall not be deemed a waiver of any

claim in law or equity that Sentry may have against BLMIS. Furthermore, nothing contained

herein shall be construed as a waiver of any rights or remedies of Sentry with respect to any

claims against any of BLMIS's affiliates or the right to assert claims that are otherwise warranted

in any related or unrelated action. The filing of this Amended Claim is not and shall not be

deemed to be an admission for the purposes of any other proceeding and/or concerning any other

person.

8.     The filing of this Amended Claim is not intended to be and should not be

construed as (a) a consent by Sentry to the jurisdiction of the court overseeing the BLMIS SIPA

liquidation proceeding with respect to the subject matter of this claim, any objection or other

proceeding commenced in this case or otherwise involving Sentry; (b) a waiver of the rights and

remedies against any other person or entity who may be liable for all or part of the claims set

forth herein, whether an affiliate or guarantor of BLMIS or otherwise; (c) a waiver or release of

Sentry's right to trial by jury, or a consent to trial by jury, in this or any other court; or (d) a

waiver of any right to challenge the jurisdiction of the court, with respect to the subject matter of

this claim, any objection or other proceeding commenced in this case against or otherwise

3

involving Sentry.

      9.    Sentry specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against Sentry by BLMIS, any of its successors and assigns or by any trustee for BLMIS's estate.

SK 25528 0043 1006481 v2

# SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA

NEW YORK, NEW YORK 10004

JACK YOSKOWITZ
PARTNER
(212) 574-1215
yoskowitz@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

1200 G STREET, N.W.
WASHINGTON, D.C. 20005
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

June 22, 2009

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

> Re:    Fairfield Sentry Limited – Amended Customer Claim

Dear Mr. Picard:

Please find enclosed an Amended Customer Claim form for Bernard L. Madoff Investment Securities ("BLMIS") Account No. 1-FN069 held in the name of Fairfield Sentry Limited (the "FN-069 Claim").

Under separate cover, we are additionally submitting Amended Customer Claim forms for the following accounts held in the name of Fairfield Sentry Limited: BLMIS Account No. 1-FN012, BLMIS Account No. 1-FN045 and BLMIS Account No. 1-FN070.

We have provided electronic copies of the account statements and trade confirmations in support of each of these claims. Additional information is available upon request. We reserve the right to further update or amend each claim if necessary.

Sincerely,

*[signature]*

Enclosures

cc:    Jan Naess
       Peter Schmid
       Robert J.D. Briant, Esq.

SK 25528 0043 1007354

**NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.  IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | X | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Seward & Kissel LLP
One Battery Park Plaza, New York, NY 10004

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _June 22 2009_     Signature _____

Date _June 22 2009_     Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account; e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

Fairfield Sentry Limited ("Sentry")
Addendum to Amended Customer Claim Form
Bernard L. Madoff Investment Securities LLC ("BLMIS")

Sentry hereby amends its customer claim, which was originally filed on March 3,

2009, and which was received by the Trustee's Claim Processing Center on March 10, 2009.

This Amended Claim consists of four customer claim forms for Accounts No. 1-FN012, 1-

FN045, 1-FN069 and 1-FN070, and this addendum provides additional details:

1.     Sentry is a business company organized under the laws of the British

Virgin Islands. Sentry sold shares to qualified, experienced and sophisticated investors (the

"Shareholders"). Sentry sought to obtain capital appreciation of its assets. In connection

therewith, Sentry held four brokerage accounts under its name with BLMIS:

| Account Number | Value as of November 2008 |
|---|---|
| 1- FN 045 | $3,247,736,777 |
| 1- FN 070 | ($95,046,560) |
| Sub-Total Net Claim | $3,152,690,217 |

| Account Number | Value as of November 2008 |
|---|---|
| FN 012 | $3,226,053,294 |
| FN 069 | ($94,421,930) |
| Sub-Total Net Claim | $3,131,631,364 |

| Total Net Claim for all Four Accounts | $6,284,321,581 |
|---|---|

2.     Sentry submits this Amended Claim under its name only. Sentry has not

submitted individual claims on behalf of its Shareholders. However, Sentry reserves its right to

amend or supplement this Amended Claim to include individual Shareholders in the event the

Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), is amended or

interpreted now or in the future to provide coverage to indirect customers or investors of BLMIS, such as the Shareholders. Further, while neither Sentry nor its counsel is authorized to represent or bind the Shareholders in connection with this filing, Sentry reserves the rights of the Shareholders to file their own customer claim forms in the event SIPA is amended or interpreted to provide coverage to the Shareholders.

      3.    In support of this Amended Claim under 15 U.S.C. §78fff(a)(1)(B), Sentry submits copies of the last account statements and purchase/sales confirmations that Sentry received from BLMIS. Ex. 1 hereto.

      4.    In addition, Sentry is aware of the Trustee's February 20, 2009 representations that the Trustee intends to implement a cash "in and out" analysis in determining the value of customer claims in light of what the Trustee has indicated is evidence that BLMIS did not conduct trades on the account of customers. In this regard, Sentry has in its possession account statements and related information dating back to January 1995, showing that Sentry was a "net contributor" to BLMIS in the amount of approximately $895 million. In other words, Sentry deposited approximately $895 million more into BLMIS than it withdrew over the period January 1995 to November 2008. Copies of these materials are available upon request. Further, in Picard v. Fairfield Sentry Limited, et al., Adv. Pro. No. 09-1239, Docket No. 1 at ¶ 32, the Trustee acknowledged that it had records of accounts FN012, FN 043, FN069 and FN070, reflecting the amounts Sentry deposited with BLMIS and the amounts Sentry withdrew from BLMIS. See also Exhibits A and B to the adversary proceeding.

      5.    In further response to Item 8 of the Amended Customer Claim Form, Sentry executed investment management agreements over the relevant time period with certain affiliates of what is known informally as Fairfield Greenwich Group, most recently with Fairfield

Greenwich (Bermuda) Limited, and previously with Fairfield Greenwich Limited and Fairfield

International Managers, Inc. (collectively, the "Investment Managers"). Under the agreements,

Sentry retained the Investment Managers to manage its investments. Fairfield Greenwich

(Bermuda) Limited's mailing address is 12 Church Street, Suite 606, Hamilton, Bermuda, HM

11. The telephone number is (441) 292-5401.

## RESERVATION OF RIGHTS

6.     Sentry expressly reserves its right to replace, amend and/or supplement

this Amended Claim to include any claim at law or in equity.

7.     The filing of this Amended Claim shall not be deemed a waiver of any

claim in law or equity that Sentry may have against BLMIS. Furthermore, nothing contained

herein shall be construed as a waiver of any rights or remedies of Sentry with respect to any

claims against any of BLMIS's affiliates or the right to assert claims that are otherwise warranted

in any related or unrelated action. The filing of this Amended Claim is not and shall not be

deemed to be an admission for the purposes of any other proceeding and/or concerning any other

person.

8.     The filing of this Amended Claim is not intended to be and should not be

construed as (a) a consent by Sentry to the jurisdiction of the court overseeing the BLMIS SIPA

liquidation proceeding with respect to the subject matter of this claim, any objection or other

proceeding commenced in this case or otherwise involving Sentry; (b) a waiver of the rights and

remedies against any other person or entity who may be liable for all or part of the claims set

forth herein, whether an affiliate or guarantor of BLMIS or otherwise; (c) a waiver or release of

Sentry's right to trial by jury, or a consent to trial by jury, in this or any other court; or (d) a

waiver of any right to challenge the jurisdiction of the court, with respect to the subject matter of

this claim, any objection or other proceeding commenced in this case against or otherwise

3

involving Sentry.

9.       Sentry specifically preserves all of its procedural and substantive defenses
and rights with respect to any claim that may be asserted against Sentry by BLMIS, any of its
successors and assigns or by any trustee for BLMIS's estate.

SK 25528 0043 1006481 v2

# EXHIBIT C
## SIGMA DENIAL NOTICE

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation
### DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

FAIRFIELD SIGMA LIMITED
P.O. BOX 3140 ROMASCO PLACE
WICKAMS CAY 1
ROADTOWN, TORTOLA
BRITISH VIRGIN ISLANDS

Dear FAIRFIELD SIGMA LIMITED:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 011250:

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

-------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

_Irving Picard_

---
**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc: JACK YOSKOWITZ, ESQ., SEWARD & KISSEL LLP
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

FAIRFIELD SIGMA LIMITED
P.O. BOX 3140 ROMASCO PLACE
WICKAMS CAY 1
ROADTOWN, TORTOLA
BRITISH VIRGIN ISLANDS

Dear FAIRFIELD SIGMA LIMITED:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 013744: '

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  SEWARD & KISSEL LLP
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

FAIRFIELD SIGMA LIMITED
P.O. BOX 3140 ROMASCO PLACE
WICKHAMS CAY 1
ROADTOWN, TORTOLA
BRITISH VIRGIN ISLANDS

Dear FAIRFIELD SIGMA LIMITED:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 0xx24x.

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  SEWARD & KISSEL LLP
ONE BATTERY PARK PLAZA
NEW YORK, NY  10004

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008[1]

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

FAIRFIELD SIGMA LIMITED
PO BOX 3140 ROMASCO PLACE
WICKAMS CAY 1
ROADTOWN, TORTOLA
BRITISH VIRGIN ISLANDS


Dear FAIRFIELD SIGMA LIMITED:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 001249: '

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

--------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  SEWARD & KISSEL LLP
ONE BATTERY PARK PLAZA
NEW YORK, NY    10004

**BROWN RUDNICK LLP**
David J. Molton
Martin S. Siegel
Seven Times Square
New York, New York 10036
Telephone: (212)-209-4800
Facsimile: (212)-209-4801

Attorneys for Kenneth M. Krys and Christopher D. Stride
as Liquidators of and for Fairfield Sigma Limited

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | **FAIRFIELD SIGMA LIMITED'S OBJECTION TO THE TRUSTEE'S DETERMINATIONS OF CLAIMS** |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

Fairfield Sigma Limited ("Sigma"), by its attorneys, Brown Rudnick LLP, hereby objects

to the four "Notice[s] of Trustee's Determination of Claim[s]" dated December 8, 2009 relating

to SIPA customer claims designated by the Trustee as Claims Nos. 011250, 011744, 011240,

011249 and states as follows:

**Background Facts**

1.      Sigma is a business company organized under the laws of the British

Virgin Islands, incorporated on October 20, 1990. Sigma is a shareholder of Fairfield

Sentry Limited ("Sentry") -- a direct customer of Bernard L. Madoff Investment

Securities ("BLMIS").

2.      On December 11, 2008, the above-captioned liquidation proceeding was

commenced against BLMIS, pursuant to the Securities Investor Protection Act ("SIPA").

*See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y.

Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United

States Bankruptcy Court for the Southern District of New York).  Irving Picard was

appointed Trustee ("BLMIS Trustee"), charged with overseeing the liquidation of

BLMIS and processing customer claims for money pursuant to SIPA.  *Id.*; 15 U.S.C.

78fff-1(a).

3.      On December 23, 2008, the Court issued an Order directing the BLMIS

Trustee to disseminate notice and claim forms to BLMIS customers and setting forth

claim-filing deadlines.  Upon information and belief, the BLMIS Trustee disseminated

notice and claim forms to BLMIS's customers in accordance with the Court's Order.

4.      The December 23, 2008 Order further provided that, to the extent the

BLMIS Trustee disagrees with the amount set forth on a customer claim form, the

BLMIS Trustee "shall notify such claimant by mail of his determination that the claim is

disallowed, in whole or in part, and the reason therefor . . . ."

5.      On April 23, 2009, Mr. Christopher Stride, Managing Director of Krys &

Associates (BVI) Limited, was appointed as Liquidator of Fairfield Lambda Limited

("Lambda"), pursuant to the provisions of the Insolvency Act 2003, of the British Virgin

Islands ("the Act").

6.      On July 21, 2009, Mr. Christopher Stride and Mr. Kenneth Krys,

Managing Director of Krys & Associates Cayman Limited were jointly appointed as

Liquidators of Sentry and Sigma pursuant to the provisions of the Act.

7.     Sentry carried on business as an investment fund, largely operating as what has been called a "feeder fund" into BLMIS. Indeed, Sentry was the largest feeder fund into BLMIS with approximately $7.2 billion invested at the end of October 2008. In turn, Sigma and Lambda were feeder funds into Sentry. Sentry's shares are issued in U.S. dollars, Sigma's in Euros and Lambda's in Swiss Francs. As of October 2008, Sigma held approximately EUR 723 million of investments in Sentry and Lambda held approximately CHF 39 million of investments in Sentry.

8.     On June 22, 2009, Sigma filed four separate customer claim forms with the BLMIS Trustee because Sigma had four Madoff-related accounts denoted, BLMIS Account No. 1-FN012, BLMIS Account No.1-FN045, BLMIS Account No.1-FN069 and BLMIS Account No.1-FN070. Accordingly, as a shareholder of Sentry, Sigma submitted its claims based on the Net Asset Valuation ("NAV") of its shares in Sentry as of October 2008. The NAV of the four Sigma accounts totals $773,635,188.

9.     Sigma submitted its customer claim forms under its name only and Sigma did not submit individual claims on behalf of its shareholders.

10.     By notices dated December 8, 2009, the BLMIS Trustee denied all four of Sigma's customer claims and noted in each denial notice as follows:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78*lll*(2). Accordingly, your claim for securities and/or a credit balance is DENIED.

3

## Grounds for Objection

**Sigma is a "customer" under SIPA**

11.     SIPA protects the assets of investors held by broker-dealers who become

insolvent.  As explained by the Supreme Court, Congress enacted the law to protect and

restore investor confidence in the capital markets.  *See Securities Investor Protection*

*Corp. v. Bourbor*, 421 U.S. 412, 415 (1975); *Securities Investor Protection Corp. v.*

*Bernard L. Madoff Investment Securities, LLC* ("Madoff"), 401 B.R. 629, 633-34 (Bankr.

S.D.N.Y. 2009).  SIPA created the Securities Investor Protection Corporation ("SIPC") to

administer SIPA.  15 U.S.C. §78ccc.  In a liquidation proceeding, the SIPC fund is

available to "customers" if the debtor's general estate is insufficient to pay "customer

claims."  According to SIPA, only "customers," a term of art defined in 15 U.S.C. §

78*lll*(2), will be protected.  A denial of "customer" status would relegate an investor to a

general unsecured creditor who can only seek recovery from the general estate.  *Madoff*,

401 B.R. at 634.

12.     SIPA defines "customers" as:

> Any person (including any person with whom the debtor deals as
> principal or agent) who has a claim on account of securities
> received, acquired, or held by the debtor in the ordinary course of
> its business as a broker or dealer from or for the securities
> accounts of such person for safekeeping, with a view to sale, to
> cover consummated sales, pursuant to purchases, as collateral
> security, or for purposes of effecting transfer. The term
> "customer" includes any person who has a claim against the
> debtor arising out of sales or conversions of such securities, and
> any person who has deposited cash with the debtor for the
> purpose of purchasing securities . . . .

15 U.S.C. §78*lll*.

13.     Sigma contends it is a "customer" under the plain definition of "customer"

in SIPA.  Thus, it is entitled to receive the statutory maximum of $500,000 in SIPC

4

insurance for each of its four claims. *See* 15 U.S.C. § 78*lll*(2) ("The term "customer"

includes . . . any person who has deposited cash with the debtor for the purpose of

purchasing securities."). *Rosenman Family, LLC v. Picard*, 401 B.R. 629, 635 (Bankr.

S.D.N.Y. 2009) ("the mere act of entrusting . . . cash to the debtor for the purpose of

effecting securities transactions . . . triggers customer status. . ."); *SEC v. Ambassador*

*Church Financial Devel. Group, Inc.*, 679 F. 2d 608, 614 (6th Cir. 1982); *In re Primeline*

*Sec. Corp.*, 295 F. 3d 1100, 1107 (10th Cir. 2002) ("SIPA does . . . protect claimants who

try to attempt to invest through their brokerage firm but are defrauded by dishonest

brokers . . . If a claimant intended to have the brokerage purchase securities on the

claimant's behalf and reasonably followed the broker's instructions regarding payment,

the claimant is a 'customer' under SIPA even if the brokerage or its agents

misappropriate the funds"); *Miller v. DeQuine* (*In re Stratton Oakmont, Inc.*), 2003 WL

22698876 at *3 (Bankr. S.D.N.Y. Nov. 14, 2003) ("Stratton Oakmont's conversion of

Claimants' property makes them customers within the meaning of SIPA.").

14.    Any ambiguity in the definition of "customer," and there is none here,

should be construed in favor of Sigma because SIPA is remedial legislation. As such, it

"should be construed broadly to effectuate its purposes." *Tcherepin v. Knight*, 389 U.S.

332, 336 (1967).

15.    Although Sigma asserts it falls within section 78*lll* under the plain reading

of the statute, the BLMIS Trustee has taken the position that only direct investors with

BLMIS are "customers" under SIPA. The reality in this case is, however, that Madoff

perpetrated the largest ponzi scheme in the history of America. Feeder funds attracted

new investors for the disclosed purpose of investing in BLMIS, and there is no

5

substantive difference under SIPA's remedies between those who gave the Debtor, BLMIS, their funds directly and Sigma, who invested in a feeder fund which then invested in BLMIS.

16.     Whether a SIPA claimant is a "customer" under SIPA should not depend upon whom a customer handed its money to, or even where the funds were initially deposited. *See In re Old Naples Securities, Inc.*, 223 F.3d 1296, 1302-1303 (11th Cir. 2000). The issue should instead depend upon whether there was "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." *Id.* (internal quotations omitted). Here, Sigma can show that there was "actual receipt, acquisition or possession" of its property by the Debtor.

17.     The securities market has changed and many securities transactions are held in "street names" or via mere book-entries. The fact that there is no direct statement form the Debtor to Sigma is of no significance under SIPA. Indeed, complicated financial transactions like repos and reverse repos have been given "customer" status. *See In re Beville, Bresser & Schulman Asset Management Corp.*, 67 B.R. 557 (Bankr. D. N.J. 1986). The issue here is less complicated and, in fact, one of equity. Sigma has suffered financial losses which have had devastating impacts upon its shareholders. Such losses are no less real merely because Sigma did not directly send the Debtor its property. As such, Sigma should be determined to be a BLMIS customer and entitled to payment from the SIPC fund.

6

Dated: January 7, 2010
     New York, New York

Respectfully submitted,

**BROWN RUDNICK LLP**

By: /s/ David J. Molton, Esq.
    David J. Molton
    Martin S. Siegel
    Seven Times Square
    New York, NY 10036
    Telephone: (212) 209-4800
    Facsimile: (212) 209-4801

*Attorneys for Kenneth M. Krys and
Christopher D. Stride as Liquidators of and for
Fairfield Sigma Limited*

8

# SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA

NEW YORK, NEW YORK 10004

JACK YOSKOWITZ
PARTNER
(212) 574-1215
yoskowitz@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

1200 G STREET, N.W.
WASHINGTON, D.C. 20005
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

June 22, 2009

**BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

       Re:    <u>Fairfield Sigma Limited</u>

Dear Mr. Picard:

      Please find enclosed a Customer Claim form filed on behalf of Fairfield Sigma Limited ("Sigma") an investor in Bernard L. Madoff Investment Securities ("BLMIS") Account No. 1-FN012 held in the name of Fairfield Sentry Limited.

      Under separate cover, we are additionally submitting Customer Claim forms on behalf of Sigma for investments in the following accounts held in the name of Fairfield Sentry Limited: BLMIS Account No. 1-FN045, BLMIS Account No. 1-FN069 and BLMIS Account No. 1-FN070.

      We have provided a copy of Sigma's most recent account statement reflecting its Net Asset Value. Additional information is available upon request. We reserve the right to further update or amend each claim if necessary.

                       Sincerely,

Enclosures

cc:   Jan Naess
      Peter Schmid
      Robert J.D. Briant, Esq.

SK 25528 0043 1007370

**CUSTOMER CLAIM**

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: Fairfield Sigma Limited

Mailing Address: P.O. Box 3140 Romasco Place, Wickhams Cay 1

City: Roadtown          State: Tortola          Zip: British Virgin Islands

Account No.: Fairfield Sentry Limited, 1-FN012

Taxpayer I.D. Number (Social Security No.): _____

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.   Claim for money balances as of **December 11, 2008**:

   a.   The Broker owes me a Credit (Cr.) Balance of      $ 773,635,188 *

   b.   I owe the Broker a Debit (Dr.) Balance of           $ 0

   c.   If you wish to repay the Debit Balance,
        please insert the amount you wish to repay and
        attach a check payable to "Irving H. Picard, Esq.,
        Trustee for Bernard L. Madoff Investment Securities LLC."
        If you wish to make a payment, **it must be enclosed**
        with this claim form.                              $ N/A

   d.   If balance is zero, insert "None."                 $ 773,635,188

\* See Addendum for details.

2.    Claim for securities as of **December 11, 2008:**

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | *See | *See |
| b. | I owe the Broker securities | Addendum | Addendum |

c.    If yes to either, please list below:

|  |  | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:** **IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | x |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | x |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | x |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | x |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | x |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | x |  |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | x |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Seward & Kissel LLP
One Battery Park Plaza, New York, NY 10004

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _June 22, 2009_     Signature _____

Date _June 22, 2009_     Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406                                    4

# CITCO

*Citco Fund Services
(Europe) B.V.*

| | |
|---|---|
| CITCO GLOBAL CUSTODY NV | |
| CITCO GLOBAL SECURITIES SERVICES LTD | |
| 2600 CORK AIRPORT BUSINESS PARK | |
| KINSALE ROAD | |
| CORK | |
| IRELAND | |

| | |
|---|---|
| Date | : Jun-18-2009 |
| Valuation date | : Nov-03-2008 |
| Fund Id | : 03302 |
| Holder Id | : 00342402 |
| Account Id | : 00012302 |
| Currency | : US DOLLAR |
| Email | : TRADECONFIRM@CITCO.COM |
| FAX Number | : +353214910335 |

**Account: CITCO GLOBAL CUSTODY NV - REF 358108**

## FAIRFIELD SENTRY LIMITED

### FUND NET ASSET VALUES

| | | Net Asset Value |
|---|---|---|
| Opening Price | Sep-30-2008 | 1,350.6040 |
| Closing Price | Oct-31-2008 | 1,349.7782 |

### ACCOUNT VALUE

| | NAV Date | voting shares | Net Asset Value | Change in Account |
|---|---|---|---|---|
| Opening Market Value of Account | Sep-30-2008 | 830,977.4067 | 1,350.6040 | 1,122,321,409.40 |
| Add: Additions | | 0.0000 | | 0.00 |
| Less: Subtractions | | -257,820.1367 | | -348,000,000.04 |
| Closing Market Value of Account | Oct-31-2008 | 573,157.2700 | 1,349.7782 | 773,635,188.22 |
| Increase or decrease in market value due to change in the price in the period | | | | -686,221.14 |

### SUMMARY OF ACTIVITY

| Date | Description | Contract Number | Gross Consideration | Commission /Fees /Tax | Net Consideration | Net Asset Value Per Unit | No. of voting shares | Balance |
|---|---|---|---|---|---|---|---|---|
| 10-29-2008 | Opening Balance of voting shares | | | | | | | 830,977.4067 |
| 11-01-2008 | Redemption | 69554402 | -129,999,999.97 | (0.00) | -129,999,999.97 | 1,349.7782 | -96,312.1200 | 734,665.2867 |
| 11-01-2008 | Redemption | 69554502 | -218,000,000.07 | (0.00) | -218,000,000.07 | 1,349.7782 | -161,508.0167 | 573,157.2700 |
| 11-03-2008 | Closing Balance of voting shares | | | | | | | 573,157.2700 |
| Total Additions | | 0 | 0.00 | 0.00 | 0.00 | | 0.0000 | |
| Total Subtractions | | 2 | 348,000,000.04 | 0.00 | 348,000,000.04 | | -257,820.1367 | |

**Note: All trade orders must be submitted in writing. In the event of non-receipt of confirmation within 5 days, please contact Citco immediately.**

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610  E-mail: amscfsclientdesk@citco.com

*Citco Building
Telestone - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands*

*www.citco.com*

*Phone: (31-20) 5722100
Fax:    (31-20) 5722610
Chamber of Commerce 33205112*

Page 1 of 1

**Fairfield Sigma Limited ("Sigma")**
**Addendum to Customer Claim Form**
**Bernard L. Madoff Investment Securities LLC ("BLMIS")**

Sigma hereby submits this addendum in support of its claim.

