**Hearing Date: July 13, 2022, 10:00 a.m.**
**Objections Date: April 19, 2022**
**Reply Date: May 19, 2022**

KELLNER HERLIHY GETTY & FRIEDMAN, LLP
Douglas A. Kellner, Esq.
470 Park Avenue South, 7th Floor
New York, New York 10016-6819
Telephone:  (212) 889-2121
Email: dak@khgflaw.com

*Attorneys for Parson Finance Panama S,A,*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>PARSON FINANCE PANAMA S.A.,<br><br>Defendant. | Adv. Pro. No. 11-02542 (CGM) |

**MEMORANDUM OF LAW OF PARSON FINANCE PANAMA S.A.**
**IN SUPPORT OF ITS MOTION TO DISMISS**

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

     A.   Background....................................................................................................4

     B.   The Trustee's Actions Against the Fairfield Funds .....................................5

     C.   The Actions Brought by the Fairfield Liquidators.......................................6

     D.   The Present Complaint against Parson Finance.............................................7

         i.   Overview of the Trustee's Claims...................................................7

         ii.   The Trustee's Insufficient Jurisdictional Allegations .....................9

     E.   The Trustee's Complaints Against Other Alleged Subsequent
         Transferees....................................................................................................9

ARGUMENT .........................................................................................................................10

I.   THE TRUSTEE CANNOT ESTABLISH PERSONAL JURISDICTION
    OVER PARSON FINANCE .........................................................................................10

     A.   The Complaint Fails to Allege Connections of the Subsequent
         Transfer to the United States .....................................................................11

     B.   The Subscription Agreement Cannot Subject Parson Finance to this
         Court's Personal Jurisdiction......................................................................13

     C.   The Exercise of Personal Jurisdiction over Parson Finance Would Not
         Comport with Due Process ..........................................................................16

II.   THE COMPLAINT FAILS TO PLEAD ADEQUATELY THAT PARSON
     FINANCE RECEIVED CUSTOMER PROPERTY ......................................................17

     A.   The Trustee Has Not Plausibly Alleged That Any of the Alleged
         Subsequent Transfers Contain Customer Property.................................17

     B.   The Trustee's Complaint Seeks to Recover Transfers Made by
         Fairfield Sentry at Times When the Trustee Alleges There was no
         Money Left From BLMIS ..........................................................................22

III.   RECOVERY OF ALLEGED SUBSEQUENT TRANSFERS OF INITIAL
     TRANSFERS MADE OUTSIDE THE TWO-YEAR LOOKBACK IS
     BARRED BY THE SAFE HARBOR OF 11 U.S.C. § 546(E) .........................................25

i

A.    The Alleged Initial Transfers Were Made by, to, or for the Benefit of,
a Covered Entity ................................................................................26

1.    The Alleged Initial Transfers Were Made by a Stockbroker.........................26

2.    The Alleged Initial Transfers Were Made to a Financial
Institution..............................................................................27

B.    The Alleged Initial Transfers Were Settlement Payments and Made
"in Connection With" a Securities Contract.........................................27

CONCLUSION ........................................................................................31

## TABLE OF AUTHORITIES

Page(s)

Cases

*Al Rushaid v. Pictet & Cie,*
28 N.Y.3d 316 (2016)................................................................................................................14

*Arista Records, LLC v. Doe 3,*
604 F.3d 110 (2d Cir. 2010) ....................................................................................................16

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.,*
480 U.S. 102 (1987) ................................................................................................................13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................................18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..........................................................................................................18, 22

*Best Van Lines, Inc. v. Walker,*
490 F.3d 239 (2d Cir. 2007) ....................................................................................................10

*Burger King v. Rudzewicz,*
471 U.S. 462 (1985) ................................................................................................................17

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,*
651 F.3d 329 (2d Cir. 2011) ....................................................................................................30

*Daimler AG v. Bauman,*
571 U.S. 117 (2014) ................................................................................................................10

*DiStefano v. Carozzi N. Am., Inc.,*
286 F.3d 81 (2d Cir. 2001) ......................................................................................................10

*Fairfield Sentry Limited (In Liquidation) v. Citibank NA London,*
No. 19-cv-03911-VSB 24 (S.D.N.Y. July 21, 2021)..........................................................11, 12

*Fairfield Sentry Ltd. (In Liquidation) v. Migani,*
[2014] UKPC 9....................................................................................................................6, 28

Hau Yin To v. HSBC Holdings PLC,
No. 15CV3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ......................................................15

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
466 U.S. 408 (1984) ................................................................................................................11

*Hill v. HSBC Bank plc*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016) ..........................................................................15

*HSBC Holdings PLC v. Picard*,
140 S. Ct. 2824 (2020) ..........................................................................................4

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*,
773 F.3d 411, (2d Cir. 2014) ...........................................................................passim

*In re Bernard L. Madoff Inv. Sec. LLC*,
12 F.4th 171, (2d Cir. 2021) ........................................................................................25

*In re Bernard L. Madoff Inv. Sec. LLC*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..........................................................................21

*In re Bernard L. Madoff Inv. Sec. LLC*,
525 B.R. 871 (Bankr. S.D.N.Y. 2015) ..........................................................................15

*In re Bernard L. Madoff Inv. Sec. LLC*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..........................................................................18

*In re Fairfield Sentry Ltd.*,
596 B.R. 275 (Bankr. S.D.N.Y. 2018) ............................................................................7

*In re Fairfield Sentry Ltd.*,
No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ...............12, 13, 14

*In re Fairfield Sentry Ltd.*,
No. 10-13164, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) .....................7, 27

*In re Khan*,
No. 10-46901, 2014 WL 4956676 (Bankr. E.D.N.Y. Sept. 30, 2014) .........................23

*In re Lyondell Chem. Co.*,
543 B.R. 127 (Bankr. S.D.N.Y. 2016) ..........................................................................10

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
917 F.3d 85 (2d Cir. 2019) .............................................................................................4

*In re Trib. Co. Fraudulent Conv. Litig.*,
10 F.4th 147 (2d Cir. 2021) ..........................................................................................28

*In re Tribune Co. Fraudulent Conv. Litig.*,
946 F.3d 66 (2d Cir. 2019) ................................................................................3, 25, 28

*Kennedy v. Mondelez Glob. LLC*,
No. 19-CV-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020) ...................................24

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ...................................................................................4

*Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*,
No. 20 CIV. 9993, 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021) ................................13

*New Hampshire v. Maine*,
532 U.S. 742 (2001) .............................................................................................27

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016) ................................................................................10

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ..................................................................................21

*Pyskaty v. Wide World of Cars, LLC*,
856 F.3d 216 (2d Cir. 2017) ..................................................................................16

*Rose v. Goldman, Sachs & Co.*,
163 F. Supp. 2d 238 (S.D.N.Y. 2001) .....................................................................16

*Sapia v. Home Box Off., Inc.*,
No. 18 CIV. 1317, 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ...............................22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
476 B.R. 715, 719 (S.D.N.Y. 2012) ........................................................................26

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) .....................................................................17

*See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
337 B.R. 791 (Bankr. S.D.N.Y. 2005) ......................................................................31

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*,
No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ..............................4

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018) .............................................................................11, 14

*Sullivan v. Kodsi*,
373 F. Supp. 2d 302 (S.D.N.Y. 2005) .....................................................................18

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .............................................................................................27

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ...............................................................................................4

*Verhagen v. Saperstein,*
No. 93 CIV. 7441, 1994 WL 330055 (S.D.N.Y. July 11, 1994) .................................................22

*Walden v. Fiore,*
571 U.S. 277 (2014) ...........................................................................................12, 13, 15, 17

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) ...............................................................................................................16

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC,*
No. 19-CV-3444, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ..........................................10, 14

<u>Statutes</u>

11 U.S.C. § 101(22)(A) ...............................................................................................................27

