# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff,<br><br> v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>       Plaintiff,<br><br> v.<br><br>LEGACY CAPITAL LTD.,<br><br>       Defendant. | Adv. Pro. No. 10-05286 (CGM) |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>       Plaintiff,<br><br> v.<br><br>RAFAEL MAYER, et al.,<br><br>       Defendants. | Adv. Pro. No. 20-01316 (CGM) |

**TRUSTEE'S MOTION TO CONSOLIDATE
THE LEGACY ADVERSARY PROCEEDINGS FOR ALL PRE-TRIAL MATTERS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

    A.    The Legacy Initial Transfer Action..................................................................2

        1.    The Trustee's Initial Transfer Complaint ...................................................2

        2.    Proceedings Before the Bankruptcy Court, District Court, and Second Circuit Court of Appeals.................................................................4

    B.    The Legacy Subsequent Transfer Action.........................................................6

        1.    The Trustee's Subsequent Transfer Complaint..........................................6

        2.    Proceedings Before this Court ...................................................................7

LEGAL STANDARD...............................................................................................................8

ARGUMENT............................................................................................................................9

    A.    The Legacy Adversary Proceedings Share Common Questions of Fact and Law .............................................................................................................9

    B.    Consolidation of the Legacy Adversary Proceedings Will Promote Judicial Efficiency..........................................................................................12

CONCLUSION.......................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of Montreal v. Eagle Assocs.*,
  117 F.R.D. 530 (S.D.N.Y. 1987) ...................................................................................13

*Barkley v. Olympia Mortg. Co.*,
  No. 04-CV-875(KAM)(RLM), 2010 WL 3709278 (E.D.N.Y. Sept. 13, 2010) ...............13

*In re Bernard L. Madoff Investment Securities LLC*,
  12 F.4th 171, (2d Cir. 2021) ................................................................................1, 5, 6

*Brown v. Freeport Police Dept.*,
  Nos. 13-CV-4047 (SJF)(GRB), 13-CV-6514 (SJF)(GRB), 2014 WL 279847
  (E.D.N.Y. Jan. 23, 2014) ..............................................................................................12

*Burtch v. Dent* (*In re Circle Y*),
  354 B.R. 349 (Bankr. D. Del. 2006) .............................................................................11

*Coultrip v. Pfizer, Inc.*,
  Nos. 06 Civ. 9952 (JCF), 06 Civ. 15200 (JCF), 07 Civ. 4532 (JCF), 2011 WL
  1219365 (S.D.N.Y. Mar. 24, 2011) ..............................................................................10

*Criterium Cap. Funds B.V. v. Kingate Mgmt. Ltd.*,
  No. 09 CIV. 5386 (DAB), 2010 WL 11655475 (S.D.N.Y. Jan. 22, 2010) ......................9

*DeRogatis v. Board of Trustees of the Central Pension Fund of the Internat'l
  Union of Operating Engineers*,
  Cause No. 13-Civ. 8788 (CM), 2015 WL 936114 (S.D.N.Y. Mar. 3, 2015) ..................11

*In re Facebook, Inc.*,
  288 F.R.D. 26 (S.D.N.Y. 2012) ....................................................................................11

*Garnett-Bishop v. New York Community Bancorp., Inc.*,
  299 F.R.D. 1 (E.D.N.Y. 2014) ......................................................................................11

*Hall v. Hall*,
  138 S. Ct. 1118 (2018).............................................................................................8, 13

*Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*,
  208 F.R.D. 59 (S.D.N.Y. 2002) ....................................................................................13

*BD ex rel. Jean Doe v. DeBuono*,
  193 F.R.D. 117 (S.D.N.Y. 2000) ..................................................................................11

*Johnson v. Celotex Corp.*,
  no.899 F.2d 1281 (2d Cir. 1990) ..................................................................................... 8

