# Exhibit 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
|                 Plaintiff-Applicant, | SIPA LIQUIDATION |
|       v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
|                 Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
|                 Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
|                 Plaintiff, | |
|       v. | Adv. Pro. Nos. listed on Exhibit 1 Attached Hereto |
| DEFENDANTS LISTED ON EXHIBIT 1 ATTACHED HERETO, | |
|                 Defendants. | |

**DECLARATION OF REGINA GRIFFIN IN SUPPORT OF THE TRUSTEE'S
OMNIBUS MOTION FOR LEAVE TO REPLEAD PURSUANT TO
FED. R. CIV. P. 15(a) AND COURT ORDER AUTHORIZING
LIMITED DISCOVERY PURSUANT TO FED. R. CIV. P. 26(d)(1)**

I, Regina Griffin, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a member of the Bar of this Court and a partner with the law firm of Baker &

Hostetler LLP, which is serving as counsel to Irving H. Picard, as trustee (the "Trustee") for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities

Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), and the estate of Bernard L. Madoff ("Madoff"), individually.

2.    As counsel to the Trustee for the liquidation of BLMIS, and Madoff, individually, I have personal knowledge of the facts stated herein except where the basis is otherwise identified.

3.    I make this declaration ("Declaration") to transmit to this Court true and correct copies of documents and provide relevant information in connection with the Trustee's Omnibus Motion for Leave to Replead Pursuant to Fed. R. Civ. P. 15(a) and Court Order Authorizing Limited Discovery Pursuant to Fed. R. Civ. P. 26(d)(1) (the "Motion"), as further detailed in the Trustee's Memorandum of Law in Support filed herewith.

4.    On April 27, 2014 and July 6, 2014, the District Court issued decisions on the good faith defense under Bankruptcy Code (the "Code") sections 548(c) and 550(b) in a SIPA liquidation (the "Good Faith Decision")[1] and the extraterritorial application of Code section 550(a)(2) (the "Extraterritoriality Decision"),[2] respectively.

5.    Exhibit A, attached hereto, is a list denoting in which adversary proceedings the Trustee seeks leave to replead the operative complaint and/or an order compelling further discovery.

6.    Exhibit B, attached hereto, is a true and correct copy of a list of adversary proceedings in which the in which the Trustee's Motion seeks leave to amend the operative complaints.

---

[1] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR), 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).

[2] *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR), 2014 WL 2998557 (S.D.N.Y. July 6, 2014).

7.     Exhibit C, attached hereto, is a true and correct copy of the specific adversary proceedings in which the Trustee's Motion requests authorization to engage in limited expedited discovery.

8.     Exhibit C-1, attached hereto, is a list of the specific adversary proceedings identified on Exhibit C for which the Trustee has received no productions of documents from any defendant.

9.     Exhibit C-2, attached hereto, is a list of specific adversary proceedings identified on Exhibit C for which the Trustee has received at least one document production from a defendant or related third-party.

10.    Exhibit D, attached hereto, is a copy of the proposed Limited Document Demands defining the scope and nature of the limited expedited discovery requested in the Trustee's Motion seeking an Order from this Court that directs compliance by the defendants in the adversary proceedings identified on Exhibit C.

11.    Exhibit E, attached hereto, is a copy of the Transcript at Oral Argument, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. Oct. 12, 2012), ECF No. 401.

12.    Trustee's counsel is not seeking deposition testimony at this time from any of the Exhibit C Defendants.  Rather, the narrowly tailored documents requested should be readily identifiable by the Exhibit C Defendants.

13.    No prior application or motion for similar relief has been made to this or any other court.

I declare under penalties of perjury that the foregoing is true and correct.

Dated:  August 28, 2014                     By: /s/ Regina Griffin
       New York, New York                  Regina Griffin
                                       Baker & Hostetler LLP
                                       45 Rockefeller Plaza
                                       New York, NY 10111
                                       Telephone: (212) 589-4200
                                       Facsimile: (212) 589-4201
                                       Email: rgriffin@bakerlaw.com

# EXHIBIT 1

**EXHIBIT 1**

| Adversary Proceeding Number | Case Name |
|---|---|
| 09-01154 | Picard v. Vizcaya Partners Limited |
| 09-01239 | Picard v. Fairfield Sentry Limited |
| 09-01364 | Picard v. HSBC Bank plc |
| 09-01365 | Picard v. Thybo Asset Management Limited |
| 10-04284 | Picard v. Plaza Investments International Limited |
| 10-04285 | Picard v. UBS AG |
| 10-04287 | Picard v. Cardinal Management |
| 10-04330 | Picard v. Square One Fund Ltd |
| 10-04457 | Picard v. Equity Trading Fund |
| 10-04471 | Picard v. Citrus Investment Holdings Ltd. |
| 10-05120 | Picard v. Oreades SICAV |
| 10-05229 | Picard v. Defender Limited |
| 10-05286 | Picard v. Legacy Capital Ltd. |
| 10-05311 | Picard v. UBS AG |
| 10-05345 | Picard v. Citibank, N.A. |
| 10-05346 | Picard v. Merrill Lynch International |
| 10-05348 | Picard v. Nomura Bank International plc |
| 10-05351 | Picard v. Banco Bilbao Vizcaya Argentaria, S.A. |
| 10-05353 | Picard v. Natixis |
| 10-05354 | Picard v. ABN AMRO Bank, N.A. |
| 10-05355 | Picard v. ABN AMRO Bank (Ireland) Ltd. |
| 10-05415 | Picard v. American Securities Management, L.P. |
| 11-01724 | Picard v. Pictet et Cie |
| 11-01725 | Picard v. Banque J. Safra (Suisse) SA f/k/a Banque Jacob Safra (Suisse) SA |
| 11-01885 | Picard v. Safra National Bank of New York |
| 11-02149 | Picard v. Banque Syz & Co., SA |
| 11-02493 | Picard v. Abu Dhabi Investment Authority |
| 11-02537 | Picard v. Orbita Capital Return Strategy |
| 11-02538 | Picard v. Quilvest Finance Ltd. |
| 11-02539 | Picard v. Meritz Fire & Insurance Co. Ltd. |
| 11-02540 | Picard v. Lion Global Investors Limited |
| 11-02541 | Picard v. First Gulf Bank |
| 11-02542 | Picard v. Parson Finance Panama S.A. |
| 11-02551 | Picard v. Delta National Bank and Trust Company |
| 11-02553 | Picard v. Unifortune Asset Management SGR SpA |
| 11-02554 | Picard v. National Bank of Kuwait S.A.K. |
| 11-02568 | Picard v. Cathay Life Insurance Co. Ltd. |
| 11-02569 | Picard v. Barclays Bank (Suisse) S.A. |
| 11-02570 | Picard v. Banca Carige S.P.A. |
| 11-02571 | Picard v. Banque Privee Espirito Santo S.A. |
| 11-02572 | Picard v. Korea Exchange Bank |
| 11-02573 | Picard v. Sumitomo Trust and Banking Co., Ltd. |
| 11-02730 | Picard v. Atlantic Security Bank |
| 11-02733 | Picard v. Naidot & Co. |

# EXHIBIT 1

| Adversary Proceeding Number | Case Name |
|---|---|
| 11-02759 | Picard v. Nomura International plc |
| 11-02760 | Picard v. ABN Amro Bank N.V. |
| 11-02761 | Picard v. KBC Investments Limited |
| 11-02762 | Picard v. Lighthouse Investment Partners LLC |
| 11-02763 | Picard v. Inteligo Bank Ltd. |
| 11-02784 | Picard v. Somers Dublin Limited |
| 11-02796 | Picard v. BNP Paribas Arbitrage SNC |
| 11-02910 | Picard v. Merrill Lynch Bank (Suisse) SA |
| 11-02922 | Picard v. Bank Julius Baer & Co. Ltd. |
| 11-02923 | Picard v. Falcon Private Bank Ltd. |
| 11-02929 | Picard v. LGT Bank in Liechtenstein Ltd. |
| 12-01002 | Picard v. The Public Institution For Social Security |
| 12-01004 | Picard v. Fullerton Capital PTE Ltd. |
| 12-01005 | Picard v. SICO Limited |
| 12-01019 | Picard v. Banco Itau |
| 12-01021 | Picard v. Grosvenor Investment Management |
| 12-01023 | Picard v. Arden Asset Management |
| 12-01046 | Picard v. SNS Bank N.V. |
| 12-01047 | Picard v. Koch Industries Inc. |
| 12-01048 | Picard v. Banco General S.A. |
| 12-01194 | Picard v. Kookmin Bank |
| 12-01195 | Picard v. Six Sis AG |
| 12-01202 | Picard v. Vontobel AG |
| 12-01205 | Picard v. Multi Strategy Fund Ltd |
| 12-01207 | Picard v. Lloyds TSB Bank plc |
| 12-01209 | Picard v. BSI AG |
| 12-01210 | Picard v. Schroder & Co. |
| 12-01211 | Picard v. Union Securities |
| 12-01216 | Picard v. Bank Hapoalim |
| 12-01512 | Picard v. ZCM Asset Holding Co |
| 12-01565 | Picard v. Standard Chartered Financial Services |
| 12-01566 | Picard v. UKFP (Asia) Nominees Ltd. |
| 12-01576 | Picard v. BNP Paribas S.A. |
| 12-01577 | Picard v. Dresdner Bank |
| 12-01690 | Picard v. EFG Bank S.A. |
| 12-01691 | Picard v. Banque Degroof SA |
| 12-01693 | Picard v. Lombard Odier Darier Hentsch & Cie |
| 12-01694 | Picard v. Banque Cantonale Vaudoise |
| 12-01695 | Picard v. Bordier & Cie |
| 12-01697 | Picard v. ABN AMRO Fund Services (Isle of Man) Nominees Limited |
| 12-01700 | Picard v. Caprice International Group Inc. |
| 12-01701 | Picard v. RD Trust |
| 12-01702 | Picard v. Barreneche, Inc. |

# EXHIBIT A

| Adversary Proceeding Number | Case Name | Replead | Discovery |
|---|---|:---:|:---:|
| 09-01154 | Picard v. Vizcaya Partners Limited | X | |
| 09-01239 | Picard v. Fairfield Sentry Limited | X | |
| 09-01364 | Picard v. HSBC Bank plc | X | |
| 09-01365 | Picard v. Thybo Asset Management Limited | X | X |
| 10-04284 | Picard v. Plaza Investments International Limited | X | X |
| 10-04285 | Picard v. UBS AG | X | |
| 10-04287 | Picard v. Cardinal Management | X | X |
| 10-04330 | Picard v. Square One Fund Ltd | X | X |
| 10-04457 | Picard v. Equity Trading Fund | X | X |
| 10-04471 | Picard v. Citrus Investment Holdings Ltd. | X | X |
| 10-05120 | Picard v. Oreades SICAV | X | X |
| 10-05229 | Picard v. Defender Limited* | X | X |
| 10-05286 | Picard v. Legacy Capital Ltd. | X | |
| 10-05311 | Picard v. UBS AG | X | |
| 10-05345 | Picard v. Citibank, N.A. | X | X |
| 10-05346 | Picard v. Merrill Lynch International | X | X |
| 10-05348 | Picard v. Nomura Bank International plc | X | X |
| 10-05351 | Picard v. Banco Bilbao Vizcaya Argentaria, S.A. | X | X |
| 10-05353 | Picard v. Natixis | X | X |
| 10-05354 | Picard v. ABN AMRO Bank, N.A. | X | X |
| 10-05355 | Picard v. ABN AMRO Bank (Ireland) Ltd. | X | X |
| 10-05415 | Picard v. American Securities Management, L.P. | X | |
| 11-01724 | Picard v. Pictet et Cie | X | |
| 11-01725 | Picard v. Banque J. Safra (Suisse) SA f/k/a Banque Jacob Safra (Suisse) SA | X | |
| 11-01885 | Picard v. Safra National Bank of New York | X | |
| 11-02149 | Picard v. Banque Syz & Co., SA | X | X |
| 11-02493 | Picard v. Abu Dhabi Investment Authority | X | X |
| 11-02537 | Picard v. Orbita Capital Return Strategy | X | X |
| 11-02538 | Picard v. Quilvest Finance Ltd. | X | X |
| 11-02539 | Picard v. Meritz Fire & Insurance Co. Ltd. | X | X |
| 11-02540 | Picard v. Lion Global Investors Limited | X | X |
| 11-02541 | Picard v. First Gulf Bank | X | X |
| 11-02542 | Picard v. Parson Finance Panama S.A. | X | X |
| 11-02551 | Picard v. Delta National Bank and Trust Company | X | X |
| 11-02553 | Picard v. Unifortune Asset Management SGR SpA | X | X |
| 11-02554 | Picard v. National Bank of Kuwait S.A.K. | X | X |
| 11-02568 | Picard v. Cathay Life Insurance Co. Ltd. | X | X |
| 11-02569 | Picard v. Barclays Bank (Suisse) S.A. | X | X |
| 11-02570 | Picard v. Banca Carige S.P.A. | X | X |
| 11-02571 | Picard v. Banque Privee Espirito Santo S.A. | X | X |
| 11-02572 | Picard v. Korea Exchange Bank | X | X |
| 11-02573 | Picard v. Sumitomo Trust and Banking Co., Ltd. | X | X |
| 11-02730 | Picard v. Atlantic Security Bank | X | X |
| 11-02733 | Picard v. Naidot & Co. | X | X |
| 11-02759 | Picard v. Nomura International plc | X | X |
| 11-02760 | Picard v. ABN Amro Bank N.V. | X | X |
| 11-02761 | Picard v. KBC Investments Limited | X | X |
| 11-02762 | Picard v. Lighthouse Investment Partners LLC | X | X |
| 11-02763 | Picard v. Inteligo Bank Ltd. | X | X |
| 11-02784 | Picard v. Somers Dublin Limited | X | X |
| 11-02796 | Picard v. BNP Paribas Arbitrage SNC | X | X |

| Adversary Proceeding Number | Case Name | Replead | Discovery |
|---|---|---|---|
| 11-02910 | Picard v. Merrill Lynch Bank (Suisse) SA | X | X |
| 11-02922 | Picard v. Bank Julius Baer & Co. Ltd. | X | X |
| 11-02923 | Picard v. Falcon Private Bank Ltd. | X | X |
| 11-02929 | Picard v. LGT Bank in Liechtenstein Ltd. | X | X |
| 12-01002 | Picard v. The Public Institution For Social Security | X | X |
| 12-01004 | Picard v. Fullerton Capital PTE Ltd. | X | X |
| 12-01005 | Picard v. SICO Limited | X | X |
| 12-01019 | Picard v. Banco Itau | X | X |
| 12-01021 | Picard v. Grosvenor Investment Management | X | X |
| 12-01023 | Picard v. Arden Asset Management | X | X |
| 12-01046 | Picard v. SNS Bank N.V. | X | X |
| 12-01047 | Picard v. Koch Industries Inc. | X | X |
| 12-01048 | Picard v. Banco General S.A. | X | X |
| 12-01194 | Picard v. Kookmin Bank | X | X |
| 12-01195 | Picard v. Six Sis AG | X | X |
| 12-01202 | Picard v. Vontobel AG | X | X |
| 12-01205 | Picard v. Multi Strategy Fund Ltd | X | X |
| 12-01207 | Picard v. Lloyds TSB Bank plc | X | X |
| 12-01209 | Picard v. BSI AG | X | X |
| 12-01210 | Picard v. Schroder & Co. | X | X |
| 12-01211 | Picard v. Union Securities | X | X |
| 12-01216 | Picard v. Bank Hapoalim | X | X |
| 12-01512 | Picard v. ZCM Asset Holding Co | X | X |
| 12-01565 | Picard v. Standard Chartered Financial Services | X | X |
| 12-01566 | Picard v. UKFP (Asia) Nominees Ltd. | X | X |
| 12-01576 | Picard v. BNP Paribas S.A. | X | X |
| 12-01577 | Picard v. Dresdner Bank | X | X |
| 12-01690 | Picard v. EFG Bank S.A. | X | X |
| 12-01691 | Picard v. Banque Degroof SA** | X | X |
| 12-01693 | Picard v. Lombard Odier Darier Hentsch & Cie | X | X |
| 12-01694 | Picard v. Banque Cantonale Vaudoise | X | X |
| 12-01695 | Picard v. Bordier & Cie | X | X |
| 12-01697 | Picard v. ABN AMRO Fund Services (Isle of Man) Nominees Limited | X | X |
| 12-01700 | Picard v. Caprice International Group Inc. | X | X |
| 12-01701 | Picard v. RD Trust | X | X |
| 12-01702 | Picard v. Barreneche, Inc. | X | X |

\* - The Trustee seeks discovery from only the following specific defendant named in this adversary proceeding, Reliance Management (BVI) Ltd., and from its principal, Tim Brockmann.

