HERBERT SMITH FREEHILLS
NEW YORK LLP
Marc J. Gottridge
Michael Schoeneberger
450 Lexington Avenue
New York, New York 10017
Telephone: (917) 542-7600
marc.gottridge@hsf.com
michael.schoeneberger@hsf.com

**Hearing Date: June 15, 2022**
**Opposition Date: April 26, 2022**
**Reply Date: May 26, 2022**

*Attorneys for the Defendants in Adversary Proceeding No. 11-02569 (CGM)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02569 (CGM) |
| Plaintiff, | |
| v. | **BARCLAYS DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT** |
| BARCLAYS BANK (SUISSE) S.A., CAIXABANK S.A., as successor by merger to Barclays Bank S.A., and ZEDRA TRUST COMPANY (JERSEY) LIMITED (f/k/a Barclays Private Bank & Trust Limited), | |
| Defendants. | |

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL AND FACTUAL BACKGROUND ............................................................. 4

    A.   Introduction ................................................................................................ 4

    B.   The Trustee's Fairfield Action ................................................................. 5

    C.   The Fairfield Liquidators' Actions Against Redeeming Shareholders ............. 7

    D.   The Trustee's Rule 2004 Subpoenas ....................................................... 8

    E.   The Complaint in this Action .................................................................. 9

        1.   The Barclays Defendants ........................................................ 9

        2.   The Alleged BLMIS-to-Fairfield Sentry Initial Transfers—and
              the Sole Allegations as to Their Alleged Avoidability ........................... 9

        3.   The Alleged Subsequent Transfers to the Barclays Defendants—
              and the Sole Allegations That They Were of Customer Property ........ 10

    F.   The Trustee Has Not Alleged That Any Barclays Defendant Had
       Knowledge of the Madoff/BLMIS Fraud ............................................. 12

    G.   The Trustee's Other Fairfield Subsequent Transfer Actions—and the
       $2 Billion in Excess Alleged Subsequent Transfers .............................. 12

ARGUMENT ..................................................................................................................... 13

   I.   THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(e) .................... 13

    A.   Introduction .............................................................................................. 13

    B.   The Alleged Initial Transfers Are Covered by Section 546(e) ................ 16

        1.   The Fairfield Sentry Initial Transfers Were Made in Connection
              With the BLMIS-Fairfield Sentry Account Agreements, Which
              Are "Securities Contracts" ..................................................... 16

        2.   The Fairfield Sentry Initial Transfers Were "Settlement
              Payments" ............................................................................ 17

        3.   The Fairfield Sentry Initial Transfers Were Made in Connection
              with the Fairfield Sentry Articles of Association, Which Is a
              Separate "Securities Contract" ............................................... 17

    C.   The Alleged Initial Transfers Were Made by, to, and for the Benefit of
       Entities Covered by Section 546(e) ....................................................... 20

        1.   The Alleged Initial Transfers Were Made by a Stockbroker ................ 21

        2.   The Alleged Initial Transfers Were Made to a Financial
              Institution ............................................................................. 21

i

3.      The Alleged Initial Transfers Were Allegedly Made for the
        Benefit of Financial Institutions ............................................................ 23

D.   The Trustee Has Not Alleged that Any of the Barclays Defendants
     Had Actual Knowledge of the Madoff/BLMIS Fraud .................................... 24

E.   The Section 546(e) Safe Harbor Shields All of the Alleged Initial
     Transfers ........................................................................................................ 27

     1.      The Trustee Has Failed to Allege Actual Fraudulent Intent as
             Required by Section 548(a)(1)(A) and Rule 9(b) .................................. 27

     2.      The Trustee Should Not Be Allowed to Rely on the Ponzi
             Scheme Presumption to Avoid His Pleading Burden ............................ 28

II.   THE TRUSTEE HAS FAILED TO PLEAD THE AVOIDABILITY OF
      THE ALLEGED INITIAL TRANSFERS AND HIS ATTEMPTED
      WHOLESALE INCORPORATION OF THE FAIRFIELD AMENDED
      COMPLAINT IS IMPROPER ............................................................................... 30

III.  THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO
      ADEQUATELY PLEAD THAT THE BARCLAYS DEFENDANTS ARE
      SUBSEQUENT TRANSFEREES OF CUSTOMER PROPERTY ...................... 33

A.   The Trustee's Own Pleadings Establish the Implausibility of His
     Conclusory Allegations ................................................................................. 33

     1.      The Trustee Has Failed to Carry His Pleading Burden ........................ 33

     2.      It Is Implausible that Alleged Initial Transfers to Fairfield Sentry
             of $3 Billion Resulted in Alleged Subsequent Transfers of $5
             Billion ............................................................................................... 34

     3.      It Is Implausible that Funds Received by the Barclays
             Defendants Were Subsequent Transfers of Initial Transfers Made
             Ten or More Months Earlier, or When No Money From BLMIS
             Remained at Fairfield Sentry When It Made the Transfers .................. 35

CONCLUSION ...................................................................................................................... 39

# <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                                      <u>**Page(s)**</u>

*AP Servs., LLP v. Silva,*
   483 B.R. 63 (S.D.N.Y. 2012) ................................................................... 15

*Arizona v. California,*
   460 U.S. 605 (1983) ................................................................................ 29

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................... 31, 39

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................ 34

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,*
   757 F.2d 523 (2d Cir. 1985) .................................................................... 18

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir. 2002) .................................................................... 34

*Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,*
   322 F.3d 147 (2d Cir. 2003) .................................................................... 18

*Cortec Indus., Inc. v. Sum Holding L.P.,*
   949 F.2d 42 (2d Cir. 1991) ........................................................................ 4

*David v. Bifani,*
   No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) ......................... 31

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,*
   651 F.3d 329 (2d Cir. 2011) .................................................................... 20

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.),*
   323 B.R. 857 (Bankr. S.D.N.Y. 2005) ........................................................ 24

*Finn v. All. Bank,*
   860 N.W.2d 638 (Minn. 2015) .................................................................. 29

*Hinton v. Trans Union, LLC,*
   654 F. Supp. 2d 440 (E.D. Va. 2009) ....................................................... 33

*In re Bernard L. Madoff Inv. Sec. LLC,*
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) .................................................... 36, 37

*In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust),*
   773 F.3d 411 (2d Cir. 2014) .............................................................. passim

*In re Boston Generating LLC (Holliday v. K Rd. Power Mgt., LLC)*,
    617 B.R. 442 (Bankr. S.D.N.Y. 2020) ................................................... 20

*In re Caremerica, Inc.*,
    409 B.R. 737 (Bankr. E.D.N.C. 2009) ................................................... 33

*In re CIL Ltd.*,
    582 B.R. 46 (Bankr. S.D.N.Y. 2018) ..................................................... 13

*In re Fairfield Sentry Ltd.*,
    596 B.R. 275 (Bankr. S.D.N.Y. 2018) ................................................ 8, 19

*In re Fairfield Sentry Ltd.*,
    No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. 2018)................. 7, 18

*In re Fairfield Sentry Ltd.*,
    No. 10-13164, 2020 WL 7345988 (Bankr. S.D.N.Y. 2020)........... passim

*In re SunEdison, Inc.*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ................................................... 15

*In re Tribune Co. Fraudulent Conv. Litig.*,
    946 F.3d 66 (2d Cir. 2019).................................................. 14, 19, 21, 24

*In re Tribune Co. Fraudulent Conv. Litig.*,
    10 F.4d 147 (2d Cir. 2021)................................................................... 18

*In re Tribune Co. Fraudulent Conv. Litig.*,
    No. 12-cv-2652 (DLC), 2019 WL 1771786 (S.D.N.Y. Apr. 23, 2019)................... 15

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap, Inc.)*,
    260 B.R. 343 (Bankr. W.D.N.Y. 2001) ................................................. 30

*Lowden v. William M. Mercer, Inc.*,
    903 F. Supp. 212 (D. Mass. 1995) ........................................................ 31

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
    138 S. Ct. 883 (2018)..................................................................... 13, 27

*Merrill v. Abbott (In re Independent Clearing House Co.)*,
    77 B.R. 843 (D. Utah 1987).................................................................. 29

*Muhammad v. Bethel-Muhammad*,
    No. 11-0690-WS-B, 2012 WL 1854315 (S.D. Ala. May 21, 2012) ......................... 31

*Nastasi v. Bloomberg, L.P.*,
    No. 18-CV-12361 (JMF), 2021 WL 3541153 (S.D.N.Y. Aug. 11, 2021)................... 4

*NCUA Bd. v. Morgan Stanley & Co.*,
   No. 13 Civ. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ............................... 31

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ........................................................................................................ 23

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
   No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) .................... 31

*Off. Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp.*
(*In re Verestar, Inc.*),
   343 B.R. 444 (Bankr. S.D.N.Y. 2006) ...............................................................................27, 28

*Picard v. Citibank (In re Bernard L. Madoff Inv. Secs. LLC)*,
   12 F.4d 171 (2d Cir. 2021) ........................................................................... 28, 29, 30

*Picard v. Est. of Chais (In re Bernard L. Madoff Inv. Secs. LLC)*,
   445 B.R. 206 (Bankr. S.D.N.Y. 2011) ................................................................................ 37

*Picard v. Legacy Cap. Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   603 B.R. 682 (Bankr. S.D.N.Y. 2019) ................................................................................ 29

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
   542 B.R. 100 (Bankr. S.D.N.Y. 2015) ......................................................... 30, 33, 34

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ................................................................................................ 18

*Salahuddin v. Cuomo*,
   861 F.2d 40 (2d Cir. 1988) .......................................................................................... 32, 34

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
   403 F.3d 43 (2d Cir. 2005) .......................................................................................... 27, 30

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*
   No. 08-1789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ......................passim

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
   No. 12 MC 115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............................... passim

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
   476 B.R. 715 (S.D.N.Y. 2012) .......................................................................................... 21

*State Bank & Tr. Co. v. Spaeth (In re Motorwerks, Inc.)*,
   371 B.R. 281 (Bankr. S.D. Ohio 2007) ............................................................................... 34

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ........................................................................................................ 23

v

*Tellabs, Inc. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ........................................................................................... 4

*United States v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ............................................................. 32, 33

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015) .................................................................. 4

