Leo Muchnik
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: muchnikl@gtlaw.com

Joseph P. Davis (admitted *pro hac vice*)
Alison T. Holdway (*pro hac vice* pending)
**GREENBERG TRAURIG, LLP**
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone: (617) 310-6000
Facsimile: (617) 301-6001
Email: davisjo@gtlaw.com
Email: holdwaya@gtlaw.com

*Attorneys for Defendant The Public Institution for Social Security*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, <br><br> Plaintiff, | Adv. Pro. No. 12-01002 (CGM) |

v.

THE PUBLIC INSTITUTION FOR
SOCIAL SECURITY,

Defendant.

**DEFENDANT THE PUBLIC INSTITUTION FOR SOCIAL SECURITY**
**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT</u>**

# Table of Contents

Page

PRELIMINARY STATEMENT .................................................................................. 1

FACTUAL ALLEGATIONS ..................................................................................... 3

   I.   Background on PIFSS and Investment with Sentry.............................................. 3

   II.   Complaint Against PIFSS........................................................................... 4

   III.   Incorporation of the Fairfield Amended Complaint ........................................ 5

   IV.   Picard/Fairfield Action.............................................................................. 6

ARGUMENT .......................................................................................................... 7

   I.   The Court Lacks Subject Matter Jurisdiction Because
       PIFSS Is Immune from Liability Under the FSIA ........................................... 8

       A.   PIFSS Is a Foreign State Under the FSIA...................................... 9

       B.   The Commercial Activity Exception Does Not Apply ...................... 9

   II.   The Court Does Not Have Personal Jurisdiction over PIFSS............................. 12

       A.   Trustee Has Not Alleged that this Court Has General Jurisdiction ............... 12

       B.   PIFSS Has Not Consented to This Court's Jurisdiction ................................ 13

       C.   Trustee Has Not Established that this Court Has Specific Jurisdiction .......... 14

       D.   The Exercise of Personal Jurisdiction Over
           PIFSS Would Be Unreasonable................................................. 20

   III.   The Complaint Violates Civil Rule 8(a) by Incorporating by
       Reference the Entire Fairfield Amended Complaint ...................................... 23

   IV.   The Complaint Fails to State a Plausible Subsequent Transfer Claim ............................ 27

       A.   Legal Standard .......................................................................... 27

       B.   Section 546(e) Bars Trustee from Avoiding the I
           nitial Transfers from BLMIS to Sentry; Accordingly,
           PIFSS Is Not Liable as a Subsequent Transferee............................ 27

       C.   Trustee Fails to Plead that Funds for the Transfer Constitute
           BLMIS Customer Property ....................................................... 35

CONCLUSION...................................................................................................... 40

i

## Table of Authorities

Page

**Cases**

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ................................ 8

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2012) .................................. 19, 20

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*,
    480 U.S. 102 (1987).................................................... 15, 20, 21

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009).................................................. 27, 38

*Barnet v. Ministry of Culture & Sports of the Hellenic Republic*,
    961 F.3d 193 (2d Cir. 2020)........................................................... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................ 27, 36, 38

*Bly v. Circuit Court for Howard Cty., Md.*, No. 18-1333,
    2019 U.S. Dist. LEXIS 107523 (D. Md. June 26, 2019)........................................... 24, 26

*Calder v. Jones*, 465 U.S. 783 (1984)................................................... 21

*Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012 (2d Cir. 1993)........................................ 8

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) .................................. 19

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .............................................. 13

*Davis v. Bifani*, No. 07-cv-00122,
    2007 U.S. Dist. LEXIS 30080 (D. Colo. Apr. 24, 2007)................................... 24

*Distefano v. Carazoo N. Am., Inc.*, 286 F.3d 81 (2d Cir. 2001) ........................................ 12

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
    323 B.R. 857 (Bankr. S.D.N.Y. 2005).................................................. 30

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011)........................................................ 34

*Fairfield Sentry Ltd. v. Migani* [2014] UKPC 9 .................................... 13, 33

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Ch. 15 Case No. 10-13164, Adv. No. 10-03496,
    2020 Bankr. LEXIS 2324 (Bankr. S.D.N.Y. Aug. 6, 2018) ....................................... 13, 33

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,

Ch. 15 Case No. 10-13164, Adv. No. 10-03496,
2020 Bankr. LEXIS 3489 (Bankr. S.D.N.Y. Dec. 14, 2020).........................29, 30, 31, 33

*Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42 (2d Cir. 2021)..................................12

*Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143 (S.D.N.Y. 2002) ..................3

*Hau Yin To v. HSBC Holdings, PLC*, No. 15CV3590, 2017 U.S. Dist. LEXIS 28931
(S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017).......................................17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) .................................15

*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016) ....................................17

*Hinton v. Trans. Union, LLC*, 654 F. Supp. 2d 440 (E.D. Va. 2009),
*aff'd*, 382 F. App'x 256 (4th Cir. 2010)..........................................................................25, 26

*In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011) ..........................22

*In re Crysen/Montenany Energy Co.*, 226 F.3d 160 (2d Cir. 2000) ..............................26

*In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587 (Bankr. S.D.N.Y. 2017) ..............3

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659 (2d Cir. 2013).......................12

*In re Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th 147 (2d Cir. 2021) ...........................33

*In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66 (2d Cir. 2019) .......... 28, 30, 31, 33

*Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018) ........................................................18

*Jones v. Nat'l Comm'cns & Surveillance Networks*, 266 F. App'x 31 (2d Cir. 2008)................24

*Kennedy v. Mondelez Glob. LLC*, No. 19-CV-302,
2020 U.S. Dist. LEXIS 124538 (E.D.N.Y. July 10, 2020).............................................39

*Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, 567 B.R. 247 (Bankr. S.D.N.Y. 2017) .........3

*LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*, 582 B.R. 46 (Bankr. S.D.N.Y. 2018),
*amended on reconsideration on other grounds*, No. 13-11272,
2018 Bankr. LEXIS 1770 (Bankr. S.D.N.Y. June 15, 2018)...............................................4

*Law v. Siegel*, 571 U.S. 415 (2014) ................................................................................35

*Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212 (D. Mass. 1995)......................25

*Manko Window Sys., Inc. v. Prestik*, No. 16-2818,
2017 U.S. Dist. LEXIS 162162 (D. Kan. Sept. 29, 2017) ..............................................23

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
    12 N.E.3d 456 (N.Y. 2014).......................................................................... 18

*Merit Mgmt. Grp., LP v. FTI Consulting Inc.*, 138 S. Ct. 883 (2018) ......................................... 35

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ..................... 20, 21, 23

*Morana v. Park Hotels & Resorts, Inc.*, No. 20-CV-2797,
    2021 U.S. Dist. LEXIS 58340 (S.D.N.Y. Mar. 26, 2021) ............................................... 20

*NCUA Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705,
    2014 U.S. Dist. LEXIS 58751 (S.D.N.Y. Apr. 28, 2014)................................................ 24

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ........................................................... 31

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023,
    2010 U.S. Dist. LEXIS 29267 (E.D.N.Y. Mar. 26, 2010)......................................... 25, 26

*O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, Ch. 7 Case No. 13-22050,
    Adv. No. 15-08207, 2016 Bankr. LEXIS 3791 (Bankr. S.D.N.Y. Oct. 21, 2016) ........... 19

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) ........................................ 10, 11

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)........................................................................... 12

*Ottah v. Bracewell LLP*, No. 21 Civ. 455, 2021 WL 5910065 (S.D.N.Y. Dec. 10, 2021)............. 3

*Petersen Energía Inversora S.A.U. v. Argentine Republic & YPF S.A.*,
    895 F.3d 194 (2d Cir. 2018)............................................................................. 10

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018)............................................ 14, 17, 27, 36

*Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012)............................................................. 11, 16

*Picard v. Fairfield Inv. Fund, Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    Consol. Adv. No. 08-01789, Adv. No. 09-01239,
    2021 Bankr. LEXIS 2101 (Bankr. S.D.N.Y. Aug. 6, 2021) ........................................... 29

*Picard v. Fairfield Sentry Ltd,* Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) ................................. 5

*Picard v. Grieff (In re Bernard L. Madoff Inv. Sec. LLC)*,
    476 B.R. 715 (S.D.N.Y. 2012)......................................................................... 30

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
    773 F.3d 411 (2d Cir. 2014)..................................................................... *passim*

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ............................................................ 38

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ............................................................ 36

*Porina v. Marward Shipping Co.*, No. 05 CIV. 5621,
    2006 U.S. Dist. LEXIS 60535 (S.D.N.Y. Aug. 24, 2006) ............................... 20

*Rocky Mt. Chocolate Factory v. Arellano*, No. 17-cv-0582,
    2017 U.S. Dist. LEXIS 173159 (D. Colo. Oct. 19, 2017) ............................... 23

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000).............................................................. 3

*Rushaid v. Pictet & Cie*, 2014 N.Y. Misc. LEXIS 3888 (N.Y. Sup. Ct. Aug. 26, 2014) ............ 19

*S.I.P.C. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    No. 12 MC 115, 2013 U.S. LEXIS 56042 (S.D.N.Y. Apr. 15, 2013) ................. 32, 33, 34

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988) ................................................. 24, 25

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993).......................................................... 8, 10

*Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96 Civ. 3231,
    2000 U.S. Dist. LEXIS 3805 (S.D.N.Y. Mar. 30, 2000) ................................. 24

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) ............................................................ 35

*Spetner v. Palestine Inv. Bank,* 495 F. Supp. 3d 96 (E.D.N.Y. 2020) ......................... 18

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018)...................................... 14, 19

*Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720 (S.D.N.Y. 2010) ............................ 17

*Taylor v. Sturgell*, 553 U.S. 880 (2008)............................................................... 31

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)............................... 3

*Tex. Water Supply Corp. v. R. F. C.*, 204 F.2d 190 (5th Cir. 1953) ........................... 24

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994)............................ 20

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ............................................................ 25

*Universal Trading & Inv. Co. v. Tymoshenko*, No. 11 Civ. 7877,
    2012 U.S. Dist. LEXIS 176214 (S.D.N.Y. Dec. 12, 2012) ............................... 18

*Walden v. Fiore*, 571 U.S. 277 (2014) ........................................................................ 14, 15, 16, 19

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) .................................. 12, 21, 23

**Statutes**

11 U.S.C. § 101(22) ........................................................................................................ 30

11 U.S.C. § 546(e) ...................................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) ..................................................................................... 28, 34, 35

11 U.S.C. § 550(a)(2) ............................................................................................ 4, 11, 14

11 U.S.C. § 551 ................................................................................................................ 4

11 U.S.C. § 741(7) ......................................................................................................... 35

11 U.S.C. § 741(7)(A)(i) ................................................................................................ 33

11 U.S.C. § 741(8) ......................................................................................................... 35

15 U.S.C. § 78fff-2(c)(3) .................................................................................................. 4

