# EXHIBIT 11

CB84LIPP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA

4            v.                          (S9)10CR228(LTS)

5   IRWIN LIPKIN,

6            Defendant.

7   ------------------------------x

                                        New York, NY
8                                       November 8, 2012
9                                       4:55 p.m.

10  Before:

11               HON. LAURA TAYLOR SWAIN

12                              District Judge

13               APPEARANCES

14  PREET BHARARA
         United States Attorney for the
15       Southern District of New York
    JULIAN J. MOORE
16  LISA A. BARONI
    MATTHEW SCHWARTZ
17       Assistant United States Attorneys

18  DAVID M. RICHMAN
    GARY REDISH
19       Attorneys for Defendant

20  ALSO PRESENT:
    Jared Thompson, Special Agent, FBI
21  Paul Takla, Special Agent, FBI
    Patrick Duffy, Special Agent, FBI
22  Lisa Chan, Pretrial Services Officer
    Rebecca Baskin, Paralegal, U.S. Attorney's Office
23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

Case 1:10-cr-00228-LTS   Document 288   Filed 12/04/15   Page 2 of 52

```
 1              (Case called)

 2              THE COURT:  Good afternoon to everybody who is in

 3    attendance here in court today; thank you for coming to court.

 4              I understand that this is Mr. Lipkin's initial

 5    appearance and that we are here today in contemplation of a

 6    waiver of indictment and a plea of guilty to a 9th superseding

 7    information in this case.  Is that correct?

 8              MR. MOORE:  Yes, your Honor.

 9              THE COURT:  First, I would address the initial

10    appearance matter.  So, Mr. Lipkin, would you please state your

11    full name.

12              THE DEFENDANT:  Irwin Lipkin.

13              THE COURT:  How old are you?

14              THE DEFENDANT:  74.

15              THE COURT:  I will now explain certain rights that you

16    have under the Constitution of the United States.  You have the

17    right to remain silent.  You need not make any statement.  Even

18    if you have already made statements to the authorities, you

19    need not make additional statements.  Any statements that you

20    do make can be used against you.

21              Do you understand these rights?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  You have the right to be released either

24    conditionally or unconditionally pending trial unless I find

25    that there are no conditions that would reasonably assure your
```

1   presence at future court hearings and the safety of the

2   community.  If the government were to ask me to detain you

3   pending trial, you are entitled to a prompt hearing on whether

4   such conditions exist.

5           Do you understand this right?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  The microphone is pretty powerful; why

8   don't you try not leaning forward but speaking as if I need to

9   hear you without the microphone and that should do it.

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  That works.

12          You have the right to be represented by an attorney

13  today and at all futures proceedings in this case.  If you are

14  unable to afford an attorney, I will appoint an attorney to

15  represent you.

16          Do you understand these rights?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Do you wish to have and are you able to

19  obtain and afford counsel on your own?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Have you retained Mr. Richman and

22  Mr. Redish to represent you?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Am I correct in understanding that you are

25  not applying to have the court appoint counsel for you?

1        THE DEFENDANT:  Yes, your Honor.

2        THE COURT:  Are you a citizen of the United States?

3        THE DEFENDANT:  Yes, your Honor.

4        THE COURT:  Mr. Richman, I am going to ask you

5   formally, am I correct in understanding that Mr. Lipkin intends

6   to waive indictment and plead guilty to superseding information

7   (S9)10CR228 today.

8        MR. RICHMAN:  You are correct, your Honor.

9        THE COURT:  Is the plea pursuant to the agreement that

10  has been signed and that has been marked Government Exhibit 1?

11       THE DEFENDANT:  It is.

12       THE COURT:  Has the executed advice of rights form

13  been marked as Court Exhibit 1?

14       MR. RICHMAN:  I don't see anything marked on that.

15       THE COURT:  The deputy indicates that she has not

16  written on it yet.  I will refer to the advice of rights form

17  as Court Exhibit 1 and we will attend to that afterward.

18       MR. RICHMAN:  We have signed it already, your Honor.

19       THE COURT:  Yes.

20       Mr. Moore, would you make a statement as to victim

21  notification in connection with today's proceedings.

22       MR. MOORE:  Yes, your Honor.

23       On Tuesday, November 6, the government published on

24  our public website the letter that your Honor endorsed the

25  prior day setting forth the charges and penalties that we

1    expect the defendant to plead guilty to today.

2            THE COURT:  Thank you.

3            Mr. Lipkin, before I accept your waiver of indictment

4    and your guilty plea, there are a number of questions that I

5    must ask you while you are under oath to assure that the waiver

6    and plea are valid.  At times, I may cover a point more than

7    once and I may cover matters that were also addressed in the

8    advice of rights form that you have seen.  If that happens, it

9    is because it is very important that you understand what is

10   happening here today.  In that connection, if you don't

11   understand something that I ask you, please say so, and I will

12   reword the question or you may speak with your attorney.

13           Do you understand that?

14           THE DEFENDANT:  Yes, your Honor.

15           (Defendant sworn)

16           THE COURT:  Would you please state your full name

17   again for the record.

18           THE DEFENDANT:  Irwin Lipkin.

19           THE COURT:  Mr. Lipkin, do you understand that you

20   have solemnly promised to tell the truth and that if you answer

21   any of my questions falsely, your false or untrue answers may

22   later be used against you in another prosecution for perjury or

23   making a false statement?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  You are 74 years old, is that correct?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1              THE DEFENDANT:  Yes, your Honor.

 2              THE COURT:  How far did you go in school?

 3              THE DEFENDANT:  I graduated with an associate's degree

 4     from Brooklyn College.

 5              THE COURT:  What field was the associate's degree in?

 6              THE DEFENDANT:  Accounting.

 7              THE COURT:  What types of work have you done since

 8     finishing your formal education?

 9              THE DEFENDANT:  I worked for Bernard L. Madoff for all

10     those years.

11              THE COURT:  For your entire career?

12              THE DEFENDANT:  Yes.

13              THE COURT:  In what capacity?

14              THE DEFENDANT:  I guess I was controller, accountant,

15     controller.

16              THE COURT:  Are you able to read, speak and understand

17     the English language well?

18              THE DEFENDANT:  Well enough.

19              THE COURT:  Are you a citizen of the United States?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  Are you now or have you recently been

22     under the care of a doctor or a psychiatrist?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  For what sort of condition?

25              THE DEFENDANT:  I have a Foley bag.  I have had
```

```
 1    pneumonia twice in the last 3 or 4 months.  I have been

 2    hospitalized twice.  I have been to therapy twice, physical

 3    therapy twice.

 4              THE COURT:  The hospitalziation and the physical

 5    therapy are for medical conditions, is that correct?

 6              THE DEFENDANT:  Yes.

 7              THE COURT:  Do any of the medical problems that you

 8    have described impair your ability to understand information or

 9    make important decisions for yourself?

10              THE DEFENDANT:  No, your Honor.

11              THE COURT:  Are you on any medication that affects

12    your ability to understand information or make important

13    decisions for yourself?

14              THE DEFENDANT:  No, your Honor.

15              THE COURT:  In the past 24 hours have you taken any

16    drugs, medicine or pills, or drunk any alcohol?

17              THE DEFENDANT:  In regards to pills and medication,

18    yes; alcohol, no.

19              THE COURT:  Was it all prescribed medication?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  Have you taken it on the prescribed

22    schedule?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  Is your mind clear today?

25              THE DEFENDANT:  Pardon me?
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1              THE COURT:  Is your mind clear today?

