# EXHIBIT 12

166dlipp

PLEA

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                         S3 10 Cr. 228 (LTS)

5  ERIC S. LIPKIN,

6              Defendant.

7  ------------------------------x

8
                                          June 6, 2011
9                                         11:11 a.m.

10
   Before:
11
                   HON. LAURA TAYLOR SWAIN,
12
                                          District Judge
13

14                       APPEARANCES

15 PREET BHARARA
        United States Attorney for the
16      Southern District of New York
   BY:  JULIAN MOORE
17      LISA A. BARONI
        MATTHEW SCHWARTZ
18      Assistant United States Attorneys

19 JAMES K. FILAN
        Attorney for Defendant
20

21        - also present -

22 SA Paul Takla, FBI
   SA Greg Hagarty, FBI
23 Natasha Ramesar, Pretrial Services Officer

24

25

166dlipp

PLEA

1      THE CLERK:  I call the case, United States of America

2   versus Eric Lipkin.

3      MR. MOORE:  Good morning, your Honor.  Julian Moore

4   for the government.  With me are my colleagues Lisa Baroni and

5   Matthew Schwartz, of the U.S. Attorney's office, along with

6   Special Agents Greg Hagarty and Paul Takla, of the FBI, and

7   Natasha Ramesar of the United States Pretrial Services.

8      THE COURT:  Good morning, Mr. Moore, Ms. Baroni and

9   Mr. Schwartz, Agent Hagarty, Agent Takla, and Officer Ramesar.

10      MR. FILAN:  Good morning, your Honor.  James K. Filan,

11   counsel on behalf of Mr. Lipkin, who is seated at the table

12   next to me.

13      THE COURT:  Good morning, Mr. Filan.  Good morning,

14   Mr. Lipkin.

15      And, again, good morning all of you who have attended

16   today.

17      Is this Mr. Lipkin's first appearance?

18      MR. FILAN:  Yes, it is, your Honor.

19      THE COURT:  All right.  Well, then, let's deal with

20   the advice of rights matters first.

21      Mr. Lipkin, would you please stand.

22      Please state your full name.

23      THE DEFENDANT:  Eric Lipkin.

24      THE COURT:  How old are you, sir?

25      THE DEFENDANT:  37.

3

166dlipp

PLEA

1       THE COURT:  I will now explain certain rights that you

2   have under the Constitution of the United States.

3       You have the right to remain silent.  You need not

4   make any statement.  Even if you have already made statements

5   to the authorities, you need not make any additional

6   statements.  Any statements that you do make can be used

7   against you.

8       Do you understand these rights?

9       THE DEFENDANT:  Yes, I do.

10      THE COURT:  You have the right to be released either

11  conditionally or unconditionally pending trial unless I find

12  that there are no conditions that would reasonably assure your

13  presence at future court hearings and the safety of the

14  community.  If the government were to ask me to detain you

15  pending trial, you are entitled to a prompt hearing on whether

16  such conditions exist.

17      Do you understand this right?

18      THE DEFENDANT:  Yes, I do.

19      THE COURT:  Are you a citizen of the United States?

20      THE DEFENDANT:  Yes, I am.

21      THE COURT:  You have the right to be represented by an

22  attorney today and at all future proceedings in this case, and

23  if you are unable to afford an attorney, I will appoint an

24  attorney to represent you.  Do you understand these rights?

25      THE DEFENDANT:  Yes, I do.

4

166dlipp

PLEA

1        THE COURT:  Do you wish to have and are you able to

2    obtain and afford counsel on your own?

3        THE DEFENDANT:  Yes, I am.

4        THE COURT:  Have you retained Mr. Filan to represent

5    you?

6        THE DEFENDANT:  I have.

7        THE COURT:  And it is your desire to proceed in these

8    matters with Mr. Filan as your retained counsel?

9        THE DEFENDANT:  Yes.

10       THE COURT:  And I am informed that -- Mr. Filan

11   informed that Mr. Lipkin has an application to waive indictment

12   and enter a guilty plea to the six-count Superseding

13   Information that is labeled S3 10 Criminal 228.

14       Is that correct?

15       MR. FILAN:  That is correct, your Honor.

16       THE COURT:  And this plea is pursuant to the agreement

17   that has been marked as Government Exhibit 1, and is at defense

18   table now?

19       MR. FILAN:  That is correct, your Honor.

20       THE COURT:  And you and Mr. Lipkin have also reviewed

21   and signed the advice of rights form that has been marked as

22   Court Exhibit 1.

23       MR. FILAN:  We have, your Honor.

24       THE COURT:  Thank you.  I have a question for

25   Mr. Moore at this point.

5

166dlipp

PLEA

1    Mr. Moore, would you please make a statement for the

2    record as to the government's victim notification activities in

3    connection with this matter.  I note that the courtroom is full

4    and that I signed an order requiring certain information be

5    posted on the website, but perhaps you can bring us up to date.

6    MR. MOORE:  Yes, your Honor.

7    Last week we issued a letter to your attention

8    requesting that we make public that this proceeding will be

9    occurring today, namely, that Mr. Lipkin will be pleading to a

10   superseding S3 Information to the counts, which we will go

11   through today.  We also requested that we be able to post this

12   announcement on the U.S. Attorney's Madoff website.

13   Your Honor kindly ordered -- so ordered that letter on

14   Thursday, and those conditions did happen as of that date.

15   THE COURT:  Thank you.

16   Now, I had received a call indicating that there was

17   one victim who wished to be heard today.  This morning we

18   received a further message that that person is unable to attend

19   court today.

20   Is the government aware of any victims who are here

21   present today who wish to be heard?

22   MR. MOORE:  We are not, your Honor.  However, we are

23   aware that your deputy, Ms. Ng, did make a sign-up sheet

24   available, but we do not believe anyone signed that sheet.

25   THE COURT:  It's my understanding that no one has

166dlipp
6

PLEA

1    signed on the sheet.

2         Is there anyone here who does wish to be heard?

3         (Pause)

4         All right.  We will proceed, then.

5         Mr. Lipkin, before I accept your Waiver of Indictment

6    and your guilty plea, there are a number of questions that I

7    must ask you while you are under oath to assure that it is a

8    valid waiver and plea.  At times I may cover a point more than

9    once, and I may cover matters that were also addressed in the

10   advice of rights form that you have seen.  But if I do so, that

11   is because it is very important that you understand what is

12   happening here today.

13        If you don't understand something that I ask you,

14   please say so and I will reword the question or you may speak

15   with your attorney.  Do you understand that?

16        THE DEFENDANT:  I do.

17        THE COURT:  Ms. Ng, would you please administer the

18   oath.

19        THE CLERK:  Please raise your right hand.

20        (The defendant was sworn)

21        THE COURT:  Would you please state your full name for

22   the record.

23        THE DEFENDANT:  Eric Scott Lipkin.

24        THE COURT:  Mr. Lipkin, do you understand that you

25   have solemnly promised to tell the truth, and that if you

166dlipp

PLEA

1    answer any of my questions falsely, your false or untrue

2    answers may later be used against you in another prosecution

3    for perjury or making a false statement?

4            THE DEFENDANT:  I do.

5            THE COURT:  You can be seated for the next portion of

6    the proceeding.

7            You indicated that your age is 37, is that correct?

8            THE DEFENDANT:  Yes.

9            THE COURT:  How far did you go in school?

10           THE DEFENDANT:  I graduated from Ramapo College.

11           THE COURT:  In what field of study?

12           THE DEFENDANT:  Economics.  I also have an associates

13   degree in finance.

14           THE COURT:  Are you able to speak, read and understand

15   the English language well?

