**Baker & Hostetler LLP**

45 Rockefeller Plaza

New York, New York 10111

Telephone: (212) 589-4200

Facsimile: (212) 589-4201

Irving H. Picard

David J. Sheehan

Seanna R. Brown

Heather R. Wlodek

Hearing Date: April 20, 2022

Hearing Time: 10:00 a.m. (EST)

Objection Deadline: April 6, 2022

Time: 4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**THIRTY-EIGHTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM AUGUST 1, 2021 THROUGH NOVEMBER 30, 2021**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    PRELIMINARY STATEMENT ...............................................................3

II.    BACKGROUND ....................................................................................6

    A.    THE SIPA LIQUIDATION................................................6

    B.    THE TRUSTEE, COUNSEL AND CONSULTANTS ..........................6

    C.    PRIOR COMPENSATION ORDERS....................................7

III.    SUMMARY OF SERVICES....................................................9

    A.    HARDSHIP PROGRAM...........................................9

    B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ..................10

IV.    DETAILED DESCRIPTION OF SERVICES.................................10

    A.    MATTER 01 ...........................................................11

        a.    Task Code 05: Internal Meetings with Staff.............................11

        b.    Task Code 07: Billing and Trustee Reports...............................11

        c.    Task Code 08: Case Administration ........................................12

        d.    Task Code 11: Press Inquiries and Responses...........................12

        e.    Task Code 12: Document Review .........................................13

        f.    Task Code 13: Depositions and Document Productions by
            the Trustee..................................................................13

        g.    Task Code 14: International.................................................13

        h.    Task Code 21: Allocation ..................................................14

    B.    MATTER 05 – CUSTOMER CLAIMS ........................................16

        a.    Customer Claims............................................................16

        b.    General Creditor Claims ...................................................16

        c.    The Trustee Has Kept Customers Informed Of The Status
            Of The Claims Process.....................................................17

    C.    MATTER 09 – FAIRFIELD GREENWICH........................................18

    D.    MATTER 21 – AVOIDANCE ACTION LITIGATION and MATTER 75 –
        GOOD FAITH/5A COHMAD REFERRED ACCOUNTS .................................27

|  | a. | Resolution of Good Faith Avoidance Actions | 27 |
|  | b. | Trial-Related Motion Practice | 28 |
|  | c. | Summary Judgment Motions | 30 |
| E. | | MATTER 29 – RYE/TREMONT | 39 |
| F. | | MATTER 30 – HSBC | 41 |
| G. | | MATTER 32 – UBS/LUXALPHA/LIF | 42 |
| H. | | MATTER 33 – NOMURA INTERNATIONAL PLC | 45 |
| I. | | MATTER 34 – CITIBANK | 47 |
| J. | | MATTER 35 – NATIXIS | 50 |
| K. | | MATTER 36 – MERRILL LYNCH | 51 |
| L. | | MATTER 37 – ABN AMRO | 52 |
| M. | | MATTER 39 – FORTIS | 56 |
| N. | | MATTER 53 – MAGNIFY | 59 |
| O. | | MATTER 60 – AVELLINO & BIENES | 61 |
| P. | | MATTER 62 – SUBSEQUENT TRANSFERS | 63 |
| Q. | | MATTER 63 – CITRUS INVESTMENT HOLDINGS, LTD. | 64 |
| R. | | MATTER 65 – LEGACY | 65 |
| S. | | MATTER 71 – SQUARE ONE | 68 |
| T. | | MATTER 73 – BNP PARIBAS | 70 |
| U. | | MATTER 77 – EXTRATERRITORIALITY | 71 |
| V. | | COMPENSATION REQUESTED | 72 |
| VI. | | REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED | 76 |
| VII. | | CONCLUSION | 77 |

**TO THE HONORABLE CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE:**

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and the chapter 7 case of Bernard L. Madoff ("Madoff"), individually (collectively, the "Debtor"), respectfully submits this thirty-eighth application (the "Application") on behalf of the Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing August 1, 2021 through and including November 30, 2021 (the "Compensation Period") of $32,681,351.79, and (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period of $377,823.57, and in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The work completed as counsel to the Trustee during the Compensation Period yielded significant results for BLMIS customers and the liquidation.  Through pre-litigation and

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

other settlements, which were approved by the Bankruptcy Court and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, over nearly $14.527 billion as of January 31, 2022 for the benefit of all customers of BLMIS with an allowed claim.[2]

2.      The Trustee has made thirteen interim distributions of customer property to date. *See* discussion *infra* Section IV(A)(h).  The Trustee has distributed approximately $14.276 billion to BLMIS customers through February 25, 2022, inclusive of SIPC advances in the amount of approximately $849.9 million.[3] *See* discussion *infra* Section IV(A)(h).

3.      No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers. Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers.  Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H, various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), including Browne Jacobson LLP ("Brown Jacobson"), Soroker-Agmon ("Soroker"), Williams Barristers & Attorneys ("Williams Barristers"), various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and consultants, are paid out of administrative advances made by SIPC, as SIPA plainly directs.  As Judge Lifland affirmed:

---

[2]In general, figures will be reported as of November 30, 2021, unless otherwise noted, i.e. *infra* Section III(B), paragraph 15.

[3]SIPC makes advances to satisfy customer claims before the Trustee recovers funds. Since the Trustee has recovered funds to satisfy customers up to $1,691,768.98, SIPC is reimbursed for the advances to customers whose claims have been fully satisfied to date. 1,509 BLMIS accounts have been fully satisfied.

"Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.      As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.      In a SIPA liquidation proceeding such as this, where the general estate is insufficient to pay trustee and counsel compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration. *See* SIPA §§ 78eee(b)(5)(C) and 78fff-3(b)(2).   SIPC staff has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered.  Each month, SIPC staff, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein.  Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

6.      During the hearing on the Eighth Interim Fee Application, Judge Lifland acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world.  It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736

7.      No single document can capture all of the tasks engaged in by the Trustee and B&H

since their appointment on December 15, 2008.   Hundreds of thousands of hours have been

expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and

advance the interests of all claimants by litigating and settling cases for the return of customer

property ("Customer Property").   Moreover, the Trustee has vigorously defended the estate with

respect to a number of litigations filed against it and against his protection of Customer Property.

The following discussion and materials attached to this Application cover the major categories of

services for which allowance of compensation is sought.

## II.      BACKGROUND

### A.      THE SIPA LIQUIDATION

8.      The Trustee and B&H's prior interim fee applications, each of which is fully

incorporated herein, have detailed the circumstances surrounding the filing of this case and the

events that have taken place during prior phases of this proceeding.

### B.      THE TRUSTEE, COUNSEL AND CONSULTANTS

9.      The Trustee and B&H's prior interim fee applications have detailed the description

of the Trustee's background and experience.

10.      In rendering professional services to the Trustee, B&H has utilized a legal team

comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax,

corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

11.      The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long

in duration, and broad in its geographical reach.   The Trustee, with the assistance of his counsel,

has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related

individuals and entities.   To this end, the Trustee has engaged not only the services of counsel, but

also those of forensic accountants and legal experts, including, but not limited to, AlixPartners

LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and

several investigative and industry consultants (collectively referred to herein as the "Consultants").

### C.    PRIOR COMPENSATION ORDERS

12.    The Trustee and B&H filed applications for allowance of interim compensation for

professional services rendered and reimbursement of actual and necessary expenses incurred in

prior periods, and this Court approved those applications:

| **Applications** | **Compensation Period** | **Orders Entered**[4] |
|---|---|---|
| First Application (ECF Nos. 320, 321) | December 11, 2008 to May 31, 2009 | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | June 1, 2009 to September 30, 2009 | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | October 1, 2009 to January 31, 2010 | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | February 1, 2010 to May 31, 2010 | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | June 1, 2010 to September 30, 2010 | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | October 1, 2010 to January 31, 2011 | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | February 1, 2011 to May 31, 2011 | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | June 1, 2011 to September 30, 2011 | January 2, 2013 (ECF No. 5181);[5] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | October 1, 2012 to January 31, 2012 | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | February 1, 2012 to June 30, 2012 | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |

---

[4]On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee. The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCACreque, an additional $0.60 became due and owing to that firm.

[5]This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

| **Applications** | **Compensation Period** | **Orders Entered**[4] |
|---|---|---|
| Eleventh Application (ECF No. 5333) | July 1, 2012 to November 30, 2012 | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | December 1, 2012 to April 30, 2013 | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | May 1, 2013 through July 31, 2013 | December 17, 2013 (ECF No. 5605) |
| Fourteenth Application (ECF No. 5980) | August 1, 2013 through November 30, 2013 | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | December 1, 2013 through March 31, 2014 | August 28, 2014 (ECF No. 7825) |
| Sixteenth Application (ECF No. 8549) | April 1, 2014 through July 31, 2014 | December 22, 2014 (ECF No. 8867) |
| Seventeenth Application (ECF No. 9583) | August 1, 2014 through November 30, 2014 | April 16, 2015 (ECF No. 9823) |
| Eighteenth Application (ECF No. 10814) | December 1, 2014 through March 31, 2015 | August 27, 2015 (ECF No. 11148) |
| Nineteenth Application (ECF No. 12089) | April 1, 2015 through July 31, 2015 | December 18, 2015 (ECF No. 12292) |
| Twentieth Application (ECF No. 12958) | August 1, 2015 through November 30, 2015 | April 28, 2016 (ECF No. 13180) |
| Twenty-First Application (ECF No. 13751) | December 1, 2015 through March 31, 2016 | September 8, 2016 (ECF No. 13990) |
| Twenty-Second Application (ECF No. 14456) | April 1, 2016 through July 31, 2016 | December 23, 2016 (ECF No. 14778) |
| Twenty-Third Application (ECF No. 15355) | August 1, 2016 through November 30, 2016 | May 10, 2017 (ECF No. 15984) |
| Twenty-Fourth Application (ECF No. 16367) | December 1, 2016 through March 31, 2017 | August 24, 2017 (ECF No. 16562) |
| Twenty-Fifth Application (ECF No. 16886) | April 1, 2017 through July 31, 2017 | December 21, 2017 (ECF No. 17072) |
| Twenty-Sixth Application (ECF No. 17337) | August 1, 2017 to November 30, 2017 | April 25, 2018 (ECF No. 17524) |
| Twenty-Seventh Application (ECF No. 17763) | December 1, 2017 to March 31, 2018 | August 30, 2018 (ECF No. 17941) |
| Twenty-Eighth Application (ECF No. 18180) | April 1, 2018 to July 31, 2018 | December 20, 2018 (ECF No. 18324) |
| Twenty-Ninth Fee Application (ECF No. 18562) | August 1, 2018 to November 30, 2018 | April 25, 2019 (ECF No. 18696) |
| Thirtieth Fee Application (ECF No. 18867) | December 1, 2018 to March 31, 2019 | September 6, 2019 (ECF No. 18984) |

| **Applications** | **Compensation Period** | **Orders Entered**[4] |
|---|---|---|
| Thirty-First Fee Application (ECF No. 19116) | April 1, 2019 to July 31, 2019 | December 12, 2019 (ECF No. 19219) |
| Thirty-Second Fee Application (ECF No. 19383) | August 1, 2019 to November 30, 2019 | May 4, 2020 (ECF No. 19516) |
| Thirty-Third Fee Application (ECF No. 19604) | December 1, 2019 to March 31, 2020 | August 26, 2020 (ECF No. 19728) |
| Thirty-Fourth Fee Application (ECF No. 19918) | April 1, 2020 to July 31, 2020 | December 14, 2020 (ECF No. 20093) |
| Thirty-Fifth Fee Application (ECF No. 20323) | August 1, 2020 to November 30, 2020 | April 19, 2021 (ECF No. 20451) |
| Thirty-Sixth Fee Application (ECF No. 20603) | December 1, 2020 to March 31, 2021 | August 10, 2021 (ECF No. 20685) |
| Thirty-Seventh Fee Application (ECF No. 20833) | April 1, 2021 to July 31, 2021 | December 6, 2021 (ECF No. 20943) |

## III.    SUMMARY OF SERVICES

13.    A SIPA proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.    Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

### A.    HARDSHIP PROGRAM

14.    After nearly 12 years, the Trustee officially terminated the Hardship Program. Statistics regarding how many customers availed themselves of the Hardship Program are detailed in prior fee applications.  After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, as of November 30, 2021, the Trustee had dismissed 284 Hardship Program applicants-defendants from avoidance actions.  As of November 30, 2021, 7 Hardship Program applicants-defendants were still under review and 366 applicants-defendants were resolved because they were either withdrawn by the applicant,

deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

## B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY

15.    Without the need for protracted litigation, during the Compensation Period, the Trustee settled 14 cases for $12,995,583.68. Through the end of the Compensation Period, the Trustee had successfully recovered approximately $14.498 billion.

16.    The Trustee entered into settlements subsequent to the Compensation Period that will bring additional funds into the Customer Fund.

17.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, will result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

18.    Through the end of the Compensation Period, the Trustee recovered $536,092,384.27 as a result of preferences and other settlements that were made pursuant to agreements subject to the net equity dispute. The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

## IV.    DETAILED DESCRIPTION OF SERVICES

19.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested. All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims. The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

10

20.     Matter Number 01 is the general matter number used for tasks by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

21.     Matter Numbers 03-77 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.  In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy and engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

## A.    MATTER 01

22.     This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

### a.    Task Code 05: Internal Meetings with Staff

23.     This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

### b.    Task Code 07: Billing and Trustee Reports

24.     This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### c.    Task Code 08: Case Administration

25.     This category relates to time spent assisting the efficient administration of the case.

26.     The Trustee filed several motions before this Court that govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

27.     On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings.  (ECF No. 4469).  This Court entered the Order on December 5, 2011.  (ECF No. 4560).

