Robert J. Lack (rlack@fklaw.com)
Jeffrey C. Fourmaux (jfourmaux@fklaw.com)
Dielai Yang (dyang@fklaw.com)
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1100
Facsimile: (212) 833-1250

*Attorneys for Defendant Multi-Strategy Fund Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>   Plaintiff-Applicant,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>   Defendant. | No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>   Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>   Plaintiff,<br><br>   v.<br><br>MULTI-STRATEGY FUND LIMITED and CDP CAPITAL TACTICAL ALTERNATIVE INVESTMENTS,<br><br>   Defendants. | Adv. Pro. No. 12-01205 (CGM) |

**DECLARATION OF MARIO A. THERRIEN IN SUPPORT OF
DEFENDANT MULTI-STRATEGY FUND LIMITED'S MOTION TO DISMISS**

3641840.1

MARIO A. THERRIEN, under penalty of perjury, declares:

1. I am a Canadian citizen residing in Montréal, Québec. Since 2002, I have been an officer of CDP Capital – Tactical Alternative Investments Inc. ("CDP") and its successor by merger, CDP Capital Inc. During that time, I have been a member of CDP's and its successor's Investment Committee, which is responsible for overseeing the investments of defendant Multi-Strategy Fund Limited ("Multi-Strategy"). Among the members of the Investment Committee, I had primary responsibility for recommending that Multi-Strategy invest in, and later divest from, Fairfield Sentry Limited ("Sentry"). I have personal knowledge of the facts stated herein, and I submit this declaration in support of Multi-Strategy's motion to dismiss.

**Multi-Strategy and CDP Were Organized and
Conducted Their Business Outside the United States**

2. Multi-Strategy is an exempted company organized under the laws of the Cayman Islands, with its registered office in George Town, Grand Cayman.

3. Multi-Strategy is one of several "funds of funds" managed by CDP or its successor for Caisse de dépôt et placement du Québec (the "Caisse"). The Caisse is a statutorily-created entity that serves as the manager of the majority of the public-sector pension and insurance plans of the Province of Québec.

4. CDP was organized under the laws of Québec, with its principal place of business in Montréal.

5. CDP was the investment manager for Multi-Strategy from the time it invested in Sentry in 2004 through the time of its redemption from Sentry in 2005. Through its Investment Committee, CDP was responsible for the investment decisions of Multi-Strategy, including the decisions to enter and exit any particular investment. I and all members of the Investment Committee, and all other employees involved in the management and administration of Multi-

2

Strategy, worked out of CDP's Montréal office throughout the period in 2004 to 2005 when Multi-Strategy was invested in Sentry. Neither Multi-Strategy nor CDP ever had an office or employees in the United States.

6. During the period 2004 to 2005, Multi-Strategy held a bank account (number xxx-094-2) in its name at the Montréal branch of the Canadian bank Caisse Centrale Desjardins ("Desjardins"). Multi-Strategy has never held a bank account in the United States.

**Multi-Strategy's Subscription to and Redemption of Shares in Sentry**

7. All actions taken by Multi-Strategy or CDP with respect to the subscription or redemption of Sentry shares occurred outside the United States.

8. On June 25, 2004, Multi-Strategy subscribed to shares in Sentry by signing a Subscription Agreement in Canada and faxing it to Sentry's administrator Citco Fund Services (Europe) B.V. ("Citco") in the Netherlands, along with a $20 million[1] wire transfer from Multi-Strategy's Canadian bank account to Sentry's bank account at the Dublin, Ireland branch of Citco Bank Nederland N.V. ("Citco Bank").

9. Exhibit A attached hereto is a true and correct copy of the Subscription Agreement, signed on June 23, 2004 by me and my (then) CDP colleague Joëlle Verdon in Canada, together with a fax transmission report reflecting that it was sent to Citco's office number in the Netherlands on June 25, 2004.

10. On January 25, 2005, Multi-Strategy subscribed to additional Sentry shares by signing another Subscription Agreement in Canada and faxing it to Citco's Netherlands office, along with a $5 million wire transfer from Multi-Strategy's Canadian bank account to Sentry's Citco Bank account in Ireland.

