**Hearing Date: July 13, 2022**
**Objections Date: May 6, 2022**
**Reply Date: June 6, 2022**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01694 (CGM) |
| v. | |
| BANQUE CANTONALE VAUDOISE, | |
| Defendant. | |

**BANQUE CANTONALE VAUDOISE'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

    A.    Background ................................................................................... 3

    B.    The Trustee's Actions Against the Fairfield Funds ................................ 4

    C.    The Actions Brought by the Fairfield Liquidators.................................. 6

    D.    The Present Complaint against BCV .................................................... 7

    E.    The Trustee's Complaints Against Other Alleged Subsequent
        Transferees ................................................................................. 9

ARGUMENT ..................................................................................................... 10

I.    THE COMPLAINT FAILS TO PLEAD ADEQUATELY THAT BCV
    RECEIVED CUSTOMER PROPERTY..................................................... 10

    A.    The Trustee Has Not Plausibly Alleged That Any of the Alleged
        Subsequent Transfers Contain Customer Property .............................. 10

    B.    The Trustee's Complaint Seeks to Recover a Transfer Made by
        Sentry at a Time When the Trustee Alleges There was no Money
        Left From BLMIS ......................................................................... 15

II.    THE ALLEGED INITIAL TRANSFER WAS MADE OUTSIDE THE
    TWO-YEAR LOOKBACK AND THEREFORE RECOVERY OF THE
    SUBSEQUENT TRANSFER IS BARRED BY THE SAFE HARBOR OF
    11 U.S.C. § 546(E)........................................................................... 17

    A.    The Alleged Initial Transfers Were Made by, or to, a Covered
        Entity........................................................................................ 19

        1.    The Alleged Initial Transfers Were Made by a Stockbroker.................... 19

        2.    The Alleged Initial Transfers Were Made to a Financial
            Institution ............................................................................. 19

    B.    The Alleged Initial Transfers Were Settlement Payments and Made
        "in Connection With" a Securities Contract ........................................ 20

III.    THE COMPLAINT FAILS TO CONTAIN A "SHORT AND PLAIN
    STATEMENT OF THE CLAIM" ......................................................... 24

CONCLUSION ........................................................................................................................ 26

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................................10, 14

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
651 F.3d 329 (2d Cir. 2011)....................................................................................................22

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,
[2014] UKPC 9 ......................................................................................................................6, 21

*In re Bernard L. Madoff Inv. Sec. LLC*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014)..........................................................................13, 14, 17

*In re Bernard L. Madoff Inv. Sec. LLC*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015)..........................................................................10, 11

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*,
773 F.3d 411 (2d Cir. 2014)..................................................................................... *passim*

*In re CIL Ltd.*,
582 B.R. 46 (Bankr. S.D.N.Y. 2018).............................................................................8

*In re Fairfield Sentry Ltd.*,
596 B.R. 275 (Bankr. S.D.N.Y. 2018).............................................................................7

*In re Fairfield Sentry Ltd.*,
No. 10-13164, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ................................7, 19, 20

*In re Khan*,
No. 10-46901, 2014 WL 4956676 (Bankr. E.D.N.Y. Sept. 30, 2014) .........................................16

*In re Level 8 Apparel, LLC*,
No. 16-13164, 2021 WL 279620 (Bankr. S.D.N.Y. Jan. 26, 2021) ................................................8

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
218 F.R.D. 76 (S.D.N.Y. 2003) ...............................................................................25

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
917 F.3d 85 (2d Cir. 2019)..........................................................................................4, 7

*In re Trib. Co. Fraudulent Conv. Litig.*,
10 F.4th 147 (2d Cir. 2021) ............................................................................21

*In re Trib. Co. Fraudulent Conv. Litig.*,
946 F.3d 66 (2d Cir. 2019)...........................................................................2, 18

*Kennedy v. Mondelez Glob. LLC*,
No. 19-CV-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020)......................17

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991).............................................................................4

*New Hampshire v. Maine*,
532 U.S. 742 (2001).........................................................................................20

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)............................................................................14

*Salahuddin v. Cuomo*,
861 F.2d 40 (2d Cir. 1988)..............................................................................25

*Sapia v. Home Box Off., Inc.*,
No. 18 CIV. 1317, 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018).................14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
476 B.R. 715 (S.D.N.Y. 2012).........................................................................19

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .............21, 22, 23

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
337 B.R. 791 (Bankr. S.D.N.Y. 2005) .............................................................23

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*,
No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)..............4, 18, 21

*Sullivan v. Kodsi*,
373 F. Supp. 2d 302 (S.D.N.Y. 2005)..............................................................10

*Taylor v. Sturgell*,
553 U.S. 880 (2008)..........................................................................................20

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)...........................................................................................4

*U.S. v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ......................................................24, 25

iv

*Verhagen v. Saperstein*,
No. 93 CIV. 7441, 1994 WL 330055 (S.D.N.Y. July 11, 1994) .....................................................14

<u>Statutes</u>

11 U.S.C. § 101 ...............................................................................................................................19

11 U.S.C. § 546(e) .................................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) .........................................................................................................18, 23

11 U.S.C. § 550 ...........................................................................................................8, 10, 16, 17

11 U.S.C. § 551 ..............................................................................................................................8

11 U.S.C. § 741 .......................................................................................................................21, 23

15 U.S.C. § 78fff-2(c)(3) ....................................................................................................10, 12

§ 278 of the New York Debtor & Creditor Law ...........................................................................8

New York Debtor and Creditor Law ...................................................................................10, 16

Securities Investor Protection Act ..................................................................................7, 10, 13

<u>Rules</u>

Fed. R. Civ. P. 8 ............................................................................................................1, 14, 24, 25

Fed. R. Civ. P. 12 ...........................................................................................................1, 4, 18, 25

Fed. R. Civ. P. 15 .........................................................................................................................24

Defendant Banque Cantonale Vaudoise ("BCV" or "Defendant"), by its undersigned counsel, respectfully submits this memorandum of law in support of its motion to dismiss the Complaint (the "Complaint") (Shaiman Decl. Ex. 1) of Irving Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

In the Trustee's pursuit of claims against alleged foreign subsequent transferees of the feeder funds Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda" and, together with Sentry and Sigma, the "Fairfield Funds"), he has asserted a right to "recover" every dollar ever received by anyone from any party with any connection to the Ponzi scheme run by Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Madoff") even if the dollar never belonged to the customers of BLMIS. In so alleging, the Trustee ignores principles of basic arithmetic, by improperly suing BCV for the recovery of the single so-called "subsequent transfer" it received from Sentry, when he simultaneously alleges that Sentry transferred to investors and others approximately $2 billion more of BLMIS customer property than Sentry ever received from BLMIS in alleged initial transfers. Further, the Trustee disregards the statutory safe harbor Congress created to promote certainty and finality in the securities markets, which bars his subsequent transfer claim. Finally, the Trustee disregards Federal Rule of Civil Procedure 8(a)(2)'s pleading requirements and therefore leaves BCV to guess at what, exactly, is the basis for the Trustee's claims. The Trustee's claims are fatally flawed and should be dismissed.

