UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>    Plaintiff,<br><br>    v.<br><br>KOOKMIN BANK,<br><br>    Defendant | Adv. Pro. No. 12-01194 (CGM) |

## KOOKMIN BANK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

CIRILLO LAW OFFICE
Richard A. Cirillo
246 East 33rd Street – 1 FR
New York, NY 10016-4802
T:  917-541-6778
E:  rcirillo@cirillo-law.com

*Attorney for Defendant*
*Kookmin Bank*

## TABLE OF CASES, STATUTES, RULES AND AUTHORITIES

**Cases**

Page(s)

*American Casein Co. v. Geiger (In re Geiger)*,
446 B.R. 670 (E.D. Pa. 2010) ............................................................................12 n.10

*Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*,
409 B.R. 737 (Bankr. E.D.N.C. 2009) ...............................................................10

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) ...............................................................................22 n.12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................2, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................2, 10

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) ...............................................................................15 n.11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .............................................................................................15, 25

*Daimler AG v. Bauman*,
517 U.S. 117 (2014) ............................................................................................15-16

*Davis v. Bifani*,
2007 U.S. Dist. LEXIS 30880 (D. Colo. 2007) .................................................12 n.10

*DiStefano v. Carozzi N. Am. Inv.*,
286 F.3d 81 (2d Cir. 2001) .................................................................................15

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
323 B.R. 857 (Bankr. S.D.N.Y. 2005) ..............................................................5 n.2, 5 n.3

*Fairfield Sentry Ltd. v. Migani*,
[2014] UKPC 9 ....................................................................................................6

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .........................................22 n.13

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*") ............5, 5 n.3

*Garfinkle v. Conf. on Jewish Material Claims Against Ger., Inc.*,
2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020) ...................................................9

*Hanson v. Denckla*,
357 U.S. 235 (1958)...............................................................................5, 24 n.15

*Hau Yin To v. HSBC Holdings PLC*,
2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*,
700 F. App'x 66 (2d Cir. 2017) ..............................................................................24

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)..............................................................15, 25, 25 n.17, 26

*Hill v. HSBC Bank plc*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016)............................................................24-25

*In re Tribune Co. Fraudulent Conveyance Litig.*,
946 F.3d 66 (2d Cir. 2019) ("*Tribune I*").........................................5 n.2, n.3, 6 n.4

*In re Tribune Co. Fraudulent Conveyance Litig.*,
10 F.4th 147 (2d Cir. 2021), *cert. denied sub nom.*
*Kirschner v. FitzSimons*, 2022 WL 161692 (U.S. Feb. 22, 2022) ("*Tribune II*") ...............7 n.5

*Jonas v. Estate of Leven*,
116 F. Supp. 3d 314 (S.D.N.Y. 2015)...................................................................16

*Lowden v. William M. Mercer, Inc.*,
903 F. Supp. 212 (D. Mass. 1995)........................................................................12

*Muhammad v. Bethel-Muhammad*,
2012 U.S. Dist. LEXIS 70330 (S.D. Ala. May 21, 2012)........................................12

*NCUA Bd. v. Morgan Stanley & Co.*,
2014 U.S. Dist. LEXIS 58751 (S.D.N.Y. Apr. 28, 2014)........................................12

*New Hampshire v. Maine*,
532 U.S. 742 (2001)...........................................................................................5 n.3

*Papasan v. Allain*,
478 U.S. 265 (1986)...............................................................................................2

*Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*,
2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021 ("*Fairfield Inv. Fund*")....2, 2 n.1, 3, 7 n.7

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
773 F.3d 411 (2d Cir. 2014) ("*Fishman*") .................................................3, 7, 7 n.6

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015).................................................................10

*Pyskaty v. Wide World of Cars, LLC,*
856 Fed.3d 216 (2d Cir. 2017)....……....................................................................22 n.12

*Roper Starch Worldwide, Inc. v. Reymer & Assocs.,*
2 F. Supp. 2d 470 (S.D.N.Y. 1998) .......................................................................25

*Rose v. Goldman, Sachs & Co.,*
163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001)…………………………………………..22 n.12

*Rosenblatt v. Coutts & Co. AG,*
2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017).......................................................24

*Salahuddin v. Cuomo,*
861 F.2d 40 (2d Cir. 1988)...……………………………………………………………13

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,*
476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re*
*Bernard L. Madoff Inv. Sec. LLC),* 773 F.3d 411 (2d Cir. 2014) ..............................................4

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,*
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*")…….......................6 n.4, 7, 7 n.7

*Spool v. World Child Int'l Adoption Agency,*
520 F.3d 178, 183 (2d Cir. 2008)…………………………………………………………...2

*SPV Osus Ltd. v. UBS AG,*
882 F.3d 333 (2d Cir. 2018)...................................................................................26

*Toberman v. Copas,*
*800 F. Supp. 1239 (M.D. Pa. 1992)* ……………………………………………………13

*U.S. v. International Longshoremen's Ass'n,*
518 F. Supp. 2d 422 (E.D.N.Y. 2007)…………………………………………………13, 14

*Walden v. Fiore,*
571 U.S. 277 (2014)....................................................................25, 25 n.17, 26

*Waldman v. Palestine Liberation Org.,*
835 F.2d 317 (2d Cir. 2016)...................................................................................15

*Wolfe v. Charter Forest Behavioral Health Sys., Inc.,*
185 F.R.D. 225, 229 (W.D. La. 1999)…………………………………………………14

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286, 297 (1980)……………………………………………………………26

**Statutes**

11 U.S.C. § 101(22)(A)................................................................5, 5 n.3

11 U.S.C. § 101(53A) ..................................................................... 4

11 U.S.C. § 546(e) ......................................................................2-7

11 U.S.C. § 548(a)(1)(A) .............................................................3, 4

11 U.S.C. § 550 .............................................................................1

11 U.S.C. § 550(a) ........................................................................10

11 U.S.C. § 551 .............................................................................1

11 U.S.C. § 741(7)(A)(i) ...........................................................6 n.4

11 U.S.C. § 741(7)(A)(vii) .........................................................6 n.4

15 U.S.C. § 78fff-2(c)(3) ...................................................1, 8 n.8, 10

15 U.S.C. § 78lll(4)...........................................................................8

N.Y. Debtor & Creditor Law § 278.....................................................1

**Rules**

Fed. R. Bankr. P. 7004.............................................................15 n.11

Fed. R. Bankr. P. 7004(f)..........................................................15 n.11

Fed. R. Civ. P. 1.......................................................................13

Fed. R. Civ. P. 8(a)(2)..................................................11, 12 n.10

Fed. R. Civ. P. 8(d)(1)..........................................................12, 13

Fed. R. Civ. P. 10(c)....................................................12, 12 n.10

Fed. R. Civ. P. 12(b)(2) ...........................................................1, 16

Fed. R. Civ. P. 12(b)(6)................................................................1

Fed. R. Civ. P. 12(d)................................................................16

NY Civ. Prac. Law & Rules § 302(a...........................................15 n.11

## Authorities

Charles Alan Wright & Arthur R. Miller, et al.,
5A Fed. Prac. & Proc. Civ. § 1326 (3d ed. 2013)....................................................12

Merriam-Webster.com Dictionary,
https://www.merriam-webster.com/dictionary/purposeful..............................................24 n.16

2 Moore's Federal Practice–Civil § 10.04[1] (2021)...............................................13

2 Moore's Federal Practice–Civil § 10.04[3] (2021)...............................................13

Defendant Kookmin Bank ("KB") respectfully submits this memorandum in support of its motion under Federal Rules of Civil Procedure 12 (b)(2) and 12(b)(6), made applicable by Bankruptcy Rule 7012(b), to dismiss the complaint, 12 cv 01194 (CGM), ECF Dkt. 1, filed on March 22, 2012 (the "Compl."), which is attached to the Notice of Motion as an exhibit.

