**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-04468 (CGM) |
| Plaintiff, | |
| v. | |
| Ken-Wen Family Limited Partnership, | |
| Kenneth W. Brown, in his capacity as a General Partner of the Ken Wen Family Limited Partnership, | |
| and Wendy Brown,[1] | |
| Defendants. | |

**MEMORANDUM DECISION GRANTING SUMMARY JUDGMENT IN FAVOR OF THE TRUSTEE, DETERMINING FUNDS TRANSFERRED TO DEFENDANT, KEN-WEN FAMILY LIMITED PARTNERSHIP, ARE CUSTOMER PROPERTY, AND THAT DEFENDANT, KENNETH BROWN, IS LIABLE FOR THE DEBTS OF KEN-WEN**

---

[1] Defendant, Wendy Brown, was dismissed from this proceeding, with prejudice, by so-ordered stipulation dated January 19, 2021. ECF No. 162.

**A P P E A R A N C E S** :

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Attorneys for the Trustee, Irving H. Picard
Rockefeller Center
1270 Avenue of the Americas
Suite 2210
New York, NY 10020
BY:    Christopher M. Lambe (via Zoom)
         Michael S. Neiburg (via Zoom)

BAKER HOSTETLER, LLP
Attorneys for the Irving H. Picard, Trustee
45 Rockefeller Plaza
New York, NY 10111
BY: Nicholas Cremona (via Zoom)

LAW OFFICE OF MARK S. ROHER, P.A.
Attorneys for the Defendant, Kenneth Brown
1806 N. Flamingo Road, Suite 300
Pembroke Pines, FL 33028
BY:    Mark S. Roher (via Zoom)


**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Irving H. Picard ("Trustee"), Trustee for the Substantively Consolidated SIPA[2]

Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS[3]") and Bernard L.

Madoff ("Madoff"), brings this adversary proceeding to avoid and recover fictitious profits

received by the Defendant, Ken-Wen Family Limited Partnership ("Ken-Wen"), on account of

its investment in the infamous Ponzi scheme of BLMIS and from the Defendant, Kenneth Brown

("Brown"), as a general partner of Ken-Wen.  For the reasons set forth in this memorandum

decision, the Court finds the transfers were, in fact, transfers of BLMIS' customer property, and

that Brown is liable for these monies.

---

[2] SIPA means the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.*
[3] The term BLMIS is used only with reference to the LLC and not the sole proprietorship, which sometimes used the similar name of Bernard L. Madoff Investment Securities.

## I.  Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,

Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision.  The Court has authority to enter a final order in

this case.[4] To the extent that it does not, the Court asks the District Court to construe this

decision as proposed findings of fact and conclusions of law, pursuant to the Amended Standing

Order of Reference dated January 31, 2012.

## II.  Background

For a background of these SIPA cases and the BLMIS Ponzi scheme, please refer to the

findings of fact in *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 206–14 (Bankr. S.D.N.Y.

2019).

Ken-Wen was a customer of BLMIS' investment advisory business ("IA Business") and

held Account No.1EM226 in the name "Ken-Wen Family LP Ltd."  *See* Neiburg Decl., ECF.

No.[5] 181, Ex. 12 (BLMIS Acct. Stmt.).  Ken-Wen received $3,850,000 in fictitious profits in the

relevant two-year period.  *Id.*  These withdrawals were paid by checks drawn from the 509

Account,[6] (Neiburg Decl., ECF No. 181, Ex. 16 (check for $150,000); Ex. 22 (check for

---

[4] Defendants have implicitly consented to the entry of a final order by this Court by failing to raise the issue.
*In re Bernard L. Madoff Inv. Sec. LLC*, No. 1:21-CV-02334-CM, 2022 WL 493734, at *10 (S.D.N.Y. Feb. 17,
2022).
[5] Unless otherwise specified, references to this Court's electronic docket ("ECF") are to the docket of adversary
proceeding, 10-04468-cgm.
[6] BLMIS primarily used three bank accounts for the IA Business: JP Morgan Chase Bank, N.A. ("Chase") account
#xxxxx1703 (the "703 Account"); Chase account #xxxxxxxxx1509 (the "509 Account"); and Bankers Trust account
#xx-xx0-599 (the "599 Account" or the "BT Account").

$200,000)), and by wire transfers from the 703 Account. Neiburg Decl., ECF No. 181, Ex. 18 at

51 (703 Account statement showing wire transfer to Paradise Bank in the amount of $500,000);

Ex. 20 at 47 (703 Account statement showing wire transfer to Paradise Bank in the amount of

$3,000,000); *see also* Brown Dep. at 62:2–7; 64:7–15; 71:12–73:7; 79:19–80:5, ECF No. 181,

Ex. 11. Brown was, or purported to be, a general partner of Ken-Wen from its creation in 2000

until his dissociation in February 2008. Def.'s Opp'n., ECF No. 203, Ex. 1 (p'ship agreement) &

ECF No. 204, Ex. 7 (cert. of amendment).

