# EXHIBIT N

The Bank of New York
**Private Client Services/BNY Asset Management**
**Non-Individual Accountholders Know Your Customer Enhanced Due Diligence Form**

| | |
|---|---|
| Is this a New Non-Individual Accountholder? ☑Yes ☐ No | RM Assigned: _Boris Gluzberg_ |
| If No, Entity Accountholder since: _____ | Division: _PCS – SI – RE_ |

**Non-Individual Accountholder Information (per § 10.2 of the PCS/BNYAM KYC EDD Policy):**

| **Trust and Estate Account** | **Organization/Business** | | **ERISA Plan** | |
|---|---|---|---|---|
| ☐ BNY as Fiduciary – Testamentary | ☐ Corporation | ☐ Subchapter 'S' | ☐ Keogh/Profit Sharing | ☐ 401 (k) |
| ☐ BNY as Fiduciary – Irrevocable | ☑ Limited Liability Company | ☐ General Partnership | ☐ Defined Benefit | ☐ ESOP |
| ☐ BNY as Fiduciary – Revocable | ☐ Limited Partnership | ☐ Assumed Name | ☐ Defined Contribution | ☐ Welfare |
| ☐ BNY as Fiduciary – Estate | ☐ Unincorporated Organization | ☐ Sole Proprietorship | ☐ SEP-IRA | ☐ IRA |
| ☐ BNY as Agent – Testamentary | ☐ Guardianship | ☐ Conservatory | ☐ Other | |
| ☐ BNY as Agent – Irrevocable | ☐ Committeeship | ☐ Foundation | | |
| ☐ BNY as Agent – Revocable | ☐ Not For Profit | | | |
| ☐ BNY as Agent – Estate | ☐ Other _____ | | | |
| ☐ Other _____ | | | | |

_Bernard L. Madoff Investment Securities LLC_
Entity Name

_13-1997126_
Taxpayer Identification Number

_885 Third Ave_
Street Address

_18th Floor_
Street Address

_New York      NY      10022_
City           State        Zip

_212 – 230 – 2424_
Telephone

_212 – 486 – 8178_
Fax

_www.MADOFF.com_
Website

Does the Accountholder have other locations outside the US that are located in High Risk Countries? ☐ Yes ☑No   If Yes, please explain

_Dec 4, 2000 / New York STATE_
Date and Place of Incorporation/Establishment

Country of Domicile
☑USA ☐ Other (Specify):

Country of Control
☑USA ☐ Other (Specify):

Is the Accountholder or Parent/Controlling Entity Publicly Traded/Governmental Unit/Central Bank? ☐ Yes ☑No   If Yes, please explain:

Is the Accountholder a customer of an Investment Advisor? ☐ Yes ☑No
If Yes, please explain:

Does the Accountholder have any existing accounts with The Bank of New York, its subsidiaries or affiliates?
☐Yes ☑No – If Yes, please specify

Affiliate or Subsidiary                    Account #

9-30-04

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000002

SECSBF0000002

**The Bank of New York**
## Private Client Services/BNY Asset Management
## Non-Individual Accountholders Know Your Customer Enhanced Due Diligence Form

### Documentary Verification of Identity (per §10.3 of the PCS/BNYAM KYC EDD Policy)

Organization and formation documents, especially government-issued documents that establish the legal status of the entity, the names of the legal owners, the names of individuals authorized to act for the entity and the date and place of formation are used in order to verify the identity of the entity. This documentation may include one or more of the following:

- [ ] Trust agreement
- [ ] Articles of incorporation
- [ ] Government-issued business license, partnership agreement, trust instrument (Describe:_____)
- [ ] U S Internal Revenue Code Sec 501(c)(3) letter (for nonprofit organizations)
- [ ] Audited financial statements
- [ ] Tax returns
- [ ] Published annual report
- [ ] 10-K or other information contained on the U.S. Securities and Exchange Commission Website (http://www.sec.gov/), the websites of various self-regulatory organizations (i e , NASD), or from other governmental sources
- [x] Other documentation known by the Company as an appropriate source to establish the legitimacy of the organization
  (Describe: _Operating Agreement and Articles of Organization_____)

A photocopy of the identifying document(s) noted above must be maintained in the accountholder's permanent KYC file. See Appendix B, of this Policy, for a more complete list of acceptable verifying documentation. Contact Sector Compliance with questions regarding whether a particular document is appropriate for verifying accountholder identifying information.

### Non-Documentary Verification of Identity (per § 10.4 of the PCS/BNYAM KYC EDD Policy)

In certain situations, non-documentary verification must be performed in addition to, or instead of, placing reliance on the documents named above. The following describes the potential sources of non-documentary verification of identity

- [x] Identity Check
- [ ] Regulatory Data Corp
- [x] Experian
- [ ] Lexis-Nexis
- [ ] Internet search results
- [ ] Other _____

Note: In the rare circumstance in which a unit is unable to obtain a copy of the document that verifies accountholder identification, a record must be maintained of the document used to verify the identity of the accountholder. At a minimum, this record must include
- ➢ a description of the document that was relied on, noting the type of document, and identification number contained in the document, the place of issuance and, if any, the date of issuance, and the expiration date
- ➢ a description of the methods and the results of verification performed
- ➢ a description of the resolution of any substantive discrepancy discovered when verifying the identifying information obtained.

**See Policy Section 9.5 for discussion of other methods of verification when documentary verification cannot be performed.**

### Additional Verification for Certain Entity Accountholders (per § 10.5 of the PCS/BNYAM KYC EDD Policy)

Does the risk posed by this new entity accountholder, or of a new account or product/service sought by this entity accountholder, require identifying information in accordance with Policy Sections 9.1-9 4 concerning persons with authority or control over such accounts, products or services -- including signatories -- in order to adequately verify the entity accountholder identity?? [x]Yes  [ ]No – If Yes, list individuals requiring the completion of an Individual Accountholders Know Your Customer Enhanced Due Diligence Form:

| Name | Corporate Title | |
|---|---|---|
| _Frank DiPascali_ | _Portfolio Analyst_ | KYC Enhanced Due Diligence Form Attached [x]Yes  [ ]No |
| _Bernard Madoff_ | _President_ | KYC Enhanced Due Diligence Form Attached [x]Yes  [ ]No |
| | | KYC Enhanced Due Diligence Form Attached [ ]Yes  [ ]No |

It is not necessary to perform the accountholder identifying steps noted in Sections 9.1-9.4, above, for sub-accountholders of attorney escrow accounts. Appropriate due diligence on the law firm – including adequate data regarding the purpose of the escrow account and the anticipated activity in the account – will be considered sufficient. However, monitoring of account activity as discussed in Section 17.0 must

9-30-04

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000003

SECSBF0000003

## The Bank of New York
### Private Client Services/BNY Asset Management
### Non-Individual Accountholders Know Your Customer Enhanced Due Diligence Form

be particularly vigorous to be certain that the escrow account activity appears consistent with expected activity.

