# ATTACHMENT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>            Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>            Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>            Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>            Plaintiff,<br>v.<br><br>ESTATE OF JAMES M. GOODMAN; and AUDREY GOODMAN, in her capacity as Personal Representative of the Estate of James M. Goodman,<br><br>            Defendants. | Adv. Pro. No. 10-04762 (SMB) |

**EXPERT REPORT OF**
**LISA M. COLLURA, CPA, CFE, CFF**

**Proof of Transfers**
**To the Goodman Defendants**

**July 12, 2019**

## TABLE OF CONTENTS

I. PROFESSIONAL BACKGROUND ................................................................................................2

II. SCOPE OF ASSIGNMENT.........................................................................................................2

III. METHODOLOGY.....................................................................................................................4

IV. SUMMARY OF FINDINGS ......................................................................................................5

V. RECONCILIATION OF CASH TRANSACTIONS FOR THE GOODMAN NTC ACCOUNT ..........................6
    A.    OVERVIEW    6
    B.    BLMIS BANK ACCOUNTS    7
    C.    BLMIS CUSTOMER FILES    7
    D.    DOCUMENTS PRODUCED TO THE TRUSTEE RELATED TO THE GOODMAN NTC ACCOUNT  8
    E.    RESULTS OF RECONCILIATION    9

VI. TRACING CASH WITHDRAWALS FROM THE GOODMAN NTC ACCOUNT...........................................9
    A.    OVERVIEW    9
    B.    RESULTS OF TRACING    10

VII. SIGNATURE AND RIGHT TO MODIFY ................................................................................12

VIII. LIST OF EXHIBITS..............................................................................................................13

## I. PROFESSIONAL BACKGROUND

1.      I am a Senior Managing Director in the Forensic and Litigation Consulting practice of FTI Consulting, Inc. ("FTI"), with 25 years of experience in accounting, auditing and litigation consulting services. I specialize in providing forensic accounting and financial fraud investigative services in connection with internal investigations on behalf of trustees, boards of directors and audit committees of companies.

2.      I have extensive experience in conducting large-scale, fact-finding investigations into fraudulent financial transactions, including tracing significant flows of funds between accounts and entities. During my career at FTI, I have assisted in the investigation of several of the largest fraud cases in the United States.

3.      I am a Certified Public Accountant (CPA), a Certified Fraud Examiner (CFE), a member of the American Institute of Certified Public Accountants (AICPA), and am Certified in Financial Forensics (CFF) by the AICPA. My curriculum vitae, attached as **Exhibit 1** to this report, further describes my professional credentials, experience, and qualifications, including my testimony in the last four years.

## II. SCOPE OF ASSIGNMENT

4.      Bernard L. Madoff Investment Securities LLC ("BLMIS") was an investment firm owned and operated by Bernard L. Madoff ("Madoff"). On December 11, 2008, Madoff was arrested for violating multiple securities laws in connection with running a Ponzi scheme through the investment advisory business of BLMIS (the "IA Business"). On December 15, 2008, Irving H. Picard was appointed as the Trustee for the liquidation of the business of BLMIS, and Baker & Hostetler LLP was retained as his counsel. Shortly thereafter, FTI was retained by Baker & Hostetler LLP, on behalf of the Trustee, to analyze, among other things, the financial affairs of BLMIS and to assist the Trustee with the liquidation of BLMIS. As part of our engagement, FTI was tasked with the exercise of reconstructing the books and records of

2

BLMIS, including all records of the cash transactions related to the BLMIS IA Business customer accounts as far back as the records allow.

5.    This report should be read in conjunction with my Expert Report regarding the Reconciliation of Cash Transactions for All BLMIS Customers and Analysis of IA Business Cash Activity dated January 16, 2019 (the "Collura January 2019 Report").[1]

6.    For this report, I was specifically tasked with performing forensic analyses to determine the following:

- Whether the cash deposit and withdrawal transactions reflected on the customer statements for the Goodman Defendants'[2] customer account at BLMIS that is at issue in this matter (the "Goodman NTC Account"[3]) reconciled to available documentation; and

- Whether, based on my review of available bank records, the cash withdrawals (*i.e.*, transfers from BLMIS) reflected on the customer statements for the Goodman NTC Account during the period between and including December 11, 2006 and December

---

[1] My findings and conclusions rendered in the Collura January 2019 Report, along with the accompanying Exhibits to that report are all incorporated by reference herein. All capitalized terms that are defined in the Collura January 2019 Report shall have the same meaning in this report.

[2] The defendants in this matter are the Estate of James M. Goodman and Audrey Goodman (collectively, the "Goodman Defendants"). The original defendant in this adversary proceeding, James M. Goodman, died during the pendency of this action. The Estate of James M. Goodman and Audrey Goodman, in her capacity as Personal Representative of the Estate of James M. Goodman, were substituted in place of James M. Goodman on September 6, 2012. *See* Stipulation for Substitution of Defendant and Order, dated September 6, 2012, Adv. No. 10-04762 (BRL), ECF No. 21.

