**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |

IRVING H. PICARD, Trustee for the Substantively
Consolidated SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L. Madoff,

          Plaintiff,

v.

JACOB M. DICK REV LIVING TRUST DTD 4/6/01,
individually and as tenant in common,

ESTATE OF JACOB M. DICK, as grantor of the Jacob
M. Dick Rev Living Trust Dtd 4/6/01,

ANDREA J. MARKS, as trustee and beneficiary of the
Jacob M. Dick Rev Living Trust Dtd 4/6/01, as
executor and beneficiary of the Estate of Jacob M.
Dick, and as trustee of the Article 8.1 Trust created
under the Jacob M. Dick Rev Living Trust Dtd 4/6/01,

REID DORAL ASHLEY, as beneficiary of the Article
8.1 Trust created under the Jacob M. Dick Rev Living
Trust Dtd 4/6/01,

RIO JOCELYN BREEN, as beneficiary of the Article
8.1 Trust created under the Jacob M. Dick Rev Living
Trust Dtd 4/6/01,

ARTICLE 8.1 TRUST,

SUZANNE BREEN, as beneficiary of the Estate of
Jacob M. Dick and the Jacob M. Dick Rev Living Trust
Dtd 4/6/01, and

DOUGLAS J. STURLINGH, as beneficiary of the
Estate of Jacob M. Dick and the Jacob M. Dick Rev
Living Trust Dtd 4/6/01,

          Defendants.

Adv. Pro. No. 10-04570 (CGM)

## TRUSTEE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT............................................................................................................................2

I.    PRIOR RULINGS IN THIS LIQUIDATION PROPERLY GUIDE THIS COURT
      AND ARE LAW OF THE CASE...................................................................................2

II.   THE TRANSFERS WERE AN INTEREST OF THE DEBTOR IN PROPERTY............4

      A.    Madoff's Sleights of Hand Do Not Create a Genuine Dispute That
            BLMIS, including the IA Business, Was Transferred to the LLC........................4

      B.    The Expert Opinions Are Relevant to Bank Account Ownership Question............8

      C.    The Trustee's Motion Rests On Admissible Evidence .........................................10

      D.    *Avellino* Is Wrong .................................................................................................12

III.  BLMIS MADE EVERY TWO-YEAR TRANSFER WITH ACTUAL
      FRAUDULENT INTENT AND IN FURTHERANCE OF THE FRAUD.....................14

      A.    The Ponzi Presumption is a Valid Indicator of Fraudulent Intent........................14

      B.    The IA Business was a Ponzi Scheme and a Fraud, and the Trustee has
            Demonstrated BLMIS's Fraudulent Intent Under Any Relevant Standard..........16

      C.    Defendants' Conjecture Regarding the T-Bills Does Not Create a Disputed
            Issue of Material Fact............................................................................................18

IV.   THE TRUSTEE IS ENTITLED TO PREJUDGMENT INTEREST...............................19

CONCLUSION.......................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 1031 Tax Grp.*,
  439 B.R. 84 (Bankr. S.D.N.Y. 2010) ....................................................................................19

*In re Adelphia Commc'ns Corp.*,
  No. 02-41729 (REG), 2006 WL 346418 (Bankr. S.D.N.Y. Feb. 6, 2006) ...........................12

*In re Enron Creditors Recovery Corp.*,
  376 B.R. 442 (Bankr. S.D.N.Y. 2007) .................................................................................12

*Harkabi v. SanDisk Corp.*,
  No. 08 Civ. 8203(WHP), 2012 WL 2574717 (S.D.N.Y. June 7, 2012) ...................................8

*In re Montagne*,
  Adv. Pro. No. 08-1024, 2010 WL 271347 (Bankr. S.D.N.Y. Jan. 22, 2010) ...........................3

*In re PCH Assocs.*,
  949 F.2d 585 (2d Cir. 1991) ....................................................................................................3

*Picard v. Avellino*,
  557 B.R. 89 (Bankr. S.D.N.Y. 2016) ...................................................................................12

*Picard v. BAM L.P.*,
  624 B.R. 55 (Bankr. S.D.N.Y. 2020) ................................................................5, 7, 10, 19

*Picard v. Est. of Seymour Epstein*,
  Adv. Pro. No. 10-04438 (CGM) (Bankr. S.D.N.Y. Jan. 27, 2021) ...........................4, 5, 6, 19

*Picard v. JABA Assocs. LP*,
  528 F. Supp. 3d 219 (S.D.N.Y. 2021) ....................................................................................3

*Picard v. Miller*,
  631 B.R. 1 (Bankr. S.D.N.Y. 2021) .....................................................................4, 5, 9, 19

*Picard v. Nelson*,
  610 B.R. 197 (Bankr. S.D.N.Y. 2019) ........................................................................9, 19, 20

*Thompson v. Doane Pet Care Co.*,
  470 F.3d 1201 (6th Cir. 2006) ................................................................................................8

*Walsh v. Chez*,
  583 F.3d 990 (7th Cir. 2009) ..................................................................................................8

*Whalen v. CSX Transp. Inc.*,
    No. 13 Civ. 3784 (LGS) (HBP), 2016 WL 5660381 (S.D.N.Y. Sept. 29, 2016) ...................8

**Statutes**

11 U.S.C. § 548(a)(1)(A) ............................................................................................................14

**Rules**

Fed. R. Civ. P. 26 ........................................................................................................................8

Fed. R. Evid. 807(a) ...................................................................................................................10

## PRELIMINARY STATEMENT

Defendants' opposition raises no genuine issue of material fact and concedes the accuracy of the Trustee's net equity calculation of deposits and withdrawals, entitling the Trustee to recover $1,681,299 of fictitious profits received in the Two-Year Period. Confronted with this inexorable conclusion, Defendants resort to arguments that the Bankruptcy Court, the District Court, and the Second Circuit have all repeatedly rejected.

