**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> BANCA CARIGE S.P.A., <br><br> Defendant. | Adv. Pro. No. 11-02570 (CGM) |

### TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS .........................................................................................................3

I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.............................................3

II.    FAIRFIELD SENTRY.........................................................................................................4

III.    BANCA CARIGE AND ITS INVESTMENT IN FAIRFIELD SENTRY ........................6

ARGUMENT .............................................................................................................................7

I.    THE COURT HAS PERSONAL JURISDICTION OVER BANCA CARIGE.................7

    A.    Banca Carige Purposefully Availed Itself of the Benefits and Privileges of an Investment in the Forum ..................................................................................9

    B.    Banca Carige's Other Contacts with the Forum Are Also Sufficient to Establish Jurisdiction .................................................................................15

        1.    Banca Carige's Use of Domestic Bank Accounts Establishes Personal Jurisdiction ..........................................................................15

        2.    The Forum Selection and Choice of Law Clauses in the Subscription Agreement Are Strong Jurisdictional Contacts.............................21

    C.    The Exercise of Personal Jurisdiction Over Banca Carige Is Reasonable............23

    D.    At Minimum, the Trustee Is Entitled to Jurisdictional Discovery ........................24

II.    THE TRUSTEE HAS SATISFIED HIS PLEADING BURDEN .....................................25

    A.    The Trustee Has Sufficiently Alleged That the Initial Transfers Are Avoidable and Thus the Subsequent Transfer Is Recoverable ..............................25

        1.    The Incorporated Material Complies with Federal Rules of Civil Procedure 10 and 8.................................................................................25

            a.    All Adversary Proceedings Are Part of the Main Case for Purposes of Rule 10(c)..........................................................25

            b.    Incorporation Is Permitted Where It Achieves the Purpose of Rule 10(c)..........................................................................27

            c.    The Trustee's Allegations Are Sufficient Under Rule 8................28

2. The Court Can Take Judicial Notice of the Fairfield Decision .................29

3. At the Very Least, the Trustee Should Be Afforded the Opportunity to Replead .........................................................................................................30

B. Banca Carige Misapprehends the Trustee's Pleading Burden Regarding the Receipt of BLMIS Customer Property ................................................................31

1. The Trustee's Pleading Must Be Reviewed Under a Liberal Standard .....31

2. At the Pleading Stage, the Trustee Is Not Required to Detail What Portion of Each Subsequent Transfer Comprises Customer Property .......34

3. The Trustee, as an Outsider, Should Be Permitted to Obtain Discovery ..................................................................................................38

CONCLUSION .....................................................................................................................40

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) .............................................................31, 34

*Adelphia Recovery Tr. v. HSBC Bank USA (In re Adelphia Recovery Tr.)*,
    634 F.3d 678 (2d Cir. 2011)............................................................................35

*Al Rushaid v. Pictet & Cie*,
    68 N.E.3d 1 (N.Y. 2016)................................................................................18

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) .........................................................26, 30

*Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*,
    409 B.R. 737 (Bankr. E.D.N.C. 2009) .......................................................32, 33

*Ayyash v. Bank Al-Madina*,
    No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ...................24

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990)............................................................................7

*Bissonnette v. Podlaski*,
    138 F. Supp. 3d 616 (S.D.N.Y. 2015)...............................................................8

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..................................................................9, 13, 22, 23

*Chase Manhattan Bank v. Banque Generale Du Commerce*,
    No. 96 CIV. 5184(KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997)...............23

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)........................................................................8, 23

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008) ...........................................................37

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001)...............................................................8

*Dahar v. Jackson (In re Jackson)*,
    318 B.R. 5 (Bankr. D.N.H. 2004) ...................................................................34

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)......................................................................................8

*Dandong v. Pinnacle Performance Ltd.*,
  966 F. Supp. 2d 374 (S.D.N.Y. 2013)...................................................17

*DeMasi v. Benefico*,
  567 F. Supp. 2d 449 (S.D.N.Y. 2008)....................................................29

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013)...................................................................7

*Eldesouky v. Aziz*,
  No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)................16

*Enron Corp. v. Mass Mut. Life Ins. Co. (In re Enron Corp.)*,
  Nos. M-47 (GBD), 01-6034(AJG), 03-92677(AJG), 03-92682(AJG), 2007
  WL 120458 (S.D.N.Y. Jan. 17, 2007).....................................................38

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
  397 F. Supp. 3d 323 (S.D.N.Y. 2019)....................................................18

*Ferrari v. Cnty. of Suffolk*,
  790 F. Supp. 2d 34 (E.D.N.Y. 2011) .....................................................29

*Foman v. Davis*,
  371 U.S. 178 (1962)...........................................................................30

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021)..........................................................9, 14, 20, 22

*Fowler v. Caliber Home Loans, Inc.*,
  277 F. Supp. 3d 1324 (S.D. Fla. 2016) ..................................................35

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
  No. 08-15051 (SMB), Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB),
  2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014)....................................33

*Hau Yin To v. HSBC Holdings PLC*,
  No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*,
  700 F. App'x 66 (2d Cir. 2017) ...........................................................19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)............................................................................13

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
  601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)..........37

*Henry v. Rizzolo*,
   No. 08-cv-00635, 2012 WL 4092604 (D. Nev. Sept. 17, 2012), *order
   clarified*, 2012 WL 4867725 (D. Nev. Oct. 12, 2012)............................................35

*Hill v. HSBC Bank plc*,
   207 F. Supp. 3d 333 (S.D.N.Y. 2016)......................................................................19

*Howell, III v. Fulford (In re S. Home & Ranch Supply, Inc.)*,
   No. 11-12755-WHD, Adv. No. 13-1043, 2013 WL 7393247 (Bankr. N.D. Ga.
   2013) ........................................................................................................................33

*HSH Nordbank AG N.Y. Branch v. Street*,
   No. 11 Civ. 9405(DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)............................16, 19

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)....................................................................................................8

*Jalbert v. Zurich Am. Ins. Co. (In re Payton Constr. Corp.)*,
   399 B.R. 352 (Bankr. D. Mass. 2009) ......................................................................38

*Kelley v. Westford Special Situations Master Fund, L.P.*,
   No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ......................35, 36

*Kiobel v. Royal Dutch Petroleum Co.*,
   No. 02 Civ. 7618(KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009)..................24

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013).......................................................................................22

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012)...................................................................................14, 19

*Licci v. Lebanese Canadian Bank, SAL*,
   984 N.E.2d 893 (N.Y. 2012)...................................................................17, 18, 19, 22

*Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)*,
   731 F. Supp. 587 (S.D.N.Y. 1990) ...........................................................................24

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
   843 F. Supp. 2d 191 (D. Mass. 2012) .......................................................................27

*McGee v. Int'l Life Ins. Co.*,
   335 U.S. 220 (1957).....................................................................................................9

*McHale v. Boulder Cap. LLC (In re 1031 Tax Grp., LLC)*,
   439 B.R. 78 (Bankr. S.D.N.Y. 2010) .......................................................................36

v

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)......................................................................................9

*Milliken v. Meyer*,
  311 U.S. 457 (1940)...............................................................................................8

*Morrison v. Off. of the U.S. Tr. (In re Morrison)*,
  375 B.R. 179 (Bankr. W.D. Pa. 2007) .................................................................25

*In re Motors Liquidation Co.*,
  590 B.R. 39 (S.D.N.Y. 2018)...............................................................................27

*Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In
  re Motors Liquidation Co.)*,
  565 B.R. 275 (Bankr. S.D.N.Y. 2017)..................................................................22

*Muth v. Dechert, Price & Rhoads*,
  391 F. Supp. 935 (E.D. Pa. 1975) ........................................................................27

*Nappier v. Pricewaterhouse Coopers LLP*,
  227 F. Supp. 2d 263 (D.N.J. 2002) ......................................................................35

*Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*,
  848 F.2d 1196 (11th Cir. 1988) ...........................................................................37

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
  549 B.R. 56 (S.D.N.Y. 2016) .................................................................17, 18, 20

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..................................................17, 19, 23

*Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012)....................................................... *passim*

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
  440 B.R. 274 (Bankr. S.D.N.Y. 2010) ............................................................16, 17

*Picard v. Charles Ellerin Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
  S.D.N.Y. Mar. 14, 2012)................................................................31, 32, 35, 36

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  12 F.4th 171 (2d Cir. 2021) ..............................................................................3, 28

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  418 B.R. 75 (Bankr. S.D.N.Y. 2009) ....................................................................17

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) .................................................................38

*Picard v. Est. of Igoin (In re Bernard L. Madoff Inv. Sec. LLC),*
    525 B.R. 871 (Bankr. S.D.N.Y. 2015) ...........................................................17, 19

*Picard v. Est. of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC),*
    445 B.R. 206 (Bankr. S.D.N.Y. 2011) ...........................................................31, 39

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.),*
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ...........................................................8, 9, 20

*Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff),*
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) .............................................................................................................4, 25, 29

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC),*
    Adv. Pro. Nos. 08-01789 (SMB), 10-04932 (SMB), 2014 WL 5106909
    (Bankr. S.D.N.Y. Oct. 10, 2014) ......................................................................10

*Picard v. Maxam Absolute Return Fund, L.P. (In re Bernard L. Madoff Inv. Sec.
    LLC),*
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) .................................................9, 10, 14, 24

*Picard v. Mayer (In re Bernard L. Madoff),*
    Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
    27, 2021) ............................................................................................................8, 33

*Picard v. Merkin (In re Bernard L. Madoff),*
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) .................................................................36

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),*
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) .................................................................39

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),*
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ........................................................ *passim*

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC),*
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) .................................................................32

*In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC,*
    917 F.3d 85 (2d Cir. 2019) ........................................................................10, 20, 24

*Porat v. Lincoln Towers Cmty. Ass'n,*
    464 F.3d 274 (2d Cir. 2006) .................................................................................30

*Porina v. Marward Shipping Co.,*
    521 F.3d 122 (2d Cir. 2008) ..................................................................................8

