**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 11-02149 (CGM) |
| v. | |
| BANQUE SYZ & CO., S.A., | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**BANQUE SYZ SA'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................3

I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.............................3

II.    BANQUE SYZ AND ITS INVESTMENTS IN BLMIS FEEDER FUNDS .....................4

III.   BANQUE SYZ DEPOSITED MONEY IN ITS CUSTOMER ACCOUNT WITH
       BLMIS ................................................................................................6

ARGUMENT ............................................................................................................7

I.     LEGAL STANDARD.............................................................................7

II.    THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE
      FAIRFIELD INITIAL TRANSFERS..........................................................8

III.   SECTION 546(e) DOES NOT APPLY TO BANQUE SYZ ..............................9

     A.    The Fairfield Funds Had Actual Knowledge of Madoff's Fraud ..........10

     B.    Banque Syz Is Precluded From Relitigating the Actual Knowledge
          Exception .................................................................................10

     C.    Banque Syz Is Precluded From Arguing That Section 546(e) Applies
          Independently to Recovery Actions................................................12

IV.  THE 550(b) GOOD FAITH DEFENSE IS AN AFFIRMATIVE DEFENSE AND
      INAPPROPRIATE AT THE MOTION TO DISMISS STAGE ........................15

V.   THE COMPLAINT STATES A VALID CAUSE OF ACTION FOR
      RECOVERY OF BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a) .........18

     A.    Banque Syz Misstates the Trustee's Pleading Burden...........................19

     B.    Banque Syz's Tracing Arguments Fail on a Motion to Dismiss ..........20

     C.    Banque Syz's Claims of Double Recovery Are Premature ..................22

VI.  THE COURT HAS PERSONAL JURISDICTION OVER BANQUE SYZ ..................22

     A.    Banque Syz's Contacts With New York Support Jurisdiction ..............24

i

1.     Banque Syz Submitted to This Court's Jurisdiction When it
       Opened a Customer Account at BLMIS and Filed a Customer
       Claim in the BLMIS Liquidation Proceeding............................................25

2.     Banque Syz Purposefully Availed Itself of the Laws and Privileges
       of New York by Conducting Business through Intentionally
       Investing in the BLMIS Feeder Funds......................................................29

       a.     BLI Establishes this Court's Jurisdiction Over Banque Syz.........30

       b.     Walden Does Not Save Banque Syz from this Court's
              Jurisdiction...................................................................................31

3.     Banque Syz's Purposeful Use of New York Bank Accounts
       Establishes Specific Personal Jurisdiction.................................................33

4.     Exercise of Personal Jurisdiction Over Banque Syz Is Reasonable..........36

B.     The Trustee is Entitled to Jurisdictional Discovery................................................37

VII.   THE COMPLAINT ADEQUATELY ALLEGES A CLAIM AGAINST
       BANQUE SYZ UNDER SECTION 502(d) FOR DISALLOWANCE OF THE
       CUSTOMER CLAIM...........................................................................................................38

CONCLUSION...............................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...............................................................................18, 19

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
   98 F.3d 25 (2d Cir. 1996) ...................................................................................................24

*Am. Casein Co. v. Geiger (In re Geiger)*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ..................................................................................8

*Arecibo Cmty. Health Care, Inc. v. Puerto Rico*,
   270 F.3d 17 (1st Cir. 2001) ................................................................................................25

*Ashcroft v. Iqbal*,
   556 U.S. 552 (2009) .............................................................................................................7

*In re Asia Global Crossing, Ltd.*,
   344 B.R. 247 (Bankr. S.D.N.Y. 2006) ...............................................................................39

*Ayyash v. Bank Al-Madina*,
   No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ....................................37

*Azora Bank Ltd. v. Sec. Inv. Prot. Corp.*,
   480 B.R. 117 (S.D.N.Y. 2012) ............................................................................................27

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................7

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229 (2d Cir. 2011) ...............................................................................................26

*In re Bernard L. Madoff Inv. Sec. LLC*,
   976 F.3d 184 (2d Cir. 2020) .................................................................................................8

*In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable
   Trust)*,
   773 F.3d 411 (2d Cir. 2014) .........................................................................................11, 13

*Burger King v. Rudzewicz*,
   471 U.S. 462 (1985) .................................................................................................23, 24, 32

*Campbell v. United States (In re Davis)*,
   889 F.2d 658 (5th Cir. 1989) ..............................................................................................38

*Cargo Partner AG v Albatrons, Inc.*,
  352 F.3d 41 (2d Cir. 2003)..................................................................................7

*In re China Fishery Grp. Ltd.*,
  No. 16-11895 (JLG), 2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017)..........................25

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010)..........................................................................23, 36

*Citibank, N.A. v. Picard*,
  142 S. Ct. 1209 (2022)..................................................................................4

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
  393 B.R. 306 (Bankr. W.D.N.Y. 2008) ...............................................................22

*Cromer Fin. Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001)..................................................................23

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)......................................................................................23

*DeMasi v. Benefico*,
  567 F. Supp. 2d 449 (S.D.N.Y. 2008)..................................................................9

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013)............................................................................22

*In re Dreier LLP*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...............................................................16

*Eldesouky v. Aziz*,
  No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ...............................34

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
  343 B.R. 75 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489
  (S.D.N.Y. 2008) .........................................................................................15

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
  651 F.3d 329 (2d Cir. 2011)...........................................................................13

*ESI, Inc. v. Coastal Corp.*,
  61 F. Supp. 2d 35 (S.D.N.Y. 1999) ...............................................................24, 25

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
  397 F.Supp.3d 323 (S.D.N.Y. 2019)..............................................................25, 36

*In re Fairfield Sentry Ltd.*,
  596 B.R. 275 (Bankr. S.D.N.Y. 2018)................................................................12

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   Adv. Pro. No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec.
   14, 2020) ....................................................................................................................10, 12

*Ferrari v. Cnty of Suffolk*,
   790 F. Supp. 2d 34 (E.D.N.Y. 2011) ..................................................................9

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
   141 S. Ct. 1017 (2021) ............................................................................28, 33, 35

*In re Gov't Secs. Corp.*,
   972 F.2d 328 (11th Cir. 1992) ............................................................................38

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
   dv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774 (Bankr.
   S.D.N.Y. Jan. 3, 2014) .......................................................................................22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ...........................................................................................32

*Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*,
   601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)...........................22

*Hill v. HSBC Bank plc*,
   207 F. Supp. 3d (S.D.N.Y. 2016) ..................................................................34, 35

*HSH Nordbank AG N.Y. Branch v. Street*,
   No. 11 Civ. 9405(DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)................................33

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..........................................................................................23, 24

*In re J.P. Jeanneret Assoc., Inc.*,
   2011 WL /335594 (S.D.N.Y. Jan. 31, 2011) ......................................................7

*Katchen v. Landy*,
   38 U.S. 323 (1966)..............................................................................................38

*Kelley v. Westford Special Situations Master Fund, L.P.*,
   No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) .......................20, 21

*Kelly–Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013)................................................................................15

*Kiobel v. Royal Dutch Petroleum Co.*,
   No. 02 Civ. 7618(KMW)(HBP), 2009 WL 3817590 (Nov. 16, 2009)....................................37

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  708 F.3d 422 (2d Cir. 2013)............................................................................26, 27

*Langenkamp v. Culp*,
  498 U.S. 42 (1990)......................................................................................................25

*Leema Enters., Inc. v. Willi*,
  575 F. Supp. 1533 (S.D.N.Y. 1983)...........................................................................34

*Licci v. Lebanese Can. Bank, SAL*,
  20 N.Y.3d 327 (N.Y. 2012) ........................................................................................35

*McGee v. Int'l Life Ins. Co.*,
  335 U.S. 220 (1957)....................................................................................................23

*McGowan v. Smith*,
  52 N.Y.2d 268 (1981) ..................................................................................................29

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)..........................................................................................24

*In re Mid Atlantic Fund, Inc.*,
  60 B.R. 604 (Bankr. S.D.N.Y. 1986) ..........................................................................38

*New Hampshire v. Maine*,
  532 U.S. 742 (2001).....................................................................................................10

*Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C. v. Bahrain
  Islamic Bank*,
  549 B.R. 56 (S.D.N.Y. 2016)......................................................................................35

*Picard v. Avellino*,
  557 B.R. 89 (Bankr. S.D.N.Y. 2016) ..........................................................................11

*Picard v. BNP Paribas S.A.*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018)..........................................................14, 34, 35, 37

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) ..........................................................30, 31, 35

*Picard v. Ceretti, et al.*,
  No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015)..........11

*Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*,
  Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
  S.D.N.Y. Mar. 14, 2012.)..............................................................................18, 20, 21

*Picard. v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d. Cir. 2021) .................................................................................4, 16, 17

*Picard v. Cohen*,
    Adv. Pro. No. 10-04311, 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ...................11

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ......................................................................20

*Picard v. Estate of Igoin (In re BLMIS)*,
    525 B.R. 871 (Bankr. S.D.N.Y. 2015) ......................................................................34

*Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.).*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ...................................................................23, 24

*Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.)*,
    No. 10-13164 (CGM), 2021 WL 1153005 (Bankr. S.D.N.Y. Mar. 25, 2021) .......................25

