UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　　Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>LEGACY CAPITAL LTD.,<br><br>　　　　　　　　Defendant. | Adv. Pro. No. 10-05286 (CGM) |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>RAFAEL MAYER, et al.,<br><br>　　　　　　　　Defendants. | Adv. Pro. No. 20-01316 (CGM) |

**TRUSTEE'S REPLY IN FURTHER SUPPORT OF MOTION TO CONSOLIDATE
THE LEGACY ADVERSARY PROCEEDINGS FOR ALL PRE-TRIAL MATTERS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

    A.    The Trustee Has Adequately Demonstrated the Presence of Overlapping Legal and Factual Issues in the Legacy Adversary Proceedings that Warrant Consolidation ....................................................................................3

    B.    Neither Legacy Capital nor the Subsequent Transferee Defendants Demonstrate Prejudice ..........................................................................................8

    C.    Defendants' Remaining Arguments are Without Merit.......................................11

CONCLUSION.............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
   397 B.R. 1 (S.D.N.Y. 2007) ........................................................................................................6

*In re Bernard L. Madoff Inv. Sec. LLC*,
   No. 1:21-CV-02334-CM, 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ....................................7

*Ekpe v. City of New York*,
   20 Civ. 9143 (AT), 20 Civ. 8248 (AT), 2021 WL 5999204 (S.D.N.Y. Dec. 20,
   2021) ........................................................................................................................................10

*Hughes-Brown v. Campus Crest Grp., LLC*,
   No. 3:10–CV–366, 2011 WL 475010 (W.D.N.C. Feb. 4, 2011) .............................................10

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990) ....................................................................................................8

*Kamdem-Ouaffo v. Pepsico, Inc.*,
   314 F.R.D. 130 (S.D.N.Y. 2016) .............................................................................................10

*KGK Jewelry LLC v. ESDNetwork*,
   Nos. 11-CV-9236–LTS–RLE, 2014 WL 7333291 (S.D.N.Y. Dec. 24, 2014) ........................10

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
   843 F. Supp. 2d 191. (D. Mass. 2012) .......................................................................................4

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
   No. M21–88, 2015 WL 6740953 (S.D.N.Y. Nov. 4, 2015) ....................................................10

*Mira v. Kingston*,
   No. 15 CIV. 09989 (CM), 2016 WL 5867448 (S.D.N.Y. Oct. 3, 2016) .................................10

*Murphy v. Onondaga Cty. Sheriff's Dep't*,
   No. 5:18-CV-1218, 2020 WL 1285631 (N.D.N.Y. Mar. 18, 2020) ........................................10

*Picard v. Citibank (In re Bernard L. Madoff Inv. Sec. LLC)*,
   12 F. 4th 171 (2d Cir. 2021) ......................................................................................................3

*Picard v. Mayer*,
   No. 22-CV-769 (DLC), 2022 WL 814638 (S.D.N.Y. Mar. 17, 2022) ......................................8

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997) ...............................................................................................9

*In re Repetitive Stress Injury Litig.*,
  11 F.3d 368 (2d Cir. 1993) .................................................................................................. 8, 11

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ............................................................. 8

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  596 B.R. 451 (S.D.N.Y. 2019) ............................................................................................... 7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec., LLC)*,
  631 B.R. 1 (Bankr. S.D.N.Y. 2021) ....................................................................................... 7

*Sherman v. A.J. Pegno Constr. Corp.*,
  528 F. Supp. 2d 320 (S.D.N.Y. 2007) .................................................................................... 4

*Smith v. Everson*,
  No. CV-06-0791 (SJF)(AKT), 2007 WL 2294320 (E.D.N.Y. Aug. 6, 2007) ...................... 11

*Villare v. Abiomed, Inc.*,
  No. 19 Civ. 7319 (ER), 2020 WL 3497285 (S.D.N.Y. June 29, 2020) .................................. 8

*Western Waterproofing Co. v. Zurich Am. Ins. Co.*,
  No. 20-cv-3199 (AJN), 2022 WL 329225 (S.D.N.Y. Feb. 3, 2022) ..................................... 10

**Statutes**

11 U.S.C. § 548(a)(1)(A) ............................................................................................................. 6

11 U.S.C. § 548(c) ....................................................................................................................... 3

11 U.S.C. § 550(b) ....................................................................................................................... 3

