PROSKAUER ROSE LLP
Ehud Barak, Esq.
Russell T. Gorkin, Esq.
Elliot R. Stevens, Esq. (S.D.N.Y. admission pending)
Eleven Times Square
New York, NY 10036-8299
Telephone:  212-969-3000
Facsimile:  212-969-2900
Email:  ebarak@proskauer.com
        rgorkin@proskauer.com
        estevens@proskauer.com

*Attorneys for Defendant Lion Global Investors Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff-Applicant,<br><br>          v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>LION GLOBAL INVESTORS LIMITED,<br><br>                    Defendant. | Adv. Pro. No. 11-02540 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ........................................................................................................................4

ARGUMENT .............................................................................................................................8

    I.      THE LGI COMPLAINT MUST BE DISMISSED PURSUANT TO
           RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION ...........................8

          A.      LGI Was Not a Party to the Alleged Investments and Transfers So
                 There Is No Basis To Assert Personal Jurisdiction Over It .........................9

          B.      The Trustee's Claim Does Not Arise Out of or Relate to Any
                 Purposeful Availment of United States Law by LGI.................................10

          C.      The Exercise of Personal Jurisdiction Over LGI Would Be
                 Unreasonable..........................................................................................21

    II.     THE LGI COMPLAINT MUST BE DISMISSED PURSUANT TO
           RULE 12(b)(6) FOR FAILURE TO PLEAD AVOIDABILITY AND
           PURSUANT TO RULES 8(a) AND 10(c) FOR IMPROPER
           INCORPORATION...........................................................................................24

    III.    THE TRUSTEE'S CLAIMS ARE BARRED BY BANKRUPTCY CODE
           § 546(e) .........................................................................................................28

          A.      The Alleged Transfers Were Both Made by and to and for the
                  Benefit of Entities Listed in Section 546(e)...............................................29

          B.      The Transfers Were Both Settlement Payments and Were Made in
                  Connection with a Securities Contract.......................................................32

    IV.    THE LGI COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS
           TO PLAUSIBLY ALLEGE THAT LGI RECEIVED BLMIS PROPERTY........35

CONCLUSION...........................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Achtman v. Kirby McInerney & Squire, LLP*,
    464 F.3d 328 (2d Cir. 2006)............................................................................12

*American Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ...........................................................27

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
    480 U.S. 102 (1987)...........................................................................21, 22, 23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................24, 35

*Beacon Enters., Inc. v. Menzies*,
    715 F.2d 757 (2d Cir. 1983)............................................................................20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................35

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).............................................................................9, 14, 17

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018).............................................................................14

*City of Long Beach v. Total Gas & Power N. Am. Inc.*,
    465 F. Supp. 3d 416 (S.D.N.Y. 2020)............................................................13

*Cooper v. Parsky*,
    1997 WL 242534 (S.D.N.Y. Jan. 8, 1997),
    *aff'd in relevant part, vacated in part on other grounds*, 140 F.3d 433 (2d Cir. 1998) ..........14

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..........................................................................................8

*Davis v. Bifani*,
    2007 WL 1216518 (D. Colo. Apr. 27, 2007)................................................25

*Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co. Fraudulent Conveyance Litig.)*,
    946 F.3d 66 (2d Cir. 2019),
    *cert. denied*, 141 S. Ct. 2552 (2021) ("*Tribune I*")...................................28, 30, 31

*Ellicott Mach. Corp. v. John Holland Party, Ltd.*,
    995 F.2d 474 (4th Cir. 1993) .........................................................................23

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
    323 B.R. 857 (Bankr. S.D.N.Y. 2005) ...................................................................30

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011) ...............................................................................32

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,
    [2014] UKPC 9 ........................................................................... 12, 15, 34

*Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam (In re Fairfield
    Sentry Ltd.)*,
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .......................................12, 16

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*") ...............29, 30, 31, 32

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
    26 N.Y.2d 280 (1970) ........................................................................14

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir.1994)......................................................................11

*Freeland v. Enodis Corp.*,
    540 F.3d 721 (7th Cir. 2008) ................................................................38

*Giuliano v. Barch*,
    2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) .......................................................14

*Hanson v. Denckla*,
    357 U.S. 235 (1958)........................................................................9

*Hau Yin To v. HSBC Holdings PLC*,
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017),
    *aff'd*, 700 F. App'x 66 (2d Cir. 2017)...............................................16, 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984).........................................................................9, 13

*Hinton v. Trans Union, LLC*,
    654 F. Supp. 2d 440 (E.D. Va. 2009) ..............................................................26

*In re Mexican Gov't Bonds Antitrust Litig.*,
    2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020).......................................................15

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019),
    *cert. denied*, 140 S. Ct. 2824 (2020) .........................................................8

*Int'l Customs Assocs. v. Ford Motor Co.*,
   893 F. Supp. 1251,1261 (S.D.N.Y. 1995) ...........................................................................20

*J. McIntyre Mach., Ltd v. Nicastro*,
   564 U.S. 873 (2011).............................................................................................................15

*Jonas v. Estate of Leven*,
   116 F. Supp. 3d 314 (S.D.N.Y. 2015)................................................................................14

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.*,
   34 A.D.3d 433 (2d Dep't 2006) .........................................................................................16

*Kirschner v. Large Shareholders (In re Tribune Co. Fraudulent Conveyance Litigation)*,
   10 F.4th 147 (2d Cir. 2021),
   *cert. denied*, 2022 WL 516021 (U.S. Feb. 22, 2022)...........................................................31

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
   191 F.3d 229 (2d Cir. 1999)...............................................................................................38

*LaMonica v. CEVA Grp., PLC (In re CIL Ltd.)*,
   582 B.R. 46 (Bankr. S.D.N.Y. 2018)..................................................................................21

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
   2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) .....................................................................19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013)...............................................................................................18

*Licci v Lebanese Can. Bank, SAL*,
   20 N.Y.3d 327 (2012) .........................................................................................................18

*Lowden v. William M. Mercer, Inc.*,
   903 F. Supp. 212 (D. Mass. 1995) .....................................................................................24

*Maranga v. Vira*,
   386 F. Supp. 2d 299 (S.D.N.Y. 2005).................................................................................20

*McKee Elec. Co. v. Rauland-Borg Corp.*,
   20 N.Y.2d 377 (1967) .........................................................................................................20

*Metals Alliance Corp. v. Beshay*,
   1998 WL 811788 (S.D.N.Y. Nov. 19, 1998) ......................................................................21

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)..............................................................................................8, 22

*Muhammad v. Bethel-Muhammad*,
   2012 WL 1854315 (S.D. Ala. May 21, 2012) ....................................................................24

*Nastasi & Assocs. v. Bloomberg, L.P.*,
    2021 WL 3541153 (S.D.N.Y. Aug. 11, 2021) .......................................................30

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) .............................................................................................32

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
    2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) .......................................................25

*Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ................................................................................18

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) .................................................................................39

*Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*,
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) .............................................29

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
    773 F.3d 411 (2d Cir. 2014).............................................................28, 29, 32, 33, 34

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) .......................................................35, 36, 37

*Porina v. Marward Shipping Co.*,
    2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006),
    *aff'd*, 521 F.3d 122 (2d Cir. 2008) .......................................................................21

*RBC Cap. Mkts., LLC v. Garcia Hamilton & Assocs., LP*,
    2021 WL 230194 (S.D.N.Y. Jan. 22, 2021) .........................................................20

*Rocky Mountain Chocolate Factory v. Arellano*,
    2017 WL 4697503 (D. Colo. Oct. 19, 2017) ........................................................22

*Roper Starch Worldwide, Inc. v. Reymer & Assocs.*,
    2 F. Supp. 2d 470 (S.D.N.Y. 1998) ......................................................................14

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)....................................................................................30

*Rushaid v. Pictet & Cie*,
    28 N.Y.3d 316 (2016) ...........................................................................................18

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir.1988).....................................................................................25

*Sapia v. Home Box Off., Inc.*,
    2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ......................................................39

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    454 B.R. 285 (Bankr. S.D.N.Y. 2011),
    *aff'd sub nom. In re Aozora Bank Ltd. v. Sec. Inv. Prot. Corp.*, 480 B.R. 117
    (S.D.N.Y. 2012),
    *aff'd sub nom. Kruse v. Sec. Inv. Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    708 F.3d 422 (2d Cir. 2013) .......................................................................................12

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec.*.
    LLC, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ......................................24, 33, 34

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011),
    *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) ............................................................................9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) ......................................................................................................8

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
    476 B.R. 715 (S.D.N.Y. 2012),
    *aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv.
    Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014) .....................................................................29

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") ..............................33, 34

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
    277 F. Supp. 3d 521 (S.D.N.Y. 2017) ........................................................................17

*Spencer Trask Ventures, Inc. v. Archos S.A.*,
    2002 WL 417192 (S.D.N.Y. Mar. 15, 2002) ..............................................................17

*SPV Osus Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015),
    *aff'd*, 882 F.3d 333 (2d Cir. 2018) ............................................................................20

*Steinberg v. A Analyst Ltd.*,
    2009 WL 806780 (S.D. Fla. Mar. 26, 2009) ...............................................................18

*Stern v. Marshall*,
    564 U.S. 462 (2011) .......................................................................................................1

*Sullivan v. Kodsi*,
    373 F. Supp. 2d 302 (S.D.N.Y. 2005) ........................................................................35

*SunLight Gen. Cap. LLC v. CJS Invs. Inc.*,
    114 A.D.3d 521 (1st Dep't 2014) ...............................................................................14

*Taylor v. Sturgell*,

553 U.S. 880 (2008) ..........................................................................................................32

*Ticketmaster-New York, Inc. v. Alioto*,
    26 F.3d 201 (1st Cir. 1994) ..........................................................................................22

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...........................................................24, 25, 26

*Vasquez v. Hong Kong & Shanghai Banking Corp.*,
    477 F. Supp. 3d 241 (S.D.N.Y. 2020),
    *appeal withdrawn*, 2021 WL 4190722 (2d Cir. Apr. 14, 2021) ...........................................19

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..................................................................................................12, 13

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ...........................................................................................8

*Walters v. Woodson*,
    1987 WL 19026 (S.D.N.Y. Oct. 14, 1987) ...................................................................17

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    543 B.R. 127 (Bankr. S.D.N.Y. 2016) ...........................................................................13

*Wolfe v. Charter Forest Behavioral Health Sys., Inc.*,
    185 F.R.D. 225 (W.D. La. 1999) ...................................................................................24

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ......................................................................................................21

*Wortham v. KarstadtQuelle AG (In re Nazi Era Cases Against German Defendants
    Litig.)*,
    320 F. Supp. 2d 204 (D.N.J. 2004),
    *aff'd*, 153 F. App'x 819 (3d Cir. 2005) ...........................................................................21

*Zim Integrated Shipping Services Ltd. v. Bellwether Design Techs. LLC*,
    2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ...............................................................10

