SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Michael T. Driscoll
Blanka K. Wolfe
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
mdriscoll@sheppardmullin.com
bwolfe@sheppardmullin.com

*Attorneys for the Union Securities Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Hearing Date: August 10, 2022
Opposition Date: June 6, 2022
Reply Date: July 6, 2022

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff,

    v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

              Defendant,

---

In re:

BERNARD L. MADOFF,

              Debtor.

---

IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff Investment
Securities LLC,

              Plaintiff,

    v.

UNION SECURITIES INVESTMENT
TRUST CO., LTD., UNION USD GLOBAL
ARBITRAGE FUND, UNION USD GLOBAL
ARBITRAGE A FUND, and UNION
ARBITRAGE STRATEGY FUND,

              Defendants.

---

Adv. Pro. No. 08-01789 (cgm)

SIPA Liquidation

(Substantively Consolidated)

Adv. Pro. No. 12-01211 (CGM)

**MEMORANDUM OF LAW IN**
**SUPPORT OF UNION SECURITIES**
**DEFENDANTS' MOTION TO**
**DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF RELEVANT FACTS .............................................................2

    I.    General Background of BLMIS and Fairfield Sentry.............................2

    II.    The Adversary Proceeding Against The Union Securities Defendants..................4

        A.    Trustee's Allegations Concerning the Fairfield Initial Transfers ...............4

        B.    Trustee's Allegations Concerning the Alleged Subsequent
               Transfers to the Union Securities Defendants ...............................5

        C.    Trustee's Allegations Concerning Jurisdiction Over the Union
               Securities Defendants.............................................................6

STANDARD ON MOTION TO DISMISS ...........................................................7

ARGUMENT ...............................................................................................7

    I.    The Trustee Has Failed to Plead the Avoidability of the Fairfield Initial
        Transfers ........................................................................................7

        A.    Requirement To Plead Avoidability of Fairfield Initial Transfers..............7

        B.    Adopting the Entire Fairfield Amended Complaint by Reference is
               Improper.............................................................................8

    II.    The Trustee Does Not Plausibly Plead that the Subsequent Transfers to the
        Union Securities Defendants Were of BLMIS Customer Property ......................11

    III.    Section 546(e) Bars the Avoidance of the Fairfield Initial Transfers..................16

        A.    BLMIS and Fairfield Sentry are Entities Covered by Section
               546(e) ...............................................................................17

             1.    BLMIS Was a Stockbroker.............................................18

             2.    Fairfield Sentry Was a Financial Institution .....................18

        B.    The Fairfield Initial Transfers are Transactions Covered by Section
               546(e) ...............................................................................20

        C.    Section 546(e) Does Not Contain a "Knowledge" Exception ..................22

        D.    The Trustee Has Failed to Allege Actual Fraudulent Intent And
               The Statutory Exception to the Safe Harbor Does Not Apply..................23

    IV.    The Trustee Cannot Establish Personal Jurisdiction Over the Union
        Securities Defendants........................................................................27

CONCLUSION...............................................................................................33

SMRH:4867-0277-4807.6                     -i-

## TABLE OF AUTHORITIES

Page(s)

Cases

*Al Rushaid v. Pictet & Cie*
28 N.Y.3d 316 (2016) ................................................................31

*Arista Records, LLC v. Doe 3*
604 F.3d 110 (2d Cir. 2010) ..........................................................32

*Arizona v. California*
460 U.S. 605 (1983) ................................................................26

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*
480 U.S. 102 (1987) ................................................................30

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ..............................................................7, 8

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .............................................................7, 13

*In re Bernard L. Madoff Inv. Sec. LLC*
2013 U.S. Dist. LEXIS 56042 (S.D.N.Y. Apr. 15, 2013) ...........................7

*Briscoe v. City of New Haven*
654 F.3d 200 (2d Cir. 2011) ..........................................................19

*In re Caremerica, Inc.*
409 B.R. 737 (Bankr. E.D.N.C. 2009) ...............................................12

*Chambers v. Time Warner, Inc.*
282 F.3d 147 (2d Cir. 2002) ...........................................................9

*In re CIL Ltd.*
582 B.R. 46 (Bankr. S.D.N.Y. 2018), amended *on reconsideration on other grounds*,
No. 13-11272, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018) .......................1

*Cortec Indus., Inc. v. Sum Holding L.P.*
949 F.2d 42 (2d Cir. 1991) ............................................................2

*Daimler AG v. Bauman*
571 U.S. 117 (2014) ................................................................27

*David v. Bifani*
No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) ..................10

*DiStefano v. Carozzi N. Am., Inc.*
   286 F.3d 81 (2d Cir. 2001) .................................................................................27

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*
   323 B.R. 857 (Bankr. S.D.N.Y. 2005) ...............................................................19

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*
   No. 10-13164 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)..........30

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*
   No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ........18

*Fairfield Sentry Ltd. v. Migani*
   [2014] UKPC 9 ...................................................................................................21

*Finn v. Alliance Bank*
   860 N.W.2d 638 (Minn. 2015).............................................................................26

*Garfinkle v. Conf. on Jewish Material Claims Against Ger., Inc.*
   2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020) ......................................................16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
   466 U.S. 408 (1984)............................................................................................29

*Hinton v. Trans Union, LLC*
   654 F. Supp. 2d 440 (E.D. Va. 2009) ..................................................................11

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*
   No. 19-CV-6046, 2020 WL 1166053 (S.D.N.Y. Mar. 11, 2020)..........................29

*Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*
   No. 20-CIV-9993, 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021).........................30

*Lowden v. William M. Mercer, Inc.*
   903 F. Supp. 212 (D. Mass. 1995) .........................................................................9

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*
   260 B.R. 343 (Bankr. W.D.N.Y. 2001) ...............................................................26

*Merit Mgmt. Group, LP v. FTI Consulting, Inc.*
   138 S. Ct. 883 (2018)..........................................................................................23

*Merrill v. Abbott (In re Independent Clearing House Co.)*
   77 B.R. 843 (D. Utah 1987).................................................................................26

*N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*
   No. 11-CIV-5474-LAP-GWG, 2018 WL 2455437 (S.D.N.Y. June 1, 2018) ........19

*Nastasi v. Bloomberg, L.P.*
   No. 18-CIV-12361 (JMF), 2021 WL 3541153 (S.D.N.Y. Aug. 11, 2021) ..............2

*NCUA Bd. v. Morgan Stanley & Co.*
No. 13-CIV-6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ..............................10

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*
No. 03-CIV-2936, 2004 WL 1620874 (S.D.N.Y. July 20, 2004)............................................28

*New Hampshire v. Maine*
532 U.S. 742 (2001)................................................................................................................19

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*
No. 08-05023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ........................9

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*
549 B.R. 56 (S.D.N.Y. 2016)..................................................................................................28

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*
322 F.3d 147 (2d Cir. 2003)....................................................................................................21

*Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*
343 B.R. 444 (Bankr. S.D.N.Y. 2006)....................................................................................24

*Picard v. Citibank (In re Bernard L. Madoff Inv. Secs. LLC)*
12 F.4th 171 (2d Cir. 2021) ...........................................................................................25, 26

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*
603 B.R. 682 (Bankr. S.D.N.Y. 2019).....................................................................................26

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*
515 B.R. 117 (Bankr. S.D.N.Y. 2014)..............................................................................13, 15

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*
542 B.R. 100 (Bankr. S.D.N.Y. 2015)..........................................................................8, 12, 14

*Pyskaty v. Wide World of Cars, LLC*
856 F.3d 216 (2d Cir. 2017)....................................................................................................32

*Rose v. Goldman, Sachs & Co.*
163 F. Supp. 2d 238 (S.D.N.Y. 2001)......................................................................................32

*Rothman v. Gregor*
220 F.3d 81 (2d Cir. 2000).......................................................................................................21

*Salahuddin v. Cuomo*
861 F.2d 40 (2d Cir. 1988).........................................................................................................9

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*
403 F.3d 43 (2d Cir. 2005)................................................................................................24, 26

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*
No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)......................2, 17, 22, 24

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*
476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC
(Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411 (2d Cir. 2014) ...............................18

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*
773 F.3d 411 (2d Cir. 2014) ...........................................................................18, 20, 21, 22, 23

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*
594 B.R. 167 (Bankr. S.D.N.Y. 2018).....................................................................................28

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*
No. 12-MC-115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)...................17, 21, 22, 23

*SPV Osus Ltd. v. UBS AG*
882 F.3d 333 (2d Cir. 2018)........................................................................................29, 31

*Sullivan v. Kodsi*
373 F. Supp. 2d 302 (S.D.N.Y. 2005)........................................................................................12

*Taylor v. Sturgell*
553 U.S. 880 (2008)........................................................................................................19

*Toberman v. Copas*
800 F. Supp. 1239 (M.D. Pa. 1992) .........................................................................................9

*In re Tribune Co. Fraudulent Conv. Litig.*
946 F.3d 66 (2d Cir. 2019).....................................................................................19, 21

