# ATTACHMENT B

# IRVING H. PICARD

v.

# FRANK J. AVELLINO et al.

Expert Rebuttal Report

Stanley I. Fortgang

September 4, 2020

## TABLE OF CONTENTS

Introduction..........................................................................................3

Experience and Qualifications.............................................................3

Materials Reviewed..............................................................................3

Opinions...............................................................................................3

Opinion 1: Dubinsky's entire report deals nearly exclusively with matters that occurred prior to 1993..............................................................4

Opinion 2: Dubinsky's entire report is based on an IA relationship which in fact did not exist at the time.................................................5

Opinion 3: BLMIS was acting as a market maker at all times for the Avellino's.......................................................................................7

Summary of Opinions...........................................................................8

Submission...........................................................................................8

A435.001-1/00803897 v1

**Introduction**

I have been asked by counsel for Defendants, Frank J. Avellino et al. (collectively, "Avellino") to express my professional opinion on issues raised by Plaintiffs expert, Bruce G. Dubinsky ("Dubinsky") in his Expert Report dated June 5, 2020. These opinions are in the form of a Rebuttal report specifically addressing issues raised in the matter of Picard v. Avellino.

These issues include (but are not limited to): that Dubinsky deals nearly exclusively with matters that occurred prior to 1993 and with an entity different from the one at issue here; that Dubinsky refers to an Investment Advisor ("IA") which did not exist prior to 2006 and with which Avellino never had any relationship with and that Dubinsky ignores completely that the relationship between Avellino and BLMIS was at all times a client/broker-dealer relationship.

In addition to the above, I am prepared to respond to issues raised by any expert reports produced by Trustee and at trial by any witnesses, or questions posed by the Court in this matter.

**Experience and Qualifications**

My experience and qualifications are addressed in the initial Expert Report produced on June 5, 2020. My CV is attached to that report as Exhibit 1.

**Materials Reviewed**

In formulating my opinions in this matter, I have reviewed the materials listed in Exhibit 3 of my Expert Report dated June 5, 2020.

**OPINIONS**

My opinions, as outlined below, are in rebuttal to the Expert Report of Bruce G. Dubinsky on behalf of Irving Picard, Trustee in his role as liquidator in the bankruptcy of BLMIS. They are based on my 25 years of experience as a market practitioner at major investment banking institutions, actively making markets whereby I engaged in buying and selling securities with clients, and trading in financial assets. I reserve the right to express opinions on all the issues raised in the "Introduction" section above, and I delineate certain critical points below:

Dubinsky bases his report on a variety of assumptions as to facts that are simply not accurate. Specifically, he focuses the near entirety of his report on the period dating to prior to

A135.001-1-00803897 v1

3

1993; a period when the Avellino accounts at issue here did not exist. He further bases the near entirety of his report on an alleged relationship with a BLMIS related IA which simply did not exist prior to 2006. Finally, he simply ignores the fact that, rather than an IA relationship, Avellino instead only had a broker agreement with BLMIS who at all times and in all instances acted as a broker and never as an IA.

## OPINION 1: Dubinsky's entire report deals nearly exclusively with matters that occurred prior to 1993.

On June 5, 2020, Dubinsky submitted a 128-page report (supplemental to his 2019 report re: Madoff's operations in general) consisting of 226 paragraphs. Of these voluminous pages and paragraphs, nearly none have any bearing on the issues at hand.

The significant bulk of Dubinsky's work is a re-hashing of his earlier report submitted in 2019 and not specific to the validity of the trades at issue, the results of which Trustee is attempting to claw-back from the Avellino's.

In fact, it is not until paragraph 162 (of 228) that Dubinsky addresses anything beyond the year 1992 and not in regards specifically to the Avellino and Bienes ("A&B") entity.

Putting aside the potential legal question of an expired statute of limitations likely in force here, the A&B entity, so much a part of Dubinsky's focus, has no bearing on this matter.

The A&B entity formed decades ago was, as noted by Dubinsky, liquidated in 1992 under SEC enforcement action. Securities and accounts were liquidated, and payments were made to all claimants. Everything regarding any wrongdoing by A&B was addressed and settled at that time.

