UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION
CORPORATION,

                    Plaintiff-Applicant,

      v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                    Defendant.
------------------------------------------------------------x
In re:

BERNARD L. MADOFF,

Debtor.
------------------------------------------------------------x
IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                    Plaintiff,

      v.

FRANK AVELLINO, et al.,

                    Defendants.
------------------------------------------------------------x

Adv. Pro. No. 08-01789 (BRL)

SIPA LIQUIDATION

(Substantively Consolidated)

Adv. Pro. No. 10-05421 (BRL)

## DECLARATION OF DIANNE BIENES

I, Dianne Bienes, Individually and as Personal Representative of the Estate of Michael Bienes, declare, under penalty of perjury that the following is true and correct:

1.      Due in part because we spent time in our homes in Florida and London, spent an inordinate amount of time involved in charity work and travelled extensively, Michael Bienes,

my late husband, and I had little or nothing to do with A & B, Grosvenor, Mayfair or any entity which is a defendant in this action except for St. James, which was established in or about 2004.

2. We therefore had no involvement with the operations of A & B through the time of the SEC investigation and the time that A & B ceased operating. If Frank Avellino sent statements back to BLMIS, if BLMIS redid those statements or created backdated trades, or if A & B provided anything other than original statements to the SEC, we would have had no knowledge whatsoever if any of this was ever done or even discussed between anyone at BLMIS and anyone at A & B. We never heard of it as being an issue or possibility until after Madoff was arrested over a decade later.

3. Not only did we not know or have access to the number of trades or information relating to the buying or selling prices of specific stocks reflected on any BLMIS statements (other than my personal statements and those of St. James, had we looked for that information), we never compared stock prices on the statements which we did have with those prices which were published and never thought to do so. Nor did we ever look up the total number of trades of any particular stock in the entire marketplace and compare them with the total number of trades of that particular stock which BLMIS made or look up the total number of shares outstanding for any particular stock – or ever consider doing so. While we understood that we received what were considered good rates of return, we never thought that they were "impossible;" it was common knowledge that Madoff provided good rates of return. We had no idea that Madoff or BLMIS was concealing information from, or misrepresenting anything to, regulators.

4. Nor did we ever suspect that Madoff or BLMIS were insolvent; we had no information about his finances or those of BLMIS and thought that they were prosperous.

A435.001-1/00908159 v1

5.  We were absolutely stunned when Madoff was arrested and allegations relating to a Ponzi scheme was publicized. We had not the tiniest suspicion that Madoff or BLMIS was doing anything that was not totally legal and proper; we just thought that Madoff was an investment genius to whom the financial world went for advice and who knew how to work the stock market to his and our advantage. If trades were not really made on our behalf, we never knew or suspected that. This is why, for example, we mortgaged our home so heavily (including a mortgage modification in 2008), gave tens of millions to charity, and lost our home after Madoff was arrested.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on 03/30, 2022,

*Dianne Bienes*

Dianne Bienes, Individually and as Personal Representative of the Estate of Michael Bienes

Doc No. 1178625