HERBERT SMITH FREEHILLS
NEW YORK LLP
Scott S. Balber
Jonathan C. Cross
450 Lexington Avenue
New York, New York 10017
Telephone: (917) 542-7600
scott.balber@hsf.com
jonathan.cross@hsf.com

**Hearing Date: September 14, 2022**
**Opposition Date: June 9, 2022**
**Reply Date: July 13, 2022**

*Attorneys for Defendants Bank Hapoalim (Switzerland) Ltd. and Bank Hapoalim B.M.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01216 (CGM) |
| Plaintiff, | |
| v. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT** |
| BANK HAPOALIM B.M. and BANK HAPOALIM (SWITZERLAND) LTD., | |
| Defendants. | |

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL AND FACTUAL BACKGROUND ............................................... 2

    A.  Background ....................................................................................... 2

    B.  The Trustee's Action Against Fairfield Sentry ................................ 3

    C.  The Fairfield Liquidators' Redeemer Actions ................................. 4

    D.  The Complaint in this Action ........................................................... 5

         1.  Overview of the Trustee's Allegations ................................. 5

         2.  The Alleged "Initial Transfers" from BLMIS to Fairfield Sentry ........... 6

         3.  The Alleged "Subsequent Transfers" to Defendants ............................. 7

         4.  Jurisdictional Allegations ........................................................ 8

    E.  The Trustee is Seeking to Recover Nearly Two Times as Much Money in Alleged Subsequent Transfers from Fairfield Sentry as He Alleges was Initially Transferred to Fairfield Sentry from BLMIS ...................... 9

ARGUMENT ......................................................................................................... 10

    I.  THE TRUSTEE'S CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ...................................... 10

      A.  There is No Basis to Assert General Jurisdiction Over Either Defendant ...... 10

      B.  There is No Basis to Assert Specific Jurisdiction Over Either Defendant ..... 11

         1.  The Alleged Foreseeability of Fairfield Sentry's Investment in BLMIS is Insufficient to Establish Specific Jurisdiction over Either Defendant ... 12

         2.  A Subscription Agreement Cannot Subject Hapoalim Switzerland to this Court's Specific Jurisdiction ................................. 15

         3.  Mere Maintenance of a New York Bank Account Cannot Establish Specific Jurisdiction over Hapoalim Switzerland .............................. 16

         4.  The Trustee's Additional Allegations of Contact with Fairfield Greenwich Group in New York Cannot Establish Specific Jurisdiction over Hapoalim Switzerland ........................ 17

    II.  THE TRUSTEE FAILS TO ADEQUATELY PLEAD THAT DEFENDANTS RECEIVED CUSTOMER PROPERTY ................................ 18

      A.  The Trustee Has Failed to Carry His Pleading Burden .................... 18

      B.  The Trustee's Pleading Failure is Not Excused by Any Lack of Information 20

C.  The Trustee Cannot Sustain Allegations that Fairfield Sentry Paid Out
Subsequent Transfers of BLMIS Customer Property in the Amount of $5
Billion While Receiving Initial Transfers of BLMIS Customer Property in the
Amount of Only $3 Billion ............................................................................ 22

D.  Where Alleged Subsequent Transfers Occur Long After any Possible Initial
Transfer, or When All Customer Property Initially Transferred was
Transferred Out, it is Implausible that Such Subsequent Transfers Contain
BLMIS Customer Property ............................................................................ 23

III.  THE TRUSTEE ALSO FAILS TO MEET HIS RULE 8 PLEADING BURDEN
MORE BROADLY .................................................................................................. 26

IV.  THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(E) OF THE
BANKRUPTCY CODE .......................................................................................... 30

A.  The Alleged Initial Transfers Were Made by a Stockbroker .......................... 32

B.  The Alleged Initial Transfers Were Made to a Financial Institution .............. 32

C.  The Alleged Initial Transfers Were Allegedly Made for the Benefit of
Financial Institutions ..................................................................................... 33

D.  The Initial Transfers Were Made in Connection with the Fairfield-BLMIS
Account Agreements, which Were "Securities Contracts" .............................. 34

E.  The Initial Transfers Were Made in Connection with the Fairfield Sentry
Articles of Association, Which Constitute a Separate "Securities Contract" . 35

F.  The Fairfield Sentry Initial Transfers Were "Settlement Payments" .............. 36

G.  The Trustee Has Not Alleged that Either Defendant Had Actual Knowledge of
Any Fraud ...................................................................................................... 37

CONCLUSION ..................................................................................................................... 38

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Pages**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................ 22, 26, 27

*Aybar v. Aybar,*
    169 A.D.3d 137 (2d Dep't 2019) *aff'd on other grounds* 37 N.Y.3d 274 (2021) .................. 10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ 21, 22, 26, 27

*Charles Schwab Corp. v. Bank of Am. Corp.,*
    883 F.3d 68 (2d Cir. 2018) ................................................................................................. 15

*City of Long Beach v. Total Gas & Power N. Am. Inc.,*
    465 F. Supp. 3d 416 (S.D.N.Y. 2020) ........................................................................... 14, 15

*Comm. Of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank,*
    549 B.R. 56 (S.D.N.Y. 2016) ............................................................................................. 11

*Cooper v. Parsky,*
    1997 WL 242534 (S.D.N.Y. Jan. 8, 1997) ...................................................................... 14, 15

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991) ................................................................................................... 2

*Daimler AG v. Bauman,*
    134 S. Ct. 746 (2014) ........................................................................................................ 10

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.,*
    2017 WL 476720 (S.D.N.Y. Feb. 2, 2017) .......................................................................... 16

*Ferrante Equip. Co. v. Lasker-Goldman Corp.,*
    26 N.Y.2d 280 (1970) *aff'd in relevant part, vacated in part on other grounds* 140 F.3d 433
    *(2d Cir. 1998)* ................................................................................................................. 14

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.,*
    141 S. Ct. 1017 (2021) ...................................................................................................... 11

*Gucci Am., Inc. v. Bank of China,*
    768 F.3d 122 (2d Cir. 2014) ............................................................................................... 10

*Harris v. N.Y.S. Dep't of Health,*
    202 F. Supp. 2d 143 (S.D.N.Y. 2002) .................................................................................. 2

*Hau Yin To v. HSBC Holds., PLC,*
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ............................................................ 17

*Hau Yin To v. HSBC Holds., PLC,*
    700 F. App'x 66 (2d Cir. 2017) ............................................................................ 17

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) ............................................................................................ 12

*Hill v. HSBC Bank plc,*
    207 F. Supp. 3d 333 (S.D.N.Y. 2016) .................................................................. 17

*Hinton v. Trans Union, LLC,*
    654 F. Supp. 2d 440 (E.D. Va. 2009) .................................................................. 29

*In re Amaranth Natural Gas Commodities Litig.,*
    587 F. Supp. 2d 513 (S.D.N.Y. 2008) ............................................................ 12, 13

*In re CIL Ltd.,*
    582 B.R. 46 (Bankr. S.D.N.Y. 2018) ..................................................................... 5

*In re Dreier LLP,*
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ............................................................. 27, 28

*In re Fairfield Sentry Ltd.,*
    596 B.R. 275 (Bankr. S.D.N.Y. 2018) ................................................................... 5

*In re Fairfield Sentry Ltd.,*
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ................................. 15, 17, 35

*In re Fairfield Sentry Ltd.,*
    2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ................................. 5, 31, 32

*In re Flutie N.Y. Corp.,*
    310 B.R. 31 (Bankr. S.D.N.Y. 2004) .................................................................... 28

*In re Robert Plan of N.Y. Corp.,*
    456 B.R. 150 (Bankr. E.D.N.Y. 2011) .................................................................. 28

*In re Sharp Int'l Corp.,*
    403 F.3d 43 (2d Cir. 2005) ................................................................................... 27

*In re Terrorist Attacks on Sept. 11,*
    *2001,* 714 F.3d 659 (2d Cir. 2013) ...................................................................... 11

*In re Tribune Co. Fraudulent Conveyance Litig.,*
    946 F.3d 66 (2d Cir. 2019) ..................................................................... 30, 34, 36

*Motorola Credit Corp. v. Uzan,*
  132 F. Supp. 3d 518 (S.D.N.Y. 2015)......................................................... 10

*N.H. v. Maine,*
  532 U.S. 742 (2001)................................................................................ 16, 33

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.,*
  2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ........................................... 28

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,*
  322 F.3d 147 (2d Cir. 2003).................................................................. 33, 35

*Penguin Grp. (USA) Inc. v. Am. Buddha,*
  609 F.3d 30 (2d Cir. 2010)........................................................................ 11

*Pettaway v. Nat'l Recovery Sols., LLC,*
  955 F.3d 299 (2d Cir. 2020)...................................................................... 29

*Picard v. Citibank (In re Bernard L. Madoff Inv. Secs. LLC),*
  12 F.4th 171 (2d Cir. 2021) ...................................................................... 30

*Picard v. Estate of Chais (In re Bernard L. Madoff Inv. Secs. LLC),*
  445 B.R. 206 (Bankr. S.D.N.Y. 2011)…………………………………………...21

*Picard v. Greiff,*
  476 B.R. 715 (S.D.N.Y. 2012).................................................................. 32

*Picard v. Ida Fishman Revocable Trust,*
  773 F.3d 411 (2d Cir. 2014)............................................................... passim

*Picard v. Katz,*
  462 B.R. 447 (S.D.N.Y. 2011).................................................................. 32

*Picard v. Mayer (In re Bernard L. Madoff Inv. Secs. LLC),*
  2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ............................... 21

*Picard v. Merkin (In re Bernard L.,Madoff Inv. Secs. LLC),*
  515 B.R. 117 (Bankr. S.D.N.Y. 2014)................................................. 21, 24

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC),*
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................... 18, 19, 20, 26

*Rosenblatt v. Coutts & Co. AG,*
  2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017)........................................... 11

*Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC),*
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...................................................... 11

*Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
  2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)..................................................... passim

*SIPC v. Bernard L. Madoff Inv. Secs. LLC (Picard v. Fairfield Inv. Fund Ltd.)*,
  2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...................................... 2, 31, 37

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
  277 F. Supp. 3d 521 (S.D.N.Y. 2017)................................................................ 10

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018)................................................... 11, 12, 17, 18