1.     Sigma is a business company organized under the laws of the British

Virgin Islands.  Sigma is a shareholder of Fairfield Sentry Limited ("Sentry") -- a customer of

BLMIS.  On March 3, 2009, Sentry filed a customer claim, and on June 22, 2009, Sentry filed an

amended customer claim.  Consistent with Sentry's amended claim, Sigma is filing four separate

customer claim forms because Sentry had four accounts, 1-FN012, 1-FN045, 1-FN069 and 1-

FN070, with BLMIS.  Accordingly, as a shareholder of Sentry, Sigma hereby submits a claim

based on its most recent Net Asset Valuation ("NAV") of its shares in Sentry:

| Account ID | Number of Shares | Value as of October 2008 |
|------------|------------------|--------------------------|
| 00012302   | 573,157.27       | $773,635,188             |

2.     While Sigma was not a direct customer of BLMIS, it submits this claim to

reserve its right to customer protection in the event the Securities Investor Protection Act of

1970, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), is amended or interpreted, now or in the future, to

provide coverage to indirect customers or investors of BLMIS.

3.     Sigma submits this Customer Claim Form under its name only.  Sigma is

not submitting individual claims on behalf of its Shareholders.  While neither Sigma nor its

counsel is authorized to represent or bind the Shareholders in connection with this filing, Sigma

reserves the rights of its Shareholders to file their own customer claim forms in the event SIPA is

amended or interpreted to provide coverage to its Shareholders.

4.     In support of its Claim under 15 U.S.C. §78fff(a)(1)(B), Sigma hereby

submits a copy of the latest Sigma account statement from Citco Global Custody, NV, reflecting

the net asset value of its investment in Sentry as of October 31, 2008, the last month in which a

NAV was calculated.

5.    In addition, Sigma invested $319,240,000 million more into Sentry than it

redeemed over the period September 2003 to November 2008.

6.    In further response to Item 8 of the Customer Claim Form, Sigma

executed an investment management agreement over the relevant time period with Fairfield

Greenwich (Bermuda) Limited (the "Investment Manager"), an affiliate of what is known

informally as Fairfield Greenwich Group. Sigma retained the Investment Manager to manage its

investments. Fairfield Greenwich (Bermuda) Limited's mailing address is 12 Church Street,

Suite 606, Hamilton, Bermuda, HM 11. The telephone number is (441) 292-5401.

## RESERVATION OF RIGHTS

7.    Sigma expressly reserves its right to replace, amend and/or supplement

this Customer Claim to include any claim at law or in equity.

8.    The filing of this supplement to the Claim shall not be deemed a waiver of

any claim in law or equity that Sigma may have against BLMIS. Furthermore, nothing contained

herein shall be construed as a waiver of any rights or remedies of Sigma with respect to any

claims against any of BLMIS's affiliates or the right to assert claims that are otherwise warranted

in any related or unrelated action. The filing of this supplement to the Claim is not and shall not

be deemed to be an admission for the purposes of any other proceeding and/or concerning any

other person.

9.    The filing of this supplement to the Claim is not intended to be and should

not be construed as (a) a consent by Sigma to the jurisdiction of the court overseeing the BLMIS

SIPA liquidation proceeding with respect to the subject matter of this claim, any objection or

other proceeding commenced in this case or otherwise involving Sigma; (b) a waiver of the

2

rights and remedies against any other person or entity who may be liable for all or part of the

claims set forth herein, whether an affiliate or guarantor of BLMIS or otherwise; (c) a waiver or

release of Sigma's right to trial by jury, or a consent to trial by jury, in this or any other court; or

(d) a waiver of any right to challenge the jurisdiction of the court, with respect to the subject

matter of this claim, any objection or other proceeding commenced in this case against or

otherwise involving Sigma.

      10.    Sigma specifically preserves all of its procedural and substantive defenses

and rights with respect to any claim that may be asserted against Sigma by BLMIS, any of its

successors and assigns or by any trustee for BLMIS's estate.

SK 25528 0043 1006307 v2

3

# SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA

NEW YORK, NEW YORK 10004

JACK YOSKOWITZ
PARTNER
(212) 574-1215
yoskowitz@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

1200 G STREET, N.W.
WASHINGTON, D.C. 20005
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

June 22, 2009

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

Re:    <u>Fairfield Sigma Limited</u>

Dear Mr. Picard:

Please find enclosed a Customer Claim form filed on behalf of Fairfield Sigma Limited ("Sigma") an investor in Bernard L. Madoff Investment Securities ("BLMIS") Account No. 1-FN045 held in the name of Fairfield Sentry Limited.

Under separate cover, we are additionally submitting Customer Claim forms on behalf of Sigma for investments in the following accounts held in the name of Fairfield Sentry Limited: BLMIS Account No. 1-FN012, BLMIS Account No. 1-FN069 and BLMIS Account No. 1-FN070.

We have provided a copy of Sigma's most recent account statement reflecting its Net Asset Value. Additional information is available upon request. We reserve the right to further update or amend each claim if necessary.

Sincerely,

Enclosures

cc:    Jan Naess
       Peter Schmid
       Robert J.D. Briant, Esq.

SK 25528 0043 1007358

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: Fairfield Sigma Limited _____

Mailing Address: P.O. Box 3140 Romasco Place, Wickhams Cay 1 _____

City: Roadtown _____ State: Tortola _____ Zip: British Virgin Islands

Account No.: Fairfield Sentry Limited, 1-FN045 _____

Taxpayer I.D. Number (Social Security No.): _____

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.    Claim for money balances as of **December 11, 2008**:

    a.    The Broker owes me a Credit (Cr.) Balance of     $ 773,635,188 *

    b.    I owe the Broker a Debit (Dr.) Balance of     $ 0

    c.    If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.     $ N/A

    d.    If balance is zero, insert "None."     $ 773,635,188

* See Addendum for details.

2.      Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | *See | *See |
| b. | I owe the Broker securities | Addendum | Addendum |

c.      If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
|  |  | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION
ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT
PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR
COMPLETION.

|    |    | YES | NO |
|----|----|-----|-----|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | X | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form:  Seward & Kissel LLP
One Battery Park Plaza, New York, NY 10004

502180406                                    3

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date  June 22, 2009        Signature

Date  June 22, 2009        Signature

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

CITCO
*Citco Fund Services*
*(Europe) B.V.*

CITCO GLOBAL CUSTODY NV
CITCO GLOBAL SECURITIES SERVICES LTD
2600 CORK AIRPORT BUSINESS PARK
KINSALE ROAD
CORK
IRELAND

| | |
|---|---|
| Date | : Jun-18-2009 |
| Valuation date | : Nov-03-2008 |
| Fund Id | : 03302 |
| Holder Id | : 00342402 |
| Account Id | : 00012302 |
| Currency | : US DOLLAR |
| Email | : TRADECONFIRM@CITCO.COM |
| FAX Number | : +353214910335 |

Account: CITCO GLOBAL CUSTODY NV – REF 358108

## FAIRFIELD SENTRY LIMITED

### FUND NET ASSET VALUES

| | | Net Asset Value |
|---|---|---|
| Opening Price | Sep-30-2008 | 1,350.6040 |
| Closing Price | Oct-31-2008 | 1,349.7782 |

### ACCOUNT VALUE

| | NAV Date | voting shares | Net Asset Value | Change in Account |
|---|---|---|---|---|
| Opening Market Value of Account | Sep-30-2008 | 830,977.4067 | 1,350.6040 | 1,122,321,409.40 |
| Add: Additions | | 0.0000 | | 0.00 |
| Less: Subtractions | | -257,820.1367 | | -348,000,000.04 |
| Closing Market Value of Account | Oct-31-2008 | 573,157.2700 | 1,349.7782 | 773,635,188.22 |
| Increase or decrease in market value due to change in the price in the period | | | | -686,221.14 |

### SUMMARY OF ACTIVITY

| Date | Description | Contract Number | Gross Consideration | Commission /Fees /Tax | Net Consideration | Net Asset Value Per Unit | No. of voting shares | Balance |
|---|---|---|---|---|---|---|---|---|
| 10-29-2008 | Opening Balance of voting shares | | | | | | | 830,977.4067 |
| 11-01-2008 | Redemption | 69554402 | -129,999,999.97 | (0.00) | -129,999,999.97 | 1,349.7782 | -96,312.1200 | 734,665.2867 |
| 11-01-2008 | Redemption | 69554502 | -218,000,000.07 | (0.00) | -218,000,000.07 | 1,349.7782 | -161,508.0167 | 573,157.2700 |
| 11-03-2008 | Closing Balance of voting shares | | | | | | | 573,157.2700 |
| Total Additions | | 0 | 0.00 | 0.00 | 0.00 | | 0.0000 | |
| Total Subtractions | | 2 | 348,000,000.04 | 0.00 | 348,000,000.04 | | -257,820.1367 | |

Note: All trade orders must be submitted in writing. In the event of non-receipt of confirmation within 5 days, please contact Citco immediately.

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610  E-mail: amscfsclientdesk@citco.com

*Citco Building*
*Telestone - Teleport*
*Naritaweg 165*
*1043 BW Amsterdam*
*The Netherlands*

*www.citco.com*

*Phone: (31-20) 5722100*
*Fax:   (31-20) 5722610*
*Chamber of Commerce 33205112*

Page 1 of 1

Sigma SIPC 00001

**Fairfield Sigma Limited ("Sigma")**
**Addendum to Customer Claim Form**
**Bernard L. Madoff Investment Securities LLC ("BLMIS")**

Sigma hereby submits this addendum in support of its claim.

1.      Sigma is a business company organized under the laws of the British
Virgin Islands. Sigma is a shareholder of Fairfield Sentry Limited ("Sentry") -- a customer of
BLMIS. On March 3, 2009, Sentry filed a customer claim, and on June 22, 2009, Sentry filed an
amended customer claim. Consistent with Sentry's amended claim, Sigma is filing four separate
customer claim forms because Sentry had four accounts, 1-FN012, 1-FN045, 1-FN069 and 1-
FN070, with BLMIS. Accordingly, as a shareholder of Sentry, Sigma hereby submits a claim
based on its most recent Net Asset Valuation ("NAV") of its shares in Sentry:

| Account ID | Number of Shares | Value as of October 2008 |
|------------|------------------|--------------------------|
| 00012302   | 573,157.27       | $773,635,188             |

2.      While Sigma was not a direct customer of BLMIS, it submits this claim to
reserve its right to customer protection in the event the Securities Investor Protection Act of
1970, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), is amended or interpreted, now or in the future, to
provide coverage to indirect customers or investors of BLMIS.

3.      Sigma submits this Customer Claim Form under its name only. Sigma is
not submitting individual claims on behalf of its Shareholders. While neither Sigma nor its
counsel is authorized to represent or bind the Shareholders in connection with this filing, Sigma
reserves the rights of its Shareholders to file their own customer claim forms in the event SIPA is
amended or interpreted to provide coverage to its Shareholders.

4.      In support of its Claim under 15 U.S.C. §78fff(a)(1)(B), Sigma hereby
submits a copy of the latest Sigma account statement from Citco Global Custody, NV, reflecting

the net asset value of its investment in Sentry as of October 31, 2008, the last month in which a

NAV was calculated.

5.      In addition, Sigma invested $319,240,000 million more into Sentry than it

redeemed over the period September 2003 to November 2008.

6.      In further response to Item 8 of the Customer Claim Form, Sigma

executed an investment management agreement over the relevant time period with Fairfield

Greenwich (Bermuda) Limited (the "Investment Manager"), an affiliate of what is known

informally as Fairfield Greenwich Group.  Sigma retained the Investment Manager to manage its

investments.  Fairfield Greenwich (Bermuda) Limited's mailing address is 12 Church Street,

Suite 606, Hamilton, Bermuda, HM 11.  The telephone number is (441) 292-5401.

### RESERVATION OF RIGHTS

7.      Sigma expressly reserves its right to replace, amend and/or supplement

this Customer Claim to include any claim at law or in equity.

8.      The filing of this supplement to the Claim shall not be deemed a waiver of

any claim in law or equity that Sigma may have against BLMIS.  Furthermore, nothing contained

herein shall be construed as a waiver of any rights or remedies of Sigma with respect to any

claims against any of BLMIS's affiliates or the right to assert claims that are otherwise warranted

in any related or unrelated action.  The filing of this supplement to the Claim is not and shall not

be deemed to be an admission for the purposes of any other proceeding and/or concerning any

other person.

9.      The filing of this supplement to the Claim is not intended to be and should

not be construed as (a) a consent by Sigma to the jurisdiction of the court overseeing the BLMIS

SIPA liquidation proceeding with respect to the subject matter of this claim, any objection or

other proceeding commenced in this case or otherwise involving Sigma; (b) a waiver of the

2

rights and remedies against any other person or entity who may be liable for all or part of the

claims set forth herein, whether an affiliate or guarantor of BLMIS or otherwise; (c) a waiver or

release of Sigma's right to trial by jury, or a consent to trial by jury, in this or any other court; or

(d) a waiver of any right to challenge the jurisdiction of the court, with respect to the subject

matter of this claim, any objection or other proceeding commenced in this case against or

otherwise involving Sigma.

        10.    Sigma specifically preserves all of its procedural and substantive defenses

and rights with respect to any claim that may be asserted against Sigma by BLMIS, any of its

successors and assigns or by any trustee for BLMIS's estate.

SK 25528 0043 1006307 v2

# Seward & Kissel LLP

ONE BATTERY PARK PLAZA

NEW YORK, NEW YORK 10004

JACK YOSKOWITZ
PARTNER
(212) 574-1215
yoskowitz@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

1200 G STREET, N.W.
WASHINGTON, D.C. 20005
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

June 22, 2009

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

Re:   <u>Fairfield Sigma Limited</u>

Dear Mr. Picard:

Please find enclosed a Customer Claim form filed on behalf of Fairfield Sigma Limited ("Sigma") an investor in Bernard L. Madoff Investment Securities ("BLMIS") Account No. 1-FN069 held in the name of Fairfield Sentry Limited.

Under separate cover, we are additionally submitting Customer Claim forms on behalf of Sigma for investments in the following accounts held in the name of Fairfield Sentry Limited: BLMIS Account No. 1-FN012, BLMIS Account No. 1-FN045 and BLMIS Account No. 1-FN070.

We have provided a copy of Sigma's most recent account statement reflecting its Net Asset Value. Additional information is available upon request. We reserve the right to further update or amend each claim if necessary.

Sincerely,

Enclosures

cc:   Jan Naess
      Peter Schmid
      Robert J.D. Briant, Esq.

SK 25528 0043 1007372

09-01239-cgm    Doc 251-30    Filed 05/09/11/22    Entered 05/09/11/22:29:63:22    Exhibit C to
the Settlement Agreement    Pg 36 of 51
Pg 94 of 208

**CUSTOMER CLAIM**

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer:  Fairfield Sigma Limited
Mailing Address: P.O. Box 3140 Romasco Place, Wickhams Cay 1
City: Roadtown                State: Tortola                    Zip: British Virgin Islands
Account No.: Fairfield Sentry Limited, 1-FN069
Taxpayer I.D. Number (Social Security No.): _____

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*******************************************************************

1.    Claim for money balances as of **December 11, 2008**:

    a.    The Broker owes me a Credit (Cr.) Balance of        $ 773,635,188 *

    b.    I owe the Broker a Debit (Dr.) Balance of            $ 0

    c.    If you wish to repay the Debit Balance,

       please insert the amount you wish to repay and

       attach a check payable to "Irving H. Picard, Esq.,

       Trustee for Bernard L. Madoff Investment Securities LLC" .

       If you wish to make a payment, **it must be enclosed**

       with this claim form.                                $ N/A

    d.    If balance is zero, insert "None."                  $ 773,635,188

* See Addendum for details.

502180406                            1

2.        Claim for securities as of **December 11, 2008:**

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | *See | *See |
| b. | I owe the Broker securities | Addendum | Addendum |

c.        If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Number of Shares or Face Amount of Bonds

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase and sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement.  If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE: IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | x |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | x |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | x |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | x |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | x |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | x |  |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | x |

Please list the full name and address of anyone assisting you in the preparation of this claim form: _Seward & Kissel LLP_
One Battery Park Plaza, New York, NY 10004

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date ___June 22, 2009___    Signature _____

Date ___June 22, 2009___    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly,
together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

# CITCO
*Citco Fund Services*
*(Europe) B.V.*

| | |
|---|---|
| **CITCO GLOBAL CUSTODY NV** | **Date** : Jun-18-2009 |
| **CITCO GLOBAL SECURITIES SERVICES LTD** | **Valuation date** : Nov-03-2008 |
| **2600 CORK AIRPORT BUSINESS PARK** | **Fund Id** : 03302 |
| **KINSALE ROAD** | **Holder Id** : 00342402 |
| **CORK** | **Account Id** : 00012302 |
| **IRELAND** | **Currency** : US DOLLAR |
| | **Email** : TRADECONFIRM@CITCO.COM |
| | **FAX Number** : +353214910335 |

**Account: CITCO GLOBAL CUSTODY NV - REF 358108**

## FAIRFIELD SENTRY LIMITED

### FUND NET ASSET VALUES

| | | Net Asset Value |
|---|---|---|
| **Opening Price** | Sep-30-2008 | 1,350.6040 |
| **Closing Price** | Oct-31-2008 | 1,349.7782 |

### ACCOUNT VALUE

| | NAV Date | voting shares | Net Asset Value | Change in Account |
|---|---|---|---|---|
| **Opening Market Value of Account** | Sep-30-2008 | 830,977.4067 | 1,350.6040 | 1,122,321,409.40 |
| **Add: Additions** | | 0.0000 | | 0.00 |
| **Less: Subtractions** | | -257,820.1367 | | -348,000,000.04 |
| **Closing Market Value of Account** | Oct-31-2008 | 573,157.2700 | 1,349.7782 | 773,635,188.22 |
| Increase or decrease in market value due to change in the price in the period | | | | -686,221.14 |

### SUMMARY OF ACTIVITY

| Date | Description | Contract Number | Gross Consideration | Commission /Fees /Tax | Net Consideration | Net Asset Value Per Unit | No. of voting shares | Balance |
|---|---|---|---|---|---|---|---|---|
| **10-29-2008** | **Opening Balance of voting shares** | | | | | | | 830,977.4067 |
| 11-01-2008 | Redemption | 69554402 | -129,999,999.97 | (0.00) | -129,999,999.97 | 1,349.7782 | -96,312.1200 | 734,665.2867 |
| 11-01-2008 | Redemption | 69554502 | -218,000,000.07 | (0.00) | -218,000,000.07 | 1,349.7782 | -161,508.0167 | 573,157.2700 |
| **11-03-2008** | **Closing Balance of voting shares** | | | | | | | 573,157.2700 |
| Total Additions | | 0 | 0.00 | 0.00 | 0.00 | | 0.0000 | |
| Total Subtractions | | 2 | 348,000,000.04 | 0.00 | 348,000,000.04 | | -257,820.1367 | |

**Note: All trade orders must be submitted in writing. In the event of non-receipt of confirmation within 5 days, please contact Citco immediately.**

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610 E-mail: amscfsclientdesk@citco.com

*Citco Building*
*Telestone - Teleport*
*Naritaweg 165*
*1043 BW Amsterdam*
*The Netherlands*

*www.citco.com*

*Phone: (31-20) 5722100*
*Fax: (31-20) 5722610*
*Chamber of Commerce 33205112*

Page 1 of 1

### Fairfield Sigma Limited ("Sigma")
### Addendum to Customer Claim Form
### Bernard L. Madoff Investment Securities LLC ("BLMIS")

Sigma hereby submits this addendum in support of its claim.

1.      Sigma is a business company organized under the laws of the British Virgin Islands. Sigma is a shareholder of Fairfield Sentry Limited ("Sentry") -- a customer of BLMIS. On March 3, 2009, Sentry filed a customer claim, and on June 22, 2009, Sentry filed an amended customer claim. Consistent with Sentry's amended claim, Sigma is filing four separate customer claim forms because Sentry had four accounts, 1-FN012, 1-FN045, 1-FN069 and 1-FN070, with BLMIS. Accordingly, as a shareholder of Sentry, Sigma hereby submits a claim based on its most recent Net Asset Valuation ("NAV") of its shares in Sentry:

| Account ID | Number of Shares | Value as of October 2008 |
|---|---|---|
| 00012302 | 573,157.27 | $773,635,188 |

2.      While Sigma was not a direct customer of BLMIS, it submits this claim to reserve its right to customer protection in the event the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa et seq. ("SIPA"), is amended or interpreted, now or in the future, to provide coverage to indirect customers or investors of BLMIS.

3.      Sigma submits this Customer Claim Form under its name only. Sigma is not submitting individual claims on behalf of its Shareholders. While neither Sigma nor its counsel is authorized to represent or bind the Shareholders in connection with this filing, Sigma reserves the rights of its Shareholders to file their own customer claim forms in the event SIPA is amended or interpreted to provide coverage to its Shareholders.