11 U.S.C. § 101(53A) ..................................................................................................................26

11 U.S.C. § 546(e) .............................................................................................................passim

11 U.S.C. § 548(a)(1)(A) .......................................................................................................25, 31

11 U.S.C. § 550 ............................................................................................................................17

11 U.S.C. § 550(a) ................................................................................................................23, 25

11 U.S.C. § 741(7) .......................................................................................................................31

11 U.S.C. § 741(7)(A)(i) ..............................................................................................................28

11 U.S.C. § 741(8) .......................................................................................................................31

15 U.S.C. § 78fff-2(c)(3) .......................................................................................................17, 20

<u>Rules</u>

Fed. R. Civ. P. 8(a)(2) .................................................................................................................22

Federal Rule of Bankruptcy Procedure 7004 ...............................................................................10

N.Y. C.P.L.R. § 302 (McKinney 2001) .......................................................................................10

Defendant Parson Finance Panama S.A. ("Parson Finance") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint of Irving Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

The Trustee asserts a right to "recover" every dollar ever received by anyone from any party with any connection to the Ponzi scheme run by Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Madoff"). The Trustee's Complaint flouts fundamental principles of jurisdictional Due Process, by seeking to sue a foreign financial company like Parson Finance, which engaged in no transactions in the United States, merely because the money it invested in a non-U.S. fund was (possibly) ultimately invested in the United States. The Trustee also ignores principles of basic arithmetic, by improperly suing Parson Finance for the recovery of a so-called "subsequent transfer" it received from Fairfield Sentry, when he simultaneously alleges that Fairfield Sentry transferred to investors and others approximately $2 billion more of BLMIS customer property than Fairfield Sentry ever received from BLMIS in alleged initial transfers. Further, the Trustee disregards the statutory safe harbor Congress created to promote certainty and finality in the securities markets, which bars the bulk of his subsequent transfer claims. The Trustee's claims are fatally flawed and should be dismissed.

First, the Complaint's barebones allegations do not make out a prima facie case for personal jurisdiction over Parson Finance. There are no allegations suggesting that the alleged subsequent transfer redemption had any connection to the United States. Indeed, as the liquidators for the Fairfield Funds have made clear, the redemption occurred entirely outside the

United States.  None of the Complaint's other vague and speculative allegations supports

jurisdiction over Parson Finance for the Trustee's claims.

Second, basic arithmetic dictates that recoverable subsequent transfers from Fairfield

Sentry cannot exceed the approximately *$3 billion* in initial transfers BLMIS made to Fairfield

Sentry.  In this and other proceedings, the Trustee nonetheless seeks to recover approximately *$5*

*billion* in claims from defendants that allegedly redeemed shares from Fairfield Sentry or

received other transfers from Fairfield Sentry.  That massive disparity alone renders the Trustee's

subsequent transfer claims entirely implausible.

The Complaint alleges that Fairfield Sentry made only a single transfer to Parson Finance

on April 14, 2005.  Yet the allegations in other consolidated proceedings claim that Fairfield

Sentry had already transferred all of the funds Fairfield Sentry received from BLMIS to other

recipients. Consequently, any transfer to Parson Finance could not possibly have included

BLMIS customer funds.  Such allegations violate the most basic pleading standards, which

demand that the Trustee tie all subsequent transfers he seeks to recover to an initial transfer and

that those ties be plausible.  The Trustee's complaint does not identify any particular transfer

from BLMIS to Fairfield Sentry that could have been the basis for a the alleged subsequent

transfer from Fairfield Sentry to Parson Finance on April 14, 2005. The Trustee's pleading

failures are even more striking because, for over a decade, the Trustee has had the very records

from Fairfield Sentry that would demonstrate which subsequent transfers contain money from

Madoff, if any – and which did not.  That the Trustee has nonetheless put forth such impossible

allegations prevents Parson Finance from evaluating the claims against it for purposes of

defending or settling the litigation and requires that the Complaint be dismissed.

2

Third, Congress recognized the importance of certainty, speed and finality in securities transactions and thus created the safe harbor of 11 U.S.C. § 546(e). *See In re Tribune Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 90 (2d Cir. 2019), *cert. denied,* 141 S. Ct. 2552 (2021) ("*Tribune I*") ("Unwinding settled securities transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and stability are necessary to attract capital.").  As the Second Circuit has explained, "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411, 420 (2d Cir. 2014), *cert. denied*, 576 U.S. 1044 (2015) (*"Fishman"*) (citation omitted).  Here, the alleged subsequent transfers that the Trustee seeks to recover were, according to his own allegations, settlement payments made by, to, or for the benefit of "covered entities" in connection with securities contracts.  Despite this, and despite no allegation that Parson Finance had any knowledge that Madoff was running a Ponzi scheme, the Trustee seeks to recover transfers as far back as 2003, which, if allowed, would lead to the very disruption of the securities market that the statute was designed to avoid.

# STATEMENT OF FACTS[1]

## A.    Background

From the 1990s through BLMIS's collapse in December 2008, Fairfield Sentry sold

shares directly to foreign investors.  *See* First Amended Complaint (the "Trustee's Fairfield

Amended Complaint"), *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. 09-01239 (Bankr. S.D.N.Y.)

(the "Fairfield Action"), Dkt. No. 23 ¶¶ 32, 33 (Kellner Dec. Ex. 2). Fairfield Sentry in turn,

invested with BLMIS.  *See id.* ¶ 22; Compl. ¶ 2.  This action is one of more than six dozen

proceedings in which the Trustee seeks to recover from the defendants alleged payments they

received when they redeemed shares in Fairfield Sentry; here, the Trustee seeks to recover

$11,089,081 that Parson Finance received in a redemption from Fairfield Sentry, which occurred

on April 14, 2005.  Compl. ¶¶ 43-46.[2]

The Trustee's claim is best understood in the context of related proceedings, some

initiated by the Trustee, and some by the Fairfield Liquidators, which are described briefly

below.

---

[1] These facts are taken from allegations in the Complaint – which Defendant neither admits nor
concedes – and documents incorporated by reference therein, as well as the Trustee's pleadings
in other Madoff proceedings and other items of which the Court may take judicial notice.  *See
SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789,
2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021)) (on motion under Rule 12(b)(6),
"courts must consider… matters of which a court may take judicial notice", quoting *Tellabs, Inc.
v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).  Here, the Court may take judicial notice
of the Trustee's pleadings in other adversary proceedings, and Parson Finance respectfully
requests that it do so.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)
("courts routinely take judicial notice of documents filed in other courts, again not for the truth
of the matters asserted in other litigation, but rather to establish the fact of such litigation and
related filings").

[2] While the Complaint against Parson Finance was initially dismissed under principles of comity,
it was subsequently reinstated following appeal.  *See In re Picard, Tr. for Liquidation of Bernard
L. Madoff Inv. Sec. LLC*, 917 F.3d 85 (2d Cir. 2019), *cert. denied sub. nom. HSBC Holdings PLC
v. Picard*, 140 S. Ct. 2824 (2020).

4

B.    The Trustee's Actions Against the Fairfield Funds

Madoff's massive fraud was revealed in December 2008.  On or about May 18, 2009, the

Trustee commenced an action against the Fairfield Funds and others seeking the avoidance and

recovery of over $3.5 billion of initial transfers they received from BLMIS.  Trustee's Twenty-

Sixth Interim Report for the Period April 1, 2021 through September 30, 2021, *In re Bernard L.*

*Madoff Inv. Secs. LLC,* Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.), Dkt. No. 20821 ¶ 167.  On

July 20, 2010, the Trustee filed the Trustee's Fairfield Amended Complaint in which he named

additional defendants, including entities and individuals (the "FGG Defendants") associated with

the Fairfield Greenwich Group ("FGG"), which formed, managed, and marketed the Fairfield

Funds, alleging that BLMIS made approximately $3 billion in initial transfers to Fairfield Sentry

during the six-year look-back period, from December 11, 2002 to December 11, 2008.  Trustee's

Fairfield Amended Complaint, Fairfield Action, Dkt. No. 23 ¶ 536 (Kellner Decl. Ex. 2).