*Liegey v. Ellen Figg, Inc.*,
  No. 02 Civ. 1492 (DC), 03 Civ. 0322 (DC), 2003 WL 21688242 (S.D.N.Y.
  July 18, 2003) ................................................................................................................ 10

*McArdle v. Arms Acres, Inc.*,
  No. 03 Civ. 05721 (PGG), 2009 WL 890077 (S.D.N.Y. 2009) ..................................... 11

*Pay Tel Sys., Inc. v. Seiscor Technologies, Inc.*,
  88 CIV. 2078 (DC), 1996 WL 67938 (S.D.N.Y. Feb. 15, 1996) .................................... 12

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  548 B.R. 13 (Bankr. S.D.N.Y. 2016) ............................................................................ 1, 4

*Picard v. Legacy Capital Ltd.*,
  No. 20-1334 (2d Cir. Aug. 6, 2020) ................................................................................. 5

*Primavera Familienstiftung v. Askin*,
  173 F.R.D. 115 (S.D.N.Y. 1997) ................................................................................... 13

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  516 B.R. 18 (S.D.N.Y. 2014) ........................................................................................... 5

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 20-01316, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ............................... 7

*Varghese v. JP Morgan Chase & Co.*,
  14 Civ. 1718 (PGG), 15 Civ. 3023 (PGG), 2016 WL 4718413 (S.D.N.Y. Sept.
  9, 2016) .......................................................................................................................... 12

**Statutes**

11 U.S.C. § 548(a)(1)(A), (c) ............................................................................................... 10

11 U.S.C. § 550(a) ............................................................................................................... 10

**Rules**

Fed. R. Bankr. P. 7042 ...................................................................................................... 1, 8

Fed. R. Civ. P. 42 ......................................................................................................... 1, 8, 11

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–*lll*, and the chapter 7 estate of Bernard L. Madoff, by and through his undersigned counsel, respectfully submits this combined motion and memorandum of law to consolidate two related adversary proceedings, *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), Adv. Pro. No. 10-05286 (CGM) (Bankr. S.D.N.Y.) (the "Legacy Initial Transfer Action") and *Picard v. Mayer* (*In re BLMIS*), Adv. Pro. No. 20-01316 (CGM) (Bankr. S.D.N.Y.) (the "Legacy Subsequent Transfer Action," and together, the "Legacy Adversary Proceedings"), for the purpose of streamlining all pre-trial matters in the Legacy Adversary Proceedings, pursuant to Rule 42 of the Federal Rules of Civil Procedure made applicable here by Rule 7042 of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION

The Legacy Initial Transfer Action and Legacy Subsequent Transfer Action involve substantial overlapping questions of law and fact that merit consolidation of the adversary proceedings for all pre-trial matters. Both actions arise from the Trustee's efforts to avoid and recover fraudulent transfers made by BLMIS over the course of the Ponzi scheme to BLMIS account holder Legacy Capital Ltd. ("Legacy Capital") and then to the defendants in the Legacy Subsequent Transfer Action. The Legacy Adversary Proceedings concern the same underlying facts, the same issues of law, and network of entities ultimately managed and controlled by the same people, brothers Rafael and David Mayer, who are both defendants in the Legacy Subsequent Transfer Action. The Trustee's claims involve the same set of transfers, largely the same allegations, and the same witnesses.

1

The defendants in both actions, moreover, challenge the avoidance of the initial transfers to Legacy Capital on the same grounds, raising affirmative defenses disputing BLMIS's actual intent to defraud creditors. They are also asserting Legacy Capital's good faith, and that it gave value to BLMIS in exchange for the transfers it received. The Court's consideration of the Trustee's claims and the defenses at the pre-trial stage will involve the same evidence and uniform application of the same provisions of the Bankruptcy Code.