\*\* - The Trustee seeks discovery from only the following specific defendants named in this adversary proceeding: (i) Banque Degroof SA/NV (a/k/a Banque Degroof Bruxelles a/k/a Banque Degroof SA/NV); (ii) Banque Degroof Luxembourg SA; (iii) Banque Degroof France SA (a/k/a Banque Degroof et Phillipe SA); (iv) Degroof Gestion Institutionnelle Luxembourg SA; (v) Aforge Finance Holding; (vi) Aforge Finance; (vii) Aforge Capital Management SA; and (viii) Aforge Gestion.

# EXHIBIT B

**EXHIBIT B**

| Adversary Proceeding Number | Case Name |
|---|---|
| 09-01154 | Picard v. Vizcaya Partners Limited |
| 09-01239 | Picard v. Fairfield Sentry Limited |
| 09-01364 | Picard v. HSBC Bank plc |
| 09-01365 | Picard v. Thybo Asset Management Limited |
| 10-04284 | Picard v. Plaza Investments International Limited |
| 10-04285 | Picard v. UBS AG |
| 10-04287 | Picard v. Cardinal Management |
| 10-04330 | Picard v. Square One Fund Ltd |
| 10-04457 | Picard v. Equity Trading Fund |
| 10-04471 | Picard v. Citrus Investment Holdings Ltd. |
| 10-05120 | Picard v. Oreades SICAV |
| 10-05229 | Picard v. Defender Limited* |
| 10-05286 | Picard v. Legacy Capital Ltd. |
| 10-05311 | Picard v. UBS AG |
| 10-05345 | Picard v. Citibank, N.A. |
| 10-05346 | Picard v. Merrill Lynch International |
| 10-05348 | Picard v. Nomura Bank International plc |
| 10-05351 | Picard v. Banco Bilbao Vizcaya Argentaria, S.A. |
| 10-05353 | Picard v. Natixis |
| 10-05354 | Picard v. ABN AMRO Bank, N.A. |
| 10-05355 | Picard v. ABN AMRO Bank (Ireland) Ltd. |
| 10-05415 | Picard v. American Securities Management, L.P. |
| 11-01724 | Picard v. Pictet et Cie |
| 11-01725 | Picard v. Banque J. Safra (Suisse) SA f/k/a Banque Jacob Safra (Suisse) SA |
| 11-01885 | Picard v. Safra National Bank of New York |
| 11-02149 | Picard v. Banque Syz & Co., SA |
| 11-02493 | Picard v. Abu Dhabi Investment Authority |
| 11-02537 | Picard v. Orbita Capital Return Strategy |
| 11-02538 | Picard v. Quilvest Finance Ltd. |
| 11-02539 | Picard v. Meritz Fire & Insurance Co. Ltd. |
| 11-02540 | Picard v. Lion Global Investors Limited |
| 11-02541 | Picard v. First Gulf Bank |
| 11-02542 | Picard v. Parson Finance Panama S.A. |
| 11-02551 | Picard v. Delta National Bank and Trust Company |
| 11-02553 | Picard v. Unifortune Asset Management SGR SpA |
| 11-02554 | Picard v. National Bank of Kuwait S.A.K. |
| 11-02568 | Picard v. Cathay Life Insurance Co. Ltd. |
| 11-02569 | Picard v. Barclays Bank (Suisse) S.A. |
| 11-02570 | Picard v. Banca Carige S.P.A. |
| 11-02571 | Picard v. Banque Privee Espirito Santo S.A. |
| 11-02572 | Picard v. Korea Exchange Bank |
| 11-02573 | Picard v. Sumitomo Trust and Banking Co., Ltd. |
| 11-02730 | Picard v. Atlantic Security Bank |
| 11-02733 | Picard v. Naidot & Co. |

**EXHIBIT B**

| Adversary Proceeding Number | Case Name |
|---|---|
| 11-02759 | Picard v. Nomura International plc |
| 11-02760 | Picard v. ABN Amro Bank N.V. |
| 11-02761 | Picard v. KBC Investments Limited |
| 11-02762 | Picard v. Lighthouse Investment Partners LLC |
| 11-02763 | Picard v. Inteligo Bank Ltd. |
| 11-02784 | Picard v. Somers Dublin Limited |
| 11-02796 | Picard v. BNP Paribas Arbitrage SNC |
| 11-02910 | Picard v. Merrill Lynch Bank (Suisse) SA |
| 11-02922 | Picard v. Bank Julius Baer & Co. Ltd. |
| 11-02923 | Picard v. Falcon Private Bank Ltd. |
| 11-02929 | Picard v. LGT Bank in Liechtenstein Ltd. |
| 12-01002 | Picard v. The Public Institution For Social Security |
| 12-01004 | Picard v. Fullerton Capital PTE Ltd. |
| 12-01005 | Picard v. SICO Limited |
| 12-01019 | Picard v. Banco Itau |
| 12-01021 | Picard v. Grosvenor Investment Management |
| 12-01023 | Picard v. Arden Asset Management |
| 12-01046 | Picard v. SNS Bank N.V. |
| 12-01047 | Picard v. Koch Industries Inc. |
| 12-01048 | Picard v. Banco General S.A. |
| 12-01194 | Picard v. Kookmin Bank |
| 12-01195 | Picard v. Six Sis AG |
| 12-01202 | Picard v. Vontobel AG |
| 12-01205 | Picard v. Multi Strategy Fund Ltd |
| 12-01207 | Picard v. Lloyds TSB Bank plc |
| 12-01209 | Picard v. BSI AG |
| 12-01210 | Picard v. Schroder & Co. |
| 12-01211 | Picard v. Union Securities |
| 12-01216 | Picard v. Bank Hapoalim |
| 12-01512 | Picard v. ZCM Asset Holding Co |
| 12-01565 | Picard v. Standard Chartered Financial Services |
| 12-01566 | Picard v. UKFP (Asia) Nominees Ltd. |
| 12-01576 | Picard v. BNP Paribas S.A. |
| 12-01577 | Picard v. Dresdner Bank |
| 12-01690 | Picard v. EFG Bank S.A. |
| 12-01691 | Picard v. Banque Degroof SA** |
| 12-01693 | Picard v. Lombard Odier Darier Hentsch & Cie |
| 12-01694 | Picard v. Banque Cantonale Vaudoise |
| 12-01695 | Picard v. Bordier & Cie |

# EXHIBIT C

**EXHIBIT C**

| Adversary Proceeding Number | Case Name |
|---|---|
| 09-01365 | Picard v. Thybo Asset Management Limited |
| 10-04284 | Picard v. Plaza Investments International Limited |
| 10-04287 | Picard v. Cardinal Management |
| 10-04330 | Picard v. Square One Fund Ltd |
| 10-04457 | Picard v. Equity Trading Fund |
| 10-04471 | Picard v. Citrus Investment Holdings Ltd. |
| 10-05120 | Picard v. Oreades SICAV |
| 10-05229 | Picard v. Defender Limited* |
| 10-05345 | Picard v. Citibank, N.A. |
| 10-05346 | Picard v. Merrill Lynch International |
| 10-05348 | Picard v. Nomura Bank International plc |
| 10-05351 | Picard v. Banco Bilbao Vizcaya Argentaria, S.A. |
| 10-05353 | Picard v. Natixis |
| 10-05354 | Picard v. ABN AMRO Bank, N.A. |
| 10-05355 | Picard v. ABN AMRO Bank (Ireland) Ltd. |
| 11-02149 | Picard v. Banque Syz & Co., SA |
| 11-02493 | Picard v. Abu Dhabi Investment Authority |
| 11-02537 | Picard v. Orbita Capital Return Strategy |
| 11-02538 | Picard v. Quilvest Finance Ltd. |
| 11-02539 | Picard v. Meritz Fire & Insurance Co. Ltd. |
| 11-02540 | Picard v. Lion Global Investors Limited |
| 11-02541 | Picard v. First Gulf Bank |
| 11-02542 | Picard v. Parson Finance Panama S.A. |
| 11-02551 | Picard v. Delta National Bank and Trust Company |
| 11-02553 | Picard v. Unifortune Asset Management SGR SpA |
| 11-02554 | Picard v. National Bank of Kuwait S.A.K. |
| 11-02568 | Picard v. Cathay Life Insurance Co. Ltd. |
| 11-02569 | Picard v. Barclays Bank (Suisse) S.A. |
| 11-02570 | Picard v. Banca Carige S.P.A. |
| 11-02571 | Picard v. Banque Privee Espirito Santo S.A. |
| 11-02572 | Picard v. Korea Exchange Bank |
| 11-02573 | Picard v. Sumitomo Trust and Banking Co., Ltd. |
| 11-02730 | Picard v. Atlantic Security Bank |
| 11-02733 | Picard v. Naidot & Co. |
| 11-02759 | Picard v. Nomura International plc |
| 11-02760 | Picard v. ABN Amro Bank N.V. |
| 11-02761 | Picard v. KBC Investments Limited |
| 11-02762 | Picard v. Lighthouse Investment Partners LLC |
| 11-02763 | Picard v. Inteligo Bank Ltd. |
| 11-02784 | Picard v. Somers Dublin Limited |
| 11-02796 | Picard v. BNP Paribas Arbitrage SNC |
| 11-02910 | Picard v. Merrill Lynch Bank (Suisse) SA |
| 11-02922 | Picard v. Bank Julius Baer & Co. Ltd. |

**EXHIBIT C**

| Adversary Proceeding Number | Case Name |
|---|---|
| 11-02923 | Picard v. Falcon Private Bank Ltd. |
| 11-02929 | Picard v. LGT Bank in Liechtenstein Ltd. |
| 12-01002 | Picard v. The Public Institution For Social Security |
| 12-01004 | Picard v. Fullerton Capital PTE Ltd. |
| 12-01005 | Picard v. SICO Limited |
| 12-01019 | Picard v. Banco Itau |
| 12-01021 | Picard v. Grosvenor Investment Management |
| 12-01023 | Picard v. Arden Asset Management |
| 12-01046 | Picard v. SNS Bank N.V. |
| 12-01047 | Picard v. Koch Industries Inc. |
| 12-01048 | Picard v. Banco General S.A. |
| 12-01194 | Picard v. Kookmin Bank |
| 12-01195 | Picard v. Six Sis AG |
| 12-01202 | Picard v. Vontobel AG |
| 12-01205 | Picard v. Multi Strategy Fund Ltd |
| 12-01207 | Picard v. Lloyds TSB Bank plc |
| 12-01209 | Picard v. BSI AG |
| 12-01210 | Picard v. Schroder & Co. |
| 12-01211 | Picard v. Union Securities |
| 12-01216 | Picard v. Bank Hapoalim |
| 12-01512 | Picard v. ZCM Asset Holding Co |
| 12-01565 | Picard v. Standard Chartered Financial Services |
| 12-01566 | Picard v. UKFP (Asia) Nominees Ltd. |
| 12-01576 | Picard v. BNP Paribas S.A. |
| 12-01577 | Picard v. Dresdner Bank |
| 12-01690 | Picard v. EFG Bank S.A. |

# EXHIBIT C-1

| Adversary Proceeding Number | Case Name |
|---|---|
| 09-01365 | Picard v. Thybo Asset Management Limited |
| 10-04287 | Picard v. Cardinal Management |
| 10-04330 | Picard v. Square One Fund Ltd |
| 10-04457 | Picard v. Equity Trading Fund |
| 10-04471 | Picard v. Citrus Investment Holdings Ltd. |
| 10-05120 | Picard v. Oreades SICAV |
| 10-05229 | Picard v. Defender Limited* |
| 10-05348 | Picard v. Nomura Bank International plc |
| 11-02149 | Picard v. Banque Syz & Co., SA |
| 11-02493 | Picard v. Abu Dhabi Investment Authority |
| 11-02537 | Picard v. Orbita Capital Return Strategy |
| 11-02538 | Picard v. Quilvest Finance Ltd. |
| 11-02539 | Picard v. Meritz Fire & Insurance Co. Ltd. |
| 11-02540 | Picard v. Lion Global Investors Limited |
| 11-02541 | Picard v. First Gulf Bank |
| 11-02542 | Picard v. Parson Finance Panama S.A. |
| 11-02551 | Picard v. Delta National Bank and Trust Company |
| 11-02553 | Picard v. Unifortune Asset Management SGR SpA |
| 11-02568 | Picard v. Cathay Life Insurance Co. Ltd. |
| 11-02570 | Picard v. Banca Carige S.P.A. |
| 11-02571 | Picard v. Banque Privee Espirito Santo S.A. |
| 11-02572 | Picard v. Korea Exchange Bank |
| 11-02573 | Picard v. Sumitomo Trust and Banking Co., Ltd. |
| 11-02730 | Picard v. Atlantic Security Bank |
| 11-02733 | Picard v. Naidot & Co. |
| 11-02759 | Picard v. Nomura International plc |
| 11-02760 | Picard v. ABN Amro Bank N.V. |
| 11-02761 | Picard v. KBC Investments Limited |
| 11-02762 | Picard v. Lighthouse Investment Partners LLC |
| 11-02763 | Picard v. Inteligo Bank Ltd. |
| 11-02784 | Picard v. Somers Dublin Limited |
| 11-02796 | Picard v. BNP Paribas Arbitrage SNC |
| 11-02910 | Picard v. Merrill Lynch Bank (Suisse) SA |
| 11-02922 | Picard v. Bank Julius Baer & Co. Ltd. |
| 11-02923 | Picard v. Falcon Private Bank Ltd. |
| 11-02929 | Picard v. LGT Bank in Liechtenstein Ltd. |
| 12-01002 | Picard v. The Public Institution For Social Security |
| 12-01004 | Picard v. Fullerton Capital PTE Ltd. |
| 12-01005 | Picard v. SICO Limited |
| 12-01019 | Picard v. Banco Itau |
| 12-01021 | Picard v. Grosvenor Investment Management |
| 12-01046 | Picard v. SNS Bank N.V. |
| 12-01047 | Picard v. Koch Industries Inc. |
| 12-01048 | Picard v. Banco General S.A. |
| 12-01194 | Picard v. Kookmin Bank |
| 12-01195 | Picard v. Six Sis AG |

| Adversary Proceeding Number | Case Name |
|---|---|
| 12-01202 | Picard v. Vontobel AG |
| 12-01205 | Picard v. Multi Strategy Fund Ltd |
| 12-01207 | Picard v. Lloyds TSB Bank plc |
| 12-01209 | Picard v. BSI AG |
| 12-01210 | Picard v. Schroder & Co. |
| 12-01211 | Picard v. Union Securities |
| 12-01216 | Picard v. Bank Hapoalim |
| 12-01512 | Picard v. ZCM Asset Holding Co |
| 12-01566 | Picard v. UKFP (Asia) Nominees Ltd. |