**<u>Statutes</u>**

11 U.S.C. § 101(22)(A) .................................................................................... 21, 23

11 U.S.C. § 101(53A)(B) ....................................................................................... 21

11 U.S.C. § 544 .................................................................................................... 9

11 U.S.C. § 546(e) ........................................................................................ passim

11 U.S.C. § 547 .................................................................................................... 9

11 U.S.C. § 548(a) ................................................................................................ 9

11 U.S.C. § 548(a)(1) ...................................................................................... 16, 28

11 U.S.C. § 548(a)(1)(A) ....................................................................... 15, 28, 29, 30

11 U.S.C. § 550 ................................................................................................ 1, 9

11 U.S.C. § 550(a)(1), (2) ..................................................................................... 13

11 U.S.C. § 551 ................................................................................................ 1, 9

11 U.S.C. § 741(7) ............................................................................................... 18

11 U.S.C. § 741(7)(A) ........................................................................................... 16

11 U.S.C. § 741(7)(A)(i) ........................................................................................ 18

N.Y. Debtor & Creditor Law §§ 273–79 .................................................................... 9

**<u>Rules</u>**

Federal Rule of Bankruptcy Procedure 7009 ............................................................. 28

Federal Rule of Bankruptcy Procedure 7012(b) .......................................................... 1

Federal Rule of Civil Procedure 8(a) .................................................................................. 3, 32, 33

Federal Rule of Civil Procedure 9(b) ................................................................................ 27, 28, 30

Federal Rule of Civil Procedure 10(c) .................................................................................... 31

Federal Rule of Civil Procedure 12(b)(6) ............................................................................... 1, 4

Federal Rule of Evidence 201(c)(2) .......................................................................................... 4

**Foreign Authority**

*Fairfield Sentry Ltd. v. Migani*,
   [2014] UKPC 9 ........................................................................................................................ 4

Defendants Barclays Bank (Suisse) S.A. ("Barclays Suisse"), Caixabank S.A., as successor by merger to Barclays Bank S.A. ("Barclays Spain"), and Zedra Trust Company (Jersey) Limited (f/k/a Barclays Private Bank & Trust Limited) ("Barclays Private Bank") (together, the "Barclays Defendants") respectfully submit this memorandum of law and the accompanying declaration of Marc J. Gottridge (the "Gottridge Declaration" or "Gottridge Decl.") in support of their motion to dismiss the complaint, as amended (the "Complaint" or "Compl."),[1] of plaintiff Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") (the "Trustee"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

The Trustee has asserted a single claim under Section 550 of the Bankruptcy Code (the "Code") to recover from the Barclays Defendants, as alleged subsequent transferees, approximately $65 million in purported BLMIS customer property. The Trustee's claims in this and approximately 80 other adversary proceedings (together, the "Fairfield Subsequent Transfer Actions") are all predicated on approximately $3 billion in allegedly avoidable initial transfers from BLMIS to Fairfield Sentry Limited ("Fairfield Sentry").

---

[1] The Complaint (Gottridge Decl. Ex. 1), ECF No. 1, was filed on September 1, 2011. It was amended by stipulation and order entered on December 16, 2021 (Gottridge Decl. Ex. 2), ECF No. 119, and effectively (although not formally) amended again by stipulation and order entered on February 14, 2022 (Gottridge Decl. Ex. 3), ECF No. 122. The December 2021 Stipulation and Order amended the Complaint to: (i) substitute Caixabank S.A., as successor by merger to Barclays Bank S.A., as a defendant in place of Barclays Bank S.A.; and (ii) amend the caption to remove "Barclays Private Bank & Trust Limited" and replace it with "Zedra Trust Company (Jersey) Limited (f/k/a Barclays Private Bank & Trust Limited)." The February 2022 Stipulation and Order dismissed the Trustee's claims as to four alleged subsequent transfers listed on Exhibits F and I to the Complaint, reducing the amount sought by the Trustee by $2,733,843. The Trustee has not filed an amended complaint reflecting any of these changes. Unless otherwise specified, all "ECF No. __" citations refer to Adv. Pro. No. 12-02569.

The Complaint should be dismissed in its entirety for any of three separate reasons. *First*, the securities safe harbor of Section 546(e) precludes the Trustee from avoiding the alleged initial transfers, thereby affording a complete defense to the Trustee's attempt to recover from the Barclays Defendants. *Second*, the Trustee has failed to plead the avoidability of the alleged initial transfers—and his attempt to remedy that pleading failure by purporting to adopt and incorporate by reference the entirety of his massive and largely irrelevant pleading in another case is improper. *Third*, the Trustee has not plausibly alleged that the Barclays Defendants are subsequent transferees of BLMIS customer property.

Section 546(e) of the Code provides that the Trustee "may not avoid a transfer" satisfying the statutory requirements. The Trustee's own Complaint establishes that the alleged initial transfers qualify for this safe harbor because: (i) they were both made "in connection with a securities contract" and constituted "settlement payments" within the meaning of Section 546(e), either of which would render them qualified transactions under Section 546(e); and (ii) they were made by, to, and for the benefit of qualifying entities, including a stockbroker and financial institutions, any of which would suffice under Section 546(e). Further, the Trustee has not alleged that any of the Barclays Defendants had actual knowledge of the fraud committed by Bernard L. Madoff ("Madoff") through BLMIS, rendering irrelevant decisions treating allegations of an alleged subsequent transferee's actual knowledge as disqualifying it from invoking Section 546(e). The Trustee, moreover, has failed to plead that the alleged initial transfers were made with the intent required by Section 548(a)(1)(A) of the Code, so even claims based on alleged initial transfers within that provision's two-year lookback period must be dismissed.

In addition, the Trustee has failed to plead the avoidability of the alleged initial transfers. The Complaint lacks any factual allegation which, if proven, would establish that essential first

element of his cause of action. The Trustee has tried to plug this gap by incorporating into the Complaint his entire 217-page, 798-paragraph long (and now superseded) pleading in another action, but the Federal Rules of Civil Procedure disallow that gambit. The indiscriminate adoption of another lengthy pleading into a complaint flouts Rule 8(a)(2)'s "short and plain statement" requirement, and case law condemns that practice. Such wholesale incorporation of a pleading that is largely immaterial to this action deprives the Barclays Defendants of fair notice of the particular allegations against them, and imposes on them and the Court the unfair burdens of dealing with an unnecessarily prolix pleading.

Nor has the Trustee plausibly alleged that the Barclays Defendants are subsequent transferees of BLMIS customer property. Through pleadings filed in this Court, the Trustee has sought to recover approximately *$5 billion* in subsequent transfers originating from Fairfield Sentry, even though the supposed underlying initial transfers to Fairfield Sentry total only *$3 billion*. That is not merely implausible; it is mathematically impossible. While studiously avoiding the obvious alternative explanation—that subscription payments received by Fairfield Sentry funded many of its transfers to redeeming shareholders—the Trustee pursues redemption payments made to the Barclays Defendants as long as 17 months after Fairfield Sentry's most recent receipt of funds from BLMIS, and/or at times when Fairfield Sentry had already transferred to other recipients all the funds that it had received from BLMIS. It is not plausible that such transfers to the Barclays Defendants were of BLMIS customer property. Nor can the Trustee excuse this fundamental pleading failure by claiming that he lacks the requisite information. To the contrary, the Trustee has for more than a decade enjoyed full access to all relevant records of Fairfield Sentry, its affiliated funds, and BLMIS. There is no justification for his pleading failure, and his Complaint should be dismissed.

## PROCEDURAL AND FACTUAL BACKGROUND

### A.    Introduction

Fairfield Sentry was an investment fund that sold shares directly to subscribing foreign investors (who paid in U.S. dollars) from the 1990s through BLMIS's collapse in December 2008. *See* Compl. ¶¶ 2, 6; *see also* Gottridge Decl. Ex. 4 (First Am. Compl., *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010) (the "Fairfield Action"), ECF No. 23 (the "Fairfield Amended Complaint" or "Fairfield Am. Compl.")) ¶¶ 23, 32–35.[2]   Fairfield Sigma Limited ("Fairfield Sigma") sold shares to subscribing shareholders in euros and invested those funds with Fairfield Sentry, which in turn invested the funds with BLMIS.  *See* Compl. ¶¶ 2, 6; *see also* Gottridge Decl. Ex. 4 (Fairfield Am. Compl.) ¶¶ 22, 51–53.  Fairfield Sentry, Fairfield Sigma, and their affiliate, Fairfield Lambda Limited ("Fairfield Lambda") (together, the "Fairfield Funds"), were all incorporated in the British Virgin Islands.  Gottridge Decl. Ex. 4 (Fairfield Am. Compl.) ¶¶ 32, 51, 56.  The "sole purpose" of Fairfield Sigma and Fairfield Lambda was "to invest

---

[2] As this Court has recognized, on a Rule 12(b)(6) motion, "courts must consider," in addition to "the complaint in its entirety" (including exhibits), "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*, No. 08-1789, 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*") (quoting *Tellabs, Inc. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).  Among the matters subject to judicial notice on this motion are "statements or documents" that "are integral to the complaint," even if not attached to or incorporated by reference in it.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  Considering such material is appropriate because "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint." *Id*. at 48.  Courts also take judicial notice of admissions in the plaintiff's filings in separate actions, *see, e.g., Nastasi v. Bloomberg, L.P.*, No. 18-CV-12361 (JMF), 2021 WL 3541153, at *4–5 (S.D.N.Y. Aug. 11, 2021); *see also infra* at 18 n.16, and "documents filed with government entities" and/or "retrieved from official government websites," *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015); *see also infra* at 22 n.19; 24 n.21. The Barclays Defendants request that the Court take judicial notice of all such materials under Federal Rule of Evidence 201(c)(2).  *See* Gottridge Decl. ¶ 32.

4

funds in Fairfield Sentry." Gottridge Decl. Ex. 5 (Consent Judgments, Fairfield Action, ECF Nos.
108, 109, 110) at 3 (same language in each judgment).

This is one of 81 Fairfield Subsequent Transfer Actions, in which the Trustee has sought
to recover, as alleged subsequent transfers of BLMIS customer property, payments that defendants
received for redeeming their shares in a Fairfield Fund. *See* Gottridge Decl. Ex. 7 (Trustee's
Twenty-Sixth Interim Report for the Period Apr. 21, 2021 through Sept. 3, 2021, Adv. Pro. No.
08-01789 (Bankr. S.D.N.Y. Oct. 29, 2021), ECF No. 20821) ¶ 229 & Ex. D. The Trustee's claims
in this action are best understood in the context of certain related proceedings—some initiated by
the Trustee and others by the Fairfield Funds' BVI court-appointed liquidators (the "Fairfield
Liquidators")[3]— that are briefly described below.