28 U.S.C. § 1603(a) .......................................................................................................... 9

28 U.S.C. § 1603(b) .......................................................................................................... 9

28 U.S.C. § 1604 .............................................................................................................. 8

28 U.S.C. § 1605(a)(2) .................................................................................................... 10

NY CPLR § 302 .............................................................................................................. 12

NY CPLR § 302(a)(1) ..................................................................................................... 18

NY DCL § 278 .................................................................................................................. 4

**Rules**

Fed. R. Bankr. P. 7004(f) ............................................................................................... 12

Fed. R. Bankr. P. 7008 ................................................................................................... 23

Fed. R. Bankr. P. 7010 ................................................................................................... 23

Fed. R. Bankr. P. 7012(b) ................................................................................................. 1

Fed. R. Civ. P. 10(c) ......................................................................................... 23, 24, 26

Fed. R. Civ. P. 12(b)(1)................................................................................................. 1

Fed. R. Civ. P. 12(b)(2)................................................................................................. 1

Fed. R. Civ. P. 12(b)(6)............................................................................................. 1, 28

Fed. R. Civ. P. 8(a) ................................................................................................ 2, 8, 23, 26

Fed. R. Civ. P. 8(a)(2)................................................................................................. 24

Fed. R. Evid. 201(b)(2) ................................................................................................. 3

**Treatises**

2 Moore's Federal Practice - Civil § 10.04 (2021) ....................................................... 25

Charles Wright & Arthur Miller, 5 Federal Practice & Procedure § 1281 (4th ed. 2021) ........... 24

Charles Wright & Arthur Miller, 5A Federal Practice & Procedure § 1326 (4th ed. 2021)......... 25

The Public Institution for Social Security ("PIFSS"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion to dismiss the Complaint [Dkt. 1] filed by Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), individually, under the Securities Investor Protection Act ("SIPA"), pursuant to Rules 12(b)(1), (b)(2) and (b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable hereto and incorporated into the above-captioned adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").   In support hereof, PIFSS submits the declaration of Leo Muchnik (the "Muchnik Declaration") [Dkt. 117], filed contemporaneously herewith.

## PRELIMINARY STATEMENT

PIFSS is the governmental agency of Kuwait that manages Kuwait's social security program.  PIFSS was established to provide Kuwaiti citizens with sustainable insurance and social services, ensuring that Kuwaitis would have a decent living and long-term benefits.

In the late-1990s and early-2000s, PIFSS invested in Fairfield Sentry Limited ("Sentry"), a British Virgin Islands fund that, in turn, invested in BLMIS.  PIFSS, like many others, fell victim to Madoff's Ponzi scheme.  The Trustee nevertheless is suing PIFSS to recover a single $20 million transfer that PIFSS received from Sentry because the Trustee alleges the proceeds constitute BLMIS customer property.

The Complaint should be dismissed for four reasons.  First, this Court does not have subject matter jurisdiction over the dispute as PIFSS, a Kuwaiti governmental agency, is protected from suit in the United States under the Foreign Sovereign Immunities Act ("FSIA").

Second, this Court does not have personal jurisdiction over PIFSS because PIFSS did not avail itself of the privileges and benefits of the United States.  The Trustee has not alleged PIFSS

1

has sufficient minimum contacts with the United States. Also, the exercise of personal jurisdiction is unreasonable as Kuwait's strong interest in adjudicating issues concerning PIFSS' management of the country's social security program and funds is superior to the interest of the United States in pursuing avoidance actions.

<u>Third</u>, the Complaint violates Civil Rule 8(a). Far from being a "short and plain" statement, the Complaint incorporates by reference allegations contained in a lengthy, separate and superseded complaint against numerous nonparties to the instant case. The purportedly incorporated complaint has 798 paragraphs and 31 counts against 46 defendants, none of which is PIFSS. This wholesale incorporation leaves PIFSS – and the Court – to parse through the allegations and surmise which ones are alleged against PIFSS and which are irrelevant. The purpose of Civil Rule 8(a) is to prohibit such guesswork in pleadings.

<u>Finally</u>, the Complaint fails to state a subsequent transfer claim against PIFSS because section 546(e) bars the Trustee from avoiding the initial transfer from BLMIS to Fairfield. The Complaint likewise fails to plausibly allege that the funds PIFSS received from Sentry originated with BLMIS. Indeed, the Trustee has alleged in other avoidance actions that Sentry, before issuing the redemption payment to PIFSS, distributed at least $330 million *more* in redemptions and payments to other Fairfield defendants than it withdrew from BLMIS. Far from pleading a plausible claim, the Trustee's subsequent transferee allegation that PIFSS was the recipient of BLMIS customer property is mathematically impossible.

Accordingly, PIFSS respectfully requests that this Court dismiss the Trustee's Complaint.

# FACTUAL ALLEGATIONS[1]

## I.    Background on PIFSS and Investment with Sentry

PIFSS is the Kuwait government agency that manages assets for Kuwait's social security system.  (¶¶ 3, 22.)[2]  The central office is in Kuwait City and all locations are in Kuwait.  (¶ 22; *see also Contact Us*, PIFSS,  https://www.pifss.gov.kw/sites/En/pages/contactus/contactus.aspx (last visited Feb. 24, 2022) (listing PIFSS' locations)[3].)  PIFSS "provide[s] sustainable insurance and social services, ensuring a decent living for citizens . . . Every working citizen [of Kuwait] in the various sectors of the country, along with the retired persons, benefits from [PIFSS'] unified services."  *About Us*, PIFSS, https://www.pifss.gov.kw/sites/En/pages/abouttaminat/aboutus.aspx (last visited Feb. 24, 2022).  PIFSS' website emphasizes that "[s]ocial care in cases of old age, disability, sickness and death is among the most important aspects of" the services it provides.  *Id.*

PIFSS invested with Sentry, a BLMIS feeder fund managed by Fairfield Greenwich Group ("FGG").  (¶¶ 2, 6–7.)  Sentry is a British Virgin Islands ("BVI") company in liquidation in the BVI.  (¶ 2.)

The Complaint does not allege the date or amount of PIFSS' investment with Sentry or when and the amount of PIFSS' Sentry investments that ultimately went to BLMIS.

---

[1]    The facts set forth herein are taken from allegations in the Complaint and documents incorporated by reference therein, as well as other items of which the Court may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  This includes, among other things, admissions in documents in the public record filed by the Trustee, as well as documents in the Trustee's possession or knowledge that the Trustee relied upon in bringing suit.  *See In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587, 594 (Bankr. S.D.N.Y. 2017) (Morris, C.J.); *Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000); *Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, 567 B.R. 247, 250 n.2 (Bankr. S.D.N.Y. 2017).

[2]    Unless otherwise noted, citations to "¶ _" reference paragraphs of the Complaint and citations to "Compl. Ex. _" reference documents attached as exhibits to the Complaint.  A copy of the Complaint is annexed to the Muchnik Declaration as **Exhibit A**.

[3]    PIFSS' website is available at https://www.pifss.gov.kw/sites/En/Pages/Home.aspx.  The website describes PIFSS' purpose and mission and identifies its office locations.  The Court may take judicial notice of these facts.  *See* Fed. R. Evid. 201(b)(2); *see also Ottah v. Bracewell LLP*, No. 21 Civ. 455, 2021 WL 5910065, at *5 (S.D.N.Y. Dec. 10, 2021) (taking judicial notice at motion to dismiss stage of defendant's "'About' page from its public-facing website").

## II.    **Complaint Against PIFSS**

On January 5, 2012, the Trustee filed a one-count Complaint against PIFSS to recover two transfers that PIFSS received from Sentry: (i) $10 million on April 14, 2003 and (ii) $20 million on January 21, 2004.  (¶ 2, Compl. Ex. C.)[4]

The bulk of the Complaint focuses on Madoff's Ponzi scheme and transfers from BLMIS to Sentry, which the Trustee alleges were fraudulent.  (¶¶ 23–39.)  The Trustee contends that funds Sentry received from BLMIS were BLMIS customer property (¶¶ 1, 36, 37) and that PIFSS was a subsequent recipient of this property.  (¶¶ 2–3, 44.)  The only allegations regarding PIFSS' receipt of the funds that the Trustee alleges constituted BLMIS customer property are:

- "Fairfield Sentry received initial transfers of BLMIS Customer Property. Some or all of those initial transfers were subsequently transferred directly or indirectly to Defendant PIFSS." (¶ 34.)

- "During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the 'Fairfield Sentry Six Year Initial Transfers')." (¶ 36.)

- "A portion of the Fairfield Sentry [Six Year] Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant PIFSS . . . . Based on the Trustee's investigation to date, approximately $30,000,000 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant PIFSS (the 'Fairfield Sentry Subsequent Transfers').  A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit C." (¶ 41.)

Based on these allegations, the Trustee is seeking to recover from PIFSS as a subsequent transferee under section 550(a)(2) of the Bankruptcy Code.[5]

Recently, this Court on December 21, 2021 dismissed with prejudice the Trustee's claim

---

[4]    The Complaint invokes section 551 of the Bankruptcy Code, but that section "does not provide for an independent cause of action." *LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*, 582 B.R. 46, 97 (Bankr. S.D.N.Y. 2018), *amended on reconsideration on other grounds*, No. 13-11272, 2018 Bankr. LEXIS 1770 (Bankr. S.D.N.Y. June 15, 2018).

[5]    The Complaint invokes Section 278 of New York Debtor & Creditor Law and 15 U.S.C. § 78fff-2(c)(3) ("the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11").

as to the $10 million transfer that occurred on April 14, 2003 (the "April 2003 Transfer") in accordance with the parties' stipulation. [Dkt. 111.] The Trustee dismissed this claim because he failed to plead that there was an initial, avoidable transfer from BLMIS to Sentry. As a result, the only remaining claim relates to the $20 million transfer PIFSS received from Sentry on January 21, 2004 (the "Transfer").

### III.    Incorporation of the Fairfield Amended Complaint

The Trustee's allegation in the Complaint regarding the avoidability of the initial transfers from BLMIS to Sentry – the alleged source of the funds for the Transfer – was largely pled by incorporating *all* of the allegations in the Trustee's amended complaint against Sentry and related parties (the "FAC"; Dkt. 23). *See Picard v. Fairfield Sentry Ltd., et al.*, Adv. No. 09-01239 (the "Picard/Fairfield Action") (discussed further in Section IV, *infra*).[6]

PIFSS is neither a party to nor mentioned in the FAC. The Complaint refers to the FAC only generally and notes that the entire FAC is incorporated into the Complaint. (¶ 35.) No specific paragraphs or allegations in the FAC are referenced or identified.