 2              THE DEFENDANT:  Yes, your Honor.

 3              THE COURT:  Under the circumstances are you feeling

 4    well physically today?

 5              THE DEFENDANT:  Well enough.

 6              THE COURT:  Well enough to feel comfortable proceeding

 7    with this plea today?

 8              THE DEFENDANT:  Yes, your Honor.

 9              THE COURT:  Are you represented by a lawyer here

10    today?

11              THE DEFENDANT:  Yes, your Honor.

12              THE COURT:  What is your lawyer's name?

13              THE DEFENDANT:  David Richman.

14              THE COURT:  Mr. Richman, Mr. Moore, does either of you

15    have any doubt as to Mr. Lipkin's competence to waive

16    indictment and plead guilty at this time?

17              MR. MOORE:  No, your Honor.

18              MR. RICHMAN:  No, your Honor.

19              THE COURT:  Mr. Lipkin, your attorney has informed me

20    that you want to enter a plea of guilty to a superseding

21    information charging you with certain crimes.

22              Do you want to plead guilty?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  Have you fully discussed your case with

25    your attorney, including the charges to which you intend to
```

1    plead guilty and any defenses that you may have to those

2    charges?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Have you and your attorney also discussed

5    the consequences of pleading guilty?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Are you satisfied with your attorney and

8    his representation of you?

9            THE DEFENDANT:  Yes, your Honor.

10            THE COURT:  On the basis of Mr. Lipkin's responses to

11    my questions and my observations of his demeanor, I find that

12    he is fully competent to waive indictment and enter an informed

13    plea at this time.

14            Mr. Lipkin, the document that contains the charges

15    against you is called an information.  It has been issued by

16    the United States Attorney.  You have a constitutional right to

17    be charged by an indictment rather than an information.  An

18    indictment would be a charge issued from a grand jury.

19            Do you understand that?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Mr. Richman, would you please show

22    Mr. Lipkin the waiver of indictment form.

23            Mr. Lipkin, have you signed this waiver of indictment?

24            THE DEFENDANT:  Yes, I have, your Honor.

25            THE COURT:  Before you signed it did you read it?

```
 1                THE DEFENDANT:  No, your Honor, I did not.

 2                THE COURT:  Did you discuss it with your attorney

 3     before you signed it?

 4                THE DEFENDANT:  Yes, your Honor.

 5                THE COURT:  Did you understand it before you signed

 6     it?

 7                THE DEFENDANT:  Yes, your Honor.

 8                THE COURT:  Would you read it to yourself now.

 9                THE DEFENDANT:  OK.

10                (Pause)

11                THE DEFENDANT:  I have, your Honor.

12                THE COURT:  Do you understand it?

13                THE DEFENDANT:  Yes, your Honor.

14                THE COURT:  Is that understanding consistent with the

15     discussion that you had with your attorney?

16                THE DEFENDANT:  Yes, your Honor.

17                THE COURT:  Do you understand that if you don't waive

18     indictment, the government would have to bring these charges

19     before a grand jury if it wanted to prosecute you on them and

20     the grand jury might or might not decide to indict you on them?

21                THE DEFENDANT:  Yes, your Honor.

22                THE COURT:  Do you understand that you are under no

23     obligation to waive indictment?

24                THE DEFENDANT:  Yes, your Honor.

25                THE COURT:  Do you understand that by waiving
```

1    indictment, you are giving up your right to have these charges

2    presented to the grand jury?

3                THE DEFENDANT:  Yes, your Honor.

4                THE COURT:  Do you understand what a grand jury is?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  Has anyone given you anything or

7    threatened you or made you any promises to get to you waive

8    indictment?

9                THE DEFENDANT:  No, your Honor.

10               THE COURT:  Have you seen a copy of the ninth

11   superseding document, that is, the document with the charges in

12   it that has the number (S9)10CR228 at the top?

13               THE DEFENDANT:  I am not sure, your Honor.

14               THE COURT:  Mr. Richman, would you please show it to

15   Mr. Lipkin now.  It is a document of approximately 21 pages.

16          (Pause)

17               THE DEFENDANT:  Your Honor, in looking over these

18   pages, I remember seeing them quite a while ago.

19               THE COURT:  Have you discussed these charges with your

20   attorney?

21               THE DEFENDANT:  Yes, your Honor.

22               THE COURT:  Do you feel comfortable that you

23   understand the charges against you that are detailed in that

24   information?

25               THE DEFENDANT:  Yes, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

CB84LIPP

```
 1              THE COURT:  If you want me to I can read the
 2    information out loud to you here in court.  Would you like me
 3    to read it out loud for you now?
 4              THE DEFENDANT:  Yes, your Honor.
 5              MR. RICHMAN:  No.
 6              THE DEFENDANT:  No, your Honor, I am sorry.
 7              THE COURT:  If you want me to I will; if you don't
 8    need me to I won't.
 9              THE DEFENDANT:  No.  It's OK, your Honor.
10              THE COURT:  Mr. Richman, would you make a
11    representation as to the extent and to confirm your discussion
12    of the contents of the information with Mr. Lipkin.
13              MR. RICHMAN:  Certainly, your Honor.
14              The government has supplied us with a series of drafts
15    that have emerged over a period of time.  I think Mr. Lipkin
16    may be confused by having seen a draft of a week or two or
17    three ago with the document that now appears that I received
18    from the government yesterday.  But he has seen the document.
19    We have discussed the document.  I believe he understands the
20    nature of the two charges that he is pleading guilty to and is
21    prepared to go forward at this time.
22              THE COURT:  Mr. Lipkin, is that consistent with your
23    recollection of your discussions with Mr. Richman on this
24    topic?
25              THE DEFENDANT:  Yes, your Honor.
```

```
 1              THE COURT:  I find that Mr. Lipkin's waiver of
 2     indictment is knowing and voluntary.  I accept it and I so
 3     order it.
 4              Before I accept your guilty plea, Mr. Lipkin, I am
 5     going to ask you some more questions.  These questions are
 6     intended to satisfy the court that you want to plead guilty
 7     because you are in fact guilty and that you fully understand
 8     your rights and the consequences of your plea.
 9              Now I will describe certain rights that you have under
10     the Constitution and laws of the United States.  You will be
11     giving up these rights if you plead guilty.  Please listen
12     carefully.  If you do not understand something that I am saying
13     or describing, stop me, and I or your attorney will explain it
14     more fully.
15              Under the Constitution and laws of the United States,
16     you have the right to a speedy and public trial by a jury on
17     the charges against you that are in the information.
18              Do you understand that?
19              THE DEFENDANT:  Yes, your Honor.
20              THE COURT:  Do you understand that you have the right
21     to plead not guilty and to continue to plead not guilty to each
22     of the charges?
23              THE DEFENDANT:  Yes, your Honor.
24              THE COURT:  If there were a trial, you would be
25     presumed innocent and the government would be required to prove
```

1    you guilty by competent evidence and beyond a reasonable doubt.

2    You would not have to prove that you were innocent at a trial.

3            Do you understand that?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  If there were a trial, a jury composed of

6    12 people selected from this district would have to agree

7    unanimously in order to find you guilty.

8            Do you understand that?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  If there were a trial, you would have the

11   right to be represented by an attorney at the trial and at all

12   other stages of the proceedings.  If you could not afford one,

13   an attorney would be provided to you free of cost.

14           Do you understand that?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  If there were a trial, you would have the

17   right to see and hear all of the witnesses against you and your

18   attorney could cross-examine them.  Also, you would have the

19   right to have your attorney object to the government's evidence

20   and offer evidence on your behalf if you so desired.  Also, you

21   would have the right to have witnesses required to come to

22   court to testify in your defense, and you would have the right

23   to testify yourself, but you would not be required to testify.

24           Do you understand that all that?

25           THE DEFENDANT:  Yes, your Honor.