16           THE DEFENDANT:  Yes.

17           THE COURT:  And you are a citizen of the United

18   States?

19           THE DEFENDANT:  I am.

20           THE COURT:  Are you now or have you recently been

21   under the care of a doctor or a psychiatrist?

22           THE DEFENDANT:  No.

23           THE COURT:  Have you ever been treated or hospitalized

24   for any mental illness or for any type of addiction, including

25   drug or alcohol addiction?

166dlipp

PLEA

1           THE DEFENDANT:  No.

2           THE COURT:  Have you ever been addicted to any drugs

3      or alcohol?

4           THE DEFENDANT:  No.

5           THE COURT:  In the past 24 hours, have you taken any

6      drugs, medicine, or pills, or have you drunk any alcohol?

7           THE DEFENDANT:  No.

8           THE COURT:  Is your mind clear today?

9           THE DEFENDANT:  It is.

10          THE COURT:  Are you feeling well physically today?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Are you represented by a lawyer here

13     today?

14          THE DEFENDANT:  I am.

15          THE COURT:  What is your attorney's name?

16          THE DEFENDANT:  James Filan.

17          THE COURT:  Mr. Filan, Mr. Moore, does either of you

18     have any doubt as to Mr. Lipkin's competence to waive

19     indictment and enter a plea at this time?

20          MR. MOORE:  No, your Honor.

21          MR. FILAN:  I have no knowledge.  He should be able

22     to, yes, your Honor.

23          THE COURT:  Thank you.  You have no knowledge of any

24     reason for me --

25          MR. FILAN:  I have no reason to believe that he is

166dlipp
PLEA

1   unable to enter a plea.  I'm sorry.

2        THE COURT:   Thank you.

3        Mr. Lipkin, your attorney has informed me that you

4   wish to waive indictment and enter a plea of guilty to an

5   information.  Do you wish to waive indictment and enter a

6   guilty plea?

7        THE DEFENDANT:   Yes.

8        THE COURT:  Have you fully discussed your case with

9   your attorney, including the charges to which you intend to

10   plead guilty and any possible defenses you may have to those

11   charges?

12        THE DEFENDANT:   I have.

13        THE COURT:   Have you and your attorney also discussed

14   the consequences of entering a guilty plea?

15        THE DEFENDANT:   Yes, we have.

16        THE COURT:  Are you satisfied with your attorney and

17   his representation of you?

18        THE DEFENDANT:   I am.

19        THE COURT:   On the basis of Mr. Lipkin's responses to

20   my questions and my observations of his demeanor, I find that

21   he is fully competent to enter an informed plea at this time

22   and to waive indictment.

23        Before I accept your plea, sir, I am going to ask you

24   many so more questions.  These questions are intended to

25   satisfy the Court that you wish to plead guilty because you are

166dlipp

PLEA

1    in fact guilty and that you fully understand your rights and

2    the consequences of your plea.  I am now going to describe to

3    you certain rights that you have under the Constitution and

4    laws of the United States.  You will be giving up these rights

5    if you enter a guilty plea.  Please listen carefully.  If you

6    do not understand something that I'm saying or describing, stop

7    me and I or your attorney will explain it more fully.

8         Under the Constitution and laws of the United States,

9    you have the right to a speedy and public trial by a jury on

10   the charges against you that are set out in the Information.

11        Do you understand that.

12        THE DEFENDANT:  I do.

13        THE COURT:  Do you understand that you have the right

14   to plead not guilty and to continue to plead not guilty?

15        THE DEFENDANT:  I do.

16        THE COURT:  If there were a trial, you would be

17   presumed innocent and the government would be required to prove

18   you guilty by competent evidence and beyond a reasonable doubt.

19   You would not have to prove that you were innocent at a trial.

20   Do you understand that?

21        THE DEFENDANT:  I do.

22        THE COURT:  If there were a trial, a jury composed of

23   12 people selected from this district would have to agree

24   unanimously in order to find you guilty.  Do you understand

25   that?

166dlipp
PLEA

1        THE DEFENDANT:  I do.

2        THE COURT:  If there were a trial, and at all stages

3    leading up to it, you would have the right to be represented by

4    an attorney, and if you could not afford one, an attorney would

5    be provided to you free of cost.  Do you understand that?

6        THE DEFENDANT:  I do.

7        THE COURT:  If there were a trial, you would have the

8    right to see and hear all of the witnesses against you and your

9    attorney could cross-examine them.  You would also have the

10   right to have your attorney object to the government's evidence

11   and offer evidence on your behalf, if you so desired.  In

12   addition, you would have the right to have witnesses required

13   to come to court to testify in your defense, and you would have

14   the right to testify yourself but you would not be required to

15   testify.

16       Do you understand all of that?

17       THE DEFENDANT:  I do.

18       THE COURT:  Do you understand that if there were a

19   trial and you decided not to testify, no adverse inference

20   could be drawn against you based on your decision not to

21   testify?

22       THE DEFENDANT:  Yes.

23       THE COURT:  Do you understand that if you were

24   convicted at a trial, you would have the right to appeal that

25   verdict?

166dlipp

PLEA

1        THE DEFENDANT:  Yes.

2        THE COURT:  Do you understand each and every one of

3    these rights that I've asked you about?

4        THE DEFENDANT:  I do.

5        THE COURT:  Do you have any questions about any of

6    these rights?

7        THE DEFENDANT:  No, I do not.

8        THE COURT:  Do you understand that by entering a

9    guilty plea today you will be giving up each and every one of

10    these rights?

11        THE DEFENDANT:  I do.

12        THE COURT:  Do you also understand that you will be

13    giving up any possible claim that your constitutional rights

14    may have been violated?

15        THE DEFENDANT:  I do.

16        THE COURT:  And do you understand that you will have

17    no trial if you plead guilty?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Do you understand that by entering a

20    guilty plea, you will also have to give up your right not to

21    incriminate yourself because I will ask you questions about

22    what you did in order to satisfy myself that you are guilty as

23    charged and you will have to admit and acknowledge your guilt?

24        THE DEFENDANT:  Yes.

25        THE COURT:  Do you understand that you can change your

166dlipp

PLEA

1    mind right now and refuse to enter a plea of guilty?  You do

2    not have to enter this plea if you do not want to for any

3    reason.  Do you understand this fully?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Do you still wish to plead guilty?

6            THE DEFENDANT:  I do.

7            THE COURT:  The document that contains the charges to

8    which you've indicated you wish to plead guilty is called an

9    information.  It has been issued by the United States Attorney.

10   You have a constitutional right to be charged by an indictment

11   rather than an information.  An indictment would be a charge

12   issued from the grand jury.  Do you understand that?

13           THE DEFENDANT:  I do.

14           THE COURT:  Mr. Filan, would you please show

15   Mr. Lipkin the Waiver of Indictment form.

16           (Pause)

17           Mr. Lipkin, have you signed this Waiver of Indictment?

18           THE DEFENDANT:  I have.

19           THE COURT:  Did you read it before you signed it?

20           THE DEFENDANT:  I did.

21           THE COURT:  You did discuss it with your attorney

22   before you signed it?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Did you understand it before you signed

25   it?

166dlipp
PLEA

1          THE DEFENDANT:  Yes, I did.

2          THE COURT:  Do you understand that if you do not waive

3   indictment, if the government wished to prosecute you on these

4   particular charges that are in the Information, the government

5   would have to present the case to the grand jury, which might

6   or might not indict you on those charges?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that you are under no

9   obligation to waive indictment?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Do you understand that by waiving

12  indictment, you are giving up your right to have the case

13  presented to the grand jury?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Do you understand what a grand jury is?