28.     On October 28, 2011, this Court entered an Order Granting Supplemental Authority to Stipulate to Extensions of Time to Respond and Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).  Supplemental Orders were entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012 (ECF No. 4483), July 18, 2014 (ECF No. 5358), January 16, 2015 (ECF No. 7037), July 17, 2015 (ECF No. 8762), July 15, 2016 (ECF No. 12312), December 23, 2016 (ECF No. 13601), July 31, 2017 (ECF No. 14447), December 31, 2017 (ECF No. 16169), June 27, 2018 (ECF No. 16718), December 19, 2018 (ECF No. 17560), December 18, 2019 (ECF No. 18093), December 16, 2020 (ECF No. 19027), October 5, 2020 (ECF No. 19826) and December 31, 2021 (ECF No. 20418).  On November 16, 2021, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through June 15, 2022 (ECF No. 20884).

### d.    Task Code 11: Press Inquiries and Responses

29.     This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals in responding to press inquiries, preparing and issuing press releases, and

preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the recovery of funds.

### e.     Task Code 12: Document Review

30.     This category relates to time spent by the Trustee and B&H attorneys reviewing and analyzing BLMIS documents and documents received from parties and third parties in response to the hundreds of letters and subpoenas issued by the Trustee, in order to assess relevance to case-wide strategies and to identify and develop evidence in support of the Trustee's claims and defenses, as well as other discovery-related tasks that cross multiple cases.

### f.     Task Code 13: Depositions and Document Productions by the Trustee

31.     This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter, including team meetings, discussions and strategizing among Discovery Management Team case liaisons; research and analysis of issues with potential case-wide implications; creation and management of document databases, filing systems and related reference materials; creation and revision of discovery resources and procedural guidance; analysis and coordination of discovery affirmatively produced by the Trustee in avoidance actions; and responding to discovery propounded to the Trustee by various third parties and defendants in avoidance actions.

### g.     Task Code 14: International

32.     The fraud Madoff perpetrated through BLMIS has many international implications involving foreign individuals, feeder funds, and international banking institutions. The Trustee is actively investigating and seeking to recover assets for the BLMIS estate in many different jurisdictions, including Austria, the Bahamas, Bermuda, the British Virgin Islands ("BVI"), Canada, the Cayman Islands, England, France, Ireland, Israel, Luxembourg, Spain, and

Switzerland.  These investigations utilize a combination of voluntary requests for information and the use of the Trustee's subpoena power.

33.    This category relates to the ongoing investigation, the preparation and service of subpoenas against entities in many jurisdictions, service of process, and communication with International Counsel regarding the utilization of local laws to obtain necessary discovery and pursue recovery of customer property in foreign jurisdictions.  The investigation is made challenging by the broad array of bank secrecy statutes and other foreign legislation designed to limit discovery.

34.    In addition, time categorized by this task code relates to the participation in and monitoring of various BLMIS-related third-party actions brought in Europe and the Caribbean, as well as discussions with International Counsel on strategic and jurisprudential matters that involve multiple actions against more than one defendant.

        **h.**        **Task Code 21: Allocation**

35.    This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

36.    The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

37.    The Trustee filed thirteen motions seeking entry of an order approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through Compensation Period | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $884.6 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.431 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $900.7 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $605.9 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[6] | $522.2 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/2015 | $345.472 million[7] | $1.567 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/2016 | $247.013 million | $246.7 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/2017 | $342.322 million | $326.4 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/2018 | $1.303 billion | $716.3 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/2019 | $515.974 million | $512.1 million | 2.729% | 18295 | 18398 |
| 11 | 2/28/2020 | $988.770 million | $369.3 million | 1.975% | 19226 | 19245 |
| 12 | 2/26/2021 | $74.325 million | $231.4 million | 1.240% | 20066 | 20209 |
| 13 | 2/25/2022 | $128.570 million | N/A | 0.604% | 20963 | 21036 |
| **TOTAL** | N/A | $14.497 billion | $13.314 billion | 70.452% | N/A | N/A |

38.    On February 25, 2022, the Trustee distributed over $112 million, or 0.604% of each BLMIS allowed claim through the completion of the Thirteenth Interim Distribution, unless the claim had been fully satisfied.  This represents a significant milestone in this litigation, with 1,509 BLMIS accounts fully satisfied through February 25, 2022.[8] The 1,509 fully satisfied accounts represent nearly 66% of accounts with allowed claims.  When combined with the prior twelve distributions, and $849.9 million in advances paid or committed to be paid by the Securities

---

[6]The total amount allocated in the Fifth Allocation and Fifth Interim Distribution Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[7]This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Distribution Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

[8]Any customer with an allowed claim of $1,691,768.98 has been fully satisfied.

Investor Protection Corporation ("SIPC"), the Trustee has distributed approximately $14.276 billion to BLMIS customers through February 25, 2022, or 70.452% of each BLMIS allowed customer claim.

### B. MATTER 05 – CUSTOMER CLAIMS

#### a. Customer Claims

39.     During the Compensation Period, the Trustee allowed $30,000 in customer claims, bringing the total amount of allowed claims as of November 30, 2021 to $19,416,279,866.92. As of November 30, 2021, the Trustee has paid or committed to pay $849,868,412.47 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

40.     As of November 30, 2021, 11 claims relating to 7 accounts remained "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

#### b. General Creditor Claims

41.     As of November 30, 2021, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 450 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265 million. At this time, the BLMIS general estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers. If the

Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e). All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate. The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

   c.    **The Trustee Has Kept Customers Informed Of The Status Of The Claims Process**

42.    Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

43.    The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

44.    In addition, the Trustee Website allows claimants and third parties to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone

call to the claimants. As of November 30, 2021, the Trustee and his professionals had received and responded to thousands of e-mails via the Trustee Website from BLMIS customers and their representatives and fielded thousands of calls from claimants and their representatives.

45.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

C.     **MATTER 09 – FAIRFIELD GREENWICH**

46.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009). This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions, as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

47.     On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators") (ECF No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint

Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

48.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

49.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y.), (ECF No. 107). In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

50.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to common briefing and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court. As of July 31, 2014, the District

Court had issued decisions on all issues subject to common briefing and remanded the cases to this

Court for further findings based on the legal standards set forth in the District Court's decisions.

51.     On June 6, 2012, the Trustee filed additional recovery actions against entities or

persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*,

Adv. No. 12-01701 (CGM) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc*., Adv. No. 12-01702

(CGM) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (CGM) (Bankr.

S.D.N.Y.).  The parties in the *Toub* action have entered into a stipulated stay as permitted by this

Court.  None of the defendants in the three actions have yet responded to the Trustee's complaints.

52.     On November 22, 2016, this Court issued its decision on the extraterritoriality

motion to dismiss.  *See* discussion *infra* Section IV(U).  Under the decision, some of the claims

against the moving defendants in the *Fairfield, Barrenche, and RD Trust* actions were dismissed.

Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of

certain non-moving defendants to the extraterritoriality motion to dismiss.  The parties agreed to

consent to the entry of final judgments on the Court's extraterritoriality decision.  Finally, the

parties consented to direct appeal of the extraterritoriality decision to the Second Circuit.  On

March 16, 2017, the Trustee filed his notice of appeal in the *Fairfield, Barrenche, and RD Trust*

actions.  (ECF Nos. 229, 97, 93).  On September 27, 2017, the Second Circuit issued an order

granting the parties' request for certification for direct appeal of the appeal of the extraterritoriality

decision.  *Picard v. Banque Lombard Odier & Cie SA*., No. 17-1294 (2d Cir.), (ECF No. 388).  On

February 25, 2019, the Second Circuit reversed this Court's November 22, 2016 ruling.  *See*

discussion *infra* Section IV(U).

53.     On January 24, 2019, in the action filed by the Joint Liquidators against the

Fairfield management entities and individuals, *In re Fairfield Sentry Limited, et al*., Adv. No. 10-

03800 (CGM), the parties entered a stipulation substituting the Trustee as the plaintiff. (ECF No. 87). On February 22, 2019, the Trustee filed a motion to amend the complaint with an attached proffered Amended Complaint. (ECF No. 90).

54.     On March 25, 2019, this Court approved a settlement between the Trustee and certain Fairfield management defendants: Lourdes Barrenche, Robert Blum, Cornelius Boele, Gregory Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barrenche, Inc., Dove Hill Trust, Fortuna Asset Management, and Selecta Financial Corporation. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, Order (S.D.N.Y., March 25, 2019). (ECF No. 270). The Trustee's claims against the remaining Fairfield management defendants remain pending.

55.     On June 18, 2019, the Trustee and the remaining defendants informed this Court they had agreed to enter mediation. (ECF No. 272). As a result, at the parties' request, this Court ordered the June 26, 2019 pretrial conference to be continued to December 18, 2019. (ECF No. 273).

56.     On June 19, 2019, again at the parties' request, this Court entered an order consolidating the actions *Picard v. Fairfield Investment Fund Limited*, No. 09-01239 and *Picard v. Fairfield Greenwich Capital Partners*, No. 12-01702. The consolidated action shall proceed under *Picard v. Fairfield Investment Fund Limited,* No. 09-01239. (ECF No. 274).

57.     On September 25, 2019, this Court held a hearing with the Trustee and the remaining defendants in the consolidated actions regarding a future case schedule. At the hearing, the Trustee and the remaining defendants informed this Court they had agreed to enter mediation with Richard Davis as the mediator. The Court ordered the parties to report on the progress of the

mediation at a hearing to be held on November 26, 2019 and further ordered all matters held in abeyance until December 31, 2019.  (ECF No. 275).

58.    On November 20, 2019, the Court entered the Second Order on Mediation in which the Court ordered the parties to report on the progress of the mediation in writing by February 19, 2020 and further ordered all matters held in abeyance until March 31, 2020.  (ECF No. 276).

59.    On February 19, 2020, the Court entered the Third Order on Mediation in which the Court ordered the parties to report on the progress of the mediation in writing by May 19, 2020 and further ordered all matters held in abeyance until June 30, 2020.  (ECF No. 279).

60.    On May 19, 2020, the Court entered the Fourth Order on Mediation in which the Court ordered the parties to report on the progress of the mediation in writing by August 19, 2020 and further ordered all matters held in abeyance until July 31, 2020.  (ECF No. 282).

61.    On August 20, 2020, the Court entered the Fifth Order on Mediation in which the Court lifted the order holding the matters in abeyance, ordered the Trustee to file his Second Amended Complaint in the *Fairfield 09-01239* action by August 31, 2020, ordered the defendants in the *Fairfield 10-03800* matter to file their Reply Memorandum in Support of the Motion To Dismiss by October 2, 2020, and adjourned the status conference to October 26, 2020.  (ECF No. 285).

62.    On August 28, 2020, the Trustee filed his Second Amended Complaint in the *Fairfield 09-01239* action.  (ECF No. 286).

63.    On October 2, 2020, the Defendants filed their Reply Memorandum of Law in Support of Motion to Dismiss in the *Fairfield 10-03800* action.  (ECF No. 129).  In addition, the Defendants submitted a letter to the Court on the Foreign Authorities applicable to the *Fairfield 10-03800* action.  (ECF No. 130).

64.      On October 20, 2020, the Fairfield actions were reassigned from Judge Stuart Bernstein to Judge Cecelia G. Morris.  *Fairfield 09-01239* (ECF No. 288) and *Fairfield 10-03800* (ECF No. 133).

65.      On October 21, 2020, this Court issued a scheduling order in the *Fairfield 09-01239* action regarding the Defendants' request to file a Motion to Dismiss in which the Defendants' Opening Brief is to be filed by January 15, 2021, the Trustee's Opposition Brief is to be filed by April 15, 2021, and the Defendants' Reply Brief is to be filed by May 31, 2021.  (ECF No. 289).

66.      On October 26, 2020, this Court scheduled a pretrial conference in these matters for January 13, 2021 and requested the Parties to make a submission to the Court as to what substantive law applies in the *Fairfield 10-03800* action.  (ECF No. 290).

67.      On November 18, 2020, this Court entered an order in the *Fairfield 10-03800* action ordering the Trustee to file a Supplemental Brief in Opposition to the Defendants' Motion to Dismiss by November 25, 2020 and the Defendants to file a Supplemental Reply Brief in Support of the Motion to Dismiss by December 11, 2020.  (ECF No. 137).

68.      On November 25, 2020, the Trustee filed his Supplemental Opposition to the Defendants' Motion to Dismiss in the *Fairfield 10-03800* action.  (ECF No. 141).

69.      On November 25, 2020, the Trustee filed a letter as to the Foreign Authorities applicable to the *Fairfield 10-03800* action.  (ECF No. 142).  On the same day, the Trustee submitted a letter to the Court on the claims and conflicts of law involved in the *Fairfield 10-03800* action.  (ECF No. 143). On November 25, 2020, in the *Fairfield 10-03800* action, the Trustee filed a Supplemental Memorandum in Opposition to the Defendants' Motion to Dismiss. (ECF No. 141).