---

[1] All "$" amounts herein are in U.S. dollars, which was the currency that Sentry specified for subscriptions to its shares.

3

3641840.1

11. Exhibit B attached hereto is a true and correct copy of the Subscription Agreement signed by me and Ms. Verdon on January 25, 2005 in Canada, together with a fax transmission report reflecting that it was sent to Citco's office number in the Netherlands on January 25, 2005.

12. Multi-Strategy did not negotiate or execute either of the Subscription Agreements in the United States. There were no negotiations on our part over the terms of the Subscription Agreements at all. Sentry or its administrator sent its form of Subscription Agreement to us in Canada, and we signed the Agreements, without alteration of their terms, in Canada, as set forth above. I understand that in the Complaint in this adversary proceeding, the Trustee alleges "[u]pon information and belief" that Multi-Strategy "sent a copy of the subscription agreement to [Fairfield Greenwich Group]'s New York City office." (Compl. ¶ 7.) I and, to my knowledge, CDP have no record of that having been done. If, however, we did send a copy of either of the signed agreements to Fairfield Greenwich Group, that does not change the fact that we formed the agreements with Sentry by delivering the signed Subscription Agreements to Sentry's administrator Citco in the Netherlands for Sentry's acceptance or rejection as provided in the Subscription Agreements.

13. Similarly, Multi-Strategy did not negotiate or execute Sentry's Articles of Association in the United States. There were no negotiations on our part over the terms of Sentry's Articles of Association, which were already in place when we first subscribed to Sentry and which we accepted as binding by executing the Subscription Agreements in Canada.

14. On February 15, 2005, Multi-Strategy requested a redemption of all its Sentry shares effective as of February 28, 2005, by faxing and mailing a request form from CDP's office in Canada to Citco's office in the Netherlands.

4

15. Exhibit C attached hereto is a true and correct copy of the redemption request form, signed by me and Ms. Verdon in Canada on February 14, 2005, together with a fax transmission report reflecting that it was faxed on February 15, 2005 to Citco's office number in the Netherlands and a UPS Express mailing label reflecting that a copy was also mailed by international courier on February 14, 2005 from CDP's office in Canada to Citco's office in the Netherlands.[2]

16. Exhibit D attached hereto is a true and correct copy of Citco's confirmation dated March 11, 2005 that, pursuant to our request, all of Multi-Strategy's shares in Sentry were redeemed effective March 1, 2005, at a valuation as of February 28, 2005 of $25,763,373.71, with an expected payment date of March 15, 2005.

17. On March 15, 2005, we received a wire transfer of the redemption payment in the amount of $25,763,373.71 from Sentry's Citco Bank account in Ireland to Multi-Strategy's bank account in Canada.

18. Exhibit E attached hereto is a true and correct copy of a funds transfer confirmation CDP received from Desjardins on March 15, 2015, reflecting the transfer of $25,763,373.71 from Sentry's account at Citco Bank in Dublin to Multi-Strategy's account at Desjardins.

---

[2] Desjardins advised us that routing instructions for U.S.-dollar wire transfers to Multi-Strategy's account should reference Desjardins' U.S. correspondent bank, Bank of New York in New York, with which Desjardins had a correspondent banking agreement and, as noted on its website, still does. *See* https://www.desjardins.com/ca/about-us/desjardins/governance-democracy/structure/caisse-centrale-desjardins/main-international-correspondents/index.jsp (last visited Jan. 26, 2021). As specified by Desjardins, we referenced Desjardins' U.S. correspondent bank when providing wire instructions for the account to third parties. Neither CDP nor Multi-Strategy, however, was responsible for Desjardins' use of a U.S. correspondent bank or its choice of Bank of New York in particular as its U.S. correspondent bank.