First, basic arithmetic dictates that recoverable subsequent transfers from Sentry cannot exceed the approximately ***$3 billion*** in initial transfers BLMIS made to Sentry. In this

and other proceedings, the Trustee nonetheless seeks to recover approximately *$5 billion* in claims from defendants that allegedly redeemed shares from Sentry or received other transfers from Sentry.  That massive disparity alone renders the Trustee's subsequent transfer claims entirely implausible.  Consideration of the specific transfer alleged in the Complaint drives home this point.  The Trustee seeks to recover a single transfer allegedly made by Sentry to BCV in May 2007.  This is a full year after Sentry had last received any funds from BLMIS, by which time, according to the Trustee's own allegations, Sentry had already transferred all of those funds from BLMIS to other recipients; this means that this transfer to BCV could not possibly have included BLMIS customer funds.  Such allegations violate the most basic pleading standards, which demand that the Trustee tie every alleged subsequent transfer he seeks to recover from BCV to an initial transfer of customer property from BLMIS to Sentry (which he also fails to do), and that those ties be plausible.  The Trustee's pleading failures are even more striking because, for over a decade, the Trustee has had the very records from Sentry that would demonstrate which subsequent transfers contain money from Madoff, if any – and which did not. That the Trustee has nonetheless put forth such impossible allegations prevents BCV from evaluating the claims against it for purposes of defending or settling the litigation and requires that the Complaint be dismissed.

Second, Congress recognized the importance of certainty, speed and finality in securities transactions and thus created the safe harbor of 11 U.S.C. § 546(e).  *See In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 90 (2d Cir. 2019), *cert. denied,* 141 S. Ct. 2552 (2021) ("*Tribune I*") ("Unwinding settled securities transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and stability are necessary to attract capital.").  As the Second Circuit has explained, "[p]ermitting the clawback of millions, if not billions, of dollars

from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411, 420 (2d Cir. 2014), *cert. denied*, 576 U.S. 1044 (2015) (*"Fishman"*) (citation omitted). Here, the initial transfer that the Trustee seeks to recover from BCV as an alleged subsequent transferee was, according to his own allegations, a settlement payment made by or to "covered entities" in connection with securities contracts. Despite this, and despite no allegation that BCV had any knowledge that Madoff was running a Ponzi scheme, the Trustee seeks to unwind a nearly 15-year-old transfer, which, if allowed, would lead to the very disruption of the securities market that the statute was designed to avoid.

Finally, Defendant is entitled to a "short and plain statement" of the claims against it. Instead, the Trustee's 13-page Complaint, which he has failed to amend for nearly a decade, purports to "incorporate by reference" another 217-page complaint that was filed in another adversary proceeding in 2010 and has since been amended, rendering the iteration purportedly incorporated into the Trustee's Complaint superseded and moot. This does not provide BCV with fair notice of the claims against it, and the Complaint should be dismissed on this basis as well.

## STATEMENT OF FACTS[1]

### A.    Background

From the 1990s through BLMIS's collapse in December 2008, Sentry sold shares directly to foreign investors. *See* First Amended Complaint (the "Trustee's Fairfield Amended

---

[1] These facts are taken from allegations in the Complaint – which Defendant neither admits nor concedes – and documents incorporated by reference therein, as well as the Trustee's pleadings in other Madoff proceedings and other items of which the Court may take judicial notice. *See*

Complaint"), *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. 09-01239 (Bankr. S.D.N.Y.) (the

"Fairfield Action"), Dkt. No. 23 ¶¶ 32, 33 (Shaiman Decl. Ex. 2). Sigma and Lambda were

"feeder funds" for Sentry that also accepted investments and then invested those funds in Sentry.

Sentry in turn, invested with BLMIS. *See id.* ¶¶ 20, 22. This action is one of more than six

dozen proceedings in which the Trustee seeks to recover from the defendants alleged payments

they received when they redeemed shares in Sentry; here, the Trustee seeks to recover

approximately $9.8 million that BCV allegedly received in one redemption from Sentry on May

16, 2007. Compl. ¶¶ 44-47; Ex. C.[2]

     The Trustee's claims are best understood in the context of related proceedings,

some initiated by the Trustee, and some by the liquidators for the Fairfield Funds (the "Fairfield

Liquidators"). We describe these briefly below.

### B.    The Trustee's Actions Against the Fairfield Funds

     Madoff's massive fraud was revealed in December 2008. On or about May 18,

2009, the Trustee commenced an action against the Fairfield Funds and others seeking the

avoidance and recovery of over $3.5 billion of initial transfers they received from BLMIS.

Trustee's Twenty-Sixth Interim Report for the Period April 1, 2021 through September 30, 2021,

---

*SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789,
2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021) (on motion under Rule 12(b)(6),
"courts must consider… matters of which a court may take judicial notice", quoting *Tellabs, Inc.
v. Makor Issues & Rts., & Ltd.*, 551 U.S. 308, 322 (2007)). Here, the Court may take judicial notice
of the Trustee's pleadings in other adversary proceedings, and BCV respectfully requests that it
do so. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("courts routinely take
judicial notice of documents filed in other courts, again not for the truth of the matters asserted in
other litigation, but rather to establish the fact of such litigation and related filings").

[2] While the Complaint against BCV was initially dismissed under principles of comity, it was
subsequently reinstated following appeal. *See In re Picard, Tr. for Liquidation of Bernard L.
Madoff Inv. Sec. LLC*, 917 F.3d 85 (2d Cir. 2019), *cert. denied sub. nom. HSBC Holdings PLC v.
Picard*, 140 S. Ct. 2824 (2020).