## NATURE OF THE CASE

KB is a Korean commercial bank. Compl. ¶¶ 3, 22. It bought shares of Fairfield Sentry Limited ("Fairfield"), a British Virgin Islands company, Compl. ¶ 2, and redeemed them for $42,010,303 between January 14, 2005, and January 19, 2006. Id. at ¶¶ 2, 3 & Ex. C. The plaintiff seeks to recover that amount as an alleged subsequent transfer of "customer property" of Bernard L. Madoff Investment Securities LLC ("BLMIS") that BLMIS allegedly paid to Fairfield and then Fairfield allegedly paid to KB when it redeemed the Fairfield shares. Id. ¶¶ 2, 45.  As the basis for his claim, the plaintiff cites Bankruptcy Code §§ 550 and 551, New York Debtor & Creditor Law § 278, and Securities Investor Protection Act § 78fff-2(c)(3). Id. ¶ 47.

The complaint alleges that between December 2002 and December 2008, BLMIS transferred $3 billion to Fairfield, all of it allegedly "customer property." Id. ¶¶ 35, 36.  It asserts that the Fairfield's $42 million of redemption payments to KB included "a portion of" the transfers from BLMIS to Fairfield. Id. ¶ 41. The complaint does not allege that KB knew or could have known that BLMIS was a Ponzi Scheme or acted in bad faith when it redeemed shares of Fairfield. KB moves to dismiss the complaint because it does not state a claim for relief and the court does not have personal jurisdiction over the defendant..

## LEGAL STANDARD ON A MOTION TO DISMISS
## FOR FAILURE TO STATE A CLAIM FOR RELIEF

The court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A claimant's allegations "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible

claim pleads facts "that allow … the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court must accept well-pleaded

factual allegations as true but may not credit conclusory statements, assertions that are not

supported by factual allegations, *id.* at 678–79, or "legal conclusion couched as a factual

allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Although we construe the pleadings

liberally, 'bald assertions and conclusions of law will not suffice.'" *Spool v. World Child Int'l

Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)).

## ARGUMENT

### I.   SECTION § 546(e)'s "SAFE-HARBOR" BARS THE CLAIM AGAINST KB

The complaint should be dismissed because KB is protected by the "safe harbor"

provided by 11 U.S.C. § 546(e). Based on its balancing of important interests, Congress barred

avoidance and recovery of certain transfers made "in connection with" securities transactions. Id.

A court should dismiss a claim if the applicability of § 546(e) is established on the face of the

complaint, documents incorporated into, or documents integral to the complaint. *See Picard v.

Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*, 2021 WL 3477479, at *3

(Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("*Fairfield Inv. Fund*"). That is the case with the

claim against KB.[1]

Under § 546(e), the plaintiff may not avoid a "settlement payment" made "by or to (or for

---

[1] Although Section 546(e) is an affirmative defense, when as here its applicability is established on the face of the complaint or documents incorporated into or integral to the complaint, the court can dismiss a claim based on it. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *2.

2

the benefit of) a…stockbroker [or] financial institution,…or that is a transfer made by or to (or

for the benefit of) a…stockbroker [or] financial institution…, in connection with a securities

contract…made before the commencement of the case, except under section 548(a)(1)(A) of this

title." 11 U.S.C. § 546(e).

"[B]by enacting § 546(e), Congress provided that, for a very broad range of securities-

related transfers, the interest in finality is sufficiently important that they cannot be avoided by a

bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)." *Picard v.*

*Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 423 (2d

Cir. 2014) ("*Fishman*") (citation omitted). "Permitting the clawback of millions, if not billions,

of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—

would likely cause the very 'displacement' that Congress hoped to minimize in enacting §

546(e)." Id. at 420.

As a subsequent transferee, KB is entitled to raise § 546(e) as a bar to recovery. *Fairfield*

*Inv. Fund*, 2021 WL 3477479, at *3 ("Where the initial transferee fails to raise a § 546(e)

defense against the Trustee's avoidance of certain transfers, as is the case here…, the subsequent

transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.").

Each statutory element of § 546(e) is met as to the initial transfers by BLMIS to Fairfield

that were allegedly used to fund redemption payments to KB for Fairfield shares (hereinafter, the

"BLMIS Initial Transfers").

### A. The BLMIS Initial Transfers Were Made More than Two Years before the Filing Date and so the Exception for Transfers Avoidable under § 548(A)(1) Does Not Apply

Exhibit C to the complaint shows that all the redemption transfers from Fairfield to KB

occurred between January 2005 and January 2006 and, therefore, are all earlier than two years

before the December 11, 2008 "filing date." Compl. ¶¶ 11, 20. Any purported BLMIS Initial

3

Transfers of customer property to Fairfield to fund those redemption payments necessarily would have taken place before Fairfield made those payments to KB. Therefore, all the BLMIS Initial Transfers are outside the two-year look-back period for avoidance under 11 U.S.C. § 548(A)(1). Accordingly, the exception in § 546(e) for claims avoidable under § 548(A)(1) does not bar KB's entitlement to claim the safe harbor's protection.

### B. All the BLMIS Initial Transfers Were Made by a "Stockbroker"

BLMIS was a "stockbroker" for purposes of § 546(e). An entity is a "stockbroker" "if it "engage[ ] in the business of effecting transactions in securities" "for the account of others" "with respect to which there is a customer." U.S.C. § 101(53A). BLMIS was registered as a stockbroker with the SEC and meets the definition for purposes of § 546(e):

> Overall, Madoff Securities, which was registered as a stockbroker with the SEC, clearly engaged in securities transactions....[E]ven assuming the truth of the allegation that Madoff Securities' investment advisory division never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions.

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (citation omitted), *aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014). The Second Circuit commented in the appeal action that the SIPC Trustee does "not dispute[] that BLMIS was a 'stockbroker' for the purposes of § 546(e)." 773 F.3d at 417. See also Compl. ¶ 23.

### C. All the BLMIS Initial Transfers Were "Made by or to (or for the benefit of)" a "Financial Institution"

The complaint alleges that BLMIS made the BLMIS Initial Transfers to Fairfield in order for Fairfield to make its redemption payments to KB for Fairfield shares. Compl. ¶¶ 2, 34, Exs. B & C; see id. ¶¶ 3, 22. It alleges that BLMIS did so by transferring the money to Citco Bank

4

Nederland N.V., Dublin Branch, through a NY correspondent bank. Id. Exs. B & C. Citco

Netherland is a financial institution[2] and an agent of Fairfield. *Fairfield Sentry Ltd. v. Theodoor*

*GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2020 WL 7345988 at *6, *7 n.11 (Bankr.