Brown filed a motion for summary judgment arguing that he cannot be held personally

liable for debts incurred by Ken-Wen because he is no longer a general partner of Ken-Wen.

Mot. Summ. J., ECF No. 174. The Trustee opposed the motion and cross-moved for summary

judgment seeking to have the fictitious profits received by Ken-Wen declared fraudulent

transfers and to make Brown liable on those fraudulent transfers. Opp'n & Summ. J., ECF Nos.

178 & 179. Brown opposed the Trustee's cross-motion with several arguments that are in

conflict with his initial summary judgment motion—including that he was never a partner of

Ken-Wen. Resp. Opp'n, ECF Nos. 203 & 204. Trustee filed a reply in response to address these

arguments. Reply, ECF No. 205.

Ken-Wen did not oppose the summary judgment motion. Feb. 16, 2022 Hr'g Tr. at

37:14–15.

The Court heard oral arguments on Brown's summary judgment motion and the Trustee's

cross-motion for summary judgment on February 16, 2022. The Court granted summary

judgment against Ken-Wen at the close of oral argument. Upon the record of that hearing, the

parties agreed that it is undisputed that Brown was a general partner until his dissociation in

February 2008.  Feb. 16, 2022 Hr'g Tr. at 40:21–22 ("[Brown] withdrew as a general partner as of February 29th, 2008.").

### III. <u>Discussion</u>

#### A.  Summary Judgment Standard

Pursuant to Rule 56(c), incorporated and made applicable in this adversary proceeding by Bankruptcy Rule 7056(c), summary judgment shall be granted to the moving party if the Court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[A] fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences." *In re CIS Corp.*, 214 B.R. 108, 118 (Bankr. S.D.N.Y. 1997).

A moving party may meet its burden on summary judgment by showing that there is no evidence to support the non-moving party's case. *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994).  Although the Court must view the evidence in the light most favorable to the nonmoving party, the nonmoving party still must demonstrate, "through submissions of evidentiary quality, that a trial worthy issue persists." *Rentas v. Triple-S Salud Inc. (In re PMC Mktg. Corp.)*, 499 B.R. 214, 216 (Bankr. D.P.R. 2013) (internal quotation omitted).  "[O]n issues where the nonmovant bears the ultimate burden of proof, [the nonmovant] must present definite, competent evidence to rebut the motion." *Id.* (citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)).  "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Greenblatt v. Prescription Plan Services Corp.*, 783 F. Supp. 814, 819–20 (S.D.N.Y. 1992).

**B. Whether the transfers made to Ken-Wen are Fraudulent Transfers?**

The Trustee seeks to avoid and recover transfers of fictitious profits made to Ken-Wen under 11 U.S.C. § 548(a)(1)(A), which is made applicable to these SIPA proceedings under § 78fff-2(c)(3). The elements of this claim are: "(i) a transfer of an interest of the debtor in property; (ii) made within two years of the petition date; (iii) with actual intent to hinder, delay, or defraud a creditor." *Adelphia Recovery Tr. v. Bank of Am., N.A.*, Nos. 05 Civ. 9050(LMM), 03 MDL 1529, 2011 WL 1419617, at *2 (S.D.N.Y. Apr. 7, 2011), *aff'd*, 748 F.3d 110 (2d Cir. 2014).

    i.   <u>A transfer of an interest of the debtor in property</u>

To meet this last prong, the Trustee need only prove that the property he is seeking to recover was "customer property" prior to the transfer. *Peloro v. U.S.*, 488 F.3d 163, 170 (3d Cir. 2007) ("'[C]ustomer property,' as defined by SIPA, includes not only securities actually allocated to customer accounts, but any 'cash and securities ... at any time received, acquired, or held . . . for the securities account of a customer.'"). All monies transferred from the 509 Account or the 703 Account are "customer property" for purposes of these SIPA cases. *Picard v. BAM, L.P.* (*In re BLMIS*), 624 B.R. 55, 62 (Bankr. S.D.N.Y. 2020) ("When the Defendants invested their money into the IA Business, the deposits were placed into the Bank Accounts and commingled with all of the Ponzi scheme victims' deposits. The funds held in the Bank Accounts were meant to be invested legitimately through BLMIS but never were. Thus, they were 'customer property.'"); *see also Picard v. Nelson* (*In re BLMIS*), 610 B.R. 197, 233 (Bankr. S.D.N.Y. 2019) ("All of the transfers were made from the 509 Account held by BLMIS and consisted entirely of fictitious profits. Under SIPA, the customer deposits are deemed to have been BLMIS's property for the purposes of these adversary proceedings.").