**OFAC and _Do Not Do Business With_ List Checks (per § 10.14 of the PCS/BNYAM KYC EDD Policy)**

| OFAC Check Performed ☑Yes ☐No | DNDBW Check Performed ☑Yes ☐No |
|---|---|
| By _Boris Gluzberg_                    _BG_ <br> Name                    Initials | By _Boris Gluzberg_                    _BG_ <br> Name                    Initials |

**High Risk Accountholders (per § 5.0 of the PCS/BNYAM KYC EDD Policy)**

Is this Accountholder "High Risk" for money laundering? ☑Yes   ☐No – If Yes, explain why the Accountholder is considered "high risk":

_This is a broker/dealer_

If this is a new accountholder, has this Accountholder Profile been submitted for AMLOC review? ☐Yes   ☑No – If Yes, when: _____

**High Profile Accountholders (per § 6.0 of the PCS/BNYAM KYC EDD Policy)**

Is this Accountholder considered "High Profile"? ☐Yes   ☑No – If Yes, explain why this Accountholder is considered "High Profile":

_____

Do we want to do business with this Accountholder? ☑Yes   ☐No – If Yes, explain why we want to do business with this Accountholder

_Bernard Madoff is 100% owner of this entity. Bernard has been a PCS client since 1985, and he has been a steady solid citizen._

_If we want to do business with this Accountholder, Business Head approval must be obtained (see last page of this form)_

**Senior Foreign Political Figures ("SFPF") (per § 7.0 of the PCS/BNYAM KYC EDD Policy)**

Is this Accountholder considered a SFPF? ☐Yes   ☑No

If Yes, has the approval memo (per § 7.4 of the PCS/BNYAM KYC EDD Policy) been prepared and approved by all required signators (i.e., Division Head, Business Head and Sector Head)? ☐Yes   ☐No

Has AMLOC approval been obtained for doing business with this SFPF? ☐Yes   ☐No – If Yes, when:    _N/A_

Has the SFPF approval memo been approved by the Chairman and returned to the permanent KYC file for the accountholder? ☐Yes   ☐No

**Meeting with Principal/Senior Officer of New Accountholder (per § 10.9 of the PCS/BNYAM KYC EDD Policy)**

Does the Accountholder have a physical location? ☑Yes   ☐No  If no, please explain why. _____

If Yes, please answer the following questions:

Did you visit the physical location of the accountholder? ? ☑Yes   ☐No  If no, please explain why: _____

Was there an _in person_ meeting with a Principal or Senior Officer? ☑Yes   ☐No  If no, please explain why _____

What was the date of the meeting?    _3-2-05_

Who attended the meeting?    _Boris Gluzberg + Eddie Ahmed_

9-30-04

- 3 -

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

BNYM00000004

SECSBF0000004

# Private Client Services/BNY Asset Management
## Non-Individual Accountholders Know Your Customer Enhanced Due Diligence Form

| | | | |
|---|---|---|---|
| As of what date was the CRM call report prepared? | 3-1-05 | By whom? | Boris Glusberg |

**Primary Reference (per § 10.10 of the PCS/BNYAM KYC EDD Policy) for new entity accountholders**

| | |
|---|---|
| Reference – Firm Name | Reference – Contact Name |
| Reference – Telephone | Reference – Fax or Email |

**Source of Wealth/Business Operating Details (per § 10.11 of the PCS/BNYAM KYC EDD Policy)**

The source of wealth/business operating details, for an entity covered under this Policy should contain a description of the sources(s) of the entity's original and subsequent, significant capital/principal additions and detailed information regarding the entity's line(s) of business, its operations and the activities that support its financial situation  If the entity is a PIC or trust, the purpose of the fiduciary vehicle, and its expected use, must be understood and documented in this source of wealth section.  Source of wealth/business operating details should also address, to the extent possible, the following points

➢ How the entity was introduced to the Company (i e., referral source, BNY's reputation, etc.);
➢ Arrangements with prior/other financial institutions and advisors;
➢ Reputation of the entity, if applicable;
➢ How/from whom source of wealth/business operating details were obtained

Information regarding the entity's source of wealth/business operating details must be documented in the permanent KYC file prior to the opening of the first account or the processing of the first transaction for the entity  It should be corroborated, over time, by an independent source, through office/company/factory visits, or both

Information regarding the entity's source of wealth/business operating details should be corroborated over time, through visits with principals or to business sites, through newspaper and magazine articles, marketing brochures, tax returns and annual financial statements, third party information, public databases or other reliable sources. Call reports should be utilized to record client meetings or other discussions that serve to substantiate or add to the source of wealth/business operating details commentary

Bernard L. Madoff founded the Bernard L Madoff Investment Securities LLC in 1960, soon after leaving law school. Bernard has been a major figure in NASD, as well as being one of the five broker/dealers most closely involved in developing the NASDAQ. The firm grew aggressively under Bernards leadership, and today they have 250 employees, a worldwide presence and more than $500 MM in cap. Fund

**Financial Summary (per § 10.11 of the PCS/BNYAM KYC EDD Policy) Complete to the extent possible**

| CATEGORIES* | ON-SHORE (USD 000'S) | OFF-SHORE (USD 000'S) | TOTAL (USD 000'S) |
|---|---|---|---|
| TOTAL ASSETS | 500 MM | | |
| TOTAL LIABILITIES | — | | |
| NET WORTH | 500 MM | | |
| CURRENT INCOME | 100 MM | | |
| * OR ATTACH A CURRENT PERSONAL FINANCIAL STATEMENT | | | |

- 4 -

9-30-04

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000005

SECSBF0000005

**Private Client Services/BNY Asset Management**
**Non-Individual Accountholders Know Your Customer Enhanced Due Diligence Form**

Related Accountholders (Individuals and Entities) (per § 10.12 of the PCS/BNYAM KYC EDD Policy)

| NAME | DIVISION/AFFILIATE NAME | ACCOUNT NUMBER | ACCOUNT TYPE |
|------|------------------------|----------------|--------------|
| Bernard Madoff | PCS - SI - RL | 1200 2 02690 | Balance checking |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Source of Initial Funding (per § 10.13 of the PCS/BNYAM KYC EDD Policy)

| $100 MM | wire | JP morgan chase |
|---------|------|-----------------|
| Amount | Method of Transmittal | Source of Funds |

How did funds and/or securities become available?

☐ Sale of Assets    ☐ Maturity of Assets    ☑ Transfer of Assets

☐ Loan Proceeds    ☐ Liquidation of Investment    ☐ Working Capital

☐ Other _____
Explain

Review and Approval of New Relationships (per § 9.13 of the PCS/BNYAM KYC EDD Policy)

Are you reasonably certain that you have established to your satisfaction the true identity of this accountholder (joint accountholder)?
☐ Yes    ☐ No  If no, See PCS/BNYAM KYC EDD Policy 9.4)

_____                     3-2-05
Relationship Manager                                 Date

Approved

_____                     3-2-05
Division Manager or designee                         Date


_____                     _____
Business Head (High Profile Relationships)           Date

9-30-04

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

BNYM00000006

SECSBF0000006

Form **W-9**
(Rev. October 2004)
Department of the Treasury
Internal Revenue Service

### Request for Taxpayer
### Identification Number and Certification

**Give form to the requester. Do not send it to the IRS.**

Print or type
See Specific Instructions on page 2.