[3] BLMIS customer account 1G0320 under the name "NTC & CO. FBO JAMES M GOODMAN xx1278" is at issue in this matter. NTC & Co. (also known under various other names, including, but not limited to, Fiserv, Inc., TIB Holdings, Inc., Fiserv Investment Support Services, First Trust Corporation, Retirement Accounts Inc., Fiserv Trust Company, Trust Industrial Bank, Lincoln Trust Company, and Pensco Trust Company, collectively, "NTC") was the former custodian of an Individual Retirement Account ("IRA") for the benefit of James M. Goodman. Prior to August 2007, the NTC account number for the Goodman NTC Account was xx4571. *See* AMF00186545.

3

11, 2008 (the "Two Year Period") could be traced to bank accounts held by, or for the benefit of, the Goodman Defendants.

7. For purposes of this report, I use the term "reconciled" to indicate when I have matched, agreed and/or determined consistency between cash deposits and withdrawals reflected on BLMIS customer statements to information or data per another source (*e.g.,* amounts on BLMIS bank records, correspondence between the customer and BLMIS regarding incoming deposits and/or requests for withdrawals, or documents produced to the Trustee related to the Goodman NTC Account). For purposes of this report, I use the term "traced" to indicate when I have followed the flow of funds from one bank account (*e.g.,* BLMIS's bank account) to another bank account (*e.g.,* the Goodman Defendants' bank account).

8. This report has been prepared in connection with the above-captioned litigation and is to be used only for the specific purposes of this lawsuit. It is not to be used for any other purpose without the express written consent of FTI. If called upon to testify in this matter, I intend to provide testimony regarding my analyses and conclusions consistent with this report.

9. FTI is being compensated at a rate of $670 per hour for my professional time incurred in performing the work necessary to prepare this report. FTI's fees are not contingent on the conclusions reached in this report or the outcome of the above-captioned litigation.

## III. METHODOLOGY

10. To determine whether the cash transactions reflected on the customer statements for the Goodman NTC Account reconciled to available documentation, I used the results of the forensic analysis of the available BLMIS bank records as described in the Collura January 2019 Report. In addition, I reviewed and analyzed other documents and records maintained at BLMIS, including documents contained in BLMIS customer files, as well as documents produced to the Trustee related to the Goodman NTC Account. Based on my review and analysis of these materials, I identified the cash transactions related to the Goodman NTC Account that reconciled to these documents.

4

11.     Next, to determine whether the cash withdrawals reflected on the customer statements for the Goodman NTC Account during the Two Year Period could be traced to bank accounts held by, or for the benefit of, the Goodman Defendants, I again used the available information from BLMIS bank records. Using these available bank records, I identified the recipients of the transfers from BLMIS. In addition, I reviewed and analyzed documents received by the Trustee in this matter, including NTC quarterly account statements and other documents related to the IRA held by NTC for the benefit of James M. Goodman, to identify information related to the cash withdrawals from the Goodman NTC Account during the Two Year Period.

12.     The documents and data that I considered in connection with this report are listed in **Exhibit 2**. I reserve the right to supplement my report based on any additional documents or information received.

## IV. SUMMARY OF FINDINGS

13.     Based on the forensic analyses performed, as described above and throughout this report, as well as my skills, knowledge, experience, education and training that I applied to the documents and information available to me as of the date of this report, my findings are summarized as follows:

- For my reconciliation analysis, I analyzed the cash transactions in the Goodman NTC Account from February 2000 to December 2008. During this time period, the customer statements for the Goodman NTC Account reflected eight cash deposit and withdrawal transactions. I reconciled 100% of the eight cash transactions reflected on the customer statements for the Goodman NTC Account to available BLMIS bank records, documentation contained in BLMIS customer files, and/or documents produced to the Trustee related to the Goodman NTC Account. In addition, based on my review of documents contained in the customer file maintained at BLMIS for the Goodman NTC Account and documents produced to the Trustee by NTC in this matter, I have not found any instance of the Goodman Defendants communicating to BLMIS or NTC any

5

- disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Goodman NTC Account.

- For my tracing analysis, I analyzed the two cash withdrawals from the Goodman NTC Account during the Two Year Period, totaling $350,000. Based on available bank records from BLMIS, I traced the 12/14/2006 cash withdrawal from the Goodman NTC Account of $175,000 to a bank account held by James M. Goodman, and the 12/12/2007 cash withdrawal from the Goodman NTC Account of $175,000 from BLMIS to NTC. Further, based on my review and analysis of the NTC quarterly account statements and tax forms related to the Goodman NTC Account, the 12/12/2007 cash withdrawal of $175,000 from the Goodman NTC Account was reflected on the NTC quarterly account statement as an inflow from BLMIS and an outflow, on the same day, to the IRA account holder, James M. Goodman, for the tax year 2007 distribution from the IRA.