Despite the fact that this Court and others have repeatedly found that transfers like those made to Defendants were made by the debtor, Defendants continue to grasp at straws to evade these prior decisions. Defendants submit that this precedent is wrong because those courts relied upon the Amended Form BD and other BLMIS books and records. Defendants insist that the Amended Form BD and BLMIS's Operating Agreement are inadmissible and the Trustee should not be allowed to rely upon them to prove his *prime face* case. However, Defendants have no problem relying on the same Amended Form BD and other BLMIS books and records when it suits them: asserting certain records relied upon by the Trustee should not be admitted, but records Defendants seek to utilize should be. The Amended Form BD, BLMIS books and records, and other third-party records are admissible and dispositive of Madoff's intent to transfer *all* assets and liabilities of the sole proprietorship to the LLC in 2001.

Defendants also argue that the Trustee cannot rely on the Ponzi presumption based on a concurrence in *Picard v. Citibank, N.A.*, 12 F.4th 171, 200–03 (2d Cir. 2021). But the Ponzi presumption has long been relied upon by courts unwinding Ponzi schemes. Further, even if one were to consider the recent concurrence, its underpinnings are not relevant here: the transfers in *Citibank* were repayments of loans and recovery of principal, whereas Defendants here received fictitious profits from the Ponzi scheme for which value cannot be given.

Finally, prejudgment interest is appropriate to compensate the estate for the loss of the

use of the funds that Defendants continue to withhold.  This is consistent with the multiple other

decisions that have awarded prejudgment interest in nearly identical cases in this liquidation.

Accordingly, as there are no material facts in dispute, summary judgment should be

granted in favor of the Trustee on Count One in his Complaint.

## **ARGUMENT**

### I.    **PRIOR RULINGS IN THIS LIQUIDATION PROPERLY GUIDE THIS COURT AND ARE LAW OF THE CASE**

Defendants ignore that their arguments have been repeated and rejected *nine times* within

this liquidation.  *See Picard v. Ken-Wen Fam. Ltd. P'ship*, Adv. Pro. No. 10-04468, 2022 WL

709768 (Bankr. S.D.N.Y. Mar. 9, 2022); *In re BLMIS*, No. 1:21-cv-02334-CM, 2022 WL

493734, at *15 (S.D.N.Y. Feb. 17, 2021) ("*Epstein II*"); *Picard v. The Gerald & Barbara Keller

Fam. Tr.*, 634 B.R. 39 (Bankr. S.D.N.Y. 2021); *Picard v. Miller*, 631 B.R. 1 (Bankr. S.D.N.Y.

2021); *Picard v. JABA Assocs. LP*, 528 F. Supp. 3d 219 (S.D.N.Y. 2021); *Picard v. Lisa Beth

Nissenbaum Tr.*, No. 20 cv. 3140 (JGK), 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021); *Picard v.

Est. of Seymour Epstein*, Adv. Pro. No. 10-04438 (CGM) (Bankr. S.D.N.Y. Jan. 27, 2021), ECF

No. 155 ("*Epstein I*").  Besides the amounts and dates of the transfers, the record submitted in

support here is essentially the same as in other summary judgment motions.  There is no reason

for this Court to deviate from these prior rulings.

The only outlier had been a decision by Judge Furman who deemed a jury trial necessary

on the bank account issue.  *Picard v. RAR Entrepreneurial Fund, Ltd.*, No. 20-cv-01029, 2021

WL 827195 (S.D.N.Y. Mar. 3, 2021).  The jury trial recently culminated in a unanimous verdict

for the Trustee.  *See RAR Entrepreneurial Fund, Ltd.*, No. 20-cv-01029 (S.D.N.Y. Mar. 7, 2022),

ECF No. 132.  Judge Furman stated on the record that if the jury had not found for the Trustee,

he would have granted the Trustee's Rule 50 motion because the evidence overwhelmingly

favored the Trustee and "really uniformly pointed in the direction that supported the jury's

verdict." Decl. of Tara E. Turner, dated Mar. 25, 2022 ("Turner Decl."), Ex. 1 (Tr. at 389:4–16,

*RAR Entrepreneurial Fund, Ltd.*, No. 20-cv-01029 (S.D.N.Y. Mar. 7, 2022), ECF No. 137).

But as those Courts considering summary judgment after *RAR* have found, a trial is not

required.  Judge Koeltl's *JABA* and *Nissenbaum* decisions and Judge McMahon's *Epstein II*

decision were entered after Judge Furman's *RAR* decision, and both judges expressly considered

and rejected the notion that a jury trial on the bank account issue was necessary given the extent

of the evidence submitted by the Trustee.  As Judge McMahon explained in *Epstein II*:

> [T]he relevant inquiry – the *material* fact – is whether the accounts are the property
> of BLMIS and the funds in those accounts belonged to BLMIS customers – not
> whether Madoff kept his bank 'apprised of the mechanics of his fraudulent scheme'
> or conformed all of his records to the change in corporate form that he indubitably
> made and registered with the SEC, and to which he admitted after he was arrested.

2022 WL 493734, at *15.

Further, the doctrine of law of the case applies to legal issues already determined in other

cases in this liquidation.  *Epstein II*, 2022 WL 493734, at *12.  Law of the case was developed in

order to "maintain consistency and avoid reconsideration of matters once decided during the

course of a single continuing lawsuit."  *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*,

Adv. Pro. No. 08-1024, 2010 WL 271347, at *5 (Bankr. S.D.N.Y. Jan. 22, 2010) (quoting *In re

PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991)).  When "'prior decisions in an ongoing case

either expressly resolved an issue or necessarily resolved it by implication,' that 'rule of law . . .

should continue to govern in subsequent stages of the same case.'"  *Epstein II*, 2022 WL 493734,

at *12 (quoting *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001)).  It is law of

the case that the BLMIS books and records are admissible,  *Blecker v. Picard*, 830 F. App'x 669,

671 (2d Cir. 2020), and that the Trustee is entitled to prejudgment interest.  *See Ken-Wen Fam.