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000).................................................................................30

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
624 F.3d 123 (2d Cir. 2010)..............................................................................8

*Sass v. Barclays Bank PLC (In re Am. Home Mortg., Holdings, Inc.)*,
501 B.R. 44 (Bankr. D. Del. 2013) ...................................................................35

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
501 B.R. 26 (S.D.N.Y. 2013)......................................................................27, 29

*Sherman v. A.J. Pegno Constr. Corp.*,
528 F. Supp. 2d 320 (S.D.N.Y. 2007)........................................................27, 28

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007).............................................................31, 32

*Solution Tr. v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*,
548 B.R. 300 (Bankr. C.D. Cal. 2016) ..............................................................35

*Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*,
239 F.3d 365, 2000 WL 1741550 (5th Cir. 2000), *as amended on reh'g* (Dec.
11, 2000) .....................................................................................................37, 38

*Stiles v. Vaden (In re Bechtold)*,
No. 10-30013, Adv. No. 13-03046, 2014 WL 585304 (Bankr. W.D.N.C. Feb.
14, 2014) ...........................................................................................................37

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004)................................................................................23

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010)...............................................................19

*Toberman v. Copas*,
800 F. Supp. 1239 (M.D. Pa 1992) ...................................................................27

*Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re TOUSA, Inc.)*,
442 B.R. 852 (Bankr. S.D. Fla. 2010)...............................................................33

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019)................................................................................9

*United States v. Henshaw*,
388 F.3d 738 (10th Cir. 2004) ..........................................................................36

*United States v. Int'l Longshoremen's Ass'n,*
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ............................................................27, 30

*In re Viropharma, Inc. Sec. Litig.,*
  No. CIV.A. 021627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) ...........................35

*Walden v. Fiore,*
  571 U.S. 277 (2014) ..................................................................................12, 13, 14

*Waldman v. Palestine Liberation Org.,*
  835 F.3d 317 (2d Cir. 2016) ....................................................................................23

*Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld),*
  543 B.R. 60 (Bankr. S.D.N.Y. 2015) .......................................................................28

*Zucker v. Oconee Reg'l Healthcare Found., Inc. (In re Oconee Reg'l Health Sys.,
  Inc.),*
  621 B.R. 64 (Bankr. M.D. Ga. 2020) .......................................................................33

**Statutes**

11 U.S.C. § 548(a) ......................................................................................26, 28

11 U.S.C. § 550(a) .........................................................................................*passim*

11 U.S.C. § 550(d) .................................................................................................37

11. U.S.C. § 550 ..............................................................................................25, 29

**Rules**

Fed. R. Bankr. P. 7008(a)(2) ..................................................................................33

Fed. R. Bankr. P. 7010 ...........................................................................................25

Fed. R. Bankr. P. 7015 ...........................................................................................30

Fed. R. Civ. P. 8 ........................................................................................25, 28, 29

Fed. R. Civ. P. 10(c) ................................................................................25, 26, 27

Fed. R. Civ. P. 12(b)(2) .............................................................................................8

Fed. R. Civ. P. 12(b)(6)..............................................................................30, 33, 35

Fed. R. Civ. P. 15(a) ...............................................................................................30

N.Y. C.P.L.R. § 302(a)(1)...........................................................................16, 19, 22

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d §
1326 (3d ed. 2007) ...........................................................................................................25, 28

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff,

respectfully submits this memorandum of law in opposition to Defendant Banca Carige S.p.A.'s

("Banca Carige") Motion to Dismiss the Complaint ("Motion").  The Declaration of Brian W.

Song ("Song Decl.") is also submitted in opposition to the Motion.

## PRELIMINARY STATEMENT

In an effort to distance itself from this forum and argue that the Court does not have

personal jurisdiction over it, Banca Carige attempts to paint a picture of a fully foreign

investment in which it stood idly on the sidelines while Fairfield Sentry invested its money with

BLMIS in New York.  While convenient, this picture is not accurate.  Banca Carige did not

simply have "mere knowledge" that Fairfield Sentry would invest the funds received from

investors like itself in the United States.  Rather, Banca Carige pursued its investment in

Fairfield Sentry and fully intended that its funds would be invested with BLMIS.[1]  Banca Carige

affirmed it received and read Fairfield Sentry investment materials confirming that BLMIS

would invest substantially all of Fairfield Sentry's assets using a strategy that involved the

purchase and sale of U.S. securities, options, and Treasurys and that BLMIS would maintain

custody of substantially all of Fairfield Sentry's assets in New York.  Far from being a foreign

investment, Banca Carige's investment in Fairfield Sentry had "New York" and "BLMIS"

written all over it.  Banca Carige pursued this investment, and accordingly transacted business

within New York and derived significant revenue from New York.

---

[1] Though it caveats that it is only for the purpose of its motion, Banca Carige does not dispute the allegations that it "knew" that its funds would be invested with BLMIS in New York.  Mot. at 8 n.4.

Banca Carige moves to dismiss the Trustee's Complaint for two primary reasons. First, it wrongly argues that the Trustee has not alleged the minimum contacts necessary to establish that the Court has personal jurisdiction over it. Banca Carige's contacts with the forum are precisely the type of minimum contacts that courts have found establish and support the exercise of specific personal jurisdiction. Banca Carige purposefully used U.S. bank accounts to both subscribe into and redeem out of Fairfield Sentry. Such purposeful use of U.S. correspondent accounts can provide a sufficient basis on its own for jurisdiction. Banca Carige's subscription agreement with Fairfield Sentry also required it to submit to New York jurisdiction and agree to forum selection and choice of law clauses, all tied to New York. Such contacts with New York support the exercise of jurisdiction here and should be considered under the totality of the circumstances, even though the Trustee was not a party to the agreement by which Banca Carige subscribed to Fairfield Sentry. The Court's exercise of personal jurisdiction over Banca Carige is well supported and reasonable.

Second, Banca Carige argues that the Trustee's Complaint fails to state a claim because of improper incorporation by reference of another complaint and failure to identify which of the initial transfers of BLMIS customer property were subsequently transferred to Banca Carige. These arguments are fundamentally flawed and should be rejected. The Trustee's incorporation by reference of his complaint against the Fairfield Greenwich Group defendants[2] to establish the avoidability of the initial transfers from BLMIS to Fairfield Sentry is proper under the Federal Rules of Civil Procedure. Banca Carige can respond to the incorporation by reference paragraph just as it would any other paragraph in the Complaint. Moreover, contrary to Banca Carige's

---

[2] Amended Complaint, *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL) (July 20, 2010), ECF No. 23 ("Fairfield Complaint"), now superseded by the Second Amended Complaint. Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (SMB) (Aug. 28, 2020), ECF No. 286.

assertions, at the pleading stage, the Trustee is not required to detail what portion of the subsequent transfer to Banca Carige comprises customer property or to tie it to a specific initial transfer from BLMIS to Fairfield Sentry.

Having failed to raise any sufficient challenges to the Trustee's allegations in the Complaint, Banca Carige's Motion must be denied.

## **STATEMENT OF FACTS**

### I.    **THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS**

Madoff founded and operated BLMIS from New York until its collapse in 2008.  *See* Complaint ("Compl.") ¶ 22.  BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id.*  For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market.  *Id.* ¶¶ 23-24.  In reality, BLMIS operated a Ponzi scheme through its IA Business.  *Id.* ¶ 25.  On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  *Id.* ¶ 10.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"— large investment funds created for the express purpose of funneling investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021).  Banca Carige knowingly invested in one such feeder fund, Fairfield Sentry.  Compl. ¶¶ 2, 6.

3

## II.    FAIRFIELD SENTRY

Fairfield Sentry was controlled by the Fairfield Greenwich Group ("FGG" or "Fairfield"),

a *de facto* partnership with its principal place of business in New York.  *See Picard v. Fairfield*

*Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at

*9 (Bankr. S.D.N.Y. Aug. 6, 2021); *see also* Compl. ¶ 6.  Fairfield Sentry was a U.S. dollar-

denominated fund that invested 95% of its assets with BLMIS.  Compl. ¶ 2.  Investors in

Fairfield Sentry were required to execute subscription agreements, in which the investors

acknowledged their sophistication and that they had "such knowledge and experience in financial

and business matters that [they were] capable of evaluating the risks of this investment."[3]  The

subscription agreements also incorporated Fairfield Sentry's Private Placement Memoranda

("PPMs"), and by signing, investors warranted that they "received and read a copy of the

[PPMs]."[4]

The PPMs explicitly disclosed BLMIS's multiple roles as the *de facto* investment

manager, broker dealer, and custodian for Fairfield Sentry.  Regarding BLMIS's role as the

fund's actual investment manager, the PPMs disclosed that Fairfield Sentry sought "to obtain

capital appreciation of its assets principally through the utilization of a nontraditional options

trading strategy described as 'split strike conversion', to which the Fund allocates the

predominant portion of its assets."[5]  Further, "[t]he Split Strike Conversion strategy is

implemented by Bernard L. Madoff Investment Securities ("BLM[IS]"), a broker-dealer

---

[3] Declaration of Francesco Guido in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim ("Guido Decl."), Ex. 1 ¶ 8, ECF No. 109-1.

[4] *Id.* Ex. 1 ¶ 7.

[5] Song Decl. Ex. 1 (Private Placement Memorandum Fairfield Sentry Limited dated April 2006 (SECSEV2150333-SECSEV2150397) ("Apr. 2006 PPM")) at SECSEV2150346; Song Decl. Ex. 2 (Private Placement Memorandum Fairfield Sentry Limited dated August 14, 2006 (SECSEV0749666-SECSEV0749726) ("Aug. 2006 PPM")) at SECSEV0749681.

registered with the Securities and Exchange Commission, through accounts maintained by the

Fund at that firm."[6]  The PPMs also disclosed how "[t]he services of BLM[IS] and its personnel

are essential to the continued operation of [Fairfield Sentry], and its profitability, if any."[7]

Regarding BLMIS's roles as Fairfield Sentry's broker dealer and custodian, the PPMs

disclosed:

> As a result of the Investment Manager's selection of Bernard L.
> Madoff Investment Securities, LLC ("BLM[IS]") as execution agent
> of the split strike conversion strategy, substantially all of the Fund's
> assets will be held in segregated accounts at BLM[IS], a U.S.
> registered broker-dealer and qualified custodian. Accordingly,
> BLM[IS] will be a sub-custodian of the Fund.[8]

Thus, the PPMs specifically informed investors that BLMIS—not Fairfield Sentry or its service

providers—would have custody of Fairfield Sentry's assets in the United States and would

execute the fund's purported investment strategy.