*Picard v. Fairfield Inv. Fund Ltd (In re BLMIS)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) ...................................................................................................... *passim*

*Picard v. JPMorgan Chase & Co.*,
    No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) .........................30

*Picard v. Magnify, Inc.*,
    583 B.R. 829 (Bankr. S.D.N.Y. 2018) ......................................................................11

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) ...............................................................23, 29, 37

*Picard v. Mayer*,
    No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) .......................19

*Picard v. Mendelow et al.*,
    560 B.R. 208 (Bankr. S.D.N.Y. Sept. 28, 2016) ..........................................................11

*Picard v. Merkin*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ............................................................... *passim*

*Picard v. Merkin (In re BLMIS)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ....................................................................7, 16

*Picard v. Merkin (In re BLMIS)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) ......................................................................21

*Picard v. Shapiro*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...............................................................11, 19, 20

*Picard v. Square One Fund Ltd.*,
  Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2018) .....................................................11

*In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
  917 F.3d 85 (2d Cir. 2019).........................................................................................12, 29, 37

*In re Refco Inc. Sec. Litig.*,
  No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) .............................10

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)........................................................................................................7

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000).........................................................................................................9

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010).....................................................................................................23

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  513 B.R. 437 (S.D.N.Y. 2014)..................................................................................................39

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015)......................................................................................11

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  597 B.R. 466 (Bankr. S.D.N.Y. 2019)......................................................................................39

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
  501 B.R. 26 (S.D.N.Y. 2013).................................................................................................8, 12

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
  596 B.R. 451 (S.D.N.Y. 2019)....................................................................................................8

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ................. *passim*

*Sec. Investor Protection v. Morgan, Kennedy & Co.*,
  533 F.2d 1314 (2d Cir. 1976)........................................................................................26, 27, 28

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
  379 B.R. 5 (Bankr. E.D.N.Y. 2007)....................................................................................18, 19

*In re Sledziejowski*,
  2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ..............................................................34

*SPV Osus Ltd. v. UBG AG*,
  882 F.3d 333 (2d Cir. 2018)................................................................................................34, 35

*In re SunEdison, Inc.*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ...................................................................14

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) .................................................................................................10

*To v. HSBC Holdings, plc*,
    No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ..............34, 35

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019) ....................................................................................24

*United States v. Henshaw*,
    388 F.3dd 738, 741 (10th Cir. 2004) .......................................................................21

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
    39 F. Supp. 3d 461 (S.D.N.Y. 2014) ........................................................................15

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...................................................................................31, 32, 33

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ....................................................................................36

**Statutes**

11 U.S.C. § 502(d) ...........................................................................................3, 38, 39

11 U.S.C. § 546(e) .................................................................................................. *passim*

11 U.S.C. § 548(a)(1)(A) .................................................................................9, 10, 12

11 U.S.C. § 550 ...............................................................................................1, 12, 13, 17

11 U.S.C. § 550(a) ...........................................................................................2, 8, 19, 22

11 U.S.C. § 550(a)(2) ................................................................................................18

11 U.S.C. § 550(b) ......................................................................................................2

11 U.S.C. § 550(d) ....................................................................................................22

15 U.S.C. § 78lll(2)(A) .............................................................................................26

**Rules**

Fed. R. Bankr. P. 7012 .................................................................................................7

Fed. R. Civ. P. 8(a)(2) ...............................................................................................7, 8

Fed. R. Civ. P. 10(c) ..................................................................................................8

Fed. R. Civ. P. 12(b)(2).............................................................................................1

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 7

N.Y. C.P.L.R. § 302(a)(1).......................................................................................33

x

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law and supporting declaration of Nicholas J. Cremona

("Cremona Decl."), in opposition to defendant Banque Syz SA's (the "Defendant" or "Banque

Syz") motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and

12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

This action seeks to recover over $15 million in subsequent transfers of stolen BLMIS

customer property that Banque Syz received from Fairfield Sentry Limited ("Sentry") and Fairfield

Sigma Limited ("Sigma," and together, the "Fairfield Funds").    For years, Banque Syz

purposefully invested in BLMIS through BLMIS feeder funds such as the Fairfield Funds, entities

expressly constituted to funnel investments to BLMIS in New York.    Nonetheless, Banque Syz

moves to dismiss the Trustee's Complaint, arguing that (i) the Trustee has failed to provide

sufficient notice of his claims, (ii) the safe harbor under Section 546(e) bars recovery, (iii) the

Complaint establishes Banque Syz's Section 550 good faith defense, (iv) Banque Syz did not

receive any transfers of customer property, (v) this Court does not have jurisdiction, and (vi) the

502(d) count should be dismissed and Banque Syz's customer claim allowed.    All of Banque Syz's

arguments fail.

The Trustee's Complaint provides a "short and plain statement" showing that the Trustee

is entitled to relief.    Banque Syz objects that the Trustee has violated Rule 8 of the Federal Rules

of Civil Procedure by incorporating by reference his complaint against the Fairfield Funds.[1]  This

argument conflicts with precedent from the District Court, and regardless, this Court may take

judicial notice of the complaint and its opinion in *Picard v. Fairfield Inv. Fund Ltd (In re BLMIS)*,

Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) (holding that

Trustee had plausibly alleged the Fairfield Funds' actual knowledge of fraud) ("*Fairfield Inv.*

*Fund*").

The Trustee has also plausibly alleged the avoidability of the initial transfers based on the

Fairfield Funds' actual knowledge of fraud, and therefore the safe harbor for securities payments

pursuant to securities contracts under Section 546(e) is inapplicable and does not bar recovery

from Banque Syz.  Banque Syz now argues that there is no actual knowledge exception and, in the

alternative, Banque Syz's knowledge as a subsequent transferee (and not the Fairfield Funds'

knowledge as initial transferees) should determine the avoidability of the initial transfers from

BLMIS.  These arguments conflict with the plain language of the statute and precedent in this

SIPA liquidation proceeding establishing that Section 546(e) does not independently safe harbor

the recovery of avoidable fraudulent transfers from a subsequent transferee.

Moreover, the Section 550(b) "good faith" defense available to subsequent transferees is a

fact-intensive affirmative defense that is premature and plainly inappropriate on a motion to

dismiss.

The Trustee has plausibly alleged that Banque Syz received customer property under

Section 550(a) by outlining the relevant pathways through which customer property was

transferred from BLMIS to the Fairfield Funds and subsequently to Banque Syz.  The Trustee has

---

[1] Since the time the Trustee filed his Complaint against Banque Syz, the Amended Complaint against the Fairfield defendants was superseded by the Second Amended Complaint.  *See* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer Banque Syz received.  At this stage of the litigation, nothing more is required.  In response, Banque Syz argues that the Trustee must show a dollar-for-dollar accounting at the pleading stage and argues that the Trustee's claims are implausible under a fact-based and undisclosed tracing methodology.  However, Banque Syz's arguments are plainly inappropriate on a motion to dismiss and run contrary to well established case law in this liquidation.

There is no question that this Court has personal jurisdiction over Banque Syz.  Banque Syz purposefully invested in the Fairfield Funds, knowing and intending that BLMIS in New York would be the *de facto* investment manager, broker dealer, and custodian of the Fairfield Funds' (and Banque Syz's) investments.  Banque Syz knew the Fairfield Funds fed substantially all of their funds into BLMIS and that BLMIS was essential to its investments.  Investing in BLMIS was the entire point.  These facts, plus the additional contacts discussed herein, and Banque Syz's filing of a customer claim separately and collectively establish jurisdiction.

Finally, the Trustee has plausibly alleged a claim against Banque Syz under Section 502(d) for disallowance of its customer claim.  Banque Syz opened a customer account with BLMIS and filed the customer claim on behalf of itself, not a third party, and is the appropriate customer for purposes of adjudicating its customer claim.  The Trustee has stated a claim for recovery of customer property received by Banque Syz, and therefore, disallowance of the Banque Syz customer claim is appropriate under Section 502(d).

The Trustee respectfully requests that the Court deny Banque Syz's Motion.

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008.  *See* Complaint ("Compl.") ¶ 25.  BLMIS had three principal business units: (i) a proprietary trading

business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market. *Id.* ¶¶ 26-27. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶ 30. On December 11, 2008, Madoff's fraud was publicly revealed and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 12.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created to funnel investors' funds into BLMIS. *See Picard. v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d. Cir. 2021), cert. denied sub nom. *Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ("*Citibank*"). Banque Syz knowingly invested in a number of these feeder funds, including the Fairfield Funds, Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (together, the "Kingate Funds"), and Rye Select Broad Mkt Fund, LP ("Tremont"). Compl. ¶ 6.

## II.    BANQUE SYZ AND ITS INVESTMENTS IN BLMIS FEEDER FUNDS

Banque Syz is a Swiss private bank and experienced investor in alternative investment products that has been a highly respected asset management specialist since 1996. Compl. ¶ 3. Banque Syz invested substantial sums with the Kingate Funds, the Fairfield Funds, and Tremont which in turn invested nearly all of their funds with BLMIS. *Id.* at ¶ 6.