**Rules**

Fed. R. Civ. P. 10(c) .................................................................................................................... 4

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–*lll*, and the chapter 7 estate of Bernard L. Madoff, by and through his undersigned counsel, respectfully submits this reply memorandum of law in further support of his motion to consolidate the Legacy Adversary Proceedings[1] (the "Motion") and in response to the opposition filed by Legacy Capital in the Legacy Initial Transfer Action[2] and the joint opposition filed by Rafael Mayer, David Mayer, Prince Resources, Prince Capital, and KLOF (collectively, the "Subsequent Transferee Defendants" and together with Legacy Capital, the "Defendants") in the Legacy Subsequent Transfer Action.[3]

## **PRELIMINARY STATEMENT**

The inextricable connection between the two Legacy Adversary Proceedings the Trustee seeks to consolidate leaves no room for Defendants' arguments to the contrary. The Legacy Initial Transfer Action seeks to avoid and recover initial transfers from BLMIS to Legacy Capital and the Legacy Subsequent Transfer Action seeks to recover subsequent transfers of BLMIS customer property from Legacy Capital to the Subsequent Transferee Defendants. Because the entity Defendants are all operated and managed by Rafael and David Mayer, the ultimate question in both proceedings is the same: did the Defendants' extensive knowledge of trading irregularities and impossibilities at BLMIS put them on inquiry notice of BLMIS's fraud. The Legacy Adversary Proceedings, therefore, involve common facts, common questions of law, and common witnesses. Putting the two cases on different tracks would be a waste of judicial

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

[2] Legacy Initial Transfer Action, ECF No. 262 (the "Legacy Opp'n").

[3] Legacy Subsequent Transfer Action, ECF No. 116 (the "Subsequent Transferee Opp'n" and together with the Legacy Opp'n, the "Oppositions").

resources, impose tremendous burdens on the Trustee, the Defendants, and the Court, and risk inconsistent decisions.

The Court is being asked to weigh the clear benefits of consolidation—efficiency and consistency—against any potential prejudice to Defendants. Yet, in their opposition briefs, Defendants focus on ancillary issues and twist themselves into contortions to try to dispute the substantial overlap between the two cases. What they fail to say, however, speaks the loudest: Defendants do not identify any prejudice that consolidation would cause. Instead, they merely complain about the duration of time—an issue largely of their own doing—between the commencement of the two Legacy Adversary Proceedings. Even if this did constitute cognizable prejudice—which it does not—it is certainly not caused by consolidation. Defendants, moreover, do not even attempt to tie the passage of time to the loss of witnesses, documents, other evidence that is no longer available, or to anything that might remotely affect their ability to present their defenses.

The weakness of Defendants' position is best illustrated by their proposal to "coordinate discovery" on "common issues." While Defendants' proposal is an admission that both cases involve common issues, it also flies in the face of the Mayers' repeated refusal, without Court order, to provide even the most basic discovery in this matter. "Informal coordination" of common issues will not simplify the issues or reduce the burden on either the Court or the parties. As Defendants have not identified any potential prejudice that will outweigh the benefits of consolidation, the Court should grant the Trustee's Motion to Consolidate.

# ARGUMENT

A. **The Trustee Has Adequately Demonstrated the Presence of Overlapping Legal and Factual Issues in the Legacy Adversary Proceedings that Warrant Consolidation**

Legacy Capital concedes that in the Legacy Adversary Proceedings, the Court will be called upon to determine whether Legacy Capital retained transfers of customer property in good faith. (*See* Legacy Opp'n at 2, 6, 10.) Although the Subsequent Transferee Defendants *now* contend that Legacy Capital's good faith is not at issue (Subsequent Transferee Opp'n at 12), their pleadings specifically raise the issue.[4]

The Defendants try to distinguish the avoidable transfers of principal in the Legacy Initial Transfer Action on the one hand from the avoided transfers of fictitious profits which are now being sought in the Legacy Subsequent Transfer Action on the other hand. (*See* Legacy Opp'n at 9, 11-12; Subsequent Transferee Opp'n at 10, 12.) But a subsequent transferee's good faith does not change depending on whether the initial transfers were comprised of principal or fictitious profits. Determining good faith under Bankruptcy Code sections 548(c) and 550(b) is comprised of a three-step approach: (i) examining the facts the Defendants knew; (ii) determining whether the facts Defendants knew would have led a reasonable person in the Defendants' position to conduct further inquiry into possible fraud; and (iii) analysis of whether a diligent inquiry by Defendants would have led to the discovery of the debtor's fraudulent purpose or insolvency. *Picard v. Citibank (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F. 4th 171, 191-92 (2d Cir.