## STATUTES

11 U.S.C. § 101 ..............................................................................................................29

11 U.S.C. § 546 .....................................................................................................*passim*

11 U.S.C. § 550 .....................................................................................................*passim*

11 U.S.C. § 551 ............................................................................................................5, 6

11 U.S.C. § 741 .......................................................................................................32, 33

15 U.S.C. § 78fff-2 ........................................................................................................5, 6, 35

**OTHER AUTHORITIES**

Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV*
     *Dublin Branch,*
     http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278
     (last visited Mar.Feb. 24, 2022) ........................................................................................30

Collier on Bankruptcy ¶ 550.01 (16th ed. 2019) ........................................................................38

*De Nederlandsche Bank, Information Detail: Citco Bank Nederland N.V.,*
     https://www.dnb.nl/en/public-register/information-
     detail/?registerCode=WFTDG&relationNumber=B0275 (last visited Mar. 24, 2022)...........30

Fed. R. Bankr. P. 7004 ...............................................................................................................9

Fed. R. Bankr. P. 7012 ...............................................................................................................1

Fed. R. Civ. P. 8 ...........................................................................................1, 3, 23, 25, 26, 27

Fed. R. Civ. P. 10 .............................................................................................1, 3, 24, 25, 27

Fed. R. Civ. P. 12 ................................................................................................... *passim*

Defendant Lion Global Investors Limited ("LGI"), by its undersigned counsel,

respectfully submits this memorandum of law and the accompanying declarations of James Tan

Thian Peng dated March 29, 2022 (the "Tan Decl.") and Ehud Barak, dated April 1, 2022 (the

"Barak Decl.") in support of its motion to dismiss with prejudice the complaint (ECF No. 1) (the

"LGI Complaint" or "LGI Compl.") filed by plaintiff Irving H. Picard (the "Trustee"), as the

Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), for

lack of personal jurisdiction, and failure to state a claim and provide a short and plain statement

of the allegations and claims against LGI, pursuant to Rules 8(a), 10(c), and 12(b) of the Federal

Rules of Civil Procedure ("Rule"), made applicable by Rule 7012 of the Federal Rules of

Bankruptcy Procedure.[1]

## PRELIMINARY STATEMENT

The Trustee alleges LGI received property from Fairfield Sentry Limited ("Sentry") that

was allegedly transferred to Sentry by BLMIS within 6 years of BLMIS filing its bankruptcy

case, and seeks to recover that property or its value from LGI under Section 550 of Title 11 of

the United States Code (the "Bankruptcy Code").  The LGI Complaint is but one of scores of

similar complaints filed against hundreds of other defendants asserting the trustee has a right to

"recover" every single dollar allegedly received by anyone with any connection to BLMIS, no

matter how remote.  The Trustee has been zealous in his recovery efforts—so zealous, in fact,

that he is seeking to claw back two billion dollars more from Sentry transferees than he contends

BLMIS ever transferred to Sentry in the first place.  That glaring anomaly is just one of at least

four separate pleading deficiencies, each of which independently warrants dismissal of the LGI

Complaint.  While some of these deficiencies are common to other adversary proceedings being

---

[1]  LGI does not consent to the Bankruptcy Court exercising jurisdiction over this case and/or entering any final
judgment on the merits of the claims against LGI.  LGI reserves all rights to challenge the constitutional authority of
the Bankruptcy Court to adjudicate this action, including under *Stern v. Marshall*, 564 U.S. 462 (2011).

litigated before this Court, others are unique to this adversary proceeding.

*First*, the LGI Complaint must be dismissed pursuant to Rule 12(b)(2) because it does not make out a *prima facie* case for personal jurisdiction. The LGI Complaint alleges personal jurisdiction exists because LGI purportedly channeled investments to the United States through Sentry, and later received transfers from Sentry in July 2005. (LGI Compl. ¶ 7, Ex. D.) But those allegations cannot make out a *prima facie* case because LGI was not a party to any of the Sentry subscription or redemption agreements through which the Trustee attempts to invoke this Court's jurisdiction. (Tan Decl. ¶ 8.) Nor was it a recipient, either as principal or agent, of any of the Sentry transfers allegedly made in July 2005. (*Id.*). That should be the end of the inquiry and sufficient to dismiss the Complaint.[2]

Even setting that aside, the Trustee has not and cannot plausibly allege LGI had any cognizable connections to the United States with respect to the relevant transactions. Indeed, the LGI Complaint barely alleges any connection between LGI and the United States at all. Instead, it relies on indirect connections between third parties (such as Sentry) and the United States, and LGI's supposed knowledge of those connections. But binding precedent makes clear a third party's (here, Sentry's) connections to the forum state cannot be used to establish personal jurisdiction over another. The LGI Complaint does not dispute LGI is a Singaporean entity with no offices, employees, or bank accounts in the United States. The wholly conclusory allegations that LGI may have sent an email, participated in a phone call or meeting, or sent copies of a contract to a few individuals who happened to be located in the United States are only attenuated, ministerial contacts which the courts have held, time and time again, do *not* suffice to establish personal jurisdiction. As a result, there is no basis for personal jurisdiction against LGI

---

[2] That LGI was not a party to the relevant agreements or transfers is also a grounds for dismissal of the LGI Complaint for failure to state a claim under Rule 12(b)(6).

and the LGI Complaint must be dismissed pursuant to Rule 12(b)(2).

*Second*, the LGI Complaint must be dismissed because it fails to satisfy Rules 8(a) and 10(c). Among other things, the LGI Complaint does not contain *any* factual allegations supporting the conclusory assertion that the transfers made from BLMIS to Sentry are avoidable. (LGI Compl. ¶¶ 38, 39.) Instead, the LGI Complaint seeks to incorporate by reference a 217-page complaint and more than 100 exhibits filed in another action, and which has since been substantially amended. The attempted wholesale incorporation of a stale complaint containing hundreds of likely inapplicable allegations from an entirely separate proceeding forces LGI to attempt to respond to hundreds of allegations that have no apparent connection to LGI or else to guess—at LGI's risk—which allegations are or are not applicable to it. This kitchen-sink approach to pleading is not permitted under Rule 10(c), and, even if it were, the LGI Complaint fails to satisfy Rule 8(a)'s requirement the LGI Complaint contain a "short and plain statement of the claim." And given that this action has now been pending for *more than a decade*, the time has long since passed for the Trustee to remedy such deficiencies.

*Third*, the LGI Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim because Bankruptcy Code Section 546(e) prevents the trustee from avoiding the alleged transfers. Section 546(e) prohibits the Trustee from avoiding transactions that were either made by certain specified entities (such as stockbrokers) or made to other entities (such as financial institutions) *and* that were either "settlement payment[s]" or were made in "connection with a securities contract." 11 U.S.C. § 547(e). As is discussed below in detail, it is indisputable that the alleged transfers from BLMIS to Sentry fall within Section 546(e)'s safe harbor, barring the Trustee from recovering from LGI on account of them. Indeed, failing to apply Section 546(e) as written would undermine the very securities markets Section 546(e) was designed to protect.

*Fourth*, the LGI Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim because the Trustee does not plausibly allege the money LGI supposedly received originally came from BLMIS. Even setting aside that LGI was not involved in the alleged transactions, the LGI Complaint makes no attempt whatsoever to trace the amounts allegedly transferred to LGI to transfers first made from BLMIS to Sentry. That failure alone is enough to defeat the LGI Complaint. Moreover, allegations made by the Trustee in other avoidance actions completely undermine the plausibility of the Trustee's allegations asserted against LGI here. Specifically, the Trustee alleges Sentry transferred *$27 million more* to defendants than it had on hand in BLMIS funds when it made the alleged transfer to LGI. As a result, the Trustee's allegations that all of the funds he seeks to claw back are BLMIS customer property are not only implausible, they are impossible. Because the Trustee has failed to plausibly allege the supposed transfers he seeks to claw back from LGI were funded by BLMIS property, as opposed to another source, the LGI Complaint must be dismissed.[3]

In short, the LGI Complaint violates constitutional due process, the pleading standards laid down by the Federal Rules of Civil Procedure, the requirements of the Bankruptcy Code, and even basic logic and arithmetic. For these reasons and as explained further below, LGI respectfully requests that the LGI Complaint be dismissed with prejudice.

## BACKGROUND

**Lion Global Investors Limited**

LGI is a corporation organized under the laws of Singapore with its registered office and principal place of business in Singapore. (Tan Decl. ¶ 2.) LGI was known as OCBC-SIMBL Investment Management Limited when it was incorporated on August 22, 1986. (*Id.* ¶ 3.) It

---

[3] Moreover, the Trustee's recovery is barred by Bankruptcy Code Section 550(d), which prohibits the Trustee from obtaining double recovery from numerous parties on account of one transfer.

changed its name to OCBC Asset Management Limited on December 8, 1989, and subsequently

to Lion Capital Management Limited on September 26, 2005, before finally being renamed as

Lion Global Investors Limited on June 2, 2008.  (*Id.* ¶¶ 3–4.)

LGI has never maintained an office in the United States, had any employees or other

agents based in the United States, or otherwise conducted any business in the United States.  (*Id.*

¶¶ 6–7.)  LGI likewise has never maintained any bank accounts in the United States; instead, it

has maintained bank accounts solely in Singapore.  (*Id.* ¶ 6.)

**Background and Jurisdiction**

On August 18, 2011, the Trustee commenced this action against LGI as one of 81 parallel

cases in which the Trustee seeks to recover subsequent transfers he alleges defendants received

from Fairfield funds.  (*See* Trustee's Twenty-Sixth Interim Report for the Period Apr. 21, 2021

through Sept. 30, 2021, *Securities Investor Protection Corp. v. Bernard L. Madoff Investment

Securities LLC*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Oct. 29, 2021), ECF No. 20821 ¶ 229

& Ex. D (Barak Decl. Ex. 2).)  At issue here is approximately $50,583,443 in subsequent

transfers Sentry allegedly made to LGI on July 15, 2005.  (LGI Compl. Ex. D.)  Sentry is a

British Virgin Islands ("BVI") company in liquidation in the BVI.[4]  (*Id.* ¶ 2.)  The Trustee claims

he is entitled to recover the funds pursuant to 11 U.S.C. §§ 550(a) and 551 and SIPA, 15 U.S.C.

§ 78fff-2(c)(3).  (LGI Compl. ¶ 48.)  LGI, however, was not a party to any agreements with

respect to which Plaintiff is seeking recovery in this adversary proceeding, and did not receive

directly or indirectly any of the alleged transfers that the Trustee seeks to claw back.  (Tan Decl.

¶ 8.)

---

[4]  In a separate proceeding, the Sentry liquidators filed a lawsuit against LGI on June 28, 2011 to recover previous
redemption payments. *See* Fairfield Sentry Ltd. v. Lion Global Investors, Adv. Pro. No. 11-02392 (Bankr. S.D.N.Y.
June 28, 2011), ECF No. 1.  Pursuant to a joint stipulation, all claims against LGI were dismissed with prejudice.
*See* Adv. Pro. No. 11-02392, ECF No. 44.  The matter is pending on appeal before the District Court, and is
captioned *In re Fairfield Sentry Ltd.*, Case No. 1:19-cv-04549-VSB (S.D.N.Y.).