*In re Tribune Co. Fraudulent Transfer Conv. Litig.*,
10 F.4th 147 (2d Cir. 2021) ...............................................................................................21

*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*
429 B.R. 73 (Bankr. S.D.N.Y. 2010).......................................................................................24

*U.S. v. Int'l Longshoremen's Ass'n*
518 F. Supp. 2d 433 (E.D.N.Y. 2007) ................................................................................9, 10

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*
216 F. Supp. 2d 198 (S.D.N.Y. 2002).......................................................................................24

*Walden v. Fiore*
571 U.S. 277 (2014)........................................................................................30, 31, 32

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*
543 B.R. 127 (Bankr. S.D.N.Y. 2016).....................................................................................27

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*
   127 F. Supp. 3d 156 (S.D.N.Y. 2015) ................................................................2

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*
   No. 19-CV-3444, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) .....................27, 31

<u>Statutes</u>

11 U.S.C. § 101 ......................................................................................................18

11 U.S.C. § 546(e) .........................................................................17, 18, 19, 20, 24

11 U.S.C. § 548(a)(1)(A) .......................................................................................24

11 U.S.C. § 550(a) ...............................................................................................7, 11

11 U.S.C. § 551 .........................................................................................................1

11 U.S.C. § 741 ......................................................................................................21

New York Debtor & Creditor Law and § 278 .....................................................1, 11

<u>Other Authorities</u>

Fed. R. Bankr. P. 7004 ...........................................................................................27

Fed. R. Bankr. P. 7009 ...........................................................................................24

Fed. R. Bankr. P. 7012 .............................................................................................2

Fed. R. Civ. P. 8 ...............................................................................................9, 10, 11

Fed. R. Civ. P. 9 ........................................................................................24, 25, 26

Fed. R. Civ. P. 10 ..................................................................................................8, 9

Fed. R. Civ. P. 12 ...........................................................................................2, 7, 32

Fed. R. Evid.  201(c)(2) ............................................................................................2

N.Y. C.P.L.R. § 302 (McKinney 2001) ..............................................................27, 29

Defendants Union USD Global Arbitrage Fund ("Union Global Fund"), Union USD Global Arbitrage A Fund ("Union Global A Fund"), Union Arbitrage Strategy Fund ("Union Strategy Fund", and collectively, the "Funds"), and Union Securities Investment Trust Co., Ltd. ("USITC," and together with the Funds, the "Union Securities Defendants") respectfully submit this memorandum of law, and the accompanying declaration of Michael T. Driscoll (the "Driscoll Declaration"), in support of their motion to dismiss the Complaint, dated March 23, 2012 [Dk. No. 1] (the "Complaint"), filed by plaintiff Irving H. Picard (the "Trustee"), the trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## PRELIMINARY STATEMENT

The Trustee has asserted a single count against the Union Securities Defendants, seeking to recover, pursuant to section 550 of title 11 of the United States Code (the "Bankruptcy Code")[1] and section 278 of the New York Debtor & Creditor Law (the "NYDCL"), transfers of alleged customer property made by BLMIS to Fairfield Sentry Ltd. ("Fairfield Sentry") that the Union Securities Defendants allegedly subsequently received from Fairfield Sentry.

However, the Complaint is fatally flawed because it fails to adequately plead, first, that the initial transfers from BLMIS to Fairfield Sentry (the "Fairfield Initial Transfers") are avoidable, and, second, that the transfers allegedly made to the Union Securities Defendants by Fairfield Sentry can be linked to BLMIS customer property. Moreover, the claim asserted by the Trustee is barred by section 546(e) of the Bankruptcy Code. Finally, the Court lacks personal jurisdiction over the Union Securities Defendants. For any and all of these reasons, the

---

[1] The Trustee also invokes Section 551 of the Bankruptcy Code, *see* Compl. at ¶ 55, but that section of the Code "does not provide for an independent cause of action." *In re CIL Ltd.*, 582 B.R. 46, 97 (Bankr. S.D.N.Y. 2018), amended *on reconsideration on other grounds*, No. 13-11272, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018).

1

Complaint should be dismissed pursuant to Rule 12(b)(2) and (6) of the Federal Rules of Civil

Procedure, (the "Federal Rules") made applicable here by Rule 7012(b) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

## STATEMENT OF RELEVANT FACTS[2]

### I.    General Background of BLMIS and Fairfield Sentry

On December 11, 2008 (the "Filing Date"), the U.S. Securities and Exchange

Commission commenced proceedings in the District Court for the Southern District of New

York against BLMIS in connection with a Ponzi scheme orchestrated by its founder and

chairman, Bernard Madoff.  Compl. at ¶ 11.  The District Court appointed the Trustee for the

liquidation of the business of BLMIS and removed the action to the Bankruptcy Court for the

Southern District of New York.  *Id.* at ¶ 14.

On or around May 18, 2009, the Trustee commenced an adversary proceeding in the

Bankruptcy Court against Fairfield Sentry, styled as *Picard v. Fairfield Sentry Ltd.*, Adv. Pro.

No. 09-01239 (the "Fairfield Action"), seeking to recover approximately $3 billion in transfers

from BLMIS to Fairfield Sentry.  *Id.* at ¶ 38.[3]  Fairfield Sentry was an investment fund organized

---

[2] These facts are taken from allegations in the Complaint, which the Union Securities Defendants neither admit nor concede, and documents that the Complaint incorporates by reference, as well as the Trustee's pleadings in related proceedings and other items of which the Court may take judicial notice.  Specifically, on a Rule 12(b)(6) motion, courts can consider the complaint, including exhibits, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*, No. 08-01789, 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Investment Fund*") (*quoting Tellabs, Inc. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).  Among the matters subject to judicial notice are "statements or documents" that are "integral to the complaint," even if not attached to or incorporated by reference in it.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  Courts can also take judicial notice of admissions in the plaintiff's filings in separate actions, *see, e.g.*, *Nastasi v. Bloomberg, L.P.*, No. 18-CV-12361 (JMF), 2021 WL 3541153, at *4–5 (S.D.N.Y. Aug. 11, 2021), and "documents filed with governmental entities" and/or "retrieved from official government websites," *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015).  The Union Securities Defendants request that the Court take judicial notice of all such materials under Federal Rule of Evidence 201(c)(2).

[3] On July 20, 2010, the Trustee amended the Complaint in the Fairfield Action. *See* Driscoll Decl. Ex. 1, First Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010), Dk. No. 23 (the "Fairfield Amended Complaint").  Thereafter, on August 28, 2020, the Trustee further amended the Fairfield Amended Complaint.  *See* Driscoll Decl. Ex. 2, Second Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), Dk. No. 286..

under the laws of the British Virgin Islands, which sold shares directly to foreign investors from the 1990s through the end of BLMIS in December 2008. Driscoll Decl. Ex. 1 (Fairfield Am. Compl.) at ¶¶ 23, 32–35. Fairfield Sigma Limited ("Fairfield Sigma") and Fairfield Lambda Limited ("Fairfield Lambda") are affiliates of Fairfield Sentry (collectively, the "Fairfield Funds"). *Id*. at ¶ 22.

The Trustee entered into a settlement agreement with Fairfield Sentry and others (the "Fairfield Settlement"), which was approved by this Court pursuant to orders dated June 7 and June 10, 2011, respectively. Compl. at ¶ 43. Pursuant to the Fairfield Settlement, the Trustee received a consent judgment in the amount of $3.054 billion and Fairfield Sentry was obligated to pay $70 million to the Trustee for the benefit of the BLMIS estate. *Id*. The Fairfield Settlement does not, however, avoid the initial transfers to Fairfield Sentry or admit any liability on behalf of Fairfield Sentry. *See* Driscoll Decl. Ex. 3, Settlement Agreement, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y. May 9, 2011), Dk. No. 69-2. In fact, the Fairfield Settlement expressly denies any liability to the BLMIS estate and expressly declines to admit to any of the allegations in the Fairfield Amended Complaint. *Id.*

The Trustee commenced over 70 actions against the alleged subsequent transferees of Fairfield Sentry, seeking to recover payments that the alleged subsequent transferees defendants received for redeeming their shares in the Fairfield Funds. *See* Driscoll Decl. Ex. 4, Trustee's Twenty-Sixth Interim Report for the Period Apr. 21, 2021 through Sept. 3, 2021, *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Oct. 29, 2021), Dk. No. 20821, at ¶ 229 & Ex. D. As part of these actions, the Trustee is seeking more than $3 billion in subsequent transfers that defendants allegedly received directly from Fairfield Sentry. *Id.* Ex. 5, Excerpts from Various Subsequent Transfer Complaints. Separately, in the Fairfield Action, the Trustee has alleged that Fairfield Sentry made subsequent transfers to Fairfield

Sigma and Fairfield Lambda in the amounts of approximately $772 million and $52 million.  *See*

Driscoll Decl. Ex. 2 (Second Am. Compl.) at Exs. 5, 6.  The Trustee has also alleged (and is now

seeking to recover) in the Fairfield Action over another $1 billion in subsequent transfers made

directly by Fairfield Sentry to certain affiliated defendants. *See id*. at ¶ 333.