Any such SEC settlement represents a finality to all events that occurred prior to that date and further acknowledges that the SEC took no further action regarding any relationship between A&B and BLMIS at that time. The SEC settlement thus closes that matter.

The subsequent relationship of Avellino with BLMIS was separate and apart from the A&B relationship, involving new account documents clearly outlining the relationship as a broker/client relationship and involving securities trading by BLMIS on behalf of Avellino. All methods and strategies employed within the previous BLMIS - A&B relationship ceased. New methods and strategies were implemented with the post A&B accounts.

**OPINION 2: Dubinsky's entire report is based on an IA relationship which in fact did not exist at the time.**

Throughout his report Dubinsky refers to the "Madoff IA business". As I will show, this is of no consequence in this matter as it has no factual bearing here.

The Investment Advisers Act has a specific exemption from the definition as an IA for "broker-dealers whose services are solely incidental to their business as a broker or dealer and who does not receive any special compensation". As such, BLMIS does not fall under the definition of an IA. BLMIS was not an IA, was not required to register as an IA, nor did it register as an IA prior to 2006.

In nearly every single paragraph where any description of BLMIS is noted, Dubinsky refers to an entity he calls an "IA", or Investment Advisor. Yet, it is apparent that no such Madoff affiliated entity existed prior to 2006. Because there was no such IA entity prior to 2006, all references to any activities that took place between an IA and Avellino prior to 2006 have no relevance here.

Similarly, because Avellino had no relationship with any BLMIS related IA, even one formed and registered at the end of 2006, any references to activities that took place between any BLMIS related IA and Avellino after 2006 are likewise of no consequence here.

In fact, at no point covered by the Dubinsky report, did an IA owned by Madoff exist, much less be the type of entity with which Avellino had a relationship.

The actual relationship agreed to between Avellino and BLMIS was a customer/broker relationship. Account opening documents never refer to an IA and the only documents that exist are those opening up a brokerage account.

BLMIS, acting as a broker-dealer, never received any fee-based compensation—the hallmark of an IA. Rather it was paid commissions or earned the spread when acting as a market maker generated from its securities trading—the hallmark of a broker-dealer.

Neither of these forms of compensation constitutes any special compensation as noted in the exemption for a broker-dealer from the definition of an IA under the Investment Advisers Act.

Referring to BLMIS as an IA, in addition to being factually incorrect, was practically so as well. An IA as a registered entity carries significantly different requirements than a broker including certain registrations, filings and record keeping in addition to a much higher fiduciary standard of care.

Specifically, while brokers are regulated and audited by FINRA, investment advisers are regulated and audited by the SEC. Under these regulatory bodies the entities are different in that:

- Investment advisers are paid a flat fee or percentage of AUM to advise clients on securities and/or manage portfolios.
- Brokers are paid commissions to execute trades or buy and sell assets for clients.
- Investment advisers often create an entire wealth management framework, including assisting clients through tax, estate, and mortgage planning and are also known as asset managers, investment managers, and wealth managers.
- Investment advisers are also held to a higher legal standard.
- Investment advisers must adhere to the Investment Advisers Act of 1940, which calls on advisers to perform fiduciary duties in managing their clients' accounts.
- Fiduciary duty, which is legally enforceable, prohibits advisers from "employ[ing] any device, scheme or artifice to defraud any client or prospective client."
- The standard also imposes upon the adviser the "affirmative duty of 'utmost good faith' and full and fair disclosure of material facts"[1] as part of the adviser's duty to exercise loyalty and care. This includes an obligation not to subordinate the clients' interests to its own.
- Brokers need only pass the series 7 and Series 63 (state laws) exams while IA's must pass the series 65 exam to dispense advice for a fee.[2]
- Other representatives of a BD may take other exams including Series 9/10 (for Branch Managers), Series 24 (for Principals), Series 27 (for Financial Operational Principals) plus specific exams for specific securities products, including stock options which BLMIS traded. None of these would be taken by employees of an IA.