*Steinberg v. A Analyst Ltd.*,
  2009 WL 838989 (S.D. Fla. Mar. 26, 2009) ............................................. 12, 13

*Suber v. VVP Servs., LLC*,
  2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021)................................................ 14

*Taylor v. Sturgell*,
  553 U.S. 880 (2008)........................................................................................ 16

*Tellabs, Inc. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)........................................................................................ 2

*Theraplant, LLC v. Makarechi*,
  2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016) ............................................ 14

*Tymoshenko v. Firtash*,
  2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ............................................ 14

*U.S. v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ................................................... 28, 29

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*,
  477 F. Supp. 3d 241 (S.D.N.Y. 2020)............................................................. 17

*Walden v. Fiore*,
  571 U.S. 277 (2014)................................................................... 11, 12, 13

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
  543 B.R. 127 (Bankr. S.D.N.Y. 2016)...................................................... 13, 15

## Statutes

11 U.S.C. § 101 ......................................................................................... 32, 33

11 U.S.C. § 544............................................................................................. 6, 27, 30

11 U.S.C. § 546............................................................................................ passim

11 U.S.C. § 547 ........................................................................................................................... 28

11 U.S.C. § 548 ........................................................................................................ 27,28, 30, 31

11 U.S.C. § 550 ................................................................................................................... passim

11 U.S.C. § 551 ...................................................................................................... 5, 6, 27, 30

11 U.S.C. § 741 ........................................................................................................................... 34

15 U.S.C. § 78fff-2 ........................................................................................... 6, 18, 23, 27

15 U.S.C. § 78lll .................................................................................................................. 1, 27

N.Y. Debtor & Creditor Law §§ 273-279 .................................................... 5, 6, 27, 28

## Rules

Fed. R. Bankr. P. 7004 .............................................................................................. 11

Fed. R. Bankr. P. 7012 ................................................................................................ 1

Fed. R. Civ. P. 8 ............................................................................................................ 1

Fed. R. Civ. P. 10 ....................................................................................................... 28

Fed. R. Civ. P. 12 ......................................................................................................... 1

N.Y. CPLR § 302 ................................................................................................. 11, 14

Defendants Bank Hapoalim (Switzerland) Ltd. ("Hapoalim Switzerland") and Bank Hapoalim B.M. ("Hapoalim B.M.") (each, a "Defendant," and collectively, the "Hapoalim Defendants" or "Defendants") submit the following memorandum of law in support of their motion to dismiss the Complaint (ECF No. 1[1]) ("Compl.") (Ex. 1[2]) of plaintiff Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") (the "Trustee"), pursuant to Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

The Trustee has asserted a single claim against the Hapoalim Defendants seeking to recover approximately $21 million in purported subsequent transfers of allegedly avoidable initial transfers from BLMIS to Fairfield Sentry Limited ("Fairfield Sentry").[3]

The Complaint should be dismissed for at least four reasons. *First*, this Court does not have personal jurisdiction over either Defendant because neither Defendant availed itself of the privileges and benefits of conducting business in the United States, nor did either Defendant have sufficient minimum contacts therewith. *Second*, the Trustee fails to plausibly allege that either Defendant received subsequent transfers of BLMIS Customer Property,[4] because the Trustee's allegations, in aggregate, are mathematically impossible on their face. *Third*, the Complaint fails to allege that any of the alleged initial transfers can be avoided, as required by Fed. R. Civ. P. 8.

---

[1] Citations in the form of "ECF No. __" refer to Adv. Pro. No. 12-01216 (Bankr. S.D.N.Y.), unless otherwise indicated.

[2] Citations in the form of "Ex. __" refer to exhibits to the Declaration of Scott S. Balber, filed concurrently herewith ("Balber Decl.").

[3] While the Trustee's Complaint, as filed, alleged a separate count based on subsequent transfers of allegedly avoidable initial transfers to Kingate Global Fund Ltd. (*see, e.g.*, Compl. ¶¶ 2, 55-59), all claims as to transfers from Kingate Global Fund Ltd. to Hapoalim Switzerland have been dismissed (*see* ECF No. 113 at 2-3).

[4] "Customer Property" is defined as, in relevant part, cash and securities at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted. *See* Compl. ¶ 1 n.1 (citing 15 U.S.C. § 78lll(4)).

*Finally*, the Trustee's claims as to subsequent transfers of initial transfers made more than two years prior to the petition date are barred by the section 546(e) safe harbor.

## PROCEDURAL AND FACTUAL BACKGROUND

### A. Background

Fairfield Sentry was a British Virgin Islands ("BVI") hedge fund currently in liquidation in the BVI, which had direct customer accounts with BLMIS for the purpose of investing assets with BLMIS. (Compl. ¶ 2[5].) Fairfield Sentry operated from late 1990 through BLMIS' collapse in December 2008 as a "Madoff feeder fund" that invested directly with BLMIS and sold shares to various investors, pursuant to redemptions of which Fairfield Sentry transferred funds to said investors. (*See id.* ¶¶ 2, 6; Ex. 2 (Am. Compl., *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010) (the "Fairfield Action"), ECF No. 23 (the "Fairfield Amended Complaint" or "Fairfield Am. Compl.")) ¶¶ 23, 32–35.[6]

As of September 30, 2021, the Trustee maintained 81 subsequent transfer actions against entities that allegedly received subsequent transfers from feeder funds including "the Fairfield Funds, the Tremont Funds, and Harley." (*See* Ex. 3, "Trustee's Twenty-Sixth Interim Report for the Period April 1, 2021 through September 30, 2021," Adv. Pro. No. 08-01789, ECF No. 20821 ¶ 225.) Over 60 of these suits are against subsequent transferees of Fairfield entities. (*Id.* ¶¶ 225-

---

[5] Factual allegations in the Complaint are accepted as true for purposes of this motion without concession of their truth or falsity by the Hapoalim Defendants.

[6] On a motion to dismiss, this Court may consider, in addition to the allegations in the Complaint and any exhibits thereto and documents incorporated therein, the Trustee's pleadings in other cases and other items of which the Court may take judicial notice. *SIPC v. Bernard L. Madoff Inv. Secs. LLC (Picard v. Fairfield Inv. Fund Ltd.)*, 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021) (on R. 12(b)(6) motion, the Court "must consider… matters of which a court may take judicial notice") (quoting *Tellabs, Inc. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)) (Morris, C.J.). The Court may take judicial notice of materials "integral to the complaint." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). This is especially so where, as here, the "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint." *Id.* at 48. Included in the scope of such judicial notice are admissions in a party's filings in other actions. *See, e.g.*, *Harris v. N.Y.S. Dep't of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002). Defendants respectfully request that the Court take judicial notice of all such materials.

229 & Ex. D.)  The Trustee's actions against subsequent transferees are properly understood in the context of actions he has taken against the Fairfield Funds, including Fairfield Sentry, and actions taken by the Liquidators of Fairfield Sentry against purported subsequent transferees of Fairfield Sentry.

**B.      The Trustee's Action Against Fairfield Sentry**

On May 18, 2009, the Trustee commenced an adversary proceeding against Fairfield Sentry and other defendants seeking to avoid and recover over $3.5 billion of alleged initial transfers of BLMIS Customer Property that the defendants had collectively received since the mid-1990s.  (*See* Ex. 4, Fairfield Action ECF No. 1 ¶ 44.)  On July 20, 2010, the Trustee filed the Fairfield Amended Complaint, which named additional individual and entity defendants associated with the Fairfield Greenwich Group.  (Ex. 2, Fairfield Action ECF No. 23.)  In that complaint, the Trustee alleged that Fairfield Sentry specifically received "approximately $3.0 billion" in initial transfers of BLMIS Customer Property during the six-year period prior to December 11, 2008 (the "Filing Date").  (*Id.* ¶ 536.)

The Liquidators of Fairfield Sentry, with other defendants in the Fairfield Action, settled with the Trustee on May 9, 2011.  (*See* Ex. 5, Fairfield Action ECF No. 69-2 (the "Fairfield Settlement").)  In accordance with the Fairfield Settlement, this Court entered a consent judgment against Fairfield Sentry in the Trustee's favor in the amount of $3,054,000,000.  (*See* Ex. 6 ¶ 1, Fairfield Action ECF No. 109 (the "Fairfield Sentry Consent Judgment").)  In the Fairfield Settlement, "the Trustee and the Liquidators each agree[d] to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims."  (Ex. 5 ¶ 14.)  "Sharing Claims" include this action, along with certain actions the Fairfield Liquidators separately commenced against various Hapoalim entities.  *Id.* ¶¶ 4, 7, 11. The Fairfield Sentry Liquidators also agreed with the Trustee to provide each other with

"reasonable cooperation and assistance . . . in connection with the prosecution of the Sharing Claims." *Id.* ¶ 14. Since that time, over a decade ago, the Trustee has had the complete cooperation of the Fairfield Funds, as well as full access to their records—including those presumably relating to this action, which was filed months after the Fairfield Settlement. *Id.*

On August 28, 2020, the Trustee filed a Second Amended Complaint in the Fairfield Action against non-settling defendants and other additional defendants. (Ex. 7 Fairfield Action ECF No. 286 ("Fairfield Second Amended Complaint").) In the Fairfield Second Amended Complaint, the Trustee sought to recover $1.139 billion in subsequent transfers of BLMIS Customer Property allegedly paid by Fairfield Sentry to certain (non-Hapoalim) defendants therein. (*See* Ex. 8, Fairfield Action, ECF Nos. 286-8, 286-10, 286-12, 286-13, 286-14, 286-21.)

### C.    The Fairfield Liquidators' Redeemer Actions

In 2009, Fairfield Sentry and the other Fairfield Funds entered liquidation proceedings in the British Virgin Islands ("BVI"). (*See* Ex. 5, Fairfield Settlement at 2-3.) The Fairfield Liquidators subsequently commenced a number of BVI actions seeking to recoup redemptions paid to the funds' purported investors. (*See* Ex. 9, Fairfield Action ECF No. 69-9, at 6.) Those actions were discontinued following an April 2014 decision of the U.K. Privy Council ruling for defendants. *See Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9 (*available at* https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf) (Ex. 10).