4.      In support of its Claim under 15 U.S.C. §78fff(a)(1)(B), Sigma hereby submits a copy of the latest Sigma account statement from Citco Global Custody, NV, reflecting

the net asset value of its investment in Sentry as of October 31, 2008, the last month in which a

NAV was calculated.

      5.     In addition, Sigma invested $319,240,000 million more into Sentry than it

redeemed over the period September 2003 to November 2008.

      6.     In further response to Item 8 of the Customer Claim Form, Sigma

executed an investment management agreement over the relevant time period with Fairfield

Greenwich (Bermuda) Limited (the "Investment Manager"), an affiliate of what is known

informally as Fairfield Greenwich Group. Sigma retained the Investment Manager to manage its

investments. Fairfield Greenwich (Bermuda) Limited's mailing address is 12 Church Street,

Suite 606, Hamilton, Bermuda, HM 11. The telephone number is (441) 292-5401.

## RESERVATION OF RIGHTS

      7.     Sigma expressly reserves its right to replace, amend and/or supplement

this Customer Claim to include any claim at law or in equity.

      8.     The filing of this supplement to the Claim shall not be deemed a waiver of

any claim in law or equity that Sigma may have against BLMIS. Furthermore, nothing contained

herein shall be construed as a waiver of any rights or remedies of Sigma with respect to any

claims against any of BLMIS's affiliates or the right to assert claims that are otherwise warranted

in any related or unrelated action. The filing of this supplement to the Claim is not and shall not

be deemed to be an admission for the purposes of any other proceeding and/or concerning any

other person.

      9.     The filing of this supplement to the Claim is not intended to be and should

not be construed as (a) a consent by Sigma to the jurisdiction of the court overseeing the BLMIS

SIPA liquidation proceeding with respect to the subject matter of this claim, any objection or

other proceeding commenced in this case or otherwise involving Sigma; (b) a waiver of the

rights and remedies against any other person or entity who may be liable for all or part of the

claims set forth herein, whether an affiliate or guarantor of BLMIS or otherwise; (c) a waiver or

release of Sigma's right to trial by jury, or a consent to trial by jury, in this or any other court; or

(d) a waiver of any right to challenge the jurisdiction of the court, with respect to the subject

matter of this claim, any objection or other proceeding commenced in this case against or

otherwise involving Sigma.

10.    Sigma specifically preserves all of its procedural and substantive defenses

and rights with respect to any claim that may be asserted against Sigma by BLMIS, any of its

successors and assigns or by any trustee for BLMIS's estate.

SK 25528 0043 1006307 v2

# SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA

NEW YORK, NEW YORK 10004

JACK YOSKOWITZ
PARTNER
(212) 574-1215
yoskowitz@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

1200 G STREET, N.W.
WASHINGTON, D.C. 20005
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

June 22, 2009

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Irving H. Picard, Esq.
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, Texas 75201

   Re:  <u>Fairfield Sigma Limited</u>

Dear Mr. Picard:

   Please find enclosed a Customer Claim form filed on behalf of Fairfield Sigma Limited ("Sigma") an investor in Bernard L. Madoff Investment Securities ("BLMIS") Account No. 1-FN070 held in the name of Fairfield Sentry Limited.

   Under separate cover, we are additionally submitting Customer Claim forms on behalf of Sigma for investments in the following accounts held in the name of Fairfield Sentry Limited: BLMIS Account No. 1-FN012, BLMIS Account No. 1-FN045 and BLMIS Account No. 1-FN069.

   We have provided a copy of Sigma's most recent account statement reflecting its Net Asset Value. Additional information is available upon request. We reserve the right to further update or amend each claim if necessary.

Sincerely,

*[signature]*

Enclosures

cc: Jan Naess
  Peter Schmid
  Robert J.D. Briant, Esq.

SK 25528 0043 1007373

## CUSTOMER CLAIM

Claim Number _____

Date Received _____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

## DECEMBER 11, 2008

(Please print or type)

Name of Customer: __Fairfield Sigma Limited__

Mailing Address: __P.O. Box 3140 Romasco Place, Wickhams Cay 1__

City: __Roadtown__   State: __Tortola__   Zip: __British Virgin Islands__

Account No.: __Fairfield Sentry Limited, 1-FN070__

Taxpayer I.D. Number (Social Security No.): _____

**NOTE:** BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1. Claim for money balances as of **December 11, 2008**:

   a. The Broker owes me a Credit (Cr.) Balance of   $ 773,635,188 \*

   b. I owe the Broker a Debit (Dr.) Balance of   $ 0

   c. If you wish to repay the Debit Balance,

      please insert the amount you wish to repay and

      attach a check payable to "Irving H. Picard, Esq.,

      Trustee for Bernard L. Madoff Investment Securities LLC."

      If you wish to make a payment, **it must be enclosed**

      with this claim form.   $ N/A

   d. If balance is zero, insert "None."   $ 773,635,188

\* See Addendum for details.

502180406                                    1

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. |  | X |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? |  | X |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? |  | X |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) |  | X |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. |  | X |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | X |  |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. |  | X |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Seward & Kissel LLP
One Battery Park Plaza, New York, NY 10004

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.

THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.

Date _June 22, 2009_    Signature _____

Date _June 22, 2009_    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

# CITCO
*Citco Fund Services*
*(Europe) B.V.*

CITCO GLOBAL CUSTODY NV
CITCO GLOBAL SECURITIES SERVICES LTD
2600 CORK AIRPORT BUSINESS PARK
KINSALE ROAD
CORK
IRELAND

| | |
|---|---|
| Date | : Jun-18-2009 |
| Valuation date | : Nov-03-2008 |
| Fund Id | : 03302 |
| Holder Id | : 00342402 |
| Account Id | : 00012302 |
| Currency | : US DOLLAR |
| Email | : TRADECONFIRM@CITCO.COM |
| FAX Number | : +353214910335 |

Account: CITCO GLOBAL CUSTODY NV - REF 358108

## FAIRFIELD SENTRY LIMITED

### FUND NET ASSET VALUES

| | | Net Asset Value |
|---|---|---|
| Opening Price | Sep-30-2008 | 1,350.6040 |
| Closing Price | Oct-31-2008 | 1,349.7782 |

### ACCOUNT VALUE

| | NAV Date | voting shares | Net Asset Value | Change in Account |
|---|---|---|---|---|
| Opening Market Value of Account | Sep-30-2008 | 830,977.4067 | 1,350.6040 | 1,122,321,409.40 |
| Add: Additions | | 0.0000 | | 0.00 |
| Less: Subtractions | | -257,820.1367 | | -348,000,000.04 |
| Closing Market Value of Account | Oct-31-2008 | 573,157.2700 | 1,349.7782 | 773,635,188.22 |
| Increase or decrease in market value due to change in the price in the period | | | | -686,221.14 |

### SUMMARY OF ACTIVITY

| Date | Description | Contract Number | Gross Consideration | Commission /Fees /Tax | Net Consideration | Net Asset Value Per Unit | No. of voting shares | Balance |
|---|---|---|---|---|---|---|---|---|
| 10-29-2008 | Opening Balance of voting shares | | | | | | | 830,977.4067 |
| 11-01-2008 | Redemption | 69554402 | -129,999,999.97 | (0.00) | -129,999,999.97 | 1,349.7782 | -96,312.1200 | 734,665.2867 |
| 11-01-2008 | Redemption | 69554502 | -218,000,000.07 | (0.00) | -218,000,000.07 | 1,349.7782 | -161,508.0167 | 573,157.2700 |
| 11-03-2008 | Closing Balance of voting shares | | | | | | | 573,157.2700 |
| Total Additions | | 0 | 0.00 | 0.00 | 0.00 | | 0.0000 | |
| Total Subtractions | | 2 | 348,000,000.04 | 0.00 | 348,000,000.04 | | -257,820.1367 | |

Note: All trade orders must be submitted in writing. In the event of non-receipt of confirmation within 5 days, please contact Citco immediately.

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610 E-mail: amscfsclientdesk@citco.com

*Citco Building*
*Telestone - Teleport*
*Naritaweg 165*
*1043 BW Amsterdam*
*The Netherlands*

*www.citco.com*

*Phone: (31-20) 5722100*
*Fax: (31-20) 5722610*
*Chamber of Commerce 33205112*

Page 1 of 1

Sigma SIPC 00001

### Fairfield Sigma Limited ("Sigma")
### Addendum to Customer Claim Form
### Bernard L. Madoff Investment Securities LLC ("BLMIS")

Sigma hereby submits this addendum in support of its claim.

1.    Sigma is a business company organized under the laws of the British Virgin Islands. Sigma is a shareholder of Fairfield Sentry Limited ("Sentry") – a customer of BLMIS. On March 3, 2009, Sentry filed a customer claim, and on June 22, 2009, Sentry filed an amended customer claim. Consistent with Sentry's amended claim, Sigma is filing four separate customer claim forms because Sentry had four accounts, 1-FN012, 1-FN045, 1-FN069 and 1-FN070, with BLMIS. Accordingly, as a shareholder of Sentry, Sigma hereby submits a claim based on its most recent Net Asset Valuation ("NAV") of its shares in Sentry:

| Account ID | Number of Shares | Value as of October 2008 |
|---|---|---|
| 00012302 | 573,157.27 | $773,635,188 |

2.    While Sigma was not a direct customer of BLMIS, it submits this claim to reserve its right to customer protection in the event the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa et seq. ("SIPA"), is amended or interpreted, now or in the future, to provide coverage to indirect customers or investors of BLMIS.

3.    Sigma submits this Customer Claim Form under its name only. Sigma is not submitting individual claims on behalf of its Shareholders. While neither Sigma nor its counsel is authorized to represent or bind the Shareholders in connection with this filing, Sigma reserves the rights of its Shareholders to file their own customer claim forms in the event SIPA is amended or interpreted to provide coverage to its Shareholders.

4.    In support of its Claim under 15 U.S.C. §78fff(a)(1)(B), Sigma hereby submits a copy of the latest Sigma account statement from Citco Global Custody, NV, reflecting

the net asset value of its investment in Sentry as of October 31, 2008, the last month in which a

NAV was calculated.

5.    In addition, Sigma invested $319,240,000 million more into Sentry than it

redeemed over the period September 2003 to November 2008.

6.    In further response to Item 8 of the Customer Claim Form, Sigma

executed an investment management agreement over the relevant time period with Fairfield

Greenwich (Bermuda) Limited (the "Investment Manager"), an affiliate of what is known

informally as Fairfield Greenwich Group. Sigma retained the Investment Manager to manage its

investments. Fairfield Greenwich (Bermuda) Limited's mailing address is 12 Church Street,

Suite 606, Hamilton, Bermuda, HM 11. The telephone number is (441) 292-5401.

### RESERVATION OF RIGHTS

7.    Sigma expressly reserves its right to replace, amend and/or supplement

this Customer Claim to include any claim at law or in equity.

8.    The filing of this supplement to the Claim shall not be deemed a waiver of

any claim in law or equity that Sigma may have against BLMIS. Furthermore, nothing contained

herein shall be construed as a waiver of any rights or remedies of Sigma with respect to any

claims against any of BLMIS's affiliates or the right to assert claims that are otherwise warranted

in any related or unrelated action. The filing of this supplement to the Claim is not and shall not

be deemed to be an admission for the purposes of any other proceeding and/or concerning any

other person.

9.    The filing of this supplement to the Claim is not intended to be and should

not be construed as (a) a consent by Sigma to the jurisdiction of the court overseeing the BLMIS

SIPA liquidation proceeding with respect to the subject matter of this claim, any objection or

other proceeding commenced in this case or otherwise involving Sigma; (b) a waiver of the

2

rights and remedies against any other person or entity who may be liable for all or part of the claims set forth herein, whether an affiliate or guarantor of BLMIS or otherwise; (c) a waiver or release of Sigma's right to trial by jury, or a consent to trial by jury, in this or any other court; or (d) a waiver of any right to challenge the jurisdiction of the court, with respect to the subject matter of this claim, any objection or other proceeding commenced in this case against or otherwise involving Sigma.

    10.    Sigma specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against Sigma by BLMIS, any of its successors and assigns or by any trustee for BLMIS's estate.

SK 25528 0043 1006307 v2

3

# EXHIBIT D
## LAMBDA DENIAL NOTICE

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008[1]**


**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

December 8, 2009

FAIRFIELD LAMBDA LTD.
PO BOX 3140
ROMASCO PLACE, WICKHAMS CAY 1
ROADTOWN, TORTOLA
BRITISH VIRGIN ISLANDS


Dear FAIRFIELD LAMBDA LTD.:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC
("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities
Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order
entered on December 15, 2008 by the United States District Court for the Southern
District of New York.

The Trustee has made the following determination regarding your claim designated as
Claim No. 014761:

Based on a review of available books and records of BLMIS by the Trustee's staff, you
did not have an account with BLMIS. Because you did not have an account, you are
not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2).
Accordingly, your Claim for securities and/or a credit balance is **DENIED.**

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing
before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition,
setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-
1789 (BRL) and attaching copies of any documents in support of your position, with
the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after
December 8, 2009, the date on which the Trustee mailed this notice.

--------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree
is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States
court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was
commenced before the date on which such application was filed, the term 'filing date' means the date on which
such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree
was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc: SEWARD & KISSEL LLP
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

Fairfield Lambda Limited
PO Box 3140 Romasco Place, Wickhams Cay 1
Roadtown, Tortola
British Virgin Islands

Dear Fairfield Lambda Limited:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC
("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities
Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order
entered on December 15, 2008 by the United States District Court for the Southern
District of New York.

The Trustee has made the following determination regarding your claim designated as
Claim No. 014661:

Based on a review of available books and records of BLMIS by the Trustee's staff, you
did not have an account with BLMIS. Because you did not have an account, you are
not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2).
Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing
before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition,
setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-
1789 (BRL) and attaching copies of any documents in support of your position, with
the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after
December 8, 2009, the date on which the Trustee mailed this notice.

-------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree
is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States
court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was
commenced before the date on which such application was filed, the term 'filing date' means the date on which
such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree
was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

*Irving Picard*

_____

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  SEWARD & KISSEL LLP
     ONE BATTERY PARK PLAZA
     NEW YORK, NY  10004

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

December 8, 2009

FAIRFIELD LAMBDA LTD.
PO BOX 3140
ROMASCO PLACE, WICKHAMS CAY 1
ROADTOWN, TORTOLA
BRITISH VIRGIN ISLANDS

Dear FAIRFIELD LAMBDA LTD.:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC
("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities
Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order
entered on December 15, 2008 by the United States District Court for the Southern
District of New York.

The Trustee has made the following determination regarding your claim designated as
Claim No. 014762: ·

Based on a review of available books and records of BLMIS by the Trustee's staff, you
did not have an account with BLMIS. Because you did not have an account, you are
not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2).
Accordingly, your Claim for securities and/or a credit balance is **DENIED.**

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing
before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition,
setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-
1789 (BRL) and attaching copies of any documents in support of your position, with
the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after
December 8, 2009, the date on which the Trustee mailed this notice.

--------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree
is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States
court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was
commenced before the date on which such application was filed, the term 'filing date' means the date on which
such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree
was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  SEWARD & KISSEL LLP
ONE BATTERY PARK PLAZA
NEW YORK, NY  10004

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

#### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

December 8, 2009

FAIRFIELD LAMBDA LIMITED
P.O. BOX 3140
ROMASCO PLACE, WICKHAMS CAY 1
ROADTOWN, TORTOLA
BRITISH VIRGIN ISLANDS

Dear FAIRFIELD LAMBDA LIMITED:

#### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim designated as Claim No. 004795: '

Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78lll (2). Accordingly, your Claim for securities and/or a credit balance is **DENIED**.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after December 8, 2009, the date on which the Trustee mailed this notice.

--------------------------------

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
Attn: Claims Department
45 Rockefeller Plaza
New York, New York 10111

**Irving H. Picard**

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  SEWARD & KISSEL LLP
    ONE BATTERY PARK PLAZA
    NEW YORK, NY  10004

Fairfield Lambda Limited ("Lambda")
Addendum to Customer Claim Form
Bernard L. Madoff Investment Securities LLC ("BLMIS")

Lambda hereby submits this addendum in support of its claim.

1.      Lambda is a business company organized under the laws of the British Virgin Islands. Lambda is a shareholder of Fairfield Sentry Limited ("Sentry") -- a customer of BLMIS. On March 3, 2009, Sentry filed a customer claim, and on June 22, 2009, Sentry filed an amended customer claim.

2.      On April 23, 2009 by order of the Easter Caribbean Supreme Court in the High Court of the British Virgin Islands, Mr. Christopher Stride, of Krys & Associates (BVI) Ltd. (the "Liquidator") was appointed as liquidator of Lambda pursuant to Part VI of the Insolvency Act of 2003. Accordingly, the Liquidator is authorized to submit this claim on behalf of Lambda. Annexed hereto is a copy of the Order appointing the Liquidator.

3.      Consistent with Sentry's amended claim, Lambda is filing four separate customer claim forms because Sentry had four accounts, 1-FN012, 1-FN045, 1-FN069 and 1-FN070, with BLMIS. Accordingly, as a shareholder of Sentry, Lambda hereby submits a claim based on its most recent Net Asset Valuation ("NAV") of its shares in Sentry:

| Account ID | Number of Shares | Value as of October 2008 |
|------------|------------------|--------------------------|
| 05063240   | 27,172.0242      | $36,676,205.92           |

4.      While Lambda was not a direct customer of BLMIS, it submits this claim to reserve its right to customer protection in the event the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa et seq. ("SIPA"), is amended or interpreted, now or in the future, to provide coverage to indirect customers or investors of BLMIS.

5.     Lambda submits this Customer Claim Form under its name only.  Lambda
is not submitting individual claims on behalf of its Shareholders.  While neither Lambda nor its
counsel is authorized to represent or bind the Shareholders in connection with this filing,
Lambda reserves the rights of its Shareholders to file their own customer claim forms in the
event SIPA is amended or interpreted to provide coverage to its Shareholders.

6.     In support of its Claim under 15 U.S.C. §78fff(a)(1)(B), Lambda hereby
submits a copy of the latest Lambda account statement from Citco Global Custody, NV,
reflecting the net asset value of its investment in Sentry as of October 31, 2008, the last month in
which a NAV was calculated.

7.     In addition, Lambda invested $319,240,000 million more into Sentry than
it redeemed over the period September 2003 to November 2008.

8.     In further response to Item 8 of the Customer Claim Form, Lambda
executed an investment management agreement over the relevant time period with Fairfield
Greenwich (Bermuda) Limited (the "Investment Manager"), an affiliate of what is known
informally as Fairfield Greenwich Group.  Lambda retained the Investment Manager to manage
its investments.  Fairfield Greenwich (Bermuda) Limited's mailing address is 12 Church Street,
Suite 606, Hamilton, Bermuda, HM 11.  The telephone number is (441) 292-5401.

## RESERVATION OF RIGHTS

9.     Lambda expressly reserves its right to replace, amend and/or supplement
this Customer Claim to include any claim at law or in equity.

10.    The filing of this supplement to the Claim shall not be deemed a waiver of
any claim in law or equity that Lambda may have against BLMIS.  Furthermore, nothing
contained herein shall be construed as a waiver of any rights or remedies of Lambda with respect
to any claims against any of BLMIS's affiliates or the right to assert claims that are otherwise

2

warranted in any related or unrelated action. The filing of this supplement to the Claim is not

and shall not be deemed to be an admission for the purposes of any other proceeding and/or

concerning any other person.

11.    The filing of this supplement to the Claim is not intended to be and should

not be construed as (a) a consent by Lambda to the jurisdiction of the court overseeing the

BLMIS SIPA liquidation proceeding with respect to the subject matter of this claim, any

objection or other proceeding commenced in this case or otherwise involving Lambda; (b) a

waiver of the rights and remedies against any other person or entity who may be liable for all or

part of the claims set forth herein, whether an affiliate or guarantor of BLMIS or otherwise; (c) a

waiver or release of Lambda's right to trial by jury, or a consent to trial by jury, in this or any

other court; or (d) a waiver of any right to challenge the jurisdiction of the court, with respect to

the subject matter of this claim, any objection or other proceeding commenced in this case

against or otherwise involving Lambda.

12.    Lambda specifically preserves all of its procedural and substantive

defenses and rights with respect to any claim that may be asserted against Lambda by BLMIS,

any of its successors and assigns or by any trustee for BLMIS's estate.

SK 25528 0043 1007588

3

# CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: Fairfield Lambda Limited

Mailing Address: P.O. Box 3140 Romasco Place, Wickhams Cay 1

City: Roadtown     State: Tortola     Zip: British Virgin Islands

Account No.: Fairfield Sentry Limited Account No. 1-FN-012

Taxpayer I.D. Number (Social Security No.): _____

NOTE: BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*************************************************************************

1. Claim for money balances as of **December 11, 2008**:

    a. The Broker owes me a Credit (Cr.) Balance of    $ 36,676,205.92*

    b. I owe the Broker a Debit (Dr.) Balance of    $ 0

    c. If you wish to repay the Debit Balance, please insert the amount you wish to repay and attach a check payable to "Irving H. Picard, Esq., Trustee for Bernard L. Madoff Investment Securities LLC." If you wish to make a payment, **it must be enclosed** with this claim form.    $ N/A

    d. If balance is zero, insert "None."    $ 36,676,205.92

*See Addendum for details.

S02180406       1

2.        Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   |   | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | *See | *See |
| b. | I owe the Broker securities | Addendum | Addendum |
| c. | If yes to either, please list below: |   |   |

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| | | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

**NOTE:** IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | x |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | x |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | x |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | x |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | x |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | x | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | x |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Seward & Kissel LLP
One Battery Park Plaza, New York, NY 10004                                        .

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____    Signature _____ LIQWDATOR

Date _____    Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**CUSTOMER CLAIM**

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: Fairfield Lambda Limited

Mailing Address: P.O. Box 3140 Romasco Place, Wickhams Cay 1

City: Roadtown _____ State: Tortola _____ Zip: British Virgin Islands

Account No.: Fairfield Sentry Limited Account No. 1-FN-069

Taxpayer I.D. Number (Social Security No.): _____

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

*****************************************************************

1.   Claim for money balances as of **December 11, 2008**:

a.   The Broker owes me a Credit (Cr.) Balance of        $ 36,676,205.92*

b.   I owe the Broker a Debit (Dr.) Balance of           $   0

c.   If you wish to repay the Debit Balance,

please insert the amount you wish to repay and

attach a check payable to "Irving H. Picard, Esq.,

Trustee for Bernard L. Madoff Investment Securities LLC."

If you wish to make a payment, **it must be enclosed**

with this claim form.                                   $   N/A

d.   If balance is zero, insert "None."                  $ 36,676,205.92

*See Addendum for details.