On May 9, 2011, the Trustee settled with the Fairfield Liquidators.  *See* Settlement

Agreement (the "Fairfield Settlement"), Fairfield Action, Dkt. No. 69-2 (Kellner Dec. Ex. 3).

On July 13, 2011, this Court entered consent judgments in favor of the Trustee against Fairfield

Sentry for $3.054 billion (Consent Judgment, Fairfield Action, Dkt. No. 109), Sigma for $752.3

million (Consent Judgment, Fairfield Action, Dkt. No. 110) and Lambda for $52.9 million

(Consent Judgment, Fairfield Action, Dkt. No. 108).  In the Fairfield Settlement, the Trustee and

the Fairfield Liquidators "each agree[d] to provide reasonable access to the other's documents,

data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims."

Fairfield Settlement, Fairfield Action, Dkt. No. 69-2 ¶ 14 (Kellner Dec. Ex. 3).  "Sharing

Claims" includes the present action, as well as the Fairfield Liquidators' actions against Parson

Finance.  *Id.* ¶¶ 4, 7, 11.  The Trustee and the Fairfield Liquidators also each agreed to provide

the other with "reasonable cooperation and assistance … in connection with the prosecution of

the Sharing Claims". *Id.* ¶ 14. Thus, the Trustee has had access to Fairfield's documents and

cooperation (including, presumably, the documents pursuant to which the Trustee brought many

of the Fairfield Sentry Redeemer Actions, including this one filed in 2011) since 2011.

On August 28, 2020, the Trustee filed a second amended complaint in the Fairfield

Action (Second Amended Complaint, Fairfield Action, Dkt. No. 286 (the "Second Amended

Complaint")), seeking to recover, as BLMIS customer property, *inter alia*, approximately $1

billion in amounts allegedly paid by Fairfield Sentry to certain FGG Defendants (*i.e.*, one-third

of the total amount of customer property BLMIS allegedly transferred to Fairfield Sentry). *See*

Exhibits 8, 10, 12, 13, 14 and 21 to the Second Amended Complaint, Fairfield Action, Dkt. Nos.

286-8, 286-10, 286-12, 286-13, 286-14, 286-21 (Kellner Decl. Ex. 4).

### C.    The Actions Brought by the Fairfield Liquidators

Shortly after Madoff's fraud was revealed, the Fairfield Funds entered liquidation

proceedings before the Eastern Caribbean Supreme Court in the High Court of Justice of the

Virgin Islands. Fairfield Settlement, Fairfield Action, Dkt. No. 69-2, at 2-3. The Fairfield

Liquidators commenced actions in the British Virgin Islands ("BVI") against a number of the

Fairfield Funds' alleged investors, including Parson Finance, seeking repayment of redemptions

payments made by the Funds to these investors prior to BLMIS's collapse. *See* Exhibit G to the

Fairfield Settlement, Fairfield Action, Dkt. No. 69-9, at 6-7; *see also Fairfield Sentry Ltd. (In*

*Liquidation) v. Migani*, [2014] UKPC 9 ("*Migani*") (*available at*

https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf). The Fairfield Liquidators

discontinued their claims in the BVI litigation following a final appellate decision in April 2014

issued by the United Kingdom Privy council in favor of defendants. *See Migani*.

Starting in or about April 2010, the Fairfield Liquidators had separately commenced

actions in New York against hundreds of the Funds' shareholders, including many that had been

sued unsuccessfully in the BVI.  *See* Exhibit G to the Fairfield Settlement, Fairfield Action, Dkt. No. 69-9 (listing 209 actions seeking to recover redemption payments against Fairfield Sentry investors brought by the Fairfield Liquidators and pending as of May 11, 2009).[3]

Pursuant to a series of decisions by this Court (which are currently subject to appeal), all of the Fairfield Liquidators' New York claims have been dismissed except for constructive trust claims against the so-called "Knowledge Defendants".  *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 282, 305, 316 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"); *In re Fairfield Sentry Ltd.*, No. 10-13164, 2020 WL 7345988, at *22-*35 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*").  Thus, Fairfield Sentry's claim against Parson Finance has been dismissed, subject to the pending appeal. (Adv. Pro. 11-01580).

### D.   The Present Complaint against Parson Finance

#### i.   Overview of the Trustee's Claims

The Trustee brings this proceeding pursuant to his statutory authority under the Securities Investor Protection Act ("SIPA").  Compl. ¶ 4.  The Complaint alleges that Parson Finance is a limited company domiciled in Panama. Compl. ¶ 20.  According to the Complaint, Parson Finance received from Fairfield Sentry a single redemption in the amount of $11,089,081 on April 15, 2004, which the Trustee characterizes as a supposed "subsequent transfer" of BLMIS "customer property." The Trustee invokes Section 550 of the Bankruptcy Code and Section 278 of the New York Debtor & Creditor Law  ("NYDCL").   Compl. ¶ 34.

---

[3] While there is substantial overlap, these actions by the Fairfield Liquidators also include defendants who are not being sued by the Trustee.  *See, e.g.*, Third Amended Complaint, *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Piguet & Cie S.A.*, Adv. Pro. No. 10-03514 (Bankr. S.D.N.Y.), Dkt. No. 72.

Transfers from Fairfield Sentry. The Trustee alleges that BLMIS made numerous initial transfers over six years to Fairfield Sentry (Compl. Ex. B) totaling "approximately $3 billion" (*id.* ¶ 34) and that Fairfield Sentry transferred $11,089,081to Parson Finance on April 14, 2005. (*id.* ¶ 39). The Trustee does not identify which portions of these initial transfers from BLMIS to Fairfield Sentry were supposedly subsequently transferred to Parson Finance as redemptions— not a date, not an amount, not anything from which Parson Finance or this Court might discern the supposed source of the funds that were transferred from Fairfield Sentry to Parson Finance. Instead, the Trustee summarily alleges:

> 34.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers"). . . .
>
> 35.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). . . .
>
> 36.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). . . .
>
> 39.    Based on the Trustee's investigation to date, approximately $11,089,081of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Parson Finance (the "Fairfield Sentry Subsequent Transfers") . . . .

Compl. ¶¶ 34-36, 39.

Other than the conclusory statements set forth above, the Complaint utterly fails to identify which of the BLMIS initial transfers, if any, were the actual source of Fairfield Sentry's transfer to Parson Finance. As explained below, this pleading failure is dispositive, particularly because at the time he filed the Complaint, the Trustee long had access to the Fairfield Funds' records.

ii.    The Trustee's Insufficient Jurisdictional Allegations

The Trustee alleges two bases for personal jurisdiction over Parson Finance.  First, Parson Finance "purposely availed itself of the laws and protections of the United States and the state of New York by … knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry." Second, "Parson Finance entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction[.]" Neither is relevant to the supposed subsequent transfer that the Trustee seeks to recover.  The Complaint does not allege that the transfer that Parson Finance allegedly received from Fairfield Sentry had any connection whatsoever to the United States.  The Complaint is silent as to how the receipt of that transfer could subject Parson Finance to this Court's jurisdiction.