Litigating the Legacy Adversary Proceedings separately would only ensure the duplication of effort among the parties and the needless expenditure of judicial resources. Absent consolidation, discovery of the same issues in both actions would result in unnecessary duplication. Consolidation has the added advantage of removing any risk of conflicting or inconsistent decisions on common issues. Because consolidation does not merge adversary proceedings into a single lawsuit, nor does it change the rights of the parties, the defendants will not be prejudiced by consolidation. For these reasons and those discussed more fully below, the Trustee respectfully submits that the Legacy Adversary Proceedings should be consolidated for all pre-trial matters.

## BACKGROUND

**A.    The Legacy Initial Transfer Action**

*1.    The Trustee's Initial Transfer Complaint*

On December 6, 2010, the Trustee commenced the Legacy Initial Transfer Action by filing a complaint, as subsequently amended (*see* Legacy Initial Transfer Action, ECF No. 112, "Initial Transfer Complaint"), against Legacy Capital and Khronos to avoid and recover $213,180,068 of fraudulent transfers consisting of BLMIS customer property under sections 544, 548 and 550 of the Bankruptcy Code and applicable sections of the New York Debtor and Creditor Law. As alleged in the Initial Transfer Complaint, Legacy Capital was a single-purpose

2

vehicle—it invested only with BLMIS. Legacy Capital was run by Jimmy Mayer and his son, Rafael Mayer. *Id.* at ¶ 33.

Legacy Capital had only two shareholders: Montpellier International, Ltd. ("Montpellier") and HCH Management Company Ltd. (which later changed its name to HCH Capital Limited) ("HCH"). On January 1, 2005, HCH sold all its Legacy Capital shares to Prince Assets Ltd. (f/k/a Prince Assets LDC) ("Prince").[1]

Meritage Fund Ltd. ("Meritage"), an investment fund under the umbrella of Renaissance Technologies LLC ("Renaissance"), invested in Legacy Capital through a swap with HCH. *Id.* at ¶¶ 1, 39. Rafael Mayer was a member of the committee responsible for overseeing Meritage's investments (the "Meritage Committee"). *Id.* at ¶¶ 40–41. Suspicious of BLMIS's returns, Renaissance analyzed Madoff's purported trading activity and found that the market could not support the volume of BLMIS's purported options trading, Madoff purported to always buy low and sell high, and there was no discernible market footprint of BLMIS's purported trades. *Id.* at ¶¶ 56-80, 88-93. These findings were shared with the Meritage Committee, including Rafael Mayer. *Id.* at ¶ 47. In early 2004, because of these concerns, every member of the Meritage Committee voted to redeem Meritage's HCH investment except for Rafael Mayer. *Id.* at ¶ 138. Rafael Mayer persuaded the Meritage Committee to delay half of Meritage's redemption to give Legacy Capital a chance to replace that capital and retain the corresponding BLMIS investment (and fees). Legacy Capital secured a loan from BNP Paribas – Dublin Branch ("BNP") within a few months, and Meritage withdrew the remainder of its investment. *Id.* at ¶ 139.

In response to the serious—and ultimately accurate—concerns raised by Meritage, Legacy Capital "hired" Rafael and David Mayer's investment management company Khronos

---

[1] Legacy Subsequent Transfer Action, ECF No. 1, at ¶ 56.

3

LLC ("Khronos") to analyze its BLMIS account activity, including prior trades. *Id.* at ¶¶ 1, 31, 52. Specifically, Khronos was tasked with performing a historical valuation of trades dating back to January 1992, when the Mayers first began investing with BLMIS. *Id.* at ¶ 52. Together, Khronos, the Mayers, and Legacy Capital learned even more troubling information pointing to BLMIS's fraud: Khronos's analyses of Legacy Capital's BLMIS account statements and trade confirmations confirmed that the improbably consistent returns on Legacy Capital's investment were, in fact, impossible and not based on actual securities trades. *Id.* at ¶¶ 94-101. During the time Khronos performed its analysis, the Mayers restricted access to Legacy Capital's BLMIS account information—including those showing problematic and impossible trades—to themselves. *Id.* at ¶ 52. In essence, the Mayers removed all independent oversight, and exercised total control over the BLMIS investment.