# EXHIBIT C-2

| Adversary Proceeding Number | Case Name | Producing Party | Relationship of Producing Party | Number of Documents Produced | Production Notes |
|---|---|---|---|---|---|
| 10-05345 | Picard v. Citibank, N.A. | Citibank, N.A.<br>Citigroup Global Markets Limited (CGML) | Defendant<br>Related Third Party | 32,091<br>299 | Citibank N.A. largely produced records for BLMIS accountholders who maintained accounts with defendant; only [72] documents relevant to this case.  CGML's parent company produced what appears to be sampling of relevant documents, but appear to not consist of all available documents because of the small production size. |
| 10-05346 | Picard v. Merrill Lynch International | Merrill Lynch International | Defendant | 1,315 | Emails produced were limited to 2007 and 2008; production included documents produced in triplicate; over 500 documents were Fairfield Sentry Limited's weekly net asset value reports. |
| 10-05351 | Picard v. Banco Bilbao Vizcaya Argentaria, S.A. | Banco Bilbao Vizcaya Argentaria, S.A. | Defendant | 3,602 | No internal emails, credit committee/risk management memoranda, due diligence files; the produced transaction materials were only representative samples. |
| 10-05353 | Picard v. Natixis | Natixis Financial Products, Inc. (succeeded in interest by Natixis Financial Products, LLC) | Related Third Party | 610 | Reproduced documents that were originally produced in response to a FINRA investigation; only produced documents pertinent to U.S. based transactions. |
| 10-05354<br>11-02760 | Picard v. ABN AMRO Bank, N.A. | ABN AMRO Bank N.A. | Defendant | 5 | Records unrelated to adversary proceeding, pertain to other BLMIS accountholder who maintained accounts with defendant. |
| 10-05355 | Picard v. ABN AMRO Bank (Ireland) Ltd. | Fortis Prime Fund Solutions (USA) LLC and/or Fortis PFS USA LLC | Related Third Party | 1,444 | Production is heavily redacted; records produced pertained to services provided to a feeder fund defendant in a different adversary proceeding. |
| 11-02554 | Picard v. National Bank of Kuwait S.A.K. | Picard v. National Bank of Kuwait S.A.K. | Defendant | 91 | Documents appear to be sampling of relevant documents, but appear to not consist of all available documents because of small production size. |
| 11-02569 | Picard v. Barclays Bank (Suisse) S.A. | Barcclays Bank S.A. | Related Third Party | 3,705 | Records unrelated to adversary proceeding, pertain to other BLMIS accountholders who maintained accounts with defendant. |
| 12-01023 | Picard v. Arden Asset Management | Arden Asset Management LLC | Defendant | 525 | Documents appear to be sampling of relevant documents, but appear to not consist of all available documents because of small production size. |
| 10-04284 | Picard v. Plaza Investments International Limited | Plaza Investments International Limited | Defendant | 244 | Sampling of records given, many in duplicate made in unrelated class action.  Allowed Trustee to view an additional 2,000 documents, but Trustee could not take or copy those records. |
| 12-01576 | Picard v. BNP Paribas S.A. | BNP Paribas S.A. | Defendant | 1,691 | Trustee receeieved a sampling of documents pertinent to the adversary proceeding. |
| 12-01565 | Picard v. Standard Chartered Financial Services | Standard Chartered International (USA) Ltd., f/k/a American Express Bank Ltd. | Related Third Party | 248 | Documents appear to be sampling of relevant documents, but appear to not consist of all available documents because of small production size.  No emails produced. |

# EXHIBIT D

## Proposed Limited Document Demands

## DOCUMENT REQUESTS

1.     Documents concerning the review, analysis, due diligence, and ongoing monitoring of actual or prospective investments and transactions involving BLMIS, Feeder Funds, or BLMIS-Related Investment Products.  Exemplars of such documents include, but are not limited to:

- reports, communications, emails, documents discussing trading activity, or performance or purported returns,

- meetings or telephonic communications between any representative(s) of the Defendant, BLMIS, or Feeder Funds,

- account statements,  trade tickets, or any summary of the same;

- marketing materials, private placement memoranda, tear sheets, RiskMetric reports, questionnaires, audit information, or regulatory filings.

2.     Documents concerning Defendant(s)' investment decision, evaluation, approval, disapproval, or ongoing monitoring of any investments or transactions involving BLMIS, Feeder Funds, or BLMIS-Related Investment Products.  Exemplars of such documents include, but are not limited to:

- Documents related to Operational Risk, credit risk, compliance, or market risk,

- Documents related to any investment committee, consultant, or other third party professional providing investment advice, risk analysis, or other diligence

- agreements with or regarding the Feeder Funds, reissues, renewals, or loans related to BLMIS, Feeder Funds, or BLMIS-Related Investment Products; and

- Non-privileged legal opinions or information received from a rating agency regarding BLMIS, Feeder Funds, or BLMIS-Related Investment Products.

3.     Documents concerning fraud, Ponzi, illegality, front-running, investigations, insolvency, or embezzlement at BLMIS or Feeder Funds.

4.     Documents concerning fees, rebates, commissions, retrocessions, or any other remuneration paid to or by Defendant(s), related to investments and transactions involving BLMIS, Feeder Funds, or BLMIS-Related Investment Products.

## DEFINITIONS

1.      The rules of construction and definitions set forth in Local Rule 26.3, as adopted by Rule 7026-1 of the Bankruptcy Rules, are hereby incorporated in their entirety by reference.

2.      "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated persons, including, but not limited to, any other Madoff family members, auditors, any current and former parents, subsidiaries, divisions, officers, directors, principals, partners, members, managers, shareholders, agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, and affiliates of the above specifically identified persons.

3.      "BLMIS-Related Investment Product" means any structured product, structured note, structured security, derivative security, certificate, financial product, and/or any other such investment that references or is otherwise linked to a Feeder Fund (as defined below).

4.      "Company" means any sole proprietorship, corporation, association, joint venture, firm, partnership, limited liability company, limited liability partnership, limited partnership, and business or legal entity in whatever form and wherever formed or located.

5.      "Defendant(s)" means and includes each or all of the defendants in this action, as well as any group of two or more defendants, and any of their parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such Defendant(s).

6.      "Documents" shall have the meaning set forth in Federal Rule of Civil Procedure 34(a)(1)(A), made applicable by Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and means "any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." Exemplary types of "Documents" include: emails, correspondence, notes, minutes, reports, agendas, opinions, marketing materials, regulatory filings, agreements, and amendments.

7.      "Feeder Funds" means all Companies, and all current and former parents, subsidiaries, divisions, officers, directors, principals, partners, managers, members, shareholders, agents, representatives, employees, attorneys, servants, predecessors, successors, and affiliates of such Companies, through which investments were made, directly or indirectly, with BLMIS, including but not limited to, those funds set forth at Exhibit 1 hereto.

8.      "Operational Risk" means the risk of change in value resulting from inadequate or failed internal processes, people and systems, from legal risks, or from external events, but not from movements in market prices, changes in interest rates, foreign exchange rates, and equity and commodity prices.

**INSTRUCTIONS**

1.     Federal Rules of Civil Procedure 26 through 37, made applicable to this proceeding pursuant to the Federal Rules of Bankruptcy Procedure, are hereby incorporated by reference.

2.     The Bankruptcy Court Orders entered on September 17, 2013, (i) establishing Procedures for Third-Party Data Rooms, and (ii) modifying the June 6, 2011 Litigation Protective Order, are hereby incorporated by reference.

3.     The applicable period for the following Document Requests is May 1, 2001 through December 2, 2010.

**MANNER OF PRODUCTION**

All documents produced to the Trustee shall be provided in accordance with and pursuant to the Protocol Governing the Production of Records, attached hereto as Exhibit 2.

# EXHIBIT 1

Representative List of BLMIS Feeder Funds

EXHIBIT 1 - Representative List of BLMIS Feeder Funds

| Entity |
| --- |
| AllWeather Strategy II |
| Alpha Prime Equity Hedged Fund |
| American Master Broad Market Fund II Ltd. |
| American Masters Broad Market Prime Fund, L.P. |
| Ariel Fund Ltd. |
| Ascot Fund Ltd. |
| Ascot Partners LP |
| Banque Syz f/b/o Isos Fund Limited |
| Cardinal Management |
| Citrus Investment Holdings |
| Defender Limited |
| Equity Trading |
| Fairfield Investment Fund Limited |
| Fairfield Lambda Limited |
| Fairfield Sentry Limited |
| Fairfield Sigma Limited |
| FIM Long - Invest PCC Limited |
| Gabriel Capital LP |
| Geocurrencies Limited S.A. |
| Greenwich Sentry Ltd. |
| Greenwich Sentry Partners Ltd. |
| Groupement Financier |
| Groupement Financier Levered Limited |
| Harley International (Cayman) Limited |
| Herald (Lux) US Absolute Return Fund |
| Herald Fund SPC |
| Herald USA Segregated One Portfolio |
| Hermes International Fund Limited (Hermes World Fund, Hermes Neutral Fund and Hermes Universal Fund) |
| Irongate Global Strategy Fund Limited |
| Kingate Euro Fund Limited |
| Kingate Global Fund Limited |
| Lagoon Investment Limited |
| Landmark Investment Fund |
| LIF US Equity Plus |
| Luxalpha SICAV |
| Maxam Absolute Return Fund |
| M-Invest Ltd. |
| Optimal Multiadvisors Ireland PLC |
| Optimal Multiadvisors Ltd. |
| Optimal Strategic US Equity Limited |
| Oreades |
| Plaza Investments International Limited |

## EXHIBIT 1 - Representative List of BLMIS Feeder Funds

| Entity |
| --- |
| Primeo Fund |
| Primeo Select Fund |
| Rye Select Broad Market Fund Ltd. |
| Rye Select Broad Market Fund XL LP |
| Rye Select Broad Market Fund, LP |
| Rye Select Broad Market Portfolio Ltd |
| Rye Select Broad Market Prime Fund |
| Rye Select Broad Market XL Portfolio Ltd. |
| Senator Fund |
| Square One Fund Limited |
| Thema Fund Ltd. (Thema Coral Fund) |
| Thema International Fund plc |
| Thema Wise Investments Limited |
| Thybo Advisors LLP |
| Thybo Asset Management Ltd |
| Thybo International Fund |
| Thybo Return Fund |
| Thybo Stable Fund Ltd. |
| Trotanoy Investment Fund Ltd. |
| UniCredit Bank Austria f/b/o Island Storm Limited |
| Vizcaya Partners Limited |

# EXHIBIT 2

Protocol Governing the Production of Records

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES INVESTOR PROTECTION
CORPORATION,

          Plaintiff-Applicant,

          v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

          Defendant.

In re:

BERNARD L. MADOFF,

          Debtor.

Adv. Pro. No. 08-01789 (BRL)

SIPA Liquidation

(Substantively Consolidated)

**LITIGATION
PROTECTIVE ORDER**

      **IT HEREBY IS ORDERED THAT,** this Litigation Protective Order shall govern the disclosure of confidential information in Adversary Proceeding No. 08-01789 (the "Main Action") and adversary proceedings related thereto (each of which is defined as an "Individual Adversary Proceeding," which defined term shall not include Adversary Proceeding No. 08-01789), (together with the Main Action, the "Actions").

**DEFINITIONS:**

      1.    This Litigation Protective Order (hereinafter, the "Order") shall govern only those materials produced in the Actions which have been or are deemed to comprise or contain **CONFIDENTIAL MATERIAL**, as defined below, whether furnished by a party named as a defendant in an adversary proceeding or a third party, regardless of whether produced voluntarily or pursuant to a formal discovery request. Nothing in this Order shall preclude a producing party

from objecting to the production of information, and this Order has no bearing on the merits of any such objection.

2.    Such material produced in the Actions may only be designated as **CONFIDENTIAL** if: (a) in the good faith judgment of the party designating the material as **CONFIDENTIAL** such material contains trade secret or other confidential research, development, or commercial information; personal identifying information; or other information the disclosure of which would breach a legal or contractual obligation or (b) otherwise is subject to protection under section 107(b) or (c) of the United States Bankruptcy Code, Bankruptcy Rules 9018 and 9037, and/or other applicable law.

3.    **CONFIDENTIAL MATERIAL** may include any type or classification of information which is so designated by the producing party in accordance with the provisions of this Order, or is otherwise deemed **CONFIDENTIAL MATERIAL** hereby, whether it be a document, information contained in a document, information revealed during a deposition or Bankruptcy Rule 2004 examination, information revealed in an interrogatory answer or any Documents (as defined by Local Bankruptcy Rule 7026-1) or portions of any of them, to the extent that they reveal information designated by the party producing such information as **CONFIDENTIAL** under the terms of this Order.

4.    The following will not be considered **CONFIDENTIAL MATERIAL:** (a) documents or other material available to the public through means other than production by the producing party; (b) documents or other material known to, or independently developed by, the receiving party; (c) documents or other material received by the receiving party without restriction from a third party; (d) documents or other material required to be produced to the receiving party by a court of competent jurisdiction (to the extent such court permits); and

(e) information sufficient to identify an individual or entity as a BLMIS customer or initial transferee of BLMIS, or as an immediate or mediate transferee of a BLMIS customer or initial transferee of BLMIS, information sufficient to identify BLMIS account numbers, amounts of withdrawals, redemptions, or transfers from and between BLMIS accounts, and immediate or mediate transfers from a BLMIS customer or initial transferee of BLMIS.  The items listed in this paragraph shall not be treated as **CONFIDENTIAL MATERIAL** under the authority granted by this Order.  However, nothing in this paragraph is intended as a ruling on the extent to which any party may claim that any particular information is **CONFIDENTIAL**, to object to the production of such information or to seek an additional protective order with respect to specific information.