### B. The Trustee's Fairfield Action

On May 18, 2009, the Trustee commenced an action against Fairfield Sentry and others to
avoid and recover more than $3.5 billion of initial transfers of customer property that they allegedly
had received from BLMIS. *See* Compl. ¶ 37. On July 20, 2010, the Trustee filed the Fairfield
Amended Complaint, naming additional defendants, including several entities and individuals
(together, the "FGG Defendants") associated with the Fairfield Greenwich Group ("FGG"), which
had formed, managed, and marketed the Fairfield Funds. Gottridge Decl. Ex. 4 (Fairfield Am.
Compl.) ¶¶ 20–26. In the Fairfield Amended Complaint, the Trustee alleged that BLMIS made
approximately $3 billion in initial transfers to Fairfield Sentry during the six-year period before
December 11, 2008 (*i.e.*, the "Filing Date"). *Id.* ¶¶ 10, 536.

---

[3] The BVI High Court of Justice entered an order for the liquidation of the Fairfield Funds
on July 21, 2009. Gottridge Decl. Ex. 6 (Settlement Agreement, Fairfield Action, ECF No. 69) ¶
G at 2.

The Trustee and the Fairfield Liquidators entered into a settlement agreement (the "Fairfield Settlement Agreement") on May 9, 2011. *See* Gottridge Decl. Ex. 6 (Fairfield Settlement Agreement). This Court approved the Fairfield Settlement Agreement on June 7, 2011, and entered consent judgments (together, the "Consent Judgments") in favor of the Trustee and against Fairfield Sentry for $3.054 billion, against Fairfield Sigma for $752.3 million, and against Fairfield Lambda for $52.9 million. *See* Gottridge Decl. Ex. 5 (Consent Judgments).

In the Fairfield Settlement Agreement, "the Trustee and the Liquidators each agree[d] to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims." Gottridge Decl. Ex. 6 (Fairfield Settlement Agreement), ¶ 14. The "Sharing Claims" include this action and certain actions the Fairfield Liquidators separately commenced against the Barclays Defendants (as described *infra* at 7–8). *Id.* ¶¶ 4, 7, 11. The Trustee and the Fairfield Liquidators also agreed to provide each other with "reasonable cooperation and assistance . . . in connection with the prosecution of the Sharing Claims." *Id.* ¶ 14. As a result, the Trustee has for over a decade had the benefit of the Fairfield Funds' cooperation and full access to their records—including records "relating to, or beneficial to the pursuit of" this action. *Id.*

On August 28, 2020, the Trustee filed his Second Amended Complaint in the Fairfield Action against defendants that had not previously settled, as well as certain additional defendants. Gottridge Decl. Ex. 8 (Second Am. Compl., Fairfield Action, ECF No. 286 ("Fairfield Second Amended Complaint")). The Trustee thus now seeks to recover from non-settling defendants in the Fairfield Action an additional $1.139 billion in subsequent transfers of BLMIS customer property allegedly paid by Fairfield Sentry to certain FGG Defendants, including transfers stemming from management fees, incentive fees, and other compensation or remuneration. *See*

6

Gottridge Decl. Ex. 9 (Exs. 8, 10, 12, 13, 14, and 21 to Fairfield Second Am. Compl., Fairfield

Action, ECF Nos. 286-8, 286-10, 286-12, 286-13, 286-14, 286-21).

### C.    The Fairfield Liquidators' Actions Against Redeeming Shareholders

Commencing in or about April 2010, the Fairfield Liquidators filed actions in New York

against hundreds of Fairfield Funds shareholders, seeking to "claw back" redemption payments.

*See* Gottridge Decl. Ex. 10 (Ex. G to the Fairfield Settlement Agreement) at 1–5 (listing 209 such

actions pending in this Court as of May 9, 2011).  Among these were three adversary proceedings

in which the Fairfield Liquidators sued the Barclays Defendants to recover substantially the same

transfers at issue in this action.[4]  In their actions, the Fairfield Liquidators brought BVI-law

statutory avoidance, common law, and contract claims to recover payments received by defendants

redeeming shares pursuant to the Fairfield Funds' Articles of Association.  *See* Gottridge Decl.

Ex. 11 (Fairfield Sentry's Articles of Association).[5]

After a series of decisions by this Court (now on appeal to the District Court),[6] all of the

Fairfield Liquidators' claims have been dismissed except for constructive trust claims against

---

[4] *See* Third Am. Compl., *Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Bank (Suisse) SA, et al.*, Adv. Pro. No. 11-01259 (Bankr. S.D.N.Y. Aug. 15, 2019), ECF No. 62; Second Am. Compl., *Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Bank SA Madrid, et al.*, Adv. Pro. No. 12-01265 (Bankr. S.D.N.Y. Dec. 5, 2019), ECF No. 57; Second Am. Compl., *Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Private Bank & Trust (Channel Islands) Ltd., et al.*, Adv. Pro. No. 12-01599 (Bankr. S.D.N.Y. June 28, 2019), ECF No. 58.  This Court should take judicial notice of pleadings from the Fairfield Liquidators' actions to recover alleged BLMIS customer property, because the Fairfield Liquidators and the Trustee are in privity with each another.  *See infra* at 23 n.20.

[5] *See also In re Fairfield Sentry Ltd.*, No. 10-13164, 2018 WL 3756343, at *3 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") ("The procedure for purchasing and redeeming [Fairfield] Fund shares was set forth in the Amended and Restated Articles of Association.").

[6] *Fairfield Sentry Ltd. (In Liquidation) v. Citibank NA London*, No. 1:19-cv-03911-VSB (S.D.N.Y.) (lead case in the administratively consolidated appeals).

certain so-called "Knowledge Defendants"—*i.e.*, a subset of defendants that allegedly "knew when they redeemed their interests in the [Fairfield] Funds that the redemption prices were inflated because they were based on [Fairfield] Sentry's fictitious BLMIS account statements listing securities that did not exist."[7]    The Barclays Defendants are *not* among the "Knowledge Defendants"; the Fairfield Liquidators have never alleged that they knew that their redemptions were made at values inflated by reason of Madoff's fraud.[8]    Accordingly, the Fairfield Liquidators' claims against the Barclays Defendants have been dismissed.

## D.    The Trustee's Rule 2004 Subpoenas

On January 12, 2009, this Court authorized the Trustee to compel production of documents and testimony through the issuance of Rule 2004 Subpoenas.  *See* Gottridge Decl. Ex. 12 (Order, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.t Sec. LLC*, Adv. Pro. No. 08-01789, ECF No. 31). Between April 2009 and April 2010, the Trustee issued three subpoenas to entities that were then affiliated with the Barclays Defendants:  two to the New York branch of Barclays Bank PLC and one to Barclays Capital Inc. (together, the "Rule 2004 Subpoenas").  Gottridge Decl. Ex. 13 (Rule 2004 Subpoenas).  The Rule 2004 Subpoenas included a total of 73 separate expansive demands, including for "[a]ny and all" documents and communications concerning BLMIS, Fairfield Sentry, and Fairfield Sigma.  *See generally id.*  Pursuant to the subpoenas, thousands of documents were produced to the Trustee in 2009 and 2010, long before he filed his Complaint against the Barclays Defendants in September 2011.  *See* Gottridge Decl. Ex. 14 (Decl. of Regina Griffin, ECF No. 51)

---

[7] *In re Fairfield Sentry Ltd.*, No. 10-13164, 2020 WL 7345988, at *1, *9–10 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*") (holding that the securities safe harbor of Section 546(e) barred the Liquidators' BVI law avoidance claims); *see also In re Fairfield Sentry Ltd.*, 596 B.R. 275, 282, 316 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*").

[8] Nor has the Trustee made such an allegation.  *See infra* at 12.

¶ 9 & Ex. C-2. Before commencing this action, the Trustee thus had the benefit not only of the Fairfield Funds' cooperation and records, but also a substantial document production from affiliates of the Barclays Defendants.

### E. The Complaint in this Action

#### 1. The Barclays Defendants

As alleged by the Trustee: Barclays Suisse is a Swiss *société anonyme* operating as a private bank; Barclays Spain a Spanish *sociedad anónima* operating as a bank; and Barclays Private Bank a Jersey registered private company operating as a bank. Compl. ¶¶ 22–24.

#### 2. The Alleged BLMIS-to-Fairfield Sentry Initial Transfers—and the Sole Allegations as to Their Alleged Avoidability

The Trustee alleged that "[d]uring the six years preceding the Filing Date [*i.e.*, December 11, 2008], BLMIS made transfers to Fairfield Sentry of approximately $3 billion," which he asserted was "Customer Property." *Id*. ¶ 38. Of this amount, $1.6 billion was allegedly transferred within two years of the Filing Date. *Id*. ¶ 39. The Trustee pleaded that: the "Fairfield Sentry Six Year Initial Transfers . . . are avoidable, and recoverable under sections 544, 550 and 551 of the Bankruptcy Code, §§ 273–79 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)," *id*. ¶ 38; the "Fairfield Sentry Two Year Initial Transfers . . . are avoidable and recoverable under sections 548(a), 550 and 551" of the Code as well as SIPA, *id*. ¶ 39; and a subset of the latter transfers, allegedly made during the 90 days preceding the Filing Date (approximately $1.1 billion), are "avoidable and recoverable under sections 547, 550 and 551" of the Code as well as SIPA, *id*. ¶ 40. The Trustee did not allege that he had avoided any part of the alleged initial transfers from BLMIS to Fairfield Sentry, nor did his Consent Judgments against the Fairfield Funds avoid them. *See generally* Gottridge Decl. Ex. 5 (Consent Judgments).

As for avoidability, the Trustee pleaded merely that he had filed the Fairfield Action, "in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion" (referring to the Fairfield Amended Complaint), and added: "***The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint.***"  Compl. ¶ 37 (emphasis added).  The Fairfield Amended Complaint, Gottridge Decl. Ex. 4, is 217 pages long—not counting its 111 exhibits—and contains 798 paragraphs.  In it, the Trustee asserted claims against over 40 defendants in addition to the three Fairfield Funds, and his claims against Fairfield Sentry were based on many grounds other than the avoidability of the alleged BLMIS-to-Fairfield Sentry initial transfers—*e.g*., for turnover and accounting, unjust enrichment, conversion, money had and received, aiding and abetting fraud and breach of fiduciary duty, and objections to the allowance of claims.  *See id*.

> **3.    The Alleged Subsequent Transfers to the Barclays Defendants—and the Sole Allegations That They Were of Customer Property**

In the Complaint, the Trustee alleged that, on certain dates in the six years before the Filing Date, Fairfield Sentry transferred approximately: (i) $37,973,175 to Barclays Suisse; (ii) $4,719,252 to Barclays Spain; and (iii) $893,988 to Barclays Private Bank.[9]  Compl. ¶¶ 43, 48, 53 & Exs. D, G, I.  The Complaint did not identify which portions of the alleged BLMIS-to-Fairfield Sentry initial transfers were supposedly subsequently transferred to the Barclays Defendants. Although exhibits to the Complaint listed specific payments that the Trustee claimed were subsequent transfers, his pleading provided no information connecting any particular payments to the claimed initial transfers.  Nor did the Trustee provide any information to enable the Court or

---

[9] The latter amount was reduced to $820,636 by the February 2022 Stipulation and Order. *See* Gottridge Decl. Ex. 3, ¶ 1.

the Barclays Defendants to discern the source(s) of specific transfers from Fairfield Sentry to the

Barclays Defendants.  Instead, the Complaint broadly alleged that:

> 43.  A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Barclays Spain . . . .  Based on the Trustee's investigation to date, approximately $4,719,252 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Barclays Spain . . . .