Regarding BLMIS, the FAC alleges that BLMIS was operated under a shroud of secrecy and lack of transparency. (FAC ¶¶ 501, 520.) Most of the allegations concerning the Fairfield defendants' knowledge of Madoff's fraud and ignoring red flags occurred in the period from 2006-08, long after the Transfer. (*See, e.g., id.* ¶¶ 351–354, 463–469, 472–473.) The FAC further alleges that Sentry's management "went to great lengths to keep their investors far away from Madoff" (*id.* ¶ 342), "misled investors" (*id.* ¶ 344), "remove[d] all references to BLMIS from their marketing materials" and offering memorandum in 2002 (*id.* ¶ 346), "actively and repeatedly 'blocked' investors wishing to obtain more information" (*id.* ¶ 348), "went to great lengths to cover

---

6    A copy of the FAC is annexed to the Muchnik Declaration as **Exhibit B**.

up Madoff's actual role with the FGG funds" (*id.* ¶ 350), and "sold the false assurance that they conducted superior due diligence" (*id.* ¶ 362).

The FAC alleges that the SEC in 2006 – some two years *after* the Transfer – investigated BLMIS (*id.* ¶ 351) but did not uncover BLMIS' fraudulent scheme (*id.* ¶¶ 360–61).  The FAC also alleges some industry experts and consultants were suspicious of BLMIS and opined that BLMIS was "likely a fraud" (*id.* ¶ 511), "felt illegal" (*id.* ¶ 514), and that "fraudulent activity was highly likely" (*id.* ¶ 516).  Again, most of these allegations occurred in the 2006-08 period or were reported when Madoff's fraud was exposed years after the Transfer.  (*See, e.g., id.* ¶¶ 516, 520, 521, 524, 525.)

Additionally, the FAC alleges that "[m]uch of the money transferred from BLMIS to the Feeder Funds was subsequently transferred by the Feeder Funds to the FGG Affiliates, Management Defendants, and Sales Defendants."  (*Id.* ¶ 543.).  The FAC alleges that Sentry withdrew funds from BLMIS "in order to pay" billions of dollars to these entities.  (*See, e.g.*, ¶¶ 53, 58, 63, 71, 76, 80, 85, 100, 104, 126–129, 139–141.)

On August 28, 2020, the Trustee filed a second amended complaint in the Picard/Fairfield Action (the "SAC"; Dkt. 286). The Trustee, however, did not amend the Complaint to incorporate the SAC.  Only the FAC was incorporated into the Complaint.

**IV.    Picard/Fairfield Action**

Prior to filing the Complaint, on May 18, 2009, the Trustee commenced the Picard/Fairfield Action against Sentry and two affiliated feeder funds, seeking to recover approximately $3.55 billion in transfers from BLMIS to the defendant funds.

The Trustee filed the FAC on July 20, 2010 against Sentry and its insiders, affiliated funds and others.  The Trustee sought to avoid and recover approximately $3 billion in withdrawals that Sentry made in the six-year period preceding BLMIS' bankruptcy filing.  (¶ 35.)

On May 9, 2011, the Trustee filed a motion for approval of a settlement agreement (the "Fairfield Settlement Agreement") with the Liquidators (collectively, the "Liquidators") of Sentry and two affiliated funds, Fairfield Sigma Limited and Fairfield Lambda Limited (collectively with Sentry, the "Fairfield Funds").   (Picard/Fairfield Action, at Dkt. 69; *see also* Compl. ¶ 40 (discussing Trustee's settlement).)

On June 7, 2011, this Court approved the Fairfield Settlement Agreement.[7]  Pursuant to the Fairfield Settlement Agreement, the Liquidators consented to a $3.054 billion judgment against Sentry.  (*See* Fairfield Settlement Agreement ¶ 1.)  The Fairfield Settlement Agreement stated expressly that Sentry did not admit liability for the claims asserted against it in the FAC.  (*Id.* ¶ 24.)

The Fairfield Settlement Agreement also provided for cooperation and information sharing between the Liquidators and the Trustee concerning, among other subjects, claims against parties that redeemed their shares in the Fairfield Funds, claims against the Fairfield Funds' insiders, and claims against the Fairfield Funds' custodians and administrators.  (*Id.* ¶ 14.)  Thus, the Trustee had access to all of Sentry's books and records prior to filing the Complaint against PIFSS.

## ARGUMENT

The Complaint must be dismissed for four independent reasons.  First, this suit is barred pursuant to the FSIA because PIFSS is a foreign governmental agency.  Second, this Court does not have personal jurisdiction over PIFSS because PIFSS lacks sufficient minimum contacts with the United States and the exercise of jurisdiction over PIFSS would be unreasonable.  Third, because the Complaint against PIFSS incorporates by reference the entirety of a lengthy and now-defunct complaint against third parties, the allegations against PIFSS are difficult – if not

---

[7]    The Fairfield Settlement Agreement, the bench memorandum approving the settlement, the respective order, and the consent judgment against Sentry are filed at docket nos. 69-2, 92, 95, and 109, respectively, in the Picard/Fairfield Action.  A copy of the Fairfield Settlement Agreement and the consent judgment against Sentry are annexed to the Muchnik Declaration as **Exhibits C** and **D**, respectively.

impossible – to ascertain in violation of Civil Rule 8(a).  Finally, the Complaint fails to state a subsequent transfer claim against PIFSS because (i) section 546(e) of the Bankruptcy Code bars the Trustee from avoiding the initial transfer from BLMIS to Sentry, and (ii) the Trustee fails to tie the transfer that PIFSS received from Sentry to an initial transfer from BLMIS to Sentry.[8]

## I.    The Court Lacks Subject Matter Jurisdiction Because PIFSS Is Immune from Liability Under the FSIA

This Court does not have subject matter jurisdiction because PIFSS, a governmental agency of the sovereign state of Kuwait, is protected under the FSIA.  As the Supreme Court held, the FSIA "provides the *sole* basis for obtaining jurisdiction over a foreign state in the courts of this country."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989) (emphasis added).

"[A] foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *see also* 28 U.S.C. § 1604 ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States . . . except as provided in sections 1605 to 1607 of this chapter.").  "Once the defendant presents a prima facie case that it is a foreign sovereign, the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign."  *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993) (internal citation omitted).  As described below, PIFSS is a foreign state under the FSIA, and no exception, including

---

[8]    For purposes of this motion only, PIFSS takes all factual allegations—but not legal or boilerplate conclusions couched as factual allegations—in the Complaint as true.  By doing so, PIFSS does not admit to the factual allegations and reserves all rights to contest any such factual allegations that are false or inaccurate at the appropriate procedural stage of this adversary proceeding.

the FSIA's commercial activity exception, applies.[9]

### A. PIFSS Is a Foreign State Under the FSIA

As admitted in paragraph 22 of the Complaint, PIFSS is an agency or instrumentality of a foreign state under the FSIA. The definition of "foreign state" in the FSIA "includes . . . an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality of a foreign state" is "any entity" that is (1) "a separate legal person, corporate or otherwise," (2) "an organ of a foreign state or political subdivision thereof," and (3) "neither a citizen of a State of the United States . . . nor created under the laws of any third country." *Id*. at § 1603(b).

The Complaint admits that "PIFSS is a government agency of the State of Kuwait." (Compl. ¶ 22.) PIFSS' website describes that PIFSS was established as Kuwait's social security agency by the Amiri Decree of Law No. (61) of 1976 "to provide sustainable insurance and social services" for Kuwaitis to ensure they have "decent living" conditions.[10] PIFSS serves the needs of Kuwaiti citizens through its locations in Kuwait.[11] Thus, PIFSS plainly meets the definition of a "foreign state" under the FSIA.

### B. The Commercial Activity Exception Does Not Apply

Under the FSIA's commercial activity exception to sovereign immunity, United States courts may exercise jurisdiction over foreign states if:

> the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

---

[9]    The FSIA includes exceptions other than the commercial activity exception, but none is relevant or applicable. *See* 28 U.S.C. §§ 1605–1607.

[10]    *About Us*, PIFSS, https://www.pifss.gov.kw/sites/En/pages/abouttaminat/aboutus.aspx (last visited Feb. 24, 2022).

[11]    *Id. See also* Contact Us, PIFSS, https://www.pifss.gov.kw/sites/En/pages/contactus/contactus.aspx (last visited Feb. 24, 2022).

28 U.S.C. § 1605(a)(2).  Only one of the exceptions arguably is relevant here: that the action is (1) based upon an act outside the territory of the United States, (2) which act was taken in connection with a commercial activity of the foreign state elsewhere and (3) that caused a direct effect in the United States.  *See Barnet v. Ministry of Culture & Sports of the Hellenic Republic*, 961 F.3d 193, 199 (2d Cir. 2020) (listing the three elements for the relevant exception under 28 U.S.C § 1605(a)(2)) (citation omitted). The first prong of the exception is met because PIFSS' conduct indisputably occurred outside the United States and, assuming *arguendo* that PIFSS' receipt of funds from Sentry constitutes "commercial activity," the second prong is satisfied. However, the third prong of the exception is not met and hence the exception does not apply.

To satisfy the third prong, courts "must 'identify[] the particular conduct on which the [plaintiff']s action is 'based,'" *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993); *Petersen Energía Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 204 (2d Cir. 2018)  (the court "must identify the act of the foreign sovereign State that serves as the basis for plaintiffs' claims"), and then determine whether such act caused a direct effect in the United States, *see Barnet*, 961 F.3d at 199.

The gravamen of the Complaint is PIFSS' receipt of funds from Sentry, a British Virgin Islands entity (¶¶ 41, 44).  *See OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 33–34 (2015). The Complaint contains no allegation that PIFSS carried out commercial activity or other acts in the United States.  The Complaint also does not allege that PIFSS' receipt of funds from Sentry caused a direct effect in the United States.  Having failed to plead any facts supporting the applicability of any exception to sovereign immunity after pleading that PIFSS was a government agency of a foreign state, the Complaint must be dismissed for lack of subject matter jurisdiction.

The Trustee may contend that PIFSS is not entitled to sovereign immunity under the

holding in *Picard v. Bureau of Labor Insurance (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*") (finding defendant foreign state was not subject to sovereign immunity). But the basis of the *BLI* ruling was overturned by *OBB Personenverkehr*, where the Supreme Court clarified the "based upon" requirement of the commercial activity exception. Courts now are required to "look to the basis or foundation for a claim, those elements . . . that, if proven, would entitle a plaintiff to relief and the gravamen of the complaint." 577 U.S. at 33–34 (quotation marks and citations omitted).

The Court in *BLI* focused on the wrong conduct when it summarily concluded in one sentence that "the Trustee's instant suit is based upon BLI's investment of tens of millions of dollars in [] Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *BLI*, 480 B.R. at 506. PIFSS' purported intent to invest in BLMIS through Sentry is wholly irrelevant to the Trustee's section 550(a)(2) claim against PIFSS and, even if proven true, would not "entitle [the Trustee] to relief" under section 550(a)(2). *See OBB Personenverkehr*, 577 U.S. at 33–34.