```
 1              THE COURT:  Do you understand that if there were a
 2    trial and you decided not to testify, no adverse inference
 3    could be drawn against you based on your decision not to
 4    testify?
 5              THE DEFENDANT:  Yes, your Honor.
 6              THE COURT:  Do you understand that if you were
 7    convicted at a trial, you would have the right the appeal that
 8    verdict?
 9              THE DEFENDANT:  Yes, your Honor.
10              THE COURT:  Do you understand each and every one of
11    the rights I have asked you about?
12              THE DEFENDANT:  Yes, your Honor.
13              THE COURT:  Do you have any questions about any of
14    these rights?
15              THE DEFENDANT:  No, your Honor.
16              THE COURT:  Do you understand that by pleading guilty
17    today you will giving up each and every one of these rights?
18              THE DEFENDANT:  Yes, your Honor.
19              THE COURT:  Do you also understand that you will be
20    giving up any possible claim that your constitutional rights
21    may have been violated and that you will have no trial?
22              THE DEFENDANT:  Yes, your Honor.
23              THE COURT:  Do you understand that by pleading guilty
24    you will also have to give up your right not to incriminate
25    yourself because I will ask you questions about what you did in
```

 1  order to satisfy myself that you are guilty as charged and you

 2  will have to admit and acknowledge your guilt?

 3          THE DEFENDANT:  Yes, your Honor.

 4          THE COURT:  Do you understand that you can change your

 5  mind right now and refuse to enter a plea of guilty; you do not

 6  have to enter this plea if you do not want to for any reason?

 7          Do you understand that fully?

 8          THE DEFENDANT:  Yes, your Honor.

 9          THE COURT:  Do you still want to plead guilty?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Do you understand that Count 1 of the

12  information charges with you conspiring to commit securities

13  fraud, falsify books and records of a broker/dealer, falsify

14  books and records of an investment advisor, make false filings

15  with the United States Securities and Exchange Commission, and

16  falsify statements in relation to documents required by the

17  Employee Retirement Income Security Act of 1974 as amended,

18  which we call ERISA, and that the government accuses you in

19  this connection of violating Title 18 U.S.C. Section 371?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you understand that you are charged in

22  Count 2 of the information with making false statements in

23  relation to documents required by ERISA, in violation of

24  Section 1027 of Title 18 U.S.C. and Section 2 of Title 18?

25          THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Do you understand that the government

2      would have to prove each and every part or element of each of

3      these charges beyond a reasonable doubt at trial if you did not

4      plead guilty?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Mr. Moore, would you please explain the

7      matters that the government would have to prove if we were to

8      go to trial on the charges in the information.

9          MR. MOORE:  Yes, your Honor.

10          With regard to Count 1, the conspiracy court, in order

11     to prove this crime, the government must establish each of the

12     following elements beyond a reasonable doubt: first, that the

13     conspiracy charged in the information in fact existed, in other

14     words, that there was in fact an agreement or understanding to

15     either violate the law of the United States or to defraud the

16     United States; second, your Honor, that the defendant

17     knowingly, willingly, and voluntarily became a member of the

18     conspiracy charged; and third, that any one of the

19     conspirators, not necessarily the defendant, knowingly

20     committed at least one overt act in the Southern District of

21     New York in furtherance of the conspiracy during the life of

22     that conspiracy.

23          With regard to Count 2, your Honor, falsifying

24     statements concerning ERISA, in order to prove this crime, the

25     government must prove beyond a reasonable doubt the following

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    essential elements: first, that at the time of the alleged

2    offense, the defendant made a false statement; second, that the

3    defendant knew the statement to be false; and third, that the

4    defendant made a false statement in a document required by

5    ERISA.

6             THE COURT:  Thank you.

7             Mr. Lipkin, do you understand what the government

8    would have to prove if you did not plead guilty?

9             THE DEFENDANT:  Yes, your Honor.

10            THE COURT:  Do you understand that the maximum

11   possible penalty for the crime charged in Count 1 is 5 years of

12   imprisonment, plus a fine of the greatest of $250,000, twice

13   the gain resulting from the offense or twice the loss to other

14   people resulting from the offense, plus a $100 special

15   assessment, plus 3 years of supervised release after your term

16   of imprisonment, plus full restitution to all persons injured

17   by your criminal conduct?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  Do you understand that the maximum

20   possible penalty for the crime with which you are charged in

21   Count 2 is 5 years of imprisonment, plus a fine of the greatest

22   of $250,000, twice the gain resulting from the offense or twice

23   the loss to other people resulting from the offense, plus a

24   $100 special assessment, plus 3 years of supervised release

25   after your term of imprisonment, plus full restitution to all

1  persons injured by your criminal conduct?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Do you understand that the maximum

4  possible combined penalty for the two crimes to which you

5  propose to plead guilty is 10 years of imprisonment, plus a

6  fine of $500,000 or, if greater, the sums of the relevant

7  gains, losses and statutory amounts relating to your offenses,

8  plus full restitution to all persons injured by your criminal

9  conduct, plus a $200 mandatory special assessment, plus

10 supervised release for 3 years after your term of imprisonment.

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  I will now give you some information and

13 verify your understanding of the supervised release aspect of

14 the potential penalties.  Supervised release means that you

15 will be subject to monitoring when you are released from

16 prison.  Terms and conditions will be imposed.  If you violate

17 any of the set terms and conditions, you can be sent back to

18 prison without a jury trial.

19           If you are on supervised release and you do not comply

20 with any of the set terms and conditions, you can be sent back

21 to prison for the remainder of the term of supervised release.

22 You will you be given no credit for the time that you served in

23 prison as a result of your sentence and no credit for any time

24 spent on post-release supervision.

25           For example, if you received a prison term and then a

1    3-year term of supervised release, and after you left prison,

2    you lived up to the terms of supervised release for 2 years but

3    then you violated some term of the supervised release, you

4    could be sent back to prison for 3 whole years.

5              Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Do you also understand that if I accept

8    your guilty plea and adjudge you guilty, that adjudication may

9    deprive you of valuable civil rights, such as the right to

10   vote, the right to hold public office, the right to serve on a

11   jury, and the right to possess any kind of firearm?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Under current law there are sentencing

14   guidelines that judges must consider in determining your

15   sentence.  Has your attorney spoken to you about the sentencing

16   guidelines?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Do you understand that in determining your

19   sentence, the court must calculate the applicable sentencing

20   guidelines range and consider that range, possible departures

21   under the sentencing guidelines, and other sentencing factors

22   under Title 18 U.S.C. Section 3553(a)?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Do you understand that the court has

25   discretion while taking the guidelines into account to sentence

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
1    you to any period of imprisonment from time-served all the way

2    up to the statutory maximum of 10 years?

3             THE DEFENDANT:  Yes, your Honor.

4             THE COURT:  Do you understand that even though the

5    plea agreement includes a stipulated or agreed sentencing

6    guidelines calculation, the court will not be able to determine

7    your sentence until after a presentence report has been

8    completed by the probation department and you and the

9    government have had a chance to challenge any of the facts

10   reported by the probation office?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  Do you understand that you may have the

13   right to appeal your sentence under certain circumstances, even

14   if your plea agreement provides that you are waiving your right

15   to appeal?

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  Do you understand that if your attorney or

18   anyone else has attempted to estimate or predict what your

19   sentence will be, their estimate or prediction could be wrong?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  No one, not even your attorney or the

22   government, can or should give you any assurance of what your

23   sentence will be because your sentence cannot be determined

24   until after the probation office report is completed and I have

25   ruled on the challenges to the report and I have determined
```

1   what the appropriate sentence is.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Do you also fully understand that even if

5   your sentence is different from what your attorney or anyone

6   else told you it might be or if it is different from what you

7   expect, you will be still bound to your guilty plea and you

8   will not be allowed to withdraw your guilty plea?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Mr. Richman, would you please show

11  Mr. Lipkin page 3 of the plea agreement which is Government

12  Exhibit 1.

13             MR. RICHMAN:  I am doing that, your Honor.

14             THE COURT:  Thank you.

15             Mr. Lipkin, this agreement provides that the

16  stipulated sentencing guidelines range is 10 years of

17  imprisonment.