16         THE DEFENDANT:  I do.

17         THE COURT:  Did anyone make any threats or promises to

18  get you to waive indictment?

19         THE DEFENDANT:  No, they did not.

20         THE COURT:  Have you seen a copy of the Third

21  Superseding Information that has the word "Information" at the

22  top and the number S3 10 Cr. 228 on it?

23         THE DEFENDANT:  I did.

24         THE COURT:  Have you read it?

25         THE DEFENDANT:  Yes.

166dlipp

PLEA

1          THE COURT:  Have you discussed it with your attorney?

2          THE DEFENDANT:  Yes, we have.

3          THE COURT:  Do you understand the charges against you

4     that are detailed in the Information?

5          THE DEFENDANT:  I do.

6          THE COURT:  If you would like, I can read the

7     Information out loud now here in court to you.  Do you want me

8     to read it out loud to you?

9          THE DEFENDANT:  No.

10          THE COURT:  I find that Mr. Lipkin's Waiver of

11    Indictment is knowing and voluntary.  I accept it and I so

12    order it.

13          Mr. Lipkin, do you understand that Count One of the

14    Superseding Information charges you with violating Section 371

15    of Title 18 of the United States Code by participating in a

16    conspiracy to, one, violate 15 United States Code, Sections

17    78q(a) and 78ff and Title 17 of the Code of Federal

18    Regulations, Section 240.17a-3 by falsifying books and records

19    of a broker-dealer, as well as conspiring to violate Title 15

20    of the United States Code, Sections 80b-4 and 80b-17 and 17

21    C.F.R., Section 275.204-2 by falsifying books and records of an

22    investment advisor, and also conspiring to violate Title 18 of

23    the United States Code, Sections 1027 and 2 by falsifying

24    statements to facilitate the theft concerning ERISA, that being

25    the Employee Retirement Income Security Act?

166dlipp

PLEA

1        THE DEFENDANT:  Yes.

2        THE COURT:  Do you understand that Count Two of the

3   Superseding Information charges you with violating Title 18 of

4   the United States Code, Section 371 by participating in a

5   conspiracy to violate Title 18, Section 1344, by defrauding a

6   financial institution, the deposits of which were then insured

7   by the Federal Deposit Insurance Corporation?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Do you understand that Count Three of the

10  Superseding Information charges you with falsifying books and

11  records of a broker-dealer, in violation of 15 United States

12  Code, Sections 78q(a) and 78ff; 17 of the Code of Federal

13  Regulations, Section 240.17a-3; and Title 18 of the United

14  States Code, Section 2?

15       THE DEFENDANT:  Yes.

16       THE COURT:  Do you understand that Count Four of the

17  Superseding Information charges you with falsifying books and

18  records of an investment advisor, in violation of Title 15 of

19  the United States Code, Sections 80b-4 and 80b-17; 17 Code of

20  Federal Regulations, Section 275.204-2; and Title 18 of the

21  United States Code, Section 2?

22       THE DEFENDANT:  Yes.

23       THE COURT:  Do you understand that Count Five of the

24  Superseding Information charges you with making false

25  statements to facilitate a theft concerning ERISA, in violation

17

166dlipp

PLEA

1    of 18 United States Code, Sections 1027 and 2?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And do you understand that Count Six of

4    the Superseding Information charges you with committing bank

5    fraud with respect to a federally insured bank, in violation of

6    Title 18 of the United States Code, Sections 1344 and 2?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that the government

9    would have to prove each and every part or element of each of

10   these charges beyond a reasonable doubt at trial if you did not

11   plead guilty?

12             THE DEFENDANT:  I do.

13             THE COURT:  Mr. Moore, would you please explain for

14   the record the elements that the government would have to prove

15   if you were to go to trial on these charges?

16             MR. MOORE:  Certainly, your Honor.

17             With regard to Counts One and Two, the conspiracy

18   counts, in order to prove the crime of conspiracy, the

19   government must establish each of the following elements beyond

20   a reasonable doubt:

21             First, that the conspiracy charged in the Information

22   existed, in other words, that there was in fact an agreement or

23   understanding to violate the laws of the United States;

24             Second, your Honor, that the defendant knowingly,

25   willingly and voluntarily became a member of the conspiracy

166dlipp
PLEA

1    charged;

2              And, third, that any one of the conspirators, not

3    necessarily the defendant, knowingly committed at least one

4    overt act in the Southern District of New York in furtherance

5    of the conspiracy during the life of that conspiracy.

6              With regard to Count Three, your Honor, falsifying

7    broker-dealer books and records, in order to prove this crime,

8    the government must prove beyond a reasonable doubt the

9    following elements:

10             First, that at the time of the alleged offense,

11   Bernard L. Madoff Investment Securities, otherwise known as

12   "BLMIS," was a registered broker;

13             Second, that BLMIS failed to make and keep certain

14   accurate records, as required under the SEC's rules and

15   regulations;

16             Third, that the defendant aided and abetted BLMIS'

17   failure to make and keep accurate records; and

18             Fourth, that the defendant acted knowingly and

19   willfully.

20             With regard to Count Four, your Honor, falsifying

21   books and records of an investment advisor, the government must

22   prove beyond a reasonable doubt:

23             First, that at the time of the alleged offense BLMIS

24   was an investment advisor; second, that BLMIS failed to make

25   and keep certain accurate records as required under the SEC's

166dlipp

PLEA

 1   rules and regulations; third, that the defendant aided and

 2   abetted BLMIS' failure to make and keep accurate records;

 3   fourth, that the defendant acted knowingly and willfully; and,

 4   fifth, the offense involved the use of the mails and means and

 5   instrumentalities of interstate commerce.

 6        With regard to Count Five, falsifying statements to

 7   facilitate a theft concerning ERISA, in order to prove this

 8   crime the government must demonstrate beyond a reasonable doubt

 9   that, first, that at the time of the alleged offense, the

10   defendant made a false statement; second, that the defendant

11   knew the statement to be false; and, third, that the defendant

12   made a false statement in a document required by ERISA.

13        Finally, your Honor, with regard to Count Six, bank

14   fraud, in order to prove this crime beyond a reasonable doubt,

15   the government must demonstrate, first, that at the time of the

16   alleged offense the defendant executed or attempted execute a

17   scheme or artifice to defraud a bank, or that the defendant

18   execute or attempted to execute a scheme or artifice to obtain

19   money owned by or under the custody or control of that bank by

20   means of false or fraudulent pretense, representations or

21   promises; second, your Honor, the defendant engaged in a scheme

22   or artifice knowingly and willfully and with the specific

23   intent to defraud the bank; and, third, that the bank involved

24   was a federally chartered or insured financial institution.

25        THE COURT:  Thank you.

166dlipp

PLEA

1      Mr. Lipkin, do you understand the matters that the

2  government would have to prove if you did not plead guilty?

3      THE DEFENDANT:  Yes, I do.

4      THE COURT:  Do you understand that the maximum

5  possible penalty for the crime with which you are charged in

6  Count One is five years of imprisonment, plus a fine of the

7  greatest of $250,000, twice the gain resulting from the offense

8  or twice the loss to other people resulting from the offense,

9  plus a $100 special assessment, plus full restitution to all

10  persons injured as a result of your criminal conduct, plus

11  three years of supervised release after your term of

12  imprisonment?

13      THE DEFENDANT:  I do.

14      THE COURT:  Do you understand that the maximum

15  possible penalty for the crime with which you are charged in

16  Count Two is five years of imprisonment, plus a fine of the

17  greatest of $250,000, twice the gain resulting from the offense

18  or twice the loss to other people resulting from the offense,

19  plus a $100 special assessment, plus full restitution to all

20  persons injured as a result of your criminal conduct, plus

21  three years of supervised release after your term of

22  imprisonment?