70.    On December 11, 2020, the *Fairfield 10-03800* parties submitted a letter to the Court regarding the parties' position on conflicts of law concerning the Defendants' Motion to Dismiss. (ECF No. 145). On December 11, 2020, the Defendants filed their Supplemental Memorandum in Support of the Motion to Dismiss in the *Fairfield 10-03800* action. (ECF No. 146). On December 18, 2020, the parties submitted a letter to the Court regarding the choice of law issues involved in the Motion to Dismiss in the *Fairfield 10-03800* action. (ECF No. 149). On January 13, 2021, the Court held a hearing on Defendants' Motion to Dismiss in the *Fairfield 10-03800* action.

71.    On March 25, 2021, the Court issued its Memorandum Decision Granting in Part and Denying in Part Defendants' Motion to Dismiss in the *Fairfield 10-03800* action. (ECF No. 161). On April 8, 2021, the Court issued its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss in the *Fairfield 10-03800* action. (ECF No. 162).

72.    On January 15, 2021, the Defendants filed their Opening Brief in Support of their Motion to Dismiss in the *Fairfield 09-01239* action. (ECF No. 305). On April 15, 2021, the Trustee filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss in the *Fairfield 09-01239* action. (ECF No. 311). The Defendants' Reply in Support of the Motion to Dismiss in the *Fairfield 09-01239* action was filed on May 31, 2021. (ECF No. 313).

73.    On May 6, 2021, Defendants Walter Noel, Jeffrey Tucker, Philip Toub, Andres Piedrahita, Corina Noel Piedrahita, Amit Vijayvergiya, Fairfield Greenwich Bermuda Limited, Fairfield Greenwich Limited, Fairfield Greenwich Advisors and Fairfield International Managers filed their Answers to the Second Amended Complaint in the *Fairfield 10-03800* action. (ECF Nos. 164 -168 and 170).

74.     On May 28, 2021, Defendant Fairfield Greenwich Advisors LLC filed its Answer to the Second Amended Complaint in the *Fairfield 10-03800* action on behalf of Defendant Fairfield Greenwich Group. (ECF No. 173).

75.     On June 16, 2021, the Court held a hearing on Defendants' Motion to Dismiss in the *Fairfield 09-01239* action.

76.     On August 2, 2021, the Court entered the Stipulated Case Management Order previously agreed upon and submitted by the parties on July 30, 2021 in the *Fairfield 10-03800* action. (ECF No. 174).

77.     Also on August 2, 2021, the Court entered the Stipulation and Order previously agreed upon and submitted by the parties on July 30, 2021, providing that (i) the Litigation Protective Order entered in *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. No. 08-01789 (CGM) (the "Main SIPA Action") on June 6, 2011, as modified (ECF Nos. 4137, 5474), which governs the disclosure of confidential information in the Main SIPA Action and related adversary proceedings, including the *Fairfield 09-01239* action, shall govern the disclosure of confidential information to the same extent in the *Fairfield 10-03800* action; and (ii) the Order Establishing Procedures for Third-Party Data Rooms (Main SIPA Action, ECF No. 5475), which governs the contents of, and access to, data rooms maintained by the Trustee in the Main SIPA Action and related adversary proceedings, including the *Fairfield 09-01239* action, shall govern to the same extent in the *Fairfield 10-03800* action.

78.     On August 6, 2021 the Court issued its Memorandum Decision Denying Defendants' Motion to Dismiss As to All Claims Except Those Made Against Corina Noel Piedrahita in her Individual Capacity Decision in the *Fairfield 09-01239* action. (ECF No. 336). On September 14, 2021, the Court issued its Order Denying Defendants' Motion to Dismiss as to

All Claims Except Those Against Corina Noel Piedrahita in her Individual Capacity in the *Fairfield 09-01239* action. (ECF No. 339).

79.     On November 22, 2021, the Court entered the Stipulation and Order Appointing Discovery Arbitrator previously agreed upon and submitted by the parties in the *Fairfield 10-03800* action on November 18, 2021, providing that the Order Appointing a Discovery Arbitrator Pursuant to Bankruptcy Rule 9019(c) and General Order M-390, entered in the Main SIPA Action on October 4, 2016 (ECF No. 14227), appointing the Honorable Frank Maas (ret.), c/o JAMS, Inc. as Discovery Arbitrator to resolve discovery disputes that may arise and which have been specifically referred to him by the Court with consent of the parties to the dispute, shall apply and govern the resolution of discovery disputes to the same extent in the *Fairfield 10-03800* action as in the Main SIPA Action and related adversary proceedings, including the *Fairfield 09-01239* action. (ECF No. 176).

80.     On September 30, 2021, Defendants Walter Noel, Jeffrey Tucker, Philip Toub, Andres Piedrahita, Corina Noel Piedrahita, Amit Vijayvergiya, Fairfield Investment Fund Limited, Stable Fund, Share Management, Fairfield Greenwich Capital Partners, Fairfield Greenwich Bermuda Limited, Fairfield Greenwich Limited, Fairfield Greenwich Advisors and Fairfield International Managers filed their Answers to the Second Amended Complaint in the *Fairfield 09-01239* action. (ECF Nos. 342 – 347 and 349).

81.     The Trustee continues to engage in discussions with counsel for the Defendants in the *Fairfield 09-01239* and *Fairfield 10-03800* actions.  The parties have engaged in meet and confers regarding fact discovery and have agreed to work in good faith to coordinate discovery in both actions.  Between June 16, 2021 - November 30, 2021, the Defendants have made 7 productions of documents (totaling approximately 835,151 documents) in response to the

Trustee's document requests, including in response to the Trustee's First Requests to the Defendants for the Production of Documents which the Trustee served in the *Fairfield 10-03800* action on August 20, 2021.

### D.    MATTER 21 – AVOIDANCE ACTION LITIGATION and MATTER 75 – GOOD FAITH/5A COHMAD REFERRED ACCOUNTS

82.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, discovery requests, and reviewing produced documents, communicating formally and informally with counsel for various defendants, drafting extensions of time to adjourn pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

#### a.    Resolution of Good Faith Avoidance Actions

83.    At the beginning of the Compensation Period, there were 56 active good faith avoidance actions.  Nineteen were closed during the Compensation Period, leaving a total of 37 active good faith avoidance actions by the end of the Compensation Period.  In certain avoidance actions, the Trustee entered into mediations and where appropriate, agreed to dismiss certain defendants from the actions.  In addition, the Trustee's counsel engaged in settlement negotiations, which led to twelve cases entering into documented settlements during the Compensation Period.

b.    **Trial-Related Motion Practice**

1.    **Sage Actions**

84.    On December 1, 2020, counsel for Defendants Sage Associates, Sage Realty, Malcolm Sage, Ann Passer Sage, and Martin Sage moved for permissive withdrawal of the reference.  *See* Nos. 20-cv-10057 (lead case) & 20-cv-10109, ECF No. 1.

85.    On December 15, 2020, the Trustee filed his opposition to Defendants' motion to withdraw the reference.  *See* No. 20-cv-10057, ECF Nos. 7–8.  On December 22, 2020, Defendants filed their reply in further support of their motion to withdraw the reference.  *See id.*, ECF Nos. 9–10.  On January 13, 2021, District Judge Alison J. Nathan invited the Trustee to file a "10-page sur-reply addressing the issue of, and only the issue of, whether 'substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of' th[e] proceeding[s]."  *See id.*, ECF No. 13.  On January 25, 2021, the Trustee filed his sur-reply in opposition to Defendants' motion to withdraw the reference.  *See id.*, ECF No. 14.  Defendants filed a response to the Trustee's sur-reply on February 5, 2021.  *See id.*, ECF Nos. 17–18.

86.    On May 18, 2021, Judge Nathan granted Defendants' motion to withdraw the reference to the bankruptcy court.  *See* No. 20-cv-10057, ECF No. 19.  Judge Nathan directed the parties to submit a joint letter by June 14, 2021 on the status of discovery and next steps.  *See id.*

87.    On June 14, 2021, the parties submitted a joint letter requesting the court consolidate the actions for purposes of trial and proposing a pretrial schedule for submissions in order to proceed with trial in October or November 2021.  *See* No. 20-cv-10057, ECF No 23.  On June 21, 2021, the court granted the parties' request for pretrial submissions, consolidated the cases, and set trial to begin on January 17, 2022.  *See id.*, ECF Nos. 24–27.  On July 9, 2021, the court confirmed that trial would begin on January 18, 2022.  *See id.*, ECF No. 29.

88.     On September 15, 2021, the parties jointly requested an extension of time to finalize pretrial submissions. *See* No. 20-cv-10057, ECF No. 31. The court granted the parties' request and set the deadline for pretrial submissions as November 1, 2021. *See id.*, ECF No. 32.

89.     On October 20, 2021, the parties filed a joint letter requesting leave to conduct the cross-examination of Ms. Annette Bongiorno via deposition in advance of trial. *See* No. 20-cv-10057, ECF Nos. 33–34. The court granted the parties' request on October 22, 2021. *See id.*, ECF No. 35.

90.     On November 1, 2021, the parties filed their joint pretrial statement, respective proposed findings of fact and conclusions of law, direct testimony declarations of witnesses, and motions *in limine*. *See* No. 20-cv-10057, ECF Nos. 38–53.

91.     On November 2, 2021, the actions were reassigned to District Judge John F. Keenan.

92.     On November 7, 2021, the parties exchanged oppositions to the motions *in limine*. *See* No. 20-cv-10057, ECF Nos. 65–70. On November 12, 2021, the parties filed their replies to the motions *in limine*. *See id.*, ECF Nos. 71, 73–74. On December 8, 2021, the court granted the Trustee's motions *in limine* to admit the criminal trial testimony of Mr. Frank DiPascali. *See id.*, ECF Nos. 84, 90. On December 15, 2021, the court denied Defendants' motion *in limine* to exclude the 302 and testimony of FBI Special Agent Mr. Theodore Cacioppi. *See id.*, ECF No. 91. On December 21, 2021, the court denied the Trustee's motion *in limine* to exclude charts and testimony by Mr. Malcolm Sage provided the Trustee could depose Mr. Sage for up to 6 hours prior to trial. *See id.*, ECF No. 91.

93.     On November 24, 2021, the Trustee requested leave to file a motion for summary judgment.  *See* No. 20-cv-10057, ECF No. 77.  At a status conference scheduled for December 8, 2021, Judge Keenan denied the Trustee's request.  *See id.*, ECF No. 83

94.     On December 21, 2021, the court rescheduled the trial for January 19, 2022.  *See* No. 20-cv-10057, ECF No. 92.

95.     On January 19, 2022, trial in the consolidated actions began before Judge Keenan. Trial continued on January 21, 24, and 25, in addition to February 2, 2022. The trial concluded on February 2, 2022.

96.     A decision in the district court remains pending.

### c.     Summary Judgment Motions

#### 1.     RAR Entrepreneurial Fund Ltd. Action

97.     On January 31, 2020, counsel for Defendant RAR Entrepreneurial Fund Ltd. moved for permissive withdrawal of the reference.  *See* No. 20-cv-01029, ECF No. 1.

98.     On February 18, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the court so ordered on March 5, 2020.  *See* No. 20-cv-01029, ECF Nos. 5 & 7.

99.     On April 1, 2020, the Trustee filed his motion for summary judgment.  *See* No. 20-cv-01029, ECF Nos. 12–20.   On June 5, 2020, Defendant filed its memorandum of law in opposition to the Trustee's motion for summary judgment and in support of its cross-motion for summary judgment dismissing the case in its entirely.   On June 9, 2020, Defendant filed its notice of cross-motion for summary judgment.  *See* No. 20-cv-01029, ECF Nos. 25–29.  On June 23, 2020, the Trustee filed his brief in reply to Defendant's cross-motion and Defendant's opposition

to his motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 33–35. Defendant filed its

reply brief in support of its cross-motion on June 30, 2020. *See* No. 20-cv-01029, ECF No. 36.

100.    On March 3, 2021, District Judge Jesse M. Furman granted in part and denied the

Trustee's motion for summary judgment and denied in full Defendant's cross-motion, finding that

the Trustee had standing to pursue the Two-Year Transfers, and established the elements of his

claim except that there were issues of fact with respect to whether the transfers were made by the

LLC or Madoff personally, despite finding "RAR faces an uphill battle and that the Trustee is

ultimately likely to prevail on its claim." No. 20-cv-01029, 2021 WL 827195, at *10 (S.D.N.Y.

Mar. 3, 2021).

101.    On March 18, 2021, Judge Furman held a telephonic conference, in which the

parties agreed to go to mediation before proceeding with trial. *See* No. 20-cv-01029, ECF No. 45.

102.    On April 29, 2021, the parties filed a joint letter to notify the district court that

mediation concluded unsuccessfully and requested a conference to discuss next steps. *See* No. 20-

cv-01029, ECF No. 46.

103.    On May 6, 2021, the court held a telephonic conference with the parties, during

which the trial was scheduled to begin on July 19, 2021. *See* No. 20-cv-01029, ECF No. 49.

104.    On June 2, 2021, the court issued an order rescheduling the trial to begin on July

20, 2021. *See* No. 20-cv-01029, ECF No. 59.

105.    On July 16, 2021, the trial was adjourned. *See* No. 20-cv-01029, ECF No. 98.

106.    On July 21, 2021, Defendant filed a letter motion seeking leave to take a deposition

*de bene esse* of identified fact witness, Mr. Ned Zachar, a former trader at BLMIS. On July 26,

2021, the Trustee opposed Defendant's letter motion. On July 28, 2021, the court denied the letter

motion given that Defendant already took a deposition of Mr. Zachar, and any speculation that he

may not be available on whatever dates the court sets for trial is not a basis for another deposition. *See* No. 20-cv-01029, ECF Nos. 97, 101, 103.