3641840.1

**Communications with Fairfield Greenwich Group and Albourne Partners**

19. My primary point of contact at Fairfield Greenwich Group was Philip Toub. I met with Toub in New York City on one occasion concerning Sentry shortly after Multi-Strategy first subscribed to Sentry on June 25, 2004. Specifically, my records indicate that I (and possibly also one or two of my colleagues) scheduled a trip to New York between July 14 and 16, 2004 to meet while there with representatives of several funds, including Sentry. The meeting with Sentry lasted for no more than one and a half hours.

20. On occasion, I and my colleagues in Canada communicated by email concerning Sentry with Toub or his secretary. In particular, on three occasions (January 13, January 16, and February 9, 2005), I asked Toub about Sentry's capacity for additional subscriptions and expressed interest in potentially investing $5 million in Sentry effective March 1, 2005 (in addition to the $20 million we invested in June 2004 and the $5 million that we planned to invest by February 1, 2005), and in one of those emails (February 9, 2005), I also asked him for "any info you've got on Madoff." I was outside the United States when I sent these emails to Toub.

21. On February 10, 2005, I was in London on business and had a previously scheduled dinner meeting with Simon Ruddick, a co-founder of Albourne Partners Limited ("Albourne Partners").

22. Exhibit F attached hereto is a true and correct copy of a February 1, 2005 email from Ruddick's secretary to me confirming our dinner appointment in London on February 10, 2005.

23. Albourne Partners is a London-based firm that provides research on hedge funds for institutional investors. From time to time, CDP obtained written reports on various hedge funds from Albourne Partners and its affiliates.

6

24.     During our dinner in London on February 10, 2005, Ruddick expressed serious concern about Madoff and strongly recommended that we redeem our investments in Sentry and Kingate Global Fund Ltd. ("Kingate").

25.     While neither I nor Multi-Strategy knew, based on Ruddick's views or otherwise, that Madoff was engaging in fraud or that BLMIS was not actually trading securities, after hearing Ruddick's views I believed, out of an abundance of caution, that the safest course would be to not carry through with the additional Sentry investment I had been contemplating before the dinner and instead to redeem our existing Sentry investments. Following my return to Montréal, on February 14 and 15, 2005 Multi-Strategy sent the request for a redemption of all its shares to Sentry's administrator, Citco, as described above.

26.     On December 11, 2008, I saw news reports of Madoff's arrest and the charge that he had been running a massive Ponzi scheme. I recalled my dinner with Ruddick and wrote to him the next day, reminding him of our conversation in London in February 2005.

27.     Exhibit G attached hereto is a true and correct copy of my December 12, 2008 email to Ruddick and its attachment. The Trustee partially quoted this email in the Proffer he filed in this adversary proceeding in June 2015, using ellipses to hide the email's references to the fact that my February 2005 conversation with Ruddick did not occur in the United States.

28.     I understand that the Trustee's Proffer alleges that Multi-Strategy and CDP "hired London-based Albourne Partners Limited . . . and its California-based subsidiary, Albourne America LLC . . . , to supplement their due diligence on Fairfield Sentry, Kingate Global, Madoff, and BLMIS" and that the "due diligence performed by Albourne America and its London-based parent company, Albourne Partners, was an essential part of the CDP Defendants' due diligence process" with respect to Sentry and Kingate. Those allegations appear intended to

7

create a false impression that Albourne America LLC ("Albourne America") personnel in the United States were involved in conducting work for Multi-Strategy in connection with its Sentry and Kingate investments. That did not happen.

29.   CDP never contracted with Albourne Partners or Albourne America to conduct due diligence on Sentry, Kingate, or Madoff in connection with Multi-Strategy's subscriptions and redemptions. The only communication Multi-Strategy or CDP had with anyone from Albourne or its subsidiaries about Sentry, Kingate, or Madoff prior to Multi-Strategy's redemption in March 2005, was my February 10, 2005 dinner conversation in London with Ruddick. That was the entirety of any "due diligence" on Madoff provided by Albourne Partners or its subsidiaries to Multi-Strategy prior to the redemption from Sentry.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 28, 2022.

_____
Mario A. Therrien