*In re Bernard L. Madoff Inv. Secs. LLC,* Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.), Dkt. No. 20821 ¶ 167.  On July 20, 2010, the Trustee filed the Trustee's Fairfield Amended Complaint in which he named additional defendants, including entities and individuals (the "FGG Defendants") associated with the Fairfield Greenwich Group, which formed, managed, and marketed the Fairfield Funds, alleging that BLMIS made approximately $3 billion in initial transfers to Sentry during the six-year look-back period, from December 11, 2002 to December 11, 2008.  Trustee's Fairfield Amended Complaint ¶ 536 (Shaiman Decl. Ex. 2).

On May 9, 2011, the Trustee settled with the Fairfield Liquidators.  *See* Settlement Agreement (the "Fairfield Settlement"), Fairfield Action, Dkt. No. 69-2 (Shaiman Decl. Ex. 3).  On July 13, 2011, this Court entered consent judgments in favor of the Trustee against Sentry for $3.054 billion (Consent Judgment, Fairfield Action, Dkt. No. 109), Sigma for $752.3 million (Consent Judgment, Fairfield Action, Dkt. No. 110) and Lambda for $52.9 million (Consent Judgment, Fairfield Action, Dkt. No. 108).  In the Fairfield Settlement, the Trustee and the Fairfield Liquidators "each agree[d] to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims."  Fairfield Settlement ¶ 14 (Shaiman Decl. Ex. 3).  "Sharing Claims" includes the present action, as well as the Fairfield Liquidators' actions against BCV.  *Id.* ¶¶ 4, 7, 11.  The Trustee and the Fairfield Liquidators also each agreed to provide the other with "reasonable cooperation and assistance … in connection with the prosecution of the Sharing Claims".  *Id.* ¶ 14.  Thus, the Trustee has had access to Fairfield's documents and cooperation (including, presumably, the documents pursuant to which the Trustee brought many of the Sentry Redeemer Actions, including this one filed in 2012) since 2011.

On August 28, 2020, the Trustee filed a second amended complaint in the

Fairfield Action (Second Amended Complaint, Fairfield Action, Dkt. No. 286 (the "Second

Amended Complaint")), seeking to recover, as BLMIS customer property, *inter alia*,

approximately $1 billion in amounts allegedly paid by Sentry to certain FGG Defendants (*i.e.*,

one-third of the total amount of customer property BLMIS allegedly transferred to Sentry).  *See*

Exhibits 8, 10, 12, 13, 14 and 21 to the Second Amended Complaint, Fairfield Action, Dkt. Nos.

286-8, 286-10, 286-12, 286-13, 286-14, 286-21 (Shaiman Decl. Ex. 4).

### C.    The Actions Brought by the Fairfield Liquidators

Shortly after Madoff's fraud was revealed, the Fairfield Funds entered liquidation

proceedings before the Eastern Caribbean Supreme Court in the High Court of Justice of the

Virgin Islands.  Fairfield Settlement, at 2-3 (Shaiman Decl. Ex. 3).  The Fairfield Liquidators

commenced actions in the British Virgin Islands ("BVI") beginning in September 2009 against a

number of the Fairfield Funds' alleged investors seeking repayment of redemption payments

made by the Funds to these investors prior to BLMIS's collapse.  *See* Exhibit G to the Fairfield

Settlement ("Settlement Exhibit G"), Fairfield Action, Dkt. No. 69-9, at 6-7 (Shaiman Decl. Ex.

3); *see also Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9 ("*Migani*")

(*available at* https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf).  The Fairfield

Liquidators discontinued their claims in the BVI litigation following a final appellate decision in

April 2014 issued by the Privy council of the United Kingdom in favor of defendants.  *See*

*Migani*.

Starting in or about April 2010, the Fairfield Liquidators separately commenced

actions in New York against hundreds of the Funds' shareholders, including many that had been

sued unsuccessfully in the BVI.  *See* Settlement Exhibit G (Shaiman Decl. Ex. 3) (listing 209

actions seeking to recover redemption payments against Sentry investors brought by the Fairfield

Liquidators and pending as of May 9, 2011).[3]  BCV is named as a defendant in two of these.

Fifth Amended Complaint, *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz*

*AG, et al.*, Adv. Pro. No. 10-03635 (Bankr. S.D.N.Y.), Dkt. No. 620; Fifth Amended Complaint,

*Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.,* Adv. Pro. No. 10-

03636 (Bankr. S.D.N.Y.), Dkt. No. 679.[4]

   Pursuant to a series of decisions by this Court (which are currently subject to

appeal), all of the Fairfield Liquidators' New York claims have been dismissed except for

constructive trust claims against the so-called "Knowledge Defendants".  *In re Fairfield Sentry*

*Ltd.*, 596 B.R. 275, 282, 305, 316 (Bankr. S.D.N.Y. 2018); *In re Fairfield Sentry Ltd.*, No. 10-

13164, 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*").

### D. The Present Complaint against BCV

   The Trustee brings this proceeding pursuant to his statutory authority under the

Securities Investor Protection Act ("SIPA").  Compl. ¶ 4.  The Complaint alleges that BCV is a

Swiss corporation "organized under public law" based in Lausanne and that it "provided a

variety of banking services including personal banking, private banking, corporate banking, and

asset management."  Compl. ¶¶ 3, 22.  According to the Complaint, BCV received from Sentry

approximately $9.8 million in a single redemption, which the Trustee attempts to characterize as

---

[3] While there is substantial overlap, these actions by the Fairfield Liquidators also include
defendants who are not being sued by the Trustee.  *See, e.g.*, Third Amended Complaint,
*Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Piguet & Cie S.A.*, Adv. Pro. No. 10-
03514 (Bankr. S.D.N.Y.), Dkt. No. 72.

[4] As set forth in footnote 1, above, this Court may take judicial notice of pleadings in other
actions.  This is especially true here where the Trustee is in privity with the Fairfield Liquidators
in actions to recover alleged BLMIS customer property and the Trustee and Fairfield Liquidators
have stipulated to a joint interest between them in this respect.  *See infra* at 20, n.13.

a supposed "subsequent transfer[]" of BLMIS "[c]ustomer [p]roperty." *Id.* ¶ 2; Ex. C.[5]  The

Trustee invokes Section 550 of the Bankruptcy Code and Section 278 of the New York Debtor &

Creditor Law ("NYDCL").   Compl. ¶¶ 44, 47.[6]

The Trustee alleges that BLMIS made numerous initial transfers over the six

years preceding December 11, 2008 (the "Filing Date") to Sentry (Compl. Ex. B) totaling

"approximately $3 billion" (*id.* ¶ 36) and that Sentry, on May 16, 2007, transferred $9,769,927 in

total to BCV (*id.* ¶ 41, Ex. C).  The Trustee does not identify which portions of these initial

transfers from BLMIS to Sentry were supposedly subsequently transferred to BCV as

redemptions—not a date, not an amount, not anything from which BCV or this Court might

discern the supposed source of the funds that were transferred from Sentry to BCV.  Instead, the

Trustee breezily alleges:

> 36.    During the six years preceding the Filing Date, BLMIS made transfers to
> Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial
> Transfers"). . . .
>
> 37.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6
> billion which BLMIS transferred to Fairfield Sentry during the two years preceding the
> Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). . . .
>
> 38.    The Fairfield Sentry Two Year Initial Transfers include approximately
> $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding
> the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). . . .