S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"), a decision binding on the plaintiff in this action.[3]

Therefore, Fairfield is a "financial institution" under § 101(22)(A) as a customer of a commercial

bank that acted "as agent or custodian for a customer...in connection with a securities contract."

Accordingly, stockbroker BLMIS made the BLMIS Initial Transfers to financial institution Citco

Nederland. Further, the BLMIS Initial Transfers are alleged to have been made "for the benefit

of" KB, which also is a "financial institution" under § 101(22)(A). Compl. ¶¶ 2, 3, 22. 34 & 41.

### D. All the BLMIS Initial Transfers Were both "Settlement Payments" and also "in Connection with Securities Contracts"

The only remaining element for KB to be entitled to the protection of the § 546(e) safe

---

[2] 11 U.S.C. defines the term "financial institution" to include "an entity that is a commercial...bank [or] trust company...and, when any such... entity is acting as agent or custodian for a customer (whether or not a "customer", as defined in section 741) in connection with a securities contract (as defined in section 741) such customer....
As to Citco, see De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl /en/public-register/information-detail/?registerCode=WFTDG&relationNumber=B0275 (last visited Mar. 5, 2022) (Citco Bank Nederland N.V. "[c]arryi[es] on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReference Number= C27278 (last visited Mar. 5, 2022) Citco Bank is a "credit institution...whose business is to receive deposits or other repayable funds from the public and to grant credits...."). This court can take judicial notice of information in such public registries. *See In Re Tribune Company Fraudulent Conveyance Litig.*, 946 F.3d 66, 78 (2d Cir. 2016, *amended* 2019) *(Tribune I)*; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

[3] This court held in *Fairfield III*, 2020 WL 7345988, at *7, that Citco Bank was the Fairfield's funds' agent and the Fairfield funds were its customers, consistently with the Second Circuit's definition of agency in *Tribune I*, 946 F.3d at 78-79, and the definition of a financial institution under 11 U.S.C. § 101(22)(A)):

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by Citco Bank establishes the necessary agency. It is implausible to infer that Citco Bank made the redemption payments to specific redeemers in specific amounts absent the [Fairfield] Funds' directions to do so. Moreover, Citco Bank accepted those directions by executing the redemption payments. Based on the foregoing, the Funds were customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made, and the Funds were, therefore "financial institutions" within the meaning of 11 U.S.C. § 546(e).

The decision is binding on the plaintiff because it is in privity with the plaintiffs in *Fairfield III* under a sharing and common interest litigation agreement approved by this court and integral to the action in the complaint. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

harbor is that the BLMIS Initial Transfers were either (1) "settlement payment[s]," or (2)

"transfer[s]" that were made by or to (or for the benefit of) a…stockbroker [or] financial

institution…in connection with a securities contract." Only one or the other is necessary, but both

are met in this case. As already shown, the BLMIS Initial Transfers were made by BLMIS, a

stockbroker," to Citco Bank Nederland, a "financial institution," and were made "for the benefit

of KB," also a "financial institution." They were payments to settle securities transactions (i)

between BLMIS and Fairfield and (ii) between Fairfield and KB under and "in connection with"

securities contracts as defined in the Bankruptcy Code[4] between each pair of entities.

The securities contract between BLMIS and Fairfield was the agreement that Fairfield

would invest money in BLMIS, which would invest that money in securities options and other

securities instruments and return invested money to Fairfield upon its withdrawal requests.

Compl. ¶¶ 2-3, 24-25. It was recorded in the BLMIS' investor account agreements. The

securities contract between Fairfield and KB was the agreement that KB would purchase

Fairfield shares, which are plainly "securities," that Fairfield's Bermudan Investment Manager

would manage the money, and that Fairfield would pay KB the share value to settle its

redemptions as set out in the Subscription Agreements between KB and Fairfield and in

Fairfield's Articles of Association. The Articles govern KB's redemption of Fairfield shares.

*Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, ¶ 10, https://www.jcpc.uk/cases/docs/jcpc-2012-

0061-judgment.pdf (last visited Mar. 5, 2022) ("the terms of the subscriber's membership of the

Fund, which govern the redemption of its shares…are to be found in the Articles of Association

---

[4] 11 U.S.C. § 741(7)(A)(i), (vii) defines "securities contract" to include "a contract for the purchase, sale, or loan of a security," and "any other agreement or transaction that is similar to an agreement or transaction referred to in this subparagraph," In the securities context, the "[t]he term 'redemption,' means 'repurchase,'" *Tribune I*, 946 F.3d at 80, and "the definition of a securities contract…includes…redemption requests." *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *8 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

of the Fund").[5] Those are "securities contracts" within the statutory definition and the BLMIS

Initial Transfers were both (i) "settlement payments" to Fairfield and (ii) "transfers" to Fairfield

and by Fairfield to KB "in connection with" them. *Fishman*, 773 F.3d at 418-24 ("Section 546(e)

sets a low bar for the required relationship between the securities contract and the transfer sought

to be avoided;" "a transfer can be connected to, and can be made in relation to, multiple

documents or purposes simultaneously"); *Cohmad*, 2013 WL 1609154 at \*9.[6] Therefore, the

final element of § 546(e) is met.

Because KB satisfies all the safe harbor requirements to protect it against the avoidance

of the BLMIS Initial Transfers and recovery of the redemption payments to KB that they

allegedly funded and the plaintiff seeks to recover, the claim against KB should be dismissed.[7]

## II. THE COMPLAINT DOES NOT ADEQUATELY ALLEGE
## KB RECEIVED ANY BLMIS CUSTOMER PROPERTY

The plaintiff must support each element of his claim with "well-pleaded allegations," which

requires him to state facts and not legal conclusions or rest his complaint on a possibility that the

defendant has liability. See pages 1-2 above. The plaintiff's claim in this case is that KB is liable to

return "customer property," which the Securities Investor Protection Act defines as "cash and

securities at any time received, acquired, or held by, or for the account of, a debtor from, or for, the

---

[5] The Fairfield Articles of Association are before this court on this motion because, as the basis for the challenged redemption, they are integral to the complaint. *See Tribune II*, 10 F.4th at 176 ("Here, the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint.").

[6] The Second Circuit rejected the argument that BLMIS Initial Transfers could not be settlements of securities transactions or made in connection with securities contracts because BLMIS did not carry out promised securities trades. *Fishman*, 773 Fed.3d at 419-20.