The Trustee has submitted evidence showing that all transfers originated in either the 509

Account or the 703 Account.  Ken-Wen has not responded to the Trustee's summary judgment

motion and the Trustee has met his burden of demonstrating that the transfers made from BLMIS

to Ken-Wen are fraudulent transfers.

ii.  <u>Made within Two Years of the Petition Date</u>

Here, the Trustee is seeking to recover the fictitious profits that BLMIS transferred to

Ken-Wen within the two-year period between December 11, 2006 and the SIPA filing date of

December 11, 2008 ("SIPA Filing Date").  In this case, the four transfers at issue took place on

June 26, 2007 (in the amount of $150,000); December 31, 2007 (in the amount of $500,000);

January 24, 2008 (in the amount of $3,000,000); and November 17, 2008 (in the amount of

$200,000).  Neiburg Decl., ECF No. 181, Ex. 16 (check for $150,000); Ex. 18 at 51 (703

Account statement showing wire transfer to Paradise Bank in the amount of $500,000); Ex. 20 at

47 (703 Account statement showing wire transfer to Paradise Bank in the amount of $3,000,000);

Ex. 22 (check for $200,000).  All four transfers were made within two years of the SIPA Filing

Date.

iii.  <u>Actual Intent to Hinder, Delay, or Defraud</u>

Intent to defraud is established as Madoff operated a Ponzi scheme. *Picard v. Cohen* (*In*

*re BLMIS*), Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25,

2016) ("[T]he Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all

transfers are deemed to have been made with actual fraudulent intent.") (internal quotation

omitted); *Picard v. Cohmad Sec. Corp.* (*In re BLMIS*), 454 B.R. 317, 330 (Bankr. S.D.N.Y.

2011) ("The fraudulent intent on the part of the debtor/transferor is established as a matter of law

by virtue of the Ponzi scheme presumption.") (cleaned up). That BLMIS operated as a Ponzi

scheme is well-established.  The Court relies on earlier findings of same and holds that the

Trustee has met its burden of proof for summary judgment on this issue.  *See Picard v. Legacy*

*Capital Ltd.* (*In re BLMIS*), 603 B.R. 682, 688–93 (Bankr. S.D.N.Y. 2019) (discussing in detail

that BLMIS was a Ponzi scheme and why the Trustee is permitted to rely on the Ponzi scheme

presumption to prove intent as a matter of law); *see also Bear Stearns Secs. Corp. v. Gredd (In*

*re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("[T]he Ponzi scheme

presumption remains the law of this Circuit.").

### C. Prejudgment interest

The Trustee requests prejudgment interest at a rate of 4% from the SIPA Filing Date.

This request has not been opposed.  *Picard v. BAM L.P. (In re BLMIS)*, 624 B.R. 55, 65 (Bankr.

S.D.N.Y. 2020) (awarding prejudgment interest at a rate of 4%); *see also* Order, Adv. Pro. No.

10-04390, Dkt. No. 253 ("The interest shall not compound.").

Prejudgment interest is "normally" awarded in avoided transfer cases "to compensate for

the value over time of the amount recovered."  *In re Cassandra Grp.*, 338 B.R. 583, 599

(S.D.N.Y. 2006) ("To fully and fairly compensate Cassandra's creditors for their loss—not only

of $300,000 that was fraudulently conveyed to the Defendants, but of the use of that money since

the date of the demand—the Trustee should be permitted to recover prejudgment interest."); *see*

*also Messer v. Magee* (*In re FKF 3, LLC*), 2018 WL 5292131, at *13 (awarding prejudgment

interest to compensate for "loss of interest, the diminished value of the damages award due to the

passage of time, and Plaintiff's lost opportunity to make use of the lost funds"); *see also S.E.C. v.*

*First Jersey Sec., Inc.*, 101 F.3d 1450, 1477 (2d Cir. 1996) ("Nor are we persuaded that it was

inappropriate to order that prejudgment interest be paid for the entire period from the time of

defendants' unlawful gains to the entry of judgment. Even if defendants were correct that the

present litigation was protracted through some fault of the SEC, defendants plainly had the use of their unlawful profits for the entire period . . . .")

The Trustee is charged with collecting fictitious profits from net winners so that net losers in BLMIS' Ponzi scheme can be adequately compensated for their losses. He has spent approximately ten years prosecuting this case and cannot be made whole without an award of prejudgment interest. Prejudgment interest is warranted at a rate of 4% from the SIPA Filing Date. As the Court has determined that Ken-Wen is liable, the Court will now turn to the liability of Brown.

### D. Whether Brown was a general partner of Ken-Wen?

In the opposition to the Trustee's summary judgment, Brown argues that he was never a general partner of Ken-Wen. Even though Brown admitted to being a general partner during the February 16, 2022 oral arguments on this motion, the Court will address the issue as it relates to the parties' dispute.

"[U]nder Florida law, the general partners are jointly and severally liable for the debts of . . . a limited partnership." *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 128 (Bankr. S.D.N.Y. 2016) (citing Fla. Stat. § 620.1404(1) (2016). According to Florida's limited partnership law, "[a] person's dissociation as a general partner does not of itself discharge the person's liability as a general partner for an obligation of the limited partnership incurred before dissociation." Fla. Stat. § 620.1607.