Name (as reported on your income tax return)

Business name, if different from above
*BERNARD L MADOFF INVESTMENT SECURITIES LLC*

Check appropriate box
☐ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ *LLC*    ☐ Exempt from backup withholding

Address (number, street, and apt or suite no.)
*885 THIRD AVE*

Requester's name and address (optional)

City, state, and ZIP code
*NEW YORK NEW YORK 10022*

List account number(s) here (optional)

**Part I** | **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box The TIN provided must match the name given on Line 1 to avoid backup withholding For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN) If you do not have a number, see How to get a TIN on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter

Social security number

**or**

Employer identification number
*13 | 1 | 9 | 9 | 7 | 1 | 2 | 6*

**Part II** | **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien)

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here** | Signature of U.S. person ▶ | Date ▶ *3/2/05*

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1 Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3 Claim exemption from backup withholding if you are a U.S. exempt payee.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes you are considered a person if you are:

● an individual who is a citizen or resident of the United States,

● a partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● any estate (other than a foreign estate) or trust. See Regulation section 301.7701-6(a) for additional information.

**Foreign person.** If you are a foreign person, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions

Cat. No. 10231X    Form **W-9** (Rev 10-2004)

Confidential Treatment Requested by The Bank of New York Mellon Corp.    BNYM00000007

SECSBF0000007

4. The type and amount of income that qualifies for the exemption from tax

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments (after December 31, 2002). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 4 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your social security card on the "Name" line You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line  Check the appropriate box for your filing status (sole proprietor, corporation, etc.), then check the box for "Other" and enter "LLC" in the space provided

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note.** You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).

### Exempt From Backup Withholding

If you are exempt, enter your name as described above and check the appropriate box for your status, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding

**Exempt payees.** Backup withholding is not required on any payments made to the following payees

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities.

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities

Other payees that may be exempt from backup withholding include

6. A corporation,

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000008

SECSBF0000008

7. A foreign central bank of issue

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940.

12 A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt recipients listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt recipients except for 9 |
| Broker transactions | Exempt recipients 1 through 13 Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt recipients 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt recipients 1 through 7 [2] |

[1]See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding medical and health care payments, attorneys' fees, and payments for services paid by a Federal executive agency

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN

If you are a single-owner LLC that is disregarded as an entity separate from its owner (see *Limited liability company (LLC)* on page 2), enter your SSN (or EIN, if you have one). If the LLC is a corporation, partnership, etc., enter the entity's EIN

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form on-line at *www.socialsecurity.gov/online/ss-5.pdf*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses/* and clicking on Employer ID Numbers under Related Topics. You can get Forms W-7 and SS-4 from the IRS by visiting *www.irs.gov* or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8*

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

BNYM00000009

SECSBF0000009

Form W-9 (Rev. 10-2004) 

## Part II. Certification

To establish to the withholding agent that you are a U.S person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see *Exempt From Backup Withholding* on page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5.** Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions. You must give your correct TIN, but you do not have to sign the certification

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner |
| 5. Sole proprietorship or single-owner LLC | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship or single-owner LLC | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8 Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9 Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10 Partnership or multi-member LLC | The partnership |
| 11 A broker or registered nominee | The broker or nominee |
| 12 Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished

[2] Circle the minor's name and furnish the minor's SSN

[3] You must show your individual name and you may also enter your business or "DBA" name on the second name line. You may use either your SSN or EIN (if you have one). If you are a sole proprietor, IRS encourages you to use your SSN

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA, or Archer MSA or HSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, or to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism. The authority to disclose information to combat terrorism expired on December 31, 2003. Legislation is pending that would reinstate this authority

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 28% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000010

SECSBF0000010

**BNY ASSET MANAGEMENT**
THE BANK OF NEW YORK

## *Account Opening Data Form*

### I. Account Information:

**A. Account Title:** Bernard L. Madoff Investment Securities LLC

**B. Name and Date of Trust:**

**C. Tax Identification #:** 13 - 199 712 6

**D. Name Associated with Tax Identification #:** Bernard L. Madoff Investment Securities LLC

**E. Full Name & Address of Client:**
Bernard L. Madoff Investment Securities LLC
885 Third Ave
New York, NY 10022

**F. Client's fiscal year-end:** October

**G. Name & Title of Primary Contact:** Frank Dipascali / Portfolio Analyst

**H. Name & Title of Person signing Investment Management Agreement:** Bernard Madoff / President

**I. Accounts Chosen Reporting Benchmark:**

**J. Estimated Size of Account:** $ 100 MM

**K. Method of Funding: (Cash, Securities, etc.)** Cash

**L. Expected Funding Date:** 3-7-05

**M. Proxy Voting (who will vote):**

☑ BNY Asset Management

☐ Client

### II. Custodial Information:

**A. Will The Bank of New York act as custodian:**

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

**BNY ASSET MANAGEMENT**
THE BANK OF NEW YORK

☑ Yes

☐ No-Please supply the name & address of your custodian bank below and see questions B & C.

_____

**B. Please supply us with the name & phone number of our contact at your custodian bank:**

_____

**C. Is your custodian also your trustee:**

☐ Yes

☐ No

## III. Account Type:

A. Please fill in the following information:

<u>Tax Status:</u>

☑ Taxable

☐ Non-Taxable

<u>Discretion:</u>

☑ Discretionary

☐ Non-Discretionary

<u>Domicile:</u>

☑ US

☐ Non-US

<u>Vehicle:</u>

☑ Separate Account

☐ Mutual Fund

☐ Collective Trust

<u>Segment:</u>

☑ Corporate

☐ Taft-Hartley

☐ Public

☐ Insurance

☐ Endowments & Foundations

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000012

SECSBF0000012

**BNY ASSET MANAGEMENT**
THE BANK OF NEW YORK

☐ Sub-Advisory

☐ Nuclear Decommissioning

☐ Not-For-Profit

☐ Other _____

      <u>Sub-Category:</u>

      ☐ Defined Contribution

      ☐ Defined Benefit

      ☐ Health Plan

      ☐ 401k Plan

      ☐ Other _____

## V. Brokerage Information:

Please provide us with the following brokerage information:

☑ Brokers selected by BNY

☐ Outside brokerage selected by client

If applicable please supply the following brokerage information:

1. Name of brokerage firm: _____

2. Name of contact person (trader for account): _____

3. Phone #: _____ Fax #: _____

4. Account # at brokerage firm: _____

5. Negotiated rate of commissions (if none, please state none): _____

6. Minimum ticket charge (if none, state none): _____

## VI: Contact Information:

A. Please provide us with the name and address of person (s) to whom statements and confirms should be sent:

FRANK DiPascali
Bernard/Madoff Investment Securities LLC
885 Third Ave, 18TH Fl
New York NY 10022

B. Please provide us with the name and address to whom fee invoices should be sent:

FRANK DiPascali
Bernard L. Madoff Investment Securities LLC
885 Third Ave, 18TH Fl
New York, NY 10022.