**V. RECONCILIATION OF CASH TRANSACTIONS FOR THE GOODMAN NTC ACCOUNT**

*A. OVERVIEW*

14. The chronological listings of all cash and principal transactions for every BLMIS customer account compiled by FTI, as described in the Principal Balance Calculation Report, included the cash transactions for the Goodman NTC Account. From February 2000 to December 2008, the customer statements for the Goodman NTC Account reflected eight cash transactions, which consisted of one cash deposit into the Goodman NTC Account totaling $40 and seven cash withdrawals from the Goodman NTC Account totaling $1,175,000. I was tasked with reconciling these eight cash transactions to available BLMIS bank records, documents contained in BLMIS customer files, and/or documents produced to the Trustee related to the Goodman NTC Account. *See* **Exhibit 3** for a list of these cash deposit and withdrawal transactions; *see also* **Exhibit 6** – "Reconciliation and Tracing Results – Goodman NTC Account."

6

B.  *BLMIS BANK ACCOUNTS*

15.    All eight cash transactions reflected on the customer statements for the Goodman NTC Account occurred in the ten-year period for which there were available bank records for the three BLMIS bank accounts described in the Collura January 2019 Report.  I reconciled all eight cash transactions reflected on the customer statements for the Goodman NTC Account during the period December 1998 to December 2008 to available BLMIS bank records, including monthly bank statements and copies of cancelled checks.  The eight cash transactions were reconciled to the BLMIS bank accounts as follows:

- 703 Account – one transaction (deposit via check)
- 509 Account – seven transactions (withdrawals via check)

C.  *BLMIS CUSTOMER FILES*

16.    In addition to reconciling the cash deposit and withdrawal transactions for the Goodman NTC Account to the available BLMIS bank records as described above, I also reviewed customer files from BLMIS's records to identify correspondence related to the cash transactions reflected on the customer statements for the Goodman NTC Account.

17.    Customer files related to customer accounts were maintained in BLMIS's records and were generally organized by BLMIS account number.  These customer files contained documents including, but not limited to, correspondence between the customer and BLMIS employees regarding incoming deposits and/or requests for withdrawals, customer contact information, BLMIS customer agreements, as well as trust and other agreements.

18.    As part of my analysis, I identified the customer file for the Goodman NTC Account within BLMIS's records.  I reviewed the documents contained in this customer file to identify correspondence that related to the cash transactions reflected on the customer statements for the Goodman NTC Account.  I identified letters and/or other correspondence in the customer file that support each of the eight cash transactions in the Goodman NTC Account.  One of these letters, which is a request for a cash withdrawal from the Goodman NTC Account, is attached as **Exhibit 4** and is described further below:

7

- In a letter dated December 7, 2007, NTC requests on behalf of the IRA account holder, James M. Goodman, "Please use this letter as authorization to: Send $175,000.00 (net) from the above listed account [G0320] to the owners address listed below."

19.     Furthermore, based on my review of the documents contained in the customer file for the Goodman NTC Account, I have not found any instance of the Goodman Defendants communicating to BLMIS any disagreement with respect to the accuracy of any transaction reflected on the customer statements for the Goodman NTC Account.

D. *DOCUMENTS PRODUCED TO THE TRUSTEE RELATED TO THE GOODMAN NTC ACCOUNT*

20.     As of the date of this report, the Trustee has received documents from NTC related to the Goodman NTC Account. These documents include, among other things, quarterly account statements related to the IRA held for the benefit of James M. Goodman, which contain information related to the cash transactions in the Goodman NTC Account during the quarter.[4] The NTC documents also included correspondence and tax forms related to the cash transactions in the Goodman NTC Account. In addition, the Trustee received documents from Peter E. Buell, CPA, which included, among other things, NTC quarterly account statements related to the cash transactions in the Goodman NTC Account.

21.     I reconciled one of the eight cash transactions reflected on the customer statements for the Goodman NTC Account to these documents produced to the Trustee in this matter.

---

[4] The documents received by the Trustee related to the Goodman Account included NTC quarterly account statements for the period April 2007 – November 2009. *See* FISERV_GOODMAN-00001 – 39.

8

Furthermore, based on my review of the documents produced to the Trustee by NTC in this matter, I have not found any instance of the Goodman Defendants communicating to NTC any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Goodman NTC Account.

E.  *RESULTS OF RECONCILIATION*

22.     In total, based on my analyses described above, I reconciled 100% of the eight cash transactions reflected on the customer statements for the Goodman NTC Account to available BLMIS bank records, documentation contained in BLMIS customer files, and/or documents produced to the Trustee related to the Goodman NTC Account. **Exhibit 3**, which lists each of the eight cash transactions for the Goodman NTC Account, contains three columns that indicate the results of my reconciliation to each of these sources of information.