Ltd.*, 2022 WL 709768, at *3–4; *Epstein II*, 2022 WL 493734, at *18–19; *Keller Fam. Tr.*, 634

B.R. at 52–53; *Miller*, 631 B.R. at 17–18; *JABA*, 528 F. Supp. 3d at 246; *Nissenbaum*, 2021 WL

1141638, at *18; *Epstein I* at 10; *BAM L.P.*, 624 B.R. at 63–66.

## II.    THE TRANSFERS WERE AN INTEREST OF THE DEBTOR IN PROPERTY

The admissible evidence before the Court demonstrates that the Trustee can recover the

fraudulent transfers to Defendants because the JPMorgan Accounts were transferred to the LLC

in 2001.  But even if the accounts were not held by the Trustee,  the funds in those accounts

constitute customer property recoverable by the Trustee.  Stmt. ¶¶ 9–11, ECF No. 104; *see also*

*Epstein II*, 2022 WL 493734, at *13 ("The evidence from the Trustees experts shows that the

JPMorgan Accounts were transferred to the LLC in 2001, and the transfers made from those

accounts were of BLMIS customer funds"); *Miller*, 631 B.R. at 8 ("The Defendant's argument

that the JPMorgan Accounts were the property of Madoff, not BLMIS is without merit. The

transfers the Trustee seeks to avoid are customer property."); *Epstein I* at 7 ("All monies

transferred from the 509 Account or the 703 Account are "customer property" for purposes of

these SIPA cases."); *see also Citibank*, 12 F.4th at 179 (noting that "each time BLMIS

transferred payments to a customer, it was money stolen from other customers," because "the

customers' funds were commingled in BLMIS's bank account").

### A.    Madoff's Sleights of Hand Do Not Create a Genuine Dispute That BLMIS, including the IA Business, Was Transferred to the LLC

When Madoff converted his business from a sole proprietorship to an LLC in 2001, he

did not file a new application for SEC registration.  *See* Motion at 27 (citing Cremona Decl., Ex.

3 (Amended Form BD)).  Instead, he filed an Amended Form BD to reflect that change, retaining

the same SEC registration number for the LLC that was assigned to the sole proprietorship in

January 1960.  *Id.*  After the transfer, the sole proprietorship ceased to exist as a broker-dealer or

in any other capacity.

Defendants argue that Madoff's sole proprietorship continued to run the IA Business, while the other two business units operated under the newly-formed LLC. *See* Opp. at 5. But the Amended Form BD explicitly stated the "predecessor" or the sole proprietorship, would transfer to its successor, the LLC, "*all* of predecessor's assets and liabilities related to predecessor's business," including the IA Business and the JPMorgan Accounts. Cremona Decl., Ex. 3 (Amended Form BD at 10–11, *see also* Question 5) (emphasis added). Contrary to Defendants' assertions otherwise, the Amended Form BD listed no assets or liabilities as "not assumed by the successor." *Id.* The Amended Form BD also stated no "accounts, funds, or securities of customers of the applicant are held by or maintained by [any] other person, firm, or organization." *Id.* (Amended Form BD at 5); *see also Epstein II*, 2022 WL 493734, at *13; *JABA*, 528 F. Supp. 3d at 234 (citing *BAM*, 624 B.R. at 61 ("This Court finds that all of the assets and liabilities of the sole proprietorship, including the IA Business, were transferred to BLMIS via the 2001 SEC Amended Form BD.")); *Nissenbaum*, 2021 WL 1141638, at *9 (same); *Miller*, 631 B.R. at 8 (same); *Epstein I* at 7 (same).

In support of their theory that the sole proprietorship continued its business after the LLC was formed, Defendants offer speculation, unsupported by any evidence, Defendants argument has already been rejected by the courts in this Circuit as baseless. And in any case, by the time the Form ADV was filed by the LLC in August of 2006, prior to the date of the transfers the Trustee seeks to recover, there can be no dispute the IA Business was part of the LLC. *Epstein II*, 2022 WL 493734, at *16 ("The failure to check a box is particularly meaningless, as the IA Business was not registered with the SEC until 2006; thus, the IA box did not need to be checked in 2001, when the assets and customer accounts (including [Defendants'] accounts) were transferred to BLMIS."); Cremona Decl., Ex. 4 (Form ADV) (providing "Bernard L. Madoff

Investment Securities LLC" as the "Primary Business Name," "full legal name," and "Name under which you primarily conduct your advisory business").

In response, Defendants argue that even after the LLC was registered as an investment advisor in 2006, this registration was somehow extinguished because its annual FOCUS reports showed no income from investment advisory services. Like the other recordkeeping issues raised by Defendants, BLMIS's attempt to hide its fraud by reporting no income from its IA business does not create a genuine dispute as to whether the transfers in this case were made by the LLC. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *JABA*, 528 F. Supp. 3d at 236 n.4.