The subscription agreements included additional connections to New York.  The

agreements contained a New York choice of law provision: "This Agreement shall be governed

and enforced in accordance with the laws of New York, without giving effect to its conflict of

laws provisions."[9]  Under a heading titled *New York Courts*, the agreements also contained a

New York venue and forum selection clause:

> Subscriber agrees that any suit, action or proceeding ("Proceeding")
> with respect to this Agreement and the Fund may be brought in New
> York.  Subscriber irrevocably submits to the jurisdiction of the New
> York courts with respect to any Proceeding and consents that service
> of process as provided by New York law may be made upon
> Subscriber in such Proceeding, and may not claim that a Proceeding

---

[6] Song Decl. Ex. 1 (Apr. 2006 PPM) at SECSEV2150346; *Id.* Ex. 2 (Aug. 2006 PPM) at SECSEV0749681.

[7] Song Decl. Ex. 1 (Apr. 2006 PPM) at SECSEV2150346; *Id.* Ex. 2 (Aug. 2006 PPM) at SECSEV0749682.

[8] Song Decl. Ex. 2 (Aug. 2006 PPM) at SECSEV0749688; *see also id.* Ex. 1 (Apr. 2006 PPM) at SECSEV2150346
("BLM[IS] also serves as custodian of the Fund's assets.").

[9] Guido Decl. Ex. 1 ¶ 16.

has been brought in an inconvenient forum.[10]
The agreements also instructed investors to send subscription payments to a bank account with HSBC Bank USA at 452 Fifth Avenue, New York, New York (the "HSBC USA Account").[11]

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion.  Compl. ¶ 34.  In 2011, the Trustee settled with Fairfield Sentry and others.  *Id.* ¶ 39.  As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate.  *Id.*  The Trustee then commenced a number of adversary proceedings against defendants like Banca Carige to recover the approximately $3 billion in missing customer property.

## III.    BANCA CARIGE AND ITS INVESTMENT IN FAIRFIELD SENTRY

Banca Carige is a bank organized and existing under the laws of Italy based in Genoa, Italy.  *Id.* ¶ 21.  In 2007, Banca Carige invested $10,000,000 in Fairfield Sentry.[12]  Prior to BLMIS's collapse, Banca Carige received $10,532,489 in a subsequent transfer of customer property from Fairfield Sentry on October 16, 2007.  Compl. ¶ 2, Ex. C.

Banca Carige knew that it was engaging with New York when it invested in Fairfield Sentry.  *See id.* ¶ 6.  Banca Carige executed a subscription agreement (the "Subscription Agreement") in which it acknowledged that it received and read the PPMs and thus knew that BLMIS was the intended recipient of its investment with Fairfield Sentry.[13]  Banca Carige also agreed to the Subscription Agreement's New York choice of law, jurisdiction, and forum

---

[10] *Id.* Ex. 1 ¶ 19.

[11] *Id.* Ex. 1.

[12] Guido Decl. Ex. 1.

[13] Guido Decl. Ex. 1 ¶ 7.

clauses.[14]

Moreover, Banca Carige used the New York banking system to subscribe into and redeem from Fairfield Sentry.  Banca Carige sent its subscription payment to Fairfield Sentry's HSBC USA Account.[15]  In the Subscription Agreement and its redemption documents with Fairfield Sentry, Banca Carige identified and designated a correspondent bank account at Wachovia Bank in New York in its own name to receive redemptions from Fairfield Sentry.[16] Banca Carige used this Wachovia Bank account to receive the subsequent transfer at issue: a redemption of $10,532,489 from Fairfield Sentry.[17]

## ARGUMENT

## I.    THE COURT HAS PERSONAL JURISDICTION OVER BANCA CARIGE

The Court has personal jurisdiction over Banca Carige because: (i) Banca Carige had minimum contacts with the forum such that it purposefully availed itself of the benefits and privileges of investing in New York and (ii) the exercise of jurisdiction over Banca Carige is reasonable.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).  At this early stage, a *prima facie* showing of jurisdiction "may be established solely by allegations."  *Id.* at 84-85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith,

---

[14] *Id.* Ex. 1 ¶¶ 16, 19.

[15] *Id.* Ex. 1.

[16] *Id.* Ex. 1 ¶ 30.g; Guido Decl. Ex. 3, ECF No. 109-3.

[17] Guido Decl. Ex. 3.

legally sufficient allegations of jurisdiction.").  A plaintiff also may establish a *prima facie* case

of jurisdiction through affidavits and supporting materials that contain averments of facts outside

the pleadings.[18]  *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir.

2010).  The pleadings and affidavits are to be construed "in the light most favorable to the

plaintiffs, resolving all doubts in their favor."  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616

F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d

Cir. 2008)).

The personal jurisdiction analysis is a two-step inquiry that focuses on (1) minimum

contacts and (2) whether jurisdiction will be reasonable under the circumstances.  *See Int'l Shoe

Co. v. Washington*, 326 U.S. 310, 316 (1945) (due process requires that a defendant have

sufficient minimum contacts with the forum state "such that maintenance of the suit does not

offend 'traditional notions of fair play and substantial justice'" (quoting *Milliken v. Meyer*, 311

U.S. 457, 463 (1940))).  There are two types of personal jurisdiction that satisfy minimum

contacts: general jurisdiction[19] and specific jurisdiction.  *Cromer Fin. Ltd. v. Berger*, 137 F.

Supp. 2d 452, 473 (S.D.N.Y. 2001).  "Specific jurisdiction exists where the defendant 'purposely

direct[s] his activities at residents of the forum' and the underlying cause of action 'arises out of

or relates to those activities.'"  *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,

627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (quoting *Cromer*, 137 F. Supp. 2d at 473).

---

[18] Courts may consider extrinsic material in deciding a motion to dismiss under Rule 12(b)(2).  *See Picard v. Mayer (In re Bernard L. Madoff)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *3 (Bankr. S.D.N.Y. Oct. 27, 2021) ("To meet this burden at the pleading stage, the plaintiff need only to make 'a prima facie showing of jurisdiction through its own affidavits and supporting materials.'" (quoting *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 621-22 (S.D.N.Y. 2015))).

[19] General jurisdiction is based on the defendant's general business contacts with the forum state and permits a court to exercise jurisdiction where the suit is unrelated to those contacts.  *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).  Here, the Trustee's case arises out of the contacts Banca Carige has with the forum and a finding of general jurisdiction is unnecessary.

Specific personal jurisdiction is proper where the defendant's contacts "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  But specific jurisdiction does not require a causal relationship between a plaintiff's claims and the defendant's contacts with the forum state.  *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021).  Moreover, the defendant's activities "need not have taken place within the forum, and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P. (In re Bernard L. Madoff Inv. Sec. LLC)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (citation omitted) (citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)).  Specific jurisdiction may also be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

To determine whether jurisdiction is reasonable, courts consider the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).  Where the plaintiff has alleged purposeful availment, however, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable.  *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472-73).

### A.    Banca Carige Purposefully Availed Itself of the Benefits and Privileges of an Investment in the Forum

Banca Carige is subject to this Court's personal jurisdiction because it invested in Fairfield Sentry with the specific purpose of having funds invested with BLMIS in New York

9

and profiting therefrom.  *See Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. Nos. 08-01789 (SMB), 10-04932 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (recognizing that litigation in the BLMIS liquidation has "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transferees were subject to the Court's personal jurisdiction"); *Maxam Absolute Return Fund*, 460 B.R. at 116-20 (finding jurisdiction where defendant knew and intended that funds invested with BLMIS feeder fund would be sent to New York for investment by BLMIS in New York).

As this Court has recognized, a defendant who invested in a feeder fund while knowing and intending that its funds would be transferred to BLMIS for investment in New York is subject to personal jurisdiction with respect to claims arising out of those investments.  *Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) ("*BLI*") (defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in [BLMIS feeder fund] Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market").  In *BLI*, like here, the defendant received and reviewed marketing materials, including PPMs, expressly indicating that the funds would ultimately be invested in BLMIS.  *Id.* at 517.

Banca Carige purchased shares in Fairfield Sentry intending to invest with BLMIS in New York.  *See In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d Cir. 2019) ("When these investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going.").  To invest with Fairfield Sentry, Banca Carige executed the Subscription Agreement

10

through which it affirmed having received and read the fund's PPMs and agreed to be bound by

the terms set forth in the PPMs.[20]  The PPMs included details about the fund's investment

strategy, historical performance, and trades in the S&P 100 Index.[21]  Based on the information

contained in Fairfield Sentry's PPM, Banca Carige knew the following facts indicating that it

was transacting business in New York by investing in Fairfield Sentry:

- Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS[22];

- BLMIS was Fairfield Sentry's investment adviser[23];

- BLMIS was registered with the U.S. Securities and Exchange Commission[24];

- BLMIS was the executing broker for Fairfield Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf[25];

- BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. Treasury securities traded on U.S. exchanges, and the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York[26];

- BLMIS was the custodian of Fairfield Sentry's investments with BLMIS[27]; and

- BLMIS was "essential to the continued operation of" Fairfield Sentry.[28]

In an effort to distance itself from this forum, Banca Carige describes an entirely foreign

investment through which Fairfield Sentry, not Banca Carige, made the choice to invest with

BLMIS.  *See* Mot. at 2-3.  In reality, Banca Carige purposefully availed itself of an investment in

---

[20] Guido Decl. Ex. 1 ¶ 7; *see also* Compl. ¶ 6.