The Fairfield Funds, including Fairfield Sentry, were controlled by the Fairfield Greenwich Group ("FGG" or "Fairfield"), a *de facto* partnership with its principal place of business in New York. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *9. Fairfield Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. *Picard v. Fairfield Sentry Limited,*

4

*et al.*, No. 08-01789 (CGM), Adv. Proc. No. 09-01239, ECF No. 23 (the "Fairfield Am. Compl.")

¶¶ 52, 318.

Investors in the Fairfield Funds were required to execute subscription agreements, in which

investors acknowledged their sophistication and that they had "such knowledge and experience in

financial and business matters that [they were] capable of evaluating the risks of this investment."

Cremona Decl., Ex. 1 at FJLVAA0000054 ¶ 8; Ex. 2 at FJLVAA0000043 ¶ 8.  The subscription

agreements also incorporated the Fairfield Funds' Private Placement Memorandums ("PPMs"),

and by signing, investors warranted that they "received and read a copy of the [PPMs]."  *Id.*, Ex. 1

at FJLVAA0000054 ¶ 7; Ex. 2 at FJLVAA0000043 ¶ 7.

The PPMs explicitly disclosed BLMIS's multiple roles as the *de facto* investment manager,

broker dealer, and custodian for the Fairfield Funds.   *Id.*, Ex. 3 at FGGSAC0016089,

FGGSAC0016094; Ex. 4 at SECSEV0763380.  The PPMs also disclosed how "[t]he services of

BLM[IS] and its personnel are essential to the continued operation of [Sentry], and its profitability,

if any."  *Id.*, Ex. 4 at SECSEV0763374; *see id.* Ex. 3 at FGGSAC0016095.  The PPMs specifically

informed investors that BLMIS—not the Fairfield Funds or their service providers—would have

custody of Sentry's assets in the United States and would execute the funds' purported investment

strategy.

Like all Fairfield Fund investors, Banque Syz agreed to send its subscription payment to

Sentry's HSBC Bank USA bank account in New York.   Cremona Decl., *Id.*, Ex. 1 at

FJLVAA0000052 ¶ 3; Ex. 2 at FJLVAA0000041 ¶ 3.  Banque Syz purposefully directed all six of

its Sentry subscription payments to the HSBC Bank USA New York bank account.  *Id.*, Exs. 5, 6.

That money was then deposited by Sentry into BLMIS's account at JPMorgan Chase Bank in New

York.  Fairfield Am. Compl. ¶ 35.  In addition, Banque Syz designated redemptions from Sentry

be deposited into a UBS AG bank account in New York in its own name.  Cremona Decl., Exs. 7,

8.  This UBS account in New York sent and received at least 25 payments to and from Sentry and

Kingate Global.  *See e.g., id*., Exs. 5 – 10.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against the

Fairfield Funds and related defendants to avoid and recover fraudulent transfers of customer

property in the amount of approximately $3 billion.  Compl. ¶ 64; *see also Picard v. Fairfield*

*Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.  In 2011, the

Trustee settled with the Fairfield Funds.[2]  As part of the settlement, Sentry consented to a judgment

in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate.  *Id.*  The Trustee

then commenced a number of adversary proceedings against defendants like Banque Syz to

recover the approximately $3 billion in missing customer property.

### III.    BANQUE SYZ DEPOSITED MONEY IN ITS CUSTOMER ACCOUNT WITH BLMIS

Banque Syz also opened a direct account with BLMIS on or about March 7, 2007,

designated account 1FR126 (the "Customer Account").  Compl. ¶ 24.  Banque Syz communicated

frequently with BLMIS regarding the Customer Account.  Cremona Decl., Ex. 11 at

AMF00078388 – 396, *412.  On March 2, 2009, Banque Syz submitted a customer claim to the

Trustee, assigned Claim No. 004677.  Compl. ¶ 83; Declaration of Richard Levin in Support of

Defendant's Motion to Dismiss the Complaint.  Ex. J, ECF No. 151-10; Cremona Decl., Ex. 12.

---

[2] *See* Form of Agreement Between the Trustee and Kenneth Krys and Joanna Lau, Solely in Their Respective
Capacities as the Foreign Representatives for and Joint Liquidators of Fairfield Sentry Limited, Fairfield Sigma
Limited and Fairfield Lambda Limited, Adv. Pro. No. 09-1239, Dkt. No. 69, Att. 2 (Ex. A).

**ARGUMENT**

## I.    **LEGAL STANDARD**

When considering motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure ("Rule"), applicable to an adversary proceeding under Fed. R. Bankr. P. 7012, "the

Court must liberally construe all claims, accept all factual allegations in the complaint as true, and

draw all reasonable inferences" in the Trustee's favor.  *In re J.P. Jenneret Assoc., Inc*., 2011 WL

/335594, at *8 (S.D.N.Y. Jan. 31, 2011) (citing *Cargo Partner AG v Albatrons, Inc*., 352 F.3d 41,

44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)).  To survive the motion to

dismiss, the pleading must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief."   Rule 8(a)(2).  The allegations need only meet the "plausibility"

standard, such that they "'nudge[] [the] claims' … 'across the line from conceivable to plausible.'"

*Ashcroft v. Iqbal*, 556 U.S. 552, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A claim is facially plausible where "the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citation omitted).

The Complaint here sets forth in full the elements of the Trustee's claims, pleading

Defendant's receipt of subsequent transfers of customer property, the grounds upon which the

Trustee seeks to recover such transfers made to Defendant, and the grounds upon which the Trustee

seeks to disallow a customer claim against the BLMIS estate.  Thus, dismissal of the Complaint at

this juncture is inappropriate.  *See Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 254-71, 273

(Bankr. S.D.N.Y. 2010).

## II.    THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE FAIRFIELD INITIAL TRANSFERS

Banque Syz argues that the Trustee's incorporation of the then-operative complaint against the Fairfield Funds violates Rule 8(a)(2)'s requirement to include a "short and plain statement" showing the Trustee is entitled to relief.  Motion at 13.  However, there is no doubt that the Trustee may incorporate the Fairfield complaint under Rule 10(c) to demonstrate the avoidability of the initial transfers from BLMIS.  *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation).

Banque Syz's argument conflicts with the District Court's prior opinion on whether under Section 550(a) the Trustee must avoid an initial transfer or plead its avoidability in a subsequent transfer action.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, 501 B.R. 26 (S.D.N.Y. 2013).  Holding that Section 550(a) only "requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action," *id*. at 29, the District Court found sufficient the Trustee's incorporation by reference of the then-operative Fairfield complaint:

> [The] Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. *See* Standard Chartered Compl. 1143–46, 50–53. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Id*. at 36.  And this decision is law of the case.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, 596 B.R. 451, 465 (S.D.N.Y. 2019), aff'd sub nom. *In re Bernard L. Madoff Inv. Sec. LLC*, 976 F.3d 184 (2d Cir. 2020).

In any case, Banque Syz's argument is much ado about nothing, because this Court may take judicial notice of the Fairfield complaint and its prior decision holding that the complaint

sufficiently alleges the avoidability of the initial transfers from BLMIS.  *See In re Bernard L. Madoff (Picard v. Fairfield Inv. Fund Ltd.)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021).  On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."  *Ferrari v. Cnty of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011).  "Included among such matters are decisions in prior lawsuits."  *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008).  Finally, the fact that the noticed complaint was filed after this Complaint against Banque Syz is of no moment.  *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (noticing later filed complaint in related proceeding).

The Trustee has complied with the Federal Rules in pleading the avoidability of the initial transfers, and regardless, this Court may take judicial notice of its opinion in *Fairfield Investment Fund*.  If this Court holds otherwise, the Trustee respectfully requests the opportunity to replead.

## III.    SECTION 546(E) DOES NOT APPLY TO BANQUE SYZ

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A).  *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added).  However, in *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the safe harbor, thereby allowing the Trustee to avoid transfers made prior to the two-year period.  No. 12-MC-115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*").  Banque Syz now argues that Section 546(e) bars the Trustee's claims, even though the Trustee has pled the initial transferee's actual knowledge.  As discussed below, this argument has already been rejected

in other adversary proceedings and is based on a tortured misreading of Section 546(e) and *Cohmad*.

## A.    The Fairfield Funds Had Actual Knowledge of Madoff's Fraud

Banque Syz sets forth the requirements of Section 546(e) and how they are supposedly met in this case with respect to the initial transfers from BLMIS; however, Banque Syz concedes this Court has previously found that the Trustee has sufficiently pled Sentry's actual knowledge of fraud.  Mot. at 23*; see also Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5.  As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers may be recovered from Banque Syz regardless of whether Sentry and Banque Syz qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.[3]

## B.    Banque Syz Is Precluded From Relitigating the Actual Knowledge Exception

Banque Syz is precluded from arguing that *Cohmad* is wrong and whether actual knowledge bars the application of Section 546(e).  *Cohmad* was issued following consolidated proceedings on the application of Section 546(e).  As Banque Syz concedes, *Cohmad* held that a party with actual knowledge of Madoff's fraud cannot claim the protections of Section 546(e).