---

[4] *See* Legacy Subsequent Transfer Action, ECF No. 104, at 21 ("The claims are barred to the extent that . . . **prior transferees took any such transfer** for value, **in good faith** and without knowledge of the voidability of the transfer avoided."); *id.*, ECF No. 105, at 19 ("To the extent Prince Resources or Prince Capital is an immediate or mediate transferee of any of the alleged transfers, any such transfer is not recoverable . . . because . . . **prior transferees took any such transfer** for value, **in good faith** and without knowledge of the voidability of the transfer avoided."); *id.*, ECF No. 106, at 17 ("The claims are barred to the extent that . . . **prior transferees, took any such transfer** for value, **in good faith**, and without knowledge of the voidability of the transfer."); *id.*, ECF No. 107, at 17 ("The claims are barred to the extent that . . . **prior transferees took any such transfer** for value, **in good faith** and without knowledge of the voidability of the transfer avoided.") (emphasis added).

3

2021). Defendants provide no rationale for why the court's application would differ based on whether the initial transferee received fictitious profits or principal.

The Defendants' good faith in both actions will depend on the same—or at least overlapping—facts and many of the same witnesses. In the Legacy Initial Transfer Action, the Trustee filed claims to avoid and recover approximately $174 million of transfers from Legacy Capital within the two years preceding the filing date. Initial Transfer Compl., Ex. A. This sum comprises three sets of transfers, made in the same amounts, on the same days, and sourced from the same BLMIS account.[5] A portion of these funds was sent directly to the entity Subsequent Transferee Defendants entities and are the Legacy Subsequent Transfers that the Trustee seeks to recover in the Legacy Subsequent Transfer Action. Subsequent Transfer Compl. ¶ 1, Exs. A-H.

In both actions, the Trustee has alleged Rafael and David Mayer, their investment management company Khronos LLC ("Khronos"), and Legacy Capital knew of market impossibilities and indicia of fraud at BLMIS since the early 2000s. *See, e.g.*, Initial Transfer Compl. ¶¶ 94-101; Subsequent Transfer Compl. ¶¶ 58, 108.[6] The Defendants' good faith defenses are tied to the knowledge of the Mayers and Khronos (who had control of and access to information concerning Legacy Capital), and due diligence performed by Legacy Capital investor Meritage, an investment fund run by Renaissance Technologies LLC. Initial Transfer

---

[5] In the Legacy Initial Transfer Action, Legacy Capital and the Trustee stipulated that Legacy Capital had made the following withdrawals from its BLMIS account within the two-year period preceding the liquidation: (1) $50,000,000 on 9/4/07; (2) $50,000,000 on 9/4/07; (3) $27,000,000 on 10/4/07; (4) $27,000,000 on 10/4/07; (5) $10,000,000 on 6/6/08; and (6) $10,000,000 on 6/6/08. Legacy Initial Transfer Action, ECF No. 155, Ex. A.

[6] The Defendants contend that the Trustee improperly incorporated by reference allegations from the Legacy Initial Transfer Action into the Legacy Subsequent Transfer Action. (Legacy Opp'n at 7, n.5; Subsequent Transferee Opp'n at 15.) But Rule 10(c) of the Federal Rules of Civil Procedure authorizes the Trustee to incorporate by reference pleadings in separate actions. *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another pleading in the same action); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191, 214, n.15. (D. Mass. 2012) (holding incorporation by reference of pleadings in separate cases appropriate where "the court [was] familiar with the filings in the other [] case[], which [were] substantially similar to [that] case, and the usual concerns about inferring arguments from other submissions have less force").

Compl. ¶ 52. Rafael Mayer was a member of the committee overseeing Meritage's investments. *Id.* ¶¶ 40–41. Suspicious of BLMIS's returns, Renaissance analyzed Madoff's statements and found that the market could not support the volume of BLMIS's purported trading. *Id.* ¶¶ 56-80, 88-93. In response, Meritage redeemed its investment and Legacy Capital obtained a loan to replace Meritage's capital. *Id.* ¶¶ 138-39. Legacy Capital then "hired" Khronos to analyze its BLMIS account activity, retroactive to January 1992. *Id.* ¶¶ 1, 31, 52.