The Trustee does not allege that LGI maintained an office in New York or subscribed to BLMIS or any other fund located in New York. Nor does the Trustee allege any direct transfers or similar connection between LGI and BLMIS. (LGI Compl. ¶¶ 23–33.)

The Trustee previously filed adversary proceedings against Sentry in *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y.) (the "Picard/Fairfield Action"), in which the Trustee alleged that he "sought to avoid and recover the alleged initial transfers from BLMIS to Fairfield Sentry in the amount of approximately $3 billion." (LGI Compl. ¶ 35; *see* Amended Complaint, *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010), ECF No. 23 (the "Fairfield Amended Complaint") (Barak Decl. Ex. 3).) The Trustee purports to incorporate the entire Fairfield Amended Complaint, which is 217-pages long and asserts claims against more than forty defendants into the LGI Complaint. (LGI Compl. ¶ 35.) The Trustee does not specify which allegations set forth in the Fairfield Amended Complaint—in which he asserts claims for (1) turnover and accounting, (2) unjust enrichment, (3) conversion, (4) money had and received, (5) aiding and abetting fraud and breach of fiduciary duty, and (6) objections to the allowance of claims against a variety of different parties—are relevant to the claims against LGI. On August 28, 2020, the Trustee filed a second amended complaint in the Picard/Fairfield Action (the "Fairfield SAC") but did not seek to amend the LGI Complaint to incorporate the superseding Fairfield SAC in the Fairfield Amended Complaint's stead.

The LGI Complaint dedicates only three paragraphs to the initial transfers purportedly made from BLMIS to Sentry. Specifically, he alleges "[d]uring the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately" $3 billion (*id.* ¶ 35–36), of which $1.6 billion was allegedly transferred within two years of the Filing Date and $1.1

billion was allegedly transferred during the 90 days preceding the Filing Date (the "Fairfield

Sentry Initial Transfers").  (*Id.* ¶¶ 37–38.)  The Trustee alleges all the Fairfield Sentry Initial

Transfers are customer property, and asserts they are "avoidable, and recoverable under sections

544, 550 and 551 of the Bankruptcy Code, sections 273–79 of the NYDCL, and applicable

provisions of SIPA, particularly SIPA § 78fff-2(c)(3)."  (*Id.* ¶¶ 36–38.)  The Trustee does not

allege any additional facts regarding the impropriety of the Fairfield Sentry Initial Transfers to

support the conclusory assertion that the Fairfield Sentry Initial Transfers are avoidable.

     The Trustee further alleges Sentry subsequently transferred $50,583,554 to LGI, which is

recoverable pursuant to Bankruptcy Code section 550(a).  (LGI Compl. ¶¶ 41–42.)  The Trustee

does not allege or trace which specific portions of the Fairfield Sentry Initial Transfers were

subsequently transferred to LGI or otherwise connect any portion of the $3 billion to the

$50,583,554 allegedly transferred to LGI.

**Trustee's Access to Fairfield Sentry Documents**

     More than ten years ago, on June 7, 2011, this Court approved a settlement agreement

that the Trustee entered into with the Liquidators of Fairfield Sentry and two affiliated funds,

Fairfield Sigma Limited and Fairfield Lambda Limited.  (*See* Exhibit A to Motion for Entry of

Order Pursuant to Section 105(a) the Bankruptcy Code and Rules 2002(a)(3) and 9019(a) of the

Federal Rules of Bankruptcy Procedure Approving an Agreement by and Between the Trustee

and Kenneth Krys and Joanna Lau, Solely in Their Respective Capacities as the Foreign

Representatives for and Joint Liquidators of Fairfield Sentry Limited, Fairfield Sigma Limited,

and Fairfield Lambda Limited, *Picard v. Fairfield Sentry Fund Ltd.*, Adv. Pro. No. 09-01239

(Bankr. S.D.N.Y. May 9, 2011) ECF No. 69-2 (the "Fairfield Settlement Agreement") (Barak

Decl. Ex. 6).)  Pursuant to the Fairfield Settlement Agreement, the Liquidators consented to a

$3.054 billion judgment against Sentry.  (Fairfield Settlement Agreement ¶ 1.)

As part of the Fairfield Settlement Agreement, the Liquidators and the Trustee agreed to cooperate and "provide reasonable access to the other's documents, data, and other information" related to, among other subjects, claims against subsequent transferees of Fairfield funds. (Fairfield Settlement Agreement ¶ 14.)  Accordingly, the Trustee had access to Sentry's books, records, and other relevant documents prior to filing the LGI Complaint on August 18, 2011, and has maintained access to those materials ever since.

**Procedural History**

On March 3, 2017, the Bankruptcy Court dismissed the LGI Complaint.  *See* ECF No. 94. The Trustee appealed, and the Second Circuit reversed on February 25, 2019.  *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2824 (2020).  Following the denial of certiorari in June 2020, the Second Circuit vacated the judgment and remanded the case (and approximately 80 other parallel cases) to this Court, which reopened it on October 27, 2020.  Upon remand, the Trustee did not prosecute the case—or do anything to move the case forward—until after this Court *sua sponte* held a scheduling conference on September 15, 2021.  (ECF No. 104.)  Thereafter, the parties met and conferred.  The Trustee informed LGI that he would not amend the Complaint, and the parties established a briefing schedule for this motion.  (ECF No. 106.)

## ARGUMENT

## I.     THE LGI COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties (personal jurisdiction)."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).  "On a Rule 12(b)(2) motion to

dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court

has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84

F.3d 560, 566 (2d Cir. 1996).

The Trustee does not allege the Court has general jurisdiction over LGI—a Singaporean

entity that is not "at home" in the United States—and so the Trustee must plead facts supporting

the exercise of specific jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014).

Generally, to establish specific jurisdiction, a plaintiff must show (1) a statutory basis for specific

jurisdiction and (2) the exercise of such jurisdiction comports with due process. *Waldman v.

Palestine Liberation Org.*, 835 F.3d 317, 327–28 (2d Cir. 2016).  Because, the Trustee alleges

personal jurisdiction under Bankruptcy Rule 7004(f), which permits the exercise of personal

jurisdiction over LGI if such "is consistent with the Constitution and laws of the United States,"

the statutory analysis collapses into the constitutional analysis. *See, e.g.*, *Sec. Investor Prot.

Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106, 116 (Bankr. S.D.N.Y. 2011), *aff'd*,

474 B.R. 76 (S.D.N.Y. 2012).

Under the constitutional analysis, the exercise of specific jurisdiction over a nonresident

defendant will be consistent with due process only if (1) the defendant "purposefully availed

itself of the privilege of conducting activities within the forum State, thus invoking the benefits

and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); (2) the plaintiff's

claim "arise[s] out of or relate[s] to the foreign corporation's activities in the forum State,"

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); and (3) the

exercise of jurisdiction is reasonable under the circumstances, *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 477–78 (1985).  The Trustee fails to plausibly allege facts that satisfy this test.

### A.      LGI Was Not a Party to the Alleged Investments and Transfers So There Is No Basis to Assert Personal Jurisdiction Over It

The Trustee alleges personal jurisdiction over LGI based on either (1) LGI's alleged investments in Sentry before July 2005, or (2) LGI's alleged receipt of BLMIS property in July 2005.  (LGI Compl. ¶ 7, Ex. D.)  The LGI Complaint must be dismissed for the simple reason that LGI has never been a party to any subscription or redemption agreements with respect to which Plaintiff is seeking recovery in this adversary proceeding and did not receive, either as principal or agent, the alleged transfers Plaintiff seeks to recover in this adversary proceeding.  (Tan Decl. ¶ 8.[5])  As a result, the only "facts" on which the Trustee attempts to hook personal jurisdiction could not have occurred, and the LGI Complaint provides no plausible basis on which personal jurisdiction could be exercised.  More generally, personal jurisdiction cannot exist here because LGI is a Singaporean entity, and has never had an office or employee located in the United States, never maintained any bank accounts in the United States, and never derived any substantial revenue from the United States.  (*Id*. ¶¶ 6–7.)  Nor has the Trustee alleged to the contrary.  Without delving any further, the LGI Complaint must be dismissed under Rule 12(b)(2).

### B.    The Trustee's Claim Does Not Arise Out of or Relate to Any Purposeful Availment of United States Law by LGI

Even if LGI had been a party to any Sentry subscription or redemption agreements as alleged (it was not) or received the alleged transfers (it did not), the alleged contacts identified by the Trustee neither constitute purposeful availment nor are they connected to the Trustee's claim.

#### 1.    Alleged Foreseeability or Knowledge of Sentry's Connections to the United States and BLMIS Do Not Constitute Purposeful Availment

The Trustee alleges this Court may assert *in personam* jurisdiction over LGI because it "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield

---

[5]  "Courts may rely on materials outside the pleadings," such as affidavits filed by the parties, "in considering a motion to dismiss for lack of personal jurisdiction."  *Zim Integrated Shipping Services Ltd. v. Bellwether Design Technologies LLC*, 2020 WL 5503557, at *3 (S.D.N.Y. Sept. 10, 2020).

Sentry," "obtained [BLMIS] Customer Property by withdrawing money from Fairfield Sentry,"

and "direct[ed] investments through [Fairfield Greenwich Group ("FGG")], so as to "knowingly

accept the rights, benefits, and privileges of conducting business and/or transactions in the

United States and New York." (LGI Compl. ¶¶ 6–7.) Those conclusory allegations, even if

deemed true (which they are not), are insufficient to establish personal jurisdiction over LGI.

*First*, those allegations are not well-pleaded and therefore are not entitled to any weight.

The Trustee does not allege any factual basis to support the allegations that LGI "knowingly"

"direct[ed] funds to be invested with New York-based BLMIS through the Fairfield Sentry," or

that it "obtained this Customer Property by withdrawing money from [Sentry]." (*Id.*) Indeed,

those allegations are not only conclusory, they are contradicted by the fact LGI was not party to

the alleged agreements and did not receive the alleged transfers. (Tan Decl. ¶ 8.)

Even setting that aside, as explained in Section IV *infra*, the Trustee does not plausibly

allege LGI received any transfers of "Customer Property," let alone that it did so "knowingly."

To the contrary, the Trustee specifically alleges in the Fairfield Amended Complaint that Sentry

was very secretive and rebuffed attempts to discover how it operated. (Fairfield Amended

Complaint ¶¶ 342, 344, 346.) Those allegations contradict any suggestion LGI "knew" the

source of any funds Sentry used to make redemption payments.