## II.    __The Adversary Proceeding Against The Union Securities Defendants__

On March 23, 2012, the Trustee commenced this adversary proceeding against the Union

Securities Defendants by filing the Complaint.  In the Complaint, the Trustee alleges that on

certain dates in the two years before the Filing Date, Fairfield Sentry transferred a total of

$17,206,127 to the Union Securities Defendants, which the Trustee now seeks to recover.

### A.    **Trustee's Allegations Concerning the Fairfield Initial Transfers**

In the Complaint, the Trustee makes the following conclusory allegations concerning the

Fairfield Initial Transfers:

- "Fairfield Sentry received initial transfers of BLMIS Customer Property." Compl. at ¶ 37.

- "During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion[,]" which he asserts is "Customer Property" and "avoidable and recoverable." *Id*. at ¶ 39.

- Of this amount, $1.6 billion was allegedly transferred within two years of the Filing Date. *Id*. at ¶ 40.  The Trustee asserts this amount is also "Customer Property" and "avoidable and recoverable." *Id*.

The Trustee does not allege that he avoided any part of the Fairfield Initial Transfers.

Instead, "[t]he Trustee incorporates by reference the allegations contained in the Fairfield

Amended Complaint as if fully set forth herein."  *Id*. at ¶ 38.  The Fairfield Amended Complaint

is 217 pages long—not counting its 111 exhibits—and contains 798 paragraphs.  Driscoll Decl.

Ex. 1 (Fairfield Am. Compl.).  In it, the Trustee asserted claims against over 40 defendants in

addition to the three Fairfield Funds, and his claims against Fairfield Sentry were based on many

grounds other than the avoidability of the alleged BLMIS-to-Fairfield Sentry initial transfers—

e.g., for turnover and accounting, unjust enrichment, conversion, money had and received, aiding

and abetting fraud and breach of fiduciary duty, and objections to the allowance of claims. *Id.*

## B.     Trustee's Allegations Concerning the Alleged Subsequent Transfers to the Union Securities Defendants

In the Complaint, the Trustee makes the following conclusory allegations concerning the

alleged subsequent transfers to the Union Securities Defendants:

- "A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Union Global Fund and/or Defendant USITC. . . . Based on the Trustee's investigation to date, approximately $9,283,664 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Union Global Fund and/or Defendant USITC. . . ." Compl. at ¶ 44.

- "A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Union Global A Fund and/or Defendant USITC . . . . Based on the Trustee's investigation to date, approximately $6,477,447 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Union Global A Fund and/or Defendant USITC. . . ." *Id.* at ¶ 46.

- "A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Union Strategy Fund and/or Defendant USITC . . . . Based on the Trustee's investigation to date, approximately $1,445,016 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Union Strategy Fund and/or Defendant USITC . . . ." *Id.* at ¶ 48.

Although the Trustee has all the records of both BLMIS and Fairfield Sentry, the

Complaint does not identify which portions of the Fairfield Initial Transfers were supposedly

subsequently transferred to the Union Securities Defendants.  Instead, the Complaint attaches, as

Exhibit B, a 77-page spreadsheet reflecting more than 5,000 transactions occurring over 17

years, which appears to list all activity in the accounts Fairfield Sentry maintained with BLMIS,

including inter-account transfers, transfers to the IRS, transfers to a money market fund, and,

presumably, transactions that constitute the Fairfield Initial Transfers.[4]  Compl. at Ex. B.  The

Complaint then separately lists specific payments that the Trustee claims are redemption

payments to the Union Securities Defendants.  *Id*. at Ex. C.  However, nothing in the Complaint

or its exhibits provides information about which of the Fairfield Initial Transfers are alleged to

be the basis of the transfers to the Union Securities Defendants.

Further, the Trustee does not allege that the Union Securities Defendants acted in bad

faith or that they knew of or were willfully blind to the fraud committed by BLMIS.

### C.    Trustee's Allegations Concerning Jurisdiction Over the Union Securities Defendants

The Complaint alleges that the Union Securities Defendants are subject to personal

jurisdiction because:

> [T]hey purposely availed themselves of the laws and protections of the United
> States and the state of New York by, among other things, knowingly directing
> funds to be invested with New York-based BLMIS through Fairfield Sentry. The
> Union Securities Defendants knowingly received subsequent transfers from
> BLMIS by withdrawing money from Fairfield Sentry, a Fairfield Greenwich
> Group ("FGG") managed Madoff feeder fund.
>
> By directing investments through FGG, the Union Securities Defendants
> knowingly accepted the rights, benefits, and privileges of conducting business
> and/or transactions in the United States and New York. Upon information and
> belief, the Union Securities Defendants entered into subscription agreements with
> Fairfield Sentry under which they submitted to New York jurisdiction, sent copies
> of the agreements to FGG's New York City office, and had funds wired to
> Fairfield Sentry through a bank in New York. The Union Securities Defendants
> thus derived significant revenue from New York and maintained minimum
> contacts and/or general business contacts with the United States and New York in
> connection with the claims alleged herein.

*See* Compl. at ¶¶ 6-7.

---

[4] Although Exhibit B includes all transactions since the opening of the accounts, the Fairfield Initial Transfers
include only those made within six years before the Filing Date. Moreover, Exhibit B includes reports of four
different accounts, but the Fairfield Initial Transfers only appear in two of them (1FN012 and 1FN045). The reports
of the other two accounts (1FN069 and 1FN070) show only inter-account transfers.

## STANDARD ON MOTION TO DISMISS

Under Rule 12(b)(6) of the Federal Rules, a court must dismiss a complaint "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Moreover, a claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow … the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court must accept well-pleaded factual allegations as true; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

## I.   The Trustee Has Failed to Plead the Avoidability of the Fairfield Initial Transfers

### A.   Requirement To Plead Avoidability of Fairfield Initial Transfers

Section 550(a) of the Bankruptcy Code provides that, to the extent that a transfer is avoided under one of several other sections of the Bankruptcy Code, a trustee may recover "the property transferred, or, if the court so orders, the value of such property" from (a) the initial transferee, (b) the entity for whose benefit such transfer was made, or (c) "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). Thus, to prevail on a claim against a subsequent transferee, a trustee must plead and prove, among other things, that the initial transfer was avoided or, at least, avoidable. 11 U.S.C. § 550(a); *In re Bernard L. Madoff Inv. Sec. LLC*, 2013 U.S. Dist. LEXIS 56042, at *40–41 (S.D.N.Y. Apr. 15, 2013) ("In order to recover a fraudulent or preferential transfer of debtor property from a subsequent transferee, the Trustee must first show that the initial transfer of that property by the debtor is subject to

avoidance under one of the Bankruptcy Code's avoidance provisions" (citation omitted)); *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015).

The Complaint fails to allege facts to support that the Fairfield Initial Transfers were avoided or avoidable beyond making bare conclusory statements. Specifically, the Complaint alleges that the Trustee filed an adversary proceeding against Fairfield Sentry to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion. Compl. at ¶ 38. However, that action was settled and never litigated. *Id.* ¶ 43. Thereafter, the Complaint merely states in a conclusory fashion that the transfers made from BLMIS to Fairfield Sentry "are avoidable and recoverable." *Id.* at ¶¶ 39-41. Such conclusory statements are insufficient to satisfy the Trustee's pleading burden. *See Iqbal*, 556 U.S. at 678.

### B.   Adopting the Entire Fairfield Amended Complaint by Reference is Improper

Instead of making any factual allegations to adequately plead the avoidability of the Fairfield Initial Transfers, the Trustee "incorporates by reference" the entirety of his 217-page (plus 111 exhibits), 798-paragraph Fairfield Amended Complaint. Compl. at ¶ 38. However, such an incorporation is wholly improper and violates the pleading requirements of the Federal Rules, and thus should not be permitted.

Specifically, Rule 10(c) of the Federal Rules provides, in pertinent part, "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading," Fed. R. Civ. P. 10(c).[5]   However, the authority to incorporate by reference is not unlimited. First, Rule 10(c) does not alter the pleading requirements established by the Federal Rules. Specifically, Rule 8 of the Federal Rules expressly requires a complaint to, among other

---

[5] This purpose of this Rule is to eliminate "redundancy and repetition." Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Brause v. Travelers Fire Ins. Co.*, 19 F.R.D. 231, 234 (S.D.N.Y. 1956)). This is best exemplified by

things, "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  It also requires that each allegation in a complaint "be simple, concise, and direct."  *Id*. at 8(d)(1).  Rule 8 serves two important purposes—(1) "to give the adverse party fair notice of the claim asserted so as to enable [it] to answer and prepare for trial[,]" and (2) to avoid "[u]nnecessary prolixity in a pleading [that] places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal citations and quotations omitted).  Thus, a complaint must "give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Id*.; *accord Chambers v. Time Warner, Inc*., 282 F.3d 147, 155 (2d Cir. 2002).