At no point prior to 2006, did either Madoff individually or BLMIS as an entity act in the ways required to be defined as an IA. And at no point—even post 2006—did BLMIS have an IA relationship with Avellino. BLMIS was not registered as such, did not perform the duties of an IA, did not take management fees, and did not represent themselves as such.

---

[1] https://www.sec.gov/about/offices/oia/oia_investman/rplaze-042012.pdf
[2] https://www.sec.gov/about/offices/oia/oia_investman/rplaze-042012.pdf

A435.001-1/00303897 v1

6

## OPINION 3: BLMIS was acting as a market maker at all times for the Avellino's.

BLMIS was a registered broker-dealer and was a member of FINRA (and its predecessor NASD), the principal organization that regulates broker-dealers and its individual brokers.

Broker-dealers and market makers, in the regular course of their business, engage in buying and selling securities on behalf of clients as well as taking risk as a market maker vs. other market makers and other market participants.

Contrary to the statements made by Dubinsky, BLMIS was at all times acting as a broker-dealer and market maker of securities. In that role, it bought and sold regularly in both capacities on behalf of clients including Avellino.

It is clear that Bernard Madoff, individually, as a broker, was given absolute trading discretion over Avellino's accounts via a form known as a Limited Trading Authorization Form. By virtue of this trading discretion, Mr. Madoff, a broker, and not an IA, directed BLMIS to buy and sell securities in Avellino accounts, acting without consultation with Avellino.

In discretionary accounts, confirmations and statements are the customary means of clients being made aware of trades and securities being traded. For this reason, FINRA regulations clearly require that such confirmations be timely sent to customers.

Throughout the relationship between Avellino and BLMIS all transactions generated timely confirmations issued by BLMIS and sent to Avellino. Also generated and sent in a timely fashion were monthly statements re-capping all transactions that occurred during the prior month. (see 6/5/2020 report)

Receipt of these documents not only memorialized the transactions for Avellino but in reality, confirmed the existence of obligations on BLMIS to deliver all rights of ownership to Avellino.

Any, and all, monies deposited by Avellino at BLMIS were to be used and were in fact used to purchase (and sell) securities. In my expert report of June 5, 2020, I provide examples of deposits by Avellino to BLMIS and the subsequent purchases made by BLMIS using the cash just deposited. The monies sent by Avellino were used exclusively to purchase securities and never for any other purposes.

Given all of the above, as well as the lack of any evidence to the contrary, it is clear that BLMIS was acting solely in the role of broker-dealer and market maker and never as an IA. When Dubinsky, in the entirety of his report refers to an IA relationship he is in fact misrepresenting a fundamental point regarding the relationship between BLMIS and Avellino.

## SUMMARY OF OPINIONS

In sum, the Dubinsky reports, both of 2019 and June 5, 2020, have little to no bearing on this matter. Dubinsky seems to be arguing a different case, relying on his work done for the general class of claw back claims and not tailored to Avellino. As I have shown in both my June 5, 2020 report as well as in this rebuttal, the claims against A&B (the pre-1993 period), which Dubinsky analyzes in 75% of his report have no relationship with this matter. Furthermore, at no point in time (pre 1993, post 1993/pre 2006, post 2006) did Avellino have any form of IA account with BLMIS. Therefore, any allegations or references to improprieties occurring within the IA "segment" of BLMIS are irrelevant.

Any pre 1993 issues were dealt with at the time and settled and disposed with by the regulators and cannot be "re-tried" nearly 30 years later.

Further, Dubinsky relies upon the complete fallacy that an IA existed and that the relationship between BLMIS and Avellino was governed by the customs and regulations of such an agreement. However, as I have shown, there existed no such entity prior to 2006 and even after there never existed an agreement by which BLMIS provided an IA service to Avellino.

## SUBMISSION

This report is respectfully submitted as of the date below. It is based on information known to me as of this date. I reserve the right to change or modify my opinions upon new information received.

Respectfully Submitted,

Stanley Fortgang
September 4, 2020