Beginning in early 2010, the Fairfield Liquidators commenced hundreds of actions in New York seeking recovery of redemption payments containing alleged subsequent transfers of BLMIS Customer Property. (*See* Ex. 9, Fairfield Action ECF No. 69-9, at 1-5.) These included actions against Hapoalim Switzerland (*id.* at 1 (Adv. Pro. Nos. 10-03510; 10-03635; 10-03636) and

Hapoalim B.M. (*id.* at 3 (Adv. Pro. No. 11-01467)), seeking to recover substantially the same

subsequent transfers which form the basis for the Trustee's claims in this action.[7]

Following a series of decisions by this Court (currently on appeal), all of the Fairfield

Liquidators' claims before this Court have been dismissed save for constructive trust claims

against purported "knowledge defendants" who allegedly knew of BLMIS' fraud and consequently

knew that the redemption prices were inflated at the time of their redemptions.  *See In re Fairfield

Sentry Ltd.*, 596 B.R. 275, 282, 305, 316 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"); *In re Fairfield

Sentry Ltd.*, 2020 WL 7345988, at *1-*3, *9-*10 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield

III*").  Hapoalim Switzerland is among the purported "knowledge defendants."

**D.    The Complaint in this Action**

**1.    Overview of the Trustee's Allegations**

The Trustee brings this action pursuant to his authority under the Securities Investor

Protection Act ("SIPA").  (Compl ¶ 4.)  According to the Complaint, Defendants received from

Fairfield Sentry approximately $21.75 million in redemptions of purported "Customer Property."

(*Id.* ¶¶ 2, 61.[8])  The Trustee's claims are brought pursuant to § 550 of the Bankruptcy Code and §

278 of the New York Debtor & Creditor Law ("NYDCL").[9]  (Compl. ¶¶ 4, 64.)  The Trustee

alleges that Hapoalim B.M. "is a private bank" maintaining an address in Israel with a branch

office in New York, and "engaged in trade, corporate finance, private banking, and retail banking."

---

[7] *See* Third Am. Compl., *Fairfield Sentry Ltd. (In Liquidation) v. Bank Hapoalim (Suisse) Ltd., et al.*, Adv. Pro. No.
10-03510 (Bankr. S.D.N.Y.), ECF No. 58; Third Am. Compl., *Fairfield Sentry Ltd. (In Liquidation) v. BK Hapoalim/B
M Tel Aviv, et al.*, Adv. Pro. No. 11-01467 (Bankr. S.D.N.Y.), ECF No. 57; *see also* Fifth Am. Compl., *Fairfield
Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03635 (Bankr. S.D.N.Y.), ECF
No. 620 (not detailing specific redemptions); Fifth Am. Compl., *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN
AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03636 (Bankr. S.D.N.Y.), ECF No. 679 (not detailing specific
redemptions).

[8] Claims as to transfers from Kingate Global Fund Ltd. have been dismissed.  *See* n.3, *supra.*

[9] The Trustee also purports to bring his claim pursuant to § 551 of the Bankruptcy Code (*see, e.g.*, Compl. ¶¶ 4, 64),
but § 551 "does not provide for an independent cause of action."  *In re CIL Ltd.*, 582 B.R. 46, 97 (Bankr. S.D.N.Y.
2018).

(Compl. ¶¶ 3, 23.) The Trustee alleges that Hapoalim Switzerland "is a Swiss private bank" with

an address in Switzerland and branches in Geneva, Luxembourg, and Singapore. (*Id.* ¶ 24.) The

Trustee does not allege that either Defendant had actual knowledge of Madoff's fraud. (*See*

*generally id.*)

## 2. The Alleged "Initial Transfers" from BLMIS to Fairfield Sentry

### a. The Transfers

The Trustee alleges that "[d]uring the six years preceding the Filing Date [of December 11,

2008], BLMIS made transfers to Fairfield Sentry of approximately $3 billion" in purported

"Customer Property." (*Id.* ¶ 45.) Of that $3 billion, "approximately $1.6 billion [was] transferred

to Fairfield Sentry during the two years preceding the Filing Date. (*Id.* ¶ 46.) Of that $1.6 billion,

"approximately $1.1 billion [was] transferred to Fairfield Sentry during the 90 days preceding the

Filing Date." (*Id.* ¶ 47.)

### b. Avoidability

The Trustee alleges that: (i) the "Fairfield Sentry Six Year Initial Transfers… are avoidable

and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the

NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)" (*id.* ¶ 45); (ii) the

"Fairfield Sentry Two Year Initial Transfers… are avoidable and recoverable under sections 544,

548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions

of SIPA, particularly SIPA § 78fff-2(c)(3)" (*id.* ¶ 46); and (iii) BLMIS transfers "to Fairfield

Sentry during the 90 days preceding the Filing Date… are avoidable and recoverable under

sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly

SIPA § 78fff-2(c)(3)" (*id.* ¶ 47).

Regarding the Avoidability of the Initial Transfers, the Trustee alleges only that he filed

the Fairfield Action "in which, in part, the Trustee sought to avoid and recover initial transfers of

6

Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion."

adding that he "incorporates by reference the allegations contained in the Fairfield Amended

Complaint."  (*Id.* ¶ 37).   The purportedly "incorporate[d] by reference" Fairfield Amended

Complaint (Ex. 2) is 217 pages long, contains 798 paragraphs, and includes an additional 111

exhibits.  There are no allegations in the Fairfield Amended Complaint regarding either Hapoalim

Defendant.  (*See generally id.*, Fairfield Action ECF No. 23.)  Nowhere does the Trustee allege

that any of the Initial Transfers were ever actually avoided (*see generally* Compl.), nor does the

Trustee's consent judgment with Fairfield Sentry avoid any transfers (*see* Fairfield Action ECF

No. 109 (Ex. 6)).

> **3.    The Alleged "Subsequent Transfers" to Defendants**

> c.    <u>The Transfers</u>

The Trustee alleges that, on particular dates in the six-year period preceding the Filing

Date, Fairfield Sentry transferred: (i) $20,047,109 to Hapoalim Switzerland (Compl. ¶ 50 & Ex.

F); and (ii) $1,712,100 to Hapoalim B.M. (Compl. ¶ 52 & Ex. G).  The Trustee fails to identify

any details of any specific portion of the Initial Transfers that were allegedly part of the Subsequent

Transfers to Defendants, or to plead any specific facts indicating that *any* portion of the Subsequent

Transfers originated at BLMIS.  The Trustee instead speaks only in broad generalities, alleging

generically that:

> 50.  A portion of the Fairfield Sentry Initial Transfers was
> subsequently transferred either directly or indirectly to, or for the
> benefit of, Hapoalim Switzerland. . . .  Based on the Trustee's
> investigation to date, approximately $20,047,109 of the money
> transferred from BLMIS to Fairfield Sentry was subsequently
> transferred by Fairfield Sentry to Hapoalim Switzerland. . . .

> 52.  A portion of the Fairfield Sentry Initial Transfers was
> subsequently transferred either directly or indirectly to, or for the
> benefit of, Hapoalim B.M. . . .  Based on the Trustee's investigation
> to date, approximately $1,712,100 of the money transferred from

> BLMIS to Fairfield Sentry was subsequently transferred by Fairfield
> Sentry to Hapoalim B.M. . . . .

(Compl. ¶¶ 50, 52.)

The Trustee makes no other allegations connecting the alleged Initial Transfers to the alleged Subsequent Transfers, nor, more generally, does he plead any facts concerning the source of the redemption payments from Fairfield Sentry to the Defendants. This is so despite the Trustee's investigation that has been "ongoing" for over a decade, during which time the Trustee has had full and complete access to Fairfield Sentry's records. (*Id.* ¶¶ 49, 51, 53; Ex. 5, Fairfield Action ECF No. 69-2 ¶ 14.)

### 4.    Jurisdictional Allegations

The Trustee alleges two bases for personal jurisdiction over Hapoalim B.M., that it:  (i) "maintains a New York branch at 1177 Avenue of the Americas, New York, New York" (Compl. ¶ 23; *see also* ¶ 9); and (ii) "purposely availed [itself] of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through the Feeder Funds" (*id.* ¶ 6). The Trustee alleges no other bases to support a finding of personal jurisdiction over Hapoalim B.M.

The Trustee alleges no facts supporting a finding of general jurisdiction over Hapoalim Switzerland. (*See generally id.*) The Trustee alleges four bases for asserting specific jurisdiction over Hapoalim Switzerland, including that it:  (i) "purposely availed [itself] of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through the Feeder Funds" (*id.* ¶ 6); (ii) "entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction" (*id.* ¶ 7); (iii) "maintained a bank account at JP Morgan Chase Bank in New York which it used to receive redemption proceeds from Fairfield Sentry" (*id.*); and (iv) "direct[ed

its] investments through Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed feeder fund… sent a copy of the subscription agreement to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York" (*id.*).

**E.    The Trustee is Seeking to Recover Nearly Two Times as Much Money in Alleged Subsequent Transfers from Fairfield Sentry as He Alleges was Initially Transferred to Fairfield Sentry from BLMIS**

Examining the Trustee's allegations in the aggregate reveals that he is seeking, at a minimum, approximately $2 billion to which he has no right of recovery under the law.  Apart from the Trustee's claims against Defendants, the Trustee has filed dozens of actions against other investors in Fairfield Sentry.  Based on the operative pleadings in those actions, the Trustee alleges the following transfers from BLMIS to Fairfield Sentry:

| <u>Transfers</u> | <u>Amount</u> | <u>Citation</u> |
|---|---|---|
| BLMIS to Fairfield Sentry | "approximately **$3 billion**" | Compl. ¶ 45 |

And yet, the Trustee alleges the following transfers out from Fairfield Sentry:

| <u>Transfers</u> | <u>Amount</u> | <u>Citation</u> |
|---|---|---|
| Fairfield Sentry to Fairfield Sigma and Fairfield Lambda | $824 million | Ex. 11 (Fairfield Action, ECF Nos. 286-5, 286-6) |
| Fairfield Sentry to Entities and Individuals Associated with Fairfield Greenwich Group | ~$1.04 billion | Ex. 8 (Fairfield Action, ECF Nos. 286-8, 286-10, 286-12, 286-13, 286-14, 286-21) |
| Fairfield Sentry to Other Alleged Subsequent Transferees | ~$3.17 billion | Ex. 13, Balber Decl. ¶ 16 |
| **TOTAL** | **~$5.03 billion** | |

In other words, the Trustee alleges approximately $3 billion of transfers of BLMIS Customer Property *into* Fairfield Sentry, while over the same time period alleging approximately $5 billion of transfers of BLMIS Customer Property *out of* Fairfield Sentry, $2 billion *more* than was alleged

to have been transferred thereto. Nowhere does the Trustee acknowledge, let alone justify, this mathematical impossibility.