502180406                          I

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  |  | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | *See | *See |
| b. | I owe the Broker securities | Addendum | Addendum |
| c. | If yes to either, please list below: |  |  |

| | | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT.  IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008?  If so, please explain. | | x |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | x |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | x |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker?  If so, give name(s) | | x |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank?  If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | x |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf?  Give names, addresses and phone numbers. | x | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970?  if so, give name of that broker. | | x |

Please list the full name and address of anyone assisting you in the preparation of this claim form:  Seward & Kissel LLP
One Battery Park Plaza, New York, NY 10004

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____    Signature_____ LIQUIDATOR

Date _____    Signature_____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

**CUSTOMER CLAIM**

Claim Number_____

Date Received_____

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**

(Please print or type)

Name of Customer: Fairfield Lambda Limited

Mailing Address: P.O. Box 3140 Romasco Place, Wickhams Cay 1

City: Roadtown                State: Tortola                Zip: British Virgin Islands

Account No.: Fairfield Sentry Limited Account No. 1-FN-045

Taxpayer I.D. Number (Social Security No.): _____

NOTE:    BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY
THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM
SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL
PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE
RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS
RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE
SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS
LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY
CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

1.    Claim for money balances as of **December 11, 2008**:

    a.    The Broker owes me a Credit (Cr.) Balance of        $ 36,676,205.92*

    b.    I owe the Broker a Debit (Dr.) Balance of            $    0

    c.    If you wish to repay the Debit Balance,

        please insert the amount you wish to repay and

        attach a check payable to "Irving H. Picard, Esq.,

        Trustee for Bernard L. Madoff Investment Securities LLC."

        If you wish to make a payment, **it must be enclosed**

        with this claim form.                                $    N/A

    d.    If balance is zero, insert "None."                  $ 36,676,205.92

*See Addendum for details.

502180406                                    1

2.    Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|  | YES | NO |
|---|---|---|
| a. The Broker owes me securities | *See | *See |
| b. I owe the Broker securities | Addendum | Addendum |

c.    If yes to either, please list below:

| Date of Transaction (trade date) | Name of Security | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

*(Number of Shares or Face Amount of Bonds)*

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

NOTE:    IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION
ON A SIGNED ATTACHMENT.    IF SUFFICIENT DETAILS ARE NOT
PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR
COMPLETION.

|   |   | YES | NO |
|---|---|-----|-----|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | x |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | x |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | x |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | x |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | x |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | x | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | x |

Please list the full name and address of anyone assisting you in the
preparation of this claim form:  Seward & Kissel LLP
One Battery Park Plaza, New York, NY 10004                          .

S0218040/6

3

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____ Signature _____ LIQUIDATOR

Date _____ Signature_____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, e.g., corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

CUSTOMER CLAIM

Claim Number_____

Date Received_____

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008

(Please print or type)

Name of Customer: Fairfield Lambda Limited

Mailing Address: P.O. Box 3140 Romasco Place, Wickhams Cay 1

City: Roadtown                State: Tortola                Zip: British Virgin Islands

Account No.: Fairfield Sentry Limited Account No. 1-FN-070

Taxpayer I.D. Number (Social Security No.): _____

NOTE:   BEFORE COMPLETING THIS CLAIM FORM, BE SURE TO READ CAREFULLY THE ACCOMPANYING INSTRUCTION SHEET. A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT AND, TO RECEIVE THE FULL PROTECTION AFFORDED UNDER SIPA, ALL CUSTOMER CLAIMS MUST BE RECEIVED BY THE TRUSTEE ON OR BEFORE March 4, 2009. CLAIMS RECEIVED AFTER THAT DATE, BUT ON OR BEFORE July 2, 2009, WILL BE SUBJECT TO DELAYED PROCESSING AND TO BEING SATISFIED ON TERMS LESS FAVORABLE TO THE CLAIMANT. PLEASE SEND YOUR CLAIM FORM BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.   Claim for money balances as of **December 11, 2008**:

   a.   The Broker owes me a Credit (Cr.) Balance of          $ 36,676,205.92*

   b.   I owe the Broker a Debit (Dr.) Balance of              $      0

   c.   If you wish to repay the Debit Balance,
        please insert the amount you wish to repay and
        attach a check payable to "Irving H. Picard, Esq.,
        Trustee for Bernard L. Madoff Investment Securities LLC."
        If you wish to make a payment, **it must be enclosed**
        with this claim form.                                 $     N/A

   d.   If balance is zero, insert "None."                    $ 36,676,205.92

*See Addendum for details.

1

2.        Claim for securities as of **December 11, 2008**:

**PLEASE DO NOT CLAIM ANY SECURITIES YOU HAVE IN YOUR POSSESSION.**

|   |   | YES | NO |
|---|---|---|---|
| a. | The Broker owes me securities | *See | *See |
| b. | I owe the Broker securities | Addendum | Addendum |
| c. | If yes to either, please list below: |   |   |

| Date of Transaction (trade date) | Name of Security | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|
|   |   | The Broker Owes Me (Long) | I Owe the Broker (Short) |
|   |   |   |   |
|   |   |   |   |
|   |   |   |   |
|   |   |   |   |
|   |   |   |   |

**Proper documentation can speed the review, allowance and satisfaction of your claim and shorten the time required to deliver your securities and cash to you. Please enclose, if possible, copies of your last account statement and purchase or sale confirmations and checks which relate to the securities or cash you claim, and any other documentation, such as correspondence, which you believe will be of assistance in processing your claim. In particular, you should provide all documentation (such as cancelled checks, receipts from the Debtor, proof of wire transfers, etc.) of your deposits of cash or securities with the Debtor from as far back as you have documentation. You should also provide all documentation or information regarding any withdrawals you have ever made or payments received from the Debtor.**

Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement. If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.
**PLEASE CHECK THE APPROPRIATE ANSWER FOR ITEMS 3 THROUGH 9.**

502180406                                           2

NOTE:   IF "YES" IS MARKED ON ANY ITEM, PROVIDE A DETAILED EXPLANATION
ON A SIGNED ATTACHMENT.   IF SUFFICIENT DETAILS ARE NOT
PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR
COMPLETION.

|  | | YES | NO |
|---|---|---|---|
| 3. | Has there been any change in your account since December 11, 2008? If so, please explain. | | x |
| 4. | Are you or were you a director, officer, partner, shareholder, lender to or capital contributor of the broker? | | x |
| 5. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the broker? | | x |
| 6. | Are you related to, or do you have any business venture with, any of the persons specified in "4" above, or any employee or other person associated in any way with the broker? If so, give name(s) | | x |
| 7. | Is this claim being filed by or on behalf of a broker or dealer or a bank? If so, provide documentation with respect to each public customer on whose behalf you are claiming. | | x |
| 8. | Have you ever given any discretionary authority to any person to execute securities transactions with or through the broker on your behalf? Give names, addresses and phone numbers. | x | |
| 9. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? if so, give name of that broker. | | x |

Please list the full name and address of anyone assisting you in the preparation of this claim form: Seward & Kissel LLP
One Battery Park Plaza, New York, NY 10004

502180406                                    3

If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate your claim is an estimated claim.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF NOT MORE THAN $50,000 OR IMPRISONMENT FOR NOT MORE THAN FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____     Signature _____ LIQUIDATOR

Date _____     Signature _____

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

**This customer claim form must be completed and mailed promptly, together with supporting documentation, etc. to:**

Irving H. Picard, Esq.,
Trustee for Bernard L. Madoff Investment Securities LLC
Claims Processing Center
2100 McKinney Ave., Suite 800
Dallas, TX 75201

502180406

4

CITCO

*Citco Fund Services*
*(Europe) B.V.*

CITCO GLOBAL CUSTODY NV
CITCO GLOBAL SECURITIES SERVICES LTD
2600 CORK AIRPORT BUSINESS PARK
KINSALE ROAD
CORK
IRELAND

| | |
|---|---|
| Date | : Jun-22-2009 |
| Valuation date | : Nov-03-2008 |
| Fund Id | : 03302 |
| Holder Id | : 00342402 |
| Account Id | : 05063240 |
| Currency | : US DOLLAR |
| Email | : TRADECONFIRM@CITCO.COM |
| FAX Number | : +353214910335 |

Account: CITCO GLOBAL CUSTODY NV - REF 358106

## FAIRFIELD SENTRY LIMITED

### FUND NET ASSET VALUES

| | | Net Asset Value |
|---|---|---|
| Opening Price | Sep-30-2008 | 1,350.6040 |
| Closing Price | Oct-31-2008 | 1,349.7782 |

### ACCOUNT VALUE

| | NAV Date | voting shares | Net Asset Value | Change in Account |
|---|---|---|---|---|
| Opening Market Value of Account | Sep-30-2008 | 30,431.8190 | 1,350.6040 | 41,101,336.47 |
| Add: Additions | | 0.0000 | | 0.00 |
| Less: Subtractions | | -3,259.7948 | | -4,399,999.96 |
| Closing Market Value of Account | Oct-31-2008 | 27,172.0242 | 1,349.7782 | 36,676,205.92 |
| Increase or decrease in market value due to change in the price in the period | | | | 25,130.59 |

### SUMMARY OF ACTIVITY

| Date | Description | Contract Number | Gross Consideration | Commission /Fees /Tax | Net Consideration | Net Asset Value Per Unit | No. of voting shares | Balance |
|---|---|---|---|---|---|---|---|---|
| 10-29-2008 | Opening Balance of voting shares | | | | | | | 30,431.8190 |
| 11-01-2008 | Redemption | 69558902 | -4,399,999.96 | (0.00) | -4,399,999.96 | 1,349.7782 | -3,259.7948 | 27,172.0242 |
| 11-03-2008 | Closing Balance of voting shares | | | | | | | 27,172.0242 |
| Total Additions | | 0 | 0.00 | 0.00 | 0.00 | | 0.0000 | |
| Total Subtractions | | 1 | 4,399,999.96 | 0.00 | 4,399,999.96 | | -3,259.7948 | |

Note: All trade orders must be submitted in writing. In the event of non-receipt of confirmation within 5 days, please contact Citco immediately.

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610  E-mail: amscfsclientdesk@citco.com

*Citco Building*
*Telestone - Teleport*
*Naritaweg 165*
*1043 BW Amsterdam*
*The Netherlands*

*www.citco.com*

*Phone: (31-20) 5722100*
*Fax:   (31-20) 5722610*
*Chamber of Commerce 33205112*

Page 1 of 1

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

CLAIM NO. BVIHCV 2009/





IN THE MATTER OF THE INSOLVENCY ACT, 2003

AND

IN THE MATTER OF AN ORIGINATING APPLICATION (FORM R14A)

AND

IN THE MATTER OF FAIRFIELD LAMBDA LIMITED

---

ORDER

---

Before:      The Honourable Justice Bannister QC

Dated:       23rd April 2009

Entered:     23rd April 2009

**THIS APPLICATION FOR THE APPOINTMENT OF A LIQUIDATOR** coming on for hearing on 23rd April 2009

**AND UPON HEARING** Mark Forte, of counsel for the Company, and with him Richard Evans

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.    Mr Christopher Stride, of Krys & Associates (BVI) Ltd ("the Liquidator") be appointed as liquidator of Fairfield Lambda Limited ("the Company") pursuant to Part VI of the Insolvency Act 2003.

2.   That the Liquidator shall without prejudice to section 186 (1) of the
     Insolvency Act 2003 have all the powers contained in Schedule 2 of the
     Insolvency Act 2003, save for those in paragraphs 1 to 5 therein which shall
     not be exercised without sanction of the Court.

3.   That the Liquidator shall be at liberty to employ such agents including
     solicitors in the British Virgin Islands and elsewhere to assist him with his
     duties as Liquidator at such hourly rates as may be agreed from time to time
     by him and such agents.

4.   That the Liquidator be at liberty to charge for his services and also the
     services of his employees in accordance with the provisions of the Insolvency
     Act 2003.

5.   That the Liquidator shall provide to the Court every 6 months after his
     appointment on the progress of the liquidation of the Company.

6.   That the costs of this Application be costs in the liquidation.


                          BY THE COURT


                          _____
                   Deputy  REGISTRAR

THE EASTERN CARIBBEAN SUPREME
COURT
IN THE HIGH COURT OF JUSTICE
BRITISH VIRGIN ISLANDS
CLAIM NO. BVIHCV 2009/

IN THE MATTER OF THE INSOLVENCY
ACT, 2003
AND
IN THE MATTER OF AN ORIGINATING
APPLICATION (FORM R14A)
AND
IN THE MATTER OF FAIRFIELD
LAMBDA LIMITED

---

ORDER

---

**Conyers Dill & Pearman**
**Legal Practitioners for the Applicant**

**BROWN RUDNICK LLP**
David J. Molton
Martin S. Siegel
Seven Times Square
New York, New York 10036
Telephone: (212)-209-4800
Facsimile: (212)-209-4801

Attorneys for Christopher D. Stride
as Liquidator of and for Fairfield Lambda Limited

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | **FAIRFIELD LAMBDA LIMITED'S OBJECTION TO THE TRUSTEE'S DETERMINATIONS OF CLAIMS** |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

Fairfield Lambda Limited ("Lambda"), by its attorneys, Brown Rudnick LLP, hereby

objects to the four "Notice[s] of Trustee's Determination of Claim[s]" dated December 8, 2009

relating to SIPA customer claims designated by the Trustee as Claims Nos. 014661, 014761,

014762, 014795 and states as follows:

**Background Facts**

1.      Lambda is a business company organized under the laws of the British

Virgin Islands.  Lambda was incorporated on December 7, 1990.  Its registered office is

located in Road Town, Tortola, British Virgin Islands.  Lambda is a shareholder of

Fairfield Sentry Limited ("Sentry") -- a direct customer of Bernard L. Madoff Investment
Securities ("BLMIS").

2.      On December 11, 2008, the above-captioned liquidation proceeding was
commenced against BLMIS, pursuant to the Securities Investor Protection Act ("SIPA").
*See* Order, *Securities and Exchange Commission v. Madoff*, No. 08-10791 (S.D.N.Y.
Dec. 15, 2008) (ordering relief under SIPA and transferring proceeding to the United
States Bankruptcy Court for the Southern District of New York). Irving Picard was
appointed Trustee ("BLMIS Trustee"), charged with overseeing the liquidation of
BLMIS and processing customer claims for money pursuant to SIPA. *Id.*; 15 U.S.C.
78fff-1(a).

3.      On December 23, 2008, the Court issued an Order directing the BLMIS
Trustee to disseminate notice and claim forms to BLMIS customers and setting forth
claim-filing deadlines. Upon information and belief, the BLMIS Trustee disseminated
notice and claim forms to BLMIS's customers in accordance with the Court's Order.

4.      The December 23, 2008 Order further provided that, to the extent the
BLMIS Trustee disagrees with the amount set forth on a customer claim form, the
BLMIS Trustee "shall notify such claimant by mail of his determination that the claim is
disallowed, in whole or in part, and the reason therefor . . . ."

5.      On April 23, 2009, Mr. Christopher Stride, Managing Director of Krys &
Associates (BVI) Limited, was appointed as Liquidator of Lambda, pursuant to Part VI of
the Insolvency Act 2003, of the British Virgin Islands ("the Act").

6.      On July 21, 2009, Mr. Christopher Stride and Mr. Kenneth Krys,
Managing Director of Krys & Associates Cayman Limited were jointly appointed as

Liquidators of Sentry and Fairfield Sigma Limited ("Sigma") pursuant to the provisions of the Act.

7.    Sentry carried on business as an investment fund, largely operating as what has been called a "feeder fund" into BLMIS. Indeed, Sentry was the largest feeder fund into BLMIS with approximately $7.2 billion invested at the end of October 2008. In turn, Sigma and Lambda were feeder funds into Sentry. Sentry's shares are issued in U.S. dollars, Sigma's in Euros and Lambda's in Swiss Francs. As of October 2008, Sigma held approximately EUR 723 million of investments in Sentry and Lambda held approximately CHF 39 million of investments in Sentry.

8.    Shortly after the appointment of the Lambda Liquidator, Lambda filed four separate customer claim forms with the BLMIS Trustee because Lambda maintained four Madoff-related accounts denoted, BLMIS Account No. 1-FN012, BLMIS Account No.1-FN045, BLMIS Account No.1-FN069 and BLMIS Account No.1-FN070. Accordingly, as a shareholder of Sentry, Lambda submitted its claims based on the Net Asset Valuation ("NAV") of its shares in Sentry as of October 2008. The NAV of the four Lambda accounts totals $36,676,205.92

9.    Lambda submitted its customer claim forms under its name only and Lambda did not submit individual claims on behalf of its shareholders.

10.    By notices dated December 8, 2009, the BLMIS Trustee denied all four of Lambda's customer claims and noted in each denial notice as follows:

> Based on a review of available books and records of BLMIS by the Trustee's staff, you did not have an account with BLMIS. Because you did not have an account, you are not a customer of BLMIS under SIPA as that term is defined at 15 U.S.C. § 78*lll*(2). Accordingly, your claim for securities and/or a credit balance is DENIED.

3

## Grounds for Objection

**Lambda is a "customer" under SIPA**

11.    SIPA protects the assets of investors held by broker-dealers who become

insolvent.  As explained by the Supreme Court, Congress enacted the law to protect and

restore investor confidence in the capital markets.  *See Securities Investor Protection*

*Corp. v. Bourbor*, 421 U.S. 412, 415 (1975); *Securities Investor Protection Corp. v.*

*Bernard L. Madoff Investment Securities, LLC* ("Madoff"), 401 B.R. 629, 633-34 (Bankr.

S.D.N.Y. 2009).  SIPA created the Securities Investor Protection Corporation ("SIPC") to

administer SIPA.  15 U.S.C. §78ccc.  In a liquidation proceeding, the SIPC fund is

available to "customers" if the debtor's general estate is insufficient to pay "customer

claims."  According to SIPA, only "customers," a term of art defined in 15 U.S.C. §

78*lll*(2), will be protected.  A denial of "customer" status would relegate an investor to a

general unsecured creditor who can only seek recovery from the general estate.  *Madoff*,

401 B.R. at 634.

12.    SIPA defines "customers" as:

> Any person (including any person with whom the debtor deals as
> principal or agent) who has a claim on account of securities
> received, acquired, or held by the debtor in the ordinary course of
> its business as a broker or dealer from or for the securities
> accounts of such person for safekeeping, with a view to sale, to
> cover consummated sales, pursuant to purchases, as collateral
> security, or for purposes of effecting transfer.  The term
> "customer" includes any person who has a claim against the
> debtor arising out of sales or conversions of such securities, and
> any person who has deposited cash with the debtor for the
> purpose of purchasing securities . . . .

15 U.S.C. §78*lll*.

13.    Lambda contends it is a "customer" under the plain definition of

"customer" in SIPA.  Thus, it is entitled to receive the statutory maximum of $500,000 in

4

SIPC insurance for each of its four claims. *See* 15 U.S.C. § 78*lll*(2) ("The term

"customer" includes . . . any person who has deposited cash with the debtor for the

purpose of purchasing securities."). *Rosenman Family, LLC v. Picard*, 401 B.R. 629, 635

(Bankr. S.D.N.Y. 2009) ("the mere act of entrusting . . . cash to the debtor for the purpose

of effecting securities transactions . . . triggers customer status. . ."); *SEC v. Ambassador

Church Financial Devel. Group, Inc.*, 679 F. 2d 608, 614 (6th Cir. 1982); *In re Primeline

Sec. Corp.*, 295 F. 3d 1100, 1107 (10th Cir. 2002) ("SIPA does . . . protect claimants who

try to attempt to invest through their brokerage firm but are defrauded by dishonest

brokers . . . If a claimant intended to have the brokerage purchase securities on the

claimant's behalf and reasonably followed the broker's instructions regarding payment,

the claimant is a 'customer' under SIPA even if the brokerage or its agents

misappropriate the funds"); *Miller v. DeQuine (In re Stratton Oakmont, Inc.)*, 2003 WL

22698876 at *3 (Bankr. S.D.N.Y. Nov. 14, 2003) ("Stratton Oakmont's conversion of

Claimants' property makes them customers within the meaning of SIPA.").

14.     Any ambiguity in the definition of "customer," and there is none here,

should be construed in favor of Lambda because SIPA is remedial legislation.  As such, it

"should be construed broadly to effectuate its purposes." *Tcherepin v. Knight*, 389 U.S.

332, 336 (1967).

15.     Although Lambda asserts it falls within section 78*lll* under the plain

reading of the statute, the BLMIS Trustee has taken the position that only direct investors

with BLMIS are "customers" under SIPA.  The reality in this case is, however, that

Madoff perpetrated the largest ponzi scheme in the history of America.  Feeder funds

attracted new investors for the disclosed purpose of investing in BLMIS, and there is no

5

substantive difference under SIPA's remedies between those who gave the Debtor, BLMIS, their funds directly and Lambda, who invested in a feeder fund which then invested in BLMIS.

16.    Whether a SIPA claimant is a "customer" under SIPA should not depend upon whom a customer handed its money to, or even where the funds were initially deposited. *See In re Old Naples Securities, Inc.*, 223 F.3d 1296, 1302-1303 (11th Cir. 2000). The issue should instead depend upon whether there was "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation." *Id.* (internal quotations omitted). Here, Lambda can show that there was "actual receipt, acquisition or possession" of its property by the Debtor.

17.    The securities market has changed and many securities transactions are held in "street names" or via mere book-entries. The fact that there is no direct statement from the Debtor to Lambda is of no significance under SIPA. Indeed, complicated financial transactions like repos and reverse repos have been given "customer" status. *See In re Beville, Bresser & Schulman Asset Management Corp.*, 67 B.R. 557 (Bankr. D. N.J. 1986). The issue here is less complicated and, in fact, one of equity. Lambda has suffered financial losses which have had devastating impacts upon its shareholders. Such losses are no less real merely because Lambda did not directly send the Debtor its property. As such, Lambda should be determined to be a BLMIS customer and entitled to payment from the SIPC fund.

6

**Reservation of Rights & Joinder of Objections**

18.     Lambda reserves the right to revise, supplement, or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of Lambda's right to object on any additional grounds.

19.     Lambda reserves all rights set forth in Rule 9014, including, without limitation, rights of discovery. *See* Fed. R. Bankr. P. 9014.

20.     Lambda reserves all objections as to the competence, relevance, materiality, privilege, or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

21.     Lambda incorporates by reference all reservations of rights set forth in the Lambda customer claims.

22.     To the extent applicable, Lambda joins in the Objections of other claimants in the same or similar position and reserves its right to respond to the BLMIS Trustee and to the extent it deems necessary, to file supplemental memoranda of law.