**E.    The Trustee's Complaints Against Other Alleged Subsequent Transferees**

Besides the claims in this action against Parson Finance, the Trustee also has filed approximately six dozen actions against other Fairfield Sentry investors.  In those actions, combined with the Trustee's action against Sigma and Lambda, the Trustee seeks to recover, in the aggregate, alleged subsequent transfers of BLMIS customer property totaling approximately $4 billion from defendants who allegedly received redemption payments from Fairfield Sentry. *See* Kellner Decl. Exs. 5, 6, ¶ 12.  And on top of that $4 billion in supposed "subsequent transfers", the Trustee also seeks to recover *another* approximately $1 billion in amounts paid by Fairfield Sentry to the FGG Defendants.  *See* Kellner Decl. Ex. 4, ¶ 13.  In short, the Trustee is trying to recover roughly $5 billion in alleged "subsequent transfers" that flowed out of Fairfield Sentry, even though he simultaneously alleges that BLMIS made initial transfers of only $3 billion that flowed into Fairfield Sentry.

9

## ARGUMENT

### I.   THE TRUSTEE CANNOT ESTABLISH PERSONAL JURISDICTION OVER PARSON FINANCE

The Trustee bears the burden of establishing that this Court has personal jurisdiction over Parson Finance. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The Complaint does not allege that the Court has general jurisdiction over Parson Finance, a Panamanian company with no operations in the United States and is not "at home" in the United States (*see* Compl. ¶ 20), so the Trustee must plead facts supporting the exercise of specific jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 136-40 (2014). To do so, under New York's long-arm statute,[4] the Trustee must satisfy two exacting pleading requirements: (1) Parson Finance must have transacted business within the state; and (2) the claims asserted must arise from that business activity. *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, No. 19-CV-3444, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). The Trustee also must demonstrate that the exercise of personal jurisdiction over Parson Finance "would comport with due process." *Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *3 (internal quotations omitted).

---

[4] The Trustee bases personal jurisdiction on New York's long-arm statute, N.Y. C.P.L.R. § 302 (McKinney 2001), and Federal Rule of Bankruptcy Procedure 7004. Compl. ¶ 8. Under Federal Rule of Bankruptcy Procedure 7004(f), the Trustee can establish personal jurisdiction by demonstrating sufficient minimum contacts with the United States as a whole. *See In re Lyondell Chem. Co.*, 543 B.R. 127, 138-39 (Bankr. S.D.N.Y. 2016). The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

A.    **The Complaint Fails to Allege Connections of the Subsequent Transfer to the United States**

The Fairfield Liquidators confirmed that virtually all of the same transfers the Trustee seeks to recover here allegedly occurred entirely outside of the United States:

> ***The redemption transfers at issue here were purely foreign***.  The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities).  ***[E]very relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States***.

Plaintiff-Appellants' Opening Brief for Second-Round Appeal ("Liquidators' Appeal"), *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-cv-03911-VSB 24 (S.D.N.Y. July 21, 2021), Dkt. No. 440, at 24 (emphasis added).  Because BLMIS did not transact any business with Parson Finance, the contacts that the Trustee cites and must rely upon are 100% derivative of the Fairfield Funds' contacts; if the Fairfield Liquidators cannot allege sufficient jurisdictional contacts with Parson Finance, neither can the Trustee.

The Trustee's alternate jurisdictional theory, that Parson Finance purposefully availed itself of the laws of New York by investing in the foreign Fairfield Funds, which in turn invested in BLMIS (Compl. ¶ 5), also fails.

*First*, the allegation that Parson Finance allegedly knew that non-U.S. fund Fairfield Sentry would invest in BLMIS does not give rise to this litigation and thus does not support jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on the relationship among the defendant, the forum, and the litigation").  The Trustee's claims do not focus on the decision to *invest* with Fairfield Sentry as

the basis for liability. *See In re Fairfield Sentry Ltd.,* No. 10-13164, 2018 WL 3756343, at *4-12 (Bankr. S.D.N.Y. Aug. 6, 2018) *("Fairfield I")* (subscription agreements irrelevant to claim not based on subscription). Instead, the Trustee's claim to recover the transfer Parson Finance received from Fairfield Sentry outside the United States relates to and arises out of those very transfers. *See, e.g.*, Compl. ¶¶ 55, 60. As the Fairfield Liquidators themselves maintain, every element of the transaction is "purely foreign." Liquidators' Appeal, *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-cv-03911-VSB 24 (S.D.N.Y. July 21, 2021), Dkt. No. 440, at 24.

*Second*, knowledge that the foreign Fairfield Funds would invest with BLMIS in New York is insufficient as a matter of law to support jurisdiction over Parson Finance. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Walden v. Fiore,* 571 U.S. 277, 284 (2014). In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada for an unlawful seizure of money in a Georgia airport. *Id*. at 288. The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over the police officer in Nevada. *Id*. at 289. As the Supreme Court explained, the foreseeability of a plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over the defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id*. Instead, "[t]he substantial connection … between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano*

12

*Cty.*, 480 U.S. 102, 112 (1987) (quotation omitted) (emphasis in original).  Even if true, the

Trustee's allegation that Parson Finance knew that the Fairfield Funds would invest with BLMIS

does not satisfy *Walden*, and it is insufficient to drag Parson Finance into a New York court.

Moreover, if the Trustee's theory were upheld, any investment that foreseeably found its way

into a United States asset would confer personal jurisdiction.  There is no precedent for such a

sweeping result that would flood United States courts with cases against parties with no United

States contacts.  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir.

2013) (noting foreseeability by itself is "insufficient" for the exercise of personal jurisdiction).

**B.    The Subscription Agreement Cannot Subject Parson Finance to this Court's Personal Jurisdiction**

The Trustee's jurisdictional theory that "Parson Finance entered into a subscription

agreement with Fairfield Sentry under which it submitted to New York jurisdiction" (Compl. ¶

5), is not applicable as to the Trustee claims against Parson Finance and has already been

rejected by this Court.

Any theory of jurisdiction predicated on the subscription agreement is not applicable

because the Trustee cannot invoke a forum selection clause in a contract to which he is a

stranger, to establish this Court's jurisdiction over the subsequent transfer claim that he seeks to

advance.  *See Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, No. 20 CIV.

9993, 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum

selection clause for a non-party plaintiff bringing claims outside of the clause's scope).

Additionally, the law of the case disposes of this theory of jurisdiction.  In the

Liquidators' Proceedings, this Court concluded that the execution of certain subscription

agreements, without more, did not subject the defendants—including Parson Finance—to

personal jurisdiction.  *Fairfield I*, 2018 WL 3756343, at *12.  Specifically, this Court held that

the New York choice of forum provisions in the subscription agreement were not applicable to

the disputes concerning subsequent transfers because the Fairfield Liquidators' claim is solely

based on redemptions and does not arise out of the subscription agreements. *Fairfield I*, 2018

WL 3756343, at *11 (adhering to the Privy Council's holding "that the Subscription Agreement

was irrelevant to actions to recover the inflated redemption payments").

The Trustee's remaining miscellaneous jurisdictional allegations, that Parson Finance

"sent a copy of the subscription agreement to FGG's New York city office, and wired funds to

Fairfield Sentry through a bank in New York," (Compl. ¶ 5), also fail because they are unrelated

to the Trustee's claims, and in any event, are insufficient.[5]  The Trustee does not allege facts

explaining how any of these alleged contacts purportedly give rise to his claims. Those claims

arise from the alleged subsequent transfers he seeks to recover; they do not arise from the

Subscription Agreement, investments in Fairfield Sentry, or alleged communications with FGG

account representatives. *See Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *5

(various contacts with New York insufficient to confer personal jurisdiction under Section

302(a)(1) where none gave rise to plaintiff's cause of action); *Al Rushaid v. Pictet & Cie*, 28

N.Y.3d 316, 323 n.4 (2016) (to establish jurisdiction, the cause of action must arise from the

very transactions that are relied upon to provide the contact with the forum).