        2.     *Proceedings Before the Bankruptcy Court, District Court, and Second Circuit Court of Appeals*

Legacy Capital and Khronos moved to dismiss all counts of the Initial Transfer Complaint. On April 12, 2016, the Court issued a decision holding that the Trustee did not adequately allege the defendants' lack of good faith. Consequently, the Court dismissed Khronos from the Legacy Initial Transfer Action and dismissed all claims against Legacy Capital except those under sections 548(a)(1)(A) and 550 of the Bankruptcy Code seeking to avoid and recover fictitious profits transferred to or for Legacy Capital's benefit (the "Legacy Initial Transfers"). *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. 2016) (the "2016 Motion to Dismiss Decision"). In so holding, the Court relied on an earlier decision of the District Court that required the Trustee to plead the absence of good faith with particularized allegations (i.e., willful blindness) as part of his prima facie case to avoid and recover transfers under sections 548 and 550 of the Bankruptcy Code.

4

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 516 B.R. 18 (S.D.N.Y. 2014) (the "Willful Blindness Decision").

The Trustee moved for summary judgment on his remaining claims against Legacy Capital. On June 25, 2019, the Court issued a Memorandum Decision and Order Granting Relief under Federal Rule of Civil Procedure 56(g) concluding the Trustee had shown there were no genuine issues of fact regarding his prima facie case, deeming certain facts established, and directing the parties to coordinate for the scheduling of trial on Legacy Capital's defenses. Legacy Initial Transfer Action, ECF Nos. 221, 222. The Trustee and Legacy Capital subsequently entered a stipulation, so ordered by the Court ("Stipulated Order") providing: (i) the parties' consent to the Bankruptcy Court's entry of a final order and judgment; and (ii) entry of final order and judgment (the "Final Judgment") against Legacy Capital in the amount of $79,125,781. Legacy Initial Transfer Action, ECF No. 231. The Stipulated Order further provided that the $79 million in transfers were avoidable, avoided, and recoverable from Legacy Capital under sections 548(a)(1)(A) and 550(a) of the Bankruptcy Code. *Id.*

With the entry of Final Judgment, the Trustee appealed directly to the Second Circuit regarding the application of the good faith defense in the Legacy Initial Transfer Action. *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir. Aug. 6, 2020). On August 30, 2021, the Second Circuit issued a decision holding that in a SIPA liquidation, the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry notice standard, not willful blindness, and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith. *In re Bernard L. Madoff Investment Securities LLC*, 12 F.4th 171, at 191-92, 195-96 (2d Cir. 2021) (the "Good Faith Decision"). The Good Faith Decision vacated the Willful Blindness Decision

5

and the 2016 Motion to Dismiss Decision and remanded the Legacy Initial Transfer Action to this Court for proceedings consistent with the opinion.[2]

Although Legacy Capital answered the Initial Transfer Complaint in May 2016 (*see* Legacy Initial Transfer Action, ECF No. 139), it has indicated that it intends to file an amended answer to address the Trustee's claims that have been reinstated by the Good Faith Decision. The parties also have not begun discovery on these reinstated claims.

B.   **The Legacy Subsequent Transfer Action**

   1.   *The Trustee's Subsequent Transfer Complaint*

Although Legacy Capital entered into the Stipulated Order and Final Judgment, Legacy Capital later represented in post-judgment discovery that it was impecunious and could not satisfy the Final Judgment. Because of this, the Trustee commenced the Legacy Subsequent Transfer Action (*see* Legacy Subsequent Transfer Action, ECF No. 1, the "Subsequent Transfer Complaint") against Rafael Mayer, David Mayer, Montpellier, Prince, Khronos Group, Ltd. ("Khronos Group"), Montpellier USA Holdings, LLC ("Montpellier USA"), Price Resources Ltd. ("Prince Resources"), Prince Capital Partners, LLC ("Prince Capital"), and Khronos Liquid Opportunities Fund Ltd ("KLOF") (collectively, the "Subsequent Transferee Defendants") seeking to recover approximately $49,505,850 in subsequent transfers of BLMIS customer property from Legacy Capital to Montpellier and Prince, and then to the other defendants (the "Legacy Subsequent Transfers").