### DESIGNATIONS OF CONFIDENTIAL MATERIAL:

5.      All designations of **CONFIDENTIAL MATERIAL** shall be made in good faith and not for the purpose of delaying or obstructing the ability of any other party to investigate the facts of this controversy or prepare for litigation.  Excessive, overly broad and unreasonable designations of **CONFIDENTIAL MATERIAL** may be considered by the Court as equivalent to a motion for a protective order and subject to sanctions, including attorneys' fees.

6.      Counsel for the parties may designate portions of the transcript of a deposition or the transcript of an examination conducted pursuant to Bankruptcy Rule 2004 as **CONFIDENTIAL MATERIAL** on the record during the deposition or examination, or may make additional designations within ten (10) days after the mailing or delivery of a copy of the transcript of the testimony by the court reporter to counsel who requested a copy of the transcript.  Within the ten-day period following such mailing or delivery of the transcript, any party present at the deposition may, by written notice served on the Trustee and other interested parties, designate all or any portion of the testimony as **CONFIDENTIAL MATERIAL**.  The

right to make such designation shall be waived unless made before the end of the ten-day period. Upon being informed that certain portions of a transcript are designated as **CONFIDENTIAL MATERIAL**, each party must cause each copy in its custody, possession, or control to be so marked immediately. All designations of testimony as **CONFIDENTIAL MATERIAL** must conform to the standards of paragraph 2 above, defining **CONFIDENTIAL MATERIAL,** and are also subject to the limitations of paragraph 5, requiring, among other things, that designations be made in good faith.

7. In the event that a producing party inadvertently fails to designate **CONFIDENTIAL MATERIAL** as **CONFIDENTIAL** or incorrectly designates **CONFIDENTIAL MATERIAL**, that party may make a late designation or change the designation by notifying in writing all parties to whom the **CONFIDENTIAL MATERIAL** has been disclosed. A party must serve such written notification at least thirty (30) days before the close of discovery in a particular adversary proceeding. In such event, the receiving parties shall take reasonable steps to ensure that the **CONFIDENTIAL MATERIAL** is thereafter treated in accordance with the designation. Late designation in and of itself shall not be deemed a per se waiver of the confidential status of the late-designated **CONFIDENTIAL MATERIAL.** However, if a producing party has not adequately preserved the confidentiality of its documents or testimony, the Court may find that a waiver has occurred. No party shall incur any liability hereunder with respect to disclosure that occurred prior to the receipt of written notice of belated designation, <u>provided</u>, <u>however</u>, that such party, upon receipt of such written notice of belated designation, makes all reasonable efforts to obtain the return of and/or limit the dissemination of any belatedly-designated **CONFIDENTIAL MATERIAL**.

8.      The party that made the **CONFIDENTIAL MATERIAL** designation may determine at any time that some or all of the restrictions applicable to said **CONFIDENTIAL MATERIAL** may be reduced or eliminated and will notify the receiving party of any such determination as soon as practicable.

9.      If a receiving party claims that **CONFIDENTIAL MATERIAL** should be disclosed (including, without limitation, in an Individual Adversary Proceeding to which the producing party is not a party or separate and apart from the Actions) notwithstanding the terms of the Order, or that any of the restrictions on disclosure or use should be reduced, modified or eliminated or that the designation was improperly applied, it shall serve a notice requesting re-designation on the producing party.  Failure by the producing party to object to the notice within seven (7) business days will be deemed to be acquiescence to the request.  If the producing party objects to the re-designation, the receiving party or any party in interest in an Individual Adversary Proceeding may, consistent with the Local Bankruptcy Rules of this Court, request an informal conference with the Court for relief after receiving said written notice of its disagreement.  In the event that the dispute has not been resolved in the informal conference and a motion is made by the receiving party, the receiving party may file the **CONFIDENTIAL MATERIAL** in question under seal for the Court's *in camera* inspection.  In connection with any such motion, however, the party that produced the **CONFIDENTIAL MATERIAL** shall have the burden of demonstrating that it is confidential under the terms of this Order and should continue to be protected as designated.  Absent the entry of an order granting the motion, there shall be no disclosure of the **CONFIDENTIAL MATERIAL** at issue.

**<u>DISCLOSURES AND USE OF CONFIDENTIAL MATERIAL:</u>**

10.      **CONFIDENTIAL MATERIAL** shall not be given, shown, made available or communicated in any way to any person or entity other than the following:

a.     The Court, Court personnel assisting the Court, and stenographers or other persons involved in taking or transcribing testimony in the Actions;

b.     The producing or receiving parties in the Individual Adversary Proceeding in which the **CONFIDENTIAL MATERIAL** was produced, officers and employees of the producing or receiving parties in the Individual Adversary Proceeding in which the **CONFIDENTIAL MATERIAL** was produced with responsibility for the parties' participation in that Individual Adversary Proceeding, counsel representing the producing or receiving parties in the Individual Adversary Proceeding in which the **CONFIDENTIAL MATERIAL** was produced and their litigation assistants, paralegals, secretarial or other clerical personnel and Agents, as defined below;

c.     As used herein, "Agents" include consultants, experts, litigation support services and other people or entities retained in an Individual Adversary Proceeding or designated by a producing or receiving party or a producing or receiving party's counsel in an Individual Adversary Proceeding for the purpose of assisting that party or counsel in the Actions, and the principals, employees and contractors with which such Agents are associated;

d.     Authors or recipients of the designated **CONFIDENTIAL MATERIAL**;

e.     The Securities Investor Protection Corporation;

f.     A witness at any deposition in the Actions or Rule 2004 examination, and such witness's counsel, provided that before providing any

**CONFIDENTIAL MATERIAL** to any witness or counsel pursuant to this sub-paragraph, (i) the party intending to disclose the **CONFIDENTIAL MATERIAL** (the "Noticing Party") shall make a good faith effort to provide notice of its intent to use the **CONFIDENTIAL MATERIAL** to the producing party and any party to whom the **CONFIDENTIAL MATERIAL** relates at least four (4) business days prior to the deposition, and in all instances shall provide such notice at least two (2) business days prior to the deposition; (ii) such notice shall include the name of the deponent to whom the Noticing Party intends to disclose the **CONFIDENTIAL MATERIAL**, the date and time of the deposition, and the bates range for all **CONFIDENTIAL MATERIAL** to be disclosed; (iii) if the producing party objects to the disclosure of the **CONFIDENTIAL MATERIAL**, the producing party must notify the Noticing Party in writing prior to the deposition and simultaneously request an informal conference with the Court, and the Noticing Party shall not be permitted to disclose the **CONFIDENTIAL MATERIAL** to any witness absent a court order or consent of the producing party; and (iv) all witnesses and their counsel shall be provided with a copy of this Order, and shall thereafter be bound by this Order. Counsel taking the deposition or Rule 2004 examination shall designate all portions of the transcript relating to the **CONFIDENTIAL MATERIAL** as **CONFIDENTIAL**;

g.        Such other persons or entities as the Court may order, as may be agreed to by the producing or receiving parties, and

h.        As provided in paragraph 15(a).

11.      Nothing in this Order shall preclude any party from using **CONFIDENTIAL MATERIAL** in court proceedings or chambers conferences in the Actions.  If any producing or receiving party believes that any such **CONFIDENTIAL MATERIAL** to be used in court proceedings or chambers conferences requires any kind of protective treatment under the provisions of this Order, it shall apply to the Court for such treatment, and the Court will consider and determine each such request, except **CONFIDENTIAL MATERIAL** which has already been sealed shall continue to be treated as **CONFIDENTIAL** pending motion practice as described in paragraph 9 of this Order.

12.      In the event that:

a.        The Trustee or any other receiving party receives a notice of deposition, interrogatory, request for documents, subpoena (including, without limitation, a Bankruptcy Rule 2004 subpoena), civil investigative demand, or similar request to disclose any of the **CONFIDENTIAL MATERIAL**, or as necessary to comply with the applicable laws of foreign jurisdictions when the Trustee is litigating claims outside of the United States and the Trustee or receiving party reasonably believes that it is legally required to disclose any of the **CONFIDENTIAL MATERIAL** to a third party, including a governmental, or other regulatory body or agency or self-regulatory organization; or

> b. The Trustee receives a request with which he wishes to comply from a regulatory or enforcement authority investigating matters relating directly or indirectly to Bernard L. Madoff Investment Securities LLC and/or Bernard L. Madoff;

notice shall be provided to the producing party, the Trustee (where the Trustee is not making the production), and the customer to whom the **CONFIDENTIAL MATERIAL** relates, ten (10) business days' notice before providing or producing **CONFIDENTIAL MATERIAL** pursuant to any such request or requirement, so that any of those parties may seek a protective order or other appropriate remedy.  In such a case, the parties shall reasonably cooperate in any action to obtain a protective order or other appropriate remedy or to obtain reliable assurance that confidential treatment consistent with this Order shall be accorded to any disclosed **CONFIDENTIAL MATERIAL**.  In the event that any party does not file a motion for a protective order or other appropriate remedy within ten (10) business days of receiving notice of a request or requirement as set forth above, or it fails to obtain a protective order or other appropriate remedy after being given notice of a request or requirement as set forth above, the party receiving the request or subject to the requirement may comply with the request or requirement to disclose and produce **CONFIDENTIAL MATERIAL**.  Any party receiving **CONFIDENTIAL MATERIAL** under this paragraph shall be provided with a copy of this Order and shall be bound by it.

**INADVERTENT DISCLOSURES:**

13.    In the event anyone shall inadvertently disclose **CONFIDENTIAL MATERIAL** to another party or third party not otherwise permitted to receive such **CONFIDENTIAL MATERIAL**, the party making the inadvertent disclosure shall, upon learning of the disclosure:

a.    Promptly notify the person or entity to whom the disclosure was made that the disclosure contains **CONFIDENTIAL MATERIAL** protected by this Order;

b.    Promptly make all reasonable and necessary efforts to obtain the return of and preclude dissemination or use of the **CONFIDENTIAL MATERIAL** by the person or entity to whom disclosure was inadvertently made; and

c.    Promptly notify the producing party of the identity of the person or entity to whom the disclosure was made, the circumstances surrounding the disclosure, and the steps that have been taken and will be taken to ensure against further dissemination or use of the **CONFIDENTIAL MATERIAL**.

14.    The inadvertent production or disclosure of any document or other material (the "Inadvertent Production") otherwise protected by the attorney-client privilege, work product protection or a joint defense/common interest privilege shall not constitute or be deemed as a waiver or forfeiture of any such privilege or immunity.  If, after learning of the Inadvertent Production, the producing party wishes to assert its privilege or protection, it shall promptly send to the receiving party a written request for return of the Inadvertent Production.  Notwithstanding the procedures outlined in (a) – (d) below, within five (5) business days of receiving such a request, the receiving party shall return the Inadvertent Production to the producing party, shall destroy all copies that it may have made of the Inadvertent Production, and shall not utilize the

information contained in the Inadvertent Production for any purpose.  If the receiving party produced the Inadvertent Production to any other party, person or entity, it shall give notice to such party, person or entity of the Inadvertent Production and such party or person shall be subject to the provisions of this Order.

     a.     If the receiving party wishes to contest that the Inadvertent Production is protected by the attorney-client privilege, work product protection or a joint defense/common interest privilege, the receiving party shall so notify the producing party in writing;

     b.     Within five (5) business days after receiving such notification, the producing party shall provide to the receiving party, a description of the basis for the claim of privilege or immunity for the Inadvertent Production;

     c.     Within ten (10) business days after receiving such description, the receiving party may file under seal a motion to compel production of the Inadvertent Production, the protection of which is still disputed.  If such a motion is filed, the producing party shall have the burden of proving that the Inadvertent Production in dispute is protected by attorney-client privilege, work product immunity or a joint defense/common interest privilege.  Pending the ruling on such motion, the receiving party may not utilize the Inadvertent Production for any purpose;

     d.     With respect to documents and other work product subsequently generated by the receiving party, which derivative documents contain information derived from such Inadvertent Production (the "Derivative Documents"),

if the receiving party does not notify the producing party that the receiving party disputes the claims of attorney-client privilege or work-product immunity with respect to the Inadvertent Production, the receiving party shall either destroy such Derivative Documents or redact from them all such derivative privilege or work-product information in a manner such that the derivative information cannot in any way be retrieved or reproduced.

**FILING UNDER SEAL:**

15.     If any **CONFIDENTIAL MATERIAL** is filed with the Office of the Clerk of the Court:

a.     It shall not be disclosed except as provided by this Order and the Order Establishing Litigation Case Management Procedures for Avoidance Actions entered on November 10, 2010 ("Litigation Procedures Order").

b.     Except as provided in the Litigation Procedures Order, no **CONFIDENTIAL MATERIAL** will be filed with the Court unless it is filed under seal. In such circumstance, the party desiring to file materials under seal may move for an order to file under seal or obtain a stipulation from the producing party to file the material under seal. Unless otherwise agreed to by counsel for the parties, to comply with this requirement, **CONFIDENTIAL MATERIAL** must be filed in sealed containers labeled with: (1) the title to the action; (2) the general nature of the contents; (3) the words **CONFIDENTIAL**; and (4) a statement substantially in the following form (or such other form or manner as the Clerk of the Court shall require):

> The contents hereof include confidential information filed in this case by [name of party] in accordance with a Litigation Protective Order entered in this case on [date]. This envelope or container is not to be opened nor are the contents hereof to be displayed or revealed except by or at the direction of the Court, and shall be returned to [name of filing party] upon termination of all proceedings in this case. Counsel for the parties may open service copies of this envelope or container subject to the provisions of the Protective Order.

c.    The materials so filed shall be impounded until thirty (30) days after the entry of final decree in Adv. Proc. No. 08-01789, including any applicable appeal period, at which time the parties shall jointly communicate with the Clerk's Office about retrieving such materials from the Court.

**MISCELLANEOUS PROVISIONS:**

16.    Regardless of whether a document or other material is designated **CONFIDENTIAL MATERIAL**, and in addition to the restrictions on use of **CONFIDENTIAL MATERIAL** contained in this Order, all parties shall comply with all applicable laws and regulations related to the protection of Social Security numbers, financial institution account numbers and records, and any other "personally identifiable information," as defined by applicable laws or regulations.

17.    Any court reporter who transcribes testimony in the Actions at a deposition or a Bankruptcy Rule 2004 examination shall be provided a copy of this Order and shall thereafter ensure that all **CONFIDENTIAL MATERIAL** is and shall remain confidential and shall not be disclosed except as provided under this Order and that copies of any transcript, reporter's notes or any other transcription records of any such testimony shall be retained in absolute confidentiality and safekeeping by such court reporter or shall be delivered to an attorney of record or filed with the Court.