> 48.  A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Barclays Suisse . . . .  Based on the Trustee's investigation to date, approximately $37,973,175 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Barclays Suisse . . . .

> 53.  A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Barclays Private Bank . . . .  Based on the Trustee's investigation to date, approximately $893,988 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Barclays Private Bank . . . .

Compl. ¶¶ 43, 48, 53.

The Trustee also alleged that over $752 million of the BLMIS-to-Fairfield Sentry initial

transfers was transferred by Fairfield Sentry to Fairfield Sigma, which then allegedly transferred

approximately $7,704,754 and $16,105,498 to Barclays Suisse and Barclays Spain, respectively.[10]

*Id.* ¶¶ 45, 50 & Exs. F, H.  The Complaint alleged, in general terms:

> 45.  A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Barclays Spain through Fairfield Sigma . . . .  Based on the Trustee's investigation to date, approximately $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield

---

[10] The latter amount was reduced to $13,445,007 by the February 2022 Stipulation and Order.  *See* Gottridge Decl. Ex. 3, ¶ 1.

> Sigma, which in turn transferred the equivalent of approximately
> $16,105,498 to Defendant Barclays Spain . . . .
>
> 50.    A portion of the Fairfield Sentry Initial Transfers was
> subsequently transferred either directly or indirectly to, or for the
> benefit of, Defendant Barclays Suisse through Fairfield Sigma . . . .
> Based on the Trustee's investigation to date, approximately
> $752,273,917 of the money transferred from BLMIS to Fairfield
> Sentry was subsequently transferred by Fairfield Sentry to Fairfield
> Sigma, which in turn transferred the equivalent of approximately
> $7,704,754 to Defendant Barclays Suisse . . . .

*Id.* ¶¶ 45, 50.  The Trustee pleaded nothing to connect these claimed subsequent transfers to the

alleged initial transfers, and alleged no facts regarding the original source(s) of the funds

transferred by Fairfield Sigma to Barclays Spain and Barclays Suisse.  And despite his decade-

long access to the Fairfield Funds' records, Rule 2004 pre-action discovery, and ongoing

"investigation," *id.* ¶¶ 43-46, 48-51, 53, 54, the Trustee never amended his Complaint to supply

any such allegations.

### F.    The Trustee Has Not Alleged That Any Barclays Defendant Had Knowledge of the Madoff/BLMIS Fraud

In his Complaint, the Trustee did not allege that any of the Barclays Defendants had actual

knowledge of the Madoff/BLMIS fraud.

### G.    The Trustee's Other Fairfield Subsequent Transfer Actions—and the $2 Billion in Excess Alleged Subsequent Transfers

As noted, the Trustee has filed 81 Fairfield Subsequent Transfer Actions against defendants

that invested in Fairfield Funds.  *See supra* at 5.  Based on his most recent pleadings, the Trustee

is seeking a total of approximately $3.238 billion in subsequent transfers that defendants allegedly

received directly from Fairfield Sentry.  *See* Gottridge Decl. Ex. 15 & ¶ 29.  Separately, in the

Fairfield Action, the Trustee has alleged that Fairfield Sentry made subsequent transfers to

Fairfield Sigma and Fairfield Lambda in the amounts of approximately $772 million and $52

12

million, respectively, for a total of more than $824 million.[11]  *See* Gottridge Decl. Ex. 16 (Exs. 5

and 6 to Fairfield Second Am. Compl., Fairfield Action, ECF Nos. 286-5, 286-6).  And the Trustee

has also alleged (and is now seeking to recover) in the Fairfield Action yet another $1.139 billion

in subsequent transfers made directly by Fairfield Sentry to certain FGG Defendants.  *See id.* Ex.

9 & ¶ 30.  In all, the Trustee alleges that Fairfield Sentry made approximately $5.201 billion in

subsequent transfers of alleged BLMIS customer property, exceeding by approximately $2 billion

the sum of all the alleged customer property that the Trustee claims BLMIS transferred to Fairfield

Sentry as initial transfers in the six years prior to the Filing Date.  In none of his pleadings has the

Trustee explained, or even acknowledged, this discrepancy.

## ARGUMENT

I.    **THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(e)**

   A.    **Introduction**

   The Trustee's sole cause of action is asserted under Section 550(a), which provides that, to

the extent a transfer is avoided under enumerated Code provisions, "the trustee may recover, for

the benefit of the estate, the property transferred," or its value, from "the initial transferee" or any

subsequent "transferee of such initial transferee."  11 U.S.C. § 550(a)(1), (2).[12]  However, "[t]he

Code sets out a number of limits on the exercise of these avoiding powers," including the securities

safe harbor of Section 546(e).  *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 889

(2018) ("*Merit*").  Section 546(e) exemplifies how, "in enacting the Bankruptcy Code, Congress

---

[11] The Consent Judgments reflect similar amounts—*i.e.*, $752.3 million against Fairfield Sigma and $52.9 million against Fairfield Lambda.  *See supra* at 6.

[12] The Trustee also invokes Section 551, *see* Compl. ¶ 60, but that section of the Code "does not provide for an independent cause of action."  *In re CIL Ltd.*, 582 B.R. 46, 97 (Bankr. S.D.N.Y. 2018), *amended on reconsideration on other grounds*, No. 13-11272, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018).

struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality"—and "[courts] are obliged to respect the balance Congress struck among these complex competing considerations." *In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411, 423 (2d Cir. 2014) ("*Fishman*"). In particular, "by enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)." *Id*. "Unwinding settled securities transactions . . . would seriously undermine—a substantial understatement—markets in which certainty, speed, finality and stability are necessary to attract capital." *See In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 90 (2d Cir. 2019) ("*Tribune I*").

Section 546(e) provides, as relevant here, that "[n]otwithstanding" certain Code provisions granting avoidance powers, "the trustee may not avoid a transfer that is a . . . settlement payment . . . made by or to (or for the benefit of) a . . . stockbroker [or] financial institution, . . . or that is a transfer made by or to (or for the benefit of) a . . . stockbroker [or] financial institution . . . in connection with a securities contract . . . except under section 548(a)(1)(A)." "Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here where the transferee settled with the Trustee, the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against the recovery of those funds." *Fairfield Inv. Fund*, 2021 WL 3477479, at *3; *see also SIPC v. Bernard L. Madoff Inv. Secs. LLC*, No. 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

As explained below, Section 546(e) bars the Trustee's claims against the Barclays Defendants because the alleged initial transfers purportedly underpinning those claims fall squarely within the statutory safe harbor. Section 546(e) shields from avoidance *covered*

14

*transactions—i.e.*, transfers "in connection with a securities contract" or "settlement payments"—
that were made by, to, or for the benefit of a *covered entity*, such as a stockbroker or financial
institution.  The initial transfers at issue here are covered transactions in two ways:  they are *both*
transfers "in connection with a securities contract" *and* "settlement payments," although either
would suffice (and for good measure, the transfers qualify not only in relation to the BLMIS-
Fairfield Sentry customer agreements but also separately to Fairfield Sentry's Articles of
Association).  The alleged initial transfers at issue, moreover, involved *several* covered entities—
they were made by a "stockbroker" to a "financial institution" and for the benefit of three other
"financial institutions"—even though Section 546(e) only requires the involvement of one.

Accordingly, Section 546(e) shields the alleged BLMIS-to-Fairfield Sentry initial transfers
from avoidance as a matter of law, and the Trustee cannot recover from the Barclays Defendants
as alleged subsequent transferees.  The "application of Section 546(e) presents a straightforward
question of statutory interpretation of the type that is appropriately resolved on the pleadings."
*Fairfield III*, 2020 WL 7345988, at *5 (quoting *In re Tribune Co. Fraudulent Conveyance Litig.*,
No. 12-cv-2652 (DLC), 2019 WL 1771786, at *7 (S.D.N.Y. Apr. 23, 2019), *aff'd*, 10 F.4th 147,
175–77 (2d Cir. 2021) ("*Tribune II*"), *cert. denied sub nom. Kirschner v. FitzSimons*, No. 21-1006,
2022 WL 516021 (U.S. Feb. 22, 2022)).  Courts do not hesitate to dismiss, under Rule 12(b)(6),
claims that are barred by Section 546(e).[13]  The Complaint here should likewise be dismissed.[14]

---

[13] *See, e.g., Fishman*, 773 F.3d at 414 (affirming dismissal); *In re SunEdison, Inc.*, 620
B.R. 505 (Bankr. S.D.N.Y. 2020) (granting Rule 12(b)(6) motion); *Fairfield III*, 2020 WL
7345988, at *5–9 (same), *app. pending* (S.D.N.Y. No. 1:19-cv-03911-VSB); *AP Servs., LLP v.
Silva*, 483 B.R. 63 (S.D.N.Y. 2012) (same).

[14] Section 546(e) on its face contains just one exception—*i.e.*, for avoidance under 11
U.S.C. § 548(a)(1)(A).  As explained in Point I.E *infra*, the Trustee's attempt to plead the
avoidability of a portion of the alleged initial transfers under that provision fails.  But even if the
Court sustained the Trustee's attempt to plead Section 548(a)(1)(A) claims in full, the only claims

### B.    The Alleged Initial Transfers Are Covered by Section 546(e)

Section 546(e) shields the alleged initial transfers from BLMIS to Fairfield Sentry from avoidance on two separate grounds, each of which was definitively settled by the Second Circuit in *Fishman*. *First*, these transfers were made "in connection with securities contracts"—*i.e.*, the BLMIS–Fairfield Sentry account agreements. *Second*, they were "settlement payments" made by BLMIS in response to Fairfield Sentry's requests for withdrawals under those agreements. The Complaint, moreover, discloses an additional way in which those alleged initial transfers were made "in connection with a securities contract": they were also made "in connection" with the Fairfield Sentry Articles of Association, which is a separate "securities contract" (in addition to the transfer being "in connection" with the BLMIS-Fairfield Sentry securities contracts).[15]

### 1.    The Fairfield Sentry Initial Transfers Were Made in Connection With the BLMIS-Fairfield Sentry Account Agreements, Which Are "Securities Contracts"

In *Fishman*, the Second Circuit held that BLMIS's account agreements with customers "satisfy the broad definition of 'securities contracts'" in 11 U.S.C. § 741(7)(A), which applies to Section 546(e). *Fishman*, 773 F.3d at 418. The court easily dispatched a series of arguments made by the Trustee, "none" of which it found "persuasive." *Id.* at 419; *see also id.* at 419–21. The *Fishman* court then had "little difficulty concluding that the payments BLMIS made to its customers were made 'in connection with' the securities contracts identified above." *Id.* at 421.