Because it is undisputed that PIFSS is a foreign governmental agency and that its conduct occurred outside the United States, and assuming arguendo that PIFSS' redemption from Sentry was "commercial activity," the Complaint should be dismissed as the Trustee failed to plead that there was any direct effect on the United States caused by the Transfer. As described more fully below pages 34–39, the Complaint does not include facts showing that the Transfer from Sentry was funded by BLMIS customer property. By not pleading facts to demonstrate that funds from the United States were used by Sentry to pay PIFSS in the Transfer, the Trustee failed to plead that the Transfer had a direct effect on the United States. Accordingly, no exception to the FSIA exists, and the Complaint must be dismissed.

11

## II.    The Court Does Not Have Personal Jurisdiction over PIFSS

Even if the Court finds that the Complaint meets an exception to the FSIA, the Court lacks personal jurisdiction over PIFSS and must dismiss the Complaint. *See Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021) ("[S]ubject-matter jurisdiction is not enough by itself. A court must also have personal jurisdiction over a party in order to enter a binding judgment against it.").

The Trustee bears the burden of establishing that this Court has jurisdiction over PIFSS. *See Distefano v. Carazoo N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). While the Trustee attempts to base personal jurisdiction over PIFSS on New York's long-arm statute (NY CPLR § 302) and Bankruptcy Rule 7004(f) (¶ 8),[12] he fails to meet his burden under both.

To exercise personal jurisdiction over a defendant, "due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citation omitted); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum . . . are such that he should reasonably anticipate being haled into court there."). The Complaint fails to allege facts that this Court has personal jurisdiction – general, specific, or consensual – over PIFSS.

### A.  Trustee Has Not Alleged that this Court Has General Jurisdiction

The Trustee does not, and cannot, allege that this Court has general jurisdiction over PIFSS.

---

[12]    The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016). Under CPLR § 302, the relevant forum for the defendant to have minimum contacts is New York; under Bankruptcy Rule 7004(f), the contacts are with the United States. As discussed herein, the Complaint includes allegations of New York-related contacts. Thus, under either CPLR § 302 or Bankruptcy Rule 7004(f), the analysis collapses into a constitutional one focused on whether the exercise of personal jurisdiction is consistent with due process.

General jurisdiction exists only when the defendant is "at home" in the forum, either by being incorporated under the laws of the forum or having its principal place of business there. *Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2014). It is undisputed that PIFSS is a Kuwaiti governmental agency with operations and locations only in Kuwait. (¶¶ 2, 22.)

### B. PIFSS Has Not Consented to This Court's Jurisdiction

The Trustee alleges, "[u]pon information and belief," that PIFSS "entered into a subscription agreement with Sentry under which it submitted to New York jurisdiction." (¶ 7.) To the extent the Trustee contends that this allegation establishes that PIFSS consented to this Court's jurisdiction, controlling precedent forecloses that argument. In *Fairfield Sentry Ltd. v. Migani*, the UK Privy Council held that the Subscription Agreement does not govern redemptions from Sentry and New York law inapplicable to redemptions; instead, the redemptions are governed by Sentry's Articles of Association and BVI law. [2014] UKPC 9, ¶¶ 10, 17, 20.[13]

Following *Migani*, this Court rejected the Liquidators' arguments that foreign defendants consented to personal jurisdiction in the United States simply because they signed subscription agreements with Sentry that contained New York choice of law and forum selection clauses. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Ch. 15 Case No. 10-13164, Adv. No. 10-03496, 2020 Bankr. LEXIS 2324, at *31 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (holding "Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction"). Accordingly, even if PIFSS' subscription agreement with Sentry includes a New York venue provision, such provision is not consent by PIFSS to being sued in this Court by the Trustee over claims arising out of redemption payments from Sentry

---

[13]    A copy of Sentry's Articles of Association is annexed to the Muchnik Declaration as **Exhibit E**. A copy of the *Migani* decision is annexed to the Muchnik Declaration as **Exhibit F**, which is publicly available at https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf.

under a subscription agreement to which neither BLMIS nor the Trustee is a party.

## C.  Trustee Has Not Established that this Court Has Specific Jurisdiction

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  The Supreme Court set forth two related principles for specific jurisdiction.  "First, the relationship must arise out of contacts that the '*defendant* himself' creates with the forum State."  *Id.* at 284 (emphasis in original) (citation omitted).  "Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, *not the defendant's contacts with persons who reside there*."  *Id*. at 285 (emphasis added).  The defendant's "suit-related conduct must create a substantial connection with the forum state."  *Id*. at 284; *see also SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on the relationship among the defendant, the forum, and the litigation").

The Trustee's section 550(a)(2) claim against PIFSS arises out of PIFSS' receipt of the Transfer in January 2004.  "Therefore, the jurisdictional analysis focuses on [PIFSS'] U.S. contacts related to the receipt of the [single] subsequent transfer[] at issue." *See Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018).

### 1.  Knowledge of Sentry's Purported Investment with BLMIS Does Not Satisfy the Minimum Contacts Requirements

The Trustee asserts the Court has personal jurisdiction over PIFSS based on allegations that PIFSS knowingly directed and received funds from BLMIS through PIFSS' investment with Sentry.  (¶ 6.)  These allegations do not establish personal jurisdiction in the United States.

The allegation that PIFSS, a governmental agency of a foreign government, made payments to Sentry, a foreign entity, which invested with BLMIS is not a contact between PIFSS and the United States.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417

(1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum . . . to justify an assertion of jurisdiction."). The relevant specific jurisdiction inquiry is on the "contacts that the 'defendant *himself*' creates with the forum." *Walden*, 571 U.S. at 284 (emphasis in original) (citation omitted). The Trustee has not alleged that PIFSS initiated any investment or contact directly with BLMIS, but instead vaguely contends that PIFSS "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry." (¶ 6.)

Mere knowledge by PIFSS that Sentry would or could invest money with BLMIS in New York is not a requisite minimum contact supporting personal jurisdiction over PIFSS in the U.S. The Supreme Court's opinion in *Walden* is instructive. In *Walden*, a Nevada-based plaintiff sued a Georgia defendant in a Nevada court for conduct that occurred in a Georgia airport. *See* 571 U.S. at 279–81. The defendant knew that the plaintiff had connections to Nevada and that his conduct would delay the return of the plaintiff's property to Nevada, but the Supreme Court nonetheless held it was unconstitutional to exercise personal jurisdiction over the defendant in Nevada. *Id.* at 289. As the Supreme Court explained, the foreseeability of the plaintiff's connection to the forum is irrelevant to whether there is jurisdiction in the forum state over the defendant; a contrary rule would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* The Supreme Court instead has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the *plaintiff (or third parties)* and the forum State." *Id.* at 284 (emphasis added); *see also Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987) ("The substantial connection . . . between the defendant and the forum . . . necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward*

*the forum State.*" (quotation marks omitted) (emphasis in original)).  The alleged conduct here –

that PIFSS invested with a foreign entity, which in turn invested with an entity in the United States

entity – is one step removed from the alleged conduct in *Walden*, where the defendant himself

allegedly knowingly delayed the return of the plaintiff's property to the forum.

Moreover, the outcomes in *BLI* and *BNP Paribas* do not change the analysis or support a

finding of minimum contacts based on PIFSS' purported knowledge of Sentry's investment in

New York-based BLMIS.  The basis of this Court's finding that the defendant in *BLI* was subject

to personal jurisdiction in the United States is no longer precedential authority after the Supreme

Court's subsequent decision in *Walden*.  In *BLI*, this Court held that a foreign defendant that

invested with Sentry was subject to the Court's personal jurisdiction.  *See* 480 B.R. at 515–17.

However, the Supreme Court in *Walden* established conclusively that the contacts with the forum

that matter for jurisdictional purposes are those of the *defendant*, not contacts initiated by a third

party like Sentry.  *See* 571 U.S. at 284.  In *BLI*, the Court relied on the defendant's alleged

knowledge of Sentry's investments in BLMIS.  *See* 480 B.R. at 517.  But that is exactly the type

of foreseeability argument the Supreme Court rejected in *Walden*.  *See* 571 U.S. at 289.  As the

*Walden* Court explained, basing the exercise of personal jurisdiction on the defendant's knowledge

of the plaintiffs' connections to the forum "combined with [the] conclusion that [the plaintiffs]

suffered foreseeable harm in" the forum "impermissibly allows a plaintiff's contacts with the

defendant and forum to drive the jurisdictional analysis." *Id*.  Thus, PIFSS' purported knowledge

that Sentry would invest with BLMIS is jurisdictionally irrelevant.

*BNP Paribas*, too, is easily distinguishable. There, the Court found that the complaint

alleged the defendants had significant contacts in New York because the defendants' derivatives

group, which offered customers access to BLMIS-related transactions and monitored Madoff-

related transactions, "*operated* from New York, and the subsequent transfers were *largely the result of those New York activities*." 594 B.R. at 192 (emphases added). The defendants also invested in domestic feeder funds. *See id.* at 191. By contrast, there are no allegations that PIFSS engaged in conduct in New York in connection with its redemption.

2. <u>Alleged Transfers of Funds to or from Sentry's Bank Account Do Not Satisfy the Minimum Contacts Requirement</u>

The Trustee alleges, upon information and belief, that PIFSS "wired funds to Fairfield Sentry through a bank in New York." (¶ 7.) The Complaint does not allege that the Transfer at issue was sent to a U.S. account in PIFSS' name.

Transfers through Sentry's correspondent bank account do not establish personal jurisdiction over PIFSS. As a matter of law, the mere use of a correspondent account by a foreign entity to clear transfers under a foreign contract does not confer jurisdiction in the U.S. over the foreign entity. *See Hau Yin To v. HSBC Holdings, PLC*, No. 15CV3590, 2017 U.S. Dist. LEXIS 28931, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants into New York" and "not amount[ing] to 'purposeful availment' of the laws of" the forum); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 726–27 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." (citing cases)).[14]

---

[14]    Thousands of foreign transactions totaling over $1.5 trillion are cleared in New York every day. *See Jesner v.*

The Trustee has not alleged that PIFSS maintained a bank account in the United States. The Complaint only alleges that PIFSS, upon information and belief, "wired funds to Fairfield Sentry through a bank in New York" and "invested in a structured product based on Fairfield Sentry's investment returns through Bank of New York." (¶ 7.) PIFSS is not alleged to have chosen the "bank in New York" to which funds were wired to Sentry or that it had any contact with such bank. This case is like *Spetner v. Palestine Investment Bank*, where the court declined to exercise personal jurisdiction over a foreign bank that "did not exercise control over [the] selection and use of . . . correspondent accounts in New York"; the defendant was "alleged at most to have provided payment instructions to an account holder making dollar-denominated wire transfers." 495 F. Supp. 3d 96, 116 (E.D.N.Y. 2020).[15] At most, PIFSS is alleged merely to have wired funds to Sentry, a foreign entity, through a New York bank under a foreign contract, and without any allegation concerning the Transfer. These allegations are insufficient to confer jurisdiction.