18             Do you understand that this stipulation does not bind

19  the court or the probation department as to the facts on which

20  it is based, as to how to apply the guidelines to the facts, or

21  as to what will be an appropriate sentence in your case?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Do you understand that I may decide to

24  impose a sentence that is different from the guidelines

25  sentence?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Are you now serving any state or federal

3    sentence or are you being prosecuted for any other crime?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  Do you understand that the superseding

6    information also includes a forfeiture allegation in which the

7    government asserts that you are required to forfeit to the

8    United States all property real and personal that constitutes

9    or is derived from proceeds traceable to the commission of the

10   crimes charged in Counts 1 and 2?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Would you look again please at the plea

13   agreement which is Government Exhibit 1.  Mr. Lipkin, have you

14   signed this agreement?

15         (Pause)

16         THE DEFENDANT:  Yes, I did sign it, your Honor.

17         THE COURT:  Did you read it before you signed it?

18         THE DEFENDANT:  I gave it a cursory look, your Honor.

19         THE COURT:  Did you discuss it thoroughly with your

20   attorney before you signed it?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Were you certain that you fully understood

23   the agreement before you signed it?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Would you like any further opportunity to

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

1   read it now?

2           THE DEFENDANT:  No, your Honor.

3           THE COURT:  The record will reflect that Mr. Lipkin

4   did look at certain pages of the agreement before making that

5   response.

6           Mr. Richman, would you please explain for the court

7   the extent of your discussions of that agreement with

8   Mr. Lipkin before today.

9           MR. RICHMAN:  Well, our discussions started as far as

10  back as when I began to represent Mr. Lipkin, explaining the

11  various consequences and alternatives and things that might

12  happen in the case.  The government initially supplied me with

13  a draft of an agreement back in the month of August when we

14  were originally going down this path.  We discussed, Mr. Lipkin

15  and I discussed the draft of that agreement at that time.  We

16  have discussed it on several occasions since then.  I believe

17  Mr. Lipkin understands the terms and conditions of this

18  agreement and what its implications and consequences are.

19          THE COURT:  Were the terms of the draft agreement or

20  agreements that you discussed consistent substantively with the

21  terms of this final agreement that has been signed?

22          MR. RICHMAN:  They did.  They do.

23          THE COURT:  You explained all these terms to

24  Mr. Lipkin.

25          MR. RICHMAN:  On several different occasions.

```
 1              THE COURT:  Mr. Lipkin, does the agreement as

 2      explained to you as you have had an opportunity to look at it

 3      today reflect accurately your complete and total understanding

 4      of the entire agreement between the government, your attorney,

 5      and you?

 6              THE DEFENDANT:  Yes, your Honor.

 7              THE COURT:  Is everything that you understand about

 8      your plea and sentence covered in the agreement as it has been

 9      explained to you and as you have been able to see today?

10              THE DEFENDANT:  Yes, your Honor.

11              THE COURT:  Has anything that you understand been left

12      out?

13              THE DEFENDANT:  No, your Honor.

14              THE COURT:  Has anyone made any promises to you other

15      than what is detailed in that plea agreement or threatened you

16      or forced you to plead guilty or enter into the plea agreement?

17              THE DEFENDANT:  No, your Honor.

18              THE COURT:  Do you understand that on pages 2 and 3,

19      this agreement includes stipulations that you agree to the

20      following facts: that the offenses involved a loss amount of

21      more than $400 million, that your offenses involved more than

22      250 victims, that your offenses involved sophisticated means,

23      that your offenses substantially endangered the solvency or

24      financial security of 100 or more victims, and that at the time

25      of the offenses, you were a registered broker or dealer or
```

 1    person associated with a broker or dealer and/or an investment

 2    advisor?

 3              THE DEFENDANT:  Yes, your Honor.

 4              THE COURT:  Do you understand that these facts affect

 5    the sentencing calculations under the sentencing guidelines?

 6              THE DEFENDANT:  Yes, your Honor.

 7              THE COURT:  Do you understand that you are under no

 8    obligation to agree with the government as to any of these

 9    facts?

10              THE DEFENDANT:  Yes, your Honor.

11              THE COURT:  Do you understand that on page 2, the

12    agreement provides that you are admitting the forfeiture

13    allegation in the information and that you agree that you must

14    forfeit to the United States property including but not limited

15    to $170 billion in United States currency as well as certain

16    property enumerated in the information?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  Do you understand that you are under no

19    obligation to make an agreement with the government as to any

20    property or amount of money that you are required to forfeit?

21              THE DEFENDANT:  Yes, your Honor.

22              THE COURT:  Do you understand that anything that you

23    do forfeit will not count against any other fine, penalty, or

24    restitution that the court may impose as part of your sentence?