23      THE DEFENDANT:  I do.

24      THE COURT:  Do you understand that the maximum

25  possible penalty for the crime with which you are charged in

166dlipp
PLEA

1   Count Three is 20 years of imprisonment, plus a fine of the

2   greatest of $5 million, twice the gain resulting from the

3   offense or twice the loss to other people resulting from the

4   offense, plus a $100 special assessment, plus full restitution

5   to all persons injured as a result of your criminal conduct,

6   plus three years of supervised release after your term of

7   imprisonment?

8           THE DEFENDANT:  I do.

9           THE COURT:  Do you understand that the maximum

10  possible penalty for the crime with which you are charged in

11  Count Four is five years of imprisonment, plus a fine of the

12  greatest of $250,000, twice the gain resulting from the offense

13  or twice the loss to other people resulting from the offense,

14  plus a $100 special assessment, plus full restitution to all

15  persons injured as a result of your criminal conduct, plus

16  three years of supervised release after your term of

17  imprisonment?

18          THE DEFENDANT:  I do.

19          THE COURT:  Do you understand that the maximum

20  possible penalty for the crime with which you are charged in

21  Count Five is five years of imprisonment, plus a fine of the

22  greatest of $250,000, twice the gain resulting from the offense

23  or twice the loss to other people resulting from the offense,

24  plus a $100 special assessment, plus full restitution to all

25  persons injured as a result of your criminal conduct, plus

166dlipp

PLEA

1    three years of supervised release after your term of

2    imprisonment?

3            THE DEFENDANT:  I do.

4            THE COURT:  Do you understand that the maximum

5    possible penalty for the crime with which you are charged in

6    Count Six is 30 years of imprisonment, plus a fine of the

7    greatest of $1 million, twice the gain resulting from the

8    offense or twice the loss to other people resulting from the

9    offense, plus a $100 special assessment, plus full restitution

10   to all persons injured as a result of your criminal conduct,

11   plus five years of supervised release after your term of

12   imprisonment?

13           THE DEFENDANT:  I do.

14           THE COURT:  Do you understand that the maximum

15   possible combined penalty for the six crimes with which you are

16   charged is 70 years of imprisonment plus a fine of $7 million

17   or, if greater, the sums of the relevant gains and losses and

18   statutory amounts relating to your offenses, plus full

19   restitution to all persons injured by your criminal conduct,

20   plus a $600 mandatory special assessment, plus supervised

21   release for five years after your term of imprisonment?

22           THE DEFENDANT:  I do.

23           THE COURT:  I will now give you some information to

24   verify your understanding of the supervised release aspect of

25   the potential penalty.

23

166dlipp

PLEA

1            "Supervised release" means that you will be subject to

2     monitoring when you are released from prison.   Terms and

3     conditions will be imposed.   If you violate any of the set

4     terms and conditions, you can be reimprisoned without a jury

5     trial.

6            If you were on supervised release and do not comply

7     with any of the set terms or conditions, you can be returned to

8     prison for the remainder of the term of supervised release, you

9     will be given no credit for the time that you served in prison

10    as a result of your sentence and no credit for any time spent

11    on post-release supervision.   So, for example, if you received

12    a prison term and then a three-year term of supervised release

13    and after you left prison you lived up to the terms of

14    supervised release for two years but then you violated some

15    term of the supervised release, you could be returned to prison

16    for three full years.

17            Do you understand that?

18            THE DEFENDANT:   I do.

19            THE COURT:   Do you also understand that if I accept

20    your guilty plea and adjudge you guilty, that adjudication may

21    deprive you of valuable civil rights, such as the right to

22    vote, the right to hold public office, the right to serve on a

23    jury, and the right to possess any kind of firearm?

24            THE DEFENDANT:   I do.

25            THE COURT:   Do you understand that there are

166dlipp
PLEA

 1    Sentencing Guidelines that the Court must consider in

 2    determining your sentence?

 3             THE DEFENDANT:  I do.

 4             THE COURT:  Has your attorney discussed the Sentencing

 5    Guidelines with you?

 6             THE DEFENDANT:  He has.

 7             THE COURT:  Do you understand that in determining your

 8    sentence, the Court has an obligation to calculate the

 9    applicable Sentencing Guidelines' range and to consider that

10    range, possible departures under the Sentencing Guidelines, and

11    other sentencing factors under Title 18 of the United States

12    Code, Section 3553(a)?

13             THE DEFENDANT:  I do.

14             THE COURT:  Do you understand that if your attorney or

15    anyone else has attempted to estimate or predict what your

16    sentence will be, their estimate or prediction could be wrong?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you also fully understand that even if

19    your sentence is different from what your attorney or anyone

20    else told you it might be, or if it is different from what you

21    expect, you will still be bound to your guilty plea and you

22    will not be allowed to withdraw your plea of guilty?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you understand that the sentence to be

25    imposed will be determined solely by the Court and that I can

25

166dlipp

PLEA

1   only determine the sentence after the Probation Department

2   prepares a presentence report?

3           THE DEFENDANT:  I do.

4           THE COURT:  Do you understand that the Court has

5   discretion, while taking into account the specific provisions

6   and policy statements in the guidelines, to sentence you to any

7   number of years imprisonment between zero and the combined

8   statutory maximums of 70 years?

9           THE DEFENDANT:  I do.

10          THE COURT:  Are you now serving any state or federal

11  sentence, or are you being prosecuted for any other crime?

12          THE DEFENDANT:  I'm not.

13          THE COURT:  Do you understand that the Superseding

14  Information also includes a forfeiture allegation in which the

15  government asserts that you are required to forfeit to the

16  United States any and all property constituting and derived

17  from any proceeds that you obtained as a result of the crimes

18  charged in Counts One, Two, Three and Six, including up to

19  approximately $143.2 billion as to Counts One and Three and

20  approximately $700,000, including your interest in certain real

21  property, as to each of Counts Two and Six?

22          MR. FILAN:  Your Honor, Mr. Lipkin understands that he

23  has to admit to the forfeiture allegation regarding the bank

24  fraud crimes in Two and Six, but he is not admitting today to

25  Count One and Three.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

166dlipp

PLEA

1            THE COURT:  Yes.  In this section of the allocution, I

2    am confirming his understanding that there is a forfeiture

3    allegation.  We will get to the admission issues later.

4            MR. FILAN:  Absolutely, your Honor.  I just wanted --

5    he showed some confusion there, and I wanted to make sure he

6    understood that.

7            THE COURT:  Mr. Filan, would you please show

8    Mr. Lipkin the agreement, Government Exhibit 1.

9            (Pause)

10           MR. FILAN:  Yes, your Honor.

11           THE COURT:  Mr. Lipkin, have you signed this

12   agreement?

13           THE DEFENDANT:  I have, your Honor.

14           THE COURT:  Did you read it before you signed it?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Did you fully discuss it with your

17   attorney before you signed it?

18           THE DEFENDANT:  Yes, we did.

19           THE COURT:  Did you fully understand it before you

20   signed it?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Does the agreement accurately reflect your

23   complete and total understanding of the entire agreement

24   between the government, your attorney and you?

25           THE DEFENDANT:  Yes.

166dlipp

PLEA

1          THE COURT:  Is everything that you understand about

2     your plea, cooperation and sentence covered in this agreement?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Has anything been left out?

5          THE DEFENDANT:  I don't believe so.

6          THE COURT:  Has anyone made any promises to you other

7     than what is set out in that agreement or threatened you or

8     forced you to plead guilty or to enter into this agreement?