107.    On August 27, 2021, the court issued an order rescheduling the trial to begin on October 18, 2021. *See* No. 20-cv-01029, ECF No. 104.

108.    On September 17, 2021, the court instructed the parties it would notify them on October 13, 2021 whether the trial would be adjourned. *See* No. 20-cv-01029, ECF No. 107.

109.    On September 28, 2021, Defendant requested to amend its exhibit list to withdraw certain exhibits and revise its objections to the Trustee's exhibit list to lodge objections to certain exhibits. *See* No. 20-cv-01029, ECF No. 108. On September 30, 2021, the court granted Defendant's request. *See* No. 20-cv-01029, ECF No. 109.

110.    On October 13, 2021, the trial was adjourned and subsequently rescheduled for March 3, 2022. *See* No. 20-cv-01029, ECF Nos. 110 & 115

### 2.    Estate of Seymour Epstein Action

111.    On February 14, 2020, counsel for Defendants Estate of Seymour Epstein, Shelburne Shirt Company, Inc., and Muriel Epstein moved for permissive withdrawal of the reference. *See* No. 20-cv-01377, ECF No. 1.

112.    On March 6, 2020, the parties filed a letter with the district court consenting to the withdrawal of the reference and attaching a proposed order, as previously done in *Picard v. Meisels*, No. 20-cv-01278 (GW) (S.D.N.Y.). *See* No. 20-cv-01377, ECF Nos. 5 &9.

113.    On June 8, 2020, the district court issued an order denying the motion for withdrawal of the reference, referring the case back to the bankruptcy court to adjudicate over the Trustee's proposed motion for summary judgment. *See* No. 20-cv-01377, ECF Nos. 8–9.

114.    On June 15, 2020, the Trustee filed a letter with the bankruptcy court referring to the district court's denial of the Defendants' motion to withdraw the reference and requesting a pre-motion conference to be held on July 29, 2020.  *See* Adv. Pro. No. 04438, ECF No. 5.

115.    On July 22, 2020, Defendants filed a letter with the district court requesting permission to file a motion to dismiss for lack of subject matter jurisdiction, despite the July 8, 2020 order denying the motion to withdraw the reference.  *See* No. 20-cv-01377, ECF No. 10. Judge Gregory H. Woods "directed [defendants] to submit a pre-motion conference letter more fully setting out the bases for the proposed motion . . . address[ing] why the Court should not refer the proposed motion to dismiss to the bankruptcy court for a report and recommendation," and inviting the Trustee to submit a responsive letter.  *See id.*, ECF No. 11.  On July 24, 2020, Defendants filed their pre-motion conference letter with the district court, and the Trustee filed his response on July 27, 2020.  *See* No. 20-cv-01377, ECF Nos. 12–13.  During a telephone conference, Judge Woods directed Defendants to file a motion to withdraw the reference by August 10, 2020.  However, Defendants notified the court on August 12, 2020 of their decision not to file a motion at that time.  *Id.*, ECF Nos. 14–17.

116.    After the parties appeared at the July 29, 2020 hearing, the bankruptcy court entered an order setting the deadlines for the Trustee's motion for summary judgment and Defendants' cross-motion to dismiss for lack of subject matter jurisdiction.  *See* Adv. Pro. No. 10-04348, ECF No. 109.

117.    On September 4, 2020, the Trustee filed his motion for summary judgment.  *See* Adv. Pro. No. 10-04438, ECF Nos. 113–119.  Defendants filed their combined opposition to the Trustee's motion for summary judgment and cross-motion to dismiss for lack of subject matter jurisdiction on October 9, 2020, the Trustee filed his combined reply in further support of his

motion for summary judgment and opposition to Defendants' cross-motion to dismiss for lack of subject matter jurisdiction on October 30, 2020, and Defendants filed their reply in further support of their cross-motion to dismiss for lack of subject matter jurisdiction on November 6, 2020. *See* Adv. Pro. No. 10-04348, ECF Nos. 121–25, 129–31, 136–137.

118.    Oral argument on the Trustee's motion for summary judgment and Defendants' cross-motion to dismiss for lack of subject matter jurisdiction was adjourned to January 27, 2021 before the bankruptcy court. *See* Adv. Pro. No. 10-04438, ECF Nos. 138–145.

119.    On January 27, 2021, the bankruptcy court entered its Memorandum Decision granting summary judgment in favor of the Trustee, determining funds held in the bank accounts are customer property, and awarding prejudgment interest. *See* Adv. Pro. No. 10-04438, ECF No. 155. On February 4, 2021, the bankruptcy court entered its Judgment in favor of the Trustee to recover from Defendants the avoidable transfers made within two years of December 11, 2008 plus pre-judgment interest at the rate of 4%, from Nov. 30, 2010 through Feb. 3, 2021. *See* Adv. Pro. No. 10-04438, ECF No. 158.

120.    On February 5, 2021, Defendants moved to vacate the Judgment, sought entry of a proposed counter order, and requested a stay of enforcement of the Judgment pending appeal to an Article III Court (the "Reconsideration Motion"). On March 3, 2021, the bankruptcy court heard oral arguments, and subsequently denied Defendants' motion in its entirety. *See* Adv. Pro. No. 10-04438, ECF Nos. 160–162, 168–169.

121.    On March 15, 2021, Defendants filed their notice of appeal to the district court, where it was assigned to District Judge Colleen McMahon under case docket no. 21-cv-02334. *See* Adv. Pro. No. 10-04438, ECF No. 172.

122.     On May 5, 2021, Defendants-Appellants filed their opening brief, and refiled it

again on May 28, 2021, after the district court approved their motion to amend the record to add

additional documents.  *See* No. 21-cv-02334, ECF Nos. 20-21, 27–28.  The Trustee's brief was

filed on June 14, 2021.  *See* No. 21-cv-02334, ECF No. 30.  Defendants-Appellants' reply brief

was filed on July 12, 2021 after they requested additional pages.  *See* No. 21-cv-02334, ECF Nos.

31–34.  On September 29, 2021, Defendants-Appellants' filed a second amended designation of

the bankruptcy record on appeal.  *See* No. 21-cv-02334, ECF No. 35.

123.     On February 17, 2022, the district court granted summary judgment in favor of the

Trustee and directed that judgment be entered against (i) the Estate of Seymour Epstein and Muriel

Epstein as Executrix of the Seymour Estate and Trustee of the Trusts created by the Last Will and

Testament of Seymour Epstein in the amount of $1,110,538.16, plus prejudgment interest at a rate

of 4% from November 30, 2010 through February 17, 2022, and (ii) Shelbourne Shirt Company,

Inc. in the amount of $1,511,900.39, plus prejudgment interest at a rate of 4% from November 30,

2010 through February 17, 2022. *See* No. 21-cv-02334, ECF No. 38.

### 3.     Zieses Investment Partnership Action

124.     On April 3, 2020, counsel for Defendants Zieses Investment Partnership, Barry

Inger, Susan B. Alswanger, Caryn Zieses, Marshall Zieses, Neil R. Zieses, Debra S. Zieses, and

Allan Inger moved for permissive withdrawal of the reference.  *See* No. 20-cv-02872, ECF No. 1.

125.     On May 27, 2020, the Trustee filed a letter with the court consenting to the

withdrawal of the reference and proposing a briefing schedule for summary judgment, which

Defendants' counsel agreed to, and the court so ordered on June 4, 2020.  *See* No. 20-cv-02872,

ECF Nos. 3-4.

126.     The Trustee's motion for summary judgment was filed on June 30, 2020.  *See*

No. 20-cv-02872, ECF Nos. 9-15.  Defendants' opposition to the Trustee's motion and cross-

motion for summary judgment was filed on August 4, 2020. *See id.*, ECF Nos. 16–20. The Trustee's reply on his motion and opposition on the cross-motion was filed on August 24, 2020. *See id.*, ECF Nos. 24–26. Defendants' reply on the cross-motion was filed on September 1, 2020. *See id.*, ECF No. 27.

127.    The case remains pending before the district court.

### 4.    JABA Associates LP Action

128.    On May 15, 2020, counsel for Defendants Audrey M. Goodman, Goodman Charitable Foundation, in its capacity as a limited partner of JABA Associates LP, Audrey Goodman, in her capacity as a general and limited partner of JABA Associates LP, Bruce Goodman, in his capacity as a general Partner of JABA Associates LP, Andrew Goodman, in his capacity as a general partner of JABA Associates LP, JABA Associates LP, and The Estate of James Goodman moved for permissive withdrawal of the reference. *See* No. 20-cv-03836, ECF No. 1.

129.    On May 27, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on June 4, 2020. *See* No. 20-cv-03836, ECF Nos. 3–5.

130.    The Trustee's motion for summary judgment was filed on July 14, 2020. *See* No. 20-cv-03836, ECF Nos. 11–17. Defendants' opposition to the Trustee's motion and cross-motion for summary judgment was filed on August 18, 2020. *See id.*, ECF Nos. 20–24. The Trustee's reply on his motion and opposition on the cross-motion was filed on September 8, 2020. *See id.*, ECF Nos. 31–33. Defendants' reply on the cross-motion was filed on September 15, 2020. *See id.*, ECF No. 34.

131.    On March 24, 2021, District Judge John G. Koeltl granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $2,925,000, plus prejudgment interest at a rate of 4%, from November 12, 2010 through the date of entry of judgment in the amount of $1,213,273.97 for a total sum of $4,138,273.97.  *See Picard v. JABA Assocs. LP*, 528 F.Supp.3d 219 (S.D.N.Y. 2021).

132.    On April 6, 2021, Defendants filed their Notice of Appeal of the district court's judgment against them.  *See* No. 20-cv-03836, ECF No. 43.  It was assigned No. 21-872 in the Second Circuit.

133.    In furtherance of enforcing the Judgment, the Trustee received the transcript of the Judgment from the district court, which was docketed with the New York County Clerk's Office on May 20, 2021, to place liens on real property held by Defendants within the state.

134.    On July 30, 2021, after requesting a thirty-day extension, Defendants-Appellants filed their opening brief.  *See* No. 21-872, ECF Nos. 59–62.  The Trustee's brief was filed on October 22, 2021, and the appendix was refiled on October 27, 2021.  *See id.*, ECF Nos. 84–90, 94–99.  Defendants-Appellants' reply brief was filed on November 11, 2021.  *See id.*, ECF No. 109.

135.    On November 24, 2021, the Second Circuit calendared oral argument for the week of February 28, 2022.  *See* No. 21-872, ECF No. 111.  On December 3, 2021, Defendants-Appellants informing the court that counsel would be unavailable from March 1, 2022 through March 11, 2022 for oral argument.  *See id.*, ECF No. 112.  The court set a new date for argument on March 16, 2022.  *See id.*, ECF No. 117.

136.    The appeal remains pending before the Second Circuit.

### 5.    Gerald and Barbara Keller Family Trust Action

137.    On July 22, 2021, the Trustee filed his motion for summary judgment.  *See* No. 10-04539, ECF Nos. 99–105.  On August 17, 2021, Defendants filed their memorandum of law in opposition to the Trustee's motion for summary judgment and in support of their cross-motion for summary judgment dismissing the case in its entirely.  *See id.*, ECF Nos. 110–15.  On September 1, 2021, the Trustee filed his brief in reply to Defendants' cross-motion and Defendants' opposition to his motion for summary judgment.  *See id.*, ECF Nos. 119–21.  Defendants filed their reply brief in support of their cross-motion on September 13, 2021.  *See id.*, ECF Nos. 124–26.  On September 15, 2021, oral arguments were held before Judge Morris in the Bankruptcy Court.

138.    On September 30, 2021, Judge Morris granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $1,896,148.00, plus prejudgment interest at a rate of 4%, from December 1, 2010 through October 13, 2021 in the amount of $ 824,237.48 for a total sum of $2,720,385.48.  *Picard v. The Gerald and Barbara Keller Family Tr.*, 634 B.R. 39 (Bankr. S.D.N.Y. 2021).

139.    On October 13, 2021, Defendants filed their notice of appeal to the district court, where it was assigned to District Judge J. Paul Oetken under case docket no. 21-cv-08678.  *See* Adv. Pro. No. 10-04539, ECF Nos. 140, 143.

140.    On December 22, 2021, Defendants-Appellants filed their opening brief.  *See* No. 21-cv-08678, ECF No. 10.  The Trustee's brief was filed on January 21, 2022.  *See id.*, ECF No. 14.  Defendants-Appellants' reply brief was filed on February 16, 2022.  *See id.*, ECF No. 19.  The court advised that oral argument would not be held unless the court orders otherwise.  *See id.*

141.    The appeal remains pending before the district court.

E.    **MATTER 29 – RYE/TREMONT**

142.    This matter categorizes time spent by the Trustee and B&H attorneys following the settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS (the "Tremont Litigation").  *Picard v. Tremont Group Holdings, Inc*., Adv. Proc. No. 10-05310 (CGM) (Bankr. S.D.N.Y. Dec. 7, 2010).

143.    After the court filing, the parties entered into substantive settlement negotiations, which resulted in a significant settlement approved by the Court on September 22, 2011.  The settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion.  *Picard v. Tremont Group Holdings, Inc*., Adv. Proc. No. 10-05310 (CGM) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF No. 38).  This is the largest cash settlement to date in any case brought by the Trustee against any feeder or investment fund.