---

[5] BCV accepts for the purpose of this motion only, as it must, that the Trustee alleges it is a
subsequent transferee (Compl. ¶ 4).  BCV, however, does not concede that it is a subsequent
transferee, and reserves the right to establish that it acted as a mere conduit.

[6] Although Section 278 of the NYDCL was amended, effective April 4, 2020, the amended
statute only "applies to transactions occurring on or after April 4, 2020" and is therefore
inapplicable to the alleged transfers at issue in this case.  *In re Level 8 Apparel, LLC*, No. 16-
13164, 2021 WL 279620, at *5 n.8 (Bankr. S.D.N.Y. Jan. 26, 2021).

The Complaint also purports to assert claims pursuant to 11 U.S.C. § 551.  Section 551,
however, does not provide for an independent cause of action.   *See In re CIL Ltd.*, 582 B.R. 46,
97 (Bankr. S.D.N.Y. 2018), *amended on reconsideration*, No. 13-11272, 2018 WL 3031094
(Bankr. S.D.N.Y. June 15, 2018).

> 41.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant BCV . . . . Based on the Trustee's investigation to date, approximately $9,769,927 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant BCV (the "Fairfield Sentry Subsequent Transfers") . . . .

Compl. ¶¶ 36-38, 41.

Other than the conclusory statements set forth above, the Complaint utterly fails to identify which of the BLMIS initial transfers, if any, were the actual source of the Sentry transfer to BCV. As explained below, this pleading failure is dispositive, particularly because at the time he filed the Complaint, the Trustee long had access to the Fairfield Funds' records.

### E.    The Trustee's Complaints Against Other Alleged Subsequent Transferees

Besides the claims in this action against BCV, the Trustee also has filed approximately six dozen actions against other Sentry investors. In those actions, combined with the Trustee's action against Sigma and Lambda, the Trustee seeks to recover, in the aggregate, alleged subsequent transfers of BLMIS customer property totaling approximately $4 billion from defendants who allegedly received redemption payments from Sentry. *See* Shaiman Decl. Exs. 5 (Trustee's allegations of transfers from Sentry to Sigma and Lambda), 6 (Trustee's allegations of subsequent transfers to Sentry redeemers), ¶ 9 (chart of Trustee's allegations of subsequent transfers to Sentry's redeemers after May 9, 2003). And on top of that approximately $4 billion in supposed "subsequent transfers", the Trustee also seeks to recover *another* approximately $1 billion in amounts paid by Sentry to the FGG Defendants. *See* Shaiman Decl. Ex. 4 ¶ 10. In short, the Trustee is trying to recover roughly $5 billion in alleged "subsequent transfers" that flowed out of Sentry, even though he simultaneously alleges that BLMIS made initial transfers of only $3 billion that flowed into Sentry.

**ARGUMENT**

I.    **THE COMPLAINT FAILS TO PLEAD ADEQUATELY THAT BCV RECEIVED CUSTOMER PROPERTY**

    A.    **The Trustee Has Not Plausibly Alleged That Any of the Alleged Subsequent Transfers Contain Customer Property**

        In order to state a claim under SIPA, the Trustee must plausibly allege that the redemption payment BCV received was a subsequent transfer of BLMIS customer property that had been fraudulently transferred from BLMIS to Sentry.  *See* 15 U.S.C. § 78fff-2(c)(3) ("the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11").  To state a claim under 11 U.S.C. § 550, the Trustee must allege not just that the initial transfer is avoidable, but that the initial transfer (or subsequent transfers of the initial transfer) was transferred to the subsequent transferee.  *In re Bernard L. Madoff Inv. Sec. LLC*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*").[7]  And of course, the claim must be "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

        In the context of a claim to set aside subsequent transfers under SIPA, this Court has held that barebones allegations – such as the Trustee's allegations here – that customer funds were transferred to the subsequent transferee do not suffice:

> The Trustee must allege facts that support the inference that the funds at issue originated with . . . BLMIS, and contain the "necessary vital statistics"—the "who, when, and how much" of the transfers to establish that an entity was a subsequent transferee of the funds.  At the pleading stage, the Trustee is not required to provide a "dollar-for-

---

[7] Equally, under the New York Debtor and Creditor Law, "as to claims of both actual and constructive fraud, New York law permits money damages to be recovered only against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance."  *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005) (emphasis, citation, and internal quotation marks omitted).

> dollar accounting" of the exact funds at issue. However, barebones allegations that the
> funds at issue were transferred to the Subsequent Transferees, without more detail, are
> insufficient.

*Shapiro*, 542 B.R. at 119.  In *Shapiro*, the Court dismissed as conclusory a subsequent transferee

claim, noting that the complaint "does not tie any initial transfer to any subsequent transfer or

Subsequent Transferee." *Id.*

As in *Shapiro*, the Trustee's Complaint fails to plead the "necessary vital

statistics".  Rather, it merely alleges that during the six years preceding the Petition, BLMIS

transferred approximately $3 billion to Sentry, and that "[a] portion of [those transfers] was

subsequently transferred either directly or indirectly to, or for the benefit of, Defendant".  Compl.

¶¶ 20, 36, 41.  The Trustee does not cure this insufficient allegation by attaching exhibits

(75 pages' worth in small font) that list thousands of transactions recorded in Sentry's accounts

at BLMIS, *id.* Ex. B, and exhibits that list the alleged subsequent transfer from Sentry to

Defendant, *id.* at Ex. C.  To the contrary, the Complaint fails to identify which, if any, of the 75

pages of transactions – many of which fall outside the statute of limitations – constitute initial

transfers of BLMIS customer property that were allegedly subsequently transferred to BCV and

does nothing to tie the two together.  Essentially, the Trustee is asking the Court to infer that

because BLMIS transferred a large amount of money to Sentry over a long period of time, to the

extent Sentry subsequently transferred *any* money to BCV, *all* of that money must have come

from BLMIS and can be recovered.