[7] Section 546(e) does not state or imply any requirement to show the defendant lacked knowledge of fraud. As Congress did not include one, canons of statutory interpretation preclude parties and courts from engrafting one. That is why Judge Rakoff erred in saying that "if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Cohmad*, 2013 WL 1609154, at \*7 (quoted in *Fairfield Inv. Fund*, 2021 WL 3477479, at \*4). However, even it Judge Rakoff's comment were correct, it would not affect this case because the complaint does not allege that KB had knowledge of BLMIS' fraud.

securities accounts of a customer, and the proceeds of any such property transferred by the debtor,

including property unlawfully converted." Compl. ¶ 1 n.1, quoting 15 U.S.C. § 78lll(4). Therefore,

the complaint must make a plausible factual showing that all the $42 million of redemptions the

plaintiff seeks from KB were at one time cash or securities held by BLMIS rather than money from

obvious alternate sources. If the plaintiff can only allege consistently with Fed. R. Civ. Pro. 11 that

part of the $42 million of redemptions is "customer property," he must state which part and which

redemptions. The complaint does not do so.[8]

Complaint Exhibit B is a 75-page list of purported transfers from BLMIS to third parties

over a six-year period that are alleged to be BLMIS "customer property." Compl. ¶¶ 35-38.

Complaint Exhibit C is a list of the redemptions the plaintiff wants to recover from KB. Compl. ¶

41. It asserts that "[a] portion of the [BLMIS] Initial Transfers [to Fairfield] was subsequently

transferred either directly or indirectly to, or for the benefit of," KB. That is a possibility, but

there are other obvious, equally possible, more plausible possibilities that render this allegation a

conclusory, non-factual, and insufficient conclusion. Because the burden of pleading and proving

each element of his recovery claim rests on the plaintiff, he must provide fact allegations that

move what he alleges from raising a "possible" to a "plausible" claim against KB. In this case,

there are competing explanations the plaintiff does not address are as or more plausible on the

facts than what the plaintiff is asserting.

On their face, Exhibits B and C show that during the one-year period in 2005-06 when

KB redeemed $42 million of Fairfield shares, BLMIS "customer property" could not have been

the source of the redemption. Prior redemption payments to other investors contained in the

plaintiff's filings exhausted funds BLMIS transferred to Fairfield. If all was exhausted, the

---

[8] To recover customer property, the debtor's initial must be "void or voidable," 15 U.S.C. § 78fff-2(c)(3). As shown in Argument Points I and III, the BLMIS Initial Transfers have not been avoided and are not avoidable.

plaintiff has no claim against KB at all. If a portion was exhausted, plaintiff needs to reduce the amount he seeks from KB and allege which redemptions he is seeking and facts making it plausible that they were paid from "customer property." It is key that the plaintiff has had all BLMIS,' Fairfield's, their banks' records for over a decade and the resources to determine whether any, and if so which, redemptions payments to KB trace back to BLMIS "customer property." It is not plausible on the face of Complaint Exhibits B & C that KB received BLMIS customer property and the complaint ignores obvious alternate plausible reasons they are not.

An "obvious alternative explanation" is one that makes a plaintiff's allegation "conceivable but not plausible," and therefore dismissible. *Garfinkle v. Conf. on Jewish Material Claims Against Ger., Inc.*, 2020 WL 6323462, at *5 (S.D.N.Y. Oct. 28, 2020). Two such alternatives come readily to mind. First, as now well known, Fairfield continued to receive substantial new investment money from its existing and new investors during the period of KB's redemptions and for more than two years afterwards. In theory, Fairfield was to deposit new money with BLMIS and obtain money for its redemptions from BLMIS. However, it is obviously plausible that, with new investment money on hand, Fairfield used new shareholder investments to pay shareholder redemption requests and depositing only the difference with BLMIS. If so, those Fairfield's redeeming shareholders would not have received BLMIS "customer property." This is not only plausible but it is how business actually works. Second, Fairfield was on paper a wealthy company with robust financial statements audited by a "Big Four" accounting firm. It is apparent that it could and may have obtained lines of credit, loans, or intercompany transfers to cover redemptions when it was easier and quicker to do so than making a withdrawal from BLMIS or for other reasons.

These are not implausible alternate explanations. The plaintiff's burden to allege that KB received "customer property" is not satisfied by his saying as the entire allegation of this crucial

9

element that "[a] portion of the [BLMIS] Initial Transfers [to Fairfield] was subsequently

transferred either directly or indirectly to, or for the benefit of," KB. That is a conclusion not a

fact and the complaint alleges no facts to support the statement. It does not carry the plaintiff's

pleading burden.

This court has already applied this important pleading principle underlying the Supreme

Court's and Second Circuit's decisions that require facts moving the defendant's liability, on the

"impossible" to "certain" spectrum, not only a "possible" but an actually "plausible" answer:

> The Trustee must allege facts that support the inference that the funds at
> issue originated with...BLMIS, and contain the "necessary vital statistics"—
> the "who, when, and how much" of the transfers to establish that an entity
> was a subsequent transferee of the funds.  At the pleading stage, the Trustee
> is not required to provide a "dollar-for-dollar accounting" of the exact funds
> at issue. However, barebones allegations that the funds at issue were
> transferred to the Subsequent Transferees, without more detail, are
> insufficient.

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y.

2015) (dismissing conclusory claim). The court based its decision on the fact that the complaint

in that case, like the one against KB, "[did] not tie any initial transfer to any subsequent transfer

or Subsequent Transferee." *Id.  See also Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409

B.R. 737, 750-51 (Bankr. E.D.N.C. 2009).  Because 15 U.S.C. ¶ 78fff-2(c)(3) withholds the

plaintiff's authority to recover subsequent transfers that are not "customer property," the pleading

principles underlying *Ashcroft,* 556 U.S. at 678-79; *Twombly,* 550 U.S. at 555-57, 570, apply

perfectly to the plaintiff's complaint.

The complaint should be dismissed for this additional reason.

## III.   THE COMPLAINT DOES NOT ADEQUATELY ALLEGE AVOIDABILITY OF THE BLMIS INITIAL TRANSFERS

To recover redemption payments from KB, the plaintiff must adequately allege and prove

that the BLMIS Initial Transfers were either avoided or are avoidable under 11 U.S.C. § 550(a).

The absence of factual allegations of avoidance/avoidability is fatal and is another, separate basis for dismissal. Except for two words, the complaint itself says nothing about this indispensable element of the plaintiff's claim, i.e., that the BLMIS Initial Transfers from which KB's redemption payments supposedly derived were avoided or avoidable. The two words the conclusion that transfers "are avoidable," by which the plaintiff means all $3 billion of alleged initial transfers set out in Exhibit B. Compl. ¶¶ 36, 38. As already shown in Point II above, this is only a legal conclusion and must be disregarded in evaluating the complaint. Nothing else is pled to make the complaint sustainable.

Complaint Paragraph 40 refers to a settlement the plaintiff reached with Fairfield in 2011 under which a consent judgment was entered. The complaint does not explain why it refers to that settlement but, whatever the reason, it does not cure the failure to allege avoidance / avoidability. A settlement is not an adjudication or allegations in this case, and the settlement documents do not bind non-parties to the agreement, such as KB.