In his responsive papers, Brown argues that he was not a general partner of Ken-Wen, despite being listed as one in the partnership agreement, because he never made his required initial capital contribution. Reply ¶ 16, ECF No. 203. He also argues that he was "merely an agent" of the partnership and that his former spouse, Wendy, had total control of the partnership.

Brown's sworn affidavit, dated February 4, 2022, was submitted as evidence supporting his

opposition to the Trustee's motion for summary judgment, states that he was a limited partner

when these transfers were made and not a general partner. Def.'s Aff. ¶ 39, ECF No. 203, Ex. A.

Brown's argument that he was not a general partner is contradicted by the evidence presented by

the Trustee and by Brown's own prior admissions and concessions at oral argument.

In his deposition, Brown acknowledged that he was a general partner of Ken-Wen. Def.'s

Jan. 27, 2020 Dep. Tr. 15:16, ECF No. 181, Ex.11. He filed documents with the Florida State

Division of Corporations indicating that he was a general partner. Am. Certificate, ECF No. 204,

Ex. 7 (filed with the Florida Division of Corporation on April 29, 2008, which removes Brown

as a general partner of Ken-Wen); *see also* Ken-Wen Agreement, ECF No. 203, Ex. 3 (stating

that Brown is giving up his general partnership interest in Ken-Wen).

Brown's affidavit that attempts to contradict the Trustee's objective evidence is

insufficient to defeat summary judgment. *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006)

("[A] properly supported motion for summary judgment is not defeated by self-serving

affidavits.").

> It is true that an affidavit generally suffices to create an issue of material fact. But
> not always. For example, if a person responding to a motion for summary
> judgment submits an affidavit that contradicts his earlier deposition testimony,
> unless the deposition testimony reflects confusion, the affidavit does not create a
> genuine dispute of material fact. To hold otherwise would greatly diminish the
> utility of summary judgment as a procedure for screening out sham issues of fact.

*Green v. Byrd*, 358 F. Supp. 3d 782, 788 (E.D. Ark. 2018) (cleaned up).

Not only does Brown's argument contradict his own prior deposition testimony, his

facsimile requests, and the official forms filed with the Florida Division of Corporations,[7] it also

contradicts his own "undisputed facts" as stated in his summary judgment motion filed with the

---

[7] "Signing a record authorized or required to be filed under this act constitutes an affirmation under the penalties of
perjury that the facts stated in the record are true." Fla. Stat § 620.1208.

Court on November 5, 2021.  Mot. Summ. J., ¶ 6, ECF No. 174 ("In fact, Defendant Brown

dissociated himself as a general partner of Ken-Wen as of February 29, 2008 . . . .").  There is no

genuine issue that Brown was a general partner during the time that the first three requests were

made.

**E.  When and how does Brown's liability arise for debts that were incurred by Ken-Wen?**

The parties dispute whether Brown may be held liable for debts incurred by Ken-Wen

after his dissociation from the partnership. They also dispute at what point in time Ken-Wen

became, or will become, liable on these fraudulent transfer debts. Trustee argues that Ken-Wen

is liable as of the date of the transfer.  Brown argues that Ken-Wen is not liable for the transfers

until there is a judgment entered against it.

i.    <u>When does Ken-Wen's liability arise?</u>

There is a dispute between the parties over when these debts were incurred by Ken-Wen.

The Trustee argues that the debts were incurred on the date that the transactions occurred, while

Brown argues that there is no liability for the partnership until a judgment against it is entered by

this Court.  The Court notes that neither of these dates is appropriate for calculating when this

liability was incurred by the partnership.  The claims being brought by the Trustee arise from a

combination of the SIPA and the Bankruptcy Code.  *See* Am. Compl. ¶¶ 42–48, ECF No. 82

(moving to recover fraudulent transfers against Brown pursuant to "sections 548(a)(1)(A),

550(a), and 551 of the Bankruptcy Code and sections 78fff-1(a) and 78fff-2(c)(3) of SIPA").

Section 78fff-2(c)(3) of SIPA states: "[T]he trustee may recover any property transferred

by the debtor which, except for such transfer, would have been customer property[8] **if and to**

**the extent that such transfer is voidable or void under the provisions of title 11**." (emphasis

---

[8] Customer property is a defined term under SIPA § 78*lll*(4).

added).  Under SIPA, a transfer may be avoided by the Trustee only if it is voidable under the

Bankruptcy Code.  *Id.*  Section 548(a)(1)(A) states: "The trustee may avoid any transfer . . . of an

interest of the debtor in property, or any obligation . . . incurred by the debtor, **that was made or**

**incurred on or within 2 years before the date of the filing of the petition** . . . ."  (emphasis

added).  In this case, the relevant date is December 11, 2008, which is the SIPA Filing Date.

*Picard v. Flinn Invs., LLC*, 463 B.R. 280, 284 (S.D.N.Y. 2011); *Sec. Inv. Prot. Corp. v. BLMIS*

(*In re Madoff*), 531 B.R. 439, 453 (Bankr. S.D.N.Y. 2015).