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

**BNY ASSET MANAGEMENT**
THE  BANK  OF  NEW  YORK

C. Please provide us with the name and addresses of person (s) to whom quarterly
investment reports should be sent:

Frank DiPascal:

Bernard L, Madoff Investment Securities LLC

885 Third Ave

NY NY 10022

D. If applicable, name and address of person (s) to whom proxy voting records should be
sent if BNY votes:

N/A

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

**BNYM00000014**

SECSBF0000014

*State of New York* } *ss:*
*Department of State* }

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

*Witness my hand and seal of the Department of State on*  DEC 0 6 2000



*Special Deputy Secretary of State*

DOS-1266 (5/96)

Confidential Treatment Requested by The Bank of New York Mellon Corp.

F001204000 637

ARTICLES OF ORGANIZATION

OF

BERNARD L. MADOFF INVESTMENT SECURITIES LLC

Filer   Shana Madoff Skoller
885 Third Avenue, 18th floor
New York, NY 10022

ICC
STATE OF NEW YORK
DEPARTMENT OF STATE
FILED DEC 0 4 2000
TAX $
BY:

4

001204000663

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

BNYM00000016

SECSBF0000016

New York State
Department of State
Division of Corporations. State Records
and Uniform Commercial Code
Albany, NY 12231

$001204000637$

*(This form must be printed or typed in black ink)*

# ARTICLES OF ORGANIZATION
# OF

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

*(Insert company name)*

Under Section 203 of the Limited Liability Company Law

**FIRST:** The name of the limited liability company is: __Bernard L. Madoff__
__Investment Securities LLC__

**SECOND:** The county within this state in which the office of the limited liability company is to be located is: __New York County__

**THIRD:** (optional) The latest date on which the limited liability company is to dissolve is:

_____
(month/day/year)

**FOURTH:** The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is:
Bernard L. Madoff Investment Securities LLC
__885 Third Avenue, 18th floor__
__Shana Madoff Skoller, Esq.__
__New York, NY 10022__

**FIFTH:** (optional) The name and street address within this state of the registered agent of the limited liability company upon whom and at which process against the limited liability company may be served is:

_____
_____
_____

**SIXTH:** (optional) The future effective date of the Articles of Organization, which does not exceed 60 days from the date of filing, is: __1/1/01__
(month/day/year)

DOS-1336 (01/00)

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000017

SECSBF0000017

**SEVENTH:** (optional) If all or specified members are to be liable in their capacity as members for all or specified debts, obligations or liabilities of the limited liability company as authorized by Section 609 of the Limited Liability Company Law, an affirmative statement must be made. A statement of such effect is made as follows:

_____

_____

_____    **Bernard L. Madoff, Organizer**
(signature)                                (name and capacity of signer)

## ARTICLES OF ORGANIZATION
### OF
**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

Under Section 203 of the Limited Liability Company Law

Filed by.

**Shana Madoff Skoller, Esq.**
(Name)

**885 Third Avenue, 18th floor**
(Mailing address)

**New York, NY 10022**
(City, State and ZIP code)

NOTE· • This form was prepared by the New York State Department of State for articles of organization  It does not contain all optional provisions under the law  You are not required to use this form. You may draft your own form or use forms available at legal supply stores. The Department of State recommends that legal documents be prepared under the guidance of an attorney.  The certificate must be submitted with a $200 filing fee made payable to the Department of State

• This form may not be accompanied by any riders or attachments except a certificate evidencing reservation of name

$\mathcal{2}$

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000018

SECSBF0000018

# *State of New York*
# 𝔅anking 𝔇epartment

I, Sara A  Kelsey, Deputy Superintendent of Banks of the State of New York, hereby approve, pursuant to the New York Limited Liability Company Law Section 204(f), as amended, the use of the word or a derivative of the word "investment" in the name of **BERNARD L. MADOFF INVESTMENT SECURITIES LLC.**

*Witness, my hand and official seal of the Banking Department at the City of New York, this 27th day of November in the Year two thousand.*

*Deputy Superintendent of Banks*

Confidential Treatment Requested by The Bank of New York Mellon Corp.

# AMENDED AND RESTATED
# OPERATING AGREEMENT

## OF

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

On January 8, 2001 the Operating Agreement of Bernard L. Madoff Investment Securities LLC (the "**Company**") was entered into by Bernard L. Madoff, as the sole member (the "**Member**") of the Company. On this 15th day of March, 2004, the Operating Agreement of the Company has been amended and restated with the approval of the sole Member of the Company to read as follows.

1.    **Name.** The name of the limited liability company formed hereby is:

Bernard L. Madoff Investment Securities LLC

2.    **Term.** The term of the Company shall continue until dissolved in accordance with the Limited Liability Company Law of the State of New York, as amended from time to time (the "**LLCL**").

3.    **Purpose.** The Company is formed to receive as at January 1, 2001, all of the assets, subject to liabilities, associated with the business being conducted by Bernard L. Madoff, a sole proprietorship (the "Business") and to thereafter conduct such Business, and any further extension thereof, in such manner and form as determined by the Member in his sole discretion, to the extent permitted by the LLCL or by the laws of any jurisdiction in which the Company may do business. The Company shall also have the right if it so elects, upon receipt of required approval by the Internal Revenue Service, to serve as a non-passive nonbank trustee or custodian ("Nonbank Trustee") for individual retirement arrangements established under Section 408 of the Internal Revenue Code of 1986, as amended ("Code"). The Company shall have the authority to do all things necessary, convenient or incidental to the accomplishment of its purpose and operate its business as described in this paragraph III.

4.    **Member.** The name and business address of the Member is:

Bernard L. Madoff
855 Third Avenue
New York, New York 10022

5.    **Powers.** (a) The Member acknowledges and agrees that the business and affairs of the Company shall be managed by the Member until the earliest of his death, disability or resignation. In the event of the Member's death, disability or resignation, the estate of the Member, the conservator of the member and/or the Member shall amend the Company's Articles of

BLMISLLC

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

Organization so as to provide for the management of Company by one or more managers (the "Manager"), which Manager(s) shall be designated by the Member or if applicable, his executor or conservator.

(b)     The Member and each Manager, if any, shall have the power and authority to do any and all acts necessary or convenient to or in furtherance of the purposes described herein. Third parties dealing with the Company are entitled to rely conclusively upon the authority of the Member/Manager(s).    Without limitation upon the generality of the foregoing, the Member/Manager(s) shall have the full and complete responsibility for managing the day-to-day business and affairs of the Company and shall make all decisions affecting the day-to-day business of the Company. In such capacity, the Member and each Manager, if any, signing singly and acting alone shall have the authority to execute agreements and expend funds on behalf of the Company.

(c)     In performing his duties, the Member/Manager(s) shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, furnished to him by agents, employees, accountants or other professional advisors of the Company.