23.     In addition, as noted above, I have not found any instance of the Goodman Defendants communicating to BLMIS or NTC any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Goodman NTC Account.

**VI. TRACING CASH WITHDRAWALS FROM THE GOODMAN NTC ACCOUNT**

A.  *OVERVIEW*

24.     The available BLMIS bank records, as described in the Collura January 2019 Report, were also used to determine whether I could trace the funds that left BLMIS's bank accounts to accounts held by, or for the benefit of, the Goodman Defendants. To determine this, I performed a "Receiving Bank" analysis, which traces transfers from BLMIS's bank accounts to bank accounts that received funds from BLMIS.

25.     During the Two Year Period, the customer statements for the Goodman NTC Account reflected two cash withdrawal transactions totaling $350,000. These cash withdrawal transactions were in the form of checks written from the 509 Account.

9

26.     Tracing withdrawals via check requires a legible copy of a cancelled check. The necessary information to trace the amount to a receiving bank account, including endorser, banking institution and bank account number, is typically included on the back of a cancelled check. Oftentimes, however, not all of this information was available on the copy of the cancelled check written from the 509 Account and/or the available information was often illegible. In any event, when possible, I identified and captured all available and legible information from the cancelled checks written from the 509 Account related to withdrawals from the Goodman NTC Account.

27.     In addition, I reviewed and analyzed documents received by the Trustee in this matter, including NTC quarterly account statements and other documents related to the IRA held by NTC for the benefit of James M. Goodman, to identify information related to the cash withdrawals from the Goodman NTC Account during the Two Year Period.

B.  *RESULTS OF TRACING*

28.     **Exhibit 5** summarizes the results of my Receiving Bank analysis and lists the bank accounts I identified by tracing cash withdrawals from BLMIS during the Two Year Period.[5] This exhibit supports that the 12/14/2006 cash withdrawal from the Goodman NTC Account of $175,000 went to a bank account held by James M. Goodman. This exhibit also supports that the 12/12/2007 cash withdrawal from the Goodman NTC Account of $175,000 went from BLMIS to NTC.

---

[5] *See also* **Exhibit 6**.

10

29.     Further, I reviewed and analyzed the NTC quarterly account statement related to the IRA held by NTC for the benefit of the James M. Goodman for the quarter ended 12/31/2007 to identify information about the 12/12/2007 cash withdrawal from the Goodman NTC Account that I traced to NTC.[6]

30.     The NTC quarterly account statements include a section titled "Account Transactions" that lists cash transactions in the IRA during the quarter, including date and transaction description. Based on my review and analysis of the transactions reflected in the "Account Transactions" section of the NTC quarterly account statement related to the Goodman NTC Account, the cash withdrawal from the Goodman NTC Account dated 12/12/2007 of $175,000 first went from BLMIS to NTC, as custodian for the IRA held by James M. Goodman, which is consistent with the results of my tracing analysis described above.

31.     The same NTC quarterly account statement also reflects that on the same day as the inflow of $175,000 from BLMIS in December 2007, there was an outflow of the same amount described as an "IRA Distribution," reflecting a distribution to the IRA account holder, James M. Goodman, for the tax year 2007.[7] This distribution is further supported by James M. Goodman's Form 1099-R for 2007 that reflects $175,000 in distributions to James M. Goodman for the year.[8]

---

[6] *See* **Exhibit 7** for further details regarding my analysis.
[7] As of the date of this report, the records related to bank accounts held by James M. Goodman or the Goodman Defendants necessary for me to identify the bank account(s) that received distributions from NTC were not available for my review.
[8] *See* FISERV_GOODMAN-00040.

11

## VII. SIGNATURE AND RIGHT TO MODIFY

32.	This report and the exhibits contained herein present my findings and the bases thereof. To the extent that any additional information is produced by any party, I reserve the right to incorporate such additional information into my report or to modify my report as necessary.

By:

*Lisa M. Collura*

Lisa M. Collura, CPA, CFE, CFF
July 12, 2019

## VIII. LIST OF EXHIBITS

Exhibit 1:  Curriculum Vitae
Exhibit 2:  Documents Considered
Exhibit 3:  List of All Cash Transactions in the Goodman NTC Account
Exhibit 4:  Letter from BLMIS Customer File for the Goodman NTC Account
Exhibit 5:  Results of Receiving Bank Analysis – Goodman NTC Account (*During the Two Year Period*)
Exhibit 6:  Reconciliation and Tracing Results – Goodman NTC Account
Exhibit 7:  Analysis of the 12/12/2007 Cash Withdrawal from the Goodman NTC Account