Defendants also claim that the Amended Form BD is missing "Schedule D," which Madoff was required to complete if it was his intention for the LLC to succeed the IA Business. But all of the information required to be included in "Schedule D" appears in the Amended Form BD. For example, the Amended Form BD requires the applicant to include *Other Business Names* the firm uses to conduct business, (Question 1.C.(2)), and to list the name(s) of *Successors* (Question 5). Just below the heading "BD Schedule C – Amendments to Schedules A&B" reads "BD – Other Business Names" which is followed by "No Information Filed." Cremona Decl. Ex. 3 (Amended Form BD at 9) (emphasis added). Later that page is a heading "BD – *Successions*" under which Madoff lists "Bernard L. Madoff" as the predecessor entity and states that "*all* of predecessor's assets and liabilities" are to be assumed by the successor. *Id.* at 9–10 (emphasis added). The remainder of the information to be included in Schedule D also appears on that same page. *See id.* at 9. Likewise, Defendants' argument that the JPMorgan Account statements did not list the word "LLC" after "Bernard L. Madoff Investment Securities"

6

and the checks or Form 1099s Madoff sent to Defendants post-2001 listed "Bernard L. Madoff"

rather than "Bernard L. Madoff Investment Securities LLC" on the top left corner is insufficient

to make ownership of the IA Business a genuine factual dispute.  *See* Opp. at 8, 12, 17.  The

name on the JPMorgan Account statements changed after the LLC was formed, from "Bernard

L. Madoff" to "Bernard L. Madoff Investment Securities".  Stmt. ¶ 86 (citing Collura Decl.,

Attach. A (Collura Report) ¶¶ 20 n.7, 25 n. 9, ECF No. 103-1).  In any case, BLMIS sent letters

to JPMorgan identifying the JPMorgan Accounts as held by the LLC.  Cremona Decl., Ex. 19

(Letters to Financial Institutions).  As both this Court and the District Court held, the inconsistent

use of business names on bank accounts and checks are expected when exhuming a Ponzi

scheme, and are insufficient to raise a genuine issue of fact. *Epstein II*, 2022 WL 493734, at *16.

*JABA*, 528 F. Supp. 3d at 234 (citing *BAM*, 624 B.R. at 60); *see also Nissenbaum*, 2021 WL

1141638, at *9 (same).

Finally, Defendants argue that they never consented to Madoff's "assignment" of their

customer account to the LLC, and therefore any "assignment" to the LLC would violate New

York contract law providing that a personal services contract may not be assigned without

consent.  But the customer agreement for Account 1CM325, signed by Defendants on April 5,

1995, specifically included a section on "Successors" which stated:

> Customer hereby agrees that this Agreement and all the terms thereof shall be
> binding upon Customer's heirs, executors, administrators, personal representatives
> and assigns. This agreement shall enure to the benefit of the Broker's present
> organization, and any successor organization, irrespective of any change or changes
> at any time in the personnel thereof, for any cause whatsoever.

Cremona Decl., Ex. 15 (BLMIS Customer Agreement).  Defendants accordingly consented to the

transfer to the LLC when they signed their customer agreement.  Defendants were also aware of

the change in corporate form because the name in BLMIS customer statements was changed to

the LLC after 2001. *Compare* Dubinsky Decl., Attach. A (Dubinsky Report) Figure 7 (Dec. 30,

2000 BLMIS Customer Statement) *with* Cremona Decl., Ex. 14 (July 31, 2004 BLMIS Customer

Statement).  Even assuming their account opening agreement was a personal services contract, a

change in corporate form does not constitute an assignment of that contract.  *Wien & Malkin LLP*

*v. Helmsley-Spear, Inc.*, 846 N.E.2d 1201, 1207–09 (N.Y. 2006) (holding change in managing

agent's corporate form was a "technical matter" that did not render the new entity an assignee;

the entity was instead a successor in interest); *see also Vann v. Kreindler, Relkin & Goldberg*,

434 N.Y.S.2d 365, 368 (N.Y. App. Div. 1980), *aff'd*, 54 N.Y.2d 936 (N.Y. 1981) ("Although the

[legal] entity changed, the relationship [among the parties] continued as before.").

Because the JPMorgan Accounts were transferred to the LLC in 2001 and those Accounts

were used to make the transfers to Defendants during the Two-Year Period, the transfers are an

"interest of the debtor in property," and the Trustee has met the first element of his claim.

**B.      The Expert Opinions Are Relevant to Bank Account Ownership Question**

Defendants further assert that this Court should not consider the Trustee's expert reports

because they are not relevant to the ownership of the JPMorgan Accounts.  *See* Opp. at 12.  This

argument is not supported by Fed. R. Civ. P. 26 or case law.

Rule 26 requires that an expert report "provide the substantive rationale in detail with

respect to the basis and reasons for the proffered opinions."  *Whalen v. CSX Transp. Inc.*, No. 13

Civ. 3784 (LGS) (HBP), 2016 WL 5660381, at *4 (S.D.N.Y. Sept. 29, 2016); *Thompson v.*

*Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006).  The report's purpose is "to convey

the substance of the expert's opinion . . . so that the opponent will be ready to rebut, to cross-

examine, and to offer a competing expert if necessary."  *Walsh v. Chez*, 583 F.3d 990, 994 (7th

Cir. 2009); *accord Harkabi v. SanDisk Corp.*, No. 08 Civ. 8203 (WHP), 2012 WL 2574717, at

*4 (S.D.N.Y. June 7, 2012).  To that end, the Trustee made the experts available for deposition

and their reports available for inspection but Defendants strategically chose not to and even

intentionally elected to forego proffering their own experts.

As part of Dubinsky's investigation as to the solvency of BLMIS, he analyzed the corporate structure and related bank accounts of BLMIS. Through his investigation, he confirmed that Madoff founded BLMIS as a sole proprietorship in 1960, that BLMIS operated three business units and that in 2001 BLMIS was reorganized as a single-member LLC with Madoff as the sole member Dubinsky Decl., Attach. A (Dubinsky Report) ¶¶ 36, 38, ECF No. 104-1. He also confirmed that in August of 2006, BLMIS registered as an investment adviser with the SEC. *Id*. ¶ 39. He further analyzed the bank accounts as part of his solvency and proof of fraud analysis, finding that "the pervasive fraud in BLMIS was conducted through its main bank accounts," and determined that all three business units were part of the LLC when it failed in 2008. *Id*. ¶ 77. Dubinsky identified the main bank accounts as the JPMorgan Accounts for the IA Business activities, and the Bank of New York '621 Account for the Proprietary Trading and Market Making businesses. *Id*. ¶ 78. Dubinsky further found that no monies were deposited in the JPMorgan Accounts from the sale of securities, or the receipt of dividends.