[21] *See generally* Song Decl. Ex. 1 (Apr. 2006 PPM); *Id.* Ex. 2 (Aug. 2006 PPM).

[22] Song Decl. Ex. 1 (Apr. 2006 PPM) at SECSEV2150346; *Id.* Ex. 2 (Aug. 2006 PPM) at SECSEV0749682.

[23] Song Decl. Ex. 1 (Apr. 2006 PPM) at SECSEV2150346; *Id.* Ex. 2 (Aug. 2006 PPM) at SECSEV0749681.

[24] Song Decl. Ex. 1 (Apr. 2006 PPM) at SECSEV2150346; *Id.* Ex. 2 (Aug. 2006 PPM) at SECSEV0749681.

[25] Song Decl. Ex. 1 (Apr. 2006 PPM) at SECSEV2150346; *Id.* Ex. 2 (Aug. 2006 PPM) at SECSEV0749681.

[26] Song Decl. Ex. 1 (Apr. 2006 PPM) at SECSEV2150346; *Id.* Ex. 2 (Aug. 2006 PPM) at SECSEV0749681-682.

[27] Song Decl. Ex. 1 (Apr. 2006 PPM) at SECSEV2150346; *Id.* Ex. 2 (Aug. 2006 PPM) at SECSEV0749688.

[28] Song Decl. Ex. 1 (Apr. 2006 PPM) at SECSEV2150346, 354; *Id.* Ex. 2 (Aug. 2006 PPM) at SECSEV0749682, 690.

New York with BLMIS through Fairfield Sentry and knowingly accepted the benefits and

privileges of doing so.  Banca Carige did not simply invest in a foreign fund; it invested in a fund

that itself invested 95% of its assets with New York-based BLMIS, a fact that was plainly

apparent from Fairfield Sentry's PPM which Banca Carige affirmed it read.  Banca Carige

cannot now claim that the Court lacks personal jurisdiction over it or that participating in a

lawsuit in New York would be burdensome because the investment did not work out as planned.

And because Banca Carige intended for its funds to be invested with BLMIS in New York, the

exercise of jurisdiction by this Court in connection with the Trustee's claims, which arise out of

these investments, is reasonable.  *See BLI*, 480 B.R. at 517 (having purposely funneled millions

of dollars to BLMIS in New York, the defendant "cannot claim a violation of its due process

rights from having to appear in a New York court to defend itself in a suit arising from activities

with a clear New York nexus").

Banca Carige's argument that the reasoning of this Court in *BLI* should not lead to the

same result here relies upon a notably stark misreading of *Walden v. Fiore*, 571 U.S. 277 (2014).

In fact, *Walden* has no application here.  *Walden* was based on a fairly unremarkable application

of the "effects test," which is used to assess intentional tort cases and focuses on injuries arising

within a forum state based on tortious activity outside that forum.  Using that test, the Supreme

Court found easily that a Georgia police officer could not be sued in Nevada for an unlawful

seizure of money in Georgia merely because he knew the plaintiffs resided in Nevada.  *Walden*,

571 U.S. at 288-91.  *Walden* simply reaffirms the well-established principle that personal

jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state.

*See id.* at 284 ("[The] unilateral activity of another party or a third person is not an appropriate

consideration when determining whether a defendant has sufficient contacts with a forum State

12

to justify an assertion of jurisdiction." (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984))). Although it was foreseeable that the unlawful seizure would harm the plaintiffs in their home state of Nevada because that is where they desired to use the seized funds, the Court found that the defendant's conduct neither occurred in nor was directed toward Nevada. *Id.* at 288-91. A finding of jurisdiction under those circumstances, the Court held, would inappropriately permit "a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289.

By contrast, here, the Trustee is not alleging foreseeability as to the situs of an injury. Rather, as in *BLI*, the Trustee is alleging, as detailed *supra*, that Banca Carige purposefully availed itself of the benefits and laws pertaining to investing in the United States. As demonstrated by Fairfield Sentry's offering materials and subscription agreements, Fairfield Sentry's express purpose was to pool funds and funnel them to BLMIS in New York for investment in the United States securities markets. *See, e.g.*, Compl. ¶ 2. Armed with this knowledge, Banca Carige made a conscious decision to invest in Fairfield Sentry precisely so that it could reap the rewards of investing with BLMIS in New York. *Id.* ¶ 6. A finding of personal jurisdiction on the basis of such purposeful actions directed at a New York broker-dealer and the United States securities markets centered in New York comports with the traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 471-74 (noting that due process concerns are satisfied when an out-of-state defendant purposely directs his activities at residents of the forum state and purposely benefits from those activities). In short, there is nothing in *Walden* that precludes jurisdiction here, or that questions, limits, or otherwise has any bearing on the holding in *BLI*.

Banca Carige also misinterprets *Walden* to the extent it argues, in effect, that its

connections to the forum must be viewed in a vacuum as opposed to being based on its

relationships with BLMIS and a BLMIS feeder fund. *Walden* recognized that "a defendant's

contacts with the forum State may be intertwined with his transactions or interactions with the

plaintiff or other parties." *Walden*, 571 U.S. at 286; *see also Ford Motor Co.*, 141 S. Ct. at 1031-

32 (rejecting defendant's contention that *Walden* "shows that a plaintiff's residence and place of

injury can never support jurisdiction" and pointing out that "[t]hose places still may be relevant

in assessing the link between the defendant's forum contacts and the plaintiff's suit").

Moreover, and despite any assertions to the contrary, the fact that a defendant may have

projected itself into the forum from afar changes nothing when done so purposefully. "A

defendant need not physically enter New York State in order to transact business, 'so long as the

defendant's activities here were purposeful.'" *Licci ex rel. Licci v. Lebanese Canadian Bank,

SAL*, 673 F.3d 50, 61 (2d Cir. 2012); *see also BLI*, 480 B.R. at 516 (noting that "[t]he

defendant's activity need not have taken place within the forum" (quoting *Maxam Absolute

Return Fund*, 460 B.R. at 117)).

Finally, it is worth noting, as this Court did in *BLI*, that Banca Carige's suggestion that its

funds simply ended up in the United States due to happenstance or through what it refers to as

the "stream of commerce" theory of personal jurisdiction, *see* Mot. at 12, is particularly

disingenuous. *See BLI*, 480 B.R. at 517 (highlighting defendant's understanding that its funds

would be sent to a BLMIS feeder fund in order to be invested with BLMIS). That Fairfield

Sentry invested Banca Carige's funds with BLMIS in New York was not merely foreseeable to

Banca Carige, it was Banca Carige's objective.

14

B.    **Banca Carige's Other Contacts with the Forum Are Also Sufficient to Establish Jurisdiction**

1.    **Banca Carige's Use of Domestic Bank Accounts Establishes Personal Jurisdiction**

In addition to Banca Carige's purposeful availment of an investment in New York with BLMIS, this Court has jurisdiction over Banca Carige because it purposefully used U.S. bank accounts to both subscribe into and redeem out of Fairfield Sentry.  Contrary to Banca Carige's contentions that the mere use of a bank account at a U.S. financial institution to facilitate the making and receipt of dollar-denominated payments does not subject it to personal jurisdiction in the United States, *see* Mot. at 4, these uses were both purposeful and support the exercise of personal jurisdiction.

As set forth in the Declaration of Francesco Guido in Support of the Motion, Banca Carige used an HSBC Bank correspondent account in New York—the HSBC USA Account—as the account to which it sent a subscription payment to Fairfield Sentry totaling $10,000,000.[29] Banca Carige also designated and used a correspondent bank account at Wachovia Bank in New York in its own name to send the subscription payment and to receive the subsequent transfer at issue: a redemption of $10,532,489 from Fairfield Sentry.  Banca Carige designated such use of this account in its Fairfield Sentry Subscription Agreement and redemption documents.[30]  Banca Carige also executed a standardized Fairfield Sentry form entitled "Redemption Request Form Instructions," which directed redemption payments to this Wachovia Bank account.[31]

Banca Carige argues that the transfer being sought is not a part of the "principal wrong" or cause of action being alleged, *see* Mot. at 16, but the opposite is true.  In a fraudulent transfer

---

[29] Guido Decl. Ex. 1.

[30] *Id.* Ex. 1 ¶¶ 30.g, 30.h; Guido Decl. Ex. 3.

[31] Guido Decl. Ex. 3.

action to recover customer property such as this, the transfers themselves are at the very heart of

the analysis.  In this context, the transfer of money to and from is not simply moving it from one

location to another.  The transfers themselves were central to BLMIS's fraud.  As detailed below,

the fact that Banca Carige used U.S. correspondent bank accounts to both invest and redeem

funds is thus significant in establishing personal jurisdiction.  And because the Trustee's causes

of action in this proceeding relate to the very transfers that came through these U.S.

correspondent bank accounts, Banca Carige should reasonably anticipate such transfers would be

adjudicated in the United States.  *See, e.g.*, *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ.

9405(DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) ("claims against [defendants]

arise directly out of the transfer of funds into [defendants'] New York accounts"); *Picard v.*

*Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 274, 279 (Bankr. S.D.N.Y. 2010)

(finding that defendant's contacts with the forum and the Trustee's claims are "inextricably

related").

  Even without any other contacts, a defendant's use of a domestic bank account in

connection with the activity alleged is sufficient to establish jurisdiction, under either the due

process analysis or the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(1).[32]  *See, e.g.*,

*Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *6-7 (S.D.N.Y. Dec. 19, 2014)

(foreign defendant subject to jurisdiction under New York long-arm statute based solely on its

use of a New York account to receive payment at issue); *HSH Nordbank*, 2012 WL 2921875, at

*4 (Florida-based defendants subject to jurisdiction under New York long-arm statute based

---

[32] Certain cases discussed herein address jurisdiction under New York's long-arm statute.  Due to the very close overlap between the requirements of the New York long-arm statute and those of due process, courts engaging in a due process analysis frequently cite long-arm cases as a matter of course. *See, e.g.*, *HSH Nordbank*, 2012 WL 2921875, at *4 n.3 (noting that "the personal jurisdiction analysis under § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous").

solely on their use of a New York bank account to receive the fraudulent conveyances at issue);
*Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382-83 (S.D.N.Y. 2013) (Cayman-registered defendant subject to jurisdiction in New York based solely on its use of New York bank accounts to facilitate its alleged fraud).