---

[3] In addition, Banque Syz's argument that the Trustee is in privity with the Fairfield liquidators and is therefore bound by any rulings in the Fairfield liquidation is creative—but not persuasive.  *See* Motion 22, n.16.  The issue present in *In re Fairfield Sentry Ltd. (Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam)* ("*Fairfield III*") is plainly not relevant here— *Fairfield III* did not involve recovery of subsequent transfers under the Bankruptcy Code but rather specifically dealt with claims under the B.V.I. Insolvency Act. 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020).  In fact, the *Fairfield III* Court specifically held that the safe harbor under section 546(e) does not shield claims to avoid intentional fraudulent transfers under 11 U.S.C. § 548(a)(1)(A), which are the claims that give rise to the Trustee's right to recovery in the instant case.  2020 WL 7345988, at *8.  Further, Banque Syz cites no relevant authority for this argument because none exists.  Although *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) cites the elements of issue preclusion, the Court's holding did not involve nonparty preclusion but rather judicial estoppel, a doctrine distinct from issue preclusion.  And if *Taylor v. Sturgell*, 553 U.S. 880 (2008) "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties."  *In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

Mot. at 23 (quoting *Cohmad*, 2013 WL 1609154, at *7). The District Court then remanded to this

Court, and this Court has since applied the actual knowledge "exception" on numerous occasions.[4]

Banque Syz participated in the District Court proceedings.[5] Given its participation, Banque

Syz is bound by *Cohmad* as law of the case. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.*

*Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated

in the withdrawal of the reference of the antecedent debt/value issue have had their day in court

and Judge Rakoff's decisions are law of the case.").

Nor is the Second Circuit's decision in *Ida Fishman* an intervening change in controlling

law warranting reconsideration of *Cohmad*'s actual knowledge exception. *In re Bernard L. Madoff*

*Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida*

*Fishman*"). As this Court has recognized, *Ida Fishman* did not address the actual knowledge

exception. *See Picard v. Cohen*, Adv. Pro. No. 10-04311, 2016 WL 1695296, at *10 n.16 (Bankr.

S.D.N.Y. Apr. 25, 2016) ("The Court did not address the exception to the safe harbor regarding

those investors who had actual knowledge that BLMIS was not trading securities.").

---

[4] *See e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual knowledge exception); *Picard v. Square One Fund Ltd.*, Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2018) (same); *Picard v. Magnify, Inc.*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow et al.*, 560 B.R. 208 (Bankr. S.D.N.Y. Sept. 28, 2016) (same); *Picard v. Avellino*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Shapiro*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015) (same); *Picard v. Ceretti, et al.*, No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Picard v. Merkin*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) (same).

[5] *See Picard v. Banque Syz*, Adv. Pro. No. 11-02149, Motion to Withdraw the Reference, ECF No. 17 (Bankr. S.D.N.Y. filed Mar. 30, 2012) (raising Section 546(e) as a grounds for withdrawal); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 0115 (JSR), 546(e) Briefing Order, ECF No. 119 (S.D.N.Y. May 15, 2012) (listing *Picard v. Banque Syz & Co., SA*, No. 12-cv-02488-JSR in Exhibit A of the 546(e) Briefing Order); *id.*, Notice of Motion to Dismiss, ECF No. 256-1 (S.D.N.Y. July 27, 2012) (Banque Syz, listed among the "Financial Institution Defendants," moved to dismiss on Section 546(e) grounds); *id.*, Opinion and Order, ECF No. 460 (S.D.N.Y. Apr. 15, 2013) (Court directing of "what remains of the adversary proceedings listed in Exhibit A of item number 119 on the docket of 12 Misc. 115 [which includes Banque Syz] be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order.").

**C.      Banque Syz Is Precluded From Arguing That Section 546(e) Applies
Independently to Recovery Actions**

Banque Syz is wrong that the Trustee must allege that a subsequent transferee had actual

knowledge in order to render Section 546(e) inapplicable to recovery actions. Specifically, Banque

Syz argues that under *Cohmad*, its subscription agreement with Sentry may act as the relevant

"securities contract" in lieu of BLMIS's account agreement, and as such, in these Section 550

recovery actions, the court must look solely to Banque Syz's knowledge to determine whether the

initial transfer is avoidable.[6] But *Cohmad* does not stand for this proposition, and Banque Syz's

argument just repackages the previously rejected argument that the Section 546(e) safe harbor

should independently apply to actions under Section 550.

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not

the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("the trustee may

not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added). This

limitation to avoidance actions is consistent with the well-established principle that "'the concepts

of avoidance and recovery are separate and distinct.'" *In re Madoff Secs.,* 501 B.R. at 30 (citation

omitted). It is also consistent with the understanding that the Code's avoidance provisions protect

against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended

to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place."

*See In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* 917 F.3d 85, 98 (2d

Cir. 2019) (internal quotation marks omitted) ("*ET Decision*").

---

[6] As stated *supra* at p. 10, n.3, *Fairfield III* likewise does not support Banque Syz's position. *See* Mot. at 21, citing *Fairfield III*, 2020 WL 7345988, at *6–*7. That decision did not involve recovery of subsequent transfers under the Bankruptcy Code. Rather, the Court held that Section 546(e) barred the Fairfield funds' liquidators' claims for unfair preference and undervalue transactions under the B.V.I. Insolvency Act, which the Court analogized to avoidance provisions in the Bankruptcy Code. *See Fairfield III*, 2020 WL 7345988, at *5 (citing *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 302, 314 (Bankr. S.D.N.Y. 2018)). The *Fairfield III* decision is currently on appeal in the U.S. District Court. *See In re Fairfield Sentry Ltd.*, 19-CV-03911 (consolidated) (S.D.N.Y.) (Broderick, J.).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees.  The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[7]  However, in its decision, the District Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e).  *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added).   And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers.[8]  *See id.* at *9 ("[T]he question . . . is whether the Trustee has alleged that that *initial transfer* was made in connection with (*i.e.,* related to) a covered securities contract . . . .") (emphasis added).[9]

---

[7] *See In re Madoff Securities*, 12-MC-115, Section 546(e) Briefing Order, ECF No. 119 (S.D.N.Y. filed May 16, 2012) (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

[8] For this same reason, *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011), which the District Court cites in *Cohmad* solely to support its reading of what constitutes a "securities contract," does not change this outcome.  The focus is still on the initial transfers, which for purposes of Section 546(e), the Second Circuit has already determined, and it is now not debatable, are the transfers from BLMIS to its feeder funds.  *See Ida Fishman*, 773 F.3d at 422-23.

[9] Banque Syz contends that, by alleging that the subsequent transfers were customer property, the Trustee has conceded that the initial transfers were "in connection with" the subscription agreements with Banque Syz.  However, showing that the subsequent transfers can be traced through the "relevant pathways" is irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between the initial transferee Feeder Funds and the Defendant for purposes of application of the securities safe harbor.

Based on *Cohmad*, this Court held in *BNP* that Section 546(e) is applicable only to avoidance and not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See Picard v. BNP Paribas S.A.*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("*BNP*"); *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer").

Banque Syz tries to circumvent the foregoing limitations by arguing that in the Trustee's recovery actions, even for purposes of determining avoidance, the Court must look only to the knowledge of the subsequent transferee. Mot. at 23-24. But in *BNP*, this Court expressly rejected that argument, recognizing that it was a reiteration of the argument rejected in *Cohmad* that Section 546(e) should independently apply to recovery actions. *See BNP*, 594 B.R. at 196–97 (rejecting the argument that the Trustee must plead Defendant's actual knowledge to escape the application of Section 546(e) because trustees "do[] not, however, 'avoid' the subsequent transfer"). Based on *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee. *Id*. at 197. Banque Syz seeks to relitigate this point, arguing that to the extent this Court relies on Sentry's agreements as the relevant "securities agreements" in accordance with *Cohmad*, this Court must look to Banque Syz's actual knowledge. Mot. at 24. But the District Court did not conclude this, nor did it state that the actual knowledge exception should be applied any differently if the feeder fund agreements were to be used for Section 546(e). Indeed, such an interpretation would eliminate the point of the actual knowledge exception— which is to restrict transferees with actual knowledge of fraud from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff

Securities were not 'settlement payments.'").  Adopting Banque Syz's position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions to protect.  It would also allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry)—to place fraudulently transferred moneys with a subsequent transferee and out of the reach of a trustee.  *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

Expanding the safe harbor as Banque Syz proposes would also result in subsequent transferees being afforded more protection as to avoidance than the initial transferee itself, which does not reflect Congress' intent.  *See Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 82 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489 (S.D.N.Y. 2008) ("Upon consideration of the initial transferee's defenses and once the amount of its liability is established, that amount can be sought from any of the transferees, including subsequent transferees, subject to any of their additional defenses.").  Conversely, providing subsequent transferees with the same defenses to avoidance as available to the initial transferee does not unfairly bias subsequent transferees.

## IV.    THE 550(B) GOOD FAITH DEFENSE IS AN AFFIRMATIVE DEFENSE AND INAPPROPRIATE AT THE MOTION TO DISMISS STAGE

The Trustee urges this Court to reject Defendant's attempt to raise the "good faith" affirmative defense on a motion to dismiss.  By their very nature, affirmative defenses are fact driven, require a factual analysis, and a presentation of evidence. *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly–Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir.