The Subsequent Transferee Defendants gloss over the Mayers' use of Khronos to control the investments of Legacy Capital and the corporate subsequent transferees. *Id.* ¶ 52. But the Mayers' knowledge as managers and control persons of Legacy Capital, Khronos, and the corporate subsequent transferees is directly relevant to all the defendants' good faith defenses. In fact, Rafael Mayer filed declarations on behalf of Legacy Capital,[7] Khronos,[8] and KLOF[9] in the Legacy Adversary Proceedings.

The Mayers also surrounded themselves and the Mayer-run entities with common overlapping individuals, including persons like their father, Jimmy Mayer (director of Legacy Capital and HCH Capital Limited f/k/a HCH Management Company Ltd. (collectively, "HCH")) and Herbert Selzer (director of Legacy Capital, Montpellier International Ltd., Khronos Group Ltd., Montpellier USA Holdings Ltd., KLOF, Prince Resources LDC, and HCH). These individuals' knowledge is relevant to the Legacy Adversary Proceedings, especially concerning good faith and the inner workings of the Mayer run entities (and their investments in BLMIS).

---

[7] Decl. of Rafael Mayer in Opp'n to the Trustee's Mot. Summary Judgment, Legacy Initial Transfer Action, ECF No. 199-11.

[8] Decl. of Rafael Mayer in Supp. of Motion of Khronos LLC to Quash Trustee's Rule 2004 Subpoena, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, No. 08-1789 (CGM)* (Bankr. S.D.N.Y. Aug. 18, 2020).

[9] Decl. of Rafael Mayer on behalf of Khronos Liquid Opportunities Fund, Ltd., Legacy Subsequent Transfer Action, ECF No. 20.

5

*See* Subsequent Transferee Compl. ¶ 81. There is significant overlap between the matters involving more than just a few documents and/or one witness.

Defendants argue that the Subsequent Transferee Defendants' knowledge only relates to post-transfer events.[10] But a transferee's knowledge for purposes of the good faith defense is not temporally limited. *See, e.g.*, *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 23 (S.D.N.Y. 2007) (affirming bankruptcy court's ruling that transferee was on inquiry notice of the debtor's fraud years before the avoidable transfers were made).

To prove his claims against Legacy Capital, the Trustee must show that BLMIS possessed the actual intent to hinder, delay or defraud creditors and that the transfers to Legacy Capital originated with BLMIS. *See* 11 U.S.C. § 548(a)(1)(A). Legacy Capital *now* concedes the Trustee has established these elements of his claim with respect to the two-year principal transfers he seeks to avoid in the Legacy Initial Transfer Action. (Legacy Opp'n at 8-9.) The Subsequent Transferee Defendants again seem to have chosen to advocate as though their pleading doesn't exist, arguing that they have not "contested BLMIS was a fraud or transfers to Legacy Capital originated with BLMIS." (Subsequent Transferee Opp'n at 15.) The Subsequent Transferee Defendants filed answers with the Court asserting affirmative defenses that say the opposite.[11] Without amended answers or stipulating, however, the Defendants' position on these issues remain as stated in their pleadings. Moreover, throughout the BLMIS liquidation,

---

[10] Legacy Opp'n at 13 ("these two cases now involve different defendants, different transfers, different factual and legal issues, and different periods of time"); Subsequent Transferee Opp'n at 5 ("discovery in the two actions will cover substantially different time periods, as the transfers alleged in the Legacy Case mark the *end* of the relevant events in that case, while the transfers alleged in the Mayer Case mark the *beginning* of events….") (emphasis in original) and 15 ("much of Rafael Mayer's testimony in the Mayer Case will relate to post-transfer events that are completely irrelevant in the Legacy Case").

[11] Legacy Subsequent Transfer Action, ECF Nos. 104, at 21 ("The alleged initial transfers may not be avoided because they were not made with actual intent to defraud") and ("The claims are barred to the extent the Trustee cannot trace customer property to KLOF"); ECF No. 105, at 18-19 (same); ECF No. 106, at 17-18 (same); ECF No. 107, at 17-18 (same).