Similarly, the LGI Complaint does not allege any basis for the legal conclusion, couched

as a factual allegation, that LGI "knowingly" "accept[ed] the rights, benefits, and privileges of

conducting business and/or transactions in the United States and New York," (LGI Compl. ¶ 7),

nor that LGI actually obtained any such "rights, benefits [or] privileges." *See First Nationwide

Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994) (citation omitted) (district courts

shall not accept as true "conclusions of law or unwarranted deductions of fact"). To the contrary,

11

this Court has held entities that invested in foreign feeder funds, rather than in BLMIS, as LGI is

alleged to have done here, do *not* have any rights in the U.S.-based SIPA proceedings.[6]

Accordingly, the conclusory and implausible allegations upon which the Trustee relies are not

well pleaded and do not establish a sufficient basis on which to exercise this Court's jurisdiction

over LGI.  *Achtman v. Kirby McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).

*Second*, even if well-pleaded, the Trustee's claims do not arise from LGI's purported

contacts with the forum.  Notably, both the Judicial Committee of the Privy Council and this

Court have held that actions to recover redemption payments from Sentry investors do not arise

from subscription agreements or any payments investors *made to* Sentry.  *See* (*Fairfield Sentry*

*Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9 ("*Migani*") (Barak Decl. Ex. 7)); *Fairfield*

*Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL

3756343, *8–12 (Bankr. S.D.N.Y. Aug. 6, 2018) (fraudulent transfer actions against investors in

Sentry not predicated upon Subscription Agreements).  Instead, the actions arise from the

supposed *receipt* of funds *from* Sentry pursuant to the terms of a different instrument.  *See infra*

Section I(B)(4).  As a result, LGI's supposed "knowledge" that its purported subscription

payments *to* Sentry would be commingled with other subscription payments and then invested by

Sentry with BLMIS cannot give rise to jurisdiction because the Trustee's claim does not arise

from those alleged activities.

*Third,* even if those allegations could be considered relevant to the jurisdictional analysis,

they all boil down to the contention that LGI knew another party with which LGI supposedly

dealt—Sentry—had contacts with the United States.  The law is clear, however, that a

defendant's knowing contacts with a third party who is, in turn, connected with the forum state is

---

[6]  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 290–91 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Aozora Bank Ltd. v. Sec. Inv. Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. Sec. Inv. Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013).

never enough to establish personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 284, 291 (2014) (the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State . . . '[U]nilateral activity' of a third party . . . 'cannot satisfy the requirement of contact with the forum State.'" (citation omitted)). Rather, the Supreme Court has made clear specific jurisdiction must be established by "contacts that the 'defendant *himself*' creates with the forum State," *not* by "contacts between the plaintiff (or third parties) and the forum State," and not by "the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284–85 (citations omitted); *see also Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

*Walden* and the line of jurisprudence on which it is based are dispositive. The LGI Complaint's conclusory allegations LGI knew Sentry had connections to New York and it would take any money invested in Sentry and further invest those funds with BLMIS in New York are merely allegations that LGI knew when it supposedly contracted with BVI-based Sentry that Sentry had some contacts with New York. Those allegations focus entirely on "contacts between the plaintiff (or third parties) and the forum State" and/or "the defendant's contacts with persons who reside there" (that is, Sentry's connections with New York based BLMIS)—they do not show that the defendant (LGI) purposely availed *itself* of the privilege of conducting activities in the forum state. *Walden*, 571 U.S. at 284–85.

This conclusion is further buttressed by federal and New York law that respects the separate legal personalities of companies and their shareholders. *Weisfelner v. Blavatnik (In re*

13

*Lyondell Chem. Co.)*, 543 B.R. 127, 141 (Bankr. S.D.N.Y. 2016). As a result, a company's

jurisdictional contacts will not be attributed to a shareholder unless the company was an alter ego

of the shareholder or acted as its agent. *See City of Long Beach v. Total Gas & Power N. Am.*

*Inc.*, 465 F. Supp. 3d 416, 437-39 (S.D.N.Y. 2020) (alter ego or agent); *Cooper v. Parsky*, 1997

WL 242534, at *14 (S.D.N.Y. Jan. 8, 1997) (alter ego), *aff'd in relevant part, vacated in part on*

*other grounds*, 140 F.3d 433 (2d Cir. 1998); *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26

N.Y.2d 280, 283 (1970) ("The mere fact that respondent is a controlling shareholder in . . . a

corporation concededly doing business in New York . . . , will not subject respondent . . . to in

personam jurisdiction . . . unless the record would justify our piercing the corporate veil.").

Here, the Trustee does not (and could not) allege that Sentry was an alter ego of LGI's, or that

LGI had any control whatsoever over Sentry's investment activities so as to show Sentry was

acting as LGI's agent.[7] As such, Sentry's connections with New York cannot be imputed to

LGI.

Moreover, the Supreme Court has held even when a foreign defendant contracts *directly*

with a forum resident, that alone does not suffice to show purposeful availment. *Burger King*

*Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state

party alone can automatically establish sufficient minimum contacts in the other party's home

forum, we believe the answer clearly is that it cannot.").[8] Here, the Trustee does not allege LGI

---

[7]   *See Cooper*, 1997 WL 242534, at *14 (merely alleging investment in a New York-based company "does not justify piercing the corporate veil"); *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (agency finding requires the plaintiff to show that the corporation "acted in New York for the benefit of, with the knowledge and consent of, *and* under some control by" the defendant shareholder (emphasis added)).

[8]   New York courts also routinely refuse to find specific jurisdiction over a nonresident defendant based on allegations the defendant contracted with a New York plaintiff that was expected to perform in New York. *See, e.g., Giuliano v. Barch*, 2017 WL 1234042, at *9 (S.D.N.Y. Mar. 31, 2017) ("Plaintiff's contention that the Court has personal jurisdiction because Plaintiff performed his obligations under the Agreements in New York is also unavailing."); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 327 (S.D.N.Y.) (allegations that plaintiff "built out an office in New York, hired personnel, and performed trades and analyses here is also unavailing" because "his unilateral activity in the forum state would be insufficient to establish jurisdiction"); *Roper Starch Worldwide, Inc. v. Reymer & Assocs.*,

14

contracted with a New York-based entity, but that it contracted with a BVI-based entity (Sentry), supposedly knowing the BVI entity would go on to contract with a New York entity.  If the Supreme Court has held the former is not enough, then *a fortiori* the latter is not enough either.

Similarly, the allegations LGI supposedly knew its money would find its way from Sentry to BLMIS is nothing more than a variation on the "stream of commerce" theory of personal jurisdiction that has been consistently rejected by the courts.  *See J. McIntyre Mach., Ltd v. Nicastro*, 564 U.S. 873, 882, 886 (2011) (plurality opinion) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum," but rather the defendant must "engage[] in conduct purposefully directed at [the forum]."); *In re Mexican Gov't Bonds Antitrust Litig.*, 2020 WL 7046837, at *3-4 (S.D.N.Y. Nov. 30, 2020) (holding neither an attempt to profit from conduct underlying the claim nor foreseeability of a harm in forum were sufficient to establish jurisdiction in absence of a defendant's contact with forum).  It cannot form the basis of personal jurisdiction over LGI here.

## 2. The Subscription Agreements with Sentry Are Not Relevant to the Jurisdictional Analysis

The LGI Complaint also alleges personal jurisdiction exists over LGI because it "entered into a subscription agreement with [] Sentry under which [it] submitted to New York jurisdiction."  (LGI Compl. ¶ 7.)  As noted above, LGI was not a party to any of the agreements or transfers with respect to which the Trustee is seeking recovery here.  In any event, the alleged subscription agreements are an insufficient basis on which to assert jurisdiction because—as briefly discussed above—the Trustee's claims to claw back funds received by LGI do not arise

---

2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998) (defendant's "knowledge of, and acquiescence in," New York plaintiff's performance in New York of services under the parties' contract did not suffice to establish personal jurisdiction over nonresident corporation); *SunLight Gen. Cap. LLC v. CJS Invs. Inc.*, 114 A.D.3d 521, 522 (1st Dep't 2014) ("Plaintiff's actions within New York" in connection with contract . . . could not "be imputed to [defendant] for jurisdictional purposes").

from those agreements.  In *Migani*, the UK Privy Council held that the Subscription Agreement

does not govern redemptions from Sentry nor does it make New York law applicable to

redemptions; instead, the redemptions are governed by Sentry's Articles of Association and BVI

law.  (*Migani* ¶¶ 10, 17, 20.)  Citing *Migani*, this Court held that a suit by the Sentry Liquidators

to recover a redemption payment is not a suit "with respect to [the Subscription] Agreement" and

therefore not a basis to find personal jurisdiction.  *Fairfield Sentry Ltd. v. Theodoor GGC*

*Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL 3756343, at *11–12 (Bankr. S.D.N.Y. Aug. 6,

2018).[9]

### 3.    The Allegation That LGI Sent Copies of the Subscription Agreements to FGG's New York Office Does Not Establish Personal Jurisdiction

The Trustee also alleges that personal jurisdiction exists here because LGI "sent a copy of

the subscription agreement to FGG's New York City office."  (LGI Compl. ¶ 7.)  This does not

even begin to show purposeful availment.  Even setting aside the fact LGI was not involved in

the relevant transactions, as discussed above, other defendants that actually subscribed to Sentry

have noted the Sentry subscription agreements themselves required that they be faxed to Citco

Bank's *Netherlands* office.  (*See, e.g.*, Exhibits A and B to Defendant Multi-Strategy Fund

Limited's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint,

*Irving H. Picard v. Multi-Strategy Fund Limited*, Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y. Jan.

28, 2022), ECF No. 93-1, 93-2 (Barak Decl. Ex. 11).)  No allegations have been or could be

made that LGI executed the Sentry subscription agreement in the United States.  And even if the

LGI Complaint's allegation that a copy of this (imaginary) agreement was also sent to New York

was true, that isolated, ministerial and superfluous act is an inadequate basis on which to assert

jurisdiction over LGI because courts routinely hold that merely communicating with a person

---

[9] The Trustee is in privity with the Sentry Liquidators and bound by this decision.  *See infra* n.13.

located in the forum state is an insufficient basis on which to exert personal jurisdiction over a

foreign defendant. *See, e.g., Kimco Exch. Place Corp. v. Thomas Benz, Inc.,* 34 A.D.3d 433, 434

(2d Dep't 2006) ("The defendants' acts of faxing the executed contracts to New York . . . do not

qualify as purposeful acts constituting the transacting of business."); *Hau Yin To v. HSBC*

*Holdings PLC*, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017) ("[C]ommunications with and

payments to New York merely to ensure compliance with contract terms . . . do not 'project' a

defendant into the state sufficiently to confer personal jurisdiction."), *aff'd*, 700 F. App'x 66 (2d

Cir. 2017); *Walters v. Woodson*, 1987 WL 19026, at *2  (S.D.N.Y. Oct. 14, 1987) (calls to New

York offices requesting advancement of funds under contract insufficient to confer personal

jurisdiction).