Second, on its face, Rule 10(c) authorizes the adoption of "a statement in a pleading," and not the adoption of an entire pleading.  FED. R. CIV. P. 10(c); *see, e.g*., *Lowden v. William M. Mercer, Inc*., 903 F. Supp. 212, 216 (D. Mass. 1995) (pleading must "specifically identify which portions of the prior pleading are adopted therein." (citation omitted)); *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992) (plaintiff must "provid[e], at a minimum, direct reference to specific paragraphs relied on" (citation omitted)); Moore's Federal Practice–Civil § 10.04[1] (2021) ("The reference must be clear and specific and must specifically identify the statements incorporated.").  The Trustee's wholesale incorporation by reference fails to provide the Union Securities Defendants and this Court with the ability to "ascertain the nature and extent of the incorporation."  *See U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 433, 462 (E.D.N.Y. 2007); *see also Nycomed U.S. Inc. v. Glenmark Generics Ltd*., No. 08-05023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) ("A Rule 10(c) adoption clause that does

---

the common practice of adopting by reference the background allegations of a complaint into the specific claims for relief.  However, the Rule does not alter a plaintiff's pleading burden.

little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite guidance to the responding party." (internal quotation marks omitted)).

As a result, courts have generally held that a pleading in one action <u>may not</u> indiscriminately adopt by reference the pleadings from a different action. *See Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 467 (dismissing action where complaint incorporated pleadings from several previous proceedings because such incorporation is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"); *David v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (striking attempt "to incorporate by reference wholesale the allegations in a complaint in a completely separate action" because of violation of Rule 8(a)); *NCUA Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (striking defense where defendant attempted to "incorporate the affirmative defenses in answers filed by defendants in other actions into its answer").

In this case, the Trustee is attempting to incorporate by reference the "the allegations contained in the Fairfield Amended Complaint as if fully set forth herein." Compl. at ¶ 38. To be clear, the Fairfield Amended Complaint is comprised of 217 pages, containing 798 paragraphs, and attaches and refers to 111 exhibits. It asserts claims against numerous defendants other than Fairfield Sentry and makes allegations beyond those related to the avoidance of the transfers at issue in this adversary proceeding. And the Trustee seeks to incorporate it into the 16-page, 55-paragraph single-count Complaint. This attempted incorporation is simply <u>not</u> a short and plain statement of the claim entitling the Trustee to relief, and does not provide the Union Securities Defendants with fair notice of the claims against them. *See e.g.*, *Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 467 (noting that the wholesale

incorporation of prior pleadings is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim. . . .'").

It is particularly egregious because the Fairfield Amended Complaint has itself been superseded by a further amended pleading. *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446 (E.D. Va. 2009) (finding "the risk of . . . confusion and inconvenience is particularly high where, as here, a party seeks wholesale incorporation in an amended pleading of a superseded version of that same pleading."). Moreover, it would impose a tremendous burden on the Union Securities Defendants and this Court by requiring the Union Securities Defendants to respond, paragraph-by-paragraph, to the allegations in the Fairfield Amended Complaint, even those that have nothing to do with the claim in this adversary proceeding, and by expanding the scope of the issues in this adversary proceeding. The Union Securities Defendants should not be forced to either address all of the allegations in the Fairfield Amended Complaint, or guess to its prejudice which of the incorporated allegations are relevant and must be addressed.

For all these reasons, the Court should reject the Trustee's attempt to incorporate by reference the Fairfield Amended Complaint. As this incorporation is the sole factual allegation concerning the avoidability of the Fairfield Initial Transfers, the Trustee fails to satisfy its burden of pleading an essential element of its claim against the Union Securities Defendant to recover a subsequent transfer and the Complaint should be dismissed.

## II.     The Trustee Does Not Plausibly Plead that the Subsequent Transfers to the Union Securities Defendants Were of BLMIS Customer Property

Section 550(a) of the Bankruptcy Code permits a trustee to recover from a subsequent transferee the property that was transferred in the initial transfer or its value. *See* 11 U.S.C. § 550(a).[6] Thus, to state a claim against a subsequent transferee, a trustee must plead facts – not

---

[6] Equally, under the New York Debtor and Creditor Law, "as to claims of both actual and constructive fraud, New York law permits money damages to be recovered only against parties who participate in the fraudulent transfer and

conclusions of law or statements of the elements of the cause of action -- showing that the redemption payments received by the subsequent transferee were the same property transferred in the initial, avoidable transfer from BLMIS to Fairfield Sentry. Specifically, as this Court has explained, in these cases, "[t]he Trustee must allege facts that support the inference that the funds at issue originated with the [*sic*] BLMIS, and contain the 'necessary vital statistics'—the 'who, when and how much' of the transfers to establish that an entity was a subsequent transferee of the funds." *In re Bernard L. Madoff Inv. Secs. LLC*, 542 B.R. at 119. Moreover, "the Trustee is not required to provide a 'dollar-for-dollar accounting' of the exact funds at issue. However, barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient." *Id*.

For example, in *Shapiro*, the Trustee alleged that (i) BLMIS transferred funds to certain accounts, (ii) that "upon information and belief" certain accounts were funded by subsequent transfers, and (iii) the "Initial Transferee Defendants subsequently transferred a portion of the $53,778,486 received from BLMIS" to Defendants. *See* Second Amended Complaint, *Picard v. Shapiro*, Adv. Proc. No. 10-05383 (Bankr. S.D.N.Y. July 8, 2014), Dk. No. 33, at ¶¶ 43, 46, 102, 110. The Court dismissed that complaint because it did not "tie any initial transfer to any subsequent transfer or Subsequent Transferee" and did "not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Picard v. Shapiro*, 542 B.R. at 119; *accord In re Caremerica, Inc.*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009) (court dismissed a preference claim under *Twombly* and *Iqbal*

---

are either transferees of the assets or beneficiaries of the conveyance." *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005) (emphasis, citation, and internal quotation marks omitted).

because the trustee's factual allegations included allegations about transfers into and out of an account and amounts received by the supposed transferees, but nothing to tie them together).

Similarly here, the Complaint fails to plead facts that tie the transfers from Fairfield Sentry to the Union Securities Defendants to transfers made from BLMIS to Fairfield Sentry. All it alleges is that during the six years preceding the petition date, BLMIS transferred approximately $3 billion to Fairfield Sentry, and that "[a] portion of [those transfers] was subsequently transferred either directly or indirectly to, or for the benefit of," the Union Securities Defendants.  Compl. at ¶¶ 39, 44, 46, 48.  The Complaint then attaches a 77-page exhibit listing thousands of BLMIS-Fairfield Sentry transactions between 1990 through 2008, and another exhibit listing the redemption payments from Fairfield Sentry to the Union Securities Defendants. *Id.* at Exs. B, C.  However, neither the Complaint nor its exhibits specify which, if any, of the transactions constitute Fairfield Initial Transfers that involve BLMIS customer property that the Trustee alleges Fairfield Sentry subsequently transferred to the Union Securities Defendants.  The only allegations in the Complaint that tie the Fairfield Initial Transfers to the transfers to the Union Securities Defendants are purely conclusory.  *Id.* at ¶¶ 37, 44, 46, 48, 54.  Such barebones allegations are insufficient to show that the Fairfield Sentry redemption payments to the Union Securities Defendants were plausibly, and not just possibly, made from transferred BLMIS customer property.  *See Twombly*, 550 U.S. at 570.

This case is distinguishable from *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014), where the Trustee sought to recover subsequent transfers from one defendant to another and this Court denied a motion to dismiss, allowing the Trustee "greater latitude" in pleading the required tie, because the subsequent transfer claims had to "be proved through the books and records of the defendants." *Id.* at 151 (internal quotation marks omitted).  This is not the case here.  For over 10 years, the Trustee has had access to the

records of both BLMIS and Fairfield Sentry.[7]  The Trustee already knows how the Fairfield

Initial Transfers were used – whether they were redeposited with BLMIS, transferred to

management, or transferred to other Fairfield funds.  Thus, the Trustee's failure to tie the

transfers to the Union Securities Defendants to any particular transfer from BLMIS to Fairfield

Sentry cannot be excused on the ground that the Trustee lacks access to information.  And the

Trustee should not be permitted to rely on vague and conclusory allegations that fail to "tie any

initial transfer to any subsequent transfer or Subsequent Transferee."  *Shapiro*, 542 B.R. at 119.