## ARGUMENT

### I. THE TRUSTEE'S CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

#### A. There is No Basis to Assert General Jurisdiction Over Either Defendant

Neither Hapoalim Switzerland nor Hapoalim B.M. are "at home" in New York such that this Court can exercise general jurisdiction over them. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014) (the "paradigm" forums for general jurisdiction are a corporation's place of incorporation and principal place of business, and only in an "exceptional case" will contacts with a forum otherwise be sufficient to establish general jurisdiction). The Complaint does not allege that the Court has general jurisdiction over Hapoalim Switzerland and pleads no facts supporting any such argument. (*See* Compl. ¶ 24 (alleging that "Hapoalim Switzerland is a Swiss private bank" operating in "Geneva, Luxembourg, and Singapore").) The Trustee's only alleged fact purportedly supporting general jurisdiction over Hapoalim B.M., that it "maintains a New York branch at 1177 Avenue of the Americas, New York, New York" (*id.* ¶ 23), is insufficient in light of *Daimler*. *See, e.g.*, *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 587 (S.D.N.Y. 2017) (holding that *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014) "stands for the proposition that 'mere operation of a branch office in a forum – and satisfaction of any attendant licensing requirements – is not constitutionally sufficient to establish general jurisdiction'") (quoting *Motorola Credit Corp. v. Uzan*, 132 F. Supp. 3d 518, 521 (S.D.N.Y. 2015); *Aybar v. Aybar*, 169 A.D.3d 137, 151 (2d Dep't 2019) ("[F]ollowing the United States Supreme Court's decision in *Daimler*, personal jurisdiction cannot be asserted against a

foreign corporation based solely on the corporation's continuous and systematic business activity in New York."), *aff'd on other grounds*, 37 N.Y.3d 274 (2021).

## B.    There is No Basis to Assert Specific Jurisdiction Over Either Defendant

It is the Trustee's burden to make a prima facie showing of jurisdiction over each defendant, with respect to each claim asserted. *See, e.g.*, *Rosenblatt v. Coutts & Co. AG*, 2017 WL 3493245, at *2 (S.D.N.Y. Aug. 14, 2017) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010)).   The Trustee seeks to establish jurisdiction over Defendants via New York's long-arm statute (N.Y. CPLR § 302) and Fed. R. Bankr. P. 7004(f).[10]   (Compl. ¶ 8.) Due process requires the Trustee to adequately "allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citing *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013)).   The relationship with the forum and the claims at issue "must arise out of contacts that the 'defendant himself' creates with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).   "The plaintiff's claims... 'must arise out of or relate to *the defendant's contacts* with the forum.'" *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (emphasis added).   The Trustee must establish the Court's jurisdiction over Defendants with respect to each alleged Subsequent Transfer it seeks to recover. *Picard v. BNP Paribas S.A. (Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Each transfer is a separate claim... and the Trustee

---

[10] While CPLR § 302 focuses on purported minimum contacts with New York and Bankruptcy Rule 7004(f) focuses on purported minimum contacts with the United States as a whole, the Trustee's Complaint asserts New York contacts as its basis for alleging jurisdiction.   Moreover, federal jurisdictional analysis "closely resemble[s]" that under New York's long-arm statute and constitutional due process. *Off. Comm. Of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).   Thus, the minimum contacts and due process analysis under any standard asserted by the Trustee harmonizes into one.

must establish the court's jurisdiction with respect to each claim asserted.") (internal punctuation

omitted).

### 1.    The Alleged Foreseeability of Fairfield Sentry's Investment in BLMIS is Insufficient to Establish Specific Jurisdiction over Either Defendant

The Trustee's first argument for jurisdiction over Defendants is that they "purposely

availed themselves of the laws and protections of the United States and the state of New York by,

among other things, knowingly directing funds to be invested with New York-based BLMIS

through the Feeder Funds" and "knowingly receiv[ing] subsequent transfers from BLMIS by

withdrawing money from the Feeder Funds." (Compl. ¶ 6.)  This is insufficient to establish

specific jurisdiction over either Defendant.    While the Trustee's arguments focus on the

foreseeability of *Fairfield Sentry's* contacts with BLMIS in the forum, "the inquiry whether a

forum State may assert specific jurisdiction over a nonresident defendant focuses on the

relationship among *the defendant*, the forum, and the litigation."  *Osus*, 882 F.3d at 344 (quoting

*Walden*, 571 U.S. at 283-84) (emphasis added); *see also Helicopteros Nacionales de Colombia,

S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person

is not an appropriate consideration when determining whether a defendant has sufficient contacts

with a forum State to justify an assertion of jurisdiction.").    A defendant lacks the requisite

minimum contacts with the forum where "[t]he only connection between [Defendant] and the

forum is that the company invested in a foreign hedge fund located in the Cayman Islands but

managed by plaintiffs" and "never allegedly directed any activity toward the United States." *In re

Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 536-37 (S.D.N.Y. 2008);

*Steinberg v. A Analyst Ltd.*, 2009 WL 838989, at *5 (S.D. Fla. Mar. 26, 2009) (refusing to find

jurisdiction over defendant based on facts that it was an investor in funds that were managed in

New York, had assets, records, and accounts in New York, and invested in U.S. securities on U.S. exchanges).

*Walden* is particularly instructive on this point. In *Walden*, Nevada resident plaintiffs filed a lawsuit in federal court in Nevada against a Georgia police officer who allegedly searched plaintiffs and unlawfully seized money at a Georgia airport. *Walden*, 571 U.S. at 288. The Supreme Court rejected plaintiffs' argument that the Nevada court could exercise jurisdiction over the officer, *even where* the officer knew of the plaintiffs' ties to Nevada and that any injury resulting from the seizure would likely be felt there. *Id.* at 289 (explaining that such an analytical approach "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis").

Moreover, the Trustee cannot assert jurisdiction over a foreign defendant (*i.e.*, Hapoalim Switzerland or Hapoalim B.M.) based on that defendant's ownership of shares in a fund that either engaged in New York-based conduct (*i.e.*, Fairfield Sentry) or was based in New York (*i.e.*, BLMIS). Notwithstanding that it may be foreseeable that the company in which a shareholder invests will conduct business activities in a particular jurisdiction, neither New York nor federal law countenance commingling of jurisdictional contacts between company and shareholder. *See, e.g.*, *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 141 (Bankr. S.D.N.Y. 2016). Indeed, accepting the Trustee's theory would drastically expand the scope of U.S. personal jurisdiction, rendering every investor in any foreign company amenable to suit anywhere in the U.S. that the company – not the investor – does business. This is not the law. *See, e.g.*, *Amaranth*, 587 F. Supp. 2d at 536-37 (rejecting assertion of specific jurisdiction where "only connection between Amaranth International and the forum is that the company invested in a foreign hedge fund located in the Cayman Islands but managed by plaintiffs"); *Steinberg*, 2009 WL 838989, at *5 (rejecting assertion of specific jurisdiction under New York law based on allegation, among

others, that defendant was an investor in funds managed in New York, with assets, records, and accounts in New York, and that invested in U.S. securities on U.S. exchanges); *Suber v. VVP Servs., LLC*, 2021 WL 4429237, at *9 (S.D.N.Y. Sept. 27, 2021) ("[I]f offering securities in New York, or owning shares managed by a fund in New York were sufficient to establish personal jurisdiction over a foreign company under § 302(a)(3), then New York courts would have jurisdiction over every company that accesses New York's capital markets or invests in a New York managed fund so long as that company also committed a tort that harmed a New Yorker, which would be a reach too far.") (quoting *Theraplant, LLC v. Makarechi*, 2016 WL 7839186, at *4 (S.D.N.Y. Dec. 23, 2016)) (Nathan, J.); *Tymoshenko v. Firtash*, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013) (rejecting as insufficient basis for specific jurisdiction an allegation that defendant purportedly invested in various "shell companies" in the U.S. because, "[a]lthough the companies in which [defendant] purportedly invested may have engaged in more extensive activities within the United States, the AC fails to allege that [defendant] controlled, directed, or even knew about these acts. Moreover, even if [defendant] were more involved in these corporations' investment decisions, that would not, in and of itself, suffice to show that [defendant] has the 'requisite continuous and systematic contact' with the United States").

Instead, an entity's jurisdictional contacts may only be attributed to a shareholder under an alter ego or agency theory. *See id.*; *City of Long Beach v. Total Gas & Power N. Am. Inc.*, 465 F. Supp. 3d 416, 437-39 (S.D.N.Y. 2020) (discussing alter ego and principal-agent theories); *Cooper v. Parsky*, 1997 WL 242534, at *14 (S.D.N.Y. Jan. 8, 1997) ("Even a controlling shareholder will not be subject to personal jurisdiction unless the record justifies piercing the corporate veil") (citing *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 283 (1970)), *aff'd in part, vacated in part on other grounds*, 140 F.3d 433 (2d Cir. 1998).

There are no allegations in the Complaint suggesting grounds for piercing the corporate veil, a necessary component of an alter ego theory. *See Blavatnik*, 543 B.R. at 141-143; *Cooper*, 1997 WL 242534, at *14 (mere status as "a New York corporation's shareholder[]... does not justify piercing the corporate veil"). Additionally, there are no allegations in the Complaint suggesting facts in support of any argument that Defendants had any control at all over the investment activities of Fairfield Sentry or BLMIS, a necessary element of an agency theory. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (requiring the alleged agent in New York to have acted "for the benefit of, with the knowledge and consent of, *and under some control by*, the nonresident principal") (emphasis added); *City of Long Beach*, 465 F. Supp. 3d at 439 (same). The lack of any allegations of control or grounds to pierce the corporate veil are fatal to any effort to attribute the jurisdictional contacts of Fairfield Sentry or BLMIS to Defendants.

The Trustee's allegations as to the foreseeability of investment in BLMIS fail to meet the standard set by *Walden*, and thus fail to establish jurisdiction over either Defendant. The Trustee pleads no other facts supporting an argument for asserting specific jurisdiction over Hapoalim B.M. (*See generally* Compl. § II.)