**Relief Requested**

23.     For the reasons stated, the Court should find Lambda within the definition of 15 U.S.C. § 78*lll*(2).

Dated: January 7, 2010              Respectfully submitted,
      New York, New York

                                    **BROWN RUDNICK LLP**


                                    By:  /s/ David J. Molton, Esq. _____
                                        David J. Molton
                                        Martin S. Siegel
                                        Seven Times Square
                                        New York, NY 10036
                                        Telephone:  (212) 209-4800
                                        Facsimile:  (212) 209-4801

                                    *Attorneys for Christopher D. Stride as*
                                    *Liquidator of and for Fairfield Lambda Limited*

# EXHIBIT E
# FORM OF JUDGMENTS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) SIPA Liquidation |
| Plaintiff-Applicant, | |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-01239 (BRL) |
| Plaintiff, | |
| v. | |
| FAIRFIELD SENTRY LIMITED, GREENWICH SENTRY, L.P., GREENWICH SENTRY PARTNERS, L.P., FAIRFIELD SIGMA LIMITED, FAIRFIELD LAMBDA LIMITED, CHESTER GLOBAL STRATEGY FUND LIMITED, CHESTER GLOBAL STRATEGY FUND, IRONGATE GLOBAL STRATEGY FUND LIMITED, FAIRFIELD GREENWICH FUND (LUXEMBOURG), FAIRFIELD INVESTMENT FUND LIMITED, FAIRFIELD INVESTORS (EURO) LIMITED, FAIRFIELD INVESTORS (SWISS FRANC) LIMITED, FAIRFIELD INVESTORS (YEN) LIMITED, FAIRFIELD INVESTMENT TRUST, FIF ADVANCED, LTD., SENTRY SELECT LIMITED, STABLE FUND, FAIRFIELD | |

GREENWICH LIMITED, FAIRFIELD
GREENWICH (BERMUDA), LTD.,
FAIRFIELD GREENWICH ADVISORS
LLC, FAIRFIELD GREENWICH GP, LLC,
FAIRFIELD GREENWICH PARTNERS,
LLC, FAIRFIELD HEATHCLIFF CAPITAL
LLC, FAIRFIELD INTERNATIONAL
MANAGERS, INC., FAIRFIELD
GREENWICH (UK) LIMITED,
GREENWICH BERMUDA LIMITED,
CHESTER MANAGEMENT CAYMAN
LIMITED, WALTER NOEL, JEFFREY
TUCKER, ANDRÉS PIEDRAHITA, MARK
MCKEEFRY, DANIEL LIPTON, AMIT
VIJAYVERGIYA, GORDON MCKENZIE,
RICHARD LANDSBERGER, PHILIP
TOUB, CHARLES MURPHY, ROBERT
BLUM, ANDREW SMITH, HAROLD
GREISMAN, GREGORY BOWES,
CORINA NOEL PIEDRAHITA, LOURDES
BARRENECHE, CORNELIS BOELE,
SANTIAGO REYES, JACQUELINE
HARARY

Defendants.

## CONSENT JUDGMENT[1]

**WHEREAS**, Irving H. Picard (the "Trustee") is the trustee for the substantively

consolidated liquidations of the business of Bernard L. Madoff Investment Securities

LLC ("BLMIS") and Bernard L. Madoff ("Madoff") under the Securities Investor

Protection Act ("SIPA") §§ 78aaa *et seq.*, currently pending in the United States

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") as

Case No. 08-01789 (BRL) (the "SIPA Proceeding"); and

---

[1]   All capitalized terms not defined herein shall have the meaning ascribed to them in the
Agreement, dated May 9, 2011, between the Trustee (as defined herein) on the one hand, and the
Liquidators (as defined herein), solely in their respective capacities as the duly appointed foreign
representatives for and liquidators of Fairfield Sentry Limited, Fairfield Sigma Limited, and
Fairfield Lambda Limited, on the other hand.

WHEREAS, the Trustee is duly qualified to serve and act on behalf of the estates of BLMIS and Madoff (together, the "BLMIS Estate"); and

WHEREAS, Kenneth Krys and Joanna Lau (together with their predecessors, the "Liquidators" or "Joint Liquidators") are the liquidators and foreign representatives of the winding up proceedings (the "BVI Proceedings") of Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma") and Fairfield Lambda Limited ("Fairfield Lambda" and, together with Fairfield Sentry and Fairfield Sigma, the "Fairfield Funds"), pending under the British Virgin Islands ("BVI") Insolvency Act, 2003, before the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands (the "BVI Court"); and

WHEREAS, on July 22, 2010, the Bankruptcy Court entered an Order granting the Liquidators' petitions for recognition of the BVI Proceedings as foreign main proceedings and for related relief under Chapter 15 of the Bankruptcy Code [Case No. 10-13164, Docket Nos. 47, 48, and 51]; and

WHEREAS, the Liquidators are duly qualified to serve and act on behalf of the Fairfield Funds and their respective estates; and

WHEREAS, Fairfield Sentry is a British Virgin Islands ("BVI") company that, at all times relevant hereto, was a customer of BLMIS and maintained accounts with BLMIS (the "Sentry BLMIS Accounts"); and

WHEREAS, Fairfield Sigma and Fairfield Lambda are BVI companies that at all relevant times, had as their respective sole purposes to invest funds in Fairfield Sentry; and

WHEREAS, according to the Trustee, Fairfield Sentry withdrew One Billion,

3

One Hundred Thirty Million Dollars ($1,130,000,000) from the Sentry BLMIS Accounts within ninety (90) days before the date on which the SIPA Proceedings commenced ("90 Day Withdrawals") and an additional One Billion, Nine Hundred Twenty-Four Million Dollars ($1,924,000,000) from the Fairfield Sentry Accounts, during the period more than ninety (90) days, but less than six (6) years, before the date on which the SIPA Proceedings commenced (the "Pre 90-Day Withdrawals" and, together with the 90 Day Withdrawals, the "Withdrawals"); and

WHEREAS, the above-captioned adversary proceeding (the "Adversary Proceeding") was commenced by the Trustee in the Bankruptcy Court on or about May 18, 2009 [Docket No. 1]; and

WHEREAS, pursuant to Counts Two, Five, Eight, Eleven, Fourteen, Seventeen, Twenty, and Twenty-Three of the amended complaint filed in the Adversary Proceeding on or about July 20, 2010 [Docket No. 23] (the "Amended Complaint"), the Trustee asserts, pursuant to 11 U.S.C. §§ 544, 547, 548, 550, SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281), that the Withdrawals are avoidable and that Fairfield Sentry is liable to the BLMIS Estate for amount of the Withdrawals, which total Three Billion, Fifty-Four Million Dollars ($3,054,000,000) (the "Sentry Avoiding Power Claims"); and

WHEREAS, the Trustee asserts, pursuant to 11 U.S.C. §§ 544, 547, 548, 550, SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281), that Fairfield Sigma is liable to the BLIMS Estate for the amount of the Withdrawals that Fairfield Sentry transferred to Fairfield Sigma, in the

4

approximate amount of Seven Hundred Fifty-Two Million, Three Hundred Thousand Dollars ($752,300,000) (the "Sigma Avoiding Power Claims"); and

WHEREAS, the Trustee asserts, pursuant to 11 U.S.C. §§ 544, 547, 548, 550, SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281), that Fairfield Lambda is liable to the BLIMS Estate for the amount of the Withdrawals that Fairfield Sentry transferred to Fairfield Lambda, in the approximate amount of Fifty-Two Million, Nine Hundred Thousand Dollars ($52,900,000) (the "Lambda Avoiding Power Claims" and, together with the Sentry Avoiding Power Claims and the Sigma Avoiding Power Claims, the "Fairfield Avoiding Power Claims"); and

WHEREAS, on or about May 9, 2011, the Trustee and the Liquidators entered into a settlement agreement (the "Agreement"), in order to settle certain matters in controversy among them and the respective estates they represent, including the Fairfield Avoiding Power Claims, upon the terms as set forth therein; and

WHEREAS, pursuant to the terms of the Agreement, the Liquidators, on behalf of Fairfield Sentry, have consented to the entry of judgment against Fairfield Sentry with respect to the Sentry Avoiding Power Claims as set forth below.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, ORDERED AND ADJUDGED THAT,** that judgment be entered as follows:

1. Judgment (the "Consent Judgment") is hereby entered in favor the Trustee and against Fairfield Sentry on the Sentry Avoiding Power Claims in the amount of Three Billion, Fifty-Four Million Dollars ($3,054,000,000) (the "Judgment Amount").

2.    The Consent Judgment is defined and limited as set forth herein and by the terms of the Agreement.  Notwithstanding anything to the contrary in this Consent Judgment, (i) entry, enforcement and/or execution of this Consent Judgment, (ii) the provisions of this Consent Judgment and (iii) the satisfaction of the Judgment Amount as against the Liquidators, Fairfield Sentry, Fairfield Sigma and Fairfield Lambda are governed entirely and exclusively by the terms of the Agreement.  In the event of any conflict between this Consent Judgment and the Agreement, the terms of the Agreement shall govern.

3.    Interest shall not accrue on the Judgment Amount.

4.    This Consent Judgment is not assignable.

5.    The Bankruptcy Court shall have exclusive jurisdiction over any action to enforce this Consent Judgment, or any provision thereof, subject in all cases to the terms of the Agreement.

6.    The signatories to this Consent Judgment represent that they are expressly authorized to bind the respective parties to the terms hereof and herby represent that the parties have read, understand, agree and consent to the foregoing Consent Judgment and all of the terms and conditions set forth herein.

7.    The undersigned represent that the respective parties have obtained the advice of counsel and are consenting and agreeing to all of the terms of this Consent Judgment freely and voluntarily.

8.    The Clerk of Court shall enter judgment as set forth herein.

**AGREED AND CONSENTED TO:**

Fairfield Sentry Limited, a British Virgin Islands corporation in liquidation

_____

Kenneth Krys, as Joint Liquidator for
and on behalf of Fairfield Sentry Limited

_____

Joanna Lau Krys, as Joint Liquidator for
and on behalf of Fairfield Sentry Limited

**AGREED AND CONSENTED TO, FOR FORM :**

For Defendant Fairfield Sentry Limited

For Plaintiff Irving H. Picard, Trustee for
the Liquidation of Bernard L. Madoff
Investment Securities LLC

_____

David J. Molton, Esq.
Brown Rudnick  LLP
Seven Times Square
New York, NY 10036
F:  (212) 209-4801
dmolton@brownrudnick.com

_____

Mark Kornfeld, Esq.
Baker & Hostetler LLP
45 Rockefeller
New York, NY 10111
F:  (212) 589-4201
mkornfeld@bakerlaw.com

SO ORDERED

This __day of _____

_____

HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY
JUDGE

**JUDGEMENT IS HEREBY ENTERED** in accordance with the terms of the foregoing:

_____
Clerk of the Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-01239 (BRL) |
| Plaintiff, | |
| v. | |
| FAIRFIELD SENTRY LIMITED, GREENWICH SENTRY, L.P., GREENWICH SENTRY PARTNERS, L.P., FAIRFIELD SIGMA LIMITED, FAIRFIELD LAMBDA LIMITED, CHESTER GLOBAL STRATEGY FUND LIMITED, CHESTER GLOBAL STRATEGY FUND, IRONGATE GLOBAL STRATEGY FUND LIMITED, FAIRFIELD GREENWICH FUND (LUXEMBOURG), FAIRFIELD INVESTMENT FUND LIMITED, FAIRFIELD INVESTORS (EURO) LIMITED, FAIRFIELD INVESTORS (SWISS FRANC) LIMITED, FAIRFIELD INVESTORS (YEN) LIMITED, FAIRFIELD INVESTMENT TRUST, FIF ADVANCED, LTD., SENTRY SELECT LIMITED, STABLE FUND, FAIRFIELD | |

GREENWICH LIMITED, FAIRFIELD
GREENWICH (BERMUDA), LTD.,
FAIRFIELD GREENWICH ADVISORS
LLC, FAIRFIELD GREENWICH GP, LLC,
FAIRFIELD GREENWICH PARTNERS,
LLC, FAIRFIELD HEATHCLIFF CAPITAL
LLC, FAIRFIELD INTERNATIONAL
MANAGERS, INC., FAIRFIELD
GREENWICH (UK) LIMITED,
GREENWICH BERMUDA LIMITED,
CHESTER MANAGEMENT CAYMAN
LIMITED, WALTER NOEL, JEFFREY
TUCKER, ANDRÉS PIEDRAHITA, MARK
MCKEEFRY, DANIEL LIPTON, AMIT
VIJAYVERGIYA, GORDON MCKENZIE,
RICHARD LANDSBERGER, PHILIP
TOUB, CHARLES MURPHY, ROBERT
BLUM, ANDREW SMITH, HAROLD
GREISMAN, GREGORY BOWES,
CORINA NOEL PIEDRAHITA, LOURDES
BARRENECHE, CORNELIS BOELE,
SANTIAGO REYES, JACQUELINE
HARARY

                    Defendants.

## CONSENT JUDGMENT[1]

**WHEREAS**, Irving H. Picard (the "<u>Trustee</u>") is the trustee for the substantively

consolidated liquidations of the business of Bernard L. Madoff Investment Securities

LLC ("<u>BLMIS</u>") and Bernard L. Madoff ("<u>Madoff</u>") under the Securities Investor

Protection Act ("<u>SIPA</u>") §§ 78aaa *et seq.*, currently pending in the United States

Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") as

Case No. 08-01789 (BRL) (the "<u>SIPA Proceeding</u>"); and

---

[1]     All capitalized terms not defined herein shall have the meaning ascribed to them in the Agreement, dated May 9, 2011, between the Trustee (as defined herein) on the one hand, and the Liquidators (as defined herein), solely in their respective capacities as the duly appointed foreign representatives for and liquidators of Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited, on the other hand.

WHEREAS, the Trustee is duly qualified to serve and act on behalf of the estates of BLMIS and Madoff (together, the "BLMIS Estate"); and

WHEREAS, Kenneth Krys and Joanna Lau (together with their predecessors, the "Liquidators" or "Joint Liquidators") are the liquidators and foreign representatives of the winding up proceedings (the "BVI Proceedings") of Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma") and Fairfield Lambda Limited ("Fairfield Lambda" and, together with Fairfield Sentry and Fairfield Sigma, the "Fairfield Funds"), pending under the British Virgin Islands ("BVI") Insolvency Act, 2003, before the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands (the "BVI Court"); and

WHEREAS, on July 22, 2010, the Bankruptcy Court entered an Order granting the Liquidators' petitions for recognition of the BVI Proceedings as foreign main proceedings and for related relief under Chapter 15 of the Bankruptcy Code [Case No. 10-13164, Docket Nos. 47, 48, and 51]; and

WHEREAS, the Liquidators are duly qualified to serve and act on behalf of the Fairfield Funds and their respective estates; and

WHEREAS, Fairfield Sentry is a British Virgin Islands ("BVI") company that, at all times relevant hereto, was a customer of BLMIS and maintained accounts with BLMIS (the "Sentry BLMIS Accounts"); and

WHEREAS, Fairfield Sigma and Fairfield Lambda are BVI companies that at all relevant times, had as their respective sole purposes to invest funds in Fairfield Sentry; and

WHEREAS, according to the Trustee, Fairfield Sentry withdrew One Billion,

One Hundred Thirty Million Dollars ($1,130,000,000) from the Sentry BLMIS Accounts within ninety (90) days before the date on which the SIPA Proceedings commenced ("90 Day Withdrawals") and an additional One Billion, Nine Hundred Twenty-Four Million Dollars ($1,924,000,000) from the Fairfield Sentry Accounts, during the period more than ninety (90) days, but less than six (6) years, before the date on which the SIPA Proceedings commenced (the "Pre 90-Day Withdrawals" and, together with the 90 Day Withdrawals, the "Withdrawals"); and

WHEREAS, the above-captioned adversary proceeding (the "Adversary Proceeding") was commenced by the Trustee in the Bankruptcy Court on or about May 18, 2009 [Docket No. 1]; and

WHEREAS, pursuant to Counts Two, Five, Eight, Eleven, Fourteen, Seventeen, Twenty, and Twenty-Three of the amended complaint filed in the Adversary Proceeding on or about July 20, 2010 [Docket No. 23] (the "Amended Complaint"), the Trustee asserts, pursuant to 11 U.S.C. §§ 544, 547, 548, 550, SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281), that the Withdrawals are avoidable and that Fairfield Sentry is liable to the BLMIS Estate for amount of the Withdrawals, which total Three Billion, Fifty-Four Million Dollars ($3,054,000,000) (the "Sentry Avoiding Power Claims"); and

WHEREAS, the Trustee asserts, pursuant to 11 U.S.C. §§ 544, 547, 548, 550, SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281), that Fairfield Sigma is liable to the BLIMS Estate for the amount of the Withdrawals that Fairfield Sentry transferred to Fairfield Sigma, in the

4

approximate amount of Seven Hundred Fifty-Two Million, Three Hundred Thousand

Dollars ($752,300,000) (the "Sigma Avoiding Power Claims"); and

WHEREAS, the Trustee asserts, pursuant to 11 U.S.C. §§ 544, 547, 548, 550,

SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor

and Creditor Law §§ 270-281), that Fairfield Lambda is liable to the BLIMS Estate for

the amount of the Withdrawals that Fairfield Sentry transferred to Fairfield Lambda, in

the approximate amount of Fifty-Two Million, Nine Hundred Thousand Dollars

($52,900,000) (the "Lambda Avoiding Power Claims" and, together with the Sentry

Avoiding Power Claims and the Sigma Avoiding Power Claims, the "Fairfield Avoiding

Power Claims"); and

WHEREAS, on or about May 9, 2011, the Trustee and the Liquidators entered

into a settlement agreement (the "Agreement"), in order to settle  certain matters in

controversy among them and the respective estates they represent, including the Fairfield

Avoiding Power Claims, upon the terms as set forth therein; and

WHEREAS, pursuant to the terms of the Agreement, the Liquidators, on behalf

of Fairfield Sigma, have consented to the entry of judgment against Fairfield Sigma with

respect to the Sigma Avoiding Power Claims as set forth below.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,**

**ORDERED AND ADJUDGED THAT,** that judgment be entered as follows:

1.      Judgment (the "Consent Judgment") is hereby entered in favor the Trustee

and against Fairfield Sigma on the Sigma Avoiding Power Claims in the amount of Seven

Hundred Fifty-Two Million, Three Hundred Thousand Dollars ($752,300,000)  (the

"Judgment Amount").

2.    The Consent Judgment is defined and limited as set forth herein and by the terms of the Agreement.   Notwithstanding anything to the contrary in this Consent Judgment, (i) entry, enforcement and/or execution of this Consent Judgment, (ii) the provisions of this Consent Judgment and (iii) the satisfaction of the Judgment Amount as against the Liquidators, Fairfield Sentry, Fairfield Sigma and Fairfield Lambda are governed entirely and exclusively by the terms of the Agreement.   In the event of any conflict between this Consent Judgment and the Agreement, the terms of the Agreement shall govern.

3.    Interest shall not accrue on the Judgment Amount.

4.    This Consent Judgment is not assignable.

5.    The Bankruptcy Court shall have exclusive jurisdiction over any action to enforce this Consent Judgment, or any provision thereof, subject in all cases to the terms of the Agreement.

6.    The signatories to this Consent Judgment represent that they are expressly authorized to bind the respective parties to the terms hereof and herby represent that the parties have read, understand, agree and consent to the foregoing Consent Judgment and all of the terms and conditions set forth herein.

7.    The undersigned represent that the respective parties have obtained the advice of counsel and are consenting and agreeing to all of the terms of this Consent Judgment freely and voluntarily.

8.    The Clerk of Court shall enter judgment as set forth herein.

**AGREED AND CONSENTED TO:**

Fairfield Sigma Limited, a British Virgin Islands corporation in liquidation

_____
Kenneth Krys, as Joint Liquidator for
and on behalf of Fairfield Sigma Limited

_____
Joanna Lau Krys, as Joint Liquidator for
and on behalf of Fairfield Sigma Limited

**AGREED AND CONSENTED TO, FOR FORM :**

For Defendant Fairfield Sigma Limited

For Plaintiff Irving H. Picard, Trustee for
the Liquidation of Bernard L. Madoff
Investment Securities LLC

_____
David J. Molton, Esq.
Brown Rudnick  LLP
Seven Times Square
New York, NY 10036
F:  (212) 209-4801
dmolton@brownrudnick.com

_____
Mark Kornfeld, Esq.
Baker & Hostetler LLP
45 Rockefeller
New York, NY 10111
F:  (212) 589-4201
mkornfeld@bakerlaw.com

SO ORDERED

This __ day of _____

_____
HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY
JUDGE

**JUDGEMENT IS HEREBY ENTERED** in accordance with the terms of the foregoing:

_____

Clerk of the Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-01239 (BRL) |
| Plaintiff, | |
| v. | |
| FAIRFIELD SENTRY LIMITED, GREENWICH SENTRY, L.P., GREENWICH SENTRY PARTNERS, L.P., FAIRFIELD SIGMA LIMITED, FAIRFIELD LAMBDA LIMITED, CHESTER GLOBAL STRATEGY FUND LIMITED, CHESTER GLOBAL STRATEGY FUND, IRONGATE GLOBAL STRATEGY FUND LIMITED, FAIRFIELD GREENWICH FUND (LUXEMBOURG), FAIRFIELD INVESTMENT FUND LIMITED, FAIRFIELD INVESTORS (EURO) LIMITED, FAIRFIELD INVESTORS (SWISS FRANC) LIMITED, FAIRFIELD INVESTORS (YEN) LIMITED, FAIRFIELD INVESTMENT TRUST, FIF ADVANCED, LTD., SENTRY SELECT LIMITED, STABLE FUND, FAIRFIELD | |

GREENWICH LIMITED, FAIRFIELD
GREENWICH (BERMUDA), LTD.,
FAIRFIELD GREENWICH ADVISORS
LLC, FAIRFIELD GREENWICH GP, LLC,
FAIRFIELD GREENWICH PARTNERS,
LLC, FAIRFIELD HEATHCLIFF CAPITAL
LLC, FAIRFIELD INTERNATIONAL
MANAGERS, INC., FAIRFIELD
GREENWICH (UK) LIMITED,
GREENWICH BERMUDA LIMITED,
CHESTER MANAGEMENT CAYMAN
LIMITED, WALTER NOEL, JEFFREY
TUCKER, ANDRÉS PIEDRAHITA, MARK
MCKEEFRY, DANIEL LIPTON, AMIT
VIJAYVERGIYA, GORDON MCKENZIE,
RICHARD LANDSBERGER, PHILIP
TOUB, CHARLES MURPHY, ROBERT
BLUM, ANDREW SMITH, HAROLD
GREISMAN, GREGORY BOWES,
CORINA NOEL PIEDRAHITA, LOURDES
BARRENECHE, CORNELIS BOELE,
SANTIAGO REYES, JACQUELINE
HARARY

                    Defendants.