Second, even if accepted as true, allegations that a foreign finance company sent

contracts or emails to New York or wired money through New York are insufficient to establish

that it was transacting business in New York or had minimum contacts with the U.S.  *See SPV*

*Osus Ltd.*, 882 F.3d at 345 (finding "handful of communications and transfer of funds . . . are

---

[5] In fact, the allegation is false and is refuted by the documentary exhibits to the declaration of
Parson Finance's president, Christian Verling.

insufficient to allow the exercise of specific personal jurisdiction over the [Foreign] Defendants"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding allegations that foreign defendants "communicated with and transmitted information and funds to and from BLMIS located in New York" were insufficient to "project" the foreign defendants into New York) (internal quotations omitted); *see also Walden*, 571 U.S. at 285 (instructing that the relevant analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").

Based on the Trustee's own statements made to this Court in a related action, the Trustee's limited allegations regarding Parson Finance's purported contacts with New York or the U.S. are lacking when compared with the allegations that this Court has found sufficient:

> This is not the *Hill* [*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016)] case or the *To* [*Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017)] case where there's a foreign plaintiff [as] a foreign administrator of a foreign feeder fund and nobody is present in New York but somebody presses a button and a transfer goes through some … account in New York. *These defendants are working in New York; they're marketing their leverage from New York; they're routing money in BNP Paribas New York accounts, not correspondent accounts, actual accounts. And all our claims arise from the activity that was here, Your Honor.*

Tr. March 9, 2018 Hr'g *SIPC v. BLMIS, LLC*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y.), Dkt. No. 137, at 56–57 (emphasis added). The Trustee has offered no such allegations regarding Parson Finance's contacts in New York or the United States from which his claims arise. *Cf. In re Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (the Trustee established *prima facie* that defendants had sufficient minimum contacts with the U.S. to support the exercise of jurisdiction where they entered into contracts with BLMIS, transferred money into their BLMIS accounts in New York, and withdrew money from their BLMIS accounts in New York).

15

Here, the Trustee alleges that Parson Finance invested in the foreign Fairfield Sentry

Fund and alleges no United States contacts with Parson Finance.  He does not allege that Parson

Finance entered into any contracts with BLMIS or maintained an account with BLMIS in New

York. The Complaint's miscellaneous jurisdictional allegations are also insufficient because the

Complaint does not allege any additional facts supporting these unsubstantiated allegations.

Conclusory allegations like this, based solely on "information and belief," (Compl. ¶ 5), are

inadequate as a matter of law.  *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d

Cir. 2017) (allegations based "upon information and belief" were entirely speculative where the

complaint contained no allegations of fact which, if true, would have supported such

allegations); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (a "conclusory

allegation on information and belief" is insufficient to make a claim plausible where the

complaint's factual allegations do not raise a right to relief above the speculative level); *Rose v.

Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (complaint with no specific

factual allegations to enable court to evaluate information and belief assertions failed to state a

claim).

### C.    The Exercise of Personal Jurisdiction over Parson Finance Would Not Comport with Due Process

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to

be consistent with due process.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980) ("The Due Process Clause … gives a degree of predictability to the legal system that

allows potential defendants to structure their primary conduct with some minimum assurances as

to where that conduct will and will not render them liable to suit.") (citation omitted).

As demonstrated above, the Trustee has not alleged that Parson Finance had any contacts

whatsoever with the United States related to the Trustee's claims to recover the alleged

16

subsequent transfers.  Accordingly, the exercise of personal jurisdiction over Parson Finance

would not comport with due process.  *See Walden*, 571 U.S. at 286 ("Due Process requires that a

defendant be haled into court in a forum State based on his own affiliation with the State, not

based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other

persons affiliated with the State."), quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475

(1985).[6]

## II.    THE COMPLAINT FAILS TO PLEAD ADEQUATELY THAT PARSON FINANCE RECEIVED CUSTOMER PROPERTY

### A.    The Trustee Has Not Plausibly Alleged That Any of the Alleged Subsequent Transfers Contain Customer Property

In order to state a claim under SIPA, the Trustee must plausibly allege that the

redemption payment Parson Finance received was a subsequent transfer of BLMIS customer

property that had been fraudulently transferred from BLMIS to Fairfield Sentry.  *See* 15 U.S.C. §

78fff-2(c)(3) ("the trustee may recover any property transferred by the debtor which, except for

such transfer, would have been customer property if and to the extent that such transfer is

voidable or void under the provisions of title 11").  To state a claim under 11 U.S.C. § 550, the

Trustee must allege not just that the initial transfer is avoidable, but that the initial transfer (or

subsequent transfers of the initial transfer) was transferred to the subsequent transferee.  *In re*

---

[6] *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012), an action brought by the Trustee, in which this Court held that, for purposes of jurisdiction in New York, a foreign governmental body's investment of its *own* funds with Fairfield Sentry based on its own due diligence was consistent with Due Process, is clearly distinguishable from this case.  The decision in that case was grounded in (1) the defendant's extensive contacts with New York not present here, including that the subscription payments and redemptions were made from and to the defendant's New York bank account, and (2) the choice of forum clause in the Subscription Agreement.

*Bernard L. Madoff Inv. Sec. LLC*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*").[7]  And

of course, the claim must be "plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In the context of a claim to set aside subsequent transfers under SIPA, this Court has held

that barebones allegations – such as the Trustee's allegations here – that customer funds were

transferred to the subsequent transferee do not suffice:

> The Trustee must allege facts that support the inference that the funds at issue
> originated with . . . BLMIS, and contain the "necessary vital statistics"—the "who, when,
> and how much" of the transfers to establish that an entity was a subsequent transferee of
> the funds.  At the pleading stage, the Trustee is not required to provide a "dollar-for-
> dollar accounting" of the exact funds at issue. However, barebones allegations that the
> funds at issue were transferred to the Subsequent Transferees, without more detail, are
> insufficient.

*Shapiro*, 542 B.R. at 119.  In *Shapiro*, the Court dismissed as conclusory a subsequent transferee

claim, noting that the complaint "does not tie any initial transfer to any subsequent transfer or

Subsequent Transferee." *Id.*

As in *Shapiro*, the Trustee's Complaint fails to plead the "necessary vital statistics".

Rather, it merely alleges that during the six years preceding the Petition, BLMIS transferred

approximately $3 billion to Fairfield Sentry, and that "[a] portion of [those transfers] was

subsequently transferred either directly or indirectly to, or for the benefit of, Defendant." Compl.

¶¶ 34, 39.  The Trustee does not cure this insufficient allegation by attaching exhibits (75 pages

worth in small font) that list thousands of transactions recorded in Fairfield Sentry's accounts at

BLMIS, *id.* Ex. B, and exhibits that list alleged subsequent transfers from Fairfield Sentry to

---

[7] Equally, under the New York Debtor and Creditor Law, "as to claims of both actual and
constructive fraud, New York law permits money damages to be recovered only against parties
who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries
of the conveyance." *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005) (emphasis,
citation, and internal quotation marks omitted).

Defendant, *id.* at Ex. C. To the contrary, the Complaint fails to identify which, if any, of the 75 pages of transactions – many of which fall outside the statute of limitations – constitute initial transfers of BLMIS customer property that were allegedly subsequently transferred to Parson Finance and does nothing to tie the two together. Essentially, the Trustee is asking the Court to infer that because BLMIS transferred a large amount of money to Fairfield Sentry over a long period of time, to the extent Fairfield Sentry subsequently transferred *any* money to Parson Finance, *all* of that money must have come from BLMIS and can be recovered.