Because of David and Rafael Mayers' control over the subsequent transferee entities and the use of that control to conceal BLMIS customer property, the Legacy Subsequent

---

[2] Citibank filed a petition for writ of certiorari seeking the Supreme Court's review of the Good Faith Decision. *See In re Bernard L. Madoff Investment Securities LLC*, 12 F.4th 171 (2d Cir. 2021) (Pet. for Cert. Jan 31, 2022 (No. 21-1059)). Legacy did not.

6

Transfer Action seeks to recover these transfers from the various Mayer-run-entities as well as to hold the Mayers personally liable as alter egos of these entities in order to return the Legacy Subsequent Transfers to the BLMIS customer estate.

As alleged in the Subsequent Transfer Complaint, the Mayers managed and controlled the corporate subsequent transferees through Khronos, such that they are liable for their transfers as alter egos. *See* Subsequent Transfer Complaint at ¶ 5. The Trustee further alleged that the Mayers orchestrated a reorganization plan of Montpellier, Montpellier USA, and Khronos Group, culminating in the liquidation and dissolution of these entities along with Prince. *Id.* at ¶¶ 103-107. The dissolutions were finalized without providing notice to the Trustee or otherwise taking into account contingent liability to the Trustee for the purpose of frustrating the Trustee's recovery efforts. *Id.* The reorganization plan included creating new Mayer-controlled entities such as KLOF and diverting corporate assets including BLMIS transfers of customer property to them. *Id.* at ¶¶ 91-95.

2. *Proceedings Before this Court*

Defendants Rafael Mayer, David Mayer, Prince Resources, Prince Capital, and KLOF moved to dismiss the Subsequent Transfer Complaint. On October 27, 2021, the Court issued a memorandum decision denying the motions filed by Rafael Mayer, David Mayer, and KLOF in their entirety. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 20-01316, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) (the "2021 Motion to Dismiss Decision"). Prince Resources and Prince Capital agreed to withdraw their motion to dismiss with prejudice following the Good Faith Decision. Legacy Subsequent Transfer Action, ECF No. 98, at p. 3.

On January 10, 2022, certain defendants filed answers to the Subsequent Transfer Complaint. (Legacy Subsequent Transfer Action, ECF Nos. 104, 105, 106, 107, collectively, the "Answers"). In the Answers, the defendants assert several affirmative defenses challenging the

7

avoidability of the Legacy Initial Transfers on various grounds, including that Legacy Capital took those transfers in good faith and for value and that BLMIS lacked the requisite fraudulent intent. *See, e.g.*, Answer of Rafael Mayer, ECF No. 107, at 17, 18.

On January 26, 2022, the same subsequent transferee defendants who answered, have now filed a joint motion to withdraw the reference to the Bankruptcy Court. *See* Legacy Subsequent Transfer Action, ECF No. 109. The Trustee's opposition is due February 25, 2022. *See Picard v. Mayer*, Civil Action No. 22 CV 769 (DLC) (S.D.N.Y. Feb. 2, 2022), ECF No. 5.

## LEGAL STANDARD

Under Rule 42(a) of the Federal Rules of Civil Procedure, made applicable here by Rule 7042 of the Federal Rules of Bankruptcy Procedure, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). Rule 42 thus authorizes courts to consolidate actions when there are common questions of law or fact to avoid unnecessary costs or delay. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

Courts in the Second Circuit routinely consolidate actions involving common questions of law or fact unless the opposing party can identify "specific risks of prejudice and confusion" that outweigh "the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Id.* at 1285. Courts have substantial discretion to determine whether and to what extent consolidation is appropriate. *Hall v. Hall*, 138 S. Ct. 1118, 1130 (2018).