18.     Each law firm representing a party shall maintain an undertaking (in substantially the form attached as Exhibit "1") signed by a representative of said law firm on behalf of the attorneys at such firm who have received access to **CONFIDENTIAL MATERIAL**. Additionally, the attorneys for a party shall maintain a file of undertakings signed by an authorized representative of Agents retained by any party. Said file shall be made available upon request for inspection and copying by any attorney of record, except as to non-testifying experts and consultants, absent good cause shown. The failure of any person or entity to execute an undertaking shall not relieve any recipient of **CONFIDENTIAL MATERIAL** from compliance with the provisions of this Order.

19.     All designations of material as **CONFIDENTIAL** made after the date of the entry of this Order shall be controlled by this Order. To the extent that a producing party and a receiving party have entered into an agreement regarding the confidentiality or non-disclosure of documents or discovery materials, such agreements shall only apply to documents or materials produced prior to the entry of this Order. To the extent a producing party has previously entered into a confidentiality agreement with the Trustee governing the production of that producing party's documents or other materials, the Trustee and the producing party may agree that this Order shall supersede any such prior agreement.

20.     This Order supersedes the Protective Order entered by this Court on February 16, 2010, and incorporates the modifications to that Order made by the Litigation Procedures Order. All productions and designations made under the superseded Protective Order are retained subject to the requirements and provisions of this Order regarding appropriateness of the designation, restrictions on over-designation and process for removing designations. This Order shall remain in full force and effect until further order of this Court at the close of Adv. Proc. No.

08-01789.  This Order is without prejudice to the rights of any party by motion or stipulation with the Trustee to seek modification of this Order from the Court with respect to any specific **CONFIDENTIAL MATERIAL**.  In conjunction with the Trustee filing a motion under section 350 of the Bankruptcy Code to close Adv. Proc. No. 08-01789, the Trustee shall file a motion which will set forth the treatment of **CONFIDENTIAL MATERIAL** in the Trustee's possession which treatment shall include the Trustee's good faith effort to (a) destroy it, (b) return it to the person or entity who provided it, and/or (c) appropriately secure it in accordance with industry standards at the time.

21.     In the event anyone shall violate, or threaten to violate, any terms of this Order, any party having standing may apply to this Court, consistent with the Local Bankruptcy Rules of this Court, to obtain injunctive relief against any such person or entity.

DATED:  June 6, 2011                                     **SO ORDERED:**
            New York, New York


                                                          /s/Burton R. Lifland
                                                          HON. BURTON R. LIFLAND
                                                          UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT "1"**

An Equivalent Declaration May be Substituted for this Undertaking

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (BRL) |
| v. | SIPA Liquidation |
| | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | **UNDERTAKING AND CONSENT TO BE BOUND** |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

I declare that:

1.      My address is  _____

_____, and the name and address of my present employer is_____

_____ .

2.      My present occupation and job description is _____

_____ .

3.      I have received a copy of the Litigation Protective Order in this action.

4.      I have carefully read and understand the provisions of the Litigation Protective

Order, am authorized to bind _____, which agrees to be bound by the Litigation

Protective Order.  Specifically _____ agrees that its employees, agents or

staff will not use or disclose to anyone any of the contents of any **CONFIDENTIAL**

**MATERIAL** received under the protection of the Litigation Protective Order in violation thereof. _____ will never use any **CONFIDENTIAL MATERIAL**, directly or indirectly, for any purpose other than for purposes of this litigation, except as otherwise permitted by the Litigation Protective Order.

     5.   _____ understands that its employees, agents and staff are to retain all copies of any of the materials that they receive which have been so designated as **CONFIDENTIAL** in a container, cabinet, drawer, room or other safe place in a manner consistent with the Litigation Protective Order and that all copies are to remain in my custody until they have completed their assigned or legal duties.

     6.   _____ consents to the exercise of personal jurisdiction by this Court in connection with this Declaration and its obligations under the Litigation Protective Order.

     7.   I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

_____

Name

_____

Date

# EXHIBIT E

Transcript at Oral Argument, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR) (S.D.N.Y. Oct. 12, 2012), ECF No. 401

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   SECURITIES INVESTOR PROTECTION
     CORPORATION, IRVING H. PICARD,
 4
                      Plaintiffs,
 5
                      v.                      12 MC 115 (JSR)
 6
     BERNARD L. MADOFF INVESTMENT
 7   SECURITIES LLC, et al.,
                                              Conference
 8                    Defendants.

 9   ------------------------------x

10                                            New York, N.Y.
                                              October 12, 2012
11                                            4:40 p.m.

12   Before:

13           HON. JED S. RAKOFF

14                                            District Judge

15
             APPEARANCES
16

17   NATHANAEL S. KELLEY
          Attorney for SIPC
18
     BAKER & HOSTETLER LLC
19        Attorneys for Trustee Picard
     BY:  OREN J. WARSHAVSKY
20        LAN HOANG

21   ANDERSON KILL & OLICK, P.C.
          Attorneys for Initial Transferees
22   BY:  TODD E. DUFFY
          DENNIS J. NOLAN
23
     LATHAM & WATKINS LLP
24        Attorneys for Subsequent Transferees
     BY:  CHRISTOPHER HARRIS
25
```

```
1            APPEARANCES

2

   DEBEVOISE & PLIMPTON LLP
3       Attorneys for Thema International Fund
   BY:  MICHAEL WILES
4

   CLEARY GOTTLIEB STEEN & HAMILTON LLP
5       Attorneys for Leverage Providers
   BY:  PAUL R. ST. LAWRENCE
6

   ARNOLD & PORTER, LLP
7       Attorneys for Merrill Lynch International
   BY:  KENT YALOWITZ
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Case called)

2          THE COURT:  I'm going to try to keep this as short as

3   possible because I don't think the economy can stand having to

4   pay for all the lawyers in this room.  This, unlike some of the

5   issues that have come before the Court involving the Madoff

6   matters, is one that the Court has previously dealt with.

7   Between that and the extensive briefing, I have reached some

8   tentative conclusions, although I will make no final

9   conclusions until I've heard oral argument and issued a written

10  opinion.

11          My tentative conclusion is that the standard that the

12  trustee must meet to establish lack of good faith under a

13  willful blindness approach, as opposed to an actual intent

14  approach, is that the defendant must subjectively believe that

15  there is a high probability that a fact exists and the

16  defendant must then consciously turn away or otherwise take a

17  deliberate step or decision to avoid learning of that fact.

18  Essentially, with a very slight massaging, the test set forth

19  in Global-Tech Appliances v. SEB, 131 S.Ct. 2060, 2070, a 2011

20  decision of the Supreme Court.

21          I am also of the view that in an action brought under

22  section 550, the burden is on the trustee to -- I'm sorry.  I

23  think I'm overstating where my head is at on the second thing.

24  I'm not sure whether the burden of establishing good faith is

25  on the defendant or the burden of establishing lack of good

1    faith is on the trustee.  So I am anxious to hear argument on

2    that issue, much more anxious to hear argument on that issue

3    than on the standard.  But I am tentatively of the view that it

4    may vary as between a claim brought under 548 and a claim

5    brought under 550.  That's what I was about to try to say but

6    didn't say very well.

7          Given all that, I think I should hear first from the

8    trustee.

9          MR. WARSHAVSKY:  Thank you, your Honor.  I'm trying to

10   digest your tentative ruling.

11         THE COURT:  The standard is one you have heard before

12   from this Court.

13         MR. WARSHAVSKY:  It is in part.

14         THE COURT:  It's been the standard in securities law

15   from time immemorial.  It is also functionally equivalent to

16   the standard for recklessness, which has been the law of most

17   states and England since about 1700, but of course only I would

18   remember that.

19         MR. WARSHAVSKY:  Fair enough.  I guess where I'll

20   start is maybe on both prongs of what your tentative ruling

21   goes to in terms of what the standard is and where the burden

22   is.  I'd like to take a step back maybe to address both.  In

23   doing so what I would like to do is actually focus on the

24   trustee's claim.  When I was reading through the briefing I

25   think that gets a little lost, so I thought about it in a

```
1    slightly different way.

2         The trustee's claim isn't one for damages.  The

3    trustee's claim against these defendants is actually over who

4    has greater rights to a particular transfer:  Is it the trustee

5    or is it the defendants?  That's where I know I have spoken

6    before about the bona fide purchaser for value.  I think that's

7    where that test always comes in.  I think that's why we see it

8    codified in the bankruptcy code.

9         Ultimately, the bankruptcy code starts with the

10   presumption that it is property of the estate.  The fight is

11   always between the bankruptcy estate and the defendants, the

12   transferee.  The defendants can keep that transfer if they show

13   good faith and if they show value.  I don't think anybody

14   disputes that that is the test in a typical bankruptcy,

15   certainly not for an initial transfer in any event.

16        Your question here, the question that you certified,

17   was whether SIPA or the securities laws alter those burdens.

18        THE COURT:  And/or the test.

19        MR. WARSHAVSKY:  And/or the test.  Our answer is we

20   don't think it does.  I am sure that is no surprise.  I'll take

21   those one at a time.

22        Number one, I'll go to simply the plain language,

23   which I know your Honor has quoted to us and we have tried to

24   hew very close to that.  There is nothing in SIPA itself other

25   than incorporation of the bankruptcy code.  We have discussed
```

 1    that.  It is certainly in our papers.  All SIPA itself does is

 2    vest the trustee with the powers that a bankruptcy trustee

 3    would otherwise have.

 4         Then the question is whether or not the securities

 5    laws more generally would alter the test.  Your Honor pointed

 6    to the recklessness standard.  I think if you read through the

 7    defendants' papers and go through all the analogies, and they

 8    certainly advocate for the higher standard and for the burden

 9    shifting, each one of those cases is a case about damages.

10         I think it is important, whether it is a 10b-5 case,

11    or a case about a control person liability.  I think there are

12    a few different examples defendants gave, but what we don't

13    have is what is essentially here, which is simply a contest

14    over who has greater rights.

15         In those types of cases there is no presumption that a

16    defendant owes damages.  I think that is the difference.

17    That's the reason for a heightened standard.  Here there is the

18    presumption which is baked into the bankruptcy code that this

19    is property of the bankruptcy estate.

20         So, when the defendants point to the willful blindness

21    standard in those cases --

22         THE COURT:  Good faith, forgetting now about the

23    securities law, that's a term that goes back well prior to the

24    bankruptcy code, well prior to the founding of this country.

25    It comes ultimately out of what used to be taught in first year

1   property, medieval cases, all of which turned on mental states,

2   not on sort of objective situations devoid of mental state, and

3   dealt with the problem that has always been a problem in the

4   law from day one, which is when you have someone who takes,

5   like a stolen good, but he gets it in good faith.  The thief

6   sells it to the purchaser and the purchaser doesn't know it's a

7   thief.  The common law resolved that by saying if it's a good

8   faith purchaser, then you get to keep it.

9       You are right that many of the presumptions of the

10  common law were changed by the enactment of the bankruptcy

11  code.  But I don't know that that trumps, while we are dealing

12  here in a mixed securities and bankruptcy situation, what is

13  the classic view of good faith, which is a subjective view

14  rather than the objective view you're talking about.

15      MR. WARSHAVSKY:  I know through the papers there is

16  discussion about subjective and objective, and I think there

17  are elements of both in each test.  Ultimately, I think the

18  test you just articulated, you said good faith and I used the

19  term bona fide purchaser for value.  But I agree I think that

20  is the test that we have espoused as well.  Is it for good

21  faith and is it for value.

22      Good faith, though, I think is different from

23  knowledge, especially when we go to the issue of -- I'm sorry.

24  I lost my train of thought.

25      THE COURT:  Take your time.

1    MR. WARSHAVSKY:  When we talk about willful blindness,

2    which I think is the standard which has been espoused, I was

3    looking through some of the willful blindness.  There is a

4    whole taxonomy there which I think is built around getting to

5    knowledge.  Ultimately, willful blindness, if you start from

6    the model penal code -- and the case I saw went actually to

7    1860, not to the 1700s -- essentially was about sticking one's

8    head in the sand, and that was a way for a plaintiff or the

9    government to actually show knowledge.  Good faith I think is a

10   slightly lower standard.

11        There certainly are subjective elements to a good

12   faith test.  Certainly in each of these cases what we have

13   alleged has been what these defendants saw.  But ultimately

14   whether or not the defendant acted in good faith should be

15   measured against what a reasonably prudent person would do in

16   the defendants' shoes.

17        It is not criminal.  And I want to respond to your

18   analogy to the security law as well.  Another analogy that I

19   came up with as we were coming down here, and I'm sorry to give

20   a hypothetical but I think it helps you with my point, so if

21   you would indulge me.

22        THE COURT:  Go ahead.

23   MR. WARSHAVSKY:  If Bernard Madoff had five shares of

24   the old stock certificates of IBM and went through the exact

25   same scenario that you just indicated, where perhaps he gave

```
1    them to somebody who didn't pay proper value or perhaps
2    somebody did pay proper value for them, or maybe his wife did
3    it and maybe it was somebody he knew, maybe it wasn't.  He knew
4    about the impending bankruptcy.

5         The bankruptcy law is simply about determining who has
6    the greater rights.  So, you're right, what he would have to
7    show, what that defendant would have to show, is that he took
8    with good faith and he provided value.  I don't think that
9    defense would change whether it was a security or deed to a
10   property.  I know there are special rules about cash per se,
11   but if it was a bag of cash or a diamond, it would all be
12   related to that test.  It would be good faith and for value.

13        The way we would look at good faith is whether or not
14   a reasonable person in that defendant's shoes would understand
15   that there was something untoward about the transaction.

16        THE COURT:  I can live with everything you just said
17   until you get to that last point.  Why is that what good faith
18   means?  To continue your hypothetical, for value he gives a
19   share of IBM to an 80-year-old crippled widow who, because she
20   spent her entire life working hard as a cleaning lady for the
21   benefit of her children, all of whom went to Harvard, has never
22   achieved any financial sophistication whatsoever.  And the
23   world's greatest lie detector tests all show that she took
24   subjectively in good faith.

25        She paid her value, she had absolutely no reason to
```

```
 1  know that these were stolen goods, and she got her share of

 2  IBM.  You want to take it away from her because a reasonable

 3  person, you say, would have been suspicious or something like

 4  that, a negligence type standard.

 5          MR. WARSHAVSKY:  No, actually I don't think we would

 6  want to take it away from her, because it is a similarly

 7  situated --

 8          THE COURT:  You think the relevant class is the class

 9  of all crippled widows who -- this is going to be an

10  interesting test you're probably getting here.

11          MR. WARSHAVSKY:  I think we always struggle to find

12  out who would be a reasonably prudent person in a defendant's

13  shoes.

14          THE COURT:  If you are defining a defendant's shoes as

15  so individualistic that it only applies to someone who is

16  basically the defendant, the difference between your test and

17  the one that your adversaries are proposing becomes, as a

18  practical matter, very modest indeed.

19          MR. WARSHAVSKY:  I think in some scenarios that could

20  be.  I think in scenarios here, where we are dealing with

21  financial transactions, that is not probably not.

22          THE COURT:  Also, on that narrow a test is what you

23  are saying you want achieve, which is an objective test, a

24  reasonable investor type test that can be applied fairly easily

25  across the board without much inquiry into the specific facts
```

 1  of the case.  I thought that was at least implicitly one of the

 2  benefits of your test, which would disappear if we narrow it

 3  down to what does a reasonable person with less than a high

 4  school education, etc.