---

that would survive application of Section 546(e) would be those based on BLMIS-to-Fairfield Sentry transfers made within two years prior to the Filing Date. *See* 11 U.S.C. § 548(a)(1) (limiting a trustee's avoidance powers to transfers made or obligations incurred "on or within 2 years before the date of the filing of the petition"). Claims based on earlier alleged initial transfers would still have to be dismissed under Rule 12(b)(6).

[15] "[A] transfer can be connected to, and be made in relation to, multiple documents or purposes simultaneously." *Fishman*, 773 F.3d at 422.

The Trustee has pleaded that Fairfield Sentry "maintained customer accounts with BLMIS," Compl. ¶ 36; *see also* Gottridge Decl. Ex. 4 (Fairfield Am. Compl.) ¶ 33 (listing such accounts), and entered into account agreements with BLMIS, *id*. ¶ 33 & Ex. 1. Just as in *Fishman*, those agreements are "securities contracts," and the BLMIS-to-Fairfield Sentry transfers were made "in connection with" those contracts.

### 2.    The Fairfield Sentry Initial Transfers Were "Settlement Payments"

Although *Fishman*'s holding that BLMIS-to-customer payments are transfers "in connection with securities contracts" suffices to "shield the transfers from avoidance," the Second Circuit identified in Section 546(e) yet "another basis" for protecting those transfers. *Fishman*, 773 F.3d at 421. Such transfers also constitute "settlement payments" under Section 546(e). *Id*. at 421–22. Rejecting the Trustee's argument to the contrary, the Second Circuit held in *Fishman* that "each transfer in respect of" a customer's order or request to withdraw funds from BLMIS "constituted a settlement payment." *Id*. at 422.

Here, the Trustee has alleged that Fairfield Sentry received approximately $3 billion in respect of such withdrawal orders or requests. *See* Compl. ¶¶ 37–42; *see also* Gottridge Decl. Ex. 4 (Fairfield Am. Compl.), ¶ 33 & Ex. 2. Precisely as in *Fishman*, it is beyond cavil that those are all "settlement payments" for Section 546(e) purposes.

### 3.    The Fairfield Sentry Initial Transfers Were Made in Connection with the Fairfield Sentry Articles of Association, Which Is a Separate "Securities Contract"

The Trustee alleges in this action that "portion[s] of the Fairfield Sentry Initial Transfers w[ere] subsequently transferred, either directly or indirectly to, or for the benefit of" the Barclays Defendants. Compl. ¶¶ 43, 45, 48, 50, 53. The Trustee's theory is that the alleged initial transfers from BLMIS to Fairfield Sentry were made, in part, for the purpose of funding the Barclays

17

Defendants' redemption requests.[16]  Those redemption requests, and the resulting payments which the Trustee now seeks to recover in this action, were—as the UK Privy Council has held—governed by Fairfield Sentry's Articles of Association.  *See* Gottridge Decl. Ex. 17 (*Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, ¶ 10 (holding that "the terms of the subscriber's membership in the Fund, which govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund")); *see also Fairfield I*, 2018 WL 3756343, at *11 (explaining that the Privy Council "concluded that the terms of the redemption of shares were found in the Articles").

It follows that the Fairfield Sentry Articles of Association is a "securities contract" for Section 546(e) purposes.[17]  The definition of "securities contract" in 11 U.S.C. § 741(7) is "broad." *Fishman*, 773 F.3d at 419.  It not only includes "a contract for the purchase, sale, or loan of a security," 11 U.S.C. § 741(7)(A)(i), but also "any other agreement or transaction that is similar to" such a contract, *id.* § 741(7)(A)(vii).  *See Fishman*, 773 F.3d at 419 (noting that Congress intended to "sweep broadly" and that "[f]ew words in the English language are as expansive as 'any' and

---

[16] The Barclays Defendants deny that they are subsequent transferees of customer property, and indeed demonstrate in Point III, *infra*, that the Trustee's allegations in support of this theory are implausible and should be dismissed for that reason.  Regardless, the Trustee's allegations are admissions that can be used to establish, on this motion, that his claims fail to state a claim upon which relief can be granted.  *See, e.g.*, *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("[T]he allegations in the Second Amended Complaint are 'judicial admission[s]' by which [the plaintiff] was 'bound throughout the course of the proceeding.'" (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (affirming dismissal of claim because plaintiff was bound by assertion of facts in its complaint))); *cf. Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleadings filed by defendant in other actions and holding that those pleadings, taken together with plaintiffs' other allegations, "alleged sufficient facts" to support plaintiffs' claim).

[17] The Fairfield Sentry Articles of Association (Gottridge Decl. Ex. 11) may be considered on this motion because, as the document governing the challenged redemptions, it is integral to the Complaint.  *See, e.g., Tribune II*, 10 F.4th at 176.

'similar'"). A contract providing for redemptions of securities, such as the Fairfield Sentry Articles of Association, surely qualifies. *See Cohmad*, 2013 WL 1609154, at *8 (noting that the definition of "securities contract" is broad and "includes, *inter alia*, investment fund subscription agreements and *redemption requests*" (emphasis added)); *Tribune I*, 946 F.3d at 80 ("The term 'redemption,' in the securities context, means 'repurchase.'").[18] The law, moreover, does not require "that the securities contract that the transfer is made 'in connection with' must be a securities contract with the debtor." *Cohmad*, 2013 WL 1609154, at *9.

"Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided." *Fishman*, 773 F.3d at 422. The initial transfers, as alleged in the Trustee's pleadings, easily clear that bar, as he asserts that Fairfield Sentry withdrew those funds from BLMIS in order to fund its contractual obligations to alleged subsequent transferees making redemption requests—including the Barclays Defendants. *See, e.g.*, Gottridge Decl. Ex. 4 (Fairfield Am. Compl.) ¶ 53 ("[I]n order to pay these redemptions [to Sigma], Fairfield Sentry withdrew funds from its BLMIS accounts."). As pleaded by the Trustee (*see supra* at 18 n.16), such withdrawals from BLMIS are transfers "in connection with" the securities contract between the alleged initial and subsequent transferees. Judge Rakoff described this very situation in *Cohmad*:

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its [BLMIS] customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on

---

[18] In the Fairfield Liquidators' BVI-law clawback actions, the Liquidators did not dispute, as Judge Bernstein concluded, that redemptions made pursuant to the Articles of Association "were Covered Transactions [under Section 546(e) because they were settlement payments made in connection with securities contracts." *Fairfield II*, 596 B.R. at 314.

the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a . . . financial institution [or] financial participant . . . in connection with a securities contract."

2013 WL 1609154, at *9 (footnote omitted); *see also In re Boston Generating LLC (Holliday v. K Rd. Power Mgt., LLC)*, 617 B.R. 442, 487 (Bankr. S.D.N.Y. 2020) (initial transfers that "funded" redemptions of securities "were made in connection with a securities contract"). In *Cohmad*, Judge Rakoff further explained that "[t]o the extent that, for example, an initial transfer from [BLMIS] to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron* [*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements." *Cohmad*, 2013 WL 1609154, at *9 n.5.

In sum, multiple paths lead to one conclusion: the Trustee's own pleadings establish that the alleged Fairfield Sentry Initial Transfers were covered by Section 546(e).

### C.    The Alleged Initial Transfers Were Made by, to, and for the Benefit of Entities Covered by Section 546(e)

The Trustee's pleadings also amply satisfy Section 546(e)'s "covered entity" requirement—*i.e.*, that *either* the debtor that made the alleged initial transfer was an entity covered by Section 546(e) *or* the debtor made the transfer "to (or for the benefit of)" a covered entity. Although the statute requires the involvement of only one "covered entity," here the requirement is satisfied in *three* ways—the alleged initial transfer was made (i) by BLMIS, a stockbroker; (ii) to Fairfield Sentry, a financial institution; and (iii) for the benefit of the Barclays Defendants, each a financial institution.

20

### 1.    The Alleged Initial Transfers Were Made by a Stockbroker

The Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities."  11 U.S.C. § 101(53A)(B).  It is far too late for the Trustee to deny that BLMIS falls within this definition.  Judge Rakoff rejected that argument a decade ago in *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012), *aff'd sub nom. Fishman*, explaining that BLMIS "was registered as a stockbroker with the SEC" and "clearly engaged in securities transactions."  *Id.* at 719.  On appeal, the Trustee did not dispute "that BLMIS was a 'stockbroker' for the purposes of § 546(e)."  *Fishman*, 773 F.3d at 417.

The Court can end its "covered entity" analysis here.  The fact that the alleged initial transfer was made by a stockbroker satisfies that requirement.  But, as set forth in the following two sections, there are additional and independently sufficient routes to the same conclusion.

### 2.    The Alleged Initial Transfers Were Made to a Financial Institution

The alleged initial transferee Fairfield Sentry fits well within the relevant definition of a "financial institution," and is therefore an entity covered by Section 546(e).  The Code defines "financial institution" to include not only "an entity that is a commercial or savings bank," or a "trust company," but also the *customer* of a bank "when [the bank] is acting as agent or custodian for a customer . . . in connection with a securities contract."  11 U.S.C. § 101(22)(A) (emphasis added).  *See Tribune I*, 946 F.3d at 78–79 (for purposes of Section 101(22)(A), "customer" must be given its ordinary meaning, including "someone who buys goods or services" and "a person . . . for whom a bank has agreed to collect items") (citations omitted).  In *Fairfield* III, Judge Bernstein held that Fairfield Sentry and Fairfield Sigma were "financial institutions" because they were customers of Citco Bank Nederland N.V. Dublin Branch ("Citco Bank") (which was a "bank,"  because  it was regulated as such by the Central Bank of the Netherlands and registered

as such with the Central Bank of Ireland, *Fairfield III*, 2020 WL 7345988, at *6 & n.11),[19] and

that Citco Bank acted as the Fairfield Funds' agent in connection with the securities contracts

pursuant to which the redemption payments were made. *Id.* at *7.