The Trustee also tries to establish this Court's jurisdiction by alleging that "PIFSS knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry." (¶ 6.) But the transfer of funds *from* a United States bank to Sentry and then onto PIFSS does not support the exercise of personal jurisdiction over PIFSS. *See O'Toole v. MyPlace Dev.*

---

*Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) ("In New York each day, on average, about 440,000" Clearing House Interbank Payments System—the system for most large banking transactions—"transfers occur, in dollar amounts totaling about $1.5 trillion."). If the incidental use of United States-based accounts conferred personal jurisdiction over foreign entities, New York would become the global forum for nearly all foreign commercial disputes, contrary to federal and state policy, merely because foreign transactions in United States currency are often cleared in New York. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459–60 (N.Y. 2014) ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *Universal Trading & Inv. Co. v. Tymoshenko*, No. 11 Civ. 7877, 2012 U.S. Dist. LEXIS 176214, at *11 (S.D.N.Y. Dec. 12, 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on a correspondent bank account." (quotation marks and citations omitted)).

[15]    The court in *Spetner* analyzed whether there was personal jurisdiction under NY CPLR § 302(a)(1), which as noted above, *supra* note 12, closely resembles the constitutional due process analysis.

*SP. Z O.O. (In re Sledziejowski)*, Ch. 7 Case No. 13-22050, Adv. No. 15-08207, 2016 Bankr.

LEXIS 3791, at *23–24 (Bankr. S.D.N.Y. Oct. 21, 2016) (finding no specific jurisdiction over

Polish entity that received funds originating from United States).   In the context of specific

jurisdiction, "the relationship must arise out of contacts that the 'defendant *himself*' creates with

the forum."  *Walden*, 571 U.S. at 284 (emphasis in original) (citation omitted); *see also SPV Osus*,

882 F.3d at 344 ("'Where the defendant has had only limited contacts with the state it may be

appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was

proximately caused by those contacts.'" (citation omitted)).   Thus, "courts have held that the mere

knowing receipt of funds in a bank account is insufficient to establish jurisdiction." *Sledziejowski*,

2016 Bankr. LEXIS 3791, at *24 (citing *Rushaid v. Pictet & Cie*, 2014 N.Y. Misc. LEXIS 3888,

at *8 (N.Y. Sup. Ct. Aug. 26, 2014) ("Th[e] passive receipt of funds do not constitute 'volitional

acts' by defendants and, as such, defendants did not avail themselves of the privilege of conducting

activities within the forum State . . . ." (internal citations and quotations omitted))).

The Trustee also alleged, "[u]pon information and belief," that PIFSS "maintained regular

contact with its FGG account representatives located in FGG's New York office."  (¶ 7.)  This

allegation is impermissibly conclusory and lacks a necessary factual foundation to make it

plausible.  A plaintiff may plead facts upon information and belief *only* "where the facts are

peculiarly within the possession and control of the defendant" or "where the belief is based on

factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe*

*3*, 604 F.3d 110, 120 (2d Cir. 2012) (citations omitted); *see also Citizens United v. Schneiderman*,

882 F.3d 374, 384–85 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief'

in front of a conclusory allegation and thereby render it non-conclusory.").  Neither circumstance

is met here.  <u>First</u>, the Trustee has not alleged facts concerning PIFSS' purported contacts with

FGG "representatives located in FGG's New York office" *peculiarly* within PIFSS' possession and control. The Trustee's broad and unlimited access to the Fairfield Funds' documents, data, and other information (*see supra* Section IV at page 7) gave him full opportunity to plead PIFSS' alleged contacts with FGG. *See Morana v. Park Hotels & Resorts, Inc.*, No. 20-CV-2797, 2021 U.S. Dist. LEXIS 58340, at *12 (S.D.N.Y. Mar. 26, 2021) (allegations based upon information and belief were insufficient where plaintiff was "evidently privy to" defendant's policy at issue). Second, the Trustee has not alleged any facts underlying the basis of his "information and belief." The Trustee has had a decade to amend the Complaint and plead facts about PIFSS' supposed "regular contact" with FGG representatives in New York and failed to do so. Without alleging any facts, the Trustee's claim "does not rise 'above the speculative level.'" *Id*. at *5 (quoting *Arista Records*, 604 F.3d at 120).

Because the Trustee did not allege that PIFSS transacted business with BLMIS, the purported contacts on which the Trustee relies are solely derivative of Sentry's contacts. Such allegations are insufficient to confer to this Court personal jurisdiction over PIFSS.

### D.  The Exercise of Personal Jurisdiction Over PIFSS Would Be Unreasonable

Even if the minimum contacts threshold were met – which it was not – the Court must next determine whether the exercise of personal jurisdiction is reasonable. *See Asahi*, 480 U.S. at 113. Courts apply a "sliding scale" to assess whether jurisdiction is consistent with due process: "'the weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction.'" *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 570 (2d Cir. 1996) (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)); *see also Porina v. Marward Shipping Co.*, No. 05 CIV. 5621, 2006 U.S. Dist. LEXIS 60535, at *17 (S.D.N.Y. Aug. 24, 2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make a stronger showing of reasonableness in order to show that

jurisdiction over the defendant is proper."). In evaluating the reasonableness of exercising personal jurisdiction, courts must consider: (1) "the burden on the defendant"; (2) "the interests of the forum" in adjudicating the case; (3) "the plaintiff's interest in obtaining relief"; (4) "'the interstate judicial system's interest in obtaining the most efficient resolution of controversies'"; and (5) "'the shared interest of the several [fora] in furthering substantive social policies.'" *Asahi*, 480 U.S. at 113 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

Because the Trustee's scant and incidental minimum contacts allegations are minimal, he must make a stronger showing that the exercise of personal jurisdiction over PIFSS would be reasonable.  But the *Asahi* reasonableness factors weigh heavily against exercising jurisdiction.

First, defending this case would unduly burden PIFSS, a Kuwaiti governmental agency located in Kuwait that has no "records, files, or witnesses with information about the litigation" in the United States.  *Metro Life Ins.*, 84 F.3d at 574.

Second, the interest of the United States in tracing the flow of funds from BLMIS is not superior to the interests of Kuwait to protect the funds PIFSS uses to pay social security benefits to deserving Kuwaitis.  The United States has no greater interest in this case than Kuwait's interest in ensuring that its social security agency is not subject to foreign litigation where there is no allegation that PIFSS engaged in any wrongdoing.  *Cf. Calder v. Jones*, 465 U.S. 783, 789 (1984) (personal jurisdiction exists where defendant allegedly committed an intentional tort "expressly aimed" at the forum state).  The Complaint simply alleges that PIFSS indirectly received funds from BLMIS without any allegation that PIFSS was complicit in the Ponzi scheme or other Madoff-related fraudulent conduct in the United States.

Third, while it may be convenient for the Trustee to litigate this case in New York, his convenience is not enough to overcome the weight of the factors against exercising jurisdiction.

The Trustee cannot show that it would be more reasonable to litigate his claim against PIFSS in New York than Kuwait, where PIFSS is located and where Kuwaiti courts could address the nation's interest in the use of its social security funds.

Finally, forcing PIFSS to defend a lawsuit halfway around the world involving records that are 20 or more years old and witnesses located in the Arabian Gulf does not further the in interests of the American judicial system to obtain efficient resolution of controversies.  This is particularly so where, like here, there is only one transfer at issue and that transfer occurred almost five years before Madoff's fraud was uncovered and BLMIS filed for bankruptcy.  Further, the United States has little interest in whether United States courts are the forum for the Trustee to recover funds from PIFSS, a victim of Madoff's Ponzi scheme.  *See generally In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011) (adopting Trustee's Net Investment Method, pursuant to which customers that are "net losers" are afforded priority over those that are "net winners").  Kuwait, on the other hand, has a strong interest in adjudicating issues concerning its social security program and the investment of the funds it uses to pay beneficiaries.  Kuwait has a stated "belief in the importance of the social care for employed citizens," and PIFSS provides essential services for the care and wellbeing of Kuwaiti citizens.  *About Us*, PIFSS, https://www.pifss.gov.kw/sites/En/pages/abouttaminat/aboutus.aspx (last visited Feb. 24, 2022); *see also* Homepage Banner, PIFSS, https://www.pifss.gov.kw/sites/En/Pages/Home.aspx (last visited Feb. 24, 2022) (PIFSS "[p]rovide[s] leading and sustainable social security services to guarantee Kuwaiti's [sic] wellbeing").

In total, PIFSS' alleged contacts with the United States arose from acts performed on foreign soil in the context of its relationship with Sentry, a foreign entity.  PIFSS could not have reasonably anticipated being haled into a United States court in connection with its *foreign* conduct

22

related to its *foreign* investments. *See World-Wide Volkswagen*, 444 U.S. at 297. Courts have

held that defendants should be dismissed in circumstances like this, where even assuming a

defendant's "contacts with [the forum] only barely satisf[y] the minimum contacts standard, . . . a

majority of the reasonableness factors weigh against the exercise of jurisdiction." *Rocky Mt.

Chocolate Factory v. Arellano*, No. 17-cv-0582, 2017 U.S. Dist. LEXIS 173159, at *30–31 (D.

Colo. Oct. 19, 2017) (citation and quotation marks omitted); *accord Benton v. Cameco Corp.*, 375

F.3d 1070, 1080 (10th Cir. 2004) (defendant's "contacts with [the forum] were quite limited,

barely satisfying the minimum contacts standard. As a result, [defendant] need not make a

particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry."

(citation omitted)); *Manko Window Sys., Inc. v. Prestik*, No. 16-2818, 2017 U.S. Dist. LEXIS

162162, at *23 (D. Kan. Sept. 29, 2017) (granting Civil Rule 12(b)(2) motion where defendant's

"contacts with [the forum] [we]re weak and because the reasonableness factors . . . counsel[ed]

against the exercise of personal jurisdiction"). The same result is warranted here as exercising

jurisdiction over PIFSS would not "comport[] with 'traditional notions of fair play and substantial

justice,'" *Metro Life Ins.*, 84 F.3d at 578, and the Complaint should be dismissed with prejudice.

### III.   The Complaint Violates Civil Rule 8(a) by Incorporating by Reference the Entire Fairfield Amended Complaint

The Complaint incorporates by reference the entirety of the FAC, a complaint filed in a

different adversary proceeding to which PIFSS is not a party. (¶ 35.) While incorporation by

reference is allowed in certain circumstances under Civil Rule 10(c), the Trustee's attempt at

wholesale incorporation of a complaint in a different case violates Civil Rule 8(a). *See* Fed. R.