25              THE DEFENDANT:  Yes, your Honor.

```
 1              THE COURT:  Mr. Richman and Mr. Moore, is it the
 2    parties' intention that a consent order of forfeiture will be
 3    prepared at some point before sentencing?
 4              MR. MOORE:  That's correct, your Honor.
 5              MR. RICHMAN:  That's my understanding, your Honor.
 6              MR. MOORE:  Your Honor, if the government could have
 7    one moment with defense counsel before we proceed.
 8              THE COURT:  Yes.
 9              (Pause)
10              MR. MOORE:  Thank you, your Honor.
11              THE COURT:  Is there anything that needs to be put on
12    the record?
13              MR. MOORE:  Nothing, your Honor.
14              THE COURT:  Thank you.
15              Mr. Lipkin, do you understand that on page 5, this
16    plea agreement provides that you are giving up or waiving your
17    right to appeal, to litigate or to challenge your sentence,
18    under Title 28 Sections 2255 and/or 2241, as well as your right
19    to seek a sentence reduction under Title 18 Section 3582(c), if
20    I sentence you to 10 or fewer years of imprisonment?
21              THE DEFENDANT:  Yes, your Honor.
22              THE COURT:  Do you understand that you are under no
23    obligation to waive your right to appeal or otherwise litigate
24    any sentence?
25              THE DEFENDANT:  Yes, your Honor.
```

```
 1            THE COURT:  Do you understand that on page 5, your

 2   agreement provides that you will not appeal any supervised

 3   release term of 3 years or less?

 4            THE DEFENDANT:  Yes, your Honor.

 5            THE COURT:  Do you understand that you are under no

 6   obligation to waive your right to appeal any supervised release

 7   term that is imposed?

 8            THE DEFENDANT:  Yes, your Honor.

 9            THE COURT:  Do you understand that on page 3, your

10   agreement provides that you will not move for a downward

11   departure under the sentencing guidelines or seek any

12   adjustment under the guidelines that is not described in the

13   plea agreement except that you can apply for a health-related

14   downward departure and you can make arguments for a lower

15   sentence under the general sentencing statute that is known as

16   Section 3553(a)?

17            THE DEFENDANT:  Yes, your Honor.

18            THE COURT:  Do you understand that you are under no

19   obligation to agree to restrictions on your right to ask for a

20   lower sentence?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  Do you understand that the plea agreement

23   provides that you will not appeal any forfeiture order of $170

24   billion or less?

25            THE DEFENDANT:  Yes, your Honor.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1              THE COURT:  Do you understand that you are under no
 2    obligation to waive your right to appeal the forfeiture order?
 3              THE DEFENDANT:  Yes, your Honor.
 4              THE COURT:  Do you still want to plead guilty pursuant
 5    to this agreement?
 6              THE DEFENDANT:  Yes, your Honor.
 7              THE COURT:  Do you understand that even if the
 8    government does not oppose or take a position on what your
 9    attorney will ask as a sentence, I am free to impose whatever
10    sentence I believe is appropriate under the circumstances and
11    the applicable law, and you will have no right to withdraw your
12    plea?
13              THE DEFENDANT:  Yes, your Honor.
14              THE COURT:  Mr. Richman, do you know of any valid
15    reason why Mr. Lipkin would prevail at trial?
16              MR. RICHMAN:  I do not, your Honor.
17              THE COURT:  Do you know of any reason why he should
18    not be permitted to plead guilty?
19              MR. RICHMAN:  No, your Honor.
20              THE COURT:  Mr. Lipkin, would you please tell me now
21    what makes you guilty of the two crimes, what you did that
22    makes you guilty of the two crimes to which you are pleading
23    guilty.
24              THE DEFENDANT:  Your Honor, I appear today pursuant to
25    an agreement with the government regarding my entering a guilty
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

| | |
|---|---|
| 1 | plea to the crimes of conspiracy and falsifying certain |
| 2 | financial records of my employer of some 35 years, the |
| 3 | securities firm formerly known as Bernard L. Madoff Investment |
| 4 | Securities.  I was Madoff's first employee starting in 1964. |
| 5 | Eventually, I became controller of Madoff Securities.  I |
| 6 | retired in 1998.  I remained on the Madoff payroll along with |
| 7 | my wife Carol to enable both of us to appear eligible for |
| 8 | continuing financial perks such as health insurance and 401K |
| 9 | benefits and in Carol's case Social Security benefits. |
| 10 | By maintaining two noshow jobs for Carol and me and my |
| 11 | filing false ERISA 5500 forms, I perpetrated criminal acts. |
| 12 | While the conduct I am pleading guilty to today |
| 13 | relates to my employment at Madoff Securities, I would like the |
| 14 | court to know that at no time before I retired was I ever aware |
| 15 | of Mr. Madoff or anyone else in the company was engaged in the |
| 16 | Ponzi scheme reported in the media. |
| 17 | My belief in Bernie Madoff's trading skills were such |
| 18 | that I encouraged my own family to invest their money in |
| 19 | accounts managed by Mr. Madoff.  In fact, my wife, my sons, and |
| 20 | my grandchildren invested and lost virtually all of their money |
| 21 | with Mr. Madoff.  As it turns out, these investments never |
| 22 | existed, and the family faces financial ruin. |
| 23 | While working for Bernie Madoff, I made accounting |
| 24 | entries in financial records that I knew were inaccurate. |
| 25 | Moreover, I knew the documents containing these false entries |

1  were to be filed with various regulatory authorities.  These

2  filings helped Mr. Madoff run the Ponzi scheme that harmed

3  thousands of people.

4         I am truly sorry that I contributed in any way to the

5  massive harm done so to many victims.

6         As Madoff's controller, I was responsible for

7  preparing and maintaining certain financial books and records,

8  which included (a) the general ledger, (b) the stock records,

9  (c) FOCUS reports, and (d) the firm's annual financial

10  statement.  I understand that the numbers in the general ledger

11  and the stock records, some of which were false, went into the

12  firm's financial, annual financial statements, which in turn

13  were sent to some customers.  The FOCUS reports were to be

14  filed with the Securities and Exchange Commission (SEC) on a

15  monthly, quarterly, and annual basis.  I knew these reports

16  were to be accurate and certified as accurate when filed.

17  Until 1998, I signed FOCUS reports that I knew to be inaccurate

18  as directed by Mr. Madoff.  By following Mr. Madoff's

19  directions, I violated the federal securities laws.

20         Sorry, your Honor.

21         I also assisted Mr. Madoff in performing internal

22  audits of the many securities positions held by him and the

23  company.

24         @@I helped Bernie Madoff create records and books, the

25  general ledger and the FOCUS reports so he could deliver

08-01789-cg smb Doc 21185-11 Filed 02/28/22 Entered 02/28/22 19:34:15 Ex. 11
Case 1:10-cv-04285-TS Document 88 Filed 12/04/12 Page 32 of 52
CB84LIPP
Pg 33 of 53

1  promised financial returns to his customers.  In a nutshell,
2  the entries typically came at the end of the financial
3  reporting period.  They were created to enable the company to
4  report particular profit and loss numbers.  I changed the P&L
5  numbers when Bernie would tell me what he wanted.
6       I made false entries in the company's books and
7  records to reflect the adjustments to the value of certain