9          THE DEFENDANT:  No.

10         THE COURT:  Do you understand that even if the

11    government does not oppose or take a position on what your

12    attorney will ask as a sentence, I am free to impose whatever

13    sentence I believe is appropriate under the circumstances and

14    the applicable law and you will have no right to withdraw your

15    plea?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that this agreement

18    provides that prior to the date of sentencing, you must file

19    accurate amended tax returns for the years 2006, 2007, 2008 and

20    2009, and pay or enter into an agreement to pay past taxes due

21    and owing by you to the Internal Revenue Service, including any

22    applicable penalties?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand that the agreement

25    provides that you must cooperate fully with the office of the

166dlipp

PLEA

1   United States Attorney, the Federal Bureau of Investigation,

2   and any other law enforcement agency designated by the United

3   States Attorney?

4           THE DEFENDANT:  I do.

5           THE COURT:  Do you understand that the agreement does

6   not bind any federal, state or local prosecuting authority

7   other than the United States Attorney?

8           THE DEFENDANT:  I do.

9           THE COURT:  Do you understand that the agreement

10  provides that if the United States Attorney determines that you

11  have provided substantial assistance in an investigation or

12  prosecution, and if you have fully complied with the

13  understandings specified in the agreement, that the United

14  States Attorney will file a motion pursuant to Section 5K1.1 of

15  the Sentencing Guidelines requesting that the Court sentence

16  you in light of the factors set forth in subdivision (a)(1)

17  through (5) of that Section of the guidelines?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Do you understand that the factors that

20  the Court may consider under Section 5K1.1 include the

21  significance and usefulness of your assistance, taking into

22  account the government's evaluation of your assistance; the

23  truthfulness, completeness and reliability of any information

24  or testimony you provided; the nature and extent of your

25  assistance; any injuries suffered or any danger or risk of

166dlipp                                                                          29

PLEA

1   injury to you on your family as a result of your assistance;

2   and the timeliness of your assistance?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Do you understand that even if the United

5   States Attorney files such a motion, the sentence to be imposed

6   on you remains within the sole discretion of the Court?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that you will not be

9   entitled to withdraw your plea if the Court denies the motion?

10         THE DEFENDANT:  I do.

11         THE COURT:  Do you understand that if United States

12  Attorney determines that you have not provide substantial

13  assistance in an investigation or prosecution or that you have

14  violated any provision of the agreement, the United States

15  Attorney is not obligated to file a motion under Section 5K1.1?

16         THE DEFENDANT:  I do.

17         THE COURT:  Do you understand that you will not be

18  entitled to withdraw your guilty plea even if the United States

19  Attorney has not filed a motion?

20         THE DEFENDANT:  I do.

21         THE COURT:  Do you understand that your agreement

22  provides that if you commit any further crimes or if it is

23  determined that you gave false, incomplete or misleading

24  testimony or information, or that you otherwise violated any

25  provision of the agreement, you will be subject to prosecution

30

166dlipp

PLEA

1    for any federal violations of which the United States Attorney

2    has knowledge, including perjury and obstruction of justice?

3            THE DEFENDANT:  I do.

4            THE COURT:  Do you understand that your agreement

5    provides that if you commit any further crimes, or if it is

6    determined that you gave false, incomplete or misleading

7    testimony or information, or that you otherwise violated any

8    provision of this cooperation agreement, all statements made by

9    you to the United States Attorney or other designated law

10   enforcement agents and any testimony given by you before a

11   grand jury or other tribunal may be admissible in evidence in

12   any criminal proceedings against you?

13           THE DEFENDANT:  I do.

14           THE COURT:  Do you understand that your agreement also

15   provides that you may not assert a claim that such statements

16   should be suppressed from evidence and that you are waiving

17   your right to claim that such statements should be suppressed?

18           THE DEFENDANT:  I do.

19           THE COURT:  Do you understand that on page 3, this

20   agreement also includes your agreement to forfeit to the United

21   States any and all property constituting and derived from any

22   proceeds that you obtained as a result of the crimes charged in

23   Counts One, Two, Three and Six in an amount to be determined by

24   the Court as to Counts One and Three, and as to Counts Two and

25   Six, that you are agreeing to the entry of a money judgment

166dlipp
                              PLEA

 1   against you in the total amount of $1.4 million in United

 2   States currency, and that you will forfeit all of your interest

 3   in certain real property in Ridgewood, New Jersey and in

 4   certain accounts held in the names of or for the benefit of

 5   you, your wife and minor children at Fidelity Investments?

 6              THE DEFENDANT:  Yes.

 7              THE COURT:  Mr. Filan, is that a correct statement?

 8              MR. FILAN:  Absolutely, your Honor.  Thank you.

 9              THE COURT:  Mr. Lipkin, do you still wish to plead

10   guilty pursuant to this agreement?

11              THE DEFENDANT:  I do.

12              THE COURT:  Mr. Filan, do you know of any valid reason

13   why Mr. Lipkin would prevail at trial?

14              MR. FILAN:  I do not, your Honor.

15              THE COURT:  Do you know any reason why he should not

16   be permitted to plead guilty?

17              MR. FILAN:  I do not.

18              THE COURT:  Mr. Lipkin, would you please stand at this

19   time and tell me what you did that makes you guilty of each of

20   the crimes charged in the third Superseding Information.

21              THE DEFENDANT:  Your Honor, I would like to first

22   apologize to my family, my friends, and all the victims in this

23   case.  I'm very sorry for my conduct.

24              I now want to address my actions as they relate to the

25   charges against me.

166dlipp

PLEA

 1          With regard to the conspiracy charged in Count One and

 2     also charged in Counts Three, Four and Five, I worked with

 3     Bernard L. Madoff Investment Securities' employees to deceive

 4     others.  I created fake DTC reports in New York City.

 5          I created these documents knowingly and willingly.  I

 6     knew that these documents were fake because they were created

 7     by me and not by the DTC.  I created them to match documents

 8     given to me by other BLMIS employees.  My understanding was

 9     that the fake DTC reports that were prepared were being given

10     to the auditors to mislead them.

11          Also as part of the conspiracy charged in Count One

12     and the charges in Count Three, Four and Five, it was my job to

13     prepare the BLMIS payroll documents and records.  As part of my

14     job from at least 1996 in New York City, I created fake, false

15     payroll records and also submitted to the Department of Labor

16     inaccurate form 5500s.  These forms falsely showed that a

17     number of people were employees of BLMIS when in fact I knew

18     they were not working for BLMIS.

19          For instance, sometime in 2008, Daniel Bonventre

20     instructed me to include one of his sons as an employee when I

21     knew he wasn't working there, and I agreed to do it; and I

22     created BLMIS payroll records to reflect that he worked there.

23          Further, beginning in 2007, in New York City, I

24     knowingly certified on the Form 5500 that there were people who

25     worked at BLMIS when in fact they did not.  I also understood

166dlipp                                                                         33
PLEA

1   that the Form 5500 contained a certification that all

2   information on the form was accurate, and I signed it knowing

3   it was not accurate and then I submitted it to the Department

4   of Labor using Federal Express.

5          Counts Two and Six.

6          Regarding Count Two, conspiracy to commit bank fraud,

7   and Count Six, bank fraud, I was attempting to get a

8   construction loan.  In order to ensure I received the loan, I

9   went to Frank DiPiscali to create a new BLMIS account in my

10  name that falsely said my account value was greater than it

11  was.  I knew I could ask Frank DiPiscali to do this for me

12  because I knew it had been done previously for other BLMIS

13  employees.