144.    Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court.  There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").

145.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011.  *See Picard v. Tremont Group Holdings, Inc*., Adv. Proc. No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18, 2011).  On June 27, 2012, United States District Judge George B. Daniels granted the

Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012. (ECF Nos. 35, 36).

146.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37). Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

147.    On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al*., Adv. Proc. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al*., Adv. Proc. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

148.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.*, Adv. Proc. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her. After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

149.    During the Compensation Period, strategy and investigation for proposed actions and drafting of amended pleadings against subsequent transferees has continued. This includes work involving issues related to establishing and supporting elements of actual knowledge or willful blindness of some of the proposed defendants, analysis consistent with recent court rulings,

and preparation for proving at trial the underlying allegations against Tremont itself in support of several of the Trustee's avoidance actions against the recipients of subsequent transfers.

### F.    **MATTER 30 – HSBC**

150.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), as well as affiliated feeder funds including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., and Alpha Prime Fund, as well as management companies affiliated with those funds, seeking the return of approximately $1.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (CGM) (Bankr. S.D.N.Y. Nov. 30, 2012).

151.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate.  (ECF Nos. 338, 339, 349, 350, 352, 363).

152.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate.  (ECF No. 16431).

153.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate.  (ECF No. 16430).

154.    On October 20, 2017, this Court approved a settlement between the Trustee and Thema International Fund plc. *Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364, ECF No. 482.  Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

155.    On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. *Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364, ECF No. 497.  The Trustee's litigation with Alpha Prime is ongoing

156.    On July 27, 2019, Alpha Prime moved for judgment on the pleadings.  *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 545.  On August 27, 2019, the Trustee opposed that motion and cross-moved to amend the complaint.  *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 548.  Oral argument was heard on September 19, 2019, and on September 23, 2019, the Court denied Alpha Prime's motion to dismiss and granted the Trustee's motion to amend.  *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 566.

157.    On September 24, 2019, the Trustee filed his amended complaint against Alpha Prime.  *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364, ECF No. 567.  Litigation is ongoing.

### G.    MATTER 32 – UBS/LUXALPHA/LIF

158.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action").  *Picard v. UBS AG*, Adv. No. 10-04285 (CGM) (Bankr. S.D.N.Y. Oct. 22, 2012).

159.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other

defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (CGM) (Bankr. S.D.N.Y. Oct. 22, 2012).

160.    In connection with the Luxalpha Action, on March 2, 2020, the Trustee filed his Motion for Leave to File a Second Amended Complaint and Proposed Second Amended Complaint.  On April 3, 2020, the Luxalpha Liquidators filed their Memorandum in Opposition to the Trustee's Motion for Leave to File a Second Amended Complaint and in Support of Luxalpha's Cross-Motion for Claim Determination and Allowance.  Subsequently, the Trustee filed his Reply Memorandum of Law in Further Support of the Trustee's Motion for Leave to File a Second Amended Complaint and Opposition to Luxalpha's Cross-Motion for Claim Determination and Allowance on May 4, 2020.  On May 18, 2020, the Luxalpha Liquidators filed their Reply Memorandum of Law in Support of Luxalpha's Cross-Motion for Claim Determination and Allowance.

161.    On June 18, 2020, the Bankruptcy Court held a telephonic conference with counsel for the Trustee and the Luxalpha Liquidators regarding the Trustee's Motion and Luxalpha's Cross-Motion, during which the Bankruptcy Court stated that hearing on the motions will be adjourned *sine die* pending the issuance of orders from the Second Circuit in the appeals of *Picard v. Citibank, N.A.*, Case No. 20-1333 and *Picard v. Legacy Capital Ltd.*, Case No. 20-1334.  *See* discussion *infra* Sections IV(I) and IV(R).  On June 22, 2020, the Trustee and the Luxalpha Liquidators filed a joint notice adjourning the hearing on the motions accordingly.

43

162.    With respect to the LIF Action, on October 27, 2020, the Trustee filed a Motion for Entry of Order Approving a Settlement By And Between the Trustee and AA (Alternative Advantage) PLC on Behalf of its Sub-Fund Landmark Investment Fund Ireland ("Landmark"). On November 16, 2020, the Bankruptcy Court entered an order approving the settlement agreement. Pursuant to the terms of the settlement agreement, Landmark is to pay approximately $3 million and make available to B&H attorneys relevant documents and information that will assist the Trustee in prosecuting other actions to avoid and recover customer property.

163.    On August 30, 2021, the Second Circuit vacated the Bankruptcy Court's dismissal of the Trustee's actions against Citibank, N.A. and Legacy Capital, holding that in a SIPA liquidation the good faith defense is governed by an inquiry notice standard and that a SIPA trustee need not plead a transferee's lack of good faith. *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 185-200 (2d Cir. 2021).

164.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued to analyze legal issues in the case and reviewed relevant documents in preparation for drafting amended complaints. B&H attorneys also engaged in efforts to obtain discovery from relevant parties and third parties. B&H attorneys also conferred with counsel for defendants regarding the next steps in the litigation between the Trustee and Luxalpha SICAV in light of the Second Circuit's decision on the good faith standard and pleading burden.

165.    On January 20, 2022, the Court entered a so-ordered stipulation between the Parties in the Luxalpha Action regarding the filing of the Trustee's Second Amended Complaint. Pursuant to the stipulation, on February 7, 2022 the Trustee provided Defendants with the Proposed Second Amended Complaint. On February 18, 2022, Defendants consented to the Trustee filing the Proposed Second Amended Complaint. Under the stipulation, the Defendants are to answer, move

44

or otherwise respond to the Second Amended Complaint on or before April 22, 2022; the Trustee

is to file any oppositions to Defendants' motions on or before June 17, 2022; and Defendants are

to file any reply briefs on or before July 29, 2022. The Second Amended Complaint was filed on

February 28, 2022.

## H.      MATTER 33 – NOMURA INTERNATIONAL PLC

166.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Nomura International plc ("Nomura") seeking the return of

approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent

Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages

in connection with certain transfers of property by BLMIS to or for the benefit of Nomura (the

"Nomura Action"). *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM) (Bankr. S.D.N.Y.

Dec. 8, 2010).

167.    By orders dated May 15, 2012 and June 7, 2012, the District Court entered orders

withdrawing the reference in the Nomura Action to determine whether SIPA and/or the

Bankruptcy Code apply extraterritorially, permitting the Trustee to avoid initial transfers that were

received abroad or to recover from initial, immediate, or mediate foreign transferees (the

"Extraterritoriality Issue"). *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,

No. 12-mc-0115 (JSR), ECF Nos. 97 and 167.

168.    On July 7 and 28, 2014, the District Court entered an opinion and order, and a

supplemental opinion and order, and returned the Nomura Action to the Bankruptcy Court for

further proceedings. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-

mc-0115 (JSR), ECF Nos. 551 and 556.

169.    On December 31, 2014, Nomura filed a consolidated memorandum of law in support of a motion to dismiss concerning the Extraterritoriality Issue (the "Extraterritoriality Motion to Dismiss").

170.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted the Extraterritoriality Motion to Dismiss as to Nomura.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (CGM), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016).  *See* discussion *infra* Section IV(U).

171.    On March 3, 2017, the Bankruptcy Court entered an order granting the Extraterritoriality Motion to Dismiss.  *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM), ECF No. 108.

172.    On April 4, 2017, the Trustee and Nomura filed a Certification to the Court of Appeals by All Parties.  *Id.*, ECF No. 113.  The Second Circuit subsequently authorized a direct appeal on October 13, 2017.

173.    On February 25, 2019, the Second Circuit issued a decision that vacated the Bankruptcy Court's order.  *In re Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Secs. LLC*, 917 F.3d 85 (2d Cir. 2019).  *See* discussion *infra* Section IV(U).

174.    On August 29, 2019, Nomura filed a petition for writ of certiorari in the United States Supreme Court.  On June 1, 2020, the United States Supreme Court denied the petition for writ of certiorari.  *See* discussion *infra* Section IV(U).

175.    On August 30, 2021, the Second Circuit vacated the Bankruptcy Court's dismissal of the Trustee's actions against Citibank, N.A. and Legacy Capital, holding that in a SIPA liquidation the good faith defense is governed by an inquiry notice standard and that a SIPA trustee

need not plead a transferee's lack of good faith.  *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th

171, 185-200 (2d Cir. 2021).  The Second Circuit's decision governs the Trustee's actions against

other subsequent transferee defendants, including Nomura. *See* discussion *infra* Section IV(R).

176.    During the Compensation Period, B&H attorneys, on behalf of the Trustee,

continued to investigate and analyze the facts of the case in anticipation of filing an amended

complaint against Nomura and moving to consolidate the Nomura Action with a separate adversary

proceeding the Trustee filed against Nomura on October 6, 2011, captioned as *Picard v. Nomura

Int'l plc*, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y. Oct. 6, 2011).

## I.    MATTER 34 – CITIBANK

177.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Citibank, N.A., Citicorp North America, Inc., and Citigroup Global

Markets Ltd. (collectively, "Citibank") seeking the return of approximately $430 million under

SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law

for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS

to or for the benefit of Citibank (the "Citibank Action").  *Picard v. Citibank*, Adv. No. 10-05345

(CGM) (Bankr. S.D.N.Y. Dec. 8, 2010).

178.    On October 18, 2019, the Bankruptcy Court denied the Trustee's motion for leave

to file an amended complaint.  (ECF No. 170).

179.    From October through November 2019, B&H attorneys analyzed the Court's ruling

denying the Trustee's motion for leave to file an amended complaint and began preparing a motion

for entry of final judgment.

180.    On November 19, 2019, the Bankruptcy Court granted the Trustee's motion on

consent for entry of final judgment (ECF No. 174) and issued an order denying the Trustee's

motion for leave to amend and entering partial final judgment.  (ECF No. 176).

181.   On November 27, 2019, the Trustee filed a notice of appeal to the Second Circuit (ECF No. 177) in connection with the following prior rulings: (i) Memorandum Decision Denying Trustee's Motion for Leave to File Amended Complaint. *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (CGM) (Bankr. S.D.N.Y. Oct. 18, 2019), ECF No. 140; (ii) Memorandum Decision Denying Trustee's Motion for Discovery Pursuant to Rule 26(d), *Picard v. Citibank*, 590 B.R. 200 (Bankr. S.D.N.Y. 2018) (Adv. Pro. No. 10-05345 (CGM)), ECF No. 140; (iii) Order of the United States Bankruptcy Court for the Southern District of New York (Bernstein, S.), dated June 18, 2018, denying the Trustee's motion for limited discovery pursuant to Federal Rules of Civil Procedure 26(d), *Picard v. Citibank, N.A.*, Adv. Pro. No. 10-05345 (CGM) (Bankr. S.D.N.Y. June 18, 2018), ECF No. 143; and (iv) Opinion and Order of the United States District Court for the Southern District of New York (Rakoff, J.), dated April 28, 2014, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 516 B.R. 18 (S.D.N.Y. 2014) (No. 12-mc-115 (JSR)), ECF No. 524.

182.   On December 3, 2019, the Parties filed a joint certification to the Bankruptcy Court under 28 U.S.C. § 158(d)(2)(A) for direct appeal to the Second Circuit.

183.   On December 20, 2019, B&H attorneys, on behalf of the Trustee, filed an Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the Second Circuit. *Picard v. Citibank, N.A.*, 19-4282 (2d Cir. 2019), ECF No. 1.

184.   On April 23, 2020, the Second Circuit granted the Trustee's Unopposed Petition for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) with the Second Circuit. *Picard v. Citibank, N.A.*, 19-4282 (2d Cir. 2019), ECF No. 23.

185.   On May 28, 2020, the Trustee filed a motion for the appeals in *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), and *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), to

proceed in tandem and to therefore be heard before the same panel. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 28.

186.    On June 2, 2020, Defendants filed their opposition to the Trustee's motion. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 31.

187.    On June 8, 2020, the Trustee filed a Reply in support of his motion for *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2019), and *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), to proceed in tandem, and on that same day, the Second Circuit granted the Trustee's motion. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2019), ECF No. 45. *See* discussion *infra* Section IV(R).

188.    On August 6, 2020, the Trustee filed his appellate brief and appendices.   On August 13, professors of bankruptcy law, the National Association of Bankruptcy Trustees, and professors of civil procedure filed their respective briefs in support of the Trustee as *amici curiae*.

189.    On November 5, 2020, Defendants-Appellees filed their opposition brief, ECF No. 134.

190.    On November 12, 2020, (i) the Securities Industry and Financial Markets Association and the American Bankers Association; (ii) ABN AMRO Bank N.V.; and (iii) ABN AMRO Retained Custodial Services (Ireland) Limited and ABN AMRO Custodial Services (Ireland) Ltd. filed their respective briefs in support of the Defendants-Appellees' opposition as *amici curiae*, ECF Nos. 136, 139, 140.

191.    On November 25, 2020, the Trustee and SIPC filed their respective reply briefs, ECF Nos. 166, 167.

192.    Oral argument was heard on March 12, 2021 before the Second Circuit.

193.    On March 23, 2021 and June 11, 2021, the Trustee filed notices to adjourn the pre-trial conference while awaiting the Second Circuit judgment, which was issued on August 30,

2021. The Second Circuit judgment vacated the judgments of the bankruptcy court and remanded the case for proceedings consistent with the Second Circuit's opinion. *See* discussion *infra* Section IV(R).