Not only do the Trustee's "barebones allegations" fail to plead the "necessary

vital statistics", but they are facially implausible – indeed, they are mathematically impossible.

For instance, the Trustee alleges that BLMIS transferred approximately $3 billion to Sentry

(Compl. ¶ 36); yet at the same time, he purports to "recover" an aggregate of approximately $4

billion of alleged subsequent transfers of customer property in the form of redemption payments made to dozens of defendants who redeemed from Sentry, including Sigma and Lambda. *See* Shaiman Decl. Exs. 5, 6, ¶ 9. Additionally, the Trustee seeks to recover, again as alleged subsequent transfers of customer property from Sentry, *another* approximately $1 billion in money allegedly paid by Sentry to FGG Defendants. *See* Shaiman Decl. Ex. 4 ¶ 10. In other words, the Trustee is endeavoring to recover, all as subsequent transfers from Sentry, roughly $2 billion more than the total amount that the Trustee himself alleges that BLMIS transferred to Sentry. As such, the Trustee's theory that all of the redemption payments are customer property is not merely implausible, it is impossible.

The reason that the amount BLMIS transferred to Sentry is at least $2 billion lower than the amount Sentry distributed is because transfers from BLMIS were not Sentry's sole source of money for redemptions and other payments. The Trustee himself pleads that Sentry also continuously received funds not just from BLMIS, but from investor subscriptions. *See, e.g.*, Compl. ¶ 7 (alleging that BCV wired funds to Sentry for subscriptions). Numerous complaints are rife with similar allegations regarding other redeemer defendants. The transaction details the Trustee has provided to this Court in his numerous complaints – alleging that Sentry paid out more than it received from BLMIS – lead to the inescapable conclusion that Sentry paid redemptions to its investors with money that could not possibly have originated with BLMIS.

This is about more than the Trustee's disregard of simple arithmetic. The Trustee's own allegations demonstrate that at least approximately $2 billion in funds that he seeks to "recover" indisputably are not "customer property" under 15 U.S.C. § 78fff-2(c)(3).

There is nothing in SIPA that authorizes the Trustee to recover funds that were not "customer property" and never belonged to BLMIS.

The Trustee's failure to allege the "necessary vital statistics" of the transfers he seeks to put at issue is particularly inexcusable in this case, in which the *plaintiff*, rather than the *defendant*, possesses all the records relevant to establishing whether, and to what extent, any alleged transfer to BCV contains customer property. As noted above, the Trustee sued and settled with the Liquidators of Sentry, who in 2011 stipulated to the entry of a judgment in favor of the BLMIS Estate (in the amount of approximately $3 billion for Sentry).[8] Fairfield Settlement ¶ 1 (Shaiman Decl. Ex. 3); Compl. ¶ 40. Pursuant to that Settlement Agreement, the Trustee has had access to Sentry's records for over a decade. *See* Fairfield Settlement ¶ 14 (Shaiman Decl. Ex. 3) (Trustee and Fairfield Liquidators "each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims."). Moreover, the Fairfield Liquidators "agree[d] to provide reasonable cooperation and assistance" to the Trustee "in connection with the prosecution of the Sharing Claims". *Id.* ¶ 14.

Thus, this case is nothing like *In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) ("*Merkin*"), where this Court granted the Trustee "greater latitude" in pleading where – having "specifie[d] numerous inter-defendant transfers" showing that "defendants commingled their assets, transferring their funds into and out of each other's accounts" – the Trustee faced special "difficulties" because "[t]he subsequent transfer claim must

---

[8] This Court approved the Fairfield Settlement on June 7, 2011, at Bench Memorandum and Order Granting Trustee's Motion for Entry of Order Approving Agreement, Fairfield Action, Dkt. No. 92, and it was incorporated into the Consent Judgment entered against Sentry on July 13, 2011. Consent Judgment, Fairfield Action, Dkt. No. 109 , ¶ 2; Compl. ¶ 40.

ultimately be proved through the books and records of the defendants". *See Merkin*, 515 B.R. at

150-51. No such latitude is warranted here. Not only does the Trustee allege no inter-defendant

transfers in this action, but, for over a decade, the Trustee has had every piece of data he needs to

determine whether an alleged subsequent transfer contains customer property, and from which

initial transfer that transfer originates, yet he has failed to so allege here – because to do so

would lead to the inescapable conclusion that the Trustee is pursuing billions of dollars to which,

as a matter of simple math, he is not entitled. *See Pension Ben. Guar. Corp. v. Morgan Stanley

Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 722 (2d Cir. 2013) (affirming dismissal and finding that

"such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have

access, without discovery, to plan documents and reports that provide specific information from

which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc.*, No. 18 CIV. 1317, 2018

WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to

precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

      The Complaint's pleading failure not only imposes substantial discovery and

litigation costs on defendants, it fails to provide BCV with fair notice of the claims against it.

This failure deprives BCV of the ability to evaluate those claims for the purposes of defense and

settlement, in violation of Rule 8(a) (a pleading problem which, as set forth in Point III below, is

endemic to the Complaint). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Fed. R.

Civ. P. 8(a)(2) requires that the plaintiff "give the defendant fair notice of what the claim…is and

the grounds upon which it rests") (citation omitted); *see also Verhagen v. Saperstein,* No. 93

CIV. 7441, 1994 WL 330055, at *2 (S.D.N.Y. July 11, 1994) (Rule 8(a) requires pleader to

provide adverse party with fair notice of the claim "in order to answer and prepare a defense").

This pleading deficiency is not just on some trivial matter; given the lack of "necessary vital

statistics" contained in the pleading here, BCV is hard-pressed to discern exactly what the

Trustee claims is "customer property", let alone whether such claims are legitimate, or whether

these ill-defined claims are time barred or shielded by the application of the safe harbor of 11

U.S.C. § 546(e) (*see* Point II, below).  No defendant should have to guess about what claims they

are facing.

**B.      The Trustee's Complaint Seeks to Recover a Transfer Made by Sentry at a Time When the Trustee Alleges There was no Money Left From BLMIS**

The implausibility – and in many instances impossibility – of the Trustee's

subsequent transferee claim against BCV is underscored by the fact that the Complaint seeks to

recover a transfer from BCV during a time period when, according to the Trustee's own

pleadings, the amounts paid out by Sentry to defendants, all allegedly as subsequent transfers of

customer property, vastly exceeded the amounts BLMIS transferred to Sentry.