The complaint also states that it "incorporates by reference the allegations contained in the…Amended Complaint [in *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL)] as if fully set forth herein." ¶35. If this is an indirect attempt to plead avoidance or avoidability, it fails for two reasons.[9]

First, the incorporation violates the express words of Fed. R. Civ. Pro. 8(a)(2) & (d)(1), made applicable by Bankruptcy Rule 7008, and the courts' application of those words, requiring "a short and plain statement of the claim…." and that "[each] allegation must be simple, concise,

_____

[9] The Amended Complaint in that case was filed on July 20, 2010 (Dkt. No. 23) and it is the one to which this reference refers in the complaint against KB filed in early 2012. The plaintiff later filed a Second Amended complaint in the other action on in late August 2020 (Dkt. No. 286). The plaintiff has not amended his complaint against KB or taken other steps to suggest he is seeking to incorporate the 2020 pleading and KB will address the first Amended Complaint. In any case, for purposes of the impropriety of the attempt to incorporate the plaintiff's massive, complex, and diffuse pleading against others into his complaint against KB, the second amended complaint is worse.

and direct." There is no conceivable argument that the incorporated complaint meets those standards. The complaint against KB without the incorporation is 11 pages consisting of 47 paragraph and 3 exhibits alleging 1 claim against 1 defendant. If the amended *Fairfield Sentry Ltd.* complaint is added, the complaint against KB balloons to 226 pages consisting of 845 paragraphs and 111 exhibits alleging 31 claims against 45 defendants, none of which or whom is KB or affiliated with KB. This is not a technical violation but a mockery of the Federal Rules' requirement of something "simple," "concise," or "direct" as well as "short" and "plain." It is a burden on the court as well as KB to try to figure out and deal with the incorporated pleading.

Second, the incorporation would directly violate Fed. R. Civ. Pro. 10(c), made applicable by Bankruptcy Rule 7010, both on the face of the rule and as the courts have applied it. Rule 10(c) says, "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." (Emphasis added.) Here, the plaintiff has not adopted "a statement in a pleading" but instead a whole, huge, bloated pleading, which Rule 10(c) does not allow. An incorporation "must specifically identify which portions of the prior pleading are adopted." *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995); *accord NCUA Bd. v. Morgan Stanley & Co.*, 2014 U.S. Dist. LEXIS 58751 (S.D.N.Y. Apr. 28, 2014) (citing Charles Alan Wright & Arthur R. Miller, et al., 5A Fed. Prac. & Proc. Civ. § 1326 (3d ed. 2013)); *Muhammad v. Bethel-Muhammad*, 2012 U.S. Dist. LEXIS 70330, at *8 (S.D. Ala. May 21, 2012) (improper to make "sweeping reference to his 100-page complaint" by incorporation); 2 Moore's Federal Practice–Civil § 10.04[3] (2021).[10] The complaint against KB

---

[10] The court chose to strike the pleading under Rule 8(a) rather than Rule 10(c) for improper incorporation of allegations in a wholly separate action in *Davis v. Bifani*, 2007 U.S. Dist. LEXIS 30800 (D. Colo. 2007). *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010), is not to the contrary. The court chose to dismiss the challenged pleading incorporating another under Rule 8 but found that Rule 10 allowed the incorporation. However, the court's reasoning was based on a misapprehension that different adversary proceedings in a single bankruptcy case are the same proceeding when legally they constitute different proceedings.

fails this test.

Federal Rules 8 and 10 are not technicalities. They preserve the court's and parties' ability to manage cases, for which pleadings are the blueprints for motions, discovery, and trial. They make it possible for defendants to identify, prepare, and present defenses. Improper incorporation, like the one here, significantly, improperly, and unnecessarily add to the court's and KB's time, effort, and cost, which ignores the goals expressed in Fed. R. Civ. P. 1, made applicable by Bankruptcy Rule 7001, "to secure the just, speedy, and inexpensive determination of every action and proceeding." Its length and breadth conceals what parts are pertinent, if any and require a responsive pleading or motion. If there are any allegations relevant to avoidance or avoidability, they are buried deep under a mountain of words and exhibits. As Moore's Federal Practice distills the requirements of the Federal Rules, "The reference must be clear and specific and must specifically identify the statements incorporated." 2 Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992)).

The rules were well applied in *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007), a civil RICO action in which the plaintiff attempted to incorporate into its complaint the entirety of lengthy pleadings and exhibits. The court commented that the action was already complicated without incorporation, which is also true for the subsequent transfer action against KB. The *International Longshoremen* court dismissed the complaint under Rule 8 and Rule10 for improper incorporation.

As to Rule 8, the court found the wholesale incorporation of prior pleadings was "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim,'" and that it made the complaint "incoherent" and "unintelligible." Id. at 462, n.72, 463 (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (Rule 8(a)'s purpose is to give the adverse party fair notice of the claim asserted)). As to Rule 10, the court found that

13

"[t]he Government's failure to specifically identify which portions of the hundreds of pages of exhibits it intends to incorporate by reference into the Amended Complaint makes it impossible for the court or the defendants to ascertain the nature and extent of the incorporation, and the purported incorporation is therefore invalid." *Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d  at 462. And the court pointed out the practical consequence that, if allowed, the incorporation would require the defendants to respond not only the 85-page complaint but also to every paragraph in 400 pages of exhibits. Id. at 464. The comparable burdens are even greater with the plaintiff's attempt to incorporate the *Fairfield Sentry Ltd*. amended complaint into the complaint against KB.

The court should reject the incorporation for failure to provide "a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation." *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 229 (W.D. La. 1999); cf. *Whitaker Securities, LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60 (Bankr. S.D.N.Y. 2015) (discussing caselaw and permitting incorporation when there was no danger of prejudice and the parties to the incorporating and incorporated pleadings were the same and agreed the incorporated pleading should be considered on the motion before the court). In this case, the prejudice is apparent and the incorporation flagrantly violates the standards set by the Federal Rules. The incorporation should be rejected and, without a permissible allegation avoidance or avoidability, the complaint should then be dismissed.

## IV.    THE COURT LACKS PERSONAL JURISDICTION OVER KB

### A.  The Legal Framework for the Jurisdictional Analysis

The Supreme Court has established clear limits on and conditions for a U.S. court to exercise its judicial power over a defendant from outside the jurisdiction where the court sits unless the defendant consents. The Court has recognized two bases for personal jurisdiction. One

14

is "general jurisdiction," which applies when it is established that the defendant's "home" is

where the plaintiff has sued, which looks to the defendant's place of incorporation and principal

place of business. *Daimler AG v. Bauman*, 517 U.S. 117, 136-37 (2014). The complaint concedes

in this case that KB is organized under the laws of the Republic of Korea and is headquartered in

Seoul, Korea (and says that, at the time of the challenged redemptions, it "was Korea's largest

bank"). Compl. ¶¶ 3, 22. Therefore, under *Daimler*, KB is not "at home" in New York or the

U.S. and is not subject to "general jurisdiction."

The other basis the Court has recognized for exercising personal jurisdiction over a non-

consenting foreign defendant is "specific jurisdiction." This requires a plaintiff to prove that (1)

the defendant "purposefully availed itself of the privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S.

235, 253 (1958); (2) the plaintiff's claim "arise[s] out of or relate[s] to the foreign corporation's

activities in the forum State," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

414 (1984); and (3) the exercise of jurisdiction is reasonable under the circumstances, *Burger

King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985). The exercise of personal jurisdiction

must always satisfy Due Process. *Waldman v. Palestine Liberation Org.*, 835 F.2d 317, 327-28

(2d Cir. 2016).[11]

The plaintiff has the burden of establishing personal jurisdiction. *E.g., DiStefano v.