These claims could not have been asserted prior to the filing of the SIPA case, and

therefore, the date of the commencement of the SIPA case is the date when the fraudulent

transfer claims became a liability of the partnership.  *Nelson v. Amquip Corp.* (*In re Nelson Co.*),

117 B.R. 813, 818 (Bankr. E.D. Pa. 1990) ("It is the bankruptcy filing that gives rise to the right

to demand a recovery of the transfer. It is from that date that measurements should be made."),

*aff'd sub nom. Nelson Co. v. Amquip Corp.*, 128 B.R. 930 (E.D. Pa. 1991), *subsequently aff'd*

*sub nom. In re Nelson Co.*, 959 F.2d 1260 (3d Cir. 1992).

When considering when prejudgment interest should begin to run, the court in *Nelson v.*

*Amquip Corporation* explained:

> The determination of a preference and the recovery of the transfer under section
> 550 are based upon a subsequent event—the transferor's bankruptcy filing—and
> upon an analysis of the debtor's financial structure within that bankruptcy (*i.e.*,
> that the transferee would receive more if it retained the transfer than if the debtor's
> assets were liquidated). Because the transfer is initially proper, and because there
> must be some affirmative decision made, supported by section 547(b), to recover
> the transfer, the consensus position is that prejudgment interest does not begin to
> accrue until some affirmative demand is made of the transferee to return the
> transfer.

*Nelson Co.*, 117 B.R. at 818; *see also Messer v. Magee* (*In re FKF 3, LLC*), 13 Civ. 3601 (JCM)

2018 WL 5292131, at *14 (S.D.N.Y. Oct. 24, 2018) ("[T]he fraudulent conveyance claims here

arose only in the context of [the debtor]'s bankruptcy proceeding . . . ."); *Buchwald v. Renco Grp.*, 539 B.R. 31, 63 (S.D.N.Y. 2015) ("Plaintiff's right of recovery arose from the bankruptcy filing."), *aff'd on other grounds sub nom. In re Magnesium Corp. of Am.*, 682 F. App'x 24 (2d Cir. 2017).

The Trustee cites *In re Grossman's, Inc.*, 607 F.3d 114, 125 (3d Cir. 2010), for the proposition that a claim arises when prepetition conduct gives rise to an injury. That case was discussing a prepetition tort claim brought by individuals against the debtor and not a fraudulent transfer claim. *Id.* at 117. The claims at issue here are statutory in nature. Ken-Wen's obligation on these transfers could not have arisen prior to the SIPA Filing Date, since it is the SIPA Filing Date that determines which transfers may be recovered by the Trustee. *Hill v. Spencer Sav. & Loan Assoc.* (*In re of Bevill, Bresler & Schulman, Inc.*), 83 B.R. 880, 887 (D.N.J. 1988) ("The reference in section 549 of the Bankruptcy Code to the commencement of the case must be understood to be a reference to the SIPA filing date.") (cleaned up).

In this case, the four transfers at issue took place on: June 26, 2007 (in the amount of $150,000); December 31, 2007 (in the amount of $500,000); January 24, 2008 (in the amount of $3,000,000); and November 17, 2008 (in the amount of $200,000). There is no genuine issue of material fact that Kenneth Brown was a general partner of Ken-Wen during the period that the first three transfers were received by the partnership. And that he made the earliest three withdrawals[9] in his capacity as a general partner. Def.'s Jan. 27, 2020 Dep. Tr. 57:2–4; 67:13–23; 69:24–70:1, ECF No. 181, Ex.11. The final transfer from BLMIS to Ken-Wen occurred on November 17, 2008 (in the amount of $200,000), which was after Brown's dissociation from Ken-Wen. Am. Certificate, ECF No. 204, Ex. 7.

---

[9] The three withdrawals are: 1) the June 26, 2007 withdrawal in the amount of $150,000; 2) the December 31, 2007 withdrawal in the amount of $500,000; and 3) the January 24, 2008 withdrawal in the amount of $3,000,000.

This SIPA proceeding was filed on December 11, 2008, and Brown dissociated from

Ken-Wen prior to that date, on February 29, 2008.  Ken-Wen became liable for all four of the

transfers at issue here on the SIPA Filing Date and after Brown's dissociation. According to the

Florida Revised Uniform Limited Partnership Act, with some exceptions, a "person is not liable

for a limited partnership's obligation incurred after dissociation." Fla. St. § 620.1607(1).

As such, the Court must consider whether the exception set forth in § 620.1607(3) applies.

Subsection three of § 620.1607, states:

> A person that has dissociated as a general partner but whose dissociation did not
> result in a dissolution and winding up of the limited partnership's activities is
> liable on a transaction entered into by the limited partnership after the dissociation
> only if:
> (a) A general partner would be liable on the transaction.
> (b) At the time the other party enters into the transaction:
>         1. Less than 2 years have passed since the dissociation.
>         2. The other party does not have notice of the dissociation and reasonably
> believes that the person is a general partner.