(d)     The Member/Manager(s) is authorized to manage the affairs of the Company in conjunction with the Member's/Manager's other business interests and activities

(e)     The Member may engage in any other business ventures or activities which may be competitive with or in direct competition with the business of the Company.

(f)     The Member/Managers have the right to delegate all or any part of his duties hereunder to one or more individuals.  Such individuals shall solely have the rights specifically delegated to him by the Member/Manager.

6.     **Fiduciary Conduct.**  In the event the Company acts as a Nonbank Trustee, the Company and is Member, Managers and persons delegated with authority in connection with such activity ("Authorized Person") shall in all events comply with the following:

(a)     The Member, Managers and Authorized Persons will be responsible for the proper exercise of fiduciary powers; including the determination of policies, the investment and disposition of property held in a fiduciary capacity, and the direction and review of the actions of all employees utilized by the Applicant in the exercise of its fiduciary powers.  In discharging this responsibility, the Member and/or managers may assign to designated employees, by action duly recorded, the administration of such of the Company's fiduciary powers as may be proper to assign.

(b)     A written record will be made of the acceptance and of the relinquishment or closing out of all fiduciary accounts, and of the assets held for each account.

(c)     If the Company has the authority or the responsibility to render any investment advice with regard to the assets held in or for each fiduciary account, the advisability of retaining or disposing of the assets will be determined at least once during each period of 12 months.

BLMISLLC

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

BNYM00000021

SECSBF0000021

(d)    All employees taking part in the performance of fiduciary duties will be adequately bonded; and, the bonding will not be in contravention of section 412(d) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1112(d)).

(e)    Legal counsel will be employed or retained and will be readily available to pass upon fiduciary matters and provide advice.

(f)    In order to segregate the performance of its fiduciary duties from other business activities, the Company will maintain a separate trust and custodial division under the immediate supervision of an individual designated for that purpose. The trust and custodial division may utilize the personnel and facilities of other divisions of the Company and other divisions of the Company may utilize the personnel and facilities of the trust and custodial division, as long as the separate identity of the trust and custodial division is preserved.

(g)    The Company will determine the value of the assets held by it in trust at least once in each calendar year and no more than 18 months after the preceding valuation. The assets will be valued at their fair market value, except that the assets of an employee pension benefit plan to which section 103(b)(3)(A) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1023(b)(3)(A)) applies will be considered to have the value stated in the most recent annual report of the plan.

(h)    No fiduciary account will be accepted by the Company unless the Company's net worth (determined as of the end of the most recent taxable year) exceeds the greater of $100,000, or the sum of (i) four percent of the value of all of the assets it holds in fiduciary accounts for which it renders investment advice or make investment decisions, or directly or indirectly controls the investment activity (determined as of the most recent valuation date) and (ii) two percent of the value of all of the assets it holds in fiduciary accounts for which it does not render investment advice nor make investment decisions, and does not directly or indirectly controls the investment activity (determined as of the most recent valuation date).

(i)    As long as the Company is a member of the Securities Investor Protection Corporation (SPIC) created under the Securities Investor Act of 1970 (SIPA)(15 U.S.C. sections 78aaa et seq, as amended), the amount of net worth it must exceed before it may accept new accounts is reduced by two percent of the value of assets (determined on an account-by-account basis) held for the benefit of customers (as defined in 15 U.S.C. section s 78fff-2(e)(4)) in fiduciary accounts by the nonbank trustee to the extent of the portion of each account that does not exceed the dollar limit on advances described in 15 U.S.C. sections 78fff-3(a), as amended that would apply to the assets in that account in the event of a liquidation proceeding under the SIPA.

(j)    (i) The Company will take whatever lawful steps are necessary (including the relinquishment of fiduciary accounts) to insure that its net worth (determined as of the close of each taxable year) exceeds the greater of $50,000, or the sum of (A) two percent of the value of all of the assets it holds in fiduciary accounts for which it renders investment advice or make investment

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000022

SECSBF0000022

decisions, or directly or indirectly controls the investment activity (determined as of the most recent valuation date) and (B) one percent of the value of all of the assets it holds in fiduciary accounts for which it does not render investment advice nor make investment decisions, and does not directly or indirectly controls the investment activity (determined as of the most recent valuation date).

(ii)   As long as the Company is a member of the Securities Investor Protection Corporation (SPIC) created under the Securities Investor Act of 1970 (SIPA)(15 U.S.C. sections 78aaa et seq, as amended), the amount of net worth it must exceed in order to maintain its accounts is reduced by one percent of the value of assets (determined on an account-by-account basis) held for the benefit of customers (as defined in 15 U.S.C. section s 78fff-2(e)(4)) in fiduciary accounts by the nonbank trustee to the extent of the portion of each account that does not exceed the dollar limit on advances described in 15 U.S.C. sections 78fff-3(a), as amended that would apply to the assets in that account in the event of a liquidation proceeding under the SIPA

(k)   At least once during each period of 12 months, the Company will cause detailed audits of the fiduciary books and records to be made by a qualified public accountant. At that time, the Company will ascertain whether the fiduciary accounts have been administered in accordance with law, these rules of fiduciary conduct set forth in Section 6 of this Operating Agreement, and sound fiduciary principles. The audits shall be conducted in accordance with generally accepted auditing standards, and shall involve whatever tests of the fiduciary books and records of Company as are considered necessary by the qualified public accountant.

(l)   A report of the audits and examinations together with the action taken thereon, will be noted in the Company's fiduciary records

(m)   Funds held in a fiduciary capacity awaiting investment or distribution will not be held uninvested or undistributed any longer than is reasonable for the proper management of the account.

(n)   No account will be pooled in a common investment fund. The investments of each account will not be commingled with any other property (except mutual funds).

(o)   Assets of accounts requiring safekeeping will be deposited in an adequate vault and a permanent record will be kept of assets deposited in or withdrawn from the vault.

(p)   The Company must keep it fiduciary records separate and distinct from other records. All fiduciary records must be so kept and retained for as long as the contents thereof may become material in the administration of any internal revenue law. The fiduciary records must contain full information relative to each account.

(q)   The Company must keep an adequate record of all pending litigation to which it is a party in connection with the exercise of its fiduciary powers.

BLMISLLCAMENDED&RESTATEDOA.DOC

- 4 -

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000023

SECSBF0000023

(r)    For purposes of this Section 6 of this Operating Agreement, the following terms shall have the definitions ascribed to each below:

(i)    The term "account" or "fiduciary account" means a medical savings account established under section 220 of the Internal Revenue Code, a health savings account described in section 223, a trust described in section 401(a) (including a custodial account described in section 401(f), a custodial account described in section 403(b)(7), an individual retirement account (IRA) described in section 408 (including an account established by employers and certain association of employees described in section 408(c), a custodial account described in section 408(h), a simplified employee pension plan described in section 408(k), a simplified retirement account described in section 408(p), and a deemed IRA under a qualified employer plan described in section 408(q)), a Roth IRA described in section 408A, a Coverdell education savings accounts described in section 530 (including a custodial account described in section 530(g), and a custodial account of an eligible deferred compensation plan described in section 457(b).