Likewise, Collura analyzed all available BLMIS bank records and "confirmed the accuracy and reliability of the cash transactions on the customer statements by reconciling those transactions reported on the BLMIS customer statements to available third-party bank records." *Nelson*, 610 B.R. at 220 (citation omitted). This analysis was the basis for Collura's opinion that the activity in the JPMorgan Accounts did not change after the transition to the LLC—receiving and distributing the deposits and withdrawals of the IA Business. *Id*.

Both Dubinsky and Collura's expert reports are relevant to the issue of account ownership. Indeed, both this Court and the District Court have held this to be true. *See, e.g.*, *Ken-Wen*, 2022 WL 709768, at *2–3; *Keller Fam. Tr.*, 634 B.R. at 46; *Miller*, 631 B.R. at 3–4; *Epstein II*, 2022

WL 493734, at *3; *JABA*, 528 F. Supp. 3d at 227, 235 (citing *BAM*, 624 B.R. at 59–61);

*Nissenbaum*, 2021 WL 1141638, at *3, *9.

### C.    The Trustee's Motion Rests On Admissible Evidence

Defendants assert that this Court should not follow the many prior decisions on the bank

account issue because the courts improperly relied on the Amended Form BD.  Opp. at 8.  But

the Amended Form BD has been admitted three times at trial and both this Court and the District

Court have found it admissible for purposes of summary judgment.  *See* Turner Decl., Ex. 2 (Tr.

at 77:25–78:9, 97:2–98:5; *RAR Entrepreneurial Fund, Ltd.*, No. 20 CV 1029 (JMF) (S.D.N.Y.

Mar. 2, 2022), ECF No. 133); Tr. at 53:22–54:2, *BAM L.P.*, Adv. Pro. No. 10-04390 (CGM)

(Bankr. S.D.N.Y. Sept. 14, 2020), ECF No. 225; *Nelson*, 610 B.R. at 206; *Epstein II*, 2022 WL

493734, at *3; *JABA*, 528 F. Supp. 3d at 227; *Nissenbaum*, 2021 WL 1141638, at *3, 9.

The Court may take judicial notice of the Amended Form BD as a fact that "can be

accurately and readily determined from sources whose accuracy cannot reasonably be

questioned." Fed. R. Evid. 201(b).  An entity's filings with governmental agencies, including the

SEC, fall within this rule.  *See Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568,

574 n.1 (S.D.N.Y. 2016) ("All SEC filings discussed in this Opinion are . . . independently,

public documents of which the Court may take judicial notice.").  Indeed, the fact that BLMIS

filed the Amended Form BD is relevant without regard to any of the statements within the

document because amended Form BDs can only be used when a successor "is acquiring or

assuming substantially all of the assets and liabilities of the predecessor's broker-dealer."  Exch.

Act Rel. No. 31,661, 53 SEC Dock. 296, 297–98 (1992).

The contents of the Amended Form BD are admissible under Fed. R. Evid. 807(a) which

permits the admission of hearsay evidence if: (1) it is supported by sufficient guarantees of

trustworthiness—after considering the totality of circumstances under which it was made and

evidence, if any, corroborating statement; and (2) it is more probative on the point for which it is

offered than any other evidence that the proponent can obtain through reasonable efforts.

The Amended Form BD as filed with and attested to twice by the SEC displays

"sufficient guarantees of trustworthiness under the totality of the circumstances" to be admissible

under Rule 807. *Wareham v. Complex Media, Inc.*, No. 20 Civ. 152 (ER), 2022 WL 523597, at

*5 (S.D.N.Y. Feb. 22, 2022) (admitting email under Fed. R. Evid. 807); *see also Silverstein v.*

*Smith Barney, Inc.*, No. 96 Civ. 8892(JSM), 2002 WL 1343748, at *3 (S.D.N.Y. June 18, 2002).

There is no dispute that the Form BD was filed by BLMIS with the SEC in 2001 and Defendants

provide no reason to doubt the accuracy of the statements. *Cosmopolitan Shipping Co., v. Cont'l*

*Ins. Co.*, 514 F.Supp.3d 614, 624 (S.D.N.Y. 2021) (affirming trial court's admission of

documents under residual exception).

Defendants also argue that the Operating Agreement and other BLMIS records are not

reliable because of the fraud. As an initial matter, Defendants rely on these very records to

support their claims, arguing the checks and Form 1099s received from BLMIS, which listed

"Bernard L. Madoff," are admissible and relevant to bank account ownership. This Court has

previously found similar objections to be wholly "disingenuous." *Miller*, 631 B.R. at 7 ("It

appears the Defendant advocates for admissibility when it suits his position, and inadmissibility

when it does not."); *see also Nelson*, 610 B.R. at 223 (same).

Further, this Court, the District Court, and the Second Circuit have repeatedly recognized

the admissibility of BLMIS's books and records under the business records and residual hearsay

exceptions. *See In re BLMIS*, 830 F. App'x 669, 671 (2d Cir. 2020); *Epstein II*, 2022 WL

493734, at *20; *Nelson*, 610 B.R. at 225–26 (admitted at trial); *In re Bernard L. Madoff*, 592

B.R. 513, 524–26 (Bankr. S.D.N.Y. 2018) (same); *JABA*, 528 F. Supp. 3d at 231–33 (admissible

for summary judgment); *Nissenbaum*, 2021 WL 1141638, at *7–8 (same).  These decisions are

law of the case.  *See Epstein II*, 2022 WL 493734, at *13 ("[T]he Second Circuit's conclusion

that BLMIS books and records are admissible as proof of profit withdrawals is a legal conclusion

(whether evidence is admissible or not being a question of law) is "law of the case" in all

subsequent BLMIS adversary proceedings.").  Any argument that the records are inadmissible

because they are untrustworthy has been dismissed in this liquidation specifically and in other

frauds generally.  *See In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 454–58 (Bankr.