In the context of the Trustee's cases, this Court has found jurisdiction where initial and subsequent transferee defendants received the transfers at issue out of, and made the underlying BLMIS or BLMIS feeder fund investments into, U.S. bank accounts. *See Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder fund's New York bank account); *Picard v. Est. of Igoin (In re Bernard L. Madoff Inv. Sec. LLC)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (jurisdiction over initial transferee defendants who received transfers from BLMIS's New York bank account); *Chais*, 440 B.R. at 279-80 (same, plus defendants used their California bank account to receive transfers); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R. 75, 80 (Bankr. S.D.N.Y. 2009) (jurisdiction over initial transferee defendants that made "financial transactions to and from their New York BLMIS bank accounts").

That the accounts used by Banca Carige were correspondent accounts does not alter this outcome. New York cases consistently hold that the purposeful use of a U.S. correspondent account can provide a sufficient basis on its own for jurisdiction. *See Licci v. Lebanese Canadian Bank, SAL*, 984 N.E.2d 893, 899-900 (N.Y. 2012) (leading case, holding that a defendant's purposeful "use of a correspondent bank account in New York, even if no other contacts between the defendant and New York can be established" suffices to show defendant transacted business in New York); *see also Off. Comm. of Unsecured Creditors of Arcapita v.*

*Bahrain Islamic Bank*, 549 B.R. 56, 67-69 (S.D.N.Y. 2016) (foreign defendants subject to

jurisdiction based solely on their designation and use of New York correspondent accounts to

receive the preferential transfers at issue); *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 6-11 (N.Y.

2016) (same, in connection with a money laundering scheme).

Though correspondent accounts have "widespread" use, *Licci*, 984 N.E.2d at 900, such

use must simply be more than coincidental or passive to be purposeful. *See id.* at 899-900

(jurisdiction based on defendant's use of New York correspondent account where evidence

demonstrated such use was not "coincidental," and distinguishing case where defendant

passively received funds at correspondent account due entirely to another party's actions).

Where, like here, a defendant designates and uses a U.S. correspondent account of its choosing,

purposefulness is self-evident because such use is active, intended, and approved. *See, e.g.*,

*Arcapita*, 549 B.R. at 69 (defendants' designation of New York correspondent bank accounts to

receive the funds, and their selection of U.S. dollars and the New York banking system, was

deliberate); *Al Rushaid*, 68 N.E.3d at 11 (defendant's choice of the New York correspondent

bank made the connection to New York "volitional").

Nor does it matter that the HSBC USA Account was Fairfield Sentry's account because

Banca Carige still chose to use it. *See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l*

*Petroleum Corp.*, 397 F. Supp. 3d 323, 346 (S.D.N.Y. 2019) ("[T]he point is not whether

[defendant] owns the accounts, it is that they made purposeful use of them for reasons related to

the underlying dispute."). Banca Carige could have opted not to invest in BLMIS through

Fairfield Sentry or to invest through another feeder fund. In making the decision to invest in

BLMIS through Fairfield Sentry, Banca Carige affirmatively agreed to use Fairfield Sentry's

U.S. accounts in connection with its subscriptions into, and redemptions from, the fund. Each

transaction was thus a volitional act, regardless that Fairfield Sentry designated the account.[33]

Accordingly, this Court has previously found that a BLMIS subsequent transferee defendant's

use of its own and its feeder fund's U.S. correspondent accounts for subscribing into and

redeeming from the fund is supportive of purposefulness.  *BLI*, 480 B.R. at 513, 516 n.14 (as to

Fairfield Sentry/Citco); *BNP*, 594 B.R. at 191 (as to Tremont).

The case at bar is therefore a far cry from cases cited by Banca Carige and called into

doubt by *Licci*, like *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010), in

which the Court discussed that "merely maintaining a New York correspondent bank account is

insufficient to subject a foreign bank to personal jurisdiction."[34]  Here, Banca Carige was a

knowing participant in the underlying transaction—not just merely maintaining the account—

directing the movement of its own funds through a U.S. correspondent account.  This was

volitional conduct by Banca Carige, and there was nothing "mere" about it.

Banca Carige's reliance on other cases like *Hau Yin To v. HSBC Holdings PLC*, No.

15CV3590-LTS-SN, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66

(2d Cir. 2017), and *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 340 (S.D.N.Y. 2016), where use

of a correspondent account was deemed an "incidental consequence[] of fulfilling a foreign

contract," is also misplaced.  In *BNP*, this Court determined that those cases are not relevant to

the Trustee's subsequent transfer actions.  *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the

---

[33] It also makes no difference if a Citco entity chose to use the U.S. correspondent account on behalf of Fairfield Sentry, as various Citco entities acted as Fairfield's agent.  *See Igoin*, 525 B.R. at 884 ("Whether [defendant] dealt with BLMIS directly or her mother or another acted on her behalf makes no difference because the conduct of her agents is attributed to her for purposes of the jurisdictional analysis.").

[34] The use of New York bank accounts to shelter significant and repeated transfers of funds constitutes the "transaction of business" necessary to satisfy the first requirement of the New York long-arm statute.  N.Y. C.P.L.R. § 302(a)(1).  While the mere maintenance of a New York bank account may be insufficient to subject a foreign defendant to personal jurisdiction under § 302(a)(1), in circumstances such as here, where the Trustee's causes of action arise out of the use of New York bank accounts, § 302(a)(1) is satisfied.  *HSH Nordbank*, 2012 WL 2921875, at *5 (citing *Licci ex rel. Licci*, 673 F.3d at 62).

issue of personal jurisdiction arising from the Defendants' redemptions as investors in the

Tremont Funds which arose from their New York contacts with the Tremont Funds.").  The

Trustee's actions do not involve disputes between two parties stemming from services owed

under a foreign contract, like the breach of fiduciary duty and other claims in *To* and *Hill*.

Rather, these are fraudulent transfer recovery actions by a U.S. bankruptcy trustee against

investors whose transfers of funds to and from U.S. correspondent accounts fulfilled the very

purpose of their feeder fund agreements and themselves evidence the defendants' intent to direct

activity toward the U.S. securities markets.  *See BLI*, 480 B.R. at 513 ("This movement of money

to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous

or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement

between BLI and Fairfield Sentry.").  And unlike the cases cited by Banca Carige where the

primary activity between plaintiff and defendant was overseas, here, the Second Circuit has

already found that the transactions at issue are domestic.  *In re Picard*, 917 F.3d at 99-100.[35]

The Trustee's claims also "arise out of or relate to" Banca Carige's use of the above

accounts.  As the Supreme Court recently held, this prong does not require a causal relationship.

*See Ford Motor Co.*, 141 S. Ct. at 1026-30.  Rather, as this Court has previously stated, this

prong may be satisfied if defendant's conduct "involves at least in part financial transactions that

touch the forum."  *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68-

71 (rejecting causation and requiring only that the claim is not completely "unmoored" from the

transaction).  The payments Banca Carige made through U.S.-based correspondent bank

accounts are sufficient to establish personal jurisdiction in this case.

---

[35] This is the case, notwithstanding whether or not the Chapter 15 liquidators have characterized these same transfers
as foreign for purposes of their claims.

**2.    The Forum Selection and Choice of Law Clauses in the Subscription
Agreement Are Strong Jurisdictional Contacts**

When Banca Carige invested in Fairfield Sentry, it signed the Subscription Agreement

through which it submitted to venue in New York, the jurisdiction of the New York courts, the

service of process out of the New York courts, and the application of New York law.

Specifically, Banca Carige (i) "agree[d] that any suit, action or proceeding . . . with respect to

this Agreement and the Fund may be brought in New York," (ii) "irrevocably submit[ted] to the

jurisdiction of the New York courts with respect to any [p]roceeding," (iii) "consent[ed] to the

service of process out of any New York court," and (iv) agreed that "[t]his Agreement shall be

governed and enforced in accordance with the laws of New York."[36]

Banca Carige now argues that because the Trustee is not a party to the Subscription

Agreement and the claim asserted by the Trustee does not arise under the Subscription

Agreement, the Agreement does not provide a basis for jurisdiction here.  *See* Mot. at 13-14.

Banca Carige's argument misses the mark.  Although the Trustee's claims do not arise out of the

Subscription Agreement, the Subscription Agreement plainly "relates to" the Trustee's claims

and evidences a strong nexus with New York under the totality of circumstances.

Banca Carige's subscription into and redemption from Fairfield Sentry are two sides of

the same coin.  Banca Carige could not invest in Fairfield Sentry without executing a

subscription agreement.  In turn, the funds it received represented profits and principal from its

subscription based on Fairfield Sentry's investments with BLMIS.  Because Banca Carige's

Subscription Agreement was a necessary predicate to its receipt of customer property through

Fairfield Sentry, the Subscription Agreement is sufficiently related to the Trustee's claims to

---

[36] Guido Decl. Ex. 1 ¶¶ 16, 19.

recover that customer property from Banca Carige. *See Ford Motor Co.*, 141 S. Ct. at 1026 (rejecting a "strict causal relationship between the defendant's in-state activity and the litigation"); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir. 2013) (noting that the New York Court of Appeals "made clear that the 'arising from' prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury," but rather, "it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" (quoting *Licci*, 984 N.E.2d at 900)).