15

2013)).  That sort of factual analysis is not appropriate at this stage of litigation, particularly with respect to a good faith defense.

Even if this Court were to consider Defendant's fact-intensive affirmative defense, there are myriad unknown facts critical to opposing a good faith defense and the Trustee must be given the opportunity to do so through discovery. *See e.g.*, *Merkin*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."); *In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the motion to dismiss stage.").  To get around the fact that the good faith pleading burden is no longer on the Trustee, Defendant makes an unsupportable argument that its good faith under the inquiry notice standard has been established as a matter of law on the face of the Complaint.  However, as recognized in *Merkin*, such an argument applies only as a "limited exception to the general rule" that good faith cannot be established on a motion to dismiss.  440 B.R. at 256.  To prevail under this limited exception, Defendant must show there is an "insuperable bar to securing relief" set forth on the face of the Complaint.  *Drier*, 452 B.R. at 426.

Defendant comes nowhere near meeting such a standard.  In *Citibank*, the Second Circuit Court of Appeals established a three-step factual inquiry to determine the good faith defense:

> First, a court must examine what facts the defendant knew; this is a subjective inquiry and not "a theory of constructive notice." Second, . . . whether these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the transferee's position to conduct further inquiry into . . . possible fraud. Third, once the court has determined that a transferee had been put on inquiry notice, the court must inquire whether "diligent

16

inquiry [by the transferee] would have discovered the fraudulent purpose" of the transfer.

*Citibank*, 12 F.4th at 191-92.

Defendant argues that based on (i) the Trustee's Fairfield complaint-related allegations and (ii) that since others did not discover the fraud, diligent inquiry by Defendant would have been futile. But this is pure conjecture, which can be easily disputed. The Defendant here is a sophisticated party who did its own investigations and diligence on investments—facts which by their nature will come to light during discovery. And in other cases, when it was the Trustee's burden to prove bad faith (based on the stricter willful blindness standard), the Trustee has sufficiently alleged the independent knowledge and bad faith of subsequent transferees. *See e.g.* *Citibank*, 12 F.4th at 182.

Banque Syz makes similar arguments as to knowledge of voidability and value, the other factually driven affirmative defenses available to subsequent transferees under Section 550. But these are also inappropriate for a final determination on a motion to dismiss barring highly unusual circumstances, which Defendant does not show exist here. *See e.g. Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (stating that "[w]hether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial" and finding in that case that value was not shown on the face of the complaint). Banque Syz identifies no allegations in the Complaint here that on their face satisfy either affirmative defense, and indeed this Court has previously concluded that "[a]s to whether the Defendants 'gave value' in the form of surrendering shares in the Fairfield Funds, such a determination cannot be made as a matter of law or fact at this stage." *Id*.

17

## V.   THE COMPLAINT STATES A VALID CAUSE OF ACTION FOR RECOVERY OF BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)

The Trustee's Complaint states a claim for recovery under Section 550(a)(2) by plausibly alleging that Banque Syz received subsequent transfers of BLMIS customer property.  To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "'that the funds at issue originated with the debtor.'"  *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) (citation omitted).  No tracing analysis is required, as the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue."  *Id.* (quoting *Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012.)).  Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]."  *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019).  In addition, the Trustee must allege "'the necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds."  *Merkin*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

The Trustee's Complaint meets these requirements.  The Complaint alleges that Banque Syz received transfers, identified by date and amount, from Sentry, and that Sentry invested substantially all of its funds with BLMIS.  Compl. ¶¶ 63-70, Exs. I, J, K.  The Complaint likewise alleges that Banque Syz received transfers, identified by date and amount, from Sigma, and that Sigma invested all of its funds with Sentry.  *Id.* ¶¶ 71-74, Exs. L & M.  Thus, the Complaint plausibly alleges that Banque Syz received subsequent transfers of customer property by (a) outlining the relevant pathway through which customer property was transferred from BLMIS to

the Fairfield Funds and subsequently to Banque Syz, and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Picard v. Mayer*, No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer "claim has not been plead with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").

### A.    Banque Syz Misstates the Trustee's Pleading Burden

Unable to argue that the Trustee fails to meet the relevant pleading burden, Banque Syz argues for a new one, asserting that the Trustee must tie each subsequent transfer Banque Syz received to a specific initial transfer from BLMIS. Mot. at 31. However, this Court previously rejected this argument in *Merkin*, where the Court refused to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150, *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Likewise, this Court has already rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises customer property. *See Merkin*, 515 B.R. 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also In re Allou Distribs., Inc.*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

Banque Syz's reliance on *Shapiro* is unavailing because *Shapiro* did not change the Trustee's pleading burden under Section 550(a). *See* Mot. at 30-31 (citing *Shapiro*, 542 B.R. at 119). In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information

and belief" these defendants subsequently transferred this same amount to other defendants.  *See*

*Shapiro*, 542 B.R. at 104, 119.  However, the complaint *did not detail any* of the necessary vital

statistics of the subsequent transfers.  *Id*. at 119.  There were no allegations regarding the

subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent

transfers, and consequently this Court granted defendants' motion to dismiss the subsequent

transfer claim.  *Id*.  Here, where the Trustee has alleged the vital statistics of each transfer Banque

Syz received, *Shapiro* supports denying the motion to dismiss.

**B.    Banque Syz's Tracing Arguments Fail on a Motion to Dismiss**

Banque Syz's other fact-based tracing arguments fare no better and are inappropriate for a

motion to dismiss.  First, Banque Syz implies the transfers it received from the Fairfield Funds

comprise subscriptions from other investors.  Mot. at 33.  In other words, Banque Syz argues that

Sentry commingled customer property with other funds, and this commingling will defeat the

Trustee's ability to trace the transfer of customer property from BLMIS.  Again, Banque Syz is

wrong.  "The law does not place such a difficult burden on trustees.  The commingling of legitimate

funds with funds transferred from the debtor does not defeat tracing." *Kelley v. Westford Special*

*Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020)

(citing *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *2).

Second, the Trustee is a stranger to the transactions between Sentry and Banque Syz and

is entitled to discovery on this issue.  *See* Mot. at 32.  "[I]n a case such as this one, where the

Trustee's lack of personal knowledge is compounded with complicated issues and transactions

[that] extend over lengthy periods of time, the trustee's handicap increases, and even greater

latitude should be afforded."  *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec.*

*LLC)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).  This is one reason why this Court

in *Merkin* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must

ultimately be proved through the books and records of the defendants." 515 B.R. at 151. And

even after fact discovery, expert opinion is necessary to determine what portion of the subsequent

transfer stemmed from the initial transfer where the subsequent transfers originated from

commingled accounts. *Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y.

2017); *see also Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because trustee

introduced expert report and associated documents from which a jury could infer that defendants

received subsequent transfers of customer property).[10]

      Banque Syz also argues that it could not have received any customer property because there

is "a large time gap between the Fairfield Initial Transfers and the transfers to Banque Syz." Mot.

at 33. However, Banque Syz does not disclose what tracing methodology or methodologies it

relies upon to reach this conclusion. And why not? Because it is for this Court to decide—after

fact and expert discovery—the appropriate tracing methodology under the circumstances. Tracing

arguments are inappropriate on a motion to discuss. *See Merkin*, 581 B.R. at 386 ("Court's

selection of an appropriate methodology is committed to the Court's discretion.") (citation

omitted); *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3, n.7 ("Courts have broad

discretion to determine which monies of commingled funds derive from fraudulent sources.")

(citing *United States v. Henshaw*, 388 F.3dd 738, 741 (10th Cir. 2004)). And while it might

ultimately prove more difficult for the Trustee to trace every subsequent transfer sought here, this

is not grounds for dismissal at the pleading stage. *See Merkin*, 515 B.R. at 152 (finding it

"premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to

---

[10] This Court should likewise reject Banque Syz's argument that the Trustee's claims should be dismissed because "the trustee has had *all* of the records of both BLMIS and Sentry." Mot. at 32. The Trustee does not have all of the Fairfield Funds' books and records, and discovery in the Trustee's actions against the Fairfield management defendants continues. *See, e.g., Picard v. Fairfield Inv. Fund (In re BLMIS)*, 09-01239 (CGM), ECF No. 353 (setting November 2022 for completion of fact discovery and August 2023 discovery deadline for expert discovery). Banque Syz also no doubt has records it can provide on these same transactions.

dismiss" merely because the tracing may prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at \*15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

### C.    Banque Syz's Claims of Double Recovery Are Premature

Finally, Banque Syz argues the Trustee's claims must be dismissed because the Trustee is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from BLMIS. Mot. at 33. There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a). 11 U.S.C. § 550(d). However, the Trustee "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021). And under § 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all the subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of the $3 billion in fraudulent transfers received by Sentry, he may simultaneously seek recovery from Banque Syz in this action and from defendants in other actions.