6

numerous litigants—including Legacy Capital—have challenged the Trustee on matters that have been fully litigated in other adversary proceedings.[12]  By raising antecedent debt as an affirmative defense to the avoidance of the Legacy Initial Transfers,[13] for example, it appears the Subsequent Transferee Defendants also intend to challenge previously decided issues.  *See, e.g.*, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 596 B.R. 451, 469 (S.D.N.Y. 2019) (after cataloguing numerous decisions in the BLMIS liquidation rejecting arguments that two-year transfers of fictitious profits were exchanged for value in satisfaction of antecedent debts, the district court adopted the bankruptcy court's report and recommendation that the initial transferee defendants could not prevail on their value defense).

Defendants dedicate most of their Oppositions to drawing distinctions between the Legacy Adversary Proceedings.  But as explained in the Trustee's Motion, "[c]omplete symmetry" between the Legacy Adversary Proceedings "is not a prerequisite for consolidation." (Motion at 11.)  Just one substantial common issue of law or fact is a sufficient reason to direct consolidation.  (*Id.*)  None of the cases Defendants cite refutes these well-settled principles.  In addition, the Defendants repeatedly mischaracterize the Trustee's claims by saying that the Legacy Subsequent Transfer Action is limited to alter ego and successor liability.  But the foundation of the Trustee's claims in both actions are for the avoidance and recovery of transfers. *See, e.g.*, Subsequent Transfer Compl. ¶¶ 93-95 (Khronos Group "transferred $109,253,099 to

---

[12] *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 1:21-CV-02334-CM, 2022 WL 493734, at *19 (S.D.N.Y. Feb. 17, 2022) (in awarding prejudgment interest to the Trustee, the District Court stated that the appellants "have insisted on relitigating 'issues that have already been decided by the Court in this case' and forced the 'Trustee to spen[d] time and energy having to defend against legal arguments that have already been decided in these SIPA cases.'" (quoting *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec., LLC)*, 631 B.R. 1, 17 (Bankr. S.D.N.Y. 2021)).

[13] Legacy Subsequent Transfer Action, ECF Nos. 104 at 22; 105 at 19; 106 at 18; 107 at 17. The Subsequent Transferee Defendants acknowledge that the "alleged initial transfers" at issue in the Legacy Subsequent Transfer Action are comprised entirely of fictitious profits subject to avoidance as intentionally fraudulent transfers. *See* Subsequent Transferee Opp'n at 1, 5.

7

KLOF"; *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021).

The Defendants overstate the significance of foreign law on the resolution of the Trustee's recovery claims in the Legacy Subsequent Transfer Action. In immediately denying the Subsequent Transferee Defendants' motion to withdraw the reference, the District Court reasoned that this Court's familiarity with foreign legal principles was far less important than the development of facts during discovery relevant to the Trustee's claims under fraudulent transfer law. *Picard v. Mayer*, No. 22-CV-769 (DLC), 2022 WL 814638, at * 2 (S.D.N.Y. Mar. 17, 2022).

B. **Neither Legacy Capital nor the Subsequent Transferee Defendants Demonstrate Prejudice**

The Trustee has not "reversed the correct legal standard"[14] for consolidation, as the Subsequent Transferee Defendants assert. The Subsequent Transferee Defendants' own authority makes clear that the party seeking consolidation has "the burden of showing the commonality of factual and legal issues in [the] different actions." *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993). Once the moving party has shown commonality, the court reaches a conclusion by also weighing any potential prejudice against judicial economy and efficiency. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990). Thus, absent prejudice to the opposing parties, courts in the Second Circuit often consolidate actions involving overlapping questions of law and fact. (*See* Motion at 8); *Villare v. Abiomed, Inc.*, No. 19 Civ. 7319 (ER), 2020 WL 3497285, at *3 (S.D.N.Y. June 29, 2020) ("so long as any confusion or

---

[14] Subsequent Transferee Opp'n at 8, 16; *see also* Legacy Opp'n at 6, n.6.

8

prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate") (quoting *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997)).