To the contrary, even if a contract had been faxed to FGG's New York office, such an act

would constitute nothing more than the type of "attenuated" contact that courts routinely hold

cannot serve as the basis for personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 475

("This 'purposeful availment' requirement ensures that a defendant will not be haled into a

jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."); *Spencer Trask*

*Ventures, Inc. v. Archos S.A.*, 2002 WL 417192, at *3 (S.D.N.Y. Mar. 15, 2002) ("The existence

of a purposeful activity should be considered in the totality of the circumstances, and jurisdiction

should not be asserted against a defendant based upon 'random' or 'fortuitous' contacts.");

*Sonterra Capital Master Fund Ltd. V. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 590

(S.D.N.Y. 2017) ("[T]he happenstance that the electronic communications of defendants acting

abroad were routed through a server in the United States cannot substantially contribute to a

finding of sufficient contacts with the United States.  Such contacts would be merely random,

fortuitous, or attenuated contacts.").

4.    **The Allegation LGI Wired Funds to Sentry Through a New York Bank Is Insufficient to Establish Personal Jurisdiction**

The Trustee also alleges personal jurisdiction exists because LGI purportedly "wired funds to [Fairfield Sentry] through a bank in New York." (LGI Compl. ¶ 7.) Again, LGI was not involved in the relevant transactions, and in any event, has never maintained a bank account in the United States. (Tan Decl. ¶¶ 6, 8.) At most, then, the Trustee is alleging (non-existent) transfers sent from LGI's non-U.S. bank to Sentry's non-U.S. bank were routed through New York correspondent bank accounts maintained by non-defendants.

But allegations that *other* parties maintained correspondent bank accounts that LGI's funds allegedly happened to pass through on their way to another overseas bank account do not suffice to establish jurisdiction over LGI. The use of a New York-based correspondent bank account can be used to establish personal jurisdiction over foreign defendants only in extremely limited circumstances, namely, when the defendant holds the correspondent bank account or at least purposely directed the use of that account, *and* such use is an essential element of the plaintiff's claim. *See, e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013); *Official Comm. Of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56 (S.D.N.Y. 2016); *Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 327 (2016) (defendant foreign bank's use of correspondent account was "essential step in the money-laundering scheme"). The Trustee does not allege, nor is it the case, that LGI maintained any form of bank account in the United States, or instructed any entity to use any bank account in the United States, correspondent or otherwise. At most, the Trustee alleges that transfers eventually destined for Sentry's Dutch bank accounts may have been sent to the Netherlands through New York correspondent accounts held by LGI's Singaporean banks. Unsurprisingly, courts have held that jurisdiction cannot be exerted over parties based on such adventitious contacts. *See,*

*e.g.*, *Steinberg v. A Analyst Ltd.*, 2009 WL 806780, at *6 (S.D. Fla. Mar. 26, 2009) (no personal

jurisdiction over hedge fund on the basis that international transfers to and from hedge fund were

routed through correspondent account of hedge fund's non-U.S. bank); *cf. Licci v Lebanese Can.*

*Bank, SAL*, 20 N.Y.3d 327, 338 (2012) (explaining personal jurisdiction does not lie where

defendant's use of correspondent bank account in New York was not purposeful, but "essentially

adventitious").

Even if LGI had sent funds to New York (which it did not) it is well established that

sending "payments to New York merely to ensure compliance with contract terms negotiated and

executed outside of New York do not 'project' a defendant into the state sufficiently to confer

personal jurisdiction." *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, 2017 WL 4877426, at *7

(S.D.N.Y. Oct. 27, 2017) (fact that contract required payments to New York bank account did

not establish specific jurisdiction); *see also Hau Yin To v. HSBC Holdings PLC*, 2017 WL

816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (wiring hundreds of

millions of dollars to and through New York under custodial and fund management agreements

negotiated and executed with BLMIS outside of the United States were insufficient to justify

finding personal jurisdiction existed).

Here, the Trustee does not allege the subscription agreements were negotiated or

executed in New York, or that any payments were sent by LGI "to" New York.  At most, the

Trustee alleges only they were sent "through" New York correspondent bank accounts

maintained by entities other than LGI.  Because courts have held more significant contacts do not

suffice to establish personal jurisdiction, the more attenuated contacts alleged here do not suffice

either.

Finally, in this regard, the Trustee's allegations about the flow of funds through New

York banks also fail to establish specific jurisdiction for the independent reason his claim does

not "arise out of or relate to" the fact that funds were allegedly transferred *through* New York

bank accounts.  The Trustee's claim does not depend on the coincidence that money happened to

flow "through" New York—it could have instead been transferred through, for example, London

banks, and the Trustee's claim would be exactly the same.  In such circumstances, the

happenstance New York banks were used cannot ground personal jurisdiction.  *Vasquez v. Hong*

*Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 262 (S.D.N.Y. 2020) (no specific

jurisdiction over foreign bank defendant based on its use of correspondent bank account in New

York for the transfers at issue, where use of the account was not necessary to the Ponzi scheme),

*appeal withdrawn*, 2021 WL 4190722 (2d Cir. Apr. 14, 2021).

> ### 5. Conclusory Allegations as to LGI Communicating With FGG Representatives Based in New York and Travelling to New York Do Not Establish Personal Jurisdiction

Lastly, the Trustee attempts to support the existence of personal jurisdiction over LGI by

alleging (without factual support) that LGI "communicated by e-mail and telephone with its

Fairfield Sentry account representatives located in FGG's New York City office, and traveled to

FGG's New York City office to meet with same."  (LGI Compl. ¶ 7.)  Again, as a preliminary

matter, those allegations are not only merely conclusory, they are false:  LGI was not involved in

the relevant transfers and so could not have communicated with New York persons or traveled to

New York in connection with them.  (Tan Decl. ¶ 8.)  And, as a theoretical matter, a single in-

person visit to New York is too sporadic and attenuated to constitute purposeful availment of its

laws anyway.  *See, e.g.*, *SPV Osus Ltd. V. UBS AG*, 114 F. Supp. 3d 161, 170–71 (S.D.N.Y.

2015) (no personal jurisdiction where defendants had only "sporadic or indirect contacts with the

United States"), *aff'd*, 882 F.3d 333 (2d Cir. 2018); *McKee Elec. Co. v. Rauland-Borg Corp.*, 20

N.Y.2d 377, 380, 382 (1967) (fact that Illinois corporation's representatives traveled to New

York and spent one day there conferring with plaintiff over contract dispute did not rise to

purposeful availment).  Nor does the Trustee's claim arise out of this isolated contact with New

York.  In addition, the LGI Complaint lacks any details regarding the alleged visit, such as its

timing or purpose.

The alleged email communications do not qualify as purposeful availment either because

"New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on

the basis of defendant's communication from another locale with a party in New York."

*Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (quoting *Beacon Enters., Inc. v.*

*Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)); *accord Int'l Customs Assocs. v. Ford Motor Co.*,

893 F. Supp. 1251, 1261(S.D.N.Y. 1995) ("Telephone calls and correspondence sent into New

York, by a non-domiciliary defendant who is outside New York, generally are insufficient to

establish personal jurisdiction.") (collecting cases); *RBC Cap. Mkts., LLC v. Garcia Hamilton &*

*Assocs., LP*, 2021 WL 230194, at *4 (S.D.N.Y. Jan. 22, 2021) (same).  "[O]nly in cases where

the telephone call or communication clearly shows that the defendant intends to project itself into

ongoing New York commerce, such as where a defendant directly conducts market activity or

securities transactions in New York over the telephone, do New York courts sustain jurisdiction

based on telephone calls or facsimile transmissions alone." *Metals Alliance Corp. v. Beshay*,

1998 WL 811788, at *2 (S.D.N.Y. Nov. 19, 1998) (citation omitted).  The Trustee does not

allege LGI made the redemptions he seeks to claw back by sending e-mails or engaging in

telephone calls with individuals located in New York.  As a result, these conclusory allegations

at most constitute attenuated contacts and are not a sufficient basis on which to assert personal

jurisdiction over LGI, a Singaporean entity.

### C.    The Exercise of Personal Jurisdiction Over LGI Would Be Unreasonable

As discussed above, LGI's alleged contacts with the United States do not constitute

purposeful availment, nor do the Trustee's claims arise from those contacts.  Thus, personal

jurisdiction cannot be exercised here.  But jurisdiction also cannot be asserted over LGI because

doing so would not comport with constitutional due process.  *See World-Wide Volkswagen Corp.*

*v. Woodson*, 444 U.S. 286, 297 (1980).  Personal jurisdiction is not a game where, if you just

step over the line, you've submitted—instead, jurisdiction must be reasonable in all the

circumstances.  Courts apply a "sliding scale" in assessing whether jurisdiction is consistent with

due process: "the weaker the plaintiff's showing on minimum contacts, the less a defendant

needs to show in terms of unreasonableness to defeat jurisdiction."  *LaMonica v. CEVA Grp.,*

*PLC (In re CIL Ltd.)*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) (citation omitted); *see also Porina*

*v. Marward Shipping Co.*, 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) (same), *aff'd*, 521

F.3d 122 (2d Cir. 2008).  In evaluating whether exercising jurisdiction would be reasonable, "[a]

court must consider the burden on defendant, the interests of the forum State, and the plaintiff's

interest in obtaining relief."  *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113

(1987).  This analysis "'requires a more concerned focus' where the contacts with New York are

not substantial and the entire matter has a substantial connection with another country."

*Wortham v. KarstadtQuelle AG (In re Nazi Era Cases Against German Defendants Litig.)*, 320

F. Supp. 2d 204, 228 (D.N.J. 2004) (citation omitted), *aff'd*, 153 F. App'x 819 (3d Cir. 2005).

As the Supreme Court has similarly cautioned:

> [T]he Federal Government's interest in its foreign relations
> policies[] will be best served by a careful inquiry into the
> reasonableness of the assertion of jurisdiction in the particular
> case, and an unwillingness to find the serious burdens on an alien
> defendant outweighed by minimal interests on the part of the
> plaintiff or the forum State. Great care and reserve should be
> exercised when extending our notions of personal jurisdiction into
> the international field.

*Asahi*, 480 U.S. at 115 (citation omitted).  Courts have held that defendants should be dismissed

in circumstances like these, where defendants' alleged contacts with the forum "'barely satisf[y]
the minimum contacts standard'" and "a majority of the reasonableness factors weigh against the
exercise of jurisdiction." *Rocky Mountain Chocolate Factory v. Arellano*, 2017 WL 4697503, at
*11 (D. Colo. Oct. 19, 2017) (citation omitted); *see also Metropolitan Life Ins. Co. v. Robertson-
Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) ("depending upon the strength of the defendant's
contacts with the forum state, the reasonableness component of the constitutional test may have a
greater or lesser effect on the outcome of the due process inquiry"); *Ticketmaster-New York, Inc.
v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994) ("We think . . . that the reasonableness prong of the
due process inquiry evokes a sliding scale: the weaker the plaintiff's showing [on minimum
contacts], the less a defendant need show in terms of unreasonableness").