Moreover, the Complaint's conclusory allegations that the redemption payments from

Fairfield Sentry to the Union Securities Defendants consisted of BLMIS customer property is

simply not plausible.  First, based on the Trustee's most recent pleadings, the Trustee alleges in

the Fairfield Sentry subsequent transferee recovery actions that over $3 billion in redemption

payments were made by Fairfield Sentry to its investors in the six year period before the Filing

Date.  *See* Driscoll Decl. Ex. 5.  However, the Trustee also alleges that during the same period,

Fairfield Sentry transferred $824 million to Fairfield Sigma and Fairfield Lambda and $1.139

billion to its management and affiliates. *See Id.* Ex. 2 (Fairfield Second Amended Complaint) at

Exs. 5, 6 & 9.  Yet the Trustee alleges that BLMIS made only $3 billion in initial transfers of

BLMIS customer property to Fairfield Sentry during this period, Compl. at ¶ 39, which means

that almost $2 billion of the transfers Fairfield Sentry made during this period could not have

been subsequent transfers of avoidable initial transfers of BLMIS customer property.  It is clear

from the Complaint and other pleadings filed by Fairfield Sentry that many of the Fairfield

---

[7] The Trustee has access to Fairfield Sentry's records because of the document-sharing provisions of the Fairfield Settlement Agreement.  *See* Driscoll Decl. Ex. 3 (Settlement Agreement) at ¶ 14 (Trustee and Liquidators "each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims").

Sentry transfers must have come from sources other than BLMIS and are not tied to avoidable initial customer property transfers.

Second, the exhibits to the Complaint demonstrate that it is not possible, let alone plausible, that a portion of the transfers to the Union Securities Defendants were BLMIS customer property. Specifically, prior to March 16, 2007, the date of the first transfer to the Union Securities Defendants that the Trustee seeks to recover, BLMIS last transferred any funds to Fairfield Sentry on April 13, 2006. Compl. at Ex. B. Thereafter, it did not make another transfer to Fairfield Sentry until September 6, 2007. *Id.* Thus, seven of the transfers allegedly made by Fairfield Sentry to the Union Securities Defendants, between March 16, 2007 and August 17, 2007, were made at a time when Fairfield Sentry was not receiving any funds from BLMIS. *See* Compl. at Exs. B, C. Thereafter, there are significant time gaps between the Fairfield Initial Transfers and the transfers to the Union Securities Defendants. For example, prior to the November 19, 2007 and December 19, 2007 transfers allegedly made to the Union Securities Defendants, BLMIS last made a transfer to Fairfield Sentry on October 3, 2007. *Id.* Similarly, prior to the February 15, 2008, March 18, 2008 and April 14, 2008 transfers allegedly made to the Union Securities Defendants, BLMIS last made a transfer to Fairfield Sentry on January 11, 2008. *Id.* These months of time between the alleged initial and subsequent transfers demonstrates a lack of linkage between the two. *Cf. Merkin*, 515 B.R. at 150 (denying motion to dismiss where, among other things, alleged subsequent transfer "took place contemporaneously or shortly after an initial transfer identified [in the complaint], implying linkage" where transfers occurred between one and 22 days of each other).

In fact, as the Trustee is aware, transfers from BLMIS were not the exclusive source of funds that Fairfield Sentry could use to satisfy redemption requests and make other payments. Fairfield Sentry has confirmed that it paid redeeming investors with funds that originated from

subscribing investors, not just from BLMIS. *See* Driscoll Decl. Ex. 6, First Amended Complaint, *Fairfield Sentry Ltd. v. Citco Global Custody NV*, Adv. Pro. 19-01122 (Bankr. S.D.N.Y. Nov. 26, 2019), Dk. No. 19, at ¶ 63 ("From time to time, to make Redemption Payments, Sentry (and Sigma and Lambda through Sentry) made withdrawals from Sentry's BLMIS accounts (or utilized subscription monies of other investors on hand that were directed for investment in BLMIS)."). Essentially, the Trustee is asking the Court to infer that simply because BLMIS transferred a large amount of money to Fairfield Sentry over a long period of time, to the extent Fairfield Sentry transferred money during that time, all of that money must have come from BLMIS. And that is simply untrue. Thus, "[t]here is an obvious alternative explanation" for the source of the redemption payments to the Union Securities Defendants, "that explanation renders [the Trustee's] competing explanation conceivable but not plausible." *Garfinkle v. Conf. on Jewish Material Claims Against Ger., Inc.*, 2020 WL 6323462, at \*5 (S.D.N.Y. Oct. 28, 2020) (citations and internal quotations omitted).

Thus, not only does the Complaint do nothing to tie any Fairfield Initial Transfer to any payment made by Fairfield Sentry to the Union Securities Defendants—even though the Trustee has the records that would permit him to do so—but the allegations in the Complaint make it implausible that the transfers to the Union Securities Defendants can be traced to transfers of BLMIS customer property. As such, the Trustee has failed to plead an essential element of his claim and the Complaint should be dismissed.

III.    <u>**Section 546(e) Bars the Avoidance of the Fairfield Initial Transfers**</u>

In addition to failing to adequately plead critical elements of its claim, the Complaint should be dismissed because the Trustee's claims against the Union Securities Defendants are

barred by the securities safe harbor of section 546(e) of the Bankruptcy Code.[8]  Specifically,

Section 546(e) provides, in relevant part, that notwithstanding Bankruptcy Code provisions

permitting the avoidance of certain transfers, "the trustee may not avoid a transfer that is a . . .

settlement payment . . . made by or to (or for the benefit of) a . . . stockbroker [or] financial

institution, . . . or that is a transfer made by or to (or for the benefit of) a . . . stockbroker [or]

financial institution . . . in connection with a securities contract . . . except under section

548(a)(1)(A)."  11 U.S.C. § 546(e).  In sum, this provision protects from avoidance (i) covered

transactions (i.e., transfers "in connection with a securities contract" or "settlement payments"),

that were (ii) made by, to, or for the benefit of a covered entity (such as a stockbroker or

financial institution), except for those made with the actual intent to defraud.  Here, the Trustee's

claims against the Union Securities Defendants are barred because the initial transfers from

BLMIS to Fairfield Sentry underpinning those claims are protected from avoidance by the

statutory safe harbor, and thus they cannot be recovered from a subsequent transferee.[9]

### A.    BLMIS and Fairfield Sentry are Entities Covered by Section 546(e)

Section 546(e) requires that either the debtor making the transfer is an entity covered by

section 546(e) or the debtor made the transfer to or for the benefit of a covered entity.  Here, this

requirement is satisfied by both.[10]

---

[8] Although Section 546(e) is an affirmative defense, a court can dismiss based on Section 546(e) if its applicability
is established on the face of the complaint or documents incorporated by reference into or integral to the complaint.
*See Fairfield Inv. Fund*, 2021 WL 3477479, at *2.

[9] As a preliminary matter, in a clawback action against a subsequent transferee, the subsequent transferee can assert
any defenses that the initial transferee could have asserted. Specifically, "[w]here the initial transferee fails to raise a
§ 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here where the transferee settled
with the Trustee, the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of
those funds." *Fairfield Inv. Fund*, 2021 WL 3477479, at *3; *see also SIPC v. Bernard L. Madoff Inv. Secs. LLC*, No.
12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013).

[10] The Union Securities Defendants reserve the right to argue, if necessary, that the transfer also was "made by or to
(or for the benefit of) a . . . financial participant." 11 U.S.C. § 546(e).

1.    <u>BLMIS Was a Stockbroker</u>

The Bankruptcy Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities." 11 U.S.C. § 101(53A)(B).  It is indisputable that BLMIS was a stockbroker.  The District Court ruled that BLMIS "was registered as a stockbroker with the SEC" and "clearly engaged in securities transactions."  *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411 (2d Cir. 2014) ("*Fishman*"). Furthermore, the Trustee does not dispute that BLMIS was a stockbroker.  *Fishman*, 773 F.3d at 417 ("It is not disputed that BLMIS was a 'stockbroker' for the purposes of § 546(e)").  Thus, the alleged initial transfers were made by a stockbroker.  11 U.S.C. § 546(e).

2.    <u>Fairfield Sentry Was a Financial Institution</u>

The Bankruptcy Code defines "financial institution" to include not only "an entity that is a commercial or savings bank," but also the customer of such a bank "when [it] is acting as agent or custodian for a customer . . . in connection with a securities contract."   11 U.S.C. § 101(22)(A).  This Court has previously held that Fairfield Sentry (as well as the other Fairfield Funds) was a "financial institution" because it was a customer of Citco Bank Nederland N.V. Dublin Branch ("<u>Citco Bank</u>"), a bank regulated by the Central Bank of the Netherlands and registered with the Central Bank of Ireland, which acted as agent in connection with the securities contracts pursuant to which the redemption payments were made. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 10-13164 (SMB), 2020 WL 7345988, at *6 n.11, *7 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*") ("Based on the foregoing, the Funds were customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made, and the Funds were, therefore

"financial institutions" within the meaning of 11 U.S.C. § 546(e).").[11]  The *Fairfield III* holding

applies here too.[12]

Moreover, the Trustee's allegations in this and other actions confirms that Citco Bank (a

"financial institution") was Fairfield Sentry's agent in connection with the redemptions at issue.