### 2. A Subscription Agreement Cannot Subject Hapoalim Switzerland to this Court's Specific Jurisdiction

The Trustee alleges this Court's jurisdiction over Hapoalim Switzerland on the basis of Hapoalim Switzerland having "entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction." (Compl. ¶ 7.) But this argument has already been squarely rejected by this Court. In proceedings brought by the Fairfield Sentry Liquidators, this Court held that the forum selection clause in the subscription agreements did not apply to a lawsuit seeking to recover a redemption payment from Fairfield Sentry to the defendants on the basis that

such a suit is not one "with respect to" the subscription agreements, but rather related to Fairfield Sentry's Articles of Association. *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at \*11-\*12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"). The *Fairfield I* Court followed a ruling of the U.K. Privy Council "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments." *Id.* at \*11. The Court's holding in *Fairfield I* is binding on the Trustee because he is and was in privity with the Fairfield Sentry Liquidators, on the basis that: (i) the Trustee will receive a share of any funds received by the Liquidators in any redeemer action (Ex. 5, Fairfield Action ECF No. 69-2 ¶¶ 4, 11); and (ii) the Trustee and Liquidators explicitly stipulated "that a joint interest exists between them with respect to the Sharing Claims" (*id.* ¶ 14; *see also* ¶¶ 4, 7). This concurrent and successive property interest constitutes the kind of "preexisting 'substantive legal relationship[]' between the person to be bound and a party to the judgment" sufficient to justify non-party issue preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). And because the question of whether a lawsuit seeking to recover a redemption payment from Fairfield Sentry to the defendants was a suit "with respect to" the subscription agreements "actually litigated" and "essential to the prior judgment" of *Fairfield I*, the Court's conclusion thereabout has preclusive effect. *See, e.g.*, *N.H. v. Maine*, 532 U.S. 742, 748-49 (2001).

Even if this argument was not squarely foreclosed by *Fairfield I*, the Trustee would not be entitled to rely on a forum selection clause to which he is neither a party nor "an intended third-party beneficiary of the contract under which he seeks to bring suit." *See Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*, 2017 WL 476720, at \*4 (S.D.N.Y. Feb. 2, 2017) (Sullivan, J.).

### 3.    Mere Maintenance of a New York Bank Account Cannot Establish Specific Jurisdiction over Hapoalim Switzerland

The Trustee alleges specific jurisdiction over Hapoalim Switzerland on the basis that it "maintained a bank account at JP Morgan Chase Bank in New York which it used to receive

redemption proceeds from Fairfield Sentry." (Compl. ¶ 7.) This allegation, "on information and belief," and supported with no other facts or even the barest detail, is insufficient to make out a case for specific jurisdiction. Nor does the Trustee make *any* allegation that the alleged JP Morgan Chase Bank account was used to receive *any* of the redemptions at issue in *this* case. *See, e.g.*, *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 262-64 (S.D.N.Y. 2020) (refusing to find personal jurisdiction over foreign bank defendant based on its use of New York correspondent account for transfers at issue, where use of the account not necessary to alleged Ponzi scheme); *Hau Yin To v. HSBC Holds., PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) ("Plaintiffs have not alleged the kind of intentional and repeated use of correspondent accounts that amounts to a transaction of business.").

### 4.    The Trustee's Additional Allegations of Contact with Fairfield Greenwich Group in New York Cannot Establish Specific Jurisdiction over Hapoalim Switzerland

The Trustee's remaining jurisdictional allegations claim that Hapoalim Switzerland "sent a copy of the subscription agreement to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York." (Compl. ¶ 7.) *First*, these allegations are offered without any explanation as to how such alleged activities relate to the Trustee's claims, and are insufficient on that basis alone. *See, e.g., Osus*, 882 F.3d at 344 (in the 2nd Circuit, the standard for exercising specific jurisdiction "depends on 'the relationship among the defendant, the forum, *and the litigation*'") (emphasis added); *Fairfield I*, 2018 WL 3756343, at *11 ("the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments"). *Second*, "communications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction over it. . . ." *Hau Yin To v. HSBC Holds., PLC*, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017), *aff'd* 700 F. App'x 66 (2d Cir. 2017). Such allegations

fail to establish that the foreign defendant "project[ed]" itself into New York. *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding lacking claims that foreign defendants "communicated with and transmitted information and funds to and from BLMIS located in New York. . . ."); *Osus*, 882 F.3d at 345 (finding "handful of communications and transfer of funds… are insufficient to allow the exercise of specific personal jurisdiction over the [Foreign] Defendants").

The Trustee's complaint should be dismissed for lack of personal jurisdiction.

## II.    THE TRUSTEE FAILS TO ADEQUATELY PLEAD THAT DEFENDANTS RECEIVED CUSTOMER PROPERTY

### A.    The Trustee Has Failed to Carry His Pleading Burden

In order to assert a claim against an alleged subsequent transferee under SIPA, the Trustee is required to allege that each individual redemption payment at issue constituted a subsequent transfer of an initial transfer of BLMIS Customer Property that was fraudulently transferred from BLMIS to Fairfield Sentry. *See* 15 U.S.C. § 78fff-2(c)(3) ("[T]he trustee may recover any property transferred by the debtor which, except for such transfer, would have been Customer Property if and to the extent that such transfer is voidable or void under the provisions of title 11."). To plead a subsequent transfer under 11 U.S.C. § 550, "[t]he Trustee must first allege that the initial transfer is avoidable" and "must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds. At the pleading stage, the Trustee is not required to provide a 'dollar-for-dollar accounting' of the exact funds at issue. However, barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient." *Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015).

In *Shapiro*, this Court found lacking the same style of bare bones pleading present in the Complaint. The *Shapiro* court found that the operative complaint therein "lack[ed] the vital statistics necessary to support a subsequent transfer claim" and failed to "tie any initial transfer to any subsequent transfer or Subsequent Transferee. Moreover, it [did] not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Id.* The allegations rejected in *Shapiro* bear striking resemblance to the Trustee's allegations in the Complaint, as seen below:

| **Allegations in *Shapiro*** | **Allegations in the Complaint** |
|---|---|
| "'Based on the Trustee's investigation to date, the Initial Transferee Defendants subsequently transferred a portion of the $53,778,486 received from BLMIS' to the Subsequent Transferee Defendants." *Shapiro*, 542 B.R. at 119. | "Based on the Trustee's investigation to date, approximately $20,047,109 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Hapoalim Switzerland." (Compl. ¶ 50.) <br><br> "Based on the Trustee's investigation to date, approximately $1,712,100 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Hapoalim B.M." (Compl. ¶ 52.) |
| "Subsequent Transfers were transferred by the Initial Transferee Defendants to the Subsequent Transferee Defendants." 542 B.R. at 119. | "The Feeder Funds received initial transfers of BLMIS Customer Property. Some or all of those transfers were subsequently transferred directly or indirectly to the Hapoalim Defendants." (Compl. ¶ 36.) |
| "[E]ach Subsequent Transfer 'was made directly or indirectly to one or more of the Subsequent Transferee Defendants.'" *Shapiro*, 542 B.R. at 119. | "Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, the Hapoalim Defendants." (Compl. ¶ 62.) |
| "'Subsequent Transferee Defendants are immediate or mediate transferees from the Initial Transferee Defendants.'" *Shapiro*, 542 B.R. at 119. | "The Hapoalim Defendants are immediate or mediate transferees of the Fairfield Sentry Initial Transfers." (Compl. ¶ 63) |

The Trustee's pleading failure is not cured by the voluminous exhibits attached to the Complaint showing: (i) in 75 pages a list of thousands of transactions in Fairfield Sentry's BLMIS accounts (Compl. Ex. E); and (ii) exhibits listing alleged subsequent transfers to Defendants (Compl. Exs. F, G). The Complaint fails to specifically reference any line item on Exhibit E or even attempt to identify which line items constitute purported Initial Transfers of Customer Property subsequently transferred to Defendants.[11]

As in *Shapiro*, the Complaint should be dismissed because it "does not tie any initial transfer to any subsequent transfer or [Defendant]. Moreover, it does not plausibly imply that [Fairfield Sentry] even made subsequent transfers to the [Defendants] as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Shapiro*, 542 B.R. at 119.

## B.   The Trustee's Pleading Failure is Not Excused by Any Lack of Information

Here, unlike a typical case, it is *the Trustee*, not Defendants, who has possession of the records necessary to determine which, if any, of the redemption payments to Defendants included any Customer Property, and allege the "necessary vital statistics" required to sustain his pleading burden. As discussed *supra* at 3-4, the Trustee has had access to the records of Fairfield Sentry for over a decade, since he settled with the Liquidators of Fairfield Sentry in 2011. (*See* Ex. 12, Fairfield Action ECF No. 92 (Bench Memorandum and Order Granting Trustee's Motion for Entry of Order Approving Settlement).) Pursuant to that settlement agreement, incorporated into the subsequently entered Consent Judgment (*see* Ex. 6, Fairfield Action ECF No. 109 ¶ 2 (Consent Judgment)), the Trustee was provided access to the records of, and the cooperation of, each settling

---

[11] Indeed, despite characterizing Exhibit E to the Complaint as "setting forth the[] Fairfield Sentry Initial Transfers" (defined as transfers of Customer Property from BLMIS to Fairfield Sentry within the six years preceding the Filing Date (*see* Compl. ¶¶ 45-48)), the exhibit contains myriad line items that are self-evidently not transfers of Customer Property from BLMIS to Fairfield Sentry, and line items dating as far back as 1990. (*See generally* Compl. Ex. E)

defendant, including Fairfield Sentry (*see* Ex. 5, Fairfield Action ECF No. 69-2 ¶ 14 ("[T]he Trustee and the Liquidators each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims. The Trustee and the Liquidators each agree to provide reasonable cooperation and assistance to the other Party in connection with the prosecution of the Sharing Claims")). The Trustee has thus had in his possession for years the necessary documents to plausibly allege – if it were true – that Defendants received subsequent transfers of BLMIS Customer Property. He has failed to do so.