## CONSENT JUDGMENT[1]

**WHEREAS**, Irving H. Picard (the "Trustee") is the trustee for the substantively

consolidated liquidations of the business of Bernard L. Madoff Investment Securities

LLC ("BLMIS") and Bernard L. Madoff ("Madoff") under the Securities Investor

Protection Act ("SIPA") §§ 78aaa *et seq.*, currently pending in the United States

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") as

Case No. 08-01789 (BRL) (the "SIPA Proceeding"); and

---

[1]     All capitalized terms not defined herein shall have the meaning ascribed to them in the
Agreement, dated May 9, 2011, between the Trustee (as defined herein) on the one hand, and the
Liquidators (as defined herein), solely in their respective capacities as the duly appointed foreign
representatives for and liquidators of Fairfield Sentry Limited, Fairfield Sigma Limited, and
Fairfield Lambda Limited, on the other hand.

WHEREAS, the Trustee is duly qualified to serve and act on behalf of the estates of BLMIS and Madoff (together, the "BLMIS Estate"); and

WHEREAS, Kenneth Krys and Joanna Lau (together with their predecessors, the "Liquidators" or "Joint Liquidators") are the liquidators and foreign representatives of the winding up proceedings (the "BVI Proceedings") of Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma") and Fairfield Lambda Limited ("Fairfield Lambda" and, together with Fairfield Sentry and Fairfield Sigma, the "Fairfield Funds"), pending under the British Virgin Islands ("BVI") Insolvency Act, 2003, before the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands (the "BVI Court"); and

WHEREAS, on July 22, 2010, the Bankruptcy Court entered an Order granting the Liquidators' petitions for recognition of the BVI Proceedings as foreign main proceedings and for related relief under Chapter 15 of the Bankruptcy Code [Case No. 10-13164, Docket Nos. 47, 48, and 51]; and

WHEREAS, the Liquidators are duly qualified to serve and act on behalf of the Fairfield Funds and their respective estates; and

WHEREAS, Fairfield Sentry is a British Virgin Islands ("BVI") company that, at all times relevant hereto, was a customer of BLMIS and maintained accounts with BLMIS (the "Sentry BLMIS Accounts"); and

WHEREAS, Fairfield Sigma and Fairfield Lambda are BVI companies that at all relevant times, had as their respective sole purposes to invest funds in Fairfield Sentry; and

WHEREAS, according to the Trustee, Fairfield Sentry withdrew One Billion,

One Hundred Thirty Million Dollars ($1,130,000,000) from the Sentry BLMIS Accounts within ninety (90) days before the date on which the SIPA Proceedings commenced ("90 Day Withdrawals") and an additional One Billion, Nine Hundred Twenty-Four Million Dollars ($1,924,000,000) from the Fairfield Sentry Accounts, during the period more than ninety (90) days, but less than six (6) years, before the date on which the SIPA Proceedings commenced (the "Pre 90-Day Withdrawals" and, together with the 90 Day Withdrawals, the "Withdrawals"); and

WHEREAS, the above-captioned adversary proceeding (the "Adversary Proceeding") was commenced by the Trustee in the Bankruptcy Court on or about May 18, 2009 [Docket No. 1]; and

WHEREAS, pursuant to Counts Two, Five, Eight, Eleven, Fourteen, Seventeen, Twenty, and Twenty-Three of the amended complaint filed in the Adversary Proceeding on or about July 20, 2010 [Docket No. 23] (the "Amended Complaint"), the Trustee asserts, pursuant to 11 U.S.C. §§ 544, 547, 548, 550, SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281), that the Withdrawals are avoidable and that Fairfield Sentry is liable to the BLMIS Estate for amount of the Withdrawals, which total Three Billion, Fifty-Four Million Dollars ($3,054,000,000) (the "Sentry Avoiding Power Claims"); and

WHEREAS, the Trustee asserts, pursuant to 11 U.S.C. §§ 544, 547, 548, 550, SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281), that Fairfield Sigma is liable to the BLIMS Estate for the amount of the Withdrawals that Fairfield Sentry transferred to Fairfield Sigma, in the

approximate amount of Seven Hundred Fifty-Two Million, Three Hundred Thousand Dollars ($752,300,000) (the "Sigma Avoiding Power Claims"); and

WHEREAS, the Trustee asserts, pursuant to 11 U.S.C. §§ 544, 547, 548, 550, SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281), that Fairfield Lambda is liable to the BLIMS Estate for the amount of the Withdrawals that Fairfield Sentry transferred to Fairfield Lambda, in the approximate amount of Fifty-Two Million, Nine Hundred Thousand Dollars ($52,900,000) (the "Lambda Avoiding Power Claims" and, together with the Sentry Avoiding Power Claims and the Sigma Avoiding Power Claims, the "Fairfield Avoiding Power Claims"); and

WHEREAS, on or about May 9, 2011, the Trustee and the Liquidators entered into a settlement agreement (the "Agreement"), in order to settle  certain matters in controversy among them and the respective estates they represent, including the Fairfield Avoiding Power Claims, upon the terms as set forth therein; and

WHEREAS, pursuant to the terms of the Agreement, the Liquidators, on behalf of Fairfield Lambda, have consented to the entry of judgment against Fairfield Lambda with respect to the Lambda Avoiding Power Claims as set forth below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, ORDERED AND ADJUDGED THAT, that judgment be entered as follows:

1.     Judgment (the "Consent Judgment") is hereby entered in favor the Trustee and against Fairfield Lambda on the Lambda Avoiding Power Claims in the amount of Fifty-Two Million, Nine Hundred Thousand Dollars ($52,900,000) (the "Judgment Amount").

2.      The Consent Judgment is defined and limited as set forth herein and by the terms of the Agreement.  Notwithstanding anything to the contrary in this Consent Judgment, (i) entry, enforcement and/or execution of this Consent Judgment, (ii) the provisions of this Consent Judgment and (iii) the satisfaction of the Judgment Amount as against the Liquidators, Fairfield Sentry, Fairfield Sigma and Fairfield Lambda are governed entirely and exclusively by the terms of the Agreement.  In the event of any conflict between this Consent Judgment and the Agreement, the terms of the Agreement shall govern.

3.      Interest shall not accrue on the Judgment Amount.

4.      This Consent Judgment is not assignable.

5.      The Bankruptcy Court shall have exclusive jurisdiction over any action to enforce this Consent Judgment, or any provision thereof, subject in all cases to the terms of the Agreement.

6.      The signatories to this Consent Judgment represent that they are expressly authorized to bind the respective parties to the terms hereof and herby represent that the parties have read, understand, agree and consent to the foregoing Consent Judgment and all of the terms and conditions set forth herein.

7.      The undersigned represent that the respective parties have obtained the advice of counsel and are consenting and agreeing to all of the terms of this Consent Judgment freely and voluntarily.

8.      The Clerk of Court shall enter judgment as set forth herein.

**AGREED AND CONSENTED TO:**

Fairfield Lambda Limited, a British Virgin Islands corporation in liquidation


_____
Kenneth Krys, as Joint Liquidator for
and on behalf of Fairfield Lambda Limited

_____
Joanna Lau Krys, as Joint Liquidator for
and on behalf of Fairfield Lambda Limited


**AGREED AND CONSENTED TO, FOR FORM :**

For Defendant Fairfield Lambda Limited

For Plaintiff Irving H. Picard, Trustee for
the Liquidation of Bernard L. Madoff
Investment Securities LLC


_____
David J. Molton, Esq.
Brown Rudnick  LLP
Seven Times Square
New York, NY 10036
F:  (212) 209-4801
dmolton@brownrudnick.com

_____
Mark Kornfeld, Esq.
Baker & Hostetler LLP
45 Rockefeller
New York, NY 10111
F:  (212) 589-4201
mkornfeld@bakerlaw.com



SO ORDERED

This __ day of _____


_____
HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY
JUDGE

**JUDGEMENT IS HEREBY ENTERED** in accordance with the terms of the foregoing:

_____

Clerk of the Court

**EXHIBIT F**
**ESCROW AGREEMENT**

# SUPPLEMENTAL ESCROW AND CONSENT AGREEMENT

This SUPPLEMENTAL ESCROW AND CONSENT AGREEMENT (the "2010 Agreement") is dated as of the 8th day of June, 2010, by and among Christopher Stride and Kenneth Krys, c/o Krys & Associates (BVI) Limited, P.O. Box 4025, Clarence Thomas Building, Pasea Estate, Road Town, Tortola, British Virgin Islands, solely in their capacities as court-appointed liquidators of Fairfield Sentry Limited and Fairfield Sigma Limited, and not personally (the "Liquidators"), and Irving H. Picard, c/o Baker & Hostetler LLP, 45 Rockefeller Plaza, 11th Floor, New York, NY 10111, solely in his capacity as court-appointed trustee for the substantively consolidated SIPA (Securities Investor Protection Act) liquidation proceedings for Bernard L. Madoff Investment Securities LLC, and not personally (the "Trustee").

## R E C I T A L S

WHEREAS, the Liquidators were appointed jointly as Liquidators of Fairfield Sentry Limited (In Liquidation), a British Virgin Islands Business Company incorporated on 30 October 1990, with registered number 36356 ("Sentry"), and jointly as Liquidators of Fairfield Sigma Limited (In Liquidation), a British Virgin Islands Company incorporated on 20 November 1990 with registered number 37031 ("Sigma"), by orders dated 21 July 2009 of the Commercial Division of the Eastern Caribbean Supreme Court, sitting in the jurisdiction of the British Virgin Islands (the "BVI Court"). The Liquidators have those powers and capacity derived from such orders of the BVI Court, including, but not limited to, having custody and control of all the assets of Sentry and Sigma, which assets include certain funds currently held in (or hereafter deposited to) one or more accounts in the name of Sentry, Sigma and/or their affiliates at (i) Citco Bank

Nederland, N.V., through its Dublin branch (or affiliates of such institution) in Dublin, Ireland (all such funds, whether now or hereafter deposited into such accounts, the "Citco Deposited Sums"), and (ii) at Clydesdale Bank in London (all such funds, whether now or hereafter deposited into such accounts, the "Clydesdale Deposited Sums", and together with the Citco Deposited Sums, the "Deposited Sums") in accordance with an Escrow and Consent Agreement dated 24 September 2009 (the "2009 Agreement") by and between the Liquidators, the Trustee and Brown Rudnick LLP, as escrow agent (the "Escrow Agent");

WHEREAS, the Trustee was appointed SIPA Trustee of and for Bernard L. Madoff Investment Securities LLC (In Liquidation) by order of the United States District Court for the Southern District of New York under the Securities Investor Protection Act of 1970 ("SIPA") on 15 December 2008. The Trustee's capacity and powers of the Trustee are derived from, among other things, the order of the Southern District of New York and from the Securities Investor Protection Act; and

WHEREAS, under and subject to the terms of this 2010 Agreement, the parties desire to and do amend the 2009 Agreement to permit the transfers set forth in this 2010 Agreement, and the Trustee consents to the transfer by the Liquidators of $20,000,000 (Twenty Million Dollars) from the Deposited Sums (present and future) into the bank accounts identified at Section 1 herein, in return for certain information rights (as set forth herein) and the agreement by the Liquidators as to the use of such Deposited Sums (as set forth herein) pending further agreement of the parties and/or order of a competent court.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this 2010 Agreement hereby agree as follows:

**Section 1.**      **Consent.**

In consideration of the following provisions of this 2010 Agreement, the Trustee hereby irrevocably consents to the transfer of the Deposited Sums by delivery of the same to any of the following accounts (the "Deposit Accounts") subject to all provisions of this Agreement:

| | |
|---|---|
| Account Name: | Fairfield Sentry Limited |
| Account No: | 15.201.871.001 |
| Bank Name: | VP Bank and Trust Company (BVI) |
| Bank Address: | 3076 Sir Francis Drake's Highway |
| | Road Town, Tortola, VG |
| | British Virgin Islands |

| | |
|---|---|
| Account Name: | Fairfield Sentry Limited |
| Account No: | 5001671 |
| Bank Name: | Scotiabank British Virgin Islands |
| Bank Address: | DeCastro Street, Wickham's Cay I |
| | Road Town, Tortola |
| | British Virgin Islands |

| | |
|---|---|
| Account Name: | Fairfield Sigma Limited |
| Account No: | 15.201.905.001 |
| Bank Name: | VP Bank and Trust Company (BVI) |
| Bank Address: | 3076 Sir Francis Drake's Highway |

3

Road Town, Tortola, VG

British Virgin Islands

| | |
|---|---|
| Account Name: | Fairfield Sigma Limited |
| Account No: | 5001670 |
| Bank Name: | Scotiabank British Virgin Islands |
| Bank Address: | DeCastro Street, Wickham's Cay I |
| | Road Town, Tortola |
| | British Virgin Islands |

In addition to the foregoing and for the purposes of facilitating the transfer of the Deposited Sums, the Trustee shall (upon request by the Liquidators) sign a copy of the letter of consent in a form similar appended hereto as Exhibit A, which may be used by the Liquidators to facilitate the transfer of Deposited Sums to the Deposit Accounts.

**Section 2.      Deposit of Funds; Investment**.

(a)      Pursuant to this 2010 Agreement, the Liquidators and the Trustee shall cause $20,000,000 (Twenty Million Dollars) from the Deposited Sums to be transferred to the Deposit Accounts (such funds upon delivery in accordance herewith, together with any interest or income accrued thereon, hereinafter referred to as the "Escrow Property"). The Liquidators shall hold, invest, reinvest, manage, administer, distribute and dispose of all Escrow Property in accordance with the terms and conditions of this 2010 Agreement.

4

(b)     Until the termination of this 2010 Agreement, the Escrow Property shall be invested as directed by the Liquidators (without any further consent by the Trustee) in their business judgment reasonably exercised.

(c)     The parties acknowledge that the Liquidators shall not be responsible to the Trustee for any diminution in the Escrow Property due to losses resulting from its retention or investment of Escrow Property made pursuant to this 2010 Agreement unless the same is caused by the Liquidators' gross negligence, willful misconduct or breach of this 2010 Agreement.  The Liquidators may break or cancel any interest rate lock or similar restriction to the extent necessary or appropriate to make any payment required hereby, and shall not be responsible for any costs or penalties associated therewith.

(d)     The parties hereto agree that, for tax reporting purposes, all interest or other income earned from the investment of the Escrow Property shall be reported as allocated to the Liquidators unless otherwise jointly directed by the Liquidators and the Trustee.

(e)     Should the Liquidators become liable for the payment of taxes, including withholding taxes, relating to income derived from any funds held by or pursuant to this 2010 2010 Agreement or any payment made hereunder, the Liquidators may pay such taxes from the Escrow Property.

**Section 3.     Account Protocol**.

(a)     Unless otherwise ordered by a court of competent jurisdiction, after notice as appropriate (including to all parties hereto), or as otherwise approved by the Trustee in writing, the Liquidators may in their discretion remit amounts from the Escrow Property only to pay

5

expenses relating to the administration and/or liquidation of the Fairfield Sentry and Fairfield

Sigma estates, including, without limitation as follows:

    (i)    bank fees or charges relating to the Deposit Account or the Escrow Funds;

    (ii)    the fees and expenses of the Liquidators arising out of their roles as Fairfield Sentry's and Fairfield Sigma's liquidators;

    (iii)    the fees and expenses of advisers retained by the Liquidators to represent or otherwise assist them in the administration or liquidation of the Fairfield Sentry and Fairfield Sigma estates, including, without limitation, the fees and expenses of accountants, financial advisors, and attorneys retained for such purposes;

    (iv)    any due and owing taxes, governmental fees or similar obligations arising out of or relating to the Deposited Sums or the Escrow Property; and

    (v)    any other actual and appropriate expenses payable to third parties relating to the Liquidators' administration or liquidation of the Fairfield Sentry and Fairfield Sigma estates (as reasonably determined by the Liquidators).

    (b)    The Liquidators will provide the Trustee with five (5) business days prior written

notice of any intended payment or transfer which amounts to more than $250,000, in the

aggregate, of payments or transfers in any calendar month from the Escrow Property, stating the

purpose(s) and any intended payee(s) of such transfer. If no written objection by the Trustee is

received by the Liquidators within said five (5) day period, the Liquidators may make the noticed

payment(s) or transfer(s). The parties shall confer in good faith within three (3) business days of

any objection by the Trustee to resolve any such objection.

    (c)    Notwithstanding anything to the contrary in this 2010 Agreement, the Liquidators

shall disburse from the Escrow Property such amounts, to the order of such person or persons, in

such manner and at such time as it shall be consented to in writing jointly by the Liquidators and

the Trustee.

**Section 4.**    <u>Dispute Resolution</u>.

The parties hereby consent to the exclusive jurisdiction of the English courts as to any dispute as to, concerning or arising from the Escrow Funds or this 2010 Agreement.

**Section 5.**    <u>Capacity</u>.

(a)    The Trustee acknowledges that the Liquidators have entered into and signed this 2010 Agreement solely in such capacity and neither the Liquidators or their firms, partners, employees, agents, advisers or representatives shall incur any personal liability under or in connection with this 2010 Agreement.

(b)    The Liquidators acknowledge that the Trustee has entered into and signed this 2010 Agreement solely in such capacity and that neither the Trustee nor his firm, partners, employees, agents, advisers or representatives shall incur any personal liability under or in connection with this 2010 Agreement.

**Section 6.**    <u>No Admission or Waiver</u>.

Nothing in this 2010 Agreement shall constitute any admission or waiver by any of the parties hereto of or with respect to any party's claims, rights and/or positions, including, but not limited to, any claim that any party may assert with respect to the Escrow Property or the Deposited Sums.

## Section 7.  Confidentiality.

The matters contemplated by this 2010 Agreement are to be treated in the strictest
confidence and should not be disclosed to any person whatsoever without the prior written
consent of the other parties hereto except (a) to the extent required by applicable law or
regulation, (b) to the parties' respective attorneys or other advisors and other representatives, (c)
as to the Liquidators, to the Liquidation Committee serving in the liquidation proceedings for
Fairfield Sentry, and (d) as to the Trustee, to the Office of the United States Trustee with
responsibility for oversight of the SIPA proceedings.  The provisions of this paragraph do not
apply to any information which is publicly available at the time of disclosure unless disclosed
through breach of this undertaking nor does it apply to any information disclosed by the parties
to the extent that disclosure is required by law or any regulation.  Notwithstanding the foregoing,
the Liquidators and the Trustee are each authorized to disclose this 2010 Agreement to,
respectively, the BVI Court and the United States Bankruptcy Court for the Southern District of
New York.

## Section 8.  Notices; Wiring Instructions.

(a)    All communications under this 2010 Agreement shall be in writing and shall be
delivered by facsimile, with delivery to immediately follow by hand, or by recognized overnight
courier or by registered mail or certified mail, postage prepaid:

**Liquidators**

> Krys & Associates (BVI) Limited
> P.O. Box 4025
> Clarence Thomas Building, Pasea Estate
> Road Town, Tortola, British Virgin Islands,
> Attention:  Christopher Stride and/or Kenneth Krys
> Fax Number:  (284) 494 7169
> E-mail:  christopher.stride@krysandassoc.com
> E-mail:  kenneth.krys@krysandassoc.com
>
> with a copy to:
>
> David J. Molton, Esq.
> Brown Rudnick LLP
> 7 Times Square
> New York, New York  10036
> Fax Number:  (212) 209-4822
> E-mail:  dmolton@brownrudnick.com

**Trustee**

> Irving H. Picard, Esq.
> Baker & Hostetler LLP
> 45 Rockefeller Plaza, 11th Floor
> New York, NY 10111
> Fax Number:  (212) 589-4201
> E-mail:  ipicard@bakerlaw.com
>
> with a copy to:
>
> Thomas Long, Esq.
> Mark Kornfeld, Esq.
> Baker & Hostetler LLP
> 45 Rockefeller Plaza, 11th Floor
> New York, NY 10111
> Fax Number:  (212) 589-___
> E-mail:  tlong@bakerlaw.com
> E-mail:  mkornfeld@bakerlaw.com

9

(b)    Any notice so addressed shall be deemed to be given:  if delivered by hand, on the date of such delivery; if sent by overnight courier, on the next business day; and if mailed by registered or certified mail, on the third business day after the date of such mailing.

**Section 9.  Termination of this 2010 Agreement**.

This 2010 Agreement shall terminate, except for any provisions that expressly survive termination, upon written consent of the parties hereto or the order of a court of competent jurisdiction.

**Section 10.    Miscellaneous**.

(a)    No provision of this 2010 Agreement shall be deemed amended or modified unless such an amendment or modification is in writing, dated, and executed by all of the parties hereto.

(b)    This 2010 Agreement shall inure to the benefit of the parties hereto, and shall be binding upon the parties hereto and their respective successors and assigns.  Nothing in this 2010 Agreement, expressed or implied, is intended to confer any rights, remedies, obligations or liabilities under or by reason of this 2010 Agreement on any other person or entity other than the parties hereto, and their respective successors and assigns.  No person who is not a party to this 2010 Agreement shall have any rights under the Contracts (Rights of Third Parties) Act of 1999 to enforce any term of this 2010 Agreement.  This clause does not affect any right or remedy of any person which exists or is available other than pursuant to that Act.

(c)    This 2010 Agreement shall be governed by, and construed according to, the laws of England, without regard to its principles relating to conflicts of law.

(d)    If any court of competent jurisdiction should find any particular provision of this 2010 Agreement void, illegal or unenforceable, then that provision shall be regarded as severable and stricken from this 2010 Agreement, and the remainder of this 2010 Agreement shall remain in full force and effect.

(e)    This 2010 Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.  Facsimile signatures shall be deemed to be original signatures.

(f)    THE PARTIES HERETO HEREBY WAIVE A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING BETWEEN THEM OR THEIR SUCCESSORS OR ASSIGNS, ARISING UNDER OR IN CONNECTION WITH OR IN ANY WAY RELATED TO THIS 2010 AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

(g)    This 2010 Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter herein.  As between the parties hereto, this 2010 Agreement shall govern to the extent of any conflict between it and any other agreement or writing.

[signatures on next page]

11

IN WITNESS WHEREOF, each of the parties has caused this 2010 Agreement to be duly executed and delivered in its name and on its behalf as of the date first recited above.

LIQUIDATORS:

_____

Christopher Stride, solely in his capacity as a Liquidator of Fairfield Sentry Limited and Fairfield Sigma Limited, and not personally

_____

Kenneth Krys, solely in his capacity as a Liquidator of Fairfield Sentry Limited and Fairfield Sigma Limited, and not personally

TRUSTEE:

_____

Irving H. Picard, solely in his capacity as SIPA Trustee as aforesaid, and not personally

## EXHIBIT A

To whom it may concern,

Fairfield Sentry Limited and Fairfield Sigma Limited (In Liquidation) (collectively, "Fairfield")

We refer to the above company and specifically refer to all monies held by you and/or to be held by you on account for and on behalf of Fairfield (the "Fairfield Funds").