Not only do the Trustee's "barebones allegations" fail to plead the "necessary vital statistics", but they are facially implausible – indeed, they are mathematically impossible. For instance, the Trustee alleges that BLMIS transferred approximately $3 billion to Fairfield Sentry (Compl. ¶ 34); yet at the same time, he purports to "recover" an aggregate of nearly $4 billion of alleged subsequent transfers of customer property in the form of redemption payments made to dozens of defendants who redeemed from Fairfield Sentry. *See* Exhibits 5 and 6 to the Second Amended Complaint, Fairfield Action, Dkt. Nos. 286-5, 286-6 (Kellner Decl. Exs. 5, 6, ¶ 12). Additionally, the Trustee seeks to recover, again as alleged subsequent transfers of customer property from Fairfield Sentry, *another* approximately $1 billion in money allegedly paid by Fairfield Sentry to FGG Defendants. *See* Exhibits 8, 10, 12, 13, 14 and 21 to the Second Amended Complaint, Fairfield Action, Dkt. Nos. 286-8, 286-10, 286-12, 286-13, 286-14, 286-21 (Kellner Decl. Ex. 4). In other words, the Trustee is endeavoring to recover, all as subsequent transfers from Fairfield Sentry, roughly $2 billion more than the total amount that the Trustee himself alleges that BLMIS transferred to Fairfield Sentry. As such, the Trustee's theory that all of the redemption payments are customer property is not merely implausible, it is impossible.

19

The reason that the amount BLMIS transferred to Fairfield Sentry is at least $2 billion

lower than the amount Fairfield Sentry distributed is because transfers from BLMIS were not

Fairfield Sentry's sole source of money for redemptions and other payments.  The Trustee

himself pleads that Fairfield Sentry also continuously received funds not just from BLMIS, but

from investor subscriptions.  *See, e.g.*, Compl. ¶ 5 (alleging that Parson Finance wired funds to

Fairfield Sentry for subscriptions).  Numerous complaints are rife with similar allegations

regarding other redeemer defendants.  The transaction details the Trustee has provided to this

Court in his numerous complaints – alleging that Fairfield Sentry paid out more than it received

from BLMIS – lead to the inescapable conclusion that Fairfield Sentry paid redemptions to its

investors with money that could not possibly have originated with BLMIS.

This is about more than the Trustee's disregard of simple arithmetic.  The Trustee's own

allegations demonstrate that at least approximately $2 billion in funds that he seeks to "recover"

indisputably are not "customer property" under 15 U.S.C. § 78fff-2(c)(3).  There is nothing in

SIPA that authorizes the Trustee to recover funds that were not "customer property" and never

belonged to BLMIS.  The Trustee's failure to allege the "necessary vital statistics" of the

transfers he seeks to put at issue is particularly inexcusable in this case, in which the *plaintiff*,

rather than the *defendant*, possesses all the records relevant to establishing whether, and to what

extent, any alleged transfers to Parson Finance contain customer property.  As noted above, the

Trustee sued and settled with the Liquidators of Fairfield Sentry and Sigma, who in 2011

stipulated to the entry of a judgment in favor of the BLMIS Estate (in the amount of

approximately $3 billion for Fairfield Sentry and approximately $750 million for Sigma).[8]

---

[8] This Court approved the Fairfield Settlement Agreement on June 7, 2011, *id.* at Bench
Memorandum and Order Granting Trustee's Motion for Entry of Order Approving Agreement,
Dkt. No. 92, and it was incorporated into the Consent Judgment entered against Fairfield Sentry

Fairfield Settlement, Fairfield Action, Dkt. No. 69-2 ¶ 1; Compl. ¶ 40.  Pursuant to that

Settlement Agreement, the Trustee has had access to Fairfield Sentry and Sigma's records for

over a decade.  *See* Fairfield Settlement, Fairfield Action, Dkt. No. 69-2 ¶ 14 (Trustee and

Fairfield Liquidators "each agree to provide reasonable access to the other's documents, data,

and other information relating to, or beneficial to the pursuit of, the Sharing Claims.").

Moreover, the Fairfield Liquidators "agree[d] to provide reasonable cooperation and assistance"

to the Trustee "in connection with the prosecution of the Sharing Claims".  *Id.* ¶ 14.

Thus, this case is nothing like *In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117

(Bankr. S.D.N.Y. 2014) ("*Merkin*"), where this Court granted the Trustee "greater latitude" in

pleading where – having "specifie[d] numerous inter-defendant transfers" showing that

"defendants commingled their assets, transferring their funds into and out of each other's

accounts" – the Trustee faced special "difficulties" because "[t]he subsequent transfer claim must

ultimately be proved through the books and records of the defendants".  *See Merkin*, 515 B.R. at

150-51.  No such latitude is warranted here.  Not only does the Trustee allege no inter-Defendant

transfers in this action, but, for over a decade, the Trustee has had every piece of data he needs to

determine whether an alleged subsequent transfer contains customer property, and from which

initial transfer that transfer originates, yet he has failed to so allege here – because to do so

would lead to the inescapable conclusion that the Trustee is pursuing billions of dollars to which,

as a matter of simple math,, he is not entitled.  *See Pension Ben. Guar. Corp. v. Morgan Stanley

Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 722 (2d Cir. 2013) (affirming dismissal and finding that

"such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have

on July 13, 2011. Fairfield Action, Adv. Pro. No. 09-01239, Consent Judgment, <u>Dkt. No. 109</u> , ¶ 2; Compl. ¶ 40.

access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc*., No. 18 CIV. 1317, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

The Complaint's pleading failure not only imposes substantial discovery and litigation costs on defendants, it fails to provide Parson Finance with fair notice of the claims against it. This failure deprives Parson Finance of the ability to evaluate those claims for the purposes of defense and settlement, in violation of Rule 8(a) (a pleading problem which, as set forth in Point IV below, is endemic to the Complaint). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Fed. R. Civ. P. 8(a)(2) requires that the plaintiff "give the defendant fair notice of what the claim…is and the grounds upon which it rests") (citation omitted); *see also Verhagen v. Saperstein,* No. 93 CIV. 7441, 1994 WL 330055, at *2 (S.D.N.Y. July 11, 1994) (Rule 8(a) requires pleader to provide adverse party with fair notice of the claim "in order to answer and prepare a defense"). This pleading deficiency is not just on some trivial matter; given the lack of "necessary vital statistics" contained in the pleading here, Parson Finance is hard-pressed to discern exactly what the Trustee claims is "customer property," let alone whether such claims are legitimate, or whether these ill-defined claims are time barred or shielded by the application of the safe harbor of 11 U.S.C. § 546(e) (*see* Point III, below). No defendant should have to guess about what claims they are facing.

**B.      The Trustee's Complaint Seeks to Recover Transfers Made by Fairfield Sentry at Times When the Trustee Alleges There was no Money Left From BLMIS**

The implausibility – and in many instances impossibility – of the Trustee's subsequent transferee claims against Parson Finance is underscored by the fact that the Complaint seeks to recover from Parson Finance during time periods when, according to the Trustee's own

pleadings, the amounts paid out by Fairfield Sentry to defendants, all allegedly as subsequent

transfers of customer property, vastly exceeded the amounts BLMIS transferred to Fairfield

Sentry.

For example, the Trustee alleges that in the period from December 11, 2002 (*i.e.*, six

years preceding the filing of the petition (Compl. ¶¶ 11, 20)[9] through March 31, 2005, BLMIS

transferred a total of $120 million to Fairfield Sentry in three separate transfers made May 9,

2003 through July 22, 2003. *See* Compl. Ex. B (Kellner Dec. Ex. 1) ("CHECK WIRE" entries).