# ARGUMENT

A.     <u>**The Legacy Adversary Proceedings Share Common Questions of Fact and Law**</u>

       The Legacy Adversary Proceedings involve substantial overlapping questions of fact arising out of fraudulent transfers from BLMIS to Legacy Capital and the Mayers' involvement with Legacy Capital and the Subsequent Transferee Defendants. In both lawsuits, the same plaintiff, the Trustee, has made similar factual allegations concerning BLMIS's purported operations and investment strategy (*Compare* Initial Transfer Complaint at ¶¶ 56-57, 73, 81-82, 88-89, 94, 102, 106-109, 119 *with* Subsequent Transfer Complaint at ¶¶ 21-26, 32-50), the extent and scope of BLMIS's Ponzi scheme (*Compare* Initial Transfer Complaint at ¶¶ 7, 12-15, 19-29 *with* Subsequent Transfer Complaint at ¶¶ 27-31, 51-53), and transfers originating from BLMIS to Legacy Capital (*Compare* Initial Transfer Complaint at ¶¶ 33-34, 142-144 *with* Subsequent Transfer Complaint at ¶¶ 2-4, 54-59). The Mayers' substantial connections to Legacy Capital and the Subsequent Transferee Defendants are common themes plead throughout the Legacy Adversary Proceedings. *See, e.g.*, Initial Transfer Complaint at ¶¶ 1-2, 52, 54 and Subsequent Transfer Complaint at ¶¶ 1-5, 54-55, 81. In addition, the Subsequent Transfer Complaint incorporates by reference all allegations in the Initial Transfer Complaint. *See* Subsequent Transfer Complaint at ¶ 58. During oral argument on the motions to dismiss, moreover, Rafael Mayer's counsel conceded that the remanded Legacy Adversary Proceeding would involve questions of Khronos's and Rafael Mayer's due diligence of Legacy Capital's BLMIS account, as well as any related knowledge or suspicions concerning whether BLMIS was a Ponzi scheme. *See* Sept. 15, 2021, Hr'g Tr. 169:17-24, Legacy Initial Transfer Action, ECF No. 254.

       These critical factual similarities warrant consolidation of the Legacy Adversary Proceedings. *See, e.g.*, *Criterium Cap. Funds B.V. v. Kingate Mgmt. Ltd.*, No. 09 CIV. 5386 (DAB), 2010 WL 11655475, at *1 (S.D.N.Y. Jan. 22, 2010) (granting motion to consolidate

9

where actions arose out of the loss of shareholder investments in two BLMIS feeder funds and involved common factual and legal questions, including whether defendants failed to conduct adequate due diligence and monitoring of the funds' BLMIS investments); *Liegey v. Ellen Figg, Inc.*, No. 02 Civ. 1492 (DC), 03 Civ. 0322 (DC), 2003 WL 21688242, at *1 (S.D.N.Y. July 18, 2003) (stating "the alleged facts are substantially similar and the similarities justify consolidation"); *Coultrip v. Pfizer, Inc.*, Nos. 06 Civ. 9952 (JCF), 06 Civ. 15200 (JCF), 07 Civ. 4532 (JCF), 2011 WL 1219365, at *3 (S.D.N.Y. Mar. 24, 2011) (holding "consolidation is appropriate here given the broadly overlapping factual and legal allegations in the plaintiffs' complaints.").