 5        MR. WARSHAVSKY:  I'm trying to think of how to

 6  respond.  You baked a lot into that.  I think the response is

 7  that when we're talking about financial transactions, there are

 8  certain -- I don't think we have to look to an expert to say

 9  what is somebody's precise sophistication, but I think we can

10  look to who the defendant is and what sort of class they are

11  in.

12        Frankly, the way we have parsed out the world, if you

13  take a look, most investors in BLMIS we did not make these

14  allegations against.  The allegations of a lack of good faith,

15  which is the standard we have clung to throughout, we have made

16  against financially sophisticated investors.  We think that in

17  measuring their good faith you should measure their actions

18  against what a reasonable sophisticated investor or reasonable

19  financial institution would do when presented with the same

20  indicia of fraud.

21        As a for instance, I don't know that the woman from

22  your example would understand that BLMIS could not trade on

23  days when the market was closed.  I do think that anybody who

24  is represented by the people at this table should know that.

25  And I do think that to the extent they would say, we didn't

08-01-789-cm-m Document 01-5706-14 Filed 03/28/12 Entered 03/28/12 18:45:36 Exhibit 14
Case 1:12-mc-00115-JSR Document 401 Filed 10/22/12 Page 126 of 48
Pg 60 of 96

 1   know, we should look to measure their conduct in accordance

 2   with what people in the industry would know and what would be

 3   common knowledge to them.  I think that is the objective part

 4   of the test.

 5        Certainly they would have to have seen, their account

 6   statement would have to show, that BLMIS made the trade on the

 7   day the market was closed.  They couldn't guess from somebody

 8   else's account statement.

 9        THE COURT:  Forgive me, but I think we need to hear

10   from some of your adversaries.  If the representative from SIPC

11   wants to chime in at this point, I'll hear whatever he has to

12   say.

13        MR. KELLEY:  Yes, your Honor, just briefly.  I would

14   like to point out that SIPA relies upon the bankruptcy code

15   both for procedural and for substantive purposes.  Courts have

16   recognized that SIPA liquidation is essentially a bankruptcy

17   proceeding.  It has the same goals as bankruptcy in that it

18   seeks the ratable distribution of the estate's assets among

19   customers to the extent of readjusting the rights and

20   obligations of those customers.

21        I, of course, agree with the trustee that even under a

22   SIPA liquidation, you should be referring to the good faith

23   standard that other courts have recognized in bankruptcy

24   proceeding.

25             (Continued on next page)

1    MR. KELLEY:  (continuing)  SIPA relies upon the

2 bankruptcy code, is clear from several provisions of SIPA, but

3 I would like to focus on 78fff-2(c)(3).  It specifically

4 provides that whenever customer property is insufficient to pay

5 all customer claims, a SIPA trustee may recovery transfers to

6 the extent they voided or avoidable under Title 11.  There are

7 two points I would like to draw from this section.

8         First of all, it only references voidability under

9 Title 11.  It adopts fraudulent conveyance statutes from Title

10 11 wholesale and to the extent of the bankruptcy code without

11 reference to the securities laws.

12         Second, for the purposes of such recovery, 2(c)(3)

13 deems the transfer of property shall be deemed to have been

14 property of the debtor.  Thus, while the securities laws and

15 state laws and even SIPA itself recognize that broker customers

16 investment and withdrawals are the customer's property.  SIPA

17 agrees a legal fiction to modify these rights declaring the

18 property transferred from the debtor shall be treated as the

19 debtor's property in order to accomplish SIPA's goal of a

20 ratable distribution among customers.

21         Furthermore, 2(c)(3) allows a trustee to recover

22 voided or avoidable transfers without reference to the trustee

23 having to show lack of good faith.  In short, to the extent

24 that SIPA modifies fraudulent conveyance actions, it expands

25 the trustee's right of recovery in order to ensure that

1   fraudulent conveyance actions fit within the securities

2   context.  It does not constrict the trustee's ability to

3   recover from customers.  Thank you.

4           THE COURT:  Thank you very much.  Let me hear from

5   counsel for the defendant.

6           MR. DUFFY:  Thank your Honor.  Todd Duffy for the

7   initial transferees, your Honor.

8           THE COURT:  Yes.

9           MR. DUFFY:  We won't prolong anything more on the

10  standard.

11          THE COURT:  Let's talk about the -- not that I've

12  decided this finally, but I have certainly given some hints as

13  to where I am coming out.  That is notwithstanding my

14  tremendous respect and describe each time he is here for

15  counsel for the trustee.  He can you can come into my courtroom

16  any time, but on this one you may be facing an uphill battle.

17  You always have your appeal.

18          Yes, the standard is something I'm not clear about, I

19  mean the burden, I am sorry, the burden is what I am less clear

20  about.

21          MR. DUFFY:  Before we go for the burden, I think one

22  of the things we wanted to clarify, we served to clarify in our

23  brief is what the standard is willful blindness, the question

24  what are we willfully blind of?

25          If the trustee is accusing defendants of wrongfully

1  taking transfers from Madoff because he was running a Ponzi

2  scheme, then the defenses would submit they needed to know --

3  they needed to be willfully blind that Madoff was running a

4  Ponzi scheme.  It is worthwhile to note the SEC which would

5  have been in a similar financial position as some of my

6  co-counsel here, also did an extensive investigation and didn't

7  find anything.

8         THE COURT:  That is a factual issue.  We are talking

9  now about standards and burdens, not about what the facts may

10 or may not show.

11        If the Mets trial had ever gone to trial, and I'm

12 still upset that I didn't get to hear from Sandy Koufax, there

13 would have been the trustee proffered proof from a witness that

14 the defendants in that case had been told by someone within

15 their midst that she shot and had reason to believe that there

16 was no way to account for Madoff's returns that he was

17 purporting to realize, and that was not a witness who had been

18 before the SEC.

19        So I don't think we know at this point what the proof

20 would show in any of these cases that you're involved in till

21 we get to the trial, if we ever get to the trial.

22        MR. DUFFY:  Respectfully, your Honor, I disagree.  A

23 lot of the pleadings in the complaints themselves would

24 certainly pan out to establish an affirmative defense for some

25 of these defendants.

1        THE COURT:  That may be true.

2        You would either have an individual motion to dismiss

3   or an individual summary judgment motion perhaps, but all I'm

4   talking about now is what I need to decide as a result of

5   today's hearing is what the standard is and who has the burden.

6   So it seems to be the theory here that the SEC didn't figure

7   this out.

8        MR. DUFFY:  Okay, your Honor, but again the second

9   prong of that we believe is what is to be willfully blind of,

10  we would submit to the court that what you need to be willfully

11  blind of, if the plaintiffs are saying that we wrongfully

12  accepted transfers from Madoff because he was running a Ponzi

13  scheme, would be that we were willfully blind of the fact he

14  was running a ponzi scheme and we actually knew that.

15       THE COURT:  Now you're equating willful blindness with

16  actually knew.  Willful blindness means that there is a high

17  probability and you purposefully turn away and say I don't want

18  to know.  It doesn't mean that you know it in the way you would

19  know it if, for example, you had been a participant in the

20  fraud or something like that.

21       MR. DUFFY:  Yes, I agree.  I apologize if I overstated

22  that.  We also believe that there are various actions that in

23  taking those transfers, that the context of accepting those

24  transfers should also be taken into consideration.

25       So, for example, if they took those transfers, but

1    they had professionals helping them with, as a custodian or

2    administrator, then those types of things should also be taken

3    into account because knowledge can't be the only possible

4    factor you're evaluating when --

5         THE COURT:  Doesn't that cut in favor of putting the

6    burden of this defense on the defendants?  They're the ones who

7    know all of this, they know whether the advisors -- where they

8    know this that or the other.  It wouldn't be a question of what

9    the trustee has to plead; it is a question of what you would

10   have to plead or prove by way of an affirmative defense.

11        MR. DUFFY:  Again, your Honor, that may or may not be

12   true.  What I would say is that the trustee still has a

13   responsibility of proving a plausible complaint, pleading a

14   plausible complaint under Rule 8.

15        THE COURT:  Isn't it a question, a classic question of

16   whether this is an affirmative defense or whether the lack of

17   good faith is an element of the claim?

18        If it is an affirmative defense, which we have all the

19   time, then the burden of an affirmative defense is usually on

20   the defendant.  So here you look at, say, 550, for example, and

21   it says that the trustee may not recover under Section (a)(2)

22   of this section from the transferee that takes for value

23   including satisfaction or securing of a present or antecedent

24   debt in good faith and without knowledge and a voidability of

25   the transfer avoided.  You look at that language and you can

1  read it as maybe being that the trustee has to plead an absence

2  of that or you can read it as that's an affirmative defense.

3  It doesn't beat out from the language which way it cuts.

4         The same kind of thing applies with respect to 548,

5  although it is the language is a little bit different.  Just to

6  show you why I am not sure that they both come out the same

7  way, Section 548 C says:

8         "Except to the extent that a transfer obligation

9  voidable under this section is voidable under Section 545 --

10  544, 545 or 547 such as, for example, as actual intent, a

11  transferee of such a transfer that takes for value in good

12  faith has a lien on or may retain any interest transferred," et

13  cetera.

14         So that may be even a little bit more like an

15  affirmative defense because it talks about the transfer, what

16  the transferee may do.  None of this is definitive from the

17  language in the statute.  The question I was trying to put to

18  you is this:  Doesn't it make sense to make this an affirmative

19  defense because the information that would allow someone to

20  establish good faith or lack of good faith is much more likely

21  to be in the hands of the defendant than it is in the hands of

22  the trustee?

23         MR. DUFFY:  Respectfully, your Honor, I'd say no for

24  two reasons.

25         THE COURT:  Why?

1        MR. DUFFY:  First of all, prior to any litigation

2   under the federal rules of bankruptcy procedure, the trustee

3   can collect evidence under rule 2004 which I understand was

4   extensively done in this case.  Given certainly from my

5   clients, it was 145 page complaint which showed --

6        THE COURT:  There are shorter ones.

7        MR. DUFFY:  Yes, your Honor.  That was chocked filled

8   with facts, and allegedly and I am sure the trustee's counsel

9   had some basis for making those, so I would assume that was a

10   result of an investigation.

11        THE COURT:  That doesn't answer the question.

12        The fact that they did allow an investigation and can

13   make some assertions here cannot be what determines what should

14   be as a matter of law the standard because there will be plenty

15   of cases where that won't be the case.

16        So it has to rest on general principles and policies,

17   not the particulars that this particular trustee may have done

18   a more intense investigation than some trustees ordinarily

19   would be able to do or whatever.

20        MR. DUFFY:  I don't think that Rule 2004 is limited to

21   some trustees or other trustees.  Anybody can do pre-litigation

22   investigation under rule 2004 as a trustee.

23        THE COURT:  That is true.

24        MR. DUFFY:  In which case --

25        THE COURT:  But, but, but I come back to the question

1   of why doesn't it make more sense to place the burden on the

2   transferee who will know immediately what things they can point

3   to that will establish their good faith, all the things you

4   were just mentioning that at best the trustee will know a

5   fraction of the situation, but each transferee will have an

6   intimate knowledge of what steps it took, what it knew, what it

7   failed to do, et cetera.

8          So why isn't it make sense to put that burden on the

9   transferee?  By the way, there is one other possibility, which

10  is that the transferee could make me have the burden of having

11  the burden of going forward, and the burden would shift to the

12  trustee as the ultimate burden.  That is the way it works in

13  criminal cases although that is largely for constitutional

14  reasons, not applicable to a civil case.

15         MR. DUFFY:  One thing interesting, the transferee

16  certainly as in Bloomberg securities laws has no burden to do

17  an inquiry at the time of the transfer.  Why then would it be

18  asserting, taking on a burden of proving that it acted in good

19  faith?

20         THE COURT:  The answer -- I am not saying this is the

21  answer because I really have not decided where I come out on

22  this question as opposed to the first question, but there are

23  many, many places in the law, and particularly when you're

24  dealing with super procedural or quasi-procedural matters where

25  the person who has the close, closest proximity to the facts

1   has the burden.  Sometimes it is just the burden of going

2   forward, sometimes it is the ultimate burden, but that's not an

3   unfamiliar approach of the law.

4          MR. DUFFY:  My understanding of the bankruptcy laws

5   with respect to 548 (c) and 550 (b) are quite different.  I

6   know my colleague will be speaking on what 550 will be.  Maybe

7   it would be best if I defer to my colleague to speak on what

8   550 will be.

9          THE COURT:  Absolutely.

10          MR. HARRIS:  Thank your Honor.

11          I will just address the burden of proof argument that

12   you raised and I am going to focus on 550 (b) and regardless of

13   whether 548 (c) is or is not an affirmative defense, there is

14   strong reasons why 550 (b) is not an affirmative defense and

15   the trustee should have the burden of proof on that.

16          You start with the general rule the Supreme Court

17   outlined in Schaeffer, that unless there is something that

18   Congress points to indicating otherwise, assume that the burden

19   of proof is on the party seeking relief.  That is the trustee

20   here.  The trustee hasn't pointed to anything in 550 (b) or any

21   practicalities of litigation that would suggest that Congress

22   intended to change that normal burden of proof.  If you look at

23   the both the text of 550 and the practicalities of what a

24   subsequent transferee is, they strongly support you should

25   leave the burden where it normally is, on the party seeking

 1 | relief.

 2 | 550 is structured differently than 548. You start by

 3 | looking at 550 (a), and it says except as otherwise provided in

 4 | this section, to the extent a transfer is avoidable under other

 5 | sections, then the trustee can recover. That introductory

 6 | phrase is part of 550 (a) and part of a 550 (a) claim. That

 7 | means if another section of 550 is triggered, you do not have a

 8 | 550 (a) claim. In that way, 550 is different from 548. If you

 9 | look at 548 (a)(1) --

10 | THE COURT: So, so, if I adopt your reasoning in that

11 | regard, I would put the burden on the trustee under 550, but

12 | not put the burden on the defendant under 548?

13 | MR. HARRIS: There is a lot of other reasons and my

14 | colleagues can tell you why even for 548, you should still

15 | leave the burden where it normally belongs on the party seeking

16 | relief, but I am trying to show you why there is additional

17 | reasons that would apply to 550 beyond those offered.

18 | THE COURT: I thought this was your first reason.

19 | MR. HARRIS: That is my first.

20 | I would also look at the text not just of 550 (a)(1)

21 | which incorporates the absence of another element of 550, but

22 | if you look at 550 (b) itself, it again is worded in a way that

23 | suggests it is part of the affirmative claim itself. It talks

24 | about the trustee and it says the trustee may not recover if

25 | the conditions are met. Again in contrast, 548 (c) focuses not

1    on what the trustee cannot do.