   The *Fairfield III* holding applies with equal force here. The Trustee alleges that the

Fairfield Sentry Initial Transfers were made from BLMIS accounts entitled "Citco Global Custody

N.V. FBO Fairfield Sentry Ltd." (account numbers 1FN012 and 1FN045). Compl. Ex. B. In the

extraterritoriality proffer filed in this action in 2015, ECF No. 82, the Trustee acknowledged Citco

Global Custody N.V.'s service as custodian for Fairfield Sentry and the related opening of bank

accounts by Fairfield Sentry at Citco Bank, and alleged that FGG personnel "had final control of

the Fairfield Sentry bank accounts and controlled all of Fairfield Sentry's relationships with the

various Citco entities" and "controlled and approved all subscriptions into and redemptions from

the fund." *Id.* ¶¶ 39, 41. These allegations confirm that, as this Court held in *Fairfield III*, Citco

Bank (a "financial institution") was Fairfield Sentry's agent in connection with the redemptions at

issue, such that Fairfield Sentry itself is a "financial institution" within the meaning of Section

---

[19] *See* De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTDG&relationNumber=B0275 (last visited Feb. 25, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited Feb. 25, 2022) (classifying Citco Bank as a "credit institution … whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account"). As in *Fairfield III*, the Court can and should take judicial notice of information from such public registries. 2020 WL 7345988, at *6; *see also supra* at 4 n.2.

546(e).  That holding is binding on the Trustee, because he is in privity with the Fairfield

Liquidators.[20]

### 3. The Alleged Initial Transfers Were Allegedly Made for the Benefit of Financial Institutions

The Trustee's allegations establish yet a third, separate way in which Section 546(e)'s

"covered entity" requirement is fulfilled:  he has pleaded, *in haec verba*, that the alleged initial

transfers were made "for the benefit of" three "financial institutions"—*i.e.*, the three Barclays

Defendants.  The Complaint repeatedly pleads that "[a] portion of the Fairfield Sentry Initial

Transfers was subsequently transferred either directly or indirectly to, or *for the benefit of*" each

Barclays Defendant.  Compl. ¶¶ 43, 45, 48, 50, 53 (emphasis added).  Although that allegation is

insufficient to survive this motion (*see infra* Point III), it nevertheless is binding on the Trustee.

*See supra* at 18 n.16.

Each Barclays Defendant is indisputably a "financial institution" within the Code

definition, which includes a "commercial or savings bank" or "trust company."  11 U.S.C. §

---

[20] In the Fairfield Settlement Agreement, the Trustee and the Fairfield Liquidators agreed to share recoveries on their respective "clawback" claims, including those brought against the Barclays Defendants; the Fairfield Liquidators must pay the Trustee 15 percent of their net recoveries from all such claims until the Trustee has been paid $1.924 billion.  Gottridge Decl. Ex. 6 (Fairfield Settlement Agreement) ¶¶ 4, 14.  Moreover, they "agree[d] and stipulate[d] that a joint interest exists between them with respect to the Sharing Claims." *Id*. ¶¶ 4, 7, 14.  That joint interest in any such recovered BLMIS customer property constitutes a "pre-existing 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of the kind that gives rise to non-party issue preclusion.  *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).  Because the Trustee and the Liquidators are in privity with respect to actions to recover alleged BLMIS customer property, such as those at issue in *Fairfield III*, and because the issue of Fairfield Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing many such actions—including those against the Barclays Defendants—based on application of Section 546(e), the *Fairfield III* finding that Fairfield Sentry was a "financial institution" in connection with redemption payments to its investors binds the Trustee.  *See New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) (stating requirements for issue preclusion).

101(22)(A).  The Trustee has alleged that "Barclays Suisse is a Swiss *société anonyme* operating as a private bank," "Barclays Spain is a Spanish *sociedad anónima* operating as a bank," and "Barclays Private Bank is a Jersey registered private company operating as a private bank." Compl. ¶¶ 22–24.  And judicially noticeable public registry information confirms that, during the relevant period, Barclays Suisse and Barclays Spain were indeed "banks" and Barclays Private Bank was both a "bank" and a "trust company."  *See* Gottridge Decl. Exs. 18–26 & ¶¶ 20–28.[21] Thus, the Barclays Defendants—for whose benefit, the Trustee has pleaded, the alleged initial transfers were made—were all "financial institutions."

In sum, as with Section 546(e)'s "covered transaction" requirement, the Trustee's own pleadings provide three independent bases (any one of which suffices) upon which the "covered entity" requirement is satisfied.  The alleged initial transfers are therefore shielded from the Trustee's reach by the statutory safe harbor, and his claims in this action should be dismissed.

### D.    The Trustee Has Not Alleged that Any of the Barclays Defendants Had Actual Knowledge of the Madoff/BLMIS Fraud

The Trustee has not alleged that any Barclays Defendant had actual knowledge of the Madoff/BLMIS fraud.  *See supra* at 12.  That renders irrelevant to this adversary proceeding the only possible ground upon which the Section 546(e) safe harbor could be rendered inapplicable— *i.e.*, the judicially created rule that a subsequent transferee "who had actual knowledge of Madoff Securities' fraud . . . cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor."  *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (quoting *Cohmad*, 2013 WL 1609154, at *7).  Whatever effect that rule might have in other adversary proceedings where (unlike here) the

---

[21] Courts take judicial notice of such records, including for purposes of determining whether entities are covered under Section 546(e).  *See Tribune I*, 946 F.3d at 80; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005); *Fairfield III*, 2020 WL 7345988, at *6.

Trustee has pleaded such "actual knowledge," it poses no impediment to granting the Barclays

Defendants' motion to dismiss in this action.

Although Section 546(e) does not contain such an exception, the court in *Cohmad*

concluded that "if the Trustee sufficiently alleges that the transferee from whom he seeks to

recover a fraudulent transfer knew of [BLMIS's] fraud, that transferee cannot claim the protection

of Section 546(e)'s safe harbor." 2013 WL 1609154, at *7. The rationale for that holding was

based on the purpose of the statutory safe harbor—*i.e.*, assuring the finality of settlements of

securities transactions and minimizing the securities market disruption caused by bankruptcy

proceedings. *See supra* at 14. As Judge Rakoff noted in *Cohmad*, that purpose is "achieved by

protecting the reasonable expectations of investors who believed they were signing a securities

contract," but not by shielding the transactions of "a transferee who had actual knowledge of the

Madoff 'Ponzi' scheme [and therefore] did not have any such expectations." 2013 WL 1609154,

at *4. Here, the supposed transferees "from whom [the Trustee] seeks to recover"—the Barclays

Defendants—are not alleged to have had such actual knowledge. Section 546(e)'s purpose is

therefore "achieved by protecting" their "reasonable expectations" and dismissing the Trustee's

claims. For the same reason, there is no risk here of the Barclays Defendants "launder[ing] what

[they] know[] to be fraudulently transferred funds through a nominal third party and still

obtain[ing] the protections of § 546(e)." *Fairfield Inv. Fund*, 2021 WL 3477479, at *4.

It is immaterial to this analysis that in *Fairfield Investment Fund*, this Court held that, in a

pleading which superseded the Fairfield Amended Complaint, the Trustee sufficiently alleged

actual knowledge on the part of Fairfield Sentry, the ***initial*** transferee. *See id*. at *4. Fairfield

Sentry's knowledge cannot be imputed to the Barclays Defendants, which dealt with Fairfield

Sentry at arm's length; the Trustee does not even advance any such theory. The sole question is

25

whether the Trustee has pleaded facts that, if proved, would establish the ***Barclays Defendants'*** actual knowledge of the Madoff/BLMIS fraud.  In *Fairfield Investment Fund*, this Court carefully differentiated five alleged subsequent transferees against whom the Trustee had sufficiently pleaded such facts from one alleged subsequent transferee against whom "the Trustee has failed to plead individualized factual allegations demonstrating . . . independent actual knowledge of the BLMIS fraud."  2021 WL 3477479, at *6; *see also id.* at *15 (dismissing the individual claims against the latter defendant).  *A fortiori*, the Barclays Defendants, against which the Trustee does not even attempt to plead actual knowledge, are entitled to rely on Section 546(e).

The Barclays Defendants' position, moreover, is significantly stronger than that of all defendants in *Fairfield Investment Fund*.  The "securities contract[s]" that the Barclays Defendants "signed," *Cohmad*, 2013 WL 1609154, at *3—and which they have every reasonable expectation Section 546(e) will protect—were not BLMIS-Fairfield Sentry customer agreements, but rather separate contracts between the Barclays Defendants and the Fairfield Funds.  The *Cohmad* court recognized that Section 546(e) applies where, as the Trustee has pleaded here, the initial transferee allegedly withdrew funds from BLMIS in order to pay financial institutions to redeem (*i.e.*, repurchase) their shares, pursuant to a separate securities contract between the initial and alleged subsequent transferees—here, the Fairfield Sentry Articles of Association.  *See supra* at 18–20.  Because the Barclays Defendants "claim[] protection under Section 546(e) under [such] a separate securities contract as a . . . financial institution," *Cohmad*, 2013 WL 1609154, at *10, they are not barred from relying on Section 546(e) absent allegations of ***their*** actual knowledge of the fraud.

Because the Trustee has made no such allegation, the Barclays Defendants are entitled in full to the protection that Section 546(e) affords. [22]

### E.    The Section 546(e) Safe Harbor Shields All of the Alleged Initial Transfers

#### 1.    The Trustee Has Failed to Allege Actual Fraudulent Intent as Required by Section 548(a)(1)(A) and Rule 9(b)

The sole statutory exception to the Section 546(e) safe harbor is for transfers avoidable under Section 548(a)(1)(A), which has a two-year lookback period. "[W]here § 546(e) applies to the Trustee's claims, the Trustee may only proceed insofar as he seeks to recover those subsequent transfers under § 550(a) as to which he could have avoided the initial transfer under § 548(a)(1)(A)." *Fairfield Inv. Fund*, 2021 WL 3477479, at *4. The Trustee, however, has failed to plead the avoidability of any initial transfers under Section 548(a)(1)(A), and cannot salvage *any* part of his claims from the Section 546(e) bar.

Section 548(a)(1)(A) requires the Trustee to plead that BLMIS "made" each "transfer" challenged under that provision "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became" indebted "on or after the date that such transfer was made." Because "'actual intent to hinder, delay or defraud' constitutes fraud, it must be pled with specificity, as required by Fed. R. Civ. P. 9(b)." *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted); *see also Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444,

---

[22] Because the exception created in *Cohmad* to the reach of Section 546(e) is inapplicable to this adversary proceeding, there is no need for the Court to consider whether it is a correct statutory interpretation. In the event of an appeal, the Barclays Defendants preserve the argument that the text of Section 546(e) does not permit courts to craft such a carve-out based on a transferee's alleged knowledge. *See, e.g., Merit*, 138 S. Ct. at 897 (emphasizing adherence to "the plain meaning of the language used in § 546(e)" in interpreting the provision); *Fishman*, 773 F.3d at 423 (courts are "obliged to respect the balance Congress struck" "between the need for an equitable result for the debtor and its creditors, and the need for finality").