Bankr. P. 7008 and 7010 (making Civil Rules 8 and 10, respectively, applicable to adversary

proceedings).

A complaint "must contain . . . a short and plain statement of the claim." Fed. R. Civ.

P. 8(a)(2).  Failure to follow this rule "places an unjustified burden on the [court] and the party who must respond to it because they are forced to ferret out the relevant material from a mass of verbiage."  Charles Wright & Arthur Miller, 5 Federal Practice & Procedure § 1281, at 522 (4th ed. 2021).  When the plaintiff does not comply with Civil Rule 8(a), the court may strike some or all of the complaint.  *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also, e.g.*, *Jones v. Nat'l Comm'cns & Surveillance Networks*, 266 F. App'x 31, 32–33 (2d Cir. 2008) (affirming dismissal of "single-spaced 58-page complaint with 87 additional pages of attachments, alleging over twenty separate causes of action against more than 40 defendants"); *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96 Civ. 3231, 2000 U.S. Dist. LEXIS 3805, at *2, *15 (S.D.N.Y. Mar. 30, 2000) (dismissing without prejudice a complaint "contain[ing] 532 allegations and 25 counts" for violating Civil Rule 8(a)).

Civil Rule 10(c) limits the authority to adopt a pleading by reference.  Courts generally have held that a pleading cannot adopt by reference pleadings from a different action.  *See, e.g.*, *NCUA Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705, 2014 U.S. Dist. LEXIS 58751, at *28 (S.D.N.Y. Apr. 28, 2014) ("There is no authority that permits Morgan Stanley to incorporate the affirmative defenses in answers filed by defendants *in other actions* into its answer in this action." (emphasis in original)); *accord Tex. Water Supply Corp. v. R. F. C.*, 204 F.2d 190, 196 (5th Cir. 1953) (explaining "there is no rule permitting the adoption of a cross-claim in a separate action in a different court by mere reference"); *Bly v. Circuit Court for Howard Cty., Md.*, No. 18-1333, 2019 U.S. Dist. LEXIS 107523, at *5 (D. Md. June 26, 2019) ("[Plaintiff's] attempt to incorporate pleadings from another case is a misuse of the incorporation privilege."); *Davis v. Bifani*, No. 07-cv-00122, 2007 U.S. Dist. LEXIS 30080, at *3 (D. Colo. Apr. 24, 2007) ("incorporat[ing] by reference wholesale the allegations in a complaint in a completely separate action . . . violates the

24

requirements of Fed. R. Civ. P. 8(a)" (internal citation omitted)); Charles Wright & Arthur Miller,

5A Federal Practice & Procedure § 1326 (4th ed. 2021) ("Although Rule 10(c) is not expressly

limited to pleadings in the same action, it has been held that allegations in pleadings in another

action, even if between the same parties, cannot be incorporated by reference.").

Even if adoption of a complaint in a different case against different defendants is permitted,

"the references to prior allegations must be direct and explicit, in order to enable the responding

party to ascertain the nature and extent of the incorporation." *United States v. Int'l

Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007) (quotation marks and citations

omitted); *see also* 2 Moore's Federal Practice - Civil § 10.04[1] (2021) ("To be effective, the

reference must be clear and specific and must specifically identify the statements incorporated. An

adoption by reference will not be allowed if vague or imprecise, or if excessive." (citations

omitted)).   To that end, the adoption "must specifically identify which portions of the prior

pleading are adopted." *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995)

(quotation marks and citation omitted).   As a result, wholesale adoption of another complaint is

not permissible.  *See Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023, 2010 U.S.

Dist. LEXIS 29267, at *12–13 (E.D.N.Y. Mar. 26, 2010) ("A Rule 10(c) adoption clause that does

little more than make wholesale reference to the contents of a prior pleading exemplifies the kind

of incorporation that fails to give the requisite guidance to the responding party." (quotation marks

and citation omitted)).   Requiring "clarity ensures fairness to the responding party, for without this

requirement incorporations may prove confusing and inconvenient." *Hinton v. Trans. Union, LLC*,

654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (quotation marks and citation omitted), *aff'd*, 382 F.

App'x 256 (4th Cir. 2010); *see also Salahuddin*, 861 F.2d at 42 ("[U]nnecessary prolixity in a

pleading places an unjustified burden on the court and the party who must respond to it because

they are forced to select the relevant material from a mass of verbiage." (quotation marks and citation omitted)).

The "risk of confusion and inconvenience is particularly high where, as here, a complaint seeks wholesale incorporation" of a pleading that an amended version has superseded. *Hinton*, 654 F. Supp. 2d at 446–47; *see also Bly*, 2019 U.S. Dist. LEXIS 107523, at *5. This is because "[i]t is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect." *In re Crysen/Montenany Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000).

Here, in a sentence buried at the end of one paragraph in the Complaint, the Trustee "incorporates by reference the allegations in the [FAC] as if fully set forth herein." (¶ 35.) This blanket incorporation by reference would expand the Complaint to include 798 paragraphs and 111 unfiled exhibits from a 223-page complaint raising 31 counts against 46 defendants, none of which is PIFSS. Even worse, the FAC is a nullity as it was superseded by an amended complaint. The Complaint also improperly incorporates by reference *all* of the FAC even though the vast majority of the FAC describes events that transpired *after* the Transfer. PIFSS is left responding to allegations outside its knowledge and well beyond the relevant period at issue in the Complaint. This is precisely "the kind of incorporation that fails to give the requisite guidance to the responding party." *Nycomed*, 2010 U.S. Dist. LEXIS 29267, at *13 (quotation marks and citation omitted). The Trustee's improper incorporation is especially troubling here because the *only* allegation concerning the avoidability of the initial transfers is by reference to the FAC: the Trustee pleaded merely that the FAC, "in part, . . . sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion." (Compl. ¶ 35.)

In sum, the Trustee failed to follow the requirements of Civil Rules 10(c) and 8(a). The

Court should dismiss the Complaint against PIFSS or, in the alternative, strike the Complaint's reference to the FAC.

### IV.     The Complaint Fails to State a Plausible Subsequent Transfer Claim

The Trustee fails to plead a subsequent transfer claim against PIFSS. "To plead a subsequent transfer claim, the Trustee must plead that the *initial* transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *BNP Paribas*, 594 B.R. at 195 (emphasis in original) (quotation marks and citation omitted). Neither element is met here. First, section 546(e) of the Bankruptcy Code bars the Trustee from avoiding the initial transfer between BLMIS and Fairfield. Second, the Trustee failed to plead that the funds for the Transfer to PIFSS originated with BLMIS. Accordingly, the Complaint should be dismissed.

#### A.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. While the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, nor "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555).

#### B.  Section 546(e) Bars Trustee from Avoiding the Initial Transfers from BLMIS to Sentry; Accordingly, PIFSS Is Not Liable as a Subsequent Transferee

The Complaint should be dismissed because the Trustee's subsequent transfer claim

against PIFSS is predicated on the Trustee first avoiding transfers BLMIS made to Sentry; however, section 546(e) of the Bankruptcy Code protects these transfers from avoidance.[16] Specifically, section 546(e) bars the Trustee from avoiding a transfer from BLMIS to Sentry if the transfer (1) "was made by or to (or for the benefit of) a" covered entity, such as a stockbroker, financial institution, or financial participant, and (2) was either a settlement payment or a transfer in connection with a securities contract.  11 U.S.C. § 546(e).[17]  As discussed below, both are met here.

Section 546(e) reflects Congress's intent to provide finality to securities transactions in order not to disrupt market stability:

> Congress struck careful balances between the need for an equitable result for a debtor and its creditors, and the need for finality. . . . [B]y enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A).

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014).  "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients— many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)."  *Id.* at 420 (citation omitted).  *See also Tribune I*, 946 F.3d at 90 ("Unwinding settled securities transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and stability are necessary to attract capital.").

The Court can dismiss a complaint pursuant to a Civil Rule 12(b)(6) motion raising an

---

[16]    Section 546(e) also preempts state law claims seeking to unwind redemptions. *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 81, 90 (2d Cir. 2019) ("*Tribune I*").

[17]    As discussed herein, *infra* Section IV.B.2 at pages 34–35, the only exception to the section 546(e) safe harbor is a fraudulent transfer claim under section 548(a)(1)(A) with a limited reach-back period of two years, which is not applicable here.

affirmative defense when such defense appears on the face of the complaint. *Picard v. Fairfield Inv. Fund, Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, Consol. Adv. No. 08-01789, Adv. No. 09-01239, 2021 Bankr. LEXIS 2101, at *23 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.). "[T]he application of Section 546(e) presents a straightforward question of statutory interpretation of the type that is appropriately resolved on the pleadings." *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Ch. 15 Case No. 10-13164, Adv. No. 10-03496, 2020 Bankr. LEXIS 3489, at *13 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield II*") (quotation marks and citation omitted)). As a purported subsequent transferee, PIFSS is entitled to raise a section 546(e) defense where, as here, the initial transferee failed to do so. *Id.* at *8 ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here where the transferee settled with the Trustee, the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds." (citation omitted)). Because BLMIS' initial transfers to Sentry are protected from avoidance by section 546(e), they cannot be recovered from PIFSS as a subsequent transferee. Accordingly, the Complaint must be dismissed.

### 1. The Alleged Initial Transfer from BLMIS to Sentry Was Made By and Also To Entities Covered Under Section 546(e)

The alleged initial transfers from BLMIS to Sentry referenced in paragraph 34 of the Complaint ("BLMIS Initial Transfers") were made "by or to (or for the benefit of)" an entity covered by section 546(e) because they were made by a stockbroker (BLMIS) and, separately, because they were made to or for the benefit of a financial institution (Sentry).

It is undisputed that BLMIS, a stockbroker, is an entity covered under section 546(e).[18] In addition, as discussed below, this Court recently held that Sentry is a "financial institution" for

---

[18] In *Picard v. Grieff (In re Bernard L. Madoff Inv. Sec. LLC)*, the District Court held that BLMIS qualified as a "stockbroker" under section 546(e):

Overall, [BLMIS], which was registered as a stockbroker with the SEC, clearly engaged in securities

purposes of section 546(e).  Though only one entity needs to be covered under section 546(e) for the safe harbor to apply, this case involves two.

**Sentry is a "Financial Institution."**  Section 101(22) defines a "financial institution" to include an entity that is a customer of a "commercial or savings bank" when such bank "is acting as agent or custodian for a customer . . . in connection with a securities contract."  11 U.S.C. § 101(22).  In *Fairfield II*, this Court recently held that Sentry and the other Fairfield Funds were "financial institutions" because (1) the Fairfield Funds were customers of Citco Bank Nederland N.V. Dublin Branch ("Citco Bank"), a bank regulated by the Central Bank of the Netherlands ("CNB") and registered with the Central Bank of Ireland ("CBI"), and (2) Citco Bank acted as the Fairfield Funds' agent in connection with the securities contracts underlying the Fairfield Funds' redemption payments to their shareholders. *See* 2020 Bankr. LEXIS 3489, at *16–20.[19]  This Court found:

> [T]he Liquidators' admission that redemptions were paid by Citco Bank establishes the necessary agency. It is implausible to infer that Citco Bank made the redemption payments to specific redeemers in specific amounts absent the [Fairfield] Funds' directions to do so.  Moreover, Citco Bank accepted those directions by executing

---

transactions. . . . [E]ven assuming the truth of the allegation that [BLMIS'] investment advisory division never traded securities on behalf of clients, [BLMIS] nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions.