8  securities.  At Bernie's direction, I would change the value of
9  certain securities in our records, and from time to time, as
10 directed, I entered false securities to our stock records to
11 artificially depress P&L and to impact Bernie's tax liability.
12      Bernie was frequently audited by both the IRS and the
13 New York State taxing authorities.  It was common in our
14 business.  The company's income was reported on Mr. Madoff's
15 tax returns, which I believe was inaccurate.  Since Mr. Madoff
16 directed our outside accountant how much income to report, I
17 made changes to the general ledger as Mr. Madoff instructed me.
18      During these tax audits, the books and records were
19 altered to corroborate the information that Bernie was
20 supplying to the IRS.  For example, during the IRS audit in
21 1992, at Bernie's request, I made revisions to the 1992 general
22 ledger several years after the fact so documents would appear
23 to be consistent with Bernie's tax returns.
24      I also made sham trades in our families' investment
25 accounts in November of 2001 when I called Annette Bongiorno

1    and asked her to locate a transaction to enable me to reduce my

2    long-term capital gain for that period.  She canceled the

3    original purchase of Johnson & Johnson shares after the

4    original transaction occurred.

5           In December of 2002, I again asked Annette to create

6    losses in my IA account and those of my sons'.  According to my

7    monthly statements, I learned she created backdated trades that

8    reflected purported purchases of the stock of Micron Technology

9    which resulted in the losses I sought.

10          Finally, since Carol and I were represented to be

11   employees of Madoff Securities, when we were not, the labor

12   department form 5500 was false, which violated federal law.

13   Not only was the 5500 form unlawfully provided to the

14   Department of Labor, it was also provided to the third-party

15   administrator of the Madoff health plan.

16          Thank you, your Honor.

17          THE COURT:  I have some questions for you.

18          As to the 5500 form, were you directly involved in the

19   preparation or filing of any of the forms that falsely showed

20   yourself and your wife as employees?

21          THE DEFENDANT:  To be perfectly honest with you, your

22   Honor, that was 10 or 12 years ago and I really don't remember.

23          THE COURT:  Was your wife improperly carried on the

24   5500 form while you were still controller?

25          THE DEFENDANT:  Again, I don't really remember because

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   it was so long ago.  She may have been; I am not sure.

2              THE COURT:  So what's your understanding of the

3   factual basis for your being guilty of falsifying statements in

4   relation to the 5500s or aiding and abeting that falsification?

5              You can turn talk to your attorney about this first if

6   you would like to.

7              (Pause)

8              THE DEFENDANT:  Your Honor, in discussing with my

9   attorney, I remember that, yes, she was on the 5500 at my

10  awareness.

11             THE COURT:  At what time?

12             THE DEFENDANT:  Pardon me?

13             THE COURT:  When was that that you were aware that she

14  was on the 5500s?

15             THE DEFENDANT:  It had to be probably late in the

16  1990s, because at some point in time she was on the books and

17  she actually worked there.

18             THE COURT:  Did she stop actually working there prior

19  to 1998?

20             THE DEFENDANT:  More than likely, yes, your Honor.

21             THE COURT:  Tell me a little bit why you feel it's

22  likely that it was before 1998.

23             THE DEFENDANT:  Since I was doing the books, I

24  remember paying her and what I used to do was take half of my

25  salary and give it to her on the books.  So I know that she was

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

1    on the books at that point.

2              THE COURT:  Would allocating half of your salary to

3    her have made her either ineligible for plans that were being

4    reported on the 5500s or made false the precise information

5    that was reported about her on these forms?

6              THE DEFENDANT:  Well, the problem is I don't remember

7    exactly when she stopped working.  So, at a certain point in

8    time I just kept her on the books as half of my salary, that's

9    all, and I don't remember the dates in question so far as her

10   stopping work and so forth.

11             THE COURT:  That's why I am asking you these

12   questions, because if, while she was working, what was reported

13   to the Department of Labor was correct about her being an

14   employee and, for instance, the salary basis on which her 401K

15   contributions were reported and that was true all the time that

16   you were actually doing the 5500s or supervising the 5500s,

17   then I have not yet heard a basis for making a conclusion that

18   you are guilty of Count 2 or the part of Count 1 that puts you

19   in the conspiracy to falsify 5500s.

20             So, I need you to remember that you are under oath

21   right now and I need the truth as best you can recollect it,

22   and if you don't have a recollection that puts it at that

23   specific date point, you can tell me that.  I am going to be

24   asking the government to make some representations as to the

25   evidence that it has.  But I need your best truthful

1   recollection to the extent you have it.  So you don't need to

2   speculate, you shouldn't be making anything up for me, but I

3   need to know what's in your mind and what you know.

4           THE DEFENDANT:  As I said, your Honor, probably up

5   through the early 1990s or so she was on the books and I am

6   pretty sure she was working at that time for us when she was

7   needed.  So, as some point in time I guess closer to my

8   retirement was when she probably stopped working.  I still kept

9   her on the books.

10          THE COURT:  That's when you started switching over

11  part of your salary?

12          THE DEFENDANT:  Yes.

13          THE COURT:  When you put the false information into

14  the books and records and made the changes that you were

15  talking about, did you know that the information that you were

16  putting in was false, was wrong at that time?

17          THE DEFENDANT:  Would you please repeat that.

18          THE COURT:  You told me that you changed P&L numbers,

19  that you put in stock record information that was wrong, and

20  that you knew that documents you were putting that information

21  into would be going to customers, going to the SEC under

22  certain circumstances.  When you put those numbers in at

23  Mr. Madoff's request or otherwise, did you know at the time

24  that they were wrong, that they were false?

25          THE DEFENDANT:  Yes, your Honor.

1        THE COURT:  Are you sure?  Are you sure that you knew

2   they were false?  I am asking if you are telling me the truth

3   on that.

4        THE DEFENDANT:  To my recollection, yes.

5        THE COURT:  Did you know that what you were doing was

6   wrong and illegal at that time?

7        THE DEFENDANT:  Yes, your Honor.

8        THE COURT:  Does the government wish any further

9   factual information to be addressed in Mr. Lipkin's allocution?

10       MR. MOORE:  No.  Thank you, your Honor.

11       THE COURT:  Mr. Moore, would you please summarize the

12   government's evidence against Mr. Lipkin.

13       MR. MOORE:  Yes, your Honor.

14       If this case had proceeded to trial, the government

15   would have proven beyond a reasonable doubt through witness

16   testimony, documents and other evidence, the following:

17       Mr. Lipkin was employed at BLMIS from in or about 1964

18   when he was the first outside employee hired by Bernard L.

19   Madoff.  He continued his employment through in or about 1998.

20   In his role as the controller of BLMIS, Lipkin created false

21   and misleading entries in the BLMIS general ledger and stock

22   records, as well as the supporting books and records that were

23   designed among other things to manipulate BLMIS' profit and

24   loss numbers or P&L numbers.

25       Specifically, beginning at least as early as the mid

1    1970s, Mr. Lipkin made false entries with respect to BLMIS' P&L

2    in the books and records of the firm.  On an approximately

3    monthly basis, Lipkin changed the P&L numbers at the direction

4    of Bernard Madoff.  As a result of these false entries made in

5    the BLMIS books and records by Lipkin and the BLMIS director of

6    operations Daniel Bonventre, BLMIS' general ledger, stock

7    record, FOCUS report and other documents were false and

8    misleading.  As an SEC registered broker/dealer, BLMIS was

9    required to file FOCUS reports on a monthly, quarterly, and

10   annual basis, as well as annual financial statements.

11         The information contained in the BLMIS FOCUS reports

12   and the annual financial statements concerning BLMIS's assets,

13   liabilities, revenues and expenses was derived principally from

14   information reported in the BLMIS general ledger and the stock

15   record.  The FOCUS reports and the annual financial statements

16   filed by BLMIS with regulators and provided to various BLMIS

17   investment advisory customers failed to reflect accurately the

18   P&L of BLMIS because the actual P&L numbers had been altered by

19   Lipkin, Bonventre, and others.

20         When Mr. Lipkin retired from BLMIS in or around 1998,

21   he instructed Enrica Cotellessa-Pitz on how to manipulate the

22   revenues at BLMIS in order to reach a particular P&L result and

23   allow the fraud at BLMIS to continue.

24         In addition, since in or about at least 1975, Lipkin

25   and his wife Carol maintained their own personal investment

1    advisory accounts at BLMIS.  On multiple occasions Lipkin
2    requested that Annette Bongiorno execute fake, back-dated
3    trades in his personal account and the accounts of his family
4    members.  In order to reduce Lipkin's capital gains income, at
5    his request, Bongiorno would either (1) cancel the sales of
6    shares in Lipkin's account well after those sales purportedly
7    had occurred or (2) document purported purchases of shares near
8    the monthly high price and purported sales of these shares near
9    the monthly low price weeks later.  No such trades actually
10   occurred.

11          In fact, your Honor, at paragraph 28 of the
12   information, the government has included the text of one of
13   Mr. Lipkin's written requests to Annette Bongiorno which
14   Ms. Bongiorno reflected upon.  The text of that note reads:
15   Dear Annette, please set up losses in the following accounts.
16   It then goes on to list Mr. Lipkin's accounts where he requests
17   a $125,000 loss to one account, a $40,000 loss in another
18   account, and a $30,000 loss in the final account.  The note
19   goes on to continue to read:  These are about what each will
20   need.  Thanks.  I will see you in Florida next month.  Love,
21   Irwin.

22          With regard to the noshow jobs, your Honor, Lipkin
23   arranged for he and his wife to have noshow jobs at BLMIS from
24   which they received income from a purported salary.  They
25   received healthcare benefits, 401K, and other benefits to which

1   they were not entitled.  Ms. Carol Lipkin was never an official

2   employee of BLMIS and she was never officially part of the

3   books.  There is some indication that Mr. Lipkin has a side

4   agreement with his own wife in which he would share half of his

5   salary with her.  However, at no time was Ms. Lipkin ever on

6   the official books and records of BLMIS as an employee.

7          Now, of course, after Mr. Lipkin retired in 1998, both

8   he and his wife remained employees, well, had noshow jobs at

9   BLMIS where they were reflected on the 5500 forms that were

10  sent to the Department of Labor.  As Eric Lipkin, Mr. Lipkin's

11  son, reported and previously testified when he pled guilty, he

12  reported a higher number of employees on the 5500s than in fact

13  worked at BLMIS.  So, in fact, Mr. Lipkin caused false filings

14  to be made through the 5500 forms to the Department of Labor.

15          THE COURT:  You are saying that preretirement as well,

16  that the government's representation is that the evidence would

17  show that Mrs. Lipkin was not actually an employee in the legal

18  sense of BLMIS and was reflected nonetheless as an employee on

19  the 5500s that were filed while Mr. Lipkin was the controller.

20          MR. MOORE:  That's correct, your Honor.

21          THE COURT:  Thank you.

22          Will you make those representations regarding the

23  broker/dealer and investment advisor status of the company

24  insofar as an element of the charges of falsification of the

25  records.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

| | |
|---|---|
| 1 | MR. MOORE:  Yes, your Honor.  BLMIS at all times was |
| 2 | operating as a broker/dealer.  In 2006, they officially |
| 3 | registered as an SEC investment advisor.  However, as we have |
| 4 | now learned, they have always had investment advisor accounts |
| 5 | when they were supposed to have registered with the SEC as an |
| 6 | investment advisor.  Therefore, BLMIS was also always in fact |
| 7 | acting as an investment advisor; they had just not notified the |
| 8 | proper authorities that they had been doing so. |
| 9 | THE COURT:  Thank you. |
| 10 | Mr. Lipkin, how do you now plead to the charge against |
| 11 | you in Count 1 of the information, the conspiracy count, not |
| 12 | guilty or guilty? |
| 13 | THE DEFENDANT:  Guilty, your Honor. |
| 14 | THE COURT:  How do you now plead to the charge against |
| 15 | you in Count 2 of the information, false ERISA-related filings |
| 16 | count, not guilty or guilty? |
| 17 | THE DEFENDANT:  Guilty, your Honor. |
| 18 | THE COURT:  Are you pleading guilty to each of these |
| 19 | charges because you are in fact guilty of the conduct charged? |
| 20 | THE DEFENDANT:  Yes, your Honor. |
| 21 | THE COURT:  Are you pleading guilty to each of these |
| 22 | charges voluntarily and of your own free will? |
| 23 | THE DEFENDANT:  Yes, your Honor. |
| 24 | THE COURT:  Do you admit that you are required to |
| 25 | forfeit property including money in the amount of $170 billion? |

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  Are you making this admission voluntarily

3   and of your own free will?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Mr. Richman, please show Mr. Lipkin Court

6   Exhibit 1, the advice of rights form.

7           Mr. Lipkin, have you signed this form?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Did you discuss it with your attorney

10  before you signed it?

11          THE DEFENDANT:  Yes, I did, your Honor.

12          THE COURT:  Did you read it before you signed it?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Did you understand it when you signed it?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Mr. Richman, did you also review and sign

17  Court Exhibit 1?

18          MR. RICHMAN:  I did, your Honor.

19          THE COURT:  Mr. Richman, are there any other questions

20  that you believe I should ask Mr. Lipkin in connection with

21  this plea?

22          MR. RICHMAN:  Not at this time, your Honor.

23          THE COURT:  Mr. Moore, are there any other questions

24  that the government believes I should ask in connection with

25  the plea.