14         That account statement was created in New York at

15  BLMIS in November of 2008.  Once I got the fake statement, I

16  sent it from New York City to a bank in Florida.  I knew that

17  the account did not have the money in it that the statement

18  said it did and that it was wrong to mislead the lender to get

19  the loan.

20         THE COURT:  Would you remain standing.  I have a few

21  more questions for you.

22         You indicated that the fake DTC reports that you were

23  making were going to be given to the auditors in order to

24  deceive auditors.  What did you understand the auditors were

25  going to do with that information?

166dlipp
                              PLEA

1        THE DEFENDANT:  It was to confirm positions at several

2  investment advisory accounts that we were reporting at.

3        THE COURT:  And to what persons or entities were the

4  reports going to be made?

5        THE DEFENDANT:  The SEC.

6        THE COURT:  And you use the term "DTC," what does that

7  mean?

8        THE DEFENDANT:  Depository Trust Company.

9        THE COURT:  You used the term "5500" reports.  What

10  are those?

11        THE DEFENDANT:  Those are reports that certify monies

12  that are in a 401(k) plan.

13        THE COURT:  And is the 401(k) plan a type of plan

14  that's governed by the Employee Retirement Income Security Act?

15        THE DEFENDANT:  It is.

16        THE COURT:  And to what agency, if any, of the

17  government are the 5500s submitted?

18        THE DEFENDANT:  The federal government, the IRS -- the

19  Department of Labor.  I'm sorry.

20        THE COURT:  I notice that you were looking at some

21  notes as you were speaking.  Do those notes accurately reflect

22  truthful information and actions that you yourself took?

23        THE DEFENDANT:  Yes, they do.

24        THE COURT:  When you did these things that you have

25  described, did know that what you were doing was wrong and

166dlipp

                              PLEA

1    illegal?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Mr. Moore, does the government wish any

4    further factual matters to be addressed in the plea allocution?

5              MR. MOORE:  No.  Thank you, your Honor.

6              THE COURT:  Mr. Moore, would you please summarize the

7    government's evidence against Mr. Lipkin.

8              And, Mr. Lipkin, you can be seated, please.

9              MR. MOORE:  Certainly, your Honor.

10             Had this case proceeded to trial, the government would

11   have proven, through testimony and evidence, beyond a

12   reasonable doubt the facts set forth in the Superseding

13   Information.  Specifically, the government would have proven

14   with respect to Counts One, Three, Four and Five of the

15   Information a conspiracy to falsify books and records of a

16   broker-dealer and investment advisor and conspiracy to falsify

17   statements to facilitate a theft concerning ERISA, along with

18   the corresponding substantive charges:  That Mr. Lipkin was

19   employed by BLMIS from in or about the mid-1980s through at

20   least on or about December 11, 2008, when BLMIS collapsed.  In

21   or about 1996, Mr. Lipkin began working with his

22   co-conspirators in falsifying the books and records at BLMIS.

23             For instance, Mr. Lipkin, working with other

24   co-conspirators, created fraudulent account statements

25   detailing the account values of several investment advisory, or

166dlipp

PLEA

1    "IA", accounts at BLMIS.  In furtherance of this fraud, your

2    Honor, Mr. Lipkin prepared letters and statements setting out

3    fake holdings purportedly held in multiple BLMIS IA accounts.

4         Further, in connection with reviews by the SEC and a

5    European accounting firm, Mr. Lipkin and other co-conspirators

6    created false and fraudulent BLMIS books and records as well as

7    false documents purportedly obtained from third parties in the

8    ordinary course of business at BLMIS.  For example, Mr. Lipkin

9    and others created fake reports purportedly obtained by the

10   Depository Trust Company, or "DTC."  These fake DTC reports

11   purported to show the securities holdings of BLMIS IA clients,

12   which in fact did not exist.  Mr. Lipkin knew the purpose of

13   these fake DTC reports was to mislead the auditors.

14        During his tenure at BLMIS, and at the direction of

15   other co-conspirators, Mr. Lipkin also created false BLMIS

16   books and records reflecting individuals who did not actually

17   work at BLMIS.  Mr. Lipkin was responsible for processing the

18   payroll and administering the 401(k) plans at BLMIS, and in

19   this capacity, your Honor, Mr. Lipkin was responsible for

20   preparing and maintaining internal BLMIS payroll records.  He

21   was aware that there were individuals on BLMIS's payroll who

22   did not work for the firm but who nevertheless received

23   salaries and benefits.  Mr. Lipkin created false internal BLMIS

24   payroll records reflecting that these individuals worked at

25   BLMIS.  Furthermore, he included a number of fake employees in

166dlipp                                                                    37

PLEA

1   the total number of employees that he reported to the

2   Department of Labor.

3              With respect to Counts Two and Six, conspiracy to

4   commit bank fraud and bank fraud, your Honor, the government

5   would prove that in or about 2008, Mr. Lipkin prepared and

6   submitted a loan application to a lending institution insured

7   by the Federal Deposit Insurance Corporation, or "FDIC," which

8   purported to represent accurately his personal and financial

9   information.  However, he fraudulently improved his

10  creditworthiness by falsifying his personal and financial

11  information in a manner that was material to the lending

12  institution in making its lending decision.  Specifically,

13  Mr. Lipkin, working with others, prepared and submitted false

14  and misleading information concerning his assets.

15             THE COURT:  Mr. Moore, before you sit down, or I will

16  ask you to stand back up, would you just map for me a little

17  more precisely the nature of the violation of the

18  ERISA-specific charge, which we've referred to as facilitating

19  false statements to facilitate a theft concerning ERISA, the

20  elements had been recited, and the allocution here deals with

21  the falsification of plan financial reports by including people

22  who were not employees.

23             Is there also a specific theft element?  Is there a

24  necessity to show intent that plan assets were actually to be

25  given to someone who wasn't entitled to them?  I just don't

166dlipp

PLEA

 1   understand the nexus between the theft concept and the false

 2   statements to my satisfaction.

 3        MR. MOORE:  Sure.  Your Honor, I don't believe that is

 4   an essential element of the crime, but we have alleged that and

 5   I believe defendant has admitted to that nevertheless.

 6        It is our understanding -- and we would prove this

 7   beyond a reasonable doubt should this case go to trial -- that

 8   Mr. Lipkin submitted the Form 5500, which is a reporting form

 9   that goes to the Department of Labor, which essentially lists

10   the number of employees at the employer's institution.  In this

11   case, Mr. Lipkin inflated that number, therefore misreporting

12   the number of employees who were working at BLMIS, when he in

13   fact knew that there were fewer employees working at that

14   institution.  As a result of doing so, he also put them on the

15   internal payroll records at BLMIS, thus giving those employees

16   who in fact never worked at BLMIS 401(k) plans and other

17   salaries and benefits.

18        Can you hold on one second, your Honor?

19        (Pause)

20        Right.  Entitling them to benefits provided under the

21   Social Security Administration as well as under a 401(k) plan,

22   your Honor.  As a result of that, your Honor, the Form 5500

23   that goes to the Department of Labor does concern ERISA, and,

24   therefore, we believe Mr. Lipkin has met all the three elements

25   for Count Five, falsifying statements to facilitate a theft

166dlipp

PLEA

 1   concerning ERISA.

 2        THE COURT:  Mr. Lipkin, is Mr. Moore's summary of the

 3   nature and significance in terms of entitlement to benefits

 4   under an ERISA government plan accurate with respect to your

 5   own activities in falsifying the 401(k) plan records?

 6        THE DEFENDANT:  It is, your Honor.

 7        THE COURT:  Mr. Lipkin, would you please stand again.

 8        Mr. Lipkin, how do you now plead to the charge against

 9   you in Count One of the third Superseding Information, not

10   guilty or guilty?