194.     During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared an amended complaint against Defendants and a motion for leave to file the amended complaint. B&H attorneys subsequently negotiated with Defendants to file a stipulation and order governing the briefing schedule for the Trustee's motion for leave to file the amended complaint and, alternatively, the briefing schedule for Defendants' motion to dismiss the amended complaint. B&H attorneys then negotiated with Defendants to obtain their consent to file the amended complaint. On February 11, 2022, B&H attorneys filed the amended complaint.

195.     On January 27, 2022, Defendants Citibank, N.A. and Citicorp North America, Inc. petitioned the Supreme Court for a writ of certiorari to review the Second Circuit's judgment. The Trustee declined to submit an opposition. On February 28, 2022, the Supreme Court denied the petition for writ of certiorari.

## J.     <u>MATTER 35 – NATIXIS</u>

196.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

197.    Prior to the Compensation Period, the Second Circuit issued its opinion regarding extraterritoriality and comity, reversing the Bankruptcy Court's 2016 decision. *In re Picard, Trustee for Liquidation of BLMIS*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *infra* Section IV(U). This Second Circuit decision revived claims against all Natixis Defendants. To give the Trustee time to analyze the Second Circuit decision, the parties entered a stipulation on February 27, 2019, staying the action for 30 days. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 180).

198.    On March 28, 2019, the parties entered a stipulation to stay the action until the mandate issues from the Second Circuit and the Bankruptcy Court's jurisdiction over the case is revived. *Id.*, (ECF No. 181).

199.    On July 1, 2020, the parties entered a stipulation to stay the Natixis Action until the United States Court of Appeals for the Second Circuit decided the good faith appeal pending in the Trustee's actions against Citibank, N.A. and Legacy Capital Ltd. *Id.*, (ECF No. 185); *see* discussion *supra* Section IV(I) and *infra* Section IV(R).

200.    During the Compensation Period, following the Second Circuit's decision in *Picard v. Citibank N.A.* and *Picard v. Legacy Capital, Ltd.*, in *In re Bernard L. Madoff Investment Securities LLC*, 12 F.4th 171 (2d Cir. 2021), B&H attorneys are analyzing the filed complaint in the Natixis Action, investigating potential amendments, and assessing potential motion practice and discovery.

## K.    **MATTER 36 – MERRILL LYNCH**

201.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Merrill Lynch International ("MLI") seeking the return of at least $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of

property by BLMIS to or for the benefit of MLI (the "MLI Action"). *Picard v. Merrill Lynch Int'l*, Adv. No. 10-05346 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

202.    During the Compensation Period, on August 30, 2021, the Second Circuit issued the *Citibank Decision*, 12 F.4th 171 (2d. Cir. 2021), holding that in a SIPA liquidation the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith. The *Citibank Decision* vacated a prior decision from the district court, which held that in a SIPA liquidation good faith is governed by a willful blindness standard and that a SIPA trustee bears the burden of pleading the transferee's lack of good faith. *See* discussion *supra* Section IV(I).

203.    During the Compensation Period and following the *Citibank Decision*, counsel for the Trustee has met and conferred with MLI's counsel to discuss a date by which defendants will respond to the Trustee's complaints and moving these cases into discovery. B&H attorneys have also been analyzing the filed complaint in the MLI Action and assessing potential motion practice and discovery.

## L.    **MATTER 37 – ABN AMRO**

204.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing two avoidance actions against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("ABN/RBS").[9]

205.    In the first action, the Trustee seeks the return of approximately $276 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain subsequent transfers of BLMIS customer property ABN/RBS received from Rye Select Broad Market XL Portfolio, Ltd., Rye

---

[9] On May 30, 2018, The Royal Bank of Scotland N.V. changed its name to "NatWest Markets N.V."

Select Broad Market Portfolio Limited, Rye Select Broad Market XL Fund L.P., and Rye Select

Broad Market Fund L.P. *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of*

*Scotland, N.V.)*, Adv. No. 10-05354 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010) ("ABN/RBS Rye

Bankruptcy Court Action").

206.     On June 10, 2019, the Trustee filed a motion for leave to file a second amended

complaint in the ABN/RBS Rye Bankruptcy Court Action. *Id*., ECF No. 179. On March 31, 2020,

the Bankruptcy Court denied the Trustee's motion. *Id*., ECF No. 200. On April 9, 2020, the

Bankruptcy Court entered a final judgment in the matter (the "Final Judgment"). *Id*., ECF No. 201.

207.     On April 23, 2020, the Trustee filed a Notice of Appeal, appealing the Final

Judgment to the District Court. *Id*., ECF No. 202. On May 12, 2020, the Record of Appeal was

transmitted to the District Court and the appeal was assigned to Judge Valerie E. Caproni. *Picard*

*v. ABN AMRO Bank N.V.*, No. 20-cv-3684 (VEC) (S.D.N.Y. May 12, 2020) ("ABN/RBS District

Court Appeal"), ECF No. 1.

208.     On May 28, 2020, the Trustee moved the District Court for a stay of his appeal

pending a decision by the Second Circuit in two similarly situated actions: *Picard v. Citibank,*

*N.A.*, No. 20-1333 (2d Cir.), and *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir.) (collectively,

the "Good Faith Appeals"). ABN/RBS District Court Appeal, ECF Nos. 3-4. On June 8, 2020, the

District Court granted the Trustee's motion and stayed his appeal, with exception to permit a

motion by ABN/RBS for certification of the appeal for direct appeal to the Second Circuit. *Id*.,

ECF No. 12.

209.     On June 9, 2020, ABN/RBS moved the District Court to certify the Trustee's appeal

for direct appeal to the Second Circuit. *Id*., ECF Nos. 17-18. On July 16, 2020, the District Court

granted ABN/RBS's motion and certified the Trustee's appeal for direct appeal to the Second Circuit. *Id.*, ECF No. 22.

210.    On July 21, 2020, ABN/RBS moved the Second Circuit to authorize the direct appeal, for expedited consideration of its motion, and for the resulting appeal to proceed in tandem with the Related Appeals. *Picard v. ABN AMRO Bank, N.V.*, No. 20-2291 (2d Cir. July 21, 2020) ("ABN/RBS Second Circuit Appeal"), ECF Nos. 1-2. On August 4, 2020, the Second Circuit denied ABN/RBS's motion to expedite consideration of its motion for leave to appeal and to have the resulting appeal proceed in tandem with the Good Faith Appeals. *Id.*, ECF No. 37. On October 6, 2020, the Second Circuit issued an order deferring its decision on ABN/RBS's motion for leave to appeal pending resolution of the Good Faith Appeals. *Id.*, ECF No. 48.

211.    On October 6, 2011, the Trustee commenced a second action against ABN/RBS in the adversary proceeding *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) et al*, Adv. Pro. 11-02760 (CGM), seeking the return of approximately $21 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with subsequent transfers of BLMIS customer property ABN/RBS received from Harley International (Cayman) Limited ("ABN/RBS Harley Bankruptcy Court Action").

212.    On July 6, 2014, the District Court entered an Opinion and Order ruling on extraterritoriality and international comity issues (the "District Court ET Decision") and returned certain matters to the Bankruptcy Court for further proceedings consistent with the District Court ET Decision, *see SIPC v. BLMIS (In re Madoff)*, 513 B.R. 222 (S.D.N.Y. 2014). *See* discussion *infra* Section IV(U).

213.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "Bankruptcy Court ET Decision") dismissing certain claims to recover subsequent transfers on grounds of international comity resulting in the dismissal of all claims against ABN/RBS in the ABN/RBS Harley Bankruptcy Court Action. ABN/RBS Harley Bankruptcy Court Action, ECF No. 74; *see Picard v. Bureau of Labor Ins. (SIPC v. BLMIS)*, Adv. Pro. No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016). *See* discussion *infra* Section IV(U).

214.    On February 25, 2019, the Second Circuit issued an order, *In re Picard*, 917 F.3d 85 (2d Cir. 2019) which, *inter alia*, vacated the Bankruptcy Court ET Decision.

215.    During the Compensation Period, on August 30, 2021, the Second Circuit entered its decision in the Good Faith Appeals. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. Aug. 30, 2021), ECF No. 182-1 (the "Good Faith Decision"). *See* discussion *supra* Section (V(I). B&H attorneys conferred with counsel for ABN/RBS and, on October 26, 2021, the parties filed a Stipulation in the Second Circuit to withdraw the ABN/RBS Second Circuit appeal with prejudice pursuant to Federal Rule of Appellate Procedure 42(b). ABN/RBS Second Circuit Appeal, ECF No. 51. On October 27, 2021, the Second Circuit "so-ordered" the Stipulation and issued the mandate. *Id.*, ECF Nos. 57-58.

216.    On November 12, 2021, the parties filed a letter in the District Court to so order a Stipulation to vacate the Bankruptcy Court's Final Judgment and remand the case to the Bankruptcy Court for further proceedings. ABN/RBS District Court Appeal, ECF No. 25. On November 12, 2021, the District Court "so-ordered" the Stipulation, vacated the Bankruptcy Court's Final Judgment, and remanded the case to the Bankruptcy Court for further proceedings. *Id.*, ECF No. 26.

217.    On November 16, 2021, the Trustee's action against ABN/RBS was formally reopened in the Bankruptcy Court. ABN/RBS Rye Bankruptcy Court Action, ECF No. 214.

218.    During the Compensation Period, B&H attorneys also analyzed the Good Faith Decision, worked on further revising the complaints in the Trustee's actions against ABN/RBS, further conferred with ABN/RBS's counsel, and, on January 14, 2022, the Bankruptcy Court "so-ordered" a Stipulation between the parties setting forth a schedule for the Trustee's motion to amend the complaints and consolidate his two actions against ABN/RBS. ABN/RBS Rye Bankruptcy Court Action, ECF No. 217; ABN/RBS Harley Bankruptcy Court Action, ECF No. 109. The Trustee's motion for leave to consolidate and amend the complaints is due on March 8, 2022, ABN/RBS's response to the Trustee's motion is due on May 9, 2022, and the Trustee's reply in further support of his motion is due on June 9, 2022. *Id.*

## M.    **MATTER 39 – FORTIS**

219.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants (the "Fortis Action"). *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

220.    On January 11, 2019, the Bankruptcy Court so ordered the Stipulation and Order Concerning the Trustee's Motion for Leave to File an Amended Complaint. (ECF No. 162). On

February 22, 2019, the Trustee filed the Motion for Leave to File an Amended Complaint. (ECF No. 165). On April 23, 2019, the Fortis Defendants filed the Opposition to the Trustee's Motion for Leave to File an Amended Complaint. (ECF No. 169). On May 23, 2019, the Trustee filed the Reply in Further Support of the Motion for Leave to File an Amended Complaint. (ECF No. 179). Oral argument in this matter was held on September 25, 2019. On January 23, 2020, the Bankruptcy Court issued its Memorandum Decision Denying Motion for Leave to File Second Amended Complaint. (ECF No. 188). On February 6, 2020, the Bankruptcy Court entered the Stipulated Order Denying the Trustee's Motion for Leave to Amend and Entering Final Judgment. (ECF No. 189).

221.    On February 19, 2020, the Trustee filed his Notice of Appeal. (ECF No. 189).  On March 4, 2020, the Trustee filed his Designation of Items to be Included in the Record on Appeal and Statement of Issues to Presented. (ECF No. 192).  On March 18, 2020, the Fortis Defendants filed a Counter-Designation of Additional Items to be Included in the Record on Appeal. (ECF No. 194).  On March 27, 2020, the Record of Appeal was transmitted to the United States District Court of Appeal and assigned to Judge Colleen McMahon. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. Mar. 27, 2020) (ECF Nos. 1, 3).

222.    On April 6, 2020, the Fortis Defendants moved for Leave to Appeal directly to the Second Circuit pursuant to § 158(d)(2)(A). (ECF Nos. 8-10).  On April 10, 2020, the Trustee filed a joint letter motion for an Extension of Time to Complete Merits Briefing and Trustee's Response and Consent to Defendants' Motion Requesting Permission to Appeal to the Second Circuit. (ECF No. 14).  On May 7, 2020, the Trustee filed a Letter Motion for an Extension of Time of Briefing Schedule beyond May 15, 2020. (ECF No. 17).  On May 8, 2020 Judge McMahon granted the Trustee's Letter Motion. (ECF Nos. 18, 19).  On June 11, 2020, Judge McMahon granted the Fortis

Defendants' motion for Leave to Appeal and stayed merits briefing pending resolution of the motion. (ECF No. 24).

223.    On June 18, 2020, the Fortis Defendants filed a motion for Leave to Appeal to the Second Circuit. *Picard v. ABN AMRO Bank (Ireland) Ltd*., No. 20-1898 (2d Cir. Jun 18, 2020) (ECF Nos. 1-2).    The Fortis Defendants also filed a motion to expedite so that the Fortis Defendants' briefing could be heard in tandem with the related appeals of *Picard v. Citibank, N.A*., No. 20-1333 (2d. Cir.) and *Picard v. Legacy Capital Ltd*., No. 20-1334 (2d Cir.) (together, the "Related Appeals"). (ECF No. 2). On August 4, 2020, the Second Circuit denied the Fortis Defendants' motion to expedite and for hearing in tandem. (ECF No. 42).    On October 6, 2020, the Second Circuit deferred a decision on the motion for leave to appeal to the Second Circuit until the resolution of the Related Appeals. (ECF No. 48).