The Trustee alleges that in the period from April 13, 2006 through September 5,

2007, Sentry withdrew a total of $120 million from BLMIS in one transaction on April 13, 2006.

*See* Compl. Ex. B pp. 25, 26 ("CHECK WIRE" entries).  The Trustee further alleges that in the

*more than one year* between Sentry's receipt of that $120 million from BLMIS on April 13,

2006 through May 15, 2007 – the day before BCV's alleged redemption – Sentry paid *more than*

*$620 million* of alleged customer property to the FGG Defendants and to redeeming

shareholders, including Sigma, and Lambda.  *See* Shaiman Decl. Exs. 5, 6, ¶ 13.  Accordingly,

there was simply no alleged "customer property" remaining from the April 13, 2006 transfer to

fund BCV's alleged redemption on May 16, 2007 (*see* Compl. Ex. C), more than a year after the

last transfer from BLMIS to Sentry.

15

Moreover, while the Trustee alleges that in the period from December 11, 2002

(*i.e.*, six years preceding the filing of the petition (Compl. ¶¶ 11, 20[9]) through September 6,

2007, BLMIS transferred a total of $1,315,120,000 to Sentry in eighteen separate transfers made

May 9, 2003 through April 13, 2006 (*see* Compl. Ex. B pp. 19, 20, 23-26, 54-56 ("CHECK

WIRE" entries)), he further alleges that from the time of the first BLMIS transfer in that period

(on May 9, 2003), through May 15, 2007, Sentry paid more than $2.9 billion of alleged customer

property to the FGG Defendants and to redeeming shareholders, including Sigma, and Lambda.

*See* Shaiman Decl. Exs. 5, 6, ¶ 11.  So when the Trustee alleges that BCV received a redemption

payment from Sentry on May 16, 2007 in the amount of $9,769,927, it is simply implausible that

that transfer contained customer property, because the amount of money Sentry had already paid

to other defendants by May 15, 2007 far exceeded the total amount it took in from BLMIS.[10]

---

[9] Since the statute of limitations under New York's Debtor and Creditor Law for fraudulent
conveyances is six years, *see In re Khan*, No. 10-46901, 2014 WL 4956676, at *52 (Bankr.
E.D.N.Y. Sept. 30, 2014), the Trustee cannot avoid transfers from BLMIS to Sentry that
occurred before December 11, 2002.  Thus, he cannot recover any subsequent transfers of those
transfers under Section 550(a).  Accordingly, the Court may only consider alleged initial
transfers after December 11, 2002 (the first of which was on May 9, 2003) in determining
whether an alleged subsequent transfer was in fact a transfer of recoverable customer property;
any earlier initial transfers alleged in the Complaint must be excluded from consideration.  In any
event, as set forth in Point II below, pursuant to the safe harbor of 11 U.S.C. § 546(e), the
Trustee is barred from recovering alleged subsequent transfers of initial transfers which took
place prior to two years before the petition date.

[10] Specifically, the Trustee alleges that on May 9, 2003, BLMIS transferred $40 million to
Sentry, which was spent by no later than June 2003; on July 11, 2003, BLMIS transferred $55
million to Sentry, which was spent by no later than July 16, 2003; on July 22, 2003, BLMIS
transferred $25 million to Sentry, which was spent by no later than September 2003; on April 1,
2005, BLMIS transferred $175 million to Sentry, which was spent by no later than May 2005; on
July 6, 2005, BLMIS transferred $85 million to Sentry, which was spent by no later than August
2005; on September 2, 2005, BLMIS transferred $30 million to Sentry, which was spent by no
later than October 2005; and between October 3, 2005 and April 13, 2006, BLMIS transferred
$905.12 million to Sentry (in twelve transactions as follows: three transactions on October 3,
2005 of $90 million, $90 million, and $70 million; one transaction on November 16, 2005 of
$185 million; one transaction on December 15, 2005 of $85 million; two transactions on January

16

That this redemption payment took place thirteen months after Sentry last received funds from

BLMIS further underscores the implausibility that the redemption payment contains BLMIS

"customer property." *Cf. Merkin*, 515 B.R., at 150-51 (inferring linkage where alleged

"subsequent transfers took place contemporaneously or shortly after an initial transfer" or at

most two or three months later).

This is just one of many examples of the Trustee's impossible, internally

contradictory allegations. Even if the Trustee, who has Fairfield's records and cooperation, were

entitled to avail himself of liberal pleading rules designed for plaintiffs without access to such

records, such allegations must be dismissed as a matter of law. *See Kennedy v. Mondelez Glob.*

*LLC,* No. 19-CV-302, 2020 WL 4006197, at \*9 (E.D.N.Y. July 10, 2020) ("where the allegations

of a complaint are materially inconsistent with the evidence a plaintiff relies on to make those

allegations, [a court] may easily conclude that plaintiffs' claims lack the facial plausibility

necessary to survive a motion to dismiss.") (citation omitted).

## II.    THE ALLEGED INITIAL TRANSFER WAS MADE OUTSIDE THE TWO-YEAR LOOKBACK AND THEREFORE RECOVERY OF THE SUBSEQUENT TRANSFER IS BARRED BY THE SAFE HARBOR OF 11 U.S.C. § 546(E)

Section 550(a) of the Bankruptcy Code provides that, to the extent a transfer from

the debtor's estate is avoided under certain sections of the Code, a trustee may recover the

property transferred, or its value, from the initial transferee or any subsequent transferee.

However, Section 546(e) of the Bankruptcy Code bars a trustee from avoiding a transfer (other

---

10, 2006 of $60 million and $55 million; one transaction March 16 of $50 million; two
transactions on March 27, 2006 of $50 million and $50 million; and two transactions on April
13, 2006 of $120 thousand and $120 million), which was spent by no later than November 2006.
*See* Shaiman Decl. Exs. 5, 6, ¶¶ 11-12.

than under Section 548(a)(1)(A), which has only a two-year lookback period[11]) if that transfer, as

relevant here, (1) was made "by or to" a covered entity, such as a stockbroker or financial

institution; and (2) was either a settlement payment or a transfer in connection with a securities

contract.  11 U.S.C. § 546(e).[12]  The Section 546(e) safe harbor is available as a defense to

alleged subsequent transferees, even where, as here, the alleged initial transferee agreed to a

consent judgment.  *See SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund

Ltd.*), No. 08-01789, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.)