Carozzi N. Am. Inv.*, 286 F.3d 81, 84 (2d Cir. 2001). He must do by proving facts demonstrating

that personal jurisdiction is proper within the bounds of the Supreme Court's precedents.

---

[11] The plaintiff alleges personal jurisdiction under the "long-arm" provisions of New York Civil Practice Law &
Rules §302(a) and Bankruptcy Rule 7004. Those provisions require the same showing as the Supreme Court's
requirements for the exercise of personal jurisdiction. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246-49 (2d Cir.
2007) (examining New York Court of Appeals decisions); Bankruptcy Rule 7004(f) allows the exercise of personal
jurisdiction if it "is consistent with the Constitution of the United States."

*Daimler*, 571 U.S. at 136-40. A defendant who challenges personal jurisdiction under Fed. R.

Civ. Pro. 12(b)(2) may present and rely on facts outside the complaint, including facts that

contradict a plaintiff's unsupported allegations. *E.g., Jonas v. Estate of Leven*, 116 F. Supp. 3d

314, 323 (S.D.N.Y. 2015); *see* Fed. R. Civ. Pro. 12(d), made applicable by Bankruptcy Rule

7012.  A court assumes the truth of factual allegations in a complaint only "to the extent they are

uncontroverted by the defendant's affidavits."  Id. (citation omitted). In this case, the facts

demonstrate that there is no basis for this court to accept the plaintiff's incorrect, unsupported

jurisdictional allegations or exercise jurisdiction over KB.

### B.  The Facts Show that KB Is Not Subject to Jurisdiction and Nothing in the Complaint Shows Otherwise

The claim in this case is that KB received redemption payments for Fairfield shares that it

had previously purchased and that it should return some or all of the payments. KB has filed with

this motion the Declaration of Hoon-mi Park, Manager, Custody Business Department, Kookmin

Bank. (the "Park Decl.") It is made on KB's behalf and with its authorization. Id. ¶ 1. The

Declaration demonstrates that, and why, KB's role, actions, and knowledge do not allow personal

jurisdiction to be asserted over it in this action.

1. KB's Role Was Only to Execute Purchase and Redemption Orders When Instructed to Do So By Independent Asset Management Companies

It is important to put in factual context KB's role in the purchase, holding, and

redemption of Fairfield shares, which occurred between 2004 and 2006, with the final

redemption occurring on January 19, 2006. Compl. Ex. C. This makes it easier to understand

what KB did not know and did not do despite the plaintiff's unsupported allegations based on

erroneous assumptions.

KB served as the trustee of trusts organized in Korea under Korean law that were

managed and directed by third-party asset managers not affiliated with KB, namely, Korea

Investment Management Co., Ltd., and Samsung Asset Management. KB's role was to execute

the asset managers' instructions to purchase, hold in custody, or redeem trust assets, including

any Fairfield shares. Park Decl. ¶ 3. KB was not required to, and it did not, perform due

diligence on, investigate, or monitor the trusts' assets, including the Fairfield shares. Id. ¶ 4. That

was solely the job of the asset managers. Id. ¶¶ 4, 7. KB was not the asset managers' agent and

the asset managers were not KB's agents nor vice versa; they stood at arm's length, as Korean

law required. Id.

KB did not invest money in, own any shares of, or have any other contact with Fairfield

except to buy, hold, and redeem shares at the specific direction of the asset managers. Id. ¶ 5. It

also did not invest any money or own any interest in any of the trusts. Id. It did not know the

identities of the trust beneficiaries. Id. It had no investment discretion over what assets the trusts

purchased, held, or redeemed or when to do so. Id. It was not an advisor to the trusts or the

trusts' asset managers. Id. It did not identify or give advice on assets that the trusts should buy or

redeem or when or why they should or should not do so, including the Fairfield shares. Id. KB's

role was solely to provide administrative "back office" execution services for a nominal fee. Id.

2.  KB Had No Knowledge of Fairfield's Business,
    Its Investment Activities, BLMIS, or Madoff

KB knew very little about Fairfield and it had no need to know more than how to execute

purchases and redemptions when directed to do so by an asset manager. Id. ¶ 6. It knew from the

subscription agreements it entered into with "Fairfield c/o Citco Fund Services (Europe) BV"

that Fairfield was a corporation organized under British Virgin Island law and that its address

was in the British Virgin Islands. Id. It knew that purchases and redemptions of Fairfield's shares

were handled by a Netherlands entity in the Citco Group that acted as Fairfield's Administrator

and had its offices in The Netherlands. Id. It knew that Fairfield's shares were purchased and

17

redeemed in U.S. Dollars. Id. It knew the administrative steps to purchase and redeem Fairfield

shares. Id. However, KB did not know Fairfield's business or activities and it did not

communicate or interact with Fairfield Greenwich, BLMIS, Bernie Madoff, or their affiliates, the

companies identified in the complaint as having been involved with Fairfield. Id. ¶ 7. It did not

know that BLMIS or Bernie Madoff had anything to do with Fairfield or its shares. Id. ¶¶14(a),

(b). It did not know that BLMIS, Madoff, or Fairfield were located or operated in or had

connections to New York or the U.S.

Based on its investigations, KB believes it received only the Fairfield Confidential Private

Placement Memorandum dated October 1, 2004 (the "PPM") that is Exhibit 1 to the Park Decl.,

and that it likely received it from an asset manager rather than Fairfield or Citco. Id. ¶ 8. KB

would have reviewed, if any of it, only the steps to execute the asset managers' purchase and

redemption instructions. Id. Other parts of the PPM were not relevant to KB's duties or

responsibilities. Id.

But, even if it read the entire PPM cover to cover, KB would not have learned anything

about BLMIS or Bernard Madoff or the Fairfield investments relevant to this motion or this

lawsuit. Id. ¶ 9. The PPM does not mention Bernard Madoff at all. Id. It mentions BLMIS only

twice and only as a custodian of Fairfield assets, not as a manager of its money or an advisor in

the execution of Fairfield's investment strategies, including the split strike conversion strategy

the PPM says Fairfield used, presumably advised by its Bermudan investment manager identified

in the PPM. Park Decl. ¶ 15(g), (h). The two mentions of BLMIS appear in consecutive

paragraphs under the caption "Escrow Bank and Custodian," and identify BLMIS as a sub-

custodian of Citco Global Custody N.V., a Netherlands entity with its address in Amsterdam, not

New York. Park Decl. Ex. 1 at vii, 14-15.

The first of these two paragraphs mentioning BLMIS says:

18

> The Fund's escrow account is maintained at Citco Bank Nederland N.V. ("Citco Bank"). Citco Global Custody ("Citco Custody") has agreed to act as custodian of Fund's assets. Bernard L. Madoff Investment Securities ("BLM" and, together with other qualified entities with which sub-custodial arrangements may be made, the "Sub-Custodians," and each, singularly, a Sub-Custodian") serve as sub-custodians for certain assets of the Fund. The underlying assets of the Non-SSC Investments managers are held pursuant to custodial arrangements with Goldman, Sachs & Co., the Refco, LLC and other qualified entities.