Fla. St. § 620.1607(3).

ii.    <u>Whether, at the time the other party enters into the transaction, less than two years
       have passed since the dissociation?</u>

At oral argument, Brown's counsel argued that the word "transaction" in subsection three

should be read differently than the term "obligation," which was used by the Florida legislature

in subsection one.  He argued that the Court should read subsection one to mean that Brown is

not liable on these fraudulent transfers because Ken-Wen's "obligation" was not "incurred" until

after Brown's dissociation.  And he also argued that subsection three should not apply to Brown

because the parties "enter[ed] into the transaction[s][10]" prior to his dissociation.

While Brown makes a clever argument, if the Court applied his interpretation of the

statute, Brown would not be liable for the three transfers that occurred while he was a general

---

[10] He conceded that the fourth transaction may fall under this exception as it was "entered into" after Brown's
dissociation.

partner of Ken-Wen but would be liable for transfers Ken-Wen received after his dissociation. Such an interpretation would thwart the intent of the Florida legislature to make general partners liable for debts incurred by limited partnerships under the Revised Uniform Limited Partnership Act.[11]  *Smith v. Doe*, 538 U.S. 84, 92 (2003) ("[C]onsiderable deference must be accorded to the intent as the legislature has stated it.").

The Court is mindful of the fact that the "transaction" in question here is not an ordinary business "transaction."  Ken-Wen did not enter into a contract with BLMIS agreeing to return these funds.  Instead, SIPA created a "transaction" by operation of law.   According to SIPA § 78fff-2(c)(3), fraudulent transfers are "deemed to have been the property of the debtor and, if such transfer was made to a customer[[12]] . . . , such customer [is] deemed to have been a creditor, the laws of any State to the contrary notwithstanding."  Thus, SIPA creates a debt between Ken-Wen and BLMIS by morphing Ken-Wen's property into BLMIS's property and changes Ken-Wen into a "creditor" of BLMIS.

Thus, for purposes of determining Brown's liability under Florida law, the "transactions" the Court must consider are not the initial transfers between BLMIS and Ken-Wen.  Rather, the "transaction" is one created by SIPA, which makes Ken-Wen liable to pay back BLMIS's funds to the Trustee.  This transaction occurred when the SIPA action was filed, on December 11, 2008.

Less than two years had passed from Brown's dissociation when the SIPA case was filed and, as such, Brown is liable, pursuant to § 620.1607(3) of Florida's Revised Uniform Limited Partnership Act, for these debts incurred by Ken-Wen.

---

[11] The Court reviewed the legislative history and various secondary sources but none discussed how this subsection should be interpreted.
[12] Ken-Wen is a "customer" of BLMIS.  SIPA § 78*lll*(2).

      iii.    <u>Whether, when this transaction occurred, the other party does not have notice of</u>
<u>the dissociation and reasonably believes that the person is a general partner?</u>

The parties have provided no evidence that BLMIS had notice of Brown's dissociation
and the Trustee has submitted evidence demonstrating that BLMIS reasonably believed that
Brown was a general partner on December 11, 2008.

All of the requests for withdrawals made by Ken-Wen were made by Brown, personally.
All four of Brown's requests were signed by "Kenneth Brown." The only discrepancy between
the first three requests and the fourth request, which was made on November 2008, is that Brown
signed the November 2008 request as "Kenneth Brown FLP," instead of "Kenneth Brown GP."
Neiburg Decl. Ex. 21 (facsimile); *see also* Def.'s Dep. 78:23–24, ECF No. 181, Ex. 11 ("Q. And
how did you sign this document? A. Kenneth Brown FLP.").

The use of "FLP," which is commonly used to mean "Family Limited Partnership,[13]"
instead of "GP" is insufficient to put BLMIS on notice of Brown's dissociation. There is no
genuine issue of material fact that BLMIS reasonably believed that Brown remained a general
partner of Ken-Wen on December 11, 2008. Fla. St. § 620.1607(3).

Brown is liable for the fraudulent transfers made to Ken-Wen.

**F. Whether Brown's discharge under chapter 11 of the Bankruptcy Code bars this
action?**

In his opposition to the Trustee's motion, Brown raised, among other things, his chapter
11 bankruptcy discharge as a defense to liability on these fraudulent transfers. Reply ¶ 74, ECF
No. 203. Brown filed chapter 11 bankruptcy in the Southern District of Florida on February 14,
2013. *See In re Brown*, 13-13343-EPK (S.D. Fla. Feb. 14, 2013). His plan was confirmed on
March 3, 2015, and he received a bankruptcy discharge of his debts on October 19, 2017,
pursuant to § 1141(d)(5). The order discharging Brown states: "The debtor is discharged from

---

[13] https://www.investopedia.com/terms/f/familylimitedpartnership.asp

any debt that arose before the date of confirmation of the Plan, and any debt of a kind specified in 11 U.S.C. §502(g), (h) or (i) except as provided in the Plan or in this Order; 6he discharge does not discharge a debtor from any debt excepted from discharge under 11 U.S.C. §523." Discharge Order, 13-13343-EPK (Bankr. S.D. Fla. Oct. 19, 2017), Fla.[14] ECF No. 727; *see also* § 1141(d)(2).