(ii)    The term "plan administrator" means an administrator as defined in Treasury regulation section 1.414(g)-1.

(iii)    The term "common investment fund" means a trust that satisfies the following requirements:

(1)    The trust consists of all or part of the assets of several accounts that have been established with the Company, and

(2)    The trust is described in section 401(a) of the Code and is exempt from tax under section 501(a) of the Code, or is a trust that is created for the purpose of providing a satisfactory diversification of investments or reduction of administrative expenses for the participating accounts and that satisfies the requirements of section 408(c) of the Code.

(iv)    The term "fiduciary records" means all matters which are written, transcribed, recorded, received or otherwise come into the possession of the Company and are necessary to preserve information concerning the acts and events relevant to the fiduciary activities of the Company.

(v)    The term "qualified public accountant" means a qualified public accountant, as defined in section 103(a)(3)(D) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1023(a)(3)(D), who is independent of the Company.

(vi)    The term "net worth" means the amount of the Company's assets less the amount of its liabilities, as determined in accordance with generally accepted accounting principles.

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000024

SECSBF0000024

7.    **Capital Contributions.** (a) As at January 1, 2001, the Member shall be credited with a capital contribution in an amount equal to the fair market value of the assets, subject to liabilities, comprising the Business and shall acquire his interest in the Company.

(b)    A capital account ("**Capital Account**") shall be established for the Member and the balance therein shall equal the capital contribution made by the Member pursuant to Section 6(a) above, plus any allocations of Profits made to the Member pursuant to Section 8 below minus all cash and the value of assets distributed to the Member (net of any liabilities actually assumed by the Member and liabilities to which such distributed property is subject) and minus any allocation of Losses made to the Member pursuant to Section 9 below.

(c)    A person who is substituted as a Member shall be deemed to have made the capital contribution attributable to the interest in the Company he is acquiring and shall succeed to the Capital Account of his transferor to the extent of such interest.

8.    **Additional Contributions; Loans; Return of Capital.** (a) The Member is not required to make any additional capital contribution or loans to, or entitled to receive any return of capital from, the Company.

(b)    Member may lend funds to the Company. Any loan made by a Member shall be upon such terms and conditions as the Member/Manager(s) shall determine. In the event a Member makes a loan pursuant hereto, except as may be otherwise be agreed by the Member making the loan, all principal and interest payments that have become due and payable with respect to such loan shall be made prior to any distributions based on membership interests.

9.    **Allocation of Profits and Losses.** The aggregate profits and losses of the Company shall be allocated to the Member.

10.    **Distributions.** Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member/Manager(s).

11.    **Liability of Member.** The Member shall have no liability for the obligations or liabilities of the Company.

12.    **Exculpation and Indemnification of Member and Manager(s).** Neither the Member nor any Manager shall be liable for any acts or omissions, except acts or omissions based on his fraud, bad faith or willful misconduct. Furthermore, neither the Member nor any Manager shall be liable for any debts, obligations or liabilities of the Company or to each other, whether arising in tort, contract, or otherwise, solely by reason of serving in such a capacity or participating (as an employee, consultant, contractor or otherwise) in the conduct of the business of the Company. The Company shall indemnify the Member and each Manager to the fullest extent permitted by Section 420 of the LLCL, as amended, modified or supplemented from time to time, or any successor section thereto.

BLMISLLCAMENDED&RESTATEDOA.DOC

- 6 -

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000025

SECSBF0000025

13.  **Formation.** The Member hereby acknowledge that Bernard L. Madoff, as organizer, filed the Articles of Organization of the Company on December 4, 2000 in the Office of the Secretary of State of New York, effective January 1, 2001.

14.  **Governing Law.** This Agreement shall be governed by, and construed under, the laws of the State of New York, all rights and remedies being governed by said laws.

15.  **Sole and Absolute Discretion.** All actions which the Member and any Manager may take and all determinations or similar exercises of judgment which the Member and any Manager may make pursuant to this Agreement may be made at the sole and absolute discretion of the Member or Manager, subject to performance by the Member/Manager in accordance with their fiduciary obligations.

16.  **Entire Agreement.** This Agreement sets forth the entire agreement of the Member. This Agreement shall not be modified or amended except in a writing signed by the Member or his successor and assign.

17.  **Third Party Beneficiaries.** Except as provided in Section 11 above, there are no third party beneficiaries of or in this Agreement, or of any of the terms or provisions hereof or of any of the rights, privileges, duties, liabilities or obligations created hereby.

IN WITNESS WHEREOF, the undersigned has duly executed this Amended and Restated Operating Agreement this 14th day of April 2004.

_____
Bernard L. Madoff

BLMISLLCAMENDED&RESTATEDOA DOC                – 7 –

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

# AMENDED AND RESTATED
# OPERATING AGREEMENT

## OF

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

On January 8, 2001 the Operating Agreement of Bernard L. Madoff Investment Securities LLC (the "**Company**") was entered into by Bernard L. Madoff, as the sole member (the "**Member**") of the Company. On this 15th day of March, 2004, the Operating Agreement of the Company has been amended and restated with the approval of the sole Member of the Company to read as follows.

1.  **Name.** The name of the limited liability company formed hereby is:

Bernard L. Madoff Investment Securities LLC

2.  **Term.** The term of the Company shall continue until dissolved in accordance with the Limited Liability Company Law of the State of New York, as amended from time to time (the "**LLCL**").

3.  **Purpose.** The Company is formed to receive as at January 1, 2001, all of the assets, subject to liabilities, associated with the business being conducted by Bernard L. Madoff, a sole proprietorship (the "Business") and to thereafter conduct such Business, and any further extension thereof, in such manner and form as determined by the Member in his sole discretion, to the extent permitted by the LLCL or by the laws of any jurisdiction in which the Company may do business. The Company shall also have the right if it so elects, upon receipt of required approval by the Internal Revenue Service, to serve as a non-passive nonbank trustee or custodian ("Nonbank Trustee") for individual retirement arrangements established under Section 408 of the Internal Revenue Code of 1986, as amended ("Code"). The Company shall have the authority to do all things necessary, convenient or incidental to the accomplishment of its purpose and operate its business as described in this paragraph III.

4.  **Member.** The name and business address of the Member is:

Bernard L. Madoff
855 Third Avenue
New York, New York 10022

5.  **Powers.** (a) The Member acknowledges and agrees that the business and affairs of the Company shall be managed by the Member until the earliest of his death, disability or resignation. In the event of the Member's death, disability or resignation, the estate of the Member, the conservator of the member and/or the Member shall amend the Company's Articles of

BLMISLLC

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000027

SECSBF0000027

Organization so as to provide for the management of Company by one or more managers (the "Manager"), which Manager(s) shall be designated by the Member or if applicable, his executor or conservator.