S.D.N.Y. 2007) (admitting debtor's records under business records exception although Enron

was engaged in fraudulent activity); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2006

WL 346418, at *1 (Bankr. S.D.N.Y. Feb. 6, 2006) (admitting debtors' books and records

although principals engaged in bank and securities fraud through debtor).

### D.    *Avellino* Is Wrong

Defendants rely heavily on an interlocutory decision in *Picard v. Avellino*, in which the

court dismissed the Trustee's claims to recover fraudulent transfers made prior to 2001 to claim

that if customer property was held in Madoff's name, rather than the LLC's, the Trustee could

not recover it, because such property cannot be property in which the LLC had an interest.  557

B.R. 89 (Bankr. S.D.N.Y. 2016).[1]  Any reliance on *Avellino* is misplaced.

In *Avellino*, Judge Bernstein distinguished between the Trustee's avoidance of transfers

made by Madoff's sole proprietorship prior to 2001 and by the LLC after that time.  557 B.R. at

109–10.  Finding that the "SIPA debtor" in this liquidation was the LLC, not the sole

proprietorship, Judge Bernstein held that the SIPA Trustee was limited to recovering transfers of

customer property made after 2001.  *Id.*  Although Judge Bernstein acknowledged that the funds

---

[1] The Trustee's action in *Avellino* is ongoing in this Court, and the Trustee will appeal the portion of the ruling affecting pre-2001 transfers once a final judgment is entered in the case.

deposited with the sole proprietorship were customer property and that the sole proprietorship had been a member of SIPC since 1970, he found the SIPA Trustee could not recover withdrawals by customers of the sole proprietorship *Id.*

But as this Court previously held, *Avellino* does not help Defendants here because the Trustee is not seeking to recover transfers made by Madoff prior to 2001. *See JABA*, 528 F. Supp. 3d at 235; *Nissenbaum*, 2021 WL 1141638, at *9; *Keller Fam. Tr.*, 634 B.R. at 45–46; *Epstein II*, 2022 WL 493734, at *11 ("The Court in *Avellino* held that the Trustee could not recover transfers prior to 2001. . . . This case concerns Two Year Transfers made between 2006-2008; thus, *Avellino* has no bearing on the Trustee's standing in this case."). Nor does *Avellino* provide any guidance on when the IA business became part of the LLC. *Keller Fam. Tr.*, 634 B.R. at 45–46.

In any case, *Avellino* was wrongly decided. First, because the sole proprietorship had ceased to exist some eight years prior to the collapse, the only SIPC member that *could have been* named in the Protective Decree was the LLC.[2]

Second, the Trustee was appointed for the liquidation of the *business* of the broker-dealer. Madoff's business was a continued, uninterrupted one from 1960, funneling customer property in the same way through the same bank accounts. *In re Bernard L. Madoff*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). Where the same broker-dealer is continuously registered with the SEC under the same registrant number, its SIPC membership is also continuous. Whether a change in corporate form might change the "person" who was the debtor in an ordinary bankruptcy proceeding, the debtor in this SIPA Proceeding is "the member of SIPC" as to which the

---

[2] Defendants also argue that, based on their interpretation of the Consolidation Order, the Trustee lacks standing to recover the Two-Year Transfers. Each of the many courts to previously consider this issue has rejected it. *See Nelson*, 610 B.R. at 216; *JABA*, 528 F. Supp. 3d at 234–35; *RAR*, 2021 WL 827195, at *4.

Protective Decree was brought. And since SIPA was enacted in 1970, the relevant member of

SIPC here has been BLMIS, whether organized as a sole proprietorship or an LLC.

Third, the Consolidation Order supports, rather than undermines, the right of the Trustee

to recover customer property transferred from any bank account held by BLMIS or Madoff. The

Order preserves the respective avoidance powers of both the SIPA Trustee and the Chapter 7

Trustee, a provision included in light of caselaw holding that "[a]bsent express preservation of

the trustee's avoidance power, an order of substantive consolidation would ordinarily eliminate

that power." *Alexander v. Compton*, 229 F.3d 750, 768 (9th Cir. 2000). But the preservation of

each trustee's respective powers is not a limit on those powers. The Consolidation Order does

not state that the SIPA Trustee can only recover customer property when held by the LLC; to the

contrary, the effect of the Order is that when the SIPA Trustee exercises that power, he does so

on behalf of the consolidated estate and can recover any customer property held by Madoff *or*

the LLC. *BAM*, 624 B.R. at 61 & n.4 (noting that because the Chapter 7 case was substantively

consolidated with the SIPA proceeding, the SIPA Trustee should be able to recover fraudulent

transfers made by Madoff's sole proprietorship).

## III.    BLMIS MADE EVERY TWO-YEAR TRANSFER WITH ACTUAL FRAUDULENT INTENT AND IN FURTHERANCE OF THE FRAUD

Each of the avoidable transfers at issue in this case were made with the actual intent to

hinder, delay, or defraud some or all of BLMIS's then existing and/or future creditors within the

meaning of section 548(a)(1)(A) of the Bankruptcy Code. 11 U.S.C. § 548(a)(1)(A). The

Trustee is entitled to rely on the Ponzi presumption to demonstrate this fraudulent intent.

### A.    The Ponzi Presumption is a Valid Indicator of Fraudulent Intent

The intent to hinder, delay, or defraud creditors is presumed under the Ponzi presumption

if the Trustee can show that (1) the transferor operated a Ponzi scheme; and (2) the transfers

made to the transferee by the debtor were "in furtherance" of a fraudulent scheme. *See Citibank*, 12 F.4th at 181 (citation omitted).