The forum selection and choice of law clauses are contacts with New York that support jurisdiction, even if the clauses do not independently establish jurisdiction based on Banca Carige's consent. For example, in *BLI*, this Court, without addressing the issue of whether defendants had consented to jurisdiction, found that the clauses in the subscription agreements "further evidence[d] the strong nexus with New York." 480 B.R. at 517 n.15. Similarly, in *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, the Bankruptcy Court held that, even if defendant did not consent to jurisdiction because of the New York forum and choice of law provisions, the provisions helped establish minimum contacts to support specific jurisdiction. 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (finding agreement provisions under New York law plus correspondent banking in New York evidenced a relationship "centered in New York").

Separately, the choice of law provision in the Subscription Agreement is a strong jurisdictional contact with a forum. "Although such a [choice of law] provision standing alone would be insufficient to confer jurisdiction . . . it reinforce[s] [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *See Burger*

*King*, 471 U.S. at 482; *see also Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir.

2004) ("A choice of law clause is a significant factor in a personal jurisdiction analysis because

the parties, by so choosing, invoke the benefits and protections of New York law."); *Chase*

*Manhattan Bank v. Banque Generale Du Commerce*, No. 96 CIV. 5184(KMW), 1997 WL

266968, at *2 (S.D.N.Y. May 20, 1997) ("[A] choice of law provision may constitute a

'significant contact' with the forum state" and "is relevant in determining whether a defendant

has purposefully availed itself of a particular forum's laws."). Here, Banca Carige clearly

availed itself of the laws of New York by signing the Subscription Agreement through which it

submitted to venue in New York, the jurisdiction of the New York courts, the service of process

out of the New York courts, and the application of New York law—all of which support the

Court's exercise of personal jurisdiction.

### C. The Exercise of Personal Jurisdiction Over Banca Carige Is Reasonable

Banca Carige fails to present a compelling reason why jurisdiction would be

unreasonable. "The reasonableness inquiry requires the court to determine whether the assertion

of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'

under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d

317, 331 (2d Cir. 2016). Where a plaintiff has made a threshold showing of minimum contacts,

a defendant must present "a compelling case that the presence of some other considerations

would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165 (quoting *Burger King*, 471 U.S.

at 477). Indeed, this Court has found that "it would be a 'rare' case where the defendant's

minimum contacts with the forum support the exercise of jurisdiction but it is unreasonable to

force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188.

This is not that "rare" case.  The burden on Banca Carige is minimal.[37]  *See Maxam*

*Absolute Return Fund*, 460 B.R. at 119 (finding New York counsel and "conveniences of

modern communication and transportation" minimize any such burden).  The United States has a

strong interest in applying U.S. law in the BLMIS liquidation.  *See id.*; *see also In re Picard*, 917

F.3d at 103 (noting "compelling interest in allowing domestic estates to recover fraudulently

transferred property").  And the Trustee has a strong interest in litigating in the United States.

*See Maxam Absolute Return Fund*, 460 B.R. at 119.  Accordingly, this Court's exercise of

jurisdiction over Banca Carige is more than reasonable.

### D.    At Minimum, the Trustee Is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not yet made a *prima facie* showing of jurisdiction,

the Trustee respectfully requests jurisdictional discovery.  Such discovery may be authorized

where a plaintiff has made "a threshold showing" that there is some basis for jurisdiction.  *Kiobel*

*v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618(KMW)(HBP), 2009 WL 3817590, at *4

(S.D.N.Y. Nov. 16, 2009).  The Trustee has shown how Banca Carige, *inter alia*, purposefully

invested with BLMIS through Fairfield Sentry and relied upon U.S. bank accounts to receive

BLMIS customer property.  *See supra* Part I.A-B.  At a minimum, these facts establish a

"threshold showing" of jurisdiction.  *Kiobel*, 2009 WL 3817590, at *6; *see also Ayyash v. Bank*

*Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at *6 (S.D.N.Y. Mar. 9, 2006) (granting

jurisdictional discovery because allegations of wire transfers through United States made a

"sufficient start" toward establishing jurisdiction); *Manhattan Life Ins. Co. v. A.J. Stratton*

---

[37] Banca Carige has availed itself of the New York court system in the past.  In April 2010, Banca Carige and two of its subsidiary insurance companies (Carige Vita Nuova S.p.A. and Carige Assicurazioni S.p.A.) sued Citigroup, Inc., Citigroup Global Markets, Inc., Citigroup Alternative Investments LLC, and Citigroup Financial Products, Inc. in federal court in Manhattan for breach of contract and in May 2010, the case was consolidated with related cases against Citigroup.  *See Banca Carige S.P.A. - Cassa di Risparmio di Genova e Imperia, et al. v. Citigroup, Inc., et al.*, No. 10-cv-03310-VM (S.D.N.Y. 2010).

*Syndicate (No. 782)*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990) (same).

## II.    THE TRUSTEE HAS SATISFIED HIS PLEADING BURDEN

### A.    The Trustee Has Sufficiently Alleged That the Initial Transfers Are Avoidable and Thus the Subsequent Transfer Is Recoverable

Banca Carige argues that the Trustee's Complaint fails to state a claim because of its improper incorporation by reference of a complaint in another adversary proceeding, thereby failing to demonstrate that there was an initial transfer that was void or voidable. *See* Mot. at 5, 18-24. This argument is unpersuasive and lacks merit. The Complaint sufficiently alleges the avoidability of the initial transfers received by Fairfield Sentry from BLMIS, as the Trustee has properly alleged Fairfield Sentry's actual knowledge of the fraud at BLMIS. *See Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *4. The Trustee has thus met his pleading burden under Section 550. Banca Carige's contentions regarding incorporation by reference under Fed. R. Civ. P. 10(c) and "short and plain statement" under Fed. R. Civ. P. 8 misconstrue the language and purpose of these rules and ignore the substance of the Trustee's allegations. There is no doubt that the Trustee has properly pleaded avoidability of the initial transfers from BLMIS to Fairfield Sentry. In any event, the Court may take judicial notice of its own decision on the avoidability of the initial transfers or allow the Trustee the opportunity to replead.

### 1.    The Incorporated Material Complies with Federal Rules of Civil Procedure 10 and 8

#### a.    All Adversary Proceedings Are Part of the Main Case for Purposes of Rule 10(c)

Rule 10(c), made applicable by Bankruptcy Rule 7010, allows the incorporation of other pleadings by reference. Rule 10(c) is intended to "facilitate pleadings that are 'short, concise, and free of unwarranted repetition,' as well as to promote 'convenience' in pleading." *Morrison v. Off. of the U.S. Tr. (In re Morrison)*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007) (quoting 5A

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d ("Wright & Miller") §

1326 (3d ed. 2007)).

Banca Carige asserts that the Trustee may not incorporate by reference the complaint in

the Trustee's action against the FGG defendants, which details the avoidability of the initial

transfers made by BLMIS to Fairfield Sentry.[38]  *See* 11 U.S.C. § 548(a)(1).  Banca Carige's main

support for this assertion is that courts in other contexts have declined to allow incorporation by

reference of pleadings in a different action.  *See* Mot. at 19-20.  In the bankruptcy context,

however, all matters under the umbrella of one liquidation are considered to be one proceeding

for purposes of Rule 10(c).  *Am. Casein Co. v. Geiger* (*In re Geiger*), 446 B.R. 670, 679 (Bankr.

E.D. Pa. 2010).  In *Geiger*, a bankruptcy court allowed incorporation by reference of the

pleadings in a different adversary proceeding within the same liquidation because the pleadings

"directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case."  *Id.*

This is so because the whole liquidation is "an umbrella under which all actions concerning [the]

estate must be brought pursuant to the Bankruptcy Rules."  *Id.*

Banca Carige criticizes *Geiger* but fails to acknowledge that the District Court in this

liquidation already has found sufficient the Trustee's incorporation by reference of initial

transferee complaints—including against Fairfield—in subsequent transfer actions.

> [The] Trustee's complaint against Standard Chartered Financial
> Services incorporates by reference the complaints against Kingate
> and Fairfield, including the allegations concerning the avoidability
> of the initial transfers, and further alleges the avoidability of these
> transfers outright. *See* Standard Chartered Compl. ¶¶43–46, 50–53.
> Thus, the avoidability of the transfers from Madoff Securities to
> Kingate and Fairfield is sufficiently pleaded for purposes of section
> 550(a).

---

[38] In each of the Trustee's subsequent transfer actions, he alleges that Fairfield Sentry received avoidable transfers of
customer property from BLMIS, that portions of those initial transfers were then transferred to subsequent
transferees, and that those amounts are now recoverable under 11 U.S.C. § 550(a).

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26, 36

(S.D.N.Y. 2013).  This decision is now law of the case.  *See In re Motors Liquidation Co.*, 590

B.R. 39, 62 (S.D.N.Y. 2018) (holding that "law of case doctrine," in which "a decision on an

issue of law made at one stage of a case becomes binding precedent to be followed in subsequent

stages," also "applies to different adversary proceedings filed within the same main bankruptcy

case").

> **b.    Incorporation Is Permitted Where It Achieves the Purpose of Rule 10(c)**

Even if the Court were to find that the adversary proceedings are not one action for

purposes of Rule 10(c), the Court still can permit incorporation by reference.  Contrary to Banca

Carige's insistence that a party cannot incorporate pleadings from other actions, Rule 10(c)

contains no such limitation.  The Southern District and other federal courts have permitted

wholesale incorporation by reference of separate actions in appropriate circumstances.  *See*

*Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007)

(interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another

pleading in the same action); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F.