## VI.    THE COURT HAS PERSONAL JURISDICTION OVER BANQUE SYZ

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84–85 (finding "prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of

jurisdiction").  A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings.  *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).  These pleadings and affidavits are to be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor.  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Depending on the nature of a defendant's contacts with the forum, a court may exercise general or specific jurisdiction.  *See Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001).  Specific jurisdiction exists where the defendant purposely directs its activities into the forum and the underlying cause of action arises out of or relates to those activities.  *Picard v. Fairfield Greenwich Group* (*In re Fairfield Sentry Ltd.*)., 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (citing *Cromer*, 137 F. Supp. 2d at 473).[11]

The specific jurisdiction analysis is a two-step inquiry.  First, the court assesses whether the defendant purposefully established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).  "The defendant's activity need not have taken place within the forum, [citation omitted] and a single transaction with the forum will suffice."  *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)).  Moreover, minimum contacts may be found when a "'defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum.'"  *In re Fairfield Sentry*

---

[11] General jurisdiction is based on the defendant's general business contacts with the forum and permits a court to exercise jurisdiction where the claims are unrelated to those contacts.  *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).  Here, the Trustee's claims arise out of Banque Syz's specific contacts with the forum and a finding of general jurisdiction is unnecessary.

*Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d

Cir. 2019)).

Second, the Court conducts a "reasonableness" inquiry to determine that its exercise of

jurisdiction will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*,

326 U.S. at 320.  To determine whether jurisdiction is reasonable, courts consider the following

factors:

> (1) the burden that the exercise of jurisdiction will impose on the
> defendant; (2) the interests of the forum state in adjudicating the
> case; (3) the plaintiff's interest in obtaining convenient and effective
> relief; (4) the interstate judicial system's interest in obtaining the
> most effective resolution of the controversy; and (5) the shared
> interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citations omitted).

Where the plaintiff has alleged purposeful availment, however, the burden shifts to the defendant

to present a "compelling case" that jurisdiction would be unreasonable.  *In re Fairfield Sentry Ltd.*,

627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

In determining whether a defendant's forum contacts establish personal jurisdiction, the

Court must look at "the totality of the circumstances" rather than analyze each contact in isolation.

*See, e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996);

*ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 59 (S.D.N.Y. 1999) ("First, the Affiliates improperly

analyze each contact as if it were the defendant's sole contact (*i.e.*, 'standing alone, is insufficient'),

whereas we are directed by the Second Circuit to look at 'the totality of the circumstances.'")

(citation omitted).

### A.    Banque Syz's Contacts With New York Support Jurisdiction

Banque Syz had numerous contacts with New York that establish this Court's jurisdiction.

Banque Syz: (1) opened its Customer Account with BLMIS and filed a customer claim for asserted

24

losses related to that Customer Account on its own behalf; (2) invested in the Fairfield Funds, in other BLMIS feeder funds, and in BLMIS, which created a substantial relationship with New York; (3) purposefully availed itself of New York through its investments and actions of its corporate officers, including Eric Syz; and (4) used bank accounts in New York. *ESI, Inc.*, 61 F. Supp. 2d at 59 (finding that the aggregate of defendant's forum contacts was "qualitatively significant"). As discussed below, many of these contacts are sufficient in and of themselves to support jurisdiction. But at a minimum, the contacts in their totality plainly establish that Banque Syz purposefully directed its activities to New York. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F.Supp.3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.") (citations omitted).

### 1. Banque Syz Submitted to This Court's Jurisdiction When it Opened a Customer Account at BLMIS and Filed a Customer Claim in the BLMIS Liquidation Proceeding

A "defendant . . . [may] consent[] to jurisdiction by filing a proof of claim in the bankruptcy case." *Picard v. Fairfield Greenwich Group* (*In re Fairfield Sentry Ltd.*), No. 10-13164 (CGM), 2021 WL 1153005, at *13 (Bankr. S.D.N.Y. Mar. 25, 2021). Because "by filing a claim against a bankruptcy estate the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power," *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (internal quotation marks and citations omitted), "'the filing of a proof of claim waives an individual's due process right to insist on minimum contacts within the forum state before being subject to the court's jurisdiction.'" *In re China Fishery Grp. Ltd.*, No. 16-11895 (JLG), 2017 WL 3084397, at *6 (Bankr. S.D.N.Y. July 19, 2017) (quoting *Arecibo Cmty. Health Care, Inc. v. Puerto Rico*, 270 F.3d 17, 26 (1st Cir. 2001)). Here, Banque Syz first opened its Customer Account directly with BLMIS and then submitted a customer claim in the BLMIS

liquidation proceeding; in doing so they submitted to the jurisdiction of the U.S. Bankruptcy Court in New York.

Banque Syz now contends that it opened the Customer Account and filed the claim on behalf of a third-party entity known as Isos Fund Ltd. ("Isos"), and therefore is not subject to the jurisdiction of this Court.  Mot. at 38-39.  However, Banque Syz cites no case law in support of this contention.  Had Banque Syz applied the relevant law to the facts of this case, it would have had to confront the inconvenient truth, based on all available information, that Banque Syz is the appropriate customer for purposes of adjudicating Count Two of the Complaint (the "502(d) claim") and, as such, it consented to jurisdiction when it filed the customer claim for its Customer Account.

SIPA defines the term "customer" as:

> any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral, security, or for purposes of effecting transfer.

SIPA § 78lll(2)(A).  The Second Circuit has noted that the "critical aspect of the customer definition" is "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."  *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422, 426 (2d Cir. 2013) ("*Kruse*") (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 236 (2d Cir. 2011)).

To determine whether a claimant qualifies as a "customer," courts in the Second Circuit consider several factors articulated in *Sec. Investor Protection v. Morgan, Kennedy & Co.,* 533 F.2d 1314 (2d Cir. 1976) ("*Morgan Kennedy*").  In *Morgan Kennedy*, the Second Circuit held that a trust created under a profit-sharing plan, not the employee-beneficiaries of the trust, was a

"customer" under SIPA. *Id.* To reach this conclusion, the court examined the following factors

indicative of "customer" status:

> [1] Making purchases with, transacting business with, having
> dealings with, and being known by the broker-dealer; [2] Owning
> property held by the broker-dealer; [3] Having "exclusive power"
> over investment decisions made [with the broker-dealer]; [4] Having
> a legal capacity to have dealings with the broker-dealer; [5] Having
> securities accounts in one's name at the broker-dealer; and [6]
> Having a name that appears on the broker-dealer's books or records.

*See Azora Bank Ltd. v. Sec. Inv. Prot. Corp.*, 480 B.R. 117, 124 (S.D.N.Y. 2012) (applying the

*Morgan Kennedy* factors).

Here, applying the *Morgan Kennedy* factors as the Second Circuit has within this SIPA

liquidation proceeding demonstrates that Banque Syz is the customer of BLMIS, not Isos. First,

the Customer Account was opened and held in the name of Banque Syz, not Isos, and all customer

statements were sent to Banque Syz. Cremona Decl., Ex. 12. This is a factor weighing in favor

of Banque Syz as the customer as Banque Syz did not open the Customer Account on behalf of

Isos, but in its own name. *See Kruse,* 708 F.3d at 425 (affirming finding that investor in feeder

fund was not a customer where the feeder fund received account statements and trade

confirmations).

Second, it was Banque Syz, not Isos, that had a direct financial relationship with BLMIS.

The BLMIS account management file shows that BLMIS only communicated with Eric Syz and

other Banque Syz representatives regarding the Customer Account. *Supra* at p. 6. Banque Syz

representatives, not Isos, directed wire transfers into the Customer Account, asked questions

regarding the purported trades on the customer statements and trade confirmations (which were

addressed to Banque Syz), and signed all trading authorizations and agreements for the Customer

Account on Banque Syz's behalf. *See e.g.*, Cremona Decl., Exs. 11, 12. In the BLMIS customer

agreement for the Customer Account, Banque Syz represented that no other person or entity had

an interest in the Customer Account. *Id.*, Ex. 12 at MWPTAP00301396 – 398.

Only Banque Syz had the power to direct BLMIS's investment decisions regarding the

Customer Account. The customer file contains a list of Banque Syz employees with signatory

authority over the Customer Account, but not one Isos employee. *Id.*, Ex. 11 at AMF00078405 –

410. Additionally, only Banque Syz representatives communicated directly with BLMIS's

employees regarding the purported trades on the customer statements and trade confirmations, and

signed all trading authorizations and agreements for the Customer Account on Banque Syz's

behalf. Further, Banque Syz, not Isos, is the entity that signed all Customer Account-related

agreements and, therefore, only Banque Syz had the capacity to deal directly with BLMIS. *Id.*,

Ex. 12 at MWPTAP00301391 – 403. This is another factor that weighs in favor of Banque Syz as

the customer. *See Morgan Kennedy*, 533 F.2d at 1318 ("The argument that, notwithstanding their

complete anonymity and total incapacity to have dealings with the broker-debtor, the Reading

employees were "customers" of Morgan-Kennedy stretches that term wholly beyond its limits.").

Banque Syz's argument that the transfers the Trustee seeks to recover are not related to its

Customer Account with BLMIS is untenable. Mot. at 38; *see also Ford*, 141 S. Ct. at 1026-30.

The Complaint seeks the recovery of subsequent transfers that originated with BLMIS. That

Banque Syz also made direct investments with BLMIS in its Customer Account, strengthens its

ties to New York, BLMIS, and this SIPA liquidation proceeding in which it filed a customer claim.