Defendants fail to show that consolidation poses any risk of prejudice. Legacy Capital does not even attempt to argue that it would be prejudiced by consolidation. Instead, it merely contends that it would be somehow burdened because of the duration between the commencement of the two Legacy Adversary Proceedings. (Legacy Opp'n at 13-14.) But neither Legacy Capital nor the Subsequent Transferee Defendants claim that witnesses, documents, or other evidence would be impacted or that consolidation would result in the waiver of rights they would otherwise have. And because the Trustee only seeks consolidation for pre-trial purposes, there is no risk of confusion or disclosure of prejudicial information to a jury.

The Subsequent Transferee Defendants contend that consolidating the Legacy Adversary Proceedings would cause them to incur unnecessary costs. (Subsequent Transferee Opp'n at 19.) But if the only remaining issue in the Legacy Initial Transfer Action is Legacy Capital's good faith, as Legacy Capital now claims, it defies credulity that consolidation on common facts and issues would increase the Subsequent Transferee Defendants' costs of litigation. Further, this argument ignores the obvious: Legacy Capital and Rafael Mayer are represented by the same counsel, who is paid by the same subsequent transferee defendants. (*See* Subsequent Transfer Compl. ¶¶ 85-90.) Therefore, consolidated discovery is nothing but a cost-saving measure for everyone involved.

Not surprisingly, Defendants fail to address the fact that the Legacy Adversary Proceedings are currently at similar stages of litigation: neither action has proceeded to discovery and no scheduling orders have been entered. Instead, they cite myriad cases that denied consolidation of lawsuits with very different procedural postures—a predicate wholly absent

9

here. *See, e.g.*, *Western Waterproofing Co. v. Zurich Am. Ins. Co.*, No. 20-cv-3199 (AJN), 2022 WL 329225, at *19 (S.D.N.Y. Feb. 3, 2022) (denying consolidation of one action in which discovery had been stayed with an action in which discovery had been ongoing); *Ekpe v. City of New York*, 20 Civ. 9143 (AT), 20 Civ. 8248 (AT), 2021 WL 5999204, at *4 (S.D.N.Y. Dec. 20, 2021) (denying consolidation in cases involving "divergent procedural postures as to the state of discovery and motion practice); *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 137 (S.D.N.Y. 2016) (denying motion to consolidate actions "at different stages of the litigation"); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No. M21–88, 2015 WL 6740953, at *1, 4 (S.D.N.Y. Nov. 4, 2015) (denying consolidation of a trial-ready action and one in which discovery had not yet begun); *KGK Jewelry LLC v. ESDNetwork*, Nos. 11-CV-9236–LTS–RLE, 2014 WL 7333291, at *2 (S.D.N.Y. Dec. 24, 2014) (denying consolidation for several reasons, including that "the procedural posture of the two actions is markedly different").

The other cases cited by Defendants all involve actions without (or with very little) factual overlap and/or actions with completely unrelated claims. *See Murphy v. Onondaga Cty. Sheriff's Dep't*, No. 5:18-CV-1218 (GLS/CFH), 2020 WL 1285631, at *2 (N.D.N.Y. Mar. 18, 2020) (denying consolidation of lawsuits with no overlapping theories of liability or facts other than the general policies of the plaintiff and a single common witness); *Mira v. Kingston*, No. 15 CIV. 09989 (CM), 2016 WL 5867448, at *2 (S.D.N.Y. Oct. 3, 2016) (holding that pro se litigant's request for consolidation should be denied because the actions involved different times, places, and parties); *Hughes-Brown v. Campus Crest Grp., LLC*, No. 3:10–CV–366, 2011 WL 475010, at *3 (W.D.N.C. Feb. 4, 2011) (denying motion to consolidate employment discrimination lawsuits for trial based on unrelated causes of action complaining of injuries suffered during different time periods and due to potential juror confusion over differences

10

between the characteristics of the plaintiffs); *Smith v. Everson*, No. CV-06-0791 (SJF)(AKT), 2007 WL 2294320, at *3 (E.D.N.Y. Aug. 6, 2007) (denying consolidation of lawsuits involving wholly unrelated claims that the moving defendant himself conceded lacked commonality).