The Trustee here relies on the thinnest of reeds to hang personal jurisdiction, and
therefore needs to make the strongest of showings that its exercise would be reasonable. Each of
the factors that the Court must assess in weighing reasonableness, however, weigh against
jurisdiction. LGI's costs litigating here are high: it is a Singaporean entity that was not involved
in the transactions alleged, and has never had any operations, employees, offices, or bank
accounts based in the United States. (Tan Decl. ¶¶ 6–8.) On the other hand, neither the forum
state nor the plaintiff have a strong interest in obtaining relief in this Court—the Trustee can put
forward no reason why New York is more reasonable than other available forums, and the
Trustee cannot have a strong interest in obtaining relief against LGI when he is seeking to
recover approximately two-thirds more money from alleged subsequent transferees than he
alleges was ever transferred by BLMIS to Sentry in the first place. *See infra*, Section IV. Courts
in New York have no particular interest in litigating claims against defendants that engaged in no
activities in New York. *See Asahi*, 480 U.S. at 118–19 (minimal contacts with forum state

23

should not be used to justify jurisdiction in case creating "serious burdens" on foreign

defendant); *Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 478-79 (4th Cir.

1993) (jurisdiction not reasonable over Australian company given the fact most aspects of the

relevant contract related to Australia, defendant's interest in "not sending its employees to

Australia for trial or hiring foreign counsel," and nothing suggested Australian courts were

incapable of granting relief).  Moreover, the fact that asserting jurisdiction over LGI on this

record would vastly expand the scope of U.S. courts' personal jurisdiction so as to make any

person with even indirect, attenuated contacts to the U.S. amenable to suit in a New York court

further tips the balance against exercising such power.  *Asahi*, 480 U.S. at 115 (citation omitted)

("Great care and reserve should be exercised when extending our notions of personal jurisdiction

into the international field.").  Because the alleged contacts are insignificant and all of the

reasonableness factors weigh against jurisdiction, the Court should dismiss the LGI Complaint

with prejudice.

## II.    THE LGI COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO PLEAD AVOIDABILITY AND PURSUANT TO RULES 8(a) AND 10(c) FOR IMPROPER INCORPORATION

To recover from a mediate (subsequent) transferee, the trustee must plead and prove,

among other things, an initial transfer that is avoided or at least avoidable.  11 U.S.C. § 550(a);

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec*. LLC, 2013 WL 1609154, at *6–7

(S.D.N.Y. Apr. 15, 2013).  The LGI Complaint does not satisfy this burden with respect to any of

the alleged BLMIS-to-Sentry transfers.  Instead, the Trustee puts forth only conclusory

allegations he "sought to avoid" the initial transfers and that the initial transfers "are avoidable

and recoverable" under the applicable provisions of the Bankruptcy Code, the New York Debtor

& Creditor Laws, and SIPA.  (LGI Compl. ¶¶ 35–40.)  Without additional factual allegations

establishing that the initial transfers are avoidable, these conclusory allegations are insufficient to

state a claim under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Rather than alleging sufficient facts in the LGI Complaint, the Trustee attempts to plead

avoidability through the wholesale incorporation of the Fairfield Amended Complaint.  (LGI

Compl. ¶ 35.)  But Rule 10(c)—which provides "[a] *statement* in a pleading may be adopted by

reference elsewhere in the same pleading or in any other pleading or motion" (emphasis

added)—does not allow a plaintiff to incorporate entire pleadings wholesale (let alone 217-page

pleadings).  Indeed, "[c]ourts have routinely required that a pleading invoking incorporation by

reference 'must specifically identify which portions of the prior pleading are adopted therein.'"

*Muhammad v. Bethel-Muhammad*, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012)

(quoting *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D.Mass.1995) (collecting

cases)); *see also United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461

(E.D.N.Y. 2007) (citation omitted) (explaining that "although there is no prescribed procedure

for referring to incorporated matter, the references to prior allegations must be direct and

explicit, in order to enable the responding party to ascertain the nature and extent of the

incorporation.").

Rule 10(c) is meant to "encourage pleadings that are short and free of unneeded

repetition."  *Wolfe v. Charter Forest Behavioral Health Systems, Inc.*, 185 F.R.D. 225, 230

(W.D. La. 1999).  The Trustee's *en masse* incorporation of all 798 paragraphs from the 217-page

Fairfield Amended Complaint makes a mockery of Rule 10(c), burdening both LGI and this

Court with determining which allegations, issues and claims are actually relevant to *this*

litigation filed against *this* defendant.  *See Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010

WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) ("A Rule 10(c) adoption clause that does little

more than make wholesale reference to the contents of a prior pleading exemplifies the kind of

incorporation that fails to give the requisite 'guidance to the responding party.'").

Likewise, the Trustee's wholesale incorporation of the Fairfield Amended Complaint violates Rule 8(a), which requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Second Circuit explained Rule 8(a)'s purpose is to provide "fair notice of the claim asserted so as to enable [defendant] to answer and prepare for trial," and to prevent "unnecessary prolixity in a pleading" that will "place[] an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (citation omitted). Accordingly, courts have consistently held that incorporating an entire pleading is a "blatant violation" of Rule 8(a). *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007); *see also Davis v. Bifani*, 2007 WL 1216518, at *1 (D. Colo. Apr. 27, 2007) (plaintiff violated Rule 8(a) by his wholesale incorporation of a complaint from a separate action, even though the separate action was between the same parties).

The Trustee's incorporation of the Fairfield Amended Complaint runs directly contrary to the purpose and plain language of Rule 8(a). LGI cannot, at risk to itself, be expected to determine which allegations in the 217-page Fairfield Amended Complaint are relevant and warrant a response. LGI also should not be forced to answer all of the Fairfield Amended Complaint's allegations, including those wholly unrelated to the instant action. *See Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 463–64 (explaining that permitting the wholesale incorporation of other pleadings would force defendants to respond to "every paragraph of every attached pleading"). Such result is contrary to Rule 8(a)'s goal of reducing incongruous burdens on defendants and giving them fair notice of the claims against them.

Adding to the confusion, the LGI Complaint incorporates a pleading that has been superseded by a further amended complaint. *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (granting motion to dismiss noting that "wholesale incorporations . . . that seek to incorporate superseded versions of a complaint, must be examined with special care"). The differences between the two pleadings are not insignificant, either—the Fairfield SAC completely overhauls and rewrites most of the Fairfield Amended Complaint purportedly incorporated here. (*Compare* Barak Decl. Ex. 3 *with* Barak Decl. Ex. 4; *see also* Barak Decl. Ex. 5.) To require LGI to respond to the allegations contained in the 217-page Fairfield Amended Complaint, when it is not even clear which allegations are still extant, is to require LGI to do exactly what Rules 8(a) and 10(c) were designed to prevent.

*American Casein Co. v. Geiger (In re Geiger)*—where the court held plaintiff's wholesale incorporation of a prior complaint violated Rule 8(a)—is on point. 446 B.R. 670 (Bankr. E.D. Pa. 2010). There, the plaintiff filed a "bare-bones" complaint alleging the elements of its claim in conclusory fashion and instead relied on the incorporated pleadings to meet the pleading standard. *Id.* at 679–80. Noting that the plaintiff did not even attempt to match the complaint's allegations with "the mass of information . . . incorporated by reference," the court held that the incorporation of the entire pleading violated Rule 8(a). *Id.*

So too, here. The LGI Complaint is just 18 pages long and alleges the avoidability of the BLMIS-Sentry transfers in conclusory fashion. In an attempt to remedy this deficiency, the Trustee purports to incorporate the entire Fairfield Amended Complaint without matching the LGI Complaint's "bare-bones" allegations to any specific portion of the 798-paragraph morass, a shortcoming exacerbated by the fact most of those allegations are no longer even extant. Under these circumstances, it is impossible for LGI to prepare defenses or otherwise respond. As the

*Geiger* court put it: "[p]utting together the puzzle of matching the bare-bones allegations with the meat of the attached materials is the job of the Plaintiffs, not of the Debtor or the Court." *Id.* Accordingly, the Court should reject the Trustee's wholesale incorporation of the Fairfield Amended Complaint and dismiss the LGI Complaint pursuant to Rules 8(a), 10(c) and 12(b)(6).

## III. THE TRUSTEE'S CLAIMS ARE BARRED BY BANKRUPTCY CODE § 546(e)

The Trustee seeks to recover from LGI pursuant to Bankruptcy Code Section 550(a), which provides that, to the extent a transfer is avoided under certain sections of the Bankruptcy Code, a trustee may recover the property transferred, or its value, from the initial transferee or any subsequent transferee. The LGI Complaint must be dismissed for failure to state a claim, though, because Section 546(e) bars a trustee from avoiding a transfer (other than under Section 548(a)(1)(A), which has only a two-year lookback period) if the transfer (1) was made by, to, or for the benefit of one of the entities listed in Section 546(e), such as a stockbroker, financial institution, or financial participant; and (2) was either a settlement payment or a transfer in connection with a securities contract. Specifically, Section 546(e) provides:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e). The Second Circuit has explained that in enacting Section 546(e) Congress chose to favor the interest of ensuring finality in securities transactions over the interest of

permitting a bankruptcy trustee to recover otherwise avoidable transfers. *Picard v. Ida Fishman*

*Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 423 (2d Cir. 2014)

("[B]y enacting § 546(e), Congress provided that, for a very broad range of securities-related

transfers, the interest in finality is sufficiently important that they cannot be avoided by a

bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)."); *see also*

*Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co. Fraudulent*

*Conveyance Litig.)*, 946 F.3d 66, 90 (2d Cir. 2019) ("*Tribune I*") ("Unwinding settled securities

transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and

stability are necessary to attract capital."), *cert. denied*, 141 S. Ct. 2552 (2021).  Specifically in

relation to adversary complaints filed against *direct* investors in BLMIS, the Second Circuit has

cautioned that "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS

clients—many of whom are institutional investors and feeder funds—would likely cause the very

'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at

420.  The concern expressed by the Second Circuit is only amplified in this case, where the

defendants are even further removed from BLMIS's fraud.  Here, it is evident from the pleadings

the transfers the Trustee seeks to avoid fall within the plain terms of Section 546(e) and thus the

LGI Complaint must be dismissed.[10]

### A.    The Alleged Transfers Were Both Made by and to and for the Benefit of Entities Listed in Section 546(e)

For two independent reasons, the alleged transfers satisfy Section 546(e)'s first

requirement because they were (1) made by a stockbroker, and (2) made to (and for the benefit

---

[10] LGI, as an alleged subsequent transferee, can raise Section 546(e) even though Fairfield Sentry did not raise it.  *See Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers . . . the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.").

of) a financial institution, both of which are entities protected by the statutory safe harbor.