Specifically, the Complaint alleges that the Fairfield Initial Transfers were made from BLMIS

accounts entitled "Citco Global Custody N.V. FBO Fairfield Sentry Ltd." (account numbers

1FN012 and 1FN045).  Compl. at Ex. B.  In addition, in a proffer filed in this Court in another

action, the Trustee acknowledged Citco Global Custody N.V.'s service as custodian for Fairfield

Sentry and the related opening of bank accounts by Fairfield Sentry at Citco Bank, and alleged

that FGG personnel "had final control of the Fairfield Sentry bank accounts and controlled all of

Fairfield Sentry's relationships with the various Citco entities" and "controlled and approved all

subscriptions into and redemptions from the fund."  *See* Driscoll Decl. Ex. 7, Trustee's Proffered

---

[11] *See* De Nederlandsche Bank, Information Detail: Citco Bank Nederland N.V., https://www.dnb.nl/en/public-register/informationdetail/?registerCode=WFTDG&relation Number=B0275 (last visited Dec. 14, 2021) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber =C27278 (last visited Dec. 14, 2021) (classifying Citco Bank as a "credit institution . . . whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account"). This Court can take judicial notice of information from such public registries. *See In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 78 (2d Cir. 2019) ("*Tribune I*"); *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

[12] In fact, this Court's holding in *Fairfield III* is binding on the Trustee because he was in privity with the Fairfield Liquidators who are litigating the Fairfield redeemer actions partly for the Trustee's benefit.  Specifically, pursuant the Fairfield Settlement Agreement, the Fairfield Liquidators will pay the Trustee 15% of their net recoveries from all claims the Liquidators assert against redeemers from the Fairfield Funds until the Trustee has been paid $1.924 billion.  *See* Driscoll Ex. 3 (Settlement Agreement) at ¶ 4.  Furthermore, "[t]he Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims." *Id.* at ¶ 14.  Thus, the Trustee and the Liquidators have a "preexisting 'substantive legal relationship'" focused on a successive or concurrent interest in property of the kind recognized by the Supreme Court to give rise to non-party issue preclusion in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). *See also Briscoe v. City of New Haven*, 654 F.3d 200, 203 (2d Cir. 2011); *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, No. 11-CIV-5474-LAP-GWG, 2018 WL 2455437, at *16 (S.D.N.Y. June 1, 2018).  Moreover, the issue of Fairfield Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on ground of the Section 546(e) safe harbor.  Consequently, this Court's finding in *Fairfield III* that Fairfield Sentry was a "financial institution" in connection with redemption payments from Fairfield Sentry to its subscribers is binding on the Trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

Allegations Pertaining to the Extraterritoriality Issue as to Barclays Defendants, *Picard v. Barclays Bank (Suisse) S.A.*, Adv. Proc. 11-02569 (Bankr. S.D.N.Y. Sept. 1, 2011), Dk. No. 82, at ¶¶ 39, 41. These allegations further confirm that, as this Court held in *Fairfield III*, Fairfield Sentry itself was a "financial institution" within the meaning of Section 546(e). Thus, additionally, the alleged initial transfers were made to a financial institution. 11 U.S.C. § 546(e).

### B.    The Fairfield Initial Transfers are Transactions Covered by Section 546(e)

Section 546(e) protects the Fairfield Initial Transfers from avoidance because they (i) were made "in connection with a securities contract," namely, the BLMIS-Fairfield Sentry account agreements, and (ii) qualify as "settlement payments" made by BLMIS in response to Fairfield Sentry's requests for withdrawals under those agreements. In fact, the Second Circuit has expressly held that BLMIS's account agreements with customers constituted securities contracts, and BLMIS made its payments to customers "in connection with" those contracts, and that they also constituted "settlement payments." *Fishman*, 773 F.3d at 418-23. The Court rejected the Trustee's argument that the safe harbor did not apply because Madoff did not actually carry out the promised securities transactions. *Id.*

Here, the Trustee has alleged that Fairfield Sentry "had direct customer accounts with BLMIS's investment advisory business. . . ." Compl. at ¶ 2, Ex. A. Just as in *Fishman*, those agreements are "securities contracts," and the Fairfield Initial Transfers were made "in connection with" those contracts. *Fishman*, 773 F.3d at 421. Furthermore, the Trustee has alleged that Fairfield Sentry received approximately $3 billion from BLMIS. *See* Compl. at ¶ 39. Again, just as in Fishman, each of those transfers constitutes a "settlement payment." *Fishman*, 773 F.3d at 422. Thus, the Fairfield Initial Transfers were made in connection with a securities contract *and* were settlement payments.

Additionally, the Fairfield Initial Transfers were made, according to the Trustee, so that Fairfield Sentry could fund the Union Securities Defendants' redemption requests.[13]  Thus, they were also made "in connection with" the securities contract the Union Securities Defendants had with Fairfield Sentry through Fairfield Sentry's Articles of Associate, pursuant to which Fairfield Sentry redeemed the Union Securities Defendants' interests.  *See Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, ¶ 10 ("the terms of the subscriber's membership of the Fund, which govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund").[14]  The definition of "securities contract" in 11 U.S.C. § 741(7) is "broad."  *Fishman*, 773 F.3d at 419.  It not only includes "a contract for the purchase, sale, or loan of a security," but also "any other agreement or transaction that is similar to" such a contract.  *See* 11 U.S.C. § 741(7)(A)(i), (vii).  A contract providing for the redemption of securities, such as the Fairfield Sentry Articles of Association, qualifies.  *See SIPC v. Bernard L. Madoff Inv. Secs. LLC*, No. 12 MC 115 (JSR), 2013 WL 1609154, at *8 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") (noting that the definition of "securities contract" is broad and "includes, *inter alia*, investment fund subscription agreements and redemption requests"); *Tribune I*, 946 F.3d at 80 ("The term 'redemption,' in the securities context, means 'repurchase.'").  Moreover, section 546(e) only requires that the transfer be "in connection with a securities contract," not in connection with the securities contract between the

---

[13] The Union Securities Defendants deny that the transfers allegedly made by Fairfield Sentry to the Union Securities Defendants were BLMIS customer property.  *See infra*.  However, the Trustee's allegations are admissions that can be used to establish, on this motion, that his claims fail to state a claim upon which relief can be granted.  *See, e.g.*, *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("[T]he allegations in the Second Amended Complaint are 'judicial admission[s]' by which [the plaintiff] was 'bound throughout the course of the proceeding.'" (*quoting Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (affirming dismissal of claim because plaintiff was bound by assertion of facts in its complaint))); *cf. Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleadings filed by defendant in other actions and holding that those pleadings, taken together with plaintiffs' other allegations, "alleged sufficient facts" to support plaintiffs' claim).

[14] *See* Driscoll Decl. at Ex. 8, Fairfield Sentry's Articles of Association.  This Court may consider the Articles of Association in connection with this motion because, as the basis for the challenged redemption, they are integral to the Complaint. *In re Tribune Co. Fraudulent Transfer Conveyance Litig.*, 10 F.4th 147, 176 (2d Cir. 2021) ("Here,

transferor and initial transferee. *See Fishman*, 773 F.3d at 422 ("Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided."); *Cohmad*, 2013 WL 1609154, at *9 (explaining that a transfer from a debtor to an initial transferee may qualify as having been made "in connection with a securities contract" between the initial transferee and a subsequent transferee, and thus be covered by the safe harbor on that basis). Thus, the Fairfield Initial Transfers are also transfers made in connection with the Fairfield Sentry Articles of Association.

### C.    Section 546(e) Does Not Contain a "Knowledge" Exception

The Trustee might respond that the safe harbor does not apply here because Fairfield Sentry allegedly knew of Madoff's fraud and thus knew that there was no actual "settlement payment" or "securities contract." In *Fairfield Investment Fund*, which involved the later version of the Fairfield complaint than the one that was incorporated by reference here, this Court accepted that the Trustee adequately pled Fairfield Sentry's actual knowledge. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5. It then denied a motion to dismiss based on section 546(e), relying on Judge Rakoff's statement that "'if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor.'" *Id*. at *4.

That argument does not defeat the application of section 546(e) in this case. First, even if there was no actual securities contract between BLMIS and Fairfield Sentry, there still was a securities contract between Fairfield Sentry and the Union Securities Defendants, and there is no allegation that the securities contracts between Fairfield Sentry and its investors were not real. As Judge Rakoff ruled in *Cohmad*, even if the initial transferee knew BLMIS was a fraud and

---

the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint.").

was not trading securities, if the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and the subsequent transferee, then the withdrawal from BLMIS would be a transfer made in connection with the securities contract between the initial transferee, Fairfield Sentry, and the subsequent transferee, the Union Securities Defendants, and would not be avoidable. *Cohmad*, 2013 WL 1609154, at *7.