Nor is this case akin to those in which this Court afforded the Trustee's pleading "even greater latitude." *See, e.g.*, *Picard v. Merkin (In re Bernard L. Madoff Inv. Secs. LLC)*, 515 B.R. 117, 151 (Bankr. S.D.N.Y. 2014). In *Merkin*, the Trustee identified "numerous inter-defendant transfers," "complicated issues and transactions [that] extend over lengthy periods of time," "defendants [that] commingled their assets, transferring their funds into and out of each other's accounts" and "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." *Id.* at 150-51. No such factors are present here, nor is this a case where Defendants "are a group of interrelated individuals and entities [and] [w]hether they additionally received Subsequent Transfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond." *Picard v. Mayer (In re Bernard L. Madoff Inv. Secs. LLC)*, 2021 WL 4994435, at \*5 (Bankr. S.D.N.Y. Oct. 27, 2021) (Morris, C.J.) (quoting *Picard v. Estate of Chais (In re Bernard L. Madoff Inv. Secs. LLC)*, 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011)). In contrast to *Merkin*, *Mayer*, and *Chais*, here, the Trustee has had "the requisite information to respond" for a decade.

The Trustee's pleading failure renders it impossible for Defendants to identify precisely what BLMIS Customer Property they allegedly received or to discern whether the Trustee's allegations have merit, and fails to provide "fair notice of what the . . . claim is and the grounds

upon which it rests," to enable Defendants to properly respond to the complaint, effectively take

discovery, or prepare for trial.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**C.      The Trustee Cannot Sustain Allegations that Fairfield Sentry Paid Out Subsequent Transfers of BLMIS Customer Property in the Amount of $5 Billion While Receiving Initial Transfers of BLMIS Customer Property in the Amount of Only $3 Billion**

Far from "stat[ing] a claim to relief that is plausible on its face" (*Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)), the Trustee's pleadings, in the aggregate,

state claims that are not merely implausible, but mathematically impossible.  The Trustee alleges

the following transfers from BLMIS to Fairfield Sentry:

| Transfers | Amount | Citation |
|---|---|---|
| BLMIS to Fairfield Sentry | "approximately **$3 billion**" | Compl. ¶ 45 |

Meanwhile, the Trustee alleges the following transfers out from Fairfield Sentry:

| Transfers | Amount | Citation |
|---|---|---|
| Fairfield Sentry to Fairfield Sigma and Fairfield Lambda | $824 million | Ex. 11 (Fairfield Action, ECF Nos. 286-5, 286-6) |
| Fairfield Sentry to Entities and Individuals Associated with Fairfield Greenwich Group | ~$1.04 billion | Ex. 8 (Fairfield Action, ECF Nos. 286-8, 286-10, 286-12, 286-13, 286-14, 286-21) |
| Fairfield Sentry to Other Alleged Subsequent Transferees | ~$3.17 billion | Ex. 13, Balber Decl. ¶ 16 |
| **TOTAL** | ~**$5.03 billion** | |

(*See supra*, at 9.)

In total, the Trustee alleges in the six-year period prior to the Filing Date approximately $5

billion in subsequent transfers of purported BLMIS Customer Property *by Fairfield Sentry*, but in

the same time period initial transfers of purported BLMIS Customer Property *to Fairfield Sentry*

of approximately $3 billion."  Arithmetic renders impossible the Trustee's allegations that all

redemption payments he is seeking to recover are BLMIS Customer Property.  Indeed, the Trustee

himself offers the obvious alternative source of Fairfield Sentry's non-BLMIS Customer Property sources of funds – monies from subscribers. (*See, e.g.*, Compl. ¶ 7 ("Hapoalim Switzerland… wired funds to Fairfield Sentry").)

The Trustee's evasion of his responsibility to identify which $3 billion of the $5 billion in subsequent transfers he alleges are *actually* BLMIS Customer Property necessarily results in him expressly claiming the right to approximately $2 billion to which he is plainly not entitled. *See* 15 U.S.C. § 78fff-2(c)(3) (authorizing the SIPA trustee to recover "property transferred by the debtor which, except for such transfer, *would have been Customer Property*") (emphasis added). No provision of SIPA authorizes the recovery of transfers of funds that were never "Customer Property" held by BLMIS. Particularly where the Trustee has long been in possession of the information necessary to substantiate his allegations for years (*see supra* at 3-4, 20-21), he cannot in good faith claim an entitlement to recover as subsequent transfers roughly $2 billion more in Customer Property than ever existed as allegedly related initial transfers, leaving defendants to guess whether the allegations against them even concern property eligible for recovery by a SIPA trustee.

**D.** **Where Alleged Subsequent Transfers Occur Long After any Possible Initial Transfer, or When All Customer Property Initially Transferred was Transferred Out, it is Implausible that Such Subsequent Transfers Contain BLMIS Customer Property**

Moreover, there is no reason to assume that redemptions from Fairfield Sentry derived at all from share redemptions from BLMIS at every point in time. During certain periods, it appears that *none* of the funds redeemed from Fairfield Sentry originated from BLMIS.[12]

---

[12] On this motion to dismiss, the Court may consider, in addition to the allegations in and exhibits to the Complaint, the Trustee's pleadings in other cases and other documents of which the Court may take judicial notice, especially where, as here, the Trustee has actual notice of all of the information in the movant's papers, including admissions he has made in other pleadings. *See supra* at 2, n.6.

The Trustee's claims are not only implausible in the aggregate, but also when examined in detail for two reasons. *First*, the Trustee alleges two subsequent transfers to Hapoalim Switzerland on August 17, 2007. (Compl. Ex. F.) However, the most recent alleged initial transfer from BLMIS to Fairfield Sentry occurred on April 13, 2006, *16 months* earlier. (*See* Compl. Ex. E, at 25-29 ("CHECK WIRE" entries with negative outflows from BLMIS account on April 13, 2006 and September 6, 2007).) Such a long time between alleged initial and alleged subsequent transfers strongly undercuts the plausibility of the Trustee's claims and any alleged linkage between the Subsequent Transfers and the Initial Transfers. *Cf Merkin*, 515 B.R. at 150-51 (inferring linkage where "several subsequent transfers took place contemporaneously or shortly after an initial transfer identified [in the Complaint], implying linkage"). In contrast to *Merkin*, here, with respect to the subsequent transfer on August 17, 2007, the most recent initial transfer took place over 16 months prior, suggestive of a lack of linkage.

*Second*, the Trustee alleges Subsequent Transfers to Defendants at times when, according to the Trustee's own pleadings, Fairfield Sentry simultaneously was exhausting its available supply of BLMIS Customer Property in other redemption payments. For example:

| Transfers | Amount | Citation |
|---|---|---|
| BLMIS to Fairfield Sentry Initial Transfers (May 9, 2003 – July 9, 2008) | $1.625 billion | Compl. Ex. E ("CHECK WIRE" entries dated 5/9/2003, 7/11/2003, 7/22/2003, 4/1/2005, 7/6/2005, 9/2/2005, 10/3/2005, 11/16/2005, 12/15/2005, 1/10/2006, 3/16/2006, 3/27/2006, 4/13/2006, 9/6/2007, 10/3/2007, 1/11/2008, and 5/5/2008) |
| Subsequent Transfers from Fairfield Sentry (May 9, 2003 – July 9, 2008) | Over $2.7 billion | Balber Decl. Exs. 11, 13; ¶ 18 |

Thus, any BLMIS Customer Property in Fairfield Sentry was transferred out by July 9, 2008.

BLMIS subsequently made an initial transfer of $20 million to Fairfield Sentry on July 10, 2008. (Compl. Ex. E ("CHECK WIRE" entry dated 7/10/2008).) However, the Trustee alleges

subsequent transfers of over $112.5 million on July 15, 2008 from Fairfield Sentry to various entities (Balber Decl. Exs. 11, 13; ¶ 18), *all of which* the Trustee is claiming as recoverable Customer Property, despite the only initial transfer of Customer Property from which those subsequent transfers could have derived amounting to approximately 18 percent of the $112.5 million total.

Among the alleged July 15, 2008 subsequent transfers are four transfers to Hapoalim Switzerland totaling approximately $15 million. (*See* Compl. Ex. F.) The Trustee is therefore claiming an entitlement as BLMIS Customer Property to over $15 million allegedly transferred from Fairfield Sentry to Hapoalim Switzerland on a day when less than 20 percent of all subsequent transfers from Fairfield Sentry could possibly constitute BLMIS Customer Property.

*Third*, the Trustee alleges Subsequent Transfers to Defendants at times when, according to the Trustee's pleadings, any BLMIS Customer Property in Fairfield Sentry had been transferred out. For example:

| Transfers | Amount | Citation |
|---|---|---|
| BLMIS to Fairfield Sentry Initial Transfers (May 9, 2003 – March 31, 2005) | $120 million | Compl. Ex. E ("CHECK WIRE" entries dated 5/9/2003, 7/11/2003, and 7/22/2003). |
| Subsequent Transfers from Fairfield Sentry (May 9, 2003 – March 31, 2005) | Nearly $650 million | Balber Decl. Exs. 11, 13; ¶ 18 |

Thus, any BLMIS Customer Property in Fairfield Sentry was transferred out by March 31, 2005.

| Transfers | Amount | Citation |
|---|---|---|
| BLMIS to Fairfield Sentry Initial Transfer (April 1, 2005) | $175 million | Compl. Ex. E ("CHECK WIRE" entry dated 4/1/2005) |
| Subsequent Transfer from Fairfield Sentry to Abu Dhabi Investment Authority (April 4, 2005) | $200 million | Ex. 13(h) (Adv. Pro. No. 11-2493 (Bankr. S.D.N.Y.) ECF No. 1-5) |

Thus, any additional BLMIS Customer Property transferred to Fairfield Sentry on April 1, 2005 was transferred out by April 4, 2005. Consequently, the alleged Subsequent Transfer to Hapoalim Switzerland on April 14, 2005 came at a time when *all* BLMIS Customer Property in Fairfield Sentry had already been transferred to third parties.

Similarly, as detailed *supra* at 24-25, any BLMIS Customer Property held at Fairfield Sentry was transferred out as of July 15, 2008. The next alleged Initial Transfer to Fairfield Sentry occurred on September 4, 2008 (Compl. Ex. E ("CHECK WIRE" entry dated 9/4/2008).) Yet, the Trustee claims an entitlement to recover over $510,000 as purported BLMIS Customer Property transferred to Hapoalim Switzerland on August 18, 2008, during a time when *all* BLMIS Customer Property transferred to Fairfield Sentry had been transferred out by Fairfield Sentry.