In my capacity as the SIPA Trustee of and for Bernard L. Madoff Investment Securities LLC (In Liquidation) by order of the United States District Court for the Southern District of New York under the Securities Investor Protection Act of 1970 ("SIPA") on 15 December 2008, I hereby consent to the transfer by you of $20,000,000 (Twenty Million Dollars) of the Fairfield Funds to the following bank account(s) (upon receipt by you of such instruction by Christopher Stride and/or Kenneth Krys, both of Krys & Associates (BVI) Limited, P.O. Box 4025, Clarence Thomas Building, Road Town, Tortola, British Virgin Islands, in their capacities as joint liquidators of Fairfield by order dated 21 July 2009 of the Commercial Division of the Eastern Caribbean Supreme Court, sitting in the jurisdiction of the British Virgin Islands):

      Account Name:

      Sort Code:

      Account No:

      Swift Code:

      IBAN:

      Bank Name:

      Address:

Very truly yours,

_____
Irving H. Picard, solely in his capacity as
SIPA Trustee as aforesaid, and not personally

Dated:_____, 2010

## Section 1.    Consent.

In consideration of the following provisions of this Agreement, the Trustee hereby irrevocably consents to the transfer of the Deposited Sums to Escrow Agent by delivery of the same to the following account (the "Deposit Account") subject to all provisions of this Agreement:

| | |
|---|---|
| Account Name: | Brown Rudnick LLP |
| Sort Code: | 82-11-07 |
| Account No: | 4505 275534 501 |
| Swift Code: | CLYDGB2S |
| IBAN: | GB78CLYD82810127553501 |
| Bank Name: | Clydesdale Bank |
| Address: | 35 Regent Street, London SW1Y 4ND |

In addition to the foregoing and for the purposes of facilitating the transfer of the Deposited Sums, the Trustee shall (upon request by the Liquidators) sign a copy of the letter of consent appended hereto as Exhibit A, which may be used by the Liquidators to facilitate the transfer of Deposited Sums to the Deposit Account.

## Section 2.    Deposit of Funds; Investment.

(a)     The Liquidators and the Trustee hereby appoint the Escrow Agent as the escrow agent under this Agreement, and the Escrow Agent accepts such appointment according to the terms and conditions set forth herein. From time to time, and pursuant to this Agreement, the Liquidators and the Trustee shall cause to be transferred to the Escrow Agent Deposited Sums, (such Deposited Sums, upon delivery in accordance herewith, together with any interest or income accrued thereon, hereinafter referred to as the "Escrow Property"). The Escrow Agent shall hold, invest, reinvest, manage, administer, distribute and dispose of all Escrow Property in accordance with the terms and conditions of this Agreement.

(b)     Until the termination of this Agreement, the Escrow Property shall be invested as directed by the Liquidators (without any further consent by the Trustee) in written instructions to the Escrow Agent delivered from time to time as determined from time to time by the Liquidators in their business judgment reasonably exercised. In the absence of any written instructions from the Liquidators to the contrary, the Escrow Agent is hereby authorized and directed to retain the Escrow Property in Escrow Agent's client trust fund account with Clydesdale Bank or any other recognized commercial bank, agreeable to both the Liquidators and the Trustee, with such agreement evidenced by a written instrument.

(c)     The parties acknowledge that the Escrow Agent shall not be responsible for any diminution in the Escrow Property due to losses resulting from its retention or investment of Escrow Property made pursuant to this Agreement unless the same is caused by Escrow Agent's gross negligence, willful misconduct or breach of this Agreement. The Escrow Agent may break or cancel any interest rate lock or similar restriction to the extent necessary or appropriate to

2

make any payment required hereby, and shall not be responsible for any costs or penalties associated therewith.

(d) The parties hereto agree that, for tax reporting purposes, all interest or other income earned from the investment of the Escrow Property shall be reported as allocated to the Liquidators unless otherwise jointly directed by the Liquidators and the Trustee.

(e)     Should the Escrow Agent become liable for the payment of taxes, including withholding taxes, relating to income derived from any funds held by or pursuant to this Agreement or any payment made hereunder, the Escrow Agent may pay such taxes from the Escrow Property.

### Section 3.    Account Protocol.

(a) Unless otherwise ordered by a court of competent jurisdiction after notice as appropriate (including to all parties hereto), or as otherwise approved by the Trustee in writing, the Liquidators may in their discretion instruct the Escrow Agent to remit amounts from the Escrow Property only to pay expenses relating to the administration and/or liquidation of the Fairfield Sentry estate, including, without limitation as follows:

(i)      bank fees or charges relating to the Deposit Account or the Escrow Funds;

(ii)     the fees and expenses of the Liquidators arising out of their roles as Fairfield Sentry's liquidators;

(iii)    the fees and expenses of advisers retained by the Liquidators to represent or otherwise assist them in the administration or liquidation of the Fairfield Sentry estate, including, without limitation, the fees and expenses of accountants, financial advisors, and attorneys retained for such purposes;

(iv)    any due and owing taxes, governmental fees or similar obligations arising out of or relating to the Deposited Sums or the Escrow Property; and

(v)     any other actual and appropriate expenses payable to third parties relating to the Liquidators' administration or liquidation of the Fairfield Sentry estate (as reasonably determined by the Liquidators).

(b) The Liquidators will provide the Trustee with five (5) business days prior written notice of any intended payment or transfer of more than $250,000 from the Escrow Property, stating the purpose and any intended payee of such transfer.

(c)     Notwithstanding anything to the contrary in this Agreement, the Escrow Agent shall disburse from the Escrow Property such amounts, to the order of such person or persons, in such manner and at such time as it shall be instructed in writing jointly by the Liquidators and the Trustee.

3

## Section 4.    Concerning the Escrow Agent.

(a)    The parties hereto acknowledge and agree that the Escrow Agent (i) shall not be charged with knowledge of any agreement or instrument (other than this Agreement), or responsible for determining compliance therewith, and shall not otherwise be bound thereby, (ii) shall be obligated to perform only those duties as are expressly set forth in this Agreement on its part to be performed, and no implied duties or obligations of any kind shall be read into this Agreement against the Escrow Agent, (iii) shall not be obligated to take any legal or other action hereunder which in its judgment might cause it to incur any expense or liability unless it shall have been furnished with indemnification acceptable to the Escrow Agent, or which, in its judgment, might subject it to any liabilities or obligations in its individual capacity, (iv) may rely on and shall be protected in acting or refraining from acting upon any written notice, direction or other document furnished to it hereunder and believed by it in good faith to be genuine and to have been signed or presented by the proper person, and shall have no duty to confirm the genuineness or validity of any such notice, direction or document or any signature thereon, or of the signing authority of such person, and (v) may consult counsel satisfactory to it, and the opinion or advice of such counsel in any instance shall be full and complete authorization and protection with respect to any action taken or omitted by it hereunder in good faith and in accordance with such opinion or advice.

(b)    All of the duties of the Escrow Agent shall be ministerial in nature and in no event shall the Escrow Agent be deemed to owe any fiduciary duty to any party hereto. The Liquidators and the Trustee each hereby acknowledge that the Escrow Agent (i) does not hereby provide any investment advice of any nature, including as to the safety or security of the Escrow Property as deposited with any financial institution, and (ii) Escrow Agent serves as counsel to the Liquidators, and will continue to do so notwithstanding its acceptance of its appointment as Escrow Agent, and the Trustee hereby waives any argument or right to seek disqualification of the Escrow Agent as counsel to the Liquidators in any proceeding based directly or indirectly on such appointment.

(c)    The Escrow Agent shall not be liable for any action taken or omitted to be taken by it hereunder except in the case of the Escrow Agent's gross negligence or willful misconduct. In no event shall the Escrow Agent be liable for indirect, punitive, special or consequential damages (including but not limited to lost profits).

(d)    In the event that the Escrow Agent is faced with inconsistent claims or demands of the parties, the Escrow Agent shall refuse to take further action until directed to do so by joint instruction of the parties or until the Escrow Agent has received a final determination of any court of competent jurisdiction. The Escrow Agent shall have the right to interplead the parties in any court of competent jurisdiction and request such court determine the respective rights of such parties.

(e)    In order to comply with any obligations of financial institutions under applicable law to obtain, verify and record information that identifies each person who opens an account, including particularly laws designed to fight the funding of terrorism and money laundering activities, the Escrow Agent may be entitled to require documentation from any party hereto to verify its formation, existence and identify, including, but not limited to, licenses, passports,

4

financial statements, and other identification and authorization documents, and the Trustee and the Liquidators shall each comply with any such reasonable request.

### Section 5.    Compensation, Reimbursement and Indemnification.

(a)    Except as specifically set forth herein, the Escrow Agent shall be entitled to be paid no fee for its services pursuant to this Agreement, but shall be reimbursed for its reasonable costs and expenses incurred in the performance of its duties hereunder (including reasonable counsel fees). Each of the Liquidators and the Trustee hereby agrees, jointly and severally to pay or reimburse the Escrow Agent for such fees, costs and expenses.

(b)    Each of the Liquidators and the Trustee hereby agrees, jointly and severally, to indemnify the Escrow Agent and its partners, officers, employees, affiliates and agents (collectively the Indemnified Parties) and hold the Indemnified Parties harmless from and against any loss, liability, damage, claim, cost and expense of any nature incurred by the Indemnified Parties arising out of or in connection with this Agreement or with the administration of the Escrow Agent's duties hereunder, including but not limited to reasonable counsel fees and other costs and expenses of litigation, except to the extent such loss, liability, damage, claim, cost or expense shall be caused by the Escrow Agent's gross negligence or willful misconduct.

(c)    The terms of this Section 5 shall survive the termination of this Agreement and the distribution of all of the Escrow Property.

### Section 6.    Resignation.

(a)    The Escrow Agent may resign as escrow agent at any time and be discharged of its duties hereunder after thirty (30) days' notice to the other parties hereto, but only if a successor escrow agent has been appointed by the Liquidators and the Trustee prior to the effective date of the Escrow Agent's resignation. Upon receipt of notice of resignation, the Liquidators and the Trustee promptly shall use their best efforts to designate a successor escrow agent to serve in accordance with the terms of this Agreement. If they cannot agree on a successor escrow agent during such thirty (30) day period, the Escrow Agent shall be deemed to be solely a custodian of the Escrow Property without further duties and Escrow Agent may petition a court of competent jurisdiction to have a successor appointed. Any successor Escrow Agent shall execute and deliver to predecessor Escrow Agent, the Liquidators and the Trustee an instrument accepting such appointment and the transfer of the Escrow Property, and agreeing to the terms of this Agreement, and thereupon such successor Escrow Agent shall, without further act, become vested with all the estates, properties, rights, powers and duties of predecessor Escrow Agent as if originally named herein.

(b)    Any law firm with which Escrow Agent may merge or consolidate shall be the successor Escrow Agent without further act.

### Section 7.    Dispute Resolution.

In the event of any dispute with respect to the disposition of the Escrow Property, the Escrow Agent is authorized and shall be entitled to retain in its possession without liability to

5

anyone, all or any of said Escrow Property until such dispute shall have been settled either by the mutual written agreement of the parties involved or by a final determination of a court of competent jurisdiction. The parties hereby consent to the exclusive jurisdiction of the English courts as to any dispute as to the Escrow Funds or this Agreement. The Escrow Agent may, but shall be under no duty whatsoever to, institute or defend any legal proceedings which relate to the Escrow Property, except that the Escrow Agent will notify the Liquidators and the Trustee immediately if any legal proceedings are instituted. The selection of English Law does not alter the legal obligations of the Escrow Agent under New York law, as the Escrow Agent is a law firm governed by New York Judiciary Law § 90 et seq.

### Section 8.    Capacity.

(a)    The Trustee acknowledges that the Liquidators have entered into and signed this agreement solely in such capacity and neither the Liquidators or their firms, partners, employees, agents, advisers or representatives shall incur any personal liability under or in connection with this agreement.

(b)    The Liquidators acknowledge that the Trustee has entered into and signed this agreement solely in such capacity and that neither the Trustee nor his firm, partners, employees, agents, advisers or representatives shall incur any personal liability under or in connection with this agreement.

### Section 9.    No Admission or Waiver.

Nothing in this agreement shall constitute any admission or waiver by any of the parties hereto of or with respect to any party's claims, rights and/or positions, including, but not limited to, any claim that any party may assert with respect to the Escrow Property or the Deposited Sums.

### Section 10. Confidentiality.

The matters contemplated by this agreement are to be treated in the strictest confidence and should not be disclosed to any person whatsoever without the prior written consent of the other parties hereto except (a) to the extent required by applicable law or regulation, (b) to the parties' respective attorneys or other advisors and other representatives, (c) as to the Liquidators, to the Liquidation Committee serving in the liquidation proceedings for Fairfield Sentry, and (d) as to the Trustee, to the Securities Investment Protection Corporation with responsibility for oversight of the SIPA proceedings. The provisions of this paragraph do not apply to any information which is publicly available at the time of disclosure unless disclosed through breach of this undertaking nor does it apply to any information disclosed by the parties to the extent that disclosure is required by law or any regulation. Notwithstanding the foregoing, the Liquidators and the Trustee are each authorized to disclose this Agreement to, respectively, the British Virgin Islands High Court of Justice and the United States Bankruptcy Court for the Southern District of New York, any United States District Court in which Madoff related proceedings are pending and Escrow Agent may disclose this Agreement if necessary or appropriate to do so to carry out its duties hereunder.

### Section 11. Notices; Wiring Instructions.

(a)    All communications under this Agreement shall be in writing and shall be delivered by facsimile, with delivery to immediately follow by hand, or by recognized overnight courier or by registered mail or certified mail, postage prepaid:

> **Liquidators**
>
> Krys & Associates (BVI) Limited
> P.O. Box 4025
> Old Clarence Thomas Building
> Road Town, Tortola, British Virgin Islands,
> Attention: Christopher Stride and/or Kenneth Krys
> Fax Number: (345) 946-6728
> E-mail: christopher.stride@krysandassoc.com E-mail: kenneth.krys@krysandassoc.com
>
> with a copy to:
>
> Brown Rudnick LLP
> One Financial Center
> Boston, MA 02111
> Attention: William R Baldiga, Esq.
> Fax Number: (617) 289-0420
> E-mail: wbaidigagorownrudnick.com

> **Trustee**
>
> Baker & Hostetler LLP
> 45 Rockefeller Plaza, 11th Floor
> New York, NY 10111
> Attention: Irving H. Picard
> Fax Number: (212) 589-4201
> E-mail: ipicard@bakerlaw.com
>
> With a copy to:
> Baker Hostetler
> 65 East State Street
> Suite 2100
> Columbus, Ohio 43215
> Attention: Thomas L. Long
> Fax Number: (614) 462-2616
> E-Mail: tlong@bakerlaw.com

**Escrow Agent**

Brown Rudnick LLP
8 Clifford Street
London W1S 2LQ
United Kingdom
Attention: Chief Financial Officer
Fax Number: (617) 289-0537
E-mail: moleary@brownrudnick.com

With a copy to:

Brown Rudnick LLP
One Financial Center
Boston, MA 02111
Attention: William R Baldiga, Esq.
Fax Number: (617) 289-0420
E-mail: wbaldiga@brownrudnick.com

(b)    Any notice so addressed shall be deemed to be given: if delivered by hand, on the date of such delivery; if sent by overnight courier, on the next business day; and if mailed by registered or certified mail, on the third business day after the date of such mailing.

(c)    Any funds to be paid to or by the Escrow Agent hereunder shall be sent by wire transfer pursuant to the following instructions:

| | |
|---|---|
| Account Name: | Brown Rudnick LLP |
| Sort Code: | 82-11-07 |
| Account No: | 4505 275534 501 |
| Swift Code: | CLYDGB2S |
| IBAN: | GB78CLYD82810127553501 |
| Bank Name: | Clydesdale Bank |
| Address: | 35 Regent Street, London SW1Y 4ND |

## Section 12. Termination.

Upon distribution by the Escrow Agent of the entire amount of the Escrow Property, this Agreement shall terminate, except for any provisions that expressly survive termination.

## Section 13. Miscellaneous.

(a)    No provision of this Agreement shall be deemed amended or modified unless such an amendment or modification is in writing, dated, and executed by all of the parties hereto.

(b)    This Agreement shall inure to the benefit of the parties hereto, and shall be

binding upon the parties hereto and their respective successors and assigns. Nothing in this Agreement, expressed or implied, is intended to confer any rights, remedies, obligations or liabilities under or by reason of this Agreement on any other person or entity other than the parties hereto, and their respective successors and assigns. No person who is not a party to this Agreement shall have any rights under the Contracts (Rights of Third Parties) Act of 1999 to enforce any term of this Agreement. This clause does not affect any right or remedy of any person which exists or is available other than pursuant to that Act.

(c)    This Agreement shall be governed by, and construed according to, the laws of the England, without regard to its principles relating to conflicts of law.

(d)    If any court of competent jurisdiction should find any particular provision of this Agreement void, illegal or unenforceable, then that provision shall be regarded as severable and stricken from this Agreement, and the remainder of this Agreement shall remain in full force and effect.

(e)    This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument. Facsimile signatures shall be deemed to be original signatures.

(f)    THE PARTIES HERETO HEREBY WAIVE A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING BETWEEN THEM OR THEIR SUCCESSORS OR ASSIGNS, ARISING UNDER OR IN CONNECTION WITH OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

(g)    The Escrow Agent shall not be responsible for delays or failures in performance resulting from acts beyond its control. Such acts shall include but not be limited to strikes, lockouts, riots, acts of war, epidemics, governmental regulations hereafter imposed, casualties, communication line failures, computer viruses or power failures.

(h)    As between the Escrow Agent, on the one hand, and the other parties hereto, on the other hand, this Agreement constitutes the entire agreement with respect to the subject matter herein. As between the other parties hereto, this Agreement shall govern to the extent of any conflict between it and any other agreement or writing.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be duly executed and delivered in its name and on its behalf as of the date first recited above.

LIQUIDATORS:

_____

Christopher Stride, solely in his capacity as a
Liquidator of Fairfield Sentry Limited, and not
personally

*and Fairfield Sigma Ltd*

_____

Kenneth Krys, solely in his capacity as a Liquidator
of Fairfield Sentry Limited, and not personally

*and Fairfield Sigma Limited C.*

TRUSTEE:

_____

Irving H. Picard, solely in his capacity as Trustee
for the Liquidation of Bernard L. Madoff
Investment Securities, LLC, and not personally

ESCROW AGENT:

BROWN RUDNICK LLP

By: _____
   Name: David J. Molton
   Title: Partner

10

## EXHIBIT A

To whom it may concern,

Fairfield Sentry Limited (In Liquidation) ("Fairfield Sentry")

We refer to the above company and specifically refer to all monies held by you and/or to be held by you on account for and on behalf of Fairfield Sentry (the "Fairfield Funds").

In my capacity as the Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, I hereby consent to the transfer by you of the Fairfield Funds to the following bank account (upon receipt by you of such instruction by Christopher Stride and/or Kenneth Krys both of Krys & Associates, Georgetown, Cayman Islands, in their capacity as joint liquidators of Fairfield Sentry by order of the High Court of Justice in the British Virgin Islands on 21 July 2009):

| | |
|---|---|
| Account Name: | Brown Rudnick LLP |
| Sort Code: | 82-11-07 |
| Account No: | 4505 275534 501 |
| Swift Code: | CLYDGB2S |
| IBAN: | GB78CLYD82810127553501 |
| Bank Name: | Clydesdale Bank |
| Address: | 35 Regent Street, London SW1Y 4ND |

Very truly yours,

_____
Irving H. Picard, solely in his capacity as the
Trustee for the Liquidation of Bernard L.
Madoff Investment Securities, LLC, and not
personally

Dated: _____, 2009

1684755.v1

## EXHIBIT G

**Fairfield Redeemer Actions As Of May 9, 2011**

| | Redeemer Actions Pending in the United States | |
|---|---|---|
| | **CASE NAME** | **DOCKET NO.** |
| 1. | Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al. | 10-03635-BRL |
| 2. | Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al. | 10-03636-BRL |
| 3. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Abu Dhabi Inv. Auth., et al. | 11-01719-BRL |
| 4. | Fairfield Sentry Ltd. (In Liquidation), et al. v. All Funds Bank, et al. | 11-01591-BRL |
| 5. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Almel Ltd., et al. | 10-03789-BRL |
| 6. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Alton Select Ltd., et al. | 10-03541-BRL |
| 7. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Apollo Nominees, Inc., et al. | 11-01603-BRL |
| 8. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Arden Endowment Advisers Ltd., et al. | 11-01458-BRL |
| 9. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Arden Int'l Capital Ltd., et al. | 10-03870-BRL |
| 10. | Fairfield Sentry Ltd. (In Liquidation), et al. v. AXA Isle of Man, et al. | 10-03623-BRL |
| 11. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banc of America Securities LLC, et al. | 11-01571-BRL |
| 12. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Banca Di San Marino SPA, et al. | 11-01572-BRL |
| 13. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banca Privada D'Andorra S.A., et al. | 11-01717-BRL |
| 14. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Atlantico (Bah.), et al. | 10-03783-BRL |
| 15. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Atlantico (Gib.) Ltd., et al. | 10-03787-BRL |
| 16. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Bilbao Vizcaya Argentaria, S.A., et al. | 10-03515-BRL |
| 17. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco di Desio e Della Brianza, et al. | 10-04096-BRL |
| 18. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Inversis SA, et al. | 10-04089-BRL |
| 19. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Itau Europa Lux. SA, et al. | 10-03755-BRL |
| 20. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Nominees (IOM) Ltd., et al. | 10-04097-BRL |
| 21. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Santander (Suisse) S.A., et al. | 10-03509-BRL |
| 22. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank of Am. Nat'l Trust & Sav. Ass'n, et al. | 10-03615-BRL |
| 23. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Hapoalim (Suisse) Ltd., et al. | 10-03510-BRL |
| 24. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Julius Baer & Co. Ltd., Zurich, et al. | 11-01549-BRL |
| 25. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Morgan Stanley AG, et al. | 10-04212-BRL |
| 26. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Sarasin & Cie AG, et al. | 11-01612-BRL |
| 27. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Vontobel AG, et al. | 11-01760-BRL |
| 28. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Banque Benedict Hentsch & Cie S.A., et al. | 11-01718-BRL |
| 29. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque de Commerce et de Placements, et al. | 10-03748-BRL |
| 30. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque de Lux., et al. | 10-03616-BRL |
| 31. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque de Reescompte et de Placement, et al. | 11-01585-BRL |
| 32. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque et Caisse D'Epargne de L'Etat Luxembourg, et al. | 11-01598-BRL |
| 33. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Piguet & Cie S.A., et al. | 10-03514-BRL |
| 34. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Privee Edmond De Rothschild (Eur.), et al. | 10-03505-BRL |
| 35. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Safra Lux. S.A., et al. | 10-03872-BRL |
| 36. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque SCS Alliance S.A., et al. | 11-01256-BRL |
| 37. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Sudameris, et al. | 10-03586-BRL |
| 38. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Sudameris, et al. | 10-03749-BRL |
| 39. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Syz & Co. S.A., et al. | 10-03513-BRL |
| 40. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Bank (Suisse) S.A., et al. | 11-01259-BRL |
| 41. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Barfield Nominees Ltd., et al. | 11-01470-BRL |