The Trustee further alleges that from the time of that first BLMIS transfer on May 9, 2003,

through December 31, 2003, Fairfield Sentry paid more than $200 million of alleged customer

property to redeeming shareholders, including Sigma, and Lambda. *See* Kellner Decl. Exs. 5, 6,

¶ 14. So when the Trustee alleges that other defendants received redemption payments from

Fairfield Sentry in January and July of 2004, those redemption payments cannot possibly be

BLMIS customer property because the amount of money Fairfield Sentry had already paid to

other defendants by December 31, 2003 far exceeded the total amount it took in from BLMIS.[10]

---

[9] Since the statute of limitations under New York's Debtor and Creditor Law for fraudulent conveyances is six years, *see In re Khan*, No. 10-46901, 2014 WL 4956676, at *52 (Bankr. E.D.N.Y. Sept. 30, 2014), the Trustee cannot avoid transfers from BLMIS to Fairfield Sentry that occurred before December 11, 2002 (the "lookback period"). Thus, he cannot recover any subsequent transfers of those transfers under Section 550(a). Accordingly, the Court may only consider alleged initial transfers after December 11, 2002 (the first of which was on May 9, 2003) in determining whether an alleged subsequent transfer was in fact a transfer of recoverable customer property; any earlier initial transfers alleged in the Complaint must be excluded from consideration. In any event, as set forth in Point III below, pursuant to the safe harbor of 11 U.S.C. § 546(e), the Trustee is barred from recovering alleged subsequent transfers of initial transfers which took place prior to two years before the petition date.

[10] Specifically, the Trustee alleges that on May 9, 2003, BLMIS transferred $40 million to Fairfield Sentry, which was spent by no later than June 2003; on July 11, 2003, BLMIS transferred $55 million to Fairfield Sentry, which was spent by no later than July 16, 2003; and on July 22, 2003, BLMIS transferred $25 million to Fairfield Sentry, which was spent by no later than September 2003. *See* Kellner Decl. Exs. 5, 6, ¶ 14.

The only BLMIS transfer to Fairfield Sentry after December 31, 2003, and before the

Fairfield Sentry payment to Parson Finance, was the $175 million the Trustee alleges was

transferred to Fairfield Sentry on April 1, 2005. Compl. Ex. B.  Yet, the Trustee alleges that days

later, on April 4, 2005, Fairfield Sentry transferred $200 million to another defendant, Abu

Dhabi Investment Authority, a transfer that the Trustee also claims to recover as customer

property.  *See* Exhibit E to the Complaint, *Picard v. Abu Dhabi Investment Authority*, Adv. Pro.

No. 11-02493 (Bankr. S.D.N.Y.) Dkt. No. 1-5 (Kellner Dec. Ex. 6 p. 24).

The sole redemption (alleged subsequent transfer) to Parson Finance was processed on

April 14, 2005. Compl. Ex. C; Verling Declaration Ex. 4. The three preceding transfers from

BLMIS to Fairfield Sentry (on May 9, 2003, July 11, 2003, and July 22, 2003), had all long been

exhausted by 2004. And the $175 million BLMIS transferred to Fairfield Sentry on April 1, 2005

was exhausted by the payment to Abu Dhabi Investment Authority on April 4, 2005, ten days

before the payment to Parson Finance. Thus, according to the Trustee's own pleadings, there was

no BLMIS customer property left at Fairfield Sentry to fund Fairfield Sentry's redemption

payment to Parson Finance on April 14, 2005.

Even if the Trustee, who has Fairfield's records and cooperation, were entitled to avail

himself of liberal pleading rules designed for plaintiffs without access to such records, such

allegations must be dismissed as a matter of law.  *See Kennedy v. Mondelez Glob. LLC,* No. 19-

CV-302, 2020 WL 4006197, at *9 (E.D.N.Y. July 10, 2020) ("where the allegations of a

complaint are materially inconsistent with the evidence a plaintiff relies on to make those

allegations, [a court] may easily conclude that plaintiffs' claims lack the facial plausibility

necessary to survive a motion to dismiss.") (citation omitted).

24

III.    **RECOVERY OF ALLEGED SUBSEQUENT TRANSFERS OF INITIAL
         TRANSFERS MADE OUTSIDE THE TWO-YEAR LOOKBACK IS BARRED BY
         THE SAFE HARBOR OF 11 U.S.C. § 546(E)**

Section 550(a) of the Bankruptcy Code provides that, to the extent a transfer is avoided

under certain sections of the Code, a trustee may recover the property transferred, or its value,

from the initial transferee or any subsequent transferee.  However, Section 546(e) of the

Bankruptcy Code bars a trustee from avoiding a transfer (other than under Section 548(a)(1)(A),

which has only a two-year lookback period)[11] if that transfer, as relevant here, (1) was made "by

or to (or for the benefit of)" a covered entity, such as a stockbroker or financial institution; and

(2) was either a settlement payment or a transfer in connection with a securities contract.

11 U.S.C. § 546(e).[12]  The Section 546(e) safe harbor is available as a defense to alleged

subsequent transferees, even where, as here, the alleged initial transferee agreed to a consent

judgment.  *See SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*),

No. 08-01789, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("Where

the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain

---

[11] Under 11 U.S.C. § 548(a)(1)(A), a trustee may avoid transfers made within two years before
the petition date (here, December 11, 2008 (*see* Compl. ¶¶ 11, 20)), if the debtor made such
transfer with actual intent to hinder, delay or defraud.  Because of the Ponzi scheme presumption
and best actual intent is generally a factual issue, Defendant, at this stage, does not seek
dismissal under Section 546(e) of claims based on initial transfers made within the two years
prior to the petition date (the "Two Year Transfers").  However, in a recent concurring opinion,
Judge Menashi of the United States Court of Appeals for the Second Circuit cast doubt on the
validity of the presumption, *see In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 201-04 (2d
Cir. 2021) (Menashi, J., concurring), and there is currently a petition for a direct appeal of that
issue pending before the Second Circuit. *See Picard v. ABN Amro Bank (Ireland Ltd.) (f/k/a
Fortis Prime Fund Solutions Bank (Ireland) Ltd.) (n/k/a ABN Amro Retained Custodial Services
(Ireland) Limited)*, No. 20 Civ. 1898 (2d Cir. Oct. 1, 2021) Dkt. No. 50.  Accordingly, Defendant
reserves the right to challenge the avoidability of the Two Year Transfers should this action
proceed beyond the motion to dismiss stage.

[12] 11 U.S.C. § 546(e) also preempts state law claims seeking to unwind redemptions. *Tribune I,*
946 F.3d, at 81, 90.

transfers, … the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against
recovery of those funds.").

As set forth below, both elements of a defense under Section 546(e) are established as a
matter of law.  Accordingly, any claim by the Trustee against Parson Finance as Fairfield
Sentry's alleged subsequent transferee based on an initial transfer made prior to September 6,
2007 (the first of the Two Year Transfers) must be dismissed.  *See Fishman*, 773 F.3d at 415
(affirming dismissal of relevant claims under Rule 12(b)(6) because they were shielded by 11
U.S.C. § 546(e)).

### A.    The Alleged Initial Transfers Were Made by, to, or for the Benefit of, a Covered Entity

Here, the alleged initial transfers were made by, to, or for the benefit of, an entity covered
by Section 546(e) for three independently sufficient reasons, namely, because the alleged initial
transfers were made (1) by a stockbroker, (2) to a financial institution, and (3) allegedly for the
benefit of another financial institution.

### 1.    The Alleged Initial Transfers Were Made by a Stockbroker

The Code defines "stockbroker" to include entities "engaged in the business of
effecting transactions in securities."  11 U.S.C. § 101(53A)(B).  As the District Court found,
BLMIS "qualifies as a stockbroker by virtue of the trading conducted by its market making and
proprietary trading divisions."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476
B.R. 715, 719 (S.D.N.Y. 2012) (footnote and citation omitted), *aff'd sub nom. Fishman*, 773
F.3d at 417 ("It is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes
of § 546(e).").

2.       **The Alleged Initial Transfers Were Made to a Financial Institution**

Fairfield Sentry, the initial transferee, is also a "financial institution" under the Code,

which defines "financial institution" to include both "an entity that is a commercial or savings

bank," and the bank's customer "when [the bank] entity is acting as agent or custodian for a

customer … in connection with a securities contract." 11 U.S.C. § 101(22)(A). In *Fairfield III*,

this Court held that the Fairfield Funds were "financial institutions" because they were customers

of a financial institution, Citco Bank Nederland N.V. Dublin Branch ("Citco Bank"), which

acted as their agent in connection with the securities contracts pursuant to which the redemption

payments were made. *Fairfield III*, 2020 WL 7345988, at *7.