In the Legacy Initial Transfer Action, the Court will be asked to determine whether initial transfers from BLMIS to Legacy Capital should be avoided as actual fraudulent transfers. This will require an assessment of the scope and extent of the Ponzi Scheme, the source of those transfers, and presumably, Legacy Capital's defenses of good faith and value. *See* 11 U.S.C. § 548(a)(1)(A), (c). Similarly, in the Legacy Subsequent Transfer Action, the Court will be asked to determine whether the Legacy Subsequent Transfers are recoverable from the Subsequent Transferee Defendants. This determination will necessarily require the Court to decide whether the Legacy Initial Transfers are avoidable. *See* 11 U.S.C. § 550(a) ("to the extent that a transfer is avoided under section…548…of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property…."). Moreover, the Subsequent Transferee Defendants have asserted affirmative defenses challenging the avoidability of the Legacy Initial Transfers based on Legacy Capital's good faith, value, and BLMIS's fraudulent intent. *See, e.g.*, Legacy Subsequent Transfer Action, Answer of Prince Resources LDC and Prince Capital Partners LLC, ECF No. 105, at pp. 18-19; Answer of Rafael

10

Mayer, ECF No. 107, at pp. 17-18.  In other words, the Court will be presented with nearly identical legal issues under the Bankruptcy Code in the Legacy Initial Transfer Action and Legacy Subsequent Transfer Action.

These commonalities further support consolidation of the Legacy Adversary Proceedings. *See Garnett-Bishop v. New York Community Bancorp., Inc.*, 299 F.R.D. 1, 6 (E.D.N.Y. 2014) (approving consolidation where the plaintiffs raised almost identical claims against nearly identical defendants); *Burtch v. Dent (In re Circle Y)*, 354 B.R. 349, 362 (Bankr. D. Del. 2006) (granting consolidation of two adversary proceedings involving common factual and legal questions regarding the avoidance and recovery of alleged preferential and fraudulent transfers).

Although the Legacy Initial Transfer Action and Legacy Subsequent Transfer Action involve different entity defendants (who are managed and controlled by the same people) and different, albeit related, causes of action, "[c]omplete symmetry [between the two actions] is not a prerequisite for consolidation." *McArdle v. Arms Acres, Inc.*, No. 03 Civ. 05721 (PGG), 2009 WL 890077, at *3 (S.D.N.Y. 2009); s*ee also In re Facebook, Inc.*, 288 F.R.D. 26, 42 (S.D.N.Y. 2012) (directing consolidation of actions involving different causes of action arising out of the same facts and based on presence of common defenses); *DeRogatis v. Bd. of Trustees of the Cent. Pension Fund of the Internat'l Union of Operating Engineers*, Cause No. 13-Civ. 8788 (CM), 2015 WL 936114 at *2 (S.D.N.Y. Mar. 3, 2015) (the fact there is not a complete overlap between the issues arising in the two cases does not militate against consolidation).  In fact, "it is well settled that even one substantial common question of law or fact is enough for commonality under Rule 42(a)." *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 141 (S.D.N.Y. 2000). That the Legacy Adversary Proceedings do not involve identical parties and claims should not preclude consolidation.

11

B.  **Consolidation of the Legacy Adversary Proceedings Will Promote Judicial Efficiency**

Consolidation benefits judicial economy because the Legacy Initial Transfer Action and the Legacy Subsequent Transfer Action are at similar stages of litigation. Neither action has proceeded to discovery. Nor have scheduling orders been entered. *See Brown v. Freeport Police Dept.*, Nos. 13-CV-4047 (SJF)(GRB), 13-CV-6514 (SJF)(GRB), 2014 WL 279847, at *4 (E.D.N.Y. Jan. 23, 2014) (consolidation granted in actions involving similar allegations against defendants where both actions had not yet proceeded to discovery); *Pay Tel Sys., Inc. v. Seiscor Technologies, Inc.*, 88 CIV. 2078 (DC), 1996 WL 67938, at *2 (S.D.N.Y. Feb. 15, 1996) (granting motion to consolidate and finding that consolidation is appropriate where cases are at similar stages of discovery and trial preparation).