2            THE COURT:  I am not sure how much I can draw from the

3    grammar and wording that you're referring to.

4            Is it not one plausible reading of Section 550 (b)(1)

5    that when it says a transferee that takes for value, that what

6    that means procedurally is a transferee that establishes that

7    he takes for value, including, et cetera, all the way down to

8    good faith.

9        MR. HARRIS:  It could mean that.  Even before you get

10   to that sentence, the preceding part of 550 (b) tells you the

11   trustee may not recover.

12           I agree it is not the clearest language out there, but

13   to the extent it is suggesting one thing or the other, I think

14   it is suggesting that the trustee has to show this.  That is

15   both from the language of 550 (a)(1) which says you don't even

16   have a 550 (a)(1) claim if another section applies and the

17   language of 550 (b) which begins by saying the trustee may not

18   recover.  Nothing in there says the transferee has to do

19   something to prevent a recovery or retain --

20           THE COURT:  So, so if you're right that this is more

21   than a makeweight argument, that this is an independently

22   meaningful argument, then it seems to me it follows a fortiori,

23   as you would say, that under 548 the burden is on the

24   defendant.

25       MR. HARRIS:  I wouldn't go that far, your Honor,

1  because I think if you look -- there is certainly other reasons

2  why the burden should stay where it normally stays, in the 548

3  (c) context.  I don't claim to be --

4          THE COURT:  I understand that, but what you're saying

5  is -- and I think it is not without some importance -- is that

6  the most natural way to read the language, the way this is set

7  up in 550 is that the burden is on the trustee if he wants to

8  recover, to show an absence of good faith, et cetera.

9          But the very language analysis that you're using, then

10  it applied equally to 548 comes out the other way.

11          MR. HARRIS:  I am not sure it comes out the other way,

12  but it is certainly silent.

13          THE COURT:  In 548, they carve out, they say in (a)(1)

14  what the trustee has to show, and then they, in (c), the

15  subject of the sentence in (c) is the transferee or obligee,

16  not the -- I mean the transferee or obligee, not the trustee.

17          Here's what the transferee or obligee has to do:

18  Show -- now, of course, I am imputing language, but anyway, has

19  to show that it takes for value, et cetera, et cetera.

20          Why I am raising all of this is one I think should

21  pause before thinking that the grammar of these sections, and

22  the way they were sort of written in the way we are talking

23  about now is really that important determining where the burden

24  lies.

25          MR. HARRIS:  Maybe I should move on to some other

1   points beside the grammar of the section.

2          THE COURT:  Go ahead.

3          MR. HARRIS:  An additional reason why it makes

4   practical sense here to have the trustee have the burden of

5   proof for a subsequent transferee is because they're further

6   removed from the debtor.  Courts have noted that, and this is

7   from the Brestman case, a subsequent transferee is much more

8   likely to be an innocent third party.  That is a reason, given

9   it is very unlikely the subsequent transferee is actually going

10  to lack good faith, it is inefficient and unfair for a

11  subsequent transferee to have to go through the expense and

12  burden of discovery and then summary judgment in order to

13  finally show what you expect would normally be the case, that

14  they lack -- they, in fact, operate in good faith.

15          Instead it makes much more sense at least for a

16  subsequent transferee for them only to have to bear this burden

17  if the plaintiff can't at least allege facts that if true would

18  show bad faith.

19          Given the practical reality that normally a subsequent

20  transferee is going to be in good faith, it doesn't make sense

21  to put them through this effort, this effort we are sort of

22  sitting in this room here now.  If you look at the legislative

23  commentary on 550 (b), it is admittedly very thin but the

24  extent it exists, it suggests the reason 550 (b) was created,

25  and from the House report, was created to avoid litigation for

1   subsequent transferees.  That is only accomplished if this

2   element is actually part of the claim.

3          Making an affirmative defense doesn't help you avoid

4   litigation.  There is also as you know cases going both ways on

5   this point, obviously.

6          What I would say --

7          THE COURT:  I found that very helpful.

8          MR. HARRIS:  I did my best to go through the cases

9   that the trustee and SIPIC pointed to, and I don't think any of

10  them have any analysis why 550 (b) should be an affirmative

11  defense except for one and that is the Nordik Village case.  In

12  the Nordik Village case, the majority analysis was I believe a

13  flawed analogy to Section 549 where, in fact, it is an

14  affirmative defense.

15         The reason why the analogy is flawed, for Section 449

16  there is actually a bankruptcy rule, Rule 6001 that changes the

17  burden of proof to turn it into affirmative defense.  There is

18  no such rule for 550 (b).  I think that lack is important.  Now

19  Justice Kennedy's dissent points that out, as the Third Circuit

20  did in Brisnan, and pointed out the practical point I alluded

21  to earlier because of subsequent transferee is normally in good

22  faith, it doesn't make sense to impose this as an affirmative

23  defense on them.

24         So there are certainly cases going both ways.  If you

25  look at the text of the statute, to the extent it informs

```
 1    anything, and if you look at the reality of the subsequent

 2    transferee, they're much more likely to be innocent.  There is

 3    not a reason to change the normal rule, just the burden of

 4    proof is on the party seeking relief.

 5         THE COURT:  Thank you very much.  Is there anyone else

 6    who wants --

 7         MR. DUFFY:  May I add one other thing?

 8         THE COURT:  Yes.

 9         MR. DUFFY:  In this case, since we have already

10    established there is no duty at least preliminarily to

11    investigate on behalf of the defendants, if you acted just by

12    simply withdrawing your money from your redemptions, it is

13    almost presumed you did do it in good faith.  Possibly the

14    burden doesn't rest entirely on the trustee, but it may be a

15    shifting burden, in which case it is extremely difficult for a

16    defendant to prove a negative.  So that makes the burden that

17    much higher for a defendant to basically approach this in a

18    vacuum.

19         THE COURT:  All right.  Thank you.  Let me hear from

20    anyone else on the defense side who wants to be heard from?

21         MR. WILES:  I have a few points I would like to make.

22         Your Honor, first on the idea that we're talk about

23    here is just a matter of equities over who has a better

24    equitable claim to property, that is not what a fraudulent

25    transfer claim is.  We're talking here about an intent to
```

1  defraud and/or delay creditors.  We are talking about a statute

2  that is follow-up on the common law that is meant to address a

3  very specific kind of wrongdoing, and by referring to good

4  faith, it is meant to apply a remedy only to people who are

5  culpable in that wrongdoing.  That is why you have a defense of

6  good faith.  That is why the claim is limited to an intentional

7  fraud.  We are not talking here about preferences or any kind

8  of general equity notion.  We are talking about specific kind

9  of wrongdoing.

10       THE COURT:  Obviously, I am predisposed towards that

11  argument, as you may gather from my comments earlier, but your

12  adversary in effect is arguing among other things that the

13  bankruptcy code changed that.  It created presumptions, it

14  created modes of addressing these difficult situations that

15  were different from the common law.

16       So what about that?

17       MR. WILES:  Well, yeah, I am getting to the burden.

18       I agree with you there is nothing about the wording of

19  this statute that you can say one way or the other is very

20  clear as to whether it is the trustee's burden or the

21  defendant's burden.  It doesn't say, for example, that a

22  defendant can avoid liability by proving, et cetera, okay?

23       I think what you have to do is you have to think about

24  the nature of the claim and the wrong in deciding what needs to

25  be alleged here.  Also to keep in mind that who has the burden

 1   of proof depending on what the issue is not necessarily the

 2   same as who has the initial burden of raising a plausible issue

 3   about the point.

 4         The reason I made the other point about this being a

 5   liability for a particular kind of wrong is that you really

 6   can't consider the wrong and the good faith issue apart from

 7   each other.  That is really the whole point here is that unless

 8   you have some culpability for the underlying wrong that is

 9   being addressed, you're okay.

10         Now, if you think about it, what about from the

11   trustee's point of view?  Here I am, my client FEMA is a net

12   loser, never withdrew more than its initial withdrawals.  Now,

13   if the rule is, as I think it should be, that in pleading this

14   claim of intentional fraud, the trustee has to plead not only

15   that Madoff in the transfers he made to me somehow was

16   intending to defraud other people, which I question, but also

17   some plausible connection as to my lack of good faith that is

18   connected to that wrong.

19         Well, what the trustee alleges, as he has in his

20   papers, that the reason that was a wrong is that it allowed

21   FEMA to do better than other customers could do.  Great, I know

22   what the issue is, I can come into you, I can say, your Honor,

23   I know you're a big fan of Learned Hand.  You look at the

24   Irving Trust decision from 1933 where Judge Hand was on the

25   panel, 65 F.2d 409, it couldn't be clearer.  It addresses

1  exactly this point, neither an intent by Madoff to confer a

2  preference or my intent to receive one or knowledge it was

3  going to happen is enough to establish a fraudulent transfer

4  claim and I can make a motion to dismiss.

5      Great.  At least the trustee in that context has

6  framed the issue and has at least told me why is there some

7  point that I need to defend here?

8      If you take the point of view argued by the trustee in

9  SIPIC, where all they have to say is that Madoff had a bad

10  state of mind, and I don't know how the fact that he was

11  running a fraud necessarily translates to a fraudulent intent

12  in making a transfer to me, by the way, but if that is all they

13  need to say and everything else is may burden, I don't even

14  know how to contest that.  I don't know what I need to prove.

15  How can I even sustain that?  How can I litigate the issue?

16      I don't each know in what respect good faith is

17  relevant.  That does not make sense.  It especially does not

18  make sense for a trustee in a proceeding meant to protect

19  victims like me, to say that all I need to do is to say Madoff

20  was bad and the presumption is that you were bad, too, until

21  you prove otherwise, and I am not going to tell you or give you

22  a clue what it is I think you need to prove in order to show

23  you weren't a bad guy.  That is insane.  It doesn't make any

24  sense as a way of proceeding.

25      On the theory only a few people have been singled out

1   for the joy of having to prove their good faith, it may be true

2   that in terms of numbers of Madoff customers, if that is the

3   case, I don't know how many individual customers he had, but

4   only the trustee knows.  I would bet you that the trustee in

5   terms of dollar amount of contributions to Madoff, that the

6   trustee has accused at least 90 percent of the dollar amount of

7   investors or withdrawals or lack of good faith.

8            So what you've got here, if you accept the trustee's

9   and SIPIC's point of view, the trustee, whose job is to protect

10  these investors, by the way, and SIPIC, who is supposed to be

11  their insurer and their guardian, are perfectly entitled,

12  almost even required to walk in and to say, to demonize every

13  single one of those villains and say you are presumed to be bad

14  till you can prove otherwise.

15           That should never be the standard in a SIPIC case.  We

16  are wasting huge amounts of money here and will be forced to

17  waste even huger amounts of money if we have to wait until

18  we're standing in front of a jury before we even know how are

19  we accused of being in bad faith so that we can prove

20  otherwise.  That makes no sense as a way of proceeding for

21  anybody.  I have two other points I wanted to make.

22           Mr. Duffy was talking about in terms of the willful

23  blindness standard, it is not enough to know how you measure

24  knowledge.  You have to be asking what is it I'm supposed to

25  know of.  The point that I think to be made there is the

1   trustee argues that there is any irregularity, there is

2   knowledge of insolvency, if there is a suspicion, if a wrong

3   date is put on a trade, for trying out loud.

4        If what I am being accused of is lack of good faith

5   for taking the fruits of a Ponzi scheme, which is what they say

6   over and over in their papers, well then what I should be

7   accused of being willfully blind of in order to show lack of

8   good faith is that I knew it was a Ponzi scheme.

9        If the reason you're going to tag me --

10       THE COURT:  Part of this, you are perfectly right that

11  the two issues of the standard and the burden are somewhat

12  intertwined, but I think you're being a little unfair.  The

13  trustee premised his complaints on his view, which I am

14  expressing a lot of skepticism about, but on his view what was

15  triggered was a duty to inquire.

16       And there were enough suspicious circumstances for

17  people like your clients at that time they then had a duty, he

18  says, to turn around and make inquiries and -- so you do know

19  what he is accusing of you under his theory.  The point you're

20  making, which I think s much to commend it, is that if instead

21  the standard is the one that you're espousing, willful

22  blindness, then his complaints don't really tell you what it is

23  that you did wrong because then there is no duty of inquiry.

24       Rather it is the allegation has to be that you knew

25  this was a fraud or you knew -- excuse me -- you knew there was

1    a high probability it was a fraud and then turned away rather

2    than find outing for sure.

3              MR. WILES:  Right.  One other point?

4              THE COURT:  Go ahead.

5              MR. WILES:  In addition to how you measure knowledge,

6    what is it you need to know?  Knowledge isn't the only answer

7    here.  We keep talking about knowledge as though we are only

8    talking about it at the time of the investment.  That is not

9    what the trustee is claiming.

10             He is claiming that people who had no idea what was

11   going on, but who should have learned afterwards that there was

12   something wrong, that it was a lack of good faith for those

13   people to take their money out.  That doesn't make any sense.

14             If you're a fraud victim and you discover you're a

15   fraud victim, it can't be the case that good faith requires you

16   to leave your money in the hands of the guy who is conducting

17   the fraud.  How can that possibly be the answer?

18             So in addition to how you measure knowledge, what is

19   it you need to know about?  You have to think about well even

20   if you know --

21             THE COURT:  No, I think that is a little unfair to the

22   trustee.  His argument, as I understand it, is it is not that

23   you should not take or it is not that you should give it back

24   to the fraudster, it is that you now take with the, in effect,

25   qualification that someone who is recovering on behalf of the

 1    estate as a whole may have a better claim to those monies than

 2    you do, that that is what his argument is on this point.

 3            MR. WILES:  What he is saying, it is bad faith to take

 4    the money, that is what he is saying.  I don't know how you,

 5    how you equate that with anything other than that good faith

 6    somehow requires you to just sit there, not take your money and

 7    let things go on.

 8            The irony of this, what the trustee says --

 9            THE COURT:  No, no.  Maybe I am not hearing the answer

10    to my question.  This is not a perfect analogy at all, but you

11    see $100.00 bill lying there on the couch.  You believe that it

12    has been abandoned and you can take it as the first finder, but

13    then before you're about to take it, you become aware that

14    someone is claiming that it was stolen from them.

15            Well, you may still take it because it may turn out

16    that that person is just making it up or there is no basis to

17    believe it, but you have a realization that you may not keep

18    that hundred dollars forever.  Someone may come after you

19    representing that guy who said it was stolen from him and say

20    hey, you sort of knew that or there was reason that you had to

21    believe that.

22            So I think that's -- the trustee can speak for

23    himself, but I think that is the argument he is making.

24            MR. WILES:  Let me clarify what I am trying to say.

25            If you're talking about I took a briefcase that had

1   your Honor's name on it, all right, I understand the point and

2   talking about stolen property.  Stolen property, as the words

3   are tossed around occasionally in this case, are an analogy,

4   not a description of what happened because none of the assets

5   that Madoff had, and he had million of dollars at all times, it

6   wasn't like there were dollars that had individual customer's

7   names on them.