459–60 (Bankr. S.D.N.Y. 2006).[23]   Under Rule 9(b), "conclusory allegations that do not evidence fraudulent intent with respect to the specific transfers challenged do not suffice," even if "combined with . . . allegations [about] an alleged overall pattern of inappropriate transfers." *Id.* at 468 (internal quotation marks omitted).

The Complaint is devoid of any allegations which, if proved, would establish that in making any of the alleged "Fairfield Sentry Two Year Initial Transfers," BLMIS acted with the requisite intent to "hinder, delay or defraud" creditors, as opposed to merely honoring its contractual commitments to Fairfield Sentry.[24]   The Trustee has, in fact, pleaded nothing at all about BLMIS's intent in making any (much less each) of the "specific transfers challenged" here. *Id.*   The Trustee has therefore failed to plead avoidability based on actual intent to defraud at all, let alone with the particularity Rule 9(b) requires.

## 2.    The Trustee Should Not Be Allowed to Rely on the Ponzi Scheme Presumption to Avoid His Pleading Burden

Rather than actually pleading facts establishing the fraudulent intent behind each initial transfer, as required by Section 548(a)(1)(A), the Trustee apparently relies upon the presumption "that transfers from a debtor in furtherance of a Ponzi scheme are made with fraudulent intent rather than to satisfy an antecedent debt." *Picard v. Citibank (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171, 201 (2d Cir. 2021) (Menashi, J., concurring) ("*Citibank*"). Although the Ponzi scheme presumption has repeatedly been accepted by this Court and the District Court in actions

---

[23] Rule 9(b) is made applicable to adversary proceedings by Fed. R. Bankr. P. 7009.

[24] For example. transfers intended to return capital to Fairfield Sentry or to satisfy an antecedent debt to it would not have been with the "actual intent to hinder, delay or defraud" creditors. 11 U.S.C. § 548(a)(1)(A).  Merely alleging that BLMIS paid money to Fairfield Sentry therefore is insufficient to establish an actually fraudulent transfer.

commenced by the Trustee, Judge Menashi's recent thoughtful concurring opinion in *Citibank* made clear that the issue is not settled at the Circuit level,[25] and explained that there are several cogent reasons why the Ponzi scheme presumption represents a "questionable" application of fraudulent transfer statutes. *Id*. at 202.

*First*, Section 548(a)(1)(A) does not even mention Ponzi schemes, much less authorize courts to relax the Trustee's pleading burden in such cases. *Second*, fraudulent transfer cases warrant an "asset-by-asset and transfer-by-transfer" inquiry—one that requires proof of "the elements of a fraudulent transfer with respect to each transfer, rather than relying on a presumption related to the form or structure of the entity making the transfer"—because the statutory focus is "on individual transfers, rather than a pattern of transactions that are part of a greater 'scheme.'" *Finn v. Alliance Bank*, 860 N.W.2d 638, 647 (Minn. 2015) (construing Minnesota UFTA provision that is virtually identical to Section 548(a)(1)(A)); *see also Citibank*, 12 F.4th at 201 (Menashi, J., concurring). *Third*, the Ponzi scheme presumption is based on the hypothesis that *whenever* a Ponzi scheme operator "makes payments to present investors," it does so for the purpose of "attract[ing] new investors," *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987) (en banc), but that premise may not hold, especially in the later stages of a long-running scheme like Madoff's, which began in the late 1980s or early 1990s, *see Picard v.*

---

[25] Although the Second Circuit has on occasion applied the presumption "when its application was uncontested," *Citibank*, 12 F.4th at 202 n.7 (Menashi, J., concurring), it has not sanctioned use of the presumption in any case where the issue was litigated. Nor has the Supreme Court recognized the presumption. Although the Trustee may argue that the "Ponzi scheme presumption" is the "law of the case" because it has been applied in other adversary proceedings within the BLMIS liquidation, the "law of the case" doctrine does not create an absolute bar to reconsideration of the issue—particularly now that a Second Circuit judge has, for the first time, trenchantly questioned the viability of the "presumption." *See generally Arizona v. California*, 460 U.S. 605, 618 (1983) ("law of the case is an amorphous concept" which "does not limit the tribunal's power").

29

*Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 603 B.R. 682, 691 (Bankr. S.D.N.Y. 2019). *Fourth*, the Ponzi scheme presumption, as Judge Menashi explained, has been rejected by courts "on the ground that it improperly treats preferences as fraudulent transfers," *Citibank*, 12 F.4th at 201, thereby "obscur[ing] the essential distinction between fraudulent transfers and preferences," *id*. at 202; *see also Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.*, 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001) ("*Unified*"). *Finally*, the Ponzi scheme presumption conflicts with Rule 9(b), which requires particularity in pleading how each transfer was made with actual intent to defraud. *See, e.g.*, *Sharp*, 403 F.3d at 56. If such exceptions are to be created, Congress—not the courts—should create them. *See Unified*, 260 B.R. at 350 (cited approvingly in *Citibank*, 12 F.4th at 202 (Menashi, J., concurring)).

Without the Ponzi scheme presumption, the Complaint alleges nothing whatsoever about BLMIS's intent in making specific "Two-Year Fairfield Initial Transfers"—and certainly not that they were made with the requisite actual fraudulent intent. The Trustee has not adequately pleaded such intent, and his Section 548(a)(1)(A) claims must fail.

## II. THE TRUSTEE HAS FAILED TO PLEAD THE AVOIDABILITY OF THE ALLEGED INITIAL TRANSFERS AND HIS ATTEMPTED WHOLESALE INCORPORATION OF THE FAIRFIELD AMENDED COMPLAINT IS IMPROPER

To plead a subsequent transfer claim under Section 550(a)(2), the Trustee must allege "that the initial transfer is avoidable." *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (citation omitted). The Complaint fails to do so with respect to any of the alleged initial BLMIS-to-Fairfield Sentry transfers, instead relying on conclusory statements that all such transfers in a six-year period are avoidable, without alleging any supporting facts. *See* Compl. ¶¶ 38–41. That is insufficient, because a claim only "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The Trustee's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

The Trustee has attempted to fill the massive void at the heart of his Complaint by "incorporat[ing] by reference" the entirety of his 217-page (plus 111 exhibits), 798-paragraph Fairfield Amended Complaint. Compl. ¶ 37. But the Federal Rules do not authorize that pleading stratagem. Although "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading," Fed. R. Civ. P. 10(c), a pleader may not indiscriminately adopt whole pleadings from a different action. *See NCUA Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (striking defense where defendant attempted to "incorporate the affirmative defenses in answers filed by defendants *in other actions* into its answer" (emphasis in original)); *David v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (striking attempt "to incorporate by reference wholesale the allegations in a complaint in a completely separate action"). Courts police the line drawn by Rule 10(c), which authorizes only adopting particular "statement[s] in a pleading," not an entire pleading. *See, e.g.*, *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) ("A "Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite guidance to the responding party." (internal quotation marks omitted)).[26]

---

[26] *See also Muhammad v. Bethel-Muhammad*, No. 11-0690-WS-B, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012) (condemning "sweeping reference to . . . 100-page complaint"); *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995) (pleading "must specifically identify which portions of the prior pleadings are adopted").

The Trustee's blunderbuss attempt to incorporate the entire Fairfield Amended Complaint violates Rule 8(a)(2), which requires a complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2) serves two important purposes— "to give the adverse party fair notice of the claim asserted so as to enable [it] to answer and prepare for trial" and to avoid "[u]nnecessary prolixity in a pleading [that] places an unjustified burden on the court and the party who must respond to it because they are forced to select the material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal citations and quotations omitted). In *United States v. International Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007), Judge Glasser rejected the attempted incorporation, in a civil RICO complaint, of pleadings from several previous proceedings, holding that the complaint "must be dismissed for failure to comply with Rule 8(a)." *Id.* at 467. The court explained that "[t]he Government's failure to specifically identify which portions of the hundreds of pages of exhibits it intends to incorporate by reference into the Amended Complaint makes it impossible for the Court or the defendants to ascertain the nature and extent of the incorporation," *id.* at 462, and that wholesale incorporation of prior pleadings was "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim,'" *id.* at 463.

The same is true here. Apart from its sheer length, the "incorporated" Fairfield Amended Complaint is brimming with allegations and claims that are asserted against parties other than Fairfield Sentry and Fairfield Sigma and are extraneous to the issues in this case, which was commenced with an 18-page, 60-paragraph single-count Complaint.[27] Moreover, the Fairfield

---

[27] If the Court were to deny the motion to dismiss and uphold the Trustee's pleading tactic, the Barclays Defendants might have to respond, paragraph-by-paragraph, to the allegations in the Fairfield Amended Complaint as well as those in the Complaint in this adversary proceeding. In *International Longshoremen's Ass'n*, the court explained that defendants should not be put to the burden of "decipher[ing] the basic elements of the Government's claim in this action" from

Amended Complaint has itself been superseded by a further amended pleading. *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (granting motion to dismiss; "wholesale incorporations . . . that seek to incorporate superseded versions of a complaint, must be examined with special care"). The Trustee has had a decade in which to amend the Complaint, yet has not remedied his improper incorporation. The Complaint fails to provide fair notice of the facts upon which the Trustee relies to establish an essential element of his claims: the avoidability of the alleged initial transfers. The Complaint should now be dismissed.

## III. THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD THAT THE BARCLAYS DEFENDANTS ARE SUBSEQUENT TRANSFEREES OF CUSTOMER PROPERTY

### A. The Trustee's Own Pleadings Establish the Implausibility of His Conclusory Allegations

#### 1. The Trustee Has Failed to Carry His Pleading Burden

To state a claim against an alleged subsequent transferee, the Trustee must "allege facts that support the inference that the funds at issue originated with the [*sic*] BLMIS, and contain the 'necessary vital statistics'—the 'who, when and how much' of the transfers to establish that an entity was a subsequent transferee of the funds." *Shapiro*, 542 B.R. at 119 (citation omitted). While the Trustee may not be "required to provide a 'dollar-for-dollar accounting' of the exact funds at issue," "barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient." *Id.* Thus, in *Shapiro*, Judge Bernstein dismissed subsequent transfer claims because the complaint failed to "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Id.*; *accord In re Caremerica, Inc.*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009) (dismissing preference claim where trustee alleged transfers into

___

"incorporated" material, and "rejected" that maneuver as inconsistent with Rule 8(a)(2). 518 F. Supp. 2d at 464.

and out of an account and the amounts received by alleged transferees, but pleaded nothing to tie the funds together).