476 B.R. 715, 719 (S.D.N.Y. 2012), *aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014).  On appeal, the Trustee conceded that BLMIS qualified as a stockbroker under the Bankruptcy Code. *See Fishman*, 773 F.3d at 417 ("It is not disputed that BLMIS was a 'stockbroker' for purposes of § 546(e)."); *see also* Br. for Plaintiff-Appellant Irving H. Picard, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 12-2557 (2d Cir. May 15, 2013), Dkt. 145, at i-ii, 5 (not challenging stockbroker finding on appeal).  Thus, BLMIS is a covered entity under section 546(e).

[19]    In *Fairfield II*, this Court took judicial notice of the bank registration provided on DNB's and CBI's websites. *See* 2020 Bankr. LEXIS 3489. at *17 & n.11. Citco Bank Nederland N.V. is identified as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds" according to information provided on DNB's website, *Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTDG&relationNumber=B0275 (last visited Feb. 24, 2022) and Citco Bank is classified as a "credit institution . . . whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account" according to the information provided on CBI's website, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited Feb. 24, 2022).  This Court can likewise take judicial notice of information from such public registries. *See Tribune I*, 946 F.3d at 78; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

the redemption payments. Based on the foregoing, the Funds were customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made, and the Funds were, therefore "financial institutions" within the meaning of 11 U.S.C. § 546(e).

*Id.* at *20 (footnote omitted). This Court's holding in *Fairfield II* is binding on the Trustee because (i) he was in privity with the Liquidators and (ii) the Liquidators brought their suit as fiduciaries for, among others, the Trustee.[20] Accordingly, Sentry is a covered entity under section 546(e).

Moreover, as further discussed in the *Defendant Multi-Strategy Fund Limited's Memorandum of Law in Support of Its Motion to Dismiss* [Dkt. No. 21071], at pages 7–9, the Trustee made allegations in subsequent transferee complaints (including the Complaint here) and other pleadings filed with the Court, of which this Court can take judicial notice, that Citco acted as Sentry's agent. *See Tribune I*, 946 F.3d at 79 (applying common-law meaning of agency for purposes of section 546(e)). Namely, Citco Bank acted as Sentry's custodian, and FGG personnel controlled and approved all subscriptions into and redemptions from Sentry. Thus, the same reasoning and holding in *Fairfield II* apply here.

Finally, to the extent the Complaint alleges that Sentry's redemption payment to PIFSS was tied to payments of customer property transferred from BLMIS to Sentry (which Section IV.C *infra*, shows to be implausible), the initial transfers would qualify as settlement payments by

---

[20]    Pursuant to paragraph 4 of the Picard/Fairfield Settlement Agreement that was incorporated into the Consent Judgment on which the Trustee relies (*see* Compl. ¶ 40 & *supra* Section IV at page 7), the Liquidators will pay the Trustee 15% of their net recoveries from all claims the Liquidators assert against redeemers from the Fairfield funds (included in paragraph 11's definition of "Sharing Claims") until the Trustee has been paid $1.924 billion. Paragraph 14 states that "[t]he Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims." The Trustee's and the Liquidators' agreed joint interest in any such recovered BLMIS customer property constitutes a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of the kind recognized by the Supreme Court to give rise to nonparty issue preclusion in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). Because the Trustee is in privity with the Liquidators in actions to recover alleged BLMIS customer property, such as the actions at issue in *Fairfield II*, and because the issue of Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on ground of the section 546(e) safe harbor, this Court's finding in *Fairfield II* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its subscribers is binding on the Trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) (stating requirements for issue preclusion).

Sentry (a financial institution) for the benefit of PIFSS, and therefore cannot be avoided. *See S.I.P.C. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 MC 115, 2013 U.S. LEXIS 56042, at \*45, \*48–49 (S.D.N.Y. Apr. 15, 2013) [hereinafter, "*Cohmad*"].

### 2.   The BLMIS Initial Transfers Are Covered Under Section 546(e)

The BLMIS Initial Transfers are covered under section 546(e)'s safe harbor because the Second Circuit has held that transfers from BLMIS to its account holders are protected from avoidance transfers and, separately, because the BLMIS Initial Transfers were made in connection with a securities contract.

First, in *Fishman*, the Second Circuit held that section 546(e) shielded from avoidance transfers between BLMIS and its account holders. *See* 773 F.3d at 417. The Second Circuit concluded that the documents governing BLMIS customers' accounts constituted securities contracts, and therefore the payments made to account holders fall within section 546(e). *Id.* at 418–22. In addition, the court held that payments BLMIS made to its customers separately constituted "settlement payments." *Id.* at 422–23. Each reason separately suffices to invoke the safe harbor. Finally, the Second Circuit rejected the Trustee's argument that section 546(e) did not apply because BLMIS did not actually carry out the promised securities transactions. *See id.* at 417, 419–20. Therefore, the BLMIS Initial Transfers were settlement payments and made in connection with the securities contracts between BLMIS and Sentry. Consequently, they come within the scope of section 546(e)'s safe harbor provision.

Second, the BLMIS Initial Transfers are alleged to have been paid to fund redemptions by Sentry to its investors and, hence, were made in connection with a separate securities contract between Sentry and PIFSS: Sentry's Articles of Association, pursuant to which PIFSS made its

redemption request.[21]  *See Migani*, UKPC 9, ¶ 10 ("[T]he terms of the subscriber's membership

of the Fund, which govern the redemption of its shares[] . . . are to be found in the Articles of

Association of the Fund").[22]

   The definition of "securities contract" includes "a contract for the purchase, sale, or loan

of a security," 11 U.S.C. § 741(7)(A)(i), and, as relevant here, "includes . . . redemption requests."

*Cohmad*, 2013 U.S. LEXIS 56042, at *44–45; *see also Tribune I*, 946 F.3d at 80 ("The term

'redemption,' in the securities context, means 'repurchase.'").  Section 546(e) requires only that

the initial transfer be "in connection with *a* securities contract," not in connection with a securities

contract between the debtor and the initial transferee.  11 U.S.C. § 546(e) (emphasis added);

*Cohmad*, 2013 U.S. LEXIS 56042, at *48–49; *see also Fishman*, 773 F.3d at 422 ("Section 546(e)

sets a low bar for the required relationship between the securities contract and the transfer sought

to be avoided"; "a transfer can be connected to, and can be made in relation to, multiple documents

or purposes simultaneously").  Because PIFSS' redemption request to Sentry was under Sentry's

Articles of Association, the payment of the redemption amount (i.e., the Transfer) is a settlement

payment on account of a securities contract.  *See Fairfield II*, 2020 Bankr. LEXIS 3489, at *15.

   Sentry's alleged knowledge of Madoff's fraud does not defeat the application of

section 546(e) in this case.  *Cf. Cohmad*, 2013 U.S. Dist. LEXIS. 56042, at *22.  <u>First</u>, even if

Sentry knew of Madoff's fraud and, as a result, knew BLMIS did not actually trade in securities

or make any settlement payments, there still exists a securities contract between Sentry and its

---

[21]   This Court may consider the Articles of Association in connection with this motion because, as the basis for the challenged redemption, they are integral to the Complaint. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th 147, 176 (2d Cir. 2021) ("*Tribune II*") ("Here, the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint.").

[22]   *See also Fairfield I*, 2020 Bankr. LEXIS 2324, at *31 ("However, while the Subscription Agreement governs subscriptions and refers to the Articles [of Association], the *Articles govern redemptions* and make no mention of the Subscription Agreement." (emphasis added)).

investors, including PIFSS.   In *Cohmad*, the District Court ruled that if an initial transferee

withdrew its fund from BLMIS to make a redemption payment to a subsequent transferee, then

such withdrawal would have been made in connection with a securities contract under

section 546(e):

> Take, for example, a hypothetical situation in which the Trustee alleges that a
> withdrawal of funds by an investment fund from its [BLMIS] customer account
> occurred because an investor in that fund sought redemption of its investment under
> the terms of its investment contract.   Assuming that either the investment fund or
> the investor qualifies as a financial institution or financial participant, and barring
> other circumstances that may appear on the facts of a given case, that situation
> appears to fit within the plain terms of Section 546(e): an initial transfer that was
> "made by or to (or for the benefit of) a . . . financial institution [or] financial
> participant . . . in connection with a securities contract."

*Id.* at *48–49 (footnote omitted);[23] *see also Fishman*, 773 F.3d at 420 ("Section 546(e) only

requires that a covered transfer be broadly related to a 'securities contract,' not that it be connected

to an actual securities transaction.").   As discussed above, Sentry is a financial institution and its

redemption payment to investors (like PIFSS) were made "in connection with a securities

contract."   The Complaint is devoid of any allegations that PIFSS had "actual knowledge" of

Madoff's fraud.   Thus, Sentry's purported knowledge of Madoff's fraud is irrelevant in this case.

Second, section 546(e) does not contain *any* knowledge requirement.[24]   The *only* exception

from section 546(e)'s safe harbor is a claim under section 548(a)(1)(A), which applies to transfers

within two years of the petition date and thus not implicated in this case. *See Merit Mgmt. Grp.,*

---

[23]    The District Court in *Cohmad* noted that "[t]o the extent that, for example, an initial transfer from [BLMIS] to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron [Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements." 2013 U.S. Dist. LEXIS. 56042, at *47–48 n.5.

[24]    This is an open question at the Circuit level, and PIFSS expressly preserves it.   Although the Second Circuit in *Fishman* noted that the defendants there had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have been different had that not been the case.

*LP v. FTI Consulting Inc.*, 138 S. Ct. 883, 893 (2018) (finding section 548(a)(1)(A) to be "an exception to the exception" of section 546(e)'s safe harbor).

Under section 548(a)(1)(A), only the intent of the transferor, and not the transferee, is relevant. *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005); *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 181 (2d Cir. 2021) ("Voidability under § 548(a)(1)(A) focuses on the fraudulent intent of the debtor-transferor." (footnote omitted)). Knowledge does not play a role in the definitions of "settlement payment," 11 U.S.C. § 741(8), or "securities contract," *id*. § 741(7). Where the Bankruptcy Code creates an exemption or safe harbor, and specifies exceptions, a court is not free to create additional exceptions even when doing so is motivated by a party's alleged wrongdoing. *Law v. Siegel*, 571 U.S. 415, 424–25 (2014); *accord Merit*, 138 S. Ct. at 893. Courts must adhere to "the plain meaning of the language" of the statute. *See Merit*, 138 S. Ct. at 897. A holding that the transferee's alleged knowledge defeats the safe harbor provision is inconsistent with the express language of section 546(e).