```
 1              MR. MOORE:  No, your Honor.  The government just adds

 2    that BLMIS at all times was operating in the Southern District

 3    of New York.

 4              THE COURT:  Thank you.

 5              That was at the 885 Third Avenue address?

 6              MR. MOORE:  Correct.

 7              THE COURT:  Mr. Lipkin, you have acknowledged that you

 8    are guilty as charged in the information.  I find that you know

 9    your rights and that you are waiving them voluntarily.  Because

10    your plea is entered knowingly and voluntarily and is supported

11    by an independent basis in fact containing each of the

12    essential elements of each of the charged offenses, I accept

13    your guilty plea and I adjudge you guilty of the offenses

14    charged in Counts 1 and 2 of information number (S9)10CR228.

15              Mr. Richman, do you want to be present for any

16    interview of Mr. Lipkin in connection with the preparation of

17    the presentence report?

18              MR. RICHMAN:  Yes, your Honor.

19              THE COURT:  I will make that direction.

20              Sentencing date please, Ms. Eng.

21              THE DEPUTY CLERK:  Friday, March 22, 2013 at 2:00 p.m.

22              THE COURT:  Is everybody available on March 22, 2013

23    at 2:00 in the afternoon?

24              MR. MOORE:  Yes, your Honor.

25              MR. RICHMAN:  Yes, your Honor.
```

1        THE COURT:  Sentencing is set for March 22, 2013 at

2   2:00 p.m.

3        Counsel, please make sure to get any objections or

4   other comments back to probation promptly after the draft

5   presentence report is disclosed.  Mr. Moore, please make sure

6   that the government's factual statement is provided to

7   probation within the next two weeks.

8        MR. MOORE:  Yes, your Honor.

9        THE COURT:  Mr. Richman, if you have not been

10  contacted by probation to schedule an interview within the next

11  two weeks, please reach out to probation to make sure that

12  happens promptly.

13       MR. RICHMAN:  I shall.

14       THE COURT:  Counsel, please review my sentencing

15  submission procedures as published on the court's website.

16  They are also available here in hard copy in the courtroom.

17  Make sure that your submissions are compliant with those

18  procedures.

19       MR. MOORE:  Yes, your Honor.

20       MR. RICHMAN:  Yes, your Honor.

21       THE COURT:  Thank you.

22       Mr. Lipkin, the probation office will be preparing a

23  presentence report to assist me in sentencing you.  You will be

24  interviewed by the probation office.  It is important that the

25  information that you give to the probation officer be truthful

 1  and accurate.  The report is important in my decision as to

 2  what your sentence will be.  You and your attorney have a right

 3  and will have an opportunity to examine the report, to

 4  challenge and to comment on it and to speak on your behalf

 5  before sentencing.  Failing to be truthful with the probation

 6  office and the court may have an adverse effect on your

 7  sentence and may subject you to prosecution.

 8            Do you understand that?

 9            THE DEFENDANT:  Yes, your Honor.

10            THE COURT:  Thank you.

11            Do the parties have a proposal for the court as to

12  release conditions?

13            MR. MOORE:  We do, your Honor.  The parties have a

14  proposed bail package for your consideration.  The package

15  consists of a $1.5 million personal recognizance bond cosigned

16  by three financially responsible persons, secured by $250,000

17  in cash or property, and that none of that cash or property

18  could come from the proceeds of the fraud or from any

19  forfeitable funds pursuant to *Nebbia*, regular pretrial

20  supervision, travel restricted to the Southern District of New

21  York, the District of New Jersey and the District of

22  Connecticut.  Mr. Lipkin and his wife must surrender their

23  passports and submit no new applications for travel.

24            Your Honor, finally, the government would suggest that

25  these conditions be met by November 19 of this year.  The

1   government believes that this packages would be sufficient to

2   ensure the defendant's appearance and that it meets the

3   standards set forth in 3143 of the bail statute.

4           THE COURT:  Thank you.

5           Officer Chan, does the pretrial services department

6   concur in the government's recommendation of these conditions

7   as sufficient to satisfy the statutory criteria?

8           MS. CHAN:  Yes, your Honor.  Just for clarification,

9   does the government want both passports of Mr. Lipkin and his

10  wife.

11          MR. MOORE:  The government requests both passports,

12  your Honor.

13          THE COURT:  Thank you.

14          MR. RICHMAN:  We have no problem with the passports

15  issue.  We do have an issue that I think I need to address with

16  you in a few days with respect to the amount of money the

17  government is looking for to secure these bonds.  We have been

18  trying desperately to come with the assets.  Mr. Moore and

19  Ms. Baroni and I have talked about this on one or two occasions

20  before appearing here today.  I don't want to see Mr. Lipkin

21  incarcerated.  He just has been impoverished by the

22  consequences of what has gone on here.

23          So I would just like the court to give us an

24  opportunity to report back whether we can meet these conditions

25  or whether they are a little too onerous and can be modified so

1   that we can meet them and bail can then serve the purpose for

2   which it's really designed.

3          THE COURT:  Mr. Moore, do you wish to be heard further

4   on that?

5          MR. MOORE:  No, your Honor.  From the government's

6   perspective we believe the $250,000 cash or property

7   requirement should be included in the package to meet the

8   requirements of the 3143 bail statute.  These are very serious

9   crimes that Mr. Lipkin has admitted.  He still has some assets

10  available to him.  We believe $250,000 cash securement is

11  perfectly reasonable in this instance.

12         THE COURT:  Mr. Richman, do you have any objection to

13  my granting the bail, putting in place the bail package tonight

14  as outlined by Mr. Moore, including the $250,000 requirement

15  and the November 19 deadline for meeting that requirement which

16  is a week from Monday.

17         MR. RICHMAN:  The answer is I don't have any

18  principles objection to that, if I have the opportunity after

19  we scour whatever we have to scour to see what assets we can

20  put up to satisfy the requirements of this bail package.

21         THE COURT:  You have all next week and the following

22  Monday.

23         MR. RICHMAN:  I don't want to sandbag the court and

24  say woe is me, we can't do this.  I am saying we are going to

25  have a hard time if we can do it at all.  I don't want 5, 10

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   $20,000 to be the reason that we might be in violation of

2   something the government asking for the court to impose.

3           THE COURT:  I appreciate the advance notice that there

4   may be such an application.  I trust that you appreciate as

5   well that the court has been persuaded that it is appropriate

6   that there be some serious amount of security and what I have

7   heard generally now is that the $250,000 the government

8   represents is an appropriate amount and I am assuming that the

9   government believes that that ought to be a feasible amount and

10  it's not proposing that amount with the intention of making

11  that a barrier to Mr. Lipkin's ability to make bail.

12          I will listen to any application.  I will hear it in

13  terms of what you present to me.

14          MR. RICHMAN:  Thank you.

15          THE COURT:  I will consider it in the context of the

16  statute.

17          MR. RICHMAN:  Thank you, your Honor.

18          THE COURT:  I need to type up the bail disposition

19  form now.  I will read to you all what I have written on it to

20  make sure that it is accurate and acceptable to all parties.

21          MR. MOORE:  Thank you, your Honor.  With those

22  conditions, we would agree to Mr. Lipkin being released on his

23  own signature tonight.

24          THE COURT:  Thank you.

25          (Pause)


                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

```
1          MR. MOORE:  Your Honor, pretrial services officer Chan
2    has informed me that Mr. Lipkin will be supervised in the
3    district of his residence which is in New Jersey, in case your
4    Honor needs to make a notation of that.
5          THE COURT:  Officer Chan, would you prefer that I note
6    that in the conditions?
7          MS. CHAN:  Yes, please.
8          (Pause)
9          THE COURT:  Do we want to put on the record that
10   Mr. Lipkin has provided to officer Chan a passport.  Is that
11   Mr. Lipkin's own passport as opposed to his wife's.
12         MR. RICHMAN:  Correct.
13         THE COURT:  Let me read to you what I have written
14   here.  I will let Mr. Richman get back to his seat.
15         (Pause)
16         THE COURT:  This is what I have written as the bail
17   disposition:  $1.5 million PRB, personal recognizance bond,
18   with 3 FRPs, financially responsible persons, and $250,000 cash
19   or property security, parens, *Nebbia* compliant, regular
20   supervision, travel restricted to S.D.N.Y., D.N.J., D. CON.,
21   that's District of Connecticut.  Defendant and wife to
22   surrender all travel documents and no new applications.
23   Defendant may be released on own recognizance with all
24   conditions to be met by 11/19/2012.  Defendant to be supervised
25   by district of residence.
```

```
 1              Does that cover everything?

 2              MR. MOORE:  Yes, your Honor.

 3              THE COURT:  All right.  Let me print this out and I

 4    will sign 5 copies of it.

 5              (Pause)

 6              THE COURT:  Mr. Moore, you will Shepard through the

 7    magistrate clerk's office what needs to be Shepard in.

 8              MR. MOORE:  Yes, your Honor.

 9              THE COURT:  Mr. Lipkin, do you understand the

10    conditions on which you are being released?

11              THE DEFENDANT:  Yes, I do, your Honor.

12              THE COURT:  Do you understand that the consequences of

13    violating any of those conditions can be severe?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  Do you also understand that if you fail to

16    return to my courtroom for sentencing on the date and time set,

17    you will be guilty of the criminal act for which you could be

18    sentenced to imprisonment separate and apart from and in

19    addition to any other sentence that you might receive for the

20    crimes to which you have just pled guilty?

21              THE DEFENDANT:  Yes, your Honor.

22              THE COURT:  Then I fully expect to see you on the date

23    of sentencing.

24              Ms. Eng, is there a paper that Mr. Lipkin will have to

25    take to the probation in order to commence the process of
```

```
 1  preparing the presentence report?

 2              THE DEPUTY CLERK:  Yes.

 3              THE COURT:  Probation is currently on the 5th floor of

 4  this building, is that correct?

 5              THE DEPUTY CLERK:  Yes.

 6              THE COURT:  I don't know if they are still around this

 7  evening, but promptly, Mr. Lipkin, you will need to go to our

 8  probation department with the paper that Ms. Eng will be giving

 9  you to set up the paperwork.  Do you understand that?

10              THE DEFENDANT:  Yes, your Honor, but I do have a

11  problem and that's travel.  I am not at this moment able to

12  drive and neither can my wife.

13              THE COURT:  Ms. Eng, please call the number to see if

14  anybody is in probation now.

15              (Pause)

16              THE COURT:  Due to the storm people are in places

17  other than where they usually are.

18              (Pause)

19              THE COURT:  Mr. Moore, may I ask your assistance in

20  working with Mr. Richman and probation to see whether the

21  interviews can be done at Mr. Lipkin's home or by telephone.

22              MR. MOORE:  We will work with counsel, yes, your

23  Honor.

24              THE COURT:  Thank you; I appreciate that.

25              MR. RICHMAN:  We will do so, your Honor.
```

1                    THE COURT:  All right.  Is there anything else that we

2        all need to take up together this evening?

3                    MR. MOORE:  No, your Honor.  Thank you.

4                    MR. RICHMAN:  No, your Honor.

5                    THE COURT:  Thank you all.

6                    Thank you officer Chan.

7                    Safe travel and good health.

8                    We are adjourned.

9                                        -  -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25