11        THE DEFENDANT:  Guilty.

12        THE COURT:  How do you now plead to the charge against

13   you in Count Two of the third Superseding Information, not

14   guilty or guilty?

15        THE DEFENDANT:  Guilty.

16        THE COURT:  How do you now plead to the charge against

17   you in Count Three of the third Superseding Information, not

18   guilty or guilty?

19        THE DEFENDANT:  Guilty.

20        THE COURT:  How do you now plead to the charge against

21   you in Count Four of the third Superseding Information, not

22   guilty or guilty?

23        THE DEFENDANT:  Guilty.

24        THE COURT:  How do you now plead to the charge against

25   you in Count Five of the third Superseding Information, not

166dlipp

PLEA

1    guilty or guilty?

2           THE DEFENDANT:  Guilty.

3           THE COURT:  And how do you now plead to the charge

4    against you in Count Six of the third Superseding Information,

5    not guilty or guilty?

6           THE DEFENDANT:  Guilty.

7           THE COURT:  Are you pleading guilty to each of these

8    charges because you are in fact guilty of the conduct charged

9    in each count?

10          THE DEFENDANT:  I am.

11          THE COURT:  Are you pleading guilty voluntarily and of

12   your own free will?

13          THE DEFENDANT:  I am.

14          THE COURT:  Mr. Filan, would you please show

15   Mr. Lipkin Court Exhibit 1, the advice of rights form.

16          Mr. Lipkin, have you signed this form?

17          THE DEFENDANT:  I have.

18          THE COURT:  Did you read it before you signed it?

19          THE DEFENDANT:  I did.

20          THE COURT:  Did you discuss it with your attorney

21   before you signed it?

22          THE DEFENDANT:  We did.

23          THE COURT:  Did you understand it before you signed

24   it?

25          THE DEFENDANT:  I did.

41

166dlipp

PLEA

1          THE COURT:  Mr. Filan, did you also review and sign

2    Court Exhibit 1?

3          THE DEFENDANT:  I did, your Honor.

4          THE COURT:  Mr. Filan, are there any other questions

5    that you believe I should ask Mr. Lipkin in connection with

6    this plea?

7          MR. FILAN:  No, your Honor.

8          THE COURT:  Mr. Moore, are there any other questions

9    that you believe I should ask Mr. Lipkin in connection with

10   this plea?

11         MR. MOORE:  No.  Thank you, your Honor.

12         THE COURT:  And are there any victims who wish to

13   speak in connection with this matter?

14         (Pause)

15         I note that no one has raised their hand.

16         Mr. Lipkin, you have acknowledged that you are guilty

17   as charged in the Information.  I find that you know your

18   rights and that you are waiving them voluntarily.

19         Because your plea is entered knowingly and voluntarily

20   and is supported by an independent basis in fact containing

21   each of the essential elements of each of the offenses, I

22   accept your guilty plea, and I adjudge you guilty of the

23   offenses charged in Counts One, Two, Three, Four, Five and Six

24   of the third Superseding Information in this case, which is

25   numbered 10 Criminal 228.

166dlipp

PLEA

1          You can be seated now.  Thank you.

2          THE DEFENDANT:  Thank you.

3          THE COURT:  Mr. Filan, do you wish to be present for

4   any interview of Mr. Lipkin in connection with the preparation

5   of the presentence report?

6          MR. FILAN:  I do, your Honor.

7          THE COURT:  I will make that direction.

8          MR. FILAN:  Thank you.

9          THE COURT:  Mr. Moore, what is the parties' request

10  with respect to the setting of a sentencing date or a control

11  date?

12         MR. MOORE:  Your Honor, at this time, we request that

13  we have six months for a sentencing control date.

14         THE COURT:  And that a presentence report not be

15  ordered at this point?

16         MR. MOORE:  That is correct, your Honor.

17         THE COURT:  Ms. Ng, may we have a control date six

18  months out?

19         THE CLERK:  Thursday, December 15, 2011, at 11 a.m.

20         THE COURT:  The sentencing control date is set for

21  December 15, 2011, at 11 in the morning.

22         In advance of that date, Mr. Moore, will the

23  government inform the Court as to whether it is appropriate to

24  commence the preparation of the presentence report or to

25  further extend the control date?

166dlipp

PLEA

1        MR. MOORE:  We will, your Honor.

2        THE COURT:  Thank you.

3        When it is time for sentencing, counsel, I just wish

4   to ask and to remind you to be prompt in getting any objections

5   or additional information to Probation after the draft report

6   is disclosed, and any 5K1.1 letter or letter indicating an

7   intention to make a motion pursuant to 5K1.1 must be prepared

8   and submitted to the Court and the Probation Department before

9   the probation report is completed so that I can have the

10   benefit of the Probation Department's thinking in that regard

11   as well.

12        Sentencing submissions are governed by my sentencing

13   submission procedures, which are available on the court's

14   website and also here in hard copy in the courtroom.

15        Mr. Lipkin, the Probation Office will be preparing a

16   presentence report at some point to assist me in sentencing

17   you.  You will be interviewed by the Probation Office.  It is

18   important that the information that you give to the probation

19   officer be truthful and accurate.  The report is important in

20   my decision as to what your sentence will be.  You and your

21   attorney have a right and will have an opportunity to examine

22   the report, to challenge or comment on it, and to speak on your

23   behalf before sentencing.

24        Failing to be truthful with the Probation Office and

25   the Court may have an adverse effect on your sentence and may

166dlipp

PLEA

1   subject you to prosecution.

2           Do you understand that?

3           THE DEFENDANT:  I do.

4           THE COURT:  Thank you.

5           Now, give me just one moment here.

6           (Pause)

7           Section 3143 of Title 18 provides that the Court is to

8   order a person who has been found guilty of an offense and who

9   is awaiting sentencing as a general matter to be detained

10  unless the judicial officer finds by clear and convincing

11  evidence that the person is not likely to flee or pose a danger

12  to the safety of any other person or the community if released.

13          Do the parties have a proposal with respect to

14  detention or release, and would the government set forth its

15  position as to the 3143 factors?

16          MR. MOORE:  Yes, your Honor.  In light of Mr. Lipkin's

17  cooperation and his full disclosure of his financial assets,

18  his dealings at BLMIS, we are confident that he will be

19  following the rules as set in our proposed bail package that we

20  would like to present to the Court; namely, that his bail be

21  secured by a $2.5 million personal recognizance bond, secured

22  by $800,000 in cash or property.

23          THE COURT:  And that would be property other than the

24  residential property that has been mentioned in connection with

25  the --

166dlipp
PLEA

1          MR. MOORE:  Absolutely, your Honor.

2          We also request that he be subject to strict pretrial

3   supervision; that his travel be restricted to the Southern and

4   Eastern Districts of New York, the District of New Jersey,

5   where he resides, and the District of Connecticut, where his

6   attorney practice.

7          Your Honor, we also request that he surrender all of

8   his travel documents and make new no travel applications.

9          Your Honor, we would request that these conditions be

10  met no later than this Friday.

11         THE COURT:  And have you had sufficient dealings up to

12  now with Mr. Lipkin to have a view as to his reliability in

13  keeping appointments, his ability to be trusted at his word in

14  such relevant matters?

15         MR. MOORE:  We have, your Honor, as well as the

16  agency, the FBI, has been working with him.

17         In addition, your Honor, to ensure our confidence in

18  Mr. Lipkin, we have already interviewed a number of cosigners

19  that have volunteered to serve as suriters for his bond.

20  Specifically, we've interviewed seven cosigners that he has

21  proposed, and at this time we are prepared to approve all of

22  them.