224.    On August 30, 2021, the Second Circuit rendered its decision in the Related Appeals, overturning the District Court's standard for pleading good faith, vacating the judgments of the Bankruptcy Court, and remanding for further proceedings consistent with the opinion. *Picard v. Citibank, N.A*., No. 20-1333 (2d. Cir. Aug. 30, 2021) (ECF No. 182); *Picard v. Legacy Capital Ltd*., No. 20-1334 (2d Cir. Aug. 30, 2021) (ECF No. 177).

225.    On October 1, 2021, the Fortis Defendants filed an updated petition requesting permission to appeal to the Second Circuit. *Picard v. ABN AMRO Bank (Ireland) Ltd*., No. 20-1898 (2d Cir. Oct. 1, 2021) (ECF No.50).  On October 12, 2021, the Trustee filed an opposition to this motion. (ECF No. 67). The matter was heard on February 1, 2022, and the Second Circuit denied the request for direct appeal on February 3, 2022. (ECF No. 84). The matter is now pending in the District Court before Judge McMahon with the Trustee's merits brief due on March 7, 2022.

*Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 20-cv-2586-cm (S.D.N.Y. Feb. 4, 2022) (ECF No. 26).

### N.    **MATTER 53 – MAGNIFY**

226.    This matter categorizes time spent by the Trustee and B&H attorneys in connection with the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green and Express Enterprises Inc. (collectively, the "Magnify Defendants") seeking the return of over $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants.  *Picard v. Magnify Inc., et.al.*, Adv. No. 10-05279 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2010).

227.    The matter also concerns the Trustee's subsequent transferee action in the United States brought to recover subsequent transfers of customer property from The Yeshaya Horowitz Association to Defendants The Hebrew University of Jerusalem, Yissum Research Development Corporation of the Hebrew University of Jerusalem Ltd., Ben-Gurion University of the Negev, B.G. Negev Technologies and Applications Ltd., The Weizmann Institute of Science, and Bar Ilan University (collectively, the "Subsequent Transfer Defendants").  *Picard v. Hebrew University of Jerusalem et al.,* Adv. No. 21-01190 (CGM) (Bankr. S.D.N.Y. Sept. 27, 2021).

228.    Following the Court's Order of June 18, 2019 directing the parties to participate in mediation (ECF No. 181) and the July 11, 2019 order appointing Mr. Ted Berkowitz as the mediator (ECF No. 185), the parties engaged in a mediation from September 12-14, 2019 to consider a settlement framework that would involve both the U.S. action and the Trustee's action in Israel against certain defendants ("Israeli Direct Action").  Following the mediation session, discussions among the parties continued, and the terms of a settlement were reached.

229.     The Trustee continued negotiating and drafting agreements for the resolution of those actions, along with consent judgments to be entered against the defendants and other ancillary documents.  In connection with the negotiations, the Trustee conducted due diligence on financial disclosures provided by the defendants.  Finally, as a result of those efforts, the Trustee entered into a settlement agreement with the Magnify Defendants, which was approved by the Bankruptcy Court on September 28, 2020 (ECF No. 197), and with the defendants in the Israeli Direct Action as well.

230.     In addition to a settlement payment of $3.5 million USD, which exceeded the two-year fictitious profits alleged against certain defendants, the settlement avoided the full life-to-date amount of the initial transfers as fictitious profits pursuant to the Bankruptcy Code.  The settlement resulted in Consent Judgments against Defendants Magnify, Premero, Strand, and YHA for the full amount of the unrecovered liability alleged by the Trustee, among other benefits.  YHA has no assets and did not contribute to the settlement payment.  The Consent Judgments were entered by the Court on October 22, 2020 (ECF Nos. 198-202).

231.     After the settlement was approved by the Bankruptcy Court, the Trustee focused on potential claims against several subsequent transferees who received tens of millions of dollars that originated from the fraud at BLMIS.  During the Compensation Period, the Trustee continued preparing a complaint against these entities seeking the recovery of certain subsequent transfers.  That complaint was filed in September 2021 (ECF No. 1).  Thereafter, the Trustee met and conferred with opposing counsel to set deadlines for responsive papers in connection with the subsequent transfer complaint.  In accordance with those deadlines, Defendants filed a motion to dismiss on February 10, 2022.

232.    The Trustee also, and separately, continued to prosecute his pending action in Israel, commenced in 2015, to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts ("Israeli Indirect Action").  During the Compensation Period, the Trustee worked with Israeli counsel to analyze strategic issues relating to the case, including the extensive production of documents, affidavits and other materials in support of his case, and working with experts in both the U.S. and Israel in connection with expert reports and related materials.

233.    Additionally, during the Compensation Period, the Trustee continued to navigate multiple issues concerning document discovery, including addressing logistical and strategic issues relating to the production of documents in a foreign country, assessing deficiencies in the defendants' discovery responses, and performing various legal and factual research to help prosecute the Trustee's cases.

## O.      MATTER 60 – AVELLINO & BIENES

234.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants.  *Picard v. Avellino*, Adv. No. 10-05421 (CGM) (Bankr. S.D.N.Y. Dec. 10, 2010).

235.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, performed overall case management and prepared for trial, which included reviewing documents,

deposition transcripts of defendants, deposition and criminal trial testimony of former BLMIS employees and other evidence.

236.    B&H attorneys also focused on summary judgment motions, including developing the Trustee's affirmative summary judgment motion on the claims to avoid and recover fictitious profits made to certain defendants between December 11, 2006 and December 11, 2008, as well as opposing defendants' anticipated motion, which included drafting the Trustee's memorandum of law in support of its motion for summary judgment, drafting the Trustee's Rule 56.1 statement of material facts, drafting the Trustee's supporting declaration, and identifying potential exhibits. In connection with the summary judgment motions the team also analyzed defendants' expert's opinions, reviewed and identified key documents, analyzed deposition testimony of defendants and third parties (including former BLMIS employees and experts), researched issues, and developed themes and arguments.

237.    B&H attorneys conferred with defendants' counsel to submit to the Court a proposed joint briefing schedule for the parties' summary judgment motions. B&H attorneys also drafted and filed a letter with the Court seeking a pre-motion conference pursuant to Bankr. R. 7056-1(A) for leave to file a motion for summary judgment that included the parties' agreed upon summary judgment briefing schedule. Additionally, B&H attorneys prepared for and appeared before the Court on December 15, 2021, for a pretrial and pre-motion conference, which was adjourned to January 19, 2022. In response to the Court's request at the December conference, B&H attorneys conferred with defendants' counsel and drafted a letter to the Court identifying the counts and defendants currently remaining in the matter. B&H attorneys also prepared for and appeared before the Court for a conference on January 19, 2022, where the Court approved the parties' summary judgment briefing schedule and adjourned the conference until June 15, 2022.

On February 3, 2022, the Trustee filed his motion for partial summary judgment seeking to avoid and recover $17.2 million in fictitious profits made between December 11, 2006 and December 11, 2008 plus interest and seeking summary judgment as to general partner liability.

## P.    MATTER 62 – SUBSEQUENT TRANSFERS

238.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.

239.    The Trustee has 80 subsequent transfer cases that seek to recover transfers of customer property that defendants received from the "Fairfield Funds" managed by the Fairfield Greenwich Group, the "Tremont Funds" managed by Tremont Partners, Inc., and/or Harley International (Cayman) Limited.

240.    During the Compensation Period, on August 30, 2021, the Second Circuit issued the *Citibank Decision*, 12 F.4th 171 (2d. Cir. 2021), holding that in a SIPA liquidation the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith.  The *Citibank Decision* vacated a prior decision from the district court, which held that in a SIPA liquidation good faith is governed by a willful blindness standard and that a SIPA trustee bears the burden of pleading the transferee's lack of good faith. *See* discussion *supra* Section IV(I).

241.    Following the *Citibank Decision*, counsel for the Trustee met and conferred with counsel for each of the subsequent transfer defendants to discuss a date by which defendants would respond to the Trustee's complaints and moving these cases into discovery.  In a number of cases, the Trustee has also prepared amended complaints that seek to add or correct transfers that defendants received from the various feeder funds, or to add a defendant and/or substitute a new defendant for an old one pursuant to Rule 15 of the Federal Rules of Civil Procedure.

242.    Defendants have filed motions to dismiss in the following cases to date: *Picard v. Banque Syz & Co., SA*, Adv. No. 11-02149 (CGM) (Bankr. S.D.N.Y.) (ECF No. 150); *Picard v. Banca Carige S.P.A*, Adv. No. 11-02570 (CGM) (Bankr. S.D.N.Y.) (ECF No. 108); *Picard v. Multi-Strategy Fund Limited*, Adv. No. 12-01205 (CGM) (Bankr. S.D.N.Y.) (ECF No. 94); *Picard v. Banque Lombard Odier & Cie SA*, Adv. No. 12-01693 (CGM) (Bankr. S.D.N.Y.) (ECF No. 91); *Picard v. The Hebrew University of Jerusalem, et al*., Adv. No. 21-01190 (CGM) (Bankr. S.D.N.Y.) (ECF No. 17); *Picard v. The Sumitomo Trust and Banking Co., LTD*, Adv. No. 11-02573 (CGM) (Bankr. S.D.N.Y.) (ECF No. 112); *Picard v. Bordier & Cie*, Adv. No. 12-01695 (CGM) (Bankr. S.D.N.Y.) (ECF No. 87); *Picard v. Lloyds TSB Bank PLC*, Adv. No. 12-01207 (CGM) (Bankr. S.D.N.Y.) (ECF No. 88); *Picard v. Parson Finance Panama S.A*., Adv. No. 11-02542 (CGM) (Bankr. S.D.N.Y.) (ECF No. 93); *Picard v. Barclays Bank (Suisse) S.A., et al*., Adv. No. 11-02569 (CGM) (Bankr. S.D.N.Y.) (ECF No. 126); and *Picard v. The Public Institution for Social Security*, Adv. No. 12-01002 (CGM) (Bankr. S.D.N.Y.) (ECF No. 118).

## Q.    **MATTER 63 – CITRUS INVESTMENT HOLDINGS, LTD.**

243.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citrus Investment Holdings, Ltd. ("Citrus") seeking the return of approximately $17 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citrus (the "Citrus Action"). *Picard v. Citrus Investment Holdings, Ltd.*, Adv. No. 10-04471 (SMB) (Bankr. S.D.N.Y. November 30, 2010).

244.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued preparing an amended complaint and analyzing potential subsequent transfer claims in addition to the claims set forth in the original complaint. This work included review and analysis

of the amended complaint's allegations and supporting documents, and the coordination of the allegations and claims in the amended complaint with amended complaints being prepared in actions with similar or overlapping issues and parties. The work done during the Compensation Period also included review of account documents, correspondence and documents produced by service providers to Citrus for purposes of identifying additional evidence to support the amended complaint, as well as further discovery planning and analysis related to potential settlement negotiations.

### R.    **MATTER 65 – LEGACY**

245.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2010).

246.    As background, on November 12, 2019, the Bankruptcy Court entered a Stipulation and Order for Entry of Final Judgment ("Stipulated Order"), that included, among other things: (i) the Trustee's and Legacy's consent to the Bankruptcy Court's entry of a final order and judgment in connection with the Trustee's avoidance claim, and (ii) entry of the final order and judgment against Legacy in the amount of $79,125,781.00. The Stipulated Order further provided that "the Legacy Transfers are avoidable and avoided under § 548(a)(1)(A) and recoverable from Legacy under §550(a) of the Bankruptcy Code." On November 11, 2020, and within the time period set forth in §550(f) of the Bankruptcy Code, the Trustee filed a recovery complaint against Rafael Mayer, David Mayer, Montpellier International, Ltd., Prince Assets LDC, Khronos Group, Ltd., Montpellier USA Holdings, LLC, Prince Resources LDC, Prince Capital Partners LLC, and

Khronos Liquid Opportunities Fund Ltd. (collectively, the "Subsequent Transfer Defendants"). The complaint sought recovery of approximately $49,505,850 in subsequent transfers of BLMIS customer property originally made to Montpellier and Prince by Legacy. Among the claims were claims for vicarious liability including alter ego liability, and piercing the corporate veil concerning the individual defendants.

247.    On March 2, 2021, Subsequent Transfer Defendants Rafael Mayer, David Mayer, Prince Resources LDC, Prince Capital Partners LLC, and Khronos Liquid Opportunities Fund Ltd. filed Motions to Dismiss the Trustee's recovery complaint. Pursuant to a stipulated briefing schedule between the Trustee and the Subsequent Transfer Defendants, the Trustee's Opposition to the Motions to Dismiss was scheduled to be filed on May 4, 2021, and the Subsequent Transfer Defendants' reply papers were to be filed by June 1, 2021. The Court set oral argument on the Motions to Dismiss for June 16, 2021. By stipulation, the Trustee and the Subsequent Transfer Defendants agreed to alter the briefing schedule on the Motions to Dismiss by extending the deadline for reply papers to June 15, 2021 and adjourning the oral argument date to July 28, 2021.

248.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued to evaluate the status of the Trustee's Appeal of the good faith standard under sections 548(c) and 550(b) of the Bankruptcy Code (the "Good Faith Appeal") in *Picard v. Citibank, N.A. and Picard v. Legacy Capital, Ltd.* As the Second Circuit's decision on the Good Faith Appeal was expected in the late summer/early fall of 2021, the Trustee requested a two-month extension of the July 28, 2021 argument date for the Subsequent Transfer Defendants' Motions to Dismiss. At the same time, the Trustee and counsel for Prince Resources LDC and Prince Capital Partners LLC entered in a stipulation whereby these two defendants agreed to withdraw their Motions to Dismiss without prejudice pending the appellate decision. On July 27, 2021, Judge Morris granted

the Trustee's request to adjourn the hearings on the Motions to Dismiss and re-set the hearing date

for September 15, 2021.