("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of

certain transfers, … the subsequent transferee is nonetheless entitled to raise a § 546(e) defense

against recovery of those funds.").

      As set forth below, both elements of a defense under Section 546(e) are

established as a matter of law.  Accordingly, because the first transfer from BLMIS to Sentry

during the Two Year Lookback period occurred on September 6, 2007 – *after* BCV's alleged

May 16, 2007 redemption – the safe harbor bars the Trustee's entire claim and Complaint must

be dismissed.  *See Fishman*, 773 F.3d at 415 (affirming dismissal of relevant claims under Rule

12(b)(6) because they were shielded by 11 U.S.C. § 546(e)).

---

[11] Under 11 U.S.C. § 548(a)(1)(A), a trustee may avoid transfers made within two years before
the petition date (the "Two Year Lookback") (here, December 11, 2008 (*see* Compl. ¶¶ 11, 20)),
if the debtor made such transfer with actual intent to hinder, delay or defraud.  The sole alleged
subsequent transfer at issue here took place outside of the Two Year Lookback period, rendering
11 U.S.C. § 548(a)(1)(A) inapplicable.

[12] 11 U.S.C. § 546(e) also preempts state law claims seeking to unwind redemptions.  *Tribune I,*
946 F.3d, at 81, 90.

A.    **The Alleged Initial Transfers Were Made by, or to, a Covered Entity**

Here, all alleged initial transfers were made by, or to, an entity covered by Section 546(e) for two independently sufficient reasons, namely, because the alleged initial transfers were made (1) by a stockbroker, and (2) to a financial institution.

1.    **The Alleged Initial Transfers Were Made by a Stockbroker**

The Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities."  11 U.S.C. § 101(53A)(B).  As the District Court found, BLMIS "qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (footnote and citation omitted), *aff'd sub nom. Fishman*, 773 F.3d at 417 ("It is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e).").

2.    **The Alleged Initial Transfers Were Made to a Financial Institution**

Sentry, the initial transferee, is also a "financial institution" under the Code, which defines "financial institution" to include both "an entity that is a commercial or savings bank," and the bank's customer "when [the bank] entity is acting as agent or custodian for a customer … in connection with a securities contract."  11 U.S.C. § 101(22)(A).  In *Fairfield III*, this Court held that the Fairfield Funds were "financial institutions" because they were customers of a financial institution, Citco Bank Nederland N.V. Dublin Branch, which acted as their agent in connection with the securities contracts pursuant to which the redemption payments were made.  *Fairfield III*, 2020 WL 7345988, at *7.

19

This Court's holding in *Fairfield III* is equally applicable here and, indeed, is binding on the Trustee because he was in privity with the Fairfield Liquidators, who were litigating that action partly for the Trustee's benefit.[13]

**B.** **The Alleged Initial Transfers Were Settlement Payments and Made "in Connection With" a Securities Contract**

In analogous circumstances, the Second Circuit has concluded that Section 546(e) shields transfers from BLMIS to its account holders from the Trustee's avoidance powers. *Fishman*, 773 F.3d at 415. The *Fishman* court concluded that the documents governing BLMIS customers' accounts constituted securities contracts, and that the payments BLMIS made to those customers were made "in connection with" those contracts, and also constituted "settlement payments," *id*. at 418-23 — either of which findings would have sufficed to invoke the safe harbor. The court rejected the Trustee's argument that the safe harbor did not apply because Madoff did not actually carry out the promised securities transactions. *Id.* at 419-20.

The same reasoning applies to the transfers that the Trustee alleges BLMIS made to Sentry "in order to pay" investors' redemption requests. Those alleged transfers were clearly "in connection with" both (a) the securities contracts Sentry had entered into with BLMIS, *see*

---

[13] Under the Fairfield Settlement, the Fairfield Liquidators will pay the Trustee 15% of net recoveries from their claims against redeemers from the Fairfield Funds until the Trustee has been paid $1.924 billion. Fairfield Settlement ¶¶ 1, 4, 11 (Shaiman Decl. Ex. 3). Further, "[t]he Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims." *Id.* at ¶ 14. This agreed joint interest in pursuing alleged BLMIS customer property is a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of a kind that gives rise to nonparty issue preclusion in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). As such, and because the issue of Sentry's status as a "financial institution" was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on grounds of the Section 546(e) safe harbor, this Court's finding in *Fairfield III* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its subscribers is binding on the Trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

*Fishman*, 773 F.3d at 418-23, and (b) according to the Trustee, (although lacking in plausible

support), the separate securities contract under which investors allegedly made their

redemptions, namely, Sentry's Articles of Association (Shaiman Decl. Ex. 7). *See Migani* ¶ 10

("the terms of the subscriber's membership of the Fund, which govern the redemption of its

shares . . . are to be found in the Articles of Association of the Fund").[14]

The definition of "securities contract" includes "a contract for the purchase, sale,

or loan of a security," 11 U.S.C. § 741(7)(A)(i), and, as relevant here, "includes . . . redemption

requests." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115, 2013 WL

1609154, at *8 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). Further, all Section 546(e) requires is

that the transfer be "in connection with *a* securities contract" (emphasis added), even if not the

securities contract between the initial transferor and transferee. *See Fishman*, 773 F.3d at 422

("Section 546(e) sets a low bar for the required relationship between the securities contract and

the transfer sought to be avoided"; "a transfer can be connected to, and can be made in relation

to, multiple documents or purposes simultaneously"); *Cohmad*, 2013 WL 1609154, at *9 (under

the safe harbor, transfer from debtor to initial transferee may qualify as having been made "in

connection with a securities contract" between initial transferee and subsequent transferee). The

conclusion that the alleged initial transfers were made in connection with a securities contract

does not change even if the initial transferee, Sentry, allegedly knew of Madoff's fraud.[15]

---

[14] This Court may consider the Articles of Association on this motion because, as the basis for
the challenged redemption, they are integral to the Complaint. *See In re Trib. Co. Fraudulent
Conv. Litig.,* 10 F.4th 147, 176 (2d Cir. 2021), *cert. denied*, No. 21-1006, 2022 WL 516021 (U.S.
Feb. 22, 2022) ("Here, the documents the district court relied on were the contracts that set forth
the relationship between Tribune and CTC, and they were therefore integral to the complaint.").