Id. at 14. The other says:

> Citco Custody has been appointed custodian to the Fund pursuant to a brokerage and custody agreement dated September 20, 1994 between and among the Fund, Citco Bank and Citco Custody (the "Custody Agreement"). Citco Custody currently has U.S.$36 billion under custody. Currently BLM has approximately 95% of the Fund's assets under custody. Citco Custody will be responsible for all of the assets of the Fund, other than the assets deposited with the Sub-Custodians. All assets under custody will be held by Citco Custody and/or a Sub-Custodian, as the case may be, in a separate client account and will be separately designated in the books and records of Citco Custody and the Sub-Custodians. Assets deposited as margin need not be segregated and may become available to the creditors of brokers.

Id. at 14-15.

The PPM does not disclose where BLMIS was organized, where it had its offices, where it conducted its activities, or whether it did anything except act as a sub-custodian. It gives no indication that Madoff or BLMIS had any role with respect to Fairfield's operations or investment activities, including the split-strike conversion strategy that Fairfield said it followed. The PPM identifies its Investment Manager as Fairfield Greenwich (Bermuda) Ltd. at its street address in Bermuda, not New York. Id. at vi.

Nothing in the PPM informs a reader that any activity relating to Fairfield or its investments would take place in New York or elsewhere in the United States. Park Decl. ¶ 10 & Ex. 1. KB had no knowledge and no reason to believe that any would. Id. at ¶¶ 6, 9-15. The PPM says that all the entities involved with Fairfield were formed and had their addresses outside the U.S. in Bermuda,

the British Virgin Islands, the Cayman Islands, Ireland, and The Netherlands. Id.¶ 9 The PPM

mentions that Fairfield's Bermuda investment manager was <u>affiliated with</u> a company with its

principal office in New York (and a significant presence in London), but it nowhere says the

affiliate had or would have any role concerning Fairfield or its shares. Id ¶ 9. That portion of the

PPM says:

> The Manager [Fairfield Greenwich (Bermuda) Ltd.] and its affiliates currently
> serve as investment or administrative manager to approximately twenty funds,
> and have exclusive distribution arrangements with several others. FGG maintains
> its principal office in New York, with a significant presence in London.
> Marketing and client support offices are located elsewhere in the United States,
> Europe, and Latin America. FGG's London entity is licensed and subject to the
> supervision of FSA, and another FGG-affiliated entity is registered as a broker-
> dealer in the United States.

Id. Neither this paragraph nor anything else in the PPM gives any inkling that <u>any person,</u>

<u>entity, or activity</u> relevant to Fairfield or its shares would occur in New York or the U.S.

In fact, the PPM says the opposite, stating:

> The Fund's gains from its investments in or trading in stocks, options or other
> investments should not be subject to United States federal income, branch or
> withholding taxes because <u>the Fund expects that it will not be engaged (or treated</u>
> <u>as engaged) in a "trade or business" in the United States</u>, or treated as a personal
> holding company, for United States federal income tax purposes.

Id. at 30 (emphasis added).

Similarly, nothing in the subscription agreements KB signed to purchase Fairfield shares

for the trusts provided any indication to KB of a connection between Fairfield or its shares and

New York or the U.S. Park Decl. ¶ 12 & Ex. 2. The subscription agreements, which were in the

same form, all mentioned connections only with a Bermudan and several European entities and

did not mention BLMIS, Madoff, or U.S. investment activities. Park Decl. ¶¶ 12(a)-(e); Ex. 2 at

1, ¶¶ 1-4. The agreements direct KB to send subscription money to a bank account at "Citco

Bank Nederland, N.V" in Amsterdam via a HSBC NY correspondent bank as a go-between

because the investment would be in U.S. dollars. Id., Ex. 2 ¶ 3. It also directs redemption

payments to be made to KB's bank account in Seoul, South Korea, via a NY correspondent bank

for the same reason. Ex. 2 ¶ 30, at 11, 12.

Accordingly, KB did not and could not have learned anything from the subscription

agreements, and it did not know, that an investment in Fairfield would involve an investment in

or be managed by someone in New York or the U.S.

3.  The Complaint's Allegations about KB's Knowledge and
    Activities Relating to the U.S. Are Incorrect and Baseless

The complaint sets out incorrect and unsupported allegations that KB had knowledge,

connections with New York and the U.S., and engaged in activities that it in fact did not have.

Those erroneous allegations lead the plaintiff to assert that KB is subject to personal jurisdiction

in this action. The complaint does not disclose any source for the allegations because there are no

sources. Some allegations are bare conclusions of law or broad generalizations that are

disregarded on motions to dismiss. See pages 1-2 above. It is apparent that the signers of the

complaint do not have personal knowledge of the matters alleged about jurisdiction over KB,

which means that the allegations are, at best, on "information and belief."

Paragraph 14 of the Park Declaration specifically addresses each allegation in the

complaint potentially pertinent to jurisdiction, explaining why it is untrue or misleading. In

summary, the declaration demonstrates that KB did not (i) "knowingly direct funds to be

invested with New York-based BLMIS through Fairfield," Compl. ¶ 6; or (ii) "knowingly

receive[] subsequent transfers from BLMIS by withdrawing money from Fairfield," id.; or (iii)

"regularly communicate[] via email with its FGG account representatives in FGG's New York

City office," or (iv) have "FGG account representatives," or communicate, regularly or

otherwise, with FGG in New York or elsewhere; or (v) have any KB "[r]epresentatives who

travelled to New York City to meet with its FGG account representatives." Id. ¶ 7. The

complaint's inaccurate and unsupported allegations cannot be credited over the attestations in the

Park Declaration showing them to be untrue. Unsupported and information and belief allegations

carry no weight.[12]

The complaint also makes several misleading statements concerning jurisdiction but,

after correcting them, they also do not support the court's exercise of personal jurisdiction over

KB. Thus, the complaint

- asserts that KB "submitted to New York jurisdiction" in subscription agreements.

Compl. ¶ 7. That misreads the provision, which actually says that either party "may" bring

litigation in NY "or in any other jurisdiction." Park Decl. ¶14(c); Park Decl. Ex. 2 ¶ 19

(emphasis added).[13]

- asserts that KB "sent a copy of the [subscription] agreement to FGG's New York City

office" (Compl. ¶ 7). KB has no record of having done so, and the allegation is irrelevant

even if true. The allegation does not say when or why a copy was sent to FGG or at whose

request. The subscription agreement directs KB to "fax and mail an executed, completed

copy of this agreement to the Citco Administrator [i.e., Citco Fund Services (Europe) BV] at

[its stated Amsterdam] facsimile number and address, with a copy to the [Investment]

---

[12] *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (allegations based "upon information and belief" were entirely speculative where the complaint contained no allegations of fact which, if true, would have supported such allegations); *accord Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (a "conclusory allegation on information and belief" is insufficient to make a claim plausible where the complaint's factual allegations do not raise a right to relief above the speculative level); *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (complaint with no specific factual allegations to enable court to evaluate information and belief assertions failed to state a claim).