Section 523(a)(3)(A)[15] excepts from discharge debts that are "neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit— if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing." 11 U.S.C. § 523(a)(3)(A).

This exception applies only to known creditors. *See Leadbetter v. Snyder* (*In re Snyder*), 544 B.R. 905, 909 (Bankr. M.D. Fla. 2016) ("Because the Debtors had no knowledge about a potential claim . . . and therefore could not have scheduled any such claim at the time this case was filed, § 523(a)(3)(A) does not render the . . . claim nondischargeable."); *Aetna Cas. & Sur. Co. v. Wilson* (*In re Wilson*), 200 B.R. 72, 74 (Bankr. M.D. Fla. 1996) ("[I]t is clear that [creditor] was not known by the Debtor as an entity which was or might assert a claim against it. For this reason, it is evident that the exception set forth in § 523(a) is not applicable.").

---

[14] The Court is using the term "Fla. ECF" to reference a document that is filed on the docket of Brown's chapter 11 case.

[15] Section 523(a)(3)(B) is inapplicable here as this debt is not a fraudulently incurred debt. "[T]he Ponzi scheme presumption applies only to the intent of the Ponzi scheme perpetrators, not to the intent of the people they lure into the scheme." *Nationwide Judgment Recovery Inc. v. Grimaldo* (*In re Grimaldo*), No. 20-11770-T7, Adv. No. 20-1076-t, 2021 WL 3716393, at *4 (Bankr. D.N.M. Aug. 20, 2021). Brown is a transferee and not subject to the Ponzi scheme presumption. *Id.* There is no evidence that Brown has the "requisite intent" necessary to have this debt excepted under § 523(a)(3)(B). *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 365 (2016) ("[T]he recipient of the transfer—who, **with the requisite intent**, also commits fraud—can obtain assets by his or her participation in the fraud.") (emphasis added) (cleaned up); *see also Sauer Inc. v. Lawson* (*In re Lawson*), 791 F.3d 214, 222 (1st Cir. 2015) ("We hold that the fraud exception to discharge codified at § 523(a)(2)(A) continues to bar from discharge debts incurred through knowing and intentional receipt of fraudulent conveyances as it has since 1867."); *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (holding same). Brown is an "innocent investor" (aka a good faith investor). *See* Trustee's Ltr. dated Feb. 20, 2014 at 1, ECF No. 42.

Despite the fact that Brown argues that he had no notice of this adversary proceeding until November 2015, (Reply ¶ 23(k), ECF No. 203), this adversary proceeding was listed as a response to question four on his statement of financial affairs ("SOFA"), which was filed in his chapter 11 case on March 11, 2013. *See* SOFA, at 3, 13-13343-EPK, Fla. ECF No. 25 (listing "Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities, LLC v. Ken-Wen Family Limited Partnership; Kenneth W. Brown, in his capacity as a General Partner of the Ken-Wen Family Limited Partnership, Wendy Brown, and RBC Centura Bank ADV. Pro. No. 10-04468 (BRL)" as a bankruptcy adversary proceeding pending in the United States Bankruptcy Court for the Southern District of New York). No address was provided for the BLMIS Trustee nor was he listed on the affidavit of service. Scheds. & SOFA, at 36-38, Fla. ECF 25. Since this action was listed in his bankruptcy petition, it cannot be disputed Brown knew of this debt at the time of his bankruptcy filing.

The deadline for filing proofs of claim ("Claims Bar Date") in Brown's chapter 11 case was May 15, 2013. Or. Estab'ng Claims Bar Date, 13-13343-EPK (Mar. 19, 2013), Fla. ECF No. 33. The order establishing the Claims Bar Date was entered on March 19, 2013, which was just days after Brown filed his statement of financial affairs. It is clear from the documents filed in Brown's chapter 11 case that Brown knew of this debt prior to the order establishing the Claims Bar Date. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (courts may take judicial notice of documents if no serious question as to its authenticity exists).

The plan provided for a 100% dividend to unsecured creditors. Final R. ¶ 1, Fla. ECF No. 716. As a known creditor of Brown, the Trustee was entitled to receive notice of the bankruptcy filing and Claims Bar Date in order to be able to fully participate in the case. *In re Manausa*, 2013 WL 12233953, at *3 (Bankr. N.D. Fla. Dec. 12, 2013); *see also Elliot v. Gen. Motors, LLC*

(*In re Motors Liquidation Co.*), 829 F.3d 135, 159 (2d Cir. 2016) ("If the debtor knew or

reasonably should have known about the claims, then due process entitles potential claimants to

actual notice of the bankruptcy proceedings, but if the claims were unknown, publication notice

suffices.").

The Trustee acknowledges learning of Brown's bankruptcy on October 22, 2015.[16]

Request for Default ¶ 18 (Oct. 30, 2015), ECF No. 62. Brown has failed to provide evidence that

Trustee received notice of this bankruptcy case in time to file a proof of claim. This was

conceded at oral argument. As such, this debt was not discharged in Brown's chapter 11 case,

pursuant to § 523(a)(3)(A).