      (b)     The Member and each Manager, if any, shall have the power and authority to do any and all acts necessary or convenient to or in furtherance of the purposes described herein. Third parties dealing with the Company are entitled to rely conclusively upon the authority of the Member/Manager(s).    Without limitation upon the generality of the foregoing, the Member/Manager(s) shall have the full and complete responsibility for managing the day-to-day business and affairs of the Company and shall make all decisions affecting the day-to-day business of the Company. In such capacity, the Member and each Manager, if any, signing singly and acting alone shall have the authority to execute agreements and expend funds on behalf of the Company.

      (c)     In performing his duties, the Member/Manager(s) shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, furnished to him by agents, employees, accountants or other professional advisors of the Company.

      (d)     The Member/Manager(s) is authorized to manage the affairs of the Company in conjunction with the Member's/Manager's other business interests and activities.

      (e)     The Member may engage in any other business ventures or activities which may be competitive with or in direct competition with the business of the Company.

      (f)     The Member/Managers have the right to delegate all or any part of his duties hereunder to one or more individuals. Such individuals shall solely have the rights specifically delegated to him by the Member/Manager.

    6.    **Fiduciary Conduct.**  In the event the Company acts as a Nonbank Trustee, the Company and is Member, Managers and persons delegated with authority in connection with such activity ("Authorized Person") shall in all events comply with the following:

      (a)     The Member, Managers and Authorized Persons will be responsible for the proper exercise of fiduciary powers; including the determination of policies, the investment and disposition of property held in a fiduciary capacity, and the direction and review of the actions of all employees utilized by the Applicant in the exercise of its fiduciary powers. In discharging this responsibility, the Member and/or managers may assign to designated employees, by action duly recorded, the administration of such of the Company's fiduciary powers as may be proper to assign.

      (b)     A written record will be made of the acceptance and of the relinquishment or closing out of all fiduciary accounts, and of the assets held for each account.

      (c)     If the Company has the authority or the responsibility to render any investment advice with regard to the assets held in or for each fiduciary account, the advisability of retaining or disposing of the assets will be determined at least once during each period of 12 months.

BLMISLLC

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000028

SECSBF0000028

(d)     All employees taking part in the performance of fiduciary duties will be adequately bonded; and, the bonding will not be in contravention of section 412(d) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1112(d)).

(e)     Legal counsel will be employed or retained and will be readily available to pass upon fiduciary matters and provide advice.

(f)     In order to segregate the performance of its fiduciary duties from other business activities, the Company will maintain a separate trust and custodial division under the immediate supervision of an individual designated for that purpose. The trust and custodial division may utilize the personnel and facilities of other divisions of the Company and other divisions of the Company may utilize the personnel and facilities of the trust and custodial division, as long as the separate identity of the trust and custodial division is preserved.

(g)     The Company will determine the value of the assets held by it in trust at least once in each calendar year and no more than 18 months after the preceding valuation. The assets will be valued at their fair market value, except that the assets of an employee pension benefit plan to which section 103(b)(3)(A) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1023(b)(3)(A)) applies will be considered to have the value stated in the most recent annual report of the plan.

(h)     No fiduciary account will be accepted by the Company unless the Company's net worth (determined as of the end of the most recent taxable year) exceeds the greater of $100,000. or the sum of (i) four percent of the value of all of the assets it holds in fiduciary accounts for which it renders investment advice or make investment decisions, or directly or indirectly controls the investment activity (determined as of the most recent valuation date) and (ii) two percent of the value of all of the assets it holds in fiduciary accounts for which it does not render investment advice nor make investment decisions, and does not directly or indirectly controls the investment activity (determined as of the most recent valuation date).

(i)     As long as the Company is a member of the Securities Investor Protection Corporation (SPIC) created under the Securities Investor Act of 1970 (SIPA)(15 U.S.C. sections 78aaa et seq, as amended), the amount of net worth it must exceed before it may accept new accounts is reduced by two percent of the value of assets (determined on an account-by-account basis) held for the benefit of customers (as defined in 15 U.S.C. section s 78fff-2(e)(4)) in fiduciary accounts by the nonbank trustee to the extent of the portion of each account that does not exceed the dollar limit on advances described in 15 U.S.C. sections 78fff-3(a), as amended that would apply to the assets in that account in the event of a liquidation proceeding under the SIPA.

(j)     (i) The Company will take whatever lawful steps are necessary (including the relinquishment of fiduciary accounts) to insure that its net worth (determined as of the close of each taxable year) exceeds the greater of $50,000. or the sum of (A) two percent of the value of all of the assets it holds in fiduciary accounts for which it renders investment advice or make investment

Confidential Treatment Requested by The Bank of New
York Mellon Corp.                                                BNYM00000029

                                                                SECSBF0000029

decisions, or directly or indirectly controls the investment activity (determined as of the most recent valuation date) and (B) one percent of the value of all of the assets it holds in fiduciary accounts for which it does not render investment advice nor make investment decisions, and does not directly or indirectly controls the investment activity (determined as of the most recent valuation date).

(ii)   As long as the Company is a member of the Securities Investor Protection Corporation (SPIC) created under the Securities Investor Act of 1970 (SIPA)(15 U.S.C. sections 78aaa et seq, as amended), the amount of net worth it must exceed in order to maintain its accounts is reduced by one percent of the value of assets (determined on an account-by-account basis) held for the benefit of customers (as defined in 15 U.S.C. section s 78fff-2(e)(4)) in fiduciary accounts by the nonbank trustee to the extent of the portion of each account that does not exceed the dollar limit on advances described in 15 U.S.C. sections 78fff-3(a), as amended that would apply to the assets in that account in the event of a liquidation proceeding under the SIPA

(k)   At least once during each period of 12 months, the Company will cause detailed audits of the fiduciary books and records to be made by a qualified public accountant. At that time, the Company will ascertain whether the fiduciary accounts have been administered in accordance with law, these rules of fiduciary conduct set forth in Section 6 of this Operating Agreement, and sound fiduciary principles.  The audits shall be conducted in accordance with generally accepted auditing standards, and shall involve whatever tests of the fiduciary books and records of Company as are considered necessary by the qualified public accountant.

(l)   A report of the audits and examinations together with the action taken thereon, will be noted in the Company's fiduciary records.

(m)   Funds held in a fiduciary capacity awaiting investment or distribution will not be held uninvested or undistributed any longer than is reasonable for the proper management of the account.

(n)   No account will be pooled in a common investment fund. The investments of each account will not be commingled with any other property (except mutual funds).

(o)   Assets of accounts requiring safekeeping will be deposited in an adequate vault and a permanent record will be kept of assets deposited in or withdrawn from the vault.

(p)   The Company must keep it fiduciary records separate and distinct from other records. All fiduciary records must be so kept and retained for as long as the contents thereof may become material in the administration of any internal revenue law. The fiduciary records must contain full information relative to each account.

(q)   The Company must keep an adequate record of all pending litigation to which it is a party in connection with the exercise of its fiduciary powers.