Defendants rely on a concurrence to a recent Second Circuit decision to suggest that the Ponzi presumption is unsound. *Id.* at 200–03. But the Ponzi presumption was in fact applied to the BLMIS fraud in *Citibank*; the Second Circuit had "no occasion to assess" whether it "is well-founded" because it had not been challenged by the parties. *Id.* at n.7. This was because the presumption has been embraced in this district and courts across the country.

Although the Second Circuit applied it without assessing its foundation, multiple courts of appeals have considered and adopted the Ponzi presumption. *See Janvey v. Brown*, 767 F.3d 430, 438–39 (5th Cir. 2014); *In re Mark Benskin & Co., Inc.*, 59 F.3d 170 (6th Cir. 1995); *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995); *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008); *Klein v. Cornelius*, 786 F.3d 1310, 1320 (10th Cir. 2015); *Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011).

The Ponzi presumption is based on the nature of a Ponzi scheme which cannot work forever: inevitably, "the scheme will collapse and [] those still invested in the enterprise will lose their money." *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC*, 439 B.R. 284, 294 n.19 (S.D.N.Y. 2010). Courts adopting the presumption have repeatedly explained that intent to defraud can be inferred from a debtor's decision to perpetrate a scheme that is "insolvent by definition." *Klein*, 786 F.3d at 1320; *see also Janvey v. Dem. Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 196 (5th Cir. 2013) (same); *Bayou*, 439 B.R. at 294 n.19.

Multiple courts have rejected Defendants' suggestion that the Ponzi scheme presumption contravenes the Second Circuit's decision in *Sharp International Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43 (2d Cir. 2005), noting that *Sharp* did not involve a Ponzi scheme or

implicate the presumption. *See, e.g.*, *In re Dreier LLP*, 452 B.R. 391, 425 (Bankr. S.D.N.Y.

2011); *Bear, Stearns Sec. Corp v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 10

(S.D.N.Y. 2007). Moreover, the Second Circuit has recently held that *Sharp*'s reasoning is

specifically inapplicable to Madoff-related cases brought by the Trustee under SIPA. In

*Gettinger*, appellees urged the court "to equate the [BLMIS] transfers . . . to those in *Sharp* and

rule in their favor on that basis." 976 F.3d at 200. "But there exists no equivalency," the court

held, "because Sharp involved a bankruptcy liquidation, not a SIPA liquidation." *Id. Sharp* held

that "'the basic object of fraudulent conveyance law is to see that the debtor uses his limited

assets to satisfy some of his creditors; it normally does not try to choose between them.'" *Id.*

(quoting *Sharp*, 403 F.3d at 54). In *Gettinger,* the Second Circuit explained that "Defendants'

reliance on *Sharp* is misplaced because the case at bar involves a SIPA liquidation in which we

*do* 'choose among' creditors." *Id.* at 200–01. For that same reason, Defendants' distinction

between preferential and actual fraudulent transfers does not apply in a SIPA proceeding.

Finally, the value concerns raised in the *Citibank* concurrence are not present here. In his

concurrence, Judge Menashi expressed concern that the Ponzi presumption assumes that

creditors receiving debt repayments were not owed a valid antecedent debt. *Citibank*, 12 F.4th at

200–04 ("Under . . . normal principles, creditors such as Citibank and Legacy would be able to

retain the repayments . . . ."). But the transfers at issue in *Citibank* implicated repayments of

loans and recovery of principal; here, Defendants received fictitious profits from the Ponzi

scheme. Allowing recipients of fictitious profits to assert a "value" defense under § 548(c)

would be inconsistent with SIPA's prioritization of the customer property estate. *Gettinger*, 976

F. 3d at 199–200; *SIPC v. BLMIS*, 499 B.R. 416, 423–24, 426 (S.D.N.Y. 2013).

    **B.**     **The IA Business was a Ponzi Scheme and a Fraud, and the Trustee has Demonstrated BLMIS's Fraudulent Intent Under Any Relevant Standard**

Defendants make the remarkable assertion that the IA business "conducted legitimate business, and was not a Ponzi scheme." Opp. at 31. This is false. As the Second Circuit has held, "BLMIS was a sham" and "Madoff operated his Ponzi scheme through his investment firm BLMIS, a securities broker-dealer." *Citibank*, 12 F.4th at 181 (explaining the operation of Madoff's Ponzi scheme); *JABA*, 528 F. Supp. 3d at 237 ("There is no genuine dispute of material fact that BLMIS operated a Ponzi scheme."); *see also Gettinger*, 976 F.3d at 188.

No avenue remains for Defendants to continue to challenge the Ponzi scheme. The evidence underlying the dispositive court decisions include the plea allocutions of Madoff and five other BLMIS employees, which themselves "establish *prima facie* that Madoff ran BLMIS as a Ponzi scheme." *JABA*, 528 F. Supp. 3d at 237 (citing *Legacy*, 603 B.R. at 691); *see also RAR*, 2021 WL 827195, at *8; *Nelson*, 610 B.R. at 210. It also includes the Trustee's unrebutted expert reports, which establish that BLMIS executed no securities trading on behalf of its customers, including Defendants, and that the funds in the JPMorgan Accounts consisted of customer property that was used to pay redemptions to other customers. Dubinsky Decl., Attach. A (Dubinsky Report) ¶¶ 19–26, 36, 155–58, 330–37, 340 n.285, Figure 52, Section V.A.(1)(c)(i)-(vi), A.(1)(e)(i)-(iv); Collura Decl., Attach. A (Collura Report) ¶¶ 17, 20–30, 32, 46–47; *see also Epstein II*, 2022 WL 493734, at *18; *JABA*, 528 F. Supp. 3d at 225–26; *RAR*, 2021 WL 827195, at *7; *Nelson*, 610 B.R. at 210–14.