Supp. 2d 191, 214 n.15 (D. Mass. 2012) (holding incorporation by reference of pleadings in

separate cases appropriate where "the court [was] familiar with the filings in the other [] case[],

which [were] substantially similar to [that] case, and the usual concerns about inferring

arguments from other submissions have less force").[39]

The Trustee references only one other document—an initial transfer complaint—and the

---

[39] The cases cited by Banca Carige, on the other hand, are inapposite in that allowing the incorporation in those contexts would have led to confusion and/or a lack of notice.  *See, e.g.*, *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461, 462 n.72 (E.D.N.Y. 2007); *Muth v. Dechert, Price & Rhoads*, 391 F. Supp. 935, 938 (E.D. Pa. 1975); *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa 1992).  No such issues exist here.

incorporation is explicit and straightforward, with its purpose obvious. *See* Wright & Miller § 1326 ("If the incorporation is clear, less emphasis need be placed on the source of the incorporated material."); *Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015) (noting that some courts fear incorporation by reference will not provide adequate notice as to claims or factual allegations, but allowing incorporation because "there is no danger of such prejudice"). Banca Carige cannot seriously argue that the Trustee's incorporation of the Fairfield Complaint renders the allegations confusing. Quite the opposite, reference to the Fairfield Complaint provides notice of avoidability of initial transfers in a manner that avoids repetition and over-complication. Courts have noted that "[t]he ability to incorporate matter from other pleadings is especially useful in multiparty litigation when the presence of common questions often results in the pleadings of the parties on the same side of the litigation being virtually identical, which makes employing simple incorporations by reference highly desirable." *Sherman*, 528 F. Supp. 2d at 323 n.5 (citing Wright & Miller § 1326); Wright & Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings.").

### c.    The Trustee's Allegations Are Sufficient Under Rule 8

Through the cases it cites, Banca Carige also suggests that the allegations that the initial transfers were avoidable may still fail under Rule 8(a)(2)'s requirement that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation must be simple, concise, and direct" under Rule 8(d)(1). *See* Mot. at 20, 22. Banca Carige, however, discounts the substance of the Complaint and the purpose of the incorporation: to make a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can recover from Banca Carige under Section 550(a). *See Citibank, N.A.*, 12 F.4th at 196-97.

28

Despite Banca Carige's protestations to the contrary, it should have no issues in responding to the entirety of the Complaint, which is simple, concise, and direct. The Trustee makes specific allegations regarding Banca Carige's liability under Section 550(a) throughout the Complaint, and only incorporates the Fairfield Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers. This places no undue burden on Banca Carige in responding to the claims against it, as it can either admit the substance of the avoidability of the initial transfers, deny them, or respond that it does not have sufficient information to admit or deny.

Doing as Banca Carige seems to suggest—repleading all initial transfer allegations—does nothing to provide a "short and plain statement" and would unnecessarily add countless pages to the Complaint. Such duplication is unnecessary in pleading recovery under Section 550, *see In re Madoff Sec.*, 501 B.R. at 36, and inconsistent with the purpose of Rule 8.

## 2.    The Court Can Take Judicial Notice of the Fairfield Decision

Banca Carige's arguments about incorporation are really much ado about nothing. Regardless of incorporation, this Court may take judicial notice of its holding that the Fairfield Complaint sufficiently alleged the avoidability of the initial transfers. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). This Court's decision finding that the Trustee sufficiently pleaded the avoidability of the initial transfers is thus subject to judicial notice. *See Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,

2021).[40]  This Court is permitted, and should, take judicial notice of its finding that the Trustee pleaded the avoidability of the transfers from BLMIS to Fairfield Sentry.

### 3.    At the Very Least, the Trustee Should Be Afforded the Opportunity to Replead

Should the Court accept Banca Carige's argument and not take judicial notice of the avoidability of the initial transfers at issue, the Trustee should be granted leave to replead.  Rule 15(a) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7015, provides that "[t]he court should freely give leave [to amend] when justice so requires."  The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."  *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).  As evidenced by the cases relied upon by Banca Carige, leave to replead extends to complaints that were dismissed for improperly incorporating other pleadings or motions by reference.  *See, e.g.*, *Geiger*, 446 B.R. at 683; *Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 483.  As the Supreme Court has noted, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Trustee should thus be afforded his chance to have his claims tested on the merits, and not on the basis of pleading technicalities.[41]

---

[40] The Court may also take judicial notice of the Trustee's amended complaint in that action filed after the Complaint here.  *See Rothman v. Gregor*, 220 F.3d 81, 91-92 (2d Cir. 2000).

[41] Should the Court determine that repleading is warranted here, the Complaint can be amended to address specific paragraphs of the Fairfield Complaint as necessary.

**B.    Banca Carige Misapprehends the Trustee's Pleading Burden Regarding the Receipt of BLMIS Customer Property**

**1.    The Trustee's Pleading Must Be Reviewed Under a Liberal Standard**

Banca Carige argues that the Trustee has failed to state a claim because the Complaint does not sufficiently allege that the $10,532,489 Banca Carige received from Fairfield Sentry on October 16, 2007 was a subsequent transfer of BLMIS customer property fraudulently transferred from BLMIS to Fairfield Sentry. *See* Mot. at 24. Specifically, Banca Carige suggests that the Trustee must identify the specific initial transfers of BLMIS customer property that were subsequently transferred to it. In other words, Banca Carige claims that the Trustee must tie the subsequent transfer it received to particular transfers from BLMIS to Fairfield Sentry. Because Banca Carige misapprehends the Trustee's pleading burden, this argument fails.

To plead a subsequent transfer claim under Section 550(a)(2), the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007); *accord Picard v. Est. of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 235 (Bankr. S.D.N.Y. 2011). "[A] complaint 'need only allege sufficient facts to show the relevant pathways through which the funds were transferred.'" *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019) (quoting *Picard v. Charles Ellerin Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at *2-3 (Bankr. S.D.N.Y. Mar. 14, 2012)). "To hold otherwise would be to place an onerous and undue burden on plaintiffs asserting these kinds of claims." *Id*.

While the burden to plead that the transfers comprise customer property is not onerous, the Trustee must still plead "the necessary vital statistics—the who, when, and how much" of the

purported transfers that defendant received. *Silverman*, 379 B.R. at 32. The Complaint outlines

the vital statistics in paragraphs 33-41 and Exhibits B and C. However, the pleading burden "is

not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue." *See,*

*e.g.*, *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 150 (Bankr.

S.D.N.Y. 2014) (quoting *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3). "[I]f dollar-

for-dollar accounting is not required at the proof stage, then surely it is not required at the

pleading stage either." *Silverman*, 379 B.R. at 30.

Banca Carige's reliance on this Court's decision in *Picard v. Shapiro* for its argument is

unavailing because *Shapiro* did not change the Trustee's pleading burden, but rather dismissed

the relevant claims based on a lack of any facts as to the subsequent transfers. In *Shapiro*, the

Trustee alleged that certain trusts and members of the Shapiro family received approximately

$54 million in fraudulent transfers from BLMIS, and "upon information and belief" these

defendants subsequently transferred this same amount to other defendants. *See Picard v.*

*Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 109, 119 (Bankr. S.D.N.Y.

2015). However, the complaint *did not detail any* of the necessary vital statistics of the

subsequent transfers. *See id*. at 119. There were no allegations regarding the subsequent

transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and

consequently this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id.*

Here, where the Trustee has alleged the vital statistics of the transfer Banca Carige received,

*Shapiro* supports denying the motion to dismiss.

Banca Carige's reliance on *Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R.

737 (Bankr. E.D.N.C. 2009) is also unpersuasive. In addition to being disfavored in many

jurisdictions, the heightened pleading standard applied in the *Caremerica* decision is irrelevant to

the case at hand.  *See, e.g.*, *Zucker v. Oconee Reg'l Healthcare Found., Inc. (In re Oconee Reg'l Health Sys., Inc.)*, 621 B.R. 64, 71-72 (Bankr. M.D. Ga. 2020) ("This heightened pleading standard for preference claims, as adopted by *Caremerica* and its progeny, is inconsistent with the liberal fair notice pleading standard of Federal Rule of Bankruptcy Procedure . . . 7008(a)(2), as well as the Supreme Court's assertion that 'a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations.'" (footnote omitted)); *Howell, III v. Fulford (In re S. Home & Ranch Supply, Inc.)*, No. 11-12755-WHD, Adv. No. 13-1043, 2013 WL 7393247, at *5 (Bankr. N.D. Ga. 2013) (referencing "*Caremerica* and its progeny, which has not been followed in this Circuit"); *Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re TOUSA, Inc.)*, 442 B.R. 852, 855–56 (Bankr. S.D. Fla. 2010) ("The pleading requirements of *Caremerica* require more than the standard promulgated in *Twombly* and *Iqbal* and the liberal pleading policy underlying the civil rules."). *Caremerica* involved preferential transfers from a non-debtor bank account where the trustee failed to "rebut the alternative and reasonable possibility that the funds . . . originated from sources other than the debtors." *In re Caremerica, Inc.*, 409 B.R. at 751.  As stated *supra*, the Trustee has no such issue and has identified specific transfers from BLMIS to Fairfield Sentry and from Fairfield Sentry to Banca Carige.

Moreover, this Court has repeatedly rejected similar tracing arguments raised by other subsequent transfer defendants in this liquidation.  *See, e.g.*, *Mayer*, 2021 WL 4994435, at *5 (finding the complaint alleged sufficient information regarding which subsequent transfers the Trustee is seeking to recover).  That it may appear difficult, or even unlikely, for a trustee to adequately trace the subsequent transfers is not grounds for dismissal at the pleading stage. *See Merkin*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *Gowan*

33

*v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, No. 08-15051 (SMB), Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

### 2. At the Pleading Stage, the Trustee Is Not Required to Detail What Portion of Each Subsequent Transfer Comprises Customer Property

In order to satisfy his pleading burden, the Trustee only needs to allege that at least part of the alleged transfers originated from BLMIS. *See 45 John Lofts, LLC*, 599 B.R. at 746-47 (rejecting defendant's argument "that Plaintiff generically, and without factual support alleged that every transfer out of" the initial transferee's commingled account was made with debtor property; the plaintiff is not required, at the pleading stage, "to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss" (cleaned up)). The Trustee is not required to specify in his pleading what portion of the transfers at issue comprise customer property. Similarly, the Trustee is not required to connect each subsequent transfer to an initial voidable transfer. *See Merkin*, 515 B.R. at 150, 152-53 (declining to dismiss Trustee's subsequent transfer claims even though he was unable to connect each subsequent transfer with an initial voidable transfer from BLMIS, while noting "at least some of the subsequent transfers . . . may be recoverable").