Despite Defendant's assertions to the contrary, *see* Mot. at 38, the fact that the first subsequent

transfer predated the opening of the BLMIS Customer Account does not preclude the Customer

Account opening from being considered as a jurisdictional contact.[12]

### 2. Banque Syz Purposefully Availed Itself of the Laws and Privileges of New York by Conducting Business through Intentionally Investing in the BLMIS Feeder Funds

Even if Banque Syz is not subject this Court's jurisdiction based on its filing of its customer claim—which it is—Banque Syz's intentional investment with BLMIS through known BLMIS feeder funds alone establishes personal jurisdiction over Banque Syz. Regardless of Banque Syz's other New York contacts that support this Court's assertion of personal jurisdiction, Banque Syz's deliberate targeting of BLMIS and the New York securities market—through entities expressly constituted for that purpose—is dispositive.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *ET Decision,* 917 F.3d at 105; *see also Maxam Absolute Return Fund*, 460 B.R. at 116–20 (finding jurisdiction where defendant knew and intended that funds invested with BLMIS feeder fund would be sent to New York for investment by BLMIS in New York). Indeed, by executing the subscription agreements and affirming that it received and read Sentry's PPM, Banque Syz knew that: (i) Sentry invested at least 95% of its assets with BLMIS, and Sigma invested substantially all of its assets in Sentry; (ii) BLMIS performed all investment management duties for these assets; (iii) BLMIS was registered with the U.S. Securities and Exchange Commission (the "SEC"); (iv) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (v) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S.

---

[12] Further, Defendant's reliance on *McGowan v. Smith* is misplaced because there, the Court held that a trip to New York for "general marketing research" did not "bear a substantial relationship to the transaction of which the instant action arose." 52 N.Y.2d 268, 272 (1981). That fact pattern is not akin to the present case, where Banque Syz invested both directly with BLMIS and indirectly through the Fairfield Funds.

treasury bills; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of Sentry's investments with BLMIS; and (viii) BLMIS was "essential to the continued operation of" Sentry. *See* Cremona Decl., Exs. 1 – 4.

      a.        **BLI Establishes this Court's Jurisdiction Over Banque Syz**

Based on the reality of the Fairfield Funds' investment structure, this Court has already concluded that Fairfield Funds investors like Banque Syz are subject to personal jurisdiction in *Picard v. Bureau of Labor Ins. (In re BLMIS),* 480 B.R. 501, 516-518 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*"). There, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Fairfield Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *BLI*, 480 B.R. at 506. There, as here, the subsequent transferee was provided with identical PPMs and executed identical subscription agreements establishing the investment's BLMIS-centric purpose. *Id.* at 507-08. And there, as here, the subsequent transferee argued that the foreseeability of its investment "ending up" in a BLMIS account was insufficient to support personal jurisdiction. *BLI*, 480 B.R. at 517. Not only did the Court reject this argument, Judge Lifland called it "disingenuous," explaining that:

> BLI's investments in Fairfield Sentry did not merely "end up" in an account at BLMIS as a result of happenstance or coincidence. Rather, BLI purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market.

*Id.* at 517; *see also Picard v. JPMorgan Chase & Co.*, No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation proceeding have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments

from BLMIS as an initial transferee or subsequent transferee of those initial transfers were subject to the Court's personal jurisdiction").  As framed by this Court, "BLI intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom."  *BLI*, 480 B.R. at 506.

Because Banque Syz is identically situated to the defendant in *BLI* with respect to the fundamental purpose of the investment, *BLI* is controlling and resolves Banque Syz's personal jurisdiction defense without the need for inquiry into its additional New York contacts.  In fact, the evidence that Banque Syz purposefully targeted the New York securities market is considerably stronger here because—in addition to opening the Customer Account with BLMIS— Banque Syz invested in two other BLMIS feeder funds—Kingate and Tremont—all similarly constituted to feed foreign investments directly to BLMIS.  *See supra* at p. 4.

> **b.    Walden Does Not Save Banque Syz from this Court's Jurisdiction**

In an effort to sidestep this Court's *BLI* decision—curiously absent from the Motion— Defendant instead relies upon a stark misreading of *Walden v. Fiore*, 571 U.S. 277 (2014).  Mot. at 35-37.  In fact, *Walden* has no application here.  *Walden* was based on a fairly unremarkable application of the "effects test," which is used to assess intentional tort cases and focuses on injuries arising within a forum state based on tortious activity outside that forum.  Using that test, the court found easily that a Georgia police officer could not be sued in Nevada for an unlawful seizure of money in Georgia merely because he knew the plaintiffs resided in Nevada.  *Walden*, 571 U.S. at 288-91.  *Walden* simply reaffirms the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state.  *See id.* at 284 ("'[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to

justify an assertion of jurisdiction'") (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).  Although it was foreseeable that the unlawful seizure would harm plaintiffs in their home state of Nevada, the Court found that the defendant's conduct neither occurred in nor was directed toward Nevada. *Id.* at 288-91.  Rather, the harm occurred in Nevada solely because of plaintiffs' unilateral decision to be in Nevada when they desired to use the seized funds. *Id.* at 290.

By contrast, here, the Trustee is not alleging foreseeability as to the situs of an injury. Rather, as in *BLI*, the Trustee is alleging, as detailed *supra* at p. 29, that Defendant purposefully availed itself of the benefits and laws pertaining to investing in the United States.  As demonstrated by the Fairfield Funds offering materials and subscription agreements, the Fairfield Funds' express purpose was to pool funds and funnel them to BLMIS in New York for investment in the United States securities markets.  *See, e.g.*, Compl. at ¶ 6; Cremona Decl. Exs. 1-4.  Armed with this knowledge, Defendant made a conscious decision to invest in the Fairfield Funds precisely so that it could reap the rewards of investing with BLMIS in New York.  *Id.*  A finding of personal jurisdiction on the basis of such purposeful actions directed at a New York broker-dealer and the United States securities markets centered in New York comports with the traditional notions of fair play and substantial justice.  *See Burger King*, 471 U.S. at 471-74 (noting that due process concerns are satisfied when an out-of-state defendant purposely directs his activities at residents of the forum state and purposely benefits from those activities).  In short, there is nothing in *Walden* that precludes jurisdiction here, or that questions, limits, or otherwise has any bearing on the holding in *BLI*.

Defendant also misinterprets *Walden* to the extent it argues, in effect, that Defendant's connections to the forum must be viewed in a vacuum as opposed to being based on its

relationships with BLMIS and its feeder funds. *Walden* recognized that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." *Walden*, 571 U.S. at 286; *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1031-32 (2021) (rejecting defendant's contention that *Walden* "shows that a plaintiff's residence and place of injury can never support jurisdiction" and pointing out that "[t]hose places still may be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit").

Accordingly, this Court should reaffirm *BLI* and hold that Banque Syz's purposeful targeting of New York and its laws by intentionally investing with BLMIS through the Fairfield Funds alone establishes personal jurisdiction.

### 3. Banque Syz's Purposeful Use of New York Bank Accounts Establishes Specific Personal Jurisdiction

In addition, this Court has jurisdiction over Banque Syz because it purposefully used the New York banking system to subscribe into and redeem from Sentry. In its subscription agreements and redemption documents with Sentry, Banque Syz designated a UBS AG bank account in New York, New York through which it sent and received payments from Sentry. Cremona Decl., Exs. 1, 2, 7, 8. In addition, Banque Syz sent and received payments to and from Sentry's New York correspondent bank account at HSBC Bank USA in accordance with Sentry's subscription agreement. *Id.*, Exs. 5, 6. The use of New York bank accounts to conduct significant and repeated transfers of funds is sufficient in and of itself to establish personal jurisdiction, under either the due process analysis or the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(1).[13]

---

[13] Certain cases discussed herein address jurisdiction under New York's long-arm statute. Due to the close overlap between the requirements of due process and the New York long-arm statute, courts engaging in a due process analysis frequently cite long-arm cases. *See, e.g., HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405(DLC), 2012 WL 2921875, at *4 n.3 (S.D.N.Y. July 18, 2012) (noting "the personal jurisdiction analysis under § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous" (citations omitted)).

*See, e.g.*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding defendant subject to jurisdiction under New York long-arm statute based solely on its use of a New York account to receive payment at issue). In this liquidation specifically, this Court has found jurisdiction where initial and subsequent transferee defendants received the transfers at issue out of, and made the underlying BLMIS or BLMIS feeder fund investments into, U.S. bank accounts. *See BNP*, 594 B.R. at 191 (finding jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder fund's New York bank account); *Picard v. Estate of Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (finding jurisdiction over initial transferee defendants who received transfers from BLMIS's New York bank account).

Banque Syz argues that "mere maintenance" of a U.S. bank account and the "knowing receipt of funds" through the Customer Account does not establish personal jurisdiction. Mot. at 38. However, the cases that Banque Syz cites are distinguishable on their facts. *In re Sledziejowski*, 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016) (finding transfer of funds by third party from United States to Poland in connection with loan agreement was not a contact relevant to specific jurisdiction analysis because the transfer was not made by defendant); *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983) (finding that correspondent bank accounts were "unrelated to the fraud alleged"). Banque Syz also argues that because its use of New York banks was "incidental to foreign investment contracts that were negotiated and performed entirely abroad" they do not create the necessary minimum contacts. Mot. at 38.