Subsequent Transferee Defendants' reliance on *In re Repetitive Stress Injury Litig.* is also misplaced as the case bears no resemblance to the issues here. In *Repetitive Stress*, the Second Circuit granted a writ of mandamus reversing consolidation of 44 mass tort cases involving claims based on the laws of different states and allegations of different injuries that implicated different health conditions. 11 F.3d at 373. The lower court had not engaged in any meaningful analysis of the purportedly common issues, but rather generically referred to similarities in mass tort cases instead of making precise findings. *Id.* That scenario is different than the one here.[15]

### C.    Defendants' Remaining Arguments are Without Merit

Subsequent Transferee Defendants accuse the Trustee of filing this Motion without discussing it with them first. (Subsequent Transferee Opp'n at 7.) As an initial matter, there is nothing in the Federal Rules or the Local Rules that would require a meet and confer. And, oddly, the Subsequent Transferee Defendants make this argument after they moved to withdraw the reference without any warning or discussion with the Trustee. (*See* Declaration of Jason S. Oliver ("Oliver Decl.") ¶¶ 7, 9.) More importantly, and contrary to Legacy Capital's assertions, the Trustee did, in fact, raise the prospect of consolidating the Legacy Adversary Proceedings before the Subsequent Transferee Defendants argued the motions to dismiss the Legacy

---

[15] Subsequent Transferee Defendants curiously rely on this Court's statements in a hearing in unrelated cases. At the referenced hearings, the defendants made an off-the-cuff proposal for consolidated *briefing* in approximately 80 different adversary proceedings. (Subsequent Transferee Opp'n at 17.) Those were cases against unrelated defendants, involving different individuals, different counsel, different jurisdictional challenges, and unrelated discovery. (*Id.*) Here, the overlapping individuals and entities operate and/or control Legacy Capital and the Subsequent Transferee Defendants; they share overlapping (if not the same) knowledge concerning Legacy Capital's BLMIS account.

11

Subsequent Transfer Action. (*See id.* ¶¶ 4-5.) Counsel for Subsequent Transferee Defendants did not object at the prospect of the cases proceeding in tandem. (*Id.* ¶ 5.) Furthermore, the Trustee's Motion did not serve to cut-off discussions on scheduling with Legacy Capital's counsel or delay the matter. In fact, it was Legacy Capital's counsel who stopped negotiating the case management plan and has, since February 18, owed the Trustee a response to the proposed timing of fact and expert discovery. (*Id.* ¶¶ 13-14.[16])

The Defendants make a convoluted argument about BNP Paribas, which seems diversionary at best. Without delving into the merits, the Court can once again compare Defendants' advocacy with their deeds. If Legacy Capital truly believes BNP Paribas is a necessary party, it may move to join BNP into the litigation. But, once again departing from what it argues to the Court, Defendants don't really want that result. The Trustee discussed this very issue with Legacy Capital's counsel in connection with the Legacy Case Management Order. (*Id.* ¶ 10.) The Trustee included a provision for joining additional parties—so that Legacy may do precisely what it stresses to the Court is proper—and yet Legacy Capital's counsel struck that provision from the draft. (*See id.* ¶¶ 11-12 (citing Fisher Decl. Ex. A.).) There is no reason why BNP Paribas must be a party to either lawsuit for discovery to proceed.

In sum, neither Legacy Capital nor the Subsequent Transferee Defendants have articulated a valid objection to consolidation for one simple reason: there is none.

---

[16] Throughout this case, Defendants' counsel has delayed and then cried to the Court about the delays in this case. This situation is no different. While complaining about the purported prejudice of delay, Defendants refuse to engage in any discussion concerning scheduling. They used their borderline frivolous motion to withdraw the reference as a basis, and then, apparently this motion became their pretext. And of course, they moved to extend the date on this motion. The Trustee has always granted each of Defendants' requests for an extension—and he plans to continue doing so. But Defendants' constant carping should be seen for what it is—yet another salvo in their ongoing, baseless, *ad hominem* attacks aimed at the Trustee and his counsel.

12

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests entry of an order, substantially in the form of the proposed order annexed to the Motion as **Exhibit A**, consolidating the Legacy Adversary Proceedings for all pre-trial matters and granting such other and further relief as is just and proper.

Dated: New York, New York  
       March 30, 2022

Respectfully Submitted,

BAKER & HOSTETLER LLP

By: /s/ *David J. Sheehan*  
    David J. Sheehan  
    Oren J. Warshavsky  
    Jason S. Oliver  
    Tatiana Markel  
    Carrie A. Longstaff  
    Peter B. Shapiro  
    45 Rockefeller Plaza  
    New York, New York 10111  
    Telephone: (212) 589-4200  
    Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*