### 1.    The Transfer Was Made by a Stockbroker

The District Court has already held BLMIS constitutes a "stockbroker" for the purposes

of Section 546(e).  *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y.

2012), *aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec.*

*LLC)*, 773 F.3d 411 (2d Cir. 2014).  This holding was not challenged by the Trustee on appeal.

*Fishman*, 773 F.3d at 417 ("It is not disputed [by the Trustee] that BLMIS was a 'stockbroker'

for the purposes of § 546(e).").  As a result, the transfer the Trustee seeks to avoid was made by

a stockbroker, and the first prong of Section 546(e) has been satisfied.

### 2.    The Transfers Were Also Made to or for the Benefit of a Financial Institution

The first prong of the Section 546(e) analysis is also satisfied because the transfer was

made to or for the benefit of a financial institution.  Bankruptcy Code Section 101(22) defines

"financial institution" to include not only "an entity that is a commercial or savings bank," but

also the customer of such a bank "when [the bank] is acting as agent or custodian for a customer

. . . in connection with a securities contract."  11 U.S.C. § 101(22)(A).  In *Fairfield Sentry Ltd. V.*

*Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2020 WL 7345988 (Bankr. S.D.N.Y.

Dec. 14, 2020) ("*Fairfield III*"), this Court held Sentry was a "financial institution[]" because it

was a customer of Citco Bank, which acted as its agent in connection with the securities

contracts pursuant to which the redemption payments were made.  *Id.* at *7.

That finding follows from facts alleged by the Trustee, as well.  Citco Bank is a bank

regulated by the Netherlands and registered with Irish regulatory authority.  *Fairfield III*, 2020

WL 7345988, at *6 & n.11.[11]  In a document filed with this Court, the Trustee alleged the

founders of FGG, which organized Sentry, "contracted Citco Global Custody N.V. . . . to

nominally serve as the custodian of the [] Sentry assets" and "opened bank accounts at Citco

Bank Nederland, N.V. Dublin Branch."  (*See* ECF No. 76 ("Proffer") ¶ 35 (Barak Decl. Ex.

12).[12])  Moreover, the Trustee alleged FGG personnel "had final control of the [] Sentry bank

accounts and controlled all of [] Sentry's relationships with the various Citco entities," and

"controlled and approved all subscriptions into and redemptions from the fund."  (Proffer ¶¶ 35,

37.)  Sentry was therefore a "customer" of Citco Bank such as to make it a "financial

institution."  *Fairfield III*, 2020 WL 7345988, at *7; *see also Tribune I*, 946 F.3d at 78–79.

Here the Trustee alleges the transfers from BLMIS to Sentry were made from BLMIS

accounts designated as "Citco Global Custody N.V. FBO Fairfield Sentry Ltd.," with the account

numbers 1FN012 and 1FN045.  (LGI Compl. Ex. B.)  Those allegations combined with the

others the Trustee has made in related proceedings are sufficient to establish that Citco Bank was

acting as Sentry's agent in connection with the redemptions at issue.  To paraphrase the Second

Circuit in *Kirschner v. Large Shareholders (In re Tribune Co. Fraudulent Conveyance

Litigation)*, "[h]ere, [Sentry] entered into an agreement with [Citco Bank] whereby [Citco Bank]

was hired to be a steward of [Sentry]'s money . . . . It was clearly acting on behalf of [Sentry],

which is enough to satisfy § 546(e)."  10 F.4th 147, 176 (2d Cir. 2021), *cert. denied*, 2022 WL

---

[11]  *See De Nederlandsche Bank, Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTDG&relationNumber=B0275 (last visited Mar. 24, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited Mar. 24, 2022) (classifying Citco Bank as a "credit institution . . . whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account"). This Court can take judicial notice of information from such public registries. *See Tribune I*, 946 F.3d at 78; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

[12]  This Court may take judicial notice of admissions in documents in the public record filed by the Trustee, particularly where the Trustee does not dispute their accuracy. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000); *Nastasi & Assocs. v. Bloomberg, L.P.*, 2021 WL 3541153, at *4-5 (S.D.N.Y. Aug. 11, 2021).

516021 (U.S. Feb. 22, 2022).

    This Court came to the same conclusion in *Fairfield III*:

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by
> Citco Bank establishes the necessary agency. It is implausible to infer that
> Citco Bank made the redemption payments to specific redeemers in
> specific amounts absent the [Fairfield] Funds' directions to do so.
> Moreover, Citco Bank accepted those directions by executing the
> redemption payments. Based on the foregoing, the Funds were customers
> of Citco Bank who acted as their agents in connection with the securities
> contracts pursuant to which the redemption payments were made, and the
> Funds were, therefore "financial institutions" within the meaning of 11
> U.S.C. § 546(e).

2020 WL 7345988, at *7 (footnote omitted).[13]  *Fairfield III* is binding on the Trustee because he

was in privity with the Fairfield Liquidators who were litigating the consolidated Fairfield

redeemer actions partly for the Trustee's benefit.[14]

### B.    The Transfers Were Both Settlement Payments and Were Made in Connection with a Securities Contract

    The second requirement needed to establish the Section 546(e) safe-harbor applies is also

satisfied in two separate and independent ways; specifically, the relevant transfers from BLMIS

to Sentry were both (1) settlement payments and (2) made in connection a securities contract.

---

[13] LGI reserves the right to argue, at the appropriate time, the alleged transfers to LGI were protected under Section 546(e) for other reasons, including, without limitation, that LGI fell within the definition of a "financial institution."

[14] Pursuant to the Fairfield Settlement Agreement that was incorporated into the Consent Judgment on which the Trustee relies, (*see* LGI Compl. ¶ 40), the Fairfield Liquidators will pay the Trustee 15% of their net recoveries from all claims the Liquidators assert against redeemers from the Fairfield funds (included in the definition of "Sharing Claims") until the Trustee has been paid $1.924 billion.  (Fairfield Settlement Agreement ¶¶ 1, 4, 11.)  The Fairfield Settlement Agreement states that "[t]he Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims."  (*Id.* ¶ 14.)  The Trustee and the Liquidators' agreed joint interest in any such recovered BLMIS customer property constitutes a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property of the kind recognized by the Supreme Court as giving rise to nonparty issue preclusion in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).  Because the Trustee is in privity with the Liquidators in actions to recover alleged BLMIS customer property, such as the actions at issue in *Fairfield III*, and because the issue of Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on ground of the Section 546(e) safe harbor, this Court's finding in *Fairfield III* that Sentry was a "financial institution" is binding on the Trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

### 1.    The Transfers Were Settlement Payments

The Bankruptcy Code defines "settlement payment" as:

> a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade.

11 U.S.C. § 741(8).  The Second Circuit has held this statutory definition should be broadly construed to apply to "the transfer of cash or securities made to complete [a] securities transaction." *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 334 (2d Cir. 2011).  And, indeed, the Second Circuit has already held in *Fishman* that transfers from BLMIS to its direct account holders (such as Sentry) are "settlement payments" because "[t]hat is what the BLMIS clients received."  773 F.3d at 422.  This, the Second Circuit held, was true even though BLMIS did not actually execute any trades in making the payments.  *Id.* ("The statutory definition and *Enron* compel the conclusion that, for example, if I instruct my broker to sell my shares of ABC Corporation and remit the cash, that payment is a 'settlement' even if the broker may have failed to execute the trade and sent me cash stolen from another client.").

### 2.    The Transfers Were Made in Connection with Securities Contracts

The second requirement is also independently satisfied because the transfers at issue were made "in connection with securities contracts."  At the outset, it is important to note that Bankruptcy Code § 741(7) defines "securities contract" "with extraordinary breadth," to include "contracts for the purchase or sale of securities, as well as any agreements that are *similar* or *related to* contracts for the purchase or sale of securities." *Fishman*, 773 F.3d at 417–18.  With regard to the Section 546(e) safe harbor, "[t]his concept is broadened even farther because [it] also protects a transfer that is 'in connection' with a securities contract." *Id.*  And in *Fishman*, the Second Circuit already held that the various agreements with BLMIS pursuant to which the

funds the Trustee sought to clawback were made in connection with "securities contracts" within

the ambit of Section 546(e).  *Id.* at 418–22.[15]  Similarly, the term "in connection with"

emphasizes the wide scope of Section 546(e).  *Id.*

The same reasoning and result apply here.  Implicit in the Trustee's subsequent transfer

claim is the allegation that the funds LGI allegedly received were transferred from BLMIS to

Sentry so that Sentry could then satisfy LGI's redemption request.  And, indeed, the Trustee has

made that plain in filings in other cases.  (*See, e.g.*, Fairfield Amended Complaint ¶¶ 53, 58, 63,

67, 71, 76, 80, 85, 100, 104, 109, 114 (alleging that Sentry withdrew funds from its BLMIS

account "in order to" pay redemption payments).)  Although as demonstrated in Section IV

*supra*, this allegation is implausible, its assertion necessarily connects BLMIS's initial transfer to

Sentry to LGI's alleged contract with Sentry that authorized the redemption.  Thus, as in

*Fishman,* the alleged transfers made by BLMIS to Sentry were both made "in connection with"

the securities contracts Sentry had entered into with BLMIS, and made "in connection with" the

allegedly related securities contract, *i.e.*, Sentry's Articles of Association, which governed LGI's

alleged Sentry redemptions.  *See Migani* ¶ 10 ("the terms of the subscriber's membership of the

Fund, which govern the redemption of its shares . . . are to be found in the Articles of

Association of the Fund").  And as a result, the transfers from BLMIS to Sentry satisfy Section

546(e)'s second requirement because they were both (1) made in connection with a securities

contract between BLMIS and Sentry, and (2) made in connection with an alleged securities

contract between Sentry and LGI.  *See Fishman*, 773 F.3d at 422 ("Section 546(e) sets a low bar

for the required relationship between the securities contract and the transfer sought to be

---

[15]  Moreover, the Second Circuit rejected the Trustee's argument that because BLMIS did not actually engage in securities transactions, the transfers fell outside the ambit of Bankruptcy Code § 546(e).  *Id.* at 419–20.  The courts have also made clear the definition of "securities contract" includes "redemption requests."  *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *8 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") ("the definition of a securities contract . . . includes . . . redemption requests.").

avoided" and that "a transfer can be connected to, and can be made in relation to, multiple

documents or purposes simultaneously"); *Cohmad*, 2013 WL 1609154, at *9 (transfer from a

debtor to an initial transferee may qualify as having been made "in connection with a securities

contract" between the initial transferee and a subsequent transferee for the purpose of Section

546(e)). Indeed, it would make no sense for the alleged transfer between Sentry and LGI to be

protected by Section 546(e) in any avoidance action filed by Sentry, yet allow the Trustee, who

is further removed from that transfer to nonetheless claw it back. Any attempt to do so should be

rejected.