Second, the Trustee has not alleged that the Union Securities Defendants actually knew of Madoff's fraud. And "actual knowledge" – not "mere suspicion" or inquiry notice– is what Judge Rakoff stated was necessary to defeat the safe harbor. *See, e.g.*, *id.* at *4 ("[T]he Trustee must show, at a minimum, that the transferee had actual knowledge that there were no actual securities transactions being conducted.") (footnote omitted). Moreover, Fairfield Sentry's alleged knowledge cannot be imputed to the Union Securities Defendants, which dealt with Fairfield Sentry at arm's length. Finally, there is no allegation that the Union Securities Defendants actually knew of any fraud at Fairfield Sentry. Because the initial transfer was made in connection with the securities contract between Fairfield Sentry and the Union Securities Defendants, and the Union Securities Defendants are not alleged to have had actual knowledge of the Madoff fraud, the knowledge exception created in *Cohmad* does not apply, and the Court can and should dismiss the Complaint based on the section 546(e) safe harbor.[15]

### D.    The Trustee Has Failed to Allege Actual Fraudulent Intent And The Statutory Exception to the Safe Harbor Does Not Apply

The only statutory exception to the section 546(e) safe harbor is for transfers avoidable under section 548(a)(1)(A) of the Bankruptcy Code, which applies to transfers made in the two years before the filing date with the actual intent to defraud. Specifically, "where § 546(e)

---

[15] The Union Securities Defendants reserve the right to argue that the text of section 546(e) does not permit courts to craft a knowledge exception to the safe harbor provisions. *See, e.g.*, *Merit Mgmt. Group, LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 897 (2018) (emphasizing adherence to "the plain meaning of the language used in § 546(e)" in

applies to the Trustee's claims, the Trustee may only proceed against a subsequent transferee

insofar as he seeks to recover those subsequent transfers under § 550(a) as to which he could

have avoided the initial transfer under § 548(a)(1)(A)." *Fairfield Inv. Fund*, 2021 WL 3477479,

at *4.

However, section 548(a)(1)(A) of the Bankruptcy Code requires that the Trustee plead

that BLMIS made each of the Fairfield Initial Transfers "with actual intent to hinder, delay, or

defraud any entity to which the debtor was or became" indebted "on or after the date that such

transfer was made." 11 U.S.C. § 548(a)(1)(A). Critically, Rule 9(b) of the Federal Rules (made

applicable by Rule 7009 of the Bankruptcy Rules) requires that allegations of fraud be pleaded

with particularity. *See Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,

403 F.3d 43, 56 (2d Cir. 2005) (citation omitted); *see also Official Comm. of Unsecured*

*Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 459–60

(Bankr. S.D.N.Y. 2006). Under this rule, "conclusory allegations that do not evidence fraudulent

intent with respect to the specific transfers challenged do not suffice," even if "combined with . .

. allegations [about] an alleged overall pattern of inappropriate transfers. . . ." *Id.* at 468 (internal

quotation marks omitted). To satisfy the particularity requirement the plaintiff must "specify the

'particulars' of the alleged fraud – including, for example, the time, place, particular individuals

involved, and specific conduct at issue." *United Feature Syndicate, Inc. v. Miller Features*

*Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002). For claims to avoid and recover

actual fraudulent transfers, the plaintiff must "specify the property that was allegedly conveyed,

the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration

paid." *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 429 B.R. 73, 92 (Bankr.

---

interpreting the provision); *Fishman*, 773 F.3d at 423 (courts are "obliged to respect the balance Congress struck"
"between the need for an equitable result for the debtor and its creditors, and the need for finality").

S.D.N.Y. 2010) (quoting *Off. Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 733 (Bankr. S.D.N.Y. 2008)).

The Complaint fails to plead specific facts that BLMIS acted with the requisite intent to "hinder, delay or defraud" creditors at the time it made each and every one of the Fairfield Initial Transfers that the Trustee seeks to recover from the Union Securities Defendants. In fact, the Complaint fails to identify any particular initial transfer as actually fraudulent from among the thousands listed in Exhibit B as the basis for any of the transfers to the Union Securities Defendants. Instead, the Complaint contains generic and conclusory allegations about (i) BLMIS making payments to Fairfield Sentry and (ii) BLMIS operating as a Ponzi scheme. Neither should be found to be sufficient to satisfy the Trustee's pleading burden under Rule 9(b).

First, allegations that BLMIS paid money to Fairfield Sentry are not sufficient to establish fraudulent intent. In making the Fairfield Sentry Initial Transfers, BLMIS could have been returning capital, satisfying an antecedent debt, or honoring its contractual commitments to Fairfield Sentry. None of those reasons for making payments contain the requisite intent to "hinder, delay or defraud."

Second, the Trustee should not be allowed to rely on the presumption "that transfers from a debtor in furtherance of a Ponzi scheme are made with fraudulent intent rather than to satisfy an antecedent debt." *Picard v. Citibank (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171, 201 (2d Cir. 2021) ("*Citibank*") (Menashi, J., concurring). Although the Ponzi scheme presumption has been accepted by this Court and the District Court in actions commenced by the Trustee, the issue is not settled at the Circuit level,[16] and there are several reasons why it shouldn't be. *Id.* at 202. Specifically:

---

[16] Although the Second Circuit has applied the presumption "when its application was uncontested," *Citibank*, 12 F.4th at 202 n.7 (Menashi, J., concurring), it has not sanctioned use of the presumption in every case where the issue has been litigated. In addition, the Supreme Court has not recognized the presumption.

- Section 548(a)(1)(A) does not mention Ponzi schemes, much less authorize courts to relax the Trustee's pleading burden in such cases.

- Fraudulent transfer cases warrant an "asset-by-asset and transfer-by-transfer" inquiry—one that requires proof of "the elements of a fraudulent transfer with respect to each transfer, rather than relying on a presumption related to the form or structure of the entity making the transfer"—because the statutory focus is "on individual transfers, rather than a pattern of transactions that are part of a greater 'scheme.'" *Finn v. Alliance Bank*, 860 N.W.2d 638, 647 (Minn. 2015) (construing Minnesota UFTA provision that is virtually identical to Section 548(a)(1)(A)); *see also Citibank*, 12 F.4th at 201 (Menashi, J., concurring).

- The Ponzi scheme presumption is based on the hypothesis that whenever a Ponzi scheme operator "makes payments to present investors," it does so for the purpose of "attract[ing] new investors," *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987), but that premise may not hold, especially in the later stages of a long-running scheme like Madoff's, which began in the late 1980s or early 1990s, *see Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 603 B.R. 682, 691 (Bankr. S.D.N.Y. 2019).

- The Ponzi scheme presumption has been rejected by courts "on the ground that it improperly treats preferences as fraudulent transfers," *Citibank*, 12 F.4th at 201, thereby "obscur[ing] the essential distinction between fraudulent transfers and preferences," *id.* at 202; *see also Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*, 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001).

Critically, the Ponzi scheme presumption conflicts with Rule 9(b) of the Federal Rules, which requires particularity in pleading how each transfer was made with actual intent to defraud. *See, e.g.*, *Sharp*, 403 F.3d at 56. If such exceptions are to be created, Congress—not the courts—should create them. *See Unified*, 260 B.R. at 350 (cited approvingly in *Citibank*, 12 F.4th at 202 (Menashi, J., concurring)). Without the Ponzi scheme presumption, the Complaint alleges nothing whatsoever about BLMIS's intent in making specific Fairfield Initial Transfers, let alone with the requisite actual fraudulent intent. The Trustee has not adequately plead that

---

The Trustee may argue that the "Ponzi scheme presumption" is the "law of the case" because it has been applied in other adversary proceedings. However, the "law of the case" doctrine does not create an absolute bar to reconsideration of the issue. *See generally Arizona v. California*, 460 U.S. 605, 618 (1983) ("law of the case is an amorphous concept" which "does not limit the tribunal's power.").

the Fairfield Initial Transfers were made with actual intent to defraud, thereby rendering the

section 546(e) safe harbor applicable.

## IV.    **The Trustee Cannot Establish Personal Jurisdiction Over the Union Securities Defendants**

The Trustee bears the burden of establishing that this Court has personal jurisdiction over

the Union Securities Defendants. *See DiStefano v. Carozzi N. Am., Inc*., 286 F.3d 81, 84 (2d Cir.

2001). The Complaint does not allege that the Court has general jurisdiction over the Union

Securities Defendants, Taiwanese funds and limited company based in Taipei, Taiwan with no

operations in the United States and is not "at home" in the United States (*see* Compl. at ¶¶ 22-

25), so the Trustee must plead facts supporting the exercise of specific jurisdiction. *See Daimler*

*AG v. Bauman*, 571 U.S. 117, 136-40 (2014). To do so, under New York's long-arm statute,[17]

the Trustee must satisfy two exacting pleading requirements: (1) the Union Securities Defendants

must have transacted business within the state; and (2) the claims asserted must arise from that

business activity. *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, No.