Rather than "nudg[ing] his claim[s]… across the line from conceivable to plausible" to meet his pleading burden, the Trustee asserts claims that his own pleadings shove in the opposite direction, to inconceivable, implausible, and in some cases mathematically impossible. *See Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

The Trustee has failed to adequately plead that Defendants received subsequent transfers of BLMIS Customer Property.

## III.    THE TRUSTEE ALSO FAILS TO MEET HIS RULE 8 PLEADING BURDEN MORE BROADLY

This Court has held that in order to bring a claim against a subsequent transferee under § 550(a)(2) of the Bankruptcy Code, the Trustee is first required to allege the avoidability of an initial transfer. *See, e.g.*, *Shapiro*, 542 B.R. at 119; *Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2013 WL 1609154, *7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") ("In order to recover a fraudulent or preferential transfer of debtor property from a subsequent transferee, the Trustee must first show that the initial transfer of that property by the debtor is subject to avoidance

under one of the Bankruptcy Code's avoidance provisions."). The Trustee fails to adequately allege such avoidability. His only allegations regarding the initial transfers are that the: (i) "Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)" (Compl. ¶ 45); (ii) "Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)" (Compl. ¶ 46); and (iii) "Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)" (Compl. ¶ 47).

These allegations are wholly insufficient. While a Court must accept all well-pleaded factual allegations in a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal punctuation omitted). For example, the Trustee fails to offer any factual allegation showing that: (i) any alleged initial transfer was made without "fair consideration," as required by the former New York Debtor and Creditor Law ("NYDCL") § 273 (*see In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005)); (ii) BLMIS "received less than a reasonably equivalent value in exchange for such transfer," as required by Bankruptcy Code §

27

548(a)(1)(B)(i) (*see In re Dreier LLP*, 452 B.R. 391, 436 (Bankr. S.D.N.Y. 2011)); (iii) any alleged

initial transfer was made with actual intent to defraud, as required by former NYDCL § 276 (*see*

*In re Flutie N.Y. Corp.*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004)) and Bankruptcy Code §

548(a)(1)(A) (*see Dreier*, 452 B.R. at 423); and (iv) any alleged initial transfer made within 90

days of the Filing Date was made to or for the benefit of a creditor on account of an antecedent

debt owed by the debtor before the transfer was made or that the purported creditor who received

the transfers received more than it would otherwise have under Chapter 7, as required by

Bankruptcy Code § 547(b) (*see In re Robert Plan of N.Y. Corp.*, 456 B.R. 150, 155-58 (Bankr.

E.D.N.Y. 2011)).

The Trustee attempts to obviate his clear pleading failure by "incorporate[ing] by reference

the allegations contained in the Fairfield Amended Complaint" (Compl. ¶ 44), a 217-page, 798-

paragraph complaint, with an additional 111 exhibits, in a wholly separate action. While Fed. R.

Civ. P. 10(c) provides that a "statement in a pleading may be adopted by reference elsewhere in

the same pleading or in any other pleading or motion," such wholesale incorporation as attempted

by the Trustee is wholly unauthorized by the Federal Rules. *See U.S. v. Int'l Longshoremen's*

*Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (the "proposed method of pleading necessary

elements of [the] claim by incorporating factual allegations contained in several prior lengthy . . .

pleadings is, as this Court noted at oral argument, a blatant violation of Rule 8(a)(2)'s direction

that a civil plaintiff provide a short and plain statement of the claim showing that the pleader is

entitled to relief") (internal punctuation omitted); *see also Nycomed U.S. Inc. v. Glenmark*

*Generics Ltd.*, 2010 WL 1257803, at \*4 (E.D.N.Y. Mar. 26, 2010) ("Although there is no

prescribed procedure for referring to incorporated matter, the references to prior allegations must

be direct and explicit, in order to enable the responding party to ascertain the nature and extent of

the incorporation.  A Rule 10(c) adoption clause that does little more than make wholesale

reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite "guidance to the responding party.") (internal citations and punctuation omitted).

The purported incorporation is particularly improper where, as here, the pleading the Trustee seeks to incorporate has itself been superseded by an amended pleading, and therefore has been "render[ed] of no legal effect." *See, e.g.*, *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020). To avoid "confusion and inconvenience" from requiring a party "to take into account a number of other, superseded pleadings… wholesale incorporations—particularly those that seek to incorporate superseded versions of a complaint—must be examined with special care." *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446-47 (E.D. Va. 2009). The risk of such confusion and inconvenience is heightened here where the Fairfield Amended Complaint was brought against nearly four dozen defendants besides Fairfield Sentry and includes extensive allegations regarding, and counts asserted against, those other parties. The Trustee's improper incorporation also imposes an unacceptable burden on Defendants and on the Court. *See Longshoremen's Ass'n*, 518 F. Supp. 2d at 464. ("If Rule 8(a) implies that the *Davis* court should not be obliged to review a single prior complaint for the purpose of discerning the claims made in the action before it, it follows *a fortiori* that this Court should not be required to read through six different pleadings, stretching back some seventeen years, in addition to various peripheral documents, in order to decipher the basic elements of the Government's claim in this action, nor should the defendants be expected to undertake such an endeavor in preparing an Answer to the Amended Complaint.").

In the more than ten years since the Trustee filed the Complaint, he has left his improper incorporation undisturbed, failing to adequately plead facts suggesting the avoidability of any alleged initial transfers of BLMIS Customer Property to Fairfield Sentry. The Complaint must therefore be dismissed.

## IV.    THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(e) OF THE BANKRUPTCY CODE

Section 550(a) of the Bankruptcy Code provides that "to the extent a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."[13]

This power is not unlimited.  Section 546(e) provides a safe harbor, barring the Trustee from exercising avoidance powers with respect to any transfer that constitutes a "settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a… stockbroker [or] financial institution… or that is a transfer made by or to (or for the benefit of) a… stockbroker [or] financial institution… in connection with a securities contract."  11 U.S.C. 546(e). The safe harbor covers any such transfer other than one for which recovery is sought pursuant to § 548(a)(1)(A).[14]  *Id.*  Payments "connected to the redemption of shares were 'in connection with a securities contract.'"  *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 81 (2d Cir. 2019).

---

[13] The Trustee's claim under § 551 fails because that section does not provide an independent cause of action.  *See supra*, at 5 n.9.

[14] Pursuant to 11 U.S.C. 548(a)(1)(A), a trustee may avoid any transfer made within two years of the Filing Date if the debtor made such a transfer with actual intent to hinder, delay, or defraud ("Two-Year Transfers").  Because of the Ponzi scheme presumption, which has been readily accepted by this Court and the District Court in cases pleaded by the Trustee, Defendants, at this stage, do not seek dismissal under the Section 546(e) safe harbor of claims based on initial transfers made within two years of the Filing Date.  However, the Ponzi scheme presumption's viability is an open issue at the Circuit level, and a recent concurrence from Judge Menashi called its foundation into serious question.  *See Picard v. Citibank (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171, 201-204 (2d Cir. 2021). Judge Menashi criticized the presumption on several grounds, including, among other reasons, that: (i) it improperly treats preferences as fraudulent transfers; and (ii) it inappropriately expands the definition of "hinder, delay, or defraud."  *Id.*  Because of the foregoing, and because there is a pending petition for direct appeal of the issue (*see Picard v. ABN Amro Bank (Ireland Ltd.) (f/k/a Fortis Prime Fund Sols. Bank (Ireland) Ltd.) (n/k/a ABN Amro Retained Custodial Servs. (Ireland) Ltd.)*, No. 21-1898 (2d Cir. Oct. 1, 2021) ECF No. 50), Defendants reserve the right to challenge the avoidability of the Two-Year Transfers in the event this action proceeds beyond this stage.

In discussing Section 546(e), the Second Circuit has recognized that "in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality." *Picard v. Ida Fishman Revocable Trust*, 773 F.3d 411, 423 (2d Cir. 2014). "[B]y enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A) [and courts] are obliged to respect the balance Congress struck among these complex competing considerations." *Id.*

In short, the § 546(e) safe harbor blocks the Trustee from avoiding a transfer (except pursuant to § 548(a)(1)(A) within two years of the Filing Date) if that transfer:  (i) was made "by or to (or for the benefit of)" a covered entity such as a stockbroker or financial institution; and (ii) was either a transfer in connection with a securities contract or a settlement payment.  Both elements are easily satisfied here where the initial transfers at issue are both in connection with multiple securities contracts and are settlement payments, and were made by, to, and for the benefit of a stockbroker and multiple financial institutions.[15]  Notably, the safe harbor applies even where the alleged initial transferee consented to entry of judgment against it.  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *3 ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here where the transferee settled with the Trustee, the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.") (Morris, C.J.).  While § 546(e) is an affirmative defense, its application "presents a straightforward question of statutory interpretation of the type that is appropriately resolved on the pleadings."  *Fairfield III*, 2020 WL 7345988, at *5.

---

[15] "[A] transfer can be connected to, and can be made in relation to, multiple documents or purposes simultaneously." *Fishman*, 773 F.3d at 422.

### A.    The Alleged Initial Transfers Were Made by a Stockbroker

The definition of "stockbroker" includes an entity that is "engaged in the business of effecting transactions in securities for the account of others." 11 U.S.C. § 101(53A)(B)(i). BLMIS squarely falls within this definition. *See, e.g.*, *Cohmad*, 2013 WL 1609154, at *2 (reaffirming prior finding that BLMIS "qualified as a stockbroker either 'by virtue of the trading conducted by its market making and proprietary trading divisions,' or because Madoff Securities' customers, 'having every reason to believe that Madoff Securities was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded the customers of stockbrokers'") (citing *Picard v. Greiff*, 476 B.R. 715, 719-20 (S.D.N.Y. 2012); *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011)). The Trustee long ago abandoned any dispute on this point. *See Fishman*, 773 F.3d at 417 ("It is not disputed that BLMIS was a 'stockbroker' for the purposes of § 546(e)."). While this alone is sufficient to meet the "covered entity" element of the safe harbor, there are two additional pathways for the Court to reach the same outcome.