# EXHIBIT G

## Fairfield Redeemer Actions As Of May 9, 2011

| | Redeemer Actions Pending in the United States | |
|---|---|---|
| | **CASE NAME** | **DOCKET NO.** |
| 42. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bear Stearns Alt. Assets Int'l Ltd., et al. | 11-01583-BRL |
| 43. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bie Bank & Trust Bah. Ltd., et al. | 11-01587-BRL |
| 44. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bipielle Banke (Suisse), et al. | 11-01568-BRL |
| 45. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Blubank Ltd., et al. | 10-03750-BRL |
| 46. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Arbitrage SNC, et al. | 10-04098-BRL |
| 47. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Lux. S.A., et al. | 10-03626-BRL |
| 48. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Private Bank & Trust Cayman Ltd., et al. | 10-04099-BRL |
| 49. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Sec. Nominees Ltd., et al. | 11-01579-BRL |
| 50. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Sec. Servs. Lux., et al. | 10-03627-BRL |
| 51. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNY AIS Nominees Ltd., Credit Andorra/Crediivest, et al. | 11-01589-BRL |
| 52. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bordier & Cie, et al. | 10-03873-BRL |
| 53. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BP Alpha S.A., et al. | 11-01245-BRL |
| 54. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Brown Bros. Harriman & Co., et al. | 10-03752-BRL |
| 55. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bureau of Labor Ins., et al. | 11-01574-BRL |
| 56. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Caceis Bank EX-IXIS IS, et al. | 10-03871-BRL |
| 57. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Caceis Bank Lux., et al. | 10-03624-BRL |
| 58. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Capluck Enterprises Ltd., et al. | 11-01573-BRL |
| 59. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Cathay Life Ins. Co. Ltd., et al. | 11-01577-BRL |
| 60. | Fairfield Sentry Ltd. (In Liquidation), et al. v. CDC IXIS, et al. | 10-03754-BRL |
| 61. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Celfin Int'l Ltd., et al. | 10-03865-BRL |
| 62. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Chen Tyan-Wen, et al. | 11-01611-BRL |
| 63. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank NA London, et al. | 10-03622-BRL |
| 64. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank (Switz.) AG, et al. | 10-03640-BRL |
| 65. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Citivic Nominees Ltd., et al. | 10-04100-BRL |
| 66. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Clearstream Banking S.A., et al. | 11-01263-BRL |
| 67. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Commercial Bank of Kuwait, et al. | 10-04093-BRL |
| 68. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Agricole Lux. Private Bank, et al. | 11-01590-BRL |
| 69. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Agricole (Suisse) S.A., et al. | 11-01244-BRL |
| 70. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Industriel et Commercial Sing. Branch, et al. | 11-01575-BRL |
| 71. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse AG Nassau Branch Wealth Mgmt., et al. | 11-01601-BRL |
| 72. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Bah.), et al. | 10-03782-BRL |
| 73. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse Nominees, et al. | 10-04236-BRL |
| 74. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Lux.) S.A., et al. | 10-04088-BRL |
| 75. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Credit Suisse Int'l, et al. | 10-03620-BRL |
| 76. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credito Privato Commerciale S.A., et al. | 10-03797-BRL |
| 77. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credito Sammarinese SPA, et al. | 11-01602-BRL |
| 78. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank AG Sing., et al. | 10-03747-BRL |
| 79. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank (Cayman), et al. | 10-03746-BRL |
| 80. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank Nominees (Jersey) Ltd., et al. | 11-01564-BRL |
| 81. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank (Suisse) S.A. Geneve, et al. | 10-03745-BRL |
| 82. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank Trust Co. Am., et al. | 10-03744-BRL |
| 83. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Dexia BIL, et al. | 10-04090-BRL |
| 84. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Dexia Private Bank (Switz.), et al. | 10-04091-BRL |

# EXHIBIT G

## Fairfield Redeemer Actions As Of May 9, 2011

| | Redeemer Actions Pending in the United States | |
|---|---|---|
| | **CASE NAME** | **DOCKET NO.** |
| 85. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Drake & Co., et al. | 11-01246-BRL |
| 86. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Dresdner LateinAmerika AG, et al. | 10-03753-BRL |
| 87. | Fairfield Sentry Ltd. (In Liquidation), et al. v. E. Star Sicavf, et al. | 11-01597-BRL |
| 88. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Eduardo Fernandez de Valderrama Murillo, et al. | 11-01599-BRL |
| 89. | Fairfield Sentry Ltd. (In Liquidation), et al. v. EFG Bank, et al. | 10-03625-BRL |
| 90. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FIBI Bank (Switz.), et al. | 10-03779-BRL |
| 91. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank SA/NV, et al. | 11-01617-BRL |
| 92. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis SA/NV, et al. | 11-01614-BRL |
| 93. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis (Isle of Man) Nominees Ltd., et al. | 10-03776-BRL |
| 94. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS ABN AMRO Global Custody, et al. | 10-03504-BRL |
| 95. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/AEB Lux., et al. | 11-01254-BRL |
| 96. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/ANDBanc Andorra, et al. | 10-03632-BRL |
| 97. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Banque Degroof Bruxelles, et al. | 11-01569-BRL |
| 98. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/BBVA Zurich/Shares, et al. | 11-01600-BRL |
| 99. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Bewaarbedrijf Binckbank, et al. | 11-01469-BRL |
| 100. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/BK Hapoalim/B M Tel Aviv, et al. | 11-01467-BRL |
| 101. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/BBVA Miami, et al. | 10-03618-BRL |
| 102. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/CBESSA, et al. | 10-03756-BRL |
| 103. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Fortis Banque Lux., et al. | 11-01242-BRL |
| 104. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/HSBC Guyerzeller Zurich, et al. | 11-01594-BRL |
| 105. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/HSBC Private Banking Nom, et al. | 10-03629-BRL |
| 106. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/ING Lux, et al. | 11-01565-BRL |
| 107. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Israel Discount Bank, Ltd., Tel Aviv, et al. | 11-01610-BRL |
| 108. | Fairfield Sigma Ltd. (In Liquidation), et al. v. FS/LAB/AXA PM, et al. | 11-01460-BRL |
| 109. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS Mizrahi Tefahot Bank Ltd., et al. | 10-03512-BRL |
| 110. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/NBK Kuwait, et al. | 11-01260-BRL |
| 111. | Fairfield Sigma Ltd. (In Liquidation), et al. v. FS/NBP Titres, et al. | 11-01619-BRL |
| 112. | Fairfield Sigma Ltd. (In Liquidation), et al. v. FS Oddo & Cie, et al. | 10-03621-BRL |
| 113. | Fairfield Sigma Ltd. (In Liquidation), et al. v. FS/Procap/Bryan Garnier, et al. | 11-01262-BRL |
| 114. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/SG Private Banking (Lugano-Svizzera) SA, et al. | 11-01566-BRL |
| 115. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS Stichting Stroeve Global Custody, et al. | 10-03867-BRL |
| 116. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Swedclient/IAM, et al. | 11-01253-BRL |
| 117. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fund Nominees Ltd., et al. | 10-03525-BRL |
| 118. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Global Fund Porvenir, et al. | 11-01567-BRL |
| 119. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Grand Cathay Sec. (H.K.) Ltd., et al. | 11-01462-BRL |
| 120. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hambros Guernsey Nominees, et al. | 10-03799-BRL |
| 121. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hansard Europe Ltd., et al. | 10-04238-BRL |
| 122. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Inst. Trust Srvs. (Asia) Ltd., et al. | 10-03619-BRL |
| 123. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Guernsey) Ltd., et al. | 10-03631-BRL |
| 124. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Suisse) S.A., et al. | 10-03633-BRL |
| 125. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Sec. Servs. (Lux.) S.A., et al. | 10-03630-BRL |
| 126. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hsu, et al. | 11-01247-BRL |
| 127. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Huang, et al. | 11-01255-BRL |
| 128. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Huang Long-Yin, et al. | 11-01465-BRL |

## EXHIBIT G

### Fairfield Redeemer Actions As Of May 9, 2011

| | Redeemer Actions Pending in the United States | |
|---|---|---|
| | **CASE NAME** | **DOCKET NO.** |
| 129. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hui-Liang Tsai And Chien-Hui Tu, et al. | 11-01466-BRL |
| 130. | Fairfield Sentry Ltd. (In Liquidation), et al. v. ING Bank (Suisse) S.A., et al. | 10-03801-BRL |
| 131. | Fairfield Sentry Ltd. (In Liquidation), et al. v. JP Morgan Sec. Ltd., et al. | 10-04092-BRL |
| 132. | Fairfield Sentry Ltd. (In Liquidation), et al. v. JP Morgan Trust Co. (Cayman) Ltd., et al. | 10-03785-BRL |
| 133. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Judith Cherwinka, et al. | 11-01592-BRL |
| 134. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Judith A. Hansen, et al. | 11-01593-BRL |
| 135. | Fairfield Sentry Ltd. (In Liquidation), et al. v. KB (CI) Nominees Ltd., et al. | 10-04240-BRL |
| 136. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Kefong Lee, et al. | 11-01596-BRL |
| 137. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Koch Inv. (UK) Co., et al. | 11-01606-BRL |
| 138. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Kookmin Bank, et al. | 10-03777-BRL |
| 139. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Korea Exch. Bank, et al. | 11-01486-BRL |
| 140. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Kredietbank S.A. Luxembourgeoise, et al. | 10-03868-BRL |
| 141. | Fairfield Sentry Ltd. (In Liquidation), et al. v. KWI, et al. | 11-01595-BRL |
| 142. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Lacroze, et al. | 10-03528-BRL |
| 143. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Leyden Dev., et al. | 11-01622-BRL |
| 144. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Lombard Odier Darier Hentsch & Cie, et al. | 10-03795-BRL |
| 145. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Lombardy Props. Ltd., et al. | 10-03521-BRL |
| 146. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Lung Yen Life Service Co. Ltd., et al. | 11-01608-BRL |
| 147. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Melguizo, et al. | 11-01607-BRL |
| 148. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Melrose Inv. Ltd., et al. | 11-01461-BRL |
| 149. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Meritz Fire & Marine Ins. Co. Ltd., et al. | 10-03507-BRL |
| 150. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch Bank (Suisse) S.A., et al. | 10-03788-BRL |
| 151. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch Int'l, et al. | 11-01463-BRL |
| 152. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al. | 10-03516-BRL |
| 153. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Mint Iversiones Sicav S.A., et al. | 11-01605-BRL |
| 154. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Mirabaud & Cie, et al. | 11-01257-BRL |
| 155. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Monte Paschi Ir. Ltd., et al. | 10-03791-BRL |
| 156. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Multi-Strategy Fund Ltd., et al. | 11-01576-BRL |
| 157. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Natexis Banques Populaires, et al. | 10-04094-BRL |
| 158. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Natixis f/k/a IXIS Corporate And Investment Bank, et al. | 11-01464-BRL |
| 159. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Natixis Private Banking Int'l, et al. | 10-03864-BRL |
| 160. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Neue Bank AG, et al. | 10-03519-BRL |
| 161. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Nihon Unicom Corp., et al. | 11-01261-BRL |
| 162. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Nomura Int'l PLC, et al. | 10-03793-BRL |
| 163. | Fairfield Sentry Ltd. (In Liquidation), et al. v. N. Navigation Am. Inc., et al. | 10-03781-BRL |
| 164. | Fairfield Sentry Ltd. (In Liquidation), et al. v. NYROY, Royal Bank of Canada, et al. | 11-01578-BRL |
| 165. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Parson Finance Panama S.A., et al. | 11-01580-BRL |
| 166. | Fairfield Sentry Ltd. (In Liquidation), et al. v. PFPC Bank Ltd., et al. | 11-01604-BRL |
| 167. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Pictet & Cie, et al. | 10-03764-BRL |
| 168. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Pleasant T. Rowland Found., Inc. et al. | 11-01613-BRL |
| 169. | Fairfield Sentry Ltd. (In Liquidation), et al. v. POBT Bank & Trust Ltd., et al. | 11-01248-BRL |
| 170. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Premier Advisors Fund Offshore Ltd., et al. | 11-01609-BRL |
| 171. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Presnow Ltd., et al. | 11-01620-BRL |

# EXHIBIT G

## Fairfield Redeemer Actions As Of May 9, 2011

| | Redeemer Actions Pending in the United States | |
|---|---|---|
| | **CASE NAME** | **DOCKET NO.** |
| 172. | Fairfield Sentry Ltd. (In Liquidation), et al. v. PRS Inv. Strategies Fund Class 4E, et al. | 10-04101-BRL |
| 173. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Rahn & Bodmer Banquiers, et al. | 11-01581-BRL |
| 174. | Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Dominion Sec. Sub A/C, et al. | 10-03502-BRL |
| 175. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Robinson & Co., et al. | 10-03628-BRL |
| 176. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada (Asia) Ltd., et al. | 11-01582-BRL |
| 177. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada (Suisse), et al. | 10-04087-BRL |
| 178. | Fairfield Sigma Ltd. (In Liquidation), et al. v. S. Coop Irizar, et al. | 11-01570-BRL |
| 179. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Safra Nat'l Bank of N.Y., et al. | 10-03761-BRL |
| 180. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Sanpaolo Banca Dell' Adriatico S.P.A., et al. | 11-01615-BRL |
| 181. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Schroder & Co. (Asia) Ltd., et al. | 10-03508-BRL |
| 182. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Schroder & Co. Bank AG, et al. | 11-01249-BRL |
| 183. | Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) S.A., et al. | 10-03786-BRL |
| 184. | Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) S.A., et al. | 10-03595-BRL |
| 185. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Sherli Elghanian Krayem, et al. | 10-03614-BRL |
| 186. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Six Sis AG, et al. | 10-03869-BRL |
| 187. | Fairfield Sentry Ltd. (In Liquidation), et al. v. SNS Global Custody B.V., et al. | 10-03757-BRL |
| 188. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Societe Generale Bank & Trust (Lux.), et al. | 11-01584-BRL |
| 189. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Strina, et al. | 10-03798-BRL |
| 190. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Sumitomo Banking & Trust Co. Ltd., et al. | 10-03863-BRL |
| 191. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Swedbank, et al. | 11-01586-BRL |
| 192. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Tercas – Cassa di Risparmio della Provincia di Teramo S.P.A., et al. | 10-03503-BRL |
| 193. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al. | 10-03496-BRL |
| 194. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Torshen, et al. | 10-03866-BRL |
| 195. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Tsao, et al. | 11-01468-BRL |
| 196. | Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS AG N.Y., et al. | 10-03780-BRL |
| 197. | Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Servs. (Cayman) Ltd., et al. | 10-04095-BRL |
| 198. | Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Servs. (Cayman) Ltd. Ref Greenlake Arbitrage Fund Ltd., et al. | 10-03758-BRL |
| 199. | Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Servs. (Ir.) Ltd., et al. | 11-01258-BRL |
| 200. | Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Lux. SA, et al. | 11-01250-BRL |
| 201. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Union USD Global Arbitrage A Fund, et al. | 10-03506-BRL |
| 202. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Vontobel Asset Mgmt. Inc., et al. | 10-03540-BRL |
| 203. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Wall Street Sec. S.A., et al. | 10-03778-BRL |
| 204. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Weston Sec. Ltd., et al. | 10-03784-BRL |
| 205. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Woori Bank, et al. | 11-01616-BRL |
| 206. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Yuanta Asset Mgmt. (H.K.) Ltd., et al. | 11-01588-BRL |
| 207. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Zayed, et al. | 10-03790-BRL |
| 208. | Fairfield Sentry Ltd. (In Liquidation), et al. v. ZCM Asset Holding Co. (Berm.) Ltd., et al. | 10-03792-BRL |
| 209. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Mkts. Co., et al. | 10-03634-BRL |

## EXHIBIT G

### Fairfield Redeemer Actions As Of May 9, 2011

| Redeemer Actions Pending in the British Virgin Islands | | |
|---|---|---|
| | **CASE NAME** | **CLAIM NO.** |
| 1. | Fairfield Sentry Limited (In Liquidation) v. Alfredo Migani & Others | BVI HC (COM) 357/2009 |
| 2. | Fairfield Sentry Limited (In Liquidation) v. Arbitral Finance Inc. & Others | BVI HC (COM) 15/2010 |
| 3. | Fairfield Sentry Limited (In Liquidation) v. Atlantic Alternative Fund | BVI HC (COM) 10/2011 |
| 4. | Fairfield Sentry Limited (In Liquidation) v. Banco General SA/Banca Privata & Others | BVI HC (COM) 404/2009 |
| 5. | Fairfield Sentry Limited (In Liquidation) v. Bank Julius Baer & Co. Ltd. & Others | BVI HC (COM) 425/2009 |
| 6. | Fairfield Sentry Limited (In Liquidation) v. Bank Julius Baer & Co. Ltd. & Others | BVI HC (COM) 5/2010 |
| 7. | Fairfield Sentry Limited (In Liquidation) v. Bank Julius Baer & Co. & Others | BVI HC (COM) 30/2010 |
| 8. | Fairfield Lambda Limited (In Liquidation) v. Credit Suisse London Nominees Ltd | BVI HC (COM) 29/2011 |
| 9. | Fairfield Sentry Limited (In Liquidation) v. Credit Suisse London Nominees Ltd | BVI HC (COM) 20/2011 |
| 10. | Fairfield Sigma Limited (In Liquidation) v. Credit Suisse London Nominees Ltd | BVI HC (COM) 28/2011 |
| 11. | Fairfield Sentry Limited (In Liquidation) v. FirstRand Nominees Limited | BVI HC (COM) 18/2011 |
| 12. | Fairfield Sentry Limited (In Liquidation) v. Grosvenor Balanced Growth Fund Ltd | BVI HC (COM) 22/2011 |
| 13. | Fairfield Sentry Limited (In Liquidation) v. Guernroy Ltd | BVI HC (COM) 45/2011 |
| 14. | Fairfield Sentry Limited (In Liquidation) v. Kalismera Ventures Corp | BVI HC (COM) 39/2011 |
| 15. | Fairfield Sentry Limited (In Liquidation) v. Knightsbridge (USD) Fund Ltd | BVI HC (COM) 37/2011 |
| 16. | Fairfield Sigma Limited (In Liquidation) v. Loewen Global Futures Fund | BVI HC (COM) 16/2011 |
| 17. | Fairfield Sentry Limited (In Liquidation) v. Martello Nominees Limited | BVI HC (COM) 19/2011 |
| 18. | Fairfield Sentry Limited (In Liquidation) v. Murdoch & Company | BVI HC (COM) 43/2011 |
| 19. | Fairfield Sentry Limited (In Liquidation) v. Quilvest Finance Ltd | BVI HC (COM) 38/2011 |
| 20. | Fairfield Sentry Limited (In Liquidation) v. SICO Limited | BVI HC (COM) 40/2011 |
| 21. | Fairfield Sentry Limited (In Liquidation) v. Trincastar Corp | BVI HC (COM) 9/2011 |
| 22. | Fairfield Sentry Limited (In Liquidation) v. Vance Enterprises | BVI HC (COM) 21/2011 |
| 23. | Fairfield Sentry Limited (In Liquidation) v. Wise Global Fund Ltd. | BVI HC (COM) 153/2010 |

## EXHIBIT G

**Fairfield Redeemer Actions As Of May 9, 2011**

| | Redeemer Actions Pending in the Cayman Islands | |
|---|---|---|
| | **CASE NAME** | **CLAIM NO.** |
| 1. | Fairfield Sentry Limited (In Liquidation) v. Atlantic Security Bank | FSD 42 of 2011 |
| 2. | Fairfield Sentry Limited (In Liquidation) v. Orbita Capital Return Strategy Limited | FSD 28 of 2011 |
| 3. | Fairfield Sentry Limited (In Liquidation) v. Westport Capital Investments | FSD 12 of 2011 |
| 4. | Fairfield Sigma Limited (In Liquidation) v. Westport Capital Investments | FSD 27 of 2011 |

## EXHIBIT H

## DESIGNATED SUBSEQUENT TRANSFEREES

Arden Asset Management Inc.

Banco Bilbao Vizcaya Argentaria, S.A.

Citibank, N.A.

Citibank North America, Inc.

Citigroup Global Markets Limited

HSBC Bank Bermuda Limited

HSBC Bank (Cayman) Limited

HSBC Bank PLC

HSBC Bank USA, N.A.

HSBC Fund Services (Luxembourg) S.A.

HSBC Holdings PLC

HSBC Institutional Trust Services (Bermuda) Limited

HSBC Institutional Trust Services (Ireland) Limited

HSBC Private Bank (Suisse) S.A.

HSBC Private Banking Holdings (Suisse) S.A.

HSBC Securities Services (Bermuda) Limited

HSBC Securities Services (Ireland) Limited

HSBC Securities Services (Luxembourg) S.A.

Merrill Lynch International & Co. C.V.

Natixis

Natixis Corporate & Investment Bank f/n/a Ixis Corporate & Investment Bank

Natixis Financial Products, Inc.

Nomura Bank International PLC

Tensyr Limited

UBS AG

UBS Fund Services (Luxembourg) S.A.

UBS Luxembourg S.A.

UBS Third Party Management Company S.A.

## EXHIBIT I

### SEPARATELY TREATED COMMON DEFENDANTS

Banco Atlantico Bank & Trust Ltd. (Bahamas)

BNP Paribas Arbitrage, SNC

BNP Paribas Luxembourg SA

BNP Paribas Private Bank And Trust Cayman Ltd.

BNP Paribas Securities Nominees Ltd. a/k/a Harrier Holdings Ltd.

BNP Paribas Investment Partners Luxembourg S.A. (f/k/a BNP Paribas Asset Management Luxembourg S.A., f/k/a Parvest Investment Management Company S.A.)

BGL BNP Paribas S.A.

BNP Paribas Securities Services S.A.

EFG Bank

Pictet et Cie

Pictet Asset Management SA

Pictet Capital SA

Pictet Funds SA

Pictet International Trust Corporation

Pictet North America Advisors SA

Pictet Investment SA