This Court's holding in *Fairfield III* is equally applicable here and, indeed, is binding on

the Trustee because he was in privity with the Fairfield Liquidators, who were litigating that

action partly for the Trustee's benefit.[13]

B.       **The Alleged Initial Transfers Were Settlement Payments and Made "in Connection With" a Securities Contract**

In analogous circumstances, the Second Circuit has concluded that Section 546(e) shields

transfers from BLMIS to its account holders from the Trustee's avoidance powers. *Fishman*,

---

[13] Under the Fairfield Settlement, the Fairfield Liquidators will pay the Trustee 15% of net recoveries from their claims against redeemers from the Fairfield Funds until the Trustee has been paid $1.924 billion. Fairfield Settlement, Fairfield Action, Dkt. No. 69-2 ¶¶ 4, 11. Further, "[t]he Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims." *Id.* at ¶ 14. This agreed joint interest in pursuing alleged BLMIS customer property is a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of a kind that gives rise to nonparty issue preclusion in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). As such, and because the issue of Fairfield Sentry's status as a "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on grounds of the Section 546(e) safe harbor, this Court's finding in *Fairfield III* that Fairfield Sentry was a "financial institution" in connection with redemption payments from Fairfield Sentry to its subscribers is binding on the Trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

27

773 F.3d at 415.  The *Fishman* court concluded that the documents governing BLMIS customers' accounts constituted securities contracts, and that the payments BLMIS made to those customers were made "in connection with" those contracts, and also constituted "settlement payments," *id*. at 418-23 — either of which findings would have sufficed to invoke the safe harbor.  The court rejected the Trustee's argument that the safe harbor did not apply because Madoff did not actually carry out the promised securities transactions.  *Id*. at 419-20.

The same reasoning applies to the transfers that the Trustee alleges BLMIS made to Fairfield Sentry "in order to pay" investors' redemption requests.  Those alleged transfers were clearly "in connection with" both (a) the securities contracts Sentry had entered into with BLMIS, *see Fishman*, 773 F.3d at 418-23, and (b) according to the Trustee, (although lacking in plausible support), the separate securities contract under which Parson Finance made its redemptions, *see* Point III.A.3 above, namely, Fairfield Sentry's Articles of Association (Kellner Dec. Ex. 10).  *See Migani* ¶ 10 ("the terms of the subscriber's membership of the Fund, which govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund").[14]

The definition of "securities contract" includes "a contract for the purchase, sale, or loan of a security," 11 U.S.C. § 741(7)(A)(i), and, as relevant here, "includes . . . redemption requests."  *Cohmad*, 2013 WL 1609154 at *8.  Further, all Section 546(e) requires is that the transfer be "in connection with *a* securities contract" (emphasis added), even if not the securities

---

[14] This Court may consider the Articles of Association on this motion because, as the basis for the challenged redemption, they are integral to the Complaint.  *See In re Trib. Co. Fraudulent Conv. Litig.,* 10 F.4th 147, 176 (2d Cir. 2021) ("*Tribune II*") ("Here, the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint.").  A petition for certiorari with respect to *Tribune II* was filed on January 14, 2022.

contract between the initial transferor and transferee. *See Fishman*, 773 F.3d at 422 ("Section

546(e) sets a low bar for the required relationship between the securities contract and the transfer

sought to be avoided"; "a transfer can be connected to, and can be made in relation to, multiple

documents or purposes simultaneously"); *Cohmad*, 2013 WL 1609154, at *9 (under the safe

harbor, transfer from debtor to initial transferee may qualify as having been made "in connection

with a securities contract" between initial transferee and subsequent transferee). The conclusion

that the alleged initial transfers were made in connection with a securities contract does not

change even if the initial transferee, Fairfield Sentry, allegedly knew of Madoff's fraud.[15]

    <u>First</u>, there was a securities contract between Fairfield Sentry and its investors, even if

there was none between BLMIS and Fairfield Sentry, and Fairfield Sentry's alleged knowledge

of the BLMIS fraud would not preclude the straightforward application of Section 546(e) as

being "in connection with" Fairfield Sentry's agreement with its investors. In *Cohmad*, Judge

Rakoff agreed that securities contracts other than the initial transferee's securities contract with

BLMIS could independently satisfy Section 546(e). 2013 WL 1609154, at *8-9. Judge Rakoff

ruled that so long as the initial transferee withdrew funds from BLMIS to make a payment under

a securities contract between the initial transferee and the subsequent transferee, then the

withdrawal from BLMIS would be a transfer made in connection with the securities contract

between the initial transferee and the subsequent transferee and thus would not be avoidable:

---

[15] In *Fairfield Investment Fund Ltd.*, the Court accepted that Fairfield Sentry's knowledge had
been adequately pleaded in a later version of the complaint in the Fairfield Action than the one
incorporated by reference into the instant Complaint. *See SIPC v. Bernard L. Madoff Inv. Sec.
LLC (Picard v. Fairfield Inv. Fund Ltd.)*, No. 08-01789, 2021 WL 3477479, at *4-5 (Bankr.
S.D.N.Y. Aug. 6, 2021) (citing to the Second Amended Complaint, Fairfield Action, <u>Dkt. No.
286</u>). Defendant respectfully disagrees with that conclusion and reserves for appeal or a later
stage of this action all arguments that the Trustee has not adequately pleaded Fairfield Sentry's
actual knowledge of Madoff's fraud either in the Second Amended Complaint or the earlier
pleadings in that action and that Fairfield Sentry did not in fact have such actual knowledge.

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract.  Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a . . . financial institution [or] financial participant . . . in connection with a securities contract."

*Id.* at *9 (footnote omitted).[16]  The logic of Judge Rakoff's hypothetical applies directly here, where the investment fund was Fairfield Sentry, a financial institution as shown above, and the investor was Parson Finance, also a financial institution.  And the Complaint is devoid of any allegation that Parson Finance knew of Madoff's fraud.

Second, while this Court and the District Court have previously ruled that Section 546(e) cannot be invoked by a defendant with actual knowledge of Madoff's fraud, and while, as set forth above, those rulings are inapplicable here, Defendant respectfully submits that there is nothing in the language of Section 546(e) that supports creating an exception to its applicability based on the knowledge of any transferee, as opposed to the debtor-transferor.[17]  That section provides for only one exception to the safe harbor:  a claim under Section 548(a)(1)(A), which requires the Trustee to allege and prove intentional fraud by the transferor, and which only has a

---

[16] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron [Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements." *Id*. at *9 n.5.

[17] This is an open question at the Circuit level, and Parson Finance expressly preserves it. Although the Second Circuit in *Fishman* noted that the defendants there had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have been different had that not been the case.

two year lookback period. *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant") (citations omitted).[18] Thus, the exception to the safe harbor articulated in *Cohmad*, *i.e.*, that if the transferee from whom the Trustee seeks to recover knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e) (*Cohmad*, 2013 WL 1609154, at *7), is not supported by the text of the statute.

## CONCLUSION

For the foregoing reasons, Parson Finance respectfully requests that the Court dismiss the Complaint in its entirety.

Dated: February 18, 2022

Respectfully submitted,

KELLNER HERLIHY GETTY & FRIEDMAN LLP

By: _____

Douglas A. Kellner
470 Park Avenue South–7th Floor
New York, NY 10016-6819
Telephone: 212-889-2121
Email: dak@khgflaw.com

*Attorneys for Defendant Parson Finance Panama S.A.*

---

[18] Nor does transferee knowledge play any role in the definitions of "settlement payment," 11 U.S.C. § 741(8), or "securities contract," *id*. 741(7).