Moreover, due to the substantial overlap in factual allegations and legal issues described above, absent consolidation, discovery on many subjects in the Legacy Adversary Proceedings would likely be duplicative, causing the parties to incur unnecessary costs and delay. For example, Rafael Mayer's knowledge as an officer of Legacy Capital[3] of suspicious facts concerning BLMIS and any investigation of those facts directly relate to Legacy Capital's good faith defense and the Subsequent Transferee Defendants' challenge to the avoidability of the Legacy Initial Transfers. In addition, the Trustee intends to rely on the same expert testimony and documents to establish that BLMIS operated a Ponzi scheme during all relevant times and that the transfers made to Legacy Capital originated with BLMIS. Thus, absent consolidation, duplicative discovery is likely to occur. This too supports consolidation. *Varghese v. JP Morgan Chase & Co.*, 14 Civ. 1718 (PGG), 15 Civ. 3023 (PGG), 2016 WL 4718413, at *4

---

[3] Legacy Initial Transfer Action, ECF No. 139 at ¶ 1; Subsequent Transfer Action, ECF No. 107 at ¶ 54.

12

(S.D.N.Y. Sept. 9, 2016) (observing that absent consolidation the actions would involve duplicative document production and depositions); *Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*, 208 F.R.D. 59, 61 (S.D.N.Y. 2002) (stating that a chief advantage of consolidation is that it avoids the waste associated with duplicative discovery).

By consolidating the Legacy Adversary Proceedings for all pre-trial matters, the parties will be able to engage in coordinated discovery that would only promote efficiency. And consolidation would eliminate the risk of conflicting or inconsistent decisions on the common legal issues, whether on summary judgment or at trial.[4] *Barkley v. Olympia Mortg. Co.*, No. 04-CV-875(KAM)(RLM), 2010 WL 3709278, at *27 (E.D.N.Y. Sept. 13, 2010), *aff'd*, 557 F. App'x 22 (2d Cir. 2014), *as amended* (Jan. 30, 2014) ("[o]ne of the primary objectives of consolidation is to prevent separate actions from producing conflicting results." (quoting *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 532 (S.D.N.Y. 1987)).

Importantly, the Legacy Initial Transfer Action and Legacy Subsequent Transfer Action will retain their separate identities and the parties their separate rights. *See Hall*, 138 S. Ct. at 1130 ("actions do not lose their separate identity because of consolidation") (internal quotations omitted); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 130 (S.D.N.Y. 1997) (consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another"). The time required to resolve the claims against the defendants in both actions will be no greater if the Legacy Initial Transfer Action and Legacy Subsequent Transfer Action are consolidated. Resolution of both actions can proceed more quickly and less expensively if the actions are consolidated because both motion

---

[4] As noted above, Legacy Capital has consented to entry of final orders and judgments by this Court. *See* Legacy Initial Transfer Action, ECF No. 230, at ¶ 2. Rafael Mayer, David Mayer, Prince Resources, Prince Capital, and KLOF have not consented. *See* Legacy Subsequent Transfer Action, ECF Nos. 104 at p. 24, 105 at p. 22, 106 at p. 21, 107 at p. 20, and 109.

practice and discovery will be streamlined.  In addition, Legacy Capital and Rafael Mayer have the same counsel thus reducing possible delay or confusion.  Therefore, the risk of prejudice to the defendants, if any, from consolidation is minimal and outweighed by the efficiency to be gained by consolidation.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests entry of an order, substantially in the form of the proposed order annexed hereto as **Exhibit A**, consolidating the Legacy Adversary Proceedings for all pre-trial matters and granting such other and further relief as is just and proper.

Dated: New York, New York
February 24, 2022

Respectfully Submitted,

BAKER & HOSTETLER LLP

By: */s/ David J. Sheehan*
David J. Sheehan
Oren J. Warshavsky
Jason S. Oliver
Tatiana Markel
Carrie A. Longstaff
Peter B. Shapiro
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

14