8          The trustee in SIPIC both acknowledge my clients had

9   just as much right to what Madoff had as what anybody else had.

10  We're not talking about stolen property.  We are talking about,

11  as becomes clear in their briefs, whether a preference was

12  obtained, whether when my customers who were net, my clients

13  who were net losers, when they obtained withdrawals, the

14  trustee says you did better than other people.

15         Well, if you're a creditor and you think somebody is

16  committing fraud, that is exactly what you're supposed to do.

17  You're supposed to go in and get your money back.  To argue

18  that you are somehow acting in bad faith for doing so just

19  because there are other potential victims is just wrong.  The

20  Sharp case says that is wrong.  All the other cases that we

21  have cited you say that is wrong.

22         The cases have recognized for years that if you're a

23  creditor entitled to collect a debt, you have a purpose of your

24  own to serve.  If that is all you do, you have acted in good

25  faith.  You have only acted with a lack of good faith if you do

```
 1    something else to assist the debtor in defrauding other

 2    creditors.

 3            If you know that you're getting a preference, that is

 4    all you know, that is not a lack of bad faith.  That is exactly

 5    what the Irving Trust decision says, exactly what the Sharp

 6    decision says, both Second Circuit decisions.  They couldn't be

 7    clearer.

 8            THE COURT:  Thank you very much.  Who else wants to be

 9    heard?

10            MR. LIPSCHITZ:  I have two mall points on behalf of

11    the leverage providers.

12            As your Honor knows, as we made clear in our briefs,

13    none of the leverage providers, none of the allegations in the

14    complaints against the leverage providers come anywhere close

15    to alleging that any of the leverage providers had acted with

16    willful blindness or reached a subjective judgment, as your

17    Honor described earlier, of a high probability that Madoff was

18    running a Ponzi scheme.

19            That is not an accident because the allegations in the

20    complaint make it clear why it is implausible than any leverage

21    provider would provide leverage with the subjective belief that

22    Madoff was running a Ponzi scheme.  The way these transactions

23    work and as is alleged in the complaint, is that none of the

24    leverage providers stood to benefit from any appreciations of

25    the feeder funds to which they permitted third parties to get
```

 1  leverage in making their investments.

 2       The only benefit that the leverage providers are

 3  alleged to have received are the small feeds associated with

 4  these transactions.  It is simply implausible that they then

 5  hedge the leverage they provided by becoming investors in these

 6  feeder funds.  As a result, because they were perfectly hedged,

 7  and that is what is alleged in the complaints, whether the

 8  feeder fund appreciated in value, they would not have benefited

 9  from that appreciation.

10       It seems, on the other hand, if the funds declined in

11  value, they would lose the amount of leverage that they

12  provided.  It is simply implausible that in an effort to make a

13  small, nominal interest rate, which is what the leverage

14  providers benefited from, they would have put hundreds of

15  millions of dollars at risk, which is in fact what happened in

16  most if not all of the leverage providers are not losers who

17  lose hundreds of millions of dollars.

18       The second point is that in this particular case, the

19  complaints also establish value, something that we explained in

20  our briefs and something which is not responded to in either

21  SIPIC's opposition.  In fact, if there is anything to be said

22  there, they concede to the extent that the money that the

23  leverage providers drew back was principal, they haven't

24  established value.  For those reasons, the complaint against

25  the leverage providers should be dismissed.

1           THE COURT:  Thank you very much.  Anyone else want to

2      be heard on the defense side?

3           Okay.  Let me hear a final word from the trustee.

4           MR. WARSHAVSKY:  Unfortunately, more than one word.

5           I think I would start, your Honor, just by -- I know

6      in the order, when we submitted the order to your Honor, we

7      were clear on this.  To the extent that this is now a motion to

8      dismiss, we would ask for the right to replead because to an

9      extent the standard has been changed.

10          THE COURT:  Yes, yes, totally right.

11          MR. WARSHAVSKY:  Going to just a few points, Mr. Wiles

12     discussed it, a client becoming aware of a fraud, when it

13     became aware and pulled out, these are inherently factual

14     issues.  I don't think any of that was anything we dealt with

15     in the complaints.  I think the scenario that he provided to

16     you is a pure hypothetical.  I don't believe that any of our

17     complaints talk about somebody discovering a fraud, not knowing

18     it was a fraud, discovering it was a fraud and pulling all

19     their money out.  I am may be wrong.

20          THE COURT:  No, because you thought the standard was

21     different.

22          MR. WARSHAVSKY:  Right.

23          THE COURT:  I understand that completely.  That is,

24     among other reasons, why under any set of circumstances it

25     would be imperative that you be given an opportunity to

1   replead.

2        If you had a good-faith basis for believing the

3   standard was X when you filed your complaints, and the court

4   determines that the other standard is Y, then if you can, you

5   should be given the opportunity to replead to Y.  You may not

6   have the facts that would warrant your repleading to Y.  That

7   is a different question.

8        MR. WARSHAVSKY:  That is when I get back to the

9   pleading standard.  The trustee comes in as a stranger to this.

10  That is I think why the bankruptcy code is set up the way that

11  it is.

12       Your Honor read from 548, and I think 548 is clear

13  because it starts with the presumption that the trustee can

14  recover, and when you look to 548 (c), it talks about except to

15  the extent a transfer is under the other sections, where the

16  transferee wouldn't have this defense, in particular look at

17  547 which is a preference statute, all right, and there good

18  faith or value doesn't matter for preference.  Preference, the

19  trustee just has the option to pull back.

20       A trustee might know the value component ahead of time

21  but may not as well.  Here where there are books and records

22  that a trustee can work from, a trustee may be able to.  In a

23  situation where Mr. Madoff did, for instance, transfer out a

24  ring or something like that, the trustee wouldn't know what the

25  value is until after the complaint.  The defendant would have

1    to come forward and show value.

2            Likewise, good faith, the trustee certainly has

3    alleged facts.  We believe that is above and beyond what the

4    trustee last to allege, what a trustee in bankruptcy would, and

5    as the trustee comes in as a stranger in the relationship

6    between the parties.

7            I would then turn to 550 because we spoke about

8    burden.  It is important to remember 550 is a recovery statute,

9    and my adversary read from 550.  550 covers both initial

10   transfers and subsequent transfers.  550 (a)(1) talks about the

11   initial transferee.

12           THE COURT:  You're saying it would be kind of strange

13   to say that the burden should go one way under 550 (a)(1) and

14   the other way 550, really would be under (b), but the burden

15   should turn on whether it is an initial or subsequent

16   transferee when they're both, so far as 550 is concerned,

17   glommed together.

18           MR. WARSHAVSKY:  Correct.  That is because it is a

19   recovery statute, and if we look to 550 (b), 550 (b) actually

20   has three components, and I know we discussed it in our paper.

21           The first component, value, which is not an issue for

22   today.  The second component, good faith.  The third component

23   is without knowledge of the voidability of the transfer

24   avoiding.  How could a trustee ever know that a defendant,

25   unless a defendant is stupid enough to publicize ahead of time,

```
 1    hey, I think the debtor is about to go insolvent, I'm going to
 2    try and collect money, how would a trustee ever know that ahead
 3    time?  How could a trustee ever meet that standard ahead of
 4    time?
 5                    (Continued on next page)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1    The recovery is presumed unless the defendant can come

2    back with the value component, the good faith component, and

3    without knowledge.  That conjunction there means that all three

4    of those conditions must be met for the transfer not to be

5    avoided, for that property not to be recovered.

6    THE COURT:  Let me make sure how this plays out.

7    MR. WARSHAVSKY:  Sure.

8    THE COURT:  You bring a claim under 550.  Under your

9    view that the burden is on the defendant to raise good faith as

10   a defense, they put in an affidavit saying, we had no knowledge

11   of any fraud, there was nothing about the situation that ever

12   led us to believe there was a fraud, we didn't know X, we

13   didn't know Y, we didn't know Z.  You come back and say, well,

14   we have evidence that they did know X or Y or Z or at least

15   knew there was a high probability of it, here's our evidence.

16   I understand your argument for saying they should have

17   the burden of going forward, which is the way I just described

18   it.  But now they've gone forward and produced an affidavit and

19   maybe records and other things, all of which show that as far

20   as they were concerned, this had all the indicia of an innocent

21   transfer, without any knowledge of anything wrongful on the

22   part of the transferor.  You have come back with evidence that

23   they did have such knowledge.

24   Now the case goes to trial.  Who bears the ultimate

25   burden on this issue, on the good faith issue?  Is it their

1   burden to establish that they acted in good faith?  Is it your

2   burden to establish that they failed to act in good faith?  All

3   the discussion this evening has largely turned on who would

4   have the initial reason to go forward.  OK, that maybe just

5   relates to the burden of going forward.

6        Now we are talking about the burden on the merits.

7   Who has that?  The arguments you're making, and frankly the

8   arguments they were making, don't seem to me to answer that one

9   way or the other.

10       MR. WARSHAVSKY:  I think that the statute talks about

11  good faith.  I can tell you that we wouldn't take a case to

12  trial if we were going to allege that the defendant acted in

13  good faith.  I think that the defendant has to come forward and

14  present credible evidence, whether at summary judgment --

15       THE COURT:  Typically spoken of when we are talking

16  about a burden of going forward, they have to put up prima

17  facie evidence of it.  Despite all the stuff I heard from their

18  side about how difficult that would be, actually I think it

19  would be very easy.  Sure, it would be asserting negatives, but

20  they are the negatives that any innocent person would find easy

21  to assert:  I had no knowledge of anything improper, I wasn't

22  on notice, blah-blah-blah.  Now they have satisfied the burden

23  of going forward because they have presented through a sworn

24  affidavit a prima facie case of their good faith.

25       MR. WARSHAVSKY:  That's right.

```
 1          THE COURT:  Now we go to trial.  I thought one of the
 2   strongest arguments they made is that in the default position
 3   as to an element of the claim, it is on the plaintiff.
 4          MR. WARSHAVSKY:  Correct.
 5          THE COURT:  Now shouldn't it be the plaintiff's
 6   obligation to show that they lack good faith?
 7          MR. WARSHAVSKY:  If it were an element of the claim, I
 8   don't think I could come to a different result.  Our position
 9   has been an affirmative defense and that the defendants would
10   have the burden at the beginning, and then it is up to the
11   plaintiff to rebut that.
12          THE COURT:  Why should it be considered an affirmative
13   defense in the way you're talking about?  Of course, to call it
14   an affirmative defense is to beg the question.
15          MR. WARSHAVSKY:  Right.
16          THE COURT:  They are asserting good faith.  Why isn't
17   it natural, if you're disputing that, for you to have the
18   burden of saying, baloney, here is the proof that they had
19   fraudulent knowledge or were willfully blind or whatever?
20          MR. WARSHAVSKY:  I think the answer to that is
21   because -- you're right, it is somewhat of a tautology for me
22   to come back and say it is an affirmative defense.  I
23   understand that.  But the statute speaks in terms of good
24   faith.  I think ultimately if the statute said that it was bad
25   faith, perhaps that would be the trustee's burden to prove bad
```

1 || faith.

2 ||          THE COURT:  They would respond, at least as to 550,

3 || and say the language of the statute is the trustee may not

4 || recover from a transferee who takes in good faith.  That

5 || introduces some ambiguity into the way you're approaching it.

6 ||          MR. WARSHAVSKY:  Except remember this is a recovery

7 || statute.  It's a recovery statute.  The trustee comes with the

8 || fact that this is already established as property of the

9 || estate.  The defendants are in possession of the property and

10 || want to keep it.  Therefore, I think that is why it is their

11 || burden to show that --

12 ||          THE COURT:  That is the argument you started with an

13 || hour ago.

14 ||          MR. WARSHAVSKY:  At least I'm consistent.

15 ||          THE COURT:  It's not a frivolous argument.  I just

16 || wanted to explore it all a little bit more.

17 ||          I will take this matter under advisement.  I thank all

18 || counsel for excellent arguments.

19 ||          MR. WARSHAVSKY:  Your Honor, I'm sorry.  If I could

20 || make one other point because I didn't get to make it earlier?

21 ||          THE COURT:  Go ahead, yes.

22 ||          MR. WARSHAVSKY:  I did talk earlier about and I did

23 || want to bring your attention to 550.  It is in our papers, but

24 || I would be remiss if I didn't raise it here again.

25 ||          Congress does say in 550(b)(1) there is a knowledge

1  component.  If the defendants' interpretation of what good

2  faith or lack of good faith is, these two pieces, in good faith

3  and without knowledge of the voidability of the transfer, would

4  ultimately be the same thing; you would have to read the

5  statute as being redundant.

6       MR. HARRIS:  Your Honor, could I be heard very briefly

7  just on that point?

8       THE COURT:  Sure.

9       MR. HARRIS:  Chris Harris.  I think the cases and the

10  commentary are pretty persuasive and overwhelming that in fact

11  the knowledge prong is an illustration of what lack of good

12  faith means.  Every case that has analyzed this has said this.

13  The trustee doesn't cite any cases that say in fact they mean

14  something different.  The committee that recommended these

15  changes said it was an illustration of what good faith meant.

16  Collier's, when it summarizes the case law, says the same

17  thing.  So I don't think this changes the analysis at all.

18       It is true that knowledge and good faith might be more

19  in the hands of a subsequent transferee than in the hands of

20  the trustee, but that doesn't end the inquiry.  There are lots

21  of kinds of claims where a plaintiff has the burden of proof on

22  the state of mind of the defendant, such as the securities

23  laws.

24       The mere fact that we have an illustration of what

25  good faith means and that lack of good faith would mean

1  knowledge of the voidability, that doesn't change the analysis

2  here. They still haven't articulated a reason why it makes

3  sense to make a subsequent transferee who is presumed to be

4  innocent go through the burden of all this, going through new

5  discovery, before it can finally get out of this case.

6          THE COURT: I need to go back and look at more of the

7  legislative history. I thought Congress was making a

8  distinction here. Without knowledge of the voidability of the

9  transfer avoided refers to one specific kind, this may be your

10  point, one specific kind of good faith, but good faith

11  encompasses a lot more. This is not the only form that good

12  faith can take.

13          MR. HARRIS: That is a much better way of articulating

14  what I meant to say. It's an illustration of what lack of good

15  faith would be.

16          THE COURT: Go ahead.

17          MR. WARSHAVSKY: Your Honor, I will go back to the

18  plain meaning of the statute. There is a conjunction here.

19  There is nothing that says "for example." This is a tripartite

20  test. The fact of the matter is the defendants did cite one

21  case where it was treated similarly, I will grant you that. We

22  cited cases as well.

23          However, the plain meaning, if nothing else, these

24  arguments with you have been clear about is your notice and

25  your articulation of the trend to look at the plain language.

1    Nothing can be plainer here than that there are three

2    requirements for a subsequent transferee to keep that transfer.

3    That is value, good faith, and a lack of knowledge of the

4    voidability of the transfer.

5            THE COURT:  All right.  Those are all good points from

6    both sides.  I will have to figure that one out, too.  Again I

7    thank all counsel.  This matter is adjourned.

8            (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25