As discussed in Point II, *supra*, a complaint "must give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin*, 861 F.2d at 42; *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). "In determining whether a transfer is adequately identified, a good test 'is to ask whether the defendant could respond to [the claim for relief] with an appropriate affirmative defense.'" *State Bank & Tr. Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 293 (Bankr. S.D. Ohio 2007) (citation omitted).

The Complaint fails these basic requirements. The Trustee has attached to the Complaint exhibits listing purported BLMIS-to-Fairfield Sentry initial transfers and payments from Fairfield Sentry and Sigma to the Barclays Defendants, but nothing in the Complaint or its exhibits "tie[s] any initial transfer to any subsequent transfer or Subsequent Transferee." *Shapiro*, 542 B.R. at 119. The Trustee's allegation that "money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to" each of the Barclays Defendants, Compl. ¶¶ 43, 45, 48, 50, 53, is purely conclusory and insufficient under the standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Iqbal*. *See supra* at 31–32. As a result, the Trustee has failed to give the Barclays Defendants fair notice of his claim, so that they cannot properly answer the Complaint, prepare affirmative defenses, or prepare for discovery and trial.

**2.      It Is Implausible that Alleged Initial Transfers to Fairfield Sentry of $3 Billion Resulted in Alleged Subsequent Transfers of $5 Billion**

Instead of alleging "enough facts to state a claim that is plausible on its face," *Twombly*, 550 U.S. at 570, the Trustee has filed pleadings that render his subsequent transfer claim *implausible* under basic principles of arithmetic: BLMIS's alleged initial transfers of *approximately $3 billion to Fairfield Sentry* cannot have produced *over $5 billion* in subsequent

transfers *from Fairfield Sentry*, as the Trustee contends—*i.e.*, the sum of: (a) $3.238 billion paid by Fairfield Sentry directly to defendants in the Fairfield Subsequent Transfer Actions; (b) $824 million in alleged Fairfield Sentry payments to Fairfield Sigma and Fairfield Lambda; and (c) $1.139 billion which the Trustee seeks from FGG Defendants. *See supra at* 12–13.

The Trustee's pleadings hint at (but fail to forthrightly acknowledge) the obvious—that transfers from BLMIS were not the exclusive source of funds that Fairfield Sentry could use to satisfy redemption requests and make other payments. The alleged subsequent transferees subscribed for Fairfield Sentry shares over many years and therefore "wired funds to Fairfield Sentry." *See, e.g.*, Compl. ¶ 6.  In a related proceeding in this Court, Fairfield Sentry confirmed that it paid redeeming investors with funds that originated from subscribing investors, not from BLMIS.  *See Fairfield Sentry Ltd. v. Citco Global Custody NV*, Adv. Pro. 19-01122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 19, ¶ 6 ("From time to time, to make Redemption Payments, Sentry (and Sigma and Lambda through Sentry) made withdrawals from Sentry's BLMIS accounts (or utilized subscription monies of  other investors on hand that were directed for investment in BLMIS)").  The Trustee has stubbornly failed to recognize this fact, instead choosing to avoid pleading how (and to what extent) any alleged subsequent transfers are linked to funds originating with BLMIS, rather than from other sources.  The implausibility of the premise underlying his inadequate, conclusory pleading—that every cent paid by Fairfield Sentry to redeeming investors constituted BLMIS customer property—is further reason to dismiss the Complaint.

   **3.    It Is Implausible that Funds Received by the Barclays Defendants Were Subsequent Transfers of Initial Transfers Made Ten or More Months Earlier, or When No Money from BLMIS Remained at Fairfield Sentry When It Made the Transfers**

Beyond the macro-level implausibility of the Trustee's "customer property" allegations— exemplified by the unexplained (and indeed, unacknowledged) $2 billion overall difference

between alleged initial and subsequent transfers—the Complaint fails as well on the micro level.

Exhibits to the Complaint confirm that in many instances, the Trustee cannot plausibly make the

requisite link between alleged initial and subsequent transfers.  He seeks to recover a number of

alleged subsequent transfers made to a Barclays Defendant ten or more months—as long as nearly

a year and a half—after the most recent alleged initial transfer from BLMIS to Fairfield Sentry.

For example, the large gaps include:

- 17 months between a July 22, 2003 transfer from BLMIS to Fairfield Sentry and a December 22, 2004 transfer from Fairfield Sigma to Barclays Spain;

- 16 months between an April 13, 2006 transfer from BLMIS to Fairfield Sentry and its August 17, 2007 transfer to Barclays Suisse;

- 15 months between an April 13, 2006 transfer from BLMIS to Fairfield Sentry and a July 19, 2007 transfer from Fairfield Sigma to Barclays Spain;

- 14 months between a July 22, 2003 transfer from Fairfield BLMIS to Sentry and its September 15, 2004 transfer to Barclays Suisse;

- 14 months between an April 13, 2006 transfer from BLMIS to Fairfield Sentry and a June 19, 2007 transfer from Fairfield Sigma to Barclays Suisse;

- 13 months between a July 22, 2003 transfer from BLMIS to Fairfield Sentry and its August 13, 2004 transfer to Barclays Suisse;

- 11 months between an April 13, 2006 transfer from BLMIS to Fairfield Sentry and its March 16, 2007 transfer to Barclays Suisse; and

- 10 months between a July 22, 2003 transfer from BLMIS to Sentry and its May 17, 2004 transfer to Barclays Spain.

*See* Compl. Exs. B–H.

The time elapsed between alleged initial and subsequent transfers is plainly relevant to the

plausibility of the Trustee's "customer property" allegations.  In *In re Bernard L. Madoff Inv. Sec.*

*LLC*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) ("*Merkin*"), this Court denied a motion to dismiss

because the alleged subsequent transfers "took place ***contemporaneously or shortly after an initial***

*transfer* identified [in the complaint], ***implying linkage***." 515 B.R. at 150 (emphasis added).  In *Merkin*, the alleged initial and subsequent transfers occurred between one and 22 days of each other, and "[g]iven the short amount of time between the first and second transfers, it [was] reasonable to infer in considering a motion to dismiss that some portion of the first transfer formed part of the second transfer." *Id.* at 151.  But the converse is equally true:  given the nature of Fairfield Sentry's business, which involved receiving funds from many subscribing shareholders and paying funds to many redeeming shareholders, gaps of up to 17 months between alleged initial and subsequent transfers strongly imply a ***lack of linkage***.

That is particularly so in light of all the information the Trustee has obtained from the Fairfield Liquidators, enabling him to determine, with respect to any transfer, whether there is a basis for plausibly alleging the requisite linkage.  As a result, the situation here is the polar opposite of *Merkin*, where the Trustee was faced with a thicket of alleged subsequent transfers between and among defendants who "commingled their assets, transferring their funds into and out of each other's accounts," and the facts were in the exclusive possession of the defendants, whose records were unavailable to the Trustee when he pleaded his claims. *Id*. at 151.  In *Merkin*, that scenario posed "difficulties" for the Trustee because "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants," in light of "complicated" inter-defendant transactions "over lengthy periods of time." *Id*.  In recognition of the Trustee's case-specific "handicap," the *Merkin* Court was willing to afford the Trustee "greater latitude" in pleading." *Id.*; *see also Picard v. Estate of Chais (In re Bernard L. Madoff Inv. Secs. LLC)*, 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011) ("Whether [the defendants] additionally received Subsequent Transfers of BLMIS funds from one another is *a question to which they, and they alone, have the requisite information to respond.*" (emphasis added)).

37

Here, by stark contrast, there were no inter-defendant transfers, and the proof relevant to the Trustee's subsequent transfer claims is to be found not in "the books and records of the defendants," but exclusively in the "books and records" of BLMIS and the Fairfield Funds. The Trustee has had access to all of that data for over a decade pursuant to his 2011 Fairfield Settlement Agreement. Yet despite this surfeit of time and information, the Trustee has failed to plead *any* facts plausibly connecting the alleged initial and subsequent transfers.

Finally, the implausibility of the Trustee's subsequent transferee claims is confirmed by the fact that a number of alleged transfers to Barclays Defendants occurred at times when, according to the Trustee's own pleadings, Fairfield Sentry held no BLMIS-sourced funds, because the aggregate amount Fairfield Sentry had paid to other redeeming shareholders exceeded what it had by then received from BLMIS. For example, the Trustee alleges that from May 9, 2003 (*i.e.*, the first BLMIS-to-Fairfield Sentry initial transfer within the six-year lookback period) through July 22, 2003, inclusive, BLMIS transferred a total of $120 million to Fairfield Sentry, and that the next such transfer did not occur until April 1, 2005 (for $175 million). *See* Compl. Ex. C at 19, 21 ("CHECK WIRE" entries). The Trustee also alleges that from May 9, 2003 through September 30, 2003, Fairfield Sentry transferred more than $183 million to redeeming shareholders, including Fairfield Sigma and Fairfield Lambda. *See* Gottridge Decl. Exs. 15, 16 & ¶ 31. As a result, no BLMIS customer property was held by Fairfield Sentry from October 1, 2003, until April 1, 2005. The Trustee seeks to recover seven transfers received in that period by Barclays Defendants for redeeming their Fairfield Sentry shares,[28] but these could not possibly have included BLMIS customer property. Far from "nudg[ing] his claims across the line from

---

[28] These comprise payments from Fairfield Sentry to Barclays Suisse on October 14, 2003, March 18, 2004, May 17, 2004, August 13, 2004, and September 15, 2004, and to Barclays Spain on November 19, 2003, and May 17, 2004. *See* Compl. Exs. D, F and G.

conceivable to plausible," *Iqbal*, 556 U.S. at 680, as he must do to defeat this motion, the Trustee

has insisted on pursuing claims that, as his own Complaint establishes, are both inconceivable and

implausible.  He has failed to adequately plead that the Barclays Defendants are subsequent

transferees of BLMIS customer property.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Dated: New York, New York
     February 25, 2022

**HERBERT SMITH FREEHILLS
NEW YORK LLP**

By:    */s/ Marc J. Gottridge*
       Marc J. Gottridge
       Michael Schoeneberger
       450 Lexington Avenue
       New York, New York 10017
       Telephone: (917) 542-7600
       marc.gottridge@hsf.com
       michael.schoeneberger@hsf.com

*Attorneys for Defendants Barclays Bank
(Suisse) S.A., Caixabank S.A., as successor by
merger to Barclays Bank S.A., and Zedra Trust
Company (Jersey) Limited (f/k/a Barclays
Private Bank and Trust Limited)*