In sum, the BLMIS Initial Transfers fall squarely within section 546(e)'s safe harbor, which bars the Trustee from avoiding these transfers. As a result, the Trustee cannot sue PIFSS as a subsequent transferee of these transfers under section 550(a)(2).

### C. Trustee Fails to Plead that Funds for the Transfer Constitute BLMIS Customer Property

The Complaint fails to tie any BLMIS transfer to Sentry with the Transfer that PIFSS received. To state a subsequent transfer claim against PIFSS, the Trustee must "allege facts that support the inference that *the funds at issue originated with the BLMIS,* and contain the 'necessary vital statistics' – the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds." *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,

542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (emphasis added); *see also BNP Paribas*, 594 B.R. at 195 (same).

The Complaint fails to do this. The Trustee alleges only that BLMIS transferred billions to Sentry throughout the six-year period preceding BLMIS bankruptcy (¶¶ 34, 36) and that on one day during those six years, Sentry sent $20 million to PIFSS (¶¶ 34, 41, Ex. C). The Complaint is devoid of information tracing that single payment to PIFSS from funds BLMIS transferred to Sentry. In effect, the Trustee is asking this Court to infer that because BLMIS transferred a large amount of money to Sentry *over a long period of time – approximately $2.8 billion of which occurred after the Transfer* – Sentry's transfer to PIFSS *must* have come from BLMIS. The Complaint fails to allege any facts supporting this inference, and this speculative and conclusory pleading runs afoul of *Twombly* and *Iqbal*. The Trustee is required to plead that his claim is plausible, not merely conceivable. *Twombly*, 550 U.S. at 570. As this Court stated in *Shapiro*, barebones allegations that customer funds were transferred to the subsequent transferee do not suffice to make the claim plausible:

> The Trustee must allege facts that support the inference that the funds at issue originated with . . . BLMIS, and contain the "necessary vital statistics"—the "who, when, and how much" of the transfers to establish that an entity was a subsequent transferee of the funds. At the pleading stage, the Trustee is not required to provide a "dollar-for-dollar accounting" of the exact funds at issue. However, barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient.

542 B.R. at 119.

In *Shapiro*, the Court dismissed the Trustee's subsequent transfer claims because the allegations in his complaint did "not tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Id*. The same is true here. The Trustee failed to allege that the funds Sentry used to make the Transfer originated with BLMIS. Rather than plead facts to support his assumption that the Transfer emanated from BLMIS customer property, the Trustee pleaded

allegations similar to the deficient allegations in *Shapiro* that BLMIS transferred money to Sentry and Sentry transferred money to PIFSS without tying the Transfer to funds transferred to Sentry from BLMIS.  (*E.g.*, ¶¶ 34, 36, 41.)  In the absence of an allegation directly connecting the Transfer with funds transferred from BLMIS, the Complaint lacks any factual allegation to infer that the Transfer originated with funds from BLMIS.[25]

The Complaint's conclusory allegations that PIFSS received BLMIS customer property are not plausible.  The Complaint alleges that the first, avoidable transfer from BLMIS to Sentry occurred on May 9, 2003.  (Compl. Ex. B at 19.)  As pleaded in the Complaint and other foreign subsequent transferee complaints in these bankruptcy proceedings, between May 9, 2003 and January 21, 2004 (the date of the Transfer), *Sentry distributed approximately $450 million more than it received from BLMIS*.  Specifically, during this eight-month period, BLMIS transferred $120 million to Sentry, while Sentry transferred approximately $570 million to its redeeming shareholders, related funds and affiliates, and in deposits with BLMIS:[26]

| Date(s) | Transfers from BLMIS by Sentry | Transfers from Sentry to Third Parties And Deposits with BLMIS |
|---|---|---|
| 5/9/2003 | $      40,000,000 | |
| 5/10/2003 – 7/10/2004 | | $      63,321,389 |
| 7/11/2003 | $      55,000,000 | |
| 7/12/2003 – 7/21/2003 | | $      95,860,738 |
| 7/22/2003 | $      25,000,000 | |

---

[25]   Indeed, the Trustee stipulated to dismiss with prejudice the *same* allegations concerning the April 2003 Transfer.

[26]   The exhibits from the Trustee's adversary proceeding complaints against FGG affiliates and other subsequent transferees are annexed to the Muchnik Declaration as **Exhibits H, J, and I**.  The chart includes Sentry's deposits with BLMIS totaling $120 million during this period.  (*See* Muchnik Decl. Ex. G (attaching relevant pages from Exhibit B to the Complaint).)  Even if these deposits were removed, Sentry still transferred approximately $330 million more than it received from BLMIS.  If transfers from Sentry on January 21, 2004 (the date of the Transfer) also are excluded, Sentry transferred during that period approximately $410 million, some $290 million more than it received from BLMIS.  Finally, if transfers from Sentry to its management teams are also excluded – thus focusing *solely* on redemption payments Sentry made to third parties during the relevant period before PIFSS received the Transfer – Sentry transferred approximately $255 million, which is approximately $105 million more than it received from BLMIS.  It is indisputable that Sentry made significantly more transfers than the BLMIS Initial Transfers it purportedly received.

| Date(s) | Transfers from BLMIS by Sentry | Transfers from Sentry to Third Parties And Deposits with BLMIS |
|---|---|---|
| 7/23/2003 – 1/21/2004 | | $    413,734,146 |
| *Total:* | $    120,000,000 | $    572,916,273 |
| *Difference:* | | $    452,916,273 |

The Complaint includes no factual allegation that the BLMIS transfer on May 9, 2003 was not exhausted as of the date of the Transfer by Sentry.[27]

In the absence of pleaded facts to the contrary, the only plausible explanation for the source of the funds in the Transfer is that Sentry used funds from sources other than BLMIS to make the redemption payment to PIFSS at issue in this case. An allegation that a defendant's conduct resulted in liability will not suffice if there is an "obvious alternative explanation" for such conduct. *See Twombly*, 550 U.S. at 567 (dismissing conspiracy claim where there existed an "obvious alternative explanation" for the conduct underlying the claim); *Iqbal*, 556 U.S. at 682 (same). Indeed, the Liquidators have admitted that Sentry "made Redemption Payments directly from amounts on hand invested by other subscribers in the Funds." *See* Second Am. Compl. ¶ 5 *Fairfield Sentry Ltd., et al. v. Citco Global Custody NV (In re Fairfield Sentry Ltd.)*, Adv. No. 19-01122 (Bankr. S.D.N.Y. Nov. 1, 2021) [Dkt. 70].[28]   (*See also, e.g.*, Compl. ¶ 7 (alleging PIFSS wired its subscription funds to Sentry).)   The Trustee does not sufficiently allege, within the parameters set by *Twombly/Iqbal,* that the source of the Transfer was BLMIS customer property when the allegation is mathematically impossible. *See Kennedy v. Mondelez Glob. LLC,* No. 19-

---

[27]   Notably, PIFSS received the Transfer six months *after* Sentry withdrew funds from BLMIS, further underscoring the implausibility of the Trustee's theory that the funds for the Transfer constituted BLMIS customer property. *Cf. Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 150–51 (Bankr. S.D.N.Y. 2014) (inferring linkage where alleged "subsequent transfers took place contemporaneously or shortly after an initial transfer" or at most two or three months later).

[28]   *See also* First Am. Compl. ¶ 5 *Fairfield Sentry Ltd., et al. v. Citco Global Custody NV (In re Fairfield Sentry Ltd.)*, Adv. No. 19-01122 (Bankr. S.D.N.Y. Nov. 26, 2019) [Dkt. 19] (same); Compl. ¶ 5 *Fairfield Sentry Ltd., et al. v. Citco Global Custody NV (In re Fairfield Sentry Ltd.)*, Adv. No. 19-01122 (Bankr. S.D.N.Y. Apr. 22, 2019) [Dkt. 1] (same).

CV-302, 2020 U.S. Dist. LEXIS 124538, at *27 (E.D.N.Y. July 10, 2020) ("[W]here the allegations of a complaint are materially inconsistent with the evidence a plaintiff relies on to make those allegations, [a court] may easily conclude that plaintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss." (quotation and citation omitted)).[29]

The Trustee's failure to plead the source of funds for the Transfer is inexcusable since he has had complete and unfettered access to Sentry's books and records, along with the cooperation and assistance from the Liquidators, for over a decade, and had broad access to this information *before* filing the Complaint (*see* Fairfield Settlement Agreement ¶ 14). The Trustee's failure to plead facts tying the Transfer to customer property of BLMIS leads to the inescapable conclusion that he cannot. By not alleging facts that plausibly tie the source of the Transfer to a transfer from BLMIS to Sentry, the subsequent transfer claim against PIFSS fails and the Complaint must be dismissed. Further, because the Trustee has had complete access to the books and records of BLMIS and Sentry (and additional sources of information) to plead that the source of the funds he seeks to recover were from BLMIS, and has had ample time to do so, but failed to include this necessary element in the Complaint, the Complaint should be dismissed with prejudice and without leave to amend.

[Concluded on Following Page]

---

[29]    Although this motion outlines the transfers between and among BLMIS, Sentry and third parties during the relevant period for PIFSS, the Trustee suffers from the same, fatal flaw globally. The Trustee alleges Sentry received approximately $3 billion in BLMIS customer property in the six-year period before the bankruptcy. (¶ 36). Yet, the Trustee is suing to recover as BLMIS customer property approximately $5 billion in subsequent transfers from redeeming shareholders, as well as over $1 billion from Sentry's management.

## **CONCLUSION**

For all these reasons—namely, because the Court lacks subject matter jurisdiction under the FSIA, this Court does not have personal jurisdiction over PIFSS, the Complaint violates Civil Rule 8(a), and the Complaint fails to state a claim for relief—this Court should dismiss the Complaint against PIFSS with prejudice.

Dated: February 25, 2022
      New York, New York

**GREENBERG TRAURIG, LLP**

By: /s/ *Leo Muchnik*
Leo Muchnik
One Vanderbilt Avenue
New York, New York 10017
Telephone:    (212) 801-9200
Facsimile:    (212) 801-6400
Email:      muchnikl@gtlaw.com

Joseph P. Davis (admitted *pro hac vice*)
Alison T. Holdway (*pro hac vice* pending)
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone:    (617) 310-6204
Facsimile:    (617) 301-6001
Email:      davisjo@gtlaw.com
Email:      holdwaya@gtlaw.com

*Attorneys for Defendant The Public
Institution for Social Security*