23         THE COURT:  And is there anything that you wish to say

24  to me with respect to community or family ties and the

25  significance of those matters in terms of risk of flight?

46

166dlipp

PLEA

1        MR. MOORE:  Yes, your Honor, which was a factor in our

2   determination.  Mr. Lipkin is a long-time resident of the New

3   York/New Jersey area.  He resides in New Jersey with his wife

4   and children along with several other family members, your

5   Honor.  And as a result we are satisfied that he is not a risk

6   of flight, that he does not pose a danger to the community, so

7   long as the conditions that we had proposed are also assigned

8   with his release.

9        THE COURT:  Are you confident of your assessment in

10   terms of the potential availability of assets to facilitate

11   flight?

12        MR. MOORE:  Your Honor, as a part of this process, and

13   one of the reasons why we have expressed some confidence in

14   Mr. Lipkin, is that he has fully disclosed his assets to us.

15   He has filled out financial affidavits with our office fully

16   disclosing the whereabouts of all of his funds.  And I believe,

17   as Mr. Filan will attest, he has also agreed to allow us to

18   immediately start forfeiting those proceeds.

19        THE COURT:  And you and your colleagues or

20   investigators have traced monies that to your knowledge went

21   from BLMIS to Mr. Lipkin and have mapped his disclosures

22   against known assets?

23        MR. MOORE:  That's correct, your Honor, which also

24   proves some confidence in Mr. Lipkin, that our own independent

25   evaluation matched up with what proved to be Mr. Lipkin's

166dlipp

PLEA

1    truthful disclosure about his own financial assets and the

2    whereabouts of those assets.

3        THE COURT:  Given the termination of operations of

4    BLMIS, does the government have a view as to potential danger

5    to the community?  Is that an issue here?

6        MR. MOORE:  We do not believe it is an issue in this

7    case, your Honor.  No.

8        THE COURT:  And I understand that Mr. Lipkin is

9    recently unemployed.  What is the government's position as to

10   the significance of that status with respect to risk of flight?

11       MR. MOORE:  Your Honor, Mr. Lipkin, from our

12   understanding, will be assisting his wife with the children.

13   His wife is a full-time employee and is fully employed.  And we

14   believe, in light of those conditions, your Honor, he is not a

15   risk of flight, particularly if, as we have requested, the

16   conditions are assigned for strict pretrial supervision and the

17   security that he is willing to post, including the $800,000 of

18   cash which is coming from close family members of the

19   defendant.  As well, your Honor, a number of the cosigners we

20   do believe have a significant moral suasion over the defendant

21   in light of their close relationship to him.

22       THE COURT:  Thank you.

23       Officer Ramesar, I've reviewed your report, for which

24   I thank you.

25       MS. RAMESAR:  You are welcome.

166dlipp
PLEA

1        THE COURT:  Is there anything in particular or in

2   addition to or different from what Mr. Moore has argued that

3   you wish to bring to my attention at this point?

4        MS. RAMESAR:  No, your Honor.

5        THE COURT:  Thank you.

6        Mr. Filan, did you wish to be heard?

7        MR. FILAN:  Just to say, your Honor, that we have

8   Mr. Lipkin's passport, which we will surrender today to

9   Pretrial Services, as the government requests.  And we also

10   have two cosigners here with us today, who will execute the

11   appearance bond today before they leave the courthouse to begin

12   that process.

13        And we urge the Court to release Mr. Lipkin for the

14   reasons that Mr. Moore covered.  I have really nothing further

15   to add to that.

16        THE COURT:  Thank you.

17        MR. FILAN:  Thank you, your Honor.

18        THE COURT:  Mr. Moore, the summary of the proposed

19   conditions that you've provided deals with the surrender of

20   Mr. Lipkin's travel documents.  Is there a reason why there is

21   no provision for the surrender of the travel documents of

22   immediate family members?

23        MR. MOORE:  Your Honor, we have no objection to the

24   wife keeping her passport.  In fact, it is our understanding

25   that she will be taking herself and her children to a

166dlipp

PLEA

1    destination this summer.

2              However, if the Court feels that she should surrender

3    her travel passports, we would have no objection to that

4    condition being added.

5              THE COURT:  It seems to me prudent to do that, given

6    the magnitude of the exposure.

7              So I will direct that the travel documents of the wife

8    and children also be surrendered without prejudice to specific

9    application, on notice, for return in connection with specific

10   travel approved by the Pretrial Services Department to which

11   there is no other objection.  If there is an objection, I will

12   hear it.

13             MR. MOORE:  Thank you, your Honor.

14             THE COURT:  Mr. Filan.

15             MR. FILAN:  That is fine, your Honor.  Thank you.

16             THE COURT:  Thank you.

17             Having carefully considered all that I have heard here

18   today, including the admissions of criminal activity, the

19   result of the investigation of Pretrial Services, the

20   government's extensive account of its activities and evaluation

21   with respect to risk of flight and potential for danger to the

22   community presented by Mr. Lipkin, I find that there is clear

23   and convincing evidence that with the imposition of the

24   proposed conditions Mr. Lipkin is not likely to flee or pose a

25   danger to the safety of any other person or the community.

166dlipp

PLEA

1          Accordingly, I will grant him release on the

2   conditions that have been proposed, with the modification that

3   we just discussed concerning the surrender of family travel

4   documents.

5          I am now going to prepare a bail disposition sheet

6   enumerating these conditions, and then I will distribute that

7   in draft to the parties so that we can be sure that I've gotten

8   everything correct.  So bear with me as I type this up, please.

9          (Pause)

10          What I've written is this:  "$2.5 million PRB secured

11  by $800,000 cash and property, and 7 FRPs.  Travel restricted

12  to DNJ, D Conn, E.D.N.Y. and S.D.N.Y.  All travel documents of

13  Defendant, wife and children to be surrendered, with no new

14  applications (without prejudice to application for return of

15  documents of wife and children for particular preauthorized

16  travel).  Strict pretrial supervision.  All conditions must be

17  met by 4:00 p.m. on June 10, 2011."

18          Does that cover everything accurately?

19          MR. MOORE:  That is our understanding.  Thank you,

20  your Honor.

21          MR. FILAN:  Yes, your Honor.  Thank you.

22          THE COURT:  I will fix one typo and then I will sign.

23          How many copies are needed?

24          THE CLERK:  Six.

25          THE COURT:  OK.

166dlipp
PLEA

1          (Pause)

2          THE COURT:  Now, Mr. Moore and Ms. Baroni, can you

3    shepherd things through the Magistrate Clerk's office here, or

4    whatever section of the Clerk's Office --

5          MR. MOORE:  We will, your Honor.  Thank you.

6          THE COURT:  And, also, Mr. Filan and Mr. Lipkin will

7    need to go over to the Probation Department as well to get

8    paper work set up and get any specifics as to what needs to be

9    done there today that will be carried out.

10          MR. FILAN:  Thank you, your Honor.

11          THE COURT:  Thank you.  Is there anything further that

12    we need to take up together this afternoon?

13          MR. MOORE:  Can you give us one moment, your Honor?

14          THE COURT:  Yes.

15          MR. MOORE:  Nothing further on the government's part.

16    Thank you, your Honor.

17          MR. FILAN:  Nothing from the defendant, your Honor.

18          THE COURT:  All right.  Thank you.  We are adjourned.

19          THE DEFENDANT:  Thank you, your Honor.

20          THE CLERK:  All rise.

21

22                              -    -    -

23

24

25

I (We) hereby certify that the foregoing is a true and accurate transcript, to the best of my (our) skill and ability, from my (our) stenographic notes of this proceeding.

_____
Official Court Reporter
U.S. District Court