249.    On August 30, 2021, the Second Circuit issued a decision concerning the Good

Faith Appeal in *Picard v. Citibank, N.A. and Picard v. Legacy Capital, Ltd.*, holding that in a SIPA

liquidation the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an

inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's

lack of good faith.   The Good Faith Appeal decision vacated Judge Rakoff's 2014 consolidated

good faith decision holding that in a SIPA liquidation good faith is governed by a willful blindness

standard and that a SIPA trustee bears the burden of pleading the transferee's lack of good faith.

*See* discussion *supra* Section IV(I).  The Good Faith Appeal decision also vacated Judge

Bernstein's decision in the Trustee's action against Legacy applying Judge Rakoff's good faith

decision, which had dismissed all claims in that action except for Count I to the extent it related to

avoidance of fictitious profits. The Second Circuit remanded the Legacy adversary proceeding to

the Bankruptcy Court for the proceedings to continue consistent with the appellate decision.

250.    During the Compensation Period, B&H attorneys, on behalf of the Trustee,

considered the impact of the Second Circuit's Good Faith Appeal decision on the remanded

Legacy adversary proceeding, and began to analyze potential amendments to the pleadings in that

matter.   B&H attorneys also began to work on a revised case management and discovery plan for

the remanded Legacy adversary proceeding.   Further, B&H attorneys prepared discovery requests

for party and third-party witnesses in the remanded Legacy adversary proceeding.

251.    During the Compensation Period, B&H attorneys, on behalf of the Trustee,

prepared for and participated in oral argument in connection with the Motions to Dismiss filed by

Rafael Mayer, David Mayer, and Khronos Liquid Opportunities Fund Ltd.  On September 15,

2021, Judge Morris heard oral arguments in connection with the motions to dismiss and reserved decision at the hearing.

252.     On October 27, 2021, Judge Morris issued a memorandum decision denying the Motions to Dismiss filed by Rafael Mayer, David Mayer, and Khronos Liquid Opportunities Fund Ltd.  Subsequent Transfer Defendants Rafael Mayer, David Mayer, Prince Resources LDC, Prince Capital Partners LLC and Khronos Liquid Opportunities Fund Ltd.  filed Answers to the Trustee's Complaint on January 10, 2022.

253.     On January 26, 2022, defendants Rafael Mayer, David Mayer, Prince Resources LDC, Prince Capital LLC, and Khronos Liquid Opportunities Fund Ltd. filed a joint motion pursuant to § 28 U.S.C. 157(d), Federal Rule of Bankruptcy Procedure 5011, and Rule 5011-1 of the Local Rules of the Bankruptcy Court, seeking withdrawal of the reference to the Bankruptcy Court of Adversary Proceeding No. 20-01316 (CGM).  That motion was assigned to District Judge Cote.  The Trustee's opposition brief was filed on February 25, 2022.

254.     During the Compensation Period, B&H attorneys, on behalf of the Trustee, began to work on a case management and discovery plan for the recovery actions against the Subsequent Transfer Defendants.  Further, B&H attorneys prepared discovery requests for party and third-party witnesses in connection with the recovery action.

### S.     MATTER 71 – SQUARE ONE

255.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Square One Fund Ltd. ("Square One") seeking the return of approximately $26 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law, in connection with certain transfers of property by BLMIS to or for the benefit of Square One.  *Picard v. Square One Fund Ltd*., Adv. Pro. No. 10-04330 (CGM) (Bankr. S.D.N.Y. Nov. 29, 2010).

256.     Prior to the Compensation Period, the Trustee filed and served the Amended Complaint on December 21, 2018.  (ECF Nos. 167–69).  After Square One filed a motion to dismiss on February 14, 2019 (ECF No. 170), the Court granted in part and denied in part the motion to dismiss at a hearing on May 29, 2019.  On June 13, 2019, the Court entered an order granting in part and denying in part Square One's motion to dismiss.  (ECF No. 177).  The Court so-ordered a Case Management Plan on July 16, 2019.  (ECF No. 178).

257.     During the Compensation Period, the Trustee and Square One continued to engage in fact discovery pursuant to the Court's Case Management Plan.

258.     The Trustee's discovery efforts included travel in October 2021 to the United Kingdom, Luxembourg, and Switzerland to meet with foreign counsel to discuss ongoing and pending discovery efforts in the three jurisdictions.

259.     On October 18, 2021 and October 25, 2021, the Trustee attended examinations of three witnesses in the Vaud Canton, Switzerland, under the Hague Convention Taking of Evidence.

260.     The Trustee also served additional document requests on Square One in October 2021.

261.     In addition, on August 3, 2021, the Court issued Orders issuing Letters of Request for Service Abroad of Judicial or ExtraJudicial Documents in a Civil or Commercial Matter for three witnesses in Switzerland and one witness in the United Kingdom (ECF Nos. 223, 224, 225, 226), and the Court issued an Order Amending the Case Management Plan (ECF No. 227).

262.     On August 26, 2021, the Trustee filed a letter to Judge Morris requesting amendment to the Case Management Plan with a Proposed Amended Case Management Plan (ECF No. 228), which was signed by Judge Morris (ECF No. 230).

263.    On September 2, 2021, the Clerk of Court filed a Notice of Hearing on Status Conference to be held on March 15, 2023 (ECF No. 231).

264.    On September 29, 2021, the Transcript regarding the Hearing Held on July 28, 2021 was filed (ECF No. 232).

265.    Finally, on December 2, 2021, the Trustee filed and served a notice adjourning the pre-trial conference (ECF No. 233), which was adjourned to June 15, 2022 by the Court (ECF No. 235).

T.    **MATTER 73 – BNP PARIBAS**

266.    This matter categorizes time spent by the Trustee and B&H attorneys in separate adversary proceedings that collectively seek the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust (Cayman) Limited, BNP Paribas Securities Services, BNP Paribas (Suisse) S.A., and BGL BNP Paribas Luxembourg S.A., (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS. *See Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. Nov. 3, 2011); *Picard v. BNP Paribas S.A*., Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. May 4, 2012); and *Picard v. Equity Trading Portfolio Ltd*., Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. Dec. 1, 2010) (collectively, the "BNP Paribas Proceedings").

267.    On October 3, 2018, the Bankruptcy Court issued its decision granting in part and denying in part the BNP Paribas Defendants' motion to dismiss claims to recover subsequent transfers that the BNP Paribas Defendants received from certain Tremont feeder funds, and on January 17, 2019, the BNP Paribas Defendants filed their answer to the Trustee's Amended Complaint.

268.    The parties then agreed to stay the proceedings until the United States Court of

Appeals for the Second Circuit decided the good faith appeal pending in the Trustee's actions

against Citibank, N.A. and Legacy Capital Ltd. *See* discussion *supra* Section IV(I) and (R).

269.    During the Compensation Period, following the Second Circuit's decision in *Picard*

*v. Citibank N.A.* and *Picard v. Legacy Capital, Ltd.*, in *In re Bernard L. Madoff Investment*

*Securities LLC*, 12 F.4th 171 (2d Cir. 2021), B&H attorneys analyzed the filed complaints in the

BNP Paribas Proceedings, investigated potential amendments, and assessed potential motion

practice and discovery.

## U.    MATTER 77 – EXTRATERRITORIALITY

270.    On July 6, 2014, the District Court held that certain of the Trustee's claims were

barred by principles of international comity and the presumption against extraterritoriality, stating

that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent

transfers received abroad by a foreign transferee from a foreign transferor," and directed further

proceedings related to the Trustee's claims be returned to the Bankruptcy Court. *Sec. Inv'r Prot.*

*Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

271.    On November 22, 2016, this Court issued a decision granting in part and denying

in part defendants' motion to dismiss on extraterritoriality. *Sec. Inv'r Prot. Corp v. Bernard L.*

*Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495).

272.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court

and Bankruptcy Court. The Second Circuit held that neither the presumption against exterritoriality

nor international comity limits the reach of section 550(a)(2) of the Bankruptcy Code, enabling

the Trustee to recover property from certain subsequent transferees.   Accordingly, the Second

Circuit vacated the judgments of the Bankruptcy Court and remanded for further proceedings. *In*

*re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL

903978 (2d Cir. Feb. 25, 2019).  On April 8, 2019, defendants filed a motion to stay the issuance

of the mandate pending the filing of a petition for a writ of certiorari, (ECF No. 1413), which the

Second Circuit granted on April 23, 2019.  (ECF No. 1503).

273.    On August 30, 2019, defendant-petitioners filed a petition for a writ of certiorari in

the Supreme Court of the United States.  *HSBC Holdings PLC v. Irving H. Picard*, No. 19-277.

On September 30, 2019, amicus briefs in support of petitioners were filed by the Cayman Islands

and the British Virgin Islands; certain British Virgin Islands restructuring professionals; Cayman

Finance and Recovery and Insolvency Specialists Association of the Cayman Islands; Recovery

and Insolvency Specialists Association of Bermuda; and the Securities Industry and Financial

Markets Association, the Institute of International Bankers, and the U.S. Chamber of Commerce.

On October 30, 2019, the Trustee as respondent filed his brief in opposition to the defendants'

petition, and the petitioners filed their reply brief on November 14, 2019.

274.    On December 9, 2019, the Supreme Court of the United States invited the Solicitor

General to file a brief in this case expressing the views of the United States. On April 10, 2020,

the Solicitor General filed a brief recommending that the Court deny the petition.

275.    The petition was distributed on April 28, 2020 for consideration at the Court's May

14, 2020 conference.  On June 1, 2020, the Supreme Court denied defendants' petition.

## V.    COMPENSATION REQUESTED

276.    This Application has been prepared in accordance with the Amended Guidelines

for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on April 19, 1995, as amended on August 1, 2013 (the "Local Guidelines")

and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration

of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

277.    The Trustee, and B&H, as counsel to the Trustee, expended 62,465.20 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $523.19 for fees incurred.  The blended attorney rate is $608.25.

278.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application.   In connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $1,721,726.70 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $39,052.94.

279.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $3,631,261.31.  The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

280.    Pursuant to the Second Amended Compensation Order, on September 21, 2021, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from August 1, 2021 through August 31, 2021 (the "August Fee Statement").  The August Fee Statement reflected fees of $8,793,818.10 and expenses of $96,078.09.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the August Fee Statement reflected fees of $7,914,436.29 and expenses of $96,078.09.  After subtracting the

Court-ordered 10% holdback, SIPC advanced $7,122,992.66 for services rendered and $96,078.09 for expenses incurred by the Trustee and B&H.

281.    Pursuant to the Second Amended Compensation Order, on October 19, 2021, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from September 1, 2021 through September 30, 2021 (the "September Fee Statement"). The September Fee Statement reflected fees of $9,423,145.60 and expenses of $144,341.27. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the September Fee Statement reflected fees of $8,480,831.04 and expenses of $143,633.68. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,632,747.94 for services rendered and $143,633.68 for expenses incurred by the Trustee and B&H.

282.    Pursuant to the Second Amended Compensation Order, on November 17, 2021, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from October 1, 2021 through October 31, 2021 (the "October Fee Statement"). The October Fee Statement reflected fees of $9,395,789.10 and expenses of $73,891.75. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the October Fee Statement reflected fees of $8,456,210.19 and expenses of $73,094.67. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,610,589.17 for services rendered and $73,094.67 for expenses incurred by the Trustee and B&H.

283.    Pursuant to the Second Amended Compensation Order, on December 16, 2021, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from November 1, 2021

through November 30, 2021 (the "November Fee Statement"). The November Fee Statement reflected fees of $8,699,860.30 and expenses of $65,026.98. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the November Fee Statement reflected fees of $7,829,874.27 and expenses of $65,017.13. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,046,886.84 for services rendered and $65,017.13 for expenses incurred by the Trustee and B&H.

284.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

285.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofessionals. The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

286.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

287.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case. No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

288.   To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.   REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

289.   Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's role in connection with applications for compensation and the consideration the Court should give to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable expectation of recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC.  In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC. SIPA § 78eee(b)(5)(C).

290.   To the extent the general estate is insufficient to pay such allowances as an expense of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

291.   While the Trustee has recovered, or entered into agreements to recover, nearly $14.527 billion as of January 31, 2022, a significant portion of these funds must be held in reserve pending final resolution of several appeals and disputes.

292.   Accordingly, the Trustee has determined that, at this time, he has no reasonable expectation that the general estate will be sufficient to make a distribution to general creditors or

pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief. Any fees and expenses allowed by this Court will be paid from advances by SIPC without any reasonable expectation by SIPC of recoupment thereof.

293.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on April 20, 2022.

294.    The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VII.   CONCLUSION

The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $32,681,351.79 (of which $29,413,216.61 is to be paid currently and $3,268,135.18 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $377,823.57 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
March 3, 2022

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: _s/ David J. Sheehan_

    Baker & Hostetler LLP
    45 Rockefeller Plaza
    New York, New York 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201
    Irving H. Picard
    Email: ipicard@bakerlaw.com
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Seanna R. Brown
    Email: sbrown@bakerlaw.com
    Heather R. Wlodek
    Email: hwlodek@bakerlaw.com

_Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
the Chapter 7 Estate of Bernard L. Madoff_