[15] In *Fairfield Investment Fund Ltd.*, the Court accepted that Sentry's knowledge had been
adequately pled in a later version of the complaint in the Fairfield Action than the one
incorporated by reference into the instant Complaint. *See SIPC v. Bernard L. Madoff Inv. Sec.*

First, there was a securities contract between Sentry and its investors, even if there was none between BLMIS and Sentry, and Sentry's alleged knowledge of the BLMIS fraud would not preclude the straightforward application of Section 546(e) as being "in connection with" Sentry's agreement with its investors. In *Cohmad*, Judge Rakoff agreed that securities contracts other than the initial transferee's securities contract with BLMIS could independently satisfy Section 546(e). 2013 WL 1609154, at *8-9. Judge Rakoff ruled that so long as the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and the subsequent transferee, then the withdrawal from BLMIS would be a transfer made in connection with the securities contract between the initial transferee and the subsequent transferee and thus would not be avoidable:

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a . . . financial institution [or] financial participant . . . in connection with a securities contract."

*Id.* at *9 (footnote omitted).[16] The logic of Judge Rakoff's hypothetical applies

---

LLC (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789, 2021 WL 3477479, at *4-5 (Bankr. S.D.N.Y. Aug. 6, 2021) (citing to the Second Amended Complaint). Defendant respectfully disagrees with that conclusion and reserves for appeal or a later stage of this action all arguments that the Trustee has not adequately pled Sentry's actual knowledge of Madoff's fraud either in the Second Amended Complaint or the earlier pleadings in that action and that Sentry did not in fact have such actual knowledge.

[16] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron [Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements." *Id.* at *9 n.5.

directly here, where the investment fund was Sentry, a financial institution as shown above, and

the alleged investor was BCV.  And the Complaint is devoid of any allegation that BCV knew of

Madoff's fraud.

Second, while this Court and the District Court have previously ruled that Section

546(e) cannot be invoked by a defendant with actual knowledge of Madoff's fraud, and while, as

set forth above, those rulings are inapplicable here, Defendant respectfully submits that there is

nothing in the language of Section 546(e) that supports creating an exception to its applicability

based on the knowledge of any transferee, as opposed to the debtor-transferor.[17]  That section

provides for only one exception to the safe harbor: a claim under Section 548(a)(1)(A), which

requires the Trustee to allege and prove intentional fraud by the transferor, and which only has a

two year lookback period.  *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs.
Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the

transferor and not the transferee that is relevant") (citations omitted).[18] Thus, the exception to the

safe harbor articulated in *Cohmad*, *i.e.*, that if the transferee from whom the Trustee seeks to

recover knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section

546(e) (*Cohmad*, 2013 WL 1609154, at *7), is not supported by the text of the statute.

---

[17] This is an open question at the Circuit level, and BCV expressly preserves it.  Although the
Second Circuit in *Fishman* noted that the defendants there had "every reason to believe that
BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at
420, it did not state that the result would have been different had that not been the case.

[18] Nor does transferee knowledge play any role in the definitions of "settlement payment," 11
U.S.C. § 741(8), or "securities contract," *id*. 741(7).

## III.    THE COMPLAINT FAILS TO CONTAIN A "SHORT AND PLAIN STATEMENT OF THE CLAIM"

Beyond the Complaint's many infirmities, it fails for the overarching reason that it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief" as required under Rule 8(a)(2).  In particular, although the Trustee has had nearly a decade to amend his pleadings to provide BCV with sufficient notice of the claims it faces, the Trustee instead depends on incorporating by reference an entire separate complaint filed in another proceeding.  *See* Compl. ¶ 35 ("The Trustee incorporates by reference the allegations contained in the [Trustee's Fairfield Amended Complaint] as if fully set forth herein.").  That complaint is 217 pages and 798 paragraphs, and contains allegations and claims against parties other than Sentry which bear no relevance to this case.  In contrast, the Complaint here is a mere 13 pages and 47 paragraphs even though the Trustee has had access to the information he has needed to amend his pleadings for over ten years.

The complaint the Trustee purports to incorporate into his pleadings has also since been superseded by a further amended complaint.  Thus, BCV is left to guess not only which allegations of the incorporated pleading it must respond to, but even *which pleading*:  the complaint referenced in paragraph 35; or the amended one.  Neither alternative is acceptable under the Federal Rules.[19]

Such wholesale incorporation of since mooted pleadings in another action is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a short and plain statement of the claim showing that the pleader is entitled to relief."  *U.S. v. Int'l*

---

[19] If the former, BCV would be unreasonably forced to answer allegations that the Trustee no longer stands by.  *Cf.* Fed. R. Civ. P. 8(b)(1) (requiring response to "a pleading").  If the latter, the Complaint would in effect become automatically self-amending, in contravention of Federal Rule of Civil Procedure 15's dictates governing the amendment of pleadings.

24

*Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (internal quotations omitted).

Indeed, "if all of the allegations in the prior pleadings are deemed to be incorporated into the

[Complaint], then the [Complaint] would become an unintelligible morass of self-contradictory

allegations" and "would in itself be grounds for dismissing the [Complaint pursuant] to Rules

12(b)(6) and 8(a)(2)." *Id*. 462, n.72.

Accordingly, the Complaint should be dismissed for failure to comply with Rule

8(a). In addition, paragraph 35 of the Complaint should be stricken pursuant to Rule 12(f). *See

Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("When a complaint does not comply with

the requirement that it be short and plain, the court has the power, on its own initiative or in

response to a motion by the defendant, to strike any portions that are redundant or immaterial,

*see* Fed.R.Civ.P. 12(f), or to dismiss the complaint."); *In re Merrill Lynch & Co., Inc. Rsch.

Reps. Sec. Litig.*, 218 F.R.D. 76 (S.D.N.Y. 2003) (striking, under Rule 12(f), references in the

operative complaint to complaints the court deemed irrelevant and contrary to Rule 8(a)).

## **CONCLUSION**

For the foregoing reasons, BCV respectfully requests that the Court dismiss the

Complaint in its entirety.

Dated:  March 7, 2022                    Respectfully Submitted,
        New York, New York

                                        ALLEGAERT BERGER & VOGEL LLP

                                        By: /s/ John F. Zulack_____
                                        John F. Zulack
                                        Lauren J. Pincus
                                        David A. Shaiman
                                        111 Broadway, 20th Floor
                                        New York, New York 10006
                                        Tel. No.: 212-571-0550
                                        Email: jzulack@abv.com
                                        Email: lpincus@abv.com
                                        Email: dshaiman@abv.com

                                        *Counsel for Defendant Banque Cantonale
                                        Vaudoise*

26