[13] In addition, this court held *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y. Aug. 6, 2018), with respect to a subscription agreement provision effectively identical to those in KB's agreement that the forum provision did not convey jurisdiction over a defendant in an action to recover a redemption payment. Therefore, it is irrelevant to this motion to dismiss.

Manager at Fairfield Greenwich (Bermuda) Ltd." at a street address in Hamilton, Bermuda. (Park Decl. Ex. 2 ¶ 4.) If KB did send a copy of an executed agreement to a NY office of an affiliate of Fairfield's Bermudan Investment Manager, it has no jurisdictional (or commercial) significance being, at most, incidental and insubstantial. It does not evidence "purposeful[]avail[ment] of the privilege of conducting activities within" New York.

- asserts that KB "wired funds to Fairfield Sentry through a bank in New York." (Compl. ¶ 7). The truth is that KB actually wired purchase price dollars <u>to Citco's Netherlands</u> account, as the subscription agreement directs, Park Decl. Ex. 2 ¶ 3, complying with the direction to do so <u>through</u> Citco's specified New York correspondent bank. Use of correspondent banks does not indicate a "purposeful" decision to "conduct activities" "within New York;" it is a technical act required to move money from one offshore account to another. It is not evidence of an intention to avail itself of the privilege of doing business in New York. The claim in this case is about "customer property" received by a bank in Seoul, Korea, not about whether it got to Seoul via an intermediary bank.

Accordingly, the allegations in the complaint do not provide any support for the plaintiff's assertion that this court has personal jurisdiction over KB, are entitled to no weight on this motion, and do not overcome the statements in the Park Declaration.[14]

---

[14] In 2015, during the pendency of consolidated motions to dismiss the plaintiffs' complaints on grounds that they attempted to extend the U.S. Bankruptcy Code extraterritorially and in a way that violated international comity, the plaintiff filed a document called "Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Kookmin Bank," Dkt. No. 47, filed June 27, 2015 (the "Proffered Allegations.") The complaint against KB was not amended to include any of the allegations and that document lacks any status in the case as a pleading or as evidence, and should be disregarded on this motion. However, even if the Proffered Allegations were to be allowed on this motion, they do not support the exercise of personal jurisdiction over KB. Like the allegations of the complaint, they are incorrect, unsupported, and/or irrelevant. Without intending to concede the propriety of their use on this motion, the Park Declaration attaches them as Exhibit 4 and addresses each legally relevant allegation in paragraph 15(a)-(n).

4.  The Facts Preclude the Court's Exercise
of Personal Jurisdiction over KB

The facts demonstrate that KB did not do anything at all "within" the United States or

New York relating to the claim in this case to recover redemptions made by Fairfield. The facts

show that KB did not do anything that could be labelled a "purposeful availment of the privileges

of conducting activities within New York" within the meaning of and Supreme Court's intent in

using those words."[15]  All the facts show are that, from halfway around the world rather than in

New York, KB at most may have sent a copy of an executed contract to an entity in New York

and that it followed contractual instructions in an agreement executed outside the U.S. to send

money from one non-U.S. bank to another non-U.S. bank through correspondent banks, which is

normally, customarily, and routinely done with U.S. Dollar transactions to the tune of more than

a trillion dollars daily. A leading American English dictionary defines "purposeful" to mean

"meaningful," "intentional," and "full of determination."[16] As courts have repeatedly held,

incidental, minimal acts from outside the U.S. like these are not "purposeful availment."

For example, "communications with and payments to New York merely to ensure

compliance with contract terms negotiated and executed outside of New York do not 'project' a

defendant into the state sufficiently to confer personal jurisdiction over it." *Hau Yin To v. HSBC

Holdings PLC*, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir.

2017). Similarly, a foreign defendant's act of sending payment to a plaintiff's New York bank

account pursuant to an agreement negotiated and executed outside the U.S. was held not to be a

purposeful availment conferring jurisdiction. *Rosenblatt v. Coutts & Co. AG*, 2017 WL 3493245,

at *4 (S.D.N.Y. Aug. 14, 2017). So, too, the court in *Hill v. HSBC Bank plc*, 207 F. Supp. 3d

---

[15] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[16] *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/purposeful. Accessed 27 Feb.
2022.

333, 339-40 (S.D.N.Y. 2016), held insufficient to confer jurisdiction allegations that "Foreign

Defendants communicated with and transmitted...funds to and from BLMIS located in New

York;" they did not show purposeful availment because they "were incidental consequences of

fulfilling a foreign contract." *Accord Roper Starch Worldwide, Inc. v. Reymer & Assocs.*, 2 F.

Supp. 2d 470, 474-75 (S.D.N.Y. 1998) ("merely sending payment to New York" pursuant to

contract negotiated and executed in Illinois or Michigan "is not sufficient to establish personal

jurisdiction" in New York).

Furthermore "the plaintiff's claim [against KB] does not "arise[] out of or relate[] to"

KB's sending a copy of a contract or wiring money. It arises from and relates to KB's alleged

possession of alleged "customer property" in Korea that the plaintiff seeks to recover. How the

money got to Korea is, at best, incidental to the claim and is irrelevant to jurisdiction. The

exercise of judicial power over a non-consenting foreign entity requires more substantial,

continuing, and the substantive activities in the forum state. *Helicopteros Nacionales*, 466 U.S. at

414. On the facts of this case, the exercise of jurisdiction would be unreasonable and inconsistent

with constitutional standards. The Supreme Court explained in *Walden v. Fiore*, 571 U.S. 277,

286 (2014), quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985), that "Due Process

requires that a defendant be haled into court in a forum state based on his own affiliation with the

State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with

other persons affiliated with the State."[17]

The Supreme Court also explained that the law makes the activities of third parties and

plaintiffs irrelevant to whether a defendant's conduct permits the exercise of jurisdiction. "[The]

---

[17] The court must disregard as irrelevant activities or contacts of third parties and the plaintiff within or with the
United States; only the defendant's activities and contacts with respect to the claim are relevant. *Walden*, 571 U.S. at
284; *Helicopteros Nacionales*, 466 U.S. at 417

unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales,* 466 U.S. at 417; accord *Walden,* 571 U.S. at 284; *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on the relationship among the defendant, the forum, and the litigation"). Focusing only on what KB did and did not do, an assertion of jurisdiction is not justified.

Enforcing these rules of law under "[t]he Due Process Clause…gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). The action against KB should be dismissed due to the court's lack of personal jurisdiction over it.

## CONCLUSION

For the foregoing reasons, KB respectfully requests this court to dismiss the complaint, the claim, and this action against it.[18]

Dated: New York, NY
March 7, 2022

**Respectfully submitted**

/s/  Richard A. Cirillo

_____
Richard A. Cirillo
CIRILLO LAW OFFICE
246 East 33rd Street – 1 FR
New York, NY 10016-4802
T:  917-541-6778
E:  rcirillo@cirillo-law.com
*Attorney for Defendant
Kookmin Bank*

_____
[18] KB does not consent to entry of final orders or judgment by the bankruptcy court.

26