**G. Other Issues**

i. <u>Insufficient Service of Process, Personal Jurisdiction, Venue</u>

In his opposition to the Trustee's motion, Brown asserts many arguments that contradict

his earlier pleadings. Aside from the ones mentioned earlier in this decision, Brown argues that

he was not properly served, that the Court lacks personal jurisdiction over him, and that this

Court is not the proper venue.

Brown has waived these defenses by failing to assert them in his motion to dismiss or in

his answer. Fed. R. Civ. P. 12(h)(1); Mot. Dismiss, ECF No. 95 (failing to raise issue of service

of process, personal jurisdiction, and venue); Def.'s Answer, ECF No. 122) (same). He also

failed to raise them in his summary judgment motion. Mot. Summ. J., ECF No. 174.

ii. <u>Subject Matter Jurisdiction</u>

Brown argues that this Court does not have subject matter jurisdiction over this

proceeding. Such an argument is wholly without merit. The Court has subject matter

---

[16] By this time, the stay was lifted. Order Confirm. Plan ¶ 27, Fla. ECF No. 420 (lifting stay upon effective date of
the plan). Payments were completed under the plan by October 15, 2015. Plan Admin.'s Rep., Fla. ECF No. 639.

jurisdiction over this adversary proceeding under SIPA § 78eee(b)(4), 28 U.S.C. § 1334, 157(a)

& (b), and Order No. M10-450 (S.D.N.Y. July 10, 1984), as amended by Amended Standing

Order of Reference No. M10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012). *See Picard v. BAM

L.P.* (*In re BLMIS*), 624 B.R. 55, 57 (Bankr. S.D.N.Y. 2020) (finding that the Court had subject

matter jurisdiction over actions seeking to recover fraudulent transfers during the two-year

period before the petition date); *SIPC v. BLMIS (In re Madoff)*, 531 B.R. 439, 455–57 (Bankr.

S.D.N.Y. 2015) (rejecting argument that this Court lacks subject matter jurisdiction over similar

avoidance actions).

### iii. Ken-Wen is not a Mere Conduit

Brown argues that Ken-Wen was a "mere conduit" and as such should not be liable for

the fraudulent transfers.  "[A]n initial transferee is the person who has dominion and control over

the subject of the initial transfer to the extent that he or she may dispose of it as he or she pleases,

such as investing the whole amount in lottery tickets or uranium stocks." *Sec. Inv. Prot. Corp. v.

Stratton Oakmont, Inc.*, 234 B.R. 293, 313 (Bankr. S.D.N.Y. 1999) (cleaned up).  A "mere

conduit" is someone who possesses the money but is "powerless to put the money to his or her

own purposes." *Id.* (cleaned up).

The Trustee provided evidence that Ken-Wen received this money in its own bank

accounts and had complete dominion and control over the funds.  The only persons with access

to the bank accounts of Ken-Wen were its general partners, Brown and his former spouse.

### iv. Brown Did Not Take for Value

Brown asserts the "for value" defense under § 548(c).  That defense is not available to

him in this case.  "[E]very circuit court to address this issue has concluded that an investor's

profits from a Ponzi scheme are not 'for value.'" *Picard v. Cohen* (*In re BLMIS*), No. 08-01789(SMB), 2016 WL 1695296, at *6 (Bankr. S.D.N.Y. Apr. 25, 2016).

v. <u>Whether additional discovery is appropriate before summary judgment may be granted?</u>

At oral argument, Brown's counsel argued that this Court should not grant the Trustee's motion for summary judgment because the Court had not yet ruled on Brown's motion to compel discovery of Ken-Wen and Wendy Brown. Mot. Compel, ECF No. 172. Brown's motion was set to be argued before the Court on November 17, 2021, until the parties stipulated to remove the motion from this Court's agenda and adjourned the motion "*sine die*."[17] J. Stip. & Order ¶ 1, ECF No. 175. That stipulation also scheduled the date for the hearing on Brown's motion for summary judgment and the Trustee's cross-motion for summary judgment. *Id.* ¶ 5.

If Brown wished to have this Court rule on that motion, he should not have agreed to adjourn it *sine die*. Moreover, Brown's motion is an exact replica of the one that Judge Bernstein already denied on February 5, 2020. *Compare* Mot. Compel, ECF No. 146 *with* Mot. Compel, ECF No. 172; *see also* Order, ECF No. 147 (denying Brown's motion to extend fact discovery).

---

[17] Sine die, Black's Law Dictionary (11th ed. 2019) ("With no day being assigned (as for resumption of a meeting or hearing).").

### IV. <u>Conclusion</u>

For the foregoing reasons, summary judgment is granted in favor of the Trustee as to both Ken-Wen and Brown. Brown's motion for summary judgment is denied. The Trustee shall submit proposed order(s) within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: March 9, 2022**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**