BLMISLLCAMENDED&RESTATEDOA.DOC                       - 4 -

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

(r)      For purposes of this Section 6 of this Operating Agreement, the following terms shall have the definitions ascribed to each below:

(i)      The term "account" or "fiduciary account" means a medical savings account established under section 220 of the Internal Revenue Code, a health savings account described in section 223, a trust described in section 401(a) (including a custodial account described in section 401(f), a custodial account described in section 403(b)(7), an individual retirement account (IRA) described in section 408 (including an account established by employers and certain association of employees described in section 408(c), a custodial account described in section 408(h), a simplified employee pension plan described in section 408(k), a simplified retirement account described in section 408(p), and a deemed IRA under a qualified employer plan described in section 408(q)), a Roth IRA described in section 408A, a Coverdell education savings accounts described in section 530 (including a custodial account described in section 530(g), and a custodial account of an eligible deferred compensation plan described in section 457(b).

(ii)     The term "plan administrator" means an administrator as defined in Treasury regulation section 1.414(g)-1.

(iii)    The term "common investment fund" means a trust that satisfies the following requirements:

(1) The trust consists of all or part of the assets of several accounts that have been established with the Company, and

(2) The trust is described in section 401(a) of the Code and is exempt from tax under section 501(a) of the Code, or is a trust that is created for the purpose of providing a satisfactory diversification of investments or reduction of administrative expenses for the participating accounts and that satisfies the requirements of section 408(c) of the Code.

(iv)     The term "fiduciary records" means all matters which are written, transcribed, recorded, received or otherwise come into the possession of the Company and are necessary to preserve information concerning the acts and events relevant to the fiduciary activities of the Company.

(v)      The term "qualified public accountant" means a qualified public accountant, as defined in section 103(a)(3)(D) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1023(a)(3)(D), who is independent of the Company.

(vi)     The term "net worth" means the amount of the Company's assets less the amount of its liabilities, as determined in accordance with generally accepted accounting principles

BLMISLLCAMENDED&RESTATEDOA DOC

- 5 -

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000031

SECSBF0000031

7.    **Capital Contributions.** (a) As at January 1, 2001, the Member shall be credited with a capital contribution in an amount equal to the fair market value of the assets, subject to liabilities, comprising the Business and shall acquire his interest in the Company.

(b)    A capital account ("**Capital Account**") shall be established for the Member and the balance therein shall equal the capital contribution made by the Member pursuant to Section 6(a) above, plus any allocations of Profits made to the Member pursuant to Section 8 below minus all cash and the value of assets distributed to the Member (net of any liabilities actually assumed by the Member and liabilities to which such distributed property is subject) and minus any allocation of Losses made to the Member pursuant to Section 9 below.

(c)    A person who is substituted as a Member shall be deemed to have made the capital contribution attributable to the interest in the Company he is acquiring and shall succeed to the Capital Account of his transferor to the extent of such interest.

8.    **Additional Contributions; Loans; Return of Capital.** (a) The Member is not required to make any additional capital contribution or loans to, or entitled to receive any return of capital from, the Company.

(b)    Member may lend funds to the Company. Any loan made by a Member shall be upon such terms and conditions as the Member/Manager(s) shall determine. In the event a Member makes a loan pursuant hereto, except as may be otherwise be agreed by the Member making the loan, all principal and interest payments that have become due and payable with respect to such loan shall be made prior to any distributions based on membership interests.

9    **Allocation of Profits and Losses.** The aggregate profits and losses of the Company shall be allocated to the Member.

10.    **Distributions.** Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member/Manager(s).

11.    **Liability of Member.** The Member shall have no liability for the obligations or liabilities of the Company.

12.    **Exculpation and Indemnification of Member and Manager(s).** Neither the Member nor any Manager shall be liable for any acts or omissions, except acts or omissions based on his fraud, bad faith or willful misconduct. Furthermore, neither the Member nor any Manager shall be liable for any debts, obligations or liabilities of the Company or to each other, whether arising in tort, contract, or otherwise, solely by reason of serving in such a capacity or participating (as an employee, consultant, contractor or otherwise) in the conduct of the business of the Company. The Company shall indemnify the Member and each Manager to the fullest extent permitted by Section 420 of the LLCL, as amended, modified or supplemented from time to time, or any successor section thereto.

BLMISLLCAMENDED&RESTATEDOA DOC

- 6 -

Confidential Treatment Requested by The Bank of New York Mellon Corp.

13.    **Formation.** The Member hereby acknowledge that Bernard L. Madoff, as organizer, filed the Articles of Organization of the Company on December 4, 2000 in the Office of the Secretary of State of New York, effective January 1, 2001.

14.    **Governing Law.** This Agreement shall be governed by, and construed under, the laws of the State of New York, all rights and remedies being governed by said laws

15.    **Sole and Absolute Discretion.** All actions which the Member and any Manager may take and all determinations or similar exercises of judgment which the Member and any Manager may make pursuant to this Agreement may be made at the sole and absolute discretion of the Member or Manager, subject to performance by the Member/Manager in accordance with their fiduciary obligations.

16.    **Entire Agreement.** This Agreement sets forth the entire agreement of the Member. This Agreement shall not be modified or amended except in a writing signed by the Member or his successor and assign.

17.    **Third Party Beneficiaries.** Except as provided in Section 11 above, there are no third party beneficiaries of or in this Agreement, or of any of the terms or provisions hereof or of any of the rights, privileges, duties, liabilities or obligations created hereby.

IN WITNESS WHEREOF, the undersigned has duly executed this Amended and Restated Operating Agreement this 14th day of April 2004.

_____
Bernard L. Madoff

BLMISLLCAMENDED&RESTATEDOA.DOC                    - 7 -

Confidential Treatment Requested by The Bank of New York Mellon Corp.

BNYM00000033

SECSBF0000033



**William Ford**
03/04/2005 03:38 PM

To: Theresa A. McMullen/NY/DOMESTIC/BNY@BNY, Frank
Olszewski/NY/DOMESTIC/BNY@BNY, Theresa A.
McMullen/NY/DOMESTIC/BNY@BNY

cc:

Subject:  CAP database - New Account Request Complete - 234239

This memo is generated from the Central Account Processing DB

The following new account number has been assigned on TAS.
You have been identified as an owner / interested party to this account. Please be aware that the ICI-related
TAS fields will not be completed until the next business day.  At that time, please review the account for accuracy and completeness and Email CFS-Central Account Processing if any changes should be made.
Primary Group (050):
Secondary Group (052):
Tax Id Nbr:      131997126
Account Title:      Bernard L. Madoff Inv Sec LLC
Account Type:      62

.... Click here to see the account form --->

*TEK1 — —*
*FOR PROCESSING*
*ASAP — they want*
*to fund the*
*account.*
*PS ...*
*Thank you!*
*MARGO*

*Please feel free to call me with any questions. Thanks, Boris*

**BORIS L. GLUZBERG**
VICE PRESIDENT
PRIVATE CLIENT SERVICE
REAL ESTATE INDUSTRY

**THE BANK OF NEW YORK**          TEL  212-408-7353
1290 AVENUE OF THE AMERICAS         FAX  212-408-7878
NEW YORK, N Y 10104          E-MAIL  bgluzberg@bankofny com

Confidential Treatment Requested by The Bank of New
York Mellon Corp.

BNYM00000034

SECSBF0000034