Even if the Trustee were not entitled to rely on the Ponzi presumption, a trustee may prove actual fraudulent intent under section 546(a)(1)(A) by showing certain "badges of fraud." *Banner v. Kassow*, 104 F.3d 352, 352 (2d Cir 1996). Courts in this liquidation have repeatedly found the Trustee has demonstrated sufficient "badges of fraud" to show BLMIS's fraudulent intent. *See JABA*, 528 F. Supp. 3d at 240–41 (noting badges of fraud, including concealing of

17

facts by BLMIS, BLMIS's insolvency, and the lack of consideration provided for transfers to customers supplied a separate basis to conclude the Two-Year Transfers were made with intent to defraud (citing *Nelson*, 610 B.R. at 235)); *Nissenbaum*, 2021 WL 1141638, at *14–15 (same).

### C.    Defendants' Conjecture Regarding the T-Bills Does Not Create a Disputed Issue of Material Fact

Against the undisputed evidence of the Ponzi scheme, Defendants nonetheless allege, again with no evidentiary basis, that "Madoff purchased large amounts of T-Bills for customers and held them throughout the time they were credited to the customers' accounts." Opp. at 31; *see also* CMF ¶ 89, ECF No. 113. This argument has been rejected each time it has been raised. *See Epstein II*, 2022 WL 493734, at *17 ("[T]he uncontroverted evidence demonstrates that the T-Bills listed on customer statements were fictitious and BLMIS was not engaged in any legitimate purchase and sale of securities."); *JABA*, 528 F. Supp. 3d at 238–39; *Nissenbaum*, 2021 WL 1141638, at *12–13 (same); *RAR*, 2021 WL 827195, at *8–9; *Nelson*, 610 B.R. at 214, 234 n.37 same); *Picard v. BAM L.P.*, 608 B.R. 165, 175 n.15 (Bankr. S.D.N.Y. 2019) (same); *Legacy*, 603 B.R. at 691 (same)

The Trustee's unrebutted evidence firmly establishes that BLMIS did not purchase T-Bills for customer accounts. Dubinsky's analysis shows, and DiPascali's testimony confirms, that none of the T-Bills purchased by the IA Business are the same T-Bills reported on customer statements, including Defendants'. Instead, BLMIS purchased T-Bills with customer funds for cash management purposes, and not for particular customers. The T-Bills that appear in the records of DTC, the clearing house for securities transactions, do not match the T-Bills transactions that appeared on customer statements. *JABA*, 528 F. Supp. 3d at 225–26; Dubinsky Decl., Attach. A (Dubinsky Report) ¶ 226. The volume of T-bills that appeared on the customer statements exceeded the aggregate volume of T-Bills actually purchased and held by BLMIS

many times over.  Dubinsky Decl., Attach. A (Dubinsky Report) ¶ 227 & Table 5.  And,

DiPascali testified in the criminal trial captioned *United States v. Bonventre*, No. 10-cr-228

(LTS) (S.D.N.Y.) that the brokerage accounts were used to purchase T-Bills for BLMIS's cash

management purposes and not for IA business customers.  Cremona Decl., Ex. 7 (DiPascali

Criminal Trial Tr.) at 4921:7–12, 4930:6–4931:5, 4931:12–4933:13, 4961:15–4962:22, 5344:24–

5346, 6950:25–6951:9; *see also Epstein II*, 2022 WL 493734, at *14.

Based on the foregoing and because Defendants concede that the transfers were made in

the Two-Year Period, there can be no question that the Trustee has satisfied his *prima facie* case.

## IV.    THE TRUSTEE IS ENTITLED TO PREJUDGMENT INTEREST

Prejudgment interest is appropriate here.  As this Court previously stated regarding

similarly situated defendants: "Although it may be true that Defendants were not responsible for

BLMIS' fraud, the purpose of prejudgment interest is to make the Plaintiff whole rather than to

punish Defendants or to provide Plaintiff with a windfall."  *BAM*, 624 B.R. at 63 (citation

omitted).  This Court has discretion in granting prejudgment interest and setting the interest rate,

"and absent a sound reason to deny prejudgment interest, such interest should be awarded."

*Epstein I* at 10 (citing *In re 1031 Tax Grp.*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010)); *see also*

*BAM*, 624 B.R. at 63.

Defendants have done nothing to distinguish themselves from others whose cases have

come before them.  *See Miller*, 631 B.R. at 18 (awarding prejudgment interest where defendant

"recovered his principal investment" from his IRA when "[o]ther victims have not been so

fortunate"); *JABA*, 528 F. Supp. 3d at 246 (awarding prejudgment interest to "compensate[] the

Trustee for the loss of the use of the Two-Year Transfers for the years that this litigation has

lasted, and [to] reduce[] the profits to the defendants from having withheld the funds);

*Nissenbaum*, 2021 WL 1141638, at *18 (same); *Epstein I* at 10 (same); *BAM*, 624 B.R. at 63

(awarding prejudgment interest where defendants went to trial on an issue that was previously resolved by this Court in *Nelson*).

Indeed, Defendants:

have done nothing more than regurgitate arguments already made and rejected without casting the slightest doubt on the evidence that has been the cornerstone of every one of these cases or offering evidence to demonstrate that they are somehow different than everyone else who "invested" with Bernie Madoff. They have wasted the Trustee's time and resources and the Court's as well.

*Epstein II*, 2022 WL 493734, at *19. Defendants not only refuse to acknowledge these decisions, but they strategically filed a motion to withdraw the reference in an attempt to subvert or, at minimum, delay this Court's review. *See* Motion, ECF No. 95. Defendants have retained and benefited from other customers' property for over a decade and it must be returned in addition to prejudgment interest.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant summary judgment on Count One of the Trustee's Complaint: (1) avoiding the fictitious profits that BLMIS transferred to Defendants within the Two-Year Period ($1,681,299); (2) awarding the Trustee prejudgment interest from the Filing Date through the date of the Court's decision at the rate of 4%; and (3) requiring Defendants to return such transfers or the value thereof to the Trustee.

Dated: March 25, 2022
     New York, New York

/s/ Nicholas J. Cremona
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*