Banca Carige argues that the Complaint's allegation that Banca Carige's redemption from Fairfield Sentry consisted solely of BLMIS customer property is not plausible because Fairfield Sentry had sources of funds aside from BLMIS, the most obvious being subscription monies received from other investors. While the commingling of redemptions and subscriptions complicates the tracing of customer property from BLMIS, it is not fatal to the Trustee's subsequent transfer claim. *See Dahar v. Jackson (In re Jackson)*, 318 B.R. 5, 25 (Bankr. D.N.H.

34

2004) ("[T]he mere commingling of the Defendant's property with the proceeds of property fraudulently transferred by the Debtor is not sufficient to defeat tracing."); *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3 (finding that at the summary judgment stage, it is not necessary for the Trustee to specify what portion of the subsequent transfers, which were paid from commingled funds, were derived from BLMIS).  In fact, even "[w]here the assets fraudulently transferred no longer exist or cannot be found due to commingling, a money judgment may be entered in an amount up to the value of the fraudulently transferred assets against the parties who participated in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance."  *Henry v. Rizzolo*, No. 08-cv-00635, 2012 WL 4092604, at *7 (D. Nev. Sept. 17, 2012), *order clarified*, 2012 WL 4867725 (D. Nev. Oct. 12, 2012) (citing *Adelphia Recovery Tr. v. HSBC Bank USA (In re Adelphia Recovery Tr.)*, 634 F.3d 678, 693 (2d Cir. 2011)).[42]

In *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020), the initial transferee's account, in addition to holding debtor property, also included funds from unrelated investments and cash infusions from investors in such unrelated investments.  Apart from paying the performance and management fees that were the subject of the subsequent transfer claims at

---

[42]  The declaration of Banca Carige's counsel David J. Mark, which applies some undefined tracing methodology to contest the subsequent transfers in this proceeding, serves as nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016) (declining to consider expert testimony in a motion to dismiss); *see also Sass v. Barclays Bank PLC (In re Am. Home Mortg., Holdings, Inc.)*, 501 B.R. 44, 64 (Bankr. D. Del. 2013) (matters subject to factual and expert evidence are "inappropriate to decide on a motion to dismiss"); *Solution Tr. v. 2100 Grand LLC* (*In re AWTR Liquidation Inc.*), 548 B.R. 300, 334 (Bankr. C.D. Cal. 2016) (assessment of valuation that "almost certainly will require expert testimony" is inappropriate for a motion to dismiss); *In re Viropharma, Inc. Sec. Litig.*, No. CIV.A. 021627, 2003 WL 1824914, at *2 (E.D. Pa. Apr. 7, 2003) ("The [party's] submission of an expert report at [the motion to dismiss] stage is entirely improper."); *Nappier v. Pricewaterhouse Coopers LLP*, 227 F. Supp. 2d 263, 276 (D.N.J. 2002) (question regarding most applicable accounting practices is "a question of fact best addressed through expert testimony and thus inappropriate for resolution on a motion to dismiss").

issue, the funds in the commingled account were also applied to invest in other holdings, pay

expenses, and credit redeeming investors. *Id.* at *2. The court rejected defendant's summary

judgment argument that the subsequent transfer claims be dismissed merely because the initial

transferee may have paid the performance and management fees with non-debtor funds in a

commingled account. *Id.* at *4-5.

Because money is fungible, "[t]he goal of tracing is not to trace anything at all in many

cases, but rather [to] serve[] as an equitable substitute for the impossibility of specific

identification." *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *2-3 (quoting *United States*

*v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004)). "Courts have broad discretion to determine

which monies of comingled funds derive from fraudulent sources." *Id.* at *3 n.7 (citing

*Henshaw*, 388 F.3d at 741) ("There are several alternative methods, none of which is optimal for

all commingling cases; courts exercise case-specific judgment to select the method best suited to

achieve a fair and equitable result on the facts before them."); *see, e.g.*, *McHale v. Boulder Cap.*

*LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 78, 81 (Bankr. S.D.N.Y. 2010) (concluding that a pro

rata allocation of comingled fraudulent transfers was appropriate).[43]

Due to Fairfield Sentry's practice of netting subscriptions and redemptions, the aggregate

amount of the Trustee's subsequent claims across his adversary proceedings may even exceed

the amount of the initial transfers to which such subsequent transfers may be tied. Banca Carige

argues that, under some undefined tracing methodology, this renders the Trustee's subsequent

transfer claims "implausible," warranting dismissal at the pleading stage. But this Court has

---

[43] The Bankruptcy Court has recognized several different tracing methodologies offered by the Trustee in this liquidation, including: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediation Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality. These "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer from a commingled fund." *Picard v. Merkin (In re Bernard L. Madoff)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017).

already addressed this precise issue in declaring that while Section 550(d) limits the Trustee's

recovery to the amount avoided, "the aggregate subsequent transfer claim can greatly exceed the

amount of the initial transfer." *Merkin*, 515 B.R. at 149. This Court's reasoning is supported by

the case law.

The "Trustee enjoys considerable discretion as to which transferee recovery is sought

under § 550(a) [while] limited to a single satisfaction under § 550(d)." *Stiles v. Vaden (In re*

*Bechtold)*, No. 10-30013, Adv. No. 13-03046, 2014 WL 585304, at \*5 (Bankr. W.D.N.C. Feb.

14, 2014). This means "the [T]rustee can recover from *any combination* of [transferees]" up to

the amount avoided. *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr.

N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021) (emphasis added). And under Section

550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds,

*without the necessity for allocation among all the subsequent transferees*." *CNB Int'l Inc. v.*

*Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008) (emphasis added).

Thus, until single satisfaction of the avoided initial transfer is attained, the Trustee is permitted to

simultaneously seek recovery of subsequent transfers from Banca Carige in the instant

proceeding and from defendants in other adversary proceedings, in an aggregate amount that

exceeds any associated initial transfers.

Ultimately, the Court's "task here is to 'look beyond the particular transfers in question to

the entire circumstance of the transactions.'" *Southmark Corp. v. Schulte Roth & Zabel (In re*

*Southmark Corp.)*, 239 F.3d 365, 2000 WL 1741550, at \*5 (5th Cir. 2000), *as amended on reh'g*

(Dec. 11, 2000) (quoting *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d

1196, 1199 (11th Cir. 1988)). Banca Carige's arguments that Fairfield Sentry paid other

investors with the customer property it received from BLMIS prior to making the transfer to

37

Banca Carige is inappropriate for a motion to dismiss. The circumstances of the transfers, including the purposes of the transfers and the parties' intent, are relevant to equitable principles applied to tracing. *See In re Southmark Corp.*, 2000 WL 1741550, at *5 (affirming lower court's finding that a subsequent transfer was recoverable despite non-definitive tracing because the transferor's intent was to make the payment out of funds it received from the debtor). And as addressed *supra*, it is premature for Banca Carige to make tracing arguments at this stage of the litigation.

### 3. The Trustee, as an Outsider, Should Be Permitted to Obtain Discovery

Dismissal is unwarranted before the Trustee, an outsider to the transactions, has had an opportunity to conduct a more thorough investigation through discovery. "[I]n a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded" to him. *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

Courts have routinely recognized the unique position of an outsider trustee. In *Jalbert v. Zurich Am. Ins. Co. (In re Payton Constr. Corp.)*, the bankruptcy court opined that at the pleading stage, a trustee need only "give a time frame and specify the nature of the transfers" because "[h]e is an outsider to these transactions and will need discovery to identify the specific transactions by date, amount, and the manner in which they were effected." 399 B.R. 352, 365 (Bankr. D. Mass. 2009); *see also Enron Corp. v. Mass Mut. Life Ins. Co. (In re Enron Corp.)*, Nos. M-47 (GBD), 01-6034(AJG), 03-92677(AJG), 03-92682(AJG), 2007 WL 120458, at *7-8 (S.D.N.Y. Jan. 17, 2007) (affirming the bankruptcy court's denial of summary judgment *before discovery* because the "essential facts are within the control" of the defendant).

38

The Bankruptcy Court in this matter has ruled similarly in acknowledging the Trustee's

need for discovery in BLMIS proceedings.  *See Merkin*, 515 B.R. at 151 (denying dismissal even

where the Trustee could not trace all subsequent transfers back to BLMIS, in part because

subsequent transfers "must ultimately be proved through the books and records of the

defendants"); *Est. of Stanley Chais*, 445 B.R. at 236 (the question of whether defendants

"received [s]ubsequent [t]ransfers of BLMIS funds from one another is a question to which they,

and they alone, have the requisite information to respond"); *Picard v. Merkin (In re Bernard L.*

*Madoff Inv. Sec. LLC)*, 440 B.R. 243, 270 (Bankr. S.D.N.Y. 2010) ("Defendants presumably

have exclusive access to more detailed information regarding the proportion of their fees

attributable to their BLMIS investments, and discovery of such information is warranted on the

basis of the Trustee's allegations.").

Banca Carige alleges here that the Trustee has all the information he needs because he

has had access to Fairfield Sentry's books and records for over a decade, but this misstates the

reality of the situation.  Mot. at 25-26.  The Trustee does not have all of Fairfield Sentry's books

and records, and discovery in the Trustee's actions against the Fairfield management defendants

continues.  *See, e.g.*, Stipulated Case Management Order, *Picard v. Fairfield Inv. Fund Ltd. (In*

*re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF

No. 353 (setting November 2022 deadline for fact discovery and August 2023 deadline for

expert discovery).  Banca Carige also no doubt has records it can provide on these same

transactions.  Thus, the Trustee should be entitled to discovery before the Court even considers

dismissal of his subsequent transfer claims—claims that may be proved through the books and

records of Fairfield Sentry and Banca Carige.

39

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court deny Banca

Carige's Motion.

Dated: March 28, 2022
New York, New York

/s/ Brian W. Song

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Brian W. Song
bsong@bakerlaw.com
Ganesh Krishna
gkrishna@bakerlaw.com
Bari R. Nadworny
bnadworny@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*