Banque Syz's reliance on a trio of cases asserting common law claims brought against fund service providers is equally unavailing. *See* Mot. at 35, 38 (citing *SPV Osus Ltd. v. UBG AG*, 882 F.3d 333 (2d Cir. 2018); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016); *To v. HSBC*

*Holdings, plc*, No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)).  Unlike here,

these cases all involve correspondent accounts, and in any event, this Court has already determined

that this line of cases is not relevant to the Trustee's actions against defendants like Banque Syz

who invested in BLMIS's feeder funds.  *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the

issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont

Funds which arose from their New York contacts with the Tremont Funds.").  This is not a dispute

between two parties about services owed under a foreign contract, like the breach of fiduciary duty

and other claims in *SPV*,[14] *Hill*, and *To*.  This action is brought by a U.S. Trustee to recover

fraudulent transfers from an investor whose transfers of funds to and from U.S. correspondent

accounts evidence an intent to direct activity towards the U.S. securities markets.  *See BLI*, 480

B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated

by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and

the '*raison d'etre*' of the Agreement between BLI and Fairfield Sentry.") (emphasis in original).

The analysis is no different as relates to Banque Syz's use of the HSBC USA Account,

simply because it is a correspondent account.  In the leading case of *Licci v. Lebanese Can. Bank,

SAL*, the New York Court of Appeals held that a defendant's use of a correspondent bank account

in New York supports a finding of jurisdiction "even if no other contacts between the defendant

and New York can be established" provided that such use was "purposeful."  20 N.Y.3d 327, 338

(N.Y. 2012); *see also Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C. v. Bahrain

Islamic Bank*, 549 B.R. 56, 67–69 (S.D.N.Y. 2016) (finding jurisdiction over defendants based on

---

[14] Banque Syz's reliance on *SPV*, which found no specific jurisdiction because plaintiff's injury was not caused by defendants' contacts, is suspect following the Supreme Court's decision in *Ford Motor Co.*, which held that causation is not a prerequisite for jurisdiction.  141 S. Ct. at 1026–30.

designation and use of New York correspondent accounts to receive transfers). What matters is that the use was "purposeful," and not coincidental or passive.

Similarly, it does not matter that the HSBC USA Account was Sentry's account, because Banque Syz agreed to use it. *See Esso Exploration*, 397 F.Supp.3d at 346 ("[T]he point is not whether [defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute.").

Defendant's repeated, systematic, and purposeful use of New York bank accounts to direct funds to BLMIS through Sentry is sufficient to establish minimum contacts with the United States, specifically New York. Furthermore, the very transfers that the Trustee seeks to recover are those that Defendant deposited into and received from bank accounts located in New York, thereby meeting the second prong of the New York long-arm statute. Thus, the Trustee has demonstrated this court has specific personal jurisdiction over the Defendant and, as a result, the Motion should be denied.

### 4.   Exercise of Personal Jurisdiction Over Banque Syz Is Reasonable

Banque Syz fails to present a compelling reason why jurisdiction would be unreasonable. "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165. Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted).

This is not that "rare" case. The burden on Banque Syz is minimal. *See Maxam Absolute Return Fund, L.P.*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). The United States has a strong interest in applying U.S. law in the BLMIS liquidation. *See id.*; *see also ET Decision*, 917 F.3d at 103 (noting "compelling interest in allowing domestic estates to recover fraudulently transferred property"). And the Trustee has a strong interest in litigating in the United States. *See Maxam Absolute Return Fund, L.P.*, 460 B.R. at 119. Accordingly, this Court's exercise of jurisdiction over Banque Syz is more than reasonable.

### B.     The Trustee is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery. "Such discovery may be authorized where a plaintiff has made 'a threshold showing' that there is some basis for the assertion of jurisdiction." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618(KMW)(HBP), 2009 WL 3817590, at *4 (Nov. 16, 2009). The Trustee has shown how Banque Syz purposefully invested with BLMIS in New York through BLMIS's feeder funds, made direct investments in BLMIS, filed a customer claim with the Trustee, relied upon U.S. bank accounts to receive BLMIS customer property, and Banque Syz communicated frequently with BLMIS regarding the Customer Account. *Supra* at pp. 4-5. At a minimum, these facts establish a "threshold showing" of jurisdiction. *Id.* at *6; *see also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at *6 (S.D.N.Y. Mar. 9, 2006) (granting jurisdictional discovery because allegations of wire transfers through United States made a "sufficient start" toward establishing jurisdiction).

## VII.    THE COMPLAINT ADEQUATELY ALLEGES A CLAIM AGAINST BANQUE SYZ UNDER SECTION 502(D) FOR DISALLOWANCE OF THE CUSTOMER CLAIM

In addition to its claim for recovery of subsequent transfers, the Trustee has also alleged a claim against Banque Syz under Section 502(d) for disallowance of the customer claim.  Section 502(d) of the Bankruptcy Code, 11 U.S.C. § 502(d) provides:

> [T]he court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

Integral to time-honored principles associated with the claims allowance process, Section 502(d) conditions the allowance of a claim held by a recipient of an avoidable transfer upon the transferee's surrender of the preferential or fraudulent transfer to the trustee.   11 U.S.C. § 502(d); *see Katchen v. Landy*, 38 U.S. 323, 331 (1966) (upholding bankruptcy court's summary jurisdiction over a claim objection pursuant to section 57g of the Bankruptcy Act (predecessor to Section 502(d) of the Bankruptcy Code) on the basis that the claimant had received a voidable transfer that had not been returned to the trustee); *see also Campbell v. United States (In re Davis)*, 889 F.2d 658, 662 (5th Cir. 1989) ("Bankruptcy is the area most likely to require a right to postpone payment until final adjudication of liability[.]").

The goal in a SIPA liquidation proceeding is to create more, not fewer, assets available for customers of brokerage firms in financial distress.  *In re Gov't Secs. Corp.*, 972 F.2d 328, 331 (11th Cir. 1992).  By its terms, Section 502(d) accomplishes this goal by providing that the claim of a transferee of an avoidable transfer against the estate is withheld, assuming no other deficiencies with the claim, until the avoidable transfer is returned to the estate.  *See e.g., In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 609 (Bankr. S.D.N.Y. 1986) (explaining that "[t]he purpose of

Code § 502(d) is to preclude entities which have received voidable transfers from sharing in the distribution of the assets of the estate unless and until the voidable transfer has been returned to the estate."). Thus, Section 502(d) is consistent with SIPA by serving the fundamental purpose of preserving and maximizing estate assets available for distribution to creditors holding allowed claims on a ratable basis. *In re Asia Global Crossing, Ltd.*, 344 B.R. 247, 255 (Bankr. S.D.N.Y. 2006) (explaining that the statutory construction of section 502(d) "is consistent with the overarching principle of equality of distribution . . . ."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 437, 445–46 (S.D.N.Y. 2014) ("In sum, the Court concludes that there is no irreconcilable conflict between section 502(d) of the Bankruptcy Code and SIPA such that section 502(d) should not apply to SIPA liquidation proceedings."). Banque Syz argues that the Trustee's Section 502(d) claim should be dismissed, and the customer claim allowed, because the claim was filed on behalf of Isos and not the Defendant. However, as demonstrated above, Banque Syz opened the Customer Account for itself with BLMIS, filed the customer claim in this SIPA liquidation proceeding on its behalf, and is the appropriate customer for purposes of adjudicating the customer claim. It was Banque Syz that had a direct financial relationship with BLMIS, directed transfers of funds to BLMIS, owned the bank account from which those funds were transferred, communicated with BLMIS, and had the power to direct BLMIS's investment decisions and the capacity to deal directly with BLMIS. The Customer Account was opened and held in Banque Syz's name. For all of these reasons, Banque Syz's motion to dismiss Count Two should be denied and the customer claim should be disallowed pursuant to Section 502(d).[15]

---

[15] While the Trustee's has adequately pleaded Count Two of the Complaint out of an abundance of caution, in any event, Section 502(d) applies to the customer claim by operation of law and unless, and until, Banque Syz repays its liability to the BLMIS estate, the customer claim *shall* be automatically disallowed pursuant to Section 502(d). *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 597 B.R. 466, 475–76 (Bankr. S.D.N.Y. 2019) (finding Section 502(d) mandates the disallowance of any claim filed by a creditor that received a fraudulent transfer unless and until the creditor restores the transferred property or its value to the estate).

Banque Syz also argues that the Trustee has failed to state a claim "that Banque Syz is liable to pay or turn over any property." Mot. at 40. However, for all the reasons stated above, the Trustee has adequately stated a claim for the recovery of avoidable transfers of customer property received by Banque Syz, and therefore, disallowance of the customer claim filed by Banque Syz is appropriate.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests the Court deny Banque Syz's Motion.

Dated: March 29, 2022
New York, New York

/s/ Nicholas J. Cremona
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Robyn M. Feldstein
Email: rfeldstein@bakerlaw.com
Alexa T. Bordner
Email: abordner@bakerlaw.com
Jessica A. Huse
Email: jhuse@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Chapter 7 Estate of Bernard L. Madoff*