## IV.    THE LGI COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO PLAUSIBLY ALLEGE THAT LGI RECEIVED BLMIS PROPERTY

The LGI Complaint also must be dismissed under Rule 12(b)(6) because the Trustee fails

to plausibly allege that the subsequent transfers made by Sentry to LGI contained customer

property. In order to state a claim, the Trustee must plausibly allege that each redemption

payment LGI received was a subsequent transfer of BLMIS customer property. *See* 15 U.S.C. §

78fff-2(c)(3) ("the trustee may recover any property transferred by the debtor which, except for

such transfer, would have been customer property if and to the extent that such transfer is

voidable or void under the provisions of title 11"); *Picard v. Shapiro (In re Bernard L. Madoff

Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*") (holding the Trustee must

allege not just that the initial transfer is avoidable, but that "the initial transfers (or subsequent

transfers of the initial transfers) were transferred to the subsequent transferee" to state a claim

under Section 550); *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005) (holding the

same requirement applies to claims asserted under New York's Debtor and Creditor Law).

The avoidance claim must also be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Barebones

allegations of customer funds being transferred to a subsequent transferee fail to satisfy the

plausibility requirement:

> The Trustee must allege facts that support the inference that the
> funds at issue originated with . . . BLMIS, and contain the
> "necessary vital statistics"—the "who, when, and how much" of
> the transfers to establish that an entity was a subsequent transferee
> of the funds.  At the pleading stage, the Trustee is not required to
> provide a "dollar-for-dollar accounting" of the exact funds at issue.
> However, barebones allegations that the funds at issue were
> transferred to the Subsequent Transferees, without more detail, are
> insufficient.

*Shapiro*, 542 B.R. at 119.   In *Shapiro*, the court dismissed a conclusory subsequent transferee

claim because the complaint "[did] not tie any initial transfer to any subsequent transfer or

Subsequent Transferee."  *Id.*

The same flaws warranting dismissal in *Shapiro* appear in the LGI Complaint.  As a

preliminary matter, and as noted above, LGI was not involved in the relevant transactions nor did

it receive the alleged transfers.  (Tan Decl. ¶ 8.)  As a result, there is no plausible allegation LGI

received BLMIS property—it did not.  Even setting those dispositive facts aside, the LGI

Complaint still fails to plausibly allege LGI received BLMIS property.

The Trustee alleges that in the six years preceding the BLMIS petition date, BLMIS

transferred approximately $3 billion to Sentry.  (LGI Compl. ¶ 35.)  In turn, he alleges "[a]

portion of [those transfers] was subsequently transferred either directly or indirectly to" LGI.

(*Id.* ¶¶ 42, 45.)  The Trustee attaches a 75-page exhibit listing thousands of transactions recorded

in Sentry's account at BLMIS.  (*Id.* Ex. C.)  However, the Trustee does not identify which of

those transactions, if any, constituted BLMIS customer property that were subsequently

transferred to LGI.  The Trustee in essence asks the Court to infer that because BLMIS

transferred such large sums of money to Sentry during the six-year period, *all* of the money

transferred from Sentry to LGI (*and* every other alleged subsequent transferee) during that time *must* be recoverable customer property. Those conclusory and general allegations lack the "vital statistics necessary to support a subsequent transfer claim." *Shapiro*, 542 B.R. at 119.

The Trustee's claims against other parties in similar actions moves the Trustee's allegations from the realm of conclusory and implausible into the impossible. While the Trustee alleges BLMIS transferred approximately $3 billion to Sentry (LGI Compl. ¶ 35), the Trustee seeks to recover over $5 billion[16] of subsequent fraudulent transfers from dozens of other defendants. (*See* Barak Decl. ¶ 15(n), Exs. 8, 9, 10.) Given this, the Trustee's allegations that the various avoidance-action defendants received BLMIS property are not only implausible—for more than one third of the value the Trustee seeks to recover, they are impossible. Indeed, those allegations necessarily mean that Sentry used funds *other than those received from and originating with BLMIS* to make redemption payments, something Sentry confirmed in another adversary proceeding, when it admitted that "[f]rom time to time, to make Redemption Payments, Sentry . . . utilized subscription monies of other investors on hand that were directed for investment in BLMIS." (*See* First Amended Complaint, *Fairfield Sentry Ltd. v. Citco Global Custody NV*, Adv. Pro. No. 19-01122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 19 ¶ 63 (Barak Decl. Ex. 13).)

Despite those issues, the Trustee has alleged in a conclusory manner that essentially every single transfer made by Sentry in the six-year look back period, including the alleged transfers to LGI, contained BLMIS property. He has not provided any particularized allegations

---

[16] As explained in the Barak Declaration, this figure was calculated by summing the amounts of the transfers the Trustee is seeking to claw back from all of the Sentry subsequent transferees in each of the adversary proceedings he has initiated in this case. Barak Decl. ¶ 15(n). Doing so required two items: copies of the adversary proceedings and a calculator. No accounting methodology or expert financial analysis is required.

to explain how or why certain payments made by Sentry to subsequent transferees actually

originated with BLMIS rather than elsewhere.  Such "barebones" generalized pleadings fail to

provide the "vital statistics" needed to support the inference that the monies the Trustee seeks to

claw back from LGI are actually BLMIS customer property.  *Shapiro*, 542 B.R. at 119.

Mathematical glitches beset the claim the Trustee has specifically alleged against LGI as

well.  The LGI Complaint alleges LGI received $50,583,443 in BLMIS property through a series

of redemptions all made on the same day—July 15, 2005.  (LGI Compl. Ex. D.)  Importantly,

however, by July 5, 2005, Sentry had long exhausted all BLMIS property allegedly transferred to

it.[17]  While Sentry allegedly received a transfer from BLMIS of $85 million on July 6, 2005 (*see*

*id.* Ex. C at 54), the Trustee has alleged that Sentry paid out $114 million between July 6 and

July 15, 2005 (the date the transfers were allegedly made to LGI).  (Barak Decl. ¶ 15(m).)  As a

matter of basic addition and subtraction, Sentry *must* have used funds other than those received

from BLMIS to make at least some of those payments.  The Trustee makes no plausible

allegations that any (let alone all) of the alleged transfers to LGI were made from BLMIS funds

rather than other Sentry monies.  Given the Trustee's failure to tie the alleged transfers to

BLMIS, and the mathematical impossibility of the Trustee's overall position, the LGI Complaint

fails to state a plausible claim the money allegedly received by LGI was BLMIS customer

property.

---

[17] The first recoverable transfer of BLMIS property to Sentry occurred on May 9, 2003.  (LGI Compl. Ex. C at 19.)
Between May 9, 2003 and July 5, 2005, the amount of alleged subsequent transfers made by Sentry to other parties
vastly exceeds the amount of funds transferred by BLMIS to Sentry, meaning that, by July 5, 2005—two weeks
before the alleged transfer to LGI—Sentry had long exhausted any BLMIS property it had received.  Specifically,
between May 9, 2003 and July 22, 2003, the Trustee alleges BLMIS made three separate transfers to Sentry which
totaled $120 million combined.  (LGI Compl. Ex. C at 19–20.)  However, the Trustee also alleges that Sentry
transferred more than $200 million of BLMIS property to other subsequent transferees between May 9, 2003 and
December 31, 2003—$80 million more than Sentry received from BLMIS.  (Barak Decl. ¶¶ 15(h).)  Between
January 1, 2004 and July 5, 2005, Sentry did not receive any BLMIS property (LGI Compl. Ex. C at 20-23, 51-54,
66, 72), but supposedly continued to make subsequent transfers using BLMIS funds. (Barak Decl. ¶¶ 15(j).)  Indeed,
the Trustee alleges that Sentry subsequently transferred over $450 million in customer property between January 1,
2004 and July 5, 2005.  (*Id.*)

The Trustee's claims also fail the "single-satisfaction" rule contained in Bankruptcy Code

Section 550(d).  While Section 550(a) provides a mechanism to recover from either the initial or

subsequent transferees property that has been avoidably transferred, Section 550(d) provides that

"[t]he trustee is entitled to only a single satisfaction under [section 550(a)]."  11 U.S.C. § 550(d).

This "single-satisfaction rule" is designed to "prevent a single plaintiff from recovering its

damages several times over from multiple defendants." *Laborers Local 17 Health & Benefit

Fund v. Philip Morris, Inc.*, 191 F.3d 229, 241 (2d Cir. 1999); *see also Freeland v. Enodis Corp.*,

540 F.3d 721, 740 (7th Cir. 2008) (stating that "the trustee can recover from any combination of

the entities mentioned [in section 550(a)] subject to the limitation of a single

satisfaction"); Collier on Bankruptcy ¶ 550.01 (16th ed. 2019) (the trustee is generally prevented

by section 550(d) from "obtaining a windfall for the estate by recovering from multiple

transferees so that the total recovery is in excess of the value of the property transferred").  The

Trustee has already received some recovery on his claims against Sentry pursuant to the Fairfield

Settlement Agreement, and his attempt to recover two-thirds more money from subsequent

transferees of Sentry than BLMIS ever transferred to Sentry in the first place will result in

exactly the kind of windfall Section 550(d) prohibits.

The Trustee cannot justify his 'sue-everyone-and-figure-it-out-later approach' by

claiming that he does not have access to the records needed to satisfy this pleading requirement

or that he needs more time to sort through them, either.  He has had access to all of Sentry's

records *for more than a decade*.  As part of the Fairfield Settlement Agreement, the Trustee and

Sentry's Liquidators agreed to "provide reasonable access to the other's documents, data, and

other information relating to, or beneficial to the pursuit of" actions such as this LGI Complaint.

(Fairfield Settlement Agreement ¶ 14.)  Moreover, the Liquidators agreed to "provide reasonable

cooperation and assistance" to the Trustee "in connection with the prosecution of" such claims.

(*Id.*)  The fact the Trustee has let these avoidance actions remain pending for a decade without

even trying to fix the mathematical impossibilities underlying his claims, despite having access

to all the needed records, only further demonstrates the LGI Complaint should be dismissed.  *See*

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 723 (2d Cir.

2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate

here, where the plaintiffs necessarily have access, without discovery, to plan documents and

reports that provide specific information from which to fashion a suitable complaint"); *Sapia v.*

*Home Box Off., Inc.*, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing claim

where plaintiffs failed to precisely plead facts that were "uniquely in [p]laintiffs' possession").

## CONCLUSION

For the foregoing reasons, LGI respectfully requests that the Court enter an order

dismissing the LGI Complaint with prejudice.

Dated:  New York, New York
        April 1, 2022

Respectfully submitted,

PROSKAUER ROSE LLP

By:  s/ *Ehud Barak*
Ehud Barak
Russell T. Gorkin
Elliot R. Stevens (S.D.N.Y. admission pending)
Eleven Times Square
New York, New York  10036
Telephone:    212-969-3000
Facsimile:     212-969-2900
Email:  *ebarak@proskauer.com*
        *rgorkin@proskauer.com*
        *estevens@proskauer.com*

*Attorneys for Defendant Lion Global Investors*
*Limited*