19-CV-3444, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (*citing Best Van Lines, Inc. v.*

*Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). The Trustee also must demonstrate that the exercise

of personal jurisdiction over the Union Securities Defendants "would comport with due process."

*Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *3 (citations omitted). Finally, as

Judge Bernstein held in these proceedings, each subsequent transfer is a separate claim so the

Trustee must establish the Court's jurisdiction over the Union Securities Defendants for each

individual transfer it seeks to recover. *See SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 594 B.R.

---

[17] The Trustee bases personal jurisdiction on New York's long-arm statute, N.Y. C.P.L.R. § 302 (McKinney 2001), and Federal Rule of Bankruptcy Procedure 7004. Compl. at ¶ 8. Under Federal Rule of Bankruptcy Procedure 7004(f), the Trustee can establish personal jurisdiction by demonstrating sufficient minimum contacts with the United States as a whole. *See Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 138-39 (Bankr. S.D.N.Y. 2016). The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due

167, 190 (Bankr. S.D.N.Y. 2018) ("Each transfer is a separate claim, . . . and the Trustee must

establish the court's jurisdiction with respect to each claim asserted.") (internal quotations and

citations omitted).  Here, the Trustee has failed to meet his burden of establishing that this Court

has personal jurisdiction over the Union Securities Defendants for each Fairfield Initial Transfer

he alleges was subsequently transferred to them.

First, the Complaint does not allege that the transfers the Trustee seeks to recover were

sent to or even through New York (or any U.S.) accounts.  And he cannot.  As confirmed by the

Fairfield Liquidators, virtually all of the same transfers the Trustee seeks to recover here

occurred entirely outside of the United States:

> The redemption transfers at issue here were purely foreign. The
> Citco Administrator (a foreign entity) managed the share register
> and processed the redemption requests abroad, and the Funds (also
> foreign entities) transferred redemption payments to Defendants
> (also chiefly foreign entities). [E]very relevant component of the
> transactions at issue here occurred outside the territorial
> jurisdiction of the United States.

See Driscoll Decl. Ex. 9, Plaintiff-Appellants' Opening Brief for Second-Round Appeal,

*Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-03911 (VSB)

(S.D.N.Y. July 21, 2021), Dkt. No. 440, at 24.  As BLMIS did not transact any business directly

with the Union Securities Defendants, the contacts that the Trustee cites and must rely upon are

derivative of the Fairfield Funds' contacts; if the Fairfield Liquidators cannot allege sufficient

jurisdictional contacts, neither can the Trustee.  As the transfers occurred completely outside the

United States, the Trustee cannot meet his burden of establishing this Court's personal

jurisdiction over each of these transfers, and the Complaint must be dismissed. *See Neewra, Inc.*

*v. Manakh Al Khaleej Gen. Trading & Contracting Co.*, No. 03 CIV. 2936, 2004 WL 1620874,

---

process requirements, so the analyses are largely interchangeable.  *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

at *5 (S.D.N.Y. July 20, 2004) (non-U.S. bank did not engage in any jurisdictionally relevant activities in New York where it did not use its U.S. correspondent account to effect any transactions giving rise to plaintiff's claims); *see also Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, No. 19-CV-6046, 2020 WL 1166053, at *5 (S.D.N.Y. Mar. 11, 2020) (plaintiff failed to make a *prima facie* showing under CPLR § 302(a)(1) because plaintiff did not allege "the existence of a single act directed at New York out of which these claims arise").

Second, the Trustee cannot establish jurisdiction by alleging that the Union Securities Defendants "purposely availed themselves of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry." Compl. at ¶ 6. Specifically, the allegations that the Union Securities Defendants knew that Fairfield Sentry, a foreign fund, would invest in BLMIS is not the basis of this litigation, and thus does not support jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on the 'relationship among the defendant, the forum, and the litigation'" (citations omitted)). The basis for liability on the Trustee's claims is not the Union Securities Defendants' decision to invest with Fairfield Sentry or their alleged knowledge that Fairfield Sentry would invest in BLMIS, but on the transfers they allegedly received from Fairfield Sentry. Those transfers were "purely foreign." Driscoll Decl. Ex. 9 (Liquidators' Appeal) at 24.

Moreover, knowledge that the foreign Fairfield Funds would invest with BLMIS in New York is insufficient as a matter of law to support jurisdiction over the Union Securities Defendants. The Supreme Court has "consistently rejected attempts to satisfy the defendant-

focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third

parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citations omitted). As

the Supreme Court explained, the foreseeability of a <u>plaintiff's</u> connection to the forum is

irrelevant to whether there is jurisdiction over the <u>defendant</u> because it "impermissibly allows a

plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289.

Instead, "[t]he substantial connection … between the defendant and the forum State necessary

for a finding of minimum contacts must come about by an action of the defendant purposefully

directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano

Cty.*, 480 U.S. 102, 112 (1987) (citations omitted). Even if true, the Trustee's allegation that the

Union Securities Defendants knew that the Fairfield Funds would invest with BLMIS does not

satisfy *Walden*, and it is insufficient to drag the Union Securities Defendants into a New York

court. Moreover, if the Trustee's theory were upheld, any investment that foreseeably found its

way into a U.S. asset would confer personal jurisdiction. There is no precedent for such a

sweeping result.

Third, the Union Securities Defendants' alleged entry into subscription agreements with

Fairfield Sentry (under which they allegedly submitted to New York jurisdiction) does not confer

jurisdiction over them. The Trustee cannot invoke a forum selection clause in a contract to

which he is a stranger to establish this Court's jurisdiction over his subsequent transfer claims.

*See Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc*., No. 20 CIV. 9993, 2021

WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause

for a non-party plaintiff bringing claims outside of the clause's scope). This Court previously

concluded that the execution of certain subscription agreements, without more, did not subject

the defendants to personal jurisdiction. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re

Fairfield Sentry Ltd.)*, 10-13164 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6,

2018).   Specifically, this Court held that the New York choice of forum provisions in the subscription agreement were not applicable to the disputes concerning subsequent transfers because the Fairfield Liquidators' claim is solely based on redemptions and does not arise out of the subscription agreements.   *Id.* at *11 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").

Finally, none of the Trustee's remaining jurisdictional allegations—that the Union Securities Defendants "sent copies of the agreements to FGG's New York city office, and had funds wired to Fairfield Sentry through a bank in New York" (Compl. at ¶ 7)—are sufficient to establish personal jurisdiction over the Union Securities Defendants.   None of these alleged contacts—Subscription Agreement, investments in Sentry, or alleged communications with FGG account representatives—give rise to the Trustee's claims.   *See Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *4-5 (various contacts with New York insufficient to confer personal jurisdiction under Section 302(a)(1) where none gave rise to plaintiff's cause of action); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 n.4 (2016) (to establish jurisdiction, the cause of action must arise from the very transactions that are relied upon to provide the contact with the forum).   Moreover, even if accepted as true, allegations that a foreign bank sent contracts or wired money through New York are insufficient to establish that it was transacting business in New York or had minimum contacts with the U.S.   *See SPV Osus Ltd.*, 882 F.3d at 345 (finding "handful of communications and transfer of funds . . . are insufficient to allow the exercise of specific personal jurisdiction over the [Foreign] Defendants"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding allegations that foreign defendants "communicated with and transmitted information and funds to and from BLMIS located in New York" were insufficient to "project" the foreign defendants into New York (internal quotations omitted)); *see also Walden*, 571 U.S. at 285 (instructing that the relevant analysis "looks to the

defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").[18]

Based on the foregoing, the Trustee has not alleged that the Union Securities Defendants had any contacts whatsoever with the United States related to the Trustee's claims to recover the alleged subsequent transfers.  Accordingly, the exercise of personal jurisdiction over them would not comport with due process.  *See Walden*, 571 U.S. at 286 ("Due Process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (*quoting Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  As such, the Complaint should be dismissed for lack of personal jurisdiction over the Union Securities Defendants pursuant to Rule 12(b)(2) of the Federal Rules.

---

[18] The Complaint's miscellaneous jurisdictional allegations are also insufficient because the Complaint does not allege any additional facts supporting these unsubstantiated allegations.  Conclusory allegations like this, based solely on "information and belief," (Compl. at ¶ 7), are inadequate as a matter of law. *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (allegations based "upon information and belief" were entirely speculative where the complaint contained no allegations of fact which, if true, would have supported such allegations); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (a "conclusory allegation on information and belief" is insufficient to make a claim plausible where the complaint's factual allegations do not raise a right to relief above the speculative level); *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (complaint with no specific factual allegations to enable court to evaluate information and belief assertions failed to state a claim).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

Dated:    New York, New York
          April 4, 2022

By:  */s/ Michael T. Driscoll*

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Michael T. Driscoll
Blanka K. Wolfe
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
mdriscoll@sheppardmullin.com
bwolfe@sheppardmullin.com

*Attorneys for the Union Securities Defendants*