### B.    The Alleged Initial Transfers Were Made to a Financial Institution

The definition of "financial institution" is broad, including both "an entity that is a commercial or savings bank" *and* a customer of such institution where the institution "is acting as agent or custodian for a customer (whether or not a "customer", as defined in section 741) in connection with a securities contract." 11 U.S.C. § 101(22)(A). Fairfield Sentry squarely falls within this definition. *See Fairfield III*, 2020 WL 7345988 at *4, *6-*7 & n.11 (finding that Fairfield Sentry, among other entities, was a financial institution because it was a customer of Citco Bank because it held accounts with Citco Bank Nederland N.V. Dublin Branch, which acted as the Funds' agent with respect to the redemptions).

The Court's holding in *Fairfield III* is binding on the Trustee for the same reasons as this Court's holding in *Fairfield I*. *See supra*, at 15-16. As with *Fairfield I*, because the question of

whether Fairfield Sentry was a "financial institution" under the meaning of § 546(e) was "actually litigated" and "essential to the prior judgment" of *Fairfield III*, the Court's conclusion thereabout has preclusive effect. *See, e.g.*, *N.H. v. Maine*, 532 U.S. at 748-49.

**C.    The Alleged Initial Transfers Were Allegedly Made for the Benefit of Financial Institutions**

Besides Fairfield Sentry, each Defendant is also a financial institution. Hapoalim B.M. "is a private bank" maintaining an address in Israel with a branch office in New York, and "engaged in trade, corporate finance, private banking, and retail banking." (Compl. ¶¶ 3, 23.) Hapoalim Switzerland "is a Swiss private bank" with an address in Switzerland and branches in Geneva, Luxembourg, and Singapore. (*Id.* ¶ 24.) These allegations bring each Defendant within the definition of "financial institution" under the Bankruptcy Code. *See* 11 U.S.C. § 101(22)(A) (including in the definition a "commercial or savings bank"); *see also Cohmad*, 2013 WL 1609154, at *8 ("Thus, where the Trustee alleges that a defendant is 'a banking institution'… the defendant may be deemed to constitute a protected 'financial institution' or 'financial participant' for the purposes of Section 546(e) on the face of the complaint.").

The Complaint alleges specifically that "[a] portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or *for the benefit of*" the Defendants. (*See* Compl. ¶¶ 50, 52 (emphasis added).) Though that allegation fails to meet the plausibility threshold to survive this motion (*see supra* Secs. II & III), it remains binding on the Trustee. *See Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (allegations in complaint are "judicial admissions" by which party is "bound throughout the course of the proceeding").

The Trustee has therefore pleaded that the alleged initial transfers were made for the benefit of Defendants, each of which was a "financial institution."

**D.    The Initial Transfers Were Made in Connection with the Fairfield-BLMIS Account
Agreements, which Were "Securities Contracts"**

A "securities contract" includes" a contract for the purchase, sale, or loan of a security,"
(11 U.S.C. § 741(7)(A)(i)), and specifically includes redemption of shares. *See Tribune*, 946 F.3d
at 81 (payments "connected to the redemption of shares were in connection with a securities
contract"); *Cohmad*, 2013 WL 1609154, at *8 ("the definition of a securities contract is in fact
much broader [than BLMIS account agreements] and includes, *inter alia*, investment fund
subscription agreements. . . .").

The Second Circuit has held that the safe harbor shields transfers made in connection with
BLMIS' account agreements. *Fishman*, 773 F.3d at 418-19 (account documents "specify the terms
by which BLMIS will acquire and dispose of securities for the customer. Were it not for the
Account Documents, there would be no basis for a customer to make deposits or request
withdrawals. Thus, the transfers at issue originated with, and could not have been possible but for,
the relationship created by the Account Documents. Accordingly, we conclude that they fall
within the statute's broad definition of 'securities contract'"). The *Fishman* court acknowledged
that § 546(e) was intended "to sweep broadly" in rejecting the Trustee's arguments to the contrary,
including finding that: (i) it was irrelevant that BLMIS never engaged in the securities transactions
contemplated by the account documents (*id.* at 419-20); (ii) it was irrelevant that the account
documents did not specifically identify any security, issuer, quantity, price, or other terms
necessary to describe a security transaction (*id.* at 420); (iii) the account documents did not have
to "expressly obligate BLMIS to carry out" any securities transactions (*id.* at 421); and (iv) it "is
of no moment" that BLMIS "secretly intended to violate the agreement" (*id.*). The *Fishman* court
had "little difficulty concluding that the payments BLMIS made to its customers were made in
connection with the securities contracts identified above," finding that "Section 546(e) sets a low

34

bar for the required relationship between the securities contract and the transfer sought to be avoided." *Id.* at 421-22.

The Trustee specifically alleges that Fairfield Sentry "had direct customer accounts with BLMIS's investment advisory business" (Compl. ¶ 2) and entered into account agreements with BLMIS (Ex. 2 (Fairfield Am. Compl.) ¶ 33).  The logic of *Fishman* applies equally here.

**E.**   **The Initial Transfers Were Made in Connection with the Fairfield Sentry Articles of Association, Which Constitute a Separate "Securities Contract"**

There is an additional, independent, "securities contract" in connection with which the Initial Transfers were made.  Section 546(e) contains no requirement "that the securities contract that the transfer is made 'in connection with' must be a securities contract with the debtor." *Cohmad*, 2013 WL 1609154, at *9.

The Complaint alleges specifically that "[a] portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or *for the benefit of*" the Defendants. (*See* Compl. ¶¶ 50, 52 (emphasis added).)  The Trustee's allegations contemplate that the Initial Transfers were made, at least in part, for the purpose of funding redemption requests from Defendants.[16]  Defendants' redemption requests, and the payments made pursuant thereto in connection with the Initial Transfers, were governed by Fairfield Sentry's Articles of Association. *See* Ex. 10, *Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9 ¶ 10 ("the terms of the subscriber's membership of the Fund, which govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund"); *Fairfield I*, 2018 WL 3756343, at *11 (citing *Migani*).  The broad definition of "securities contract" under the Bankruptcy Code includes a contract providing for redemption of securities such as the Fairfield Sentry Articles of Association.

---

[16] As above, while these allegations fail to meet the plausibility threshold to survive this motion (*see supra* Secs. II & III), they remain binding on the Trustee.  *See Coopers*, 322 F.3d at 167 (allegations in complaint are "judicial admissions" by which party is "bound throughout the course of the proceeding").

*See Cohmad*, 2013 WL 1609154, at *8 ("the definition of a securities contract is in fact much broader and includes, *inter alia*… redemption requests"); *Tribune*, 946 F.3d at 80-81 (finding that payments connected to the redemption of shares were in connection with a securities contract).

As discussed, *supra*, the Trustee alleges that the Initial Transfers were made in connection with Fairfield Sentry's contractual obligations to honor redemption requests by entities receiving alleged subsequent transfers, including Defendants, and consequently were "in connection with" the securities contract between Fairfield Sentry and Defendants. *Cohmad* provides a direct analogy to this situation. There, Judge Rakoff posited a "hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was 'made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract.'" *Cohmad*, 2013 WL 1609154, at *9. In the instant case, Fairfield Sentry is the "investment fund" in Judge Rakoff's hypothetical, and Defendants are the "investor[s] in that fund" envisioned therein. *See also id.* at *9 n.5 ("To the extent that, for example, an initial transfer from Madoff securities to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment'… that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements.").

F.    **The Fairfield Sentry Initial Transfers Were "Settlement Payments"**

In addition to being made "in connection with securities contracts," the Initial Transfers also constitute "settlement payments" sufficient to bring them within the scope of Section 546(e).

36

The Second Circuit has held that "the statutory definition [of settlement payment] should be broadly construed to apply to the transfer of cash or securities made to complete a securities transaction.  That is what the BLMIS clients received."  *Fishman*, 773 F.3d at 422 (internal punctuation and citations omitted).  The court found that "each transfer in respect of [an instruction to sell shares and remit cash] constituted a settlement payment" "even if the broker may have failed to execute the trade and sent… cash stolen from another client."  *Id.* at 422-23.

The Trustee alleges approximately $3 billion in Initial Transfers to Fairfield Sentry received from BLMIS in response to withdrawal requests.  *See* Compl. ¶ 44.  Just as in *Fishman* these transfers constitute "settlement payments" for Section 546(e) purposes.

**G.    The Trustee Has Not Alleged that Either Defendant Had Actual Knowledge of Any Fraud**

The Complaint contains no allegation that either Defendant had any actual knowledge of Madoff's or BLMIS' alleged fraud.  *See generally* Compl.  This obviates the only possible exception to the application of § 546(e).  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (Morris, C.J.) (acknowledging judicially created rule that "a subsequent transferee who had actual knowledge of Madoff Securities' fraud… cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor") (quoting *Cohmad*, 2013 WL 1609154, at *7).  Absent any allegation from the Trustee that Defendants had actual knowledge of the alleged fraud, there can be no claim that Defendants were "launder[ing] what [they knew] to be fraudulently transferred funds through a nominal third party" (*id.*), and this exception cannot apply.

In crafting this exception, which Defendants respectfully submit is found nowhere in the text of Section 546(e), [17] Judge Rakoff explained its purpose as "protecting the reasonable

---

[17] While inapplicable here, Defendants preserve this argument for any potential appeal where it may be found to be applicable.

expectations of investors who believed they were signing a securities contract" as compared to "a transferee who had actual knowledge of the Madoff 'Ponzi' scheme." *Cohmad*, 2013 WL 1609154, at *4. That purpose is achieved here, where neither Defendant is alleged to have such knowledge, and the safe harbor works to promote "the reasonable expectations of legitimate investors." *Id.* Nor does the Trustee plead any facts to support any potential argument for imputation of any purported knowledge of Fairfield Sentry.

Defendants are thus entitled to rely on the protection of Section 546(e).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Dated: New York, New York
  April 6, 2022      **HERBERT SMITH FREEHILLS**
                **NEW YORK LLP**


                *By:*  <u>*/s/Scott S. Balber*</u>
                    Scott S. Balber
                    Jonathan C. Cross
                    450 Lexington Avenue
                    New York, New York 10017
                    Telephone: (917) 542-7600
                    scott.balber@hsf.com
                    jonathan.cross@hsf.com


                *Attorneys for Defendants Bank Hapoalim (Switzerland) Ltd. and Bank Hapoalim B.M.*